No. 22-10312

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

---

## EXCERPTS OF RECORD
## VOL. II of LVII | ER-291 to ER-500

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

```
 1
 2                        UNITED STATES DISTRICT COURT
 3                       NORTHERN DISTRICT OF CALIFORNIA
 4                            SAN JOSE DIVISION
 5
     UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
 6                                     )
                      PLAINTIFF,       )  SAN JOSE, CALIFORNIA
 7                                     )
              VS.                      )  VOLUME 15
 8                                     )
     ELIZABETH A. HOLMES,             )  OCTOBER 5, 2021
 9                                     )
                      DEFENDANT.       )  PAGES 2544 - 2774
10   _____    )
11                   TRANSCRIPT OF TRIAL PROCEEDINGS
12               BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13   A P P E A R A N C E S:
14
     FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                          BY:  JOHN C. BOSTIC
                                 JEFFREY B. SCHENK
16                          150 ALMADEN BOULEVARD, SUITE 900
                            SAN JOSE, CALIFORNIA 95113
17
                            BY:  ROBERT S. LEACH
18                               KELLY VOLKAR
                            1301 CLAY STREET, SUITE 340S
19                          OAKLAND, CALIFORNIA 94612
20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21
     OFFICIAL COURT REPORTERS:
22                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074
23                          LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25             TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1       A P P E A R A N C E S: (CONT'D)

 2

 3    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                              BY:  KEVIN M. DOWNEY
 4                                 LANCE A. WADE
                                   KATHERINE TREFZ
 5                                 RICHARD CLEARY
                                   J.R. FLEURMONT
 6                                 ANDREW LEMENS
                              725 TWELFTH STREET, N.W.
 7                            WASHINGTON, D.C. 20005

 8                            LAW OFFICE OF JOHN D. CLINE
                              BY:  JOHN D. CLINE
 9                            ONE EMBARCADERO CENTER, SUITE 500
                              SAN FRANCISCO, CALIFORNIA 94111
10

11    ALSO PRESENT:           FEDERAL BUREAU OF INVESTIGATION
                              BY:  ADELAIDA HERNANDEZ
12
                              OFFICE OF THE U.S. ATTORNEY
13                            BY:  LAKISHA HOLLIMAN, PARALEGAL
                                   MADDI WACHS, PARALEGAL
14
                              WILLIAMS & CONNOLLY
15                            BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

16                            TBC
                              BY:  BRIAN BENNETT, TECHNICIAN
17

18

19

20

21

22

23

24

25
```

1                          INDEX OF PROCEEDINGS

2        GOVERNMENT'S:

3

4        **ADAM ROSENDORFF**
         CROSS-EXAM BY MR. WADE (RES.)            P. 2590
5        REDIRECT EXAM BY MR. BOSTIC             P. 2721

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                OCTOBER 5, 2021

 2                    P R O C E E D I N G S

 3         (COURT CONVENED AT 8:13 A.M.)

 4         (JURY OUT AT 8:13 A.M.)

 5              THE COURT:  LET'S CALL OUR MATTER 18-58,

 6    UNITED STATES VERSUS HOLMES.

 7         GOOD MORNING.  WE'RE WITH COUNSEL OUTSIDE OF THE PRESENCE

 8    OF THE JURY.

 9         LET ME HAVE COUNSEL IDENTIFY HIMSELF, PLEASE.

10              MR. BOSTIC:  GOOD MORNING, YOUR HONOR.

11         JOHN BOSTIC FOR THE UNITED STATES.  I'M JOINED BY

12    JEFF SCHENK, ROBERT LEACH, AND KELLY VOLKAR.

13              THE COURT:  THANK YOU.

14              MR. WADE:  GOOD MORNING, YOUR HONOR.

15         LANCE WADE ON BEHALF OF MS. HOLMES.  WITH ME THIS MORNING

16    ARE MR. DOWNEY, MS. TREFZ, MR. CLEARY, MR. CLINE, AND

17    MS. HOLMES IS PRESENT AS WELL.

18              THE COURT:  THANK YOU.  GOOD MORNING EVERYONE.

19         SO WE'RE MEETING THIS MORNING REGARDING SOME EVIDENTIARY

20    QUESTIONS.  I THINK, MR. BOSTIC, YOU EMAILED MS. KRATZMANN AND

21    SAID WE SHOULD MEET.

22              MR. BOSTIC:  YES, YOUR HONOR.  AND WE PREVIOUSLY

23    FLAGGED THESE ISSUES FOR THE COURT AND INDICATED WE MIGHT NEED

24    THE COURT'S GUIDANCE ON HOW TO HANDLE THEM.

25         THESE ARE ISSUES RELATING TO DR. ROSENDORFF'S
```

08:14AM  1    POST-THERANOS EMPLOYMENT.  SINCE LEAVING THERANOS, HE HAS BEEN

08:14AM  2    EMPLOYED BY A NUMBER OF LABORATORIES, INCLUDING THREE IN

08:14AM  3    PARTICULAR THAT I UNDERSTAND THE DEFENSE MIGHT SEEK TO ELICIT

08:14AM  4    TESTIMONY FROM HIM ABOUT DURING CROSS.

08:14AM  5        IT'S THE GOVERNMENT'S POSITION THAT, FOR VARIOUS REASONS,

08:14AM  6    THAT TESTIMONY IS NOT ADMISSIBLE AND THE EVIDENCE THAT THE

08:14AM  7    DEFENSE SEEKS TO INTRODUCE IS NOT ADMISSIBLE UNDER 403, 608 AND

08:14AM  8    401.

08:14AM  9        I'M HAPPY TO ADDRESS THOSE DIFFERENT CATEGORIES OF

08:14AM  10   EVIDENCE IN TURN, BUT I'M NOT SURE WHETHER THE COURT WOULD FIND

08:14AM  11   THAT MORE HELPFUL OR HEARING FROM THE DEFENSE ON WHY, AS THE

08:15AM  12   PROPONENT, THE EVIDENCE IS --

08:15AM  13            THE COURT:  SURE.  WHY DON'T YOU TELL ME WHAT IT IS

08:15AM  14   YOU WANT TO DO, MR. WADE.

08:15AM  15            MR. WADE:  SURE, YOUR HONOR.

08:15AM  16        THERE ARE SEVERAL AVENUES BY WHICH THIS EVIDENCE CAN BE

08:15AM  17   ADMITTED, AND I CAN SET FORTH EACH OF THEM.  LET ME JUST FIRST

08:15AM  18   GIVE A LITTLE BIT OF A FACTUAL, RELEVANT FACTUAL OVERVIEW.

08:15AM  19            THE COURT:  LET ME ASK A PRELIMINARY QUESTION.

08:15AM  20        LAST NIGHT WE RECEIVED IN CHAMBERS AN EMAIL, I THINK IT

08:15AM  21   WAS AFTER 5:00 O'CLOCK, AND IT PERHAPS CONTAINED SOME

08:15AM  22   DOCUMENTS.

08:15AM  23        IS THIS WHAT WE'RE TALKING ABOUT?

08:15AM  24            MR. WADE:  IT'S NOT CLEAR, YOUR HONOR, THAT WE WOULD

08:15AM  25   ACTUALLY SEEK TO OFFER ANY OF THE DOCUMENTS DEPENDING UPON --

08:15AM   1          THE COURT:  LET ME START FROM THE BEGINNING.  ARE

08:15AM   2     THESE THE DOCUMENTS THAT WE'RE TALKING ABOUT NOW?  THE

08:15AM   3     DOCUMENTS THAT THE COURT RECEIVED AFTER 5:00 O'CLOCK LAST

08:15AM   4     NIGHT?  THE COLLECTION?

08:15AM   5          I'M NOT ASKING IF YOU'RE GOING TO INTRODUCE THEM.

08:15AM   6          MR. WADE:  YES.

08:15AM   7          THE COURT:  I THINK YOUR EMAIL SAID WE WILL ADDRESS

08:15AM   8     TOMORROW WHY WE THINK THIS TESTIMONY IS ADMISSIBLE UNDER 401,

08:16AM   9     608(B), AND FOR BIAS.  FOR PLANNING PURPOSES, WE CAN AVOID

08:16AM  10     ADDRESSING THESE ISSUES UNTIL AFTER THE LUNCH BREAK IF THAT

08:16AM  11     MAKES MATTERS EASIER FOR THE COURT.

08:16AM  12          YOU SAID IN THE EMAIL, WE WILL LIKELY, UNDERLINED, NOT

08:16AM  13     SEEK TO OFFER MANY OF THESE DOCUMENTS INTO EVIDENCE.

08:16AM  14          DOES THAT MEAN MORE THAN ONE OR LESS THAN ONE?

08:16AM  15          MR. WADE:  IT'S NOT CLEAR THAT WE'LL OFFER ANY,

08:16AM  16     YOUR HONOR.

08:16AM  17          WHAT WE WANTED TO DO, WITHOUT LAYING OUT OUR WHOLE

08:16AM  18     CROSS-EXAMINATION IN A SHORT PERIOD OF TIME, WE WANTED TO GIVE

08:16AM  19     SOME RELEVANT FACTUAL BACKGROUND TO THE COURT SO THE COURT CAN

08:16AM  20     CONSIDER SOME TESTIMONY THAT WE SEEK.

08:16AM  21          THE TESTIMONY REALLY RELATES TO -- IF I COULD GIVE THE

08:16AM  22     COURT JUST A VERY QUICK OVERVIEW.

08:16AM  23          THE COURT:  THERE'S EIGHT DOCUMENTS HERE.

08:16AM  24          MR. WADE:  THERE ARE EIGHT DOCUMENTS, BUT, FRANKLY,

08:16AM  25     YOUR HONOR, WHAT IS REALLY AT ISSUE WOULD BE THE QUESTIONS AND

08:16AM 1   ANSWERS THAT WE SEEK TO ELICIT FROM DR. ROSENDORFF.

08:16AM 2       IF HE ANSWERS THE QUESTIONS TRUTHFULLY, AS WE UNDERSTAND

08:17AM 3   HE PROBABLY WOULD BASED UPON THE DOCUMENTS, IT'S UNCLEAR TO US

08:17AM 4   THAT WE REALLY NEED TO ADMIT THE DOCUMENTS THEMSELVES IN THE

08:17AM 5   CASE.  SO IT'S NOT CLEAR THAT EXTRINSIC EVIDENCE WOULD BE

08:17AM 6   NEEDED.

08:17AM 7       IT MAY BE NEEDED TO IMPEACH OR REFRESH.

08:17AM 8       THERE ARE SEVERAL DIFFERENT POST-EMPLOYMENT ISSUES WITH

08:17AM 9   DR. ROSENDORFF THAT WE WOULD SEEK TO QUESTION HIM ABOUT.

08:17AM 10      LET ME GIVE AN OVERVIEW OF WHAT THEY ARE AND THEN I'LL

08:17AM 11  EXPLAIN WHY THEY'RE RELEVANT.

08:17AM 12      THE FIRST IS HIS EMPLOYMENT AT A COMPANY IMMEDIATELY

08:17AM 13  FOLLOWING HIS EMPLOYMENT WITH THERANOS.  HE WENT TO WORK AT A

08:17AM 14  COMPANY CALLED INVITAE.

08:17AM 15      WHILE HE WAS AT INVITAE --

08:17AM 16          THE COURT:  IT'S SPELLED?

08:17AM 17          MR. WADE:  I-N-V-I-T-A-E.

08:17AM 18      WHILE HE WAS AT THAT COMPANY, THE COMPANY HAD A MAJOR

08:18AM 19  ISSUE WITH RESPECT TO A QUALITY CONTROL FAILURE THAT RESULTED

08:18AM 20  IN INACCURATE AND UNRELIABLE PATIENT TEST RESULTS BEING SENT TO

08:18AM 21  50,000 PATIENTS RELATED TO GENETIC CANCER SCREENING.

08:18AM 22          THE COURT:  AND WHAT WAS THE TIMING OF THAT, THE

08:18AM 23  YEAR?

08:18AM 24          MR. WADE:  I BELIEVE THAT WAS IN 2016 OR '17.  LET

08:18AM 25  ME -- THE COURT'S INDULGENCE FOR A SECOND.

08:18AM  1          2017 IS WHEN IT CAME TO LIGHT, BUT THE RESULTS WERE THE

08:18AM  2     11 MONTHS PRIOR TO THAT.  SO IT WAS THE PERIOD 2016 TO '17 WHEN

08:18AM  3     THERE WERE INACCURATE RESULTS.  THE COMPANY CAME TO THE

08:18AM  4     CONCLUSION THAT THOSE RESULTS WERE, WERE DUE TO QUALITY CONTROL

08:18AM  5     FAILURES WITHIN THE LAB.

08:18AM  6          DR. ROSENDORFF LEFT THE COMPANY ALMOST IMMEDIATELY AFTER

08:19AM  7     THAT, I BELIEVE THE MONTH FOLLOWING THE ANNOUNCEMENT OR THE

08:19AM  8     DISCLOSURE OF THOSE ERRONEOUS RESULTS AND QUALITY CONTROL

08:19AM  9     FAILURES.  THAT'S ISSUE NUMBER ONE.

08:19AM 10          ISSUE NUMBER TWO IS WHILE HE WAS AT -- WORKING AT INVITAE,

08:19AM 11     HE ALSO WORKED AT A COMPANY CALLED UBIOME.  HE WAS A LAB

08:19AM 12     DIRECTOR THERE.  HE WAS FIRED FOR FAILING TO MEET HIS

08:19AM 13     PROFESSIONAL OBLIGATIONS, INCLUDING FOR NOT SHOWING UP IN THE

08:19AM 14     OFFICE AND NOT MAKING HIMSELF SUFFICIENTLY AVAILABLE.

08:19AM 15          THERE WERE ALSO VALIDATION REPORT ISSUES POTENTIALLY WITH

08:19AM 16     RESPECT TO VALIDATION REPORTS HE SIGNED.  HE WAS QUESTIONED BY

08:19AM 17     FEDERAL AGENTS AND PROSECUTORS ABOUT THOSE ACTS IN I BELIEVE IT

08:20AM 18     WAS NOVEMBER OR DECEMBER OF 2020.

08:20AM 19          AND TWO PEOPLE FROM UBIOME, THE CEO, I BELIEVE, AND THE

08:20AM 20     NUMBER TWO EXECUTIVE WERE INDICTED IN THAT CASE.

08:20AM 21          THE FOURTH ISSUE --

08:20AM 22               THE COURT:  THE THIRD ISSUE.

08:20AM 23               MR. WADE:  I'M SORRY, THIRD ISSUE.

08:20AM 24          AND MAYBE THERE'S ONLY THREE BECAUSE ONE RELATES TO HIS

08:20AM 25     COMPETENCE AT THERANOS, AND THEN WE HAVE INVITAE, UBIOME, AND

2553

08:20AM  1   THE LAST IS PERKIN ELMER, WHICH IS A MATTER THAT DR. ROSENDORFF

08:20AM  2   HIMSELF ACTUALLY RAISED IN HIS TESTIMONY THE OTHER DAY.  HE

08:20AM  3   MENTIONED THAT HE STILL DEALS WITH INQUIRIES THERE AND

08:20AM  4   MENTIONED WHERE HE WORKS.  PERKIN ELMER HAS BEEN THE SUBJECT OF

08:21AM  5   ONGOING INVESTIGATIONS RELATING TO THE ACCURACY OF ITS TEST

08:21AM  6   RESULTS.  IT WAS INSPECTED BY CMS, THE VERY SAME INSPECTORS WHO

08:21AM  7   ARE -- THREE OF WHOM ARE WITNESSES IN THIS CASE CONDUCTED THAT

08:21AM  8   INSPECTION.

08:21AM  9       THEY ISSUED A NOTICE OF DEFICIENCIES THAT INDICATED THAT

08:21AM 10   THERE WERE SERIOUS DEFICIENCIES WITHIN THE LAB.  THOSE

08:21AM 11   DEFICIENCIES INCLUDED INACCURATE TEST RESULTS, AND THEY ALSO

08:21AM 12   INCLUDED DEFICIENT PERFORMANCE OF THE LABORATORY DIRECTOR IN

08:21AM 13   NUMEROUS RESPECTS.

08:21AM 14       THERE WAS AN OPPORTUNITY, MULTIPLE OPPORTUNITIES FOR THE

08:21AM 15   LABORATORY DIRECTOR TO ADDRESS THOSE DEFICIENCIES AND TO SHOW

08:21AM 16   COMPLIANCE IN REMEDIATION.  THOSE EFFORTS, AS OF THE SPRING AND

08:21AM 17   SUMMER, WERE UNSUCCESSFUL.

08:21AM 18           THE COURT:  SPRING AND SUMMER OF?

08:22AM 19           MR. WADE:  OF 2021.

08:22AM 20       THERE WAS A PROPOSED SANCTION AND NOTICE OF SANCTIONS

08:22AM 21   ISSUED.  THAT NOTICE OF SANCTIONS INDICATES THAT DR. ROSENDORFF

08:22AM 22   COULD BE SUSPENDED FROM HIS ABILITY TO SERVE AS A LABORATORY

08:22AM 23   DIRECTOR AS A RESULT OF THE IMMEDIATE JEOPARDY NOTICE AND HIS

08:22AM 24   INABILITY TO CURE THOSE DEFICIENCIES.

08:22AM 25       HE'S HAD COMMUNICATIONS WITH WITNESSES IN THIS CASE.

2554

08:22AM   1          MR. YAMAMOTO FROM CMS WHO WE UNDERSTAND THE GOVERNMENT MAY

08:22AM   2    CALL IN THIS CASE.  HE SPECIFICALLY RAISED CONCERN ABOUT THE

08:22AM   3    CONSEQUENCES THAT COULD RESULT TO HIM PERSONALLY AS A RESULT OF

08:23AM   4    THESE DEFICIENCIES AND THE NOTICE OF SANCTIONS.

08:23AM   5          I NOTE THAT THIS WITNESS HAS PREVIOUSLY TESTIFIED IN THE

08:23AM   6    GRAND JURY EVEN BEFORE THESE ISSUES, AND I'LL QUOTE --

08:23AM   7                THE COURT:  WHICH WITNESS ARE YOU TALKING ABOUT?

08:23AM   8                MR. WADE:  MR. ROSENDORFF.

08:23AM   9          AND I'LL QUOTE, "IF CMS SEES THAT THERE ARE CONSISTENT

08:23AM  10    PROBLEMS WITH LABORATORY DIRECTOR JUDGMENT OR CONSISTENT ERRORS

08:23AM  11    BY THE LABORATORY DIRECTOR, THEY CAN TAKE AWAY YOUR LICENSE TO

08:23AM  12    BE A LAB DIRECTOR," CLOSED QUOTE.

08:23AM  13          THOSE ARE THE INCIDENTS.  WE THINK THERE ARE SEVERAL BASES

08:23AM  14    TO ADMIT THESE AND TO QUESTION THE WITNESS WITH RESPECT TO

08:23AM  15    THESE.

08:23AM  16          ONE IS THE WITNESS'S COMPETENCE HAS BEEN PUT INTO QUESTION

08:24AM  17    IN THIS CASE.  ON NUMEROUS OCCASIONS HE'S BEEN OFFERED TO

08:24AM  18    PROVIDE HIS OPINION WITH RESPECT TO CERTAIN ISSUES AND THE

08:24AM  19    STANDARDS AND THE PROPRIETY OF SOME OF THE CONDUCT THAT

08:24AM  20    OCCURRED AT THERANOS.

08:24AM  21          HE SET HIMSELF FORTH AS COMPETENT WHEN HE WAS INTERVIEWED

08:24AM  22    AND HIRED TO DO THE JOB AND HE MAINTAINS HIS COMPETENCE

08:24AM  23    THROUGHOUT.

08:24AM  24          MUCH OF THE TESTIMONY THAT WAS OFFERED ON DIRECT

08:24AM  25    EXAMINATION AND SUBSEQUENTLY ON CROSS-EXAMINATION RELATES TO

2555

08:24AM 1      702 TYPE OF ISSUES, WHETHER IT WAS SPECIFICALLY -- AND RELATE

08:24AM 2      TO HIS SPECIALIZED SKILL AND EXPERIENCE, WHETHER IT WAS

08:24AM 3      SPECIFICALLY NOTICED AS SUCH OR WHETHER HE WAS SPECIFICALLY

08:24AM 4      CERTIFIED AS SUCH, HE WAS OFFERING OPINIONS ABOUT LAB

08:24AM 5      PRACTICES.

08:24AM 6          HE WAS ALSO OFFERING OPINIONS THAT PEOPLE OTHER THAN

08:24AM 7      HIMSELF WERE RESPONSIBLE FOR SOME OF THESE DEFICIENCIES THAT

08:24AM 8      HE'S IDENTIFIED AT THERANOS.  HE'S POINTED THE FINGER AT MANY

08:24AM 9      OTHER PEOPLE, INCLUDING MY CLIENT, WHO STANDS HERE CHARGED

08:25AM 10     TODAY AS THE COURT WELL KNOWS.

08:25AM 11         TO THE EXTENT THAT FAILURES WITHIN THE LAB ARE THE RESULT

08:25AM 12     OF INCOMPETENCE OF SOMEONE OTHER THAN MY CLIENT, IT'S

08:25AM 13     EXCULPATORY OF MY CLIENT.

08:25AM 14         AND HIS -- HE HAS INDICATED THAT THE FAILURES ARE THE

08:25AM 15     RESULT OF, ARE THE RESULT OF AN UNWILLINGNESS OR AN INABILITY

08:25AM 16     TO ACT BY MS. HOLMES, MR. BALWANI, AND OTHERS.

08:25AM 17         WE THINK THE FACTS BELIE THAT, YOUR HONOR.  INDEED, IN

08:25AM 18     THIS VERY CASE THE GOVERNMENT HAS PUT AT ISSUE MR. ROSENDORFF,

08:25AM 19     DR. ROSENDORFF'S COMPETENCE.  THEY ACTUALLY NOTICED AN EXPERT

08:25AM 20     IN THE CASE WHO HAS -- WHO WE UNDERSTAND INTENDS TO OFFER

08:25AM 21     TESTIMONY, THEY'VE NOTICED TESTIMONY THAT HE WAS, IN FACT,

08:26AM 22     INCOMPETENT AND THAT ALL OF THE VALIDATION REPORTS THAT HE

08:26AM 23     SIGNED SHOULD HAVE NEVER BEEN ISSUED.

08:26AM 24         THAT IS THE TESTIMONY OF DR. MASTER THAT THEY'VE NOTICED,

08:26AM 25     AND IT'S ALSO THE TESTIMONY OF, WE UNDERSTAND, OF DR. DAS WHO

2556

08:26AM 1      THEY'VE IDENTIFIED AS A WITNESS WHO THEY INTEND TO CALL.

08:26AM 2          IN OTHER WORDS, TO THE EXTENT THAT THERE WERE DEFICIENCIES

08:26AM 3      THAT WERE IDENTIFIED IN THE LAB, THEY RESULT FROM INCOMPETENCE

08:26AM 4      OF DR. ROSENDORFF.

08:26AM 5          SECONDLY, DR. ROSENDORFF WAS INTERVIEWED BY THE GOVERNMENT

08:26AM 6      AND WAS IDENTIFIED AND DISCLOSED AS AN EXPERT IN THIS CASE.

08:26AM 7          IN CONNECTION WITH HIS INTERVIEW IN 2020, HE PROVIDED A

08:26AM 8      RESUME.  HE WAS QUESTIONED ABOUT HIS PERSONAL EXPERIENCE AND HE

08:26AM 9      WAS QUESTIONED ABOUT ITEMS ON HIS RESUME.  HIS RESUME WAS

08:27AM 10     ATTACHED TO THE MEMORANDUM OF INTERVIEW.  HIS RESUME WAS

08:27AM 11     SUBSEQUENTLY ATTACHED TO THE EXPERT DISCLOSURE THAT WAS MADE TO

08:27AM 12     COUNSEL IN THIS CASE.  I BELIEVE IT'S THE ONLY EXPERT

08:27AM 13     DISCLOSURE THAT WE HAVE NOT CHALLENGED IN THIS CASE.

08:27AM 14         THAT, THAT INTERVIEW -- AND IN THAT INTERVIEW AND IN THAT

08:27AM 15     RESUME DR. ROSENDORFF CONCEALED MATERIAL INFORMATION FROM

08:27AM 16     FEDERAL AGENTS AND INDIRECTLY FROM THE DEFENSE BY FAILING TO

08:27AM 17     DISCLOSE THAT HE WORKED AT UBIOME AT ALL, AND IT'S OMITTED

08:27AM 18     COMPLETELY FROM HIS RESUME.

08:27AM 19         HE ALSO FAILED TO DISCLOSE HIS NUMEROUS PROFESSIONAL

08:27AM 20     FAILURES AT UBIOME AND INVITAE.

08:27AM 21             THE COURT:  IS THAT SOMETHING THAT PEOPLE TYPICALLY

08:27AM 22     PUT ON THEIR RESUME, THEIR FAILURES?

08:27AM 23         (LAUGHTER.)

08:27AM 24             MR. WADE:  I'M SORRY?

08:27AM 25             THE COURT:  IS THAT TYPICALLY SOMETHING WE SEE ON

2557

| | | |
|---|---|---|
| 08:27AM | 1 | PEOPLE'S RESUMES, THEIR CAREER FAILURES? |
| 08:28AM | 2 | MR. WADE:  WHEN WITNESS ARE TOLD THAT THEY'RE GOING |
| 08:28AM | 3 | TO BE DISCLOSED AS EXPERTS IN THE FIELD, YES. |
| 08:28AM | 4 | IF I HIRED AN EXPERT AND IT TURNED OUT THE EXPERT HAD WHAT |
| 08:28AM | 5 | COULD BE PERCEIVED AS FOUR DIFFERENT SIGNIFICANT DEFICIENCIES |
| 08:28AM | 6 | OUT OF FIVE PERFORMANCES AS A LABORATORY DIRECTOR AND THAT |
| 08:28AM | 7 | EXPERT DID NOT DISCLOSE THAT, I WOULD CONSIDER THAT A MATERIAL |
| 08:28AM | 8 | CONCEALMENT AND I WOULD FIRE THAT EXPERT BECAUSE WHEN I'M -- |
| 08:28AM | 9 | WHEN THAT EXPERT IS BEING ASSESSED AND DISCLOSED AS AN EXPERT, |
| 08:28AM | 10 | WHICH DR. ROSENDORFF WAS IN THIS CASE, YOU HAVE TO DISCLOSE THE |
| 08:28AM | 11 | MATERIAL FACTS. |
| 08:28AM | 12 | HE KNEW EXACTLY WHAT THE GOVERNMENT WAS DOING, AND HE |
| 08:28AM | 13 | DIDN'T DISCLOSE THOSE FACTS, AND AS A RESULT WE BELIEVE HE HAS |
| 08:28AM | 14 | EXPOSURE UNDER 18 U.S.C. 1001 FOR CONCEALING MATERIAL |
| 08:28AM | 15 | INFORMATION FROM THE GOVERNMENT. |
| 08:28AM | 16 | FINALLY, I THINK HE KNOWS PRESENTLY, UNLESS THERE'S BEEN |
| 08:29AM | 17 | SUBSEQUENT EVENTS THAT THE GOVERNMENT HAS FAILED TO DISCLOSE TO |
| 08:29AM | 18 | US, HIS, HIS CAREER CURRENTLY SITS IN THE BALANCE.  AND THE |
| 08:29AM | 19 | DECISION AS TO WHETHER HIS CAREER WILL BE -- HE'LL CONTINUE TO |
| 08:29AM | 20 | BE ABLE TO SERVE AS A LABORATORY DIRECTOR RESTS IN THE HANDS OF |
| 08:29AM | 21 | THE FEDERAL GOVERNMENT REGULATORS, FEDERAL GOVERNMENT |
| 08:29AM | 22 | REGULATORS THAT ARE PART OF THIS CASE AND THAT COOPERATE |
| 08:29AM | 23 | EXTENSIVELY WITH THIS TEAM, AND THAT GIVES HIM BIAS TO TESTIFY |
| 08:29AM | 24 | IN FAVOR OF THE FEDERAL GOVERNMENT AND TO AVOID THE |
| 08:29AM | 25 | DEFICIENCIES THAT HE'S IDENTIFIED IN HIS OWN TESTIMONY AS BEING |

08:29AM   1    THE TYPE OF DEFICIENCIES THAT COULD RESULT IN HIS INABILITY TO

08:29AM   2    SERVE AS A LABORATORY DIRECTOR.

08:29AM   3            THE COURT:  AND THIS IS ADMISSIBLE UNDER 608(B)

08:29AM   4    YOU'RE SAYING?

08:29AM   5            MR. WADE:  I THINK THERE ARE -- IT'S ADMISSIBLE

08:30AM   6    UNDER 608(B) FOR CHARACTER FOR TRUTHFULNESS.

08:30AM   7            THE COURT:  AND WHAT IS THE CHARACTER FOR

08:30AM   8    TRUTHFULNESS IN THIS?  TELL ME.

08:30AM   9            MR. WADE:  HIS CONCEALMENT OF TWO OF THE INCIDENTS

08:30AM  10    FROM GOVERNMENT AGENTS WHEN HE WAS QUESTIONED ABOUT HIS

08:30AM  11    PROFESSIONAL EXPERIENCE.

08:30AM  12        I BELIEVE THAT HE CONCEALED -- HE PROBABLY CONCEALED

08:30AM  13    THESE, THESE INCIDENTS FROM PERKIN ELMER WHEN HE WAS HIRED TO

08:30AM  14    SERVE AS A COVID DIRECTOR.  THAT GOES TO HIS CHARACTER FOR

08:30AM  15    TRUTHFULNESS.

08:30AM  16        IF HE'S NOT CANDID -- I UNDERSTAND, YOUR HONOR, THAT

08:30AM  17    PEOPLE NORMALLY DON'T PUT THEIR FAILURES.

08:30AM  18        BUT IF THEY'RE REPRESENTING THEMSELVES FOR AN IMPORTANT

08:30AM  19    POSITION TO BE QUALIFIED AND IF THEY'VE ACTUALLY BEEN

08:30AM  20    TERMINATED FROM SEVERAL JOBS FOR NOT BEING QUALIFIED, THAT'S

08:30AM  21    ARGUABLY -- NOT ARGUABLY -- THAT IS MISLEADING.

08:30AM  22        BUT AS TO BIAS, UNDER THE SUPREME COURT DECISION IN

08:30AM  23    UNITED STATES VERSUS ABEL, 469 U.S. 45, THE RELATIONSHIP

08:30AM  24    BETWEEN A PARTY AND A WITNESS WHICH MAY LEAD THE WITNESS TO

08:31AM  25    SLANT, UNCONSCIOUSLY OR OTHERWISE, HIS TESTIMONY IN FAVOR OR

2559

08:31AM 1       AGAINST A PARTY IS BIAS, AND IT'S APPROPRIATE FOR INQUIRY IN

08:31AM 2       THIS CASE.

08:31AM 3           DR. ROSENDORFF --

08:31AM 4               THE COURT:  THE BIAS HERE IS, AS YOU SAY, BECAUSE

08:31AM 5       HE'S CONCERNED, HE HAS CAREER CONCERNS THAT IF HE DOES NOT

08:31AM 6       TESTIFY IN A WAY THAT IS OTHERWISE AGREEABLE TO THE GOVERNMENT,

08:31AM 7       THAT THE GOVERNMENT HAS SOME CONNECTION WITH HIS CAREER?

08:31AM 8               MR. WADE:  HIS TESTIMONY IS ON THE FRONT PAGE OF

08:31AM 9       MANY NEWSPAPERS.

08:31AM 10              THE COURT:  WHAT DOES THAT HAVE TO DO WITH THE

08:31AM 11      GOVERNMENT?  THAT'S THE BIAS ISSUE I'M TRYING TO EXPLORE.

08:31AM 12              MR. WADE:  IT HAS DIRECTLY TO DO WITH THE FEDERAL

08:31AM 13      GOVERNMENT.  THE FEDERAL GOVERNMENT, INCLUDING THERE'S AN AGENT

08:31AM 14      WHO WORKS UNDER HHS WHICH -- WHO IS SITTING IN THE BACK OF THIS

08:31AM 15      COURTROOM.  THEY'VE BEEN DEALING EXTENSIVELY WITH CMS AS THE

08:32AM 16      COURT KNOWS FROM DISCOVERY MATTERS IN THIS CASE.  THEY INTEND

08:32AM 17      TO CALL THREE OF THE WITNESSES IN THIS CASE WHO ARE INVOLVED IN

08:32AM 18      THAT JUDGMENT.

08:32AM 19          SO IF HE DOESN'T SATISFY THE GOVERNMENT THAT -- OR IF HE

08:32AM 20      DOESN'T BLAME OTHERS AND TAKES RESPONSIBILITY ON TO HIMSELF,

08:32AM 21      THAT INCREASES THE LIKELIHOOD THAT HE COULD BE SUBJECT TO

08:32AM 22      ADVERSE PENALTIES AND LOSE HIS ABILITY TO TESTIFY -- TO SERVE

08:32AM 23      AS A LABORATORY DIRECTOR.

08:32AM 24          THAT IS PRESENT RIGHT NOW IN THIS CASE.

08:32AM 25          BUT FUNDAMENTALLY, YOUR HONOR, HIS COMPETENCE HAS BEEN PUT

08:32AM   1    AT ISSUE BY THE EVIDENCE.  THE GOVERNMENT HAS SAID HE'S

08:32AM   2    COMPETENT.

08:32AM   3             THE COURT:  IS COMPETENCE AN ISSUE UNDER 608(B)?

08:32AM   4    608(B) REALLY TALKS ABOUT CHARACTER FOR TRUTHFULNESS, DOESN'T

08:32AM   5    IT?

08:32AM   6             MR. WADE:  COMPETENCE IS AN ISSUE IN THIS CASE UNDER

08:32AM   7    401.

08:32AM   8             THE COURT:  WE'RE TALKING ABOUT 608(B) HERE, AND I

08:32AM   9    THINK THAT'S WHAT YOU'VE SUGGESTED THIS WOULD BE ADMISSIBLE

08:32AM  10    FOR.

08:32AM  11             MR. WADE:  I THINK IT'S ADMISSIBLE UNDER 401.

08:33AM  12        JUST SO THE RECORD IS CLEAR, AND MAYBE I HAVEN'T DONE A

08:33AM  13    SUFFICIENTLY A GOOD JOB OF ADDRESSING THIS WITH THE COURT, I

08:33AM  14    BELIEVE ALL OF THE EVIDENCE, GIVEN THE THEORY THAT THE

08:33AM  15    GOVERNMENT HAS OFFERED WITH RESPECT TO THE THEORY OF

08:33AM  16    DR. ROSENDORFF, IS ADMISSIBLE UNDER 401 BECAUSE IT GOES TO HIS

08:33AM  17    COMPETENCE WHICH THE GOVERNMENT HAS PUT AT ISSUE IN THIS CASE,

08:33AM  18    PERIOD, FULL STOP.

08:33AM  19        WE DON'T NEED TO GO TO THE NEXT BRANCHES AT ALL.

08:33AM  20        UNDER THE NEXT BRANCHES WITH RESPECT TO BIAS AND HIS

08:33AM  21    CONCEALING INFORMATION FROM THE GOVERNMENT, WE THINK IT'S

08:33AM  22    ADMISSIBLE AS WELL.  IT'S ADMISSIBLE FOR BIAS ALSO BECAUSE IF

08:33AM  23    THE GOVERNMENT -- HE HAS A MOTIVE, HE HAS CONCEALED MATERIAL

08:33AM  24    INFORMATION FROM THE GOVERNMENT.  HE HAS 18 U.S.C. 1001

08:33AM  25    EXPOSURE.

08:33AM  1        TO THE EXTENT THAT HE TESTIFIES FAVORABLY FOR THE

08:33AM  2   GOVERNMENT, THAT MAY DECREASE THE LIKELIHOOD THAT THEY, THAT

08:34AM  3   THEY BRING CHARGES AGAINST HIM FOR THAT CONDUCT.  THAT'S A BIAS

08:34AM  4   BASIS.

08:34AM  5        THERE'S A BIAS BASIS FOR THE PERKIN ELMER BECAUSE HIS

08:34AM  6   CAREER HANGS IN THE BALANCE AT THE HANDS OF THE FEDERAL

08:34AM  7   GOVERNMENT.

08:34AM  8        AND SO -- AND THEN SEPARATE AND APART FROM THAT, THERE IS

08:34AM  9   608(B) BECAUSE WE DON'T THINK HE WAS CANDID AND TRUTHFUL IN

08:34AM 10   STATEMENTS THAT HE HAS MADE TO THESE POTENTIAL EMPLOYERS.

08:34AM 11             THE COURT:  UNDER 608(B), SHOULD WE ALLOW EXTRINSIC

08:34AM 12   EVIDENCE TO COME IN?

08:34AM 13             MR. WADE:  NO, UNDER THE 608(B) THEORY WE SHOULD

08:34AM 14   NOT.  AS THE COURT KNOWS, WE CAN INQUIRE OF THE WITNESS, BUT WE

08:34AM 15   CAN'T OFFER EXTRINSIC EVIDENCE.

08:34AM 16        AND I WANT TO BE CLEAR, I DON'T INTEND TO NECESSARILY

08:34AM 17   OFFER EXTRINSIC EVIDENCE.  I INTEND --

08:34AM 18             THE COURT:  RIGHT.  I THINK YOU'RE ON THAT PATH NOW

08:34AM 19   TO TELL ME WHAT IS IT THAT YOU INTEND TO DO WITH THE EVIDENCE

08:34AM 20   THAT YOU'VE TALKED ABOUT THIS MORNING WITH THIS WITNESS.

08:34AM 21             MR. WADE:  I INTEND TO QUESTION HIM ABOUT THE

08:34AM 22   EVENTS -- HIS COMPETENCE ABOUT THE FACT THAT THESE EVENTS

08:35AM 23   HAPPENED AND THESE RESULTS HAPPENED, HE HAD QUALITY CONTROL

08:35AM 24   FAILURES AT THIS COMPANY, AND IT RESULTED IN 50,000 INACCURATE

08:35AM 25   RESULTS, AND HE WAS TERMINATED AS A RESULT.

2562

| | | |
|---|---|---|
| 08:35AM | 1 | WITH RESPECT TO PERKIN ELMER, THERE WERE NUMEROUS |
| 08:35AM | 2 | DEFICIENCIES WITH RESPECT TO HIS RESPONSIBILITIES, THERE WERE |
| 08:35AM | 3 | QUALITY CONTROL FAILURES, THERE WERE INADEQUATE VALIDATION |
| 08:35AM | 4 | REPORTS. |
| 08:35AM | 5 | THE COURT:  AND THESE ARE ALL EMPLOYMENTS |
| 08:35AM | 6 | POST-THERANOS? |
| 08:35AM | 7 | MR. WADE:  THEY ARE, YES. |
| 08:35AM | 8 | THE COURT:  AND WHAT IS THE RELEVANCE OF THAT?  WHY |
| 08:35AM | 9 | IS HE -- LET'S JUST STAY ON YOUR TRACK. |
| 08:35AM | 10 | MR. WADE:  YES. |
| 08:35AM | 11 | THE COURT:  IF HE'S INCOMPETENT POST-THERANOS, WHAT |
| 08:35AM | 12 | IS THE RELEVANCE TO HIS TIME AT THERANOS? |
| 08:35AM | 13 | MR. WADE:  BECAUSE HE WAS INCOMPETENT AT THERANOS, |
| 08:35AM | 14 | TOO, AND THAT'S THE REASON WHY MANY OF THE FAILURES WITHIN THE |
| 08:36AM | 15 | LAB HAPPENED. |
| 08:36AM | 16 | THE GOVERNMENT INTENDS TO OFFER THAT EVIDENCE ITSELF IN |
| 08:36AM | 17 | THIS CASE, SO THE IDEA THAT -- THE GOVERNMENT'S EXPERT HAS |
| 08:36AM | 18 | BASICALLY SAID THAT DR. ROSENDORFF IS INCOMPETENT, AND SO THE |
| 08:36AM | 19 | LABORATORY DIRECTOR WHO MS. HOLMES HIRED AFTER CMS CAME IN AND |
| 08:36AM | 20 | INSPECTED AND STARTED IDENTIFYING ISSUES, HE, TOO HAS SAID THAT |
| 08:36AM | 21 | DR. ROSENDORFF IS INCOMPETENT AND THAT THE VALIDATION REPORTS |
| 08:36AM | 22 | THAT HE SIGNED WERE DEFICIENT, AND SEVERAL OF THEM. |
| 08:36AM | 23 | ALL OF THE VALIDATION REPORTS FOR THE EDISON DEVICE WERE |
| 08:36AM | 24 | DEFICIENT. |
| 08:36AM | 25 | TWO OF THE GOVERNMENT'S WITNESSES INTEND TO OFFER THAT. |

08:36AM   1          THERE WAS EVERY REASON FOR THESE FOLKS TO BELIEVE THAT HE

08:36AM   2    WAS COMPETENT.  HE REPRESENTED HIMSELF TO BE COMPETENT, AND --

08:36AM   3          THE COURT:  WE DON'T HAVE TO GET INTO A CLOSING

08:36AM   4    ARGUMENT HERE.

08:36AM   5          MR. WADE:  YEAH.

08:36AM   6          THE COURT:  I'M TRYING TO GLEAN WHAT IS THE

08:36AM   7    RELEVANCE OF THE FACT THAT SOMEBODY IS INCOMPETENT POST HIS

08:37AM   8    TIME AT THERANOS, AND I'M TRYING TO GAUGE THE RELEVANCE THAT

08:37AM   9    AND MAYBE MR. BOSTIC CAN SHARE HIS OPINIONS.

08:37AM   10         MR. WADE:  FUNDAMENTALLY, I BELIEVE THE TESTIMONY

08:37AM   11   BEFORE THE COURT IS HE IS THE PERSON ULTIMATELY RESPONSIBLE

08:37AM   12   WITHIN THE LABORATORY.  HE'S THE PERSON UPON WHOM EVERYONE IS

08:37AM   13   LEGALLY ENTITLED TO RELY.

08:37AM   14         THE COURT:  I UNDERSTAND.

08:37AM   15         MR. WADE:  SO IF HE'S -- IF HE WAS INCOMPETENT AND

08:37AM   16   DIDN'T DO HIS JOB, THAT IS EXCULPATORY OF MS. HOLMES.

08:37AM   17      AND THE FACT THAT HE APPEARS TO HAVE ALMOST NEVER

08:37AM   18   COMPETENTLY DONE HIS JOB IS HIGHLY RELEVANT.

08:37AM   19         THE COURT:  THAT'S CHARACTER EVIDENCE OF A DIFFERENT

08:37AM   20   TYPE, ISN'T IT?

08:37AM   21         MR. WADE:  THE GOVERNMENT HAS ELICITED HIS VIEWS AS

08:37AM   22   TO THE RIGHT WAY AND WRONG WAY TO DO THINGS.

08:37AM   23      HE APPEARS NOT TO BE QUALIFIED TO DO THIS BASED UPON HIS

08:38AM   24   PERFORMANCE AT THESE MANY COMPANIES.

08:38AM   25         THE COURT:  THIS SOUNDS LIKE CHARACTER EVIDENCE FOR

2564

08:38AM 1      A DIFFERENT TRAIT.

08:38AM 2              MR. WADE:  NO.  IT GOES DIRECTLY TO COMPETENCE WHICH

08:38AM 3      THE GOVERNMENT HAS PUT AT ISSUE IN THIS CASE.

08:38AM 4          THE GOVERNMENT INTENDS TO OFFER EVIDENCE OF HIS

08:38AM 5      INCOMPETENCE, SO I DON'T KNOW HOW IT WOULDN'T BE RELEVANT.

08:38AM 6              THE COURT:  LET ME ASK MR. BOSTIC ABOUT THAT.

08:38AM 7          MR. BOSTIC?

08:38AM 8              MR. BOSTIC:  THANK YOU, YOUR HONOR.

08:38AM 9          THE COURT WON'T BE SURPRISED THAT I DISAGREE WITH A NUMBER

08:38AM 10     OF THE REPRESENTATIONS AND CHARACTERIZATIONS THAT DEFENSE

08:38AM 11     COUNSEL HAS MADE.

08:38AM 12         LET ME START WITH THE FACTS, AS MR. WADE DID, AND JUST

08:38AM 13     CLARIFY A FEW THINGS.

08:38AM 14         FIRST, WHEN IT COMES TO THE INCIDENT AT INVITAE, FIRST OF

08:38AM 15     ALL, THE DOCUMENT THAT THE DEFENSE HAS PROVIDED AS PROOF FOR

08:38AM 16     THIS IS AN ARTICLE FROM A PUBLICATION CALLED "THE DARK REPORT,"

08:38AM 17     WHICH I HAVEN'T HEARD OF BEFORE.  OBVIOUSLY THIS DOCUMENT

08:38AM 18     ITSELF IS HEARSAY, SO NOT COMPETENT TO ACTUALLY PROVE THE TRUTH

08:38AM 19     OF ANY OF THOSE FACTS.

08:38AM 20         BUT SUBJECT TO THAT, I NOTE THAT, AS REPORTED IN THAT

08:38AM 21     ARTICLE, IT DOES TALK ABOUT THE NEED, OR THE COMPANY'S DECISION

08:39AM 22     TO RETEST 50,000 PATIENTS AFTER THE COMPANY DISCOVERED THAT

08:39AM 23     THEY WEREN'T RUNNING A CERTAIN TEST, A TEST FOR WHAT I

08:39AM 24     UNDERSTAND TO BE A VERY RARE GENETIC VARIATION THAT UNDERLIES A

08:39AM 25     VERY TINY SLIVER OF GENETIC CANCERS.

08:39AM  1        THE COMPANY ESTIMATES THAT APPROXIMATELY 2 TO 15 PATIENTS

08:39AM  2   WOULD HAVE BEEN AFFECTED BY THAT FAILURE TO INCLUDE THAT

08:39AM  3   PARTICULAR TEST IN THEIR PANEL OF TESTS THAT THEY WERE RUNNING.

08:39AM  4        THEY'VE DECIDED TO RETEST 50,000 PATIENTS AS A REMEDIAL

08:39AM  5   MEASURE -- WHICH BY THE WAY, BRINGS THIS UNDER RULE 407 AND IT

08:39AM  6   SHOULD BE KEPT OUT FOR THAT REASON -- BUT BESIDES WHICH, THAT

08:39AM  7   NUANCE, I THINK, ILLUSTRATES WHY IT'S DANGEROUS TO ALLOW THE

08:39AM  8   DEFENSE TO GO INTO THESE ISSUES HERE BECAUSE THE WAY THAT

08:39AM  9   MR. WADE JUST CHARACTERIZED IT, YOU KNOW, INACCURATE RESULTS

08:39AM 10   FOR 50,000 PATIENTS IS SIMPLY NOT CORRECT, AND ALLOWING FULL

08:39AM 11   REIN FOR DR. ROSENDORFF TO BE QUESTIONED ON THESE ISSUES

08:40AM 12   INVITES -- I HESITATE TO EVEN CALL THEM MINI-TRIALS BECAUSE

08:40AM 13   THEY'RE TRIALS IN THEIR OWN RIGHT -- OF OUTSIDE THERANOS

08:40AM 14   COMPLICATED SITUATIONS THAT WE SIMPLY DON'T HAVE THE COMPLETE

08:40AM 15   RECORD TO LITIGATE AT THIS POINT.  THAT'S INVITAE.

08:40AM 16        I'LL ALSO POINT OUT ON UBIOME, MY UNDERSTANDING IS THAT

08:40AM 17   DR. ROSENDORFF WORKED AT UBIOME FOR A NUMBER OF MONTHS.  DUE TO

08:40AM 18   A MEDICAL ISSUE HE WAS ABSENT FOR PART OF THAT.  HE EVENTUALLY

08:40AM 19   SEPARATED FROM THE COMPANY.  IT'S UNCLEAR FROM THE DOCUMENTS

08:40AM 20   THAT I'VE SEEN THAT HE WAS FIRED FOR FAILURE TO PERFORM HIS

08:40AM 21   DUTIES AS MR. WADE DESCRIBED, SO I THINK THAT'S ANOTHER FACT

08:40AM 22   THAT MIGHT BE IN DISPUTE.

08:40AM 23        AS TO THE GOVERNMENT'S INVESTIGATION OF UBIOME, LET ME

08:40AM 24   RAISE THAT DR. ROSENDORFF WAS NEVER A TARGET OF THAT

08:40AM 25   INVESTIGATION.  HE WAS INTERVIEWED AS A WITNESS FAIRLY LATE IN

08:40AM 1    THE INVESTIGATION.  THAT CASE HAS SINCE BEEN CHARGED.  TWO

08:41AM 2    PEOPLE WERE CHARGED IN THAT CASE.  DR. ROSENDORFF WAS NOT ONE

08:41AM 3    OF THEM.

08:41AM 4        THE GOVERNMENT'S VIEW IS THAT THE CASE AND THE CONDUCT AT

08:41AM 5    ISSUE IN THAT CASE, WHICH REALLY RELATES TO BILLING BY THE WAY,

08:41AM 6    INSURANCE BILLING AND NOT THE ACCURACY OF THE TESTS THEMSELVES

08:41AM 7    AS THIS CASE DOES.

08:41AM 8            THE COURT:  THAT CASE DOES NOT REVOLVE AROUND

08:41AM 9    LABORATORY PRACTICES OR INACCURACIES IN THE LAB.  IT SOUNDS

08:41AM 10   LIKE IT'S A HEALTH FRAUD TYPE OF A SITUATION.

08:41AM 11           MR. BOSTIC:  THAT'S CORRECT, YOUR HONOR.  THE

08:41AM 12   ALLEGATIONS IN THAT CASE WERE THAT PATIENTS, AND THE INSURANCE

08:41AM 13   COMPANIES ACTUALLY, WERE BILLED FOR TESTS BEFORE THEY WERE

08:41AM 14   VALIDATED.

08:41AM 15       OF COURSE DR. ROSENDORFF, AS THE LABORATORY DIRECTOR, HAD

08:41AM 16   NOTHING TO DO WITH THE BILLING PRACTICES.  HE TOLD THE

08:41AM 17   GOVERNMENT THAT HE WAS UNAWARE OF THAT FRAUDULENT BILLING

08:41AM 18   PRACTICE.  THERE'S NO EVIDENCE TO THE CONTRARY.

08:41AM 19       IN FACT, I UNDERSTAND THAT THE PREVIOUS LAB DIRECTOR AT

08:41AM 20   UBIOME QUIT WHEN HE FOUND OUT ABOUT THE BILLING PRACTICES OF

08:42AM 21   THAT COMPANY.

08:42AM 22       SO THERE WOULD HAVE BEEN REASON FOR THE ACTUAL DEFENDANTS

08:42AM 23   IN THAT CASE TO CONCEAL WHAT THEY WERE DOING FROM

08:42AM 24   DR. ROSENDORFF.

08:42AM 25           THE DANGER OF GETTING INTO THAT TOPIC IS THAT

2567

08:42AM  1    DR. ROSENDORFF WILL BE DEEMED GUILTY BY ASSOCIATION FOR HAVING

08:42AM  2    BEEN PART OF THAT COMPANY, PART OF THE COMPANY THAT WAS

08:42AM  3    SUBSEQUENTLY INVESTIGATED BY THE GOVERNMENT AGAIN, PART OF THE

08:42AM  4    COMPANY THAT RESULTED IN THE PRINCIPALS BEING INDICTED AS THIS

08:42AM  5    COMPANY DID.

08:42AM  6        THAT KIND OF GUILT BY ASSOCIATION WE THINK IS

08:42AM  7    INAPPROPRIATE AND EXCLUDABLE UNDER 403.

08:42AM  8        FINALLY, AS TO THE PERKIN ELMER SITUATION, THE CMS

08:42AM  9    INSPECTION IN THAT CASE OBVIOUSLY HAS NOTHING TO DO WITH THE

08:42AM 10    CONDITION OF THE LABORATORY AT THERANOS.  I AGREE WITH THE

08:42AM 11    COURT THAT THIS IS CHARACTER EVIDENCE.

08:42AM 12        IF WE'RE TALKING ABOUT DR. ROSENDORFF'S COMPETENCY,

08:43AM 13    ANOTHER WAY TO SAY THAT IS HIS CHARACTER FOR BEING A COMPETENT

08:43AM 14    OR INCOMPETENT LABORATORY DIRECTOR, AND I THINK WHAT THE

08:43AM 15    DEFENSE IS TRYING TO DO HERE IS TO BRING IN UNRELATED CONDUCT

08:43AM 16    TO SHOW THAT HE HAS THAT CHARACTER TRAIT, AND THE CHARACTER

08:43AM 17    TRAIT BEING A CARELESS LAB DIRECTOR.

08:43AM 18        THAT IS NOT A PROPER USE OF THAT KIND OF EVIDENCE UNDER

08:43AM 19    404, AND I DON'T THINK THAT THE DEFENSE CAN SALVAGE THE

08:43AM 20    ADMISSIBILITY BY RELYING ON RULE 608 BECAUSE I DON'T THINK IT'S

08:43AM 21    CLEAR AT ALL THAT DR. ROSENDORFF ACTUALLY CONCEALED THIS

08:43AM 22    INFORMATION FROM THE GOVERNMENT OR SAID ANYTHING INCONSISTENT

08:43AM 23    WITH THE TRUTH IN THIS CASE.

08:43AM 24        THE DEFENSE CHARACTERIZES THAT INTERVIEW AND THAT

08:43AM 25    INTERACTION WITH DR. ROSENDORFF AS DR. ROSENDORFF HOLDING

08:43AM  1     HIMSELF OUT AS AN EXPERT.  THE DEFENSE COMPARED IT TO A

08:43AM  2     SITUATION WHERE A LITIGATING PARTY SELECTS AND HIRES AN EXPERT.

08:43AM  3          THAT'S NOT AT ALL WHAT HAPPENED HERE.

08:44AM  4          THE GOVERNMENT HAS ALWAYS VIEWED DR. ROSENDORFF'S

08:44AM  5     TESTIMONY AS PRIMARILY, IF NOT ENTIRELY, PERCIPIENT TESTIMONY.

08:44AM  6          OUT OF AN ABUNDANCE OF CAUTION, WE DID DISCLOSE SOME OF

08:44AM  7     HIS OPINIONS AS EXPERT OPINIONS.

08:44AM  8          HE DIDN'T END UP TESTIFYING AS AN EXPERT, HOWEVER.

08:44AM  9          AND THE MEETING THAT WE HAD IN SEPTEMBER OF 2020 WITH

08:44AM 10     DR. ROSENDORFF WAS FOR THE PURPOSE OF US ASKING HIM INFORMATION

08:44AM 11     ABOUT WHAT HIS OPINIONS WERE SO WE COULD SUMMARIZE THEM AND

08:44AM 12     PROVIDE THAT NOTICE TO THE DEFENSE.

08:44AM 13          IT WAS NOT SO THAT DR. ROSENDORFF COULD CONVINCE US OF HIS

08:44AM 14     QUALIFICATIONS OR PROVIDE US WITH A COMPREHENSIVE LIST OF

08:44AM 15     EVERYTHING THAT HE HAS DONE.

08:44AM 16          AND THROUGH THAT LENS, I JUST DON'T THINK IT HOLDS WATER

08:44AM 17     TO SAY THAT HE CONCEALED INFORMATION OR LIED TO THE GOVERNMENT

08:44AM 18     AND HAS ANY EXPOSURE UNDER 1001.

08:44AM 19               MR. WADE:  YOUR HONOR --

08:44AM 20               THE COURT:  EXCUSE ME.

08:44AM 21          MR. WADE SUGGESTS THAT HE FALSIFIED INFORMATION ON HIS

08:44AM 22     RESUME, AND THEN HE ALSO SUGGESTS THAT HE IS, IN ESSENCE, UNDER

08:45AM 23     YOUR CONTROL BECAUSE OF THE BIAS AND HIS CAREER FEARS RELATED

08:45AM 24     TO UNSATISFACTORY TESTIMONY AS JUDGED BY THE GOVERNMENT.

08:45AM 25          CAN YOU COMMENT ON THAT?

08:45AM 1          MR. BOSTIC:  YES, YOUR HONOR.

08:45AM 2       AS TO BIAS FIRST, I THINK THERE'S THE, THE KIND OF CORE

08:45AM 3    SITUATION THAT WE ALL HAVE IN MIND WHERE THERE'S A COOPERATING

08:45AM 4    WITNESS WHO ALSO HAS SOME CRIMINAL LIABILITY FOR SIMILAR

08:45AM 5    CONDUCT.  THE COOPERATING WITNESS HAS ENTERED INTO AN AGREEMENT

08:45AM 6    WITH THE GOVERNMENT, PERHAPS A PLEA AGREEMENT.

08:45AM 7       ON CROSS, THE DEFENDANT'S LAWYER IS ENTITLED TO GET INTO

08:45AM 8    THAT RELATIONSHIP, ANY PROMISES THAT HAVE BEEN MADE.  THERE'S

08:45AM 9    ENOUGH OF A NEXUS THERE TO MAKE THAT RELEVANT, NOT EXCLUDABLE

08:45AM 10   UNDER 403.

08:45AM 11      HERE I THINK THE BIAS ARGUMENT IS TOO ATTENUATED.  IT'S

08:45AM 12   COMPLETELY SPECULATIVE TO THINK THAT DR. ROSENDORFF'S TESTIMONY

08:45AM 13   IN THIS CRIMINAL CASE WILL ACTUALLY HAVE ANY EFFECT ON WHAT

08:45AM 14   ANOTHER GOVERNMENT REGULATORY BODY DOES WHEN VIEWING THE

08:46AM 15   LABORATORY VIOLATIONS.  THE NEXUS JUST HASN'T BEEN ESTABLISHED.

08:46AM 16          THE COURT:  MR. WADE SUGGESTS THAT THERE ARE

08:46AM 17   WITNESSES IN THIS CASE WHO PERHAPS HAVE DONE THE INVESTIGATIONS

08:46AM 18   IN THE LABS THAT THIS DOCTOR HAS WORKED AT, AND HE SUGGESTS

08:46AM 19   THAT THAT INTIMACY AND CONNECTION BETWEEN THOSE TWO CASES

08:46AM 20   SUGGESTS SOMETHING.  IS THAT A CONCERN?

08:46AM 21          MR. BOSTIC:  I DON'T THINK SO, YOUR HONOR.  I THINK

08:46AM 22   THE CMS WITNESSES HAVE A RELATIONSHIP TO THIS CASE THAT

08:46AM 23   DR. ROSENDORFF ALSO DOES AND THAT THEY BOTH HAVE RELEVANT

08:46AM 24   INFORMATION TO SHARE ABOUT THERANOS.

08:46AM 25      I DON'T THINK THAT LINKS THOSE WITNESSES TO

08:46AM  1    DR. ROSENDORFF.  HIS LINK TO THEM IS THROUGH THE REGULATORY

08:46AM  2    ACTIVITIES THAT AREN'T TIED TO THIS CASE.

08:46AM  3        I THINK LOOKING AT THE ABEL DECISION, IT'S CLEAR HOW FAR

08:46AM  4    AFIELD WE ARE HERE FROM WHAT HAPPENED THERE.  THERE WE'RE

08:46AM  5    TALKING ABOUT A WITNESS BEING IN THE SAME GANG AS THE DEFENDANT

08:46AM  6    AND A GANG THAT REQUIRES THEM TO LIE AND DO ANYTHING TO HELP

08:47AM  7    EACH OTHER.  THAT KIND OF THING OBVIOUSLY IS CRITICAL TO

08:47AM  8    EXPLORE ON CROSS-EXAMINATION.  THAT IS COMPETENT BIAS EVIDENCE.

08:47AM  9        THIS, THIS -- THE RELATIONSHIP THAT DR. ROSENDORFF HAS

08:47AM 10    WITH THE FEDERAL GOVERNMENT IS ONE THAT MANY PEOPLE HAVE WITH

08:47AM 11    THE FEDERAL GOVERNMENT, ANYONE WHO HAS DEALINGS WITH THE I.R.S.

08:47AM 12    OR OTHER BRANCHES OF THE NUMEROUS GOVERNMENT WHICH IS NOT

08:47AM 13    MONOLITHIC, YOU COULD MAKE THE SAME KIND OF ARGUMENT FOR.  I

08:47AM 14    THINK THE CONNECTION IS JUST NOT STRONG ENOUGH HERE.

08:47AM 15              THE COURT:  OKAY.

08:47AM 16              MR. WADE:  YOUR HONOR, IF I COULD JUST CLARIFY A FEW

08:47AM 17    FACTS.

08:47AM 18        THE WITNESS SAYS IN HIS INTERVIEW WITH THE GOVERNMENT ON

08:47AM 19    UBIOME THAT HE WAS FIRED.  OKAY?  SO THERE'S NO AMBIGUITY AS TO

08:47AM 20    THAT.  HE SAID HE WAS FIRED IN STATEMENTS TO THE GOVERNMENT.

08:47AM 21        SO -- AND HE WAS FIRED ESSENTIALLY PROBABLY BECAUSE, I

08:47AM 22    BELIEVE HE SAID IN HIS INTERVIEW, BECAUSE HE WASN'T SHOWING UP

08:47AM 23    AND HE WASN'T DISPATCHING HIS PROFESSIONAL OBLIGATIONS.

08:47AM 24              THE COURT:  MR. BOSTIC SUGGESTS THAT THERE WAS A

08:47AM 25    HEALTH ISSUE.

08:48AM   1          MR. WADE:  THERE WAS A HEALTH ISSUE WITH RESPECT TO

08:48AM   2    ONE ABSENCE, BUT NOT WITH RESPECT TO OTHER ABSENCES.

08:48AM   3          THE COURT:  SO WHEN WE GO INTO THIS -- AND THIS IS

08:48AM   4    WHAT 608(B) TEACHES -- THE REASON FOR 608(B) AND EXTRINSIC

08:48AM   5    EVIDENCE, AS YOU KNOW, IS TO AVOID MINI TRIALS, TO AVOID

08:48AM   6    GETTING INTO THESE OFF RAMPS THAT TALK ABOUT PERHAPS HELPFUL

08:48AM   7    INFORMATION, BUT LIKE YOU JUST HEARD ABOUT UBIOME, THEIR

08:48AM   8    PROBLEMS WERE NOT LAB PROBLEMS APPARENTLY, THEY WERE BILLING

08:48AM   9    PROBLEMS AT A DIFFERENT LEVEL.

08:48AM  10       THIS IS THE ISSUE WE COME INTO THEN.  IT BECOMES A 403

08:48AM  11    TYPE OF ISSUE.  SHOULD WE ALLOW -- SHOULD THE COURT ALLOW

08:48AM  12    ADDITIONAL EVIDENCE IN TO CLEAR THE RECORD TO SHOW THAT, WELL,

08:48AM  13    THERE WERE PROBLEMS THERE, HE WAS THERE, THE PROBLEMS WERE NOT

08:48AM  14    IN THE LAB, THEY WERE BECAUSE OF SOME ALLEGED INCOMPETENCE OR

08:48AM  15    ALLEGED THEFT IN THE BILLING THAT HE HAD NOTHING TO DO WITH.

08:49AM  16       THAT'S A DIFFERENT -- I THINK YOU'LL AGREE, THAT'S A

08:49AM  17    DIFFERENT CIRCUMSTANCE.

08:49AM  18          MR. WADE:  I SEE IT A BIT DIFFERENTLY, YOUR HONOR.

08:49AM  19          THE COURT:  OTHERWISE YOU'RE SAYING, WELL, HE'S A

08:49AM  20    BAD GUY AND, YOU KNOW, BAD GUYS, THEY SEEM TO COLLECT TOGETHER.

08:49AM  21          MR. WADE:  YOUR HONOR, WHAT I'M SAYING IS THAT BIAS

08:49AM  22    IS NOT SOMETHING THAT THE, THAT THE COURT -- THAT THE

08:49AM  23    GOVERNMENT GETS TO DECIDE, WELL, HE'S BIASSED OR HE'S NOT

08:49AM  24    BIASSED.  IT'S IN THE EYES OF THE WITNESS.

08:49AM  25       I READ HIS GRAND JURY TESTIMONY AS TO THE CONCERNS THAT HE

2572

08:49AM 1    HAS ABOUT THE ABILITY TO PRACTICE IF THINGS ARE SHOWN TO BE

08:49AM 2    DEFICIENT.

08:49AM 3        HE KNOWS THAT HIS ABILITY TO PRACTICE IS CURRENTLY AT

08:49AM 4    ISSUE AND IN THE HANDS OF THE FEDERAL GOVERNMENT.  HE KNOWS

08:49AM 5    THAT.

08:49AM 6        HE KNOWS THAT THOSE PEOPLE ARE THE SAME PEOPLE INVOLVED IN

08:49AM 7    THIS CASE.  HE KNOWS THAT.

08:49AM 8        AND SO -- BUT THERE'S A MORE FUNDAMENTAL BIAS, YOUR HONOR.

08:49AM 9    THE GOVERNMENT JUST SAID THAT HE WASN'T A TARGET AND HE WASN'T

08:49AM 10   CHARGED, BUT HE WAS -- HE WAS ALMOST CERTAINLY A SUBJECT, WHICH

08:50AM 11   MEANS THAT HE WAS WITHIN THE ZONE OF DANGER WITHIN THAT AND HE

08:50AM 12   GOES IN TO INTERVIEW WITH THE GOVERNMENT AND THE FACT THAT THEY

08:50AM 13   DON'T CHARGE HIM IS MAYBE EVIDENCE OF WHY HE WANTS TO COOPERATE

08:50AM 14   WITH THIS OFFICE.  IT'S THE SAME U.S. ATTORNEY'S OFFICE,

08:50AM 15   YOUR HONOR.

08:50AM 16          THE COURT:  HOW LONG AGO WAS THAT?

08:50AM 17          MR. WADE:  LAST YEAR, LESS THAN A YEAR AGO.

08:50AM 18          MR. BOSTIC:  THE INTERVIEW, YOUR HONOR, WAS IN

08:50AM 19   DECEMBER OF 2020.  I BELIEVE THE CASE WAS CHARGED IN MARCH OF

08:50AM 20   2021.  BUT THE INVESTIGATION BEGAN IN 2019, I BELIEVE.

08:50AM 21       AND I CAN ALSO REPRESENT TO THE COURT THAT THE, THE

08:50AM 22   GOVERNMENT TEAM INVESTIGATING UBIOME WAS WELL AWARE OF

08:50AM 23   DR. ROSENDORFF'S INVOLVEMENT IN THAT CASE IN 2019, WELL IN

08:50AM 24   ADVANCE OF HIS INTERVIEW IN 2020 WITH THE THERANOS TEAM.

08:50AM 25       SO THERE WOULDN'T BE A POINT IN HIM TRYING TO CONCEAL THAT

2573

08:50AM   1    FACT FROM THE GOVERNMENT AT THAT TIME.

08:50AM   2            THE COURT:  IS THAT A CASE THAT IS IN THIS DISTRICT?

08:50AM   3            MR. BOSTIC:  IT IS, YOUR HONOR.

08:51AM   4            THE COURT:  ALL RIGHT.  WELL, WE'RE CLOSING IN ON

08:51AM   5    9:00 O'CLOCK.  I APPRECIATE YOUR EMAIL LAST NIGHT, MR. WADE,

08:51AM   6    SAYING THAT THESE ISSUES ARE NOT LIKELY TO COME UP IN THE

08:51AM   7    MORNING SESSION.

08:51AM   8            MR. WADE:  YEAH.  YES, YOUR HONOR.

08:51AM   9        I HAVE OTHER TOPICS THAT I CAN RAISE AND WE'RE HAPPY,

08:51AM  10    WE'RE HAPPY TO DISCUSS THIS AT LUNCH.

08:51AM  11        I WOULD NOTE, AGAIN, FOR THE COURT'S CONSIDERATION AND

08:51AM  12    FOCUS, IN CONSIDERING THE TESTIMONY THAT HE OFFERED MANY TIMES

08:51AM  13    OVER DEFENSE OBJECTION THAT WENT INTO HIS COMPETENCE, I THINK

08:51AM  14    THAT'S AN INDEPENDENT BASIS AND UNDER 403 -- I DON'T THINK WE

08:51AM  15    NEED TO GET INTO -- THE BIAS IS AN APPROPRIATE REASON TO

08:51AM  16    INQUIRE.  I THINK 608 IS AN APPROPRIATE REASON, BUT I THINK

08:51AM  17    IT'S ACTUALLY -- GIVEN WHAT HE HAS TESTIFIED AS TO HIS

08:51AM  18    COMPETENCE AND HIS BLAMING OTHER PEOPLE, I THINK 401 IS THE

08:51AM  19    MOST STRAIGHTFORWARD ANALYSIS, AND IF THE GOVERNMENT THINKS

08:51AM  20    THAT WE'VE REPRESENTED THESE THINGS UNFAIRLY, THEY CAN GO INTO

08:51AM  21    IT AND STRAIGHTEN THOSE ISSUES OUT WITHIN REDIRECT.

08:52AM  22        BUT I WILL SAY THAT WE DID PROVIDE THAT ARTICLE FOR THE

08:52AM  23    COURT'S BENEFIT BECAUSE IT WAS EASILY DIGESTIBLE.  THOSE EVENTS

08:52AM  24    ARE NOT THE SUBJECT OF DISPUTE.  THEY'RE ALSO IN S.E.C. FILINGS

08:52AM  25    OF THE COMPANY WHERE THEY DISCLOSE ESSENTIALLY THE SAME FACTS.

2574

08:52AM  1           THE COURT:  WELL, I SEE -- THANK YOU.

08:52AM  2        FIRST OF ALL, I SEE SOME 403 ISSUES ABOUT GETTING INTO

08:52AM  3    THIS, AND THERE ARE SOME 611 ISSUES AS TO THIS WITNESS AND WHAT

08:52AM  4    SHOULD HAPPEN HERE.  SOME OF THIS IS CUMULATIVE.

08:52AM  5        HOW MUCH -- AND I'M JUST CURIOUS, WHAT IS IT YOU WANT TO

08:52AM  6    DO?  YOU TOLD ME YOU WANT TO RAISE ALL OF THESE ISSUES, BUT I

08:52AM  7    DON'T THINK ALL OF THESE ISSUES NECESSARILY UNDER A 403

08:52AM  8    ANALYSIS, PARTICULARLY THE UBIOME ISSUE, I HAVE SOME QUALMS

08:52AM  9    ABOUT THAT, AND I'LL LET YOU KNOW.

08:52AM  10           MR. WADE:  ON THE UBIOME ISSUE, YOUR HONOR, I THINK

08:52AM  11   WE CAN ADDRESS THAT WITHOUT GOING INTO THE FACT THAT HE ENGAGED

08:52AM  12   WITH THE GOVERNMENT.

08:52AM  13        I THINK THE FACT THAT -- THE FACT THAT HE CONCEALED THAT

08:52AM  14   FROM HIS RESUME BECAUSE HE WAS FIRED FOR INCOMPETENCE I THINK

08:53AM  15   IS A FAIR AVENUE OF INQUIRY.

08:53AM  16           THE COURT:  IS THERE A DOCUMENT THAT SAYS YOU ARE

08:53AM  17   FIRED BECAUSE YOU'RE INCOMPETENT?

08:53AM  18           MR. WADE:  THERE'S A DOCUMENT THAT SAYS THAT WE'VE

08:53AM  19   DECIDED TO MAKE A CHANGE.  IN HIS INTERVIEW REPORT WITH THE

08:53AM  20   GOVERNMENT, HE SAYS HE WAS FIRED, AND I BELIEVE HE SAYS BECAUSE

08:53AM  21   HE SUSPECTS BECAUSE HE WASN'T MEETING HIS PROFESSIONAL

08:53AM  22   OBLIGATIONS.

08:53AM  23           THE COURT:  I DIDN'T HERE COMPETENCE IN ANY OF THAT.

08:53AM  24           MR. WADE:  WELL, HE WASN'T SHOWING UP.

08:53AM  25           THE COURT:  AND I HEARD THERE WERE SOME HEALTH

08:53AM  1        ISSUES.

08:53AM  2               MR. WADE:  THAT WAS A DIFFERENT ISSUE.  THEY'RE

08:53AM  3        CONFLATING THE TWO.

08:53AM  4               THE COURT:  THAT'S THE PROBLEM WITH THIS TYPE OF

08:53AM  5        EVIDENCE.  YOU TRY TO PARSE IT TOGETHER AND PUT IT TOGETHER.

08:53AM  6            I THINK I UNDERSTAND WHAT YOU WANT TO DO.  YOU TOLD ME HOW

08:53AM  7        VALUABLE THIS EVIDENCE IS TO YOUR CASE AND I APPRECIATE THAT.

08:53AM  8            SO I'LL HAVE TO LOOK AT THIS.  I'VE JUST GOT THESE

08:53AM  9        DOCUMENTS.  I'LL LOOK AT THESE AND WE'LL HAVE SOME FURTHER

08:54AM 10        DISCUSSION.

08:54AM 11            I DO HAVE SOME CONCERNS ABOUT THE CUMULATIVE NATURE OF

08:54AM 12        THIS AND HOW MUCH OF THIS IS GOING TO -- IF IT COMES IN AT ALL,

08:54AM 13        WHAT I'LL ALLOW YOU TO INQUIRE ON.

08:54AM 14            HIS COMPETENCY MIGHT BE AT ISSUE.  I THINK THERE ARE

08:54AM 15        REASONS TO PROBE SOMEBODY'S COMPETENCY.

08:54AM 16            BUT HOW FAR YOU GO WITH THAT AND WHAT TYPE OF EXTRINSIC

08:54AM 17        EVIDENCE THAT IS PERMITTED FOR THAT I THINK IS A REAL ISSUE

08:54AM 18        HERE, AND I'M NOT CERTAIN THAT I WOULD PERMIT YOU TO RAISE ALL

08:54AM 19        OF THESE ISSUES AS YOU'VE SAID.

08:54AM 20            PERHAPS HE HAD ISSUES AFTER HIS EMPLOYMENT, AND IF YOU

08:54AM 21        WANT TO SUGGEST THAT HE HAD SOME PROBLEMS AT THERANOS AND THAT

08:54AM 22        THEY CONTINUED.

08:54AM 23            I DON'T KNOW EXACTLY WHAT IT IS.  I WANT TO LOOK AT THESE

08:54AM 24        AND SEE.  I DO HAVE SOME ISSUES ABOUT GOING INTO EVERYTHING

08:54AM 25        THAT YOU'VE TALKED ABOUT THIS MORNING, MR. WADE.  I THINK

2576

08:54AM 1      THAT'S A LITTLE TOO BROAD.

08:55AM 2                MR. WADE:  AS I TOLD THE COURT I WOULD, WE BASICALLY

08:55AM 3      PUT ALL OF OUR CARDS ON THE TABLE WITH THE GOVERNMENT AT THE

08:55AM 4      APPROPRIATE TIME AND WE WANT TO GIVE THEM THE OPPORTUNITY TO

08:55AM 5      RAISE THIS, BUT WE BELIEVE THESE ARE APPROPRIATE AVENUES FOR

08:55AM 6      INQUIRY AND WE'RE HAPPY TO ANSWER ANY FURTHER QUESTIONS IF THE

08:55AM 7      COURT HAS ANY AS IT GOES ALONG HERE.

08:55AM 8                MR. BOSTIC:  LIKEWISE, YOUR HONOR.  JUST FOR NOW, IN

08:55AM 9      CASE IT'S HELPFUL TO THE COURT, I DO HAVE A CASE I WOULD LIKE

08:55AM 10     TO BRING TO THE COURT'S ATTENTION.  I HAVE PROVIDED THE DEFENSE

08:55AM 11     WITH A COPY.

08:55AM 12         IT'S UNITED STATES VERSUS CANDOLI.  I HAVE A COPY HERE.

08:55AM 13     IT'S A NINTH CIRCUIT, AND IT'S BEEN HIGHLIGHTED ON PAGE 8.

08:55AM 14                THE COURT:  THANK YOU.

08:55AM 15                MR. BOSTIC:  IN ESSENCE, IT DEALS WITH THE COURT

08:55AM 16     EXCLUDING EVIDENCE THAT WOULD GO TO BIAS BECAUSE IT WOULD BE

08:55AM 17     DIVERSIONARY AND COLLATERAL.

08:55AM 18                THE COURT:  HOW FAR -- HOW MUCH LONGER DO YOU THINK

08:55AM 19     YOU HAVE, MR. WADE, NOT INCLUDING THIS INFORMATION THAT WE'VE

08:55AM 20     DISCUSSED?

08:55AM 21                MR. WADE:  AS I BELIEVE I HAVE TOLD THE COURT, I

08:55AM 22     HESITATE TO EVER MAKE SUCH REPRESENTATIONS BECAUSE I'M TERRIBLE

08:55AM 23     AT PREDICTING.  I WOULD THINK WE PROBABLY HAVE ABOUT THE

08:56AM 24     MORNING BEFORE WE WOULD GET INTO THIS GENERAL AREA, AND THEN IN

08:56AM 25     THE AFTERNOON I WOULD THINK SOMETIME, MAYBE THE LATER PART OF

| | | |
|---|---|---|
| 08:56AM | 1 | THE AFTERNOON WE WOULD GET INTO THIS.  BUT I WOULD BE HAPPY TO |
| 08:56AM | 2 | UPDATE THE COURT ON HOW I'M DOING ON THE BREAK. |
| 08:56AM | 3 | THE COURT:  ARE WE GOING TO BE FINISHED WITH THIS |
| 08:56AM | 4 | WITNESS THIS WEEK? |
| 08:56AM | 5 | MR. WADE:  IT WAS OUR HOPE, AS I TOLD COUNSEL, THAT |
| 08:56AM | 6 | WE WOULD PASS THE WITNESS AT SOME POINT IN THE AFTERNOON AND |
| 08:56AM | 7 | SOMETIMES -- |
| 08:56AM | 8 | THE COURT:  TODAY? |
| 08:56AM | 9 | MR. WADE:  TODAY.  SOMETIMES IT'S HARD TO PREDICT. |
| 08:56AM | 10 | I BELIEVE -- |
| 08:56AM | 11 | THE COURT:  SO DO I NEED TO -- I'M STARTING TO |
| 08:56AM | 12 | RETHINK.  MAYBE WE NEED TO BE IN SESSION FRIDAY. |
| 08:56AM | 13 | MR. WADE:  I BELIEVE THIS WITNESS HAS LIMITATIONS IN |
| 08:56AM | 14 | TERMS OF HIS ABILITY TO BE HERE PAST WEDNESDAY, AND I BELIEVE |
| 08:56AM | 15 | WE CAN, WE CAN FINISH THIS WITNESS. |
| 08:56AM | 16 | MY UNDERSTANDING IS THAT THE GOVERNMENT MAYBE HAS -- |
| 08:57AM | 17 | THE COURT:  WELL, HE'S BEEN HERE FOR WHAT, THREE OR |
| 08:57AM | 18 | FOUR DAYS? |
| 08:57AM | 19 | MR. WADE:  HE HAS, YEAH. |
| 08:57AM | 20 | THE COURT:  SO MAYBE HE'S EAGER TO STAY.  I DON'T |
| 08:57AM | 21 | KNOW. |
| 08:57AM | 22 | MR. WADE:  WE'VE BEEN ADVISED -- BOTH PARTIES HAVE |
| 08:57AM | 23 | BEEN ADVISED BY BOTH COUNSEL THAT HE HAS COMMITMENTS AND |
| 08:57AM | 24 | TOMORROW IS HIS LAST -- HE WOULD HAVE TO GO MEET THOSE |
| 08:57AM | 25 | OBLIGATIONS AFTER TOMORROW. |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2704

12:53PM   1    A.   I BELIEVE I DELETED THEM THE SAME EVENING.  I WENT INTO

12:53PM   2    THE APPLE STORE AND WENT INTO MY GMAIL ACCOUNT AND DELETED ALL

12:53PM   3    OF THE EMAILS.

12:53PM   4    Q.   YOU HAD NOT DELETED ALL OF THE EMAILS AS OF THAT DATE, HAD

12:53PM   5    YOU, SIR?

12:53PM   6    A.   I DON'T RECALL.

12:53PM   7    Q.   YOU DON'T RECALL?

12:53PM   8         YOU DON'T RECALL THAT IT CAME UP WHERE YOU LIED AGAIN AND

12:53PM   9    AGAIN ABOUT HAVING DELETED THOSE EMAILS THROUGH YOUR LAWYER?

12:53PM   10   YOU DON'T RECALL THAT COMING UP?

12:53PM   11   A.   NO, SIR.

12:53PM   12   Q.   OKAY.

12:54PM   13        YOUR HONOR, THIS MAY BE A GOOD TIME FOR COUNSEL TO

12:54PM   14   APPROACH TO DISCUSS THE ISSUE THAT WE DISCUSSED THIS MORNING.

12:54PM   15             THE COURT:  ARE YOU AT THE CONCLUSION OF YOUR

12:54PM   16   EXAMINATION, SAVE FOR THOSE ISSUES?

12:54PM   17             MR. WADE:  YES.

12:54PM   18             THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, LET ME

12:54PM   19   ASK THE JURY TO -- WE'LL TAKE A BRIEF RECESS.  I NEED TO TALK

12:54PM   20   TO THESE LAWYERS ABOUT SOMETHING.  SO WE'LL TAKE A RECESS.

12:54PM   21        LADIES AND GENTLEMEN OF THE JURY, YOU CAN GO TO THE

12:54PM   22   DELIBERATION ROOM AND WE'LL CALL YOU BACK.

12:55PM   23        DR. ROSENDORFF, YOU MAY STEP DOWN.

12:55PM   24        (JURY OUT AT 12:55 P.M.)

12:55PM   25             THE COURT:  PLEASE BE SEATED.  THE RECORD SHOULD

| | | |
|---|---|---|
| 12:55PM | 1 | REFLECT THAT OUR JURY HAS LEFT THE COURTROOM. |
| 12:55PM | 2 | DR. ROSENDORFF HAS LEFT THE COURTROOM. |
| 12:55PM | 3 | ALL COUNSEL AND THE DEFENDANT ARE PRESENT. |
| 12:55PM | 4 | MR. WADE. |
| 12:55PM | 5 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 12:55PM | 6 | WE'RE AT THAT POINT WHERE I'VE GONE THROUGH EVERYTHING BUT |
| 12:55PM | 7 | THE ISSUES THAT WE DISCUSSED THIS MORNING.  I THINK I MADE THE |
| 12:55PM | 8 | COMMITMENT TO THE COURT THAT I WOULDN'T DO IT IN THE MORNING, |
| 12:56PM | 9 | BUT WE'RE NOW AT THE POINT WHERE THAT'S ESSENTIALLY ALL I HAVE |
| 12:56PM | 10 | LEFT. |
| 12:56PM | 11 | THE COURT:  SO WHAT YOU HAVE LEFT IS THAT YOU WOULD |
| 12:56PM | 12 | LIKE TO INQUIRE, AS YOU'VE TOLD ME THIS MORNING, REGARDING |
| 12:56PM | 13 | THESE THREE ISSUES, INVITAE, UBIOME -- IS THAT WHAT IT'S |
| 12:56PM | 14 | CALLED? |
| 12:56PM | 15 | MR. WADE:  UBIOME. |
| 12:56PM | 16 | THE COURT:  -- AND PERKIN ELMER; IS THAT RIGHT? |
| 12:56PM | 17 | MR. WADE:  YES. |
| 12:56PM | 18 | THE COURT:  ANYTHING FURTHER ON THOSE TOPICS? |
| 12:56PM | 19 | MR. WADE:  I HAVE NOTHING FURTHER APART FROM WHAT WE |
| 12:56PM | 20 | DISCUSSED THIS MORNING. |
| 12:56PM | 21 | THE COURT:  OKAY. |
| 12:56PM | 22 | MR. BOSTIC. |
| 12:56PM | 23 | MR. BOSTIC:  YOUR HONOR, JUST VERY BRIEFLY. |
| 12:56PM | 24 | I THINK IN LIGHT OF THE BREADTH AND THE STYLE OF THE |
| 12:56PM | 25 | CROSS-EXAMINATION HERE, IT JUST UNDERLIES THE GOVERNMENT'S |

2706

ROSENDORFF CROSS BY MR. WADE (RES.)

12:56PM   1      CONCERNS ABOUT WHAT IT WOULD LOOK LIKE TO GO INTO THESE TOPICS.

12:56PM   2          I THINK PROBING THESE TOPICS REALLY IS ASKING FOR

12:56PM   3      EXTRANEOUS ISSUES TO BE LITIGATED IN A WAY THAT THIS TRIAL JUST

12:56PM   4      IS NOT SET UP TO DO.

12:56PM   5          I ALSO, WHEN IT COMES TO EXTRINSIC EVIDENCE AND WHETHER

12:56PM   6      DOCUMENTS THEMSELVES WILL BE ADMITTED INTO EVIDENCE, I HEARD

12:57PM   7      MR. WADE SAY THAT HE DOESN'T NECESSARILY INTEND TO ADMIT MANY

12:57PM   8      OR ANY OF THE DOCUMENTS THAT THE COURT HAS SEEN.

12:57PM   9          BUT THAT DOESN'T ALLEVIATE THE GOVERNMENT'S CONCERNS IN

12:57PM  10      LIGHT OF AN APPROACH THAT MR. WADE HAS BEEN TAKING TO

12:57PM  11      REFRESHING THE WITNESS'S RECOLLECTION WHEREIN HE ASKS THE

12:57PM  12      WITNESS A QUESTION AND THEN TAKES OUT A DOCUMENT AND

12:57PM  13      ESSENTIALLY READS IT INTO EVIDENCE.  THAT IS AS GOOD AS

12:57PM  14      PUBLISHING THE CONTENTS OF THAT DOCUMENT TO THE JURY AND

12:57PM  15      REPRESENTING TO THE JURY THAT THERE IS A PIECE OF EVIDENCE THAT

12:57PM  16      CONTAINS THIS INFORMATION.

12:57PM  17          GIVEN THAT APPROACH, THERE'S NOT MUCH DIFFERENCE BETWEEN I

12:57PM  18      THINK THE ANTICIPATED STYLE OF QUESTIONING AND JUST ADMITTING

12:57PM  19      THOSE DOCUMENTS.

12:57PM  20          SO THAT ONLY INCREASES THE GOVERNMENT'S CONCERNS.

12:57PM  21          THE COURT:  ANYTHING FURTHER?

12:57PM  22          MR. WADE:  I DON'T HAVE ANYTHING FURTHER TO WHAT WE

12:57PM  23      RAISED THIS MORNING APART FROM THERE'S BEEN 702 TYPE OF

12:57PM  24      EVIDENCE THAT HAS BEEN COMING OUT OF THIS WITNESS THROUGHOUT

12:57PM  25      HIS DIRECT EXAMINATION.  THAT PUTS SQUARELY AT ISSUE HIS

2707

ROSENDORFF CROSS BY MR. WADE (RES.)

12:58PM 1    COMPETENCE, AND I THINK IT'S NECESSARY FOR MS. HOLMES TO BE

12:58PM 2    ABLE TO CONFRONT THAT.

12:58PM 3         THE COURT:  I THINK SHE'S DONE THAT THROUGH YOU,

12:58PM 4    SIR, FOUR AND A HALF DAYS OF IT.  I THINK THAT'S WHAT YOUR

12:58PM 5    EXAMINATION HAS DONE.

12:58PM 6       YOU WERE GRILLING HIM AND I THINK YOUR EXAMINATION SHOWS

12:58PM 7    THAT YOU WERE CHALLENGING HIS COMPETENCY IN SEVERAL REGARDS.

12:58PM 8    WE'VE HAD FOUR DAYS OF THAT.  I THINK YOU'VE DONE THAT.  YOU'VE

12:58PM 9    ACCOMPLISHED THAT.

12:58PM 10      I THINK WHAT YOU'RE ASKING TO DO IS TO CONTINUE WITH THAT

12:58PM 11   BECAUSE THE COMPETENCY IS AN ISSUE, AS YOU SAY.

12:58PM 12      I LOOK AT THE ISSUES THAT WE DISCUSSED THIS MORNING AND IT

12:58PM 13   DOES SEEM TO BE THAT IT'S REALLY CHARACTER EVIDENCE THAT YOU'RE

12:58PM 14   SEEKING TO ADMIT HERE, AND THAT IS THE CHARACTER FOR COMPETENCY

12:58PM 15   OR LACK THEREOF.

12:58PM 16      WE TALKED ABOUT 608(B) AND SOME OF THESE OTHER AREAS OF

12:58PM 17   ADMISSION FOR THIS TYPE OF EVIDENCE.

12:58PM 18      FIRST OF ALL, LET ME JUST -- I'M SORRY, WAS IT UBIOME,

12:59PM 19   UBIOME?

12:59PM 20         MR. BOSTIC:  UBIOME.

12:59PM 21         THE COURT:  THANK YOU.  AS TO THAT EVIDENCE, AS WE

12:59PM 22   DISCUSSED THIS MORNING, THE EVIDENCE THAT DR. ROSENDORFF WAS

12:59PM 23   THERE, THERE WAS -- I THINK IS THIS THE LAB WHERE THERE WAS A

12:59PM 24   FEDERAL INVESTIGATION, INDICTMENTS, AND A PENDING CRIMINAL

12:59PM 25   CASE.

ROSENDORFF CROSS BY MR. WADE (RES.)                                        2708

12:59PM    1            MR. BOSTIC:  CORRECT, YOUR HONOR.

12:59PM    2            THE COURT:  UNDER 403, I THINK THAT'S MORE

12:59PM    3    PREJUDICIAL THAN PROBATIVE TO ALLOW YOU TO EXAMINE ON THAT.

12:59PM    4        THE ISSUES INVOLVED IN THAT CASE, AS I UNDERSTAND FROM OUR

12:59PM    5    CONVERSATION THIS MORNING, WERE CRIMINAL IN NATURE.  IT SOUNDS

12:59PM    6    LIKE THAT WAS A HEALTH CARE FRAUD IN REBILLING THAT DID NOT

12:59PM    7    RELATE TO OR DID NOT HAVE, AT LEAST BASED ON WHAT YOU TOLD ME,

12:59PM    8    DID NOT HAVE ANYTHING TO DO WITH THE OPERATION OF THE LAB PER

12:59PM    9    SE.

12:59PM   10        THE INDICTMENT -- UNLESS YOU TELL ME DIFFERENTLY,

12:59PM   11    MR. BOSTIC AND MR. WADE, THE INDICTMENT WAS NOT AN INDICTMENT

01:00PM   12    ALLEGING ANY FRAUD INVOLVING THE LABORATORY OR ANYTHING ABOUT

01:00PM   13    THE LAB.

01:00PM   14        SO I DO SEE THAT THAT, UNDER A 403 ANALYSIS, THAT -- TO

01:00PM   15    ALLOW YOU, MR. WADE, TO PROBE ON THAT ISSUE AND HIS INVOLVEMENT

01:00PM   16    THERE IS MORE PREJUDICIAL THAN PROBATIVE.

01:00PM   17        IT WOULD CALL THE JURY THEN TO CONJECTURE AND TO SPECULATE

01:00PM   18    THAT PERHAPS HE'S INVOLVED IN A FEDERAL CRIMINAL INVESTIGATION,

01:00PM   19    WHICH FROM WHAT YOU'VE TOLD ME, HE'S NOT.  HE'S NOT, OTHER THAN

01:00PM   20    HIS EMPLOYMENT THERE.  HE'S NOT A SUBJECT TO IT.  I THINK YOU

01:00PM   21    TOLD ME HE MIGHT HAVE BEEN A WITNESS.

01:00PM   22        BUT EVEN IF HE WAS, MR. WADE, THAT'S 403.  THAT'S MORE

01:00PM   23    PREJUDICIAL THAN PROBATIVE.

01:00PM   24        AGAIN, LOOKING AT THE JOB THAT YOU'VE DONE OVER THE LAST

01:00PM   25    FOUR DAYS WITH THIS WITNESS, YOU HAVE CHALLENGED HIS COMPETENCY

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2709

01:00PM   1      OVER THOSE DAYS WITH THE VARIOUS DOCUMENTS THAT WE HAVE IN

01:01PM   2      EVIDENCE HERE.

01:01PM   3          SO AS TO THAT, I WOULD NOT ALLOW YOU TO GO INTO ANY

01:01PM   4      EXAMINATION ON THAT.

01:01PM   5          THE INVITAE -- I THINK I'M PRONOUNCING THAT CORRECTLY, I

01:01PM   6      HOPE I AM -- IT SEEMS LIKE YOU WANT TO GO INTO THAT ALSO, AND

01:01PM   7      THAT'S ANOTHER AREA WHERE YOU WISH TO PROBE HIS COMPETENCY OF

01:01PM   8      THE -- OF HIS PERFORMANCE THERE AS LAB DIRECTOR, EITHER

01:01PM   9      PART-TIME OR NOT, WHATEVER HIS ENGAGEMENT IS.

01:01PM  10          AGAIN, THIS GOES TO THE -- I BELIEVE IT GOES TO A

01:01PM  11      CHARACTER QUALITY AND IT'S, FROM THE COURT'S PERSPECTIVE, I

01:01PM  12      BELIEVE IT'S INAPPROPRIATE CHARACTER EVIDENCE FOR WHAT YOU'RE

01:01PM  13      SEEKING TO ACCOMPLISH.

01:01PM  14          LET ME TURN, THOUGH, TO THE -- IS IT PERKIN ELMER?

01:01PM  15              MR. WADE:  CORRECT.

01:01PM  16              THE COURT:  THAT INVOLVES THE CMS INSPECTION.

01:01PM  17          AND THIS IS A CLOSER CASE.  AND THIS IS SOMETHING THAT,

01:02PM  18      MR. WADE, AN AREA, PARDON ME, WHERE I DO THINK THE COURT WOULD

01:02PM  19      PERMIT YOU SOME LIMITED, LIMITED EXAMINATION.

01:02PM  20          THE FACTORS HERE ARE THE FACT THAT AS I UNDERSTAND IT, THE

01:02PM  21      CMS INSPECTORS IN THERANOS WERE THE SAME INSPECTORS WHO WERE

01:02PM  22      INVOLVED IN THE PERKIN ELMER SITUATION.

01:02PM  23          THIS GOES, MR. WADE, TOWARDS YOUR BIAS, YOUR BIAS ISSUE.

01:02PM  24          I DO THINK THERE MIGHT BE SOME RELEVANCE AS TO POTENTIAL

01:02PM  25      ISSUE OF BIAS.  I DO BELIEVE THAT THE DEFENSE WOULD BE

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2710

01:02PM  1    PERMITTED AND IT'S APPROPRIATE TO ALLOW THE DEFENSE TO PROBE,

01:02PM  2    TO PROBE AN ISSUE OF BIAS.

01:02PM  3        WE'VE TALKED AND WE ALL KNOW THAT BIAS IS ALWAYS RELEVANT,

01:02PM  4    BUT -- AND I DO THINK FOR MS. HOLMES TO PRESENT HER DEFENSE, IF

01:02PM  5    SHE WISHES TO DO THAT, I DO THINK IT'S APPROPRIATE TO ALLOW THE

01:02PM  6    DEFENSE TO PROBE ANY ISSUES OF BIAS THAT MAY EXIST.

01:03PM  7        THE BIAS THAT IS REPRESENTED BY MR. WADE IS THAT THESE TWO

01:03PM  8    INSPECTORS ARE THE SAME INSPECTORS THAT WERE INVOLVED IN

01:03PM  9    THERANOS AND THEY'RE ALSO INVOLVED IN THE INSPECTION AT

01:03PM 10    PERKIN ELMER.

01:03PM 11        BUT, MR. WADE, THIS IS AN AREA WHERE YOU'LL, YOU'LL BE

01:03PM 12    PERMITTED TO PROBE, BUT YOU HAVE TO PROBE LIGHTLY.  THE ISSUE

01:03PM 13    REALLY IS WHETHER OR NOT DR. ROSENDORFF, WHETHER HIS TESTIMONY

01:03PM 14    HERE IS IN ANY WAY SHAPED, FOCUSSED, HIS ANSWERS TO YOUR

01:03PM 15    QUESTIONS AND THE GOVERNMENT QUESTIONS ARE IN ANY WAY FOCUSSED

01:03PM 16    OR SHAPED BY A PERSONAL INTEREST, BIAS, SUCH THAT AS YOU TOLD

01:03PM 17    ME THIS MORNING, SUCH THAT IT MIGHT IMPAIR EITHER HIS FUTURE

01:03PM 18    CAREER OR ANY LIABILITY HE MIGHT HAVE.  THAT'S A BROAD, A BROAD

01:04PM 19    AREA.

01:04PM 20        BUT I'M NOT GOING TO PERMIT YOU TO GET INTO, GET INTO THE

01:04PM 21    NATURE OF ANY INVESTIGATION, THE QUALITY OF THE INVESTIGATION,

01:04PM 22    HIS SPECIFIC ROLE IN IT.

01:04PM 23        I THINK THEN WE GET INTO WHAT 608(B), AND I DON'T MEAN TO

01:04PM 24    CONFLATE THESE TWO, BUT WHAT 608(B) -- THE PURPOSE OF 608(B) IS

01:04PM 25    TO AVOID MINI TRIALS AND TO AFFORD EFFICIENCY OF THE

UNITED STATES COURT REPORTERS

01:04PM   1    PRESENTATION OF THE EVIDENCE.

01:04PM   2         SO I WILL PERMIT YOU TO PROBE THE BIAS ISSUE, BUT NOT TO

01:04PM   3    GET INTO -- I'M GOING TO -- I'M JUST GOING TO BE CANDID WITH

01:04PM   4    YOU.  I'M GOING TO SHUT YOU DOWN IF YOU GO A LITTLE TOO FAR AS

01:04PM   5    TO ANY SPECIFICS.

01:04PM   6         I'M GOING TO GIVE YOU SOME LATITUDE, AND I THINK YOU'RE

01:04PM   7    PERMITTED SOME LATITUDE ABOUT THAT TO DEVELOP THE BIAS, AND

01:04PM   8    WE'LL TAKE ANOTHER TEN MINUTES AND ALLOW YOU TO COLLECT YOUR

01:04PM   9    THOUGHTS ON THAT AND HOW YOU WANT TO APPROACH THAT.

01:05PM  10              MR. WADE:  AND IF I COULD JUST INQUIRE SO I DO NOT

01:05PM  11    CROSS THE LINE THAT THE COURT HAS IN MIND.

01:05PM  12              THE COURT:  SURE.

01:05PM  13              MR. WADE:  THERE ARE CERTAIN CONCLUSIONS THAT WERE

01:05PM  14    REACHED AND NOTICES GIVEN BY THE REGULATORS THAT SORT OF

01:05PM  15    TRIGGER THOSE CONSEQUENCES AND HIS RECOGNITION OF THOSE

01:05PM  16    CONSEQUENCES, AND SO MY INTENT WOULD BE TO NOT GO IN DETAIL

01:05PM  17    INTO ANY OF THOSE.

01:05PM  18         MY INTENT WOULD BE TO NOT INTRODUCE THE DOCUMENTS

01:05PM  19    THEMSELVES, BUT JUST TO NOTE THAT -- BECAUSE THAT'S THE REASON

01:05PM  20    WHY HE -- THAT'S THE REASON WHY HE IS IN JEOPARDY RIGHT NOW.

01:05PM  21              THE COURT:  WELL, MAYBE, MAYBE NOT.  YOUR

01:05PM  22    PERSPECTIVE IS HE'S IN JEOPARDY.  MAYBE HE FEELS HE'S IN

01:05PM  23    JEOPARDY.  THAT'S THE REASON FOR THE QUESTIONS, ISN'T IT?

01:05PM  24         AND THAT IS -- PERHAPS THAT IS THE WAY TO ASK THE

01:05PM  25    QUESTIONS.  I'M NOT GOING TO TELL A SEASONED VETERAN LIKE YOU

ROSENDORFF CROSS BY MR. WADE (RES.)

01:06PM   1    HOW TO PUT YOUR CASE ON.

01:06PM   2              MR. WADE:  UNDERSTOOD.

01:06PM   3              THE COURT:  BUT THE QUESTION WAS, DO YOU HAVE

01:06PM   4    CONCERNS?  WAS THERE AN INVESTIGATION FROM CMS AT PERKINS?  DID

01:06PM   5    IT INVOLVE THE SAME INSPECTORS HERE?  I DON'T KNOW, MAYBE

01:06PM   6    THAT'S EVEN A LITTLE CLOSER.  BUT THAT'S THE ISSUE.

01:06PM   7              MR. WADE:  OKAY.

01:06PM   8              THE COURT:  AND THEN AS A RESULT OF THAT INSPECTION,

01:06PM   9    DO YOU FEEL SOME ANXIETY ABOUT -- HAS THAT DIRECTED YOU?  HAS

01:06PM  10    THAT FOCUSSED YOU?

01:06PM  11         AGAIN, I AM NOT TELLING YOU WHAT QUESTIONS TO ASK.  I HOPE

01:06PM  12    YOU SEE THE GENERAL AREA, THOUGH.

01:06PM  13              MR. WADE:  I DO.

01:06PM  14              THE COURT:  BECAUSE THAT'S REALLY THE ISSUE.  THE

01:06PM  15    FACT THAT THERE WAS AN INSPECTION AT THIS LAB AND THE FACT THAT

01:06PM  16    THE SAME INSPECTORS WERE INVOLVED IN THERANOS, THERE'S SOME

01:06PM  17    SYMBIOSIS, SOME SYMBIOTIC RELATIONSHIP AT LEAST BY EMPLOYMENT.

01:06PM  18    MAYBE IT'S JUST PURE COINCIDENCE.

01:06PM  19         BUT NONETHELESS, I THINK BECAUSE OF WHAT IT IS, I'M GOING

01:06PM  20    TO ALLOW YOU TO PROBE THAT, BUT NOT TO GET INTO, ISN'T IT A

01:06PM  21    FACT THAT THE LAB WAS ALSO ENGAGED IN X, Y, Z?  OR THEIR LAB

01:07PM  22    WAS THIS?

01:07PM  23         YOU USED THE WORD "CHAOS" I THINK EARLIER TO DESCRIBE

01:07PM  24    NEWARK OR SOMETHING.

01:07PM  25              MR. WADE:  NOT NEWARK.  I THINK I WAS DESCRIBING

2713
ROSENDORFF CROSS BY MR. WADE (RES.)

01:07PM   1    WHAT THE TEXT MESSAGES WITH WHICH MY UNDERSTANDING WAS THAT WE

01:07PM   2    HAD THE FOUNDATION.

01:07PM   3              THE COURT:  I'M JUST USING THAT AS AN EXAMPLE.  I'M

01:07PM   4    NOT CRITICIZING YOUR WORD CHOICE.

01:07PM   5              MR. WADE:  NO.  I UNDERSTAND.

01:07PM   6              THE COURT:  BUT I AM GOING TO PERMIT YOU TO DO THAT.

01:07PM   7    I THINK THAT'S RELEVANT FOR EXPLORATION OF WHETHER OR NOT THIS

01:07PM   8    WITNESS HAS ANY BIAS, WHETHER OR NOT THIS WITNESS'S RESPONSES

01:07PM   9    OVER THE LAST DAYS HAVE BEEN THE RESULT OF CONCERN.

01:07PM  10        THAT'S -- AND HIS ANSWERS WILL BE WHAT THEY ARE, AND THE

01:07PM  11    JURY CAN CERTAINLY GIVE IT WHATEVER WEIGHT THEY FEEL IS

01:07PM  12    APPROPRIATE.  THAT'S THE PURPOSE FOR BIAS.

01:07PM  13        LET ME ALSO INDICATE THERE ON THE RECORD -- AND I

01:07PM  14    MENTIONED I STARTED MY COMMENTS WITH YOUR FOUR AND A HALF DAYS

01:08PM  15    OF EXAMINATION, THE ISSUE OF CUMULATIVE COMES UP ALSO.  THE

01:08PM  16    PURPOSE TO EXAMINE ON THESE ISSUES WAS TO DIMINISH THE

01:08PM  17    CREDIBILITY OF THIS PARTICULAR WITNESS.

01:08PM  18        I THINK YOU'VE ACCOMPLISHED THAT FOR THE JURY OVER THE

01:08PM  19    LAST FOUR DAYS, AT LEAST SUCH THAT THEY CAN WEIGH IT AND GIVE

01:08PM  20    IT WHATEVER WEIGHT THEY THINK IS APPROPRIATE.

01:08PM  21        SO THERE IS SOME CUMULATIVE NATURE AS WELL IN ALL OF THIS,

01:08PM  22    WHICH ALSO IMPARTS A 403 ANALYSIS AS TO THE ADDITIONAL TIME

01:08PM  23    THAT WOULD BE REQUIRED TO PROBE INTO OTHER MATTERS, AND THAT'S

01:08PM  24    REALLY MORE TOWARDS THE OTHER TWO EXAMPLES WE TALKED ABOUT, BUT

01:08PM  25    IT ALSO TOUCHES ON THIS AS WELL, THOUGH.

ROSENDORFF CROSS BY MR. WADE (RES.)

| | | |
|---|---|---|
| 01:08PM | 1 | SO THAT IS MY POSITION ON THIS AREA. |
| 01:08PM | 2 | IS THAT HELPFUL TO YOU? |
| 01:08PM | 3 | MR. WADE:  I DO UNDERSTAND, YOUR HONOR. |
| 01:08PM | 4 | OBVIOUSLY WITH RESPECT TO THE BREADTH OF THE EXAMINATION, |
| 01:08PM | 5 | YOU KNOW, WE HAVE SUBSTANTIAL CONCERNS ABOUT WHAT WAS PULLED |
| 01:08PM | 6 | OUT ABOUT IN DIRECT UNDER NAPUE, N-A-P-U-E, AND OTHERWISE, AND |
| 01:09PM | 7 | SO WE FELT WE NEEDED THE BREADTH THAT WE DID IN ORDER TO |
| 01:09PM | 8 | CLARIFY THE RECORD. |
| 01:09PM | 9 | THE COURT:  I HOPE YOU DON'T TAKE ME BEING CRITICAL |
| 01:09PM | 10 | OF YOU DOING WHAT YOU DID, BUT -- AND I'M NOT.  I'M JUST |
| 01:09PM | 11 | OBSERVING THAT WE HAD FOUR DAYS AND YOU WERE, YOU KNOW, YOU |
| 01:09PM | 12 | WERE VERY THOROUGH WITH YOUR EXAMINATION, YOUR |
| 01:09PM | 13 | CROSS-EXAMINATION. |
| 01:09PM | 14 | SO THAT'S A FACTOR ALSO IN THIS ANALYSIS, AGAIN, GOING TO |
| 01:09PM | 15 | THE CUMULATIVE NATURE OF IT, THE 403 TIME ISSUE. |
| 01:09PM | 16 | MR. BOSTIC, ANYTHING FURTHER? |
| 01:09PM | 17 | MR. BOSTIC:  NOTHING FURTHER, YOUR HONOR, EXCEPT TO |
| 01:09PM | 18 | SAY THAT I ANTICIPATE, HAVING NOT DISCUSSED THESE ISSUES WITH |
| 01:09PM | 19 | THIS WITNESS AT LENGTH, OR PERHAPS AT ALL, I'M NOT SURE WHAT |
| 01:09PM | 20 | THE WITNESS WILL ANSWER IN RESPONSE TO MR. WADE'S QUESTIONS. |
| 01:09PM | 21 | BUT I ANTICIPATE THAT THEY WILL NOT BE THE ANSWERS THAT |
| 01:09PM | 22 | ARE SATISFACTORY TO MR. WADE, TO BE FRANK. |
| 01:09PM | 23 | I UNDERSTAND THE COURT'S RULING TO FORECLOSE ANY EFFORT BY |
| 01:10PM | 24 | THE DEFENSE TO HIGHLIGHT OR EMPHASIZE THE SEVERITY OF THE CMS |
| 01:10PM | 25 | INSPECTION OR FINDINGS AT PERKIN ELMER IN AN EFFORT TO IMPEACH |

ROSENDORFF CROSS BY MR. WADE (RES.)

```
01:10PM   1    THAT ANSWER.

01:10PM   2         BUT I'M GUIDED BY THE COURT, AS I'M SURE THE DEFENSE IS.

01:10PM   3              MR. WADE:  HE FACES THOSE CONSEQUENCES BECAUSE OF

01:10PM   4    THE CIRCUMSTANCES THAT THEY'RE IN AS A MATTER OF LAW, SO --

01:10PM   5    WHICH HE CLARIFIED IN A DIFFERENT CONVERSATION WITH

01:10PM   6    MR. YAMAMOTO, NOT THE ONE THAT I EXPLORED WITH HIM HERE, BUT

01:10PM   7    WITH RESPECT TO PERKIN ELMER.  THERE'S AN EMAIL THAT DOCUMENTS

01:10PM   8    HIS AWARENESS AND CONCERN ABOUT THE FACT THAT HE COULD LOSE HIS

01:10PM   9    LICENSE.

01:10PM  10              THE COURT:  SURE.  AND THAT'S -- BUT, MR. WADE, YOU

01:10PM  11    DON'T HAVE TO GET INTO ALL OF THE NUANCES OF WHAT IT WAS.

01:10PM  12    ISN'T IT A FACT THAT THE LAB HAD 47, 50 DEFICIENCIES?  YOU WERE

01:10PM  13    AWARE OF IT?  YOU KNEW, ET CETERA, ET CETERA.  THAT'S PILING

01:10PM  14    ON.  THAT'S NOT WHAT THIS IS ABOUT.

01:11PM  15         THIS IS CMS DID AN INVESTIGATION, MR. YAMAMOTO WAS THERE,

01:11PM  16    HE'S THE SAME GENTLEMAN THAT YOU TALKED WITH AT THERANOS, AND

01:11PM  17    NOW HE WAS INVOLVED IN AN INSPECTION OF SOME SORT.  HE WAS

01:11PM  18    INVOLVED WITH YOUR CURRENT EMPLOYER, DOES THAT CAUSE YOU ANY --

01:11PM  19    AND THEN YOU'LL FILL IN THE BLANK, I'M SURE, WITH THE

01:11PM  20    APPROPRIATE QUESTION.

01:11PM  21         BUT NOT GOING TO GET INTO THE DETAILS OF THAT.  I

01:11PM  22    UNDERSTAND THAT YOU WOULD LIKE TO GET INTO THE FOUNDATION OF

01:11PM  23    ALL OF THAT, BUT WHAT IS REALLY INVOLVED HERE IS THE CMS

01:11PM  24    CHARACTERS ARE THE SAME AS IN THERANOS.  HE HAS SOME INTIMACY

01:11PM  25    WITH THEM IN HIS FORMER EMPLOYMENT, HE NOW HAS RENEWED THAT
```

ROSENDORFF CROSS BY MR. WADE (RES.)                                      2716

01:11PM   1      INTIMACY IN HIS CURRENT EMPLOYMENT.

01:11PM   2          HE MAY HAVE CONCERNS ABOUT HIS FUTURE EMPLOYMENT, AND HAS

01:11PM   3      THAT IN ANY WAY SHAPED ANY OF THE TESTIMONY THAT HE'S GIVEN

01:11PM   4      TODAY SUCH THAT HE FAVORS THE GOVERNMENT, SUCH THAT HE FAVORS

01:11PM   5      THERANOS?

01:11PM   6          I THINK IT'S PRETTY STRAIGHTFORWARD, I HOPE.  I THINK IT

01:12PM   7      IS.

01:12PM   8              MR. WADE:  I UNDERSTAND THE DIRECTION OF THE COURT.

01:12PM   9              THE COURT:  BUT WE'LL GIVE YOU TEN MINUTES TO PUT IT

01:12PM  10      ALL TOGETHER.

01:12PM  11              MR. WADE:  GREAT.  THANK YOU, YOUR HONOR.

01:12PM  12              THE COURT:  GREAT.  THANK YOU.

01:12PM  13              THE CLERK:  COURT IS IN RECESS.

01:12PM  14              THE COURT:  AND THEN -- I'M SORRY.

01:12PM  15          MR. BOSTIC, DO YOU THEN BEGIN YOUR REDIRECT EXAMINATION

01:12PM  16      THIS AFTERNOON?

01:12PM  17              MR. BOSTIC:  YES, YOUR HONOR.

01:12PM  18              THE COURT:  GREAT.  THANK YOU VERY MUCH.

01:12PM  19          (RECESS FROM 1:12 P.M. UNTIL 1:39 P.M.)

01:39PM  20          (JURY IN AT 1:39 P.M.)

01:39PM  21              THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

01:39PM  22      THE RECORD.

01:39PM  23          ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

01:39PM  24      THE WITNESS IS ON THE STAND.

01:39PM  25          DO YOU HAVE SOME ADDITIONAL QUESTIONS, MR. WADE?

2717
ROSENDORFF CROSS BY MR. WADE (RES.)

01:39PM   1          MR. WADE:  YES, YOUR HONOR, JUST A FEW MORE

01:39PM   2    QUESTIONS.

01:39PM   3          THE COURT:  SURE.

01:39PM   4    BY MR. WADE:

01:39PM   5    Q.   DR. ROSENDORFF, I BELIEVE YOU'VE BEEN A LAB DIRECTOR FOR

01:39PM   6    ABOUT 13 YEARS.

01:39PM   7    A.   CORRECT.

01:39PM   8    Q.   SINCE ABOUT 2008?

01:39PM   9    A.   CORRECT.

01:39PM   10   Q.   AND DURING THAT TIME, WE'VE TALKED ABOUT HOW YOU

01:39PM   11   FREQUENTLY WORKED IN THE CLIA ENVIRONMENT; RIGHT?

01:40PM   12   A.   YES.

01:40PM   13   Q.   WHERE THE REGULATORS ASSESS THE PERFORMANCE OF THE LAB

01:40PM   14   UNDER THE CLIA REGULATIONS?

01:40PM   15   A.   CORRECT.

01:40PM   16   Q.   AND WE'VE TALKED ABOUT THOSE REGULATIONS AT LENGTH IN THIS

01:40PM   17   EXAMINATION; CORRECT?

01:40PM   18   A.   YES.

01:40PM   19   Q.   AND AS PART OF THE WORK -- AS PART OF THE ENFORCEMENT OF

01:40PM   20   THESE CLIA REGULATIONS, OCCASIONALLY THE CENTER FOR THE CMS

01:40PM   21   WILL DO INSPECTIONS; RIGHT?

01:40PM   22   A.   YES.

01:40PM   23   Q.   AND YOU'VE HAD EXPERIENCE WITH DIFFERENT INSPECTIONS OVER

01:40PM   24   THE YEARS; CORRECT?

01:40PM   25   A.   YES.

2718

ROSENDORFF CROSS BY MR. WADE (RES.)

01:40PM   1    Q.   AND ON OTHER OCCASIONS YOU'D INTERACT WITH REGULATORS;

01:40PM   2    CORRECT?

01:40PM   3    A.   YES.

01:40PM   4    Q.   LIKE WE JUST TALKED ABOUT YOUR INTERACTIONS WITH

01:40PM   5    MR. YAMAMOTO.

01:40PM   6         DO YOU RECALL?

01:41PM   7    A.   I RECALL PLACING A PHONE CALL TO CMS AND SPEAKING TO

01:41PM   8    MR. YAMAMOTO WHILE I WAS AT THERANOS.

01:41PM   9    Q.   RIGHT, RIGHT.   WE WERE JUST TALKING ABOUT THAT IN YOUR

01:41PM  10    PRIOR TESTIMONY.

01:41PM  11         DO YOU RECALL THAT?

01:41PM  12    A.   YES.

01:41PM  13    Q.   OKAY.   THE CURRENT LAB, I THINK YOU MENTIONED YESTERDAY,

01:41PM  14    IS A LAB THAT IS ALSO IN CALIFORNIA; IS THAT RIGHT?

01:41PM  15    A.   CORRECT.

01:41PM  16    Q.   AND REMIND ME WHERE THAT LAB IS LOCATED?

01:41PM  17    A.   IT IS LOCATED IN VALENCIA, CALIFORNIA.

01:41PM  18    Q.   OKAY.   AND VALENCIA, IS THAT JUST NORTH OF L.A.?

01:41PM  19    A.   CORRECT.

01:41PM  20    Q.   AN HOUR, HOUR AND A HALF OR SO?

01:41PM  21    A.   CORRECT.

01:41PM  22    Q.   AND AS PART OF -- AND YOU SERVE AS THE CLIA LAB DIRECTOR?

01:41PM  23    A.   CORRECT.

01:41PM  24    Q.   AND AS PART OF YOUR SERVICE AS THE CLIA LAB DIRECTOR, CMS

01:41PM  25    SUBJECTED THAT LAB TO A COMPLAINT SURVEY?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2719

01:42PM   1      A.   CORRECT.

01:42PM   2      Q.   AND AS PART OF THAT, THEY CAME IN AND DID THE KIND OF

01:42PM   3   INVESTIGATION THAT WE'VE TALKED ABOUT THE OTHER DAY, IS THAT

01:42PM   4   FAIR, WHEN WE TALKED ABOUT THE 2013 INSPECTION AT THERANOS?

01:42PM   5      A.   NO.

01:42PM   6           CMS CAME IN EARLIER THIS YEAR.  MOST OF THE PROCEEDINGS

01:42PM   7   WERE DOCUMENT REVIEW AND REVIEW OF THE LIS.

01:42PM   8           IT WAS MR. YAMAMOTO AND ANOTHER INDIVIDUAL WHO WAS

01:42PM   9   ASSISTING HIM.

01:42PM  10      Q.   IS THAT JOSHUA COHEN?

01:42PM  11      A.   YES.

01:42PM  12      Q.   OKAY.  AND YOU UNDERSTAND THE HEAD OF THE REGION IS

01:42PM  13   KAREN FULLER?

01:42PM  14      A.   YES.

01:42PM  15      Q.   AND SHE'S SOMEONE WHO YOU AT LEAST RECEIVE CORRESPONDENCE

01:42PM  16   FROM IN CONNECTION WITH THAT SURVEY?

01:43PM  17      A.   THE CORRESPONDENCE WAS FROM -- YES, YES, YES.

01:43PM  18      Q.   AND SHE'S THE REGIONAL DIRECTOR FOR THE WESTERN STATES?

01:43PM  19      A.   OKAY.

01:43PM  20      Q.   OKAY.  AFTER THAT -- AFTER THAT INSPECTION, THEY PROVIDED

01:43PM  21   YOU, THEY PROVIDED YOU A NOTICE IDENTIFYING SOME MATTERS; IS

01:43PM  22   THAT RIGHT?

01:43PM  23      A.   YES.

01:43PM  24      Q.   AND THAT WAS IN JULY -- INITIALLY THEY PROVIDED A NOTICE

01:43PM  25   IN MAY OF '21?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2720

01:43PM   1        A.   I BELIEVE SO.

01:43PM   2        Q.   MAY 6TH.  DOES THAT SOUND FAMILIAR?

01:43PM   3             AND THERE WAS SOME RESPONSES WHERE YOU PROVIDED

01:43PM   4     INFORMATION TO CMS?

01:43PM   5        A.   YES.

01:43PM   6        Q.   AND THEN THEY PROVIDED ANOTHER NOTICE IN JULY OF 2021.

01:43PM   7             DO YOU RECALL THAT?

01:44PM   8        A.   YES.

01:44PM   9        Q.   AND YOU'RE AWARE THAT IF -- LET ME STRIKE THAT.

01:44PM  10             IN CONNECTION WITH THAT NOTICE, THAT CREATED SOME

01:44PM  11     IMPLICATIONS FOR YOU PERSONALLY; IS THAT RIGHT?

01:44PM  12        A.   I DON'T HAVE THE TEXT OF THE JULY NOTICE IN FRONT OF ME SO

01:44PM  13     I CAN'T COMMENT ON THAT, YEAH.

01:44PM  14             THE COURT:  I DON'T THINK YOU NEED THAT.

01:44PM  15             MR. WADE:  I DON'T THINK WE NEED THAT.

01:44PM  16        Q.   DO YOU RECALL AFTER YOU GOT THE NOTICE YOU HAD A TELEPHONE

01:44PM  17     CONVERSATION WITH MR. YAMAMOTO ABOUT POSSIBLE IMPLICATIONS --

01:44PM  18        A.   YES, YES.

01:44PM  19        Q.   -- FOR YOU PERSONALLY?

01:44PM  20        A.   YES, I DID.  YEAH.

01:44PM  21        Q.   AND IN CONNECTION WITH THAT CONVERSATION WITH

01:45PM  22     MR. YAMAMOTO, DID YOU UNDERSTAND DEPENDING UPON THE FINAL

01:45PM  23     OUTCOME OF THOSE MATTERS THAT YOU COULD -- YOUR LICENSE TO BE A

01:45PM  24     LAB DIRECTOR COULD BE SUSPENDED?

01:45PM  25        A.   YES, FOR AT LEAST TWO YEARS, CORRECT.

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2721

01:45PM   1               MR. WADE:  I HAVE NO FURTHER QUESTIONS.

01:45PM   2               THE COURT:  THANK YOU.

01:45PM   3          MR. BOSTIC, DO YOU HAVE REDIRECT?

01:45PM   4               MR. BOSTIC:  I DO, YOUR HONOR.

01:45PM   5          MAY I PROCEED, YOUR HONOR?

01:45PM   6               THE COURT:  YES, PLEASE.

01:45PM   7                    **REDIRECT EXAMINATION**

01:45PM   8     BY MR. BOSTIC:

01:45PM   9     Q.   GOOD AFTERNOON, DR. ROSENDORFF.

01:45PM   10    A.   GOOD AFTERNOON, SIR.

01:45PM   11    Q.   I'D LIKE TO ASK YOU SOME FOLLOW-UP QUESTIONS ABOUT SOME

01:45PM   12    TOPICS THAT YOU DISCUSSED WITH MR. WADE.

01:46PM   13         FIRST, DO YOU RECALL QUESTIONS THAT MR. WADE ASKED YOU

01:46PM   14    ABOUT PREVIOUS MEETINGS THAT YOU HAD WITH THE GOVERNMENT?

01:46PM   15    A.   YES.

01:46PM   16    Q.   AND WHEN YOU MET WITH THE GOVERNMENT, WERE THOSE MEETINGS

01:46PM   17    VOLUNTARY OR WERE YOU FORCED TO MEET WITH THE GOVERNMENT?

01:46PM   18    A.   VOLUNTARY.

01:46PM   19    Q.   AND WHY DID YOU DECIDE TO MEET WITH THE GOVERNMENT AND

01:46PM   20    SHARE INFORMATION ABOUT THERANOS?

01:46PM   21    A.   I WANTED TO BE FULLY COOPERATIVE WITH THE GOVERNMENT AND

01:46PM   22    THEIR INVESTIGATION.  I WANTED THE STORY TO COME OUT.  I WANTED

01:46PM   23    JUSTICE TO BE SERVED, AND I BASICALLY SAW IT AS A PUBLIC

01:46PM   24    SERVICE IN ESSENCE TO COOPERATE WITH THE GOVERNMENT AND IN ANY

01:46PM   25    WAY THAT I COULD, YEAH.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-18-00258-EJD |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | VOLUME 16 |
| | ) | |
| ELIZABETH A. HOLMES, | ) | OCTOBER 6, 2021 |
| | ) | |
| DEFENDANT. | ) | PAGES 2775 - 3000 |
| _____ | ) | |

TRANSCRIPT OF TRIAL PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                      BY:  JOHN C. BOSTIC
                           JEFFREY B. SCHENK
                      150 ALMADEN BOULEVARD, SUITE 900
                      SAN JOSE, CALIFORNIA 95113

                      BY:  ROBERT S. LEACH
                           KELLY VOLKAR
                      1301 CLAY STREET, SUITE 340S
                      OAKLAND, CALIFORNIA 94612

        (APPEARANCES CONTINUED ON THE NEXT PAGE.)


OFFICIAL COURT REPORTERS:
                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
                           CERTIFICATE NUMBER 8074
                           LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595

        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

2777

1

INDEX OF PROCEEDINGS

2

GOVERNMENT'S:

3

4 **ADAM ROSENDORFF**
REDIRECT EXAM BY MR. BOSTIC            P. 2804
5 RECROSS-EXAM BY MR. WADE              P. 2890

6

7 **STEVEN BURD**
DIRECT EXAM BY MR. LEACH               P. 2938
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
11:06:38   1              THE COURT:  LET'S TAKE OUR MORNING BREAK NOW, LADIES

11:06:40   2        AND GENTLEMEN.

11:06:41   3              LET'S TAKE 45 MINUTES, 45 MINUTES.  AND THEN WE'LL COME

11:06:45   4        BACK.

11:06:46   5              WILL YOU HAVE CROSS-EXAMINATION, OR RECROSS?

11:06:48   6                   MR. WADE:  I WILL, YOUR HONOR.

11:06:49   7              THE COURT:  ALL RIGHT.  THANK YOU.

11:06:52   8              THE CLERK:  COURT IS IN RECESS.

11:07:07   9              THE COURT:  YOU CAN STAND DOWN, DOCTOR, AS WELL.

11:07:12  10         (JURY OUT AT 11:07 A.M.)

11:07:28  11              THE COURT:  ALL RIGHT.  PLEASE BE SEATED.

11:07:30  12         THE RECORD SHOULD REFLECT OUR JURY HAS LEFT FOR THE BREAK,

11:07:33  13        AND DR. ROSENDORFF HAS LEFT THE COURTROOM.

11:07:36  14         MR. WADE?

11:07:36  15              MR. WADE:  YOUR HONOR, COUNSEL JUST, WITH A SERIES OF

11:07:40  16         QUESTIONS, ELICITED A COMPARISON OF THE THERANOS LAB AND ISSUES

11:07:45  17         WITHIN THE THERANOS LAB TO EVERY OTHER LAB IN WHICH

11:07:50  18        DR. ROSENDORFF WORKED OVER THE PERIOD OF 13 YEARS AND COMPARED

11:07:53  19         THE SIGNIFICANCE OF THOSE ISSUES.

11:07:56  20         THAT HAS OPENED THE DOOR TO THE CROSS-EXAMINATION THAT THE

11:07:59  21        GOVERNMENT TRIED TO PRECLUDE YESTERDAY, THAT THEY HAVE PUT THAT

11:08:04  22        AT ISSUE.  HE HAS TESTIFIED BEFORE THIS COURT, OR BEFORE THIS

11:08:07  23        JURY, AND NOW IT'S ONLY FAIR TO GO INTO THE PROBLEMS THAT

11:08:11  24        EXISTED WITHIN THOSE LABS SO THE JURY UNDERSTANDS THE FULL

11:08:14  25        PICTURE.
```

```
11:08:15   1        WITHOUT IT, IT'S A VERY MISLEADING CHARACTERIZATION BASED

11:08:20   2   ON QUESTIONS THAT THE GOVERNMENT JUST ASKED.

11:08:22   3        MR. BOSTIC:  I DISAGREE, YOUR HONOR.  THAT WAS IN

11:08:24   4   RESPONSE TO QUESTIONS ON CROSS ABOUT WHETHER LABS MAKE

11:08:30   5   MISTAKES, AND I THINK THE SIMPLE QUESTION OF WHETHER

11:08:35   6   DR. ROSENDORFF CATEGORIZES THE ISSUES AT THERANOS AS JUST

11:08:39   7   SIMPLE RUN OF THE MILL LABORATORY MISTAKES IS IN DIRECT

11:08:42   8   RESPONSE TO THAT LINE OF QUESTIONING ON CROSS.

11:08:45   9        I DON'T THINK HE SAID ANYTHING THAT OPENS THE DOOR TO THE

11:08:48  10   WIDE RANGE OF EVIDENCE THAT MR. WADE IS REFERENCING.

11:08:52  11        MR. WADE:  YOUR HONOR, THE TRANSCRIPT SPEAKS FOR

11:08:54  12   ITSELF.  HE -- HE OPENED UP 13 YEARS OF HIS LAB EXPERIENCE, ALL

11:08:58  13   OF HIS OTHER EXPERIENCES, AND ASKED HIM TO COMPARE THOSE ERRORS

11:09:03  14   TO THE ERRORS OF ALL THOSE OTHER COMPANIES AND HE SAID THERANOS

11:09:07  15   IS WORSE.

11:09:08  16        AND SO I THINK IT'S ONLY FAIR TO ALLOW THE DEFENSE TO GO

11:09:14  17   INTO THAT.

11:09:15  18        OTHERWISE IT'S AN INCREDIBLY MISLEADING PICTURE TO THE

11:09:18  19   JURY.  THE JURY CAN ASSESS WHETHER THEY'RE BETTER OR WORSE.

11:09:21  20        WE DON'T HAVE TO RELY ON DR. ROSENDORFF'S

11:09:24  21   CHARACTERIZATION.  WE NOW SHOULD HAVE THE ABILITY TO PROBE

11:09:26  22   THAT.

11:09:26  23        THE COURT:  WELL, THAT WOULD THEN -- IF WE ASK THE

11:09:29  24   JURY TO MAKE THAT DETERMINATION, THAT WOULD BE A SEPARATE MINI

11:09:32  25   TRIAL THAT YOU'VE TALKED TO ME ABOUT THAT CAUSED ME TO HAVE
```

UNITED STATES COURT REPORTERS

**ER-346**

| | | |
|---|---|---|
| 11:09:35 | 1 | CONCERN ABOUT OTHER ISSUES. |
| 11:09:37 | 2 | NOW, I -- I UNDERSTAND THE NATURE OF THE QUESTION AND THE |
| 11:09:40 | 3 | FACT THAT, YOU KNOW, I THINK I'VE SAID FREQUENTLY, AND YOU |
| 11:09:45 | 4 | PROBABLY KNOW, THERE'S A DIFFERENCE BETWEEN TURNING THE KNOB |
| 11:09:47 | 5 | AND OPENING THE DOOR. |
| 11:09:49 | 6 | HAS THIS DOOR BEEN OPENED THEN AS TO THIS? |
| 11:09:51 | 7 | I DON'T SEE IT OPEN SUCH THAT YOU CAN GET INTO ALL OF THE |
| 11:09:54 | 8 | OTHER ISSUES THAT WERE IN THE OTHER THREE LABS.  I THINK THAT'S |
| 11:09:57 | 9 | WHAT WE'RE TALKING ABOUT.  IS THAT RIGHT? |
| 11:09:59 | 10 | MR. WADE:  THERE WERE THREE LABS THAT HAD -- HAVE HAD |
| 11:10:02 | 11 | MAJOR ISSUES -- |
| 11:10:03 | 12 | THE COURT:  RIGHT. |
| 11:10:04 | 13 | MR. WADE:  -- IN HIS TENURE. |
| 11:10:06 | 14 | THE COURT:  RIGHT.  THE ONES WE TALKED ABOUT |
| 11:10:08 | 15 | YESTERDAY. |
| 11:10:09 | 16 | MR. WADE:  RIGHT, EXACTLY. |
| 11:10:10 | 17 | THE COURT:  FIRST OF ALL, THE MIDDLE LAB REGARDING |
| 11:10:12 | 18 | THE CRIMINAL INVESTIGATION, I DON'T THINK THIS LINE OF |
| 11:10:14 | 19 | QUESTIONING TOUCHES ON THAT AT ALL AND I WOULD NOT ALLOW YOU TO |
| 11:10:18 | 20 | PROBE INTO THAT.  I THINK THAT STILL IS PRECLUDED BASED ON THE |
| 11:10:20 | 21 | COURT'S RULING YESTERDAY. |
| 11:10:22 | 22 | ON THE OTHER ISSUES ABOUT WHETHER OR NOT HE'S SEEN |
| 11:10:25 | 23 | DIFFERENCES IN THE OTHER LABS, I MAY ALLOW YOU TO PROBE A |
| 11:10:28 | 24 | LITTLE BIT, BUT WE'RE NOT GOING TO GET INTO THE DOCUMENTS, ANY |
| 11:10:32 | 25 | OF THAT COLLATERAL TYPE EXTRINSIC MATERIAL.  I STILL THINK |

2870

```
11:10:38   1    THAT'S INAPPROPRIATE TO DO.
11:10:40   2         I MAY PERMIT YOU TO ASK SOME QUESTIONS, TO FOLLOW UP
11:10:46   3    ABOUT, WELL, YOU SAID, HE TALKED ABOUT THE OTHER PLACES HE'S
11:10:49   4    WORKED AT WERE NOT AS BAD AS THIS, AND YOU CAN ASK HIM A LITTLE
11:10:52   5    BIT ABOUT THAT.
11:10:53   6         BUT WE'RE NOT GOING TO GET INTO A MINI TRIAL ON ALL THE
11:10:56   7    OTHER SUBJECTS AND THAT.
11:10:58   8         YOU CAN TALK TO HIM IN GENERAL.  I THINK THIS WAS A
11:11:00   9    GENERAL PROBE ABOUT A -- AND I UNDERSTAND YOUR CONCERN ABOUT
11:11:04  10    THE IMPACT IT MIGHT HAVE ON THE JURY.  YOU CAN CERTAINLY PROBE
11:11:07  11    WHETHER OR NOT THERE WERE ISSUES OF OTHER TRIALS.  YOU'VE
11:11:11  12    ELICITED FROM HIM YESTERDAY THAT AT ONE OF THE LABS HE WAS AT,
11:11:16  13    THEY HAD AN INVESTIGATION.
11:11:17  14         SO, AGAIN, AS WE TALKED YESTERDAY PRIOR TO YOUR
11:11:20  15    EXAMINATION ON THE TOPIC, I'LL ALLOW SOME LIMITED, VERY LIMITED
11:11:24  16    PROBING OF THIS.
11:11:26  17         I THINK YOUR QUESTIONING MAY ACTUALLY ENHANCE THE DAMAGE
11:11:30  18    THAT YOU'RE SEEKING TO AVOID BY RAISING SOME OTHER QUESTIONS,
11:11:35  19    BUT YOU KNOW, IT'S YOUR CASE.
11:11:37  20         BUT I WILL PERMIT SOME QUESTIONING ON THAT, BUT GENERALLY.
11:11:42  21    WE'RE NOT GOING TO GET INTO THE CMS REPORTS AND ALL OF THAT.  I
11:11:46  22    DON'T THINK THAT'S NECESSARY.
11:11:47  23              MR. WADE:  YOUR HONOR, I'LL CONFER WITH MY COLLEAGUES
11:11:51  24     DURING THE BREAK ON THIS ISSUE.
11:11:53  25         I WOULD JUST ASK IF -- ALTERNATIVELY, IF WE COME BACK AND
```

| | | |
|---|---|---|
| 11:11:58 | 1 | ASK THAT THAT EVIDENCE BE STRICKEN AND THAT THE GOVERNMENT BE |
| 11:12:00 | 2 | ADMONISHED.  I MEAN, THE COURT GAVE CLEAR DIRECTION ON THIS |
| 11:12:04 | 3 | ISSUE YESTERDAY.  YOU SAID YOU DIDN'T WANT MINI TRIALS.  WE |
| 11:12:08 | 4 | TALKED ABOUT THE POSSIBILITY OF OPENING THIS DOOR, WHICH IS NOW |
| 11:12:13 | 5 | WIDE OPEN AS THE GOVERNMENT -- AS THE GOVERNMENT WELL KNEW WHEN |
| 11:12:18 | 6 | IT WAS ASKING THOSE QUESTIONS ABOUT THE BREADTH OF HIS |
| 11:12:20 | 7 | EXPERIENCE. |
| 11:12:21 | 8 | THE COURT:  SO -- |
| 11:12:21 | 9 | MR. WADE:  I WAS VERY -- I WAS VERY CAREFUL, AS THE |
| 11:12:24 | 10 | COURT OBSERVED I'M SURE YESTERDAY, OF TRYING TO DRAW THE LINE |
| 11:12:28 | 11 | IN THE DIRECTION OF THE COURT, AND NOW WE HAVE COUNSEL, AT THE |
| 11:12:34 | 12 | END OF THE CROSS-EXAMINATION, OR AT THE END OF THE REDIRECT |
| 11:12:38 | 13 | EXAMINATION JUST BLOWING IT WIDE OPEN. |
| 11:12:40 | 14 | MR. BOSTIC:  YOUR HONOR, IF I CAN RESPOND TO THAT? |
| 11:12:41 | 15 | THE COURT:  WELL, WHAT YOU DID YESTERDAY WAS YOU GOT |
| 11:12:44 | 16 | HIS RESPONSE THAT HE HAS CONCERNS ABOUT HIS LICENSE BEING |
| 11:12:48 | 17 | SUSPENDED FOR TWO YEARS, AND YOU CHOSE TO STOP YOUR EXAMINATION |
| 11:12:50 | 18 | THEN.  YOU COULD HAVE GONE AND ASKED OTHER QUESTIONS, BUT YOU |
| 11:12:53 | 19 | STOPPED THERE, AND THAT'S WHERE IT IS. |
| 11:12:57 | 20 | I -- I WANT -- I'LL, OF COURSE, ALLOW YOU TO SPEAK, |
| 11:13:00 | 21 | MR. BOSTIC. |
| 11:13:00 | 22 | BUT I'D ALSO LIKE YOU TO COMMENT ON WHETHER OR NOT THE |
| 11:13:03 | 23 | COURT SHOULD JUST STRIKE THE LAST QUESTION AND ANSWER, THAT IS, |
| 11:13:09 | 24 | WERE -- THE COMPARING THE LABS IN HIS CAREER.  MAYBE WE STRIKE |
| 11:13:14 | 25 | THAT AND THAT TAKES CARE OF THE ISSUE. |

```
11:13:16   1              MR. BOSTIC:  SO, YOUR HONOR, FIRST, AS TO THE NEXUS

11:13:22   2      BETWEEN THAT QUESTIONING AND WHAT HAD COME BEFORE IN

11:13:25   3      DR. ROSENDORFF'S TESTIMONY, DURING HIS DIRECT, HE HAD SPOKEN

11:13:27   4       ABOUT HIS PREVIOUS EXPERIENCE.

11:13:30   5          DURING CROSS-EXAMINATION, I RECALL QUESTIONS SPECIFICALLY

11:13:33   6      ASKING DR. ROSENDORFF TO COMPARE HIS EXPERIENCE AT THERANOS,

11:13:38   7      AND SPECIFICALLY THE FREQUENCY OF COMPLAINTS TO THE FREQUENCY

11:13:41   8      OF COMPLAINTS THAT HE SAW AT UNIVERSITY OF PITTSBURGH.

11:13:46   9          SO THAT'S THE SAME KIND OF GENERAL QUESTION THAT DEFENSE

11:13:49  10      COUNSEL ASKED, ASKING DR. ROSENDORFF TO COMPARE THE SEVERITY

11:13:51  11      AND FREQUENCY OF ISSUES BETWEEN THOSE TWO LABS.

11:13:54  12          HE ANSWERED THAT QUESTION.  I ASKED HIM SOME QUESTIONS

11:13:58  13      ABOUT THAT ON REDIRECT, AGAIN, IN RESPONSE TO THAT LINE OF

11:14:01  14      QUESTIONING.

11:14:02  15          AS TO THE COURT'S PROPOSAL AS TO WHETHER STRIKING THAT

11:14:05  16      ANSWER WOULD BE PREFERABLE TO OPENING THE DOOR TO THE

11:14:08  17      INADMISSIBLE LINES OF QUESTIONING THAT THE DEFENSE RAISED

11:14:11  18      YESTERDAY, I THINK YES, THAT WOULD BE A CLEANER APPROACH AND

11:14:15  19      WOULD SOLVE ANY PREJUDICE THAT THE DEFENSE IS WORRIED ABOUT.

11:14:18  20              MR. WADE:  WELL, LET ME CONFER AS TO WHETHER WE CAN

11:14:20  21       UNRING THE BELL, BECAUSE THE JURY HAS ALREADY HEARD IT.  IT WAS

11:14:23  22       ONE OF THE LAST QUESTIONS THAT THEY HEARD AND THE ANSWERS THEY

11:14:27  23       HEARD BEFORE THE BREAK.

11:14:28  24          WITH RESPECT TO THE CROSS-EXAMINATION, IT WAS ACTUALLY THE

11:14:31  25      GOVERNMENT WHO EXAMINED DR. ROSENDORFF ON DIRECT COMPARING HIS
```

```
11:14:36   1    EXPERIENCE AT THERANOS TO HIS PAST EXPERIENCE AT THE UNIVERSITY
11:14:40   2    OF PITTSBURGH AND ELICITED TESTIMONY THAT WAS DIRECTLY AT ODDS
11:14:43   3    WITH HIS PRIOR SWORN TESTIMONY, AND I IMPEACHED THE WITNESS ON
11:14:48   4    THAT.
11:14:48   5         I DID NOT GO INTO FUTURE EMPLOYMENT.  WE GOT DIRECTION
11:14:51   6    FROM THE COURT ON THAT AND I HONORED THAT DIRECTION.  SO --
11:14:54   7         THE COURT:  RIGHT.  WELL, I THINK THAT THE -- YOU'VE
11:14:58   8    ASKED ME TO STRIKE, MR. WADE, THROUGHOUT THE COURSE OF THIS
11:15:01   9    WITNESS'S TESTIMONY, CERTAIN TESTIMONY AND I'VE GRANTED THAT
11:15:04  10    REQUEST AND I'VE ADMONISHED THE JURY THEY'RE NOT TO CONSIDER
11:15:07  11    THAT EVIDENCE THAT'S STRICKEN.
11:15:09  12         THEY'LL BE INFORMED OF THAT, INSTRUCTED OF THAT IN THE
11:15:11  13    FINAL INSTRUCTIONS, AND I THINK THE JURY WILL FOLLOW THE
11:15:17  14    COURT'S INSTRUCTION.
11:15:18  15         SO LET ME JUST SAY, THAT'S MY INTENTION IS I'M GOING TO --
11:15:22  16    WHEN THEY COME OUT, I'LL HAVE THAT LAST QUESTION AT MY
11:15:26  17    FINGERTIPS FROM THE COURT REPORTER AND I WILL -- THAT ANSWER,
11:15:28  18    QUESTION AND ANSWER, AND I'LL HAVE THAT STRICKEN.  THEY'RE NOT
11:15:31  19    TO CONSIDER IT.  AND I THINK THAT TAKES CARE OF THE ISSUE, AND
11:15:34  20    THEN IT'S DONE.
11:15:34  21         MR. WADE:  I WOULD MAYBE JUST ADD, IF THE COURT COULD
11:15:37  22    SAY THAT WAS NOT AN APPROPRIATE QUESTION AND AN APPROPRIATE
11:15:39  23    ANSWER FOR THIS TRIAL.  BECAUSE --
11:15:41  24         THE COURT:  WELL --
11:15:42  25         MR. WADE:  -- IF IT'S JUST STRICKEN, YOU'RE RIGHT,
```

2874

| | |
|---|---|
| 11:15:44 | 1 |
| 11:15:47 | 2 |
| 11:15:50 | 3 |
| 11:15:54 | 4 |
| 11:15:56 | 5 |
| 11:15:58 | 6 |
| 11:16:02 | 7 |
| 11:16:08 | 8 |
| 11:16:10 | 9 |
| 11:16:13 | 10 |
| 11:16:17 | 11 |
| 11:16:20 | 12 |
| 11:16:22 | 13 |
| 11:16:26 | 14 |
| 11:16:27 | 15 |
| 11:16:32 | 16 |
| 11:16:37 | 17 |
| 11:16:43 | 18 |
| 11:16:46 | 19 |
| 11:16:50 | 20 |
| 11:16:53 | 21 |
| 11:16:57 | 22 |
| 11:16:59 | 23 |
| 11:16:59 | 24 |
| 11:17:01 | 25 |

THERE'S ALL SORTS OF STUFF THAT'S BEEN STRICKEN AND I'M NOT

SURE THAT'S AN ADEQUATE REMEDY BECAUSE HE'S NOW COMPARED THIS

TO ALL THESE OTHER LABS WHERE THERE ARE ALL THESE OTHER ISSUES.

        THE COURT:  WELL, THAT CALLS ME THEN TO -- YOU'RE

ASKING THE COURT THEN TO MAKE A MEASUREMENT AS TO EVERYTHING

THAT'S STRICKEN AND PUT SOME KIND OF VALUE ON THAT AS TO

WHETHER OR NOT I NEED TO ENHANCE THE COURT'S STRIKING.

        THE PRELIMINARY INSTRUCTIONS INFORMED THE JURY THAT WHEN

SOMETHING IS STRICKEN, THEY MAY NOT CONSIDER IT.  THEY'RE NOT

TO CONSIDER IT.  WE DON'T HAVE GRADATIONS OF THAT.  THIS IS THE

LEVEL 1, A LEVEL 2, A LEVEL 3 VIOLATION.  THEY ARE NOT TO

CONSIDER IT AT ALL.

        AND WE PRESUME THAT THE JURIES FOLLOW THE COURT'S

INSTRUCTIONS.

        BUT I WILL ADMONISH THEM.  I'LL DO THAT.  AND MY SENSE

IS -- WE HAVE HOW MANY WEEKS LEFT IN THE TRIAL?  MY SENSE IS

THAT AN INSTRUCTION STRIKING THIS WILL, WILL SUFFICE TO REMEDY

WHAT WE NEED TO DO IN THIS CASE.  I THINK THAT'S SUFFICIENT.

        SO I'LL CALL IT UP FROM THE COURT REPORTER AND WE'LL -- I

DON'T KNOW HOW STRONG YOU'D LIKE ME TO EMPHASIZE IT.  I KNOW

YOU WANT ME TO CHASTISE THE GOVERNMENT IN FRONT OF THE JURY.  I

DON'T THINK THAT'S NEEDED AT THIS POINT AND I DON'T THINK

THAT'S APPROPRIATE.

        MR. WADE:  YOUR HONOR, WHAT I PARTICULARLY DON'T WANT

YOU TO DO IS READ THE TESTIMONY AGAIN BECAUSE -- AND THAT'S WHY

2875

```
11:17:05   1    I'D LIKE TO CONFER WITH MY COLLEAGUES AND MAYBE WE CAN ADDRESS

11:17:08   2    THIS FOR TWO MINUTES BEFORE WE PULL THE JURY BACK.

11:17:11   3         I MEAN, THAT EXACERBATES THE PROBLEM.  LIKE I SAID, IT WAS

11:17:15   4    ONE OF THE LAST QUESTIONS.  IT WAS NOT -- AND YOU CAN'T UNRING

11:17:18   5    THAT BELL.  SO IT MAY BE THAT --

11:17:20   6         THE COURT:  WELL, I CAN.  I CAN TELL THEM NOT TO

11:17:23   7    CONSIDER IT AND IT'S THE APPROPRIATE THING TO DO.

11:17:25   8         AND THEN THEY'LL HAVE TO JUST -- THEY'LL FORGET ABOUT IT

11:17:30   9    AT THAT POINT, OR AT LEAST THEY WON'T LET IT INTO THEIR

11:17:33  10    DELIBERATIONS, AND IF THE GOVERNMENT TRIES TO ARGUE THAT, I'LL

11:17:37  11    SHUT THE GOVERNMENT DOWN IN THEIR FINAL ARGUMENT IF THEY TRY TO

11:17:40  12    RAISE THIS POINT.  THIS WAS THE WORST LAB HE'S EVER WORKED IN,

11:17:44  13    THEY WON'T BE PERMITTED TO ARGUE THAT.

11:17:46  14         SO I THINK WE CAN -- I THINK WE CAN RESOLVE IT.

11:17:50  15         I UNDERSTAND YOUR CONCERN.  I DO.  IT WAS AT THE END OF

11:17:54  16    HIS INFORMATION, AND IT WAS A LENGTHY EXAMINATION.

11:17:59  17         THIS WITNESS HAS ENDURED NOW FIVE DAYS OF EXAMINATION,

11:18:02  18    WHICH IS TO SAY, THE JURY HAS ENDURED FIVE DAYS OF QUESTION AND

11:18:06  19    ANSWER FROM THIS PARTICULAR WITNESS.  SO I THINK WE ALL

11:18:10  20    RECOGNIZE THAT.

11:18:10  21         MR. WADE:  I THINK WE ALL HAVE, YOUR HONOR.

11:18:13  22         MIGHT WE COME BACK JUST TWO MINUTES BEFORE WE CALL THE

11:18:16  23    JURY BACK --

11:18:17  24         THE COURT:  SURE, OF COURSE.

11:18:18  25         MR. WADE:  -- SO THAT I CAN CLARIFY THIS?
```

2876

11:18:20   1                    THE COURT:  SURE.

11:18:20   2                    MR. BOSTIC:  AND YOUR HONOR, FINAL POINT, TO

11:18:22   3          MR. WADE'S POINT ABOUT REREADING THE TESTIMONY, I THINK THAT

11:18:25   4          CAN BE ADDRESSED BY THE COURT DESCRIBING THE QUESTION ONLY AND

11:18:28   5          NOT READING THE ANSWER ITSELF.  THE GOVERNMENT WOULD HAVE NO

11:18:31   6          OBJECTION TO THAT, OF COURSE.

11:18:32   7                    THE COURT:  OKAY.  THANK YOU.

11:18:33   8                    MR. WADE:  YOUR HONOR, WILL WE GO UNTIL 3:00 TODAY?

11:18:36   9                    THE COURT:  YES, YES.

11:18:38  10                    THE CLERK:  COURT IS IN RECESS.

11:18:39  11              (THE LUNCH RECESS WAS TAKEN FROM 11:18 A.M. UNTIL

11:56:34  12          11:56 A.M.)

          13

          14

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

2877

| | | |
|---|---|---|
| 11:56:36 | 1 | **AFTERNOON SESSION** |
| 11:56:54 | 2 | (JURY OUT AT 11:56 A.M.) |
| 11:56:54 | 3 | THE COURT:  ALL RIGHT.  WE'RE BACK ON THE RECORD IN |
| 11:57:09 | 4 | THE HOLMES MATTER.  WE ARE OUTSIDE THE PRESENCE OF THE JURY. |
| 11:57:14 | 5 | ALL COUNSEL ARE PRESENT AND MS. HOLMES IS PRESENT. |
| 11:57:18 | 6 | MR. WADE:  YOUR HONOR, THANK YOU. |
| 11:57:19 | 7 | JUST FOLLOWING UP ON THE MATTER THAT WE WERE DISCUSSING |
| 11:57:22 | 8 | BEFORE THE BREAK, WE LOOKED BACK AT OUR NOTES RELATING TO THE |
| 11:57:27 | 9 | QUESTION AND ANSWER AND THE IMPACT OF THAT QUESTION AND ANSWER |
| 11:57:30 | 10 | AND WE BELIEVE IT'S NECESSARY TO EXPLORE THOSE OTHER |
| 11:57:35 | 11 | PROFESSIONAL EXPERIENCES. |
| 11:57:36 | 12 | THE COURT:  OF COURSE.  OF COURSE YOU DO, YES. |
| 11:57:39 | 13 | MR. BOSTIC? |
| 11:57:39 | 14 | MR. BOSTIC:  SO, YOUR HONOR, I UNDERSTAND THAT THE |
| 11:57:42 | 15 | COURT'S INTENTION WAS TO STRIKE -- I WASN'T SURE -- IT WASN'T |
| 11:57:47 | 16 | CLEAR HOW MUCH WE WERE TALKING ABOUT STRIKING. |
| 11:57:50 | 17 | MY UNDERSTANDING IS THAT THE CONTROVERSY IS OVER A |
| 11:57:56 | 18 | QUESTION ABOUT ISSUES ENCOUNTERED AT DR. ROSENDORFF'S OTHER |
| 11:58:00 | 19 | LABS AND WHETHER THE ISSUES AT THERANOS WERE WHAT HE CONSIDERED |
| 11:58:04 | 20 | TO BE TYPICAL LABORATORY ISSUES. |
| 11:58:07 | 21 | IN THE CONTEXT OF PREVIOUS QUESTIONS, I DON'T BELIEVE THAT |
| 11:58:11 | 22 | THAT HAS A PREJUDICIAL EFFECT. |
| 11:58:13 | 23 | TO THE EXTENT IT DOES, I THINK THAT STRIKING THAT SINGLE |
| 11:58:16 | 24 | QUESTION AND ANSWER IS THE REMEDY.  I DON'T THINK THAT GOING |
| 11:58:19 | 25 | INTO THE INADMISSIBLE LINES OF QUESTIONING THAT WE DISCUSSED |

2878

11:58:22  1    YESTERDAY IS THE SOLUTION HERE.

11:58:24  2          BUT WE'RE GUIDED BY THE COURT.

11:58:26  3          THE COURT:  YOU FLIPPED YOUR LECTERNS HERE, HAVEN'T

11:58:29  4    YOU?

11:58:30  5          MR. WADE:  I WAS KIND OF OCCUPYING THE SPACE HERE, SO

11:58:33  6    WE THOUGHT WE'D CHANGE PACE.

11:58:35  7       YOUR HONOR, FOR THE REASONS THAT I STATED PREVIOUSLY, WE

11:58:38  8    THINK THE BELL HAS BEEN RUNG.  THE GOVERNMENT OPENED THE DOOR.

11:58:41  9    I THINK AN INSTRUCTION WOULDN'T BE SUFFICIENT TO, TO CURE THAT

11:58:46 10    AND WE'LL NEED TO EXPLORE WITH HIM THE OTHER ISSUES THAT HE

11:58:51 11    ENCOUNTERED AT HIS LAB AND LET THE JURY DECIDE THE COMPARISON

11:58:56 12    BETWEEN THOSE, BECAUSE RIGHT NOW --

11:58:58 13          THE COURT:  WELL, LET'S TALK ABOUT THE DANGER OF THAT

11:59:01 14    THOUGH, MR. WADE.  I THINK THERE IS SOME PRESENT DANGER IN

11:59:04 15    DOING THAT.

11:59:05 16       WHAT WE WOULD BE DOING THEN IS TO ENGAGE IN THOSE MINI

11:59:08 17    TRIALS THAT YOU HAVE SUGGESTED I AVOID IN OUR MIL HEARING AND

11:59:12 18    OTHERS, AND IF WE -- IF WE PUT THE COMPARATORS, THAT IS, THE

11:59:17 19    OTHER LABORATORIES AND THIS WITNESS'S EXPERIENCE IN THEM TO THE

11:59:21 20    JURY AND ASK THEM TO WEIGH THAT AS THEY DELIBERATE THE FACTS OF

11:59:29 21    THIS CASE, I DO BELIEVE THAT PUTS YOUR CLIENT AT GREAT RISK,

11:59:35 22    BECAUSE WHAT IF THEY DECIDE, YOU KNOW, HE WAS RIGHT, THERANOS

11:59:39 23    WAS THE WORST PLACE HE WORKED AT?  THESE OTHER PLACES DIDN'T

11:59:42 24    HAVE THE SAME TYPE OF VIOLATIONS OR THIS AND THAT.  THEY DIDN'T

11:59:46 25    RISE TO THAT SEVERITY CERTAINLY THAT BRINGS A FEDERAL

2879

| | |
|---|---|
| 11:59:50 | 1 |

```
11:59:50   1    PROSECUTION.

11:59:51   2         MY CONCERN IS THAT THEY MIGHT THEN INAPPROPRIATELY USE

11:59:55   3    THAT TO JUDGE YOUR CLIENT AND THE CONDUCT OF THE ALLEGATIONS IN

11:59:59   4    THIS CASE.

12:00:02   5         IN ESSENCE, WE WOULD BE ASKING THE JURY TO SAY, OKAY, IN

12:00:06   6    DECIDING THE CREDIBILITY OF THIS WITNESS AND WHETHER OR NOT YOU

12:00:09   7    SHOULD BELIEVE THIS OR NOT, WE'RE GOING TO SHARE WITH YOU HIS

12:00:12   8    EXPERIENCES AND YOU CAN CONSIDER THOSE.

12:00:15   9         AND I THINK THERE'S GREAT PERIL FOR MS. HOLMES IF THEY

12:00:19  10    DECIDE, YOU KNOW, I THINK THAT WITNESS WAS RIGHT, ALL THE

12:00:22  11    EXPERIENCE HE HAD, LOOK AT THIS, LOOK AT THE CONDUCT HERE, IT

12:00:25  12    DOES NOT AT ALL COME CLOSE TO THIS.

12:00:28  13         AND I HAVE -- YOU KNOW, I HAVE GREAT RESPECT FOR THE

12:00:30  14    PROCESS HERE AND I DON'T THINK IT'S, IT'S FAIR TO PUT A JURY,

12:00:35  15    TO HAVE THEM MAKE THAT DECISION ON A COLLATERAL, EXTRINSIC

12:00:41  16    MATTER THAT RELATES TO THE WITNESS'S TESTIMONY AND THAT MIGHT

12:00:44  17    IN SOME WAY AFFECT THEIR DELIBERATIVE PROCESS.

12:00:48  18         NOW, I UNDERSTAND, WE CAN INSTRUCT THEM, YOU'RE NOT TO DO

12:00:51  19    THAT.  BUT, AGAIN, THEN WE START RINGING MULTIPLE BELLS, DON'T

12:00:55  20    WE?

12:00:56  21         I HOPE YOU APPRECIATE MY COMMENTS HERE AND MY CONCERN.  MY

12:00:59  22    THOUGHT IS THAT PERHAPS THE MOST EFFICIENT WAY TO RESOLVE THIS

12:01:03  23    IS TO TELL THEM THAT THERE WAS THIS QUESTION, AND I WON'T -- AT

12:01:06  24    YOUR SUGGESTION, I WON'T REPEAT IT TO RING THE BELL YET

12:01:10  25    AGAIN -- BUT I THINK THE CONTEXT OF THAT QUESTION WAS, WAS TO
```

```
12:01:14   1    ELICIT, THIS WAS THE WORST PLACE HE WORKED AT, OR THERE WERE
12:01:17   2    MORE VIOLATIONS THAN ANY OTHER, AND I DON'T THINK THAT NEEDS --
12:01:22   3    THAT'S NOT NECESSARY FOR THEM, THE JURY, TO MAKE THEIR
12:01:25   4    DECISION.
12:01:25   5          MR. WADE:  IT WAS DESIGNED TO ELICIT HIS COMPARISON,
12:01:29   6    WHICH IS 702 INFORMATION.  IT'S AN ISSUE THAT THE GOVERNMENT --
12:01:35   7    I MEAN, THE COURT COULDN'T HAVE BEEN CLEARER YESTERDAY ON THESE
12:01:38   8    MATTERS AND THE GOVERNMENT ELICITED THAT TESTIMONY SPECIFICALLY
12:01:43   9    ON ITS DIRECT EXAMINATION.
12:01:45  10       SO WHILE I UNDERSTAND THE RISKS, WE THINK -- WE HAVE TO
12:01:50  11    BALANCE RISKS IN THIS CASE IN TERMS OF THE RISKS OF THAT ANSWER
12:01:54  12    AND CREDITING THAT TESTIMONY VERSUS OUR ABILITY TO TEST THAT
12:01:59  13    ANSWER AND TO LET THE JURY DECIDE WHETHER THEY -- WHICH
12:02:04  14    EVIDENCE THEY WANT TO BELIEVE.
12:02:05  15          THE COURT:  WELL, WHY DON'T WE JUST DISCARD THAT
12:02:08  16    EVIDENCE FROM THEIR, FROM THEIR KNOWLEDGE BY STRIKING IT SUCH
12:02:12  17    THAT THEY DON'T HAVE TO GO THROUGH THAT THOUGHT PROCESS AT ALL
12:02:16  18    AND, THEREFORE, WE CAN AVOID ANY DANGER THAT MIGHT COME FROM
12:02:22  19    IT?
12:02:22  20       I UNDERSTAND YOUR NEED NOW TO RISE AND RESPOND TO IT.  I
12:02:27  21    RESPECT THAT.  I DO.
12:02:28  22       BUT AS I SAID, I HAVE GREAT CONCERNS THAT IT COULD -- AND
12:02:33  23    YOU'VE WARNED ME SEVERAL TIMES OVER THE PAST MONTHS ABOUT MINI
12:02:38  24    TRIALS -- AND I SEE THIS AS A MINI TRIAL THAT DOESN'T BENEFIT
12:02:42  25    EITHER SIDE AND IT PERHAPS PRESENTS GREATER PERIL TO THE
```

2881

| | | |
|---|---|---|
| 12:02:45 | 1 | DEFENSE HERE. |
| 12:02:50 | 2 | MR. BOSTIC? |
| 12:02:50 | 3 | MR. BOSTIC:  NOT MUCH TO ADD, YOUR HONOR. |
| 12:02:51 | 4 | THE GOVERNMENT'S INTENT IN ASKING THAT QUESTION WAS TO |
| 12:02:54 | 5 | PROVIDE A RESPONSE TO PREVIOUS ANSWERS ABOUT LABS IN GENERAL, |
| 12:02:56 | 6 | THE FACT THAT MISTAKES HAPPEN AT LABS. |
| 12:03:00 | 7 | THE PARTIES DISAGREE AS TO THE EFFECT OF THAT QUESTION. |
| 12:03:03 | 8 | OF COURSE IT'S THE COURT'S VIEW THAT CONTROLS. |
| 12:03:07 | 9 | TO THE EXTENT THE EFFECT OF THAT QUESTION CARRIES SOME |
| 12:03:11 | 10 | DANGER OF SOME PREJUDICE TO THE DEFENSE, THE GOVERNMENT AGREES |
| 12:03:14 | 11 | WITH THE COURT THAT STRIKING THE QUESTION IS THE ANSWER. |
| 12:03:17 | 12 | WE'RE TALKING ABOUT ONE QUESTION AND ANSWER IN A VERY |
| 12:03:21 | 13 | LENGTHY WITNESS EXAMINATION, WHICH IS NOT YET OVER.  WE'RE |
| 12:03:24 | 14 | ABOUT TO ENTER RECROSS.  IT WON'T BE THE LAST THING THE WITNESS |
| 12:03:27 | 15 | SAYS ON THE STAND.  THIS WON'T BE THE LAST THING THE JURY |
| 12:03:30 | 16 | HEARS. |
| 12:03:31 | 17 | THERE ARE WEEKS LEFT IN THE TRIAL, AS THE COURT POINTED |
| 12:03:33 | 18 | OUT.  SO THIS IS NOT A SITUATION WHERE ANYTHING MORE THAN |
| 12:03:36 | 19 | STRIKING THAT ANSWER IS REQUIRED. |
| 12:03:38 | 20 | MR. WADE:  YOUR HONOR, OUR POSITION IS CLEAR ON THIS. |
| 12:03:41 | 21 | I UNDERSTAND MR. BOSTIC'S POSITION.  BUT HE ASKED THE QUESTION |
| 12:03:44 | 22 | AND THE ANSWER WAS GIVEN AND WE'VE MADE OUR JUDGMENT.  OUR |
| 12:03:47 | 23 | POSITION WOULD BE WE SHOULD EXPLORE IT. |
| 12:03:50 | 24 | IF THE COURT IS UNWILLING TO ALLOW US THE LATITUDE TO DO |
| 12:03:54 | 25 | THAT, I COULD GIVE A SPECIFIC PROFFER AS TO EXACTLY WHAT WE |

2882

12:03:59  1    WOULD -- THE WAY WE WOULD EXPLORE IT EITHER NOW ORALLY OR IN

12:04:04  2    WRITING AND THE COURT COULD CONSIDER IT.

12:04:07  3         IF THE COURT'S NOT GOING TO CONSIDER THAT, WE WOULD ALSO

12:04:10  4    HAVE A PROPOSED INSTRUCTION THAT WE WOULD HAND UP.

12:04:12  5         WE DO NOT THINK THIS IS A CIRCUMSTANCE IN WHICH SIMPLY

12:04:18  6    STRIKING THIS QUESTION, GIVEN THE SIGNIFICANCE OF IT RIGHT

12:04:21  7    BEFORE THE BREAK, ONE OF THE LAST QUESTIONS, I BELIEVE IT MAY

12:04:24  8    HAVE BEEN KIND OF SET UP AS A SERIES OF QUESTIONS, WE DON'T

12:04:28  9    THINK THAT'S SUFFICIENT.

12:04:29 10         THE COURT:  ALL RIGHT.  WELL, THANK YOU.

12:04:31 11         WELL, I -- I APPRECIATE YOUR CONCERN.  YOU'VE TALKED ABOUT

12:04:35 12    YOUR BELIEF IN THE IMPACT OF THAT QUESTION ON THE JURY, THE

12:04:40 13    TIMING, THE STRATEGIC NATURE OF THE WAY IT WAS PRESENTED, ET

12:04:44 14    CETERA.  AND TRIALS ARE STRATEGIC.  I KNOW BOTH SIDES PREPARE

12:04:47 15    AND DO THE BEST YOU CAN.

12:04:49 16         THE QUESTION WAS -- LET ME SAY THIS:  IT'S UNFORTUNATE

12:04:52 17    THAT THE QUESTION WAS ASKED.  I'LL CONCEDE THAT.  I DO THINK

12:04:55 18    THAT IT DID CRACK PERHAPS THE DOOR, IT DID RAISE THE ISSUE.

12:04:59 19    THAT'S WHY WE'RE DISCUSSING IT HERE.

12:05:01 20         I DO THINK THAT THE REMEDY, THOUGH, THE APPROPRIATE REMEDY

12:05:04 21    HERE IS NOT TO ENGAGE IN A SERIES OF MINI TRIALS TO TEST

12:05:08 22    WHETHER OR NOT THERANOS WAS THE PLACE THAT HAD GREATER PROBLEMS

12:05:13 23    THAN ANY OTHER.

12:05:14 24         AS I TOLD YOU BEFORE, I WOULD ALLOW YOU SOME LATITUDE IN

12:05:19 25    TALKING ABOUT THAT SUBJECT WITHOUT GETTING INTO THE EXTRINSIC

2883

| | | |
|---|---|---|
| 12:05:23 | 1 | EVIDENCE, THOUGH, AND I -- I EXPECT THAT YOU WILL DELICATELY |
| 12:05:29 | 2 | ADVANCE THOSE QUESTIONS. |
| 12:05:31 | 3 | BUT I DO THINK THE APPROPRIATE REMEDY HERE, UNDER 403 AND |
| 12:05:39 | 4 | UNDER THE COURT'S INHERENT DISCRETION TO RUN THE TRIAL, IS THAT |
| 12:05:43 | 5 | TO ALLOW MINI TRIALS TO ENGAGE ON THIS PARTICULAR ISSUE WOULD |
| 12:05:50 | 6 | BE WASTEFUL OF TIME, IT WOULD CONFUSE THE JURY ON COLLATERAL |
| 12:05:54 | 7 | ISSUES THAT REALLY AREN'T, AREN'T GERMANE TO THE TRIAL IN THIS |
| 12:05:59 | 8 | CASE. |
| 12:06:00 | 9 | I WILL, THOUGH -- I DO RECOGNIZE THE IMPORT OF THE |
| 12:06:03 | 10 | QUESTION AND WHAT IT CAUSES AND MAY CAUSE THE JURY TO SPECULATE |
| 12:06:07 | 11 | ON, SO I WILL STRIKE THAT LAST QUESTION. |
| 12:06:11 | 12 | YOU HAVE SOMETHING YOU'D LIKE ME TO LOOK AT? |
| 12:06:13 | 13 | MR. WADE:  I WOULD.  IF I COULD HAND IT UP, YOUR |
| 12:06:16 | 14 | HONOR (HANDING)? |
| 12:06:17 | 15 | AND I'LL GIVE A COPY TO THE COURT REPORTER, TOO, SO IT CAN |
| 12:06:24 | 16 | BE MADE PART OF THE RECORD. |
| 12:06:26 | 17 | THE COURT:  THANK YOU. |
| 12:06:26 | 18 | MR. WADE:  WOULD THE COURT PREFER THAT I READ THIS SO |
| 12:06:29 | 19 | IT'S PART OF THE RECORD, OR CAN WE JUST APPEND IT AS PART OF |
| 12:06:32 | 20 | THE RECORD? |
| 12:06:32 | 21 | THE COURT:  LET ME ASK FIRST FOR MR. BOSTIC'S |
| 12:06:35 | 22 | COMMENTS ON THIS. |
| 12:06:36 | 23 | YOU HAVE THIS, MR. BOSTIC? |
| 12:06:37 | 24 | MR. BOSTIC:  I DO, YOUR HONOR. |
| 12:06:39 | 25 | I THINK THAT TO ACCOMPLISH THE PURPOSE, I'M NOT SURE IT'S |

2884

| | |
|---|---|
| 12:06:43 | 1 |
| 12:06:47 | 2 |
| 12:06:55 | 3 |
| 12:06:57 | 4 |
| 12:07:01 | 5 |

1   NECESSARY TO CHARACTERIZE THE QUESTION.  I THINK THE COURT

2   COMMENTED EARLIER ON ITS INCLINATION TO MAKE A JUDGMENT LIKE

3   THAT IN FRONT OF THE JURY.  I DON'T KNOW IF THE COURT'S

4   THINKING HAS CHANGED, BUT MY THINKING IS ALIGNED WITH WHAT I

5   UNDERSTAND THE COURT'S POSITION TO BE.

6       SO I'M NOT SURE CHARACTERIZING THE QUESTION IS NECESSARY.

7       I THINK OTHERWISE I'M NOT SURE FOR THE NEED TO DEVIATE

8   FROM THE COURT'S STANDARD INSTRUCTION WHEN IT COMES TO STRIKING

9   ANSWERS FROM THE RECORD.  BUT OTHERWISE I HAVE NO SUBSTANTIVE

10   OBJECTIONS TO THIS LANGUAGE.

11       MR. WADE:  YOUR HONOR, AS WE'VE MADE CLEAR IN SEEKING

12   TO EXPLORE THIS IN CROSS-EXAMINATION, WE THINK THIS IS

13   DIFFERENT IN KIND FROM THE OTHER ANSWERS AND REQUIRES MORE OF A

14   REMEDY.  THAT'S WHY WE'VE PROPOSED THIS INSTRUCTION.

15       OUR PREFERENCE WOULD BE TO EXPLORE IT IN

16   CROSS-EXAMINATION, BUT SHORT OF THAT, UNDERSTANDING THE COURT'S

17   RULING UNDER THE RULES OF EVIDENCE, WE WOULD ASK THAT THIS

18   INSTRUCTION BE GIVEN TO CURE THIS, THIS ISSUE.

19       THE COURT:  ALL RIGHT.  THANK YOU.

20       MR. WADE:  SHOULD I READ THIS, JUST FOR THE RECORD?

21       THE COURT:  I BEG YOUR PARDON.  YOU'D LIKE ME TO --

22   YOU WOULD LIKE ME TO ADVISE THE JURY OF THIS NOW WHEN THEY COME

23   IN?

24       MR. WADE:  YES.

25       THE COURT:  YOU SAID INSTRUCTION.  YOU MEANT NOW AS

2885

| | |
|---|---|
| 12:08:02 1 | OPPOSED TO A FINAL INSTRUCTION? |
| 12:08:04 2 | MR. WADE:  YEAH, RIGHT.  RIGHT WHEN THE JURY RETURNS, |
| 12:08:08 3 | YOUR HONOR. |
| 12:08:08 4 | THE COURT:  RIGHT.  ALL RIGHT.  THANK YOU. |
| 12:08:10 5 | WELL, I LOOK AT THIS, I AM GOING TO STRIKE THE, THE MIDDLE |
| 12:08:14 6 | SENTENCE IN THE THIRD LINE.  I DON'T THINK THAT'S NECESSARY. |
| 12:08:20 7 | BUT I WILL READ TO THE JURY, WHEN THEY RETURN, THE |
| 12:08:24 8 | FOLLOWING:  "AT THE END OF HIS REDIRECT EXAMINATION, |
| 12:08:29 9 | DR. ROSENDORFF WAS ASKED TO COMPARE THERANOS WITH OTHER LABS |
| 12:08:33 10 | WHERE HE HAS WORKED.  YOU MUST ENTIRELY DISREGARD BOTH THE |
| 12:08:38 11 | QUESTION AND DR. ROSENDORFF'S ANSWER.  IT WOULD BE IMPROPER FOR |
| 12:08:44 12 | YOU TO GIVE ANY WEIGHT WHATSOEVER EITHER TO THE QUESTION OR TO |
| 12:08:49 13 | THE ANSWER." |
| 12:08:51 14 | THAT'S WHAT I'LL READ TO THEM WHEN THEY COME OUT. |
| 12:08:55 15 | MR. WADE:  AND JUST FOR THE RECORD, YOU'LL SKIP OVER |
| 12:08:58 16 | THE SENTENCE "THAT WAS AN INAPPROPRIATE QUESTION" THAT WE HAD |
| 12:09:03 17 | REQUESTED? |
| 12:09:03 18 | THE COURT:  THE ONE THAT YOU JUST READ INTO THE |
| 12:09:05 19 | RECORD, THAT YOU WANTED TO READ INTO THE RECORD? |
| 12:09:07 20 | MR. WADE:  YES, I DID, YOUR HONOR, JUST TO MAKE SURE |
| 12:09:09 21 | WE'RE CLEAR. |
| 12:09:10 22 | THE COURT:  YES.  THANK YOU FOR DOING THAT.  I WAS |
| 12:09:12 23 | GOING TO SUGGEST THAT WHAT I DELETED WAS WHAT MR. WADE JUST |
| 12:09:15 24 | READ -- |
| 12:09:16 25 | MR. WADE:  THANK YOU, YOUR HONOR. |

```
12:09:17   1          THE COURT:  -- FROM THE PROPOSED INSTRUCTION.

12:09:20   2          OKAY.  ANYTHING ELSE?

12:09:21   3          OH, LET ME -- BUT, MR. WADE, I DID SAY THAT I WOULD ALLOW

12:09:25   4     YOU TO PROBE SOMEWHAT.

12:09:27   5          HAVING READ THIS INSTRUCTION, THOUGH, THEY'RE NOT TO

12:09:30   6     CONSIDER THAT, YOU SEE, SO THIS PRESENTS THEN ANOTHER DOOR THAT

12:09:34   7     YOU'RE FACING, DOESN'T IT?

12:09:36   8          MR. WADE:  MAYBE I'M NOT CLEAR ON WHAT IT IS THE

12:09:39   9      COURT IS WILLING TO LET ME PROBE.

12:09:41  10          THE COURT:  RIGHT.

12:09:41  11          MR. WADE:  I HAD UNDERSTOOD THE COURT SAYING I CAN'T

12:09:44  12     PROBE IT, SO MAYBE --

12:09:46  13          THE COURT:  WELL, I -- I FIRST SAID, WHEN WE WERE

12:09:50  14      TALKING ABOUT POSSIBLE REMEDIES, I SAID I MIGHT LET YOU PROBE

12:09:53  15      INTO THIS.

12:09:54  16          BUT IF I'M GOING TO READ THIS INSTRUCTION NOW, I THINK IT

12:09:56  17     BEST TO KEEP THE WHITE BOARD COMPLETELY CLEAN SO THEY'RE NOT

12:09:59  18     REMINDED ABOUT ANYTHING.

12:10:04  19          IF I ALLOW YOU TO, AS I SAID I WAS GOING TO DO, ALLOW YOU

12:10:07  20     TO PROBE A LITTLE BIT ON THE AREA OF WHETHER OR NOT THIS WAS

12:10:12  21     THE WORST PLACE, OR WHATEVER IT WAS HE SAID ABOUT THAT, THAT

12:10:16  22     TANGENTIALLY KEEPS THAT -- THIS -- THAT QUESTION IN THEIR

12:10:21  23     MINDS, AND I'M ASKING THEM TO STRIKE IT.

12:10:23  24          SO WHAT I'M SUGGESTING NOW IS MAYBE WE SHOULD MOVE ON AND

12:10:26  25     YOU DON'T NEED TO ASK ANY QUESTIONS ABOUT IT BECAUSE THAT
```

2887

```
12:10:28   1    QUESTION ISN'T IN THEIR MIND.

12:10:32   2            MR. WADE:  I APOLOGIZE IF I WAS CONFUSED, YOUR HONOR.

12:10:34   3    I UNDERSTOOD THAT YOU WERE NOT GOING TO ALLOW US TO PROBE THAT.

12:10:37   4    THAT'S WHAT I UNDERSTOOD TO BE THE COURT'S RULING.

12:10:39   5            THE COURT:  RIGHT.

12:10:40   6            MR. WADE:  WHAT MY REFERENCE WOULD BE WOULD BE TO

12:10:42   7    PROBE WITH RESPECT TO THE TWO, TWO PLACES OF EMPLOYMENT WHERE

12:10:48   8    THERE WERE SIGNIFICANT ISSUES WITHIN THE LAB, ONE BEING INVITAE

12:10:55   9    AND THE VOIDING OF THE 50,000 TESTS, THERE BEING A NUMBER OF

12:10:59  10    ERRONEOUS TESTS AND HIS SEPARATION FROM THE COMPANY AS A RESULT

12:11:02  11    OF THAT; AND THE OTHER BEING THE SIGNIFICANT ISSUES, INCLUDING

12:11:08  12    THE TESTING ACCURACY AND LAB PRACTICES DEFICIENCIES AT

12:11:13  13    PERKIN ELMER.

12:11:15  14        THAT WOULD HAVE BEEN WHAT I WOULD HAVE INTENDED TO PROBE,

12:11:17  15    AND I HAD UNDERSTOOD THAT THE COURT DOESN'T, DOESN'T WANT ME TO

12:11:21  16    GO INTO THAT.

12:11:22  17        AM I --

12:11:22  18            THE COURT:  THAT'S RIGHT.  AND I'M SORRY, WE'RE

12:11:24  19    TALKING KIND OF -- WE'RE SHIPS PASSING.

12:11:27  20            MR. WADE:  OKAY.

12:11:27  21            THE COURT:  BUT WHAT I'M GOING TO DO, BECAUSE THIS

12:11:29  22    ISSUE HAS BEEN RAISED AND IN LIGHT OF YESTERDAY'S RULING WHERE

12:11:32  23    I SAID YOU CAN'T GET INTO ANY OF THAT, TODAY THIS ISSUE CAME UP

12:11:38  24    FROM MR. BOSTIC'S QUESTION AND THE ANSWER.

12:11:40  25        THE REMEDY TODAY IS TO STRIKE THAT QUESTION AND THAT
```

2888

| | | |
|---|---|---|
| 12:11:43 | 1 | ANSWER, AND I THINK THAT TAKES CARE OF IT SUCH THAT YOU DON'T |
| 12:11:46 | 2 | NEED TO GO INTO ANY OF THE OTHER THINGS THAT I TALKED ABOUT. |
| 12:11:50 | 3 | MR. WADE:  RIGHT.  AND I UNDERSTAND THE COURT WILL |
| 12:11:52 | 4 | NOT LET ME GO INTO THOSE ISSUES.  CORRECT? |
| 12:11:55 | 5 | THE COURT:  I WILL NOT LET YOU GO INTO THOSE. |
| 12:11:58 | 6 | MR. WADE:  RIGHT, UNDERSTOOD. |
| 12:11:59 | 7 | THE COURT:  AS WE PREVIOUSLY DISCUSSED. |
| 12:12:01 | 8 | MR. WADE:  UNDERSTOOD. |
| 12:12:01 | 9 | THE COURT:  THAT'S NOT TO SAY THAT YOU CAN'T -- |
| 12:12:04 | 10 | YOU'RE GOING TO DO WHATEVER YOU'RE GOING TO DO ON RECROSS BASED |
| 12:12:07 | 11 | ON WHAT THE REDIRECT WAS. |
| 12:12:09 | 12 | MR. WADE:  RIGHT. |
| 12:12:09 | 13 | THE COURT:  OKAY.  ANY QUESTION ABOUT THAT? |
| 12:12:11 | 14 | MR. BOSTIC:  NOT FROM THE GOVERNMENT, YOUR HONOR. |
| 12:12:12 | 15 | THANK YOU. |
| 12:12:12 | 16 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU. |
| 12:12:14 | 17 | SHOULD WE ASK THE DOCTOR TO COME IN AND ASK OUR JURY TO |
| 12:12:17 | 18 | COME IN NOW? |
| 12:12:19 | 19 | MR. WADE:  SURE. |
| 12:12:19 | 20 | MR. BOSTIC:  YES, YOUR HONOR. |
| 12:12:20 | 21 | THE COURT:  ARE WE READY? |
| 12:12:26 | 22 | MR. BOSTIC:  YES. |
| 12:12:27 | 23 | THE COURT:  OKAY. |
| 12:12:36 | 24 | (PAUSE IN PROCEEDINGS.) |
| 12:12:37 | 25 | THE COURT:  OKAY.  FOLKS, I JUST WANT TO REMIND |

2889

```
12:12:40   1    EVERYONE THAT WE DON'T -- THOSE IN THE GALLERY, WE'RE NOT
12:12:43   2    HAVING BEVERAGES, AND SO IF YOU BROUGHT A BEVERAGE IN, YOU NEED
12:12:50   3    TO PLEASE REMOVE THE BEVERAGE, COFFEE DRINKS OR THOSE KINDS OF
12:12:54   4    THINGS.
12:12:57   5         (PAUSE IN PROCEEDINGS.)
12:14:12   6              THE COURT:  CAN I ASK COUNSEL, IS IT STILL SUGGESTED
12:14:16   7    THAT -- WE'RE GOING TO GO UNTIL 3:00 TODAY.  IS IT SUGGESTED
12:14:21   8    STILL THAT WE BREAK AT THE 1:30 TIMEFRAME?  IS THAT A GOOD
12:14:24   9    TIMEFRAME?
12:14:25  10              MR. WADE:  COURT'S INDULGENCE.
12:14:29  11         (DISCUSSION OFF THE RECORD AMONGST DEFENSE COUNSEL.)
12:14:40  12              MR. WADE:  (NODS HEAD UP AND DOWN.)
12:14:42  13              THE COURT:  OKAY.
12:14:43  14         (JURY IN AT 12:14 P.M.)
12:15:00  15              THE COURT:  ALL RIGHT.  THANK YOU.  PLEASE BE SEATED.
12:15:07  16         WE'RE BACK ON THE RECORD.  OUR JURY AND ALTERNATES ARE
12:15:11  17    PRESENT.  ALL COUNSEL AND MS. HOLMES ARE PRESENT.
12:15:14  18    DR. ROSENDORFF IS ON THE STAND AGAIN.
12:15:15  19         AND YOU HAVE SOME -- YOU'D LIKE TO ASK SOME QUESTIONS ON
12:15:18  20    RECROSS?
12:15:19  21              MR. WADE:  I DO, YOUR HONOR.
12:15:21  22              THE COURT:  YES.
12:15:22  23         BUT FIRST, LADIES AND GENTLEMEN, BEFORE WE BEGIN
12:15:25  24    MR. WADE'S QUESTIONING, I DO WANT TO INSTRUCT YOU ON SOMETHING,
12:15:28  25    SO PLEASE DO LISTEN.
```

| | | |
|---|---|---|
| 12:15:31 | 1 | AT THE END OF HIS REDIRECT EXAMINATION, DR. ROSENDORFF WAS |
| 12:15:35 | 2 | ASKED TO COMPARE THERANOS WITH OTHER LABS WHERE HE HAS WORKED. |
| 12:15:43 | 3 | YOU MUST ENTIRELY DISREGARD BOTH THE QUESTION, THAT QUESTION, |
| 12:15:48 | 4 | AND DR. ROSENDORFF'S ANSWER.  IT WOULD BE IMPROPER FOR YOU TO |
| 12:15:53 | 5 | GIVE ANY WEIGHT WHATSOEVER EITHER TO THE QUESTION OR TO THE |
| 12:15:58 | 6 | ANSWER. |
| 12:16:00 | 7 | JUST TO BE CLEAR, I AM STRIKING THOSE, THE QUESTION AND |
| 12:16:03 | 8 | THE ANSWER FROM THE RECORD AND YOU ARE NOT, NOT TO CONSIDER |
| 12:16:07 | 9 | EITHER OF THOSE THINGS IN YOUR DELIBERATIONS.  THEY ARE |
| 12:16:10 | 10 | STRICKEN. |
| 12:16:12 | 11 | THANK YOU. |
| 12:16:13 | 12 | MR. WADE:  THANK YOU, YOUR HONOR.  MAY I PROCEED? |
| 12:16:14 | 13 | THE COURT:  YES. |
| 12:16:16 | 14 | **RECROSS-EXAMINATION** |
| 12:16:16 | 15 | BY MR. WADE: |
| 12:16:17 | 16 | Q.   GOOD AFTERNOON, DR. ROSENDORFF. |
| 12:16:19 | 17 | A.   HELLO. |
| 12:16:20 | 18 | Q.   I'D LIKE TO START BY BRINGING UP EXHIBIT 5417, WHICH IS IN |
| 12:16:27 | 19 | EVIDENCE AND THE GOVERNMENT ASKED YOU QUESTIONS ABOUT IT. |
| 12:16:33 | 20 | WE'LL PUT IT UP ON THE SCREEN IF IT'S EASIER FOR YOU, |
| 12:16:36 | 21 | DOCTOR. |
| 12:16:36 | 22 | A.   ALL RIGHT. |
| 12:16:37 | 23 | Q.   THIS WAS ONE OF THE LOOSE DOCUMENTS THAT THE GOVERNMENT |
| 12:16:39 | 24 | HANDED YOU. |
| 12:16:40 | 25 | A.   YES. |

5671

```
1

2                      UNITED STATES DISTRICT COURT

3                     NORTHERN DISTRICT OF CALIFORNIA

4                          SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
6                                    )
                       PLAINTIFF,    )  SAN JOSE, CALIFORNIA
7                                    )
           VS.                       )  VOLUME 30
8                                    )
   ELIZABETH A. HOLMES,              )  NOVEMBER 9, 2021
9                                    )
                       DEFENDANT.    )  PAGES 5671 - 5872
10  _____ )

11                  TRANSCRIPT OF TRIAL PROCEEDINGS
12          BEFORE THE HONORABLE EDWARD J. DAVILA
                  UNITED STATES DISTRICT JUDGE
13
    A P P E A R A N C E S:
14
    FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                         BY:  JOHN C. BOSTIC
                                JEFFREY B. SCHENK
16                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA 95113
17
                           BY:  ROBERT S. LEACH
18                              KELLY VOLKAR
                           1301 CLAY STREET, SUITE 340S
19                         OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
    OFFICIAL COURT REPORTERS:
22                         IRENE L. RODRIGUEZ, CSR, RMR, CRR
                           CERTIFICATE NUMBER 8074
23                         LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595
24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25              TRANSCRIPT PRODUCED WITH COMPUTER
```

5673

```
1
                         INDEX OF PROCEEDINGS
2
             GOVERNMENT'S:
3

4           LYNETTE SAWYER
            CROSS-EXAM BY MR. WADE (RES.)          P. 5730
5           REDIRECT EXAM BY MR. LEACH             P. 5772
            RECROSS-EXAM BY MR. WADE               P. 5777
6
            KINGSHUK DAS
7           DIRECT EXAM BY MR. LEACH               P. 5781
            CROSS-EXAM BY MR. WADE                 P. 5861
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**ER-370**

5675

|         |    |                                                                     |
|---------|----|---------------------------------------------------------------------|
|         | 1  | SAN JOSE, CALIFORNIA                          NOVEMBER 9, 2021       |
| 08:13AM | 2  | P R O C E E D I N G S                                               |
| 08:23AM | 3  | (COURT CONVENED AT 8:23 A.M.)                                        |
| 08:23AM | 4  | (JURY OUT AT 8:23 A.M.)                                              |
| 08:23AM | 5  | THE COURT:  ALL RIGHT.  LET'S GO ON THE RECORD IN                    |
| 08:23AM | 6  | THE HOLMES MATTER.  ALL COUNSEL ARE PRESENT.  MS. HOLMES IS          |
| 08:23AM | 7  | PRESENT.                                                            |
| 08:23AM | 8  | WE'RE OUTSIDE OF THE PRESENCE OF THE JURY TAKING UP A                |
| 08:23AM | 9  | COUPLE OF MATTERS REGARDING SOME EVIDENCE.                           |
| 08:23AM | 10 | LET'S SEE.  I THINK WE'RE GOING TO TALK THIS MORNING ABOUT           |
| 08:23AM | 11 | DOCKET 1086, 1133, AND 1134, AMONGST OTHERS, WHICH WILL              |
| 08:24AM | 12 | PROBABLY INCLUDE A DISCUSSION OF 989 AS WELL.  THOSE ARE WHAT        |
| 08:24AM | 13 | I'VE IDENTIFIED.                                                     |
| 08:24AM | 14 | HAVE YOU IDENTIFIED, FOLKS, WHO IS GOING TO SPEAK TO                 |
| 08:24AM | 15 | THESE?  MR. LEACH AND MR. WADE?                                      |
| 08:24AM | 16 | MR. LEACH:  I'LL BE SPEAKING TO THIS, YOUR HONOR.                    |
| 08:24AM | 17 | THE COURT:  ALL RIGHT.  THANK YOU.                                   |
| 08:24AM | 18 | MR. WADE:  GOOD MORNING, YOUR HONOR.                                 |
| 08:24AM | 19 | LANCE WADE ON BEHALF OF MS. HOLMES.  I'LL DEAL WITH A                |
| 08:24AM | 20 | SUBSTANTIAL PART OF THIS.  THERE ARE CERTAIN ISSUED RELATING TO      |
| 08:24AM | 21 | THE CMS REPORT THAT I HAVE MR. LOOBY'S PRESENCE TO HELP THE          |
| 08:24AM | 22 | COURT WITH.                                                          |
| 08:24AM | 23 | THE COURT:  OKAY, GREAT.                                             |
| 08:24AM | 24 | WELL, WHERE DO WE START?  LET'S -- I HAVE 1133, WHICH IS A           |
| 08:24AM | 25 | SUPPLEMENTAL BRIEF REGARDING TRIAL EXHIBIT 4621.  WE HAD TALKED      |

08:25AM   1    ABOUT THIS BEFORE.  THIS WAS THE -- IS THIS THE JANUARY 25TH

08:25AM   2    LETTER AND THE REPORT I THINK IT IS?

08:25AM   3              MR. LEACH:  THIS IS, YOUR HONOR.  THIS IS THE CMS

08:25AM   4    STATEMENT OF DEFICIENCIES --

08:25AM   5              THE COURT:  EXCUSE ME.

08:25AM   6              MR. LEACH:  -- WHICH WAS ISSUED ON JANUARY 25TH,

08:25AM   7    2016.

08:25AM   8         DR. DAS IS THE LAB DIRECTOR AT THE TIME THAT 4621 WAS

08:25AM   9    ISSUED, AND ONE OF HIS RESPONSIBILITIES WAS TO INVESTIGATE THE

08:25AM  10    ALLEGED DEFICIENCIES IN THE 2567, REVIEW DOCUMENTS IN

08:25AM  11    CONNECTION WITH THAT TO RESPOND, AND TO PREPARE THE COMPANY'S

08:25AM  12    RESPONSE.

08:25AM  13         SO HE'S INTIMATELY FAMILIAR WITH THE DOCUMENT.  HE TOLD

08:25AM  14    THE GOVERNMENT PREVIOUSLY HE 100 PERCENT AGREES WITH THE

08:25AM  15    DEFICIENCIES THAT WERE FOUND.

08:25AM  16         WE INTEND TO EXAMINE HIM ABOUT A PORTION OF THE 2567,

08:25AM  17    INCLUDING THE COVER LETTER.

08:26AM  18         IN ADDITION TO BEING ADMISSIBLE IN THE CONTEXT OF

08:26AM  19    DR. DAS'S TESTIMONY FOR, YOU KNOW, HIS CORROBORATION OF THE

08:26AM  20    TRUTHFULNESS, WE THINK THE 2567 IS RELEVANT TO THE DEFENDANT'S

08:26AM  21    STATE OF MIND.  THE INVESTOR OR THE PATIENT CONSPIRACY COUNT

08:26AM  22    GOES THROUGH 2016.

08:26AM  23         THE DEFENDANT HAS INTRODUCED EVIDENCE FROM MARCH OF 2016

08:26AM  24    WHERE SHE'S RELAYING THE FINDINGS OF A SCIENTIFIC BOARD THAT

08:26AM  25    SHE CONVENED THAT DOCTORS AND OTHER PEOPLE WITH CONNECTIONS TO

08:26AM  1    THE COMPANY ARE GLOWING ABOUT THE TECHNOLOGY, SAYING THE

08:26AM  2    VACUTAINER WORKS, SAYING THIS IS A LAB IN THE BOX AND IS A GAME

08:26AM  3    CHANGER.

08:26AM  4         AND THE PROFFER IN THE MOMENT WITH GENERAL MATTIS WAS THAT

08:26AM  5    THIS WAS RELEVANT TO THE DEFENDANT'S STATE OF MIND.

08:26AM  6         IF GLOWING REVIEWS ABOUT THE TECHNOLOGY ARE RELEVANT TO

08:27AM  7    HER STATE OF MIND IN MARCH OF 2016, THE CMS REPORT, WHICH IS

08:27AM  8    CRITICAL OF THERANOS'S TECHNOLOGY, IS EQUALLY RELEVANT TO HER

08:27AM  9    STATE OF MIND.

08:27AM  10         SO IT SHOULD COME IN FOR THAT PURPOSE.  AND DR. DAS WILL

08:27AM  11    ALSO REVIEW PORTIONS OF THE REPORT AND SAY, YES, I LOOKED INTO

08:27AM  12    THAT AND I AGREE WITH THAT COMPLETELY.  IN FACT, THE ISSUE IS

08:27AM  13    EVEN WORSE THAN WHAT IS DESCRIBED HERE.

08:27AM  14         THE COURT:  THANK YOU.

08:27AM  15         WILL DR. DAS INDICATE THAT HE SPOKE WITH MS. HOLMES ABOUT

08:27AM  16    THE INFORMATION CONTAINED IN THIS?  IN OTHER WORDS, IS THERE

08:27AM  17    SOME EVIDENCE THAT WILL CONNECT MS. HOLMES TO THE DOCUMENT SUCH

08:27AM  18    THAT IT COULD BE INTRODUCED FOR STATE OF MIND?

08:27AM  19         MR. LEACH:  YES.  HE WILL TESTIFY THAT HE WAS

08:27AM  20    INSTRUCTED BY MS. HOLMES TO REVIEW THE 2567 AND RESPOND TO IT.

08:27AM  21    I ANTICIPATE THAT'S WHAT HE'LL SAY.

08:27AM  22         IN ADDITION, HE WILL DESCRIBE HOW, IN THE COURSE OF

08:28AM  23    PREPARING THE RESPONSE TO THE 2567, HE RELAYED TO MS. HOLMES

08:28AM  24    WHAT HE WAS FINDING AND WHAT HE INTENDED TO REPORT BACK TO CMS,

08:28AM  25    AND THE COURT HAS FOUND IN THE MOTION IN LIMINE ORDER THAT THE

08:28AM   1    DIALOGUE BACK AND FORTH BETWEEN CMS AND THERANOS IS CLEARLY

08:28AM   2    RELEVANT.

08:28AM   3         AND DR. DAS IS GOING TO SAY NOT ONLY DID MS. HOLMES

08:28AM   4    UNDERSTAND WHAT I WAS FINDING AND WHAT OUR INVESTIGATION OF THE

08:28AM   5    DEFICIENCIES ENTAILED, SHE INSISTED THAT I CHARACTERIZE THIS AS

08:28AM   6    A QUALITY SYSTEMS ISSUE AND NOT AN ISSUE WITH THE DEVICE, WHICH

08:28AM   7    IS WHAT I WAS ACTUALLY SEEING.

08:28AM   8         SO DR. DAS, I ANTICIPATE, WILL TESTIFY MS. HOLMES ASKED

08:28AM   9    HIM TO MINIMIZE THE EXTENT OF THE PROBLEM TO CMS.

08:28AM  10         THAT GOES DIRECTLY TO HER STATE OF MIND, NOT JUST HER

08:28AM  11    KNOWLEDGE OF PROBLEMS, BUT HER DESIRE TO MINIMIZE THEM WHEN

08:28AM  12    CONFRONTED WITH ISSUES.

08:28AM  13              THE COURT:  I THINK YOUR PLEADINGS CALL THIS PUSH

08:28AM  14    BACK.

08:29AM  15              MR. LEACH:  YES.  AND THOSE ARE HIS WORDS IN OUR

08:29AM  16    PRIOR INTERVIEWS.

08:29AM  17         SO HE WILL CONNECT THE 2567 DIRECTLY TO MS. HOLMES, AND I

08:29AM  18    THINK HER REACTION AND HER DESIRE TO MINIMIZE WHAT IS

08:29AM  19    COMMUNICATED TO CMS IS HIGHLY RELEVANT TO HER STATE OF MIND.

08:29AM  20              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

08:29AM  21         THERE'S ANOTHER ISSUE ABOUT THIS, AND I THINK THIS

08:29AM  22    INVOLVES MR. LOOBY, AND WE SPOKE SOME TIME AGO ABOUT THIS AND

08:29AM  23    REDACTIONS IN THIS.  I THINK IT -- THERE'S SOME REDACTIONS.

08:29AM  24         MR. LOOBY IDENTIFIED CATEGORIES A, B, AND C, AND I THINK

08:29AM  25    IN YOUR PLEADING 1133 YOU SUGGEST, BASED ON THE COURT'S PRIOR

08:29AM  1    COMMENTS, THAT YOU'RE GIVING NOTICE THAT YOU WANT THE ENTIRETY

08:29AM  2    OF THE DOCUMENT TO COME IN.  I THINK WE'LL HAVE TO TALK ABOUT

08:29AM  3    POSSIBLE REDACTIONS.

08:29AM  4        I DON'T KNOW IF YOU WANT TO DO THAT NOW OR BEFORE -- MAYBE

08:29AM  5    WE SHOULD ALLOW MR. WADE TO STATE HIS CURRENT POSITION ON THAT?

08:29AM  6            MR. LEACH:  I'M HAPPY TO HEAR MR. WADE'S CURRENT

08:30AM  7    POSITION ON THAT, YOUR HONOR.

08:30AM  8        I WOULD LIKE TO NOTE THAT IN PREPARING FOR DR. DAS'S

08:30AM  9    DIRECT, THERE ARE ONLY CERTAIN PORTIONS OF THE CMS REPORT THAT

08:30AM  10   I INTEND TO DISPLAY TODAY.  I'M HAPPY TO GO THROUGH THOSE IN

08:30AM  11   ADVANCE.  I THINK THEY ELIMINATE A LOT OF THE REDACTIONS, BUT

08:30AM  12   NOT ALL OF THEM, BECAUSE I THINK THE ONE THING WE NEED TO BE

08:30AM  13   ABLE TO DISPLAY IS THE -- IT'S LAID OUT BY -- THERE'S A

08:30AM  14   PARTICULAR CITE TO A CODE SECTION, THERE'S A DESCRIPTION OF THE

08:30AM  15   LANGUAGE OF THE CODE SECTION, AND THEN IT SAYS THIS STANDARD OR

08:30AM  16   THIS CONDITION IS EITHER MET OR NOT MET, AND THERE'S A

08:30AM  17   DESCRIPTION OF THE EVIDENCE THAT CMS NOTED.

08:30AM  18       ALL OF THOSE, FOR THESE PARTICULAR PORTIONS, RELATE TO THE

08:30AM  19   EDISON DEVICE, THE TECHNOLOGY THAT THE DEFENDANT WAS HOLDING

08:30AM  20   OUT, SO I DON'T THINK IT RAISES ISSUES WITH ASSAYS THAT AREN'T

08:30AM  21   AT ISSUE OR OTHER ISSUES RAISED IN THE MOTION.

08:31AM  22       SO I ONLY INTEND TO DISPLAY THOSE TODAY, AND I'M HAPPY TO

08:31AM  23   GIVE THE COURT THOSE NUMBERS.

08:31AM  24       I DO THINK THAT THE ENTIRE EXHIBIT IS ADMISSIBLE FOR HER

08:31AM  25   STATE OF MIND, THE EXTENT OF THE ISSUES.  SO I THINK WE'VE --

5680

08:31AM   1    AS THE TRIAL HAS PROGRESSED, WE'VE MOVED A LITTLE BIT PAST,

08:31AM   2    DOES IT REFER TO AN ASSAY THAT'S NOT IN THE BILL OF PARTICULARS

08:31AM   3    OR A PARTICULAR MORE MINOR ISSUE.

08:31AM   4         I DO THINK THE ENTIRETY IS RELEVANT TO HER STATE OF MIND,

08:31AM   5    AND FOR THAT REASON WE DON'T THINK ANY REDACTIONS ARE

08:31AM   6    APPROPRIATE.

08:31AM   7         BUT I'M HAPPY TO PREVIEW THE PARTICULAR PAGES THAT WE WANT

08:31AM   8    TO GO THROUGH TODAY WITH DR. DAS, WHICH I DON'T THINK SHOULD BE

08:31AM   9    REDACTED IN ANY WAY.

08:31AM  10              THE COURT:  OKAY.

08:31AM  11         MR. WADE, DO YOU WANT TO HEAR THOSE LIMITATIONS TODAY OR

08:31AM  12    DO YOU WANT TO GO FORWARD WITH --

08:31AM  13              MR. WADE:  YOUR HONOR, I THINK THERE ARE SEVERAL

08:31AM  14    ISSUES HERE.  LET ME TRY TO ADDRESS SOME OF THE POINTS THAT THE

08:31AM  15    COURT HAS RAISED AND MR. LEACH HAS RAISED, AND THEN WE CAN GET

08:32AM  16    TO PERHAPS THE PARTICULAR ASPECTS OF THE REPORT ITSELF.

08:32AM  17         I THINK THE SHORT ANSWER TO THAT QUESTION IS WE NEED TO

08:32AM  18    KNOW WHAT IS IN AND WHAT IS OUT IN ORDER TO BE IN A POSITION

08:32AM  19    WHERE WE CAN CROSS-EXAMINE THE WITNESS.

08:32AM  20         SO I UNDERSTAND MR. LEACH HAS SAID THAT HE ONLY INTENDS TO

08:32AM  21    GO INTO CERTAIN PARTS.  WE DON'T KNOW WHAT THOSE PARTS ARE.  WE

08:32AM  22    DON'T KNOW WHAT IS GOING TO GO IN, SO WE DON'T KNOW HOW TO

08:32AM  23    PREPARE CROSS-EXAMINATION THAT WILL ADDRESS THE RELEVANT

08:32AM  24    PIECES.

08:32AM  25         THAT'S ONE OF THE REASONS WHY, AS THE COURT KNOWS, WE

08:32AM  1     RAISED THIS ISSUE EARLY ON SO WE COULD GET NOTICE AND BE IN A

08:32AM  2     POSITION TO FAIRLY CONFRONT THE WITNESS.

08:32AM  3          I THINK THERE IS A MORE FUNDAMENTAL THRESHOLD ISSUE THAT

08:32AM  4     RELATES TO DR. DAS AND THE CMS CORRESPONDENCE, AND THAT IS

08:32AM  5     WHETHER THAT -- AND THE CMS REPORT, THE 2567.

08:32AM  6          AS THE COURT KNOWS, THAT WAS THE SUBJECT OF EXTENSIVE

08:32AM  7     MOTIONS PRACTICE DURING THE MOTION IN LIMINE PHASE AND THE

08:32AM  8     SUBJECT OF THE COURT'S ORDER.

08:32AM  9          WE RAISED CONCERNS AT THAT TIME ABOUT HEARSAY, AND ABOUT

08:33AM  10    LAYERED HEARSAY IN PARTICULAR, THAT MANY OF THE ITEMS WITHIN

08:33AM  11    THE REPORT ARE BASED UPON STATEMENTS OF WITNESSES THAT WERE

08:33AM  12    MADE TO THE PEOPLE WHO WROTE THE REPORT, THAT PEOPLE WHO WROTE

08:33AM  13    THE REPORT THEN OBVIOUSLY MADE STATEMENTS WITHIN THE REPORT,

08:33AM  14    DIFFERENT PEOPLE MADE DIFFERENT STATEMENTS.

08:33AM  15         THERE ARE SOME SUBJECTIVE DETERMINATIONS WITHIN THE REPORT

08:33AM  16    THAT WE WERE CONCERNED ABOUT, AND I KNOW THE COURT IN ITS ORDER

08:33AM  17    NOTED THE CONCERN THAT THE -- THE REAL CONCERN THAT A CIVIL

08:33AM  18    VIOLATION HERE COULD CONFUSE THE JURY AND COULD CREATE THE

08:33AM  19    POSSIBILITY THAT, YOU KNOW, MS. HOLMES WOULD BE CONVICTED

08:33AM  20    BECAUSE OF SOME PERCEIVED VIOLATION OF LAW THAT IS A CIVIL

08:33AM  21    VIOLATION.  THAT REALLY ISN'T WHAT THIS CASE IS ABOUT.

08:33AM  22              THE COURT:  WELL, THAT RELATES MORE TO THE 3217, NOT

08:33AM  23    SO MUCH TO THIS DOCUMENT.

08:33AM  24         BUT GO AHEAD.  I JUST WANT TO LET YOU KNOW THAT.

08:34AM  25              MR. WADE:  AND WE NOTE THAT IN RAISING THOSE ISSUES

5682

08:34AM   1    AND THE CONCERNS THAT WE HAD AND THE ABILITY TO CONFRONT THAT

08:34AM   2    EVIDENCE FAIRLY ON BEHALF OF OUR CLIENT, THE GOVERNMENT

08:34AM   3    ADDRESSED THOSE CONCERNS REPEATEDLY BY SAYING IT WAS GOING TO

08:34AM   4    OFFER IT THROUGH ONE OF THE AUTHORS OF THE REPORT SO MS. HOLMES

08:34AM   5    WOULD HAVE A CHANCE TO ADDRESS ALL OF THESE CONCERNS BY

08:34AM   6    CROSS-EXAMINATION OF THE WITNESS ON THE STAND.

08:34AM   7         IT APPEARS THAT THE GOVERNMENT NOW DOES NOT INTEND TO DO

08:34AM   8    THAT, OR AT LEAST INTENDS TO OFFER THIS THROUGH DR. DAS, WHO,

08:34AM   9    OF COURSE, WE CAN'T CROSS-EXAMINE ON THE PREPARATION OF THE

08:34AM  10    REPORT AND ALL OF THE STATEMENTS THAT WERE MADE IN THERE, WHICH

08:34AM  11    CREATES BOTH SIGNIFICANT 403 ISSUES, BUT ALSO CONSTITUTIONAL

08:34AM  12    ISSUES TO THE EXTENT THAT WE'RE NOT ABLE TO CONFRONT THE AUTHOR

08:34AM  13    OF THE REPORT, THE MULTIPLE LAYERS OF HEARSAY, ET CETERA.

08:35AM  14         AND I JUST NOTE AT DOCKET 675 AT PAGES 4, 2 -- 2, 4, 8 --

08:35AM  15    8 AND 9, THE GOVERNMENT REPEATEDLY REPRESENTED TO THE COURT IN

08:35AM  16    THE MOTIONS IN LIMINE PRACTICE THAT THESE WITNESSES WOULD BE

08:35AM  17    OFFERED, EITHER SARAH BENNETT OR GARY YAMAMOTO, THAT THEY WOULD

08:35AM  18    TESTIFY AS TO THE CONTENT AND WE WOULD HAVE THE ABILITY TO

08:35AM  19    CROSS-EXAMINE THEM.

08:35AM  20         I DON'T KNOW WHAT THE STATUS OF THAT IS NOW, BUT THEY NOW

08:35AM  21    WANT TO BRING THIS IN THROUGH DR. DAS, WHO, OF COURSE, DIDN'T

08:35AM  22    PREPARE THE REPORT, DOESN'T KNOW WHAT --

08:35AM  23              THE COURT:  SO IF ONE OF THOSE WITNESSES TESTIFIED,

08:35AM  24    THAT WOULD ALLEVIATE YOUR CONCERN?

08:35AM  25              MR. WADE:  IT WOULD ALLEVIATE OUR CONCERN.

08:35AM  1        WE DO THINK THAT THAT WITNESS SHOULD ADMIT THE DOCUMENT,

08:35AM  2    SO IF THEY WANT DR. DAS TO TESTIFY AS TO THIS DOCUMENT AS A

08:35AM  3    THRESHOLD MATTER, IT HAS TO COME INTO EVIDENCE WITH AN

08:36AM  4    APPROPRIATE FOUNDATION.

08:36AM  5        THE COURT:  SO YOU THINK WHOEVER COULD AUTHENTICATE

08:36AM  6    THE DOCUMENT SHOULD TESTIFY FIRST AND THEN DR. DAS COULD

08:36AM  7    TESTIFY TO IT, AND THAT'S YOUR SUGGESTION TO THE GOVERNMENT ON

08:36AM  8    HOW THEY SHOULD PUT THEIR CASE ON?

08:36AM  9        MR. WADE:  WE DO.  WE RAISED THIS ISSUE WITH THE

08:36AM 10    GOVERNMENT.

08:36AM 11        IT'S NOT A SUGGESTION OF TRIAL PRESENTATION.  IT'S A 403

08:36AM 12    ISSUE AND A CONFRONTATION ISSUE, BECAUSE THEY WANT TO PUT IT IN

08:36AM 13    THROUGH A WITNESS WHO DIDN'T PREPARE IT, AND THEY WANT TO GO TO

08:36AM 14    THE END OF IT AND HAVE HIM AGREE WITH CERTAIN THINGS, AND WE

08:36AM 15    DON'T THINK THAT THAT'S APPROPRIATE FOR IT TO COME IN BEFORE

08:36AM 16    THE JURY UNDERSTANDS THE CONTEXT OF THE REPORT, WHAT IT IS, HOW

08:36AM 17    IT WAS PREPARED, THE SIGNIFICANCE OF IT, SO THEY CAN UNDERSTAND

08:36AM 18    HOW IT IS THAT DR. DAS RESPONDED TO IT.

08:36AM 19        BUT DIRECTLY TO THE COURT'S CONCERN, YES, IF THEY PUT UP

08:36AM 20    THAT WITNESS AND WERE ABLE TO CROSS-EXAMINE, WE OBVIOUSLY HAVE

08:36AM 21    THE ISSUES THAT WE RAISED IN THE MOTION IN LIMINE, BUT WE

08:36AM 22    UNDERSTAND THE COURT'S ORDER ON THAT.

08:36AM 23        BUT WE THINK AS A MATTER OF FAIRNESS AND CONSTITUTIONAL

08:36AM 24    PRINCIPLES, WE SHOULD HAVE THE ABILITY TO CONFRONT THAT

08:37AM 25    WITNESS.

5684

08:37AM 1    WE DON'T THINK IT NECESSARILY ELIMINATES THE CONCERN OF

08:37AM 2    PREJUDICE RELATING -- WE DON'T THINK NECESSARILY THINK THAT IT

08:37AM 3    COMPLETELY ADDRESSES THE CONCERNS WITH RESPECT TO THE CONFUSION

08:37AM 4    ON THE CIVIL ISSUES WITHIN THIS CRIMINAL CASE.

08:37AM 5    WE HAVE AN INSTRUCTION, PROPOSED INSTRUCTION, THAT WE HAD

08:37AM 6    SUBMITTED TO THE COURT AT DOCKET 809, PAGE 88, AND I'LL OFFER

08:37AM 7    THAT UP TO THE COURT.

08:37AM 8    (HANDING.)

08:37AM 9    WE DO THINK IN THESE UNIQUE CIRCUMSTANCES IF THE COURT IS

08:37AM 10   GOING TO ADMIT THIS, THAT THIS IS A CIRCUMSTANCE WHERE THIS

08:37AM 11   INSTRUCTION SHOULD BE, SHOULD BE GIVEN CONTEMPORANEOUS WITH THE

08:37AM 12   EVIDENCE SO THAT THE JURY UNDERSTANDS, YOU KNOW, THE

08:38AM 13   APPROPRIATE LIMITATION OF THE EVIDENCE WITH RESPECT TO THE

08:38AM 14   MATTERS THAT ARE AT ISSUE IN THE CASE.

08:38AM 15   WE THEN HAVE -- BEFORE WE GET TO MR. LOOBY'S ISSUES ON THE

08:38AM 16   PROPOSED REDACTIONS AND WHAT IS IN THE DOCUMENT, THERE ARE A

08:38AM 17   COUPLE OF OTHER ISSUES WITH RESPECT TO MR. DAS.

08:38AM 18   ONE RELATES TO VOIDING AND WHETHER HE IS PERMITTED TO

08:38AM 19   TESTIFY AS TO VOIDING OF THE RESULTS, AND THE OTHER RELATES TO

08:38AM 20   EXPERT TESTIMONY, WHICH WAS THE SUBJECT OF A PRETRIAL MOTION.

08:38AM 21   I KNOW THE COURT REMEMBERS THAT AND THE COURT ISSUED AN

08:38AM 22   ORDER ON THAT.  WE'RE SURE THE GOVERNMENT WILL HONOR THAT ORDER

08:39AM 23   AND ONLY OFFER PERCIPIENT WITNESS TESTIMONY.

08:39AM 24   THERE IS ONE REPRESENTATION THAT MR. LEACH JUST MADE THAT

08:39AM 25   GIVES ME, YOU KNOW, SIGNIFICANT PAUSE AS TO THAT.  THE -- A

UNITED STATES COURT REPORTERS

5685

08:39AM 1    JUDGMENT THAT THIS WITNESS IS GOING TO COME IN AND SAY, I AGREE

08:39AM 2    100 PERCENT WITH EACH AND EVERY FINDING IN THE REPORT IS --

08:39AM 3    CLEARLY GOES TO, YOU KNOW, EXPERT TESTIMONY.  THEY HAVEN'T

08:39AM 4    NOTICED -- THEY HAVEN'T PROVIDED NOTICE THAT THAT WAS AN

08:39AM 5    OPINION THAT HE WAS GOING TO OFFER.  IT WASN'T NECESSARY TO HIS

08:39AM 6    JOB.

08:39AM 7        THERE WERE MANY TIMES WITHIN HIS JOB WHERE HE WAS ACTUALLY

08:39AM 8    GOING BACK AND FORTH WITH CMS WITH RESPECT TO PARTICULAR ITEMS

08:39AM 9    WITHIN THE REPORT AND ACTUALLY RAISING DISAGREEMENT WITH ITEMS

08:39AM 10   IN THE REPORT OR SEEKING CLARIFICATION OR TRYING TO RESPOND ON

08:39AM 11   THE COMPANY'S BEHALF.

08:39AM 12       THE COURT:  WAS HE HIRED -- AT THE TIME HE WAS

08:40AM 13   HIRED -- WHEN WAS THAT?  DECEMBER OF '15, WASN'T IT?

08:40AM 14       MR. WADE:  HE WAS HIRED IN DECEMBER OF '15, YES.

08:40AM 15       THE COURT:  AND WAS HE HIRED -- WAS HIS TASK TO

08:40AM 16   ADDRESS THE CMS AND DEAL WITH THE QUESTIONS, AND ALSO DEAL WITH

08:40AM 17   REALIGNMENT OF THE LABORATORY IN COMPLIANCE WITH REGULATIONS?

08:40AM 18   WASN'T THAT HIS TASK?

08:40AM 19       MR. WADE:  THERE WAS CERTAINLY A PART OF THAT,

08:40AM 20   YOUR HONOR.  HE WAS ACTUALLY HIRED IN THIS PERIOD BETWEEN --

08:40AM 21   THERE HAD BEEN AN INSPECTION IN LATE 2015.

08:40AM 22       THE COURT:  SEPTEMBER?

08:40AM 23       MR. WADE:  AND THE 2567 WAS ISSUED IN LATE FEBRUARY

08:40AM 24   OF '15.  SO HE CAME IN ON A PART-TIME BASIS BEFORE THE NOTICE

08:40AM 25   WAS RECEIVED.

08:40AM 1        THE COURT:  AND THEN HE WAS CONTINUED ON AS A

08:40AM 2    FULL-TIME EMPLOYEE UNTIL WHEN WAS IT, 2018?  IS THAT WHEN HE

08:40AM 3    LEFT?

08:40AM 4        MR. WADE:  HE DID, YES.

08:40AM 5        THE COURT:  RIGHT.

08:40AM 6        MR. WADE:  AND THERANOS MADE A DECISION TO -- THAT A

08:40AM 7    SETTLEMENT WITH CMS --

08:41AM 8        THE COURT:  SURE, RIGHT.

08:41AM 9        MR. WADE:  -- IN THE LATE SUMMER, EARLY FALL OF

08:41AM 10   2016.

08:41AM 11       THE COURT:  SO MY POINT ABOUT THIS, PARDON ME --

08:41AM 12       MR. WADE:  YEAH.

08:41AM 13       THE COURT:  -- MY POINT WAS WHETHER OR NOT HE --

08:41AM 14   BECAUSE OF THE REASONS HE WAS HIRED, AND IF HE TESTIFIES, I WAS

08:41AM 15   HIRED TO DO X, Y, Z, PART OF THAT IS, IN RESPONSE TO YOUR

08:41AM 16   QUESTION, CAN HE SAY, I AGREED WITH IT OR NOT?

08:41AM 17      THAT MIGHT BE PART OF HIS JOB TITLE.  I DON'T KNOW.  WE'LL

08:41AM 18   HAVE TO SEE WHETHER OR NOT THAT EVIDENCE COMES IN.

08:41AM 19      I UNDERSTAND YOUR CONCERN ABOUT MORPHING OVER INTO EXPERT,

08:41AM 20   AND I THINK I WAS VERY SPECIFIC ABOUT THAT IN 798, AND OTHER

08:41AM 21   ORDERS, THAT HE COULD NOT -- 989 ALSO, THAT HE COULD NOT.

08:41AM 22      HE'S GOING TO TESTIFY AS A PERCIPIENT WITNESS, AND HE'S

08:41AM 23   NOT TO TESTIFY UNLESS THE FOUNDATION IS LAID, WHICH I DON'T

08:41AM 24   THINK THAT WOULD HAPPEN.  AS YOU POINT OUT, HE HASN'T BEEN

08:41AM 25   IDENTIFIED AS AN EXPERT.  YOU HAVE NO NOTICE ABOUT THAT.

08:41AM  1        BUT HE CAN TESTIFY ABOUT A PERCIPIENT WITNESS.  WHETHER OR

08:42AM  2   NOT A FOUNDATION IS LAID AS TO THAT QUESTION THAT YOU HAVE

08:42AM  3   CONCERNS ABOUT REMAINS TO BE SEEN.

08:42AM  4        HE MAY BE ABLE TO ANSWER THAT QUESTION BASED ON

08:42AM  5   FOUNDATION.  I DON'T KNOW.

08:42AM  6             MR. WADE:  YEAH.  I JUST WANT TO RAISE IT BECAUSE

08:42AM  7   OBVIOUSLY IT HAS PARTICULAR SIGNIFICANCE.

08:42AM  8             THE COURT:  SURE.

08:42AM  9             MR. WADE:  AND IT HAS PARTICULAR PREJUDICIAL IMPACT

08:42AM 10   IF IT HAPPENS IN FRONT OF THE JURY.

08:42AM 11        IN THIS PARTICULAR CASE, THE CORRESPONDENCE THROUGHOUT

08:42AM 12   2016 MAKES CLEAR THAT HE IS ENGAGING ACTIVELY WITH CMS TO

08:42AM 13   ADDRESS THESE CONCERNS.

08:42AM 14             THE COURT:  RIGHT.

08:42AM 15             MR. WADE:  HE'S CLEARLY COMING TO VIEWS AND

08:42AM 16   RESPONDING TO THE COMPANY, AND WE DON'T HAVE ANY ISSUE WITH

08:42AM 17   THAT.

08:42AM 18        HE'S CLEARLY OF THE VIEW THAT THERE WERE SIGNIFICANT

08:42AM 19   ISSUES WITHIN THE LAB.  WE DON'T HAVE ANY ISSUE WITH THAT.

08:42AM 20   THAT'S WHAT HE WAS HIRED TO DEAL WITH.

08:42AM 21        THE CONCERN THAT WE HAVE IS IT'S ONE THING FOR HIM TO GO

08:42AM 22   THROUGH IN REALTIME THE PARTICULAR POSITIONS THAT HE WAS TAKING

08:42AM 23   ON PARTICULAR ISSUES.

08:42AM 24        IT'S ANOTHER THING FOR HIM TO SAY, WHICH I HAVEN'T SEEN

08:42AM 25   ANY CONTEMPORANEOUS EVIDENCE OF, I AGREED 100 PERCENT WITH THE

5688

08:43AM   1    CMS REPORT, AND I'M GOING TO OFFER THIS IN FRONT OF THIS

08:43AM   2    JURY --

08:43AM   3              THE COURT:  SURE.

08:43AM   4              MR. WADE:  -- WHEN THERE'S NO INDICATION THAT THAT

08:43AM   5    WAS COMMUNICATED WITH MS. HOLMES THAT HE 100 PERCENT AGREED

08:43AM   6    WITH THE CMS REPORT.  THERE'S NO NOTICE FOR THAT OR A BASIS FOR

08:43AM   7    HIS CONCLUSIONS.

08:43AM   8         IN FACT, THE CONTEMPORANEOUS EVIDENCE SUGGESTS OTHERWISE.

08:43AM   9              THE COURT:  SO WE'RE TALKING ABOUT THEORETICAL

08:43AM  10    THINGS HERE.  HE MAY LAY A FOUNDATION -- PARDON ME, MR. LEACH.

08:43AM  11         BUT THE GOVERNMENT MAY LAY A FOUNDATION FOR THIS.  YOU'RE

08:43AM  12    RAISING THIS AS A CONCERN, AND I APPRECIATE IT, AND I THINK

08:43AM  13    IT'S A WAIT AND SEE.  LET'S SEE WHAT HAPPENS.

08:43AM  14         I APPRECIATE YOUR CONCERN.  HE'S NOT GOING TO BE ABLE TO

08:43AM  15    TESTIFY AS AN EXPERT.  I THINK MR. LEACH'S TEAM KNOWS THAT.

08:43AM  16    THEY'VE CONFIRMED THAT IN THEIR RESPONSIVE PLEADINGS, SO I

08:43AM  17    THINK WE CAN EXPECT THAT THEY WILL CONDUCT THE EXAMINATION OF

08:43AM  18    DR. DAS ACCORDING TO THE LIMITATIONS THAT THE COURT HAS IMPOSED

08:43AM  19    ON THEM.

08:43AM  20              MR. WADE:  THE OTHER ISSUE THAT I RELATED,

08:43AM  21    YOUR HONOR, WAS THE ISSUE OF VOIDING.

08:43AM  22              THE COURT:  YES.

08:43AM  23              MR. WADE:  AND THE GOVERNMENT HAD AN OBLIGATION, I

08:44AM  24    BELIEVE UNDER THE COURT'S ORDER, TO OFFER EVIDENCE OR PROFFER

08:44AM  25    EVIDENCE THAT THIS WAS A LEGAL VIOLATION.

08:44AM 1      AS THE COURT MAY RECALL -- AND TO BE FRANK, THE RECORD IS

08:44AM 2   A LITTLE BIT MIXED ON THIS -- THERE WAS ANOTHER 302 MEMORANDUM

08:44AM 3   OF INTERVIEW THAT -- RELATING TO MR. DAS, OR DR. DAS, THAT THE

08:44AM 4   GOVERNMENT PROVIDED TO US AFTER IT FILED ITS SUBMISSION.

08:44AM 5   THERE'S SOME AMBIGUITY AS TO INITIALLY HE SAID THERE WAS A

08:44AM 6   REQUIREMENT --

08:44AM 7      THE COURT:  HE SAID, I WAS REQUIRED TO REDACT OR

08:44AM 8   VOID AND I DID IT BECAUSE I THOUGHT IT WAS THE RIGHT THING.

08:44AM 9      IT SEEMED LIKE A SEMANTIC TYPE ISSUE, WHICH HAS

08:44AM 10  RAMIFICATIONS, I UNDERSTAND.  WAS HE REQUIRED OR DID HE DO IT

08:44AM 11  BECAUSE THIS FILTERS INTO HIS CONVERSATION WITH YOUR CLIENT, ET

08:44AM 12  CETERA.

08:44AM 13     SO I THINK I CAPTURE THAT.

08:45AM 14      MR. WADE:  YEAH.  AND THAT HAS ISSUES UNDER 407.

08:45AM 15  AND I THINK IT'S A PRETTY IMPORTANT THRESHOLD ISSUE JUST IN

08:45AM 16  TERMS OF IF IT'S A LEGAL REQUIREMENT UNDER 407, AS THE COURT

08:45AM 17  KNOWS FROM PRIOR MOTIONS, THAT'S ONE THING.  IF IT'S A MATTER

08:45AM 18  OF DISCRETION, WE -- OF COURSE THERE'S TESTIMONY -- THE

08:45AM 19  GOVERNMENT HAS NOT POINTED TO A LEGAL REGULATION THAT DOES

08:45AM 20  REQUIRE VOIDING OF RESULTS.  IT'S UNCLEAR EXACTLY WHAT MR. --

08:45AM 21  DR. DAS'S VIEW ON THIS IS.

08:45AM 22     THERE'S TESTIMONY FROM THE PEOPLE WHO PREPARED THE REPORT,

08:45AM 23  MR. YAMAMOTO OF CMS WHO SAID THAT HE DIDN'T UNDERSTAND VOIDING

08:45AM 24  TO BE REQUIRED, IT WAS WITHIN THE DISCRETION AS A POSSIBLE WAY

08:45AM 25  TO REMEDY ISSUES.

5690

08:45AM  1    AND SO I THINK THAT'S A PRETTY SIGNIFICANT ISSUE EMBEDDED

08:46AM  2   WITHIN A LOT OF WHAT DR. DAS IS DOING AND IS GOING TO TESTIFY

08:46AM  3   TO.

08:46AM  4    AND SO -- AND I THINK THERE IS NOT A CLEAR PROFFER ON

08:46AM  5   THAT, AND I WONDER WHETHER THAT'S AN ISSUE ON WHICH, OUTSIDE OF

08:46AM  6   THE PRESENCE OF THE JURY, WE OUGHT TO VOIR DIRE THE WITNESS TO

08:46AM  7   ASSESS THAT, OR MAYBE DEFER IT.

08:46AM  8    MAYBE THIS IS AN ISSUE -- LIKE I SAID, IF THE REPORT IS

08:46AM  9   GOING TO COME IN THROUGH A CMS WITNESS, MAYBE CMS CAN

08:46AM  10   APPROPRIATELY DEAL WITH THAT SINCE THEY'RE THE ONES WHO

08:46AM  11   DETERMINE WHAT IS REQUIRED AND WHAT IS NOT.

08:46AM  12    AND THAT'S THE POINT AT WHICH WE THINK THE EVIDENCE OF CMS

08:46AM  13   SHOULD COME IN.

08:46AM  14         THE COURT:  OKAY.

08:46AM  15       MR. LEACH?

08:46AM  16         MR. LEACH:  I'D LIKE TO RESPOND TO THE VOIDING POINT

08:46AM  17   FIRST, YOUR HONOR.

08:46AM  18         THE COURT:  SURE.

08:46AM  19         MR. LEACH:  407 APPLIES TO MEASURES.  IT DOESN'T

08:46AM  20   APPLY TO AN INVESTIGATION.  IT DOESN'T APPLY TO YOUR OWN

08:46AM  21   ANALYSIS.  IT DOESN'T APPLY TO INTERNAL THINGS THE COMPANY DOES

08:47AM  22   TO UNDERSTAND ITS PRODUCT, WHICH IS EXACTLY WHAT DR. DAS WAS

08:47AM  23   DOING.

08:47AM  24    WHAT IS LEGALLY REQUIRED IS ONCE DR. DAS FINDS AN ERROR,

08:47AM  25   THERE'S NO DISCRETION UNDER THE CLIA REGS -- I DON'T HAVE IT IN

5691

| | | |
|---|---|---|
| 08:47AM | 1 | FRONT OF ME -- I THINK IT'S 493.1290 OR 80.  I'M SORRY, |
| 08:47AM | 2 | YOUR HONOR, I DON'T HAVE THE CITE IN FRONT OF ME. |
| 08:47AM | 3 |         MR. WADE:  I'M SORRY, COUNSEL, I BELIEVE IT'S |
| 08:47AM | 4 | .1840(A)(6).  IS THAT WHAT YOU'RE REFERRING TO? |
| 08:47AM | 5 |         MR. LEACH:  I STAND CORRECTED. |
| 08:47AM | 6 |     ONCE THE ERROR IS IDENTIFIED, THERE'S NO DISCRETION TO |
| 08:47AM | 7 | VOID THE TEST.  YOU MUST DO THAT.  AND THAT'S THE MEASURE. |
| 08:47AM | 8 | THAT'S THE ACTION. |
| 08:47AM | 9 |     AND SO DR. DAS WILL SAY, AND I THINK THERE IS SOME |
| 08:47AM | 10 | SEMANTICS IN IT FROM THE WITNESS'S POINT OF VIEW, BUT HE'LL |
| 08:47AM | 11 | SAY, AS THE CLIA DIRECTOR, I HAD A RESPONSIBILITY TO GET TO THE |
| 08:47AM | 12 | BOTTOM OF THIS PROBLEM.  I FOUND ERRORS.  ONCE I FOUND THE |
| 08:48AM | 13 | ERROR, I HAD NO CHOICE.  I NEEDED TO VOID THE TESTS. |
| 08:48AM | 14 |     SO THERE'S NO 407 ISSUE. |
| 08:48AM | 15 |     AND EVEN IF THERE WERE, IT GOES TO MS. HOLMES'S OWNERSHIP |
| 08:48AM | 16 | AND CONTROL OF THIS COMPANY.  IT GOES, YOU KNOW, TO ISSUES |
| 08:48AM | 17 | OUTSIDE OF THE LIMITS OF 407. |
| 08:48AM | 18 |     SO I THINK WE HAVE PROFFERED A SUFFICIENT FOUNDATION, OR I |
| 08:48AM | 19 | THINK YOU'LL HEAR THIS FROM DR. DAS WHEN HE SAYS, I HAD NO |
| 08:48AM | 20 | CHOICE BUT TO VOID THESE TESTS ONCE I FOUND THE ERROR. |
| 08:48AM | 21 |     WITH RESPECT TO TYING IT TO MS. HOLMES'S STATE OF MIND, |
| 08:48AM | 22 | YOUR HONOR, THERE'S TWO REASONS WHY IT CONNECTS. |
| 08:48AM | 23 |     FIRST OF ALL, SHE PUSHES BACK.  SHE SAYS, DON'T |
| 08:48AM | 24 | CHARACTERIZE THIS AS A QUALITY SYSTEM -- OR DON'T CHARACTERIZE |
| 08:48AM | 25 | THIS AS AN ACCURACY ISSUE TO CMS, CHARACTERIZE THIS AS A |

5692

08:48AM 1    QUALITY SYSTEMS ISSUE.

08:48AM 2         AND WHEN SHE TALKS TO LISA PETERSON, SHE AGAIN MINIMIZES

08:48AM 3    THE EXTENT OF WHAT DR. DAS IS FINDING.  THAT'S ONE WAY THAT IT

08:48AM 4    CONNECTS TO HER STATE OF MIND.

08:49AM 5         THE SECOND WAY IT CONNECTS IS THAT FOR ALL OF THE REASONS

08:49AM 6    THAT WE TALKED ABOUT WITH THE CMS REPORT, THAT THE DEFENDANT

08:49AM 7    HAS INJECTED EVIDENCE, AND THIS IS AT 7653 AND 1052 WHERE

08:49AM 8    DOCUMENTS HAVE BEEN OFFERED TO SHOW MS. HOLMES'S STATE OF MIND

08:49AM 9    IN 2016 GENERALLY ABOUT THE TECHNOLOGY.

08:49AM 10        AND THE FACT THAT THERANOS IS REQUIRED TO VOID THESE TESTS

08:49AM 11   IN THIS EXACT SAME TIME PERIOD GOES TO HER OVERALL KNOWLEDGE

08:49AM 12   AND STATE OF MIND, WHICH THE DEFENSE HAS PROFFERED AS RELEVANT.

08:49AM 13        SO 407 IS A RED HERRING IN THIS CASE.  THEY WERE REQUIRED

08:49AM 14   TO DO THIS.  DR. DAS WILL -- TO VOID THE TESTS.  HE WILL SAY

08:49AM 15   THAT.

08:49AM 16        AND IT GOES DIRECTLY TO THE ACCURACY OF THE TESTS, AND IT

08:49AM 17   GOES DIRECTLY TO MS. HOLMES'S STATE OF MIND.

08:49AM 18        FOR THAT REASON IT SHOULD COME IN.

08:49AM 19            THE COURT:  OKAY.  DID YOU WANT TO SPEAK TO ANY OF

08:49AM 20   THE OTHER COMMENTS?

08:49AM 21            MR. LEACH:  I DID, YOUR HONOR.

08:50AM 22        WITH RESPECT TO THE CONFRONTATION ISSUE, I DON'T THINK

08:50AM 23   THAT'S AN ISSUE.  THE CMS REPORT IS NOT TESTIMONIAL, AND, YOU

08:50AM 24   KNOW, IT'S NOT PREPARED IN A LAW ENFORCEMENT CONTEXT, SO I

08:50AM 25   DON'T THINK THERE'S A CONFRONTATION ISSUE.

UNITED STATES COURT REPORTERS

**ER-388**

5693

08:50AM  1      THE ENTIRETY OF THE DOCUMENT IS ADMISSIBLE FOR HER STATE

08:50AM  2   OF MIND FOR A NONHEARSAY PURPOSE.

08:50AM  3      AND THEN I THINK IT'S PERFECTLY APPROPRIATE TO SHOW THE

08:50AM  4   DOCUMENT TO DR. DAS -- HE'S INTIMATELY FAMILIAR WITH THIS, THIS

08:50AM  5   WAS A CORE PART OF HIS JOB -- AND TO ASK HIM, DID YOU LOOK AT

08:50AM  6   THIS?  WHAT DID YOU DO?  DID YOU COME TO THE SAME CONCLUSION

08:50AM  7   THAT IS LISTED HERE?

08:50AM  8      HE'S NO MORE OF AN EXPERT IN THAT CONTEXT THAN

08:50AM  9   SARAH BENNETT OR GARY YAMAMOTO ARE WHEN THEY ARE WRITING DOWN

08:50AM 10   THE WORDS.

08:50AM 11      SO THE FACT THAT CMS LOOKED AT THESE DOCUMENTS IN THE

08:50AM 12   FIRST INSTANCE AND REPORTED THE PERCENTAGE CV OR THE NUMBER OF

08:50AM 13   STANDARD DEVIATIONS THAT ARE AWAY, THAT'S THE SAME THING THAT

08:50AM 14   DR. DAS IS LOOKING AND HE'S PERFECTLY COMPETENT TO SAY WAS THAT

08:50AM 15   CONSISTENT OR INCONSISTENT WITH DOCUMENTS THAT YOU WERE LOOKING

08:51AM 16   AT.

08:51AM 17      SO I THINK THAT'S AN APPROPRIATE USE OF THE 2567.  HE CAN

08:51AM 18   AUTHENTICATE IT, HE GOT IT, AND IT'S BEING OFFERED HERE FOR A

08:51AM 19   NONHEARSAY PURPOSE.

08:51AM 20      CERTAINLY WE COULD AUTHENTICATE IT THROUGH SARAH BENNETT

08:51AM 21   OR GARY YAMAMOTO OR ANOTHER CMS WITNESS, BUT I DON'T THINK WE

08:51AM 22   HAVE TO FOR THE PURPOSES THAT WE'RE USING IT WITH FOR DR. DAS.

08:51AM 23      WITH RESPECT TO THE MULTIPLE LAYERS OF HEARSAY, I THINK

08:51AM 24   THIS ISSUE WAS RAISED AND REJECTED AT THE MOTION IN LIMINE

08:51AM 25   STAGE.  BUT I ALSO SUBMIT THAT THE PORTIONS WE'LL BE REFERRING

5694

08:51AM 1    TO WITH DR. DAS, WHICH ARE ON PAGES 45 THROUGH 58 OF THE

08:51AM 2    REPORT, ARE LARGELY THE WITNESS JUST -- OR THE CMS SURVEYOR

08:51AM 3    REPORTING WHAT IS IN DOCUMENTS, NOT RELAYING CONVERSATIONS.

08:51AM 4        BUT I WOULD ALSO ADD, THROUGH THE COURSE OF THIS TRIAL,

08:52AM 5    THE COURT HAS HEARD EVIDENCE ABOUT WHO THE GENERAL SUPERVISOR

08:52AM 6    AND THE TECHNICAL SUPERVISOR AND THE OTHER PEOPLE WITHIN THE

08:52AM 7    LAB ARE.  THESE ARE NOT LOWER LEVEL PERSONNEL, YOU KNOW, IN

08:52AM 8    SOME FACTORY MILES AWAY FROM MS. HOLMES.

08:52AM 9        THESE ARE PEOPLE WHO REPORTED DIRECTLY TO THE LAB DIRECTOR

08:52AM 10   UNDER MS. HOLMES'S AND MR. BALWANI'S SUPERVISION.  SHE KNEW OF

08:52AM 11   THE INSPECTION IN ADVANCE, AND SHE HELD THESE PEOPLE OUT AS

08:52AM 12   BEING COMPETENT AND CAPABLE TO TALK TO THE ISSUES IN THE LAB.

08:52AM 13       SO I DON'T THINK THAT THERE'S A LAYERED HEARSAY ISSUE.

08:52AM 14       THE COURT:  IN EXHIBIT 4 OF YOUR 1133, I THINK YOU

08:52AM 15   HAVE -- EXHIBIT 4 IS -- IT SEEMS LIKE IT'S A SLIDE PRESENTATION

08:52AM 16   THAT MAY HAVE BEEN USED FOR THAT INITIAL MEETING WITH CMS.

08:52AM 17       IS THAT WHAT THAT IS?

08:52AM 18       MR. LEACH:  YES.  AND THAT WAS INTRODUCED BY THE

08:52AM 19   DEFENDANT WITH ONE OF THE LAB WITNESSES.

08:52AM 20       THE COURT:  AND AT THAT INITIAL MEETING WITH CMS AT

08:52AM 21   THE COMPANY, THE LAB PEOPLE THAT YOU JUST MENTIONED WERE

08:53AM 22   PRESENT AND WERE THERE AS REPRESENTATIVES OF THE COMPANY?

08:53AM 23       MR. LEACH:  MANY OF THEM, YES.

08:53AM 24       THE COURT:  ALL RIGHT.  THANK YOU.  I'M SORRY TO

08:53AM 25   INTERRUPT YOU.

5695

```
08:53AM   1        GO AHEAD.

08:53AM   2            MR. LEACH:  WITH RESPECT TO DR. DAS AND THE 701 AND

08:53AM   3    702 ISSUE, AGAIN, I THINK THIS WAS -- NOTHING HAS CHANGED SINCE

08:53AM   4    THE COURT'S ORDER IN 989.

08:53AM   5        DR. DAS IS TALKING ABOUT WHAT HE SAW, HEARD, AND DID IN

08:53AM   6    HIS JOB, AND THE CONCLUSIONS THAT HE COMMUNICATED DIRECTLY TO

08:53AM   7    THE DEFENDANT.  HE'S PROVIDING TESTIMONY DIRECTLY IN LINE WITH

08:53AM   8    WHAT THE COURT HAS HEARD FROM DR. ROSENDORFF.

08:53AM   9        HE HAPPENS TO HAVE AN M.D., BUT HE'S -- YOU KNOW, WE'RE

08:53AM  10    NOT ASKING HIM TO REVIEW SOMETHING THAT IS OUTSIDE OF THE

08:53AM  11    COURSE OF HIS DUTIES.  HE'S TALKING ABOUT WHAT HE SAW, HEARD,

08:53AM  12    AND DID IN HIS JOB AND COMMUNICATED TO MS. HOLMES, AND THAT'S

08:53AM  13    CLASSIC PERCIPIENT WITNESS TESTIMONY.

08:54AM  14        UNLESS THE COURT HAS FURTHER QUESTIONS, I THINK THAT'S --

08:54AM  15            THE COURT:  NO.  THANK YOU.  THANK YOU.

08:54AM  16            MR. WADE:  YOUR HONOR, IF I COULD MAYBE START WITH

08:54AM  17    THE LAST POINT, WHAT HE SAW, HEARD, AND COMMUNICATED TO

08:54AM  18    MS. HOLMES, I JUST WANT TO MAKE SURE THAT HIS CONCLUSION THAT

08:54AM  19    HE 100 PERCENT AGREED WITH WHAT WAS IN THE CMS REPORT MEETS THE

08:54AM  20    THRESHOLD STANDARD THAT THE GOVERNMENT JUST SAID BEFORE THEY

08:54AM  21    OFFER IT AND IT SPILLS OUT IN FRONT OF THIS JURY, BECAUSE

08:54AM  22    THAT'S THE PART THAT CONCERNS ME.  I HAVEN'T SEEN ANY EVIDENCE

08:54AM  23    TO THAT EFFECT, THAT IT MAY BE A LITTLE BIT OF RETROSPECTIVE

08:54AM  24    ANALYSIS OR CONCLUSIONS AFTER, YOU KNOW, THE COURSE OF DEALING.

08:54AM  25        SO ON THE EXPERT ISSUE, THAT'S WHAT CONCERNS US THE MOST.
```

08:54AM   1        WITH RESPECT TO THE CMS REPORT, THE GOVERNMENT HAS SAID

08:54AM   2   THAT THIS IS EVIDENCE OF WHETHER THE TESTS WERE ACCURATE AND

08:54AM   3   RELIABLE.  THEY'VE MADE THAT REPRESENTATION TO THE COURT IN

08:54AM   4   NUMEROUS WRITTEN SUBMISSIONS TO THIS COURT.

08:54AM   5        THEY ALSO SAID THAT WE HAVE THE ABILITY TO CONFRONT THAT

08:55AM   6   EVIDENCE BY CROSS-EXAMINING THE AUTHORS OF THE REPORT.

08:55AM   7        NOW THEY'RE SAYING -- NOW THEY'RE KIND OF PIVOTING AND

08:55AM   8   SAYING IT'S SOMEHOW RELEVANT TO THE STATE OF MIND OF OUR

08:55AM   9   CLIENT, WHICH IS A RATIONALE THAT I DON'T FULLY UNDERSTAND, BUT

08:55AM  10   IT CERTAINLY --

08:55AM  11             THE COURT:  IT COULD BE BOTH.

08:55AM  12             MR. WADE:  IT COULD CONCEIVABLY BE BOTH, BUT THERE'S

08:55AM  13   CERTAIN LIMITATIONS ON THE USE OF THE DOCUMENT AND A FOUNDATION

08:55AM  14   THAT IS REQUIRED IF THEY'RE OFFERING IT JUST FOR THE STATE OF

08:55AM  15   MIND OF THE CLIENT.

08:55AM  16        AND THEN THAT WILL GO INTO WHETHER IT'S ACTUALLY RELEVANT

08:55AM  17   TO THE CASE, AND THOSE ARE MR. LOOBY'S ISSUES WITH RESPECT TO

08:55AM  18   PARTICULAR ITEMS.

08:55AM  19        BUT THE ABILITY TO CONFRONT THAT EVIDENCE AND TO AVOID THE

08:55AM  20   CONFUSION THAT IS NECESSARY AS A RESULT OF THAT DOCUMENT

08:55AM  21   REMAINS.  THE ENTIRE LITIGATION RECORD REMAINS.

08:55AM  22        THE NEED TO CONFRONT THE MULTIPLE LAYERS OF HEARSAY

08:56AM  23   REMAINS, AND THE GOVERNMENT HAS CONSISTENTLY SAID TO THIS

08:56AM  24   COURT, THE REMEDY TO THAT IS CROSS-EXAMINATION.  LET IT IN,

08:56AM  25   PLEASE LET IT IN, THE REMEDY IS CROSS-EXAMINATION.

08:56AM    1          THE COURT AGREED TO LET IT IN, AND NOW THEY WANT TO SHIFT

08:56AM    2     THE TABLE A LITTLE BIT AND PREVENT US FROM FAIRLY CONFRONTING

08:56AM    3     THAT EVIDENCE.

08:56AM    4          THE COURT:  BUT IF A WITNESS, AS I ASKED YOU

08:56AM    5     EARLIER, IF ONE OF THE WITNESSES THAT YOU IDENTIFIED,

08:56AM    6     MR. YAMAMOTO OR MS. BENNETT OR ANOTHER PERSON TESTIFIES, THEN

08:56AM    7     YOU'LL HAVE THE OPPORTUNITY TO CROSS-EXAMINE.

08:56AM    8          MR. WADE:  EXACTLY.

08:56AM    9          THE COURT:  OKAY.

08:56AM   10          MR. WADE:  WE, WE -- AND I HAVEN'T HEARD THE

08:56AM   11     GOVERNMENT REPRESENT THAT YET.

08:56AM   12          BUT THE -- THOSE CONCERNS WOULD ADDRESS THAT.

08:56AM   13          WE STILL THINK, AS A MATTER OF FAIRNESS, THAT SHOULD COME

08:56AM   14     FIRST, FOR THE DOCUMENT TO COME IN SO THE JURY UNDERSTANDS IT.

08:56AM   15          THE COURT:  SURE.  I UNDERSTAND THE LOGIC OF THAT.

08:56AM   16     I THINK I CAN SEE THAT.  SURE, OKAY.

08:56AM   17          MR. WADE:  THE -- WITH RESPECT TO THE VOIDING ISSUE,

08:56AM   18     YOUR HONOR, THE REGULATION THAT THE GOVERNMENT POINTED TO,

08:57AM   19     WHICH IS 42 CFR 493.1840, WHICH IS WITHIN TRIAL EXHIBIT 7603,

08:57AM   20     WHICH I BELIEVE THE COURT HAS ABOUT SEVEN COPIES UP THERE IN

08:57AM   21     ITS BINDER, THAT REGULATION DOES NOT ACTUALLY ADDRESS THE --

08:57AM   22     I'M SORRY.  IT MIGHT BE -- I'M REFERRING TO A DIFFERENT

08:57AM   23     REGULATION.  I APOLOGIZE.  I'LL CORRECT THE CITE IN A SECOND.

08:57AM   24     THAT RELATES TO THE NEXT POINT THAT I WANTED TO RAISE.

08:57AM   25          THE REGULATION THAT THE GOVERNMENT HAS POINTED TO, WHICH

08:57AM  1    CAME OUT, I BELIEVE, FOR THE FIRST TIME IN AN INTERVIEW WITH

08:57AM  2    DR. DAS LAST NIGHT, IS A REGULATION THAT RELATES TO IF YOU FIND

08:57AM  3    AN ERROR IN A LAB REPORT, YOU HAVE AN OBLIGATION TO CORRECT

08:58AM  4    THAT ERROR.

08:58AM  5         THAT'S NOT WHAT HAPPENED HERE FOR THE MOST PART.

08:58AM  6         THEY CORRECTED ISSUES IN AN ABUNDANCE OF CAUTION BECAUSE

08:58AM  7    OF CONCERNS THAT THEY IDENTIFIED AS A RESULT OF THIS.  THAT

08:58AM  8    PROVISION DOESN'T RELATE TO VOIDING OF TEST RESULTS, IT RELATES

08:58AM  9    TO THE CORRECTION OF A KNOWN ERROR THAT IS IDENTIFIED.

08:58AM 10         HERE, IN AN ABUNDANCE OF CAUTION, BECAUSE OF CONCERNS THAT

08:58AM 11    THEY IDENTIFIED AND TO MAKE CLEAR THAT THE PATIENT SHOULD NOT

08:58AM 12    RELY UPON THESE RESULTS, THEY SAID, WE'RE GOING TO VOID THE

08:58AM 13    RESULTS AND GIVE NOTICE TO DOCTORS AND PATIENTS OF THAT.

08:58AM 14         THAT'S NOT THE LEGAL REQUIREMENT, AND --

08:58AM 15         THE COURT:  IS THIS FODDER FOR CROSS-EXAMINATION OF

08:58AM 16    DR. DAS?

08:58AM 17         MR. WADE:  WELL, IT'S A --

08:58AM 18         THE COURT:  CAN'T YOU ASK HIM, YOU DID THE WRONG

08:58AM 19    THING?  YOU DIDN'T HAVE TO DO THAT?  IS THAT YOUR

08:58AM 20    CROSS-EXAMINATION?

08:58AM 21         MR. WADE:  I THINK IT'S A THRESHOLD ISSUE AS TO

08:58AM 22    WHETHER THE EXAMINATION COMES IN AT ALL, THAT'S THE POINT.

08:59AM 23         BECAUSE UNDER 407 IT SHOULDN'T COME IN IF IT IS A

08:59AM 24    SUBSEQUENT REMEDIAL MEASURE.

08:59AM 25         AND IF THE -- DR. DAS CAME IN AND MADE VERY CLEAR THAT IN

08:59AM  1    THE RESPONSE WE WANT TO BE CONSERVATIVE.  THERE WAS A LOT OF

08:59AM  2    DISCUSSION BACK AND FORTH ABOUT THE APPROACH THAT SHOULD BE

08:59AM  3    TAKEN.  THERE ARE DIFFERENT OPTIONS ON THE TABLE, AND THEY

08:59AM  4    DECIDED TO TAKE WHAT DR. DAS DESCRIBED AS A CONSERVATIVE

08:59AM  5    APPROACH.

08:59AM  6        AND CONTRARY TO THE SUGGESTION OF THE GOVERNMENT, THAT WAS

08:59AM  7    SUPPORTED BY MY CLIENT, BUT IT WASN'T REQUIRED.

08:59AM  8        AND SO THAT'S HOW WE, THAT'S HOW WE END UP IN 407.  IT WAS

08:59AM  9    A MATTER OF DISCRETION.  IT WAS A REMEDIAL MEASURE.

08:59AM 10        WITH APOLOGIES FOR THE CONFUSION ON THE REGULATION, IT

09:00AM 11    RELATES TO ONE OTHER ISSUE, WHICH IS SOMETHING THAT MR. LEACH

09:00AM 12    TOUCHED UPON, WHICH, AGAIN, I BELIEVE CAME OUT IN INTERVIEWS

09:00AM 13    LAST NIGHT.

09:00AM 14        THERE'S SOME INDICATION THAT THE GOVERNMENT WANTS TO

09:00AM 15    SUGGEST THAT AN OWNER OR OPERATOR WHO AIDED AND ABETTED IN THE

09:00AM 16    VIOLATION OF CLIA OR A CLIA REGULATION CAN BE LIABLE.  THAT'S

09:00AM 17    THE PROVISION THAT I MENTIONED BY MISTAKE JUST A SECOND AGO,

09:00AM 18    WHICH IS 493.1840(A)(6).

09:00AM 19        THAT IS NOT THE PROVISION.  THE PROVISION FOR AIDING AND

09:00AM 20    ABETTING THE VIOLATION IS NOT THE PROVISION THAT WAS INVOKED IN

09:01AM 21    THE IMPOSITION OF PENALTIES IN THIS CASE.

09:01AM 22        THERE WAS A REVOCATION OF THE LICENSE IN THIS CASE.  THERE

09:01AM 23    WAS NO FINDING THAT MS. HOLMES AIDED AND ABETTED AS AN OWNER IN

09:01AM 24    THIS, AND I, I -- THAT WOULD BE AN EXTREMELY PREJUDICIAL

09:01AM 25    STATEMENT TO INJECT IN THIS CASE, AND I BELIEVE AN ERRONEOUS

5700

09:01AM 1    ONE BASED UPON CMS.  IT JUST CAME UP FOR THE FIRST TIME LAST

09:01AM 2    NIGHT SO I WANTED --

09:01AM 3             THE COURT:  THIS RELATES TO THE 3217, I THINK,

09:01AM 4    DOESN'T IT?

09:01AM 5             MR. WADE:  IT MAY, YES, YOUR HONOR.

09:01AM 6             THE COURT:  AND THAT'S THE -- THAT IS THE DOCUMENT

09:01AM 7    THAT IS THE PENALTY DOCUMENT, IT'S THE JULY 7, 2016, IMPOSITION

09:01AM 8    OF SANCTIONS?

09:01AM 9             MR. WADE:  CORRECT.

09:01AM 10            THE COURT:  AND I THINK WE'RE GOING TO HAVE A

09:01AM 11   SEPARATE CONVERSATION ABOUT THAT.

09:01AM 12        AND YOUR ARGUMENT ON THAT, I THINK, IS 403?  THAT'S WHAT

09:01AM 13   YOU TOLD ME PREVIOUSLY, I THINK.

09:01AM 14            MR. WADE:  YEAH, CERTAINLY WITH RESPECT TO SOME OF

09:02AM 15   THE ULTIMATE CONCLUSIONS WITHIN THAT, WITHIN THAT DOCUMENT,

09:02AM 16   YES.

09:02AM 17            THE COURT:  SURE.  SURE.

09:02AM 18            MR. WADE:  AND IT RELATES TO IT, BUT IT'S SLIGHTLY

09:02AM 19   DIFFERENT.

09:02AM 20        EVEN THERE THE PROPOSED REVOCATION, WHICH ULTIMATELY WAS

09:02AM 21   NOT OF MY CLIENT'S ABILITY TO OPERATE A CLIA LAB, WAS NOT BASED

09:02AM 22   UPON THE PROVISION OF AIDING AND ABETTING A CLIA VIOLATION.

09:02AM 23   THERE'S NO EVIDENCE OF THAT IN THE RECORD.

09:02AM 24        THE GOVERNMENT APPEARS TO HAVE FOUND THAT REGULATION AND

09:02AM 25   PUT IT IN FRONT OF A COUPLE OF WITNESSES RECENTLY, AND I FEAR

**ER-396**

09:02AM 1      THAT THEY'RE GOING TO TRY TO OBTAIN TESTIMONY IN CONNECTION

09:02AM 2      WITH THAT WHEN THAT WAS NOT -- THAT IS NOT IN THIS RECORD, AND

09:02AM 3      OBVIOUSLY IT WOULD BE EXTREMELY PREJUDICIAL, AND IT WOULD

09:02AM 4      CLEARLY BE AN EXPERT OPINION IF, IF -- GIVEN THAT DOCTOR --

09:02AM 5      THIS WAS NOWHERE IN DR. DAS'S SPHERE OF INFLUENCE.

09:02AM 6           SO I WANTED TO RAISE -- THAT'S AN IMPORTANT ISSUE FOR THE

09:02AM 7      DEFENSE AND A NEW ISSUE, AND I WANTED TO RAISE THAT AS WELL.

09:02AM 8                THE COURT:  OKAY.

09:03AM 9                MR. LEACH:  IF I COULD RESPOND BRIEFLY, YOUR HONOR,

09:03AM 10     BECAUSE I THINK THERE ARE TWO VERY DIFFERENT ISSUES, AND I

09:03AM 11     THINK ON THAT SECOND ISSUE I MIGHT BE ABLE TO CLEAR UP SOME OF

09:03AM 12     THE DEFENSE'S CONCERN.

09:03AM 13          WITH RESPECT TO THE VOIDING, DR. DAS IS THE AUTHORITY ON

09:03AM 14     THIS.  HE WAS THE LAB DIRECTOR AT THE TIME.  AND 407 APPLIES TO

09:03AM 15     VOLUNTARY MEASURES WHERE A COMPANY ON ITS OWN IN A MATTER OF

09:03AM 16     BEING CONSERVATIVE DECIDES TO DO SOMETHING.

09:03AM 17          HERE UNDER SERIOUS THREAT OF REGULATORY PRESSURE FROM CMS,

09:03AM 18     DR. DAS CONCLUDED THAT THERE WERE ERRORS IN THE TESTS.  ONCE HE

09:03AM 19     CONCLUDED THAT, AND I NOW HAVE THE RIGHT CITE, 493.1291,

09:03AM 20     REQUIRED HIM TO CORRECT THOSE REPORTS AND NOTIFY THE PATIENTS.

09:03AM 21          THE FACT THAT I CAN'T CORRECT THE REPORT TO SAY A VALUE IS

09:03AM 22     Y INSTEAD OF X AND INSTEAD WHOLESALE VOIDS IT IS NEITHER HERE

09:03AM 23     NOR THERE.

09:04AM 24          HE WILL NOT SAY THIS WAS OUT OF AN ABUNDANCE OF CAUTION.

09:04AM 25     HE WILL SAY I -- MY RESPONSIBILITIES AS THE CLIA LAB DIRECTOR

5702

```
09:04AM   1    CAUSED ME TO INVESTIGATE THESE, I FOUND THESE ERRORS, I WAS
09:04AM   2    REQUIRED TO VOID THEM.
09:04AM   3         HE'S NOT GOING TO SAY THIS WAS OUT OF AN ABUNDANCE OF
09:04AM   4    CAUTION.
09:04AM   5         407 APPLIES TO MEASURES, NOT THE INTERNAL ANALYSIS.  I
09:04AM   6    THINK I'VE TOUCHED ON THAT POINT.
09:04AM   7         SO I REALLY THINK THERE'S NO 407 ISSUE AND THIS REALLY
09:04AM   8    TIES TO HER STATE OF MIND.
09:04AM   9         WITH RESPECT TO THE SECOND ISSUE, WE HAVE IN EVIDENCE
09:04AM  10    7603, A HUNDRED PAGES OF CLIA REGULATIONS, AND THE DEFENSE HAS
09:04AM  11    USED THESE CLIA REGULATIONS WITH THE LAB DIRECTOR TO SUGGEST
09:04AM  12    THAT THE BUCK STOPS WITH THE LAB DIRECTOR AND NOBODY ELSE.
09:04AM  13    THIS IS YOUR RESPONSIBILITY AND NOBODY ELSE'S, NOTHING BAD
09:04AM  14    COULD EVER HAPPEN TO THE OWNER OR OPERATOR OF A LAB.
09:05AM  15         ALL WE'VE DONE WITH THE WITNESSES, INCLUDING DR. DAS'S
09:05AM  16    INTERVIEWS AND MS. BENNETT IN INTERVIEWS, IS GO THROUGH THE
09:05AM  17    SAME EXHIBIT THAT IS ALREADY IN EVIDENCE AND NOTE THAT THERE
09:05AM  18    ARE PROVISIONS WHERE OWNERS AND OPERATORS CAN FACE
09:05AM  19    CONSEQUENCES, AND NOTHING MORE.  AND IT'S ESSENTIALLY TO REBUT
09:05AM  20    THE SUGGESTION THAT THE ONLY PERSON WITH RESPONSIBILITY HERE,
09:05AM  21    OR POTENTIAL RESPONSIBILITY, IS THE LAB DIRECTOR.
09:05AM  22         WE HAVE NEVER ASKED THESE WITNESSES, DID ELIZABETH HOLMES
09:05AM  23    AID AND ABET A VIOLATION OF THE CLIA REGULATIONS?  IT IS NOT
09:05AM  24    OUR INTENTION TO ASK THAT.
09:05AM  25         BUT THE GOVERNMENT DOES WANT TO REBUT THE FALSE SUGGESTION
```

| | | |
|---|---|---|
| 09:05AM | 1 | THAT OWNERS AND OPERATORS OF LABORATORIES HAVE, YOU KNOW, |
| 09:05AM | 2 | NOTHING TO FEAR FROM A CLIA INSPECTION OR HAVE NO POSSIBLE |
| 09:05AM | 3 | EXPOSURE AT THE END OF THE DAY BECAUSE I THINK THE DEFENSE HAS |
| 09:05AM | 4 | CREATED A PICTURE THAT IT'S THE LAB DIRECTOR AND NOBODY ELSE, |
| 09:05AM | 5 | AND UNDER THE EVIDENCE THAT THEY HAVE SUBMITTED THAT'S JUST NOT |
| 09:05AM | 6 | THE CASE. |
| 09:05AM | 7 | THE COURT: THERE HAS BEEN TESTIMONY. |
| 09:06AM | 8 | DR. ROSENDORFF WAS ON THE STAND FOR A LENGTHY PERIOD OF TIME. |
| 09:06AM | 9 | AND I THINK THE CROSS-EXAMINATION AT LEAST FOCUSSED A |
| 09:06AM | 10 | SIGNIFICANT DEAL ON, AS MR. LEACH JUST SAID, YOU WERE |
| 09:06AM | 11 | RESPONSIBLE, YOU WERE ULTIMATELY RESPONSIBLE. |
| 09:06AM | 12 | YOU WENT THROUGH THE REGULATIONS WITH HIM, MR. WADE, AND |
| 09:06AM | 13 | OTHERS, I THINK MAYBE DHAWAN AS WELL, PARDON ME, DR. DHAWAN. |
| 09:06AM | 14 | SO IT SEEMS LIKE IT'S RELEVANT FOR SOME ISSUE AS TO THAT, JUST |
| 09:06AM | 15 | AS A, NOT NECESSARILY REBUTTAL, BUT JUST TO PRESENT ANOTHER |
| 09:06AM | 16 | POSSIBILITY TO THE JURY. |
| 09:06AM | 17 | MR. WADE: JUST SO WE'RE CLEAR, I DON'T ACTUALLY |
| 09:06AM | 18 | THINK -- I DON'T THINK THAT WE WERE MISREPRESENTING ANYTHING. |
| 09:06AM | 19 | ULTIMATELY -- |
| 09:06AM | 20 | THE COURT: NO, NO, I DIDN'T SAY THAT. |
| 09:06AM | 21 | MR. WADE: NO, I KNOW THE COURT WASN'T, BUT COUNSEL |
| 09:06AM | 22 | WAS. SO I JUST WANT TO MAKE SURE THAT THE RECORD IS CLEAR AND |
| 09:06AM | 23 | WHY THIS SPECIFIC PROVISION OF AIDING AND ABETTING A VIOLATION, |
| 09:07AM | 24 | WHICH IS THE SPECIFIC SUB PROVISION THAT THE GOVERNMENT POINTED |
| 09:07AM | 25 | THE WITNESS TO, IS NOT APPROPRIATE HERE. |

5704

```
09:07AM   1              THE COURT:  IS THAT PART OF THE -- IS THIS
09:07AM   2    REGULATION PART OF THE EVIDENCE THAT YOU -- THAT WAS SUBMITTED
09:07AM   3    THAT IS ADMITTED IN THE CASE?
09:07AM   4              MR. LEACH:  YES.
09:07AM   5              MR. WADE:  IT IS PART OF 7603.
09:07AM   6              THE COURT:  RIGHT.  WELL, IF IT IS IN EVIDENCE,
09:07AM   7    CAN'T HE CALL ATTENTION TO IT NOW AND SAY WHAT DID THIS SAY?
09:07AM   8    IT SEEMS LIKE IT'S FAIR GAME NOW IF IT'S IN EVIDENCE.
09:07AM   9              MR. WADE:  WELL, YOUR HONOR, HE CAN CALL ATTENTION
09:07AM  10    TO IT, BUT CREATING THE IMPRESSION IN FRONT OF THIS JURY,
09:07AM  11    AGAIN, WITH ALL OF THIS CONFUSION AROUND WHAT IS ALL OF THIS
09:07AM  12    CMS STUFF AND WHAT DOES IT MEAN AND IT'S A CIVIL VIOLATION.
09:07AM  13              THE COURT:  RIGHT.
09:07AM  14              MR. WADE:  AND THE CONCERNS ABOUT WHETHER SOMEONE
09:07AM  15    CAN BE CONVICTED AS A RESULT OF THIS.  THE PROVISION THAT
09:07AM  16    THEY'RE POINTING TO HAS NOTHING TO DO WITH THIS CASE.  THERE
09:07AM  17    WAS NO FINDING, ET CETERA.
09:07AM  18         ALL OF THE PROVISIONS THAT I HAVE POINTED WITNESSES TO
09:07AM  19    WERE THE GUIDING REGULATIONS THAT THEY ADMITTED, EACH AND EVERY
09:08AM  20    ONE OF THEM ARE WHAT FRAMED THEIR OBLIGATIONS FOR ACTING WITHIN
09:08AM  21    THE LABORATORY.
09:08AM  22         I'VE NEVER SUGGESTED THAT THERE'S NO POSSIBILITY OF
09:08AM  23    PENALTIES TO AN OWNER OF THE LAB.  WE'VE NEVER SUGGESTED THAT.
09:08AM  24    THERE IS.  THEY CAN HAVE THEIR STATUS.  IF YOU OWN MORE THAN
09:08AM  25    5 PERCENT, THEY CAN HAVE THE STATUS REVOKED.
```

09:08AM   1      THAT DOES NOT MEAN THAT THEY HAVE AN AFFIRMATIVE

09:08AM   2  OBLIGATION TO STEP IN AND OVERRULE A LAB DIRECTOR.

09:08AM   3      IN FACT, THE GOVERNMENT HAS ARGUED THE OPPOSITE.  IF THE

09:08AM   4  OWNER WERE TO STEP IN, AND ISN'T QUALIFIED, AND OVERRULES THE

09:08AM   5  LAB DIRECTOR, THAT WOULD BE A DIFFERENT KIND OF PROBLEM.

09:08AM   6      SO TO CREATE THE IMPRESSION THAT THERE IS SOME VIOLATION

09:08AM   7  FOR AIDING AND ABETTING HERE WHEN THERE IS NO SUGGESTION OF

09:08AM   8  THAT AT ALL IN THIS RECORD IS INCREDIBLY PREJUDICIAL.

09:08AM   9      THE COURT:  WELL, I UNDERSTAND THAT, BUT I DO THINK

09:08AM  10  THAT THERE MIGHT BE SOME BALANCE HERE.  THE CROSS-EXAMINATION,

09:08AM  11  THE VIGOROUS CROSS-EXAMINATION THAT YOU ENGAGED IN WITH THE TWO

09:08AM  12  PRIOR LAB DIRECTORS WERE VERY FOCUSSED ON INDICATING YOU, YOU,

09:08AM  13  YOU, YOU, YOU'RE RESPONSIBLE, YOU'RE RESPONSIBLE, ULTIMATELY

09:09AM  14  YOU'RE RESPONSIBLE.

09:09AM  15      YOU HAD -- DR. ROSENDORFF SAID THAT SEVERAL TIMES IN YOUR

09:09AM  16  CROSS-EXAMINATION AND AS DID DR. DHAWAN.  MAYBE IT DOESN'T HAVE

09:09AM  17  TO COME IN AS YOU SUGGEST AS MR. LEACH WON'T BE PERMITTED TO

09:09AM  18  SAY, WELL, SHE'S POTENTIALLY LIABLE AS A COCONSPIRATOR, OR

09:09AM  19  WHATEVER UNDER THAT, I CAPTURE THAT.

09:09AM  20      BUT IT SEEMS LIKE THERE SHOULD BE SOME BALANCING ABOUT

09:09AM  21  THAT ONE POINTING OUT THAT YOU ULTIMATELY WERE RESPONSIBLE.

09:09AM  22      WELL, THE CODE ALLOWS FOR RESPONSIBILITY OF THE OWNER, OR

09:09AM  23  SOMEBODY ELSE, BUT THAT'S NOT AN ISSUE IN THE CASE.  BUT JUST

09:09AM  24  TO SOFTEN THE BLOW, I SUPPOSE, OF WHAT YOU'VE SAID, IT SEEMS

09:09AM  25  LIKE THERE'S A BALANCE THAT CAN BE REACHED IN THAT.

5706

09:09AM   1          MR. WADE:  WE'LL SEE WHAT THE GOVERNMENT SUGGESTS.

09:09AM   2       TO THE EXTENT THAT THEY TRY TO CREATE SOME IMPLICATION

09:09AM   3   THAT IT IS A FALSE ONE, THAT OUR CLIENT AIDED AND ABETTED A

09:10AM   4   CLIA VIOLATION, THAT WOULD BE EXTRAORDINARILY PREJUDICIAL.

09:10AM   5          THE COURT:  RIGHT.  WELL, I DON'T THINK MR. LEACH IS

09:10AM   6   GOING TO DO THAT.  I DON'T THINK HE'S GOING TO SAY THAT SHE'S

09:10AM   7   ALSO AIDING AND ABETTING.

09:10AM   8       THAT'S NOT PART OF THE CASE, IS IT, MR. LEACH?

09:10AM   9          MR. LEACH:  IT IS NOT, YOUR HONOR, BUT THE

09:10AM  10   POSSIBILITY OF THE SANCTIONS FOR AN OWNER AND OPERATOR OF THE

09:10AM  11   LAB DIRECTOR ARE IN EVIDENCE HERE AND IT NEGATES, ON SOME

09:10AM  12   LEVEL, THAT THE BUCK STOPS WITH THE LAB DIRECTOR.

09:10AM  13       BUT I WILL NOT IN ANY WAY SUGGEST THAT MS. HOLMES AIDED

09:10AM  14   AND ABETTED A VIOLATION.

09:10AM  15          THE COURT:  RIGHT.

09:10AM  16          MR. WADE:  YOUR HONOR, IF I MIGHT PASS UP THE

09:10AM  17   GOVERNMENT'S SUBMISSION WITH RESPECT TO DR. DAS ON THIS VOIDING

09:10AM  18   ISSUE DID NOT INCLUDE AN MOI FROM LAST FRIDAY.  IF I MIGHT PASS

09:10AM  19   THAT UP.

09:10AM  20          THE COURT:  SURE.

09:10AM  21          MR. WADE:  (HANDING.)

09:10AM  22       JUST SO THAT THE COURT HAS IT, BECAUSE THERE HAVE BEEN

09:10AM  23   REPRESENTATIONS IN THE PLEADINGS AND BY COUNSEL.  IF THE COURT

09:11AM  24   TURNS TO PAGE 3 OF THIS, AND THE SECOND PARAGRAPH ON PAGE 3

09:11AM  25   NOTES, "THE DECISION TO VOID CERTAIN TESTS WAS MADE SOME TIME

09:11AM 1    IN MARCH 2016.  DAS INITIALLY SAID THAT HIS DECISION TO VOID

09:11AM 2    THE TEST WAS VOLUNTARY, BUT CLARIFIED THAT IT WOULD HAVE BEEN

09:11AM 3    INCORRECT NOT TO DO SO.  BASED ON HIS REVIEW OF DATA, IT WAS

09:11AM 4    NECESSARY TO VOID THE TEST."

09:11AM 5        AGAIN, THIS DOESN'T GO TO -- THIS GOES TO A MATTER OF

09:11AM 6    DISCRETION.  THERE'S SOME AMBIGUITY THERE, AND THIS

09:11AM 7    DEMONSTRATES IT, AND THIS IS WHY WE SUGGESTED VOIR DIRING THE

09:11AM 8    WITNESS OUTSIDE THE JURY JUST TO CLARIFY BECAUSE I DON'T THINK

09:11AM 9    IT'S QUITE AS CLEAR AS THE GOVERNMENT IS SUGGESTING WITH

09:11AM 10   RESPECT.

09:11AM 11       THE COURT:  AND YOU THINK VOIR DIRE ON THIS

09:11AM 12   PARTICULAR ISSUE AS TO WHETHER OR NOT THIS WITNESS FELT IT WAS

09:11AM 13   VOLUNTARY OR HE HAD AN OBLIGATION, IS THAT WHAT YOU WANT TO

09:11AM 14   CLEAR UP?

09:11AM 15       MR. WADE:  YEAH.  WAS THERE A LEGAL OBLIGATION OR

09:11AM 16   WAS IT A VOLUNTARY DISCRETIONARY ACT THAT HE TOOK TO BE

09:11AM 17   CONSERVATIVE IN AN ABUNDANCE OF CAUTION?

09:12AM 18       THE COURT:  WOULD THAT BE A FOUNDATIONAL QUESTION

09:12AM 19   THAT MR. LEACH COULD ASK HIM BEFORE THE TESTIMONY?

09:12AM 20       MR. WADE:  I SUPPOSE.

09:12AM 21       THE COURT:  MR. LEACH?

09:12AM 22       MR. LEACH:  THAT'S AN APPROPRIATE APPROACH.  I DON'T

09:12AM 23   THINK WE'RE REQUIRED TO DO THAT, BUT WE'RE HAPPY TO DO THAT.

09:12AM 24       AND I WOULD POINT THE COURT TO THE ENTIRETY OF THE

09:12AM 25   PARAGRAPH FROM THE MOI --

5708

```
09:12AM   1                    THE COURT:  INVOKING 106, MR. WADE.

09:12AM   2                    MR. WADE:  RULE OF COMPLETENESS.

09:12AM   3                    THE COURT:  YES.

09:12AM   4                    MR. LEACH:  I THINK A FAIR UNDERSTANDING OF WHAT

09:12AM   5      DR. DAS WAS SAYING HERE IS THAT WHEN I'M -- AS THE LAB

09:12AM   6      DIRECTOR, I'M COMPELLED TO LOOK AT ISSUES, AND WHEN I'M LOOKING

09:12AM   7      AT ISSUES I COULD GO EITHER WAY.  BUT ONCE I FIND THE ERROR, I

09:12AM   8      MUST VOID.  THAT'S THE TENOR OF WHAT THE COURT WILL HEAR.

09:12AM   9                    THE COURT:  OKAY.  I APPRECIATE ONE AVENUE TO

09:12AM  10      RESOLVE THIS IS A VOIR DIRE OF THE WITNESS, BUT IT SEEMS LIKE

09:12AM  11      IT'S A FOUNDATIONAL QUESTION ALSO THAT AT LEAST YOU PUT

09:13AM  12      MR. LEACH ON NOTICE AND YOU PUT ME ON NOTICE ABOUT, AND THAT

09:13AM  13      MIGHT BE THE MOST EFFICIENT WAY TO GO.

09:13AM  14                    MR. WADE:  I THINK WE STILL HAVE, YOUR HONOR, THE

09:13AM  15      PARTICULAR ASPECTS OF THE CMS REPORT.

09:13AM  16                    THE COURT:  RIGHT.  I KNOW MR. LOOBY HAS BEEN

09:13AM  17      SCRATCHING HIS FEET BACK THERE AND HE WANTS TO GET UP HERE.

09:13AM  18                    MR. WADE:  AND THE REDACTIONS OF THOSE LATER

09:13AM  19      EXHIBITS.

09:13AM  20                    THE COURT:  YES.  WELL, THAT'S THE QUESTION THAT I

09:13AM  21      HAVE ABOUT THESE REDACTIONS.

09:13AM  22                 MR. LOOBY, GOOD MORNING.

09:13AM  23                    MR. LOOBY:  GOOD MORNING.  THANK YOU, YOUR HONOR.

09:13AM  24                 SO YOUR HONOR WILL RECALL THAT THE COURT'S ORDER AT

09:13AM  25      DOCKET 989 ON THE DEFENSE'S PRETRIAL MOTIONS ORDERED THE
```

5709

09:13AM  1    GOVERNMENT TO PROVIDE BOTH THE DEFENSE AND THE COURT WITH

09:13AM  2    ADVANCE NOTICE OF THE PORTIONS OF THE CMS REPORT THAT IT

09:13AM  3    INTENDED TO OFFER.

09:13AM  4            THE COURT:  IT DID THAT IN 1133.

09:14AM  5            MR. LOOBY:  YES.  AND I SUPPOSE WE GOT OUR NOTICE

09:14AM  6    LAST THURSDAY AT THE END OF COURT THAT THE ANSWER IS ALL OF IT,

09:14AM  7    TWO MONTHS LATER, AND THAT WAS KIND OF THE SUM AND SUBSTANCE OF

09:14AM  8    THE NOTICE.

09:14AM  9        AND THEN -- SO WHERE DOES THAT LEAVE US?

09:14AM  10       WE HAD PROPOSED REDACTIONS ON MULTIPLE GROUNDS, AND TWO OF

09:14AM  11   THEM, I THINK, REMAIN PARTICULARLY IMPORTANT TODAY, AND ONE OF

09:14AM  12   THEM IS RELATED TO THE TESTS NOT IN THE INDICTMENT AND BILL OF

09:14AM  13   PARTICULARS, AND THEN THE SECOND CATEGORY -- AND THAT'S

09:14AM  14   REDACTION CATEGORY A IN OUR PROPOSED REDACTIONS.

09:14AM  15       AND THAT PROPOSED REDACTIONS ARE AT 898-6, AND THE

09:14AM  16   PROPOSED REDACTIONS FOR DOUBLE HEARSAY WHICH IS CATEGORY B AT

09:14AM  17   THAT SAME DOCKET ENTRY.

09:14AM  18       SO THE GOVERNMENT, UNDER THE COURT'S PRETRIAL MOTION IN

09:14AM  19   LIMINE ORDER, HAS TO OFFER A PURPOSE OTHER THAN ACCURACY AND

09:15AM  20   RELIABILITY FOR EVIDENCE PERTAINING EXCLUSIVELY TO TESTS NOT AT

09:15AM  21   ISSUE IN THE INDICTMENT AND BILL OF PARTICULARS.

09:15AM  22       SEVERAL OF THE CMS REPORT CITATIONS FALL DIRECTLY INTO

09:15AM  23   THAT CATEGORY.

09:15AM  24       TO DATE, I MEAN, I MINED THE PLEADINGS AND THE ARGUMENTS

09:15AM  25   AND TRANSCRIPTS, AND I HAVE NOT HEARD A NONACCURACY AND

5710

09:15AM 1    RELIABILITY RELATED ISSUE UNTIL TODAY WHEN I HEARD THAT IT'S

09:15AM 2    RELEVANT TO STATE OF MIND WHICH KIND OF IS NEW BECAUSE

09:15AM 3    PREVIOUSLY IT WAS TO BE ADMITTED FOR THE TRUTH AND RELATED TO

09:15AM 4    ACCURACY AND RELIABILITY.

09:15AM 5         BUT MY QUESTION WOULD BE STATE OF MIND AS TO WHAT.  IF A

09:15AM 6    CITATION IN A CMS REPORT RELATES TO SAY A PROFICIENCY TESTING

09:15AM 7    ISSUE ON AN ASSAY ON AN FDA APPROVED DEVICE THAT IS NOT

09:15AM 8    INVOLVED IN THE CASE, WHETHER OR NOT MS. HOLMES BECAME AWARE OF

09:15AM 9    THAT IN JANUARY 2016 WHEN THE REPORT WAS ISSUED, I DON'T SEE

09:16AM 10   HOW THAT BEARS ON HER STATE OF MIND AS IS RELEVANT TO THE CASE.

09:16AM 11        TO ME THIS IS -- THERE'S PULLED PORTIONS OF THIS REPORT

09:16AM 12   THAT ARE IRRELEVANT UNDER THE COURT'S ORDER, AND WE NEED TO

09:16AM 13   SQUARE THE ORDER ON THE BILL OF PARTICULARS AND THE ORDER

09:16AM 14   ADMITTING THE CMS REPORT.  THAT'S WHAT OUR PROPOSED REDACTIONS

09:16AM 15   IN AUGUST WERE MEANT TO DO.  WE HOPED IT WOULD START A DIALOGUE

09:16AM 16   OVER WHICH PORTIONS THE GOVERNMENT INTENDED TO OFFER.  IT

09:16AM 17   SOUNDS LIKE TODAY THEY HAVE A FEW PAGES PICKED OUT, AND THIS IS

09:16AM 18   THE FIRST THAT WE'RE HEARING ABOUT THAT.

09:16AM 19             THE COURT:  THESE ARE THE PAGES MR. LEACH IDENTIFIED

09:16AM 20   EARLIER YOU'RE REFERRING TO?

09:16AM 21        IS THAT RIGHT, MR. LOOBY?

09:16AM 22             MR. LOOBY:  YEAH.  AND I HEARD 45 TO 58.  I HAVE NOT

09:16AM 23   HAD A CHANCE TO REVIEW THOSE IN PARTICULAR.

09:16AM 24             THE COURT:  RIGHT.

09:16AM 25             MR. LOOBY:  BUT, OF COURSE, THE CMS REPORT IS

5711

09:16AM  1    128 PAGES LONG.

09:16AM  2              THE COURT:  WELL, HE'S DONE YOU A FAVOR.  HE'S

09:16AM  3    REALLY CUT IT DOWN SIGNIFICANTLY.

09:16AM  4              MR. LOOBY:  YES.  I MEAN, I WILL BE INTERESTED TO

09:17AM  5    SEE WHAT THOSE ARE, AND, YOU KNOW, WHETHER OR NOT -- BUT ALSO,

09:17AM  6    MR. LEACH SAID THAT THEY BELIEVED THAT THE ENTIRE REPORT SHOULD

09:17AM  7    COME INTO EVIDENCE.  AND WE, OF COURSE, OBJECT TO THAT FOR THE

09:17AM  8    REASONS THAT WE'VE PREVIOUSLY STATED.

09:17AM  9              THE COURT:  SURE.  SO LET ME SAY -- IT'S A QUARTER

09:17AM  10   AFTER, AND WE'VE ASKED OUR JURY TO COME IN AT 9:30.  AND LET ME

09:17AM  11   JUST SAY, I'M GOING TO BE VERY MINDFUL OF TIMING BECAUSE I'D

09:17AM  12   LIKE TO KEEP US ALL ON TRACK HERE, AND WE'RE DOING A GOOD JOB

09:17AM  13   OF THAT.

09:17AM  14       I DO -- I HOPE WE CAN START AT 9:30, AND I THINK I SHOULD

09:17AM  15   GIVE YOU TIME TO REVIEW 45 THROUGH 58 TO SEE.

09:17AM  16       IT'S UNLIKELY THAT WE'LL GET TO THAT THIS MORNING,

09:17AM  17   MR. LEACH?  IS THAT FAIR?

09:17AM  18              MR. LEACH:  I'M NOT SURE HOW MUCH MR. WADE HAS WITH

09:17AM  19   DR. SAWYER.

09:17AM  20              THE COURT:  I THINK HE TOLD US ABOUT AN HOUR.

09:17AM  21              MR. LEACH:  I THINK AT SOME POINT AFTER OUR FIRST

09:17AM  22   BREAK IT WILL EMERGE.

09:17AM  23              THE COURT:  RIGHT.  SO WE MAY HAVE TO -- I DO WANT

09:17AM  24   TO GIVE YOU AN OPPORTUNITY TO REVIEW WHAT MR. LEACH HAS

09:17AM  25   SUGGESTED, AND MAYBE THAT WILL CULL SOME OF YOUR CONCERNS.

5712

09:18AM   1          MR. LOOBY:  WELL, YOUR HONOR, I BELIEVE IT'S THE

09:18AM   2    GOVERNMENT'S INTENTION STILL TO ADMIT THE ENTIRETY OF THE

09:18AM   3    REPORT.  WHAT I HEARD IS THAT THEY WANTED TO ADMIT THE ENTIRETY

09:18AM   4    OF THE REPORT AND ONLY PUBLISH CERTAIN PORTIONS WITH DR. DAS.

09:18AM   5          SO I THINK REGARDLESS OF WHAT THESE PORTIONS ARE, AND I

09:18AM   6    FOR SURE DO WANT TO REVIEW THEM, AND I APPRECIATE THE

09:18AM   7    OPPORTUNITY FROM THE COURT TO DO THAT.

09:18AM   8          I THINK REGARDLESS OF THAT, I THINK THE ISSUE OF THE

09:18AM   9    ADMISSIBILITY OF THE REPORT WHOLESALE IS STILL GOING TO BE AN

09:18AM  10    ISSUE AND SO WE CAN TAKE THAT UP, YOU KNOW, WHENEVER THE COURT

09:18AM  11    BELIEVES IT'S MOST EFFICIENT.

09:18AM  12          AND THEN THERE ARE OTHER -- THERE ARE TWO OTHER ISSUES

09:18AM  13    THAT I WAS HOPING TO ADDRESS WITH THE COURT THIS MORNING, AND

09:18AM  14    THEY RELATE TO GOVERNMENT EXHIBITS -- AND SO I'LL PREVIEW THEM

09:18AM  15    QUICKLY.

09:18AM  16          THE COURT:  SURE.

09:18AM  17          MR. LOOBY:  THEY RELATE TO GOVERNMENT EXHIBITS THAT

09:18AM  18    RELATED TO CMS.  THESE ARE IDENTIFIED IN MS. HOLMES'S NOTICE

09:18AM  19    FROM YESTERDAY AT 1134.

09:19AM  20          ONE OF THEM IS 5274, AND THAT IS A SEPTEMBER 26TH DRAFT

09:19AM  21    CMS DOCUMENT ATTACHED IN AN EMAIL FROM A THERANOS LAB DIRECTOR,

09:19AM  22    LISA HELFEND, TO DR. DAS.

09:19AM  23          SO WE HAVE OBJECTIONS TO THAT COMING INTO EVIDENCE.

09:19AM  24          AND THEN THE OTHER BUCKET OF EXHIBITS, AND THEY CAN BE

09:19AM  25    ADDRESSED TOGETHER, ARE ALSO FLAGGED IN OUR NOTICE FROM

09:19AM 1    YESTERDAY, AND THOSE ARE GOVERNMENT EXHIBITS 3144, 4943, 5257,

09:19AM 2    5260, 5471.

09:19AM 3         AND THESE COLLECTIVELY ARE THE DOWNSTREAM CORRESPONDENCE

09:19AM 4    BETWEEN THERANOS AND CMS RESPONDING TO THE JANUARY 2016 REPORT.

09:19AM 5    THESE DOCUMENTS HAVE SEVERAL ISSUES THAT ARE KIND OF -- THEY

09:19AM 6    SHARE IN COMMON WITH THE CMS REPORT BECAUSE THE CMS REPORT

09:19AM 7    ADDRESSES SO MANY TESTS NOT AT ISSUE AND LAB PRACTICES RELATING

09:20AM 8    TO TESTS NOT AT ISSUE, IT'S OUR POSITION THAT THE CMS REPORT

09:20AM 9    SHOULD BE REDACTED FOR THOSE REASONS, BUT ALSO THOSE REDACTIONS

09:20AM 10   SHOULD CARRY THROUGH TO THE PORTIONS OF THOSE LETTERS THAT

09:20AM 11   SPECIFICALLY ADDRESS THOSE SAME DEFICIENCIES.

09:20AM 12        SO EACH OF THE LETTERS KIND OF MARCHES THROUGH EACH

09:20AM 13   DEFICIENCY AND SAYS, YOU KNOW, THIS IS WHAT CMS SAID, THIS IS

09:20AM 14   THERANOS'S RESPONSE, THIS IS CMS'S RESPONSE.  SO IT IS LIKE A

09:20AM 15   SERIATIM BACK AND FORTH, AND SO THEY JUST KIND OF ADD ON TO

09:20AM 16   EACH OTHER.

09:20AM 17        AND THEN THEY ALSO POSE SOME RELEVANCE AND 403 ISSUES THAT

09:20AM 18   I THINK ARE UNIQUE TO THESE LATER LETTERS THAT AREN'T SHARED

09:20AM 19   WITH THE CMS REPORT AND AREN'T COVERED BY OUR PRIOR

09:20AM 20   CONVERSATIONS, ALTHOUGH THEY ARE RELATED TO OUR PRIOR

09:20AM 21   CONVERSATION ABOUT THE JULY 7TH LETTER THAT YOUR HONOR

09:20AM 22   MENTIONED AT 3217 WITH MR. LEACH AND MR. WADE, WHICH IS

09:20AM 23   ACTUALLY AN EXHIBIT THAT THE GOVERNMENT HAS NOT NOTICED AN

09:21AM 24   INTENT TO INTRODUCE THROUGH DR. DAS.

09:21AM 25        THE COURT:  3217?

09:21AM  1          MR. LOOBY:  YEAH.  BUT A LOT OF THE SAME ISSUES THAT

09:21AM  2    WE DISCUSSED WITH THAT ARE SHARED WITH THIS OTHER

09:21AM  3    CORRESPONDENCE WHICH IS, YOU KNOW, THIS ISN'T EVIDENCE OF CMS'S

09:21AM  4    FINDINGS NECESSARILY, IT'S AN ONGOING DIALOGUE ABOUT THE

09:21AM  5    ADEQUACY OF THERANOS'S RESPONSES.

09:21AM  6          I HAVEN'T HEARD A RELEVANCE THEORY THAT WOULD SWEEP THOSE

09:21AM  7    IN.  I DON'T KNOW PRECISELY WHY THAT IS RELEVANT.

09:21AM  8          BUT IT DOES POSE UNIQUE 403 CONCERNS BECAUSE OF SOME OF

09:21AM  9    THE LANGUAGE THAT WE REVIEWED TOGETHER IN REJECTING THERANOS'S

09:21AM  10   RESPONSES GOES TO WORDS LIKE CREDIBLE, YOU KNOW, WHICH IS THE

09:21AM  11   LINGO OF THE REGULATIONS, BUT HERE IN THE CONTEXT OF A CRIMINAL

09:21AM  12   CASE POSES SOME UNIQUE ISSUES.

09:21AM  13         AND THEN THERE ARE ALSO 702 ISSUES KIND OF WRAPPED UP IN

09:21AM  14   SOME OF THESE REPORTS.  AND IN PARTICULAR EXHIBIT 4943 ARE A

09:22AM  15   COMPILATION OF PATIENT IMPACT ASSESSMENTS THAT ARE COMPILED BY

09:22AM  16   THERANOS WITH DR. DAS'S INVOLVEMENT, AND THEY MARCH THROUGH ON

09:22AM  17   AN ASSAY-BY-ASSAY BASIS, YOU KNOW, HERE ARE SOME OF THE ISSUES

09:22AM  18   THAT WE SPOTTED, AND THEY GET PRETTY TECHNICAL PRETTY QUICK,

09:22AM  19   YOU KNOW, GOING THROUGH TRENDS IN QC DATA ON SPECIFIC DATES,

09:22AM  20   CALCULATIONS BASED OFF OF THAT, EXTRAPOLATIONS AND OPINIONS

09:22AM  21   ABOUT WHAT THAT DATA MEANS.

09:22AM  22         DR. DAS HAS NOT BEEN NOTICED AS AN EXPERT TO WALK THE JURY

09:22AM  23   THROUGH THOSE.  SEVERAL OF THOSE PATIENT IMPACT ASSESSMENTS

09:22AM  24   RELATES TO TESTS THAT ARE NOT AT ISSUE IN THE INDICTMENT SO

09:22AM  25   THEY HAVE THAT SAME FLAW AS, YOU KNOW, PORTIONS OF THE CMS

5715

09:22AM 1    REPORT.

09:22AM 2         SO THERE'S A LOT OF THORNY ISSUES, AND I KNOW YOUR HONOR

09:22AM 3    SAW WHEN YOU GOT THE PLEADINGS YESTERDAY, IT'S BIG DOCUMENTS

09:22AM 4    THAT THE GOVERNMENT IS PUTTING IN AND CUMULATIVELY THE

09:22AM 5    IMPRESSION THAT THESE GIVE, EVEN BEYOND THE PARTICULARS, WHICH

09:23AM 6    ARE PRETTY TECHNICAL AND PREJUDICIAL IN THEIR OWN, IS EVIDENCE

09:23AM 7    OF A LOT OF CIVIL KIND OF REGULATORY VIOLATIONS THAT ARE BEING

09:23AM 8    KIND OF PUSHED INTO THE CASE PERHAPS WITHOUT AN ADEQUATE

09:23AM 9    NARRATION OF WHAT IT ALL MEANS TO BE PUT IN FRONT OF THE JURY.

09:23AM 10        AND WE HAVE SERIOUS CONCERNS ABOUT THE UNFAIR PREJUDICE

09:23AM 11   FROM THEM.

09:23AM 12             THE COURT:  WELL, THANK YOU.

09:23AM 13        YOUR COLLEAGUE SUGGESTS A PROPOSED JURY INSTRUCTION THAT

09:23AM 14   BE READ CONTEMPORANEOUS WITH ANY OF THE CIVIL REGULATIONS THAT

09:23AM 15   COME IN, OR CERTAINLY HE'S GOING TO ASK.  I'M SURE YOUR TEAM IS

09:23AM 16   GOING TO ASK FOR A SIMILAR FINAL INSTRUCTION THAT TALKS ABOUT

09:23AM 17   THE JURY NOT BEING ABLE TO USE ANY CIVIL VIOLATIONS OR

09:23AM 18   REGULATIONS AT ALL IN THEIR DELIBERATION AS TO WHETHER OR NOT

09:23AM 19   YOUR CLIENT HAS VIOLATED ANY CRIMINAL STATUTE, AND I THINK IT

09:23AM 20   PROBABLY WOULD BE APPROPRIATE TO INCLUDE SOME TYPE OF

09:24AM 21   INSTRUCTION IN THE FINAL INSTRUCTIONS TO THAT, TO THAT EXTENT

09:24AM 22   JUST FOR PROPHYLACTIC MEASURES.

09:24AM 23        MR. LEACH, DID YOU WANT TO COMMENT?

09:24AM 24             MR. LEACH:  I HAVEN'T HAD A CHANCE TO FULSOMELY

09:24AM 25   REVIEW THE DEFENSE'S PROPOSED INSTRUCTION, BUT I CAN SAY NOW I

09:24AM  1    DON'T THINK IT SHOULD BE GIVEN IN THE MOMENT, AND THE COURT

09:24AM  2    SHOULD HEAR FULSOME BRIEFING FROM THE PARTIES ABOUT THE

09:24AM  3    PROPRIETARY OF THAT AT THE END OF THE DAY.

09:24AM  4        WITH RESPECT TO THE CMS REPORT, I DON'T MEAN TO ADD TO

09:24AM  5    MR. LOOBY'S BURDEN, BUT I OVERLOOKED ONE ADDITIONAL PAGE OF THE

09:24AM  6    REPORT, WHICH IS PAGE 7 THROUGH 8, AND THESE ARE THE TRIAL

09:24AM  7    EXHIBIT PAGES, BUT THOSE ARE THE ONLY PAGES I INTEND TO DISPLAY

09:24AM  8    WITH DR. DAS.

09:24AM  9        I THINK THE DEFENSE WANTS -- YOU KNOW, THE DEFENSE

09:24AM  10   PROFFERED DOCUMENTS FROM THE MARCH TIME PERIOD WITH GLOWING

09:25AM  11   REVIEWS ABOUT THE TECHNOLOGY AT A HIGH LEVEL, THE NANOTAINER

09:25AM  12   WORKS, WE CAN TEST SMALL SAMPLES RELIABLY.  THESE ARE AT 7653

09:25AM  13   AND 10512.

09:25AM  14       AND IT CAN'T BE A RESPONSE THAT YOU CAN SHOW THE

09:25AM  15   DEFENDANT'S STATE OF MIND WITH THESE PITHY GLOWING REVIEWS BUT

09:25AM  16   NOT THE GRANULAR DETAIL OF WHAT SHE'S GETTING FROM THE CLIA

09:25AM  17   LAB.

09:25AM  18       IT GOES TO HOW SERIOUSLY SHE TOOK THESE ISSUES, IT GOES TO

09:25AM  19   HER CONTROL OF THE LAB, IT GOES TO WHETHER SHE LEAPT INTO

09:25AM  20   ACTION.  AND, YES, SEVERAL OF THEM ARE TECHNICAL AND OF A

09:25AM  21   VARIETY THAT REQUIRES SOME EXPLANATION FROM THE WITNESS, BUT

09:25AM  22   THEY WANT TO PRESENT IT AT A HIGH LEVEL AND AVOID ANY

09:25AM  23   GRANULARITY ON THE ARGUMENT THAT THE GRANULARITY SOMEHOW

09:25AM  24   PREJUDICES THEM.

09:25AM  25       SO THE WHOLE THING IS RELEVANT TO HER SPEED.  IF DOCUMENTS

5717

09:25AM  1    GOING TO HER IN MARCH OF 2016 ARE RELEVANT TO HER STATE OF

09:25AM  2    MIND, THIS DOCUMENT IS RELEVANT TO HER STATE OF MIND.

09:25AM  3        WITH RESPECT TO -- I DO INTEND TO STICK TO ASSAYS THAT ARE

09:26AM  4    IN THE BILL OF PARTICULARS.  WE'VE NOTICED, YOU KNOW, FOR THE

09:26AM  5    POSSIBILITY OF REFRESHING OR IF THE DEFENSE GOES THERE, CERTAIN

09:26AM  6    EXHIBITS.  SO I DON'T INTEND TO PUT IN ALL OF THE LETTERS BACK

09:26AM  7    AND FORTH BETWEEN CMS AND THERANOS, BUT I WOULD SAY THESE

09:26AM  8    AREN'T EXPERT OPINIONS.  THESE ARE STATEMENTS BY THERANOS

09:26AM  9    AUTHORIZED BY MS. HOLMES TO TRY TO EXPLAIN WHAT HAPPENED.

09:26AM 10    THEY'RE CLEARLY RELEVANT.

09:26AM 11        THE ONE I DO INTEND TO INTRODUCE, YOUR HONOR, IS 493,

09:26AM 12    PAGE 9, WHICH IS A PATIENT IMPACT ASSESSMENT RELATING TO THE

09:26AM 13    EDISON DEVICE.  THE EDISON DEVICE IS IN THE BILL OF

09:26AM 14    PARTICULARS.

09:26AM 15        THE COURT HAS HEARD LOTS OF TESTIMONY ABOUT THE EDISON

09:26AM 16    DEVICE.  AND THIS IS A STATEMENT THAT GOES TO CMS IN AN ATTEMPT

09:26AM 17    TO EXPLAIN WHETHER THE DEVICE WAS OR WAS NOT WORKING IN THE WAY

09:27AM 18    IT WAS SUPPOSED TO AND WHAT THE QUALITY SYSTEMS WERE OR WEREN'T

09:27AM 19    DOING.  IT'S AN ADMISSION BY MS. HOLMES AND THERANOS.  IT'S NOT

09:27AM 20    AN EXPERT OPINION.  NONE OF -- THERE'S NO ISSUES WITH RESPECT

09:27AM 21    TO OTHER ASSAYS, AND THIS IS VERY MUCH A PART OF THE

09:27AM 22    GOVERNMENT'S PROOF WITH DR. DAS.

09:27AM 23        BUT I THINK THE OTHER LENGTHY BACK AND FORTH, I URGE THE

09:27AM 24    COURT TO WAIT AND SEE, BECAUSE I DON'T THINK AT THE END OF THE

09:27AM 25    DAY THE GOVERNMENT IS GOING TO NEED THEM.

09:27AM  1          MR. LOOBY:  AND JUST ONE POINT ON THE ISSUE OF THE

09:27AM  2     ENTIRETY OF THE REPORT BEING RELEVANT TO STATE OF MIND.  AND

09:27AM  3     THE GOVERNMENT IS MUSHING TOGETHER REPRESENTATIONS AND

09:27AM  4     STATEMENTS AND FACTS ABOUT THE TECHNOLOGY WITH THE FINDINGS OF

09:27AM  5     THE CMS REPORT, WHICH RELATE TO LAB PRACTICES, AND WHICH COVER

09:27AM  6     THE WHOLE GAMUT OF THE LAB WHICH, OF COURSE, INCLUDED

09:27AM  7     TECHNOLOGY THAT WASN'T MANUFACTURED BY THERANOS.

09:27AM  8          AND SO THERE ISN'T A ONE-TO-ONE CONNECTION BETWEEN KIND OF

09:28AM  9     THE ISSUES IN THE CASE THAT ARE ACTUALLY IN THE CASE AND THE

09:28AM 10     ENTIRETY OF THE CMS REPORT.

09:28AM 11          IT DOES SOUND LIKE THE GOVERNMENT, IN PREPARING ITS

09:28AM 12     WITNESSES, HAS LOCATED THE SPECIFIC D TAGS IN THE CMS REPORT

09:28AM 13     THAT IT WOULD LIKE TO HIGHLIGHT, AND IT HAS LOCATED THE

09:28AM 14     PARTICULAR PATIENT IMPACT ASSESSMENT, BUT IT'S PROPOSED TO PUT

09:28AM 15     INTO EVIDENCE STACKS OF PAPERS WHERE THESE ARE JUST A FEW PAGES

09:28AM 16     OF THEM.

09:28AM 17          AND I THINK IT PAYS TO BE PRECISE AND TO LOOK AT THE

09:28AM 18     ENTIRETY OF THESE REPORTS AND WHAT THEY SAY AND DON'T SAY

09:28AM 19     BEFORE THEY'RE PUT INTO EVIDENCE AND GO BACK WITH THE JURY FOR

09:28AM 20     DELIBERATIONS.

09:28AM 21          SO, YOU KNOW, I WOULD, I WOULD -- WE MAINTAIN OUR

09:28AM 22     OBJECTION TO PORTIONS OF THE REPORT OTHER THAN THOSE, YOU KNOW,

09:28AM 23     THAT ARE -- WE MAINTAIN OUR OBJECTIONS OF CATEGORIES A AND B IN

09:28AM 24     OUR PROPOSED REDACTIONS AT 898-6.  WE STILL MAINTAIN THAT THOSE

09:29AM 25     ARE APPROPRIATE.

09:29AM 1      AND JUST ONE WORD ON THE DOUBLE HEARSAY ISSUE, WHICH I

09:29AM 2   DON'T BELIEVE HAS BEEN SOLVED.  THE GOVERNMENT'S ARGUMENT, AS I

09:29AM 3   UNDERSTAND IT, IS ESSENTIALLY BECAUSE THESE LAB STAFF WERE

09:29AM 4   INTERVIEWED ARE WHAT THEY CALL HIGH LEVEL LAB STAFF.

09:29AM 5      I MEAN, IF YOU GO TO THE PRESENTATION THAT WAS IN EVIDENCE

09:29AM 6   THAT WAS GIVEN AT THE START OF THE CMS INSPECTION, I MEAN, I

09:29AM 7   THINK IT'S MORE FAIR TO CHARACTERIZE THEM AS MID LEVEL.

09:29AM 8      MS. HOLMES -- THERE HAS NOT BEEN TESTIMONY OR EVIDENCE

09:29AM 9   THAT MS. HOLMES HAD DAY-TO-DAY SUPERVISION OF THE LAB.  THERE

09:29AM 10  HAS NOT BEEN TESTIMONY FROM THESE PARTICULAR WITNESSES, THESE

09:29AM 11  PARTICULAR LAB STAFF THAT MS. HOLMES CONTROLLED THEIR

09:29AM 12  ACTIVITIES.

09:29AM 13     THERE HASN'T BEEN A FOUNDATION TO CONNECT AN AGENCY

09:29AM 14  RELATIONSHIP BETWEEN MS. HOLMES AND THESE PARTICULAR WITNESSES.

09:29AM 15     THE COURT HAD REJECTED THE GOVERNMENT'S EFFORT TO, TO LUMP

09:30AM 16  IN ALL THERANOS EMPLOYEES AS MS. HOLMES'S AGENTS.  IT SEEMS

09:30AM 17  HERE WE'RE JUST KIND OF TRYING TO LOWER THE BAR DOWN THE

09:30AM 18  CORPORATE HIERARCHY, THAT'S THE SENSE OF THE ARGUMENT THAT I

09:30AM 19  GET, BUT THAT'S NOT PARTICULAR ENOUGH TO FORM THE AGENCY LINK.

09:30AM 20  SO I DON'T THINK THEY'VE CLEARED THAT HURDLE YET.

09:30AM 21          THE COURT:  AND YOU'RE REFERENCING THE COURT'S 798,

09:30AM 22  THE COURT'S ORDERS AND THE MILS WHICH WAS IN MAY, I THINK

09:30AM 23  MAY 22ND OF THIS YEAR?

09:30AM 24          MR. LOOBY:  CORRECT, YEAH.

09:30AM 25          THE COURT:  AND NOW -- OF COURSE WE'VE HAD SOME

5720

09:30AM 1    TESTIMONY.  WE'VE HAD TEN WEEKS OF TESTIMONY AND EVIDENCE.

09:30AM 2    PART OF THAT TESTIMONY, IF I RECALL, HAS BEEN WITNESSES,

09:30AM 3    DIFFERENT WITNESSES WHO TESTIFY ABOUT YOUR CLIENT'S CONTROL OF

09:30AM 4    THE LAB, AND WHO IS ALLOWED AND WHO ISN'T, CERTAIN PERSONNEL

09:30AM 5    THAT WERE PERMITTED TO GO IN THERE.

09:30AM 6        AND MY SENSE FROM THE GOVERNMENT'S PLEADING IS THAT THERE

09:31AM 7    IS A STRONG INFERENCE THAT ANYBODY WHO WAS THERE FOR THE CMS

09:31AM 8    EVENT, WHICH WAS AN IMPORTANT EVENT IN THE LIFE OF THE COMPANY,

09:31AM 9    WAS THERE WITH KNOWLEDGE AND CONSENT OF THE CEO OF THE COMPANY

09:31AM 10   SUCH THAT THAT DECISION WAS MADE TO ALLOW THEM TO BE THERE FOR

09:31AM 11   THAT IMPORTANT EVENT.

09:31AM 12       AND I THINK WHAT MR. LEACH, I THINK WHAT I AM INFORMED

09:31AM 13   FROM HIS PLEADINGS, SUGGESTS IT'S A FAIR INFERENCE, IF NOT

09:31AM 14   CIRCUMSTANTIAL EVIDENCE, THAT THEY WERE THERE WITH HER

09:31AM 15   IMPRIMATUR.

09:31AM 16           MR. LOOBY:  WELL, THE TECHNICAL SUPERVISOR, THE

09:31AM 17   GENERAL SUPERVISOR, AND THE QA/QC MANAGER OF THE THERANOS CLIA

09:31AM 18   LABORATORY, SO THEY WOULD BE OBLIGATED AND EXPECTED TO BE

09:31AM 19   THERE TO ANSWER CMS -- THEY WORK IN THE LAB, AND THE CMS

09:31AM 20   INSPECTION IS AN INSPECTION OF THE LAB.

09:31AM 21       SO I THINK IT'S NOT THE CORRECT QUESTION TO ASK WAS --

09:31AM 22   WERE THEY THERE WITH MS. HOLMES'S PERMISSION?  OF COURSE THEY

09:32AM 23   ARE EMPLOYEES OF THERANOS.

09:32AM 24       BUT THE QUESTION IS WHETHER OR NOT MS. HOLMES -- THEY'RE

09:32AM 25   AGENTS OF MS. HOLMES AS THEY WERE ACTING ON THAT DAY?

5721

09:32AM   1        AND I THINK THERE HASN'T BEEN TESTIMONY ABOUT MS. HOLMES

09:32AM   2    AND A PRESENCE IN OR INVOLVEMENT IN THE LAB IN THE 2014, 2015

09:32AM   3    PERIOD.  I MEAN, THE LAB DIRECTOR AT THE TIME TESTIFIED THAT HE

09:32AM   4    HADN'T MET MS. HOLMES.  SO I THINK THERE'S A GAP THERE.

09:32AM   5            THE COURT:  OKAY.  MR. LEACH, DO YOU WANT TO COMMENT

09:32AM   6    ON THAT?

09:32AM   7            MR. LEACH:  THERE ARE TEXT MESSAGES, YOUR HONOR,

09:32AM   8    WHERE MS. HOLMES IS PRAYING DURING THE SEPTEMBER 2015 CMS

09:32AM   9    EXAMINATION.

09:32AM  10        THE DEFENSE -- OR AFTER THE COURT DENIED A MOTION

09:32AM  11    IN LIMINE TO EXCLUDE A DOCUMENT THAT MR. BALWANI HANDED TO CMS

09:32AM  12    DURING THE INSPECTION, AFTER THE COURT DENIED THAT MOTION, THE

09:32AM  13    DEFENSE INTRODUCED THAT DOCUMENT THROUGH DR. DHAWAN.

09:32AM  14        THERE'S AMPLE EVIDENCE THAT MS. HOLMES WAS AWARE OF AND

09:33AM  15    DIRECTING AND SENDING OUT AGENTS FOR THE PURPOSE OF THE CMS

09:33AM  16    INSPECTION, WHICH WAS, AS THE COURT NOTES, AN IMPORTANT EVENT

09:33AM  17    IN THE COMPANY.

09:33AM  18        I DON'T SEE A DOUBLE HEARSAY PROBLEM HERE, AND I DON'T

09:33AM  19    HAVE ANYTHING MORE TO ADD THAN WHAT WE HAVE IN OUR --

09:33AM  20            THE COURT:  YOU SUGGEST THAT AT LEAST FOR PURPOSES

09:33AM  21    OF OVERCOMING A HEARSAY OBJECTION THIS -- THAT TESTIMONY OR

09:33AM  22    THOSE OBSERVATIONS ARE ADMISSIBLE UNDER AN AGENCY THEORY?

09:33AM  23            MR. LEACH:  YES, YOUR HONOR.

09:33AM  24            THE COURT:  OKAY.  OKAY.

09:33AM  25            MR. LOOBY:  YOUR HONOR, UNDER THE TEST FOR AGENCY OF

5722

09:33AM 1    AUTHORIZATION AND CONTROL OF THE EMPLOYEES'S ACTIONS, I DON'T

09:33AM 2    THINK THERE IS A FOUNDATION THERE.  I THINK WHAT MR. LEACH JUST

09:33AM 3    DESCRIBED IS MS. HOLMES AWARENESS OF THE CMS INSPECTION, HER

09:33AM 4    HOPES THAT IT WOULD GO WELL, HER PRAYERS THAT IT WOULD GO WELL.

09:33AM 5        I MEAN, THAT DOESN'T CONNECT TO WHETHER OR NOT THESE

09:33AM 6    PARTICULAR LAB EMPLOYEES RESPONDED TO MS. HOLMES, REPORTED TO

09:34AM 7    MS. HOLMES, INTERACTED WITH MS. HOLMES, THAT SHE AUTHORIZED

09:34AM 8    SPECIFIC REPRESENTATIONS THAT THEY WOULD HAVE MADE DURING THE

09:34AM 9    INSPECTION.

09:34AM 10       THEY'RE EMPLOYEES OF THE LAB, AND THEY WERE BEING

09:34AM 11   INTERVIEWED AS EMPLOYEES OF THE LAB.

09:34AM 12               THE COURT:  OF THERANOS?

09:34AM 13               MR. LOOBY:  YES.

09:34AM 14               THE COURT:  MR. LEACH?

09:34AM 15               MR. LEACH:  I HAVE NOTHING FURTHER, YOUR HONOR.

09:34AM 16               THE COURT:  OKAY.  I'M INFORMED THAT IT'S GOING TO

09:34AM 17   TAKE US TEN MINUTES TO REBOOT OUR SYSTEM TO ALLEVIATE SOME OF

09:34AM 18   THE PROBLEMS THAT WE'VE HAD THIS MORNING, ELECTRICAL PROBLEMS.

09:34AM 19       I'LL STEP DOWN, AND WE'LL GET THAT STARTED.

09:34AM 20       I THINK WE'RE GOING TO BREAK AT ABOUT 11:00 O'CLOCK AND

09:34AM 21   THEN AGAIN AT 1:30.  AND I THINK I TOLD YOU I HAVE SOMETHING

09:34AM 22   FROM 12:30 TO 1:00.  SO WE'LL TRY TO INCORPORATE ALL OF THAT IN

09:34AM 23   TODAY.

09:34AM 24       AND I THINK WE'RE GOING UNTIL 4:00 TODAY.

09:34AM 25               MR. LOOBY:  AND, YOUR HONOR, FOR EXHIBIT 5274, I'M

| | | |
|---|---|---|
| 09:34AM | 1 | NOT SURE -- THIS IS THE SEPTEMBER 2016 DRAFT CMS DOCUMENT.  I'M |
| 09:35AM | 2 | NOT SURE IF THE GOVERNMENT INTENDS TO OFFER THAT INTO EVIDENCE. |
| 09:35AM | 3 | BUT EITHER AT A BREAK OR AT A SIDE-BAR WE MAY WANT TO |
| 09:35AM | 4 | DEVOTE A FEW MINUTES TO DISCUSSING THAT. |
| 09:35AM | 5 | THE COURT:  OKAY.  THANK YOU.  OKAY. |
| 09:35AM | 6 | ANYTHING FURTHER? |
| 09:35AM | 7 | MR. LEACH:  THANK YOU, YOUR HONOR.  NOT FROM THE |
| 09:35AM | 8 | GOVERNMENT. |
| 09:35AM | 9 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 09:35AM | 10 | THE CLERK:  COURT IS IN RECESS. |
| 09:35AM | 11 | (RECESS FROM 9:35 A.M. UNTIL 11:11 A.M.) |
| 11:11AM | 12 | (JURY IN AT 11:11 A.M.) |
| 11:11AM | 13 | THE COURT:  ALL RIGHT.  THANK YOU.  WE ARE ON THE |
| 11:11AM | 14 | RECORD IN THE HOLMES MATTER.  ALL COUNSEL ARE PRESENT. |
| 11:11AM | 15 | MS. HOLMES IS PRESENT. |
| 11:11AM | 16 | OUR JURY IS PRESENT. |
| 11:11AM | 17 | GOOD AFTERNOON, LADIES AND GENTLEMEN. |
| 11:11AM | 18 | (LAUGHTER.) |
| 11:11AM | 19 | THE COURT:  I WANT TO TELL YOU, WE'VE HAD SOME |
| 11:11AM | 20 | TECHNICAL PROBLEMS, AND OUR VIDEO SYSTEM IS COMPROMISED.  YOUR |
| 11:11AM | 21 | SCREENS WILL NOT BE WORKING.  THE SCREENS IN FRONT OF ALL OF US |
| 11:11AM | 22 | ARE NOT WORKING. |
| 11:11AM | 23 | WE HAVE, DURING THE BREAK, COUNSEL HAVE TRIED TO BE |
| 11:11AM | 24 | EFFICIENT AND GOOD AND TRY TO WORK OUT COMPROMISES.  WHAT YOU |
| 11:12AM | 25 | SEE ON THE SCREEN IN FRONT OF YOU IS THE DEVICE THAT IS |

01:20PM   1        A.   YES.

01:20PM   2        Q.   OKAY.  AND TO YOUR KNOWLEDGE, DOES CMS CONDUCT ON-SITE

01:20PM   3   SURVEYS TO DETERMINE WHETHER ANY GIVEN LABORATORY IS MEETING

01:20PM   4   THE CONDITIONS AND STANDARDS SET FORTH IN THE FEDERAL

01:20PM   5   REGULATIONS?

01:20PM   6        A.   THAT IS MY UNDERSTANDING.

01:20PM   7        Q.   OKAY.  AND HAVE YOU PARTICIPATED IN SURVEYS LIKE THAT

01:20PM   8   BEFORE?

01:20PM   9        A.   I HAVE NOT.

01:20PM  10        Q.   OKAY.  PRIOR TO YOUR TIME AT THERANOS, HAVE YOU

01:20PM  11   PARTICIPATED IN A SURVEY SUCH AS THAT?

01:20PM  12        A.   NO.

01:20PM  13        Q.   OKAY.  DO CLIA REGULATIONS PLACE CERTAIN RESPONSIBILITIES

01:20PM  14   ON YOU WHEN SERVING AS A LABORATORY DIRECTOR?

01:20PM  15        A.   YES, THAT'S CORRECT.

01:20PM  16        Q.   OKAY.  DO THE CLIA REGULATIONS ALSO PROVIDE POSSIBLE

01:20PM  17   CONSEQUENCES FOR THE OWNERS AND OPERATORS OF LABORATORIES?

01:20PM  18        A.   THAT IS MY UNDERSTANDING.

01:20PM  19        Q.   OKAY.  DR. DAS, WE ARE HAVING SOME TECHNOLOGY ISSUES IN

01:20PM  20   THE COURTROOM TODAY, AND SO FOR THE DISPLAY OF DOCUMENTS, WE'RE

01:20PM  21   GOING TO BE DISPLAYING THEM UP ON THE WALL AND DIMMING THE

01:20PM  22   LIGHTS, AND THAT'S WHY WE HAVE A LIGHT NEAR YOU.

01:21PM  23        SO FOR CERTAIN DOCUMENTS, YOU SHOULD HAVE A COPY RIGHT IN

01:21PM  24   FRONT OF YOU IN YOUR BINDER, AND FOR OTHER ONES THAT ARE IN

01:21PM  25   EVIDENCE, WE MAY JUST BE DISPLAYING THEM.  BUT AT ANY POINT IF

5787
DAS DIRECT BY MR. LEACH

01:21PM  1      YOU NEED ASSISTANCE OR CAN'T SEE SOMETHING OR NEEDS GLASSES,

01:21PM  2      JUST LET ME KNOW.

01:21PM  3          BUT I WANTED TO DRAW YOUR ATTENTION TO WHAT IS IN EVIDENCE

01:21PM  4      AS DOCUMENT 7603.

01:21PM  5          PERMISSION TO DISPLAY, YOUR HONOR?

01:21PM  6              THE COURT:  YES.  THAT'S NOT IN THE BINDER -- IT IS

01:21PM  7      IN THE BINDER?

01:21PM  8              MR. LEACH:  YES.

01:21PM  9              THE WITNESS:  IT IS HERE.

01:21PM  10     BY MR. LEACH:

01:21PM  11     Q.  DR. DAS, IF I COULD PLEASE DRAW YOUR ATTENTION TO PAGE 118

01:21PM  12     OF EXHIBIT 7603.

01:21PM  13         AND, MS. HOLLIMAN, IF WE COULD PLEASE HIGHLIGHT THE TOP

01:21PM  14     PORTION OF THE RIGHT COLUMN UNDERNEATH THE BOLD HEADING, THE

01:22PM  15     FIRST TWO PARAGRAPHS BENEATH THAT HEADING.

01:22PM  16         DR. DAS, I'M DRAWING YOUR ATTENTION TO PAGE 118 OF THE

01:22PM  17     TRIAL EXHIBIT.

01:22PM  18         DO YOU HAVE THAT IN FRONT OF YOU?

01:22PM  19     A.  I DO NOW.

01:22PM  20     Q.  OKAY.  ARE YOU ABLE TO SEE IT OKAY WITH THE LIGHT THERE?

01:22PM  21     A.  YES, I CAN SEE IT JUST FINE.

01:22PM  22     Q.  OKAY.  DO YOU SEE THE SECTION HEADING 493.1840,

01:22PM  23     "SUSPENSION, LIMITATION, OR REVOCATION OF ANY TYPE OF CLIA

01:22PM  24     CERTIFICATE"?

01:22PM  25         DO YOU SEE THAT HEADING?

DAS DIRECT BY MR. LEACH                                              5788

01:22PM    1      A.   I DO.

01:22PM    2              MR. WADE:   YOUR HONOR, OBJECTION FOR THE REASONS

01:22PM    3      PREVIOUSLY STATED.

01:22PM    4              THE COURT:   WE DISCUSSED THIS.   OVERRULED.   THIS IS

01:22PM    5      IN EVIDENCE.   IT CAN BE EXAMINED.

01:22PM    6      BY MR. LEACH:

01:22PM    7      Q.   IS THIS ONE OF THE CLIA REGULATIONS, DR. DAS, THAT AFFECTS

01:23PM    8      LABORATORY DIRECTORS?

01:23PM    9      A.   YES, I BELIEVE SO.

01:23PM   10      Q.   IN PARAGRAPH A IT SAYS, "ADVERSE ACTION BASED ON ACTIONS

01:23PM   11      OF THE LABORATORY'S OWNER, OPERATOR, OR EMPLOYEES."

01:23PM   12           DO YOU SEE THAT LANGUAGE?

01:23PM   13      A.   I DO.

01:23PM   14      Q.   AND DO YOU SEE WHERE IT SAYS, "CMS MAY INITIATE ADVERSE

01:23PM   15      ACTION TO SUSPEND, LIMIT, OR REVOKE ANY CLIA CERTIFICATE IF CMS

01:23PM   16      FINDS THAT A LABORATORY'S OWNER OR OPERATOR OR ONE OF ITS

01:23PM   17      EMPLOYEES HAS --"

01:23PM   18           DO YOU SEE THAT LANGUAGE?

01:23PM   19      A.   I DO.

01:23PM   20      Q.   AND THEN IS THERE A LIST OF CERTAIN CONDUCT THAT --

01:23PM   21      FOLLOWING PARAGRAPH A IN THAT SUBSECTION?

01:23PM   22      A.   YES, THERE IS.

01:23PM   23      Q.   OKAY.   LET ME DRAW YOUR ATTENTION DOWN TO THE BOTTOM

01:23PM   24      PORTION OF THIS COLUMN.

01:23PM   25           AND IF WE CAN HIGHLIGHT PARAGRAPH 4 ALL OF THE WAY DOWN,

DAS DIRECT BY MR. LEACH                                          5789

01:24PM   1      MS. HOLLIMAN.

01:24PM   2          DO YOU SEE WHERE IT SAYS IN PARAGRAPH 6, "VIOLATED OR

01:24PM   3   AIDED AND ABETTED IN THE VIOLATION OF ANY PROVISIONS OF CLIA

01:24PM   4   AND ITS IMPLEMENTING REGULATIONS"?

01:24PM   5   A.  I DO.

01:24PM   6   Q.  AND IS THAT ONE OF THE CONDITIONS WHERE CMS MAY INITIATE

01:24PM   7   ACTION TO SUSPEND, LIMIT, OR REVOKE ANY CLIA CERTIFICATE IF IT

01:24PM   8   MAKES THAT FINDING?

01:24PM   9          MR. WADE:  SAME OBJECTION, YOUR HONOR.

01:24PM  10          THE COURT:  OVERRULED.

01:24PM  11          THE WITNESS:  YES, I BELIEVE SO.

01:24PM  12   BY MR. LEACH:

01:24PM  13   Q.  AND FURTHER DOWN BELOW IN PARAGRAPH 8, DO YOU SEE WHERE IT

01:24PM  14   SAYS, "WITHIN THE PRECEDING TWO-YEAR PERIOD, OWNED OR OPERATED

01:24PM  15   A LABORATORY THAT HAD ITS CLIA CERTIFICATE REVOKED."

01:25PM  16          DO YOU SEE THAT?

01:25PM  17   A.  I DO SEE THAT.

01:25PM  18   Q.  IS THAT ONE OF THE PROVISIONS RELATING TO OWNERS AND

01:25PM  19   OPERATORS OF LABORATORIES?

01:25PM  20   A.  YES, I BELIEVE SO.

01:25PM  21   Q.  IF I COULD DRAW YOUR ATTENTION NOW TO PAGE 8 -- EXCUSE ME,

01:25PM  22   PAGE 7 OF THE EXHIBIT WHICH IS IN EVIDENCE.

01:25PM  23          MS. HOLLIMAN, IF WE COULD PLEASE HIGHLIGHT THE COLUMN ON

01:25PM  24   THE FAR RIGHT STARTING WITH THE ITALICIZED WORD "OPERATOR."

01:25PM  25          DOWN A LITTLE MORE, PLEASE.  A LITTLE MORE.  THAT WILL DO.

01:26PM   1          DR. DAS, WE'RE ON PAGE 7 OF EXHIBIT 4603, THE CLIA

01:26PM   2     REGULATIONS.

01:26PM   3          DO YOU SEE SOME DEFINITIONS LISTED OUT ON THIS PAGE?

01:26PM   4     A.   I DO.

01:26PM   5     Q.   AND DO YOU SEE A DEFINITION FOR "OPERATOR"?

01:26PM   6     A.   YES, I DO.

01:26PM   7     Q.   AND DOES THIS READ, "OPERATOR MEANS THE INDIVIDUAL OR

01:26PM   8     GROUP OF INDIVIDUALS WHO OVERSEE ALL FACETS OF THE OPERATION OF

01:26PM   9     A LABORATORY AND WHO BEAR PRIMARY RESPONSIBILITY FOR THE SAFETY

01:26PM  10     AND RELIABILITY OF THE RESULTS OF ALL SPECIMEN TESTING

01:26PM  11     PERFORMED IN THAT LABORATORY"?

01:26PM  12          DID I READ THAT DEFINITION CORRECTLY?

01:26PM  13     A.   YES.

01:26PM  14     Q.   AND FURTHER DOWN BELOW, IS THERE A DEFINITION FOR THE

01:26PM  15     "OWNER" OF A LABORATORY?

01:26PM  16     A.   YES.

01:26PM  17     Q.   AND WAS THIS PART OF THE REGULATIONS THAT YOU UNDERSTOOD

01:26PM  18     YOU WERE SUBJECT TO IN YOUR ROLE OF THE -- AS THE LABORATORY

01:27PM  19     DIRECTOR?

01:27PM  20     A.   YES, THAT'S CORRECT.

01:27PM  21     Q.   OKAY.  LET ME FOCUS --

01:27PM  22          WE CAN TAKE THAT DOWN, MS. HOLLIMAN.  THANK YOU.

01:27PM  23          LET ME FOCUS ON WHAT YOU DID UPON YOUR ARRIVAL AT THE

01:27PM  24     COMPANY.

01:27PM  25          IF WE CAN BREAK IT INTO THE TIME PERIOD WHEN YOU WERE

5791

DAS DIRECT BY MR. LEACH

01:27PM  1    INITIALLY WORKING PART-TIME COMING UP FROM UCLA, DESCRIBE FOR

01:27PM  2    US WHAT YOU DID TO ORIENT YOURSELF WITH THE LABORATORY.

01:27PM  3    A.   I WAS COMING UP FOR ABOUT ONE DAY PER WEEK UNTIL I JOINED

01:27PM  4    FULL TIME, AND MOST OF THAT TIME WAS SPENT GETTING TO KNOW THE

01:27PM  5    PHYSICAL SPACE, THE LABORATORY, THE EMPLOYEES, THE CONSULTANTS,

01:27PM  6    AS WELL AS DEALING WITH SOME PAPERWORK FROM CMS.

01:27PM  7    Q.   WHEN YOU STARTED IN THE -- AND THIS IS LEADING UP TO YOUR

01:27PM  8    TIME PERIOD IN MARCH?

01:27PM  9    A.   THAT'S CORRECT.

01:27PM  10   Q.   AND HOW REGULARLY WERE YOU COMING UP?

01:27PM  11   A.   ONCE PER WEEK.

01:27PM  12   Q.   OKAY.

01:27PM  13   A.   ONE DAY PER WEEK.

01:27PM  14   Q.   AS YOU WERE GETTING ORIENTED WITH THE LAB, DID YOU DEVELOP

01:28PM  15   A FAMILIARITY WITH WHAT TYPE OF TESTS THERANOS WAS CURRENTLY

01:28PM  16   PERFORMING AND HAD BEEN PERFORMING IN ITS LABORATORY?

01:28PM  17   A.   YES, I DID.

01:28PM  18   Q.   OKAY.  AT THE TIME THAT YOU STARTED, WAS THERANOS

01:28PM  19   PERFORMING ANY LAB DEVELOPED TESTS?

01:28PM  20   A.   NOT TO MY KNOWLEDGE.

01:28PM  21   Q.   OKAY.  AND ARE YOU FAMILIAR WITH THE ACRONYM LDT?

01:28PM  22   A.   YES, I AM.

01:28PM  23   Q.   AND IS THAT FOR LABORATORY DEVELOPED TESTS?

01:28PM  24   A.   CORRECT.

01:28PM  25   Q.   AND WHAT DOES THAT MEAN?

DAS DIRECT BY MR. LEACH                                                5792

01:28PM   1        A.   IT MEANS ANY TEST THAT IS EITHER DEVELOPED BY THE

01:28PM   2    LABORATORY OR AN FDA APPROVED METHOD THAT IS MODIFIED

01:28PM   3    GENERALLY.

01:28PM   4        Q.   SO IF YOU TAKE AN FDA APPROVED METHOD AND MAKE SOME TYPE

01:28PM   5    OF TWEAK TO IT, THAT CONVERTS IT TO A LAB DEVELOPED TEST?

01:28PM   6        A.   IT'S ANALOGOUS TO A LAB DEVELOPED TEST, YES.

01:28PM   7        Q.   AND AT THE TIME THAT YOU STARTED IN THE LAB, WAS THERANOS

01:28PM   8    PERFORMING ANY TESTS ON THERANOS MANUFACTURED ANALYZERS?

01:29PM   9        A.   NOT TO MY KNOWLEDGE.

01:29PM  10        Q.   TO YOUR KNOWLEDGE, WAS IT PERFORMING ANY TESTS ON

01:29PM  11    SOMETHING CALLED EDISON?

01:29PM  12        A.   NOT TO MY KNOWLEDGE.

01:29PM  13        Q.   WAS IT PERFORMING ANY TESTS ON SOMETHING CALLED THE

01:29PM  14    MINILAB?

01:29PM  15        A.   NOT TO MY KNOWLEDGE.

01:29PM  16        Q.   HOW ABOUT SOMETHING CALLED THE TSPU?

01:29PM  17        A.   AGAIN, NOT TO MY KNOWLEDGE.

01:29PM  18        Q.   AND TO YOUR KNOWLEDGE, WAS IT PERFORMING ANY TESTS ON

01:29PM  19    FINGERSTICK SAMPLES ON NON-FDA APPROVED MACHINES?

01:29PM  20        A.   NO, NOT TO MY KNOWLEDGE.

01:29PM  21        Q.   I'D LIKE TO DISPLAY FOR YOU WHAT IS -- WITHDRAWN.

01:29PM  22             WHEN YOU JOINED THE LAB IN SEPTEMBER OF 2015, IN THE

01:29PM  23    INTERIM PERIOD, DID YOU DEVELOP A SENSE OF THE ANNUAL VOLUME OF

01:29PM  24    TESTS THAT WERE PERFORMED IN THE CALIFORNIA LAB BEFORE YOU

01:29PM  25    JOINED?

5793
DAS DIRECT BY MR. LEACH

01:29PM   1    A.   I BELIEVE THERE WAS AN ESTIMATE IN SOME OF THE FEDERAL

01:30PM   2    PAPERWORK.

01:30PM   3    Q.   AND WHAT WAS THAT ESTIMATE?

01:30PM   4    A.   I BELIEVE IT WAS SOMEWHERE BETWEEN 800- AND 900,000 TESTS.

01:30PM   5    Q.   AND WAS THAT ON AN ANNUAL BASIS?

01:30PM   6    A.   I BELIEVE SO.

01:30PM   7    Q.   AND AS YOU ARE BECOMING FAMILIAR WITH THERANOS AND THE

01:30PM   8    LABORATORY AS THE LABORATORY DIRECTOR IN CALIFORNIA, DID YOU

01:30PM   9    ALSO DEVELOP AN AWARENESS THAT THERANOS HAD A LAB IN ARIZONA?

01:30PM  10    A.   I WAS AWARE OF THAT.

01:30PM  11    Q.   AND WHAT WAS YOUR UNDERSTANDING?  WHAT DID YOU UNDERSTAND

01:30PM  12    ABOUT THAT LAB?

01:30PM  13    A.   MY UNDERSTANDING WAS THAT THAT LABORATORY IN SCOTTSDALE

01:30PM  14    WAS A MODERATE COMPLEXITY LABORATORY.

01:30PM  15    Q.   AND WHAT DOES THAT MEAN TO BE A MODERATE COMPLEXITY

01:30PM  16    LABORATORY?

01:30PM  17    A.   IN THIS CONTEXT IT MEANS THAT THAT TYPE OF LABORATORY RUNS

01:30PM  18    FDA APPROVED TESTING.

01:30PM  19    Q.   SO WOULD THAT LABORATORY BE RUNNING AN EDISON?

01:30PM  20    A.   I DON'T BELIEVE SO.

01:30PM  21    Q.   WOULD THAT LABORATORY BE RUNNING A FINGERSTICK TEST ON A

01:30PM  22    MODIFIED FDA APPROVED MACHINE?

01:30PM  23    A.   NO, I DON'T BELIEVE SO.

01:31PM  24    Q.   AND HOW DID THE MODERATE COMPLEXITY IN THE ARIZONA LAB

01:31PM  25    COMPARE TO THE CALIFORNIA LAB THAT YOU TOOK THE REINS OF IN THE

DAS DIRECT BY MR. LEACH                                          5794

01:31PM   1    LATE 2015, EARLY 2016 TIME PERIOD?

01:31PM   2    A.   THE NEWARK, CALIFORNIA LABORATORY WAS CONSIDERED HIGH

01:31PM   3    COMPLEXITY AND COULD OFFER SUCH TESTING.

01:31PM   4    Q.   SUCH AS LDT'S?

01:31PM   5    A.   SUCH AS LDT'S, YES.

01:31PM   6    Q.   AND AS YOU'RE BECOMING THE LABORATORY DIRECTOR, DID YOU

01:31PM   7    DEVELOP A SENSE OF THE RELATIVE VOLUME OF TESTING BETWEEN THE

01:31PM   8    MODERATE COMPLEXITY LAB IN ARIZONA AND THE HIGH COMPLEXITY LAB

01:31PM   9    IN CALIFORNIA?

01:31PM   10   A.   I DID NOT HAVE A GOOD SENSE OF THE PROPORTION OF TESTING

01:31PM   11   DONE IN BOTH LABS.

01:31PM   12   Q.   AT SOME POINT DID YOU DEVELOP THAT UNDERSTANDING?

01:31PM   13   A.   I DID NOT.

01:31PM   14   Q.   OKAY.  DID YOU HAVE ANY INTERACTIONS WITH SUNNY BALWANI?

01:31PM   15   A.   YES, TO SOME EXTENT.

01:31PM   16   Q.   OKAY.  A LOT OF INTERACTIONS?  A FEW INTERACTIONS?

01:32PM   17   DESCRIBE THOSE FOR US.

01:32PM   18   A.   QUITE MINIMUM NUMBER OF INTERACTIONS.  I BELIEVE SUNNY

01:32PM   19   LEFT THE COMPANY NOT TOO LONG AFTER I JOINED.

01:32PM   20   Q.   SO SOMETIME IN THE MARCH 2016 TIME PERIOD?

01:32PM   21   A.   YEAH.  I'M NOT CLEAR ON THE EXACT DATES, BUT WE HAD VERY

01:32PM   22   LIMITED CHANCES TO INTERACT.

01:32PM   23   Q.   LET'S MOVE FORWARD IN TIME TO THE TIME PERIOD OF MARCH OF

01:32PM   24   2016.  THAT'S WHEN YOU BEGAN WORKING ON A FULL-TIME BASIS IN

01:32PM   25   THE LAB?

UNITED STATES COURT REPORTERS

DAS DIRECT BY MR. LEACH                                        5795

01:32PM   1        A.   THAT'S CORRECT.

01:32PM   2        Q.   AND YOU LEFT YOUR RESPONSIBILITIES IN UCLA?

01:32PM   3        A.   YES.

01:32PM   4        Q.   AND DID YOU MOVE UP TO CALIFORNIA TO WORK IN THE LAB

01:32PM   5   HERE -- MOVE UP TO THE BAY AREA TO WORK IN THE LAB?

01:32PM   6        A.   I DID.

01:32PM   7        Q.   OKAY.  AND YOU MENTIONED EARLIER PART OF YOUR

01:32PM   8   RESPONSIBILITIES INITIALLY WAS DEALING WITH PAPERWORK FROM CMS.

01:32PM   9        WHAT WERE YOU TALKING ABOUT?

01:32PM  10        A.   IT WAS RELATED TO AN AUDIT, I BELIEVE, THAT WOULD HAVE

01:32PM  11   BEEN BEFORE I JOINED, AND A STATEMENT OF DEFICIENCIES FROM THAT

01:33PM  12   AUDIT.

01:33PM  13        Q.   AND WAS A SIGNIFICANT PART OF YOUR JOB AS THE LAB DIRECTOR

01:33PM  14   REVIEWING THAT STATEMENT, DEVELOPING AN UNDERSTANDING OF IT,

01:33PM  15   AND RESPONDING TO IT?

01:33PM  16        A.   YES.  THAT WAS NEARLY THE SOLE RESPONSIBILITY THAT I HAD.

01:33PM  17        Q.   OKAY.  IN THIS EARLY MARCH 2016 TIME PERIOD, WHAT TYPES OF

01:33PM  18   DOCUMENTS DID YOU REVIEW AND GATHER IN CONNECTION WITH, WITH

01:33PM  19   RESPONDING TO THIS STATEMENT OF DEFICIENCIES?

01:33PM  20        A.   OH, THERE WERE A VARIETY OF DOCUMENTS.

01:33PM  21        DO YOU NEED SPECIFIC EXAMPLES, OR ARE YOU REFERRING TO

01:33PM  22   SPECIFIC EXAMPLES?

01:33PM  23        Q.   IF YOU COULD PUT THEM INTO BUCKETS FOR US, THAT WOULD BE

01:33PM  24   GREAT.

01:33PM  25        A.   I WOULD SAY THE MAJORITY OF MY RESPONSIBILITY IN

01:33PM  1    RESPONDING TO THAT FORM, THAT STATEMENT OF DEFICIENCIES, WAS TO

01:33PM  2    PERFORM WHAT ARE CALLED PATIENT IMPACT ASSESSMENTS.

01:34PM  3         I BELIEVE THE DOCUMENTATION WAS GENERALLY SPLIT INTO ABOUT

01:34PM  4    THREE BUCKETS.

01:34PM  5    Q.   OKAY.  WHAT ARE THOSE?

01:34PM  6    A.   THE FIRST ONE WAS VALIDATION REPORTS FOR THE TESTS

01:34PM  7    PERFORMED.

01:34PM  8    Q.   WHAT WAS THE SECOND?

01:34PM  9    A.   THE SECOND ONE WAS GENERALLY QUALITY CONTROL RESULTS AND

01:34PM 10    REPORTS.

01:34PM 11    Q.   AND THE THIRD?

01:34PM 12    A.   THE THIRD WAS PATIENT TEST RESULT DISTRIBUTIONS AND

01:34PM 13    CALCULATIONS FROM THOSE.

01:34PM 14    Q.   AND DID YOU HAVE A TEAM WORKING WITH YOU IN RESPONDING TO

01:34PM 15    THIS REPORT FROM, OR STATEMENT OF DEFICIENCIES FROM CMS?

01:34PM 16    A.   YES, INDEED.

01:34PM 17    Q.   OKAY.  AND WHO WAS ON YOUR TEAM?

01:34PM 18    A.   OKAY.  IT WAS QUITE A LARGE TEAM.  I WON'T REMEMBER ALL OF

01:34PM 19    THE NAMES.  THE PEOPLE THAT I WORKED MOST CLOSELY WITH I COULD

01:34PM 20    NAME IF THAT'S OF HELP.

01:35PM 21    Q.   THAT WOULD BE HELPFUL.  THANK YOU.

01:35PM 22    A.   THE DIRECTORS THAT I WORKED WITH VERY CLOSELY WERE

01:35PM 23    DOCTORS TSCHIRHART AND HELFEND.

01:35PM 24    Q.   COULD YOU SPELL TSCHIRHART FOR US, PLEASE.

01:35PM 25    A.   YES, I HOPE I CAN.  I BELIEVE THAT'S T-S-C-H-I-R-H-A-R-T.

                                                                        5797
                          DAS DIRECT BY MR. LEACH

01:35PM   1        FIRST NAME IS DONALD.

01:35PM   2        Q.   AND YOU MENTIONED DR. HELFEND.

01:35PM   3        A.   YES, LISA HELFEND.

01:35PM   4        Q.   IS THAT H-E-L-F-U-N-D?

01:35PM   5        A.   H-E-L-F-E-N-D.

01:35PM   6        Q.   OKAY.  DID THEY COME ON AT AROUND THE TIME YOU CAME ON AS

01:35PM   7        LAB DIRECTOR?

01:35PM   8        A.   I BELIEVE DON JOINED THE EXACT SAME DAY I JOINED, AND LISA

01:35PM   9        WAS ALREADY THERE AS A CONTRACT DIRECTOR.

01:35PM   10       Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO WHAT HAS BEEN

01:35PM   11       MARKED FOR IDENTIFICATION AS 4621.

01:36PM   12       A.   YES.

01:36PM   13       Q.   DO YOU RECOGNIZE THIS DOCUMENT?

01:36PM   14       A.   YES, I DO.

01:36PM   15       Q.   AND WHAT IS IT?

01:36PM   16       A.   THIS APPEARS TO BE THE COVER LETTER FOR THE STATEMENT OF

01:36PM   17       DEFICIENCIES.

01:36PM   18       Q.   AND DOES THE COVER LETTER COMPRISE PAGES 1 THROUGH 4 OF

01:36PM   19       EXHIBIT 4621?

01:36PM   20       A.   YES.

01:36PM   21       Q.   AND DOES THE STATEMENT OF DEFICIENCIES BEGIN ON PAGE 5?

01:36PM   22       A.   YES.

01:36PM   23       Q.   OKAY.  LET ME DRAW YOUR ATTENTION TO THE BOTTOM OF PAGE 5.

01:36PM   24            DO YOU SEE TO THE LEFT WHERE IT SAYS FORM 6 CMS 2567?

01:36PM   25       A.   YES, I DO.

5798
DAS DIRECT BY MR. LEACH

01:36PM  1    Q.   AND DO YOU SEE A DATE IN THE UPPER RIGHT-HAND CORNER,

01:37PM  2    JANUARY 25TH, 2016?

01:37PM  3    A.   I DO.

01:37PM  4    Q.   AND TO THE LEFT DO YOU SEE A BOX THAT SAYS, FOR THE TITLE

01:37PM  5    OF THE DOCUMENT, STATEMENT OF DEFICIENCIES AND PLAN OF

01:37PM  6    CORRECTION?

01:37PM  7    A.   YES.

01:37PM  8    Q.   OKAY.  IS THIS THE FORM THAT YOU TESTIFIED YOU SPENT A

01:37PM  9    SIGNIFICANT AMOUNT OF YOUR TIME RESPONDING TO IN YOUR ROLE AS

01:37PM  10   THE LAB DIRECTOR?

01:37PM  11   A.   YES, THAT'S CORRECT.

01:37PM  12   Q.   OKAY.  HOW MANY PAGES IS THE STATEMENT OF DEFICIENCIES?

01:37PM  13   A.   IT LOOKS LIKE IN MY COPY 121.

01:37PM  14   Q.   IN YOUR ROLE AS LABORATORY DIRECTOR, WHO DID YOU REPORT

01:37PM  15   TO?

01:37PM  16   A.   I REPORTED TO MS. HOLMES.

01:37PM  17   Q.   AND IN THE COURSE OF RESPONDING TO THE FORM 2567, THE

01:38PM  18   STATEMENT OF DEFICIENCIES, DID YOU HAVE CONVERSATIONS WITH

01:38PM  19   MS. HOLMES?

01:38PM  20   A.   YES.

01:38PM  21   Q.   MORE THAN ONE?

01:38PM  22   A.   MANY CONVERSATIONS.

01:38PM  23   Q.   AND DID THOSE RELATE TO WHAT YOU WERE FIND -- OR WHAT CMS

01:38PM  24   HAD BROUGHT TO THE COMPANY'S ATTENTION, WHAT YOU WERE FINDING

01:38PM  25   AND HOW THE COMPANY WAS GOING TO RESPOND?

DAS DIRECT BY MR. LEACH                                              5799

```
01:38PM   1        A.   YES, AMONG OTHERS.

01:38PM   2        Q.   OKAY.  DID YOU TRAVEL TO WASHINGTON, D.C. WITH MS. HOLMES

01:38PM   3    TO MEET WITH INDIVIDUALS FROM CMS?

01:38PM   4        A.   YES, I DID.

01:38PM   5        Q.   AND WAS THAT IN CONNECTION WITH RESPONDING TO THE FORM

01:38PM   6    2567?

01:38PM   7        A.   YES, IT WAS.

01:38PM   8        Q.   WE'RE GOING TO COME BACK TO 4621, BUT I'D LIKE TO BRIEFLY

01:38PM   9    DRAW YOUR ATTENTION TO EXHIBIT 5260.

01:39PM  10        A.   OKAY.

01:39PM  11        Q.   AND IF I COULD DRAW YOUR ATTENTION TO PAGE 90, IS THAT

01:39PM  12    YOUR SIGNATURE?

01:39PM  13        A.   YES.

01:39PM  14        Q.   AND IF WE CAN GO TO PAGE 2 OF THE EXHIBIT, DO YOU SEE A

01:39PM  15    DATE AT THE TOP OF MARCH 28TH, 2016?

01:39PM  16        A.   YES, I DO.

01:39PM  17        Q.   AND IS THIS A LETTER THAT YOU SENT TO CMS IN RESPONSE TO A

01:39PM  18    LETTER FROM CMS TO DR. SUNIL DHAWAN, ELIZABETH HOLMES, AND

01:39PM  19    SUNNY BALWANI?

01:39PM  20        A.   YES, I BELIEVE SO.

01:39PM  21        Q.   OKAY.  AND IS THIS LETTER IN CONNECTION WITH THE COMPANY'S

01:39PM  22    RESPONSE TO THE 2567?

01:39PM  23        A.   THAT'S CORRECT.

01:39PM  24        Q.   OKAY.  AND DID YOU HAVE MANY CONVERSATIONS WITH MS. HOLMES

01:40PM  25    BOTH ABOUT WHAT CMS BROUGHT TO THE COMPANY'S ATTENTION IN 2567
```

DAS DIRECT BY MR. LEACH                                              5800

01:40PM   1    AND HOW THE COMPANY WAS GOING TO RESPOND?

01:40PM   2    A.   YES, THAT'S CORRECT.

01:40PM   3    Q.   PLEASE LOOK BRIEFLY AT EXHIBIT 3144.

01:40PM   4         IS THAT YOUR -- AND I DRAW YOUR ATTENTION TO PAGE 93.

01:40PM   5    A.   YES.

01:40PM   6    Q.   IS THAT YOUR SIGNATURE?

01:40PM   7    A.   YES, THAT'S CORRECT.

01:40PM   8    Q.   OKAY.  AND IF WE CAN GO BACK TO PAGE 1, DOES THIS APPEAR

01:40PM   9    TO BE AN APRIL 1ST, 2016 LETTER FROM YOU TO THERANOS UPDATING A

01:40PM  10    RESPONSE TO A LETTER FROM CMS TO DR. SUNIL DHAWAN,

01:41PM  11    ELIZABETH HOLMES, AND SUNNY BALWANI?

01:41PM  12    A.   YES, THAT'S CORRECT, FROM THERANOS.

01:41PM  13    Q.   OKAY.  AND WE'VE JUST LOOKED AT SOME LETTERS FROM THE

01:41PM  14    MARCH AND APRIL TIME PERIOD, BUT YOU HAD -- DID YOU HAVE A

01:41PM  15    NUMBER OF CONVERSATIONS WITH MS. HOLMES ABOUT THE 2567 AND WHAT

01:41PM  16    WAS BEING REPORTED TO THE COMPANY?

01:41PM  17    A.   YES, PERIODICALLY.

01:41PM  18    Q.   OKAY.  LET ME GO -- WAS THERE SOME URGENCY IN RESPONDING

01:41PM  19    TO THE CMS 2567?

01:41PM  20    A.   YES, THERE WAS.

01:41PM  21    Q.   WHY WAS THAT?

01:41PM  22    A.   I BELIEVE THERE WAS A DEADLINE IMPOSED BY CMS FOR A

01:41PM  23    RESPONSE.

01:41PM  24    Q.   OKAY.  LET ME DRAW YOUR ATTENTION BACK TO 4621.

01:41PM  25    A.   YES.

DAS DIRECT BY MR. LEACH                                                5801

01:41PM   1    Q.   AND I'D LIKE TO FOCUS ON THE COVER LETTER, PAGES 1 THROUGH

01:41PM   2    4.   ON PAGE 2, DO YOU SEE REFERENCE TO, IN PARAGRAPH 3, A

01:42PM   3    DEADLINE IMPOSED BY CMS?

01:42PM   4    A.   YES, I DO.

01:42PM   5    Q.   OKAY.  AND ON -- ABOVE THAT DO YOU SEE SOME LANGUAGE

01:42PM   6    SUGGESTING REASONING BEHIND THE DATE THAT IS BEING IMPOSED BY

01:42PM   7    CMS?

01:42PM   8              MR. WADE:  YOUR HONOR, THE DOCUMENT IS NOT IN

01:42PM   9    EVIDENCE, BUT WE'RE REFERRING TO SUBSTANTIAL PARTS OF IT HERE.

01:42PM  10              THE COURT:  MR. LEACH?

01:42PM  11              MR. LEACH:  I'M TRYING TO LAY A FOUNDATION TO ADMIT

01:42PM  12    IT INTO EVIDENCE, YOUR HONOR, AND I THINK MY NEXT QUESTION IS,

01:42PM  13    DID HE DISCUSS THIS WITH MS. HOLMES?

01:42PM  14              THE COURT:  ALL RIGHT.  THANK YOU.

01:42PM  15    BY MR. LEACH:

01:42PM  16    Q.   DID YOU DISCUSS THE CIRCUMSTANCES DESCRIBED IN THIS LETTER

01:42PM  17    WITH MS. HOLMES?

01:42PM  18    A.   YES, THE CIRCUMSTANCES WERE DESCRIBED OR DISCUSSED.

01:42PM  19              MR. LEACH:  YOUR HONOR, I OFFER PAGES 1 THROUGH 4 OF

01:42PM  20    EXHIBIT 4621.

01:43PM  21              MR. WADE:  YOUR HONOR, WE OBJECT TO ALL OF THE

01:43PM  22    REFERENCE OF THE EXHIBIT FOR REASONS WE DISCUSSED WITH COUNSEL

01:43PM  23    AND THE COURT THIS MORNING AND THE REASONS SET FORTH IN THE

01:43PM  24    MOTION PAPERS.

01:43PM  25              THE COURT:  ALL RIGHT.  THANK YOU.

01:43PM   1          SO YOU'RE ASKING FOR 1 THROUGH 4 ONLY?

01:43PM   2              MR. LEACH:  YES.

01:43PM   3              THE COURT:  OF 4621?

01:43PM   4              MR. LEACH:  YES.

01:43PM   5              THE COURT:  ALL RIGHT.  I DO YOU THINK AN

01:43PM   6   APPROPRIATE FOUNDATION HAS BEEN LAID TO ADMIT THIS, OVERRULING

01:43PM   7   THE OBJECTIONS THAT WERE MADE EARLIER.

01:43PM   8          SO THIS WILL BE ADMITTED OVER OBJECTION.  THANK YOU.

01:43PM   9              MR. LEACH:  THANK YOU.

01:43PM  10              THE COURT:  AND IT CAN BE, IT CAN BE DISPLAYED IF

01:43PM  11   YOU WISH.

01:43PM  12          (GOVERNMENT'S EXHIBIT 4621, PAGES 1 THROUGH 4, WAS

01:43PM  13   RECEIVED IN EVIDENCE.)

01:43PM  14              MR. LEACH:  IF WE CAN PLEASE START AT THE TOP,

01:43PM  15   MS. HOLLIMAN, CATCHING THE CMS HEADER IF YOU COULD, PLEASE.

01:44PM  16   Q.   DR. DHAWAN, IS THIS THE COVER LETTER THAT ACCOMPANIED CMS

01:44PM  17   DEFICIENCY NOTICE?

01:44PM  18   A.   I'M SORRY.

01:44PM  19   Q.   I'M TERRIBLY SORRY, I'M READING THE DOCUMENT AND MOVING

01:44PM  20   TOO QUICKLY.

01:44PM  21          DR. DAS, IS THIS THE COVER LETTER THAT ACCOMPANIED THE

01:44PM  22   STATEMENT OF DEFICIENCIES FROM CMS?

01:44PM  23   A.   YES.

01:44PM  24   Q.   OKAY.  AND DO YOU SEE THE DATE JANUARY 25TH, 2016?

01:44PM  25   A.   I DO.

01:44PM   1    Q.   OKAY.  AND THIS IS ADDRESSED TO SOMEONE NAMED

01:44PM   2    SUNIL DHAWAN.  DID YOU HAVE AN UNDERSTANDING OF WHO

01:44PM   3    SUNIL DHAWAN WAS?

01:44PM   4    A.   YES.

01:44PM   5    Q.   AND WHO WAS HE?

01:44PM   6    A.   MY UNDERSTANDING IS THAT HE WAS THE PRIOR LABORATORY

01:44PM   7    DIRECTOR BEFORE I JOINED.

01:44PM   8    Q.   IN THE RE LINE, IT SAYS, CONDITION LEVEL DEFICIENCIES -

01:44PM   9    IMMEDIATE JEOPARDY.

01:44PM   10        DO YOU SEE THAT LANGUAGE?

01:44PM   11   A.   YES, I DO.

01:44PM   12   Q.   AND THEN IN THE FIRST PARAGRAPH -- WELL, I'M SORRY, IN THE

01:45PM   13   SECOND PARAGRAPH IT SAYS, "THE CENTERS FOR MEDICARE AND

01:45PM   14   MEDICAID SERVICES CONDUCTED A CLIA RECERTIFICATION AND

01:45PM   15   COMPLAINT SURVEY OF THE LABORATORY."

01:45PM   16        I'LL RESTATE, MS. RODRIGUEZ.  THANK YOU.

01:45PM   17        IS IT YOUR UNDERSTANDING THAT A SURVEY WAS PERFORMED BY

01:45PM   18   CMS PRIOR TO JANUARY THAT GENERATED THIS STATEMENT OF

01:45PM   19   DEFICIENCIES?

01:45PM   20   A.   YES, THAT IS MY UNDERSTANDING.

01:45PM   21   Q.   OKAY.  IT GOES ON TO SAY, "THE ONSITE SURVEY WAS COMPLETED

01:45PM   22   ON NOVEMBER 20TH, 2015.  HOWEVER, THE SURVEY CONCLUDED WITH THE

01:45PM   23   RECEIPT OF CRITICAL INFORMATION RECEIVED FROM THE LABORATORY ON

01:45PM   24   DECEMBER 23RD, 2015."

01:45PM   25        DO YOU SEE THAT?

DAS DIRECT BY MR. LEACH                                              5804

01:45PM   1     A.   YES, I DO.

01:45PM   2     Q.   THEN IT SAYS, "AS A RESULT OF THE SURVEY, IT WAS

01:45PM   3     DETERMINED THAT YOUR FACILITY WAS NOT IN COMPLIANCE WITH ALL OF

01:45PM   4     THE CONDITIONS REQUIRED FOR CERTIFICATION IN THE CLIA PROGRAM."

01:46PM   5          DO YOU SEE THAT?

01:46PM   6     A.   I DO.

01:46PM   7     Q.   AND IS "CONDITIONED" A TERM OF ART IN THE CLIA

01:46PM   8     REGULATIONS?

01:46PM   9     A.   YES, THAT IS.

01:46PM   10    Q.   AND WHAT IS A CONDITION?

01:46PM   11    A.   THESE ARE ANALOGOUS TO REQUIREMENTS OR REGULATIONS.

01:46PM   12    Q.   OKAY.  IT THEN SAYS, "IN ADDITION, BASED ON THE

01:46PM   13    CONDITION-LEVEL REQUIREMENT, HEMATOLOGY, IT WAS DETERMINED THAT

01:46PM   14    THE DEFICIENT PRACTICES OF THE LABORATORY POSE IMMEDIATE

01:46PM   15    JEOPARDY TO PATIENT HEALTH AND SAFETY."

01:46PM   16         DO YOU SEE THAT?

01:46PM   17    A.   YES, I DO.

01:46PM   18    Q.   AND IS THAT PART OF WHAT WAS TRIGGERING THE URGENCY FOR

01:46PM   19    YOUR RESPONSE TO CMS?

01:46PM   20    A.   YES, THAT IS CORRECT.

01:46PM   21    Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE

01:46PM   22    NEED TO RESPOND URGENTLY TO CMS?

01:46PM   23    A.   YES, WE DID.

01:46PM   24    Q.   FURTHER DOWN THERE'S A LIST OF CONDITIONS THAT WERE NOT

01:46PM   25    MET.

DAS DIRECT BY MR. LEACH                                          5805

01:46PM  1            IF WE CAN ZOOM OUT, MS. HOLLIMAN AND HIGHLIGHT THE BOTTOM.

01:47PM  2            DR. DAS, DO YOU SEE THE REFERENCE D5024 COLON, AND THEN A

01:47PM  3      REFERENCE TO 42 CFR WITH ANOTHER NUMBER?

01:47PM  4      A.   YES, I SEE THAT.

01:47PM  5      Q.   OKAY.  DO YOU HAVE AN UNDERSTANDING OF WHAT THAT D NUMBER

01:47PM  6      REFERENCES?

01:47PM  7      A.   D IS REFERENCING A DEFICIENCY.

01:47PM  8      Q.   AND THE 42 CFR, IS THAT A REFERENCE TO A PARTICULAR CLIA

01:47PM  9      REGULATION?

01:47PM 10      A.   THAT'S CORRECT.

01:47PM 11      Q.   AND THIS PARTICULAR REFERENCE IS A REFERENCE TO

01:47PM 12      HEMATOLOGY?

01:47PM 13      A.   THAT IS MY UNDERSTANDING.

01:47PM 14      Q.   AND WHAT IS HEMATOLOGY?

01:47PM 15      A.   IT'S A STUDY OF THE BLOOD.

01:47PM 16      Q.   THE NEXT TAG D5400.

01:47PM 17            DO YOU SEE THAT?

01:47PM 18      A.   I DO.

01:47PM 19      Q.   AND TO THE RIGHT, THIS RELATES TO A CONDITION FOR ANALYTIC

01:47PM 20      SYSTEMS.  IS THAT A TERM THAT YOU'RE FAMILIAR WITH IN THE CLIA

01:47PM 21      REGULATIONS?

01:47PM 22      A.   YES, I'M FAMILIAR WITH THAT TERM.

01:48PM 23      Q.   AND WHAT DOES THAT REFER TO?

01:48PM 24      A.   IT GENERALLY REFERS TO INSTRUMENTS AND METHODS USED FOR

01:48PM 25      TESTING.

DAS DIRECT BY MR. LEACH                                          5806

01:48PM  1      Q.   AND THEN D6076, DO YOU SEE THAT NUMBER IN THE THIRD ROW?

01:48PM  2      A.   YES.

01:48PM  3      Q.   OKAY.  AND THIS CONDITION IS LABORATORIES PERFORMING HIGH

01:48PM  4      COMPLEXITY TESTING; LABORATORY DIRECTOR.

01:48PM  5           DO YOU SEE THAT REFERENCE?

01:48PM  6      A.   I DO.

01:48PM  7      Q.   AND THERANOS'S CLIA LABORATORY IN CALIFORNIA WAS A HIGH

01:48PM  8      COMPLEXITY LAB?

01:48PM  9      A.   THAT IS CORRECT.

01:48PM 10      Q.   DESCRIBE FOR US HOW YOU WENT ABOUT RESPONDING TO CMS.

01:48PM 11      WHAT DID YOU DO IN TERMS OF RESPONDING TO THIS LETTER FROM CMS?

01:48PM 12      A.   HONESTLY, THE FIRST STEP WAS TO READ THE STATEMENT OF

01:48PM 13      DEFICIENCIES VERY CAREFULLY TO UNDERSTAND THE SPECIFICS OF THE

01:48PM 14      DEFICIENCIES.

01:48PM 15      Q.   AND I TRUST YOU DID THAT.

01:49PM 16      A.   YES, WE DID.

01:49PM 17      Q.   OKAY.  AND DID YOU HAVE MULTIPLE DISCUSSIONS WITH YOUR

01:49PM 18      TEAM ABOUT THE DEFICIENCIES THAT CMS IDENTIFIED?

01:49PM 19      A.   YES, WE DID.

01:49PM 20      Q.   DID YOU HAVE MULTIPLE DISCUSSIONS WITH MS. HOLMES ABOUT

01:49PM 21      THE DEFICIENCIES THAT CMS IDENTIFIED?

01:49PM 22      A.   YES.  SHE WAS PART OF SOME OF THOSE DISCUSSIONS.

01:49PM 23      Q.   OKAY.  LET ME -- I WANT TO DRAW YOUR ATTENTION, PLEASE, TO

01:49PM 24      PARTICULAR PROVISIONS WITHIN 2567, AND IF I COULD DRAW YOUR

01:49PM 25      ATTENTION, PLEASE, TO -- AND LET'S NOT DISPLAY THIS,

DAS DIRECT BY MR. LEACH                                                5807

01:49PM   1      MS. HOLLIMAN.

01:49PM   2           BUT IF I COULD PLEASE DRAW YOUR ATTENTION TO PAGE 51.

01:49PM   3               THE COURT:  I'M SORRY, WHAT PAGE?

01:49PM   4               MR. LEACH:  51, YOUR HONOR.

01:49PM   5               THE COURT:  THANK YOU.

01:49PM   6               THE WITNESS:  OKAY.

01:49PM   7   BY MR. LEACH:

01:49PM   8   Q.   BEFORE I ASK QUESTIONS ABOUT PAGE 51, AFTER REVIEWING THE

01:49PM   9   CMS STATEMENT OF DEFICIENCIES IN ITS ENTIRETY, DID YOU LOOK AT

01:50PM  10   THE CATEGORIES OF DOCUMENTS THAT YOU DESCRIBED EARLIER?

01:50PM  11   A.   NOT IMMEDIATELY.

01:50PM  12   Q.   AT SOME POINT DID YOU?

01:50PM  13   A.   YES.

01:50PM  14   Q.   AND DID YOU LOOK AT THE DOCUMENTS THAT WERE REFERENCED IN

01:50PM  15   THE CMS STATEMENT OF DEFICIENCIES TO UNDERSTAND WHAT THEY WERE

01:50PM  16   REFERRING TO?

01:50PM  17   A.   YES, THAT'S CORRECT.

01:50PM  18   Q.   AND DID YOU HAVE DISCUSSION WITH YOUR TEAM ABOUT THOSE?

01:50PM  19   A.   YES, WE DID.

01:50PM  20   Q.   DID YOU, AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES

01:50PM  21   ABOUT THAT?

01:50PM  22   A.   TO SOME EXTENT, YES.

01:50PM  23   Q.   LET ME DRAW YOUR ATTENTION -- WE'RE ON PAGE 51.  AT THE

01:50PM  24   BOTTOM, DO YOU SEE ANOTHER ONE OF THOSE D NUMBERS TO THE LEFT

01:50PM  25   AT THE BOTTOM?

                          UNITED STATES COURT REPORTERS

DAS DIRECT BY MR. LEACH                                           5808

01:50PM   1        A.   I DO.

01:50PM   2        Q.   AND IF I COULD ASK YOU, PLEASE, TO CONTINUE READING -- OR

01:50PM   3    IF I COULD ASK YOU TO CONTINUE READING TO THE NEXT PAGE, DO YOU

01:50PM   4    SEE AT THE TOP LANGUAGE, A REFERENCE TO A STANDARD?

01:50PM   5        A.   MR. LEACH, IF I MAY?  ARE YOU REFERRING TO D5791?

01:51PM   6        Q.   YES.

01:51PM   7        A.   AND READ UNTIL WHEN?

01:51PM   8        Q.   IF YOU COULD PLEASE READ UNTIL PAGE 52, THERE'S A

01:51PM   9    REFERENCE TO STANDARD AT THE TOP.

01:51PM  10             DO YOU SEE THAT LANGUAGE?

01:51PM  11        A.   I DO.

01:51PM  12        Q.   AND --

01:51PM  13        A.   PLEASE GIVE ME A MINUTE.

01:51PM  14             MR. WADE:  COUNSEL, IF I MAY INQUIRE, YOU'RE

01:51PM  15    REFERRING TO THE PAGE NUMBERS IN THE MIDDLE OF THE DOCUMENT OR

01:51PM  16    THE DOCUMENT ITSELF?

01:51PM  17             MR. LEACH:  THE TRIAL EXHIBIT NUMBER.

01:51PM  18             MR. WADE:  OKAY.  THANK YOU.

01:51PM  19    BY MR. LEACH:

01:51PM  20        Q.   AND DO YOU SEE A NUMBER 1 BENEATH THAT STANDARD LANGUAGE?

01:51PM  21        A.   YES, I DO.

01:51PM  22        Q.   OKAY.  I WANT TO SKIP OVER THE SUBSTANCE OF WHAT IS IN

01:51PM  23    NUMBER 1 AND GO TO NUMBER 2 ON THE NEXT PAGE, PAGE 53.

01:51PM  24        A.   YES.

01:51PM  25        Q.   OKAY.  AND DO YOU SEE A DESCRIPTION RELATING TO SOMETHING

DAS DIRECT BY MR. LEACH                                              5809

01:51PM   1    CALLED TPS IN NUMBER 2 DOWN AT THE BOTTOM OF PAGE 53?

01:52PM   2    A.   I DO.

01:52PM   3    Q.   OKAY.  AND ARE YOU FAMILIAR WITH THIS PORTION OF THE 2567?

01:52PM   4    A.   I'LL HAVE TO REVIEW IT CAREFULLY.

01:52PM   5    Q.   IF YOU COULD REVIEW CAREFULLY PAGES 53, 54, UP TO NUMBER 3

01:52PM   6    ON PAGE 55.

01:53PM   7         (PAUSE IN PROCEEDINGS.)

01:53PM   8              THE WITNESS:  OKAY.  I'VE HAD A CHANCE TO REVIEW

01:53PM   9    THIS.

01:53PM   10   BY MR. LEACH:

01:53PM   11   Q.   OKAY.  ARE YOU FAMILIAR WITH THIS PORTION OF FORM 2567?

01:53PM   12   A.   YES.

01:53PM   13   Q.   OKAY.  AND DID YOU DISCUSS ISSUES RELATING TO QUALITY

01:53PM   14   CONTROL AND THE EDISON DEVICE WITH MS. HOLMES?

01:53PM   15   A.   YES, WE HAD DISCUSSED THAT.

01:53PM   16              MR. LEACH:  YOUR HONOR, I OFFER PAGES 51 FROM THE

01:53PM   17   BOTTOM -- WITH THE D TAG BEGINNING D5791, THE TOP OF PAGE 52

01:53PM   18   WHERE IT SAYS "THE STANDARD IS" WITH SOME ADDITIONAL LANGUAGE

01:54PM   19   THERE.

01:54PM   20              THE COURT:  LET ME -- YOU SAID 51 FROM D5791?

01:54PM   21              MR. LEACH:  YES.

01:54PM   22              THE COURT:  OKAY.

01:54PM   23              MR. LEACH:  ALL THE WAY DOWN TO PAGE 52 DOWN TO THE

01:54PM   24   LINE INCLUDING "THIS STANDARD," AND THEN CONTINUING ON THE

01:54PM   25   BOTTOM OF PAGE 53 FROM THE INFORMATION UNDER NUMBER 2 TO

                 DAS DIRECT BY MR. LEACH                                    5810

01:54PM   1     PAGE 55 WITH THE INFORMATION NUMBERED L.

01:55PM   2          (PAUSE IN PROCEEDINGS.)

01:55PM   3              MR. WADE:  I'M NOT SURE I TOTALLY FOLLOWED THE

01:55PM   4     PORTIONS THAT COUNSEL WAS OFFERING.

01:55PM   5              THE COURT:  OKAY.  MR. LEACH, MAYBE YOU SHOULD JUST

01:55PM   6     WALK OVER AND SHOW MR. WADE WHERE IT IS.

01:55PM   7              MR. LEACH:  SURE.

01:55PM   8          (DISCUSSION OFF THE RECORD.)

01:55PM   9              MR. WADE:  YOUR HONOR, SAME OBJECTIONS AS PREVIOUSLY

01:55PM   10    NOTED.

01:55PM   11             THE COURT:  THANK YOU.  I'LL NOTE THOSE OBJECTIONS

01:56PM   12    AND NOTE THE FOUNDATION THAT HAS BEEN LAID THIS AFTERNOON WITH

01:56PM   13    TESTIMONY.

01:56PM   14         SO THE OBJECTION IS OVERRULED.

01:56PM   15         (GOVERNMENT'S EXHIBIT 4621B, REDACTED PAGES 51 - 55, WAS

01:56PM   16    RECEIVED IN EVIDENCE.)

01:56PM   17             MR. LEACH:  THANK YOU, YOUR HONOR.  AND WE'LL DO OUR

01:56PM   18    BEST TO DISPLAY JUST THOSE PORTIONS.

01:56PM   19         SO, MS. HOLLIMAN, IF WE COULD PLEASE DISPLAY PAGE 51,

01:56PM   20    BEGINNING -- REDACTING EVERYTHING EXCEPT THE BOTTOM OF THE PAGE

01:56PM   21    STARTING WITH 5791.

01:56PM   22             THE COURT:  AND, MR. LEACH, THESE ARE ADMITTED

01:56PM   23    FOR -- I KNOW WE'VE DISCUSSED THIS -- FOR STATE OF MIND ISSUES?

01:56PM   24             MR. LEACH:  YES, YOUR HONOR.

01:56PM   25             THE COURT:  ALL RIGHT.  THANK YOU.

01:56PM   1         SO, LADIES AND GENTLEMEN, THESE PAGES THAT YOU'RE ABOUT TO

01:56PM   2    SEE ARE ADMITTED FOR THE STATE OF MIND OF THE DEFENDANT,

01:57PM   3    MR. LEACH?

01:57PM   4              MR. LEACH:  YES, YOUR HONOR.

01:57PM   5              THE COURT:  YES.  AS TO ANY ISSUE OF INTENT AND

01:57PM   6    KNOWLEDGE.

01:57PM   7         (PAUSE IN PROCEEDINGS.)

01:58PM   8              MR. LEACH:  JUST ONE MOMENT, YOUR HONOR.

01:58PM   9              THE COURT:  YES, OF COURSE.

01:58PM   10        (PAUSE IN PROCEEDINGS.)

01:58PM   11             MR. WADE:  YOUR HONOR, WHILE COUNSEL IS LOOKING FOR

01:58PM   12   THAT, I MIGHT JUST CLARIFY.

01:58PM   13        I UNDERSTAND THE COURT'S DIRECTION OF THE LIMITED PURPOSE

01:58PM   14   FOR WHICH THEY'RE OFFERED FOR, BUT I JUST MIGHT ASK THAT IT BE

01:58PM   15   CLARIFIED, BUT NOT FOR THE TRUTH OF THE MATTER ASSERTED.

01:58PM   16             THE COURT:  THAT WAS YOUR INTENT AS WELL, MR. LEACH?

01:58PM   17             MR. LEACH:  YES.

01:58PM   18             THE COURT:  LADIES AND GENTLEMEN, AS I SAID -- THANK

01:58PM   19   YOU, MR. WADE.

01:58PM   20        AS I SAID EARLIER, THESE ARE RECEIVED NOT FOR THE TRUTH OF

01:58PM   21   THE MATTER ASSERTED IN EACH OF THE DOCUMENTS, BUT THEY ARE

01:58PM   22   ADMITTED ONLY AS TO THE ISSUE OF KNOWLEDGE AND INTENT AS TO THE

01:59PM   23   DEFENDANT MS. HOLMES.

02:03PM   24        (PAUSE IN PROCEEDINGS.)

02:03PM   25             MR. LEACH:  YOUR HONOR, WE'RE HAVING SOME TECHNICAL

02:03PM  1    ISSUES WITH THE REDACTIONS AND DISPLAYING THEM UP THERE.

02:03PM  2         I THINK WHILE WE'RE RESOLVING THAT I'D LIKE TO GO THROUGH

02:03PM  3    ADDITIONAL PORTIONS OF THIS AND MAKE MY OFFER OF PROOF AND

02:03PM  4    HOPEFULLY SAVE EVERYBODY SOME TIME THAT WAY.

02:03PM  5              THE COURT:  IT SEEMS TO BE THE ORDER OF THE DAY.

02:03PM  6              MR. LEACH:  I APOLOGIZE TO THE COURT AND APPRECIATE

02:03PM  7    EVERYONE'S PATIENCE.

02:04PM  8    Q.   BEFORE WE DISPLAY THE PORTIONS THAT WERE JUST ADMITTED,

02:04PM  9    DR. DAS, LET ME DRAW YOUR ATTENTION TO PAGE 55 OF EXHIBIT 4621,

02:04PM  10   THE COVER LETTER AND THE STATEMENT OF DEFICIENCIES.

02:04PM  11   A.   YES.

02:04PM  12   Q.   AND DO YOU SEE THE NUMBER 3 IN THE COLUMN FOR SUMMARY

02:04PM  13   STATEMENT OF DEFICIENCIES?

02:04PM  14   A.   I DO.

02:04PM  15   Q.   OKAY.  AND PLEASE TAKE A MOMENT TO READ TO YOURSELF THE

02:04PM  16   INFORMATION BEGINNING AT 3 AND CONTINUING TO PAGE 57 THROUGH

02:04PM  17   THE SUBSTANCE OF NUMBER K IN THE MIDDLE OF THE PAGE.

02:04PM  18        (PAUSE IN PROCEEDINGS.)

02:06PM  19              THE WITNESS:  THANKS FOR YOUR PATIENCE.

02:06PM  20   BY MR. LEACH:

02:06PM  21   Q.   HAVE YOU READ THOSE CAREFULLY TO YOURSELF?

02:06PM  22   A.   I HAVE.

02:06PM  23   Q.   AND IN THE MARCH AND APRIL TIME PERIOD, DID YOU HAVE

02:06PM  24   CONVERSATIONS WITH MS. HOLMES ABOUT THERANOS'S QUALITY CONTROL

02:06PM  25   RESULTS FOR THE TIME PERIOD JULY 2014 THROUGH JUNE OF 2015?

DAS DIRECT BY MR. LEACH

02:06PM   1     A.   YES, WE DID.

02:06PM   2              MR. LEACH:  YOUR HONOR, I OFFER PAGE 55, BEGINNING

02:06PM   3     FROM THE NUMBER 3 ALL OF THE WAY THROUGH PAGE 57, STOPPING AT

02:07PM   4     THE NUMBER -- JUST ABOVE THE NUMBER 4.

02:07PM   5              THE COURT:  MR. LEACH, COULD YOU TELL ME -- YOUR

02:07PM   6     LAST QUESTION WAS REGARDING CONVERSATIONS THAT THIS WITNESS HAD

02:07PM   7     WITH MS. HOLMES BETWEEN, WHAT WAS THE TIME PERIOD?

02:07PM   8              MR. LEACH:  BETWEEN JULY -- RELATING TO QC DATA

02:07PM   9     BETWEEN JULY OF 2014 AND JUNE OF 2015.

02:08PM  10          (PAUSE IN PROCEEDINGS.)

02:08PM  11              THE COURT:  COUNSEL?

02:08PM  12              MR. WADE:  I MIGHT JUST INQUIRE.

02:08PM  13          FOR WHAT PURPOSE IS THIS ADMISSION?

02:08PM  14              THE COURT:  IT'S NOT FOR THE TRUTH OF THE MATTER --

02:08PM  15     IS THIS LIKEWISE AS THE PREVIOUS ADMISSIONS?

02:08PM  16              MR. LEACH:  YES, YOUR HONOR, FOR STATE OF MIND.

02:08PM  17              THE COURT:  YES.

02:08PM  18              MR. WADE:  I HAVE THE SAME OBJECTION, AND I WOULD

02:08PM  19     ADD 104 TO THIS AS WELL.

02:08PM  20              THE COURT:  ALL RIGHT.  THANK YOU.

02:08PM  21          LADIES AND GENTLEMEN -- OVERRULED.

02:08PM  22          LADIES AND GENTLEMEN, THESE EXHIBITS WILL BE ADMITTED, AND

02:08PM  23     THEY ARE OFFERED NOT FOR THE TRUTH OF THE MATTER ASSERTED, BUT

02:08PM  24     ONLY AS TO THE STATE OF MIND OF MS. HOLMES, AS THE PREVIOUS

02:08PM  25     ADMISSIONS, AS TO INTENT AND KNOWLEDGE, AND THOSE ISSUES ONLY,

UNITED STATES COURT REPORTERS

**ER-447**

DAS DIRECT BY MR. LEACH                                          5814

```
02:08PM   1      NOT FOR THE TRUTH OF THE MATTER ASSERTED, BUT ONLY AS TO THE

02:08PM   2      STATE OF MIND OF MS. HOLMES AS TO KNOWLEDGE AND INTENT.

02:08PM   3           (GOVERNMENT'S EXHIBIT 4621, PAGE 55 WAS RECEIVED IN

02:09PM   4      EVIDENCE.)

02:09PM   5               MR. LEACH:  MS. HOLLIMAN, IF WE'RE ABLE TO, I THINK

02:09PM   6      WE CAN NOW DISPLAY THE ENTIRETY OF PAGE 55.

02:10PM   7           (PAUSE IN PROCEEDINGS.)

02:10PM   8               MR. LEACH:  OKAY.  MS. HOLLIMAN, IF WE CAN PLEASE

02:10PM   9      ZOOM IN ON THE TOP PORTION OF PAGE 55 JUST TO ORIENT THE JURY

02:10PM  10      AT THE TOP OF THE PAGE.

02:10PM  11      Q.   DR. DAS, DO YOU SEE THE TOP PORTION OF PAGE 55 ON TRIAL

02:10PM  12      EXHIBIT 4621?

02:10PM  13      A.   I DO.

02:10PM  14      Q.   OKAY.  AND DO YOU SEE THE DATE IN THE UPPER RIGHT CORNER,

02:10PM  15      JANUARY 25TH, 2016?

02:10PM  16      A.   YES.

02:10PM  17      Q.   OKAY.  AND TO THE LEFT OF THE PAGE THERE'S A BOX

02:11PM  18      "STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION."

02:11PM  19           IS THAT PART OF THE CMS FORM?

02:11PM  20      A.   YES, IT IS.

02:11PM  21      Q.   AND TO THE RIGHT DO YOU SEE THE DATE OF NOVEMBER 20TH,

02:11PM  22      2015?

02:11PM  23      A.   YES.

02:11PM  24      Q.   OKAY.  AND IS THAT YOUR UNDERSTANDING OF THE DATE THAT THE

02:11PM  25      CMS SURVEY WAS COMPLETED?
```

DAS DIRECT BY MR. LEACH                                            5815

02:11PM   1      A.   THAT IS MY UNDERSTANDING.

02:11PM   2      Q.   OKAY.  THERE'S A STREET ADDRESS LISTED FOR THE LABORATORY,

02:11PM   3      733 GATEWAY BOULEVARD.

02:11PM   4           IS THAT WHERE THE CLIA LABORATORY WAS LOCATED?

02:11PM   5      A.   THAT'S CORRECT.

02:11PM   6      Q.   THAT'S WHERE YOU WENT TO WORK IN YOUR JOB?

02:11PM   7      A.   YES.

02:11PM   8      Q.   OKAY.  IF WE COULD PLEASE ZOOM OUT, MS. HOLLIMAN.

02:11PM   9           IF WE CAN NOW CAPTURE EVERY -- THE TOP -- DOWN A LITTLE

02:11PM  10      BIT MORE TO NUMBER 3.

02:11PM  11           DR. DAS, DO YOU SEE THE NUMBER D5791 --

02:11PM  12      A.   I DO.

02:11PM  13      Q.   -- IN THE TOP LEFT CORNER?

02:12PM  14           AND IS THAT A REFERENCE TO SOME IDENTIFICATION TAG OR

02:12PM  15      PREFIX TAG?

02:12PM  16      A.   THAT'S CORRECT, D TAG.

02:12PM  17      Q.   OKAY.  WHAT DO YOU MEAN, D TAG?

02:12PM  18      A.   DEFICIENCY TAG.

02:12PM  19      Q.   AND DOWN ON 3 IT SAYS, "BASED ON REVIEW OF QUALITY

02:12PM  20      ASSESSMENT AND QA PROCEDURES, THE LABORATORY FAILED TO HAVE A

02:12PM  21      QUALITY ASSESSMENT PROCEDURE ESTABLISHED TO IDENTIFY AND

02:12PM  22      CORRECT PROBLEMS WITH THE QUALITY CONTROL PROGRAM FOR THE

02:12PM  23      THERANOS PROPRIETARY SYSTEM (TPS)."

02:12PM  24           DO YOU SEE THAT LANGUAGE?

02:12PM  25      A.   YES, I DO.

5816
DAS DIRECT BY MR. LEACH

02:12PM 1    Q.   AND DID YOU UNDERSTAND TPS TO BE THE EDISON 3.5 DEVICE?

02:12PM 2    A.   YES.

02:12PM 3    Q.   AND WHAT DID YOU UNDERSTAND QUALITY ASSESSMENT TO MEAN?

02:12PM 4    A.   MEANING THE TERM, MR. LEACH?

02:12PM 5    Q.   YES.

02:12PM 6    A.   THAT'S A TERM THAT ENCOMPASSES ALL QUALITY PROGRAMS, NOT

02:13PM 7    INCLUDING QUALITY CONTROL.

02:13PM 8    Q.   AND WHAT DO YOU MEAN BY "QUALITY PROGRAMS"?

02:13PM 9    A.   IN GENERAL, QUALITY CONTROL HAS TO DO WITH DAY-TO-DAY

02:13PM 10   RUNS, QUALITY OF DAY-TO-DAY RUNS.

02:13PM 11       AND QUALITY ASSESSMENT IS -- DESCRIBES ALL OF THE OTHER

02:13PM 12   QUALITY ACTIVITIES OUTSIDE OF THE DAY-TO-DAY RUNS ON ANY GIVEN

02:13PM 13   INSTRUMENT.

02:13PM 14   Q.   AND WAS PART OF YOUR JOB AS THE LAB DIRECTOR TO

02:13PM 15   INVESTIGATE THIS FINDING, UNDERSTAND IT, AND COME UP WITH THE

02:13PM 16   COMPANY'S RESPONSE?

02:13PM 17   A.   YES.

02:13PM 18   Q.   IF WE CAN GO FURTHER DOWN, PLEASE, MS. HOLLIMAN, ON

02:13PM 19   PAGE 55.

02:13PM 20       IT READS HERE, "MONTHLY QC REPORTS WERE REVIEWED FOR

02:13PM 21   JULY 2014, OCTOBER 2014, AND FEBRUARY THROUGH JUNE 2015."

02:13PM 22       DID YOU ALSO REVIEW MONTHLY QC REPORTS IN THE COURSE OF

02:14PM 23   YOUR WORK AS THE LABORATORY DIRECTOR?

02:14PM 24   A.   WE DID.  WE HAD THE REPORTS CREATED FOR US.

02:14PM 25   Q.   OKAY.  AND THAT WAS IN PART TO RESPOND TO THE 2567?

DAS DIRECT BY MR. LEACH                                                      5817

02:14PM  1      A.   THAT'S CORRECT.

02:14PM  2      Q.   AND IN NUMBER 2 IT SAYS, "THE TOTAL PERCENTAGE OF QC

02:14PM  3    VALUES GREATER THAN 2 STANDARD DEVIATIONS (SDS) WAS REVIEWED BY

02:14PM  4    THE SURVEYOR."

02:14PM  5           DO YOU SEE THAT LANGUAGE?

02:14PM  6      A.   I DO.

02:14PM  7      Q.   AND DO YOU UNDERSTAND WHAT IS MEANT BY "STANDARD

02:14PM  8    DEVIATIONS"?

02:14PM  9      A.   YES, I DO.

02:14PM  10     Q.   AND WHAT IS A STANDARD DEVIATION?

02:14PM  11     A.   WOULD YOU LIKE THE MORE TECHNICAL DEFINITION?

02:14PM  12     Q.   I'D LIKE THE LESS TECHNICAL DEFINITION IF YOU COULD.

02:14PM  13     A.   IT'S, IN GENERAL, AN ESTIMATE OF THE SPREAD OF A DATA SET,

02:14PM  14    HOW WIDELY THE VALUES VARY.

02:14PM  15     Q.   OKAY.

02:14PM  16     A.   IN LABORATORY PARLANCE, WE USE IT TO ESTIMATE PRECISION.

02:14PM  17     Q.   AND IF WE CAN GO TO THE NEXT PAGE, PLEASE, PAGE 56.

02:15PM  18          DR. DAS, DO SOME OF THE CMS FINDINGS CONTINUE -- WITH

02:15PM  19    RESPECT TO THIS D TAG CONTINUE ON TO THE NEXT PAGE?

02:15PM  20     A.   YES, I SEE THAT.

02:15PM  21     Q.   OKAY.  DO YOU SEE WHERE IT SAYS, "IN JULY 2014, THE DATA

02:15PM  22    REVEALED THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES

02:15PM  23    WITH MORE THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."  AND

02:15PM  24    THEN THERE'S TESTOSTERONE, TOTAL T4, VITAMIN D.

02:15PM  25          "OVERALL 16 PERCENT OF QC SAMPLES ON ALL TESTS ON ALL

| | | |
|---|---|---|
| 02:15PM | 1 | DEVICES HAD VALUES GREATER THAN 2 SDS." |
| 02:15PM | 2 | DO YOU SEE THAT LANGUAGE? |
| 02:15PM | 3 | A.   I DO SEE THAT. |
| 02:15PM | 4 | Q.   OKAY.  AND WERE TST, TOTAL T4, AND VITAMIN D ASSAYS RUN ON |
| 02:15PM | 5 | THE EDISON IN THE 2014 TIME PERIOD? |
| 02:15PM | 6 | A.   THAT IS CORRECT.  I BELIEVE THAT'S WHAT THEY'RE REFERRING |
| 02:15PM | 7 | TO. |
| 02:15PM | 8 | Q.   AND DID YOU AND YOUR TEAM ALSO REVIEW THE DATA THAT IS |
| 02:16PM | 9 | LISTED HERE ON THIS FORM? |
| 02:16PM | 10 | A.   YES. |
| 02:16PM | 11 | Q.   AND DID YOU REVIEW AN EVEN BROADER UNIVERSE OF QC DATA IN |
| 02:16PM | 12 | ORDER TO RESPOND TO THE CMS REPORT? |
| 02:16PM | 13 | A.   WE DID. |
| 02:16PM | 14 | Q.   AND IS THIS -- IS THE FINDING LISTED HERE CONSISTENT WITH |
| 02:16PM | 15 | WHAT YOU REVIEWED IN YOUR REVIEW OF DATA? |
| 02:16PM | 16 | MR. WADE:  YOUR HONOR, 702 ON THIS ISSUE, |
| 02:16PM | 17 | PARTICULARLY GIVEN THE PURPOSE THAT THIS EVIDENCE HAS BEEN |
| 02:16PM | 18 | OFFERED. |
| 02:16PM | 19 | THE COURT:  MR. LEACH, I THINK YOU'RE ON THE MARGINS |
| 02:16PM | 20 | OF A 702 AREA, SO LET ME ASK YOU TO REPHRASE YOUR QUESTION. |
| 02:16PM | 21 | BY MR. LEACH: |
| 02:16PM | 22 | Q.   DID YOU ALSO -- DID YOU ALSO REVIEW THE DATA THAT IS |
| 02:16PM | 23 | LISTED IN THIS REPORT, IN THIS PARAGRAPH E, DR. DAS? |
| 02:16PM | 24 | A.   I DON'T RECALL THESE EXACT NUMBERS, BUT THESE TIME FRAMES |
| 02:17PM | 25 | ARE CONSISTENT WITH MY RECOLLECTION. |

DAS DIRECT BY MR. LEACH                                          5819

02:17PM  1    Q.   OKAY.  AND IN RESPONDING TO CMS, DID -- OR YOU NEEDED TO

02:17PM  2    FORMULATE A RESPONSE TO CMS ON BEHALF OF THE COMPANY; IS THAT

02:17PM  3    CORRECT?

02:17PM  4    A.   YES, THAT IS CORRECT.

02:17PM  5    Q.   AND DID YOU LOOK AT NOT JUST DATA FOR JULY OF 2014, BUT A

02:17PM  6    BROADER UNIVERSE OF DATA IN ORDER TO UNDERSTAND AND RESPOND TO

02:17PM  7    CMS?

02:17PM  8    A.   YES, WE DID.

02:17PM  9    Q.   OKAY.  AT ANY POINT DID YOU TELL CMS THAT THE COMPANY

02:17PM 10    DISAGREED WITH THIS PARTICULAR FINDING?

02:17PM 11    A.   NO, I DON'T BELIEVE WE DID.

02:17PM 12    Q.   OKAY.  WHY NOT?

02:17PM 13    A.   THESE FINDINGS --

02:17PM 14         MR. WADE:  YOUR HONOR, AGAIN, 702.  WE'RE JUST USING

02:17PM 15    REVERSE INSTEAD OF FORWARD.

02:17PM 16         THE COURT:  I UNDERSTAND.

02:17PM 17    I THINK YOU'RE ASKING FOR AN OPINION THAT FALLS UNDER 702

02:17PM 18    THE WAY THE QUESTION IS FORMED, SO I'LL SUSTAIN THE OBJECTION.

02:17PM 19    BY MR. LEACH:

02:17PM 20    Q.   BUT YOU NEVER SAID TO ANYBODY AT CMS, "I DISAGREE WITH

02:17PM 21    THIS FINDING"?

02:18PM 22    A.   I DON'T RECALL SAYING THAT OR WRITING THAT.

02:18PM 23    Q.   LET'S GO TO NUMBER F.

02:18PM 24    A.   OKAY.

02:18PM 25    Q.   AND IF WE CAN ENLARGE THAT, MS. HOLLIMAN.

DAS DIRECT BY MR. LEACH                                                    5820

02:18PM   1          I'M SORRY.  I THINK WE'RE DOWN ON H.  I WANTED TO FOCUS ON

02:18PM   2     F IF WE COULD:

02:18PM   3          THIS READS, DR. DAS, "IN OCTOBER 2014 THE DATA REVEALED

02:18PM   4     THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES WITH MORE

02:18PM   5     THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."

02:18PM   6          DO YOU SEE THAT LANGUAGE?

02:18PM   7     A.   I DO.

02:18PM   8     Q.   AND THEN THERE'S A LIST FOR ESTRADIOL, FREE T4, PROLACTIN,

02:18PM   9     SHBG, TSH, TST, TOTAL T3, TT4, VITAMIN D, AND VITAMIN B12.

02:19PM  10          DO YOU SEE THOSE?

02:19PM  11     A.   I DO.

02:19PM  12     Q.   AND ARE ALL OF THOSE ASSAYS THAT WERE RUN ON THE EDISON?

02:19PM  13     A.   YES.

02:19PM  14     Q.   AND AS A LAB DIRECTOR, IS IT DESIRABLE OR UNDESIRABLE TO

02:19PM  15     HAVE A CV OF GREATER THAN 15 PERCENT?

02:19PM  16     A.   THAT WOULD BE UNDESIRABLE.

02:19PM  17     Q.   THIS SAYS, "OVERALL 29 PERCENT OF QC SAMPLES ON ALL TESTS

02:19PM  18     ON ALL DEVICES HAD VALUES GREATER THAN 2 SD'S."

02:19PM  19          DO YOU SEE THAT?

02:19PM  20     A.   YES, I SEE THAT.

02:19PM  21     Q.   AND WHAT DID YOU UNDERSTAND THAT TO MEAN?

02:19PM  22     A.   THAT -- I UNDERSTAND THAT TO MEAN THAT 15 PERCENT OF THE

02:19PM  23     VALUES WERE VIOLATING THE 2 SD RULE, WHICH IS A COMMON QUALITY

02:19PM  24     CONTROL RULE.

02:19PM  25     Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THIS

UNITED STATES COURT REPORTERS

**ER-454**

| | | |
|---|---|---|
| 02:19PM | 1 | QUALITY CONTROL RULE AND THE DATA THAT WAS BEING REPORTED BY |
| 02:19PM | 2 | CMS? |
| 02:19PM | 3 | A.   IN GENERAL, YES. |
| 02:19PM | 4 | Q.   LET'S GO TO LETTER G. |
| 02:20PM | 5 | DO YOU SEE WHERE IT SAYS, "IN FEBRUARY OF 2015, THE |
| 02:20PM | 6 | DATA" -- OH, BEFORE I LEAVE G, DID YOU EVER TELL CMS THAT YOU |
| 02:20PM | 7 | DISAGREED WITH THIS FINDING IN F? |
| 02:20PM | 8 | MR. WADE:  YOUR HONOR, I'M GOING TO OBJECT ON 702 |
| 02:20PM | 9 | GROUNDS TO THIS AS WELL. |
| 02:20PM | 10 | THE COURT:  OVERRULED.  YOU CAN ANSWER THE QUESTION. |
| 02:20PM | 11 | THE WITNESS:  NO, I DO NOT RECALL THAT. |
| 02:20PM | 12 | BY MR. LEACH: |
| 02:20PM | 13 | Q.   IN G IT SAYS, "IN FEBRUARY 2015, THE DATA REVEALED THE |
| 02:20PM | 14 | FOLLOWING TESTS SHOWED THE PERCENTAGE OF QC SAMPLES WITH MORE |
| 02:20PM | 15 | THAN 15 PERCENT OF VALUES GREATER THAN 2 SD." |
| 02:20PM | 16 | AND IT LISTS FT4, SHBG, TT3, VITAMIN D, VITAMIN B12. |
| 02:20PM | 17 | DO YOU SEE THAT? |
| 02:20PM | 18 | A.   I DO. |
| 02:20PM | 19 | Q.   AND THOSE ARE TESTS THAT ARE RUN ON EDISON? |
| 02:20PM | 20 | A.   THAT IS CORRECT. |
| 02:20PM | 21 | Q.   AND AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU |
| 02:20PM | 22 | DISAGREED WITH THIS FINDING? |
| 02:20PM | 23 | A.   NO, I DON'T RECALL DOING SO. |
| 02:20PM | 24 | Q.   LET'S LOOK AT H AND I. |
| 02:21PM | 25 | DO YOU SEE WHERE IT SAYS, "IN MARCH OF 2015, THE DATA |

                                                                          5822
DAS DIRECT BY MR. LEACH

02:21PM   1    REVEALED THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES

02:21PM   2    WITH MORE THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."

02:21PM   3        DO YOU SEE THAT LANGUAGE?

02:21PM   4    A.   I DO.

02:21PM   5    Q.   OKAY.  AND DID YOU UNDERSTAND THIS TO BE A SIMILAR ISSUE

02:21PM   6    TO WHAT CMS WAS RAISING FOR FEBRUARY, OCTOBER, AND JULY?

02:21PM   7    A.   YES, I DO.

02:21PM   8    Q.   AND AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU

02:21PM   9    DISAGREED WITH THIS FINDING?

02:21PM   10   A.   NO, I DON'T RECALL DOING SO.

02:21PM   11   Q.   AND THEN I SAYS, "IN APRIL THE DATA REVEALED THE FOLLOWING

02:21PM   12   TESTS, SHOWED PERCENTAGE OF QC SAMPLES WITH MORE THAN

02:21PM   13   15 PERCENT OF VALUES GREATER THAN 2 SD, SHBG," AND THEN THERE'S

02:21PM   14   A LIST OF ASSAYS CONTINUING ON TO PAGE 57.

02:22PM   15       IS THIS A SIMILAR ISSUE BEING RAISED IN THE FINDINGS THAT

02:22PM   16   WE JUST LOOKED AT PREVIOUSLY?

02:22PM   17   A.   YES, I AGREE.

02:22PM   18   Q.   AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU DISAGREED

02:22PM   19   WITH THIS FINDING?

02:22PM   20   A.   NO, I DON'T RECALL DOING SO.

02:22PM   21   Q.   WAS TSA -- OR EXCUSE ME, PSA AN --

02:22PM   22       YOU CAN TAKE THIS DOWN, MS. HOLLIMAN.

02:22PM   23       WAS PSA ANOTHER ASSAY THAT WAS RUN ON THE EDISON DEVICE IN

02:22PM   24   THE TIME PERIOD BEFORE YOU BECAME THE LAB DIRECTOR?

02:22PM   25   A.   YES, THAT'S MY UNDERSTANDING.

DAS DIRECT BY MR. LEACH                                                5823

02:22PM   1    Q.   OKAY.  AND IN CONNECTION WITH YOUR REVIEW OF THE CMS

02:22PM   2    REPORT AND RESPONDING TO CMS, DID YOU HAVE DISCUSSIONS WITH

02:22PM   3    MS. HOLMES ABOUT WHAT CMS WAS FINDING WITH RESPECT TO CMS AND

02:23PM   4    WHAT YOU WERE FINDING AND WHAT THAT -- HOW TO RESPOND TO THAT?

02:23PM   5    A.   I COULD USE A LITTLE MORE SPECIFICITY, MR. LEACH, IF YOU

02:23PM   6    MAY.

02:23PM   7    Q.   THAT WAS A COMPOUND QUESTION.  LET ME ASK IT BETTER.

02:23PM   8         IN THIS 2015 OR 2016, MARCH AND APRIL TIME PERIOD, DID YOU

02:23PM   9    HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE COMPANY'S PSA TEST?

02:23PM  10    A.   I DID.

02:23PM  11    Q.   AND WAS THAT IN THE CONTEXT OF SOME OF THE CMS FINDINGS

02:23PM  12    AND HOW TO RESPOND TO THAT?

02:23PM  13    A.   IT WAS RELATED TO THE CMS FINDINGS.

02:23PM  14    Q.   OKAY.  DESCRIBE TO US YOUR CONVERSATIONS WITH MS. HOLMES?

02:23PM  15    A.   I RECALL USING THE PSA TEST AS AN EXAMPLE OF THE EDISON'S

02:23PM  16    ERROR PROPENSITY OR GENERATING ERROR -- ERRONEOUS RESULTS.

02:23PM  17    Q.   OKAY.  AND DID YOU GIVE MS. HOLMES A PARTICULAR REASON WHY

02:23PM  18    YOU THOUGHT THE EDISON WAS PRONE TO ERRONEOUS RESULTS?

02:23PM  19    A.   YES.  IN REVIEWING THE DATA, IT ENDED UP BEING AN EASILY

02:24PM  20    DIGESTIBLE EXAMPLE OF THE EDISON'S ERRORS AND THAT I RECALL

02:24PM  21    QUITE A FEW FEMALE PATIENTS RETURNING PSA RESULTS, WHICH WOULD

02:24PM  22    BE HIGHLY UNLIKELY.

02:24PM  23    Q.   WHY WAS THAT A RED FLAG TO YOU?

02:24PM  24    A.   BECAUSE FEMALES SHOULD GENERALLY NOT HAVE PSA DETECTABLE.

02:24PM  25    IT SHOULD ONLY BE DETECTED IN MALES.

DAS DIRECT BY MR. LEACH                                           5824

02:24PM  1    Q.   AND WHY WERE YOU BRINGING THIS TO MS. HOLMES'S ATTENTION?

02:24PM  2    A.   IT WAS JUST TO EXEMPLIFY WHAT WE WERE DISCUSSING REGARDING

02:24PM  3    SOME OF THE ERRORS SEEN ON THE TSPU.

02:24PM  4    Q.   AND AFTER THIS CONVERSATION WITH MS. HOLMES, DID SHE COME

02:24PM  5    BACK TO YOU ABOUT WITH ANY LITERATURE RELATING TO PSA RESULTS?

02:24PM  6    A.   YES, I BELIEVE SO.  SHE OFFERED AN ALTERNATIVE

02:24PM  7    EXPLANATION.

02:24PM  8    Q.   AND WHAT WAS THE ALTERNATIVE EXPLANATION?

02:24PM  9    A.   I DON'T REMEMBER THE DETAILS, BUT IT WAS ALONG THE LINES

02:24PM 10    OF AN ARTICLE OR TWO DESCRIBING A FEW, I BELIEVE IT WAS A

02:25PM 11    FRACTION OF A SUBSET OF A RARE BREAST CANCER AND THOUGH FEMALES

02:25PM 12    FROM TIME TO TIME EXHIBITING PSA RESULTS FROM THEIR TUMORS.

02:25PM 13    Q.   AND WAS THAT EXPLANATION SATISFYING TO YOU?

02:25PM 14    A.   IT SEEMED IMPLAUSIBLE.

02:25PM 15    Q.   LET ME MOVE FORWARD IN TIME, PLEASE, TO THE END OF OR THE

02:25PM 16    LATE TIME PERIOD OF MARCH OF 2016.

02:25PM 17         HAVING REVIEWED THE FORM 2567, DID YOU WRITE BACK TO CMS

02:25PM 18    WITH THE COMPANY'S RESPONSES?

02:25PM 19    A.   YES, I DO RECALL THAT.

02:25PM 20    Q.   OKAY.  AND DID YOU -- YOU MENTIONED SOMETHING EARLIER

02:25PM 21    CALLED A PATIENT IMPACT ASSESSMENT.

02:25PM 22         WHAT IS THAT?

02:25PM 23    A.   YES.  THOSE WERE DESCRIPTIONS OF OUR ASSESSMENTS ON OUR

02:25PM 24    EVALUATION OF WHETHER THESE TESTS LED TO POTENTIAL FOR PATIENT

02:25PM 25    HARM.

5825
DAS DIRECT BY MR. LEACH

02:25PM 1    Q.   AND IN THE COURSE OF, IN THE COURSE OF PREPARING THESE

02:26PM 2    PATIENT IMPACT ASSESSMENTS, WERE YOU -- DID YOU VIEW YOURSELF

02:26PM 3    AS FULFILLING YOUR OBLIGATIONS AS THE CLIA LAB DIRECTOR?

02:26PM 4    A.   YES, I DID.

02:26PM 5    Q.   AND WHY DID YOU FEEL THAT WAS PART OF YOUR OBLIGATIONS AS

02:26PM 6    THE CLIA LAB DIRECTOR?

02:26PM 7    A.   THAT'S NOT ONLY A REGULATORY OBLIGATION BUT A PROFESSIONAL

02:26PM 8    ONE AND AN ETHICAL ONE AS WELL.

02:26PM 9    Q.   OKAY.  LET ME DRAW YOUR ATTENTION BACK TO 7603,

02:27PM 10   SPECIFICALLY PAGES 82 AND 83.

02:27PM 11       DO YOU HAVE THAT IN FRONT OF YOU, DR. DAS?

02:27PM 12   A.   YES, I DO.  THANK YOU.

02:27PM 13   Q.   OKAY.  AND ON PAGE 82 THERE'S A CFR SECTION 493.1291,

02:27PM 14   STANDARD TEST REPORT.

02:27PM 15       DO YOU SEE THAT?

02:27PM 16   A.   YES, I SEE THAT.

02:27PM 17   Q.   AND IF YOU LOOK ON PAGE 83, THERE'S A SUBPARAGRAPH K.

02:27PM 18       DO YOU SEE WHERE IT SAYS, "WHEN ERRORS IN THE REPORTED

02:27PM 19   PATIENT TEST RESULTS ARE DETECTED, THE LABORATORY MUST DO THE

02:27PM 20   FOLLOWING"?

02:27PM 21   A.   I DO SEE THAT.

02:27PM 22   Q.   OKAY.  AND DOES THAT LAY OUT CERTAIN THINGS THAT YOU FELT

02:27PM 23   AS THE LABORATORY DIRECTOR NEEDED TO BE DONE IF THE CONDITION

02:27PM 24   IN K WAS SATISFIED?

02:27PM 25   A.   THAT'S CORRECT, THAT'S STANDARD PRACTICE.

DAS DIRECT BY MR. LEACH                                              5826

| | | |
|---|---|---|
| 02:27PM | 1 | Q.   OKAY.  IN THE COURSE OF RESPONDING TO THE CMS 2567, DID |
| 02:28PM | 2 | YOU, AS THE LABORATORY, DETECT ERRORS IN THE PATIENT REPORTED |
| 02:28PM | 3 | TEST RESULTS? |
| 02:28PM | 4 | A.   WE DID. |
| 02:28PM | 5 | Q.   AND DID YOU FEEL THAT YOU WERE REQUIRED TO TAKE CERTAIN |
| 02:28PM | 6 | ACTION PURSUANT TO THIS CLIA REGULATION AND YOUR PROFESSIONAL |
| 02:28PM | 7 | RESPONSIBILITIES? |
| 02:28PM | 8 | A.   YES, THAT'S CORRECT. |
| 02:28PM | 9 | Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO EXHIBIT 4943. |
| 02:28PM | 10 | DO YOU HAVE THAT IN FRONT OF YOU, DR. DAS? |
| 02:28PM | 11 | A.   YES, I DO. |
| 02:28PM | 12 | Q.   DO YOU RECOGNIZE THE FIRST PAGE OF 4943? |
| 02:28PM | 13 | A.   I DO IN GENERAL, NOT THE SPECIFIC PAGE, THOUGH. |
| 02:28PM | 14 | Q.   OKAY.  IN GENERAL, WHAT IS THIS? |
| 02:28PM | 15 | A.   IT LOOKS LIKE IT'S A TABLE OF CONTENTS FOR THE EXHIBITS |
| 02:29PM | 16 | THAT WE SUBMITTED TO CMS AS EVIDENCE. |
| 02:29PM | 17 | Q.   AS PART OF YOUR REVIEW AND RESPONSE TO THE 2567? |
| 02:29PM | 18 | A.   THAT'S CORRECT. |
| 02:29PM | 19 | Q.   OKAY.  DO YOU SEE THAT THERE'S A ROW -- THE THIRD ROW FROM |
| 02:29PM | 20 | THE BOTTOM WITH TAB NUMBER 3? |
| 02:29PM | 21 | A.   YES, I DO. |
| 02:29PM | 22 | Q.   OKAY.  AND WE CAN NOW TURN TO PAGE 9. |
| 02:29PM | 23 | DO YOU SEE THE HEADING PATIENT IMPACT ASSESSMENT? |
| 02:29PM | 24 | A.   I DO.  THE PRINT IS RATHER SMALL. |
| 02:29PM | 25 | Q.   OKAY.  WE'LL, WE'LL -- |

                                                                     5827
DAS DIRECT BY MR. LEACH

02:29PM   1    A.   WE'LL MANAGE.

02:29PM   2    Q.   AND IS THIS A PATIENT IMPACT ASSESSMENT THAT WAS PROVIDED

02:29PM   3    TO CMS FOLLOWING YOUR REVIEW OF THE 2567?

02:29PM   4    A.   I'LL NEED JUST A MOMENT TO REVIEW IT.

02:30PM   5    Q.   YES.  THANK YOU.

02:30PM   6         (PAUSE IN PROCEEDINGS.)

02:30PM   7              THE WITNESS:  YES, I BELIEVE SO.

02:30PM   8              MR. LEACH:  YOUR HONOR, I OFFER PAGE 1 AND 9 OF

02:30PM   9    4943.

02:30PM   10        (PAUSE IN PROCEEDINGS.)

02:30PM   11             MR. WADE:  JUST THE SAME OBJECTIONS, YOUR HONOR.

02:30PM   12             THE COURT:  ALL RIGHT.  THANK YOU.

02:30PM   13        THE COURT WILL OVERRULE THE OBJECTION.  THE FOUNDATION HAS

02:31PM   14   BEEN LAID.  I THINK THERE WAS A PREVIOUS 407 OBJECTION THAT WAS

02:31PM   15   MADE, AND THAT IS OVERRULED NOW BY THE TESTIMONY OF THE

02:31PM   16   WITNESS.  THE OBJECTION IS OVERRULED.

02:31PM   17        (GOVERNMENT'S EXHIBIT 4943, PAGES 1 AND 9, WAS RECEIVED IN

02:31PM   18   EVIDENCE.)

02:31PM   19             MR. LEACH:  THANK YOU, YOUR HONOR.  MAY WE DISPLAY,

02:31PM   20   YOUR HONOR?

02:31PM   21             THE COURT:  YES.

02:31PM   22   BY MR. LEACH:

02:31PM   23   Q.   JUST TO ORIENT THE JURY, DR. DAS, I WAS REFERENCING -- YOU

02:31PM   24   BELIEVE THIS WAS A DOCUMENT THAT WAS SUBMITTED TO CMS?

02:31PM   25   A.   YES, I BELIEVE SO.

DAS DIRECT BY MR. LEACH                                                  5828

02:31PM   1    Q.   OKAY.  AND WE WERE TALKING ABOUT THE THIRD ROW.  TAB 3

02:31PM   2    THERE'S SOME REFERENCE TO TPS 3.5 EDISONS AND SOME CERTAIN

02:31PM   3    FINDINGS IN THE 2567.

02:31PM   4         AND DO YOU SEE THAT?

02:31PM   5    A.   YES, I DO.

02:31PM   6    Q.   OKAY.  AND IF WE CAN PLEASE DISPLAY PAGE 9.  AND LET'S

02:32PM   7    HIGHLIGHT THE FIRST HALF OR BLOW UP, ENLARGE THE FIRST TOP HALF

02:32PM   8    OF THE DOCUMENT RIGHT THERE ALL OF THE WAY DOWN TO PATIENT

02:32PM   9    IMPACT.

02:32PM   10        THAT'S FINE, MS. HOLLIMAN.  THANK YOU.

02:32PM   11        IS THIS SOMETHING THAT YOU HAD A HAND IN DRAFTING,

02:32PM   12   DR. DAS?

02:32PM   13   A.   I DON'T REMEMBER THE SPECIFIC DOCUMENT, BUT IT DOES LOOK

02:32PM   14   FAMILIAR.

02:32PM   15   Q.   OKAY.  YOU RECALL WORKING ON PATIENT IMPACT ASSESSMENT IN

02:32PM   16   RESPONSE TO 2567?

02:32PM   17   A.   YES, INDEED.

02:32PM   18   Q.   AND WAS THAT SOMETHING THAT YOU FELT YOU HAD TO DO AS THE

02:32PM   19   LAB DIRECTOR?

02:32PM   20   A.   THAT'S CORRECT.

02:32PM   21   Q.   OKAY.  UP AT THE TOP THERE'S A LIST OF DEFICIENCIES AND

02:32PM   22   THERE'S SOME D TAGS, D5403, D5481, D5791, D6102, AND D6115.

02:32PM   23        DO YOU SEE THOSE?

02:32PM   24   A.   I DO.

02:32PM   25   Q.   AND WHAT ARE THOSE?

DAS DIRECT BY MR. LEACH                                              5829

02:32PM   1    A.   THOSE APPEAR TO BE THE SPECIFIC D TAGS REFERENCED IN THIS

02:33PM   2    PATIENT IMPACT ASSESSMENT.

02:33PM   3    Q.   AND THOSE D TAGS ORIGINATE FROM THE 2567?

02:33PM   4    A.   THAT'S CORRECT.

02:33PM   5    Q.   AND EARLIER WE WERE LOOKING AT A D TAG FOR 2571, FINDING

02:33PM   6    NUMBER 3?

02:33PM   7    A.   I BELIEVE WE WERE.

02:33PM   8    Q.   AND SO DO YOU BELIEVE THAT THIS PATIENT IMPACT ASSESSMENT

02:33PM   9    RELATES TO THE PORTION OF THE CMS REPORT THAT WE JUST LOOKED

02:33PM  10    AT?

02:33PM  11    A.   I EXPECT SO.

02:33PM  12    Q.   OKAY.   THIS SAYS, "THE LABORATORY AGREES THAT ITS

02:33PM  13    DESCRIPTION OF PRIOR ANALYSIS WERE LACKING SUFFICIENT DETAIL TO

02:33PM  14    EXPLAIN THE CONCLUSIONS SUBMITTED IN THE RESPONSE."

02:33PM  15         IS THAT A REFERENCE TO PRIOR RESPONSES THAT THERANOS HAD

02:33PM  16    MADE TO CMS?

02:33PM  17    A.   I BELIEVE SO.

02:33PM  18    Q.   IT THEN READS, "UPON A REVIEW OF THAT RESPONSE, INCLUDING

02:33PM  19    THE ENTIRETY OF THE PRIOR ANALYSIS OF TPS 3.5 QC DATA AND

02:33PM  20    PATIENT TEST RESULT DISTRIBUTIONS FOR ALL ANALYTES DURING THE

02:34PM  21    TIME PERIOD EXAMINED, THE LABORATORY MADE NOTE OF POOR QC

02:34PM  22    PERFORMANCE THROUGHOUT."

02:34PM  23         IS THAT AN ACCURATE STATEMENT?

02:34PM  24    A.   THAT IS AN ACCURATE STATEMENT.

02:34PM  25    Q.   AND THE PATIENT TEST RESULT DISTRIBUTIONS THAT YOU'RE

5830

```
02:34PM   1    TALKING ABOUT THERE, DID THAT REFER TO ALL TESTS RUN ON THE
02:34PM   2    EDISON DEVICE?
02:34PM   3    A.   YES, ALL TESTS.
02:34PM   4    Q.   OKAY.  AND DO YOU HAVE A MEMORY OF HOW MANY TESTS WERE RUN
02:34PM   5    ON THE EDISON DEVICE?
02:34PM   6    A.   I BELIEVE IT WAS A TOTAL OF 12.
02:34PM   7    Q.   OKAY.  TWELVE TESTS RUN ON THE EDISON DEVICE THROUGHOUT
02:34PM   8    THE LIFE OF THE CLIA LAB?
02:34PM   9    A.   THAT IS MY UNDERSTANDING.
02:34PM  10    Q.   IT THEN SAYS, "THEREFORE, LABORATORY CONDUCTED AN EXPANDED
02:34PM  11    RETROSPECTIVE ANALYSIS FOR 2014 AND 2015 QC DATA."
02:34PM  12         WHAT DOES THAT MEAN?
02:34PM  13    A.   IN GENERAL THAT MEANS WE EXPAND THE RANGE OF THE QC DATA
02:34PM  14    THAT WE LOOKED AT BECAUSE WE IDENTIFIED ISSUES WITH THE
02:34PM  15    ORIGINAL DATA, MEANING WE WANTED TO SEE HOW FAR THE POOR
02:35PM  16    PERFORMANCE EXTENDED.
02:35PM  17    Q.   YOU WANTED TO LOOK AT A BROADER UNIVERSE?
02:35PM  18    A.   YES, THAT'S ONE WAY TO DESCRIBE IT.
02:35PM  19    Q.   OKAY.  AND THAT'S WHAT YOU'RE REPORTING TO CMS?
02:35PM  20    A.   YES, THAT'S CORRECT.
02:35PM  21    Q.   OKAY.  AFTER EXTENSIVE DIALOGUE WITH MS. HOLMES?
02:35PM  22    A.   I DON'T KNOW HOW TO DESCRIBE.
02:35PM  23    Q.   HOW ABOUT AFTER SOME DIALOGUE WITH MS. HOLMES?
02:35PM  24    A.   YES, SOME DIALOGUE.
02:35PM  25    Q.   IT THEN SAYS, "THE LABORATORY NOTED MULTIPLE AND RECURRENT
```

5831
DAS DIRECT BY MR. LEACH

02:35PM   1    TIME PERIODS (ACROSS ALL ANALYTES TESTED) OF ABRUPT SHIFTS IN

02:35PM   2    QC TARGET MEANS."

02:35PM   3         WHAT DOES THAT MEAN?

02:35PM   4    A.   PLEASE GIVE A MINUTE TO REVIEW THAT.

02:35PM   5         (PAUSE IN PROCEEDINGS.)

02:35PM   6             THE WITNESS:  SO THAT FIRST PART MEANS THAT THE

02:35PM   7    AVERAGE VALUES OF QUALITY CONTROL, THE TARGETS THAT WE WERE

02:36PM   8    TRYING TO REACH, OR THAT THE LABORATORY WAS TARGETING, WERE

02:36PM   9    BEING SHIFTED UNEXPLAINEDLY.

02:36PM  10    BY MR. LEACH:

02:36PM  11    Q.   "HIGH RATES OF 1-2S QC RULE FAILURES."

02:36PM  12         WHAT IS MEANT BY "1-2S"?

02:36PM  13    A.   SO THIS 1-2S ACTUALLY REFERS TO THE SAME QC RULE FAILURES

02:36PM  14    THAT THE CMS INSPECTORS WERE NOTING IN THAT D TAG.  I BELIEVE

02:36PM  15    IT WAS 5791, I BELIEVE.  SO THEY CALL IT A --

02:36PM  16    Q.   AND THE 1-2S, THAT'S STANDARD DEVIATIONS?

02:36PM  17    A.   YES.  SO THE 2S REFERS TO 2 SD ANALOGOUS TO WHAT IS BEING

02:36PM  18    REFERRED TO IN THE D TAG.

02:36PM  19    Q.   AND "QC CV'S FAR EXCEEDING LIMITS FOR A STABLE TESTING

02:36PM  20    PROCESS."

02:36PM  21         WHAT DID THAT MEAN?

02:36PM  22    A.   TO SIMPLIFY THAT ONE A BIT, IT JUST MEANS THAT THERE WAS A

02:37PM  23    LOT OF IMPRECISION NOTED.

02:37PM  24    Q.   AND IS IMPRECISION DESIRABLE OR UNDESIRABLE?

02:37PM  25    A.   UNDESIRABLE.

DAS DIRECT BY MR. LEACH                                                5832

02:37PM   1      Q.   LET'S ZOOM OUT, MS. HOLLIMAN, AND LOOK AT THE NEXT TWO

02:37PM   2      PARAGRAPHS IN THIS PATIENT IMPACT ASSESSMENT.

02:37PM   3           DO YOU SEE WHERE IT SAYS PATIENT IMPACT, DR. DAS?

02:37PM   4      A.   YES, I DO.

02:37PM   5      Q.   AND THIS READS, "ALTHOUGH THE MAGNITUDE OF QC DEVIATIONS

02:37PM   6      FROM TARGET MEANS DOES NOT NECESSARILY REFLECT THE EXACT NATURE

02:37PM   7      AND MAGNITUDE OF BIAS ON PATIENT RESULTS BECAUSE OF DIFFERENCES

02:37PM   8      IN MATRICES, THE QC FAILURES IDENTIFIED BY THIS COMPREHENSIVE

02:37PM   9      RETROSPECTIVE ANALYSIS REFLECT A GLOBAL AND LONG-TERM FAILURE

02:37PM   10     OF THE QUALITY CONTROL PROGRAM FOR THIS INSTRUMENT, AS WELL AS

02:37PM   11     FAILURES OF RELATED QUALITY ASSURANCE PROCEDURES THAT SHOULD

02:37PM   12     HAVE ALERTED THE LABORATORY TO CORRECT SUCH AN UNSTABLE

02:37PM   13     PROCESS."

02:37PM   14          WHY DID YOU INCLUDE THIS IN THE PATIENT IMPACT PORTION OF

02:38PM   15     THIS?

02:38PM   16     A.   FIRST OF ALL, THAT'S QUITE A MOUTHFUL.

02:38PM   17     Q.   YES.

02:38PM   18     A.   THIS WAS JUST TO DESCRIBE OUR FINDINGS.

02:38PM   19     Q.   AND "THE LABORATORY HAS CONCLUDED THAT THERE IS A POSSIBLE

02:38PM   20     PATIENT IMPACT FOR EVERY TEST REPORTED FROM THE LABORATORY'S

02:38PM   21     TPS 3.5 INSTRUMENTS."

02:38PM   22          IS THAT WHAT YOU COMMUNICATED TO CMS?

02:38PM   23     A.   YES, I BELIEVE SO.

02:38PM   24     Q.   AND WAS THAT YOUR VIEW AT THE TIME?

02:38PM   25     A.   YES, IT WAS.

DAS DIRECT BY MR. LEACH                                        5833

02:38PM   1      Q.   IN CORRECTIVE ACTION IT READS, "THE FRACTION OF PATIENT

02:38PM   2      RESULTS TRULY IMPACTED, AND THE NATURE AND MAGNITUDE OF ANY

02:38PM   3      EFFECT ARE UNKNOWN.  OUT OF AN ABUNDANCE OF CAUTION, THE

02:38PM   4      LABORATORY HAS VOIDED ALL PATIENT TEST RESULTS REPORTED FROM

02:38PM   5      THE TPS 3.5 INSTRUMENTS."

02:38PM   6           DO YOU SEE THAT?

02:38PM   7      A.   I DO SEE THAT.

02:38PM   8      Q.   OKAY.  AND DID YOU, IN FACT, VOID ALL OF THE TEST RESULTS

02:38PM   9      FROM THE EDISON DEVICE FROM THE 2014, 2015 TIME PERIOD?

02:39PM  10      A.   YES, WE DID SO.

02:39PM  11      Q.   OKAY.  AND THEN IT SAYS, "MANY CORRECTED REPORTS HAVE BEEN

02:39PM  12      TRANSMITTED AND THE REMAINDER ARE BEING TRANSMITTED.

02:39PM  13      TRANSMISSION WILL BE COMPLETE BY MARCH 31ST, 2016."

02:39PM  14           DO YOU SEE THAT LANGUAGE?

02:39PM  15      A.   YES, I DO.

02:39PM  16      Q.   DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT HOW TO

02:39PM  17      COMMUNICATE THE VOIDING OF THE TESTS TO CMS AND OTHER

02:39PM  18      CONSTITUENCIES?

02:39PM  19      A.   COULD YOU BE MORE SPECIFIC.

02:39PM  20      Q.   DID YOU HAVE CONVERSATIONS WITH MS. HOLMES ABOUT HOW TO

02:39PM  21      COMMUNICATE THERANOS'S VOIDING OF THE TESTS?

02:39PM  22      A.   YES, WE DID.

02:39PM  23      Q.   DESCRIBE THE SUBSTANCE OF WHAT WAS SAID?

02:39PM  24      A.   I DESCRIBED OUR RATIONALE FOR VOIDING THESE TESTS WHICH

02:39PM  25      RELIED ON SOME OF THE THINGS THAT WE DISCUSSED EARLIER, WHICH

DAS DIRECT BY MR. LEACH                                                    5834

02:39PM   1      WAS THE VALIDATION DATA AS WELL AS THE QC DATA THAT IS

02:39PM   2      REFERENCED HERE, AS WELL AS THE PATIENT TEST RESULTS THAT WERE

02:40PM   3      REFERENCED HERE, AND IT WAS -- I CAN'T REMEMBER ALL OF THE

02:40PM   4      CONSTITUENTS AT THAT MEETING, BUT I TRIED TO PRESENT IT IN A

02:40PM   5      MORE UNDERSTANDABLE FORMAT.

02:40PM   6          SO I DESCRIBED THE ISSUE IN TERMS OF THE VALIDATION DATA

02:40PM   7      IN DESCRIBING THAT THESE INSTRUMENTS APPARENTLY WERE NOT

02:40PM   8      PERFORMING FROM THE VERY BEGINNING.

02:40PM   9      Q.   AND DID MS. HOLMES MAKE ANY STATEMENTS TO YOU ABOUT

02:40PM  10      WHETHER WHAT YOU JUST SAID SHOULD BE COMMUNICATED TO CMS OR

02:40PM  11      WHETHER SOMETHING ELSE SHOULD BE COMMUNICATED?

02:40PM  12      A.   YES.   I RECALL HER OFFERING AN ALTERNATIVE EXPLANATION.

02:40PM  13      Q.   TELL US ABOUT THAT, PLEASE.

02:40PM  14      A.   I DON'T REMEMBER THE EXACT WORDS, BUT SHE POINTED TO ONE

02:40PM  15      OF HER DEPUTIES AND PROVIDED AN ALTERNATIVE EXPLANATION, WHICH

02:40PM  16      WAS ALONG THE LINES OF IT NOT BEING AN INSTRUMENT FAILURE

02:40PM  17      PER SE BUT RATHER THE, QUOTE, "A FAILURE OF THE QUALITY CONTROL

02:40PM  18      AND QUALITY ASSURANCE PROGRAM AROUND IT."

02:41PM  19      Q.   AND DID YOU THINK IT WAS A COMPLETE EXPLANATION TO

02:41PM  20      DESCRIBE IT AS JUST A QUALITY CONTROL ISSUE?

02:41PM  21      A.   NO, SIR.

02:41PM  22      Q.   HOW COME?

02:41PM  23      A.   BECAUSE THE VALIDATION DATA HAD NO BEARING ON THE QUALITY

02:41PM  24      CONTROL OR QUALITY ASSURANCE PROGRAM.

02:41PM  25      Q.   AFTER THE TESTS WERE VOIDED, DR. DAS, DID THERANOS EVER

DAS DIRECT BY MR. LEACH                                              5835

02:41PM   1    RESUME TESTING ON THE 3.5 DEVICE IN THE CLIA?

02:41PM   2            THE COURT:  I'M SORRY.

02:41PM   3            THE WITNESS:  COULD YOU REPEAT THE QUESTION, PLEASE.

02:41PM   4    BY MR. LEACH:

02:41PM   5    Q.   AFTER THE VOIDING OF THE TESTS AT SOME POINT IN MARCH OR

02:41PM   6    APRIL OF 2016, DID THERANOS EVER RESUME TESTING ON THE 3.5 IN

02:41PM   7    THE CLIA LAB?

02:41PM   8    A.   NO, NOT TO MY KNOWLEDGE.

02:41PM   9    Q.   OKAY.  DID YOU EVER RECOMMEND THAT TESTING BE RESUMED IN

02:41PM  10    THE CLIA LAB?

02:41PM  11    A.   NO.

02:41PM  12    Q.   AND WHY WAS THAT?

02:41PM  13    A.   I FOUND THESE INSTRUMENTS TO BE UNSUITABLE FOR CLINICAL

02:41PM  14    USE.

02:42PM  15            MR. LEACH:  YOUR HONOR, I NOTE THE TIME.  THERE'S

02:42PM  16    SOME ADDITIONAL PORTIONS OF THE CMS REPORT THAT I WANT TO GO

02:42PM  17    THROUGH, BUT I THINK I MAY BENEFIT FROM A BREAK TO WORK THROUGH

02:42PM  18    SOME OF THE REDACTIONS, AND THEN I THINK I'LL TENDER THE

02:42PM  19    WITNESS.

02:42PM  20            THE COURT:  ALL RIGHT.  LET'S TAKE A BREAK NOW.

02:42PM  21    SHOULD WE TAKE 30 MINUTES?  IS 30 MINUTES GOOD?  LET'S DO THAT.

02:42PM  22    WE'LL TAKE A 30 MINUTE BREAK, LADIES AND GENTLEMEN, AND THEN

02:42PM  23    WE'LL FINISH OUR DAY.  THANK YOU.

02:42PM  24        YOU CAN STAND DOWN, SIR, AND COME BACK IN ABOUT

02:42PM  25    30 MINUTES.

UNITED STATES COURT REPORTERS

DAS DIRECT BY MR. LEACH

02:42PM    1                    THE WITNESS:  THANK YOU, YOUR HONOR.

02:42PM    2                    THE COURT:  YOU'RE WELCOME.

02:42PM    3              (JURY OUT AT 2:42 P.M.)

02:43PM    4                    THE COURT:  PLEASE BE SEATED.  THANK YOU.

02:43PM    5         DR. DAS, YOU CAN STAND DOWN IF YOU WOULD LIKE.

02:43PM    6                    THE WITNESS:  THANK YOU.

02:43PM    7                    THE CLERK:  YOU CAN GO OUTSIDE OF THE COURTROOM

02:43PM    8         PROBABLY.

02:43PM    9                    THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT

02:43PM   10         THAT OUR JURY HAS LEFT FOR OUR BREAK, AND THE WITNESS HAS LEFT

02:43PM   11         THE COURTROOM.

02:43PM   12            MR. LEACH, YOU WANT A BREAK TO DO SOME REDACTIONS I THINK

02:43PM   13         YOU SAID?

02:43PM   14                    MR. LEACH:  YES, YOUR HONOR.  I THINK THERE ARE TWO

02:43PM   15         MORE PORTIONS OF THE REPORT THAT I'D LIKE TO ADMIT THROUGH THIS

02:43PM   16         WITNESS ON THE BASIS THAT WE DISCUSSED EARLIER.  I'D LIKE TO

02:43PM   17         WORK THROUGH THE REDACTIONS AND THEN I WILL BE COMPLETE.

02:43PM   18                    THE COURT:  ALL RIGHT.  TO THE EXTENT THAT YOU FEEL

02:43PM   19         COMFORTABLE, MAYBE YOU CAN SHARE THE REDACTIONS WITH

02:44PM   20         MR. WADE --

02:44PM   21                    MR. LEACH:  YES.

02:44PM   22                    THE COURT:  -- SO WE CAN TAKE CARE OF ANY OBJECTIONS

02:44PM   23         OR ANYTHING IF WE CAN, IF THAT'S POSSIBLE.

02:44PM   24            OKAY.  THANK YOU.

02:44PM   25                    MR. LEACH:  THANK YOU.

DAS DIRECT BY MR. LEACH                                                    5837

02:44PM   1              MR. WADE:  YOUR HONOR, IF I MIGHT BRIEFLY?

02:44PM   2          I DID JUST WANT TO RAISE AND REITERATE, THE POINT THAT WE

02:44PM   3   RAISED BEFORE ABOUT THE AIDING AND ABETTING LIABILITY AND WHICH

02:44PM   4   IS NOWHERE AT ISSUE IN THIS CASE, AND WE RAISED IT AND

02:44PM   5   SPECIFICALLY RAISED THE IDEA OF FOCUSSING ON THAT ISSUE.

02:44PM   6          IT'S MY UNDERSTANDING FROM THE COLLOQUY THIS MORNING THAT

02:44PM   7   MR. LEACH WAS NOT GOING TO SPECIFICALLY FOCUS ON THAT.

02:44PM   8          INSTEAD, IN THE EXAMINATION HE DID EXACTLY THAT.  HE WENT

02:44PM   9   EXACTLY TO THAT PROVISION.  HE FOCUSSED ON THAT PROVISION,

02:44PM  10   WHICH IS NOT AT ISSUE, BUT CREATES THE IMPLICATION WITH THIS

02:44PM  11   JURY THAT IT IS AT ISSUE.

02:44PM  12          AND SO WE WOULD ASK THAT THE CURATIVE INSTRUCTION -- THAT

02:44PM  13   THE INSTRUCTION THAT WE PROVIDE BE SUBMITTED AND AN INSTRUCTION

02:44PM  14   BE GIVEN THAT THAT PROVISION IS NOT RELEVANT TO THIS MATTER.

02:45PM  15          I UNDERSTAND THAT WE HAVE EXTENSIVELY QUESTIONED WITNESSES

02:45PM  16   ON REGULATORY RESPONSIBILITIES.  ALL OF THOSE REGULATORY

02:45PM  17   RESPONSIBILITIES ARE RELEVANT TO THE ACTIONS IN THE CASE.

02:45PM  18          FOCUSSING ON THAT PROVISION AND CREATING THE IMPRESSION

02:45PM  19   THAT THERE IS SOME LIABILITY ON THE PART OF THE OWNER FOR

02:45PM  20   AIDING AND ABETTING A CLIA VIOLATION WHEN THAT IS NOT AN ISSUE

02:45PM  21   IN THIS CASE IS INCREDIBLY PREJUDICIAL.  SO WE --

02:45PM  22              THE COURT:  I APPRECIATE THAT, AND WE DID DISCUSS

02:45PM  23   THIS.  THIS DOCUMENT WAS PUT IN EVIDENCE, I THINK BY THE

02:45PM  24   DEFENSE, AND AS I INDICATED, IT'S FAIR GAME TO EXAMINE ON WHAT

02:45PM  25   IT IS.

DAS DIRECT BY MR. LEACH                                                    5838

02:45PM  1        I THINK WHAT WE TALKED ABOUT THIS MORNING WAS THE

02:45PM  2    GOVERNMENT WOULD NOT BE PERMITTED TO ARGUE TO THE JURY IN ANY

02:45PM  3    WAY THAT THIS IS AN AIDING AND ABETTING CASE BASED ON A

02:45PM  4    REGULATORY SCHEME.

02:45PM  5        MR. LEACH?

02:45PM  6            MR. LEACH:  THAT IS CORRECT, YOUR HONOR, AND I DID

02:45PM  7    NOT ARGUE THAT.  I DREW ATTENTION TO THE PROVISION.  BUT I IN

02:46PM  8    NO WAY SUGGESTED THAT MS. HOLMES AIDED AND ABETTED A CLIA

02:46PM  9    VIOLATION.

02:46PM  10       I WAS BRINGING SOMETHING TO THE JURY'S ATTENTION THAT IS

02:46PM  11   IN EVIDENCE THAT IS A POSSIBLE CONSEQUENCE AFFECTING OWNERS AND

02:46PM  12   OPERATORS OF ALL LABORATORIES, AND I DON'T THINK THERE WAS

02:46PM  13   ANYTHING INAPPROPRIATE WITH THE GOVERNMENT'S EXAMINATION ON

02:46PM  14   THAT POINT.

02:46PM  15           THE COURT:  I THINK THAT -- AND I UNDERSTAND YOUR

02:46PM  16   CONCERN, THE DEFENSE CONCERN ABOUT THAT.

02:46PM  17       MY SENSE IS I WILL -- AND YOU'LL DRAFT IF YOU HAVEN'T

02:46PM  18   ALREADY.  YOU SUBMITTED SOMETHING, BUT I DON'T THINK THAT'S

02:46PM  19   APPROPRIATE TO GIVE THAT NOW.  I THINK IT'S APPROPRIATE TO GIVE

02:46PM  20   IT WITH FINAL INSTRUCTIONS.

02:46PM  21       I THINK IF I GIVE AN INSTRUCTION NOW, IT WILL ONLY

02:46PM  22   HIGHLIGHT IT.

02:46PM  23           MR. WADE:  I'M OKAY WITH HIGHLIGHTING THIS ISSUE,

02:46PM  24   YOUR HONOR, BECAUSE I THINK IT CREATES -- THE IMPRESSION IS

02:46PM  25   RIPE IN THE AIR.

```
02:46PM   1        I UNDERSTAND THERE'S EVIDENCE IN THE CASE, BUT THERE'S

02:46PM   2   QUESTIONING OVER OBJECTION ABOUT A PROVISION THAT IS NOT

02:46PM   3   RELEVANT IN THE CASE AND FOCUSSING -- THERE'S NO EVIDENTIARY

02:46PM   4   VALUE IN DOING THAT, AND THERE'S A HIGH DEGREE OF PREJUDICE.

02:47PM   5   SO WE WOULD AGAIN REQUEST THAT THE INSTRUCTION BE GIVEN.

02:47PM   6        WE THINK IT'S BEEN PUT BEFORE THE JURY IN A WAY THAT WAS

02:47PM   7   INCONSISTENT WITH WHAT COUNSEL HAD REPRESENTED WOULD BE DONE,

02:47PM   8   AND WE THINK IT'S INCREDIBLY PREJUDICIAL.  SO WE THINK THE ONLY

02:47PM   9   REMEDY FOR US AT THIS POINT IS TO GIVE THE INSTRUCTION NOW TO

02:47PM  10   MAKE SURE WE AVOID THAT CONFUSION.

02:47PM  11             THE COURT:  WELL, THANK YOU FOR THAT.

02:47PM  12        I DID -- PART OF OUR COLLOQUY THIS MORNING WAS THAT I

02:47PM  13   RECOGNIZED THE CROSS-EXAMINATION OF THE TWO PREVIOUS LAB

02:47PM  14   DIRECTORS AND THERE WAS EXTENSIVE AND MULTIPLE QUESTIONS POSED

02:47PM  15   TO THOSE DIRECTORS REGARDING YOU'RE RESPONSIBLE, YOU'RE

02:47PM  16   RESPONSIBLE.

02:47PM  17        AND THAT'S APPROPRIATE QUESTIONS.  AND I THINK IT'S

02:47PM  18   LEGALLY CORRECT, THEY WERE RESPONSIBLE.

02:47PM  19        AS I OBSERVED, SHOWING WHAT WAS ALREADY IN EVIDENCE AND

02:47PM  20   TALKING ABOUT THAT MIGHT EQUATE TO A BALANCING OF, WELL, THERE

02:47PM  21   ARE OTHER REGULATIONS ABOUT THAT.

02:47PM  22        BUT I AGREE WITH YOU, AND I THINK MR. LEACH AGREES WITH

02:48PM  23   YOU AND ME, THAT THIS IS NOT GOING TO BE ARGUED AT ALL AS ANY

02:48PM  24   EVIDENCE FOR CONVICTION IN THIS CASE.

02:48PM  25        I DON'T THINK THAT -- AS I SAY, I DON'T THINK A JURY
```

DAS DIRECT BY MR. LEACH                                                    5840

```
02:48PM   1    INSTRUCTION RIGHT NOW WILL IN ANY WAY ASSUAGE THE CONCERNS THAT

02:48PM   2    YOU HAVE, BUT I THINK IT WOULD CAUSE MORE DAMAGE TO DRAW

02:48PM   3    ATTENTION TO THAT.  THAT'S JUST MY OPINION NOW.  I JUST THINK

02:48PM   4    THAT DRAWING ATTENTION TO IT NOW WILL PERHAPS CAUSE THEM TO

02:48PM   5    THINK ABOUT IT IN AN UNTOWARD MANNER.

02:48PM   6        MR. LEACH, DO YOU WANT TO BE HEARD ON THIS?

02:48PM   7            MR. LEACH:  I DO BRIEFLY, YOUR HONOR.

02:48PM   8        I DON'T MEAN TO PROLONG THIS, BUT THE FACT THAT OWNERS AND

02:48PM   9    OPERATORS FACE REVOCATION OF THEIR CLIA CERTIFICATION IF AN

02:48PM  10    EMPLOYEE OR ANYBODY WITHIN THE LAB VIOLATES OR AIDS AND ABETS A

02:48PM  11    CLIA VIOLATION IS A MOTIVE TO MAINTAIN A GOOD LAB, AND ALSO

02:49PM  12    REALLY SCARY IF YOU'RE BEING TOLD THAT YOU'RE NOT MAINTAINING A

02:49PM  13    GOOD LAB.

02:49PM  14        SO IT'S THE EXISTENCE OF THE REGULATION THAT IS RELEVANT.

02:49PM  15        AND IT'S ALSO RELEVANT TO CONFRONT THE FALSE SUGGESTION

02:49PM  16    THAT -- AND I DON'T CAST ASPERSION ON MY COLLEAGUE WITH THAT,

02:49PM  17    BUT THERE IS AN IMPRESSION, THROUGH THE EXAMINATION OF

02:49PM  18    DR. ROSENDORFF, THAT ONLY THE LAB DIRECTOR HAS ANY

02:49PM  19    RESPONSIBILITY.

02:49PM  20        SO WE ARE NOT ARGUING THAT MS. HOLMES AIDED AND ABETTED A

02:49PM  21    VIOLATION.

02:49PM  22        BUT WE ARE SAYING THAT THIS REGULATION EXISTS AND IT'S

02:49PM  23    SOMETHING THAT OWNERS AND OPERATORS IN GENERAL ARE AFFECTED AND

02:49PM  24    MOTIVATED BY, AND I THINK THAT'S FAIR.

02:49PM  25            THE COURT:  I THINK THE WAY IT WAS PRESENTED,
```

DAS DIRECT BY MR. LEACH                                                5841

02:49PM   1      MR. WADE, WAS THAT THE LABORATORY COULD LOSE THEIR LICENSE, AND

02:49PM   2   THAT'S SOMETHING THAT COULD HAPPEN.

02:49PM   3      IT, IT DIDN'T TALK ABOUT CRIMINAL LIABILITY.  IT'S NOT A

02:49PM   4   CRIMINAL STATUTE.  IT'S A CIVIL STATUTE THAT HAS OTHER

02:49PM   5   RAMIFICATIONS, AND I CONTINUE TO BE COGNIZANT OF THE FACT THAT

02:50PM   6   EVIDENCE OF A VIOLATION OF A CIVIL STATUTE CANNOT AND WILL NOT

02:50PM   7   BE PERMITTED TO BE ARGUED FOR A CONVICTION OF A CRIMINAL

02:50PM   8   STATUTE.  THAT'S INAPPROPRIATE, AND WE ALL KNOW THAT.

02:50PM   9      THE STATUTE THAT WAS READ TALKS ABOUT LICENSE, THE LOSS OF

02:50PM   10   A LICENSE, AND THAT -- I THINK THAT'S A DIFFERENT, A DIFFERENT

02:50PM   11   FACTOR.

02:50PM   12      MR. WADE:  NO.  TO BE SURE, IT IS, YOUR HONOR.  MY

02:50PM   13   ONLY POINT IS THAT THERE'S ABSOLUTELY NO EVIDENCE OR ALLEGATION

02:50PM   14   IN THIS CASE THAT MY CLIENT AIDED AND ABETTED A CLIA VIOLATION.

02:50PM   15      SO BY PUTTING THAT UP THERE, THEY'RE CREATING THE

02:50PM   16   IMPRESSION THAT MY CLIENT DID.  THAT'S WHY I SOUGHT TO PREVENT

02:50PM   17   THE ADMISSION OF IT.

02:50PM   18      IT'S DIFFERENT FROM QUESTIONS TO A LABORATORY DIRECTOR

02:50PM   19   ABOUT DO YOU HAVE THIS RESPONSIBILITY AND DO YOU HAVE THAT

02:50PM   20   RESPONSIBILITY WITHIN THE LAB?  DO THE REGULATIONS SAY YOU HAVE

02:50PM   21   ULTIMATE RESPONSIBILITY?

02:50PM   22      BY THE WAY, THE ANSWER TO ALMOST ALL OF THOSE QUESTIONS

02:50PM   23   WAS YES, AND IT WAS RELEVANT BECAUSE THOSE ARE THE ONES WHO ARE

02:50PM   24   DISPATCHING THE OBLIGATIONS WITHIN THE LABORATORY.

02:51PM   25      OUR -- MY CLIENT DOESN'T HAVE THE SAME RESPONSIBILITY.  IF

                                                                                    5842
DAS DIRECT BY MR. LEACH

02:51PM   1    ANYTHING, SHE'S EFFECTIVELY STRICTLY LIABLE WITHIN THE

02:51PM   2    REGULATORY SCHEME FOR THE ACTIONS OF OTHERS.

02:51PM   3         SO THEY'RE NOT REALLY ANALOGOUS IN THE SENSE THAT SHE

02:51PM   4    DOESN'T HAVE THAT -- HER RESPONSIBILITY IS TO HIRE A LAB

02:51PM   5    DIRECTOR -- OR THE COMPANY'S RESPONSIBILITY IS TO HIRE A LAB

02:51PM   6    DIRECTOR, AND THEN IT'S THE LAB DIRECTOR'S RESPONSIBILITY TO

02:51PM   7    DISPENSE THOSE OBLIGATIONS.

02:51PM   8         SO I THINK IT'S A FALSE COMPARISON.  AND TO CREATE THE

02:51PM   9    IMPRESSION WITH THIS JURY THAT THERE'S SOME AIDING AND ABETTING

02:51PM  10    I THINK IS INCREDIBLY PREJUDICIAL.

02:51PM  11              THE COURT:  I UNDERSTAND THAT.

02:51PM  12         AND I RECALL ONE OF THE LAST QUESTIONS THAT YOU ASKED

02:51PM  13    DR. ROSENDORFF WAS ABOUT HIS ISSUES SUBSEQUENT TO EMPLOYMENT AT

02:51PM  14    THE COMPANY AND THE FACT THAT HE WAS -- POTENTIALLY ONE OF THE

02:51PM  15    RAMIFICATIONS OF THAT CONDUCT COULD BE THE LOSS OF A LICENSE.

02:51PM  16    I THINK THAT'S WHAT YOU ASKED HIM AT THE LAST PART, RIGHT.

02:52PM  17         AND SO --

02:52PM  18              MR. WADE:  THAT WENT TO BIAS, YOUR HONOR.

02:52PM  19              THE COURT:  RIGHT.  RIGHT.

02:52PM  20         BUT THE LOSS OF A LICENSE IS A BIG THING FOR A LAB

02:52PM  21    DIRECTOR.  I THINK WE CAN ALL AGREE WITH THAT.  THIS IS THE

02:52PM  22    REGULATION, ONE OF THE REGULATIONS THAT POINTS TO THAT.

02:52PM  23         BUT I TAKE YOUR POINT.  I DON'T THINK IT'S NECESSARY TO

02:52PM  24    GIVE THE INSTRUCTION NOW.

02:52PM  25         MY SENSE IS THAT WE STILL HAVE A LOT OF EVIDENCE TO GO.  I

DAS DIRECT BY MR. LEACH

02:52PM  1    KNOW THE JURY IS TAKING NOTES.  THEY'RE BEING ATTENTIVE OF

02:52PM  2    THIS.

02:52PM  3        BUT THIS IS NOT GOING TO BE ARGUED IN ANY WAY, BE

02:52PM  4    PERMITTED TO BE ARGUED WHY THE GOVERNMENT FEELS IN THEIR

02:52PM  5    CLOSING ARGUMENT THAT THE JURY SHOULD REACH A CONVICTION AT

02:52PM  6    ALL.

02:52PM  7        AND IF YOU WANT TO PREPARE AN INSTRUCTION FOR FINAL

02:52PM  8    INSTRUCTIONS, I'LL LOOK AT IT.

02:52PM  9        I INTEND TO GIVE ONE THAT IS PROPHYLACTIC TO THAT EXTENT,

02:52PM  10   MR. LEACH.  AND YOUR TEAM CAN PUT SOMETHING TOGETHER, TOO, IF

02:52PM  11   YOU WOULD LIKE, BUT THERE WILL BE AN INSTRUCTION THAT TALKS

02:52PM  12   ABOUT THIS, ASSUMING YOU WANT IT TO BE GIVEN AT THAT POINT.

02:52PM  13       SO WE'LL TALK ABOUT IT THEN.

02:53PM  14            MR. WADE:  OKAY.  THANK YOU, YOUR HONOR.

02:53PM  15            MR. LEACH:  THANK YOU, YOUR HONOR.

02:53PM  16            THE COURT:  ALL RIGHT.  THANK YOU.

02:53PM  17       (RECESS FROM 2:53 P.M. UNTIL 3:22 P.M.)

03:22PM  18       (JURY IN AT 3:22 P.M.)

03:22PM  19            THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

03:22PM  20   ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

03:22PM  21   MS. HOLMES IS PRESENT.

03:22PM  22       DR. DAS IS ON THE STAND.

03:22PM  23       MR. LEACH?

03:22PM  24            MR. LEACH:  THANK YOU, YOUR HONOR.

03:22PM  25   Q.   GOOD AFTERNOON, DR. DAS.

5844
DAS DIRECT BY MR. LEACH

03:22PM  1        I'D LIKE TO GO BACK TO EXHIBIT 4621, AND I THINK WE'RE NOW

03:22PM  2    PREPARED TO DISPLAY THE PORTIONS OF 51, 52, 53, AND 54 THAT

03:22PM  3    WERE ADMITTED BUT WE WERE UNABLE TO REDACT IN THE MOMENT.

03:23PM  4            THE COURT:  OH MY GOSH.  DOES IT HAVE TO WARM UP?

03:23PM  5            MR. LEACH:  IT WAS TIRED.

03:23PM  6            THE COURT:  I'LL SPARE COMMENT.  IT HAS TO WARM UP,

03:23PM  7    DOES IT?

03:23PM  8        AH.  THERE WE GO.

03:23PM  9            MR. LEACH:  I BELIEVE WE'RE ONLY SHOWING THE BOTTOM

03:23PM 10    PORTION, THE D TAG 5791 AT THE BOTTOM OF THE PAGE.

03:24PM 11            THE COURT:  AND COULD YOU IDENTIFY JUST FOR THE

03:24PM 12    RECORD THIS PAGE, PLEASE, MR. LEACH?

03:24PM 13            MR. LEACH:  I WILL, YOUR HONOR.  YES, YOUR HONOR.

03:24PM 14        WE'RE LOOKING AT PAGE 51 OF EXHIBIT 4621.  DOWN AT THE

03:24PM 15    BOTTOM OF THE PAGE TO THE LEFT THERE'S AN I.D. PREFIX TAG

03:24PM 16    D5791.

03:24PM 17    Q.   DO YOU SEE THAT, DR. DAS?

03:24PM 18    A.   I DO.

03:24PM 19    Q.   AND JUST TO ORIENT US, TO THE RIGHT IS THERE A CODE

03:24PM 20    SECTION WITHIN CLIA?

03:24PM 21    A.   YES.

03:24PM 22    Q.   THAT'S 493.1289.  THAT'S ONE OF THE REGULATIONS RELATING

03:24PM 23    TO OPERATION OF THE CLIA LAB?

03:24PM 24    A.   YES.

03:24PM 25    Q.   AND THEN BENEATH THAT IN PARAGRAPH A IT SAYS, "THE

5845

DAS DIRECT BY MR. LEACH

03:24PM  1    LABORATORY MUST ESTABLISH AND FOLLOW WRITTEN POLICIES AND

03:24PM  2    PROCEDURES FOR AN ONGOING MECHANISM TO MONITOR, ASSESS, AND

03:25PM  3    WHEN INDICATED, CORRECT PROBLEMS IDENTIFIED IN THE ANALYTIC

03:25PM  4    SYSTEMS SPECIFIED."

03:25PM  5         DO YOU SEE THAT LANGUAGE?

03:25PM  6    A.   YES.

03:25PM  7    Q.   AND IS THAT ESSENTIALLY SPELLING OUT THE CLIA REQUIREMENT?

03:25PM  8    A.   YES.

03:25PM  9    Q.   OKAY.  AND IF WE CAN GO TO PAGE 52, MS. HOLLIMAN, I THINK

03:25PM  10   ONLY THE TOP PORTION GOING -- THERE WE GO.

03:25PM  11        IF WE COULD HIGHLIGHT THE TOP PORTION OF THIS PAGE.

03:25PM  12        DR. DAS, DO YOU SEE THE REGULATORY REQUIREMENT CONTINUES

03:25PM  13   IN COLUMN 2 BENEATH THE WORDS "CONTINUED FROM PAGE 47"?

03:25PM  14   A.   YES.

03:25PM  15   Q.   IS THAT HOW YOU READ THIS DOCUMENT?

03:25PM  16   A.   YES.

03:25PM  17   Q.   AND THEN IT SAYS, "THIS STANDARD IS NOT MET AS EVIDENCED

03:26PM  18   BY."

03:26PM  19        DO YOU SEE THAT LANGUAGE?

03:26PM  20   A.   YES.

03:26PM  21   Q.   AND IS STANDARD A TERM OF ART IN THE CLIA REGULATIONS?

03:26PM  22   A.   YES.

03:26PM  23   Q.   AND HOW DOES A STANDARD COMPARE TO A CONDITION?

03:26PM  24   A.   I BELIEVE IT IS LESS SEVERE.

03:26PM  25   Q.   THEN DOES THE FORMAT OF THE 2567 LAY OUT PARTICULAR

UNITED STATES COURT REPORTERS

**ER-479**

DAS DIRECT BY MR. LEACH

03:26PM   1    FINDINGS BY CMS AS TO HOW, IN CMS'S VIEW, THAT STANDARD WAS NOT

03:26PM   2    MET?

03:26PM   3    A.   YES.

03:26PM   4    Q.   AND THAT'S WHAT YOU'RE TRYING TO RESPOND TO IN THE COURSE

03:26PM   5    OF YOUR WORK?

03:26PM   6    A.   YES.

03:26PM   7    Q.   IF WE CAN GO TO PAGE 53, DO YOU SEE THE FINDING AT THE

03:26PM   8    BOTTOM, "BASED ON REVIEW OF QUALITY CONTROL DATA AND MONTHLY QC

03:27PM   9    REPORTS, THE LABORATORY FAILED TO HAVE A QUALITY ASSESSMENT

03:27PM  10    PROCEDURE TO IDENTIFY AND CORRECT PROBLEMS WITH QC VALUES FOR

03:27PM  11    THE THERANOS PROPRIETARY SYSTEM (TPS) WHEN PRECISION DID NOT

03:27PM  12    MEET THE LABORATORY'S REQUIREMENT FOR PRECISION."

03:27PM  13        DO YOU SEE THAT?

03:27PM  14    A.   YES.

03:27PM  15    Q.   AND IS PRECISION A TERM THAT YOU'RE FAMILIAR WITH IN YOUR

03:27PM  16    WORK AS THE LAB DIRECTOR?

03:27PM  17    A.   YES.

03:27PM  18    Q.   AND WHAT IS PRECISION?

03:27PM  19    A.   IT'S A MEASURE OF THE SPREAD OF DATA.

03:27PM  20    Q.   AND IN THE COURSE OF RESPONDING TO THE 2567, DID YOU

03:27PM  21    REVIEW A BROAD RANGE OF PRECISION DATA?

03:27PM  22    A.   YES.

03:27PM  23    Q.   LET'S GO TO PAGE 54, AND IF WE COULD ZOOM IN,

03:27PM  24    MS. HOLLIMAN, ON THE TAGS DOWN TO D.

03:28PM  25        DO YOU SEE IN B, DR. DAS, WHERE IT SAYS, "QC RESULTS WERE

                      DAS DIRECT BY MR. LEACH                          5847

03:28PM    1    REVIEWED FROM JUNE 2014 THROUGH NOVEMBER 2014 AND JANUARY

03:28PM    2    THROUGH FEBRUARY 2015 FOR VITAMIN B12, VITAMIN D, AND SEX

03:28PM    3    HORMONE BINDING GLOBULIN WHICH WERE USED FOR PATIENT TESTING ON

03:28PM    4    THE TPS DEVICES."

03:28PM    5         DO YOU SEE THAT LANGUAGE?

03:28PM    6    A.   YES.

03:28PM    7    Q.   AND IS THIS ALSO DATA THAT YOU REVIEWED IN THE COURSE OF

03:28PM    8    YOUR WORK?

03:28PM    9    A.   YES.

03:28PM   10    Q.   IN C IT SAYS, "VITAMIN B12 QC LEVEL 1 AND LEVEL 3 ON

03:28PM   11    DEVICE E 110 REVEALED THE FOLLOWING PERCENT CV:  34.3 PERCENT

03:28PM   12    AND 48.5 PERCENT RESPECTIVELY FROM JANUARY 5TH, '15 THROUGH

03:29PM   13    1-30-15."

03:29PM   14         DO YOU SEE THAT LANGUAGE?

03:29PM   15    A.   YES.

03:29PM   16    Q.   AND THE DEVICE E 110, DID YOU UNDERSTAND THAT TO REFER TO

03:29PM   17    A PARTICULAR EDISON DEVICE WITHIN THE LAB?  DID YOU UNDERSTAND

03:29PM   18    THAT TO REFER TO A DEVICE WITHIN THE LAB?

03:29PM   19    A.   YES.

03:29PM   20    Q.   AND THE QC LEVEL 1 AND LEVEL 3, WHAT DID YOU UNDERSTAND

03:29PM   21    THOSE TO REFER TO?

03:29PM   22    A.   THOSE ARE DIFFERENT LEVELS OF THE RESPECTIVE TEST QC, IN

03:29PM   23    THIS CASE VITAMIN B12.

03:29PM   24    Q.   AND CAN YOU -- AND WHAT IS THE PURPOSE OF DIFFERENT

03:29PM   25    LEVELS?

5848
DAS DIRECT BY MR. LEACH

03:29PM  1    A.   A LABORATORY IS REQUIRED TO RUN MULTIPLE LEVELS FOR EVERY

03:29PM  2    QUANTITATIVE TEST, SO --

03:29PM  3    Q.   SO A HIGH LEVEL, A LOW LEVEL, SOMETHING IN BETWEEN?

03:29PM  4    A.   CORRECT.

03:29PM  5    Q.   OKAY.  AND THIS SAYS THE QC LEVEL 1 AND 3 WERE 34.3 AND

03:29PM  6    48.5 PERCENT.

03:29PM  7         WHAT WAS -- WHAT DID YOU UNDERSTAND THAT TO MEAN?

03:30PM  8    A.   IT APPEARS THEY'RE REFERENCING THOSE PARTICULAR LEVELS FOR

03:30PM  9    THOSE QC.

03:30PM 10    Q.   AND ARE THESE DESIRABLE LEVELS OF QC OR UNDESIRABLE LEVELS

03:30PM 11    OF QC?

03:30PM 12    A.   THOSE WOULD BE UNDESIRABLE.

03:30PM 13    Q.   AND IS THIS SOMETHING THAT YOU LOOKED INTO AS THE

03:30PM 14    LABORATORY DIRECTOR?

03:30PM 15    A.   YES.

03:30PM 16    Q.   AND IF WE COULD ZOOM IN.

03:30PM 17         IN D THERE'S SOME REFERENCE TO VITAMIN B12, QC1, AND QC3

03:30PM 18    ON DEVICE E 1085.

03:30PM 19         IS THIS SIMILAR INFORMATION RELATING TO A DIFFERENT EDISON

03:30PM 20    DEVICE THAT WAS BEING USED IN THE CLIA LAB?

03:30PM 21    A.   YES.

03:30PM 22    Q.   AND IS THAT SOMETHING THAT YOU INVESTIGATED?

03:30PM 23    A.   YES.

03:30PM 24    Q.   IF WE CAN ZOOM OUT, MS. HOLLIMAN, AND LOOK AT E THROUGH L,

03:30PM 25    OR E THROUGH LITTLE I.

                          DAS DIRECT BY MR. LEACH                    5849

03:31PM   1          DR. DAS, DID YOU UNDERSTAND THESE TO BE ADDITIONAL

03:31PM   2   EXAMPLES OF HIGH CV IN QC TESTING ON DEVICES WITHIN THE CLIA

03:31PM   3   LAB?

03:31PM   4   A.   YES.

03:31PM   5   Q.   AND SIMILAR TO WHAT WE LOOKED AT BEFORE, ARE THESE ISSUES

03:31PM   6   THAT YOU INVESTIGATED AS PART OF YOUR WORK?

03:31PM   7   A.   YES.

03:31PM   8   Q.   AND AT ANY POINT IN TIME, DID YOU DISAGREE WITH WHAT CMS

03:31PM   9   WAS FINDING HERE?

03:31PM  10   A.   NO.

03:31PM  11   Q.   LET ME DRAW YOUR ATTENTION TO --

03:31PM  12          YOU CAN TAKE THAT DOWN, MS. HOLLIMAN.

03:31PM  13          LET ME DRAW YOUR ATTENTION, PLEASE, TO PAGE 40 OF

03:31PM  14   EXHIBIT 4621.

03:32PM  15          DO YOU HAVE THAT IN FRONT OF YOU, SIR?

03:32PM  16   A.   I DO.

03:32PM  17   Q.   OKAY.  AND DO YOU SEE A D TAG, D5481?

03:32PM  18   A.   YES.

03:32PM  19   Q.   AND DOES THIS D TAG RELATE TO CONTROL PROCEDURES?

03:32PM  20   A.   YES.

03:32PM  21   Q.   INCLUDING CONTROL PROCEDURES FOR EDISON DEVICES AND ASSAY

03:32PM  22   PT INR?

03:32PM  23   A.   YES.

03:32PM  24          MR. LEACH:  YOUR HONOR, I OFFER -- AND I'VE PROVIDED

03:32PM  25   THESE REDACTIONS TO MR. WADE, BUT AT THIS POINT I'M OFFERING

DAS DIRECT BY MR. LEACH                                          5850

03:32PM   1    EVERYTHING ON PAGE 40 FROM THE D TAG 5481 DOWN THROUGH PAGE 47,

03:33PM   2    WITH A REDACTION ON PAGE 45 BEGINNING WITH PARAGRAPH 1 IN THE

03:33PM   3    SECOND COLUMN FROM THE LEFT, AND WITH ANOTHER REDACTION ON

03:33PM   4    PAGE 46 WITH THE PARAGRAPH FOR B.

03:33PM   5         AND I'VE PROVIDED THESE TO THE DEFENSE.

03:33PM   6              MR. WADE:  YOUR HONOR, I'M NOT SURE THE FOUNDATION

03:33PM   7    HAS BEEN LAID WITH RESPECT TO THESE.

03:33PM   8              THE COURT:  CAN YOU LAY A FOUNDATION, MR. LEACH?

03:33PM   9              MR. LEACH:  YES.

03:33PM  10              THE COURT:  EXCUSE ME.  IS THAT YOUR -- OTHER THAN

03:33PM  11    THAT, THAT'S YOUR ONLY OBJECTION, WHICH IS TO SAY THAT YOU

03:33PM  12    AGREE WITH THE REDACTIONS?

03:33PM  13              MR. WADE:  I UNDERSTAND THE REDACTIONS.  I MAY HAVE

03:33PM  14    AN OBJECTION.

03:33PM  15         BUT I'M JUST TRYING TO UNDERSTAND THE FOUNDATION AND THE

03:34PM  16    PURPOSE FOR WHICH THEY'RE OFFERED.

03:34PM  17              THE COURT:  THANK YOU.

03:34PM  18              MR. LEACH:  I'LL LAY MORE FOUNDATION, YOUR HONOR.

03:34PM  19    Q.   DR. DAS, IF YOU COULD JUST LOOK BRIEFLY AT PARAGRAPH 1 ON

03:34PM  20    PAGE 40, IS THERE A REFERENCE TO QC FOR AN ASSAY CALLED PT INR?

03:34PM  21    A.   YES.

03:34PM  22    Q.   AND WAS PT INR ONE OF THE TESTS THAT THERANOS VOIDED?

03:34PM  23    A.   YES.

03:34PM  24    Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE

03:34PM  25    PT INR ASSAY AND HOW IT WAS RUN AT THERANOS?

DAS DIRECT BY MR. LEACH                                                5851

03:34PM   1        A.   YES.

03:34PM   2        Q.   IF I DRAW YOUR ATTENTION TO PAGE 41, DO YOU SEE TOWARDS

03:34PM   3    THE BOTTOM IN PARAGRAPH 2 THERE BEGINS A DISCUSSION RELATING TO

03:35PM   4    QC AND VARIOUS ASSAYS ON THE EDISON DEVICE?

03:35PM   5        A.   YES.

03:35PM   6        Q.   AND DOES THAT CONTINUE TO PAGE 45?

03:35PM   7        A.   YES.

03:35PM   8        Q.   AND DID YOU DISCUSS WITH MS. HOLMES QC ISSUES RELATED TO

03:35PM   9    THE EDISON DEVICE DURING THE TIME PERIOD BEFORE YOU BECAME THE

03:35PM  10    LAB DIRECTOR?

03:35PM  11        A.   YES.

03:35PM  12        Q.   AND DID THERANOS ULTIMATELY VOID ALL OF THE TESTS ON THE

03:35PM  13    EDISON DEVICE?

03:35PM  14        A.   YES.

03:35PM  15        Q.   AND IF YOU CONTINUE ON PAGE 45, THERE'S A D TAG, D575

03:35PM  16    COMPARISON OF TEST RESULTS.

03:36PM  17             DO YOU SEE THAT?

03:36PM  18        A.   MR. LEACH, DO YOU MEAN D5775?

03:36PM  19        Q.   I DO.  THANK YOU.

03:36PM  20             AND DO YOU SEE THAT DISCUSSION CONTINUES ON TO PAGE 46 AND

03:36PM  21    47 WITH PARTICULAR REFERENCE TO THE EDISON DEVICE?

03:36PM  22        A.   YES.

03:36PM  23        Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT STUDIES

03:36PM  24    THAT THERANOS HAD PREPARED RELATING TO THE EDISON DEVICE?

03:36PM  25        A.   YES.

03:36PM   1          MR. LEACH:  YOUR HONOR, I OFFER THESE PAGES AS I'VE

03:36PM   2    DESCRIBED AS EVIDENCE OF STATE OF MIND.

03:36PM   3          MR. WADE:  SAME OBJECTIONS AS PREVIOUSLY NOTED.

03:36PM   4    AND I TAKE IT STATE OF MIND AS OF THIS TIME PERIOD.

03:36PM   5          THE COURT:  YES.

03:36PM   6          MR. WADE:  YEAH.

03:36PM   7          THE COURT:  IS THAT RIGHT, MR. LEACH?

03:36PM   8          MR. LEACH:  YES.

03:36PM   9          THE COURT:  ALL RIGHT.  THANK YOU.  THE OBJECTION IS

03:36PM  10    OVERRULED.

03:37PM  11          LADIES AND GENTLEMEN, THESE WILL BE ADMITTED NOT FOR THE

03:37PM  12    TRUTH OF THE MATTER ASSERTED IN THE DOCUMENTS, BUT RATHER TO

03:37PM  13    SHOW EVIDENCE OF THE STATE OF MIND AS TO INTENT, KNOWLEDGE.

03:37PM  14          IS THAT CORRECT, MR. LEACH, INTENT AND KNOWLEDGE --

03:37PM  15          MR. LEACH:  YES, YOUR HONOR.

03:37PM  16          THE COURT:  -- AS TO MS. HOLMES.  IT'S OFFERED FOR

03:37PM  17    THAT PURPOSE ONLY.

03:37PM  18          (GOVERNMENT'S EXHIBIT 4621, AS REDACTED, WAS RECEIVED IN

03:37PM  19    EVIDENCE.)

03:37PM  20    BY MR. LEACH:

03:37PM  21    Q.   AND MS. HOLLIMAN, IF WE CAN NOW PLEASE DISPLAY PAGE 40 AS

03:37PM  22    REDACTED.

03:37PM  23          DR. DAS, DO YOU SEE IN THE LEFT THERE'S THE NUMBER D5481?

03:37PM  24    A.   YES.

03:37PM  25    Q.   IS THAT A REFERENCE TO THE D TAG FOR THIS IDENTIFIED

                              5853
DAS DIRECT BY MR. LEACH

03:38PM   1    DEFICIENCY?

03:38PM   2    A.   YES.

03:38PM   3    Q.   OKAY.  AND IS THERE A RESTATEMENT OF THE REGULATORY

03:38PM   4    PROVISION IN THE COLUMN TO THE RIGHT BRIEFLY IN F AND G?

03:38PM   5    A.   YES.

03:38PM   6    Q.   OKAY.  AND THEN IT SAYS, "THIS STANDARD IS NOT MET AS

03:38PM   7    EVIDENCED BY."

03:38PM   8         DO YOU SEE THAT LANGUAGE?

03:38PM   9    A.   YES.

03:38PM   10   Q.   AND THEN DOES CMS LIST THE PARTICULAR FINDINGS AND

03:38PM   11   EVIDENCE THAT RELATE TO THIS PARTICULAR STANDARD?

03:38PM   12   A.   YES.

03:38PM   13   Q.   OKAY.  AND THIS RELATES TO QC FOR SOMETHING CALLED PT INR.

03:38PM   14        WHAT IS PT INR?

03:38PM   15   A.   IT IS A BLOOD CLOTTING TEST.

03:38PM   16   Q.   AND DID -- IN RESPONSE TO THE 2567, DID YOU ULTIMATELY

03:38PM   17   DETERMINE TO -- THAT THERE WERE ERRORS IN THE PT INR TEST?

03:38PM   18   A.   YES.

03:38PM   19   Q.   AND DESCRIBE THOSE FOR US, PLEASE.

03:39PM   20   A.   YES.  THERE WERE ACTUALLY A VARIETY OF FINDINGS.  ONE OF

03:39PM   21   THEM WAS ERRORS IN THE CALCULATION OF THE VALUES THAT HAS TO DO

03:39PM   22   WITH EACH LOT THAT IS USED FOR THIS ASSAY ON THE SIEMENS

03:39PM   23   INSTRUMENT.

03:39PM   24        THERE WERE ALSO DEVIATIONS IN THE PATIENT TEST RESULT

03:39PM   25   DISTRIBUTIONS, AS WELL AS QUALITY CONTROL ISSUES.

DAS DIRECT BY MR. LEACH                                                    5854

03:39PM   1      Q.   AND DID --

03:39PM   2                MR. WADE:  YOUR HONOR, PARDON ME.  JUST MOVE TO

03:39PM   3      STRIKE ON 702 GROUNDS.

03:39PM   4                THE COURT:  I'M GOING TO SUSTAIN THE OBJECTION.

03:39PM   5          AND THAT LAST PORTION IS STRICKEN, LADIES AND GENTLEMEN.

03:39PM   6      BY MR. LEACH:

03:39PM   7      Q.   DID YOU -- IN COMMUNICATING TO CMS, DID YOU DESCRIBE THE

03:39PM   8      BASES -- DID YOU TELL CMS THAT THERANOS WAS VOIDING PT INR

03:39PM   9      TESTS?

03:39PM  10      A.   YES.

03:39PM  11      Q.   AND DID YOU EXPLAIN TO THEM WHY THERANOS WAS DOING THAT?

03:39PM  12      A.   YES.

03:39PM  13      Q.   WHAT DID YOU TELL CMS?

03:40PM  14      A.   I DO NOT RECALL THE EXACT LANGUAGE, BUT IT REFLECTED THE

03:40PM  15      INACCURATE CALCULATIONS, AS WELL AS QUALITY CONTROL ISSUES AND

03:40PM  16      INACCURACIES REFLECTED IN THE PATIENT TEST RESULT

03:40PM  17      DISTRIBUTIONS.

03:40PM  18      Q.   LET'S GO FURTHER IN TIME IN THIS DOCUMENT TO PAGE 41.  IF

03:40PM  19      WE CAN HIGHLIGHT D THROUGH H -- OR ACTUALLY D THROUGH I.  I'M

03:40PM  20      SORRY, MS. HOLLIMAN.

03:40PM  21          DO YOU SEE, DR. DAS, IN D WHERE IT SAYS, "ON

03:40PM  22      SEPTEMBER 7TH, 2015, CITROL 3 WAS RUN SEVEN TIMES WITHOUT

03:41PM  23      OBTAINING AN ACCEPTABLE QC VALUE"?

03:41PM  24      A.   YES.

03:41PM  25      Q.   AND FURTHER DOWN IN I, IT SAYS, "81 PATIENTS WERE REPORTED

03:41PM   1    FROM APRIL 1ST, 2015 THROUGH 9/16/15."

03:41PM   2         DO YOU SEE THAT LANGUAGE?

03:41PM   3    A.   YES.

03:41PM   4    Q.   AND WHAT WAS THE THRUST OF THE DEFICIENCY AS YOU

03:41PM   5    UNDERSTOOD IT THAT WAS BEING BROUGHT TO YOUR ATTENTION?

03:41PM   6    A.   WHAT IS BEING REFERENCED HERE IS THAT PATIENT RESULTS WERE

03:41PM   7    RECORDED WHEN QUALITY CONTROLS WERE NOT RECORDED.

03:41PM   8    Q.   AND EXPLAIN WHY THAT'S, EXPLAIN WHY THAT'S AN ISSUE.

03:41PM   9    A.   QUALITY CONTROL MUST BE RUN DAILY WHEN PATIENT TEST

03:41PM  10    RESULTS ARE BEING RUN ON ANY ASSAY.

03:41PM  11    Q.   SO IF YOU RUN QUALITY CONTROL AND YOU FAIL QUALITY CONTROL

03:41PM  12    FOR WHATEVER REASON, YOU SHOULDN'T BE REPORTING A TEST?

03:41PM  13    A.   THAT'S RIGHT.

03:41PM  14    Q.   AND IS THIS LISTING EXAMPLES OF WHERE IT APPEARED THAT

03:41PM  15    THERANOS WAS RUNNING TESTS AFTER NOT PASSING QUALITY CONTROL?

03:41PM  16    A.   YES.

03:41PM  17         MR. WADE:  YOUR HONOR, MOVE TO STRIKE.  IT'S BEYOND

03:42PM  18    THE SCOPE OF WHAT THE EVIDENCE IS OFFERED FOR.

03:42PM  19         THE COURT:  YOU CAN ASK THAT IN A DIFFERENT WAY.

03:42PM  20    I'LL SUSTAIN THE OBJECTION AND STRIKE THAT ANSWER.

03:42PM  21    BY MR. LEACH:

03:42PM  22    Q.   AS PART OF YOUR WORK, DR. DAS, DID YOU INVESTIGATE WHETHER

03:42PM  23    THERE WERE INSTANCES WHERE THERANOS REPORTED PATIENT RESULTS

03:42PM  24    AFTER NOT PASSING QUALITY CONTROL?

03:42PM  25    A.   YES.

5856

DAS DIRECT BY MR. LEACH

| | | |
|---|---|---|
| 03:42PM | 1 | Q.   AND DID YOU FIND EXAMPLES OF THAT RELATING TO PT INR? |
| 03:42PM | 2 | A.   YES. |
| 03:42PM | 3 | MR. WADE:  702, YOUR HONOR. |
| 03:42PM | 4 | THE COURT:  OVERRULED. |
| 03:42PM | 5 | BY MR. LEACH: |
| 03:42PM | 6 | Q.   YOU FOUND EXAMPLES OF THAT? |
| 03:42PM | 7 | A.   YES. |
| 03:42PM | 8 | Q.   DID YOU ALSO -- LOOKING DOWN AT PARAGRAPH 2, DO YOU SEE |
| 03:42PM | 9 | THAT THE FINDING HERE IS BASED ON A REVIEW OF THE QUALITY |
| 03:42PM | 10 | CONTROL PROCEDURE, QC RECORDS, AND RAW DATA FROM PATIENT TEST |
| 03:43PM | 11 | RUNS AND INTERVIEW WITH THE GENERAL SUPERVISOR, THE LABORATORY |
| 03:43PM | 12 | FAILED TO ENSURE THAT THE QC WAS ACCEPTABLE FOR THE TPS SYSTEM, |
| 03:43PM | 13 | OR THERANOS PROPRIETARY SYSTEM, PRIOR TO REPORTING PATIENT TEST |
| 03:43PM | 14 | RESULTS. |
| 03:43PM | 15 | DO YOU SEE THAT? |
| 03:43PM | 16 | A.   YES. |
| 03:43PM | 17 | Q.   IN YOUR MIND, WAS THIS RAISING A SIMILAR ISSUE WITH THE |
| 03:43PM | 18 | EDISONS THAT WAS RAISED WITH RESPECT TO PT INR? |
| 03:43PM | 19 | A.   YES. |
| 03:43PM | 20 | MR. WADE:  702, YOUR HONOR. |
| 03:43PM | 21 | THE COURT:  OVERRULED. |
| 03:43PM | 22 | BY MR. LEACH: |
| 03:43PM | 23 | Q.   AND DID YOU INVESTIGATE WHETHER THERE WERE INSTANCES WHERE |
| 03:43PM | 24 | THERANOS REPORTED PATIENT RESULTS FROM THE EDISON DEVICE AFTER |
| 03:43PM | 25 | FAILING QUALITY CONTROL? |

UNITED STATES COURT REPORTERS

**ER-490**

DAS DIRECT BY MR. LEACH                                          5857

03:43PM   1        A.    YES.

03:43PM   2        Q.    AND DID YOU FIND INSTANCES OF THAT?

03:43PM   3        A.    YES.

03:43PM   4        Q.    MORE THAN ONE?

03:43PM   5        A.    YES.

03:43PM   6        Q.    AND WAS THAT AN ISSUE?

03:43PM   7        A.    YES.

03:43PM   8        Q.    WHY IS THAT?

03:43PM   9        A.    FOR THE REASONS I DELINEATED EARLIER.  IT'S REQUIRED TO DO

03:43PM  10    QUALITY CONTROL ON EVERY DAY THAT PATIENT TEST RESULTS ARE RUN.

03:44PM  11        Q.    LET ME GO, PLEASE, TO PAGE -- LET ME GO TO PAGE 42, AND I

03:44PM  12    WANT TO DRAW YOUR ATTENTION TO PARAGRAPHS D THROUGH G.

03:44PM  13            DO YOU SEE WHERE IT SAYS IN D, "QC RECORDS FOR SEX HORMONE

03:44PM  14    BINDING GLOBULIN, SHOWED THAT ON DEVICE E 1025, QC LEVEL 2'S,

03:44PM  15    24 EXPIRATION WAS ON 8/14/14 AT 18:54 AND WAS NOT RUN AGAIN

03:44PM  16    UNTIL 8/15/14.  PATIENT DATA SHOWED THAT PATIENT SESSION," AND

03:45PM  17    THERE'S A NUMBER, "WAS RUN ON 8/14/14 AT 19:09."

03:45PM  18            DO YOU SEE THAT LANGUAGE?

03:45PM  19        A.    YES.

03:45PM  20        Q.    AND IN YOUR MIND, DID YOU UNDERSTAND THIS -- WAS THIS CMS

03:45PM  21    RAISING THE ISSUE OF THERANOS REPORTING PATIENT RESULTS FOR

03:45PM  22    THIS PARTICULAR ASSAY AFTER FAILING QUALITY CONTROL?

03:45PM  23        A.    YES.

03:45PM  24        Q.    AND THAT'S AN ISSUE THAT YOU INVESTIGATED AS WELL?

03:45PM  25        A.    YES.

                      DAS DIRECT BY MR. LEACH                                    5858

03:45PM   1      Q.   AND YOU FOUND INSTANCES WHERE THAT HAPPENED?

03:45PM   2      A.   YES.

03:45PM   3      Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO PAGE 43.  AND I

03:45PM   4      WANT TO DRAW YOUR ATTENTION TO THE FINDING L AT THE BOTTOM.

03:45PM   5           DO YOU SEE WHERE IT SAYS, "QC RECORDS FOR VITAMIN B12

03:45PM   6      SHOWED THAT ON DEVICE E 37, QC1 HAD A '10X WARNING' MESSAGE"?

03:46PM   7      A.   YES.

03:46PM   8      Q.   AND WHAT IS A 10X WARNING MESSAGE?

03:46PM   9      A.   THAT IS REFERRING TO A QUALITY CONTROL FAILURE WHERE THE

03:46PM  10      QUALITY CONTROL RESULTS LIE ON ONE SIDE OF THE MEAN EITHER

03:46PM  11      ABOVE OR BELOW TEN TIMES CONSECUTIVELY.

03:46PM  12      Q.   AND IN THE COURSE OF YOUR WORK, DID YOU SEE INSTANCES

03:46PM  13      WHERE THERANOS CONTINUED TO REPORT PATIENT RESULTS AFTER THIS

03:46PM  14      10X WARNING HAD COME UP?

03:46PM  15      A.   YES.

03:46PM  16      Q.   PLEASE LOOK AT THE NEXT PAGE, PAGE 44.

03:46PM  17           AND IF I COULD FOCUS ON THE SECOND HALF BEGINNING WITH THE

03:46PM  18      FINDING AT O THROUGH Q.

03:46PM  19           DO YOU SEE, DR. DAS, WHERE IT SAYS, "LEVEY-JENNINGS CHARTS

03:47PM  20      REVEALED THAT SHBG DEVICE E 26 QC1 HAD 13 CONSECUTIVE DAYS AND

03:47PM  21      QC2 HAD 15 CONSECUTIVE DAYS THAT THE RESULTS WERE AT LEAST TWO

03:47PM  22      STANDARD DEVIATIONS BELOW THE MEAN FROM SEPTEMBER 30TH, 2014,

03:47PM  23      THROUGH 10/29/14."

03:47PM  24           DO YOU SEE THAT LANGUAGE?

03:47PM  25      A.   YES.


                              UNITED STATES COURT REPORTERS

DAS DIRECT BY MR. LEACH                                              5859

03:47PM    1      Q.   DID YOU ALSO REVIEW LEVEY-JENNINGS CHARTS IN THE COURSE OF

03:47PM    2      YOUR WORK IN INVESTIGATING THE 2567?

03:47PM    3      A.   YES.

03:47PM    4      Q.   AND IT'S BEEN A WHILE SINCE WE'VE HEARD THAT TERM, BUT

03:47PM    5      WHAT IS A LEVEY-JENNINGS CHART?

03:47PM    6      A.   IT'S ALSO KNOWN AS A CONTROL CHART.  IT'S JUST A WAY TO

03:47PM    7      CHART QUALITY CONTROL VALUES OVER TIME WITH RESPECT TO THE

03:47PM    8      EXPECTED MEAN AND STANDARD DEVIATIONS.

03:47PM    9      Q.   AND AT ANY POINT IN TIME DID YOU COMMUNICATE TO CMS THAT

03:47PM   10      YOU DISAGREED WITH THIS FINDING?

03:47PM   11      A.   NO.

03:47PM   12      Q.   THAT WOULD BE TRUE OF THE FINDINGS IN P AND Q RELATED TO

03:48PM   13      THE LEVY-JENNINGS CHARTS?

03:48PM   14      A.   YES.

03:48PM   15      Q.   WE TALKED A LITTLE BIT ABOUT --

03:48PM   16           THANK YOU, MS. HOLLIMAN.  WE CAN TAKE THAT DOWN.

03:48PM   17           DURING THE COURSE OF YOUR WORK, DID YOU BECOME FAMILIAR

03:48PM   18      WITH THE ARIZONA LAB, THE MODERATE COMPLEXITY ARIZONA LAB?

03:48PM   19      A.   YES.

03:48PM   20      Q.   AND AS A RESULT OF YOUR WORK, THE TESTING THAT WAS DONE IN

03:48PM   21      THE ARIZONA LAB WAS NOT DONE ON ANY THERANOS DEVICES; IS THAT

03:48PM   22      CORRECT?

03:48PM   23      A.   YES.

03:48PM   24      Q.   AND IT WAS NOT DONE ON ANY MODIFIED THIRD PARTY DEVICES?

03:49PM   25      A.   YES.

UNITED STATES COURT REPORTERS

DAS DIRECT BY MR. LEACH                                              5860

03:49PM    1      Q.   AND DID YOU UNDERSTAND THAT THE VOLUME OF TESTING IN

03:49PM    2      ARIZONA EXCEEDED THE VOLUME OF TESTING IN CALIFORNIA?

03:49PM    3      A.   YES.

03:49PM    4      Q.   BY SOME ORDER OF MAGNITUDE?

03:49PM    5      A.   COULD YOU BE MORE SPECIFIC?

03:49PM    6      Q.   BY WHAT ORDER OF MAGNITUDE APPROXIMATELY?

03:49PM    7      A.   I'M NOT AWARE OF THAT NUMBER.

03:49PM    8      Q.   OKAY.  WE TALKED EARLIER ABOUT THE VOIDING OF THE TEST

03:49PM    9      RESULTS FROM THE EDISON 3.5.

03:49PM   10           WHAT MECHANICALLY DID YOU DO TO VOID THE RESULTS?

03:49PM   11      A.   COULD YOU SPECIFY "MECHANICALLY"?

03:49PM   12      Q.   DID THE COMPANY SEND SOMETHING TO PATIENTS?  WHAT DID IT

03:49PM   13      DO?

03:49PM   14      A.   AH, YES.  CORRECTIVE REPORTS WERE SENT, IN THIS CASE

03:49PM   15      VOIDED REPORTS.

03:49PM   16      Q.   AND DID THE CORRECTED REPORTS GIVE A PARTICULAR NUMBER OR

03:49PM   17      DID IT JUST SAY VOID?

03:49PM   18      A.   EXACTLY, VOID.

03:49PM   19      Q.   APPROXIMATELY HOW MANY EDISON TESTS WERE VOIDED?

03:50PM   20      A.   I DON'T KNOW THE EXACT NUMBER, BUT IT WAS APPROXIMATELY

03:50PM   21      50- TO 60,000.

03:50PM   22      Q.   AND THAT'S THE TOTAL UNIVERSE OF TESTS THAT WERE RUN ON

03:50PM   23      EDISON IN THE CLIA LAB?

03:50PM   24      A.   YES.

03:50PM   25      Q.   DID YOU EVER RESUME TESTING ON THE EDISON 3.5 IN THE CLIA

DAS CROSS BY MR. WADE                                              5861

03:50PM  1    LAB?

03:50PM  2    A.   NO.

03:50PM  3    Q.   DID YOU EVER RESUME TESTING ON ANY OTHER THERANOS

03:50PM  4    MANUFACTURED DEVICE IN THE CLIA LAB?

03:50PM  5    A.   NO.

03:50PM  6           MR. LEACH:  MAY I HAVE A MOMENT, YOUR HONOR?

03:50PM  7           THE COURT:  YES.

03:50PM  8       (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.)

03:50PM  9           MR. LEACH:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

03:50PM 10       THANK YOU.  THANK YOU, DR. DAS.

03:50PM 11           THE COURT:  MR. WADE, DO YOU HAVE CROSS-EXAMINATION?

03:50PM 12           MR. WADE:  I DO, YOUR HONOR.

03:51PM 13       (PAUSE IN PROCEEDINGS.)

03:51PM 14                         **CROSS-EXAMINATION**

03:51PM 15    BY MR. WADE:

03:51PM 16    Q.   GOOD AFTERNOON, DR. DAS.

03:51PM 17    A.   GOOD AFTERNOON.

03:51PM 18    Q.   MY NAME IS LANCE WADE.  I REPRESENT ELIZABETH HOLMES, AND

03:52PM 19    I'LL ASK YOU A FEW QUESTIONS ON HER BEHALF HERE THIS AFTERNOON,

03:52PM 20    AND IT LOOKS LIKE PROBABLY GOING INTO TOMORROW AS WELL.

03:52PM 21       OKAY?

03:52PM 22    A.   YES.

03:52PM 23    Q.   OKAY.  I'D LIKE TO JUST START BY ORIENTING EVERYONE TO

03:52PM 24    SOME OF THE DATES HERE.

03:52PM 25       MR. LEACH ASKED YOU ABOUT THE CMS INSPECTION THAT WAS

8899

1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
6                                    )
                    PLAINTIFF,       )  SAN JOSE, CALIFORNIA
7                                    )
             VS.                     )  VOLUME 46
8                                    )
   ELIZABETH A. HOLMES,             )  DECEMBER 16, 2021
9                                    )
                    DEFENDANT.       )  PAGES 8899 - 9110
10   _____ )

11                  TRANSCRIPT OF TRIAL PROCEEDINGS
12            BEFORE THE HONORABLE EDWARD J. DAVILA
                  UNITED STATES DISTRICT JUDGE
13
   A P P E A R A N C E S:
14
   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
15                        BY:  JOHN C. BOSTIC
                               JEFFREY B. SCHENK
16                        150 ALMADEN BOULEVARD, SUITE 900
                          SAN JOSE, CALIFORNIA 95113
17
                          BY:  ROBERT S. LEACH
18                             KELLY VOLKAR
                          1301 CLAY STREET, SUITE 340S
19                        OAKLAND, CALIFORNIA 94612

20      (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
   OFFICIAL COURT REPORTERS:
22                        IRENE L. RODRIGUEZ, CSR, RMR, CRR
                          CERTIFICATE NUMBER 8074
23                        LEE-ANNE SHORTRIDGE, CSR, CRR
                          CERTIFICATE NUMBER 9595
24
        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2                        INDEX OF PROCEEDINGS

 3

 4     CLOSING ARGUMENT BY MR. SCHENK              P. 8909

 5     CLOSING ARGUMENT BY MR. DOWNEY              P. 9031

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 08:40AM | 1 | ADMONISH THEM WITH THE 4621 INSTRUCTION THAT I INTEND TO DO, |
| 08:40AM | 2 | AND THEN I'LL ASK THE PARTIES IF THEY HAVE ARGUMENTS. |
| 08:40AM | 3 | ALL RIGHT.  THANK YOU. |
| 08:40AM | 4 | MR. DOWNEY:  THANK YOU, YOUR HONOR. |
| 08:40AM | 5 | THE CLERK:  COURT IS IN RECESS. |
| 09:00AM | 6 | (RECESS FROM 8:40 A.M. UNTIL 9:05 A.M.) |
| 09:05AM | 7 | (JURY IN AT 9:05 A.M.) |
| 09:05AM | 8 | THE COURT:  GOOD MORNING EVERYONE.  PLEASE BE |
| 09:05AM | 9 | SEATED. |
| 09:05AM | 10 | WE ARE ON THE RECORD IN THE HOLMES MATTER.  ALL COUNSEL |
| 09:05AM | 11 | ARE PRESENT, MS. HOLMES IS PRESENT.  GOOD MORNING. |
| 09:06AM | 12 | OUR JURY IS PRESENT. |
| 09:06AM | 13 | GOOD MORNING, LADIES AND GENTLEMEN. |
| 09:06AM | 14 | BEFORE WE BEGIN TODAY -- IT'S GOOD TO SEE YOU ALL.  AND |
| 09:06AM | 15 | BEFORE WE BEGIN, I DO WANT TO ASK YOU THAT QUESTION THAT I POSE |
| 09:06AM | 16 | TO YOU EVERY TIME WE START OUR SESSIONS. |
| 09:06AM | 17 | DURING OUR BREAK, YOUR BREAK FROM THE COURTROOM, I WANT TO |
| 09:06AM | 18 | KNOW WHETHER ANY OF YOU HAVE HAD OCCASION OR CAUSE TO READ, |
| 09:06AM | 19 | LISTEN TO, DISCUSS, OR IN ANY WAY LEARN ANYTHING ABOUT THIS |
| 09:06AM | 20 | CASE OUTSIDE OF THE COURTROOM HERE.  IF THAT HAS HAPPENED TO |
| 09:06AM | 21 | ANY OF YOU, WOULD YOU PLEASE RAISE YOUR HAND NOW, PLEASE. |
| 09:06AM | 22 | I SEE NO HANDS. |
| 09:06AM | 23 | THANK YOU VERY MUCH FOR YOUR CONTINUED VIGILANCE. |
| 09:06AM | 24 | BEFORE WE BEGIN -- EXCUSE ME. |
| 09:06AM | 25 | BEFORE WE BEGIN AND I ASK THE PARTIES IF THEY HAVE |

| | | |
|---|---|---|
| 09:06AM | 1 | ARGUMENT, THERE'S A HOUSEKEEPING MATTER I'D LIKE TO SPEAK WITH |
| 09:06AM | 2 | THE JURY ABOUT REGARDING ONE OF THE EXHIBITS, AND THIS IS |
| 09:07AM | 3 | EXHIBIT 4621, EXHIBIT 4621.  I BELIEVE THIS WAS INTRODUCED IN |
| 09:07AM | 4 | THE TESTIMONY OF DR. DAS, AND I -- LADIES AND GENTLEMEN, YOU |
| 09:07AM | 5 | ARE INSTRUCTED THAT TRIAL EXHIBIT 4621, WHICH CONTAINS EXCERPTS |
| 09:07AM | 6 | OF THE JANUARY 25, 2016 CMS REPORT WAS ADMITTED FOR A LIMITED |
| 09:07AM | 7 | PURPOSE, THE LIMITED PURPOSE OF MS. HOLMES'S STATE OF MIND AND |
| 09:07AM | 8 | NOT FOR THE TRUTH OF THE MATTER ASSERTED. |
| 09:07AM | 9 | AGAIN, THIS IS EXHIBIT 4621, AND IT IS ADMITTED NOT FOR |
| 09:07AM | 10 | THE TRUTH OF THE MATTER ASSERTED, BUT SOLELY FOR THE ISSUE OF |
| 09:07AM | 11 | MS. HOLMES'S STATE OF MIND. |
| 09:07AM | 12 | COUNSEL, ANYTHING FURTHER ON THAT? |
| 09:08AM | 13 | MR. SCHENK:  NO, YOUR HONOR. |
| 09:08AM | 14 | MR. DOWNEY:  NOTHING FROM US, YOUR HONOR. |
| 09:08AM | 15 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:08AM | 16 | LADIES AND GENTLEMEN, I FAILED TO TELL YOU THAT AT THE |
| 09:08AM | 17 | CLOSE OF EVIDENCE, BUT I AM INSTRUCTING YOU ON THAT NOW. |
| 09:08AM | 18 | LET ME THEN TURN TO THE GOVERNMENT. |
| 09:08AM | 19 | DOES THE GOVERNMENT HAVE AN ARGUMENT? |
| 09:08AM | 20 | MR. SCHENK:  YES, WE DO, YOUR HONOR. |
| 09:08AM | 21 | THE COURT:  PLEASE PROCEED.  THANK YOU. |
| 09:08AM | 22 | MR. SCHENK:  MAY I REMOVE THE MASK? |
| 09:08AM | 23 | THE COURT:  YES.  THANK YOU. |
| 09:08AM | 24 | /// |
| 09:08AM | 25 | /// |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

April 17, 2023