No. 22-10312

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

---

## EXCERPTS OF RECORD
### VOL. X of LVII | ER-2535 to ER-2834

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

| | | |
|---|---|---|
| 09:55AM | 1 | THAT'S THE INDUSTRY STANDARD THAT HE'S EMINENTLY QUALIFIED |
| 09:55AM | 2 | TO TALK ABOUT. |
| 09:55AM | 3 | THE COURT: OKAY. THANK YOU. THANK YOU. |
| 09:55AM | 4 | MS. SAHARIA. |
| 09:55AM | 5 | MS. SAHARIA: JUST A FEW MINOR POINTS. |
| 09:55AM | 6 | IF THERE WAS ANYTHING THAT WAS CLEAR FROM MR. LEACH'S |
| 09:55AM | 7 | PRESENTATION IS THAT DR. MASTER IN LARGE PART SIMPLY INTENDS TO |
| 09:55AM | 8 | PARROT DR. ROSENDORFF. WE'VE HEARD IN A NUMBER OF DIFFERENT |
| 09:55AM | 9 | AREAS THAT HIS OPINION IS BASED ON DR. ROSENDORFF'S TESTIMONY. |
| 09:56AM | 10 | IT IS NOT APPROPRIATE FOR ONE EXPERT TO SIMPLY PARROT |
| 09:56AM | 11 | EITHER THE FACT TESTIMONY OF DR. ROSENDORFF OR THE EXPERT |
| 09:56AM | 12 | TESTIMONY OF DR. ROSENDORFF. |
| 09:56AM | 13 | AGAIN, THE REASON WHY DR. MASTER IS DOING THAT IS BECAUSE |
| 09:56AM | 14 | HE DOESN'T HAVE ACCESS TO DATA BECAUSE WE DON'T HAVE THE DATA. |
| 09:56AM | 15 | SO HE'S BASING OPINIONS IN SOME CASES ON DR. ROSENDORFF'S |
| 09:56AM | 16 | AFTER-THE-FACT IMPRESSIONS OF WHETHER THERANOS WAS CONDUCTING |
| 09:56AM | 17 | PROPER PROFICIENCY TESTING, WHICH MAY NOT EVEN REFLECT |
| 09:56AM | 18 | DR. ROSENDORFF'S REALTIME ASSESSMENTS. |
| 09:56AM | 19 | IT IS CLEAR THAT DR. MASTER DOES INTEND TO OFFER LEGAL |
| 09:56AM | 20 | OPINIONS, AND I GAVE THOSE EXAMPLES TO THE COURT WHERE HE'S |
| 09:56AM | 21 | TALKING ABOUT INTERPRETATIONS OF THE LAW, WHERE HE'S TALKING |
| 09:56AM | 22 | ABOUT BURDENS OF PROOF, DISPUTES BETWEEN THE FDA AND THERANOS. |
| 09:56AM | 23 | THOSE ARE CLEARLY LEGAL OPINIONS, AND YOU CAN'T JUST |
| 09:56AM | 24 | DIVORCE IN SOME HYPOTHETICAL WORLD THE INDUSTRY STANDARDS FROM |
| 09:57AM | 25 | WHAT THEY MIGHT BE IF THERE WERE NO CMS OR CFR BECAUSE THAT'S |

UNITED STATES COURT REPORTERS

09:57AM 1    THE WORLD THAT HE LIVES IN AND THAT IS THE WORLD THAT HE WAS

09:57AM 2    TRAINED IN.

09:57AM 3         AND WHEN HE MOVED BEYOND THE GENERAL STATEMENT, YEAH, THE

09:57AM 4    INDUSTRY STANDARD REQUIRES US TO ENGAGE IN PROFICIENCY TESTING,

09:57AM 5    AND THE NEXT QUESTION IS, WELL, HOW DO YOU DETERMINE WHETHER

09:57AM 6    IT'S APPROPRIATE TO ENGAGE AN ALTERNATIVE PROFICIENCY TESTING,

09:57AM 7    FOR EXAMPLE?

09:57AM 8         THE ANSWER TO THAT IS, THE REGULATIONS TELL US WHEN WE CAN

09:57AM 9    ENGAGE IN AN ALTERNATIVE PROFICIENCY TESTING, AND I DISAGREE

09:57AM 10   WITH THE WAY THAT THERANOS WAS INTERPRETING THOSE REGULATIONS.

09:57AM 11        THAT'S CLEARLY A LEGAL OPINION.

09:57AM 12             THE COURT:  SO, MS. SAHARIA, I'M SORRY TO INTERRUPT

09:57AM 13   YOU.

09:57AM 14             MS. SAHARIA:  YES.

09:57AM 15             THE COURT:  YOU HEARD MR. LEACH ANSWERING MY

09:57AM 16   QUESTION, AND I ASKED HIM AND I KIND OF PROBED HIM, SET HIM UP,

09:57AM 17   IF YOU WILL.

09:57AM 18        WHAT WOULD THE QUESTIONING BE?  IS THIS A LEGAL OPINION OR

09:57AM 19   WHAT WOULD THAT QUESTIONING BE?

09:57AM 20        AND HE TOLD US THE LINE OF QUESTIONING THAT WOULD SUGGEST,

09:57AM 21   NO, I'M NOT ASKING HIM A LEGAL OPINION.  I'M ASKING HIM -- HE'S

09:58AM 22   QUALIFIED TO TESTIFY ABOUT INDUSTRY STANDARDS AND HE CAN TALK

09:58AM 23   ABOUT INDUSTRY STANDARDS.

09:58AM 24        AND THEN I'LL ASK HIM, DID YOU SEE THAT IN THE THERANOS

09:58AM 25   REGIME?  ANYTHING ABOUT WHAT THEY WERE DOING THAT COMPLIED WITH

09:58AM 1     OR FOLLOWED INDUSTRY STANDARDS?  YES?  NO?

09:58AM 2          MS. SAHARIA:  SO I THINK TWO PROBLEMS WITH THAT.

09:58AM 3          THE FIRST IS THE ONE WHICH I STARTED WITH, WHICH IS HIS

09:58AM 4     ANSWERS TO THAT QUESTIONS ARE GOING TO BE BASED ENTIRELY ON HIS

09:58AM 5     PARROTING OF WHAT DR. ROSENDORFF HAS SAID ABOUT WHAT THERANOS

09:58AM 6     WAS DOING, NOT ON DR. MASTER'S OWN ANALYSIS OF ACTUAL EVIDENCE

09:58AM 7     AND DATA REGARDING WHAT THERANOS WAS DOING WITH RESPECT TO

09:58AM 8     PROFICIENCY TESTING.

09:58AM 9          BUT ON THE ISSUE OF THE LEGAL OPINION, I DON'T KNOW HOW WE

09:58AM 10    CAN CROSS-EXAMINE DR. MASTER ABOUT THAT VAGUE INDUSTRY STANDARD

09:58AM 11    OPINION WITHOUT GETTING INTO THE REGULATIONS BECAUSE THE

09:58AM 12    REGULATIONS ARE WHAT INFORM THOSE INDUSTRY STANDARDS.

09:58AM 13         HE ACKNOWLEDGES THAT IN THE BEGINNING SECTION OF HIS BRIEF

09:58AM 14    WHERE HE SAYS THAT HE LAYS OUT THE INDUSTRY STANDARDS, AND ALL

09:59AM 15    OF THOSE ARE DRAWN FROM THE CFR AND FROM CLIA.

09:59AM 16         SO I DON'T KNOW HOW -- WE CAN OFFICIALLY TALK AROUND THE

09:59AM 17    SUBJECT OF THE REGULATIONS, I SUPPOSE, WITH DR. MASTER, BUT

09:59AM 18    THAT'S ARTIFICIAL AND IT WILL HAMPER OUR ABILITY TO

09:59AM 19    CROSS-EXAMINE HIM WHEN ALL OF THOSE INDUSTRY STANDARDS ARE

09:59AM 20    BASED ON FEDERAL LAW.

09:59AM 21         THANK YOU.

09:59AM 22          THE COURT:  ALL RIGHT.  THANK YOU.

09:59AM 23    MR. LEACH, ANYTHING FURTHER?

09:59AM 24          MR. LEACH:  NO, YOUR HONOR.  THANK YOU.

09:59AM 25          THE COURT:  ALL RIGHT.  THANK YOU.  AND THANK YOU

UNITED STATES COURT REPORTERS

09:59AM 1    FOR THE CONVERSATION ON THIS.

09:59AM 2        I WILL -- THIS IS ONE THAT YOU'LL RECEIVE THE COURT'S

09:59AM 3    DECISION IN A WRITTEN ORDER.  I WILL TELL YOU THAT I DO INTEND

09:59AM 4    TO SCHEDULE A DAUBERT HEARING AT SOME POINT, AND WE'LL LOOK AT

09:59AM 5    OUR CALENDARS AND WE'LL CONSULT WITH YOU AS TO WHEN THE BEST

09:59AM 6    TIME FOR THAT IS, OBVIOUSLY PRIOR TO THE PRETRIAL CONFERENCE.

09:59AM 7            MS. SAHARIA:  THANK YOU, YOUR HONOR.

09:59AM 8            THE COURT:  OKAY.  THANK YOU.

10:00AM 9        ALL RIGHT.  NEXT I BELIEVE IS DOCKET 574, MS. HOLMES'S

10:00AM 10   MOTION TO EXCLUDE EVIDENCE OF CMS SURVEY FINDINGS AND

10:00AM 11   SANCTIONS.

10:00AM 12       IT LOOKS LIKE CONCURRENT WITH THIS IS THE GOVERNMENT'S

10:00AM 13   NUMBER 6, TO ADMIT THE CMS FORM 2567.

10:00AM 14       I THINK THE CONVERSATION IS THE --

10:00AM 15           MR. LEACH:  YES.

10:00AM 16           THE COURT:  RIGHT.

10:00AM 17           MR. LOOBY:  GOOD MORNING, YOUR HONOR.  YES, I'LL BE

10:00AM 18   ADDRESSING BOTH MS. HOLMES'S MOTION TO EXCLUDE THE REPORT AND

10:00AM 19   ITS FINDINGS WITH THE CMS INSPECTIONS IN 2015 AND 2016 OF

10:00AM 20   THERANOS'S CLIA LABORATORIES.

10:00AM 21       THE GOVERNMENT'S MOTION BASICALLY DOESN'T ADDRESS ANY

10:00AM 22   ISSUES THAT ARE NOT ADDRESSED IN OUR MOTION, SO I THINK THEY

10:00AM 23   CAN BE KIND OF ADDRESSED AT THE SAME TIME.

10:00AM 24           THE COURT:  ALL RIGHT.  THANK YOU, MR. LOOBY.

10:00AM 25           MR. LOOBY:  SO THE ISSUES THESE MOTIONS RAISE FALL

41

10:00AM 1    INTO TWO BUCKETS, SO THERE'S THE RELEVANCY AND THE 403 ISSUES,

10:01AM 2    AND THERE'S THE HEARSAY ISSUES WITH THE REPORTS AND THE

10:01AM 3    FINDINGS THEMSELVES.

10:01AM 4         I'LL PROPOSE ADDRESSING THEM IN THAT ORDER.

10:01AM 5         THE FIRST QUESTION, IS THE EVIDENCE RELEVANT FOR THE

10:01AM 6    PURPOSES THAT THE GOVERNMENT IS OFFERING IT?

10:01AM 7         IT MIGHT SEEM STRAIGHTFORWARD, BUT ANSWERING IT ACTUALLY

10:01AM 8    INVOLVES SOME TECHNICAL CONCEPTS AND I THINK IT'S HELPFUL TO GO

10:01AM 9    OVER WHAT A CMS ENTAILS AND WHAT IT DOESN'T ENTAIL.

10:01AM 10        SO WHAT DOES A CMS INSPECTION ENTAIL?  SO AT THE HIGHEST

10:01AM 11   LEVEL, CMS INSPECTORS LOOK TO SEE WHETHER THE CLIA LAB HAS THE

10:01AM 12   SAME WRITTEN POLICIES AND PROCEDURES THAT THE REGULATIONS

10:01AM 13   REQUIRE.

10:01AM 14        AND THEY WILL LOOK FOR EVIDENCE THAT THE LAB IS COMPLYING

10:01AM 15   WITH ITS OWN PROCEDURES.

10:01AM 16        IF AN INSPECTOR FINDS THAT EITHER A REQUIRED PROCEDURE

10:01AM 17   DOESN'T EXIST OR IF THEY ENCOUNTER EVIDENCE THAT THE LAB IS NOT

10:01AM 18   FOLLOWING THEIR OWN PROCEDURES, THEY WILL MAKE A FINDING OF A

10:01AM 19   CLIA REGULATORY DEFICIENCY.

10:01AM 20        SO THESE COME IN A FEW FLAVORS.  THE ENTRY LEVEL IS WHAT

10:02AM 21   IS CALLED A STANDARD LEVEL DEFICIENCY, AND A COUPLE OF STANDARD

10:02AM 22   LEVEL DEFICIENCIES CAN ESSENTIALLY ROLL UP INTO WHAT IS CALLED

10:02AM 23   A CONDITION LEVEL DEFICIENCY, AND THEN ON TOP OF THAT, THERE

10:02AM 24   COULD BE AN IMMEDIATE JEOPARDY FINDING, AND I'LL TALK MORE

10:02AM 25   ABOUT THAT LATER.

10:02AM 1      SO THE CLIA REGULATIONS AND THE POLICIES AND PROCEDURES

10:02AM 2  THEY REQUIRE, THEY REALLY RUN THE GAMUT.  SO SOME ARE BASIC,

10:02AM 3  LIKE REQUIRING THAT THE LABORATORY HAVE ON HAND DOCUMENTATION

10:02AM 4  SHOWING THAT THE CLIA LAB STAFF HAVE APPROPRIATE EDUCATIONAL

10:02AM 5  AND EXPERIENTIAL BACKGROUND.

10:02AM 6      OTHERS ARE MORE TECHNICAL, AND WE DON'T NEED TO GO INTO

10:02AM 7  ALL OF THEM.  MY COLLEAGUES AND THE GOVERNMENT ADDRESSED

10:02AM 8  PROFICIENCY TESTING, OR PT, IN THE LAST MOTION, SO I WON'T

10:02AM 9  DWELL ON THAT.

10:02AM 10      SECOND, THERE'S QUALITY CONTROL, OR QC.  SO GENERALLY

10:02AM 11  SPEAKING, CLIA REGS, THEY REQUIRE LABORATORIES TO ADOPT QC

10:02AM 12  PROCEDURES, AND THIS INVOLVES RUNNING A CONTROL SAMPLE THROUGH

10:02AM 13  A LAB DEVICE ON A REGULAR BASIS AND SEEING IF YOU GET CLOSE

10:03AM 14  ENOUGH TO THE EXPECTED VALUE.

10:03AM 15      LABS ARE REQUIRED TO KEEP THEIR HISTORICAL QC DATA ON HAND

10:03AM 16  AND THE LAB INSPECTOR, THE CMS INSPECTOR, MIGHT ASK TO SEE THE

10:03AM 17  HISTORICAL QC DATA IN ADDITION TO LOOKING AT THE POLICIES AND

10:03AM 18  PROCEDURES THEMSELVES.

10:03AM 19      SO IF THE INSPECTOR SPOTS AN ISSUE WITH THE QC, THEN THEY

10:03AM 20  MIGHT WANT TO SEE DOCUMENTATION THAT THE LAB IDENTIFIED IT AT

10:03AM 21  THE TIME THAT THEY INVESTIGATED THE ISSUE AND THAT THEY SOLVED

10:03AM 22  THE ISSUE.

10:03AM 23      SO THE FINAL BUCKET OF ISSUES BEFORE WE MOVE ON IS QUALITY

10:03AM 24  ASSESSMENT, OR QA.  AND SO THE WAY TO THINK ABOUT THIS IS THAT

10:03AM 25  IT SITS ON TOP OF QC, AND IT INVOLVES KIND OF A MORE HOLISTIC

| | | |
|---|---|---|
| 10:03AM | 1 | REVIEW OF QC, TRANSIT OF QC DATA THAT DAILY QC MONITORING MIGHT |
| 10:03AM | 2 | MISS. |
| 10:03AM | 3 | THOSE ARE THE KIND OF BUCKETS. |
| 10:03AM | 4 | BUT BEFORE -- ONE MORE NOTE ABOUT QC IS THAT QC DATA IS |
| 10:03AM | 5 | INHERENTLY DIFFERENT FROM PATIENT RESULTS.  THE QC CONTROL |
| 10:03AM | 6 | SAMPLE THAT IS RUN THROUGH THE LAB'S DEVICE IS AN SYNTHETIC |
| 10:04AM | 7 | MATERIAL THAT CLIA LABS CAN BUY FROM LAB SUPPLY COMPANIES. |
| 10:04AM | 8 | IN OTHER WORDS, IN REVIEWING THE QC DATA, THE CMS |
| 10:04AM | 9 | INSPECTOR IS NOT LOOKING AT PATIENT RESULTS. |
| 10:04AM | 10 | LIKEWISE, THE COEFFICIENT OF VARIATION, OR CV PERCENTAGE, |
| 10:04AM | 11 | WHICH YOU'LL SEE IN THE CMS REPORT AND ON WHICH DR. MASTER |
| 10:04AM | 12 | RELIES TO EXTRAPOLATE HIS OPINIONS, THIS IS A STATISTICAL |
| 10:04AM | 13 | FIGURE IN THIS INSTANCE BASED ON QC DATA AND NOT PATIENT |
| 10:04AM | 14 | RESULTS. |
| 10:04AM | 15 | THE SECOND THING TO KEEP IN MIND ABOUT QC IS THAT IT DOES |
| 10:04AM | 16 | NOT NECESSARILY MEAN THAT THERE'S AN ISSUE WITH THE DEVICE IF |
| 10:04AM | 17 | THERE'S A QC FAILURE. |
| 10:04AM | 18 | THERE'S A COUPLE OF REASONS WHY THAT IS.  IT COULD BE THAT |
| 10:04AM | 19 | THERE'S AN ISSUE WITH THE QC MATERIAL THAT IS RUN, LIKE IT WAS |
| 10:04AM | 20 | STORED IMPROPERLY. |
| 10:04AM | 21 | OR IT COULD SIGNIFY THAT THERE'S AN ISSUE WITH THE REAGENT |
| 10:04AM | 22 | USED IN THE TEST, AND AT ITS MOST SIMPLE LEVEL, IT COULD JUST |
| 10:04AM | 23 | BE CHALKED UP TO HUMAN ERROR. |
| 10:04AM | 24 | SO HERE'S AN EXAMPLE OF HOW THIS COULD OCCUR.  SO IT'S |
| 10:04AM | 25 | HELPFUL TO THINK ABOUT IT.  SO QC CONTROL SAMPLES OFTEN COME IN |

44

10:05AM 1    VERY LOW CONCENTRATIONS AND VERY HIGH CONCENTRATIONS, AND THIS

10:05AM 2    IS DESIGNED TO TEST THE PERFORMANCE OF THE TEST AT THE

10:05AM 3    EXTREMES.

10:05AM 4         AND SO A LAB TECHNICIAN COULD MISTAKENLY RUN THE HIGH

10:05AM 5    SAMPLE WHEN THE MACHINE IS PRIMED TO ACCEPT THE LOW SAMPLE AND

10:05AM 6    THIS WOULD RESULT IN A VERY ERRANT DATA POINT.  THE TECHNICIAN

10:05AM 7    WOULD PROBABLY FIGURE THIS OUT WHEN LOOKING AT IT AND SAY,

10:05AM 8    OKAY, I KIND OF KNOW WHAT IS GOING ON HERE.

10:05AM 9         BUT THAT RESULT WILL STILL BE LOGGED IN THE MACHINE'S

10:05AM 10   HISTORICAL QC DATA WHEN AN INSPECTOR COMES IN AND ASKS TO SEE

10:05AM 11   THE RECORDS.

10:05AM 12        AND IF THAT TECHNICIAN, AFTER KIND OF FIGURING OUT WHAT

10:05AM 13   WENT WRONG, DOESN'T DOCUMENT WHAT HAPPENED, THEN IT COULD LOOK

10:05AM 14   YEARS LATER IN RETROSPECT LIKE THE LAB WAS IGNORING QC FAILURES

10:05AM 15   AND CONTINUING TO RUN PATIENT SAMPLES WITHOUT ADDRESSING KIND

10:05AM 16   OF WHAT THE ROOT CAUSE OF THE QC IS, WHEN THAT ACTUALLY ISN'T

10:05AM 17   THE CASE.

10:05AM 18        SO I THINK TAKING A STEP BACK, THE BEST WAY TO THINK ABOUT

10:05AM 19   LIKE A QC FAILURE, IT'S LIKE A RED FLAG OR AN INDICATOR THAT

10:06AM 20   SOMETHING IS AWRY, BUT IT ITSELF DOESN'T REALLY TELL US

10:06AM 21   ANYTHING ABOUT KIND OF WHAT IS UP.  IT'S UP TO THE CLIA LAB TO

10:06AM 22   FOLLOW ITS PROCEDURES, WHICH ARE USUALLY OUTLINING THE STEPS

10:06AM 23   YOU WOULD TAKE TO INVESTIGATE THAT.

10:06AM 24        SO HERE'S WHAT THE INSPECTOR DOESN'T LOOK AT.  THE CMS

10:06AM 25   INSPECTOR DOESN'T LOOK AT OR ANALYZE PATIENT DATA.

10:06AM 1   AND THIS IS WHAT THE CMS INSPECTOR, SARAH BENNETT, TOLD

10:06AM 2 THE GOVERNMENT, AND THIS IS AT DEFENSE EXHIBIT 34 AND IT'S HER

10:06AM 3 2017 GOVERNMENT INTERVIEW MEMORANDUM.

10:06AM 4   IT DOESN'T ISSUE FINDINGS THAT THE PATIENT TEST RESULTS

10:06AM 5 WERE INACCURATE OR UNRELIABLE, AND WHILE A CMS LAB INSPECTOR

10:06AM 6 MIGHT CITE A LAB FOR POOR QC PRACTICES, IT DOESN'T TAKE THAT

10:06AM 7 EXTRA STEP OF DIAGNOSING THE QC FAILURE.

10:06AM 8   IT ALSO DOESN'T MAKE A FINDING THAT PATIENT RESULTS

10:06AM 9 ACTUALLY HAVE BEEN IMPACTED BY ANY DEFICIENCIES, INCLUDING FOR

10:07AM 10 QC ISSUES.

10:07AM 11   EVEN AN IMMEDIATE JEOPARDY FINDING, WHICH IS THE MOST

10:07AM 12 SEVERE FINDING THAT A CMS INSPECTOR CAN MAKE, IT'S NOT A

10:07AM 13 FINDING THAT PATIENT HEALTH HAS ACTUALLY BEEN IMPACTED.  IF YOU

10:07AM 14 LOOK AT THE REGULATORY TEXT -- AND WE'LL PULL UP THE CMS LATER

10:07AM 15 THAT HAS THE TEXT IN IT -- BUT IT'S A FINDING THAT THERE'S A

10:07AM 16 SUFFICIENT RISK THAT PATIENT RESULTS COULD BE IMPACTED SUCH

10:07AM 17 THAT IMMEDIATE ACTION IS REQUIRED FROM THE LAB.

10:07AM 18   SO THERE'S A REASON WHY CMS DOESN'T DO THESE THINGS.  THE

10:07AM 19 REGULATORY SCHEME PUTS THE BURDEN ON THE LAB COMPANY, NOT THE

10:07AM 20 REGULATOR, TO PROVE THE NEGATIVE.

10:07AM 21   IN THE WORDS OF CMS WITNESS SARAH BENNETT, IT'S NOT CMS'S

10:07AM 22 JOB TO DO THAT FOR THE LAB COMPANY.

10:07AM 23   SO INSTEAD THE LAB MUST PROVE FOR ANY DEFICIENCY THAT IT

10:07AM 24 IDENTIFIED THE PROBLEM AT THE TIME, THAT IT HAS THE RECORDS TO

10:07AM 25 SHOW THAT IT COULD LOOK AND SAY PATIENT RESULTS WERE NOT

46

10:07AM 1    IMPACTED.

10:07AM 2        THIS BURDEN SHIFTING PARADIGM, PERHAPS IT MAKES SENSE IN

10:08AM 3    THE CIVIL REGULATORY CONTEXT, YOU KNOW, DEFICIENCY, WE PASS THE

10:08AM 4    BALL TO YOU, THE LAB.  YOU TELL US THAT NO PATIENT RESULTS WERE

10:08AM 5    IMPACTED, AND IF YOU CAN'T PROVE THAT WITH DOCUMENTATION, THEN

10:08AM 6    THE OBSERVATION IS GOING TO BE TURNED INTO A POTENTIAL PENALTY.

10:08AM 7        BUT THAT BURDEN SHIFTING PARADIGM IS AT THE HEART OF WHY

10:08AM 8    THE GOVERNMENT'S PROPOSED USE OF THE CMS REPORT IS SO

10:08AM 9    PROBLEMATIC IN THIS CRIMINAL CASE.

10:08AM 10       SO THAT LEADS US TO THE GOVERNMENT'S RELEVANCE THEORY.

10:08AM 11   THE GOVERNMENT ARGUES THAT THE CMS INSPECTION FINDINGS, THEY

10:08AM 12   TEND TO SHOW THE ACCURACY AND RELIABILITY ISSUES WITH

10:08AM 13   THERANOS'S TECHNOLOGY.

10:08AM 14       THEIR OPPOSITION BRIEF EVEN GOES SO FAR AS TO CLAIM THAT

10:08AM 15   THE REPORT, QUOTE, PUTS THE LIE TO THE DEFENDANT'S GRANDIOSE

10:08AM 16   CLAIMS ABOUT THERANOS'S TECHNOLOGY, AND THAT'S AT THE

10:08AM 17   OPPOSITION BRIEF TO OUR MOTION IN LIMINE AT PAGE 2.

10:08AM 18       BUT AS WE JUST WALKED THROUGH, CMS ACTUALLY DIDN'T MAKE

10:08AM 19   ANY FINDINGS ABOUT THERANOS'S TECHNOLOGY OR THE ACCURACY OR

10:08AM 20   RELIABILITY OF ANY OF ITS TESTS.  SO THAT'S AN ISSUE AT THE

10:09AM 21   START FOR THE GOVERNMENT'S THEORY.

10:09AM 22       THE GOVERNMENT ALSO RELIES VERY HELPFUL ON ISSUES WITH QC

10:09AM 23   AND HOLDS THEM OUT AS SELF-EVIDENT ISSUES UNDERLYING THE

10:09AM 24   TECHNOLOGY.

10:09AM 25       AS WE JUST DISCUSSED, THE QC CITATIONS IN THE REPORT MAKE

10:09AM 1    NO CLAIMS ABOUT THE ACTUAL PERFORMANCE OF THE TESTS.

10:09AM 2        NOW, THE GOVERNMENT DID DISCLOSE AN EXPERT WITNESS,

10:09AM 3    STEPHEN MASTER, WHO MY COLLEAGUE, MS. SAHARIA, JUST DISCUSSED,

10:09AM 4    TO LOOK AT THE QC CITATIONS IN THE CMS REPORT AND TRY TO

10:09AM 5    APPLY -- TO LOOK AT THE QC CITATIONS IN THE CMS REPORT AND

10:09AM 6    BASED ON HIS EXPERTISE TO EXTRAPOLATE FROM THEM ABOUT WHAT HE

10:09AM 7    THINKS PERHAPS THE QC CITATIONS SAY ABOUT THERANOS'S TESTS AND

10:09AM 8    THEIR PERFORMANCE.

10:09AM 9        HE COULDN'T FOR THE MOST PART, AS MS. SAHARIA EXPLAINED,

10:10AM 10   AND MS. SAHARIA EXPLAINED THE ISSUES WITH HIS OPINION THAT HE

10:10AM 11   DID OFFER.

10:10AM 12       BUT IN ANY EVENT, THE GOVERNMENT'S EXPERT DISCLOSURE ON

10:10AM 13   THIS ISSUE IS A CONCESSION THAT THE CMS REPORT AND THE QC

10:10AM 14   FINDINGS WITHIN IT, THEY DON'T SPEAK FOR THEMSELVES, AND THEY

10:10AM 15   DON'T TRANSLATE WITHOUT SOMEONE TO BRIDGE THAT CONCEPTUAL GAP

10:10AM 16   BETWEEN WHAT INPUTS WENT INTO THE CLIA REVIEW AND HOW THE

10:10AM 17   GOVERNMENT WANTS TO USE IT, WHICH IS EVIDENCE OF INACCURACY AND

10:10AM 18   UNRELIABILITY.

10:10AM 19       THE GOVERNMENT ALSO ASSERTS -- THEY TRY TO TURN IT AROUND

10:10AM 20   AND SAY, WELL, THERANOS EITHER AGREED WITH THE CITATIONS OR

10:10AM 21   DIDN'T CONTEST THEM, BUT THAT'S NOT EXACTLY TRUE.

10:10AM 22       IN ANY EVENT, BECAUSE THE FINDINGS DID NOT REACH THE

10:10AM 23   CONCLUSION ON ACCURACY AND RELIABILITY, EVEN IF THERANOS HAD

10:10AM 24   NOT CONTESTED ANY OF THE FINDINGS IN THE JANUARY 2016 REPORT,

10:10AM 25   IT STILL WOULDN'T BE A REPRESENTATION OR A CONCESSION FROM

10:10AM 1    THERANOS THAT THERE WERE ACCURACY OR RELIABILITY ISSUES WITH

10:10AM 2    PATIENT TEST REPORTS THAT WERE REPORTED.

10:11AM 3        SECOND, THERANOS DID REPORT TO CMS THAT, BASED ON ITS

10:11AM 4    HOLISTIC REVIEW, IT FOUND THAT ITS PRIOR QC AND Q/A PROCEDURES

10:11AM 5    AS A WHOLE WERE LACKING, AND IN RESPONSE TO THE CITATIONS WAS

10:11AM 6    FORWARD LOOKING AND IN A DIALOGUE WITH THE REGULATOR.

10:11AM 7        BUT IT'S IMPORTANT TO KEEP IN MIND THE BALL AT THAT TIME

10:11AM 8    WAS IN THERANOS'S COURT TO PROVE THE NEGATIVE.

10:11AM 9        THE JANUARY 2016 REPORT IS KIND OF THE OPENING

10:11AM 10   COMMUNICATION IN A BACK AND FORTH IN WHICH THERE'S AN

10:11AM 11   OPPORTUNITY TO EITHER KIND OF CONTEST THE CITATIONS OR TO

10:11AM 12   EXPLAIN TO THE REGULATOR KIND OF THIS IS HOW WE'RE IMPROVING

10:11AM 13   GOING FORWARD.

10:11AM 14       SO THAT'S ONE REASON WHY PUTTING THIS CMS REPORT, WHICH

10:11AM 15   HAS THESE KIND OF HEARSAY OBSERVATIONS FROM THE INSPECTOR,

10:11AM 16   SOMETIMES MULTIPLE LEVELS OF HEARSAY BECAUSE THE FINDINGS

10:11AM 17   THEMSELVES, THEY WILL INCORPORATE INFORMATION THAT WAS RELAYED

10:11AM 18   TO THE INSPECTOR FROM CLIA LAB STAFF, USUALLY NOT NAMED.

10:12AM 19       THAT'S WHY IT'S SO DANGEROUS TO KIND OF PUT THAT BEFORE

10:12AM 20   THE JURY WITHOUT THE AID OF AN EXPERT OPINION AND JUST SAY,

10:12AM 21   LOOK, HERE'S WHAT THE CMS FOUND, IT FOUND THAT THERE WERE QC

10:12AM 22   VIOLATIONS ON THESE WEEKS ON THESE TESTS.  JURY, WE'RE ASKING

10:12AM 23   YOU TO FIND THAT THIS IS EVIDENCE OF INACCURACY AND

10:12AM 24   UNRELIABILITY.

10:12AM 25       AND THE JURY IS JUST NOT EQUIPPED TO DO THAT ON ITS OWN.

10:12AM 1    THE EVIDENCE DOESN'T QUITE REACH THAT LEVEL THAT THE GOVERNMENT

10:12AM 2    WOULD HAVE IT, AND IT'S JUST GOING TO CONFUSE THE ISSUES.

10:12AM 3        AND THE REASON FOR THAT IS BECAUSE THE INSPECTION, BY

10:12AM 4    DESIGN, STOPPED SHORT OF REACHING THE TYPE OF CONCLUSION THAT

10:12AM 5    THE GOVERNMENT CLAIMS IT WOULD SHOW.

10:12AM 6        I THINK THE BEST EVIDENCE FOR THIS IS GOVERNMENT WITNESS

10:12AM 7    SARAH BENNETT.  SO SHE EXPLAINED THAT TO THE GOVERNMENT IN

10:12AM 8    2017, SHE SAID -- AND I'M PARAPHRASING -- WE AREN'T IN THE

10:12AM 9    BUSINESS OF MAKING THAT TYPE OF FINDING.

10:12AM 10   THE GOVERNMENT WENT BACK TO HER IN 2020 WHEN OUR MOTION

10:13AM 11   WAS PENDING AND SHE TOLD THEM KIND OF THE BASICALLY SAME THING.

10:13AM 12   THAT'S AT GOVERNMENT'S EXHIBIT 24, ECF 680-10.

10:13AM 13   THE TAKEAWAY FROM HER STATEMENTS TO THE GOVERNMENT IS THAT

10:13AM 14   CMS DOESN'T MAKE ACCURACY AND RELIABILITY FINDINGS.  FULL STOP.

10:13AM 15   THE GOVERNMENT'S EFFORT TO FLATTEN THIS DISTINCTION AND

10:13AM 16   PUT THE REPORT INTO EVIDENCE IS GOING TO ASK THE JURY TO MAKE A

10:13AM 17   CONNECTION THAT ITS OWN WITNESS WOULD NOT.

10:13AM 18   THE PREJUDICE FROM THIS EVIDENCE STEMS FROM THE

10:13AM 19   INTERSECTION OF TWO CONCEPTS, ONE OF WHICH IS A CONCEPT THAT

10:13AM 20   YOU HAD ADDRESSED IN DIALOG WITH MY COLLEAGUE, MR. FLEURMONT,

10:13AM 21   YESTERDAY ABOUT CAN A CIVIL REGULATORY VIOLATION AND EVIDENCE

10:13AM 22   OF THAT COMING IN AND KIND OF CONFUSING THE ISSUES AND

10:13AM 23   ENCOURAGING THE JURY TO THINK, WELL, THE GOVERNMENT FOUND THAT

10:13AM 24   THERE WERE SOME VIOLATIONS OF LAWS THAT VAGUELY HAVE TO DO WITH

10:13AM 25   LAB PERFORMANCE OR LAB HYGIENE, AND SO THE GOVERNMENT MUST HAVE

10:13AM 1      AGREED WITH THE GOVERNMENT'S ALLEGATIONS HERE THAT THE TEST

10:14AM 2      RESULTS WERE INACCURATE AND UNRELIABLE.

10:14AM 3          SO A GOOD CITATION FOR THAT KIND OF PREJUDICE IS U.S. V.

10:14AM 4      WOLF, WHICH WAS ADDRESSED YESTERDAY, AND THAT'S AT 820 F.2D

10:14AM 5      1499.

10:14AM 6          BUT HERE THE GOVERNMENT REPORT, YOU KNOW, IS EVEN MORE

10:14AM 7      PREJUDICIAL BECAUSE IT GIVES THE GOVERNMENT IMPRIMATUR TO THE

10:14AM 8      GOVERNMENT -- THE GOVERNMENT AGENCY IMPRIMATUR TO THE

10:14AM 9      GOVERNMENT, THE U.S. ATTORNEY'S OFFICE'S, ALLEGATIONS IN THIS

10:14AM 10     CASE.

10:14AM 11         SO THOSE ARE KIND OF THE RELEVANCY AND THE 403 ISSUES.

10:14AM 12         I CAN PROCEED TO THE HEARSAY ISSUES UNLESS YOUR HONOR HAS

10:14AM 13     QUESTIONS.

10:14AM 14             THE COURT:  NO.  LET'S TALK ABOUT THIS.  AND THIS IS

10:14AM 15     A DISCUSSION I THINK ABOUT 803(8) AND WHETHER THIS IS DOUBLE I

10:14AM 16     OR TRIPLE I.

10:14AM 17             MR. LOOBY:  RIGHT.  SO ACTUALLY THE GOVERNMENT MAKES

10:14AM 18     A COUPLE OF CONCESSIONS IN ITS BRIEFING THAT I THINK ARE

10:14AM 19     IMPORTANT TO PUT ON THE TABLE AT THE START.

10:15AM 20         SO THE GOVERNMENT DOESN'T CONTEST THAT 803(6), THE

10:15AM 21     BUSINESS RECORDS EXCEPTION, IS AVAILABLE TO THEM.  BECAUSE

10:15AM 22     THESE ARE PUBLIC RECORDS, THE NINTH CIRCUIT HAS HELD THAT WE'RE

10:15AM 23     IN 803 LAND, 803(8) LAND.

10:15AM 24         SO THE GOVERNMENT ALSO DOES NOT CONTEST THAT 803(8)(A)(3)

10:15AM 25     REPORTS FROM GOVERNMENT INVESTIGATIONS, DOESN'T APPLY, THAT THE

10:15AM 1   REPORT COULD BE ADMISSIBLE UNDER THAT PROVISION.

10:15AM 2       THE GOVERNMENT CONCEDES THIS BY BASICALLY NOT ADDRESSING

10:15AM 3   OUR ARGUMENTS IN OUR MOTION REGARDING THAT SUBSECTION.  INSTEAD

10:15AM 4   THE GOVERNMENT IS RELYING SOLELY ON SUBSECTION (A)(2), THE

10:15AM 5   MATTERS OBSERVED OR A DUTY TO REPORT.

10:15AM 6       SO WE HAVE TWO WAYS IN WHICH THE GOVERNMENT'S RELIANCE ON

10:15AM 7   (A)(2) KIND OF FAILS, AND ONE OF THEM IS RIGHT OUT OF THE GATE,

10:15AM 8   (A)(2) IS NOT AVAILABLE TO THEM, AND THAT'S BECAUSE WHEN

10:15AM 9   THERE'S A PIECE OF EVIDENCE THAT CONCEDEDLY, AS HERE,

10:15AM 10  CONCEDEDLY IS NOT ADMISSIBLE UNDER (A)(3), (A)(2) DOES NOT

10:16AM 11  PROVIDE THE GOVERNMENT A SECOND BITE AT THE APPLE.

10:16AM 12      SO THE BEST CASE FOR THAT THAT WE WERE ABLE TO FIND, AND I

10:16AM 13  THINK THE ONLY CASE THAT EITHER SIDE CITED THAT ADDRESSED THIS

10:16AM 14  ISSUE SQUARELY WAS THE MURGIO DECISION OUT OF THE SOUTHERN

10:16AM 15  DISTRICT OF NEW YORK -- M-U-R-G-I-O -- AND THAT'S A 2017

10:16AM 16  OPINION BY JUDGE NATHAN IN THE SOUTHERN DIRECT.  THE MURGIO

10:16AM 17  CASE LOOKED AND STARTED WITH THE TEXT OF THE RULE AND I THINK

10:16AM 18  THAT'S HELPFUL.

10:16AM 19      MS. SAHARIA, IF YOU COULD PULL UP THE RULE DEMONSTRATIVE.

10:16AM 20      WHILE SHE'S PULLING THAT UP, WHAT THIS IS, IS RULE 803(8).

10:17AM 21      ALL RIGHT.  AS WE WERE TALKING, WE'RE DEALING WITH

10:17AM 22  SUBSECTION (2) AND SUBSECTION (3).  SO A HELPFUL CANON OF

10:17AM 23  STATUTORY INTERPRETATION, WHICH IS ESSENTIALLY WHAT WE'RE DOING

10:17AM 24  HERE, IT'S KIND OF THE RULE AGAINST REDUNDANCY AND WHETHER OR

10:17AM 25  NOT A BROADER SUBSECTION WILL SUBSUME WITHIN A MORE SPECIFIC

52

10:17AM  1   SUBSECTION.

10:17AM  2       SO AS IT APPLIES HERE, THE QUESTION BECOMES, IS EVERY

10:17AM  3   INSTANCE OF AN (A)(3), A GOVERNMENT REPORT FROM A LEGALLY

10:17AM  4   AUTHORIZED INVESTIGATION, WOULD THAT BE SUBSUMED WITHIN (A)(2)?

10:17AM  5   ARE THOSE ALL MATTERS REPORTED BY A GOVERNMENT AGENT WHEN THEY

10:17AM  6   ARE UNDER A DUTY TO REPORT?

10:17AM  7       I THINK THE ANSWER TO THAT HAS TO BE YES, AND THIS IS KIND

10:17AM  8   OF WHAT MURGIO, THE MURGIO COURT WALKS THROUGH.

10:17AM  9       SO THE SCOPE OF (A)(2) HAS BEEN READ TO INCLUDE, YOU KNOW,

10:17AM  10  ROUTINE MATTERS REPORTED BY PUBLIC OFFICIALS IN THE SCOPE OF

10:17AM  11  THEIR EMPLOYMENT.  IT'S A LITTLE BIT LIKE KIND OF THE BUSINESS

10:18AM  12  RECORDS EXCEPTION, BUT FOR GOVERNMENT RECORDS.

10:18AM  13      NOW, WHEN A GOVERNMENT ENTITY CONDUCTS A LEGALLY

10:18AM  14  AUTHORIZED INVESTIGATION AND IT GENERATES A REPORT OF THAT WITH

10:18AM  15  ITS FINDINGS, IT'S BY DEFINITION A MATTER REPORTED WHILE THAT

10:18AM  16  AGENT WAS UNDER AN OBLIGATION TO REPORT.

10:18AM  17      SO SUBSECTION (3), I THINK THE BEST WAY TO THINK OF IT IS

10:18AM  18  IT'S A SPECIAL APPLICATION OF SUBSECTION (2).

10:18AM  19      AND THE GOVERNMENT ARGUES THAT THIS READING -- THEIR

10:18AM  20  STATUTORY INTERPRETATION ARGUMENT IS BASICALLY READING THE WORD

10:18AM  21  "OR" OUT OF THE RULE.

10:18AM  22      BUT JUST BECAUSE IT HAS THE WORD "OR" DOES NOT MEAN IT HAS

10:18AM  23  TO BE READ IN THE SUBJUNCTIVE.  IN FACT, I THINK THE MURGIO

10:18AM  24  COURT IS VERY PERSUASIVE THAT IN ORDER TO READ THIS COHERENTLY,

10:18AM  25  AND WHEN YOU LOOK AT THE DIFFERENT CATEGORIES, IT HAS TO BE THE

UNITED STATES COURT REPORTERS

10:18AM 1    CASE THAT SUBSECTION (3) IS KIND OF A SPECIAL APPLICATION, IT

10:18AM 2    HAS A SPECIAL MORE KIND OF BLANKET RESTRICTION ON THE USE

10:18AM 3    AGAINST CRIMINAL DEFENDANTS, AND IT REALLY WOULD DO HARM TO THE

10:19AM 4    SCHEME THAT THEY'VE SET OUT HERE TO ALLOW THE GOVERNMENT TO

10:19AM 5    SAY, OH, WELL, IT'S REALLY -- YES, IT'S A REPORT OFFERED

10:19AM 6    AGAINST A CRIMINAL DEFENDANT, BUT IT'S ALSO A MATTER OBSERVED

10:19AM 7    UNDER AN OBLIGATION REPORT.  OF COURSE IT IS.

10:19AM 8        BUT EVEN IF, YOU KNOW, WE ACCEPT FOR THE SAKE OF ARGUMENT

10:19AM 9    THAT (2) IS THEORETICALLY AVAILABLE, THERE'S STILL TWO REASONS

10:19AM 10    WHY THIS REPORT DOES NOT FIT THERE AND THE FACTS HERE DON'T

10:19AM 11    ALLOW FOR IT.

10:19AM 12        WE ASK, YOU KNOW, WERE THE RECORDS MADE BY LAW ENFORCEMENT

10:19AM 13    AND SO THERE'S THE LAW ENFORCEMENT EXCEPTION, AND ARE THEY

10:19AM 14    REPORTING KIND OF ROUTINE, MINISTERIAL OBJECTIVE FACTS, OR DO

10:19AM 15    THEY INCLUDE OBSERVATIONS, CONCLUSIONS, SUMMARIES, KIND OF

10:19AM 16    HIGHER LEVEL THINKING FROM THE GOVERNMENT AGENT?

10:19AM 17        SO TAKING THEM IN THAT ORDER, THE CMS INSPECTORS, AND CMS

10:19AM 18    GENERALLY, IS PROPERLY CONSIDERED LAW ENFORCEMENT WITHIN THE

10:19AM 19    MEANING OF 803(8), AND THE GOVERNMENT CASES EMBRACE THE IDEA

10:20AM 20    THAT ONE DIVIDING LINE IS WHETHER OR NOT THE REGULATORY SCHEME

10:20AM 21    THAT THE AGENCY IS OVERSEEING INVOLVED A POTENTIAL FOR CRIMINAL

10:20AM 22    LIABILITY.

10:20AM 23        SO THAT'S THE HANSON CASE OUT OF THE SEVENTH CIRCUIT.

10:20AM 24    THAT'S THE BUILDING INSPECTOR CASE.  AND THE DECISION THERE,

10:20AM 25    THEY RULED THAT THE BUILDING INSPECTOR WAS NOT LAW ENFORCEMENT,

10:20AM 1    AND THE CRITICAL FACT THERE WAS THEY SAID, WELL, YOU COULD GET

10:20AM 2    A CIVIL FINE, BUT YOU COULD NEVER GET IN CRIMINAL HOT WATER

10:20AM 3    FROM THE BUILDING INSPECTOR AND SO THEY'RE NOT LAW ENFORCEMENT.

10:20AM 4        BUT CMS, THERE ARE CRIMINAL SANCTIONS AVAILABLE FOR

10:20AM 5    INTENTIONAL VIOLATIONS OF CMS.  AND WHILE MANY OF THE SANCTIONS

10:20AM 6    ARE CIVIL IN NATURE, AT LEAST THEY START THAT WAY AND THAT'S

10:20AM 7    THE ROUTINE, CMS IS MORE LIKE AN AGENCY THAT STRADDLES THAT

10:20AM 8    KIND OF CRIMINAL/CIVIL DIVIDE, LIKE THE I.R.S. OR LIKE THE

10:20AM 9    IMMIGRATION OFFICERS THAT HAVE BEEN HELD IN THE NINTH CIRCUIT

10:20AM 10   AND IN OTHER CIRCUITS TO BE LAW ENFORCEMENT WITHIN THE MEANING

10:20AM 11   OF THE RULE.

10:20AM 12       THE COURT:  DEPENDING ON WHAT THEY'RE DOING.

10:20AM 13       MR. LOOBY:  RIGHT.

10:20AM 14       THE COURT:  DEPENDING ON WHAT THEIR CONDUCT IS?

10:21AM 15       MR. LOOBY:  ABSOLUTELY, YOUR HONOR.

10:21AM 16   THERE'S KIND OF THE FIRST QUESTION OF, ARE THEY LAW

10:21AM 17   ENFORCEMENT?  AND THEN THERE'S THE SECOND QUESTION WHICH KIND

10:21AM 18   OF LOOPS BACK TO THE INQUIRY ABOUT ARE THESE ROUTINE

10:21AM 19   OBSERVATIONS OR IS THIS ADVERSARIAL?

10:21AM 20       THE COURT:  SO LICENSE PLATE READING, I THINK THAT'S

10:21AM 21   OROZCO.

10:21AM 22       MR. LOOBY:  RIGHT.  OROZCO IS THE LICENSE PLATE, AND

10:21AM 23   KIND OF A PARADIGMATIC EXAMPLE.  THERE'S HERNANDEZ-ROJAS OUT OF

10:21AM 24   THE NINTH CIRCUIT AS WELL, AND THAT INVOLVES A RECORDATION OF

10:21AM 25   LIKE A DATE OF REMOVAL, KIND OF JUST -- OR ENTRY.  I FORGET

55

10:21AM 1    WHICH WAY IT IS IN THAT CASE.

10:21AM 2              THE COURT:  IT'S --

10:21AM 3              MR. LOOBY:  IT'S A BORDER CROSSING.

10:21AM 4         YOU KNOW, THIS IS ENTIRELY DIFFERENT AND SUBJECTIVITY IS

10:21AM 5    BAKED INTO THE CMS REPORT FROM THE START FOR ALL OF THE REASONS

10:21AM 6    THAT WE DISCUSSED.

10:21AM 7              THE COURT:  PARDON ME.  WHEN I LOOK AT THIS, WE

10:21AM 8    THINK -- WHEN IT TALKS ABOUT LEGAL OBLIGATIONS, IT'S REALLY,

10:21AM 9    DRILLING DOWN, YOU CAN'T HAVE LAW ENFORCEMENT WHO RESPOND TO A

10:21AM 10   CRIME SCENE AND DO THEIR REPORTS, THAT'S -- YOU CAN'T HAVE THAT

10:22AM 11   COME IN.  THAT'S A POLICE REPORT.  THAT'S A CLASSIC POLICE

10:22AM 12   REPORT, AND THAT SHOULD NOT COME IN BECAUSE THAT'S -- YOU'VE

10:22AM 13   GOT ALL KINDS OF PROBLEMS WITH IT.  IT'S DONE IN THE

10:22AM 14   INVESTIGATION OF THE PROSECUTION.

10:22AM 15             MR. LOOBY:  RIGHT.

10:22AM 16             THE COURT:  AND I THINK EVERYBODY RECOGNIZES THAT.

10:22AM 17   THE GOVERNMENT RECOGNIZES THAT THAT'S NOT PROPER.

10:22AM 18        BUT HERE, THIS IS DIFFERENT.  OF COURSE IT'S DIFFERENT.

10:22AM 19        ONE OF THE QUESTIONS IS, AND I THINK MAYBE YOU'RE ALLUDING

10:22AM 20   TO THAT NOW, IS ARE THESE -- IS CMS, ARE THESE PEOPLE LAW

10:22AM 21   ENFORCEMENT?  ARE THEY LEGAL AUTHORITY?

10:22AM 22        THEY DO HAVE LEGAL AUTHORITY BASED ON THEIR JOB

10:22AM 23   DESCRIPTIONS, THE WORK THAT THEY DO, THEY HAVE SOME REGULATORY.

10:22AM 24   BUT ARE THEY REALLY -- ARE THEY LAW ENFORCEMENT OR DO THEY HAVE

10:22AM 25   AN OBLIGATION, A LEGAL OBLIGATION TO REPORT BECAUSE OF THE

56

10:22AM 1    NATURE OF THEIR TASK AND THEIR CHARGE?  DO I NEED TO CONSIDER

10:22AM 2    THAT?  IS THAT SOMETHING TO LOOK AT?

10:22AM 3         MR. LOOBY:  WELL, I THINK THEY ARE LAW ENFORCEMENT

10:22AM 4    WHO HAVE -- IT'S CONJUNCTIVE.  IT'S, IN SUBSECTION (2), AN

10:23AM 5    AGENT WHO HAS A LEGAL OBLIGATION TO REPORT, BUT NOT LAW

10:23AM 6    ENFORCEMENT WHEN OFFERED AGAINST A CRIMINAL DEFENDANT.

10:23AM 7       SO CMS, I THINK -- AND THIS IS ASSUMING THAT (A)(2) IS

10:23AM 8    EVEN AVAILABLE -- IT IS PROPER TO THINK OF THEM AS LAW

10:23AM 9    ENFORCEMENT IN THIS SETTING, AND THE GOVERNMENT'S BRIEFING I

10:23AM 10   THINK SAYS, OH, THE CMS REPORT WAS NOT PREPARED IN ANTICIPATION

10:23AM 11   OF THE LITIGATION, OR SOMETHING ALONG THOSE LINES.

10:23AM 12      BUT OF COURSE IT WAS, BECAUSE THIS WAS A FOR CAUSE

10:23AM 13   INSPECTION IN ADDITION TO KIND OF A ROUTINE CERTIFICATION, AND

10:23AM 14   AS YOU DISCUSSED EARLIER, IT WAS THE FEDERAL AGENCY THAT CAME

10:23AM 15   IN AND TOOK OVER CONTROL OF WHAT WOULD BE A NORMAL

10:23AM 16   CERTIFICATION, AND THAT WAS BASED BOTH ON -- ACCORDING TO

10:23AM 17   SARAH BENNETT, BOTH ON COMPLAINTS THAT THE AGENCY HAD RECEIVED

10:23AM 18   BASED ON THE ATTENTION THAT THE COMPANY HAD BEEN RECEIVING IN

10:23AM 19   THE MEDIA AND THAT'S WHAT SHE TOLD THE GOVERNMENT.

10:23AM 20         THE COURT:  SO WE'RE IN THE NINTH CIRCUIT AND

10:23AM 21   FRYBERG TEACHES US SOMETHING ABOUT THIS AREA, DOESN'T IT?  IT

10:24AM 22   TAKES THE DISTINCTION FROM THE SECOND CIRCUIT, I BELIEVE.

10:24AM 23   ISN'T FRYBERG A LITTLE MORE LIMITING?

10:24AM 24         MR. LOOBY:  THE GOVERNMENT CITES FRYBERG FOR THE

10:24AM 25   PROPOSITION THAT THE NINTH CIRCUIT, THE LAW ENFORCEMENT

10:24AM 1    EXCEPTION IS MORE LIMITED IN THE NINTH CIRCUIT THAN ELSEWHERE,

10:24AM 2    AND THAT LANGUAGE GOES ALL OF THE WAY BACK TO OROZCO IN THE

10:24AM 3    '70S, AND AT THAT TIME THE NINTH CIRCUIT WAS, FROM WHAT I

10:24AM 4    UNDERSTAND BASED ON MY RESEARCH, WAS KIND OF AT THE FOREFRONT

10:24AM 5    OF ASKING THAT FOLLOW-UP QUESTION.  IT WAS, LIKE, WE DON'T END

10:24AM 6    THE INQUIRY AT, ARE THEY LAW ENFORCEMENT?  WE ASK, OKAY, IS

10:24AM 7    THIS IMMIGRATION OFFICER, OKAY, THEY ARE LAW ENFORCEMENT, BUT

10:24AM 8    ARE THEY ENFORCING THE LAW AT THIS TIME?  IS THIS A SUBJECTIVE

10:24AM 9    ADVERSARIAL PROCEEDING OR ARE THEY JUST STAMPING A PASSPORT?

10:24AM 10   AND AT THE TIME THE NINTH CIRCUIT WAS KIND OF AT THE

10:24AM 11   FOREFRONT OF THAT UNDER THE NEW RULES OF TRACING KIND OF WHAT

10:24AM 12   WAS THE COMMON LAW EXCEPTION TO WHAT ENDED UP BEING IN THE

10:25AM 13   FEDERAL RULES OF EVIDENCE.

10:25AM 14   THE OTHER CIRCUITS HAVE CAUGHT UP, AND SO THE SEVENTH

10:25AM 15   CIRCUIT ASKS THESE SAME QUESTIONS THESE DAYS.  IT DOESN'T SAY,

10:25AM 16   OH, LAW ENFORCEMENT.  WE ASK, ARE THEY LAW ENFORCEMENT?  AND

10:25AM 17   THEN WE DON'T ASK ABOUT, WELL, IS THIS A ROUTINE OBSERVATION

10:25AM 18   THAT THEY MADE KIND OF JUST COMING IN AND DOING PAPERWORK, OR

10:25AM 19   ARE THEY OUT IN THE FIELD, ARE THEY INVESTIGATING, ARE THEY

10:25AM 20   USING THE PROFESSIONAL JUDGMENT?  IS ANOTHER CASE, ANOTHER KIND

10:25AM 21   OF PRINCIPAL THAT YOU SEE INFLUENCING THE LAW?

10:25AM 22   AND THAT'S WHAT THE CMS INSPECTORS WERE DOING BECAUSE THEY

10:25AM 23   WENT IN AND WERE LOOKING AND THEY HAD A FEW THINGS THAT THEY

10:25AM 24   WANTED TO LOOK AT.  THEY KIND OF RECOGNIZED THAT THEY WERE

10:25AM 25   GOING TO WRITE A REPORT THAT COULD LEAD TO, YOU KNOW, A BACK

58

10:25AM 1    AND FORTH, A DIALOGUE WITH THE REGULATED ENTITY THAT WOULD, THE

10:25AM 2    NEXT STEP UP FROM THAT IS AN ALJ PROCEEDING, AND THEN THERE IS

10:25AM 3    FEDERAL COURT REVIEW AND POTENTIAL APPEAL RIGHTS AND THE LIKE.

10:25AM 4         AND I ACTUALLY THINK IT'S HELPFUL TO -- I THINK THAT THE

10:26AM 5    STRUCTURE OF THE CMS REPORT KIND OF DRILLS THIS POINT HOME.

10:26AM 6         MS. SAHARIA, IF YOU COULD PULL UP THE REPORT?  THIS IS

10:26AM 7    DEFENSE EXHIBIT 12 AT ECF 581-1.

10:26AM 8         THIS IS WHERE WE HAVE THE JANUARY 2016 REPORT.

10:26AM 9         SO IT BEGINS WITH A COVER LETTER THAT IS NOTIFYING THE

10:26AM 10   COMPANY THAT THERE HAVE BEEN CERTAIN CONDITION AND STANDARD

10:26AM 11   LEVEL DEFICIENCIES IDENTIFIED AND THAT THERE'S BEEN AN

10:26AM 12   IMMEDIATE JEOPARDY FINDING, AND IT CITES THE REGULATORY

10:26AM 13   PROVISIONS THAT ARE IN -- THAT ARE GOING TO BE CITED LATER ON.

10:27AM 14        IT INFORMS THE LABORATORY OF ITS RULINGS AND IT REQUESTS A

10:27AM 15   RESPONSE WITHIN 10 DAYS, WHICH IS A PRETTY AGGRESSIVE

10:27AM 16   TIMEFRAME.

10:27AM 17        IF YOU LOOK AT ONE EXAMPLE OF THE CITATION -- SO WE CAN GO

10:27AM 18   TO THE FIRST DEFICIENCY -- YOU KNOW, NO PARTICULAR DEFICIENCY

10:27AM 19   IS UNIQUE.  THEY ALL FOLLOW THE SAME STRUCTURE.

10:27AM 20        THEY START OUT WITH FIRST THE REGULATORY TEXT.  EACH ONE

10:27AM 21   OF THEM, THEY COPY AND PASTE THE WHOLE REGULATION IN, AND THEN

10:27AM 22   IT SETS FORTH WHAT FEELS LIKE AN ADJUDICATION AND NOT A ROUTINE

10:27AM 23   MINISTERIAL OBSERVATION.  IT IS, I REVIEWED FACTS AND I'M

10:27AM 24   OPINING THESE FACTS AS TO THE LAW AND I'M FINDING EITHER THE

10:27AM 25   CONDITION LEVEL OR STANDARD LEVEL REGULATORY REQUIREMENT NOT

10:27AM 1    MET.

10:27AM 2          IT THEN SUMMARIZES THE FACTS IN ITS DETERMINATION AND IT

10:27AM 3    USES THE PHRASE "BASED ON."  SO EACH ONE OF THESE ARE KIND OF

10:27AM 4    LIKE A MINI LITTLE RULING FROM A GOVERNMENT AGENT WHO WENT INTO

10:27AM 5    A LABORATORY AND KIND OF HAD FREE REIN TO PICK AROUND, AND I

10:28AM 6    THINK THIS REPORT REALLY ANSWERS THE QUESTION OF, IF THIS IS

10:28AM 7    SOMETHING THAT THEY HAD AN OBLIGATION TO REPORT, IS THIS

10:28AM 8    SOMETHING THAT CAME ACROSS SARAH BENNETT'S DESK ONE DAY AND

10:28AM 9    THAT SHE STAMPED?

10:28AM 10         NO.  THIS IS A GOVERNMENT INVESTIGATION.  THAT'S REALLY

10:28AM 11   WHY IT'S (A)(3), (A)(3).  THAT'S REALLY WHY WE SHOULD ONLY BE

10:28AM 12   DEALING WITH THAT.

10:28AM 13         BUT ASSUMING THAT WE'RE IN (A)(2), THAT'S WHY CMS WAS

10:28AM 14   ACTING AS LAW ENFORCEMENT IN ITS CAPACITY.  IT'S AN ADVERSARIAL

10:28AM 15   INTERACTION, AND ADVERSARIAL DOESN'T MEAN IT HAS TO BE NASTY,

10:28AM 16   IT'S JUST, WE ARE INSPECTING YOU AND YOU HAVE TO OPEN YOUR

10:28AM 17   BOOKS AND WE ARE GOING TO LOOK AT THEM ALL AND THERE IS

10:28AM 18   POTENTIAL CIVIL AND, IMPORTANTLY, CRIMINAL LIABILITY FOR WHAT

10:28AM 19   WE FIND, AND WE'RE GOING TO TAKE THIS AND WE'RE GOING TO TELL

10:28AM 20   YOU WHAT WE FOUND AND THAT'S GOING TO KICK OFF A SERIES OF

10:29AM 21   STEPS THAT COULD VERY LIKELY LEAD TO LITIGATION.

10:29AM 22         SO I DON'T THINK THAT THIS IS JUST AN OBSERVATION,

10:29AM 23   SOMETHING THAT WAS OBSERVED UNDER A DUTY TO REPORT.

10:29AM 24         THE COURT:  ISN'T THAT THEIR CHARGE, THEY'RE

10:29AM 25   SUPPOSED TO GO OUT AND LOOK AT LABORATORIES AND THEY HAVE THEIR

10:29AM 1     CLIPBOARDS AND THEIR CHECKLISTS AND THEY PICK THINGS OFF?

10:29AM 2          MR. LOOBY:  THERE ARE NO CHECKLISTS.  THERE ARE A

10:29AM 3     FEW MANUALS THAT KIND OF EXPLAIN WHAT THEY SHOULD BE LOOKING

10:29AM 4     ATM AND THEY USE THE PHRASE KIND OF OUTCOME DETERMINATIVE.

10:29AM 5          BUT THE THRUST OF ALL OF THE GUIDANCE MATERIAL THAT CMS

10:29AM 6     PUTS UP IS THAT IT REALLY RESTS A LOT OF THE DECISION MAKING IN

10:29AM 7     THE DISCRETION OF ITS INSPECTORS.

10:29AM 8          THEY ARE GIVEN, YOU KNOW, FULL DISCRETION OVER KIND OF

10:29AM 9     WHAT YOU SHOULD ASK ABOUT, WHAT LEVEL OF DOCUMENTATION SHOULD

10:29AM 10    MAKE THEM COMFORTABLE THAT THE LAB IS EITHER COMPLIANT, OR HOW

10:29AM 11    MUCH THEY NEED TO SEE TO DETERMINE IF THEY'RE NOT COMPLIANT.

10:29AM 12         IF THEY'RE NOT COMPLIANT, IS IT STANDARD LEVEL?  IS IT

10:30AM 13    CONDITION LEVEL?  IS THERE IMMEDIATE JEOPARDY?

10:30AM 14         YOU KNOW, THERE ARE NO RULES ABOUT THIS.  AND THIS IS WHAT

10:30AM 15    SARAH BENNETT TOLD THE GOVERNMENT, AND SHE ALSO TOLD THEM THIS,

10:30AM 16    YOU KNOW, OF COURSE THERE ARE CERTAIN THINGS THAT A LAB

10:30AM 17    INSPECTOR PROBABLY HAS A -- THIS IS WHAT I DO.  I'VE BEEN ON

10:30AM 18    THE JOB FOR 20 YEARS.  I'M GOING TO LOOK AT THE QC DATA, I'M

10:30AM 19    GOING TO LOOK AT THE PC DATA.  BUT THAT -- JUST BECAUSE THOSE

10:30AM 20    ARE A LITTLE BIT ROUTINE DOESN'T MEAN THE OBSERVATIONS THEY'RE

10:30AM 21    MAKING ARE NOT REQUIRING DISCRETION, PROFESSION JUDGMENT, AND

10:30AM 22    DISCERNMENT.

10:30AM 23         I SHOULD ALSO ADD, AS I MENTIONED EARLIER, THE REPORT AT

10:30AM 24    MANY JUNCTURES WILL KIND OF SAY WHAT THE CLIA LAB STAFF AT

10:30AM 25    THERANOS TOLD THE INSPECTOR.  SO IT WILL SAY, LIKE, I FOUND

| | | |
|---|---|---|
| 10:30AM | 1 | THERE WASN'T PAPERWORK FOR THIS.  I ASKED THE QA MANAGER WHERE |
| 10:31AM | 2 | IS IT AND HE SAID HE COULDN'T FIND IT. |
| 10:31AM | 3 | SOME OF THESE FINDINGS, AND WE DON'T HAVE TO GET INTO IT, |
| 10:31AM | 4 | BUT SOME OF THESE OBSERVATIONS IN THE JANUARY REPORT, THEY'RE |
| 10:31AM | 5 | VERY MUCH CONTESTED IN THE CASE AND THERE'S EVIDENCE -- THERE'S |
| 10:31AM | 6 | GOING TO BE EVIDENCE IN THE CASE THAT SUGGESTS THAT MAYBE |
| 10:31AM | 7 | THEY'RE AN INCOMPLETE PICTURE, AND THAT REALLY IS -- KIND OF |
| 10:31AM | 8 | DRIVES HOME THE DANGER OF PUTTING IN KIND OF THE JANUARY 2016 |
| 10:31AM | 9 | REPORT THAT INCLUDES MULTIPLE -- THE WHOLE THING IS HEARSAY, |
| 10:31AM | 10 | BUT WITHIN IT THERE'S ALSO HEARSAY.  AND IT HASN'T BEEN TESTED. |
| 10:31AM | 11 | THERANOS EVENTUALLY KIND OF SETTLED THE MATTER WITH CMS. |
| 10:31AM | 12 | IT DOESN'T BEHOOVE A LAB COMPANY TO KIND OF GO THROUGH EACH |
| 10:31AM | 13 | CITATION NECESSARILY AND OFFER -- KIND OF FIGHT WITH THE |
| 10:31AM | 14 | AGENCY.  A LOT OF THERANOS'S RESPONSES WERE, WE ARE WORKING TO |
| 10:31AM | 15 | BE BETTER. |
| 10:31AM | 16 | THE COURT:  OKAY.  ALL RIGHT. |
| 10:31AM | 17 | MR. LOOBY:  THANK YOU, YOUR HONOR. |
| 10:31AM | 18 | THE COURT:  MR. LEACH, ARE YOU RISING TO RESPOND TO |
| 10:32AM | 19 | THIS? |
| 10:32AM | 20 | MR. LEACH:  I AM. |
| 10:32AM | 21 | THE COURT:  WELL, I'M EAGER TO HEAR YOUR RESPONSE, |
| 10:32AM | 22 | BUT LET'S TAKE A BREAK.  WE'LL TAKE ABOUT 10 OR 15 MINUTES NOW. |
| 10:32AM | 23 | ALL RIGHT. |
| 10:32AM | 24 | MR. LEACH:  OF COURSE. |
| 10:32AM | 25 | THE COURT:  THANK YOU. |

62

| | | |
|---|---|---|
| 10:32AM | 1 | THE CLERK: THE COURT WILL TAKE A RECESS AT THIS |
| 10:32AM | 2 | POINT. |
| 10:33AM | 3 | (RECESS FROM 10:33 A.M. UNTIL 10:51 A.M.) |
| 10:51AM | 4 | THE COURT: WE'RE BACK ON THE RECORD. ALL PARTIES |
| 10:51AM | 5 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 10:51AM | 6 | MR. LEACH, YOU'D LIKE TO RISE FOR THE GOVERNMENT AS TO |
| 10:51AM | 7 | THIS MOTION? |
| 10:51AM | 8 | MR. LEACH: YES. THANK YOU VERY MUCH, YOUR HONOR. |
| 10:52AM | 9 | SO THE OBJECTIONS TO THE CMS SURVEY FINDINGS ARE |
| 10:52AM | 10 | THREE-FOLD: RELEVANCE, 403, AND HEARSAY, AND I'D LIKE TO TAKE |
| 10:52AM | 11 | THEM IN THAT ORDER IF I COULD, YOUR HONOR. |
| 10:52AM | 12 | RELEVANCE, OBVIOUSLY, IS A LOW STANDARD. WE SET THAT |
| 10:52AM | 13 | FORTH IN THE BRIEF. AND JUST TO GIVE YOU SOME CONCRETE |
| 10:52AM | 14 | EXAMPLES, IF A CMS INSPECTOR GOES INTO THERANOS LAB AND SEES |
| 10:52AM | 15 | THAT AN EDISON DEVICE IS FAILING QC FOR 15 CONSECUTIVE DAYS, |
| 10:52AM | 16 | THAT TENDS TO SHOW THERE ARE ISSUES WITH THE EDISON, WHICH GOES |
| 10:52AM | 17 | DIRECTLY TO THE INVESTOR COUNT AND DIRECTLY TO THE PATIENT |
| 10:52AM | 18 | COUNT. |
| 10:52AM | 19 | IF A CMS INSPECTOR GOES INTO THE THERANOS LAB AND SEES |
| 10:52AM | 20 | THAT A SET OF DOCUMENTS SHE'S ASKED FOR AND IS REVIEWING A |
| 10:52AM | 21 | THERANOS EDISON DEVICE HAS FAILED QC, BUT THEY'RE STILL |
| 10:53AM | 22 | REPORTING PATIENT RESULTS, THAT'S OBVIOUSLY EVIDENCE THAT THE |
| 10:53AM | 23 | DEVICE ISN'T WORKING AND THAT THERANOS IS IGNORING RED FLAGS |
| 10:53AM | 24 | ABOUT ITS DEVICE. |
| 10:53AM | 25 | I HEARD MY FRIEND ON THE FRIEND ON THE OTHER SIDE THAT THE |

```
10:53AM   1    QC IS AN INDICATOR THAT SOMETHING IS AWRY.  I COULDN'T AGREE

10:53AM   2    MORE WITH THAT.

10:53AM   3         AND LABS LIKE THERANOS ARE SUPPOSED TO HAVE QC PROCEDURES

10:53AM   4    TO IDENTIFY WHAT THE PROBLEM IS, INVESTIGATE IT, AND FIX IT.

10:53AM   5         THAT'S NOT A PROCEDURE CMS IS CHECKING TO MAKE SURE THAT

10:53AM   6    THEY'RE FOLLOWING THEIR OWN PROCEDURES.  CMS HAS STANDARDS AND

10:53AM   7    CONDITIONS AND IT'S MAKING SURE THOSE STANDARDS AND CONDITIONS

10:53AM   8    ARE BEING FOLLOWED.  SO IT'S MUCH MORE THAN JUST A FAILURE TO

10:53AM   9    FOLLOW PROCEDURE THERE.

10:53AM  10         AND THESE ARE NOT JUST MY RELEVANCE ARGUMENTS, YOUR HONOR.

10:53AM  11    THESE ARE RELEVANCE ARGUMENTS THAT THE DEFENDANT MADE IN

10:53AM  12    REALTIME TO HER BOARD AND ON HER WEBSITE.

10:53AM  13         SHE SAYS ONE OF THE WAYS YOU KNOW THAT THERANOS'S TESTS

10:53AM  14    ARE ACCURATE AND RELIABLE IS BECAUSE OF ITS CLIA ACCREDITATION,

10:54AM  15    BECAUSE IT'S COMPLYING WITH THESE STANDARDS AND CONDITIONS.

10:54AM  16    SHE DREW THE RELEVANCE CONNECTION.

10:54AM  17         ALTHOUGH I THINK IT'S PATENT FROM A CMS INSPECTOR GOING IN

10:54AM  18    AND LOOKING AT THE EDISONS AND LOOKING AT THE DOCUMENTS THAT

10:54AM  19    ARE PROVIDED.

10:54AM  20         IN ADDITION, I THINK THEY ARE CHERRY PICKING CERTAIN

10:54AM  21    STATEMENTS FROM SARAH BENNETT, THE CMS INSPECTOR WHO WE EXPECT

10:54AM  22    TO TESTIFY TO SAY THAT CMS REGULATIONS HAVE NOTHING TO DO WITH

10:54AM  23    ACCURACY AND RELIABILITY.  SHE WILL NOT SAY THAT.

10:54AM  24         THESE STANDARDS AND CONDITIONS ARE DESIGNED TO ENSURE

10:54AM  25    ACCURACY AND RELIABILITY.  THEY DON'T, YOU KNOW, EXIST FOR
```

10:54AM 1    THEIR OWN SAKE IN A VACUUM.  THEY'RE THERE AS THE MEASURES TO

10:54AM 2    MAKE SURE THAT THESE TESTS ARE ACCURATE AND RELIABLE.

10:54AM 3        AND WHAT THE GOVERNMENT IS SEEKING FROM THE CMS FINDINGS

10:54AM 4    IS THE OBSERVATIONS THAT THESE INSPECTORS MAKE WHEN THEY GO IN

10:54AM 5    IN SEPTEMBER OF 2015.  WHAT WAS THE QC DATA FOR THIS EDISON

10:55AM 6    DEVICE ON THESE DATES?  WHAT DID YOU SEE IN TERMS OF CV'S AND

10:55AM 7    STANDARD VARIATIONS FOR THESE ASSAYS?  WHAT DID YOU SEE THAT

10:55AM 8    THERANOS HAD DONE ABOUT IT WHEN THEY WERE OUT OF RANGE?  AND

10:55AM 9    THE ANSWER, FOR THE MOST PART, IS NOTHING.

10:55AM 10       AND THESE THINGS THAT CMS SEES, HEARS, AND DOES, IT'S WHAT

10:55AM 11   THEY DO EVERY DAY IN THEIR INSPECTIONS, AND THEY WILL BE

10:55AM 12   SUBJECT TO CROSS-EXAMINATION.  I JUST -- I DON'T THINK THERE'S

10:55AM 13   A CLOSE QUESTION ON RELEVANCE AND 403.

10:55AM 14       THESE OBVIOUSLY GO TO THE HEART OF THE GOVERNMENT'S

10:55AM 15   ALLEGATIONS.  I THINK SARAH BENNETT AND THE CMS STANDARDS DRAW

10:55AM 16   THE CONNECTION BETWEEN ACCURACY AND RELIABILITY, AND THIS

10:55AM 17   REALLY IS A CASE OF ONE OF THE ONLY TIMES WHERE SOMEBODY FROM

10:55AM 18   THE OUTSIDE GOT A LOOK UNDER THE HOOD AT THERANOS AND REPORTED

10:55AM 19   WHAT THEY SAW.

10:55AM 20       AND WHAT THEY SAW WAS SO TROUBLING THAT THEY ISSUED THE

10:55AM 21   FORM 2567 WHICH FOUND THAT THERE WAS IMMEDIATE JEOPARDY TO

10:56AM 22   PATIENTS BECAUSE CERTAIN STANDARDS AND CONDITIONS WEREN'T BEING

10:56AM 23   MET.

10:56AM 24           THE COURT:  CAN I ASK YOU SOMETHING?  I'M SORRY TO

10:56AM 25   INTERRUPT YOUR PRESENTATION.

65

10:56AM 1    BUT ON A 403 QUESTION, WOULD THAT -- IS THAT MORE

10:56AM 2  PREJUDICIAL THAN PROBATIVE?  IF THE STATEMENT COMES IN, IF THIS

10:56AM 3  COMES IN, I THINK YOUR COLLEAGUE OPPOSITE WOULD SAY, WELL, EVEN

10:56AM 4  IF IT COMES IN, JUDGE, YOU CAN'T LET THAT IN BECAUSE THAT'S FAR

10:56AM 5  TOO PREJUDICIAL AND THE PROBATIVE VALUE IS CLEARLY OUTWEIGHED

10:56AM 6  BY THE PREJUDICIAL IMPACT THAT IT WOULD HAVE ON A JURY,

10:56AM 7  INDICATING RED LIGHTS FLASHING.

10:56AM 8    MR. LEACH:  I DIDN'T HEAR THAT SPECIFIC ARGUMENT

10:56AM 9  FROM MY COLLEAGUE, AND CERTAINLY WE ARE OPEN TO REDACTIONS TO

10:56AM 10  THE REPORT, OR IF THERE ARE SPECIFIC ASPECTS LIKE THAT THAT ARE

10:56AM 11  IN THE 403 BALANCING, I CERTAINLY THINK THAT IS IN PLAY

10:57AM 12  SOMEWHERE.

10:57AM 13    BUT I'M A LITTLE HESITANT BECAUSE IT ALSO HAS VERY

10:57AM 14  SPECIFIC LEGAL CONSEQUENCES THAT ARE GOING TO BLEED INTO THE

10:57AM 15  NEXT MOTION, AND I WOULDN'T -- YOU KNOW, I CAN FORESEE

10:57AM 16  INSTANCES WHERE MY FRIENDS ON THE OTHER SIDE WANT TO MINIMIZE

10:57AM 17  THE SERIOUSNESS OF SOME OF THE THINGS THAT CMS IS FINDING AND I

10:57AM 18  WOULD WANT TO BE ABLE TO RESPOND TO THOSE.

10:57AM 19    AND ALSO ON JUST THE LEGAL CONSEQUENCES, THE DEFENDANT IS

10:57AM 20  TRYING TO RUN AWAY FROM HER ADMISSIONS AFTER THE CMS REPORT.

10:57AM 21  AFTER THIS DAMAGING REPORT, THEY TOLD CMS -- AND THIS IS AT

10:57AM 22  72-7, I'M SORRY, 727-1 -- "WE, THERANOS, SEE A GLOBAL AND

10:57AM 23  LONG-TERM FAILURE OF QUALITY CONTROL PROGRAM FOR OUR

10:57AM 24  PROPRIETARY DEVICES AND WE CONCLUDE THERE'S A POSSIBLE PATIENT

10:57AM 25  IMPACT FOR EVERY TEST REPORTED ON THE TSPU."

10:58AM 1      THAT'S THERANOS'S WORDS TO CMS THAT THEY'RE TRYING TO RUN

10:58AM 2   AWAY FROM NOW.

10:58AM 3      SO IN THIS 403 BALANCING ON, IS THERE IMMEDIATE JEOPARDY,

10:58AM 4   I DON'T WANT TO CREATE A FALSE IMPRESSION THAT THERE'S NOT

10:58AM 5   SOMETHING VERY, VERY SERIOUS HERE, AND I THINK IT'S ABSOLUTELY

10:58AM 6   CRITICAL THAT THEY ADMIT THAT THERE'S A POSSIBLE IMPACT TO

10:58AM 7   PATIENT TEST RESULTS IN THEIR RESPONSE TO CMS.

10:58AM 8      BUT CERTAINLY THAT TYPE OF -- YOU KNOW, THE CMS REPORT IS

10:58AM 9   A COMBINATION OF FACTUAL OBSERVATIONS THAT THE INSPECTOR IS

10:58AM 10   MAKING, A DETERMINATION OF IS THIS CONDITION BEING MET OR NOT

10:58AM 11   MET, AND SOLICITING A RESPONSE.

10:58AM 12      AND RESPONSE IS IMPORTANT, TOO, BECAUSE MOST OF THERANOS'S

10:58AM 13   RESPONSE IS, YOU'RE RIGHT, YOU'RE RIGHT, WE'LL FIX THAT, YOU'RE

10:58AM 14   RIGHT.

10:58AM 15      NOT THAT DIDN'T HAPPEN.

10:58AM 16      AND THOSE ARE ADMISSIONS.

10:58AM 17         THE COURT:  DOES IT MATTER THAT IT NEVER WAS FIXED?

10:59AM 18         MR. LEACH:  YES.

10:59AM 19         THE COURT:  AND ULTIMATELY, I THINK THAT'S WHAT THE

10:59AM 20   EVIDENCE WILL SHOW, THAT WHAT I'VE GLEANED HERE, THAT THERE

10:59AM 21   WASN'T COMPLIANCE SUCH THAT THERE WAS SOME TYPE OF A -- IT WENT

10:59AM 22   THROUGH A PROCEDURE AND ULTIMATELY THERE WAS A SETTLEMENT OF

10:59AM 23   SOME SORT.

10:59AM 24         MR. LEACH:  WELL, BEFORE THE SETTLEMENT, YOUR HONOR,

10:59AM 25   THERANOS ON ITS OWN ELECTS TO CLOSE, SHUTTER ITS CLIA LAB, AND

| | | |
|---|---|---|
| 10:59AM | 1 | THAT IS NOT A SETTLEMENT. IT'S A BUSINESS DECISION. I HATE TO |
| 10:59AM | 2 | USE THE WORD BUSINESS DECISION. IT'S A DECISION THAT |
| 10:59AM | 3 | MS. HOLMES MADE IN AUGUST OF 2016 TO COMPLETELY SHUTTER THE |
| 10:59AM | 4 | LAB. |
| 10:59AM | 5 | SHE TOLD THE PRESS, I KNOW WHAT WE'VE BUILT, AND SHE |
| 10:59AM | 6 | ESSENTIALLY SAYS, I WANT TO START FROM THE GROUND UP. |
| 10:59AM | 7 | SO IT DOES END WITH THE LAB BEING SHUTTERED AND THERE IS A |
| 10:59AM | 8 | FORMAL SETTLEMENT YEARS LATER, BUT IT'S NOT THE SETTLEMENT BY |
| 10:59AM | 9 | ITSELF THAT RESULTED IN THE LAB BEING CLOSED. |
| 10:59AM | 10 | THE COURT: THANK YOU. SORRY TO INTERRUPT YOU. |
| 11:00AM | 11 | MR. LEACH: WITH RESPECT TO THE CONNECTION TO THE |
| 11:00AM | 12 | RELEVANCE AND 403 ARGUMENTS, THERE ARE LOTS OF FACTUAL |
| 11:00AM | 13 | OBSERVATIONS IN THE CMS REPORT. WHAT IS THE CD? WHAT DO THE |
| 11:00AM | 14 | LEVEY-JENNINGS CHARTS SHOW? |
| 11:00AM | 15 | AND THOSE ARE THE TYPE OF ROUTINE OBSERVATIONS POLICE |
| 11:00AM | 16 | OFFICERS WOULD BE ABLE TO MAKE IF THEY CAME IN, ALTHOUGH I'M |
| 11:00AM | 17 | GOING TO GET TO THE LAW ENFORCEMENT THING, AND THEY SHOULD BE |
| 11:00AM | 18 | ABLE TO TESTIFY TO WHAT THEY SAW, HEARD, DID, AND CONCLUDED |
| 11:00AM | 19 | DURING THAT EXAM. THAT'S WHAT THEY DO EVERY DAY AND THEY'LL BE |
| 11:00AM | 20 | SUBJECT TO CROSS-EXAMINATION. |
| 11:00AM | 21 | SO I JUST DON'T THINK THAT THERE ARE, WITH THE POSSIBLE |
| 11:00AM | 22 | EXCEPTION THAT YOUR HONOR IS IDENTIFYING, THERE WOULD BE |
| 11:00AM | 23 | POSSIBLE RELEVANCE OR A 403 ISSUE. |
| 11:00AM | 24 | WITH RESPECT TO HEARSAY, I REALLY THINK THE UPSHOT OF THE |
| 11:01AM | 25 | DEFENSE ARGUMENT, YOUR HONOR, IS THAT THERE CAN'T BE GOVERNMENT |

68

11:01AM 1    BUSINESS RECORDS.  THEY'RE READING AWAY ON SOME LEVEL 803(8)

11:01AM 2    PARALLELS TO 803(6), AND IT'S BUSINESS RECORDS FOR THE

11:01AM 3    GOVERNMENT.

11:01AM 4         THERE'S A CONFRONTATION CLAUSE ISSUE BREWING HERE.  WE

11:01AM 5    CAN'T JUST HAVE THE GOVERNMENT MARKING FBI 302'S AND RESTING

11:01AM 6    OUR CASE.  WE JUST CAN'T BE MARKING INS REPORTS FROM 20 YEARS

11:01AM 7    AGO WITHOUT THE ABILITY TO ASK QUESTIONS ABOUT WHAT HAPPENED.

11:01AM 8         THAT'S NOT GOING TO HAPPEN HERE.  SARAH BENNETT IS GOING

11:01AM 9    TO BE ON THE STAND AND CAN TESTIFY TO ALL OF THAT.

11:01AM 10        AND THEY WANT TO READ AWAY THIS WORD "OR."  WE CAN USE

11:01AM 11   803(8) TO GET IN WHAT LOOKS TO ME A LOT LIKE A GOVERNMENT

11:01AM 12   BUSINESS RECORD.

11:01AM 13        YES, THERE ARE SOME JUDGMENT AND SUBJECTIVITY IN THERE,

11:01AM 14   BUT IF YOU LOOK AT 803(6), IT TOLERATES OPINIONS FROM DOCTORS,

11:02AM 15   IT TOLERATES JUDGMENTS AND CONCLUSIONS, AND THE GOVERNMENT

11:02AM 16   SHOULD NOT GET ANY LESSER OF A BENEFIT HERE, PARTICULARLY WHEN

11:02AM 17   THE WITNESS IS GOING TO BE ON THE STAND ANSWERING QUESTIONS AND

11:02AM 18   CROSS-EXAMINED.

11:02AM 19        THERE'S A LOT OF CONVERSATION ABOUT THE LAW ENFORCEMENT

11:02AM 20   EXCEPTION.  THE NINTH CIRCUIT DOES SAY THAT YOU HAVE TO LOOK AT

11:02AM 21   THAT NARROWLY.

11:02AM 22        AND I THINK IT'S A MISTAKE TO TRY TO CATEGORIZE CMS

11:02AM 23   INSPECTORS AS LAW ENFORCEMENT PERSONNEL.  THESE ARE LARGELY

11:02AM 24   SCIENTISTS, DOCTORS.  THEY DON'T HAVE A GUN.  SARAH BENNETT

11:02AM 25   DOES NOT HAVE THE AUTHORITY TO PUT SOMEBODY IN PRISON.  SHE'S

| | | |
|---|---|---|
| 11:02AM | 1 | THERE TO MAKE SURE THAT THE LAB IS MEETING CLIA REGULATIONS |
| 11:02AM | 2 | WHICH ARE DESIGNED TO ENSURE ACCURACY AND RELIABILITY. |
| 11:02AM | 3 | AND IF SARAH BENNETT IS LAW ENFORCEMENT PERSONNEL, THEN A |
| 11:02AM | 4 | WHOLE HOST OF GOVERNMENTAL AGENTS ARE ALSO LAW ENFORCEMENT |
| 11:03AM | 5 | PERSONNEL, AND YOU'RE ESSENTIALLY WEEDING OUT ANY ABILITY FOR |
| 11:03AM | 6 | THE GOVERNMENT TO GET WHAT ARE ESSENTIALLY GOVERNMENT BUSINESS |
| 11:03AM | 7 | RECORDS INTO EVIDENCE. |
| 11:03AM | 8 | THE COURT:  I THINK WHAT MR. LOOBY'S POINT IS, AND |
| 11:03AM | 9 | HE'LL REMIND US, THAT THE INSPECTORS DO HAVE SOME AUTHORITY, |
| 11:03AM | 10 | THEY CAN SHUT A LAB DOWN.  HE SAID THAT THEY COULD IMPOSE OR |
| 11:03AM | 11 | PERHAPS RECOMMEND CIVIL FINES, CIVIL PENALTIES. |
| 11:03AM | 12 | BUT HE SEEMED TO SAY THAT THEY ALSO HAVE SOME AUTHORITY TO |
| 11:03AM | 13 | EITHER RECOMMEND OR IMPOSE, I CAN'T REMEMBER WHICH HE SAID, |
| 11:03AM | 14 | CRIMINAL SANCTIONS. |
| 11:03AM | 15 | MR. LEACH:  I THINK THAT'S PROBABLY EQUALLY TRUE FOR |
| 11:03AM | 16 | A HOST OF CIVIL AUTHORITIES WITHIN HHS, WITHIN OTHER GOVERNMENT |
| 11:03AM | 17 | AGENCIES, THE S.E.C., FOR EXAMPLE.  OBVIOUSLY THEY CAN MAKE |
| 11:03AM | 18 | RECOMMENDATIONS.  THEY CAN REFER SOMETHING. |
| 11:03AM | 19 | I IMAGINE THAT WAS EQUALLY TRUE IN THE SEVENTH CIRCUIT |
| 11:03AM | 20 | CASE WITH THE BUILDING INSPECTORS. |
| 11:03AM | 21 | I THINK THE LINE THAT THE GOVERNMENT IS ADVOCATING HERE |
| 11:04AM | 22 | FOR IS THAT THERE'S AN INSPECTION ABILITY, AND THEN THERE'S THE |
| 11:04AM | 23 | INVESTIGATIVE FUNCTION WHERE A LAW ENFORCEMENT AGENCY IS |
| 11:04AM | 24 | COMMENCING AN INVESTIGATION AND IS GOING OUT AND INTERVIEWING |
| 11:04AM | 25 | FOLKS WITH AN EYE TOWARDS PROVING A CRIME VERSUS AN INSPECTOR |

11:04AM 1    WHO IS THERE TO MAKE SURE THAT THE CIVIL LAW IS BEING FOLLOWED.

11:04AM 2         SO I JUST THINK IT OVERPLAYS THE ROLE OF CMS INSPECTORS TO

11:04AM 3    ANALOGIZE THEM TO AN I.R.S. CRIMINAL INVESTIGATOR OR AN FBI

11:04AM 4    AGENT.

11:04AM 5         AND IF YOU ACCEPT THAT BROAD VIEW, THAT THE POSSIBILITY OF

11:04AM 6    A CRIME BEING OUT THERE SOME DAY ANYTIME THE GOVERNMENT GOES

11:04AM 7    AND TALKS TO THEM, YOU'RE GOING TO READ -- YOU'RE GOING TO

11:04AM 8    DISABLE THE GOVERNMENT FROM EVER GETTING ANY OF THEIR DOCUMENTS

11:04AM 9    INTO EVIDENCE, AND AT A MINIMUM THEY SHOULD BE PERMITTED TO

11:04AM 10   COME IN AND TALK ABOUT WHAT THEY SAW, HEARD, DID, AND

11:05AM 11   CONCLUDED.

11:05AM 12        THE BEST NINTH CIRCUIT AUTHORITY IS FRYBERG THAT SAYS YOU

11:05AM 13   SHOULD READ THAT IN LIMITED FASHION.  THE NINTH CIRCUIT HAS

11:05AM 14   READ IT TO INCLUDE CRIMINAL LAW ENFORCEMENT OFFICERS IF THEY'RE

11:05AM 15   REALLY STICKING TO SOMETHING VERY MINISTERIAL.

11:05AM 16        I WOULD ALSO NOTE THAT 803(8) DOES NOT USE THIS SUBJECTIVE

11:05AM 17   MINISTERIAL LANGUAGE.  THE STANDARD IS, IS THE INDIVIDUAL UNDER

11:05AM 18   A LEGAL DUTY TO RECORD WHAT THEY'RE DOING, AND HERE

11:05AM 19   SARAH BENNETT ALMOST CERTAINLY IS.

11:05AM 20        MAYBE THERE'S SOME JUDGMENT IN WHAT SHE ASKED FOR, BUT

11:05AM 21   WHATEVER SHE ASKED FOR, SHE WRITES IT DOWN AND THAT'S HER DUTY

11:05AM 22   TO DO THAT.

11:05AM 23        THERE WAS SOME CONVERSATION ABOUT HEARSAY WITHIN THE

11:05AM 24   REPORT.  THERE'S, WITHIN THE REPORT, SOME STATEMENT OF THERANOS

11:05AM 25   AGENTS.  THERE'S NOT A HEARSAY PROBLEM THERE, YOUR HONOR,

71

11:05AM 1    BECAUSE THESE ARE STATEMENTS OF AGENTS OF MS. HOLMES.  THESE

11:05AM 2    ARE PEOPLE WHO ARE HER AGENTS UNDER OTHER DIVISIONS OF 803.

11:06AM 3         WITH THAT, YOUR HONOR, UNLESS THE COURT HAS FURTHER

11:06AM 4    QUESTIONS, I'LL SUBMIT.

11:06AM 5         THE COURT:  NO.  THANK YOU.

11:06AM 6         MR. LOOBY:  SO WITH THE COURT'S INDULGENCE, I THINK

11:06AM 7    WE'LL START WITH HEARSAY BECAUSE THAT'S WHERE WE ENDED.

11:06AM 8         SO THE GOVERNMENT IS RELYING ON THE FRYBERG CASE OUT OF

11:06AM 9    THE NINTH CIRCUIT, AND IN THE -- FRYBERG INVOLVED A RETURN OF

11:06AM 10   SERVICE FORM THAT WAS SERVED BY A TRIBAL POLICE OFFICER.  SO

11:06AM 11   THE FACT THAT THE OFFICER WAS LAW ENFORCEMENT WASN'T IN DISPUTE

11:06AM 12   IN THE CASE, BUT THE QUESTION WAS, WELL, IS THE OBSERVATION

11:06AM 13   REFLECTED ON THE RETURN OF SERVICE, THAT SERVICE HAD TAKEN

11:06AM 14   PLACE, WAS IT AN OBJECTIVE ONE, NOT THE TYPE OF SUBJECTIVE

11:07AM 15   OBSERVATION SUMMARY OPINION OR CONCLUSION OF THE LAW

11:07AM 16   ENFORCEMENT PERSONNEL.

11:07AM 17        SO THE NINTH CIRCUIT MIGHT READ LAW ENFORCEMENT NARROWLY

11:07AM 18   AS THEY SAY -- THE LAW ENFORCEMENT EXCEPTION NARROWLY AS THEY

11:07AM 19   SAY IN FRYBERG, BUT WHEN THEY SAY THAT, THEY MEAN THEY'RE

11:07AM 20   ASKING THAT SECOND QUESTION:  IS THIS LAW ENFORCEMENT OFFICER,

11:07AM 21   ARE THEY MAKING OBJECTIVE OBSERVATIONS?  ARE THEY RECORDING THE

11:07AM 22   LICENSE PLATES?  OR ARE THEY MARKING THAT SERVICE WAS INDEED

11:07AM 23   EFFECTUATED ON THIS PERSON TO PROVE THAT HE WAS GIVEN NOTICE,

11:07AM 24   WHICH WAS AN ELEMENT IN THE CASE, OR WERE THEY DOING SOMETHING

11:07AM 25   MORE?

72

11:07AM  1      AND FOR ALL OF THE REASONS THAT WE DISCUSSED, THE CMS

11:07AM  2  REPORT, IT'S NOT JUST AN EVERY DAY KIND OF RECORDATION.  IT'S

11:07AM  3  AN ASSESSMENT OF AN OPEN RECORD THAT THE CMS INSPECTOR HAS

11:07AM  4  DISCRETION TO CHOOSE FROM.

11:07AM  5          THE COURT:  BY A LAW ENFORCEMENT OFFICER?

11:07AM  6          MR. LOOBY:  RIGHT, RIGHT.

11:07AM  7          THE COURT:  YOUR POSITION IS PREDICATED ON THAT

11:07AM  8  PERSON BEING A LAW ENFORCEMENT OFFICER.

11:07AM  9          MR. LOOBY:  WELL, I MEAN, YES.  YES AND NO, BECAUSE

11:08AM  10  IN RULE -- IN 803(A)(2) CASES, 803(8)(A)(2) CASES, LIKE, FOR

11:08AM  11  EXAMPLE, THE ROSA CASE OUT OF THE SECOND CIRCUIT, WHICH IS A

11:08AM  12  CASE THAT THE GOVERNMENT CITES, AND THAT'S UNITED STATES V.

11:08AM  13  ROSA, AND THAT'S 11 F.3D 315, AND THAT'S A CASE INVOLVING A

11:08AM  14  MEDICAL EXAMINER AUTOPSY REPORT IN A GANG RELATED CASE.

11:08AM  15      SO THE SECOND CIRCUIT SAID MEDICAL EXAMINERS, THEY'RE NOT

11:08AM  16  LAW ENFORCEMENT.  BUT THE DISTRICT COURT PROPERLY, REGARDLESS

11:08AM  17  OF THAT, THE DISTRICT COURT PROPERLY REDACTED ALL OF THE

11:08AM  18  OPINIONS, DIAGNOSES, AND CONCLUSIONS FROM THE REPORT BECAUSE IT

11:08AM  19  WAS OFFERED UNDER SUBSECTION 803(8)(A)(2) BECAUSE THE BUSINESS

11:08AM  20  RECORD EXCEPTION FOR GOVERNMENT RECORDS, WHEN OFFERED AGAINST A

11:08AM  21  CRIMINAL DEFENDANT, IS LIMITED TO THOSE TYPES OF OBSERVATIONS.

11:09AM  22      WE'RE NOT READING OUT ANY POWER OF THE GOVERNMENT THAT

11:09AM  23  THEY HAVE.  THIS IS THE RESTRICTION THAT THE DRAFTERS OF THE

11:09AM  24  FEDERAL RULE OF EVIDENCE PUT ON.

11:09AM  25      THEY SAY IF IT'S AN INVESTIGATIVE REPORT, WHICH IS THIS

11:09AM 1    UNDER (A)(3), NO GO, IT'S NOT COMING IN AGAINST A CRIMINAL

11:09AM 2    DEFENDANT.

11:09AM 3        IF IT'S NOT THAT AND WE'RE IN 803(A)(2) LAND AND IT'S AN

11:09AM 4    OBSERVATION THAT THEY REPORTED, WELL, IT CAN COME IN IF IT'S

11:09AM 5    LIKE A BUSINESS RECORD, IF IT'S SOMETHING YOU DO EVERY DAY,

11:09AM 6    SOMETHING THAT YOU RECORD, BUT NOT SOMETHING THAT REQUIRES

11:09AM 7    OBSERVATIONS, DIAGNOSES, AND CONCLUSIONS.  SO THAT'S THE ROSA

11:09AM 8    CASE.

11:09AM 9        REALLY ALL OF THE GOVERNMENT'S CASES RECOGNIZE THIS KIND

11:09AM 10   OF DISTINCTION.  SO THE EDELMANN CASE OUT OF THE EIGHTH CIRCUIT

11:09AM 11   IN 2006, AND THAT'S AT 458 F.3D 791, SO THIS IS A MAIL FRAUD

11:09AM 12   AND MONEY LAUNDERING CASE, AND THE PIECE OF EVIDENCE AT ISSUE

11:09AM 13   IS A MEMO TO FILE BY, LIKE, A PRISON ADMINISTRATOR.  IT HELD

11:10AM 14   THE MANAGER WAS NOT LAW ENFORCEMENT, AND THE COURT WENT ON TO

11:10AM 15   SAY THE MEMO DOES NOT CONTAIN ANY OPINIONS, FINDINGS, OR

11:10AM 16   CONCLUSIONS.  IT'S A RECORD OF EVENTS COMMUNICATED TO WILSON

11:10AM 17   AND RECORDED CONTEMPORANEOUSLY WITH THE EVENT, WHICH IS

11:10AM 18   SOMETHING THAT SHE OBSERVED IN HER DAILY BUSINESS.  IT'S NOT AN

11:10AM 19   INVESTIGATION.  IT DOESN'T REQUIRE ANY KIND OF HIGHER LEVEL

11:10AM 20   THINKING.

11:10AM 21       WHEN THOSE TYPES OF DOCUMENTS ARE OFFERED UNDER A HEARSAY

11:10AM 22   EXCEPTION AGAINST A CRIMINAL DEFENDANT, THE FEDERAL RULES OF

11:10AM 23   EVIDENCE RESTRICT IT IN CERTAIN CAPACITIES.

11:10AM 24       THE COURT:  LET ME STOP YOU THERE.

11:10AM 25       MR. LEACH, COULD YOU COME FORWARD AND WE'LL DO A LITTLE

11:10AM 1    POINT AND COUNTER-POINT AS TO THIS ISSUE, PLEASE.

11:10AM 2         MR. LEACH:  AGAIN, YOUR HONOR, THESE AREN'T

11:10AM 3    DISTINCTIONS THAT ARE IN 803(B) -- OR 803(8)(B).  IT'S A DUTY

11:10AM 4    TO REPORT BY SOMEONE WHO IS NOT A LAW ENFORCEMENT PERSONNEL IN

11:11AM 5    A CRIMINAL CASE.

11:11AM 6         AND THE DEFINITION OF "LAW ENFORCEMENT PERSONNEL" DOESN'T

11:11AM 7    CHANGE BASED ON THE PARTICULAR DOCUMENT.  IT'S A CATEGORICAL

11:11AM 8    DESCRIPTION.

11:11AM 9         AND THIS DOCUMENT ISN'T THE TYPE WHERE YOU CAN PUT IT ALL

11:11AM 10   IN ONE CATEGORY OR ALL NOT IN THE CATEGORY.

11:11AM 11        SO LAW ENFORCEMENT PERSONNEL IS DESIGNED TO BE GUIDED BY

11:11AM 12   THE FUNCTIONS OF THAT OFFICER.

11:11AM 13        THERE ARE CASES WHERE SOMEBODY WHO IS A LAW ENFORCEMENT

11:11AM 14   OFFICER, THEY STILL TO TOLERATE IT UNDER 803(B) BECAUSE IT'S IN

11:11AM 15   THAT LIMITED CATEGORY.

11:11AM 16        BUT THESE CASES ARE NOT SAYING THAT IF THE PERSON ISN'T

11:11AM 17   THAT LAW ENFORCEMENT OFFICER, YOU APPLY THAT SAME TYPE OF

11:11AM 18   ANALYSIS.

11:11AM 19        THE TEST IS, ARE THEY UNDER A DUTY TO REPORT THE

11:11AM 20   INFORMATION HERE, AND SARAH BENNETT UNQUESTIONABLY WAS.

11:11AM 21        THE COURT:  WELL, MR. LOOBY SUGGESTS THAT BECAUSE

11:11AM 22   THE REPORTING GOES A LITTLE BIT FURTHER, IT CALLS FOR OPINIONS,

11:12AM 23   CONCLUSIONS, OBSERVATIONS, THAT CHANGES THE CHARACTER OF THAT

11:12AM 24   REPORT SUCH THAT IT SHOULDN'T COME IN.

11:12AM 25        MR. LEACH:  WELL, A BUILDING EXAMINER WILL GO OUT

11:12AM 1    AND SAY, WHAT ARE THE DIMENSIONS OF THIS HOUSE?  WHAT IS THE

11:12AM 2    THICKNESS OF THE CONCRETE?  WHAT IS THE STATE OF THE

11:12AM 3    ELECTRICITY?  NONE OF THOSE THINGS MAKES THAT PERSON A LAW

11:12AM 4    ENFORCEMENT OFFICER.

11:12AM 5        I CONCEDE THERE ARE INSTANCES WHERE SOMEONE WHO IS A LAW

11:12AM 6    ENFORCEMENT OFFICER IS MAKING OBSERVATIONS LIKE, YOU KNOW, THIS

11:12AM 7    GUY VIOLATED THE LAW, OR I FIND X.  BUT THAT'S EXCLUDED NOT

11:12AM 8    BECAUSE OF WHAT HE'S FINDING, IT'S EXCLUDED BECAUSE HE'S A LAW

11:12AM 9    ENFORCEMENT OFFICER.

11:12AM 10   SO I ACCEPT THAT THERE ARE GRADATIONS WITHIN THE CMS

11:12AM 11   REPORT, BUT THE CORE OF IT IS THAT WE LOOKED AT THIS DATA, THIS

11:12AM 12   DATA SAID X, THERE'S NO SUBJECTIVITY TO THAT PIECE OF IT.

11:12AM 13       AND THE ONES THAT ARE, ARE NOT EXCLUDABLE BECAUSE

11:13AM 14   SARAH BENNETT EITHER IS OR SHE IS NOT A LAW ENFORCEMENT

11:13AM 15   OFFICER.

11:13AM 16              THE COURT:  ALL RIGHT.  THANK YOU.

11:13AM 17              MR. LOOBY:  THANK YOU, YOUR HONOR.

11:13AM 18   SO I WOULD JUST SAY THAT THE ROSA CASE THAT I CITED TO YOU

11:13AM 19   AND ALSO THE EDELMANN CASES, THESE ARE GOVERNMENT CASES.  THESE

11:13AM 20   ARE 803(8)(A)(2) OR (B), DEPENDING ON WHAT THE DIGITS OF THE

11:13AM 21   FEDERAL RULES YOU'RE LOOKING AT.  THOSE ARE SUBSECTION

11:13AM 22   (2) CASES ESSENTIALLY, AND THEY ARE LIKE -- IT'S NOT IN THE

11:13AM 23   LANGUAGE OF THE RULE.  THE CASE LAW APPLYING IT DOES ASK, DOES

11:13AM 24   THE MEMO CONTAIN OPINIONS, FINDINGS, AND CONCLUSIONS?

11:13AM 25       AND THEN AN ADDITIONAL CITE, AND THIS IS ANOTHER

11:13AM 1    GOVERNMENT CASE, UNITED STATES V. LOPEZ, 762 F.3D 852, AND

11:13AM 2    THAT'S NINTH CIRCUIT 2014.  SO THAT'S AN ILLEGAL ALIEN FOUND IN

11:13AM 3    THE U.S. AFTER DEPORTATION CASE.  SO THIS IS ALSO ADDRESSING A

11:13AM 4    LAW ENFORCEMENT QUESTION.

11:13AM 5        THE COURT IS ASKING, DOES THE FORM LEAVE ROOM FOR

11:14AM 6    SUBJECTIVITY?  NO.  THIS IS LIKE A WARRANT OF DEPORTATION.

11:14AM 7    IT'S LIKE THE HERNANDEZ-ROJAS DOCUMENT.

11:14AM 8        SO I WOULD SAY THAT THIS REQUIREMENT, I'M NOT MAKING IT

11:14AM 9    UP, IT'S IN THE CASE LAW.

11:14AM 10            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.  ANYTHING

11:14AM 11   FURTHER?

11:14AM 12            MR. LOOBY:  YEAH, I DID WANT TO ADDRESS -- TURNING

11:14AM 13   TO THE RELEVANCE ISSUES.  I WOULD SAY THAT THERE'S REALLY

11:14AM 14   NOTHING INCONSISTENT BETWEEN THE STATEMENTS THAT THE GOVERNMENT

11:14AM 15   RAISES THAT THERANOS MADE PRIOR TO THE INSPECTION SAYING WE ARE

11:14AM 16   CLIA CERTIFIED AND WE TAKE PRIDE IN OUR CLIA CERTIFICATION, AND

11:14AM 17   THE DEFENSE ARGUMENTS TODAY.

11:14AM 18        AND THE ONLY WAY THAT YOU FIND INCONSISTENCY THERE IS IN

11:14AM 19   MISCHARACTERIZING OUR POSITION TO SAY THAT CLIA REGULATIONS AND

11:14AM 20   CMS INSPECTIONS HAVE NOTHING TO DO WITH LAB QUALITY.

11:15AM 21        WE ARE, OF COURSE, NOT SAYING THAT.  IT'S A COMPREHENSIVE

11:15AM 22   REGULATORY SCHEME THAT SETS UP WHAT KIND OF PROCEDURES THE

11:15AM 23   DOCUMENTATION THE LAB HAS TO KEEP.

11:15AM 24        THE PURPOSE FOR IT IS, YES, TO PROMOTE HEALTHY AND GOOD

11:15AM 25   LAB PRACTICES AND, YES, LAB PERFORMANCE.

11:15AM 1    BUT THE OPPOSITE IS NOT TRUE FOR ALL OF THE REASONS THAT

11:15AM 2    WE DISCUSSED EARLIER.

11:15AM 3    ANY CLIA REGULATORY CITATION DOESN'T MEAN THAT THE LAB

11:15AM 4    IS -- A, HAS IN THE PAST PRODUCED INACCURATE OR UNRELIABLE

11:15AM 5    RESULTS, OR TYING IT TO THE ACTUAL ALLEGATIONS IN THIS CASE, IS

11:15AM 6    INCAPABLE OF DOING THAT.

11:15AM 7    THAT'S NOT WHAT THE CLIA REGULATIONS AND CITATIONS SAY.

11:15AM 8    SO IT'S THAT -- IT'S THAT GAP BETWEEN THE INHERENT LIMIT OF

11:15AM 9    WHAT THIS EVIDENCE IS AND WHAT THE GOVERNMENT WANTS THE JURY TO

11:15AM 10   DO FOR IT.

11:15AM 11   I HEARD IN MY FRIEND'S ARGUMENT THAT THIS IS JUST PATENT

11:15AM 12   IN THE FORM.  THE JURY CAN LOOK AT IT AND SEE, OH, THIS CV

11:16AM 13   PERCENTAGE IS 63 PERCENT ON THIS WEEK IN APRIL 2014.  I CAN

11:16AM 14   UNDERSTAND THAT THAT MEANS THAT THERANOS WAS INCAPABLE OF

11:16AM 15   CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.

11:16AM 16   AND, RESPECTFULLY, YOUR HONOR, I DON'T KNOW HOW A JURY CAN

11:16AM 17   DO THAT FOR ALL OF THE REASONS WE SET FORTH BECAUSE THERE'S

11:16AM 18   JUST A GAP BETWEEN THE USE OF THIS EVIDENCE AND WHAT IT IS AND

11:16AM 19   ITS INHERENT LIMITATIONS AND THE DISTINCTION THAT THE -- THE

11:16AM 20   INFERENCES THAT THE GOVERNMENT WANTS THE JURY TO DRAW.

11:16AM 21   THE COURT:  IS THERE A GAP, MR. LEACH?

11:16AM 22   MR. LEACH:  THERE IS NO GAP, YOUR HONOR.

11:16AM 23   AND IF THERE IS, YOU DON'T LOOK AT ONE PIECE OF EVIDENCE

11:16AM 24   IN A VACUUM.  THERE ARE OTHER WITNESSES WHO ARE TALKING ABOUT

11:16AM 25   CV'S.  THERE'S ERICA CHEUNG, WHO IS GOING TO COME IN AND TALK

11:16AM 1    ABOUT ALL OF THE QUALITY CONTROL PROBLEMS WE HAD AND HOW WE

11:16AM 2    WERE NOT DOING ANYTHING ABOUT IT, AND I COMPLAINED TO CMS AND

11:16AM 3    THAT'S WHY CMS CAME IN.

11:16AM 4         SO THERE'S NO GAP.  READING THE REPORT, YOU SEE THAT THIS

11:17AM 5    EDISON DEVICE IS PRODUCING RESULTS FOR VITAMIN D THAT ARE WAY

11:17AM 6    OUT OF WHACK FOR MANY, MANY DAYS.  THAT IS A FACT FROM WHICH A

11:17AM 7    JURY CAN DRAW THAT TENDS TO SHOW THE EDISON DEVICE WAS NOT

11:17AM 8    CAPABLE OF DOING WHAT IT SAID IT WAS.  THERE IS NO GAP

11:17AM 9    WHATSOEVER.

11:17AM 10        AND EVEN IF THERE WAS, THIS IS NOT THE ONLY PIECE OF

11:17AM 11   EVIDENCE THAT THE GOVERNMENT IS GOING TO PRESENT.  YOU HAVE TO

11:17AM 12   LOOK AT THIS AS A RELEVANCE QUESTION LOOKING AT THE WHOLE OF

11:17AM 13   THE GOVERNMENT'S PRESENTATION.

11:17AM 14             MR. LOOBY:  WELL, TO BORROW FROM THE ANALOGY I HEARD

11:17AM 15   YESTERDAY OF KIND OF BRICKS IN THE WALL, THIS ISN'T THE TYPE OF

11:17AM 16   EVIDENCE THAT IS BEING PRESENTED TO THE JURY AS A BRICK THAT

11:17AM 17   CAN FIT INTO A WALL THAT WILL SCALE TO A CONCLUSION THE JURY

11:17AM 18   COULD MAKE ABOUT ACCURACY AND RELIABILITY.

11:17AM 19        I DON'T THINK THAT THE JURY CAN SIT THERE AND SAY, OKAY,

11:17AM 20   THESE QC RESULTS ON PAGE 54 OF THIS 100 AND ODD PAGE REPORT, IT

11:17AM 21   LOOKS LIKE THEY WERE OFF FOR THIS WEEK ON THE VITAMIN D, THE

11:18AM 22   MACHINE RUNNING VITAMIN D.  THESE AREN'T VITAMIN D RESULTS.

11:18AM 23   THESE ARE QC DATA GENERATED ON DEVICES THAT WERE RUNNING THAT

11:18AM 24   PARTICULAR ASSAY.  SO WE'RE ALREADY AT ONE LEVEL REMOVED.

11:18AM 25        AND THEN THEY'RE GOING TO TAKE THAT AND THEY ARE GOING TO

11:18AM 1    SAY THAT NUMBER SOUNDS REALLY BAD.  HERE IS SOME OTHER EVIDENCE

11:18AM 2    IN THE CASE WHERE SOMEBODY IS TALKING ABOUT QC, AND I'M GOING

11:18AM 3    TO PUT THEM TOGETHER AND I'M GOING TO SAY NOW I UNDERSTAND IN

11:18AM 4    CONTEXT WHAT THIS MEANS.

11:18AM 5         THAT'S NOT SOMETHING THAT THE JURY IS GOING TO BE ABLE TO

11:18AM 6    DO.  AND THIS REALLY GOES BOTH TO THE ACCURACY -- THE RELEVANCY

11:18AM 7    ISSUE BUT REALLY THE 403 ISSUE AS WELL WHICH IS THAT THIS GIANT

11:18AM 8    REPORT IS GOING TO BE DUMPED IN FRONT OF THE JURY, AND THEY'RE

11:18AM 9    NOT REALLY GOING TO KNOW WHAT THIS IS.

11:18AM 10        THE COURT:  THAT'S A GOOD QUESTION.  I WANTED TO --

11:18AM 11   ARE YOU ASKING THAT THE ENTIRETY OF THE REPORT COME IN?

11:18AM 12   PORTIONS OF IT?  OR YET TO BE DETERMINED?

11:18AM 13        MR. LEACH:  WE THINK THE ENTIRE REPORT SHOULD COME

11:18AM 14   IN FOR ITS CONTEXT, BUT CERTAINLY I'M HAPPY TO WORK WITH THE

11:19AM 15   OTHER SIDE FOR REDACTIONS.  BUT I THINK THE ENTIRE REPORT FOR

11:19AM 16   ITS CONTEXT IS RELEVANT.

11:19AM 17        OBVIOUSLY, I'M NOT GOING TO ASK THE JURY TO PLOW THROUGH

11:19AM 18   EVERY SINGLE PAGE, BUT IT WILL BE INCUMBENT ON THE GOVERNMENT

11:19AM 19   TO ISOLATE THE PARTICULAR OBSERVATIONS, AND WE'VE DONE SOME OF

11:19AM 20   THAT WORK IN THIS BRIEF, BUT I WOULDN'T WANT THINGS TO BE TAKEN

11:19AM 21   OUT OF CONTEXT.  BUT IT IS -- WE ARE SEEKING THE ENTIRETY OF

11:19AM 22   THE REPORT.

11:19AM 23        THE COURT:  OKAY.  ALL RIGHT.  GREAT.  THANK YOU

11:19AM 24   VERY MUCH.

11:19AM 25        MR. LEACH:  THANK YOU.

11:19AM 1          MR. LOOBY:  THANK YOU.

11:19AM 2          THE COURT:  THIS MOTION IS UNDER SUBMISSION.  THE

11:19AM 3   COURT WILL ISSUE AN ORDER, A WRITTEN ORDER.

11:19AM 4       ARE WE AT 572?  THIS IS MS. HOLMES'S MOTION TO EXCLUDE

11:20AM 5   EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS.

11:20AM 6          MR. FLEURMONT:  GOOD AFTERNOON, YOUR HONOR.

11:20AM 7       J.R. FLEURMONT FOR MS. HOLMES.

11:20AM 8          THE COURT:  THANK YOU.

11:20AM 9          MR. FLEURMONT:  YOUR HONOR, THIS MOTION CONCERNS TWO

11:20AM 10  CATEGORIES OF EVIDENCE.  THE FIRST IS ALLEGED EVIDENCE OF

11:20AM 11  THERANOS RUINING A SMALL PERCENTAGE OF ITS TESTS THAT WE

11:20AM 12  BELIEVE SHOULD BE EXCLUDED UNDER RULE 407.

11:20AM 13       IT ALSO CONCERNS EVIDENCE OF SETTLEMENTS WITH CMS AND THE

11:20AM 14  ARIZONA ATTORNEY GENERAL'S OFFICE THAT WE BELIEVE SHOULD BE

11:20AM 15  EXCLUDED UNDER RULE 408.

11:20AM 16       NOW, AS TO THE LATTER CATEGORY, THE GOVERNMENT NOTICED ITS

11:20AM 17  INTENT TO MAKE ARGUMENT ABOUT THOSE SPECIFIC SETTLEMENTS IN

11:20AM 18  OPPOSITION TO OUR MOTION, IT'S THIS CLAIM THAT IT INTENDS.  AND

11:20AM 19  SO -- THAT'S AT DOCKET 673 AT PAGE 1, FOOTNOTE 1.

11:20AM 20       SO WE JUST ASK THAT IT BE MEMORIALIZED IN AN ORDER.  SO

11:20AM 21  ACCORDINGLY I WILL JUST FOCUS ON THE VOIDING IF THAT'S OKAY

11:21AM 22  WITH YOU.

11:21AM 23          THE COURT:  OKAY.

11:21AM 24          MR. FLEURMONT:  THE EVIDENCE OF VOIDING SHOULD BE

11:21AM 25  EXCLUDED FOR TWO PRINCIPLE REASONS.  THE FIRST IS THAT IT'S

11:21AM 1    BARRED BY 407'S PROHIBITION ON SUBSEQUENT REMEDIAL MEASURES,

11:21AM 2    AND THE SECOND, IT'S BARRED BY RULE 401 AND 403 AS NOT RELEVANT

11:21AM 3    AND UNFAIRLY PREJUDICIAL.

11:21AM 4        SO STARTING WITH RULE 407.  UNDER FEDERAL RULE 407

11:21AM 5    EVIDENCE OF SUBSEQUENT REMEDIAL MEASURES ARE EXCLUDED IF

11:21AM 6    THEY'RE OFFERED TO PROVE NEGLIGENCE, CULPABLE CONDUCT, OR A

11:21AM 7    DEFECT IN A PRODUCT OR ITS DESIGN.

11:21AM 8        IN THIS CASE IT'S 404(B) NOTICE, EXHIBIT 1, THE GOVERNMENT

11:21AM 9    HAS STATED ITS INTENT TO INCLUDE SUCH EVIDENCE TO SHOW THAT,

11:21AM 10   AND I QUOTE, "DEFENDANTS INTENDED TO DEFRAUD PATIENTS BY

11:22AM 11   DEPRIVING THEM OF INFORMATION THEY BELIEVED THAT THEY RECEIVED

11:22AM 12   AND PATRONIZING THERANOS'S SERVICES."  THAT'S ALL SAID AT

11:22AM 13   EXHIBIT 3 AT PAGES 74 TO 75.

11:22AM 14       NOW, BECAUSE THE GOVERNMENT SEEKS TO USE A SUBSEQUENT

11:22AM 15   REMEDIAL MEASURE TO FILL CULPABILITY, RULE 407 SQUARELY

11:22AM 16   APPLIES.

11:22AM 17       THE GOVERNMENT DOESN'T FIGHT THIS GENERAL PROPOSITION.

11:22AM 18   THEY SEEK TO USE A RULE OF AN EXCEPTION FOR WHEN A REMEDIAL

11:22AM 19   MEASURE IS DONE VOLUNTARILY.

11:22AM 20       THEY CITE IN RE AIRCRAFT THAT IS AT 871 F.2D 812, WHICH

11:22AM 21   STATES THAT THE PURPOSE OF RULE 407 IS NOT IMPLICATED IN CASES

11:22AM 22   INVOLVING SUBSEQUENT REMEDIAL MEASURES AND WHICH A DEFENDANT

11:22AM 23   DID NOT VOLUNTARILY PARTICIPATE.

11:22AM 24       THE PROBLEM IN THIS CASE, ALTHOUGH THERE WERE SEVERAL

11:23AM 25   THINGS THAT WERE REQUIRED BY CMS AND BY CLIA LAWS, VOIDING

11:23AM 1    TESTS WERE NOT ONE OF THEM.

11:23AM 2        MY COLLEAGUE, MR. LOOBY, WALKED YOU THROUGH ALL OF THE

11:23AM 3    PROVISIONS OF CMS AND THE INSPECTION PROCESS AND THAT LEADS TO

11:23AM 4    A SANCTION AND WHAT HAPPENED WITH THAT AND THE APPEAL.

11:23AM 5        IN THIS CASE IT'S CLEAR THAT THERANOS WAS REQUIRED TO

11:23AM 6    ALLOW CMS TO INVESTIGATE AND DO THE INSPECTION, AND THEY WERE

11:23AM 7    REQUIRED TO DO SOME SORT OF CORRECTIVE ACTION WITHIN TEN DAYS.

11:23AM 8        THERE IS NO EVIDENCE IN THIS CASE THAT THERANOS WAS

11:23AM 9    SPECIFICALLY REQUIRED TO VOID ANY OF THESE TESTS, AND IN FACT,

11:23AM 10   THE ONLY EVIDENCE IS TO THE CONTRARY.

11:23AM 11       THE COURT:  SO I THINK -- IS YOUR POSITION THAT

11:23AM 12   THERANOS VOLUNTARILY VOIDED THE TESTS, AND THAT'S THE WAY IT

11:23AM 13   SHOULD BE RECEIVED?

11:23AM 14       MR. FLEURMONT:  YES, YOUR HONOR, THAT IS OUR

11:23AM 15   POSITION.

11:23AM 16       AS I STATED, THE WAY THAT IT WORKS AND CMS WORKS IS THAT

11:23AM 17   ONCE THEY GIVE YOU THAT INITIAL TERMINATION THAT HAPPENED ON

11:23AM 18   JANUARY 25TH, 2016, THEY HAD TEN DAYS TO REMOVE THE IMMEDIATE

11:23AM 19   JEOPARDY AND PROVIDE A SUBMISSION.  THEY PROVIDED THAT

11:24AM 20   SUBMISSION AND THAT WAS REQUIRED.

11:24AM 21       AFTER THAT HAPPENED THERE WAS AN INITIAL IMPOSITION OF

11:24AM 22   SANCTIONS IF CMS CHOOSES TO DO SO, AND THERE'S AN APPELLATE

11:24AM 23   PROCESS THAT LEADS TO A DETERMINATION IN FRONT OF AN ALJ.

11:24AM 24       AFTER THAT INITIAL PROCESS, THAT INSPECTION AND THAT

11:24AM 25   CORRECTIVE ACTION, DECISIONS AFTER THAT ARE VOLUNTARY.  IF YOU

11:24AM 1    THINK ABOUT THE PURPOSE OF THE RULE AND WHY YOU HAVE RULE 407,

11:24AM 2    THAT'S TO ENCOURAGE SOMEONE TO DO SOMETHING THAT THEY THINK

11:24AM 3    WOULD BE HELPFUL WITHOUT WORRYING ABOUT LATER LITIGATION AND

11:24AM 4    PENALIZING THEM FOR MAKING THAT HELPFUL KIND OF ACTION.

11:24AM 5        IN THIS CASE I FEEL THAT THE PURPOSE OF THE RULE DOUBLY

11:24AM 6    APPLIES WHEN THERE ARE SOME REQUIREMENTS AND AN ENTITY DECIDED

11:24AM 7    TO DO EVEN MORE THAN WHAT IS REQUIRED PROVIDED BY THE FEDERAL

11:24AM 8    GOVERNMENT, THAT THEY SHOULD NOT BE PENALIZED FOR DOING MORE

11:24AM 9    THAN WHAT IS REQUIRED.

11:24AM 10   THE RULE AS THE CASE IN RE AIRCRAFT STATES IS THAT IF IT'S

11:25AM 11   NOT INVOLUNTARY, THEN YOU DON'T GET THE BENEFIT OF THE RULE.

11:25AM 12   BUT IF YOU GO BEYOND WHAT IS VOLUNTARY -- OR EXCUSE ME.  IF YOU

11:25AM 13   GO BEYOND WHAT IS INVOLUNTARY AND YOU WANT TO DO BETTER, AND

11:25AM 14   THAT DOESN'T NECESSARILY MEAN THAT EITHER YOU ARE SAYING THAT

11:25AM 15   THAT IS AN ADMISSION OF GUILT OR THERE IS PROBLEM, BUT YOU JUST

11:25AM 16   REVIEW YOUR PROCESS AND YOU SAY, HEY, MAYBE WE COULD DO A

11:25AM 17   LITTLE BIT BETTER HERE AND LET'S DO IT.

11:25AM 18   BUT A RULE THAT WOULD ALLOW TO USE THAT DECISION IN A

11:25AM 19   SUBSTANTIVE CRIMINAL CASE OR ANY CASE AT ALL FALLS WITHIN THE

11:25AM 20   PURPOSES OF RULE 407.

11:25AM 21       THE COURT:  SO WHEN I LOOK AT THIS, AND, AGAIN, I

11:25AM 22   MAY BE LOOKING AT IT WITH A BLURRED LENS PERHAPS, BUT WHEN I

11:25AM 23   SEE "VOLUNTARY," THAT'S, OH, OKAY, WE'RE GOING TO CHANGE THIS.

11:25AM 24   LET'S GET A MEETING TOGETHER OF ADMINISTRATION, WHOEVER THE

11:25AM 25   DECISION MAKERS ARE, AND WE'RE GOING TO CHANGE IT AND, WE'RE

84

11:26AM 1    GOING TO DO SOMETHING DIFFERENT BECAUSE INTERNALLY IT'S COME TO

11:26AM 2    OUR ATTENTION THAT WE SHOULD.

11:26AM 3        IS THERE A DISTINCTION BETWEEN THAT CORPORATE BUSINESS

11:26AM 4    DECISION AND ONE WHERE WE'VE BEEN CONTACTED BY A REGULATORY

11:26AM 5    OFFICE, AND WE'VE BEEN TALKING WITH THEM FOR WEEKS, MONTHS, AND

11:26AM 6    WE SEE THERE'S A PROBLEM, WE'RE GOING BACK AND FORTH WITH THEM,

11:26AM 7    AND THEY HAVE RATCHETED THIS UP SUCH THAT WE'RE GOING TO BE

11:26AM 8    PENALIZED IF WE DON'T DO SOMETHING.  LET'S KEEP TRYING TO FIX

11:26AM 9    THE PROBLEM.  OKAY.  YOU KNOW WHAT, LET'S TAKE THIS ACTION.

11:26AM 10       IS THAT VOLUNTARY OR IS THAT UNDER THE SHADOW, NOT A

11:26AM 11   THREAT PERHAPS, BUT AT LEAST WITH THE ADVICE OF THE REGULATORY

11:26AM 12   AGENCY THAT SOMETHING UNTOWARD COULD HAPPEN?  DOES THAT MOVE

11:26AM 13   THE NEEDLE ANY BIT?

11:27AM 14           MR. FLEURMONT:  YES, YOUR HONOR.  THAT'S A

11:27AM 15   COMPLICATED HYPOTHETICAL SO I CAN TAKE IT IN PART.

11:27AM 16           THE COURT:  SURE.

11:27AM 17           MR. FLEURMONT:  SO I HEARD YOUR HONOR SAY IF WE

11:27AM 18   DON'T DO SOMETHING WE'RE GOING TO BE IN TROUBLE OR GET

11:27AM 19   SANCTIONS.

11:27AM 20       IF THERE'S NOT A STRICT, A SPECIFIC DIRECTIVE OR A

11:27AM 21   SPECIFIC GUIDANCE ON WHAT THAT SOMETHING IS, THEN, YOUR HONOR,

11:27AM 22   WE SUBMIT THAT THAT IS VOLUNTARY BECAUSE YOU'RE MAKING A

11:27AM 23   DECISION OF YOUR OWN FREE WILL TO FIX A PROBLEM.

11:27AM 24           THE COURT:  SO HERE WAS THERE A TEN DAY NOTICE?

11:27AM 25           MR. FLEURMONT:  THERE WAS A TEN DAY NOTICE, YES.

11:27AM 1          THE COURT:  AND THEN THE ACTION WAS TAKEN BY THE

11:27AM 2    COMPANY?

11:27AM 3          MR. FLEURMONT:  THREE MONTHS LATER, YOUR HONOR.

11:27AM 4          THE COURT:  I SEE.  SO DOES THAT CHANGE THINGS?

11:27AM 5          MR. FLEURMONT:  NO, IT DOES NOT CHANGE THINGS FOR

11:27AM 6    OUR POSITION.  IT HELPS US OUT.  IT WAS MUCH LATER AFTER THE

11:27AM 7    TEN DAYS.

11:27AM 8          THE COURT:  I SEE.

11:27AM 9          MR. FLEURMONT:  BUT THE GOVERNMENT DOES TRY TO

11:27AM 10   SHOEHORN THIS VOLUNTARY/INVOLUNTARY DISTINCTION INTO THIS CASE

11:27AM 11   BY POINTING TO TWO ACTIONS.

11:27AM 12        THE FIRST IS CMS ITSELF.  THE GOVERNMENT ARGUES THAT CMS

11:28AM 13   REQUIRED THERANOS TO VOID THEIR TESTS.  AND THE PROBLEM WITH

11:28AM 14   THAT, AS YOUR HONOR JUST ALLUDED, THE TEN DAY REQUIREMENT.  THE

11:28AM 15   ACTIONS WERE DONE.  THEY WERE DONE -- THEY WERE EXPLAINED IN AN

11:28AM 16   APRIL 1ST LETTER, BUT THEY WERE DONE WELL AFTER THE TEN DAY

11:28AM 17   REQUIREMENT.

11:28AM 18        THE SECOND PROBLEM WITH THAT IS CRITICALLY THE

11:28AM 19   GOVERNMENT'S CMS WITNESS, MS. BENNETT, WHO WE HAVE HEARD A LOT

11:28AM 20   ABOUT TODAY, SHE SAID, AND I QUOTE, "THERANOS MADE THE DECISION

11:28AM 21   TO VOID TEST RESULTS.  CMS DIDN'T TELL THEM TO DO THAT."

11:28AM 22   THAT'S AT EXHIBIT 34, DOCKET 584-3 AT 6.  THAT'S AT THE SECOND

11:28AM 23   TO THE LAST LINE OF THAT PAGE.

11:28AM 24          THE COURT:  I READ THAT IN YOUR PLEADINGS.  YOU

11:28AM 25   POINT THAT OUT, THAT PARAGRAPH.

11:28AM 1     MR. FLEURMONT: AND THE GOVERNMENT TALKS ABOUT

11:28AM 2  CHERRY PICKING TESTIMONY. THAT'S ALL SHE SAYS ABOUT VOIDING.

11:28AM 3  THERE'S NO MORE CHERRIES TO PICK TO USE THAT ANALOGY.

11:28AM 4     SO SHE IS VERY CLEAR ON THAT POINT THAT IT WAS NOT

11:28AM 5  REQUIRED BY CMS.

11:28AM 6     OKAY. SO THEN THERE WAS A SECOND REQUIREMENT, ALLEGED

11:28AM 7  REQUIREMENT THAT THE GOVERNMENT POINTS TO. THAT'S

11:28AM 8  42 CFR 493.129(K).

11:29AM 9     THAT REQUIRES A LAB TO, WHEN ERRORS IN REPORTED PATIENT

11:29AM 10  TEST RESULTS ARE DETECTED, TO NOTIFY AND ISSUE CORRECTED

11:29AM 11  REPORTS.

11:29AM 12     THE PROBLEM WITH THAT IS THAT THERE ARE NO -- AS I'M SURE

11:29AM 13  YOUR HONOR IS VERY FAMILIAR WITH, THE VOIDING WAS DONE IN A

11:29AM 14  BLANKET FASHION WITHOUT AN ANALYSIS DONE ABOUT WHO WAS AFFECTED

11:29AM 15  AND WHO WASN'T.

11:29AM 16     THERANOS MADE A DECISION WHEN THEY WERE LOOKING BACK ON

11:29AM 17  THEIR PRIOR LAB PRACTICES THAT THIS WOULD BE SOMETHING THAT

11:29AM 18  THEY FELT THAT THEY SHOULD DO.

11:29AM 19     YOU COULD SEE HOW THAT COULD HAPPEN IN A COMPANY AS

11:29AM 20  YOUR HONOR JUST GAVE THAT HYPOTHETICAL WHEN YOU'RE UNDER

11:29AM 21  INVESTIGATION AND YOU'RE GOING BACK AND FORTH, YOU'RE

11:29AM 22  SCRUTINIZING THINGS AND YOU'RE LOOKING AT THINGS A LITTLE MORE

11:29AM 23  CLOSELY THAN YOU USUALLY WOULD.

11:29AM 24     AND A COMPANY MIGHT DECIDE, WELL, WE'RE NOT REQUIRED TO DO

11:29AM 25  THIS, BUT IT MIGHT BE GOOD PRACTICE. AS I SAID EARLIER, THE

11:29AM 1 RULE, I THINK, IS MEANT TO PROTECT THAT TYPE OF BEHAVIOR AND

11:30AM 2 MEANT TO ENCOURAGE THAT TYPE OF BEHAVIOR.  SO BECAUSE THERE WAS

11:30AM 3 NO REQUIREMENT FOR ACTUALLY VOIDING AND BECAUSE UNDER THAT RULE

11:30AM 4 THERE WAS NOTHING ACTUALLY PROTECTED, THAT IS ALSO NOT A BASIS

11:30AM 5 FOR A REQUIREMENT IN THIS CASE.

11:30AM 6 SO THE LAST POINT I WANT TO MAKE ON THE REQUIREMENT IS THE

11:30AM 7 ISSUE ABOUT BURDEN, AND WE'VE TALKED ABOUT BURDEN SHIFTING A

11:30AM 8 LOT THROUGHOUT THESE DIFFERENT ARGUMENTS.

11:30AM 9 SO THE GOVERNMENT IN ITS OPPOSITION ESSENTIALLY SAYS THAT

11:30AM 10 IF MS. HOLMES CANNOT SHOW THAT VOIDING WAS VOLUNTARY, THEN SHE

11:30AM 11 DOES NOT GET THE BENEFIT OF THE RULE.

11:30AM 12 BUT AS YOUR HONOR KNOWS, IT'S THE PROPONENT OF THE

11:30AM 13 EVIDENCE WHO HAS THE BURDEN OF SHOWING THAT IT'S ADMISSIBLE,

11:30AM 14 AND SO IT'S THE GOVERNMENT'S BURDEN TO SHOW THAT RULE 407

11:30AM 15 DOESN'T APPLY, EVEN IF THERE'S ANOTHER EXCEPTION THAT IT WOULD

11:30AM 16 APPLY IF THE ACTIONS WERE INVOLUNTARY.

11:30AM 17 SO WE JUST WANT TO MAKE THAT CLEAR THAT IT'S THE

11:30AM 18 GOVERNMENT'S BURDEN TO SHOW THAT THESE ACTIONS WERE NOT

11:30AM 19 VOLUNTARY, NOT MS. HOLMES'S BURDEN TO SHOW THAT THEY WERE.

11:31AM 20 THE COURT:  OKAY.

11:31AM 21 MR. FLEURMONT:  JUST A COUPLE QUICK POINTS ABOUT

11:31AM 22 RELEVANCE AND PREJUDICE.  MR. LOOBY, I THINK HE EXPLAINED THE

11:31AM 23 NONRELEVANT CMS REPORT AND KIND OF THE PROCEDURES THAT

11:31AM 24 FOLLOWED.  SO I WILL JUST QUICKLY SAY THAT THIS IS NOT A CASE

11:31AM 25 ABOUT NEGLIGENT LAB PROCEDURES AND THERE'S THAT MISSING LINK

11:31AM 1    BETWEEN WHAT CMS DOES AND WHAT CMS FOUND AND THE ALLEGATIONS IN

11:31AM 2    THIS CASE.

11:31AM 3        THE LAST POINT ABOUT PREJUDICE IS THAT I WANTED TO POINT

11:31AM 4    THE COURT TO A DECISION UNITED STATES VERSUS PACIFIC GAS AND

11:31AM 5    ELECTRIC.  THAT'S AT 178 F.SUPP. 3D 927.  WE CITED THAT --

11:31AM 6            THE COURT:  I THINK YOU HEARD ME SAY YESTERDAY

11:31AM 7    YOUNG MR. SCHENK WAS INVOLVED IN THAT CASE I THINK.

11:31AM 8            MR. FLEURMONT:  HE WAS.

11:31AM 9        THAT'S CITED AT PAGE 8 OF OUR BRIEF.  THE REASON I PAUSE

11:31AM 10   IS BECAUSE I WANT TO SAY WE THINK THE GOVERNMENT

11:31AM 11   MISCHARACTERIZED THAT CASE, WHICH IS A LITTLE HARD TO SAY WHEN

11:31AM 12   THE PERSON IS RIGHT NEXT TO YOU WHO ACTUALLY ARGUED THAT CASE.

11:31AM 13       BUT THE GOVERNMENT CHARACTERIZED THIS CASE WAS JUST ONE

11:32AM 14   ABOUT PENALTIES AND ABOUT SANCTIONS AND SAYS THAT THE CASE

11:32AM 15   ESSENTIALLY SAYS THAT.  THAT CAN BE PREJUDICIAL WHEN YOU

11:32AM 16   INCLUDE EVIDENCE OF PENALTIES BECAUSE IT HAS A RISK OF THE JURY

11:32AM 17   THINKING, WELL, YOU KNOW, IF A GOVERNMENT ENTITY PENALIZES

11:32AM 18   FIRST AND ISSUED A SANCTION, THEY MUST HAVE FOUND WHAT THE JURY

11:32AM 19   IS SUPPOSED TO FIND, AND SO THEY'RE SUBSTITUTING THEIR JUDGMENT

11:32AM 20   FOR THAT.

11:32AM 21       BUT THE CASE IS NOT JUST ABOUT SANCTIONS.  JUST TO BE

11:32AM 22   CLEAR, THE CASE IS TALKING ABOUT REMEDIAL MEASURES.  I JUST

11:32AM 23   WANT TO POINT THE COURT TO PAGE 49 OF THAT OPINION WHERE THE

11:32AM 24   COURT SAYS -- THEY'RE TALKING ABOUT THE CALIFORNIA PUBLIC

11:32AM 25   UTILITIES COMMISSION.  THE COMMISSION'S ARGUMENT THAT THE

11:32AM 1      PENALTIES SHOULD BE EXCLUDED UNDER RULE 403 BECAUSE, QUOTE,

11:32AM 2      "THE COMMISSION'S CONCLUSIONS WOULD UNFAIRLY ENCOURAGE THE JURY

11:32AM 3      TO ADVOCATE ITS CRITICAL ROLE AS FACT FINDER APPLIED WITH EQUAL

11:32AM 4      FORCE TO THE COMMISSION'S REMEDIAL MEASURES."

11:32AM 5         THE COURT GOES ON TO SAY, "THERE IS A SUBSTANTIAL RISK

11:32AM 6      THAT THE JURY MAY ASSUME THAT IF THE COMMISSION, AUTHORITATIVE

11:33AM 7      GOVERNMENT AGENCY, IMPOSED REMEDIAL MEASURES ON PG&E, THEN PG&E

11:33AM 8      WAS DESERVING A PUNISHMENT."

11:33AM 9         AND, YOUR HONOR, WE SUBMIT THE SAME RISK IS IN THIS CASE

11:33AM 10     THANK YOU.

11:33AM 11          THE COURT:  THANK YOU.  MR. LEACH.

11:33AM 12          MR. LEACH:  THANK YOU, YOUR HONOR.  GOOD MORNING

11:33AM 13    AGAIN.

11:33AM 14      RULE 407 DOES NOT APPLY FOR AT LEAST THREE REASONS.

11:33AM 15      FIRST, THERANOS'S VOIDING OF ALL OF ITS EDISON TESTS IS

11:33AM 16    NOT A MEASURE WITHIN THE MEANING OF THE RULE.  THE DEFENDANT

11:33AM 17    ARGUES IN ITS REPLY BRIEF THAT THE GOVERNMENT CONCEDES THAT IT

11:34AM 18    WAS A SUBSEQUENT REMEDIAL MEASURE.  WE DO NOT.  WE SAY THIS ON

11:34AM 19    PAGE 7 IN NOTE 5.

11:34AM 20      THE VOIDING OF THE TEST IS NOT A MEASURE.  IT'S NOT THE

11:34AM 21    SAME THING AS A COMPANY PUTTING UP A CONE THAT SAYS "WET FLOOR

11:34AM 22    HERE, BE CAREFUL."  IT'S NOT THE SAME THING AS CHANGING THE

11:34AM 23    DESIGN OF A PRODUCT TO MAKE IT SAFER.  IT'S NOT THE SAME THING

11:34AM 24    AS FIRING AN EMPLOYEE.  IT'S AN ADMISSION THAT WHAT I SAID

11:34AM 25    BEFORE I CAN NO LONGER SAY.

11:34AM 1    AND THEY'RE ESSENTIALLY TRYING TO IMMUNIZE THE DEFENDANT

11:34AM 2    FROM ALL OF THE STATEMENTS SHE MADE ABOUT HER LAB IN 2016.

11:34AM 3    THIS IS NOT A MEASURE WITHIN THE MEANING OF THE RULE.  IT HAD

11:34AM 4    NO TENDENCY TO CORRECT ANY HARM.  MANY OF THE TESTS THAT THEY

11:34AM 5    VOIDED WERE FROM 2014 AND 2015.  SO THIS DECISION TO VOID THE

11:35AM 6    TEST IS YEARS AFTER THE FACT.  IT HAD NO TENDENCY TO ACTUALLY

11:35AM 7    CORRECT ANY HARM.

11:35AM 8        AND I THINK THE COURT'S DESCRIPTION EARLIER ABOUT IS THIS

11:35AM 9    THE SAME THING AS, YOU KNOW, A COMPANY MAKING A PROSPECTIVE

11:35AM 10   DESIGN TO ITS PRODUCT, WHICH WE WANT TO ENCOURAGE, VERSUS A

11:35AM 11   BOARD OF DIRECTORS OR CEO DECIDING WHAT TO DO WHEN THE

11:35AM 12   REGULATORS COME LOOKING.  THEY ARE NOT THE SAME THING.  THIS IS

11:35AM 13   NOT A MEASURE WITHIN THE MEANING OF THE RULE.

11:35AM 14       AND I THINK IF MY FRIEND ON THE OTHER SIDE, IF THEIR

11:35AM 15   ARGUMENT IS ADOPTED, IT WOULD ESSENTIALLY IMMUNIZE A DEFENDANT

11:35AM 16   FROM HER OWN STATEMENTS MADE AFTER THERE'S SOME SCRUTINY ON HER

11:35AM 17   CONDUCT.

11:35AM 18       THE SECOND REASON RULE 407 DOES NOT APPLY IS THAT THIS WAS

11:35AM 19   NOT VOLUNTARY, AND IT'S NOT VOLUNTARY FOR A NUMBER OF REASONS.

11:35AM 20       FIRST OF ALL, THERANOS WAS UNDER AN OBLIGATION TO

11:36AM 21   COOPERATE WITH CMS.  THAT'S IN 42 CFR 493.129(1)(K).  SO THEY

11:36AM 22   HAD TO COOPERATE WITH THIS INSPECTION.

11:36AM 23       IN ADDITION, BECAUSE OF THIS IMMEDIATE JEOPARDY FINDING,

11:36AM 24   AND I'VE TALKED ABOUT THIS IN MY PRIOR ARGUMENT, THEY WERE

11:36AM 25   REQUIRED TO ACT.  THEY HAD TO DO SOMETHING UNDER THE

UNITED STATES COURT REPORTERS

11:36AM 1     REGULATION.

11:36AM 2         WHEN SARAH BENNETT SAYS WE DIDN'T TELL THEM WHAT TO DO,

11:36AM 3     THAT'S CORRECT, THEY DIDN'T TELL THEM EXACTLY WHAT TO DO.  BUT

11:36AM 4     THEY NEEDED TO DO SOMETHING, AND IT WAS ON THERANOS TO DO

11:36AM 5     SOMETHING BECAUSE OF THAT LEGAL REQUIREMENT.

11:36AM 6         AND THE THIRD LEGAL REQUIREMENT THAT IS VERY IMPORTANT

11:36AM 7     HERE IS I MAY HAVE -- THE THIRD LEGAL REQUIREMENT IS THE ONE

11:36AM 8     NOT THAT SARAH BENNETT ORDERS, BUT IT EXISTS, AND IT'S A RULE

11:36AM 9     THAT SAYS IF YOU DETECT ERRORS IN YOUR TESTS ESSENTIALLY YOU

11:37AM 10    MUST FIX THEM.

11:37AM 11        NOW, THEY SAY WE CAN'T MEET OUR BURDEN TO SHOW THEY

11:37AM 12    DETECTED THE ERROR OR THAT THIS REGULATION ACTUALLY APPLIES,

11:37AM 13    AND THEY POINT TO SELF-SERVING STATEMENTS THAT MS. HOLMES MAKES

11:37AM 14    ABOUT DOING THIS OUT OF AN ABUNDANCE OF CAUTION.

11:37AM 15        BUT IN THAT SAME BREADTH HER OWN WORDS ARE WE DID THIS

11:37AM 16    BECAUSE WE WERE DISSATISFIED WITH OUR QUALITY ASSESSMENT

11:37AM 17    PROGRAM.

11:37AM 18        IN ADDITION, THE LAB DIRECTOR AT THE TIME, THE INDIVIDUAL

11:37AM 19    THAT MS. HOLMES HIRED IN LATE 2015 OR 2016, DR. KINGSHUK DAS

11:37AM 20    SAYS, HE CONCLUDED THE EDISON DEVICES NEVER PERFORMED THE LEVEL

11:37AM 21    OF ACCURACY AND PRECISION REQUIRED AND COULD NOT HAVE GENERATED

11:37AM 22    ANY RESULTS WHICH HAD CLINICAL VALUE.

11:37AM 23        DAS SAID THERE WAS SOME PUSHBACK, BUT THIS CONCLUSION WAS

11:38AM 24    BASED ON SIX SIGNA METRICS.

11:38AM 25        THERANOS MANAGEMENT SUGGESTED THIS WAS NOT A DEVICE ISSUE

92

11:38AM 1    BUT RATHER A QUALITY SYSTEM ISSUE.

11:38AM 2        DAS DISAGREED WITH THAT ASSESSMENT AND DECIDED TO VOID ALL

11:38AM 3    EDISON TESTS.

11:38AM 4        DAS SAID IT WAS HIS OBLIGATION AS THE DIRECTOR OF RECORD

11:38AM 5    TO CONDUCT A PATIENT ASSESSMENT TO DETERMINE IF ANY HARM CAME

11:38AM 6    FROM A LABORATORY ERROR, AND HE DID THAT.

11:38AM 7        DR. DAS WILL TELL YOU, YOUR HONOR, THAT THIS WAS NOT

11:38AM 8    VOLUNTARY, THAT HE FELT THAT HE HAD TO DO THIS BECAUSE OF THE

11:38AM 9    REG, BECAUSE OF PATIENT SAFETY, AND BECAUSE IT WAS THE RIGHT

11:38AM 10   THING TO DO.

11:38AM 11       SO WHOEVER HAS THE BURDEN HERE, AND WHEN I WAS TALKING

11:38AM 12   ABOUT BURDEN IN THE BRIEF I WAS USING THE LANGUAGE FROM THE

11:38AM 13   PG&E CASE WHERE THE CPUC STARTS ASKING QUESTIONS AND THERE'S A

11:38AM 14   LITTLE AMBIGUITY ABOUT WHY PG&E IS DOING WHAT AND THE COURT

11:39AM 15   SAYS BASED ON THE RECORD BEFORE ME AND IT'S OBVIOUS BASED ON

11:39AM 16   THE TOTALITY OF THE FACTS THAT PG&E IS NOT DOING THIS JUST

11:39AM 17   BECAUSE IT'S A GOOD CORPORATE CITIZEN, IT'S DOING THIS BECAUSE

11:39AM 18   A REGULATORY AUTHORITY IS LOOMING OVER IT.

11:39AM 19       AND BY THE WAY, IN THIS CASE WE HAVE A REG THAT THEY HAVE

11:39AM 20   TO COMPLY WITH IF THEY DETECT ERRORS.  SO THIS WAS NOT

11:39AM 21   VOLUNTARY IN ANY WAY.  THIS IS NOT SOME GOOD CORPORATE CITIZEN

11:39AM 22   DECIDING TO DO THE RIGHT THING PROACTIVELY TO FIX THE DEVICE OR

11:39AM 23   TO DO SOMETHING.  THIS IS AN ADMISSION.  THIS IS AN ADMISSION

11:39AM 24   THAT I CANNOT SAY MY TESTS ARE CORRECT.

11:39AM 25       THE THIRD REASON WHY RULE 407 DOES NOT APPLY HERE IS

UNITED STATES COURT REPORTERS

11:39AM 1    BECAUSE IT ONLY APPLIES TO MEASURES, YOUR HONOR.  IT APPLIES TO

11:39AM 2    THE ACTUAL ACT, IT APPLIES TO THE PUTTING UP THE CONE TO MAKE

11:39AM 3    SURE SOMEONE DOESN'T SLIP ON THE FLOOR, IT APPLIES TO THE

11:40AM 4    PROSPECTIVE CHANGING OF THE SAFETY DEVICE, AND IT APPLIES TO A

11:40AM 5    DISCHARGE OF AN EMPLOYEE.  WE KNOW THAT FROM THE ADVISORY

11:40AM 6    COMMITTEE NOTES IN THE RULE.

11:40AM 7        IT DOES NOT APPLY TO A COMPANY'S INTERNAL ANALYSIS, ITS

11:40AM 8    OWN AFTER-THE-FACT INVESTIGATION OF WHAT HAPPENED OR ITS

11:40AM 9    STATEMENTS ABOUT WHAT HAD HAPPENED.  IT DOESN'T APPLY TO THE

11:40AM 10   ANALYSIS.  IT APPLIES ONLY TO THE MEASURE.

11:40AM 11       AND WE CITED A TENTH CIRCUIT CASE AND AN EIGHTH CIRCUIT

11:40AM 12   CASE FOR THAT PROPOSITION.  IN THE REPLY THEY COME BACK WITH A

11:40AM 13   CASE CALLED MADDOX VERSUS CITY OF LOS ANGELES AND SAY THAT THE

11:40AM 14   RULE IS SOMEHOW DIFFERENT IN THE NINTH CIRCUIT.  IT'S NOT.

11:40AM 15   THAT'S THE RULE IN THE NINTH CIRCUIT THAT I JUST DESCRIBED.

11:40AM 16       MADDOX INVOLVED A DISCIPLINARY PROCEEDING AGAINST A POLICE

11:40AM 17   OFFICER IN A USE OF FORCE CASE.  AND DISCIPLINARY PROCEEDINGS

11:41AM 18   ARE EXACTLY LIKE THE FIRING OF AN EMPLOYEE THAT YOU SEE IN THE

11:41AM 19   ADVISORY COMMITTEE NOTES.

11:41AM 20       MS. HOLMES'S STATEMENTS AND THERANOS STATEMENTS TO CMS IN

11:41AM 21   RESPONSE TO THIS INSPECTION ARE NOT THE SAME THING.  THEIR

11:41AM 22   ANALYSIS ABOUT WHAT HAPPENED WITH THE EDISON DEVICE IS NOT THE

11:41AM 23   SAME THING.

11:41AM 24       AND IT'S NOT JUST ME SAYING THAT.  THERE ARE PLENTY OF

11:41AM 25   DISTRICT COURT CASES LOOKING AT MADDOX.  MADDOX WAS A 1988

UNITED STATES COURT REPORTERS

11:41AM  1    CASE.  THERE ARE PLENTY OF DISTRICT COURT CASES THAT ADOPT THIS

11:41AM  2    READING OF MADDOX THAT IT APPLIES ONLY TO THE DISCHARGE OF THE

11:41AM  3    EMPLOYEE OR A DISCIPLINARY PROCEEDING AND NOT AN AFTER-THE-FACT

11:41AM  4    INVESTIGATION INTO WHAT HAPPENED.

11:41AM  5         AND MY CITES FOR THOSE ARE AGUILAR VERSUS CITY OF

11:41AM  6    LOS ANGELES.  THIS IS AN UNPUBLISHED NINTH CIRCUIT CASE FROM

11:41AM  7    MARCH 26TH, '21, 2021 WESTLAW 1157922.

11:42AM  8         ANOTHER CASE WHERE YOU CAN SEE THIS DISTINCTION BETWEEN

11:42AM  9    DISCIPLINARY PROCEEDINGS AND INTERNAL ANALYSIS OF WHAT HAPPENED

11:42AM  10   AFTER-THE-FACT INVESTIGATIONS TO DETERMINE WHAT HAPPENED,

11:42AM  11   ANOTHER GOOD CASE FOR THAT IS -- EXCUSE ME -- A CASE INVOLVING

11:42AM  12   THE CITY OF MILWAUKEE, 249 F.SUPP. 3D 920, AND THAT CASE FROM

11:42AM  13   THE EASTERN DISTRICT OF WISCONSIN CITES A DISTRICT OF OREGON

11:42AM  14   CASE, ARANDA VERSUS CITY OF MCMINNIVILLE, 942 F.SUPP. 2D 1096.

11:42AM  15        SO THE MADDOX CASE CAME UP IN THE REPLY.  I URGE THE

11:42AM  16   COURT TO SHEPARDIZE THAT BECAUSE I DON'T THINK IT BEARS THE

11:42AM  17   WEIGHT THAT MY FRIENDS ON THE OTHER SIDE WOULD ASCRIBE TO IT.

11:42AM  18        THERE'S ONE OTHER THING I WANT TO MAKE CLEAR.  THEY KEEP

11:42AM  19   SAYING THIS IS A SMALL NUMBER OF TESTS.  THERE SHOULD BE NO

11:43AM  20   MISUNDERSTANDING ABOUT WHAT THEY DID.  THEY VOIDED EVERY SINGLE

11:43AM  21   TEST RUN ON ITS EDISON DEVICE.  EVERY SINGLE ONE.  THEY WERE

11:43AM  22   NOT EVEN IN A POSITION TO SAY THESE ONES WERE OKAY BUT THESE

11:43AM  23   ONES WEREN'T OKAY.  THAT'S HOW BAD IT WAS.

11:43AM  24        SO THIS IS NOT SOME SMALL UNIVERSE.  THIS IS EVERY TEST

11:43AM  25   THAT THEY RAN ON WHAT THEY SAID WAS THEIR PATH BREAKING

11:43AM 1  INVENTION.  THIS IS VERY RELEVANT EVIDENCE.  407 IS NOT A BASIS

11:43AM 2  TO EXCLUDE IT.

11:43AM 3      FOR THE 403 CONSIDERATIONS HERE, IF MS. HOLMES HAS

11:43AM 4  ALTERNATIVE EXPLANATIONS FOR WHY THEY DID THIS, SHE CAN PRESENT

11:43AM 5  THAT.  IF SHE THINKS THE GOVERNMENT IS MISREADING THIS ADD

11:43AM 6  ADMISSION, SHE CAN CROSS-EXAMINE WITNESSES ABOUT THAT.  WE CAN

11:43AM 7  ASK DR. DAS EXACTLY WHY THERANOS VOIDED ALL OF ITS TESTS.

11:43AM 8      BUT THIS IS A DEEPLY RELEVANT ADMISSION.  IT DOESN'T FIT

11:44AM 9  WITHIN 407.  IT WOULD GIVE ANY FRAUDSTER WHO DOESN'T -- OR WHO

11:44AM 10  SAYS TO THE WORLD I'M NOT STANDING BY MY EARLIER STATEMENT SOME

11:44AM 11  TYPE OF PASS, AND THAT'S JUST NOT APPROPRIATE HERE.  THIS IS

11:44AM 12  ADMISSIBLE EVIDENCE, AND THE COURT SHOULD DENY THE MOTION.

11:44AM 13          THE COURT:  THANK YOU.

11:44AM 14          MR. FLEURMONT:  YOUR HONOR, I'D LIKE TO START WITH

11:44AM 15  MR. LEACH'S CONTENTION THAT IT WAS NOT A REMEDIAL MEASURE.

11:44AM 16      THE GOVERNMENT'S WHOLE THEORY OF THIS CASE IS THAT

11:44AM 17  THERANOS PUT OUT TEST RESULTS THAT WEREN'T ACCURATE THAT

11:44AM 18  AFFECTED PEOPLE'S LIVES AND IT AFFECTED SOME OF THEIR

11:44AM 19  CONDITIONS.

11:44AM 20      AT THE SAME TIME I THINK I HEAR HIM SAYING NOW THAT

11:44AM 21  ISSUING A VOIDING OF THAT TEST, PROVIDING INFORMATION TO FOLKS,

11:45AM 22  THAT OUT OF AN ABUNDANCE OF CAUTION TO NOT USE THAT FOR PATIENT

11:45AM 23  RESULTS IS NOT A MEASURE THAT WOULD -- IF I COULD JUST GO

11:45AM 24  STRAIGHT TO THE RULE -- A MEASURE TAKEN THAT WOULD HAD MADE AN

11:45AM 25  EARLIER INJURY OR HARM LESS LIKELY TO OCCUR, WHICH I THINK IS

96

11:45AM 1    THAT POSITION.

11:45AM 2        THEIR THEORY OF THE CASE IS INCONSISTENT WITH ACTUALLY

11:45AM 3    WHAT THE RULE REQUIRES.  THIS IS A MEASURE TAKEN TO MAKE AN

11:45AM 4    INJURY LESS LIKELY TO OCCUR.  SO WE DO THINK THAT IT DOES FALL

11:45AM 5    UNDER RULE 407 AS A REMEDIAL MEASURE.

11:45AM 6        THE SECOND POINT I'D LIKE TO DISCUSS IS MR. LEACH SAYS ON

11:45AM 7    ONE HAND THAT THERE WAS A REGULATION THAT IF YOU DETECT AN

11:45AM 8    ERROR, YOU'RE SUPPOSED TO CORRECT IT.  BUT ON THE OTHER HAND,

11:45AM 9    THEY DIDN'T DETECT ANY ERRORS BECAUSE THEY COULDN'T TELL.

11:45AM 10   THOSE ARE ALSO TWO VERY INCONSISTENT POSITIONS.

11:45AM 11       AS A LETTER ON APRIL 1ST, WHICH IS EXHIBIT 27, SIGNED BY

11:46AM 12   DR. DAS, WHO HE REFERENCES, SAYS THAT THE TESTS WERE TAKEN OUT

11:46AM 13   OF -- THE VOIDING WAS DONE OUT OF AN ABUNDANCE OF CAUTION.  IT

11:46AM 14   WAS NOT RELATED TO ANY FINDING OF PATIENT HARM.

11:46AM 15       SO THE BEST AUTHORITY THAT WE BELIEVE ON THIS IS THE

11:46AM 16   GOVERNMENT'S WITNESS SARAH BENNETT WHO IS FROM CMS AND MADE

11:46AM 17   THAT STATEMENT THAT IT WAS NOT REQUIRED TO VOID TESTS.

11:46AM 18       AND ON THE LAST -- THE LAST POINT I'D LIKE TO MAKE IS THAT

11:46AM 19   MR. LEACH POINTS TO SEVERAL OBLIGATIONS THAT I POINTED TO AS

11:46AM 20   REQUIREMENTS, BUT NONE OF THEM WERE VOIDING.  SO THE OBLIGATION

11:46AM 21   TO COOPERATE IS UNCONTESTED.  WE KNOW THEY HAVE AN OBLIGATION

11:46AM 22   TO COOPERATE.

11:46AM 23       THE OBLIGATION TO RESPOND TO THE FINDING WITHIN TEN DAYS

11:46AM 24   IS ALSO NOT CONTESTED.  WE KNEW THEY HAD THAT OBLIGATION.

11:46AM 25       I DID NOT HEAR HIM SAY THAT ANY OF THOSE REQUIREMENTS IN

| | | |
|---|---|---|
| 11:46AM | 1 | CMS REQUIRED THE VOIDING, WHICH I THINK IS A CRITICAL POINT. |
| 11:46AM | 2 | THE COURT:  OKAY. |
| 11:47AM | 3 | MR. FLEURMONT:  NO FURTHER QUESTIONS? |
| 11:47AM | 4 | THE COURT:  MR. LEACH, ANYTHING ELSE? |
| 11:47AM | 5 | MR. LEACH:  VERY BRIEFLY, YOUR HONOR. |
| 11:47AM | 6 | THE COURT:  WE CAN DO A LITTLE POINT, COUNTERPOINT. |
| 11:47AM | 7 | I FIND THAT VERY HELPFUL.  THANK YOU. |
| 11:47AM | 8 | MR. LEACH:  WE ARE SAYING THAT THE REGS REQUIRED THE |
| 11:47AM | 9 | VOIDING OF THE TESTS.  WE ARE ABSOLUTELY SAYING THAT.  AND IT'S |
| 11:47AM | 10 | NOT JUST THAT ONE REGULATORY REQUIREMENT THAT MAKES IT PLAINLY |
| 11:47AM | 11 | EVIDENCE THAT THIS IS NOT THERANOS'S CORPORATE GOOD GRACES.  IT |
| 11:47AM | 12 | IS THE FACT THAT IT WAS IN RESPONSE TO THE IMMEDIATE JEOPARDY |
| 11:47AM | 13 | FINDING AND THEIR OBLIGATION.  SO IT'S ALL THREE WORKING |
| 11:47AM | 14 | TOGETHER, BUT WE ABSOLUTELY CONTEND THAT THEY WERE REQUIRED |
| 11:47AM | 15 | UNDER THAT THIRD REGULATION TO CORRECT THE TEST. |
| 11:47AM | 16 | AND MY POINT ON, YOU KNOW, MY POINT ON THE VOIDING IS NOT |
| 11:47AM | 17 | THEY COULDN'T TELL.  THEY CAN'T TELL YOU IF IT'S A VALUE OF 50 |
| 11:47AM | 18 | VERSUS A VALUE OF 100.  THEY JUST THREW UP THEIR HANDS.  THAT'S |
| 11:47AM | 19 | MY POINT THAT THEY COULDN'T TELL. |
| 11:47AM | 20 | MR. FLEURMONT:  I GUESS MY LAST POINT, YOUR HONOR, |
| 11:47AM | 21 | IS THAT THIS IDEA THAT THEY COULDN'T TELL, AND THIS IS GOING |
| 11:47AM | 22 | BACK TO MY HYPOTHETICAL OF A CORPORATION THAT LOOKS BACK AT ITS |
| 11:48AM | 23 | PROCESSES AND SAYS, HEY, WE CAN DO A LITTLE BIT BETTER, LET'S |
| 11:48AM | 24 | DO A LITTLE BIT BETTER.  IT DOESN'T NECESSARILY MEAN THAT THEY |
| 11:48AM | 25 | HAVE DONE ANYTHING WRONG, BUT THEY SEE AN IMPROVEMENT THAT THEY |

11:48AM 1    CAN MAKE.  AND THAT WAS THE CASE IN THIS CASE.

11:48AM 2              MR. LEACH:  WHAT IMPROVEMENT, YOUR HONOR?  WHAT

11:48AM 3    IMPROVEMENTS IN THE EDISON DID THEY DO?  THEY ISSUED A PIECE OF

11:48AM 4    PAPER THAT VOIDED THE TESTS TO ALL OF THE EDISON PATIENTS.

11:48AM 5         AND EVEN IF THAT WERE A MEASURE, IT WOULDN'T APPLY TO

11:48AM 6    THEIR OWN INTERNAL CONCLUSIONS ABOUT WHAT EDISON COULD DO.

11:48AM 7              THE COURT:  YOU GET THE LAST WORD.

11:48AM 8              MR. FLEURMONT:  YOUR HONOR, I THINK THE LETTER MAKES

11:48AM 9    VERY CLEAR THAT THERE WAS A DISSATISFACTION WITH SOME LAB

11:48AM 10   PRACTICES AND THE IMPROVEMENT WAS IMPROVING THOSE LAB

11:48AM 11   PRACTICES.

11:48AM 12             THE COURT:  I SEE.

11:48AM 13             MR. FLEURMONT:  AND, YOU KNOW FOR THE REASONS IN OUR

11:48AM 14   PAPERS AND THE REASONS I'VE SAID TODAY, WE THINK RULE 407

11:48AM 15   CLEARLY APPLIES AND THE EVIDENCE OF VOIDING SHOULD BE EXCLUDED.

11:48AM 16        IF THE COURT DISAGREES THIS EVIDENCE IS HIGHLY

11:48AM 17   PREJUDICIAL, UNFAIRLY PREJUDICIAL, AND IT SHOULD BE EXCLUDED

11:48AM 18   UNDER RULE 403.

11:48AM 19        THANK YOU.

11:49AM 20             THE COURT:  THANK YOU VERY MUCH.

11:49AM 21             MR. LEACH:  THANK YOU, YOUR HONOR.

11:49AM 22             THE COURT:  WE'RE PERILOUSLY CLOSE TO THE NOON HOUR.

11:49AM 23   WHY DON'T WE TAKE OUR LUNCH BREAK NOW, AND WE'LL COME BACK AT

11:49AM 24   ABOUT 1:00 O'CLOCK, PLEASE, 1:00 O'CLOCK.  GREAT.

11:49AM 25             THE CLERK:  COURT IS IN RECESS UNTIL 1:00 P.M.  THIS

UNITED STATES COURT REPORTERS

ER-2597

99

11:49AM   1          LINE SHALL TERMINATE.

11:49AM   2                 (LUNCH RECESS TAKEN AT 11:49 A.M.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES COURT REPORTERS

| | | |
|---|---|---|
| 11:49AM | 1 | **AFTERNOON SESSION** |
| 01:11PM | 2 | (COURT CONVENED AT 1:11 P.M.) |
| 01:11PM | 3 | THE COURT:  ALL RIGHT.  WE'RE BACK ON THE RECORD IN |
| 01:11PM | 4 | THE HOLMES MATTER.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT |
| 01:11PM | 5 | ONCE AGAIN.  WE'LL CONTINUE OUR DISCUSSION ON THE MOTIONS IN |
| 01:12PM | 6 | LIMINE. |
| 01:12PM | 7 | LET'S SEE.  I THINK WE ARE -- ARE WE AT 573 NOW?  I |
| 01:12PM | 8 | BELIEVE THAT'S WHERE WE ARE AT.  IT'S MS. HOLMES'S MOTION TO |
| 01:12PM | 9 | EXCLUDE THE FDA 2015 INSPECTION EVIDENCE. |
| 01:12PM | 10 | I LOOK AT THIS AND IT APPEARS, MR. LOOBY, YOU'RE APPEARING |
| 01:12PM | 11 | TO ADVANCE THIS MOTION. |
| 01:12PM | 12 | MR. LOOBY:  THAT'S CORRECT, YOUR HONOR. |
| 01:12PM | 13 | THE COURT:  AND IT LOOKS LIKE WE'RE GOING TO HAVE A |
| 01:12PM | 14 | LITTLE DÉJÀ VU ABOUT OUR CONVERSATIONS ABOUT 803, IS THAT FAIR? |
| 01:12PM | 15 | MR. LOOBY:  THAT'S CORRECT, YOUR HONOR.  I'M BACK |
| 01:12PM | 16 | WITH ANOTHER INSPECTION, A DIFFERENT AGENCY, AND KIND OF THE |
| 01:12PM | 17 | SAME HEARSAY ISSUES. |
| 01:12PM | 18 | THE COURT:  RIGHT. |
| 01:12PM | 19 | MR. LOOBY:  SO I THINK WE'LL SAVE A BIT OF TIME |
| 01:12PM | 20 | ADDRESSING THAT.  I WILL ADDRESS SOME OF THE UNIQUE FACTS AS |
| 01:12PM | 21 | THEY APPLY TO THE FDA INSPECTION DOCUMENTS, BUT I THINK WE HAVE |
| 01:13PM | 22 | GONE OVER THE BASICS OF THE ARGUMENT. |
| 01:13PM | 23 | THE COURT:  OKAY.  UNLESS THERE ARE ANY NEW CASES |
| 01:13PM | 24 | THAT HAVE COME DOWN IN THE LAST HOUR OR ANYTHING ELSE EITHER |
| 01:13PM | 25 | SIDE WANT TO BRING TO MY ATTENTION.  AND I'M HAPPY TO HEAR. |

UNITED STATES COURT REPORTERS

01:13PM  1    I'M NOT TRYING TO FORECLOSE ANY FURTHER DEVELOPMENT ABOUT THAT

01:13PM  2    ISSUE.  IT'S AN INTERESTING ISSUE.

01:13PM  3         MR. LOOBY:  YES.

01:13PM  4         THE COURT:  OKAY.  THANK YOU.

01:13PM  5         MR. LOOBY:  THANK YOU, YOUR HONOR.

01:13PM  6    I THINK A LITTLE BACKGROUND CAN BE HELPFUL ABOUT THE FDA'S

01:13PM  7    ROLE IN THE CASE.  SO, AS YOUR HONOR KNOWS, THERE'S AN

01:13PM  8    INDICTMENT ALLEGATION THAT CONCERNS THE FDA, AND THAT

01:13PM  9    ALLEGATION IS THAT MS. HOLMES, SHE TOLD INVESTORS THAT THERANOS

01:13PM 10    ANALYZER AND TEST DID NOT NEED FDA CLEARANCE OR APPROVAL WHEN

01:13PM 11    THE GOVERNMENT ALLEGES SHE KNEW THAT TO NOT BE THE CASE.

01:13PM 12    SO THE GOVERNMENT ALLEGES THAT THESE REPRESENTATIONS

01:13PM 13    HAPPENED IN 2013 AND 2014 PRINCIPALLY.  IMPORTANTLY, KIND OF

01:13PM 14    THE LAST FUNDRAISING ROUND FOR INVESTORS IN THE CASE CLOSED IN

01:13PM 15    APRIL OF 2015.

01:13PM 16    THE FDA INSPECTION THAT WE'RE SET TO TALK ABOUT TODAY,

01:14PM 17    THAT BEGAN IN AUGUST OF 2015.  SO MONTHS LATER.

01:14PM 18    AND BECAUSE OF THAT, NOTHING THAT HAPPENED DURING THAT

01:14PM 19    INSPECTION COULD BE RELEVANT TO THOSE FDA RELATED

01:14PM 20    REPRESENTATIONS ABOUT WHAT WAS REQUIRED OR WAS NOT REQUIRED IN

01:14PM 21    TERMS OF APPROVAL OR CLEARANCE.

01:14PM 22    THE GOVERNMENT IN ITS OPPOSITION DOESN'T DISPUTE THIS.  IT

01:14PM 23    CONCEDES THERE'S NO CONNECTION BETWEEN THE FDA ALLEGATIONS IN

01:14PM 24    THE INDICTMENT AND THIS INSPECTION EVIDENCE BY IGNORING THAT

01:14PM 25    PART.

01:14PM 1    AND IT ACTUALLY DISCLAIMS ANY NEED TO TIE THE FDA

01:14PM 2    INSPECTION EVIDENCE TO ANY REPRESENTATION TO ANY SINGLE

01:14PM 3    INVESTOR.  IT SAYS THAT THAT'S KIND OF BESIDE THE POINT.

01:14PM 4    SO WHAT ARE WE DOING HERE?  THE GOVERNMENT NOW PROPOSES TO

01:14PM 5    USE THE FDA INSPECTION EVIDENCE IN A DIFFERENT WAY.  IT WILL

01:14PM 6    ARGUE THAT IT SHOWS THAT THERANOS BLOOD COLLECTION DEVICE,

01:14PM 7    WHICH I'LL BE REFERRING TODAY AS A CTN, IT'S A CAPILLARY TO

01:15PM 8    NANOTAINER IS WHAT THE THREE LETTERS STAND FOR.  SO HOPEFULLY

01:15PM 9    CTN IS EASY ENOUGH FOR TODAY.

01:15PM 10    THE GOVERNMENT IS GOING TO ALLEGE THAT THE INSPECTION

01:15PM 11    EVIDENCE SHOWED THAT THESE DIDN'T WORK VERY WELL.  BUT THE FDA

01:15PM 12    INSPECTION EVIDENCE IS ACTUALLY NOT RELEVANT TO THAT QUESTION.

01:15PM 13    AND THE BRIEFING KIND OF GOES INTO WHAT THIS IS AT A HIGH

01:15PM 14    LEVEL, BUT WITH THE COURT'S INDULGENCE, I ACTUALLY THINK IT

01:15PM 15    BENEFITS US TO TAKE A COUPLE STEPS BACK.

01:15PM 16    SO WE TALKED EARLIER AT LENGTH ABOUT CLIA REGULATIONS AND

01:15PM 17    CMS.  SO THAT'S THE BODY OF LAW THAT GOVERNS CLINICAL

01:15PM 18    LABORATORIES.  THERANOS OPERATED A CLINICAL LABORATORY, SO IT

01:15PM 19    HAD TO ADHERE TO CLIA, AND IT WAS REGULATED BY CMS.

01:15PM 20    THE CLIA REGULATIONS SET FORTH A COMPREHENSIVE REGULATORY

01:15PM 21    SCHEME ABOUT LAB OPERATIONS BASICALLY FROM SOUP TO NUTS.  THE

01:15PM 22    THERANOS BUSINESS MODEL WAS UNIQUE BECAUSE IT ALSO BUILT ITS

01:15PM 23    OWN DEVICES TO USE IN ITS CLIA LAB.  THAT INCLUDES THE

01:16PM 24    ANALYZER, OR TSPU, ANOTHER ACRONYM, BUT MORE IMPORTANTLY FOR

01:16PM 25    THIS NOTION, WE'RE GOING TO BE TALK ABOUT THE CTN'S WHICH

UNITED STATES COURT REPORTERS

01:16PM 1    THERANOS ALSO MANUFACTURED.

01:16PM 2        NORMALLY A COMPANY THAT MANUFACTURES A MEDICAL DEVICE AND

01:16PM 3    THEN SELLS THEM TO SOME OTHER LAB USER LIKE A COMPANY THAT

01:16PM 4    OPERATES A CLINICAL LAB, THEY'RE REGULATED EXCLUSIVELY BY FDA.

01:16PM 5        FDA, NOT SURPRISINGLY, HAS MANUFACTURING, DESIGN, AND

01:16PM 6    QUALITY REQUIREMENTS ALL OF ITS OWN.  THESE ARE CALLED THE

01:16PM 7    QSR'S IN THE BRIEFING.

01:16PM 8        AND THESE GOVERN, YOU KNOW, THE TYPES OF DOCUMENTS THAT A

01:16PM 9    MANUFACTURER HAS TO KEEP, HOW IT HANDLES COMPLAINTS FROM THE

01:16PM 10   CONSUMERS, SO THE PERSON THAT YOU'RE SELLING THE DEVICE TO, HOW

01:16PM 11   IT ASSURES ITSELF BASICALLY OF THE QUALITY OF THE DEVICES THAT

01:16PM 12   IT'S MANUFACTURING THAT THEY'RE SUITABLE FOR THE INDICATIONS AT

01:16PM 13   WHICH THEY'RE APPROVED BY THE FDA.

01:16PM 14       SO THERANOS SITS AT THE MIDDLE OF THESE TWO OVERLAPPING

01:16PM 15   AND SOMEWHAT REDUNDANT REGULATORY SCHEMES, AND THE OBSERVATIONS

01:17PM 16   IN THE TWO FORM 438'S, WHICH ARE THE FDA KIND OF INSPECTION

01:17PM 17   REPORTS.

01:17PM 18       I'LL START OVER.  THE OBSERVATIONS IN THE TWO FORM 438'S,

01:17PM 19   THEY ALL EMERGE FROM THE SAME DISCONNECT BETWEEN THE FDA AND

01:17PM 20   THERANOS ABOUT HOW THESE TWO BODIES OF LAW WOULD APPLY TO

01:17PM 21   THERANOS'S BUSINESS.

01:17PM 22       SO THERANOS BELIEVED THAT IT WAS OFFERING TESTS INCLUDING

01:17PM 23   THOSE RUN ON BLOOD SAMPLES COLLECTED AND TRANSPORTED IN THE

01:17PM 24   CTN'S AS LABORATORY DEVELOPED TESTS.  THIS HAS BEEN POPPING UP

01:17PM 25   IN THE BRIEFING FROM TIME TO TIME.

104

01:17PM 1       LABORATORY DEVELOPED TESTS, I GUESS THE ROUGH DEFINITION

01:17PM 2  IS THAT IT IS A TEST THAT A CLINICAL LABORATORY KIND OF

01:17PM 3  MANUFACTURES IN HOUSE.  IT DOESN'T SOURCE MATERIALS FROM

01:17PM 4  OUTSIDE.

01:17PM 5       SO FDA AS A MATTER OF POLICY HISTORICALLY HAS NOT

01:18PM 6  REGULATED LDT'S.  IT'S EMBRACED THE POSITION, THE POSTURE OF

01:18PM 7  KIND OF FORBEARANCE ON THAT.  IT STILL DOESN'T.  INSTEAD, THE

01:18PM 8  PERFORMANCE OF LTD'S FALLS TO CLIA AND CMS.

01:18PM 9       SO THE FDA KNEW THAT THERANOS BELIEVED ITS TESTS WERE

01:18PM 10  LDT'S BECAUSE THERANOS TOLD THEM SO OVER AND OVER AGAIN.  AND

01:18PM 11  THE BEST THING TO LOOK AT FOR THIS FACT IS ACTUALLY THE FDA'S

01:18PM 12  INSPECTION REQUEST FORM.

01:18PM 13       SO I'LL KINDLY ASK MS. SAHARIA TO PULL UP DEFENSE

01:18PM 14  EXHIBIT 82, AND THAT'S AT ECF 231-1 FOR THE RECORD.  THIS IS

01:18PM 15  THE AUGUST 2015 INSPECTION FORM.

01:18PM 16       SO WHILE THAT'S PULLING UP, THIS BASICALLY SETS OUT THE

01:18PM 17  SCOPE OF THE REVIEW FOR THE INSPECTORS WHO ARE GOING TO BE

01:18PM 18  GOING IN AT THE END OF AUGUST OF 2015 TO REVIEW THERANOS'S

01:19PM 19  MANUFACTURING FACILITIES.

01:19PM 20       THE COURT:  WAS THIS AN INSPECTION AT THERANOS'S

01:19PM 21  REQUEST?

01:19PM 22       MR. LOOBY:  NO.  THIS IS A FOR CAUSE INSPECTION THAT

01:19PM 23  WAS INITIATED BY THE FDA AND ACTUALLY MORE OR LESS UNANNOUNCED.

01:19PM 24       SO UNLIKE THE CMS, WHICH WAS ALSO KIND OF FOR CAUSE AND

01:19PM 25  APART BUT ALSO PARTIALLY A ROUTINE RECERTIFICATION SURVEY, THIS

105

01:19PM 1    IS A FOR CAUSE INSPECTION BASED ON COMPLAINTS THAT THE FDA HAD

01:19PM 2    RECEIVED AND OTHER THINGS WHICH I'LL GET INTO IN WALKING US

01:19PM 3    THROUGH THIS INSPECTION REQUEST FORM.

01:19PM 4         SO, MS. SAHARIA, IF WE CAN GO TO PAGE 3 TO 4.  AND THERE'S

01:19PM 5    A SECTION CALLED OBJECTIVES.

01:19PM 6         MS. SAHARIA:  THE NEXT PAGE?

01:19PM 7         MR. LOOBY:  I THINK IT'S LIKE AT THE BREAK BETWEEN

01:19PM 8    ECF 3 AND ECF 4.

01:20PM 9         YES.  SO THIS LISTS THE REGULATORY PROVISIONS THAT THE

01:20PM 10   AGENCY IS GOING TO GO IN AND SEE KIND OF WHAT APPLIES.  AND

01:20PM 11   THAT FIRST ONE QUALITY SYSTEMS IS PART -- IS THE QSR, AND THE

01:20PM 12   OTHERS ARE ALL ABOUT MEDICAL DEVICE, KIND OF MANUFACTURING AND

01:20PM 13   RECORDKEEPING FOR MANUFACTURERS.

01:20PM 14        IF WE GO TO ECF PAGE 5 AND HERE UNDER THE NUMBER 6 THE

01:20PM 15   FIRST BIG PARAGRAPH IT SAYS, "THERANOS BELIEVES THAT BECAUSE IT

01:20PM 16   IS CURRENTLY PERFORMING ALL SAMPLE TESTING IN ITS CLIA LAB ITS

01:20PM 17   TESTING OF SAMPLES WITH VARIOUS ANALYZERS ASSAYS/ANALYTES USING

01:20PM 18   ITS MANUFACTURED ANALYZER ARE LABORATORY DEVELOPED TESTS."  SO

01:20PM 19   THIS REFLECTS THE FDA'S UNDERSTANDING OF THERANOS'S REGULATORY

01:21PM 20   POSITION.

01:21PM 21        AND IF WE GO TO ECF PAGE 6 UNDER REASON FOR INSPECTION.

01:21PM 22   IT SAYS, "CDRH," AND THAT'S A DIVISION WITHIN THE FDA, "IS

01:21PM 23   CONCERNED THAT THE FIRM MAY NOT HAVE ADEQUATE DESIGN CONTROL

01:21PM 24   PROCEDURES, COMPLAINT HANDLING AND INVESTIGATION PROCEDURES,

01:21PM 25   AND MDR," SO MEDICAL DEVICE REPORTING, "PROCEDURES GIVEN THAT

01:21PM 1    THE FIRM BELIEVES IT IS AN LDT PROVIDER, NOT A MANUFACTURER

01:21PM 2    SUBJECT TO FDA REGULATIONS."

01:21PM 3        SO THIS IS WHAT THE FDA WENT IN LOOKING FOR, QSR, FDA

01:21PM 4    SPECIFIC POLICIES AND DOCUMENTATION RELATING TO THE CTN'S,

01:21PM 5    WHICH BECAUSE OF THEIR INTERACTIONS WITH THERANOS, THEY

01:21PM 6    SUSPECTED THE COMPANY MIGHT NOT HAVE.

01:21PM 7        NOW, THERANOS DID HAVE DOCUMENTATION AND DATA ON

01:21PM 8    MANUFACTURING AND DESIGN OF THE CTN'S, AND IT DID HAVE RECORDS

01:22PM 9    TO SHOW HOW IT DEALT WITH COMPLAINTS, SO SOME OF THESE SAME

01:22PM 10   TOPICS THAT THESE REGULATIONS HIT, BUT THESE RECORDS WERE

01:22PM 11   CREATED AND MAINTAINED AS PART OF THERANOS'S CLIA

01:22PM 12   LABORATORY.

01:22PM 13       SO THEY WEREN'T IN THE FORMAT THAT THE FDA WOULD EXPECT TO

01:22PM 14   SEE IF IT WALKED INTO A PURE DEVICE MANUFACTURER AND SAID SHOW

01:22PM 15   US YOUR QSR, YOUR DESIGN STUDY, SHOW US YOUR PROCEDURE FOR

01:22PM 16   DEALING WITH MEDICAL COMPLAINTS.  THERANOS DID NOT HAVE

01:22PM 17   EVERYTHING SORT OF LAID OUT IN THE QSR FORMAT.  AND THE FDA, AS

01:22PM 18   SEEN IN THE INSPECTION REQUEST FORM, UNDERSTOOD THAT THAT MIGHT

01:22PM 19   BE THE CASE.

01:22PM 20       NOW, THERANOS EXPLAINED THIS TO THE FDA DURING THE

01:22PM 21   INSPECTION AND IN CORRESPONDENCE AFTER THE INSPECTION.  AND YOU

01:22PM 22   CAN FIND SOME OF THAT KEY CORRESPONDENCE SETTING FORTH THIS

01:22PM 23   POSITION AT DEFENSE EXHIBIT 50, AND THAT'S AT ECF 586-4.

01:23PM 24       AND WHEN I SAY "DEFENSE EXHIBIT," I MEAN THIS IS AN

01:23PM 25   EXHIBIT TO THE DEFENSE MOTION IN LIMINE TO EXCLUDE THIS

01:23PM 1    EVIDENCE.  IT'S ACTUALLY AN EXEMPLAR GOVERNMENT PROPOSED TRIAL

01:23PM 2    EXHIBIT THAT WE WOULD BE MOVING TO EXCLUDE.

01:23PM 3        SO WE DON'T NEED TO PULL THIS ONE UP AND WALK THROUGH IT,

01:23PM 4    BUT I WILL JUST SAY BRIEFLY, THAT IT IS AN EMAIL FROM AN

01:23PM 5    INSPECTOR MARY HOLE, WHO IS FDA EMPLOYEE, ATTACHING VARIOUS

01:23PM 6    THERANOS SUBMISSIONS, INCLUDING A LETTER FROM THERANOS GENERAL

01:23PM 7    COUNSEL, HEATHER KING, THAT WAS SENT DURING THE INSPECTION THAT

01:23PM 8    KIND OF LAYS OUT THE BACKGROUND THAT I JUST WALKED THROUGH JUST

01:23PM 9    NOW.

01:23PM 10       SO THE FDA'S RESPONSE WAS, AND I'M PARAPHRASING HERE, BUT

01:23PM 11   WE FIND THE CTN'S ARE ACTUALLY A CLASS 2 MEDICAL DEVICE.  WE

01:23PM 12   ARE MAKING A DETERMINATION THAT WE DISAGREE WITH YOU THAT

01:23PM 13   THEY'RE NOT AN LDT, AND YOU SHOULD HAVE BEEN ADHERING TO THE

01:23PM 14   QSR'S ALL ALONG.  SO WE'RE GOING TO CITE YOU FOR YOUR FAILURE

01:24PM 15   TO DO SO.

01:24PM 16       THEY DID THIS PRINCIPALLY WITHOUT CONSIDERING WHAT

01:24PM 17   THERANOS HAD DONE IN THE CLIA LAB BECAUSE IT JUST DOESN'T

01:24PM 18   TRANSLATE OVER.

01:24PM 19       SO YOU CAN SEE HOW THIS HAPPENED, AND THIS IS AN EXAMPLE

01:24PM 20   AT DEFENSE EXHIBIT 52, ECF 586-6.  AND AT ECF PAGE 4 OF THAT

01:24PM 21   EXHIBIT THERE'S A STATEMENT FROM AN -- IN AN EMAIL FROM

01:24PM 22   SEEMA SINGH, ANOTHER FDA INSPECTOR, WHO IS REPORTING TO HER

01:24PM 23   COLLEAGUES THAT THERANOS IS TELLING HER THAT THEY VALIDATE

01:24PM 24   THEIR TESTS IN THE CLIA LAB, BUT SHE REPORTS, I HAVE NOT LOOKED

01:24PM 25   AT ANY CLIA PERFORMANCE VALUATIONS.

01:24PM 1    SO THIS IS THE CONTEXT OF WHAT MAKES THE GOVERNMENT'S

01:24PM 2    PROPOSED USE OF THE EVIDENCE PROBLEMATIC HERE.

01:24PM 3    SO LET'S TAKE, FOR EXAMPLE, THE GOVERNMENT'S FAVORITE

01:24PM 4    OBSERVATION IN THE FORM 438 FOR THE PALO ALTO FACILITY.  SO

01:24PM 5    THERE WERE ACTUALLY TWO INSPECTIONS HERE IN NORTHERN

01:25PM 6    CALIFORNIA.  THERE WAS ONE AT THE PALO ALTO HEADQUARTERS,

01:25PM 7    BECAUSE THAT'S WHERE THE DESIGN -- SOME OF THE DESIGN

01:25PM 8    DOCUMENTATION WAS HELD, AND THEN THERE WAS ONE ACROSS THE BAY

01:25PM 9    IN NEWARK WHERE THE ACTUAL CTN'S WERE MANUFACTURED.

01:25PM 10    MS. SAHARIA, IF YOU COULD PULL UP GOVERNMENT'S EXHIBIT 14,

01:25PM 11    ECF 680, AND THIS IS AT PAGE 16.

01:25PM 12    SO WHILE SHE PULLS THIS UP, I'LL GIVE A LITTLE PRIMER ON

01:25PM 13    WHAT THIS OBSERVATION IS.  THE FDA WENT IN AND SAID WE WANT TO

01:25PM 14    SEE YOUR DESIGN AND VALIDATION DOCUMENTATION THAT YOU WOULD BE

01:25PM 15    MAINTAINING AS A DEVICE MANUFACTURER.

01:25PM 16    AND THERANOS GIVES THEM A REPORT, AND THE FDA MAKES AN

01:25PM 17    OBSERVATION AND IT SAYS IT LOOKS LIKE THE REPORT HAS FLAGGED A

01:25PM 18    FEW ASSAYS FOR FURTHER STUDY, BUT THE REPORT WAS NOT

01:26PM 19    SUBSEQUENTLY UPDATED TO REFLECT THAT ADDITIONAL WORK HAD BEEN

01:26PM 20    DONE, AND SO THAT'S THE GENESIS OF THE CITATION.  IT'S

01:26PM 21    INADEQUATE DESIGN, VALIDATION DOCUMENTATION AS A MANUFACTURER

01:26PM 22    OF A MEDICAL DEVICE.

01:26PM 23    SO THERANOS DID PROVIDE NARRATIVE EXPLANATIONS AND DATA

01:26PM 24    FROM IT'S CLIA LAB TO SHOW, OKAY, WE MIGHT NOT HAVE GONE BACK

01:26PM 25    AND UPDATED THIS MANUFACTURING PAPERWORK, BUT WE HAVE DONE

01:26PM 1    FURTHER STUDIES ON THE PERFORMANCE OF THE CTN'S.  IN FACT, THEY

01:26PM 2    HAD DONE -- ALREADY AT THAT POINT THEY HAD DONE A 510(K)

01:26PM 3    SUBMISSION TO THE FDA FOR CLEARANCE OF THE ASSAYS, AND THEY

01:26PM 4    WERE ABOUT TO SUBMIT ANOTHER ONE.

01:26PM 5        WE JUST LOOKED AT SOME OF THOSE DOCUMENTS TOGETHER.  SO

01:26PM 6    THOSE ARE THE DEFENSE EXHIBITS THAT I JUST WENT THROUGH.  I

01:26PM 7    DIDN'T PULL THEM UP, BUT THEY'RE ATTACHED TO OUR MOTION.

01:26PM 8        AND ULTIMATELY THE FDA'S POSITION IS THAT'S OF NO USE.

01:26PM 9    YOU NEED TO BE COMPILING THESE QSR'S, COMPLYING WITH THIS,

01:27PM 10    YOU'RE A MEDICAL DEVICE MANUFACTURER, WE'RE GOING TO WRITE YOU

01:27PM 11    UP.

01:27PM 12        THE GOVERNMENT WANTS TO IGNORE THIS CONTEXT.  IT WANTS TO

01:27PM 13    PUT THIS OBSERVATION BEFORE THE JURY, AND IT WANTS TO SAY THAT

01:27PM 14    THIS QSR VIOLATION MEANS THAT THERANOS, THAT TESTS RUN ON BLOOD

01:27PM 15    COLLECTED IN THE CTN'S WERE NOT CAPABLE OF PRODUCING ACCURATE

01:27PM 16    AND RELIABLE RESULTS.

01:27PM 17        THAT TYPE OF DETERMINATION WAS OUTSIDE THE SCOPE OF THIS

01:27PM 18    INSPECTION BY DEFINITION FOR ALL OF THE REASONS WE JUST

01:27PM 19    DISCUSSED.

01:27PM 20        THE SECOND BIG ISSUE WITH THE GOVERNMENT'S PROPOSED USE OF

01:27PM 21    THESE OBSERVATIONS IS THAT THEY'RE HYPER TECHNICAL.  THIS IS,

01:27PM 22    IN THE FORM 438, THIS IS KIND OF ALL OF THE ELABORATION THAT

01:27PM 23    THEY GET.  SO IN ITS OPPOSITION BRIEF THE GOVERNMENT QUOTES

01:28PM 24    THIS AND IT KINDS OF HOLDS IT OUT AS SELF-EVIDENT EVIDENCE OF

01:28PM 25    INACCURACY AND UNRELIABILITY.

UNITED STATES COURT REPORTERS

110

01:28PM 1     THE GOVERNMENT HASN'T DISCLOSED AN EXPERT TO KIND OF

01:28PM 2  EXPLAIN WHAT IS THE CONNECTION BETWEEN DESIGN VALIDATION

01:28PM 3  MANUFACTURING DOCUMENTATION AND PERFORMANCE OF TESTS RUN ON

01:28PM 4  BLOOD COLLECTED IN THE CTN'S, OR TO EXPLAIN, OKAY, WHAT DOES

01:28PM 5  THIS CITATION MEAN WHEN APPLIED TO A COMPANY LIKE THERANOS THAT

01:28PM 6  IS ALSO ADHERING TO CLIA REGULATIONS?

01:28PM 7     FOR THESE FORM 438'S AND THE OTHER INSPECTION EVIDENCE, IT

01:28PM 8  SEEMS THAT THE GOVERNMENT'S POSITION IS THAT THE JURY COULD

01:28PM 9  JUST FIGURE IT OUT FOR THEMSELVES.

01:28PM 10     BUT WE SUBMIT THAT THAT'S NOT HELPFUL, AND THIS INSPECTION

01:28PM 11  EVIDENCE IS NOT RELEVANT, AND IT POSES A GRAVE DANGER OF JURY

01:28PM 12  CONFUSION AND UNFAIR PREJUDICE.

01:28PM 13     NOW, IT'S NO ANSWER TO SAY, WELL, THIS JUST GOES TO THE

01:29PM 14  WEIGHT.  CAN'T YOU POINT THIS OUT TO THE JURY ON

01:29PM 15  CROSS-EXAMINATION?  BUT, OF COURSE, THE DEFENSE CAN DO

01:29PM 16  CROSS-EXAMINATION, BUT IT'S NOT THE ROLE OF CROSS-EXAMINATION

01:29PM 17  TO HAVE TO SPEND LIKE MULTIPLE COURT DAYS EXPLAINING TO THE

01:29PM 18  JURY THAT THE EVIDENCE IS NOT WHAT THE GOVERNMENT REPRESENTS IT

01:29PM 19  TO BE IN A FUNDAMENTAL WAY.

01:29PM 20     THAT'S REALLY WHERE THE COURT SHOULD STEP IN.  IT SHOULD

01:29PM 21  SAVE US ALL OF THE TIME AND EFFORT ON THIS BECAUSE IT WOULD BE

01:29PM 22  A LOT OF TIME AND EFFORT.  THE DEFENSE WOULD HAVE TO CONSIDER

01:29PM 23  ASKING, LOOKING FOR AND RETAINING AN EXPERT TO EXPLAIN THESE

01:29PM 24  REGULATIONS.  WE WOULD NEED SOMEBODY TO LOOK AT THE DESIGN

01:29PM 25  STUDY AND TO REBUT KIND OF THE OBSERVATION HERE, WHICH IS THAT

01:29PM 1    IT'S NOT ADEQUATELY DOCUMENTED.

01:29PM 2        WELL, WHAT DOES THAT MEAN?  WHAT DOES THAT MEAN FOR THE

01:29PM 3    PERFORMANCE OF THE TEST?

01:29PM 4        BUT EVEN IF WE DID ALL OF THAT, THE JURY HAVING SAT

01:29PM 5    THROUGH IT, COULDN'T BE BLAMED FOR THINKING, WELL, MAYBE THERE

01:29PM 6    IS SOMETHING THERE.  BUT WE SUBMIT THAT THERE REALLY IS NOT.

01:29PM 7        SO THAT'S THE CRUX OF OUR MOTION TO EXCLUDE THE FDA

01:29PM 8    INSPECTION EVIDENCE.

01:30PM 9        AND I THINK UNLIKE THE CMS INSPECTION WHICH ACTUALLY WENT

01:30PM 10    INTO THE CLIA LAB AND WAS LOOKING AT SOME INPUT INTO ITS

01:30PM 11    PERFORMANCE, QC PT, THIS IS KIND OF REALLY QUITE A SIDE SHOW,

01:30PM 12    AND IT'S A COMPLEX ONE.  THERE'S A WHOLE OTHER SET OF

01:30PM 13    REGULATIONS THAT OTHERWISE WOULDN'T BE AT ISSUE IN THE CASE.

01:30PM 14        THE GOVERNMENT HAS PROPOSED TO USE SOME OF THE LEGAL

01:30PM 15    OBJECTIONS THAT THERANOS'S ATTORNEYS HAVE MADE TO THE

01:30PM 16    JURISDICTION TO THE FDA AS EVIDENCE OF, YOU KNOW, THE COMPANY

01:30PM 17    BEING UNCOOPERATIVE OR OTHERWISE UNHELPFUL WITH THE REGULATORS.

01:30PM 18        WE WOULD HAVE TO GO INTO WHETHER OR NOT THOSE OBJECTIONS

01:30PM 19    WERE LEGITIMATE, AND, YOU KNOW, AS WE JUST WALKED THROUGH, THIS

01:30PM 20    IS A COMPLEX AREA.  IT'S ONE WHERE THE AGENCY'S POSITIONS WERE

01:30PM 21    EVOLVING DURING THE TIME THAT THERANOS WAS IN OPERATION.

01:30PM 22        SO THE FDA AT THE TIME DURING THE OBAMA ADMINISTRATION HAD

01:30PM 23    BEEN PROPOSING A CHANGE ON HOW IT WOULD REGULATE TESTS LIKE

01:31PM 24    THIS, EVENTUALLY ISSUED SOME UNBINDING GUIDANCE THAT HAS SINCE

01:31PM 25    BEEN EITHER RESCINDED OR -- I DON'T KNOW WHAT THE STATUS OF IT

01:31PM 1    IS, BUT IT ACTUALLY DIDN'T GO THROUGH.

01:31PM 2         SO, YOUR HONOR, WE SUBMIT THAT THIS EVIDENCE, IT REALLY

01:31PM 3    IS -- IT'S NOT PROBATIVE OF ANY MATERIAL POINT IN THE CASE AND

01:31PM 4    IT SHOULD BE EXCLUDED.

01:31PM 5         THE COURT:  ALL RIGHT.

01:31PM 6         MR. LOOBY:  YOUR HONOR, ON THE HEARSAY POINT, AND

01:31PM 7    I'D JUST LIKE TO MAKE A COUPLE OF QUICK POINTS.  WE WON'T GO

01:31PM 8    INTO THE LAW BECAUSE THE ARGUMENTS ARE BASICALLY THE SAME.

01:31PM 9         BUT IN CERTAIN WAYS THE FORM 483'S, THEY FARE EVEN WORSE

01:31PM 10   UNDER THE RUBRIC THAT WE DISCUSSED.  FIRST, THEY CONTAIN PURE

01:31PM 11   LEGAL CONCLUSIONS.  THEY ACTUALLY DON'T EVEN REALLY CONTAIN

01:31PM 12   THAT MANY WHAT YOU COULD CALL FACTS.

01:31PM 13        THEN SECOND, THE GOVERNMENT HAS KIND OF ATTACHED TO ITS

01:31PM 14   OPPOSITION TO OUR MOTION IN LIMINE TWO EXHIBITS THAT ARE, YOU

01:32PM 15   KNOW, MULTIPAGE DOCUMENTS.  ONE OF THEM IS 77 PAGES LONG, AND

01:32PM 16   THAT'S GOVERNMENT EXHIBIT 14 AT ECF 680, AND THEN THERE'S

01:32PM 17   GOVERNMENT EXHIBIT 15, ECF 680-1.  THAT ONE IS 49 PAGES LONG.

01:32PM 18        AND THEY SEEM TO BE JUST COMPENDIUMS OF NARRATIVE

01:32PM 19   DOCUMENTS FROM THE INSPECTORS WHO WERE COUNTING ON A DAY-BY-DAY

01:32PM 20   BASIS WHAT THEY FOUND, WHO THEY TALKED TO, WHAT THERANOS

01:32PM 21   EMPLOYEES TOLD THEM.  UNLIKE THE CMS REPORT, THEY ARE GIVEN

01:32PM 22   NAMES.

01:32PM 23        SO WE KNOW THAT A LOT OF THE INFORMATION DID NOT COME FROM

01:32PM 24   MS. HOLMES, BUT IT CAME FROM THE PEOPLE INVOLVED IN THE DESIGN

01:32PM 25   AND MANUFACTURING WHOM THE FDA INSPECTORS WERE QUERYING.

01:32PM 1       IT'S UNCLEAR WHAT THE GOVERNMENT IS ATTEMPTING TO DO, IF

01:32PM 2    IT'S GOING TO OFFER MORE OF THESE LONG FORM NARRATIVE ACCOUNTS

01:32PM 3    OF THE INSPECTION.  THINK OF THEM KIND OF LIKE THE BACKUP

01:33PM 4    DOCUMENTS TO THIS KIND OF THE TOP LEVEL CONCLUSION.

01:33PM 5       THEY WERE NOT ON THE GOVERNMENT'S EXHIBIT LIST.  BUT NOW

01:33PM 6    THE GOVERNMENT HAS KIND OF COME AND PUT THEM IN THE OPPOSITION,

01:33PM 7    AND IT'S TAKEN THE POSITION IN THE OPPOSITION THAT THIS IS KEY

01:33PM 8    EVIDENCE IN THE CASE.

01:33PM 9       SO THERE'S A LOT OF HEARSAY.  THERE'S MULTIPLE LEVELS OF

01:33PM 10   HEARSAY PROBLEMS IN THOSE DOCUMENTS, AND WE SUBMIT THAT THEY

01:33PM 11   WOULD -- THEY SHOULD NOT BE ADMITTED.

01:33PM 12      I THINK THAT'S IT FROM THE HEARSAY POINT.  BEFORE I EITHER

01:33PM 13   TAKE QUESTIONS FROM YOUR HONOR OR RESERVE MY TIME FOR REBUTTAL,

01:33PM 14   THERE'S JUST A FEW WORDS ABOUT SOME OF THE SUPERFLUOUS EVIDENCE

01:33PM 15   THAT THE GOVERNMENT PUTS IN ITS OPPOSITION.  THESE INCLUDE LIKE

01:33PM 16   A LONG EXCERPT OF TEXT MESSAGES ALLEGEDLY SENT BETWEEN

01:33PM 17   MS. HOLMES AND MR. BALWANI DURING THE INSPECTION.  THEY ALSO

01:33PM 18   INCLUDE CHARACTERIZATIONS ABOUT THE PROPRIETARY OF THE LAWYER'S

01:33PM 19   CONDUCT AND OTHER CONDUCT DURING -- IN OBJECTING TO THE FDA AT

01:33PM 20   CERTAIN POINTS IN TIME.

01:33PM 21      ALTHOUGH I WILL NOTE THAT THERE WAS NEVER ACCESS DENIED TO

01:33PM 22   THE FDA TO DO AN INSPECTION.  THERE WERE OBJECTIONS TO THE

01:34PM 23   RECORD ESSENTIALLY AND OTHER COMPANY DOCUMENTS THAT ARE

01:34PM 24   RELATING TO THE CTN'S BUT ARE UNRELATED TO AND PREDATE THE FDA

01:34PM 25   INSPECTION.

114

01:34PM 1        SO I WOULD SUBMIT, YOUR HONOR, THAT THIS IS ALL JUST NOISE

01:34PM 2    TO DISTRACT FROM THE FACT THAT THE FDA INSPECTION DOES NOT BEAR

01:34PM 3    ON THE GOVERNMENT'S ACCURACY AND RELIABILITY CASE.

01:34PM 4        THE FDA INSPECTION -- AND THIS IS, KIND OF GOING BACK TO

01:34PM 5    THE 403 AND THE WASTE OF TIME ISSUES, THIS IS ALL THE STUFF

01:34PM 6    THAT COULD GET SWEPT IN IF WE ARE PERMITTED -- IF WE HAVE TO GO

01:34PM 7    DOWN THIS ROAD IN ADDRESSING WHAT HAPPENED IN AUGUST AND

01:34PM 8    SEPTEMBER OF 2015.

01:34PM 9        SO WITH THAT, YOUR HONOR.

01:34PM 10        THE COURT:  OKAY.  THANK YOU VERY MUCH.  THANK YOU.

01:34PM 11    MR. LEACH.

01:34PM 12        MR. LEACH:  THANK YOU, YOUR HONOR.  GOOD AFTERNOON.

01:35PM 13    THE DEFENDANT'S PROPOSED ORDER SEEKS TO EXCLUDE ANY

01:35PM 14    EVIDENCE, ARGUMENT, OR REFERENCE TO THE FDA'S 2015 INSPECTION.

01:35PM 15        THERE'S BEEN A LOT OF FOCUS ON THE FORM 483'S FROM THE

01:35PM 16    NEWARK AND THE PALO ALTO LABS, BUT THEIR PROPOSED ORDER WANTS

01:35PM 17    NO MENTION THAT THE FDA CAME TO INSPECT THERANOS IN SEPTEMBER

01:35PM 18    OF 2015.

01:35PM 19        THE COURT SHOULD DECLINE TO ISSUE SUCH A SWEEPING ORDER.

01:35PM 20    THE RELEVANCE OF THIS EVIDENCE IS SIMPLE AND MANIFEST.

01:35PM 21        IN SEPTEMBER OF 2015 THE FDA, ONE OF THERANOS'S PRIMARY

01:35PM 22    REGULATORS, CAME FOR AN INSPECTION TO LOOK AT SOME OF

01:35PM 23    THERANOS'S TECHNOLOGY, THE CTN, AND TO USE A VERY NON-LEGAL

01:35PM 24    TERM, THE DEFENDANT FREAKED OUT ABOUT IT.

01:35PM 25        WE KNOW THAT FROM THE TEXT SHE SUBMITS TO MR. BALWANI WHEN

01:36PM 1    THE INSPECTORS COME. THEY INSIST THAT EVERYTHING BE STAMPED

01:36PM 2    "CONFIDENTIAL." THEY SAY WE'RE GOING TO RUN CIRCLES AROUND THE

01:36PM 3    FDA. THEY SAY WE HAVE TO FIX REPRESENTATIONS ON OUR WEBSITE

01:36PM 4    BECAUSE WE MIGHT BE MARKETING THESE LDT'S BECAUSE OF THE CTN'S.

01:36PM 5    THEY TALK ABOUT STOP MAKING THE CTN'S ALTOGETHER. THEY

01:36PM 6    TALK ABOUT HOW THEY NEED TO FIX THE CTN'S, THERANOS'S

01:36PM 7    TECHNOLOGY.

01:36PM 8    NONE OF THIS IS THE BEHAVIOR OF SOMEBODY WHO BELIEVES IN

01:36PM 9    THEIR TECHNOLOGY. NONE OF THIS IS THE BEHAVIOR OF SOMEBODY WHO

01:36PM 10    THINKS THEIR, THAT THEIR -- THAT THE THERANOS TECHNOLOGY IS

01:36PM 11    ACCURATE AND RELIABLE.

01:36PM 12    IF THERE WERE NO PROBLEMS, INSTEAD OF HIRING THE FORMER,

01:36PM 13    YOU KNOW, A FORMER HIGH LEVEL FDA OFFICIAL WHO IS NOW AT

01:36PM 14    BOIES SCHILLER TO COME DEFEND THIS INSPECTION, MS. HOLMES WOULD

01:36PM 15    HAVE SAID COME IN, COME AND SEE EVERYTHING, HERE'S THE CTN'S,

01:37PM 16    HERE'S OUR REPORTS, WE'RE AN OPEN BOOK.

01:37PM 17    THAT'S NOT WHAT HAPPENED HERE. THERE WERE OBJECTIONS.

01:37PM 18    THERE WERE CONTENTIOUS BACK AND FORTH BETWEEN THE FDA

01:37PM 19    INSPECTORS, AND THE TEXT MESSAGES REVEAL DEEP, DEEP ANXIETY

01:37PM 20    ABOUT WHAT THEY'RE GOING TO FIND FOR WHATEVER REASON THAT

01:37PM 21    THEY'RE THERE. THE REASON IS ALMOST IRRELEVANT.

01:37PM 22    IT'S THE FACT THAT THEY ARE REACTING THIS WAY TO A

01:37PM 23    GOVERNMENT INSPECTION THAT REFLECTS INTENT AND KNOWLEDGE THAT

01:37PM 24    THEIR TECHNOLOGY ISN'T UP TO SNUFF.

01:37PM 25    THE COURT: SO, MR. LEACH, IS THAT -- ARE THOSE THE

01:37PM 1    FACTS THAT YOU WOULD SEEK TO INTRODUCE, THAT IS, THE CONDUCT OF

01:37PM 2    THE PARTIES, MS. HOLMES AND OTHERS, IN REGARDS TO A SEARCH AND

01:37PM 3    INVESTIGATION BY THE FDA?  IS IT JUST THE CONDUCT THAT IS

01:37PM 4    PARAMOUNT HERE WITHOUT THE REPORT?

01:37PM 5         MR. LEACH:  THAT'S PRIMARILY WHAT I'M INTERESTED,

01:37PM 6    YOUR HONOR.  AND THE PURPOSE OF ATTACHING SOME OF THESE LENGTHY

01:37PM 7    DESCRIPTIONS OF WHAT HAPPENED DURING THE FDA INSPECTION IS TO

01:38PM 8    GIVE CONTEXT THAT EITHER HEATHER KING OR AN FDA WITNESS, IF

01:38PM 9    NECESSARY, COULD SAY MS. HOLMES SAID X DURING THE FDA

01:38PM 10   INSPECTION.  MS. HOLMES WAS VERY INVOLVED IN THE FDA

01:38PM 11   INSPECTION.  SHE SAID WE'RE ALL USING THESE CTN'S FOR

01:38PM 12   12 PERCENT OF OUR TESTS, SO YOU DON'T NEED TO BE CONCERNED

01:38PM 13   HERE.  SO IT IS PRIMARILY FOR THAT REACTION.

01:38PM 14        WE DO -- I DO CARE ABOUT THE 483, AND I'M NOT GOING TO

01:38PM 15   REARGUE THE HEARSAY ISSUE, BUT I THINK THAT THEY'RE TRYING TO

01:38PM 16   MAKE SOMETHING THAT -- A LOT MORE COMPLICATED THAN IT IS,

01:38PM 17   YOUR HONOR.  AND IF WE NEED TO NOTICE AN FDA WITNESS, AN EXPERT

01:38PM 18   TO EXPLAIN WHAT SHE WROTE ON THE FORM, WE CAN DO THAT.

01:38PM 19        BUT IT GOES TO NOTICE.  IT GOES TO THE INADEQUACY OF THE

01:38PM 20   TESTING FOR THOSE PARTICULAR FOUR ASSAYS.  THE THRUST OF WHAT

01:39PM 21   THAT FORM IS, IS THAT THEY HAD A PLAN, THEY SENT OUT THE

01:39PM 22   ACCEPTANCE CRITERIA THAT THESE ASSAYS NEED TO MEET, AND THEY

01:39PM 23   DIDN'T MEET THEM.

01:39PM 24        AND WHAT DID THEY DO?  THEY KEPT TESTING.

01:39PM 25        NOW, THERANOS INSISTS THAT THEY HAVE SOME DOCUMENTS TO

01:39PM 1    BACK THAT UP, BUT THE FDA WASN'T ACCEPTING THAT.  AND WE THINK

01:39PM 2    THOSE FACTS ARE PROBATIVE OF THE ACCURACY AND RELIABILITY OF

01:39PM 3    THE TESTS.

01:39PM 4        SO I DO CARE ABOUT THE 483, AND I THINK IT'S RELEVANT, AND

01:39PM 5    THIS IS NOT THE MASSIVE MINI TRIAL THAT IT IS MADE OUT TO BE,

01:39PM 6    BUT AN ORDER THAT EXCLUDES ALL FDA INSPECTION EVIDENCE IS WAY

01:39PM 7    TOO BROAD.

01:39PM 8        SHE MAKES MANY STATEMENTS DURING THIS TIME PERIOD THAT ARE

01:39PM 9    REFLECTIVE OF HER INTENT, HER CONTROL OF THE LAB, OVER HER

01:39PM 10   KNOWLEDGE OF THE TECHNOLOGY, AND, FRANKLY, HER ANXIETY ABOUT

01:39PM 11   WHAT THEY WERE GOING TO FIND AND WHAT THEY WERE GOING TO DO.

01:39PM 12       THE COURT:  THANK YOU.  SO THIS WOULD COME IN AS A

01:39PM 13   FOUNDATIONAL, THERE WOULD BE EVIDENCE OF THIS INSPECTION, THIS

01:40PM 14   FDA 2015 INSPECTION, AND THEN YOU SEEK TO GET IN MS. HOLMES'S

01:40PM 15   AND OTHERS' REACTIONS TO IT, ON DAY ONE AT HOUR TWO THIS IS

01:40PM 16   WHAT WAS SAID BY HER, THAT COMES IN AS AN ADMISSION OR FOR SOME

01:40PM 17   OTHER REASON?

01:40PM 18       MR. LEACH:  YES.

01:40PM 19       THE COURT:  AND THEN THE CONDUCT WAS THIS, AND THEN

01:40PM 20   THIS, AND THIS, AND THIS?

01:40PM 21       MR. LEACH:  YES.

01:40PM 22       THE COURT:  WITHOUT NECESSARILY -- I'M NOT ASKING

01:40PM 23   YOU TO CONCEDE WHETHER OR NOT YOU'LL WANT THE DOCUMENT IN, BUT

01:40PM 24   IT SOUNDS LIKE IT'S REALLY THE CONDUCT OF THE PARTIES IN

01:40PM 25   RELATION TO THE INSPECTION THAT IS TELLING.

01:40PM 1          MR. LEACH:  YES, YOUR HONOR.

01:40PM 2      NOW, I AM WORRIED ABOUT IF FOR WHATEVER REASON THE FORM

01:40PM 3  483 IS NOT PERMITTED, I AM WORRIED ABOUT THE MISPERCEPTION

01:40PM 4  ABOUT THE RELATIONSHIPS BETWEEN THE FDA AND THERANOS WERE

01:40PM 5  WONDERFUL AND HAPPY AND EVERYTHING WAS FINE.  SHE DOES MAKE

01:41PM 6  SOME STATEMENTS ABOUT THE FDA AFTERWARDS.

01:41PM 7      BUT THE CRUX OF THE GOVERNMENT'S RELEVANCE AND 403

01:41PM 8  ARGUMENTS ARE HER REACTION TO THIS INSPECTION IS DEEPLY

01:41PM 9  RELEVANT.  A SWEEPING ORDER THAT EVERYTHING IS OUT IS NOT

01:41PM 10 APPROPRIATE.  I WOULD URGE THE COURT TO WAIT TO SEE IF WE

01:41PM 11 ACTUALLY OFFER THE 483 AS OPPOSED TO THE OTHER DOCUMENTS.

01:41PM 12     BUT THE SWEEPING ORDER THAT THEY'RE ASKING FOR IS JUST NOT

01:41PM 13 WARRANTED.

01:41PM 14         THE COURT:  SO I ASKED MR. LOOBY A QUESTION ABOUT

01:41PM 15 THE TIMING OF THIS INSPECTION AND WHETHER IT WAS A REQUEST OR A

01:41PM 16 VOLUNTARY.  AND I THINK HE SAID NO, IT WAS NOT.  I THINK THAT'S

01:41PM 17 WHAT HE SAID.

01:41PM 18     I WAS CURIOUS, IT LOOKS LIKE DIDN'T THERANOS, AND

01:41PM 19 MR. LOOBY WILL SHARE HIS OPINION, DIDN'T THEY SEEK APPROVAL

01:41PM 20 FROM THE FDA IN 2013 AND THEN THERE WAS -- BETWEEN 2013 AND

01:41PM 21 2015 OBVIOUSLY THERE WERE, I PRESUME, SOME CONVERSATIONS, AND

01:42PM 22 THEN ULTIMATELY UNANNOUNCED THE FDA SHOWS UP TO DO THE

01:42PM 23 INSPECTION FOR THAT REQUEST I SUPPOSE FOR CERTIFICATION.

01:42PM 24     IS THAT THE EVENT HERE?

01:42PM 25         MR. LEACH:  THAT IS LARGELY CORRECT, YOUR HONOR.

UNITED STATES COURT REPORTERS

| | | |
|---|---|---|
| 01:42PM | 1 | I -- THAT IS CORRECT. |
| 01:42PM | 2 | THE COURT: FEEL FREE TO CORRECT ME. |
| 01:42PM | 3 | MR. LEACH: WELL, I'M TRYING TO THINK IF THERE'S A |
| 01:42PM | 4 | NUANCE TO IT THAT I DISAGREE WITH AND OFF THE FLY I DON'T. |
| 01:42PM | 5 | THERE WAS DIALOGUE BETWEEN THERANOS AND THE FDA THROUGHOUT |
| 01:42PM | 6 | 2013 AND 2014. |
| 01:42PM | 7 | THE 2015 INSPECTION IS UNANNOUNCED. THEY SHOW UP ON |
| 01:42PM | 8 | THERANOS'S DOOR. I CAN'T SAY SIMPLY THROUGH LACK OF |
| 01:42PM | 9 | PREPARATION, YOU KNOW, EXACTLY WHO WITHIN THE FDA MADE THE |
| 01:42PM | 10 | DECISION TO SHOW UP THERE, BUT IT WAS UNANNOUNCED, IT WAS -- |
| 01:42PM | 11 | THEY DIDN'T TELL -- THE FDA DIDN'T TELL THERANOS THEY WERE |
| 01:43PM | 12 | COMING. |
| 01:43PM | 13 | WE DID SEE FROM THE DOCUMENT MR. LOOBY JUST SHOWED, THIS |
| 01:43PM | 14 | IS EXHIBIT 82 AT 6, THAT PART OF THE REASON THE FDA WAS THERE |
| 01:43PM | 15 | WAS BECAUSE PRE-SUBMISSIONS THAT THERANOS HAD SUBMITTED RAISED |
| 01:43PM | 16 | SERIOUS CONCERNS ABOUT THE SAFETY AND THE EFFECTIVENESS OF THE |
| 01:43PM | 17 | CTN DEVICES BECAUSE PRELIMINARY DATA REVIEWED BY THE FDA |
| 01:43PM | 18 | DEMONSTRATE THAT THE RESULTS OF SAMPLES COLLECTED AND STORED IN |
| 01:43PM | 19 | THE NANOTAINER WERE MUCH LESS ACCURATE. |
| 01:43PM | 20 | SO I ANTICIPATE THERE WOULD BE SOME TESTIMONY OR REASONS |
| 01:43PM | 21 | WHY THE FDA SHOWED UP. BUT IT WAS NOT, IT WAS NOT A -- IT WAS |
| 01:43PM | 22 | COMPLETELY UNANNOUNCED. THEY WERE THERE IN BOTH LOCATIONS. |
| 01:43PM | 23 | THE COURT: WAS IT -- MAYBE IT'S NOT IMPORTANT. I'M |
| 01:43PM | 24 | JUST CURIOUS OF THE TIMELINE OF THIS. |
| 01:43PM | 25 | WAS THEIR SHOWING UP THERE, IT SOUNDS LIKE IT WAS |

01:43PM 1    CONNECTED TO THE ORIGINAL REQUEST TO APPROVE OUR DEVICE.

01:44PM 2            MR. LEACH:  I GUESS THAT'S A FAIR INFERENCE,

01:44PM 3    YOUR HONOR.

01:44PM 4            THE COURT:  AS OPPOSED TO JUST AN UNANNOUNCED

01:44PM 5    SPOT-CHECK.  WHAT ARE YOU DOING HERE?  WE'VE NEVER SEEN YOU

01:44PM 6    BEFORE.  BUT THERE WAS SOME COMMUNICATION.

01:44PM 7        AND I GUESS, AND I DON'T KNOW IF THIS IS ACCURATE OR NOT,

01:44PM 8    BUT IS THAT -- MAYBE THIS MISPHRASES IT, BUT WAS THAT A

01:44PM 9    JUSTIFICATION FOR THE FDA BEING ON THE PROPERTY AT THAT TIME?

01:44PM 10           MR. LEACH:  I THINK THAT'S A FAIR CHARACTERIZATION,

01:44PM 11   YOUR HONOR.  I HAVEN'T REVIEWED THE FDA WITNESS STATEMENTS TO

01:44PM 12   ANSWER THAT WITH A LEVEL OF DEFINITIVENESS FOR YOUR HONOR, BUT

01:44PM 13   THERE HAD BEEN SOME ENGAGEMENT BETWEEN THE FDA.  THERE WERE

01:44PM 14   SOME 510(K) SUBMISSIONS.

01:44PM 15       AND THE DOCUMENT WE JUST LOOKED AT REFLECTS THAT SOME OF

01:44PM 16   THE REASONS FOR THE EXAM WAS ANXIETY OVER THAT DATA.

01:44PM 17           THE COURT:  FROM MS. HOLMES AND HER TEAM?

01:44PM 18           MR. LEACH:  NO, FROM THE FDA.

01:44PM 19           THE COURT:  FROM THE FDA.  I SEE.

01:44PM 20       SO I GUESS YOU WOULDN'T CALL THEM INVITEES, BUT THEY WERE

01:44PM 21   THERE BECAUSE THERE WAS AN APPLICATION MADE FOR APPROVAL.

01:45PM 22           MR. LEACH:  THERE WERE SOME APPLICATIONS FOR

01:45PM 23   APPROVAL.  I THINK THE FDA'S CONCERN WAS THAT THEY WERE USING

01:45PM 24   THE NANOTAINER IN A WAY THAT WASN'T CONSISTENT WITH THEIR VIEW

01:45PM 25   OF THE LDT FRAMEWORK.  SO IT WAS A CONCERN THAT THERANOS WAS

121

01:45PM 1   DOING SOMETHING WITHOUT APPROVAL.

01:45PM 2       BUT THERE CERTAINLY HAD BEEN SUBMISSIONS FOR APPROVAL BY

01:45PM 3   THERANOS TO CERTAIN ASPECTS OF THE TECHNOLOGY BEFORE.

01:45PM 4           THE COURT:  OKAY.  WHAT ABOUT MR. LOOBY TOLD US THAT

01:45PM 5   ALL OF THIS OCCURRED AFTER THE LAST ROUND OF INVESTOR --

01:45PM 6           MR. LEACH:  I THINK THAT'S A RED HERRING,

01:45PM 7   YOUR HONOR.

01:45PM 8       I THINK STATEMENTS -- A DEFENDANT CAN MAKE STATEMENTS.

01:45PM 9   FIRST OF ALL, THE SCHEME ALLEGED IN THE INDICTMENT ON THE

01:45PM 10  INVESTOR COUNT GOES THROUGH 2015.  SO THIS IS DURING THE TIME

01:45PM 11  PERIOD OF THE CONSPIRACY.

01:46PM 12      THE LAST ACTUAL MONEY THAT CAME IN THE DOOR WAS AT SOME

01:46PM 13  POINT EARLIER IN 2015, BUT WE'VE PRESENTED SOME EVIDENCE THAT

01:46PM 14  THEY WERE PURSUING PARTNERSHIPS THAT AT ONE POINT HAD AN EQUITY

01:46PM 15  COMPONENT LATE INTO 2015.

01:46PM 16      I DON'T THINK THERE WAS A MOMENT WHERE MS. HOLMES SAID I'M

01:46PM 17  DONE, DON'T NEED TO RAISE ANY MORE MONEY.  SO I DON'T THINK

01:46PM 18  IT'S AS CLEAN OF A BREAK AS THEY SUGGEST IT IS.

01:46PM 19      BUT EVEN IF IT WAS AFTER THE FACT, YOUR HONOR, A, IT'S

01:46PM 20  CLOSE IN TIME; B, A DEFENDANT CAN MAKE STATEMENTS AFTER THE

01:46PM 21  SCHEME IS COMPLETED THAT REFLECTS ANXIETY ABOUT GETTING CAUGHT

01:46PM 22  OR AN INSPECTOR COMING IN AND SEEING THEIR TECHNOLOGY IS NOT

01:46PM 23  WHAT IT IS.

01:46PM 24      IT'S HER REACTION TO THIS FDA INSPECTION THAT, YOU KNOW,

01:46PM 25  WHENEVER IT IS, AND IT IS VERY CLOSE IN TIME.  IT'S WHILE

122

01:46PM 1    MR. CARREYROU IS DOING SOME OF HIS RESEARCH AND IS DRAFTING THE

01:46PM 2    ARTICLE.

01:46PM 3        SO I DON'T THINK THERE IS SOME TEMPORAL CONNECTION THAT

01:47PM 4    MAKES THIS IRRELEVANT.

01:47PM 5            THE COURT:  YOU KNOW, I SHOULD HAVE -- I DON'T MEAN

01:47PM 6    TO GO BACK TO OUR CONVERSATION BEFORE THE LUNCH BREAK BUT 572,

01:47PM 7    THIS COULD COME IN CONTEXT THERE AS WELL AS TO STATEMENTS

01:47PM 8    THAT -- I THINK THOSE WERE IN 2016.  AND ARE THOSE OUTSIDE OF

01:47PM 9    THE CHARGING PERIOD SUCH THAT THEY LACK RELEVANCE?

01:47PM 10           MR. LEACH:  NOT FOR THE PATIENT COUNT, YOUR HONOR,

01:47PM 11   NO.  I DON'T HAVE THE INDICTMENT IN FRONT OF ME BUT SOME OF THE

01:47PM 12   ALLEGATIONS -- THE CONSPIRACY CONTINUES INTO 2016.

01:47PM 13       AGAIN, I'M NOT AWARE OF A RULE THAT SAYS ONLY STATEMENTS

01:47PM 14   DURING A SCHEME TO DEFRAUD ARE RELEVANT.  IF MIRACULOUSLY

01:47PM 15   MS. HOLMES WERE TO MAKE A STATEMENT TODAY RELATING TO HER

01:47PM 16   INTENT, WE WOULDN'T CERTAINLY SAY THAT HER TESTIMONY BEFORE THE

01:47PM 17   S.E.C. WAS IRRELEVANT BECAUSE IT'S THREE YEARS LATER.

01:47PM 18       IT'S CLOSE IN TIME, AND IT'S WITHIN THE CONSPIRACY ALLEGED

01:47PM 19   IN THE PATIENT COUNT, AND IT'S SO CONNECTED TO EVENTS THAT

01:47PM 20   HAPPENED DURING THE SCHEME.  I DON'T SEE SOME TEMPORAL ISSUE

01:48PM 21   THERE WITH ITS RELEVANCE.

01:48PM 22           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:48PM 23           MR. LEACH:  THANK YOU, YOUR HONOR.

01:48PM 24           THE COURT:  MR. LEACH, MAYBE YOU WANT TO STAND UP

01:48PM 25   THERE.  I MIGHT ASK YOU TO COME BACK.

01:48PM 1    MR. LEACH: I'M HAPPY TO DO THAT, YOUR HONOR.

01:48PM 2    MR. LOOBY: THANK YOU, YOUR HONOR.

01:48PM 3  AND OUR ARGUMENT ISN'T THAT THERE IS LIKE A SHARP CUTOFF

01:48PM 4 DATE AFTER WHICH ALL STATEMENT, ALL EVIDENCE IN THE CASE WOULD

01:48PM 5 BE IRRELEVANT AFTER THE CLOSING OF THE LAST INVESTMENT ROUND.

01:48PM 6  WHAT WE'RE TALKING ABOUT IS THE WAY THAT THE GOVERNMENT

01:48PM 7 CHARGED THE CASE THE FDA IS GOING TO BE PART OF THE CASE.

01:48PM 8 THERE IS REPRESENTATION ABOUT THE FDA, ABOUT WHAT REQUIREMENTS

01:48PM 9 WERE APPROVED, WHAT APPROVALS OR CLEARANCES WERE REQUIRED OR

01:48PM 10 NOT.

01:48PM 11  AND AS THE INSPECTION REPORT SHOWED, AT THE TIME THAT THE

01:48PM 12 FDA WENT IN, I MEAN, THE FDA AND THERANOS WERE NO STRANGERS TO

01:48PM 13 ONE ANOTHER. THEY HAD BEEN DEALING EXTENSIVELY FOR MANY YEARS.

01:48PM 14 THERE HAVE BEEN MANY SUBMISSIONS ABOUT GETTING CLEARANCE FOR

01:49PM 15 ITS TESTS. THAT'S ALL GOING TO BE PART OF THE CASE

01:49PM 16 ESSENTIALLY. THAT'S PART OF THE -- IT ALL BEARS ON THE

01:49PM 17 INDICTMENT ALLEGATION.

01:49PM 18  WHAT THE INDICTMENT ALLEGATION DOESN'T RELATE TO IS THE

01:49PM 19 INSPECTION. AND WHAT I HEARD FROM MR. LEACH IS THAT THE

01:49PM 20 INSPECTION IS BASICALLY BEING BROUGHT IN ON THE BACK OF A

01:49PM 21 HANDFUL OF TEXT MESSAGES SENT DURING THE INSPECTION. AND SO I

01:49PM 22 THINK IF YOU LOOK AT THE GOVERNMENT'S OPPOSITION AT PAGE 674,

01:49PM 23 DOCUMENT 674 ON THE ECF, AND PAGE 5 TO 7, THESE ARE THE TEXT

01:49PM 24 MESSAGES THAT ARE NOW GOING TO BRING IN AN ENTIRE INSPECTION

01:49PM 25 AND FORM 483'S, AND MAYBE SOME NARRATIVE ACCOUNTS FROM

01:49PM 1    INSPECTORS, WE MIGHT GET A NEW GOVERNMENT WITNESS APPARENTLY

01:49PM 2    WHO HAS NOT BEEN DISCLOSED BECAUSE THE GOVERNMENT HASN'T PUT ON

01:49PM 3    ITS WITNESS LIST A SINGLE PERSON WHO WAS PRESENT FOR THE

01:49PM 4    INSPECTION AND STILL HAS NOT DONE THAT.

01:50PM 5        SO, YOU KNOW, YOUR HONOR, WE POINTED OUT IN OUR REPLY WHY

01:50PM 6    SOME OF THESE AND KIND OF CHERRY PICKED TEXT MESSAGES ARE BEING

01:50PM 7    TAKEN OUT OF CONTEXT.

01:50PM 8        AND, YOU KNOW, EVEN IF YOU WERE TO ACCEPT THE GOVERNMENT'S

01:50PM 9    READING, I DON'T THINK THAT THE FDA INSPECTION EVIDENCE AND THE

01:50PM 10   FACT OF THE INSPECTION OR THE FACT THAT THEY WERE OBSERVATIONS

01:50PM 11   THAT THERANOS WAS FOUND TO BE NONCOMPLIANT WITH THE FOOD, DRUG,

01:50PM 12   AND COSMETIC APP, THAT THOSE ARE NECESSARY TO PUT ANY OF THIS

01:50PM 13   IN CONTEXT.  THIS SEEMS TO ME LIKE IT'S REALLY KIND OF PUTTING

01:50PM 14   THE HORSE BEFORE THE CART OR THE CART BEFORE THE HORSE.  I AM

01:50PM 15   SORRY.

01:50PM 16           THE COURT:  IT'S BEEN A LONG TIME SINCE WE'VE HAD

01:50PM 17   THOSE.

01:50PM 18           MR. LOOBY:  YEAH.

01:50PM 19           THE COURT:  WHAT I WAS CURIOUS ABOUT, WHAT MR. LEACH

01:50PM 20   AND I PROBED A LITTLE BIT ABOUT IS THAT YOU HEARD MR. LOOBY

01:50PM 21   TALK VERY ARTICULATELY ABOUT THIS FORM AND THE PROBLEMS WITH

01:50PM 22   THIS FORM AND THE ISSUES WITH THE FORM AND THE ISSUES PRESENTED

01:51PM 23   IN THE FORM.  AND WHAT IS IT THAT YOU WANT IN?

01:51PM 24       IT SOUNDS LIKE WHAT THE GOVERNMENT SEEKS TO GAIN IS REALLY

01:51PM 25   THE CONDUCT OF THE PARTIES ONCE THE INSPECTORS ARE EITHER ON

125

01:51PM 1    SITE OR THEY HAVE GIVEN NOTICE THAT THEY'RE ON SITE AND WHAT

01:51PM 2    THEY'RE LOOKING FOR AND AS YOU REFERENCE THIS EXCHANGE OF TEXT

01:51PM 3    MESSAGES AND THE PARTIES, THE STATEMENTS.

01:51PM 4        IT'S NOT SO MUCH THE ACTUAL FORM, ALTHOUGH I'M SURE YOU

01:51PM 5    WOULD LIKE IT TO COME IN, BUT IT'S THE CONDUCT OF THE PARTIES

01:51PM 6    IN REGARDS TO -- THE FDA IS HERE AND WE THINK THAT THEY'RE

01:51PM 7    LOOKING AROUND AT OUR MACHINES.  WHAT SHOULD WE DO?  CIRCLE THE

01:51PM 8    WAGONS.  DO THIS, DO THAT.  THAT SEEMS TO BE -- IS THAT A

01:51PM 9    FAIR --

01:51PM 10            MR. LEACH:  IT'S A VERY FAIR SUMMARY, YOUR HONOR.

01:51PM 11            MR. LOOBY:  SO, YOUR HONOR, I THINK THE RELEVANCE OF

01:51PM 12   THAT TYPE OF EVIDENCE ACTUALLY -- IT RELIES ON THE FACT THAT

01:51PM 13   THE FDA INSPECTION, LIKE, HAS SOMETHING TO DO WITH THE

01:52PM 14   PERFORMANCE OF THE TEST AND THE RESULTS COMING OUT OF THE LAB.

01:52PM 15            THE COURT:  SO I LOOK AT IT AS -- AND HELP ME WITH

01:52PM 16   THIS.  THAT IS WHY I ASKED THE QUESTIONS ABOUT INITIALLY THAT

01:52PM 17   IT SEEMED LIKE IN THE COURSE OF BUSINESS THERANOS WAS SEEKING

01:52PM 18   TO GET LICENSURE OR APPROVAL OF THEIR MACHINE AND PART OF THAT

01:52PM 19   PROCESS IS NOW WE PROBABLY ARE ALL FAMILIAR WITH FDA APPROVAL.

01:52PM 20   WE HAD TO WAIT ANXIOUSLY WHILE THE FDA APPROVES CERTAIN

01:52PM 21   VACCINES THAT ALL OF US COULD GET.

01:52PM 22       SO I THINK THE PUBLIC HAS SOME GENERAL IDEA AT A HIGH

01:52PM 23   LEVEL ABOUT WHAT FDA APPROVAL IS.  BUT IT SEEMS LIKE THAT'S

01:52PM 24   WHAT THIS WAS.  THERANOS WANTED THIS TO MARKET WHEN ALBEIT IT

01:52PM 25   TOOK TWO YEARS TO GET THERE.  IT IS THE GOVERNMENT AFTER ALL,

UNITED STATES COURT REPORTERS

126

01:52PM 1 BUT IT TOOK A WHILE TO PROCESS ALL OF THAT.

01:52PM 2  BUT THEN THIS VISIT WAS OUT OF THE ORDINARY, I SUPPOSE, IN

01:52PM 3 THAT IT WAS UNANNOUNCED, BUT THEY CERTAINLY, AS PART OF THE

01:52PM 4 PROCESS, COULD BE THERE AND DO THIS AND DO THIS INSPECTION.

01:53PM 5  THE REASONS WERE, I THINK MR. LEACH SAYS, CONCERNS THAT

01:53PM 6 THEY HAD FOR WHATEVER THE SOURCE IS OF THAT AND WHETHER THAT

01:53PM 7 COMES IN AND HOW THAT COMES IN PERHAPS IS A DIFFERENT FUNCTION.

01:53PM 8  BUT THE GENESIS OF THEM BEING THERE IS TO LOOK AND INSPECT

01:53PM 9 THESE PARTICULAR MACHINES.  SHOULD THAT COME IN WITH SOME

01:53PM 10 SANITIZATION?  I HEAR WHAT YOU'RE SAYING.  DON'T GET THE REPORT

01:53PM 11 IN BECAUSE IT SAYS ALL OF THIS BECAUSE WE DON'T WANT TO BURDEN

01:53PM 12 THE JURY WITH HAVING ANOTHER EXPERT TELL THEM WHAT THIS PAPER

01:53PM 13 SAYS.  MAYBE NOT.  BUT JUST THAT GENERAL CONCEPT.

01:53PM 14  MR. LOOBY:  SO YOUR HONOR IS RIGHT THAT THERANOS HAD

01:53PM 15 MADE SEVERAL SUBMISSIONS, INCLUDING SUBMISSIONS WITH DATA ON

01:53PM 16 ITS ANALYZERS, ITS TESTS, AND INCLUDING ON TESTS RUN ON THE

01:53PM 17 CTN'S TO THE FDA OVER THE COURSE OF SEVERAL YEARS.

01:53PM 18  SO THE FDA'S INSPECTION OF THERANOS DIDN'T LOOK AT THOSE

01:54PM 19 RECORDS.  THOSE ARE ACTUALLY KIND OF SEPARATE, AND, IN FACT,

01:54PM 20 CONTINUED AFTER THERANOS SUBMITTED A NEW 510(K) WITH NEW DATA

01:54PM 21 TO GET ITS CTN'S CLEARED, KIND OF IN THE MIDDLE OF WHILE THE

01:54PM 22 RECORD OF THE INSPECTION IS STILL GOING.

01:54PM 23  AND THERANOS CONTINUED TO ENGAGE WITH THE FDA ABOUT

01:54PM 24 GETTING EMERGENCY USE APPROVAL FOR ZIKA, Z-I-K-A, ASSAY IN

01:54PM 25 2016.

01:54PM  1      SO WHAT THE FDA INSPECTION WAS, WAS TO GO IN AND MAKE A

01:54PM  2   DETERMINATION THAT THE CTN'S ARE CLASS 2, AND SAY IF YOU'RE

01:54PM  3   DOING THAT, YOU NEED, LIKE -- YOU THOUGHT THAT YOU WERE AN LDT,

01:54PM  4   AND THAT'S WHAT THE INDICTMENT ALLEGATION IS ABOUT, BUT IN THE

01:54PM  5   PAST.

01:54PM  6      NOW WE'RE TELLING YOU YOU'VE GOT TO DO THESE QSR'S, YOU

01:54PM  7   DON'T HAVE YOUR DUCKS IN A ROW, AND WE'RE GOING TO WRITE YOU

01:54PM  8   UP.

01:54PM  9      BUT IT'S NOT ABOUT THAT THEY CAME IN AND THEY SAID, OH,

01:55PM  10  OH, WE'RE GOING TO REVIEW YOUR CLINICAL LAB TEST RESULTS.  THEY

01:55PM  11  DIDN'T TO THAT.  THAT'S A SEPARATE ORGANIZATION.  AND THEY

01:55PM  12  ACTUALLY DIDN'T EVEN LOOK AT SOME OF THE VALIDATION WORK THAT

01:55PM  13  THERANOS HAD DONE ON ITS TESTS USING THE CTN'S BECAUSE THOSE

01:55PM  14  DOCUMENTS ARE MAINTAINED IN THE CLIA LAB CONTEXT.  NOT OUR

01:55PM  15  JURISDICTION.

01:55PM  16      SO I DON'T THINK THERE'S QUITE A DIRECT LINE BETWEEN THE

01:55PM  17  TWO.  THE FDA IS GOING TO BE IN THE CASE BUT THIS PART OF IT

01:55PM  18  COULD BE VERY EASILY EXCISED.  IT HAS THE REAL POTENTIAL TO BE

01:55PM  19  QUITE THE SIDESHOW.

01:55PM  20      AND EVEN IF YOU TOOK AT FACE VALUE THAT THE TEXT MESSAGES

01:55PM  21  REFLECTED SOME FORM OF ANXIETY ABOUT THE FDA INSPECTION, IT

01:55PM  22  COULD BE THAT, YOU KNOW, WE HAVE BEEN GETTING ALONG WITH THE

01:55PM  23  FDA AND NOW THEY'RE HERE AND THAT -- I MEAN, THAT WOULD BE

01:55PM  24  TROUBLING.  I MEAN, WE CURRENTLY HAVE SUBMISSIONS WITH THEM ON

01:55PM  25  FILE.

01:55PM 1          THE COURT:  THERE'S A COMPLETE INNOCENT EXPLANATION

01:55PM 2    FOR ALL OF THIS.

01:55PM 3          MR. LOOBY:  CORRECT.  AND SO TO HAVE THESE KIND OF

01:56PM 4    AMBIGUOUS TEXT MESSAGES BE THE THING THAT DRAGS IN THIS ENTIRE

01:56PM 5    VIGNETTE ABOUT, YOU KNOW, ABOUT THE INSPECTION, TO ME IT JUST

01:56PM 6    SEEMS LIKE THAT JUICE IS DEFINITELY NOT WORTH THE SQUEEZE.

01:56PM 7          AND I THINK THE GOVERNMENT'S RELEVANCE THEORY FOR THESE

01:56PM 8    TEXT MESSAGES AND FOR THE ACTIONS AND RESPONSES, IT ALL KIND OF

01:56PM 9    PRESUPPOSES THAT THE FDA WAS THERE TO LIKE CRACK DOWN ON

01:56PM 10   THERANOS'S CLINICAL LABORATORY.

01:56PM 11         THE COURT:  WELL, THIS IS WHY I WAS CURIOUS ABOUT --

01:56PM 12   I USED THE WORD "INVITEE."  I'M NOT SUGGESTING THAT'S WHAT THEY

01:56PM 13   WERE.  BUT IT WAS NOT UNUSUAL FOR THE FDA TO BE ON SITE DURING

01:56PM 14   THE CERTIFICATION PROCESS I GUESS.  IT WAS UNUSUAL THAT THEY

01:56PM 15   DIDN'T CALL AND SAY THAT THEY WERE COMING, BUT --

01:56PM 16         MR. LOOBY:  SO I'M NOT SURE THAT'S EXACTLY RIGHT,

01:56PM 17   YOUR HONOR.  I THINK A LOT OF THE FDA SUBMISSIONS ARE DONE ON

01:56PM 18   THE PAPER.  THERE'S A LOT OF PAPER IN THIS CASE WHEN I LOOK AT

01:56PM 19   THEM AND ON WEBEX'S, AND THEY WERE EVEN DOING ZOOM BACK IN THE

01:57PM 20   DAY.

01:57PM 21         SO I DON'T KNOW HOW MUCH OF AN ON SITE INSPECTION IS PART

01:57PM 22   OF THE FDA APPROVAL PROCESS.  AND I DON'T THINK IT HAD BEEN UP

01:57PM 23   TO THIS POINT, AND THAT'S BECAUSE THIS INSPECTION WAS RELATED

01:57PM 24   TO THE FDA, LIKE THE MANUFACTURING DOCUMENTATION AND POLICIES,

01:57PM 25   AND NOT WITH THE, LIKE, REGULATORY APPROVAL APPLICATIONS.

01:57PM  1          THE COURT:  SO YOU HAD PINNED THIS, I THINK, EARLIER

01:57PM  2  TO WHETHER OR NOT THIS INSPECTION CONNECTED WITH THE

01:57PM  3  INDICTMENT, THAT IS, THE ABILITY OF THERANOS TO PRODUCE

01:57PM  4  MACHINES THAT WOULD PRODUCE THEIR RELIABLE RESULTS

01:57PM  5  CONSISTENTLY.  I THINK THAT'S WHAT YOU SAID EARLIER.

01:57PM  6          MR. LOOBY:  YEAH.

01:57PM  7          THE COURT:  LET ME TURN TO MR. LEACH.

01:57PM  8      IS THAT WHAT THIS IS ABOUT, MR. LEACH?

01:57PM  9          MR. LEACH:  THIS IS ABOUT INTENT, YOUR HONOR, AND

01:57PM  10  THE DEFENDANT'S BELIEF THAT HER TECHNOLOGY, THE CTN, WAS PART

01:57PM  11  OF THERANOS TECHNOLOGY, PARTICULARLY IN THE APPLICATION HERE.

01:58PM  12  IT WAS NOT CAPABLE OF PRODUCING ACCURATE AND RELIABLE RESULTS.

01:58PM  13      THE CONTEXT HERE IS CRITICAL.  JOHN CARREYROU IS TALKING

01:58PM  14  TO FORMER THERANOS EMPLOYEES ABOUT A STORY.  MS. HOLMES IS

01:58PM  15  GOING TO "THE WALL STREET JOURNAL" BEGGING THEM NOT TO PUBLISH

01:58PM  16  THIS STORY BEFORE SEPTEMBER OF 2015.  THEN IN SEPTEMBER OF 2015

01:58PM  17  THE FDA COMES KNOCKING.

01:58PM  18      WHAT IS HER REACTION TO ALL OF THIS?  IS IT COME ON IN,

01:58PM  19  LOOK AT EVERYTHING, TOTALLY FINE, NOTHING TO SEE HERE, WE'RE

01:58PM  20  CONFIDENT IN HOW OUR CTN'S WORK, EVERYTHING IS GREAT, YOU CAN

01:58PM  21  HAVE EVERYTHING YOU WANT?

01:58PM  22      IT'S THE EXACT OPPOSITE.  AND IT'S THE ANXIETY BETWEEN HER

01:58PM  23  AND HER PRIVATE COMMUNICATIONS BETWEEN HER AND HER CONSPIRATOR

01:58PM  24  ABOUT I'VE BEEN THINKING ABOUT TURNING THE CTN OFF.  WE NEED TO

01:58PM  25  DEVOTE ALL AVAILABLE RESOURCES TO MAKING THIS BETTER.  THOSE

01:58PM 1 ARE CRITICAL ADMISSIONS ABOUT ANXIETY ABOUT WHAT THE FDA MIGHT

01:58PM 2 FIND, ANXIETY ABOUT WHAT THEIR TECHNOLOGY COULD DO RIGHT AS

01:59PM 3 EVERYTHING IS COMING TO A HEAD.

01:59PM 4 SO WHETHER THIS WAS AFTER AN INVESTMENT, WHETHER THE FDA

01:59PM 5 WAS THERE JUST BECAUSE THEY WERE TAKING A RANDOM SAMPLE OF LABS

01:59PM 6 IN SILICON VALLEY AND JUST WANTED TO SAY HI DOESN'T MATTER.

01:59PM 7 WHAT MATTERS IS THE REACTION. AND THE REACTION, AND I

01:59PM 8 SUBMIT A FAIR READING OF THESE TEXTS, AND THEY MAY HAVE A SIDE

01:59PM 9 TO THAT STORY, BUT THAT'S FODDER FOR CROSS-EXAMINATION, IS

01:59PM 10 FREAKING OUT. WHAT DO WE DO ABOUT THIS? AND THAT'S VERY

01:59PM 11 RELEVANT TO STATE OF MIND AND BELIEVED IN THE ACCURACY AND THE

01:59PM 12 RELIABILITY OF THERANOS TECHNOLOGY.

01:59PM 13 THE COURT: ALL RIGHT. MR. LOOBY.

01:59PM 14 MR. LOOBY: YOUR HONOR, AGAIN, AND OBVIOUSLY THERE'S

01:59PM 15 A DIFFERENT WAY TO READ THESE TEXT MESSAGES, WHICH IS MAYBE WE

01:59PM 16 MIGHT TAKE THE CTN OFF AS WE MIGHT STOP USING THE CTN'S FOR OUR

01:59PM 17 LABORATORY DEVELOPED TESTS NOW THAT IT SEEMS LIKE FDA DOESN'T

01:59PM 18 AGREE WITH OUR POSITION ON THE LDT'S. SO WHY DON'T WE WAIT?

02:00PM 19 WE HAVE AN APPLICATION PENDING OR THEY WERE ABOUT TO RESUBMIT

02:00PM 20 ONE TO GET CLEARANCE FOR THEM. SO WHY DON'T WE DO THAT?

02:00PM 21 THE GOVERNMENT'S READING OF THESE ARE VERY CRIBBED, AND,

02:00PM 22 YOU KNOW, FOR THIS TO BE KIND OF THE WHOLE THING THAT JUSTIFIES

02:00PM 23 BRINGING THE FDA INSPECTION EVIDENCE, AND THEN TO SAY THAT A

02:00PM 24 LEGAL OBJECTIONS FROM THERANOS'S COUNSEL ARE, YOU KNOW, SOMEHOW

02:00PM 25 TERRIBLE INTENT EVIDENCE, TO ME IT'S QUITE THE STRETCH AND

131

```
02:00PM   1      WE'RE REALLY OUT ON A THIN READ OF RELEVANCE HERE.
02:00PM   2              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU BOTH VERY
02:00PM   3      MUCH.  THANK YOU.
02:00PM   4              MR. LEACH:  THANK YOU, YOUR HONOR.
02:00PM   5              THE COURT:  THIS MOTION IS UNDER SUBMISSION.  THANK
02:00PM   6      YOU.
02:00PM   7          I THINK 575 IS NEXT.  IS THAT YOU?
02:01PM   8              MR. LOOBY:  YES.
02:01PM   9              THE COURT:  YOU'RE GETTING YOUR BILLABLES IN TODAY.
02:01PM  10              MR. LOOBY:  YES.  I'M THE REGULATORY GUY.
02:01PM  11              THE COURT:  OKAY.
02:01PM  12              MR. LOOBY:  SO THIS MOTION IS AT ECF 575 IT DEALS
02:01PM  13      WITH THREE DISCRETE SETS OF EVIDENCE THAT SHARE IN COMMON THEIR
02:01PM  14      INCLUSION ON THE GOVERNMENT'S 404(B) DISCLOSURE AS INVOLVING
02:01PM  15      SOME SORT OF DECEIT UPON A GOVERNMENT REGULATORY AGENCY.
02:01PM  16          AT THE THRESHOLD OF THIS, I WOULD JUST SAY THAT THE
02:01PM  17      GOVERNMENT HAS KIND OF WALKED -- TRIED TO WALK BACK FROM THE
02:01PM  18      404(B) CATEGORIZATION OF THIS IN THIS OPPOSITION AND IN MANY OF
02:01PM  19      ITS OPPOSITIONS.
02:01PM  20          I'LL JUST NOTE AT THE OUTSET, THE INDICTMENT DOES NOT
02:01PM  21      ALLEGE THAT THERE WAS ANY DECEIT UPON A GOVERNMENT AGENCY.
02:01PM  22      WE'VE GONE THROUGH BRIEFING IN THE MOTION TO DISMISS STAGE
02:01PM  23      ABOUT WHO THE VICTIMS ARE IN THIS CASE, THEY'RE NOT CDPH,
02:01PM  24      THEY'RE NOT FDA, THEY'RE NOT CMS.  SO THIS IS PROPERLY
02:01PM  25      CONSIDERED 404(B) EVIDENCE, AND THE GOVERNMENT SHOULD HAVE TO
```

02:01PM 1   MEET 404(B) STANDARDS.

02:02PM 2       SO I'LL BE ADDRESSING THE EVIDENCE THROUGH THAT FRAMEWORK,

02:02PM 3   AND I CAN TAKE QUESTIONS FROM YOUR HONOR IN A DIFFERENT

02:02PM 4   FRAMEWORK, TOO.

02:02PM 5       SO HERE ARE THE THREE BUCKETS OF EVIDENCE THAT WE'RE GOING

02:02PM 6   TO BE TALKING ABOUT TO TODAY:  THERE'S EVIDENCE RELATED TO A

02:02PM 7   DECEMBER 2013 INSPECTION OF THERANOS CLIA LABORATORY BY A

02:02PM 8   CALIFORNIA STATE AGENCY.  THAT'S KIND OF AN AGENT OF CMS;

02:02PM 9       THERE'S A LETTER PROVIDED BY MR. BALWANI TO CMS DURING

02:02PM 10  THE 2015 INSPECTION THAT WE'VE BEEN TALKING ABOUT; AND,

02:02PM 11      FINALLY, THERE'S FACTS SURROUNDING ONE OF THERANOS'S

02:02PM 12  LABORATORY DIRECTORS, DR. SUNIL DHAWAN.

02:02PM 13          THE COURT:  D-H-A-W-A-N.

02:02PM 14          MR. LOOBY:  THAT'S CORRECT, YOUR HONOR.

02:02PM 15      I'LL PROCEED IN THAT ORDER, BUT I CAN CERTAINLY ENTERTAIN

02:02PM 16  QUESTIONS OUT OF THAT ORDER IF THAT'S YOUR HONOR'S PREFERENCE.

02:02PM 17          THE COURT:  THAT'S FINE.

02:02PM 18          MR. LOOBY:  SO JUST A LITTLE BACKGROUND ON THE 2013

02:02PM 19  INSPECTION.  SO AS I SAID, THE CALIFORNIA DEPARTMENT OF PUBLIC

02:02PM 20  HEALTH LAB FIELD SERVICES DIVISION, THEY ARE CMS'S AGENTS FOR

02:03PM 21  KIND OF ROUTINE RECERTIFICATION SURVEYS OF CLIA LABS HERE IN

02:03PM 22  CALIFORNIA.  THESE GENERALLY OCCUR EVERY TWO YEARS.  THERANOS'S

02:03PM 23  TIME FOR A RENEWAL INSPECTION CAME UP IN 2013.  THE CDPH

02:03PM 24  INSPECTION FOLLOWS THE SAME CONTOURS AS THE CMS INSPECTION THAT

02:03PM 25  WE TALKED ABOUT EARLIER.

UNITED STATES COURT REPORTERS

02:03PM  1    THE KEY IS THAT THE INSPECTOR FOR CDPH, LIKE FOR CMS,

02:03PM  2  THEY'RE IN CHARGE OF WHAT DOCUMENTS THEY WANT TO LOOK AT, THEY

02:03PM  3  ARE IN CHARGE OF DETERMINING, YOU KNOW, HOW MUCH EVIDENCE THEY

02:03PM  4  WANT TO REVIEW TO GET COMFORTABLE THAT THE LAB IS EITHER

02:03PM  5  COMPLIANT OR TO GET COMFORTABLE THAT THEY HAVE ENOUGH

02:03PM  6  INFORMATION TO MAKE A DEFICIENCY CLAIM.

02:03PM  7    SO THE GOVERNMENT'S PROPOSED EVIDENCE HERE, IT RELIES ON

02:03PM  8  CONTORTING A FEW EMAILS OUT OF CONTEXT TO SUGGEST THAT

02:03PM  9  MS. HOLMES WAS INVOLVED IN STEERING THE INSPECTOR, CDPH

02:03PM  10  INSPECTOR, AWAY FROM AN AREA OF THE LAB WHERE THE THREE SERIES

02:04PM  11  TSPU WAS LOCATED.

02:04PM  12    SO AS AN INITIAL MATTER, THE GOVERNMENT HAS NOT

02:04PM  13  ESTABLISHED THAT LIKE NOT LEADING AN INSPECTOR TO A CERTAIN

02:04PM  14  AREA OF THE LAB DURING AN INSPECTION IS INHERENTLY DECEPTIVE.

02:04PM  15    AS WE DISCUSSED EARLIER, THAT'S NOT HOW LAB INSPECTIONS

02:04PM  16  WORK.  AND THE GOVERNMENT LARGELY IGNORES THAT POINT IN ITS

02:04PM  17  OPPOSITION, BUT I THINK IT'S IMPORTANT TO KEEP IN MIND.

02:04PM  18    THE SECOND PROBLEM WITH THE THEORY, I MEAN MAYBE THIS IS

02:04PM  19  THE FIRST PROBLEM WITH THE THEORY, BUT THAT IT'S CONTRADICTED

02:04PM  20  BY ALL AVAILABLE EVIDENCE AS WELL AS COMMON SENSE.

02:04PM  21    SO HERE'S WHAT WE KNOW ABOUT WHAT HAPPENED.  SO IN

02:04PM  22  PREPARING FOR THE INSPECTION THERANOS MADE SURE THAT IT HAD ITS

02:04PM  23  LDT DATA AND DOCUMENTS READY FOR INSPECTION.

02:04PM  24    AND WE KNOW THIS BECAUSE IT'S IN THE GOVERNMENT'S OWN

02:04PM  25  EXHIBIT 28, AND THAT'S AT ECF 680-14.  THAT IS AN EMAIL ABOUT

02:05PM 1      WHAT DO WE NEED TO GET OUR DUCKS IN A ROW SO THAT WE'RE READY

02:05PM 2      FOR INSPECTION BECAUSE THESE ARE SCHEDULED INSPECTIONS.

02:05PM 3          SO WE ALSO KNOW THAT THIS LDT DATA WAS IN FACT SHARED WITH

02:05PM 4      THE INSPECTOR UPON HER REQUEST.  THIS COMES FROM DEFENSE

02:05PM 5      EXHIBIT 77 AT ECF 772-3.  AND THESE ARE THERANOS'S EMPLOYEE,

02:05PM 6      DANIEL YOUNG'S, NOTES OF THE AUDIT.  AND THEY DISCUSS KIND OF

02:05PM 7      WHAT THEY WENT OVER WITH THE INSPECTOR, AND IT INCLUDES A

02:05PM 8      DISCLOSURE THAT TESTS ARE BEING RUN ON THE TSPU, THAT TESTS ARE

02:05PM 9      BEING RUN ON BLOOD SAMPLES COLLECTED BY THE CTN'S, THAT THESE

02:05PM 10     ARE BEING OFFERED AS LABORATORY DEVELOPED TESTS, AND THAT THEY

02:05PM 11     ARE BEING VALIDATED AS LABORATORY DEVELOPED TESTS AND UPON THE

02:05PM 12     INSPECTOR'S REQUEST, WHICH SHE RANDOMLY SELECTED AN LDT

02:05PM 13     VALIDATION REPORT, WHICH WAS PROVIDED TO HER.  SO THAT'S ALL IN

02:05PM 14     THAT EXHIBIT.

02:05PM 15         SO WE ALSO KNOW, AND THIS IS THE THIRD PIECE OF EVIDENCE,

02:06PM 16     WE KNOW THAT MONTHS PRIOR TO THIS INSPECTION, THERANOS HAD

02:06PM 17     ALREADY DISCLOSED TO CMS, WHICH SITS ON TOP OF THIS REGULATORY

02:06PM 18     SCHEME, THAT IT WAS USING THE TSPU IN ITS LAB TO TEST PATIENT

02:06PM 19     SAMPLES.

02:06PM 20         THIS COMES FROM DEFENSE EXHIBIT 78 AT ECF 722-4.  AND

02:06PM 21     THESE ARE MINUTES OF A NOVEMBER 4TH, 2013 MEETING OF WHICH

02:06PM 22     MEMBERS OF THE FDA AND THE CMS WERE PRESENT DURING WHICH

02:06PM 23     THERANOS'S CURRENT AND FUTURE BUSINESS MODELS WERE DISCUSSED.

02:06PM 24         SO THAT'S ALL OF THE EVIDENCE THAT REALLY SHOULD KIND OF

02:06PM 25     END THE MATTER HEAR.

02:06PM 1     BUT THERE'S A THIRD PROBLEM WITH THIS THEORY, AND THAT IS

02:06PM 2     THERE'S NO CONNECTION BETWEEN THIS EMAIL, THE DANIEL YOUNG

02:06PM 3     EMAIL, TO MADAM ROSENDORFF WHICH SAYS SOMETHING ALONG THE LINES

02:06PM 4     OF LET'S NOT REMIND HER ABOUT DOWNSTAIRS AT THIS POINT.

02:07PM 5     THERE'S NO CONNECTION BETWEEN THAT EMAIL AND MS. HOLMES.

02:07PM 6         SO THE GOVERNMENT CITES A FEW EMAILS FROM MS. HOLMES OR ON

02:07PM 7     WHICH SHE'S COPIED DISCUSSING THE PREPARATIONS FOR THE AUDIT

02:07PM 8     FOR THE PROPOSITION THAT SHE IS GENERALLY INFORMED THAT THE

02:07PM 9     AUDIT WAS HAPPENING AND INTERESTED THAT PEOPLE IN THE

02:07PM 10    LABORATORY WERE PREPARING FOR IT.

02:07PM 11        AND THEY ARGUE ESSENTIALLY, WELL, IT STANDS TO REASON THAT

02:07PM 12    SHE'S INVOLVED IN THE AUDIT PREPARATION, AND SO SHE MUST BE

02:07PM 13    BEHIND THIS INSTRUCTION FROM YOUNG TO ROSENDORFF.  THIS MUST BE

02:07PM 14    HIM COMMUNICATING A COMMAND FROM HER.

02:07PM 15        SO THAT'S -- TO THE DEFENSE'S KNOWLEDGE, YOUNG NOR

02:07PM 16    ROSENDORFF WILL TESTIFY TO THIS.  THEY CERTAINLY HAVEN'T SAID

02:07PM 17    SO IN THEIR PRIOR STATEMENTS.

02:07PM 18        SO WHERE DOES THAT LEAVE US?  IT LEAVES US IN A LAND OF

02:07PM 19    SPECULATION.  WE'RE SPECULATING ABOUT AMBIGUOUS EMAILS ABOUT

02:07PM 20    THE PATH THE REGULATOR WILL TAKE, WE'RE SPECULATING THAT THAT

02:07PM 21    MS. HOLMES WAS SOMEHOW INVOLVED, WE'RE SPECULATING THAT THIS

02:08PM 22    WAS MOTIVATED BY A DESIRE TO HIDE THINGS THAT WERE ACTUALLY

02:08PM 23    BEING DISCLOSED.

02:08PM 24        SO THE COURT SHOULD NIP THIS EXERCISE AND SPECULATION IN

02:08PM 25    THE BUD, AND THAT'S THE THRUST OF OUR ARGUMENT THERE.  AS WE

136

02:08PM 1    POINTED OUT IN OUR REPLY BRIEF, THERE COMES A POINT WHERE YOU

02:08PM 2    STACK SO MANY CONNECTIONS ON TOP OF EACH OTHER THAT THE BONDS

02:08PM 3    BREAK, AND THE EVIDENCE IS NO LONGER REALLY RELEVANT AT THAT

02:08PM 4    POINT.  AND IT CAN'T BE THE ANSWER THAT IN ALL OF THESE

02:08PM 5    INSTANCES, OH, IT'S FOR THE JURY.  IT'S REALLY THE GOVERNMENT

02:08PM 6    DISCLOSED THIS UNDER RULE 404(B).  WHEN THEY DO THAT, THEY HAVE

02:08PM 7    TO CONNECT IT TO THE DEFENDANT, THEY HAVE TO MAKE SURE IT

02:08PM 8    CONNECTS TO A MATERIAL FACT IN THE CASE, AND THEY HAVE TO

02:08PM 9    OVERCOME AN EVEN MORE HEIGHTENED 403 BALANCING TEST THAT

02:08PM 10   APPLIES IN THE 404(B) CONTEXT, AND WE SUBMIT THAT THEY HAVE NOT

02:08PM 11   COME CLOSE TO THAT FACT.

02:09PM 12       SO UNLESS YOUR HONOR HAS QUESTIONS, I'LL MOVE ON TO THE

02:09PM 13   NEXT PIECE OF EVIDENCE.  SO THIS IS THE 2015 LETTER.  THIS IS

02:09PM 14   KIND OF ANOTHER PECULIAR CASE AND ACCORDING TO THE GOVERNMENT

02:09PM 15   IT WAS HAND DELIVERED TO CMS DURING THE 2015 INSPECTION BY

02:09PM 16   MR. BALWANI.

02:09PM 17       THE GOVERNMENT -- THE LETTER ITSELF IS AT GOVERNMENT

02:09PM 18   EXHIBIT 6 TO THEIR OPPOSITION, AND THAT'S AT ECF 679-6.  WE

02:09PM 19   MOVE TO EXCLUDE IT BECAUSE AS DISCLOSED IT'S ENTIRELY UNRELATED

02:09PM 20   TO MS. HOLMES.  IT'S NOT SIGNED.

02:09PM 21       AGAIN, THIS IS RULE 404(B) EVIDENCE, AND ONE OF THE

02:09PM 22   REQUIREMENTS IS THAT THEY CONNECT IT, IN THE NINTH CIRCUIT IS

02:09PM 23   THAT THEY CONNECT IT TO MS. HOLMES.  IT SEEMS LIKE A REASONABLE

02:09PM 24   THING THAT THEY ASK THE GOVERNMENT TO DO.

02:09PM 25       BUT IN RESPONSE THEY DO THE SAME THING THAT THEY DO WITH

02:09PM 1    THE 2013 EMAIL FROM DANIEL YOUNG, WHICH IS THAT THEY POINT TO

02:09PM 2    OTHER UNRELATED INSTANCES WHERE MS. HOLMES IS INVOLVED OR AWARE

02:10PM 3    OF THE CMS INTERACTIONS WITH THE COMPANY AND EVEN STRANGELY

02:10PM 4    WITH FDA FACTS, TOO.

02:10PM 5        AND THEY SAY, WELL, OKAY, IT STANDS TO REASON THAT SHE WAS

02:10PM 6    BEHIND THIS LETTER OR ADOPTED IT AND ANY ALLEGED

02:10PM 7    MISREPRESENTATION IN IT.  THAT SPECULATIVE LINK, WE SUBMIT, IS

02:10PM 8    INSUFFICIENT TO JUSTIFY ADMISSION AT LEAST ON THE BASIS THAT

02:10PM 9    IT'S BEEN PROFFERED SO FAR.  WE THINK THE GOVERNMENT HAS NOT

02:10PM 10   MET ITS BURDEN.

02:10PM 11       FINALLY, ONE LAST POINT ON THIS LETTER IS THAT THE

02:10PM 12   GOVERNMENT'S PROPOSED USE OF THIS AS 404(B) EVIDENCE, IT

02:10PM 13   DOESN'T MAKE A WHOLE LOT OF SENSE TO ME, AND IT SUGGESTS THAT

02:10PM 14   IT'S NOT BEING USED TO PROVE A MATERIAL FACT, WHICH IS ONE OF

02:10PM 15   THE FACTORS IN THE 404(B) ANALYSIS BECAUSE ON THE ONE HAND THE

02:10PM 16   GOVERNMENT WANTS TO USE PART IT, OR PART OF THE LETTER THAT

02:10PM 17   LISTS THE DATES THAT TESTS WERE RUN ON THE TSPU IN THE CLINICAL

02:10PM 18   LAB.  THEY'RE OFFERING IT AS A TRUTHFUL STATEMENT TO THE AGENCY

02:10PM 19   ACCORDING TO THEIR OPPOSITION.

02:10PM 20       BUT ON THE OTHER HAND, IT POINTS TO A STATEMENT THAT TESTS

02:11PM 21   ARE CYCLED OFF THE TSPU OVER TIME FOR BUSINESS REASONS.  IT

02:11PM 22   CALLS IT SELF-SERVING AND MISLEADING.

02:11PM 23       IT'S NOT REALLY CLEAR TO ME HOW THIS KIND OF THROWAWAY

02:11PM 24   LINE IN A LETTER WOULD DECEIVE AN AGENCY THAT AT THAT VERY

02:11PM 25   MOMENT WAS INSPECTING THERANOS AND KIND OF HAD FREE REIN TO

138

02:11PM 1    INSPECT WHAT IT WANTED TO LOOK AT INCLUDING ANY QC DATA OR ANY

02:11PM 2    LAB DOCUMENTATION RELATED TO THE LDT'S.

02:11PM 3        SO FOR ALL OF THESE REASONS THE EVIDENCE IS MORE LIKELY TO

02:11PM 4    DISTRACT AND CONFUSE RATHER THAN TO ENLIGHTEN, AND IT SHOULD BE

02:11PM 5    EXCLUDED.

02:11PM 6        AND FINALLY WE GET TO DR. SUNIL DHAWAN.  SO IN LATE 2013

02:11PM 7    THERANOS HIRED DR. SUNIL DHAWAN AS THE LABORATORY DIRECTOR.  AT

02:11PM 8    THE SAME TIME THEY ALSO HIRED ANOTHER CO-LAB DIRECTOR, AND THIS

02:11PM 9    IS A WOMAN BY THE NAME OF DR. LYNETTE SAWYER.  NOW BOTH WERE

02:11PM 10   QUALIFIED TO SERVE AS CLIA LAB DIRECTORS IN THE STATE OF

02:12PM 11   CALIFORNIA, AND THAT'S NOT CONTESTED.

02:12PM 12       NEITHER OF THEM SERVED AS FULL-TIME LAB DIRECTORS AS IN

02:12PM 13   THEY WEREN'T PRESENT ON THERANOS'S CAMPUS FULL TIME.

02:12PM 14       THAT'S ENTIRELY APPROPRIATE UNDER THE CLIA REGULATIONS,

02:12PM 15   AND IT'S ACTUALLY NOT OUT OF THE ORDINARY IN THE LAB INDUSTRY

02:12PM 16   AS I UNDERSTAND IT.

02:12PM 17       NOW, SOME LABS THEY MIGHT HAVE A LAB DIRECTOR WHO IS ON

02:12PM 18   THE GROUND AND WORKS ON A NORMAL 40-HOUR WORKWEEK IN THE LAB.

02:12PM 19       BUT THE CLIA REGULATIONS, THEY TREAT THE LAB DIRECTOR AS

02:12PM 20   KIND OF THE LEGAL FIGUREHEAD OR REPOSITORY OF WHERE ALL OF THE

02:12PM 21   OBLIGATIONS LAND.  LIKE THE BUCK STOPS WITH HIM.

02:12PM 22       BUT A LOT OF THE DAY-TO-DAY OPERATIONS ARE PERMISSIBLY

02:12PM 23   DELEGATED TO THE STAFF THAT SITS UNDERNEATH THE LAB DIRECTOR.

02:12PM 24       SO THE GOVERNMENT DOESN'T CONTEST THESE FACTS, EITHER.

02:12PM 25       THE GOVERNMENT NONETHELESS, THEY WANT TO ASK THE JURY TO

UNITED STATES COURT REPORTERS

02:12PM 1    DRAW A SERIES OF INFERENCES FROM HIS RENTENTION AND FACTS ABOUT

02:12PM 2    HIM THAT REQUIRES THEM TO IGNORE THESE FACTS.

02:13PM 3        SO THE INFERENCE IN PARTICULAR THAT THEY WANT TO DRAW IS

02:13PM 4    THE FACT OF HIS RETENTION SHOWS THAT MS. HOLMES WAS INDIFFERENT

02:13PM 5    TO LAB QUALITY ALTOGETHER.

02:13PM 6        I JUST DON'T SEE HOW THE GOVERNMENT CAN USE THE EVIDENCE

02:13PM 7    IN THAT WAY WITHOUT IMPLYING THAT THOSE TWO UNCONTESTED FACTS,

02:13PM 8    THAT HE WAS QUALIFIED AND THAT THERE WAS NOTHING NECESSARILY

02:13PM 9    IMPROPER ABOUT HIS PART-TIME STATUS, LIKE WITHOUT HAVING THE

02:13PM 10   JURY KIND OF IGNORE THOSE.

02:13PM 11       SO REALLY THIS IS AN IMPROPER USE OF THIS EVIDENCE UNDER

02:13PM 12   RULE 404(B) OR OTHERWISE REALLY AND THE COURT SHOULD PRECLUDE

02:13PM 13   IT.

02:13PM 14           THE COURT:  ALL RIGHT.  THANK YOU.

02:13PM 15       MR. LEACH, IS THIS YOUR DAY ALSO?

02:13PM 16           MR. LEACH:  IT IS MY DAY, YOUR HONOR.  YES.

02:13PM 17           THE COURT:  SO I LOOKED AT THIS INITIALLY,

02:13PM 18   MR. LEACH, AND I WAS CURIOUS WHAT IS THE 404(B) USE HERE?  WHAT

02:13PM 19   IS THE 404(B) ANALYSIS THAT THE GOVERNMENT IS SEEKING?  AND I'M

02:14PM 20   SURE YOU'LL TELL ME ABOUT THAT.

02:14PM 21           MR. LEACH:  YES.  INTENT, PLAN, KNOWLEDGE, STATE OF

02:14PM 22   MIND, AND TO SOME EXTENT MOTIVE, YOUR HONOR.  I'LL GO IN

02:14PM 23   REVERSE ORDER BECAUSE IT'S FRESHEST IN MY MIND AND PERHAPS THE

02:14PM 24   COURT'S.

02:14PM 25           NOVEMBER OF 2014 THERANOS WAS IN CRISIS.  THEIR LAB

02:14PM 1    DIRECTOR WOULD NO LONGER PUT HIS NAME ON THE RESULTS BEING

02:14PM 2    GENERATED BY THE CLIA LAB.  HE RESIGNED BASICALLY OUT OF

02:14PM 3    CONCERNS THAT THERANOS WAS TURNING A BLIND EYE TO ALL OF THE

02:14PM 4    PROBLEMS IN ITS LAB.

02:14PM 5         THE COURT:  IS THIS DR. ROSENDORFF?

02:14PM 6         MR. LEACH:  THIS IS DR. ROSENDORFF.

02:14PM 7    WHAT DID THERANOS DO ABOUT IT?  THEY APPROACHED

02:14PM 8    MR. BALWANI'S DERMATOLOGIST, WHO HAS NO EXPERIENCE IN A HIGH

02:14PM 9    COMPLEXITY LAB OTHER THAN HIS DERMATOLOGY PRACTICE, AND SAY YOU

02:14PM 10   WON'T HAVE TO DO ANY WORK, THIS WON'T DISTRACT FROM YOUR

02:15PM 11   PRACTICE, PLEASE COME BE OUR LAB DIRECTOR IN SUBSTANCE.  THIS

02:15PM 12   DRAGS ON FOR ABOUT SIX MONTHS, WHICH SHOWS THAT THESE TWO

02:15PM 13   DEFENDANTS ARE NOT TERRIBLY CONCERNED ABOUT FIXING THE BAD

02:15PM 14   RESULTS COMING OUT OF THEIR LAB.

02:15PM 15   AND THEY HAGGLE WITH DR. DHAWAN OVER WHAT HE'S GOING TO BE

02:15PM 16   PAID.  AND THEY ESSENTIALLY ASSURE HIM YOU'LL GET PAID, BUT YOU

02:15PM 17   WON'T HAVE TO DO ANY WORK, IT WON'T DISTRACT FROM YOUR

02:15PM 18   PRACTICE, AND IT'S ALL VERY MINIMAL.

02:15PM 19   AND THE VERY FIRST DAY THAT DR. DHAWAN STEPS INTO THE LAB

02:15PM 20   IS THE DAY THAT THE CMS INSPECTORS SHOW UP FOR THEIR

02:15PM 21   INSPECTION.

02:15PM 22   WE THINK THIS CHRONOLOGY OF HOW DR. DHAWAN WAS HIRED, WHAT

02:15PM 23   HE WAS TOLD, THE URGENCY WITH WHICH THEY'RE TRYING TO ADDRESS

02:15PM 24   THESE VERY ISSUES THAT DR. ROSENDORFF RAISED IN THE LAB ARE

02:15PM 25   RELEVANT TO THEIR INTENT UNDER 403, 404(B) OR ANY OTHER

UNITED STATES COURT REPORTERS

141

02:16PM 1    RELEVANCE STANDARD.

02:16PM 2        THE REASON THAT FLOWS IS THAT YOU CAN HIRE SOMEBODY WHO IS

02:16PM 3    QUALIFIED, BUT SOMEBODY WHO IS NOT THE SUPERSTAR YOU WANT TO

02:16PM 4    FIX YOUR LAB.  AND YOU SEE THAT BY COMPARISON OF WHO THE

02:16PM 5    DEFENDANTS HIRE TO SUE EMPLOYEES WHO THEY THINK ARE BREACHING

02:16PM 6    THEIR AGREEMENTS TO DEAL WITH "THE WALL STREET JOURNAL."  THEY

02:16PM 7    HIRED DAVID BOIES TO TRY TO INTIMIDATE "THE WALL STREET

02:16PM 8    JOURNAL" TO BACK OFF FROM PUBLISHING THEIR ARTICLE.

02:16PM 9        THEY HIRED MR. BALWANI'S DERMATOLOGIST TO MAKE SURE THAT

02:16PM 10   THEIR HCG TESTS WERE CORRECT AND TOLD HIM THAT YOU DON'T EVEN

02:16PM 11   NEED TO COME INTO THE LAB, WE'LL PAY YOU ANYWAYS.  ALL THAT IS

02:16PM 12   RELEVANT TO HOW SERIOUSLY THESE DEFENDANTS TOOK THEIR

02:16PM 13   STATEMENTS ABOUT ACCURATE RELIABLE TESTS COMING OUT OF THE LAB.

02:16PM 14       THE COURT:  I'M SORRY.  WILL THERE BE EVIDENCE THAT

02:16PM 15   THAT'S WHAT HE WAS TOLD, THE DOCTOR WAS TOLD?

02:16PM 16       MR. LEACH:  YES.  THERE'S AN EMAIL FROM

02:16PM 17   SUNNY BALWANI TO DR. DHAWAN SAYING YOU WON'T HAVE TO DO MUCH

02:17PM 18   WORK, AND HE'S PAID ALL OF THE WAY THROUGH JUNE.

02:17PM 19       THE PAPERWORK FOR HIM BECOMING THE LAB DIRECTOR ISN'T

02:17PM 20   SUBMITTED UNTIL JUNE.  SO THERE WILL BE EVIDENCE ALONG THOSE

02:17PM 21   LINES.

02:17PM 22       WITH RESPECT TO THE 2015 CMS INSPECTION, THE DOCUMENT

02:17PM 23   WE'RE TALKING ABOUT IS HIGHLY RELEVANT.  IT'S AN ADMISSION --

02:17PM 24   FIRST OF ALL, THE TESTIMONY WILL BE FROM SARAH BENNETT THAT

02:17PM 25   MR. BALWANI HANDED HER -- HANDED MS. BENNETT THE DOCUMENTS

UNITED STATES COURT REPORTERS

02:17PM 1    DURING THE CMS INSPECTION.  AND THE DOCUMENT IS ESSENTIALLY AN

02:17PM 2    ADMISSION ABOUT WHAT TEST THERANOS WAS USING THE EDISON FOR

02:17PM 3    DURING WHAT PERIODS OF TIME.  THAT PART THE GOVERNMENT WILL BE

02:17PM 4    OFFERING FOR ITS TRUTH.  IT'S A STATEMENT BY AN AGENT OF

02:18PM 5    MS. HOLMES.  IT'S HER CEO, SOMEBODY SHE WORKS WITH CLOSELY.

02:18PM 6         AND THE THRUST OF THE GOVERNMENT'S EVIDENCE IN THE

02:18PM 7    OPPOSITION IS GIVEN THE ANXIETY GOING ON OVER THE CMS

02:18PM 8    INSPECTION, GIVEN THAT MS. HOLMES WAS PRAYING DURING THE EXAM

02:18PM 9    OR DURING THE INSPECTION FOR IT TO GO WELL, THAT THE FAIR

02:18PM 10   INFERENCE IS THAT SHE'S IN COMMUNICATION WITH MR. BALWANI ABOUT

02:18PM 11   WHAT IS BEING TOLD TO CMS.  I THINK THESE ARE FAIRLY STATEMENTS

02:18PM 12   OF AN AGENT.  AND WE DON'T NEED TO PROVE 404(B) EVIDENCE BEYOND

02:18PM 13   A REASONABLE DOUBT.  IT'S SIMPLY SUFFICIENT EVIDENCE FOR A

02:18PM 14   FINDING, AND I THINK THAT'S THERE.

02:18PM 15        THE OTHER PORTION OF THIS LETTER IS A STATEMENT TO CMS TO

02:18PM 16   THE EFFECT OF WE DIDN'T STOP DOING THE TESTING BECAUSE OF

02:18PM 17   ACCURACY AND RELIABILITY CONCERNS.  WE MADE A BUSINESS DECISION

02:18PM 18   TO RETIRE THESE DOCUMENTS -- OR THESE DEVICES.

02:18PM 19        WE THINK THAT'S FALSE.  WE THINK THAT'S SAID TO THE CMS

02:18PM 20   INSPECTORS IN ORDER TO ALLAY THEIR CONCERNS, TO MINIMIZE THEIR

02:19PM 21   INSPECTION, TO ESSENTIALLY DETER THEM FROM REALLY OPENING UP

02:19PM 22   THE HOOD.

02:19PM 23        THIS IS UNDOUBTEDLY A STATEMENT BY MR. BALWANI WHO IS THE

02:19PM 24   DEFENDANT'S COCONSPIRATOR.  THIS IS CLEARLY A STATEMENT IN

02:19PM 25   FURTHERANCE OF THE CONSPIRACY TO AVOID DETECTION BY REGULATORY

02:19PM 1  AUTHORITIES.

02:19PM 2      SO UNDER 404(B) AND 403, I THINK THIS IS CLEARLY RELEVANT

02:19PM 3  TO THE EXISTENCE OF AN AGREEMENT, THE STATE OF MIND OF THE

02:19PM 4  DEFENDANT.  IT'S BOTH A TRUE STATEMENT ABOUT WE'LL OFFER IT FOR

02:19PM 5  THE TRUTH OF WHAT TESTS THERANOS WAS ACTUALLY DOING IT, BUT WE

02:19PM 6  WILL ALSO SAY THAT THIS STATEMENT ABOUT WE JUST MADE A BUSINESS

02:19PM 7  DECISION IS A WAY TO DETER CMS FROM ACTUALLY LOOKING UNDER THE

02:19PM 8  HOOD.

02:19PM 9      THE THIRD CATEGORY THAT MY FRIEND TALKED ABOUT IS THE 2013

02:20PM 10  CALIFORNIA STATE INSPECTION.  THIS IS ALSO RELEVANT UNDER 401

02:20PM 11  AND 402.  IT'S NOT 403.  TO THE EXTENT IT'S 404(B), IT MEETS

02:20PM 12  ALL OF THE STANDARDS.  IT'S OFFERED FOR THE DEFENDANT'S INTENT,

02:20PM 13  STATE OF MIND, PLAN, AND MOTIVE.

02:20PM 14      I THINK ONE OF THE EMAILS IS FROM DR. YOUNG TO

02:20PM 15  DR. ROSENDORFF ESSENTIALLY SAYING LET'S NOT REMIND THE

02:20PM 16  INSPECTOR OF THE DOWNSTAIRS LAB.  THE DOWNSTAIRS LAB IS WHERE

02:20PM 17  THEY HAD SOME SIEMENS MACHINES, SOME THIRD PARTY MACHINES, BUT

02:20PM 18  ALSO THE EDISON MACHINES THAT THEY WERE THEN USING IN THEIR

02:20PM 19  CLIA LAB.

02:20PM 20      WE THINK THE FAIR INFERENCE FROM THIS EMAIL, WHICH WE

02:20PM 21  CONNECT THROUGH DR. YOUNG AS A DIRECTION FROM MR. BALWANI, THE

02:20PM 22  COCONSPIRATOR, IS REFLECTED OF THE DESIRE ON THERANOS'S PART TO

02:21PM 23  NOT SHOW THE REGULATORS THE SECRET SAUCE.  IT'S REFLECTIVE OF

02:21PM 24  THEIR INTENT, STATE OF MIND.

02:21PM 25      A WITNESS, ELENITOBA JOHNSON, I ANTICIPATE WILL SAY SHE

02:21PM 1    TOOK ONE OF MS. HOLMES'S EMAILS AS A DIRECTION NOT TO SHOW THE

02:21PM 2    INSPECTORS THE DOWNSTAIRS LAB.

02:21PM 3         AND THE FACT THAT THEY MAY HAVE DISCLOSED SOME INFORMATION

02:21PM 4    TO CMS IN D.C. AT SOME POINT IN TIME OR THAT DR. YOUNG'S FIELD

02:21PM 5    NOTES SHOW THAT DESPITE THE DEFENDANT'S CONCERN ABOUT SECRECY

02:21PM 6    AND THE CONCERN ABOUT SHOWING THIS, THEY DISCLOSED SOME

02:21PM 7    INFORMATION ANYWAY, DOESN'T REALLY CUT AGAINST THE CORE ISSUE

02:21PM 8    WHICH WAS WHAT WAS HER STATE OF MIND WHEN SHE TOLD HER

02:21PM 9    EMPLOYEES DON'T TAKE THE INSPECTORS DOWN THERE?

02:21PM 10        AND IF SHE WERE PROUD OF HER TECHNOLOGY, IF SHE WAS

02:21PM 11   CONFIDENT IN IT, SHE WANTED TO SHOW EVERYBODY THE GREAT

02:21PM 12   INVENTION THAT SHE HAD MADE, SHE WOULD HAVE SAID SOMETHING

02:22PM 13   DIFFERENTLY, THE GOVERNMENT SUBMITS.

02:22PM 14        WE THINK THIS IS REFLECTIVE OF AN INTENT TO CONCEAL, AN

02:22PM 15   INTENT TO HIDE, AND WE DON'T NEED TO PROVE 404(B) EVIDENCE

02:22PM 16   BEYOND A REASONABLE DOUBT.  WE NEED TO HAVE SUFFICIENT EVIDENCE

02:22PM 17   TO SUPPORT THE JURY'S FINDING.  THAT'S IN THE CASE LAW WE LAY

02:22PM 18   OUT IN THE BRIEF.

02:22PM 19        AND I THINK THE COMBINATION OF THE EMAILS, DR. YOUNG

02:22PM 20   SAYING THAT MY DIRECTION TO ROSENDORFF CAME FROM BALWANI, AND

02:22PM 21   EMAILS FROM MS. HOLMES CONSISTENT WITH THAT, AND MS. JOHNSON'S

02:22PM 22   STATEMENT ARE MORE THAN SUFFICIENT TO GET THIS IN.

02:22PM 23        THE OTHER THING THAT WE DIDN'T TALK ABOUT IS THERE ARE

02:22PM 24   FINDINGS FROM THE INSPECTION IN 2013 GOING TO THE EXTENT OF

02:22PM 25   THERANOS'S QUALITY ASSESSMENT PROGRAM.  THOSE ARE OFFERED TO

02:22PM 1    SHOW NOTICE TO THE DEFENDANT.  SOME OF THE ISSUES THAT COME UP

02:22PM 2    IN THIS 2013 INSPECTION ALSO ARISE IN 2015.  SO THAT DOCUMENT

02:23PM 3    IS ADMISSIBLE FOR THE NONHEARSAY PURPOSE OF NOTICE TO THE

02:23PM 4    DEFENDANT.

02:23PM 5            THE COURT:  ALL RIGHT.

02:23PM 6            MR. LEACH:  IF THE COURT HAS NO FURTHER QUESTIONS,

02:23PM 7    I'LL SUBMIT IT.

02:23PM 8            THE COURT:  NO.  THANK YOU.

02:23PM 9            MR. LOOBY:  SO I THINK I ALSO WILL START WITH THE

02:23PM 10    LAST TOPIC, AND WE'LL WORK OUR WAY BACKWARDS.

02:23PM 11       SO, YOUR HONOR, THE GOVERNMENT STILL -- WHAT I DIDN'T HEAR

02:23PM 12    THERE IS ANY CONNECTION BETWEEN THE EVIDENCE THAT THEY HAVE

02:23PM 13    PROFFERED TO USE, THE EMAIL FROM YOUNG TO MS. HOLMES, SAYING

02:23PM 14    THAT THIS IS A COMMAND FROM MS. HOLMES.  THEY'RE STILL RELYING

02:23PM 15    ON IT BEING FAIR TO INFER THAT IT CAME FROM HER OR THAT IT

02:23PM 16    SOMEHOW WAS AUTHORIZED FROM HER, BUT AT THIS JUNCTURE THAT'S

02:23PM 17    JUST NOT SUFFICIENT TO SUPPORT AN ADMISSION OF RULE 404(B).

02:24PM 18       I THINK ANOTHER FACT THAT BEARS UPON WHY THESE AMBIGUOUS

02:24PM 19    EMAILS ARE A LITTLE BIT DANGEROUS IS THAT THE DOWNSTAIRS

02:24PM 20    LABORATORY, AND MY UNDERSTANDING OF IT, BOTH HAD AN R&D

02:24PM 21    COMPONENT AND A CLINICAL LABORATORY SEGMENT OF IT.

02:24PM 22       SO, I MEAN, THERE'S JUST A COMPLETELY INNOCUOUS REASON FOR

02:24PM 23    NOT BRINGING AN INSPECTOR THROUGH A PART OF THE LAB THAT, LIKE,

02:24PM 24    IS MORE COMPLICATED TO ACCESS UNLESS SHE ASKS TO SEE IT.

02:24PM 25       SO I'M NOT SAYING THAT THAT COMMAND CAME FROM MS. HOLMES.

02:24PM 1    THEY HAVE NOT PROFFERED EVIDENCE OF THAT.

02:24PM 2         MR. LEACH WAS TALKING ABOUT A STATEMENT FROM

02:24PM 3    ELENITOBA JOHNSON.  TO MY KNOWLEDGE THAT'S NOT CONTAINED IN HER

02:24PM 4    GOVERNMENT INTERVIEW SO I'M CURIOUS AS TO WHAT THE PROVIDENCE

02:24PM 5    OF THAT IS.

02:25PM 6         BUT ULTIMATELY WE ARE LEFT IN SPECULATION LAND STILL.  WE

02:25PM 7    HAVE NOT MOVED OFF OF IT.  WE'RE JUST GOING TO BE ASKING THE

02:25PM 8    JURY TO READ MULTIPLE INFERENCES INTO AMBIGUOUS EMAILS THAT

02:25PM 9    JUST WON'T BEAR IT.  AND THE GOVERNMENT CITES CASES -- A GOOD

02:25PM 10   CASE FROM THE EIGHTH CIRCUIT IN OUR REPLY, YOU KNOW, ABOUT

02:25PM 11   EXCLUDING KIND OF EVIDENCE THAT IS SO AMBIGUOUS THAT IT CAN BE

02:25PM 12   READ ANY WHICH NUMBER OF WAYS.

02:25PM 13        AT THAT POINT IT'S JUST NOT PROBATIVE OF ANYTHING ANYMORE,

02:25PM 14   AND WE SUBMIT THAT THAT'S WHAT THIS IS.

02:25PM 15        AND MR. LEACH IS CORRECT THAT I NEGLECTED TO ADDRESS THAT

02:25PM 16   WE ALSO MOVED TO EXCLUDE THE 2013 CDPH INSPECTION REPORT.  IT'S

02:25PM 17   HEARSAY, AND SO ALL OF THE HEARSAY ARGUMENTS THAT WE'VE ALL

02:25PM 18   BEEN DISCUSSING ALL DAY, THEY APPLY EXACTLY THE SAME WAY.

02:25PM 19        HERE, THIS NONHEARSAY PURPOSE, WHEN MR. LEACH SAYS THAT

02:25PM 20   THE EXACT SAME ISSUES SHOW UP LATER ON, I JUST DON'T KNOW IF

02:26PM 21   THAT'S BORNE OUT BY THE EVIDENCE.  I MEAN, THE CITATIONS IN THE

02:26PM 22   2013 CDP INSTRUCTION, AND IT'S ATTACHED TO THE MOTION, I MEAN,

02:26PM 23   THEY DO RELATE TO PROFICIENCY TESTING GENERALLY, BUT I THINK IT

02:26PM 24   WOULD BE HARD TO SAY THAT THEY ARE NOTICE OF KIND OF THE SAME

02:26PM 25   ISSUES.  I JUST DON'T THINK THAT THE GOVERNMENT REALLY HAS

02:26PM 1    SUBSTANTIATED THAT AT THIS POINT.

02:26PM 2        IF ANYTHING, IF THE RAPID RECERTIFICATION OF THE

02:26PM 3    LABORATORY AFTER THE 2013 INSPECTION, WHICH HAPPENED WITHIN A

02:26PM 4    FEW MONTHS, IT'S NOTICED IN THE OPPOSITE DIRECTION.  IT'S

02:26PM 5    NOTICED THAT A CDPH CAME IN, THEY SPOTTED SOME ISSUES, THESE

02:26PM 6    ARE THE THINGS THAT WE NEED TO DO TO IMPROVE, WE GOT THE GREEN

02:26PM 7    LIGHT, AND WE'RE GOING FORWARD.

02:26PM 8        SO, TO ME, IT'S ANOTHER PIECE OF AMBIGUOUS EVIDENCE THAT

02:26PM 9    IS BOTH HEARSAY AND NOT PROBATIVE OF ANYTHING AT ALL.

02:27PM 10       SO WALKING BACKWARDS IN TIME TO THE CMS OR TO THE LETTER,

02:27PM 11   AGAIN, A LOT OF MR. LEACH'S PRESENTATION KIND OF RELATED TO

02:27PM 12   OTHER EVIDENCE LIKE TEXT MESSAGES ABOUT PRAYING THAT AN

02:27PM 13   INSPECTION WOULD GO WELL.

02:27PM 14       WHAT I DIDN'T HEAR WAS REALLY ANY CONNECTION AGAIN TO

02:27PM 15   MS. HOLMES.  IT WAS JUST SORT OF, WELL, SHE'S AROUND, SHE'S

02:27PM 16   AWARE THAT THERE'S AN INSPECTION, AND SO THIS STATEMENT MUST BE

02:27PM 17   ATTRIBUTABLE TO HER.

02:27PM 18       BUT OF COURSE SHE'S AWARE THAT THERE'S BEEN AN INSPECTION.

02:27PM 19   THAT'S NOT THE SAME QUESTION AS TO WHETHER OR NOT THE

02:27PM 20   GOVERNMENT HAS PROFFERED SUFFICIENT EVIDENCE TO MAKE A FINDING,

02:27PM 21   A THRESHOLD FINDING FOR ADMISSIBILITY UNDER RULE 404(B) FOR

02:27PM 22   THIS TYPE OF EVIDENCE.

02:27PM 23       AND THEN FINALLY, REGARDING MR. DHAWAN.  AGAIN, SOME OF

02:28PM 24   THE EMAILS RELATING TO THE RETENTION OF MR. DHAWAN ARE ATTACHED

02:28PM 25   TO THE GOVERNMENT'S OPPOSITION.  I WILL SAY THAT I'VE SPENT

148

02:28PM 1    TIME WITH THE DOCUMENTS, AND I DON'T READ THEM AS SAYING YOU

02:28PM 2    WILL HAVE TO DO NO WORK.  THERE'S AN ESTIMATE FOR LIKE HOW MANY

02:28PM 3    HOURS THAT HE WOULD HAVE TO DEVOTE TO HIS RESPONSIBILITIES AT

02:28PM 4    THERANOS.  AND HE ALSO WAS MAINTAINING A FULL-TIME PRACTICE IN

02:28PM 5    HIS OWN CLIA HIGH COMPLEXITY REGULATED LAB.  SO I DON'T THINK

02:28PM 6    THAT THAT'S, LIKE, ANYTHING NEFARIOUS ABOUT THAT.

02:28PM 7         I THINK TO TAKE A STEP BACK, THE KIND OF COMPARISON THAT

02:28PM 8    MR. LEACH USES BETWEEN HE'S NOT THE SUPERSTAR, HE'S NOT

02:28PM 9    DAVID BOIES.  I THINK WE'RE IN A UNIQUE POSITION HERE WHERE WE

02:28PM 10   CAN SEE THE KIND OF GROSSLY UNFAIRLY PREJUDICIAL LINK THAT THE

02:28PM 11   GOVERNMENT IS TRYING TO MAKE HERE BECAUSE THEY'RE JUST REALLY

02:28PM 12   LEADING WITH IT.

02:28PM 13        I JUST DON'T THINK THAT THAT EVIDENCE IS FAIRLY AT PLAY

02:28PM 14   HERE.  I DON'T THINK THAT THAT ARGUMENT FOLLOWS FROM THE

02:29PM 15   RETENTION OF A PART-TIME LAB DIRECTOR WHO HAPPENS TO BE A

02:29PM 16   DERMATOLOGIST.

02:29PM 17        AND AGAIN, I DON'T THINK --

02:29PM 18          THE COURT:  WELL, I GUESS THE INTERESTING PART IS

02:29PM 19   THAT IT'S MR. BALWANI'S DERMATOLOGIST, BUT THERE'S NOTHING

02:29PM 20   UNTOWARD ABOUT THAT YOU SUGGEST.

02:29PM 21          MR. LOOBY:  RIGHT.  THERE IS NOTHING UNTOWARD ABOUT

02:29PM 22   THAT.

02:29PM 23        THEIR LAB DIRECTOR, ADAM ROSENDORFF, LEFT.  UNDER THE CLIA

02:29PM 24   REGULATIONS YOU NEED TO GET SOMEBODY IN LINE RIGHT AWAY.

02:29PM 25        THEY FIRST INQUIRED WITH DR. DHAWAN WHETHER OR NOT HE KNEW

02:29PM 1    ANYONE.  AND THEN WHEN THEY LEARNED -- IT'S MOSTLY MR. BALWANI

02:29PM 2    IS DOING ALL OF THIS COMMUNICATION WITH DR. DHAWAN.  IT TURNS

02:29PM 3    OUT THAT HE'S QUALIFIED.  SO THEY SIGN HIM UP FOR A PART-TIME

02:29PM 4    POSITION AND A TEMPORARY POSITION.

02:29PM 5        THE IDEA IS NOT, OKAY, YOU'RE GOING TO BE OUR FULL-TIME

02:29PM 6    LAB DIRECTOR GOING FORWARD.  IT'S MORE OF A STOPGAP.  YOU KNOW

02:29PM 7    WHAT ELSE THEY DO?  THEY HIRE LYNETTE SAWYER AT THE SAME TIME.

02:29PM 8        SO WHILE THERE ARE DISCUSSIONS, AND I WOULDN'T CALL THEM

02:30PM 9    HAGGLING OVER COMPENSATION, THERE WERE DISCUSSIONS OVER THE

02:30PM 10   MANNER IN WHICH DR. DHAWAN IS GOING TO BE COMPENSATED.

02:30PM 11       DR. SAWYER, ANOTHER UNCONTESTEDLY QUALIFIED LAB DIRECTOR,

02:30PM 12   IS REVIEWING LAB DOCUMENTATION AND SIGNING THEM.

02:30PM 13           THE COURT:  SO MAYBE THIS ISN'T 404(B).  MAYBE THIS

02:30PM 14   IS JUST FACT EVIDENCE.

02:30PM 15       WHAT'S THE HISTORY OF THE LAB DIRECTORS AT THERANOS?

02:30PM 16       WELL, WE HAD DR. ROSENDORFF.  OKAY.  HE LEFT.

02:30PM 17       WHO FOLLOWED HIM?  THIS DOCTOR.

02:30PM 18       ALL RIGHT.  WHAT WAS HIS, WHAT WAS HIS RELATION?

02:30PM 19       WELL, HE WAS A DERMATOLOGIST.  HE WAS HIRED PART TIME

02:30PM 20   WHILE THEY COULD SECURE SOMEBODY ELSE.

02:30PM 21       OKAY.  ANYTHING ELSE ABOUT HIM?

02:30PM 22       WELL, HE HAPPENED TO BE MR. BALWANI'S DERMATOLOGIST, AND

02:30PM 23   WE AGREED NOT TO HAVE HIM ON.

02:30PM 24       IS THAT JUST FACT EVIDENCE?

02:30PM 25           MR. LOOBY:  RIGHT.  AND I THINK THERE ARE CERTAIN

02:30PM 1    FACTS THAT COULD FAIRLY COME IN.  I MEAN, IT WAS DISCLOSED AS

02:30PM 2    RULE 404(B).  I THINK WITH THE GOVERNMENT'S PROPOSED USE OF IT

02:30PM 3    WITH THAT ANALOGY TO DAVID BOIES, I MEAN, THEN IT'S 404(B)

02:30PM 4    BECAUSE WE'RE TALKING ABOUT ANOTHER ACT.  IT'S A BAD ACT THAT

02:31PM 5    THEY'RE ASKING TO DERIVE EVIDENCE OF INTENT FROM.

02:31PM 6         IT'S NOT LIKE A BASELINE FACT OF, OKAY, ROSENDORFF

02:31PM 7    DEPARTED, DHAWAN WAS NEXT, HE'S A DERMATOLOGIST.  THAT IS NOT

02:31PM 8    -- THE GOVERNMENT HAS TOLD US HOW THEY'RE GOING TO USE THIS

02:31PM 9    EVIDENCE.

02:31PM 10        THE COURT:  WELL, IF IT CAME IN JUST AS FACT

02:31PM 11   EVIDENCE, AS I SAID, WHAT IS THE HISTORY OF THE LAB

02:31PM 12   SUPERVISION?  WOULD YOU ARGUE THAT THEY COULDN'T ARGUE THAT AS

02:31PM 13   INTENT TO SHOW INTENT, THE JURY COULD USE THIS TO CONSIDER,

02:31PM 14   WOW, LOOK WHAT THEY DID, THEY HIRED A DERMATOLOGIST, YOU COULD

02:31PM 15   CONSIDER THAT?

02:31PM 16        MR. LOOBY:  RIGHT.  I THINK THAT USE OF THE EVIDENCE

02:31PM 17   IS 404(B), AND I THINK ONCE THE 404(B) FRAMEWORK IS LAID OVER

02:31PM 18   IT, THE GOVERNMENT HAS TO KIND OF BE PRETTY EXPLICIT ABOUT LIKE

02:31PM 19   THE LINKAGE THAT THEY'RE GOING TO MAKE TO THE EVIDENCE IN THE

02:31PM 20   CASE AND TO INTENT.  AND SO IT WOULD BE AN ORDER EXCLUDING THE

02:31PM 21   EVIDENCE UNDER 404(B) FOR THAT PURPOSE AND IN EFFECT IT WOULD

02:32PM 22   PRECLUDE THAT TYPE OF IMPROPER ARGUMENT IN EFFECT.

02:32PM 23        THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

02:32PM 24      ANYTHING ELSE, MR. LEACH?

02:32PM 25        MR. LEACH:  NO, YOUR HONOR.

151

02:32PM 1          THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  HAVE

02:32PM 2   WE EXHAUSTED THE MOTIONS FOR WEDNESDAY?

02:32PM 3          MS. SAHARIA:  YES, WE HAVE, YOUR HONOR.

02:32PM 4          THE COURT:  I THINK WE HAVE.

02:32PM 5      AND I FRAMED THAT QUESTION VERY CAREFULLY.  I DID NOT ASK

02:32PM 6   IF ANYONE WAS EXHAUSTED.  I NOTE THAT IT'S ABOUT 2:30.  WE'RE

02:32PM 7   AHEAD OF SCHEDULE HERE.  I JUST WONDER IF I COULD LOOK AT A

02:32PM 8   COUPLE OF TOMORROW'S, THURSDAYS.

02:32PM 9      I THINK THERE ARE A COUPLE THAT MIGHT BE -- AND I DON'T

02:32PM 10  MEAN TO CUT OFF DISCUSSION, BUT IT SEEMS LIKE THERE'S A COUPLE

02:32PM 11  OF THESE THAT WE MIGHT BE ABLE TO HANDLE WITH LITTLE

02:32PM 12  DISCUSSION.

02:32PM 13     IS THAT ALL RIGHT, MS. SAHARIA?

02:32PM 14         MS. SAHARIA:  PERHAPS, YOUR HONOR.  NOT ALL OF THE

02:32PM 15  TEAM MEMBERS WHO ARE PREPARED TO ARGUE THE MOTIONS ARE HERE

02:32PM 16  AND --

02:32PM 17         THE COURT:  WELL, THE GOVERNMENT DOESN'T OBJECT TO

02:32PM 18  THAT.

02:32PM 19         MS. SAHARIA:  AND WE DON'T HAVE ALL OF OUR NOTES,

02:33PM 20  BUT IF YOUR HONOR WANTS TO PERHAPS GIVE YOUR COMMENTS ON THE

02:33PM 21  MOTIONS, WE COULD -- THAT MIGHT SPEED ALONG HOW TO PROCEED.

02:33PM 22         THE COURT:  SURE.

02:33PM 23     WELL, LET'S START WITH NUMBER 7, WHICH IS THE GOVERNMENT'S

02:33PM 24  MIL 9, AND THAT IS TO EXCLUDE SELF-SERVING HEARSAY STATEMENTS

02:33PM 25  MADE AND OFFERED BY THE DEFENDANT.


UNITED STATES COURT REPORTERS

02:33PM 1          MS. SAHARIA:  YES, YOUR HONOR.

02:33PM 2          THE COURT:  AND THE NINTH CIRCUIT LAW IS THE <u>ORTEGA</u>

02:33PM 3   CASE SPEAKS TO THIS, 203 FED. 3D.  THAT IS THE CASE THAT I WAS

02:33PM 4   GOING TO CALL OUT AND ASK IF THE PARTIES ARE AGREEING THAT

02:33PM 5   <u>ORTEGA</u> CONTROLS.

02:33PM 6      I DON'T KNOW IF THAT'S HELPFUL OR NOT.  I DON'T KNOW IF

02:33PM 7   YOU ARE READY TO SPEAK TO THAT OR NOT.

02:33PM 8          MS. SAHARIA:  I CAN SPEAK TO THAT.  LET ME JUST USE

02:33PM 9   ONE MASK.

02:33PM 10     SO, YOUR HONOR, WITH RESPECT TO THE GOVERNMENT'S MOTION TO

02:33PM 11  EXCLUDE SELF-SERVING HEARSAY STATEMENTS, I THINK THE COURT

02:34PM 12  SHOULD DENY THAT MOTION FOR THE SAME REASON THAT THE COURT IN

02:34PM 13  THE <u>YANG</u> AND <u>YAGI</u> CASES DENIED THAT MOTION, WHICH IS, OF

02:34PM 14  COURSE, WE CANNOT ADMIT MS. HOLMES'S STATEMENTS FOR THEIR

02:34PM 15  TRUTH, BUT THERE ARE MANY OTHER PROPER REASONS WHY THEY MAY BE

02:34PM 16  ADMITTED.

02:34PM 17     THEY MAY BE ADMITTED FOR A NONHEARSAY PURPOSE, THE

02:34PM 18  STATEMENT MAY BE A VERBAL COMMAND TO ANOTHER EMPLOYEE, WHICH IS

02:34PM 19  NOT ADMITTED FOR THE TRUTH.  THAT WOULD BE RELEVANT TO INTENT.

02:34PM 20  IT MAY BE ADMITTED AS A HEARSAY EXCEPTION AND A STATEMENT OF

02:34PM 21  MIND, FOR INSTANCE.  SO THERE'S MANY PURPOSES FOR WHICH WE

02:34PM 22  MIGHT ADMIT THEM.

02:34PM 23     THE GOVERNMENT HAS NOT IDENTIFIED ANY STATEMENTS AT ISSUE

02:34PM 24  RIGHT NOW, SO THE MOTION IS ENTIRELY PREMATURE.

02:34PM 25     THERE WERE TWO OTHER KIND OF SUBSIDIARY ISSUES THAT THE

02:34PM 1    GOVERNMENT RAISES IN THAT MOTION WHICH I THINK ARE ALSO

02:34PM 2    COMPLETELY PREMATURE.

02:34PM 3        ONE IS PRIOR CONSISTENT STATEMENTS AND WHAT THE SCOPE OF

02:34PM 4    OUR ABILITY TO ADMIT PRIOR CONSISTENT STATEMENTS IS. I THINK

02:35PM 5    THAT'S JUST PREMATURE.

02:35PM 6        I WOULD JUST NOTE ONE ISSUE THERE, WHICH IS IN THE

02:35PM 7    GOVERNMENT'S MOTION IT CITES I THINK A 2008 CASE. I DON'T

02:35PM 8    REMEMBER THE NAME OF THE CASE. THAT WAS APPLYING THE PRIOR

02:35PM 9    STANDARD FOR PRIOR CONSISTENT STATEMENTS. THE RULES COMMITTEE

02:35PM 10    AMENDED THAT RULE IN 2014 TO BROADEN IT TO ALLOW A WIDER

02:35PM 11    VARIETY OF PRIOR CONSISTENT STATEMENTS TO BE ADMITTED FOR THEIR

02:35PM 12    TRUTH. SO I WOULD JUST NOTE THAT FOR THE RECORD THAT THAT IS

02:35PM 13    NOT THE RIGHT STANDARD THAT THEY HAVE CITED IN THEIR MOTIONS.

02:35PM 14        AND THEN ON THE RULE OF COMPLETENESS ISSUE, EVEN THE COURT

02:35PM 15    IN DASHNER, WHICH IS THE ONLY CASE THAT THEY RELIED ON, DENIED

02:35PM 16    THAT PART OF THE MOTION BECAUSE IT'S ENTIRELY PREMATURE.

02:35PM 17        THERE ARE THESE KIND OF HYPOTHETICAL ISSUES ADDRESSED BY

02:35PM 18    THE PARTIES ABOUT THE RULE OF COMPLETENESS AND WHETHER IT MIGHT

02:35PM 19    APPLY TO ORAL STATEMENTS AND HOW IT APPLIES WHEN THE STATEMENT

02:35PM 20    IS A HEARSAY STATEMENT.

02:35PM 21        IF YOUR HONOR WANTS US TO ADDRESS THOSE, WE CAN NOW, BUT I

02:36PM 22    THINK THEY'RE JUST COMPLETELY PREMATURE.

02:36PM 23           THE COURT: OKAY. THANK YOU.

02:36PM 24    WHO IS SPEAKING TO THIS MOTION?

02:36PM 25           MS. VOLKAR: KELLY VOLKAR ON BEHALF OF THE

02:36PM 1     UNITED STATES.  IT'S A PLEASURE TO MEET YOU IN PERSON.

02:36PM 2              THE COURT:  THANK YOU.  LIKEWISE.

02:36PM 3              MS. VOLKAR:  I APOLOGIZE I DON'T HAVE ALL OF MY

02:36PM 4     NOTES IN FRONT OF ME.

02:36PM 5              THE COURT:  I DON'T MEAN TO CALL THIS OUT OF ORDER

02:36PM 6     AND TO PUT BOTH SIDES AT A DISADVANTAGE, BUT I JUST THOUGHT

02:36PM 7     THAT THE NINTH CIRCUIT LAW ON THIS IS SPELLED OUT CLEARLY I

02:36PM 8     THINK IN THE ORTEGA CASE.  AND MY QUESTION WAS GOING TO BE CAN

02:36PM 9     WE GET AGREEMENT THAT THE PARTIES ARE GOING TO FOLLOW THE

02:36PM 10    NINTH CIRCUIT LAW AND THE ORTEGA CASE.

02:36PM 11         THE GENERAL, MS. SAHARIA, AS I'M CERTAIN YOU ARE AWARE

02:36PM 12    THAT THE GENERAL PROPOSITION IS THAT A DEFENDANT CANNOT GET IN

02:36PM 13    HIS OR HER EXCULPATORY OUT-OF-COURT STATEMENTS THAT MIGHT GO TO

02:36PM 14    AN ISSUE OF INTENT IN THE CASE.

02:36PM 15             MS. SAHARIA:  WELL, I DON'T AGREE WITH THAT

02:37PM 16    FORMULATION BECAUSE THERE COULD BE EXCULPATORY STATEMENTS THAT

02:37PM 17    ARE NOT ADMITTED FOR THEIR TRUTH, RIGHT?  THERE MAY BE A

02:37PM 18    STATEMENT OF MS. HOLMES'S STATE OF MIND WHICH WOULD COME IN

02:37PM 19    UNDER A HEARSAY EXCEPTION UNDER RULE 803 I BELIEVE.

02:37PM 20             THE COURT:  OKAY.

02:37PM 21             MS. SAHARIA:  THAT MAY BE EXCULPATORY, RIGHT?  IT'S

02:37PM 22    A HELPFUL STATEMENT, BUT WE CAN ADMIT THAT BECAUSE IT'S NOT FOR

02:37PM 23    ITS TRUTH.

02:37PM 24         SO I TOTALLY AGREE THAT WE CANNOT ADMIT MS. HOLMES'S

02:37PM 25    STATEMENTS FOR THE TRUTH OF THE MATTER ASSERTED.  THE POINT I

02:37PM 1    WAS MAKING BEFORE IS THAT THERE ARE MANY EXCEPTIONS UNDER THE

02:37PM 2    HEARSAY RULES THAT WOULD ALLOW US TO ADMIT MS. HOLMES'S

02:37PM 3    STATEMENTS.

02:37PM 4            THE COURT:  TO ADVANCE THAT THEORY ANYHOW, RIGHT.

02:37PM 5            MS. SAHARIA:  YES.  AND JUST LIKE THE COURT SAID IN

02:37PM 6    YANG AND YAGI, YOU CAN'T DECIDE WHETHER ANY THE STATEMENTS

02:37PM 7    FALLS -- IS BEING ADMITTED FOR THE TRUTH OR IS BEING ADMITTED

02:37PM 8    FOR SOME OTHER PURPOSE UNTIL YOU ACTUALLY HAVE THAT STATEMENT

02:37PM 9    IN FRONT OF THE COURT.

02:37PM 10           THE COURT:  OKAY.  WELL, LET'S CONTINUE OUR

02:37PM 11   CONVERSATION ON THIS TOMORROW.  I JUST POINT OUT THE ORTEGA

02:37PM 12   CASE FOR OUR DISCUSSION.

02:37PM 13       THE OTHER ONE THAT I THOUGHT WE WOULD HAVE DISCUSSION

02:37PM 14   ABOUT IS DOCUMENT 578, MS. HOLMES'S MOTION TO EXCLUDE CERTAIN

02:38PM 15   NEWS ARTICLES.

02:38PM 16       I THOUGHT I READ THERE WAS AN AGREEMENT EXCEPT FOR PARLOFF

02:38PM 17   AND TOPEL.

02:38PM 18           MS. SAHARIA:  THAT'S MR. LOOBY'S MOTION.  I THINK WE

02:38PM 19   MIGHT PREFER TO TABLE THAT UNTIL TOMORROW IF THAT'S OKAY WITH

02:38PM 20   YOUR HONOR.

02:38PM 21           THE COURT:  SURE.  SURE.  OKAY.  THOSE WERE THE TWO

02:38PM 22   THAT I THOUGHT WE COULD HANDLE WITH SOME EFFICIENCY TODAY, BUT

02:38PM 23   THAT'S FINE.  WE'LL TALK ABOUT THOSE TOMORROW.

02:38PM 24           MS. SAHARIA:  OKAY.  THANK YOU.

02:38PM 25           THE COURT:  ALL RIGHT.  WHY DON'T WE END OUR DAY

02:38PM 1 TODAY, WHY DON'T WE END OUR DAY TODAY.

02:38PM 2 ANYTHING ELSE ANY OF THE PARTIES WANT TO RAISE TODAY OR

02:38PM 3 ANYTHING ELSE RELATED TO OUR TRIAL SCHEDULE?

02:38PM 4 MR. SCHENK: NO, YOUR HONOR. THANK YOU.

02:38PM 5 MS. SAHARIA: NO, YOUR HONOR.

02:38PM 6 THE COURT: OKAY. THANK YOU. HAVE A GOOD EVENING.

02:38PM 7 WE'LL SEE YOU TOMORROW.

02:38PM 8 TOMORROW AT 1:00 O'CLOCK, I THINK, MS. KRATZMANN? IS THAT

02:39PM 9 RIGHT?

02:39PM 10 THE CLERK: I BELIEVE IT WAS CALENDARED FOR 1:30.

02:39PM 11 WE CAN MOVE THAT UP TO 1:00 O'CLOCK.

02:39PM 12 THE COURT: LET'S DO THAT. I HAVE A CIVIL CALENDAR

02:39PM 13 AT 9:00 O'CLOCK AND ONE MATTER CAME OFF. LET'S JUST SAY 1:00

02:39PM 14 O'CLOCK OUT OF AN ABUNDANCE OF CAUTION.

02:39PM 15 MS. SAHARIA: SURE. THANK YOU.

02:39PM 16 MR. LEACH: TOO THANK YOU.

02:39PM 17 THE CLERK: COURT IS ADJOURNED FOR THE DAY. THE

02:39PM 18 CONFERENCE LINE SHALL TERMINATE.

02:39PM 19 (COURT CONCLUDED AT 2:39 P.M.)

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16       IRENE RODRIGUEZ, CSR, RMR, CRR
         CERTIFICATE NUMBER 8074
17

18
         DATED:  MAY 12, 2021
19

20

21

22

23

24

25

1

1

2                        UNITED STATES DISTRICT COURT

3                      NORTHERN DISTRICT OF CALIFORNIA

4                            SAN JOSE DIVISION

5

6     UNITED STATES OF AMERICA,        )
                                       )   CR-18-00258-EJD
                  PLAINTIFF,           )
7                                      )   SAN JOSE, CALIFORNIA
            VS.                        )
8                                      )   MAY 4, 2021
      ELIZABETH A. HOLMES,             )
9                                      )   PAGES 1 - 195
                  DEFENDANT.           )
10    _____  )
                                       )
11
                          TRANSCRIPT OF PROCEEDINGS
12               BEFORE THE HONORABLE EDWARD J. DAVILA
                     UNITED STATES DISTRICT JUDGE
13
      A P P E A R A N C E S:
14
      FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                           BY:  JOHN C. BOSTIC
                                  JEFFREY B. SCHENK
16                           150 ALMADEN BOULEVARD, SUITE 900
                             SAN JOSE, CALIFORNIA 95113
17
                             BY:  ROBERT S. LEACH
18                                KELLY VOLKAR
                             1301 CLAY STREET, SUITE 340S
19                           OAKLAND, CALIFORNIA 94612

20          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
      OFFICIAL COURT REPORTERS:
22                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
                             CERTIFICATE NUMBER 8074
23                           LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER

2

```
1        A P P E A R A N C E S: (CONT'D)

2

3        FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                                 BY:   KEVIN M. DOWNEY
4                                      LANCE A. WADE
                                       PATRICK LOOBY
5                                      KATHERINE TREFZ
                                       AMY SAHARIA
6                                      J.R. FLEURMONT
                                       SEEMA ROPER
7                                725 TWELFTH STREET, N.W.
                                 WASHINGTON, D.C. 20005
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**ER-2658**

3

|  | 1 | SAN JOSE, CALIFORNIA                                    MAY 4, 2021 |
|--|---|------|
|  | 2 | P R O C E E D I N G S |
| 09:33AM | 3 | (COURT CONVENED AT 9:32 A.M.) |
| 09:33AM | 4 | THE COURT:  ALL RIGHT.  LET'S CALL OUR MORNING |
| 09:33AM | 5 | MATTER.  THIS IS 18258, UNITED STATES VERSUS ELIZABETH HOLMES. |
| 09:33AM | 6 | LET ME FIRST CAPTURE THE APPEARANCE OF THE PARTIES, |
| 09:33AM | 7 | PLEASE. |
| 09:33AM | 8 | THE CLERK:  I HOPE IT'S OKAY. |
| 09:33AM | 9 | THE COURT:  LET'S GET APPEARANCES OF THE PARTIES. |
| 09:33AM | 10 | WHO APPEARS FOR THE GOVERNMENT? |
| 09:33AM | 11 | MR. SCHENK:  GOOD MORNING. |
| 09:33AM | 12 | JEFF SCHENK FOR THE UNITED STATES.  SEATED WITH ME AT |
| 09:33AM | 13 | COUNSEL TABLE FROM THE TABLE LEFT IS KELLY VOLKAR, AND |
| 09:33AM | 14 | ROBERT LEACH, AND JOHN BOSTIC. |
| 09:33AM | 15 | THE COURT:  GOOD MORNING.  WHO APPEARS FOR THE |
| 09:34AM | 16 | MS. HOLMES? |
| 09:34AM | 17 | MS. SAHARIA:  GOOD MORNING, YOUR HONOR.  IT'S VERY |
| 09:34AM | 18 | NICE TO SEE YOU IN PERSON. |
| 09:34AM | 19 | AMY SAHARIA FOR THE DEFENDANT ELIZABETH HOLMES. |
| 09:34AM | 20 | WITH ME IN THE COURTROOM IS KEVIN DOWNEY, LANCE WADE, AND |
| 09:34AM | 21 | I'LL LIKE TO INTRODUCE MY COLLEAGUE, SEEMA ROPER. |
| 09:34AM | 22 | THE COURT:  THANK YOU. |
| 09:34AM | 23 | MS. SAHARIA:  MS. HOLMES IS PRESENT. |
| 09:34AM | 24 | THE COURT:  THANK YOU. |
| 09:34AM | 25 | MS. SAHARIA:  WE HAVE TWO ADDITIONAL ATTORNEYS FROM |

4

09:34AM 1     OUR TEAM WHO WILL BE ADDRESSING THE COURT TODAY,

09:34AM 2     KATHERINE TREFZ AND J.R. FLEURMONT.  THEY ARE HERE IN THE

09:34AM 3     COURTHOUSE BUT NOT SPECIFICALLY PRESENT IN THE COURTROOM AT THE

09:34AM 4     MOMENT.

09:34AM 5          THE COURT:  ALL RIGHT.  THANK YOU.

09:34AM 6       DID THEY WISH TO BE PRESENT IN THE COURTROOM?

09:34AM 7          MS. SAHARIA:  IF YOUR HONOR IS COMFORTABLE WITH

09:34AM 8     THAT, I THINK WE WOULD PREFER FOR THEM TO BE SEATED IN THE

09:34AM 9     GALLERY SO THAT THEY CAN WATCH IN PERSON.

09:34AM 10         THE COURT:  THAT'S FINE.  LET ME INDICATE THAT THE

09:34AM 11    CURRENT PROTOCOLS IS THAT OUR COURTROOM IS CLOSED TO THE

09:34AM 12    PUBLIC.  HOWEVER, WE ARE, AT MY REQUEST, HAVING THIS HEARING IN

09:34AM 13    PERSON FOR A NUMBER OF REASONS.

09:34AM 14       BUT IF YOU WOULD LIKE THOSE COUNSEL TO BE PRESENT, AS LONG

09:34AM 15    AS THEY SEAT THEMSELVES IN A SOCIALLY DISTANCED MANNER.

09:34AM 16       I SEE MR. WADE STANDING UP, AND HE'S GOING TO COLLECT THEM

09:35AM 17    I PRESUME.

09:35AM 18         MS. SAHARIA:  I BELIEVE SO.  I CAN SEE HIS

09:35AM 19    REFLECTION.  I APPRECIATE THAT, YOUR HONOR.

09:35AM 20         THE COURT:  OF COURSE.  THANK YOU.

09:35AM 21       LET ME -- AS WE GET STARTED, I JUST THOUGHT THAT I WOULD

09:35AM 22    JUST INDICATE A COUPLE OF RULES THAT WE WILL FOLLOW FOR THE

09:35AM 23    HEARING.

09:35AM 24       IT'S MY INTENT, FIRST OF ALL, TO -- WE HAVE A LOT OF WORK

09:35AM 25    AHEAD OF US, BUT IT'S MY INTENT, I THOUGHT WE WOULD TAKE BREAKS

5

09:35AM 1    EVERY HOUR, TAKE A SMALL BREAK, MAYBE TEN MINUTE BREAK EVERY

09:35AM 2    HOUR, AND THEN WE WOULD RESUME AGAIN AFTERWARDS, AND THAT'S FOR

09:35AM 3    THE COMFORT OF EVERYONE AND ALSO FOR OUR COURT REPORTER AND

09:35AM 4    STAFF.

09:35AM 5         ALSO, IF AT ANY TIME ANYONE NEEDS TO TAKE A BREAK FOR ANY

09:35AM 6    REASON, PLEASE LET ME KNOW, AND I'M HAPPY TO ACCOMMODATE THAT

09:35AM 7    REQUEST AS WELL AS NEEDED.

09:35AM 8         MY THOUGHT WAS THAT ALSO JUST FOR SCHEDULING PURPOSES IS

09:35AM 9    THAT WE'LL HAVE A 1 HOUR LUNCH RATHER THAN THE TYPICAL

09:36AM 10   90 MINUTE LUNCH.  I HOPE THAT COMPORTS WITH YOUR SCHEDULES.

09:36AM 11        MY SENSE ALSO IS THAT WE WOULD END OUR DAY AROUND

09:36AM 12   4:00 P.M. DEPENDING ON WHERE WE ARE.  I DON'T WANT TO TAKE US

09:36AM 13   TO 5:00 O'CLOCK, BUT I THOUGHT AROUND 4:00 P.M. MIGHT BE GOOD.

09:36AM 14   OF COURSE, WE'LL GAUGE THAT ACCORDING TO THE PROGRESS THAT WE

09:36AM 15   MAKE WITH THIS HEARING.

09:36AM 16        NOW, LET ME ALSO INDICATE THAT OF COURSE I'VE READ AND

09:36AM 17   REVIEWED ALL OF YOUR MOTIONS, YOUR EXHIBITS, AND MATTERS THAT

09:36AM 18   YOU'VE FILED IN THIS CASE.

09:36AM 19        MY THOUGHT IS WHAT I WOULD LIKE TO DO IS THAT YOU WILL

09:36AM 20   RECEIVE AN OMNIBUS RULING ON THESE MOTIONS FROM ME.  YOU WON'T

09:36AM 21   GET THAT TODAY.  BUT YOU'LL RECEIVE -- WHAT I HOPE TO DO IS TO

09:36AM 22   GIVE YOU ORDERS WITH THE COURT'S IMPRESSIONS AND THE COURT'S

09:36AM 23   ORDERS ON THESE MILS, AND THAT WILL BE FORTHCOMING AFTER OUR

09:37AM 24   HEARING THIS WEEK.

09:37AM 25        I DON'T KNOW HOW SOON THAT WILL BE, BUT I'M GOING TO

6

09:37AM 1     ENDEAVOR TO GET THAT TO YOU AS SOON AS POSSIBLE FOR YOUR

09:37AM 2     INFORMATION.  IT MAY BE, HOWEVER, THAT I'LL RULE FROM THE BENCH

09:37AM 3     OR AT LEAST INDICATE THE COURT'S RULING FROM THE BENCH.

09:37AM 4     HOPEFULLY THAT WOULD HELP YOU ALSO.  AND THEN YOU WOULD RECEIVE

09:37AM 5     SUBSEQUENT, AS I SAID, FORMAL ORDERS OF THE COURT AS TO SOME OF

09:37AM 6     THE MOTIONS.

09:37AM 7          I THINK SOME OF THE MOTIONS, AND JUST GIVING YOU SOME

09:37AM 8     DETAIL IN ADVANCE, SOME OF THE MOTIONS MIGHT BE DEFERRED.  SOME

09:37AM 9     OF THE MOTIONS I MIGHT BE ABLE TO RULE ON THEM HERE AND AT

09:37AM 10    LEAST TELL YOU THE COURT'S THINKING ON SOME OF THE MOTIONS, AND

09:37AM 11    OTHERS THAT I'M EAGER TO HEAR YOUR COMMENTS AND FURTHER

09:37AM 12    ASSISTANCE TO THE COURT.

09:37AM 13         NOW, WHAT I WOULD ALSO LIKE TO DO IS WE'RE HERE IN THE

09:37AM 14    COVID CIRCUMSTANCE.  WE HAVE ALL OF THIS PLEXIGLASS, AND

09:37AM 15    MS. SAHARIA TOLD US SHE HAD BENEFITS IN SEEING REFLECTIONS AND

09:38AM 16    THOSE TYPES OF THINGS.

09:38AM 17         WHAT I THOUGHT WE WOULD START WITH IS ALLOWING COUNSEL TO

09:38AM 18    SPEAK FROM THE LECTERNS.  AND LET'S TRY THAT.  I JUST WANT TO

09:38AM 19    SAY THAT THIS IS FOR BENEFIT OF OUR COURT REPORTER AS WELL.

09:38AM 20    WE'RE ALL WEARING MASKS, AND I APPRECIATE THAT.  THIS WOULD

09:38AM 21    BENEFIT THE COURT REPORTER AND ME AS WELL AS FAR AS LISTENING

09:38AM 22    TO YOUR ARGUMENTS.

09:38AM 23         CONCURRENT WITH THAT IS I'M GOING TO ASK OUR COURTROOM

09:38AM 24    DEPUTY TO TURN OFF THE MICROPHONES AT YOUR TABLES SUCH THAT YOU

09:38AM 25    CAN COMMUNICATE, IF YOU WISH, THOSE OF YOU AT THE TABLE CAN

7

| | | |
|---|---|---|
| 09:38AM | 1 | COMMUNICATE WITH EACH OTHER, AND THAT WILL NOT BE COLLECTED ON |
| 09:38AM | 2 | THE MICROPHONES.  THAT WILL BE PRIVATE. |
| 09:38AM | 3 | IF, HOWEVER, COUNSEL WISH TO SPEAK FROM THE TABLES, LET ME |
| 09:38AM | 4 | KNOW OR LET MS. KRATZMANN KNOW AND SHE CAN TURN YOUR MIKES ON |
| 09:38AM | 5 | TO ACCOMMODATE THAT.  I'M HAPPY TO DO THAT. |
| 09:38AM | 6 | ALSO, IF YOU DO SPEAK FROM THE TABLE, AS WELL AS SPEAKING |
| 09:38AM | 7 | FROM THE LECTERN, I WOULD BE GRATEFUL IF YOU WOULD SPEAK |
| 09:39AM | 8 | DIRECTLY INTO THE MICROPHONE SO WE CAN CAPTURE WHAT YOU SAY. |
| 09:39AM | 9 | IT'S A CHALLENGE AS WE'RE GOING FORWARD. |
| 09:39AM | 10 | THAT'S ONE OF THE REASONS, CANDIDLY, I WANTED US TO GET |
| 09:39AM | 11 | TOGETHER TO HAVE AN IN-PERSON HEARING SO WE CAN SEE EACH OTHER |
| 09:39AM | 12 | AND ENJOY OUR FELLOWSHIP AND YOU CAN HELP ME HERE, BUT ALSO SO |
| 09:39AM | 13 | WE COULD IN ANTICIPATION OF THE TRIAL WE CAN WORK OUT SOME OF |
| 09:39AM | 14 | THE NUANCES AND CHALLENGES THAT WE'LL BE FACING DURING THE |
| 09:39AM | 15 | TRIAL. |
| 09:39AM | 16 | I THINK I INDICATED TO YOU IN OUR LAST HEARING, THAT ZOOM |
| 09:39AM | 17 | HEARING, THAT IT IS MY HOPE THAT WE WILL HAVE THE TRIAL IN THIS |
| 09:39AM | 18 | COURTROOM, IN MY COURTROOM AS OPPOSED TO THE CEREMONIAL |
| 09:39AM | 19 | COURTROOM WHERE I THINK SOME OF YOU HAVE LOOKED AT ALREADY AND |
| 09:39AM | 20 | GAUGED THAT OUT. |
| 09:39AM | 21 | BUT IT'S MY HOPE THAT WE WILL HAVE THE TRIAL HERE AND FOR |
| 09:39AM | 22 | SELFISH REASONS.  I HAVE GREATER COMFORT IN THIS COURTROOM.  I |
| 09:39AM | 23 | DO THINK THAT IT'S BETTER SUITED FOR OUR NEEDS FOR THE TRIAL. |
| 09:39AM | 24 | SO I'M GOING TO ENDEAVOR TO MAKE THAT HAPPEN IF AT ALL |
| 09:40AM | 25 | POSSIBLE. |

8

09:40AM 1       SO THOSE ARE THE ONLY INTRODUCTORY COMMENTS THAT I HAVE.

09:40AM 2       DOES ANYBODY HAVE ANYTHING TO SAY INTRODUCTORYWISE ABOUT

09:40AM 3   ANYTHING THAT I'VE COVERED OR ANY QUESTIONS ABOUT ANYTHING I'VE

09:40AM 4   COVERED?

09:40AM 5           MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

09:40AM 6           MS. SAHARIA:  NO, YOUR HONOR.

09:40AM 7           THE COURT:  MR. DOWNEY, I FEEL LIKE I'M AT

09:40AM 8   WRIGLEY FIELD IN A CHEAP SEAT RIGHT BEHIND A POST HERE.

09:40AM 9           MR. DOWNEY:  LET ME GET UP FROM BEHIND THE POST.

09:40AM 10          THE COURT:  NO, NO.  I JUST DON'T WANT YOU TO BE

09:40AM 11  UNCOMFORTABLE AS I MOVE LEFT AND RIGHT HERE.

09:40AM 12      ALL RIGHT.  THANK YOU VERY MUCH.

09:40AM 13          MR. DOWNEY:  THANK YOU.

09:40AM 14          THE COURT:  AND I WANT TO THANK YOU, TOO, FOR

09:40AM 15  PROVIDING THE SCHEDULE OF HOW WE'LL CONDUCT THE MOTIONS, HOW

09:40AM 16  YOU'D LIKE TO HAVE THE MOTIONS CALLED.  THAT WAS HELPFUL FOR

09:40AM 17  OUR SCHEDULING PURPOSE.

09:40AM 18      SO REFERRING TO THAT SCHEDULE IT APPEARS THAT THE FIRST

09:41AM 19  MOTION TO BE HEARD IS THE GOVERNMENT'S MOTION IN LIMINE

09:41AM 20  NUMBER 1 WHICH IS TO PRECLUDE THE DEFENDANT FROM OFFERING AN

09:41AM 21  IMPROPER DEFENSE OF BLAMING HER VICTIMS, AND I THINK THIS

09:41AM 22  RELATES TO SOMETHING CALLED THE CULTURE OF SILICON VALLEY

09:41AM 23  STARTUPS.

09:41AM 24      SO WHO WILL ARGUE THAT MOTION FOR THE GOVERNMENT.

09:41AM 25          MR. SCHENK:  YES.  THANK YOU, YOUR HONOR.

9

09:41AM  1      JEFF SCHENK FOR THE UNITED STATES ONCE AGAIN.

09:41AM  2      YOUR HONOR, THIS MOTION IS ONE THAT I THINK WE CAN

09:41AM  3  DISPENSE WITH RATHER QUICKLY.  THE PARTIES AGREE THAT INVESTOR

09:41AM  4  OR VICTIM NEGLIGENCE IS NOT A DEFENSE, AND BECAUSE OF THAT

09:41AM  5  THERE'S A LINE OF ARGUMENTS FOR QUESTIONING THAT FOLLOWS FROM

09:41AM  6  THAT AS, THEREFORE, BEING INAPPROPRIATE.  THINGS, FOR INSTANCE,

09:41AM  7  THAT WOULD ATTACK THE DUE DILIGENCE OF A VICTIM INVESTOR WOULD

09:41AM  8  BE INAPPROPRIATE BECAUSE, AGAIN, THE EFFORT OF A VICTIM TO

09:42AM  9  LEARN MORE ABOUT THE INVESTMENT, THE SCHEME, THE OPPORTUNITY

09:42AM 10  REALLY AREN'T RELEVANT AS THE CASE LAW SUGGESTS.

09:42AM 11      AND FLOWING FROM THAT, WE WOULD URGE THE COURT, THEREFORE,

09:42AM 12  TO RULE THAT ARGUMENTS CONCERNING HOW MUCH A VICTIM RELIES ON

09:42AM 13  STATEMENTS MADE TO THAT VICTIM INVESTOR REALLY SHOULD BE

09:42AM 14  PROHIBITED.

09:42AM 15      NOW, THE DEFENSE MAKES A POINT ABOUT ARGUMENTS THAT ARE

09:42AM 16  MADE FOR IMPEACHMENT PURPOSES.  A VICTIM TAKES THE STAND AND

09:42AM 17  TESTIFIES A CERTAIN WAY, THE DEFENSE, THEREFORE, SHOULD BE

09:42AM 18  ALLOWED TO IMPEACH WITH INCONSISTENT FACTS OR STATEMENTS.  AND

09:42AM 19  WE AGREE WITH THAT.

09:42AM 20      WHAT WE ARE SEEKING IS THE COURT TO PRECLUDE ARGUMENTS

09:42AM 21  THAT BLAME THE VICTIMS, THAT SAY THAT THEY DIDN'T DO ENOUGH

09:42AM 22  DUE DILIGENCE INVESTIGATION, THAT THE STATEMENTS THAT WERE MADE

09:42AM 23  TO THE VICTIM DIDN'T CAUSE THE VICTIM TO ACTUALLY INVEST.

09:43AM 24  THOSE KINDS OF ARGUMENTS ARE WHAT THE COURT FROM THIS MOTION

09:43AM 25  SHOULD RULE ON, AND THAT REALLY FLOWS FROM THE LINDSEY CASE.

09:43AM 1    IT'S WITH AN E, L-I-N-D-S-E-Y.  AND IT HAS HELPFUL LANGUAGE FOR

09:43AM 2    THE COURT TO DRAW FROM ABOUT THE ABSENCE OF RELIANCE REALLY NOT

09:43AM 3    BEING A STATEMENT ABOUT WHETHER RELIANCE IS PRESENT IN THE CASE

09:43AM 4    BECAUSE WE DON'T HAVE TO ACTUALLY RELY FOR THE STATEMENTS TO BE

09:43AM 5    MATERIAL.

09:43AM 6         AND NOW I'LL TURN TO WHAT THE COURT NOTED AT THE OUTSET,

09:43AM 7    AND, THAT IS, THERE IS A SECTION IN THE MOTION THAT DISCUSSES

09:43AM 8    THE CULTURE WITHIN SILICON VALLEY.

09:43AM 9         WHAT THE GOVERNMENT IS SEEKING FROM THE COURT WITH REGARD

09:43AM 10   TO THAT POINT IS THAT IT'S NOT RELEVANT, AND THE DEFENSE SHOULD

09:43AM 11   NOT BE ALLOWED TO ARGUE ABOUT WHETHER EXAGGERATION IS COMMON

09:43AM 12   WITHIN SILICON VALLEY AND OTHERS HAVEN'T BEEN CHARGED

09:43AM 13   CRIMINALLY; THAT THE GOVERNMENT CHOSE TO PROSECUTE THIS CASE

09:43AM 14   BUT HASN'T INDICTED OR PROSECUTED COMPANY X OR COMPANY Y, AND

09:43AM 15   THAT COMPANY ENGAGED IN EXAGGERATION IN OVERSTATEMENT.

09:43AM 16        THEY'RE REALLY ASKING THE JURY TO MAKE ITS DETERMINATION

09:44AM 17   BASED ON FACTS NOT BEFORE THEM, NOT BASED ON THE GUILT OR

09:44AM 18   INNOCENCE OF MS. HOLMES ON CERTAIN COUNTS, BUT INSTEAD TO

09:44AM 19   SPECULATE ABOUT GOVERNMENT CHARGING DECISIONS IN CASES THAT ARE

09:44AM 20   NOT BEFORE THE COURT.

09:44AM 21        THE COURT:  COULD THEY -- THANK YOU, MR. SCHENK.

09:44AM 22        COULD THEY, THE DEFENSE THAT IS, COULD THEY SAY OR COULD

09:44AM 23   THEY COMMENT EITHER IN AN OPENING OR IN A CLOSING ARGUMENT OR

09:44AM 24   IN A QUESTION TO A WITNESS, CAN THEY COMMENT THAT IT IS NOT

09:44AM 25   UNUSUAL IN IPO'S OR NEW VENTURES FOR COMPANY REPRESENTATIVES TO

09:44AM 1    EXTOL THE VIRTUES, THE EXCITEMENT, THE NEW TYPE OF PRODUCT WHEN

09:44AM 2    IT'S BEING MARKETED?

09:44AM 3        IS THAT SOMETHING THAT THEY CAN TALK ABOUT?  THAT THAT'S

09:44AM 4    WHAT HAPPENS IN SILICON VALLEY WHEN ZOOM TECHNOLOGY CAME OUT

09:44AM 5    AND EVERYONE EXTOLLED ITS VIRTUES?  IS THAT APPROPRIATE?

09:45AM 6        MR. SCHENK:  NO.  WE WOULD URGE THE COURT TO

09:45AM 7    PROHIBIT THAT KIND OF ARGUMENT, AND THE REASON BEING IS BECAUSE

09:45AM 8    IT'S REALLY ASKING THE JURY TO MAKE ITS DETERMINATION BASED ON

09:45AM 9    FACTORS OTHER THAN THE EVIDENCE PRESENTED TO THE JURY IN THIS

09:45AM 10   CASE REGARDING MS. HOLMES'S INTENT TO DEFRAUD OR KNOWLEDGE,

09:45AM 11   MATERIALITY, REALLY THE ESSENCE OF WHAT ARE STRAIGHTFORWARD

09:45AM 12   CONSPIRACY AND WIRE FRAUD COUNTS.

09:45AM 13       THE COURT:  I WAS CURIOUS WHETHER -- IS IT ALL

09:45AM 14   RIGHT?  WOULD IT BE PERMITTED TO HAVE THAT TYPE OF TESTIMONY OF

09:45AM 15   THIS IS HOW SPONSORS, THIS IS HOW FOUNDERS TALK ABOUT THEIR

09:45AM 16   PRODUCT WITHOUT TALKING ABOUT THE SECOND PART, WHICH IS "AND

09:45AM 17   EVERYBODY DOES IT AND NOBODY ELSE WAS PROSECUTED"?  JUST THE

09:45AM 18   STANDALONE FACT WHEN LARRY ELLISON, FOR EXAMPLE, BEGAN

09:45AM 19   ORACLE -- MAYBE THAT'S A POOR EXAMPLE.

09:45AM 20       WHEN SOMEONE DISCUSSES THEIR NEW PRODUCT, THEIR NEW

09:46AM 21   DESIGN, THEIR NEW IDEA, IT'S COMMON IN SILICON VALLEY FOR

09:46AM 22   PROMOTERS TO ENGAGE IN THAT TYPE OF CONDUCT AND THEN VOCABULARY

09:46AM 23   COMMUNICATION, BUT WITHOUT SAYING THESE OTHER COMPANIES DID

09:46AM 24   THAT SAME THING AND THEY WEREN'T PROSECUTED?

09:46AM 25       MR. SCHENK:  YOUR HONOR, I THINK THAT THE FACTS THAT

12

09:46AM 1    ARE MISSING FROM THE COURT'S HYPOTHETICAL ARE KNOWLEDGE ON

09:46AM 2    MS. HOLMES'S PART ABOUT THAT CIRCUMSTANCE.

09:46AM 3        IN OTHER WORDS, WHAT THE JURY SHOULD BE ASKED TO DO IS TO

09:46AM 4    EVALUATE KNOWLEDGE AND INTENT OF STATEMENTS MADE BY MS. HOLMES,

09:46AM 5    IN THIS CONTEXT EXAGGERATED STATEMENTS, AND WAS SHE MIMICKING,

09:46AM 6    WAS SHE DOING IT BECAUSE OTHERS WERE DOING IT?  WAS HER INTENT

09:46AM 7    TO DO IT WAS TO COPY THOSE, AND, THEREFORE, SOME OF THE POINTS

09:46AM 8    THAT THE COURT JUST MADE CERTAINLY COULD BECOME MORE RELEVANT.

09:46AM 9        BUT I WOULD SAY IN THE ABSTRACT, THAT IS TRUE, IF WE

09:46AM 10   ACCEPT FOR THE MOMENT THAT IT IS TRUE.  IF IT IS JUST A FACT

09:46AM 11   THAT WITHIN SILICON VALLEY EXAGGERATION OCCURS, THAT ISN'T

09:47AM 12   RELEVANT.  IT HAS TO SOMEHOW BE TIED TO AN ELEMENT THAT IS

09:47AM 13   RELEVANT FOR THIS JURY'S DETERMINATION, AND I WOULD THINK THAT

09:47AM 14   THE MOST LIKELY PLACES FOR THAT TIE TO OCCUR ARE TO KNOWLEDGE

09:47AM 15   OR TO INTENT OF MS. HOLMES.

09:47AM 16       THE COURT:  SO I LOOKED AT THIS -- YOU KNOW, THE

09:47AM 17   INTERESTING THING, MR. SCHENK, AND I THINK YOU AND YOUR

09:47AM 18   COLLEAGUES OPPOSITE RECOGNIZE THIS, IS THAT MANY OF THESE

09:47AM 19   MOTIONS ARE RELATED AND OVERLAP IN A VARIETY OF WAYS.

09:47AM 20       THIS IS ONE WHERE I THOUGHT IT MIGHT OVERLAP WITH -- IF

09:47AM 21   THERE'S EVIDENCE IN FRONT OF THE JURY, AND LET'S FACE IT, THIS

09:47AM 22   JURY IS GOING TO BE HALED FROM SILICON VALLEY, IF THERE'S

09:47AM 23   EVIDENCE THAT THERE IS A, I'LL CALL IT A CULTURE OR AT LEAST

09:47AM 24   THIS IS SOMETHING THAT PROMOTERS DO, AND IF THAT'S PERMITTED,

09:47AM 25   WON'T YOU AND YOUR TEAM BE PERMITTED TO THEN SAY, WELL, WHILE

13

09:48AM  1    YOU'VE HEARD THAT TYPE OF CONDUCT IS SOMEWHAT NOT UNUSUAL FOR

09:48AM  2    PROMOTERS IN SILICON VALLEY, BUT WHAT IS DIFFERENT FROM THAT IN

09:48AM  3    THIS CASE IS THE DEFENDANT DID X, WOULDN'T YOU BE PERMITTED TO

09:48AM  4    DO THAT?  AND DOESN'T THAT LEVEL THAT PLAYING FIELD SOMEHOW?

09:48AM  5          MR. SCHENK:  YES.  I SEE THE POINT THE COURT IS

09:48AM  6    MAKING.  CERTAINLY IF THE DEFENSE IS ALLOWED TO SAY THAT THE

09:48AM  7    ACTIONS OF THERANOS, OR THE ACTIONS OF MS. HOLMES ARE

09:48AM  8    CONSISTENT WITH ACTIONS TAKEN BY OTHER STARTUPS IN

09:48AM  9    SILICON VALLEY, THE GOVERNMENT CERTAINLY SHOULD BE ALLOWED TO

09:48AM 10    SAY LET'S LOOK A LITTLE BIT MORE CLOSELY AT THAT.  IS WHAT

09:48AM 11    MS. HOLMES OR IS WHAT THERANOS DID EXACTLY LIKE, QUITE LIKE, OR

09:48AM 12    QUITE DIFFERENT FROM THE ACTIONS OF OTHER COMPANIES?

09:48AM 13       I THINK THE COURT IS RIGHT TO POINT THAT OUT, AND I THINK

09:48AM 14    THE COURT IS REFERRING TO OR IS HINTING AT MOTIONS REGARDING

09:48AM 15    TRADE SECRET PRACTICES WHEN IT SAID SOME OF THESE MOTIONS

09:48AM 16    OVERLAP WITH OTHER MOTIONS IN LIMINE THAT ARE NOW BEFORE THE

09:49AM 17    COURT.

09:49AM 18       THE ONE THING I WOULD CAUTION AGAINST THERE IS THE DEFENSE

09:49AM 19    IS PAINTING A VERY BROAD BRUSH WHEN THEY'RE SAYING TRADE SECRET

09:49AM 20    PRACTICES AT THERANOS EXPLAIN SILOING, EXPLAIN THE

09:49AM 21    NONDISCLOSURE -- THE USE OF -- THE AGGRESSIVE USE OF

09:49AM 22    NONDISCLOSURE.

09:49AM 23       AND WHAT I WOULD CAUTION AGAINST IS JUST THE ARGUMENT THAT

09:49AM 24    THE DEFENSE WOULD BE ALLOWED TO SAY LET ME EXPLAIN TO YOU THE

09:49AM 25    CULTURE OF SILICON VALLEY AND WHY THERANOS LOOKS LIKE THAT,

14

| | | |
|---|---|---|
| 09:49AM | 1 | LIKE THERANOS FITS WITHIN BECAUSE I THINK WHAT THAT DOES IS THE |
| 09:49AM | 2 | CART BEFORE THE HORSE IS SAYING WHAT HAS OCCURRED AT THERANOS |
| 09:49AM | 3 | IS COMMON, IS NORMAL, IS ACCEPTABLE, AND I'M NOT SURE WHICH |
| 09:49AM | 4 | ELEMENT IT SPEAKS TO.  I'M NOT SURE WHICH OF THE SORT OF |
| 09:49AM | 5 | DECISIONS THE JURY IS GOING TO HAVE TO MAKE, DOES THAT SORT OF |
| 09:49AM | 6 | TESTIMONY OR EVEN ARGUMENT CLARIFY FOR THE JURY? |
| 09:49AM | 7 | THE COURT:  THIS TOUCHES ON, AND I DON'T WANT TO GET |
| 09:50AM | 8 | AHEAD OF OURSELF, FORGIVE ME, BUT IT TOUCHES ON ONE OF THE |
| 09:50AM | 9 | MOTIONS ABOUT THE PRECLUSION, THE POTENTIAL PRECLUSION OF |
| 09:50AM | 10 | EVIDENCE ABOUT LAVISH SPENDING LIFESTYLE, ET CETERA. |
| 09:50AM | 11 | I THINK THIS IS ONE OF THOSE TYPE OF SITUATIONS WHERE, |
| 09:50AM | 12 | WELL, IS IT NORMAL FOR CEO'S TO FLY IN PRIVATE PLANES?  TO HAVE |
| 09:50AM | 13 | CARS THAT ARE DRIVEN BY DRIVERS?  ET CETERA, ET CETERA.  AND |
| 09:50AM | 14 | THEIR LIFESTYLE, HOW IS THAT DIFFERENT? |
| 09:50AM | 15 | WELL, THERE MIGHT BE DIFFERENCES.  THIS IS KIND OF THE |
| 09:50AM | 16 | SAME SITUATION WHERE I LOOK AT THIS AND I THOUGHT, WELL, I |
| 09:50AM | 17 | THINK THE GOVERNMENT WOULD BE PERMITTED TO, IF THIS EVIDENCE |
| 09:50AM | 18 | WERE TO COME IN, YOU WOULD BE PERMITTED TO CERTAINLY DRAW THE |
| 09:50AM | 19 | JURY'S ATTENTION TO EVIDENCE THAT WHILE THAT MIGHT HAVE A |
| 09:50AM | 20 | CONCURRENT THEME IN SILICON VALLEY, THIS CASE IS DIFFERENT FOR |
| 09:50AM | 21 | THESE REASONS BECAUSE THIS DEFENDANT DID X, MARKETED THIS AS |
| 09:51AM | 22 | ALTRUISTIC IN HER DESIRE TO DO SOMETHING, BUT THE ALTRUISM |
| 09:51AM | 23 | CHANGED BECAUSE OF X, HER LIFESTYLE, THOSE TYPES OF THINGS. |
| 09:51AM | 24 | I'M NOT SUGGESTING WHAT THE EVIDENCE SHOWS, BUT IT'S THE |
| 09:51AM | 25 | ARGUMENT THAT YOU WOULD MAKE.  I'M TRYING TO SEE WHETHER OR NOT |

15

09:51AM 1      THAT PROTECTS THE GOVERNMENT FROM THE UNTOWARD ISSUE THAT

09:51AM 2      YOU'RE TALKING ABOUT.

09:51AM 3              MR. SCHENK:  YES, I AGREE WITH THE COURT.  AND WHILE

09:51AM 4      I'M NOT THE ATTORNEY THAT WILL ARGUE THE LIFESTYLE MOTION

09:51AM 5      BEFORE THE COURT, I WOULD NOTE THAT ONE DIFFERENCE THERE IS

09:51AM 6      THAT THE RELEVANCE OF THAT EVIDENCE IS THAT IT SPEAKS DIRECTLY

09:51AM 7      TO INTENT.  ONE HAS AN INTENT TO CONTINUE A SCHEME IF THE

09:51AM 8      SCHEME ENCOURAGES, FOSTERS, AND PAYS FOR A LIFESTYLE THAT ONE

09:51AM 9      APPRECIATES.

09:51AM 10         SO THE ABILITY TO DRAW THE LINE BETWEEN THE EVIDENCE THAT

09:51AM 11     IS IN QUESTION AND THE ELEMENT IS QUITE A DIRECT LINE.

09:51AM 12             THE COURT:  AND I THINK THE GIST OF YOUR MOTION IS

09:52AM 13     THAT MS. HOLMES AND HER TEAM SHOULD NOT BE PERMITTED TO ARGUE

09:52AM 14     TO THE JURY THAT OTHER COMPANIES, OTHER CEO'S, OTHER

09:52AM 15     INDIVIDUALS DO THIS EXACT SAME CONDUCT, AND, THEREFORE,

09:52AM 16     MS. HOLMES SHOULD BE ACQUITTED FOR THAT REASON BECAUSE THEY'RE

09:52AM 17     NOT PROSECUTED.

09:52AM 18             MR. SCHENK:  PRECISELY.

09:52AM 19             THE COURT:  AND I'LL ASK THE DEFENSE WHETHER THAT'S

09:52AM 20     AN ARGUMENT THAT THEY SEEK TO ADVANCE.

09:52AM 21             MR. SCHENK:  PRECISELY.  RIGHT.

09:52AM 22             THE COURT:  ANYTHING ELSE?  I INTERRUPTED YOU WITH

09:52AM 23     MY QUESTION.

09:52AM 24             MR. SCHENK:  NO.  SUBMIT IT.  THANK YOU.

09:52AM 25             THE COURT:  ALL RIGHT.  THANK YOU.

16

| | | |
|---|---|---|
| 09:52AM | 1 | MS. ROPER:  GOOD MORNING, YOUR HONOR. |
| 09:52AM | 2 | THE COURT:  YOU SHOULD STATE YOUR APPEARANCE FOR THE |
| 09:52AM | 3 | RECORD. |
| 09:52AM | 4 | MS. ROPER:  YES, YOUR HONOR. |
| 09:52AM | 5 | SEEMA ROPER ON BEHALF OF MS. HOLMES. |
| 09:52AM | 6 | THE COURT:  THANK YOU. |
| 09:52AM | 7 | MS. ROPER:  YOUR HONOR, I'D LIKE TO FIRST TALK ABOUT |
| 09:52AM | 8 | THE GOVERNMENT'S FIRST PART OF ITS MOTION REGARDING THE CONDUCT |
| 09:52AM | 9 | -- WHAT IS VICTIM CONDUCT EVIDENCE. |
| 09:52AM | 10 | THE PARTIES LARGELY SEEM TO BE IN AGREEMENT AS TO THE |
| 09:53AM | 11 | SCOPE OF ADMISSIBILITY AS TO THIS EVIDENCE.  THE PARTIES AGREE |
| 09:53AM | 12 | THAT THE EVIDENCE COULD BE ADMITTED IN CERTAIN CIRCUMSTANCES, |
| 09:53AM | 13 | FOR EXAMPLE, TO SHOW MATERIALITY, TO SHOW AS IMPEACHMENT |
| 09:53AM | 14 | EVIDENCE. |
| 09:53AM | 15 | YOUR HONOR, IN THEIR BRIEFS THE GOVERNMENT CITES TO |
| 09:53AM | 16 | UNITED STATES VERSUS YANG WHERE ANOTHER DISTRICT IN THIS COURT |
| 09:53AM | 17 | FACING AN IDENTICAL MOTION HELD THAT THIS KIND OF EVIDENCE |
| 09:53AM | 18 | COULD BE ADMITTED FOR THOSE TWO PURPOSES. |
| 09:53AM | 19 | WE WOULD ALSO ARGUE, YOUR HONOR, THAT THIS EVIDENCE COULD |
| 09:53AM | 20 | BE ADMITTED TO SHOW INTENT, A THIRD PURPOSE.  THAT WAS NOT ONE |
| 09:53AM | 21 | OF THE PURPOSES FOR WHICH THE DEFENDANTS IN YANG HAD PROFFERED |
| 09:53AM | 22 | TO THE COURT, HOWEVER, I BELIEVE THAT THAT IS ANOTHER |
| 09:53AM | 23 | ADMISSIBLE PURPOSE FOR THIS EVIDENCE. |
| 09:53AM | 24 | YOUR HONOR, BECAUSE THE PARTIES AGREE THAT THERE ARE |
| 09:53AM | 25 | ADMISSIBLE PURPOSES FOR THIS EVIDENCE, A BROAD ORDER DENYING, A |

09:54AM  1    BROAD ORDER DENYING THIS EVIDENCE IN WHOLE, OR EXCUSE ME,

09:54AM  2    GRANTING -- DENYING THE ADMISSION OF THIS EVIDENCE IN WHOLE

09:54AM  3    WOULD BE IMPROPER.  I THINK IT WOULD BE INCREDIBLY HARD TO DRAW

09:54AM  4    THE LINES AT THIS TIME WITHOUT THE EVIDENCE BEFORE US.

09:54AM  5        YOUR HONOR, WE REQUEST THAT THE COURT WAIT AND LET THE

09:54AM  6    GOVERNMENT RAISE ITS OBJECTIONS AT TRIAL TO SPECIFIC EVIDENCE.

09:54AM  7            THE COURT:  WELL, LET ME -- I'M SORRY TO INTERRUPT

09:54AM  8    YOU.

09:54AM  9            MS. ROPER:  YES.

09:54AM  10           THE COURT:  LET ME ASK YOU, AS I PROMISED MR. SCHENK

09:54AM  11   I WOULD, ARE YOU GOING TO ARGUE THAT OTHER COMPANIES, OTHER

09:54AM  12   CEO'S, OTHER NEW COMPANIES HAVE ENGAGED IN THIS CONDUCT AND

09:54AM  13   THEY WEREN'T PROSECUTED?

09:54AM  14           MS. ROPER:  I'M SORRY.  YOUR HONOR, I WAS ADDRESSING

09:54AM  15   THE OTHER FIRST.

09:54AM  16       BUT TO YOUR QUESTION, NO, WE DO NOT INTEND TO MAKE THAT

09:54AM  17   ARGUMENT AT TRIAL.  WE ARE NOT GOING TO BE MAKING A SELECTIVE

09:54AM  18   PROSECUTION ARGUMENT DURING TRIAL.

09:54AM  19           THE COURT:  OKAY.

09:54AM  20           MS. ROPER:  WE AGREE WITH THAT, YOUR HONOR.

09:54AM  21       BUT WE DO BELIEVE THAT THAT EVIDENCE ABOUT SILICON VALLEY

09:54AM  22   CULTURE SHOULD BE ADMITTED FOR OTHER PURPOSES, THE SAME

09:54AM  23   PURPOSES OF MATERIALITY, INTENT, IMPEACHMENT.

09:54AM  24           THE COURT:  WHAT IS THE DIFFERENCE, THEN?

09:54AM  25           MS. ROPER:  THE CONDUCT EVIDENCE?

18

09:54AM  1              THE COURT:  YES.

09:55AM  2              MS. ROPER:  I THINK THEIR -- AND I COULD BE WRONG.

09:55AM  3      THE GOVERNMENT CAN SAY.

09:55AM  4          I THINK THE GOVERNMENT'S MOTION IS GOING BEYOND JUST THE

09:55AM  5      SILICON VALLEY CULTURE EVIDENCE.  I COULD BE WRONG.

09:55AM  6          I THINK THEY'RE TALKING ABOUT OTHER TYPES OF EVIDENCE IN

09:55AM  7      WHICH THE INVESTORS, FOR EXAMPLE, MAY HAVE KNOWN BEYOND JUST --

09:55AM  8      BEYOND WHAT MS. HOLMES MAY HAVE KNOWN ABOUT SILICON VALLEY.  I

09:55AM  9      DON'T THINK THAT THEIR MOTION IS LIMITED.

09:55AM 10          BUT IF IT IS LIMITED TO JUST THAT PURPOSE, AND I COULD BE

09:55AM 11      WRONG, YOUR HONOR, IF IT IS ONLY LIMITED TO THIS CULTURE OF

09:55AM 12      SECRECY, OR EXCUSE ME, THIS SILICON VALLEY CULTURE, THEN

09:55AM 13      YOUR HONOR IS CORRECT, THAT WE WOULDN'T BE ADMITTING IT FOR

09:55AM 14      THAT PURPOSE, ADMITTING IT FOR THE PURPOSE OF A SELECTIVE

09:55AM 15      PROSECUTION ARGUMENT.

09:55AM 16              THE COURT:  SO WHAT IS THE IMPEACHMENT THAT YOU

09:55AM 17      MENTIONED?

09:55AM 18              MS. ROPER:  FOR EXAMPLE, YOUR HONOR, IF SOMEBODY

09:55AM 19      TESTIFIED THAT THEY -- IN SILICON VALLEY NOBODY USES

09:56AM 20      EXAGGERATION, AND WE KNOW THAT IN SILICON VALLEY THAT IS

09:56AM 21      SOMETHING THAT IS DONE, WE WOULD WANT TO ADMIT THAT EVIDENCE TO

09:56AM 22      IMPEACH A WITNESS.

09:56AM 23              THE COURT:  IF A GOVERNMENT WITNESS TESTIFIES THAT

09:56AM 24      THERE'S NEVER BEEN EXAGGERATION IN MARKETING OF A NEW PRODUCT?

09:56AM 25              MS. ROPER:  CORRECT, YOUR HONOR.

09:56AM 1     THE COURT:  I SEE.  THEN YOU WOULD IMPEACH AND SAY,

09:56AM 2     WELL, CERTAINLY.  LET'S TALK ABOUT THE LATE STEVE JOBS, AND YOU

09:56AM 3     COULD JUST PULL ANYBODY OUT AND SAY OF COURSE.

09:56AM 4         MS. ROPER:  ANY OF THE BIG STARTUP COMPANIES, ANY

09:56AM 5     BIG INVESTORS, ANY BIG COMPANIES.  LIKE EARLIER YOU GAVE THE

09:56AM 6     EXAMPLE OF LARRY ELLISON.  EXACTLY.

09:56AM 7         THE COURT:  OKAY.  ALL RIGHT.

09:56AM 8         MS. ROPER:  AT THIS TIME, YOUR HONOR, WE WOULD ASK

09:56AM 9     THE COURT TO DENY THE GOVERNMENT'S MOTION.

09:56AM 10        THE COURT:  OKAY.  THANK YOU.

09:56AM 11      MR. SCHENK.

09:56AM 12        MR. SCHENK:  JUST VERY BRIEFLY, YOUR HONOR.

09:56AM 13      THE GOVERNMENT, FIRST, DOES NOT ANTICIPATE ANYBODY TAKING

09:56AM 14    THE STAND AND CATEGORICALLY SAYING THAT TYPE OF EXAGGERATION IS

09:56AM 15    NOT EXISTENT IN SILICON VALLEY.  SO I DON'T ANTICIPATE THE NEED

09:57AM 16    FOR IMPEACHMENT ON THAT SUBJECT TO BECOME NECESSARY IN THIS

09:57AM 17    TRIAL.

09:57AM 18      OTHER THAN THAT, I'LL SUBMIT TO THE COURT.  I DON'T HAVE

09:57AM 19    ANYTHING TO ADD.

09:57AM 20        THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU.

09:57AM 21      WELL, I LOOKED AT THIS MOTION, AND IT SEEMED TO THE COURT

09:57AM 22    THAT WHAT THE GOVERNMENT'S CONCERN WAS, THAT PRIMARILY WAS THAT

09:57AM 23    THE DEFENSE MAY SAY -- AGAIN, COUNSEL PUT IT AS SELECTIVE

09:57AM 24    PROSECUTION -- OTHER PEOPLE, THAT THE CULTURE IN SILICON VALLEY

09:57AM 25    WITH NEW COMPANIES IS THAT THERE'S A LOT OF STATEMENTS, AND WE

| | | |
|---|---|---|
| 09:57AM | 1 | ALL KNOW THAT THAT'S WHAT HAPPENS.  AND WHY WAS MS. HOLMES |
| 09:57AM | 2 | PROSECUTED WHEN NOBODY ELSE WAS PROSECUTED FOR SIMILAR CONDUCT? |
| 09:57AM | 3 | I'M RELIEVED TO HEAR THAT THE DEFENSE IS NOT GOING TO |
| 09:57AM | 4 | PROFFER THAT ARGUMENT, AND I APPRECIATE THAT.  I THINK IT'S AN |
| 09:57AM | 5 | INAPPROPRIATE ARGUMENT, AND I THINK THE DEFENSE RECOGNIZES |
| 09:57AM | 6 | THAT. |
| 09:57AM | 7 | SO FOR THAT PART OF THE GOVERNMENT'S MOTION, IF THAT'S |
| 09:58AM | 8 | WHAT YOUR MOTION WAS POINTED TOWARDS, I GRANT THE MOTION AS TO |
| 09:58AM | 9 | THAT TO PRECLUDE THE DEFENSE FROM ARGUING THAT PARTICULAR |
| 09:58AM | 10 | ARGUMENT THAT THIS CONDUCT IS SIMILAR AS OTHER SILICON VALLEY |
| 09:58AM | 11 | COMPANIES ENGAGED IN, AND THEY WERE NOT PROSECUTED, AND, |
| 09:58AM | 12 | THEREFORE, THE JURY SHOULD CONSIDER THAT.  THAT'S NOT |
| 09:58AM | 13 | APPROPRIATE. |
| 09:58AM | 14 | AS TO THE CULTURE OF SILICON VALLEY AND WHAT IS, WHAT IS |
| 09:58AM | 15 | THAT CULTURE AND HOW MUCH OF THAT SHOULD BE INTRODUCED, I THINK |
| 09:58AM | 16 | IF THE GOVERNMENT'S MOTION SEEKS TO PRECLUDE ANY TALK ABOUT THE |
| 09:58AM | 17 | SILICON VALLEY STARTUP CULTURE AND THAT, AND I DON'T THINK |
| 09:58AM | 18 | THAT'S WHAT YOU'RE ASKING TO DO.  MY SENSE IS THAT THERE'S |
| 09:58AM | 19 | GOING TO BE SOME NATURAL DISCUSSION ABOUT STARTUP COMPANIES, |
| 09:58AM | 20 | AND HOW THEY OPERATE, AND WHAT WAS DIFFERENT ABOUT THIS, IF |
| 09:59AM | 21 | THERE WAS SOMETHING DIFFERENT ABOUT THIS PARTICULAR COMPANY. |
| 09:59AM | 22 | SO I CAN'T TODAY SAY THAT I'M GOING TO PRECLUDE THAT |
| 09:59AM | 23 | CONVERSATION BECAUSE I THINK IT ACTUALLY, IT'S PROBABLY |
| 09:59AM | 24 | INHERENT, SOME OF THE GOVERNMENT'S CASE IS PREDICATED ON THAT. |
| 09:59AM | 25 | SO I'M NOT GOING TO GIVE A BLANKET EXCLUSION OF THAT. |

09:59AM 1      BUT I DO THINK THAT THIS IS SOMETHING THAT THE COURT WILL

09:59AM 2  BE MINDFUL OF AND REVIEW AS THE EVIDENCE COMES IN.

09:59AM 3      AND I THINK IT'S SOMETHING THAT WE'LL RULE ON AS THE

09:59AM 4  EVIDENCE IS INTRODUCED CONCURRENT WITH THE COURT'S ORDER HERE

09:59AM 5  THAT THE DEFENSE IS NOT TO PRESENT THIS ARGUMENT.

09:59AM 6      AND THAT'S WHAT I'LL SAY NOW.  AND AS I SAID, YOU'LL GET

09:59AM 7  MORE INFORMATION IN THE COURT'S FINAL ORDER.

09:59AM 8      ALL RIGHT.  THE NEXT MOTION THAT I SHOW IS, AGAIN, DOCKET

09:59AM 9  588, AND IT'S THE GOVERNMENT'S MOTION NUMBER 2 TO PRECLUDE THE

10:00AM 10  DEFENSE FROM REFERENCING PUNISHMENT IN FRONT OF THE JURY.

10:00AM 11      MR. SCHENK.

10:00AM 12          MR. SCHENK:  YES.  THANK YOU, YOUR HONOR.

10:00AM 13      I THINK SIMILARLY WITH THIS ONE WE CAN DISPENSE WITH IT

10:00AM 14  RATHER QUICKLY.  LET ME JUST MAKE A COUPLE OF POINTS.

10:00AM 15      THE FIRST IS THAT THE PARTIES AGREE THAT STATEMENTS

10:00AM 16  REGARDING PUNISHMENT, PENALTIES THE DEFENDANT MAY FACE, ARE

10:00AM 17  INAPPROPRIATE.  AND AS THE COURT KNOWS, THIS IS A STANDARD

10:00AM 18  MOTION IN LIMINE FILED IN MANY CASES.  WHERE THE PARTIES SEEM

10:00AM 19  TO PART WAYS IS WHAT IN THE BRIEFING IS SORT OF CALLED THE

10:00AM 20  "MORE SUBTLE REFERENCES TO PUNISHMENT," FOR INSTANCE, THE

10:00AM 21  PHRASE "SERIOUS CONSEQUENCES."

10:00AM 22      AND SO THERE'S EASY STEPS, AND, THAT IS, NO REFERENCE TO

10:00AM 23  PUNISHMENT, SIGNIFICANT TIME, FELONY, THINGS LIKE THAT.  IT'S

10:00AM 24  INAPPROPRIATE TO ASK THE JURY TO EVALUATE SOMETHING THAT ISN'T

10:00AM 25  BEFORE THEM, AND IT'S CLEARLY THE PROVINCE OF THE COURT SHOULD

10:00AM 1    WE GET TO THAT KIND OF STATEMENT.

10:00AM 2        FOR THE MORE CHALLENGING TOPIC, THE SUBTLE REFERENCES TO

10:01AM 3    PUNISHMENT, THE REASON THE COURT SHOULD PROHIBIT THOSE, IS

10:01AM 4    BECAUSE THE SAME LOGIC APPLIES.  THE REASON YOU DON'T PUT

10:01AM 5    PUNISHMENT IN FRONT OF THE JURY IS BECAUSE YOU WANT THEM TO

10:01AM 6    MAKE THEIR DECISION BASED ON RELEVANT EVIDENCE PUT BEFORE THEM.

10:01AM 7    DID THE GOVERNMENT MEET ITS BURDEN OF PROVING THE ELEMENTS

10:01AM 8    BEYOND A REASONABLE DOUBT?

10:01AM 9        AND TO ALLOW THE JURY TO HEAR WHAT ARE THE MORE SUBTLE

10:01AM 10   REFERENCES, "SERIOUS CONSEQUENCES," FOR INSTANCE, FAILS FOR THE

10:01AM 11   SAME REASON.  IT ASKS THE JURY TO EVALUATE EVIDENCE AND TO,

10:01AM 12   THEREFORE, BE INFECTED BY FACTS THAT ARE AREN'T, QUESTIONS OF

10:01AM 13   WHETHER THIS ELEMENT WAS PROVEN OR WHETHER THIS ELEMENT WAS NOT

10:01AM 14   PROVEN.

10:01AM 15       NOW, THERE IS A CASE FROM JUDGE ORRICK, AN ORDER FROM

10:01AM 16   JUDGE ORRICK IN 2017.

10:01AM 17           THE COURT:  WAY UP IN SAN FRANCISCO?

10:01AM 18           MR. SCHENK:  IT COULDN'T BE FURTHER FROM US.

10:01AM 19       AND I WOULD URGE THE COURT FOR TWO REASONS NOT TO FOLLOW

10:01AM 20   IT.  FIRST, THAT CASE HAD COOPERATORS WHO HAD PLED GUILTY AND

10:02AM 21   WERE GOING TO TESTIFY.  SO PUNISHMENT PENALTIES WERE COMING IN,

10:02AM 22   IN THE TRIAL.  THAT IS NOT THE CASE HERE.

10:02AM 23       THE SECOND REASON IS SUBTLE REFERENCES TO PUNISHMENT SUCH

10:02AM 24   AS "SERIOUS CONSEQUENCES" REALLY ARE STILL REFERENCES TO

10:02AM 25   PUNISHMENT.  AND JUDGE ORRICK SORT OF ACCEPTS BUT DOESN'T

10:02AM 1    EXPLAIN WHY THERE'S A DISTINCTION BETWEEN THE TWO.  AND I THINK

10:02AM 2    THAT THE BETTER ARGUMENT REALLY IS THAT "SERIOUS CONSEQUENCES"

10:02AM 3    IS JUST LIKE SAYING A LARGE AMOUNT OF PRISON OR A FELONY OR

10:02AM 4    SOME OF THE OTHER CLEARLY INAPPROPRIATE ARGUMENTS TO MAKE.

10:02AM 5        WE WOULD ASK THE COURT TO CHART ITS OWN PATH AND NOT

10:02AM 6    FOLLOW THE NONBINDING FROM JUDGE ORRICK, AGAIN, NOTING THAT

10:02AM 7    MOST OF THE TYPES OF ARGUMENTS THAT THE PARTIES AGREE ON HERE

10:02AM 8    IT WOULD BE INAPPROPRIATE TO MAKE REFERENCE TO.

10:02AM 9            THE COURT:  THANK YOU.

10:03AM 10           MS. ROPER:  THANK YOU, YOUR HONOR.

10:03AM 11       YOUR HONOR, MS. HOLMES ACKNOWLEDGES THAT IT WOULD BE

10:03AM 12   INAPPROPRIATE TO IDENTIFY THE PARTICULARS OF A PUNISHMENT THAT

10:03AM 13   SHE FACES, FOR EXAMPLE, SPECIFIC TERM OF IMPRISONMENT.

10:03AM 14       BUT THE GOVERNMENT'S MOTION GOES TOO FAR IN ASKING FOR

10:03AM 15   WHAT THEY CALL THESE "SUBTLE REFERENCES TO PUNISHMENT" BECAUSE

10:03AM 16   THEY ARE NOT IN FACT REFERENCES TO PUNISHMENT AT ALL.

10:03AM 17   CONSEQUENCES TO A DEFENDANT EXTENDS BEYOND JUST THE TIME THAT

10:03AM 18   THEY FACE IN PRISON.

10:03AM 19       THE GOVERNMENT HAS NOT IDENTIFIED ANY CASES IN WHICH A

10:03AM 20   COURT HAS GRANTED THIS BROAD MOTION OVER THE OBJECTION OF

10:03AM 21   DEFENSE COUNSEL.  IN FACT, IT ONLY CITES TO CASES IN WHICH THE

10:03AM 22   COURTS HAVE PROHIBITED DIRECT REFERENCES TO PUNISHMENT.

10:03AM 23       TWO COURTS IN THIS DISTRICT HAVE DENIED IDENTICAL

10:03AM 24   GOVERNMENT MOTIONS SEEKING TO EXCLUDE REFERENCES THAT THEY TERM

10:03AM 25   TO BE "SUBTLE REFERENCES TO PUNISHMENT."

24

10:03AM 1          THE COURT:  WELL, IS IT THE DEFENSE THOUGHT THAT YOU

10:03AM 2    WOULD RAISE IN A SUBTLE MANNER SOMETHING LIKE "THIS CASE HAS

10:04AM 3    SERIOUS CONSEQUENCES TO MS. HOLMES"?

10:04AM 4        IS THAT WHAT YOU INTEND TO DO?

10:04AM 5          MS. ROPER:  YOUR HONOR, I THINK, FOR EXAMPLE,

10:04AM 6    PROSECUTORS, DEFENSE COUNSEL LIKE OFTEN AT THE BEGINNING OF THE

10:04AM 7    TRIAL, PERHAPS IN THEIR OPENING OR IN THEIR CLOSING STATEMENT

10:04AM 8    AT THE END OF THE TRIAL WILL REMIND JURORS ABOUT THEIR SERIOUS

10:04AM 9    RESPONSIBILITY, THEIR SOLEMN OATH IN THE CASE.  THEY MAY REMIND

10:04AM 10   JURORS TO PAY SPECIFIC ATTENTION BECAUSE THE CASE HAS SERIOUS

10:04AM 11   CONSEQUENCES TO THE DEFENDANT.  I DON'T THINK --

10:04AM 12         THE COURT:  THAT'S WHERE THIS COMES IN.  IT'S

10:04AM 13   ARGUMENT.  IT'S NOT EVIDENCE, IT'S ARGUMENT.

10:04AM 14       THE QUESTION IS, IS IT INAPPROPRIATE ARGUMENT?

10:04AM 15       ISN'T IT COMMON KNOWLEDGE THAT ANY FEDERAL CRIMINAL

10:04AM 16   PROSECUTION IS A SERIOUS MATTER?

10:04AM 17         MS. ROPER:  CORRECT, YOUR HONOR.  THERE'S -- AND

10:04AM 18   THAT'S MY POINT.  THESE ARE CONSEQUENCES THAT EXTEND BEYOND

10:04AM 19   JUST GOING TO PRISON.  THIS IS SOMETHING THAT STAYS WITH

10:04AM 20   SOMEONE AS A CONVICTED FELON FOR THE REST OF THEIR LIFE WHETHER

10:04AM 21   THEY --

10:04AM 22         THE COURT:  WELL, THAT'S PART OF PUNISHMENT, TOO,

10:04AM 23   ISN'T IT?  YOU TALK ABOUT MAYBE FINES AND THOSE TYPES OF

10:04AM 24   THINGS.  THAT IS PART OF PUNISHMENT.

10:05AM 25         MS. ROPER:  I THINK, YOUR HONOR, THE CONCERN THAT

25

10:05AM  1       THE CASES HAVE, FOR EXAMPLE, IN U.S. VERSUS SHANNON, THE

10:05AM  2  CONCERN IS ACTUALLY THAT THEY JURY WILL GO BEYOND THEIR ROLE AS

10:05AM  3  FACT FINDER AND TRY TO GET INTO YOUR HONOR'S ROLE AT THE END OF

10:05AM  4  THE CASE, IF IT GETS INTO THE SECOND PHASE, AT SENTENCING.

10:05AM  5       THESE PHRASES, THESE REFERENCES TO THE SERIOUSNESS OF THE

10:05AM  6  CASE, THEY DON'T ASK THE JURY TO STEP INTO THAT ROLE.  THEY

10:05AM  7  DON'T DISTRACT THE JURY FROM THINKING ABOUT WHAT THE POSSIBLE

10:05AM  8  SENTENCE MIGHT BE AT THE END OF THE TRIAL.  THAT'S THE

10:05AM  9  DIFFERENCE BETWEEN THE TWO, AND IT'S A SUBTLE DIFFERENCE.

10:05AM  10       THE COURT:  SO THIS CASE HAS SERIOUS CONSEQUENCES

10:05AM  11  FOR MY CLIENT IS WHAT YOU'RE SUGGESTING YOUR TEAM MIGHT PUT

10:05AM  12  BEFORE THE JURY EITHER IN OPENING OR CLOSING?

10:05AM  13       MS. ROPER:  PERHAPS, YOUR HONOR.  AND IN CONTEXT FOR

10:05AM  14  THE EXAMPLE THAT I GAVE, IN THE CONTEXT OF WHY IT'S VERY

10:05AM  15  IMPORTANT FOR THE JURY TO PAY ATTENTION, TO REMEMBER THEIR

10:05AM  16  OATH.

10:05AM  17       YOUR HONOR, AGAIN, THIS U.S. V. WILLIAMS AND U.S. V.

10:06AM  18  GAINES, TWO DIFFERENT DISTRICT COURTS IN THIS DISTRICT, WHO

10:06AM  19  FACE IDENTICAL MOTIONS FOUND TWO TYPES OF STATEMENTS.

10:06AM  20       THE CASE HAS SERIOUS CONSEQUENCES FOR THE DEFENDANT OR

10:06AM  21  YOUR DECISION WILL HAVE CONSEQUENCES ARE DIFFERENT THAN THOSE

10:06AM  22  THAT ARE PROHIBITED UNDER THE LAW.

10:06AM  23       THE COURT:  WHAT IS IT THAT THE DEFENSE SEEKS TO

10:06AM  24  GAIN BY INFORMING EITHER OF THOSE TWO STATEMENTS?  WHAT DO YOU

10:06AM  25  THINK THAT DOES?

10:06AM 1          MS. ROPER:  YOUR HONOR, IT'S JUST A REMINDER TO THE

10:06AM 2    JURY THAT THESE ARE -- THIS IS A SIGNIFICANT MATTER.  IT'S

10:06AM 3    GOING TO BE A LONG TRIAL.  WE WANT TO MAKE SURE THAT THE JURORS

10:06AM 4    UNDERSTAND AND APPRECIATE THAT THIS IS AN IMPORTANT CASE AND

10:06AM 5    THAT THEY SHOULD BE PAYING ATTENTION THROUGH THIS TRIAL.

10:06AM 6    THAT'S THE GOAL.

10:06AM 7          THE COURT:  SO A PHRASE LIKE THAT, I DON'T THINK THE

10:06AM 8    GOVERNMENT WOULD HAVE ANY OBJECTION IF YOU SAID "THIS IS AN

10:06AM 9    IMPORTANT CASE."

10:07AM 10     I THINK THEIR OBJECTION IS "THIS IS AN IMPORTANT CASE

10:07AM 11    BECAUSE IT HAS SERIOUS CONSEQUENCES FOR MY CLIENT."

10:07AM 12         MS. ROPER:  YOUR HONOR, I APPRECIATE THAT THAT'S THE

10:07AM 13    CONCERN.  I DON'T THINK THAT THAT PHRASE IS A REFERENCE TO THE

10:07AM 14    PUNISHMENT SHE SEEKS -- OR THAT SHE MAY FACE, AND I DON'T

10:07AM 15    BELIEVE THAT THE LAW PROHIBITS ANYTHING MORE THAN JUST THESE

10:07AM 16    DIRECT REFERENCES TO PUNISHMENT.

10:07AM 17         THE COURT:  WELL, I DON'T KNOW WHY -- I JUST DON'T

10:07AM 18    UNDERSTAND WHY YOUR TEAM WOULD WANT TO FLIRT WITH THE MARGINS

10:07AM 19    OF THIS.  YOU KNOW, AND YOUR TEAM KNOWS, THAT YOU CAN'T GET UP

10:07AM 20    AND SAY, "PLEASE BE CAREFUL BECAUSE MY CLIENT CAN GO TO PRISON

10:07AM 21    DEPENDING ON YOUR JUDGMENT."  YOU CAN'T DO THAT.  YOU'RE NOT

10:07AM 22    GOING TO.

10:07AM 23         MS. ROPER:  I AGREE, YOUR HONOR, WE'RE NOT GOING TO

10:07AM 24    BE SAYING THAT.

10:07AM 25         THE COURT:  NOBODY IS GOING TO BE SAYING THAT.

| | | |
|---|---|---|
| 10:07AM | 1 | RIGHT. |
| 10:08AM | 2 | AND I SOMETIMES AM CURIOUS ABOUT WHY THIS CONVERSATION, |
| 10:08AM | 3 | AGAIN, IS WHAT I CALL IS AT THE MARGINS?  WHAT DOES THAT REALLY |
| 10:08AM | 4 | SEEK TO DO? |
| 10:08AM | 5 | I UNDERSTAND, AS YOU PUT IT, IT REMINDS THEM OF THEIR |
| 10:08AM | 6 | SOLEMN OATH THAT THE SERIOUSNESS OF THE WORK THAT THEY MUST DO, |
| 10:08AM | 7 | WHICH IS APPROPRIATE.  I THINK THAT IS ENTIRELY APPROPRIATE, |
| 10:08AM | 8 | THE SERIOUS NATURE OF THE WORK THAT THEY DO. |
| 10:08AM | 9 | WE'RE GOING TO TAKE PEOPLE OUT OF THEIR HOMES AND JOBS FOR |
| 10:08AM | 10 | SEVERAL WEEKS, AND IT'S A COMMITMENT TO THE JUSTICE SYSTEM, AND |
| 10:08AM | 11 | THE OATH THAT THEY'LL TAKE AS JURORS TO LISTEN TO THIS |
| 10:08AM | 12 | EVIDENCE, AND KEEP AN OPEN MIND THROUGHOUT THE TRIAL. |
| 10:08AM | 13 | MS. ROPER:  EXACTLY, YOUR HONOR. |
| 10:08AM | 14 | THE COURT:  AND I ENCOURAGE THE PARTIES TO REMIND |
| 10:08AM | 15 | THE JURY OF THEIR SOLEMN OATH. |
| 10:08AM | 16 | WHEN WE START TO GET A LITTLE AT THE MARGINS, AS I SAY, IS |
| 10:08AM | 17 | IF THE JURY IS TRYING TO BE AFFECTED IN SOME WAY TO NOT JUST |
| 10:09AM | 18 | LOOK AT THE OATH THAT THEY HAVE TAKEN, BUT ALSO TO LOOK AT |
| 10:09AM | 19 | CONSEQUENCES OF THEIR DECISION IN A WAY THAT IS INAPPROPRIATE |
| 10:09AM | 20 | THAT REFERENCES PUNISHMENT. |
| 10:09AM | 21 | AND I THINK LAWYERS HAVE -- DEFENSE LAWYERS, AS YOU KNOW, |
| 10:09AM | 22 | I DON'T WANT TO SAY "STRUGGLED," BUT HAVE DEALT WITH THIS ISSUE |
| 10:09AM | 23 | OVER THE DECADES.  HOW MUCH CAN WE SAY?  AND WHAT SHOULD WE |
| 10:09AM | 24 | STAY AWAY FROM? |
| 10:09AM | 25 | SO I APPRECIATE YOUR COMMENTS.  I RECOGNIZE THE |

| | | |
|---|---|---|
| 10:09AM | 1 | GOVERNMENT'S COMMENTS.  AND I RECOGNIZE YOUR COMMITMENT, YOUR |
| 10:09AM | 2 | TEAM'S COMMITMENT THROUGH RECOGNIZING THAT IT'S INAPPROPRIATE |
| 10:09AM | 3 | TO PUT PUNISHMENT IN FRONT OF THE JURY EITHER IN AN OPENING |
| 10:09AM | 4 | STATEMENT OR A CLOSING ARGUMENT, AND I'LL HOLD YOUR TEAM TO |
| 10:09AM | 5 | THAT. |
| 10:09AM | 6 | UNLESS THERE'S ANYTHING FURTHER FROM MR. SCHENK? |
| 10:09AM | 7 | MR. SCHENK:  NO.  SUBMIT IT, YOUR HONOR. |
| 10:09AM | 8 | THE COURT:  ANYTHING FURTHER? |
| 10:09AM | 9 | MS. ROPER:  THANK YOU, YOUR HONOR. |
| 10:09AM | 10 | THE COURT:  I WILL GRANT THE MOTION.  I WILL GRANT |
| 10:09AM | 11 | THE MOTION AS TO THE DEFENSE IS NOT PERMITTED TO PUT PUNISHMENT |
| 10:10AM | 12 | DIRECTLY IN FRONT OF THE JURY.  THAT'S NOT APPROPRIATE. |
| 10:10AM | 13 | AND THE DEFENSE WILL, AND I BELIEVE THEY KNOW WHAT TO DO |
| 10:10AM | 14 | HERE, BUT THEY SHOULD CHOOSE THEIR PHRASING CAREFULLY WHEN |
| 10:10AM | 15 | MAKING COMMENTS AND CAUTIOUSLY WHEN TALKING ABOUT THE NATURE OF |
| 10:10AM | 16 | THE CASE. |
| 10:10AM | 17 | I'M NOT GOING TO RULE SPECIFICALLY ON WHAT YOU CAN'T SAY |
| 10:10AM | 18 | THIS, AND THE CASE HAS SERIOUS CONCERNS FOR MY CLIENT.  BUT I |
| 10:10AM | 19 | THINK YOU'VE HEARD ME COMMENT ON THIS. |
| 10:10AM | 20 | AND I DO HAVE SOME CONCERNS ABOUT REFERENCE TO PUNISHMENT, |
| 10:10AM | 21 | SUBTLE OR NOT.  A SUBTLE REFERENCE, AS MR. SCHENK POINTS OUT, |
| 10:10AM | 22 | IS NONETHELESS A REFERENCE. |
| 10:10AM | 23 | SO I APPRECIATE YOUR TELLING ME THAT YOU KNOW HOW TO, AND |
| 10:10AM | 24 | YOUR TEAM, KNOW HOW TO CONDUCT YOURSELVES ON THIS. |
| 10:10AM | 25 | ALL RIGHT.  THANK YOU. |

| | | |
|---|---|---|
| 10:10AM | 1 | I THINK NEXT IS 588, GOVERNMENT'S MOTION IN LIMINE |
| 10:11AM | 2 | NUMBER 3, AND THIS IS TO PRECLUDE AN IMPROPER ADVICE-OF-COUNSEL |
| 10:11AM | 3 | DEFENSE. |
| 10:11AM | 4 | MR. SCHENK, YOU HAVE THIS ONE AS WELL. |
| 10:11AM | 5 | MR. SCHENK: I DO, YOUR HONOR. THANK YOU. |
| 10:11AM | 6 | WHEN THE COURT BEGAN THIS MORNING WITH THE INTRODUCTORY |
| 10:11AM | 7 | COMMENTS THAT NOTED THAT THERE MIGHT BE SOME MOTIONS THAT IT |
| 10:11AM | 8 | WOULD CHOOSE TO DEFER RULING ON, AND AT THE RISK OF CONCEDING |
| 10:11AM | 9 | TOO MUCH, MAYBE THIS IS ONE THAT THE COURT WOULD CONSIDER |
| 10:11AM | 10 | DEFERRING RULING ON. |
| 10:11AM | 11 | THE GOVERNMENT REALLY IS ASKING FOR TWO THINGS HERE, AND |
| 10:11AM | 12 | THEY BOTH INVOLVE STATEMENTS THAT ATTORNEYS MADE. |
| 10:11AM | 13 | THE FIRST IS AN ORDER FROM THE COURT PRECLUDING MS. HOLMES |
| 10:11AM | 14 | FROM OFFERING TESTIMONY REGARDING STATEMENTS THAT ATTORNEYS |
| 10:11AM | 15 | MADE DURING THE COURSE OF THE TRIAL. THERE ARE DIFFERENT RULES |
| 10:11AM | 16 | OF EVIDENCE TO ADMIT STATEMENTS IF THE GOVERNMENT WAS OFFERING |
| 10:11AM | 17 | THEM IN THEIR CASE-IN-CHIEF VERSUS THE DEFENSE, BUT |
| 10:11AM | 18 | ADDITIONALLY, THE DEFENSE CONTINUES TO MAINTAIN PRIVILEGE |
| 10:11AM | 19 | EXISTS BETWEEN HER AND MANY LAWYERS. AND IT'S CERTAINLY HER |
| 10:11AM | 20 | RIGHT, AND WE DON'T OBJECT TO THAT EXCEPT, AS THE COURT KNOWS, |
| 10:11AM | 21 | THERE'S A PENDING MOTION BEFORE JUDGE COUSINS ON THAT ISSUE. |
| 10:12AM | 22 | BUT LEAVING THAT ASIDE, WHAT WE'RE CONCERNED ABOUT IS |
| 10:12AM | 23 | SWORD AND SHIELD. IT CAN'T BOTH BE THE CASE THAT A PRIVILEGE |
| 10:12AM | 24 | IS MAINTAINED AND THAT LAWYERS OR STATEMENTS LAWYERS HAVE MADE |
| 10:12AM | 25 | ARE SOLICITED FOR THE BENEFIT OF THE JURY, FOR THE JURY TO |

10:12AM 1  HEAR, AND THAT'S WHY WE WANTED TO BRIEF THE ISSUE AND RAISE IT

10:12AM 2  FOR THE COURT BECAUSE IT SHOULDN'T WORK BOTH WAYS.  A LANE

10:12AM 3  SHOULD BE CHECKED.

10:12AM 4      THE SECOND, AND I WOULD ADVOCATE EVEN AMONG THESE TWO, THE

10:12AM 5  ONE THAT IS MORE APPROPRIATE FOR THE COURT TO DEFER RULING ON

10:12AM 6  IS THE ONE INVOLVING JURY INSTRUCTIONS AND WHETHER MS. HOLMES

10:12AM 7  GETS AN INSTRUCTION REGARDING GOOD FAITH OR WHAT IS SOMETIMES

10:12AM 8  CALLED ADVICE OF COUNSEL.  AND IT'S TRUE THAT THE CASES

10:12AM 9  CERTAINLY SUGGEST THAT THE COURT SHOULD WAIT TO DETERMINE JURY

10:12AM 10  INSTRUCTIONS UNTIL IT HEARS EVIDENCE, AND WE DON'T DISPUTE THAT

10:12AM 11  AT ALL.

10:12AM 12      WHAT WE NOTE ONLY IS THAT OFTEN THE CASES THAT SUPPORT

10:12AM 13  GIVING EITHER GOOD FAITH OR ADVICE OF COUNSEL DO SO AFTER THE

10:12AM 14  DEFENSE MEETS CERTAIN ELEMENTS.  FULL DISCLOSURE TO THE LAWYER

10:13AM 15  BY THE DEFENDANT REGARDING THE FACTS AND CIRCUMSTANCES AND THEN

10:13AM 16  THOSE -- THAT DISCLOSURE LEADING TO CERTAIN ADVICE BEING GIVEN.

10:13AM 17      NONE OF THAT HAS BEEN PROVIDED TO THE GOVERNMENT YET.

10:13AM 18  THERE'S BEEN NO NOTICE GIVEN TO THE GOVERNMENT.  AND IT APPEARS

10:13AM 19  THAT THE DEFENSE ISN'T PLANNING TO PURSUE AN ADVICE OF COUNSEL

10:13AM 20  DEFENSE.  FINE.

10:13AM 21      AGAIN, WE FILED A MOTION TO PROVIDE BENEFIT TO THE COURT

10:13AM 22  SO THE COURT HAS THE BRIEFING AT THE TIME THAT THIS ISSUE

10:13AM 23  SHOULD EVER BECOME RIPE.  IT WOULD BE APPROPRIATE TO DEFER

10:13AM 24  RULING CERTAINLY ON THE SECOND OF THOSE.

10:13AM 25          THE COURT:  ALL RIGHT.  THANK YOU.

10:13AM 1          MR. SCHENK:  THANK YOU.

10:13AM 2          MR. WADE:  GOOD MORNING, YOUR HONOR.

10:13AM 3       LANCE WADE FOR MS. HOLMES.  IT'S NICE TO SEE YOU.

10:13AM 4          THE COURT:  GOOD MORNING.

10:13AM 5          MR. WADE:  THEY LET ME UP HERE FROM THE CHEAP SEATS

10:13AM 6    TO ADDRESS THE COURT.  I WILL DO IT BRIEFLY.

10:13AM 7       WE AGREE WITH THE GOVERNMENT THAT THEY SHOULD BE DEFERRED

10:14AM 8    OR WHATEVER THE LAW IS WITH RESPECT TO THE ADVICE OF COUNSEL

10:14AM 9    INSTRUCTION.  I THINK WE ALL RECOGNIZE THAT LAWYER EVIDENCE MAY

10:14AM 10   BE IN THIS CASE, AND WE SHOULD DEAL WITH THAT AS IT COMES.

10:14AM 11      IF YOU HAVE ANY QUESTIONS, I'M HAPPY TO ADDRESS IT.

10:14AM 12         THE COURT:  NO.  ALL RIGHT.  WELL, THE ONLY QUESTION

10:14AM 13   I HAD IS, MR. WADE, THESE ARE THE FEWEST WORDS THAT YOU HAVE

10:14AM 14   SPOKEN IN THIS CASE.  I'LL JUST MAKE THAT OBSERVATION.

10:14AM 15      (LAUGHTER.)

10:14AM 16         MR. WADE:  WE'RE OFF TO AN AUSPICIOUS START,

10:14AM 17   YOUR HONOR.

10:14AM 18         THE COURT:  THANK YOU VERY MUCH.

10:14AM 19      ANYTHING FURTHER, MR. SCHENK?

10:14AM 20         MR. SCHENK:  NO, YOUR HONOR.

10:14AM 21         THE COURT:  WELL, I APPRECIATE YOU FILING THIS

10:14AM 22   MOTION AND DRAWING THE ISSUE TO THE COURT'S ATTENTION.  WHETHER

10:14AM 23   OR NOT THE, AS IT'S PHRASED, THE ATTORNEY ADVICE OR VICE OF

10:14AM 24   ATTORNEY DEFENSE IS GOING TO BE ADVANCED OR NOT IS YET TO BE

10:14AM 25   KNOWN.

10:14AM 1     I THINK MR. WADE TELLS US THAT HIS TEAM UNDERSTANDS THE

10:14AM 2   PREREQUISITES FOR DOING SO.  MY SENSE IS THAT IF THEY INTEND TO

10:14AM 3   ADVANCE THAT, THAT THEY'LL MEET THE PREREQUISITES.

10:14AM 4     THANK YOU, COUNSEL, FOR POINTING OUT THAT THIS IS AN

10:14AM 5   APPROPRIATE MOTION TO DEFER.  THE COURT WILL DEFER ITS RULING

10:15AM 6   ON THE GOVERNMENT'S MOTION PENDING EVIDENCE OTHERWISE THAT

10:15AM 7   SUPPORTS IT.  OKAY.  THANK YOU.

10:15AM 8     LET'S MOVE TO THIS IS MS. HOLMES'S MOTION.  THIS IS DOCKET

10:15AM 9   563.  AND I ALSO BELIEVE THAT IT TOUCHES ON THE GOVERNMENT'S

10:15AM 10   MOTION IN LIMINE NUMBER 10.  IT SEEMS LIKE THESE TWO MAY HAVE

10:15AM 11   SOME CROSSOVER ISSUES.  BUT LET'S TURN TO 563.  THIS IS

10:15AM 12   MS. HOLMES'S MOTION TO EXCLUDE EVIDENCE OF ANECDOTAL TEST

10:15AM 13   RESULTS.

10:15AM 14     MS. SAHARIA:  GOOD MORNING, YOUR HONOR.

10:15AM 15     MR. WADE IS ACTUALLY GOING TO BE THE ONE TO ADDRESS THIS

10:15AM 16   MOTION, BUT AS YOUR HONOR INDICATED EARLIER, THERE IS A LOT OF

10:15AM 17   OVERLAP ACROSS THE DEFENSE MOTIONS AND THE GOVERNMENT MOTIONS,

10:15AM 18   AND WE THOUGHT IT COULD BE HELPFUL TO SPEND A FEW MINUTES

10:15AM 19   PROVIDING FACTUAL BACKGROUND THAT CROSSES ALL OF THE MOTIONS,

10:16AM 20   WHICH I THINK WILL HELP SAVE SOME TIME IN INDIVIDUAL MOTIONS.

10:16AM 21     SO WITH THE COURT'S INDULGENCE, I THOUGHT I WOULD PROVIDE

10:16AM 22   THAT IF THAT'S OKAY WITH YOU?

10:16AM 23     THE COURT:  SURE.  THAT'S FINE.  THANK YOU.

10:16AM 24     MS. SAHARIA:  SO MUCH OF THE GOVERNMENT'S CASE AND

10:16AM 25   THE MOTIONS CONCERN THERANOS'S BLOOD TESTING SERVICES THAT IT

10:16AM 1    PROVIDED FROM LATE 2013 TO LATE 2016.  SO I THOUGHT I WOULD

10:16AM 2    JUST DESCRIBE HOW AT A HIGH LEVEL THOSE OPERATIONS OCCURRED AT

10:16AM 3    THERANOS DURING THAT TIME.

10:16AM 4        THERANOS OPERATED TWO FEDERALLY CERTIFIED CLINICAL

10:16AM 5    LABORATORIES.  ONE IN ARIZONA AND ONE IN CALIFORNIA.  THEY

10:16AM 6    GENERALLY OPERATED IN THE FOLLOWING WAY:

10:16AM 7        BLOOD WOULD BE COLLECTED AT APPROXIMATELY 40 DIFFERENT

10:16AM 8    LOCATIONS WHICH WERE PRIMARILY WALGREENS PHARMACIES.

10:16AM 9        THE BLOOD WAS COLLECTED IN TWO PRIMARY WAYS DEPENDING ON

10:16AM 10   WHICH ASSAY WAS GOING TO BE CONDUCTED AND OTHER FACTORS.

10:17AM 11       BLOOD WOULD SOMETIMES BE DRAWN FROM THE VEIN USING

10:17AM 12   TRADITIONAL VENOUS COLLECTION WITH A NEEDLE.

10:17AM 13       SOMETIMES BLOOD WOULD BE COLLECTED FROM A FINGERSTICK.

10:17AM 14       THE BLOOD WOULD THEN BE TRANSPORTED FROM THAT COLLECTION

10:17AM 15   SITE TO ONE OF THOSE TWO LABORATORIES.

10:17AM 16       THE TESTING OF THE BLOOD THEN OCCURRED IN ONE OF THREE

10:17AM 17   PRINCIPAL WAYS, AND WE'RE GOING TO TALK A LOT ABOUT THOSE THREE

10:17AM 18   WAYS OVER THE COURSE OF THESE ARGUMENTS.

10:17AM 19       THE FIRST IS THAT SOME ASSAYS WERE RUN ON TRADITIONAL

10:17AM 20   COMMERCIAL DEVICES THAT THERANOS PURCHASED FROM THIRD PARTIES.

10:17AM 21   YOU'LL HEAR THESE REFERRED TO AS COMMERCIAL DEVICES OR PERHAPS

10:17AM 22   FDA APPROVED DEVICES, AND THAT SIMPLY MEANS THAT THE FDA

10:17AM 23   APPROVED THAT THIRD PARTY MANUFACTURER TO SELL ITS DEVICES TO

10:17AM 24   OTHER COMPANIES LIKE THERANOS.  SO THAT'S WAY NUMBER ONE THAT

10:17AM 25   BLOOD WAS TESTED.

10:17AM 1    THE SECOND WAY IS THAT THERANOS USED ITS OWN PROPRIETARY

10:18AM 2  ANALYZERS TO TEST BLOOD AS LABORATORY DEVELOPED TESTS THAT IT

10:18AM 3  DEVELOPED ITSELF.  AND WE CALL THOSE DEVICES TSPU'S.  THAT

10:18AM 4  STANDS FOR THERANOS SAMPLE PROCESSING UNIT.

10:18AM 5    SO IF YOU HEAR THE TERM TSPU, THAT REFERS TO THERANOS'S

10:18AM 6  OWN PROPRIETARY ANALYZER.

10:18AM 7    AND THEN THE THIRD WAY, AND ONE OF OUR MOTIONS CONCERNS

10:18AM 8  THIS WAY, IS THAT SOME TESTING OCCURRED ON COMMERCIAL DEVICES

10:18AM 9  AT ANOTHER COMPANY MANUFACTURED THAT PERMITS THE USER TO MAKE

10:18AM 10  MODIFICATIONS TO THOSE DEVICES TO DEPLOY THEIR OWN LABORATORY

10:18AM 11  DEVELOPED TESTS.

10:18AM 12    THERANOS USED LABORATORY DEVELOPED TESTS ON THOSE DEVICES

10:18AM 13  THAT ALLOWED IT TO TEST SMALLER SAMPLES OF BLOOD ON THOSE

10:18AM 14  DEVICES.

10:18AM 15    NOW, WHICH OF THOSE THREE METHODS WAS USED DEPENDED ON

10:18AM 16  DIFFERENT FACTORS AND WHICH CHANGED OVER TIME AND THOSE THREE

10:19AM 17  FACTORS -- THERE ARE THREE PRIMARY FACTORS.  ONE WAS THE

10:19AM 18  LOCATION WHERE THE BLOOD WAS TESTED.

10:19AM 19    IN THERANOS'S ARIZONA LAB, ONLY COMMERCIAL DEVICES WERE

10:19AM 20  USED, SO ONLY THAT FIRST METHOD COULD BE USED IN THE ARIZONA

10:19AM 21  LABORATORY.

10:19AM 22    BUT IN THE CALIFORNIA LABORATORY ALL THREE METHODS WERE

10:19AM 23  USED.

10:19AM 24    HOW THE BLOOD WAS DRAWN COULD AFFECT HOW IT WOULD BE

10:19AM 25  TESTED.  SO IF BLOOD WAS DRAWN THROUGH THE VENOUS METHOD AS

10:19AM 1    OPPOSED TO THE FINGERSTICK METHOD, THAT COULD AFFECT WHICH KIND

10:19AM 2    OF DEVICE THE BLOOD WAS TESTED ON.

10:19AM 3        AND THEN THE THIRD IS THAT SOME ASSAYS -- YOU KNOW, AN

10:19AM 4    ASSAY COULD BE SOMETHING LIKE A GLUCOSE TEST OR A CALCIUM TEST.

10:19AM 5    WE'LL TALK A LOT ABOUT DIFFERENT ASSAYS DURING THE COURSE OF

10:19AM 6    THESE HEARINGS.  WHICH ASSAY WAS ORDERED BY THE DOCTOR COULD

10:19AM 7    AFFECT HOW IT WAS TESTED.  SOME ASSAYS WERE ONLY RUN ON THE

10:19AM 8    COMMERCIAL MACHINE, AND SOME ASSAYS COULD BE RUN ON ALL THREE

10:20AM 9    KINDS OF MACHINES, AND WHICH ONE WAS USED WOULD VARY OVER TIME

10:20AM 10   FOR THOSE DIFFERENT ASSAYS.

10:20AM 11       DETAILED INFORMATION ABOUT ALL OF THE TEST RESULTS

10:20AM 12   INCLUDING WHICH OF THOSE DEVICES AND METHODS WAS USED TO TEST

10:20AM 13   EVERY SINGLE SAMPLE OF BLOOD WAS STORED IN THERANOS'S

10:20AM 14   LABORATORY INFORMATION SYSTEMS DATABASE CALLED THE LIS

10:20AM 15   DATABASE.  AND MR. WADE IS GOING TO DISCUSS THAT IN MORE DETAIL

10:20AM 16   TODAY.

10:20AM 17       SO WITH THAT VERY GENERAL BACKGROUND ABOUT THAT PART OF

10:20AM 18   THERANOS'S OPERATIONS, LET ME TURN TO THE RELEVANT ALLEGATIONS

10:20AM 19   IN THE INDICTMENT.

10:20AM 20       THE THIRD SUPERSEDING INDICTMENT ALLEGES THAT MS. HOLMES

10:20AM 21   MADE FALSE STATEMENTS ABOUT THERANOS'S PROPRIETARY ANALYZER,

10:20AM 22   THAT'S THE SECOND METHOD THAT I TALKED ABOUT, AS WELL AS THE

10:20AM 23   ACCURACY AND RELIABILITY OF THERANOS'S TESTS, WHEN, IN FACT,

10:20AM 24   ACCORDING TO THE GOVERNMENT THERANOS'S PROPRIETARY ANALYZER HAD

10:21AM 25   ACCURACY AND RELIABILITY PROBLEMS.  THAT'S PARAGRAPH 12(A) OF

10:21AM  1    THE INDICTMENT.  AND THERANOS'S TECHNOLOGY WAS NOT CAPABLE OF

10:21AM  2    CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.  THAT'S

10:21AM  3    PARAGRAPH 16 OF THE INDICTMENT.

10:21AM  4        IN PARTICULAR, THE GOVERNMENT IDENTIFIES IN THE INDICTMENT

10:21AM  5    23 ASSAYS FOR WHICH IT ALLEGES THAT THERANOS WAS NOT CAPABLE OF

10:21AM  6    CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.

10:21AM  7        IF I COULD HAVE THE ELMO TURNED ON, I JUST WANT TO PROVIDE

10:21AM  8    CONTEXT FOR THESE 23 ASSAYS SO THE COURT UNDERSTANDS HOW THE

10:21AM  9    DIFFERENT MOTIONS RELATE TO EACH OTHER.

10:21AM  10        THE COURT:  HAS THE GOVERNMENT SEEN THIS SLIDE

10:21AM  11    PREVIOUSLY?

10:21AM  12        MS. SAHARIA:  THEY HAVE NOT, BUT I DO HAVE A COPY TO

10:21AM  13    HAND TO THEM.

10:21AM  14        THE COURT:  GREAT.  THANK YOU.

10:21AM  15        MS. SAHARIA:  SO AS CONTEXT, YOUR HONOR, DURING THE

10:22AM  16    RELEVANT PERIOD THERANOS PERFORMED MORE THAN 200 DIFFERENT

10:22AM  17    ASSAYS, AND SO THOSE 200 ASSAYS ARE REPRESENTED BY THE GREEN

10:22AM  18    CIRCLE.  AND THE GOVERNMENT'S INDICTMENT IDENTIFIES 23 OF THEM,

10:22AM  19    SO ABOUT 10 PERCENT THAT IT ALLEGES THERANOS COULD NOT PERFORM

10:22AM  20    CONSISTENTLY ACCURATE AND RELIABLE RESULTS.  SO THAT'S THIS

10:22AM  21    BLUE CIRCLE HERE (INDICATING).

10:22AM  22        NOW, I THINK AS YOUR HONOR NOTICED FROM THE MOTIONS, THE

10:22AM  23    GOVERNMENT RETAINED AN EXPERT, DR. STEVEN MASTER, AND ASKED HIM

10:22AM  24    TO OPINE THAT THERANOS WAS NOT CAPABLE OF CONSISTENTLY

10:22AM  25    PRODUCING ACCURATE RESULTS FOR 10 OF THE 23.  SO THAT'S THIS

10:22AM 1      RED CIRCLE HERE (INDICATING).  SO WE'VE GONE FROM 200 DOWN TO

10:22AM 2      23 AND THEN DOWN TO 10.

10:22AM 3           I THINK AS YOUR HONOR KNOWS AS TO THE MOTIONS, DR. MASTER

10:22AM 4      WAS UNABLE TO OFFER THAT OPINION AND HE OPINED ONLY THAT

10:23AM 5      THERANOS COULD NOT PRODUCE ACCURATE AND RELIABLE RESULTS FOR

10:23AM 6      6 OF THOSE ASSAYS.  SO WE'VE NARROWED IT DOWN TO 6 OUT OF THE

10:23AM 7      TOTAL OF 200 PERFORMED AND 23 IDENTIFIED IN THE INDICTMENT.

10:23AM 8           I'M GOING TO DISCUSS TOMORROW THE FLAWS IN HIS OPINIONS AS

10:23AM 9      TO THOSE 6, BUT IT'S UNCLEAR HOW THE GOVERNMENT INTENDS TO

10:23AM 10     PROVE ITS ALLEGATIONS FOR THESE REMAINING 17 GIVEN THAT

10:23AM 11     DR. MASTER HAS NOT PRODUCED AN OPINION FOR THOSE.

10:23AM 12          NOW, THE GOVERNMENT HAS ALSO DISCLOSED NINE MEDICAL

10:23AM 13     PROFESSIONALS AS EXPERTS TO TALK ABOUT THEIR TESTS THEIR

10:23AM 14     INDIVIDUAL PATIENTS RECEIVED, ALTHOUGH IN MANY CASES THEY HAVE

10:23AM 15     FAILED TO IDENTIFY THOSE PATIENTS.  MY COLLEAGUE, MS. KATHERINE

10:23AM 16     TREFZ, IS GOING TO DISCUSS THAT WITH US TODAY.

10:23AM 17          THE GOVERNMENT CONCEDES THAT THOSE WITNESSES CANNOT OPINE

10:23AM 18     THAT THERANOS WAS UNABLE TO PRODUCE ACCURATE AND RELIABLE

10:23AM 19     RESULTS BECAUSE THEY'RE NOT QUALIFIED TO OFFER THAT OPINION.

10:23AM 20          INSTEAD, THE GOVERNMENT WANTS THEM JUST DESCRIBE

10:24AM 21     PARTICULAR OCCASIONS WHEN THEIR PATIENTS RECEIVED THE TEST

10:24AM 22     RESULT.

10:24AM 23          NOW, ONE POINT THAT I DON'T REALLY THINK COMES ACROSS IN

10:24AM 24     THE MOTIONS BUT I THINK IT'S IMPORTANT FOR THE COURT TO

10:24AM 25     UNDERSTAND IS THAT OUT OF THOSE NINE MEDICAL PROFESSIONALS,

38

10:24AM 1    ONLY ONE HAS A PATIENT WHO RECEIVED A TEST WITHIN THESE SIX

10:24AM 2    ASSAYS FOR WHICH DR. MASTER OFFERS AN OPINION.  THE REST OF

10:24AM 3    THOSE NINE MEDICAL PROFESSIONALS HAD PATIENTS WHO RECEIVED

10:24AM 4    OTHER TESTS.

10:24AM 5        SOME RECEIVED TESTS IN THESE 10, SOME RECEIVED TESTS OUT

10:24AM 6    HERE IN THESE 23, AND SOME EVEN RECEIVED TESTS OUT HERE THAT

10:24AM 7    ARE NOT EVEN IDENTIFIED IN THE INDICTMENT (INDICATING).

10:24AM 8        FOR THOSE MEDICAL PROFESSIONALS, IT'S ALSO UNCLEAR HOW THE

10:24AM 9    GOVERNMENT INTENDS TO PROVE THAT THOSE ASSAYS WERE ACCURATE AND

10:24AM 10   RELIABLE SINCE THEY CONCEDE THAT THEY CANNOT PROVIDE THAT

10:24AM 11   OPINION.

10:24AM 12       NOW, THE CONCEPT OF ACCURACY AND RELIABILITY OF BLOOD

10:25AM 13   TESTS ARE A SCIENTIFIC CONCEPT.  THAT'S CLEAR FROM THE REPORT

10:25AM 14   OF DR. MASTER.  AND WHEN THE GOVERNMENT BRINGS A SCIENTIFIC

10:25AM 15   CASE, YOU WOULD EXPECT IT TO CONDUCT A SCIENTIFIC

10:25AM 16   INVESTIGATION.  YOU WOULD EXPECT IT TO SECURE THE RELEVANT DATA

10:25AM 17   AND EVIDENCE, TO ENGAGE SCIENTISTS, AND TO CONDUCT A

10:25AM 18   SCIENTIFICALLY VALID REVIEW OF THE DATA AND THE EVIDENCE.

10:25AM 19       THE GOVERNMENT INEXPLICABLY DID NONE OF THAT.  NOT BEFORE

10:25AM 20   IT INDICTED MS. HOLMES, NOT AFTER IT INDICTED MS. HOLMES.  AT

10:25AM 21   BEST, IT WENT THROUGH THE MOTIONS OF DOING THOSE THINGS, BUT

10:25AM 22   ONLY IN THE MOST CURSORY FASHION AS WE WILL DISCUSS IN THE

10:25AM 23   VARIOUS ARGUMENTS.

10:25AM 24       THE GOVERNMENT'S LACK OF DATA AND ITS LACK OF ANALYSIS

10:25AM 25   HAVE LED TO A GIGANTIC HOLE IN ITS CASE, AND IT IS TRYING TO

10:25AM 1    FILL THAT HOLE WITH NONSCIENTIFIC EVIDENCE, AND THAT IS THE

10:25AM 2    REASON FOR MANY OF OUR MOTIONS.

10:25AM 3        TODAY WE ARE GOING TO DISCUSS THE FOLLOWING CATEGORIES OF

10:26AM 4    NONSCIENTIFIC EVIDENCE:

10:26AM 5        ANECDOTES REGARDING INCORRECT TEST RESULTS, AND ANY TINY

10:26AM 6    FRACTION OF THE 7 TO 10 MILLION TEST RESULTS GENERATED BY

10:26AM 7    THERANOS, THAT'S 563, WHICH MR. WADE WILL ADDRESS FIRST;

10:26AM 8        ACCOUNTS OF THOSE ANECDOTAL RESULTS BY MEDICAL

10:26AM 9    PROFESSIONALS, ECF 561;

10:26AM 10       TESTIMONY ABOUT SUPPOSED VIOLATIONS OF FEDERAL REGULATIONS

10:26AM 11   THAT THE GOVERNMENT DID NOT CHARGE IN THIS CASE, ECF 569; AND,

10:26AM 12       SPREADSHEETS FOR COUNTING CUSTOMER COMPLAINTS THAT

10:26AM 13   MS. HOLMES NEVER SAW, ECF 570.

10:26AM 14       TOMORROW WE WILL DISCUSS THE UNRELIABLE OPINIONS BY

10:26AM 15   DR. MASTER THAT RESTS ON EMAILS AND THAT APPLY NO DISCLOSED

10:26AM 16   METHODOLOGY, ECF 560;

10:26AM 17       THE RESULTS OF REGULATORY INSPECTIONS THAT DID NOT ASSESS

10:26AM 18   WHETHER THERANOS'S TESTS WERE INACCURATE AND RELIABLE, ECF 573,

10:27AM 19   574, AND 575; AND,

10:27AM 20       THERANOS'S PROPHYLACTIC REMEDIAL DECISION TO VOID SOME OF

10:27AM 21   ITS TEST RESULTS, ECF 572.

10:27AM 22       IT HAS ALSO BECOME CLEAR THAT THE GOVERNMENT INTENDS TO

10:27AM 23   DISTRACT THE JURY FROM ITS HOLE IN THIS CASE BY TURNING THE

10:27AM 24   TRIAL INTO A TRIAL ABOUT OTHER THINGS.

10:27AM 25       TODAY WE WILL DISCUSS ITS INTENT TO INFLAME THE JURY WITH

10:27AM 1    HYPOTHETICAL ACCOUNTS OF LIFE THREATENING HARM THAT NEVER

10:27AM 2    HAPPENED TO ANY THERANOS CUSTOMER, ECF 562;

10:27AM 3        THEN THURSDAY WE WILL TALK ABOUT ITS FOCUS ON MS. HOLMES'S

10:27AM 4    ALLEGED SPENDING, ECF 567;

10:27AM 5        SUPPOSED CULTURE OF SECRECY THAT AFFECTS NORMAL CORPORATE

10:27AM 6    PRACTICES, ECF 566 AND 576;

10:27AM 7        IRRELEVANT MEDIA COVERAGE OF THERANOS, ECF 578; AND,

10:27AM 8        THE GOVERNMENT'S INTENT TO PRESENT EVIDENCE THAT HAS NO

10:28AM 9    CONNECTION TO MS. HOLMES, EVIDENCE OF SUPPOSED BAD ACTS OR

10:28AM 10   FALSE STATEMENTS BY RANDOM THERANOS EMPLOYEES, 575.

10:28AM 11       ABSENT STRICT CONTROL BY THIS COURT OVER THE SCOPE OF THE

10:28AM 12   GOVERNMENT'S CASE, THIS TRIAL IS GOING TO BE A SPRAWLING MESS

10:28AM 13   OF IRRELEVANT, PREJUDICIAL EVIDENCE AND THE GOVERNMENT WILL

10:28AM 14   INJECT ERROR INTO THIS CASE.

10:28AM 15       SO WITH THAT INTRODUCTION, I'M GOING TO TURN IT OVER TO

10:28AM 16   MR. WADE.

10:28AM 17           THE COURT:  THANK YOU.

10:28AM 18           MS. SAHARIA:  WOULD YOUR HONOR LIKE A COPY OF THIS?

10:28AM 19           THE COURT:  I WOULD.  THANK YOU.

10:28AM 20           MS. SAHARIA:  (HANDING.)

10:28AM 21           THE COURT:  MR. WADE, YOU'RE SPEAKING TO 563.

10:28AM 22           MR. WADE:  I'M SPEAKING TO 563 AND THE GOVERNMENT'S

10:28AM 23   MOTION IN LIMINE NUMBER 10 THERE.

10:28AM 24       I BELIEVE THEY'RE SUBSTANTIALLY OVERLAPPING.  AND I WILL

10:28AM 25   PICK UP WHERE MS. SAHARIA LEFT OFF AND FOCUS ON THE BREADTH OF

41

10:29AM 1    THE GOVERNMENT'S CONSPIRACY AND THE CONTENTIONS IN THIS CASE

10:29AM 2    WHICH ARE AS BROAD OF CONTENTIONS AS I'VE SEEN IN A CRIMINAL

10:29AM 3    CASE IN A FEDERAL COURT AMOUNTING ESSENTIALLY TO A PRODUCTS

10:29AM 4    LIABILITY CASE OR A BREACH OF WARRANTY CASE.

10:29AM 5        THE GOVERNMENT CONTENDS THAT THERANOS WAS NOT CAPABLE OF

10:29AM 6    CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.  AS WE'VE

10:29AM 7    JUST SAW FROM MS. SAHARIA'S DEMONSTRATIVE, THAT IS A SWEEPING

10:29AM 8    ALLEGATION THAT AFFECTS A MASSIVE SCOPE OF CONDUCT WITHIN A

10:29AM 9    COMPANY.

10:29AM 10       THERANOS PERFORMED TESTS FOR MORE THAN TWO YEARS.  IT

10:29AM 11   PERFORMED MORE THAN 200 DIFFERENT ASSAYS.  THOSE ASSAYS RAN ON

10:29AM 12   ALL KINDS OF DIFFERENT MACHINES, AS MS. SAHARIA JUST MENTIONED,

10:29AM 13   AND LABS IN TWO DIFFERENT STATES, AND IN ALL, THERANOS

10:30AM 14   PERFORMED BETWEEN 7 AND 10 MILLION TESTS.

10:30AM 15       THE GOVERNMENT'S CASE HERE IS THE PROVERBIAL -- THE

10:30AM 16   EVIDENCE THAT THEY MOVE FORWARD IS EVIDENCE OF FALSITY WITH

10:30AM 17   RESPECT TO THAT CLAIM, THAT BROAD CLAIM, WHICH RELATES TO ALL

10:30AM 18   OF THERANOS TESTING.

10:30AM 19       IF YOU LOOK AT THEIR BILL OF PARTICULARS, THEIR ALLEGED

10:30AM 20   MISREPRESENTATIONS, MANY OF THEM COVER ALL OF THAT TESTING.

10:30AM 21   THEIR CASE AGAINST THOSE 7 TO 10 MILLION TESTS, THEY SEEK TO

10:30AM 22   OFFER TESTIMONY OF 11 PATIENTS.  IT IS THE PROVERBIAL ONE IN A

10:30AM 23   MILLION, YOUR HONOR.

10:30AM 24       THEY OFFER THAT WITHOUT OFFERING A SCIENTIFIC BASIS TO

10:30AM 25   SUGGEST THAT THAT EVIDENCE IS RELEVANT.  IN ORDER FOR THE

10:30AM 1    EVIDENCE TO BE RELEVANT, THEY HAVE TO ESTABLISH THAT THERANOS'S

10:31AM 2    TECHNOLOGY WAS RESPONSIBLE FOR THE ERRONEOUS RESULT.  THEY

10:31AM 3    CAN'T DO THAT.

10:31AM 4        JUST BECAUSE AN ERRONEOUS RESULT HAPPENED DOES NOT MEAN

10:31AM 5    THAT IT WAS A RESULT OF THERANOS TECHNOLOGY.  THEY NEED TO

10:31AM 6    ESTABLISH A CAUSAL RELATIONSHIP BETWEEN THE TECHNOLOGY AND THE

10:31AM 7    RESULT.

10:31AM 8        AS YOUR HONOR WELL KNOWS, AND WE'VE ALL BECOME VERY

10:31AM 9    FAMILIAR WITH TESTING OVER THE LAST 15 MONTHS OR SO, TESTING IS

10:31AM 10   A DYNAMIC PROCESS.  IT INVOLVES MANY DIFFERENT VARIABLES.  SOME

10:31AM 11   OF THOSE RELATE TO THE TECHNOLOGY.  MANY OF THEM RELATE TO

10:31AM 12   OTHER THINGS WITHIN THE TESTING PROCESS, SOME OF WHICH HAVE

10:31AM 13   NOTHING TO DO WITH THERANOS LIKE THE PATIENT, THEIR MEDICAL

10:31AM 14   CONDITION, THEIR MEDICINE, THEIR DIET.  ALL OF THOSE THINGS CAN

10:32AM 15   CREATE AN ERRONEOUS RESULT.

10:32AM 16       SO BY SUGGESTING, BY WANTING TO BRING FORWARD ANECDOTES,

10:32AM 17   STATISTICALLY INSIGNIFICANT ANECDOTES, THE GOVERNMENT IS TRYING

10:32AM 18   TO CREATE THE IMPRESSION WITH THE JURY THAT THOSE ANECDOTES ARE

10:32AM 19   A DEMONSTRATION OF THERANOS'S INABILITY TO CONSISTENTLY PRODUCE

10:32AM 20   ACCURATE AND RELIABLE RESULTS.

10:32AM 21       NOW, THE -- WE'VE CITED AT DOCKET 563 AT 4 SOME SCIENTIFIC

10:32AM 22   LITERATURE THAT TALKS ABOUT LAB ERROR RATES.  ERRORS HAPPEN

10:32AM 23   EVERY DAY IN VIRTUALLY EVERY LAB.  THERE ARE ERRORS HAPPENING

10:32AM 24   PROBABLY AS WE SPEAK GIVEN THE VOLUME OF TESTING THAT IS

10:32AM 25   HAPPENING IN THIS COUNTRY.  THERE'S A KNOWN ERROR RATE IN THE

43

10:32AM 1    LITERATURE OF BETWEEN .1 PERCENT AND 3 PERCENT.

10:33AM 2        UNDER THOSE ERROR RATES, WHICH THE GOVERNMENT HAS NOT

10:33AM 3    CONTESTED, AND, FRANKLY, WE BELIEVE ARE CONSERVATIVE WITHIN THE

10:33AM 4    LITERATURE THAT WE'VE REVIEWED, YOU WOULD EXPECT TO SEE BASED

10:33AM 5    ON A VOLUME OF 7 TO 10 MILLION TESTS, BETWEEN 700,000 AND

10:33AM 6    210,000 ERRORS.

10:33AM 7        CONSIDERATION OF THOSE FACTS DEMONSTRATE THE

10:33AM 8    INSIGNIFICANCE OF THE EVIDENCE THAT IS OFFERED BY THE

10:33AM 9    GOVERNMENT IN THIS CASE.

10:33AM 10       THE GOVERNMENT STATISTICALLY BY OFFERING 11 OF 7 TO

10:33AM 11   10 MILLION, THEY'RE SEEKING TO OFFER BETWEEN 1 AND 2000THS OF

10:33AM 12   1 PERCENT.

10:33AM 13       I HAD TO ASK MS. SAHARIA WHO HAS MORE EXPERTISE IN MATH

10:33AM 14   WHAT THAT MEANT FOR THE RECORD.  THAT'S .000001571.  THEY DO

10:34AM 15   THAT -- STATISTICALLY THAT'S CLEARLY INSIGNIFICANT.  THEY

10:34AM 16   COULDN'T CREDIBLY OFFER ANY SUGGESTION OTHERWISE.

10:34AM 17       THEY OFFER THIS EVIDENCE WITH RESPECT TO A VARIETY OF

10:34AM 18   DIFFERENT TESTS.  AS BEST WE CAN TELL, THE GOVERNMENT DOESN'T

10:34AM 19   EVEN KNOW FOR EACH INDIVIDUAL TEST HOW THE TEST WAS RUN, THE

10:34AM 20   METHOD -- MS. SAHARIA JUST WENT THROUGH ALL OF THE STEPS IN THE

10:34AM 21   PROCESS:  THE METHOD THAT WAS USED, THE MACHINE THAT IT WAS RUN

10:34AM 22   ON, THE LAB THAT IT WAS PERFORMED AT, AND ALL OF THE OTHER

10:34AM 23   VARIABLES THAT ARE INVOLVED IN A TEST.

10:34AM 24       IT'S NOT EVEN CLEAR THAT THEY KNOW HOW MANY TESTS, FOR

10:34AM 25   EXAMPLE, ON HCG, WHICH OFTEN RELATES TO PREGNANCY.  IT'S NOT

44

| 10:34AM | 1 | CLEAR THAT THEY EVEN KNOW HOW MUCH HCG TESTS THERANOS RAN LET |

10:34AM 1 CLEAR THAT THEY EVEN KNOW HOW MUCH HCG TESTS THERANOS RAN LET

10:35AM 2 ALONE HOW MANY HCG TESTS THERANOS RAN WITHIN A PARTICULAR

10:35AM 3 PERIOD THAT IS RELEVANT TO THE PATIENT THAT IS AT ISSUE OR ON

10:35AM 4 THE MACHINE THAT IS RELEVANT TO THE PATIENT AT ISSUE.

10:35AM 5 SO THE STATISTICAL INSIGNIFICANCE OF THIS EVIDENCE IS

10:35AM 6 BEYOND DISPUTE.

10:35AM 7 NOW, THE GOVERNMENT COULD POTENTIALLY CURE THAT IF THEY,

10:35AM 8 IF THEY DID WHAT THEIR OWN EXPERTS SUGGEST.

10:35AM 9 SO AFTER WE POINTED OUT THE PROBLEM WITH THE ANECDOTAL

10:35AM 10 EVIDENCE, THE GOVERNMENT WENT TO DR. MASTER AND THEY PROFFERED

10:35AM 11 WITHIN THEIR OPPOSITION THAT IMPLICIT WITHIN HIS OPINION IS

10:35AM 12 THAT CUSTOMERS -- CUSTOMER COMPLAINTS CAN BE RELEVANT.

10:35AM 13 BUT IF YOU LOOK AT WHAT DR. MASTER SAYS, AND THIS IS

10:35AM 14 OFFERED DOCKET 668 AT 8, "IN DISCUSSING THE RELEVANCE THAT

10:36AM 15 CUSTOMER COMPLAINTS HAVE ON ACCURACY AND RELIABILITY,

10:36AM 16 DR. MASTER WOULD TESTIFY THAT PARTICULAR INCIDENTS," QUOTE,

10:36AM 17 "'LED TO UNCOVERING SYSTEMIC OR PATIENT SPECIFIC ISSUES WITH A

10:36AM 18 LABORATORY TEST,'" CLOSED QUOTE, "OR THAT THEY WERE," QUOTE,

10:36AM 19 "'THEY WERE AWAY OF,'" QUOTE, "'IDENTIFYING UNRESOLVED ISSUES

10:36AM 20 WITH INDIVIDUAL ASSAYS.'"

10:36AM 21 IN OTHER WORDS, HE WON'T SAY THAT THEY'RE RELEVANT IN AND

10:36AM 22 OF THEMSELVES TO PROVE ACCURACY AND RELIABILITY.  WHAT THEIR

10:36AM 23 OWN EXPERT IS SAYING IS THAT IS A GATEWAY TO DO AN ANALYSIS TO

10:36AM 24 ASSESS WHETHER IT'S RELEVANT TO A DETERMINATION AS TO WHETHER

10:36AM 25 IT CAN BE OFFERED TO SHOW ACCURACY AND RELIABILITY.

10:36AM 1      THEY HAVEN'T DONE THAT.  THEY HAVEN'T DONE THAT

10:36AM 2  INVESTIGATION.

10:36AM 3      THE PRINCIPAL DEFICIENCY WITH RESPECT TO THEIR

10:37AM 4  INVESTIGATIVE FUNCTION RELATES TO THEIR FAILURE TO OBTAIN THE

10:37AM 5  LIS DATABASE.  THIS IS A MASSIVE FAILURE OF PROOF ON BEHALF OF

10:37AM 6  THE GOVERNMENT.

10:37AM 7      IF I COULD OFFER MY OWN DEMONSTRATIVE, AND I'LL OFFER ONE

10:37AM 8  UP TO THE COURT.  I'LL PUT ONE UP ON THE ELMO SO EVERYONE HAS

10:37AM 9  THE BENEFIT OF IT.

10:37AM 10      THIS DEMONSTRATIVE JUST GIVES THE COURT A SENSE.  I

10:37AM 11  UNDERSTAND THAT SOMETIMES -- I DON'T WANT TO SPEAK ON BEHALF OF

10:37AM 12  THE COURT, BUT AS I GET OLDER, WHAT A DATABASE IS AND WHAT IT

10:37AM 13  MEANS HAS LESS AND LESS SIGNIFICANCE.  SO I'VE HAD TO GROUND

10:37AM 14  MYSELF IN THE FACTS A LITTLE BIT TO UNDERSTAND WHAT THE

10:37AM 15  LIS DATABASE IS.  IT'S NOT A DOCUMENT DATABASE THAT WE DEAL

10:38AM 16  WITH IN COURT.  IT'S A MULTI FACETTED TOOL THAT COLLECTS DATA

10:38AM 17  THROUGHOUT THE TESTING PROCESS.

10:38AM 18      SO WHEN YOU LOOK AT, WHEN YOU LOOK AT THIS PROCESS, THE

10:38AM 19  BLUE BOX IS DESIGNED TO DEMONSTRATE THE TESTING PROCESS AS A

10:38AM 20  WHOLE, AND THE ARROWS SHOW THE WAY IN WHICH YOU WORK THROUGH

10:38AM 21  THAT PROCESS.

10:38AM 22      SO THE CUSTOMER COMES IN AND PROVIDES ALL OF THIS

10:38AM 23  INFORMATION THAT IS LOGGED WITHIN THE DATABASE.  YOU KNOW

10:38AM 24  THE -- YOU KNOW THEIR SPECIFIC DOCTOR, THEIR MEDICAL HISTORY,

10:38AM 25  YOU GO THROUGH THE LOCATION, THE COLLECTION METHOD, WHAT

10:38AM 1    PHLEBOTOMIST WAS USED, THE TRANSPORTATION SPECIFIC INFORMATION

10:38AM 2    WAS IN ARIZONA, IT WAS 110 DEGREES IN ARIZONA THAT DAY WHEN IT

10:38AM 3    WAS SITTING ON THE TARMAC ON ITS WAY TO CALIFORNIA, FOR

10:39AM 4    EXAMPLE.

10:39AM 5        YOU HAVE RECEIPT AND PROCESSING INFORMATION, WHEN IT WAS

10:39AM 6    RECEIVED WITHIN THE LABORATORY.  YOU HAVE -- AND THIS IS

10:39AM 7    CRITICAL AND IT RELATES TO MANY OF THE -- MUCH OF THE EVIDENCE

10:39AM 8    THAT THE GOVERNMENT WANTS TO OFFER ON THE DEVICE.  WHEN YOU

10:39AM 9    LOOK UNDER THE DEVICE HERE, YOU HAVE THE TYPE OF DEVICE USED;

10:39AM 10   YOU HAVE ALL OF THE TESTS THAT WERE RUN; YOU HAVE THE QUALITY

10:39AM 11   CONTROL DATA THAT RELATES TO THAT DEVICE ON THE DAY THAT TESTS

10:39AM 12   WERE RUN; AND THEN, OF COURSE, YOU HAVE OTHER INFORMATION THAT

10:39AM 13   RELATE TO ALL OF THE DIFFERENT RESULTS.  AND YOU HAVE THIS NOT

10:39AM 14   FOR ONE PATIENT, YOU HAVE IT FOR EVERY PATIENT.

10:39AM 15       SO IF THE GOVERNMENT IN CHOOSING TO OFFER A CASE ON

10:39AM 16   ACCURACY AND RELIABILITY, THE STARTING POINT IS RIGHT HERE

10:39AM 17   (INDICATING).  IT'S THE 7 TO 10 MILLION TESTS THAT SHOW WHAT

10:39AM 18   HAPPENED WITHIN THE LABS AT THERANOS ON WHICH DEVICES.  WHICH

10:40AM 19   ASSAYS?  HOW MUCH WERE THERE?

10:40AM 20       WITHIN THE CONTEXT OF THE ISOLATED EXAMPLES, THE ANECDOTAL

10:40AM 21   EXAMPLES, THEN THE QUESTION BECOMES WHAT DR. MASTER SAYS.  WE

10:40AM 22   HAVE A TEST THAT THE PATIENTS BELIEVE TO BE ERRONEOUS.  WHAT IS

10:40AM 23   THE CAUSAL -- WHAT IS THE CAUSE OF THAT?

10:40AM 24       LET ME GET ALL OF THE RELEVANT DATA AND ASSESS THE

10:40AM 25   POTENTIAL CAUSES OF THAT OR RULE OUT THE CAUSES OF THAT.

10:40AM 1          THE GOVERNMENT DIDN'T DO THAT.

10:40AM 2          WITH RESPECT TO THE 23 ASSAYS, THE GOVERNMENT COULD HAVE

10:40AM 3     GONE INTO THIS DATABASE, THEY COULD HAVE EXTRACTED OUT ALL OF

10:40AM 4     THE TESTS THAT WERE RUN FOR ALL OF THOSE ASSAYS; THEY COULD

10:40AM 5     HAVE HAD AN EXPERT REVIEW IT; THEY COULD HAVE LOOKED AT THE

10:40AM 6     DEVICE THAT IT WAS RUN ON; THEY COULD HAVE LOOKED AT WHETHER

10:40AM 7     THAT DEFICIENCY ACTUALLY RELATED TO THE THERANOS TECHNOLOGY.

10:41AM 8          THEY DIDN'T DO THAT.

10:41AM 9          SO WE DON'T EVEN KNOW.  IT'S NOT CLEAR THAT THE GOVERNMENT

10:41AM 10    KNOWS WHETHER THE PARTICULAR PATIENTS THAT THEY'RE SEEKING TO

10:41AM 11    OFFER RAN THE TEST THAT WAS ON A THERANOS DEVICE VERSUS A MORE

10:41AM 12    STANDARD FDA APPROVED TEST.  IT'S NOT CLEAR THAT THEY'RE AWARE

10:41AM 13    OF WHAT TEST IT WAS RUN ON MUCH LESS HOW MANY OTHER TESTS WERE

10:41AM 14    RUN DURING THAT TIME PERIOD.

10:41AM 15         THE DEFICIENCIES HERE ARE TWOFOLD.  ONE, THIS IS, AS THEIR

10:41AM 16    OWN EXPERT SAYS WHEN HE TALKS ABOUT HOW YOU ASSESS INDIVIDUAL

10:41AM 17    INSTANCES OF COMPLAINTS OR HOW YOU ASSESS ACCURACY AND

10:41AM 18    RELIABILITY GENERALLY, YOU LOOK AT DATA, YOU LOOK AT -- YOU

10:41AM 19    READ IT IN SCIENCE, YOUR EXPERTISE.

10:42AM 20         THIS FAILURE TO OBTAIN THIS EVIDENCE IS A GAPING HOLE IN

10:42AM 21    THE GOVERNMENT'S CASE, BUT MORE FUNDAMENTALLY IT CREATES A

10:42AM 22    SITUATION WHERE MS. HOLMES IS UNABLE TO CONFRONT MANY OF THE

10:42AM 23    OTHERWISE INADMISSIBLE ANECDOTAL PIECES OF INFORMATION THAT THE

10:42AM 24    GOVERNMENT NOW WANTS TO BRING FORWARD AND OFFER FOR THE TRUTH

10:42AM 25    AND OFFER IT TO SUGGEST THAT THESE TESTS WERE INACCURATE AND

10:42AM 1  UNRELIABLE AND THAT THESE STATEMENTS IDENTIFIED IN THE BILL OF

10:42AM 2  PARTICULARS WERE FALSE.  THEY DEPRIVE HER OF THE ABILITY TO DO

10:42AM 3  THAT INVESTIGATION.

10:42AM 4     INSTEAD, THEY WANT TO COME IN AND SAY, AND YOU'LL HEAR IT

10:42AM 5  THROUGHOUT THESE THREE DAYS, THE CMS REPORT SAYS THIS, THERE'S

10:42AM 6  A QC PROBLEM IN A COUPLE OF DAYS DURING THIS PERIOD ON THIS

10:43AM 7  TEST, THAT'S EVIDENCE OF INACCURACY AND UNRELIABILITY.  THAT'S

10:43AM 8  A CONCLUSION REACHED BY A GOVERNMENTAL AGENCY IN AN ADVERSARIAL

10:43AM 9  PROCESS.  THAT'S OUR EVIDENCE OF -- TO PROVE THIS WRONG.

10:43AM 10    BUT IF YOU HAD THE DATA YOU COULD GO BACK AND LOOK AT ALL

10:43AM 11 OF THE TESTS THAT WERE PERFORMED.  YOU COULD ASSESS, FOR

10:43AM 12 EXAMPLE, AN ISSUE THAT THE GOVERNMENT PUTS FORWARD REPEATEDLY

10:43AM 13 AS FACT WHICH IS ACTUALLY IN DISPUTE, WHICH IS THERE'S A QC

10:43AM 14 FAILURE.  THAT SUGGESTS EVERYTHING IS INACCURATE AND

10:43AM 15 UNRELIABILITY, OR UNRELIABLE.

10:43AM 16    AND THEY -- WELL, DID THEY PROVIDE RESULTS TO PATIENT?

10:43AM 17    WELL, THE GOVERNMENT SAYS YES BECAUSE CMS SAYS YES IN A

10:43AM 18 HEARSAY STATEMENT THAT SHOULD BE INADMISSIBLE.

10:43AM 19    HOW DO WE KNOW WHETHER THEY ACTUALLY PROVIDED THOSE TESTS?

10:43AM 20 IT'S IN THE LIS, YOUR HONOR.

10:44AM 21    ALL OF THE INFORMATION THAT RELATES TO HOW THE TESTS WERE

10:44AM 22 PERFORMED, THE FREQUENCY, WHEN, THE QC, ALL OF THE GOODS WITH

10:44AM 23 RESPECT TO TESTING ARE IN THERE.

10:44AM 24    NOW, YOU WOULD THINK IF THE GOVERNMENT WANTED TO CHOOSE TO

10:44AM 25 CHARGE ONE OF THE BROADEST MAIL WIRE FRAUD CONSPIRACIES PERHAPS

49

10:44AM 1    THIS DISTRICT HAS SEEN IN TERMS OF THE BREADTH OF WHAT THEY'RE

10:44AM 2    SAYING AND WITH RESPECT TO ACCURACY AND RELIABILITY, THEY WOULD

10:44AM 3    AT LEAST GET THE DATA, BUT THEY DID NOT.

10:44AM 4        AND SO RECOGNIZING THEIR FAILURE YEARS LATER, THE

10:44AM 5    GOVERNMENT HAS EMBARKED ON A LONG INVESTIGATION OF WHY IT CAN'T

10:44AM 6    GET THAT DATA.

10:44AM 7        AND IT SAYS, WELL, OKAY, WE SHOULDN'T BE ABLE TO ARGUE

10:44AM 8    THAT THEY FAILED TO MEET THEIR BURDEN, WHICH WOULD BE AN

10:44AM 9    UNCONSTITUTIONAL LIMITATION ON MS. HOLMES.

10:44AM 10       AND THEY SHOULD BE ABLE TO PUT FORWARD EVIDENCE AS TO WHY

10:45AM 11   THEY WEREN'T ABLE TO GET THAT WHEN IT'S NOT IN DISPUTE, OR AT

10:45AM 12   LEAST IT SHOULDN'T BE AFTER WE'VE CLARIFIED THE RECORD IN OUR

10:45AM 13   PLEADING, MS. HOLMES HAD NO ROLE WHATSOEVER IN THAT LIS ISSUE,

10:45AM 14   WHETHER IT WAS A FAILURE TO PRESERVE OR A MISCOMMUNICATION,

10:45AM 15   WHATEVER -- HOWEVER YOU WANT TO CATEGORIZE THAT ISSUE, THAT

10:45AM 16   RELATED TO PEOPLE COMPLETELY SEPARATE FROM MS. HOLMES.

10:45AM 17       SO UNDER 404(B), UNDER 401, THAT IS JUST NOT RELEVANT TO

10:45AM 18   THIS CASE.  SO ALL OF THAT EVIDENCE AS TO WHY THEY COULDN'T --

10:45AM 19   WHY THEY DIDN'T PROVE THEIR CASE IS OUT.  IT SHOULD BE OUT,

10:45AM 20   RESPECTFULLY.

10:45AM 21       THE EVIDENCE -- THE ACTUAL EVIDENCE OF THOSE EVENTS SHOW

10:45AM 22   THAT THE GOVERNMENT MADE THIS ALLEGATION ABOUT ACCURACY AND

10:45AM 23   RELIABILITY BEFORE THEY GOT THAT DATA AT ALL.  THE RETURN DATE

10:46AM 24   ON THE SUBPOENA WHEN THEY TRIED TO GET THE LIS DATA, THE RETURN

10:46AM 25   DATE WAS JUNE 14TH, 2018.  THAT WAS THE DAY THAT THEY RETURNED

10:46AM 1     AN INDICTMENT IN THIS CASE, THEIR FIRST INDICTMENT, AND IN

10:46AM 2     WHICH THEY MADE THESE SAME ALLEGATIONS.

10:46AM 3       THEY NEVER HAD ANY INTENTION OF GOING TO LOOK AT THE

10:46AM 4     LIS DATA.  THEY DIDN'T EVEN MEANINGFULLY LOOK AT IT.  IT WAS ON

10:46AM 5     THE SHELF AT THE U.S.'S OFFICE FOR YEARS.  THEY DIDN'T EVEN TRY

10:46AM 6     TO ACCESS IT UNTIL MARCH OF 2020 AT WHICH POINT THEY MAY HAVE

10:46AM 7     BROUGHT ALLEGATIONS THAT IT HAD BEEN IMPROPERLY DESTROYED WHEN

10:46AM 8     THE FACTS ACTUALLY RESPECTFULLY WOULD SUGGEST OTHERWISE.

10:46AM 9       BUT WHAT IS NOT IN DISPUTE IS THAT THE GOVERNMENT KNEW

10:46AM 10     ABOUT THE LIS DATA, KNEW ABOUT THE LIS, AND KNEW ABOUT THE

10:47AM 11     LIS DATABASE IN DECEMBER 2016 WHEN COUNSEL FOR THERANOS MADE

10:47AM 12     THEM AWARE OF WHAT THE LIS DATABASE WAS AND WHAT DATA WAS

10:47AM 13     TRACKED IN THERE.

10:47AM 14       THEY HAD ACCESS TO EXPERTS AND THEY'RE WORKING WITH THE

10:47AM 15     FDA AND CMS.  EVERYONE KNOWS THAT A LAB HAS DATA.  EVERYONE

10:47AM 16     KNOWS THAT IT TRACKS THAT INFORMATION.  AND THE GOVERNMENT

10:47AM 17     DIDN'T GET IT.  SO THEIR FAILURE TO GET IT LEAVES A HOLE.

10:47AM 18       THEIR DESIRE TO COVER UP THAT HOLE BY BRINGING IN SOME

10:47AM 19     SIDE TRIAL ABOUT WHY THEY WEREN'T ABLE TO GET IT WHEN THEY

10:47AM 20     SOUGHT IT TOO LATE, AT A TIME THAT THEY KNEW THAT THE COMPANY

10:47AM 21     WAS SHUTTING DOWN, THAT'S IRRELEVANT TO THIS CASE.  IT MAY BE

10:47AM 22     RELEVANT TO OTHER PROCEEDINGS, YOUR HONOR.  IT'S NOT RELEVANT

10:47AM 23     TO THIS CASE.  THEY HAVE NO CONNECTION TO THIS CASE.  SO THAT

10:48AM 24     SHOULD BE EXCLUDED, AND WE SHOULD HAVE NO RESTRICTIONS ON OUR

10:48AM 25     ABILITY TO OFFER THAT EVIDENCE.

51

10:48AM 1    NOR SHOULD WE -- WE SHOULD HAVE NO LIMITATIONS WITH

10:48AM 2  RESPECT TO OUR ABILITY TO ARGUE ABOUT THEIR FAILURES TO OBTAIN

10:48AM 3  THAT EVIDENCE.  IT IS -- THE GOVERNMENT BEARS THE BURDEN OF

10:48AM 4  PROOF IN THIS CASE.  THEY ARE THE ONES WHO CHOSE TO CHARGE A

10:48AM 5  CONSPIRACY OF THIS BREADTH AND TO PROCEED IN THIS MANNER.  THEY

10:48AM 6  HAVE THE BURDEN.

10:48AM 7    WE HAVE THE ABILITY TO SAY THAT THERE'S AN OBVIOUS WAY FOR

10:48AM 8  THEM TO HAVE MET THAT BURDEN, AND THEY DIDN'T DO IT.

10:48AM 9    AND WITH THAT I'LL PAUSE AND TAKE ANY QUESTIONS THAT THE

10:48AM 10  COURT MAY HAVE.

10:48AM 11    THE COURT:  ALL RIGHT.  WELL, THANK YOU.

10:48AM 12    WELL, FIRST OF ALL, I PROMISED WE WOULD TAKE A BREAK EVERY

10:49AM 13  HOUR.  I DON'T KNOW IF YOUR TEAM IS READY FOR A BREAK NOW OR

10:49AM 14  NOT, BUT NOW WOULD BE THE TIME TO TAKE A BREAK.

10:49AM 15    I DO HAVE -- AND I THINK YOU HIT ON A THRESHOLD ISSUE

10:49AM 16  PERHAPS ABOUT THIS MOTION, AND IT REALLY IS THE LIS DATABASE.

10:49AM 17  AND MY NOTES TO MYSELF SAY "WHAT ARE WE GOING TO DO ABOUT THIS

10:49AM 18  AND WHEN?"

10:49AM 19    I'M LOOKING AT THE GOVERNMENT.  WHEN DO WE DEAL WITH THIS

10:49AM 20  ISSUE?  BECAUSE I EXPECT WHEN THE GOVERNMENT STANDS AT THEIR

10:49AM 21  LECTERN TO TALK TO ME ABOUT THIS, THEY HAVE -- I KNOW IT WON'T

10:49AM 22  SURPRISE YOU -- PROBABLY A 180 DIFFERENT VIEW OF THE LIS.  AND

10:49AM 23  THERE'S A FACTUAL DISPUTE, ISN'T THERE, ABOUT HOW THAT

10:49AM 24  OCCURRED, AND WHETHER OR NOT SOMEBODY KNEW OR WHERE IS THE KEY?

10:49AM 25  AND NOBODY COULD FIND THE KEY.

52

10:49AM  1          AND THERE WERE LAW FIRMS MENTIONED WHO KNEW ABOUT THE KEY

10:49AM  2     AND WHO WERE IN COMMUNICATION, AND YET THE KEY IS NOT

10:50AM  3     DISCOVERED.  AND ULTIMATELY, AS I UNDERSTAND THE FACTS AT LEAST

10:50AM  4     FROM THE BRIEFING, THE DATABASE WAS DECONSTRUCTED, DESTROYED

10:50AM  5     SUCH THAT IT COULD NOT BE RECONSTRUCTED FOR OUR USE IN THIS

10:50AM  6     TRIAL, AS YOU POINT OUT, VERY IMPORTANT FOR THIS PARTICULAR

10:50AM  7     TRIAL.

10:50AM  8          THE GOVERNMENT ASKED, AS I'VE LEARNED IN THE BRIEFING, THE

10:50AM  9     GOVERNMENT ASKED FOR A COPY, A PROXY COPY, I BELIEVE IT'S

10:50AM 10     CALLED, OF THAT DATABASE, AND THEY WERE PROVIDED SOMETHING, BUT

10:50AM 11     WHAT THEY WEREN'T PROVIDED WAS A KEY.

10:50AM 12          AND WE CAN TALK ABOUT WHERE THE KEY IS, WHAT HAPPENED AND

10:50AM 13     ALL OF THAT.  BUT LET'S TAKE OUR BREAK NOW.  AND THOSE ARE

10:50AM 14     THINGS THAT I'LL HEAR FROM YOU ABOUT PERHAPS.

10:50AM 15          BUT REALLY THE QUESTION IS WHAT DO WE DO ABOUT THE LIS AND

10:50AM 16     IS THAT THE BASIS OF ADDITIONAL LITIGATION BRIEFING OF HOW

10:51AM 17     WE'RE GOING TO DEAL WITH THAT IF IT'S GOING TO COME INTO THIS

10:51AM 18     CASE, AND IS THAT SOMETHING THAT IS BEYOND THE SCOPE OF THIS

10:51AM 19     PARTICULAR MOTION IN LIMINE?  I THINK IT MIGHT BE.

10:51AM 20          THERE'S REFERENCE TO THE LIS IN THIS, BUT THERE'S NO

10:51AM 21     SUGGESTION AS TO -- THERE'S CRITICISM ABOUT IT.  THERE'S

10:51AM 22     SUGGESTION THAT IT'S AT ISSUE, BUT THERE'S NOTHING IN THE

10:51AM 23     BRIEFING THAT SUGGESTS WHAT THE PARTIES WANT TO DO ABOUT IT,

10:51AM 24     AND THAT WAS A QUESTION THAT I WAS GOING TO HAVE FOR BOTH

10:51AM 25     SIDES.

53

10:51AM 1      SO LET'S GIVE YOU AN OPPORTUNITY TO THINK ABOUT THAT

10:51AM 2  QUESTION.  AND WE'LL TAKE A TEN MINUTE BREAK, WE WILL COME

10:51AM 3  BACK, AND THEN WE'LL CONCLUDE FOR THE MORNING AND TAKE OUR

10:51AM 4  LUNCH BREAK.  AND COME BACK AFTER THIS.

10:51AM 5      WE'LL TAKE TEN MINUTES.

10:51AM 6          MR. WADE:  THANK YOU, YOUR HONOR.

10:51AM 7      (RECESS FROM 10:51 A.M. UNTIL 11:09 A.M.)

11:09AM 8          THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

11:09AM 9  THE RECORD.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE

11:09AM 10  AGAIN.  AND WE HAD OUR BREAK.

11:09AM 11      MR. DOWNEY, I THINK I LEFT YOU AT THE BREAK WITH A

11:09AM 12  QUESTION OR A POTENTIAL QUESTION THAT THE COURT HAD ABOUT THE

11:09AM 13  LIS AND WHAT SHOULD BE DONE ABOUT IT, THE ISSUE I SHOULD SAY.

11:09AM 14          MR. WADE:  YES, YOUR HONOR.  LET ME ADDRESS THAT

11:09AM 15  BRIEFLY.

11:09AM 16      FIRST OF ALL, I BELIEVE THE ISSUE IS BEFORE THE COURT AT

11:09AM 17  DOCKET 565 AT 4 IN CONNECTION WITH A MOTION TO EXCLUDE CERTAIN

11:10AM 18  404(B) EVIDENCE THAT INVOLVES THERANOS EMPLOYEES UNRELATED TO

11:10AM 19  MS. HOLMES.  WE MOVED TO EXCLUDE ANY OFFER OF EVIDENCE BY THE

11:10AM 20  GOVERNMENT OF LIS, OF THE ALLEGED LIS DESTRUCTION.  SO I

11:10AM 21  BELIEVE IT IS BEFORE THE COURT.  THAT MOTION WILL BE ADDRESSED

11:10AM 22  IN MORE DETAIL I BELIEVE TOMORROW, BUT I BELIEVE THE MATTER IS

11:10AM 23  RIPE BEFORE THE COURT.

11:10AM 24      WITH RESPECT TO THE EVIDENCE ITSELF AND HOW IT WORKS INTO

11:10AM 25  THIS CASE OR WHETHER IT WORKS INTO THIS CASE, LET ME REITERATE

54

| | | |
|---|---|---|
| 11:10AM | 1 | A COUPLE OF POINTS.  ONE, THE GOVERNMENT KNEW ABOUT THIS |
| 11:10AM | 2 | EVIDENCE FOR YEARS BEFORE IT RETURNED AN INVESTIGATION.  WE |
| 11:10AM | 3 | CITE THE EXHIBITS IN OUR MOTION PAPERS, BUT THERE'S A LETTER |
| 11:10AM | 4 | ADVISING THEM OF THIS IN DECEMBER OF 2016.  IT'S CLEAR THAT |
| 11:10AM | 5 | THEY KNEW ABOUT IT THROUGHOUT 2018, AND WERE IN DISCUSSIONS |
| 11:10AM | 6 | WITH COMPANY COUNSEL ABOUT THIS DATABASE. |
| 11:10AM | 7 | THEY ALSO KNEW THAT THE COMPANY WAS GOING TO CLOSE. |
| 11:11AM | 8 | THERE'S EVIDENCE WITHIN -- FROM WITHIN THE GOVERNMENT FILES |
| 11:11AM | 9 | THAT THEY KNEW THE FINANCIAL TRAJECTORY OF THERANOS AT THAT |
| 11:11AM | 10 | TIME AND THAT IT WAS LIKELY TO CLOSE. |
| 11:11AM | 11 | IN FACT, GOVERNMENT PERSONNEL, FBI AGENTS, TOOK A TRUCK |
| 11:11AM | 12 | AND DROVE TO THE THERANOS FACILITY AND BACKED IT UP AND GOT A |
| 11:11AM | 13 | WHOLE SLEW OF EVIDENCE FROM THE THERANOS FACILITY JUST AS IT |
| 11:11AM | 14 | WAS ABOUT TO CLOSE. |
| 11:11AM | 15 | IT COULD HAVE EASILY GOTTEN THE LIS DATABASE |
| 11:11AM | 16 | INFRASTRUCTURE AND PUT IT ON THAT TRUCK.  IT CHOSE NOT TO. |
| 11:11AM | 17 | IT IS A FUNDAMENTAL PRINCIPLE OF LAW THAT THE GOVERNMENT |
| 11:11AM | 18 | NEEDS TO OBTAIN THE EVIDENCE IT NEEDS TO PROVE ITS CASE BEFORE |
| 11:11AM | 19 | IT RETURNS AN INDICTMENT. |
| 11:11AM | 20 | NOW, THERE HAS BEEN A LOT OF GRAND JURY ACTIVITY IN THIS |
| 11:11AM | 21 | CASE, YOUR HONOR, AND I WILL SET ASIDE WITH SOME RESTRAINT THE |
| 11:11AM | 22 | PROPRIETARY OF SOME OF THAT GRAND JURY ACTIVITY AND WHETHER |
| 11:12AM | 23 | IT'S BEING USED AS A DISCOVERY MECHANISM. |
| 11:12AM | 24 | HERE THE GOVERNMENT SAYS IT IS NOT, AND WE WILL ACCEPT |
| 11:12AM | 25 | THEM AT THEIR WORD.  THEY HAVE A SEPARATE MATTER THAT RELATES |

11:12AM  1    TO THIS AS IT RELATES TO THE GRAND JURY, AND I WON'T GO INTO

11:12AM  2    THAT MORE DEEPLY IN THIS FORUM.

11:12AM  3        BUT AT THE TIME THAT THEY CHOSE TO BRING ITS CASE, IT HAD

11:12AM  4    TO HAVE EVIDENCE TO PROVE ITS CASE.  IT DIDN'T HAVE THAT

11:12AM  5    EVIDENCE.  IT HAD NOT OBTAINED THAT DATABASE.  IT NOW HAS TO

11:12AM  6    SUFFER THE CONSEQUENCES OF THAT.

11:12AM  7        WHATEVER HAPPENED THEREAFTER WITH RESPECT TO THAT DATABASE

11:12AM  8    COULD BE THE SUBJECT OF A TRIAL UNTO ITSELF, CERTAINLY A MINI

11:12AM  9    TRIAL WITHIN THIS TRIAL THAT WOULD INVOLVE WITNESSES.  THERE

11:12AM 10    HAVE ABOUT 20 WITNESSES THAT HAVE BEEN INTERVIEWED OR HAVE

11:12AM 11    GIVEN TESTIMONY IN CONNECTION WITH THAT MATTER.  THAT DOES NOT

11:12AM 12    INCLUDE GOVERNMENT PERSONNEL WHO WOULD BE RELEVANT TO THAT

11:13AM 13    CASE, INCLUDING EVERY MEMBER OF THE PROSECUTION TEAM WHO WOULD

11:13AM 14    BE A WITNESS AS TO WHETHER THEY TOOK APPROPRIATE STEPS TO

11:13AM 15    OBTAIN THAT EVIDENCE WHEN THEY KNEW ABOUT IT FOR YEARS AND WHEN

11:13AM 16    IT WAS PRODUCED TO THEM.

11:13AM 17        BECAUSE IF YOU LOOK AT THE BRADY LETTER THAT IS SET FORTH

11:13AM 18    AND AS AN EXHIBIT TO OUR MOTION, YOU'LL SEE IT'S THE LONGEST

11:13AM 19    BRADY LETTER I'VE EVER RECEIVED.  IT'S MORE THAN 20 PAGES, I

11:13AM 20    BELIEVE, AND IT SETS FORTH THE CHRONOLOGY IN EXCRUCIATING

11:13AM 21    DETAIL AS TO WHEN THE GOVERNMENT LEARNED ABOUT THE FACT THAT

11:13AM 22    THE COMPANY WAS CLOSING, WHEN IT KNEW ABOUT THE LIS, WHEN IT

11:13AM 23    KNEW ABOUT ALL OF THIS INFORMATION, AND WHEN IT GOT THAT COPY

11:13AM 24    AND HOW IT DEALT WITH THAT COPY WELL KNOWING THAT THE COMPANY

11:13AM 25    WAS ABOUT TO CLOSE.

11:13AM 1          NOT EXPEDITIOUSLY, NOT THOROUGHLY, AND NOT DILIGENTLY.

11:13AM 2     SORT OF SLOWLY.

11:13AM 3          AND THEN IT WENT TO ITS OWN INTERNAL EXPERTS WITHIN THE

11:13AM 4     U.S. ATTORNEY'S OFFICE AND SOUGHT GUIDANCE AS TO HOW THEY MIGHT

11:14AM 5     ACCESS THAT.  THEY GOT VERY GOOD ADVICE IT TURNS OUT BECAUSE IT

11:14AM 6     WASN'T JUST THE COPY THAT WAS RELEVANT THAT THEY HAD WHERE THEY

11:14AM 7     HAD AN ISSUE WITH THE KEY.  THAT'S A LITTLE BIT OF A RED

11:14AM 8     HERRING THERE.  THERE WAS ALSO A COPY ON A SERVER SYSTEM THAT

11:14AM 9     THERANOS HAD.

11:14AM 10          AND THEIR OWN EXPERT, THEIR OWN INTERNAL LITIGATION

11:14AM 11     SUPPORT EXPERT WHO WOULD BE A WITNESS IN THIS MINI TRIAL SAYS

11:14AM 12     YOU CAN GO AND GET ALL OF THAT HARDWARE AND RECREATE IT WITHIN

11:14AM 13     THE U.S. ATTORNEY'S OFFICE, BUT THEY NEVER DID THAT.  THEY

11:14AM 14     DIDN'T DO MUCH OF ANYTHING FOR A YEAR AND A HALF.

11:14AM 15          NOW, IN THE INTERVENING PERIOD THE ASSIGNEE, WHO TOOK OVER

11:14AM 16     FOR THERANOS THEREAFTER, GAVE UP THE SERVERS.  THE HARDWARE

11:14AM 17     INFRASTRUCTURE ON WHICH THAT SYSTEM OPERATED, THOSE WERE

11:15AM 18     RETURNED TO LEASEES -- LEASORS.

11:15AM 19          SO AT THAT POINT THE ABILITY TO RECONSTRUCT THE

11:15AM 20     LIS DATABASE WAS GONE, BUT AT THE TIME THAT THEY TOOK IT DOWN

11:15AM 21     TO PUT IT IN STORAGE, THE TESTIMONY OF THE EXPERTS IN THIS

11:15AM 22     MATTER SUGGEST THAT THEY THOUGHT THAT THEY COULD GET IT BACK UP

11:15AM 23     WITHIN A MONTH.  THAT'S WHAT -- I'M NOT GOING TO IDENTIFY

11:15AM 24     NAMES.  I COULD DO THAT IN A SEPARATE PROCEEDING IF IT'S

11:15AM 25     HELPFUL TO THE COURT.  I THINK THE COURT KNOWS SOME OF THE

57

11:15AM 1  NAMES, BUT SOME OF THE RELEVANT I.T. PROFESSIONALS WHO ARE

11:15AM 2  INVOLVED IN THAT JUDGMENT, THE MOST KNOWLEDGEABLE I.T.

11:15AM 3  PROFESSIONALS HAVE OFFERED STATEMENTS TO SAY THAT THEY THOUGHT

11:15AM 4  THEY COULD OFFER THAT -- THEY COULD PUT THIS DATABASE BACK

11:15AM 5  TOGETHER WITHIN A MONTH.  SO THE COPY IS ONE THING.  THE

11:16AM 6  EXISTING INFRASTRUCTURE IS ANOTHER.

11:16AM 7      SO THE GOVERNMENT'S FAILURE TO MOVE ON THAT IS A

11:16AM 8  SIGNIFICANT ISSUE WITH RESPECT TO THIS MATTER.

11:16AM 9      NOW, YOUR HONOR, I HAVE A SOLUTION TO THIS MESS, WHICH IS

11:16AM 10  DOCKET 565 AT 4.  THIS HAS NOTHING TO DO WITH ELIZABETH HOLMES.

11:16AM 11  NOTHING.  THE GOVERNMENT DOESN'T -- THE GOVERNMENT TRIED IN ITS

11:16AM 12  OPPOSITION TO OUR ANECDOTAL EVIDENCE MOTION TO CREATE A

11:16AM 13  NEFARIOUS IMPLICATION THAT COUNSEL FOR MS. HOLMES WAS INVOLVED.

11:16AM 14      WE DISABUSED THEM OF THAT.  THEY DID IT BASED ON A

11:16AM 15  PRIVILEGE LOG.  I'M SURE THEY DID IT IN GOOD FAITH.  THEY HAVE

11:16AM 16  OVERREAD THE PRIVILEGE LOG.  THOSE DOCUMENTS HAVE NOTHING TO DO

11:16AM 17  WITH LIS.  AND AS WE SAID IN OUR BRIEFING, WE WOULD BE PREPARED

11:16AM 18  TO OFFER THEM TO THE COURT IN CAMERA TO DEMONSTRATE THAT.

11:16AM 19      BUT THERE'S NO, NO OFFER OF PROOF THAT THE GOVERNMENT CAN

11:17AM 20  MAKE THAT MS. HOLMES, OR HER COUNSEL OR ANYONE ELSE, HAD ANY

11:17AM 21  ROLE WHATSOEVER IN THE DISMANTLING OF THAT OR THE PRODUCTION OF

11:17AM 22  THE COPY, EITHER ONE OF THE TWO OPTIONS.

11:17AM 23      GIVEN THAT, THAT HAS NO ROLE IN THIS CASE WHICH RELATES TO

11:17AM 24  MS. HOLMES.  IT'S IRRELEVANT UNDER 401, AND IT WOULD BE

11:17AM 25  INCREDIBLY PREJUDICIAL UNDER 403 SINCE SHE HAD NOTHING TO DO

11:17AM 1    WITH IT.  BUT JUST BECAUSE THE GOVERNMENT CAN'T GET INTO THAT

11:17AM 2    DOESN'T MEAN THAT WE DON'T GET TO STAND IN FRONT OF THE JURORS

11:17AM 3    AND SAY THAT THEIR FAILURE TO GET THE EVIDENCE BEFORE BRINGING

11:17AM 4    THE INDICTMENT IS A CRITICAL DEFICIENCY IN THEIR CASE.  WE

11:17AM 5    FULLY INTEND TO DO THAT.

11:17AM 6        THE FACT THAT THEY TRIED TO GET IT LATER AND MAKE WHOEVER

11:17AM 7    SHOT WHO WITH RESPECT TO THAT IS FOR ANOTHER PROCEEDING.

11:17AM 8    THAT'S NOT RELEVANT TO THIS CASE.

11:17AM 9        WHAT IS RELEVANT IS THAT AT THE TIME THAT THEY SERVED THE

11:18AM 10   INDICTMENT, THEY HAD EVIDENCE THAT THEY, I ASSUME, REPRESENTED

11:18AM 11   TO THE GRAND JURY BY WHICH THEY COULD PROVE IT, AND THEY DON'T.

11:18AM 12       NOW, THAT IS WHY THOSE DEFICIENCIES ARE WHY THE GOVERNMENT

11:18AM 13   CONTINUES TO COME BACK TO THESE ANECDOTES.  IT'S THE ONLY THING

11:18AM 14   THAT THEY'VE GOT.  AND WHY THEY CONTINUE TO CALL THESE PATIENTS

11:18AM 15   VICTIMS, WHICH IS A PRESUMPTION.  THEY DON'T HAVE EVIDENCE THAT

11:18AM 16   THEY'RE VICTIMS.

11:18AM 17       THEY HAVE EVIDENCE THAT THEY DID NOT GET ACCURATE TEST

11:18AM 18   RESULTS.  WE DON'T KNOW WHY THEY DIDN'T GET ACCURATE TEST

11:18AM 19   RESULTS, BUT IF WE ASSUME FOR ARGUMENT SAKE -- IT'S NOT CLEAR

11:18AM 20   SOME OF THEM -- ALL OF THEM GOT INACCURATE TEST RESULTS, WE'RE

11:18AM 21   NOT CONCEDING THAT, BUT EVEN IF YOU DO, WE DON'T KNOW WHY

11:18AM 22   BECAUSE THE GOVERNMENT HASN'T DONE THE ANALYSIS NECESSARY TO DO

11:18AM 23   THAT.

11:18AM 24       AND IT'S VERY TELLING, YOUR HONOR, YOU SAW THE CIRCULAR

11:19AM 25   CHART FROM MS. SAHARIA.  I THINK IF ONE OF THESE PATIENTS FALLS

59

11:19AM 1    WITHIN -- THEIR OWN EXPERT WILL NOT SUPPORT THIS VIEW, NOT

11:19AM 2    ONLY -- NOT JUST WITH RESPECT TO PROCESS, THE IDEA THAT ONE

11:19AM 3    CUSTOMER IS EVIDENCE OF INABILITY TO PROVIDE ACCURATE AND

11:19AM 4    RELIABLE RESULTS, BUT THEIR OWN EXPERT WON'T OPINE ON MANY OF

11:19AM 5    THE ASSAYS THAT THESE VERY PATIENTS RECEIVED.

11:19AM 6        IF I MIGHT BEFORE I STOP AND TAKE QUESTIONS FROM THE

11:19AM 7    COURT, I THINK IF WE'RE HONEST ABOUT THE ELEPHANT IN THE ROOM,

11:19AM 8    IF THE COURT LOOKS AT THE LANGUAGE THAT IS USED BY THE LANGUAGE

11:19AM 9    TO DESCRIBE SUPPOSED VICTIMS, THESE HARROWING EXPERIENCES, AND

11:19AM 10   THESE, LIKE, POTENTIAL HUGE CONSEQUENCES.  YOU KNOW, THEY

11:19AM 11   CLEARLY -- THE EMOTIONAL APPEAL OF THIS EVIDENCE IS WHY THEY

11:19AM 12   WANT TO OFFER IT.  THAT WOULD BE THE SUBJECT OF A MOTION.  IT'S

11:19AM 13   EXACTLY WHY IT'S NOT -- IT'S PARTICULARLY WHY IT'S NOT

11:20AM 14   PERMISSIBLE BECAUSE IT'S HIGHLY PREJUDICIAL.

11:20AM 15       BUT EVEN BEFORE WE GET TO THAT 403 BALANCING, EVEN BEFORE

11:20AM 16   WE GET TO THE -- WHAT IS ALWAYS THERE, IT GOES TO WEIGHT, IT

11:20AM 17   HAS TO BE RELEVANT.  IT HAS TO BE RELEVANT AND THE FOUNDATION

11:20AM 18   OF ITS RELEVANCE HAS TO BE OFFERED BEFORE A WEIGHT ANALYSIS IS

11:20AM 19   ENGAGED IN WHATSOEVER.

11:20AM 20           THE COURT:  WELL, IS IT RELEVANT FOR A PATIENT TO

11:20AM 21   SAY I PAID MONEY TO THERANOS FOR ONE OF THEIR TESTS.  I WAS

11:20AM 22   INTRIGUED BY THE ADVERTISING, AND WHATEVER, AND THE

11:20AM 23   REPRESENTATIONS MADE.  ALTHOUGH RELIANCE IS NOT NECESSARY, WE

11:20AM 24   KNOW THAT.

11:20AM 25       BUT A PATIENT SAYS, I PAID MONEY FOR THIS, I DIDN'T GET

11:20AM 1    WHAT I PAID FOR I DISCOVERED.  THE TEST WAS ERRONEOUS.

11:20AM 2         ISN'T THAT RELEVANT?  DOES THAT HAVE SOME RELEVANCE?

11:20AM 3              MR. WADE:  NO, BECAUSE WE DON'T KNOW WHY IT WAS

11:20AM 4    ERRONEOUS, YOUR HONOR.  THAT'S THE WHOLE POINT.  THERE HAS TO

11:21AM 5    BE A CAUSAL CONNECTION.

11:21AM 6         IT WOULD BE LIKE SAYING, YOUR HONOR, I WANT TO PROVE -- I

11:21AM 7    WANT TO CONVICT DR. FAUCCI OF FRAUD BY SAYING THAT THESE

11:21AM 8    VACCINES ARE GREAT AND INCREDIBLY RELIABLE AND SAFE.

11:21AM 9         MY EVIDENCE OF THAT IS NOT THE REGULATORY APPROVALS, IT'S

11:21AM 10   NOT ALL OF THE TESTING DATA THAT THEY DID, IT'S NOT THE

11:21AM 11   UNIVERSE OF MATERIAL AS A WHOLE.  IT'S ONE PERSON WHO HAS A

11:21AM 12   BLOOD CLOT AND TWO PEOPLE WHO DIE WITHIN A WEEK.

11:21AM 13              THE COURT:  BUT THE DIFFERENCE IS THAT DR. FAUCCI IS

11:21AM 14   NOT MAKING MONEY ON THE REPRESENTATION, IS HE?  HE'S MAKING AN

11:21AM 15   OBSERVATION -- PERHAPS IF HE SAID SUCH A THING HE IS MAKING AN

11:21AM 16   OBSERVATION.

11:21AM 17        IT'S A LITTLE DIFFERENT HERE WHERE A COMPANY REPRESENTS

11:21AM 18   ITSELF AND ITS ABILITY TO DO CERTAIN THINGS, AND SOMEBODY HIRES

11:21AM 19   THE COMPANY, TAKES THE TEST, AND THEN THEY DIDN'T GET WHAT THEY

11:21AM 20   THOUGHT THEY WERE GOING TO GET.  END OF STORY.  PERIOD.  HARD

11:21AM 21   STOP THERE.

11:21AM 22        ISN'T THAT RELEVANT THAT I PAID FOR SOMETHING AND I DIDN'T

11:22AM 23   GET IT?

11:22AM 24              MR. WADE:  WELL, THE GOVERNMENT -- NO, IN SHORT,

11:22AM 25   BECAUSE WE DON'T KNOW WHY THEY DIDN'T GET IT.

61

11:22AM 1    AGAIN, THE GOVERNMENT CAN'T EVEN -- WITH THESE STATISTICS

11:22AM 2    CANNOT EVEN SHOW ASSOCIATION MUCH LESS CAUSATION.  WE DON'T

11:22AM 3    KNOW WHAT CAUSED THE -- THE DYNAMIC PROCESS OF BLOOD TESTING,

11:22AM 4    YOUR HONOR --

11:22AM 5         THE COURT:  SO IS THAT THE RESPONSIBILITY OF THE

11:22AM 6    CUSTOMER, THE CLIENT, TO SAY I DIDN'T GET WHAT I WANTED BECAUSE

11:22AM 7    YOU SAID THAT YOU WOULD GIVE ME AN ACCURATE TEST AND IF YOU

11:22AM 8    CALLED -- IF YOU GO TO A COMPANY AND SAY A CUSTOMER GOES TO THE

11:22AM 9    COMPANY AND SAYS, YOU DIDN'T GIVE ME WHAT I WANT, AND WHAT YOU

11:22AM 10   REPRESENTED.  IS THE COMPANY THEN SUPPOSED TO SAY, WELL, YEAH.

11:22AM 11   PROVE IT?  TELL ME WHY?  I'M NOT GOING TO GIVE YOU ANY RELIEF

11:22AM 12   UNTIL YOU PROVE TO ME WHY YOU THINK.  AND PUT THE BURDEN ON THE

11:22AM 13   CLIENT TO DISPROVE THAT?  IS THAT HOW IT WORKS?

11:22AM 14        MR. WADE:  WELL, YOUR HONOR --

11:22AM 15        THE COURT:  IS THAT TOO SIMPLE?

11:22AM 16        MR. WADE:  YOU'RE ESSENTIALLY TALKING ABOUT A

11:23AM 17   CUSTOMER SERVICE COMPLAINT AND A RESPONSE TO THAT WHICH IS

11:23AM 18   SOMEWHAT INTERESTING BECAUSE THE THEORY THAT THE GOVERNMENT

11:23AM 19   SETS FORTH WOULD BASICALLY -- THE IMPLICATION OF THE

11:23AM 20   GOVERNMENT'S ARGUMENT, THE BREADTH OF ITS CONTENTION IS WHEN

11:23AM 21   ALMOST ANYBODY WHO OFFERS A PRODUCT OR SERVICE COMES FORWARD

11:23AM 22   AND SAYS THIS IS A GOOD PRODUCT, NOT JUST DIRECTLY BUT DIRECTLY

11:23AM 23   AND IMPLICITLY ACCORDING TO THE GOVERNMENT, AND THEN THERE'S

11:23AM 24   ANY COMPLAINT ABOUT IT, THAT'S EVIDENCE OF FRAUD WITHOUT

11:23AM 25   SHOWING WHETHER, YOU KNOW, THERE'S A CAUSAL LINK BETWEEN THE

11:23AM 1    SERVICE THAT IS PROVIDED AND THE HARM OR COMPLAINT THAT

11:23AM 2    RESULTS.  THAT'S THE CRITICAL PIECE.

11:23AM 3        AND, YOUR HONOR, PUTTING A DRUG COMPANY CEO IN THE PLACE

11:23AM 4    OF DR. FAUCCI, THE ADMISSIBLE -- THE EVIDENCE WOULD BE NO MORE

11:23AM 5    ADMISSIBLE.  THOSE ADMIRATIONAL ANECDOTES, WHICH ARE COMPLETELY

11:23AM 6    EXPECTED IN THE SAME WAY THAT ERRORS ARE EXPECTED WITHIN A LAB,

11:23AM 7    ARE NO MORE ADMISSIBLE TO PROVE THAT IN AND OF THEMSELVES THAN

11:24AM 8    THAT ANYTHING ELSE.

11:24AM 9        THE COURT:  LET ME ASK IT THIS WAY.  IT SEEMS LIKE

11:24AM 10   WHAT YOU'RE SAYING IS THAT -- I LOOKED AT MS. SAHARIA'S CHART

11:24AM 11   AND THE CASCADING CIRCLES THERE, AND IT SEEMS LIKE IT'S REALLY

11:24AM 12   A WEIGHT ISSUE.  ISN'T IT MORE OF A WEIGHT ISSUE?  AND ISN'T

11:24AM 13   THAT YOUR CLOSING ARGUMENT THAT IT IS A 1 IN A MILLION AND THIS

11:24AM 14   IS THE BEST THAT YOU CAN DO, LADIES AND GENTLEMEN, AND YOU

11:24AM 15   CAN'T CONVICT ON THAT?  ISN'T IT REALLY A WEIGHT ISSUE?

11:24AM 16       MR. WADE:  IT'S NOT A WEIGHT ISSUE, YOUR HONOR,

11:24AM 17   BECAUSE WEIGHT ONLY COMES TO BEAR IN A CASE ONCE THE EVIDENCE

11:24AM 18   HAS A TICKET TO ADMISSION.

11:24AM 19       SO THEY STILL, BEFORE THEY DO -- OTHERWISE IT EFFECTIVELY

11:24AM 20   SHIFTS THE BURDEN TO MS. HOLMES.  THEY HAVE THE BURDEN OF

11:24AM 21   PROVING THEIR CASE.  THEY HAVE CHOSEN TO MAKE THESE BROAD

11:24AM 22   ALLEGATIONS WITH RESPECT TO ACCURACY AND RELIABILITY.

11:24AM 23       THE EVIDENCE THAT THEY'RE WANTING TO OFFER ON THESE

11:25AM 24   PATIENTS IS NOT RELEVANT TO THAT BECAUSE THEY HAVE NOT

11:25AM 25   ESTABLISHED THAT CAUSAL LINK EITHER SPECIFICALLY IN THE

63

11:25AM 1    LIS DATABASE OR STATISTICALLY IN CONNECTION WITH SOME VALID

11:25AM 2    SCIENTIFIC STUDY.

11:25AM 3        THERE ARE MECHANISMS BY WHICH THEY COULD DO IT.  YOU WOULD

11:25AM 4    EXPECT IF THEY WERE TO CHOOSE TO DO THAT THEY WOULD ENGAGE IN

11:25AM 5    ONE OF THOSE MECHANISMS.  BUT WHEN THEY DON'T DO THAT, THEY

11:25AM 6    CAN'T SCOUR THE EARTH, WHICH THEY HAVE DONE HERE FOR YEARS IN A

11:25AM 7    HIGH PROFILE CASE, YOUR HONOR, WHERE PEOPLE ARE COMING OUT OF

11:25AM 8    THE WOODWORK, AND THEY WANT TO TAKE 1 IN A MILLION PATIENTS AND

11:25AM 9    PUT THEM IN FRONT OF THE JURY AND SHIFT THE BURDEN TO

11:25AM 10   MS. HOLMES TO SAY THESE PEOPLE PROVED THAT THEY WERE NOT

11:25AM 11   CAPABLE OF PRODUCING ACCURATE AND RELIABLE RESULTS AND NOW WE,

11:25AM 12   WITHOUT THE LIS DATABASE, HAVE THE BURDEN OF SAYING THERE'S NO

11:25AM 13   CAUSATION.

11:25AM 14       THEY HAVE TO ESTABLISH THE CAUSATION BEFORE IT BECOMES

11:25AM 15   RELEVANT IN THIS CASE.  WE DON'T -- FOR ALL WE KNOW, THERE

11:25AM 16   COULD BE DIET, THERE COULD BE MEDICATION, THERE COULD BE HEALTH

11:26AM 17   CONDITIONS.  THERE COULD BE OTHER THINGS THAT CAUSE THOSE

11:26AM 18   ERRONEOUS RESULTS.  WE DON'T KNOW THAT.

11:26AM 19           THE COURT:  OKAY.  GIVE ME JUST A MOMENT.

11:26AM 20       I'VE BEEN PASSED A NOTE THAT TELLS ME THAT OUR CONFERENCE

11:26AM 21   LINE WAS DISCONNECTED AND THE PUBLIC CAN NO LONGER HEAR.

11:26AM 22       HAS THAT BEEN CORRECTED?

11:26AM 23           THE CLERK:  YOUR HONOR, I DID NOT WANT TO INTERRUPT

11:26AM 24   THE PROCEEDINGS BUT THERE'S NO WAY FOR ME, THERE'S NO WAY FOR

11:26AM 25   ME TO RECONNECT WITHOUT GOING THROUGH THE P.A. AND INTERRUPTING

64

11:26AM 1     THESE PROCEEDINGS --

11:26AM 2             THE COURT:  WELL, THIS IS --

11:26AM 3             THE CLERK:  -- TO GET THEM BACK ON.

11:26AM 4             THE COURT:  SO WHAT DO WE NEED TO DO, PAUSE THESE

11:26AM 5     PROCEEDINGS?

11:26AM 6             THE CLERK:  CAN WE TAKE A FIVE MINUTE BREAK.  I

11:26AM 7     APOLOGIZE, YOUR HONOR.

11:26AM 8             THE COURT:  LET'S DO THAT.  I THINK THE PUBLIC HAS A

11:26AM 9     RIGHT TO HEAR.  WE'RE NOT ALLOWING THEM INTO THE COURTROOM

11:26AM 10    BECAUSE OF OUR HEALTH CONDITIONS, BUT WE ARE OFFERING THEM THE

11:26AM 11    ABILITY TO PARTICIPATE VIA THE TELEPHONE LINE.

11:26AM 12        I THINK BEFORE WE GO FURTHER, COUNSEL, I THINK I WOULD

11:26AM 13    LIKE TO REESTABLISH THE CONNECTION, PLEASE.  SO LET'S TAKE A

11:27AM 14    PAUSE TO DO THAT.

11:27AM 15            MR. WADE:  WE UNDERSTAND, YOUR HONOR.

11:27AM 16            THE CLERK:  COURT IS IN RECESS.

11:27AM 17        (PAUSE IN PROCEEDINGS.)

11:27AM 18            THE COURT:  CAN WE STAY HERE WHILE YOU'RE DOING

11:27AM 19    THAT?

11:27AM 20            THE CLERK:  IF YOU'D LIKE, YOUR HONOR.

11:27AM 21            MR. WADE:  YOUR HONOR, IF I MAY JUST STEP IN HERE.

11:27AM 22            THE COURT:  YES.  GO RIGHT AHEAD.  SURE.

11:27AM 23        (PAUSE IN PROCEEDINGS.)

11:28AM 24            THE CLERK:  WE'RE READY TO PROCEED.

11:28AM 25            THE COURT:  LET ME INDICATE THAT WE'VE RECEIVED

65

11:28AM 1    NOTICE THAT OUR TELEPHONE LINE WAS DISCONNECTED FOR A BRIEF

11:28AM 2    PERIOD OF TIME WHILE COUNSEL WAS SPEAKING.

11:28AM 3        MR. WADE, DO YOU JUST WANT TO SUMMARIZE YOUR LAST COMMENT,

11:28AM 4    AND THEN I'LL TURN TO THE GOVERNMENT TO SEE IF THEY HAVE

11:28AM 5    ANYTHING TO SAY.

11:28AM 6            MR. WADE:  I'M NOT SURE I'LL ADEQUATELY -- I'LL DO

11:28AM 7    IT JUSTICE, YOUR HONOR, A SECOND TIME, BUT I'LL JUST STOP BY

11:29AM 8    SAYING YOUR HONOR ASKED ABOUT WEIGHT.  WE BELIEVE THAT THEY

11:29AM 9    HAVE TO ESTABLISH RELEVANCE BEFORE THEY DO THIS AND BEFORE IT'S

11:29AM 10   ADMISSIBLE AND WEIGHT IS CONSIDERED.

11:29AM 11       BUT I WILL ADD, IN THE EVENT THAT THERE IS SOME MINUSCULE

11:29AM 12   RELEVANCE HERE, THE PREJUDICIAL IMPACT ON SUCH ANECDOTAL

11:29AM 13   EVIDENCE JUST SWAMPS ANY PROBATIVE VALUE BASED ON THE

11:29AM 14   STATISTICALLY ANALYSIS AND PARTICULARLY GIVEN THE LACK OF

11:29AM 15   ACCESS TO THE LIS TO REFUTE THOSE ALLEGATIONS.

11:29AM 16           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

11:29AM 17   YOU.

11:29AM 18       MR. BOSTIC, DO YOU SPEAK FOR THE GOVERNMENT ON THIS

11:29AM 19   MOTION?

11:29AM 20           MR. BOSTIC:  YES, YOUR HONOR.  GOOD MORNING.  IT'S

11:29AM 21   NICE TO SEE YOU.

11:29AM 22           THE COURT:  NICE TO SEE YOU.

11:29AM 23           MR. BOSTIC:  BETWEEN MS. SAHARIA AND MR. WADE

11:29AM 24   THERE'S A LOT TO RESPOND TO, SO I'LL ASK THE COURT'S INDULGENCE

11:29AM 25   THERE.

66

| | | |
|---|---|---|
| 11:29AM | 1 | I WOULD LIKE TO RESPOND TO THE BULK OF MR. WADE'S ARGUMENT |
| 11:29AM | 2 | RELATING TO THE LIS, BUT FIRST I WOULD LIKE TO SPEAK ABOUT |
| 11:29AM | 3 | PATIENT TESTIMONY AND ITS IMPORTANCE IN THIS CASE AND WHY I |
| 11:30AM | 4 | THINK MR. WADE IS ACTUALLY MAKING THE WRONG ARGUMENT OVERALL. |
| 11:30AM | 5 | MR. WADE HIMSELF SAID THAT THE DEFENSE VIEWS THIS CASE |
| 11:30AM | 6 | OSTENSIBLY OR ESSENTIALLY AS A PRODUCTS LIABILITY CASE. THAT'S |
| 11:30AM | 7 | NOT CORRECT. THAT'S NOT THE KIND OF CASE THAT THIS IS. THIS |
| 11:30AM | 8 | IS A CRIMINAL WIRE FRAUD CASE. IT'S VERY DIFFERENT FROM A |
| 11:30AM | 9 | CIVIL PRODUCTS LIABILITY CASE. |
| 11:30AM | 10 | AND TO THE EXTENT THAT THEY SEEK TO DEFEND IT AS A |
| 11:30AM | 11 | PRODUCTS LIABILITY CASE OR SEEK TO EXCLUDE EVIDENCE THAT WOULD |
| 11:30AM | 12 | NOT BE PART OF A PRODUCTS LIABILITY CASE, THAT'S A MISTAKE THAT |
| 11:30AM | 13 | THEY'RE MAKING. IT'S THE WRONG ARGUMENT, AND THE COURT SHOULD |
| 11:30AM | 14 | DENY ANY REQUEST ON THAT BASIS. |
| 11:30AM | 15 | THIS IS NOT A CIVIL ACTION WHERE THE SAFETY OF A PRODUCT |
| 11:30AM | 16 | AND WHETHER IT MEETS INDUSTRY STANDARDS IS THE KEY QUESTION. |
| 11:30AM | 17 | THIS IS A WIRE FRAUD CASE WHERE THE KEY QUESTION IS WHAT DID |
| 11:31AM | 18 | THE DEFENDANT INTEND? DID THE DEFENDANT MAKE KNOWING |
| 11:31AM | 19 | MISREPRESENTATIONS WITH THE INTENT TO DECEIVE AND CHEAT |
| 11:31AM | 20 | CUSTOMERS OF THERANOS? |
| 11:31AM | 21 | THE FACT THAT THE FRAUD IN THIS CASE RELATES TO A PRODUCT |
| 11:31AM | 22 | OFFERED BY A COMPANY DOES NOT TURN IT FROM A CRIMINAL WIRE |
| 11:31AM | 23 | FRAUD CASE INTO A PRODUCTS LIABILITY CASE. IT NEEDS TO BE |
| 11:31AM | 24 | JUDGED BASED ON THE ELEMENTS OF CRIMINAL WIRE FRAUD AND THOSE |
| 11:31AM | 25 | ELEMENTS ALONE. |

11:31AM 1    SO WHAT IS THIS CASE? THIS IS A CASE WHERE THE INDICTMENT

11:31AM 2    ALLEGES THAT THE DEFENDANT DEFRAUDED PATIENTS BY CLAIMING THAT

11:31AM 3    THERANOS TESTS WERE ACCURATE AND RELIABLE WHEN, IN FACT, THEY

11:31AM 4    WERE NOT. AND SHE KNEW IT.

11:31AM 5    PATIENTS PAID FOR THOSE TESTS BELIEVING THAT THEY WOULD

11:31AM 6    RECEIVE ACCURATE AND RELIABLE RESULTS, NOT KNOWING THAT THOSE

11:31AM 7    TESTS SUFFERED FROM ACCURACY AND RELIABILITY PROBLEMS.

11:31AM 8    WHEN THAT HAPPENED, WHEN THEY PAID FOR THOSE TESTS

11:31AM 9    THINKING THAT THEY WERE ACCURATE BUT GOT THE OPPOSITE, THEY

11:31AM 10   BECAME VICTIMS OF DEFENDANT'S FRAUD. AND WE UNDERSTAND THAT

11:32AM 11   THE DEFENSE DOES NOT ACCEPT THE GOVERNMENT'S THEORY OF THE

11:32AM 12   CASE. THE DEFENSE PREVIOUSLY MOVED TO DISMISS THE INDICTMENT

11:32AM 13   BECAUSE THEY DISAGREED WITH THAT THEORY. THE COURT IN LARGE

11:32AM 14   PART DENIED THOSE MOTIONS TO DISMISS. THIS CASE IS HEADING

11:32AM 15   TOWARDS TRIAL ON THAT THEORY AS CHARGED IN THE INDICTMENT.

11:32AM 16   AT TRIAL ACTUAL AND INTENDED VICTIMS OF THE DEFENDANT'S

11:32AM 17   SCHEME TO DEFRAUD WILL TESTIFY AS TO THE FACTS SHOWING THAT

11:32AM 18   THEY DID NOT GET THE BENEFIT OF THEIR BARGAIN. IN OTHER WORDS,

11:32AM 19   THAT MEANS THAT THEY'RE GOING TO TESTIFY THAT THEY SOUGHT OUT

11:32AM 20   TESTING FROM THERANOS AND RECEIVED RESULTS BACK THAT WERE NOT

11:32AM 21   ACCURATE. THAT IS A KEY PART OF THE PROOF IN THIS CASE, AND

11:32AM 22   IT'S TO BE EXPECTED IN ANY FRAUD CASE THAT VICTIMS WOULD

11:32AM 23   TESTIFY ABOUT HOW THEY CAME TO BE DEFRAUDED, HOW THEY MISSED

11:32AM 24   OUT ON THE BENEFIT OF THEIR BARGAIN. THAT SHOULD NOT BE A

11:32AM 25   SURPRISE TO ANYONE.

68

11:32AM 1       BY ARGUING THAT THESE FACTS ARE IRRELEVANT AND THAT THAT

11:32AM 2  VICTIM TESTIMONY IS INADMISSIBLE, DEFENDANT'S MOTION IS ASKING

11:33AM 3  THE COURT TO BLOCK VICTIMS OF THE CHARGED FRAUD FROM TESTIFYING

11:33AM 4  AT TRIAL.  I THINK IT'S IMPORTANT TO PUT THIS IN PERSPECTIVE.

11:33AM 5  THAT'S WHAT THEY'RE ASKING THE COURT TO DO.

11:33AM 6       WHAT A WINDFALL THAT WOULD BE TO ANY DEFENDANT TO BLOCK

11:33AM 7  VICTIMS FROM BEING ABLE TO COME TO THE TRIAL AND TESTIFY ABOUT

11:33AM 8  THEIR EXPERIENCES BEING DEFRAUDED.

11:33AM 9       BUT AT THE SAME TIME WHAT A RADICAL STEP IT WOULD BE FOR A

11:33AM 10  TRIAL COURT TO ISSUE THAT KIND OF EVIDENTIARY RULING.

11:33AM 11       I ALSO WANT TO RESPOND TO THE DEFENSE'S CHARACTERIZATION

11:33AM 12  OF THIS CASE AS AN EXTREMELY BROAD CASE.  THAT'S NOT TRUE,

11:33AM 13  EITHER.

11:33AM 14       THE INDICTMENT IN THIS CASE, WHILE DETAILED, IS

11:33AM 15  MANAGEABLE.  IT INCLUDES A HANDFUL OF WIRE FRAUD COUNTS AND TWO

11:33AM 16  CONSPIRACY COUNTS.  IT'S BASED ON TWO SCHEMES TO DEFRAUD, ONE

11:33AM 17  TARGETING INVESTORS, ONE TARGETING PATIENTS, AND THOSE SCHEMES

11:33AM 18  SPANNED A FEW YEARS EACH.  IT'S AS SIMPLE AS THAT.

11:34AM 19       THE FACT THAT THE COMPANY ENDED UP PERFORMING A LARGE

11:34AM 20  NUMBER OF ASSAYS OVER SEVERAL YEARS DOES NOT MAKE THIS CASE

11:34AM 21  BROADER THAN WHAT I JUST STATED.

11:34AM 22       HOLMES HERSELF AND THE COMPANY MADE BROAD CLAIMS ABOUT THE

11:34AM 23  ACCURACY OF THE TESTS AND THE SUPERIORITY OF THE COMPANY'S

11:34AM 24  TECHNOLOGY VERSUS CONVENTIONAL METHODS.  SO, IF ANYTHING, IT'S

11:34AM 25  THE SIMPLE BREADTH OF THOSE CLAIMS THAT INFORMS THE SCOPE OF

11:34AM 1    THE TRIAL, THE SCOPE OF THE GOVERNMENT'S ALLEGATIONS HERE.

11:34AM 2        I'D LIKE TO TALK BRIEFLY ABOUT THE DEFENSE'S USE OF THE

11:34AM 3    WORD "ANECDOTAL."  IN THIS CASE IT STRIKES THE GOVERNMENT THAT

11:34AM 4    "ANECDOTAL" IS BEING USED AS A PEJORATIVE TERM IN AN EFFORT TO

11:34AM 5    MINIMIZE THE VALIDITY OR THE SIGNIFICANCE OF PATIENT EXPERIENCE

11:34AM 6    TESTIMONY HERE.

11:34AM 7        BUT SURELY THE COURT WILL RECOGNIZE THAT THE VAST MAJORITY

11:34AM 8    OF WITNESS TESTIMONY IN ANY TRIAL COULD BE CHARACTERIZED AS

11:35AM 9    ANECDOTAL.  THIS IS WHAT 95 PERCENT OF WHAT WITNESSES DO.  THEY

11:35AM 10   TAKE THE STAND, THEY SWEAR TO TELL THE TRUTH, AND THEN THEY

11:35AM 11   TELL THE JURY WHAT THEY EXPERIENCED.  THEY TELL THE JURY WHAT

11:35AM 12   THEY OBSERVED, WHAT HAPPENED TO THEM.

11:35AM 13       YOU COULD CHARACTERIZE THOSE AS ANECDOTES, BUT THE WAY

11:35AM 14   THAT THE DEFENSE USES THAT TERM, WE BELIEVE IT'S AN EFFORT TO

11:35AM 15   MINIMIZE AND TRIVIALIZE THAT TESTIMONY THAT SHOULD BE

11:35AM 16   ADMISSIBLE.

11:35AM 17       SO HERE THE VICTIMS OF BOTH SCHEMES TO DEFRAUD WILL

11:35AM 18   TESTIFY ABOUT THEIR RELEVANT EXPERIENCES AND OBSERVATIONS,

11:35AM 19   STATEMENTS MADE TO THEM BY HOLMES OR THERANOS, THE ACTIONS THEY

11:35AM 20   TOOK BASED ON THOSE STATEMENTS, AND THE ACTS THAT SHOW THAT

11:35AM 21   THEY DIDN'T GET THE BENEFIT OF THE BARGAIN.

11:35AM 22       SO WHAT ABOUT THE DEFENSE'S CITED CASES CRITICIZING

11:35AM 23   EVIDENCE FOR BEING MERELY ANECDOTAL?

11:35AM 24       SO THE DEFENDANT'S CASES IF YOU LOOK AT THEM ARE ABOUT THE

11:35AM 25   SUFFICIENCY AND THE TYPE OF EVIDENCE NECESSARY GENERALLY TO

11:35AM  1    PROVE CAUSATION IN CIVIL CASES WHERE ISSUES LIKE CAUSATION AND

11:35AM  2    DAMAGES ARE THE CORE OF THE INQUIRY.

11:36AM  3        AS I MENTIONED BEFORE, THIS IS NOT ONE OF THOSE CASES.

11:36AM  4    THIS IS NOT A CASE WHERE CAUSATION AND DAMAGES ARE GOING TO BE

11:36AM  5    THE ISSUES BEFORE THE JURY.

11:36AM  6        THE DEFENSE HAS CITED CASES THAT INCLUDE CASES ABOUT

11:36AM  7    WHETHER A DIET DRUG CAUSED STROKES, A CASE ABOUT WHETHER A

11:36AM  8    PRESCRIPTION DRUG CAUSED BLEEDING, A CASE ABOUT WHETHER A

11:36AM  9    SUBSTANCE CAUSED HEPATITIS, THERE ARE CITATIONS TO THE

11:36AM  10   REFERENCE MANUAL ON SCIENTIFIC EVIDENCE ARE ALSO ALL ABOUT

11:36AM  11   CAUSATION CASES.

11:36AM  12       THIS IS NOT A CAUSATION CASE.  THIS IS A FRAUD CASE WHERE

11:36AM  13   THE FOCUS, AGAIN, IS ON THE DEFENDANTS'S INTENT AND WHETHER HER

11:36AM  14   KNOWLEDGE OF THERANOS'S ACCURACY AND RELIABILITY PROBLEMS PUT

11:36AM  15   HER ON NOTICE THAT HER REPRESENTATIONS ABOUT THE ACCURACY OF

11:36AM  16   THE TESTS WERE MISLEADING AND WHETHER SHE NONETHELESS MADE

11:36AM  17   THOSE MISREPRESENTATIONS WITH THE INTENT TO DECEIVE AND CHEAT

11:36AM  18   PATIENT VICTIMS.

11:36AM  19       CAUSATION CASES IN CONTRAST RISE AND FALL ON EXPERT

11:36AM  20   TESTIMONY SHOWING A LINK BETWEEN THE MANUFACTURER'S PRODUCT AND

11:36AM  21   SOME HARM SUFFERED BY THE PLAINTIFFS.  SO THAT'S DIFFERENT FROM

11:37AM  22   AN ALLEGATION THAT THE PRODUCTS SIMPLY ISN'T AS DESCRIBED.

11:37AM  23   IT'S DIFFERENT FROM THE ALLEGATION LIKE THE GOVERNMENT AS MADE

11:37AM  24   HERE THAT THE DEFENDANT KNOWINGLY MISLED PEOPLE AS TO THE

11:37AM  25   NATURE OF THE PRODUCT.

71

11:37AM 1    IN PRODUCTS LIABILITY CASES, IF MEMORY SERVES, INTENT IS

11:37AM 2  NOT A KEY FACTOR.  INSTEAD, THE PERFORMANCE OF THE PRODUCT

11:37AM 3  TAKES CENTER STAGE AND STATISTICAL ANALYSIS FOR CAUSATION MIGHT

11:37AM 4  BE MORE IMPORTANT, BUT AGAIN, THIS IS NOT THAT KIND OF CASE, SO

11:37AM 5  DEFENDANT'S RELIANCE ON THOSE CASES IS OF LIMITED USE TO THE

11:37AM 6  COURT.

11:37AM 7    DEFENDANT OBJECTS TO EVEN THE USE OF THE WORD "VICTIM" TO

11:37AM 8  DESCRIBE THESE WITNESSES HERE.  THE GOVERNMENT UNDERSTANDS THAT

11:37AM 9  SHE IS INNOCENT UNTIL PROVEN GUILTY AND, OF COURSE, THE DEFENSE

11:37AM 10  DOES NOT BELIEVE OR MUST ARGUE THAT A FRAUD DID NOT OCCUR HERE.

11:37AM 11    BUT THIS IS THE GOVERNMENT'S CASE AS CHARGED BY THE -- AND

11:37AM 12  AS RETURNED BY THE GRAND JURY IN THE INDICTMENT.  AND AS THE

11:38AM 13  DEFENSE RECOGNIZED, IT IS THE GOVERNMENT THAT HAS THE BURDEN OF

11:38AM 14  PROOF.  WE'RE SIMPLY ASKING THAT THE COURT ALLOW THE GOVERNMENT

11:38AM 15  THE OPPORTUNITY TO PROVE ITS CASE TO SATISFY THAT BURDEN.

11:38AM 16    IT'S ALSO IMPORTANT TO NOTE THAT WHILE DEFENSE'S -- WHILE

11:38AM 17  THE DEFENSE'S ARGUMENTS FOCUS ON THE SUFFICIENCY OF PATIENT

11:38AM 18  TESTIMONY TO SHOW THAT THERE WERE PROBLEMS WITH THERANOS'S

11:38AM 19  TESTS, THAT EVIDENCE SHOULD NOT BE VIEWED IN A VACUUM EITHER AT

11:38AM 20  TRIAL OR BY THE COURT DURING THIS HEARING.

11:38AM 21    AT TRIAL THE GOVERNMENT INTENDS TO PRESENT SEVERAL

11:38AM 22  VARIETIES OF EVIDENCE THAT WILL SHOW THAT THERANOS'S TESTS

11:38AM 23  SUFFERED FROM A WIDE RANGE OF ACCURACY AND RELIABILITY

11:38AM 24  PROBLEMS.  THOSE CATEGORIES WILL INCLUDE, FOR EXAMPLE,

11:38AM 25  TESTIMONY FROM THERANOS EMPLOYEES ABOUT RECURRING PROBLEMS WITH

11:38AM 1    CERTAIN CATEGORIES OF THERANOS'S CLINICAL TESTS.  THOSE

11:39AM 2    RECURRING PROBLEMS AND THEIR EXISTENCE WILL BE CONFIRMED USING

11:39AM 3    PATIENT COMPLAINTS.

11:39AM 4        THERE WILL ALSO BE TESTIMONY ABOUT TECHNICAL CHALLENGES

11:39AM 5    SPECIFIC TO THERANOS'S TECHNOLOGY THAT THE COMPANY WAS NEVER

11:39AM 6    ABLE TO OVERCOME.

11:39AM 7        YOU WILL HEAR TESTIMONY OR THE JURY WILL HEAR TESTIMONY

11:39AM 8    ABOUT QUALITY CONTROL FAILURE RATES AND HOW THERANOS'S DEVICES

11:39AM 9    FAILED QUALITY CONTROL TESTING AT A SIGNIFICANTLY HIGHER RATE

11:39AM 10   THAN CONVENTIONAL DEVICES USED BY THERANOS'S EMPLOYEES.

11:39AM 11       THERE WILL ALSO BE INTERNAL THERANOS COMMUNICATIONS

11:39AM 12   SHOWING THAT THESE PROBLEMS CAUSED THE COMPANY TO FREQUENTLY

11:39AM 13   WITHDRAW TEST RESULTS, TEMPORARILY STOP OFFERING CERTAIN

11:39AM 14   ASSAYS, SWITCH DEVICES USED TO PERFORM CERTAIN ASSAYS OR

11:39AM 15   CONSIDER ALTERING THE WAY THAT THEY'VE DESCRIBED A GIVEN ASSAY.

11:39AM 16       THE GOVERNMENT INSPECTORS, REGULATORY INSPECTORS WILL

11:39AM 17   TESTIFY ABOUT DEFICIENCIES IN THERANOS'S LAB PRACTICES,

11:39AM 18   DEFICIENCIES THAT WOULD NEGATIVELY IMPACT ACCURACY OF THE

11:39AM 19   TESTS.

11:39AM 20       FINALLY, THERE WILL BE EVIDENCE OF THERANOS'S ULTIMATE

11:40AM 21   VOIDING OF A LARGE PERCENTAGE OF ITS CLINICAL TEST, A STEP THAT

11:40AM 22   WOULD NOT BE NECESSARY IF THERE WERE NO REASON TO DOUBT THE

11:40AM 23   ACCURACY AND THE MERIT OF THOSE TEST RESULTS.

11:40AM 24       SO IN THE CONTEXT OF THE OTHER EVIDENCE, THE EXISTENCE OF

11:40AM 25   INDIVIDUAL DEMONSTRABLY INACCURATE PATIENT TEST RESULTS IT

11:40AM 1    CERTAINLY IS RELEVANT AND IT EASILY MEETS THE TEST UNDER

11:40AM 2    FEDERAL RULE OF EVIDENCE 401 BECAUSE EVIDENCE OF THOSE

11:40AM 3    INACCURATE RESULTS HAS A TENDENCY TO MAKE A FACT OF CONSEQUENCE

11:40AM 4    IN THIS CASE MORE OR LESS PROBABLE CAUSE THAN IT WOULD BE

11:40AM 5    WITHOUT THE EVIDENCE.

11:40AM 6         SPECIFICALLY, THE FACT OF CONSEQUENCE BEING THERANOS'S

11:40AM 7    ACCURACY PROBLEMS AND THE DEFENDANT'S KNOWLEDGE OF THOSE

11:40AM 8    ACCURACY PROBLEMS.

11:40AM 9         I LOOKED AT RULE 401, AND I NOTICED THE ADVISORY COMMITTEE

11:40AM 10   NOTES HAS SOME VERY HELPFUL LANGUAGE ALSO THAT I WANTED TO

11:40AM 11   SHARE.  THE ADVISORY COMMITTEE NOTES SAYS FOR 401, THE STANDARD

11:40AM 12   FOR PROBABILITY UNDER THE RULE IS, QUOTE, "MORE PROBABLE THAN

11:40AM 13   IT WOULD BE WITHOUT THE EVIDENCE.  ANY MORE STRINGENT

11:41AM 14   REQUIREMENT IS UNWORKABLE AND UNREALISTIC."  AND THEN IT QUOTES

11:41AM 15   THE SAYING "A BRICK IS NOT A WALL.  IT IS NOT TO BE SUPPOSED

11:41AM 16   THAT EVERY WITNESS CAN MAKE A HOME RUN."

11:41AM 17        SO I THINK THE DEFENSE, AGAIN, WANTS THE COURT TO VIEW THE

11:41AM 18   OFFERED WITNESS TESTIMONY IN A VACUUM AND ASK THE QUESTION,

11:41AM 19   WOULD THIS TESTIMONY, WOULD THIS EVIDENCE STANDING ON ITS OWN

11:41AM 20   CONCLUSIVELY PROVE THAT THERANOS'S TESTS HAD ACCURACY PROBLEMS,

11:41AM 21   THAT THOSE TESTS WERE INACCURATE?

11:41AM 22        BUT THAT'S NOT THE CORRECT QUESTION.  THE CORRECT QUESTION

11:41AM 23   IS WHETHER THAT EVIDENCE TENDS TO MAKE THAT KEY QUESTION OR

11:41AM 24   THAT KEY FACT MORE OR LESS PROBABLE, AND CERTAINLY THE ANSWER

11:41AM 25   MUST BE YES.

11:41AM  1      IT SHOULD ALSO BE NOTED THAT SOME OF THESE PATIENT

11:41AM  2   EXPERIENCES ARE ESPECIALLY PROBATIVE NOT JUST BECAUSE THEY

11:41AM  3   EVIDENCE THE EXISTENCE OF PROVABLE FALSE RESULTS, BUT ALSO

11:41AM  4   BECAUSE OF THE NATURE OF THOSE RESULTS.

11:41AM  5      SO, FOR EXAMPLE, AS THE DEFENSE KNOWS, MULTIPLE

11:41AM  6   OBSTETRICIANS THAT THE GOVERNMENT HAS SPOKEN TO HAVE SAID THAT

11:42AM  7   THEY ENCOUNTERED PROBLEMS WITH THERANOS'S HCG TEST THAT THEY

11:42AM  8   DIDN'T SEE IN THEIR MANY YEARS OF USING CONVENTIONAL LABS.

11:42AM  9   THAT IS VALUABLE COMPARISON INFORMATION THAT, AGAIN, SHOWS THAT

11:42AM  10  THERANOS'S TESTS SUFFERED FROM PROBLEMS UNIQUE TO THE COMPANY.

11:42AM  11  AND, AGAIN, UNDER RULE 401, THAT IS RELEVANT AND ADMISSIBLE

11:42AM  12  EVIDENCE.

11:42AM  13     SIMILARLY, ONE PRACTITIONER INFORMED THE GOVERNMENT THAT

11:42AM  14  SHE GOT IMPOSSIBLE TESTOSTERONE RESULTS FROM THERANOS FROM

11:42AM  15  MULTIPLE PATIENTS AFTER NOT GETTING OR NOT HAVING THOSE

11:42AM  16  PROBLEMS WITH OTHER LABS IN THE PAST.

11:42AM  17     FINALLY, ONE OF THE GOVERNMENT'S ANTICIPATED WITNESSES AND

11:42AM  18  THE BASIS OF AN INDICTED COUNT GOT TWO IMPOSSIBLE PROSTATE TEST

11:42AM  19  RESULTS.  OUT OF THREE THERANOS TESTS, TWO OF THEM WERE

11:42AM  20  PROVABLY FALSE.

11:42AM  21     SO AGAIN, THIS REALLY UNDERCUTS THE DEFENDANT'S CLAIM

11:42AM  22  ABOUT THE .1 PERCENT TO 3 PERCENT FAILURE RATE THAT THEY WOULD

11:43AM  23  EXPECT TO SEE IN ALL LABORATORY TESTING.

11:43AM  24     WHEN WE SEE PATIENTS GETTING TESTS AND SEEING ERRORS THAT

11:43AM  25  DID NOT OCCUR WITH OTHER LABS, WHEN WE SEE PATIENTS GETTING

11:43AM 1    MULTIPLE ERRONEOUS RESULTS FROM IT THERANOS IN A SHORT PERIOD

11:43AM 2    OF TIME, THAT DOES TEND TO SHOW THAT THERANOS'S TESTS SUFFERED

11:43AM 3    FROM ACCURACY AND RELIABILITY PROBLEMS AS CHARGED IN THE

11:43AM 4    INDICTMENT.

11:43AM 5        I'LL MOVE ON NEXT TO THE LIS, BUT I WANTED TO PAUSE AND

11:43AM 6    SEE IF THE COURT HAS ANY QUESTIONS ON THE POINTS I HAVE MADE SO

11:43AM 7    FAR.

11:43AM 8          THE COURT:  WELL, I DID HAVE A QUESTION.  I DON'T

11:43AM 9    KNOW IF IT'S APPROPRIATE NOW.  THERE IS A SEPARATE STANDALONE

11:43AM 10    MOTION REGARDING THE ADMISSIBILITY OF PATIENT EXPERIENCES AND

11:43AM 11    PERSONAL EXPERIENCES.

11:43AM 12        MR. WADE TOUCHED A LITTLE BIT ABOUT THAT IN HIS

11:43AM 13    PRESENTATION.  I DON'T KNOW IF YOU WANT TO SPEAK TO THAT OR IF

11:43AM 14    YOU WOULD PREFER TO WAIT UNTIL THAT MOTION IS BEFORE THE COURT.

11:43AM 15          MR. BOSTIC:  SO, YOUR HONOR, I AM NOT THE AUSA WHO

11:44AM 16    WILL BE HANDLING THAT ARGUMENT, SO RESPECTFULLY I WOULD LIKE TO

11:44AM 17    DEFER TO MY COLLEAGUE ON THAT ONE.

11:44AM 18          THE COURT:  SURE.

11:44AM 19          MR. BOSTIC:  BUT I WILL SAY AS TO RULE 403 AND

11:44AM 20    PATIENT HARM, THE GOVERNMENT IS AWARE OF RULE 403, OF COURSE.

11:44AM 21    AND AS I MENTIONED BEFORE, THE PURPOSE OF THE VICTIM TESTIMONY

11:44AM 22    HERE IS TO PROVIDE CONCRETE EXAMPLES OF INSTANCES WHERE

11:44AM 23    PATIENTS, CUSTOMERS, VICTIMS OF THE ALLEGED FRAUD RECEIVED

11:44AM 24    INACCURATE TEST RESULTS FROM THERANOS.  THAT MUST BE RELEVANT.

11:44AM 25        I SHOULD ALSO RESPOND TO MR. WADE'S ALLEGATION THAT THE

11:44AM 1    GOVERNMENT SEEKS TO ADMIT THIS EVIDENCE BECAUSE OF ITS

11:44AM 2    EMOTIONAL CONTENT.  THAT SIMPLY IS NOT TRUE.  AND IT'S PROVABLE

11:44AM 3    OR THAT FACT IS PROVABLE IF THE GOVERNMENT -- I'M SORRY, OR IF

11:44AM 4    THE COURT LOOKS AT WHICH WITNESSES THE GOVERNMENT HAS SELECTED

11:44AM 5    TO TESTIFY.

11:44AM 6        FOR EXAMPLE, THE PATIENT THAT I MENTIONED A MOMENT AGO WHO

11:44AM 7    RECEIVED THE INACCURATE PROSTATE TEST RESULTS TOLD US THAT

11:45AM 8    THOSE RESULTS DIDN'T CONCERN HIM BECAUSE HIS DOCTOR KNEW FROM

11:45AM 9    THE FIRST LOOK THAT THOSE RESULTS WERE INACCURATE.  SO THERE'S

11:45AM 10   NO COMPONENT IN THAT STORY WHERE THAT PATIENT WORRIED THAT HE

11:45AM 11   WAS ILL OR HE WAS GOING TO DIE.  THERE WAS NO SIGNIFICANT

11:45AM 12   EMOTIONAL DISTRESS STEMMING FROM THAT, AND YET THAT PATIENT IS

11:45AM 13   A BASIS OF ONE OF THE COUNTS IN THE GOVERNMENT'S INDICTMENT.

11:45AM 14       SIMILARLY, THE DOCTOR THAT I MENTIONED WHO GOT A NUMBER OF

11:45AM 15   INACCURATE TESTOSTERONE RESULTS FROM THERANOS INDICATED THAT

11:45AM 16   SHE DIDN'T MAKE ANY TREATMENT CHANGES TO HER PATIENTS BASED ON

11:45AM 17   THOSE INACCURATE RESULTS.  SO THOSE PATIENTS WERE ALSO NOT

11:45AM 18   HARMED BY THE INACCURATE RESULTS THAT THERANOS SENT OUT.

11:45AM 19       DOES THE GOVERNMENT CONCEDE THE DEFENSE'S CLAIM THAT THIS

11:45AM 20   HARM NEVER OCCURRED TO ANY PATIENT?

11:45AM 21       OF COURSE NOT.  THERE'S NO REASON TO BELIEVE THAT,

11:45AM 22   ESPECIALLY GIVEN THE NUMBER OF PATIENTS AND THE NUMBER OF TESTS

11:45AM 23   THAT THERANOS DID WHILE EXPERIENCING THESE ACCURACY PROBLEMS.

11:46AM 24       BUT THE GOVERNMENT'S SELECTION OF WITNESSES FOR THIS TRIAL

11:46AM 25   DOES NOT FOCUS ON PRESENTING WITNESSES WHO HAVE EXPERIENCED

11:46AM 1    THAT KIND OF TRAUMA.

11:46AM 2         THE COURT:  ALL RIGHT.  THANK YOU.

11:46AM 3    IF YOU WANT TO -- BEFORE YOU MOVE TO THE LIS CONVERSATION,

11:46AM 4    AND I THINK YOU'LL TALK ABOUT IN YOUR PORTION YOU'LL TALK ABOUT

11:46AM 5    MY QUESTION ABOUT WEIGHT VERSUS ADMISSIBILITY.

11:46AM 6    BUT GOVERNMENT 10 SEEMS TO BE SOMEWHAT RELATED TO THIS,

11:46AM 7    AND, THAT IS, AND I THINK THE PHRASE IS THERE'S A LOT OF 404(B)

11:46AM 8    LANGUAGE IN THE PLEADINGS HERE AND ATTACHED TO SOME OF THE

11:46AM 9    EVIDENCE.

11:46AM 10    I THINK GOVERNMENT 10 SAYS THAT THIS EVIDENCE IS

11:46AM 11    INEXTRICABLY INTERTWINED?  IS THAT THE GOVERNMENT'S POSITION?

11:46AM 12    AND IF SO, MAYBE YOU CAN TALK ABOUT THAT FOR A MOMENT.

11:46AM 13         MR. BOSTIC:  IT IS, YOUR HONOR.

11:46AM 14    IS THE COURT SPECIFICALLY ASKING ABOUT PATIENTS WHO IT SO

11:46AM 15    HAPPENED DID NOT PAY FOR THE TESTS THAT THEY RECEIVED?

11:47AM 16         THE COURT:  RIGHT, THEY WERE NONPAYING.  AND THE

11:47AM 17    COURT HAS ALREADY RULED ON THAT AS FAR AS THE MOTION TO

11:47AM 18    DISMISS.

11:47AM 19    BUT I THINK THE GOVERNMENT IS SAYING THAT THAT EVIDENCE IS

11:47AM 20    NONETHELESS RELEVANT AND THE GOVERNMENT WOULD NOT IDENTIFY

11:47AM 21    THOSE INDIVIDUALS AS VICTIMS, BUT THEIR TESTIMONY HAS RELEVANCE

11:47AM 22    BECAUSE IT SEEMS YOU'RE SUGGESTING THAT THAT COMMENT IS

11:47AM 23    INEXTRICABLY INTERTWINED WITH THE SCHEME, THE FRAUD?

11:47AM 24         MR. BOSTIC:  CORRECT, YOUR HONOR.  YES, I WILL

11:47AM 25    EXPLAIN THAT.

11:47AM  1          LET ME START BY SAYING THAT THE GOVERNMENT ABSOLUTELY

11:47AM  2     ACCEPTS THE COURT'S RULING AND IS NOT SEEKING TO UNDERMINE IT

11:47AM  3     THAT INDIVIDUALS WHO DID NOT PAY OUT OF POCKET FOR THERANOS

11:47AM  4     TEST RESULTS ARE NOT VICTIMS IN THIS CASE.

11:47AM  5          THAT IS TO SAY, THEY DID NOT END UP BECOMING VICTIMS OF

11:47AM  6     DEFENDANT'S SCHEME TO DEFRAUD.  INDIVIDUALS WHO RECEIVED

11:47AM  7     THERANOS TESTS BUT WHERE THOSE TESTS WERE EITHER FREE OR WERE

11:48AM  8     PAID FOR BY INSURANCE WERE INTENDED VICTIMS OF THAT SAME SCHEME

11:48AM  9     TO DEFRAUD, BUT IT TURNED OUT THAT THEY ENDED UP NOT BEING

11:48AM  10    SEPARATED FROM THEIR MONEY, SO THEY ENDED UP NOT BEING ACTUAL

11:48AM  11    VICTIMS OF A COMPLETED FRAUD UNDER THE COURT'S RULING AND

11:48AM  12    REASONING.

11:48AM  13         SO THE GOVERNMENT ACCEPTS THAT.

11:48AM  14         BUT BECAUSE INDIVIDUALS WHO RECEIVED UNRELIABLE TESTS FROM

11:48AM  15    THERANOS, EVEN WITHOUT PAYING, WERE VICTIMS OF OR WERE INTENDED

11:48AM  16    VICTIMS OF THAT SCHEME TO DEFRAUD, THEIR EXPERIENCES ARE

11:48AM  17    SIMILARLY RELEVANT.

11:48AM  18         THE CONDUCT OF DEFENDANT TOWARDS THOSE VICTIMS, EXCUSE ME,

11:48AM  19    TOWARDS THOSE PATIENTS IS STILL RELEVANT BECAUSE IT WAS ALL

11:48AM  20    DONE IN THE SAME COURSE OF CONDUCT DURING WHICH THE PAYING

11:48AM  21    PATIENTS WERE DEFRAUDED.

11:48AM  22         SO THE NONPAYING PATIENTS HEARD THE SAME ADVERTISING

11:48AM  23    MATERIALS, THEY WERE EXPOSED TO THE SAME PROMOTIONAL CLAIMS

11:48AM  24    FROM THERANOS, THEY MADE SIMILAR DECISIONS ABOUT RELYING ON

11:49AM  25    THOSE CLAIMS TO PATRONIZE THERANOS, AND TO THE EXTENT THAT THEY

79

| | | |
|---|---|---|
| 11:49AM | 1 | RECEIVED DEMONSTRABLY INACCURATE TEST RESULTS, THE EXISTENCE OF |
| 11:49AM | 2 | THOSE INACCURATE RESULTS IS PROOF FIRST THAT THERANOS HAD |
| 11:49AM | 3 | ACCURACY AND RELIABILITY PROBLEMS.  AND TO THE EXTENT THAT |
| 11:49AM | 4 | THERANOS WAS THEN INFORMED OF THOSE SPECIFIC ERRORS, WHICH THEY |
| 11:49AM | 5 | WERE IN MANY CASES, IT'S PROOF OF THERANOS'S COLLECTIVE |
| 11:49AM | 6 | KNOWLEDGE OF THOSE ACCURACY PROBLEMS AND DEFENDANT'S KNOWLEDGE |
| 11:49AM | 7 | SPECIFICALLY. |
| 11:49AM | 8 | THE COURT:  THANK YOU. |
| 11:49AM | 9 | MR. BOSTIC:  WE SHOULD TALK ABOUT THE LIS. |
| 11:49AM | 10 | FIRST, LET'S TALK ABOUT WHAT THE LIS WAS AND WHAT IT WAS |
| 11:49AM | 11 | NOT.  I THINK THE DEFENSE HAS BEEN HELPFUL TO A DEGREE IN |
| 11:49AM | 12 | EXPLAINING WHAT DATA SPECIFICALLY WAS IN THAT LIS. |
| 11:49AM | 13 | THE COURT WILL NOTE, THOUGH, THAT NOWHERE IN THE LIS DATA |
| 11:49AM | 14 | WAS THERE A COLUMN OR A FIELD THAT WOULD INDICATE WHETHER A |
| 11:50AM | 15 | GIVEN RESULT WAS ACCURATE OR INACCURATE. |
| 11:50AM | 16 | SO TO THE EXTENT THAT THE LIS IS BEING HELD OUT AS |
| 11:50AM | 17 | SUFFICIENT TO ANSWER THE QUESTION HOW MANY THERANOS TESTS WERE |
| 11:50AM | 18 | INACCURATE, THERE'S NO REASON TO THINK THAT THE LIS WOULD HAVE |
| 11:50AM | 19 | BEEN ABLE TO DO THAT. |
| 11:50AM | 20 | IT CERTAINLY WOULD HAVE BEEN A POWERFUL TOOL TO USE IN THE |
| 11:50AM | 21 | GOVERNMENT'S INVESTIGATION.  THE LIS WOULD HAVE BEEN USEFUL TO |
| 11:50AM | 22 | HELP IDENTIFY PATIENT VICTIMS.  IT WOULD HAVE PROVIDED A |
| 11:50AM | 23 | GREATER OVERVIEW OF WHICH ASSAYS THERANOS WAS RUNNING AND WHEN, |
| 11:50AM | 24 | AND OW MANY OF THE GIVEN ASSAY TYPE WERE RUN DURING A RELEVANT |
| 11:50AM | 25 | TIME PERIOD. |

11:50AM 1      BUT THE GOVERNMENT HAS BEEN ABLE TO CAPTURE THAT

11:50AM 2  INFORMATION IN VARIOUS OTHER WAYS.  SOME REPORTS WERE RUN FROM

11:50AM 3  THE LIS SYSTEM BEFORE IT WAS SHUT DOWN.

11:50AM 4      THE GOVERNMENT ALSO HAS EQUIVALENT INFORMATION FROM THE

11:50AM 5  LAB REPORTS THEMSELVES, FROM EMPLOYEE TESTIMONY ABOUT HOW TESTS

11:50AM 6  WERE RUN AT VARIOUS TIMES AND SOME OTHER THERANOS RECORDS.

11:50AM 7      SO THE TYPE OF INFORMATION THAT WAS CAPTURED IN THE LIS IN

11:51AM 8  ONE PLACE HAS, THANKFULLY, BEEN PRESERVED IN PART ELSEWHERE IN

11:51AM 9  THE MATERIALS OBTAINED BY THE GOVERNMENT.

11:51AM 10      IN ADDITION, THE LIS CONTAINED QUALITY CONTROL DATA THAT

11:51AM 11  WOULD PROVIDE MORE INFORMATION ABOUT HOW FREQUENTLY THERANOS'S

11:51AM 12  DEVICES FAILED THAT QUALITY CONTROL EVALUATION THAT WAS DONE

11:51AM 13  SEPARATE FROM THE ACTUAL CLINICAL TESTING.

11:51AM 14      BUT, AGAIN, THE LIS DID NOT INDICATE WHICH RESULTS WERE

11:51AM 15  ACCURATE AND WHICH WERE INACCURATE.  SO THE LIS WOULD NOT HAVE

11:51AM 16  BEEN THE TOOL THAT EITHER SIDE COULD USE TO DETERMINE THE

11:51AM 17  OVERALL FAILURE RATE OR THE OVERALL ERROR RATE OF THERANOS'S

11:51AM 18  TESTS, BUT THAT'S OKAY BECAUSE THIS CASE IS NOT ABOUT OVERALL

11:51AM 19  FAILURE RATE.  THIS IS NOT ABOUT DETERMINING WHAT PERCENTAGE OF

11:51AM 20  THERANOS'S TESTS WERE INACCURATE AND HOLDING THAT UP AGAINST

11:51AM 21  SOME KIND OF INDUSTRY STANDARD.

11:51AM 22      INSTEAD, THIS IS A WIRE FRAUD CASE.  THE DEFENDANT

11:51AM 23  REPRESENTED THAT THE TESTS WERE ACCURATE AND RELIABLE KNOWING

11:51AM 24  THAT THEY HAD THESE PROBLEMS, AND IT WILL BE UP TO THE JURY TO

11:52AM 25  DECIDE WHETHER HER KNOWLEDGE OF THOSE PROBLEMS, AGAIN, PUT HER

11:52AM 1    ON NOTICE THAT THOSE REPRESENTATIONS WERE MISLEADING AND

11:52AM 2    WHETHER SHE MADE THOSE REPRESENTATIONS TO DEFRAUD.

11:52AM 3        IT'S ALSO I THINK IMPORTANT TO NOTE THAT EVEN IF THE LIS

11:52AM 4    WERE CAPABLE OF PRODUCING AN ESTIMATED FAILURE RATE AND OVERALL

11:52AM 5    FAILURE RATE FOR THE LAB TESTS DONE BY THERANOS, THE DEFENSE

11:52AM 6    WOULD STILL BE ARGUING THAT THIS INFORMATION WAS IRRELEVANT TO

11:52AM 7    A WIRE FRAUD CASE, AND ARGUABLY CORRECTLY SO, BECAUSE THEY

11:52AM 8    WOULD BE ARGUING THAT UNLESS HOLMES HAS DONE THAT SAME ANALYSIS

11:52AM 9    AND HAD BEEN AWARE OF THAT OVERALL FAILURE RATE, THAT IT

11:52AM 10   WOULDN'T BE RELEVANT TO HER INTENT TO DEFRAUD IN THIS CRIMINAL

11:52AM 11   CASE.

11:52AM 12       SO I THINK WHEN THE DEFENSE HOLDS OUT THE LIS AS A

11:52AM 13   CRITICAL PIECE OF EVIDENCE, THE EVIDENCE THAT THE GOVERNMENT

11:52AM 14   COULD USE TO PROVE ITS CASE, I THINK THAT'S A STRAW MAN

11:52AM 15   ARGUMENT.  THE LIS WAS NOT CRITICAL TO THE CHARGING IN THIS

11:53AM 16   CASE NOR IS IT CRITICAL TO THE PROOF AT TRIAL.

11:53AM 17       WHEN IT COMES TO BLAME FOR THE LOSS OF THE LIS.  AS THE

11:53AM 18   COURT CAN TELL, THIS IS A VERY HOTLY DEBATED FACTUAL DISPUTE.

11:53AM 19   THE GOVERNMENT'S OPPOSITION DISCUSSED DESTRUCTION OF THE

11:53AM 20   LIS DATABASE BECAUSE THE GOVERNMENT BELIEVES THAT THOSE FACTS

11:53AM 21   WERE IMPORTANT BACKGROUND FOR THE COURT TO KEEP IN MIND WHEN

11:53AM 22   WEIGHING THE DEFENSE'S ATTEMPT TO REMOVE PATIENT TESTIMONY FROM

11:53AM 23   TRIAL.

11:53AM 24       THE DEFENDANT ARGUES THAT THE GOVERNMENT'S CASE IS DOOMED

11:53AM 25   BY A LACK OF STATISTICAL ANALYSIS ACCOUNTING FOR ALL OF

82

11:53AM 1    THERANOS'S TEST RESULTS, BUT THAT'S SIMPLY NOT TRUE.  THE

11:53AM 2    ELEMENTS IN THE CASE LAW DON'T REQUIRE THAT KIND OF STATISTICAL

11:53AM 3    ANALYSIS IN THIS CASE.

11:53AM 4        WHEN IT COMES TO WHOSE FAULT IT IS THAT THE LIS IS

11:53AM 5    MISSING, OBVIOUSLY THE PARTIES DISAGREE.  THE GOVERNMENT

11:53AM 6    ABSOLUTELY DOES NOT CONCEDE THAT IT'S THE GOVERNMENT'S FAULT

11:54AM 7    THAT THAT EVIDENCE WAS MISSING.

11:54AM 8        I WON'T GO THROUGH THE ENTIRE STORY.  I THINK THE COURT

11:54AM 9    HAS THE BRIEFING FOR THAT.  BUT IT'S IMPORTANT TO JUST REMEMBER

11:54AM 10   A FEW KEY DATES AND KEY EVENTS.

11:54AM 11       THE DATABASE ITSELF WAS SUBPOENAED FROM THERANOS IN JUNE

11:54AM 12   2018.  I BELIEVE THE DATE WAS JUNE 4TH, 2018.  THE DEFENSE

11:54AM 13   MIGHT HAVE MISTAKENLY SAID JUNE 14TH.

11:54AM 14       THE DISCUSSIONS ABOUT RESPONDING TO THAT SUBPOENA BEGAN AT

11:54AM 15   THERANOS WHILE THE DEFENDANT WAS STILL CEO.  SO WHILE SHE WAS

11:54AM 16   STILL RUNNING THE COMPANY, HER EMPLOYEES, HER AGENTS WERE

11:54AM 17   DISCUSSING HOW TO RESPOND TO THAT SUBPOENA FOR THE LIS.

11:54AM 18       EVENTUALLY FOLLOWING THE INDICTMENT A PURPORTED COPY OF

11:54AM 19   THE LIS WAS PRODUCED TO THE GOVERNMENT AT THE END OF AUGUST

11:54AM 20   2018, AUGUST 27TH, 2018.  THE DATABASE WAS COMPLETELY SHUT

11:54AM 21   DOWN, IN OTHER WORDS, THERANOS'S COPY OF THE DATABASE WAS SHUT

11:54AM 22   DOWN BY AUGUST 31ST, 2018.

11:54AM 23       SO WE'RE TALKING ABOUT A FOUR-DAY WINDOW BETWEEN WHEN THE

11:55AM 24   GOVERNMENT RECEIVED WHAT IT WAS TOLD AND WHAT IT BELIEVED WAS A

11:55AM 25   COPY OF THERANOS'S LIS DATABASE, AND WHEN THE WORKING COPY OF

83

11:55AM 1    THAT DATABASE, WHAT TURNED OUT FROM THE GOVERNMENT'S

11:55AM 2    UNDERSTANDING TO BE THE ONLY WORKING COPY OF THAT DATABASE, WAS

11:55AM 3    DESTROYED BY THERANOS, WAS DISASSEMBLED IN A WAY THAT MADE IT

11:55AM 4    LIKELY IMPOSSIBLE FOR IT TO EVER BE RECONSTRUCTED AND ACCESSED

11:55AM 5    AGAIN.

11:55AM 6        IN LIGHT OF THOSE FACTS, ALL OF THE DEFENSE'S ARGUMENTS

11:55AM 7    ABOUT THE GOVERNMENT'S COUPLE WEEK DELAY BEFORE ATTEMPTING TO

11:55AM 8    ACCESS THE DATABASE, ITS DELAY BEFORE TAKING ADDITIONAL STEPS

11:55AM 9    TO TRY TO RECONSTRUCT THAT DATABASE, STEPS WHICH WERE

11:55AM 10   ULTIMATELY FUTILE AND WHICH MAY HAVE BEEN DOOMED FROM THE

11:55AM 11   START, ALL OF THOSE ARGUMENTS ARE IRRELEVANT BECAUSE IN ORDER

11:55AM 12   FOR THE GOVERNMENT TO BE RESPONSIBLE FOR THIS LOSS, THE

11:55AM 13   GOVERNMENT WOULD HAVE NEEDED TO HAVE KNOWN DURING THAT FOUR-DAY

11:55AM 14   WINDOW WHEN IT STILL COULD HAVE DONE SOMETHING ABOUT IT THAT

11:56AM 15   THE COPY IT OBTAINED WAS USELESS, BUT THE GOVERNMENT DIDN'T

11:56AM 16   KNOW THAT DURING THAT WINDOW.

11:56AM 17       THE ONLY PEOPLE WHO KNEW THAT THAT COPY WAS INACCESSIBLE

11:56AM 18   AND UNWORKABLE WERE INDIVIDUALS AT THERANOS, INDIVIDUALS WHO

11:56AM 19   HAD PREVIOUSLY WORKED FOR DEFENDANT, AND INDIVIDUALS WHO WORKED

11:56AM 20   AT A COMPANY WHERE DEFENDANT WAS STILL CHAIRMAN OF THE BOARD OF

11:56AM 21   THAT COMPANY.

11:56AM 22       SO THERE IS A FACTUAL DISPUTE HERE.  THE GOVERNMENT

11:56AM 23   RECOGNIZES THAT.

11:56AM 24       SO THE COURT'S QUESTION WHAT SHOULD BE DONE NOW ABOUT THE

11:56AM 25   LIS ISSUE, I THINK THE GOVERNMENT'S ANSWER IS TWOFOLD.

11:56AM 1    FIRST, TO THE EXTENT THAT THE LIS IS THE SUBJECT OF

11:56AM 2  ANOTHER MOTION IN LIMINE, WITH THE COURT'S PERMISSION, I'LL

11:56AM 3  DEFER TO MY COLLEAGUE WHO WILL COVER THAT MOTION, BUT I SUSPECT

11:56AM 4  THE GOVERNMENT'S ANSWER WILL BE THAT ITS INVESTIGATION

11:56AM 5  REGARDING THE LIS AND RESPONSIBILITY FOR ITS DESTRUCTION IS

11:56AM 6  ONGOING.

11:56AM 7    SO WE DON'T YET KNOW THE NATURE OF EVIDENCE THAT WOULD BE

11:56AM 8  PRESENTED AT TRIAL.  NO ONE HAS BEEN CHARGED WITH OBSTRUCTION

11:57AM 9  IN THIS CASE.  SO IT'S PREMATURE, I THINK, TO DECIDE WHETHER

11:57AM 10  THAT ISSUE WILL BE PART OF THIS TRIAL OR NOT.  I THINK WE NEED

11:57AM 11  TO WAIT AND SEE WHERE THAT INVESTIGATION GOES.

11:57AM 12    AS TO THIS SPECIFIC MOTION AND WHETHER PATIENT TESTIMONY

11:57AM 13  SHOULD COME IN, THE COURT DOES NOT NEED TO TAKE A SIDE ON THE

11:57AM 14  LIS ISSUE, DOES NOT NEED TO RESOLVE THAT DISPUTE IN ORDER TO

11:57AM 15  DECIDE THE MOTION THAT IS IN FRONT OF IT.  THE GOVERNMENT WOULD

11:57AM 16  URGE THE COURT TO FOCUS ON THE IMPORTANCE OF THAT TESTIMONY AND

11:57AM 17  THE REASONS FOR ITS ADMISSIBILITY SEPARATE FROM THE LIS ISSUE.

11:57AM 18    THE COURT:  THANK YOU.  THAT WAS GOING TO BE MY

11:57AM 19  QUESTION IS WHETHER FOR THIS MOTION THE LIS CAN BE PARSED OUT

11:57AM 20  AND SEPARATED?

11:57AM 21    MR. DOWNEY GAVE AN OVERARCHING COMMENT ABOUT THE LIS AND

11:57AM 22  WHY IT'S SO IMPORTANT AND WHY THE RESULTS OF ANECDOTAL, HE USED

11:57AM 23  THE WORD "ANECDOTAL," SUGGESTS THAT IT'S JUST NOT ENOUGH.

11:58AM 24    AND I ASKED HIM ABOUT THE WEIGHT.  AND WE HAD A BREAK, AND

11:58AM 25  HE HAD PLENTY OF TIME TO THINK ABOUT THAT QUESTION.

11:58AM  1      WHAT IS YOUR RESPONSE?  IS THIS REALLY A WEIGHT ISSUE AS

11:58AM  2  OPPOSED TO AN ADMISSIBILITY ISSUE?  AND IF SO, WHY?

11:58AM  3      MR. BOSTIC:  IT ABSOLUTELY IS A WEIGHT ISSUE,

11:58AM  4  YOUR HONOR.  AND I THINK THE COURT CORRECTLY RECOGNIZED THAT

11:58AM  5  THE ARGUMENTS THAT THE DEFENSE IS MAKING ARE THE ARGUMENTS THAT

11:58AM  6  IT CAN MAKE EITHER IN A RULE 29 MOTION IN ITS CROSS-EXAMINATION

11:58AM  7  OF GOVERNMENT WITNESSES OR IN IT'S CLOSING REMARKS TO THE JURY.

11:58AM  8      THESE ARE QUESTIONS FOR THE JURY TO DECIDE:  WHAT IS THE

11:58AM  9  IMPORT OF THIS PERSON'S TESTIMONY?  WHAT CONCLUSIONS SHOULD I

11:58AM  10  DRAW FROM IT?  HOW MUCH WEIGHT CAN I GIVE IT.

11:58AM  11      WHEN IT COMES TO ADMISSIBILITY, THOUGH, I THINK RULE 401

11:58AM  12  IS CLEAR.  THOSE SAME ADVISORY NOTES FROM RULE 401 SAY THAT

11:58AM  13  DEALING WITH PROBABILITY IS THE LANGUAGE OF THE RULE HAS THE

11:59AM  14  ADDED BENEFIT OF AVOIDING CONFUSION BETWEEN QUESTIONS OF

11:59AM  15  ADMISSIBILITY AND QUESTIONS OF THE SUFFICIENCY OF THE EVIDENCE,

11:59AM  16  AND I THINK THAT'S THE ERROR THAT THE DEFENSE HAS MADE IN ITS

11:59AM  17  ARGUMENT.

11:59AM  18      I THINK THEY'RE FOCUSSING ON THE SUFFICIENCY OF THE

11:59AM  19  EVIDENCE WHERE ADMISSIBILITY REALLY IS THE KEY QUESTION HERE.

11:59AM  20  THESE ARE THE BRICKS THAT MAKE UP THE GOVERNMENT'S PROOF.  THEY

11:59AM  21  ARE NOT THE WALL.

11:59AM  22      MR. WADE:  BRIEFLY, YOUR HONOR.  I SHOULD MAKE CLEAR

11:59AM  23  THAT MR. WADE WAS WHO MADE THAT ARGUMENT.  I DON'T WANT IT

11:59AM  24  ATTRIBUTED TO MR. DOWNEY IN THE ANNALS OF HISTORY AND HAVE HIM

11:59AM  25  SUFFER FROM MY DEFICIENT ARGUMENT.

| | | |
|---|---|---|
| 11:59AM | 1 | LABELLING SOMEONE AS A VICTIM DOES NOT MAKE IT SO.  ONE IS |
| 12:00PM | 2 | A VICTIM IF YOU ESTABLISH THAT THEY'RE A VICTIM.  WE AGREE WITH |
| 12:00PM | 3 | THE GOVERNMENT THAT THERE'S A FRAUD, THAT THIS CASE INVOLVES |
| 12:00PM | 4 | WIRE FRAUD. |
| 12:00PM | 5 | SO THE QUESTION THAT IS AT ISSUE HERE IS WHETHER IN THE |
| 12:00PM | 6 | TERMS OF THE INDICTMENT THE THERANOS TECHNOLOGY CAUSED THE WIRE |
| 12:00PM | 7 | FRAUD, CAUSED THE ERRONEOUS RESULT.  THAT'S WHAT IS SET FORTH |
| 12:00PM | 8 | IN THE INDICTMENT. |
| 12:00PM | 9 | THE GOVERNMENT SAID -- IGNORES THE FIRST HALF AND SAYS |
| 12:00PM | 10 | THERE'S AN ERRONEOUS RESULT THAT HAPPENED AT THERANOS, BUT YOU |
| 12:00PM | 11 | HAVE TO SHOW THE CONNECTION BETWEEN THE TWO TO ESTABLISH THAT |
| 12:00PM | 12 | IT'S A VICTIM. |
| 12:00PM | 13 | WE'RE NOT TRYING TO PREVENT AN ACTUAL VICTIM FROM OFFERING |
| 12:00PM | 14 | TESTIMONY. |
| 12:00PM | 15 | THE COURT:  SO IS IT JUST THE NOMENCLATURE?  IF A |
| 12:00PM | 16 | PERSON IS CALLED -- IF WITNESS A IS CALLED, AND IF HE OR SHE IS |
| 12:00PM | 17 | JUST CALLED A PATIENT, A CLIENT, IS THAT ALL RIGHT THEN WITHOUT |
| 12:00PM | 18 | CALLING THEM A VICTIM? |
| 12:00PM | 19 | MR. WADE:  NO.  THE EVIDENCE IS IRRELEVANT FOR ALL |
| 12:01PM | 20 | OF THE REASONS THAT I JUST SUGGESTED, BUT WHAT THE GOVERNMENT |
| 12:01PM | 21 | IS DOING IS LABELLING THIS TESTIMONY AS VICTIM TESTIMONY AND |
| 12:01PM | 22 | SORT OF CREATING A SPECIAL BUBBLE AROUND IT AND SUGGESTING THAT |
| 12:01PM | 23 | YOU COULDN'T POSSIBLY PRECLUDE VICTIM TESTIMONY. |
| 12:01PM | 24 | WELL, IT'S ONLY VICTIM TESTIMONY IF THEY'RE DEPRIVED OF -- |
| 12:01PM | 25 | THE GOVERNMENT USED THE WORD "PRODUCT."  IT'S NOT A PRODUCT, |

87

12:01PM   1          IT'S A SERVICE.

12:01PM   2                  THE COURT:  WELL, THEY'RE FACT WITNESSES, AREN'T

12:01PM   3      THEY?  AREN'T THEY FACT WITNESSES?

12:01PM   4          THE GOVERNMENT CALLS WITNESSES TO PROVE THEIR CASE, AND

12:01PM   5      THE PURPOSE OF THE TRIAL IS TO TEST THE EVIDENCE.  AND THESE

12:01PM   6      ARE FACT WITNESSES WHO WILL SAY WHATEVER THEY SAID AND WHATEVER

12:01PM   7      THEIR CONNECTION WITH YOUR CLIENT'S COMPANY WAS, AND THEY WILL

12:01PM   8      BE DIRECT EXAMINED, AND THEN YOU'LL CROSS-EXAMINE THEM, AND

12:01PM   9      THEN THE JURY WILL HAVE TO DECIDE HOW MUCH WEIGHT TO GIVE TO

12:01PM  10      THEIR TESTIMONY AND THEIR EXPERIENCE.

12:01PM  11                  MR. WADE:  AGAIN, IT'S AN INVITATION TO ERROR,

12:01PM  12      YOUR HONOR, BECAUSE THEY'RE PROFFERING TESTIMONY THAT THEY

12:01PM  13      HAVEN'T ESTABLISHED IS RELEVANT.

12:01PM  14          YOU HAVE TO ESTABLISH THAT THERE'S A THRESHOLD RELEVANCE

12:01PM  15      TO THE EVIDENCE BEFORE YOU PUT US TO THE BURDEN OF CHALLENGING

12:02PM  16      THAT EVIDENCE, BEFORE YOU PUT MS. HOLMES TO THAT BURDEN.

12:02PM  17                  THE COURT:  I SEE.

12:02PM  18                  MR. WADE:  THEY HAVEN'T ESTABLISHED THAT BECAUSE

12:02PM  19      THERE'S NO CAUSAL CONNECTION.

12:02PM  20                  THE COURT:  SO YOUR ARGUMENT -- I FAILED TO ASK

12:02PM  21      MR. BOSTIC.  MAYBE HE'LL STAND IN RESPONSE TO THIS.  IT SOUNDS

12:02PM  22      LIKE YOU'RE SAYING THERE'S BURDEN SHIFTING HERE.

12:02PM  23                  MR. WADE:  THERE'S CLEARLY BURDEN SHIFTING BECAUSE,

12:02PM  24      YOUR HONOR, FOR IT TO BE RELEVANT, THEY HAVE TO SHOW -- AGAIN,

12:02PM  25      THE SERVICES ARE MULTI FACETED.

12:02PM 1    SO LET'S SAY THE RESULT THAT -- THE ERRONEOUS RESULT WAS

12:02PM 2    CAUSED BY THE FACT THAT THE BLOOD SAT FOR A DAY AT 110 DEGREE

12:02PM 3    HEAT IN PHOENIX BEFORE IT MADE ITS WAY TO -- WE DON'T HAVE ANY

12:02PM 4    WAY TO KNOW THAT BECAUSE WE DON'T HAVE THE EVIDENCE THAT WOULD

12:02PM 5    SHOW SORT OF THE AUDIT TRAIL, THE CHAIN OF CUSTODY.

12:02PM 6    THE GOVERNMENT ASSUMES THAT BECAUSE THERE'S AN ERROR, IT'S

12:02PM 7    THE RESULT OF THERANOS BECAUSE THEY GOT THE TEST AT THERANOS.

12:02PM 8    ACTUALLY, THEY ASSUME BECAUSE THERE'S AN ERROR, IT'S THERANOS

12:03PM 9    TECHNOLOGY AS SET FORTH IN THE INDICTMENT THAT CAUSED THE ERROR

12:03PM 10   WHEREAS THERE ARE MANY OTHER ASPECTS OF THE TESTING PROCESS

12:03PM 11   THAT HAVE NOTHING TO DO WITH THERANOS TECHNOLOGY.

12:03PM 12        THE COURT:  SO MAY I STOP YOU THERE?

12:03PM 13   I'M GOING TO HAVE THE UNIQUE OPPORTUNITY TO ASK MR. BOSTIC

12:03PM 14   TO COME TO HIS LECTERN THERE AND MAYBE JUST RESPOND TO THIS SO

12:03PM 15   WE CAN HAVE A LITTLE DEBATE ABOUT THAT.

12:03PM 16        MR. WADE:  SURE.

12:03PM 17        THE COURT:  MR. BOSTIC, CAN YOU JUST RESPOND TO THIS

12:03PM 18   LAST POINT OF MR. WADE?

12:03PM 19        MR. BOSTIC:  YES, YOUR HONOR.  I DON'T THINK THIS IS

12:03PM 20   BURDEN SHIFTING.  I THINK WHAT THE DEFENSE IS ASKING THE COURT

12:03PM 21   TO DO IS TO PREJUDGE THE EVIDENCE.  I THINK THE DEFENSE IS

12:03PM 22   ASKING THE COURT TO ASSUME ITS THEORY OF THE CASE, ASSUME ITS

12:03PM 23   THEORY OF THE DEFENSE, WHICH WOULD EXPLAIN AWAY ALL OF THE

12:03PM 24   ACCURACY PROBLEMS AT THERANOS UNDER THE GUISE OF NORMAL

12:03PM 25   STATISTICAL ERROR RATES IN LABORATORIES OR ERRORS IN SAMPLE

12:04PM 1      HANDLING OR WHAT HAVE YOU.

12:04PM 2          THE DEFENSE ASKED THE COURT TO BUY INTO THAT THEORY, AND

12:04PM 3      BASED ON THAT ASSUMPTION TO ASSUME THAT INDIVIDUAL PATIENT

12:04PM 4      TESTIMONY COULD NOT BE RELEVANT TO THE QUESTION OF WHETHER

12:04PM 5      THERANOS HAD ACCURACY AND RELIABILITY PROBLEMS.

12:04PM 6          AND I WANT TO EMPHASIZE AGAIN THAT THE GOVERNMENT IS NOT

12:04PM 7      HOLDING OUT THESE PATIENTS AS CONCLUSIVE INDEPENDENT,

12:04PM 8      STANDALONE PROOF THAT THERANOS SUFFERED FROM SYSTEMIC ACCURACY

12:04PM 9      AND RELIABILITY PROBLEMS.  THAT PROOF WILL BE ELSEWHERE IN THE

12:04PM 10     TRIAL AND WILL CONSIST OF THE CATEGORIES THAT I MENTIONED TO

12:04PM 11     THE COURT EARLIER.

12:04PM 12         IT WILL BE CLEAR TO THE JURY THAT THERANOS'S TESTS

12:04PM 13     SUFFERED FROM SYSTEMIC AND GENERAL PROBLEMS ESPECIALLY AND

12:04PM 14     SPECIFICALLY THE ASSAYS THAT ARE NAMED IN THE INDICTMENT IN

12:04PM 15     THIS CASE.

12:04PM 16         IN THE CONTEXT OF THAT EVIDENCE, THE EXPERIENCES OF

12:05PM 17     INDIVIDUAL PATIENTS WHO WILL SAY I'M AN EXAMPLE OF THIS, I

12:05PM 18     RECEIVED AN INACCURATE RESULT FROM THERANOS MUST BE RELEVANT.

12:05PM 19     HOW COULD THEY NOT BE?

12:05PM 20             THE COURT:  DO YOU HAVE TO -- DOES THE GOVERNMENT

12:05PM 21     HAVE TO DISTINGUISH WHY THE TEST WAS ERRONEOUS?  DO YOU HAVE TO

12:05PM 22     SAY THAT THIS IS A TEST THAT WAS NOT ON OUR TARMAC IN ARIZONA

12:05PM 23     FOR 12 HOURS BEFORE IT ARRIVED?  THIS WAS A TEST THAT WAS NOT

12:05PM 24     THE RESULT OF POOR EATING OR POOR, WHATEVER, DIET OF THE

12:05PM 25     TESTEE?  DO YOU HAVE TO DO THAT?

12:05PM 1    MR. BOSTIC:  YOUR HONOR, FIRST, I THINK IT WOULD BE

12:05PM 2 IMPOSSIBLE FOR THE GOVERNMENT TO PROVE NOT JUST THOSE NEGATIVES

12:05PM 3 BUT EVERY CONCEIVABLE NEGATIVE IN THE CASE OF EVERY PATIENT

12:05PM 4 TEST RESULT.

12:05PM 5  IF THAT WERE THE STANDARD, THEN, YES, NO PATIENT COULD

12:05PM 6 TESTIFY BECAUSE THERE WOULD ALWAYS BE A QUESTION ABOUT WHAT

12:05PM 7 MIGHT HAVE SPECULATIVELY HAPPENED TO THAT SAMPLE, WHAT OTHER

12:05PM 8 EXPLANATION THAT MIGHT BE.

12:05PM 9  IT'S UP TO THE DEFENSE TO MAKE THOSE ARGUMENTS IF THEY

12:05PM 10 WANT TO.  IT'S UP TO THE JURY TO WEIGH THEM AND DECIDE HOW MUCH

12:06PM 11 SIGNIFICANCE TO ASCRIBE TO THE PATIENT TESTIMONY.

12:06PM 12  BUT AGAINST THE BACKDROP OF STRONG EVIDENCE OF REPEATED

12:06PM 13 AND SYSTEMIC ACCURACY PROBLEMS.  INDIVIDUAL EXAMPLES OF

12:06PM 14 INACCURATE TEST RESULTS ARE SIMPLY, LIKE I SAID, ANOTHER BRICK

12:06PM 15 IN THE WALL.  THEY ABSOLUTELY TEND TO MAKE A FACT IN DISPUTE

12:06PM 16 MORE LIKELY THAN NOT.

12:06PM 17    THE COURT:  ALL RIGHT.  THANK YOU.  MR. BOSTIC.

12:06PM 18  MR. WADE.

12:06PM 19    MR. WADE:  YOUR HONOR, AGAIN, THEY DON'T MAKE A

12:06PM 20 MATERIAL FACT MORE PROBABLE BECAUSE THEY HAVEN'T ESTABLISHED

12:06PM 21 THAT THE THERANOS PRODUCT CAUSED THE RESULT.

12:06PM 22  SO THERE IS NOT -- UNTIL THEY GET THAT TICKET TO

12:06PM 23 ADMISSION, IT'S NOT AN ASSESSMENT OF WEIGHING THE RELEVANCE AND

12:06PM 24 WEIGHING IT AGAINST THIS EXTREME PREJUDICE THAT WOULD RESULT

12:06PM 25 FROM THESE, YOU KNOW, CHERRY PICKED EXAMPLES.

12:06PM 1     IT HAS TO BE ABLE TO BE OFFERED AS RELEVANCE AT THE

12:06PM 2  OUTSET.  THEY'RE JUST SAYING THERE WAS A RESULT AND IT HAPPENED

12:06PM 3  AT THERANOS, THEREFORE, THAT HAPPENED.

12:06PM 4     THERE ARE MANY OTHER POTENTIAL FACTORS, BUT THEY'RE JUST

12:07PM 5  PUTTING INTO EVIDENCE THIS WITH THE ASSUMPTION OF CAUSATION AND

12:07PM 6  THE LABELLING OF A PERSON AS A VICTIM.

12:07PM 7     EVERY ERRONEOUS RESULT THAT RESULTS IN A LAB DOES NOT

12:07PM 8  RESULT FROM THE TECHNOLOGY OF THE LAB.

12:07PM 9         THE COURT:  WELL, MR. BOSTIC INFORMS US, AND HE

12:07PM 10  ASSURES YOU AND YOUR TEAM, THAT HE HAS ADDITIONAL EVIDENCE TO

12:07PM 11  PROFFER TO SUPPORT THE CLAIM.

12:07PM 12         MR. WADE:  WELL, WE SHOULD BE ABLE TO VOIR DIRE

12:07PM 13  THOSE WITNESSES OUTSIDE OF THE PRESENCE OF THE JURY BEFORE, IF

12:07PM 14  THAT'S TRUE, BEFORE THAT IS OFFERED IN FRONT OF THE JURY AND

12:07PM 15  BEFORE THEY OPEN ON IT.

12:07PM 16     BUT TO SUGGEST THAT THAT EXISTS INDEPENDENTLY -- THEY HAVE

12:07PM 17  AN EXPERT.  THEY HAVE AN EXPERT WHO COULD COME IN AND SAY

12:07PM 18  THERE'S CAUSATION.  THEIR EXPERT HASN'T DONE THAT.

12:07PM 19     THEIR EXPERT HAS SAID THAT YOU NEED TO DO WHAT WE HAVE

12:07PM 20  SUGGESTED WHICH IS WHERE THE LIS DEFICIENCY COMES IN, WHICH IS

12:07PM 21  WHEN YOU IDENTIFY AN ANECDOTAL EXAMPLE, YOU NEED TO LOOK AT THE

12:08PM 22  SURROUNDING FACTS AND CIRCUMSTANCES TO ACCESS WHETHER THERE'S

12:08PM 23  AN ISSUE WITH THE TECHNOLOGY.  THAT'S HOW YOU DO IT

12:08PM 24  SCIENTIFICALLY.

12:08PM 25         THEY'RE NOT OFFERING IT SCIENTIFICALLY.  THEY'RE TRYING TO

92

12:08PM   1        FIND ANY PATIENT THAT SAYS THAT THEY GOT AN ERRONEOUS RESULT,

12:08PM   2        IT WAS AT THERANOS, THEREFORE, IT WAS A RESULT OF THERANOS'S

12:08PM   3        TECHNOLOGY, AND SHIFT THE BURDEN TO MS. HOLMES.

12:08PM   4            IT'S IMPERMISSIBLE, AND IT'S DANGEROUS TESTIMONY IN THE

12:08PM   5        CONTEXT OF THIS CASE BECAUSE IT WILL BE VERY POWERFUL TO THE

12:08PM   6        JURY.  AND LETTING THAT IN AND SHIFTING TO US THE BURDEN OF

12:08PM   7        ATTACKING THAT IS UNCONSTITUTIONAL.

12:08PM   8            THE COURT:  WELL, WE TALKED ABOUT IT EARLIER.  I

12:08PM   9        SAID YOU HAVE A BATTING AVERAGE OF 1 IN A MILLION.  ISN'T THAT

12:08PM  10        COMPELLING TO A JURY?

12:08PM  11            MR. WADE:  THE FACT THAT WE HAVE GOOD ARGUMENTS TO

12:08PM  12        REFUTE THIS EVIDENCE DOESN'T MEAN THE EVIDENCE SHOULD COME IN

12:08PM  13        AND WE SHOULD BE PUT TO THAT BURDEN, OKAY?  THAT'S WHAT I HAD

12:08PM  14        TO ADDRESS WITH RESPECT TO THAT.

12:08PM  15            AND I WILL NOTE, ON THE LIS ISSUE, THE GOVERNMENT

12:09PM  16        CONTINUES TO HAVE THIS INNUENDO WITHOUT EVIDENCE OF OUR

12:09PM  17        CLIENT'S INVOLVEMENT IN SOME WAY IN THIS, AND IT'S TOTALLY

12:09PM  18        INAPPROPRIATE AND UNSUPPORTED BY A YEAR LONG GRAND JURY

12:09PM  19        INVESTIGATION THAT HAS RESULTED IN MILLIONS OF DOCUMENTS BEING

12:09PM  20        PRODUCED, 20 WITNESSES BEING INTERVIEWED, AND NOT ONE SAYS THAT

12:09PM  21        MS. HOLMES HAD ANY ROLE IN THE SUBPOENA, COMPLIANCE --

12:09PM  22            THE COURT:  YOU'RE TALKING ABOUT A COLLATERAL MATTER

12:09PM  23        HERE.

12:09PM  24            MR. WADE:  I'M TALKING ABOUT THE LIS ISSUE, RIGHT.

12:09PM  25        YEAH.  THEY'VE CREATED THE IMPRESSION THAT BECAUSE THE CLIENT

93

12:09PM 1    WAS THE CEO DURING THAT TIME PERIOD WHEN THE SUBPOENA WAS

12:09PM 2    ISSUED, THAT SHE MAY -- THERE'S THIS AURA THAT SHE'S SOMEHOW

12:09PM 3    INVOLVED.

12:09PM 4        THERE'S NO ACTUAL EVIDENCE THAT THERE IS ANY INVOLVEMENT.

12:09PM 5    YOU CAN BE SURE THAT THEY WOULD OFFER IT IF THERE WAS.  THEY'RE

12:09PM 6    NOT OFFERING IT, AND, THEREFORE, IT HAS NO ROLE IN THIS CASE.

12:09PM 7        NOW, THEY HAVE EFFECTIVELY CONCEDED THAT THEY'RE

12:09PM 8    CONTINUING TO TRY TO FIND THAT BECAUSE THEY HAVE AN ONGOING

12:10PM 9    GRAND JURY, THE GOVERNMENT HAS AN ONGOING GRAND JURY

12:10PM 10    INVESTIGATION.

12:10PM 11        THEY'RE SAYING, WELL, DON'T RULE ON THAT NOW.  LET'S WAIT,

12:10PM 12    WAIT, WAIT.  YOU KNOW, YOUR HONOR, WE'RE -- WE'VE BEEN AT THIS

12:10PM 13    A LONG TIME.  WE'RE GETTING PRETTY CLOSE TO TRIAL AND TO

12:10PM 14    SUGGEST THAT WE HAVE TO CONTINUE TO WAIT TO SEE IF THEY CAN USE

12:10PM 15    A GRAND JURY, WHICH THEY SHOULD NOT BE USING TO OBTAIN

12:10PM 16    EVIDENCE, YOU KNOW, IS TOO MUCH.

12:10PM 17        WE NEED TO SORT OF RULE ON WHAT IS COMING IN AND WHAT IS

12:10PM 18    NOT COMING IN AND DRAW SOME LINES ON THIS BECAUSE THERE ARE

12:10PM 19    SERIOUS IMPLICATIONS ON THIS ISSUE.

12:10PM 20        BECAUSE IF THESE ISSUES COME INTO THIS CASE, AS I SAID,

12:10PM 21    THERE ARE MANY MEMBERS OF THE GOVERNMENT TEAM THAT -- WHO ARE

12:10PM 22    WITNESSES IN THIS CASE BECAUSE OF THEIR INVOLVEMENT IN THE

12:10PM 23    FACTS, THERE ARE MEMBERS OF THEIR OFFICES, THERE'S ADDITIONAL

12:10PM 24    DISCOVERY THAT IS NEEDED.

12:10PM 25        WE DON'T WANT TO BE DISTRACTED BY ANY OF THAT BECAUSE

12:10PM 1    MS. HOLMES HAS NOTHING TO DO WITH THOSE ISSUES.  SO WE SHOULD

12:10PM 2    LEAVE THEM WHERE THEY ARE.

12:11PM 3        BUT IN MAKING THAT ARGUMENT AND IN ADDRESSING THE LIS,

12:11PM 4    MR. BOSTIC MADE CLEAR, THE PREJUDICE THAT RESULTS TO MS. HOLMES

12:11PM 5    FROM THE GOVERNMENT'S FAILURE HERE.

12:11PM 6        NOW, FIRST OF ALL, IT WAS NOT -- THE GOVERNMENT IS

12:11PM 7    PROFFERING SELECTIVE EVIDENCE WITH RESPECT TO THIS.  THEY

12:11PM 8    SAID -- I SAID THE RETURN DATE ON THE GRAND JURY WAS THE 14TH,

12:11PM 9    NOT THE ISSUANCE.  IT WAS ISSUED ON THE 4TH, THE RETURN DATE ON

12:11PM 10   THE GRAND JURY SUBPOENA FOR THE LIS DATABASE WAS THE 14TH,

12:11PM 11   WHICH WAS THE DATE THAT THEY INDICTED.  SO THEY CLEARLY MADE

12:11PM 12   THE JUDGMENT.  THEY DIDN'T NEED THE EVIDENCE.  BUT THEY HAD NO

12:11PM 13   IDEA WHAT THE EVIDENCE WAS, OKAY?

12:11PM 14       THE GOVERNMENT'S SUGGESTION THAT THE ONLY RELEVANT PERIOD

12:11PM 15   HERE IS THIS FOUR-DAY PERIOD IS WRONG, THAT EXPERTS WHO HAVE

12:11PM 16   OFFERED EVIDENCE TO THE GOVERNMENT IN THIS CASE WHO ARE MOST

12:11PM 17   KNOWLEDGEABLE ABOUT THE LIS DATABASE SAID AT THE END OF AUGUST

12:11PM 18   THAT THEY BELIEVED THAT THEY COULD RESURRECT THE LIS DATABASE

12:12PM 19   WITHIN A MONTH.  IT WASN'T UNTIL THE HARDWARE WAS DESTRUCTED

12:12PM 20   BECAUSE OF FAILURE TO GO OUT AND GET IT AND TO TREAT THIS ISSUE

12:12PM 21   SERIOUSLY THAT THE ABILITY TO RESURRECT THAT WORKING COPY OF

12:12PM 22   LIS RENDERED IT UNAVAILABLE TO US.  THAT'S WHEN THE FAILURE

12:12PM 23   RESULTED.

12:12PM 24       AND THE GOVERNMENT KNEW THAT THAT COULD HAPPEN.  THEY KNEW

12:12PM 25   THERE WAS DANGER OF LOSING THIS EVIDENCE BECAUSE THE COMPANY

12:12PM 1    HAD GONE TO AN ASSIGNEE YET THEY DIDN'T PURSUE IT.

12:12PM 2        SO ALL OF THAT, AGAIN, SHOULD BE OUT.  WE'RE NOT LOOKING

12:12PM 3    TO PUT PROSECUTORS ON THE WITNESS STAND.  WE'RE NOT LOOKING

12:12PM 4    TO -- WE HAVE ENOUGH WITNESSES TO CALL IN THIS CASE BY ITSELF.

12:12PM 5    BUT TO THE EXTENT THAT THE GOVERNMENT IS CREATING THIS

12:12PM 6    IMPRESSION THAT THEIR FAILURE TO ACT WAS SO LIMITED, THE

12:12PM 7    EVIDENCE IS QUITE TO THE CONTRARY.

12:12PM 8        AND TO BE FAIR TO COUNSEL FOR THE GOVERNMENT, HE

12:13PM 9    RECOGNIZES THAT THAT IS HOTLY DISPUTED, AND I DON'T WANT TO

12:13PM 10   CREATE THE IMPRESSION THAT THEIR PROFFERED FACTS ARE ACCURATE

12:13PM 11   ON THIS RESPECT.

12:13PM 12       FINALLY, WHERE THEY ARE ACCURATE IS WITH RESPECT TO THE

12:13PM 13   QUALITY OF THAT EVIDENCE, AND TO USE HIS WORDS, THE POWERFUL

12:13PM 14   TOOL THAT THAT EVIDENCE WOULD PROVIDE WITHIN THIS CASE,

12:13PM 15   POWERFUL TOOL TO BE ABLE TO PROVIDE DETAILED INFORMATION ABOUT

12:13PM 16   THE CHERRIES THAT THEY PICKED WITHIN THIS CASE THAT ARE NOT

12:13PM 17   RELEVANT.  THEY'RE TRYING TO CREATE THEIR RELEVANCE BY CALLING

12:13PM 18   THEM VICTIMS, AND WE HAVE NO ABILITY TO LOOK AT THE WHOLE

12:13PM 19   ORCHARD.  WE HAVE NO ABILITY TO EVEN LOOK AT ALL OF THE

12:13PM 20   DETAILED FACTS RELATING TO THAT CHERRY BECAUSE IT'S TRUE THAT

12:13PM 21   THERE IS NO CHECKBOX WITHIN THE DATABASE THAT SAYS, OH,

12:13PM 22   INACCURATE, ACCURATE.  WE NEVER SUGGESTED AS MUCH.

12:13PM 23       BUT WE DID SUGGEST AND THE EVIDENCE SHOWED --

12:14PM 24           THE COURT:  IS THAT SIGNIFICANT?

12:14PM 25           MR. WADE:  IT'S NOT SIGNIFICANT, YOUR HONOR, BECAUSE

12:14PM 1     THE WAY YOU LOOK AT THESE ISSUES IS THROUGH DETAILED ANALYSIS

12:14PM 2     OF THE DATA THAT RELATES TO A PARTICULAR PATIENT THAT THEY'RE

12:14PM 3     OFFERING, A PARTICULAR TEST THAT THEY'RE OFFERING, A PARTICULAR

12:14PM 4     PHLEBOTOMIST WHO DID THE DRAW ON THAT PATIENT.  WERE THERE

12:14PM 5     ISSUES WITH THAT PHLEBOTOMIST?  WAS THAT PHLEBOTOMIST, WHEN SHE

12:14PM 6     WAS DOING VENOUS DRAWS OR SOMETHING, JUST MAKING ERRORS?  IF

12:14PM 7     SO, THAT DOESN'T GO TO THE CORE OF THERANOS TECHNOLOGY.

12:14PM 8         THAT IS WHERE THE ACTUAL FACTS WITH RESPECT TO WHAT

12:14PM 9     HAPPENED AND WHETHER THERE'S A CAUSAL RELATIONSHIP BETWEEN THE

12:14PM 10     THERANOS TECHNOLOGY AND THE PATIENT EXISTS.  IT'S WITHIN THAT

12:14PM 11     POWERFUL TOOL.

12:14PM 12         AND THE DEPRIVATION FROM OF US FROM HAVING THAT TOOL IS

12:14PM 13     SIGNIFICANT.  THE ABILITY OF THE GOVERNMENT TO OFFER THE

12:14PM 14     EVIDENCE WHEN WE DON'T HAVE IT IS EXTRAORDINARILY PREJUDICIAL

12:14PM 15     AND ARGUABLY A DUE PROCESS VIOLATION.

12:15PM 16         THE COURT:  SO ARE YOU SAYING THAT YOU WOULD LIKE

12:15PM 17     TO, IF THE COURT WERE TO ALLOW THIS TO GO FORWARD, YOU WOULD

12:15PM 18     LIKE THE OPPORTUNITY TO TELL, INFORM THE JURY IN SOME MANNER,

12:15PM 19     BLAME THE GOVERNMENT FOR THE LACK OF EXISTENCE AT THE TRIAL OF

12:15PM 20     THE LIS?

12:15PM 21         MR. WADE:  WE SHOULD BE ABLE TO OFFER TESTIMONY THAT

12:15PM 22     THERE'S A DATABASE THAT PROVIDES ALL OF THE DETAILED

12:15PM 23     INFORMATION WITH RESPECT TO TESTING.

12:15PM 24         THE COURT:  THERE WAS.

12:15PM 25         MR. WADE:  AND THE GOVERNMENT DID NOT -- THERE WAS

12:15PM 1    AT THERANOS'S OPERATING, IT WAS DEVELOPED BY THERANOS'S

12:15PM 2    EMPLOYEES, VERY COMPLICATED, VERY SOPHISTICATED PIECE OF

12:15PM 3    TECHNOLOGY DEVELOPED BY THE COMPANY THAT PROVIDED A LOT OF

12:15PM 4    DETAILED INFORMATION, AND THE GOVERNMENT DID NOT OBTAIN THAT

12:15PM 5    EVIDENCE.

12:15PM 6            THE COURT:  AND IF THAT WERE PERMITTED, YOU WOULD

12:15PM 7    ASK FOR A JURY INSTRUCTION OF SOME SORT I PRESUME?  MAYBE NOT.

12:15PM 8            MR. WADE:  YOUR HONOR, AS THE COURT PROBABLY KNOWS

12:15PM 9    BETTER THAN I DO GIVEN YOUR FREQUENCY OF PRACTICE IN THIS

12:16PM 10   CIRCUIT, THE NINTH CIRCUIT HAS SEVERAL DIFFERENT TYPES OF

12:16PM 11   INSTRUCTIONS IN CRIMINAL CASES THAT RELATE TO THE FAILURE TO

12:16PM 12   OBTAIN EVIDENCE, AND THERE ARE DIFFERENT GRADATIONS.  I WILL

12:16PM 13   DEFER THAT TO THE JURY INSTRUCTION.

12:16PM 14       AS THE COURT WELL KNOWS, THERE IS A NEGLIGENT FAILURE

12:16PM 15   INSTRUCTION THAT COULD BE PROVIDED.  WHETHER THAT'S APPROPRIATE

12:16PM 16   IN THIS CASE OR NOT, YOU KNOW, WE HAVEN'T DECIDED.

12:16PM 17           THE COURT:  AND IF THE COURT WERE TO DECIDE WHETHER

12:16PM 18   AN INSTRUCTION LIKE THAT SHOULD LIE, MY FOLLOW-UP QUESTION

12:16PM 19   WOULD BE THEN BECAUSE IT'S A FACTUAL DISPUTE, SHOULDN'T THERE

12:16PM 20   BE -- I KNOW IN YOUR PLEADINGS I SAW THE TERM MINI TRIALS

12:16PM 21   ALMOST IN EVERY --

12:16PM 22           MR. WADE:  WHEN THERE'S AN 85 PAGE 404(B) NOTICE,

12:16PM 23   YOUR HONOR, I HOPE YOU UNDERSTAND WHY WE --

12:16PM 24           THE COURT:  I CAPTURED IT, YES.

12:16PM 25       BUT IT SEEMS LIKE WHEN THERE'S A FACTUAL DISPUTE, PERHAPS

98

12:16PM 1    THAT'S A FACTUAL DISPUTE THAT THE JURY WOULD HAVE TO DECIDE,

12:17PM 2    AND PERHAPS THE COURT WOULD THEN FASHION AN APPROPRIATE

12:17PM 3    INSTRUCTION IF IT BECOMES AN IMPORTANT ISSUE IN THE CASE FOR

12:17PM 4    THE JURY TO DECIDE THAT AS WELL, WHETHER OR NOT THE GOVERNMENT

12:17PM 5    IS AT FAULT, AND WHETHER OR NOT ANYONE IS AT FAULT.

12:17PM 6        AGAIN, THAT'S JUST A HYPOTHETICAL QUESTION.

12:17PM 7            MR. WADE:  I THINK IF I'M UNDERSTANDING THE COURT,

12:17PM 8    THE COURT HAS REFERRED TO DOORS AT DIFFERENT POINTS DOWN THE

12:17PM 9    HALLWAY, AND IF WE OPEN THE DOOR TO A CERTAIN LINE OF ARGUMENT,

12:17PM 10   DOES THAT PERMIT THE GOVERNMENT TO COME IN AND SAY, WELL, IT

12:17PM 11   WASN'T REALLY OUR FAULT, IT WAS THEIR FAULT, WHICH IS KIND OF

12:17PM 12   WHAT THIS GRAND JURY INVESTIGATION HAS BEEN ABOUT?

12:17PM 13       I THINK THERE'S -- OUR GOAL IS TO NOT TO AVOID THE SIDE

12:17PM 14   DISTRACTION.  IT'S NOT CORE TO THIS CASE.

12:17PM 15       BUT THE GOVERNMENT'S FAILURE TO OBTAIN EVIDENCE IS CORE TO

12:17PM 16   THIS CASE.  THEY DIDN'T HAVE IT AT THE TIME THAT THEY MADE THE

12:17PM 17   ALLEGATIONS, AND I THINK THE FACT THAT THEY DIDN'T OBTAIN IT

12:18PM 18   AND CANNOT MEET THEIR BURDEN OF PROOF IS AN ARGUMENT THAT ANY

12:18PM 19   DEFENDANT SHOULD BE ABLE TO MAKE.

12:18PM 20       IF WE SEEK AN INSTRUCTION THAT THEY'RE AFFIRMATIVELY

12:18PM 21   BLAMING, YOU SHOULD INFER THAT IT WOULD BE FAVORABLE, THAT MAY

12:18PM 22   OPEN A CAN OF WORMS THAT I'M GOING TO LEAVE FOR ANOTHER DAY.

12:18PM 23       BUT AT A MINIMUM WE'RE ABLE TO ARGUE ABOUT THEIR FAILURE

12:18PM 24   TO OBTAIN EVIDENCE THAT THEY NEED TO PROVE THEIR CASE.

12:18PM 25            THE COURT:  MR. BOSTIC, DO YOU WANT TO COMMENT ON

99

12:18PM  1    ANY OF THIS?

12:18PM  2         MR. BOSTIC:  VERY BRIEFLY.  I WON'T SAY ANYTHING

12:18PM  3    ELSE ABOUT THE LIS UNLESS THE COURT HAS ANY QUESTIONS, BUT I

12:18PM  4    WANT TO MAKE TWO IMPORTANT POINTS IN RESPONSE TO WHAT MR. WADE

12:18PM  5    SAID EARLIER.

12:18PM  6         FIRST, IN RESPONSE TO DEFENSE'S REFERRALS TO DR. MASTER'S

12:18PM  7    OPINIONS AND ITS RELIANCE, BY THE WAY, ON SEVERAL CASES THAT

12:18PM  8    ARE IN THE CONTEXT OF THE DAUBERT STANDARD, I JUST THINK IT'S

12:18PM  9    IMPORTANT TO POINT OUT THAT TESTIMONY BY VICTIMS WHO ARE NOT

12:18PM  10   EXPERT WITNESSES, TESTIMONY BY VICTIMS IS NOT SUBJECT TO THE

12:18PM  11   DAUBERT STANDARD.  SO DIFFERENCES BETWEEN WHAT THOSE VICTIMS

12:19PM  12   ARE EXPECTED TO SAY VERSUS WHAT A RETAINED EXPERT IS EXPECTED

12:19PM  13   TO SAY UNDER THE DAUBERT STANDARD IS NOTHING REMARKABLE,

12:19PM  14   NOTHING IMPROPER, AND IT IS IMPROPER TO TRY TO IMPOSE THAT

12:19PM  15   HEIGHTENED DAUBERT STANDARD ON THE TESTIMONY OF NONEXPERTS.

12:19PM  16        THE FINAL POINT IS IN RESPONSE TO MR. WADE'S ARGUMENT THAT

12:19PM  17   THE GOVERNMENT NEEDS TO MAKE SOME SHOWING ABOUT THE STRENGTH OF

12:19PM  18   ITS EVIDENCE IN ORDER TO ESTABLISH THE ADMISSIBILITY OF THIS

12:19PM  19   PATIENT TESTIMONY.  THAT APPEARS NOWHERE IN THE LAW.  TO ME

12:19PM  20   THAT SOUNDS LIKE THE DEFENSE IS SAYING THAT THE GOVERNMENT

12:19PM  21   NEEDS TO PREVAIL ON A RULE 29 MOTION BEFORE IT CAN DEFEAT THIS

12:19PM  22   MOTION IN LIMINE.  THAT'S EXACTLY BACKWARDS.

12:19PM  23        THE DEFENSE'S ENTIRE ARGUMENT HERE IS PREMISED ON ITS

12:19PM  24   ASSUMPTION, ITS ARGUMENT THAT THE GOVERNMENT CAN'T MEET ITS

12:19PM  25   BURDEN OF PROOF, BUT THAT CANNOT FORM THE BASIS OF THE COURT'S

12:19PM 1    RULING HERE.

12:19PM 2              THE COURT:  ALL RIGHT.  THANK YOU.

12:20PM 3         MR. WADE.

12:20PM 4              MR. WADE:  NOTHING FURTHER, YOUR HONOR.

12:20PM 5              THE COURT:  IS IT TIME FOR LUNCH, FOLKS?

12:20PM 6              MR. WADE:  THANK YOU, YOUR HONOR.

12:20PM 7              THE COURT:  I THINK IT IS.  LET'S TAKE OUR NOON

12:20PM 8    RECESS NOW, PLEASE.

12:20PM 9         WHY DON'T WE SEE EVERYBODY BACK AT, LET'S SEE, 1:30, 1:3O.

12:20PM 10             MS. SAHARIA:  THANK YOU, YOUR HONOR.

12:20PM 11             THE COURT:  ALL RIGHT.  THANK YOU.

12:20PM 12        (LUNCH RECESS TAKEN AT 12:20 P.M.)

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
| 12:20PM  | 1  | **AFTERNOON SESSION** |
| 01:35PM  | 2  | (COURT CONVENED AT 1:35 P.M.) |
| 01:35PM  | 3  | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES |
| 01:35PM  | 4  | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 01:35PM  | 5  | AND WE'LL TAKE UP THE REMAINING MOTIONS. |
| 01:35PM  | 6  | I THINK THE NEXT MOTION IS DOCKET 561, I BELIEVE.  THIS IS |
| 01:35PM  | 7  | MS. HOLMES'S MOTION TO EXCLUDE EVIDENCE OF FACT PERCIPIENT |
| 01:36PM  | 8  | WITNESSES. |
| 01:36PM  | 9  | MS. TREFZ:  GOOD AFTERNOON, YOUR HONOR. |
| 01:36PM  | 10 | KATIE TREFZ FOR MS. HOLMES. |
| 01:36PM  | 11 | THE COURT:  THANK YOU.  GOOD AFTERNOON.  NICE TO SEE |
| 01:36PM  | 12 | YOU. |
| 01:36PM  | 13 | MS. TREFZ:  NICE TO SEE YOU AS WELL. |
| 01:36PM  | 14 | THE COURT:  THANK YOU. |
| 01:36PM  | 15 | MS. TREFZ:  THIS MOTION, AS YOU NOTED, RELATES TO |
| 01:36PM  | 16 | THE TESTIMONY OF CERTAIN FACT WITNESS DOCTORS FROM WHOM THE |
| 01:36PM  | 17 | GOVERNMENT ALSO SEEKS TO ELICIT EXPERT TESTIMONY.  AND JUST BY |
| 01:36PM  | 18 | WAY OF ROADMAPPING, THIS IS ONE OF THOSE MOTIONS THAT I THINK |
| 01:36PM  | 19 | WOULD BENEFIT FROM SOME FAIRLY DETAILED DISCUSSION BECAUSE IT'S |
| 01:36PM  | 20 | VERY KIND OF -- IT PRESENTS SOME SORT OF THORNY FACTUAL AND |
| 01:36PM  | 21 | LEGAL QUESTIONS THAT ARE RELATED TO A LOT OF THE ISSUES THAT |
| 01:36PM  | 22 | YOU'VE BEEN DISCUSSING WITH MR. WADE AND MR. BOSTIC EARLIER |
| 01:36PM  | 23 | TODAY. |
| 01:36PM  | 24 | SO I'M -- MY PLAN WAS TO DO A LITTLE OVERVIEW OF THE |
| 01:36PM  | 25 | MOTION, AND THEN I'D LIKE TO TALK BRIEFLY ABOUT THE |

01:36PM 1  GOVERNMENT'S REPRESENTATIONS KIND OF NARROWING THE SCOPE OF THE

01:37PM 2  TESTIMONY, WHICH I THINK REALLY HELPS PUT INTO FOCUS WHAT THE

01:37PM 3  REMAINING ISSUES ACTUALLY ARE WITH RESPECT TO OUR MOTION.

01:37PM 4       THIRD, THEN I'D LIKE TO WALK THROUGH WHAT I THINK ARE

01:37PM 5  ESSENTIALLY FOUR TYPES OF OPINIONS THAT WE ARE -- THAT ARE

01:37PM 6  STILL IN CONTENTION HERE THAT WE'RE MOVING TO EXCLUDE AND FOR

01:37PM 7  ADDITIONAL -- FOR TWO REASONS:  ONE ON 702 GROUNDS AND THEN,

01:37PM 8  TWO, ON RULE 16 GROUNDS.

01:37PM 9       THE COURT:  CAN I ASK -- THANK YOU.  MAY I ASK A

01:37PM 10  THRESHOLD QUESTION?

01:37PM 11       MS. TREFZ:  YES.

01:37PM 12       THE COURT:  IS ONE OF THE ISSUES HERE A QUESTION FOR

01:37PM 13  THE GOVERNMENT AS TO WHETHER OR NOT ADDITIONAL SUBPOENAS WILL

01:37PM 14  BE ISSUED OR A QUESTION FOR THE GOVERNMENT ABOUT WHAT

01:37PM 15  ADDITIONAL INFORMATION THEY MIGHT BE COLLECTING?  WOULD THAT

01:37PM 16  HELP THE DISCUSSION HERE?

01:37PM 17       MS. TREFZ:  I THINK IT WILL, ALTHOUGH I WOULD SAY

01:37PM 18  THAT DEPENDING ON WHAT IS BEING COLLECTED AND WHEN, WE STILL

01:38PM 19  THINK THAT THE GOVERNMENT WILL NEED TO PROVIDE OR HAS -- AND

01:38PM 20  HAS FAILED TO PROVIDE AN ADEQUATE RULE 16 SUMMARY OF THOSE

01:38PM 21  DISCLOSURES.  YOU KNOW, IT DOES SEEM LIKE THE GOVERNMENT IS, AT

01:38PM 22  LEAST BASED ON DISCOVERY WE'VE RECEIVED, CONTINUING TO GATHER

01:38PM 23  INFORMATION FROM THESE DOCTORS.

01:38PM 24       WE TAKE ISSUE WITH THAT A LITTLE BIT, WHICH MY HOPE WAS TO

01:38PM 25  GET TO THAT A LITTLE BIT LATER ONCE WE'RE KIND OF THERE, BUT OF

01:38PM 1    COURSE IT WOULD BE HELPFUL TO KNOW WHAT THE GOVERNMENT IS

01:38PM 2    CONTINUING TO DO.

01:38PM 3        WE HAVE NOT HAD A DISCUSSION WITH THEM ABOUT THE RULE 17

01:38PM 4    SUBPOENAS THAT THEY SAY THAT THEY'RE ISSUING, ALTHOUGH I DO

01:38PM 5    KNOW FROM THE DISCOVERY THAT WE RECEIVED THAT THEY CERTAINLY

01:38PM 6    HAVE BEEN, AT LEAST WITH RESPECT TO ONE OF THE DOCTORS, THEY

01:38PM 7    HAVE FBI AGENTS KIND OF LOOKING AT ALL OF THOSE DOCTOR'S FILES

01:38PM 8    AND ARE PRODUCING ADDITIONAL THINGS.

01:38PM 9        THE COURT:  I LOOKED AT THIS AND I THOUGHT THAT IT

01:39PM 10   MIGHT BE HELPFUL TO HAVE THAT QUESTION POSED AND ANSWERED AND

01:39PM 11   THAT MIGHT BE BENEFICIAL TO THE MOTION.  I DON'T MEAN TO

01:39PM 12   PRECLUDE YOU FROM SPEAKING TO THE MOTION, BUT IT SEEMS LIKE

01:39PM 13   THERE ARE SOME QUESTIONS THAT MIGHT BENEFIT FROM THE ANSWER AND

01:39PM 14   THAT MIGHT BE HELPFUL TO YOU AND YOUR TEAM.

01:39PM 15       MS. TREFZ:  WE'RE HAPPY TO KNOW THE ANSWERS.  I

01:39PM 16   DON'T THINK THAT THEY ARE -- THAT THEY KIND OF SUPPLANT THE

01:39PM 17   MOTION, SO WE STILL HAVE SOME THOUGHTS TO PROVIDE.  BUT, OF

01:39PM 18   COURSE, WE'RE HAPPY TO HEAR WHAT THE GOVERNMENT IS DOING.

01:39PM 19       THE COURT:  WELL, IS THE GOVERNMENT PREPARED TO

01:39PM 20   SPEAK TO THAT NOW, OR WOULD YOU LIKE TO WAIT UNTIL THIS

01:39PM 21   DISCUSSION FROM THE DEFENSE IS FINISHED?

01:39PM 22       MR. BOSTIC.

01:39PM 23       MR. BOSTIC:  JOHN BOSTIC FOR THE UNITED STATES, YES.

01:39PM 24       I'M HAPPY TO ADDRESS THAT NOW IF THE COURT WOULD LIKE TO

01:39PM 25   KNOW, AND I'M PREPARED TO PROVIDE THAT INFORMATION.

01:39PM 1                    THE COURT:  THANK YOU.  WHY DON'T YOU TELL US THAT?

01:39PM 2       THAT MIGHT BE HELPFUL.

01:39PM 3                    MR. BOSTIC:  LIKE MS. TREFZ, I THINK I SEE THE

01:39PM 4       ISSUES IN THIS MOTION AS SEPARATED INTO THE UNDERLYING QUESTION

01:40PM 5       OF WHETHER THIS KIND OF TESTIMONY CAN BE ADMITTED, AND THEN THE

01:40PM 6       SEPARATE QUESTION OF, WHAT LEVEL OF DISCLOSURE IS NECESSARY BY

01:40PM 7       THE GOVERNMENT IN ORDER TO AVOID PREJUDICE TO THE DEFENSE

01:40PM 8       ESSENTIALLY?

01:40PM 9            SO I'LL TAKE THAT SECOND POINT.

01:40PM 10           HERE THE GOVERNMENT'S EXPERT DISCLOSURES, WHEN THEY WERE

01:40PM 11      SERVED, REFLECTED THE TOTALITY OF THE GOVERNMENT'S INFORMATION

01:40PM 12      ABOUT THE EXPERT'S ANTICIPATED OPINIONS AND THE BASES FOR THOSE

01:40PM 13      OPINIONS.

01:40PM 14           IN THE TIME SINCE THEN, AS MS. TREFZ NOTED, WE HAVE

01:40PM 15      CONTINUED OUR EFFORTS TO GATHER ADDITIONAL FACTS AND EVIDENCE

01:40PM 16      FROM THOSE DOCTORS TO PROVIDE FURTHER SUPPORT OF THEIR --

01:40PM 17      FURTHER SUPPORT FOR THEIR OPINIONS, PARTLY IN RESPONSE TO

01:40PM 18      QUESTIONS AND THE POINTS RAISED BY THE DEFENSE IN THEIR

01:40PM 19      BRIEFING.

01:40PM 20           THAT EFFORT HAS MET WITH SOME CHALLENGES.  I THINK AS

01:40PM 21      ALLUDED TO IN THE GOVERNMENT'S BRIEFING, AND I'LL JUST UPDATE

01:41PM 22      THE COURT SINCE THEN, IT'S BEEN THE SAME, BUT SOME OF OUR

01:41PM 23      DOCTOR WITNESSES HAVE BEEN VERY DIFFICULT TO CONTACT OVER THE

01:41PM 24      LAST SEVERAL MONTHS.  I THINK MORE THAN ONE OF THEM IS QUITE

01:41PM 25      IMPACTED BY THE ONGOING COVID-19 PANDEMIC.  IN PARTICULAR, ONE

01:41PM 1    DOCTOR, WHO FOCUSES ON POLYCYSTIC OVARIAN SYNDROME, HAS

01:41PM 2    BRANCHED OUT INTO COVID-19 TESTING AND ALSO VACCINATION AND IS

01:41PM 3    NOW OVERSEEING WHAT I UNDERSTAND TO BE A MULTI-STATE TESTING

01:41PM 4    AND VACCINATION OPERATION INVOLVING THOUSANDS OF EMPLOYEES.

01:41PM 5        SO IT'S BEEN CHALLENGING, TO SAY THE LEAST, TO GET THESE,

01:41PM 6    OR SOME OF THE DOCTORS, TO BUILD SOME TIME INTO THEIR SCHEDULES

01:41PM 7    TO TRY TO GO BACK AND FIND THE FILES FOR THE INDIVIDUAL

01:41PM 8    PATIENTS THAT THEIR OPINIONS ARE BASED ON AND GET THOSE TO THE

01:41PM 9    GOVERNMENT.

01:41PM 10       TO THE EXTENT THAT WE HAVE RECEIVED ADDITIONAL INFORMATION

01:41PM 11   FROM THOSE DOCTORS, AND WE HAVE, INCLUDING FROM THAT PARTICULAR

01:41PM 12   DOCTOR WHO SENT US A CHART OF ALL OF THE RELEVANT TESTOSTERONE

01:42PM 13   RESULTS BOTH FROM THERANOS AND FROM OTHER LABS FOR THE PATIENTS

01:42PM 14   THAT WOULD INCLUDE, I THINK THE SMALLER GROUP OF PATIENTS THAT

01:42PM 15   SHE WOULD CONTEND GOT INACCURATE THERANOS TEST RESULTS, WE

01:42PM 16   RECEIVED THAT CHART AND OF COURSE PRODUCED IT TO THE DEFENSE.

01:42PM 17       ANOTHER -- ONE OF OUR PROPOSED DOCTOR WITNESSES IS AN

01:42PM 18   OBSTETRICIAN WHOM WE HAVE BEEN IN RECENT CONTACT WITH AND WHO

01:42PM 19   WAS ABLE TO POINT US TO SPECIFIC PATIENTS THAT ARE THE BASIS

01:42PM 20   FOR HIS OPINION, AND WE, OF COURSE, PROVIDED THE MEMORANDA OF

01:42PM 21   THOSE INTERVIEWS TO THE DEFENSE, ALONG WITH THE ATTACHED

01:42PM 22   DOCUMENTS IN THE PATIENT FILES.

01:42PM 23       SO WE ARE MAKING PROGRESS, FRANKLY, NOT AS QUICKLY AS I

01:42PM 24   WOULD LIKE US TO MAKE.

01:42PM 25       IT IS OUR PLAN TO CONTINUE THOSE EFFORTS, AND ALSO TO

01:42PM 1    PROVIDE UPDATED DISCLOSURES TO THE DEFENSE LISTING THE NEW

01:42PM 2    DETAILS THAT WE HAVE OBTAINED FROM THOSE DOCTORS.

01:43PM 3        I BELIEVE THE POTENTIAL PREJUDICE TO THEM IS MITIGATED

01:43PM 4    PARTLY BY THE FACT THAT WE'VE BEEN KEEPING THEM APPRISED OF OUR

01:43PM 5    ONGOING EFFORTS THROUGH ROLLING DISCOVERY PRODUCTION.

01:43PM 6        AND AGAIN, I WOULD JUST POINT OUT THAT BECAUSE WE'RE STILL

01:43PM 7    APPROXIMATELY FOUR MONTHS FROM TRIAL, OR MAYBE LONGER, BEFORE

01:43PM 8    THESE WITNESSES TESTIFY OR BEFORE THE PRETRIAL CONFERENCE,

01:43PM 9    THERE IS STILL TIME TO AMEND THAT DISCLOSURE I WOULD SUGGEST

01:43PM 10   AND STILL GIVE THE DEFENSE AMPLE TIME TO PREPARE THEIR RESPONSE

01:43PM 11   TO THESE FAIRLY NARROW AND SIMPLE THINGS.

01:43PM 12           THE COURT:  ALL RIGHT.  THANK YOU.

01:43PM 13       DO YOU WANT TO SPEAK TO RULE 17 AT ALL, OR IS THAT

01:43PM 14   APPROPRIATE FOR YOU TO TALK ABOUT NOW AT ALL?

01:43PM 15           MR. BOSTIC:  I AM HAPPY TO.

01:43PM 16       THAT IS STILL SOMETHING THAT THE GOVERNMENT IS

01:43PM 17   CONSIDERING, AND WE WILL USE EITHER RULE 17 OR TRIAL SUBPOENAS

01:43PM 18   AS NECESSARY.

01:43PM 19       BUT IN THE MEANTIME, WHAT WE REALLY NEED IS THE DOCTORS TO

01:43PM 20   IDENTIFY INDIVIDUAL PATIENTS FOR US, AND IT'S DIFFICULT TO

01:43PM 21   CRAFT A SUBPOENA TO CAPTURE THAT WHEN REALLY WHAT WE NEED IS

01:44PM 22   FOR THEM TO PUT IN THE WORK AND IDENTIFY THE UNDERLYING BASES

01:44PM 23   FOR THEIR OPINIONS AND WHAT THOSE OPINIONS ARE.

01:44PM 24       THIS IS FURTHER COMPOUNDED BY THE FACT THAT OF COURSE, AS

01:44PM 25   THE COURT KNOWS, THESE ARE NOT RETAINED EXPERTS, SO THESE

01:44PM 1    EXPERT DISCLOSURE REQUIREMENTS ARE MOST OFTEN APPLIED AND

01:44PM 2    ENFORCED IN THE CONTEXT OF EXPERTS WHO ARE HIRED AND PAID

01:44PM 3    SIGNIFICANT SUMS OF MONEY TO BE AT THE BECK AND CALL OF THE

01:44PM 4    LITIGATING PARTIES, AND THAT'S NOT THE CASE HERE.

01:44PM 5         THESE INDIVIDUALS ARE PRIMARILY PERCIPIENT WITNESSES WHO

01:44PM 6    ARE GOING TO TESTIFY ABOUT THEIR EXPERIENCES TREATING PATIENTS

01:44PM 7    WHO GOT INACCURATE THERANOS TEST RESULTS.  THERE IS AN OPINION

01:44PM 8    COMPONENT OF THEIR TESTIMONY, BUT THEY'RE NOT TYPICAL EXPERTS

01:44PM 9    IN MANY WAYS.

01:44PM 10        THE COURT:  SURE.  THANK YOU.

01:44PM 11        WOULD IT ASSIST YOU AND YOUR TEAM IN SECURING THIS

01:44PM 12   INFORMATION IF THE COURT WERE TO PLACE, I DON'T KNOW, DEADLINES

01:44PM 13   OR SOMETHING LIKE THAT SUCH THAT YOU COULD EXPRESS THAT TO THE

01:44PM 14   GOOD DOCTORS, THAT THE COURT IS HOLDING YOUR FEET TO THE FIRE,

01:45PM 15   OR SOMETHING LIKE THAT, TO GET THEM TO WORK A LITTLE MORE

01:45PM 16   DILIGENTLY?  WOULD THAT BE OF SOME ASSISTANCE?

01:45PM 17        MR. BOSTIC:  IT'S HARD TO SAY, YOUR HONOR.  I

01:45PM 18   BELIEVE THE EXPERTS ARE USING THEIR BEST EFFORTS TO TRY TO

01:45PM 19   JUGGLE THEIR VARIOUS RESPONSIBILITIES AND BE RESPONSIVE TO US.

01:45PM 20        IF THE COURT THINKS THAT'S NECESSARY, OF COURSE THE

01:45PM 21   GOVERNMENT WILL USE ITS BEST EFFORTS TO COMPLY WITH THAT

01:45PM 22   DEADLINE AND ENSURE THAT THE WITNESSES COMPLY.

01:45PM 23        THE COURT:  I'M JUST ASKING IN THE ABSTRACT,

01:45PM 24   SOMETIMES THAT'S HELPFUL IF YOU CONTACT SOMEBODY AND TELL THEM,

01:45PM 25   THE COURT EXPECTS A RESPONSE BY X DATE, AND I'M SURE YOU AND

01:45PM 1    YOUR TEAM CAN PHRASE THAT IN AN APPROPRIATE WAY WHAT THAT

01:45PM 2    MEANS.  I JUST DON'T KNOW.  I WANTED TO OFFER THAT AS A

01:45PM 3    SUGGESTION IF THAT MIGHT BE HELPFUL.

01:45PM 4            MR. BOSTIC:  I APPRECIATE THAT, YOUR HONOR.  I

01:45PM 5    WOULDN'T REQUEST IT ON BEHALF OF THE GOVERNMENT, BUT, OF

01:45PM 6    COURSE, THE GOVERNMENT WILL ABIDE BY ANY COURT ORDER.

01:45PM 7            THE COURT:  THANK YOU.

01:45PM 8        DO YOU HAVE ANYTHING LEFT TO SAY, MS. TREFZ?

01:46PM 9            MS. TREFZ:  I DO, UNFORTUNATELY, YOUR HONOR.  I'M

01:46PM 10   SORRY FOR ALL OF YOUR TIME, BUT WE DO HAVE IMPORTANT ISSUES TO

01:46PM 11   DEAL WITH I THINK.

01:46PM 12       AS IS CLEAR FROM THIS DISCUSSION AND FROM OUR MOTIONS, THE

01:46PM 13   GOVERNMENT HAS INDICATED THAT IT INTENDS TO CALL SEVERAL

01:46PM 14   DOCTORS WHOSE PATIENTS WERE THERANOS CUSTOMERS, AND BASED ON

01:46PM 15   THOSE DISCLOSURES AND OTHER DISCOVERY, IT APPEARS THAT A KEY

01:46PM 16   PIECE OF THE ANTICIPATED TESTIMONY FOR THOSE DOCTORS IS THAT

01:46PM 17   THEY'RE GOING TO -- IS THAT THE GOVERNMENT WILL SEEK TO ELICIT

01:46PM 18   THAT THE PATIENTS OF THEIRS RECEIVED INCORRECT OR LIKELY

01:46PM 19   INCORRECT RESULTS FROM THERANOS.

01:46PM 20       AND THIS IS -- THE KIND OF PLAIN GOAL OF THIS EVIDENCE IS

01:46PM 21   TO PROVE THE GOVERNMENT'S ALLEGATIONS ABOUT THE CAPABILITIES OF

01:46PM 22   THERANOS TECHNOLOGY.

01:46PM 23       AND JUST TO TOUCH BRIEFLY ON A DISCUSSION THAT OCCURRED

01:46PM 24   EARLIER, I THINK, YOU KNOW, MR. BOSTIC WAS FOCUSSED ON INTENT

01:46PM 25   AS A QUESTION, BUT THERE IS ALSO THE SEPARATE ISSUE OF WHETHER

01:46PM 1  THE ALLEGED MISREPRESENTATIONS WERE, IN FACT, FALSE.

01:47PM 2  AND THE ALLEGATION ABOUT THE MISREPRESENTATIONS IS THAT

01:47PM 3  THEY WERE MISREPRESENTATIONS ABOUT THE CAPABILITIES OF

01:47PM 4  THERANOS'S TECHNOLOGY.  SO THE GOVERNMENT NEEDS TO PROVE THAT

01:47PM 5  THE, THAT THE -- IT'S NOT SIMPLY A MATTER OF WHAT MS. HOLMES'S

01:47PM 6  INTENT WAS.  IT IS ALSO A MATTER OF WHETHER THOSE WERE, IN

01:47PM 7  FACT, MISREPRESENTATIONS.

01:47PM 8  SO THIS IDEA THAT THE GOVERNMENT NEEDS ALL OF THESE

01:47PM 9  DIFFERENT WAYS TO PROVE THAT THERANOS'S TECHNOLOGY, THE

01:47PM 10  CAPABILITIES OF THERANOS'S TECHNOLOGY WAS THAT IT DID NOT

01:47PM 11  CONSISTENTLY PROVIDE ACCURATE AND RELIABLE RESULTS, THAT'S A

01:47PM 12  KEY ELEMENT OF THEIR CASE THAT IS SEPARATE FROM THE INTENT

01:47PM 13  ELEMENT.

01:47PM 14  SO THESE DOCTORS ARE BEING USED AS ONE WAY TO KIND OF FILL

01:47PM 15  IN THE EVIDENCE, PLUG THAT HOLE THAT MR. WADE AND MS. SAHARIA

01:47PM 16  WERE TALKING ABOUT.

01:47PM 17  BECAUSE SOME OF THE TESTIMONY FALLS INTO THE REALM OF

01:47PM 18  EXPERT TESTIMONY, THE GOVERNMENT RIGHTLY INCLUDED CERTAIN OF

01:48PM 19  THE DOCTOR WITNESSES, AND THIS IS SOME OF ITS DOCTOR WITNESSES

01:48PM 20  ON ITS WITNESS LIST, NOT ALL OF THEM.

01:48PM 21  IT INCLUDED THEM IN ITS EXPERT DISCLOSURES, AND THE MOST

01:48PM 22  RECENT DISCLOSURE IS FROM SEPTEMBER 2020, AND THAT IDENTIFIED

01:48PM 23  NINE MEDICAL PROFESSIONALS THAT MAY PROVIDE EXPERT TESTIMONY.

01:48PM 24  AND THE EXACT TESTIMONY VARIES BY DOCTOR, SO THAT'S WHY

01:48PM 25  IT'S KIND OF WORTH GOING THROUGH THESE DIFFERENT CATEGORIES

01:48PM 1    THAT I WANTED TO OUTLINE FOR THE COURT IN A FEW MINUTES.

01:48PM 2        THE OPPOSITION -- THE GOVERNMENT'S OPPOSITION REPRESENTS

01:48PM 3    THAT IT WILL ELICIT ACTUALLY A NARROWER SET OF TESTIMONY THAT I

01:48PM 4    THINK IS DISCLOSED IN THE RULE 16 DISCLOSURES, BUT THE

01:48PM 5    TESTIMONY THAT THE GOVERNMENT HASN'T DISCLAIMED STILL PUTS

01:48PM 6    THESE WITNESSES IN THAT TRICKY CATEGORY OF BEING BOTH FACT

01:48PM 7    WITNESSES AND EXPERT WITNESSES AS MR. BOSTIC SUGGESTED.

01:48PM 8        AND WHAT THAT MEANS IS THAT WHILE THEY MAY HAVE SOME

01:49PM 9    TESTIMONY THAT IS BASED ON THEIR PERCIPIENT OBSERVATION,

01:49PM 10   WHETHER THEY END UP APPLYING THEIR MEDICAL EXPERTISE OR DRAW

01:49PM 11   CONCLUSIONS OR OPINIONS ABOUT, FOR EXAMPLE, THERANOS TEST

01:49PM 12   RESULTS, THE TESTIMONY THAT THEY GIVE IS FULLY SUBJECT TO BOTH

01:49PM 13   RULE 16'S (A)(1)(G) DISCLOSURE REQUIREMENTS AND 702 AND DAUBERT

01:49PM 14   AND THE COURT'S GATEKEEPING FUNCTION IS FULLY ENGAGED.

01:49PM 15       SO WITH RESPECT TO SOME OF THE OPINIONS, NOT ALL OF THEM

01:49PM 16   THAT ARE IN THE DISCLOSURES, BUT WITH RESPECT TO SOME OF THE

01:49PM 17   OPINIONS THAT ARE IN THE DISCLOSURES, WE THINK THAT THEY HAVE

01:49PM 18   NOT PROVIDED AN ADEQUATE BASIS UNDER RULE 16 AND THAT, AS A

01:49PM 19   RESULT, THE COURT IS IN A POSITION WHERE IT CAN'T ACTUALLY

01:49PM 20   PERFORM ITS GATEKEEPING FUNCTION CERTAINLY WITHOUT A DAUBERT

01:49PM 21   HEARING OR FURTHER -- OR VOIR DIRE BEFORE THOSE WITNESSES

01:49PM 22   TESTIFY.

01:49PM 23       I AM GOING TO FOCUS ON THESE FOUR OPINIONS THAT I KEEP

01:50PM 24   MENTIONING, BUT JUST BEFORE I GET THERE, I WANTED TO, TO TALK

01:50PM 25   ABOUT THE REPRESENTATIONS THAT SEEM TO NARROW THE CATEGORY --

01:50PM 1    WHAT THE GOVERNMENT WILL OFFER THESE WITNESSES TO SAY.  AND IN

01:50PM 2    PARTICULAR, WE'D ASK THAT THE GOVERNMENT BE HELD TO THESE

01:50PM 3    REPRESENTATIONS AND THAT THEY BE INCORPORATED INTO AN ORDER

01:50PM 4    JUST FOR CLARITY AND EASIER ENFORCEMENT LATER ON.

01:50PM 5        AND THOSE REPRESENTATIONS WE OUTLINED ON PAGE 2 OF OUR

01:50PM 6    REPLY, BUT JUST BRIEFLY, NUMBER ONE, THAT THE DOCTOR WITNESSES

01:50PM 7    WILL NOT TESTIFY ABOUT THE OVERALL ACCURACY OF THERANOS

01:50PM 8    RESULTS; NUMBER TWO, THAT THE DOCTOR WITNESSES WILL NOT TESTIFY

01:50PM 9    AS TO THE EXPLANATION FOR THE INCORRECT RESULTS; AND, NUMBER

01:50PM 10   THREE, THAT THE DOCTOR WITNESSES' TESTIMONY WILL BE LIMITED TO

01:50PM 11   THE SPECIFIC RESULTS THAT THEIR PATIENTS RECEIVED FROM

01:50PM 12   THERANOS.

01:50PM 13       AND TO BE CLEAR, WE DON'T -- WE STILL OBJECT TO THE

01:50PM 14   ADMISSION OF TESTIMONY ABOUT THESE PARTICULAR PATIENTS'

01:51PM 15   RESULTS, BUT IN THE EVENT THE COURT, YOU KNOW, DOES NOT FIND

01:51PM 16   OUR OBJECTION WELL TAKEN OR OVERRULES OUR MOTION OR DENIES OUR

01:51PM 17   MOTION WITH RESPECT TO ANECDOTAL TESTIMONY, WE STILL ASK THAT

01:51PM 18   THE GOVERNMENT BE HELD TO ITS OWN REPRESENTATION ABOUT THESE

01:51PM 19   LIMITS.

01:51PM 20              THE COURT:  MAY I STOP YOU THERE --

01:51PM 21              MS. TREFZ:  YES.

01:51PM 22              THE COURT:  -- AND TURN TO MR. BOSTIC.  I'M SORRY TO

01:51PM 23   DO THIS POINT, COUNTERPOINT, BUT SOMETIMES IT'S HELPFUL.

01:51PM 24              MS. TREFZ:  SURE.

01:51PM 25              THE COURT:  BUT, MR. BOSTIC, AS TO THOSE

01:51PM 1    LIMITATIONS, THAT IS, THAT PRECLUDING THE WITNESSES FROM

01:51PM 2    TESTIFYING ABOUT LAB ERROR THAT CAUSED THE INACCURACY OR

01:51PM 3    TESTIFYING ABOUT ANY OTHER SPECIFICS, DO YOU QUARREL WITH THAT?

01:51PM 4           MR. BOSTIC:  SO, YOUR HONOR, THE GOVERNMENT STANDS

01:51PM 5    BY THE REPRESENTATIONS IN ITS BRIEFING.

01:51PM 6     I WOULD JUST SAY AS TO THE CHARACTERIZATION OF THAT

01:51PM 7    NARROWING IN THE DEFENSE'S REPLY BRIEF, I'M NOT SURE I WOULD

01:51PM 8    PUT IT EXACTLY THE WAY THEY PUT IT.

01:52PM 9     FOR EXAMPLE, I NOTE THAT THE DEFENSE CLAIMS THAT, FOR

01:52PM 10    EXAMPLE, EVERY TIME A DOCTOR SAYS SOMETHING LIKE LAB ERROR IS

01:52PM 11    THE ONLY EXPLANATION FOR THE NUMBERS HE SAW FROM THERANOS, OR

01:52PM 12    THAT LAB ERROR/INACCURATE TESTING IS THE ONLY POSSIBILITY, THE

01:52PM 13    DEFENSE SOMEWHAT AGGRESSIVELY READS THE GOVERNMENT'S NARROWING

01:52PM 14    OF EXPERT OPINIONS AS EXCLUDING THOSE STATEMENTS, AND I DON'T

01:52PM 15    SEE IT THAT WAY.

01:52PM 16     I BELIEVE THAT IF A DOCTOR IS QUALIFIED TO TESTIFY THAT A

01:52PM 17    SPECIFIC THERANOS TEST RESULT COULD NOT HAVE BEEN ACCURATE,

01:52PM 18    THEN IT'S THE SAME THING TO SAY THAT THE TEST WAS INACCURATE OR

01:52PM 19    THAT LAB ERROR/INACCURATE TESTING IS THE ONLY EXPLANATION.

01:52PM 20     IN MY VIEW THESE ARE SYNONYMOUS STATEMENTS, SO I'M NOT

01:52PM 21    SURE WHETHER THE DEFENSE IS SUGGESTING DIFFERENT LANGUAGE BE

01:53PM 22    USED, BUT I THINK THE DEFENSE'S READING OF THE GOVERNMENT'S

01:53PM 23    SO-CALLED "CONCESSIONS" ARE A LITTLE BROAD.

01:53PM 24           THE COURT:  I SEE.  THANK YOU.

01:53PM 25     WHEN I READ THOSE I THOUGHT, WELL, IT'S APPROPRIATE TO

01:53PM 1     ALLOW THE PHYSICIANS TO TESTIFY ABOUT THE TESTS, THE INACCURACY

01:53PM 2     OF THE TESTS, AND I THINK GOT DOWN TO A LITTLE BIT MORE

01:53PM 3     GRANULAR ABOUT RECEIVING A TEST RESULT AND RECOGNIZING THAT IT

01:53PM 4     WAS NOT POSSIBLE THAT THE NUMBERS, THE GRADATIONS, WHATEVER IT

01:53PM 5     WAS, IT WAS JUST SO OFF THE CHARTS FROM NORMAL MEDICAL

01:53PM 6     BIOLOGICAL PRACTICE THAT THEY ORDERED RETESTS AND ANOTHER TEST

01:53PM 7     CAME IN, WITHOUT SAYING THIS IS EVIDENCE THEN THAT THERANOS

01:53PM 8     CANNOT ACCURATELY AND CONSISTENTLY PROVIDE TESTING, BUT I HAD

01:53PM 9     THIS TEST RESULT FROM MY PATIENT, IT WAS WRONG, THE TEST WAS

01:53PM 10     FROM THERANOS, AND THAT'S ALL I CAN SAY ABOUT IT.

01:54PM 11         MS. TREFZ:  WELL, WITH RESPECT TO THE SPECIFIC POINT

01:54PM 12     THAT MR. BOSTIC MADE ON LAB ERROR IS THE ONLY EXPLANATION, I'M

01:54PM 13     NOT SURE THAT THESE WITNESSES HAVE THE BASIS TO GO THERE.

01:54PM 14       I THINK WHAT YOUR HONOR SAID WAS SOMETHING SLIGHTLY

01:54PM 15     DIFFERENT, WHICH IS THE CONCLUSION THAT THE TESTS WERE

01:54PM 16     INACCURATE OR THAT A SPECIFIC TEST WAS INACCURATE AND IT CAME

01:54PM 17     FROM THERANOS, NOT NECESSARILY ASCRIBING IT TO, YOU KNOW, LAB

01:54PM 18     ERROR OR JUST REGULAR IMPRECISION OR SOME OTHER PATIENT

01:54PM 19     MEDICATION OR SOMETHING LIKE THAT.

01:54PM 20       I THINK THAT THOSE ARE TWO DIFFERENT THINGS.

01:54PM 21       WITH RESPECT TO THE INDIVIDUAL PATIENT RESULTS, I THINK WE

01:54PM 22     HAVE OUR OBJECTION ON THE -- THAT YOU JUST WERE DISCUSSING WITH

01:54PM 23     RESPECT TO THE FACT THAT THESE ARE ANECDOTES AND WE THINK THAT

01:54PM 24     THEY ARE NOT PROBATIVE BUT ARE EXTREMELY PREJUDICIAL IN THE

01:54PM 25     CONTEXT OF THIS SCIENTIFIC CASE.

01:55PM 1        BUT ASIDE FROM KIND OF THAT -- WITH THOSE QUALIFICATIONS,

01:55PM 2   I GUESS I WOULD SAY THAT, FOR US, HOW WE READ THE GOVERNMENT'S

01:55PM 3   REPRESENTATION WAS THAT SOMETHING LIKE LAB ERROR IS THE ONLY

01:55PM 4   POSSIBILITY BECAUSE IT ASCRIBES A SPECIFIC REASON TO THE

01:55PM 5   INACCURACY AND IS NOT JUST THE RESULT IS INACCURATE BASED ON

01:55PM 6   WHAT I KNOW OF THIS PATIENT'S MEDICAL HISTORY AND MEDICAL FILE.

01:55PM 7        WE THOUGHT THAT THAT WAS APPROPRIATELY LIMITED BY THE

01:55PM 8   GOVERNMENT.

01:55PM 9            THE COURT:  MR. BOSTIC.

01:55PM 10           MR. BOSTIC:  AND, YOUR HONOR, I THINK MY ANSWER

01:55PM 11  WOULD BE THAT WHEN WE'RE SPEAKING TO THESE DOCTOR WITNESSES AND

01:55PM 12  THEY USE THE PHRASE "LAB ERROR" WHEN THEY SAY LAB ERROR IS THE

01:55PM 13  ONLY EXPLANATION, I THINK TO THEM WHAT THAT MEANS IS THAT THIS

01:55PM 14  NUMERICAL VALUE THAT CAME BACK FROM THERANOS COULD NOT

01:56PM 15  ACCURATELY REPRESENT, COULD NOT ACCURATELY CORRESPOND TO WHAT

01:56PM 16  IS HAPPENING IN THE PATIENT'S BODY, AND THAT LEAVES LAB ERROR,

01:56PM 17  WHICH ENCOMPASSES, I THINK THEY WOULD SAY -- AND I DON'T MEAN

01:56PM 18  TO SPEAK FOR THEM -- BUT I THINK THEY WOULD SAY THAT WHEN THEY

01:56PM 19  SAY "LAB ERROR," THAT ENCOMPASSES ANYTHING FROM INHERENTLY

01:56PM 20  FLAWED TESTING METHODS TO SAMPLE MISHANDLING TO ANY NUMBER OF

01:56PM 21  OTHER THINGS.

01:56PM 22       THEY'RE NOT GOING TO TESTIFY ABOUT THE DEFICIENCIES IN

01:56PM 23  THERANOS'S LAB PRACTICES OR FLAWS IN THE THERANOS DEVICE.  THEY

01:56PM 24  DON'T HAVE INSIGHT INTO THAT, SO THEY WON'T BE OFFERING THOSE

01:56PM 25  OPINIONS.  WHEN THEY SAY "LAB ERROR," I THINK THEY SIMPLY MEAN

01:56PM 1    THE RESULT IS ERRONEOUS AND THE SOURCE OF THE ERROR IS

01:56PM 2    SOMEWHERE ON THE THERANOS SIDE BECAUSE THE NUMBER SIMPLY

01:56PM 3    DOESN'T MATCH WHAT MUST BE THE REALITY OF THE PATIENT'S ACTUAL

01:56PM 4    HEALTH CONDITION.

01:56PM 5         THE COURT:  THANK YOU.  SO DOES THAT SAY THAT THE

01:56PM 6    WITNESS WOULD TESTIFY, I ORDERED A TEST, I RECEIVED THE RESULT,

01:57PM 7    IT WAS SO EXTRAORDINARY OR SO DIFFERENT THAN NORMAL TESTING

01:57PM 8    THAT I RETESTED AND GOT A DIFFERENT RESULT WHICH WAS MORE

01:57PM 9    ACCURATE.  THE TEST WAS IN ERROR AND IT CAME FROM THERANOS, AND

01:57PM 10   THAT'S ENOUGH, WITHOUT SAYING "LAB ERROR," WHICH I THINK IS THE

01:57PM 11   OFFENSIVE TERM HERE.

01:57PM 12        MR. BOSTIC:  CORRECT, YOUR HONOR.  I THINK THAT

01:57PM 13   COULD BE ANOTHER WAY TO CONVEY THE SAME IDEA AND THAT WOULD BE

01:57PM 14   THE CORE OF THEIR TESTIMONY.

01:57PM 15    OF COURSE IT WOULD INCLUDE ADDITIONAL JUSTIFICATIONS,

01:57PM 16   BACKGROUND AND CONTEXT SUPPORTING THAT OPINION.

01:57PM 17        THE COURT:  SURE.  THEY'RE NOT GOING TO BE PERMITTED

01:57PM 18   TO TESTIFY ABOUT ACCURACY OR RELIABILITY OF TESTING OVERALL

01:57PM 19   BECAUSE THEY DON'T HAVE THAT EXPERTISE, OR ANY FLAW IN THE

01:57PM 20   THERANOS TECHNOLOGY BECAUSE THEY DON'T HAVE THAT EXPERTISE.

01:57PM 21        MR. BOSTIC:  CORRECT, YOUR HONOR.

01:57PM 22    I THINK THE ONLY POINT I WOULD MAKE IS THAT TO THE EXTENT

01:57PM 23   THAT A DOCTOR DECIDED TO STOP USING THERANOS TESTING SERVICES

01:58PM 24   AFTER HAVING A BAD EXPERIENCE WITH AN INACCURATE OR MULTIPLE

01:58PM 25   IN ACCURATE RESULTS, THE GOVERNMENT BELIEVES THAT THAT DOCTOR

01:58PM 1    SHOULD BE ALLOWED TO EXPLAIN THE REASONS FOR THAT DECISION.

01:58PM 2        THAT'S NOT THE SAME THING AS SAYING, HERE'S WHAT THE

01:58PM 3    PROBLEM IS AT THERANOS.  I KNOW WHAT THE EXPLANATION IS.

01:58PM 4        THAT'S NOT AN OPINION.  IT'S NOT AN EXPERT OPINION.  IT'S

01:58PM 5    SIMPLY EXPLAINING A DECISION THAT THE DOCTOR MADE, AND WE THINK

01:58PM 6    THAT'S RELEVANT TO SHOW THE MATERIALITY OF THE ACCURACY OF

01:58PM 7    THESE TESTS AND TO PROVIDE INFORMATION TO THE JURY THAT WILL

01:58PM 8    HELP THEM, OR AT LEAST INFORM THEM AS TO THE DOCTOR'S

01:58PM 9    CREDIBILITY WHEN IT CAME TO HOW THE DOCTOR RESPONDED TO THESE

01:58PM 10   SITUATIONS.

01:58PM 11       THE COURT:  THANK YOU.

01:58PM 12       THERE WAS ONE OTHER PIECE, I THINK IT WAS POTENTIAL

01:58PM 13   TESTIMONY FROM A PHYSICIAN THAT MIGHT SAY THAT THERE WAS NO, NO

01:58PM 14   BIOLOGICAL EXPLANATION FOR THE RESULTS THAT THEY RECEIVED ON A

01:58PM 15   PARTICULAR TEST.

01:58PM 16       MR. BOSTIC:  I THINK THAT WOULD BE ANOTHER

01:58PM 17   PERMISSIBLE WAY TO CONVEY THIS IDEA, THIS BASIC IDEA THAT

01:59PM 18   THERANOS PROVIDED AN ASSAY RESULT THAT COULD NOT HAVE BEEN

01:59PM 19   ACCURATE.

01:59PM 20       MS. TREFZ:  AND FOR THAT, YOUR HONOR, I WOULD SAY

01:59PM 21   THAT WE SHOULD HAVE THE OPPORTUNITY TO TEST WHETHER THAT IS

01:59PM 22   ACTUALLY -- AND BY "TEST" I MEAN EXAMINE THE WITNESS.

01:59PM 23       THE COURT:  CROSS-EXAMINATION.

01:59PM 24       MS. TREFZ:  WELL, NOT JUST CROSS-EXAMINE THEM, BUT

01:59PM 25   IN A DAUBERT OR VOIR DIRE, BECAUSE I'M NOT SURE THAT THE

01:59PM 1    DOCTORS HAVE THE ABILITY TO SAY OR HAVE RELIABLY CONCLUDED THAT

01:59PM 2    THERE'S NO BIOLOGICAL EXPLANATION FOR A PARTICULAR RESULT.

01:59PM 3        IT DEPENDS ON THE DOCTOR, AND AS -- ONCE WE GET INTO THE

01:59PM 4    ACTUAL OPINIONS THAT WERE -- THAT WE THINK ARE STILL AT ISSUE,

01:59PM 5    THEN, YOU KNOW, I THINK THERE IS A QUESTION IN A LOT OF

01:59PM 6    SITUATIONS WHETHER THE DOCTOR EVEN IS REFERRING TO SOMETHING

01:59PM 7    SPECIFIC OR WHETHER THE DOCTOR IS JUST KIND OF TALKING FROM

01:59PM 8    MEMORY, AND I WOULD SAY FOR THAT -- FOR ALL OF THOSE THINGS,

02:00PM 9    INCLUDING THIS KIND OF THERE'S NO BIOLOGICAL EXPLANATION, IF

02:00PM 10   IT'S NOT TIED TO A VERY SPECIFIC KIND OF PATIENT FILE AND A

02:00PM 11   VERY SPECIFIC EXPLANATION, THAT RAISES REAL 702 CONCERNS AND SO

02:00PM 12   WE WOULD WANT TO -- WE THINK WITH THESE PARTICULAR DOCTORS

02:00PM 13   THERE'S A VERY -- THE COURT'S GATEKEEPING FUNCTION IS ACTUALLY

02:00PM 14   EXTREMELY IMPORTANT BECAUSE OF THIS MIXED FACT AND EXPERT ROLE

02:00PM 15   THAT THEY PLAY, AND THE KIND OF WAY IN WHICH THIS PERCIPIENT

02:00PM 16   WITNESS TESTIMONY CAN GET OUT OF HAND AND KIND OF VENTURE INTO

02:00PM 17   EXPERT AREAS THAT WE THINK WILL REALLY BE ESPECIALLY

02:00PM 18   PREJUDICIAL IN THIS KIND OF CASE.

02:00PM 19        THE COURT:  ALL RIGHT.  I THINK I UNDERSTAND THAT.

02:00PM 20   THANK YOU FOR THAT.

02:00PM 21        WHEN I LOOKED AT THIS, THE THOUGHT OCCURRED TO ME THAT THE

02:00PM 22   DOCTORS WOULD TESTIFY BASED ON THEIR KNOWLEDGE AS MEDICAL

02:00PM 23   PHYSICIANS, AND PART OF THAT, BEING A DOCTOR, IS KNOWING --

02:01PM 24   THEY HAVE TO KNOW A LITTLE BIT OF BIOLOGY, AND THEY CAN

02:01PM 25   CERTAINLY TESTIFY ABOUT NUMBERS THAT WERE, FOR EXAMPLE, NOT

02:01PM 1    POSSIBLE IN A HUMAN BEING OR NOT POSSIBLE GIVEN THIS CONDITION

02:01PM 2    AND STATE THE REASONS WHY THEIR MEDICAL TRAINING SUGGESTS THAT.

02:01PM 3        I THOUGHT THAT SOME OF THESE DOCTORS, AT LEAST AS

02:01PM 4    PHYSICIANS, WOULD BE ABLE TO DO THAT AS TO SOME OF THESE TEST

02:01PM 5    RESULTS.  BUT AS YOU SAY, WE'LL SEE.

02:01PM 6        MS. TREFZ:  I THINK IT DEPENDS.

02:01PM 7        THE COURT:  OKAY.  THANK YOU.

02:01PM 8    THANK YOU, MR. BOSTIC.

02:01PM 9        MS. TREFZ:  OKAY.  IF I CAN JUST MOVE ON TO KIND OF

02:01PM 10   THE FOUR CATEGORIES OF OPINIONS THAT I THINK WE HAVE LEFT HERE.

02:01PM 11       THE FIRST SET OF OPINIONS IS OPINIONS REGARDING THERANOS

02:01PM 12   RESULTS THAT ARE PURPORTEDLY BASED ON SOME SET OF PATIENT

02:01PM 13   RESULTS, BUT FOR WHICH NO PATIENTS HAVE BEEN IDENTIFIED, AND AN

02:01PM 14   EXAMPLE OF THIS IS IN THE OPINIONS REFLECTED IN THE DISCLOSURES

02:02PM 15   FOR DR. ASIN, AND IF YOU LOOK AT EXHIBIT 5 TO OUR MOTION, TO

02:02PM 16   OUR OMNIBUS SET OF EXHIBITS, PAGE 7, THE BOTTOM PARAGRAPH JUST

02:02PM 17   BY WAY OF EXAMPLE, THERE'S A DISCLOSURE TO HBA1C TESTS.

02:02PM 18       AND THIS IS A TEST, AS THE COURT MAY KNOW, BUT JUST FOR

02:02PM 19   THE BENEFIT OF THE RECORD, IT IS USED FOR -- IT'S USED TO

02:02PM 20   MONITOR BLOOD SUGAR CONTROL AND WHAT IT DOES IS MEASURE THE

02:02PM 21   PERCENTAGE OF A PATIENT'S HEMOGLOBIN THAT IS GLYCATED AND IT'S

02:02PM 22   COMMONLY USED IN MONITORING TYPE 2 DIABETES.

02:02PM 23       SO DR. ASIN IS DISCLOSED AS SAYING -- OR AS POTENTIALLY

02:02PM 24   TESTIFYING THAT THERANOS A1C TESTS WERE EITHER TOO HIGH OR TOO

02:02PM 25   LOW, THE THERANOS TESTS WERE NOT ACCURATE.

02:02PM 1       AND THIS TYPE OF DISCLOSURE WE THINK IS PROBLEMATIC FOR

02:03PM 2   ONE PRIMARY REASON, WHICH IS THAT IT DOESN'T DISCLOSE THE BASES

02:03PM 3   OR REASONS FOR DR. ASIN'S OPINION.  IT DOESN'T TALK ABOUT

02:03PM 4   WHETHER HE'S SAYING -- IT DOESN'T EXPLAIN WHETHER HE'S BASING

02:03PM 5   THIS ON ONE DISCLOSURE OR ONE RESULT OR A THOUSAND, IT DOESN'T

02:03PM 6   DISCLOSE WHETHER HE'S TALKING ABOUT PATIENTS WHO HAVE TYPE 2

02:03PM 7   DIABETES OR NORMAL OR DO NOT, AND IT DOESN'T TALK ABOUT THE

02:03PM 8   TIME PERIOD FOR WHICH HE'S COVERING, WHICH IS IMPORTANT

02:03PM 9   BECAUSE -- AND THIS GOES A LITTLE BIT TO ONE OF THE ISSUES THAT

02:03PM 10   YOU WERE DISCUSSING WITH MR. WADE AND MS. SAHARIA EARLIER,

02:03PM 11   WHICH IS THAT THERE WAS A TIME PERIOD FOR PATIENTS TESTED IN

02:03PM 12   ARIZONA WHERE THERANOS HBA1C TESTS WERE NOT RUN ON -- WELL, ANY

02:03PM 13   TEST THAT WAS RUN IN ARIZONA WAS RUN ON A COMMERCIAL DEVICE,

02:04PM 14   WAS NOT RUN ON THERANOS TECHNOLOGY, AND THERE WAS A TIME PERIOD

02:04PM 15   WHEN IT WAS WELL-KNOWN WITHIN THERANOS AND DISCLOSED TO DOCTORS

02:04PM 16   THAT THERE WAS ACTUALLY AN ISSUE WITH THE REAGENT THEY WERE

02:04PM 17   USING FROM A THIRD PARTY -- FROM THE THIRD PARTY MANUFACTURER

02:04PM 18   OF THE MACHINE, SIEMENS, AND SIEMENS HAD ISSUED A RECALL NOTICE

02:04PM 19   BASED ON THIS HBA1C REAGENT AND --

02:04PM 20        THE COURT:  WHAT IS THE TIME STAMP OF THAT?

02:04PM 21        MS. TREFZ:  THE TIME PERIOD OF THAT IS BASICALLY

02:04PM 22   SUMMER TO FALL 2014.  AND SO TO THE EXTENT THAT DR. ASIN OR,

02:04PM 23   ALTERNATIVELY, DR. PAGE IS BASING THEIR EXPERT OPINIONS ABOUT

02:04PM 24   HBA1C TESTS AND THE PURPORTED INACCURACY OF THEM ON THIS TIME

02:04PM 25   PERIOD, THAT REALLY DOESN'T GO TO THERANOS TECHNOLOGY AT ALL.

02:04PM 1        I THINK THAT THAT'S ONE OF THE KIND OF -- IT KIND OF

02:05PM 2    CRYSTALLIZES TO ME WHY WE NEED TO BE ABLE TO KIND OF UNDERSTAND

02:05PM 3    THE BASES FOR THIS, AND ALSO WHY WE REALLY NEED TO UNDERSTAND

02:05PM 4    HOW THE GOVERNMENT IS USING THIS EVIDENCE TO GET TO THE

02:05PM 5    ACCURACY AND RELIABILITY OF THERANOS TECHNOLOGY.

02:05PM 6        THE COURT:  SO ARE YOU SAYING THAT BECAUSE THE

02:05PM 7    TESTING IN THOSE EXAMPLES WERE NOT RUN ON THERANOS MACHINES,

02:05PM 8    BUT ON THIRD PARTY MACHINES, THAT THAT IS OUTSIDE OF THE --

02:05PM 9    THAT'S CONDUCT OUTSIDE OF THE INDICTMENT?

02:05PM 10       MS. TREFZ:  I'M SAYING IT MAY NOT BE RELEVANT AT ALL

02:05PM 11   BECAUSE IT'S NOT RUN ON THERANOS TECHNOLOGY, OR AT THE VERY

02:05PM 12   LEAST WE NEED TO BE ABLE TO KIND OF PRESSURE TEST WHETHER THE

02:05PM 13   OPINION, WHETHER THE OPINIONS OF THESE DOCTORS FALL WITHIN THAT

02:05PM 14   SCOPE.

02:05PM 15      BUT I'M NOT SURE WHY IT'S RELEVANT OR WHY IN 702 LANGUAGE

02:06PM 16   IT FITS THE CASE IF IT GOES TO, YOU KNOW, COMMERCIAL

02:06PM 17   TECHNOLOGY.

02:06PM 18       THE COURT:  AND I DON'T MEAN TO GET INTO THE WEEDS

02:06PM 19   HERE OR GO SOMEWHERE ELSE, BUT IF THE INDICTMENT SAYS THAT

02:06PM 20   THERANOS REPRESENTED THAT THEY COULD DO ACCURATE AND RELIABLE

02:06PM 21   AND CONSISTENT TESTING, DOES IT SAY ON THEIR PROPRIETARY

02:06PM 22   MACHINES?

02:06PM 23       MS. TREFZ:  YOUR HONOR, IT SAYS THERANOS TECHNOLOGY

02:06PM 24   CONSISTENTLY PRODUCED ACCURATE AND RELIABLE RESULTS.  I THINK

02:06PM 25   THAT'S IN PARAGRAPH 16 OF THE THIRD SUPERSEDING INDICTMENT.

02:06PM 1    SO I THINK IT'S A REAL QUESTION AS TO WHETHER IT FALLS

02:06PM 2 OUTSIDE.

02:06PM 3     THE COURT:  OKAY.  OKAY.

02:06PM 4     MS. TREFZ:  SO THE REASON WHY I RAISE THAT,

02:06PM 5 YOUR HONOR, IS BECAUSE IT'S IMPORTANT FOR US TO KNOW THE BASES

02:06PM 6 AND REASONS FOR THE OPINIONS, AND IT'S IMPORTANT NOT ONLY FOR

02:06PM 7 RULE 16 PURPOSES, BUT IT'S IMPORTANT FOR THE 702 GATEKEEPING

02:07PM 8 PURPOSE AS WELL.

02:07PM 9    JUST LAST YEAR IN A CASE CALLED <u>VALENCIA-LOPEZ</u> THE

02:07PM 10 NINTH CIRCUIT EMPHASIZED, YOU KNOW, THAT THE 702 GATEKEEPING

02:07PM 11 FUNCTION, OF COURSE AS YOUR HONOR I'M SURE IS WELL AWARE,

02:07PM 12 HAPPENS BEFORE THE WITNESS TESTIFIES.

02:07PM 13    AND IN ORDER TO DO THAT, THEY NEED TO HAVE -- THE COURT

02:07PM 14 NEEDS TO HAVE AN ACTUAL EXPLANATION OF THE METHODOLOGY USED AND

02:07PM 15 WHAT THE BASES AND REASONS ARE SO THAT IT CAN PERFORM THAT

02:07PM 16 GATEKEEPING FUNCTION.

02:07PM 17    AND THEN THE KIND OF THIRD POINT THAT I WOULD HAVE WITH

02:07PM 18 RESPECT TO THIS CATEGORY OF OPINIONS IS THAT FOR THESE MIXED

02:07PM 19 FACT AND EXPERT WITNESSES, THOSE FUNCTIONS I THINK WE WOULD

02:07PM 20 SUBMIT ARE EVEN HEIGHTENED HERE BECAUSE OF THE ROLES THAT THESE

02:07PM 21 DOCTORS PLAY.  YOU KNOW, THE CASES MAKE CLEAR THAT WHEN -- THAT

02:07PM 22 WHEN EXPERT TESTIMONY IS BASED ON EXPERIENCE, YOU KNOW, RATHER

02:07PM 23 THAN SOME, YOU KNOW, SPECIFIC SCIENTIFIC TESTING OR SOMETHING

02:08PM 24 LIKE THAT, THEN THE COURT'S GATEKEEPING FUNCTION IS

02:08PM 25 ESPECIALLY -- MUST ESPECIALLY BE ENGAGED.

02:08PM 1          AND THE COMMON EXAMPLE IS WITH RESPECT TO DEA AGENTS.  YOU

02:08PM 2     KNOW, THIS IS THE ONE THAT IS OFTEN IN THE CASES, DEA AGENTS

02:08PM 3     GET UP AND TALK ABOUT COMMUNICATIONS WITH RESPECT TO DRUG

02:08PM 4     CARTELS AND THEY'RE CERTIFIED AS AN EXPERT BECAUSE THEY'VE

02:08PM 5     SPENT YEARS INVESTIGATING DRUG CARTELS.

02:08PM 6          IN THOSE CASES, YOU KNOW, THE COURTS ACKNOWLEDGE THIS

02:08PM 7     PARTICULAR PREJUDICE OR RISK OF PREJUDICE THAT COMES FROM THESE

02:08PM 8     EXPERTS OR THESE AGENTS BEING THE INVESTIGATING AGENT AND THEN

02:08PM 9     TESTIFYING AS AN EXPERT AS TO SOME THINGS AND NOT AS AN EXPERT

02:08PM 10    AS TO OTHERS.

02:08PM 11         HERE I WOULD SUBMIT THAT THIS IS -- THE RISK OF KIND OF

02:08PM 12    BLEEDING FACT AND EXPERT TESTIMONY TOGETHER IS EVEN GREATER

02:08PM 13    BECAUSE THESE INDIVIDUALS WILL BE INTRODUCING THEMSELVES AS

02:09PM 14    MEDICAL DOCTORS AND, YOU KNOW, MEDICAL DOCTORS PROBABLY HAVE

02:09PM 15    THAT EXTRA AUTHORITY OVER THEIR PATIENT'S OPINIONS.

02:09PM 16         SO I THINK WE REALLY NEED TO BE IN A POSITION TO BE ABLE

02:09PM 17    TO TEST THAT.

02:09PM 18         I USED DR. ASIN AS AN EXAMPLE, BUT I WANTED TO JUST FLAG

02:09PM 19    THAT THIS IS A CONCERN THAT IS RELEVANT TO THE DISCLOSURES FOR

02:09PM 20    MS. EMBRY ON TESTOSTERONE, DR. LINNERSON AND DR. SZMUC WITH

02:09PM 21    RESPECT TO HCG -- AND THAT'S S-Z-M-U-C -- AND DR. PAGE WITH

02:09PM 22    RESPECT TO HBA1C AS WELL.

02:09PM 23         THE COURT:  SO IT'S NOT UNUSUAL TO HAVE FACT/EXPERT

02:09PM 24    COMBINED, AND AS YOU KNOW, THERE ARE NINTH CIRCUIT INSTRUCTIONS

02:10PM 25    THAT INFORM A JURY ABOUT THAT.

123

02:10PM 1        PART OF THE TRIAL PROCESS IS FOR THE TRIAL COURT TO INFORM

02:10PM 2    THE JURY AS TO WHEN A WITNESS IS TESTIFYING AS AN EXPERT

02:10PM 3    VIS-À-VIS A FACT WITNESS, AND THAT IS SOMETHING THAT CAN BE

02:10PM 4    HANDLED INTERNALLY I THINK.

02:10PM 5        MS. TREFZ:  I AGREE, YOUR HONOR.

02:10PM 6        I ONLY POINT IT OUT TO NOTE THAT IN THIS PARTICULAR CASE

02:10PM 7    IT WILL BE REALLY IMPORTANT TO UNDERSTAND WHAT THEY'RE

02:10PM 8    TESTIFYING ABOUT BASED ON JUST AS FACT WITNESSES AND WHAT IS

02:10PM 9    EXPERT TESTIMONY BECAUSE THERE'S A REAL RISK OF KIND OF MIXING

02:10PM 10   THOSE THINGS, AS THERE IS IN EVERY CASE.

02:10PM 11       SO THAT WAS THE FIRST SET OF OPINIONS.

02:10PM 12       THE SECOND SET OF OPINIONS THAT I WANTED TO MAKE SURE THAT

02:10PM 13   WE HAVE IN MIND HERE IS OPINIONS REGARDING PURPORTED LACK OF

02:10PM 14   PROBLEMS, ERRORS, OR ISSUES WITH RESPECT TO OTHER LABS.

02:10PM 15       HERE, YOU KNOW, FOR MANY -- THERE ARE SEVERAL OF THE

02:10PM 16   EXPERTS -- AND I THINK MR. BOSTIC EARLIER TODAY USED THE

02:10PM 17   EXAMPLE OF MS. EMBRY WHO IS DISCLOSED AS POTENTIALLY TESTIFYING

02:11PM 18   THAT THE MEDICAL PROFESSIONAL HAD NEVER EXPERIENCED CLINICAL

02:11PM 19   ERRORS WITH OTHER LAB COMPANIES.

02:11PM 20       AN EXAMPLE OF THIS IS IN EXHIBIT 4, PAGE 3 OF -- TO OUR

02:11PM 21   SET.  AND JUST TO QUOTE FROM THAT, IT SAYS SHE WILL FURTHER

02:11PM 22   TESTIFY THAT IN 20 PLUS YEARS USING SONORA QUEST AND LABCORP,

02:11PM 23   SHE HAS NEVER EXPERIENCED ANY CLINICAL ERRORS WITH THEIR LAB

02:11PM 24   RESULTS, AND SIMILAR DISCLOSURES WERE MADE WITH RESPECT TO

02:11PM 25   SEVERAL OF THE OTHER DOCTORS.

02:11PM 1    THERE'S NO DISCLOSURE HERE AS TO HOW ANY OF THESE DOCTORS

02:11PM 2    CAME TO THIS SWEEPING CONCLUSION THAT THEY HAD NEVER

02:11PM 3    EXPERIENCED CLINICAL ERRORS WITH OTHER LAB COMPANIES, OR EVEN

02:11PM 4    REALLY WHAT THAT MEANS.  DOES IT MEAN THAT THEY NEVER

02:11PM 5    QUESTIONED THE ACCURACY OF A TEST?  DOES IT MEAN THAT THEY

02:11PM 6    NEVER HAD A PATIENT REPEAT A TEST?  THAT THEY NEVER

02:12PM 7    CONCLUSIVELY DETERMINED THAT THERE WAS AN ERROR, OR THAT THEY

02:12PM 8    WERE NEVER NOTIFIED THAT THERE WAS AN ERROR?

02:12PM 9    KIND OF SEPARATELY FROM THIS DEFINITIONAL ISSUE, ALSO,

02:12PM 10   WHAT IS THIS BASED ON?  IS IT SIMPLY BASED ON THEIR MEMORY, I

02:12PM 11   DON'T REMEMBER HAVING A CLINICAL ERROR WITH ANOTHER LAB?  OR IS

02:12PM 12   IT BASED ON A SYSTEMATIC VIEW OF THEIR PATIENT RECORDS?  AND IF

02:12PM 13   SO, KIND OF HOW DID THEY GO ABOUT DOING THAT HERE?

02:12PM 14   I THINK UNDERSTANDING WHETHER THESE OPINIONS ARE BASED ON

02:12PM 15   SUFFICIENT DATA AND ALSO RELIABLE METHODS RELIABLY APPLIED,

02:12PM 16   WHICH IS WHAT 702 REQUIRES, IS ESPECIALLY IMPORTANT BECAUSE

02:12PM 17   THESE SWEEPING CONCLUSIONS, WHEN CONSIDERED IN THE CONTEXT OF

02:12PM 18   PUBLICLY AVAILABLE INFORMATION, SEEM TO HAVE A HIGH LIKELIHOOD

02:12PM 19   OF BEING UNRELIABLE.

02:12PM 20   AND JUST TO GIVE AN EXAMPLE AS TO WHY, WE TALKED EARLIER,

02:12PM 21   OR YOU DID WITH MR. WADE, ABOUT WELL DOCUMENTED ERROR RATES.

02:13PM 22   AND GIVEN, YOU KNOW, WELL DOCUMENTED ERROR RATES AND LAB

02:13PM 23   TESTING AND THE NUMBER OF TESTS THAT THESE DOCTORS SAID THAT

02:13PM 24   THEY PERFORMED OR REVIEWED IN THEIR LIFETIME, IT IS HIGHLY

02:13PM 25   UNLIKELY THAT THEY NEVER EXPERIENCED ANOTHER LAB ERROR.  THEY

125

02:13PM 1    JUST POTENTIALLY DON'T REMEMBER IT OR THEY WERE NEVER INFORMED

02:13PM 2    OF IT.

02:13PM 3        SECOND, WE KNOW FROM EVIDENCE THAT WILL PRESUMABLY BE AT

02:13PM 4    ISSUE IN THIS CASE, LIKE THE HBA1C EXAMPLE THAT I GAVE YOU

02:13PM 5    EARLIER, THAT SOMETIMES COMMERCIAL DEVICE MANUFACTURERS RECALL

02:13PM 6    REAGENTS IN OTHER PARTS OF THEIR MACHINES, AND THAT DOESN'T

02:13PM 7    ALWAYS REQUIRE PATIENT NOTIFICATION.  IT'S KIND OF A

02:13PM 8    COMPLICATED ISSUE.

02:13PM 9        BUT I WOULD JUST NOTE THAT JUST BECAUSE THERE IS A RECALL

02:13PM 10   IN A PARTICULAR REAGENT OR A TEST RESULT MIGHT BE OFF, THAT

02:13PM 11   DOESN'T AUTOMATICALLY MEAN THAT YOU MUST INFORM THE DOCTOR.

02:13PM 12        THE COURT:  SO THIS IS -- IT SOUNDS LIKE THIS IS A

02:13PM 13   GOOD FODDER FOR CROSS-EXAMINATION.

02:14PM 14        MS. TREFZ:  I UNDERSTAND WHY YOU WOULD SAY THAT,

02:14PM 15   YOUR HONOR.

02:14PM 16        BUT IT'S EXTREMELY PREJUDICIAL WHEN IT COMES IN AS THE

02:14PM 17   IDEA OF I'VE NEVER HAD ANOTHER LAB ERROR.

02:14PM 18        AND I DO THINK THAT THAT IS CLEARLY THE STUFF OF EXPERT

02:14PM 19   TESTIMONY BECAUSE THE DECISION ITSELF AS TO WHETHER SOMETHING

02:14PM 20   IS AN ERROR OR NOT OR IS CORRECT IS CLEARLY BASED ON MEDICAL

02:14PM 21   OPINION, AND IT'S NOT AS IF THESE DOCTORS HAVE SAT THERE FOR

02:14PM 22   YEARS AND BEEN LIKE, I'M TALLYING UP THE NUMBER OF LAB ERRORS

02:14PM 23   THAT I MAKE.  THIS IS NOT SIMPLY PERCIPIENT WITNESS TESTIMONY.

02:14PM 24        THEY ARE COMBINING ALL OF THESE INDIVIDUAL DECISIONS,

02:14PM 25   PRESUMABLY, OF THEIR PATIENTS AND SAYING, IF YOU TAKE THEM ALL

02:14PM 1    TOGETHER, I'VE NEVER EXPERIENCED ANOTHER LAB ERROR AND THAT'S

02:14PM 2    THE OPINION THAT I'M NOW GOING TO GIVE.

02:14PM 3        SO I WOULD SAY THAT THAT IS OBVIOUSLY THE STUFF OF EXPERT

02:14PM 4    TESTIMONY.

02:14PM 5        AND OUR POINT HERE IS THAT WE DON'T KNOW THE BASIS FOR

02:15PM 6    THIS, AND IT NEEDS TO BE DISCLOSED AND THE COURT NEEDS TO HAVE

02:15PM 7    THE OPPORTUNITY TO PERFORM THIS GATEKEEPING FUNCTION BECAUSE OF

02:15PM 8    THE SUBSTANTIAL PREJUDICE THAT WOULD COME FOR IT, OR COME FROM

02:15PM 9    IT.

02:15PM 10       I HEARD MR. BOSTIC SAY EARLIER THAT THE IDEA THAT OTHER

02:15PM 11   LAB ERRORS IS -- THAT OTHER LABS HAD ERRORS, OR DIDN'T, IS, YOU

02:15PM 12   KNOW, RELEVANT IN THIS CASE, AND IF -- I QUESTION WHETHER

02:15PM 13   THAT'S THE CASE BECAUSE WHAT WE'RE REALLY TALKING ABOUT IS

02:15PM 14   THERANOS, NOT OTHER LABS, OR THAT'S WHAT THE ALLEGATIONS IN THE

02:15PM 15   INDICTMENT GO TO.

02:15PM 16       BUT EVEN IF NOT, IT REALLY DOES OPEN THE DOOR TO KIND OF

02:15PM 17   QUESTIONING WHETHER THAT IS -- YOU KNOW, WHETHER THAT'S TRUE OF

02:15PM 18   THESE LAB COMPANIES, WHICH HAS NOT REALLY BEEN AN ISSUE OF

02:15PM 19   DISCOVERY IN THIS CASE.

02:15PM 20       AND FRANKLY, IT MEANS THAT PRETTY MUCH ANY ANECDOTAL

02:15PM 21   RESULT, INCLUDING SOMETHING THAT IS -- YOU KNOW, INCLUDING FROM

02:15PM 22   DOCTORS THAT HAVE NOTHING TO DO WITH THERANOS COULD COME IN AND

02:15PM 23   SAY, OH, BY THE WAY, I RECEIVED -- I DID HAVE A LAB ERROR FROM

02:16PM 24   SONORA QUEST, I DID HAVE A LAB ERROR FROM LABCORP, OR ANY OF

02:16PM 25   THESE OTHER LAB COMPANIES, AND I THINK THAT KIND OF BLOWS THE

02:16PM 1    DOORS OFF OF THE POTENTIAL, YOU KNOW, SCOPE OF THIS VERY LONG

02:16PM 2    CASE AND KIND OF -- AND SO I THINK OVERALL MY POINT IS THAT, AS

02:16PM 3    A FIRST STEP, WE NEED TO UNDERSTAND WHAT THE BASIS FOR THESE

02:16PM 4    EXTREMELY SWEEPING STATEMENTS ARE BECAUSE THERE'S REASON TO

02:16PM 5    DOUBT WHETHER THEY ARE RELIABLE CONCLUSIONS.

02:16PM 6        SO AT THIS POINT I WANTED TO TOUCH JUST BRIEFLY ON THE

02:16PM 7    TIMING ISSUE BECAUSE I UNDERSTAND WITH RESPECT TO -- I

02:16PM 8    UNDERSTAND THAT THE GOVERNMENT IS SAYING THAT IT IS TRYING TO

02:16PM 9    GET MORE INFORMATION ON WHAT THESE DOCTORS ARE BASING THEIR

02:16PM 10   OPINIONS ON.

02:16PM 11       THE GOVERNMENT FOCUSSED ON FOUR MONTHS UNTIL TRIAL, BUT I

02:17PM 12   WOULD JUST NOTE THAT IT IS 14 MONTHS, 14 MONTHS PAST THE

02:17PM 13   DISCLOSURE DEADLINE FOR THESE EXPERT DISCLOSURES FOR THE

02:17PM 14   GOVERNMENT'S CASE.

02:17PM 15       THE GOVERNMENT HAS BEEN SAYING IT IS TRIAL READY SINCE

02:17PM 16   JULY OF LAST YEAR AT LEAST, AND IT SEEMS TO ME THAT IF THE

02:17PM 17   GOVERNMENT WANTS TO ELICIT THESE OPINIONS, WHICH IS AT LEAST IN

02:17PM 18   SOME WAY UP TO THEM, THEY CHOOSE, SUBJECT TO RELEVANCE AND OUR

02:17PM 19   OBJECTIONS, BUT IF THE GOVERNMENT IS COMING IN HERE AND WANTING

02:17PM 20   TO ELICIT THESE OPINIONS AT TRIAL, IT CERTAINLY SHOULD HAVE HAD

02:17PM 21   ENOUGH TIME TO FIGURE OUT WHY ITS WITNESSES BELIEVE WHAT THEY

02:17PM 22   BELIEVE AND, FRANKLY, FIGURING OUT THE BASES FOR THESE

02:17PM 23   OPINIONS, I WOULD HAVE THOUGHT, IS SOMETHING THAT YOU WOULD

02:17PM 24   WANT TO DO WHEN YOU'RE INTERVIEWING THE WITNESSES THE FIRST

02:17PM 25   TIME OR BEFORE YOU MAKE BROAD ACCURACY ACCUSATIONS.

02:17PM 1      BUT AT THE VERY LEAST I GUESS MY POINT, YOUR HONOR, IS

02:17PM 2  THAT WE NEED THE OPPORTUNITY FOR -- ONCE WE GET ADEQUATE

02:18PM 3  DISCLOSURES, IF THEY EVER COME, WE NEED THE OPPORTUNITY TO

02:18PM 4  HAVE -- YOU KNOW, TO TEST THE RELIABILITY OF THEIR OPINIONS

02:18PM 5  BEFORE THOSE DOCTORS GET UP AND TESTIFY.

02:18PM 6      THE THIRD SET OF OPINIONS -- AND HERE THIS IS -- I THINK I

02:18PM 7  CAN DEFER TO THE COURT A LITTLE BIT ON WHETHER YOU WANT TO

02:18PM 8  DISCUSS THIS NOW OR WITH RESPECT TO THE NEXT MOTION, WHICH I

02:18PM 9  ALSO HAVE THE PLEASURE OF ARGUING, BUT IT'S STATEMENTS ABOUT

02:18PM 10  THESE KIND OF HYPOTHETICAL INFLAMMATORY CONSEQUENCES THAT

02:18PM 11  DIDN'T HAPPEN, AND OUR MOTION IN THAT REGARD COVERS BOTH,

02:18PM 12  BUT -- OR COVERS BOTH CUSTOMER TESTIMONY IN THAT RESPECT.

02:18PM 13      THE COURT:  WELL, LET ME -- I'LL ACCEPT YOUR

02:18PM 14  INVITATION TO SPEAK ABOUT IT.  THANK YOU.

02:18PM 15      MS. TREFZ:  OKAY.

02:18PM 16      THE COURT:  LET ME SAY, JUST TO HELP THINGS ALONG IN

02:18PM 17  THE CONVERSATION, AND TO GIVE THE GOVERNMENT A HEADS UP, I DO

02:19PM 18  HAVE SOME CONCERNS ABOUT ALLOWING SOME OF THE TESTIMONY, THE

02:19PM 19  EMOTIONAL TESTIMONY ABOUT HYPOTHETICAL CONDITIONS AND WHAT THAT

02:19PM 20  MEANT TO INDIVIDUALS.  SO I DO HAVE SOME CONCERNS ABOUT THAT,

02:19PM 21  SO THE GOVERNMENT'S -- I'M JUST PUTTING THE GOVERNMENT ON

02:19PM 22  NOTICE.  I'D LIKE TO HEAR FROM YOU ABOUT WHY THAT HAS RELEVANCE

02:19PM 23  AND WHY IT SHOULD BE ADMITTED.

02:19PM 24      I HAVE SOME DOUBTS -- IN THE SPIRIT OF FULL DISCLOSURE, I

02:19PM 25  HAVE SOME DOUBTS ABOUT IT, BUT I JUST WANT TO LET YOU KNOW.

02:19PM 1    THAT MIGHT HELP YOUR ARGUMENT, TOO.

02:19PM 2         MS. TREFZ:  RIGHT.  I APPRECIATE THAT, YOUR HONOR.

02:19PM 3       SO I'M GOING TO MOVE ON.  THAT'S A BUCKET OF EXPERT

02:19PM 4    TESTIMONY, BUT WE'LL TALK ABOUT THAT NEXT, I WOULD SAY IN THE

02:19PM 5    INTEREST OF BEING BRIEF, BUT I THINK WE'RE BEYOND THAT.

02:19PM 6       AND THEN THE FOURTH CATEGORY IS OPINIONS REGARDING

02:19PM 7    THERANOS RESULTS OF IDENTIFIED PATIENTS, AND THAT I LEFT IT FOR

02:19PM 8    LAST BECAUSE I KNOW YOU'VE ALREADY BEEN DISCUSSING IT WITH

02:19PM 9    MR. WADE AND IT REALLY GOES TO THE -- OUR OBJECTION THERE IS

02:19PM 10    NOT REALLY ON DISCLOSURE BECAUSE I THINK FOR THOSE PATIENT --

02:20PM 11    FOR THOSE OPINIONS WHERE THE DOCTOR HAS ACTUALLY IDENTIFIED A

02:20PM 12    PATIENT, THEN WE HAVE WHAT WE NEED OR WE CAN SUBPOENA WHAT ELSE

02:20PM 13    WE NEED.

02:20PM 14       BUT WE JUST NOTE THAT -- WE WOULD JUST MAKE THE ADDITIONAL

02:20PM 15    POINT THAT FOCUSSING ON THESE INDIVIDUAL ANECDOTAL ISSUES,

02:20PM 16    DESPITE THEIR KIND OF -- DESPITE THEIR LIMITED PROBATIVE VALUE,

02:20PM 17    AND ESPECIALLY IN THE CONTEXT OF A CASE WHERE THE GOVERNMENT

02:20PM 18    DOESN'T HAVE KIND OF A SYSTEMIC DATA ANALYSIS, WE THINK IT'S

02:20PM 19    EVEN MORE PREJUDICIAL BECAUSE IT SUGGESTS TO THE JURY THAT SUCH

02:20PM 20    AN EXPERIENCE IS REPRESENTATIVE WHEN WE KNOW THAT THERE IS NO

02:20PM 21    INDICATION THAT THAT'S NECESSARILY THE CASE.

02:20PM 22       SO WITH THAT, YOUR HONOR, I THINK I WOULD --

02:20PM 23         THE COURT:  YIELD THE FLOOR?

02:20PM 24         MS. TREFZ:  YEAH, TURN IT OVER.

02:20PM 25         THE COURT:  OKAY.

02:21PM 1    MR. BOSTIC.

02:21PM 2         MR. BOSTIC:  THANK YOU, YOUR HONOR.

02:21PM 3    I MENTIONED BEFORE, BUT LET ME JUST REITERATE, THAT THESE

02:21PM 4    ARE NOT STANDARD EXPERT WITNESSES.  THEY ARE MAINLY PERCIPIENT

02:21PM 5    WITNESSES.

02:21PM 6    WE SPOKE BEFORE THE LUNCH BREAK ABOUT THE IMPORTANCE OF

02:21PM 7    PATIENT VICTIM TESTIMONY IN THIS CASE, AND SO THE COURT KNOWS

02:21PM 8    THE GOVERNMENT'S VIEWS THERE.

02:21PM 9    THE GOVERNMENT BELIEVES THAT IT'S EXTREMELY IMPORTANT TO

02:21PM 10   THE VICTIMS' RIGHTS AND TO THE TRUTH SEEKING FUNCTION OF THE

02:21PM 11   JURY THAT THEY HEAR FROM PATIENT VICTIMS WHO GOT INACCURATE

02:21PM 12   THERANOS TEST RESULTS.

02:21PM 13   THE TESTIMONY OF DOCTORS REALLY GOES HAND IN HAND WITH THE

02:21PM 14   TESTIMONY OF THOSE PATIENT VICTIMS.

02:21PM 15   A PATIENT CAN TESTIFY ABOUT THE PROMOTIONAL MATERIALS OR

02:21PM 16   THE MARKETING MATERIALS THAT THEY WERE EXPOSED TO FROM

02:22PM 17   THERANOS, ABOUT THEIR REASONS FOR CHOOSING THERANOS, ABOUT

02:22PM 18   THEIR EXPERIENCES WITH THE COMPANY, THE RESULTS THAT THEY GOT.

02:22PM 19   SO, FOR EXAMPLE, A VICTIM CAN TESTIFY THAT SHE USED

02:22PM 20   THERANOS FOR HCG, FOR A PREGNANCY TEST, AND SHE CAN TALK ABOUT

02:22PM 21   WHY SHE CHOSE THERANOS AND GIVE HER VIEWS ON WHERE ACCURACY WAS

02:22PM 22   IMPORTANT TO HER, AND SHE CAN RELAY THE RESULTS SHE RECEIVED

02:22PM 23   WHEN SHE'S ON THE STAND.

02:22PM 24   BUT HER DOCTOR IS THE ONE WHO IS IN THE BEST POSITION TO

02:22PM 25   TESTIFY REGARDING WHAT AN HCG TEST IS, HOW IS IT USED, WHY WAS

02:22PM 1    IT ORDERED IN THIS SPECIFIC PATIENT'S CASE, AND ALSO TO EXPLAIN

02:22PM 2    WHAT RESULTS MEAN, SO INCLUDING THE SIGNIFICANCE OF THE

02:22PM 3    SPECIFIC RESULTS RECEIVED BY THAT PARTICULAR PATIENT AT ISSUE.

02:22PM 4        SO FOR ALL OF THE REASONS THAT PATIENT TESTIMONY IS VITAL

02:22PM 5    TO THIS CASE, DOCTOR TESTIMONY ABOUT THOSE SAME RESULTS IS

02:22PM 6    VITAL AS A COMPLEMENT TO THAT PATIENT TESTIMONY.

02:22PM 7        WE HAVE SPOKEN ABOUT THE SCOPE OF THE ANTICIPATED DOCTOR

02:23PM 8    TESTIMONY, SO I WON'T REITERATE THAT, ALTHOUGH I'M HAPPY TO

02:23PM 9    ANSWER ANY QUESTIONS THAT THE COURT MIGHT HAVE.

02:23PM 10       AND I WILL GO THROUGH THE FOUR CATEGORIES OF OPINIONS THAT

02:23PM 11   THE DEFENSE IS STILL OBJECTING TO.

02:23PM 12       LET ME FIRST JUST HIGHLIGHT THE FACT THAT THE STANDARD FOR

02:23PM 13   ADMISSIBILITY OF EXPERT TESTIMONY IS FLEXIBLE.  THE

02:23PM 14   NINTH CIRCUIT TELLS US THAT.  THAT'S THE DECISION IN

02:23PM 15   LOPEZ MARTINEZ CITED BY BOTH PARTIES.

02:23PM 16       THE STANDARD FOR ADMISSIBILITY AND RELIABILITY

02:23PM 17   DETERMINATIONS NEEDS TO BE FLEXIBLE FOR EXPERT TESTIMONY

02:23PM 18   BECAUSE THERE ARE SO MANY DIFFERENT KINDS OF EXPERT OPINIONS

02:23PM 19   THAT COME IN IN SUCH A WIDE VARIETY OF DIFFERENT CASE TYPES.

02:23PM 20       WHEN WE SEE THE CASES, THOUGH, THAT THE DEFENSE RELIES ON

02:23PM 21   IN SEEKING TO EXCLUDE THESE OPINIONS, WE SEE PRIMARILY ONE CASE

02:23PM 22   TYPE.  WE SEE A CASE TYPE INVOLVING COMPLICATED ISSUES,

02:24PM 23   DIFFICULT AND DISPUTED EXPERT OPINIONS THAT ARE BASED ON, OR

02:24PM 24   SHOULD BE BASED ON, DETAILED ANALYSIS.  AS WITH THE PATIENT

02:24PM 25   TESTIMONY MOTION, THE DEFENSE RELIES ON A NUMBER OF CASES THAT

02:24PM 1    INVOLVE CAUSATION, A SPECIFIC ISSUE THAT IS KEY AND PIVOTAL IN

02:24PM 2    A CASE TYPE THAT THE COURT IS NOW FACED WITH.

02:24PM 3        AS BEFORE, I THINK THE DEFENSE'S AUTHORITY IS OF LIMITED

02:24PM 4    USEFULNESS HERE.

02:24PM 5        THE GOVERNMENT'S DISCLOSURE TO THE DEFENSE GOES INTO

02:24PM 6    SUBSTANTIAL DETAIL ABOUT THESE WITNESSES' OPINIONS AND THE

02:24PM 7    BASES THEREFORE.  WE ARE WORKING STILL TO BOLSTER THAT AND

02:24PM 8    PROVIDE ADDITIONAL INFORMATION.

02:24PM 9        BUT THE OPINIONS ARE WELL FOUNDED.  IT'S HIGHLIGHTED IN

02:24PM 10   THE GOVERNMENT'S BRIEFING, BUT EXPLAINED MORE FULLY IN THE

02:24PM 11   COURT'S -- OR SORRY, IN THE GOVERNMENT'S DISCLOSURE TO THE

02:25PM 12   DEFENSE THAT EACH OF THESE DOCTORS IS VERY, VERY WELL QUALIFIED

02:25PM 13   TO RENDER THE KIND OF OPINION THAT THE GOVERNMENT ANTICIPATES

02:25PM 14   THEY'LL RENDER.  EACH OF THESE DOCTORS HAS USED AND REVIEWED

02:25PM 15   RESULTS FROM THE RELEVANT ASSAYS, THOUSANDS, IF NOT TENS OF

02:25PM 16   THOUSANDS OF TIMES.  THIS IS LITERALLY WHAT THEY DO.  THIS IS

02:25PM 17   HOW THEY SPEND THEIR DAYS AS TREATING PHYSICIANS IS OBTAINING

02:25PM 18   THESE LAB RESULTS AND THEN CORRELATING THOSE LAB RESULTS TO THE

02:25PM 19   OTHER INFORMATION THAT THEY HAVE ABOUT THEIR PATIENT'S HEALTH

02:25PM 20   CONDITION, PHYSICAL PRESENTATION, COMPLAINTS OR SELF-REPORTING

02:25PM 21   FROM THE PATIENT.

02:25PM 22       AND BY VIRTUE OF THEIR FORMAL EDUCATION, THEIR TRAINING,

02:25PM 23   AND AS I JUST REFERENCED, THEIR SUBSTANTIAL EXPERIENCE WORKING

02:25PM 24   WITH THESE ASSAYS, THEY INEVITABLY BECOME EXPERTS IN EXACTLY

02:25PM 25   WHAT WE'RE ASKING THEM TO DO, TAKE AN ASSAY RESULT AND PAIR IT

02:26PM 1    TO EVERYTHING ELSE THEY KNOW ABOUT THE PATIENT AND SEE WHAT

02:26PM 2    THAT RELATIONSHIP IS.

02:26PM 3        AND IN THE CASES OF SOME THESE THERANOS TESTS, THE ANSWER

02:26PM 4    IS THERE IS NO CORRELATION.  THERE'S A MISMATCH.  THESE TWO

02:26PM 5    THINGS ARE INCOMPATIBLE.  THE THERANOS ASSAY RESULT DOES NOT

02:26PM 6    SQUARE WITH THE OTHER FACTS THAT I KNOW ABOUT MY PATIENT.  AND

02:26PM 7    WHEN THAT'S THE CASE, THEY SHOULD BE ABLE TO SIMPLY STATE THAT

02:26PM 8    FACT.

02:26PM 9        SO THAT KIND OF OPINION IS RELATIVELY SIMPLE.  IT'S NOT

02:26PM 10   BASED ON A STATISTICAL ANALYSIS AS THE DEFENSE KEEPS WANTING TO

02:26PM 11   SEE IN THIS CASE THEY CLAIM.  IT'S BASED ON THE DOCTOR'S

02:26PM 12   EDUCATION, TRAINING, AND EXPERIENCE.  IT DOESN'T NECESSITATE A

02:26PM 13   DETAILED MULTI-STEP METHODOLOGY.  THERE'S NO WAY THAT THE

02:26PM 14   DOCTOR COULD PRODUCE A 10 OR 20-PAGE REPORT EXPLAINING HOW HE

02:26PM 15   OR SHE KNOWS THIS RESULT TO BE FALSE.  IT SIMPLY IS A FACT

02:26PM 16   KNOWN TO THE DOCTOR BASED ON THEIR EXPERIENCE AND THE AMOUNT OF

02:27PM 17   EXPERIENCE THAT THEY HAVE WORKING WITH THAT SPECIFIC ASSAY.

02:27PM 18       SO IN POINTING TO OTHER EXAMPLES WHERE EXPERT OPINIONS

02:27PM 19   WERE FAR MORE COMPLEX AND REQUIRED FAR MORE DETAILED PROOF AND

02:27PM 20   A MORE RIGOROUS METHODOLOGY OR A MORE ELABORATE METHODOLOGY,

02:27PM 21   THE DEFENSE'S ARGUMENTS ESSENTIALLY PENALIZE, OR SEEK TO

02:27PM 22   PENALIZE THESE EXPERT OPINIONS FOR BEING SIMPLE.

02:27PM 23       BUT SIMPLICITY SHOULD BE A GOOD THING HERE.  COMPLEXITY IS

02:27PM 24   NOT A REQUIREMENT FOR RELIABILITY OR ADMISSIBILITY WHEN IT

02:27PM 25   COMES TO EXPERT OPINIONS.  IT'S OKAY THAT THESE OPINIONS ARE

02:27PM 1    RELATIVELY SIMPLE ONES.

02:27PM 2        AND THE GOVERNMENT CITES ADAMS VERSUS LABCORP, THAT'S AN

02:27PM 3    ELEVENTH CIRCUIT CASE WHERE THE COURT THERE SAID THAT AN

02:27PM 4    EXPERT'S METHODOLOGY CAN CONSIST OF THE APPLICATION OF MEDICAL

02:27PM 5    KNOWLEDGE, AND WHETHER THAT EXPERT'S APPROACH IS CALLED A,

02:27PM 6    QUOTE, METHODOLOGY OR SIMPLY, QUOTE, APPLICATION OF

02:27PM 7    PROFESSIONAL JUDGMENT DOES NOT MATTER AS LONG AS THERE'S AN

02:28PM 8    APPROPRIATE RELIABILITY INQUIRY.

02:28PM 9        SO HERE AGAIN THE QUALIFICATIONS OF THESE EXPERTS, THE

02:28PM 10   FACT THAT WE'RE SIMPLY ASKING THEM TO OPINE IN A WAY THAT THEY

02:28PM 11   DO LITERALLY EVERY DAY AS PART OF TREATING PATIENTS, THOSE

02:28PM 12   FACTS RENDER THEIR OPINIONS ADMISSIBLE AND RELIABLE AND THERE

02:28PM 13   SHOULD NOT BE ANY NEED TO HAVE A DAUBERT HEARING TO CONFIRM

02:28PM 14   THAT.

02:28PM 15       IMAGINE -- HERE'S A POSSIBLY HELPFUL ANALOGY.  IMAGINE

02:28PM 16   THAT THIS CASE, INSTEAD OF TURNING ON THE ACCURACY OF BLOOD

02:28PM 17   TESTS, TURNED ON THE ACCURACY OF AN ELECTRONIC SCALE.  YOU CAN

02:28PM 18   IMAGINE A FAMILY PHYSICIAN, WHO CONSTANTLY DOES HEALTH CHECKS

02:28PM 19   AND WEIGHS PEOPLE FREQUENTLY, WOULD HAVE A PRETTY GOOD SENSE OF

02:28PM 20   WHAT A PATIENT'S WEIGHT IS LIKELY TO BE, WHAT THE REALISTIC

02:28PM 21   RANGE IS GOING TO BE, AND IF A PATIENT COMES INTO THE OFFICE

02:28PM 22   ONE DAY WHO HAS WEIGHED, LET'S SAY, 180 POUNDS IN THE PAST, IF

02:29PM 23   THE DOCTOR HAS A SENSE OF THAT PATIENT'S OVERALL HEALTH, MUSCLE

02:29PM 24   TONE, HEIGHT, THAT OTHER INFORMATION, IF THAT PATIENT STEPS ON

02:29PM 25   AN ELECTRONIC SCALE AND THE SCALE READS 40 POUNDS INSTEAD OF

02:29PM 1   180, THAT DOCTOR IS IN A VERY GOOD POSITION TO SAY THIS RESULT

02:29PM 2   DOESN'T MATCH UP.  THIS SCALE CANNOT BE ACCURATE BASED ON MY

02:29PM 3   EXPERIENCE, BASED ON THE SIMPLE FACT THAT I KNOW THERE IS

02:29PM 4   SOMETHING WRONG WITH THIS RESULT.  IT CANNOT BE TRUE.

02:29PM 5       THAT'S THE EXACT SAME THING THAT IS HAPPENING HERE.  JUST

02:29PM 6   LIKE IN THAT CASE, YOU KNOW, IF THIS WERE ABOUT ELECTRONIC

02:29PM 7   SCALES, WE WOULDN'T BE ASKING THE DOCTORS TO EXPLAIN WHAT WENT

02:29PM 8   WRONG IN THE CIRCUITRY OF THE SCALE.  WE'RE NOT ASKING THEM TO

02:29PM 9   PROVIDE THAT EXPLANATION.  WE'RE NOT ASKING THEM TO MAKE

02:29PM 10  SWEEPING CONCLUSIONS ABOUT WHAT MUST BE WRONG WITH OTHER SCALES

02:29PM 11  MADE BY THAT SAME COMPANY.

02:29PM 12      BUT THEY CAN SAY, I GOT THIS RESULT, IT DOESN'T MAKE SENSE

02:29PM 13  BASED ON EVERYTHING ELSE I KNOW.

02:29PM 14      IN THAT CASE ALSO, IT'S HARD TO IMAGINE HOW THERE COULD BE

02:30PM 15  A COMPLICATED, ELABORATE MULTI-STEP METHODOLOGY UNDERLYING THAT

02:30PM 16  OPINION, BUT THAT DOESN'T MEAN IT'S NOT RELIABLE, AND THAT'S

02:30PM 17  SIMPLY THE GOVERNMENT'S POINT.

02:30PM 18      LET ME COVER THE FOUR CATEGORIES OF OPINIONS THAT THE

02:30PM 19  DEFENSE IS OBJECTING TO.

02:30PM 20      FIRST, AS TO OPINIONS BASED ON PATIENTS WHO HAVE NOT YET

02:30PM 21  BEEN IDENTIFIED, THE GOVERNMENT'S PLAN IS TO IDENTIFY THOSE

02:30PM 22  PATIENTS IF AT ALL POSSIBLE, AND SO THAT IS THE CONTINUING WORK

02:30PM 23  OF THE GOVERNMENT.  IN SOME CASES IT INVOLVES RETRIEVING LARGE

02:30PM 24  QUANTITIES OF RECORDS FROM THE DOCTOR'S OFFICE AND REVIEWING

02:30PM 25  THOSE RECORDS THOROUGHLY TO ASSIST THE DOCTOR IN IDENTIFYING

136

02:30PM 1    THOSE PATIENTS.

02:30PM 2         IN OTHER CASES IT INVOLVES WORKING WITH THE DOCTOR AND

02:30PM 3    SEEKING THAT INFORMATION SO THAT THE DOCTOR CAN ACTUALLY GO

02:30PM 4    THROUGH AND -- GO BACK THROUGH HIS OR HER RECORDS AND PROVIDE

02:30PM 5    THAT INFORMATION TO THE GOVERNMENT.

02:30PM 6         SO THOSE EFFORTS ARE ONGOING.

02:30PM 7         THE PLAN IS TO -- OR THE GOVERNMENT'S INTENTION IS TO HAVE

02:31PM 8    DOCTORS TESTIFY BASED ON SPECIFIC PATIENTS THAT THEY CAN

02:31PM 9    IDENTIFY FOR THE DEFENSE.

02:31PM 10        IN THE ABSENCE OF THAT, WE'LL NEED TO THINK ABOUT WHETHER

02:31PM 11   ENOUGH DETAIL CAN BE PROVIDED SEPARATE FROM THE PATIENT'S

02:31PM 12   IDENTITY THAT A SHOWING CAN STILL BE MADE FOR THAT OPINION AS

02:31PM 13   RELIABLE, BUT WE'RE NOT THERE YET.  PLAN A IS STILL TO ACTUALLY

02:31PM 14   DETERMINE AND DISCLOSE THOSE IDENTITIES.

02:31PM 15        THE NEXT CATEGORY RELATES TO OPINIONS REGARDING THE

02:31PM 16   ABSENCE OF PROBLEMS WITH OTHER LAB SERVICES.

02:31PM 17        HERE I HEAR TWO DIFFERENT THINGS FROM THE DEFENSE.  ON THE

02:31PM 18   ONE HAND I HEAR THAT THIS CASE CAN'T BE PROVEN WITHOUT A

02:31PM 19   DETERMINATION OF THERANOS'S OVERALL FAILURE RATE, AND IF THAT

02:31PM 20   OVERALL FAILURE RATE IS SIMILAR TO WHAT THE DEFENSE REPRESENTS

02:31PM 21   IS THE GENERAL FAILURE RATE IN LAB TESTING, THEN IT CAN'T BE

02:32PM 22   SAID THAT THERANOS'S TESTS WERE INACCURATE.

02:32PM 23        THE GOVERNMENT DISAGREES WITH THAT READING OF THE CASE.

02:32PM 24   THAT'S NOT HOW THIS WIRE FRAUD CASE WORKS.

02:32PM 25        BUT, ON THE OTHER HAND, THE DEFENSE IS NOW SAYING THAT THE

02:32PM 1     RELATIVE PERFORMANCE OF OTHER LABS MAKES NO DIFFERENCE TO THIS

02:32PM 2     CASE AND THAT DOCTORS SHOULDN'T BE ALLOWED TO SAY, I

02:32PM 3     EXPERIENCED THESE PROBLEMS WITH THERANOS TESTS, I NEVER

02:32PM 4     ENCOUNTERED SIMILAR PROBLEMS WITH OTHER LAB SERVICES.

02:32PM 5         BUT THOSE STATEMENTS BY DOCTORS, THOSE OPINIONS ARE

02:32PM 6     IMPORTANT BECAUSE THEY DO SHOW THE FACT, THEY TEND TO SHOW THAT

02:32PM 7     THE ACCURACY AND RELIABILITY PROBLEMS EXPERIENCE BY THERANOS

02:32PM 8     WERE UNIQUE TO THAT COMPANY.

02:32PM 9         THIS IS NOT GOING TO BE THE ONLY EVIDENCE BY A LONG SHOT

02:32PM 10     THAT SHOWS THAT. AS I REFERENCED BEFORE, THERE WILL BE

02:32PM 11     INTERNAL EMPLOYEE COMMUNICATIONS REGARDING THERANOS SPECIFIC

02:32PM 12     ISSUES. THERE WILL BE REGULATORY REPORTS SHOWING THE

02:32PM 13     DEFICIENCIES IN THE THERANOS LABS.

02:33PM 14         SO IT WILL BE VERY CLEAR AT THE END OF THE TRIAL THAT

02:33PM 15     THERANOS SUFFERED FROM MANY OF ITS OWN UNIQUE PROBLEMS THAT

02:33PM 16     CREATED AN INABILITY TO DELIVER RELIABLE TEST RESULTS.

02:33PM 17         BUT DOCTORS' STATEMENTS ARE CERTAINLY PART OF THAT. WHEN

02:33PM 18     THEY OPINE THAT A SPECIFIC TEST RESULT IS INACCURATE, OR MUST

02:33PM 19     HAVE BEEN INACCURATE, I THINK IT WILL BE CLEAR THAT THESE

02:33PM 20     SITUATIONS, THESE INSTANCES MADE QUITE AN IMPACT ON THESE

02:33PM 21     DOCTORS.

02:33PM 22         IN ORDER FOR THEM TO SAY THAT A TEST RESULT MUST BE

02:33PM 23     INACCURATE, THE RESULT MUST BE SO FAR OUT OF THE RANGE OF WHAT

02:33PM 24     THEY WERE EXPECTING THAT IT'S OBVIOUS. OTHERWISE THEY WOULDN'T

02:33PM 25     BE COMFORTABLE MAKING THAT STATEMENT.

02:33PM 1      SO WHEN THEY SAY IN TURN THAT I NEVER ENCOUNTERED ANYTHING

02:33PM 2   LIKE THIS WORKING WITH OTHER LABS FOR THE PAST 10 YEARS,

02:33PM 3   20 YEARS, HOWEVER LONG IT IS, I THINK THE COURT AND THE JURY

02:33PM 4   CAN RELY ON THAT STATEMENT OF THEIR MEMORY.

02:34PM 5      AGAIN, THAT'S NOT NECESSARILY AN OPINION.  THAT IS SIMPLY

02:34PM 6   A STATEMENT OF THEIR RECOLLECTION SAYING THAT THEY DON'T RECALL

02:34PM 7   HAVING THESE PROBLEMS WITH OTHER LABS BECAUSE THESE ISSUES

02:34PM 8   STAND OUT IN THE DOCTORS' MINDS.

02:34PM 9      THE COURT:  SO THAT WOULD BE THE REASON -- THE

02:34PM 10   TESTIMONY WOULD BE, HOW DO YOU REMEMBER THIS, AND THE ANSWER

02:34PM 11   WOULD BE, BECAUSE I'VE NEVER HAD AN ISSUE WITH A LAB BEFORE?

02:34PM 12      MR. BOSTIC:  YES, YES, YOUR HONOR.

02:34PM 13      AND IF THE FOLLOW-UP QUESTION WAS, WELL, HOW CAN YOU BE

02:34PM 14   SURE?  WOULD YOU REMEMBER THIS KIND OF ISSUE COMING UP BEFORE?

02:34PM 15      I ANTICIPATE THE RESPONSE WOULD BE:  YES, CERTAINLY.  THIS

02:34PM 16   WAS SUCH A UNIQUE AND DRAMATICALLY WRONG RESULT THAT IT'S GOING

02:34PM 17   TO STAND OUT IN MY MIND GOING FORWARD.  ANYTHING SIMILAR WOULD

02:34PM 18   HAVE SIMILARLY STOOD OUT IN MY MIND.

02:34PM 19      SO IF THE QUESTION FROM THE DEFENSE IS, HAVE THESE DOCTORS

02:34PM 20   GONE BACK AND AUDITED EACH OF THEIR 5,000, 10,000 ASSAY RESULTS

02:34PM 21   OBTAINED FROM CONVENTIONAL LABS OVER DECADES TO REACH THAT

02:35PM 22   OPINION, THE ANSWER IS NO.

02:35PM 23      BUT THEIR TESTIMONY WILL BE HONEST IN THAT THEY'RE SIMPLY

02:35PM 24   TESTIFYING THAT, TO THEIR RECOLLECTION, THEY HAVE NOT SEEN

02:35PM 25   THESE ISSUES WITH OTHER LABS BEFORE.

02:35PM 1          THE COURT:  SO IS THE QUESTION, PHRASED EQUALLY,

02:35PM 2    HAVE YOU EVER HAD A PATIENT TEST RESULT COME BACK WITH THIS

02:35PM 3    TYPE OF VARIANCE, OR WHATEVER IT IS, INACCURACY?  IS THAT THE

02:35PM 4    SAME QUESTION?

02:35PM 5          MR. BOSTIC:  I BELIEVE IT'S EQUIVALENT, YOUR HONOR.

02:35PM 6          THE COURT:  AND THEN THE QUESTION IS -- WELL, I SEE

02:35PM 7    THE ISSUE OF I'VE NEVER SEEN THIS BEFORE; AND THEN THE

02:35PM 8    QUESTIONS OF, WELL, HOW MANY LABS HAVE YOU USED?  WELL, I'VE

02:35PM 9    ONLY USED QUEST, OR WHATEVER IT IS.  AND THAT HAS SOME VALUE, I

02:35PM 10   SUPPOSE.  OR, I'VE USED 50 DIFFERENT LABS.  I SUPPOSE THAT HAS

02:35PM 11   DIFFERENT VALUE.

02:36PM 12         I WAS JUST CURIOUS IF THE ISSUE REALLY WAS, HAVE YOU EVER

02:36PM 13   HAD A PATIENT TEST WITH THIS RANGE, THIS VARIANCE THAT'S

02:36PM 14   NONBIOLOGICAL, THAT HAS NO BIOLOGICALLY SOUND EXPLANATION OR

02:36PM 15   SOMETHING LIKE THAT.

02:36PM 16         MR. BOSTIC:  THE COURT'S QUESTION IS WHETHER IT

02:36PM 17   MATTERS HOW MANY LABS THE GIVEN DOCTOR HAS PATRONIZED?

02:36PM 18         THE COURT:  WELL, I THINK SO.

02:36PM 19         WHAT I HEAR MS. TREFZ SAYING IS THAT THERE NEEDS TO BE

02:36PM 20   DAUBERTS ON ALL OF THESE THINGS, AND BEFORE YOU CAN EVEN LET

02:36PM 21   THOSE IN, JUDGE, YOU NEED TO ASK THESE TYPES OF QUESTIONS, WHAT

02:36PM 22   IS THE OPINION BASED ON?

02:36PM 23         AS OPPOSED TO JUST ASKING THEM AS NOT SO MUCH OF AN

02:36PM 24   EXPERT, I SUPPOSE, BUT JUST AS A FACT WITNESS ON THEIR PRACTICE

02:36PM 25   20 YEARS, 30 YEARS, 10 YEARS, 5 YEARS, IN ALL OF THAT, HOW MANY

02:36PM 1    TESTS HAVE YOU SENT OUT AND HAVE YOU EVER HAD TESTS THAT ARE

02:37PM 2    ANOMALIES LIKE THIS BEFORE OR RECEIVED THAT?

02:37PM 3        I DON'T KNOW.  I'M NOT TRYING TO FASHION A QUESTION.  I'M

02:37PM 4    JUST TRYING TO GET AN IDEA, IS A <u>DAUBERT</u> REALLY NEEDED FOR

02:37PM 5    THESE IF THERE ARE OTHER QUESTIONS THAT CAN BE POSED AND

02:37PM 6    ANSWERED WITH THE SAME QUESTION AND PROVIDE THAT INFORMATION?

02:37PM 7            MR. BOSTIC:  I DON'T BELIEVE A <u>DAUBERT</u> IS NECESSARY.

02:37PM 8    THE CASE LAW IS CLEAR THAT IT'S NOT REQUIRED AS AN AUTOMATIC

02:37PM 9    MATTER OF COURSE.

02:37PM 10   AND HERE I THINK, AGAIN, THE SIMPLICITY OF THE OPINIONS IS

02:37PM 11   THE KEY.  THE SIMPLICITY OF THE OPINIONS SHOULD MAKE THEM

02:37PM 12   EASIER TO DEFEND, EASIER FOR THE DEFENSE TO UNDERSTAND AND TO

02:37PM 13   PREPARE FOR.  IT MAKES IT EASIER FOR THEM TO CONFRONT THEM,

02:37PM 14   FRANKLY.

02:37PM 15   AND SO I'M NOT SURE WHAT WOULD BE ACCOMPLISHED BY A

02:37PM 16   <u>DAUBERT</u> HEARING.

02:37PM 17   AS TO THIS SPECIFIC CATEGORY OF STATEMENT, A DOCTOR SAYING

02:37PM 18   THAT THEY HAVEN'T ENCOUNTERED THIS KIND OF ISSUE BEFORE, I

02:37PM 19   DON'T VIEW THAT AS A SEPARATE OPINION FROM THEIR CORE OPINION

02:38PM 20   ABOUT A SPECIFIC INACCURATE THERANOS TEST RESULT.

02:38PM 21   ONCE THEY OPINE THAT GIVEN A THERANOS TEST RESULT SET OFF

02:38PM 22   ALARM BELLS, IF YOU WILL, THE NEXT QUESTION IS SIMPLY, HAS THAT

02:38PM 23   ALARM EVER GONE OFF BEFORE?  HAVE YOU EVER SEEN A SET OF

02:38PM 24   CONDITIONS THAT SIMILARLY CAUSED YOU TO REACT WITH THE

02:38PM 25   CONCLUSION THAT A TEST RESULT MUST BE SIMILARLY INACCURATE?

02:38PM 1      SO IT'S DEFINED TO THAT DOCTOR'S RECOLLECTION, TO HIS OR

02:38PM 2  HER EXPERIENCE, AND IT'S NOT AN INDEPENDENT OPINION THAT WOULD

02:38PM 3  REQUIRE A SEPARATE BASIS.

02:38PM 4      THE NEXT CATEGORY RELATES TO HYPOTHETICAL CONSEQUENCES OF

02:38PM 5  INACCURATE TEST RESULTS.  I THINK THIS IS PART AND PARCEL OF

02:38PM 6  THE CONTEXTUAL AND BACKGROUND TESTIMONY THAT THESE DOCTORS ARE

02:38PM 7  EXPECTED TO GIVE AND SHOULD BE PERMITTED TO GIVE.

02:38PM 8      WHEN A DOCTOR IS EXPLAINING WHAT AN ASSAY IS, HOW IT'S

02:39PM 9  USED, WHY IT'S IMPORTANT, I THINK IT'S CRITICAL THAT THE DOCTOR

02:39PM 10  BE ALLOWED TO EXPLAIN WHY ACCURACY IS IMPORTANT FOR A GIVEN

02:39PM 11  ASSAY, AND THAT NECESSARILY MUST INCLUDE HOW THE DOCTOR

02:39PM 12  INTERPRETS AND WOULD RESPOND TO OUT OF RANGE OR RED FLAG

02:39PM 13  RESULTS.  SO IT'S AS SIMPLE AS THAT.

02:39PM 14      WHEN A DOCTOR IS EXPLAINING HOW HE OR SHE INTERPRETS HCG

02:39PM 15  RESULTS, FOR EXAMPLE, YOU WOULD EXPECT THE DOCTOR TO SAY IF A

02:39PM 16  RESULT IS THIS FAR OUT OF RANGE IN THIS DIRECTION, I MIGHT

02:39PM 17  RESPOND IN THE FOLLOWING WAY:  IT WOULD BE A MEDICAL EMERGENCY,

02:39PM 18  THIS STEP WOULD THEN BE NECESSARY.

02:39PM 19      OF COURSE IF THE TEST RESULT WAS INACCURATE, THERE'S A

02:39PM 20  RISK THAT STEPS WOULD BE TAKEN UNNECESSARILY.  THAT DOESN'T

02:39PM 21  SEEM CONTROVERSIAL.

02:39PM 22      IT WOULD BE INTRODUCED ONLY TO PROVIDE FURTHER CONTEXT AND

02:39PM 23  BACKGROUND FOR THE JURY, AND ALSO TO SHOW THE MATERIALITY OF

02:40PM 24  ACCURACY REPRESENTATIONS IN THIS CASE.

02:40PM 25      WHEN IT COMES TO THE BUSINESS OF OFFERING CLINICAL BLOOD

02:40PM 1    TESTING, REQUIREMENTS FOR ACCURACY COME WITH THE TERRITORY AND

02:40PM 2    THE DOCTOR TESTIMONY WILL BE PART OF THE SHOWING THAT THE VALUE

02:40PM 3    OF THESE TESTS LIES IN THEIR ACCURACY.

02:40PM 4         SO WHEN THERANOS OFFERED TESTS REPRESENTING THEM TO BE

02:40PM 5    ACCURATE, BUT THEY HAD ACCURACY AND RELIABILITY PROBLEMS,

02:40PM 6    VICTIMS, PATIENT VICTIMS DIDN'T GET THE BENEFIT OF THE BARGAIN

02:40PM 7    BECAUSE IF THE ACCURACY IS MISSING, THE VALUE OF THE TEST IS

02:40PM 8    GREATLY DIMINISHED, IF NOT ELIMINATED, AND THE DOCTOR TESTIMONY

02:40PM 9    WILL EXPLAIN WHY THAT'S THE CASE FOR INDIVIDUAL ASSAYS.

02:40PM 10        AS TO PATIENT ACCOUNTS REGARDING RISKS OR IMPACTS OF

02:40PM 11   INACCURATE THERANOS RESULTS, WITH THE COURT'S PERMISSION, I'LL

02:41PM 12   DEFER TO MY COLLEAGUE WHO IS GOING TO ARGUE THAT SEPARATE

02:41PM 13   MOTION.

02:41PM 14        AND THAT BRINGS ME I THINK TO THE FOURTH CATEGORY, WHICH

02:41PM 15   IS, I THINK, JUST A REHASHING OF THE DEFENDANT'S REQUEST THAT

02:41PM 16   THE COURT EXCLUDE PATIENT TESTIMONY BASED ON INDIVIDUAL PATIENT

02:41PM 17   RESULTS.

02:41PM 18        AS WITH THAT MOTION, THE EXISTENCE OF INACCURATE THERANOS

02:41PM 19   TESTS IS RELEVANT.  THESE ARE, AGAIN, BRICKS IN THE WALL OF THE

02:41PM 20   GOVERNMENT'S CASE REGARDING THE ACCURACY AND RELIABILITY

02:41PM 21   PROBLEMS WITH THERANOS.  THEY ARE CERTAINLY NOT THE ONLY PIECES

02:41PM 22   OF EVIDENCE THAT THE GOVERNMENT WILL OFFER, BUT ONCE THE

02:41PM 23   EVIDENCE HAS ESTABLISHED -- OR BECAUSE THE EVIDENCE IS GOING TO

02:41PM 24   ESTABLISH THAT THERANOS HAD THESE REPEATED PROBLEMS ACROSS

02:41PM 25   SEVERAL OF ITS TESTS WITH ACCURACY AND RELIABILITY, THE

143

02:42PM  1    EXISTENCE AND RECEIPT OF THOSE BAD TEST RESULTS BY PATIENTS AND

02:42PM  2    THOSE DOCTORS BECOMES RELEVANT AND WILL BE A RELEVANT PART OF

02:42PM  3    THE PROOF AT TRIAL.

02:42PM  4              THE COURT:  OKAY.  THANK YOU VERY MUCH.

02:42PM  5         MS. TREFZ, ANYTHING IN CLOSING?

02:42PM  6              MS. TREFZ:  YOUR HONOR, I'LL BE EXTREMELY BRIEF.

02:42PM  7    THREE QUICK POINTS, YOUR HONOR.

02:42PM  8         THE FIRST IS THAT I JUST WANTED TO MAKE CLEAR THAT WE ARE

02:42PM  9    NOT SAYING THAT PAYING THERANOS CUSTOMERS AND DOCTORS CAN'T

02:42PM  10   TESTIFY AT ALL.  I WOULD JUST -- I WANT TO -- I DON'T WANT THE

02:42PM  11   MISIMPRESSION TO BE LEFT THAT WE'RE SOMEHOW MOVING TO EXCLUDE

02:42PM  12   ALL DOCTOR TESTIMONY OR ALL PAYING PATIENT TESTIMONY.  THERE

02:42PM  13   ARE THINGS THAT WE THINK THAT THEY COULD SAY.

02:42PM  14        WHAT WE'RE CHALLENGING ARE VERY SPECIFIC DISCLOSURES THAT

02:42PM  15   HAVE BEEN MADE AND VERY -- AND IN THE NEXT MOTION VERY SPECIFIC

02:43PM  16   POTENTIAL PARTS OF THEIR TESTIMONY.

02:43PM  17        SECOND, THE FACT THAT IT'S A SIMPLE OPINION DOESN'T MEAN

02:43PM  18   THAT IT CAN -- THAT IT DOESN'T NEED TO SATISFY 702.  IT STILL

02:43PM  19   NEEDS TO BE RELIABLE.

02:43PM  20        AND I JUST NOTE THAT THE IDEA THAT A DOCTOR COULD GET UP

02:43PM  21   AND SAY I'VE NEVER EXPERIENCED CLINICAL ERRORS BEFORE MAY BE

02:43PM  22   SIMPLE TESTIMONY, BUT IT'S EXTREMELY SWEEPING AND EXTREMELY

02:43PM  23   PREJUDICIAL AND OF LIMITED PROBATIVE VALUE IN THIS CASE.

02:43PM  24        WITH RESPECT TO THE HYPOTHETICAL CONSEQUENCES, LET'S TALK

02:43PM  25   ABOUT THAT NEXT SO THAT WE CAN MOVE ON.

144

02:43PM 1    BUT THOSE ARE THE ONLY POINTS I WANTED TO MAKE.  THANKS.

02:43PM 2            THE COURT:  OKAY.  THANK YOU.

02:43PM 3        DO YOU HAVE 562?

02:43PM 4            MS. TREFZ:  YES.  GIVE ME A SECOND AND I WILL BE

02:44PM 5    BACK.

02:44PM 6            THE COURT:  IT'S ABOUT AN HOUR SINCE OUR LAST

02:44PM 7    RECESS.

02:44PM 8        SHOULD WE PRESS ON?  DOES ANYBODY NEED A BREAK?  ANYBODY

02:44PM 9    NEED A BREAK?

02:44PM 10           MS. SAHARIA:  WE'RE OKAY, YOUR HONOR.

02:44PM 11           THE COURT:  ALL RIGHT.  LET'S PRESS ON.  THANK YOU.

02:44PM 12           MS. TREFZ:  ALL RIGHT.  I BELIEVE WE'RE NOW AT 562.

02:44PM 13   AM I CORRECT?

02:44PM 14           THE COURT:  THAT'S WHAT MY NOTES SAY.

02:44PM 15           MS. TREFZ:  SO AS WE HAVE SORT OF BEEN TALKING ABOUT

02:44PM 16   HERE, THIS MOTION ALSO DEALS WITH SOME OF THE SPECIFIC CUSTOMER

02:44PM 17   STORIES AND PATIENT STORIES, BUT IT FOCUSSES ON A VERY SPECIFIC

02:44PM 18   PART OF THEM.

02:44PM 19       AND IN PARTICULAR, IT APPEARS, BASED ON EVERYTHING THAT WE

02:44PM 20   HAVE RECEIVED, DISCLOSURES, DISCOVERY, AND PLEADINGS, THAT THE

02:45PM 21   GOVERNMENT SEEKS TO INTRODUCE AT TRIAL EVIDENCE REGARDING, ONE,

02:45PM 22   COLLATERAL EMOTIONAL EFFECTS SUFFERED BY THERANOS CUSTOMERS WHO

02:45PM 23   BELIEVE THAT THEY RECEIVED AN ERRANT RESULTS; OR, TWO,

02:45PM 24   HYPOTHETICAL POTENTIAL PHYSICAL CONSEQUENCES OF AN ERRANT TEST

02:45PM 25   THAT SIMPLY DID NOT OCCUR HERE.

02:45PM 1       AS I JUST MENTIONED A MOMENT AGO, WE'RE NOT LOOKING TO CUT

02:45PM 2 OUT ALL CUSTOMER TESTIMONY. THIS IS NOT A MATTER OF EXCLUDING

02:45PM 3 THE VICTIMS, AS THE GOVERNMENT CALLS THEM, FROM THIS CASE.

02:45PM 4       WHAT IT IS, IT IS AIMED AT FOCUSSING ON THE ISSUE AND, IN

02:45PM 5 PARTICULAR, THE WIRE FRAUD HARM THAT IS AT ISSUE HERE.

02:45PM 6       MR. BOSTIC HAS SAID MULTIPLE TIMES THAT THIS IS NOT A

02:45PM 7 PRODUCTS LIABILITY CASE. HE SAYS IT'S A WIRE FRAUD CASE.

02:45PM 8       THE HARM FROM A WIRE FRAUD CASE IS FINANCIAL HARM, AND IN

02:46PM 9 THIS CASE THE HARM FROM THE ALLEGED WIRE FRAUD CASE IS THE

02:46PM 10 MONEY THAT THE PATIENT PAID FOR THE TEST.

02:46PM 11       SO ADDITIONAL CONSEQUENCES, WHETHER THEY BE EMOTIONAL OR,

02:46PM 12 AS IS THE CASE IN SOME OF THE TESTIMONY, HYPOTHETICAL PHYSICAL

02:46PM 13 CONSEQUENCES THAT SOMEBODY FEARED COULD HAPPEN, IT'S NOT

02:46PM 14 RELEVANT TO THE CASE THE GOVERNMENT CHOSE TO CHARGE.

02:46PM 15       WHAT I REALLY WANTED TO FOCUS ON, YOUR HONOR, IS THE

02:46PM 16 POTENTIAL PREJUDICE THAT COMES FROM THIS EVIDENCE, AND EARLIER

02:46PM 17 TODAY MR. BOSTIC FOCUSSED ON -- HE SAID, WE'RE NOT LOOKING TO

02:46PM 18 JUST INFLAME THE JURY. LOOK AT THE WITNESSES THAT WE HAVE

02:46PM 19 CHOSEN TO PUT ON OUR LIST. HERE'S ONE EXAMPLE OF THIS ONE

02:46PM 20 PATIENT WHO SAYS THAT HE WASN'T REALLY WORRIED ABOUT HIS

02:46PM 21 RESULT.

02:47PM 22       BUT I THINK WE ULTIMATELY NEED ONLY READ THE INTRODUCTION

02:47PM 23 TO THE GOVERNMENT'S BRIEF IN ITS OPPOSITION TO OUR MOTION HERE

02:47PM 24 TO UNDERSTAND THE INFLAMMATORY PURPOSE OF THIS EVIDENCE. THIS

02:47PM 25 BRIEF IS FULL OF INDIGNATION AND FURY, BUT IT'S WORTH NOTING

02:47PM 1      THAT THE GOVERNMENT IS TAKING SUBSTANTIAL LIBERTIES WITH

02:47PM 2      RESPECT TO THE EXAMPLES THAT IT PRESENTS IN THIS BRIEF.

02:47PM 3          IN PARTICULAR, THERE'S ONE POINT THAT WE WERE NOT ABLE TO

02:47PM 4      ADDRESS IN OUR REPLY BECAUSE WE ONLY RECEIVED THE DISCOVERY

02:47PM 5      AFTER THE REPLY WAS FILED IN MARCH, BUT WE RECEIVED THE

02:47PM 6      DISCOVERY AT THE END OF MARCH.

02:47PM 7          BUT I THINK IT REALLY ILLUMINATES THE PURPOSE OF THIS

02:47PM 8      EVIDENCE AND I WANT TO ENSURE THAT THE COURT IS NOT LEFT WITH

02:47PM 9      AN IMPRESSION AS TO, YOU KNOW, THERE WERE THERANOS TESTS THAT

02:47PM 10     WERE THIS CLOSE TO CAUSING SUBSTANTIAL PATIENT HARM, BUT BY THE

02:48PM 11     GRACE OF GOOD MEDICAL CARE, THEY SOMEHOW AVOIDED IT.

02:48PM 12         IN PARTICULAR, THE GOVERNMENT USES AN EXAMPLE ABOUT AN

02:48PM 13     ECTOPIC PREGNANCY, AND THIS EXAMPLE IS ON PAGE 5 OF THEIR BRIEF

02:48PM 14     STARTING AT LINE 3.  THE GOVERNMENT SAYS ANOTHER PATIENT

02:48PM 15     RECEIVED A THERANOS TEST RESULT INDICATING SHE WAS NOT

02:48PM 16     PREGNANT.  IN REALITY, SHE WAS CURRENTLY EXPERIENCING AN

02:48PM 17     ECTOPIC PREGNANCY THAT WOULD HAVE THREATENED HER LIFE HAD A

02:48PM 18     TEST FROM ANOTHER LAB NOT REVEALED ITS PRESENCE.

02:48PM 19         THAT BRIEF WAS FILED ON JANUARY 8TH, 2021.  BUT TWO MONTHS

02:48PM 20     EARLIER, THE PATIENT'S DOCTOR TOLD THE GOVERNMENT SOMETHING

02:48PM 21     VERY DIFFERENT.  WHAT THE PATIENT'S DOCTOR TOLD THE

02:48PM 22     GOVERNMENT -- THIS IS IN THE INTERVIEW MEMORANDUM WHICH I'M

02:48PM 23     HAPPY TO SUBMIT IF IT'S NECESSARY -- BUT JUST FOR THE PURPOSE

02:49PM 24     OF MOVING US ALONG HERE, IT MAKES CLEAR THAT THE DOCTOR

02:49PM 25     EXPECTED AN ECTOPIC PREGNANCY AS A RESULT OF THE THERANOS TEST

02:49PM  1    AND NOT IN SPITE OF IT AS THE GOVERNMENT SUGGESTS.

02:49PM  2        IT MAKES CLEAR THAT A THERANOS TEST INDICATED CORRECTLY

02:49PM  3    THAT THE DOCTOR'S ATTEMPT TO DISSOLVE THE ECTOPIC PREGNANCY

02:49PM  4    WITH MEDICATION WAS UNSUCCESSFUL, AND IT MAKES CLEAR THAT THE

02:49PM  5    DOCTOR IS USED TO ERRATIC HCG READINGS EARLY IN PREGNANCY,

02:49PM  6    INCLUDING FROM NONTHERANOS LABS THAT HE USES REGULARLY.

02:49PM  7        THE DOCTOR ALSO TOLD THE GOVERNMENT THAT HE THOUGHT MOST

02:49PM  8    DOCTORS WOULD HAVE ORDERED -- WOULD HAVE DONE WHAT HE DID IN

02:49PM  9    THIS CASE, WHICH WAS TO ORDER AN ADDITIONAL TEST IF HE HAD A

02:49PM 10    QUESTION.

02:49PM 11        I POINT THIS OUT, AGAIN, FOR TWO REASONS.  ONE, AS I SAID,

02:49PM 12    I WANT TO BE SURE THAT THE COURT IS NOT LEFT WITH THE

02:49PM 13    MISIMPRESSION THAT THESE RESULTS WERE VERY CLOSE TO CAUSING

02:49PM 14    SOME KIND OF DRAMATIC HARM WHEN, IN FACT, THAT IS NOT THE CASE

02:49PM 15    IN THE VERY VIGNETTE THAT THE GOVERNMENT IS POINTING TO.

02:49PM 16        BUT SECOND, THE DRAMATIC NATURE OF THE GOVERNMENT'S

02:50PM 17    DESCRIPTION, ESPECIALLY KIND OF IN THE CONTEXT OF THE REST OF

02:50PM 18    ITS OPPOSITION HERE, REALLY I THINK HIGHLIGHTS AND MAKES CLEAR

02:50PM 19    THAT THE GOVERNMENT IS SEEKING TO PLAY ON EMOTIONS RATHER THAN

02:50PM 20    PROVE, YOU KNOW, WITH RELEVANT EVIDENCE THE HARM.

02:50PM 21        THE GOVERNMENT, I THINK, IN ITS ARGUMENT SUGGESTS, WELL,

02:50PM 22    HARM IS SOMETIMES USED TO PROVE INTENT OR IT'S USED TO PROVE,

02:50PM 23    YOU KNOW, ONE OF THESE OTHER THINGS.

02:50PM 24        BUT, AGAIN, THOSE CASES ARE LIMITED TO WIRE FRAUD HARM,

02:50PM 25    AND THERE IS A WHOLE HOST OF CASES THAT WE CITED IN OUR BRIEF

02:50PM 1    AND TO WHICH I WOULD SUBMIT THAT THE GOVERNMENT REALLY HAS NO

02:50PM 2    GOOD ANSWER THAT KIND OF DRAWS THE LINE AT COLLATERAL

02:50PM 3    CONSEQUENCES.

02:50PM 4        BECAUSE THE GOVERNMENT CHOSE TO BRING A WIRE FRAUD CASE

02:50PM 5    HERE, THE WIRE FRAUD HARM IS THE FINANCIAL HARM THAT THE PAYING

02:50PM 6    PATIENT, YOU KNOW, ALLEGEDLY, YOU KNOW, INCURRED WHEN THEY PAID

02:50PM 7    FOR THEIR THERANOS TEST.  IT'S NOT THE EMOTIONS THAT THEY FELT.

02:51PM 8        AND THEN THE ADDITIONAL KIND OF JUST POINT I WANTED TO

02:51PM 9    PROVIDE CONTEXT FOR HERE IS EVEN IF PORTIONS OF THIS EVIDENCE

02:51PM 10   MIGHT BE RELEVANT TO, I'VE HEARD MATERIALITY AS AN EXAMPLE,

02:51PM 11   EVEN IF PORTIONS OF THIS EVIDENCE MIGHT BE RELEVANT TO

02:51PM 12   MATERIALITY, EVIDENCE OF A CUSTOMER'S EMOTIONAL RESPONSE AND

02:51PM 13   THESE HYPOTHETICAL CATASTROPHIC EVENTS THAT DEPEND ON, FRANKLY,

02:51PM 14   SEVERAL LEVELS OF ADDITIONAL MEDICAL PROCEDURES OR

02:51PM 15   NONINTERVENTION, I THINK THIS ISN'T THE ONLY WAY FOR THE

02:51PM 16   GOVERNMENT TO INTRODUCE EVIDENCE OF MATERIALITY AS TO THE

02:51PM 17   ALLEGED ACCURACY AND RELIABILITY REPRESENTATIONS, THE ALLEGED

02:51PM 18   MISREPRESENTATIONS.

02:51PM 19       RULE 403 JURIS PRUDENCE AND ALL OF THE WAY FROM OLD CHIEF

02:52PM 20   DOWN MAKE CLEAR THAT WHEN YOU'RE WEIGHING PROBATIVE VALUE AND

02:52PM 21   UNDUE PREJUDICE, IT'S APPROPRIATE TO CONSIDER EVIDENTIARY

02:52PM 22   ALTERNATIVES.

02:52PM 23       AND HERE I THINK THE IDEA THAT, WITH RESPECT TO THE

02:52PM 24   DOCTORS, ONE EXAMPLE AGAIN IS THE POTENTIAL HYPOTHETICAL

02:52PM 25   CONSEQUENCES OF -- FROM THE DISCLOSURE RELATED TO DR. ASIN WITH

149

02:52PM 1    RESPECT TO PSA -- AND THAT'S PROSTATE SPECIFIC ANTIGEN -- AND

02:52PM 2    THE DISCLOSURE THERE HAS KIND OF A PARADE OF OR A SERIES OF

02:52PM 3    UNFORTUNATE EVENTS THAT COULD POTENTIALLY LEAD TO HEMORRHAGING

02:52PM 4    AND SURGERY.

02:52PM 5        BUT IT'S CLEAR FROM THE DESCRIPTION THAT WHAT YOU'RE

02:52PM 6    TALKING ABOUT IS, OKAY, THE DOCTOR GETS A TEST IT DOESN'T THINK

02:52PM 7    IS -- OR GETS A TEST THAT IT BELIEVES REQUIRES A BIOPSY AND IT

02:52PM 8    DOES -- OR SOME OTHER DOCTOR DOES THE BIOPSY AND THE BIOPSY

02:53PM 9    GOES WRONG, SOMEHOW THAT'S NOT CAUGHT, AND THEN THERE'S

02:53PM 10   HEMORRHAGING AND SURGERY THAT IS REQUIRED.

02:53PM 11       THAT IS -- THAT IS AN EXTREME CATASTROPHIC, LIKE,

02:53PM 12   HYPOTHETICAL EXAMPLE THAT NEVER OCCURRED, OR THERE'S NO

02:53PM 13   EVIDENCE THAT IT EVER OCCURRED HERE AND IT HAS MINIMAL

02:53PM 14   PROBATIVE VALUE, BUT REALLY BRINGS WITH IT EXTREME PREJUDICE

02:53PM 15   AND SUGGESTS THAT THERE IS SOME KIND OF INTENSE DANGER THAT

02:53PM 16   SIMPLY WAS NOT PRESENT HERE.

02:53PM 17       SO THOSE ARE THE POINTS THAT I WANTED TO MAKE WITH RESPECT

02:53PM 18   TO THIS CASE.

02:53PM 19       AND THEN I GUESS -- SORRY.  FINALLY ONE POINT, AND I HEARD

02:53PM 20   THIS MENTIONED EARLIER.  JUST TO BE CLEAR, WE'RE NOT -- WHEN

02:53PM 21   WE'RE MOVING TO EXCLUDE THESE EMOTIONAL HARMS, WE MEAN NO

02:53PM 22   DISRESPECT TO CUSTOMERS THAT -- WHO SAY THAT THEY WERE UPSET OR

02:53PM 23   WORRIED AS A RESULT OF A TEST RESULT.

02:54PM 24       IT'S SIMPLY THAT THOSE FEELINGS AREN'T RELEVANT TO THE

02:54PM 25   CASE THAT THE GOVERNMENT CHOSE TO CHARGE, AND MS. HOLMES IS

150

02:54PM 1    ENTITLED TO BE TRIED ON EVIDENCE RELEVANT TO AND NOT UNDULY

02:54PM 2    PREJUDICIAL TO THE CASE THAT THE GOVERNMENT CHOSE TO CHARGE,

02:54PM 3    WHICH IS WIRE FRAUD.

02:54PM 4         SO WITH THAT I'LL YIELD THE FLOOR.

02:54PM 5            THE COURT:  THANK YOU.

02:54PM 6         MR. SCHENK, YOU'RE SPEAKING TO THIS?

02:54PM 7              MR. SCHENK:  YES.

02:54PM 8            THE COURT:  AND I HOPE YOU WERE -- I WAS GOING TO

02:54PM 9    USE THE WORD BENEFITTED -- BUT AT LEAST INFORMED OF THE COURT'S

02:54PM 10   INITIAL VIEW OF THIS.  AND I'M HAPPY TO HEAR FROM YOU.

02:54PM 11             MR. SCHENK:  YES.  YES, THANK YOU.  I APPRECIATE THE

02:54PM 12   COURT'S INITIAL INTRODUCTORY COMMENTS.

02:54PM 13        OFFERING BLOOD TESTS WHEN YOU KNOW THEY'RE INACCURATE IS

02:54PM 14   AN EXTREMELY RISKY THING TO DO TO THE PUBLIC.  THAT'S WHAT THE

02:54PM 15   EVIDENCE WILL SHOW OCCURRED IN THIS CASE.

02:54PM 16        THERE IS NO INTRINSIC VALUE TO A BLOOD TEST.  NO PERSON

02:54PM 17   GOES TO GET A BLOOD TEST WITHOUT EXPECTING TO USE THE RESULTS.

02:55PM 18        AND WHEN I SAY "USE," I MEAN THE MATERIALITY OF IT, THE

02:55PM 19   BENEFIT OF THE BARGAIN.

02:55PM 20        AND IT IS FOR THAT REASON THAT THERE ARE REALLY THREE

02:55PM 21   BASES THAT I THINK THE COURT SHOULD ADMIT AT LEAST SOME PORTION

02:55PM 22   OF THIS EVIDENCE.

02:55PM 23        I ACKNOWLEDGE, AND I WANT TO START BY SAYING AT SOME POINT

02:55PM 24   THERE IS SIGNIFICANT DIMINISHING RETURNS TO HOW LONG YOU ALLOW

02:55PM 25   A PATIENT TO TELL THE STORY OF THEIR WORRIES AND THEIR FEARS

02:55PM 1    AND THE WHAT ELSE.  I ACKNOWLEDGE THAT.  AT SOME 403 STEPS IN

02:55PM 2    AND THE TESTIMONY SHOULD NOT CONTINUE.

02:55PM 3        BUT IT DOESN'T MEAN THAT YOU DON'T BEGIN DOWN THE ROAD,

02:55PM 4    AND THE REASON YOU BEGIN DOWN THE ROAD IS FOR THREE THINGS.

02:55PM 5        NOW, THE FIRST IS THAT THE GOVERNMENT HAS THE RIGHT TO

02:55PM 6    PROVE THAT THE PATIENTS DID NOT RECEIVE THE BENEFIT OF THE

02:55PM 7    BARGAIN.  IN OTHER WORDS, THEY WENT INTO AN EXCHANGE WITH

02:55PM 8    THERANOS EXPECTING TO GET A BLOOD TEST THAT THEY COULD THEN

02:55PM 9    MAKE OR GIVE TO A DOCTOR TO MAKE MEDICAL DECISIONS BASED UPON.

02:56PM 10       AND WHEN A PATIENT TAKES THE STAND AND TELLS THE STORY OF

02:56PM 11   WHAT RESULT THEY GOT AND THEN WHAT THEY DID WITH THAT RESULT,

02:56PM 12   TOOK IT TO THEIR DOCTOR AND THEN WENT AND GOT A SECOND TEST,

02:56PM 13   AND THE SECOND TEST SAID SOMETHING DIFFERENT AND THEY ENDED UP

02:56PM 14   FOLLOWING THE MEDICAL ADVICE WITH THE SECOND AND NOT THE FIRST

02:56PM 15   TEST, THAT IS HELPFUL BACKGROUND TO EXPLAIN WHY THE PATIENT

02:56PM 16   DIDN'T GET THE BENEFIT OF THE BARGAIN, WHY THEY FELT THAT WHAT

02:56PM 17   THEY EXPECTED TO GET WAS DIFFERENT FROM WHAT THEY ACTUALLY GOT.

02:56PM 18       THE SECOND BASIS IS MATERIALITY.  AGAIN, THE FACT THAT A

02:56PM 19   PATIENT EXPECTED TO GET A BLOOD TEST AND THEN EXPECTED TO MAKE

02:56PM 20   MEDICAL DECISIONS BASED UPON THAT BLOOD TEST IS RELEVANT.

02:56PM 21       I'LL NOTE AGAIN THERE'S NO INTRINSIC VALUE TO A BLOOD

02:56PM 22   TEST.  IT REALLY LIVES AND DIES BASED ON THE MEDICAL DECISIONS

02:56PM 23   THAT YOU MAKE BASED UPON THOSE RESULTS.

02:56PM 24       A PATIENT SHOULD BE ALLOWED TO TAKE THE STAND AND TELL THE

02:56PM 25   COURT, I GOT A TEST, THE TEST SAID X, AND THEN I DID Y IN

02:56PM 1    RESPONSE TO IT.

02:56PM 2        AND IF Y IS, I WENT TO MY DOCTOR, I GOT A SECOND TEST OR A

02:57PM 3    THIRD TEST, AND HERE'S WHAT THOSE TESTS REVEALED AND HERE ARE

02:57PM 4    THE DECISIONS THAT I MADE BASED UPON THAT, THAT AGAIN IS

02:57PM 5    HELPFUL MATERIALITY EVIDENCE BECAUSE IT DOES SUGGEST THAT THE

02:57PM 6    STATEMENTS THAT THERANOS WAS MAKING TO THESE PATIENTS LED THEM

02:57PM 7    TO ENGAGE IN THIS TRANSACTION OF THINGS, LED THEM TO BUY THE

02:57PM 8    BLOOD TEST AND THEN TO RELY UPON THE RESULTS THAT THE BLOOD

02:57PM 9    TEST PROVIDED.

02:57PM 10        AND THEN I'LL NOTE FOR THE COURT THE THIRD BASIS IS THE

02:57PM 11    DEFENDANT'S FRAUDULENT INTENT.  WHEN MS. HOLMES KNOWS -- AND

02:57PM 12    THERE ARE EMAILS AND SOME WERE REFERENCED IN THE FILING -- THAT

02:57PM 13    CERTAIN TESTS WERE UNLIKELY TO PRODUCE ACCURATE RESULTS, THAT

02:57PM 14    THERE WERE PROBLEMS AT THERANOS WITH GENERATING ACCURATE

02:57PM 15    RESULTS OF CERTAIN TESTS AND CONTINUES TO OFFER THE TESTS, AND

02:57PM 16    PATIENTS ARE GETTING THESE INACCURATE RESULTS, IT SPEAKS TO

02:57PM 17    INTENT.  IT IS RELEVANT TO INTENT.

02:57PM 18        IN OTHER WORDS, YOU INTEND THOSE OUTCOMES IF YOU'RE AWARE

02:57PM 19    THAT THEY'RE LIKELY TO OCCUR.  IF A PATIENT GETTING AN

02:58PM 20    INACCURATE RESULT, IF A PATIENT GETTING RESULT X FROM THERANOS

02:58PM 21    AND THEN GOING AND GETTING CONFIRMATORY TESTS FROM OTHER LABS

02:58PM 22    THAT SUGGEST SOMETHING DIFFERENT, AND THAT OUTCOME IS EXPECTED

02:58PM 23    BY MS. HOLMES, SHE'S NOT SURPRISED BY IT BECAUSE THERE'S

02:58PM 24    INTERNAL EMAILS SUGGESTING HER KNOWLEDGE OF ACCURACY AND

02:58PM 25    RELIABILITY PROBLEMS, SHE'S INTENDING THAT OUTCOME TO OCCUR.

153

02:58PM 1        AND THERE'S A LINE OF CASES THAT TALK ABOUT VICTIMS BEING

02:58PM 2    VICTIMIZED IS EVIDENCE OF INTENT AND THAT THE OUTCOME THAT

02:58PM 3    OCCURS CAN SPEAK TO THE INTENT OF THE PERPETRATOR OF THE

02:58PM 4    OFFENSE.

02:58PM 5        I'LL NOTE FOR THE COURT TWO FINAL POINTS.  THE FIRST IS

02:58PM 6    EARLIER WHEN WE WERE DISCUSSING ANECDOTAL TEST RESULTS, AND THE

02:58PM 7    COURT NOTED THAT IT HAD SOME OVERLAP, HERE THERE IS CONCERN

02:59PM 8    ABOUT PATIENTS TESTIFYING BECAUSE THEY -- THERE'S A LACK OF

02:59PM 9    CAUSATION, THE PATIENTS ARE TALKING ABOUT THEIR BAD TEST

02:59PM 10   RESULTS, BUT THEY'RE NOT NECESSARILY EXPLAINING THAT THERANOS

02:59PM 11   WAS THE CAUSE OF THE BAD TEST RESULTS AS OPPOSED TO SITTING ON

02:59PM 12   THE TARMAC IN 100-DEGREE WEATHER.

02:59PM 13       WE DON'T USE THAT SAME STANDARD IN A PONZI SCHEME, FOR

02:59PM 14   INSTANCE.  IF A VICTIM IN A PONZI SCHEME TESTIFIES, HERE'S WHAT

02:59PM 15   THE DEFENDANT TOLD ME, AND BECAUSE OF THAT, I GAVE THE

02:59PM 16   DEFENDANT MY MONEY, WE DON'T EXPECT THE VICTIM TO KNOW THAT THE

02:59PM 17   DEFENDANT SPENT HER MONEY PAYING OFF NEW INVESTORS OR HAD IN

02:59PM 18   HER POCKETS OR BUYING MANSIONS.  WE DON'T EXPECT THAT KNOWLEDGE

02:59PM 19   FROM THE VICTIM.

02:59PM 20       THE VICTIM IS ALLOWED TO TAKE THE STAND AND EXPLAIN THEIR

02:59PM 21   RELATIONSHIP WITH THE DEFENDANT, WHAT CAUSED THEM TO INVEST, OR

02:59PM 22   TO BUY THE TEST, AND THE EFFECT OF THAT PURCHASE.

02:59PM 23       AND I THINK THE SAME ANALYSIS APPLIES HERE AND THE COURT

02:59PM 24   SHOULD ALLOW AT LEAST SOME MEASURE OF THE PATIENT'S TESTIMONY

02:59PM 25   TO THAT END.

154

02:59PM  1          AND ONE CASE THAT I THINK WAS HELPFUL, AND IT WAS CITED BY

03:00PM  2     THE DEFENSE HERE, IS THE PACIFIC GAS AND ELECTRIC COMPANY CASE

03:00PM  3     THAT WAS TRIED BEFORE JUDGE HENDERSON IN THIS DISTRICT.

03:00PM  4          IN THAT CASE THE DEFENSE ARGUED, JUDGE, THIS CASE IS ABOUT

03:00PM  5     PIPELINE SAFETY ACT VIOLATIONS AND OBSTRUCTION OF JUSTICE.  YOU

03:00PM  6     SHOULD PROHIBIT THE GOVERNMENT FROM MENTIONING THE SAN BRUNO

03:00PM  7     EXPLOSION OR ITS DEADLY CONSEQUENCES.  IT'S NOT RELEVANT.

03:00PM  8          AND JUDGE HENDERSON'S RULING WAS, NO, I DISAGREE.  IT IS

03:00PM  9     OKAY FOR THE JURY TO HEAR ABOUT THE EXPLOSION, AND HE

03:00PM  10    SPECIFICALLY RULED THAT THE WORD "DEADLY" WAS ADMISSIBLE IN THE

03:00PM  11    TRIAL.

03:00PM  12         HE DREW LINES THAT THE NUMBER OF DEATHS -- EIGHT PEOPLE

03:00PM  13    DIED DURING THE EXPLOSION, AND JUDGE HENDERSON SAID THAT'S TOO

03:00PM  14    FAR, AND THERE WERE LINES THAT HE DREW AROUND HOW MUCH OF THE

03:00PM  15    EXPLOSION WAS ALLOWED TO COME IN.

03:00PM  16         BUT HE DIDN'T ADOPT THE POSITION THAT THE DEFENSE IS

03:00PM  17    URGING THE COURT IN THIS INSTANCE AND THAT IS TO PROHIBIT ALL

03:00PM  18    DISCUSSION OF THE CONSEQUENCE OF THE ACTIONS OF THE TESTS.

03:01PM  19    THERE IS SOME ROOM FOR IT, AND I THINK WHAT THE COURT SHOULD DO

03:01PM  20    IS CRAFT THAT LINE, IS THE VICTIMS SHOULD BE ALLOWED TO TAKE

03:01PM  21    THE STAND AND TELL THE INITIAL CONSEQUENCES OF IT, WHEN THEY

03:01PM  22    RECEIVED THE TEST, WHAT THEY DID WITH THAT INFORMATION, AND

03:01PM  23    WHAT FUTURE DECISIONS THEY MADE BASED UPON THAT RESULT, FOR

03:01PM  24    INSTANCE, THE SECOND TESTS, THE RESULT OF THAT TEST, AND THEIR

03:01PM  25    EXPERIENCE.

03:01PM 1      I THINK THAT IS THE PLACE THAT IT WOULD BE APPROPRIATE TO

03:01PM 2  DRAW THE LINE IN THIS INSTANCE, AND IT IS CONSISTENT WITH

03:01PM 3  JUDGE HENDERSON'S RULING IN PG&E.

03:01PM 4          THE COURT:  THANK YOU.  LET ME ASK, FIRST OF ALL,

03:01PM 5  WERE YOU INVOLVED IN THAT TRIAL, MR. SCHENK?

03:01PM 6          MR. SCHENK:  I WAS, YOUR HONOR.

03:01PM 7          THE COURT:  YES, I THOUGHT SO.

03:01PM 8      BUT THE QUESTION I HAVE -- I DON'T QUARREL WITH AND I

03:01PM 9  DON'T PART COMPANY WITH THE CONCEPT THAT THE WITNESS COULD

03:01PM 10  TESTIFY THAT THEY TOOK THE TEST; THE RESULTS, FOR WHATEVER

03:01PM 11  REASON, WERE SUSPICIOUS TO THEM; THEY TOOK A SECOND TEST AND

03:01PM 12  RECEIVED MEDICAL ADVICE AND THAT; AND THEN WE THINK WENT AND

03:02PM 13  DID SOMETHING ELSE.  THAT'S WHERE WE MIGHT GET A LITTLE --

03:02PM 14  THAT'S WHERE I HAVE SOME ISSUE ABOUT THAT.

03:02PM 15      MORE IMPORTANTLY, I THINK THE TESTIMONY, THE POTENTIAL

03:02PM 16  TESTIMONY THAT I WAS CALLING OUT IS THE ECTOPIC PREGNANCY, FOR

03:02PM 17  EXAMPLE, AND THE WITNESS THEN TESTIFYING ABOUT THE ANGUISH, THE

03:02PM 18  PAIN, THE WORRY, ALL OF THAT, AND I COULDN'T SLEEP FOR DAYS, I

03:02PM 19  WAS WORRIED ABOUT X.

03:02PM 20      THE OTHER PATIENT WHO MAY HAVE RECEIVED A TEST THAT

03:02PM 21  SUGGESTED A MEDICAL CONDITION, BUT THEN UPON SUBSEQUENT

03:02PM 22  TESTING, SEEING MY PHYSICIAN, I GOT A DIFFERENT RESULT AND I

03:02PM 23  DID Y.  I TOOK THIS MEDICATION.

03:02PM 24      BUT THEN GOING IN AND SAYING, I COULDN'T SLEEP FOR WEEKS,

03:02PM 25  I HAD TO CHANGE MY WILL BECAUSE I THOUGHT DEATH WAS IMMINENT,

156

03:02PM 1      ET CETERA, ET CETERA, THAT'S PROBABLY TOO FAR AND I DON'T THINK

03:02PM 2      YOU'RE ADVOCATING FOR THAT.

03:02PM 3           MR. SCHENK:  CORRECT, YOUR HONOR.

03:03PM 4       IF I CAN REPEAT BACK WHAT THE COURT SAID?  I THINK IF A

03:03PM 5      PATIENT WERE TO TAKE THE STAND AND SAY, TO USE THE COURT'S

03:03PM 6      EXAMPLE, I RECEIVED A THERANOS TEST AND I THOUGHT I HAD CANCER,

03:03PM 7      OR I THOUGHT I HAD A SEVERE CONDITION, AND ONE THING I DID IN

03:03PM 8      RESPONSE TO IT WAS TO GO GET OTHER TESTS, AND AFTER I RECEIVED

03:03PM 9      A SECOND TEST AND THEN CONSULTED WITH MY PHYSICIAN, I

03:03PM 10      DETERMINED, OR MY PHYSICIAN TOLD ME I DIDN'T HAVE CANCER.

03:03PM 11       I THINK THAT'S APPROPRIATE AND THE COURT COULD LIMIT IT

03:03PM 12      THERE.

03:03PM 13       I AGREE WITH THE COURT, THERE IS NOT THE NEED THEN FOR THE

03:03PM 14      PATIENT TO SAY, THERE WAS TWO WEEKS BETWEEN THOSE TWO TESTS AND

03:03PM 15      HERE'S HOW I FELT DURING THOSE TWO WEEKS.

03:03PM 16       IF THE COURT SAID THAT'S 403 AND THAT'S TOO FAR, WE

03:03PM 17      RESPECT THE RULING.

03:03PM 18       THE AMOUNT OF TIME I THINK MIGHT BE RELEVANT AND THE

03:03PM 19      PATIENT SHOULD BE ALLOWED TO EXPLAIN THAT BECAUSE THAT'S PART

03:03PM 20      OF THE STORY, BUT THE FEELINGS THAT THE PATIENT HAD DURING THAT

03:03PM 21      INTERVENING TWO WEEKS IS AN APPROPRIATE PLACE FOR THE COURT TO

03:03PM 22      DRAW THE LINE.

03:03PM 23         THE COURT:  MS. TREFZ, DO YOU WANT TO COME TO THE

03:04PM 24      LECTERN.

03:04PM 25        SO THE TRAIL, IF YOU WILL, OF TESTING IS WHAT I THINK --

157

| | | |
|---|---|---|
| 03:04PM | 1 | I'LL CALL IT THAT -- THE TRAIL OF TESTING, A TEST THAT WAS |
| 03:04PM | 2 | EITHER SUSPECTED TO BE INCORRECT OR CAUSED A PATIENT TO BE |
| 03:04PM | 3 | RETESTED AT A DIFFERENT SOURCE, DO YOU HAVE PROBLEMS WITH THAT? |
| 03:04PM | 4 | MS. TREFZ: YOUR HONOR, WE HAVE A GENERAL RELEVANCE |
| 03:04PM | 5 | OBJECTION BASED ON THE ANECDOTAL REST RESULTS ISSUE. |
| 03:04PM | 6 | BUT TO THE EXTENT THAT THIS MOTION IS PRIMARILY KIND OF |
| 03:04PM | 7 | SEPARATELY AIMED AT THE 403 AND IN THE EXTREME KIND OF -- |
| 03:04PM | 8 | THE COURT: THIS IS REGARDING EMOTIONAL REACTION. |
| 03:04PM | 9 | MS. TREFZ: RIGHT, EXACTLY. I THINK THAT IS |
| 03:04PM | 10 | POTENTIALLY A FAIR LINE TO DRAW. |
| 03:04PM | 11 | I THINK PART OF IT DEPENDS ON WHETHER THAT LINE IS |
| 03:04PM | 12 | ACTUALLY OBSERVED AS YOU'RE -- AS THE TESTIMONY IS BEING |
| 03:05PM | 13 | ELICITED. |
| 03:05PM | 14 | YOU KNOW, THEY'RE ASKING SOMEBODY WHAT THEY DID NEXT |
| 03:05PM | 15 | VERSUS -- |
| 03:05PM | 16 | THE COURT: LET ME STOP YOU THERE. |
| 03:05PM | 17 | MR. SCHENK, IF THE COURT MAKES A RULING, ARE YOU INCLINED |
| 03:05PM | 18 | TO FOLLOW THE RULING? |
| 03:05PM | 19 | MR. SCHENK: YES. |
| 03:05PM | 20 | THE COURT: ALL RIGHT. I THINK THAT ANSWERS THE |
| 03:05PM | 21 | QUESTION PERHAPS. |
| 03:05PM | 22 | MS. TREFZ: WELL, IT'S EASY TO SAY IN THE ABSTRACT, |
| 03:05PM | 23 | AND SOMETIMES WHEN YOU'RE IN THE MOMENT IT CAN BE -- WE CAN GET |
| 03:05PM | 24 | FAR AFIELD KIND OF QUICK. |
| 03:05PM | 25 | THE COURT: WELL, LET ME SAY, IN THE THICK OF TRIAL, |

03:05PM 1    I KNOW THAT THINGS COME UP AND PEOPLE SAY THINGS THAT THEY

03:05PM 2    REGRET OR SAY THINGS UNINTENTIONALLY.  WE ALL UNDERSTAND THAT.

03:05PM 3        BUT WE'RE TALKING ABOUT INTENTIONALLY ASKING A QUESTION

03:05PM 4    THAT THEY KNOW IS NOT GOING TO BE PERMITTED.  THAT'S WHY I

03:05PM 5    WANTED TO GO THROUGH THIS COLLOQUY HERE, AND I COULD SEE -- I

03:05PM 6    CALL IT THE TRAIL OF TESTING -- JUST IF SOMEBODY GOT A TEST AND

03:05PM 7    THEY GOT A SECOND TEST, A SECOND OPINION -- AND I THINK THAT'S

03:05PM 8    VERY COMMON IN THE MEDICAL INDUSTRY -- AND THEN THEY GOT THE

03:06PM 9    SECOND TEST AND CONSULTED WITH A PHYSICIAN, EITHER THE SAME OR

03:06PM 10   A SECOND, AND THEN THEY DID X.

03:06PM 11       WITHOUT TESTIFYING ABOUT ANY JOY, FEAR, HAPPINESS, ANY

03:06PM 12   EMOTION THAT OCCURRED, BECAUSE THAT'S NOT THE REASON FOR THE

03:06PM 13   TESTIMONY.  IT'S IRRELEVANT WHAT THE EMOTION OF THE PATIENT

03:06PM 14   WAS.  WHAT'S RELEVANT IS WHAT THEY DID AND ANY SUBSEQUENT

03:06PM 15   CONDUCT TO THE INITIAL TEST.  THAT'S THE RELEVANCE, I THINK.

03:06PM 16            MR. SCHENK:  YES, YOUR HONOR.

03:06PM 17            MS. TREFZ:  YES, I THINK THAT IS A REASONABLE PLACE

03:06PM 18   TO LAND, YOUR HONOR.

03:06PM 19            THE COURT:  OKAY.  I THINK WE FINISHED WITH 562.

03:06PM 20   GREAT.

03:06PM 21            MR. SCHENK:  THANK YOU VERY MUCH.

03:06PM 22            THE COURT:  THANK YOU.  SHOULD WE TAKE 10 MINUTES?

03:06PM 23            MS. SAHARIA:  SURE, YOUR HONOR.

03:06PM 24            THE COURT:  LET'S DO THAT NOW.  WE'LL TAKE A

03:06PM 25   10-MINUTE BREAK.  THANK YOU.

159

| | | |
|---|---|---|
| 03:06PM | 1 | (RECESS FROM 3:06 P.M. UNTIL 3:21 P.M.) |
| 03:21PM | 2 | THE COURT: WE'RE BACK ON THE RECORD. ALL PARTIES |
| 03:21PM | 3 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 03:21PM | 4 | WE HAVE TWO MOTIONS IN LIMINE REMAINING THIS AFTERNOON. |
| 03:22PM | 5 | WE'LL SEE HOW WE DO. I TOLD YOU I WOULD LIKE TO FINISH AT |
| 03:22PM | 6 | 4:00. THAT, CANDIDLY, IS FOR CONVENIENCE OF THE PARTIES IF |
| 03:22PM | 7 | NOTHING ELSE. |
| 03:22PM | 8 | LET ME -- WHAT I'D LIKE TO DO IS TO CALL A MATTER OUT OF |
| 03:22PM | 9 | ORDER, THOUGH. I THINK WE CAN DISCUSS DOCKET 570, AND THIS IS |
| 03:22PM | 10 | MS. HOLMES'S MOTION TO EXCLUDE CUSTOMER SERVICE SPREADSHEETS |
| 03:22PM | 11 | THAT REFLECT CUSTOMARY FEEDBACK. |
| 03:22PM | 12 | AND I THINK, WHEN I LOOK AT THE TWO REMAINING, 569 AND |
| 03:22PM | 13 | 570, MY SENSE IS THIS ONE, I THINK, SHOULD NOT REQUIRE A LOT OF |
| 03:22PM | 14 | DISCUSSION, AND SO I THOUGHT WE COULD TAKE THIS ONE UP NOW AND |
| 03:22PM | 15 | WHATEVER TIME WE HAVE LEFT WE CAN TALK ABOUT 569. |
| 03:22PM | 16 | LET ME JUST STATE AN OBSERVATION, THAT THIS IS A MOTION -- |
| 03:23PM | 17 | JUST LOOKING AT THE PLEADINGS, THE COURT MAY DEFER RULING ON |
| 03:23PM | 18 | THIS SUBJECT TO THE GOVERNMENT LAYING A FOUNDATION, OR BEING |
| 03:23PM | 19 | ABLE TO LAY A FOUNDATION FOR SOME OF THE INFORMATION IN REGARDS |
| 03:23PM | 20 | TO THE SPREADSHEETS -- THAT'S JUST A HIGH LEVEL OBSERVATION |
| 03:23PM | 21 | THAT I HAVE FROM THE PLEADINGS -- AND IN REGARDS TO |
| 03:23PM | 22 | AUTHENTICATION AND THOSE ISSUES. |
| 03:23PM | 23 | SO IT MIGHT BE SOMEWHAT -- I THINK THE DEFENSE SAYS IT'S A |
| 03:23PM | 24 | LITTLE PREMATURE HERE. |
| 03:23PM | 25 | BUT THAT'S MY INITIAL REVIEW OF THIS, BUT I'M HAPPY TO |

03:23PM 1    HEAR FROM THE PARTIES.

03:23PM 2        IS THIS YOUR MOTION, MS. SAHARIA?

03:23PM 3            MS. SAHARIA:  IT'S NOT MY MOTION.  I'D LIKE TO

03:23PM 4    INTRODUCE THE COURT TO OUR COLLEAGUE, J.R. FLEURMONT.  HE'S

03:23PM 5    GOING TO ADDRESS THE REMAINING TWO MOTIONS.

03:23PM 6            THE COURT:  OH, LOVELY.  THANK YOU.

03:23PM 7        GOOD AFTERNOON.

03:23PM 8            MR. FLEURMONT:  GOOD AFTERNOON.

03:23PM 9            THE COURT:  WELCOME TO SAN JOSE.

03:24PM 10           MR. FLEURMONT:  THANK YOU.  I'M HAPPY TO BE HERE.

03:24PM 11           THE COURT:  SO I'D LIKE TO TAKE 570 FIRST, AND YOU

03:24PM 12   HEARD MY PRELIMINARY OBSERVATION ABOUT THIS.  MAYBE THAT HELPS

03:24PM 13   YOU WITH YOUR ARGUMENT.  I DON'T MEAN TO -- YOU'RE GOING TO BE

03:24PM 14   SPEAKING THROUGHOUT THE WEEK, I EXPECT, ON OTHER MOTIONS.

03:24PM 15           MR. FLEURMONT:  THAT'S CORRECT.

03:24PM 16           THE COURT:  RIGHT.  SO I DON'T MEAN TO SUGGEST THAT

03:24PM 17   I'M TRYING TO CUT YOU OFF, BUT I THINK YOU HAVE A HEADS UP

03:24PM 18   ABOUT WHAT I'M THINKING ABOUT HERE.

03:24PM 19           MR. FLEURMONT:  YES, YOUR HONOR.

03:24PM 20       YOUR HONOR IS EXACTLY RIGHT.  THE COURT'S OBSERVATIONS

03:24PM 21   ECHO THE CONCERNS THAT WE HAVE ABOUT THIS PARTICULAR PIECE OF

03:24PM 22   EVIDENCE.

03:24PM 23       TO PUT IT BRIEFLY, THE GOVERNMENT HAS FAILED TO LINK THESE

03:24PM 24   SPREADSHEETS TO ANY KNOWLEDGE THAT MS. HOLMES EVER KNEW ABOUT

03:24PM 25   THEM.  THE GOVERNMENT HAS FAILED TO LAY A FOUNDATION AS TO THE

03:24PM 1    AUTHENTICATION OF THESE SPREADSHEETS.  EVEN THE EXHIBITS THAT

03:24PM 2    THE GOVERNMENT CITES SHOWS THAT THERE'S ISSUES WITH THE CONTENT

03:24PM 3    OF THE SPREADSHEETS AND ISSUES WITH HOW THEY'RE FORMED, AND NOT

03:24PM 4    TO MENTION ALL OF THE HEARSAY ISSUES, THE HEARSAY ISSUES ABOUT

03:24PM 5    THE SPREADSHEETS THEMSELVES AND THE CONTENTS WITHIN THE

03:25PM 6    SPREADSHEETS.

03:25PM 7         THE COURT:  OKAY.  WELL, LET'S -- WHO STANDS FOR THE

03:25PM 8    GOVERNMENT?

03:25PM 9       MR. BOSTIC.  THANK YOU.

03:25PM 10        MR. BOSTIC:  YES, YOUR HONOR.  GOOD AFTERNOON.

03:25PM 11        THE COURT:  AND YOU HEARD MY INITIAL OBSERVATIONS.

03:25PM 12   I HOPE THAT'S HELPFUL TO YOU.

03:25PM 13        MR. BOSTIC:  I DID, YOUR HONOR.

03:25PM 14     I THINK IT MAKES SENSE TO AVOID CERTAINLY A BLANKET RULING

03:25PM 15   AT THIS TIME AND APPROACH EXHIBITS OR PORTIONS OF EXHIBITS ON A

03:25PM 16   CASE-BY-CASE BASIS.

03:25PM 17     THE GOVERNMENT CERTAINLY INTENDS TO LAY AN APPROPRIATE AND

03:25PM 18   SUFFICIENT FOUNDATION FOR ANY OF THESE EXHIBITS THAT IT INTENDS

03:25PM 19   TO INTRODUCE AT TRIAL.

03:25PM 20     I THINK IT'S QUITE CLEAR FROM THE CASE LAW CITED BY THE

03:25PM 21   GOVERNMENT THAT THIS KIND OF EVIDENCE CAN OVERCOME A HEARSAY

03:25PM 22   OBJECTION.  I THINK THE NINTH CIRCUIT HAS RULED ON THAT

03:25PM 23   CONCLUSIVELY.

03:25PM 24     AND IN THIS CASE SPECIFICALLY, EVEN WHERE THERE IS NO

03:25PM 25   EVIDENCE OF THIS DEFENDANT HAVING A COMPLETE COMPLAINT LOG ON

03:25PM 1    HER DESK AT SOME POINT, THERE IS MUCH EVIDENCE IN THE RECORD

03:26PM 2    SHOWING THAT SHE WAS GENERALLY KEPT APPRISED OF THESE

03:26PM 3    COMPLAINTS AS THEY CAME INTO THE COMPANY.

03:26PM 4        THERE IS EVIDENCE IN MULTIPLE FORMS SHOWING THAT THE

03:26PM 5    DEFENDANT HAD NUMEROUS CONVERSATIONS WITH OTHERS AT THERANOS,

03:26PM 6    THAT INDIVIDUAL PATIENT COMPLAINTS WERE REPORTED UP THE CHAIN

03:26PM 7    TO BOTH DEFENDANTS IN THIS CASE AND THOSE IN THEIR IMMEDIATE

03:26PM 8    ORBIT, AND ON THAT BASIS IT'S CERTAINLY EASY TO CONCLUDE THAT

03:26PM 9    THE CUSTOMER COMPLAINTS THEMSELVES, THEIR EXISTENCE IS THE

03:26PM 10   FOUNDATION FOR THAT OTHER EVIDENCE AND THAT THEIR EXISTENCE

03:26PM 11   TENDS TO SHOW HOLMES'S KNOWLEDGE OF THE COMPLAINTS THAT

03:26PM 12   THERANOS RECEIVED.

03:26PM 13       THE COURT:  WELL, TO YOUR POINT ABOUT THE COURT

03:26PM 14   SHOULD NOT ISSUE, IN YOUR OPINION THE COURT SHOULD NOT ISSUE A

03:26PM 15   BLANKET PRECLUSION, I THINK OF THIS EVIDENCE, I THINK THAT'S

03:26PM 16   WHAT I WAS SAYING, MR. FLEURMONT, IS THAT I THINK THE COURT

03:26PM 17   SHOULD DEFER AND DETERMINE WHETHER OR NOT ADDITIONAL EVIDENCE

03:27PM 18   WOULD BE HELPFUL FOR A FOUNDATIONAL BASIS AND MAKE THAT

03:27PM 19   DECISION WHEN THAT EVIDENCE OR THAT FOUNDATION IS PRESENTED IN

03:27PM 20   SOME MANNER BEFORE THE COURT, OR THE EVIDENCE IS PRESENTED

03:27PM 21   BEFORE THE COURT WITH THAT FOUNDATION.

03:27PM 22       MR. BOSTIC:  NO OBJECTION TO THAT APPROACH,

03:27PM 23   YOUR HONOR.

03:27PM 24       THE COURT:  SO I'LL DEFER THIS, 570.  EXCUSE ME.

03:27PM 25     NOW WE'RE BACK TO 569.  SO THANK YOU FOR THAT.

03:27PM 1          MR. FLEURMONT, YOU HAVE THAT AS WELL?

03:27PM 2               MR. FLEURMONT:  YES, YOUR HONOR.

03:27PM 3          YOUR HONOR, EARLIER TODAY THE GOVERNMENT IN ITS OPPOSITION

03:27PM 4     TO ANECDOTAL EVIDENCE MOTION STATED THIS IS NOT A CASE ABOUT

03:27PM 5     WHETHER CERTAIN CONDUCT MET INDUSTRY STANDARDS, AND WE AGREE.

03:27PM 6          ALLEGED VIOLATIONS OF INDUSTRY STANDARDS ARE NOT RELEVANT

03:27PM 7     TO THIS CASE FOR REASONS THAT I'LL DISCUSS.

03:27PM 8          ALTHOUGH THAT'S THE GOVERNMENT'S REPRESENTATION TODAY, IN

03:27PM 9     ITS 404(B) NOTICE, THAT'S EXHIBIT 1 AT PAGE 7, CATEGORY 14

03:28PM 10    STATES THE GOVERNMENT ALLEGES THAT VIOLATIONS OF INDUSTRY

03:28PM 11    STANDARDS AND GOVERNMENT REGULATIONS SUPPORTS THE GOVERNMENT'S

03:28PM 12    BROAD ALLEGATIONS THAT THERANOS TECHNOLOGY WAS, IN FACT, NOT

03:28PM 13    CAPABLE OF CONSISTENTLY PRODUCING ACCURATE AND RELIABLE

03:28PM 14    RESULTS.

03:28PM 15         THE GOVERNMENT CITES TO FOUR CATEGORIES OF EVIDENCE IN

03:28PM 16    SUPPORT OF THOSE BROAD ALLEGATIONS.  THE FIRST IS CLINICAL

03:28PM 17    TRIAL EVIDENCE.  THE GOVERNMENT ALLEGES THAT THERANOS FAILED TO

03:28PM 18    IMPLEMENT A CLEAR, INFORMED CONSENT PROTOCOLS AND THAT THEY

03:28PM 19    FOSTERED A CULTURE OF COURSE OF TESTING ENVIRONMENT.

03:28PM 20         THE SECOND CATEGORY RELATES TO RESEARCH AND DEVELOPMENT

03:28PM 21    VALIDATION STUDIES.  THE GOVERNMENT ALLEGES THAT THERANOS

03:28PM 22    FAILED TO HAVE ADEQUATE VALIDATION STUDIES AND THAT THEY USED

03:28PM 23    INSUFFICIENT DATA TO SUPPORT THOSE STUDIES.

03:28PM 24         THE THIRD CATEGORY IS GENERAL INCOMPLIANCE WITH FEDERAL

03:28PM 25    REGULATIONS.

03:28PM 1    AND THE FOURTH CATEGORY IS RELATED TO AGENCY REPORTS WHICH

03:28PM 2    WILL BE ADDRESSED BY MY COLLEAGUE IN A SEPARATE MOTION IN

03:28PM 3    LIMINE.

03:28PM 4    I'D LIKE TO START WITH THE FIRST CATEGORY OF CLINICAL

03:28PM 5    TRIALS.  THIS RELATES TO LANGUAGE IN THE 404(B) NOTICE THAT

03:29PM 6    THERANOS ALSO CUT CORNERS IN ITS ARIZONA RESEARCH AND

03:29PM 7    DEVELOPMENT TESTING AND FAILED TO IMPLEMENT A CLEAR PROTOCOL

03:29PM 8    FOR INFORMED CONSENT FOR TRIAL PARTICIPANTS AND FOSTERED A

03:29PM 9    COERCIVE ENVIRONMENT FOR TESTING.

03:29PM 10    NOW, THE GOVERNMENT HAS FAILED TO PROVIDE ANY EVIDENCE IN

03:29PM 11    SUPPORT OF THAT ALLEGATION IN ITS 404(B) EVIDENCE.  DESPITE

03:29PM 12    SUPPLEMENTING ITS 404(B) NOTICE TWICE IN THIS CASE, THE

03:29PM 13    GOVERNMENT HAS NOT POINTED TO A PIECE OF EVIDENCE OR TESTIMONY

03:29PM 14    AS AN EXHIBIT IN SUPPORT OF THAT ALLEGATION IN VIOLATION OF

03:29PM 15    LOCAL RULE 16-1, AS THE COURT VERY WELL KNOWS, THAT IT REQUIRES

03:29PM 16    THE GOVERNMENT TO PROVIDE A SUMMARY OF ANY EVIDENCE OF OTHER

03:29PM 17    CRIMES, WRONGS, OR ACTS WHICH THE GOVERNMENT INTENDS TO OFFER

03:29PM 18    AND TO SUPPORT THAT SUMMARY WITH DOCUMENTARY EVIDENCE, WITNESS

03:29PM 19    STATEMENTS IN SUFFICIENT DETAIL THAT THE COURT MAY RULE

03:29PM 20    PRETRIAL ON THE PROFFERED EVIDENCE.

03:29PM 21    AFTER MS. HOLMES POINTED THIS OUT IN HER OPENING MOTION,

03:30PM 22    THE GOVERNMENT FAILED TO, IN ITS OPPOSITION, EVEN ADDRESS THE

03:30PM 23    LACK OF EVIDENCE ON THIS ISSUE; AND THEREFORE, BECAUSE THE

03:30PM 24    GOVERNMENT HAS NOT CITED TO A PIECE OF EVIDENCE, THE GOVERNMENT

03:30PM 25    HAS NOT RESPONDED TO MS. HOLMES POINTING THAT ISSUE OUT, THE

03:30PM 1    GOVERNMENT HAS CONCEDED THIS ISSUE AND THE COURT SHOULD ISSUE A

03:30PM 2    RULING PRECLUDING THAT EVIDENCE.

03:30PM 3        THE NEXT CATEGORY RELATES TO R&D VALIDATION, AND THIS IS

03:30PM 4    RELATING TO THE GOVERNMENT'S ALLEGATION AND ITS 404(B) NOTICE

03:30PM 5    THAT THERANOS FAILED TO CONDUCT ADEQUATE VALIDATION STUDIES,

03:30PM 6    RELIED ON INSUFFICIENT DATA TO CLAIM THAT THE TESTS WERE VALID,

03:30PM 7    ACCURATE, AND RELIABLE.  AGAIN, THAT'S AT EXHIBIT 1 ON PAGE 7.

03:30PM 8        NOW, SIMILARLY, THE GOVERNMENT AGAIN, WITHOUT CITING ANY

03:30PM 9    EVIDENCE, ALLEGES A FAILURE TO CONDUCT ADEQUATE VALIDATION

03:30PM 10   STUDIES.  THE GOVERNMENT DOES NOT POINT TO ANY DATA TO SUPPORT

03:30PM 11   ITS ALLEGATION, DOESN'T EXPLAIN WHAT AN ADEQUATE VALIDATION

03:30PM 12   STUDY IS, AND DOESN'T EVEN EXPLAIN WHAT SUFFICIENT DATA WOULD

03:30PM 13   BE TO SUPPORT THAT STUDY.  THIS WOULD BE IN VIOLATION OF LOCAL

03:30PM 14   RULE 16-1.

03:30PM 15       AND IN THE GOVERNMENT'S OPPOSITION, ITS ONLY DEFENSE TO

03:31PM 16   THIS CATEGORY IS TO SAY THAT IT EXPECTS THAT WITNESSES WILL

03:31PM 17   TESTIFY THAT THERANOS LAUNCH EFFORTS WERE RUSHED IN 2013, BUT

03:31PM 18   THE ONLY EVIDENCE CITED IN THE GOVERNMENT'S OPPOSITION IS

03:31PM 19   DIRECTLY CONTRARY TO THAT ALLEGATION.

03:31PM 20       THE COURT -- EXCUSE ME, THE GOVERNMENT POINTS TO TESTIMONY

03:31PM 21   BY DR. ADAM ROSENDORFF, THE FORMER LAB DIRECTOR OF THERANOS,

03:31PM 22   AND WHAT MR. ROSENDORFF -- OR DR. ROSENDORFF, EXCUSE ME, SAYS

03:31PM 23   IN HIS DEPOSITION TESTIMONY WAS THAT HE DID NOT, QUOTE, FEEL

03:31PM 24   PRESSURE INDIVIDUALLY FROM MANAGEMENT TO GET THESE VALIDATION

03:31PM 25   REPORTS SIGNED.  THAT'S AT GOVERNMENT'S EXHIBIT 38, DOCKET

03:31PM 1    681-2.

03:31PM 2       HE ALSO SAID THAT HE WAS ONLY GOING TO SIGN THE VALIDATION

03:31PM 3    REPORTS IF THEY MET HIS STANDARDS AND THAT THERE WERE NO

03:31PM 4    VALIDATION REPORTS BEFORE OR AFTER THE LAUNCH THAT HE REFUSED

03:31PM 5    TO SIGN.

03:31PM 6       SO THE ONLY EVIDENCE THAT THE COURT -- THE ONLY EVIDENCE

03:31PM 7    THAT THE GOVERNMENT POINTS TO IN SUPPORT OF THAT ALLEGATION IS

03:31PM 8    DIRECTLY CONTRARY TO THE ALLEGATION THAT THEY SAY HAD TO DO

03:31PM 9    WITH THE VALIDATION TESTING.

03:31PM 10      AND FOR THAT REASON WE ASK THE COURT TO EXCLUDE THAT

03:32PM 11    CATEGORY OF EVIDENCE AS WELL.

03:32PM 12      THE LAST CATEGORY I'LL DISCUSS TODAY IS THE GENERAL

03:32PM 13    CATEGORY OF VIOLATION OF INDUSTRY STANDARDS AND GOVERNMENT

03:32PM 14    REGULATIONS.  THIS IS ALSO AT EXHIBIT 1 AT PAGE 7 IN WHICH THE

03:32PM 15    GOVERNMENT ALLEGES THAT IN FURTHERANCE OF THE SCHEME TO

03:32PM 16    DEFRAUD, THE DEFENDANTS FAILED TO CONFORM TO INDUSTRY

03:32PM 17    STANDARDS, AS WELL AS GOVERNMENT REGULATIONS OR RULES REGARDING

03:32PM 18    CLINICAL LABORATORY STANDARDS.

03:32PM 19      THIS EVIDENCE SHOULD BE EXCLUDED BECAUSE THE GENERAL RULE

03:32PM 20    IS THAT EVIDENCE OF VIOLATIONS OF FEDERAL LAW ARE IMPERMISSIBLE

03:32PM 21    EXPERT TESTIMONY IN A CIVIL OR A CRIMINAL CASE.

03:32PM 22      THE GOVERNMENT SEEKS TO ADMIT THIS TESTIMONY THROUGH TWO

03:32PM 23    OF ITS EXPERTS.  ONE IS DR. MASTER, AND THE OTHER ONE IS

03:32PM 24    DR. ADAM ROSENDORFF.

03:32PM 25      AS THIS COURT KNOWS, BECAUSE IT HELD IN LUKOV, L-U-K-O-V,

03:32PM 1    VERSUS SCHINDLER ELEVATOR CORP, 2012 WESTLAW 2428251, AN EXPERT

03:33PM 2    WITNESS CANNOT GIVE AN OPINION AS FOR A LEGAL CONCLUSION.  AS

03:33PM 3    THE NINTH CIRCUIT STATED IN UNITED STATES VERSUS SHOLL, EXPERTS

03:33PM 4    DO NOT TESTIFY ABOUT THE LAW BECAUSE IT IS THE JUDGE'S DUTY TO

03:33PM 5    INFORM THE JURY ABOUT THE LAW THAT IS RELEVANT TO THEIR

03:33PM 6    DELIBERATIONS.

03:33PM 7        YOUR HONOR, FROM THESE CASES AND OTHERS, IT'S CLEAR THAT

03:33PM 8    NO GOVERNMENT WITNESS MAY PROVIDE HIS OR HER LEGAL CONCLUSION

03:33PM 9    AS TO ANY LAW THAT WAS ALLEGEDLY VIOLATED OR REGULATION THAT

03:33PM 10   WAS ALLEGEDLY VIOLATED IN THIS CASE.

03:33PM 11       NOW, THE GOVERNMENT UNDERSTANDS THAT GENERAL RULE, BUT

03:33PM 12   THEY SEEK A CARVEOUT IN THIS CASE AND THEY ARGUE THAT THERE

03:33PM 13   SHOULD BE NO RULE AGAINST ADMISSION OF LEGAL CONCLUSIONS

03:33PM 14   COMMUNICATED TO A DEFENDANT.  THAT'S AT DOCKET 670 AT PAGE 4.

03:33PM 15       BUT ALL OF THE GOVERNMENT'S CASES THAT THEY CITE ARE

03:33PM 16   DISTINGUISHABLE BECAUSE THEY DEAL WITH A SIMILAR FACT PATTERN.

03:33PM 17   IN EACH CASE THERE'S AN ATTORNEY FOR THE DEFENDANT EXPLAINING

03:33PM 18   TO THE DEFENDANT THAT THE CONDUCT THAT THEY'RE ENGAGING IN MAY

03:33PM 19   BE A CRIME AND LATER THAT PERSON IS CHARGED FOR THE SAME OR THE

03:33PM 20   EXACT SAME CRIME, THE SAME OR SIMILAR CRIME.

03:34PM 21       IN THIS CASE THE EVIDENCE THAT THE GOVERNMENT POINTS TO

03:34PM 22   FOR SOMEONE TELLING MS. HOLMES ABOUT A VIOLATION OF A

03:34PM 23   CRIMINAL -- A VIOLATION OF A FEDERAL REGULATION IS NOT AN

03:34PM 24   ATTORNEY.  IT'S DR. ADAM ROSENDORFF.  HE IS A REGULAR

03:34PM 25   INDIVIDUAL.  HE'S NOT AN ATTORNEY.  MS. HOLMES IS NOT CHARGED

03:34PM 1    WITH CRIMINAL VIOLATIONS OF CLINICAL LABORATORY IMPROVEMENT

03:34PM 2    AMENDMENTS, WHICH IS THE REGULATION THAT HE POINTS OUT, A

03:34PM 3    CHARGE THAT WAS AVAILABLE TO THE GOVERNMENT, AND THE EVIDENCE

03:34PM 4    CITED BY THE GOVERNMENT IS NOT RELEVANT TO WHETHER MS. HOLMES

03:34PM 5    KNOWINGLY VIOLATED THE WIRE FRAUD ACT BY PERSISTING IN CONDUCT

03:34PM 6    AFTER RECEIVING ADVICE THAT HER CONDUCT WAS IN VIOLATION OF

03:34PM 7    THAT WIRE FRAUD ACT.

03:34PM 8        THE CASES THE GOVERNMENT CITES STAND FOR THE SIMPLE

03:34PM 9    PROPOSITION THAT WHEN AN ATTORNEY TELLS A DEFENDANT THAT HE OR

03:34PM 10   SHE IS DIRECTLY VIOLATING A CRIME FOR WHICH HE OR SHE LATER

03:34PM 11   WILL BE CHARGED, THAT IS RELEVANT TO INTENT.

03:34PM 12       NOTABLY, IN THIS CASE THERE IS NO ALLEGATION THAT AN

03:34PM 13   ATTORNEY TOLD MS. HOLMES THAT THERE'S A VIOLATION OF THE WIRE

03:34PM 14   FRAUD ACT.

03:34PM 15            THE COURT:  SO LET ME ASK YOU, IF DR. ROSENDORFF --

03:35PM 16   HE WAS THE LAB DIRECTOR, I THINK; IS THAT CORRECT?

03:35PM 17            MR. FLEURMONT:  THAT'S CORRECT, YOUR HONOR.

03:35PM 18            THE COURT:  SO AS LAB DIRECTOR, SHOULD WE KNOW OR

03:35PM 19   SHOULD WE ASSUME OR DO WE KNOW THAT THAT IS A POSITION OF ART,

03:35PM 20   IF YOU WILL; THAT IS, HE WAS IN CHARGE OF THE FUNCTIONS, THE

03:35PM 21   DAILY OPERATIONS, THE REPORTING, ALL OF THE THINGS IN THE

03:35PM 22   LABORATORY, THAT FALLS UNDER HIS DOMAIN, ISN'T THAT HIS CHARGE?

03:35PM 23   ISN'T THAT WHAT HE DOES AS LAB DIRECTOR?  HE MAKES SURE THE LAB

03:35PM 24   OPERATES, FUNCTIONS SMOOTHLY, EFFICIENTLY, PROFITABLY, AND

03:35PM 25   LEGALLY?  IS THAT PART OF HIS DUTIES?

169

03:35PM 1      MR. FLEURMONT:  THAT'S CORRECT, YOUR HONOR.

03:35PM 2      PART OF THE LAB DIRECTOR'S DUTY IS TO MAKE SURE THAT THE

03:35PM 3  TESTS THAT ARE COMING OUT OF THE LAB ARE ACCURATE AND RELIABLE

03:35PM 4  AND MAKE SURE THE LAB IS FUNCTIONING.

03:35PM 5      BUT THE DISCONNECT OF THAT FACT PATTERN AND WHAT IS GOING

03:35PM 6  ON HERE IS THAT -- AND PARTICULARLY GOING BACK TO THE CASES

03:35PM 7  THAT THE GOVERNMENT HAS CITED -- IT'S NOT AN ATTORNEY PROVIDING

03:35PM 8  LEGAL ADVICE ABOUT THE CONDUCT FOR WHICH SOMEONE IS LATER

03:36PM 9  CHARGED.

03:36PM 10     HERE THIS IS A DOCTOR TALKING ABOUT LAB OPERATIONS THAT

03:36PM 11 ARE NOT -- AND THERE'S NO ALLEGATION OR THERE'S NO ADVICE AND

03:36PM 12 THERE'S NO STATEMENT IN THERE ABOUT VIOLATIONS OF THE WIRE

03:36PM 13 FRAUD ACT, THE CRIME FOR WHICH MS. HOLMES IS CHARGED.

03:36PM 14      THE COURT:  WELL, HE'S NOT SAYING THAT -- HE'S NOT

03:36PM 15 OFFERING A LEGAL OPINION THAT THE LAB WAS LEGALLY IN VIOLATION.

03:36PM 16     HE'S, AS I UNDERSTAND IT -- AND PLEASE HELP ME OUT HERE --

03:36PM 17 AS I UNDERSTAND IT, BECAUSE OF HIS POSITION, BECAUSE OF THE

03:36PM 18 HIGH LEVEL POSITION THAT HE HAD A LAB DIRECTOR, HE SHOULD KNOW

03:36PM 19 ABOUT REGULATIONS, HE KNOWS CLIA REGULATIONS, THOSE ARE

03:36PM 20 IMPORTANT TO A FUNCTIONING -- A CERTIFIED FUNCTIONING LAB AND

03:36PM 21 IF THEY'RE CONTINUING TO DO THE WORK, THEY NEED TO BE CERTIFIED

03:36PM 22 AND ALL OF THAT, INVOLVED -- SOMETIMES THERE'S CROSSOVER WITH

03:36PM 23 THE FDA AND OTHERS.  SO HE KNOWS THOSE THINGS.

03:37PM 24     ISN'T THE CONDUCT HERE THE FACT THAT HE LOOKED AT THE LAB

03:37PM 25 AS LAB DIRECTOR AND NOTED SOME THINGS THAT PARTED COMPANY WITH

03:37PM  1    CLIA REGULATIONS THAT HE KNOWS, HE KNOWS ABOUT, AND THEN HE

03:37PM  2    INFORMED EITHER MS. HOLMES OR ADMINISTRATION THAT THE LAB WAS

03:37PM  3    NOT IN COMPLIANCE WITH THOSE REGULATIONS, NOT THAT WE'RE

03:37PM  4    VIOLATING THE LAW, BUT RIGHT NOW THE REGULATIONS REQUIRE X,

03:37PM  5    WHATEVER IT IS, AND WE'RE NOT DOING X, WHATEVER THAT IS.

03:37PM  6         IS THAT TOO SIMPLISTIC?

03:37PM  7         IT SEEMS LIKE THAT'S WHAT HE DID.  SO HE'S NOT OFFERING

03:37PM  8    LEGAL OPINION ABOUT ANY VIOLATIONS.  HE'S TALKING ABOUT

03:37PM  9    REGULATIONS THAT, AS LAB DIRECTOR, HE'S SUPPOSED TO KNOW.  I

03:37PM 10    ASSUME THAT'S WHY HE WAS HIRED, BECAUSE OF HIS BACKGROUND,

03:37PM 11    KNOWLEDGE AND EXPERIENCE.  ISN'T THAT WHAT HE'S DOING?

03:37PM 12         MR. FLEURMONT:  WELL, NOT QUITE, YOUR HONOR.  HE IS

03:38PM 13    OFFERING LEGAL OPINIONS.

03:38PM 14         I WANT TO BE VERY CLEAR ON THE EVIDENCE THAT WE SEEK TO

03:38PM 15    EXCLUDE.  SO WE'RE SEEKING TO EXCLUDE ANY TESTIMONY BY ANY

03:38PM 16    WITNESS, NOT JUST DR. ROSENDORFF, THAT HERE IS THIS LAW, HERE'S

03:38PM 17    WHAT THIS LAW SAYS, THERANOS VIOLATED THIS LAW.

03:38PM 18         THAT, UNDER THE CASE LAW, I THINK IS VERY CLEAR IS

03:38PM 19    INADMISSIBLE EXPERT OPINION TESTIMONY.

03:38PM 20         THE COURT:  THAT'S WHAT I WAS SAYING.  PARDON ME FOR

03:38PM 21    INTERRUPTING YOU.  MY THOUGHT WAS THAT HE WAS NOT GOING TO

03:38PM 22    TESTIFY TO THAT.

03:38PM 23         MR. FLEURMONT:  OKAY.  WELL, YOUR HONOR, THAT'S NOT

03:38PM 24    QUITE -- THAT'S NOT OUR UNDERSTANDING BASED ON THE EXHIBITS

03:38PM 25    THAT THE GOVERNMENT HAS PROVIDED.

03:38PM  1          THE COURT:  OKAY.

03:38PM  2          MR. FLEURMONT:  WE HAVE A DIFFERENT UNDERSTANDING.

03:38PM  3    FOR EXAMPLE, THE GOVERNMENT PROVIDES AT EXHIBIT 24 AN EMAIL

03:38PM  4    CHAIN THAT I'LL NOTE THAT MS. HOLMES IS NOT ON IN WHICH HE SAYS

03:38PM  5    THAT THESE ARE THE AREAS OF CLIA LAW THAT WE'RE NOT COMPLYING

03:38PM  6    WITH.

03:38PM  7          THE COURT:  I'M SORRY.  SAY AGAIN.

03:38PM  8          MR. FLEURMONT:  THESE ARE THE AREAS OF CLIA LAW IN

03:38PM  9    WHICH WE ARE NOT COMPLYING.

03:39PM  10         THE COURT:  OKAY.  SO IT SOUNDS LIKE IT'S A LITTLE

03:39PM  11   BIT OF BOTH OF WHAT I SAID, WHAT MY OBSERVATION WAS, I CALLED

03:39PM  12   THEM REGULATIONS, AND HE SAID THAT WE'RE NOT IN COMPLIANCE WITH

03:39PM  13   CLIA.

03:39PM  14         MR. FLEURMONT:  IT'S A FEDERAL REGULATION,

03:39PM  15   YOUR HONOR.

03:39PM  16         THE COURT:  RIGHT, REGULATION.  HE DIDN'T SAY THAT

03:39PM  17   WE'RE BREAKING THE LAW.  HE DIDN'T SAY WE SHOULD LAWYER UP

03:39PM  18   BECAUSE WE'RE BREAKING THE LAW.  PARDON ME.

03:39PM  19      BUT HE SAID THERE'S A REGULATION THAT WE'RE NOT FOLLOWING

03:39PM  20   HERE.

03:39PM  21         MR. FLEURMONT:  YOUR HONOR, I THINK THAT'S A --

03:39PM  22         THE COURT:  IS THAT TOO SIMPLISTIC?

03:39PM  23         MR. FLEURMONT:  I DON'T WANT TO CALL YOUR HONOR

03:39PM  24   SIMPLISTIC.

03:39PM  25         THE COURT:  NO, NO.  I SAID IT.

03:39PM 1            MR. FLEURMONT:  I THINK THAT'S A DISTINCTION WITHOUT

03:39PM 2  A DIFFERENCE TO SAY THAT WE'RE NOT IN COMPLIANCE WITH FEDERAL

03:39PM 3  LAW AND TO SAY THAT WE'RE VIOLATING FEDERAL LAW.  IT'S

03:39PM 4  EFFECTIVELY THE SAME THING, YOUR HONOR.

03:39PM 5            THE COURT:  OKAY.

03:39PM 6            MR. FLEURMONT:  AND WE SEEK TO EXCLUDE -- THAT'S THE

03:40PM 7  EVIDENCE THAT WE SEEK TO EXCLUDE.

03:40PM 8        BUT PUTTING LEGAL CONCLUSIONS ASIDE, THE EVIDENCE OF

03:40PM 9  VIOLATION OF INDUSTRY STANDARDS IS NOT RELEVANT TO THIS CASE

03:40PM 10  FOR OTHER REASONS.

03:40PM 11        THE GOVERNMENT HAS ALLEGED THAT MS. HOLMES MISREPRESENTED

03:40PM 12  TO INVESTORS AND PAYING CUSTOMERS THAT THERANOS COULD PROVIDE

03:40PM 13  ACCURATE AND RELIABLE TEST RESULTS DESPITE KNOWING THAT

03:40PM 14  THERANOS TECHNOLOGY WAS IN FACT, AND I QUOTE, NOT CAPABLE OF

03:40PM 15  CONSISTENTLY PRODUCING ACCURATE AND RELIABLE RESULTS.

03:40PM 16        WE SUBMIT THAT THE EVIDENCE OF VIOLATION OR ALLEGED

03:40PM 17  VIOLATION OF INDUSTRY STANDARDS IS NOT RELEVANT TO THAT CHIEF

03:40PM 18  ALLEGATION IN THIS CASE, WHICH IS PARAGRAPH 16 OF THE

03:40PM 19  GOVERNMENT'S THIRD SUPERSEDING INDICTMENT.

03:40PM 20        FIRST, THE GOVERNMENT'S RETAINED EXPERT CANNOT EVEN OPINE

03:40PM 21  THAT ANY SUCH VIOLATION OF INDUSTRY STANDARDS AFFECTS ACCURACY

03:40PM 22  AND RELIABILITY.  HE SIMPLY STATES THAT IT COULD HAVE A

03:40PM 23  POTENTIAL TO AFFECT ACCURACY AND RELIABILITY.

03:40PM 24        SO EVEN THE GOVERNMENT'S OWN RETAINED EXPERT UNDERSTANDS

03:41PM 25  THAT THERE'S NOT THAT STRONG OF A CONNECTION IN THIS CASE.

173

03:41PM  1      SECOND, THE GOVERNMENT CMS WITNESS HAS EXPLAINED, CMS DOES

03:41PM  2  NOT DETERMINE ACCURACY OR RELIABILITY OF TESTS.  RATHER, IT

03:41PM  3  LOOKS TO SEE IF THE LAB IS FOLLOWING ITS OWN POLICIES, AND

03:41PM  4  THAT'S SARAH BENNETT.  AND THAT'S AT EXHIBIT 31, WHICH IS THE

03:41PM  5  DEPOSITION TESTIMONY OF MS. BENNETT.

03:41PM  6      AND MOREOVER, THIS GOES BACK TO THE ORIGINAL POINT, THE

03:41PM  7  404(B) NOTICE IN WHICH THE GOVERNMENT MADE THESE ALLEGATIONS

03:41PM  8  AND CITED THESE DOCUMENTS DID NOT INCLUDE ANY DOCUMENT THAT HAD

03:41PM  9  MS. HOLMES COPIED OR THAT SHOWED MS. HOLMES'S AWARENESS OF THIS

03:41PM 10  ISSUE.

03:41PM 11      AND SO FOR THOSE REASONS WE BELIEVE THAT THE RELEVANCE IS

03:41PM 12  SLIM TO NONE WHEN IT COMES TO INDUSTRY STANDARDS.

03:41PM 13      THE LAST POINT I'D LIKE TO MAKE, YOUR HONOR, IS RELATED TO

03:41PM 14  THE PREJUDICIAL EFFECT OF THIS TESTIMONY.

03:41PM 15      EVEN IF THE COURT WERE TO FIND THAT THERE WAS SOME MINIMAL

03:41PM 16  PROBATIVE RELEVANCE TO THIS, WE FEEL THAT THAT RELEVANCE IS

03:41PM 17  SUBSTANTIALLY OUTWEIGHED BY A PREJUDICIAL EFFECT, AND THIS IS

03:42PM 18  BECAUSE IF THE COURT WAS TO ALLOW THE JURY TO HEAR REPEATEDLY

03:42PM 19  ABOUT EVIDENCE RELATED TO INDUSTRY STANDARDS AND VIOLATIONS OF

03:42PM 20  FEDERAL REGULATIONS, THERE'S A SERIOUS DANGER THAT THE JURY

03:42PM 21  COULD CONVICT BASED ON THEIR UNDERSTANDING OF A VIOLATION OF A

03:42PM 22  FEDERAL REGULATION.

03:42PM 23      THE COURT:  A CIVIL REGULATION THAT THE JURY MIGHT

03:42PM 24  THEN SAY, WELL, THE DANGER IS THAT THERE MIGHT BE A CONVICTION

03:42PM 25  OF A CRIMINAL STATUTE BASED ON A CIVIL REGULATION.

03:42PM 1      MR. FLEURMONT:  THAT'S EXACTLY RIGHT, YOUR HONOR.

03:42PM 2      WITH THAT, I'LL YIELD MY TIME.

03:42PM 3      THE COURT:  OKAY.  THANK YOU.

03:42PM 4      MR. LEACH, THIS IS THE FIRST TIME TODAY WE HEAR FROM YOU.

03:42PM 5      MR. LEACH:  I KNOW, YOUR HONOR.  I HOPE TO LIVE UP

03:42PM 6   TO THE STANDARD OF MY COLLEAGUES.  GOOD AFTERNOON.

03:42PM 7      ROBERT LEACH FOR THE UNITED STATES.

03:42PM 8      THE DEFENSE SEEKS A CATEGORICAL EXCLUSION OF ANY EVIDENCE,

03:42PM 9   ARGUMENT, REFERENCES TO VIOLATIONS OF INDUSTRY STANDARDS OR

03:42PM 10  GOVERNMENT REGULATIONS AND RULES, A CATEGORICAL RULE ON THAT IN

03:43PM 11  THIS CASE.

03:43PM 12     AND IT RAISED THREE ARGUMENTS FOR THIS CATEGORICAL RULE:

03:43PM 13  RELEVANCE, 403, AND THE RULE THAT THEY HAVE CONJURED UP WHICH

03:43PM 14  IS THAT NONLAWYERS CAN'T TALK ABOUT WHAT THEY COMMUNICATED TO

03:43PM 15  THE DEFENDANTS ABOUT THE LAW DURING THE SCHEME TO DEFRAUD.

03:43PM 16     THEY DID NOT RAISE A 404 OBJECTION.  THEY DRAW A LOT ON

03:43PM 17  THE 404(B) NOTICE, BUT I THINK MUCH OF WHAT WE'RE TALKING ABOUT

03:43PM 18  IS NOT GENERALLY 404(B) EVIDENCE, YOUR HONOR.

03:43PM 19     I THINK WHEN YOU GET DOWN INTO THE SPECIFICS, YOU SEE WHY

03:43PM 20  THIS CATEGORICAL RULE THAT THEY'RE ARGUING FOR IS NOT

03:43PM 21  WARRANTED, AND I WANT TO FOCUS ON EXHIBIT 24, THIS IS AT DOCKET

03:43PM 22  582-8.  THIS IS THE EMAIL THAT MY FRIEND ON THE OTHER SIDE WAS

03:43PM 23  TALKING ABOUT FROM DR. ROSENDORFF TITLED -- WHERE HE'S RAISING

03:43PM 24  ISSUES ABOUT THERANOS'S LAB AND TESTING THAT HAD BEEN DONE FOR

03:44PM 25  THE EDISON TO DATE.

03:44PM 1     THIS EMAIL IS FORWARDED TO MS. HOLMES, SO THERE'S AMPLE

03:44PM 2    EVIDENCE THAT SHE KNEW ABOUT IT.

03:44PM 3     THERE'S ADDITIONAL EMAILS WHERE SHE'S COMMUNICATING ABOUT

03:44PM 4    THE RESPONSE TO DR. ROSENDORFF IN RESPONSE TO THIS EMAIL.

03:44PM 5     AND THE THRUST OF WHAT DR. ROSENDORFF IS SAYING IN THIS

03:44PM 6    EMAIL TO MR. BALWANI, WHICH GETS FORWARDED TO MS. HOLMES, AND

03:44PM 7    THAT'S -- THE FORWARDING IS, IN THE GOVERNMENT'S OPPOSITION, IS

03:44PM 8    ESSENTIALLY THAT WE HAVEN'T DONE SOME OF THE STUDIES THAT ARE

03:44PM 9    NECESSARY TO RUN OUR LAB CONSISTENTLY WITH CLIA.

03:44PM 10     THE COURT:  THIS IS DR. ROSENDORFF?

03:44PM 11     MR. LEACH:  THIS IS DR. ROSENDORFF.

03:44PM 12     AND YOUR HONOR TOUCHED ON THE ROLE OF DR. ROSENDORFF.  HE

03:44PM 13    IS THE LAB DIRECTOR.  HIS DUTIES INCLUDE MAKING SURE THAT THIS

03:44PM 14    LAB IS OPERATING CORRECTLY, IN A SAFE WAY, COMPLIANT WITH

03:44PM 15    FEDERAL LAW, COMPLIANT WITH STATE LAW.

03:44PM 16     IF THOSE THINGS DON'T HAPPEN, THERE CAN BE CONSEQUENCES

03:45PM 17    FOR HIM, SO HE NEEDS TO BE -- YOU KNOW, THESE ARE NOT

03:45PM 18    REGULATIONS THAT AFFECT JUST LAWYERS.  THESE ARE REGULATIONS

03:45PM 19    THAT AFFECT HIM AND HIS CONDUCT AND THAT HE'S TESTED ON AND

03:45PM 20    THAT HE HAS TO KNOW ABOUT.  SO HE'S VERY MUCH IN A POSITION TO

03:45PM 21    HAVE INFORMATION ABOUT WHAT HE'S TALKING ABOUT.

03:45PM 22     AND ESSENTIALLY IN NOVEMBER OF 2013, HE'S RAISING RED

03:45PM 23    FLAGS ABOUT WHAT THERANOS IS DOING IN ITS LAB.  HE'S SAYING

03:45PM 24    THAT WE HAVE NOT RUN THE RIGHT TESTS FOR OUR EDISON DEVICE, THE

03:45PM 25    DEVICE THAT ALL OF THE INVESTORS CARE ABOUT.  HE'S SAYING, WE

03:45PM 1     NEED TO DO X, Y, AND Z BEFORE WE DO THIS IN OUR LAB.

03:45PM 2         I CAN'T THINK OF MORE SIGNIFICANT INTENT EVIDENCE THAN

03:45PM 3     THIS.

03:45PM 4         THIS IS NOT DR. ROSENDORFF INSTRUCTING THE JURY ON WHAT

03:45PM 5     THE LAW IS. WE ACKNOWLEDGE THAT IS THE COURT'S JOB. THE COURT

03:45PM 6     EXPOUNDS ON WHAT THE CONTRACT MEANS AND THE COURT WILL GIVE

03:45PM 7     JURY INSTRUCTIONS AT THE END OF THE DAY.

03:46PM 8         BUT THERE ARE MANY, MANY SITUATIONS WHERE NONLAWYERS

03:46PM 9     COMMUNICATE TO A PERSON IN REALTIME ABOUT RED FLAGS, ABOUT

03:46PM 10     THINGS THAT THEY'RE DOING RIGHT AND THEY'RE DOING WRONG, AND

03:46PM 11     THEY'RE ESSENTIALLY TRYING TO CREATE THIS RULE THAT IF IT'S

03:46PM 12     COUCHED IN SOME LEGAL TERM OR SOME ABIDING BY A CONDITION, THAT

03:46PM 13     IT'S OUT AND IT HAS NO RELEVANCE.

03:46PM 14         AND THAT CAN'T BE RIGHT, YOUR HONOR. THAT WOULD MEAN THAT

03:46PM 15     A CFO, A NONLAWYER, WHO TELLS THE CEO OF A COMPANY, WE'RE

03:46PM 16     RECOGNIZING REVENUE INCORRECTLY, OR WE'RE BACKDATING STOCK

03:46PM 17     OPTIONS AND WE SHOULDN'T DO THAT, CAN'T COME IN, IMPERMISSIBLE

03:46PM 18     LEGAL OPINION.

03:46PM 19         OR IF A SCIENTIST GOES TO THE CHIEF MARKETING OFFICER AND

03:46PM 20     SAYS, I DON'T FEEL GOOD ABOUT HOW WE'RE MARKETING THIS, THIS

03:46PM 21     DOESN'T SEEM RIGHT TO ME, IT SEEMS BAD, CAN'T COME IN,

03:46PM 22     IMPERMISSIBLE LEGAL OPINION UNDER THEIR RULE.

03:46PM 23         THIS IS KEY INTENT, STATE OF MIND, PLAN, KNOWLEDGE

03:47PM 24     EVIDENCE THAT GOES DIRECTLY TO WHAT THE DEFENDANT KNEW ABOUT

03:47PM 25     HER LAB, KNEW WHAT WAS GOING ON IN THERE, AND WHAT SHE DOES

177

03:47PM 1   ABOUT IT.

03:47PM 2       I THINK ANOTHER CRITICAL PIECE OF EVIDENCE THAT WE CITE TO

03:47PM 3   PROVE THIS CONCEPT IS EXHIBIT 26, WHICH IS 583, AND THIS IS

03:47PM 4   DR. ROSENDORFF TELLING TO MR. BALWANI IN AN EMAIL, WHICH

03:47PM 5   ULTIMATELY GETS FORWARDED TO MS. HOLMES, FOR PROFICIENCY

03:47PM 6   TESTING, WE'RE NOT 100 PERCENT OF THE TIME DOING IT THE WAY WE

03:47PM 7   SHOULD BE DOING IT.  WE SHOULD BE DOING IT ON THE THERANOS

03:47PM 8   DEVICES THAT ARE ACTUALLY USED IN OUR LAB, AND WE'RE NOT DOING

03:47PM 9   THAT.

03:47PM 10      HE DOESN'T SAY, WE'RE VIOLATING THE LAW.  HE SAYS, WE'RE

03:47PM 11  NOT DOING THAT 100 PERCENT OF THE TIME AND WE SHOULD BE.

03:47PM 12          THE COURT:  AND THAT EMAIL IS IN THE CHARGING TIME

03:47PM 13  PERIOD?

03:47PM 14          MR. LEACH:  ABSOLUTELY, YOUR HONOR.  IT'S MARCH OF

03:47PM 15  2014, APPROXIMATELY.

03:47PM 16      AND EVEN IF IT WERE COUCHED IN, WE'RE NOT COMPLYING WITH

03:48PM 17  THE REGULATION, DR. ROSENDORFF IS PERFECTLY CAPABLE OF, BECAUSE

03:48PM 18  HE'S THE REGULATED PERSON, OF TALKING ABOUT HIS CONCERNS.

03:48PM 19      AND THEY CAN CROSS-EXAMINATION HIM ABOUT HIS NOT BEING A

03:48PM 20  LAWYER, HIS NOT KNOWING WHAT HE TALKS ABOUT.

03:48PM 21      THEY POINT TO LANGUAGE IN THE EMAIL WHERE HOLMES SUGGESTS

03:48PM 22  SHE MIGHT HAVE GOTTEN ADVICE FROM SOMEONE ELSE.  THEY CAN

03:48PM 23  CROSS-EXAMINATION DR. ROSENDORFF ABOUT IT.  BUT IT DOESN'T

03:48PM 24  DIMINISH THE RELEVANCE, IT DOESN'T RAISE 403 CONCERNS, AND IT

03:48PM 25  CERTAINLY DOESN'T IMPINGE ON THE COURT'S RESPONSIBILITY TO

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

April 17, 2023