No. 22-10312

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

---

## EXCERPTS OF RECORD
### VOL. XIV of LVII | ER-3679 to ER-3945

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

1

2                    UNITED STATES DISTRICT COURT

3                  NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                    )
                    PLAINTIFF,       )   SAN JOSE, CALIFORNIA
7                                    )
             VS.                     )   VOLUME 1
8                                    )
   ELIZABETH A. HOLMES,              )   AUGUST 31, 2021
9                                    )
                    DEFENDANT.       )   PAGES 1 - 264
10   _____)

11                TRANSCRIPT OF TRIAL PROCEEDINGS

12            BEFORE THE HONORABLE EDWARD J. DAVILA
                 UNITED STATES DISTRICT JUDGE
13
   A P P E A R A N C E S:
14

15   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  JOHN C. BOSTIC
16                              JEFFREY B. SCHENK
                           150 ALMADEN BOULEVARD, SUITE 900
17                         SAN JOSE, CALIFORNIA 95113

18                         BY:  ROBERT S. LEACH
                                KELLY VOLKAR
19                         1301 CLAY STREET, SUITE 340S
                           OAKLAND, CALIFORNIA 94612
20
            (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21

22   OFFICIAL COURT REPORTERS:
                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
23                         CERTIFICATE NUMBER 8074
                           LEE-ANNE SHORTRIDGE, CSR, CRR
24                         CERTIFICATE NUMBER 9595

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1       A P P E A R A N C E S:  (CONT'D)

 2

 3   FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                              BY:  KEVIN M. DOWNEY
 4                                 LANCE A. WADE
                                   KATHERINE TREFZ
 5                            725 TWELFTH STREET, N.W.
                              WASHINGTON, D.C. 20005
 6
                              LAW OFFICE OF JOHN D. CLINE
 7                            BY:  JOHN D. CLINE
                              ONE EMBARCADERO CENTER, SUITE 500
 8                            SAN FRANCISCO, CALIFORNIA 94111

 9
     ALSO PRESENT:            FEDERAL BUREAU OF INVESTIGATION
10                            BY:  ADELAIDA HERNANDEZ

11
                              OFFICE OF THE U.S. ATTORNEY
12                            BY:  LAKISHA HOLLIMAN, PARALEGAL
                                   MADDI WACHS, PARALEGAL
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                      AUGUST 31, 2021

 2                      P R O C E E D I N G S

08:55AM   3         (COURT CONVENED AT 8:55 A.M.)

08:55AM   4              THE COURT:  LET'S GO ON THE RECORD IN OUR MATTER

08:55AM   5    TODAY 18-258, UNITED STATES VERSUS ELIZABETH HOLMES.

08:55AM   6         LET ME FIRST CAPTURE THE APPEARANCES OF THE PARTIES.  WHO

08:55AM   7    APPEARS FOR THE GOVERNMENT?

08:55AM   8              MR. SCHENK:  GOOD MORNING, YOUR HONOR.

08:55AM   9         JEFF SCHENK ON BEHALF UNITED STATES, JOINED AT COUNSEL

08:55AM  10    TABLE BY JOHN BOSTIC, ROBERT LEACH, KELLY VOLKAR, FBI SPECIAL

08:55AM  11    AGENT ADELAIDA HERNANDEZ, AND THE PARALEGAL FOR THE U.S.

08:55AM  12    ATTORNEY'S OFFICE, MADDI WACHS.

08:55AM  13              THE COURT:  THANK YOU.  GOOD MORNING.

08:55AM  14         AND WHO APPEARS FOR THE DEFENSE?

08:55AM  15              MR. DOWNEY:  GOOD MORNING, YOUR HONOR.

08:55AM  16         KEVIN DOWNEY FOR MS. HOLMES.  WITH ME ARE MY COLLEAGUES

08:55AM  17    LANCE WADE, KATIE TREFZ, AND ALSO JOHN CLINE.

08:55AM  18         MS. HOLMES IS PRESENT IN COURT TODAY.

08:55AM  19              THE COURT:  THANK YOU.  GOOD MORNING TO EACH OF YOU

08:56AM  20    AS WELL.  GOOD MORNING.  THANK YOU.

08:56AM  21         WE'RE ABOUT TO START THE VOIR DIRE PROCESS FOR THIS TRIAL.

08:56AM  22    OUR JURY HAS NOT BEEN SUMMONED UP YET.  I AM INFORMED, AND I

08:56AM  23    THINK MS. KRATZMANN INFORMED YOU, THAT REGRETTABLY WE HAD SOME

08:56AM  24    FAILURES TO APPEAR THIS MORNING ON OUR PANEL.  AND THAT CAUSES

08:56AM  25    US TO ADJUST OUR CHARTS, DOESN'T IT?
```

08:56AM  1          SO THE JURY IS NOT UP YET, BUT IN ANTICIPATION OF THAT, I

08:56AM  2    THOUGHT I WOULD GO OVER JUST A COUPLE OF THINGS IF I COULD WITH

08:56AM  3    YOU.

08:56AM  4          FIRST OF ALL, I WANTED TO TELL YOU THAT OUR -- YOU KNOW,

08:56AM  5    WE'VE BROKEN UP OUR PANELS IN GROUPS.

08:56AM  6          WE'RE SOCIALLY DISTANCED AS YOU CAN SEE, AND WE WILL DO --

08:56AM  7    I'M INFORMED THAT WE'RE GOING TO DO ONE PANEL A DAY FOR THE

08:56AM  8    JURORS TO COME UP, PROSPECTIVE JURORS TO COME UP.

08:56AM  9          I THINK IN OUR PREVIOUS CONVERSATIONS WE THOUGHT WE MIGHT

08:56AM  10   BE ABLE TO ACCOMPLISH PERHAPS TWO A DAY, BUT I THINK OWING TO

08:56AM  11   THE CRISIS AND THE DESIRE TO MINIMIZE TRAFFIC IN THE

08:57AM  12   COURTHOUSE, WE'RE GOING TO JUST DO ONE PANEL A DAY.

08:57AM  13          SO WE'LL DO OUR FIRST SET OF PROSPECTIVE JURORS TODAY.

08:57AM  14   WE'LL SEE WHERE WE GO.  IT'S POSSIBLE THAT WE COULD FIND SOME

08:57AM  15   MEMBERS OF THE COMMUNITY THAT CAN HEAR THIS CASE TODAY.

08:57AM  16          IF NOT, WE'LL COME BACK TOMORROW WITH THAT SECOND PANEL,

08:57AM  17   AND WE'LL DO THE SAME THING.  THAT AGAIN WOULD BE AT 9:00

08:57AM  18   O'CLOCK TOMORROW.

08:57AM  19          AS YOU KNOW, WE HAVE RESERVED THURSDAY IF WE NEED IT FOR

08:57AM  20   THAT PURPOSE.  WE WILL NOT BE IN SESSION ON FRIDAY.  AT LEAST

08:57AM  21   WE'RE NOT PLANNED TO BE IN SESSION ON FRIDAY.

08:57AM  22          SO I WANT TO LET YOU KNOW THAT.

08:57AM  23          ALSO, AS TO ANY SIDE-BAR DISCUSSIONS, WE TYPICALLY HAVE A

08:57AM  24   MICROPHONE HERE, AND WE DO THEM ON THE SIDE-BAR.  I THINK IT

08:57AM  25   WOULD BE BETTER IF WE HAD OUR SIDE-BAR CONVERSATIONS IN THE

| | | |
|---|---|---|
| 08:57AM | 1 | JURY ROOM, WHICH IS JUST TO MY RIGHT HERE, AND I'VE DONE THAT |
| 08:58AM | 2 | IN OTHER TRIALS THAT I'VE HAD THIS YEAR.  THAT SEEMS TO WORK |
| 08:58AM | 3 | EFFICIENTLY.  OUR COURT REPORTER WILL TAKE HER MACHINE IN |
| 08:58AM | 4 | THERE, AND WE CAN MEET IN THE JURY ROOM AND HAVE ANY SIDE-BAR |
| 08:58AM | 5 | DISCUSSIONS THERE. |
| 08:58AM | 6 | I'LL NOTE THAT, MR. DOWNEY, YOUR CLIENT HAS WAIVED HER |
| 08:58AM | 7 | PARTICIPATION IN ANY SIDE-BAR CONVERSATIONS.  I RECEIVED THE |
| 08:58AM | 8 | STIPULATION YESTERDAY, I BELIEVE, THANK YOU FOR THAT. |
| 08:58AM | 9 | I ALSO WANTED TO CONFIRM THAT I THINK IT WAS YESTERDAY |
| 08:58AM | 10 | THAT I SENT COUNSEL A LIST AFTER I REVIEWED THE QUESTIONNAIRES |
| 08:58AM | 11 | FROM THE JURORS.  I REVIEWED THOSE AGAIN, AND THROUGH |
| 08:58AM | 12 | MS. KRATZMANN I SENT AN EMAIL TO COUNSEL IDENTIFYING A NUMBER |
| 08:58AM | 13 | OF JURORS THAT I'D LIKE YOU TO LOOK AT AGAIN TO CONSIDER ANY |
| 08:58AM | 14 | ACTION THAT YOU WOULD WANT TO TAKE ON THOSE JURORS. |
| 08:58AM | 15 | I WANT TO THANK YOU BOTH.  BOTH SIDES MET AND CONFERRED, |
| 08:59AM | 16 | AND YOU BOTH GOT BACK TO MS. KRATZMANN AND INDICATED SOME |
| 08:59AM | 17 | AGREEMENT AS TO JURORS THAT COULD BE EXCUSED. |
| 08:59AM | 18 | AMONGST THOSE WERE A GROUP OF JURORS THAT HAD INDICATED ON |
| 08:59AM | 19 | THEIR QUESTIONNAIRE THAT THEY HAD NOT, HAD NOT BEEN VACCINATED, |
| 08:59AM | 20 | HAD NOT RECEIVED THEIR COVID VACCINATIONS. |
| 08:59AM | 21 | AND MY UNDERSTANDING IS THAT THE PARTIES STIPULATED TO THE |
| 08:59AM | 22 | USE OF THOSE JURORS.  I JUST WANTED TO CONFIRM THAT WITH YOU |
| 08:59AM | 23 | AND PUT THAT ON THE RECORD. |
| 08:59AM | 24 | THE COVID CRISIS AS WE KNOW IS UNABATED, AND IT CONTINUES |
| 08:59AM | 25 | IN ALL OF OUR COMMUNITIES REGRETTABLY.  WE ARE TAKING STEPS, AS |

| | | |
|---|---|---|
| 08:59AM | 1 | I SAID, WITH OUR PANELS TO REDUCE FOOT TRAFFIC IN THE COURTROOM |
| 08:59AM | 2 | SUCH THAT WE CAN ALL BE SAFE.  OF COURSE, THE MEDICAL |
| 08:59AM | 3 | INFORMATION THAT WE HAVE IS THAT VACCINATION IS ONE OF THE MOST |
| 08:59AM | 4 | IMPORTANT THINGS AN INDIVIDUAL CAN DO TO ENSURE THEIR AND THEIR |
| 08:59AM | 5 | FAMILY AND THE COMMUNITY SAFETY. |
| 09:00AM | 6 | OWING TO THAT AND RECOGNIZING THAT, WE ASKED THAT QUESTION |
| 09:00AM | 7 | ON THE QUESTIONNAIRE.  WE RECEIVED THE INFORMATION FROM THOSE |
| 09:00AM | 8 | JURORS, AND IT SEEMED THAT IT MIGHT BE SOMETHING THAT WE SHOULD |
| 09:00AM | 9 | AT LEAST ADVENTURE WITH COUNSEL.  IT'S GOING TO BE A LONG |
| 09:00AM | 10 | TRIAL, AND I THINK SOME OF THE PEOPLE WHO DID NOT SHOW UP TODAY |
| 09:00AM | 11 | PHONED IN WITH SYMPTOMS, AND WE ADVISED THEM THROUGH OUR JURY |
| 09:00AM | 12 | COMMISSIONER NOT TO COME IN AT ALL JUST OUT OF AN ABUNDANCE OF |
| 09:00AM | 13 | CAUTION.  THAT'S WHAT I BELIEVE THE REASON THAT I RAISE THESE |
| 09:00AM | 14 | NONVACCINATED PROSPECTIVE JURORS. |
| 09:00AM | 15 | I THINK THERE WERE MAYBE TEN.  IT WAS OUT OF THE 200 |
| 09:00AM | 16 | PEOPLE THAT WERE SUMMONED THERE WERE ABOUT 10 THAT WERE NOT |
| 09:00AM | 17 | VACCINATED.  BUT LET ME HEAR FROM THE PARTIES. |
| 09:00AM | 18 | MR. SCHENK. |
| 09:00AM | 19 | MR. SCHENK:  YES.  THANK YOU, YOUR HONOR. |
| 09:01AM | 20 | THE COURT IS CORRECT THAT THE PARTIES MET AND CONFERRED |
| 09:01AM | 21 | AND DISCUSSED THE ISSUE OF RELEASING UNVACCINATED JURORS.  AT |
| 09:01AM | 22 | OUR HEARING LAST WEEK THE COURT ASKED THE PARTIES TO CONSIDER |
| 09:01AM | 23 | THIS, AND THE PARTIES DID MEET AND CONFER OVER IT.  OUR |
| 09:01AM | 24 | UNDERSTANDING IS THAT THE DEFENSE IS REQUESTING IT, AND THE |
| 09:01AM | 25 | GOVERNMENT DOES NOT OPPOSE THAT REQUEST, AND, IN FACT, WE |

09:01AM 1     SUPPORT THAT REQUEST, AND WE APPRECIATE THE COURT MAKING A

09:01AM 2     RECORD ON THIS ISSUE.

09:01AM 3         WE AGREE THAT THE CURRENT COVID CRISIS IN SANTA CLARA

09:01AM 4     COUNTY WOULD PRESENT AN UNDUE HARDSHIP TO UNVACCINATED JURORS,

09:01AM 5     ESPECIALLY DURING A TRIAL OF THIS LENGTH.

09:01AM 6         THE COURT HAS HAD TRIALS DURING THE COVID CRISIS BUT NOT

09:01AM 7     ONE OF THIS LENGTH, AND WE THINK THAT MAKES THE SITUATION

09:01AM 8     DIFFERENT THAN IN SOME PRIOR TRIALS AND IT'S BECAUSE OF THAT

09:01AM 9     UNDUE HARDSHIP PLACED ON UNVACCINATED JURORS AND ASKING THEM TO

09:01AM 10    COME TO COURT FOR SEVERAL MONTHS DURING THE LENGTH OF THIS

09:01AM 11    TRIAL WOULD BE AN UNDUE HARDSHIP, AND, THEREFORE, IT WOULD BE

09:01AM 12    APPROPRIATE TO RELEASE THESE JURORS.

09:01AM 13        I'M HAPPY TO READ OUT THE NUMBERS.  I BELIEVE IT'S NINE

09:02AM 14    JURORS:  22, 98, 100, 103, 151, 183, 199, 218, AND 233.

09:02AM 15            THE COURT:  THANK YOU.  THANK YOU, MR. SCHENK.

09:02AM 16        MR. DOWNEY.

09:02AM 17            MR. DOWNEY:  WELL, FIRST, YOUR HONOR, WE AGREE WITH

09:02AM 18    THE DISMISSAL AND EXCUSAL OF JURORS WHO HAVE NOT YET BEEN

09:02AM 19    VACCINATED FOR THE REASONS THAT I ARTICULATED LAST WEEK, AND I

09:02AM 20    AGREE WITH MR. SCHENK'S IDENTIFICATION OF JURORS WHO HAVE

09:02AM 21    INDICATED IN THE QUESTIONNAIRE THAT THEY HAVE THAT STATUS.

09:02AM 22            THE COURT:  ALL RIGHT.  THANK YOU.  AND YOU AGREE

09:02AM 23    WITH THE REASONS FOR AND THE SAFETY OF ALL OF US IN THE

09:02AM 24    COURTROOM, BUT PARTICULARLY FOR THE JURORS WHO WILL BE SITTING

09:02AM 25    NEXT TO ONE ANOTHER, ALBEIT SOCIALLY DISTANCED, BUT DISTANCED

09:03AM 1    DIFFERENT THAN IN A NORMAL TRIAL, YOU AGREE WITH THAT?

09:03AM 2           MR. DOWNEY:  I DO, YOUR HONOR.  YOU KNOW I

09:03AM 3    ARTICULATED LAST WEEK SOME JURORS WHO REMAIN ON THE PANEL MAY

09:03AM 4    HAVE PARTICULAR CONCERNS THAT I KNOW THE COURT WILL BE

09:03AM 5    SENSITIVE TO AS WE GO THROUGH THE VOIR DIRE PROCESS.

09:03AM 6        SO WE ALSO WILL TRY TO BE SYMPATHETIC WITH RESPECT TO

09:03AM 7    THOSE CONCERNS FOR INDIVIDUAL JURORS WHO HAVE, FOR EXAMPLE,

09:03AM 8    PEOPLE THAT THEY LIVE WITH WHO ARE UNVACCINATED.

09:03AM 9           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

09:03AM 10       AND THIS IS IMPORTANT FOR OUR JURY PANEL BECAUSE -- AND MY

09:03AM 11   SENSE IS THAT THIS WILL PROVIDE THEM SOME REASSURANCE.  I'M

09:03AM 12   GOING TO TALK WITH THE JURORS ABOUT THAT.  BUT THANK YOU.  I'LL

09:03AM 13   RECEIVE YOUR STIPULATION AND AGREEMENT TO THAT AND THANK YOU.

09:03AM 14   THE RECORD WILL SO REFLECT.

09:03AM 15       THE OTHER ITEM I WANTED TO CHAT ABOUT FOR JUST A MOMENT IS

09:03AM 16   VOIR DIRE AND HOW MUCH TIME EACH SIDE SHOULD GET FOR VOIR DIRE,

09:03AM 17   AND THAT IS YOUR TIME TO SPEAK WITH THE JURORS.

09:04AM 18       THOSE OF YOU WHO HAVE TRIED CASES IN MY COURTROOM BEFORE

09:04AM 19   KNOW THAT I TYPICALLY DON'T SAY, AND I THINK I SAID THIS IN OUR

09:04AM 20   PRETRIAL CONFERENCE, IT'S -- I TYPICALLY DON'T GIVE A TIME

09:04AM 21   LIMIT.  I DO SUGGEST IN TRIALS THAT I HAVE THAT THE VOIR DIRE

09:04AM 22   PROCESS CAN BE ACCOMPLISHED IN ABOUT 20 MINUTES, 15,

09:04AM 23   20 MINUTES.  THAT SEEMS TO WORK.  SOMETIMES IT GOES A LITTLE

09:04AM 24   OVER THAT.

09:04AM 25       I WAS THINKING ABOUT IN ANTICIPATION OF YOUR REQUEST FOR

| | | |
|---|---|---|
| 09:04AM | 1 | SOME ADDITIONAL TIME TO ALLOW EACH SIDE ONE HOUR, ONE HOUR OF |
| 09:04AM | 2 | VOIR DIRE, EACH SIDE.  YOU DON'T HAVE TO USE IT.  I KNOW NATURE |
| 09:04AM | 3 | ABHORS A VACUUM, BUT I THINK YOU ALL CAN BE VERY EFFICIENT WITH |
| 09:04AM | 4 | WHAT YOU DO, AND I CERTAINLY HAVE EXPERIENCED THAT THROUGH THE |
| 09:04AM | 5 | COURSE OF THE LITIGATION YOU HAVE SO FAR AND I JUST WANT YOU TO |
| 09:04AM | 6 | KNOW THAT, AND THAT'S THE GUIDELINES I WOULD LIKE TO IMPOSE. |
| 09:04AM | 7 | ANY QUESTIONS ABOUT THAT? |
| 09:04AM | 8 | MR. SCHENK:  NO QUESTIONS, THANK YOU. |
| 09:04AM | 9 | MR. DOWNEY:  NO QUESTIONS ABOUT THE LENGTH, BUT I |
| 09:05AM | 10 | WONDER BECAUSE I HAVE SEEN THAT YOUR HONOR'S PRACTICE IN THE |
| 09:05AM | 11 | PAST HAS VARIED A LITTLE BIT. |
| 09:05AM | 12 | I KNOW YOUR HONOR CONDUCTS VOIR DIRE DIRECTED AT |
| 09:05AM | 13 | INDIVIDUAL JURORS.  WILL IT BE YOUR HONOR'S PREFERENCE THAT WE |
| 09:05AM | 14 | QUESTION JURORS INDIVIDUALLY WHEN YOUR HONOR IS DONE OR SHOULD |
| 09:05AM | 15 | WE WAIT UNTIL THE END TO CONDUCT ALL QUESTIONING? |
| 09:05AM | 16 | THE COURT:  WELL, I'M GOING TO -- THANK YOU FOR |
| 09:05AM | 17 | ASKING THAT.  THE WAY THAT THIS WORKS IS THAT I'LL SPEAK WITH |
| 09:05AM | 18 | THE JURORS, EXCUSE ME, OUR PROSPECTIVE JURORS FIRST, AND I'LL |
| 09:05AM | 19 | ASK MY QUESTIONS FIRST. |
| 09:05AM | 20 | AND THEN YOU'LL HAVE THE OPPORTUNITY TO -- I'M GOING TO DO |
| 09:05AM | 21 | SOMETHING A LITTLE DIFFERENT TODAY.  I SAY THAT WITH SOME |
| 09:05AM | 22 | TREPIDATION, BUT I'M GOING TO -- BEFORE YOU BEGIN TO ASK YOUR |
| 09:05AM | 23 | QUESTIONS, I'VE PLACED QUESTIONNAIRES -- MS. KRATZMANN IS GOING |
| 09:05AM | 24 | TO HAND IT TO YOU.  IT'S JUST A VERY BRIEF SIX QUESTION PAGE |
| 09:05AM | 25 | (HANDING). |

09:05AM  1      AND I THOUGHT THAT JUST OWING TO THIS TRIAL AND

09:06AM  2   CIRCUMSTANCES SURROUNDING IT, I THOUGHT I WOULD ENGAGE THIS FOR

09:06AM  3   EACH JUROR, PROSPECTIVE JUROR, JUST AS AN ICE BREAKER.

09:06AM  4      WHAT I HAVE HANDED YOU IS I SUPPOSE TO ASK EACH

09:06AM  5   PROSPECTIVE JUROR TO ANSWER AN EXAM, AND IT ASKS FOR THEIR

09:06AM  6   ADDRESS, NOT ADDRESS BUT GENERAL BIOGRAPHICAL INFORMATION.  I

09:06AM  7   DO THAT, AS I SAID, AS AN ICE BREAKER FOR THE PROSPECTIVE

09:06AM  8   JURORS, BUT I THINK IT GIVES YOU AN OPPORTUNITY TO HEAR FROM

09:06AM  9   THE PROSPECTIVE JURORS AND THE PANEL I THINK.  SO WE'LL ASK

09:06AM  10  THEM TO DO THAT.

09:06AM  11     I'M NOT GOING TO HAVE THEM STAND.  I THINK EVEN THOSE WHO

09:06AM  12  MIGHT BE SEATED IN THE BACK, I'M HOPEFUL THAT WE'LL BE ABLE TO

09:06AM  13  HEAR THEM.

09:06AM  14     WE DO HAVE THE MICROPHONE.  YOU SEE IT BETWEEN YOUR

09:06AM  15  TABLES.  IF THE JURORS FROM THE BACK WISH TO ADDRESS THE COURT

09:07AM  16  AND WE'RE HAVING SOME DIFFICULTY HEARING THEM, I'LL INVITE THEM

09:07AM  17  TO THAT MICROPHONE.  I THINK WE HAVE A --

09:07AM  18     MS. KRATZMANN, DO WE HAVE A SIMILAR MICROPHONE UP IN THE

09:07AM  19  FRONT OR HAVE WE DECIDED THAT WE CAN TRY TO LISTEN TO OUR

09:07AM  20  JURORS WHO ARE IN THE BOX?

09:07AM  21          THE CLERK:  YOUR HONOR, THE OPTION WOULD BE TO COME

09:07AM  22  TO THE PODIUM WHERE MR. SCHENK IS OR RAISE THEIR VOICES.  WE

09:07AM  23  ONLY HAVE THE PODIUM OR THE MICROPHONE THERE.

09:07AM  24          THE COURT:  THAT'S FINE.  I THINK THAT WILL BE

09:07AM  25  SUFFICIENT.

| | | |
|---|---|---|
| 09:07AM | 1 | ALL RIGHT.  ANY QUESTIONS ABOUT THAT? |
| 09:07AM | 2 | MR. DOWNEY:  TWO QUESTIONS, YOUR HONOR. |
| 09:07AM | 3 | ONE RELATES NOT DIRECTLY TO THAT BUT JURORS WHO WILL BE ON |
| 09:07AM | 4 | PANEL 2 TOMORROW. |
| 09:07AM | 5 | THE COURT:  YES. |
| 09:07AM | 6 | MR. DOWNEY:  THERE'S ONE JUROR WHO IS A 78-YEAR |
| 09:07AM | 7 | OLD-MAN.  HE STATED IN HIS QUESTIONNAIRE THAT HE HAD THE OPTION |
| 09:07AM | 8 | IN COMPLETING THE QUESTIONNAIRE TO CHECK A BOX AND BE |
| 09:07AM | 9 | EXCUSED -- |
| 09:07AM | 10 | THE COURT:  HAD HE KNOWN. |
| 09:07AM | 11 | MR. DOWNEY:  AT THE TIME HE DIDN'T BECAUSE I THINK |
| 09:07AM | 12 | THE SITUATION WITH COVID WAS NOT AS SEVERE AS HE FEARS IT WILL |
| 09:08AM | 13 | BECOME AND AS A LOT OF PUBLIC DISCUSSION INDICATES IT MIGHT |
| 09:08AM | 14 | BECOME, AND HE STATES IN THE QUESTIONNAIRE THAT IF HE WERE |
| 09:08AM | 15 | FILLING THAT QUESTIONNAIRE OUT TODAY HE WOULD INDICATE THAT HE |
| 09:08AM | 16 | WAS OVER 78 AND AUTOMATICALLY BE DISMISSED. |
| 09:08AM | 17 | I WANTED TO JUST NOTIFY THE COURT THAT THE DEFENSE HAS NO |
| 09:08AM | 18 | OBJECTION TO HIS DISMISSAL.  I'VE TOLD MR. SCHENK, AND I'VE |
| 09:08AM | 19 | IDENTIFIED THAT ISSUE TO MR. SCHENK.  THE REASON I RAISE IT IS |
| 09:08AM | 20 | THAT IF THE COURT HAS AN OPPORTUNITY TO REVIEW IT DURING THE |
| 09:08AM | 21 | COURSE OF THE TODAY, AND MR. SCHENK DOES AS WELL, MAYBE WE CAN |
| 09:08AM | 22 | MAKE A DECISION AS TO THAT SO THAT HE DOESN'T HAVE TO APPEAR |
| 09:08AM | 23 | TOMORROW. |
| 09:08AM | 24 | THE COURT:  WELL, I DID READ THAT QUESTIONNAIRE AND |
| 09:08AM | 25 | THAT DID SING OUT TO ME.  I REMEMBER HIS RESPONSE TO THAT |

| | | |
|---|---|---|
| 09:08AM | 1 | QUESTION. |
| 09:08AM | 2 | MR. SCHENK. |
| 09:08AM | 3 | MR. SCHENK:  NO OBJECTION. |
| 09:08AM | 4 | THE COURT:  CAN YOU CALL OUT THE NUMBER, HIS JUROR |
| 09:08AM | 5 | NUMBER? |
| 09:08AM | 6 | MR. DOWNEY:  IT'S 163, YOUR HONOR. |
| 09:08AM | 7 | THE COURT:  THANK YOU.  THANK YOU. |
| 09:08AM | 8 | THEN WE'LL CONTACT JUROR NUMBER 163 AND OFFER HIM AN |
| 09:08AM | 9 | EXCUSAL IF HE WISHES, AND WE'LL EXCUSE HIM.  THANK YOU FOR |
| 09:09AM | 10 | POINTING THAT OUT.  I DID READ THAT AND I WAS -- I DID NOTE IT. |
| 09:09AM | 11 | THANK YOU. |
| 09:09AM | 12 | MR. DOWNEY:  THE SECOND ISSUE IS WITH RESPECT TO THE |
| 09:09AM | 13 | COURT'S REFERENCE TO INDIVIDUAL DISCUSSIONS WITH JURORS.  IN |
| 09:09AM | 14 | GROUP 1 THERE ARE JURORS WHO THEMSELVES HAVE EXPRESSED A |
| 09:09AM | 15 | PREFERENCE TO TALK WITH THE COURT INDIVIDUALLY. |
| 09:09AM | 16 | IN ADDITION TO THAT, THERE ARE SOME JURORS WHO HAVE BEEN |
| 09:09AM | 17 | EXPOSED TO PUBLIC DISCUSSION OF THE CASE IN A WAY THAT WE WOULD |
| 09:09AM | 18 | PREFER QUESTIONING NOT TAKE PLACE IN FRONT OF THE OTHER JURORS. |
| 09:09AM | 19 | I CAN IDENTIFY THOSE JUROR NUMBERS AS WE GO ALONG.  WHAT |
| 09:09AM | 20 | IS THE COURT'S PREFERENCE? |
| 09:09AM | 21 | THE COURT:  WELL, THANK YOU. |
| 09:09AM | 22 | I KNOW WE HAD CONVERSATION ABOUT THIS LAST WEEK, AND YOU |
| 09:09AM | 23 | HAD EXPRESSED YOUR CONCERNS ABOUT THE POTENTIAL OF A |
| 09:09AM | 24 | PROSPECTIVE JUROR CONTAMINATING, TAINTING THE OTHER JURY PANEL. |
| 09:10AM | 25 | I TALK ABOUT THIS IN MY VOIR DIRE, AND I DO INVITE, IF A |

09:10AM  1      JUROR FEELS THAT THEY MIGHT HAVE SOME STRONG OPINIONS THAT

09:10AM  2      MIGHT BE BETTER EXPRESSED PRIVATELY, I CERTAINLY GIVE AN

09:10AM  3      OPPORTUNITY TO DO THAT.

09:10AM  4          I THINK I SPEAK TWO OR THREE TIMES IN MY VOIR DIRE ABOUT

09:10AM  5      THE ABILITY FOR A PARTY TO SPEAK PRIVATELY WITH THE COURT ABOUT

09:10AM  6      ANY MATTER.

09:10AM  7          I'LL CERTAINLY RAISE THAT WITH THEM.

09:10AM  8          AND BE WATCHFUL FOR THAT IF THERE ARE JURORS WHO FOR

09:10AM  9      WHATEVER REASON ON WHATEVER TOPIC FEEL THAT THEY WANT TO HAVE

09:10AM 10      AN INDIVIDUAL CONVERSATION, WE'LL CERTAINLY PROVIDE THAT

09:10AM 11      OPPORTUNITY FOR THEM THAT IS OUTSIDE OF THE PRESENCE OF THEIR

09:10AM 12      OTHER PROSPECTIVE PANEL MEMBERS.

09:10AM 13          NOW, I'LL ALSO WATCH AND SEE --

09:10AM 14          THE CLERK:  I'M SORRY TO INTERRUPT, YOUR HONOR.

09:10AM 15      (DISCUSSION WITH THE JUDGE AND CLERK OFF THE RECORD.)

09:11AM 16          THE COURT:  SO I WILL, WHEN I'M SPEAKING WITH THE

09:11AM 17      JURORS, I WILL BE MINDFUL I WILL START TO -- IF I THINK THE

09:11AM 18      CONVERSATION IS STARTING TO VENTURE SOMEWHERE THAT GETS INTO

09:11AM 19      THAT TERRITORY, I CERTAINLY WILL POLICE THAT, IF YOU WILL.

09:11AM 20          AND IF COUNSEL FEEL -- I KNOW IT'S A LITTLE AWKWARD TO

09:11AM 21      INTERRUPT A PROSPECTIVE JUROR IN YOUR SEATS, AND YOU DON'T WANT

09:11AM 22      TO BE UNTOWARD TOWARDS THEM, BUT I MAY GLANCE YOUR WAY AND

09:11AM 23      YOU'LL SEND ME A SIGN IF YOU THINK IT'S GOING TOO FAR.

09:11AM 24          BUT I DO -- WE TALKED ABOUT WHETHER OR NOT WE SHOULD

09:11AM 25      INDIVIDUALLY SPEAK WITH EACH JUROR, AND I EXPRESSED THAT I

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
| 09:11AM | 1 | DIDN'T THINK THAT THAT WAS NECESSARY.  I THOUGHT THAT THE |
| 09:11AM | 2 | PROTOCOLS THAT WE WERE GOING TO PLACE WOULD BE SUFFICIENT. |
| 09:12AM | 3 | AND LET ME SAY THAT I THINK EVERYONE IS AWARE THAT THERE |
| 09:12AM | 4 | HAS BEEN SOME RECENT PUBLICITY ABOUT THE CASE, AND I INTEND TO |
| 09:12AM | 5 | ASK THE JURORS IF THEY HAVE BEEN EXPOSED TO ANY READING, NEWS, |
| 09:12AM | 6 | ANY PUBLICITY AT ALL SINCE THE TIME THAT THEY HAVE COMPLETED |
| 09:12AM | 7 | THEIR QUESTIONNAIRES AND TO ASK THEM ABOUT THAT. |
| 09:12AM | 8 | SO WE'LL HAVE AN OPPORTUNITY TO PROBE THAT.  THAT MAY |
| 09:12AM | 9 | RAISE SOME OF THESE ISSUES, MR. DOWNEY, THAT YOU'RE SPEAKING |
| 09:12AM | 10 | TO, AND SO WE'LL -- ALL OF US WILL PAY ATTENTION TO THAT. |
| 09:12AM | 11 | MR. DOWNEY:  WELL, I EXPECT THAT WE MAY HAVE THAT |
| 09:12AM | 12 | ISSUE.  OF COURSE WE CAN'T IDENTIFY THOSE PEOPLE NOW, BUT WITH |
| 09:12AM | 13 | RESPECT TO AT LEAST TEN JURORS IN POOL 1 THERE IS EXPOSURE TO |
| 09:12AM | 14 | SUBSTANTIAL NEGATIVE MEDIA.  SOME OF THOSE JURORS THEMSELVES |
| 09:12AM | 15 | HAVE EXPRESSED THE CONCERN THAT THEY HAVE A BIAS.  SO I THINK |
| 09:12AM | 16 | WE KNOW NOW THAT SOME OF THE INFORMATION, IF THEY'RE QUESTIONED |
| 09:13AM | 17 | ABOUT IT, WILL LEAD TO THE POTENTIAL PROBLEM. |
| 09:13AM | 18 | I JUST REQUEST THAT -- OBVIOUSLY WE DISAGREE WITH |
| 09:13AM | 19 | YOUR HONOR'S INTENDED PROCEDURE, BUT WE UNDERSTAND WHERE |
| 09:13AM | 20 | YOUR HONOR IS THINKING IS WITH REGARD TO IT. |
| 09:13AM | 21 | I WAS JUST WONDERING IF IT WOULD BE HELPFUL TO IDENTIFY |
| 09:13AM | 22 | THOSE JURORS. |
| 09:13AM | 23 | THE COURT:  IF YOU WOULD LIKE TO DO THAT FOR THE |
| 09:13AM | 24 | RECORD, MR. DOWNEY, YOU MAY. |
| 09:13AM | 25 | MR. DOWNEY:  YES.  AND ALSO, AS I SAY, THERE ARE |

| | | |
|---|---|---|
| 09:13AM | 1 | THREE INDIVIDUALS, I BELIEVE ONLY ONE OF WHOM HAVE SAID THAT |
| 09:13AM | 2 | EITHER THEY HAVE BEEN VICTIMS OR THEIR FAMILY MEMBERS HAVE BEEN |
| 09:13AM | 3 | VICTIMS IN CRIMES THAT ARE TYPICALLY TREATED SENSITIVELY OR IN |
| 09:13AM | 4 | ONE CASE AN INDIVIDUAL HAS SAID THAT I WOULD LIKE TO SPEAK TO |
| 09:13AM | 5 | THE COURT, AND I COULD IDENTIFY THOSE AS WELL. |

THE COURT:  IF YOU WOULD LIKE TO.

I KNOW THAT WHEN I READ THE QUESTIONNAIRES, THERE WERE AT LEAST IN THIS GROUP, THERE MAY HAVE BEEN ONE, MAYBE MORE.  I KNOW THAT SEVERAL OF OUR PROSPECTIVE JURORS HAVE ASKED TO SPEAK PRIVATELY ABOUT DIFFERENT QUESTIONS, SO I'VE NOTED THAT AS WELL.

MR. DOWNEY:  IN THE CATEGORY OF INDIVIDUALS WHO HAVE EITHER MADE THE REQUEST TO SPEAK TO YOUR HONOR INDIVIDUALLY OR THEY RAISED AN ISSUE THAT SEEMS LIKE IT WOULD BE BETTER DISCUSSED IN PRIVATE ARE JURORS 17, 35, AND 62.

I ACTUALLY HAVEN'T TRACKED IT, YOUR HONOR, SO IF ANY OF THOSE ARE A JUROR THAT DID NOT APPEAR TODAY, I DON'T KNOW.

AND THE INDIVIDUAL JURORS WHO HAVE INDICATED EXPOSURE TO SUBSTANTIAL MEDIA ARE JURORS NUMBER 1, JUROR NUMBER 14, JUROR NUMBER 31, JUROR NUMBER 49, JUROR NUMBER 57, JUROR NUMBER 63, JUROR NUMBER 64, AND JUROR NUMBER 95.

WE WOULD ASK, YOUR HONOR, WITH RESPECT TO ALL OF THOSE JURORS THAT THEY BE QUESTIONED INDIVIDUALLY.  IT IS, IN OUR VIEW, THE PROPER PROCEDURE UNDER THE SILVERTHORNE CASE. YOUR HONOR HAS PREVIOUSLY GIVEN HIS REASONS FOR NOT DOING IT,

09:15AM 1    AND WE UNDERSTAND IT, BUT WE WOULD MAKE THAT REQUEST.

09:15AM 2                THE COURT:  MR. SCHENK?

09:15AM 3                MR. SCHENK:  YOUR HONOR, NOTHING FURTHER ON THAT

09:15AM 4    TOPIC.

09:15AM 5        I DO HAVE TWO SEPARATE QUESTIONS, BUT I'LL DEFER TO THE

09:15AM 6    COURT.

09:15AM 7                THE COURT:  ARE THERE SPECIFIC QUESTIONS THAT YOU

09:15AM 8    BELIEVE SHOULD BE ADVANCED INDIVIDUALLY?

09:15AM 9                MR. DOWNEY:  AS TO THOSE JURORS?

09:15AM 10               THE COURT:  YES.

09:15AM 11               MR. DOWNEY:  I THINK WITH RESPECT TO THE CRIME

09:15AM 12   VICTIMS, I CAN SAY THAT ONE OF THOSE VICTIMS -- ONE OF THOSE

09:15AM 13   INDIVIDUALS REPORTS HAVING A FAMILY MEMBER WHO WAS A VICTIM OF

09:15AM 14   A SEXUAL ASSAULT.  THAT'S JUROR NUMBER 35.

09:15AM 15       ONE OF THOSE JURORS THEMSELVES WAS A VICTIM OF DOMESTIC

09:15AM 16   VIOLENCE, THAT'S 17.

09:15AM 17       AND JUROR NUMBER 62 REPORTS BEING A CRIME VICTIM IN A

09:16AM 18   DIFFERENT CONTEXT AND HAS ASKED TO SPEAK TO YOUR HONOR, BUT

09:16AM 19   THAT JUROR I BELIEVE IS A FAILURE TO APPEAR TODAY.

09:16AM 20       WITH RESPECT TO THE MEDIA, IT'S HARD TO GENERALIZE THE

09:16AM 21   QUESTION, BUT CERTAINLY WHAT WE WANT TO AVOID IN FRONT OF THE

09:16AM 22   JURY IS ANY DISCUSSION OF WHAT THEY'VE LEARNED AND THEIR

09:16AM 23   REACTIONS TO WHAT THEY'VE LEARNED, WHICH WOULD BE THE TYPICAL

09:16AM 24   INQUIRY AS TO BIAS ON ANY ISSUE.

09:16AM 25       SO IN EFFECT, I THINK WE'RE IMPEDED IN MAKING THE NORMAL

09:16AM 1    INQUIRY INTO BIAS ISSUES BECAUSE OF THE CONCERN THAT IT WILL

09:16AM 2    AFFECT THE POOL.

09:16AM 3         THE COURT:  THIS IS, AS YOU KNOW, A QUESTION THAT

09:16AM 4    COMES UP IN EVERY TRIAL.  THERE MIGHT BE -- THE CONCERN AS TO

09:16AM 5    WHETHER ONE RESPONDS MIGHT HAVE A NEGATIVE IMPACT ON A FELLOW

09:16AM 6    PROSPECTIVE JUROR'S ABILITY TO BE FAIR AND IMPARTIAL AND

09:16AM 7    WHETHER IT WILL CHANGE THEIR THOUGHTS IN SOME WAY.  I RECOGNIZE

09:17AM 8    THAT.

09:17AM 9         I THINK OUR QUESTIONNAIRE CAPTURES THIS AREA.  AND IS IT

09:17AM 10   QUESTIONS 36 THROUGH 42 PERHAPS, THAT RANGE?  I THINK IT ASKS

09:17AM 11   THESE MEDIA TYPE QUESTIONS.

09:17AM 12        QUESTION 39 IS THE ONE THAT IS PERHAPS MORE INFORMATIVE ON

09:17AM 13   THIS ISSUE.

09:17AM 14        IT ASKED WHETHER OR NOT AS A RESULT OF ANYTHING THAT THEY

09:17AM 15   HAVE READ, LISTENED TO, SEEN, OR HEARD OF, WHETHER OR NOT THAT

09:17AM 16   WILL -- I'M PARAPHRASING -- WILL IMPAIR THEIR ABILITY TO BE

09:17AM 17   FAIR AND IMPARTIAL.  THAT'S THE QUESTION THAT I THINK WE LOOK

09:17AM 18   AT.  IN SOME OF THESE RESPONSES TO SOME OF THE PROSPECTIVE

09:17AM 19   JURORS THEY HAVE INDICATED THAT IT MAY AND THEY STATE THE

09:17AM 20   REASONS.  OTHERS HAVE SAID NO WITH A CHECK BOX.

09:17AM 21        SO THAT'S PROBABLY AN AREA OF PROBING, MAYBE, THAT YOU'RE

09:17AM 22   SPEAKING TO IN THAT CATEGORY OF QUESTIONS.  I THINK THAT'S.

09:17AM 23        MR. DOWNEY:  I THINK IT'S A PERFECT EXAMPLE,

09:17AM 24   YOUR HONOR.

09:17AM 25        AS YOUR HONOR SAYS, QUESTION 39 ASKS ALL OF THE JURORS IF

09:18AM  1    THEY ARE LIMITED IN THEIR ABILITY TO BE IMPARTIAL, UNBIASSED,

09:18AM  2    AND OBJECTIVE.

09:18AM  3        SEVERAL JURORS HAVE SAID THAT THEY'RE EITHER UNCERTAIN OR

09:18AM  4    THEY PROBABLY CANNOT BE BASED ON THEIR EXPOSURE TO MEDIA.  WHEN

09:18AM  5    THEY ARE ASKED THE QUESTION WHY IS THAT?  MANY JURORS WILL

09:18AM  6    BEGIN TO TALK ABOUT WHAT THEIR EXPERIENCE OF WATCHING OR

09:18AM  7    READING THAT MEDIA HAS BEEN.

09:18AM  8            THE COURT:  AND I THINK YOUR CONCERN -- PARDON ME

09:18AM  9    FOR INTERRUPTING YOU -- BUT YOUR CONCERN MIGHT BE THAT THEY

09:18AM  10   REPEAT, WROTE WHAT THEY'VE HEARD, WHAT THEY'VE SEEN, IF

09:18AM  11   ANYTHING, THOSE TYPES OF THINGS AS OPPOSED TO SAYING I SAW

09:18AM  12   SOMETHING THAT AFFECTED ME, I SAW A RED -- I HEARD SOMETHING

09:18AM  13   THAT AFFECTED ME, AND IT MADE ME -- CAUSED ME TO THINK JUST

09:18AM  14   WHAT I HEARD WITHOUT IDENTIFYING OR QUOTING, I SUPPOSE, FROM

09:18AM  15   THE MATERIAL.  I GUESS THAT'S WHAT I'M TALKING ABOUT.

09:18AM  16       I DON'T THINK WE NEED TO PROBE THE EXACT QUOTE.  WE DON'T

09:18AM  17   NEED SOMEONE TO COME AND GIVE US A REPORT ABOUT WHAT THEY'VE

09:19AM  18   READ, WHAT THEY'VE SEEN.

09:19AM  19           MR. DOWNEY:  WELL, YOUR HONOR -- I'M SORRY.

09:19AM  20           THE COURT:  NO, NO.  GO AHEAD.

09:19AM  21           MR. DOWNEY:  I THINK THE QUESTION IS SIMPLY WHY, WHY

09:19AM  22   DO YOU FEEL THAT YOU MIGHT NOT BE IMPARTIAL?

09:19AM  23       WE DON'T KNOW WHAT A JUROR WILL SAY IN RESPONSE TO THAT.

09:19AM  24           THE COURT:  WE DON'T.  THEY MAY SAY BECAUSE I

09:19AM  25   BELIEVE EVERYTHING THAT I SEE ON TELEVISION.  WE JUST DON'T

09:19AM 1    KNOW, YOU'RE RIGHT.  I APPRECIATE THE CONCERN THAT YOU HAVE.

09:19AM 2    IT'S NOT LOST ON ME.

09:19AM 3        I'M NOT SAYING THAT WE WON'T DO INDIVIDUAL QUESTIONING.

09:19AM 4    IT MAY BE A TIME WHEN -- A TIME WILL COME BASED ON THEIR

09:19AM 5    RESPONSES THAT THAT WOULD BE APPROPRIATE.

09:19AM 6        I GUESS WHAT I'M SAYING IS I WILL BE MINDFUL OF THAT, SIR,

09:19AM 7    AND WE'LL DO THE BEST THAT WE CAN.

09:19AM 8            MR. DOWNEY:  I APPRECIATE THAT YOUR HONOR HAS

09:19AM 9    CONSIDERED THE ISSUE EXTENSIVELY.  I BELIEVE THIS IS THE THIRD

09:19AM 10   OR FOURTH DISCUSSION THAT WE HAVE HAD ABOUT IT, AND I JUST

09:20AM 11   WANTED TO NOTE FOR THE RECORD OUR POSITION.

09:20AM 12           THE COURT:  OF COURSE.

09:20AM 13       MR. SCHENK?

09:20AM 14           MR. SCHENK:  YOUR HONOR, I'M WONDERING WHAT THE LAST

09:20AM 15   JUROR NUMBER IS THAT WE'LL DEAL WITH TODAY.  SOME OF THE JURORS

09:20AM 16   THAT MR. DOWNEY READ OFF TO THE COURT TODAY WENT UP INTO THE

09:20AM 17   90'S, AND I JUST WANT TO KNOW.

09:20AM 18           THE COURT:  LET'S SEE.  I THINK THE LAST JUROR THAT

09:20AM 19   I HAD TODAY WAS 95.

09:20AM 20       IS THAT CORRECT, MS. KRATZMANN?

09:20AM 21           THE CLERK:  JUROR NUMBER 93.

09:20AM 22           THE COURT:  NOW, MS. KRATZMANN HANDED ME A NOTE

09:20AM 23   WHILE WE WERE TALKING, AND JUROR NUMBER 214 IS DOWNSTAIRS NOW.

09:20AM 24   SHE CAME TO OUR COMMISSIONER AND APPARENTLY IS SCHEDULED FOR

09:20AM 25   TOMORROW, AND SHE APPARENTLY HAS BROUGHT TO THE COURT PROOF OF

09:21AM  1    THAT.

09:21AM  2         SHOULD WE EXCUSE JUROR 214.

09:21AM  3              MR. DOWNEY:  IF THE COURT HAS REVIEWED IT AND HAS

09:21AM  4    PROOF, WE HAVE NO OBJECTION.

09:21AM  5              THE COURT:  I HAVE NOT READ IT.  SHE'S DOWNSTAIRS IN

09:21AM  6    THE COMMISSIONER'S OFFICE, AND I'M INFORMED SHE HAS PROOF AND

09:21AM  7    OUR COMMISSIONER --

09:21AM  8              MR. DOWNEY:  I'M CERTAIN WE WILL IF WE CAN JUST TAKE

09:21AM  9    A LOOK.

09:21AM  10              THE COURT:  SURE.  MS. KRATZMANN, CAN YOU HAVE THAT

09:21AM  11    PROOF BROUGHT UP.

09:21AM  12              THE CLERK:  YES, YOUR HONOR.

09:21AM  13              THE COURT:  MR. SCHENK.

09:21AM  14              MR. SCHENK:  THIS JUROR MENTIONED THE SURGERY IN THE

09:21AM  15    QUESTIONNAIRE, AND IT WAS THE THIRD JURY, AND SO IT MUST HAVE

09:21AM  16    BEEN MOVED UP AND WE HAVE NO OBJECTION.

09:21AM  17              THE COURT:  SHOULD WE WAIT TO BRING THIS UP,

09:21AM  18    MR. DOWNEY?

09:21AM  19         DO YOU WANT TO SEE THE -- WHATEVER SHE BROUGHT?

09:21AM  20              MR. DOWNEY:  I THINK IT'S FINE TO EXCUSE HER,

09:21AM  21    YOUR HONOR.

09:21AM  22              THE COURT:  OKAY.  WE WILL EXCUSE HER.  THANK YOU.

09:22AM  23    THANK YOU BOTH.

09:22AM  24         214 IS EXCUSED FOR MEDICAL.

09:22AM  25              THE CLERK:  YOUR HONOR, YES.  WE GO UP TO 95 TODAY.

09:22AM   1              THE COURT:  RIGHT.

09:22AM   2              MR. DOWNEY:  YOUR HONOR, JUST ONE ADDITIONAL

09:22AM   3      QUESTION ABOUT A JUROR.

09:22AM   4              THE COURT:  SURE.

09:22AM   5              MR. DOWNEY:  I THINK THE COURT INDICATED TO US THAT

09:22AM   6      JUROR 119 WAS TO APPEAR TODAY.

09:22AM   7              THE COURT:  MS. KRATZMANN.

09:22AM   8              THE CLERK:  LET ME CONFIRM THAT.

09:22AM   9              MR. SCHENK:  YOUR HONOR, WHILE WE'RE DOING THAT, I

09:22AM  10      THINK AT SOME POINT I'D BE HAPPY TO MAKE A RECORD FOR THE

09:22AM  11      JURORS THAT WERE EXCUSED.  BASED UPON THE AGREEMENT OF THE

09:22AM  12      PARTIES AFTER REVIEWING COMMUNICATION FROM THE COURT YESTERDAY,

09:22AM  13      I DON'T KNOW IF THE COURT WANTS TO DO THAT AT THE END OF THE

09:23AM  14      DAY NOW.

09:23AM  15              THE COURT:  WE CAN DO THAT NOW, SURE.  WE HAVE SOME

09:23AM  16      TIME.

09:23AM  17              THE CLERK:  YES, YOUR HONOR.  JUROR 119 IS HERE

09:23AM  18      TODAY, SO HE WILL FOLLOW JUROR 95.

09:23AM  19              THE COURT:  OKAY.  THANK YOU.

09:23AM  20           (PAUSE IN PROCEEDINGS.)

09:23AM  21              THE COURT:  MR. SCHENK?

09:23AM  22              MR. SCHENK:  WE EXCUSED JUROR NUMBER 30 FOR TRAVEL.

09:23AM  23      WE EXCUSED JUROR NUMBER 32.  THIS JUROR KNOWS YOUR HONOR.

09:23AM  24      WE EXCUSED JUROR 36 FOR CHILD CARE NEEDS.

09:24AM  25      WE EXCUSED 53 FOR HEALTH.

| | | |
|---|---|---|
| 09:24AM | 1 | WE EXCUSED 98 FOR PARENT CARE RESPONSIBILITIES. |
| 09:24AM | 2 | WE EXCUSED JUROR 115 FOR CHILD CARE AND HEALTH. |
| 09:24AM | 3 | WE EXCUSED JUROR 140 FOR HEALTH. |
| 09:24AM | 4 | WE EXCUSED 144 FOR A FINANCIAL HARDSHIP. |
| 09:24AM | 5 | WE EXCUSED 151 FOR HEALTH. |
| 09:24AM | 6 | WE EXCUSED 152 FOR HEALTH. |
| 09:24AM | 7 | WE EXCUSED 170 FOR TRAVEL. |
| 09:25AM | 8 | WE EXCUSED 176 FOR HEALTH OF A FAMILY MEMBER. |
| 09:25AM | 9 | WE EXCUSED 193 AND 194 FOR BIAS. |
| 09:25AM | 10 | AND THEN ON A SECOND LIST WE EXCUSED 39 FOR SCHOOL, A |
| 09:25AM | 11 | UNIVERSITY STUDENT. |
| 09:25AM | 12 | WE EXCUSED JUROR 40 FOR FINANCIAL HARDSHIP. |
| 09:25AM | 13 | WE EXCUSED JUROR 100 FOR FINANCIAL HARDSHIP AND HEALTH. |
| 09:25AM | 14 | WE EXCUSED JUROR 101 FOR WORK OBLIGATIONS AND SCHOOL. |
| 09:25AM | 15 | JUROR 103 FOR HEALTH. |
| 09:25AM | 16 | 109 FOR HEALTH AND FINANCIAL. |
| 09:25AM | 17 | 125 FOR SCHOOL. |
| 09:26AM | 18 | I BELIEVE WE KEPT 127.  I BELIEVE WE DID NOT EXCUSE 127. |
| 09:26AM | 19 | MR. DOWNEY:  THAT'S CORRECT. |
| 09:26AM | 20 | MR. SCHENK:  THAT'S MY NOTES, YES. |
| 09:26AM | 21 | 158 WE EXCUSED FOR SCHOOL COMMITMENTS. |
| 09:26AM | 22 | 168 WE EXCUSED FOR HEALTH AND THE COMMUTE. |
| 09:26AM | 23 | WE EXCUSED 183 FOR TRAVEL. |
| 09:26AM | 24 | WE EXCUSED 212 FOR COMMUTE CHALLENGES. |
| 09:26AM | 25 | 222 WE EXCUSED FOR FINANCIAL HARDSHIP. |

09:26AM  1          233 ALSO FOR FINANCIAL HARDSHIP.

09:26AM  2                  THE COURT:  MR. DOWNEY, DO YOU AGREE WITH THAT?

09:26AM  3                  MR. DOWNEY:  WE CONCUR THAT THOSE JURORS HAVE BEEN

09:26AM  4      AGREED EXCUSALS, YOUR HONOR, AND FOR THE REASONS ARTICULATED BY

09:26AM  5      MR. SCHENK.

09:26AM  6                  THE COURT:  THANK YOU, AND THANK YOU AGAIN FOR THE

09:26AM  7      TIME LOOKING AT THOSE.  I APPRECIATE THAT.  IT SAVES US SOME

09:26AM  8      TIME, AND OF COURSE IT ALLOWED FOR LESS INCONVENIENCE OF THESE

09:27AM  9      PROSPECTIVE JURORS.  THANK YOU FOR THAT.

09:27AM  10          I THINK THAT ACCOMPLISHES EVERYTHING THAT WE NEED TO DO

09:27AM  11     NOW.  WE JUST NEED TO GET OUR FOLKS UP HERE AND THEN WE'LL

09:27AM  12     START THE VOIR DIRE PROCESS.  THAT WILL TAKE A FEW MINUTES.  AS

09:27AM  13     YOU KNOW, WE'VE GOT LIMITED ELEVATORS HERE TO BRING UP THE --

09:27AM  14          HOW MANY WILL THERE BE, MS. KRATZMANN, TOTAL, TODAY?

09:27AM  15                  THE CLERK:  LET ME CONFIRM.

09:27AM  16                  THE COURT:  THAT'S ALL RIGHT.  I THINK YOU SAID IT

09:27AM  17     WAS --

09:27AM  18                  THE CLERK:  ORIGINALLY IT WAS 38.

09:27AM  19                  THE COURT:  IT'S LESS THAN 40, FEWER THAN 40.

09:27AM  20                  MR. DOWNEY:  ACTUALLY, YOUR HONOR, ONE MORE

09:27AM  21     QUESTION.

09:27AM  22                  THE COURT:  SURE.

09:27AM  23                  MR. DOWNEY:  WHERE WOULD YOU PREFER WHERE WE ARE

09:27AM  24     WHEN WE PARTICIPATE IN VOIR DIRE?

09:27AM  25                  THE COURT:  WELL, THAT'S A GOOD QUESTION, WHERE

| | | |
|---|---|---|
| 09:27AM | 1 | SHOULD YOU STAND? |
| 09:28AM | 2 | THE CLERK:  WHEN THEY PRESENT THEIR QUESTIONS, |
| 09:28AM | 3 | YOUR HONOR? |
| 09:28AM | 4 | THE COURT:  I THINK WE'LL HAVE A LECTERN.  WE'LL |
| 09:28AM | 5 | HAVE THE LECTERN HERE.  WE'LL HAVE A LECTERN THAT WE'LL ROLL |
| 09:28AM | 6 | OUT. |
| 09:28AM | 7 | THE CLERK:  IT'S THE BLACK ONE (INDICATING). |
| 09:28AM | 8 | THE COURT:  YES.  IT'S NOT IDEAL.  YOU SEE THE SEATS |
| 09:28AM | 9 | WITH THE SIGNS, LETTERS BEHIND YOU, AND THAT'S WHERE THE |
| 09:28AM | 10 | PROSPECTIVE, BALANCE OF THE PROSPECTIVE JURORS WILL BE. |
| 09:28AM | 11 | IT'S AWKWARD TO SPEAK OVER YOUR COLLEAGUE OPPOSITE'S TABLE |
| 09:28AM | 12 | THERE, BUT THAT'S THE BEST THAT WE CAN DO AS FAR AS A LECTERN. |
| 09:28AM | 13 | I DON'T KNOW WHAT THE PARTIES -- HOW THE PARTIES FEEL |
| 09:28AM | 14 | ABOUT -- WELL, THERE'S NO WAY TO DO IT THAT IS EFFICIENT.  IF |
| 09:28AM | 15 | YOU STAND BY THE MICROPHONE THERE, THEN YOU'RE FAR AWAY FROM |
| 09:28AM | 16 | OUR JURY BOX AND YOU'RE SPEAKING OVER, ONCE AGAIN, COUNSEL |
| 09:28AM | 17 | TABLE. |
| 09:28AM | 18 | WE THOUGHT HAVING THE LECTERN THERE AND PERHAPS IN THE |
| 09:28AM | 19 | ANGLE THAT WE HAVE THERE AND FOCUSSING TO THE AUDIENCE IS ABOUT |
| 09:29AM | 20 | THE BEST THAT WE CAN DO. |
| 09:29AM | 21 | MR. DOWNEY:  THANK YOU, YOUR HONOR.  I RECOGNIZE THE |
| 09:29AM | 22 | PROBLEMS.  WE'LL DO THE BEST THAT WE CAN.  IF MORE IDEAS OCCUR |
| 09:29AM | 23 | TO US, WE'LL LET YOU KNOW. |
| 09:29AM | 24 | THE COURT:  OKAY.  THANK YOU.  ALL RIGHT.  THANKS. |
| 09:29AM | 25 | WE'LL SEE YOU IN A FEW MINUTES.  THANK YOU. |

| | | |
|---|---|---|
| 09:29AM | 1 | THE CLERK:  COURT IS IN RECESS. |
| 09:29AM | 2 | (RECESS FROM 9:29 A.M. UNTIL 10:04 A.M.) |
| 10:04AM | 3 | (PROSPECTIVE JURORS IN AT 10:04 A.M.) |
| 10:04AM | 4 | THE COURT:  THANK YOU.  PLEASE BE SEATED.  THANK YOU |
| 10:04AM | 5 | FOR YOUR COURTESY. |
| 10:04AM | 6 | GOOD MORNING EVERYONE. |
| 10:04AM | 7 | MS. KRATZMANN, I WONDER IF YOU WOULD PLEASE ADMINISTER THE |
| 10:04AM | 8 | OATH, PLEASE, TO OUR PROSPECTIVE JURORS. |
| 10:04AM | 9 | THOSE OF YOU WHO ARE SEATED IN OUR PROSPECTIVE JURY SEATS |
| 10:04AM | 10 | WITH THE LETTERS, IF YOU WOULD PLEASE STAND AND RAISE YOUR |
| 10:04AM | 11 | RIGHT HANDS, PLEASE, OUR COURTROOM DEPUTY HAS A QUESTION FOR |
| 10:04AM | 12 | YOU. |
| 10:04AM | 13 | (PROSPECTIVE JURORS WERE GIVEN THE OATH.) |
| 10:05AM | 14 | PROSPECTIVE JURORS:  YES. |
| 10:05AM | 15 | THE COURT:  THANK YOU VERY MUCH.  PLEASE.  THANK |
| 10:05AM | 16 | YOU.  GOOD MORNING AGAIN, LADIES AND GENTLEMEN. |
| 10:05AM | 17 | I APOLOGIZE FOR THE DELAY THIS MORNING.  BUT, LADIES AND |
| 10:05AM | 18 | GENTLEMEN, YOU HAVE BEEN SUMMONED BY THIS COURT FOR JURY |
| 10:05AM | 19 | SERVICE IN A CRIMINAL CASE ENTITLED UNITED STATES OF AMERICA |
| 10:05AM | 20 | VERSUS ELIZABETH HOLMES. |
| 10:05AM | 21 | IN THIS CASE THE DEFENDANT ELIZABETH HOLMES IS CHARGED |
| 10:05AM | 22 | WITH WIRE FRAUD AND CONSPIRACY TO COMMIT WIRE FRAUD.  THE |
| 10:05AM | 23 | INDICTMENT ALLEGES THAT MS. HOLMES WAS THE CHIEF EXECUTIVE |
| 10:05AM | 24 | OFFICER, OR CEO, OF THERANOS INCORPORATED WHICH WAS IN THE |
| 10:05AM | 25 | BLOOD TESTING BUSINESS. |

10:05AM 1    THE INDICTMENT ALLEGES THAT THE DEFENDANT AND

10:05AM 2  RAMESH "SUNNY" BALWANI, THERANOS'S CHIEF OPERATING OFFICER, OR

10:06AM 3  COO, AND PRESIDENT, KNOWINGLY AND INTENTIONALLY DEVISED A

10:06AM 4  SCHEME OR PLAN TO DEFRAUD INVESTORS IN THERANOS AND PAYING

10:06AM 5  CUSTOMERS OF THERANOS.

10:06AM 6    THE CHARGES ARE ONLY ALLEGATIONS AND ARE NOT EVIDENCE.

10:06AM 7  THE DEFENDANT HAS ENTERED A PLEA OF NOT GUILTY TO ALL OF THE

10:06AM 8  CHARGES AND IS PRESUMED TO BE INNOCENT.  IT WILL BE THE

10:06AM 9  RESPONSIBILITY OF THE GOVERNMENT THROUGH THE TRIAL TO PROVE

10:06AM 10  THESE CHARGES BEYOND A REASONABLE DOUBT.

10:06AM 11    THE INDICTMENT ALLEGES IN COUNTS ONE AND TWO THAT

10:06AM 12  MS. HOLMES VIOLATED 18 UNITED STATES CODE SECTION 1349,

10:06AM 13  CONSPIRACY TO COMMIT WIRE FRAUD.

10:06AM 14    AND IN COUNTS THREE, FOUR, FIVE, SIX, SEVEN, EIGHT, NINE,

10:06AM 15  TEN, ELEVEN, AND TWELVE, WITH WIRE FRAUD IN VIOLATION OF UNITED

10:07AM 16  STATES CODE SECTION 1343.

10:07AM 17    NOW, THE INDICTMENT IS NOT EVIDENCE OF ANY KIND.  IT IS

10:07AM 18  THE CHARGING DOCUMENT THAT IS FILED IN THIS CASE.

10:07AM 19    TO THESE CHARGES MS. HOLMES HAS PLEADED NOT GUILTY, AND

10:07AM 20  THIS IS AN ABSOLUTE DENIAL OF THE CHARGES.  IT WILL BE THE

10:07AM 21  PURPOSE OF THIS TRIAL FOR YOU TO DETERMINE IF THE GOVERNMENT

10:07AM 22  HAS MET THEIR BURDEN IN PRESENTING THEIR CASE TO YOU.

10:07AM 23    NOW, BEFORE WE BEGIN, I WANT TO TALK WITH YOU A LITTLE BIT

10:07AM 24  ABOUT JURY SERVICE.  IT'S VERY IMPORTANT, AND AGAIN, I WELCOME

10:07AM 25  YOU TO THE COURT AND I THANK YOU AGAIN FOR YOUR SERVICE.

10:07AM  1        NOW, I'D LIKE TO EXPLAIN AND DESCRIBE FOR YOU HOW THE

10:07AM  2    TRIAL WILL GO AND BE CONDUCTED, AND WHAT YOU, AND I, AND THE

10:07AM  3    LAWYERS WILL BE DOING.

10:07AM  4        NOW, FIRST OF ALL, WHEN I REFER TO THE GOVERNMENT, I MEAN

10:07AM  5    MR. ROBERT LEACH, MS. KELLY VOLKAR, MR. JOHN BOSTIC, AND

10:07AM  6    MR. JEFF SCHENK WHO ARE THE ASSISTANT UNITED STATES ATTORNEYS

10:08AM  7    PROSECUTING THIS CASE.

10:08AM  8        MR. LEACH, WOULD YOU INTRODUCE YOUR TEAM, PLEASE?

10:08AM  9            MR. LEACH:  THANK YOU, YOUR HONOR, YES.

10:08AM 10        GOOD MORNING, EVERYONE.  MY NAME IS ROBERT LEACH.  WITH ME

10:08AM 11    IS JOHN BOSTIC, JEFF SCHENK, KELLY VOLKAR.

10:08AM 12        TO MY RIGHT IS SPECIAL AGENT ADDY HERNANDEZ WITH THE FBI,

10:08AM 13    AND SEATED AT THE TABLE HERE IS MADDI WACHS, WHO IS A PARALEGAL

10:08AM 14    IN MY OFFICE.  GOOD MORNING EVERYBODY.

10:08AM 15            THE COURT:  THANK YOU.

10:08AM 16        WHEN I REFER TO DEFENSE COUNSEL I MEAN MR. KEVIN DOWNEY,

10:08AM 17    MR. LANCE WADE, MS. AMY SAHARIA, WHO I DON'T BELIEVE IS WITH US

10:08AM 18    TODAY, MS. KATHERINE TREFZ, WHO ARE THE ATTORNEYS REPRESENTING

10:08AM 19    MS. HOLMES.

10:08AM 20        WOULD YOU PLEASE INTRODUCE YOUR TEAM, MR. DOWNEY?

10:08AM 21            MR. DOWNEY:  GOOD MORNING, YOUR HONOR.

10:08AM 22        GOOD MORNING, LADIES AND GENTLEMEN.  MY NAME IS

10:08AM 23    KEVIN DOWNEY AND I REPRESENT THE DEFENDANT IN THIS CASE,

10:08AM 24    ELIZABETH HOLMES, WHO IS SEATED AT COUNSEL TABLE.

10:09AM 25        AS YOUR HONOR SAYS, THERE ARE A FEW COUNSEL ASSISTING IN

```
10:09AM   1    THAT EFFORT.
10:09AM   2          THIS IS MR. LANCE WADE, THIS IS MS. KATHERINE TREFZ, AND
10:09AM   3    THIS IS MR. JOHN CLINE WHO SERVES WITH US AS COCOUNSEL IN THE
10:09AM   4    CASE.
10:09AM   5          SEATED AT THE TABLE IS MS. ELIZABETH HOLMES, WHO YOU WILL
10:09AM   6    BE HEARING ABOUT THROUGHOUT THE TRIAL.
10:09AM   7          THANK YOU FOR BEING HERE.
10:09AM   8             THE COURT:  THANK YOU, MR. DOWNEY.
10:09AM   9          I APOLOGIZE, MR. CLINE.  I DIDN'T SEE YOU HIDDEN IN THE
10:09AM  10    CORNER THERE.  I'M SORRY, SIR.
10:09AM  11          LADIES AND GENTLEMEN, I THINK YOU'VE RECEIVED A SCHEDULE,
10:09AM  12    AND THIS CASE IS EXPECTED TO TAKE APPROXIMATELY 13 WEEKS OF
10:09AM  13    EVIDENCE IN COURT.  IT COULD BE A BIT LONGER.
10:09AM  14          THIS MORNING WE WILL BEGIN SELECTING JURORS WHO WILL SIT
10:09AM  15    TO HEAR THIS CASE.  THIS PROCESS INVOLVES INTERVIEWING SEPARATE
10:09AM  16    PANELS OF POTENTIAL JURORS OVER THE COURSE OF TODAY AND PERHAPS
10:09AM  17    TOMORROW.
10:09AM  18          AFTER OUR SESSION TODAY, YOU WILL BE PERMITTED TO LEAVE
10:10AM  19    THE COURTHOUSE.  YOU WILL BE NOTIFIED BY THE COURT WHETHER AND
10:10AM  20    WHEN YOU SHOULD RETURN TO THE COURTHOUSE.
10:10AM  21          WE'LL THEN RETURN TO COMPLETE THIS PROCESS AND WE WILL
10:10AM  22    THEN BEGIN THE TRIAL ONCE WE HAVE A JURY.
10:10AM  23          YOU SEE THE SCHEDULES ON YOUR SEATS, AND ACCORDING TO THIS
10:10AM  24    SCHEDULE, JURY DELIBERATIONS ARE ANTICIPATED TO BEGIN THE FIRST
10:10AM  25    OR SECOND WEEK OF DECEMBER.  IT COULD BE SOONER.  THESE ARE ALL
```

10:10AM  1    APPROXIMATIONS.

10:10AM  2        THIS MAY CHANGE, AND, OF COURSE, I'LL KEEP YOU INFORMED AS

10:10AM  3    TO OUR SCHEDULE.

10:10AM  4        NOW, AS YOU SAW IN THE QUESTIONNAIRES THAT YOU FILLED

10:10AM  5    OUT -- AND LET ME THANK YOU FOR COMING IN AND FILLING OUT THOSE

10:10AM  6    QUESTIONNAIRES.  THEY'RE VERY HELPFUL TO US.

10:10AM  7        OUR PROPOSED DAYS IN COURT WILL BE ON TUESDAYS,

10:10AM  8    WEDNESDAYS, AND FRIDAYS, POTENTIALLY FROM 9:00 A.M. TO

10:10AM  9    2:00 P.M.

10:10AM 10        NOW, IT MAY BE THAT WE CHANGE THAT SCHEDULE TO ADD SOME

10:11AM 11    TIME AND CHANGE DAYS AND I, OF COURSE, WILL DISCUSS THIS WITH

10:11AM 12    YOU IN ADVANCE OF ANY CHANGE.

10:11AM 13        I ANTICIPATE, ACCORDING TO THIS SCHEDULE NOW, THAT WE'LL

10:11AM 14    TAKE ONE BREAK OF PERHAPS 30 TO 45 MINUTES, AND WE MAY TAKE

10:11AM 15    SHORTER BREAKS IF APPROPRIATE AND AS NEEDED.

10:11AM 16        NOW, BECAUSE OF THE LENGTH OF OUR TRIAL, THIS SCHEDULE

10:11AM 17    HOPES TO ACCOMPLISH THE TAKING OF EVIDENCE IN THE TRIAL AND

10:11AM 18    AVOID THE STRESS AND FATIGUE THAT MIGHT ARISE FROM AN ALL-DAY

10:11AM 19    EVERY DAY SCHEDULE.  THAT IS THE NORM FOR SHORTER TRIALS.

10:11AM 20        NOW, WE ARE CONDUCTING OUR CASE IN THE MIDST OF THE COVID

10:11AM 21    CRISIS, AND I WANT TO TELL YOU THAT'S ANOTHER REASON WHY I

10:11AM 22    SHORTENED THE SCHEDULE TO ALLOW FOR US -- AND I'LL TALK ABOUT

10:11AM 23    THAT IN A MOMENT -- TO ALLOW FOR US TO HAVE AS LIMITED TIME AS

10:11AM 24    WE CAN, BUT YET TO EFFICIENTLY PROGRESS WITH THE COURT AND THE

10:11AM 25    TRIAL.

| | | |
|---|---|---|
| 10:11AM | 1 | NOW, I ALSO REALIZE THERE ARE OCCASIONS WHEN SOMEONE MAY |
| 10:12AM | 2 | NEED TO TAKE AN UNSCHEDULED BREAK FOR SOME REASON. |
| 10:12AM | 3 | IF YOU'RE SEATED AS A JUROR IN THIS CASE AND IF YOU OR |
| 10:12AM | 4 | ANYONE NEEDS TO TAKE A BREAK FOR WHATEVER REASON, PLEASE LET ME |
| 10:12AM | 5 | KNOW AND WE CAN ACCOMPLISH THAT WITH A RECESS. |
| 10:12AM | 6 | NOW, LADIES AND GENTLEMEN, AS TO THE TRIAL, THE FIRST STEP |
| 10:12AM | 7 | IN THE TRIAL FOLLOWING THE SELECTION OF THE JURY IS THE |
| 10:12AM | 8 | GOVERNMENT'S OPENING STATEMENT.  THE DEFENSE MAY CHOOSE TO GIVE |
| 10:12AM | 9 | AN OPENING STATEMENT FOLLOWING THE GOVERNMENT OR AT THE |
| 10:12AM | 10 | BEGINNING OF THE DEFENSE CASE. |
| 10:12AM | 11 | THE PURPOSE OF AN OPENING STATEMENT IS TO GIVE YOU AND |
| 10:12AM | 12 | PROVIDE YOU AN OVERVIEW OF WHAT THE ATTORNEYS EXPECT THE |
| 10:12AM | 13 | EVIDENCE WILL SHOW. |
| 10:12AM | 14 | NEXT, THE GOVERNMENT WILL OFFER THEIR EVIDENCE.  EVIDENCE |
| 10:12AM | 15 | USUALLY INCLUDES WITNESSES' TESTIMONY AND EXHIBITS. |
| 10:12AM | 16 | AFTER THE GOVERNMENT PRESENTS THEIR EVIDENCE, THE DEFENSE |
| 10:12AM | 17 | MAY ALSO PRESENT EVIDENCE, BUT IS NOT REQUIRED TO DO SO. |
| 10:13AM | 18 | BECAUSE MS. HOLMES IS PRESUMED TO BE INNOCENT, SHE DOES |
| 10:13AM | 19 | NOT HAVE TO PROVE THAT SHE IS NOT GUILTY. |
| 10:13AM | 20 | NOW, YOU'VE SEEN ON YOUR CHARTS AND YOUR QUESTIONNAIRES A |
| 10:13AM | 21 | LIST OF WITNESSES. |
| 10:13AM | 22 | COUNSEL, CAN I GET AGREEMENT FROM YOU THAT I NEED NOT READ |
| 10:13AM | 23 | THE ENTIRETY OF THE WITNESS LIST ON THE RECORD NOW, BUT I CAN |
| 10:13AM | 24 | REFER AND ASK THE JURORS TO LOOK AT THAT LIST? |
| 10:13AM | 25 | MR. DOWNEY:  THE DEFENSE AGREES, YOUR HONOR. |

| | | |
|---|---|---|
| 10:13AM | 1 | MR. SCHENK:  SO AGREED. |
| 10:13AM | 2 | THE COURT:  THANK YOU. |
| 10:13AM | 3 | LADIES AND GENTLEMEN, IN CASES -- IN TRIALS IT'S QUITE |
| 10:13AM | 4 | NORMAL FOR ME TO READ THE WITNESS LIST OUT.  AS YOU SEE IN THE |
| 10:13AM | 5 | INFORMATION YOU HAVE, THE WITNESS, THE PROPOSED WITNESS LIST IS |
| 10:13AM | 6 | QUITE LONG.  I DO WANT YOU TO LOOK AT IT AND TO REFER TO IT, |
| 10:13AM | 7 | AND I KNOW YOU DID THIS WHEN YOU FILLED OUT THE QUESTIONNAIRE |
| 10:13AM | 8 | AND ANSWERED ONE OF THE QUESTIONS THAT ASKED IF YOU KNEW OR |
| 10:13AM | 9 | WERE FAMILIAR WITH ANYONE ON THAT LIST. |
| 10:13AM | 10 | BUT PLEASE TAKE A MOMENT TO REVIEW THAT LIST NOW, IF YOU |
| 10:13AM | 11 | WOULD, PLEASE. |
| 10:14AM | 12 | WHILE YOU'RE DOING THAT, I SHOULD TELL YOU THAT THE |
| 10:14AM | 13 | PARTIES ARE NOT REQUIRED AND MIGHT NOT WISH TO CALL ALL OF |
| 10:14AM | 14 | THESE WITNESSES AND THEY MAY FIND IT NECESSARY TO CALL OTHER |
| 10:14AM | 15 | WITNESSES. |
| 10:14AM | 16 | NOW, IT MAY OCCUR THAT THE PARTIES STIPULATE TO A |
| 10:14AM | 17 | WITNESS'S TESTIMONY OR AN EXHIBIT.  THIS MEANS THAT THE PARTIES |
| 10:14AM | 18 | HAVE AGREED THAT THE STATEMENT, THE TESTIMONY, OR THE EXHIBIT |
| 10:14AM | 19 | MAY BE INTRODUCED INTO EVIDENCE. |
| 10:14AM | 20 | AFTER THE JURY HAS HEARD ALL OF THE EVIDENCE AND AFTER THE |
| 10:14AM | 21 | ATTORNEYS HAVE GIVEN THEIR FINAL ARGUMENTS, I WILL THEN |
| 10:14AM | 22 | INSTRUCT YOU ON THE LAW THAT APPLIES TO THE CASE. |
| 10:14AM | 23 | AFTER YOU HAVE HEARD THE ARGUMENTS AND THE INSTRUCTIONS, |
| 10:14AM | 24 | YOU WILL THEN RETIRE TO THE JURY ROOM TO DELIBERATE THE MERITS |
| 10:14AM | 25 | OF THE CASE AND THEN TO RETURN WITH YOUR FINDINGS. |

10:15AM  1    NOW, JURY SERVICE IS AN OBLIGATION.  IT MAY BE

10:15AM  2  INCONVENIENT TO YOU, BUT I HOPE YOU VIEW IT AS A PRIVILEGE TO

10:15AM  3  SERVE YOUR COMMUNITY AND TO PARTICIPATE IN YOUR SYSTEM OF

10:15AM  4  JUSTICE.

10:15AM  5    WE ALL KNOW AND WE'RE SENSITIVE TO THE FACT THAT NONE OF

10:15AM  6  YOU ARE HERE BECAUSE YOU HAVE NOTHING ELSE TO DO WITH YOUR

10:15AM  7  TIME, OR PERHAPS THAT YOU VOLUNTEERED FOR JURY DUTY OUT OF THE

10:15AM  8  GOODNESS OF YOUR HEARTS.

10:15AM  9    I RECOGNIZE THAT JURY SERVICE IS AN IMPOSITION ON EACH OF

10:15AM  10  YOU.  THIS SERVICE TAKES YOU FROM THOSE WHO NEED YOU AND RELY

10:15AM  11  ON YOU AT YOUR WORKPLACES AND AT YOUR HOMES.

10:15AM  12    FOR MANY OF US WORKING IN THE JUSTICE SYSTEM TRYING TO

10:15AM  13  IMPROVE THE QUALITY OF JUSTICE WHILE MAINTAINING FAIRNESS

10:15AM  14  ACROSS THE BOARD IS A CHALLENGE.  IT'S A CHALLENGE TO DELIVER

10:15AM  15  ON THE PROMISE OF A JURY OF ONE'S PEERS, A TRUE CROSS-SECTION

10:15AM  16  OF OUR COMMUNITY, TO EVERYONE, EXCUSE ME, WHO ENTERS OUR

10:16AM  17  COURTS.

10:16AM  18    IT'S A PROMISE THAT WE ENDEAVOR TO FULFILL AS WE RECOGNIZE

10:16AM  19  WE OURSELVES WOULD RELY ON THAT PROMISE IF WE WERE EVER TO COME

10:16AM  20  INTO THE JUSTICE SYSTEM AS A PARTY.

10:16AM  21    OUR CONSTITUTION GUARANTEES THE RIGHT TO A JURY TRIAL AND

10:16AM  22  THAT IS THE BASIS FOR ALL OF OUR OBLIGATIONS, YOURS AS WELL AS

10:16AM  23  MINE, TO SERVE AS JURORS.

10:16AM  24    I SHOULD LET YOU KNOW I GET CALLED AS A JUROR.  I WAS

10:16AM  25  SUMMONED ABOUT TWO OR THREE MONTHS AGO TO SERVE AS A JUROR IN A

10:16AM  1    CASE IN MY COMMUNITY.  SO JUDGES ARE NOT IMMUNE FROM THE

10:16AM  2    SERVICE.

10:16AM  3         YOU KNOW, FOR SOME REASON, REGRETTABLY I HAVE NEVER BEEN

10:16AM  4    SELECTED AS A JUROR.  I JUST DON'T UNDERSTAND THAT.

10:16AM  5         (LAUGHTER.)

10:16AM  6           THE COURT:  BUT MAYBE ONE DAY.

10:16AM  7         AND LET'S REFLECT FOR JUST A MOMENT.  IT IS SIGNIFICANT

10:16AM  8    NOW TO PARTICIPATE IN YOUR SERVICE SO OUR COMMUNITY, OUR

10:16AM  9    COUNTRY, AND REALLY THE WORLD CAN OBSERVE THAT EVEN DURING THE

10:16AM  10   CHALLENGE OF A PANDEMIC OUR COURTS ARE OPEN AND OUR SYSTEM,

10:17AM  11   YOUR SYSTEM OF JUSTICE ENDURES.

10:17AM  12        NOW, I WANT TO TAKE JUST A MOMENT.  I'VE TALKED ABOUT THE

10:17AM  13   COVID PROTOCOLS.  I WOULD LIKE TO SHARE WITH YOU, AND I HOPE

10:17AM  14   THIS GIVES YOU SOME COMFORT.

10:17AM  15        FIRST OF ALL, WE WILL STRIVE TO ENSURE YOUR PROTECTION,

10:17AM  16   SAFETY, AND GOOD HEALTH.  WE WILL ENGAGE DISTANCING AND FACE

10:17AM  17   MASKS AS YOU HAVE SEEN.

10:17AM  18        NOW, IF YOU ARE VACCINATED, OUR MEDICAL INFORMATION

10:17AM  19   INFORMS THAT THAT FACT SIGNIFICANTLY ENHANCES YOUR SAFETY.

10:17AM  20        NOW, PARTIES IN COURT WILL WEAR MASKS.  WITNESSES AND

10:17AM  21   PARTIES MAY BE ABLE TO REMOVE THEIR MASKS OR WEAR A CLEAR FACE

10:17AM  22   SHIELD WHEN THEY'RE TESTIFYING HERE.

10:17AM  23        YOU HAVE SEEN THE PLEXIGLASS THAT WE'VE ALSO ENGAGED.

10:17AM  24        WE WILL HAVE AIR PURIFIERS, THERE'S ONE AT THE WITNESS

10:18AM  25   STAND NOW, AND WE'LL HAVE ONE AT EACH COUNSEL TABLE.  THOSE

| | | |
|---|---|---|
| 10:18AM | 1 | HAVEN'T ARRIVED YET, BUT WE EXPECT TO HAVE THOSE SOON. |
| 10:18AM | 2 | WE MAY BE ABLE TO PROVIDE ANOTHER AIR PURIFIER SHOULD THE |
| 10:18AM | 3 | NEED BE REQUESTED NEAR THE JURY BOX, SO KEEP THAT IN MIND. |
| 10:18AM | 4 | I'D LIKE TO TALK A LITTLE BIT ABOUT OUR BUILDING HERE. |
| 10:18AM | 5 | THIS COURTHOUSE IS QUITE OLD. HISTORICALLY WE THOUGHT WE WOULD |
| 10:18AM | 6 | GET A NEW COURTHOUSE ABOUT 15, 18 YEARS AGO. UNFORTUNATELY |
| 10:18AM | 7 | THOSE EFFORTS FELL SHORT. CONGRESS, HOWEVER, DID PROVIDE THE |
| 10:18AM | 8 | COURT WITH SOME MONEY TO PURCHASE A LAND SITE, SITE ACQUISITION |
| 10:18AM | 9 | MONEY. IT WAS ABOUT $10 MILLION AT THAT TIME. |
| 10:18AM | 10 | UNFORTUNATELY, CONGRESS DECIDED THEY WEREN'T GOING TO |
| 10:18AM | 11 | BUILD A NEW COURTHOUSE HERE IN SAN JOSE, BUT THEY DID ALLOW US |
| 10:18AM | 12 | TO KEEP THE MONEY. |
| 10:18AM | 13 | I SHOULD TELL YOU ABOUT FOUR YEARS AGO, I THINK ABOUT 7 OR |
| 10:18AM | 14 | 8 MILLION OF THOSE DOLLARS WERE SPENT ON THE COURTHOUSE. SOME |
| 10:19AM | 15 | OF IT WAS SPENT ON OUR ENTRYWAY, PUTTING NEW GLASS IN, THAT |
| 10:19AM | 16 | NICE WOOD PANELING THAT YOU SAW AND ENJOYED ON YOUR WAY IN, |
| 10:19AM | 17 | SOME OF THE MONEY WAS SPENT THERE. |
| 10:19AM | 18 | BUT I HAVE TO BE HONEST, THE MAJORITY OF THE MONEY WAS |
| 10:19AM | 19 | SPENT ON SOMETHING THAT YOU CANNOT SEE. IT'S ON OUR ROOF. WE |
| 10:19AM | 20 | HAVE A NEW HVAC SYSTEM. AND I'M TOLD YOU'RE THE TAXPAYERS, |
| 10:19AM | 21 | THANK YOU VERY MUCH FOR SPENDING $7 MILLION ON OUR HVAC SYSTEM, |
| 10:19AM | 22 | AND IT SITS ABOVE US NOW AND I WANT TO TALK ABOUT THAT. WE |
| 10:19AM | 23 | HAVE UPGRADED THIS SYSTEM TO MERV 14 FILTRATION. NOW, THE |
| 10:19AM | 24 | CURRENT GUIDANCE TELLS THAT WE SHOULD INSTALL A NEW |
| 10:19AM | 25 | CONSTRUCTION MERV 13 OR BETTER, SO WE HAVE MERV 14 FILTRATION |

10:19AM  1    IN THIS COURTHOUSE.

10:19AM  2        THIS SYSTEM IS ALSO -- UNFORTUNATELY, AS WE EXPERIENCE

10:19AM  3    NOW, THE SMOKE FROM WILD FIRES, THIS SYSTEM IS EXCELLENT AT

10:19AM  4    FILTERING THOSE -- AIR THAT COME FROM THOSE FIRES.

10:20AM  5        NOW, I MADE AN INQUIRY ABOUT CIRCULATION IN MY COURTROOM,

10:20AM  6    THIS COURTROOM THAT YOU'RE IN, AND I'M INFORMED THAT THE AIR IN

10:20AM  7    THIS COURTROOM CIRCULATES AT A RATE OF -- IT'S CALLED ACH --

10:20AM  8    ACH 6.3, WHICH IS AIR CHANGES PER HOUR.

10:20AM  9        NOW, WHAT THAT MEANS IS THAT THE AIR IS COMPLETELY

10:20AM 10    CIRCULATED IN THIS COURTROOM APPROXIMATELY EVERY TEN MINUTES.

10:20AM 11    IT'S A GOOD SYSTEM.  SO OUR AIR CIRCULATES, IT GOES THROUGH OUR

10:20AM 12    MERV 14 FILTERS, AND I JUST WANT YOU TO KNOW THAT THIS IS AS

10:20AM 13    SAFE AS WE CAN ACCOMPLISH IT WITH OUR HVAC SYSTEM.  I HOPE THAT

10:20AM 14    PROVIDES YOU SOME COMFORT.

10:20AM 15        THE SYSTEM RUNS TWO HOURS PRE AND POST OCCUPANCY.  THAT

10:20AM 16    MEANS WE START IT UP ABOUT 5:00 A.M. TO GET THE AIR CIRCULATED,

10:20AM 17    AND IT SHUTS DOWN ABOUT TWO HOURS AFTER CLOSING TIME, THAT IS

10:20AM 18    ABOUT 7:00 P.M.

10:20AM 19        NOW, GSA, THE GENERAL SERVICE ADMINISTRATION, THEY ARE

10:21AM 20    RESPONSIBLE FOR OUR BUILDING AND THEY HAVE ADOPTED CLEANING

10:21AM 21    GUIDELINES FROM THE CENTER FOR DISEASE CONTROL, THE CDC, AND

10:21AM 22    THESE INCLUDE ROUTINE CLEANING AND DISINFECTION OF HIGH TOUCH

10:21AM 23    SERVICES AND COMMON AND HIGH TRAFFIC AREAS.

10:21AM 24        WE HAVE FACE MASKS AND SANITIZERS TO PROVIDE YOU AS

10:21AM 25    NEEDED, SO PLEASE FEEL FREE TO REQUEST THAT FROM STAFF SHOULD

10:21AM 1      YOU NEED SOMETHING.

10:21AM 2          NOW, THE SCHEDULE I TALKED TO YOU ABOUT, OUR SCHEDULE

10:21AM 3      SEEKS TO KEEP THE TIME IN COURT SPACE SO AS NOT TO SIT MORE

10:21AM 4      THAN TWO HOURS A TIME, AT LEAST INITIALLY.  WE'LL TRY TO SPACE

10:21AM 5      BREAKS WITH AS MUCH FREQUENCY AS POSSIBLE WHILE ENSURING THE

10:21AM 6      EFFICIENT AND ORDERLY TRIAL PROCESS TO PROCEED.

10:21AM 7          NOW, THE JURY ROOM FOR DELIBERATING JURORS AND DURING

10:21AM 8      BREAKS, YOU WILL HAVE, AS JURORS, THE ENTIRETY OF MY

10:21AM 9      COLLEAGUE'S COURTROOM NEXT DOOR, NOT JUST THE SMALL JURY ROOM,

10:21AM 10     BUT THE ENTIRE COURTROOM WILL BE AVAILABLE TO YOU FOR YOUR

10:22AM 11     DELIBERATIONS, AND THIS WILL ALLOW DISTANCING DURING YOUR

10:22AM 12     MEETING AND DELIBERATIONS.

10:22AM 13         WE'VE ALSO ARRANGED FOR SOME LIGHT BREAKFAST ITEMS, FRUIT,

10:22AM 14     ROLLS, AND OTHER LIGHT BREAKFAST ITEMS, AND I THINK WE'LL BE

10:22AM 15     ABLE TO PROVIDE THOSE AT LEAST AT A MINIMUM ONE DAY A WEEK TO

10:22AM 16     SPAN THOSE THREE DAYS.

10:22AM 17         I'M TOLD THAT THE SERVICE WE USE IS QUITE GENEROUS, AND

10:22AM 18     OTHER JURORS HAVE REALLY ENJOYED THE BAGELS I'M TOLD, SO YOU

10:22AM 19     CAN LOOK FORWARD TO THAT.

10:22AM 20         NOW, LET ME TALK A LITTLE BIT ABOUT HARDSHIPS.  LET ME ASK

10:22AM 21     FIRST, IS THERE ANY MEMBER OF THE PANEL WHO HAS ANY SPECIAL

10:22AM 22     DISABILITY OR PROBLEM THAT WOULD MAKE SERVING AS A MEMBER OF

10:22AM 23     THIS JURY DIFFICULT OR IMPOSSIBLE?

10:22AM 24         LET ME SAY SOMETHING.  WE HAVE ASSISTED LISTENING DEVICES,

10:22AM 25     HEADPHONES.  IF SOMEONE NEEDS A HEADPHONE, YOU SHOULD PLEASE

10:22AM   1     RAISE YOUR HAND AND WE CAN GET THAT TO YOU.

10:23AM   2         THERE MAY BE SOME INDIVIDUALS WHO HAVE OTHER HEALTH

10:23AM   3     ISSUES, BACK ISSUES, SEATING ISSUES THAT WE CAN PROVIDE SOME

10:23AM   4     RELIEF FOR THAT.  WE'VE DONE THAT IN THE PAST WITH PILLOWS AND

10:23AM   5     CUSHIONS AND OTHER THINGS.

10:23AM   6         IS THERE ANYONE IN THE PANEL WHO HAS ANY SPECIAL

10:23AM   7     DISABILITY OR PROBLEM THAT THEY WOULD LIKE TO RAISE NOW?

10:23AM   8         I SEE NO HANDS.

10:23AM   9         OH, I SEE A HAND.  YES, SIR.  COULD YOU JUST TELL US WHAT

10:23AM  10     SEAT YOU'RE IN?

10:23AM  11             PROSPECTIVE JUROR:  JUROR SEAT 49.

10:23AM  12             THE COURT:  WHAT SEAT ARE YOU IN?

10:23AM  13             PROSPECTIVE JUROR:  I'M IN U.

10:23AM  14             THE COURT:  WHAT SEAT?

10:23AM  15             THE CLERK:  U.

10:23AM  16             THE COURT:  YES, MR. BURGE.  WHAT WOULD YOU LIKE ME

10:23AM  17     TO KNOW?

10:23AM  18             PROSPECTIVE JUROR:  I HAVE A HEARING ISSUE.

10:23AM  19             THE COURT:  OKAY.

10:23AM  20             PROSPECTIVE JUROR:  YOU RAISED THAT YOU HAVE

10:23AM  21     HEADPHONES.

10:23AM  22             THE COURT:  YES.

10:23AM  23             PROSPECTIVE JUROR:  I'M ACTUALLY HAVING A HARD TIME

10:23AM  24     HEARING YOU.

10:23AM  25             THE COURT:  THANK YOU.  WE'RE GOING TO GET YOU

| | | |
|---|---|---|
| 10:23AM | 1 | SOMETHING RIGHT NOW.  THANK YOU. |
| 10:24AM | 2 | (PAUSE IN PROCEEDINGS.) |
| 10:24AM | 3 | THE COURT:  MR. BURGE, I'M GOING TO LET YOU PUT |
| 10:24AM | 4 | THOSE ON AND SEE IF THEY'RE OPERATING APPROPRIATELY. |
| 10:24AM | 5 | THE CLERK:  THE LETTER HAS TO FACE OUT. |
| 10:25AM | 6 | THE COURT:  I THINK IT'S BETTER IF YOU PLACE IT |
| 10:25AM | 7 | UNDER YOUR CHIN.  I KNOW IT'S COUNTERINTUITIVE TO DO THAT. |
| 10:25AM | 8 | RIGHT.  I THINK THAT WORKS BETTER.  GREAT.  I SAW YOU GIVE A |
| 10:25AM | 9 | THUMBS UP. |
| 10:25AM | 10 | MR. BURGE, LET ME KNOW IF THAT FAILS TO FUNCTION OR YOU |
| 10:25AM | 11 | NEED SOME ATTENTION TO THAT AND WE'LL REPLACE THAT FOR YOU. |
| 10:25AM | 12 | ALL RIGHT, SIR? |
| 10:25AM | 13 | PROSPECTIVE JUROR:  ALL RIGHT.  THANK YOU. |
| 10:25AM | 14 | THE COURT:  ANYBODY ELSE? |
| 10:25AM | 15 | WHY DON'T YOU COME TO THE MICROPHONE, PLEASE. |
| 10:25AM | 16 | PROSPECTIVE JUROR:  73. |
| 10:25AM | 17 | THE CLERK:  HE'S IN SEAT DD, YOUR HONOR. |
| 10:25AM | 18 | THE COURT:  THANK YOU.  YES, SIR. |
| 10:25AM | 19 | PROSPECTIVE JUROR:  SO THESE DAYS I'M HAVING ISSUES. |
| 10:25AM | 20 | THE COURT:  CAN YOU SPEAK INTO THE MICROPHONE?  YOU |
| 10:25AM | 21 | CAN KEEP YOUR MASK ON, JUST SPEAK INTO THE MICROPHONE. |
| 10:25AM | 22 | PROSPECTIVE JUROR:  SO I HAVE SOME CHRONIC ISSUES, |
| 10:25AM | 23 | AND I HAVE A LITTLE BIT MORE THAN USUAL THESE DAYS. |
| 10:26AM | 24 | ONE SYMPTOM IS THAT SITTING FOR LONG PERIODS OF TIME |
| 10:26AM | 25 | CAUSES MY FACE, MY HANDS, AND MY FEET TO SWELL. |

| | | |
|---|---|---|
| 10:26AM | 1 | THE COURT:  YES. |
| 10:26AM | 2 | PROSPECTIVE JUROR:  AND THAT HAS NOT BEEN A PLEASANT |
| 10:26AM | 3 | EXPERIENCE FOR ME.  IT CAUSES A LOT OF DISTRACTION. |
| 10:26AM | 4 | THE COURT:  I SEE.  IF WE, IF WE WERE TO AFFORD -- |
| 10:26AM | 5 | IF YOU WERE SEATED AS A JUROR, SIR, AND YOU WERE PROVIDED |
| 10:26AM | 6 | BREAKS AND YOU WERE PERMITTED TO STAND, WOULD THAT BE OF SOME |
| 10:26AM | 7 | ASSISTANCE? |
| 10:26AM | 8 | PROSPECTIVE JUROR:  I THINK SO.  I'M NOT REALLY |
| 10:26AM | 9 | SURE, BUT I THINK SO. |
| 10:26AM | 10 | THE COURT:  YES.  AND THANK YOU FOR BRINGING THIS TO |
| 10:26AM | 11 | MY ATTENTION.  WE HAVE HAD JURORS WITH SIMILAR ISSUES, AND WHAT |
| 10:26AM | 12 | WE CAN IS ARRANGE SEATING SUCH THAT YOU CAN STAND OR STRETCH |
| 10:26AM | 13 | OR -- AND WE'LL TRY TO TAKE BREAKS AS NEEDED. |
| 10:26AM | 14 | WOULD THAT BE OF ASSISTANCE TO YOU? |
| 10:26AM | 15 | PROSPECTIVE JUROR:  I THINK SO.  YES, IT COULD. |
| 10:26AM | 16 | THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK |
| 10:26AM | 17 | YOU, SIR. |
| 10:27AM | 18 | ANYONE ELSE WITH AN ISSUE THAT YOU WOULD LIKE TO BRING TO |
| 10:27AM | 19 | MY ATTENTION? |
| 10:27AM | 20 | PROSPECTIVE JUROR:  IS THIS FOR LIKE PHYSICAL ISSUES |
| 10:27AM | 21 | OR SHOULD I BRING UP A CIRCUMSTANTIAL ISSUE? |
| 10:27AM | 22 | THE COURT:  I'M SORRY.  YOU'RE MS. WALLWORK? |
| 10:27AM | 23 | PROSPECTIVE JUROR:  I AM. |
| 10:27AM | 24 | THE COURT:  I WAS ASKING WITH ABOUT PHYSICAL THINGS |
| 10:27AM | 25 | NOW.  IS THERE ANYTHING YOU WOULD LIKE ME TO KNOW ABOUT THAT? |

```
10:27AM   1              PROSPECTIVE JUROR:  NO.  I JUST WANTED TO MAKE SURE
10:27AM   2    I DIDN'T MISS MY WINDOW.
10:27AM   3              THE COURT:  OKAY.  I THINK I CAN ANTICIPATE
10:27AM   4    SOMETHING HERE, BUT WE'LL TALK ABOUT THAT IN A MOMENT.  THANK
10:27AM   5    YOU.
10:27AM   6         NO, NO, I DON'T WANT TO DISCOURAGE YOU FROM RAISING
10:27AM   7    ANYTHING.  THANK YOU VERY MUCH.
10:27AM   8         ALL RIGHT.  WE NOW COME TO THAT PORTION -- ANYONE ELSE?
10:27AM   9         I SEE NO HANDS.
10:27AM  10         WE NOW COME TO THAT PORTION OF THE TRIAL WHERE I WILL ASK
10:27AM  11    YOU SOME QUESTIONS REGARDING YOUR QUALIFICATIONS TO SIT AS
10:27AM  12    JURORS IN THIS CASE.
10:27AM  13         COUNSEL WILL ALSO HAVE THE OPPORTUNITY TO ASK YOU SOME
10:27AM  14    QUESTIONS AS WELL.
10:28AM  15         NOW, THIS PROCESS IS VERY IMPORTANT BECAUSE THE COURT AND
10:28AM  16    THE PARTIES WANT FAIR AND IMPARTIAL JURORS, JURORS WHO ARE FREE
10:28AM  17    FROM ANY PRECONCEIVED IDEA, BELIEF, ATTITUDE, OR BIAS, OR
10:28AM  18    PREJUDICE ABOUT THE OFFENSES CHARGED OR THE ACCUSED, AND JURORS
10:28AM  19    WHO WILL DECIDE THIS CASE ONLY AFTER HEARING ALL OF THE
10:28AM  20    EVIDENCE IN THIS COURTROOM, THE ARGUMENTS OF COUNSEL, THE LAW
10:28AM  21    GIVEN TO YOU BY THE COURT, AND THEN ONLY AFTER DELIBERATING
10:28AM  22    WITH YOUR FELLOW JURORS BY THE OATH THAT YOU HAVE TAKEN, YOU
10:28AM  23    ARE OBLIGATED TO ANSWER ALL OF THESE QUESTIONS TRUTHFULLY AND
10:28AM  24    COMPLETELY.  YOU WILL HELP THE PROCESS BY VOLUNTEERING
10:28AM  25    INFORMATION ABOUT YOUR EXPERIENCES, FEELINGS, OR BIASES, IF
```

10:28AM  1    ANY, EVEN THOUGH YOU BELIEVE YOU CAN PUT ASIDE THOSE

10:28AM  2    EXPERIENCES, FEELINGS, OR BIASES AND SERVE AS A FAIR AND

10:29AM  3    IMPARTIAL JUROR.

10:29AM  4        IF YOU ARE SENSITIVE ABOUT ANSWERING ANY QUESTION, PLEASE

10:29AM  5    TELL ME AND WE CAN DISCUSS THE MATTER PRIVATELY WITH COUNSEL

10:29AM  6    BEING PRESENT.

10:29AM  7        WHAT WE'LL DO IS THAT WE WILL GO INTO THE JURY ROOM BEHIND

10:29AM  8    THIS DOOR HERE WITH OUR COURT REPORTER, AND WE WILL HAVE

10:29AM  9    ABSOLUTE PRIVACY SO YOU CAN SPEAK ABOUT ANY ISSUE IF YOU FEEL

10:29AM  10   THAT'S APPROPRIATE.  JUST LET ME KNOW, AND DON'T BE SHY ABOUT

10:29AM  11   THAT, PLEASE.

10:29AM  12       THIS PROCESS, THIS QUESTIONING PROCESS BY THE COURT AND BY

10:29AM  13   THE LAWYERS SEEKS TO IDENTIFY ANY MATTER, INCLUDING THOSE THAT

10:29AM  14   MIGHT BE CONTROVERSIAL, THAT RAISE AN ISSUE OF BIAS OR

10:29AM  15   INABILITY TO BE FAIR AND IMPARTIAL.

10:29AM  16       NOW, IF ANY JUROR FEELS LIKE AN ISSUE HAS ARISEN AND THEY

10:29AM  17   WOULD LIKE TO, OR YOU THINK IT MIGHT BE BETTER TO SPEAK IN

10:29AM  18   PRIVATE WITH THE COURT AND COUNSEL, PLEASE LET ME KNOW AND WE

10:30AM  19   CAN DO THAT.

10:30AM  20       NOW, FOLKS, IT'S IMPORTANT THAT YOU EXPRESS THESE ISSUES

10:30AM  21   WITH THE PARTIES, THE LAWYERS, AND MYSELF.  WE CAN AND WE WILL

10:30AM  22   MEET PRIVATELY TO ALLOW ANY JUROR TO BE FRANK AND OPEN, AND TO

10:30AM  23   NOT ALLOW ANYTHING SAID TO NEGATIVELY INFLUENCE OR AFFECT ANY

10:30AM  24   OTHER JUROR.  THIS IS IMPORTANT.

10:30AM  25       WHILE WE ALL WANT TO HEAR YOUR CANDID THOUGHTS ON TOPICS,

10:30AM  1    IT IS IMPORTANT THAT EXPRESSIONS ARE HEARTFELT, DO NOT TAINT OR

10:30AM  2    NEGATIVELY IMPACT THE FAIRNESS OF THE PANEL.

10:30AM  3        SO IF YOU FEEL, LADIES AND GENTLEMEN, THAT YOU HAVE AN

10:30AM  4    ISSUE THAT YOU THINK IS IMPORTANT TO YOU, I WANT TO KNOW ABOUT

10:30AM  5    IT.  THESE LAWYERS WANT TO KNOW ABOUT IT.

10:30AM  6        IF YOU FEEL AND YOU'RE THINKING ABOUT SPEAKING ABOUT THIS

10:30AM  7    OR THAT, GEE, IF I SAY WHAT I REALLY FEEL, I MIGHT, I MIGHT

10:31AM  8    SOMEHOW BE STATING SOMETHING THAT MIGHT INAPPROPRIATELY AFFECT

10:31AM  9    ANOTHER JUROR, A STRONG OPINION -- AND LET ME BE CANDID, A

10:31AM  10   STRONG OPINION ABOUT A CASE, THIS HAPPENS IN ALL CASES,

10:31AM  11   SOMETIMES PEOPLE TAKE A POSITION BECAUSE SOMETHING THAT THEY

10:31AM  12   HAVE HEARD, READ, OR SEEN THAT CAUSES THEM TO FORM AN OPINION,

10:31AM  13   AND THEY MIGHT WANT TO EXPRESS THAT IN SOME WAY.  WE WANT TO

10:31AM  14   KNOW ABOUT THAT.

10:31AM  15       BUT WHAT I WANT TO AVOID IS SOMEBODY EXPRESSING A STRONG

10:31AM  16   OPINION THAT MIGHT AFFECT OR OTHERWISE TAINT OTHER MEMBERS OF

10:31AM  17   THE JURY.

10:31AM  18       IF YOU FEEL THAT YOU HAVE STRONG OPINIONS ABOUT SOMETHING

10:31AM  19   REGARDING THIS CASE OR ANYTHING THAT YOU'VE HEARD, SEEN, OR

10:31AM  20   READ, OR YOU THINK YOU WOULD LIKE TO SPEAK PRIVATELY, WE CAN DO

10:31AM  21   THAT, AND I ABSOLUTELY INVITE YOU TO ERR ON THE SIDE OF CAUTION

10:31AM  22   AND TELL ME, "I THINK I SHOULD TALK ABOUT THIS PRIVATELY,

10:31AM  23   JUDGE."  DON'T BE SHY ABOUT THAT.  YOU CAN DO THAT.

10:31AM  24       NOW, IN SELECTING A JURY, EACH SIDE IS PERMITTED A CERTAIN

10:32AM  25   NUMBER OF WHAT ARE CALLED PEREMPTORY CHALLENGES TO PROSPECTIVE

10:32AM 1    JURORS.  THE ATTORNEY MAY EXCUSE A JUROR BECAUSE THEY FEEL THAT

10:32AM 2    THIS JUST IS NOT THE RIGHT CASE FOR THAT JUROR.

10:32AM 3        THERE ARE CHALLENGES FOR CAUSE, AND THESE ARE CHALLENGES

10:32AM 4    WHERE THE PARTY OR THE COURT FEELS THAT A PROSPECTIVE JUROR

10:32AM 5    CANNOT SIT ON A CASE BECAUSE OF A BIAS, INTEREST, OR OTHER

10:32AM 6    INABILITY TO BE FAIR AND IMPARTIAL.

10:32AM 7        AND THE COURT WILL DECIDE, I WILL DECIDE IF A JUROR SHOULD

10:32AM 8    BE EXCUSED FOR CAUSE.

10:32AM 9        THE QUESTIONS OF THE COURT AND COUNSEL AND THE ANSWERS OF

10:32AM 10   PROSPECTIVE JURORS ASSIST THE ATTORNEYS IN THEIR DECISIONS.

10:32AM 11       NOW, FOLLOWING MY QUESTIONS AND THE QUESTIONS OF COUNSEL,

10:32AM 12   THE LAWYERS WILL HAVE AN OPPORTUNITY TO MAKE ANY DECISIONS AS

10:32AM 13   TO ANY CHALLENGES THAT THEY MIGHT HAVE.  WE WILL TAKE THESE UP

10:32AM 14   AFTER WE HAVE MET WITH ALL OF THE PANELS THAT HAVE BEEN

10:32AM 15   SUMMONED IN THIS CASE AND YOU WILL BE NOTIFIED BY THE COURT

10:32AM 16   WHETHER AND WHEN YOU ARE TO RETURN TO COURT.

10:33AM 17       WE WILL ALSO SELECT FIVE ALTERNATE JURORS WHO WILL SIT

10:33AM 18   DURING THE TRIAL.

10:33AM 19       SHOULD A MEMBER OF THE SEATED 12 JURORS BE UNABLE TO

10:33AM 20   CONTINUE TO SIT AS A JUROR, THE ALTERNATE JUROR WILL REPLACE

10:33AM 21   THAT SITTING JUROR AND WILL JOIN THE OTHER JURORS IN

10:33AM 22   DELIBERATION AT THE CONCLUSION OF THE CASE.

10:33AM 23       IF THERE IS NO NEED FOR A SUBSTITUTION OF A SITTING JUROR,

10:33AM 24   THE ALTERNATE JURORS WILL NOT JOIN THE DELIBERATING JURORS OF

10:33AM 25   THE SITTING JURORS AT THE CONCLUSION OF THE CASE, BUT WILL BE

| | | |
|---|---|---|
| 10:33AM | 1 | ALLOWED TO LEAVE THE COURTHOUSE SUBJECT TO BEING RECALLED TO |
| 10:33AM | 2 | REPLACE A DELIBERATING JUROR SHOULD THAT NEED ARISE. |
| 10:33AM | 3 | NOW, YOU HAVE COMPLETED THE QUESTIONNAIRES LAST WEEK AND |
| 10:33AM | 4 | THESE HAVE BEEN VERY HELPFUL FOR ALL OF US IN PREPARATION FOR |
| 10:33AM | 5 | THIS PROCESS.  SOME OF MY QUESTIONS MIGHT BE REPRESENTATIVE OR |
| 10:33AM | 6 | SIMILAR TO THE QUESTIONNAIRE, AND I WILL HAVE ADDITIONAL |
| 10:34AM | 7 | QUESTIONS FOR EACH OF YOU. |
| 10:34AM | 8 | SO I WANT TO THANK YOU AGAIN FOR YOUR PATIENCE AND, AGAIN, |
| 10:34AM | 9 | THANK YOU FOR FILLING OUT YOUR QUESTIONNAIRES. |
| 10:34AM | 10 | NOW, PLEASE DO LISTEN CAREFULLY TO ALL OF THE QUESTIONS |
| 10:34AM | 11 | THAT ARE ASKED AND THE ANSWERS OF PROSPECTIVE JURORS.  DOING SO |
| 10:34AM | 12 | MAY ASSIST YOU IN THINKING ABOUT WHAT YOUR RESPONSE MIGHT BE. |
| 10:34AM | 13 | NOW, LET ME START WITH THIS.  DO ANY OF YOU KNOW THE |
| 10:34AM | 14 | ASSISTANT UNITED STATES ATTORNEYS OR ANY OF THE DEFENSE COUNSEL |
| 10:34AM | 15 | OR ANY OF THEIR TEAMS?  ANYBODY HERE KNOW THESE LAWYERS OR |
| 10:34AM | 16 | THEIR TEAMS? |
| 10:34AM | 17 | I SEE NO HANDS. |
| 10:34AM | 18 | HAVE ANY OF YOU HAD ANY BUSINESS DEALINGS WITH THE |
| 10:34AM | 19 | ATTORNEYS OR BEEN REPRESENTED BY THEM OR THEIR FIRMS? |
| 10:34AM | 20 | I SEE NO HANDS. |
| 10:34AM | 21 | DO ANY OF YOU KNOW THE DEFENDANT, MS. HOLMES?  DOES ANYONE |
| 10:34AM | 22 | HERE KNOW MS. HOLMES? |
| 10:34AM | 23 | I SEE NO HANDS. |
| 10:34AM | 24 | DO ANY OF YOU KNOW ANY OF THE WITNESSES ON THE WITNESS |
| 10:34AM | 25 | LIST THAT YOU'VE REVIEWED?  ANYONE HAVE FAMILIARITY OR |

| | | |
|---|---|---|
| 10:34AM | 1 | KNOWLEDGE OR KNOW ANY OF THOSE FOLKS? |
| 10:35AM | 2 | YES, I SEE A HAND IN THE BACK. |
| 10:35AM | 3 | MAYBE I WOULD ASK YOU TO COME FORWARD, PLEASE, TO THE |
| 10:35AM | 4 | MICROPHONE. |
| 10:35AM | 5 | CAN THAT MICROPHONE MOVE. |
| 10:35AM | 6 | THE CLERK:  I CAN CONFIRM I TURNED IT ON, |
| 10:35AM | 7 | YOUR HONOR. |
| 10:35AM | 8 | THE COURT:  CAN WE MOVE IT CLOSER TO THE RAIL THERE? |
| 10:35AM | 9 | (PAUSE IN PROCEEDINGS.) |
| 10:35AM | 10 | PROSPECTIVE JUROR:  YOUR HONOR, I HAVE MET |
| 10:35AM | 11 | CHANNING ROBERTSON IN A PROFESSIONAL SETTING. |
| 10:35AM | 12 | THE COURT:  OKAY.  I'M SORRY, CAN YOU IDENTIFY |
| 10:35AM | 13 | YOURSELF? |
| 10:35AM | 14 | PROSPECTIVE JUROR:  I'M JUROR NUMBER 90, |
| 10:35AM | 15 | SANDRA RAMER. |
| 10:35AM | 16 | THE COURT:  THANK YOU, MS. RAMER. |
| 10:35AM | 17 | TELL ME ABOUT, YOU'VE MET THIS PERSON IN A PROFESSIONAL |
| 10:35AM | 18 | CAPACITY? |
| 10:35AM | 19 | PROSPECTIVE JUROR:  HE IS, OR WAS, A CONSULTANT FOR |
| 10:35AM | 20 | THE COMPANY THAT I WORK FOR. |
| 10:35AM | 21 | THE COURT:  I SEE.  YOU MET HIM.  DID YOU HAVE |
| 10:35AM | 22 | OCCASION TO WORK WITH HIM ON WHATEVER IT WAS? |
| 10:35AM | 23 | PROSPECTIVE JUROR:  NO, NOT DIRECTLY. |
| 10:35AM | 24 | THE COURT:  WAS THIS A BRIEF INTRODUCTION AS HE CAME |
| 10:35AM | 25 | TO YOUR COMPANY OR -- MAYBE YOU CAN TELL US BRIEFLY WHAT THAT |

46

10:36AM 1     WAS.

10:36AM 2            PROSPECTIVE JUROR:  I WORK FOR A BIOTECH, AN

10:36AM 3     INDUSTRIAL BIOTECH COMPANY AND CHANNING ROBERTSON WAS A

10:36AM 4     CONSULTANT ON SOME OF THE PROJECTS THAT WE WORK ON.

10:36AM 5            THE COURT:  YES.

10:36AM 6            PROSPECTIVE JUROR:  SO MY COMPANY IS VERY CLOSE TO

10:36AM 7     STANFORD, SO HE AND SOME MEMBERS OF HIS LAB OCCASIONALLY VISIT

10:36AM 8     AND CONSULT WITH US.

10:36AM 9            THE COURT:  AND WERE YOU -- THESE CONSULTATIONS,

10:36AM 10    WERE YOU PART OF THEM?

10:36AM 11           PROSPECTIVE JUROR:  NOT DIRECTLY.

10:36AM 12           THE COURT:  I'M IMAGINING A CONFERENCE ROOM WHERE

10:36AM 13    THERE'S A PRESENTATION OR DISCUSSION.

10:36AM 14           PROSPECTIVE JUROR:  CORRECT.

10:36AM 15           THE COURT:  AND WERE YOU IN THAT ROOM?

10:36AM 16           PROSPECTIVE JUROR:  YES, YES.

10:36AM 17           THE COURT:  I SEE.  DID YOU POSE QUESTIONS TO THIS

10:36AM 18    PERSON AT ALL?

10:36AM 19           PROSPECTIVE JUROR:  YEAH, PROBABLY I DID.

10:36AM 20           THE COURT:  AND IT WAS IN A PROFESSIONAL CAPACITY?

10:36AM 21           PROSPECTIVE JUROR:  CORRECT.

10:36AM 22           THE COURT:  WERE YOU INVOLVED AT ALL WITH HIRING OR

10:36AM 23    THE CONTRACTING OF HIM?

10:36AM 24           PROSPECTIVE JUROR:  NO.

10:36AM 25           THE COURT:  WERE YOU INVOLVED AT ALL IN REVIEWING

| | | |
|---|---|---|
| 10:36AM | 1 | ANY OF HIS WORK WITH HIM? |
| 10:36AM | 2 | PROSPECTIVE JUROR:  NO. |
| 10:36AM | 3 | THE COURT:  OTHER THAN IN THESE CONFERENCES? |
| 10:36AM | 4 | PROSPECTIVE JUROR:  RIGHT.  YES.  NO. |
| 10:37AM | 5 | THE COURT:  AND CAN YOU TELL US, DID YOU HAVE ANY |
| 10:37AM | 6 | ONE-ON-ONE TIME WITH HIM, FIRST OF ALL? |
| 10:37AM | 7 | PROSPECTIVE JUROR:  NO. |
| 10:37AM | 8 | THE COURT:  I SEE.  AND WHAT WAS THE DURATION OF THE |
| 10:37AM | 9 | RELATIONSHIP WITH YOUR FIRM? |
| 10:37AM | 10 | PROSPECTIVE JUROR:  IT SPANNED SEVERAL YEARS. |
| 10:37AM | 11 | THE COURT:  AND HOW MANY -- CAN YOU TELL US, |
| 10:37AM | 12 | APPROXIMATELY HOW MANY TIMES DID YOU HAVE OCCASIONS TO MEET |
| 10:37AM | 13 | WITH HIM AS YOU'VE TOLD US YOU'VE DONE? |
| 10:37AM | 14 | PROSPECTIVE JUROR:  THREE OR FOUR PROBABLY. |
| 10:37AM | 15 | THE COURT:  I SEE.  OKAY. |
| 10:37AM | 16 | WERE THERE OTHER OCCASIONS THAT YOU MET WITH HIM OUTSIDE |
| 10:37AM | 17 | OF THE WORK ARENA? |
| 10:37AM | 18 | PROSPECTIVE JUROR:  NO. |
| 10:37AM | 19 | THE COURT:  THERE WERE NEVER DINNER MEETINGS WITH |
| 10:37AM | 20 | OTHERS, OR BREAKFAST MEETINGS? |
| 10:37AM | 21 | PROSPECTIVE JUROR:  NO.  BUT SOME OF THOSE |
| 10:37AM | 22 | INTERACTIONS MIGHT HAVE HAD A RECEPTION, OR SOMETIMES WE WOULD |
| 10:37AM | 23 | HAVE MEETINGS, POSTER SESSIONS WITH THE CONSULTANTS AND |
| 10:37AM | 24 | COLLABORATORS. |
| 10:37AM | 25 | THE COURT:  I SEE. |

10:37AM  1                    PROSPECTIVE JUROR:  SO THERE MIGHT HAVE BEEN SOME

10:37AM  2     SOCIAL INTERACTION.

10:37AM  3                    THE COURT:  DO YOU THINK -- I DON'T KNOW IF YOU CAN

10:38AM  4     ANSWER THIS QUESTION, BUT DO YOU THINK IF YOU WERE WALKING DOWN

10:38AM  5     THE STREET OUTSIDE OF THE COURTHOUSE AND HE WAS WALKING TOWARDS

10:38AM  6     YOU, DO YOU THINK HE WOULD REMEMBER YOU?

10:38AM  7                    PROSPECTIVE JUROR:  NO.

10:38AM  8                    THE COURT:  OKAY.  ALL RIGHT.  THANK YOU VERY MUCH.

10:38AM  9     THANK YOU.

10:38AM  10        ANYONE ELSE HAVE ANY KNOWLEDGE OF ANY OF THE WITNESSES ON

10:38AM  11    THE WITNESS LIST?

10:38AM  12        I SEE NO HANDS.

10:38AM  13        AS I TOLD YOU, THIS CASE RELATES TO MS. HOLMES AND THE

10:38AM  14    ALLEGATIONS OF WIRE FRAUD AND CONSPIRACY TO COMMIT WIRE FRAUD

10:38AM  15    AS INDICATED IN THE INDICTMENT.

10:38AM  16        NOW, LET ME ASK YOU, HAS ANYONE READ OR HEARD OF ANY NEWS

10:38AM  17    COVERAGE OF THIS CASE?

10:38AM  18        WELL, I SEE A COUPLE OF HANDS.

10:38AM  19        WELL, LET'S TALK ABOUT THAT.  LET ME START WITH THE JURY

10:38AM  20    BOX HERE.

10:38AM  21        I JUST WANT FOLKS TO KNOW THAT WE ARE GOING TO TAKE A

10:39AM  22    BREAK AT 11:00 O'CLOCK FOR ABOUT 10 OR 15 MINUTES.  I JUST WANT

10:39AM  23    YOU TO KNOW THAT.

10:39AM  24        SO LET'S SEE.  IN RESPONSE TO THE QUESTION OF HAS ANYBODY

10:39AM  25    HEARD ABOUT COVERAGE OF THIS CASE, LET ME TELL YOU THE

| | | |
|---|---|---|
| 10:39AM | 1 | FOLLOW-UP QUESTIONS ARE GOING TO BE, WHAT WAS THE MEDIA THAT |
| 10:39AM | 2 | YOU HEARD ABOUT?  WAS IT THE MEDIA NEWS, RADIO, INTERNET? |
| 10:39AM | 3 | I'M CURIOUS IF YOU READ, LISTENED, HEARD THE ENTIRETY OF A |
| 10:39AM | 4 | STORY, AN ARTICLE. |
| 10:39AM | 5 | I'M ALSO CURIOUS IF YOU DISCUSSED WITH WHAT YOU READ, |
| 10:39AM | 6 | LISTENED TO, OR HEARD WITH ANYONE ELSE. |
| 10:39AM | 7 | I'M ALSO CURIOUS IF WHAT YOU -- WHEN YOU HEARD THIS, THAT |
| 10:39AM | 8 | IS, THE MOST RECENT, YOUR MOST RECENT CONTACTS WITH THIS |
| 10:39AM | 9 | INFORMATION. |
| 10:39AM | 10 | ALSO WHETHER THIS CONTACT OCCURRED AFTER YOU COMPLETED |
| 10:39AM | 11 | YOUR QUESTIONNAIRE AND WHETHER AS A RESULT OF THAT INFORMATION |
| 10:39AM | 12 | THAT YOU RECEIVED, IF THAT WAS ACCURATE, THAT IS, YOU RECEIVED |
| 10:40AM | 13 | IT AFTER YOUR QUESTIONNAIRE, WHETHER THAT INFORMATION WOULD |
| 10:40AM | 14 | CAUSE YOU TO CHANGE ANY ANSWER TO A QUESTION ON THAT |
| 10:40AM | 15 | QUESTIONNAIRE. |
| 10:40AM | 16 | THAT'S A LOT, I UNDERSTAND, BUT I JUST WANT TO SHARE WITH |
| 10:40AM | 17 | YOU THOSE ARE THE AREAS THAT I WOULD LIKE TO EXPLORE WITH THOSE |
| 10:40AM | 18 | OF YOU WHO RAISED YOUR HAND. |
| 10:40AM | 19 | SO LET'S START -- LET'S SEE IF I CAN -- IS THAT |
| 10:40AM | 20 | MR. MORENO? |
| 10:40AM | 21 | PROSPECTIVE JUROR:  YES. |
| 10:40AM | 22 | THE COURT:  THANK YOU.  WHAT WOULD YOU LIKE ME TO |
| 10:40AM | 23 | KNOW, SIR? |
| 10:40AM | 24 | PROSPECTIVE JUROR:  WHEN I WAS READING THE |
| 10:40AM | 25 | QUESTIONNAIRE I DID RECOGNIZE THE NAME OF THE COMPANY, |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 10:40AM | 1  | THERANOS. |
| 10:40AM | 2  | ASIDE FROM THAT, I DIDN'T REALLY LOOK INTO IT.  IT WASN'T |
| 10:40AM | 3  | SOMETHING THAT INTERESTED ME.  SO JUST THE NAME ITSELF WAS |
| 10:40AM | 4  | FAMILIAR, BUT NOTHING ELSE BESIDES THAT REALLY. |
| 10:40AM | 5  | THE COURT:  OKAY.  I SEE. |
| 10:40AM | 6  | ANYTHING ABOUT THAT THAT YOU THINK WOULD IMPAIR YOUR |
| 10:40AM | 7  | ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE? |
| 10:40AM | 8  | PROSPECTIVE JUROR:  NO. |
| 10:40AM | 9  | THE COURT:  NOTHING.  THANK YOU. |
| 10:40AM | 10 | LET ME SEE.  IN THE JURY BOX.  MR. BETTS -- LET'S SEE.  IS |
| 10:40AM | 11 | THAT MR. BETTS? |
| 10:41AM | 12 | PROSPECTIVE JUROR:  CORRECT. |
| 10:41AM | 13 | THE COURT:  YES, SIR. |
| 10:41AM | 14 | PROSPECTIVE JUROR:  I HEARD BRIEF OVERVIEWS OF THE |
| 10:41AM | 15 | CASE AND THE THERANOS ISSUES A COUPLE YEARS AGO. |
| 10:41AM | 16 | THE COURT:  CAN WE ENGAGE A SPEAKER HERE OR A |
| 10:41AM | 17 | MICROPHONE, MS. KRATZMANN? |
| 10:41AM | 18 | THE CLERK:  I DON'T HAVE A MOVEABLE ONE, YOUR HONOR. |
| 10:41AM | 19 | BUT HE CAN COME TO THIS PODIUM IF HE WOULD LIKE, YOUR HONOR. |
| 10:41AM | 20 | THE COURT:  MR. BETTS, HOW ABOUT THAT? |
| 10:41AM | 21 | PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR. |
| 10:41AM | 22 | A COUPLE OF YEARS AGO JUST A BRIEF DESCRIPTION OF THE CASE |
| 10:41AM | 23 | INVOLVING THERANOS THROUGH NATIONAL PUBLIC RADIO OR BBC. |
| 10:41AM | 24 | THE COURT:  I SEE.  ANYTHING SINCE THAT THAT YOU |
| 10:41AM | 25 | THINK YOU HAVE SEEN OR READ? |

| | | |
|---|---|---|
| 10:41AM | 1 | PROSPECTIVE JUROR:  NO. |
| 10:41AM | 2 | THE COURT:  HAS THAT, WHAT YOU'VE HEARD ON NPR AND |
| 10:41AM | 3 | READ ABOUT, DO YOU STILL HAVE THAT FRESH IN YOUR MIND? |
| 10:41AM | 4 | PROSPECTIVE JUROR:  NO. |
| 10:41AM | 5 | THE COURT:  IS THERE ANYTHING ABOUT WHAT YOU HAVE |
| 10:42AM | 6 | HEARD OR READ THAT WOULD AFFECT YOUR ABILITY TO BE FAIR TO BOTH |
| 10:42AM | 7 | SIDES IN THIS CASE? |
| 10:42AM | 8 | PROSPECTIVE JUROR:  THERE IS NOT. |
| 10:42AM | 9 | THE COURT:  I APPRECIATE IT.  THANK YOU. |
| 10:42AM | 10 | AND MR. SCHULTZE. |
| 10:42AM | 11 | PROSPECTIVE JUROR:  YES. |
| 10:42AM | 12 | THE COURT:  WHY DON'T YOU STEP TO THAT LECTERN AS |
| 10:42AM | 13 | WELL. |
| 10:42AM | 14 | PROSPECTIVE JUROR:  SO I BELIEVE IN SCHOOL ABOUT |
| 10:42AM | 15 | MAYBE IN MARCH OR FEBRUARY THERE -- I WATCHED A TED TALK IN |
| 10:42AM | 16 | CLASS THAT I THINK MENTIONED A NAME AND THE NAME OF THE COMPANY |
| 10:42AM | 17 | THAT HAVE -- I DON'T HAVE TOO MUCH MEMORY OF THAT, BUT I HAVE |
| 10:42AM | 18 | SEEN ALSO ARTICLES ON THE INTERNET, ON REDDIT, ON R/INVESTING, |
| 10:42AM | 19 | AND I BELIEVE THERE WAS ANOTHER ONE. |
| 10:42AM | 20 | BUT I'VE ALSO SEEN JUST THE HEADLINE POP UP ABOUT JURY |
| 10:42AM | 21 | SELECTION, BUT I DON'T THINK THAT'S IMPORTANT. |
| 10:43AM | 22 | THE COURT:  OKAY.  YOU TOLD US THAT, I THINK, IN |
| 10:43AM | 23 | YOUR QUESTIONNAIRE.  YOU SAID YOU MAY HAVE WATCHED A TED TALK, |
| 10:43AM | 24 | BUT YOU DON'T REMEMBER MUCH ABOUT IT; IS THAT RIGHT? |
| 10:43AM | 25 | PROSPECTIVE JUROR:  YES, THAT'S CORRECT. |

| | | |
|---|---|---|
| 10:43AM | 1 | THE COURT:  HOW LONG AGO WAS THAT, SIR? |
| 10:43AM | 2 | PROSPECTIVE JUROR:  I BELIEVE IT WAS IN MY SENIOR |
| 10:43AM | 3 | YEAR ENGINEERING ETHICS CLASS.  PROBABLY MAYBE MARCH.  IT WAS |
| 10:43AM | 4 | SPRING 2020, I BELIEVE. |
| 10:43AM | 5 | THE COURT:  OKAY.  AND THEN YOU TOLD ME YOU SAW SOME |
| 10:43AM | 6 | RECENT PUBLICITY ABOUT THE CASE. |
| 10:43AM | 7 | PROSPECTIVE JUROR:  I THINK MAYBE A FEW MONTHS AGO I |
| 10:43AM | 8 | SAW A POSTING ON THE INTERNET. |
| 10:43AM | 9 | THE COURT:  I SEE.  IS THAT HOW YOU GET MOST OF YOUR |
| 10:43AM | 10 | NEWS OR HOW YOU OBTAIN YOUR NEWS, ON THE INTERNET? |
| 10:43AM | 11 | PROSPECTIVE JUROR:  YES, MOSTLY. |
| 10:43AM | 12 | THE COURT:  DO YOU SUBSCRIBE TO NEWSPAPERS OR READ |
| 10:43AM | 13 | NEWSPAPERS? |
| 10:43AM | 14 | PROSPECTIVE JUROR:  I DON'T SUBSCRIBE REALLY TO ANY |
| 10:43AM | 15 | PHYSICAL NEWSPAPERS.  I JUST SEE APPLE NEWS APP OR REDDIT NEWS. |
| 10:44AM | 16 | THE COURT:  ON THE INTERNET? |
| 10:44AM | 17 | PROSPECTIVE JUROR:  ON THE INTERNET. |
| 10:44AM | 18 | THE COURT:  THERE ARE SOME OF MY VINTAGE, SIR, WHO |
| 10:44AM | 19 | REALLY ENJOY READING HARD COPY OF NEWSPAPERS.  IT'S A -- WE |
| 10:44AM | 20 | DON'T SEEM TO SEE THAT AS MUCH ANYMORE. |
| 10:44AM | 21 | YOU HAVE NOT READ ANY NEWS ARTICLES IN A NEWSPAPER LIKE |
| 10:44AM | 22 | THAT? |
| 10:44AM | 23 | PROSPECTIVE JUROR:  NO. |
| 10:44AM | 24 | THE COURT:  YOUR INFORMATION IS INTERNET AND THAT? |
| 10:44AM | 25 | PROSPECTIVE JUROR:  THAT'S CORRECT. |

| | | |
|---|---|---|
| 10:44AM | 1 | THE COURT:  AND HAVE YOU SEEN ANYTHING RECENTLY? |
| 10:44AM | 2 | PROSPECTIVE JUROR:  I SAW JUST THE HEADLINE POP UP |
| 10:44AM | 3 | ABOUT JURY SELECTION FOR THIS CASE, BUT I DIDN'T READ THE |
| 10:44AM | 4 | ARTICLE. |
| 10:44AM | 5 | THE COURT:  OKAY.  AND WAS THAT BECAUSE YOU KNEW YOU |
| 10:44AM | 6 | WERE GOING TO BE A POTENTIAL JUROR IN THE CASE? |
| 10:44AM | 7 | PROSPECTIVE JUROR:  I JUST HAVE THE YAHOO FINANCE |
| 10:44AM | 8 | APP ON MY PHONE AND IT JUST MAYBE POPPED UP YESTERDAY, BUT I |
| 10:44AM | 9 | JUST SAW THE HEADLINE. |
| 10:44AM | 10 | THE COURT:  RIGHT.  I SEE.  AND YOU DIDN'T DO ANY |
| 10:44AM | 11 | OTHER RESEARCH ON THAT? |
| 10:44AM | 12 | PROSPECTIVE JUROR:  NO. |
| 10:44AM | 13 | THE COURT:  OKAY.  I SEE. |
| 10:44AM | 14 | I DO WANT TO PROBE ONE OTHER AREA WITH YOU, IF I MAY. |
| 10:44AM | 15 | I THINK YOU TOLD US ALSO IN YOUR QUESTIONNAIRE ABOUT |
| 10:45AM | 16 | YOU'RE TAKING ETHICS, SOME ETHICS CLASSES AND YOU TALKED ABOUT |
| 10:45AM | 17 | WHISTLEBLOWERS AND THINGS AND YOU SAID YOU REALLY SUPPORT THEM |
| 10:45AM | 18 | I THINK.  IS THAT RIGHT? |
| 10:45AM | 19 | PROSPECTIVE JUROR:  THAT'S CORRECT. |
| 10:45AM | 20 | THE COURT:  AND IF A CASE WERE TO INVOLVE SOMETHING |
| 10:45AM | 21 | CALLED A WHISTLEBLOWER OR SOMEBODY WHO YOU THOUGHT MIGHT FIT |
| 10:45AM | 22 | THAT DEFINITION, WOULD THAT -- HOW WOULD THAT AFFECT YOUR |
| 10:45AM | 23 | ABILITY TO BE FAIR AND IMPARTIAL AS A JUROR IN A CASE, IN THIS |
| 10:45AM | 24 | CASE? |
| 10:45AM | 25 | PROSPECTIVE JUROR:  SO JUST IN MY CLASSES WE'VE HAD |

| 10:45AM | 1 | TO SEE SOME CASES, I GUESS, AND DECIDE WHETHER THE |

10:45AM  1    TO SEE SOME CASES, I GUESS, AND DECIDE WHETHER THE

10:45AM  2    WHISTLEBLOWER OR THE COMPANY IS CORRECT.

10:45AM  3         THE COURT:  AND THAT'S A -- THAT'S PART OF YOUR

10:45AM  4    EDUCATION.  THAT'S PART OF THAT CLASS?

10:45AM  5         PROSPECTIVE JUROR:  YEAH.

10:45AM  6         THE COURT:  YOU KNOW, LAWYERS TAKES ETHICS CLASSES

10:45AM  7    AS WELL AND THEY LOOK AT CASES AND THEY DISCUSS, WAS THIS THE

10:45AM  8    RIGHT THING TO DO OR THE WRONG THING?  ETHICS GIVE GUIDANCE.

10:46AM  9    THAT'S WHAT YOU WERE DOING?

10:46AM  10        PROSPECTIVE JUROR:  PRETTY SIMILAR.  IT WAS FOR

10:46AM  11   MORE, LIKE, ENGINEERING PROJECTS AND IF YOU BUILD SOMETHING AND

10:46AM  12   IT IMPACTS OR IF THERE'S SOMETHING WRONG WITH IT, SHOULD YOU

10:46AM  13   TELL SOMEBODY?

10:46AM  14        THE COURT:  SURE.  SO WHAT DO YOU THINK?  DO YOU

10:46AM  15   THINK THAT WHAT YOU LEARNED AND DISCUSSED IN THAT CLASS WILL

10:46AM  16   AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE TO

10:46AM  17   BOTH SIDES?

10:46AM  18        PROSPECTIVE JUROR:  I BELIEVE WHAT I LEARNED IS YOU

10:46AM  19   HAVE TO BE UNBIASSED FOR YOUR DECISIONS, AND IT'S A

10:46AM  20   CASE-TO-CASE BASIS.

10:46AM  21        THE COURT:  WELL, THAT'S WHAT WE'RE DOING RIGHT NOW.

10:46AM  22   WE'RE TRYING TO PROBE AND SEE IF YOU AND YOUR FELLOW

10:46AM  23   PROSPECTIVE JURORS -- YOU KNOW, WE ALL HAVE -- WE KNOW WHAT

10:46AM  24   BIAS IS.  WE ALL HAVE IT.

10:46AM  25        I SEE THAT YOU'RE WEARING A SAN FRANCISCO GIANTS SHIRT

10:46AM  1    THERE, AND YOU'RE PROUD TO SAY THEY'RE THE WORLD CHAMPIONS, NOT

10:46AM  2    FOR AWHILE, BUT MAYBE THIS YEAR.  THEY'VE GOT A GOOD TEAM.

10:46AM  3              PROSPECTIVE JUROR:  THEY'VE GOT A GOOD TEAM.

10:46AM  4              THE COURT:  YEAH, THEY HAVE A GOOD TEAM.

10:47AM  5         BUT, YOU KNOW, THERE MIGHT BE SOME OTHER -- FOR WHATEVER

10:47AM  6    REASON THEY MIGHT HAVE SOME LACK OF JUDGMENT, LET'S SAY, FROM

10:47AM  7    MY PERSPECTIVE AND SUPPORT A TEAM CALLED THE LOS ANGELES

10:47AM  8    DODGERS.

10:47AM  9         (LAUGHTER.)

10:47AM 10              THE COURT:  THERE'S SOME BIAS BUILT IN THERE.  I'M

10:47AM 11    USING THIS AS AN EXAMPLE.  I THINK YOU SHOOK YOUR HEAD FROM

10:47AM 12    LEFT TO RIGHT WHEN I MENTIONED THAT NAME.

10:47AM 13         SO PEOPLE BRING THESE BIASES IN.  WE ALL HAVE THEM.

10:47AM 14         WE ALSO HAVE IMPLICIT BIAS.  THOSE ARE MORE DIFFICULT

10:47AM 15    THINGS TO LOOK AT, AND WE TRY TO FERRET THOSE ISSUES OUT IF WE

10:47AM 16    CAN.

10:47AM 17         BEING A JUROR IS A VERY IMPORTANT JOB.  IT'S AN IMPORTANT

10:47AM 18    RESPONSIBILITY.  AND WHAT WE ASK YOU TO DO IN MY EXAMPLE OF

10:47AM 19    BASEBALL WAS THAT WE ASK YOU TO PUT ASIDE THOSE BIASES ABOUT

10:47AM 20    THE DODGERS.

10:47AM 21         I WILL CONCEDE THIS:  THEY HAVE, IN MY OPINION, THE BEST

10:47AM 22    HOME UNIFORMS IN THE LEAGUE.  THEY'RE BEAUTIFUL, AREN'T THEY?

10:47AM 23    THE RED, THE BLUE, THE WHITE.  THEY HAVE THE BEST UNIFORMS.  I

10:47AM 24    HAVE TO CONFESS THAT.

10:48AM 25         BUT NOTWITHSTANDING THAT, NOTWITHSTANDING THAT, YOU MIGHT

10:48AM  1    BE A DIEHARD GIANTS FAN AND THE CASE MIGHT BE ABOUT THE

10:48AM  2    LOS ANGELES DODGERS, AND YOU CAN'T LET THAT BIAS ABOUT THE

10:48AM  3    LOS ANGELES DODGERS AFFECT YOUR DECISION.  I'M SORRY TO BE SO

10:48AM  4    BASIC HERE.

10:48AM  5                PROSPECTIVE JUROR:  YES.

10:48AM  6                THE COURT:  IS THAT SOMETHING THAT YOU THINK YOU

10:48AM  7    COULD DO?

10:48AM  8                PROSPECTIVE JUROR:  YEAH, I THINK SO.

10:48AM  9                THE COURT:  ALL RIGHT.  THAT'S WHAT WE'VE CALLED

10:48AM 10    UPON AS JURORS.  I'M SPEAKING TO YOU, BUT THANK YOU FOR COMING

10:48AM 11    HERE BECAUSE I'M SPEAKING TO ALL OF YOUR COLLEAGUES BEHIND YOU

10:48AM 12    AND NEXT TO YOU.

10:48AM 13       WHAT WE ASK YOU TO DO, WHAT WE ASK JURORS TO DO IS TO --

10:48AM 14    OF COURSE YOU BRING THOSE BIASES THAT PEOPLE HAVE.  WE CAN'T

10:48AM 15    ASK YOU TO THROW THEM OUT THE WINDOW.  BUT YOU HAVE TO, YOU

10:48AM 16    MUST PUT THOSE BIASES ASIDE AS A JUROR WHEN YOU DECIDE THE

10:48AM 17    CASE.

10:48AM 18       AND YOUR DECISION, YOUR DECISION MUST BE BASED ONLY ON THE

10:48AM 19    EVIDENCE THAT YOU RECEIVE IN THIS COURTROOM, THE UNIVERSE OF

10:48AM 20    THIS COURTROOM, NOT ANYTHING OUTSIDE, NOT ANYTHING THAT

10:48AM 21    SOMEBODY TELLS YOU, NOT ANYTHING THAT YOU READ OUTSIDE OF THE

10:49AM 22    COURTROOM, ONLY ON THE EVIDENCE THAT IS INTRODUCED BY THESE

10:49AM 23    LAWYERS, THAT'S IT, AND THE LAW THAT I GIVE YOU.  I WILL GIVE

10:49AM 24    YOU INSTRUCTIONS AT THE END OF THE CASE THAT WILL GUIDE YOUR

10:49AM 25    DELIBERATIONS.

10:49AM 1    YOU SEE, JURORS ARE ACTUALLY JUDGES.  YOU'RE JUDGES OF THE

10:49AM 2    FACTS.  YOU GET TO DECIDE WHAT HAPPENED OR WHAT DIDN'T HAPPEN.

10:49AM 3    YOU GET TO DECIDE THAT.

10:49AM 4        BUT YOU MUST, AND YOU WILL AS A JUROR, APPLY THE LAW THAT

10:49AM 5    I GIVE TO YOU TO THE FACTS AS YOU DECIDE THEM.  BUT IT'S AN

10:49AM 6    IMPORTANT JOB, AND IT'S VERY IMPORTANT.  IT'S CRITICAL THAT

10:49AM 7    EVERY JUROR WHO SITS ON THE CASE DECIDE THIS CASE ONLY ON THE

10:49AM 8    EVIDENCE HERE AND NOT ON ANY OTHER MATERIAL THAT THEY MAY HAVE

10:49AM 9    READ, LISTENED TO, SEEN, OR BEEN EXPOSED TO.

10:49AM 10       FAMILY MEMBERS MIGHT HAVE OPINIONS ABOUT THINGS.  THAT HAS

10:49AM 11   TO STAY OUT OF YOUR DECISION FOR THIS CASE.

10:50AM 12       DO YOU UNDERSTAND THAT?

10:50AM 13           PROSPECTIVE JUROR:  YES.

10:50AM 14           THE COURT:  ANY QUESTION ABOUT THAT?

10:50AM 15           PROSPECTIVE JUROR:  NO.  THANK YOU FOR THE

10:50AM 16   EXPLANATION.

10:50AM 17           THE COURT:  YES.  THANK YOU FOR BEING ABLE TO STAND

10:50AM 18   UP HERE.  IT'S NICE TO SEE ANOTHER GIANTS FAN, AND I APPRECIATE

10:50AM 19   THE OPPORTUNITY TO DISCUSS THIS WITH YOU.

10:50AM 20       SO AS TO THE WHISTLEBLOWER, YOU'VE LEARNED ABOUT THAT IN

10:50AM 21   YOUR ENGINEERING CLASS.  YOU'VE LEARNED THOSE THINGS?

10:50AM 22           PROSPECTIVE JUROR:  YES.

10:50AM 23           THE COURT:  AND I'M SURE YOU SCORED HIGHLY ON THAT

10:50AM 24   EXAM WHEN YOU WROTE YOUR EXAM.

10:50AM 25       BUT HERE I WILL GIVE YOU, I WILL GIVE YOU THE LAW THAT YOU

| | | |
|---|---|---|
| 10:50AM | 1 | APPLY TO THE FACTS AS YOU FIND THEM. |
| 10:50AM | 2 | DO YOU UNDERSTAND THAT? |
| 10:50AM | 3 | PROSPECTIVE JUROR:  YES. |
| 10:50AM | 4 | THE COURT:  CAN YOU DO THAT? |
| 10:50AM | 5 | PROSPECTIVE JUROR:  YES. |
| 10:50AM | 6 | THE COURT:  WITHOUT ANY BIAS?  WITHOUT ANY THINKING |
| 10:50AM | 7 | ABOUT WHAT YOU LEARNED IN YOUR CLASS, THINKING ABOUT WHAT YOUR |
| 10:50AM | 8 | PROFESSOR TAUGHT YOU, BUT FOCUSSED ONLY ON THE EVIDENCE HERE? |
| 10:50AM | 9 | PROSPECTIVE JUROR:  I BELIEVE SO, YES. |
| 10:50AM | 10 | THE COURT:  OKAY.  ANY DOUBT ABOUT THAT? |
| 10:50AM | 11 | PROSPECTIVE JUROR:  NO. |
| 10:51AM | 12 | THE COURT:  OKAY.  WELL, YOU HAVE GOOD JUDGMENT. |
| 10:51AM | 13 | YOU HAVE GOOD JUDGMENT.  YOU'RE SUPPORTING A GOOD BASEBALL |
| 10:51AM | 14 | TEAM, SO THAT'S IMPRESSIVE ALREADY. |
| 10:51AM | 15 | ALL RIGHT.  ANYTHING ELSE YOU WANT US TO KNOW ABOUT THAT? |
| 10:51AM | 16 | PROSPECTIVE JUROR:  THAT'S ALL. |
| 10:51AM | 17 | THE COURT:  OKAY.  THANK YOU. |
| 10:51AM | 18 | PROSPECTIVE JUROR:  THANK YOU. |
| 10:51AM | 19 | THE COURT:  WERE THERE OTHER HANDS IN THE JURY BOX? |
| 10:51AM | 20 | YES.  IS THIS MR. LIU? |
| 10:51AM | 21 | PROSPECTIVE JUROR:  YES. |
| 10:51AM | 22 | THE COURT:  DO YOU WANT TO COME TO THE MICROPHONE? |
| 10:51AM | 23 | PROSPECTIVE JUROR:  YES.  I'M JUROR NUMBER 20. |
| 10:51AM | 24 | THE COURT:  YES, THANK YOU. |
| 10:51AM | 25 | PROSPECTIVE JUROR:  I DIDN'T RAISE MY HAND EARLIER, |

| | | |
|---|---|---|
| 10:51AM | 1 | BUT I HEARD ABOUT THIS CASE YEARS AGO, JUST HIGH LEVEL |
| 10:51AM | 2 | BASICALLY. |
| 10:51AM | 3 | THE COURT:  HIGH LEVEL.  AND TELL US THE MOST RECENT |
| 10:51AM | 4 | TIMING OF THE MOST RECENT INFORMATION THAT YOU'VE RECEIVED. |
| 10:51AM | 5 | PROSPECTIVE JUROR:  JUST THE LATEST NEWS BECAUSE OF |
| 10:52AM | 6 | THE TRIAL AND IT'S GOING TO BE STARTING PRETTY SOON, AND LAST |
| 10:52AM | 7 | WEEK WHEN I CAME HERE, YOU KNOW, I KNOW WHAT IT'S ABOUT.  SO, |
| 10:52AM | 8 | YEAH. |
| 10:52AM | 9 | THE COURT:  FROM THE MEDIA, YOU KNOW WHAT IT'S ABOUT |
| 10:52AM | 10 | FROM THE MEDIA? |
| 10:52AM | 11 | PROSPECTIVE JUROR:  RIGHT. |
| 10:52AM | 12 | THE COURT:  AND WHAT WAS THE LAST THING -- THE |
| 10:52AM | 13 | TIMING, WHEN DID YOU MOST RECENTLY HEAR THE LAST THING?  WAS IT |
| 10:52AM | 14 | IN THE PAPER YESTERDAY?  WAS IT THIS MORNING OR A WEEK AGO? |
| 10:52AM | 15 | PROSPECTIVE JUROR:  IT WAS ABOUT A WEEK AGO.  IT WAS |
| 10:52AM | 16 | IN THE NEWS THAT THE TRIAL IS COMING UP. |
| 10:52AM | 17 | THE COURT:  AND DID YOU SEE THAT AFTER YOU COMPLETED |
| 10:52AM | 18 | THE QUESTIONNAIRE OR BEFORE? |
| 10:52AM | 19 | PROSPECTIVE JUROR:  BEFORE. |
| 10:52AM | 20 | THE COURT:  I SEE.  DO YOU REMEMBER ANYTHING THAT |
| 10:52AM | 21 | YOU READ OR HEARD OR SAW?  ANYTHING ABOUT THAT?  I'M NOT ASKING |
| 10:52AM | 22 | YOU TO TELL ME WHAT IT WAS. |
| 10:52AM | 23 | PROSPECTIVE JUROR:  YEAH, JUST REFRESH AND BRING |
| 10:52AM | 24 | BACK MY MEMORY OF SEVERAL YEARS AGO WHEN THIS CASE FIRST CAME |
| 10:52AM | 25 | OUT, YEAH. |

| | | |
|---|---|---|
| 10:52AM | 1 | THE COURT: ALL RIGHT. WELL, IS THERE ANYTHING |
| 10:52AM | 2 | ABOUT WHAT YOU SAW, HEARD, OR READ THAT YOU THINK WILL AFFECT |
| 10:53AM | 3 | YOUR ABILITY TO BE FAIR IN THIS TRIAL TODAY? |
| 10:53AM | 4 | PROSPECTIVE JUROR: YEAH, I WILL BE FAIR. IT WON'T |
| 10:53AM | 5 | AFFECT MY DECISION. |
| 10:53AM | 6 | THE COURT: OKAY. NOTHING THAT YOU HEARD, READ, OR |
| 10:53AM | 7 | SAW WILL AFFECT YOUR DECISION? |
| 10:53AM | 8 | PROSPECTIVE JUROR: RIGHT. |
| 10:53AM | 9 | THE COURT: CAN YOU MAKE YOUR DECISION -- IF YOU'RE |
| 10:53AM | 10 | SELECTED AS A JUROR IN THIS CASE, CAN YOU MAKE THAT DECISION |
| 10:53AM | 11 | BASED ONLY ON THE EVIDENCE THAT YOU GET IN THIS COURTROOM? |
| 10:53AM | 12 | PROSPECTIVE JUROR: YES. |
| 10:53AM | 13 | THE COURT: NOT ON ANYTHING OUTSIDE? |
| 10:53AM | 14 | PROSPECTIVE JUROR: THAT'S CORRECT. |
| 10:53AM | 15 | THE COURT: ALL RIGHT. THANK YOU VERY MUCH. THANK |
| 10:53AM | 16 | YOU. |
| 10:53AM | 17 | LET'S SEE. THERE WAS MR. CHUANG; IS THAT RIGHT? |
| 10:53AM | 18 | PROSPECTIVE JUROR: YES. I'VE READ NEWS ARTICLES ON |
| 10:53AM | 19 | THE INTERNET ABOUT THIS CASE, AND I ALSO WATCHED THE |
| 10:53AM | 20 | DOCUMENTARY ON THIS CASE. SO I MAY HAVE SOME PREDISPOSED OR |
| 10:54AM | 21 | BIAS. |
| 10:54AM | 22 | THE COURT: OKAY. |
| 10:54AM | 23 | PROSPECTIVE JUROR: BUT THAT WAS A COUPLE YEARS AGO. |
| 10:54AM | 24 | THE COURT: I SEE. THAT'S WHAT MY NEXT QUESTION |
| 10:54AM | 25 | WAS, WHEN DID YOU SEE THAT? |

10:54AM  1           PROSPECTIVE JUROR:  A COUPLE YEARS AGO.

10:54AM  2           THE COURT:  OKAY.  HAVE YOU SEEN ANYTHING SINCE OR

10:54AM  3   READ ANYTHING SINCE?

10:54AM  4           PROSPECTIVE JUROR:  NO.  I DIDN'T HAVE ANY FOLLOW

10:54AM  5   UP.

10:54AM  6           THE COURT:  SO DO YOU REMEMBER TODAY, I'M NOT ASKING

10:54AM  7   WHAT YOU SAW, BUT DO YOU REMEMBER IT?

10:54AM  8           PROSPECTIVE JUROR:  BITS AND PIECES.

10:54AM  9           THE COURT:  I SEE.  OKAY.

10:54AM  10       WELL, YOU HEARD ME TALKING TO MR. SCHULTZE ABOUT THE

10:54AM  11   DECISION THAT A JUROR MAKES ONLY ON THE EVIDENCE IN THIS CASE.

10:54AM  12           PROSPECTIVE JUROR:  RIGHT.

10:54AM  13           THE COURT:  CAN YOU DO THAT?

10:54AM  14           PROSPECTIVE JUROR:  I CAN TRY TO PUT MY BIAS ASIDE

10:54AM  15   AND ONLY LOOK AT THE FACTS.

10:54AM  16           THE COURT:  OKAY.  SO DO YOU THINK -- YOU SAID YOU

10:54AM  17   COULD PUT YOUR BIAS ASIDE.  DO YOU HAVE A BIAS IN THIS CASE

10:55AM  18   RIGHT NOW?

10:55AM  19           PROSPECTIVE JUROR:  WELL, THE DOCUMENTARY KIND OF

10:55AM  20   PAINTED --

10:55AM  21           THE COURT:  PARDON ME FOR INTERRUPTING YOU.  SO YOU

10:55AM  22   SAW A DOCUMENTARY THAT IT SOUNDS LIKE IT WAS PERSUASIVE IN SOME

10:55AM  23   WAY TO YOU?

10:55AM  24           PROSPECTIVE JUROR:  I THINK IT WAS PAINTED --

10:55AM  25           THE COURT:  WELL, I'M NOT ASKING YOU EXACTLY -- I

| | | |
|---|---|---|
| 10:55AM | 1 | DON'T WANT YOU TO REPEAT THE DOCUMENTARY.  I'M JUST CURIOUS |
| 10:55AM | 2 | ABOUT THE EFFECT OF THAT DOCUMENTARY ON YOUR THINKING ABOUT A |
| 10:55AM | 3 | JUROR, BEING A FAIR JUROR. |
| 10:55AM | 4 | DO YOU UNDERSTAND MY QUESTION? |
| 10:55AM | 5 | PROSPECTIVE JUROR:  I'M SORRY.  CAN YOU REPEAT? |
| 10:55AM | 6 | THE COURT:  SURE.  I'M SORRY.  THAT WASN'T VERY |
| 10:55AM | 7 | ARTFUL. |
| 10:55AM | 8 | I'M NOT ASKING YOU TO TELL US WHAT YOU SAW, WHAT THEY |
| 10:55AM | 9 | SAID. |
| 10:55AM | 10 | PROSPECTIVE JUROR:  OKAY. |
| 10:55AM | 11 | THE COURT:  I'M MORE INTERESTED IN HOW THAT AFFECTED |
| 10:55AM | 12 | YOU AND WHETHER OR NOT IT'S CREATED A BIAS IN YOU THAT PREVENTS |
| 10:55AM | 13 | YOU FROM BEING FAIR -- AND LET ME BE CANDID -- BEING FAIR TO |
| 10:55AM | 14 | MS. HOLMES. |
| 10:55AM | 15 | HAVE YOU, BECAUSE OF WHAT YOU READ, BECAUSE OF WHAT YOU |
| 10:56AM | 16 | SAW, HAS THAT PUT YOU IN A POSITION TODAY TO MAKE YOU FEEL LIKE |
| 10:56AM | 17 | I CAN'T BE FAIR TO MS. HOLMES BECAUSE I'VE SEEN SOMETHING THAT |
| 10:56AM | 18 | BOTHERS ME? |
| 10:56AM | 19 | OR MAYBE IT'S NOT MS. HOLMES.  MAYBE IT'S THE GOVERNMENT'S |
| 10:56AM | 20 | CASE.  MAYBE YOU CAN'T BE FAIR TO THE GOVERNMENT BECAUSE OF |
| 10:56AM | 21 | SOMETHING THAT YOU'VE SEEN OR HEARD. |
| 10:56AM | 22 | PROSPECTIVE JUROR:  YEAH, I HAVE SOME BIASSED |
| 10:56AM | 23 | OPINION. |
| 10:56AM | 24 | THE COURT:  OKAY.  ABOUT THE DEFENSE? |
| 10:56AM | 25 | PROSPECTIVE JUROR:  YES. |

| | | |
|---|---|---|
| 10:56AM | 1 | THE COURT:  I SEE.  BECAUSE OF WHAT YOU'VE SEEN? |
| 10:56AM | 2 | PROSPECTIVE JUROR:  YES. |
| 10:56AM | 3 | THE COURT:  RIGHT.  DO YOU THINK THERE'S ANY WAY |
| 10:56AM | 4 | THAT YOU CAN PUT THAT ASIDE? |
| 10:56AM | 5 | PROSPECTIVE JUROR:  YES, I CAN LOOK AT THE EVIDENCE. |
| 10:56AM | 6 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:56AM | 7 | WELL, WE'RE GOING TO TAKE A BREAK NOW.  I TOLD YOU, LADIES |
| 10:56AM | 8 | AND GENTLEMEN, WE WOULD TAKE A BREAK AT THE TOP OF THE HOUR FOR |
| 10:56AM | 9 | A MOMENT. |
| 10:56AM | 10 | I THINK WE'LL TAKE ABOUT -- LET'S TAKE -- WELL, IT'S GOING |
| 10:56AM | 11 | TO TAKE SOME TIME TO GET YOU UP HERE, SO LET'S TAKE 15 MINUTES, |
| 10:56AM | 12 | PLEASE. |
| 10:56AM | 13 | MR. CHUANG, WHY DON'T YOU -- CAN I ASK YOU TO STAY, AND |
| 10:56AM | 14 | I'D LIKE TO TALK WITH YOU A LITTLE BIT MORE ABOUT IT WITH THESE |
| 10:56AM | 15 | LAWYERS. |
| 10:56AM | 16 | PROSPECTIVE JUROR:  SURE. |
| 10:57AM | 17 | THE COURT:  MR. CHUANG, YOU'RE NOT IN TROUBLE.  LET |
| 10:57AM | 18 | ME SAY THAT, YOU'RE NOT IN TROUBLE. |
| 10:57AM | 19 | (LAUGHTER.) |
| 10:57AM | 20 | THE COURT:  SO LET'S TAKE A 15 MINUTES BREAK, FOLKS. |
| 10:57AM | 21 | MR. CHUANG WILL REMAIN.  WE'LL REMAIN ON THE RECORD. |
| 10:58AM | 22 | (JURY OUT AT 10:58 A.M.). |
| 10:58AM | 23 | THE COURT:  WHY DON'T WE HAVE A SEAT. |
| 10:58AM | 24 | LET ME SAY THAT THE MAJORITY OF THE JURORS HAVE LEFT THE |
| 10:58AM | 25 | COURTROOM. |

| 10:58AM | 1 | COULD I ASK YOU TO STEP OUTSIDE? |
|---|---|---|
| 10:58AM | 2 | PROSPECTIVE JUROR:  OH, I'M SORRY. |
| 10:58AM | 3 | THE COURT:  NO.  THAT'S QUITE ALL RIGHT. |
| 10:58AM | 4 | (JURY OUT AT 10:58 A.M.) |
| 10:58AM | 5 | (ONLY PROSPECTIVE JUROR CHUANG PRESENT.) |
| 10:58AM | 6 | THE COURT:  THE RECORD SHOULD REFLECT THAT WE HAVE |
| 10:58AM | 7 | TAKEN A RECESS.  OUR JURY PANEL HAS LEFT, SAVE FOR MR. CHUANG. |
| 10:59AM | 8 | I WANTED TO TALK TO MR. CHUANG OUTSIDE OF THE PRESENCE OF |
| 10:59AM | 9 | THE JURORS. |
| 10:59AM | 10 | YOU'RE NOT IN TROUBLE.  YOU HEARD ME TALK ABOUT WHAT THIS |
| 10:59AM | 11 | PROCESS IS ABOUT.  WE'RE TRYING TO SEE IF PEOPLE CAN BE FAIR |
| 10:59AM | 12 | JURORS IN THE CASE, AND MY CONCERN, I HOPE YOU APPRECIATE -- |
| 10:59AM | 13 | AND THESE LAWYERS ARE ALSO CONCERNED -- THAT SOMEBODY MIGHT SAY |
| 10:59AM | 14 | SOMETHING THAT MIGHT AFFECT SOMEONE ELSE'S OPINIONS.  YOU'RE |
| 10:59AM | 15 | CERTAINLY ENTITLED TO YOUR OPINIONS AND THAT'S WHAT I WANT TO |
| 10:59AM | 16 | EXPLORE RIGHT NOW. |
| 10:59AM | 17 | YOU'VE TOLD US THAT BECAUSE OF WHAT YOU HAVE SEEN IN THESE |
| 10:59AM | 18 | DOCUMENTARIES, I THINK YOU SAID -- I DON'T WANT TO PUT WORDS IN |
| 10:59AM | 19 | YOUR MOUTH, BUT YOU SAID YOU MIGHT BE BIASSED. |
| 10:59AM | 20 | WHY DON'T YOU TELL US ABOUT THAT? |
| 10:59AM | 21 | MAYBE YOU CAN COME UP TO THIS MICROPHONE.  WOULD THAT BE |
| 10:59AM | 22 | ALL RIGHT WITH YOU, SIR? |
| 10:59AM | 23 | PROSPECTIVE JUROR:  YES. |
| 10:59AM | 24 | THE COURT:  THANK YOU. |
| 10:59AM | 25 | PROSPECTIVE JUROR:  SO THE DOCUMENTARY WAS PAINTING |

| | | |
|---|---|---|
| 11:00AM | 1 | A PICTURE THAT MS. HOLMES IS -- LIKE, A NEGATIVE PICTURE ABOUT |
| 11:00AM | 2 | WHAT SHE WAS DOING AND HOW THE COMPANY WAS, LIKE -- |
| 11:00AM | 3 | THE COURT:  YOU KNOW, MR. CHUANG, DON'T HESITATE. |
| 11:00AM | 4 | JUST TELL US. |
| 11:00AM | 5 | PROSPECTIVE JUROR:  THE DOCUMENTARY SAID SHE KNOWS |
| 11:00AM | 6 | ABOUT THESE FRAUDS AND SHE CONTINUES TO DO THESE FRAUDS, I |
| 11:00AM | 7 | GUESS. |
| 11:00AM | 8 | THE COURT:  I SEE, UH-HUH. |
| 11:00AM | 9 | PROSPECTIVE JUROR:  SO THAT MIGHT HAVE AFFECT MY |
| 11:00AM | 10 | OPINION. |
| 11:00AM | 11 | THE COURT:  I SEE.  FROM WHAT YOU HEARD AND WHAT YOU |
| 11:00AM | 12 | SAW? |
| 11:00AM | 13 | PROSPECTIVE JUROR:  RIGHT. |
| 11:00AM | 14 | THE COURT:  AND DO YOU THINK THAT YOU COULD PUT THAT |
| 11:00AM | 15 | ASIDE AND BE FAIR TO BOTH SIDES IN THIS CASE, OR DO YOU THINK |
| 11:00AM | 16 | YOU'LL HAVE A PROBLEM WITH THAT? |
| 11:00AM | 17 | PROSPECTIVE JUROR:  I THINK I COULD TRY TO PUT THAT |
| 11:00AM | 18 | BIAS ASIDE AND I CAN JUST LOOK AT THE FACTS AND EVIDENCE. |
| 11:01AM | 19 | THE COURT:  OKAY.  THIS SOMETIMES HAPPENS IN TRIAL. |
| 11:01AM | 20 | THIS WILL BE A LONG TRIAL I TOLD YOU. |
| 11:01AM | 21 | BUT YOU MIGHT HEAR TESTIMONY AND YOU MIGHT THINK, OH, I |
| 11:01AM | 22 | THINK I SAW THAT.  I REMEMBER THIS, WHATEVER IT WAS, |
| 11:01AM | 23 | DOCUMENTARY SPEAKING ABOUT THIS. |
| 11:01AM | 24 | BUT IN THE DOCUMENTARY, THEY SAID THIS.  BUT NOW I'M |
| 11:01AM | 25 | HEARING SOMETHING DIFFERENT. |

11:01AM 1 DO YOU THINK YOU -- YOU MIGHT FIND YOURSELF IN THAT

11:01AM 2 SITUATION, AND WHAT DO YOU THINK YOU WOULD DO?

11:01AM 3  PROSPECTIVE JUROR:  I WILL LOOK AT THE EVIDENCE

11:01AM 4 PRESENTED ONLY IN THIS COURTHOUSE.

11:01AM 5 TO BE HONEST, I DON'T REMEMBER MUCH ABOUT THE DOCUMENTARY,

11:01AM 6 ONLY, LIKE, BITS AND PIECES.

11:01AM 7  THE COURT:  I SEE.  BUT IT DID AFFECT YOU SOMEHOW?

11:01AM 8  PROSPECTIVE JUROR:  YES, IT DID.

11:01AM 9  THE COURT:  RIGHT.  I APPRECIATE YOUR CANDOR.  THANK

11:01AM 10 YOU.  THANK YOU FOR BEING HONEST.  YOU TOLD US THAT IN

11:01AM 11 QUESTIONS 38.  QUESTION 39 YOU SAID, I MAY HAVE WATCHED IT AND

11:02AM 12 IT MAY AFFECT ME TO HAVE A BIAS AGAINST THE DEFENDANT.  THAT'S

11:02AM 13 WHAT WE'RE TALKING ABOUT NOW.

11:02AM 14 DO YOU THINK THAT YOU WOULD BE ABLE TO, OR CAN YOU PUT

11:02AM 15 ASIDE ANYTHING THAT YOU'VE SAID -- OR EXCUSE ME -- YOU'VE READ

11:02AM 16 OR YOU'VE SEEN, CAN YOU PUT THAT ASIDE?

11:02AM 17  PROSPECTIVE JUROR:  YES, I CAN.

11:02AM 18  THE COURT:  AND DO YOU HAVE CERTAINTY ABOUT THAT?

11:02AM 19  PROSPECTIVE JUROR:  YES.

11:02AM 20  THE COURT:  OKAY.  I'M GOING TO LET THESE LAWYERS

11:02AM 21 ASK YOU A QUESTION ABOUT THAT, OR TWO.  THEY MAY HAVE A

11:02AM 22 QUESTION ABOUT THAT.

11:02AM 23 WOULD THAT BE ALL RIGHT?

11:02AM 24  PROSPECTIVE JUROR:  YES.

11:02AM 25  THE COURT:  OKAY.  WHY DON'T YOU -- I WANT YOU TO BE

| | | |
|---|---|---|
| 11:02AM | 1 | COMFORTABLE.  WHY DON'T YOU JUST SIT IN THAT CHAIR RIGHT THERE. |
| 11:02AM | 2 | PROSPECTIVE JUROR:  THIS ONE (INDICATING)? |
| 11:02AM | 3 | THE COURT:  YEAH, THAT'S FINE. |
| 11:02AM | 4 | AND I'LL ASK MR. LEACH OR MR. SCHENK, DO YOU HAVE ANY |
| 11:02AM | 5 | FURTHER QUESTIONS? |
| 11:02AM | 6 | MR. SCHENK:  NO FURTHER QUESTIONS. |
| 11:02AM | 7 | THE COURT:  MR. DOWNEY, DO YOU HAVE ANY FURTHER |
| 11:02AM | 8 | QUESTIONS? |
| 11:02AM | 9 | MR. DOWNEY:  I DO, YOUR HONOR.  THANK YOU. |
| 11:02AM | 10 | THE COURT:  SURE. |
| 11:02AM | 11 | MR. DOWNEY:  LET ME REPEAT WHAT HIS HONOR SAID, WE |
| 11:02AM | 12 | APPRECIATE YOUR HONESTY AND DON'T WANT THE FACT THAT YOU'RE IN |
| 11:02AM | 13 | COURT OR THAT I REPRESENT MS. HOLMES TO LIMIT WHAT YOU SAY AS |
| 11:03AM | 14 | TO ANY OPINIONS OR BIASES OR VIEWS ABOUT THE CASE THAT YOU |
| 11:03AM | 15 | HOLD. |
| 11:03AM | 16 | JUDGE DAVILA POINTED YOU A MOMENT AGO TO AN ANSWER THAT |
| 11:03AM | 17 | YOU GAVE IN THE QUESTIONNAIRE WHERE YOU SAID, "THE DOCUMENTARY |
| 11:03AM | 18 | THAT I HAVE WATCHED MAY HAVE AFFECTED ME TO HAVE BIAS AGAINST |
| 11:03AM | 19 | THE DEFENDANT." |
| 11:03AM | 20 | I JUST WANT TO ASK YOU, WHEN YOU WROTE THAT, WHAT WAS IN |
| 11:03AM | 21 | YOUR MIND ABOUT MS. HOLMES FROM THE DOCUMENTARY? |
| 11:03AM | 22 | PROSPECTIVE JUROR:  WELL, THE DOCUMENTARY WAS -- YOU |
| 11:03AM | 23 | MEAN LIKE A NEGATIVE PICTURE ABOUT THE DEFENDANT?  THAT SHE WAS |
| 11:03AM | 24 | KNOWINGLY AND INTENTIONALLY COMMITTING THE FRAUD? |
| 11:04AM | 25 | THE COURT:  HANG ON JUST A SECOND, SIR.  WE'RE GOING |

| | | |
|---|---|---|
| 11:04AM | 1 | TO GET YOU A MICROPHONE. |
| 11:04AM | 2 | I'M SORRY, MR. DOWNEY.  I APOLOGIZE. |
| 11:04AM | 3 | MR. DOWNEY, IS THE TIMING ALL RIGHT TO CONTINUE WITH YOUR |
| 11:04AM | 4 | EXAMINATION? |
| 11:04AM | 5 | MR. DOWNEY:  I THINK.  MAY I JUST CHECK WITH ONE |
| 11:04AM | 6 | ISSUE, YOUR HONOR? |
| 11:04AM | 7 | THE COURT:  YES. |
| 11:04AM | 8 | MR. DOWNEY:  YOUR HONOR, WHAT TIME WERE YOU THINKING |
| 11:04AM | 9 | OF BREAKING FOR LUNCH? |
| 11:04AM | 10 | THE COURT:  I HADN'T THOUGHT ABOUT BREAKING, |
| 11:04AM | 11 | MR. DOWNEY. |
| 11:04AM | 12 | MR. DOWNEY:  WE JUST HAD MENTIONED TO YOUR HONOR -- |
| 11:04AM | 13 | THE COURT:  I'M TEASING YOU.  I'M TEASING YOU.  I |
| 11:04AM | 14 | THOUGHT WE WOULD BREAK AT NOON.  IF WE STARTED AT 9:00, I |
| 11:04AM | 15 | THOUGHT WE WOULD BREAK AT NOON.  WE GOT A LATE START TODAY, AND |
| 11:05AM | 16 | I'M NOT SURPRISED ABOUT THAT.  I'M HOPING THAT WE CAN BREAK IN |
| 11:05AM | 17 | 50 MINUTES AT NOON. |
| 11:05AM | 18 | MR. DOWNEY:  OKAY.  WHY DON'T WE CONTINUE THEN. |
| 11:05AM | 19 | THE COURT:  OKAY.  THANK YOU. |
| 11:05AM | 20 | MR. DOWNEY:  YOU WERE EXPLAINING TO ME, SIR, WHY YOU |
| 11:05AM | 21 | GAVE THE ANSWER WHERE YOU INDICATED THAT WHAT YOU WATCHED IN |
| 11:05AM | 22 | THE DOCUMENTARY MAY HAVE AFFECTED YOU TO HAVE BIAS AGAINST |
| 11:05AM | 23 | MS. HOLMES. |
| 11:05AM | 24 | TELL ME ABOUT THAT. |
| 11:05AM | 25 | PROSPECTIVE JUROR:  SO THE DOCUMENTARY WAS GIVING, |

| | | |
|---|---|---|
| 11:05AM | 1 | LIKE, A NEGATIVE PICTURE ABOUT THE DEFENDANT AND I THOUGHT |
| 11:05AM | 2 | THAT -- YOU KNOW, I WAS GETTING, LIKE, A NEGATIVE IMAGE OF THE |
| 11:05AM | 3 | DEFENDANT FROM THE DOCUMENTARY, AND THAT'S WHY I PUT THAT ON |
| 11:05AM | 4 | THE QUESTIONNAIRE THAT I RECOGNIZE THAT I HAVE SOME BIAS. |
| 11:05AM | 5 | BUT, YOU KNOW, I CAN TRY TO, LIKE, PUT THAT ASIDE. |
| 11:06AM | 6 | MR. DOWNEY:  TELL US ABOUT THAT WHEN YOU SAY "PUT |
| 11:06AM | 7 | ASIDE." |
| 11:06AM | 8 | THIS WAS A DOCUMENTARY THAT YOU WATCHED HOW MANY YEARS |
| 11:06AM | 9 | AGO? |
| 11:06AM | 10 | PROSPECTIVE JUROR:  I THINK IT WAS A COUPLE YEARS |
| 11:06AM | 11 | AGO.  I CAN'T REMEMBER WHAT TIME. |
| 11:06AM | 12 | MR. DOWNEY:  OKAY.  AND THE DOCUMENTARY STUCK WITH |
| 11:06AM | 13 | YOU ENOUGH THAT YOU REMEMBERED THE REACTION THAT YOU HAD TO IT; |
| 11:06AM | 14 | IS THAT RIGHT? |
| 11:06AM | 15 | PROSPECTIVE JUROR:  RIGHT -- I DON'T REMEMBER THE |
| 11:06AM | 16 | EXACT INFORMATION, BUT I DO REMEMBER, LIKE, I WAS GETTING A |
| 11:06AM | 17 | NEGATIVE VIBE FROM THAT DOCUMENTARY. |
| 11:06AM | 18 | MR. DOWNEY:  AND DO YOU THINK IF YOU WERE SELECTED |
| 11:06AM | 19 | AS A JUROR HERE THAT AS DEFENSE COUNSEL WE MIGHT BE STARTING -- |
| 11:07AM | 20 | (PAUSE IN PROCEEDINGS.) |
| 11:07AM | 21 | THE COURT:  I'M SORRY, MR. CHUANG.  YOU CAN |
| 11:07AM | 22 | CONTINUE. |
| 11:07AM | 23 | PROSPECTIVE JUROR:  I CAN TRY TO PUT ASIDE THE BIAS |
| 11:07AM | 24 | AS I SAID AND ONLY LOOK AT THE FACTS. |
| 11:07AM | 25 | MR. DOWNEY:  DO YOU THINK WHEN WE START THE TRIAL OR |

11:07AM 1    THE PRESENTATION OF EVIDENCE THAT, JUST AS MS. HOLMES'S

11:07AM 2    COUNSEL, THAT WE MIGHT BE A LITTLE BEHIND BECAUSE YOU ALREADY

11:07AM 3    HAVE A VIEW OF OUR CLIENT FROM THAT DOCUMENTARY?

11:07AM 4         PROSPECTIVE JUROR:  NO.  I WILL GIVE THE TRIAL LIKE

11:07AM 5    A FAIR GROUND, A FAIR SHOT FROM BOTH SIDES.

11:07AM 6         MR. DOWNEY:  WE WANT YOUR HONEST VIEW OF THAT

11:07AM 7    BECAUSE IT'S OBVIOUSLY IMPORTANT TO US IN MAKING DECISIONS AND

11:07AM 8    IT'S IMPORTANT TO JUDGE DAVILA.

11:07AM 9     SO DO YOU THINK IF THE PERSON INVOLVED HERE WERE NOT

11:07AM 10   MS. HOLMES, BUT SOMEBODY WHO WAS CLOSE TO YOU, THAT YOU'RE

11:08AM 11   SOMEONE WHO WOULD BE PROCEEDING WITHOUT ANY BIAS AS A JUROR?

11:08AM 12   WOULD YOU WANT SOMEONE WITH YOUR MINDSET TO BE A JUROR?

11:08AM 13        PROSPECTIVE JUROR:  NO.  I WANT A FAIR JUROR.

11:08AM 14        MR. DOWNEY:  TELL ME WHY THAT IS.

11:08AM 15        PROSPECTIVE JUROR:  WELL, BECAUSE I DON'T WANT ANY

11:08AM 16   BIAS OR OPINION TO AFFECT THE FAIRNESS OF THE TRIAL, SO I WOULD

11:08AM 17   WANT SOMEBODY, LIKE, WITH UNBIASSED OPINION TO COME IN AS A

11:08AM 18   JUROR.

11:08AM 19        MR. DOWNEY:  I APPRECIATE YOUR HONESTY, SIR, AND

11:08AM 20   OPENNESS WITH US.  I KNOW IT'S NOT EASY TO COME TO THIS FORUM,

11:08AM 21   SO I APPRECIATE IT.

11:08AM 22        THE COURT:  ANYTHING FURTHER?

11:08AM 23        MR. DOWNEY:  NOTHING, YOUR HONOR.

11:08AM 24        THE COURT:  SO, MR. CHUANG, THANK YOU FOR YOUR

11:08AM 25   CANDOR.  THANK YOU FOR BEING HONEST WITH US.

| | | |
|---|---|---|
| 11:08AM | 1 | SO WHAT I HEARD YOU SAY A MOMENT AGO TO MR. DOWNEY'S |
| 11:08AM | 2 | QUESTION, I'M NOT SURE -- I WANT TO MAKE SURE YOU UNDERSTOOD |
| 11:08AM | 3 | HIS QUESTION. |
| 11:09AM | 4 | I THINK HIS QUESTION WAS, IF YOU HAD A FAMILY MEMBER WHO |
| 11:09AM | 5 | WAS IN A SITUATION AND THEY WERE IN A TRIAL AND THEY HAD A |
| 11:09AM | 6 | JUROR WHO HAD YOUR MINDSET ABOUT THE CASE, WOULD YOU BE |
| 11:09AM | 7 | COMFORTABLE HAVING THAT PERSON ON THE JURY? |
| 11:09AM | 8 | DO YOU UNDERSTAND THAT QUESTION?  DID YOU UNDERSTAND THAT? |
| 11:09AM | 9 | I THINK WHAT HE WAS ASKING YOU IN ESSENCE IS, IS YOUR BIAS |
| 11:09AM | 10 | SUCH THAT -- AND I'M NOT SAYING IT'S WRONG, GOOD, BAD, |
| 11:09AM | 11 | ANYTHING, BUT DO YOU HOLD A BIAS?  DO YOU HOLD STRONG FEELINGS |
| 11:09AM | 12 | ABOUT THIS CASE SUCH THAT YOU THINK YOU CAN'T BE FAIR? |
| 11:09AM | 13 | PROSPECTIVE JUROR:  I DON'T HAVE A STRONG FEELING |
| 11:09AM | 14 | ABOUT THIS CASE.  I DON'T FEEL A STRONG FEELING ABOUT THIS |
| 11:09AM | 15 | CASE. |
| 11:09AM | 16 | THE COURT:  OKAY.  YOU HAVE SHARED WITH US WHAT YOU |
| 11:09AM | 17 | HAVE SEEN AND WHAT YOU HAVE HEARD IN THAT SHOW.  YOU SAID THAT |
| 11:10AM | 18 | THEY SAID SOME THINGS THERE THAT MADE AN IMPRESSION ON YOU. |
| 11:10AM | 19 | LET ME JUST ASK YOU, CAN YOU BE FAIR TO MS. HOLMES?  DO |
| 11:10AM | 20 | YOU THINK YOU COULD BE FAIR TO HER? |
| 11:10AM | 21 | PROSPECTIVE JUROR:  YEAH, I THINK I CAN BE FAIR. |
| 11:10AM | 22 | THE COURT:  OKAY.  CAN YOU PUT ASIDE ALL THAT YOU |
| 11:10AM | 23 | HAVE SEEN IN THAT SHOW BEFORE AND LISTEN TO THIS CASE AND HEAR |
| 11:10AM | 24 | THIS EVIDENCE WITHOUT, WITHOUT LETTING ANY OF THAT COME IN AND |
| 11:10AM | 25 | AFFECT YOUR JUDGMENT ON THIS CASE? |

| | | |
|---|---|---|
| 11:10AM | 1 | PROSPECTIVE JUROR:  YES, I BELIEVE I CAN. |
| 11:10AM | 2 | THE COURT:  DO YOU WANT TO THINK ABOUT THAT ANSWER? |
| 11:10AM | 3 | IT'S -- IT'S -- I'M JUST SAYING, IT MIGHT BE A DIFFICULT THING |
| 11:10AM | 4 | TO DO IF YOU'VE SEEN THIS, SEEN SOMETHING, EVEN IF IT'S A |
| 11:10AM | 5 | COUPLE YEARS AGO, AND THEN IN THIS CASE IT'S HIGHLY LIKELY THAT |
| 11:10AM | 6 | YOU'LL HEAR INFORMATION THAT MIGHT BE SIMILAR TO WHAT YOU SAW |
| 11:10AM | 7 | ON THAT DOCUMENTARY, AND IT MAY CAUSE YOU TO THINK, WAIT A |
| 11:10AM | 8 | MINUTE, I REMEMBER READING THIS OR SEEING THIS, WHY IS THIS |
| 11:11AM | 9 | DIFFERENT? |
| 11:11AM | 10 | BUT THAT'S NOT WHAT YOUR JOB HERE IS.  YOUR JOB IS JUST TO |
| 11:11AM | 11 | DECIDE THE CASE ON WHAT YOU HEAR IN THIS COURTROOM.  I KNOW YOU |
| 11:11AM | 12 | UNDERSTAND THAT.  I'VE SAID IT SEVERAL TIMES. |
| 11:11AM | 13 | BUT I SAY IT SEVERAL TIMES BECAUSE IT'S CRITICAL.  IT'S |
| 11:11AM | 14 | THE MOST IMPORTANT THING.  I JUST WANT TO KNOW WHETHER OR NOT |
| 11:11AM | 15 | YOU CAN DO THAT. |
| 11:11AM | 16 | AND IF YOU CAN'T, THAT'S FINE.  THAT'S FINE. |
| 11:11AM | 17 | IF YOU CAN, THAT'S FINE, TOO. |
| 11:11AM | 18 | THAT'S JUST A QUESTION THAT THESE LAWYERS AND I WOULD LIKE |
| 11:11AM | 19 | TO KNOW. |
| 11:11AM | 20 | PROSPECTIVE JUROR:  YEAH, I BELIEVE I CAN DO THAT, I |
| 11:11AM | 21 | CAN BE FAIR. |
| 11:11AM | 22 | THE COURT:  OKAY.  DO YOU HAVE ANY QUESTION ABOUT -- |
| 11:11AM | 23 | YOU KNOW, THIS IS A LONG TRIAL.  MAYBE SIX WEEKS FROM NOW YOU |
| 11:11AM | 24 | MIGHT THINK, OH, I REMEMBER THIS, OH, MAYBE I BETTER THINK |
| 11:11AM | 25 | DIFFERENTLY BECAUSE WHAT I SAW IN THAT SHOW IS DIFFERENT FROM |

| | | |
|---|---|---|
| 11:11AM | 1 | WHAT HAPPENED HERE IN THE COURTROOM. |
| 11:11AM | 2 | IS THAT SOMETHING THAT YOU THINK COULD HAPPEN?  I KNOW YOU |
| 11:11AM | 3 | CAN'T PREDICT THE FUTURE, BUT, YEAH, THAT MIGHT HAPPEN. |
| 11:11AM | 4 | PROSPECTIVE JUROR:  WELL, THAT WAS A COUPLE YEARS |
| 11:12AM | 5 | AGO SO I DON'T HAVE, LIKE, VERY FRESH MEMORIES OF THEM. |
| 11:12AM | 6 | THE COURT:  OKAY.  OKAY. |
| 11:12AM | 7 | MR. DOWNEY, ANY FOLLOWUP? |
| 11:12AM | 8 | MR. DOWNEY:  LET ME JUST ASK YOU, SINCE YOU WATCHED |
| 11:12AM | 9 | THE DOCUMENTARY, HAVE YOU EXPRESSED VIEWS ABOUT MS. HOLMES OR |
| 11:12AM | 10 | THERANOS TO ANYONE? |
| 11:12AM | 11 | PROSPECTIVE JUROR:  NO. |
| 11:12AM | 12 | MR. DOWNEY:  YOU'VE NEVER DISCUSSED WATCHING THE |
| 11:12AM | 13 | DOCUMENTARY WITH ANYONE? |
| 11:12AM | 14 | PROSPECTIVE JUROR:  NO. |
| 11:12AM | 15 | MR. DOWNEY:  WHEN YOU SAY YOU THINK YOU'LL BE ABLE |
| 11:12AM | 16 | TO PUT IT ASIDE AND BE FAIR, DO YOU HAVE IN MIND HOW YOU'LL DO |
| 11:12AM | 17 | THAT? |
| 11:12AM | 18 | PROSPECTIVE JUROR:  WELL, I WILL LOOK AT THE FACTS |
| 11:12AM | 19 | AND THE EVIDENCE AS PRESENTED AND DECIDE BASED ON THOSE ONLY. |
| 11:12AM | 20 | MR. DOWNEY:  ALL RIGHT.  THANK YOU, SIR.  I |
| 11:12AM | 21 | APPRECIATE THAT. |
| 11:12AM | 22 | PROSPECTIVE JUROR:  YOU'RE WELCOME. |
| 11:12AM | 23 | THE COURT:  ALL RIGHT. |
| 11:12AM | 24 | MR. SCHENK? |
| 11:12AM | 25 | MR. SCHENK:  NO FOLLOWUP, YOUR HONOR. |

| | | |
|---|---|---|
| 11:12AM | 1 | THE COURT:  ALL RIGHT.  MR. CHUANG, THANK YOU SO |
| 11:12AM | 2 | MUCH FOR TALKING WITH US.  JUST LEAVE THE MICROPHONE.  WHY |
| 11:12AM | 3 | DON'T YOU GO AHEAD AND TAKE YOUR BREAK, AND WE'LL PROBABLY HAVE |
| 11:13AM | 4 | FOLKS COME BACK IN ABOUT SEVEN MINUTES. |
| 11:13AM | 5 | PROSPECTIVE JUROR:  OKAY. |
| 11:13AM | 6 | THE COURT:  THANK YOU SO MUCH, SIR. |
| 11:13AM | 7 | DO YOU WANT TO TAKE A BREAK FOR ABOUT SEVEN MINUTES? |
| 11:13AM | 8 | YEAH. |
| 11:13AM | 9 | THE CLERK:  COURT IS IN RECESS. |
| 11:13AM | 10 | (RECESS FROM 11:13 A.M. UNTIL 11:23 A.M.) |
| 11:23AM | 11 | (JURY IN AT 11:23 A.M.) |
| 11:23AM | 12 | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES |
| 11:23AM | 13 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 11:23AM | 14 | THANK YOU FOR THE BREAK, LADIES AND GENTLEMEN.  LET'S |
| 11:23AM | 15 | CONTINUE. |
| 11:23AM | 16 | ALL RIGHT.  I SAW SOME OTHER HANDS IN RESPONSE TO MY |
| 11:23AM | 17 | QUESTION ABOUT NEWS COVERAGE. |
| 11:24AM | 18 | LET'S GO BACK TO THE BOX HERE.  WERE THERE ANY OTHER HANDS |
| 11:24AM | 19 | HERE IN RESPONSE TO MY QUESTION ABOUT NEWS COVERAGE? |
| 11:24AM | 20 | I SEE NO HANDS. |
| 11:24AM | 21 | I BEG YOUR PARDON.  IS THAT MR. RAO? |
| 11:24AM | 22 | PROSPECTIVE JUROR:  YES. |
| 11:24AM | 23 | THE COURT:  WHY DON'T YOU COME TO THE MICROPHONE, |
| 11:24AM | 24 | SIR. |
| 11:24AM | 25 | PROSPECTIVE JUROR:  I'M JUROR NUMBER 26. |

| | | |
|---|---|---|
| 11:24AM | 1 | THE COURT: THANK YOU. |
| 11:24AM | 2 | PROSPECTIVE JUROR: I DID SEE A DOCUMENTARY A COUPLE |
| 11:24AM | 3 | OF YEARS BACK, AND SINCE THEN I'M NOT FOLLOWING THE CASE, BUT |
| 11:24AM | 4 | JUST THAT IT PIQUED MY INTEREST AND I HAVE BEEN LOOKING AT THE |
| 11:24AM | 5 | MAIN HEADLINES, BUT NOT THE CASE DETAILS AND SUCH. YEAH. I |
| 11:24AM | 6 | KNOW THERE'S SOMETHING GOING ON THERE. |
| 11:24AM | 7 | THE COURT: YES. AND CAN YOU TELL ME WHAT THE MOST |
| 11:24AM | 8 | RECENT THING THAT YOU SAW OR HEARD OR -- |
| 11:24AM | 9 | PROSPECTIVE JUROR: YEAH. SO MORE RECENTLY -- I'M |
| 11:24AM | 10 | NOT AN AVID FOLLOWER, SO I HAVEN'T LOOKED UP ANY OF THE |
| 11:25AM | 11 | NEWSPAPER REPORTS ON THE INTERNET FOR THIS. I HAVE BEEN VERY |
| 11:25AM | 12 | BUSY AT WORK. |
| 11:25AM | 13 | SO SUBSEQUENTLY I GOT THE CALL TO COME TO JURY DUTY FOR |
| 11:25AM | 14 | THIS CASE, SO I HAVEN'T DONE ANY RESEARCH SINCE THEN. |
| 11:25AM | 15 | THE COURT: OKAY. SO THAT WAS THE -- THE LAST THING |
| 11:25AM | 16 | THAT YOU SAW WAS WHAT YOU TOLD US ABOUT IN YOUR QUESTIONNAIRE? |
| 11:25AM | 17 | PROSPECTIVE JUROR: RIGHT. |
| 11:25AM | 18 | THE COURT: AND I THINK YOU SAID IT WAS A -- |
| 11:25AM | 19 | PROSPECTIVE JUROR: A COUPLE OF YEARS BACK I THINK |
| 11:25AM | 20 | THERE WAS A DOCUMENTARY ON "20/20," I THINK. |
| 11:25AM | 21 | THE COURT: YES, ABC "20/20"? |
| 11:25AM | 22 | PROSPECTIVE JUROR: YEAH. |
| 11:25AM | 23 | THE COURT: RIGHT. AND YOU WATCHED THAT ENTIRE |
| 11:25AM | 24 | DOCUMENTARY? |
| 11:25AM | 25 | PROSPECTIVE JUROR: YES. |

| | | |
|---|---|---|
| 11:25AM | 1 | THE COURT:  DO YOU REMEMBER TODAY ANYTHING WITH |
| 11:25AM | 2 | GREAT CLARITY -- I'M NOT GOING TO ASK YOU WHAT IT WAS, BUT DO |
| 11:25AM | 3 | YOU HAVE RECALL OF THAT? |
| 11:25AM | 4 | PROSPECTIVE JUROR:  I DO HAVE RECALL.  I THINK THE |
| 11:25AM | 5 | THING THAT STRUCK ME WAS THE COMPANY -- |
| 11:25AM | 6 | THE COURT:  YES. |
| 11:25AM | 7 | PROSPECTIVE JUROR:  -- SHE WAS SO YOUNG AND IT WAS |
| 11:25AM | 8 | AN INSPIRATION OF HOW THE COMPANY EVOLVED AND WHAT CASES WERE |
| 11:25AM | 9 | PART OF THAT. |
| 11:25AM | 10 | THE COURT:  BUT IS THERE ANYTHING ABOUT WHAT YOU SAW |
| 11:25AM | 11 | AND WHAT YOU RECALL THAT YOU THINK, MR. RAO, WILL AFFECT YOUR |
| 11:25AM | 12 | ABILITY TO BE FAIR TO BOTH SIDES HERE? |
| 11:25AM | 13 | PROSPECTIVE JUROR:  NO, IT WILL NOT IMPAIR MY |
| 11:26AM | 14 | JUDGMENT. |
| 11:26AM | 15 | THE COURT:  OKAY.  THANK YOU.  YOU CAN BE FAIR TO |
| 11:26AM | 16 | BOTH SIDES? |
| 11:26AM | 17 | PROSPECTIVE JUROR:  YES. |
| 11:26AM | 18 | THE COURT:  ALL RIGHT.  AND YOU WILL DECIDE THE CASE |
| 11:26AM | 19 | ONLY ON THE EVIDENCE THAT YOU HEAR IN THIS CASE? |
| 11:26AM | 20 | PROSPECTIVE JUROR:  YES. |
| 11:26AM | 21 | THE COURT:  YOU CAN DO THAT NOT WITH ANYTHING ELSE |
| 11:26AM | 22 | THAT YOU MAY HAVE SEEN IN THE PAST? |
| 11:26AM | 23 | PROSPECTIVE JUROR:  NO. |
| 11:26AM | 24 | THE COURT:  ALL RIGHT.  I THINK IN RESPONSE TO |
| 11:26AM | 25 | QUESTION NUMBER 39, YOU TOLD US THAT IT WOULD NOT AFFECT YOUR |

| | | |
|---|---|---|
| 11:26AM | 1 | ABILITY TO BE FAIR, AND QUESTION 65 YOU SAID YOU COULD BE FAIR? |
| 11:26AM | 2 | PROSPECTIVE JUROR:  YES. |
| 11:26AM | 3 | THE COURT:  THANK YOU.  YOU CAN BE SEATED.  THANK |
| 11:26AM | 4 | YOU. |
| 11:26AM | 5 | ALL RIGHT.  LET'S SEE.  WERE THERE OTHER HANDS HERE? |
| 11:26AM | 6 | LET'S STAY IN OUR FRONT ROW HERE. |
| 11:26AM | 7 | MR. WITHERSPOON? |
| 11:26AM | 8 | PROSPECTIVE JUROR:  YES. |
| 11:26AM | 9 | THE COURT:  WHY DON'T YOU COME TO THE MICROPHONE. |
| 11:26AM | 10 | THANK YOU. |
| 11:27AM | 11 | PROSPECTIVE JUROR:  I'M JUROR 29. |
| 11:27AM | 12 | THE COURT:  YES, SIR, THANK YOU. |
| 11:27AM | 13 | PROSPECTIVE JUROR:  LIKE THE OTHERS, I SAW STUFF |
| 11:27AM | 14 | ONLINE AND HEADLINES, AND I THINK I KNOW SOME OF THE DETAILS OF |
| 11:27AM | 15 | THE CASE EITHER FROM A TED TALK OR SOMETHING.  IT WAS SOMETHING |
| 11:27AM | 16 | ON YOUTUBE, RIGHT, AND I DON'T THINK I WATCHED IT ALL OF THE |
| 11:27AM | 17 | WAY THROUGH. |
| 11:27AM | 18 | I KNOW SOME OF THE DETAILS OF THE CASE, BUT I DON'T KNOW |
| 11:27AM | 19 | ANYTHING ABOUT THE CURRENT, WHAT WE'RE HERE FOR. |
| 11:27AM | 20 | THE COURT:  THANK YOU, MR. WITHERSPOON. |
| 11:27AM | 21 | WHEN YOU SAY YOU KNOW THE DETAILS OF THE CASE, IS THAT |
| 11:27AM | 22 | FROM WHAT YOU'VE SEEN? |
| 11:27AM | 23 | PROSPECTIVE JUROR:  JUST SORT OF THE GENERAL |
| 11:27AM | 24 | TIMELINE AND WHAT WAS DISCUSSED IN ANY OF THOSE.  BUT I DON'T |
| 11:27AM | 25 | REALLY HAVE MUCH RECOLLECTION OF IT.  THERE WASN'T -- |

| | | |
|---|---|---|
| 11:27AM | 1 | THE COURT:  I SEE.  SO THE SOURCE OF YOUR |
| 11:27AM | 2 | INFORMATION IS FROM THOSE SHOWS THAT YOU'VE SEEN, THE YOUTUBE |
| 11:27AM | 3 | AND THAT?  IS THAT WHAT YOU'RE SAYING? |
| 11:27AM | 4 | PROSPECTIVE JUROR:  YES, YOUR HONOR. |
| 11:27AM | 5 | THE COURT:  I SEE.  AND HOW LONG -- WHAT IS THE MOST |
| 11:27AM | 6 | RECENT EXPOSURE, THE MOST RECENT THING THAT YOU HAVE SEEN? |
| 11:28AM | 7 | PROSPECTIVE JUROR:  JUST THE NEWS AROUND THE CASE |
| 11:28AM | 8 | UNFOLDING RIGHT NOW, JUST THE HEADLINES. |
| 11:28AM | 9 | THE COURT:  AND TELL ME THE MOST RECENT THING THAT |
| 11:28AM | 10 | YOU'VE READ, JUST THE DATE AND TIME STAMP THAT. |
| 11:28AM | 11 | PROSPECTIVE JUROR:  OH, MY GOSH.  THIS WEEK I SAW A |
| 11:28AM | 12 | HEADLINE, BUT I SORT OF AVOIDED IT. |
| 11:28AM | 13 | THE COURT:  DID YOU READ THE ARTICLE? |
| 11:28AM | 14 | PROSPECTIVE JUROR:  NO. |
| 11:28AM | 15 | THE COURT:  AND THAT WAS AT A TIME BEFORE YOU FILLED |
| 11:28AM | 16 | OUT THE QUESTIONNAIRE OR AFTER? |
| 11:28AM | 17 | PROSPECTIVE JUROR:  IT WAS AFTER. |
| 11:28AM | 18 | THE COURT:  OKAY.  AND IN THE QUESTIONNAIRE -- I'M |
| 11:28AM | 19 | CURIOUS IF YOU REMEMBER THE QUESTIONNAIRE TELLING YOU, I THINK |
| 11:28AM | 20 | IT WAS ONE OF THE QUESTIONS HAD A LONG STATEMENT ABOUT JURORS |
| 11:28AM | 21 | NOT LETTING OUTSIDE INFORMATION AFFECT THEM, AND HAVING READ |
| 11:28AM | 22 | THAT, IS THAT WHY YOU DIDN'T FINISH THAT ARTICLE? |
| 11:28AM | 23 | PROSPECTIVE JUROR:  YES, SIR. |
| 11:28AM | 24 | THE COURT:  ALL RIGHT.  WELL, THANK YOU.  I |
| 11:28AM | 25 | APPRECIATE YOUR FIDELITY TO THE INSTRUCTIONS AND TO THE |

| | | |
|---|---|---|
| 11:28AM | 1 | OBLIGATIONS OF THE JURORS. |
| 11:28AM | 2 | SO, MR. WITHERSPOON, IS THERE ANYTHING ABOUT YOUR |
| 11:28AM | 3 | RECOLLECTION OF WHAT YOU'VE SEEN ON YOUTUBE OR ANY OF THOSE |
| 11:28AM | 4 | THINGS THAT YOU THINK WILL AFFECT IN ANY WAY YOUR ABILITY TO BE |
| 11:29AM | 5 | FAIR AND IMPARTIAL TO BOTH SIDES HERE? |
| 11:29AM | 6 | PROSPECTIVE JUROR:  I DON'T THINK IT WILL AFFECT MY |
| 11:29AM | 7 | ABILITY TO BE IMPARTIAL. |
| 11:29AM | 8 | THE COURT:  OKAY.  DO YOU HAVE GREAT CLARITY AND |
| 11:29AM | 9 | ASSURANCE OF THAT? |
| 11:29AM | 10 | PROSPECTIVE JUROR:  YES. |
| 11:29AM | 11 | THE COURT:  DO YOU THINK THAT YOU MIGHT, IF YOU SIT |
| 11:29AM | 12 | AS A JUROR IN THIS CASE AND SOME EVIDENCE COMES UP, THAT IT |
| 11:29AM | 13 | MIGHT TRIGGER A RECALL FROM SOMETHING YOU'VE SEEN IN THAT |
| 11:29AM | 14 | VIDEO, DO YOU THINK YOU MIGHT HAVE TROUBLE BALANCING WHAT |
| 11:29AM | 15 | YOU'VE SEEN ON THE YOUTUBE VIS-A-VIS WHAT YOU'VE HEARD IN THE |
| 11:29AM | 16 | COURTROOM?  WOULD THAT BE AN ISSUE FOR YOU? |
| 11:29AM | 17 | PROSPECTIVE JUROR:  NO. |
| 11:29AM | 18 | THE COURT:  WOULD YOU BE ABLE TO SEPARATE THOSE? |
| 11:29AM | 19 | PROSPECTIVE JUROR:  YES. |
| 11:29AM | 20 | THE COURT:  YOU'VE HEARD ME TALK AT GREAT LENGTH |
| 11:29AM | 21 | ABOUT THE NEED TO DECIDE THE CASE, IF YOU'RE A JUROR, ONLY ON |
| 11:29AM | 22 | THE EVIDENCE IN THIS COURTROOM.  TO DO THAT, YOU'RE FAIR TO THE |
| 11:29AM | 23 | GOVERNMENT AND YOU'RE FAIR TO MS. HOLMES.  CAN YOU DO THAT, |
| 11:29AM | 24 | SIR? |
| 11:29AM | 25 | PROSPECTIVE JUROR:  YES. |

| | | |
|---|---|---|
| 11:29AM | 1 | THE COURT:  RIGHT.  ANY QUESTION ABOUT THAT? |
| 11:29AM | 2 | PROSPECTIVE JUROR:  NO. |
| 11:30AM | 3 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU. |
| 11:30AM | 4 | ARE THERE OTHER HANDS IN THE FRONT ROW?  LET ME SEE, IS |
| 11:30AM | 5 | THAT MS. GROGAN? |
| 11:30AM | 6 | I'M SORRY. |
| 11:30AM | 7 | PROSPECTIVE JUROR:  I'M SORRY, I'M JUROR NUMBER 31. |
| 11:30AM | 8 | THE COURT:  YES. |
| 11:30AM | 9 | PROSPECTIVE JUROR:  SO I THINK IT WOULD BE IMPORTANT |
| 11:30AM | 10 | TO MENTION THAT AT WORK I PARTICIPATE IN SOCIAL CHANNELS VIA |
| 11:30AM | 11 | OUR CHAT PROGRAM SLACK, AND THERE WAS AN ARTICLE SHARED SINCE |
| 11:30AM | 12 | THE QUESTIONNAIRE WAS FILLED OUT. |
| 11:30AM | 13 | I DID NOT READ IT, HOWEVER.  I DID SEE THE TITLE, AND SO I |
| 11:30AM | 14 | WANT TO MAKE SURE THAT I SAY THAT. |
| 11:30AM | 15 | THE COURT:  THANK YOU FOR RECOGNIZING THE IMPORTANCE |
| 11:30AM | 16 | OF THAT.  I APPRECIATE THAT.  WE ALL APPRECIATE THAT. |
| 11:30AM | 17 | YOU SAW THE HEADLINE, BUT YOU DIDN'T READ THE ARTICLE, AND |
| 11:31AM | 18 | THIS WAS SUBSEQUENT TO YOUR COMPLETING THE QUESTIONNAIRE? |
| 11:31AM | 19 | PROSPECTIVE JUROR:  CORRECT.  IT WAS AFTER. |
| 11:31AM | 20 | THE COURT:  RIGHT.  I SEE.  AND YOU RECOGNIZED YOUR |
| 11:31AM | 21 | RESPONSIBILITY TO STAY AWAY FROM THAT? |
| 11:31AM | 22 | PROSPECTIVE JUROR:  CORRECT, YES. |
| 11:31AM | 23 | THE COURT:  RIGHT.  IS THAT THE ONLY EXPOSURE THAT |
| 11:31AM | 24 | YOU'VE HAD? |
| 11:31AM | 25 | PROSPECTIVE JUROR:  YES. |

11:31AM  1              THE COURT:  OKAY.  ANYTHING ABOUT THAT EXPOSURE THAT

11:31AM  2      WILL IMPAIR YOUR ABILITY TO BE FAIR AND IMPARTIAL?

11:31AM  3              PROSPECTIVE JUROR:  NO, I DON'T THINK SO.

11:31AM  4              THE COURT:  ANYTHING AT ALL THAT YOU THINK RAISES A

11:31AM  5      QUESTION OF BIAS IN YOUR MIND AS TOWARDS OR AGAINST EITHER OF

11:31AM  6      THE PARTIES IN THIS CASE?

11:31AM  7              PROSPECTIVE JUROR:  I DO BELIEVE THAT MY -- I MEAN,

11:31AM  8      I MENTIONED IN THE QUESTIONNAIRE AS WELL THAT I'VE CONSUMED

11:31AM  9      SOME MATERIAL ABOUT THIS CASE, SO I DO BELIEVE THAT BEFORE

11:31AM 10      BEING CALLED TO JURY DUTY, YOU KNOW, I HAD SOME AWARENESS OF

11:31AM 11      IT.

11:31AM 12          HOWEVER, I DO STILL ALSO BELIEVE THAT I AM CAPABLE OF

11:31AM 13      PUTTING THOSE BIASES ASIDE, CRITICALLY THINKING ABOUT, YOU

11:32AM 14      KNOW, WHAT IS ACTUALLY PRESENTED IN THE TRIAL.

11:32AM 15              THE COURT:  SO I THINK YOU READ A BOOK ABOUT THIS

11:32AM 16      CASE?

11:32AM 17              PROSPECTIVE JUROR:  I DID, YES.

11:32AM 18              THE COURT:  RIGHT.  RIGHT.  AND HOW LONG AGO WAS

11:32AM 19      THAT?

11:32AM 20              PROSPECTIVE JUROR:  AT LEAST A YEAR AGO.  PROBABLY

11:32AM 21      MORE.  BEFORE THE PANDEMIC.

11:32AM 22              THE COURT:  OKAY.

11:32AM 23              PROSPECTIVE JUROR:  WHATEVER TIME WAS BEFORE THEN.

11:32AM 24              THE COURT:  RIGHT.  IT SEEMS LIKE SUCH A LONG TIME

11:32AM 25      AGO, DOESN'T IT?

11:32AM  1          PROSPECTIVE JUROR:  YES.

11:32AM  2          THE COURT:  RIGHT.  AND I READ THAT IN YOUR

11:32AM  3   QUESTIONNAIRE, AND I APPRECIATE YOUR CANDOR.

11:32AM  4      THE QUESTION IT RAISES FOR ME, AND I'M SURE THESE LAWYERS,

11:32AM  5   TOO, YOU KNOW, MS. GROGAN HAS READ A BOOK THAT WAS SPECIFICALLY

11:32AM  6   POINTED TOWARDS AT LEAST THE FACTS THAT WERE DISCUSSED IN THIS

11:32AM  7   CASE.

11:32AM  8          PROSPECTIVE JUROR:  CORRECT.

11:32AM  9          THE COURT:  WHAT AND HOW WILL THAT IMPACT HER AS TO

11:32AM 10   SIT AS A -- YOU HEARD ME TALK AS WHAT WE'RE LOOKING FOR IS FAIR

11:32AM 11   AND UNBIASSED JURORS.  OF COURSE WE CAN'T ASK YOU TO UNREAD THE

11:32AM 12   BOOK.

11:32AM 13          PROSPECTIVE JUROR:  YEAH, I DON'T THINK I COULD DO

11:32AM 14   THAT.

11:32AM 15          THE COURT:  SO THEN THE NEXT STEP IS, WELL, HOW CAN

11:32AM 16   YOU -- HAVING READ THE BOOK, HOW CAN YOU, HOW CAN YOU PUT THAT

11:33AM 17   ASIDE, WHAT YOU'VE READ, AND BE A FAIR AND IMPARTIAL JUROR IN

11:33AM 18   THIS CASE.

11:33AM 19          PROSPECTIVE JUROR:  I THINK THAT'S A FAIR QUESTION.

11:33AM 20      I BELIEVE IT HAS TO DO WITH ACKNOWLEDGING WHERE KNOWLEDGE

11:33AM 21   COMES FROM AND BEING ABLE TO IDENTIFY THAT AND SAY THIS IS THE

11:33AM 22   KNOWLEDGE THAT I HAVE FROM THIS PERIOD.  IT'S NOT PART OF MY

11:33AM 23   DECISION MAKING.

11:33AM 24      I THINK I MENTIONED EARLIER THAT I BELIEVE, YOU KNOW, I

11:33AM 25   HAVE THE ABILITY TO PUT THOSE THINGS ASIDE AND I HAVE CRITICAL

11:33AM  1    THINKING SKILLS.

11:33AM  2        HOWEVER, THAT IS MY BELIEF AND I ATTEST TO THAT I WILL DO

11:33AM  3    WHAT I CAN TO MAKE SURE THAT THAT IS THE CASE.  YEAH.

11:33AM  4        THE COURT:  WELL, WHAT I HEAR YOU SAYING, AND I'M

11:33AM  5    NOT PUTTING WORDS IN YOUR MOUTH, BUT WHAT I HEAR YOU SAYING IS,

11:33AM  6    JUDGE, I'M GOING TO DO THE BEST THAT I CAN.

11:33AM  7        PROSPECTIVE JUROR:  YES.

11:34AM  8        THE COURT:  AND WHAT HAPPENS IF -- DO I HAVE TO BE

11:34AM  9    CONCERNED THAT MS. GROGAN IS DOING THE BEST THAT SHE CAN, BUT

11:34AM 10    AT ONE POINT SHE'S GOING TO REMEMBER CHAPTER, WHATEVER, 15 OR

11:34AM 11    SOMETHING AND NOW WE'RE OFF TO THE RACES BECAUSE THAT HAS

11:34AM 12    INFECTED HER --

11:34AM 13        PROSPECTIVE JUROR:  ABILITY?

11:34AM 14        THE COURT:  -- THOUGHT PROCESS.  RIGHT, RIGHT.

11:34AM 15        PROSPECTIVE JUROR:  BUT I THINK MY CORRECT APPROACH

11:34AM 16    WOULD BE TO LET YOU ALL KNOW AND EXCUSE MYSELF FOR SOME OTHER

11:34AM 17    KIND OF INFORMATION.  IS THAT CORRECT?  I DON'T KNOW IF THAT'S

11:34AM 18    THE RIGHT ANSWER.

11:34AM 19        THE COURT:  WELL, THIS ISN'T A TEST, I PROMISE YOU.

11:34AM 20    YOU'RE AFFILIATED WITH SLACK.

11:34AM 21        PROSPECTIVE JUROR:  I'M SORRY?

11:34AM 22        THE COURT:  ARE YOU AFFILIATED WITH SLACK?

11:34AM 23        PROSPECTIVE JUROR:  NO.  THAT WAS THE CHAT PROGRAM

11:34AM 24    THAT I WAS DESCRIBING EARLIER.

11:34AM 25        THE COURT:  I SEE.  THERE'S NO RIGHT OR WRONG

11:34AM  1     ANSWERS HERE.  THERE REALLY ISN'T.

11:34AM  2              PROSPECTIVE JUROR:  OKAY.

11:34AM  3              THE COURT:  WE'RE PROBING FOR FAIRNESS.  WE REALLY

11:34AM  4     ARE.  I HOPE YOU APPRECIATE THAT.

11:34AM  5              PROSPECTIVE JUROR:  THAT'S FAIR.  YES.

11:35AM  6              THE COURT:  AND THAT'S A CONCERN THAT I'M SURE THESE

11:35AM  7     LAWYERS HAVE, I HAVE, AS TO IT WILL BE A LONG TRIAL AND DOWN

11:35AM  8     THE ROAD, OKAY, HERE COMES CHAPTER 15, I CAN NO LONGER BE FAIR.

11:35AM  9        WE'RE ASKING YOU TO PREDICT, I SUPPOSE, TODAY.  CAN YOU BE

11:35AM 10     FAIR TODAY AND CAN YOU BE FAIR THROUGHOUT THE DURATION OF THE

11:35AM 11     TRIAL?  CAN YOU KEEP THAT SPIRIT OF FAIRNESS, THAT FIDELITY TO

11:35AM 12     FAIRNESS TO BOTH SIDES HERE?

11:35AM 13        THAT'S WHAT WE ASK OF YOU.  THAT'S WHAT WE ASK OF JURORS.

11:35AM 14     THAT'S WHAT WE'RE ASKING YOU TO DO.

11:35AM 15        WHAT DO YOU THINK?

11:35AM 16              PROSPECTIVE JUROR:  AS I MENTIONED IN MY

11:35AM 17     QUESTIONNAIRE, I DO BELIEVE THAT I HAVE THE CAPACITY TO, AGAIN,

11:35AM 18     CRITICALLY THINK ABOUT INFORMATION PRESENTED TO ME.

11:35AM 19        I DON'T THINK THAT ANY HUMAN ON THE PLANET IS CAPABLE OF

11:35AM 20     HAVING ABSOLUTELY NO BIASES, BUT IT'S MORE IMPORTANT THAT THEY

11:35AM 21     CAN ACKNOWLEDGE AND RECOGNIZE THAT THEY HAVE THEM.

11:36AM 22        THAT SAID, I AM ACTUALLY, LIKE, MAYBE A LITTLE SURPRISED

11:36AM 23     THAT CONSIDERING MY CONSUMPTION OF MEDIA I'M EVEN HERE, SO I

11:36AM 24     DON'T KNOW, MAYBE I -- I DON'T KNOW.

11:36AM 25              THE COURT:  I'M SORRY.  MAYBE YOU CAN EXPLAIN THAT

11:36AM    1    TO ME.

11:36AM    2                PROSPECTIVE JUROR:  YEAH.  I KIND OF LIKE ASSUMED

11:36AM    3    THAT THE FACT THAT I MENTIONED THAT I READ SOMETHING OR I EVEN

11:36AM    4    SAW SOMETHING, THAT THAT WOULD, YOU KNOW, LIKE DISMISS ME

11:36AM    5    IMMEDIATELY REGARDLESS OF WHETHER OR NOT I COULD SAY THAT I

11:36AM    6    WOULD PUT THAT ASIDE.

11:36AM    7                THE COURT:  RIGHT.  I SEE.

11:36AM    8          WELL, WE ASK JURORS TO BE CANDID ABOUT THEMSELVES, AND YOU

11:36AM    9    HAVE BEEN, AND YOUR COLLEAGUES HAVE BEEN, AND YOU'VE READ THE

11:36AM   10    BOOK, AND THAT'S WHY WE'RE PROBING, WHAT DOES THAT MEAN?

11:36AM   11    YOU'VE READ THE BOOK.  DOES THAT MEAN THAT YOU CAN'T BE FAIR?

11:36AM   12    IS THAT WHAT, IS THAT WHAT YOU'RE SAYING?  OR --

11:37AM   13                PROSPECTIVE JUROR:  I AM NOT SAYING THAT, NO.

11:37AM   14                THE COURT:  I SEE.

11:37AM   15          YOU'RE SAYING YOU'VE READ THE BOOK, YOU UNDERSTAND THE JOB

11:37AM   16    DESCRIPTION FOR A JUROR, AND YOU'RE TELLING ME THAT YOU CAN

11:37AM   17    ADHERE TO THE JOB DESCRIPTION OF A JUROR TO DECIDE THIS CASE

11:37AM   18    ONLY ON THE EVIDENCE HERE AND PUT ASIDE ANYTHING THAT YOU'VE

11:37AM   19    BEEN EXPOSED TO?

11:37AM   20          CAN YOU DO THAT?

11:37AM   21                PROSPECTIVE JUROR:  CORRECT.  YES.

11:37AM   22                THE COURT:  ANY DOUBT ABOUT THAT?

11:37AM   23                PROSPECTIVE JUROR:  NO.

11:37AM   24                THE COURT:  OKAY.  I'M GOING TO ASK MR. SCHENK IF HE

11:37AM   25    HAS ANY QUESTIONS ON THIS TOPIC.

11:37AM   1          MR. SCHENK:  NO QUESTIONS.  THANK YOU.

11:37AM   2          THE COURT:  MR. DOWNEY?

11:37AM   3          MR. DOWNEY:  MS. GROGAN, YOU READ THE BOOK

11:37AM   4     "BAD BLOOD;" CORRECT?

11:37AM   5          PROSPECTIVE JUROR:  CORRECT.

11:37AM   6          MR. DOWNEY:  HOW LONG DID IT TAKE YOU TO READ THAT?

11:37AM   7          PROSPECTIVE JUROR:  OH, I DON'T KNOW.

11:37AM   8          MR. DOWNEY:  DO YOU HAVE AN ESTIMATE?

11:37AM   9          PROSPECTIVE JUROR:  PROBABLY OVER A WEEK OR MORE,

11:37AM  10     YEAH.

11:37AM  11          MR. DOWNEY:  OKAY.  AND WHILE YOU WERE READING IT,

11:37AM  12     DID YOU DISCUSS IT WITH ANYONE?

11:38AM  13          PROSPECTIVE JUROR:  YES, MY PARTNER.

11:38AM  14          MR. DOWNEY:  AND DID YOU EXPRESS ANY VIEWS ABOUT

11:38AM  15     THERANOS OR MS. HOLMES WHEN YOU WERE DISCUSSING IT?

11:38AM  16          PROSPECTIVE JUROR:  YES.

11:38AM  17          MR. DOWNEY:  YOUR HONOR, I WONDER IF WE MIGHT --

11:38AM  18          THE COURT:  YOU WANT TO PASS --

11:38AM  19          MR. DOWNEY:  -- PASS ON THAT ISSUE FOR RIGHT NOW AND

11:38AM  20     MAYBE WE CAN HAVE A SEPARATE DISCUSSION RELATED TO THAT.

11:38AM  21          THE COURT:  ANY OTHER QUESTIONS YOU WANT TO ASK NOW,

11:38AM  22     MR. DOWNEY?

11:38AM  23          MR. DOWNEY:  YEAH.  I JUST WANT TO ASK YOU ABOUT

11:38AM  24     YOUR STATEMENTS IN THE QUESTIONNAIRE AS TO BIAS.

11:38AM  25          DO YOU FEEL LIKE YOU'VE BEEN EXPOSED TO A LOT OF

| | | |
|---|---|---|
| 11:38AM | 1 | INFORMATION ABOUT WHAT HAPPENED AT THERANOS? |
| 11:38AM | 2 | PROSPECTIVE JUROR:  I WOULD PROBABLY ASK YOU TO |
| 11:38AM | 3 | DEFINE "A LOT." |
| 11:38AM | 4 | MR. DOWNEY:  WELL, THAT'S A FAIR QUESTION. |
| 11:38AM | 5 | DID YOU FEEL LIKE YOU LEARNED AT LEAST A BASIC STORY AS TO |
| 11:38AM | 6 | WHAT HAS BEEN CLAIMED THAT HAPPENED AT THERANOS? |
| 11:38AM | 7 | PROSPECTIVE JUROR:  I BELIEVE I LEARNED A BASIC |
| 11:39AM | 8 | STORY, YES. |
| 11:39AM | 9 | THE COURT:  AND WITHOUT TELLING US WHAT IT IS, HAS |
| 11:39AM | 10 | THAT GIVEN YOU ANY VIEW ON MS. HOLMES ONE WAY OR ANOTHER? |
| 11:39AM | 11 | PROSPECTIVE JUROR:  NOT NECESSARILY, NO. |
| 11:39AM | 12 | MR. DOWNEY: OKAY.  SO YOU'VE BEEN ABLE TO ABSORB |
| 11:39AM | 13 | THAT WITHOUT HAVING A VIEW AS TO MS. HOLMES? |
| 11:39AM | 14 | PROSPECTIVE JUROR:  CORRECT. |
| 11:39AM | 15 | MR. DOWNEY:  OKAY.  WE CAN HAVE THE DISCUSSION I |
| 11:39AM | 16 | THINK RELATED TO THE REST OF IT LATER. |
| 11:39AM | 17 | THE COURT:  WE'LL SEE IF WE HAVE A DISCUSSION. |
| 11:39AM | 18 | MS. GROGAN.  THANK YOU. |
| 11:39AM | 19 | ANYTHING FURTHER, MR. DOWNEY? |
| 11:39AM | 20 | MR. DOWNEY:  LET ME ASK YOU ONE QUESTION MAYBE OUT |
| 11:39AM | 21 | OF CURIOSITY. |
| 11:39AM | 22 | PROSPECTIVE JUROR:  SURE. |
| 11:39AM | 23 | MR. DOWNEY:  YOU SAID YOU WERE SURPRISED TO BE |
| 11:39AM | 24 | HERE -- |
| 11:39AM | 25 | PROSPECTIVE JUROR:  YES. |

| 11:39AM | 1 | MR. DOWNEY:  -- SIMPLY BECAUSE YOU READ THE BOOK. |
|---|---|---|

11:39AM   1          MR. DOWNEY:  -- SIMPLY BECAUSE YOU READ THE BOOK.

11:39AM   2          PROSPECTIVE JUROR:  RIGHT.

11:39AM   3          MR. DOWNEY:  AND TELL ME, WHAT ASSUMPTION WERE YOU

11:39AM   4   HAVING WHEN YOU SAID YOU WERE SURPRISED TO BE HERE?

11:39AM   5          PROSPECTIVE JUROR:  I SORT OF HAVE BEEN OF THE

11:39AM   6   ASSUMPTION THAT IF ANYONE HAS CONSUMED ANYTHING ABOUT A GIVEN

11:39AM   7   CASE, THAT THEY WOULD AUTOMATICALLY BE UNABLE TO SERVE ON A

11:39AM   8   JURY.

11:39AM   9      SO THE FACT THAT I CONSUMED ANY INFORMATION AT ALL SEEMED

11:39AM   10   LIKE A DISQUALIFYING FACTOR, BUT MAYBE THAT WAS AN INCORRECT

11:39AM   11   ASSUMPTION ON MY PART.

11:40AM   12          MR. DOWNEY:  TELL ME WHY YOU THOUGHT PEOPLE KNOWING

11:40AM   13   ABOUT SOMETHING ABOUT A CASE IN ADVANCE MIGHT DISQUALIFY THEM.

11:40AM   14          PROSPECTIVE JUROR:  PROBABLY LIKE T.V. SHOWS, JUST

11:40AM   15   LIKE A POOR UNDERSTANDING OF THE COURTROOM.

11:40AM   16          MR. DOWNEY:  YOU'RE TELLING US EXACTLY WHY AND

11:40AM   17   YOU'RE BEING VERY HONEST.

11:40AM   18      I THINK THAT'S ALL FOR RIGHT NOW, YOUR HONOR.

11:40AM   19          PROSPECTIVE JUROR:  OKAY.

11:40AM   20          THE COURT:  THANK YOU.  WE APPRECIATE IT.

11:40AM   21          PROSPECTIVE JUROR:  ANYTHING ELSE?

11:40AM   22          THE COURT:  OH, DON'T ASK QUESTIONS, MS. GROGAN.

11:40AM   23      THERE WAS ANOTHER HAND IN YOUR ROW, WASN'T THERE,

11:40AM   24   MS. GROGAN?

11:40AM   25      YES, LET'S SEE.  MR. WONG, WHY DON'T YOU COME FORWARD.

| | | |
|---|---|---|
| 11:40AM | 1 | THANK YOU, SIR. |
| 11:40AM | 2 | AND WHAT JUROR NUMBER ARE YOU, MR. WONG? |
| 11:40AM | 3 | PROSPECTIVE JUROR:  46. |
| 11:40AM | 4 | THE COURT:  46. |
| 11:40AM | 5 | PROSPECTIVE JUROR:  SO THERE WAS A "60 MINUTES" |
| 11:40AM | 6 | SEGMENT A FEW YEARS AGO, SO I WATCHED THAT. |
| 11:41AM | 7 | THE COURT:  YES. |
| 11:41AM | 8 | PROSPECTIVE JUROR:  AND TALKED WITH MY FRIENDS. |
| 11:41AM | 9 | ACTUALLY THEY KNOW A LOT MORE THAN I DO.  THEY WATCHED THE |
| 11:41AM | 10 | DOCUMENTARY, READ THE BOOK, AND WE WERE JUST TALKING ABOUT |
| 11:41AM | 11 | INVESTMENTS IN GENERAL.  SO THAT WAS MY EXPOSURE. |
| 11:41AM | 12 | THE COURT:  OKAY.  IS THERE ANYTHING ABOUT THAT |
| 11:41AM | 13 | EXPOSURE THAT YOU THINK WILL AFFECT YOUR ABILITY TO BE FAIR TO |
| 11:41AM | 14 | BOTH SIDES? |
| 11:41AM | 15 | PROSPECTIVE JUROR:  NO. |
| 11:41AM | 16 | THE COURT:  NOTHING ABOUT THAT. |
| 11:41AM | 17 | I THINK YOU TOLD US IN RESPONSE TO QUESTION 39 THAT YOU |
| 11:41AM | 18 | CAN BE FAIR, AND IN QUESTION 62 AND 65. |
| 11:41AM | 19 | PROSPECTIVE JUROR:  YES. |
| 11:41AM | 20 | THE COURT:  RIGHT.  ANY CHANGE ABOUT THAT? |
| 11:41AM | 21 | PROSPECTIVE JUROR:  NO. |
| 11:41AM | 22 | THE COURT:  YOU CAN BE FAIR TO BOTH SIDES? |
| 11:41AM | 23 | PROSPECTIVE JUROR:  YES. |
| 11:41AM | 24 | THE COURT:  ANY DOUBT ABOUT THAT IN YOUR MIND? |
| 11:41AM | 25 | PROSPECTIVE JUROR:  NO DOUBT. |

| | | |
|---|---|---|
| 11:41AM | 1 | THE COURT:  OKAY.  THANK YOU. |
| 11:41AM | 2 | PROSPECTIVE JUROR:  I ALSO WANTED TO MENTION THAT |
| 11:41AM | 3 | OVER THE WEEKEND THERE WAS AN NPR ARTICLE THAT CAME UP OVER THE |
| 11:42AM | 4 | WEEKEND. |
| 11:42AM | 5 | THE COURT:  I SEE. |
| 11:42AM | 6 | PROSPECTIVE JUROR:  AND I READ IT, I FINISHED THE |
| 11:42AM | 7 | ARTICLE AND THEN I REALIZED I SHOULDN'T BE READING THAT, SO I'M |
| 11:42AM | 8 | SORRY. |
| 11:42AM | 9 | THE COURT:  NO.  THANK YOU FOR YOUR CANDOR.  I |
| 11:42AM | 10 | APPRECIATE THAT. |
| 11:42AM | 11 | DID THAT AFFECT -- WHAT YOU READ, WILL THAT AFFECT YOUR |
| 11:42AM | 12 | ABILITY TO BE FAIR AND IMPARTIAL HERE? |
| 11:42AM | 13 | PROSPECTIVE JUROR:  NO. |
| 11:42AM | 14 | THE COURT:  AND CAN YOU PUT WHATEVER YOU READ IN |
| 11:42AM | 15 | THAT MOST RECENT ARTICLE ASIDE AND DECIDE THIS CASE ONLY ON THE |
| 11:42AM | 16 | EVIDENCE HERE? |
| 11:42AM | 17 | PROSPECTIVE JUROR:  YES. |
| 11:42AM | 18 | THE COURT:  ANY DOUBT THAT YOU CAN DO THAT? |
| 11:42AM | 19 | PROSPECTIVE JUROR:  NO DOUBT. |
| 11:42AM | 20 | THE COURT:  YOU'LL BE ABLE TO DO THAT, SIR? |
| 11:42AM | 21 | PROSPECTIVE JUROR:  YES. |
| 11:42AM | 22 | THE COURT:  OKAY.  THANK YOU. |
| 11:42AM | 23 | THE NEXT ROW, WHERE THERE HANDS IN THE NEXT ROW BEHIND? |
| 11:42AM | 24 | YES, I SEE A HAND THERE.  IS THAT MR. ROBBINS? |
| 11:42AM | 25 | PROSPECTIVE JUROR:  RIGHT. |

| | | |
|---|---|---|
| 11:42AM | 1 | THE COURT:  YES. |
| 11:43AM | 2 | PROSPECTIVE JUROR:  JUROR NUMBER 50. |
| 11:43AM | 3 | THE COURT:  THANK YOU, SIR. |
| 11:43AM | 4 | WHAT IS IT YOU WOULD LIKE ME TO KNOW? |
| 11:43AM | 5 | PROSPECTIVE JUROR:  I THINK I SAID IT IN THE |
| 11:43AM | 6 | QUESTIONNAIRE, BUT THE NAME RECOGNITION OF THE COMPANY WAS A |
| 11:43AM | 7 | COUPLE YEARS AGO WHEN THE SCANDAL JUST BROKE ON THE NEWS, SO I |
| 11:43AM | 8 | JUST PRETTY MUCH JUST READ HEADLINES.  I DIDN'T REALLY FOLLOW |
| 11:43AM | 9 | THE STORY. |
| 11:43AM | 10 | THE COURT:  OKAY. |
| 11:43AM | 11 | PROSPECTIVE JUROR:  THIS MORNING THERE WAS A BLURB |
| 11:43AM | 12 | ON NPR ABOUT IT, BUT I LEFT THE ROOM FOR THAT. |
| 11:43AM | 13 | THE COURT:  I SEE.  OKAY. |
| 11:43AM | 14 | IS THAT THE MOST RECENT EXPOSURE YOU'VE HAD? |
| 11:43AM | 15 | PROSPECTIVE JUROR:  YEAH. |
| 11:43AM | 16 | THE COURT:  THIS MORNING? |
| 11:43AM | 17 | PROSPECTIVE JUROR:  (NODS HEAD UP AND DOWN.) |
| 11:43AM | 18 | THE COURT:  ANYTHING OVER THE WEEKEND OR LAST WEEK? |
| 11:43AM | 19 | PROSPECTIVE JUROR:  NO. |
| 11:43AM | 20 | THE COURT: |
| 11:43AM | 21 | THANK YOU.  ANYTHING ABOUT THOSE EXPERIENCES THAT YOU |
| 11:43AM | 22 | THINK WILL AFFECT IN ANY WAY YOUR ABILITY TO BE FAIR AND |
| 11:43AM | 23 | IMPARTIAL TO BOTH SIDES HERE IF YOU'RE SELECTED AS A JUROR? |
| 11:43AM | 24 | PROSPECTIVE JUROR:  YEAH.  I DON'T THINK SO BECAUSE |
| 11:43AM | 25 | I DIDN'T REALLY FOLLOW THE STORY, SO -- |

| | | |
|---|---|---|
| 11:43AM | 1 | THE COURT:  OKAY.  SO YOUR ANSWER? |
| 11:43AM | 2 | PROSPECTIVE JUROR:  I BELIEVE I CAN BE IMPARTIAL, |
| 11:44AM | 3 | YES. |
| 11:44AM | 4 | THE COURT:  OKAY.  CAN YOU BE FAIR TO THE |
| 11:44AM | 5 | GOVERNMENT? |
| 11:44AM | 6 | PROSPECTIVE JUROR:  YES. |
| 11:44AM | 7 | THE COURT:  CAN YOU BE FAIR TO MS. HOLMES? |
| 11:44AM | 8 | PROSPECTIVE JUROR:  I BELIEVE SO. |
| 11:44AM | 9 | THE COURT:  ANY DOUBT ABOUT THAT? |
| 11:44AM | 10 | PROSPECTIVE JUROR:  NO. |
| 11:44AM | 11 | THE COURT:  ALL RIGHT.  THANK YOU, SIR. |
| 11:44AM | 12 | LET'S SEE.  IN THE ROW NEXT THERE'S A HAND.  I SEE -- YES. |
| 11:44AM | 13 | IS THAT MR. BURGE? |
| 11:44AM | 14 | PROSPECTIVE JUROR:  YES, SIR. |
| 11:44AM | 15 | THE COURT:  YES, WHY DON'T YOU COME FORWARD. |
| 11:44AM | 16 | AND YOU'RE JUROR NUMBER? |
| 11:44AM | 17 | PROSPECTIVE JUROR:  JUROR NUMBER 49. |
| 11:44AM | 18 | THE COURT:  THANK YOU.  YES, SIR. |
| 11:44AM | 19 | PROSPECTIVE JUROR:  GOOD MORNING, YOUR HONOR. |
| 11:44AM | 20 | BEFORE THE CURRENT ALLEGATIONS HIT, MY WIFE AND I WATCHED |
| 11:44AM | 21 | A PROGRAM ABOUT THE COMPANY AND MS. HOLMES BECAUSE I WAS |
| 11:45AM | 22 | INTERESTED IN IT.  MY LINE OF WORK IS THAT I ACTUALLY WORK FOR |
| 11:45AM | 23 | A LAW FIRM AND I DO E-DISCOVERY, AND I WAS DOING AN ITC CASE |
| 11:45AM | 24 | WITH BLOOD STRIPS, AND I'VE ALSO DONE SOME WORK WITH THE FDA |
| 11:45AM | 25 | AND THEIR ANDA'S, AND SO I WAS INTERESTED IN THE COMPANY. |

11:45AM 1    SO WE WATCHED THAT.  AND AFTER THE ALLEGATIONS, I'VE SEEN

11:45AM 2 PROGRAMS ABOUT IT.  SO I'VE SEEN BOTH SIDES.

11:45AM 3    THE COURT:  OKAY.  IS THERE ANYTHING -- TELL US THE

11:45AM 4 MOST RECENT EXPOSURE TO MEDIA THAT YOU'VE HAD.

11:45AM 5    PROSPECTIVE JUROR:  WELL, I SAW A HEADLINE FLASH

11:45AM 6 THIS LAST WEEK.  ONLY BECAUSE I'M HERE, BUT I DIDN'T READ IT.

11:45AM 7 I DIDN'T EVEN KNOW THAT IT HADN'T EVEN HAPPENED YET, SO I WAS

11:45AM 8 SURPRISED WHEN I WALKED IN HERE TO FIND OUT THIS WAS THE CASE.

11:45AM 9    THE COURT:  TO FILL OUT THE QUESTIONNAIRE YOU MEAN?

11:46AM 10    PROSPECTIVE JUROR:  YEAH.  I'VE KIND OF BEEN BURIED

11:46AM 11 IN THE PANDEMIC WITH MY PARENTS AND THE KIDS AND STUFF, SO

11:46AM 12 HAVEN'T REALLY BEEN PAYING ATTENTION TO WHAT IS REALLY GOING

11:46AM 13 ON.

11:46AM 14    THE COURT:  THANK YOU.  IS THERE ANYTHING ABOUT WHAT

11:46AM 15 YOU SAW WITH YOUR WIFE, THE SHOW, ANYTHING ABOUT THAT THAT

11:46AM 16 IMPAIRS YOUR ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES

11:46AM 17 HERE, TO THE GOVERNMENT AND TO MS. HOLMES?

11:46AM 18    PROSPECTIVE JUROR:  NO.  ONE OF THE SHOWS IS VERY

11:46AM 19 FAVORABLE, BECAUSE AT THE TIME IT WAS WHAT THEIR TEST STRIPS

11:46AM 20 DID WITHOUT -- YOU KNOW, I DON'T WANT TO -- WITHOUT DRAWING

11:46AM 21 BLOOD.

11:46AM 22    THE COURT:  SO I GUESS THE QUESTION IS, CAN YOU BE

11:46AM 23 FAIR TO THE GOVERNMENT IN THIS CASE?

11:46AM 24    PROSPECTIVE JUROR:  YES, SIR.

11:46AM 25    THE COURT:  CAN YOU BE FAIR?

| | | |
|---|---|---|
| 11:46AM | 1 | PROSPECTIVE JUROR:  I THINK I CAN TAKE BOTH SIDES' |
| 11:46AM | 2 | INFORMATION AND WEIGH IT EVENLY. |
| 11:46AM | 3 | THE COURT:  YOU CAN BE FAIR TO MS. HOLMES? |
| 11:46AM | 4 | PROSPECTIVE JUROR:  YES, SIR. |
| 11:46AM | 5 | THE COURT:  AND IF YOU'RE SEATED AS A JUROR, WILL |
| 11:47AM | 6 | YOU DECIDE THE CASE AND MAKE YOUR DECISION ONLY ON THE EVIDENCE |
| 11:47AM | 7 | THAT YOU HEAR IN THIS COURTROOM AND NOT ANYTHING ELSE OUTSIDE |
| 11:47AM | 8 | THAT YOU READ OR WERE EXPOSED TO OR ARE EXPOSED TO?  CAN YOU DO |
| 11:47AM | 9 | THAT, SIR? |
| 11:47AM | 10 | PROSPECTIVE JUROR:  THAT IS CORRECT. |
| 11:47AM | 11 | THE COURT:  DO YOU UNDERSTAND THAT I'VE TALKED ABOUT |
| 11:47AM | 12 | THIS, HOW CRITICAL THIS IS FOR JURORS?  I HOPE YOU RESPECT |
| 11:47AM | 13 | THAT. |
| 11:47AM | 14 | PROSPECTIVE JUROR:  I DO. |
| 11:47AM | 15 | THE COURT:  GREAT.  WELL, THANK YOU. |
| 11:47AM | 16 | PROSPECTIVE JUROR:  I'VE BEEN TO MANY TRIALS, SO I |
| 11:47AM | 17 | KNOW HOW HARD IT IS. |
| 11:47AM | 18 | THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME |
| 11:47AM | 19 | TO KNOW IN RESPONSE TO THIS QUESTION? |
| 11:47AM | 20 | PROSPECTIVE JUROR:  NO, SIR. |
| 11:47AM | 21 | THE COURT:  THANK YOU VERY MUCH, SIR. |
| 11:47AM | 22 | PROSPECTIVE JUROR:  ALL RIGHT. |
| 11:47AM | 23 | THE COURT:  ANYONE ELSE IN THAT ROW, MR. BURGE'S |
| 11:47AM | 24 | ROW? |
| 11:47AM | 25 | IF NOT, LET'S GO TO THE NEXT ROW BEHIND.  LET'S START -- |

| | | |
|---|---|---|
| 11:47AM | 1 | IS THAT MR. TEJADA? |
| 11:47AM | 2 | PROSPECTIVE JUROR:  YES.  GOOD MORNING, YOUR HONOR. |
| 11:47AM | 3 | I'M JUROR NUMBER 56. |
| 11:47AM | 4 | THE COURT:  THANK YOU. |
| 11:48AM | 5 | WHAT WOULD YOU LIKE ME TO KNOW IN RESPONSE TO THIS |
| 11:48AM | 6 | QUESTION, SIR? |
| 11:48AM | 7 | PROSPECTIVE JUROR:  SO SINCE FILLING OUT THE |
| 11:48AM | 8 | QUESTIONNAIRE, I'VE SEEN NEWSPAPER ARTICLES AND ONLINE ARTICLES |
| 11:48AM | 9 | ABOUT THE CASE, INCLUDING AN NPR PUSH ARTICLE ABOUT THIS |
| 11:48AM | 10 | HEARING IN GENERAL. |
| 11:48AM | 11 | I HAVEN'T READ ANY OF THEM.  I JUST READ THE HEADLINES, |
| 11:48AM | 12 | AND ONE OF THE HEADLINES WAS JURY SELECTION STARTS TODAY.  AND |
| 11:48AM | 13 | MY FIRST THOUGHT WAS, YEAH, YEAH, I KNOW. |
| 11:48AM | 14 | THAT ARTICLE IS ALSO HOW MY COWORKERS FIGURED OUT WHICH |
| 11:48AM | 15 | CASE I WAS CALLED ON JURY DUTY ON. |
| 11:48AM | 16 | THE COURT:  YOU DIDN'T SHARE THAT WITH YOUR |
| 11:48AM | 17 | COWORKERS? |
| 11:48AM | 18 | PROSPECTIVE JUROR:  NO, I DIDN'T SHARE IT.  THEY |
| 11:48AM | 19 | JUST FIGURED IT OUT. |
| 11:48AM | 20 | THE COURT:  WELL, THEY'RE SMART LAWYERS, AREN'T |
| 11:48AM | 21 | THEY? |
| 11:48AM | 22 | PROSPECTIVE JUROR:  YES. |
| 11:48AM | 23 | THE COURT:  AND I THINK YOU WORK IN LEGAL AID. |
| 11:48AM | 24 | PROSPECTIVE JUROR:  YES, I WORK IN LEGAL AID. |
| 11:48AM | 25 | THE COURT:  IT IS HOUSING? |

| | | |
|---|---|---|
| 11:48AM | 1 | PROSPECTIVE JUROR:  IT'S MORE ACCURATE TO SAY I AM |
| 11:48AM | 2 | THE ORGANIZATION'S HOUSING DEPARTMENT BECAUSE I DO THE HOUSING |
| 11:48AM | 3 | LAW. |
| 11:48AM | 4 | THE COURT:  I THINK I READ THAT IN YOUR |
| 11:48AM | 5 | QUESTIONNAIRE.  THANK YOU. |
| 11:48AM | 6 | SO GETTING BACK TO THE EXPOSURE, I'LL CALL IT MEDIA |
| 11:49AM | 7 | EXPOSURE -- AND I DON'T MEAN THAT PEJORATIVE, BUT WHAT YOU'VE |
| 11:49AM | 8 | SEEN OR HEARD OR READ, MR. TEJADA, WOULD THAT AFFECT YOUR |
| 11:49AM | 9 | ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS CASE? |
| 11:49AM | 10 | PROSPECTIVE JUROR:  THERE SHOULDN'T BE.  I BARELY DO |
| 11:49AM | 11 | NOT REMEMBER SOME OF THE THINGS I'VE READ BECAUSE IT WAS SO |
| 11:49AM | 12 | LONG AGO. |
| 11:49AM | 13 | THE COURT:  ABOUT THIS CASE? |
| 11:49AM | 14 | PROSPECTIVE JUROR:  RIGHT, ABOUT THIS CASE. |
| 11:49AM | 15 | THE COURT:  DO YOU COME IN AS A CLEAN SLATE? |
| 11:49AM | 16 | PROSPECTIVE JUROR:  FOR THE MOST PART. |
| 11:49AM | 17 | THE ONLY FACT I REMEMBER IS DEFENDANT'S PREFERENCE FOR |
| 11:49AM | 18 | TURTLENECKS. |
| 11:49AM | 19 | THE COURT:  OH, OKAY.  OTHER THAN THAT, ARE YOU A |
| 11:49AM | 20 | CLEAN SLATE FOR THE EVIDENCE IN THIS CASE? |
| 11:49AM | 21 | PROSPECTIVE JUROR:  I BELIEVE SO.  ALL I REMEMBER IS |
| 11:49AM | 22 | THAT THERE WAS SOMETHING ABOUT MEDICAL DEVICES, BUT SOME OF THE |
| 11:49AM | 23 | DISCUSSIONS ALONG HE'S SAYING THAT I'VE HEARD, AND MAYBE I'M |
| 11:49AM | 24 | CONFLATING IT WITH SOMETHING ELSE. |
| 11:49AM | 25 | THE COURT:  I SEE.  OKAY. |

| | | |
|---|---|---|
| 11:49AM | 1 | SO YOU'RE A TRAINED LAWYER.  YOU KNOW THE IMPORTANCE OF A |
| 11:49AM | 2 | FAIR TRIAL? |
| 11:49AM | 3 | PROSPECTIVE JUROR:  YES. |
| 11:49AM | 4 | THE COURT:  AND YOU KNOW THAT A JUROR'S |
| 11:50AM | 5 | RESPONSIBILITY IS TO MAKE THEIR DECISION WHEN THEY DECIDE A |
| 11:50AM | 6 | CASE ONLY ON THE EVIDENCE THAT IS PRESENTED IN THE COURTROOM? |
| 11:50AM | 7 | PROSPECTIVE JUROR:  YES. |
| 11:50AM | 8 | THE COURT:  AND YOU RESPECT THAT? |
| 11:50AM | 9 | PROSPECTIVE JUROR:  YES. |
| 11:50AM | 10 | THE COURT:  IF YOU'RE SELECTED AS A JUROR, |
| 11:50AM | 11 | MR. TEJADA, CAN DO YOU THAT? |
| 11:50AM | 12 | PROSPECTIVE JUROR:  YES. |
| 11:50AM | 13 | THE COURT:  YOU CAN ASSURE THE GOVERNMENT THAT |
| 11:50AM | 14 | YOU'LL BE FAIR TO THEM? |
| 11:50AM | 15 | PROSPECTIVE JUROR:  YES.  IF THEY HAVE SUFFICIENT |
| 11:50AM | 16 | FACTS TO PROVE THE ELEMENTS OF THE CRIME, THEN THAT'S IT. |
| 11:50AM | 17 | THE COURT:  AND YOU CAN ASSURE MS. HOLMES THAT |
| 11:50AM | 18 | YOU'LL BE FAIR TO HER? |
| 11:50AM | 19 | PROSPECTIVE JUROR:  YES.  IF ONE OF THOSE ELEMENTS |
| 11:50AM | 20 | IS NOT PROVEN, THEN THERE'S NO CRIME. |
| 11:50AM | 21 | THE COURT:  ALL RIGHT.  THANK YOU, SIR. |
| 11:50AM | 22 | PROSPECTIVE JUROR:  THANK YOU. |
| 11:50AM | 23 | THE COURT:  YOU'RE WELCOME. |
| 11:50AM | 24 | IN YOUR ROW, MR. TEJADA'S ROW. |
| 11:50AM | 25 | MR. TEJADA, MAYBE YOU'LL LET THESE OTHER PEOPLE PASS YOU. |

11:50AM  1         IS THAT MR. KEW?  YES.

11:50AM  2         GOOD MORNING.  YOU'RE JUROR NUMBER?

11:50AM  3             PROSPECTIVE JUROR:  58.

11:50AM  4             THE COURT:  YES, SIR.

11:50AM  5             PROSPECTIVE JUROR:  I SAW THE "60 MINUTES" SPECIAL A

11:50AM  6    FEW YEARS AGO.

11:50AM  7             THE COURT:  OKAY.  ANYTHING ABOUT THAT THAT YOU

11:51AM  8    THINK WILL IMPAIR YOUR ABILITY TO BE FAIR TO BOTH SIDES?

11:51AM  9             PROSPECTIVE JUROR:  NO.

11:51AM 10             THE COURT:  OKAY.  DO YOU REMEMBER -- I'M NOT GOING

11:51AM 11    TO ASK YOU WHAT, BUT DO YOU REMEMBER ANYTHING SPECIFIC THAT

11:51AM 12    STAYS IN YOUR MIND?

11:51AM 13             PROSPECTIVE JUROR:  NO.

11:51AM 14             THE COURT:  OKAY.  ALL RIGHT.  HAVE YOU SEEN ANY

11:51AM 15    PUBLICITY RECENTLY ABOUT THIS CASE?

11:51AM 16             PROSPECTIVE JUROR:  I SAW THE HEADLINES OVER THE

11:51AM 17    WEEKEND, BUT I DIDN'T READ THOSE, NO.

11:51AM 18             THE COURT:  OKAY.  YOU KNEW YOU WERE BEING SUMMONED

11:51AM 19    FOR THIS CASE?

11:51AM 20             PROSPECTIVE JUROR:  YES.

11:51AM 21             THE COURT:  YOU FILLED OUT THAT QUESTIONNAIRE.

11:51AM 22             PROSPECTIVE JUROR:  RIGHT.

11:51AM 23             THE COURT:  THANK YOU FOR DOING THAT.

11:51AM 24         ANY DOUBT IN YOUR MIND, SIR, THAT YOU CAN BE A FAIR AND

11:51AM 25    IMPARTIAL JUROR IN THIS CASE TO THE GOVERNMENT?

11:51AM   1              PROSPECTIVE JUROR:  NO DOUBT.

11:51AM   2              THE COURT:  TO MS. HOLMES?

11:51AM   3              PROSPECTIVE JUROR:  NO.

11:51AM   4              THE COURT:  YOU'LL DECIDE THE CASE ONLY ON THE

11:51AM   5    EVIDENCE THAT YOU HEAR HERE, THE ARGUMENTS OF COUNSEL, AND THE

11:51AM   6    INSTRUCTIONS THAT I GIVE YOU?

11:51AM   7        CAN YOU DO THAT?

11:51AM   8              PROSPECTIVE JUROR:  YES.

11:51AM   9              THE COURT:  OKAY.  THANK YOU VERY MUCH.

11:51AM  10        LET'S SEE.  WHO IS NEXT IN MR. KEW'S ROW?  IS THAT

11:51AM  11    MS.  GALANTE?

11:52AM  12        YES, THANK YOU.  GOOD MORNING.

11:52AM  13              PROSPECTIVE JUROR:  GOOD MORNING.

11:52AM  14              THE COURT:  YOU'RE JUROR NUMBER?

11:52AM  15              PROSPECTIVE JUROR:  60.

11:52AM  16              THE COURT:  YES.

11:52AM  17              PROSPECTIVE JUROR:  SO AS I WAS READING THE

11:52AM  18    QUESTIONNAIRE, I SAW SOME NAMES THAT KIND OF SOUNDED FAMILIAR,

11:52AM  19    AND THEN WHEN IT MENTIONED THAT THERE WAS SOME BLOOD TESTING

11:52AM  20    DEVICE THAT WAS INVOLVED, THEN I MADE THE CONNECTION.

11:52AM  21        WELL, I THOUGHT I DID.  I WASN'T 100 PERCENT.

11:52AM  22        THEN AFTER FILLING OUT THE QUESTIONNAIRE, A DAY OR SO

11:52AM  23    LATER I SAW A HEADLINE AS I WAS OPENING UP MY BROWSER AND I SAW

11:52AM  24    THE PICTURE AND I THOUGHT, OKAY, THAT'S WHEN I CONFIRMED IN MY

11:52AM  25    MIND THAT THAT'S WHAT THE CASE WAS GOING TO BE ABOUT.

| | | |
|---|---|---|
| 11:53AM | 1 | AND THE LATEST EXPOSURE WAS THIS MORNING ON MY YAHOO |
| 11:53AM | 2 | FINANCE ALERT, BUT I HAVE NOT READ ANY ARTICLES SINCE THEN |
| 11:53AM | 3 | BECAUSE I KNEW THAT, YOU KNOW, THERE'S A CHANCE THAT I WOULD BE |
| 11:53AM | 4 | SELECTED. |
| 11:53AM | 5 | SO -- BUT THAT WAS IT. |
| 11:53AM | 6 | THE COURT:  OKAY.  THANK YOU.  THANK YOU FOR THAT. |
| 11:53AM | 7 | PROSPECTIVE JUROR:  SO WHEN I MADE THE CONNECTION, I |
| 11:53AM | 8 | REALIZED THAT I HAD SEEN I THINK IT WAS "FIRST BLOOD," SOMEBODY |
| 11:53AM | 9 | MENTIONED THAT, SO THAT RAISED A BELL THAT I HAD SEEN THAT, I |
| 11:53AM | 10 | DON'T KNOW, FIVE OR TEN YEARS AGO, BUT IT SEEMS LIKE A LENGTHY |
| 11:53AM | 11 | AMOUNT OF TIME THAT IT WAS ON T.V. |
| 11:53AM | 12 | THE COURT:  OKAY.  SO YOU HEARD ME ASK YOUR |
| 11:53AM | 13 | COLLEAGUES PREVIOUSLY WHO HAD THE SAME EXPERIENCE WHETHER OR |
| 11:53AM | 14 | NOT THEY REMEMBER ANYTHING ABOUT THAT AND WHETHER OR NOT THEY |
| 11:53AM | 15 | FEEL THAT THAT WILL IMPAIR THEIR ABILITY IN ANY WAY TO BE FAIR |
| 11:53AM | 16 | AND IMPARTIAL TO BOTH SIDES HERE. |
| 11:54AM | 17 | LET ME POSE THAT QUESTION TO YOU, MS. GALANTE. |
| 11:54AM | 18 | PROSPECTIVE JUROR:  I WATCHED THE EPISODES SEVERAL |
| 11:54AM | 19 | YEARS AGO AND I DON'T REMEMBER ANY DETAILS THAT HAD FORMULATED |
| 11:54AM | 20 | AN OPINION IN MY MIND. |
| 11:54AM | 21 | THE COURT:  DO YOU THINK THAT, BECAUSE WE'RE ALL |
| 11:54AM | 22 | HUMAN, IF YOU'RE SEATED AS A JUROR IN THIS CASE AND YOU'RE |
| 11:54AM | 23 | HEARING THE EVIDENCE IN THIS CASE, THAT SOMETHING MIGHT COME UP |
| 11:54AM | 24 | AND YOU THINK YOU SAW THAT IN WHATEVER IT WAS THAT YOU WATCHED |
| 11:54AM | 25 | OR YOU LISTENED TO, IT MAY BE DIFFERENT THAN WHAT YOU HEAR IN |

| | | |
|---|---|---|
| 11:54AM | 1 | THIS COURTROOM. |
| 11:54AM | 2 | HOW DO YOU THINK THAT YOU'LL HANDLE THAT SITUATION SHOULD |
| 11:54AM | 3 | THAT ARISE? |
| 11:54AM | 4 | PROSPECTIVE JUROR:  I DON'T THINK I HAVE ENOUGH |
| 11:54AM | 5 | RECALL -- I MEAN, I DO HAVE SOME.  I KNEW IT WAS REGARDING SOME |
| 11:54AM | 6 | TESTING DEVICES OF BLOOD.  BUT OTHER THAN THAT, I DON'T REALLY |
| 11:54AM | 7 | RECALL MANY OF THE DETAILS, SO I'M KIND OF STARTING AT A CLEAN |
| 11:55AM | 8 | SLATE. |
| 11:55AM | 9 | THE COURT:  OKAY.  IS THAT WHAT YOU CAN TELL |
| 11:55AM | 10 | MS. HOLMES, SHE STARTS AT A CLEAN SLATE WITH YOU? |
| 11:55AM | 11 | PROSPECTIVE JUROR:  YES. |
| 11:55AM | 12 | THE COURT:  IS THAT WHAT YOU TELL THE GOVERNMENT? |
| 11:55AM | 13 | PROSPECTIVE JUROR:  ABSOLUTELY. |
| 11:55AM | 14 | THE COURT:  THAT YOU CAN ASSURE THE COURT THAT |
| 11:55AM | 15 | YOU'LL MAKE ANY DECISION AS A JUROR, IF YOU'RE SELECTED, ONLY |
| 11:55AM | 16 | ON THE EVIDENCE THAT YOU HEAR IN THIS COURTROOM AND NOT ON ANY |
| 11:55AM | 17 | EXTRANEOUS OR ANYTHING OUTSIDE, NOT ON FRIENDS, ANYTHING ELSE? |
| 11:55AM | 18 | PROSPECTIVE JUROR:  YES, ABSOLUTELY. |
| 11:55AM | 19 | THE COURT:  DO YOU HAVE ANY DOUBT ABOUT THAT? |
| 11:55AM | 20 | PROSPECTIVE JUROR:  NO. |
| 11:55AM | 21 | THE COURT:  OKAY.  YOU'RE THAT KIND OF A PERSON? |
| 11:55AM | 22 | YOU'RE FIRM AND YOU CAN DO THAT? |
| 11:55AM | 23 | PROSPECTIVE JUROR:  I'VE SERVED ON JURIES BEFORE AND |
| 11:55AM | 24 | I KNOW THE PROCEDURE THAT YOU'RE SUPPOSED TO BE VERY OPEN |
| 11:55AM | 25 | MINDED AND JUST TAKE IN INFORMATION AS IT COMES IN FROM BOTH |

| | | |
|---|---|---|
| 11:55AM | 1 | PARTIES. |
| 11:55AM | 2 | THE COURT:  AND YOU'VE HEARD JUDGES SPEAK TO YOU |
| 11:55AM | 3 | ABOUT THIS VERY TOPIC, NOT THE CASE, BUT I MEAN A JUROR'S |
| 11:55AM | 4 | RESPONSIBILITY?  AND WHEN THOSE JUDGES HAVE TOLD YOU THOSE |
| 11:55AM | 5 | THINGS, THEY'VE BEEN VERY EARNEST? |
| 11:55AM | 6 | PROSPECTIVE JUROR:  YES. |
| 11:55AM | 7 | THE COURT:  AND YOU'VE TAKEN THAT TO HEART? |
| 11:55AM | 8 | PROSPECTIVE JUROR:  I HAVE. |
| 11:55AM | 9 | THE COURT:  OKAY.  ANY DOUBT IN YOUR MIND, |
| 11:55AM | 10 | MS. GALANTE, THAT YOU CANNOT BE FAIR?  CAN YOU BE FAIR? |
| 11:56AM | 11 | LET ME ASK IT NOT IN A DOUBLE NEGATIVE, BUT LET ME ASK IT |
| 11:56AM | 12 | AGAIN. |
| 11:56AM | 13 | YOU HAVE NO DOUBT THAT YOU CAN BE FAIR IN THIS CASE? |
| 11:56AM | 14 | PROSPECTIVE JUROR:  NO DOUBT. |
| 11:56AM | 15 | THE COURT:  THANK YOU. |
| 11:56AM | 16 | ANYONE ELSE IN MS. GALANTE'S ROW? |
| 11:56AM | 17 | MR. RISHI?  IS THAT RIGHT? |
| 11:56AM | 18 | PROSPECTIVE JUROR:  I'M JUROR NUMBER 63. |
| 11:56AM | 19 | THE COURT:  YES, SIR. |
| 11:56AM | 20 | PROSPECTIVE JUROR:  I THINK I SUBSCRIBE TO |
| 11:56AM | 21 | "THE WALL STREET JOURNAL," SO I REMEMBER WHEN THE STORY BROKE |
| 11:56AM | 22 | READING ABOUT IT AND IT PIQUED MY INTEREST. |
| 11:56AM | 23 | THE COURT:  HOW LONG AGO WAS THAT? |
| 11:56AM | 24 | PROSPECTIVE JUROR:  DEFINITELY PREPANDEMIC.  IT WAS |
| 11:56AM | 25 | SEVERAL YEARS AGO. |

| | | |
|---|---|---|
| 11:56AM | 1 | THE COURT:  OKAY. |
| 11:56AM | 2 | PROSPECTIVE JUROR:  BUT I DO REMEMBER FOLLOWING |
| 11:56AM | 3 | THROUGH WITH THE SERIES OF ARTICLES THAT CAME, AND I DO |
| 11:56AM | 4 | REMEMBER THEN ALSO SEEING THE DOCUMENTARY RELATED TO THAT AND |
| 11:56AM | 5 | HAVING SOME DISCUSSIONS AT HOME BECAUSE MY WIFE WAS -- STILL |
| 11:56AM | 6 | WORKS IN THE HEALTH CARE SIDE OF THINGS AND IT SEEMS LIKE |
| 11:57AM | 7 | INFORMATION THAT WAS PERTINENT. |
| 11:57AM | 8 | THE COURT:  I THINK YOU READ A BOOK. |
| 11:57AM | 9 | PROSPECTIVE JUROR:  THAT'S RIGHT. |
| 11:57AM | 10 | THE COURT:  RIGHT. |
| 11:57AM | 11 | PROSPECTIVE JUROR:  SO DURING THAT SAME -- ACTUALLY, |
| 11:57AM | 12 | I CAN'T GIVE YOU THE SAME EXACT TIMELINE, BUT I DID END UP |
| 11:57AM | 13 | CONSUMING A LOT OF INFORMATION AT THAT POINT IN TIME. |
| 11:57AM | 14 | OVER THE LAST FEW YEARS I HAVEN'T REALLY DONE MUCH, BUT I |
| 11:57AM | 15 | DID SEE OBVIOUSLY, LIKE A LOT OF OTHER PEOPLE, HEADLINES, ET |
| 11:57AM | 16 | CETERA, POP UP RECENTLY. |
| 11:57AM | 17 | THE COURT:  I SEE.  WHAT IS THE MOST RECENT, I'LL |
| 11:57AM | 18 | CALL IT EXPOSURE TO MEDIA THAT YOU'VE SEEN ABOUT THIS CASE? |
| 11:57AM | 19 | PROSPECTIVE JUROR:  I THINK I SAW THINGS POP UP AS |
| 11:57AM | 20 | RECENTLY AS YESTERDAY. |
| 11:57AM | 21 | THE COURT:  I SEE.  DID YOU READ THE ARTICLES? |
| 11:57AM | 22 | PROSPECTIVE JUROR:  I HAVE NOT. |
| 11:57AM | 23 | THE COURT:  OKAY.  WELL, TELL US -- YOU KNOW, MY |
| 11:57AM | 24 | QUESTIONS, YOU KNOW WHAT I'M PROBING, SIR, BASED ON WHAT -- |
| 11:57AM | 25 | YOUR EXPERIENCE WITH THE INFORMATION IN THIS CASE, IS THERE |

11:57AM 1    ANYTHING THAT, ANYTHING ABOUT THAT THAT YOU THINK WILL AFFECT

11:58AM 2    YOUR ABILITY TO BE FAIR TO BOTH SIDES HERE?

11:58AM 3            PROSPECTIVE JUROR:  NO.  I THINK I CAN -- I KNOW

11:58AM 4    WHAT'S -- I KNOW THE ANSWERS IN TERMS OF WHAT I PUT OUT THERE.

11:58AM 5    I JUST -- I'M CONSCIOUS OF WHAT I KNOW AND WHAT I DON'T KNOW.

11:58AM 6            THE COURT:  OKAY.

11:58AM 7        THE QUESTION IS, YOU'VE CONSUMED A LOT OF INFORMATION

11:58AM 8    ABOUT THIS CASE ALREADY.

11:58AM 9            PROSPECTIVE JUROR:  THAT'S RIGHT.

11:58AM 10           THE COURT:  AND I SUPPOSE WE ASK JURORS TO DO A

11:58AM 11   HERCULEAN TASK, TO PUT THAT ASIDE AND TAKE THAT OUT OF YOUR

11:58AM 12   MIND IF YOU'RE SELECTED AS A JUROR HERE AND TO, AS I'VE SAID

11:58AM 13   MANY TIMES, AND WILL CONTINUE, TO DECIDE THE CASE ONLY ON THE

11:58AM 14   EVIDENCE HERE.

11:58AM 15       CAN YOU DO THAT, SIR?  ARE YOU THAT TYPE OF PERSON THAT

11:58AM 16   YOU CAN SEPARATE YOUR EXPOSURE AND KEEP THAT OUT THROUGHOUT THE

11:58AM 17   DURATION OF THE TRIAL?  CAN YOU DO THAT?

11:58AM 18           PROSPECTIVE JUROR:  YES.  I THINK SOMEBODY MENTIONED

11:58AM 19   ABOUT INFORMATION ATTRIBUTION.  I THINK I CAN DO THAT, AND I'VE

11:59AM 20   DONE IT FOR DIFFERENT REASONS IN THE PAST.

11:59AM 21           THE COURT:  BY YOUR PROFESSIONAL TRAINING?

11:59AM 22           PROSPECTIVE JUROR:  CORRECT.

11:59AM 23           THE COURT:  AND THAT'S SOMETHING THAT, IN YOUR

11:59AM 24   PROFESSIONAL TRAINING THAT YOU'VE, YOU'VE GAINED THAT EXPERTISE

11:59AM 25   TO PARSE OUT INFORMATION AND FOCUS ONLY ON THE DETAILS OF THE

| | | |
|---|---|---|
| 11:59AM | 1 | JOB AT HAND? |
| 11:59AM | 2 | IS THAT YOUR TRAINING? |
| 11:59AM | 3 | PROSPECTIVE JUROR:  YEAH.  I'M NOT SURE I HAVE |
| 11:59AM | 4 | EXPERTISE, BUT I HAVE EXPERIENCE IN THAT FOR SURE. |
| 11:59AM | 5 | THE COURT:  ALL RIGHT.  ANYTHING ELSE YOU WOULD LIKE |
| 11:59AM | 6 | TO SHARE WITH US, SIR, ABOUT THIS? |
| 11:59AM | 7 | PROSPECTIVE JUROR:  NO. |
| 11:59AM | 8 | THE COURT:  I NOTE THAT IN RESPONSE TO YOUR |
| 11:59AM | 9 | QUESTIONS, QUESTION 39, 62, AND 65, YOU DID INDICATE THAT YOU |
| 11:59AM | 10 | CAN BE FAIR. |
| 11:59AM | 11 | PROSPECTIVE JUROR:  THAT'S CORRECT. |
| 11:59AM | 12 | THE COURT:  ANY DOUBT IN YOUR MIND ABOUT THOSE |
| 11:59AM | 13 | QUESTIONS? |
| 11:59AM | 14 | PROSPECTIVE JUROR:  NO. |
| 11:59AM | 15 | THE COURT:  OR YOUR ANSWERS? |
| 11:59AM | 16 | PROSPECTIVE JUROR:  NO. |
| 11:59AM | 17 | THE COURT:  OKAY.  THANK YOU.  THANK YOU, SIR. |
| 11:59AM | 18 | WELL, WE'RE A LITTLE PAST THE NOON HOUR.  MAYBE WE'LL TAKE |
| 11:59AM | 19 | OUR NOON BREAK NOW, LADIES AND GENTLEMEN.  WE'LL TAKE OUR NOON |
| 11:59AM | 20 | RECESS. |
| 11:59AM | 21 | LET'S -- CAN WE TRY TO BE -- |
| 11:59AM | 22 | MS. KRATZMANN, THE JURORS WILL COLLECT THEMSELVES IN THE |
| 12:00PM | 23 | JURY ASSEMBLY ROOM; IS THAT RIGHT? |
| 12:00PM | 24 | THE CLERK:  YES, YOUR HONOR.  IF THEY CAN GO TO THE |
| 12:00PM | 25 | SECOND FLOOR JURY SELECTION ROOM WHERE THEY GATHERED THIS |

| | | |
|---|---|---|
| 12:00PM | 1 | MORNING. |
| 12:00PM | 2 | THE COURT:  LET ME DO THAT. |
| 12:00PM | 3 | THE HANDS OF PEOPLE REMAINING, OKAY.  THERE'S JUST A FEW |
| 12:00PM | 4 | OF YOU. |
| 12:00PM | 5 | WE'LL GET TO YOU -- WE'LL FINISH -- WE'LL START, PARDON |
| 12:00PM | 6 | ME, WITH MR. NIZENKOFF. |
| 12:00PM | 7 | PROSPECTIVE JUROR:  YES. |
| 12:00PM | 8 | THE COURT:  WE'LL START WITH YOU WHEN WE COME BACK, |
| 12:00PM | 9 | SIR, AND THEN WE'LL GET THE REST OF THE ANSWERS. |
| 12:00PM | 10 | I HAVE MANY MORE QUESTIONS, SO WE'LL GET THROUGH THIS |
| 12:00PM | 11 | PROCESS.  SO THANK YOU VERY MUCH. |
| 12:00PM | 12 | LET ME SAY THIS, THOUGH, BEFORE WE BREAK HERE, I DO -- |
| 12:00PM | 13 | YOU'RE NOT THE JURY YET.  WE'RE IN THAT PROCESS. |
| 12:00PM | 14 | BUT I'M GOING TO ASK YOU DURING THIS BREAK, AND ALL YOUR |
| 12:00PM | 15 | BREAKS, TO NOT READ, LOOK AT, DISCUSS, OR IN ANY WAY TALK ABOUT |
| 12:00PM | 16 | THIS CASE OR YOUR POTENTIAL SERVICE FOR IT.  PLEASE AVOID |
| 12:00PM | 17 | READING ANYTHING. |
| 12:00PM | 18 | I MAY AT SOME POINT -- YOU KNOW, I'M AN OLD-FASHIONED |
| 12:01PM | 19 | PERSON.  I LIKE THE NEWSPAPER IN MY HAND.  I UNDERSTAND THAT |
| 12:01PM | 20 | YOU HAVE DEVICES. |
| 12:01PM | 21 | I'M ALSO INFORMED THAT THERE ARE WAYS TO TURN OFF THESE |
| 12:01PM | 22 | ALERTS, I GUESS THEY'RE CALLED NEWS ALERTS, AND THOSE TYPES OF |
| 12:01PM | 23 | THINGS.  YOUNGER PEOPLE THAN ME TELL ME THAT'S POSSIBLE. |
| 12:01PM | 24 | SO YOU MIGHT WANT TO EXPLORE THAT FOR THE NEXT DAY OR SO |
| 12:01PM | 25 | TO SEE IF THAT'S SOMETHING THAT WOULD BE OF ASSISTANCE IN |

| | | |
|---|---|---|
| 12:01PM | 1 | PREVENTING YOUR EXPOSURE. |
| 12:01PM | 2 | IN MY HOUSEHOLD I JUST WON'T PICK UP THE NEWSPAPER ON THE |
| 12:01PM | 3 | STOOP WHEN IT COMES, BUT THAT'S EASY TO DO.  BUT THIS OTHER |
| 12:01PM | 4 | TECHNOLOGY, YOU'LL DEAL WITH THAT. |
| 12:01PM | 5 | SO HAVE A GOOD LUNCH.  DON'T DISCUSS ANYTHING, PLEASE. |
| 12:01PM | 6 | YOU'LL COLLECT YOURSELVES ON THE SECOND FLOOR IN THE JURY ROOM |
| 12:01PM | 7 | AND MS. KRATZMANN OR SOMEONE WILL THEN BRING YOU UP. |
| 12:01PM | 8 | PLEASE REMEMBER WHERE YOU'RE SEATED, AND IF YOU WOULD TAKE |
| 12:01PM | 9 | THOSE SEATS AGAIN I WOULD BE GRATEFUL.  THANK YOU. |
| 12:01PM | 10 | THE CLERK:  WHAT TIME? |
| 12:01PM | 11 | THE COURT:  I WOULD LIKE EVERYONE SEATED AGAIN BY |
| 12:01PM | 12 | 1:15 IF POSSIBLE. |
| 12:02PM | 13 | I'D LIKE COUNSEL TO REMAIN IF YOU WOULD LIKE. |
| 12:03PM | 14 | (JURY OUT AT 12:03 P.M.) |
| 12:03PM | 15 | THE COURT:  THANK YOU FOR YOUR COURTESY. |
| 12:03PM | 16 | THE RECORD SHOULD REFLECT THAT OUR PROSPECTIVE PANEL LEFT |
| 12:03PM | 17 | THE COURTROOM AND COUNSEL IS PRESENT AND MS. HOLMES IS PRESENT. |
| 12:03PM | 18 | SO WE'LL START UP AFTER THE BREAK WITH MR. NIZENKOFF.  I |
| 12:03PM | 19 | THINK I SAW PERHAPS FOUR MORE HANDS, MAYBE FIVE, AND I HOPE TO |
| 12:03PM | 20 | GET THROUGH THAT PROCESS WITH THEM IN THAT SAME MANNER. |
| 12:03PM | 21 | AND THEN I HOPE IS I CAN GET THROUGH MY QUESTIONS.  I |
| 12:03PM | 22 | MIGHT -- MY HOPE IS THAT WE CAN FINISH THIS PANEL IN THE NEXT |
| 12:03PM | 23 | COUPLE OF HOURS.  I THINK WE CAN.  I DO THINK THAT WE'LL BE |
| 12:03PM | 24 | ABLE TO DO THAT NOTWITHSTANDING THE QUESTIONS THAT I HAVE. |
| 12:03PM | 25 | THIS AREA PROBABLY WILL TAKE SOME TIME, AS IT HAS. |

| | | |
|---|---|---|
| 12:03PM | 1 | THERE'S ANOTHER AREA THAT I WAS GOING TO GO INTO. |
| 12:03PM | 2 | THESE ARE THE QUESTIONS THAT I TALKED ABOUT, MS. VOLKAR, |
| 12:04PM | 3 | AND I DO HAVE AN AREA THAT I'M GOING TO GO INTO THERE.  I DON'T |
| 12:04PM | 4 | KNOW, WE'LL SEE WHAT EXPERIENCES OUR PROSPECTIVE PANEL HAS IN |
| 12:04PM | 5 | THAT REGARD. |
| 12:04PM | 6 | ANY COMMENT BEFORE WE BREAK FOR LUNCH? |
| 12:04PM | 7 | MR. DOWNEY:  ONE COMMENT, NOT BECAUSE IT IS ALL THAT |
| 12:04PM | 8 | SIGNIFICANT, BUT IT'S A LOGISTICAL PROBLEM I THINK. |
| 12:04PM | 9 | YOUR HONOR HAD ASKED A NUMBER OF JURORS WHAT THEIR |
| 12:04PM | 10 | EXPOSURE HAD BEEN SINCE THE QUESTIONNAIRE HAD BEEN COMPLETED. |
| 12:04PM | 11 | THEY REPEATED ACROSS SEVERAL JURORS, "I'VE SEEN HEADLINES." |
| 12:04PM | 12 | AS YOUR HONOR KNOWS, WE HAD REQUESTED THAT CERTAIN |
| 12:04PM | 13 | INFORMATION NOT BE MADE PUBLIC UNTIL AFTER THOSE HEADLINES HAD |
| 12:04PM | 14 | BEEN SEEN.  I THINK IT'S INCUMBENT ON US TO UNDERSTAND WHAT THE |
| 12:04PM | 15 | CONTENT OF THE HEADLINE IS THAT THOSE INDIVIDUALS HAVE SEEN IN |
| 12:04PM | 16 | THAT IT MAY HAVE ANTICIPATED THE DEFENSE THEMES AND THE DEFENSE |
| 12:05PM | 17 | CASE AND ALL OF THAT WHERE NONE IS REQUIRED. |
| 12:05PM | 18 | AND SO THERE WERE FOUR OR FIVE JURORS, I THINK, IF NOT |
| 12:05PM | 19 | MORE, WHO REPORTED THAT EXPERIENCE. |
| 12:05PM | 20 | SO I RAISE IT BECAUSE I THINK JUST LOGISTICALLY WE NEED TO |
| 12:05PM | 21 | FIND A WAY TO GET THAT INFORMATION FROM THEM. |
| 12:05PM | 22 | OF COURSE IF THEY HAVE SEEN HEADLINES THAT RELATE TO |
| 12:05PM | 23 | POTENTIAL DEFENSE STRATEGIES, YOU KNOW, THERE WILL BE ISSUES |
| 12:05PM | 24 | THAT WE HAVE IN CONNECTION WITH THAT WHICH WE'LL PRESENT.  BUT |
| 12:05PM | 25 | I THINK, AS A PRACTICAL MATTER, I JUST THINK WE NEED TO KNOW |

12:05PM  1    WHAT THE CONTENT OF THOSE HEADLINES ARE.

12:05PM  2              THE COURT:  OKAY.  THANK YOU.

12:05PM  3         MR. SCHENK, ANY COMMENT ABOUT ANYTHING?

12:05PM  4              MR. SCHENK:  NO.  NOTHING FURTHER.  THANK YOU.

12:05PM  5              THE COURT:  OKAY.  ALL RIGHT.  AS I SAID, I WOULD

12:05PM  6    LIKE TO BEGIN BY 1:15 WITH THE JURORS SEATED IN THE BOX SO THAT

12:05PM  7    WE CAN HOPEFULLY GET THROUGH THIS PANEL TODAY.

12:05PM  8         ALL RIGHT.  HAVE A GOOD LUNCH.  WE'LL SEE YOU THEN.  THANK

12:05PM  9    YOU.

12:06PM  10             (LUNCH RECESS TAKEN AT 12:06 P.M.)

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
| 01:19PM  | 1  | **AFTERNOON SESSION**                                                |
| 01:19PM  | 2  | (COURT CONVENED AT 1:19 P.M.)                                        |
| 01:19PM  | 3  | (JURY IN AT 1:19 P.M.)                                               |
| 01:19PM  | 4  | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES                   |
| 01:19PM  | 5  | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.  OUR PROSPECTIVE          |
| 01:19PM  | 6  | JURY PANEL IS PRESENT.                                               |
| 01:19PM  | 7  | THANK YOU, LADIES AND GENTLEMEN.                                     |
| 01:19PM  | 8  | WE'LL CONTINUE WITH THE JURY SELECTION PROCESS.                      |
| 01:19PM  | 9  | LET'S SEE, I THINK, MR. NIZENKOFF, DO YOU WANT TO COME TO            |
| 01:19PM  | 10 | THE MICROPHONE, PLEASE.                                              |
| 01:19PM  | 11 | WHILE YOU WERE DOING THAT, MR. NIZENKOFF, I DID WANT TO              |
| 01:19PM  | 12 | SAY ONE OTHER THING ABOUT COVID.                                     |
| 01:19PM  | 13 | LADIES AND GENTLEMEN, I DO WANT TO TELL YOU THAT AS FAR AS           |
| 01:19PM  | 14 | I KNOW ALL OF OUR PROSPECTIVE JURORS HAVE BEEN VACCINATED, AND       |
| 01:19PM  | 15 | I CAN TELL YOU THAT ALL OF -- I'VE GOT PERMISSION TO TELL YOU        |
| 01:19PM  | 16 | THAT ALL OF OUR COURT STAFF HAVE BEEN VACCINATED.  SO I JUST         |
| 01:19PM  | 17 | WANT TO SHARE THAT WITH YOU, AND HOPEFULLY THAT BRINGS YOU SOME      |
| 01:20PM  | 18 | COMFORT AND REASSURANCE.  THANK YOU.                                 |
| 01:20PM  | 19 | MR. NIZENKOFF?                                                       |
| 01:20PM  | 20 | PROSPECTIVE JUROR:  I'M JUROR NUMBER 64.                             |
| 01:20PM  | 21 | THE COURT:  THANK YOU.                                               |
| 01:20PM  | 22 | PROSPECTIVE JUROR:  I SAW ONE OF THE T.V. SHOWS A                    |
| 01:20PM  | 23 | COUPLE YEARS AGO, I DON'T RECALL WHICH ONE.  I KIND OF GOT THE       |
| 01:20PM  | 24 | GIST OF WHAT IS GOING ON, BUT THE DETAILS I DON'T REMEMBER.          |
| 01:20PM  | 25 | THE COURT:  OKAY.                                                    |

| | | |
|---|---|---|
| 01:20PM | 1 | PROSPECTIVE JUROR:  I'VE SEEN A COUPLE OF HEADLINES |
| 01:20PM | 2 | POP UP ON MY NEWS FEED, AND I'VE IGNORED THEM AND TRY TO HIDE |
| 01:20PM | 3 | THEM AND I'VE HEARD THE TOPIC COME UP ON THE RADIO THIS MORNING |
| 01:20PM | 4 | AND I SWITCHED THE STATION QUICKLY. |
| 01:20PM | 5 | THE COURT:  ALL RIGHT.  CAN YOU TELL US -- DO YOU |
| 01:20PM | 6 | HAVE ANY RECOLLECTION OF WHAT THE HEADLINES WERE? |
| 01:20PM | 7 | PROSPECTIVE JUROR:  ONE WAS ABOUT JURY SELECTION, |
| 01:20PM | 8 | AND I DON'T RECALL THE OTHER ONE, THE NAME HAS POPPED UP. |
| 01:20PM | 9 | THE COURT:  OKAY.  THANK YOU. |
| 01:20PM | 10 | MR. NIZENKOFF, SINCE I HAVE YOU AT AN ADVANTAGE HERE AND |
| 01:20PM | 11 | YOU SEEM TO HAVE KNOWLEDGE OF PHONES, IS IT POSSIBLE TO TURN |
| 01:20PM | 12 | OFF THESE NOTIFICATIONS FROM NEWS FEED AND THINGS? |
| 01:20PM | 13 | PROSPECTIVE JUROR:  ON MY GOOGLE FEED I CAN HIT "NOT |
| 01:20PM | 14 | INTERESTED," AND SO I HOPEFULLY I CAN TURN UP -- |
| 01:21PM | 15 | THE COURT:  THANK YOU FOR THAT INFORMATION. |
| 01:21PM | 16 | LET ME ASK YOU ABOUT SEEING THIS DOCUMENTARY THAT YOU SAW |
| 01:21PM | 17 | A COUPLE YEARS AGO I THINK YOU SAID. |
| 01:21PM | 18 | PROSPECTIVE JUROR:  WHENEVER IT HIT THE NEWS. |
| 01:21PM | 19 | THE COURT:  RIGHT.  ANYTHING ABOUT WHAT YOU SAW THAT |
| 01:21PM | 20 | STICKS WITH YOU THAT YOU THINK AFFECTS YOUR ABILITY TO BE FAIR |
| 01:21PM | 21 | TO EACH SIDE HERE? |
| 01:21PM | 22 | PROSPECTIVE JUROR:  NO. |
| 01:21PM | 23 | THE COURT:  ANY DOUBT ABOUT THAT? |
| 01:21PM | 24 | PROSPECTIVE JUROR:  YES. |
| 01:21PM | 25 | THE COURT:  CAN YOU BE FAIR TO THE GOVERNMENT? |

| | | |
|---|---|---|
| 01:21PM | 1 | PROSPECTIVE JUROR:  YES. |
| 01:21PM | 2 | THE COURT:  CAN YOU BE FAIR TO MS. HOLMES? |
| 01:21PM | 3 | PROSPECTIVE JUROR:  YES. |
| 01:21PM | 4 | THE COURT:  YOU OBVIOUSLY SAW THIS SHOW, AND YOU |
| 01:21PM | 5 | HEARD ME TALK TO MS. GROGAN, HOW DO YOU UNREAD SOMETHING?  IN |
| 01:21PM | 6 | THE LAW WE CALL IT UNRINGING THE BELL. |
| 01:21PM | 7 | PROSPECTIVE JUROR:  A LOT OF THE SHOWS ARE FOR |
| 01:21PM | 8 | ENTERTAINMENT AND THEY DON'T NECESSARILY NEED TO GET ALL OF |
| 01:21PM | 9 | THEIR FACTS TRUE. |
| 01:21PM | 10 | THE COURT:  OKAY.  ALL RIGHT. |
| 01:21PM | 11 | DO YOU THINK YOU'LL HAVE ANY PROBLEM SEPARATING, KEEPING |
| 01:21PM | 12 | THAT, PARSING THAT OUT FROM YOUR MIND AS YOU SIT AS A |
| 01:21PM | 13 | DELIBERATIVE JUROR IN THIS CASE? |
| 01:22PM | 14 | PROSPECTIVE JUROR:  NO, I WON'T. |
| 01:22PM | 15 | THE COURT:  ANY DOUBT AT ALL? |
| 01:22PM | 16 | PROSPECTIVE JUROR:  NO DOUBT. |
| 01:22PM | 17 | THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH. |
| 01:22PM | 18 | WE'RE ON THE NEXT ROW. |
| 01:22PM | 19 | NEXT. |
| 01:22PM | 20 | LET ME SEE, IS THAT MR. PENUMUDY, IS THAT RIGHT? |
| 01:22PM | 21 | PROSPECTIVE JUROR:  YES. |
| 01:22PM | 22 | PROSPECTIVE JUROR:  I'M JUROR NUMBER 73. |
| 01:22PM | 23 | THE COURT:  THANK YOU. |
| 01:22PM | 24 | PROSPECTIVE JUROR:  OVER THE YEARS I'VE READ A FEW |
| 01:22PM | 25 | ARTICLES ABOUT THE COMPANY OF THERANOS, ABOUT THE RISE AND FALL |

01:22PM  1    OF ITS FORTUNES, AND MOST SIGNIFICANTLY IN THE QUESTIONNAIRE I

01:22PM  2    CAME ACROSS TWO ARTICLES IN THE INTERNET IN MY APPLE NEWS FEED.

01:22PM  3    ONE WAS ABOUT THE TRIAL ABOUT TO START FOR THIS CASE.  I ONLY

01:23PM  4    SKIMMED PART OF THE SUMMARY.  I DIDN'T GO THROUGH ALL OF IT.

01:23PM  5         THE SECOND HEADLINE IS -- MY MEMORY MIGHT NOT SERVE ME

01:23PM  6    RIGHT -- BUT IT SEEMED TO BE SOMETHING ABOUT SOME FRICTION

01:23PM  7    BETWEEN THERANOS AND THE OTHER DEFENDANT, MR. BALWANI.

01:23PM  8              THE COURT:  I SEE.

01:23PM  9              PROSPECTIVE JUROR:  SO THAT'S THE EXTENT OF MY

01:23PM 10    RECOLLECTION.

01:23PM 11              THE COURT:  THANK YOU, SIR.

01:23PM 12         WHEN DID YOU SEE THOSE ARTICLES, SIR?

01:23PM 13              PROSPECTIVE JUROR:  I BELIEVE IT WAS LAST WEEK.

01:23PM 14              THE COURT:  LAST WEEK.

01:23PM 15         I'M SORRY.  DID YOU READ THEM IN THEIR ENTIRETY?

01:23PM 16              PROSPECTIVE JUROR:  NO, I DID NOT.

01:23PM 17              THE COURT:  YOU READ THE HEADLINES?

01:23PM 18              PROSPECTIVE JUROR:  FOR THE ONE THAT WAS ANNOUNCING

01:23PM 19    THE TRIAL, I JUST SKIMMED PART OF THE SUMMARY.

01:23PM 20         THE OTHER ONE, ONLY THE HEADLINE.

01:23PM 21              THE COURT:  I SEE.  ALL RIGHT, SIR.

01:23PM 22         IS THERE ANYTHING ABOUT THAT INFORMATION THAT YOU THINK

01:23PM 23    WOULD AFFECT YOUR ABILITY TO BE FAIR TO BOTH SIDES IN THIS

01:23PM 24    CASE?

01:23PM 25              PROSPECTIVE JUROR:  NO.

01:23PM 1          THE COURT:  ALL RIGHT.  OKAY.  THANK YOU VERY MUCH.

01:23PM 2   THANK YOU.

01:23PM 3          AND ANYONE ELSE IN THAT ROW?  YES.

01:23PM 4          IS THAT MR. ROCCAFORTE.

01:24PM 5              PROSPECTIVE JUROR:  YES.

01:24PM 6              THE COURT:  YES.

01:24PM 7              PROSPECTIVE JUROR:  I'M NUMBER 78.

01:24PM 8              THE COURT:  OKAY.  THANK YOU.

01:24PM 9              PROSPECTIVE JUROR:  SO I'M A PRODUCER AT A NEWS

01:24PM 10  RADIO STATION AND A COUPLE OF MONTHS AGO I FIRST CAME ACROSS

01:24PM 11  THIS STORY.  I KIND OF FORGOT ABOUT IT, AND THEN DURING THE

01:24PM 12  QUESTIONNAIRE WHEN THEY WERE LAYING IT OUT FOR ME, IT STARTED

01:24PM 13  TO SLOWLY COME BACK TO ME AND THEN I WAS LIKE, I THINK I MAY

01:24PM 14  HAVE HEARD OF THIS.

01:24PM 15      SO I'VE BEEN BASICALLY AVOIDING THE TOPIC SINCE THEN, BUT

01:24PM 16  YESTERDAY WHEN I WAS AT WORK IN ANTICIPATION OF JURY SELECTION,

01:24PM 17  THEY WERE RUNNING STORIES AT MY STATION, AND I WASN'T AWARE OF

01:24PM 18  THIS BECAUSE I HAD BEEN AVOIDING THE TOPIC.

01:24PM 19      I ACCIDENTALLY OVERHEARD DETAILS OF THE STORY BECAUSE I

01:24PM 20  WOULD WALK IN AND THE STORY WOULD BE PLAYING AND I'D BE LIKE,

01:24PM 21  WHAT IS THIS?

01:24PM 22      AND THEN THEY WOULD, THEN THEY WOULD NAME ALL OF THE

01:24PM 23  RELEVANT PARTIES AND I WAS LIKE, OH.  I TRIED TO AVOID IT, BUT

01:24PM 24  BECAUSE I'M WORKING IN A RADIO STATION, AUDIO IS ALL AROUND ME,

01:25PM 25  AND BECAUSE IT'S LIVE, I CAN'T JUST LIKE COMPLETELY LEAVE AND

01:25PM  1    REMOVE MYSELF FROM THE SITUATION.

01:25PM  2         SO I TRIED TO TUNE IT OUT AS BEST AS I COULD, BUT I STILL

01:25PM  3    DID OVERHEAR SOME DETAILS.

01:25PM  4              THE COURT:  HOW LONG WAS THE PIECE THAT YOU HEARD,

01:25PM  5    THE PORTIONS THAT YOU HEARD?  WHAT WAS THE DURATION?

01:25PM  6              PROSPECTIVE JUROR:  I WOULD SAY THAT I HEARD ABOUT

01:25PM  7    30 SECONDS TO A MINUTE OF MATERIAL.  PROBABLY ABOUT MAYBE A

01:25PM  8    MINUTE AND A HALF OR TWO MINUTES TOTAL.

01:25PM  9              THE COURT:  I SEE.

01:25PM  10        AND IT TALKED ABOUT THE CASE, IT TALKED ABOUT THE PARTIES

01:25PM  11   OF THE CASE?  DID IT TALK ABOUT THE EVIDENCE AND THOSE TYPES OF

01:25PM  12   THINGS?

01:25PM  13             PROSPECTIVE JUROR:  ONE THING IT DID DISCUSS WAS THE

01:25PM  14   DEFENSE STRATEGY.

01:25PM  15             THE COURT:  OKAY.  IT TALKED ABOUT AT LEAST WHAT,

01:25PM  16   WHOEVER THE PRESENTER WAS IN THIS ARTICLE, THEIR THOUGHTS ABOUT

01:25PM  17   WHAT A DEFENSE STRATEGY MIGHT BE?

01:25PM  18             PROSPECTIVE JUROR:  I BELIEVE SO.  I DON'T KNOW IF

01:25PM  19   IT WAS PHRASED AS WHAT THEY THOUGHT IT MIGHT BE OR WHAT IT WILL

01:25PM  20   BE.

01:25PM  21             THE COURT:  I SEE.  OKAY.

01:26PM  22        IN THEIR OPINION?

01:26PM  23             PROSPECTIVE JUROR:  I DON'T KNOW THAT.  I DON'T KNOW

01:26PM  24   IF IT WAS OPINION OR IF IT WAS -- IF THEY HAD SOME KIND OF

01:26PM  25   KNOWLEDGE OR WHAT THE SITUATION WAS THERE.

01:26PM   1                    THE COURT:  I SEE.

01:26PM   2                    PROSPECTIVE JUROR:  BUT IT COULD HAVE BEEN JUST

01:26PM   3      SPECULATION OR IT COULD HAVE BEEN FACT.  I'M NOT 100 PERCENT

01:26PM   4      SURE ABOUT THAT.

01:26PM   5                    THE COURT:  OKAY.  ALL RIGHT.

01:26PM   6           AND SO TELL US ABOUT HAVING HEARD THAT AND LISTENED TO

01:26PM   7      THAT FOR 30 SECONDS, A MINUTE, HOW WILL THAT AFFECT YOUR

01:26PM   8      ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES HERE IN THIS

01:26PM   9      TRIAL?

01:26PM  10                    PROSPECTIVE JUROR:  I'M NOT REALLY SURE THAT I'LL BE

01:26PM  11      ABLE TO REMAIN UNBIASSED THROUGHOUT THE DURATION OF THIS TRIAL.

01:26PM  12                    THE COURT:  AND THAT'S BECAUSE OF WHAT YOU HEARD?

01:26PM  13                    PROSPECTIVE JUROR:  YEAH, AND JUST BECAUSE OF THE

01:26PM  14      CULMINATION OF WHAT I HAVE HEARD OVERALL.

01:26PM  15                    THE COURT:  WELL, YOU TOLD US IN YOUR QUESTIONNAIRE,

01:26PM  16      I BELIEVE, THAT A FRIEND OF YOURS TOLD YOU ABOUT THE HBO

01:26PM  17      PROGRAM, BUT IT WAS UNCLEAR WHETHER OR NOT YOU HAD ACTUALLY

01:26PM  18      WATCHED IT.

01:26PM  19                    PROSPECTIVE JUROR:  RIGHT.

01:26PM  20                    THE COURT:  DID YOU WATCH IT?

01:27PM  21                    PROSPECTIVE JUROR:  I DID NOT.  BUT THE QUESTION, IF

01:27PM  22      I REMEMBER CORRECTLY, DO I KNOW OF OR HAVE SEEN, AND SO I JUST

01:27PM  23      CIRCLED IT BECAUSE IT WAS KNOW OF.

01:27PM  24           BUT I KNEW THE -- SOME OF THE DETAILS OF THE CASE AS LAID

01:27PM  25      OUT IN THE QUESTIONNAIRE BECAUSE I THINK THEY JUST -- AS I WAS

| | | |
|---|---|---|
| 01:27PM | 1 | FILLING IT OUT, I JUST STARTED TO KIND OF REMEMBER A LITTLE BIT |
| 01:27PM | 2 | MORE AND MORE ABOUT THE DEFENDANT IN THE CASE OVERALL. |
| 01:27PM | 3 | THE COURT:  AND WHAT WAS THE SOURCE OF THAT |
| 01:27PM | 4 | INFORMATION? |
| 01:27PM | 5 | PROSPECTIVE JUROR:  THAT WOULD HAVE BEEN AN ARTICLE |
| 01:27PM | 6 | ABOUT A FEW MONTHS PRIOR TO THE QUESTIONNAIRE. |
| 01:27PM | 7 | THE COURT:  I SEE.  WELL, TELL ME ABOUT THAT.  THAT |
| 01:27PM | 8 | WAS AN ONLINE ARTICLE? |
| 01:27PM | 9 | PROSPECTIVE JUROR:  IT WAS. |
| 01:27PM | 10 | THE COURT:  I SEE.  DO YOU REMEMBER THE SOURCE OF |
| 01:27PM | 11 | IT? |
| 01:27PM | 12 | PROSPECTIVE JUROR:  NO, I DON'T RECALL, BUT I -- I'M |
| 01:27PM | 13 | NOT 100 PERCENT SURE, NO. |
| 01:27PM | 14 | THE COURT:  OKAY.  AND HOW MANY?  CAN YOU TELL US, |
| 01:27PM | 15 | HOW MANY ARTICLES DO YOU THINK YOU'VE READ LIKE THAT ONE THAT |
| 01:27PM | 16 | YOU JUST TOLD US ABOUT?  HOW MANY DO YOU THINK THAT YOU'VE READ |
| 01:28PM | 17 | OVER THE COURSE OF THE PAST COUPLE OF YEARS? |
| 01:28PM | 18 | PROSPECTIVE JUROR:  RIGHT.  SO I THINK I'VE READ |
| 01:28PM | 19 | LIKE THE INITIAL ONE AND MAYBE ANOTHER FOLLOWUP BECAUSE THERE |
| 01:28PM | 20 | WAS ONE -- BECAUSE IT'S SOMEWHAT LOCAL, I WAS SOMEWHAT |
| 01:28PM | 21 | INTERESTED AND LOOKED INTO IT A LITTLE BIT FURTHER, AND THEN |
| 01:28PM | 22 | KIND OF FORGOT ABOUT IT FOR A FEW MONTHS. |
| 01:28PM | 23 | THE COURT:  SURE. |
| 01:28PM | 24 | YOU KNOW, THE SCHEDULE THAT I'VE IMPOSED HERE, OR I'D LIKE |
| 01:28PM | 25 | TO ADVANCE, PARDON ME, ALLOWS, ALLOWS FOLKS TO, IF THEY WANT, |

01:28PM 1    THEY CAN RETURN TO WORK, I SUPPOSE, FOR A COUPLE OF HOURS IF

01:28PM 2    THEY'RE ABLE TO.  I DON'T KNOW IF WE WORK REMOTE OR NOT.

01:28PM 3         YOU WORK IN A RADIO STATION?

01:28PM 4              PROSPECTIVE JUROR:  I DO.

01:28PM 5              THE COURT:  AND IT SOUNDS LIKE LIVE FEED IS GOING

01:28PM 6    ALL OF THE TIME FOR YOU TO HEAR.

01:28PM 7              PROSPECTIVE JUROR:  YES, IT IS.  AND WE POST UP

01:28PM 8    ONLINE AND I'M LOOKING AT MY COMPUTER INTERFACE AND I'M SEEING

01:28PM 9    THERANOS, THERANOS, THERANOS, THERANOS.  IT'S GOING TO BE HARD

01:29PM 10   TO AVOID AND THERE'S GOING TO BE SITUATIONS THAT I WOULD

01:29PM 11   IMAGINE ARISE WHERE I HAVE TO MAYBE HANDLE ONE OF THESE PIECES

01:29PM 12   OF AUDIO THAT IS ABOUT IT, OR A PIECE OF WRITING THAT IS ABOUT

01:29PM 13   IT, AND I'M NOT REALLY SURE HOW I APPROACH THAT BECAUSE I'M

01:29PM 14   SUPPOSED TO REMAIN CONFIDENTIAL AS A JUROR.

01:29PM 15             THE COURT:  RIGHT.  NO, I APPRECIATE THAT.  THANK

01:29PM 16   YOU FOR SHARING THAT.  THAT WAS A QUESTION THAT I HAD.  I SAW

01:29PM 17   YOU WORKED IN RADIO, AND I WAS CURIOUS WHAT THAT IS LIKE.

01:29PM 18        IS IT A NEWS STATION, A MUSIC STATION?

01:29PM 19             PROSPECTIVE JUROR:  IT'S NEWS.

01:29PM 20             THE COURT:  OH, IT IS.  OKAY.

01:29PM 21        HOW WOULD YOU PORTION YOURSELF OUT IN THE STATION?  HOW

01:29PM 22   COULD YOU DO THAT?

01:29PM 23             PROSPECTIVE JUROR:  I'M NOT 100 PERCENT SURE.  LIKE

01:29PM 24   I SAID, WHEN IT CAME UP YESTERDAY, YOU KNOW, IT WAS HARD TO

01:29PM 25   AVOID.

01:29PM   1                    THE COURT:  SURE.

01:29PM   2                    PROSPECTIVE JUROR:  I CAN'T JUST REALLY, LIKE, GET

01:29PM   3       UP AND WALK OUT BECAUSE WHAT WE DO IS ALL LIVE.

01:29PM   4                    THE COURT:  TELL US AGAIN WHAT YOUR JOB TITLE IS.

01:30PM   5                    PROSPECTIVE JUROR:  PRODUCER.

01:30PM   6                    THE COURT:  PRODUCER.  SO YOU PUT PROGRAMS TOGETHER,

01:30PM   7       NEWS STORIES TOGETHER?

01:30PM   8                    PROSPECTIVE JUROR:  YEAH.

01:30PM   9                    THE COURT:  AND YOU CAN TELL YOUR BOSS, I CAN'T WORK

01:30PM  10       ON ANY STORIES, PARTICULARLY ONES ABOUT THIS CASE, THAT'S EASY

01:30PM  11       ENOUGH TO DO?

01:30PM  12                    PROSPECTIVE JUROR:  I SUPPOSE, BUT IS THAT ALLOWED?

01:30PM  13                    THE COURT:  WELL, I'M NOT GOING TO ASK YOU TO QUIT

01:30PM  14       YOUR JOB, SIR.  I CAN'T DO THAT.

01:30PM  15             BUT, NO, I APPRECIATE YOUR CANDOR HERE.  I'M PROBING THIS

01:30PM  16       JUST TO SEE, YOU KNOW, THIS MAY NOT BE THE RIGHT CASE FOR YOU

01:30PM  17       MR. ROCCAFORTE, IT MAY NOT BE.

01:30PM  18             IT MAY BE BECAUSE OF THE NATURE OF -- I THINK YOU'RE A

01:30PM  19       GOOD PERSON.  WE'VE JUST MET.  YOU SEEM LIKE A FINE PERSON TO

01:30PM  20       ME.  I THINK YOU WOULD GIVE YOUR BEST EFFORTS TO TRY TO

01:30PM  21       SEPARATE YOURSELF.

01:30PM  22             YOU WORK FOR A NEWS RADIO STATION AND YOU ARE, HOW SHOULD

01:30PM  23       I SAY, SURROUNDED BY NEWS ALL DAY.  YOU JUST TOLD US ABOUT WHAT

01:30PM  24       YOUR COMPUTER SCREEN SHOWS.

01:30PM  25             I MAY NOT HAVE ANY ADDITIONAL QUESTIONS FOR THIS WITNESS.

01:30PM   1        LET ME ASK, MR. SCHENK, ANYTHING FURTHER?

01:30PM   2              MR. SCHENK:  NOTHING FROM THE GOVERNMENT,

01:31PM   3    YOUR HONOR.

01:31PM   4              MR. DOWNEY:  NOTHING, YOUR HONOR.

01:31PM   5              THE COURT:  ALL RIGHT.  MR. ROCCAFORTE, WOULD IT

01:31PM   6    BREAK YOUR HEART SEVERELY IF I EXCUSED YOU FROM THIS JURY?

01:31PM   7              PROSPECTIVE JUROR:  THAT'S FINE WITH ME.

01:31PM   8        (LAUGHTER.)

01:31PM   9              THE COURT:  RESTRAIN YOUR ENTHUSIASM,

01:31PM   10   MR. ROCCAFORTE.

01:31PM   11       THANKS VERY MUCH, SIR, AND THANK YOU FOR YOUR CANDOR.  WE

01:31PM   12   APPRECIATE IT.  WE ALL APPRECIATE YOUR CANDOR.

01:31PM   13       I JUST THINK BASED ON YOUR EMPLOYMENT CIRCUMSTANCES THAT

01:31PM   14   YOU'VE TOLD US, IT WOULD BE VERY DIFFICULT, IF NOT IMPOSSIBLE,

01:31PM   15   FOR YOU TO CARRY ON THE TASK THAT I'VE ASKED OF ALL OF THE

01:31PM   16   OTHER JURORS.

01:31PM   17       THANK YOU VERY MUCH, SIR.  BE WELL, BE HEALTHY.

01:31PM   18       YOU CAN GO DOWNSTAIRS, IF YOU WOULD, TO THE JURY ASSEMBLY

01:31PM   19   ROOM AND LET THEM KNOW WHAT HAPPENED.

01:31PM   20       WOULD YOU LEAVE THAT DOCUMENTATION BACK ON THE CHAIR

01:31PM   21   THERE?

01:31PM   22              PROSPECTIVE JUROR:  I WILL, SIR.

01:31PM   23              THE COURT:  ALL RIGHT.  THANK YOU.

01:31PM   24              PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR.

01:31PM   25              THE COURT:  ANYONE ELSE IN THAT ROW, BACK THERE IN

| | | |
|---|---|---|
| 01:31PM | 1 | MR. ROCCAFORTE'S ROW?  I DON'T SEE ANYONE IN THE BEHIND. |
| 01:32PM | 2 | ALL RIGHT.  MS. RAMER, I THINK WE TALKED EARLIER, BUT |
| 01:32PM | 3 | PLEASE COME FORWARD. |
| 01:32PM | 4 | PROSPECTIVE JUROR:  I'M JUROR NUMBER 90. |
| 01:32PM | 5 | THE COURT:  YES.  THANK YOU. |
| 01:32PM | 6 | PROSPECTIVE JUROR:  I GUESS I'VE BEEN AWARE OF |
| 01:32PM | 7 | THERANOS FOR QUITE SOME TIME BECAUSE OF MY WORK IN THE BIOTECH |
| 01:32PM | 8 | INDUSTRY.  IT'S A RELATIVELY SMALL COMMUNITY IN THE BAY AREA, |
| 01:32PM | 9 | AND THERANOS'S BUILDING WAS RIGHT DOWN THE STREET FROM MY |
| 01:32PM | 10 | BUILDING AND I'VE BEEN INTERESTED IN SORT OF THE TECHNOLOGY AND |
| 01:32PM | 11 | THE CHALLENGE. |
| 01:32PM | 12 | I GUESS I'VE BEEN FAMILIAR AND, YOU KNOW, IT'S QUITE A BIT |
| 01:32PM | 13 | OF CONVERSATION ABOUT THE COMPANY AND PROSPECTS. |
| 01:32PM | 14 | THE COURT:  SURE.  OKAY.  WELL, THANK YOU FOR THAT. |
| 01:32PM | 15 | TELL US THE MOST RECENT THING.  I THINK I ASKED YOU THIS. |
| 01:32PM | 16 | I'M SORRY.  WHAT IS THE MOST RECENT MEDIA OR RADIO? |
| 01:32PM | 17 | PROSPECTIVE JUROR:  SAME AS WHAT EVERYBODY ELSE IS |
| 01:32PM | 18 | SAYING, HEADLINES ON NEWS FEEDS THAT I'VE IGNORED. |
| 01:32PM | 19 | THE COURT:  DO YOU REMEMBER IN DETAIL ANY HEADLINES |
| 01:33PM | 20 | OR NEWS FEED OTHER THAN THE NAME THERANOS? |
| 01:33PM | 21 | PROSPECTIVE JUROR:  NO.  THAT THE CASE WAS STARTING, |
| 01:33PM | 22 | AND THERE WERE A COUPLE OF MORE VAGUE ONES ABOUT WHAT TO |
| 01:33PM | 23 | EXPECT, WHICH I DIDN'T PURSUE. |
| 01:33PM | 24 | THE COURT:  OKAY.  YOU DIDN'T READ THAT? |
| 01:33PM | 25 | PROSPECTIVE JUROR:  I DID NOT READ THAT. |

01:33PM  1          THE COURT:  I SEE.  OKAY.

01:33PM  2      WELL, SAME QUESTION THAT I ASKED YOU EARLIER THIS MORNING.

01:33PM  3  DO YOU THINK ANY OF THIS WILL AFFECT YOUR ABILITY TO BE FAIR

01:33PM  4  AND IMPARTIAL, "THIS" MEANING YOU'RE IN THE INDUSTRY.  YOU KNOW

01:33PM  5  THE TECHNOLOGY, OR YOU'RE AT LEAST TRAINED IN IT?

01:33PM  6          PROSPECTIVE JUROR:  I DON'T THINK IT WILL.

01:33PM  7          THE COURT:  I'M SORRY?

01:33PM  8          PROSPECTIVE JUROR:  I'M A SCIENTIST.  WHAT I'M

01:33PM  9  TRAINED TO DO IS TO EVALUATE FACTS AND MAKE FACT-BASED

01:33PM 10  DECISIONS.

01:33PM 11          THE COURT:  RIGHT.

01:33PM 12          PROSPECTIVE JUROR:  I FEEL LIKE I COULD BE

01:33PM 13  COMPLETELY IMPARTIAL.

01:33PM 14          THE COURT:  OKAY.  THANK YOU.  THANKS SO MUCH.

01:33PM 15      WAS IT MR. BORLIK?  DID YOU HAVE YOUR HAND UP, SIR?

01:33PM 16          PROSPECTIVE JUROR:  YEP.  I THINK I'M NUMBER 93.

01:33PM 17          THE COURT:  THANK YOU.

01:33PM 18          PROSPECTIVE JUROR:  SO I WROTE IT ON MY

01:34PM 19  QUESTIONNAIRE.  I THINK IT WAS, LIKE, THE HBO DOCUMENTARY THAT

01:34PM 20  I SAW PROBABLY OVER A YEAR AGO.  I DON'T REALLY REMEMBER WHEN.

01:34PM 21      AND THEN THERE ARE SOME SPECIFIC DETAILS THAT I REMEMBER

01:34PM 22  FROM IT.

01:34PM 23          THE COURT:  OKAY.  THAT YOU RECALL TODAY?

01:34PM 24          PROSPECTIVE JUROR:  YEAH.

01:34PM 25          THE COURT:  OKAY.  WELL, YOU HEARD MY QUESTIONS.  WE

01:34PM  1    ALL WANT TO KNOW WHETHER OR NOT THAT INFORMATION WOULD EITHER

01:34PM  2    STAY WITH YOU OR THAT YOU WOULD CALL UPON IT AS A JUROR TO MAKE

01:34PM  3    DECISIONS ABOUT THIS CASE.

01:34PM  4              PROSPECTIVE JUROR:  I CAN SAY THAT I CAN MAKE AN

01:34PM  5    EFFORT TO PUT IT OUT OF MY MIND, BUT I CAN'T SAY THAT IT WOULD

01:34PM  6    MAKE ME UNBIASSED.

01:34PM  7              THE COURT:  OKAY.  TELL ME ABOUT THAT.

01:34PM  8              PROSPECTIVE JUROR:  UM, BECAUSE IT'S SOMETHING THAT

01:34PM  9    I KNOW.

01:34PM  10             THE COURT:  YOU'RE IN THE TECH FIELD, THIS TECH,

01:34PM  11   YOU'RE AWARE OF THIS TECHNOLOGY?

01:34PM  12             PROSPECTIVE JUROR:  YEAH.  I'M AWARE OF WHAT THEY

01:35PM  13   WERE WORKING ON, AND I AM AWARE OF SOME OF THE OTHER THINGS AND

01:35PM  14   THE REASON THAT THE CASE CAME ABOUT.

01:35PM  15       IT'S REALLY HARD FOR ME TO SAY ABOUT BIAS, RIGHT, BECAUSE

01:35PM  16   IT'S SOMETHING THAT I DO KNOW.  AND I DON'T WANT TO SAY THAT I

01:35PM  17   CAN PUT IT ALL OUT OF MY MIND FOR THE REASON OF MAKING A

01:35PM  18   DECISION.

01:35PM  19             THE COURT:  SURE.  WE TALK ABOUT BIAS AND WE TALK

01:35PM  20   ABOUT IT LIKE IT'S A PEJORATIVE THING OR A BAD THING TO BE

01:35PM  21   BIASED.

01:35PM  22       BUT MAYBE ANOTHER WAY TO LOOK AT IT IN YOUR CIRCUMSTANCE

01:35PM  23   IS THAT YOU HAVE INTIMATE -- IT'S WHAT YOU DO -- YOU HAVE

01:35PM  24   INTIMACY WITH THIS TECHNOLOGY.  YOU KNOW ABOUT THE TECHNOLOGY.

01:35PM  25   YOU KNOW ABOUT AND YOU'VE TOLD US YOU KNOW ABOUT THIS BLOOD

01:35PM  1    TESTING TECHNOLOGY.  IT'S SOMETHING THAT YOU KNOW ABOUT.

01:35PM  2         WHAT I THOUGHT I HEARD YOU SAY IS THAT IT'S BECAUSE OF

01:35PM  3    THAT KNOWLEDGE THAT IT MAY BE DIFFICULT FOR YOU TO FAIRLY JUDGE

01:35PM  4    THE EVIDENCE.

01:35PM  5         I DON'T WANT TO PUT WORDS IN YOUR MOUTH, BUT IS THAT WHAT

01:36PM  6    YOU'RE SAYING?

01:36PM  7              PROSPECTIVE JUROR:  IT'S HARD FOR ME TO SAY BECAUSE

01:36PM  8    I DON'T KNOW WHAT THAT IS, RIGHT.  I DON'T KNOW WHAT THE

01:36PM  9    EVIDENCE IS.

01:36PM 10         BUT FOR THE -- IN TERMS OF THE DOCUMENTARY, RIGHT, THAT'S

01:36PM 11    WHAT I THINK THE BIAS WOULD BE FROM.

01:36PM 12              THE COURT:  I SEE.  FROM WHAT YOU SAW?

01:36PM 13              PROSPECTIVE JUROR:  YEAH.

01:36PM 14              THE COURT:  AND THE INFLUENCE THAT THAT HAD ON YOU?

01:36PM 15              PROSPECTIVE JUROR:  (NODS HEAD UP AND DOWN.)

01:36PM 16              THE COURT:  DO YOU THINK THAT WOULD AFFECT ANY

01:36PM 17    DECISION THAT YOU MIGHT MAKE AS YOU EVALUATE THE EVIDENCE IN

01:36PM 18    THIS CASE AS A SEATED JUROR?

01:36PM 19              PROSPECTIVE JUROR:  I CAN SAY NO, BUT I HAVE A DOUBT

01:36PM 20    ABOUT THAT ANSWER.

01:36PM 21              THE COURT:  WELL, I'M ASKING YOU TO BE HONEST.  I

01:36PM 22    WANT YOU TO BE HONEST.  THERE'S NO PENALTY.  THERE'S NO PENALTY

01:36PM 23    FOR BEING HONEST.  NONE AT ALL.

01:36PM 24         SO YOU CAN TRY YOU SAID?

01:36PM 25              PROSPECTIVE JUROR:  YES.

125

01:36PM  1          THE COURT:  BUT DO I HEAR YOU SAYING, I CAN TRY,

01:37PM  2  JUDGE, BUT I CAN'T PROMISE THAT IT WON'T?

01:37PM  3          PROSPECTIVE JUROR:  YES.

01:37PM  4          THE COURT:  AND I'M NOT TRYING TO -- I DON'T WANT TO

01:37PM  5  SPEAK FOR YOU, I DON'T.  I'M JUST TELLING YOU WHAT I HEAR.

01:37PM  6          PROSPECTIVE JUROR:  THAT'S WHAT I'M GETTING AT.

01:37PM  7          THE COURT:  MR. SCHENK, ANY QUESTIONS?

01:37PM  8          MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

01:37PM  9          MR. DOWNEY:  NOTHING, YOUR HONOR.

01:37PM 10          THE COURT:  ALL RIGHT.  MR. BORLIK, I APPRECIATE

01:37PM 11  YOUR CANDOR.  THANK YOU.  I'M GOING TO EXCUSE YOU --

01:37PM 12  MR. BORLIK?  OH.

01:37PM 13      (LAUGHTER.)

01:37PM 14          THE COURT:  MR. BORLIK IS JUROR NUMBER 93.

01:37PM 15      MR. BORLIK, I'M GOING TO EXCUSE YOU.  THANK YOU FOR

01:37PM 16  TELLING ME ABOUT THE CHALLENGE YOU WOULD FACE.

01:37PM 17      AND YOU DON'T HAVE TO GO DOWNSTAIRS TO CHECK OUT.  I'M

01:37PM 18  TOLD THAT YOU CAN JUST LEAVE THE COURTHOUSE IF YOU WOULD LIKE.

01:37PM 19          PROSPECTIVE JUROR:  OKAY.

01:37PM 20          THE COURT:  THANK YOU.

01:37PM 21      ANYONE ELSE?

01:37PM 22      I SEE NO HANDS.

01:37PM 23      ALL RIGHT.  LET ME CONTINUE WITH MY QUESTIONS, LADIES AND

01:37PM 24  GENTLEMEN.

01:38PM 25      AS I TOLD YOU, THIS WILL BE A LENGTHY TRIAL.  YOU KNOW

01:38PM  1    THAT.

01:38PM  2            OH, I'M SORRY.  I PROMISED I WOULD GET BACK TO --

01:38PM  3            MR. DOWNEY:  YOUR HONOR, JUROR 3 HAS BEEN RAISING

01:38PM  4    HER HAND.

01:38PM  5            THE COURT:  YES, I JUST MENTIONED THAT.  I'M GOING

01:38PM  6    TO GET BACK TO, IS IT WALLWORK.

01:38PM  7            PROSPECTIVE JUROR:  YES.

01:38PM  8            THE COURT:  YES.

01:38PM  9            PROSPECTIVE JUROR:  SHOULD I GO TO THE MIKE?

01:38PM  10           THE COURT:  WHY DON'T YOU?

01:38PM  11           PROSPECTIVE JUROR:  ALL RIGHT.  COOL.  IT SOUNDS

01:38PM  12   LIKE FUN.

01:38PM  13           THE COURT:  WHAT IS YOUR JUROR NUMBER, MS. WALLWORK?

01:38PM  14           PROSPECTIVE JUROR:  NUMBER 3.

01:38PM  15           THE COURT:  THANK YOU.

01:38PM  16           PROSPECTIVE JUROR:  HI.  SO I SPOKE TO SOMEONE

01:38PM  17   DOWNSTAIRS AND THEY SAID I SHOULD JUST LIKE BRING THIS UP ANY

01:38PM  18   TIME I COULD BECAUSE I DIDN'T KNOW THIS AT THE TIME OF FILLING

01:38PM  19   OUT THE ORIGINAL QUESTIONNAIRE, BUT I WOULD NOT BE FINANCIALLY

01:38PM  20   ABLE TO PARTICIPATE IN THE TRIAL FOR, LIKE, THE ALLOTTED

01:38PM  21   13 WEEKS.

01:38PM  22       AT THE TIME OF THE QUESTIONNAIRE I WAS AWARE THAT MY

01:38PM  23   EMPLOYER OFFERS LIKE -- BASICALLY THEY COVER JURY DUTY TIME.

01:39PM  24       BUT WHAT I WAS TOLD JUST A COUPLE OF DAYS AGO IS THAT THEY

01:39PM  25   OFFER FIVE DAYS OF JURY DUTY TIME.  SO THAT OBVIOUSLY DOESN'T

01:39PM 1      COVER 3 DAYS A WEEK FOR 13 WEEKS, SO I WON'T BE ABLE TO

01:39PM 2      PARTICIPATE IN THE TRIAL UNFORTUNATELY.

01:39PM 3              THE COURT:  BECAUSE OF FINANCIAL CIRCUMSTANCES?

01:39PM 4              PROSPECTIVE JUROR:  YEAH, I WOULDN'T BE AFFORDING MY

01:39PM 5      APARTMENT AT THAT POINT GIVEN THE SCHEDULE, AND IT DOES LINE UP

01:39PM 6      A LITTLE BIT WITH MY TYPICAL DAYS OFF, SO I WOULD BE MISSING

01:39PM 7      LIKE FOUR DAYS PER PAY PERIOD.

01:39PM 8              THE COURT:  WE'RE GOING THREE DAYS A WEEK, AS I TOLD

01:39PM 9      YOU, AND THAT GIVES TWO OTHER FULL DAYS AND I HOPE WE CAN BREAK

01:39PM 10     BY 2:00 O'CLOCK EVERY DAY AND THAT'S MY GOAL AND IT MIGHT

01:39PM 11     EXTEND.

01:39PM 12         DOES THAT GIVE YOU ANY SOLACE OR HELP YOU IN ANY WAY?

01:40PM 13             PROSPECTIVE JUROR:  NOT REALLY.  MY APARTMENT IS

01:40PM 14     KIND OF EXPENSIVE FOR THE KIND OF INCOME I GET DEFINITELY.

01:40PM 15             THE COURT:  AND I THINK YOU'RE A BETA TESTER, IS

01:40PM 16     THAT WHAT YOU DO?

01:40PM 17             PROSPECTIVE JUROR:  IT'S A FANCY NAME FOR

01:40PM 18     ESSENTIALLY AN IN-STORE RETAIL SALESPERSON.

01:40PM 19             THE COURT:  THEY HAVE BETA TESTERS.

01:40PM 20             PROSPECTIVE JUROR:  IT'S FUN.

01:40PM 21             THE COURT:  GREAT.

01:40PM 22             PROSPECTIVE JUROR:  IT'S A GOOD JOB.

01:40PM 23             THE COURT:  AND YOU'VE BEEN THERE THREE MONTHS?

01:40PM 24             PROSPECTIVE JUROR:  YEAH, ABOUT THE SAME AMOUNT OF

01:40PM 25     TIME I'VE BEEN IN THE APARTMENT.

01:40PM 1          (LAUGHTER.)

01:40PM 2               THE COURT:  ALL RIGHT.  THANK YOU.

01:40PM 3          MR. SCHENK, ANY QUESTIONS?

01:40PM 4               MR. SCHENK:  NO.

01:40PM 5               MR. DOWNEY:  NOTHING, YOUR HONOR.

01:40PM 6               THE COURT:  ALL RIGHT.  WELL, THANK YOU,

01:40PM 7   MS. WALLWORK.  THANK YOU FOR SPENDING THE DAY WITH US TODAY.

01:40PM 8   I'M SORRY I DID NOT CALL UPON YOU EARLIER, BUT I HOPE YOU FOUND

01:40PM 9   THIS EDUCATIONAL FOR JURY SERVICE AND YOUR JUSTICE SYSTEM, AND

01:40PM 10  IT MAY THAT BE YOU'LL BE SUMMONED AGAIN EITHER IN THIS COURT OR

01:40PM 11  A STATE COURT DOWN THE ROAD TO, AGAIN, ASSIST YOUR JUSTICE

01:41PM 12  SYSTEM.  SO I'LL EXCUSE YOU.

01:41PM 13     WHY DON'T YOU LEAVE THE PAPERWORK WHEN YOU COLLECT YOUR

01:41PM 14  THINGS IF YOU WOULD, MS. WALLWORK.

01:41PM 15     YES?

01:41PM 16          PROSPECTIVE JUROR:  I HAVE A SIMILAR CONCERN TO WHAT

01:41PM 17  SHE HAS, BUT I DIDN'T KNOW IF THIS WAS THE RIGHT TIME.

01:41PM 18          THE COURT:  MR. SCHULTZE?

01:41PM 19          PROSPECTIVE JUROR:  YEAH.

01:41PM 20          THE COURT:  WHY DON'T YOU COME UP TO THE MICROPHONE

01:41PM 21  HERE.

01:41PM 22          PROSPECTIVE JUROR:  SO I HAVE A SIMILAR CONCERN TO

01:41PM 23  HER.  I DIDN'T -- WHEN I FILLED OUT THE QUESTIONNAIRE, I DIDN'T

01:41PM 24  KNOW HOW MANY DAYS MY EMPLOYER COVERED, BUT THEY ONLY COVER

01:41PM 25  SEVEN DAYS.  I SPLIT AN APARTMENT, BUT IF IT WAS $50 OR $60 A

01:42PM   1    DAY, I COULDN'T COVER THE RENT FOR IT, LET ALONE THE UTILITIES

01:42PM   2    AND FOOD AND EXPENSES LIKE THAT.

01:42PM   3            THE COURT:  DOES THE SCHEDULE THAT I'VE OFFERED HERE

01:42PM   4    HELP YOU IN SOME WAY?

01:42PM   5            PROSPECTIVE JUROR:  WHERE I WORK I'M BASICALLY LIKE,

01:42PM   6    I THINK I PUT AN APPLICATION ENGINEER.  I'M JUST A FANCY

01:42PM   7    MACHINIST FOR SILICON WAFERS.

01:42PM   8        WE'RE ONLY OPEN MONDAY THROUGH FRIDAY, LIKE, 9:0 TO 4:00

01:42PM   9    AND SO IT'S KIND OF THREE OF MY FIVE DAYS WHERE I COULD WORK.

01:42PM   10           THE COURT:  ALL RIGHT.  THANK YOU.

01:42PM   11       MR. SCHENK, DO YOU HAVE ANY QUESTIONS?

01:42PM   12           MR. SCHENK:  NO.  THANK YOU.

01:42PM   13           MR. DOWNEY:  NO, YOUR HONOR.

01:42PM   14           THE COURT:  ALL RIGHT.  THANK YOU, MR. SCHULTZE.

01:42PM   15   I'LL EXCUSE YOU.  THANK YOU, SIR.

01:42PM   16           PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR.

01:42PM   17           THE COURT:  YOU'RE WELCOME.

01:42PM   18       ALL RIGHT.  LET ME CONTINUE WITH MY QUESTIONS.

01:43PM   19       I HOPE YOU CAN STILL ATTEND SOME GIANTS GAMES, SIR.

01:43PM   20           PROSPECTIVE JUROR:  I HAVEN'T BEEN ABLE TO.  THANK

01:43PM   21   YOU.

01:43PM   22           THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, YOU'VE

01:43PM   23   HEARD ME TALK ABOUT MEDIA AND EXPOSURE, AND JURORS WILL BE

01:43PM   24   INSTRUCTED TO NOT READ, LISTEN TO MEDIA COVERAGE ABOUT THE

01:43PM   25   CASE, AND THIS IS IMPORTANT, AS YOU'VE HEARD ME TALK ABOUT ALL

01:43PM   1    DAY.

01:43PM   2        A JUROR'S DECISION ON THE CASE MUST BE FORMED ONLY BY THE

01:43PM   3    EVIDENCE ADMITTED AND RECEIVED IN THE COURTROOM AND NOT ON ANY

01:43PM   4    INFORMATION RECEIVED OUTSIDE OF THE COURTHOUSE.

01:43PM   5        A JUROR WHO IS EXPOSED TO ANY OUTSIDE INFORMATION MUST

01:43PM   6    REPORT THE EXPOSURE TO THE COURT.  THAT MEANS TO ME VIA MY

01:43PM   7    COURTROOM DEPUTY.

01:43PM   8        NOW, THIS MAY BE DIFFICULT.  IT'S GOING TO BE CHALLENGING.

01:43PM   9    I'VE TALKED ABOUT TURNING YOUR NOTIFICATION DEVICES AND THOSE

01:43PM  10    THINGS OFF.

01:44PM  11        IS THERE ANYONE ELSE WHO HAS ANYTHING THAT THEY WOULD LIKE

01:44PM  12    TO SHARE WITH US ABOUT WHETHER OR NOT THEY HAVE KNOWLEDGE

01:44PM  13    REGARDING THE FACTS OF THIS CASE OTHER THAN WHAT WE HAVE

01:44PM  14    ALREADY TALKED ABOUT?

01:44PM  15        I SEE NO HANDS.

01:44PM  16        IS THERE ANYTHING ABOUT THE FACT THAT THE CHARGE RELATES

01:44PM  17    TO ALLEGATIONS OF WIRE FRAUD AND CONSPIRACY TO COMMIT WIRE

01:44PM  18    FRAUD THAT WILL AFFECT ANYONE'S ABILITY TO BE FAIR AND

01:44PM  19    IMPARTIAL?  THIS IS JUST THE NATURE OF THE CHARGES.  IS THERE

01:44PM  20    ANYTHING ABOUT THE NATURE OF THE CHARGES THAT YOU THINK WILL

01:44PM  21    CAUSE DIFFICULTY TO BE FAIR?

01:44PM  22        I SEE NO HANDS.

01:44PM  23        NOW, LET ME INQUIRE ABOUT PRIOR JURY SERVICE.  I KNOW SOME

01:44PM  24    OF YOU HAVE ANSWERED THIS QUESTION.

01:44PM  25        HOW MANY OF YOU HAVE SERVED ON JURIES PREVIOUSLY?

01:44PM  1          ALL RIGHT.  THANK YOU.

01:44PM  2          AND I THINK YOU TOLD US YOU ANSWERED THOSE QUESTIONS IN

01:44PM  3   THE QUESTIONNAIRE ABOUT YOUR JURY SERVICE.

01:44PM  4          LET ME ASK YOU COLLECTIVELY, THOSE OF YOU WHO RAISED YOUR

01:44PM  5   HANDS, SOME OF YOU HAVE SERVED IN CIVIL CASES AND SOME OF YOU

01:45PM  6   SERVED IN CRIMINAL CASES AS JURORS IN THE PAST.

01:45PM  7          IS THERE ANYTHING ABOUT YOUR PRIOR JURY SERVICE THAT YOU

01:45PM  8   THINK WILL AGAIN AFFECT YOUR ABILITY TO BE FAIR AND IMPARTIAL

01:45PM  9   IN THIS TRIAL?  ANYONE HAVE ANY OBSERVATIONS ABOUT THAT?

01:45PM 10          I SEE NO HANDS.

01:45PM 11          HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN ACCUSED OF WIRE

01:45PM 12   FRAUD OR ALLEGATIONS REGARDING FRAUDULENT CONDUCT?  ANYONE HAVE

01:45PM 13   OR KNOW OF ANYONE IN THOSE CIRCUMSTANCES?

01:45PM 14          I SEE NO HANDS.

01:45PM 15          NOW, LADIES AND GENTLEMEN, I WANT TO MOVE TO A DIFFERENT

01:45PM 16   TOPIC -- OH, I SEE A HAND.  YES.  I BEG YOUR PARDON.

01:45PM 17          YES, MR. PENUMUDY, YES.

01:45PM 18              PROSPECTIVE JUROR:  YES, SO I JUST FOUND OUT THAT A

01:45PM 19   FRIEND OF MINE -- WE WENT TO COLLEGE TOGETHER -- HE HAS BEEN

01:45PM 20   SENTENCED ON A WIRE FRAUD CHARGE.

01:46PM 21              THE COURT:  I SEE.  HOW LONG AGO WAS THAT, SIR?

01:46PM 22              PROSPECTIVE JUROR:  SO I THINK THE CASE WAS BROUGHT

01:46PM 23   AGAINST HIM ABOUT SIX MONTHS BACK AND THE SENTENCING HAPPENED I

01:46PM 24   THINK TWO WEEKS AGO.

01:46PM 25              THE COURT:  WAS THAT IN THIS COURTHOUSE, IN A

| | | |
|---|---|---|
| 01:46PM | 1 | FEDERAL COURTHOUSE? |
| 01:46PM | 2 | PROSPECTIVE JUROR:  NO.  IT'S A FEDERAL COURTHOUSE, |
| 01:46PM | 3 | BUT I THINK IT'S IN SEATTLE. |
| 01:46PM | 4 | THE COURT:  SEATTLE? |
| 01:46PM | 5 | PROSPECTIVE JUROR:  YEAH. |
| 01:46PM | 6 | THE COURT:  I SEE.  DID YOU PARTICIPATE AT ALL IN |
| 01:46PM | 7 | THOSE PROCEEDINGS, SIR? |
| 01:46PM | 8 | PROSPECTIVE JUROR:  NO. |
| 01:46PM | 9 | THE COURT:  YOU DIDN'T TESTIFY AS A WITNESS? |
| 01:46PM | 10 | PROSPECTIVE JUROR:  NO. |
| 01:46PM | 11 | THE COURT:  DID YOU WRITE A LETTER TO THE COURT IN |
| 01:46PM | 12 | SUPPORT OF EITHER SIDE IN THAT CASE? |
| 01:46PM | 13 | PROSPECTIVE JUROR:  NO, I DID NOT. |
| 01:46PM | 14 | THE COURT:  AND YOU WEREN'T A WITNESS IN THE CASE? |
| 01:46PM | 15 | PROSPECTIVE JUROR:  NO. |
| 01:46PM | 16 | THE COURT:  IT'S JUST A FRIEND THAT YOU KNEW THIS |
| 01:46PM | 17 | HAPPENED TO? |
| 01:46PM | 18 | PROSPECTIVE JUROR:  YES. |
| 01:46PM | 19 | THE COURT:  AND DO YOU KNOW ANY OF THE CIRCUMSTANCES |
| 01:46PM | 20 | OF THAT SITUATION THAT HE HAD? |
| 01:46PM | 21 | PROSPECTIVE JUROR:  I AM AWARE OF SOME OF THE |
| 01:46PM | 22 | CIRCUMSTANCES BECAUSE I FOLLOWED THAT CASE IN THE SENSE OF THE |
| 01:46PM | 23 | CHARGES AND WHAT HAPPENED. |
| 01:46PM | 24 | THE COURT:  YES. |
| 01:46PM | 25 | PROSPECTIVE JUROR:  I EVEN SPOKE TO THAT PERSON. |

133

01:46PM 1            THE COURT:  YOU SPOKE TO HIM?

01:46PM 2            PROSPECTIVE JUROR:  YES, I DID.

01:46PM 3            THE COURT:  I SEE.  AND DID HE SHARE WITH YOU AT

01:46PM 4    LEAST -- I'M NOT ASKING YOU TO TELL US, PLEASE DON'T, BUT DID

01:46PM 5    HE SHARE WITH YOU HIS THOUGHTS ABOUT HIS CASE?

01:47PM 6            PROSPECTIVE JUROR:  OH, A LITTLE BIT.  JUST A LITTLE

01:47PM 7    BIT.  NOT THE DETAILS OF THE CASE, BUT MORE ABOUT HOW HE FELT

01:47PM 8    ABOUT IT.

01:47PM 9            THE COURT:  I SEE.  DO YOU KNOW IF THAT CASE WENT TO

01:47PM 10   A TRIAL?

01:47PM 11           PROSPECTIVE JUROR:  I DON'T THINK SO.

01:47PM 12           THE COURT:  OKAY.  IT WAS RESOLVED IN SOME OTHER

01:47PM 13   MANNER OTHER THAN A TRIAL?

01:47PM 14           PROSPECTIVE JUROR:  YEAH.

01:47PM 15           THE COURT:  ALL RIGHT.  AND YOU SAY THE SENTENCING

01:47PM 16   WAS TWO WEEKS AGO, SOMETHING LIKE THAT?

01:47PM 17           PROSPECTIVE JUROR:  YES.

01:47PM 18           THE COURT:  I SEE.  IS THERE ANYTHING ABOUT THAT

01:47PM 19   EXPERIENCE, SIR, THAT YOU THINK AFFECTS YOUR ABILITY TO BE FAIR

01:47PM 20   AND IMPARTIAL HERE?

01:47PM 21           PROSPECTIVE JUROR:  I DON'T THINK SO.

01:47PM 22           THE COURT:  OKAY.  ALL RIGHT.  IT SOUNDS LIKE YOU

01:47PM 23   KNOW A LITTLE BIT ABOUT THE ALLEGATIONS AND WHAT THE CASE

01:47PM 24   RESOLVED ABOUT, FOR.

01:47PM 25           PROSPECTIVE JUROR:  YES.

01:47PM  1          THE COURT:  BUT NOT GREAT DETAIL.

01:47PM  2          PROSPECTIVE JUROR:  YES.

01:47PM  3          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:47PM  4          PROSPECTIVE JUROR:  ALL RIGHT.

01:47PM  5          THE COURT:  NOW, LADIES AND GENTLEMEN, I WOULD LIKE

01:47PM  6   TO MOVE TO A DIFFERENT TOPIC, AND I WANT TO ASK YOU IF YOU, IF

01:48PM  7   YOU HAVE EVER BEEN OR EVER FELT THAT YOU OR A CLOSE FRIEND OR A

01:48PM  8   RELATIVE WAS A VICTIM OF INTIMATE PARTNER VIOLENCE OR ABUSE, OR

01:48PM  9   WHAT IS KNOWN AS DOMESTIC OR RELATIONSHIP VIOLENCE?  HAS

01:48PM  10  ANYBODY HAD -- HAVE YOU BEEN INVOLVED OR DO YOU KNOW SOMEONE

01:48PM  11  WHO HAS BEEN INVOLVED IN THOSE SITUATIONS?

01:48PM  12     MR. BURGE, I THINK I SAW YOUR HAND, SIR.  WHY DON'T YOU

01:48PM  13  COME TO THE MICROPHONE?

01:48PM  14     YES, SIR.

01:48PM  15          PROSPECTIVE JUROR:  MY WIFE, BEFORE WE MET, WAS A

01:48PM  16  VICTIM OF ABUSE, AND THERE WAS ACTUALLY A CASE BROUGHT AGAINST

01:48PM  17  HER BOYFRIEND AT THE TIME AND HE WAS ARRESTED AND PUT IN JAIL,

01:48PM  18  AND THAT'S --

01:48PM  19          THE COURT:  OKAY.  THAT WAS BEFORE YOU MET YOUR

01:48PM  20  WIFE?

01:48PM  21          PROSPECTIVE JUROR:  CORRECT.

01:48PM  22          THE COURT:  YOUR SOURCE OF INFORMATION IS HER, HER

01:48PM  23  TALKING ABOUT THAT?

01:49PM  24          PROSPECTIVE JUROR:  CORRECT.

01:49PM  25          THE COURT:  AND DO YOU KNOW, SIR, HOW LONG AGO THAT

01:49PM  1      WAS?

01:49PM  2                 PROSPECTIVE JUROR:  OVER 20 YEARS BECAUSE WE'VE BEEN

01:49PM  3      TOGETHER 20 YEARS NOW.

01:49PM  4                 THE COURT:  OKAY.  ALL RIGHT.  HAS SHE -- I HOPE

01:49PM  5      YOU'LL PARDON ME, SIR, BUT HAVE YOU TALKED WITH YOUR WIFE ABOUT

01:49PM  6      THAT SITUATION?

01:49PM  7           AND I DON'T WANT TO KNOW WHAT IT WAS, BUT I'M CURIOUS

01:49PM  8      WHETHER OR NOT YOU HAD CONVERSATIONS ABOUT THAT?

01:49PM  9                 PROSPECTIVE JUROR:  YEAH, IT COMES UP FROM TIME TO

01:49PM 10      TIME.  SHE STILL HAS ISSUES WITH WHERE HE PUNCHED HER AND

01:49PM 11      GRABBED HER AND --

01:49PM 12                 THE COURT:  I SEE.

01:49PM 13                 PROSPECTIVE JUROR:  AND EMOTIONALLY SHE'S VERY

01:49PM 14      SCARRED FROM IT.

01:49PM 15                 THE COURT:  OKAY.

01:49PM 16                 PROSPECTIVE JUROR:  SO FROM TIME TO TIME IT DOES

01:49PM 17      COME UP.

01:49PM 18                 THE COURT:  I SEE.

01:49PM 19           DO YOU KNOW, SIR, WHETHER OR NOT -- AND IF YOU -- IF

01:49PM 20      IT'S -- IF YOU'D PREFER NOT TO ANSWER, PLEASE DON'T, AND JUST

01:49PM 21      TELL ME.

01:49PM 22           BUT DO YOU KNOW WHETHER SHE HAS RECEIVED THERAPY,

01:49PM 23      COUNSELLING, ANYTHING LIKE THAT OVER THE YEARS?

01:49PM 24                 PROSPECTIVE JUROR:  NOT TO MY KNOWLEDGE, NO.

01:49PM 25                 THE COURT:  OKAY.  ALL RIGHT.

01:50PM 1      AND YOU, OF COURSE, WERE NOT INVOLVED IN THAT PROCESS AT

01:50PM 2   ALL.

01:50PM 3           PROSPECTIVE JUROR:  NO, SIR.

01:50PM 4           THE COURT:  OKAY.  HOW IS IT -- DO YOU HAVE ANY

01:50PM 5   FEELINGS ABOUT THAT AREA IN GENERAL BASED ON YOUR WIFE'S

01:50PM 6   EXPERIENCE?

01:50PM 7           PROSPECTIVE JUROR:  BESIDES HATING HIM?  YEAH, I

01:50PM 8   MEAN, I FEEL BAD FOR HER BECAUSE IT'S SOMETHING THAT SHE CAN'T

01:50PM 9   SHAKE.  IT'S SOMETHING THAT WILL BE WITH HER FOREVER.

01:50PM 10          THE COURT:  DO YOU KNOW HOW LONG SHE WAS IN A

01:50PM 11  RELATIONSHIP WITH THIS PERSON?

01:50PM 12          PROSPECTIVE JUROR:  A COUPLE YEARS.

01:50PM 13          THE COURT:  ANYTHING ELSE YOU WANT TO SHARE WITH US

01:50PM 14  ABOUT THAT?

01:50PM 15          PROSPECTIVE JUROR:  NO, SIR.

01:50PM 16          THE COURT:  BEFORE YOU LEAVE, I DID WANT TO ASK YOU

01:50PM 17  ANOTHER QUESTION.  THIS IS ABOUT -- YOU TOLD US YOU SAW SOME

01:50PM 18  HEADLINES ABOUT THIS CASE, AND I THINK I NEGLECTED TO ASK YOU

01:50PM 19  WHAT THE HEADLINES WERE, IF YOU RECALL.

01:50PM 20          PROSPECTIVE JUROR:  I SAW ONE FOR JURY SELECTION,

01:50PM 21  AND THEN THERE WAS ONE ABOUT THE DEFENSE STRATEGY?  WAS THIS IN

01:51PM 22  A NEWSPAPER OR ELECTRONIC --

01:51PM 23          PROSPECTIVE JUROR:  THIS WAS ONLINE.

01:51PM 24          THE COURT:  AND THOSE WERE WHAT THE HEADLINES WERE?

01:51PM 25          PROSPECTIVE JUROR:  RIGHT.

01:51PM   1              THE COURT:  AND I THINK YOU TOLD US YOU DID NOT --

01:51PM   2              PROSPECTIVE JUROR:  I DID NOT READ THEM.

01:51PM   3              THE COURT:  AND THE TIMING OF THIS WAS?

01:51PM   4              PROSPECTIVE JUROR:  WITHIN THE LAST WEEK OR SO.

01:51PM   5              THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU.  I

01:51PM   6      APPRECIATE IT.

01:51PM   7              PROSPECTIVE JUROR:  UH-HUH.

01:51PM   8              THE COURT:  ANYONE ELSE IN RESPONSE TO MY QUESTION?

01:51PM   9          YES, IS THAT MR. --

01:51PM  10              PROSPECTIVE JUROR:  -- WITHERSPOON.

01:51PM  11              THE COURT:  YES, MR. WITHERSPOON.  YES.

01:51PM  12              PROSPECTIVE JUROR:  I'M JUROR NUMBER 29.

01:51PM  13              THE COURT:  THANK YOU.

01:51PM  14              PROSPECTIVE JUROR:  I'M CURRENTLY UNDER SUBPOENA AND

01:51PM  15      MY WIFE IS UNDER SUBPOENA FOR A LAWSUIT.  I HAVE THE SUBPOENA

01:51PM  16      WITH ME.  IT'S INVOLVING ALLEGED ABUSE OF A MINOR.

01:51PM  17              THE COURT:  ARE YOU WITNESSES IN THAT CASE?

01:51PM  18              PROSPECTIVE JUROR:  YES, SIR.

01:51PM  19              THE COURT:  ARE YOU WITNESSES FOR, IF YOU CARE TO

01:51PM  20      SHARE WITH US, THE PROSECUTION IN THE CASE?  THE DEFENSE?

01:51PM  21              PROSPECTIVE JUROR:  THE PLAINTIFF OR -- IT'S NOT A

01:52PM  22      CRIMINAL.

01:52PM  23              THE COURT:  IT'S A CIVIL CASE?

01:52PM  24              PROSPECTIVE JUROR:  THE PLAINTIFF, YEAH.

01:52PM  25              THE COURT:  I SEE.  AND IS THAT IN SANTA CLARA

01:52PM  1    COUNTY OR SOME OTHER COUNTY?

01:52PM  2            PROSPECTIVE JUROR:  IT'S IN PLACER COUNTY.

01:52PM  3            THE COURT:  I SEE.  OKAY.

01:52PM  4        AND THIS IS INVOLVING A CHILD CUSTODY ISSUE?

01:52PM  5            PROSPECTIVE JUROR:  I'M UNAWARE OF THE

01:52PM  6    CIRCUMSTANCES.  THEY CAN'T REVEAL IT.  THE CASE IS SEALED.

01:52PM  7            THE COURT:  I SEE.  OKAY.

01:52PM  8            PROSPECTIVE JUROR:  I WAS ALSO -- JUST FULL

01:52PM  9    DISCLOSURE.  I WAS INVOLVED IN A LAWSUIT WITH THESE PEOPLE.

01:52PM  10            THE COURT:  A CIVIL LAWSUIT?

01:52PM  11            PROSPECTIVE JUROR:  YEAH, IN 2012.

01:52PM  12            THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU FOR

01:52PM  13    SHARING THAT.

01:52PM  14            PROSPECTIVE JUROR:  YEP.

01:52PM  15            THE COURT:  ANYONE ELSE IN RESPONSE TO THIS

01:52PM  16    QUESTION?

01:52PM  17        LET ME GO TO THE JURY BOX.  YES.

01:52PM  18        AND IS THAT MS. CHAMBERS?

01:52PM  19            PROSPECTIVE JUROR:  YEAH.

01:52PM  20            THE COURT:  YES.  AND IN RESPONSE TO THIS QUESTION,

01:52PM  21    LET ME SAY, IF ANYONE WISHES TO SPEAK PRIVATELY ABOUT THIS

01:53PM  22    QUESTION, WE CAN DO THAT.  I'M HAPPY TO DO THAT.

01:53PM  23        MS. CHAMBERS, THAT OF COURSE APPLIES TO YOU AS WELL.

01:53PM  24            PROSPECTIVE JUROR:  JUROR NUMBER 17.

01:53PM  25            THE COURT:  YES.

01:53PM  1          PROSPECTIVE JUROR:  MY EX-HUSBAND WAS ABUSIVE

01:53PM  2    TOWARDS ME.  A FEW INSTANCES.  IT WASN'T ANYTHING -- ONE TIME

01:53PM  3    THE POLICE GOT CALLED BECAUSE WE WERE AT MY FRIEND'S HOUSE AND

01:53PM  4    HE WAS DRUNK AND HE PULLED MY HAIR DOWN TO THE GROUND, AND SO

01:53PM  5    MY FRIENDS CALLED THE POLICE.  BUT HE WAS ARRESTED AND HE WAS

01:53PM  6    RELEASED THE NEXT DAY.

01:53PM  7          THAT WAS IN 2018.

01:53PM  8          I'M NOT REALLY -- I HAVEN'T REALLY TALKED TO HIM FOR A

01:53PM  9    LONG TIME.  HE WAS ARRESTED FOR SOMETHING ELSE ABOUT A YEAR AND

01:53PM  10   A HALF AGO.  SO I'M NOT REALLY IN CONTACT.

01:53PM  11         WE HAVE TWO KIDS, I HAVE TWO KIDS.  HE DOESN'T HAVE

01:53PM  12   CUSTODY OF THEM OR ANYTHING.

01:53PM  13              THE COURT:  OKAY.

01:53PM  14              PROSPECTIVE JUROR:  HE DOES GET TO SEE THEM

01:53PM  15   SOMETIMES.  BUT AFTER THIS RECENT ARREST, HE HAS GOT TO SEE

01:53PM  16   THEM ONCE WITH HIS MOM SUPERVISING FOR A FEW HOURS JUST BECAUSE

01:54PM  17   MY CHILDREN WANTED TO SEE THEIR DAD.

01:54PM  18         THEY'RE ALMOST 12 AND 7, SO THEY'RE, LIKE, I FEEL OLD

01:54PM  19   ENOUGH, AT LEAST THE 12-YEAR OLD TO MAKE A DECISION LIKE THAT.

01:54PM  20         BUT OTHER THAN THAT, THAT'S --

01:54PM  21              THE COURT:  OKAY.  DID YOU GO TO FAMILY COURT FOR

01:54PM  22   ANY OF THIS?

01:54PM  23              PROSPECTIVE JUROR:  NO.

01:54PM  24              THE COURT:  OKAY.  THIS WAS HANDLED OUTSIDE OF THE

01:54PM  25   COURT SYSTEM?

01:54PM  1          PROSPECTIVE JUROR:  YEAH.

01:54PM  2          THE COURT:  AND IF YOU CARE TO SHARE, HAVE YOU OR

01:54PM  3  DID YOU RECEIVE ANY COUNSELLING, THERAPY, FOR YOUR EXPERIENCE?

01:54PM  4          PROSPECTIVE JUROR:  NO.

01:54PM  5          THE COURT:  OKAY.  I'M SORRY, HOW LONG AGO WAS THIS?

01:54PM  6          PROSPECTIVE JUROR:  2018.

01:54PM  7          THE COURT:  ALL RIGHT.  OKAY.

01:54PM  8          PROSPECTIVE JUROR:  THREE YEARS AGO.

01:54PM  9          THE COURT:  OKAY.  THANK YOU.

01:54PM 10          PROSPECTIVE JUROR:  THANK YOU.

01:54PM 11          THE COURT:  YOU'RE WELCOME.

01:54PM 12      WERE THERE ANY OTHER RESPONSES?

01:54PM 13      MR. TEJADA, DID YOU HAVE A -- I THINK I SEE YOUR HAND UP.

01:54PM 14  YOUR JUROR NUMBER AGAIN IS?

01:54PM 15          PROSPECTIVE JUROR:  JUROR NUMBER 56, YOUR HONOR.

01:54PM 16          THE COURT:  THANK YOU.

01:55PM 17          PROSPECTIVE JUROR:  I HAVE TWO EXAMPLES OFF THE TOP

01:55PM 18  OF MY HEAD.  BOTH OF THEM WERE LONG-TIME FRIENDS.  ONE OF THEM

01:55PM 19  A LONG TIME FRIEND OF MY MOTHER.  SHE WAS IN AN ABUSIVE

01:55PM 20  MARRIAGE FOR A LONG TIME.

01:55PM 21      AND THE OTHER HAS A HISTORY OF ABUSIVE RELATIONSHIPS.

01:55PM 22      I SHOULD PROBABLY ALSO MENTION THAT MY ORGANIZATION DOES

01:55PM 23  HELP DOMESTIC VIOLENCE VICTIMS.  WE DO HELP WITH RESTRAINING

01:55PM 24  ORDERS AS WELL AS NEW VISAS.  THAT'S NOT MY DEPARTMENT, BUT

01:55PM 25  THAT IS SOMETHING THAT MY ORGANIZATION DOES.

01:55PM   1         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:55PM   2      HAVE YOU EVER DONE ANY OF THAT WORK?

01:55PM   3         PROSPECTIVE JUROR:  NO.  WELL, I'VE HAD TO LISTEN TO

01:55PM   4   A COUPLE OF CASES BECAUSE I DO HAVE TO TAKE INTAKES ON OUR

01:55PM   5   ORGANIZATION, BUT I DON'T SPECIFICALLY DO THE DOMESTIC VIOLENCE

01:55PM   6   WORK.

01:55PM   7         THE COURT:  I SEE.  OKAY.  THANK YOU.  THANK YOU,

01:55PM   8   SIR.

01:55PM   9      I THINK THERE WERE OTHER HANDS THERE.

01:56PM  10      MS. GROGAN.

01:56PM  11         PROSPECTIVE JUROR:  I KNOW SEVERAL FOLKS, TWO OF

01:56PM  12   WHOM I'M RELATED TO, WHO HAVE BEEN THE VICTIMS OF DOMESTIC

01:56PM  13   VIOLENCE.

01:56PM  14         THE COURT:  AND WERE YOU INVOLVED AT ALL IN THOSE

01:56PM  15   CIRCUMSTANCES?  AND BY THAT I MEAN DID YOU GO TO COURT AS A

01:56PM  16   WITNESS?  DID YOU ASSIST?  DID YOU IN ANY WAY OFFER ASSISTANCE?

01:56PM  17         PROSPECTIVE JUROR:  DRIVE SOMEBODY TO THE POLICE

01:56PM  18   OFFICE, YEAH.

01:56PM  19         THE COURT:  YEAH.  OKAY.

01:56PM  20      WERE YOU INVOLVED AT ALL IN ANY PROCEEDING, LEGAL

01:56PM  21   PROCEEDINGS INVOLVING THOSE CASES?

01:56PM  22         PROSPECTIVE JUROR:  NO.

01:56PM  23         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:56PM  24      HOW LONG AGO WAS THIS?  I'M SORRY?

01:56PM  25         PROSPECTIVE JUROR:  TEN YEARS AGO.

01:56PM   1                    THE COURT:  ALL RIGHT.  THANK YOU.

01:56PM   2            ANYONE ELSE?

01:56PM   3            I SEE NO HANDS.

01:56PM   4            DO ANY OF YOU HAVE THOUGHTS ABOUT THE WORK OF

01:57PM   5    PROFESSIONALS WHO ARE INVOLVED IN CASES OF ABUSE OR VIOLENCE?

01:57PM   6    AND I'M TALKING ABOUT PROFESSIONAL COUNSELLING, EVALUATIONS,

01:57PM   7    THERAPIES, THOSE TYPES OF THINGS?  ANYONE HAVE ANY THOUGHTS

01:57PM   8    ABOUT THOSE PROFESSIONS OR THAT WORK?

01:57PM   9            I SEE NO HANDS.

01:57PM  10            HAVE ANY OF YOU KNOWN ANYONE WHO YOU THOUGHT WAS FALSELY

01:57PM  11    OR UNFAIRLY ACCUSED OF DOMESTIC VIOLENCE OR PARTNER ABUSE

01:57PM  12    ALLEGATIONS?  ANYONE KNOW ANYONE WHO YOU THINK OR KNOW WAS

01:57PM  13    FALSELY ACCUSED OF THIS TYPE OF CONDUCT?

01:57PM  14            I SEE NO HANDS.

01:57PM  15            HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN ASSOCIATED WITH

01:57PM  16    OR BEEN A CONTRIBUTOR TO ANY DOMESTIC VIOLENCE, VICTIM SUPPORT

01:57PM  17    GROUP, WOMEN'S SHELTER OR ORGANIZATION SUCH AS THOSE?

01:57PM  18            YES, MR. TEJADA?

01:57PM  19                    PROSPECTIVE JUROR:  SO AS I MENTIONED BEFORE, MY

01:57PM  20    ORGANIZATION DOES A LOT OF WORK WITH DOMESTIC VIOLENCE AND MY

01:58PM  21    OFFICE HAS PARTNERSHIPS WITH AT LEAST ONE SHELTER.  IT'S NOT MY

01:58PM  22    DEPARTMENT, SO I DON'T KNOW ALL OF OUR DETAILS, BUT FOR SURE WE

01:58PM  23    HAVE DONE WORK WITH DOMESTIC VIOLENCE ORGANIZATIONS.

01:58PM  24                    THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU.

01:58PM  25            ANYONE ELSE?

01:58PM 1          YES.  IS THAT MR. LEE?

01:58PM 2                  PROSPECTIVE JUROR:  NUMBER 94.

01:58PM 3                  THE COURT:  THANK YOU.

01:58PM 4                  PROSPECTIVE JUROR:  WOULD IT BE ALL RIGHT TO SPEAK

01:58PM 5     IN PRIVATE?

01:58PM 6                  THE COURT:  YES, SIR.  LET'S PASS THIS FOR JUST A

01:58PM 7     MOMENT AND THEN WE'LL TALK IN PRIVATE.  THANK YOU.

01:58PM 8          ANYONE ELSE?

01:58PM 9          HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN EMPLOYED BY A

01:58PM 10    LAW ENFORCEMENT OFFICE, DISTRICT ATTORNEY'S OFFICE, UNITED

01:58PM 11    STATES ATTORNEY'S OFFICE, FBI, I.R.S., OR IN THE CRIMINAL

01:58PM 12    JUSTICE SYSTEM AS A DEFENSE LAWYER, PROBATION OFFICER, OR

01:59PM 13    INVESTIGATOR?  ANYONE HAVE ANY CONTACTS IN THOSE FIELDS?

01:59PM 14         I SEE NO HANDS.

01:59PM 15         WOULD ANY OF YOU GIVE GREATER OR LESSER CREDENCE TO A

01:59PM 16    WITNESS WHO IS A LAW ENFORCEMENT OFFICER, AGENT, OR GOVERNMENT

01:59PM 17    REPRESENTATIVE SIMPLY BECAUSE THAT WITNESS IS A LAW ENFORCEMENT

01:59PM 18    OFFICER, AGENT, OR GOVERNMENT REPRESENTATIVE?

01:59PM 19         THIS QUESTION IS DESIGNED TO ASK YOU, JUST BECAUSE THE

01:59PM 20    FACT OF SOMEONE'S EMPLOYMENT IN LAW ENFORCEMENT, WOULD YOU GIVE

01:59PM 21    THAT WITNESS'S TESTIMONY GREATER OR LESSER WEIGHT JUST BECAUSE

01:59PM 22    OF THE NATURE OF THEIR EMPLOYMENT?

01:59PM 23         ANYONE FEEL THAT THEY WOULD DO THAT?

01:59PM 24         I SEE NO HANDS.

01:59PM 25         DO ANY OF YOU HAVE ANY OPINIONS ABOUT THE UNITED STATES

01:59PM 1    GOVERNMENT OR THE STATE OF CALIFORNIA OR ANY FEDERAL OR STATE

01:59PM 2    LAW ENFORCEMENT AGENCY THAT MIGHT AFFECT YOUR ABILITY TO BE

01:59PM 3    FAIR AND IMPARTIAL IN THIS CASE?

01:59PM 4        I SEE NO HANDS.

01:59PM 5        IS ANYONE OF THE OPINION THAT THE CRIMINAL JUSTICE SYSTEM

02:00PM 6    IS FUNDAMENTALLY UNFAIR SUCH THAT YOUR ABILITY TO BE FAIR AND

02:00PM 7    IMPARTIAL TO BOTH SIDES MIGHT BE IMPAIRED?  ANYONE HAVE THOSE

02:00PM 8    FEELINGS?

02:00PM 9        I SEE NO HANDS.

02:00PM 10       I'D LIKE TO TALK ABOUT THE PRESUMPTION OF INNOCENCE.

02:00PM 11       A DEFENDANT IN A CRIMINAL CASE IS PRESUMED TO BE INNOCENT.

02:00PM 12   THIS PRESUMPTION REQUIRES THE GOVERNMENT TO PROVE EACH ELEMENT

02:00PM 13   OF AN OFFENSE BEYOND A REASONABLE DOUBT.

02:00PM 14       PROOF BEYOND A REASONABLE DOUBT IS PROOF THAT LEAVES YOU

02:00PM 15   FIRMLY CONVINCED THAT THE DEFENDANT IS GUILTY.

02:00PM 16       IT IS NOT REQUIRED THAT THE GOVERNMENT PROVE GUILT BEYOND

02:00PM 17   ALL POSSIBLE DOUBT.

02:00PM 18       A REASONABLE DOUBT IS A DOUBT BASED UPON REASON AND COMMON

02:00PM 19   SENSE AND IS NOT BASED PURELY ON SPECULATION.

02:00PM 20       IT MAY ARISE FROM A CAREFUL AND IMPARTIAL CONSIDERATION OF

02:00PM 21   ALL OF THE EVIDENCE OR FROM LACK OF EVIDENCE.

02:00PM 22       IF AFTER A CAREFUL AND IMPARTIAL CONSIDERATION OF ALL OF

02:01PM 23   THE EVIDENCE YOU ARE NOT CONVINCED BEYOND A REASONABLE DOUBT

02:01PM 24   THAT THE DEFENDANT IS GUILTY, IT IS YOUR DUTY TO FIND THE

02:01PM 25   DEFENDANT NOT GUILTY.

02:01PM  1      ON THE OTHER HAND, IF AFTER A CAREFUL AND IMPARTIAL

02:01PM  2  CONSIDERATION OF ALL OF THE EVIDENCE, YOU ARE CONVINCED BEYOND

02:01PM  3  A REASONABLE DOUBT THAT THE DEFENDANT IS GUILTY, IT IS YOUR

02:01PM  4  DUTY TO FIND THE DEFENDANT GUILTY.

02:01PM  5      NOW, CAN YOU ALL APPLY THE LAW AS I GIVE IT TO YOU,

02:01PM  6  INCLUDING THE PRESUMPTION OF INNOCENCE AND THE GOVERNMENT'S

02:01PM  7  BURDEN OF PROOF BEYOND A REASONABLE DOUBT?

02:01PM  8      IS THERE ANYONE WHO CANNOT DO THIS OR WILL HAVE DIFFICULTY

02:01PM  9  DOING THAT?

02:01PM  10      I SEE NO HANDS.

02:01PM  11      IS THERE ANYONE WHO BELIEVES THAT BECAUSE MS. HOLMES IS

02:01PM  12  PRESENT IN COURT ACCUSED OF THESE CHARGES, SHE MUST BE GUILTY?

02:01PM  13  ANYONE HAVE THAT FEELING?

02:01PM  14      I SEE NO HANDS.

02:02PM  15      IS THERE ANYONE WHO CANNOT PRESUME MS. HOLMES INNOCENT OF

02:02PM  16  THE CHARGES?

02:02PM  17      I SEE NO HANDS.

02:02PM  18      YOU UNDERSTAND THEN THAT IF, AFTER HEARING ALL OF THE

02:02PM  19  EVIDENCE, YOU DETERMINE THAT THE GOVERNMENT HAS NOT MET THEIR

02:02PM  20  BURDEN OF PROVING THE CASE BEYOND A REASONABLE DOUBT, IT WOULD

02:02PM  21  BE YOUR DUTY TO FIND THE DEFENDANT NOT GUILTY.  THAT'S THE LAW,

02:02PM  22  AND I'LL INSTRUCT YOU ON THE LAW AT THE END OF THE CASE.

02:02PM  23      IS THERE ANYONE WHO DOES NOT UNDERSTAND THAT?

02:02PM  24      I SEE NO HANDS.

02:02PM  25      IF THAT WERE TO BE THE CASE, DO YOU THINK THAT YOU COULD

02:02PM  1    DO THAT, THAT IS, REACH THAT VERDICT AND STILL FACE FAMILY AND

02:02PM  2    FRIENDS, OR WOULD FEAR OF CRITICISM MAKE THAT DIFFICULT FOR

02:02PM  3    YOU?

02:02PM  4         THIS QUESTION CALLS ON IF YOU FIND AS A JUROR THAT THAT IS

02:02PM  5    WHAT YOU SHOULD DO, WOULD YOU DO THAT WITHOUT FEAR FROM FAMILY,

02:02PM  6    FRIENDS, OR OTHER CRITICISM?  ANYONE WHO FEELS THAT THEY COULD

02:02PM  7    NOT DO THIS BECAUSE THEY WOULD BE AFRAID OF CRITICISM?

02:03PM  8         I SEE NO HANDS.

02:03PM  9         YOU HAVE SEEN A VIDEO THAT HAS DISCUSSED THE TOPIC OF

02:03PM  10   UNCONSCIOUS BIAS, AND WE'VE TALKED ABOUT THAT.  WE SHOW THAT AS

02:03PM  11   AN AID TO PROSPECTIVE JURORS AS THEY CONSIDER JURY SERVICE AND

02:03PM  12   THE TASK AHEAD OF THEM.

02:03PM  13        IT'S MEANT AS AN EDUCATIONAL TOOL TO INFORM REGARDING

02:03PM  14   RESEARCH AND STUDIES ON ISSUES OF BIAS AND UNCONSCIOUS BIAS.  I

02:03PM  15   HOPE YOU FOUND THE VIDEO INFORMATIVE AND HELPFUL.

02:03PM  16        IN OUR NATION AND STATE WE HAVE CITIZENS, RESIDENTS,

02:03PM  17   NONRESIDENTS, NONCITIZENS FROM DIFFERENT RACES, ETHIC AND

02:03PM  18   CULTURAL BACKGROUNDS.

02:03PM  19        IN THE JURISDICTION OF THIS COURT, WE ENJOY A RICH

02:03PM  20   DIVERSITY OF INDIVIDUALS AND CULTURES AND UNDER THE LAW ALL

02:03PM  21   PEOPLE WHO APPEAR IN COURT, REGARDLESS OF RACE, RELIGION,

02:03PM  22   ETHNIC HERITAGE, GENDER, AGE, OR SEXUAL ORIENTATION ARE

02:03PM  23   ENTITLED TO DUE PROCESS OF LAW AND WE GUARANTEE EACH PERSON THE

02:03PM  24   RIGHT TO A FAIR AND IMPARTIAL TRIAL.

02:04PM  25        WE ARE TO JUDGE EACH INDIVIDUAL AS WE WOULD WANT TO BE

02:04PM 1    JUDGED FAIRLY AND IMPARTIALLY.

02:04PM 2         NOW, THROUGHOUT THE COURSE OF THE TRIAL IT MAY APPEAR THAT

02:04PM 3    ONE OR MORE OF THE PARTIES OR ATTORNEYS OR WITNESSES COME FROM

02:04PM 4    A NATIONAL, RACIAL OR RELIGIOUS GROUP OR MAY HAVE A DIFFERENT

02:04PM 5    LIFESTYLE FROM YOUR OWN.

02:04PM 6         WOULD THIS IN ANY WAY AFFECT YOUR JUDGMENT OR THE WEIGHT

02:04PM 7    AND CREDIBILITY YOU WOULD GIVE TO THE EVIDENCE IN THIS CASE?

02:04PM 8         ANYONE WHO FEELS THAT?

02:04PM 9         I SEE NO HANDS.

02:04PM 10        TO REACH A VERDICT, THE JURY MUST BE UNANIMOUS.  DO ALL OF

02:04PM 11   YOU ACCEPT THE REQUIREMENT THAT THE JURY VERDICT BE UNANIMOUS?

02:04PM 12   ANYONE WHO PARTS COMPANY WITH THAT?

02:04PM 13        I SEE NO HANDS.

02:04PM 14        DOES ANYONE FEEL THAT BECAUSE OF PHILOSOPHICAL, MORALE OR

02:04PM 15   RELIGIOUS REASONS THAT THEY CANNOT SIT AS A JUROR IN A CRIMINAL

02:04PM 16   CASE OR THAT WOULD CAUSE DISCOMFORT OR INABILITY TO REACH A

02:04PM 17   VERDICT IN THIS CASE?

02:04PM 18        I SEE NO HANDS.

02:05PM 19        AS A JUROR, YOU'RE NOT TO CONSIDER OR SPECULATE ON THE

02:05PM 20   QUESTION OF PUNISHMENT.  THAT QUESTION IS SOLELY IN THE

02:05PM 21   PROVINCE OF THE COURT.

02:05PM 22        IS THERE ANYONE WHO DOES NOT UNDERSTAND THAT?

02:05PM 23        I SEE NO HANDS.

02:05PM 24        WILL YOU PERFORM YOUR DUTY TO FOLLOW THE LAW AND DECIDE

02:05PM 25   THE CASE WITHOUT REGARD TO THE POSSIBLE CONSEQUENCES?  IS THERE

| | | |
|---|---|---|
| 02:05PM | 1 | ANYONE WHO CANNOT DO THAT? |
| 02:05PM | 2 | I SEE NO HANDS. |
| 02:05PM | 3 | IN OUR COURTS AN ACCUSED HAS THE RIGHT TO REMAIN SILENT |
| 02:05PM | 4 | AND NOT TESTIFY.  A DEFENDANT MAY CHOOSE TO RELY ON THE STATE |
| 02:05PM | 5 | OF THE EVIDENCE AT THE CONCLUSION OF THE GOVERNMENT'S CASE AND |
| 02:05PM | 6 | PRESENT NO AFFIRMATIVE EVIDENCE. |
| 02:05PM | 7 | IS THERE ANYONE WHO CANNOT ACCEPT THE DEFENDANT'S RIGHT |
| 02:05PM | 8 | UNDER THE CONSTITUTION TO REMAIN SILENT AND THUS CHOOSE NOT TO |
| 02:05PM | 9 | TESTIFY IN THE CASE?  ANYONE WHO HAS DIFFICULTY WITH THAT |
| 02:05PM | 10 | CONCEPT? |
| 02:06PM | 11 | I SEE NO HANDS. |
| 02:06PM | 12 | IF MS. HOLMES RELIES ON HER RIGHT NOT TO TESTIFY, WOULD |
| 02:06PM | 13 | ANYONE HOLD THAT AGAINST HER? |
| 02:06PM | 14 | I SEE NO HANDS. |
| 02:06PM | 15 | WOULD ANY OF YOU FEEL THAT SHE WOULD BE HIDING SOMETHING |
| 02:06PM | 16 | IF SHE DID NOT TESTIFY IN THE CASE? |
| 02:06PM | 17 | I SEE NO HANDS. |
| 02:06PM | 18 | HAVE ANY OF -- HAVE YOU OR ANY OF YOUR FAMILY OR CLOSE |
| 02:06PM | 19 | FRIENDS EVER WORKED FOR A COURT, PROSECUTION, OR A CRIMINAL |
| 02:06PM | 20 | DEFENSE LAW OFFICE, INCLUDING GOVERNMENT OR PRIVATE PRACTICE? |
| 02:06PM | 21 | ALL RIGHT.  MR. WITHERSPOON, WHY DON'T YOU COME UP. |
| 02:06PM | 22 | PROSPECTIVE JUROR:  PRETTY MUCH EVERYBODY IN MY |
| 02:06PM | 23 | FAMILY IS AN ATTORNEY.  MY GRANDFATHER, MY DAD, MY UNCLES. |
| 02:06PM | 24 | THE COURT:  OKAY. |
| 02:06PM | 25 | PROSPECTIVE JUROR:  MY DAD WAS AN ASSISTANT DISTRICT |

| | | |
|---|---|---|
| 02:06PM | 1 | ATTORNEY IN HOUSTON. |
| 02:07PM | 2 | THE COURT:  OKAY.  I SEE. |
| 02:07PM | 3 | AND DID THEY DISCUSS THEIR WORK WITH YOU? |
| 02:07PM | 4 | PROSPECTIVE JUROR:  OH, NO. |
| 02:07PM | 5 | THE COURT:  NO? |
| 02:07PM | 6 | PROSPECTIVE JUROR:  NOT REALLY. |
| 02:07PM | 7 | THE COURT:  OKAY. |
| 02:07PM | 8 | PROSPECTIVE JUROR:  I MEAN, THE PERIPHERY. |
| 02:07PM | 9 | THE COURT:  NOT IN DETAIL. |
| 02:07PM | 10 | PROSPECTIVE JUROR:  HE TOOK HIS JOB SERIOUSLY I |
| 02:07PM | 11 | GUESS. |
| 02:07PM | 12 | THE COURT:  OKAY.  THANK YOU. |
| 02:07PM | 13 | PROSPECTIVE JUROR:  YEAH. |
| 02:07PM | 14 | THE COURT:  ALL RIGHT.  WHO ELSE WAS IT? |
| 02:07PM | 15 | MR. TEJADA? |
| 02:07PM | 16 | PROSPECTIVE JUROR:  YOUR HONOR, I'VE GOT A LOT OF |
| 02:07PM | 17 | FRIENDS FROM LAW SCHOOL WHO WENT INTO CRIMINAL DEFENSE.  I HAD |
| 02:07PM | 18 | A LOT OF FRIENDS WHO WANTED TO BE A PROSECUTOR.  I WANTED TO BE |
| 02:07PM | 19 | A PUBLIC DEFENDER. |
| 02:07PM | 20 | BUT I DON'T THINK ANY OF THEM DISCUSSED THEIR WORK THAT |
| 02:07PM | 21 | MUCH WITH ME, BUT IT IS SOMETHING THAT I KNOW A LOT OF PEOPLE |
| 02:07PM | 22 | WENT TO. |
| 02:07PM | 23 | THE COURT:  WELL, YOU'RE A LAWYER, SO OF COURSE YOU |
| 02:07PM | 24 | WENT TO LAW SCHOOL AND PEOPLE CHOSE DIFFERENT CAREER PATHS. |
| 02:07PM | 25 | SO THANK YOU.  THANK YOU FOR THAT. |

02:07PM  1          SOMEONE ELSE?  I THINK I SAW SOME HANDS.  YES, IN THE

02:07PM  2      FRONT ROW.  WHY DON'T YOU COME FORWARD?

02:08PM  3          IS THAT -- YOUR JUROR NUMBER?

02:08PM  4              PROSPECTIVE JUROR:  38.

02:08PM  5              THE COURT:  YES.

02:08PM  6              PROSPECTIVE JUROR:  MY WIFE, WHEN WE MOVED TO

02:08PM  7      MICHIGAN, WE GOT MARRIED THERE.  FOR A SHORT WHILE SHE DID WORK

02:08PM  8      FOR THE PROSECUTOR'S OFFICE IN THE BERRIEN COUNTY COURTHOUSE OF

02:08PM  9      SOUTHWESTERN MICHIGAN.

02:08PM 10              THE COURT:  ALL RIGHT.

02:08PM 11              PROSPECTIVE JUROR:  JUST OFF OF STUDIES AND SUCH.

02:08PM 12              THE COURT:  THANK YOU.  ANYONE ELSE?

02:08PM 13          MR. BURGE.

02:08PM 14              PROSPECTIVE JUROR:  YES.

02:08PM 15          I HAVE A COLLEAGUE/FRIEND WHEN HE LEFT OUR FIRM HE WENT TO

02:08PM 16      THE PROSECUTION OFFICE.

02:08PM 17              THE COURT:  OKAY.

02:08PM 18              PROSPECTIVE JUROR:  BUT WE DON'T DISCUSS WHAT HE'S

02:08PM 19      BEEN DOING.

02:08PM 20              THE COURT:  OKAY.  HOW LONG AGO WAS THAT, SIR?

02:08PM 21              PROSPECTIVE JUROR:  ABOUT SIX YEARS.

02:08PM 22              THE COURT:  OKAY.  THANK YOU.

02:08PM 23          I SEE A HAND.  IS THAT MS. NGUYEN?

02:08PM 24              PROSPECTIVE JUROR:  YES.

02:08PM 25              THE COURT:  71.

02:09PM   1          PROSPECTIVE JUROR:  JUROR NUMBER 71.

02:09PM   2      MY NIECE IS A LAWYER PRIVATELY IN L.A.

02:09PM   3          THE COURT:  OKAY.  DO YOU KNOW WHAT TYPE OF LAW SHE

02:09PM   4   PRACTICES?

02:09PM   5          PROSPECTIVE JUROR:  AT LEAST IT WAS A LAWYER AT SOME

02:09PM   6   OFFICE, BUT THEN SHE MOVED TO BE A PRIVATE LAWYER FOR HER OWN I

02:09PM   7   THINK FOR FAMILY ISSUES.

02:09PM   8          THE COURT:  OH, I SEE.  FAMILY LAW.  OKAY.  THANK

02:09PM   9   YOU.

02:09PM  10      YES, MR. NIZENKOFF, YES.

02:09PM  11          PROSPECTIVE JUROR:  JUROR 64 AGAIN.

02:09PM  12      MY FATHER-IN-LAW MANY YEARS AGO WAS AN ATTORNEY AND I

02:09PM  13   THINK -- MY FATHER-IN-LAW WAS AN ATTORNEY AND SMALL CLAIMS

02:09PM  14   COURT JUDGE SEVERAL YEARS AGO, BUT IT WAS A LITTLE BEFORE I MET

02:10PM  15   HIM.

02:10PM  16      MY WIFE HAS A COUPLE OF FRIENDS WHO ARE ATTORNEYS, AND I

02:10PM  17   HAVE A COUPLE OF FRIENDS FROM COLLEGE WHO I AM NOT SUPER CLOSE

02:10PM  18   TO ANYMORE, BUT THEY ARE PATENT LAWYERS.

02:10PM  19          THE COURT:  THERE'S NO CONNECTION TO THAT, THAT

02:10PM  20   THEY'RE PATENT LAWYERS AND YOU'RE NOT CLOSE TO THEM ANY LONGER?

02:10PM  21          PROSPECTIVE JUROR:  NO.  JUST LOST TOUCH.

02:10PM  22      (LAUGHTER.)

02:10PM  23          THE COURT:  THANK YOU.  NOT THAT I HAVE ANY VIEWS ON

02:10PM  24   THAT TOPIC.  I JUST WANT TO --

02:10PM  25      (LAUGHTER.)

| | | |
|---|---|---|
| 02:10PM | 1 | THE COURT:  ANYONE ELSE? |
| 02:10PM | 2 | I SEE NO HANDS. |
| 02:10PM | 3 | HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN INVOLVED WITH OR |
| 02:10PM | 4 | APPEARED AS A DEFENDANT, A VICTIM, OR A WITNESS IN ANY |
| 02:10PM | 5 | INVESTIGATION BY A GOVERNMENTAL AGENCY?  THIS WOULD INCLUDE |
| 02:10PM | 6 | POLICE DEPARTMENT, SHERIFF'S OFFICES, AND FEDERAL AGENCIES. |
| 02:10PM | 7 | IF ANYONE WISHES TO SPEAK PRIVATELY ABOUT AN ANSWER TO |
| 02:10PM | 8 | THIS QUESTION, WE CAN CERTAINLY DO THAT. |
| 02:10PM | 9 | AND I'VE HEARD FROM -- MR. BURGE, YOU'VE TOLD US ABOUT |
| 02:10PM | 10 | YOUR SITUATION AND WE'VE HEARD ABOUT THE OTHER SITUATION AND |
| 02:10PM | 11 | FAMILY. |
| 02:10PM | 12 | ANYTHING ELSE THAT ANYONE MIGHT BE INVOLVED IN? |
| 02:11PM | 13 | I SEE NO HANDS. |
| 02:11PM | 14 | ALL RIGHT.  WHAT I'M GOING TO DO NOW IS I THINK I WOULD |
| 02:11PM | 15 | LIKE TO ALLOW COUNSEL SOME -- I HAVE TO CONFESS, AND I |
| 02:11PM | 16 | APOLOGIZE, MY QUESTIONS HAVE GONE A LITTLE LONGER THAN I |
| 02:11PM | 17 | THOUGHT AND I WAS GOING TO HAVE EACH OF YOU INTRODUCE |
| 02:11PM | 18 | YOURSELVES, YOU HAVE THAT QUESTIONNAIRE. |
| 02:11PM | 19 | BUT I THINK FOR TIME, I'D LIKE TO HAVE THE LAWYERS BEGIN |
| 02:11PM | 20 | THEIR QUESTIONS IF THEY HAVE ANY NOW FOR YOU. |
| 02:11PM | 21 | SO I'M GOING TO -- WE'RE GOING TO DISPENSE WITH THE |
| 02:11PM | 22 | INTRODUCTION, COUNSEL.  I APOLOGIZE FOR THAT, BUT I DO WANT TO |
| 02:11PM | 23 | GET TO YOUR QUESTIONS. |
| 02:11PM | 24 | SO, LADIES AND GENTLEMEN, THE LAWYERS WILL HAVE AN |
| 02:11PM | 25 | OPPORTUNITY TO ASK SOME QUESTIONS NOW, AND WE'LL START WITH THE |

02:11PM 1    GOVERNMENT.

02:11PM 2         MR. SCHENK?

02:11PM 3              MR. SCHENK:  THANK YOU.

02:11PM 4         GOOD AFTERNOON.  YOU HEARD MY NAME IS JEFF SCHENK, AND I

02:12PM 5    REPRESENT THE UNITED STATES IN THIS PROSECUTION.

02:12PM 6         I ONLY HAVE A COUPLE OF QUESTIONS ON A FEW TOPICS THAT I'D

02:12PM 7    LIKE TO FOLLOW UP ON.

02:12PM 8         THE FIRST IS THE JUDGE ASKED IF ANYBODY HAD PRECONCEIVED

02:12PM 9    VIEWS OR OPINIONS ON LAW ENFORCEMENT AND IF A LAW ENFORCEMENT

02:12PM 10   WITNESS TESTIFIED, WOULD THEY VIEW THAT TESTIMONY EITHER MORE

02:12PM 11   FAVORABLY OR LESS FAVORABLY BASED ON THOSE PRIOR EXPERIENCES.

02:12PM 12        I WANT TO EXPAND THAT TO THE MEDICAL PROFESSION, TO

02:12PM 13   MEDICAL DOCTORS.  ANYONE HAVE PRIOR EXPERIENCE WITH PHYSICIANS

02:12PM 14   OR FOLKS IN THE MEDICAL INDUSTRY SO THAT IF YOU HEARD IN THIS

02:12PM 15   TRIAL FROM DOCTORS, YOU MIGHT GIVE THAT TESTIMONY MORE OR LESS

02:12PM 16   WEIGHT PURELY BASED ON THEIR PROFESSION?

02:12PM 17        AND I NOTE THAT IN SOME QUESTIONNAIRES, INDIVIDUALS SAID

02:12PM 18   THAT THEY HAD DISPUTES OVER BILLS BEFORE.

02:12PM 19        I THINK, MR. RISHI, IF YOU'LL ALLOW ME TO PICK ON YOU, I

02:12PM 20   THINK YOU MENTIONED THAT.  I WONDER IF DISPUTES WITH BILLS OR

02:13PM 21   WITH MEDICAL INSURANCE COMPANIES OR SOMETHING LIKE THAT WOULD

02:13PM 22   LEAD YOU TO HAVE SOME FEELINGS ABOUT MEDICAL PROFESSIONAL 'S

02:13PM 23   TESTIMONY IN THIS TRIAL?

02:13PM 24        ANY HANDS?

02:13PM 25        YES, SIR.

02:13PM 1          THE COURT:  THIS IS MR. CHUANG, I BELIEVE, YES.

02:13PM 2          PROSPECTIVE JUROR:  I WORK AS A REGISTERED NURSE IN

02:13PM 3    THE HOSPITAL.

02:13PM 4          THE COURT:  JUST A SECOND, MR. CHUANG.  WE'LL GET

02:13PM 5    YOU THE MICROPHONE.  THANK YOU FOR YOUR PATIENCE.  WE HAVE

02:13PM 6    MASKS ON AND THAT BECOMES DIFFICULT.

02:13PM 7       I'M GOING TO DISCLOSE SOMETHING THAT IS COMMON KNOWLEDGE

02:13PM 8    HERE IN THE COURTHOUSE, WE HAVE THE BEST COURT REPORTER IN THE

02:13PM 9    COURTHOUSE HERE WORKING FOR US.  BUT EVEN WITH ALL OF HER

02:13PM 10   SKILLS, IT'S DIFFICULT TO HEAR WITH THE MASKS ON, SO WE'LL HAND

02:13PM 11   YOU THE MICROPHONE TO ASSIST, THANK YOU.

02:13PM 12         PROSPECTIVE JUROR:  I WORK AS A REGISTERED NURSE IN

02:13PM 13   THE HOSPITAL, SO I INTERACT WITH ALL KINDS OF MEDICAL

02:13PM 14   PROFESSIONS.  SO I MIGHT GIVE MORE WEIGHT, YOU KNOW, IF IT'S

02:14PM 15   LIKE A DOCTOR OR A HEALTH CARE PROFESSIONAL GIVING TESTIMONIES.

02:14PM 16         MR. SCHENK:  SO THERE ARE SOME INSTANCES WHEN A

02:14PM 17   MEDICAL PROFESSIONAL MAY TESTIFY IN THE TRIAL AND THE COURT

02:14PM 18   WOULD RECEIVE THEIR TESTIMONY AS AN EXPERT.  SO THE COURT WOULD

02:14PM 19   TELL YOU THAT BECAUSE OF THEIR TRAINING, YOU'RE ALLOWED TO HEAR

02:14PM 20   THEIR OPINION ON CERTAIN TOPICS BECAUSE OF THAT EXPERTISE.

02:14PM 21      IF YOU PUT THAT ASIDE, IF THERE ARE WITNESSES THAT

02:14PM 22   TESTIFY, BUT WITHOUT BECOMING AN EXPERT, ARE JUST MEDICAL

02:14PM 23   PROFESSIONALS, WOULD YOU ALSO GIVE THOSE INDIVIDUALS MORE

02:14PM 24   WEIGHT OR WOULD YOU BE ABLE TO WEIGH THEIR TESTIMONY THE SAME

02:14PM 25   AS ANY OTHER WITNESS?

02:14PM   1              PROSPECTIVE JUROR:  IF THEY'RE -- YOU'RE SAYING THAT

02:14PM   2    THEY'RE NOT THE EXPERTS?

02:14PM   3              MR. SCHENK:  CORRECT.  IF THEY OBSERVED THINGS THAT

02:14PM   4    THEY'RE COMING TO TELL YOU, "I OBSERVED THE FOLLOWING, I SAW

02:14PM   5    THE FOLLOWING."

02:14PM   6              PROSPECTIVE JUROR:  NO.  ONLY IF THEY'RE BEING

02:14PM   7    CALLED AS THE EXPERTS, THEN YEAH.

02:14PM   8              MR. SCHENK:  THANK YOU.

02:14PM   9         ANY OTHER HANDS TO THAT QUESTION, MEDICAL PROFESSIONALS,

02:15PM  10    EITHER MORE OR LESS WEIGHT IN YOUR MIND?

02:15PM  11         THE JUDGE ALSO TALKED TO YOU A LITTLE BIT ABOUT YOUR

02:15PM  12    OBLIGATION TO AVOID THE MEDIA, ESPECIALLY THE MEDIA ABOUT THIS

02:15PM  13    CASE DURING THE TRIAL.  I APPRECIATE THAT THAT IS GOING TO BE A

02:15PM  14    CHALLENGE.  WE HAVE ALREADY HEARD FROM INDIVIDUALS WHO HAVE

02:15PM  15    SAID AFTER READING THE QUESTIONNAIRE, THEY HAVE APPRECIATED

02:15PM  16    THAT THEY WERE NOT SUPPOSED TO LEARN MORE, RESEARCH,

02:15PM  17    INVESTIGATE THIS CASE.

02:15PM  18         BUT IT APPEARED ON THEIR PHONE.

02:15PM  19         AND I'M JUST WONDERING IF ANYBODY HAS ANY CONCERNS WITH,

02:15PM  20    NOW HAVING MORE TIME TO REFLECT ON THAT, WHETHER THAT'S GOING

02:15PM  21    TO BE AN ISSUE FOR THEM.

02:15PM  22         I WILL TELL YOU IT'S A CONCERN OF MINE.  IT'S A CONCERN

02:15PM  23    THAT THE CASE HAS A LOT OF PUBLICITY, AND WE DON'T CONTROL SOME

02:15PM  24    OF THE MEDIA THAT GETS PRESENTED TO US THESE DAYS.  THE JUDGE

02:15PM  25    SUGGESTED TURNING OFF ALERTS ON YOUR PHONE AS ONE METHOD.

02:15PM  1        BUT IT IS IMPORTANT FOR BOTH SIDES TO HAVE A FAIR TRIAL.

02:16PM  2   ONE OF THE WAYS THAT WE MAKE SURE THAT THE FAIR TRIAL OCCURS IS

02:16PM  3   THAT EVERYBODY DECIDES THE CASE ON THE EVIDENCE PRESENTED IN

02:16PM  4   THIS COURTROOM, THAT THE JURY IS ONLY EVALUATING FACTS THAT ARE

02:16PM  5   PRESENTED TO IT THROUGH THE JUDGE AS THE GATEKEEPER TO ALLOW IN

02:16PM  6   APPROPRIATE EVIDENCES.

02:16PM  7        AND IF ALERTS POP UP ON YOUR PHONE AND YOU'RE TEMPTED TO

02:16PM  8   FIGURE OUT WHAT HAPPENED IN COURT YESTERDAY THROUGH THE EYES OF

02:16PM  9   A REPORTER, THAT BECOMES A PROBLEM FOR BOTH SIDES.

02:16PM  10       I WANT TO ASK AGAIN, AND I KNOW THE JUDGE HAS ALREADY

02:16PM  11  COVERED THIS WITH YOU, BUT, IS THERE ANYBODY WHO HAS A CONCERN

02:16PM  12  WITH THEIR ABILITY TO TURN AWAY FROM THAT TYPE OF MEDIA, TO

02:16PM  13  TURN OFF THE ALERTS, TO TURN OFF THE RADIO OR THE TELEVISION

02:16PM  14  WHEN THIS TYPE OF STORY COMES ON?

02:16PM  15       NO HANDS.  OKAY.

02:16PM  16       THE LAST TOPIC I WANTED TO TALK TO YOU ABOUT WAS TO FOLLOW

02:16PM  17  UP ON THE JUDGE'S QUESTION REGARDING INTERPERSONAL ABUSE OR

02:16PM  18  DOMESTIC VIOLENCE.  I DON'T WANT TO CALL ON INDIVIDUAL ONES,

02:17PM  19  INDIVIDUALLY THE PEOPLE WHO SPOKE, BUT I WAS JUST WONDERING

02:17PM  20  WHETHER ANYONE WHO DID SPEAK WILL SAY THAT THEIR PRIOR

02:17PM  21  EXPERIENCE WILL AFFECT THEIR ABILITY TO HEAR THIS CASE FAIRLY.

02:17PM  22       IF THEY HEAR EVIDENCE ABOUT THAT TOPIC, IS YOUR PRIOR

02:17PM  23  EXPERIENCE GOING TO AFFECT YOUR ABILITY TO EVALUATE THE

02:17PM  24  EVIDENCE THAT YOU HEAR IN THIS CASE?

02:17PM  25       AND I APPRECIATE IT'S DIFFICULT BECAUSE YOU DON'T KNOW

02:17PM   1    EXACTLY WHAT THE EVIDENCE IS GOING TO BE IN THIS CASE, SO I

02:17PM   2    APOLOGIZE FOR ASKING A QUESTION WITHOUT SUFFICIENT FACTS TO

02:17PM   3    ANSWER IT.

02:17PM   4        BUT TO THE BEST OF YOUR ABILITY, IS THERE ANYONE WITH

02:17PM   5    PRIOR EXPERIENCE THAT CAUSES YOU SOME CONCERN, OR IF THIS

02:17PM   6    TESTIMONY COMES IN OR IF THAT TESTIMONY COMES IN, IS IT GOING

02:17PM   7    TO TRIGGER FEELINGS THAT YOU'VE HAD, NOT NECESSARILY THAT

02:17PM   8    YOU'RE GOING TO EVALUATE THE TESTIMONY OR THE EVIDENCE

02:17PM   9    DIFFERENTLY, BUT THAT THIS JUST MIGHT NOT BE THE RIGHT CASE FOR

02:17PM   10   YOU BECAUSE YOU PREFER NOT TO PUT YOURSELF IN THAT ENVIRONMENT

02:17PM   11   BECAUSE YOU DON'T WANT TO HEAR THAT KIND OF TESTIMONY OR

02:17PM   12   EVIDENCE IF IT COMES IN.

02:18PM   13       I'M ANXIOUS TO HEAR IF SOMEBODY HAS PRIOR EXPERIENCES THAT

02:18PM   14   SUGGESTS THAT THIS MIGHT TRIGGER THEM IN A WAY THAT THEY WOULD

02:18PM   15   LIKE TO AVOID.

02:18PM   16       ANY HANDS?

02:18PM   17           THE COURT:  WHY DON'T YOU COME UP TO THE LECTERN.

02:18PM   18       IS THIS MR. LEE?

02:18PM   19       I'M SORRY.  DID YOU WANT TO SPEAK PRIVATELY ABOUT THIS,

02:18PM   20   MR. LEE?

02:18PM   21       ALL RIGHT.  I THINK WE'RE GOING TO DO THAT AT AN

02:18PM   22   APPROPRIATE TIME HERE.  SO THANK YOU FOR CALLING THAT TO OUR

02:18PM   23   ATTENTION AS WELL.

02:18PM   24           MR. SCHENK:  THANK YOU, YOUR HONOR.

02:18PM   25       NO FURTHER QUESTIONS.

02:18PM  1           THE COURT:  ALL RIGHT.  THANK YOU.

02:18PM  2        MR. DOWNEY, DO YOU HAVE QUESTIONS?

02:18PM  3           MR. DOWNEY:  YES, YOUR HONOR.

02:18PM  4        GOOD AFTERNOON, LADIES AND GENTLEMEN.  THANK YOU FOR YOUR

02:18PM  5     PATIENCE TODAY.

02:18PM  6        IT'S CLEAR TO ME FROM THE DISCUSSION THAT ALL OF YOU HAVE

02:18PM  7     HAD WITH JUDGE DAVILA AND MR. SCHENK THAT YOU'VE BEEN VERY

02:18PM  8     HONEST IN RESPONSE TO BOTH THE QUESTIONNAIRES AND TO

02:18PM  9     JUDGE DAVILA'S QUESTIONS DURING THE COURSE OF THE DAY.  THAT'S

02:19PM  10    WHAT THIS PROCESS IS ABOUT.

02:19PM  11       AS JUDGE DAVILA SAID, THERE ARE SOME CASES WHERE A

02:19PM  12    PARTICULAR PERSON MAY NOT BE THE IDEAL JUROR.

02:19PM  13       SO I THANK YOU FOR YOUR HONESTY.

02:19PM  14       I'M GOING TO ASK SOME OF YOU QUESTIONS INDIVIDUALLY AND

02:19PM  15    I'M GOING TO ASK THE PANEL QUESTIONS GENERALLY.

02:19PM  16       LET ME START THERE WITH A QUESTION THAT REALLY RELATES TO

02:19PM  17    AN INSTRUCTION THAT YOU WILL RECEIVE DURING THE COURSE OF THIS

02:19PM  18    CASE, WHICH WILL BE TO THE EFFECT THAT YOU'RE REQUIRED TO

02:19PM  19    CONSIDER ALL OF THE EVIDENCE AND SUSPEND JUDGMENT UNTIL YOU

02:19PM  20    HAVE HEARD ALL OF THE EVIDENCE AND BEGUN TO DISCUSS IT WITH

02:19PM  21    YOUR FELLOW JURORS.

02:19PM  22       IS THERE ANYONE HERE WHO, WHO FINDS IT DIFFICULT TO WAIT

02:19PM  23    TO MAKE A DECISION?  ANYONE HERE FOR WHOM THAT MIGHT BE A

02:19PM  24    DIFFICULTY?

02:19PM  25       I DON'T SEE ANY HANDS RAISING IN RESPONSE TO THAT.

| | | |
|---|---|---|
| 02:19PM | 1 | IS THERE ANYONE WHO PREFERS TO WAIT UNTIL THEY HEAR ALL OF |
| 02:20PM | 2 | THE INFORMATION BEFORE MAKING ANY DECISION, A BASIC DECISION IN |
| 02:20PM | 3 | LIFE, WHETHER THEY'LL BUY A CAR, WHETHER THEY'LL BUY A HOME, |
| 02:20PM | 4 | WHERE THEY MIGHT SEND THEIR CHILD TO SCHOOL?  ANYBODY HERE WHO |
| 02:20PM | 5 | PREFERS TO HAVE ALL OF THE INFORMATION? |
| 02:20PM | 6 | ANYONE HERE WHO FEELS THAT THEY'RE IMPATIENT AND THEY |
| 02:20PM | 7 | DON'T WANT TO WAIT FOR ALL OF THE INFORMATION? |
| 02:20PM | 8 | I SEE NO HANDS IN RESPONSE TO THAT. |
| 02:20PM | 9 | OKAY.  THANK YOU, LADIES AND GENTLEMEN. |
| 02:20PM | 10 | MAY I START WITH YOU, SIR, WHO RAISED YOUR HAND IN |
| 02:20PM | 11 | RESPONSE TO THAT QUESTION. |
| 02:20PM | 12 | WHAT IS YOUR JUROR NUMBER? |
| 02:20PM | 13 | PROSPECTIVE JUROR:  64. |
| 02:20PM | 14 | THE COURT:  MR. NIZENKOFF. |
| 02:20PM | 15 | MR. DOWNEY:  YEAH.  CAN YOU TELL ME, IN CONNECTION |
| 02:20PM | 16 | WITH YOUR DECISION MAKING PROCESS, ARE YOU CONFIDENT THAT |
| 02:20PM | 17 | YOU'LL BE ABLE TO WAIT AND HEAR ALL OF THE EVIDENCE BEFORE YOU |
| 02:20PM | 18 | MAKE A DECISION? |
| 02:20PM | 19 | PROSPECTIVE JUROR:  YES, MOST DEFINITELY. |
| 02:20PM | 20 | MR. DOWNEY:  OKAY. |
| 02:20PM | 21 | IS THERE ANYBODY HERE WHO FEELS THAT THEY WON'T BE ABLE TO |
| 02:20PM | 22 | DO THAT? |
| 02:21PM | 23 | OKAY.  THANK YOU. |
| 02:21PM | 24 | I'D LIKE TO ASK SOME OF YOU QUESTIONS INDIVIDUALLY, AND |
| 02:21PM | 25 | I'LL MENTION YOUR JUROR NUMBER. |

02:21PM 1        I DON'T HAVE QUESTIONS FOR EACH OF YOU.  THAT DOESN'T

02:21PM 2    REFLECT ONE WAY OR THE OTHER ON ANY PARTICULAR JUROR.

02:21PM 3        LET ME ASK JUROR NUMBER 1, WHO I DON'T THINK WE'VE HEARD

02:21PM 4    FROM THIS MORNING.

02:21PM 5        IS IT MR. SOMADUNDARAM?  SIR, YOU FILLED OUT A

02:21PM 6    QUESTIONNAIRE A FEW WEEKS AGO, AND I THINK IN THAT

02:21PM 7    QUESTIONNAIRE YOU INDICATED THAT YOU HAD HAD SOME EXPOSURE TO

02:21PM 8    MEDIA ABOUT THIS CASE.

02:21PM 9        CAN YOU TELL US WHAT THAT EXPOSURE HAS BEEN?

02:21PM 10           PROSPECTIVE JUROR:  JUST --

02:21PM 11           THE COURT:  WE'RE GOING TO GIVE YOU A MICROPHONE,

02:21PM 12   SIR.  I'M SORRY.

02:21PM 13           PROSPECTIVE JUROR:  JUST THE TYPICAL CONSUMPTION OF

02:21PM 14   MEDIA, "ECONOMIST," "BLOOMBERG," "BUSINESS WEEK," THE TYPICAL

02:22PM 15   "60 MINUTES" SHOW, ALL OF THE CONTENT THAT WAS THERE THAT CAME

02:22PM 16   OUT ABOUT THIS.

02:22PM 17           MR. DOWNEY:  SO YOU FEEL THAT THE CONTENT THAT HAS

02:22PM 18   BEEN IN THE PUBLIC ABOUT THIS YOU HAVE READ.  IS THAT BECAUSE

02:22PM 19   YOU HAVE A PARTICULAR INTEREST IN THE CASE?

02:22PM 20           PROSPECTIVE JUROR:  JUST FOLLOWING THE NEWS IN

02:22PM 21   GENERAL AND CURRENT AFFAIRS.

02:22PM 22           MR. DOWNEY:  AND I UNDERSTAND THAT YOUR WIFE IS A

02:22PM 23   CARDIOLOGIST; IS THAT RIGHT?

02:22PM 24           PROSPECTIVE JUROR:  THAT'S RIGHT.

02:22PM 25           MR. DOWNEY:  IS SHE INTERESTED IN THE SUBJECT MATTER

02:22PM   1    OF THIS CASE?

02:22PM   2              PROSPECTIVE JUROR:  SHE'S A CARDIOLOGIST AT STANFORD

02:22PM   3    SO SHE HAS EXPOSURE TO IT, BUT NOT PARTICULARLY RELEVANT TO

02:22PM   4    THIS CASE.

02:22PM   5              MR. DOWNEY:  AS I UNDERSTAND IT, YOU WERE FOLLOWING

02:22PM   6    THE CASE AT LEAST AS IT WAS DEVELOPING IN THE MEDIA; IS THAT

02:22PM   7    RIGHT?

02:22PM   8              PROSPECTIVE JUROR:  YES.

02:22PM   9              MR. DOWNEY:  AND BASED ON YOUR VIEW OF THE MEDIA AS

02:22PM  10    THE STORY WAS DEVELOPING, DID YOU HAVE A VIEW OR OPINION ABOUT

02:22PM  11    MS. HOLMES?

02:22PM  12              PROSPECTIVE JUROR:  NOT IN PARTICULAR BECAUSE

02:22PM  13    THERE'S ALWAYS TWO SIDES TO A STORY AND YOU ONLY HEAR SOMETHING

02:23PM  14    IN A SLANTED CONTEXT DEPENDING ON WHO IS WRITING IT, SO YOU

02:23PM  15    TEND TO WAIT IN THE CONTEXT OF WHAT YOU'RE READING.  IT DIDN'T

02:23PM  16    INFORM ME ONE WAY OR ANOTHER OVER A LONG PERIOD OF TIME.

02:23PM  17              MR. DOWNEY:  WHEN YOU FILLED OUT THE QUESTIONNAIRE,

02:23PM  18    YOU ANSWERED ONE OF THE QUESTIONS WHICH ASKED YOU WHETHER OR

02:23PM  19    NOT YOU HAD A QUESTION IN YOUR MIND AS TO WHETHER YOU COULD BE

02:23PM  20    FAIR, OBJECTIVE, AND IMPARTIAL.

02:23PM  21         AND YOU RESPONDED THAT YOU HAD FOLLOWED THE CASE

02:23PM  22    EXTENSIVELY BECAUSE OF YOUR CURIOSITY AND THAT THAT RAISED A

02:23PM  23    QUESTION IN YOUR MIND.

02:23PM  24         I THINK WHEN YOU WROTE THAT, THAT WAS AN ACCURATE ANSWER.

02:23PM  25              PROSPECTIVE JUROR:  UH-HUH.

| | | |
|---|---|---|
| 02:23PM | 1 | MR. DOWNEY: CAN YOU TELL ME WHAT IT WAS THAT YOU |
| 02:23PM | 2 | HAD READ OR HEARD THAT MADE YOU QUESTION A LITTLE BIT YOUR |
| 02:23PM | 3 | ABILITY PERHAPS TO BE FAIR AND IMPARTIAL? |
| 02:23PM | 4 | PROSPECTIVE JUROR: IT'S THE -- IN THE CONTEXT OF |
| 02:24PM | 5 | SILICON VALLEY AND HOW FIRMS BUILD UP AND, LIKE, MASSIVE |
| 02:24PM | 6 | COMPANIES AND THEN THEY BURN OUT, IT'S JUST -- I'M JUST |
| 02:24PM | 7 | SKEPTICAL ABOUT THE PROCESS OF HOW IT HAPPENED AND WHY CERTAIN |
| 02:24PM | 8 | CASES COME TO COURT AND WHY A LOT OF OTHERS WITH A SIMILAR KIND |
| 02:24PM | 9 | OF SITUATION EXISTS IT DOESN'T QUITE HAPPEN THAT WAY. |
| 02:24PM | 10 | MR. DOWNEY: LET ME SEE IF I UNDERSTAND WHAT YOU'RE |
| 02:24PM | 11 | SAYING. ARE YOU SKEPTICAL ABOUT THE COMPANIES WHO HAVE |
| 02:24PM | 12 | INITIALLY THAT KIND OF SUCCESS? IS THAT WHAT YOU'RE SAYING? |
| 02:24PM | 13 | PROSPECTIVE JUROR: YES. |
| 02:24PM | 14 | MR. DOWNEY: AND DO YOU ASSOCIATE THAT VIEW |
| 02:24PM | 15 | SPECIFICALLY WITH THERANOS AS WELL? |
| 02:24PM | 16 | PROSPECTIVE JUROR: BASED ON THE READING AT THE |
| 02:24PM | 17 | TIME, IT SOUNDED THAT WAY. |
| 02:24PM | 18 | MR. DOWNEY: OKAY. AND DO YOU THINK THAT THAT MIGHT |
| 02:24PM | 19 | BE A VIEW THAT YOU WOULD BE CARRYING INTO THIS CASE IF YOU |
| 02:24PM | 20 | BEGAN TO SIT AS A JUROR IN THE CASE? |
| 02:24PM | 21 | PROSPECTIVE JUROR: I HOPE NOT, AND I WOULD NOT WANT |
| 02:24PM | 22 | MYSELF TO BE THAT WAY, BUT, YES. |
| 02:24PM | 23 | MR. DOWNEY: WELL, CAN YOU ASSURE US THAT THAT IS |
| 02:24PM | 24 | SOMETHING THAT YOU WOULD NOT CARRY? |
| 02:24PM | 25 | PROSPECTIVE JUROR: YES. |

02:25PM   1           MR. DOWNEY:  AND WOULD THIS BE A SITUATION WHERE YOU

02:25PM   2   WOULD BE IN A POSITION NOT TO DISCUSS YOUR SERVICE ON THE JURY

02:25PM   3   WITH YOUR WIFE?

02:25PM   4           PROSPECTIVE JUROR:  THAT'S CORRECT.

02:25PM   5           MR. DOWNEY:  AT ANY TIME DURING YOUR READING OF

02:25PM   6   BOOKS AND NEWSPAPER ARTICLES OR WATCHING DOCUMENTARIES, HAVE

02:25PM   7   YOU EVER HAD ANY OPINION ABOUT MS. HOLMES OTHER THAN THE ONE

02:25PM   8   YOU MENTIONED ABOUT BEING SKEPTICAL OF THE COMPANY?

02:25PM   9           PROSPECTIVE JUROR:  NOT IN PARTICULAR.

02:25PM   10          MR. DOWNEY:  IS THERE ANY VIEW THAT YOU HAVE ABOUT

02:25PM   11  ANY OTHER PERSON AT THERANOS AS A RESULT OF ALL OF THE

02:25PM   12  LITERATURE THAT YOU'VE READ IN THE MEDIA AND SO FORTH?

02:25PM   13          PROSPECTIVE JUROR:  NO.

02:25PM   14          MR. DOWNEY:  YOU NOTED IN THE QUESTIONNAIRE THAT YOU

02:25PM   15  HAVE A COUPLE OF VACATIONS.  IS THAT SOMETHING THAT YOU WOULD

02:25PM   16  BE ABLE TO ADJUST?  THEY WOULD OCCUR IN THE FIRST WEEK OF

02:25PM   17  SEPTEMBER OR THE SECOND WEEK?

02:25PM   18          PROSPECTIVE JUROR:  SECOND WEEK.

02:25PM   19          MR. DOWNEY:  IS THAT STILL SCHEDULED?

02:26PM   20          PROSPECTIVE JUROR:  I WOULD WAIT AND FIGURE OUT

02:26PM   21  TODAY IF I NEED TO CANCEL OR NOT.

02:26PM   22          MR. DOWNEY:  BUT YOU WOULD CANCEL BOTH OF THOSE

02:26PM   23  VACATIONS?

02:26PM   24          PROSPECTIVE JUROR:  I WOULD HAVE TO.

02:26PM   25          MR. DOWNEY:  WOULD HAVING TO DO ANY OF THAT IMPACT

02:26PM  1    ANY ABILITY TO FOCUS HERE OR ANY ATTITUDE YOU WOULD HAVE

02:26PM  2    TOWARDS THE CASE?

02:26PM  3         PROSPECTIVE JUROR:  MY WIFE HAS BEEN ON CALL AND SHE

02:26PM  4    HAS NOT HAD A BREAK IN LITERALLY 16 MONTHS AT THIS POINT OR SO

02:26PM  5    BECAUSE OF A LOT OF THE COVID CASES AND SO THIS WAS HER FIRST

02:26PM  6    BREAK, AND SO WE WERE WORKING ON GETTING AWAY, AND NOW WE WOULD

02:26PM  7    NOT BE ABLE TO.

02:26PM  8         MR. DOWNEY:  SHE'S A PHYSICIAN IN THE HOSPITAL; IS

02:26PM  9    THAT RIGHT?

02:26PM  10        PROSPECTIVE JUROR:  YES.

02:26PM  11        MR. DOWNEY:  IN FACT, SHE'S ON CALL CERTAIN NIGHTS

02:26PM  12    AND SO FORTH?

02:26PM  13        PROSPECTIVE JUROR:  YEAH, BECAUSE OF THE COVID

02:26PM  14    PROCESS.

02:26PM  15        MR. DOWNEY:  OKAY.  WOULD YOU BE ASKING THE COURT TO

02:26PM  16    BE EXCUSED ON THAT BASIS?

02:26PM  17        PROSPECTIVE JUROR:  IF IT'S POSSIBLE, YES.

02:26PM  18        MR. DOWNEY:  OKAY.  IS THERE AN OPINION ABOUT

02:26PM  19    THERANOS OR THE CASE THAT YOU'VE EXPRESSED TO ANYONE OTHER THAN

02:26PM  20    YOUR WIFE?  HAVE YOU EVER HAD CONVERSATIONS WITH PEOPLE ABOUT

02:26PM  21    THERANOS OR ABOUT MS. HOLMES?

02:26PM  22        PROSPECTIVE JUROR:  IN CASUAL CONVERSATIONS ABOUT

02:27PM  23    INVESTMENTS AND RAPID GROWTH COMPANIES WITH FRIENDS, BUT

02:27PM  24    NOTHING IN THE RECENT PAST.

02:27PM  25        MR. DOWNEY:  AND WHAT OPINIONS HAVE YOU EXPRESSED IN

| | | |
|---|---|---|
| 02:27PM | 1 | THOSE CONVERSATIONS? |
| 02:27PM | 2 | PROSPECTIVE JUROR:  JUST HOW DRAMATIC SOME COMPANIES |
| 02:27PM | 3 | GROW AND HOW BIG VALUATIONS GET, AND THEN HOW SUDDENLY THEY |
| 02:27PM | 4 | DON'T EXIST ANYMORE. |
| 02:27PM | 5 | MR. DOWNEY:  OKAY.  AND YOU'VE EXPRESSED SOME VIEWS |
| 02:27PM | 6 | AS TO -- YOU'VE QUESTIONED WHY THAT HAPPENS; IS THAT RIGHT? |
| 02:27PM | 7 | PROSPECTIVE JUROR:  YES. |
| 02:27PM | 8 | MR. DOWNEY:  AND SO YOU HAVE A NEGATIVE VIEW OF |
| 02:27PM | 9 | THOSE COMPANIES? |
| 02:27PM | 10 | PROSPECTIVE JUROR:  JUST THE REALITY OF WHAT IT IS. |
| 02:27PM | 11 | MR. DOWNEY:  I'M SORRY, SIR? |
| 02:27PM | 12 | PROSPECTIVE JUROR:  JUST THE REALITY OF HOW IT PLAYS |
| 02:27PM | 13 | OUT. |
| 02:27PM | 14 | MR. DOWNEY:  EXPLAIN THAT TO US. |
| 02:27PM | 15 | PROSPECTIVE JUROR:  A LOT OF EFFORT GOES INTO MAKING |
| 02:27PM | 16 | A COMPANY SUCCESSFUL, AND WHEN THEY HAVE THE SUDDEN RISE AND |
| 02:27PM | 17 | IT -- IF IT'S SUBSTANTIATED IN TERMS OF WHAT IT HAPPENS.  IF IT |
| 02:27PM | 18 | ISN'T, THAT'S GREAT, BUT IN A LOT OF CASES IF IT ISN'T, IT JUST |
| 02:27PM | 19 | HURTS A LOT OF PEOPLE IN THE PROCESS. |
| 02:27PM | 20 | MR. DOWNEY:  OKAY.  THANK YOU, SIR. |
| 02:28PM | 21 | ANYTHING ELSE THAT YOU THINK WOULD AFFECT YOUR JURY |
| 02:28PM | 22 | SERVICE HERE? |
| 02:28PM | 23 | PROSPECTIVE JUROR:  NO. |
| 02:28PM | 24 | MR. DOWNEY:  OKAY.  THANK YOU, SIR. |
| 02:28PM | 25 | I'D LIKE TO TALK TO MS. GRAY FOR A MOMENT IN CONNECTION |

02:28PM  1    WITH THE CASE.

02:28PM  2            PROSPECTIVE JUROR:  YES.

02:28PM  3            MR. DOWNEY:  I THINK YOU LISTENED TO ONE PODCAST IN

02:28PM  4    CONNECTION WITH THE CASE?

02:28PM  5            PROSPECTIVE JUROR:  YEAH.  WHENEVER WE CAR TRAVEL,

02:28PM  6    MY HUSBAND JUST PICKS OUT A PODCAST BASED ON SOMETHING THAT IS

02:28PM  7    POPULAR OUT THERE AND HE PICKS THE PLAY LIST, AND THAT'S WHY I

02:28PM  8    COULDN'T TELL YOU WHICH ONE, BUT WE DID ALSO LISTEN TO THE

02:28PM  9    ENTIRE PODCAST.

02:28PM  10           MR. DOWNEY:  SO THAT WAS AN AUDIO PODCAST THAT YOU

02:28PM  11   LISTENED TO?

02:28PM  12           PROSPECTIVE JUROR:  EXACTLY.

02:28PM  13           MR. DOWNEY:  AND WITHOUT GETTING INTO THE DETAILS OF

02:28PM  14   WHAT THE PODCAST WAS ABOUT, WOULD YOU SAY THE PODCAST HAD A

02:28PM  15   POSITIVE OR NEGATIVE VIEW OF MS. HOLMES?

02:28PM  16           PROSPECTIVE JUROR:  NEGATIVE.

02:28PM  17           MR. DOWNEY:  OKAY.  AND WHAT WAS YOUR VIEW OF

02:28PM  18   MS. HOLMES AT THE TIME THAT YOU FINISHED LISTENING TO THAT

02:28PM  19   PODCAST.

02:28PM  20           PROSPECTIVE JUROR:  I DON'T KNOW IF IT WAS HER

02:28PM  21   PERSONALLY OR THE COMPANY IN GENERAL, JUST, LIKE, IT WASN'T

02:29PM  22   GOING TO MAKE IT.  I ONLY -- I DON'T REMEMBER THE WHOLE

02:29PM  23   PODCAST.  I DEFINITELY REMEMBER A PERSON SPEAKING AT THE VERY

02:29PM  24   BEGINNING ABOUT HAVING MET HER AND SHE DID NOT SPEAK WELL OF

02:29PM  25   HER, AND I DO REMEMBER THAT.

02:29PM 1          MR. DOWNEY:  AND WHO WAS THAT THAT SPOKE TO YOU

02:29PM 2    ABOUT THAT?

02:29PM 3          PROSPECTIVE JUROR:  IT WAS ON THE PODCAST, A WOMAN

02:29PM 4    WHO HAS INTERVIEWED AND WHO TALKED ABOUT MEETING MS. HOLMES.

02:29PM 5          MR. DOWNEY:  AND THAT STUCK WITH YOU?

02:29PM 6          PROSPECTIVE JUROR:  UH-HUH.  OH, YES.

02:29PM 7          MR. DOWNEY:  AND SO AFTER YOU HAD LISTENED TO THE

02:29PM 8    PODCAST AND THOUGHT ABOUT IT, DID YOU CARRY A NEGATIVE VIEW

02:29PM 9    ABOUT THE COMPANY?

02:29PM 10         PROSPECTIVE JUROR:  IT WAS ENTERTAINMENT FOR CAR

02:29PM 11   TRAVEL.  IT NEVER REALLY CAME UP AGAIN UNTIL I CAME AND APPLIED

02:29PM 12   FOR JURY DUTY.  IT WASN'T ON MY MIND.

02:29PM 13         MR. DOWNEY:  AND YOU WORK ALSO, YOU WORK IN THE

02:29PM 14   LABOR AND DELIVERY?

02:29PM 15         PROSPECTIVE JUROR:  YEAH, I ALSO WORK AT THE

02:29PM 16   HOSPITAL.  I'M AN R.N.

02:29PM 17         MR. DOWNEY:  OKAY.  GOOD.  SOME OF MY BEST FRIENDS

02:29PM 18   WORK THERE.

02:29PM 19      I'M JUST KIDDING.

02:29PM 20         PROSPECTIVE JUROR:  WELL, I HOPE YOU'RE NOT KIDDING.

02:29PM 21         MR. DOWNEY:  HAS -- HAS THE THERANOS SITUATION BEEN

02:30PM 22   A SUBJECT OF DISCUSSION THERE?

02:30PM 23         PROSPECTIVE JUROR:  NO.  I WORK AT KAISER.  WE DON'T

02:30PM 24   WORK WITH ANYTHING NOT EVEN REMOTELY CLOSE TO THE AREA THOUGH.

02:30PM 25         MR. DOWNEY:  THANK YOU.

02:30PM  1          PROSPECTIVE JUROR:  I HAVE VACATION ALSO THAT WAS

02:30PM  2     LISTED ON THE THING.

02:30PM  3          MR. DOWNEY:  OH, I'M SORRY.

02:30PM  4          PROSPECTIVE JUROR:  THAT'S OKAY.  I DO WANT TO -- MY

02:30PM  5     MOM SURVIVED COVID AND I AM HOPING TO GO VISIT MY MOTHER, AND

02:30PM  6     MY SON GOT MARRIED LAST DECEMBER AND I HAVEN'T SEEN HIM SINCE

02:30PM  7     THEN, AND THOSE ARE THE TWO TRIPS THAT I PLANNED.

02:30PM  8          MR. DOWNEY:  AND THOSE WERE ALREADY PLANNED WITH I

02:30PM  9     THINK PARTICULAR DATES, RIGHT?

02:30PM  10          PROSPECTIVE JUROR:  THEY ARE.  AND I DIDN'T KNOW

02:30PM  11     THEY WERE GOING TO GO THROUGH.  I HAVE PLANS IN NOVEMBER.

02:30PM  12     COVID HAS BEEN AWFUL, AND I FINALLY HAVE SOME VACATION PLANNED.

02:30PM  13          BUT I UNDERSTAND IF I HAVE TO CANCEL.  NOTHING IS URGENT,

02:30PM  14     I GUESS.

02:30PM  15          MR. DOWNEY:  I'D LIKE TO ASK A QUESTION NEXT OF

02:30PM  16     MS. NGUYEN, JUROR 24.

02:31PM  17          PROSPECTIVE JUROR:  YES.

02:31PM  18          MR. DOWNEY:  I NOTICED IN FILLING OUT THE

02:31PM  19     QUESTIONNAIRE YOU CHECKED A PARTICULAR BOX.  I THINK YOU MIGHT

02:31PM  20     HAVE CHECKED IT IN ERROR, BUT I JUST WANT TO MAKE SURE THAT

02:31PM  21     THAT IS THE CASE.

02:31PM  22          THERE WAS A QUESTION THAT ASKED, IF THERE WAS ANYTHING

02:31PM  23     THAT CREATED A QUESTION IN YOUR MIND AS TO WHETHER YOU COULD BE

02:31PM  24     FAIR OR IMPARTIAL IN CONNECTION WITH THE CASE.

02:31PM  25          YOU CHECKED "YES," WHICH WOULD INDICATE THAT THERE WAS

| | | |
|---|---|---|
| 02:31PM | 1 | SOME QUESTION. |
| 02:31PM | 2 | IS THERE SOMETHING IN YOUR HEAD THAT MAKES YOU THINK THAT |
| 02:31PM | 3 | IT MIGHT NOT BE AN APPROPRIATE CASE FOR YOU? |
| 02:31PM | 4 | PROSPECTIVE JUROR:  I KNOW NOTHING ABOUT IT I GUESS. |
| 02:31PM | 5 | I THINK I WOULD BE FAIR. |
| 02:31PM | 6 | BUT, YOU KNOW, IN THERE I ALSO SAY THAT MY ENGLISH, MAYBE |
| 02:31PM | 7 | SOME WORDS I NOT UNDERSTAND.  SO WHEN I GUESS I MAYBE MAKE A |
| 02:31PM | 8 | MISTAKE, BUT I'M SURE I BE FAIR FOR EVERYTHING. |
| 02:31PM | 9 | MR. DOWNEY:  OKAY.  WHEN THE DISCUSSION HAS BEEN |
| 02:31PM | 10 | HAPPENING TODAY, HAVE YOU HAD ANY DIFFICULTY FOLLOWING IT, |
| 02:32PM | 11 | PARTICULARLY WITH THE MASKS? |
| 02:32PM | 12 | PROSPECTIVE JUROR:  I UNDERSTAND.  YES. |
| 02:32PM | 13 | MR. DOWNEY:  OKAY.  SO YOU WERE ABLE TO UNDERSTAND? |
| 02:32PM | 14 | PROSPECTIVE JUROR:  YES. |
| 02:32PM | 15 | MR. DOWNEY:  OKAY.  WAS THERE ANYTHING IN FILLING |
| 02:32PM | 16 | OUT THE QUESTIONNAIRE THAT YOU WEREN'T ABLE TO UNDERSTAND? |
| 02:32PM | 17 | PROSPECTIVE JUROR:  LIKE MAYBE A COUPLE OF WORDS I |
| 02:32PM | 18 | CAN'T UNDERSTAND.  BUT I LOOK ON MY PHONE AND TRANSLATE TO GET |
| 02:32PM | 19 | TO THE MEANING OF THE WORD SOMETIMES. |
| 02:32PM | 20 | MR. DOWNEY:  OKAY.  THANK YOU, MA'AM. |
| 02:32PM | 21 | OTHER THAN THAT, YOU THINK YOU COULD BE FAIR AND |
| 02:32PM | 22 | UNBIASSED? |
| 02:32PM | 23 | PROSPECTIVE JUROR:  YES. |
| 02:32PM | 24 | MR. DOWNEY:  OKAY.  THANK YOU, MA'AM. |
| 02:32PM | 25 | MR. RAO, I DON'T WANT TO TALK TO YOU AGAIN ABOUT THE |

02:32PM 1    MEDIA, BUT I DID WANT TO ASK YOU A QUESTION ABOUT THE QUESTION

02:32PM 2    YOU ANSWERED ON THE QUESTIONNAIRE.  AND YOU'RE NOT LOOKING AT

02:32PM 3    IT, BUT I AM.  IT WAS QUESTION 58, WHICH SAID THAT IN A

02:33PM 4    CRIMINAL PROSECUTION, THE GOVERNMENT HAS THE BURDEN OF PROVING

02:33PM 5    GUILT BEYOND A REASONABLE DOUBT.

02:33PM 6         THE DEFENDANT IS PRESUMED INNOCENT AND HAS NO BURDEN TO

02:33PM 7    PRESENT ANY EVIDENCE.

02:33PM 8         DO YOU BELIEVE A DEFENDANT HAS AN OBLIGATION TO PROVE HIS

02:33PM 9    INNOCENCE OR HER INNOCENCE OR PRODUCE ANY EVIDENCE IN ORDER TO

02:33PM 10   BE FOUND NOT GUILTY, AND YOU CHECKED "YES" IN CONNECTION WITH

02:33PM 11   THAT QUESTION, WHICH SEVERAL OTHER JURORS DID AS WELL.

02:33PM 12        I'M JUST WONDERING WHAT YOU MEANT WHEN YOU CHECKED "YES"

02:33PM 13   IN RESPONSE TO THAT QUESTION?

02:33PM 14            PROSPECTIVE JUROR:  WELL, I DIDN'T UNDERSTAND THE

02:33PM 15   QUESTION COMPLETELY.  BUT IN MY MIND, WHAT WAS GOING THROUGH MY

02:33PM 16   MIND AT THE TIME IS THAT THE DEFENDANT SHOULD BE ABLE TO

02:33PM 17   PRODUCE EVIDENCE OR SOME PROOF SAYING -- I MEAN, TO NEGATE THE

02:33PM 18   ALLEGATIONS FROM THE OTHER PARTY.

02:33PM 19        SO MAYBE THAT'S WHAT I WAS ANSWERING TO.

02:33PM 20            MR. DOWNEY:  AND IS THAT SOMETHING THAT YOU FEEL?

02:33PM 21            PROSPECTIVE JUROR:  YES.

02:33PM 22            MR. DOWNEY:  ALL RIGHT.  THANK YOU, SIR.

02:33PM 23            THE COURT:  PARDON ME, MR. DOWNEY.

02:33PM 24        MR. RAO, SO I UNDERSTAND WHAT YOU JUST SAID, DO YOU MEAN

02:34PM 25   THAT YOU BELIEVE THE DEFENDANT SHOULD HAVE THE OPPORTUNITY TO

02:34PM  1      PRESENT EVIDENCE?  IS THAT WHAT YOU MEANT?

02:34PM  2                PROSPECTIVE JUROR:  YES, OPPORTUNITY.

02:34PM  3          AND ALSO THEY SHOULD BE ABLE TO, EVEN WITHOUT ASKING, THEY

02:34PM  4      SHOULD BE ABLE TO PRODUCE THE EVIDENCE OR INFORMATION FROM THE

02:34PM  5      OTHER PARTY.

02:34PM  6                MR. DOWNEY:  AND WHEN YOU SAY THEY SHOULD BE ABLE

02:34PM  7      TO, YOU MEAN THEY SHOULD DO SO, TO REBUT THE CHARGES?

02:34PM  8                PROSPECTIVE JUROR:  SHOULD AS IN LIKE LEGALLY?  NO.

02:34PM  9          BUT I GUESS -- I MEAN, WHAT I'M SAYING IS IF SOMEBODY SAYS

02:34PM 10      THAT YOU DID THIS, AND I SHOULD BE ABLE TO SAY, NO, I MEAN,

02:34PM 11      THIS IS MY EVIDENCE THAT I CAN PROVE YOU WRONG.

02:34PM 12                MR. DOWNEY:  AND THAT IN YOUR MIND WOULD SHOW THAT

02:34PM 13      SOMEONE WAS INNOCENT, FOR EXAMPLE?

02:34PM 14                PROSPECTIVE JUROR:  I MEAN, THE DOCUMENTATION OR

02:34PM 15      WHATEVER EVIDENCE IS PRESENTED, PROOF, YES.

02:34PM 16                THE COURT:  SO, MR. RAO -- PARDON ME, MR. DOWNEY.

02:34PM 17          SO, MR. RAO, WHAT YOU'RE SAYING IS THAT YOU BELIEVE THAT

02:35PM 18      THE DEFENSE SHOULD HAVE THE OPPORTUNITY, IF THEY WISH, TO PUT

02:35PM 19      EVIDENCE FORWARD?  IS THAT WHAT YOU'RE SAYING?

02:35PM 20                PROSPECTIVE JUROR:  YEAH.  NOW THAT I'M READING

02:35PM 21      THROUGH WHAT HE SAID EARLIER, THAT THE DEFENDANT IS INNOCENT

02:35PM 22      UNTIL PROVEN GUILTY, SO MAYBE I WAS NOT CLEAR ON WHAT THAT

02:35PM 23      QUESTION WAS.

02:35PM 24                THE COURT:  I SEE.

02:35PM 25                PROSPECTIVE JUROR:  IT WAS MORE LIKE SAYING THE

02:35PM  1      DEFENDANT SHOULD HAVE THE CAPACITY OR THE ABILITY TO PROVIDE

02:35PM  2      THE EVIDENCE --

02:35PM  3              THE COURT:  RIGHT.  I SEE.

02:35PM  4              PROSPECTIVE JUROR:  -- REQUIRED.

02:35PM  5              THE COURT:  AS OPPOSED TO THE OBLIGATION TO PROVE

02:35PM  6      THEIR INNOCENCE.

02:35PM  7              PROSPECTIVE JUROR:  YES, RIGHT.  MAYBE I MISREAD THE

02:35PM  8      QUESTION.

02:35PM  9              THE COURT:  I SEE.  SO YOU REMEMBER ME TALKING ABOUT

02:35PM  10     THE PRESUMPTION OF INNOCENCE?

02:35PM  11             PROSPECTIVE JUROR:  YES.

02:35PM  12             THE COURT:  AND DO YOU HAVE ANY PROBLEM WITH THAT

02:35PM  13     CONCEPT?

02:35PM  14             PROSPECTIVE JUROR:  NO.  THANK YOU FOR CLARIFYING

02:35PM  15     THAT.  I HAVE NO PROBLEM WITH THAT.

02:35PM  16             THE COURT:  THANK YOU FOR THAT, SIR.  SORRY.

02:35PM  17          THANK YOU, MR. DOWNEY.

02:35PM  18             MR. DOWNEY:  MR. WITHERSPOON, I KNOW WE'VE SPOKEN TO

02:35PM  19     YOU SEVERAL TIMES TODAY.  I JUST WANTED TO ASK YOU ABOUT SOME

02:35PM  20     OF THE HARDSHIP ISSUES RELATED TO YOUR QUESTIONNAIRE AND

02:36PM  21     RESPONSE.

02:36PM  22             PROSPECTIVE JUROR:  SURE.

02:36PM  23             MR. DOWNEY:  AS I UNDERSTAND IT, YOU MENTIONED A FEW

02:36PM  24     MOMENTS AGO THAT YOU HAVE A SUBPOENA TO APPEAR AS A WITNESS.

02:36PM  25             PROSPECTIVE JUROR:  YES, SIR.

02:36PM 1          MR. DOWNEY:  IS THAT AN APPEARANCE THAT YOU'LL BE

02:36PM 2    ABLE TO MAKE THAT DOES NOT CONFLICT WITH OUR TRIAL SCHEDULE AS

02:36PM 3    DESCRIBED BY JUDGE DAVILA?

02:36PM 4          PROSPECTIVE JUROR:  I'VE BEEN TOLD THAT I'VE BEEN

02:36PM 5    GRANTED A VIDEO CONFERENCE SO WE WON'T HAVE TO ATTEND IN PERSON

02:36PM 6    THANKFULLY.

02:36PM 7          MR. DOWNEY:  OKAY.  SO YOU'LL BE ABLE TO SERVE ON

02:36PM 8    THE JURY IF YOU'RE CHOSEN?

02:36PM 9          PROSPECTIVE JUROR:  I BELIEVE SO.

02:36PM 10          MR. DOWNEY:  YOU ALSO MENTION THAT YOUR WIFE AND

02:36PM 11   YOUR SON HAVE SOME AUTOIMMUNE ISSUES.

02:36PM 12          PROSPECTIVE JUROR:  I DON'T THINK THEY HAVE ANYTHING

02:36PM 13   THAT COULD BE REALLY PROVED OUT TO BE AUTOIMMUNE, BUT WE TRY TO

02:36PM 14   BE REALLY CAREFUL.  HE HAS SOME -- HE HAS SOME DEVELOPMENTAL

02:36PM 15   ISSUES AND WE TRY TO BE PRETTY CAREFUL ABOUT THAT.

02:36PM 16          MR. DOWNEY:  OKAY.  HAVING HEARD WHAT OUR PROCEDURES

02:36PM 17   WILL BE DURING THIS TRIAL, WOULD YOU BE COMFORTABLE IF YOU WERE

02:36PM 18   CHOSEN AS A JUROR SERVING?

02:36PM 19          PROSPECTIVE JUROR:  I THINK SO, YES.

02:37PM 20          MR. DOWNEY:  OKAY.  OKAY.

02:37PM 21      MS. HERNANDEZ, I WANTED TO ASK YOU BASICALLY THE SAME

02:37PM 22   QUESTION THAT I ASKED MR. RAO.

02:37PM 23      IN RESPONSE TO THE QUESTION ABOUT WHETHER OR NOT YOU

02:37PM 24   BELIEVE THE DEFENDANT HAS AN OBLIGATION TO PRESENT EVIDENCE,

02:37PM 25   YOU CHECKED "YES," AND THEN YOU SAID, ANYONE CAN SAY THAT

02:37PM   1    THEY'RE INNOCENT, BUT THAT'S WHY EVIDENCE IS VITAL.

02:37PM   2        DOES THAT -- TELL ME ABOUT THAT.  WHAT DID YOU MEAN WHEN

02:37PM   3    YOU WROTE THAT?

02:37PM   4            PROSPECTIVE JUROR:  I JUST SIMPLY MEANT THAT A

02:37PM   5    DECISION CAN'T BE MADE WITHOUT EVIDENCE.  SO WHOEVER IS

02:37PM   6    PROVIDING IT, IT NEEDS TO BE VALID.  OTHERWISE A DETERMINATION

02:37PM   7    CAN'T BE MADE.

02:37PM   8            MR. DOWNEY:  OKAY.  AND WOULD YOU EXPECT THE

02:37PM   9    DEFENDANT TO PRESENT EVIDENCE IN THIS CASE?

02:38PM  10            PROSPECTIVE JUROR:  NO.

02:38PM  11            MR. DOWNEY:  OKAY.  SO YOU'D BE ABLE TO JUDGE FAIRLY

02:38PM  12    IN THIS SITUATION IF MS. HOLMES DID NOT PRESENT ANY EVIDENCE AS

02:38PM  13    PART OF A DEFENSE?

02:38PM  14            PROSPECTIVE JUROR:  YES.

02:38PM  15            MR. DOWNEY:  ALL RIGHT.  BEAR WITH ME ONE MOMENT.

02:38PM  16        (PAUSE IN PROCEEDINGS.)

02:38PM  17            MR. DOWNEY:  MR. WONG, JUROR NUMBER 46.  YOU

02:38PM  18    ANSWERED SOME QUESTIONS EARLIER FROM JUDGE DAVILA REGARDING THE

02:38PM  19    MEDIA YOU'D BE EXPOSED TO.

02:38PM  20        DO YOU REMEMBER THAT?

02:38PM  21            PROSPECTIVE JUROR:  YES.

02:38PM  22            MR. DOWNEY:  AND IN CONNECTION WITH THAT YOU

02:38PM  23    MENTIONED THAT YOU HAD HAD DISCUSSIONS WITH SOME OF YOUR

02:38PM  24    FRIENDS WHO HAD AN INTEREST IN THE CASE.

02:39PM  25        DO YOU RECALL THAT?

02:39PM  1          PROSPECTIVE JUROR:  NO.  WHAT I SAID WAS PRIOR TO

02:39PM  2    THIS WHOLE JURY THING, WHEN I WATCHED THE "60 MINUTES" SEGMENT,

02:39PM  3    AND THEN MY FRIENDS WERE ALL INTO THAT, AND THEY SAW THE MOVIE,

02:39PM  4    THE DOCUMENTARY, THEY READ THE BOOK AND WE TALKED ABOUT IT, BUT

02:39PM  5    THAT WAS WAY --

02:39PM  6          MR. DOWNEY:  EXCUSE ME.  THAT WAS WHAT I MEANT TO

02:39PM  7    SAY.  I DIDN'T MEAN IN CONNECTION WITH THIS PROCEEDING.

02:39PM  8        THEY WERE CURIOUS ABOUT THERANOS IS WHAT YOU WERE SAYING?

02:39PM  9          PROSPECTIVE JUROR:  WELL, NO.  WE WERE TALKING MORE

02:39PM 10    ON THE INVESTMENT SIDE.  WE WERE SAYING THAT A LOT OF PEOPLE

02:39PM 11    LOST MONEY, AND JUST FROM THAT, OH, YEAH, I HEARD ABOUT THAT.

02:39PM 12    AND SO THEY KNOW A LOT MORE ABOUT THAT.

02:39PM 13        BUT WE DID TALK ABOUT THAT.  BUT THAT WAS QUITE A FEW

02:39PM 14    YEARS AGO.

02:39PM 15          MR. DOWNEY:  OKAY.  DID THEY EXPRESS ANY OPINIONS

02:39PM 16    ABOUT THE CASE THAT YOU RECALL?

02:39PM 17          PROSPECTIVE JUROR:  NO, WE DON'T KNOW MUCH ABOUT THE

02:39PM 18    COMPANY.

02:39PM 19          MR. DOWNEY:  OKAY.  WHAT WAS YOUR OPINION WHEN YOU

02:40PM 20    HAD THOSE DISCUSSIONS?

02:40PM 21          PROSPECTIVE JUROR:  WELL, I'M JUST GLAD I DIDN'T

02:40PM 22    INVEST IN IT.  THAT WAS -- I DIDN'T, BUT NONE OF US WERE

02:40PM 23    ACTUALLY INVESTING IN THE COMPANY, SO --

02:40PM 24          MR. DOWNEY:  FAIR ENOUGH.  SO YOU DON'T HAVE ANY

02:40PM 25    OPINION AS YOU SIT HERE TODAY REGARDING MS. HOLMES; IS THAT

02:40PM 1      RIGHT?

02:40PM 2              PROSPECTIVE JUROR:  THAT'S CORRECT.

02:40PM 3              MR. DOWNEY:  OKAY.  LET ME ASK MR. BURGE ALSO WHO WE

02:40PM 4      HAVE TALKED TO BEFORE.

02:40PM 5          MR. BURGE, YOU HAD A DISCUSSION ALSO WITH JUDGE DAVILA

02:40PM 6      ABOUT THE MEDIA.

02:40PM 7          DO YOU REMEMBER THAT?

02:40PM 8              PROSPECTIVE JUROR:  YES, SIR.

02:40PM 9              MR. DOWNEY:  AND YOU TOLD US IN RESPONSE TO THE

02:40PM 10     QUESTIONNAIRE THAT YOU HAD COMMENTED ON MS. HOLMES ON SOCIAL

02:40PM 11     MEDIA.

02:40PM 12         DO YOU REMEMBER THAT?

02:41PM 13             PROSPECTIVE JUROR:  YES, SIR.

02:41PM 14             THE COURT:  AND DO YOU REMEMBER THE CONTENT OF THAT

02:41PM 15     COMMENT?

02:41PM 16             PROSPECTIVE JUROR:  YES, I DO.

02:41PM 17             MR. DOWNEY:  AND WOULD YOU AGREE WITH ME THAT THAT

02:41PM 18     WAS A NEGATIVE COMMENT?

02:41PM 19             PROSPECTIVE JUROR:  YES.

02:41PM 20             MR. DOWNEY:  WAS THAT AN OPINION THAT YOU HELD OF

02:41PM 21     MS. HOLMES AT THE TIME THAT YOU WROTE THE COMMENT?

02:41PM 22             PROSPECTIVE JUROR:  YES.

02:41PM 23             MR. DOWNEY:  OKAY.  AND WAS THAT AN OPINION OF

02:41PM 24     MS. HOLMES AT THE TIME THAT YOU FILLED OUT THE QUESTIONNAIRE?

02:41PM 25             PROSPECTIVE JUROR:  NO.  SORRY.  I FOLLOWED THE

02:41PM  1    COMPANY BECAUSE I WAS INTERESTED IN IT BECAUSE IT CORRELATED

02:41PM  2    WITH SOME OF THE CASES THAT I WAS WORKING ON, AND AT THE TIME

02:41PM  3    THAT THE NEGATIVITY CAME OUT, I WAS REALLY DISAPPOINTED BECAUSE

02:41PM  4    I THOUGHT THE COMPANY WAS SO COOL AND SO IT WAS MORE OF A

02:41PM  5    DISAPPOINTMENT.

02:41PM  6              MR. DOWNEY:  AND DO YOU REMEMBER WHAT FORUM YOU

02:41PM  7    COMMENTED ON THE COMPANY IN?

02:41PM  8              PROSPECTIVE JUROR:  I THINK IT WAS FACEBOOK.

02:41PM  9              MR. DOWNEY:  OKAY.  AND WAS IT SOME GROUP THAT

02:41PM  10   YOU'RE A MEMBER OF, OR WAS IT JUST --

02:41PM  11             PROSPECTIVE JUROR:  NO, JUST LIKE ALL OF MY FRIENDS.

02:41PM  12             MR. DOWNEY:  OKAY.  AND YOU FELT A CERTAIN SENSE OF

02:42PM  13   DISAPPOINTMENT; IS THAT RIGHT?

02:42PM  14             PROSPECTIVE JUROR:  YES, SIR.

02:42PM  15             MR. DOWNEY:  AND IS THAT A SENTIMENT THAT YOU STILL

02:42PM  16   HAVE?

02:42PM  17             PROSPECTIVE JUROR:  NOT NECESSARILY, NO.

02:42PM  18             MR. DOWNEY:  OKAY.  WHAT HAS CHANGED ABOUT THAT?

02:42PM  19             PROSPECTIVE JUROR:  WELL, I DON'T -- COMING HERE HAS

02:42PM  20   CHANGED, RIGHT?  BECAUSE YOU HAVE TO KNOW ALL OF THE FACTS

02:42PM  21   BEFORE YOU COULD MAKE A DECISION.

02:42PM  22       SO, I MEAN, BASING SOMETHING OFF OF WHAT YOU READ IS NOT

02:42PM  23   NECESSARILY THE TRUTH, RIGHT?

02:42PM  24       AND IT WAS A GUT REACTION RESPONSE BECAUSE I WAS SO

02:42PM  25   INVOLVED IN FOLLOWING THEM.

02:42PM 1          MR. DOWNEY:  OKAY.  BUT YOU THINK HERE YOU WOULD BE

02:42PM 2    ABLE TO CONSIDER ALL OF THE EVIDENCE THAT IS PRESENTED AND NOT

02:42PM 3    LET THAT OPINION AFFECT YOUR DELIBERATIONS?

02:42PM 4          PROSPECTIVE JUROR:  YES, SIR.

02:42PM 5          MR. DOWNEY:  IS THERE -- COULD YOU TELL US A LITTLE

02:42PM 6    BIT ABOUT YOUR DEALINGS WITH THE FDA?

02:42PM 7          PROSPECTIVE JUROR:  IT'S JUST THE ANDA CASES THAT I

02:42PM 8    WORK ON, SO, LIKE, RUNNING UP THEIR PRODUCTIONS AND -- YOU

02:43PM 9    KNOW, I DON'T REALLY DO ANYTHING WITH THE FDA.  IT'S THE

02:43PM 10   ATTORNEYS WHO ARE DOING THE LETTERS.  BUT I'M KEEPING TRACK OF

02:43PM 11   WHAT IS GOING IN AND OUT AND PRODUCING TO THE OTHER SIDE AND

02:43PM 12   THE FDA THE CORRESPONDENCE FOR THE ANDA APPLICATIONS.

02:43PM 13         MR. DOWNEY:  AND IS THE NATURE OF THAT THAT THE

02:43PM 14   CLIENTS OF THE LAW FIRM ARE FILING NEW DRUG APPLICATIONS WITH

02:43PM 15   THE FDA?

02:43PM 16         PROSPECTIVE JUROR:  CORRECT.

02:43PM 17         MR. DOWNEY:  AND IS IT RIGHT THAT YOUR LAW FIRM IS

02:43PM 18   TRYING TO ASSIST THOSE CLIENTS IN GETTING THAT NEW DRUG

02:43PM 19   APPLICATION APPROVED?

02:43PM 20         PROSPECTIVE JUROR:  YES.

02:43PM 21         MR. DOWNEY:  AND IS IT THE CASE THAT THERE ARE ANY

02:43PM 22   OF THOSE NEW DRUG APPLICATIONS THAT YOU'VE WORKED ON IN THE

02:43PM 23   LAST SIX MONTHS?

02:43PM 24         PROSPECTIVE JUROR:  I'VE HAD A FEW.

02:43PM 25         MR. DOWNEY:  YOU DON'T HAVE TO IDENTIFY WHAT THEY

| | | |
|---|---|---|
| 02:43PM | 1 | ARE, BUT ARE THERE CURRENTLY ANY APPLICATIONS THAT YOU'VE BEEN |
| 02:44PM | 2 | INVOLVED WITH THAT ARE PENDING WITH THE FDA CURRENTLY? |
| 02:44PM | 3 | PROSPECTIVE JUROR:  YES. |
| 02:44PM | 4 | MR. DOWNEY:  HOW MANY? |
| 02:44PM | 5 | PROSPECTIVE JUROR:  HMM.  AT LEAST FIVE OR SIX. |
| 02:44PM | 6 | MR. DOWNEY:  AND DO YOU EXPECT THAT YOU'LL DO |
| 02:44PM | 7 | FURTHER WORK IN CONNECTION WITH THOSE APPLICATIONS? |
| 02:44PM | 8 | PROSPECTIVE JUROR:  YES, SIR. |
| 02:44PM | 9 | MR. DOWNEY:  OKAY.  AM I RIGHT THAT YOU'VE BEEN ABLE |
| 02:44PM | 10 | TO ADJUST ANY CONFLICTS WITH THIS TRIAL THAT YOU WOULD HAVE AS |
| 02:44PM | 11 | WELL? |
| 02:44PM | 12 | PROSPECTIVE JUROR:  I HAVE NOT.  I WAS JUST KIND OF |
| 02:44PM | 13 | WAITING AND SEEING. |
| 02:44PM | 14 | MR. DOWNEY:  WELL, TELL US ABOUT THAT.  I NOTICED IN |
| 02:44PM | 15 | YOUR QUESTIONNAIRE THAT THIS MIGHT PRESENT SOME SCHEDULING |
| 02:44PM | 16 | HARDSHIPS. |
| 02:44PM | 17 | PROSPECTIVE JUROR:  WELL, WITH THE PANDEMIC, I'VE |
| 02:44PM | 18 | BEEN LOCKED IN THE HOUSE WITH THE FAMILY AND WE HAVE NOT GONE |
| 02:44PM | 19 | ANYWHERE FOR A YEAR AND A HALF. |
| 02:45PM | 20 | THE KIDS ARE BACK IN SCHOOL, AND THE FALL BREAK IS THE |
| 02:45PM | 21 | FIRST WEEK OF OCTOBER AND SO WE'VE PLANNED A LITTLE GETAWAY. |
| 02:45PM | 22 | I'VE BEEN TAKING CARE OF MY ELDERLY PARENTS DURING THIS |
| 02:45PM | 23 | WHOLE PROCESS WITH MY 12-YEAR OLD. |
| 02:45PM | 24 | MY MOTHER HAS ALZHEIMER'S AND MY DAD DOESN'T GET ALONG SO |
| 02:45PM | 25 | WELL.  SHE SNUCK OUT OF THE HOUSE BEFORE THE PANDEMIC STARTED, |

| | | |
|---|---|---|
| 02:45PM | 1 | AND WE HAD TO GO SEARCHING FOR HER, AND THAT'S WHEN ROBERT AND |
| 02:45PM | 2 | I MOVED IN WITH THEM. |
| 02:45PM | 3 | AND WHEN HE WAS IN SCHOOL AND DOING DISTANCE LEARNING IT |
| 02:45PM | 4 | WAS HELPFUL THAT WE COULD KEEP AN EYE ON HER.  HE'S BACK, YOU |
| 02:45PM | 5 | KNOW, BACK IN SESSION AS OF A WEEK AND A HALF AGO. |
| 02:45PM | 6 | SO THINGS ARE KIND OF IN THE AIR WITH EVERYTHING RIGHT NOW |
| 02:45PM | 7 | AS FAR AS SCHEDULING. |
| 02:45PM | 8 | MR. DOWNEY:  OKAY.  SO ARE YOU ONE OF HER PRINCIPAL |
| 02:45PM | 9 | CARE TAKERS? |
| 02:45PM | 10 | PROSPECTIVE JUROR:  I AM. |
| 02:45PM | 11 | MR. DOWNEY:  ALL RIGHT, SIR.  THANK YOU. |
| 02:45PM | 12 | PROSPECTIVE JUROR:  UH-HUH. |
| 02:46PM | 13 | MR. DOWNEY:  I SHOULD ASK, I ASKED MS. NGUYEN, IS |
| 02:46PM | 14 | THERE ANYONE ELSE HERE WHO HAS HAD ANY DIFFICULTY EITHER |
| 02:46PM | 15 | UNDERSTANDING ME OR MR. SCHENK, OR ANYTHING THAT HAS HAPPENED |
| 02:46PM | 16 | IN COURT HERE TODAY BECAUSE YOU CAN'T HEAR OR FOR OTHER |
| 02:46PM | 17 | REASONS? |
| 02:46PM | 18 | YES, MA'AM. |
| 02:46PM | 19 | PROSPECTIVE JUROR:  I DON'T -- |
| 02:46PM | 20 | THE COURT:  COULD YOU COME FORWARD, PLEASE? |
| 02:46PM | 21 | PROSPECTIVE JUROR:  I DON'T HAVE -- |
| 02:46PM | 22 | THE COURT:  COULD YOU COME FORWARD, PLEASE? |
| 02:46PM | 23 | PROSPECTIVE JUROR:  HI.  I DON'T HAVE HEARING |
| 02:46PM | 24 | PROBLEMS, BUT ENGLISH IS MY SECOND LANGUAGE. |
| 02:46PM | 25 | THE COURT:  COULD YOU TELL US YOUR JUROR NUMBER, |

02:46PM   1    PLEASE.

02:46PM   2              PROSPECTIVE JUROR:  81.

02:46PM   3        SO I'M AFRAID IF A DECISION DEPENDS ON ME, I HAVEN'T BEEN

02:46PM   4    ABLE TO FOLLOW, YOU KNOW, DURING THE PROCESS ALL OF THE

02:46PM   5    TESTIMONY AND EVERYTHING, SPECIFIC WORDS.

02:46PM   6        DO YOU KNOW WHAT I MEAN?  I'M ABLE TO HAVE A CONVERSATION,

02:47PM   7    BUT MORE SPECIFIC WORDS FOR ME MAKE ME FEEL LOST IN

02:47PM   8    TRANSLATION.

02:47PM   9              MR. DOWNEY:  OKAY, MA'AM.  THAT'S BEEN TRUE OF EVEN

02:47PM  10    TODAY'S PROCEEDINGS?

02:47PM  11              PROSPECTIVE JUROR:  NO, NOT SO FAR.

02:47PM  12        IT'S HARD FOR SOMETIMES WITH ACCENTS AND STUFF.  BUT

02:47PM  13    REGULAR DAY LIKE TODAY?  NO.

02:47PM  14        SO I'M AFRAID OF THAT.

02:47PM  15              MR. DOWNEY:  YOU'VE BEEN ABLE TO FOLLOW WHAT WE HAVE

02:47PM  16    DONE TODAY?

02:47PM  17              PROSPECTIVE JUROR:  I'M SORRY?

02:47PM  18              MR. DOWNEY:  YOU'VE BEEN ABLE TO FOLLOW WHAT WE HAVE

02:47PM  19    DONE TODAY?

02:47PM  20              PROSPECTIVE JUROR:  YES.

02:47PM  21              MR. DOWNEY:  OKAY.  THANK YOU, MA'AM.

02:47PM  22        IS THERE ANYONE ELSE WHO HAS ANY CHALLENGES EITHER IN

02:47PM  23    TERMS OF HEARING OR LANGUAGE THAT HAVE MADE IT DIFFICULT TO

02:47PM  24    FOLLOW THE PROCEEDING?

02:47PM  25        OKAY.  THANK YOU.

02:47PM 1                    THE COURT:  THERE'S A HAND.  IS THAT MR. GUERRERO OR

02:47PM 2      MR. NGUYEN?  EXCUSE ME.

02:47PM 3          MR. GUERRERO?

02:47PM 4                    PROSPECTIVE JUROR:  YES.

02:47PM 5                    THE COURT:  YES.

02:47PM 6                    PROSPECTIVE JUROR:  MY JUROR NUMBER IS 55.  I ALSO

02:48PM 7      HAVE SOME TROUBLE UNDERSTANDING ENGLISH, AND THAT'S IT.  I

02:48PM 8      UNDERSTAND, BUT TO SPEAK IT'S HARDER FOR ME.

02:48PM 9                    THE COURT:  SPEAKING IS MORE DIFFICULT THAN YOUR

02:48PM 10     UNDERSTANDING?

02:48PM 11                   PROSPECTIVE JUROR:  YES.

02:48PM 12                   THE COURT:  I SEE.  AND YOU'VE BEEN ABLE TO

02:48PM 13     UNDERSTAND --

02:48PM 14                   PROSPECTIVE JUROR:  YES.

02:48PM 15                   THE COURT:  -- THE PROCEEDING TODAY?

02:48PM 16                   PROSPECTIVE JUROR:  YES.

02:48PM 17                   THE COURT:  OKAY.  THANK YOU, SIR.

02:48PM 18                   MR. DOWNEY:  YOUR HONOR, MAY I JUST ASK, YOUR HONOR,

02:48PM 19     ONE MORE THING.

02:48PM 20                   THE COURT:  OH, YES.

02:48PM 21                   MR. DOWNEY:  WOULD YOU BE COMFORTABLE TO

02:48PM 22     PARTICIPATE?  WOULD YOU BE ABLE TO TALK TO OTHER JURORS WHILE

02:48PM 23     THE CASE IS BEING DECIDED?

02:48PM 24                   PROSPECTIVE JUROR:  YES.

02:48PM 25                   MR. DOWNEY:  AND YOU'D BE COMFORTABLE DOING THAT?

183

02:48PM   1          PROSPECTIVE JUROR:  YEAH, I THINK SO.

02:48PM   2          MR. DOWNEY:  THANK YOU.

02:48PM   3      MR. RISHI, I HAVE SOME QUESTIONS FOR YOU.  I HAVE PROBABLY

02:48PM   4  ENOUGH QUESTIONS THAT YOU MIGHT WANT TO GET THE MICROPHONE.

02:48PM   5      (LAUGHTER.)

02:49PM   6          MR. DOWNEY:  THAT DOESN'T MEAN THEY'RE BAD

02:49PM   7  QUESTIONS.  IT JUST MEANS --

02:49PM   8      I WAS ALSO INTERESTED IN A RESPONSE THAT YOU GAVE IN THE

02:49PM   9  QUESTIONNAIRE.

02:49PM  10      FIRST OF ALL, YOU HAVE READ A LOT OF MEDIA REPORTS ABOUT

02:49PM  11  MS. HOLMES; CORRECT?

02:49PM  12          PROSPECTIVE JUROR:  CORRECT.

02:49PM  13          MR. DOWNEY:  AND YOU'VE READ THEM OVER A LONG PERIOD

02:49PM  14  OF TIME; IS THAT RIGHT?

02:49PM  15          PROSPECTIVE JUROR:  YES.  I THINK I STARTED

02:49PM  16  FOLLOWING IT WHEN IT STARTED, AND THEN A FEW YEARS BACK I

02:49PM  17  STOPPED.  BUT --

02:49PM  18          MR. DOWNEY:  OKAY.  SO YOU'VE READ A NUMBER OF

02:49PM  19  ARTICLES OVER A PERIOD OF YEARS; IS THAT CORRECT?

02:49PM  20          PROSPECTIVE JUROR:  THAT'S CORRECT.

02:49PM  21          MR. DOWNEY:  AND YOU'VE READ THE BOOK "BAD BLOOD"?

02:49PM  22          PROSPECTIVE JUROR:  UH-HUH.

02:49PM  23          MR. DOWNEY:  AND YOU ALSO WATCHED A COUPLE OF

02:49PM  24  DOCUMENTARIES ABOUT THERANOS; IS THAT RIGHT?

02:49PM  25          PROSPECTIVE JUROR:  CORRECT, I THINK "60 MINUTES."

02:49PM  1        MR. DOWNEY:  OKAY.  AND WHEN YOU CAME IN TO FILL

02:50PM  2    YOUR QUESTIONNAIRE TEN DAYS AGO OR SO, YOU SAID -- YOU ANSWERED

02:50PM  3    THE QUESTION DO YOU, TO YOUR KNOWLEDGE, OR DO YOUR FRIENDS AND

02:50PM  4    FAMILY MEMBERS HAVE STRONG OPINIONS ABOUT EITHER MS. HOLMES OR

02:50PM  5    MR. BALWANI THAT WOULD INFLUENCE YOUR ABILITY TO BE A FAIR AND

02:50PM  6    IMPARTIAL JUROR IN THIS CASE?

02:50PM  7        AND YOU CHECKED "YES," INDICATING THAT YOU MIGHT HAVE SOME

02:50PM  8    STRONG OPINIONS OR FEELINGS, OR THAT PEOPLE YOU LIVE WITH OR

02:50PM  9    WERE FRIENDS WITH MIGHT HAVE STRONG OPINIONS AND FEELINGS.

02:50PM  10       TELL US ABOUT THAT.

02:50PM  11       PROSPECTIVE JUROR:  I THINK, AS I WAS POINTING OUT

02:50PM  12   WHEN WE STARTED READING THE NEWS -- BY "WE" I MEAN ME AND MY

02:50PM  13   WIFE -- AND THIS WAS FOR "THE WALL STREET JOURNAL."

02:50PM  14       SHE WAS IN THE, OR STILL IS IN THE MEDICAL I.T. FIELD, AND

02:50PM  15   SO THINGS LIKE BLOOD TESTING, ET CETERA, WERE PART OF HER

02:51PM  16   PURVIEW.  AND I'VE HAD BLOOD TESTS, ET CETERA.

02:51PM  17       AND SO FOR US, THE GUT REACTION WHEN WE WERE TALKING ABOUT

02:51PM  18   IT WAS ESSENTIALLY THAT THERE'S A HIGH BAR THAT YOU NEED TO

02:51PM  19   HAVE AS A COMPANY WHEN YOU'RE GETTING INTO SOMETHING LIKE

02:51PM  20   MEDICAL TESTING BECAUSE THE IMPLICATIONS CAN BE SO HARSH

02:51PM  21   POTENTIALLY ON PEOPLE.

02:51PM  22       SO THAT'S SOMETHING THAT I'M CONSCIOUS OF AND THAT'S THE

02:51PM  23   REASON I CHECKED IT.

02:51PM  24       MR. DOWNEY:  AND THAT'S A VIEW THAT YOU STILL HAVE,

02:51PM  25   I ASSUME?

| | | |
|---|---|---|
| 02:51PM | 1 | PROSPECTIVE JUROR:  CORRECT. |
| 02:51PM | 2 | MR. DOWNEY:  AND DOES YOUR WIFE HAVE A SIMILAR VIEW? |
| 02:51PM | 3 | PROSPECTIVE JUROR:  YEAH, I THINK SHE DOES. |
| 02:51PM | 4 | MR. DOWNEY:  AND AM I RIGHT SHE WORKS AT WAL-MART |
| 02:51PM | 5 | HEALTH? |
| 02:51PM | 6 | PROSPECTIVE JUROR:  SHE DOES CURRENTLY WORK THERE. |
| 02:51PM | 7 | MR. DOWNEY:  AND DOES SHE HAVE ANY KNOWLEDGE THROUGH |
| 02:51PM | 8 | HER WORK, TO YOUR KNOWLEDGE, DOES SHE KNOW ANYTHING ABOUT |
| 02:51PM | 9 | THERANOS IN CONNECTION WITH HER PROFESSIONAL DEALINGS? |
| 02:51PM | 10 | PROSPECTIVE JUROR:  I DON'T THINK SO. |
| 02:51PM | 11 | MR. DOWNEY:  OKAY.  SO AM I RIGHT THAT THE ANSWER |
| 02:51PM | 12 | THAT YOU GAVE IN RESPONSE TO THAT QUESTION IS ACCURATE, YOU DO |
| 02:51PM | 13 | HAVE SOME CONCERN THAT YOU MAY NOT BE FAIR, OBJECTIVE, AND |
| 02:52PM | 14 | IMPARTIAL BASED ON THOSE VIEWS? |
| 02:52PM | 15 | PROSPECTIVE JUROR:  I THINK IT'S -- BACK TO THE |
| 02:52PM | 16 | POINT, THE QUESTION WAS IF I HAD SOME VIEWS, AND I THINK THAT'S |
| 02:52PM | 17 | WHAT I AT LEAST INTENDED TO ANSWER BY PUTTING THE CHECK BOX. |
| 02:52PM | 18 | BUT LIKE I POINTED OUT EARLIER, I'M ALSO AWARE OF MY |
| 02:52PM | 19 | BIASES, AND IF THE QUESTION IS CAN I RECOGNIZE THEM AND LOOK AT |
| 02:52PM | 20 | OTHER EVIDENCE I'M SUPPOSED TO LOOK AT, I BELIEVE I AM CAPABLE |
| 02:52PM | 21 | OF THAT. |
| 02:52PM | 22 | I'M NOT SURE IF I ANSWERED YOUR QUESTION. |
| 02:52PM | 23 | MR. DOWNEY:  WELL, YOU USED A GREAT PHRASE ACTUALLY. |
| 02:52PM | 24 | YOU SAID THAT YOU COULD ENGAGE IN I THINK INFORMATION |
| 02:52PM | 25 | ATTRIBUTION IS THE PHRASE YOU GAVE -- THAT YOU USED. |

186

02:52PM   1          PROSPECTIVE JUROR:  THAT'S RIGHT.

02:52PM   2          MR. DOWNEY:  YOU HAD THAT SKILL WHEN YOU INDICATED

02:52PM   3   YOU WERE WORRIED YOU MIGHT HAVE SOME BIASES AND OPINIONS,

02:52PM   4   DIDN'T YOU?

02:52PM   5          PROSPECTIVE JUROR:  CORRECT.

02:53PM   6          MR. DOWNEY:  OKAY.  AND WHETHER YOU CAN PUT THEM TO

02:53PM   7   THE SIDE OR NOT, DO YOU THINK YOU WOULD CARRY SOME BIASES AND

02:53PM   8   OPINIONS ABOUT THE SITUATION INTO THE CASE AS YOU WENT TO

02:53PM   9   DELIBERATE IN THE CASE OR TO HEAR THE CASE AS A JUROR?

02:53PM  10          PROSPECTIVE JUROR:  WILL I HAVE SOME BIASES GOING

02:53PM  11   IN?  ABSOLUTELY.

02:53PM  12          MR. DOWNEY:  ONE OTHER ISSUE I WANTED TO ASK YOU

02:53PM  13   ABOUT.  WITH RESPECT TO THE DISPUTE THAT YOU HAD RELATED TO

02:53PM  14   YOUR DAUGHTER'S TREATMENT --

02:53PM  15          PROSPECTIVE JUROR:  SAY THAT AGAIN.

02:53PM  16          MR. DOWNEY:  YES, YES.

02:53PM  17      WITH RESPECT TO THE DISPUTE THAT YOU HAD RELATED TO YOUR

02:53PM  18   DAUGHTER'S TREATMENT, I DON'T WANT TO INFRINGE IN ANY WAY ON

02:53PM  19   YOUR PRIVACY, BUT COULD YOU GIVE US AT A HIGH LEVEL A SENSE OF

02:53PM  20   WHAT THAT WAS ABOUT?

02:53PM  21          PROSPECTIVE JUROR:  I THINK -- I MEAN, NOTHING

02:53PM  22   REALLY TO HIDE.  I THINK OUR DAUGHTER, SHE'S MIDDLE SCHOOL AND

02:53PM  23   SHE WEARS HEARING AIDS AND I THINK IT'S MEDICALLY NECESSARY.

02:54PM  24      BUT THE INSURANCE NEVER COVERED THAT, OR WE HAD TO DISPUTE

02:54PM  25   IT, AND I THINK THAT WAS REALLY -- YOU KNOW, IT WAS AN

02:54PM 1    EMOTIONAL PROCESS FOR THE FAMILY AND WHAT WE FELT WAS RIGHT AND

02:54PM 2    DIDN'T QUITE GET THE REIMBURSEMENT UNTIL IT WAS A LONG-TERM

02:54PM 3    PROCESS, AND SO THAT'S WHAT I WAS ALLUDING TO.

02:54PM 4         MR. DOWNEY:  IF YOU CAN SAY, WHO WERE THE INSURERS

02:54PM 5    WHO WERE INVOLVED IN THAT DISPUTE?

02:54PM 6         PROSPECTIVE JUROR:  I BELIEVE IT WAS CIGNA AT THAT

02:54PM 7    POINT IN TIME.

02:54PM 8         MR. DOWNEY:  IS THERE ANYTHING THAT YOU THINK WOULD

02:54PM 9    INFLUENCE YOU?

02:54PM 10        PROSPECTIVE JUROR:  I DON'T THINK SO, OTHER THAN MY

02:54PM 11   TAKE-AWAY IS THAT THE MEDICAL INDUSTRY IS A COMPLEX INDUSTRY IS

02:54PM 12   ALL I CAN THINK OF.

02:54PM 13        MR. DOWNEY:  FAIR ENOUGH.  THANK YOU, SIR.

02:55PM 14      (PAUSE IN PROCEEDINGS.)

02:55PM 15        MR. DOWNEY:  MS. RAMER, I JUST HAD ONE QUESTION FOR

02:55PM 16   YOU.  YOU SAID BEFORE THAT YOU HAD SOME KNOWLEDGE OF ONE OF THE

02:55PM 17   POTENTIAL WITNESSES IN THE CASE AND YOU TALKED WITH

02:55PM 18   JUDGE DAVILA ABOUT THAT.

02:55PM 19      DO YOU REMEMBER THAT?

02:55PM 20        PROSPECTIVE JUROR:  YES.

02:55PM 21        MR. DOWNEY:  CAN YOU JUST GIVE US A SENSE ABOUT

02:55PM 22   WHETHER YOU HAVE AN OPINION ABOUT THAT WITNESS?

02:55PM 23        PROSPECTIVE JUROR:  NO, I DON'T.  I WAS JUST

02:55PM 24   DISCLOSING THAT IT WAS SOMEBODY THAT I KNOW, OR KNOW OF.

02:56PM 25        MR. DOWNEY:  AND ANYTHING PARTICULARLY NEGATIVE OR

02:56PM  1    POSITIVE ABOUT THAT PERSON?

02:56PM  2            PROSPECTIVE JUROR:  NO.  NO.  I MEAN, WE HAD CORDIAL

02:56PM  3    COLLABORATIONS WITH HIM AND HIS LAB FOR SEVERAL YEARS.  IT

02:56PM  4    ENDED, BUT IT DIDN'T END BADLY FOR ANY PARTICULAR REASON OTHER

02:56PM  5    THAN WE MOVED TO A DIFFERENT SORT OF AREA OF RESEARCH.

02:56PM  6    EVERYTHING WAS LEFT ON FINE TERMS.

02:56PM  7            MR. DOWNEY:  IS THERE ANYTHING THAT YOU WOULD HAVE

02:56PM  8    IN TERMS OF -- DOES ANY VIEW THAT YOU WOULD HAVE COME FROM THAT

02:56PM  9    EXPERIENCE, OR DO YOU HAVE ANY REASON TO HAVE ANY OTHER VIEWS

02:56PM  10   ABOUT THAT WITNESS?

02:56PM  11           PROSPECTIVE JUROR:  NO.

02:56PM  12           MR. DOWNEY:  THANK YOU.

02:57PM  13       (PAUSE IN PROCEEDINGS.)

02:57PM  14           MR. DOWNEY:  YOUR HONOR, I HAVE A QUESTION ON ONE

02:57PM  15   WITNESS, BUT I THINK THEY MAY BE A FAILURE TO APPEAR.  CAN I

02:57PM  16   JUST?

02:57PM  17           THE COURT:  OH, YEAH, PLEASE.

02:57PM  18       (PAUSE IN PROCEEDINGS.)

02:57PM  19           THE COURT:  FOLKS, IF YOU WOULD LIKE TO STAND UP AND

02:57PM  20   STRETCH YOUR LEGS, GO AHEAD AND DO THAT RIGHT NOW.  BUT FEEL

02:57PM  21   FREE TO STAND AND STRETCH.

02:57PM  22       (STRETCH BREAK.)

02:58PM  23           MR. DOWNEY:  I WANTED TO ASK MR. LEE JUST SOME

02:58PM  24   QUESTIONS ABOUT -- AND IF THEY'RE PRIVATE QUESTIONS, YOU CAN

02:58PM  25   CERTAINLY INDICATE THAT TO US.

02:58PM 1      BUT I UNDERSTAND THAT YOU MAY HAVE SOME HEALTH ISSUES THAT

02:58PM 2   WOULD AT THE VERY LEAST MAKE YOU SUSCEPTIBLE TO THE CONTRACTION

02:58PM 3   OF COVID-19.  I WONDER IF YOU COULD TELL US ABOUT THAT AND IF

02:58PM 4   THERE'S ANYTHING ABOUT THAT THAT WOULD AFFECT YOUR JURY

02:58PM 5   SERVICE.

02:58PM 6      PROSPECTIVE JUROR:  IT'S NOT VERY SERIOUS, BUT I'M A

02:58PM 7   LITTLE BIT IMMUNOCOMPROMISED, SO I'M JUST MORE SUSCEPTIBLE.  IF

02:58PM 8   I GET COVID, IT WILL HURT ME MORE.

02:59PM 9      MR. DOWNEY:  ARE THE PROCEDURES THAT HAVE BEEN

02:59PM 10  DESCRIBED TODAY BY JUDGE DAVILA, DOES THAT MAKE YOU COMFORTABLE

02:59PM 11  IN TERMS OF SERVING AS A JUROR IF YOU'RE SELECTED?

02:59PM 12     PROSPECTIVE JUROR:  I'M SORRY, COULD YOU SAY THAT

02:59PM 13  AGAIN?

02:59PM 14     MR. DOWNEY:  YES.  WOULD YOU BE COMFORTABLE IF

02:59PM 15  YOU'RE SERVING AS A JUROR, IF YOU'RE SELECTED, GIVEN WHAT

02:59PM 16  JUDGE DAVILA SAID THIS MORNING ABOUT THE PROCEDURES IN THE

02:59PM 17  COURTROOM?

02:59PM 18     PROSPECTIVE JUROR:  YEAH, WITH ALL OF THE SAFETY

02:59PM 19  PRECAUTIONS I'M COMFORTABLE.

02:59PM 20     MR. DOWNEY:  SO YOU WOULD BE ABLE TO FOCUS DURING

02:59PM 21  THE TRIAL ABOUT WHAT WAS GOING ON AND NOT BE DISTRACTED?

02:59PM 22     PROSPECTIVE JUROR:  FOR THE MOST PART.

02:59PM 23     MR. DOWNEY:  VERY GOOD.  THANK YOU, SIR.

02:59PM 24     YOU ALSO SAID IN RESPONSE TO YOUR QUESTIONNAIRE THAT YOU

02:59PM 25  HAD A BIAS AGAINST CERTAIN POSITIONS IN BUSINESS, AND THAT

| | | |
|---|---|---|
| 02:59PM | 1 | INCLUDES C-LEVEL PEOPLE LIKE CEO'S. |
| 02:59PM | 2 | DO YOU REMEMBER WRITING THAT? |
| 02:59PM | 3 | PROSPECTIVE JUROR: UH-HUH. |
| 02:59PM | 4 | MR. DOWNEY: TELL US ABOUT THAT. WHERE DOES THAT |
| 02:59PM | 5 | VIEW COME FROM, AND TELL US WHY YOU HAVE THAT VIEW. |
| 03:00PM | 6 | PROSPECTIVE JUROR: PLEASE STOP ME IF I SAY |
| 03:00PM | 7 | SOMETHING I AM NOT SUPPOSED TO. |
| 03:00PM | 8 | I WAS FIRED FROM MY LAST TWO JOBS BOTH BECAUSE OF OUR |
| 03:00PM | 9 | MANAGEMENT USING MONEY WHERE THEY'RE NOT SUPPOSED TO. |
| 03:00PM | 10 | I WAS SUPPOSED TO KEEP THE JOB, BUT BECAUSE OF THEIR |
| 03:00PM | 11 | ACTIONS I WAS -- THEY TOLD ME THAT THEY COULDN'T KEEP ME ON |
| 03:00PM | 12 | DESPITE OUR WHOLE TEAM WANTING ME TO CONTINUE AT THE JOB |
| 03:00PM | 13 | BECAUSE OF LACK OF MONEY. |
| 03:00PM | 14 | SO IT GAVE ME A HUGE DISTRUST WITH SOMEONE WHO IS NOT |
| 03:00PM | 15 | TRANSPARENT WITH USING COMPANY MONEY. |
| 03:00PM | 16 | MR. DOWNEY: OKAY. YOU SAID IN YOUR QUESTIONNAIRE |
| 03:00PM | 17 | THAT THAT'S LEFT YOU, I THINK, WITH SOME INCLINATION TO THINK |
| 03:00PM | 18 | THAT PEOPLE IN HIGH LEVEL MANAGEMENT MIGHT BE MORE LIKELY TO BE |
| 03:00PM | 19 | GUILTY THAN OTHER INDIVIDUALS. IS THAT RIGHT? |
| 03:01PM | 20 | PROSPECTIVE JUROR: AFTER COMING HERE AND LISTENING |
| 03:01PM | 21 | TO MORE ABOUT BIASES, I AM MORE OPEN TO KIND OF PUT THOSE |
| 03:01PM | 22 | ISSUES ASIDE. |
| 03:01PM | 23 | BUT THE FEELING OF UNTRUST, BECAUSE IT WAS LOSING TWO JOBS |
| 03:01PM | 24 | THAT I LOVED, IT WAS A VERY HARD AND TRAUMATIC THING TO ME. |
| 03:01PM | 25 | SO WHILE I WANT TO SAY THAT I CAN PUT THOSE BIASES ASIDE, |

03:01PM  1      THAT FEELING OF UNTRUST IS STILL THERE.

03:01PM  2             MR. DOWNEY:  OKAY.  AND CAN YOU SAY A LITTLE BIT

03:01PM  3      MORE WITH RESPECT TO THAT FEELING, WHAT IT MAKES YOU THINK

03:01PM  4      ABOUT SENIOR LEVEL EXECUTIVES IN A COMPANY?

03:01PM  5             PROSPECTIVE JUROR:  AS LONG AS THEY'RE NOT

03:01PM  6      TRANSPARENT ABOUT THE MONEY THAT THEY'RE USING IT FOR, IT MAKES

03:01PM  7      ME SORT OF BELIEVE THAT THEY'RE USING IT FOR PERSONAL GAIN AND

03:01PM  8      NOT THE COMPANY'S GROWTH.

03:02PM  9         ME BEING FIRED KIND OF MAKES ME FEEL, EVEN THOUGH I KNOW

03:02PM 10      IT'S NOT, I FEEL THE FEELING OF BETRAYAL THAT THEY DIRECTLY DID

03:02PM 11      SOMETHING TO HARM ME.

03:02PM 12             MR. DOWNEY:  WELL, I APPRECIATE YOU BEING SO OPEN

03:02PM 13      ABOUT THAT WITH US, AND I'M SORRY I HAVE TO ASK YOU ABOUT IT,

03:02PM 14      BUT WE'RE DOING OUR BEST TO JUST MAKE SURE THAT THE JURORS ARE

03:02PM 15      APPROPRIATE FOR THE CASE.

03:02PM 16         MY LAST SET OF QUESTIONS IS FOR JUROR NUMBER 95, MR. KRAY.

03:02PM 17      I ALSO WANTED TO JUST ASK YOU ABOUT THE COVID SITUATION.

03:02PM 18         I KNOW YOU HAVE SOME CONCERNS ABOUT, WITHOUT GETTING INTO

03:02PM 19      THE DETAILS, YOU LIVE WITH SOME PEOPLE WHO ARE UNVACCINATED.

03:02PM 20      IS THAT A CONCERN THAT YOU STILL HAVE?

03:03PM 21             PROSPECTIVE JUROR:  ACTUALLY MY DAUGHTER HAS NOW

03:03PM 22      BEEN VACCINATED, SO IT'S NOT A CONCERN.

03:03PM 23             MR. DOWNEY:  SO NOTHING ABOUT THE HEALTH ISSUES IN

03:03PM 24      THIS CASE?

03:03PM 25             PROSPECTIVE JUROR:  NO.  NO.

| | | |
|---|---|---|
| 03:03PM | 1 | MR. DOWNEY:  YOU ALSO MENTIONED IN CONNECTION WITH |
| 03:03PM | 2 | THE QUESTIONNAIRE THAT YOU HAD WATCHED A COUPLE OF |
| 03:03PM | 3 | DOCUMENTARIES THAT RELATE TO THERANOS. |
| 03:03PM | 4 | PROSPECTIVE JUROR:  WATCHED OR READ.  I DON'T REALLY |
| 03:03PM | 5 | REMEMBER. |
| 03:03PM | 6 | MR. DOWNEY:  YOU DON'T REALLY REMEMBER ANYTHING |
| 03:03PM | 7 | ABOUT THE DOCUMENTARIES? |
| 03:03PM | 8 | PROSPECTIVE JUROR:  I DON'T REMEMBER WHETHER I |
| 03:03PM | 9 | WATCHED OR READ, BUT I'VE CONSUMED SOME NEWS. |
| 03:03PM | 10 | MR. DOWNEY:  OH, I'M SORRY.  YEAH.  I UNDERSTAND. |
| 03:03PM | 11 | AND DID YOU HAVE ANY REACTION TO THAT IN TERMS OF BEING |
| 03:03PM | 12 | VIEWED AS NEGATIVE OR POSITIVE? |
| 03:03PM | 13 | PROSPECTIVE JUROR:  I THINK I VIEWED IT AS NEGATIVE. |
| 03:03PM | 14 | MR. DOWNEY:  OKAY.  AND THAT INCLUDED WITH RESPECT |
| 03:03PM | 15 | TO MS. HOLMES? |
| 03:03PM | 16 | PROSPECTIVE JUROR:  YES. |
| 03:03PM | 17 | MR. DOWNEY:  OKAY.  HAVE YOU DISCUSSED THAT WITH |
| 03:03PM | 18 | ANYBODY? |
| 03:03PM | 19 | PROSPECTIVE JUROR:  NOT THAT I CAN REMEMBER. |
| 03:03PM | 20 | MR. DOWNEY:  OKAY.  AND WAS THAT STILL A VIEW THAT |
| 03:03PM | 21 | YOU HELD WHEN YOU FILLED OUT THE QUESTIONNAIRE? |
| 03:03PM | 22 | PROSPECTIVE JUROR:  I THINK THAT'S HOW I'M COMING IN |
| 03:04PM | 23 | RIGHT NOW, YES. |
| 03:04PM | 24 | MR. DOWNEY:  OKAY. |
| 03:04PM | 25 | PROSPECTIVE JUROR:  IT DOESN'T MEAN I WON'T CHANGE |

03:04PM  1      MY MIND.  BUT, YES, THAT'S THE PERCEPTION THAT I HAVE, YES.

03:04PM  2              MR. DOWNEY:  OKAY.  AND INDEED I NOTICED, AGAIN,

03:04PM  3      BEING VERY I THINK OPEN AND HONEST, WHICH I CERTAINLY

03:04PM  4      APPRECIATE, YOU, IN RESPONSE TO THE GENERAL QUESTION ABOUT

03:04PM  5      WHETHER WHEN A PERSON IS CHARGED WITH A CRIME THEY'RE PROBABLY

03:04PM  6      GUILTY, YOU CHECKED THAT BOX THAT, YES, PEOPLE WHO ARE CHARGED

03:04PM  7      WITH A CRIME ARE PROBABLY GUILTY.

03:04PM  8              PROSPECTIVE JUROR:  THAT'S CORRECT.

03:04PM  9              MR. DOWNEY:  AND THAT'S A VIEW THAT YOU HAVE BASED

03:04PM 10      ON YOUR LIFE EXPERIENCE?

03:04PM 11              PROSPECTIVE JUROR:  YEAH.  CALL IT A STATISTICAL

03:04PM 12      VIEW.

03:04PM 13              MR. DOWNEY:  ALL RIGHT.  THANK YOU, SIR.

03:04PM 14              PROSPECTIVE JUROR:  SURE.

03:04PM 15              MR. DOWNEY:  MR. KRAY IS OUR LAST JUROR TODAY.

03:05PM 16          (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

03:05PM 17              MR. DOWNEY:  I JUST WANT TO ASK TWO QUESTIONS OF THE

03:05PM 18      ENTIRE PANEL.

03:05PM 19          IS THERE ANYTHING THAT ANYONE FEELS LIKE THEY SAID IN THE

03:05PM 20      QUESTIONNAIRE -- WE'LL START WITH THE QUESTIONNAIRE -- THAT

03:05PM 21      THEY SAID IN THE QUESTIONNAIRE THAT IS INACCURATE OR THEY WOULD

03:05PM 22      LIKE TO CHANGE?

03:05PM 23          THAT'S JUROR NUMBER 95.

03:05PM 24              THE COURT:  MR. KRAY.

03:05PM 25              PROSPECTIVE JUROR:  I THINK THERE WAS SOMETHING

03:05PM 1    ABOUT RELIGION AND I ANSWERED NO FROM THAT QUESTION.

03:05PM 2         THERE IS NOTHING THAT PREVENTS ME FROM BEING A JUROR, BUT

03:06PM 3    I DO HAVE HOLIDAYS COMING UP, WHICH SEVERAL OVERLAP WITH

03:06PM 4    SCHEDULED COURT DAYS WHICH I WILL NOT BE ABLE TO BE PRESENT.

03:06PM 5         MR. DOWNEY:  THANK YOU, SIR.

03:06PM 6         THE COURT:  WHAT ARE THOSE?  I'M SORRY, MR. KRAY.

03:06PM 7    WHAT ARE THOSE?  SPEAK INTO THE MICROPHONE.

03:06PM 8       GO AHEAD.

03:06PM 9         PROSPECTIVE JUROR:  CAN YOU HEAR ME?

03:06PM 10        THE COURT:  YES.

03:06PM 11        PROSPECTIVE JUROR:  WHAT DID YOU WANT ME TO REPEAT?

03:06PM 12        THE COURT:  WHAT YOU JUST SAID ABOUT --

03:06PM 13        PROSPECTIVE JUROR:  THERE ARE SEVERAL RELIGIOUS

03:06PM 14   HOLIDAYS THAT ARE COMING UP IN SEPTEMBER.  FIVE OF THOSE DAYS

03:06PM 15   OVERLAP WITH THE SCHEDULED TRIAL DATES, AND I WOULD NOT BE ABLE

03:06PM 16   TO BE PRESENT.

03:06PM 17        THE COURT:  I SEE.  CAN YOU PROVIDE US THOSE DATES?

03:06PM 18   DO YOU KNOW THEM?

03:06PM 19        PROSPECTIVE JUROR:  THE 8TH, 21ST, 22ND, 28TH, AND

03:06PM 20   29TH.  THOSE ARE THE ONES THAT OVERLAP.

03:06PM 21        THE COURT:  WITH THE TRIAL?

03:06PM 22        PROSPECTIVE JUROR:  YES.

03:06PM 23        THE COURT:  I SEE.  THANK YOU, SIR.  THANK YOU.

03:06PM 24        MR. DOWNEY:  IS THERE ANYONE ELSE WHO WOULD CHANGE

03:06PM 25   OR MODIFY ANYTHING THAT THEY'VE SAID IN RESPONSE TO THE

03:07PM   1    QUESTIONS IN THE QUESTIONNAIRE?

03:07PM   2        IS THERE ANYTHING, ANY ANSWERS THAT ANYONE HAS GIVEN TODAY

03:07PM   3    TO ANY OF US, MR. SCHENK AND MYSELF, JUDGE DAVILA, THAT THEY

03:07PM   4    WOULD LIKE TO COMMENT FURTHER ON OR MODIFY IN ANY WAY?

03:07PM   5        YES, MA'AM, MS. GROGAN.

03:07PM   6            PROSPECTIVE JUROR:  YES, EARLIER -- I DON'T NEED THE

03:07PM   7    MIKE.  THIS IS CLOSE.

03:07PM   8        YOU HAD ASKED --

03:07PM   9            THE COURT:  CAN WE GET THE MIKE?

03:07PM   10           PROSPECTIVE JUROR:  YOU HAD ASKED WHETHER OR NOT I

03:07PM   11   HAD AN OPINION ABOUT READING "BAD BLOOD" AND I BELIEVE I SAID

03:07PM   12   NO.

03:07PM   13       AND AFTER THINKING ABOUT THAT SOME MORE, I DON'T KNOW THAT

03:07PM   14   THAT'S ENTIRELY ACCURATE.  I DO BELIEVE THAT I CAME OUT OF

03:07PM   15   READING THAT HAVING OPINIONS AND SOME DISAPPOINTMENT AND SOME

03:07PM   16   NEGATIVITY, SO I DON'T THINK IT'S FAIR FOR ME TO HAVE SAID NO

03:07PM   17   TO THAT QUESTION.

03:07PM   18           MR. DOWNEY:  I APPRECIATE THAT.  THANK YOU.

03:08PM   19       ANYONE ELSE WANT TO CHANGE OR MODIFY ANYTHING OR PROVIDE

03:08PM   20   ANY FURTHER INFORMATION IN CONNECTION WITH THE QUESTIONS THAT

03:08PM   21   HAVE BEEN ASKED TODAY?

03:08PM   22       THANK YOU VERY MUCH FOR YOUR PATIENCE.  THANK YOU FOR YOUR

03:08PM   23   TIME.

03:08PM   24       YOUR HONOR, I HAVE NOTHING FURTHER FOR THE PANEL.

03:08PM   25           THE COURT:  THANK YOU.  WE'RE GOING TO TAKE A BREAK

03:08PM   1      IN JUST A MOMENT, BUT I DO WANT TO FOLLOW UP WITH MR. RISHI.

03:08PM   2          MR. RISHI, THANK YOU.  YOUR LAST CONVERSATION WITH

03:08PM   3      MR. DOWNEY WHERE I THINK HE USED THE PHRASE "INFORMATION

03:08PM   4      ATTRIBUTION."  I THINK THIS WAS THE CONCEPT THAT YOU'VE READ A

03:08PM   5      LOT ABOUT THERANOS, ABOUT THIS CASE OVER THE YEARS.

03:08PM   6          I THINK YOU TOLD US -- I THINK YOU SAID THAT YOU WILL HAVE

03:08PM   7      A BIAS GOING IN ABSOLUTELY I THINK IS WHAT YOU SAID.

03:08PM   8          BUT CAN YOU INFORM US WHETHER OR NOT -- THERE WAS ANOTHER

03:08PM   9      CONCEPT ABOUT, WILL YOU BE ABLE TO PUT THAT BIAS ASIDE TO SIT

03:08PM   10     AS A FAIR AND IMPARTIAL JUROR IN THIS CASE?  IS THAT SOMETHING

03:09PM   11     THAT YOU THINK YOU CAN DO?

03:09PM   12          PROSPECTIVE JUROR:  THAT'S RIGHT.  AND THAT'S WHAT I

03:09PM   13     SIGNALLED BEFORE ALSO IS THAT -- AND I WAS USING THE WORD

03:09PM   14     "INFORMATION ATTRIBUTION" AS A VEHICLE TO TRY TO GET TO THAT

03:09PM   15     POINT OF BEING ABLE TO SAY WHILE I DO BELIEVE I HAVE PRIOR

03:09PM   16     KNOWLEDGE, AGAIN, I ALSO APPRECIATE YOUR COMMENTS ABOUT KEEPING

03:09PM   17     THIS AS A UNIVERSE OF INFORMATION WHEN MAKING THE DECISION.

03:09PM   18     SO THE WAY TO GET THERE WAS TO BE ABLE TO RECOGNIZE WHAT

03:09PM   19     IT WAS THAT I KNOW BEFOREHAND, AND THIS IS WHAT I LEARNED HERE

03:09PM   20     TO GET TO THAT POINT.

03:09PM   21          THE COURT:  AGAIN, THIS IS A -- IT'S NOT AN ACADEMIC

03:09PM   22     DISCUSSION, IT'S SOMETHING THAT WE STRIVE TO DO, BUT WE'RE ALL

03:09PM   23     HUMANS.  AND YOU HEARD ME TALK ABOUT UNREAD A BOOK, UNRING A

03:09PM   24     BELL.  THAT'S IMPOSSIBLE, OF COURSE.

03:09PM   25          SO WHAT WE ASK YOU TO DO IS YOU HAVE THIS EXPERIENCE OF

03:09PM  1    YOUR LITERATURE AND WATCHING AND READING, BUT THE QUESTION

03:10PM  2    AGAIN IS -- AND I'M SORRY TO BELABOR THIS FOR YOU -- BECAUSE I

03:10PM  3    THINK I HEARD YOU SAY YOU CAN DO THAT, YOU CAN PUT THAT ASIDE,

03:10PM  4    THAT IS, EVERYTHING THAT YOU HAVE READ, SEEN, OR HEARD, AND

03:10PM  5    DECIDE, IF YOU'RE SELECTED AS A JUROR IN THIS CASE, YOU CAN

03:10PM  6    DECIDE THIS CASE, MAKE YOUR DECISION BASED ONLY ON THE EVIDENCE

03:10PM  7    IN THIS CASE AND NOT ON ANY OUTSIDE PERIPHERAL INFORMATION.

03:10PM  8           PROSPECTIVE JUROR:  THAT IS INDEED WHAT I BELIEVE I

03:10PM  9    CAN DO.

03:10PM 10           THE COURT:  OKAY.  THANK YOU, SIR.  THANK YOU FOR

03:10PM 11    THAT.

03:10PM 12        ANY FOLLOWUP ON THAT FROM EITHER COUNSEL?

03:10PM 13           MR. SCHENK:  NO, YOUR HONOR.

03:10PM 14           MR. DOWNEY:  NO, YOUR HONOR.

03:10PM 15           THE COURT:  WE'RE GOING TO TAKE A RECESS.

03:10PM 16       MR. LEE, THIS WOULD PROBABLY BE A GOOD TIME FOR US TO

03:10PM 17    SPEAK WITH YOU ABOUT THOSE ISSUES.  SO IF YOU WOULD REMAIN?

03:10PM 18       WE'LL TAKE ABOUT 15 MINUTES.

03:10PM 19       MS. GROGAN, I'D LIKE TO HAVE YOU COME BACK A LITTLE EARLY

03:10PM 20    SO WE CAN JUST HAVE A LITTLE FOLLOWUP WITH YOU AS WELL, PLEASE.

03:10PM 21           PROSPECTIVE JUROR:  WHAT TIME WOULD YOU LIKE ME?

03:10PM 22           THE COURT:  YES, RIGHT.  WELL, WE'LL TAKE

03:11PM 23    15 MINUTES.  I THINK WE'LL BE ABOUT 10 MINUTES WITH MR. LEE,

03:11PM 24    MAYBE NO MORE THAN THAT.  THEN WE'LL BE HAPPY TO TAKE YOU UP IF

03:11PM 25    THAT'S CONVENIENT.

| | | |
|---|---|---|
| 03:11PM | 1 | PROSPECTIVE JUROR:  SURE. |
| 03:11PM | 2 | THE COURT:  OKAY.  ALL RIGHT.  LET'S TAKE A BREAK |
| 03:11PM | 3 | NOW FOR ABOUT 15 MINUTES. |
| 03:11PM | 4 | FOLKS, DO NOT DISCUSS ANYTHING ABOUT THIS CASE.  DO NOT |
| 03:11PM | 5 | READ ANYTHING ABOUT THIS CASE.  PLEASE KEEP AN OPEN MIND AND |
| 03:11PM | 6 | WE'LL SEE YOU IN 15 MINUTES. |
| 03:11PM | 7 | THEY'RE GOING DOWNSTAIRS? |
| 03:11PM | 8 | THE CLERK:  THEY NEED TO REPORT BACK HERE IN |
| 03:11PM | 9 | 15 MINUTES.  THANK YOU. |
| 03:11PM | 10 | (JURY OUT AT 3:11 P.M.) |
| 03:11PM | 11 | THE COURT:  COUNSEL, DO YOU WANT TO TAKE FIVE |
| 03:11PM | 12 | MINUTES BEFORE WE ENGAGE MR. LEE, OR DO YOU WANT TO GO FORWARD |
| 03:12PM | 13 | NOW? |
| 03:12PM | 14 | MR. DOWNEY:  WHY DON'T WE TAKE FIVE MINUTES NOW, |
| 03:12PM | 15 | YOUR HONOR? |
| 03:12PM | 16 | THE COURT:  OKAY.  MR. LEE, WE'RE GOING TO TAKE |
| 03:12PM | 17 | FIVE MINUTES NOW.  YES, IF YOU WANT TO TAKE A BREAK AND COME |
| 03:12PM | 18 | BACK IN FOUR MINUTES, THAT WOULD BE GREAT.  THANK YOU. |
| 03:12PM | 19 | PROSPECTIVE JUROR:  I JUST WANT TO ASK IF I COULD |
| 03:12PM | 20 | TALK TO THE JUDGE PRIVATELY, OR WHENEVER I CAN. |
| 03:12PM | 21 | (DISCUSSION OFF THE RECORD.) |
| 03:12PM | 22 | THE CLERK:  CAN YOU GIVE US YOUR JUROR NUMBER, |
| 03:12PM | 23 | PLEASE? |
| 03:12PM | 24 | PROSPECTIVE JUROR:  42. |
| 03:12PM | 25 | THE COURT:  LET'S WAIT UNTIL EVERYONE HAS GONE, |

| | | |
|---|---|---|
| 03:12PM | 1 | MA'AM, AND -- |
| 03:12PM | 2 | THE CLERK:  MS. HERNANDEZ PEREZ? |
| 03:12PM | 3 | PROSPECTIVE JUROR:  YES. |
| 03:12PM | 4 | THE COURT:  AND YOU'VE EXPRESSED AN INTEREST, |
| 03:12PM | 5 | THROUGH MS. KRATZMANN, YOU WANT TO TALK TO -- |
| 03:12PM | 6 | PROSPECTIVE JUROR:  TO LIKE YOU PRIVATELY ON ONE OF |
| 03:13PM | 7 | THE QUESTIONS. |
| 03:13PM | 8 | THE COURT:  I SEE.  YOU WANT TO SPEAK ABOUT ONE OF |
| 03:13PM | 9 | THE QUESTIONS PRIVATELY WITHOUT ALL OF THE OTHER JURORS HERE? |
| 03:13PM | 10 | PROSPECTIVE JUROR:  YES. |
| 03:13PM | 11 | THE COURT:  OKAY.  WE'LL TAKE THAT UP IN -- I THINK |
| 03:13PM | 12 | THESE LAWYERS NEED A BREAK. |
| 03:13PM | 13 | PROSPECTIVE JUROR:  YEAH, THAT'S FINE. |
| 03:13PM | 14 | THE COURT:  SO WE'LL TAKE THAT UP IN JUST A MOMENT. |
| 03:13PM | 15 | PROSPECTIVE JUROR:  THANK YOU. |
| 03:13PM | 16 | THE COURT:  THANK YOU. |
| 03:13PM | 17 | (RECESS FROM 3:13 P.M. UNTIL 3:23 P.M.) |
| 03:23PM | 18 | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES |
| 03:23PM | 19 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN, EXCEPT MS. HOLMES |
| 03:23PM | 20 | WILL BE HERE IN A MOMENT. |
| 03:24PM | 21 | (PAUSE IN PROCEEDINGS.) |
| 03:24PM | 22 | (JURY OUT AT 3:24 P.M.) |
| 03:24PM | 23 | (ONLY PROSPECTIVE JUROR LEE PRESENT.) |
| 03:24PM | 24 | THE COURT:  WE'RE BACK ON THE RECORD.  COUNSEL ARE |
| 03:24PM | 25 | PRESENT AND MS. HOLMES IS NOT PRESENT. |

03:24PM  1        MR. LEE, HE IS PRESENT.  HE WANTED TO SPEAK PRIVATELY WITH

03:24PM  2   COURT AND COUNSEL.

03:24PM  3        LET ME ASK, MR. DOWNEY, SHOULD WE PROCEED WITH THIS

03:24PM  4   CONVERSATION WITH YOUR CONSENT?

03:24PM  5             MR. DOWNEY:  YOU MAY, YOUR HONOR.  WE CAN DO THAT

03:24PM  6   HERE OR IN THE JURY ROOM AS YOUR HONOR HAD MENTIONED

03:24PM  7   PREVIOUSLY.

03:24PM  8        I THOUGHT THAT SOME OF THE JURORS IN EXPRESSING THESE

03:25PM  9   CONCERNS WANTED TO SPEAK WITH THE PARTIES AND THE COURT.  I'M

03:25PM 10   NOT SURE.

03:25PM 11        THEY CAN OBVIOUSLY BE ASKED ABOUT THAT.

03:25PM 12             THE COURT:  BUT FOR PURPOSES OF THESE MEETINGS,

03:25PM 13   THOUGH, YOUR CLIENT IS NOT PRESENT AND YOU'RE AGREEING TO WAIVE

03:25PM 14   HER PRESENCE FOR THIS CONVERSATION WITH THESE JURORS?

03:25PM 15             MR. DOWNEY:  YES, YOUR HONOR.

03:25PM 16             THE COURT:  OKAY.  THANK YOU.  THANK YOU.

03:25PM 17        ANY COMMENT FROM THE GOVERNMENT?

03:25PM 18             MR. SCHENK:  NO.  THANK YOU, YOUR HONOR.

03:25PM 19             THE COURT:  MR. LEE, YOU'RE PRESENT, SIR, AND YOU

03:25PM 20   WANTED TO SPEAK PRIVATELY WITH THE LAWYERS AND MYSELF.  IS THIS

03:25PM 21   A GOOD TIME TO DO THAT?  DO YOU WANT TO DO THAT NOW?

03:25PM 22             PROSPECTIVE JUROR:  SURE.

03:25PM 23             THE COURT:  SURE.  WHY DON'T YOU COME FORWARD TO THE

03:25PM 24   MICROPHONE.

03:25PM 25        LET ME ASK YOU, MR. LEE, WE'RE STILL IN A PUBLIC

03:25PM 1    COURTROOM, IN OTHER WORDS, IT'S OPEN TO THE PUBLIC.  I JUST

03:25PM 2    WANT YOU TO BE AWARE OF THAT BEFORE YOU MAKE ANY COMMENTS.  IF

03:25PM 3    THERE'S SOMETHING THAT YOU'RE GOING TO SAY THAT YOU DON'T WANT

03:25PM 4    THE PUBLIC TO KNOW, YOU NEED TO LET ME KNOW AND THE REASONS FOR

03:26PM 5    THAT.

03:26PM 6        BUT IF YOU'RE OTHERWISE COMFORTABLE SPEAKING OUTSIDE OF

03:26PM 7    THE PRESENCE OF THE OTHER JURORS, OTHERWISE RECOGNIZING THAT

03:26PM 8    THIS IS STILL A PUBLIC COURTROOM, I'M HAPPY TO HEAR FROM YOU,

03:26PM 9    SIR.

03:26PM 10        PROSPECTIVE JUROR:  THE THING I WANT TO TALK ABOUT

03:26PM 11   MIGHT MAKE ME VERY EMOTIONAL.  SO I DON'T KNOW -- I DON'T THINK

03:26PM 12   THAT'S A THING THAT I WANT TO SHOW OTHERS.

03:26PM 13        THE COURT:  I SEE.  ALL RIGHT.  DO YOU THINK THAT

03:26PM 14   WHAT YOU WANT TO SPEAK ABOUT IS SOMETHING PRIVATE TO YOU

03:26PM 15   PERSONALLY?

03:26PM 16        PROSPECTIVE JUROR:  UH-HUH.

03:26PM 17        THE COURT:  AND WILL THIS CAUSE YOU, IF IT'S IN THE

03:26PM 18   PUBLIC FORUM, WILL IT CAUSE YOU -- I'M NOT CERTAIN OF THE

03:26PM 19   EFFECT OF THAT.

03:26PM 20        ARE YOU CONCERNED THAT YOUR EMOTIONAL DISPLAY, IF YOU

03:26PM 21   BECOME EMOTIONAL, THAT'S SOMETHING THAT YOU DON'T WANT FOLKS TO

03:26PM 22   SEE?  OR IS THE INFORMATION SUCH THAT IT'S PRIVATE,

03:26PM 23   CONFIDENTIAL, AND SENSITIVE TO YOU, YOUR FAMILY, OR A PERSONAL

03:27PM 24   INTEREST?

03:27PM 25        PROSPECTIVE JUROR:  IT'S NOT THAT SENSITIVE, BUT I

202

03:27PM 1    JUST WORRY ABOUT WHETHER OR NOT IT WOULD INFLUENCE ABOUT HOW

03:27PM 2    OTHERS PERCEIVE THIS.  MAYBE NOT.

03:27PM 3              THE COURT:  OTHER PROSPECTIVE JURORS YOU MEAN?

03:27PM 4              PROSPECTIVE JUROR:  YEAH.

03:27PM 5              THE COURT:  OKAY.  ARE YOU COMFORTABLE TALKING NOW?

03:27PM 6              PROSPECTIVE JUROR:  SURE.

03:27PM 7              THE COURT:  IF YOU'RE NOT, TELL ME.  BUT IF YOU ARE,

03:27PM 8    WE CAN HAVE OUR CONVERSATION NOW.

03:27PM 9              PROSPECTIVE JUROR:  SURE.

03:27PM 10             THE COURT:  GO RIGHT AHEAD, SIR, IF YOU WOULD LIKE.

03:27PM 11             PROSPECTIVE JUROR:  SO YOU ASKED ABOUT WHETHER I HAD

03:27PM 12   ANY FAMILY MEMBERS WHO ARE RELATED TO CHILD ABUSE, LIKE ANY

03:27PM 13   CHILD ABUSE CASES.

03:27PM 14             THE COURT:  YES.

03:27PM 15             PROSPECTIVE JUROR:  SO THERE IS ONE FROM WITH MY

03:27PM 16   FAMILY WHERE MY LITTLE BROTHER, HE WAS -- HE ACCUSED MY MOTHER

03:27PM 17   OF ABUSING HIM WHEN HE WAS A KID, AND THIS WENT TO TRIAL.  THAT

03:27PM 18   CASE HAS BEEN A HUGE THING IN OUR FAMILY WHERE EVEN TO THIS DAY

03:28PM 19   WE STILL TALK ABOUT IT, AND EVERY TIME IT COMES UP, IT CAUSES A

03:28PM 20   LOT OF EMOTIONAL DISTRESS.

03:28PM 21       SO I THINK IF I DO -- I WANT TO BE IMPARTIAL, BUT WHEN I

03:28PM 22   DO HEAR ANYTHING WITH ABUSE, IT DOES MAKE ME VERY, VERY

03:28PM 23   EMOTIONAL.

03:28PM 24             THE COURT:  THANK YOU, SIR.

03:28PM 25       SIR, IS IT CHILD ABUSE?  IS IT ABUSE IN GENERAL?

| | | |
|---|---|---|
| 03:28PM | 1 | PROSPECTIVE JUROR:  IT'S CHILD ABUSE. |
| 03:28PM | 2 | THE COURT:  OKAY.  I'M, I'M -- I HAVE CONFIDENCE |
| 03:28PM | 3 | THAT THERE ARE NOT ANY ISSUES IN THIS CASE REGARDING CHILD |
| 03:28PM | 4 | ABUSE. |
| 03:28PM | 5 | AM I RIGHT ABOUT THAT? |
| 03:28PM | 6 | MR. SCHENK:  YOU'RE CORRECT. |
| 03:28PM | 7 | MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR. |
| 03:28PM | 8 | THE COURT:  SO, SIR, THERE WILL NOT BE ANY ISSUES IN |
| 03:28PM | 9 | THIS CASE RELATED TO CHILD ABUSE. |
| 03:28PM | 10 | DOES THAT GIVE YOU SOME COMFORT? |
| 03:28PM | 11 | PROSPECTIVE JUROR:  YES, ABSOLUTELY. |
| 03:28PM | 12 | THE COURT:  ANYTHING ELSE YOU WOULD LIKE ME TO KNOW? |
| 03:28PM | 13 | PROSPECTIVE JUROR:  I BELIEVE THERE'S ANOTHER |
| 03:29PM | 14 | QUESTION ABOUT WHETHER I WOULD BE IMPARTIAL TO IF POLICE |
| 03:29PM | 15 | OFFICERS OR LAW ENFORCEMENT -- |
| 03:29PM | 16 | THE COURT:  YES. |
| 03:29PM | 17 | PROSPECTIVE JUROR:  -- GAVE -- PERSONALLY, I THINK I |
| 03:29PM | 18 | AM IMPARTIAL TO IT, BUT MY EXPERIENCE, I ALSO WROTE THIS ON MY |
| 03:29PM | 19 | FORM OR THE QUESTIONNAIRE, BUT MY EXPERIENCE WITH LAW |
| 03:29PM | 20 | ENFORCEMENT, I'VE ONLY FELT LIFE THREATENING EXPERIENCES FROM |
| 03:29PM | 21 | THEM. |
| 03:29PM | 22 | SO RIGHT NOW MY MIND IS CLEAR THAT I THINK I AM IMPARTIAL, |
| 03:29PM | 23 | BUT WHEN IT COMES TO THE MOMENT IF -- UNLESS THEY'RE GIVING |
| 03:29PM | 24 | LIKE NUMERICAL FACTS.  IF THEY'RE TALKING ABOUT -- IF THEY'RE |
| 03:29PM | 25 | DEFENDING OR ACCUSING, I DON'T THINK I CAN FULLY TRUST THAT. |

| | | |
|---|---|---|
| 03:29PM | 1 | THE COURT:  I SEE. |
| 03:29PM | 2 | SO IF THE LAW ENFORCEMENT, THE AGENTS ARE SPEAKING ABOUT |
| 03:30PM | 3 | FACTS, NUMERICAL FACTS, DATA, YOU'RE OKAY WITH THAT? |
| 03:30PM | 4 | PROSPECTIVE JUROR:  I'M PRETTY SURE I WOULD BE OKAY |
| 03:30PM | 5 | WITH THAT. |
| 03:30PM | 6 | THE COURT:  BUT THE CONFLICT YOU HAVE IS WITH LAW |
| 03:30PM | 7 | ENFORCEMENT OFFICERS -- |
| 03:30PM | 8 | PROSPECTIVE JUROR:  IF THEY HAVE ANY INTENTION ON |
| 03:30PM | 9 | BEING ON EITHER SIDE, LIKE IF THEY ARE TRYING TO CONVINCE US |
| 03:30PM | 10 | OF -- LIKE IF THEY HAVE ANY INTENTION OF BEING THE ACCUSER OR |
| 03:30PM | 11 | PART OF THE DEFENSE. |
| 03:30PM | 12 | THE COURT:  IF THE LAW ENFORCEMENT OFFICER IS |
| 03:30PM | 13 | ACCUSING OR -- THERE MAY BE -- I THINK YOU'LL HEAR TESTIMONY |
| 03:30PM | 14 | FROM POSSIBLY AGENTS AND OTHER GOVERNMENT REPRESENTATIVES. |
| 03:30PM | 15 | MR. SCHENK, CAN YOU OR ANYONE ON YOUR TEAM ADD A LITTLE |
| 03:30PM | 16 | CLARITY TO THAT? |
| 03:30PM | 17 | MR. SCHENK:  YES, YOUR HONOR, THAT'S CORRECT. |
| 03:30PM | 18 | THERE CERTAINLY IS THE POSSIBILITY THAT LAW ENFORCEMENT |
| 03:30PM | 19 | AGENTS WOULD TESTIFY ABOUT FACTS THAT THEY LEARNED DURING THE |
| 03:30PM | 20 | COURSE OF THE INVESTIGATION, OR ALSO MAYBE GOVERNMENT |
| 03:31PM | 21 | REGULATORS WHO COME IN AND TALK ABOUT WORK THAT THEY DID |
| 03:31PM | 22 | THROUGH ENFORCEMENT OF REGULATIONS, AUDITS, THINGS LIKE THAT. |
| 03:31PM | 23 | THE COURT:  I SEE.  ARE THERE -- HOW SHALL I |
| 03:31PM | 24 | SAY? -- POLICE OFFICERS, BEAT OFFICERS, PATROL OFFICERS, ANY OF |
| 03:31PM | 25 | THOSE TYPES OF TESTIMONY ANTICIPATED? |

03:31PM 1            MR. SCHENK:  NO LOCAL LEVEL LAW ENFORCEMENT, JUST

03:31PM 2      FEDERAL LAW ENFORCEMENT.

03:31PM 3            THE COURT:  I SEE.

03:31PM 4         DOES THAT ASSIST YOU, SIR?

03:31PM 5            PROSPECTIVE JUROR:  YEAH, THAT COMPLETELY DOES

03:31PM 6      ANSWER MY QUESTIONS.

03:31PM 7            THE COURT:  ANY QUESTIONS, MR. DOWNEY?

03:31PM 8            MR. DOWNEY:  NO, YOUR HONOR.  THANK YOU.

03:31PM 9            THE COURT:  ANYTHING ELSE, MR. LEE, YOU WOULD LIKE

03:31PM 10     US TO KNOW?

03:31PM 11           PROSPECTIVE JUROR:  NO.

03:31PM 12           THE COURT:  DO YOU HAVE ANY QUESTIONS FOR ME OR ANY

03:31PM 13     QUESTIONS I CAN HELP YOU WITH?

03:31PM 14           PROSPECTIVE JUROR:  NO.

03:31PM 15           THE COURT:  THANK YOU VERY MUCH, MR. LEE.

03:31PM 16        IF YOU WOULD GO OUTSIDE, MR. LEE, AND I THINK MS. GROGAN

03:32PM 17     IS OUTSIDE THERE.  IF YOU COULD ASK HER TO COME IN.

03:32PM 18           PROSPECTIVE JUROR:  NO PROBLEM.

03:32PM 19           THE COURT:  THANK YOU.

03:32PM 20        (ONLY PROSPECTIVE JUROR GROGAN PRESENT.)

03:32PM 21           THE COURT:  HI, MS. GROGAN.

03:32PM 22           PROSPECTIVE JUROR:  YEAH.

03:32PM 23           THE COURT:  HI, WELCOME BACK.  NO, NOT YOU.

03:32PM 24     MS. GROGAN.

03:32PM 25        I'M SORRY I'M SPEAKING TO SOMEONE ELSE.

03:32PM 1     WE PANTED TO FOLLOW UP, AND THIS IS ABOUT YOUR COMMENTS

03:32PM 2   EARLIER, I THINK.  YOU TOLD US, AND I THINK YOU JUST TOLD

03:32PM 3   MR. DOWNEY THAT YOU READ THIS BOOK.

03:32PM 4         PROSPECTIVE JUROR:  CORRECT, YES.

03:32PM 5         THE COURT:  AND THANK YOU FOR CORRECTING YOUR

03:32PM 6   ANSWER.  YOU HAVE SOME OPINIONS ABOUT THAT.

03:32PM 7     SO MAY I FOLLOW UP WITH THAT?  YOU'VE READ THE BOOK.  YOU

03:32PM 8   AND I TALKED ABOUT UNREADING, YOU CAN'T DO THAT.

03:32PM 9     SO WHAT -- TELL ME ABOUT THE OPINIONS YOU HAVE AND HOW

03:33PM 10  THOSE WILL IMPACT, IF AT ALL, YOUR ABILITY TO BE FAIR AND

03:33PM 11  IMPARTIAL AS A JUROR.

03:33PM 12        PROSPECTIVE JUROR:  GOTCHA.  SO I THINK WHAT I WAS

03:33PM 13  TRYING TO CLARIFY WAS YOUR QUESTION WAS AT THE TIME, DID I HAVE

03:33PM 14  ANY OPINIONS?

03:33PM 15    I BELIEVE THAT THE ANSWER IS AFTER REFLECTION, YES, I DID

03:33PM 16  HAVE SOME OPINIONS.

03:33PM 17    I WORK AT A COMPANY NOW WITH A FEMALE CEO AND IN, LIKE, A

03:33PM 18  HEALTH CARE RELATED FIELD, EVEN THOUGH I'M AN ENGINEERING

03:33PM 19  MANAGER.  SO IN SILICON VALLEY.

03:33PM 20    SO I THINK THERE WAS SOME AMOUNT OF DISAPPOINTMENT THAT I

03:33PM 21  WAS TRYING TO CONVEY THE GENERALLY SPEAKING LIKE, OH, THERE'S

03:33PM 22  NOT THAT MANY WOMEN THAT GET TO, YOU KNOW, BECOME CEO OF A HIGH

03:33PM 23  POWERED COMPANY, SO DISAPPOINTMENT IN RESPONSE TO WHAT HAPPENED

03:33PM 24  IN THE BOOK.

03:33PM 25        THE COURT:  I SEE.  OKAY.

03:33PM  1          THAT WAS IN RESPONSE TO MR. DOWNEY'S QUESTION.

03:33PM  2               PROSPECTIVE JUROR:  CORRECT, YES.

03:34PM  3               THE COURT:  MR. DOWNEY, DO YOU HAVE ANY FOLLOW-UP

03:34PM  4     QUESTIONS?

03:34PM  5               MR. DOWNEY:  NO, I DON'T, YOUR HONOR.

03:34PM  6               THE COURT:  OKAY.  MR. SCHENK, YOUR TEAM?

03:34PM  7               MR. SCHENK:  NO, I DON'T.

03:34PM  8               THE COURT:  THANK YOU, MS. GROGAN.  I APPRECIATE IT.

03:34PM  9               PROSPECTIVE JUROR:  NO PROBLEM.

03:34PM  10              THE COURT:  YOU KNOW, MS. GROGAN, I THINK

03:34PM  11    MS. HERNANDEZ IS OUTSIDE, AND IF YOU COULD ASK HER TO COME IN I

03:34PM  12    WOULD BE GRATEFUL.  THANK YOU.

03:34PM  13              PROSPECTIVE JUROR:  THANK YOU.

03:34PM  14              THE CLERK:  JUROR NUMBER 42.

03:34PM  15         (ONLY PROSPECTIVE JUROR HERNANDEZ PRESENT.)

03:34PM  16              THE COURT:  MS. HERNANDEZ, HI.

03:34PM  17              PROSPECTIVE JUROR:  YES.

03:34PM  18              THE COURT:  WHY DON'T YOU COME TO THE MICROPHONE

03:34PM  19    HERE.  YOU'RE JUROR NUMBER 42.

03:34PM  20              PROSPECTIVE JUROR:  YES.

03:34PM  21              THE COURT:  AT THE BREAK YOU INDICATED YOU WANTED TO

03:34PM  22    TALK TO US PRIVATELY.  SO WHAT WOULD YOU LIKE US TO KNOW?

03:34PM  23              PROSPECTIVE JUROR:  SO IT WAS JUST, LIKE, THE

03:34PM  24    DOMESTIC VIOLENCE.  MY PARENTS -- MY DAD USED TO DRINK A LOT

03:34PM  25    AND MY PARENTS FOUGHT A LOT, AND IT DID GET PHYSICAL, LIKE,

03:35PM  1     SOMETIMES.  BUT HE -- WE ONLY GOT THE COPS CALLED ONCE AND THAT

03:35PM  2     WAS JUST BECAUSE, LIKE, MY COUSIN CALLED HIM SO WE CAN GET SOME

03:35PM  3     OF OUR THINGS AND LEAVE.

03:35PM  4         BUT I TRY TO BLOCK THAT OUT BECAUSE HE DID PASS AWAY FOUR

03:35PM  5     YEARS AGO BECAUSE OF DRINKING A LOT.

03:35PM  6         THAT'S ABOUT IT.

03:35PM  7             THE COURT:  THANK YOU.  THANK YOU FOR SHARING.  I

03:35PM  8     KNOW IT'S DIFFICULT TO TALK ABOUT THESE THINGS AND I APPRECIATE

03:35PM  9     YOU SHARING THAT.

03:35PM 10         WERE YOU -- MAY I ASK YOU, WERE YOU EVER INVOLVED IN ANY

03:35PM 11     LEGAL PROCEEDINGS REGARDING THOSE INCIDENTS?  DID YOU EVER GO

03:35PM 12     TO COURT OR ANY OF THAT?

03:35PM 13             PROSPECTIVE JUROR:  NO.

03:35PM 14             THE COURT:  CAN YOU TELL US, DID YOU OR ANYONE IN

03:35PM 15     YOUR FAMILY RECEIVE ANY COUNSELLING, THERAPY, OR ANY OTHER

03:35PM 16     SERVICES?

03:35PM 17             PROSPECTIVE JUROR:  NO, NONE OF US.

03:35PM 18             THE COURT:  OKAY.  IS THERE ANYTHING ABOUT THAT

03:35PM 19     EXPERIENCE THAT YOU THINK WILL AFFECT YOUR ABILITY TO BE A FAIR

03:35PM 20     JUROR IN THIS CASE?

03:35PM 21             PROSPECTIVE JUROR:  MAYBE JUST A LITTLE BECAUSE I'M

03:35PM 22     AGAINST IT SINCE WE WENT THROUGH IT AND EVERYTHING, BUT --

03:36PM 23             THE COURT:  SURE.  OKAY.

03:36PM 24             PROSPECTIVE JUROR:  YEAH.

03:36PM 25             THE COURT:  I DON'T KNOW -- I ASK THOSE QUESTIONS AS

03:36PM  1      A GENERALITY.  I DON'T KNOW, I CAN'T TELL YOU WHAT EVIDENCE IS

03:36PM  2   GOING TO BE IN THE CASE.  I JUST DON'T KNOW.

03:36PM  3      BUT THOSE ARE JUST SOME OF MY GENERAL QUESTIONS THAT I ASK

03:36PM  4   ABOUT A CASE.

03:36PM  5      SO, MR. SCHENK, ANY QUESTIONS?

03:36PM  6          MR. SCHENK:  NOTHING FURTHER.  THANK YOU.

03:36PM  7          THE COURT:  MR. DOWNEY?

03:36PM  8          MR. DOWNEY:  NOTHING, YOUR HONOR, NOT ON THAT

03:36PM  9   SUBJECT.

03:36PM  10      I DID JUST WANT TO ASK A QUESTION ABOUT LANGUAGE IF I

03:36PM  11   MIGHT.  I BELIEVE THIS JUROR SEEMS PERFECTLY CAPABLE TO ME, BUT

03:36PM  12   SHE HAD CHECKED --

03:36PM  13          THE COURT:  I SAW THAT.

03:36PM  14      MS. HERNANDEZ, I SAW THAT YOU PUT ON THE QUESTIONNAIRE

03:36PM  15   LANGUAGE, AND YOU SAID THERE ARE SOME THINGS THAT YOU DIDN'T

03:36PM  16   QUITE UNDERSTAND THE QUESTIONS, SOME OF THE QUESTIONS, AND I

03:36PM  17   THINK YOUR LAST QUESTION WAS, YOU KNOW, SOME OF THESE I DIDN'T

03:36PM  18   QUITE UNDERSTAND.  I TRIED THE BEST I COULD.

03:36PM  19      THANK YOU FOR THAT.  THAT'S WHAT WE ASKED FOR.

03:36PM  20      LET ME APOLOGIZE FOR THE QUESTIONNAIRE.  SOMETIMES LAWYERS

03:36PM  21   AND JUDGES PUT QUESTIONS TOGETHER WITHOUT THINKING ABOUT HOW

03:37PM  22   SOMEONE -- AND WE THINK, OH, THIS IS A GREAT QUESTION, BUT WE

03:37PM  23   DON'T REALIZE HOW SOMEONE, THE LISTENER, WOULD ACTUALLY LOOK AT

03:37PM  24   IT.

03:37PM  25      THAT'S HOW I TOOK YOUR ANSWER.  I HAVE YOUR QUESTIONNAIRE

03:37PM 1    HERE.

03:37PM 2                PROSPECTIVE JUROR:  YEAH.  WELL, I JUST, LIKE, WHEN

03:37PM 3    I WAS IN SCHOOL AND I HAD AN IEP, AND SO I TOOK A LONGER TIME

03:37PM 4    TO PROCESS THINGS THAT I'M TOLD, AND THAT'S JUST ABOUT IT.

03:37PM 5                THE COURT:  I SEE.  UH-HUH.  OKAY.  YOU WENT TO

03:37PM 6    HOMESTEAD HIGH SCHOOL?

03:37PM 7                PROSPECTIVE JUROR:  YES.

03:37PM 8                THE COURT:  THAT'S A CALIFORNIA DISTINGUISHED HIGH

03:37PM 9    SCHOOL.

03:37PM 10               PROSPECTIVE JUROR:  YES.

03:37PM 11               THE COURT:  AND THAT'S ONE OF THE BEST HIGH SCHOOLS

03:37PM 12   IN THE STATE.

03:37PM 13               PROSPECTIVE JUROR:  YES.

03:37PM 14               THE COURT:  AND YOU HAVE A DIPLOMA FROM THAT HIGH

03:37PM 15   SCHOOL.

03:37PM 16               PROSPECTIVE JUROR:  YES, I GRADUATED LAST YEAR.

03:37PM 17               THE COURT:  GREAT.  AND THEY'RE THE MUSTANGS, RIGHT?

03:37PM 18               PROSPECTIVE JUROR:  THE MUSTANGS.

03:38PM 19               THE COURT:  THAT'S RIGHT.  AND THEY USUALLY HAVE

03:38PM 20   GOOD FOOTBALL TEAMS AND BASKETBALL TEAMS AND THEY HAVE HIGH

03:38PM 21   ACADEMICS.

03:38PM 22               PROSPECTIVE JUROR:  UH-HUH, THEY DO.

03:38PM 23               THE COURT:  WELL, CONGRATULATIONS ON THAT.

03:38PM 24               PROSPECTIVE JUROR:  THANK YOU.

03:38PM 25               THE COURT:  ANYTHING ELSE YOU WOULD LIKE US TO KNOW?

| | | |
|---|---|---|
| 03:38PM | 1 | PROSPECTIVE JUROR: JUST ALSO LIKE TWO DAYS. ON |
| 03:38PM | 2 | SEPTEMBER 14TH I HAVE AN ORTHODONTIST APPOINTMENT THAT WOULD |
| 03:38PM | 3 | AFFECT ME COMING HERE, AND ALSO IN NOVEMBER, I THINK THE 4TH OR |
| 03:38PM | 4 | THE 5TH I HAVE AN APPOINTMENT, I THINK A DOCTOR'S APPOINTMENT. |
| 03:38PM | 5 | THE COURT: MS. HERNANDEZ, DO YOU THINK THOSE ARE |
| 03:38PM | 6 | APPOINTMENTS YOU COULD CHANGE IF YOU NEEDED TO, OR CHANGE THE |
| 03:38PM | 7 | TIMING? YOU HEARD ME SAY I HOPE WE CAN FINISH AT 2:00 O'CLOCK, |
| 03:38PM | 8 | AND I'LL BE CANDID, THERE MAY BE DAYS THAT WE GO UNTIL |
| 03:38PM | 9 | 3:00 O'CLOCK. I THOUGHT WE WOULD BE DONE BY 2:00 O'CLOCK TODAY |
| 03:38PM | 10 | AND IT'S CLOSE TO 4:00. |
| 03:38PM | 11 | BUT THOSE APPOINTMENTS, ARE THEY SOMETHING THAT YOU THINK |
| 03:38PM | 12 | YOU MAYBE CAN GET A DIFFERENT TIME ON IF YOU HAD ENOUGH NOTICE? |
| 03:38PM | 13 | PROSPECTIVE JUROR: PROBABLY NOT THE ORTHODONTIST |
| 03:39PM | 14 | BECAUSE I'M SUPPOSED TO GET OFF MY BRACES, AND THEY'RE REALLY |
| 03:39PM | 15 | LIKE STRICT ON THE TIMING AND STUFF. |
| 03:39PM | 16 | THE COURT: YEAH, I UNDERSTAND THAT. |
| 03:39PM | 17 | PROSPECTIVE JUROR: THEY HAVE BOOKED EVERYONE ELSE. |
| 03:39PM | 18 | THE COURT: RIGHT. WHAT TIME IS YOUR APPOINTMENT? |
| 03:39PM | 19 | PROSPECTIVE JUROR: AT 11:00 IN THE MORNING? |
| 03:39PM | 20 | THE COURT: AND THAT'S ON WHAT DAY? |
| 03:39PM | 21 | PROSPECTIVE JUROR: I THINK TUESDAY, SEPTEMBER 14TH. |
| 03:39PM | 22 | THE COURT: 14TH, OKAY, AT 11:00. THANK YOU FOR |
| 03:39PM | 23 | LETTING US KNOW. |
| 03:39PM | 24 | DO YOU KNOW THE LENGTH OF THAT APPOINTMENT? |
| 03:39PM | 25 | PROSPECTIVE JUROR: I'M NOT SURE. SOMETIMES THEY |

| | | |
|---|---|---|
| 03:39PM | 1 | TAKE A WHILE TO LIKE EVEN JUST SIT ME IN THE ROOM, SO I REALLY |
| 03:39PM | 2 | WOULDN'T KNOW. |
| 03:39PM | 3 | THE COURT:  IS IT AN HOUR APPOINTMENT?  IS IT AN ALL |
| 03:39PM | 4 | DAY APPOINTMENT? |
| 03:39PM | 5 | PROSPECTIVE JUROR:  NO.  PROBABLY AT MOST JUST AN |
| 03:39PM | 6 | HOUR, AN HOUR AND A HALF OR TWO MAYBE. |
| 03:39PM | 7 | THE COURT:  I SEE.  ALL RIGHT.  THANK YOU. |
| 03:39PM | 8 | PROSPECTIVE JUROR:  UH-HUH. |
| 03:39PM | 9 | THE COURT:  ANY QUESTIONS FROM COUNSEL ABOUT THAT? |
| 03:39PM | 10 | MR. SCHENK:  NO. |
| 03:39PM | 11 | MR. DOWNEY:  NO. |
| 03:39PM | 12 | THE COURT:  THANK YOU VERY MUCH, MS. HERNANDEZ. |
| 03:39PM | 13 | PROSPECTIVE JUROR:  THANK YOU. |
| 03:39PM | 14 | THE COURT:  YOU'RE WELCOME. |
| 03:39PM | 15 | (NO PROSPECTIVE JURORS PRESENT.) |
| 03:39PM | 16 | THE COURT:  SHOULD WE BRING OUR PANEL IN NOW? |
| 03:39PM | 17 | THE CLERK:  DID YOU WANT TO SPEAK TO MR. SINGH WHO |
| 03:40PM | 18 | APPROACHED ME? |
| 03:40PM | 19 | THE COURT:  NO, I DON'T.  WE'RE FINE. |
| 03:40PM | 20 | (PROSPECTIVE PANEL IN AT 3:40 P.M.) |
| 03:41PM | 21 | THE COURT:  PLEASE BE SEATED.  THANK YOU AGAIN FOR |
| 03:41PM | 22 | YOUR COURTESY. |
| 03:41PM | 23 | THE RECORD SHOULD REFLECT THAT ALL PARTIES PREVIOUSLY |
| 03:41PM | 24 | PRESENT ARE PRESENT ONCE AGAIN.  OUR JURY, PROSPECTIVE JURY |
| 03:41PM | 25 | PANEL ARE PRESENT. |

03:41PM  1          MR. DOWNEY FINISHED HIS QUESTIONS.

03:42PM  2          ANY FURTHER QUESTIONS FOR THE PANEL, MR. DOWNEY?

03:42PM  3              MR. DOWNEY:  NO, YOUR HONOR.

03:42PM  4              THE COURT:  MR. SCHENK, ANY FURTHER QUESTIONS FOR

03:42PM  5      THE PANEL?

03:42PM  6              MR. SCHENK:  NO, YOUR HONOR.

03:42PM  7              THE COURT:  I FAILED -- I'LL TAKE TWO MINUTES TO

03:42PM  8      TALK ABOUT ALTERNATE JURY SERVICE.  I THINK I TALKED TO YOU

03:42PM  9      ABOUT ALTERNATES.  WE'RE GOING TO SELECT FIVE ALTERNATES.

03:42PM 10          THE ALTERNATES, YOU HEARD ME SAY THEY'LL SIT AS JURORS IN

03:42PM 11      THE CASE, THROUGHOUT THE CASE.  THEY WILL REPLACE THE

03:42PM 12      DELIBERATING JURORS IF THE NEED ARISES.  IF A SITTING JUROR

03:42PM 13      CANNOT CONTINUE, OR IF A SITTING JUROR CANNOT CONTINUE DURING

03:42PM 14      THE EVIDENCE, THAT ALTERNATE WILL REPLACE THAT JUROR, AND THIS

03:42PM 15      IS AN IMPORTANT FUNCTION.

03:42PM 16          LET ME ASK, DO ANY OF YOU HAVE ANY -- I'M TALKING TO THE

03:42PM 17      PANEL HERE -- ANYONE HAVE ANY QUESTION ABOUT WHAT ALTERNATE

03:42PM 18      JURY SERVICE IS?

03:42PM 19          DOES ANYONE FEEL THAT THAT IS SOMETHING THAT THEY COULD

03:42PM 20      NOT DO?

03:43PM 21          THANK YOU.  THAT'S A POSSIBILITY IN THE CASE, AND THIS IS

03:43PM 22      WHEN I REMIND PEOPLE ABOUT JUNE 2ND, 1925 WHEN WALLY PIPP

03:43PM 23      PLAYED FIRST BASE FOR THE YANKEES AND HE HAD A HEADACHE THAT

03:43PM 24      DAY AND HE COULDN'T CONTINUE.

03:43PM 25          AND THE MANAGER OF THAT TEAM, MILLER HUGGINS, REPLACED

03:43PM 1    HIM.  AND HE REPLACED HIM WITH A YOUNG MAN WHO JUST GRADUATED

03:43PM 2    FROM COLUMBIA UNIVERSITY.  HIS NAME WAS LOU GEHRIG.  MAYBE SOME

03:43PM 3    OF YOU HAVE HEARD OF LOU GEHRIG.

03:43PM 4        WALLY PIPP NEVER PLAYED OR STARTED FOR THE YANKEES AGAIN.

03:43PM 5    I THINK HE WAS TRADED TO CINCINNATI AFTERWARDS, AND LOU GEHRIG

03:43PM 6    WAS CALLED THE IRON HORSE, HE PLAYED 2130 CONSECUTIVE GAMES FOR

03:43PM 7    THE YANKEES, A RECORD THAT STOOD UNTIL I THINK 1995 WHEN SOME

03:43PM 8    KID CALLED CAL RIPKEN BROKE THE RECORD.

03:43PM 9        BUT THAT RECORD STOOD ALL OF THAT TIME.

03:44PM 10       I LIKE TO THINK OF ALTERNATE JURORS AS LOU GEHRIGS.  THEY

03:44PM 11   WILL STEP IN, THEY WILL DO THE JOB, AND DO A FANTASTIC JOB AS

03:44PM 12   AN ALTERNATE JUROR, AND THAT'S WHY MY REMINDER ABOUT

03:44PM 13   LOU GEHRIG, HE WAS A GREAT BASEBALL PLAYER.  I THINK HIS

03:44PM 14   BATTING AVERAGE WAS .340.  MR. SCHENK, YOU PROBABLY KNOW THAT,

03:44PM 15   OR I'M SURE COUNSEL KNOW THAT.

03:44PM 16       BUT IT'S AN IMPORTANT JOB TO BE AN ALTERNATE JUROR, AND

03:44PM 17   THAT'S WHY I REMIND YOU OF THIS OBLIGATION.

03:44PM 18       SO ANYONE HAVE ANY QUESTIONS ABOUT SERVICE AS AN ALTERNATE

03:44PM 19   JUROR?

03:44PM 20       I SEE NO HANDS.

03:44PM 21       LET ME ASK COUNSEL, MR. SCHENK, DO YOU PASS FOR CAUSE?

03:44PM 22           MR. SCHENK:  YES.

03:44PM 23           MR. DOWNEY:  WE DO HAVE SOME CHALLENGES FOR CAUSE,

03:44PM 24   YOUR HONOR.

03:44PM 25           THE COURT:  ALL RIGHT.  WE'LL TAKE THOSE UP AT

| | | |
|---|---|---|
| 03:44PM | 1 | SIDE-BAR, AND AS I SAID EARLIER THIS MORNING, OUR SIDE-BAR |
| 03:44PM | 2 | CONVERSATIONS WILL BE IN THE JURY ROOM. |
| 03:44PM | 3 | SO LET'S DO THAT. |
| 03:45PM | 4 | LADIES AND GENTLEMEN, I'M GOING TO MEET WITH THESE LAWYERS |
| 03:45PM | 5 | PRIVATELY IN OUR JURY ROOM BEHIND ME.  I'M GOING TO LEAVE THE |
| 03:45PM | 6 | COURTROOM.  YOU CAN STAY HERE.  YOU CAN STAND AND STRETCH. |
| 03:45PM | 7 | I DON'T KNOW HOW LONG THIS WILL TAKE, BUT YOU CAN STAND |
| 03:45PM | 8 | AND STRETCH FOR A MOMENT IF YOU'D LIKE.  I HOPE WE'RE NOT GOING |
| 03:45PM | 9 | TO TAKE TOO LONG, BUT WE'LL TAKE WHATEVER TIME WE NEED. |
| 03:45PM | 10 | BUT YOU CAN STAND HERE. |
| 03:45PM | 11 | WHILE WE'RE GONE, YOU'RE NOT TO DISCUSS THE CASE AMONGST |
| 03:45PM | 12 | YOURSELVES, WITH ANYONE.  YOU'RE NOT TO LOOK AT ANYTHING ON |
| 03:45PM | 13 | YOUR PHONES OR OTHER NEWS OR ANYTHING ABOUT THIS CASE. |
| 03:45PM | 14 | AND WE'LL BE BACK IN JUST A MOMENT. |
| 03:45PM | 15 | SO, COUNSEL, MS. KRATZMANN WILL SHOW YOU HOW TO GET TO THE |
| 03:45PM | 16 | JURY ROOM. |
| 03:45PM | 17 | THE CLERK:  YES, YOUR HONOR. |
| 03:45PM | 18 | THE COURT:  AND I'LL MEET YOU THERE. |
| 04:48PM | 19 | (SIDE-BAR CONFERENCE ON THE RECORD.) |
| 04:48PM | 20 | THE COURT:  WE'RE ON THE RECORD.  WE'RE AT SIDE-BAR, |
| 04:48PM | 21 | WHICH OUR SIDE-BARS ARE IN THE JURY ROOM. |
| 04:48PM | 22 | ALL COUNSEL ARE PRESENT.  MS. HOLMES IS NOT PRESENT.  SHE |
| 04:48PM | 23 | HAS WAIVED HER APPEARANCE FOR THESE SIDE-BAR CONFERENCES. |
| 04:48PM | 24 | MR. DOWNEY, YOU HAVE SOME COMMENTS? |
| 04:48PM | 25 | MR. DOWNEY:  YOUR HONOR, I CAN JUST GIVE YOU THE |

04:48PM  1    NUMBERS OF THE JURORS ON WHOM WE EITHER HAVE A CAUSE CHALLENGE

04:48PM  2    OR SUGGEST BASED ON A HARDSHIP SITUATION THAT THEY MENTIONED TO

04:48PM  3    BE EXCUSED.

04:48PM  4            THE COURT:  OKAY.

04:48PM  5            MR. DOWNEY:  THAT WOULD BE 1, 11, 14, 26, 46, 49,

04:48PM  6    63, 94, 81, AND 95.

04:48PM  7            THE COURT:  OKAY.  DO YOU WANT TO GO THROUGH THOSE

04:48PM  8    WITH ME AS TO THE REASONS?

04:48PM  9        SO LET'S START WITH 1.

04:48PM  10           MR. DOWNEY:  YOUR HONOR, JUROR 1 IS A JUROR WHO HAS

04:48PM  11   HAD EXPOSURE TO, BY MY COUNT GIVEN THE LENGTH OF THE MEDIA,

04:48PM  12   PROBABLY 20 HOURS OF NEGATIVE MEDIA ABOUT THE DEFENDANT; HE'S

04:48PM  13   CONSUMED A BOOK; HE'S WATCHED SEVERAL OF THE FULL-LENGTH

04:48PM  14   PROGRAMS ABOUT THE SITUATION AT THERANOS.  THEY INCLUDE "ABC

04:48PM  15   NEWS'S 20/20," "60 MINUTES" AND A TED TALK GIVEN BY A WITNESS

04:48PM  16   IN THE CASE, ERICA CHEUNG, C-H-E-U-N-G.

04:48PM  17       HE ACKNOWLEDGED IN CONNECTION WITH FILLING OUT THE

04:48PM  18   QUESTIONNAIRE THAT HE HAD A QUESTION IN HIS MIND ABOUT WHETHER

04:48PM  19   HE COULD BE FAIR, OBJECTIVE, AND IMPARTIAL IN THE CASE.

04:48PM  20       HE ACKNOWLEDGED IN RESPONSE TO SOME OF OUR DISCUSSIONS

04:48PM  21   THAT HE HAD OPINIONS RELATED TO THERANOS AND TO THE DEFENDANT.

04:48PM  22       SO WE WOULD ASK THAT HE BE DISMISSED FOR CAUSE.

04:48PM  23           THE COURT:  MR. SCHENK?

04:48PM  24           MR. SCHENK:  YOUR HONOR, MR. DOWNEY DID NOT ASK FOR

04:48PM  25   JUROR 31 TO BE EXCUSED FOR CAUSE, MS. GROGAN.  SHE READ THE

04:48PM   1    BOOK.

04:48PM   2         I'M A LITTLE BIT CONCERNED ABOUT A DOUBLE STANDARD HERE.

04:48PM   3    I CAME INTO THIS ROOM PREPARED TO TELL YOUR HONOR THAT I THINK

04:48PM   4    PEOPLE WHO READ THE BOOK I'M NOW CONVINCED SHOULDN'T BE ON THE

04:48PM   5    JURY.

04:48PM   6         I APPRECIATE THAT TO QUESTION 39 MANY OF THEM SAID I CAN

04:48PM   7    BE FAIR.  I THINK THAT THEY MEAN IT WHEN THEY SAY THAT, BUT

04:48PM   8    HONESTLY, I LISTENED TO MS. GROGAN WHO GOT UP AND SAID, "I'M

04:48PM   9    SURPRISED THAT I WAS ALLOWED TO BE HERE," AND THAT RANG TRUE TO

04:48PM  10    ME.

04:48PM  11         I WANTED TO WALK INTO THIS ROOM, AND I'M NOT GOING TO BACK

04:48PM  12    AWAY FROM YOU, AND TELLING YOU THAT 31 AND 63 BY MY COUNT,

04:48PM  13    THOSE ARE THE ONES WHO READ THE BOOK IN THIS GROUP, THEY SHOULD

04:48PM  14    BE EXCUSED.

04:48PM  15         I'M NOT SURE WHY THE DEFENSE IS NOT ASKING FOR 31 TO BE

04:48PM  16    EXCUSED.

04:48PM  17              THE COURT:  MR. DOWNEY?

04:48PM  18              MR. DOWNEY:  I THINK IF WE CAN STIPULATE TO JURORS

04:48PM  19    WHO HAVE NOT ONLY READ THE BOOK BUT BEEN EXPOSED TO COMPARABLE

04:48PM  20    LONG-FORM AND COMMENTARY ON THERANOS AND THE SITUATION, WE

04:48PM  21    COULD PROBABLY GET TO SOME AGREEMENT THERE.  I JUDGED JUROR 31

04:48PM  22    TO BE THE MOST CONSENSUS JUROR IN TERMS OF MAKING COMMENTS AS

04:48PM  23    TO WHEN THE BIAS AROSE.  SHE WAS CONCERNED THAT SHE HAD NOT

04:48PM  24    BEEN CANDID IN THAT REGARD.

04:48PM  25              BUT I THOUGHT I HEARD HER TO SAY THAT SHE WOULD PUT IT

04:48PM  1    ASIDE AT THAT TIME.

04:48PM  2        SO I THINK I -- I THOUGHT SHE WAS PARSING THINGS BETWEEN

04:48PM  3    HER OPINION AT THE TIME AND LATER IN A WAY THAT WAS

04:48PM  4    SATISFACTORY TO US.

04:48PM  5        BUT I CERTAINLY WOULD -- IF WE WERE TO INCLUDE NOT ONLY

04:48PM  6    THE BOOK BUT COMPARABLE CONTENT OF THE BOOK, THEN THAT'S

04:48PM  7    CERTAINLY AN APPROACH THAT WE WOULD BE WILLING TO TRY TO

04:48PM  8    STIPULATE WITH THE GOVERNMENT ON.

04:48PM  9        THE COURT:  MR. SCHENK?

04:48PM 10        MR. SCHENK:  YOUR HONOR, MR. RISHI GAVE US THE

04:48PM 11   LANGUAGE THAT WE'RE NOW USING TO DISCUSS THIS PERSON.  HE WAS

04:48PM 12   THE ONE WHO GAVE US THE PHRASE TODAY INFORMATION ATTRIBUTION.

04:48PM 13        SO IF THE DIFFERENCE BETWEEN MS. GROGAN AND MR. RISHI IS

04:48PM 14   HOW MS. GROGAN CONVINCED MR. DOWNEY THAT SHE WAS CAPABLE OF

04:48PM 15   INFORMATION ATTRIBUTION, THAT IS, DETERMINING WHEN SHE LEARNED

04:48PM 16   SOMETHING AND KEEPING THAT IN ONE SEGMENT IN HER MIND BUT NOT

04:48PM 17   OTHER FACTS, I THINK MR. RISHI FITS INTO THAT CATEGORY THE SAME

04:48PM 18   WAY, AT LEAST BY THE WAY THAT I HEARD HIS COMMENTS.

04:48PM 19        TO MORE DIRECTLY ANSWER MR. DOWNEY'S QUESTION, THOUGH, THE

04:48PM 20   GOVERNMENT WILL NOT AGREE THAT AS A WHOLE CATEGORY LONG FORM

04:48PM 21   SHOULD BE -- IF SOMEONE HAS CONSUMED LONG FORM, THEY SHOULD BE

04:48PM 22   EXCUSED.

04:48PM 23        IN MY VIEW, IN THE GOVERNMENT'S VIEW, I DRAW A LINE

04:48PM 24   BETWEEN SEEING "60 MINUTES" HOWEVER MANY MONTHS OR YEARS AGO

04:48PM 25   AND NOT RECALLING VERY MUCH OF IT AND SAYING THAT THEY CAN BE

04:48PM 1   FAIR.  I THINK THAT IS SUBSTANTIVELY DIFFERENT FROM SOMEONE

04:48PM 2   WHO, AS I THINK EITHER MR. DOWNEY OR THE JUROR SAID, MAYBE IT

04:48PM 3   TOOK ME A WEEK TO READ THE BOOK.  THAT'S A LONG TIME TO SPEND

04:48PM 4   WITH THIS MATERIAL, AND I FOUND THE COMMENT THAT MS. GROGAN

04:48PM 5   MADE PRETTY APPROPRIATE, "I'M SURPRISED I COULD MAKE IT THIS

04:48PM 6   FAR HAVING READ THE BOOK."

04:48PM 7       HONESTLY I'M TRYING TO BE FAIR TO SAY IF YOU'VE READ THE

04:48PM 8   BOOK, I DON'T THINK YOU SHOULD BE ON THE JURY.  BUT I DON'T

04:48PM 9   THINK THEY'RE AROUND LONG FORM.

04:48PM 10          THE COURT:  I APPRECIATE, MR. SCHENK, YOUR

04:48PM 11  SUGGESTION AND AN OFFER THAT EVERYONE WHO HAS READ THE BOOK

04:48PM 12  LET'S JUST EXCUSE THEM AND BE DONE WITH THEM.

04:48PM 13      MR. RISHI DID GIVE US SOME GUIDANCE.  I THOUGHT HE WAS

04:48PM 14  VERY CANDID ABOUT WHAT HE SAID.  I THINK I TAKE HIS POINT IF

04:48PM 15  MS. GROGAN IS GOING, THEN MR. RISHI SHOULD GO, TOO, BECAUSE HE

04:48PM 16  READ THE BOOK AND NOTWITHSTANDING WHAT HE SAID AND MS. GROGAN

04:48PM 17  SAID, THEY READ THE BOOK.

04:48PM 18      AND TO -- IT SEEMS LIKE IT WOULD INURE TO THE FAIRNESS OF

04:48PM 19  THE TRIAL IF FOLKS WHO HAVE READ THE BOOK ARE NOT ON THE JURY,

04:48PM 20  THEN WE DON'T HAVE TO WORRY ABOUT INFECTION FROM ANYTHING THAT

04:48PM 21  MIGHT COME UP.

04:48PM 22          MR. DOWNEY:  WELL, YOUR HONOR, IT'S CERTAINLY THE

04:48PM 23  INDICATION THAT -- I'M PLEASED THAT THE GOVERNMENT RECOGNIZES

04:48PM 24  THE EXPOSURE TO AT LEAST SOME LONG-FORM CONTENT CAN LEAD TO

04:48PM 25  BIAS HERE, AND I THINK IF THAT IS THE CASE, THEN I THINK WE'RE

04:48PM   1    GOING TO BE ON A SLIPPERY SLOPE TOWARDS MY PROPOSAL.

04:48PM   2        I ACTUALLY THINK SOME OF THE VIDEO PRESENTATION IS MUCH

04:48PM   3    WORSE THAN SOMEONE WHO HAS SAT WITH THE ENTIRE BOOK.  IT IS

04:48PM   4    GENERALLY FRAMED AS A SHORT OPENING STATEMENT FOR THE

04:48PM   5    GOVERNMENT IN THIS CASE, AND I THINK THAT IF WE COULD, IF WE

04:48PM   6    COULD EXPAND IT TO THOSE CATEGORIES, I CERTAINLY WOULD BE

04:48PM   7    PLEASED TO AGREE TO THAT.

04:48PM   8        THAT BEING SAID, IF MR. SCHENK IS MOVING FOR CAUSE ON A

04:48PM   9    JUROR AND SO FORTH, I DON'T OPPOSE THAT.

04:48PM  10        THE COURT:  WELL, WHAT I HEARD MR. SCHENK SAY IS

04:48PM  11    THAT HE WOULD AGREE TO EXCUSE JUROR NUMBER 1, JUROR NUMBER 31,

04:48PM  12    AND JUROR NUMBER 61.

04:48PM  13        MR. SCHENK?

04:48PM  14            MR. SCHENK:  63.

04:48PM  15            THE COURT:  63.  THANK YOU.  THAT'S MR. RISHI?

04:48PM  16            MR. SCHENK:  YES, YOUR HONOR.

04:48PM  17            THE COURT:  DO YOU HAVE ANY OBJECTION TO THAT?

04:48PM  18            MR. DOWNEY:  I DON'T HAVE ANY OBJECTION TO THAT,

04:48PM  19    YOUR HONOR.

04:48PM  20            THE COURT:  AND THAT'S FOR CAUSE BECAUSE THEY'VE

04:48PM  21    READ THE BOOK, MR. SCHENK, AND YOU BELIEVE THAT AFFECTS AND

04:48PM  22    OTHERWISE IMPAIRS THEIR ABILITY TO BE FAIR AND IMPARTIAL?

04:48PM  23            MR. SCHENK:  YES, YOUR HONOR.

04:48PM  24            THE COURT:  ANY COMMENT ON THAT?

04:48PM  25            MR. DOWNEY:  NO, YOUR HONOR, NOT BEYOND WHAT I'VE

04:48PM  1     ALREADY SAID.

04:48PM  2          THE COURT:  OKAY.  WELL, THANK YOU.

04:48PM  3        ALL RIGHT.  LET ME -- I'M LOOKING AT MY NOTES AS TO THESE

04:48PM  4     PROSPECTIVE JURORS.  THEY DID READ THE BOOK.  THEY DID IN A

04:48PM  5     VARIETY WAYS TELL US ABOUT THE BOOK, THEY'VE TOLD US OBVIOUSLY

04:48PM  6     THE EFFECT OF THEM IN SOME WAYS, THEY HAVE EXPRESSED IN VARIOUS

04:48PM  7     DEGREES HOW THEY CAN PUT ASIDE THOSE FEELINGS AND ANY MEMORY

04:48PM  8     THAT THEY HAVE OF IT.

04:48PM  9        IT WOULD APPEAR THAT OUT OF AN ABUNDANCE OF CAUTION,

04:48PM  10    THOUGH, THAT THOSE JURORS SHOULD BE EXCUSED AT THIS TIME

04:48PM  11    BECAUSE OF THE FACT THAT THEY'VE READ THIS BOOK.  AS I

04:48PM  12    UNDERSTAND IT, THE BOOK DETAILS IN GREAT DETAIL THE HISTORY,

04:48PM  13    THE STORY OF THERANOS AS WELL AS MS. HOLMES, AND I THINK IT

04:48PM  14    COVERS MR. BALWANI AS WELL PERHAPS, AND THE RISK OF HAVING THAT

04:48PM  15    INFECT A JURY HERE IS SOMETHING THAT I WOULD LIKE TO AVOID.

04:48PM  16        SO WE'LL EXCUSE 1, 31, AND 63.

04:48PM  17        MR. DOWNEY, NUMBER 11?

04:48PM  18          MR. DOWNEY:  YOUR HONOR, I THINK THERE ARE A FEW

04:48PM  19    ISSUES IN CONNECTION WITH THIS JUROR.  FIRST OF ALL, I DON'T

04:48PM  20    KNOW WHAT THE COURT'S ATTITUDE WAS TOWARDS THE SCHEDULED TRAVEL

04:48PM  21    FOR THIS JUROR IN TERMS OF HARDSHIP.

04:48PM  22          THE COURT:  YES.  I THINK ON SEPTEMBER 8TH TO THE

04:48PM  23    15TH, I THINK.  IS THAT RIGHT?  I THINK THAT'S --

04:48PM  24          MR. DOWNEY:  THAT'S RIGHT.  AND ALSO ON OCTOBER 16TH

04:48PM  25    TO THE 19TH.

222

04:48PM   1              THE COURT:  DID THIS JUROR TELL US THAT THAT COULD

04:48PM   2      BE ADJUSTED?

04:48PM   3          (PAUSE IN PROCEEDINGS.)

04:48PM   4              MR. DOWNEY:  I'M HONESTLY NOT CERTAIN, YOUR HONOR.

04:48PM   5              THE COURT:  I KNOW ONE DID.

04:48PM   6              MR. DOWNEY:  ONE DID, YES.

04:48PM   7              MR. SCHENK:  MY RECOLLECTION IS THAT SHE SAID IF IT

04:48PM   8      HAD TO BE CANCELLED IT CAN BE.

04:48PM   9              THE COURT:  I SEE.  THANK YOU, MR. SCHENK.

04:48PM   10         I THINK SHE SAID THAT'S WHY I CAME TO SEE WHAT WAS GOING

04:48PM   11     TO HAPPEN, I THINK THAT'S WHAT SHE SAID.

04:48PM   12             MR. DOWNEY:  YES.

04:48PM   13             THE COURT:  RIGHT.  MR. SCHENK, ANY COMMENT ON JUROR

04:48PM   14     NUMBER 11?

04:48PM   15             MR. SCHENK:  JUST ONE MINUTE, YOUR HONOR.

04:48PM   16             THE COURT:  SURE.  PARAGRAPH.

04:48PM   17         (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

04:48PM   18             MR. SCHENK:  I DON'T THINK THAT SHE SHOULD BE KICKED

04:48PM   19     FOR CAUSE FOR THE VACATION.

04:48PM   20             THE COURT:  I TEND TO AGREE.  I DON'T THINK THAT'S A

04:48PM   21     CAUSE CHALLENGE.  A HARDSHIP PERHAPS.  BUT I DON'T THINK IT

04:48PM   22     FALLS INTO THE CATEGORY OF A CAUSE CHALLENGE.  IT'S -- I

04:48PM   23     SUPPOSE IT'S IN THE DISCRETION OF THE JUDGE WHETHER THE JUDGE

04:48PM   24     IS GOING TO BE KIND AND ALLOW HER TO DO THE VACATION OR WHETHER

04:48PM   25     SHE CAN RESCHEDULE.

04:48PM 1      SO I'M NOT GOING TO STRIKE HER FOR CAUSE.

04:48PM 2          MR. DOWNEY:  WELL, YOUR HONOR, I HAD MENTIONED THE

04:48PM 3   VACATIONS ONLY BECAUSE THEY WERE SUBJECT TO DISCUSSION.  WE

04:48PM 4   HAVE OTHER ISSUES WITH REGARD TO THIS JUROR, OTHER BASES FOR

04:48PM 5   CAUSE.

04:48PM 6          THE COURT:  WELL, I SHOULD KNOW THOSE.

04:48PM 7          MR. DOWNEY:  YOUR HONOR, THIS IS A JUROR WHO,

04:48PM 8   INSTEAD OF LISTENING TO "BAD BLOOD," LISTENED TO A MULTI HOUR

04:48PM 9   PODCAST THAT CONTAINS AUDIO INTERVIEWS WITH MANY OF THE SAME

04:48PM 10  WITNESSES WHO ARE DISCUSSED DURING, YOU KNOW, THE COURSE OF THE

04:48PM 11  BOOK "BAD BLOOD."  IT'S GOT A SLIGHTLY DIFFERENT FOCUS, BUT

04:48PM 12  IT'S FAIR TO SAY THAT IT'S HIGHLY INFLAMMATORY AND PREJUDICIAL

04:48PM 13  AS TO MS. HOLMES.

04:48PM 14     I THINK JUROR 11, MS. GRAY, ACKNOWLEDGED THAT DURING THE

04:48PM 15  COLLOQUY ABOUT THAT EXPOSURE.

04:48PM 16     I'M NOT CERTAIN THAT THERE IS ANY REAL REASON TO BELIEVE

04:48PM 17  THAT SHE CAN PUT ASIDE THOSE VIEWS IN MAKING A DETERMINATION,

04:48PM 18  AND I CERTAINLY THINK THAT IF WE HAVE A STANDARD WHICH IS THAT

04:48PM 19  READING THE BOOK SHOULD LEAD TO DISMISSAL, I THINK CERTAINLY

04:48PM 20  LISTENING TO A MULTI HOUR PODCAST SHOULD HAVE THE SAME EFFECT.

04:48PM 21          THE COURT:  MR. SCHENK?

04:48PM 22          MR. SCHENK:  YOUR HONOR, I THINK THIS ONE FALLS IN

04:48PM 23  THE MIDDLE.  THIS IS A HARDER ONE FOR THE COURT.

04:48PM 24     I THINK THE BOOK -- I DON'T WANT TO REVISIT WHAT I SAID,

04:48PM 25  BUT I THINK THE COURT MADE A RIGHT RULING AGREEING WITH THE

04:48PM   1    PARTIES AND RELIEVING JURORS FOR CAUSE WHO READ THE BOOK.

04:48PM   2        THE DOCUMENTARIES, SOME OF THE OTHER LONG FORM, I DON'T

04:48PM   3    KNOW THAT WE'RE GOING TO REACH AGREEMENT ON.  I DON'T THINK

04:48PM   4    THAT WATCHING ONE SEVERAL YEARS AGO WITH VERY LITTLE MEMORY OF

04:48PM   5    IT IS TANTAMOUNT TO A FOR CAUSE DISMISSAL.

04:48PM   6        THE PODCAST I THINK FALLS IN THE MIDDLE.

04:48PM   7        ONE REASON IT FALLS IN THE MIDDLE IS BECAUSE SOMEONE

04:48PM   8    DOESN'T PUT THE BOOK ON FOR YOU.  YOU PICK UP THE BOOK AND READ

04:48PM   9    IT.  IT SHOWS SOME INTEREST ON YOUR PART.

04:48PM  10        THIS JUROR SPECIFICALLY SAID HER HUSBAND PUT IT ON DURING

04:48PM  11    A CAR TRIP, DURING A FAMILY DRIVE.

04:48PM  12        SHE ALSO SAID SHE REMEMBERED VERY LITTLE ABOUT IT.  MY

04:48PM  13    RECOLLECTION IS THAT I THINK SHE SAID SHE REMEMBERED ONE

04:48PM  14    INTERVIEW FROM IT.

04:48PM  15        WHAT WE NEED TO BE CONCERNED ABOUT ISN'T THAT SHE LISTENED

04:48PM  16    TO THE PODCAST, IT'S DOES SHE THEY BRING IT INTO THE

04:48PM  17    DELIBERATION ROOM OR THE COURTROOM EACH DAY THE BIAS THAT CAME

04:48PM  18    WITH, IF WE ACCEPT THE FACT THAT BIAS CAME WITH THE PODCAST,

04:48PM  19    DOES SHE BRING THAT WITH HER?

04:48PM  20        WHAT WE HAVE IS A COUPLE PIECES OF EVIDENCE THAT SUGGESTS

04:48PM  21    SHE WON'T.  SHE WASN'T THE ONE WHO PUT IT ON, SO IT WASN'T A

04:48PM  22    SUBJECT MATTER LIKE MR. RISHI.  AND IT ISN'T VERY INTERESTING

04:48PM  23    TO HER THAT SHE WAS CONSUMING EVERYTHING THAT SHE COULD FIND.

04:48PM  24    THAT SEEMS TO BE A FACT THAT SUGGESTS THAT IT WAS MORE

04:48PM  25    BACKGROUND NOISE THAN RESEARCH, THAN SOMETHING THAT SHE WAS

04:48PM 1   DOING A DEEP DIVE INTO.

04:48PM 2       THE SECOND PIECE OF EVIDENCE THAT WE HAVE IS SHE SAID SHE

04:48PM 3   DOESN'T REMEMBER VERY MUCH FROM IT.  HER MEMORY OF IT IS

04:48PM 4   SIGNIFICANTLY LIMITED COMPARED TO SOMEONE WHO, LET'S SAY, PUT

04:48PM 5   IT ON THEMSELVES AND WAS INTERESTED IN CONSUMING IT.

04:48PM 6       HONESTLY, THOUGH, IT'S A CLOSE CAUSE.  I THINK IF YOU

04:48PM 7   SPEND 8 HOURS, 10 HOURS, WHATEVER IT WAS, LISTENING TO IT, I

04:48PM 8   APPRECIATE THE ARGUMENT THAT MR. DOWNEY IS MAKING.  IT'S

04:48PM 9   SUBSTANTIVELY DIFFERENT THAN LISTENING TO "BAD BLOOD" ON TAPE?

04:48PM 10  I DON'T KNOW.  I GAVE YOU TWO REASONS WHY IT MIGHT BE, BUT IT'S

04:48PM 11  A VERY HARD CALL.

04:48PM 12          THE COURT:  NO, NO.  I APPRECIATE THAT.  THANK YOU.

04:48PM 13      SHE SAID IT'S NOT ON MY MIND.  MY TAKE FROM HER

04:48PM 14  DESCRIBING THIS, AND I FAILED TO ASK HER HOW LONG THE TRIP WAS.

04:48PM 15  IT WAS A CAR TRIP.  SHE SAID IT WAS -- I THINK SHE DID SAY, I

04:48PM 16  THINK SHE USED THE PHRASE BACKGROUND NOISE OR IT WAS ON WHILE

04:48PM 17  SHE WAS DRIVING.

04:48PM 18      SHE DID REMEMBER THAT THERE WAS A NEGATIVE VIEW OF

04:48PM 19  MS. HOLMES, SHE DOES REMEMBER THAT FROM IT.

04:48PM 20      BUT SHE THEN SAID IT'S NOT ON MY MIND.  I THINK SHE SAID

04:48PM 21  THAT IN RESPONSE TO WHEN SHE DID THE QUESTIONNAIRE, IT WASN'T

04:48PM 22  ON HER MIND ABOUT IT.

04:48PM 23      YOU KNOW, THE THING ABOUT HAVING THE OPPORTUNITY TO

04:48PM 24  ACTUALLY SEE LIVE TESTIMONY, LIVE DISCUSSION WITH THE JURORS

04:48PM 25  HERE IN A LIVE SETTING ALLOWS US TO MEASURE IN GREATER DETAIL

04:48PM  1    THAN ON A TRANSCRIPT THE DEMEANOR, THE INFLECTIONS, THEIR

04:48PM  2    EMOTIONAL CUES THAT ARE RELEASED WHEN THEY ANSWER QUESTIONS.

04:48PM  3         IT SEEMS TO ME THAT SHE WAS SAYING YES TO THE QUESTION, I

04:48PM  4    REMEMBER THE QUESTION, IT WAS ON, BUT I DON'T REMEMBER MUCH

04:48PM  5    ABOUT IT.

04:48PM  6         BUT TO MR. SCHENK'S POINT, SHE REMEMBERED IT HAD A

04:48PM  7    NEGATIVE VIEW OF MS. HOLMES.  THAT PIECE STUCK.  AND I

04:48PM  8    APPRECIATE THAT IF THAT IS A CULMINATION OF ADDITIONAL

04:48PM  9    INFORMATION THAT SHE MAY HAVE RECEIVED IN THE COURSE OF PERHAPS

04:48PM 10    THIS TRIAL AND/OR, EXCUSE ME, IN THE COVERAGE OF THIS TRIAL,

04:48PM 11    THAT CERTAINLY WOULD GIVE CONCERN, AND I THINK SIMILAR CONCERNS

04:48PM 12    ABOUT READING THE BOOK, WHAT DOES THAT DO?

04:48PM 13         SOMEBODY -- TO YOUR POINT, MR. SCHENK, SOMEBODY READ THE

04:48PM 14    BOOK, THEY EITHER PURCHASED THE BOOK OR THEY SOMEHOW OBTAINED

04:48PM 15    IT AND THAT WAS A VOLITIONAL ACT TO BE DISTINGUISHED FROM BEING

04:48PM 16    AT THE MERCY OF YOUR HUSBAND'S DECISION TO THE RADIO, WHICH IT

04:48PM 17    SOUNDS LIKE THAT'S WHAT THIS WAS.

04:48PM 18         WELL, I'LL STRIKE HER FOR THAT REASON.

04:48PM 19         NUMBER 14 I THINK IS YOUR NEXT?

04:48PM 20              MR. DOWNEY:  IT IS, YOUR HONOR.

04:48PM 21              THE COURT:  THAT'S MR. CHUANG.

04:48PM 22              MR. DOWNEY:  THAT'S MR. CHUANG WHO YOUR HONOR HAD A

04:48PM 23    LONG COLLOQUY.

04:48PM 24         WHEN HE WAS HERE TEN DAYS AGO, MR. CHUANG, NOTE IN HIS

04:48PM 25    QUESTIONNAIRE HE MAY BE BIASSED AGAINST MS. HOLMES BECAUSE OF

04:48PM 1    PRIOR KNOWLEDGE OF THIS CASE, BECAUSE OF THE -- IN CONNECTION

04:48PM 2    WITH THE DOCUMENTARY.

04:48PM 3        HE ALSO INDICATED HE WATCHED THE VIDEO, HE ALSO CIRCLED

04:48PM 4    HAVING READ "BAD BLOOD" IN CONNECTION WITH HIS KNOWLEDGE OF THE

04:48PM 5    CASE, AND THEN, OF COURSE, ACKNOWLEDGED HIS BIAS.

04:48PM 6        I THINK, YOUR HONOR, WHEN HE WAS ORIGINALLY ASKED BY ME

04:48PM 7    THE QUESTION OF SORT OF HIS FAIRNESS TO JUDGE SOMETHING

04:48PM 8    RELATIVE TO HIS COMFORT LEVEL IF IT WERE A MATTER INVOLVING HIM

04:48PM 9    OR HIS ONLY FAMILY, HE ANSWERED HE WOULDN'T BE COMFORTABLE WITH

04:48PM 10   THAT.

04:48PM 11       I KNOW YOUR HONOR HAD A SUBSEQUENT COLLOQUY WITH HIM, BUT

04:48PM 12   I THINK THE ACKNOWLEDGEMENT THAT THE SENTIMENT IS IN HIS MIND

04:48PM 13   AND IT WOULD BE DIFFICULT TO REMOVE FROM IT MEANS THAT HE IS

04:48PM 14   SOMEONE WHO HAS TAKEN A REAL VIEW AWAY FROM CONSUMING THESE

04:48PM 15   MATERIALS.

04:48PM 16       IT ALSO SEEMS TO BE THE CASE, ALTHOUGH WE'RE NOT QUITE

04:48PM 17   SURE WHAT HE SAW OR READ, HE THINKS THAT THE VIDEO WAS A

04:48PM 18   SUMMARY OF THE CONTENT IN SOME WAY OF "BAD BLOOD."  SO

04:48PM 19   EFFECTIVELY HE'S CONSUMING THE SAME TYPE OF CONTENT.

04:48PM 20       SO I APPRECIATE YOUR HONOR'S EFFORTS TO ENGAGE IN A

04:48PM 21   REHABILITATION.  I DON'T THINK IT HAS CURED HIS PRIOR STATEMENT

04:48PM 22   OF BIAS OR THE BIAS THAT IS INHERENT IN HAVING LOOKED AT AND

04:48PM 23   RECALLED THE MATERIAL THAT HE WAS EXPOSED TO.

04:48PM 24       HE HAD A PRETTY CLEAR KNOWLEDGE OF WHAT WAS SAID IN THE

04:48PM 25   DOCUMENTARY.  HE SAID THAT HE HEARD FROM THE DOCUMENTARY THAT

04:48PM  1   MS. HOLMES KNEW THAT A NEW BLOOD TESTING METHOD WAS FRAUDULENT,

04:48PM  2   BUT THAT SHE CONTINUED TO RAISE MONEY FROM INVESTORS.  THAT'S

04:48PM  3   ALMOST WHAT THE GOVERNMENT WOULD LIKE TO SAY IN ITS OPENING

04:48PM  4   STATEMENT HERE.  IT SHOWS THE ADVOCACY NATURE OF THESE PIECES

04:48PM  5   THAT THESE JURORS HAVE BEEN EXPOSED TO, AND THEY RECALLED THEM.

04:48PM  6       SO I THINK HE SHOULD BE, HE SHOULD BE DISMISSED FOR CAUSE,

04:48PM  7   YOUR HONOR.

04:48PM  8           THE COURT:  WHAT DO WE DO WITH HIS STATEMENT WHERE

04:48PM  9   HE SAID UNDER OATH, "I CAN BE FAIR"?

04:48PM  10          MR. DOWNEY:  WELL, HE ALSO SAID UNDER OATH,

04:48PM  11  YOUR HONOR, THAT HE WOULD NOT THINK THAT IF IT WAS A MATTER

04:48PM  12  INVOLVING HIM OR HIS FAMILY THAT HE WOULD THINK THAT HE WOULD

04:48PM  13  BE THE IDEAL PERSON TO SERVE AS A JUROR.

04:48PM  14          THE COURT:  I HEAR THAT QUESTION AND IN JUST ABOUT

04:48PM  15  EVERY CASE AND IT'S ALWAYS A QUESTION THAT INTERESTS ME.  IT'S

04:48PM  16  A QUESTION THAT I THINK IS CONFUSING AND SOMETIMES UNFAIR TO

04:48PM  17  SAY, WELL, IF YOU WERE ON TRIAL, WOULD YOU WANT YOU AS A JUROR?

04:48PM  18      AND IT, IT -- SOMETIMES IT'S A DIFFICULT QUESTION, I

04:48PM  19  THINK, FOR A LAYPERSON TO ASK.  IT'S A PROBING ONE TO ASK CAN

04:48PM  20  YOU BE FAIR?  BUT I'M NOT SURE HE GRASPS THE TOTALITY OF THAT.

04:48PM  21      I TRIED TO FOLLOW UP WITH HIM, AND I PROBABLY DIDN'T DO

04:48PM  22  AS GOOD OF A JOB THAT YOU DID, MR. DOWNEY, TO ASK THE QUESTION,

04:48PM  23  BECAUSE I WAS TRYING TO SEE IF HE UNDERSTOOD IT IN A WAY.

04:48PM  24      ANYTHING, MR. SCHENK, ON THIS?

04:48PM  25          MR. SCHENK:  YES, A COUPLE OF THINGS.  ONE, IF HE

04:48PM 1    READ "BAD BLOOD," HE SHOULD BE EXCUSED FOR CAUSE.  HE DIDN'T

04:48PM 2    SAY HE READ "BAD BLOOD" TODAY.  HE CIRCLED IT AND MAYBE WE CAN

04:48PM 3    ASK HIM IF HE DID.

04:48PM 4        SECOND, YOUR HONOR ASKED HIM NOT JUST CAN YOU BE FAIR, BUT

04:48PM 5    DO YOU HAVE CERTAINTY ABOUT YOUR ABILITY TO BE FAIR, AND HE

04:48PM 6    SAID YES.

04:48PM 7        HE ALSO SAID THAT HE DID NOT HAVE FRESH MEMORIES ABOUT THE

04:48PM 8    DOCUMENTARY OR OTHER THINGS THAT HE CONSUMED.

04:48PM 9        I THINK THAT MAKES HIM SUBSTANTIVELY DIFFERENT THAN JURORS

04:48PM 10   WHO HAVE CONSUMED THE CONTENT THAT MR. DOWNEY HAS DESCRIBED AS

04:48PM 11   BIASSING AND STILL REMEMBERING, AND HAVE A LOT OF FRESH

04:48PM 12   MEMORIES ABOUT IT.

04:48PM 13       YOUR HONOR HAD A LENGTHY DIALOGUE ABOUT HIS ABILITY TO BE

04:48PM 14   FAIR, AND ON SOME OCCASIONS HE USED WORDS LIKE "I MAY" OR "I

04:48PM 15   THINK," AND YOUR HONOR FOLLOWED UP ON THOSE TO SEE IF THERE WAS

04:48PM 16   CERTAINTY RECOGNIZING THAT THERE MIGHT BE A HEDGE OR AN

04:48PM 17   EXPRESSION OF HESITATION.

04:48PM 18       AND WHAT I UNDERSTOOD MR. CHUANG TO BE SAYING IS THAT I

04:48PM 19   HAVE CERTAINTY ABOUT MY ABILITY TO BE FAIR.

04:48PM 20           THE COURT:  I THINK I, AS I DID WITH SEVERAL OF THE

04:48PM 21   PROSPECTIVE JURORS, I ASKED IF THEY COULD BE FAIR TO THE

04:48PM 22   GOVERNMENT, POINTING TO TABLES, AND THEN POINTING TO

04:48PM 23   MS. HOLMES, CAN YOU BE FAIR TO HER, AND I CAN'T REMEMBER IF

04:48PM 24   MR. CHUANG WAS ONE OF THOSE, BUT I THINK HE MAY HAVE BEEN.

04:48PM 25       LET'S DO THIS.  LET'S ASK IF HE READ THE BOOK.  AND THAT

04:48PM   1     WILL GIVE US GUIDANCE.

04:48PM   2              MR. DOWNEY:  YOUR HONOR, I JUST ALSO WANT TO REMIND

04:48PM   3     YOU THAT YOUR HONOR ASKED HIM ESSENTIALLY THE QUESTION ABOUT

04:48PM   4     WHETHER HE COULD BE FAIR REPEATEDLY, AND HE REPEATEDLY SAID

04:48PM   5     BEFORE FINALLY SAYING HE COULD BE FAIR, HE REPEATEDLY SAID HE

04:48PM   6     WOULD TRY.

04:48PM   7              THE COURT:  YES.

04:48PM   8              MR. DOWNEY:  AND THAT'S A FINE ANSWER FOR AN

04:48PM   9     INDIVIDUAL TO GIVE AND IT'S AN HONEST ANSWER, BUT IT DOESN'T

04:48PM  10     QUALIFY A PERSON TO SERVE AS A JUROR.

04:48PM  11        THE ISSUE IS NOT AN ISSUE ABOUT HIS FAIRNESS.  WE KNOW HE

04:48PM  12     HAS CONCERN ABOUT HIS FAIRNESS, AND WE KNOW WHY HE HAS THAT

04:48PM  13     CONCERN.  AND I THINK IN ASKING HIM ULTIMATELY WHETHER HE CAN

04:48PM  14     BE FAIR OR NOT, WE'RE REALLY ASKING HIM WHETHER HE'S A FAIR

04:48PM  15     PERSON AS OPPOSED TO LOOKING AT HIM AS SOMEONE WHO COMES IN

04:48PM  16     WITH SUBSTANTIAL KNOWLEDGE AND IS TRYING TO BE FAIR BUT IS

04:48PM  17     AFRAID THAT HE MIGHT HAVE A BIAS.

04:48PM  18              THE COURT:  WELL, I THINK THAT'S WHAT WE'VE DONE ALL

04:48PM  19     DAY TODAY IS TO PROBE THE BIASES OF THE JURORS AND TO ASK THEM

04:48PM  20     TO TEST THEMSELVES TO SEE IF THEY CAN BE FAIR.

04:48PM  21        PEOPLE HAVE TOLD US THAT THEY HAVE BIASES AND MANY OF THEM

04:48PM  22     HAVE SAID, YES, I CAN OVERCOME THEM AND HERE'S HOW I'LL DO

04:48PM  23     THAT.

04:48PM  24        MR. CHUANG IS ONE OF THOSE INDIVIDUALS WHO I THINK THE

04:48PM  25     PAPER WORD DOESN'T REFLECT, I THINK, HIS EMOTIONAL, I'LL CALL

04:48PM  1    IT, GROWTH AS A RESULT OF OUR CONVERSATIONS.

04:48PM  2         MY SENSE IS THAT HE WAS A LITTLE TIMID AT FIRST AND THEN

04:48PM  3    AS HIS ANSWERS BEGAN -- HE BECAME A LITTLE MORE ENGAGED WITH

04:48PM  4    YOU, AND THEN WITH MR. SCHENK, AND CERTAINLY WITH THE COURT

04:48PM  5    ABOUT HIS ANSWERS.

04:48PM  6         IT SEEMED TO ME THAT HIS DEMEANOR, HIS MANNERISM SEEMED TO

04:48PM  7    SUGGEST A GREATER COMFORT IN UNDERSTANDING THE CONCEPTS THAT WE

04:48PM  8    WERE, ALL OF US WERE DISCUSSING WITH HIM.

04:48PM  9         AND MAYBE THAT IS THE TRANSITION, AND MAYBE THAT'S THE

04:48PM 10    FORMATION TO THE ULTIMATE ANSWER WHERE HE SAID I CAN'T BE FAIR.

04:48PM 11         SO LET'S -- WE'RE GOING TO ASK HIM IF HE READ THE BOOK.

04:48PM 12         LET'S MOVE TO 26.

04:48PM 13              MR. DOWNEY:  26 IS ANOTHER INDIVIDUAL WHO IS

04:48PM 14    FAMILIAR WITH THERANOS FROM AN UNKNOWN NUMBER OF NEWS ARTICLES.

04:48PM 15    HE IDENTIFIED THAT IN QUESTION 40 IN THE QUESTIONNAIRE.  HE

04:48PM 16    ALSO ACKNOWLEDGED TO WATCHING THE ABC NEWS SPECIAL PROGRAM,

04:48PM 17    WHICH AGAIN WAS FULL OF PREJUDICIAL CONTENT TO MS. HOLMES.

04:48PM 18         HE ACKNOWLEDGED THAT IN RESPONSE TO THE ORIGINAL ARTICLES

04:48PM 19    THAT HE READ, HIS INTEREST WAS PIQUED WAS THE WORD THAT HE

04:48PM 20    USED, AND THAT THIS WAS A SUBJECT MATTER THAT HE WANTED TO

04:48PM 21    LEARN ABOUT.

04:48PM 22         I THINK HE ACKNOWLEDGED IN DISCUSSION DURING OUR COLLOQUY

04:48PM 23    THAT HE HAD SOME EXPECTATION THAT A DEFENDANT WOULD PUT ON

04:48PM 24    EVIDENCE.  I THINK WITH THOSE FACTORS COMBINED, I THINK IT WILL

04:48PM 25    BE VERY DIFFICULT FOR HIM TO MAINTAIN HIS OBJECTIVITY.

04:48PM  1        AGAIN, THIS IS AN INDIVIDUAL I THINK BEING PERFECTLY

04:48PM  2    HONEST AND FORTHRIGHT AND ACKNOWLEDGING WHAT HIS MINDSET IS.

04:48PM  3        HE ACKNOWLEDGED IN RESPONSE TO YOUR HONOR THAT HE

04:48PM  4    UNDERSTANDS THE LEGAL CONSTRUCT THAT THE DEFENDANT DOESN'T HAVE

04:48PM  5    AN OBLIGATION TO PRESENT EVIDENCE.

04:48PM  6        BUT HIS MINDSET IS ONE WHERE HE'S EXPECTING THE DEFENDANT

04:48PM  7    TO REBUT AND PLACING THAT BURDEN, AND HE HAS IN HIS MIND

04:48PM  8    PARTICULAR ALLEGATIONS THAT THE DEFENDANT SHOULD REBUT.

04:48PM  9        SO I THINK AS A RESULT OF HIS MEDIA EXPOSURE AND HIS

04:48PM 10    INCLINATION IN TERMS OF HIS VIEWS OF PROCEDURE, WE WOULD ASK

04:48PM 11    THAT HE BE DISMISSED FOR CAUSE.

04:48PM 12            THE COURT:  MR. SCHENK?

04:48PM 13            MR. SCHENK:  A COUPLE OF POINTS.

04:48PM 14        I THINK JUROR NUMBER 26 IS ROUGHLY THE THIRD OR FOURTH

04:48PM 15    JUROR WE HAVE TALKED ABOUT FOR CAUSE -- I'M SORRY, IF YOU

04:48PM 16    INCLUDE 31 AND 63, THE SIXTH JUROR.  I THINK HE'S THE THIRD OR

04:48PM 17    FOURTH OF SOUTHEAST ASIAN DESCENT.  I THINK WE SHOULD MAKE A

04:48PM 18    NOTE OF THAT AT THIS POINT.

04:48PM 19        THIS JUROR SAID THAT VIEWING THE 20/20 EPISODE WOULD NOT

04:48PM 20    IMPACT MY JUDGMENT.  I THINK HE SAID THAT MS. HOLMES WAS AN

04:48PM 21    INSPIRATION.  I WROTE THAT DOWN.

04:48PM 22        HE SAW HEADLINES.  BUT WE'VE HAD OTHER JURORS WHO HAVE

04:48PM 23    EXPRESSED SEEING HEADLINES WITHOUT CONSUMPTION OF THE

04:48PM 24    UNDERLYING ARTICLE.  THERE WAS ALSO THE DIALOGUE ABOUT A

04:48PM 25    DEFENDANT'S -- ONE LAST THING ON THAT POINT.  39 AND 65 IN THE

04:48PM 1    QUESTIONNAIRE HE BOTH ANSWERED NO TO.  I THINK THOSE QUESTIONS

04:48PM 2    ARE USEFUL IN ILLUMINATING WHETHER THE PERSON CAN BE FAIR

04:48PM 3    DURING THIS TRIAL.

04:48PM 4        AND THEN FINALLY, THERE WAS A DISCUSSION ABOUT DOES A

04:48PM 5    DEFENDANT HAVE TO PROVE INNOCENCE AND A QUESTION ABOUT ALMOST

04:48PM 6    THE WORD "SHOULD."

04:48PM 7        I THINK WHAT THE JUROR WAS EXPLAINING TO US WAS THAT HE

04:48PM 8    MEANT THAT THEY SHOULD HAVE THE OPPORTUNITY, NOT THE

04:48PM 9    APPLICATION TO.

04:48PM 10       FOR THOSE REASONS, I DON'T THINK THERE'S A NEED TO STRIKE

04:48PM 11   THIS JUROR FOR CAUSE.

04:48PM 12          THE COURT:  AS TO THE LATTER POINT, THAT WAS MY

04:48PM 13   UNDERSTANDING, MR. DOWNEY, WAS THAT QUESTION ABOUT PRESUMPTION

04:48PM 14   OF INNOCENCE AND THAT'S WHY I PROBED IT AFTER.  IT SEEMED TO

04:48PM 15   ME, JUST FROM, AGAIN, LOOKING AT HIM AND LOOKING AT HIS

04:48PM 16   EXPRESSIONS, THAT THE QUESTION WAS SOMETHING THAT HE DIDN'T

04:48PM 17   CAPTURE FULLY WHEN I ASKED HIM AS A FOLLOWUP, AND I THINK I

04:48PM 18   USED THE WORDS OBLIGATIONS AND OPPORTUNITY.

04:48PM 19       AND HE SAT BACK IN HIS CHAIR AND SAID I GET IT, I

04:48PM 20   UNDERSTAND THAT NOW, AND THANK YOU, AND THANKED THE COURT FOR

04:48PM 21   CLEARING THAT UP.  HE'S A LAYPERSON, AND WE KNOW THIS

04:48PM 22   PRESUMPTION OF INNOCENCE IS A CONCEPT THAT FOLKS DON'T CARRY

04:48PM 23   AROUND WITH THEM TYPICALLY.

04:48PM 24       SO TO THAT POINT I DON'T THINK THAT CERTAINLY SUGGESTS

04:48PM 25   THAT HE'S EXPECTING THE DEFENDANT TO PUT EVIDENCE ON.  I DON'T

| | | |
|---|---|---|
| 04:48PM | 1 | THINK THAT BASED ON HIS DEMEANOR WHEN HE ANSWERED THE QUESTION. |
| 04:48PM | 2 | I THINK HE UNDERSTANDS, DIDN'T HE, THAT THEY SHOULD |
| 04:48PM | 3 | HAVE -- IF THEY HAVE EVIDENCE TO GO AGAINST THE ACCUSATION, |
| 04:48PM | 4 | THEY SHOULD BE ABLE TO PUT IT ON.  THAT'S, THAT'S THE |
| 04:48PM | 5 | OPPORTUNITY.  I THINK THAT'S, THAT'S -- IT MAY HAVE BEEN WHAT |
| 04:48PM | 6 | HIS MINDSET WAS.  I APPRECIATE HIS FOLLOW-UP COLLOQUY.  SO I DO |
| 04:48PM | 7 | THINK THAT HE MISUNDERSTOOD THAT QUESTION. |
| 04:48PM | 8 | I AM MOVED BY THE ANSWERS TO 39, 62, AND 65. |
| 04:48PM | 9 | HE DID TELL US THAT HE READ -- EXCUSE ME, THAT HE SAW -- I |
| 04:48PM | 10 | THINK IT WAS THAT HE WATCHED "20/20."  HE SAID IT WOULD NOT |
| 04:48PM | 11 | AFFECT HIS ABILITY TO BE FAIR.  HE SAID HE CAN BE FAIR. |
| 04:48PM | 12 | THE QUESTIONNAIRE ASKS TWO OR THREE OTHER PLACES, IS THERE |
| 04:48PM | 13 | ANYTHING ELSE THAT YOU CAN THINK OF THAT WE SHOULD KNOW AS TO |
| 04:48PM | 14 | WHETHER OR NOT YOU CAN BE FAIR? |
| 04:48PM | 15 | OF COURSE HE TOLD US WHAT HE SAW.  HE TOLD US IN REGARDS |
| 04:48PM | 16 | TO THAT IT WOULD NOT AFFECT HIS ABILITY TO BE FAIR.  AND I, I, |
| 04:48PM | 17 | FOR ALL OF THE REASONS STATED, I BELIEVE HIM, I THINK HE WAS |
| 04:48PM | 18 | CANDID ABOUT HIS RESPONSE TO THAT. |
| 04:48PM | 19 | I DON'T THINK THERE'S SUFFICIENT EVIDENCE TO STRIKE HIM |
| 04:48PM | 20 | FOR CAUSE AT THIS TIME.  SO I'M GOING TO OVERRULE YOUR |
| 04:48PM | 21 | OBJECTION AS TO HIM. |
| 04:48PM | 22 | 46 IS YOUR NEXT. |
| 04:48PM | 23 | MR. DOWNEY:  YES, YOUR HONOR, I BELIEVE THAT'S |
| 04:48PM | 24 | RIGHT. |
| 04:48PM | 25 | THE COURT:  IT'S JUROR WONG. |

04:48PM 1              MR. DOWNEY:  YOUR HONOR, I JUST WANTED TO PAUSE FOR

04:48PM 2    A MOMENT WITH RESPECT TO JUROR 35 WHO WAS THE JUROR THAT WE

04:48PM 3    JUST HAD THE COLLOQUY WITH, AND I REALIZED THAT I HAD

04:48PM 4    MISUNDERSTOOD THE ANSWER IN THE QUESTIONNAIRE.  THIS IS

04:48PM 5    MS. HERNANDEZ.

04:48PM 6              THE COURT:  THIS IS JUROR --

04:48PM 7              MR. DOWNEY:  I BELIEVE 35, YOUR HONOR.

04:48PM 8              MR. SCHENK:  NO, THAT'S 42.

04:48PM 9              THE COURT:  42 IS MS. HERNANDEZ.

04:48PM 10             MR. DOWNEY:  I BEG YOUR PARDON.  I'M CONFUSING TWO

04:48PM 11   JURORS.

04:48PM 12        I HAD MISUNDERSTOOD HER RESPONSE IN THE QUESTIONNAIRE.

04:48PM 13             THE COURT:  MS. HERNANDEZ YOU'RE SPEAKING OF?

04:48PM 14             MR. DOWNEY:  YES, MS. HERNANDEZ'S QUESTIONNAIRE

04:48PM 15   RESPONSE AS BEING ABOUT LANGUAGE AND NOT ABOUT COMPREHENSION.

04:48PM 16             THE COURT:  YES.

04:48PM 17             MR. DOWNEY:  I REALIZE NOW THAT SHE WAS EXPRESSING

04:48PM 18   IN CONNECTION WITH THE CASE, IN CONNECTION WITH THE LEARNING

04:48PM 19   DISORDER, SHE HAD A DIFFICULTY PROCESSING --

04:48PM 20             THE COURT:  A LEARNING DIFFERENCE.

04:48PM 21             MR. DOWNEY:  AND I APPRECIATED THAT AS I HAVE A

04:48PM 22   CHILD WHO IS SOMEONE WHO IS NEURO DIVERSE.

04:48PM 23        I WONDER IF YOUR HONOR THINKS IN THIS CIRCUMSTANCE THAT

04:48PM 24   THE JUROR HAVING EXPRESSED THAT CONCERN IS SOMEBODY WHO IS

04:48PM 25   APPROPRIATE TO DISMISS OR NOT?

04:48PM 1      I DON'T MOVE FOR CAUSE.  I WAS JUST STRUCK BY THE JUROR'S

04:48PM 2   STATEMENT ABOUT HER OWN INABILITY TO FOLLOW SOME ASPECTS OF THE

04:48PM 3   PROCEEDING.

04:48PM 4          THE COURT:  THANK YOU.  THANK YOU.  I -- YOU KNOW,

04:48PM 5   SHE WAS -- SHE WANTED TO SPEAK PRIVATELY.  IT WAS ABOUT HER

04:48PM 6   FAMILY SITUATION WITH DOMESTIC VIOLENCE.  SHE SHARED THAT WITH

04:48PM 7   US.  I KNOW THAT WAS DIFFICULT.

04:48PM 8      AND THEN IN RESPONSE TO THE QUESTIONS, I LOOKED AT HER

04:48PM 9   QUESTIONNAIRE AS WE DID, AND I THINK A COUPLE OF PLACES SHE

04:48PM 10  SAID I DIDN'T UNDERSTAND AND I'M NOT SURE.  AND THEN SHE TOLD

04:48PM 11  US SHE HAD AN IEP, AN EDUCATIONAL PLAN THAT SCHOOLS ARE

04:48PM 12  OBLIGATED TO PROVIDE WHERE THEY NEED IT.  I TALKED TO HER ABOUT

04:48PM 13  GOING TO A CALIFORNIA DISTINGUISHED HIGH SCHOOL AND A DIPLOMA

04:48PM 14  THAT SHE MATRICULATED WITH.

04:48PM 15     IT SEEMED TO ME THAT HER QUESTIONNAIRE WAS NOT LIKE SOME

04:48PM 16  OTHERS WHERE YOU'VE SEEN WHERE WHOLESALE PAGES WERE LEFT BLANK,

04:48PM 17  IGNORED.  SHE DID GIVE A GREAT EFFORT TO FILL THIS

04:48PM 18  QUESTIONNAIRE.  IT'S A LONG QUESTIONNAIRE.  IT'S NOT AS LONG AS

04:48PM 19  THE ONE YOU WANTED, MR. DOWNEY, BUT IT'S STILL LONG.  AND SHE

04:48PM 20  GAVE IT AN EFFORT.

04:48PM 21     I THINK IN HER RESPONSES, I THINK IT WAS -- THEY WERE VERY

04:48PM 22  CANDID, AND SHE WAS TELLING US I DID THE BEST THAT I COULD.

04:48PM 23     I DID NOT SEE ANY COGNITIVE DEFICIENCIES IN HER ANSWERS TO

04:48PM 24  THE QUESTIONNAIRE.  SHE ANSWERED AS BEST SHE COULD IN THE

04:48PM 25  APPROPRIATE BOXES AND THE APPROPRIATE AREAS, AND SHE TALKED

04:48PM   1    ABOUT LANGUAGE.

04:48PM   2        MY SENSE IS, I DIDN'T FOLLOW UP ON THIS, BUT MY SENSE IS

04:48PM   3    THAT SHE MIGHT HAVE -- SHE DID TELL US SHE SOMETIMES NEEDED TO

04:48PM   4    LOOK AT THINGS.  YOU PROBED ON THIS, I THINK.  SHE NEEDS TO

04:48PM   5    LOOK AT THINGS TWICE, MAYBE A FEW TIMES TO FOCUS AND COMPREHEND

04:48PM   6    IT.  AND I THINK THAT'S AN EXPRESSION OF HER CAPACITY TO

04:48PM   7    UNDERSTAND THINGS.

04:48PM   8        I DON'T THINK KEEPING SOMEONE LIKE THAT OFF THE JURY IS

04:48PM   9    SOMETHING THAT I'D LIKE TO DO UNLESS THERE'S MORE COGNITIVE

04:48PM  10    DIFFICULTIES THAN THAT.

04:48PM  11        I THINK SHE HAS A RIGHT TO PARTICIPATE IN A JURY SERVICE

04:48PM  12    AND THE JUSTICE SYSTEM AS WELL AS ANYBODY ELSE, AND YOU'RE NOT

04:48PM  13    SAYING THIS, BUT TO EXCUSE HER BECAUSE SHE HAS AN IEP AND

04:48PM  14    OTHERWISE HAS SOME OTHER FUNCTION, YOU'RE NOT SAYING THAT, BUT

04:48PM  15    YOU'RE CALLING OUT AT LEAST THE OBSERVATION THAT SHE MADE.

04:48PM  16        MR. DOWNEY:  I WAS CALLING OUT, YOUR HONOR, SHE

04:48PM  17    HERSELF EXPRESSED SOME DIFFICULTY WITH UNDERSTANDING QUESTIONS

04:48PM  18    IN THE QUESTIONNAIRE, AND SHE EXPLAINED THAT.

04:48PM  19        MY JUDGMENT IS NOT DIFFERENT FROM YOUR HONOR'S IN TERMS OF

04:48PM  20    EVALUATING HER.  I JUST WANTED TO HAVE A DISCUSSION ABOUT IT TO

04:48PM  21    MAKE SURE BECAUSE I HAD ACTUALLY NOT ADDRESSED IT IN DETAIL

04:48PM  22    WITH HER, AND I DIDN'T THINK SHE HAD SOME OBLIGATION TO DO SO.

04:48PM  23    SO I THINK WE'RE OF ONE MIND WITH RESPECT TO HER.

04:48PM  24        THE COURT:  THANK YOU.  SHE'S A WOMAN.  SHE APPEARS

04:48PM  25    TO BE LATINA AND SHE JUST GRADUATED.  SHE'S 19.  SO THIS IS A

04:48PM   1      NEW EXPERIENCE FOR HER, RIGHT?

04:48PM   2          I DON'T KNOW WHEN -- HOW YOUNG YOU WERE WHEN YOU HAD YOUR

04:48PM   3      FIRST JURY SERVICE.

04:48PM   4              MR. WADE:  NOT 19.

04:48PM   5              THE COURT:  OKAY.  46.

04:48PM   6          WERE WE TALKING ABOUT -- THAT WAS MR. WONG, I BELIEVE.  HE

04:48PM   7      TALKED ABOUT SEEING THINGS.  HE WAS -- IT SOUNDED LIKE HE WAS

04:48PM   8      REALLY INTERESTED IN THE INVESTMENT PART OF THE CONVERSATION.

04:48PM   9              MR. DOWNEY:  WELL, YOUR HONOR, I THINK WHEN HE WAS

04:48PM  10      ASKED WHAT DID HE KNOW ABOUT MS. HOLMES IN QUESTION 40 ON THE

04:48PM  11      QUESTIONNAIRE HE SAID CEO OF THERANOS PUSHED PRODUCT ON THE

04:48PM  12      MARKET BEFORE IT'S PROVEN EFFECTIVE.

04:48PM  13          I THINK ON 41 HE WAS ASKED ABOUT MR. BALWANI AND HE

04:48PM  14      REFLECTED THAT HE WAS AWARE OF A ROMANTIC RELATIONSHIP WITH

04:48PM  15      MS. HOLMES AND BOTH CONSPIRED TO DEFRAUD INVESTORS, AND I THINK

04:48PM  16      HE EXPRESSED SOME SKEPTICISM ABOUT THE MANNER IN WHICH THE

04:48PM  17      BUSINESS OF THERANOS EVOLVED.  HE INDICATED THAT HE HAD SEEN

04:48PM  18      OTHER SUCH CIRCUMSTANCES AND THAT THEY HAVE GIVEN RISE TO SOME

04:48PM  19      CONCERN ON HIS PART IN THE PAST.

04:48PM  20          SO I THINK THIS IS AN INDIVIDUAL WHO IS, AGAIN, IS BEING

04:48PM  21      HONEST AND CANDID IN DISCUSSING THESE THINGS, BUT IS

04:48PM  22      ACKNOWLEDGING, YOU KNOW, BELIEFS AND VIEWS ABOUT THE MATTERS

04:48PM  23      THAT ARE VERY MUCH IN DISPUTE IN THE CASE.

04:48PM  24              THE COURT:  MR. SCHENK?

04:48PM  25              MR. SCHENK:  YOUR HONOR, TO QUESTIONS 39 AND 65,

04:48PM  1    THIS JUROR RESPONDED NO IN THE QUESTIONNAIRE.

04:48PM  2         TO YOUR HONOR TODAY WHEN ASKED ABOUT HIS PRIOR EXPOSURE TO

04:48PM  3    "60 MINUTES" OR CONVERSATIONS WITH FRIENDS, I THINK HE SAID

04:48PM  4    THAT HE TALKED TO FRIENDS WHO KNEW MORE THAN HE DID ABOUT THIS

04:48PM  5    CASE.

04:48PM  6         IF THAT WOULD AFFECT HIS ABILITY TO BE FAIR, HE AGAIN SAID

04:48PM  7    NO.

04:48PM  8         SO WE HAVE IT IN THE QUESTIONNAIRE AND THEN WE HAVE IT IN

04:48PM  9    COURT TODAY.

04:48PM  10        WHEN ASKED AT THE VERY END WHAT -- HE SAID SOMETHING LIKE

04:48PM  11   I'M GLAD I DIDN'T INVEST IN THERANOS, AND I THINK THAT'S WHAT

04:48PM  12   YOUR HONOR WAS GETTING AT WITH HIS FOCUS ON THE INVESTMENT SIDE

04:48PM  13   OF THINGS.

04:48PM  14        THERE'S NO QUESTION THAT HE HAS KNOWLEDGE ABOUT THE CASE.

04:48PM  15   THAT'S NOT SOMETHING THAT IS DISQUALIFYING.  IT'S BRINGING THAT

04:48PM  16   KNOWLEDGE IN THE FORM OF BIAS INTO THE COURTROOM OR INTO THE

04:48PM  17   DELIBERATION ROOM, AND IT'S AT THAT STAGE WHERE HIS ANSWERS

04:48PM  18   SUGGEST HE SHOULD NOT BE STRUCK FOR CAUSE.

04:48PM  19            MR. DOWNEY:  YOUR HONOR, HE HAS A VIEW ABOUT

04:48PM  20   MS. HOLMES AS EXPRESSED IN THE QUESTIONNAIRE, AND HE HAS A VIEW

04:48PM  21   ABOUT THERANOS AND COMPANIES LIKE THERANOS.  HE'S DISCUSSED IT

04:48PM  22   EXTENSIVELY WITH OTHER PARTIES.

04:48PM  23            THE COURT:  I DON'T THINK HE TOLD US EXTENSIVELY,

04:48PM  24   MR. DOWNEY.

04:48PM  25        I THINK HE SAID FRIENDS SAW IT.  I THINK I'M RIGHT ABOUT

04:48PM  1    THAT.  HE SAYS FRIENDS SAW IT.

04:48PM  2         BUT HIS QUESTIONNAIRE SUGGESTS THAT HE MAY HAVE SEEN IT.

04:48PM  3    HE TALKED ABOUT FRIENDS SEEING IT, THEY TALKED ABOUT IT.  I

04:48PM  4    THINK YOU FOLLOWED UP, AND MAYBE MR. SCHENK DID, ABOUT THE

04:48PM  5    CONVERSATION AND HE SAID IT WAS MORE ON THE INVESTMENTS TALKING

04:48PM  6    ABOUT A LOT OF PEOPLE WHO LOST MONEY.

04:48PM  7         I UNDERSTAND THAT MAY BE THE EVIDENCE IN THIS CASE AND

04:48PM  8    PART OF THE PROOF OF THIS CASE.  I THINK HE SAID HE DID NOT

04:48PM  9    EXPRESS HIS OPINION ABOUT THE COMPANY.

04:48PM 10         HIS OPINION WAS THAT I'M GLAD I DIDN'T INVEST IN IT, AND I

04:48PM 11    THINK HIS ANSWER TO YOUR QUESTION PERHAPS WAS, I HAVE NO

04:48PM 12    OPINION ON MS. HOLMES AS SHE SITS HERE TODAY.

04:48PM 13         THAT TELLS ME HE'S A CLEAN SLATE, ALBEIT HE HAS EXPOSURE

04:48PM 14    TO SOME OF THIS OTHER MATERIAL LIKE MANY FOLKS TOLD US ABOUT.

04:48PM 15    WE SPENT THE BETTER PART OF THE MORNING TALKING ABOUT HEADLINES

04:48PM 16    THAT PEOPLE SAW AND STORIES THAT THEY READ AND WHAT THAT MEANT

04:48PM 17    TO HIM.

04:48PM 18         MY SENSE FROM HIM, AND I STARTED THE CONVERSATION OFF

04:48PM 19    OBSERVING THAT HE WAS LOOKING AT THIS AS AN INVESTMENT

04:48PM 20    OPPORTUNITY, AND THAT SEEMS TO BE THE TOTALITY OF HIS, OR THE

04:48PM 21    MAJORITY, I SHOULD SAY, OF HIS CONVERSATIONS WITH FRIENDS.

04:48PM 22         FRIENDS SAW IT I THINK IS WHAT HE TOLD US.  I THINK HE

04:48PM 23    SAID THAT IN HIS QUESTIONNAIRE.

04:48PM 24         ALTHOUGH I HAVE A NOTE THAT SAYS THAT HE READ SOMETHING,

04:48PM 25    AND I'M NOT CERTAIN.

04:48PM   1          QUESTION 38, MAYBE YOU HAVE YOUR QUESTIONNAIRES WITH YOU.

04:48PM   2     HIS RESPONSE TO QUESTION 38, WAS IT READ?

04:48PM   3          I DON'T HAVE IT AT MY FINGERTIPS.

04:48PM   4          MR. DOWNEY:  HE SAID THAT HE HAD PERHAPS WATCHED THE

04:48PM   5     "60 MINUTES" EPISODE, AND HE DESCRIBED WITH PARTICULARITY THE

04:48PM   6     ALLEGATIONS OF -- NOT ALLEGATIONS OF THIS CASE, NOT ARISING

04:48PM   7     FROM THIS CASE, BUT JUST DESCRIBING THE FACTS OF THE CASE AS

04:48PM   8     BEING THAT MS. HOLMES AND MR. BALWANI CONSPIRED TO DEFRAUD

04:48PM   9     INVESTORS.

04:48PM  10          THE COURT:  SO HE USED THE WORD "CONSPIRED"?

04:48PM  11          MR. DOWNEY:  HE USED THE WORD "CONSPIRED."

04:48PM  12          THE COURT:  IN HIS ANSWER TO 38?

04:48PM  13          MR. SCHENK:  ARE WE TALKING ABOUT JUROR 46?

04:48PM  14          THE COURT:  46.

04:48PM  15          MR. DOWNEY:  QUESTION 38 HE CHECKS YES, AND HE WROTE

04:48PM  16     READ ARTICLES.

04:48PM  17          THE COURT:  THAT'S WHAT IT WAS.

04:48PM  18          MR. DOWNEY:  I'M SORRY, YOUR HONOR.  I HAVE HIM AS

04:48PM  19     IN 37 -- I BEG YOUR PARDON.

04:48PM  20          THE COURT:  I DON'T REMEMBER HIM USING THE WORDS

04:48PM  21     THAT I --

04:48PM  22          MR. DOWNEY:  YEAH, 40 AND 41 ARE THE ANSWERS I'M

04:48PM  23     REFERRING TO.

04:48PM  24          I DON'T KNOW ABOUT "60 MINUTES."  I THOUGHT --

04:48PM  25          THE COURT:  THIS IS JUROR NUMBER 46; IS THAT RIGHT?

04:48PM   1          MR. SCHENK:  TO QUESTION 41, JUROR 46, THE QUESTION

04:48PM   2    IS, DO YOU HAVE FAMILIARITY WITH OR HAVE YOU HEARD ABOUT

04:48PM   3    THERANOS, MR. RAMESH "SUNNY" BALWANI, OR THIS CASE?

04:48PM   4          AND HE CHECKS YES, ROMANTIC RELATIONSHIP WITH MS. HOLMES,

04:48PM   5    AND BOTH CONSPIRED TO DEFRAUD INVESTORS.

04:48PM   6          MR. DOWNEY:  YES.  AND THAT'S WHAT I READ A MOMENT

04:48PM   7    AGO, AND I ALSO READ THE ANSWER TO NUMBER 40, DO YOU KNOW OR

04:48PM   8    HAVE YOU HEARD OF THE DEFENDANT, MS. HOLMES?

04:48PM   9          HE SAID CEO OF THERANOS, PUSHED PRODUCT ON MARKET BEFORE

04:48PM   10   IT'S PROVEN EFFECTIVE.

04:48PM   11         I APPRECIATE THAT HE'S SAYING THAT HE HAS NO OPINION AS HE

04:48PM   12   SITS HERE TODAY, BUT TEN DAYS AGO THAT'S HOW HE DESCRIBED THE

04:48PM   13   SITUATION.

04:48PM   14         WHAT I WAS UNCERTAIN OF, YOUR HONOR, AND WHAT I THOUGHT

04:48PM   15   YOUR HONOR WAS ASKING ABOUT WAS WHETHER HE HAD CONSUMED SOME OF

04:48PM   16   THE LONGER FORM DOCUMENTARIES.

04:48PM   17         I HAVE TO SAY I DON'T HAVE THE FULL QUESTIONNAIRE WITH ME,

04:48PM   18   BUT I THOUGHT THAT HE HAD READ "60 MINUTES" SOMEWHERE IN THE --

04:48PM   19   YEAH, WATCHED THE "60 MINUTES" SEGMENT.

04:48PM   20         MR. SCHENK DID NOT -- IS THAT WHAT YOU WERE REFERRING TO?

04:48PM   21   I THOUGHT YOU HAD SAID THAT HE HAD CIRCLED READING ARTICLES.

04:48PM   22   HE CIRCLED, IN 37, HAVE YOU READ, WATCHED, LISTENED TO, OR HAVE

04:48PM   23   BEEN TOLD OF THE FOLLOWING?  PLEASE CIRCLE.  HE CIRCLED THE

04:48PM   24   "60 MINUTES" EPISODE, AND THEN HE WROTE, WATCHED THE

04:48PM   25   "60 MINUTES" SEGMENT.

04:48PM  1          THE COURT:  MR. SCHENK, ANYTHING FURTHER?

04:48PM  2          MR. SCHENK:  NO, YOUR HONOR.  THE SAME COMMENTS I

04:48PM  3   MADE BEFORE.  QUESTIONS 39, 65, I THINK HE DREW A DISTINCTION

04:48PM  4   BETWEEN INFORMATION THAT HE WAS AWARE OF AND BIASES THAT HE

04:48PM  5   BRINGS WITH HIM TO THE TRIAL.

04:48PM  6          THE COURT:  ANYTHING FURTHER ON HIM?

04:48PM  7          MR. DOWNEY:  YOUR HONOR, I DON'T HAVE ANYTHING

04:48PM  8   FURTHER WITH RESPECT TO 46.

04:48PM  9          THE COURT:  WELL, I'M -- THANK YOU FOR POINTING OUT

04:48PM  10  THE ANSWERS TO QUESTIONS 40 AND 41.  I DON'T HAVE THOSE

04:48PM  11  REFLECTED ON MY NOTES.

04:48PM  12      I DO HAVE 40.

04:48PM  13      BUT WHAT I SUPPOSE STICKS OUT TO ME IS THE ANSWERS TO

04:48PM  14  QUESTIONS 39, 62, AND 65 WHERE HE SAYS HE CAN BE FAIR.

04:48PM  15      OF COURSE, TO YOUR POINT, THAT WAS AT THE TIME OF THE

04:48PM  16  QUESTIONNAIRE.

04:48PM  17      WHEN IS HE BEING EVALUATED FOR JURY SERVICE, TEN DAYS AGO

04:48PM  18  OR TODAY?  AND TODAY HE SAYS, I HAVE NO OPINION ON HER AS I SIT

04:48PM  19  HERE TODAY.

04:48PM  20      DOES THAT CARRY ANY WEIGHT TO YOU, MR. DOWNEY?

04:48PM  21          MR. DOWNEY:  YOUR HONOR, I CERTAINLY BELIEVE THAT

04:48PM  22  HE'S MAKING EFFECTIVELY THE SAME STATEMENT AS MANY OTHER

04:48PM  23  JURORS.  HE'S TRYING TO BE FAIR AND TRYING TO IMPOSE, YOU KNOW,

04:48PM  24  THE -- OR INDICATE THAT HE'D COMPLY WITH THE INSTRUCTIONS.

04:48PM  25      I JUST THINK IT'S VERY DIFFICULT IN LIGHT OF, OF THE VIEWS

04:48PM   1   THAT HE HELD AS A RESULT OF WATCHING MEDIA, TALKING WITH

04:48PM   2   FRIENDS ABOUT THE THINGS THAT HE HAD SEEN IN MEDIA, BASED ON

04:48PM   3   HIS VIEW OF THERANOS, YOU KNOW, NOT BEING A UNIQUE COMPANY, BUT

04:48PM   4   ACTUALLY BE A CLASS OF COMPANIES THAT HAVE THE SAME PROBLEM

04:48PM   5   WHICH HE DESCRIBED IN COURT TODAY I THINK IN SOME DETAIL.

04:48PM   6        PERHAPS HE DIDN'T USE THE WORD EXTENSIVELY, BUT I THOUGHT

04:48PM   7   HE SAID THAT HIS FRIENDS WERE ALWAYS TALKING.

04:48PM   8        I THINK IT'S A SUBJECT ON WHICH I HAVE NO CRITICISM OF THE

04:48PM   9   MAN.  I JUST THINK HE IS SOMEONE WHO HAS FORMED VIEWS BASED ON

04:48PM  10   WHAT HE HAS BEEN EXPOSED TO.

04:48PM  11        AND I THINK HE UNDERSTANDS THE INDUSTRY SOMEWHAT AND I

04:48PM  12   THINK IT'S LED HIM TO VIEW THIS WITHIN A PARTICULAR PATTERN

04:48PM  13   THAT HE'S FAMILIAR WITH.

04:48PM  14             THE COURT:  ALL RIGHT.  THANK YOU.

04:48PM  15        LET'S TALK ABOUT 49, MR. BURGE.  THAT'S YOUR NEXT ONE, I

04:48PM  16   BELIEVE.  HE COMMENTED ON SOCIAL MEDIA.

04:48PM  17             MR. DOWNEY:  YEAH, HE COMMENTED ABOUT MS. HOLMES

04:48PM  18   BEING A FRAUD ON SOCIAL MEDIA AND THAT SHE IS A DISAPPOINTMENT

04:48PM  19   TO HIM, AND I CAN TALK MORE EXTENSIVELY ABOUT HIS SOCIAL MEDIA.

04:48PM  20        I THINK HE HAD A SIGNIFICANT HARDSHIP ISSUE.  AS I

04:48PM  21   UNDERSTAND IT, HE WAS A PRIMARY, IF NOT THE SOLE, BUT A PRIMARY

04:48PM  22   CARETAKER IN CONNECTION WITH HIS FATHER, I BELIEVE IT WAS.

04:48PM  23             MS. TREFZ:  HIS MOTHER.

04:48PM  24             THE COURT:  I BELIEVE IT WAS HIS MOTHER HAD

04:48PM  25   ALZHEIMER'S.  HE MOVED IN WITH HIS PARENTS WITH HIS SON AND

04:48PM  1    HE'S WORKING FROM HOME NOW, BUT THAT THE SON OFFERED SOME

04:48PM  2    ASSISTANCE TO THE MOTHER.

04:48PM  3         I DON'T THINK, AS TO QUESTION 1, YOU HAVE IT IN FRONT OF

04:48PM  4    YOU, DID HE INDICATE -- QUESTION 1 I THINK ASKS, IS THERE ANY

04:48PM  5    REASON YOU CAN'T SERVE HERE, AND WHAT WAS HIS RESPONSE TO

04:48PM  6    QUESTION 1?

04:48PM  7              MR. SCHENK:  YES.  I HAVE TWO CHILDREN THAT WILL

04:48PM  8    NEED TO BE SHUTTLED BACK AND FORTH TO SCHOOL AND LOOKED AFTER.

04:48PM  9              THE COURT:  HE DIDN'T SAY ANYTHING ABOUT HIS PARENT.

04:48PM 10              MS. TREFZ:  DID HE SAY IT LATER?  I THINK HE SAID IT

04:48PM 11    LATER IN THE QUESTIONNAIRE.  I APOLOGIZE.  I DON'T HAVE IT.

04:48PM 12         IN QUESTION 8, IS THERE ANYTHING ELSE GOING ON IN YOUR

04:48PM 13    LIFE?

04:48PM 14         HE SAID, YES, I LOOK AFTER MY PARENTS DAILY IN ADDITION TO

04:48PM 15    CHILD CARE.

04:48PM 16              THE COURT:  MR. SCHENK, DO YOU WANT TO BE HEARD ON

04:48PM 17    THIS?

04:48PM 18              MR. SCHENK:  MAYBE I'LL START WITH A QUESTION.  DID

04:48PM 19    HE ASK TO BE EXCUSED FOR -- I KNOW HE DIDN'T SAY THE WORD

04:48PM 20    "HARDSHIP," BUT BECAUSE OF HIS PARENTS?  I KNOW HE TALKED ABOUT

04:48PM 21    THE VACATION.  IT'S BEEN A LONG TIME SINCE HE'S GOTTEN TO TAKE

04:48PM 22    A VACATION.  I DON'T REMEMBER ASKING HIM --

04:48PM 23              THE COURT:  I DON'T THINK HE DID.  I DON'T HAVE A

04:48PM 24    RECOLLECTION.  I DON'T HAVE IT IN MY NOTES THAT HE ASKED TO BE

04:48PM 25    EXCUSED.  I DON'T THINK HE DID.

04:48PM 1      I DID NOTE HIS QUESTIONNAIRE IN MY NOTES, AND I REMEMBER

04:48PM 2   IT JUST BECAUSE OF THE -- I DON'T THINK HE TOLD US IN THE

04:48PM 3   QUESTIONNAIRE THAT HIS MOTHER HAD ALZHEIMER'S, BUT HE DID

04:48PM 4   MENTION CARE.

04:48PM 5      MR. SCHENK:  THEN THE GOVERNMENT'S VIEW IS THAT HE

04:48PM 6   SHOULD NOT BE EXCUSED, AT LEAST YET, FOR CAUSE OR HARDSHIP FOR

04:48PM 7   CARE FOR PARENTS.  I DON'T THINK HE'S ASKED FOR THAT.

04:48PM 8      MR. DOWNEY:  YOUR HONOR, I THOUGHT WHEN I HAD ASKED

04:48PM 9   HIM WHETHER THERE WAS ANY HARDSHIP, THIS IS WHAT HE HAD

04:48PM 10  MENTIONED.  BUT I CAN'T SAY I RECALL THE PRECISE STATEMENT, BUT

04:48PM 11  I THOUGHT IF HE DIDN'T ASK IN CONNECTION WITH THE QUESTIONNAIRE

04:48PM 12  THAT HE DID, BUT I MAY BE MISTAKEN ABOUT THAT.

04:48PM 13    I THINK THERE ARE OTHER ISSUES WITH REGARD TO THE JUROR

04:48PM 14  ALSO WHICH I CAN DISCUSS WITH YOUR HONOR, BUT I THOUGHT THIS

04:48PM 15  WAS A FAIRLY SYMPATHETIC HARDSHIP CASE.

04:48PM 16     THE COURT:  WELL, IT IS.  THE FACTS THAT HE'S TOLD

04:48PM 17  US ABOUT HIS MOTHER HAVING ALZHEIMER'S AND LIVING AT THE HOUSE

04:48PM 18  AND HE TALKED ABOUT THERE LIVING WITH HIS SON.  HE JUST SET THE

04:48PM 19  TABLE, BUT HE DIDN'T MAKE THE REQUEST, DID HE?

04:48PM 20    THAT'S -- HE TOLD US ABOUT THE CHALLENGES THAT HE FACES,

04:48PM 21  AND PERHAPS HE WAS LOOKING TO THE COURT TO PUT THAT ALL

04:48PM 22  TOGETHER ON MY OWN AND SAY HE SHOULD BE TAKING CARE OF HIS

04:48PM 23  MOTHER NOW THAT HIS SON WAS BACK IN.

04:48PM 24    I THINK HE SAID HE IS THE PRINCIPAL CARETAKER FOR BOTH OF

04:48PM 25  HIS PARENTS.

04:48PM 1    ALL RIGHT.  WELL, LET'S -- I'LL RELEASE HIM.  WE'LL STRIKE

04:48PM 2    HIM NOT FOR CAUSE BUT FOR HARDSHIP TO CARE FOR HIS PARENTS.

04:48PM 3    94 -- EXCUSE ME.  81 IS NEXT.  THIS IS GOMEZ-MUNO.  WE

04:48PM 4    REALLY DIDN'T TALK TO HER.  SHE STOOD UP ON HER OWN AND SAID I

04:48PM 5    HAVE A PROBLEM, I JUST WANT TO TALK ABOUT ENGLISH.

04:48PM 6    AND THEN I THINK YOU ASKED HER, MR. DOWNEY, I DON'T KNOW

04:48PM 7    IF THIS IS YOUR OBJECTION OR NOT, LANGUAGE, SHE SAID I HAVE NO

04:48PM 8    PROBLEM HEARING.  I CAN FOLLOW TODAY.

04:48PM 9    MR. DOWNEY:  YOUR HONOR, I THINK THE QUESTION WITH

04:48PM 10   REGARD TO MS. GOMEZ IS, FRANKLY, A CLOSE CALL.  I THINK SHE

04:48PM 11   INDICATED, YOU KNOW, TO MY SATISFACTION THAT NOTHING HAD

04:48PM 12   HAPPENED YET AS OF TODAY THAT WAS SOMETHING THAT SHE FELT SHE

04:48PM 13   COULDN'T UNDERSTAND.

04:48PM 14   SHE DID EXPRESS, THOUGH, SOME CONCERN ABOUT SOME

04:48PM 15   COMPREHENSION BECAUSE ENGLISH IS HER SECOND LANGUAGE, AND SHE

04:48PM 16   TOLD US IN THE QUESTIONNAIRE THAT SHE WAS AFRAID THAT SHE

04:48PM 17   WOULDN'T UNDERSTAND EVERYTHING ABOUT THE CASE BECAUSE ENGLISH

04:48PM 18   IS MY SECOND LANGUAGE, SO MY OPINION, SHE SAYS, COULD NOT BE

04:48PM 19   THE CORRECT ONE.

04:48PM 20   THAT'S A DIFFICULT JUROR FOR US NOT TO ASK TO BE EXCUSED

04:48PM 21   BECAUSE, YOU KNOW, THIS WILL BE A LONG TRIAL AND THERE MAY BE,

04:48PM 22   YOU KNOW, PRESENTATION ON SOME COMPLEX ISSUES.

04:48PM 23   SO FROM MY PERSPECTIVE, I THINK THE LANGUAGE CHALLENGES

04:48PM 24   MAY BE A BASIS AND SUGGEST THAT THIS WOMAN SHOULD NOT SERVE AS

04:48PM 25   A JUROR IN THIS CASE, WHICH HAS A LOT OF COMPLEX DOCUMENTS AND

04:48PM 1    TERMINOLOGY AND SO FORTH.

04:48PM 2                 THE COURT:  OKAY.

04:48PM 3                 MR. SCHENK:  I DON'T THINK THERE'S A BASIS FOR IT

04:48PM 4    YET.  SHE SAID THAT TODAY HAS BEEN OKAY.  SHE HAS BEEN ABLE TO

04:48PM 5    FOLLOW THINGS.

04:48PM 6        IF THERE'S ENOUGH IN THE QUESTIONNAIRE TO JUSTIFY FURTHER

04:48PM 7    QUESTIONING, I CERTAINLY WOULDN'T OBJECT TO DOING THAT.  BUT I

04:48PM 8    DON'T THINK THERE'S A BASIS TO EXCLUDE HER FROM JURY SERVICE AT

04:48PM 9    THIS STAGE.

04:48PM 10                THE COURT:  I, I WAS TAKEN BY HER WANTING TO AT

04:48PM 11   LEAST LET US KNOW ABOUT A LANGUAGE ISSUE.

04:48PM 12       AND SHE'S SEATED IN THE BACK, ISN'T SHE?  SHE'S ABOUT FOUR

04:48PM 13   ROWS DEEP IN THE BACK.  I'M SURE IT'S DIFFICULT TO LISTEN FOR

04:48PM 14   SOMEONE WHOSE FIRST LANGUAGE IS NOT ENGLISH THERE.

04:48PM 15       BUT SHE DID, WHEN PROBED -- AND I'M GLAD YOU ASKED THE

04:48PM 16   QUESTION, DID YOU HAVE ANY DIFFICULTY TODAY?  HAVE YOU HEARD

04:48PM 17   EVERYTHING TODAY?

04:48PM 18       AGAIN, THE RECORD DOESN'T REFLECT HER -- SHE SAID, OH,

04:48PM 19   YES, WITH THIS KIND OF VOICE, HER VOICE WAS RAISED AND WITH

04:48PM 20   ENTHUSIASM.  YES, TODAY?  NO, NOT A PROBLEM.

04:48PM 21       SO THAT WAS REASSURING TO ME THAT SHE WAS FOLLOWING

04:48PM 22   THINGS.

04:48PM 23       I UNDERSTAND THAT THE INFORMATION, THE EVIDENCE IN THE

04:48PM 24   TRIAL MIGHT BE COMPLICATED.  IT COULD BE COMPLICATED FOR ANY

04:48PM 25   LAYPERSON, AND THAT'S THE TASK OF LAWYERS TO MAKE IT ACCESSIBLE

04:48PM  1   TO EVERYONE.

04:48PM  2        SO I'M NOT GOING TO STRIKE HER FOR LANGUAGE.  I DON'T

04:48PM  3   THINK IT RISES TO THAT LEVEL, SO I'LL OVERRULE THAT OBJECTION

04:48PM  4   AS TO HER.

04:48PM  5        AND THEN 94, I BELIEVE, IS YOUR NEXT ONE.

04:48PM  6            MR. DOWNEY:  YOUR HONOR, CAN I JUST TAKE ONE MOMENT?

04:48PM  7            THE COURT:  YES.  I THINK 94 IS MR. LEE; IS THAT

04:48PM  8   RIGHT?

04:48PM  9            MS. TREFZ:  YES.

04:48PM  10           MR. SCHENK:  YES.

04:48PM  11       (DISCUSSION AMONGST COUNSEL OFF THE RECORD.)

04:48PM  12           MR. DOWNEY:  YOUR HONOR, I THINK THAT MR. SCHENK HAD

04:48PM  13  PREVIOUSLY SUGGESTED THAT THOSE JURORS WHO HAVE READ

04:48PM  14  "BAD BLOOD" SHOULD BE DISMISSED.

04:48PM  15       JUROR 90 HAD INDICATED THAT SHE HAD READ --

04:48PM  16           THE COURT:  CAN WE DO 94?

04:48PM  17           MR. DOWNEY:  YEAH, I HADN'T MENTIONED 90.

04:48PM  18           THE COURT:  RIGHT.  HE LOST HIS JOB, MR. LEE DID, AT

04:48PM  19  TWO COMPANIES.  HE'S BIASED VERSUS CEO'S.  I THINK THAT'S WHAT

04:48PM  20  HE TALKED ABOUT.

04:48PM  21           MR. DOWNEY:  YOUR HONOR, I THINK HE EXPRESSED BOTH

04:48PM  22  TODAY AND IN RESPONSE TO QUESTION 54 ON THE QUESTIONNAIRE THAT

04:48PM  23  HE HAS A BIAS AGAINST CERTAIN POSITIONS IN BUSINESS,

04:48PM  24  INDIVIDUALS LIKE CEO'S OR MANAGEMENT.

04:48PM  25       HE ALSO INDICATED THAT IF HIGH LEVEL MANAGEMENT WAS A

04:48PM  1     PARTY THAT WAS CHARGED IN RESPONSE -- THAT THEY WERE PROBABLY

04:48PM  2     GUILTY IN RESPONSE TO QUESTION 57.

04:48PM  3         SO I THINK THAT IS NOT AN APPROPRIATE JUROR TO SIT IN THIS

04:48PM  4     CASE.

04:48PM  5              THE COURT:  MR. SCHENK?

04:48PM  6              MR. SCHENK:  WE AGREE.

04:48PM  7              THE COURT:  ALL RIGHT.  WE'LL STRIKE 94.  94 WILL BE

04:48PM  8     STRICKEN FOR CAUSE.

04:48PM  9         LET'S MOVE TO 95 WHILE WE'RE HERE.  THAT'S MR. KRAY.  YOU

04:48PM  10    ASKED HIM ABOUT A QUESTION AND HE SAID PROBABLY GUILTY.

04:48PM  11              MR. DOWNEY:  HE DID, YOUR HONOR.  I THINK HE

04:48PM  12    EXPRESSED A BELIEF BEFORE THE CASE BEGAN AS TO THE APPROPRIATE

04:48PM  13    OUTCOME.  HE SAID HE WAS NOT GOING TO CHANGE THAT VIEW IN

04:48PM  14    RESPONSE TO HIS COLLOQUY WITH BOTH -- CERTAINLY WITH ME, AND I

04:48PM  15    THINK PERHAPS THE COURT.

04:48PM  16        SO I DON'T THINK HE SHOULD SERVE.

04:48PM  17        HE ALSO INDICATED ON THE QUESTIONNAIRE THAT THE DEFENDANTS

04:48PM  18    WHO ARE CHARGED ARE PROBABLY GUILTY, AND HE AFFIRMED THAT VIEW

04:48PM  19    TODAY.

04:48PM  20        I ALSO NOTED THAT AND DIDN'T INQUIRE AS TO WHAT THE

04:48PM  21    RELIGIOUS HOLIDAYS WERE OR WHAT THE -- BUT HE DID NOTE THAT HE

04:48PM  22    REFLECTED THAT HE HAD A SCHEDULE THAT WILL WOULD BE SOMEWHAT

04:48PM  23    DISRUPTIVE TO THE TRIAL SCHEDULE.

04:48PM  24              THE COURT:  HE SAID HE COULD NOT COME ON THOSE DAYS.

04:48PM  25    HE WAS VERY AFFIRMATIVE ABOUT THAT.

| | | |
|---|---|---|
| 04:48PM | 1 | I'LL JUST TELL YOU THAT MS. KRATZMANN INFORMED ME IN THE |
| 04:48PM | 2 | HALLWAY AS I WAS WALKING IN, I THINK WAS THIS THE JUROR, |
| 04:48PM | 3 | MS. KRATZMANN, THAT YOU HAD A CONVERSATION WITH HIM ABOUT HIS |
| 04:48PM | 4 | HAT? |
| 04:48PM | 5 | THE CLERK:  YES, YOUR HONOR. |
| 04:48PM | 6 | THE COURT:  MS. KRATZMANN INFORMED ME THAT THERE WAS |
| 04:48PM | 7 | A JUROR, A PROSPECTIVE JUROR WHO WAS WEARING A BASEBALL CAP. |
| 04:48PM | 8 | SHE ASKED HIM TO TAKE IT OFF AND HE TOLD HER HE WEARS IT FOR |
| 04:48PM | 9 | RELIGIOUS REASONS, AND HE TURNED IT AROUND SO THE BRIM IS IN |
| 04:48PM | 10 | THE BACK AND THAT'S HOW HE APPEARS IN COURT NOW WITH THE |
| 04:48PM | 11 | REVERSE CAP. |
| 04:48PM | 12 | MR. SCHENK? |
| 04:48PM | 13 | MR. SCHENK:  WE DON'T HAVE AN OBJECTION TO RELEASING |
| 04:48PM | 14 | HIM FOR THE SCHEDULING CONFLICTS THAT HIS RELIGIOUS OBSERVATION |
| 04:48PM | 15 | WOULD PRESENT. |
| 04:48PM | 16 | THE COURT:  ALL RIGHT.  WE'LL RELEASE MR. KRAY, |
| 04:48PM | 17 | JUROR NUMBER 95. |
| 04:48PM | 18 | AND THEN 90, I THINK YOU'RE SUGGESTING THAT 90 READ THE |
| 04:48PM | 19 | BOOK. |
| 04:48PM | 20 | MR. DOWNEY:  SHE READ IT IN PART.  THIS IS WHAT |
| 04:48PM | 21 | SHE -- |
| 04:48PM | 22 | THE COURT:  OH, SHE DID. |
| 04:48PM | 23 | MR. DOWNEY:  IN THE QUESTIONNAIRE NUMBER 37. |
| 04:48PM | 24 | THE COURT:  SO WE SHOULD EXCUSE HER FOR HALF OF THE |
| 04:48PM | 25 | TRIAL. |

04:48PM  1            (LAUGHTER.)

04:48PM  2                 MR. DOWNEY:  PERHAPS SHE ALREADY KNOWS.

04:48PM  3                 THE COURT:  YOU CAN PICK WHAT HALF YOU WOULD LIKE

04:48PM  4       HER TO SIT IN.

04:48PM  5            MR. SCHENK?

04:48PM  6                 MR. SCHENK:  I HATE TO BE DIFFICULT.  WE'RE ALREADY

04:48PM  7       ASKING JUROR 26 -- I'M SORRY, JUROR 14 IF HE READ THE BOOK.

04:48PM  8            CAN WE ASK JUROR 90 ABOUT THE AMOUNT OF CONSUMPTION?

04:48PM  9                 THE COURT:  SURE.  YES, I THINK WE CAN DO THAT.

04:48PM 10                 THE CLERK:  YOUR HONOR, CAN I GET CLARIFICATION ON

04:48PM 11       95?  IS THAT EXCUSED FOR CAUSE OR HARDSHIP?

04:48PM 12                 THE COURT:  HARDSHIP.

04:48PM 13            AND I THINK THAT LEAVES JUST MR. WONG AS PENDING.  DID WE

04:48PM 14       GET RESOLUTION ON JUROR 14?

04:48PM 15                 MR. SCHENK:  I THINK WE NEED TO BRING 14 BACK, BUT I

04:48PM 16       DON'T THINK YOUR HONOR RULED ON JUROR 46.

04:48PM 17                 THE COURT:  THAT'S MR. WONG; IS THAT RIGHT?  I THINK

04:48PM 18       THAT'S CORRECT.

04:48PM 19                 MR. SCHENK:  THAT'S CORRECT.

04:48PM 20                 MS. TREFZ:  YES.

04:48PM 21                 THE COURT:  OKAY.  WELL, LET'S -- MR. WONG IS

04:48PM 22       PENDING.  WHAT I'D LIKE TO DO IS TO GO OUT AND LET'S HAVE A

04:48PM 23       CONVERSATION WITH MR. CHUANG AS TO WHETHER HE READ THE BOOK,

04:48PM 24       AND THEN THE JUROR WE WERE JUST TALKING ABOUT --

04:48PM 25                 MS. TREFZ:  90.

| | | |
|---|---|---|
| 04:48PM | 1 | THE COURT:  THANK YOU.  YES.  THANK YOU. |
| 04:48PM | 2 | AND THEN WE'RE CLOSE TO ENDING OUR DAY TODAY. |
| 04:48PM | 3 | TOMORROW WE HAVE HOW MANY JURORS COMING IN, MS. KRATZMANN? |
| 04:48PM | 4 | THE CLERK:  46. |
| 04:48PM | 5 | THE COURT:  OKAY. |
| 04:48PM | 6 | MR. SCHENK:  HOW MANY ARE ACTUALLY GOING TO COME IN? |
| 04:48PM | 7 | THE CLERK:  WE'LL HAVE TO FLIP A COIN ON THAT ONE. |
| 04:48PM | 8 | THE COURT:  ANYTHING FURTHER BEFORE WE GO OUT? |
| 04:48PM | 9 | MR. SCHENK:  NO, THANK YOU. |
| 04:48PM | 10 | MR. DOWNEY:  NO, YOUR HONOR. |
| 04:48PM | 11 | THE COURT:  WHEN WE GET THE ANSWERS TO THE QUESTIONS |
| 04:48PM | 12 | OF READING THE BOOK, I'LL JUST ASK YOU TO MAKE YOUR COMMENTS IN |
| 04:48PM | 13 | COURT.  WE DON'T HAVE TO COME BACK HERE. |
| 04:48PM | 14 | ALL RIGHT.  THANK YOU. |
| 04:48PM | 15 | (END OF DISCUSSION AT SIDE-BAR.) |
| 04:48PM | 16 | THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD. |
| 04:48PM | 17 | ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 04:48PM | 18 | THANK YOU FOR YOUR PATIENCE AGAIN, LADIES AND GENTLEMEN. |
| 04:48PM | 19 | I DID WANT TO FOLLOW UP WITH A COUPLE OF JURORS, AND LET'S |
| 04:48PM | 20 | SEE. |
| 04:48PM | 21 | JUROR NUMBER 90.  THAT'S MS. RAMER.  YES, WHY DON'T YOU |
| 04:49PM | 22 | COME FORWARD, MS. RAMER.  I JUST HAVE A QUESTION ABOUT -- I |
| 04:49PM | 23 | THINK YOU HAD SAID IN YOUR QUESTIONNAIRE THAT YOU HAD READ A |
| 04:49PM | 24 | BOOK. |
| 04:49PM | 25 | PROSPECTIVE JUROR:  I READ THE BEGINNING PART OF |

04:49PM  1      "BAD BLOOD."

04:49PM  2                  THE COURT:  OKAY.  AND HOW, HOW FAR DID YOU GET IN

04:49PM  3      THE BOOK?

04:49PM  4                  PROSPECTIVE JUROR:  MAYBE A CHAPTER.

04:49PM  5                  THE COURT:  OH, ONE CHAPTER?

04:49PM  6                  PROSPECTIVE JUROR:  YEAH.

04:49PM  7                  THE COURT:  OH, OKAY.

04:49PM  8                  PROSPECTIVE JUROR:  I DIDN'T LIKE THE STYLE, SO I

04:49PM  9      JUST STOPPED READING.

04:49PM  10                 THE COURT:  OKAY.  DID YOU READ -- I'M SORRY TO

04:49PM  11     DRILL DOWN ON THIS, BUT DID YOU READ THE ENTIRETY OF THE

04:49PM  12     CHAPTER, OR DID YOU SKIM THE CHAPTER?  DID YOU FINISH THE

04:49PM  13     COMPLETE CHAPTER?

04:49PM  14                 PROSPECTIVE JUROR:  I'M NOT SURE.  IT WAS A LONG

04:49PM  15     TIME AGO.  I STARTED READING IT.  IT DIDN'T APPEAL TO ME.  I

04:49PM  16     STOPPED.

04:49PM  17                 THE COURT:  OKAY.

04:49PM  18                 PROSPECTIVE JUROR:  MY GUESS IS A CHAPTER.

04:49PM  19                 THE COURT:  YOU'RE QUITE CONFIDENT THAT YOU NEVER

04:49PM  20     GOT TO CHAPTER 2?

04:49PM  21                 PROSPECTIVE JUROR:  PRETTY CONFIDENT, YEAH.

04:49PM  22                 THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

04:49PM  23          IS THERE ANYTHING ABOUT CHAPTER 1 OR ANYTHING THAT YOU'VE

04:50PM  24     READ, THE DUST COVER, ANYTHING ABOUT THAT BOOK, DID YOU READ IT

04:50PM  25     ONLINE OR DID YOU READ A HARD COPY?

| 04:50PM | 1 | PROSPECTIVE JUROR:  NO, A FRIEND GAVE ME A COPY OF |
| 04:50PM | 2 | IT. |
| 04:50PM | 3 | THE COURT:  A FRIEND GAVE YOU A COPY.  A HARD COPY? |
| 04:50PM | 4 | PROSPECTIVE JUROR:  YES. |
| 04:50PM | 5 | THE COURT:  AND THEN YOU GOT A CHAPTER IN AND THEN |
| 04:50PM | 6 | YOU STOPPED? |
| 04:50PM | 7 | PROSPECTIVE JUROR:  YES. |
| 04:50PM | 8 | THE COURT:  DID YOU RETURN THE BOOK TO THE FRIEND? |
| 04:50PM | 9 | PROSPECTIVE JUROR:  NO.  IT'S STILL -- IT'S PACKED. |
| 04:50PM | 10 | I RECENTLY MOVED.  IT'S BACKED IN A BOX WITH ALL OF THE REST OF |
| 04:50PM | 11 | MY BOOKS. |
| 04:50PM | 12 | THE COURT:  I SEE.  YOU HAVE NO ACCESS TO IT? |
| 04:50PM | 13 | PROSPECTIVE JUROR:  I MEAN, I COULD GET TO IT IF I |
| 04:50PM | 14 | NEEDED TO, BUT IT WOULD INVOLVE UNPACKING AN AWFUL LOT OF BOXES |
| 04:50PM | 15 | OF BOOKS. |
| 04:50PM | 16 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 04:50PM | 17 | MR. SCHENK, ANY QUESTIONS? |
| 04:50PM | 18 | MR. SCHENK:  NO, YOUR HONOR. |
| 04:50PM | 19 | MR. DOWNEY:  MS. RAMER, HAVE YOU READ OR WATCHED |
| 04:50PM | 20 | ANYTHING THAT WOULD SUMMARIZE THE BOOK IN ANY WAY? |
| 04:50PM | 21 | PROSPECTIVE JUROR:  I DON'T BELIEVE SO. |
| 04:50PM | 22 | THE COURT:  NOTHING THAT COMES TO YOUR MIND TODAY |
| 04:50PM | 23 | THAT YOU HAVE SEEN, A VIDEO OR SUMMARY? |
| 04:50PM | 24 | PROSPECTIVE JUROR:  ABOUT THE CONTENTS OF THAT BOOK? |
| 04:51PM | 25 | THE COURT:  YES. |

04:51PM  1              PROSPECTIVE JUROR:  NO.

04:51PM  2              THE COURT:  ANYTHING FURTHER?

04:51PM  3              MR. DOWNEY:  NOTHING FURTHER.

04:51PM  4              MR. SCHENK:  NO, YOUR HONOR.

04:51PM  5              THE COURT:  THANK YOU, MS. RAMER.

04:51PM  6          AND LET ME TURN TO JUROR 14, PLEASE.  AND THAT'S

04:51PM  7      MR. CHUANG.

04:51PM  8          YES, I HAVE THE SAME QUESTION ABOUT THE BOOK.

04:51PM  9          DID YOU READ THE BOOK, SIR?

04:51PM  10             PROSPECTIVE JUROR:  NO, NOT THE BOOK.  I THINK IT'S

04:51PM  11     JUST --

04:51PM  12             THE COURT:  I'M GOING TO -- YES, WHY DON'T YOU WALK

04:51PM  13     TO THE MICROPHONE.  THAT'S PROBABLY BEST.

04:51PM  14             PROSPECTIVE JUROR:  NO.  JUST THE DOCUMENTARY, NOT

04:51PM  15     THE BOOK.

04:51PM  16             THE COURT:  YOU DIDN'T READ THE BOOK AT ALL?

04:51PM  17             PROSPECTIVE JUROR:  NO, I DIDN'T READ THE BOOK.

04:51PM  18             THE COURT:  ALL RIGHT.

04:51PM  19          ANY QUESTIONS, MR. SCHENK?

04:51PM  20             MR. SCHENK:  NO.  THANK YOU.

04:51PM  21             THE COURT:  MR. DOWNEY?

04:51PM  22             MR. DOWNEY:  NO, YOUR HONOR.

04:52PM  23             THE COURT:  THANK YOU.  YOU CAN HAVE A SEAT.

04:52PM  24          MR. DOWNEY, AS TO NUMBER 90?

04:52PM  25             MR. DOWNEY:  NO MOTION, YOUR HONOR.

04:52PM 1          THE COURT:  ALL RIGHT.  THANK YOU.

04:52PM 2       AND AS TO 14 FOR THE --

04:52PM 3          MR. DOWNEY:  I TAKE THE SAME POSITION THAT I STATED

04:52PM 4     TO YOUR HONOR WHEN WE WERE AT SIDE-BAR.

04:52PM 5          THE COURT:  ALL RIGHT.  THANK YOU.

04:53PM 6       (PAUSE IN PROCEEDINGS.)

04:53PM 7          THE COURT:  MR. SCHENK?

04:53PM 8          MR. SCHENK:  NOTHING BEYOND WHAT WE DISCUSSED AT

04:53PM 9     SIDE-BAR.

04:53PM 10         THE COURT:  THANK YOU.  ALL RIGHT.  THANK YOU.

04:53PM 11      I'M GOING TO RELIEVE -- GRANT THE MOTION AS TO JUROR

04:54PM 12    NUMBER 46, 46.

04:54PM 13      NUMBER 90 WAS WITHDRAWN.

04:54PM 14      I'LL OVERRULE AS TO 14.

04:54PM 15      SO 46, MR. WONG WAS GRANTED FOR REASONS STATED.

04:54PM 16      ANYTHING FURTHER FOR TODAY?

04:54PM 17         MR. SCHENK:  NO, YOUR HONOR.

04:54PM 18         MR. DOWNEY:  NO, YOUR HONOR.

04:54PM 19         THE COURT:  ALL RIGHT.  THANK YOU.

04:54PM 20      LADIES AND GENTLEMEN, AS I INDICATED EARLIER, WHAT YOU'RE

04:54PM 21    PERMITTED TO DO NOW, YOU'LL BE PERMITTED TO LEAVE THE

04:54PM 22    COURTHOUSE.

04:54PM 23      YOU WILL BE CONTACTED -- DID THEY GO DOWNSTAIRS?  NO.

04:54PM 24      (DISCUSSION OFF THE RECORD BETWEEN THE COURT AND THE

04:55PM 25    CLERK.)

04:55PM   1          (PAUSE IN PROCEEDINGS.)

04:55PM   2               THE COURT:  LADIES AND GENTLEMEN, PLEASE LISTEN FOR

04:55PM   3     YOUR NUMBERS.  WE HAVE MADE DECISIONS ABOUT JURORS WHO DO NOT

04:55PM   4     NEED TO CHECK IN WITH THE COURT AND YOU WILL BE RELEASED FROM

04:55PM   5     POTENTIAL JURY SERVICE.

04:55PM   6          THOSE ARE JUROR NUMBERS:  1, 31, 63, 11, 94, 46, 49, AND

04:55PM   7     95.

04:55PM   8          THOSE JURORS, THOSE JUROR NUMBERS, YOU'RE EXCUSED.  YOU

04:56PM   9     WILL NOT BE CALLED BACK FOR JURY SERVICE.

04:56PM  10          ALL OF THE OTHER JURORS WHOSE NUMBERS I DID NOT CALL,

04:56PM  11     PLEASE, YOU MAY LEAVE NOW, BUT YOU MAY BE RECALLED FOR JURY

04:56PM  12     SERVICE.

04:56PM  13          AS I SAID, WE ARE GOING TO DO THIS AGAIN TOMORROW WITH

04:56PM  14     ADDITIONAL JURORS.

04:56PM  15          SO DO PLEASE MAKE YOURSELVES AVAILABLE.  YOU MAY RECEIVE

04:56PM  16     COMMUNICATION CALLING YOU BACK TO COURT.

04:56PM  17          IN THE INTERIM, AGAIN, YOU ARE NOT, YOU ARE NOT TO READ,

04:56PM  18     LISTEN TO, OR TALK ABOUT ANYTHING ABOUT THIS CASE ON ANY MEDIA,

04:56PM  19     NEWS REPORT, INTERNET INFORMATION, CHAT ROOMS, FACEBOOK,

04:56PM  20     TWITTER, ANY OF THOSE TYPE OF THINGS, YOU'RE NOT TO DISCUSS THE

04:56PM  21     CASE WITH ANYONE, YOU'RE NOT TO DISCUSS ANYTHING ABOUT YOUR

04:56PM  22     POTENTIAL SERVICE IN THE CASE OR THE THINGS ABOUT IT WITH

04:56PM  23     ANYONE UNTIL YOU'RE RELIEVED FROM YOUR JURY SERVICE OR UNTIL

04:56PM  24     FURTHER COURT ORDER.

04:56PM  25          IS THERE ANYONE WHO IS GOING TO HAVE ANY DIFFICULTY

04:57PM 1    FOLLOWING THAT ORDER?

04:57PM 2        I SEE NO HANDS.

04:57PM 3        ALL RIGHT.  THANK YOU, LADIES AND GENTLEMEN.  THANK YOU

04:57PM 4    FOR YOUR PATIENCE.  YOU'LL BE CONTACTED LATER.

04:57PM 5        I SEE A HAND.  YES, SIR?  WHAT JUROR NUMBER ARE YOU?

04:57PM 6            PROSPECTIVE JUROR:  48.

04:57PM 7            THE COURT:  48.

04:57PM 8            PROSPECTIVE JUROR:  I'M SORRY.  ME, I'M

04:57PM 9    SELF-EMPLOYED.  ME AND MY WIFE RUN A STORE AND I HAVE TO TAKE

04:57PM 10   CARE OF ALL OF MY VENDORS AND DISTRIBUTORS, AND SO IF YOU WOULD

04:57PM 11   KINDLY EXCUSE ME FROM JURY DUTY KINDLY.

04:57PM 12           THE COURT:  ALL RIGHT.  SIR, YOU HAVE NOT BEEN

04:57PM 13   SELECTED AS A JUROR IN THE CASE YET.  I DON'T KNOW IF THAT IS

04:57PM 14   GOING TO HAPPEN.

04:57PM 15           PROSPECTIVE JUROR:  RIGHT, SIR.

04:57PM 16           THE COURT:  SO IF YOU WOULD JUST STAY TUNED AND THE

04:57PM 17   COURT WILL CONTACT YOU AS TO ANYTHING FURTHER.

04:57PM 18           PROSPECTIVE JUROR:  THANK YOU, SIR.

04:57PM 19           THE COURT:  YOU'RE WELCOME.  ALL RIGHT.

04:57PM 20       AND I SEE ANOTHER HAND.

04:58PM 21       MR. PENUMUDY, IS THAT RIGHT?  DID YOU WANT TO SAY

04:58PM 22   SOMETHING?

04:58PM 23           PROSPECTIVE JUROR:  YES, YOUR HONOR.

04:58PM 24       I HAD MENTIONED EARLIER ABOUT MEDICAL CONDITIONS, AND I

04:58PM 25   WASN'T SURE WHAT THE RIGHT TIME WAS.  BUT I DO HAVE A NOTE FROM

04:58PM  1    MY DOCTOR REGARDING THAT AND TO BE EXCUSED.  I DON'T KNOW WHEN

04:58PM  2    TO PRESENT THAT, BUT I JUST WANTED TO BRING THAT UP.

04:58PM  3            THE COURT:  OH, WELL, WE TALKED ABOUT THIS EARLIER

04:58PM  4    AND I THOUGHT YOU SAID --

04:58PM  5            PROSPECTIVE JUROR:  THAT WAS NOT THE EXTENT OF ALL

04:58PM  6    OF MY CONDITIONS, SO --

04:58PM  7            THE COURT:  OH, SO YOU HAVE SOME OTHER INFORMATION

04:58PM  8    REGARDING MEDICAL ISSUES?

04:58PM  9            PROSPECTIVE JUROR:  I MEAN, I DO HAVE A NOTE.

04:58PM  10           THE COURT:  WELL, I'LL HAVE -- MS. KRATZMANN WILL

04:58PM  11   GET THAT NOTE FROM YOU AND I'LL LOOK AT IT HERE.

04:58PM  12           PROSPECTIVE JUROR:  OKAY.  OKAY.

04:58PM  13           PROSPECTIVE JUROR:  (HANDING.)

04:59PM  14       THANK YOU.

04:59PM  15           THE CLERK:  (HANDING.)

04:59PM  16           THE COURT:  LET ME SHARE THIS WITH COUNSEL.

04:59PM  17       MS. KRATZMANN.

04:59PM  18           THE CLERK:  YES, YOUR HONOR.

04:59PM  19           THE COURT:  THANK YOU, SIR.  I'VE READ THE NOTE.

05:00PM  20       COUNSEL?

05:00PM  21           MR. SCHENK:  NO OBJECTION TO DISMISSAL.

05:00PM  22           MR. DOWNEY:  NO OBJECTION.

05:00PM  23           THE COURT:  ALL RIGHT.  YOU'RE EXCUSED,

05:00PM  24   MR. PENUMUDY.  THANK YOU.

05:00PM  25       THANK YOU, FOLKS.  WE'RE IN RECESS NOW.  PLEASE REMEMBER

| | | |
|---|---|---|
| 05:00PM | 1 | THE ADMONITION.  IT'S IN PLACE UNTIL YOU HEAR OTHERWISE.  THANK |
| 05:00PM | 2 | YOU. |
| 05:00PM | 3 | COUNSEL, YOU SHOULD REMAIN FOR JUST A MOMENT. |
| 05:00PM | 4 | (JURY OUT AT 5:00 P.M.) |
| 05:01PM | 5 | THE COURT:  THANK YOU.  PLEASE BE SEATED. |
| 05:01PM | 6 | THE RECORD SHOULD REFLECT THAT OUR PROSPECTIVE JURY PANEL |
| 05:01PM | 7 | HAS LEFT.  ALL COUNSEL ARE PRESENT. |
| 05:01PM | 8 | COUNSEL, ONE THING I WANTED TO INDICATE, WE DID HAVE, AS I |
| 05:01PM | 9 | SAID, OUR PROTOCOL WOULD BE SIDE-BARS WOULD BE HELD IN THE JURY |
| 05:01PM | 10 | ROOMS JUST BECAUSE OF THE INEFFICIENCY OF OUR MICROPHONE AND |
| 05:01PM | 11 | SPACING.  AT THE BENCH HERE WE COULD NOT GET ALL COUNSEL SAFELY |
| 05:01PM | 12 | AROUND THIS AREA.  THAT'S WHY WE HAD TO USE THE JURY |
| 05:01PM | 13 | DELIBERATION ROOM FOR THAT PURPOSE. |
| 05:01PM | 14 | I AM NOT GOING TO SEAL THAT TRANSCRIPT, HOWEVER.  THE |
| 05:01PM | 15 | TRANSCRIPT OF THE DISCUSSIONS WE HAD REGARDING ANY CHALLENGES |
| 05:01PM | 16 | WILL REMAIN A PUBLIC ITEM ON THE TRANSCRIPT. |
| 05:01PM | 17 | SO IT'S AVAILABLE FOR PUBLIC USE SUCH THAT THE PUBLIC |
| 05:02PM | 18 | COULD UNDERSTAND AND PARTICIPATE AT LEAST AS TO READING OUR |
| 05:02PM | 19 | DISCUSSIONS REGARDING THAT. |
| 05:02PM | 20 | ANY OBJECTION TO THAT, MR. DOWNEY? |
| 05:02PM | 21 | MR. DOWNEY:  NO, YOUR HONOR. |
| 05:02PM | 22 | THE COURT:  MR. SCHENK? |
| 05:02PM | 23 | MR. SCHENK:  NO, YOUR HONOR. |
| 05:02PM | 24 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 05:02PM | 25 | ANYTHING FURTHER BEFORE WE END FOR THE EVENING? |

05:02PM 1      MR. DOWNEY?

05:02PM 2          MR. DOWNEY:  YOUR HONOR, I WOULD JUST NOTE IN

05:02PM 3  CONNECTION WITH MR. SINGH, WHO IS JUROR NUMBER 48, WHO I THINK

05:02PM 4  IS THE GENTLEMAN WHO SPOKE, I THINK WE HAD PREVIOUSLY INDICATED

05:02PM 5  TO THE COURT THAT WE WOULD HAVE NO OBJECTION TO HIS DISMISSAL

05:02PM 6  FOR HARDSHIP.

05:02PM 7    I KNOW TODAY THAT ISSUE DID NOT COME UP WHEN YOUR HONOR

05:02PM 8  HAD ASKED THAT QUESTION.  IT'S APPARENT TO ME FROM WHAT JUST

05:02PM 9  OCCURRED THAT THERE IS A SERIOUS HARDSHIP CASE.

05:02PM 10    SO TO THE EXTENT THAT IT IS HELPFUL TO THE COURT, I JUST

05:02PM 11  WANTED TO LET THE COURT KNOW BASED ON WHAT MR. SINGH SAID IN

05:02PM 12  THE QUESTIONNAIRE AND TODAY THAT WE CONSENT TO HIS DISMISSAL.

05:03PM 13          MR. SCHENK:  YOUR HONOR, CAN I CONFIRM THAT HE

05:03PM 14  WOULDN'T COME TOMORROW REGARDLESS?

05:03PM 15          THE COURT:  THAT'S CORRECT.

05:03PM 16          MR. SCHENK:  MAY WE JUST HAVE THE EVENING TO LOOK AT

05:03PM 17  THE QUESTIONNAIRE?

05:03PM 18          THE COURT:  THAT'S FINE.  THAT'S FINE.

05:03PM 19    I RECALL HIS QUESTIONNAIRE.  I THINK HE AND HIS WIFE RUN A

05:03PM 20  LIQUOR STORE IN GILROY, CALIFORNIA.  THEY'RE THE ONLY PEOPLE

05:03PM 21  WHO -- I THINK HE SAID HE HANDLES THE MERCHANDISING AND THE

05:03PM 22  ORDERING AND THOSE TYPES OF THINGS, AND THAT'S WHAT I RECALL

05:03PM 23  FROM HIS QUESTIONNAIRE.

05:03PM 24    YES, THAT'S WHY I DIDN'T EXCUSE HIM TODAY.  HE'S NOT

05:03PM 25  COMING BACK TOMORROW AND WON'T BE PART OF THE PANEL TOMORROW,

05:03PM  1    AND WE CAN CERTAINLY LOOK AND SEE.

05:03PM  2         I HAVEN'T DONE THE MATH.  I DON'T KNOW WHERE OUR NUMBERS

05:03PM  3    ARE RIGHT NOW.

05:03PM  4         IT MAY BE -- WE DON'T KNOW, BUT IT MAY BE WITH TOMORROW'S

05:03PM  5    PANEL WE WILL HAVE SUFFICIENT JURORS SUCH THAT WE CAN BEGIN THE

05:03PM  6    PROCESS OF ANY JURY SELECTION PROPER, THAT IS, EXERCISING ANY

05:03PM  7    PEREMPTORY CHALLENGES.

05:03PM  8         I THINK WE HAVE 46 COMING IN TOMORROW, MS. KRATZMANN?

05:03PM  9              THE CLERK:  YES, YOUR HONOR.

05:03PM 10              THE COURT:  AND I'LL LET YOU DO THE MATH ON THAT

05:04PM 11    WITH WHAT WE HAVE LEFT.

05:04PM 12         WE NEED 17 JURORS, PLUS 5 FOR OUR ALTERNATES, AND WE MAY

05:04PM 13    HAVE ENOUGH WITH TOMORROW'S 46 TO ACCOMPLISH THAT.  I'M JUST

05:04PM 14    ADVANCING THAT.

05:04PM 15              THE CLERK:  YOUR HONOR, I THINK WE HAVE REMAINING,

05:04PM 16    WE HAD 39 JURORS TO DATE AND I BELIEVE YOU EXCUSED 14, AND SO

05:04PM 17    THAT LEAVES US WITH 25 IN THIS GROUP TODAY.

05:04PM 18              THE COURT:  SO IT SEEMS THAT MATHEMATICALLY IT'S

05:04PM 19    HIGHLY POSSIBLE THAT WE'LL HAVE A SUFFICIENT SUPPLY OF JURORS

05:04PM 20    WITH OUR GROUP TOMORROW.  IS THAT SAFE TO SAY, OR OBSERVE?

05:04PM 21              MR. DOWNEY:  IT SEEMS THAT WAY, YOUR HONOR.

05:04PM 22              THE COURT:  ALL OF YOU MATH WHIZZES.  OF COURSE WE

05:04PM 23    DON'T KNOW OF ANY CAUSE CHALLENGES OR WHAT WILL COME UP.

05:04PM 24         OKAY.  I JUST WANTED TO CLARIFY THAT.

05:04PM 25         WE DID RESERVE THURSDAY FOR POTENTIAL HEARING IF NEEDED,

05:04PM 1    AND SO WE STILL HAVE THAT AVAILABLE, BUT WE'LL JUST SEE WHERE

05:04PM 2    THIS TAKES US.

05:05PM 3         ALL RIGHT.  ANYTHING FURTHER FROM THE GOVERNMENT?

05:05PM 4              MR. SCHENK:  NO.  THANK YOU.

05:05PM 5              THE COURT:  ANYTHING FROM THE DEFENSE?

05:05PM 6              MR. DOWNEY:  NO, YOUR HONOR.

05:05PM 7              THE COURT:  ALL RIGHT.  HAVE A GOOD EVENING.  THANK

05:05PM 8    YOU.  I'LL SEE YOU TOMORROW MORNING.  THANK YOU.

05:05PM 9              THE CLERK:  COURT IS ADJOURNED.

05:05PM 10        (COURT ADJOURNED AT 5:05 P.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3          CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18

19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20

21         DATED:  AUGUST 31, 2021

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Amy Mason Saharia*

AMY MASON SAHARIA

April 17, 2023