No. 22-10312

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

---

## EXCERPTS OF RECORD
## VOL. XV of LVII | ER-3946 to ER-4176

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

265

```
 1

 2                      UNITED STATES DISTRICT COURT

 3                    NORTHERN DISTRICT OF CALIFORNIA

 4                          SAN JOSE DIVISION

 5
        UNITED STATES OF AMERICA,       )  CR-18-00258-EJD
 6                                      )
                        PLAINTIFF,      )  SAN JOSE, CALIFORNIA
 7                                      )
                 VS.                    )  VOLUME 2
 8                                      )
        ELIZABETH A. HOLMES,            )  SEPTEMBER 1, 2021
 9                                      )
                        DEFENDANT.      )  PAGES 265 - 465
10      _____)

11                   TRANSCRIPT OF TRIAL PROCEEDINGS
12             BEFORE THE HONORABLE EDWARD J. DAVILA
                   UNITED STATES DISTRICT JUDGE
13
        A P P E A R A N C E S:
14
        FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
15                            BY:  JOHN C. BOSTIC
                                   JEFFREY B. SCHENK
16                            150 ALMADEN BOULEVARD, SUITE 900
                              SAN JOSE, CALIFORNIA 95113
17
                              BY:  ROBERT S. LEACH
18                                 KELLY VOLKAR
                              1301 CLAY STREET, SUITE 340S
19                            OAKLAND, CALIFORNIA 94612

20          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
        OFFICIAL COURT REPORTERS:
22                            IRENE L. RODRIGUEZ, CSR, RMR, CRR
                              CERTIFICATE NUMBER 8074
23                            LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
24
             PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1        A P P E A R A N C E S:  (CONT'D)

 2


 3   FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                              BY:  KEVIN M. DOWNEY
 4                                 LANCE A. WADE
                                   KATHERINE TREFZ
 5                            725 TWELFTH STREET, N.W.
                              WASHINGTON, D.C. 20005
 6
                              LAW OFFICE OF JOHN D. CLINE
 7                            BY:  JOHN D. CLINE
                              ONE EMBARCADERO CENTER, SUITE 500
 8                            SAN FRANCISCO, CALIFORNIA 94111

 9
     ALSO PRESENT:            FEDERAL BUREAU OF INVESTIGATION
10                            BY:  ADELAIDA HERNANDEZ

11
                              OFFICE OF THE U.S. ATTORNEY
12                            BY:  LAKISHA HOLLIMAN, PARALEGAL
                                   MADDI WACHS, PARALEGAL
13

14

15

16

17

18

19

20

21

22

23

24

25
```

267

```
 1    SAN JOSE, CALIFORNIA                    SEPTEMBER 1, 2021

 2                        P R O C E E D I N G S

 3

 4         (COURT CONVENED AT 9:05 A.M.)

 5         (PROSPECTIVE JURY PANEL OUT AT 9:05 A.M.)

 6              THE COURT:  LET'S GO ON THE RECORD IN THIS MATTER

 7    THIS MORNING.  THIS IS 18-258, UNITED STATES VERSUS

 8    ELIZABETH HOLMES.

 9         LET ME GET APPEARANCES OF THE PARTIES, PLEASE.

10         MR. SCHENK.

11              MR. SCHENK:  GOOD MORNING, YOUR HONOR.

12         JEFF SCHENK ON BEHALF UNITED STATES.  I'M APPEARING THIS

13    MORNING ALONG WITH MY COLLEAGUES ROBERT LEACH AND JOHN BOSTIC,

14    AND ALSO SPECIAL AGENT ADDY HERNANDEZ FROM THE FBI, KELLY

15    VOLKAR FROM THE U.S. ATTORNEY'S OFFICE AND MADDI WACHS FROM THE

16    U.S. ATTORNEY'S OFFICE.

17              THE COURT:  THANK YOU.  GOOD MORNING.

18         MR. DOWNEY.

19              MR. DOWNEY:  GOOD MORNING, YOUR HONOR.

20         KEVIN DOWNEY FOR MS. HOLMES.  I'M HERE WITH MY COLLEAGUES

21    LANCE WADE AND KATIE TREFZ AND OUR COCOUNSEL JOHN CLINE IS WITH

22    US.  MS. HOLMES IS PRESENT IN COURT.

23              THE COURT:  THANK YOU.  GOOD MORNING EVERYONE.

24         THIS IS OUR SECOND DAY OF JURY SELECTION, AND WE HAVE NOT

25    BROUGHT OUR JURY UP, OUR PROSPECTIVE PANEL UP YET.
```

| | | |
|---|---|---|
| 09:06AM | 1 | AS WE EXPERIENCED YESTERDAY, THERE'S -- WITH THE SIZE OF |
| 09:06AM | 2 | THE PANELS BEING SUCH AND BROKEN INTO THREE SEPARATE TRANCHES, |
| 09:06AM | 3 | WE'VE HAD SOME DIFFICULTY WITH FOLKS OR FOLKS HAVE HAD |
| 09:06AM | 4 | DIFFICULTY ARRIVING ON TIME AND ON THEIR CURRENT DAYS. |
| 09:06AM | 5 | AS I UNDERSTAND IT, SOME JURORS WHO WERE SUPPOSED TO BE |
| 09:06AM | 6 | HERE YESTERDAY SHOWED UP TODAY, I BELIEVE, AND SOME JURORS WHO |
| 09:06AM | 7 | WERE SUPPOSED TO BE HERE TOMORROW SHOWED UP TODAY. |
| 09:06AM | 8 | SO I THOUGHT WE WOULD TALK ABOUT THOSE INDIVIDUALS. |
| 09:07AM | 9 | ALSO, I DID WANT TO TALK ABOUT A JUROR WE TALKED ABOUT |
| 09:07AM | 10 | YESTERDAY, MR. SINGH. |
| 09:07AM | 11 | I THINK IF YOU RECALL MR. SINGH, HE TALKED WITH US ABOUT |
| 09:07AM | 12 | HIS FINANCIAL HARDSHIP WITH HIS BUSINESS. |
| 09:07AM | 13 | I THINK BOTH COUNSEL AGREED TO THAT.  I TOLD MR. SINGH |
| 09:07AM | 14 | THAT WE WOULD LET HIM KNOW, AND MY SENSE IS THAT I SHOULD HAVE |
| 09:07AM | 15 | YESTERDAY DONE THIS, BUT LET ME EXCUSE HIM FOR FINANCIAL |
| 09:07AM | 16 | REASONS TODAY. |
| 09:07AM | 17 | ANY OBJECTION TO THAT, MR. SCHENK? |
| 09:07AM | 18 | MR. SCHENK:  NO, YOUR HONOR. |
| 09:07AM | 19 | THE COURT:  MR. DOWNEY? |
| 09:07AM | 20 | MR. DOWNEY:  NO, YOUR HONOR. |
| 09:07AM | 21 | THE COURT:  AND WHAT NUMBER WAS MR. SINGH? |
| 09:07AM | 22 | MR. DOWNEY:  I BELIEVE HE WAS 48, YOUR HONOR. |
| 09:07AM | 23 | THE COURT:  LET ME EXCUSE HIM NOW. |
| 09:07AM | 24 | LET ME ASK, COUNSEL, DID YOU RECEIVE A JURY SELECTION LIST |
| 09:07AM | 25 | THAT MS. KRATZMANN PREPARED THAT ARE THE ORDER OF JURORS, DID |

| | | |
|---|---|---|
| 09:07AM | 1 | YOU RECEIVE THAT? |
| 09:07AM | 2 | THE CLERK: NOT YET, YOUR HONOR. |
| 09:07AM | 3 | THE COURT: OH. |
| 09:08AM | 4 | THE CLERK: (HANDING.) |
| 09:08AM | 5 | THE COURT: THANK YOU, MS. KRATZMANN. |
| 09:08AM | 6 | THIS IS THE FORM YOU'LL USE WHEN YOU ENGAGE YOUR |
| 09:08AM | 7 | SELECTIONS, AND MS. KRATZMANN HAS PUT DOWN, AT LEAST AS FAR AS |
| 09:08AM | 8 | WE CAN TELL, THE ORDER OF REMAINING JURORS, PROSPECTIVE JURORS |
| 09:08AM | 9 | JUST FOR YOUR ASSISTANCE IN COLLATING THOSE INDIVIDUALS. |
| 09:08AM | 10 | I WANTED TO TALK ABOUT SOME OTHER JURORS. AND THERE WERE |
| 09:08AM | 11 | TWO JURORS THAT I BELIEVE MS. KRATZMANN SENT AN EMAIL TO YOU |
| 09:08AM | 12 | ABOUT THIS MORNING, AND THEY WERE INDIVIDUALS WHO MAY HAVE READ |
| 09:08AM | 13 | SOME LITERATURE, AND I WANTED TO ASK WHETHER OR NOT YOU HAD |
| 09:08AM | 14 | DISCUSSIONS ABOUT THOSE TWO PROSPECTIVE JURORS REMAINING. |
| 09:08AM | 15 | MR. DOWNEY: YOUR HONOR, THE DEFENSE CONSENTS TO THE |
| 09:08AM | 16 | EXCUSAL OF THOSE TWO JURORS. |
| 09:08AM | 17 | THE COURT: LET'S SEE. THOSE NUMBERS AGAIN WERE -- |
| 09:09AM | 18 | MS. KRATZMANN, DO YOU HAVE THOSE NUMBERS? |
| 09:09AM | 19 | THE CLERK: I'M SORRY, JUST ONE MOMENT. |
| 09:09AM | 20 | MR. SCHENK: THE FIRST ONE WAS 135, AND THE |
| 09:09AM | 21 | GOVERNMENT CONSENTS TO EXCUSE JUROR 135. |
| 09:09AM | 22 | I BELIEVE THE SECOND ONE WAS 171. |
| 09:09AM | 23 | THE COURT: I THINK THAT'S RIGHT. |
| 09:09AM | 24 | MR. SCHENK: AND FROM THE QUESTIONNAIRE THERE WAS A |
| 09:09AM | 25 | LACK OF CLARITY AT LEAST FROM THE GOVERNMENT'S PERSPECTIVE, AND |

09:09AM  1    WE WOULD APPRECIATE NOT EXCUSING THAT JUROR YET, THOUGH WE

09:09AM  2    MIGHT VERY WELL BE HEADED IN THE DIRECTION OF EXCUSING THAT

09:09AM  3    JUROR.

09:09AM  4            THE COURT:  MR. DOWNEY?

09:09AM  5            MR. DOWNEY:  YOUR HONOR, WE WOULD CONSENT TO EXCUSAL

09:09AM  6    TO BOTH AT THIS TIME, BUT WE UNDERSTAND THE GOVERNMENT WANTS TO

09:09AM  7    VOIR DIRE THAT JUROR.

09:09AM  8            THE COURT:  AND THIS IS CONSISTENT WITH THE

09:09AM  9    CONVERSATIONS THAT WE HAD YESTERDAY AT SIDE-BAR REGARDING THE

09:09AM 10    GOVERNMENT'S POSITION ABOUT CERTAIN INDIVIDUALS WHO MAY HAVE

09:09AM 11    READ CERTAIN LITERATURE.

09:09AM 12        I THINK THE GOVERNMENT MAY HAVE AGREED THAT THOSE

09:09AM 13    INDIVIDUALS WHO HAD DONE SO WOULD BE STRICKEN.  SO WE'LL STRIKE

09:09AM 14    AT THIS TIME JUROR NUMBER 135, AND THAT WOULD BE A CAUSE STRIKE

09:10AM 15    BECAUSE OF EXPOSURE TO INFORMATION.

09:10AM 16        WE'LL BRING UP 171 WITH THE REST OF THE PANEL, AND WE'LL

09:10AM 17    EXAMINE JUROR 171 FOR FURTHER CLARITY.

09:10AM 18        I ALSO NOTE THAT JUROR NUMBER 28 WAS SUPPOSED TO BE HERE

09:10AM 19    YESTERDAY.  SHE IS HERE TODAY.  I WANT TO CALL YOUR ATTENTION

09:10AM 20    TO THAT.  IF YOU HAVE THE QUESTIONNAIRE IN HAND, I WOULD LIKE

09:10AM 21    YOU TO LOOK AT THAT MATERIAL.  IT APPEARS THAT, AND MY NOTES

09:10AM 22    REFLECT, THAT IN HER QUESTIONNAIRE SHE INDICATED THAT SHE HAD

09:10AM 23    CHILDCARE ISSUES, AND SHE RESIDES IN SALINAS, I BELIEVE.

09:11AM 24        I WANTED TO ASK YOU WHETHER YOU HAD ANY THOUGHTS ON THIS

09:11AM 25    PROSPECTIVE JUROR?  OF COURSE TAKE TIME TO DISCUSS WITH YOUR

09:11AM  1    TEAMS AND REVIEW HER QUESTIONNAIRE.

09:11AM  2         WHILE YOU'RE DOING THAT I'LL TELL YOUR TEAMS BEHIND YOU

09:11AM  3    JUROR NUMBER 62 WAS TO COME YESTERDAY, AND JUROR NUMBER 62 IS

09:11AM  4    HERE TODAY AND WOULD OTHERWISE BE ADDED TO OUR COMPLEMENT FOR

09:11AM  5    TODAY.

09:11AM  6         (PAUSE IN PROCEEDINGS.)

09:11AM  7         MR. SCHENK:  YOUR HONOR, AS TO JUROR NUMBER 28, NO

09:11AM  8    OBJECTION FROM THE GOVERNMENT FOR HARDSHIP EXCUSAL.

09:12AM  9         MR. DOWNEY:  NO OBJECTION FROM THE DEFENSE.

09:12AM  10        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

09:12AM  11   JUROR NUMBER 28 WILL BE EXCUSED FOR HARDSHIP.  AS I SAID,

09:12AM  12   SHE LIVES IN SALINAS, AND SHE HAS YOUNG CHILDREN.  SALINAS IS

09:12AM  13   PROBABLY A 90 MINUTE DRIVE ON A GOOD DAY FROM THIS COURTHOUSE.

09:12AM  14        SO I WILL EXCUSE JUROR NUMBER 28.  THANK YOU, COUNSEL.

09:12AM  15        MS. KRATZMANN, IF YOU COULD NOTIFY OUR JURY COMMISSIONER

09:12AM  16   THAT JUROR NUMBER 28 HAS BEEN EXCUSED AND NEED NOT COME UP TO

09:12AM  17   THE COURTROOM, AS WELL AS JUROR NUMBER 135.

09:12AM  18        I'M ALSO INFORMED THAT --

09:12AM  19        THE CLERK:  YES, YOUR HONOR.

09:12AM  20        THE COURT:  -- THAT JUROR NUMBER 62 IS HERE TODAY

09:12AM  21   AND WOULD BE ADDED TO OUR PANEL THIS MORNING.  THAT WOULD BE MY

09:12AM  22   INTENT.

09:12AM  23        AND JUROR NUMBER 205, I THINK, IS ALSO HERE, AND 211?

09:12AM  24        MS. KRATZMANN, IS THAT CORRECT?

09:12AM  25        THE CLERK:  YES, YOUR HONOR, WE HAVE 205, 211, AND

09:13AM  1    220.

09:13AM  2            THE COURT:  IF WE CAN ADD THEM TO OUR PANEL, THAT

09:13AM  3    GIVES US --

09:13AM  4        HAVE YOU DONE THE MATH, MS. KRATZMANN?

09:13AM  5            THE CLERK:  IF YOU CAN GIVE ME JUST ONE MOMENT,

09:13AM  6    YOUR HONOR.

09:13AM  7            THE COURT:  I'M SORRY TO GIVE YOU THAT TEST ON THE

09:13AM  8    FLY.

09:13AM  9            THE CLERK:  SO, YOUR HONOR, WE HAVE A TOTAL OF 47

09:13AM  10   TODAY.  THE THREE THAT YOU JUST EXCUSED, JURORS 48, 135 AND 28,

09:13AM  11   THAT TAKES US TO 44.

09:13AM  12       SO IF WE HAVE 205, 211, AND 220, AND THERE'S AN ADDITIONAL

09:13AM  13   3, SO THAT WOULD LEAVE YOU WITH 41 TODAY, YOUR HONOR.

09:13AM  14            THE COURT:  OKAY.  THANK YOU.

09:13AM  15       YOU KNOW, I SET TODAY STARTING AT 9:00 O'CLOCK, AND WHAT

09:14AM  16   WE'RE REALIZING IS LOGISTICS BEING WHAT THEY ARE JURORS SHOWING

09:14AM  17   UP LATE AND THOSE TYPES OF THINGS, AND THEN OUR JUROR

09:14AM  18   COORDINATOR TRYING TO COORDINATE ALL OF THE NUMBERS, IT'S

09:14AM  19   REALISTICALLY -- I THINK YOU RECEIVED SOME INFORMATION FROM

09:14AM  20   MS. KRATZMANN THAT REALISTICALLY WE'LL START ABOUT 9:30.

09:14AM  21   HOPEFULLY WE CAN ARRANGE ALL OF THOSE JURORS DOWNSTAIRS, BRING

09:14AM  22   THEM UP.  OF COURSE IT TAKES SOME TIME TO GET 41 PEOPLE SEATED

09:14AM  23   IN OUR JURY BOX HERE, SO IT'S GOING TO TAKE SOME ADDITIONAL

09:14AM  24   TIME.

09:14AM  25       I KNOW OUR WONDERFUL STAFF IS WORKING AS HARD AS THEY CAN

| | | |
|---|---|---|
| 09:14AM | 1 | TO MAKE THIS HAPPEN SO. |
| 09:14AM | 2 | THE CLERK:  YOUR HONOR, COULD I JUST GET |
| 09:14AM | 3 | CLARIFICATION? |
| 09:14AM | 4 | SO ARE YOU EXCUSING JUROR 62, 211, 205, AND 220? |
| 09:14AM | 5 | THEN THAT WOULD DROP YOU TO 40 JURORS. |
| 09:14AM | 6 | THE COURT:  MS. KRATZMANN, I THOUGHT THEY WERE HERE |
| 09:14AM | 7 | TODAY TO JOIN THE PANEL. |
| 09:14AM | 8 | THE CLERK:  THEY ARE HERE TODAY.  SO YOU WANT TO ADD |
| 09:15AM | 9 | THEM TO THE POOL? |
| 09:15AM | 10 | THE COURT:  YES.  YES. |
| 09:15AM | 11 | THE CLERK:  OKAY.  I'M SORRY. |
| 09:15AM | 12 | THE COURT:  ANY OBJECTION TO ADDING THESE JURORS TO |
| 09:15AM | 13 | OUR POOL TODAY? |
| 09:15AM | 14 | MR. SCHENK:  NO, YOUR HONOR. |
| 09:15AM | 15 | MR. DOWNEY:  WITH RESPECT TO JUROR 62, I NOTE THAT |
| 09:15AM | 16 | THERE'S A MATTER THAT HE WANTS TO DISCUSS -- |
| 09:15AM | 17 | THE COURT:  YES. |
| 09:15AM | 18 | MR. DOWNEY:  -- AT SOME POINT AT SIDE-BAR -- |
| 09:15AM | 19 | THE COURT:  YES. |
| 09:15AM | 20 | MR. DOWNEY:  -- WHICH WAS A MATTER THAT WE WOULD |
| 09:15AM | 21 | LIKE ADDRESSED.  SO I JUST NOTE THAT SO THE COURT CAN CONSIDER |
| 09:15AM | 22 | WHEN DURING THE DAY WE WOULD DO THAT. |
| 09:15AM | 23 | THE COURT:  YES.  I NOTED THAT, AND I THINK THE |
| 09:15AM | 24 | QUESTIONNAIRE SUGGESTS THAT IF IT COMES UP, THAT THAT IS |
| 09:15AM | 25 | SOMETHING THAT HE WOULD LIKE TO TALK ABOUT PRIVATELY. |

| | | |
|---|---|---|
| 09:15AM | 1 | MR. DOWNEY:  RIGHT. |
| 09:15AM | 2 | THE COURT:  RIGHT.  AND WE'LL CERTAINLY DO THAT FOR |
| 09:15AM | 3 | HIM. |
| 09:15AM | 4 | THE CLERK:  SO LET ME MAKE A CORRECTION, YOUR HONOR. |
| 09:15AM | 5 | THE 47 INCLUDED ALL OF THESE JURORS.  SO YOU EXCUSED |
| 09:15AM | 6 | THREE.  SO WE HAVE 44 JURORS TO WORK WITH TODAY. |
| 09:15AM | 7 | THE COURT:  OKAY.  ALL RIGHT. |
| 09:15AM | 8 | THANK YOU.  I'LL STEP DOWN NOW, AND WE'LL LET THE |
| 09:15AM | 9 | COMMISSIONER DO HER GOOD WORK AND BRING FOLKS UP. |
| 09:16AM | 10 | SO IT'S NOW 20 PAST THE HOUR, AND MY SENSE IS THAT THIS IS |
| 09:16AM | 11 | GOING TO TAKE ANOTHER 20 MINUTES OR SO.  SO I JUST TELL YOU |
| 09:16AM | 12 | THAT FOR YOUR INFORMATION. |
| 09:16AM | 13 | MR. DOWNEY:  THANK YOU. |
| 09:16AM | 14 | MR. SCHENK:  THANK YOU. |
| 09:16AM | 15 | THE COURT:  THANK YOU VERY MUCH.  THANK YOU. |
| 09:16AM | 16 | THE CLERK:  COURT IS IN RECESS. |
| 09:16AM | 17 | (RECESS FROM 9:16 A.M. UNTIL 9:53 A.M.) |
| 09:53AM | 18 | (PROSPECTIVE JUROR BROWN PRESENT.) |
| 09:53AM | 19 | THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD IN |
| 09:53AM | 20 | THE HOLMES MATTER.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT |
| 09:53AM | 21 | ONCE AGAIN. |
| 09:53AM | 22 | I BELIEVE WE ALSO HAVE JUROR NUMBER 171. |
| 09:53AM | 23 | IS THAT MR. BROWN? |
| 09:53AM | 24 | PROSPECTIVE JUROR:  YES. |
| 09:53AM | 25 | THE COURT:  YES.  THANK YOU. |

09:53AM   1          GOOD MORNING, SIR.

09:53AM   2          WE BROUGHT YOU UP BECAUSE YOU WERE SUMMONED HERE FOR JURY

09:53AM   3   SERVICE IN A CASE ENTITLED UNITED STATES OF AMERICA VERSUS

09:54AM   4   ELIZABETH HOLMES.  THERE WAS AN ANSWER ON YOUR QUESTIONNAIRE

09:54AM   5   THAT I WANTED TO ASK YOU ABOUT.

09:54AM   6          BUT, YOU KNOW, FIRST WHAT WE'RE GOING TO DO IN A MOMENT IS

09:54AM   7   BRING ALL OF THE PROSPECTIVE JURORS UP, AND WE'LL SWEAR THEM IN

09:54AM   8   TO BEGIN ANSWERING QUESTIONS.

09:54AM   9          YOU'RE HERE, SO PERHAPS WE SHOULD SWEAR YOU RIGHT NOW.  SO

09:54AM   10  IF YOU WOULD RAISE YOUR RIGHT HAND, OUR COURTROOM DEPUTY HAS A

09:54AM   11  QUESTION FOR YOU.

09:54AM   12         (PROSPECTIVE JUROR WAS GIVEN THE OATH.)

09:54AM   13            PROSPECTIVE JUROR:  YES.

09:54AM   14            THE COURT:  THANK YOU.  THANK YOU, MR. BROWN.

09:54AM   15         I JUST WANT TO ASK YOU A QUESTION THAT WE SAW ON YOUR

09:54AM   16  QUESTIONNAIRE, AND AS YOU KNOW FROM FILLING OUT THAT

09:54AM   17  QUESTIONNAIRE LAST WEEK, WE ASKED JURORS TO FILL THAT

09:55AM   18  QUESTIONNAIRE OUT SO WE COULD SEE AND THESE LAWYERS COULD SEE

09:55AM   19  AND THE COURT COULD HAVE SOME ANSWERS TO QUESTIONS THAT WOULD

09:55AM   20  HELP IN THIS SELECTION PROCESS.

09:55AM   21         I WANTED TO DRAW YOUR ATTENTION TO ONE QUESTION IN YOUR

09:55AM   22  QUESTIONNAIRE, AND THAT WAS ABOUT WHETHER OR NOT YOU HAD READ,

09:55AM   23  HEARD ABOUT, SEEN, LISTENED TO, OR DISCUSSED ANYTHING ABOUT

09:55AM   24  THIS CASE.  I THINK THEY'RE QUESTIONS 40, 41 IN THAT AREA.

09:55AM   25         I THINK YOU RESPONDED IN YOUR QUESTIONNAIRE THAT YOU HAD

| | | |
|---|---|---|
| 09:55AM | 1 | READ A BOOK CALLED "BAD BLOOD." I THINK THAT'S WHAT YOU HAD |
| 09:55AM | 2 | SAID. |
| 09:55AM | 3 | PROSPECTIVE JUROR: NO. I HAD SEEN -- I HAD SEEN, I |
| 09:55AM | 4 | GUESS, A DOCUMENTARY. |
| 09:55AM | 5 | THE COURT: CAN YOU SPEAK INTO THE MIKE? |
| 09:55AM | 6 | PROSPECTIVE JUROR: I'M SORRY ABOUT THAT. |
| 09:55AM | 7 | THE COURT: THAT'S QUITE ALL RIGHT. |
| 09:55AM | 8 | PROSPECTIVE JUROR: I HAD SEEN A DOCUMENTARY. |
| 09:56AM | 9 | THE COURT: IT'S QUESTION 37, HAVE YOU WATCHED, |
| 09:56AM | 10 | READ, LISTENED TO OR BEEN TOLD OF ANY OF THE FOLLOWING, PLEASE |
| 09:56AM | 11 | CIRCLE. AND "BAD BLOOD" WAS CIRCLED BY YOU ON YOUR |
| 09:56AM | 12 | QUESTIONNAIRE, AND THAT CAUSED ME TO WONDER WHETHER OR NOT YOU |
| 09:56AM | 13 | HAD READ THE BOOK OR SOMEHOW BECOME FAMILIAR WITH THAT |
| 09:56AM | 14 | MATERIAL. |
| 09:56AM | 15 | PROSPECTIVE JUROR: YEAH, I HADN'T READ THE BOOK. I |
| 09:56AM | 16 | SAW A DOCUMENTARY REGARDING IT. |
| 09:56AM | 17 | THE COURT: I SEE. AND WAS THAT THE -- I THINK YOU |
| 09:56AM | 18 | CIRCLED -- YOU DID CIRCLE, PARDON ME, "20/20" AND "60 MINUTES"? |
| 09:56AM | 19 | PROSPECTIVE JUROR: YES. |
| 09:56AM | 20 | THE COURT: CAN YOU SHARE WITH ME HOW LONG AGO YOU |
| 09:56AM | 21 | SAW THOSE SHOWS AND WHETHER THERE'S ANYTHING ELSE THAT YOU -- |
| 09:56AM | 22 | ANY OTHER INFORMATION THAT YOU RECEIVED ABOUT THIS CASE. |
| 09:56AM | 23 | PROSPECTIVE JUROR: MY BEST RECOLLECTION OF SEEING |
| 09:56AM | 24 | ANY OF THOSE WAS WELL OVER A YEAR, MAYBE A YEAR AND A HALF AGO. |
| 09:57AM | 25 | THE COURT: I SEE. AND IS THERE ANY OTHER MATERIAL |

| | | |
|---|---|---|
| 09:57AM | 1 | THAT YOU CAN RECALL -- |
| 09:57AM | 2 | PROSPECTIVE JUROR:  I MEAN -- |
| 09:57AM | 3 | THE COURT:  -- ABOUT THIS CASE? |
| 09:57AM | 4 | PROSPECTIVE JUROR:  BASIC INTERNET INFORMATION. |
| 09:57AM | 5 | THE COURT:  AND WHAT DO YOU MEAN BY THAT, SIR? |
| 09:57AM | 6 | PROSPECTIVE JUROR:  SORT OF NEWS FEEDS THAT POP UP |
| 09:57AM | 7 | ON THE BROWSER. |
| 09:57AM | 8 | THE COURT:  LET ME ASK YOU, WHAT IS THE MOST RECENT |
| 09:57AM | 9 | INFORMATION THAT YOU RECEIVED, READ, HEARD, LISTENED TO OR SAW |
| 09:57AM | 10 | REGARDING THIS CASE? |
| 09:57AM | 11 | (PAUSE IN PROCEEDINGS.) |
| 09:57AM | 12 | PROSPECTIVE JUROR:  HOW LONG AGO, OR INFORMATION? |
| 09:57AM | 13 | THE COURT:  YES. |
| 09:57AM | 14 | PROSPECTIVE JUROR:  PROBABLY, PROBABLY -- POSSIBLY A |
| 09:57AM | 15 | YEAR. |
| 09:57AM | 16 | THE COURT:  OKAY.  AND BY THAT HAVE YOU SEEN ANY -- |
| 09:57AM | 17 | LET ME JUST ASK YOU, OVER THE WEEKEND DID YOU READ ANY |
| 09:57AM | 18 | NEWSPAPER ARTICLES ABOUT THIS CASE? |
| 09:57AM | 19 | PROSPECTIVE JUROR:  NO.  NO. |
| 09:58AM | 20 | THE COURT:  DID YOU, OVER THE WEEKEND, DID YOU SEE |
| 09:58AM | 21 | ANYTHING ON THE INTERNET OR RECEIVE ANY INFORMATION ON A |
| 09:58AM | 22 | DEVICE, NEWS INFORMATION ABOUT THIS CASE? |
| 09:58AM | 23 | PROSPECTIVE JUROR:  NO. |
| 09:58AM | 24 | THE COURT:  SO THE LAST TIME THAT YOU RECALL SEEING |
| 09:58AM | 25 | SOMETHING, INFORMATION ABOUT THIS CASE WAS ABOUT A YEAR AGO? |

09:58AM  1          PROSPECTIVE JUROR:  YEAH, IN TERMS OF -- I MEAN,

09:58AM  2  OBVIOUSLY THE TELEVISION IS ON, BUT AS SOON AS ANYTHING CAME

09:58AM  3  UP, THE TELEVISION WAS TURNED OFF.

09:58AM  4          THE COURT:  AND WHEN WAS THAT?

09:58AM  5          PROSPECTIVE JUROR:  THAT WAS PROBABLY WITHIN A

09:58AM  6  COUPLE WEEKS.

09:58AM  7          THE COURT:  OKAY.  WOULD THAT HAVE BEEN -- AND I'M

09:58AM  8  SORRY TO DRILL DOWN ON THIS.

09:58AM  9          PROSPECTIVE JUROR:  THAT'S OKAY.

09:58AM 10          THE COURT:  I'M JUST TRYING TO MEASURE YOUR EXPOSURE

09:58AM 11  AND WHEN THAT WAS.

09:58AM 12     SO DID YOU SEE OR HEAR ANY INFORMATION AFTER YOU HAD COME

09:58AM 13  TO COURT AND FILLED OUT YOUR QUESTIONNAIRE?

09:58AM 14          PROSPECTIVE JUROR:  NO.  NO.

09:58AM 15          THE COURT:  OKAY.  WHAT YOU'RE TELLING US THAT YOU

09:59AM 16  SAW, THE TELEVISION AND THOSE THINGS, WAS BEFORE YOU FILLED OUT

09:59AM 17  THE QUESTIONNAIRE?

09:59AM 18          PROSPECTIVE JUROR:  YES.

09:59AM 19          THE COURT:  AND YOU SAID YOU TURNED IT OFF.  WHY DID

09:59AM 20  YOU TURN IT OFF?

09:59AM 21          PROSPECTIVE JUROR:  JUST NOT REALLY INTERESTED.

09:59AM 22          THE COURT:  OKAY.  OKAY.  ALL RIGHT.

09:59AM 23     IS THERE ANYTHING -- MR. BROWN, IS THERE ANYTHING ABOUT

09:59AM 24  WHAT YOU HAVE SEEN IN RELATION TO THIS CASE OR INFORMATION THAT

09:59AM 25  YOU HAVE RECEIVED ABOUT THIS CASE THAT YOU THINK WOULD AFFECT

| | | |
|---|---|---|
| 09:59AM | 1 | YOUR ABILITY TO BE FAIR AND IMPARTIAL TO THE GOVERNMENT AND TO |
| 09:59AM | 2 | MS. HOLMES? |
| 09:59AM | 3 | PROSPECTIVE JUROR:  NO.  NO. |
| 09:59AM | 4 | THE COURT:  OKAY.  I'M GOING TO ASK THESE LAWYERS IF |
| 09:59AM | 5 | THEY HAVE SOME QUESTIONS FOR YOU NOW. |
| 10:00AM | 6 | PROSPECTIVE JUROR:  SURE. |
| 10:00AM | 7 | THE COURT:  AND I MAY HAVE ADDITIONAL QUESTIONS FOR |
| 10:00AM | 8 | YOU. |
| 10:00AM | 9 | MR. SCHENK? |
| 10:00AM | 10 | MR. SCHENK:  NOTHING FROM THE GOVERNMENT.  THANK |
| 10:00AM | 11 | YOU. |
| 10:00AM | 12 | MR. DOWNEY:  GOOD MORNING, MR. BROWN.  MY NAME IS |
| 10:00AM | 13 | KEVIN DOWNEY.  I REPRESENT MS. HOLMES. |
| 10:00AM | 14 | PROSPECTIVE JUROR:  GOOD MORNING. |
| 10:00AM | 15 | MR. DOWNEY:  I JUST HAVE A COUPLE OF QUESTIONS. |
| 10:00AM | 16 | YOU SAID YOU WATCHED A DOCUMENTARY.  HOW LONG |
| 10:00AM | 17 | APPROXIMATELY DO YOU THINK THAT DOCUMENTARY WAS? |
| 10:00AM | 18 | PROSPECTIVE JUROR:  I'M GOING TO SAY AN HOUR OR |
| 10:00AM | 19 | 60 MINUTES. |
| 10:00AM | 20 | MR. DOWNEY:  SO YOU WATCHED "60 MINUTES" ALSO? |
| 10:00AM | 21 | PROSPECTIVE JUROR:  A VARIETY, "60 MINUTES," |
| 10:00AM | 22 | "20/20." |
| 10:00AM | 23 | BUT SPECIFIC TO THE "BAD BLOOD," THAT WAS ABOUT A 60 |
| 10:00AM | 24 | MINUTE PROGRAM, I BELIEVE. |
| 10:00AM | 25 | MR. DOWNEY:  AND WHAT DO YOU REMEMBER LEARNING FROM |

10:00AM 1    THAT PROGRAM ABOUT MS. HOLMES?

10:00AM 2         PROSPECTIVE JUROR:  SHE'S PRETTY SMART.

10:01AM 3    IN TERMS OF THE CASE?  JUST HOW THE COMPANY STARTED, WHAT

10:01AM 4    THEIR COMPETITIVE ADVANTAGE WAS, AND THE TECHNOLOGY THAT THEY

10:01AM 5    WERE USING TO SORT OF ADVANCE THAT WHOLE PROCESS OF BLOOD

10:01AM 6    TESTING.

10:01AM 7         MR. DOWNEY:  WHAT DO YOU REMEMBER ABOUT THE

10:01AM 8    TECHNOLOGY, IF ANYTHING?

10:01AM 9         PROSPECTIVE JUROR:  THAT IT USED MUCH LESS BLOOD

10:01AM 10   THAN CONVENTIONAL TESTING AND IN A SHORTER TIMEFRAME.

10:01AM 11        MR. DOWNEY:  DO YOU REMEMBER SEEING DISCUSSIONS

10:01AM 12   DURING THE DOCUMENTARY BY ANY INDIVIDUALS WHO KNEW MS. HOLMES?

10:01AM 13        PROSPECTIVE JUROR:  OH, UM, THE SHULTZ, SHULTZ.

10:02AM 14        MR. DOWNEY:  IS THAT GEORGE SHULTZ?

10:02AM 15        PROSPECTIVE JUROR:  THE -- WAS IT THE GRANDSON?

10:02AM 16        MR. DOWNEY:  IS IT TYLER SHULTZ?  IS THAT WHO YOU

10:02AM 17   REMEMBER SEEING?

10:02AM 18        PROSPECTIVE JUROR:  I THINK THAT'S HIS NAME.  IT WAS

10:02AM 19   THE GRANDSON.

10:02AM 20        MR. DOWNEY:  OKAY.  SO YOU REMEMBER HEARING FROM

10:02AM 21   GEORGE SHULTZ'S GRANDSON DURING THAT PROGRAM?

10:02AM 22        PROSPECTIVE JUROR:  I BELIEVE SO.

10:02AM 23        MR. DOWNEY:  WHAT DO YOU REMEMBER HIM SAYING DURING

10:02AM 24   THAT PROGRAM?

10:02AM 25        PROSPECTIVE JUROR:  THAT HE HAD QUESTIONS REGARDING

10:02AM 1    THE VALIDITY OF THE TESTING.

10:02AM 2              MR. DOWNEY:  ANYTHING ELSE ABOUT MS. HOLMES THAT YOU

10:02AM 3    REMEMBER LEARNING FROM THAT DOCUMENTARY?

10:02AM 4              PROSPECTIVE JUROR:  SHE WORE BLACK SUITS.

10:03AM 5              MR. DOWNEY:  ANYTHING ELSE?

10:03AM 6              PROSPECTIVE JUROR:  NOTHING I COULD PUT MY FINGER ON

10:03AM 7    OTHER THAN THE CREATION OF THE COMPANY AND JUST OVERALL RUNNING

10:03AM 8    THE COMPANY.

10:03AM 9              MR. DOWNEY:  FAIR ENOUGH.

10:03AM 10       I DON'T HAVE ANY FURTHER QUESTIONS OF YOU, MR. BROWN.

10:03AM 11   THANK YOU.

10:03AM 12             THE COURT:  MR. SCHENK?

10:03AM 13             MR. SCHENK:  NO, THANK YOU.

10:03AM 14             THE COURT:  SO, MR. BROWN, THANK YOU FOR SHARING

10:03AM 15   THIS INFORMATION WITH US.

10:03AM 16       I GET BACK TO MY QUESTION ABOUT WHETHER OR NOT THIS

10:03AM 17   INFORMATION WILL CAUSE YOU TO BE LESS THAN FAIR TO BOTH SIDES.

10:03AM 18   THAT'S REALLY WHAT WE'RE GOING TO ASK FOLKS ABOUT.

10:03AM 19       AND I, I RECOGNIZE WE'RE HUMANS AND WHEN WE'RE ASKED A

10:03AM 20   QUESTION, WE STOP AND WE REFLECT BECAUSE WE WANT TO ANSWER THE

10:03AM 21   QUESTION, WE WANT TO THINK ABOUT THE QUESTION AND TRY TO

10:03AM 22   RECALL.

10:03AM 23       YOU DID THAT.  I'M NOT BEING CRITICAL OF YOU.  I'M JUST

10:03AM 24   SAYING AND MAKING THE OBSERVATION.  YOU WERE VERY THOUGHTFUL

10:03AM 25   ABOUT YOUR ANSWERS HERE.

| 10:04AM | 1 | PROSPECTIVE JUROR:  UH-HUH. |
|---|---|---|

10:04AM  2    THE COURT:  AND IT SEEMED LIKE YOU WERE PROCESSING,

10:04AM  3  TRYING TO USE YOUR MEMORY TO RECALL WHAT YOU SAW IN RESPONSE TO

10:04AM  4  THE QUESTIONS POSED TO YOU.

10:04AM  5    I'M JUST CURIOUS ABOUT -- THIS CASE WILL BE ABOUT

10:04AM  6  THERANOS.  IT WILL BE ABOUT THOSE SHOWS THAT YOU SAW -- OR

10:04AM  7  THOSE SHOWS ARE ACTUALLY ABOUT THIS CASE.  A JUROR -- IF A

10:04AM  8  JUROR IS SEATED TO HEAR THE CASE, THEY MUST MAKE THEIR DECISION

10:04AM  9  ONLY ON THE EVIDENCE THAT IS IN THE COURTROOM.

10:04AM  10    PROSPECTIVE JUROR:  OKAY.

10:04AM  11    THE COURT:  THAT'S IT.  THEY CAN'T USE ANYTHING THAT

10:04AM  12  THEY'VE RECEIVED OUTSIDE, ANYTHING THEY'VE READ, LISTENED TO,

10:04AM  13  WATCHED, OR HEARD FROM A FRIEND OR A RELATIVE ABOUT THE CASE.

10:04AM  14    DO YOU UNDERSTAND THAT?

10:04AM  15    PROSPECTIVE JUROR:  YES, SIR.

10:04AM  16    THE COURT:  HAVE YOU EVER SAT ON A JURY PREVIOUSLY?

10:04AM  17    PROSPECTIVE JUROR:  NO, SIR.

10:04AM  18    THE COURT:  OKAY.  SO THAT'S WHY WE'RE ASKING THESE

10:04AM  19  QUESTIONS.

10:04AM  20    THERE'S BEEN PUBLICITY ABOUT THIS CASE.  THERE'S BEEN

10:05AM  21  PUBLICITY ABOUT INDIVIDUALS WHO MIGHT BE INVOLVED WITH THIS

10:05AM  22  CASE.

10:05AM  23    THE REASON I'M ASKING THESE QUESTIONS AND THE LAWYERS ASK

10:05AM  24  THESE QUESTIONS IS THAT WE WANT TO ASCERTAIN WHETHER OR NOT A

10:05AM  25  JUROR WHO MAY HAVE BEEN EXPOSED TO INFORMATION, AND MANY HAVE

| | | |
|---|---|---|
| 10:05AM | 1 | LIKE YOU, WHETHER OR NOT THEY THINK THAT THEY WOULD BE ABLE TO, |
| 10:05AM | 2 | IF THEY'RE SEATED AS A JUROR, TO NOT ALLOW THAT OUTSIDE |
| 10:05AM | 3 | INFORMATION THAT THEY HAVE BEEN PRIVY TO, TO NOT ALLOW THAT TO |
| 10:05AM | 4 | INFECT THEIR THOUGHT PROCESS AND THEIR DECISION ON THE EVIDENCE |
| 10:05AM | 5 | IN THE CASE. |
| 10:05AM | 6 | DO YOU UNDERSTAND THAT CONCEPT? |
| 10:05AM | 7 | PROSPECTIVE JUROR:  YES, I DO. |
| 10:05AM | 8 | THE COURT:  RIGHT.  SO TELL ME WHAT YOUR THOUGHTS |
| 10:05AM | 9 | ARE ABOUT THAT, HAVING SEEN THESE SHOWS AND TALKED ABOUT THEM |
| 10:05AM | 10 | THIS MORNING. |
| 10:05AM | 11 | PROSPECTIVE JUROR:  I MEAN, OBVIOUSLY IT WAS NEWS. |
| 10:05AM | 12 | BUT IN TERMS OF INFORMATION BASED ON A CASE AND WHAT IS |
| 10:06AM | 13 | HEARD OR TALKED ABOUT OR PRESENTED AS EVIDENCE, I FEEL LIKE I |
| 10:06AM | 14 | CAN BE IMPARTIAL SEPARATING, YOU KNOW, WHAT HAS HAPPENED IN THE |
| 10:06AM | 15 | PAST TO FACTUAL INFORMATION TODAY. |
| 10:06AM | 16 | THE COURT:  OKAY.  THANK YOU. |
| 10:06AM | 17 | IT'S A DIFFICULT THING WE DO.  I RECOGNIZE THAT. |
| 10:06AM | 18 | YESTERDAY I WAS TALKING TO SOME OTHER JURORS AND I SAID, |
| 10:06AM | 19 | HOW DO YOU UNREAD SOMETHING?  HOW DO YOU UNLISTEN TO SOMETHING? |
| 10:06AM | 20 | HOW DO YOU UNRING THAT BELL? |
| 10:06AM | 21 | PROSPECTIVE JUROR:  RIGHT, RIGHT. |
| 10:06AM | 22 | THE COURT:  AND WE ALL KNOW THAT'S NOT POSSIBLE. |
| 10:06AM | 23 | SO WHAT WE TRY TO DO IS WE ASK JURORS, WHAT METHODS WILL |
| 10:06AM | 24 | YOU USE?  HOW WILL YOU SEPARATE THAT?  HOW WILL YOU |
| 10:06AM | 25 | COMPARTMENTALIZE WHAT YOU'VE SEEN, HEARD, OR BEEN EXPOSED TO IN |

10:06AM  1    THE PAST AND SEPARATE THAT JUST SO YOU'RE FOCUSSED ON THE

10:06AM  2    EVIDENCE IN THIS COURTROOM AND NOT ANYTHING ELSE AS YOU MAKE A

10:06AM  3    DECISION?

10:06AM  4         THAT'S A CHALLENGE.  I RECOGNIZE THAT.  THAT'S DIFFICULT.

10:07AM  5              PROSPECTIVE JUROR:  YES.

10:07AM  6              THE COURT:  IS THAT SOMETHING THAT YOU THINK YOU CAN

10:07AM  7    DO?

10:07AM  8              PROSPECTIVE JUROR:  I BELIEVE I CAN.

10:07AM  9              THE COURT:  OKAY.  ANY IDEA ABOUT HOW YOU WOULD --

10:07AM  10   WHAT YOUR PROCESS WOULD BE?

10:07AM  11        FOR EXAMPLE, LET ME SAY, IF YOU'RE SEATED AS A JUROR IN

10:07AM  12   THIS CASE, YOU MIGHT HEAR EVIDENCE, OR YOU WILL HEAR EVIDENCE

10:07AM  13   ABOUT THIS COMPANY AND THE ACTIVITY IN THIS COMPANY.

10:07AM  14        THE GOVERNMENT GOES FIRST AND THEY PUT THE EVIDENCE ON AND

10:07AM  15   THEN THE DEFENSE, IF THEY WISH, THEY CAN PUT EVIDENCE ON AS

10:07AM  16   WELL.

10:07AM  17        AND YOU MIGHT HEAR SOMETHING DURING THAT PRESENTATION THAT

10:07AM  18   CAUSED YOU TO PERHAPS REMEMBER SOMETHING THAT YOU SAW IN ONE OF

10:07AM  19   THESE PROGRAMS.

10:07AM  20        AND THEN IT BECOMES, WELL, WHAT I'M HEARING IN THE

10:07AM  21   COURTROOM IS DIFFERENT THAN WHAT I SAW IN THE PROGRAM, OR MAYBE

10:07AM  22   IT'S THE SAME.  AND THAT MIGHT CAUSE SOMEONE TO THINK, WELL,

10:07AM  23   THAT SUPPORTS WHAT I'M HEARING IN THE COURTROOM, OR IT'S

10:07AM  24   DIFFERENT, SO THAT MIGHT CAUSE SOMEONE TO QUESTION WHAT YOU

10:07AM  25   HEAR IN THE COURTROOM.

| | | |
|---|---|---|
| 10:07AM | 1 | DO YOU UNDERSTAND THAT? |
| 10:08AM | 2 | PROSPECTIVE JUROR:  YES. |
| 10:08AM | 3 | THE COURT:  YES.  SO HOW DO YOU THINK YOU WOULD |
| 10:08AM | 4 | SEPARATE THOSE? |
| 10:08AM | 5 | PROSPECTIVE JUROR:  I MEAN, I RECOGNIZE THAT, YOU |
| 10:08AM | 6 | KNOW, THAT YOU DO HEAR THINGS AND YOU ONLY HAVE TO GO BY WHAT |
| 10:08AM | 7 | IS PRESENTED, WHAT IS HERE, WHAT IS NOW, TODAY, NOT BASED ON |
| 10:08AM | 8 | ANYTHING ELSE THAT HAS TRANSPIRED IN THE PAST. |
| 10:08AM | 9 | I MEAN, IT'S GOING TO BE TOUGH, DIFFICULT, BUT I THINK -- |
| 10:08AM | 10 | I FEEL LIKE I'M UP FOR THE TASK. |
| 10:08AM | 11 | THE COURT:  OKAY.  ALL RIGHT. |
| 10:08AM | 12 | YOU'LL BE INSTRUCTED -- IF YOU'RE SEATED AS A JUROR, I'LL |
| 10:08AM | 13 | GIVE YOU AN INSTRUCTION THAT YOU'RE OBLIGATED TO FOLLOW. |
| 10:08AM | 14 | PROSPECTIVE JUROR:  YES. |
| 10:08AM | 15 | THE COURT:  IT SAYS JUST THAT.  IT SAYS YOU'RE GOING |
| 10:08AM | 16 | TO FOCUS YOUR DECISION AS A JUROR SOLELY ON THE EVIDENCE THAT |
| 10:08AM | 17 | IS RECEIVED HERE IN THIS COURTROOM. |
| 10:08AM | 18 | CAN YOU FOLLOW THAT INSTRUCTION? |
| 10:08AM | 19 | PROSPECTIVE JUROR:  YES, SIR. |
| 10:08AM | 20 | THE COURT:  OKAY.  THANK YOU. |
| 10:08AM | 21 | I WANTED TO -- |
| 10:08AM | 22 | ANY QUESTIONS? |
| 10:08AM | 23 | MR. DOWNEY:  NO, YOUR HONOR. |
| 10:08AM | 24 | MR. SCHENK:  NO.  THANK YOU. |
| 10:08AM | 25 | THE COURT:  I WANTED TO TOUCH ON SOMETHING ELSE THAT |

10:09AM   1      I THINK YOU MENTIONED.

10:09AM   2          DID YOU TALK ABOUT SOME OTHER TOPIC THAT YOU WANTED TO

10:09AM   3      DISCUSS IN PRIVATE?  DID I GET THAT INCORRECT?  LET ME SEE.

10:09AM   4          WELL, LET ME ASK YOU, IS THERE ANYTHING ELSE YOU WOULD

10:09AM   5      LIKE TO DISCUSS WITH US NOW?

10:09AM   6              PROSPECTIVE JUROR:  NO, SIR.

10:09AM   7              THE COURT:  OKAY.  ANYTHING THAT COMES TO MIND ABOUT

10:09AM   8      ANYTHING ELSE?

10:09AM   9              PROSPECTIVE JUROR:  NO, SIR.

10:09AM  10              THE COURT:  OKAY.

10:09AM  11          COUNSEL, DO YOU HAVE ANY MORE QUESTIONS FOR MR. BROWN?

10:09AM  12              MR. DOWNEY:  NOTHING FROM THE DEFENSE, YOUR HONOR.

10:09AM  13              MR. SCHENK:  NO, THANK YOU.

10:09AM  14              THE COURT:  MR. BROWN, THANK YOU SO MUCH FOR COMING

10:09AM  15      UP IN ADVANCE.

10:09AM  16          NOW WE'RE GOING TO -- CAN MR. BROWN JUST STAY SEATED HERE?

10:09AM  17              THE CLERK:  I'LL PUT HIM IN HIS ASSIGNED SEAT,

10:09AM  18      YOUR HONOR, SURE.

10:09AM  19              THE COURT:  WE'RE GOING TO ASK YOU TO STAY AND THEN

10:09AM  20      WE'LL CALL YOUR COLLEAGUES UP FROM DOWNSTAIRS AND THEN WE'LL

10:09AM  21      START THE PROCESS AGAIN.

10:09AM  22              PROSPECTIVE JUROR:  SHALL I TAKE THIS WITH ME?

10:09AM  23              THE COURT:  IF THAT'S -- YES.

10:09AM  24              THE CLERK:  YOU'LL HAVE ONE ON THE SEAT.  THANK YOU,

10:09AM  25      SIR.

| | | |
|---|---|---|
| 10:10AM | 1 | THE COURT:  LET ME ASK, COUNSEL, DO YOU WANT TO |
| 10:10AM | 2 | DISCUSS ANYTHING?  SHOULD WE HAVE MR. BROWN WAIT OUTSIDE FOR A |
| 10:10AM | 3 | MOMENT? |
| 10:10AM | 4 | MR. DOWNEY:  I JUST WANTED TO MENTION ONE THING |
| 10:10AM | 5 | QUICKLY, YOUR HONOR. |
| 10:10AM | 6 | THE COURT:  WITH MR. BROWN HERE? |
| 10:10AM | 7 | MR. DOWNEY:  ACTUALLY, IT'S JUST A PROCEDURAL ISSUE, |
| 10:10AM | 8 | YOUR HONOR.  I THINK IT'S FINE TO DISCUSS IT WITH MR. BROWN |
| 10:10AM | 9 | HERE. |
| 10:10AM | 10 | THE COURT:  OKAY. |
| 10:10AM | 11 | MR. DOWNEY:  JUST -- |
| 10:10AM | 12 | THE COURT:  MS. KRATZMANN IS GOING TO SHOW YOU WHERE |
| 10:10AM | 13 | TO SIT, MR. BROWN. |
| 10:10AM | 14 | MR. DOWNEY:  JUST TWO ISSUES, YOUR HONOR.  ONE IS |
| 10:10AM | 15 | THAT I THINK WE'RE GOING TO DEFER ON JUROR 62 WHO HAD THE |
| 10:10AM | 16 | PRIVATE MATTER.  I DON'T KNOW IF HE'S FIRST IN THE ORDER OR |
| 10:10AM | 17 | WHETHER HE'S MOVED TO THE BACK. |
| 10:10AM | 18 | THE COURT:  HE'LL BE FIRST, YES. |
| 10:10AM | 19 | MR. DOWNEY:  YES.  SO I DON'T KNOW IF YOUR HONOR |
| 10:10AM | 20 | WANTS TO DO THAT NOW.  I ONLY HAVE A QUESTION OF HIM ON THAT |
| 10:10AM | 21 | ONE TOPIC, SO I'LL LEAVE IT TO YOU. |
| 10:10AM | 22 | SECONDLY, I JUST WANTED TO NOTE THAT I KNOW THE DAY IS A |
| 10:10AM | 23 | BIT BROKEN UP AND SO FORTH, BUT WE DISCUSSED WITH MS. KRATZMANN |
| 10:10AM | 24 | THAT WE NEEDED TO TAKE A BREAK AROUND THE 11:00 O'CLOCK HOUR. |
| 10:11AM | 25 | THE COURT:  YES.  THANK YOU.  THAT'S WHAT MY PLAN |

| | | |
|---|---|---|
| 10:11AM | 1 | IS, TO TAKE A BREAK ABOUT 11:00 O'CLOCK, AND IT WILL BE ABOUT |
| 10:11AM | 2 | 20 MINUTES, DO YOU THINK? |
| 10:11AM | 3 | MR. DOWNEY:  I THINK THAT'S ABOUT RIGHT, YOUR HONOR. |
| 10:11AM | 4 | THANK YOU. |
| 10:11AM | 5 | THE COURT:  YOU JUST LET ME KNOW. |
| 10:11AM | 6 | SO WE'RE GETTING A LATE START, JUST THE LOGISTICS OF THIS. |
| 10:11AM | 7 | I APOLOGIZE FOR THAT.  I'M HOPEFUL THAT WE CAN ACCOMPLISH WHAT |
| 10:11AM | 8 | WE NEED TO TODAY BEFORE WE GO DEEP INTO THE AFTERNOON.  LET ME |
| 10:11AM | 9 | PUT IT THAT WAY. |
| 10:11AM | 10 | AS TO JUROR NUMBER 62, I THINK WE'LL -- I DON'T WANT TO |
| 10:11AM | 11 | BRING HIM UP NOW.  I THINK, SHOULD THAT TOPIC COME UP, WE'LL -- |
| 10:11AM | 12 | WE CERTAINLY HAVE A MECHANISM TO DISCUSS THAT. |
| 10:11AM | 13 | MR. DOWNEY:  UNDERSTOOD, YOUR HONOR. |
| 10:11AM | 14 | THE COURT:  ALL RIGHT.  ANYTHING FURTHER? |
| 10:11AM | 15 | MR. SCHENK:  NO.  THANK YOU. |
| 10:11AM | 16 | THE COURT:  THANK YOU. |
| 10:11AM | 17 | MR. BROWN, WE'RE GOING TO BRING YOUR COLLEAGUES UP NOW, SO |
| 10:11AM | 18 | WE'LL BE IN RECESS FOR A MOMENT.  THANK YOU. |
| 10:11AM | 19 | THE CLERK:  COURT IS IN RECESS. |
| 10:11AM | 20 | (RECESS FROM 10:11 A.M. UNTIL 10:24 A.M.) |
| 10:24AM | 21 | (PROSPECTIVE JURY PANEL IN AT 10:24 A.M.) |
| 10:25AM | 22 | THE COURT:  THANK YOU.  GOOD MORNING, LADIES AND |
| 10:25AM | 23 | GENTLEMEN.  LET ME THANK YOU FOR YOUR PATIENCE THIS MORNING. |
| 10:25AM | 24 | THE FIRST THING I'D LIKE TO DO IS ASK MS. KRATZMANN TO |
| 10:25AM | 25 | ADMINISTER THE OATH TO ALL OF OUR PROSPECTIVE JURORS HERE.  LET |

10:25AM   1    ME DO THAT.

10:25AM   2        IF ALL OF THE PROSPECTIVE JURORS WOULD PLEASE STAND AND

10:25AM   3    RAISE YOUR RIGHT HAND.

10:25AM   4        MR. BROWN, YOU'RE EXCLUDED FROM THAT.  YOU'VE TAKEN AN

10:25AM   5    OATH.

10:25AM   6        (PROSPECTIVE JURORS WERE GIVEN THE OATH.)

10:25AM   7            PROSPECTIVE JURORS:  YES.

10:25AM   8            THE COURT:  THANK YOU VERY MUCH, LADIES AND

10:25AM   9    GENTLEMEN.  PLEASE BE SEATED.

10:25AM   10       AGAIN, LET ME THANK YOU AGAIN FOR YOUR PATIENCE.

10:25AM   11       LADIES AND GENTLEMEN, YOU HAVE BEEN SUMMONED TODAY IN A

10:25AM   12   CRIMINAL CASE ENTITLED UNITED STATES OF AMERICA VERSUS

10:25AM   13   ELIZABETH HOLMES.

10:26AM   14       IN THIS CASE THE DEFENDANT, ELIZABETH HOLMES, IS CHARGED

10:26AM   15   WITH WIRE FRAUD AND CONSPIRACY TO COMMIT WIRE FRAUD.

10:26AM   16       THE INDICTMENT ALLEGES THAT MS. HOLMES WAS THE CHIEF

10:26AM   17   EXECUTIVE OFFICER OF THERANOS INCORPORATED, WHICH WAS IN THE

10:26AM   18   BLOOD TESTING BUSINESS.  THE INDICTMENT ALLEGES THAT MS. HOLMES

10:26AM   19   AND RAMESH "SUNNY" BALWANI, THERANOS'S CHIEF OPERATING OFFICER

10:26AM   20   AND PRESIDENT, KNOWINGLY AND INTENTIONALLY DEVISED A SCHEME OR

10:26AM   21   PLAN TO DEFRAUD INVESTORS AND PAYING CUSTOMERS.

10:26AM   22       THE CHARGES ARE ONLY ALLEGATIONS AND ARE NOT EVIDENCE.

10:26AM   23       THE DEFENDANT HAS ENTERED A PLEA OF NOT GUILTY TO ALL OF

10:26AM   24   THE CHARGES IN THIS CASE AND IS PRESUMED TO BE INNOCENT.

10:26AM   25       IT WILL BE THE RESPONSIBILITY OF THE GOVERNMENT, THROUGH

10:27AM  1    THE TRIAL, TO PROVE THOSE CHARGES BEYOND A REASONABLE DOUBT.

10:27AM  2         THE INDICTMENT ALLEGES IN COUNTS ONE AND TWO THAT

10:27AM  3    MS. HOLMES VIOLATED 18 UNITED STATES CODE SECTION 1349,

10:27AM  4    CONSPIRACY TO COMMIT WIRE FRAUD, AND IN COUNTS THREE, FOUR,

10:27AM  5    FIVE, SIX, SEVEN, EIGHT, NINE, TEN, ELEVEN, AND TWELVE WITH

10:27AM  6    WIRE FRAUD IN VIOLATION OF UNITED STATES CODE SECTION 1343.

10:27AM  7         THE INDICTMENT IS NOT EVIDENCE OF ANY KIND.  IT IS THE

10:27AM  8    CHARGING DOCUMENT THAT IS FILED IN THIS CASE.

10:27AM  9         TO THESE CHARGES MS. HOLMES HAS PLEADED NOT GUILTY, AND

10:27AM  10   THIS IS AN ABSOLUTE DENIAL OF THE CHARGES.

10:27AM  11        IT WILL BE THE PURPOSE OF THIS TRIAL FOR YOU TO DETERMINE

10:27AM  12   IF THE GOVERNMENT HAS MET THEIR BURDEN IN PRESENTING THEIR CASE

10:27AM  13   TO YOU.

10:27AM  14        NOW, JURY SERVICE IS VERY IMPORTANT, AND, AGAIN, I WANT TO

10:27AM  15   WELCOME YOU AND THANK YOU FOR YOUR SERVICE.

10:28AM  16        BUT BEFORE WE BEGIN, I WANT TO DESCRIBE FOR YOU HOW THE

10:28AM  17   TRIAL WILL BE CONDUCTED AND EXPLAIN TO YOU WHAT YOU AND THE

10:28AM  18   LAWYERS AND I WILL BE DOING.

10:28AM  19        NOW, FIRST OF ALL, WHEN I REFER TO THE GOVERNMENT, I MEAN

10:28AM  20   MR. ROBERT LEACH, MS. KELLY VOLKAR, MR. JOHN BOSTIC, AND

10:28AM  21   MR. JEFF SCHENK, WHO ARE THE ASSISTANT UNITED STATES ATTORNEYS

10:28AM  22   WHO ARE PROSECUTING THIS CASE.

10:28AM  23        MR. LEACH, WOULD YOU INTRODUCE YOUR TEAM, PLEASE, TO THE

10:28AM  24   JURY PANEL.

10:28AM  25            MR. LEACH:  YES, YOUR HONOR.  THANK YOU.

| | | |
|---|---|---|
| 10:28AM | 1 | GOOD MORNING EVERYBODY.  MY NAME IS ROBERT LEACH.  TO MY |
| 10:28AM | 2 | LEFT IS JOHN BOSTIC, TO HIS LEFT IS JEFF SCHENK, SEATED RIGHT |
| 10:28AM | 3 | HERE IS KELLY VOLKAR WITH MY OFFICE, AND TO MY RIGHT IS |
| 10:28AM | 4 | ADDY HERNANDEZ, WHO IS A SPECIAL AGENT WITH THE FBI. |
| 10:28AM | 5 | THANK YOU.  GOOD MORNING. |
| 10:28AM | 6 | THE COURT:  THANK YOU. |
| 10:28AM | 7 | WHEN I REFER TO DEFENSE COUNSEL, I MEAN MR. KEVIN DOWNEY, |
| 10:28AM | 8 | MR. LANCE WADE, MS. KATHERINE TREFZ, AND I SEE MR. CLINE HERE |
| 10:29AM | 9 | AS WELL.  THANK YOU. |
| 10:29AM | 10 | WOULD YOU INTRODUCE YOUR TEAM, PLEASE. |
| 10:29AM | 11 | MR. DOWNEY:  THANK YOU, YOUR HONOR. |
| 10:29AM | 12 | GOOD MORNING.  MY NAME IS KEVIN DOWNEY, AND I REPRESENT |
| 10:29AM | 13 | MS. HOLMES IN THIS MATTER. |
| 10:29AM | 14 | THIS IS ELIZABETH HOLMES, WHO IS THE DEFENDANT IN THIS |
| 10:29AM | 15 | CASE. |
| 10:29AM | 16 | WITH ME ON BEHALF OF MS. HOLMES ARE MY COLLEAGUE |
| 10:29AM | 17 | LANCE WADE, MY COLLEAGUE KATHERINE TREFZ, AND OUR COCOUNSEL, |
| 10:29AM | 18 | JOHN CLINE. |
| 10:29AM | 19 | THE COURT:  THANK YOU. |
| 10:29AM | 20 | LADIES AND GENTLEMEN, THIS CASE IS EXPECTED TO TAKE |
| 10:29AM | 21 | APPROXIMATELY 13 WEEKS HERE IN COURT, AND IT COULD BE A LITTLE |
| 10:29AM | 22 | LONGER. |
| 10:29AM | 23 | THIS MORNING WE WILL BEGIN SELECTING JURORS WHO WILL SIT |
| 10:29AM | 24 | TO HEAR THIS CASE.  THIS PROCESS INVOLVES INTERVIEWING SEPARATE |
| 10:29AM | 25 | PANELS OF POTENTIAL JURORS.  AND I SHOULD TELL YOU WE ENGAGED |

10:29AM  1    THIS PROCESS YESTERDAY WITH A SIMILAR PANEL AS YOURS.

10:29AM  2         AFTER OUR SESSION TODAY, YOU WILL BE PERMITTED TO LEAVE

10:29AM  3    THE COURTHOUSE AND YOU WILL BE NOTIFIED BY THE COURT WHETHER

10:30AM  4    AND WHEN YOU SHOULD RETURN FOR FURTHER PROCEEDINGS.  WE'LL

10:30AM  5    RETURN AND THEN WE'LL BEGIN THE TRIAL.

10:30AM  6         NOW, YOU SEE THE SCHEDULE.  I THINK YOU HAVE A SCHEDULE IN

10:30AM  7    YOUR SEATS.  THAT HAS THE POTENTIAL SCHEDULE FOR OUR TRIAL NOW.

10:30AM  8    THAT COULD CHANGE, OF COURSE.

10:30AM  9         AS YOU SEE, THE JURY DELIBERATIONS SHOULD BEGIN THE FIRST

10:30AM  10   OR SECOND WEEK OF DECEMBER.  IT COULD BE SOONER THAN THAT

10:30AM  11   DEPENDING ON THE EVIDENCE.  I WILL KEEP YOU INFORMED AS TO OUR

10:30AM  12   SCHEDULE AS WE GO FORWARD.

10:30AM  13        AS YOU ALSO SAW IN THE QUESTIONNAIRE, OUR PROPOSED DAYS IN

10:30AM  14   COURT WILL BE TUESDAYS, WEDNESDAYS, AND FRIDAYS, POTENTIALLY

10:30AM  15   FROM 9:00 A.M. TO APPROXIMATELY 2:00 P.M.

10:30AM  16        IT MAY BE THAT THIS SCHEDULE WILL CHANGE TO ADD SOME TIME

10:30AM  17   OR CHANGE DAYS, AND I WILL, OF COURSE, KEEP YOU APPRISED IN

10:30AM  18   ADVANCE OF ANY CHANGE IN THE SCHEDULE.

10:31AM  19        I ANTICIPATE, ACCORDING TO THIS SCHEDULE, I ANTICIPATE

10:31AM  20   THAT WE WOULD THEN TAKE ONE BREAK DURING THE COURT DAY OF

10:31AM  21   PERHAPS 30, 45 MINUTES, SOMETHING LIKE THAT.

10:31AM  22        BECAUSE OF THE LENGTH OF THE TRIAL, MY HOPE WAS THAT THIS

10:31AM  23   SCHEDULE WOULD ACCOMPLISH THE TAKING OF EVIDENCE IN THE TRIAL

10:31AM  24   AND AVOID THE STRESS AND FATIGUE THAT MIGHT ALSO ARISE FROM AN

10:31AM  25   ALL-DAY EVERY DAY SCHEDULE THAT IS THE NORM FOR SHORTER TRIALS.

10:31AM   1        NOW, I ALSO REALIZE THERE ARE OCCASIONS WHEN SOMEONE MAY

10:31AM   2   NEED TO TAKE AN UNSCHEDULED BREAK FOR ANY REASON, AND IF

10:31AM   3   ANYBODY NEEDS TO TAKE A BREAK FOR ANY REASON, YOU JUST NEED TO

10:31AM   4   ALERT ME AND WE WILL CERTAINLY BE ABLE TO DO THAT.

10:31AM   5        NOW, THE FIRST STEP IN THE TRIAL FOLLOWING THE SELECTION

10:31AM   6   OF THE JURY IS THE GOVERNMENT'S OPENING STATEMENT.  THE DEFENSE

10:31AM   7   MAY CHOOSE TO GIVE AN OPENING STATEMENT FOLLOWING THE

10:31AM   8   GOVERNMENT'S STATEMENT, OR THEY CAN WAIT UNTIL THE BEGINNING OF

10:31AM   9   THE DEFENSE CASE.

10:31AM  10        THE PURPOSE OF AN OPENING STATEMENT IS TO PROVIDE YOU, THE

10:32AM  11   JURORS, AN OVERVIEW OF WHAT THE ATTORNEYS BELIEVE THE EVIDENCE

10:32AM  12   IN THE CASE WILL SHOW.

10:32AM  13        NEXT THE GOVERNMENT WILL OFFER THEIR EVIDENCE.  EVIDENCE

10:32AM  14   USUALLY CONSISTS OF TESTIMONY AND EXHIBITS.

10:32AM  15        AFTER THE GOVERNMENT PRESENTS THEIR EVIDENCE, THE DEFENSE

10:32AM  16   MAY ALSO PRESENT EVIDENCE, BUT IS NOT REQUIRED TO DO SO.

10:32AM  17        BECAUSE MS. HOLMES IS PRESUMED INNOCENT, SHE DOES NOT HAVE

10:32AM  18   TO PROVE THAT SHE IS NOT GUILTY.

10:32AM  19        NOW, YOU HAVE ALSO ATTACHED TO YOUR INFORMATION AT YOUR

10:32AM  20   SEATS, AND YOU'VE ALSO SEEN WHEN YOU CAME IN LAST WEEK TO FILL

10:32AM  21   OUT YOUR QUESTIONNAIRES, A WITNESS LIST, AND I'M GOING TO ASK

10:32AM  22   YOU -- YOU REVIEWED THAT WHEN YOU FILLED YOUR QUESTIONNAIRES

10:32AM  23   OUT, I KNOW, AND I'LL ASK YOU TO LOOK AT THAT AGAIN THIS

10:32AM  24   MORNING.

10:32AM  25        COUNSEL, CAN I GET A STIPULATION THAT THE COURT NEED NOT

| | | |
|---|---|---|
| 10:32AM | 1 | READ THE ENTIRETY OF THE WITNESS LIST ON THE RECORD? |
| 10:33AM | 2 | MR. DOWNEY:  YOUR HONOR, MS. HOLMES AGREES. |
| 10:33AM | 3 | MR. SCHENK:  SO STIPULATED. |
| 10:33AM | 4 | THE COURT:  THANK YOU.  THANK YOU. |
| 10:33AM | 5 | LADIES AND GENTLEMEN, IT'S NOT UNUSUAL FOR JUDGES TO READ |
| 10:33AM | 6 | ON THE RECORD THE ENTIRETY OF THE WITNESSES KNOWN AT LEAST AT |
| 10:33AM | 7 | THIS TIME, BUT YOU SEE THE LENGTH OF THAT POTENTIAL WITNESS |
| 10:33AM | 8 | LIST, AND I'M NOT GOING TO READ IT TO YOU.  BUT I DO CALL YOUR |
| 10:33AM | 9 | ATTENTION TO IT AGAIN THIS MORNING, AS WELL AS LAST WEEK WHEN |
| 10:33AM | 10 | YOU FILLED OUT -- YOU REVIEWED THAT WHEN YOU FILLED OUT YOUR |
| 10:33AM | 11 | QUESTIONNAIRE. |
| 10:33AM | 12 | YOU SHOULD NOTE THAT THE PARTIES MAY NOT WISH TO CALL ALL |
| 10:33AM | 13 | WITNESSES AND THEY MAY LATER FIND IT NECESSARY TO CALL OTHER |
| 10:33AM | 14 | WITNESSES. |
| 10:33AM | 15 | IT MAY OCCUR THAT THE PARTIES STIPULATE TO A WITNESS'S |
| 10:33AM | 16 | TESTIMONY OR AN EXHIBIT.  THIS MEANS THAT THE PARTIES HAVE |
| 10:33AM | 17 | AGREED THAT THE STATEMENT, THE TESTIMONY, OR THE EXHIBIT CAN BE |
| 10:33AM | 18 | RECEIVED INTO EVIDENCE. |
| 10:33AM | 19 | AFTER YOU HAVE HEARD ALL OF THE EVIDENCE, AND AFTER THE |
| 10:33AM | 20 | ATTORNEYS HAVE GIVEN THEIR FINAL ARGUMENTS, I WILL THEN |
| 10:34AM | 21 | INSTRUCT YOU ON THE LAW THAT APPLIES TO THE CASE. |
| 10:34AM | 22 | AFTER YOU HAVE HEARD THE ARGUMENTS AND THE LAW AS GIVEN BY |
| 10:34AM | 23 | THE COURT, YOU WILL THEN RETIRE TO THE JURY ROOM TO DELIBERATE |
| 10:34AM | 24 | THE MERITS OF THE CASE AND THEN TO RETURN WITH YOUR FINDINGS. |
| 10:34AM | 25 | NOW, LET ME TALK A LITTLE BIT ABOUT YOUR SERVICE.  IT IS |

| | | |
|---|---|---|
| 10:34AM | 1 | AN OBLIGATION.  JURY SERVICE IS AN OBLIGATION, AND WE RECOGNIZE |
| 10:34AM | 2 | IT'S INCONVENIENT TO YOU. |
| 10:34AM | 3 | BUT I HOPE, AND MY COLLEAGUES HOPE, THAT YOU ALSO VIEW |
| 10:34AM | 4 | JURY SERVICE AS A PRIVILEGE, A PRIVILEGE TO SERVE YOUR |
| 10:34AM | 5 | COMMUNITY AND TO PARTICIPATE IN YOUR SYSTEM OF JUSTICE. |
| 10:34AM | 6 | AND WE ALL RECOGNIZE AND WE'RE SENSITIVE TO THE FACT THAT |
| 10:34AM | 7 | IT'S HIGHLY LIKELY THAT NONE OF YOU ARE HERE BECAUSE YOU HAVE |
| 10:34AM | 8 | NOTHING ELSE TO DO, OR THAT YOU VOLUNTEERED OUT OF THE GOODNESS |
| 10:34AM | 9 | OF YOUR HEARTS TO JOIN US HERE. |
| 10:34AM | 10 | WE RECOGNIZE THAT JURY SERVICE IS AN IMPOSITION ON YOU. |
| 10:34AM | 11 | IT IMPOSES ON YOU.  IT TAKES YOU FROM THOSE WHO NEED AND RELY |
| 10:35AM | 12 | ON YOU AT YOUR WORKPLACES AND AT YOUR HOMES. |
| 10:35AM | 13 | FOR THOSE OF US WORKING IN THE JUSTICE SYSTEM AND TRYING |
| 10:35AM | 14 | TO IMPROVE ON THE QUALITY OF JUSTICE, IT IS A CHALLENGE TO |
| 10:35AM | 15 | PROVIDE A FAIR AND IMPARTIAL JURY FOR ALL OF OUR TRIALS.  IT'S |
| 10:35AM | 16 | A CHALLENGE TO DELIVER ON THE PROMISE OF A JURY OF ONE'S PEERS, |
| 10:35AM | 17 | A TRUE CROSS-SECTION OF OUR COMMUNITY TO EVERYONE ENTERING OUR |
| 10:35AM | 18 | COURTS. |
| 10:35AM | 19 | IT'S A PROMISE THAT WE ENDEAVOR TO FULFILL AS WE RECOGNIZE |
| 10:35AM | 20 | WE WOULD RELY ON THAT PROMISE SHOULD ANY OF US COME INTO THE |
| 10:35AM | 21 | JUSTICE SYSTEM AS A PARTY. |
| 10:35AM | 22 | OUR CONSTITUTION GUARANTEES THE RIGHT TO A JURY TRIAL, AND |
| 10:35AM | 23 | THAT IS THE BASIS FOR ALL OF OUR OBLIGATIONS, YOURS AND MINE. |
| 10:35AM | 24 | I SHOULD TELL YOU THAT I GET SUMMONED FOR JURY SERVICE. |
| 10:35AM | 25 | IT'S HAPPENED TO ME ONCE -- THREE TIMES IN THE LAST THREE |

10:36AM 1    YEARS.  I SHOULD TELL YOU, WITH GREAT REGRET, I HAVE NOT BEEN

10:36AM 2    SELECTED.  I DON'T KNOW WHAT THAT IS ABOUT.

10:36AM 3        (LAUGHTER.)

10:36AM 4            THE COURT:  BUT HOPE SPRINGS ETERNAL.  WE'LL SEE.

10:36AM 5        I SUPPOSE I SHOULD MENTION TO YOU THAT I THINK IT'S

10:36AM 6    SIGNIFICANT NOW TO PARTICIPATE IN YOUR JURY SERVICE, PERHAPS

10:36AM 7    NOW MORE THAN EVER.

10:36AM 8        WE KNOW WE'RE IN A PANDEMIC SITUATION NOW, AND OUR LIVES

10:36AM 9    HAVE CHANGED DRAMATICALLY, BOTH IN OUR PROFESSIONAL LIVES AND

10:36AM 10   OUR PERSONAL LIVES AS TO ACTIVITIES THAT WERE PREVIOUSLY THE

10:36AM 11   NORM AND PREVIOUSLY WE HAD THE LUXURY OF ENGAGING IN.

10:36AM 12       AND WE SEE REGRETTABLY IN OUR COMMUNITIES THE LOSS OF LIFE

10:36AM 13   AND INDIVIDUALS AFFECTED WITH THIS PANDEMIC.

10:36AM 14       I SUGGEST TO YOU THAT SERVING AS A JUROR NOW IS AS

10:36AM 15   IMPORTANT AS EVER.  YOU SEE THAT, THAT THEN REFLECTS TO OUR

10:36AM 16   COMMUNITIES, TO OUR COUNTRY, AND TO THE WORLD THAT DURING THE

10:37AM 17   CHALLENGE OF A PANDEMIC, OUR COURTS ARE OPEN AND OUR JUSTICE

10:37AM 18   SYSTEM ENDURES.  AND YOUR PARTICIPATION IN THAT SHOULD, I HOPE,

10:37AM 19   GIVE YOU SOME PRIDE IN YOUR COUNTRY AND PRIDE IN YOUR JUSTICE

10:37AM 20   SYSTEM AS WELL.

10:37AM 21       NOW, I'D LIKE TO TAKE A MOMENT TO TALK ABOUT COVID AND THE

10:37AM 22   COVID PROTOCOLS THAT WE HAVE ENGAGED.  THIS IS OF GREAT CONCERN

10:37AM 23   TO EVERYONE.

10:37AM 24       FIRST OF ALL, LET ME TELL YOU THAT I HAVE THE PERMISSION

10:37AM 25   OF THESE LAWYERS AND OUR STAFF TO TELL YOU THAT EVERYONE ON MY

10:37AM 1    STAFF AND THE LAWYERS AND THEIR STAFF HAVE BEEN VACCINATED.

10:37AM 2          I SHOULD ALSO TELL YOU THAT THE INFORMATION I HAVE IS THAT

10:37AM 3    ALL OF OUR PROSPECTIVE PANEL MEMBERS, ALL OF YOU, THE

10:37AM 4    INFORMATION WE HAVE IS THAT ALL OF YOU ARE ALSO VACCINATED.

10:37AM 5          WE WILL CONTINUE TO STRIVE TO CONTINUE FOR YOUR

10:38AM 6    PROTECTION, SAFETY, AND GOOD HEALTH.  AS YOU SEE, WE'LL ENGAGE

10:38AM 7    IN SOCIAL DISTANCING.  WE'LL HAVE MASKS AVAILABLE.  PARTIES IN

10:38AM 8    COURT WILL WEAR MASKS.  WITNESSES, DEPENDING ON THEIR HEALTH

10:38AM 9    AND VACCINATION STATUS, MAY BE ABLE TO REMOVE THEIR MASK OR

10:38AM 10   WEAR A CLEAR FACE SHIELD WHILE TESTIFYING.

10:38AM 11         I SHOULD TELL YOU THAT I HAVE ALSO TOLD THE LAWYERS THAT

10:38AM 12   IF THEY WISH TO CALL A WITNESS IN THE CASE, TO INQUIRE AS TO

10:38AM 13   THAT WITNESS'S VACCINATION STATUS IN ADVANCE SO WE CAN TAKE

10:38AM 14   PRECAUTIONS IF WE NEED TO, AND THEY'VE AGREED TO DO THAT.

10:38AM 15         WE'LL HAVE AIR PURIFIERS AT THE WITNESS STAND.  THERE IS

10:38AM 16   ONE HERE UNDERNEATH THE WITNESS STAND THAT IS ACTIVE, AND I

10:38AM 17   BELIEVE WE'LL HAVE ONE OTHER PURIFIER AT EACH COUNSEL TABLE AND

10:38AM 18   WE CAN, SHOULD A SITTING JUROR HAVE A REQUEST FOR ANOTHER OR

10:38AM 19   FEEL IT'S APPROPRIATE, I CAN SECURE ANOTHER AIR FILTER FOR

10:38AM 20   THESE AREAS AS NEEDED.

10:38AM 21         NOW, LET ME TELL YOU A LITTLE BIT ABOUT OUR BUILDING.  OUR

10:38AM 22   COURTHOUSE, IT'S QUITE OLD.  IT'S OVER 25, 30 YEARS OLD.

10:39AM 23         BUT I SHOULD TELL YOU THAT WE RECENTLY HAD AN UPGRADE IN

10:39AM 24   OUR HVAC SYSTEM.  I THINK THAT OCCURRED ABOUT FOUR YEARS AGO.

10:39AM 25   WE'VE UPGRADED OUR SYSTEM TO SOMETHING CALLED MERV 14.  THIS IS

| | | |
|---|---|---|
| 10:39AM | 1 | THE MERV FILTRATION SYSTEM, AND THE CURRENT GUIDANCE, AS I |
| 10:39AM | 2 | UNDERSTAND IT, IS TO INSTALL A MERV 13.  SO WE'RE ABOVE THE |
| 10:39AM | 3 | MINIMUM STANDARD IN THAT REGARD. |
| 10:39AM | 4 | THIS HELPS US, AND UNFORTUNATELY, THE AIR QUALITY OUTSIDE |
| 10:39AM | 5 | IS POOR BECAUSE OF THE FIRES THAT ARE IN CALIFORNIA RIGHT NOW, |
| 10:39AM | 6 | BUT OUR SYSTEM IS EXCELLENT AT FILTERING THAT AIR AS WELL. |
| 10:39AM | 7 | I ASKED OUR BUILDING MANAGEMENT ABOUT THE AIR CIRCULATION |
| 10:39AM | 8 | IN THIS COURTROOM, AND I'M INFORMED THAT THE AIR IN THIS |
| 10:39AM | 9 | COURTROOM CIRCULATES, IT ENTIRELY CIRCULATES AT -- IT'S CALLED |
| 10:39AM | 10 | A RATE OF AIR CHANGE PER HOUR RATE, ACH IS WHAT THE ENGINEERS |
| 10:40AM | 11 | CALL IT, OF 6.3.  AND WHAT THAT MEANS TO ME AND TO YOU IS THAT |
| 10:40AM | 12 | THE AIR IN THIS COURTROOM CIRCULATES COMPLETELY ABOUT EVERY TEN |
| 10:40AM | 13 | MINUTES. |
| 10:40AM | 14 | SO OUR FILTRATION SYSTEM, OUR HVAC SYSTEM, IS WORKING |
| 10:40AM | 15 | ADMIRABLY.  IT'S DOING ITS JOB.  I HOPE THAT BRINGS YOU SOME |
| 10:40AM | 16 | COMFORT. |
| 10:40AM | 17 | WE RUN THIS SYSTEM TWO HOURS IN ADVANCE OF OPENING.  THAT |
| 10:40AM | 18 | MEANS IT STARTS ABOUT 5:00 A.M. SO IT COULD GENERATE AS MUCH |
| 10:40AM | 19 | CIRCULATION AS POSSIBLE.  IT RUNS ABOUT TWO HOURS AFTER THE |
| 10:40AM | 20 | CLOSE OF BUSINESS. |
| 10:40AM | 21 | AS TO OUR BUILDING ITSELF, THE GSA, THE GENERAL SERVICE |
| 10:40AM | 22 | ADMINISTRATION WHICH SUPERVISES THE BUILDINGS HERE, HAS |
| 10:40AM | 23 | IMPLEMENTED GUIDELINES FROM THE CDC REGARDING ROUTINE CLEANING, |
| 10:40AM | 24 | DISINFECTION OF HIGH TOUCH SURFACE AREAS AND HIGH TRAFFIC |
| 10:41AM | 25 | AREAS. |

| | | |
|---|---|---|
| 10:41AM | 1 | WE HAVE FACE MASKS AND SANITIZER TO PROVIDE YOU SHOULD YOU |
| 10:41AM | 2 | NEED THOSE THINGS, AND IF YOU HAVE A REQUEST FOR THAT, WE CAN |
| 10:41AM | 3 | CERTAINLY PROVIDE THAT FOR YOU. |
| 10:41AM | 4 | NOW, THE SCHEDULE I TALKED ABOUT SEEKS TO KEEP TIME IN OUR |
| 10:41AM | 5 | COURTROOM, NOTWITHSTANDING THE EXCELLENT SYSTEM WE HAVE HERE, I |
| 10:41AM | 6 | DO WANT TO KEEP TIME IN THE COURTROOM SPACED, SO AS OUR JURORS |
| 10:41AM | 7 | AND PARTICIPANTS AREN'T SEATED FOR IN EXCESS OF TWO HOURS AT A |
| 10:41AM | 8 | TIME. THAT'S WHAT I'M TRYING TO ACCOMPLISH. WE'LL SPACE |
| 10:41AM | 9 | BREAKS ALSO AS NECESSARY AND AS I FEEL APPROPRIATE. |
| 10:41AM | 10 | THIS HOPEFULLY WILL ALLOW FOR BREAKS, BUT ALSO WILL ALLOW |
| 10:41AM | 11 | FOR THE EFFICIENT AND ORDERLY TRIAL PROCESS TO CONTINUE. |
| 10:41AM | 12 | NOW, WE HAVE A COURTROOM JUST NEXT DOOR, AND I WANT TO |
| 10:41AM | 13 | TELL YOU IF YOU'RE SEATED AS A JUROR, THAT'S GOING TO BE YOUR |
| 10:41AM | 14 | DELIBERATION ROOM. YOU WILL HAVE THE WHOLE COURTROOM TO USE |
| 10:42AM | 15 | FOR DELIBERATION AND DISCUSSIONS. |
| 10:42AM | 16 | AND BY THAT, YOU CAN THEN SOCIALLY DISTANCE YOURSELVES IN |
| 10:42AM | 17 | THAT COURTROOM. |
| 10:42AM | 18 | I SHOULD TELL YOU THAT I'VE HAD TWO TRIALS THIS YEAR IN |
| 10:42AM | 19 | OUR COURTHOUSE, AND THAT'S WHAT OUR JURORS DID. WE DEDICATED A |
| 10:42AM | 20 | COURTROOM SO THE JURORS CAN SPACE THEMSELVES OUT. SOME WILL |
| 10:42AM | 21 | SIT IN THE JURY BOX. SOME WITNESS SIT AT THE TABLES AROUND, |
| 10:42AM | 22 | AND THAT AFFORDS SEPARATION FOR YOU AND HOPEFULLY PROVIDES SOME |
| 10:42AM | 23 | SAFETY AND COMFORT TO YOU. |
| 10:42AM | 24 | SO YOU'LL HAVE THE ENTIRE COURTROOM NEXT DOOR TO SERVE AS |
| 10:42AM | 25 | YOUR DELIBERATION ROOM. |

10:42AM   1        WE ALSO WILL BE PROVIDING DURING THESE THREE DAYS A WEEK,

10:42AM   2    AT LEAST TO START, WE WILL BE PROVIDING, I'M TOLD, SOME

10:42AM   3    BREAKFAST ITEMS.  AND WE'LL HAVE THAT FOR YOU HERE.  WE'LL

10:42AM   4    PROBABLY SPACE THAT OUT BECAUSE I'M TOLD THAT THE SERVICE THAT

10:42AM   5    WE USE IS EXCELLENT, THEY HAVE EXCELLENT BAGELS AND FRESH FRUIT

10:42AM   6    AND THEY BRING A LOT OF IT, SO IT SOUNDS LIKE IT CAN BE SPACED

10:43AM   7    OUT OVER THE COURSE OF THESE THREE DAYS.  SO YOU WILL HAVE

10:43AM   8    BENEFIT OF THAT.

10:43AM   9        NOW, IF YOU HAVE ANY QUESTIONS OR ISSUE REGARDING YOUR

10:43AM  10    SAFETY OR THE COURT CONDITIONS DURING YOUR TIME HERE, YOU

10:43AM  11    SHOULD REACH OUT TO OUR COURT STAFF WITH ANY OF THOSE, AND

10:43AM  12    WE'LL BE HAPPY TO PROVIDE YOU INFORMATION AS NEEDED.

10:43AM  13        NOW, LET ME ASK THIS:  IS THERE ANY MEMBER OF THE PANEL

10:43AM  14    WHO HAS ANY SPECIAL DISABILITY PROBLEM OR ISSUE THAT WOULD MAKE

10:43AM  15    SERVING AS A JUROR DIFFICULT?  I'M CALLING OUT THIS

10:43AM  16    SPECIFICALLY FOR, FIRST OF ALL, ANY HEARING ISSUES?  DOES

10:43AM  17    ANYONE ON THE PANEL HERE HAVE ANY HEARING ISSUE, OR WOULD YOU

10:43AM  18    LIKE TO HAVE AN ASSISTED LISTENING DEVICE PROVIDED FOR YOU

10:43AM  19    TODAY TO ASSIST IN THAT REGARD?  WE HAVE SOME HEADPHONES THAT

10:43AM  20    WE CAN USE IF ANYONE WOULD BENEFIT FROM THAT.

10:43AM  21        IF YOU WOULD RAISE YOUR HAND, WE'LL GET THAT TO YOU.

10:43AM  22        I SEE NO HANDS.

10:43AM  23        ANY OTHER ISSUE, MEDICAL ISSUE OR ANYTHING ELSE THAT

10:43AM  24    SOMEONE WANTS TO RAISE?

10:44AM  25        I SEE A COUPLE OF HANDS.  LET ME TRY TO FIND THOSE JURORS.

| | | |
|---|---|---|
| 10:44AM | 1 | WE'RE GOING TO ALSO PROVIDE A MICROPHONE FOR YOU, AND |
| 10:44AM | 2 | WE'LL SEND THE MICROPHONE WITH WIPES, SO IF YOU WOULD WIPE THE |
| 10:44AM | 3 | MICROPHONE SURFACE AND PERHAPS THE MICROPHONE SCREEN AS WELL, |
| 10:44AM | 4 | THAT WOULD BE HELPFUL. |
| 10:44AM | 5 | SO LET ME SEE THE HANDS AGAIN, PLEASE. |
| 10:44AM | 6 | OKAY.  THAT LOOKS -- IS THAT MR. PACK?  YOU'RE JUROR |
| 10:44AM | 7 | NUMBER 137, SIR? |
| 10:44AM | 8 | PROSPECTIVE JUROR:  YES. |
| 10:44AM | 9 | THE COURT:  WHAT WOULD YOU LIKE ME TO KNOW? |
| 10:44AM | 10 | PROSPECTIVE JUROR:  I HAVE A SURGERY SCHEDULED FOR |
| 10:44AM | 11 | THE 8TH.  IT'S POSSIBLE TO RESCHEDULE IT, BUT IT PROBABLY IS |
| 10:44AM | 12 | GOING TO BE DIFFICULT GIVEN IT PROBABLY TAKES ONE OR MAYBE TWO |
| 10:44AM | 13 | DAYS RECUPERATION. |
| 10:44AM | 14 | THE COURT:  I SEE.  AND THAT IS SCHEDULED NEXT WEEK |
| 10:44AM | 15 | IT SOUNDS LIKE. |
| 10:44AM | 16 | PROSPECTIVE JUROR:  YES, I APOLOGIZE.  I DIDN'T |
| 10:45AM | 17 | EXPECT THE TRIAL TO START SO SOON. |
| 10:45AM | 18 | THE COURT:  WELL, WE'RE VERY EFFICIENT, MR. PACK. |
| 10:45AM | 19 | (LAUGHTER.) |
| 10:45AM | 20 | THE COURT:  I APPRECIATE THAT.  RESCHEDULING -- I |
| 10:45AM | 21 | WANT TO BE DELICATE HERE AND I DON'T WANT YOU TO REVEAL ANY |
| 10:45AM | 22 | PERSONAL INFORMATION -- BUT RESCHEDULING, YOU HEARD ME TALK |
| 10:45AM | 23 | ABOUT THE LENGTH OF THE TRIAL. |
| 10:45AM | 24 | WHAT ARE YOUR THOUGHTS ABOUT RESCHEDULING THE SURGERY? |
| 10:45AM | 25 | DON'T TELL ME WHAT IT IS, BUT -- |

| | | |
|---|---|---|
| 10:45AM | 1 | PROSPECTIVE JUROR:  YEAH.  SO THERE'S AN OUTSIDE |
| 10:45AM | 2 | POSSIBILITY THAT I COULD PUSH IT INTO THIS FRIDAY, BUT THAT IS |
| 10:45AM | 3 | PROBABLY DIFFICULT. |
| 10:45AM | 4 | IT'S NOT A LIFE THREATENING THING.  IT'S SOMETHING THAT IS |
| 10:45AM | 5 | A SEVERE INCONVENIENCE, SO I WOULD LIKE TO HAVE IT DONE. |
| 10:45AM | 6 | THE COURT:  SURE.  OF COURSE.  THE RECOVERY TIME |
| 10:46AM | 7 | WOULD BE HOW LONG?  OR WHAT IS THE INFORMATION THAT YOU HAVE? |
| 10:46AM | 8 | PROSPECTIVE JUROR:  IT'S BASICALLY A SINUS SURGERY, |
| 10:46AM | 9 | YOU KNOW, SO IT'S PROBABLY -- SO I PROBABLY DON'T HAVE A |
| 10:46AM | 10 | PROBLEM THE NEXT DAY.  BUT THERE'S A POSSIBILITY, AND LOOKING |
| 10:46AM | 11 | REALLY WEIRD. |
| 10:46AM | 12 | THE COURT:  THAT'S WHAT THE MASKS ARE FOR. |
| 10:46AM | 13 | PROSPECTIVE JUROR:  YES, THAT'S RIGHT.  I'LL USE A |
| 10:46AM | 14 | BIG MASK. |
| 10:46AM | 15 | (LAUGHTER.) |
| 10:46AM | 16 | THE COURT:  WELL, MY CONCERN IS YOUR HEALTH AND YOUR |
| 10:46AM | 17 | CONDITION, AND IN OUR CURRENT CLIMATE WITH THE PANDEMIC AND |
| 10:46AM | 18 | THIS VARIANT THAT IS ABOUT, LET ME JUST EXPRESS A CONCERN, MY |
| 10:46AM | 19 | SENSE IS THAT YOU PROBABLY WOULD BE TAKING SOME ANTIBIOTICS OR |
| 10:46AM | 20 | SOME OTHER TYPE OF FOLLOW-UP MEDICATION FOLLOWING THE SURGERY. |
| 10:46AM | 21 | MY CONCERN IS THAT YOU MIGHT OTHERWISE BE AT A HIGHER RISK |
| 10:46AM | 22 | OF INFECTION, SHALL WE SAY, THAT CREATES SOME CONCERNS. |
| 10:46AM | 23 | HAVE YOU TALKED TO YOUR DOCTOR ABOUT THAT, AND WHAT HAS |
| 10:46AM | 24 | SHE TOLD YOU?  IF YOU WANT TO SHARE.  YOU DON'T HAVE TO. |
| 10:47AM | 25 | PROSPECTIVE JUROR:  ACTUALLY, THE INFECTION THING IS |

| | | |
|---|---|---|
| 10:47AM | 1 | NOT A CONCERN -- |
| 10:47AM | 2 | THE COURT:  OKAY. |
| 10:47AM | 3 | PROSPECTIVE JUROR:  -- TO ME.  I JUST DO NOT WANT TO |
| 10:47AM | 4 | HAVE YOU DEPEND UPON ME AND HAVE ME NOT SHOW UP AS A GOOD -- |
| 10:47AM | 5 | OPERATING IN GOOD CAPACITY. |
| 10:47AM | 6 | THE COURT:  THANK YOU VERY MUCH, SIR. |
| 10:47AM | 7 | MR. SCHENK, ANY QUESTIONS? |
| 10:47AM | 8 | MR. SCHENK:  NO OBJECTION TO HARDSHIP, YOUR HONOR. |
| 10:47AM | 9 | MR. DOWNEY:  NO OBJECTION, YOUR HONOR. |
| 10:47AM | 10 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:47AM | 11 | MR. PACK, THE LAWYERS HAVE INDICATED THAT THEY WOULD AGREE |
| 10:47AM | 12 | AND STIPULATE TO THE EXCUSAL FOR THE MEDICAL REASONS AND |
| 10:47AM | 13 | STIPULATION.  I EXCUSE YOU NOW.  BEST WISHES ON YOUR SURGERY. |
| 10:47AM | 14 | THANK YOU FOR JOINING US THIS MORNING.  IT WAS A PLEASURE |
| 10:47AM | 15 | MEETING YOU. |
| 10:47AM | 16 | PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR. |
| 10:47AM | 17 | THE COURT:  CAN MR. PACK JUST LEAVE, OR DOES HE HAVE |
| 10:47AM | 18 | TO GO DOWNSTAIRS? |
| 10:47AM | 19 | THE CLERK:  NO, YOUR HONOR.  HE CAN JUST LEAVE THE |
| 10:48AM | 20 | COURTHOUSE. |
| 10:48AM | 21 | THE COURT:  WE'LL COLLECT THE MICROPHONE.  IF YOU |
| 10:48AM | 22 | COULD LEAVE THE PAPERWORK, THOUGH, ON YOUR SEAT THERE. |
| 10:48AM | 23 | THE CLERK:  I BELIEVE THE JUROR NEXT DOOR CAN TAKE |
| 10:48AM | 24 | IT. |
| 10:48AM | 25 | THE COURT:  OKAY.  THANK YOU, MR. PACK. |

| | | |
|---|---|---|
| 10:48AM | 1 | I SAW ANOTHER HAND.  IS THAT MR. TAUSWORTHE?  IS THAT |
| 10:48AM | 2 | RIGHT?  JUROR NUMBER 141? |
| 10:48AM | 3 | PROSPECTIVE JUROR:  YES. |
| 10:48AM | 4 | THE COURT:  YOU CAN WIPE THE MICROPHONE THERE AND |
| 10:48AM | 5 | USE THAT IF YOU WISH, PLEASE. |
| 10:48AM | 6 | PROSPECTIVE JUROR:  I HAVE RELAPSING REMEDIAL |
| 10:48AM | 7 | SCLEROSIS WHICH CAN AFFECT MY ABILITY TO WALK AND MY LINE OF |
| 10:48AM | 8 | SIGHT.  I HAVEN'T HAD ANY FLARE UPS IN A FEW YEARS SINCE I |
| 10:48AM | 9 | CHANGED MEDICATION.  I JUST WANTED TO ESTABLISH THAT SO IF |
| 10:48AM | 10 | SOMETHING WERE TO HAPPEN, ALTHOUGH IT'S UNLIKELY, IT WOULDN'T |
| 10:49AM | 11 | BE A SURPRISE TO THE COURT. |
| 10:49AM | 12 | THE COURT:  THANK YOU, SIR.  I READ THAT IN YOUR |
| 10:49AM | 13 | QUESTIONNAIRE.  YOU INFORMED US OF THAT.  I THINK YOU INDICATED |
| 10:49AM | 14 | AS MUCH IN YOUR QUESTIONNAIRE.  IT WAS INFORMATION THAT YOU |
| 10:49AM | 15 | WANTED US TO KNOW.  BUT YOU HAD A THOUGHT, AS YOU JUST |
| 10:49AM | 16 | EXPRESSED, THAT IT WOULD NOT CAUSE YOU ANY ISSUE TO SIT AS A |
| 10:49AM | 17 | JUROR HERE.  IS THAT ACCURATE? |
| 10:49AM | 18 | PROSPECTIVE JUROR:  YEAH, I DO NOT EXPECT ANY ISSUE. |
| 10:49AM | 19 | THE COURT:  WOULD IT -- LET ME JUST TALK ABOUT |
| 10:49AM | 20 | SEATING.  YOU SEE THE JURY BOX HERE.  THAT'S NORMALLY WHERE |
| 10:49AM | 21 | JURORS WOULD SIT.  THAT'S WHERE SOME OF THE JURORS WHO ARE |
| 10:49AM | 22 | SELECTED IN THIS CASE WILL SIT. |
| 10:49AM | 23 | WE MAY HAVE TO USE ANOTHER ROW TO KEEP SOCIAL DISTANCING |
| 10:49AM | 24 | PROTOCOLS.  WOULD SEATING YOU IN A CERTAIN WAY BE OF |
| 10:49AM | 25 | ASSISTANCE? |

10:49AM 1                    PROSPECTIVE JUROR:  IT COULD BE.  AGAIN, AT THE

10:49AM 2      MOMENT I DON'T THINK THAT'S NECESSARY, BUT IF SOMETHING WERE TO

10:49AM 3      HAPPEN, THAT WOULD PROBABLY WORK OUT GREAT.

10:50AM 4                    THE COURT:  OKAY.  ALL RIGHT.

10:50AM 5              DO YOU -- AND I'M SORRY TO INQUIRE, AND IF YOU WOULD LIKE

10:50AM 6      TO SPEAK PRIVATELY ABOUT THIS, I'M HAPPY TO ARRANGE THAT.

10:50AM 7              ARE THERE MEDICATIONS THAT YOU TAKE THAT CAUSE YOU TO

10:50AM 8      BE -- TO INTERRUPT YOUR -- LET ME JUST CALL IT YOUR COGNITIVE

10:50AM 9      ABILITIES, YOUR ABILITY TO FOCUS, TO LISTEN, TO HEAR?

10:50AM 10                   PROSPECTIVE JUROR:  NO, WE HAVE NOT OBSERVED

10:50AM 11     ANYTHING LIKE THAT WITH MY MEDICATIONS.

10:50AM 12                   THE COURT:  OKAY.  GREAT.  THANK YOU.

10:50AM 13             ANY QUESTIONS, MR. SCHENK?

10:50AM 14                   MR. SCHENK:  NO, YOUR HONOR.

10:50AM 15                   MR. DOWNEY:  NOTHING, YOUR HONOR.

10:50AM 16                   THE COURT:  OKAY.  THANK YOU FOR TELLING US THAT,

10:50AM 17     SIR.  I APPRECIATE THAT.

10:50AM 18                   PROSPECTIVE JUROR:  THANK YOU, YOUR HONOR.

10:50AM 19                   THE COURT:  YOU'RE WELCOME.

10:50AM 20             I THINK THERE WAS ANOTHER HAND BEHIND YOU.  IS THAT

10:50AM 21     MR. TONG?  YOU'RE JUROR NUMBER 147, I BELIEVE.  WE'LL HAND YOU

10:50AM 22     THE MICROPHONE AND YOU CAN WIPE IT IF YOU WOULD LIKE.

10:50AM 23                   PROSPECTIVE JUROR:  IS THIS MEDICAL OR WITH REGARD

10:50AM 24     TO ANY HARDSHIP THAT WE HAVE?

10:50AM 25                   THE COURT:  THIS IS MEDICAL.

| | | |
|---|---|---|
| 10:50AM | 1 | PROSPECTIVE JUROR:  I'LL WAIT FOR LATER. |
| 10:50AM | 2 | THE COURT:  OKAY.  DO YOU FEEL YOU HAVE A HARDSHIP |
| 10:51AM | 3 | THAT YOU WANT TO TALK ABOUT? |
| 10:51AM | 4 | PROSPECTIVE JUROR:  IT'S NOT MEDICAL RELATED. |
| 10:51AM | 5 | THE COURT:  OKAY.  THANK YOU. |
| 10:51AM | 6 | WAS THERE ANOTHER HAND FOR MEDICAL OR ANY OTHER ISSUE? |
| 10:51AM | 7 | ANY BACK THERE?  NO.  I DON'T SEE ANY IN THE AUDIENCE. |
| 10:51AM | 8 | SO WE'LL REACH OUT.  IS IT MS. ZHAO?  MS. ZHAO, JUST A |
| 10:51AM | 9 | SECOND AND WE ARE GOING TO GET A MICROPHONE FOR YOU. |
| 10:51AM | 10 | PROSPECTIVE JUROR:  HI, YOUR HONOR.  I AM |
| 10:51AM | 11 | XIAOYAN ZHAO. |
| 10:51AM | 12 | I HAVE TWO PROCEDURES SCHEDULED, KIND OF RADIOLOGY, AN |
| 10:51AM | 13 | X-RAY, AND IT'S A FOLLOW-UP EXAM, BUT BASICALLY PREVIOUSLY IT |
| 10:51AM | 14 | WAS DEFERRED KIND OF THEY HAVE SUSPICION OF THEY WANT TO GET A |
| 10:52AM | 15 | BIOPSY.  SO THE RESULT, IT WAS DEFERRED BECAUSE AT THE TIME I |
| 10:52AM | 16 | DON'T HAVE ANYONE TO TAKE CARE OF THE KIDS SO WE DEFER IT TO |
| 10:52AM | 17 | OCTOBER. |
| 10:52AM | 18 | AND BASED ON THE RESULT, SO MY MENTAL AND EVERYTHING ELSE |
| 10:52AM | 19 | MAY CHANGE.  SO THAT'S A POTENTIAL EFFECT TO THE CASE TO MY |
| 10:52AM | 20 | AVAILABILITY, AND ALSO EVERYTHING FOLLOWS. |
| 10:52AM | 21 | THE COURT:  THAT'S IN OCTOBER? |
| 10:52AM | 22 | PROSPECTIVE JUROR:  YEAH. |
| 10:52AM | 23 | THE COURT:  OCTOBER?  IS IT MID-OCTOBER?  LATE |
| 10:52AM | 24 | OCTOBER? |
| 10:52AM | 25 | PROSPECTIVE JUROR:  IT'S EARLY OCTOBER. |

| | | |
|---|---|---|
| 10:52AM | 1 | THE COURT:  EARLY OCTOBER.  OKAY. |
| 10:52AM | 2 | AND THEN -- THERE'S A RADIOLOGY APPOINTMENT.  AND THEN DID |
| 10:52AM | 3 | YOU SAY THERE WOULD BE A SUBSEQUENT BIOPSY AFTER THAT? |
| 10:52AM | 4 | PROSPECTIVE JUROR:  THE PREVIOUS RADIOLOGY HAVE A |
| 10:52AM | 5 | BIOPSY FOLLOWED, AND I POSTPONED THE BIOPSY TO OCTOBER.  BUT IN |
| 10:52AM | 6 | SEPTEMBER I WILL HAVE ANOTHER RADIOLOGY TO FOLLOW UP. |
| 10:53AM | 7 | THE COURT:  RIGHT.  AND THEN YOU'LL CONSULT WITH |
| 10:53AM | 8 | YOUR PHYSICIANS ABOUT THE RESULTS OF THAT? |
| 10:53AM | 9 | PROSPECTIVE JUROR:  YEAH. |
| 10:53AM | 10 | THE COURT:  I SEE.  DO YOU THINK THAT THAT -- IS |
| 10:53AM | 11 | THAT GOING TO AFFECT YOUR ABILITY TO CONCENTRATE ON THIS CASE |
| 10:53AM | 12 | DO YOU THINK? |
| 10:53AM | 13 | PROSPECTIVE JUROR:  YEAH, I THINK -- |
| 10:53AM | 14 | THE COURT:  SURE. |
| 10:53AM | 15 | PROSPECTIVE JUROR:  -- BASED ON THE RESULTS IT WILL |
| 10:53AM | 16 | GIVE ME CONCERN. |
| 10:53AM | 17 | THE COURT:  SURE. |
| 10:53AM | 18 | ANY QUESTIONS, MR. SCHENK? |
| 10:53AM | 19 | MR. SCHENK:  NO, YOUR HONOR. |
| 10:53AM | 20 | MR. DOWNEY:  NOTHING, YOUR HONOR. |
| 10:53AM | 21 | THE COURT:  ALL RIGHT.  THANK YOU FOR TELLING US |
| 10:53AM | 22 | ABOUT THAT, MS. ZHAO.  I APPRECIATE IT. |
| 10:53AM | 23 | I WILL EXCUSE YOU AT THIS TIME.  SO JUROR NUMBER 120, |
| 10:53AM | 24 | MRS. ZHAO, IS EXCUSED FOR HARDSHIP, AND BEST WISHES TO YOU. |
| 10:53AM | 25 | PROSPECTIVE JUROR:  THANK YOU. |

| | | |
|---|---|---|
| 10:53AM | 1 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:53AM | 2 | I DON'T SEE ANY OTHER HANDS FOR THAT QUESTION. |
| 10:53AM | 3 | ONE JUST POPPED UP.  MR. NGO, WE'LL GET THE MICROPHONE TO |
| 10:54AM | 4 | YOU. |
| 10:54AM | 5 | PROSPECTIVE JUROR:  MY NAME IS ANTONION NGO. |
| 10:54AM | 6 | CAN I BE EXCUSED BECAUSE I HAVE A PROBLEM WITH MY HEARING |
| 10:54AM | 7 | AND I HAVE TO TAKE CARE OF MY KID?  MY WIFE I TAKE TO WORK |
| 10:54AM | 8 | EVERY DAY AND I'M THE ONLY ONE WHO IS DRIVING. |
| 10:54AM | 9 | THE COURT:  WELL, SIR, AS TO YOUR HEARING, WE HAVE |
| 10:54AM | 10 | ASSISTED LISTENING DEVICES, AND I'M HAPPY TO PROVIDE THAT TO |
| 10:54AM | 11 | YOU IF YOU THINK THAT WOULD BE HELPFUL TO YOU. |
| 10:55AM | 12 | PROSPECTIVE JUROR:  ALSO, I HAVE TO DROP OFF MY WIFE |
| 10:55AM | 13 | TO WORK EVERY DAY, AND MY MOTHER-IN-LAW, I NEED TO TAKE HER |
| 10:55AM | 14 | BLOOD SUGAR EVERY DAY, TOO.  THEY'RE 82 YEARS OLD. |
| 10:55AM | 15 | THE COURT:  ALL RIGHT, SIR.  WHAT TIME DO YOU DROP |
| 10:55AM | 16 | OFF YOUR CHILDREN? |
| 10:55AM | 17 | PROSPECTIVE JUROR:  PARDON ME? |
| 10:55AM | 18 | THE COURT:  WHAT TIME DO YOU DROP YOUR CHILDREN OFF? |
| 10:55AM | 19 | PROSPECTIVE JUROR:  8:00 IN THE MORNING, AND MY WIFE |
| 10:55AM | 20 | MAYBE 12:00 O'CLOCK. |
| 10:55AM | 21 | THE COURT:  I SEE.  ALL RIGHT.  THANK YOU. |
| 10:55AM | 22 | ANY QUESTIONS, MR. SCHENK? |
| 10:55AM | 23 | MR. SCHENK:  NO, YOUR HONOR. |
| 10:55AM | 24 | MR. DOWNEY:  NOTHING. |
| 10:55AM | 25 | THE COURT:  ALL RIGHT.  THANK YOU, SIR.  THANK YOU. |

| | | |
|---|---|---|
| 10:55AM | 1 | MR. NGO, THANK YOU.  I'M NOT GOING TO EXCUSE YOU JUST AT |
| 10:55AM | 2 | THE MOMENT, BUT IF YOU WOULD JUST TAKE A SEAT. |
| 10:56AM | 3 | LET ME ASK YOU, WOULD YOU LIKE ONE OF THESE ASSISTED |
| 10:56AM | 4 | LISTENING DEVICES? |
| 10:56AM | 5 | WHY DON'T WE PROVIDE SOMETHING TO MR. NGO JUST FOR THE |
| 10:56AM | 6 | MOMENT. |
| 10:56AM | 7 | THE CLERK:  (HANDING.) |
| 10:56AM | 8 | THE COURT:  THANK YOU. |
| 10:56AM | 9 | ANY OTHER RESPONSE TO THAT QUESTION? |
| 10:56AM | 10 | I SEE NO HANDS. |
| 10:56AM | 11 | LADIES AND GENTLEMEN, WE NOW COME TO THAT PORTION OF THE |
| 10:56AM | 12 | TRIAL WHERE I WILL ASK YOU SOME QUESTIONS REGARDING YOUR |
| 10:57AM | 13 | QUALIFICATIONS TO SIT AS JURORS IN THE CASE.  COUNSEL WILL ALSO |
| 10:57AM | 14 | HAVE AN OPPORTUNITY TO ASK YOU QUESTIONS. |
| 10:57AM | 15 | THIS PROCESS IS VERY IMPORTANT BECAUSE THE PARTIES AND THE |
| 10:57AM | 16 | COURT WANT FAIR AND IMPARTIAL JURORS, JURORS WHO ARE FREE OF |
| 10:57AM | 17 | ANY PRECONCEIVED IDEA, BELIEF, ATTITUDE, BIAS, OR PREJUDICE |
| 10:57AM | 18 | ABOUT THE OFFENSES CHARGED OR THE ACCUSED, AND JURORS WHO WILL |
| 10:57AM | 19 | DECIDE THIS CASE ONLY AFTER HEARING ALL OF THE EVIDENCE IN THIS |
| 10:57AM | 20 | COURTROOM, THE ARGUMENTS OF COUNSEL, THE LAW AS GIVEN TO YOU BY |
| 10:57AM | 21 | THE COURT, AND THEN ONLY AFTER DELIBERATING WITH YOUR FELLOW |
| 10:57AM | 22 | JURORS. |
| 10:57AM | 23 | BY THE OATH THAT YOU HAVE TAKEN, YOU'RE OBLIGATED TO |
| 10:57AM | 24 | ANSWER ALL OF THESE QUESTIONS TRUTHFULLY AND COMPLETELY. |
| 10:57AM | 25 | YOU'LL HELP THE PROCESS BY VOLUNTEERING INFORMATION ABOUT |

10:57AM  1    YOUR EXPERIENCES, FEELINGS, BIASES, IF ANY, EVEN THOUGH YOU

10:57AM  2    FEEL YOU CAN PUT ASIDE THOSE FEELINGS, EXPERIENCES, AND BIASES

10:58AM  3    TO SERVE AS A FAIR AND IMPARTIAL JUROR.

10:58AM  4        IF YOU ARE SENSITIVE ABOUT ANSWERING ANY QUESTION OF ANY

10:58AM  5    TYPE, YOU SHOULD PLEASE LET ME KNOW AND WE CAN DISCUSS WHATEVER

10:58AM  6    THAT MATTER IS PRIVATELY WITH COUNSEL.

10:58AM  7        LET ME SAY, YOU SHOULD -- IF YOU FEEL THAT YOU'D LIKE TO

10:58AM  8    DISCUSS SOMETHING PRIVATELY, PLEASE DON'T BE SHY ABOUT LETTING

10:58AM  9    ME KNOW THAT.  THAT'S VERY COMMON IN OUR COURTS, AND WE DO THAT

10:58AM  10   WITH GREAT FREQUENCY.  SO DON'T BE SHY ABOUT LETTING ME KNOW

10:58AM  11   THAT, AND WE CAN CERTAINLY ENGAGE THAT.

10:58AM  12       THIS PROCESS SEEKS TO IDENTIFY ANY MATTER, INCLUDING THOSE

10:58AM  13   THAT MIGHT BE CONTROVERSIAL THAT RAISE AN ISSUE OF BIAS OR AN

10:58AM  14   INABILITY TO BE FAIR AND IMPARTIAL.

10:58AM  15       NOW, IF ANY JUROR FEELS LIKE AN ISSUE HAS ARISEN THAT YOU

10:58AM  16   WOULD LIKE TO, OR YOU THINK IT MIGHT BE BETTER TO SPEAK IN

10:58AM  17   PRIVATE WITH THE COURT AND COUNSEL, AS I'VE SAID, PLEASE LET ME

10:58AM  18   KNOW AND WE CAN CERTAINLY DO THAT.

10:58AM  19       YOU SEE, IT'S IMPORTANT THAT YOU EXPRESS THESE ISSUES WITH

10:59AM  20   THE PARTIES.  WE CAN MEET PRIVATELY AND ALLOW YOU TO DO THAT.

10:59AM  21       AND I WANT YOU TO BE FRANK AND OPEN, BUT I ALSO WANT TO

10:59AM  22   NOT ALLOW ANYTHING THAT IS SAID TO NEGATIVELY INFLUENCE OR

10:59AM  23   AFFECT ANY OTHER JUROR.  THIS IS IMPORTANT.  WHILE WE ALL WANT

10:59AM  24   TO HEAR YOUR CANDID THOUGHTS ON TOPICS, IT IS IMPORTANT THAT

10:59AM  25   EXPRESSIONS, WHILE HEARTFELT, DO NOT TAINT OR NEGATIVELY IMPACT

10:59AM 1    THE FAIRNESS OF THE PANEL.

10:59AM 2        SO IF YOU FEEL, LADIES AND GENTLEMEN, THAT YOU MIGHT, FOR

10:59AM 3    WHATEVER REASON, HAVE AN ISSUE THAT IS CONTROVERSIAL OR

10:59AM 4    SOMETHING -- A STRONG BELIEF ABOUT SOMETHING, LET ME KNOW,

10:59AM 5    PLEASE, AND WE'LL HAVE A PRIVATE CONVERSATION ABOUT THAT.

10:59AM 6        NOW, IN SELECTING A JUROR, EACH SIDE IS PERMITTED A

10:59AM 7    CERTAIN NUMBER OF PEREMPTORY CHALLENGES TO PROSPECTIVE JURORS

10:59AM 8    AND AN ATTORNEY MAY EXCUSE A JUROR JUST BECAUSE THEY FEEL THIS

10:59AM 9    IS NOT THE RIGHT CASE FOR THEM.

10:59AM 10       THERE ARE CHALLENGES FOR CAUSE, AND THOSE ARISE WHERE A

11:00AM 11   PARTY OR THE COURT FEELS THAT AN INDIVIDUAL CANNOT SIT ON THE

11:00AM 12   CASE BECAUSE OF A BIAS, INTEREST, OR OTHER INABILITY TO BE

11:00AM 13   FAIR.

11:00AM 14       I'LL DETERMINE IF A JUROR SHOULD BE EXCUSED FOR CAUSE.

11:00AM 15   THE QUESTIONS OF THE COURT AND COUNSEL AND THE ANSWERS OF THE

11:00AM 16   PROSPECTIVE JURORS ASSIST THE ATTORNEYS IN THIS PROCESS.

11:00AM 17       NOW, FOLLOWING MY QUESTIONS AND THE QUESTIONS -- MY

11:00AM 18   QUESTIONS, THE LAWYERS WILL HAVE AN OPPORTUNITY TO MAKE ANY

11:00AM 19   DECISIONS ABOUT THE JURORS THAT THEY WISH.  WE'LL TAKE THESE UP

11:00AM 20   AFTER WE HAVE MET ALL OF THE PANELS, AND YOU'LL THEN BE

11:00AM 21   NOTIFIED BY THE COURT WHETHER AND WHEN YOU SHOULD RETURN TO THE

11:00AM 22   COURT FOR FURTHER SERVICE.

11:00AM 23       WE WILL ALSO BE SELECTING FIVE ALTERNATE JURORS IN THIS

11:00AM 24   CASE.  THEY WILL SIT DURING THE TRIAL AND, SHOULD A MEMBER OF

11:00AM 25   THE SEATED 12 JURORS BE UNABLE TO CONTINUE TO SIT AS A JUROR,

11:00AM 1    THE ALTERNATE JUROR WOULD REPLACE THAT SITTING JUROR AND WOULD

11:01AM 2    JOIN THE OTHER JURORS IN DELIBERATION AT THE CONCLUSION OF THE

11:01AM 3    CASE.

11:01AM 4        IF THERE IS NO NEED FOR THE SUBSTITUTION OF A SITTING

11:01AM 5    JUROR, THE ALTERNATE JURORS WOULD BE PERMITTED TO GO HOME.  YOU

11:01AM 6    WOULD STILL BE UNDER THE COURT ORDER NOT TO DISCUSS THE CASE OR

11:01AM 7    NOT TO READ, LISTEN TO, OR SEE ANY MATERIAL ATTACHED TO IT, BUT

11:01AM 8    YOU WOULD AND COULD BE SUBJECT TO BEING RECALLED TO REPLACE A

11:01AM 9    SITTING DELIBERATING JUROR.

11:01AM 10       IF THAT HAPPENS, THE JURY DELIBERATIONS WOULD START ANEW,

11:01AM 11   ALL OVER AGAIN WITH THE NEW SEATED AND SUBSTITUTED JUROR.

11:01AM 12       NOW, YOU'VE COMPLETED QUESTIONNAIRES LAST WEEK.  I'M

11:01AM 13   GRATEFUL FOR THAT.  WE'RE ALL GRATEFUL FOR THAT.  YOUR ANSWERS

11:01AM 14   IN RESPONSE TO THOSE QUESTIONNAIRES HAVE BEEN VERY HELPFUL IN

11:01AM 15   PREPARATION FOR THIS PROCESS.

11:01AM 16       NOW, MY QUESTIONS MAY BE REPETITIVE AS TO SOME OF THOSE

11:02AM 17   ITEMS ASKED, AND I'LL HAVE SOME ADDITIONAL QUESTIONS TO ASK AS

11:02AM 18   WELL.  SO THANK YOU IN ADVANCE FOR YOUR PATIENCE.

11:02AM 19       PLEASE DO LISTEN CAREFULLY TO ALL OF THE QUESTIONS ASKED

11:02AM 20   AND THE ANSWERS OF PROSPECTIVE JURORS.  DOING SO MAY ASSIST YOU

11:02AM 21   IN THINKING ABOUT WHAT YOUR RESPONSE MIGHT BE TO A QUESTION.

11:02AM 22       NOW, FIRST OF ALL, LET ME ASK THE PANEL AS A WHOLE HERE,

11:02AM 23   DO ANY OF YOU KNOW THE ASSISTANT UNITED STATES ATTORNEYS OR

11:02AM 24   DEFENSE COUNSEL OR ANY MEMBERS OF THEIR TEAMS?  ANYONE HAVE

11:02AM 25   FAMILIARITY WITH ANY OF THESE PARTIES HERE?  RAISE YOUR HAND IF

| | | |
|---|---|---|
| 11:02AM | 1 | YOU DO. |
| 11:02AM | 2 | I SEE NO HANDS. |
| 11:02AM | 3 | HAVE ANY OF YOU HAD ANY BUSINESS DEALINGS WITH THE |
| 11:02AM | 4 | ATTORNEYS OR BEEN REPRESENTED BY THEM OR MEMBERS OF THEIR |
| 11:02AM | 5 | FIRMS? |
| 11:02AM | 6 | AGAIN, I SEE NO HANDS. |
| 11:02AM | 7 | DO ANY OF YOU KNOW THE DEFENDANT, MS. HOLMES?  ANY OF YOU |
| 11:02AM | 8 | KNOW MS. HOLMES? |
| 11:02AM | 9 | I SEE NO HANDS. |
| 11:02AM | 10 | DO ANY OF YOU KNOW ANY OF THE WITNESSES THAT WERE ON THE |
| 11:03AM | 11 | WITNESS LIST? |
| 11:03AM | 12 | I SEE A HAND HERE IN THE JURY BOX. |
| 11:03AM | 13 | PROSPECTIVE JUROR:  I KNOW TWO. |
| 11:03AM | 14 | THE COURT:  HANG ON, MR. WAXMAN, AND WE'LL GET YOU A |
| 11:03AM | 15 | MICROPHONE. |
| 11:03AM | 16 | THIS IS MR. WAXMAN, JUROR NUMBER 220. |
| 11:03AM | 17 | PROSPECTIVE JUROR:  NO, MR. GOLDBERG. |
| 11:03AM | 18 | THE COURT:  GOLDBERG, I BEG YOUR PARDON.  I'M |
| 11:03AM | 19 | LOOKING AT THE WRONG CHART. |
| 11:03AM | 20 | MR. GOLDBERG, YOU ARE JUROR NUMBER 102.  I BEG YOUR |
| 11:03AM | 21 | PARDON. |
| 11:03AM | 22 | YES, SIR? |
| 11:03AM | 23 | PROSPECTIVE JUROR:  I SEE A NAME ON THE WITNESS LIST |
| 11:03AM | 24 | WITH WHOM I HAVE A PERSONAL AND PROFESSIONAL RELATIONSHIP. |
| 11:03AM | 25 | THE COURT:  OKAY. |

11:03AM 1          PROSPECTIVE JUROR:  I DID NOT NOTICE THAT NAME WHEN

11:03AM 2    WE FILLED OUT THE QUESTIONNAIRE.

11:03AM 3          THE COURT:  I SEE.  WELL, THERE'S A LOT OF THEM.  I

11:03AM 4    RESPECT THAT.

11:03AM 5        WHO IS IT, SIR.

11:03AM 6          PROSPECTIVE JUROR:  HIS NAME IS SETH MICHELSON.

11:03AM 7    HE'S A RETIRED MEDICAL RESEARCHER.

11:03AM 8          THE COURT:  OKAY.  AND TELL ME THE NATURE OF YOUR

11:03AM 9    CONNECTION WITH HIM.

11:03AM 10          PROSPECTIVE JUROR:  I'M A CUSTOM PICTURE FRAMER IN

11:03AM 11    THE COMMUNITY NEAR DOWNTOWN, AND HE'S ONE OF MY LONG-TIME

11:03AM 12    CUSTOMERS, AND WE HAVE SPOKEN ABOUT PERSONAL MEDICAL ISSUES

11:03AM 13    HAVING TO DO WITH THE ILLNESS OF MY FATHER.

11:03AM 14          THE COURT:  I SEE.  MR. GOLDBERG, HAVE YOU TALKED TO

11:04AM 15    HIM AT ALL ABOUT ANYTHING ABOUT THIS CASE?

11:04AM 16          PROSPECTIVE JUROR:  NOTHING HAVING TO DO WITH THIS

11:04AM 17    CASE.

11:04AM 18          THE COURT:  I SEE.  OKAY.

11:04AM 19        TELL ME, WHAT EFFECT DO YOU THINK YOUR RELATIONSHIP WITH

11:04AM 20    MR. MICHELSON WILL BE SHOULD HE TESTIFY IN THIS CASE?

11:04AM 21          PROSPECTIVE JUROR:  GIVEN MY EXPERIENCE WITH HIM, I

11:04AM 22    WOULD GIVE GREAT WEIGHT TO HIS TESTIMONY BEING ACCURATE.

11:04AM 23          THE COURT:  I SEE.

11:04AM 24        DO YOU THINK IF HE IS CALLED AS A WITNESS, IF HE

11:04AM 25    TESTIFIES, WOULD YOU BE ABLE TO WEIGH HIS TESTIMONY AND

11:04AM 1    CREDIBILITY?  THAT'S WHAT JURORS DO, THEY DETERMINE CREDIBILITY

11:04AM 2    OF TESTIMONY.

11:04AM 3        DO YOU THINK YOU WOULD BE ABLE TO WEIGH HIS TESTIMONY THE

11:04AM 4    WAY YOU WOULD ANY OTHER WITNESS?

11:04AM 5            PROSPECTIVE JUROR:  I WOULD APPLY THE RULES OF

11:04AM 6    EVIDENCE AND -- OF THE LAW.

11:05AM 7        HOWEVER, KNOWING THE MAN IN A CASE WHERE AN INDIVIDUAL

11:05AM 8    DISAGREED WITH HIM, I WOULD BE INCLINED TO BELIEVE

11:05AM 9    MR. MICHELSON.

11:05AM 10           THE COURT:  THAT'S WHERE I WAS GOING NEXT.  THANK

11:05AM 11   YOU FOR THAT.

11:05AM 12       IT MAY BE THAT -- IT'S NOT UNUSUAL FOR A WITNESS TO

11:05AM 13   TESTIFY AND THEN OTHER EVIDENCE THAT MAY COME IN THAT MIGHT

11:05AM 14   REBUT OR BE CONTRARY TO A WITNESS'S TESTIMONY.

11:05AM 15       AND IN REGARDS TO MR. MICHELSON, I DON'T KNOW IF HE'S

11:05AM 16   GOING TO TESTIFY OR NOT, BUT IF HE DID AND IF EVIDENCE WERE TO

11:05AM 17   COME IN THAT WAS CONTRARY, OR THE OTHER SIDE OF HIS TESTIMONY,

11:05AM 18   IS THERE ANY WAY THAT YOU THINK YOU COULD KEEP A --

11:05AM 19           PROSPECTIVE JUROR:  I DON'T BELIEVE I COULD --

11:05AM 20           THE COURT:  I'M SORRY.  LET ME FINISH.

11:05AM 21       IS THERE ANY WAY THAT YOU THINK YOU COULD JUDGE FAIRLY

11:05AM 22   MR. MICHELSON'S TESTIMONY, NOTWITHSTANDING YOUR RELATIONSHIP

11:05AM 23   WITH HIM?

11:05AM 24           PROSPECTIVE JUROR:  YES, I BELIEVE I COULD WEIGH IT

11:05AM 25   OBJECTIVELY.

| | | |
|---|---|---|
| 11:05AM | 1 | THE COURT:  OKAY.  AND I'M SORRY, MR. GOLDBERG, |
| 11:06AM | 2 | THESE LAWYERS ARE GOING TO ASK YOU SOME QUESTIONS ABOUT THAT, |
| 11:06AM | 3 | TOO. |
| 11:06AM | 4 | PROSPECTIVE JUROR:  SURE. |
| 11:06AM | 5 | THE COURT:  BUT I THINK YOUR FIRST ANSWER WAS, I |
| 11:06AM | 6 | DON'T THINK I COULD DO THAT. |
| 11:06AM | 7 | PROSPECTIVE JUROR:  UM -- |
| 11:06AM | 8 | THE COURT:  MR. GOLDBERG, I'M SORRY, WE JUST HAVE TO |
| 11:06AM | 9 | TALK ONE AT A TIME, AND I APOLOGIZE. |
| 11:06AM | 10 | YOU TOLD ME FIRST, I'M GOING TO GIVE HIS TESTIMONY MORE |
| 11:06AM | 11 | WEIGHT, AND THAT'S VERY NATURAL.  I COMPLETELY UNDERSTAND THAT. |
| 11:06AM | 12 | AGAIN, I WANT TO EMPHASIZE, THERE'S NO RIGHT OR WRONG |
| 11:06AM | 13 | ANSWER HERE.  YOU'RE NOT BEING PENALIZED FOR TELLING US HOW YOU |
| 11:06AM | 14 | FEEL.  WE JUST WANT YOU TO BE HONEST ABOUT THIS. |
| 11:06AM | 15 | SO -- AND THEN YOU SAID, WELL, I THINK I CAN BE FAIR.  I |
| 11:06AM | 16 | CAN BE OBJECTIVE. |
| 11:06AM | 17 | SO WHAT DO YOU THINK? |
| 11:06AM | 18 | PROSPECTIVE JUROR:  I THINK THAT MY FIRST RESPONSE |
| 11:06AM | 19 | IS PROBABLY TRUER, THAT IN THE CASE OF WEIGHING THAT WITNESS'S |
| 11:06AM | 20 | TESTIMONY AGAINST CONFLICTING TESTIMONY, GIVEN THAT I HAVE A |
| 11:06AM | 21 | PERSONAL RELATIONSHIP AND HE'S ESTABLISHED CREDIBILITY, I WOULD |
| 11:06AM | 22 | BE MORE SWAYED BY HIS TESTIMONY THAN CONTRADICTORY TESTIMONY. |
| 11:07AM | 23 | THE COURT:  AND IT'S NOT -- |
| 11:07AM | 24 | PROSPECTIVE JUROR:  I WOULD BE OPEN TO CHANGING MY |
| 11:07AM | 25 | MIND, BUT I CAN'T TELL YOU THAT I WOULD BE -- MAYBE "OBJECTIVE" |

11:07AM 1    IS THE WRONG WORD.  I WOULD BE COMING AT IT WITH SOME

11:07AM 2    PREEXISTING IDEA.

11:07AM 3                THE COURT:  SURE.

11:07AM 4                PROSPECTIVE JUROR:  I WOULD FEEL LIKE I COULD PUT

11:07AM 5    THAT ASIDE, BUT A PERSON'S LIBERTY IS ON THE LINE, AND I THINK

11:07AM 6    THAT REQUIRES A REAL HIGH STANDARD OF FAIRNESS.

11:07AM 7                THE COURT:  OKAY.  WELL, THANK YOU FOR CALLING THAT

11:07AM 8    OUT.  I APPRECIATE THAT.

11:07AM 9         HE'S A CUSTOMER OF YOURS?  YOU'RE A CUSTOM FRAMER AND YOU

11:07AM 10   HAVE DONE CUSTOM FRAMING FOR HIS ARTWORK?

11:07AM 11               PROSPECTIVE JUROR:  HE'S A PAINTER AND HE BRINGS ME

11:07AM 12   A PAINTING ABOUT EVERY SIX WEEKS.

11:07AM 13               THE COURT:  I SEE.  AND HE TRUSTS YOU WITH FRAMING

11:07AM 14   HIS WORK?

11:07AM 15               PROSPECTIVE JUROR:  HE GIVES ME MATERIAL AND SAYS,

11:07AM 16   DO WHAT YOU THINK IS BEST AND CHARGE ME WHAT YOU THINK IS FAIR.

11:07AM 17               THE COURT:  AND YOU DO BOTH OF THOSE THINGS?

11:07AM 18               PROSPECTIVE JUROR:  HE'S ALWAYS BEEN HAPPY WITH THE

11:07AM 19   RESULT.

11:07AM 20               THE COURT:  OKAY.  HOW LONG HAS HE BEEN A

11:07AM 21   CUSTOMER/CLIENT OF YOURS?

11:08AM 22               PROSPECTIVE JUROR:  MORE THAN FIVE YEARS.

11:08AM 23               THE COURT:  I SEE.

11:08AM 24         MR. SCHENK, DO YOU HAVE ANY QUESTIONS?

11:08AM 25               MR. SCHENK:  NO QUESTIONS, YOUR HONOR.

11:08AM   1              MR. DOWNEY:  NOTHING, YOUR HONOR.

11:08AM   2              THE COURT:  ANYTHING ELSE YOU WOULD LIKE ME TO KNOW

11:08AM   3    ABOUT, MR. GOLDBERG, IN THIS REGARD?

11:08AM   4              PROSPECTIVE JUROR:  NOT WITH RESPECT TO THE WITNESS,

11:08AM   5    YOUR HONOR, NO.

11:08AM   6              THE COURT:  THANK YOU.  I APPRECIATE IT.

11:08AM   7         ANYONE ELSE WHO KNOWS ANYONE ON THE WITNESS LIST?

11:08AM   8         I SEE NO HANDS.

11:08AM   9         AS I INDICATED, THIS CASE RELATES TO MS. HOLMES'S ALLEGED

11:08AM  10    VIOLATIONS OF WIRE FRAUD OR CONSPIRACY TO COMMIT WIRE FRAUD AS

11:08AM  11    INDICATED IN THE INDICTMENT.

11:08AM  12         LET ME ASK, HAS ANYONE READ OR HEARD ANY NEWS COVERAGE OF

11:08AM  13    THIS CASE?

11:08AM  14         OKAY.  WE'LL START IN THE JURY BOX THERE.

11:08AM  15         MR. WAXMAN, YOU HAVE THE MICROPHONE.  WHY DON'T YOU TELL

11:08AM  16    US --

11:08AM  17              PROSPECTIVE JUROR:  GOLDBERG.

11:08AM  18              THE COURT:  GOLDBERG, I BEG YOUR PARDON.

11:08AM  19              PROSPECTIVE JUROR:  I'VE BEEN FAMILIAR WITH THE

11:08AM  20    DETAILS OF THE CASE PRETTY MUCH IN REALTIME.  WHEN I WAS ASKED

11:09AM  21    TEN DAYS AGO TO REFRAIN FROM READING OR LISTENING TO ANYTHING

11:09AM  22    ABOUT THE CASE, I CLOSED NEWSPAPERS AND WEBSITES AND SHUT OFF

11:09AM  23    NEWS PROGRAMS WHEN THE STORY CAME UP.

11:09AM  24              THE COURT:  OKAY.  WHAT IS THE MOST RECENT PIECE OF

11:09AM  25    INFORMATION THAT YOU RECEIVED SUBSEQUENT TO YOUR FILLING OUT

| | | |
|---|---|---|
| 11:09AM | 1 | THE QUESTIONNAIRE? |
| 11:09AM | 2 | PROSPECTIVE JUROR:  SUBSEQUENT TO MY FILLING OUT THE |
| 11:09AM | 3 | QUESTIONNAIRE?  I HAVE RECEIVED NO NEW INFORMATION SUBSEQUENT |
| 11:09AM | 4 | TO MY FILLING OUT THE QUESTIONNAIRE.  I'VE STUDIOUSLY AVOIDED |
| 11:09AM | 5 | THAT. |
| 11:09AM | 6 | THE COURT:  OKAY.  SO TELL US ABOUT THE INFORMATION. |
| 11:09AM | 7 | YOU SAID YOU KNOW DETAILS ABOUT THE CASE. |
| 11:09AM | 8 | PROSPECTIVE JUROR:  WELL, PRIOR TO BEING CALLED FOR |
| 11:09AM | 9 | JURY SERVICE, I HAD HEARD NEWS ARTICLES ABOUT THE DEFENDANT'S |
| 11:09AM | 10 | PREGNANCY. |
| 11:09AM | 11 | AND IN YEARS PRIOR I HAD HEARD NEWS ARTICLES ABOUT |
| 11:10AM | 12 | INDIVIDUALS WHO HAD INVESTED IN THE COMPANY, AND EARLY ON I WAS |
| 11:10AM | 13 | ENTHUSIASTIC ABOUT THE POSSIBILITIES OF A MEDICAL DEVICE AND |
| 11:10AM | 14 | WAS DISAPPOINTED AS NEWS REPORTS SUGGESTED THAT EARLY PROMISES |
| 11:10AM | 15 | WERE NOT COMING TO FRUITION. |
| 11:10AM | 16 | THE COURT:  OKAY.  SO YOU FOLLOWED THE MEDIA STORIES |
| 11:10AM | 17 | ABOUT THIS, RIGHT?  I THINK YOU ALSO TELL US, OR TOLD US -- DO |
| 11:10AM | 18 | YOU GO TO L.A., LOS ANGELES, EVERY SUNDAY? |
| 11:10AM | 19 | PROSPECTIVE JUROR:  I TRAVEL EVERY SUNDAY TO SPEND |
| 11:10AM | 20 | THE DAY WITH MY 90-YEAR-OLD FATHER WHO IS IN THE MIDDLE STAGES |
| 11:10AM | 21 | OF ALZHEIMER'S.  HE WAS A BRILLIANT ATTORNEY, AND IT'S AN |
| 11:10AM | 22 | INTERESTING PROCESS TO HELP A PERSON TRANSITION, AND I WANT TO |
| 11:10AM | 23 | SPEND TIME WITH HIM. |
| 11:11AM | 24 | THE COURT:  YES. |
| 11:11AM | 25 | PROSPECTIVE JUROR:  ADDITIONALLY, YOUR HONOR, I LOST |

11:11AM 1    A BROTHER IN DECEMBER TO AN ACCIDENTAL OPIATE OVERDOSE, AND

11:11AM 2    I'VE BEEN COMFORTING MY FATHER AND STEPMOTHER, AS WELL AS

11:11AM 3    HANDLING THE PROBATE, HELPING WITH THE PROBATION OF MY

11:11AM 4    BROTHER'S ESTATE.  HE DIED INTESTATE WITH NO HEIRS.

11:11AM 5             THE COURT:  I SAW THAT AND THAT DREW MY ATTENTION,

11:11AM 6    AND THAT'S WHY I'M SOMEHOW CHANGING CONVERSATIONS HERE.

11:11AM 7        YOU GO EVERY SUNDAY TO SEE YOUR FATHER?

11:11AM 8             PROSPECTIVE JUROR:  THIS SUNDAY I'M GOING TO

11:11AM 9    REFRAIN.  LAST SUNDAY I TRAVELLED DOWN.

11:11AM 10       NEXT SATURDAY IS MY FATHER'S 91ST BIRTHDAY.  MY PLAN HAD

11:11AM 11   BEEN TO RENT A MOTOR HOME AND TAKE MY PET ANIMALS DOWN TO VISIT

11:11AM 12   HIM.

11:11AM 13       I SEE NOW THAT COURT IS SCHEDULED FOR FRIDAY OF NEXT WEEK.

11:11AM 14   I WAS HOPING THAT IF COURT WAS MONDAY, TUESDAY, AND THURSDAY,

11:11AM 15   OR TUESDAY, WEDNESDAY, THURSDAY I COULD TRAVEL FOR FRIDAY.  I

11:11AM 16   NOW SEE THAT THAT COULD BE INTERRUPTED.

11:11AM 17       I FELT THAT I COULD MAKE IT IF I COULD LEAVE ON A SATURDAY

11:11AM 18   AND RETURN FOR COURT ON A TUESDAY, BUT I'M AFRAID IF COURT IS

11:11AM 19   MEETING ON FRIDAY, IT'S STARTING TO -- AND THAT IS SOMETHING

11:12AM 20   THAT, MY PRESENCE THERE IS EXTREMELY IMPORTANT TO MY STEPMOTHER

11:12AM 21   AND MY SURVIVING FAMILY MEMBERS BECAUSE I'M THE ONLY SON THAT

11:12AM 22   HAS THE TIME --

11:12AM 23             THE COURT:  SURE.

11:12AM 24             PROSPECTIVE JUROR:  -- AND WHEREWITHAL TO FLY THERE

11:12AM 25   AND SUPPORT HIM AND GIVE MY STEPMOTHER A BREAK FROM CARE FOR A

| | | |
|---|---|---|
| 11:12AM | 1 | PERSON WHO IS SUFFERING FROM DEMENTIA. |
| 11:12AM | 2 | THE COURT:  THANK YOU.  ARE THERE OCCASIONS WHEN YOU |
| 11:12AM | 3 | ARE CALLED DURING THE WEEK? |
| 11:12AM | 4 | PROSPECTIVE JUROR:  THERE ARE OCCASIONS.  THEY ARE |
| 11:12AM | 5 | NOT COMMON.  BUT BECAUSE OF THE FAST MOVING NATURE OF THE |
| 11:12AM | 6 | ILLNESS, I DON'T KNOW WHERE WE MIGHT BE IN THREE OR TEN WEEKS. |
| 11:12AM | 7 | THE COURT:  SURE.  THANK YOU. |
| 11:12AM | 8 | AS TO THIS, ANY QUESTIONS, MR. SCHENK? |
| 11:12AM | 9 | MR. SCHENK:  NO, YOUR HONOR. |
| 11:12AM | 10 | MR. DOWNEY:  NOTHING, YOUR HONOR. |
| 11:12AM | 11 | THE COURT:  OKAY.  THANK YOU. |
| 11:12AM | 12 | ALL RIGHT.  THANK YOU. |
| 11:12AM | 13 | LET ME SEE, WERE THERE OTHER HANDS IN THE JURY BOX? |
| 11:12AM | 14 | YES?  IS THAT MS. LOCKWOOD? |
| 11:12AM | 15 | PROSPECTIVE JUROR:  YES. |
| 11:13AM | 16 | THE COURT:  NUMBER 99.  YES, MS. LOCKWOOD?  WHAT |
| 11:13AM | 17 | WOULD YOU LIKE US TO KNOW? |
| 11:13AM | 18 | PROSPECTIVE JUROR:  I'VE ONLY SEEN A COUPLE OF |
| 11:13AM | 19 | ONLINE MEMES, OR FUNNY IMAGES RELATING TO THIS, NOT REALLY ANY |
| 11:13AM | 20 | REAL INFORMATION.  BUT I JUST WANTED TO LET YOU KNOW THAT I |
| 11:13AM | 21 | HAVE SEEN SOME THINGS. |
| 11:13AM | 22 | BUT SINCE THE QUESTIONNAIRE, I HAVE DEFINITELY STOPPED |
| 11:13AM | 23 | MYSELF FROM LOOKING ON YOUTUBE AND ALL OF THAT FUN STUFF |
| 11:13AM | 24 | BECAUSE IT CAN BE A VERY QUICK RABBIT HOLE OF MISINFORMATION, |
| 11:13AM | 25 | SO -- |

| | | |
|---|---|---|
| 11:13AM | 1 | THE COURT:  OKAY.  LET ME ASK YOU THE SAME |
| 11:13AM | 2 | QUESTION -- AND THOSE OF YOU WHO HAVE RAISED YOUR HANDS, PLEASE |
| 11:13AM | 3 | KNOW I'M GOING TO ASK YOU THIS SAME QUESTION -- WHAT IS THE |
| 11:13AM | 4 | MOST RECENT INFORMATION THAT YOU RECEIVED POST, AFTER YOU |
| 11:13AM | 5 | FILLED OUT THE QUESTIONNAIRE? |
| 11:14AM | 6 | PROSPECTIVE JUROR:  NONE. |
| 11:14AM | 7 | THE COURT:  NONE.  OKAY.  LET'S START THERE AND GO |
| 11:14AM | 8 | BACKWARDS. |
| 11:14AM | 9 | AND THEN PRIOR TO FILLING OUT THE QUESTIONNAIRE, WHAT IS |
| 11:14AM | 10 | THE MOST RECENT THING THAT YOU SAW? |
| 11:14AM | 11 | PROSPECTIVE JUROR:  MAYBE A COUPLE MONTHS AGO THERE |
| 11:14AM | 12 | WAS A FUNNY IMAGE OR A MEME IN, LIKE, A GROUP THAT I'M IN |
| 11:14AM | 13 | RELATING TO A VOICE THING, NOT REALLY ANYTHING ABOUT THE ACTUAL |
| 11:14AM | 14 | CASE. |
| 11:14AM | 15 | THE COURT:  OKAY.  THANK YOU FOR THAT DISTINCTION. |
| 11:14AM | 16 | HAVE YOU SEEN ANYTHING THAT REFLECTS ON THE FACTS OR |
| 11:14AM | 17 | ANTICIPATED FACTS OR ANYTHING ABOUT THE CASE IN ANY OF THE |
| 11:14AM | 18 | MATERIAL THAT YOU'VE LOOKED AT? |
| 11:14AM | 19 | PROSPECTIVE JUROR:  NOT THAT I KNOW OF.  BUT I DON'T |
| 11:14AM | 20 | CONSIDER MYSELF VERY KNOWLEDGEABLE ON MEDICAL DEVICES, SO I |
| 11:14AM | 21 | CAN'T BE A GOOD JUDGE OF THAT. |
| 11:14AM | 22 | THE COURT:  YOU CAME IN A WEEK AGO TO FILL OUT THE |
| 11:14AM | 23 | QUESTIONNAIRE AND YOU SAW THE NAME OF THE CASE, YOU SAW WHAT |
| 11:14AM | 24 | CASE IT WAS. |
| 11:14AM | 25 | DID THAT CAUSE YOU, JUST THAT READING WHAT THE CASE WAS |

| | | |
|---|---|---|
| 11:14AM | 1 | ABOUT, DID THAT CAUSE YOU TO REFLECT ANYTHING ABOUT, OH, I KNOW |
| 11:15AM | 2 | ABOUT THIS, OR, OH, I SAW A MOVIE ABOUT THIS, I READ A BOOK, |
| 11:15AM | 3 | ANYTHING LIKE THAT? |
| 11:15AM | 4 | PROSPECTIVE JUROR:  I ONLY RECOGNIZED THE NAME |
| 11:15AM | 5 | THERANOS.  THAT WAS IT, AND ONLY FROM THE MEME. |
| 11:15AM | 6 | THE COURT:  I SEE. |
| 11:15AM | 7 | PROSPECTIVE JUROR:  BUT I DIDN'T REALLY KNOW WHO |
| 11:15AM | 8 | ANYBODY WAS.  MAYBE IT'S JUST A LITTLE OUT OF MY CIRCLES OF |
| 11:15AM | 9 | SOCIAL CIRCLES, YOU KNOW, BECAUSE I DON'T REALLY KNOW MUCH |
| 11:15AM | 10 | ABOUT IT. |
| 11:15AM | 11 | THE COURT:  BASED ON WHAT YOU HAVE SEEN, YOU DID |
| 11:15AM | 12 | SEE, IS THERE ANYTHING ABOUT THAT EXPOSURE THAT YOU THINK WILL |
| 11:15AM | 13 | AFFECT YOUR ABILITY TO BE FAIR TO BOTH SIDES IN THIS CASE? |
| 11:15AM | 14 | PROSPECTIVE JUROR:  NOT THAT I KNOW OF. |
| 11:15AM | 15 | THE COURT:  CAN YOU THINK OF -- AND YOU WILL PARDON |
| 11:15AM | 16 | ME, BUT YOU KNOW YOURSELF BETTER THAN ANYBODY.  CAN YOU THINK |
| 11:15AM | 17 | OF A CIRCUMSTANCE WHERE YOU MIGHT -- WHERE THAT INFORMATION |
| 11:15AM | 18 | THAT YOU'VE BEEN EXPOSED TO MIGHT CREEP INTO YOUR THOUGHT |
| 11:16AM | 19 | PROCESS AS A JUROR IN THIS CASE AS YOU JUDGE THE EVIDENCE IN |
| 11:16AM | 20 | THIS CASE?  ANYTHING? |
| 11:16AM | 21 | PROSPECTIVE JUROR:  NO.  BECAUSE IT WAS LITERALLY AN |
| 11:16AM | 22 | IMAGE MAKING FUN OF HOW SOMEONE WAS TALKING IN VIDEOS.  I DON'T |
| 11:16AM | 23 | REALLY -- I DON'T BELIEVE THAT PERSONALLY BECAUSE PEOPLE SPEAK |
| 11:16AM | 24 | DIFFERENTLY TO DIFFERENT PEOPLE AND I UNDERSTAND THAT.  SO I |
| 11:16AM | 25 | DON'T REALLY FIND THAT AS ANYTHING TO SWAY MY BIAS IN ANY |

11:16AM   1    DIRECTION.

11:16AM   2             THE COURT:  OKAY.  ALL RIGHT.

11:16AM   3       WHAT YOU SAW WAS AN OPINION POSTED BY SOME OTHER

11:16AM   4    INDIVIDUAL, I TAKE IT?  IS THAT A FAIR CHARACTERIZATION OF

11:16AM   5    THAT?

11:16AM   6             PROSPECTIVE JUROR:  YEAH, I THINK SO.

11:16AM   7             THE COURT:  ALL RIGHT.  THANK YOU.

11:16AM   8       YOU HEARD ME TALK EARLIER, AND I THINK -- WELL, MAYBE NOT.

11:16AM   9       I WAS TALKING ABOUT THE JUROR'S OBLIGATION, IF THEY'RE

11:16AM   10   SEATED AS A JUROR, YOU WILL DECIDE THIS CASE ONLY ON THE

11:16AM   11   EVIDENCE THAT YOU HEAR IN THIS COURTROOM, NOT ON ANYTHING

11:16AM   12   OUTSIDE OF THIS COURTROOM, JUST HERE.

11:16AM   13      IS THAT SOMETHING THAT YOU THINK YOU CAN DO?

11:17AM   14            PROSPECTIVE JUROR:  ABSOLUTELY.

11:17AM   15            THE COURT:  OKAY.  YOU ANSWERED THAT RIGHT AWAY AND

11:17AM   16   WITH A VERY FIRM VOICE, AND SO I TAKE IT YOU HAVE NO QUESTION

11:17AM   17   ABOUT THAT.

11:17AM   18            PROSPECTIVE JUROR:  UH-HUH, NO QUESTIONS.

11:17AM   19            THE COURT:  OKAY.  GREAT.  THANK YOU.

11:17AM   20      LET'S SEE.  WAS THERE ANOTHER HAND?  YES?

11:17AM   21      IS THAT MR. MASON-BURCHELL?

11:17AM   22            PROSPECTIVE JUROR:  MS.

11:17AM   23            THE COURT:  MS.  PARDON ME.

11:17AM   24            PROSPECTIVE JUROR:  YES.  GOOD MORNING.

11:17AM   25            THE ONLY THING I HEARD WAS ABOUT A WEEK PRIOR TO GETTING

| | | |
|---|---|---|
| 11:17AM | 1 | THE NOTIFICATION TO SHOW UP FOR JURY DUTY, SOMETHING ON THE |
| 11:17AM | 2 | NEWS BLURB BECAUSE I WAS WALKING BY, BECAUSE I NORMALLY DON'T |
| 11:17AM | 3 | WATCH THE NEWS, THAT IT WAS GOING TO TRIAL.  SO IT WAS JUST A |
| 11:17AM | 4 | REAL QUICK THING.  BUT OTHER THAN THAT, I HAVE NOT HEARD |
| 11:17AM | 5 | ANYTHING. |
| 11:17AM | 6 | THE COURT:  WAS THAT A HEADLINE OR SOMETHING YOU |
| 11:17AM | 7 | SAW? |
| 11:17AM | 8 | PROSPECTIVE JUROR:  YEAH, LIKE RIGHT AT THE |
| 11:17AM | 9 | BEGINNING OF THE NEWS THEY TALK ABOUT WHAT THEY'RE GOING TO GO |
| 11:17AM | 10 | THROUGH, AND IT WAS REAL QUICK AND THAT WAS IT. |
| 11:17AM | 11 | THE COURT:  OKAY.  AND YOU DIDN'T PAY ATTENTION TO |
| 11:17AM | 12 | IT OTHER THAN THAT? |
| 11:17AM | 13 | PROSPECTIVE JUROR:  NO. |
| 11:17AM | 14 | THE COURT:  AND HAVE YOU SEEN ANYTHING ELSE ABOUT |
| 11:17AM | 15 | THIS CASE OR ANYTHING RELATED TO IT PRIOR? |
| 11:18AM | 16 | PROSPECTIVE JUROR:  NO, I HAVE NOT. |
| 11:18AM | 17 | THE COURT:  CAN YOU BE FAIR AND IMPARTIAL TO BOTH |
| 11:18AM | 18 | SIDES HERE BASED ON THAT LIMITED EXPOSURE? |
| 11:18AM | 19 | PROSPECTIVE JUROR:  YES, ABSOLUTELY. |
| 11:18AM | 20 | THE COURT:  DO YOU THINK THAT'S GOING TO AFFECT YOUR |
| 11:18AM | 21 | ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES HERE? |
| 11:18AM | 22 | PROSPECTIVE JUROR:  NO, IT'S NOT. |
| 11:18AM | 23 | THE COURT:  IN ANY WAY? |
| 11:18AM | 24 | PROSPECTIVE JUROR:  NO. |
| 11:18AM | 25 | THE COURT:  OKAY.  THANK YOU. |

| | | |
|---|---|---|
| 11:18AM | 1 | AND WAS THERE ANOTHER HAND?  LET'S JUST GO RIGHT ACROSS |
| 11:18AM | 2 | THERE.  IS THAT MR. CHATHAM? |
| 11:18AM | 3 | PROSPECTIVE JUROR:  CHATHAM, YES. |
| 11:18AM | 4 | THE COURT:  YES. |
| 11:18AM | 5 | PROSPECTIVE JUROR:  GOOD MORNING. |
| 11:18AM | 6 | THE COURT:  WHAT WOULD YOU LIKE ME TO KNOW ABOUT |
| 11:18AM | 7 | YOUR ANSWER TO THAT QUESTION? |
| 11:18AM | 8 | PROSPECTIVE JUROR:  THE STORY OF THERANOS HAS BEEN |
| 11:18AM | 9 | IN THE NEWS, OR IN THE PAST IT WAS IN THE NEWS, AND I WAS AWARE |
| 11:18AM | 10 | OF IT.  I READ A FAIR AMOUNT OF NEWS ONLINE. |
| 11:18AM | 11 | BUT I HAVE NOT REALLY FOLLOWED IT SUPER CLOSELY IN THE |
| 11:18AM | 12 | PAST YEAR.  I WAS AWARE IT WAS GOING TO TRIAL.  I THINK THAT |
| 11:18AM | 13 | WAS ABOUT IT. |
| 11:19AM | 14 | THE COURT:  OKAY.  TELL ME AGAIN ABOUT THE MOST |
| 11:19AM | 15 | RECENT PIECE OF INFORMATION THAT YOU HAVE READ.  THIS IS POST |
| 11:19AM | 16 | THE QUESTIONNAIRE. |
| 11:19AM | 17 | PROSPECTIVE JUROR:  AS THE OTHER PEOPLE HAVE SAID, |
| 11:19AM | 18 | I'VE BEEN DELIBERATE ABOUT ANYTHING ABOUT THERANOS OR |
| 11:19AM | 19 | ELIZABETH HOLMES OR ANY SORT OF THING ON A HEADLINE, I |
| 11:19AM | 20 | IMMEDIATELY DIDN'T READ ANYTHING FURTHER THAN THAT.  SO I'VE |
| 11:19AM | 21 | AVOIDED ANY EXPOSURE SINCE COMING OVER TO THE -- YOU KNOW, LAST |
| 11:19AM | 22 | WEEK. |
| 11:19AM | 23 | THE COURT:  OKAY.  YOU'VE SEEN HEADLINES.  DO YOU |
| 11:19AM | 24 | HAVE A RECOLLECTION OF WHAT HEADLINES YOU'VE OBSERVED? |
| 11:19AM | 25 | PROSPECTIVE JUROR:  WELL, LIKE ELIZABETH HOLMES'S |

| | | |
|---|---|---|
| 11:19AM | 1 | NAME, AND I WOULDN'T READ ANYTHING FURTHER, OR THERANOS I WOULD |
| 11:19AM | 2 | STOP. |
| 11:19AM | 3 | THE COURT:  I SEE.  OKAY. |
| 11:19AM | 4 | WERE THOSE IN ELECTRONIC FORM OR WAS IT HARD COPY |
| 11:19AM | 5 | NEWSPAPER? |
| 11:19AM | 6 | PROSPECTIVE JUROR:  ELECTRONIC FORM.  I DON'T |
| 11:19AM | 7 | TYPICALLY WATCH NEWS, SO, YEAH. |
| 11:19AM | 8 | THE COURT:  OKAY.  DO YOU READ NEWSPAPERS? |
| 11:19AM | 9 | PROSPECTIVE JUROR:  ONLINE, "THE WASHINGTON POST" |
| 11:20AM | 10 | AND "NEW YORK TIMES." |
| 11:20AM | 11 | THE COURT:  OKAY.  I SEE.  DO YOU GET HARD COPY |
| 11:20AM | 12 | NEWSPAPERS? |
| 11:20AM | 13 | PROSPECTIVE JUROR:  NO. |
| 11:20AM | 14 | THE COURT:  WHEN IS THE LAST TIME THAT YOU READ A |
| 11:20AM | 15 | HARD COPY NEWSPAPER? |
| 11:20AM | 16 | PROSPECTIVE JUROR:  WE WERE TAKING "THE SANTA CRUZ |
| 11:20AM | 17 | SENTINEL" UP UNTIL MAYBE FEBRUARY OR SOMETHING LIKE THAT. |
| 11:20AM | 18 | THE COURT:  I SEE.  OKAY. |
| 11:20AM | 19 | I ASK THAT QUESTION BECAUSE I HAVE A PENCHANT FOR HOLDING |
| 11:20AM | 20 | THE NEWSPAPER IN MY HAND AND I HAVE MY TEA IN THE OTHER HAND, |
| 11:20AM | 21 | AND THAT'S A DYING ART, I THINK, OR A DYING PRACTICE. |
| 11:20AM | 22 | PROSPECTIVE JUROR:  YES. |
| 11:20AM | 23 | THE COURT:  SO LET ME GET BACK TO YOUR OBSERVATIONS, |
| 11:20AM | 24 | SIR.  WHAT ABOUT -- YOU FOLLOWED THE CASE, I THINK YOU TOLD US, |
| 11:20AM | 25 | YOU FOLLOWED IT FOR SOME TIME; IS THAT RIGHT? |

11:20AM 1          PROSPECTIVE JUROR:  I WOULDN'T SAY FOLLOW IT.  THERE

11:20AM 2     WAS OCCASIONALLY A NEWS ARTICLE THAT WOULD POP UP AND IT WOULD

11:20AM 3     CATCH MY ATTENTION AND I WOULD PROBABLY READ IT.

11:20AM 4        I THINK THE LAST ONE I KIND OF LOOKED AT WAS JUST

11:20AM 5     SOMETHING ABOUT IT COMING TO TRIAL.  I DON'T KNOW WHEN THAT

11:20AM 6     WAS, IN THE SPRING MAYBE.

11:20AM 7          THE COURT:  OKAY.  IS THERE ANYTHING ABOUT YOUR --

11:20AM 8     AND I'LL CALL IT EXPOSURE -- BUT ANYTHING THAT YOU'VE READ,

11:21AM 9     SEEN, LISTENED TO THAT YOU THINK WILL AFFECT YOUR ABILITY TO BE

11:21AM 10    FAIR AND IMPARTIAL TO BOTH SIDES HERE?

11:21AM 11         PROSPECTIVE JUROR:  I DON'T THINK SO.  I'LL WEIGH

11:21AM 12    THE EVIDENCE BASED ON WHAT IS PRESENTED IN TRIAL.

11:21AM 13         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.  THANK

11:21AM 14    YOU.

11:21AM 15       LET'S JUST GO DOWN IN THE FRONT ROW.  IS THIS

11:21AM 16    MS. GONZALEZ?

11:21AM 17         PROSPECTIVE JUROR:  YES.

11:21AM 18         THE COURT:  JUROR NUMBER 108.

11:21AM 19         PROSPECTIVE JUROR:  SO I JUST HEARD A NEWS STORY ON

11:21AM 20    IT ON NPR WHEN IT FIRST HAPPENED, AND SO I DON'T KNOW, WAS THAT

11:21AM 21    A COUPLE OF YEARS AGO MAYBE?  AND SINCE THEN NOTHING, EXCEPT

11:21AM 22    THAT I HEARD THAT SHE HAD A BABY MAYBE.

11:21AM 23         THE COURT:  AND THE STORY ON NPR, THAT WAS A COUPLE

11:21AM 24    YEARS AGO.

11:21AM 25       AND WAS IT -- CAN YOU TELL US, WAS IT A NEWS STORY OR WAS

| 11:22AM | 1 | IT A DOCUMENTARY OR A LENGTHY STORY? |
|---|---|---|

11:22AM  1    IT A DOCUMENTARY OR A LENGTHY STORY?

11:22AM  2              PROSPECTIVE JUROR:  IT WASN'T LENGTHY.  IT WAS JUST

11:22AM  3    KIND OF, HERE'S WHAT IS HAPPENING, MAYBE A COUPLE MINUTES, AND

11:22AM  4    I DON'T REALLY REMEMBER ANYTHING EXCEPT FOR THE NAME OF THE

11:22AM  5    COMPANY AND THE NAMES OF THE PEOPLE INVOLVED.

11:22AM  6              THE COURT:  I SEE.  OKAY.

11:22AM  7         AND SINCE FILLING OUT YOUR QUESTIONNAIRE, YOU'VE HAD NO

11:22AM  8    EXPOSURE?

11:22AM  9              PROSPECTIVE JUROR:  NO, NONE.

11:22AM  10             THE COURT:  HAVE YOU TALKED TO FRIENDS OR HAVE ANY

11:22AM  11   FRIENDS TALKED TO YOU ABOUT THIS CASE TO YOUR KNOWLEDGE, TO

11:22AM  12   YOUR RECOLLECTION?

11:22AM  13             PROSPECTIVE JUROR:  A COWORKER MENTIONED IT.  MY

11:22AM  14   BOSS, BECAUSE I HAD TO SAY THAT I WAS COMING TO JURY DUTY, AND

11:22AM  15   SHE SAID, OH, IS IT THIS?

11:22AM  16        AND I SAID HMM -- NO.

11:22AM  17             THE COURT:  YOU DIDN'T TELL HER WHAT THE CASE WAS?

11:22AM  18             PROSPECTIVE JUROR:  I DIDN'T.  SHE SAID SHE HAD

11:22AM  19   HEARD ABOUT A CASE, SO --

11:22AM  20             THE COURT:  AND YOU'RE SOMEBODY WHO KEEPS

11:22AM  21   CONFIDENCE.  OKAY.

11:22AM  22             PROSPECTIVE JUROR:  ESPECIALLY AT WORK.

11:22AM  23             THE COURT:  OKAY.  WE PROBABLY SHOULD LEAVE THAT

11:23AM  24   THERE.

11:23AM  25        BUT LET ME ASK YOU, SO THERE WAS INQUIRY FROM YOUR BOSS

| | | |
|---|---|---|
| 11:23AM | 1 | AND OTHERS AT WORK ABOUT WHAT CASE ARE YOU GOING ON, AND YOU |
| 11:23AM | 2 | DIDN'T REVEAL TO THEM THE CASE. |
| 11:23AM | 3 | PROSPECTIVE JUROR:  RIGHT. |
| 11:23AM | 4 | THE COURT:  YOU KNEW WHAT IT WAS, OF COURSE, HAVING |
| 11:23AM | 5 | BEEN SUMMONED AND FILLED OUT THE QUESTIONNAIRE. |
| 11:23AM | 6 | PROSPECTIVE JUROR:  YES. |
| 11:23AM | 7 | THE COURT:  OKAY.  WELL, THANK YOU FOR DOING THAT. |
| 11:23AM | 8 | I THINK THE QUESTIONNAIRE INSTRUCTED THAT. |
| 11:23AM | 9 | PROSPECTIVE JUROR:  RIGHT. |
| 11:23AM | 10 | THE COURT:  SO LET ME THANK YOU FOR FOLLOWING THOSE |
| 11:23AM | 11 | INSTRUCTIONS. |
| 11:23AM | 12 | PROSPECTIVE JUROR:  YOU'RE WELCOME. |
| 11:23AM | 13 | THE COURT:  AND HAVE YOU HAD ANY CONVERSATION SINCE |
| 11:23AM | 14 | WITH ANYBODY ABOUT ANYTHING TO DO WITH THIS CASE? |
| 11:23AM | 15 | PROSPECTIVE JUROR:  NO. |
| 11:23AM | 16 | THE COURT:  OKAY.  IS THERE ANYTHING ABOUT THE |
| 11:23AM | 17 | EXPOSURE THAT YOU'VE TOLD US ABOUT -- I USE THAT WORD AND I |
| 11:23AM | 18 | DON'T MEAN IT PEJORATIVELY, BUT IT'S WHAT I'M CALLING IT -- BUT |
| 11:23AM | 19 | IS THERE ANYTHING ABOUT THAT THAT YOU THINK, AGAIN, WILL IMPAIR |
| 11:23AM | 20 | YOUR ABILITY TO BE FAIR TO THE GOVERNMENT, TO BE FAIR TO |
| 11:23AM | 21 | MS. HOLMES? |
| 11:23AM | 22 | PROSPECTIVE JUROR:  NO. |
| 11:23AM | 23 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU. |
| 11:23AM | 24 | PROSPECTIVE JUROR:  THANKS. |
| 11:24AM | 25 | THE COURT:  IS THAT MS. DENT? |

| | | |
|---|---|---|
| 11:24AM | 1 | PROSPECTIVE JUROR:  YES. |
| 11:24AM | 2 | THE COURT:  JUROR NUMBER 112. |
| 11:24AM | 3 | PROSPECTIVE JUROR:  IN FULL DISCLOSURE AND HONESTY, |
| 11:24AM | 4 | I READ THE NEWSPAPER ALSO AND I THOUGHT IT WAS MORE THAN A |
| 11:24AM | 5 | COUPLE YEARS AGO I HAD WATCHED AND BEEN VERY INVOLVED WITH THIS |
| 11:24AM | 6 | WHOLE THING AS FAR AS WATCHING WHAT WAS GOING ON. |
| 11:24AM | 7 | I'M A RETIRED REGISTERED NURSE.  MY HUSBAND IS A RETIRED |
| 11:24AM | 8 | LAB TECHNICIAN.  SO WE ACTUALLY HAD QUITE A BIT OF INFORMATION. |
| 11:24AM | 9 | WE WATCHED THE DOCUMENTARIES. |
| 11:24AM | 10 | WE ALSO WATCHED I THINK IT WAS LIKE A MOVIE KIND OF THING |
| 11:24AM | 11 | THAT CAME OUT ABOUT IT. |
| 11:24AM | 12 | SO WE HAD A LOT OF EXPOSURE I GUESS YOU WOULD SAY. |
| 11:24AM | 13 | AND THEN WHEN I CAME DOWN FOR JURY DUTY, I WAS VERY |
| 11:24AM | 14 | SURPRISED.  I DID WRITE DOWN ON MY QUESTIONNAIRE THE FACT THAT |
| 11:25AM | 15 | I HAD BEEN VERY AWARE OF IT. |
| 11:25AM | 16 | I DID NOT KNOW THAT IT WAS COMING TO TRIAL.  I WASN'T |
| 11:25AM | 17 | AWARE OF THAT UNTIL I ACTUALLY CAME TO JURY DUTY. |
| 11:25AM | 18 | AS FAR AS -- I REALLY WANT TO SAY THAT I'M COMPLETELY |
| 11:25AM | 19 | UNBIASSED AND IT'S NOT GOING TO AFFECT ME.  I DON'T KNOW THAT I |
| 11:25AM | 20 | CAN HONESTLY 100 PERCENT SAY THAT.  I'VE NEVER BEEN ON A JURY. |
| 11:25AM | 21 | I'VE NEVER BEEN INVOLVED IN SOMETHING LIKE THIS. |
| 11:25AM | 22 | SO TO BE VERY HONEST WITH YOU, I DON'T KNOW. |
| 11:25AM | 23 | I'M MORE THAN WILLING TO TRY AND TO, YOU KNOW, SAY AND TO |
| 11:25AM | 24 | LISTEN AND ALL OF THAT KIND OF THING.  BUT I DON'T KNOW IF |
| 11:25AM | 25 | YOU'VE -- I DON'T KNOW HOW YOU, YOU KNOW, PREVIOUS KNOWLEDGE I |

11:25AM 1      DON'T KNOW.  SO --

11:25AM 2                  THE COURT:  HOW TO PUT THAT ASIDE?

11:25AM 3                  PROSPECTIVE JUROR:  YES.

11:25AM 4                  THE COURT:  YES.  THANK YOU.

11:25AM 5                  PROSPECTIVE JUROR:  I'M TRYING TO BE REAL HONEST.  I

11:25AM 6      MEAN, I WANT TO SAY THAT I CAN DO THAT, BUT I DON'T KNOW

11:26AM 7      BECAUSE I'VE NEVER BEEN IN THAT SITUATION.  SO I DON'T KNOW.

11:26AM 8                  THE COURT:  SURE.  RIGHT.  THANK YOU.

11:26AM 9          WE HAD BENEFIT OF YOUR QUESTIONNAIRE AND I THINK IN YOUR

11:26AM 10     QUESTIONNAIRE YOU TOLD US, YOU SAID, I'M NOT SURE I CAN BE

11:26AM 11     FAIR.  I THINK THAT'S WHAT YOU SAID.

11:26AM 12                 PROSPECTIVE JUROR:  UH-HUH.

11:26AM 13                 THE COURT:  RIGHT.  AND I APPRECIATE YOUR CANDOR.

11:26AM 14         LET ME AGAIN SAY, MS. DENT, THERE'S NO RIGHT OR WRONG

11:26AM 15     ANSWER HERE.  THERE ISN'T.  YOU KNOW, THERE'S NO PENALTY FOR

11:26AM 16     BEING HONEST.  QUITE THE CONTRARY.  WE WANT YOU TO BE HONEST

11:26AM 17     AND CANDID.

11:26AM 18         THIS IS SOMETHING THAT WE'RE GOING TO TALK ABOUT THE REST

11:26AM 19     OF THE MORNING, I EXPECT, AND PERHAPS THIS AFTERNOON.

11:26AM 20         EVERYBODY IS DIFFERENT.  YOU AND I READ HARD COPY

11:26AM 21     NEWSPAPERS.  A LOT OF OTHER PEOPLE DON'T.  THERE'S NOTHING

11:26AM 22     WRONG WITH THAT.

11:26AM 23         BUT WE PROCESS THINGS DIFFERENTLY.

11:26AM 24         AS YOU SAID, YOU'VE HEARD A COUPLE OF OTHER PEOPLE SAY, I

11:26AM 25     THINK I SAW SOMETHING.  MS. GONZALEZ SAID, I THINK I HEARD

11:27AM 1    THIS.  MS. LOCKWOOD TALKED ABOUT SEEING THIS MEME, OR WHATEVER

11:27AM 2    IT WAS.  AND EACH OF THEM HAVE TOLD US IT'S NOT GOING TO HAVE

11:27AM 3    AN EFFECT BECAUSE OF THIS REASON, I THINK I CAN PROCESS THAT

11:27AM 4    AWAY.

11:27AM 5        YOU'RE A LITTLE DIFFERENT.  YOU FOLLOWED THIS STORY.

11:27AM 6    YOU'RE IN THE INDUSTRY, SHALL WE SAY, AND YOUR HUSBAND WAS, AND

11:27AM 7    THAT PUTS YOU IN A DIFFERENT POSITION, I SUPPOSE, JUST INSIDE

11:27AM 8    INFORMATION, I'LL CALL IT THAT.

11:27AM 9        THAT'S WHAT I'M TRYING TO PROBE HERE.  THESE LAWYERS WANT

11:27AM 10   TO KNOW THAT, TOO, WHETHER OR NOT -- CANDIDLY, THE QUESTION

11:27AM 11   REALLY IS, IS THIS THE RIGHT CASE FOR A JUROR?  THAT'S REALLY

11:27AM 12   WHAT THE QUESTION IS.  IS THIS A CASE WHERE A JUROR CAN SIT AND

11:27AM 13   BE FAIR TO BOTH SIDES?  THAT'S THE JOB DESCRIPTION FOR A JUROR.

11:27AM 14   YOU HAVE TO BE FAIR TO BOTH SIDES IN THIS CASE.

11:27AM 15       IF THERE'S SOMETHING THAT YOU THINK WILL IMPAIR, AFFECT

11:27AM 16   THAT ABILITY TO BE FAIR TO BOTH SIDES, WE NEED TO KNOW ABOUT

11:27AM 17   THAT.  THESE LAWYERS NEED TO KNOW ABOUT THAT.  I NEED TO KNOW

11:28AM 18   ABOUT THAT.

11:28AM 19       SO I APPRECIATE THIS CONVERSATION.

11:28AM 20       I'M GOING TO ASK THE LAWYERS IF THEY HAVE SOME QUESTIONS

11:28AM 21   OF YOU ABOUT THIS RIGHT NOW AS WELL.

11:28AM 22       MR. SCHENK, DO YOU HAVE ANY QUESTIONS?

11:28AM 23           MR. SCHENK:  NO FURTHER QUESTIONS.

11:28AM 24           MR. DOWNEY:  NO QUESTIONS, YOUR HONOR.

11:28AM 25           THE COURT:  ALL RIGHT.  THANK YOU.

11:28AM 1      THANK YOU VERY MUCH, MS. DENT.  I APPRECIATE YOUR CANDOR

11:28AM 2  HERE, AND I APPRECIATE THE FACT THAT YOU READ A HARD COPY

11:28AM 3  NEWSPAPER.

11:28AM 4      (LAUGHTER.)

11:28AM 5          THE COURT:  IS THERE ANYONE ELSE IN THE BOX HERE?

11:28AM 6      YES, LET'S GO DOWN TO MS. NELSON, 116.

11:28AM 7          PROSPECTIVE JUROR:  YES, YOUR HONOR.

11:28AM 8      SO I FOLLOWED THE NEWS COVERAGE PRETTY EXTENSIVELY WHEN

11:28AM 9  THE STORY BROKE OUT.  I DISCLOSED IN MY QUESTIONNAIRE THAT I

11:28AM 10  LISTENED TO A PODCAST ON A ROAD TRIP WITH MY HUSBAND.  MY

11:28AM 11  HUSBAND IS A SCIENTIST FOR A BIOTECH COMPANY.  AS A GRADUATE

11:28AM 12  STUDENT, HE DID MALARIA RESEARCH AND DID BLOOD TESTS AND IS

11:29AM 13  REALLY FAMILIAR WITH THAT FIELD, AND SO WE HAD A LOT OF

11:29AM 14  DISCUSSIONS ABOUT THAT WHEN THE STORY BROKE OUT.

11:29AM 15      SINCE COMPLETING THE QUESTIONNAIRE, I TRIED NOT TO, YOU

11:29AM 16  KNOW, SEEK OUT MEDIA ON THE STORY.  I WAS EXPOSED A COUPLE DAYS

11:29AM 17  AGO TO A HEADLINE ON TWITTER, AND I THINK THAT I SHOULD

11:29AM 18  DISCLOSE THAT JUST BECAUSE OF MY -- THE PRACTICE AREA THAT I

11:29AM 19  PRACTICE IN.

11:29AM 20      I THINK IT MIGHT AFFECT MY GOING INTO THE CASE.  IT HAS TO

11:29AM 21  DO WITH THE DEFENSE STRATEGY, SO I DON'T KNOW IF WE WANT TO

11:29AM 22  TALK ABOUT THAT PRIVATELY.

11:29AM 23          THE COURT:  WELL, YES.  THANK YOU.  THANK YOU.

11:29AM 24      BUT JUST A -- AND THAT'S FINE, THAT TOPIC, THE TITLE

11:29AM 25  RATHER, PARDON ME.

| | | |
|---|---|---|
| 11:29AM | 1 | BUT WHAT YOU READ ON THAT TWITTER, DO YOU THINK THAT WILL |
| 11:29AM | 2 | AFFECT YOU AS A JUROR IF YOU'RE SEATED AS A JUROR IN THIS CASE? |
| 11:29AM | 3 | OR DO YOU THINK IT WILL HAVE SOME IMPACT? |
| 11:30AM | 4 | PROSPECTIVE JUROR:  I THINK THAT I CAN BE OBJECTIVE |
| 11:30AM | 5 | AND FAIR, BUT I THINK, IN FULL DISCLOSURE, THAT COUNSEL SHOULD |
| 11:30AM | 6 | KNOW WHAT I HEARD AND MAYBE LET THEM DECIDE WHETHER THEY THINK |
| 11:30AM | 7 | THAT THIS WOULD BE A GOOD CASE FOR ME GIVEN MY BACKGROUND. |
| 11:30AM | 8 | THE COURT:  OKAY.  WELL, TELL US A LITTLE BIT ABOUT |
| 11:30AM | 9 | YOUR BACKGROUND. |
| 11:30AM | 10 | PROSPECTIVE JUROR:  SO I'M AN ATTORNEY FOR LEGAL |
| 11:30AM | 11 | AID.  I REPRESENT DOMESTIC VIOLENCE SURVIVORS AND SURVIVORS OF |
| 11:30AM | 12 | SEXUAL ASSAULT AND HUMAN TRAFFICKING IN FAMILY COURT, AND SO, |
| 11:30AM | 13 | YEAH. |
| 11:30AM | 14 | THE COURT:  I SAW THAT IN YOUR QUESTIONNAIRE. |
| 11:30AM | 15 | AND HOW LONG HAVE YOU BEEN DOING THAT? |
| 11:30AM | 16 | PROSPECTIVE JUROR:  ELEVEN YEARS. |
| 11:30AM | 17 | THE COURT:  AND DO YOU ASSIST IN -- DO YOU SOMETIMES |
| 11:30AM | 18 | ASSIST THE DISTRICT ATTORNEY'S OFFICE IN THE PROSECUTION OF |
| 11:30AM | 19 | CASES BY PROVIDING INFORMATION TO THEM? |
| 11:30AM | 20 | PROSPECTIVE JUROR:  SO I WILL SAY THAT WE HAVE -- I |
| 11:30AM | 21 | HAVE A GOOD RELATIONSHIP WITH A LOT OF THE D.A.'S.  A LOT OF MY |
| 11:31AM | 22 | CLIENTS ALSO HAVE CASES WHERE THEIR ABUSER IS BEING PROSECUTED, |
| 11:31AM | 23 | AND SOMETIMES OUR CLIENT WHO WE IDENTIFY AS D.V. SURVIVORS ARE |
| 11:31AM | 24 | PROSECUTED THEMSELVES.  ACTUALLY, THAT HAPPENS QUITE OFTEN, AND |
| 11:31AM | 25 | SO I'M PROVIDING INFORMATION TO THE D.A. TO GET THOSE CHARGES |

11:31AM 1    DROPPED.

11:31AM 2         AND THEN I ALSO DO A LITTLE BIT OF IMMIGRATION.  SO WE

11:31AM 3    COOPERATE WITH THE D.A. TO GET CERTIFICATION FOR U-VISA

11:31AM 4    APPLICATIONS.

11:31AM 5         THE COURT:  AND DO YOU PROSECUTE -- I CAN'T REMEMBER

11:31AM 6    IF BAY AREA LEGAL AID ACTUALLY ASSISTS IN THE APPLICATION

11:31AM 7    PROCESS FOR THOSE TYPES OF VISAS.

11:31AM 8         PROSPECTIVE JUROR:  WE DO.

11:31AM 9         THE COURT:  YOU DO.

11:31AM 10        PROSPECTIVE JUROR:  AND I'VE DONE THEM PERSONALLY

11:31AM 11   MYSELF.

11:31AM 12        THE COURT:  AND THOSE ARE VISAS THAT ARE UNIQUE AND

11:31AM 13   SPECIAL TO INDIVIDUALS WHO HAVE PRESENTED EVIDENCE OF BEING --

11:31AM 14        PROSPECTIVE JUROR:  VICTIM OF A QUALIFYING CRIME.

11:31AM 15        THE COURT:  YES, EXACTLY.  THANK YOU.

11:31AM 16   IS THERE ANYTHING ABOUT THAT WORK, BASED ON WHAT YOU'VE

11:31AM 17   READ, THAT YOU THINK -- YOU READ ABOUT THIS CASE, THAT YOU

11:31AM 18   THINK WOULD IMPAIR OR AFFECT YOUR ABILITY TO BE FAIR AND

11:31AM 19   IMPARTIAL AS A JUROR IN THIS CASE?

11:32AM 20        PROSPECTIVE JUROR:  I DO NOT THINK SO.

11:32AM 21        THE COURT:  OKAY.  ALL RIGHT.

11:32AM 22   TELL ME ABOUT THE OTHER CONVERSATIONS WITH YOUR HUSBAND

11:32AM 23   ABOUT THIS CASE.

11:32AM 24   IT SOUNDS LIKE YOU'VE SEEN SOME -- I THINK YOU TOLD US YOU

11:32AM 25   SAW AN ABC AND HBO, YOU SAW PODCASTS AND THINGS.

| | | |
|---|---|---|
| 11:32AM | 1 | PROSPECTIVE JUROR:  SO I'VE READ ARTICLES, AND THEN |
| 11:32AM | 2 | WE LISTENED TO A PODCAST. |
| 11:32AM | 3 | THE COURT:  I SEE.  AND HOW LONG AGO WAS THAT?  I'M |
| 11:32AM | 4 | SORRY. |
| 11:32AM | 5 | PROSPECTIVE JUROR:  PROBABLY TWO YEARS AGO WAS THE |
| 11:32AM | 6 | PODCAST I WANT TO SAY, YEAH. |
| 11:32AM | 7 | THE COURT:  OKAY.  AND YOU'VE DISCUSSED THIS WITH |
| 11:32AM | 8 | YOUR HUSBAND? |
| 11:32AM | 9 | PROSPECTIVE JUROR:  YES.  PRIOR TO BEING SUMMONED, |
| 11:32AM | 10 | YES. |
| 11:32AM | 11 | THE COURT:  AND IS THERE ANYTHING ABOUT THOSE |
| 11:32AM | 12 | DISCUSSIONS, I'M SURE -- WELL, I'M NOT SURE.  IT MAY BE THAT |
| 11:32AM | 13 | YOU'VE TALKED ABOUT THE SCIENCE OR SOMETHING LIKE THAT, AND HE |
| 11:32AM | 14 | SHARED WITH YOU HIS OPINION.  I'M NOT GOING TO ASK YOU WHAT HIS |
| 11:32AM | 15 | OPINION IS OR WAS. |
| 11:32AM | 16 | PROSPECTIVE JUROR:  RIGHT. |
| 11:32AM | 17 | THE COURT:  BUT IS THERE ANYTHING ABOUT THOSE |
| 11:32AM | 18 | CONVERSATIONS THAT YOU THINK WILL CARRY FORWARD WITH YOU AS YOU |
| 11:32AM | 19 | SIT AS A DELIBERATING JUROR IN THIS CASE? |
| 11:32AM | 20 | PROSPECTIVE JUROR:  I THINK THAT MY HUSBAND'S |
| 11:33AM | 21 | OPINION -- YOU KNOW, I TRUST HIM ON THE SCIENCE AND I THINK |
| 11:33AM | 22 | THAT WOULD CARRY OVER AS I'M WEIGHING THE TESTIMONY THAT I HEAR |
| 11:33AM | 23 | IN THIS CASE. |
| 11:33AM | 24 | THE COURT:  SURE.  OKAY.  ALL RIGHT.  THANK YOU. |
| 11:33AM | 25 | MR. SCHENK, ANY QUESTIONS ON THIS? |

11:33AM  1                    MR. SCHENK:  NO.  THANK YOU.

11:33AM  2                    MR. DOWNEY:  NOT FROM THE DEFENSE, YOUR HONOR.

11:33AM  3    THANK YOU.

11:33AM  4                    THE COURT:  THANK YOU.  THANK YOU, MS. NELSON.

11:33AM  5    THANK YOU FOR WORKING FOR BAY AREA LEGAL AID.  THAT'S A

11:33AM  6    WONDERFUL ORGANIZATION.

11:33AM  7         I KNOW THAT THEY HAVE EVENTS ANNUALLY TO RECOGNIZE THE

11:33AM  8    LAWYERS IN THAT GROUP, BUT YOU HAVEN'T HAD ONE BECAUSE OF THE

11:33AM  9    PANDEMIC.

11:33AM 10                    PROSPECTIVE JUROR:  THAT'S RIGHT, YES.

11:33AM 11                    THE COURT:  I KNOW.  AND I SAY THIS, AND THIS IS

11:33AM 12    JUST RECOGNITION, MANY OF MY COLLEAGUES AND OUR COLLEAGUES IN

11:33AM 13    SISTER STATE COURTS ATTEND THOSE EVENTS TO SUPPORT THE GOOD

11:33AM 14    WORK OF YOUR ORGANIZATION.

11:33AM 15                    PROSPECTIVE JUROR:  I APPRECIATE THAT, YOUR HONOR.

11:33AM 16    THANK YOU.

11:33AM 17                    THE COURT:  YOU'RE WELCOME.

11:33AM 18         ANYONE ELSE?

11:34AM 19         OH, LET'S GO TO MR., IS IT PARODI, 123?  MS. PARODI.

11:34AM 20         I THINK I HAVE THAT RIGHT.

11:34AM 21         122, I BEG YOUR PARDON.  THANK YOU, MS. PARODI.

11:34AM 22                    PROSPECTIVE JUROR:  I ALSO GET THE HARD COPY OF THE

11:34AM 23    NEWSPAPER, "SAN JOSE MERCURY NEWS."

11:34AM 24                    THE COURT:  WE'RE ON A ROLL HERE.

11:34AM 25                    PROSPECTIVE JUROR:  SO WE'RE OUT HERE.

11:34AM  1      AND I HAVE SEEN GENERAL NEWS ARTICLES IN THE PAST.  SINCE

11:34AM  2  WE'VE BEEN CALLED IN, I HAVE SEEN JUST KIND OF HEADLINES ON THE

11:34AM  3  TOP OF THE FRONT PAGE, BUT I JUST PUSH IT AWAY.  AS SOON AS I

11:34AM  4  RECOGNIZE IT'S RELATED, I DON'T READ IT.

11:34AM  5      I'VE ALSO SEEN JUST ON MY FACEBOOK FEED NATIONAL NEWS

11:34AM  6  STORIES, LIKE "U.S.A. TODAY," "NEW YORK TIMES," AND AGAIN, I

11:34AM  7  JUST SCROLL PAST AND DON'T READ THOSE.

11:34AM  8      THE MOST RECENT THING I'VE SEEN WAS ACTUALLY LAST NIGHT MY

11:35AM  9  SON TURNED ON THE LOCAL NEWS AND THEY TALKED ABOUT JURY

11:35AM 10  SELECTION HERE TODAY.

11:35AM 11          THE COURT:  YOUR 5-YEAR OLD SON?

11:35AM 12          PROSPECTIVE JUROR:  NO, THAT'S MY 16-YEAR OLD.

11:35AM 13          THE COURT:  OH, OKAY.  THANK YOU.

11:35AM 14          PROSPECTIVE JUROR:  HE'S A BIG NEWS JUNKIE, SO HE'S

11:35AM 15  ALWAYS ON CNN.  JUST, THE NEWS IS ON A LOT IN OUR HOUSE.

11:35AM 16          THE COURT:  OKAY.

11:35AM 17          PROSPECTIVE JUROR:  BUT SINCE THEN I'VE TRIED TO

11:35AM 18  AVOID EVERYTHING.

11:35AM 19          THE COURT:  WELL, WHAT ABOUT -- HOW MUCH DID YOU SEE

11:35AM 20  LAST NIGHT?

11:35AM 21          PROSPECTIVE JUROR:  JUST -- I JUST SAW, LIKE, A

11:35AM 22  PHOTO OF THE COURTROOM COME ON AND THEN I -- I WAS IN THE

11:35AM 23  KITCHEN AND I WASN'T REALLY WATCHING IT WITH HIM, BUT I HEARD

11:35AM 24  IT AND I ASKED HIM TO CHANGE THE CHANNEL AND HE DID.

11:35AM 25          THE COURT:  I SEE.  OKAY.

11:35AM   1          PROSPECTIVE JUROR:  SO JUST A SNIPPET.

11:35AM   2          THE COURT:  OKAY.  THE QUESTION THAT I'VE ASKED YOUR

11:35AM   3  COLLEAGUE AND JURORS, WHAT ABOUT WHAT YOU'VE SEEN, WHAT YOU'VE

11:35AM   4  READ, WHAT YOU'VE HEARD, AND HOW DO YOU THINK THAT WILL AFFECT

11:35AM   5  YOUR ABILITY TO BE FAIR AND IMPARTIAL TO BOTH SIDES IN THIS

11:35AM   6  CASE?

11:35AM   7          PROSPECTIVE JUROR:  I DON'T THINK IT WOULD.

11:35AM   8          THE COURT:  OKAY.  DO YOU HAVE ANY DOUBT IN YOUR

11:35AM   9  MIND ABOUT THAT?

11:35AM   10         PROSPECTIVE JUROR:  NO.

11:36AM   11         THE COURT:  YOUR 16-YEAR OLD, HE SOUNDS LIKE HE'S

11:36AM   12  VERY BRIGHT AND PRECOCIOUS, AND HE MIGHT SAY, IF YOU'RE SEATED

11:36AM   13  AS A JUROR, MOM, TELL ME WHAT HAPPENED?  WHAT IS GOING ON?

11:36AM   14         PROSPECTIVE JUROR:  YEAH, 100 PERCENT.  BUT I WON'T.

11:36AM   15         THE COURT:  HE'S GOING TO PUSH AND HE'S GOING TO

11:36AM   16  PROD, MOM.

11:36AM   17         PROSPECTIVE JUROR:  YEAH, I KNOW, I KNOW.

11:36AM   18      (LAUGHTER.)

11:36AM   19         THE COURT:  AND YOU'VE GOT CONTROL OF THAT?

11:36AM   20         PROSPECTIVE JUROR:  YEAH, I CAN DEFEND.

11:36AM   21         THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE US

11:36AM   22  TO KNOW ABOUT THIS?

11:36AM   23      LET ME ASK ONE THING.  I THINK YOU HAVE A VACATION PLANNED

11:36AM   24  FOR THE FIRST WEEK IN OCTOBER.

11:36AM   25         PROSPECTIVE JUROR:  WELL, THAT'S KIND OF UP IN THE

11:36AM  1    AIR BECAUSE THAT WAS TO HAWAII, AND WE'VE RECONSIDERED THAT,

11:36AM  2    BUT MY CHILDREN WILL BE OUT THAT ENTIRE WEEK FROM SCHOOL

11:36AM  3    BECAUSE IT'S A PLANNED NORMAL SCHOOL BREAK, SO I DO HAVE A LOT

11:36AM  4    OF CHILDCARE ISSUES WITH SHOWING UP BECAUSE I'M THE PRIMARY

11:36AM  5    CARE GIVER FOR MY THREE KIDS AND THERE'S NO ONE ELSE WHO CAN

11:36AM  6    PICK THEM UP FROM SCHOOL AND TAKE THEM TO ORTHODONTIST

11:36AM  7    APPOINTMENTS AND BE THERE WHEN THEY'RE ON THEIR BREAK.

11:37AM  8        AND ALSO, MY YOUNGEST IS UNVACCINATED, AND THEY'RE ASKING,

11:37AM  9    IF HE SHOWS ANY SYMPTOMS WHATSOEVER OF COVID, WE'RE SUPPOSED TO

11:37AM 10    KEEP HIM HOME.  IF THEY'RE EXPOSED IN SCHOOL AND CONSIDERED A

11:37AM 11    CLOSE CONTACT, WE'RE SUPPOSED TO KEEP THEM HOME AND GET TESTED.

11:37AM 12        SO THAT'S KIND OF ALWAYS UP IN THE AIR OF WHAT I WOULD BE

11:37AM 13    NEEDED FOR AT HOME, SO --

11:37AM 14            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

11:37AM 15        ANY QUESTIONS, MR. SCHENK?

11:37AM 16            MR. SCHENK:  NO, YOUR HONOR.

11:37AM 17            MR. DOWNEY:  NO, YOUR HONOR.

11:37AM 18            THE COURT:  ALL RIGHT.  THANK YOU.

11:37AM 19        THANK YOU, MS. PARODI.  I APPRECIATE IT.

11:37AM 20        I THINK THAT EXHAUSTS EVERYONE IN THE BOX.  LET'S GO BACK

11:37AM 21    TO OUR AUDIENCE HERE AND WE'LL PASS THE MICROPHONE DOWN.

11:37AM 22            PROSPECTIVE JUROR:  YOUR HONOR, I'M 130, MR. MURPHY.

11:37AM 23            THE COURT:  MR. MURPHY.

11:37AM 24            PROSPECTIVE JUROR:  SO I'VE ACTIVELY AVOIDED ANY

11:37AM 25    EXPOSURE SINCE THE QUESTIONNAIRE AND THAT'S MOVING KIND OF PAST

11:38AM  1    ONLINE.  I DON'T READ A HARD COPY NEWSPAPER THOUGH, MY FATHER

11:38AM  2    DID.

11:38AM  3              THE COURT:  THANK YOU.  THANK YOU FOR DATING ME.  I

11:38AM  4    APPRECIATE THE RECOGNITION.

11:38AM  5         (LAUGHTER.)

11:38AM  6              PROSPECTIVE JUROR:  I DO FOLLOW THE LOCAL NEWS, BUT

11:38AM  7    I DO THAT RECORDED AND I'LL AVOID ANYTHING RELATED TO THIS

11:38AM  8    CASE.

11:38AM  9              THE COURT:  OKAY.

11:38AM 10              PROSPECTIVE JUROR:  THE TESTIMONY SO FAR REMINDED

11:38AM 11    ME, I THINK I DID LISTEN TO A PODCAST A COUPLE YEARS AGO.

11:38AM 12         AND I'M ABSOLUTELY CONFIDENT THAT I COULD FOLLOW THE

11:38AM 13    INSTRUCTIONS AND BE A JUROR OBJECTIVELY BASED ON MY EXPOSURE.

11:38AM 14              THE COURT:  THANK YOU.

11:38AM 15         DO YOU RECALL THE NAME OF THE PODCAST?

11:38AM 16              PROSPECTIVE JUROR:  I DON'T.  I'M SORRY.  AND

11:38AM 17    PROBABLY RADIO STORIES ALONG THE WAY, BUT IT WAS QUITE SOME

11:38AM 18    TIME AGO.

11:38AM 19              THE COURT:  SO IS IT FAIR TO SAY THAT WHAT YOU'VE

11:38AM 20    LISTENED TO AND ALL OF THOSE THINGS THAT YOU'VE LISTENED TO,

11:38AM 21    I'LL JUST PUT IT IN THE VERNACULAR, NOTHING STUCK?

11:38AM 22              PROSPECTIVE JUROR:  NO.  I'M GOOD.

11:38AM 23              THE COURT:  AND NOTHING STICKS WITH YOU THAT YOU

11:38AM 24    WOULD CALL UPON IF YOU'RE SEATED AS A JUROR IN THE CASE?

11:38AM 25              PROSPECTIVE JUROR:  MAYBE JUST THE BASIC, VERY BASIC

| | | |
|---|---|---|
| 11:39AM | 1 | SKELETAL SERIES OF EVENTS, OR STORY. |
| 11:39AM | 2 | BUT AS I SAID, I'M CONFIDENT THAT I COULD LOOK AT WHAT IS |
| 11:39AM | 3 | PRESENTED. |
| 11:39AM | 4 | THE COURT:  OF COURSE.  AND NOW I HAVE TO PROBE A |
| 11:39AM | 5 | LITTLE BIT ABOUT, WHAT DO YOU MEAN BY "THE SKELETAL?"  ARE YOU |
| 11:39AM | 6 | SAYING THAT, WELL, I KNOW IT'S THERANOS AND THAT WAS A COMPANY, |
| 11:39AM | 7 | AND I KNOW THAT IT IS MS. HOLMES AND THAT'S IT? |
| 11:39AM | 8 | PROSPECTIVE JUROR:  YEAH.  YEAH, PRETTY MUCH. |
| 11:39AM | 9 | THE COURT:  AND ANYTHING DEEPER THAN THAT? |
| 11:39AM | 10 | PROSPECTIVE JUROR:  JUST THAT IT WAS ABOUT TESTING. |
| 11:39AM | 11 | THE COURT:  OKAY. |
| 11:39AM | 12 | PROSPECTIVE JUROR:  LAB TESTING. |
| 11:39AM | 13 | THE COURT:  OKAY.  OKAY. |
| 11:39AM | 14 | IS THERE -- AND I'M SORRY, YOU SAID SOMETHING ABOUT HBO. |
| 11:39AM | 15 | DID YOU SEE AN HBO SHOW OR LISTEN TO AN HBO SHOW? |
| 11:39AM | 16 | PROSPECTIVE JUROR:  I MEAN, MAYBE.  I WATCH A LOT OF |
| 11:39AM | 17 | HBO.  SO I DON'T BELIEVE IT SAID IT WHEN I JUST SPOKE.  I MAY |
| 11:39AM | 18 | HAVE PUT IT ON MY QUESTIONNAIRE. |
| 11:39AM | 19 | THE COURT:  I THINK THAT'S WHERE I GOT IT. |
| 11:39AM | 20 | PROSPECTIVE JUROR:  I REMEMBER SEEING SOME MEDIA |
| 11:39AM | 21 | ABOUT IT A COUPLE YEARS AGO. |
| 11:39AM | 22 | THE COURT:  OKAY.  BUT, AGAIN, NOTHING STICKS TODAY? |
| 11:39AM | 23 | PROSPECTIVE JUROR:  NO. |
| 11:39AM | 24 | THE COURT:  CAN YOU BE FAIR TO THE GOVERNMENT IN |
| 11:39AM | 25 | THIS CASE? |

| | | |
|---|---|---|
| 11:39AM | 1 | PROSPECTIVE JUROR:  YES. |
| 11:39AM | 2 | THE COURT:  AND CAN YOU BE FAIR TO MS. HOLMES IN |
| 11:40AM | 3 | THIS CASE? |
| 11:40AM | 4 | PROSPECTIVE JUROR:  YES, YOUR HONOR. |
| 11:40AM | 5 | THE COURT:  DO YOU HAVE ANY DOUBT IN YOUR MIND ABOUT |
| 11:40AM | 6 | THOSE THINGS? |
| 11:40AM | 7 | PROSPECTIVE JUROR:  I HAVE NO DOUBT. |
| 11:40AM | 8 | THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH, |
| 11:40AM | 9 | MR. MURPHY. |
| 11:40AM | 10 | ANYONE ELSE? |
| 11:40AM | 11 | LET'S PASS IT BEHIND, MR. MURPHY. |
| 11:40AM | 12 | IS THIS MR. TONG? |
| 11:40AM | 13 | PROSPECTIVE JUROR:  YES. |
| 11:40AM | 14 | THE COURT:  THIS IS JUROR NUMBER -- |
| 11:40AM | 15 | PROSPECTIVE JUROR:  -- 147. |
| 11:40AM | 16 | THE COURT:  -- 147.  THANK YOU, SIR.  YES? |
| 11:40AM | 17 | PROSPECTIVE JUROR:  SO EXPOSURE TO THE CASE PRIOR TO |
| 11:40AM | 18 | THE QUESTIONNAIRE, MAYBE, LIKE, YEARS AGO JUST HEARING ON THE |
| 11:40AM | 19 | NEWS. |
| 11:40AM | 20 | AND THEN ALSO I HAD A COWORKER WHO HAD A DAUGHTER WHO |
| 11:40AM | 21 | WORKED AT THERANOS AND THERE WAS DISCUSSION OF WHAT WAS GOING |
| 11:40AM | 22 | ON IN THE NEWS AND STUFF. |
| 11:40AM | 23 | AND MAYBE A FEW MONTHS AGO I SAW IN, LIKE, ABC NEWS THERE |
| 11:40AM | 24 | WAS, LIKE, A TRIAL WAS COMING. |
| 11:40AM | 25 | AND THERE WAS SOME DISCUSSION JUST WITHIN THE FAMILY AND |

11:40AM  1      WHAT WERE THE ALLEGATIONS AND SUCH.

11:40AM  2           SO THAT'S TO THE EXTENT WHERE I HAD KNOWLEDGE PRIOR.

11:41AM  3                THE COURT:  OKAY.

11:41AM  4                PROSPECTIVE JUROR:  AND AFTER THE QUESTIONNAIRE I

11:41AM  5      SAW THAT THE TRIAL WAS COMING ON THE NEWS, BUT I DIDN'T CLICK

11:41AM  6      ON IT.

11:41AM  7                THE COURT:  AND THAT WAS ON A NEWS FEED ON YOUR

11:41AM  8      DEVICE?

11:41AM  9                PROSPECTIVE JUROR:  YEAH, YEAH.

11:41AM  10                THE COURT:  SO I THINK YOU SAID IN YOUR

11:41AM  11     QUESTIONNAIRE THAT YOU HEARD ABOUT HER AND YOU MIGHT BE

11:41AM  12     BIASSED.  I THINK THAT'S WHAT YOU WROTE.

11:41AM  13                PROSPECTIVE JUROR:  YEAH.  YOU HEAR ON THE NEWS, AND

11:41AM  14     I DON'T KNOW IF THERE'S ANY SUBCONSCIOUS BIAS, BUT I THINK I

11:41AM  15     CAN TRY TO BE OBJECTIVE AND NOT LET IT AFFECT ME.  BUT IT'S

11:41AM  16     JUST BASED ON THE NEWS WHAT I HAVE HEARD.

11:41AM  17                THE COURT:  OKAY.  SO YOU'VE HEARD ME TALK TO THE

11:41AM  18     OTHER JURORS AND YOU'VE HEARD THEIR ANSWERS ABOUT HOW IT WILL

11:41AM  19     AFFECT THEM AND BASED ON THEIR EXPOSURES.

11:41AM  20          WHAT ABOUT YOU?  IS THAT SOMETHING THAT YOU THINK YOU HAVE

11:41AM  21     CONFIDENCE THAT YOU CAN PUT ASIDE ANY QUESTIONS THAT YOU'VE

11:41AM  22     HEARD, READ?

11:41AM  23                PROSPECTIVE JUROR:  BASED ON WHAT I'VE HEARD AND

11:41AM  24     READ, I THINK I CAN NOT LET IT AFFECT ME.

11:42AM  25                THE COURT:  OKAY.  HAVE YOU -- HAVE YOU WATCHED ANY

11:42AM   1    SHOW OR DOCUMENTARY OR ANYTHING ON THIS, ON THIS CASE OR THE

11:42AM   2    ITEMS SURROUNDING THIS CASE?

11:42AM   3              PROSPECTIVE JUROR:  NOT ANY SHOWS OR DOCUMENTARY.

11:42AM   4        JUST, LIKE, THE NEWS CHANNEL, LIKE ABC OR SOMETHING WHEN

11:42AM   5    THEY TALK ABOUT THE CASE.  BUT I DIDN'T WATCH IT IN DEPTH.

11:42AM   6              THE COURT:  HAVE YOU LISTENED TO THE ENTIRETY OF

11:42AM   7    THAT NEWS?

11:42AM   8              PROSPECTIVE JUROR:  NOT PARTICULARLY.

11:42AM   9              THE COURT:  I'M SORRY, I INTERRUPTED YOU.  GO AHEAD.

11:42AM  10              PROSPECTIVE JUROR:  JUST, LIKE, WHEN IT'S ON THE

11:42AM  11    NEWS AND IN THE BACKGROUND IN PASSING I JUST HEAR, AND MAYBE

11:42AM  12    SOME DISCUSSION WITH FAMILY ABOUT WHAT THEY THINK HAS HAPPENED.

11:42AM  13    BUT NOTHING IN DETAIL.

11:42AM  14              THE COURT:  AND HAVE YOU SHARED IN THAT CONVERSATION

11:42AM  15    WITH YOUR FAMILY?  AND I'M NOT GOING TO ASK YOU WHAT WAS SAID,

11:42AM  16    BUT DID YOU SHARE YOUR OPINION ABOUT THE CASE AT THAT TIME?  OR

11:42AM  17    NOT THE CASE, BUT ABOUT THE NEWS STORY?

11:42AM  18              PROSPECTIVE JUROR:  NO, NOT -- NOT TOO MUCH

11:42AM  19    DISCUSSION.  MAINLY THEY WERE ASKING, WHAT DO YOU THINK

11:42AM  20    HAPPENED?  BUT NOT TOO MUCH ON MY SIDE.

11:43AM  21              THE COURT:  OKAY.  ALL RIGHT.

11:43AM  22        I WANT TO ASK YOU ABOUT SOMETHING ELSE.  YOU'VE TOLD US

11:43AM  23    THAT YOU'RE A BUSY ENGINEER.

11:43AM  24              PROSPECTIVE JUROR:  YEAH.

11:43AM  25              THE COURT:  TELL US ABOUT THAT.

11:43AM  1          PROSPECTIVE JUROR:  OH, MY WORK RIGHT NOW, IT'S

11:43AM  2    PRETTY STRESSFUL.  I'M WORKING MAYBE 60 TO 80 HOURS A WEEK AND

11:43AM  3    I'M BARELY KEEPING UP.

11:43AM  4       WHAT I MENTIONED WAS THAT I WAS CONCERNED THAT THE

11:43AM  5    WORKLOAD IS PRETTY HIGH AND I'LL HAVE TROUBLE KIND OF FOCUSSING

11:43AM  6    ON WORK AND WITH FOCUSSING MENTALLY ON THE CASE IS WHAT WAS MY

11:43AM  7    CONCERN.

11:43AM  8          THE COURT:  I SEE.  DO YOU THINK THAT WOULD BE A

11:43AM  9    CHALLENGE FOR YOU?

11:43AM  10          PROSPECTIVE JUROR:  YEAH, I THINK SO, BECAUSE SINCE

11:43AM  11    THE CASE IS SO LONG AND THE WORK, I MEAN, IT'S PRETTY HEAVY IN

11:43AM  12    TERMS OF THE HOURS THAT I HAVE TO PUT IN.  I DON'T KNOW HOW I

11:43AM  13    WILL BE ABLE TO MANAGE BOTH.

11:43AM  14          THE COURT:  OKAY.  I THINK YOU NEED TO HAVE A

11:43AM  15    CONVERSATION WITH YOUR EMPLOYER AND TELL HIM TO HIRE SOME MORE

11:43AM  16    PEOPLE, DO YOU THINK?

11:43AM  17       (LAUGHTER.)

11:43AM  18          PROSPECTIVE JUROR:  YEAH, WE'RE PRETTY SHORT

11:44AM  19    STAFFED.

11:44AM  20          THE COURT:  THAT MIGHT BE A FAST SOLUTION TO THIS.

11:44AM  21       BUT I KNOW YOU TOLD US ABOUT THAT IN YOUR QUESTIONNAIRE,

11:44AM  22    THAT YOU HAVE A LOT OF WORK TO DO.

11:44AM  23       ARE THE PROJECTS THAT YOU ARE WORKING ON NOW THAT HAVE A

11:44AM  24    COMPLETION DATE SOON?

11:44AM  25          PROSPECTIVE JUROR:  NO.  IT'S KIND OF JUST STARTING,

| | | |
|---|---|---|
| 11:44AM | 1 | SO IT WILL GO ON FOR A WHILE.  AND I'M ONE OF THE MAIN ONES |
| 11:44AM | 2 | KIND OF STARTING ON IT, AND THE OPPORTUNITY IS, LIKE, A PRETTY |
| 11:44AM | 3 | HIGH VISIBLE PROJECT, AND SO IT'S LIKE PRETTY IMPORTANT TO MY |
| 11:44AM | 4 | WORK AND CAREER IN TERMS OF PROVING MYSELF.  SO, YEAH. |
| 11:44AM | 5 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 11:44AM | 6 | MR. SCHENK, ANY QUESTIONS? |
| 11:44AM | 7 | MR. SCHENK:  NO. |
| 11:44AM | 8 | MR. DOWNEY:  I WANTED TO INQUIRE OF MR. TONG OF THE |
| 11:44AM | 9 | COWORKER WHO WORKED AT THERANOS, BUT I DIDN'T WANT TO -- |
| 11:45AM | 10 | THE COURT:  NO, I THINK YOU MENTIONED THAT, |
| 11:45AM | 11 | MR. TONG. |
| 11:45AM | 12 | MR. DOWNEY, YOU HAD A QUESTION ABOUT THAT? |
| 11:45AM | 13 | MR. DOWNEY:  I DO. |
| 11:45AM | 14 | WHO WAS THE FRIEND WHO HAD A CHILD THAT WORKED AT |
| 11:45AM | 15 | THERANOS? |
| 11:45AM | 16 | PROSPECTIVE JUROR:  SO IT WAS A COUPLE COMPANIES AGO |
| 11:45AM | 17 | THAT I WORKED AT, AND I JUST KNOW THAT THE DAUGHTER WORKED AT |
| 11:45AM | 18 | THE COMPANY, AND I MIGHT HAVE MET ONCE AT A COMPANY PARTY, BUT |
| 11:45AM | 19 | I DON'T KNOW HER PERSONALLY WELL. |
| 11:45AM | 20 | MR. DOWNEY:  OKAY.  DO YOU KNOW THE LAST NAME OF |
| 11:45AM | 21 | YOUR COWORKER? |
| 11:45AM | 22 | PROSPECTIVE JUROR:  IT'S BEEN, LIKE, A FEW YEARS |
| 11:45AM | 23 | AGO, SO I DON'T KNOW THE LAST NAME, BUT I HAVE THE FIRST NAME. |
| 11:45AM | 24 | MR. DOWNEY:  YOU DO RECALL THE FIRST NAME? |
| 11:45AM | 25 | PROSPECTIVE JUROR:  YEAH. |

| | | |
|---|---|---|
| 11:45AM | 1 | MR. DOWNEY:  AND WHAT WAS THE FIRST NAME? |
| 11:45AM | 2 | PROSPECTIVE JUROR:  THE FIRST NAME OF THE COWORKER |
| 11:45AM | 3 | OR THE DAUGHTER? |
| 11:45AM | 4 | MR. DOWNEY:  THE DAUGHTER. |
| 11:45AM | 5 | PROSPECTIVE JUROR:  OH, THE DAUGHTER.  I DON'T |
| 11:45AM | 6 | REMEMBER HER NAME. |
| 11:45AM | 7 | MR. DOWNEY:  HOW ABOUT THE COWORKER? |
| 11:45AM | 8 | PROSPECTIVE JUROR:  IT'S PHI, P-H-I. |
| 11:45AM | 9 | MR. DOWNEY:  AND DO YOU KNOW WHAT YOUR COWORKER'S |
| 11:46AM | 10 | DAUGHTER DID AT THERANOS? |
| 11:46AM | 11 | PROSPECTIVE JUROR:  NO.  I JUST KNOW THAT SHE WAS |
| 11:46AM | 12 | WORKING THERE AT THE TIME. |
| 11:46AM | 13 | MR. DOWNEY:  OKAY.  DID YOU EVER TALK TO YOUR |
| 11:46AM | 14 | COWORKER ABOUT THERANOS? |
| 11:46AM | 15 | PROSPECTIVE JUROR:  NO, NOT THAT COWORKER.  MAYBE |
| 11:46AM | 16 | SOME OTHER COWORKER THAT KNEW HER JUST MENTIONED WHEN THIS |
| 11:46AM | 17 | HAPPENED THAT SHE HAD A DAUGHTER THAT WORKED THERE. |
| 11:46AM | 18 | MR. DOWNEY:  I THINK YOU SAID YOU MAY HAVE MET YOUR |
| 11:46AM | 19 | COWORKER'S DAUGHTER ONCE AT A PARTY. |
| 11:46AM | 20 | PROSPECTIVE JUROR:  A COMPANY EVENT. |
| 11:46AM | 21 | MR. DOWNEY:  WHEN YOU WERE AT THE PARTY, DID YOU |
| 11:46AM | 22 | HAVE ANY DISCUSSIONS ABOUT THERANOS WITH HER? |
| 11:46AM | 23 | PROSPECTIVE JUROR:  NO.  THIS IS BEFORE EVERYTHING |
| 11:46AM | 24 | HAPPENED, SO WE DIDN'T HAVE ANY DISCUSSION REGARDING THIS. |
| 11:46AM | 25 | MR. DOWNEY:  OKAY.  WHAT ABOUT ANY WORK AT THERANOS |

| | | |
|---|---|---|
| 11:46AM | 1 | THAT SHE WAS DOING? |
| 11:46AM | 2 | PROSPECTIVE JUROR:  THERE WAS NO DISCUSSION ABOUT |
| 11:46AM | 3 | THAT. |
| 11:46AM | 4 | MR. DOWNEY:  THANK YOU, MR. TONG. |
| 11:46AM | 5 | THE COURT:  ANYTHING FURTHER, MR. DOWNEY? |
| 11:46AM | 6 | MR. DOWNEY:  NO, NOTHING, YOUR HONOR. |
| 11:46AM | 7 | THE COURT:  MR. SCHENK? |
| 11:46AM | 8 | MR. SCHENK:  NO. |
| 11:46AM | 9 | THE COURT:  THANK YOU, MR. TONG.  THANK YOU. |
| 11:46AM | 10 | LET'S PASS THE MICROPHONE DOWN THE ROW BEHIND YOU, I |
| 11:46AM | 11 | THINK. |
| 11:47AM | 12 | IS THAT MS. GLIK?  WHERE DID THE MICROPHONE GO? |
| 11:47AM | 13 | PROSPECTIVE JUROR:  VANDEKAMP IS MY LAST NAME, 160. |
| 11:47AM | 14 | THE COURT:  I'M SORRY.  THANK YOU. |
| 11:47AM | 15 | YES? |
| 11:47AM | 16 | PROSPECTIVE JUROR:  ARE WE DISCLOSING THINGS OUTSIDE |
| 11:47AM | 17 | OF THE QUESTIONNAIRE OR JUST THE QUESTIONNAIRE STILL? |
| 11:47AM | 18 | THE COURT:  WELL, MY QUESTION WAS REGARDING |
| 11:47AM | 19 | EXPOSURE, ANYTHING THAT YOU MAY HAVE SEEN, READ, HEARD. |
| 11:47AM | 20 | PROSPECTIVE JUROR:  YEAH, FOR SURE. |
| 11:47AM | 21 | THE COURT:  BOTH BEFORE THE QUESTIONNAIRE AND AFTER |
| 11:47AM | 22 | THE QUESTIONNAIRE. |
| 11:47AM | 23 | PROSPECTIVE JUROR:  OKAY.  COOL. |
| 11:47AM | 24 | SO BEFORE THE QUESTIONNAIRE, I CONSUMED A LOT OF MEDIA AND |
| 11:47AM | 25 | I'M PRETTY SURE I HAVE HEARD THE PODCAST ABOUT IT. |

11:47AM  1      BUT NOW THAT I SEE THE DEFENDANT, I THINK I HAVE SEEN A

11:47AM  2  MOVIE OR DOCUMENTARY BECAUSE SHE LOOKS FAMILIAR.

11:47AM  3           THE COURT:  OKAY.  WHEN WOULD THAT HAVE BEEN THAT

11:47AM  4  YOU SAW THIS?

11:47AM  5           PROSPECTIVE JUROR:  A WHILE AGO.  MAYBE A YEAR AGO,

11:47AM  6  TWO YEARS AGO.  I'M NOT SURE.

11:47AM  7           THE COURT:  OKAY.  OKAY.

11:47AM  8      IS THERE -- DO YOU REMEMBER ANY OF THE CONTENT THAT YOU

11:48AM  9  SAW?

11:48AM 10           PROSPECTIVE JUROR:  SOMEWHAT, LIKE, ABOUT THE

11:48AM 11  TESTING AND SUCH.  BUT THAT'S PRETTY MUCH IT.

11:48AM 12           THE COURT:  THE GENERAL STORY?

11:48AM 13           PROSPECTIVE JUROR:  YEAH, THE GENERAL STORY.  I

11:48AM 14  WASN'T THAT INVESTED IN IT, TO BE HONEST.

11:48AM 15           THE COURT:  OKAY.  WAS IT A CABLE NEWS SHOW OR A

11:48AM 16  TELEVISION SHOW?  DO YOU RECALL?

11:48AM 17           PROSPECTIVE JUROR:  IT WAS PROBABLY EITHER SOMETHING

11:48AM 18  LIKE ON A STREAMING SERVICE.

11:48AM 19           THE COURT:  I SEE.

11:48AM 20           PROSPECTIVE JUROR:  YEAH.

11:48AM 21           THE COURT:  OKAY.  AND WHAT ABOUT SUBSEQUENT TO THE

11:48AM 22  QUESTIONNAIRE?

11:48AM 23           PROSPECTIVE JUROR:  I SAW A HEADLINE ON "THE

11:48AM 24  NEW YORK TIMES" THE OTHER DAY ABOUT FEMALE FUNDING IN THE TECH

11:48AM 25  SPACE, BUT I DIDN'T READ IT.  I DIDN'T READ THE WHOLE THING.

| | | |
|---|---|---|
| 11:48AM | 1 | THE COURT:  THERE'S A BOOK I THINK CALLED |
| 11:48AM | 2 | "BAD BLOOD."  ARE YOU FAMILIAR WITH THAT? |
| 11:48AM | 3 | PROSPECTIVE JUROR:  WITH THE BOOK? |
| 11:48AM | 4 | THE COURT:  YES. |
| 11:48AM | 5 | PROSPECTIVE JUROR:  NO, I DIDN'T READ THE BOOK. |
| 11:48AM | 6 | THE COURT:  YOU DID NOT READ THE BOOK? |
| 11:48AM | 7 | PROSPECTIVE JUROR:  HUH-UH. |
| 11:48AM | 8 | THE COURT:  DID YOU SEE A MOVIE OR DOCUMENTARY ABOUT |
| 11:48AM | 9 | THE BOOK? |
| 11:48AM | 10 | PROSPECTIVE JUROR:  I THINK IT WAS A PODCAST. |
| 11:49AM | 11 | THE COURT:  I SEE.  OKAY. |
| 11:49AM | 12 | I THINK YOU TOLD US ALSO THAT THE MEDIA THAT YOU CONSUMED |
| 11:49AM | 13 | ABOUT THIS, AND IT MAY BE THIS, DID YOU SAY THAT IT DID NOT |
| 11:49AM | 14 | SHOW BOTH SIDES? |
| 11:49AM | 15 | PROSPECTIVE JUROR:  I DON'T FEEL LIKE IT WAS A |
| 11:49AM | 16 | TWO-SIDED THING.  I FEEL LIKE IT WAS FROM -- IT WAS REALLY JUST |
| 11:49AM | 17 | COVERAGE ABOUT WHAT WAS HAPPENING.  IT DIDN'T SEEM LIKE IT HAD |
| 11:49AM | 18 | ANY OTHER -- LIKE, IT WASN'T LIKE A GOVERNMENT TYPE THING OR |
| 11:49AM | 19 | FROM THE INVESTOR SIDE OR ANYTHING LIKE THAT I DON'T THINK.  I |
| 11:49AM | 20 | DON'T REALLY RECALL TO BE HONEST. |
| 11:49AM | 21 | THE COURT:  I JUST ASKED THAT AND I SAW YOU -- I |
| 11:49AM | 22 | THINK YOU SAID IT DID NOT, "IT" MEANING THE DOCUMENTARY, THE |
| 11:49AM | 23 | PODCAST, WHATEVER IT WAS -- |
| 11:49AM | 24 | PROSPECTIVE JUROR:  YEAH. |
| 11:49AM | 25 | THE COURT:  -- IT DID NOT SHOW BOTH SIDES, AND I WAS |

11:49AM 1   CURIOUS WHAT YOU MEANT BY THAT.

11:49AM 2         PROSPECTIVE JUROR:  YEAH, I WAS TRYING TO THINK

11:49AM 3   ABOUT IT AS THE PROSECUTOR AND THE DEFENDANT, AND I DON'T FEEL

11:49AM 4   LIKE IT WAS A TWO-SIDED THING.  IT WAS JUST, LIKE,

11:49AM 5   INFORMATIONAL.

11:49AM 6         THE COURT:  I SEE.  OKAY.

11:50AM 7      I ALSO WANT TO ASK YOU, I THINK YOU TOLD US THAT YOU HAVE

11:50AM 8   SOME TRAVEL PLANNED?

11:50AM 9         PROSPECTIVE JUROR:  I DO, YEAH.

11:50AM 10        THE COURT:  AND TELL US ABOUT THAT.

11:50AM 11        PROSPECTIVE JUROR:  I HAVE A WORK TRIP FROM

11:50AM 12  SEPTEMBER 20TH TO THE 28TH.

11:50AM 13        THE COURT:  28TH.  OH, OKAY.

11:50AM 14     AND IS THAT INTERNATIONAL TRAVEL?

11:50AM 15        PROSPECTIVE JUROR:  NO.  IT'S TO CHICAGO.

11:50AM 16        THE COURT:  OKAY.  AND IS THAT SOMETHING THAT COULD

11:50AM 17  BE EITHER RESCHEDULED OR THAT YOUR EMPLOYER MIGHT SEND SOMEONE

11:50AM 18  ELSE?  I KNOW THERE'S NO ONE ELSE THAT WOULD DO AS GOOD OF A

11:50AM 19  JOB AS YOU --

11:50AM 20        PROSPECTIVE JUROR:  THAT'S RIGHT.

11:50AM 21     (LAUGHTER.)

11:50AM 22        PROSPECTIVE JUROR:  I'M ACTUALLY THE PERSON IN

11:50AM 23  CHARGE OF THE ENTIRE EVENT.

11:50AM 24        THE COURT:  I BEG YOUR PARDON?

11:50AM 25        PROSPECTIVE JUROR:  I'M IN CHARGE OF THE EVENT FOR

| | | |
|---|---|---|
| 11:50AM | 1 | THE ENTIRE TEAM. |
| 11:50AM | 2 | THE COURT:  OH, YOU'RE RUNNING THE EVENT? |
| 11:50AM | 3 | PROSPECTIVE JUROR:  YEAH. |
| 11:50AM | 4 | THE COURT:  SO YOU WOULD BE CONSPICUOUS IN YOUR |
| 11:50AM | 5 | ABSENCE? |
| 11:50AM | 6 | PROSPECTIVE JUROR:  I THINK SO.  PARTICULARLY |
| 11:50AM | 7 | BECAUSE I'M REALLY GOOD AT WHAT I DO. |
| 11:50AM | 8 | (LAUGHTER.) |
| 11:50AM | 9 | THE COURT:  DO YOU HAVE ANY DOUBT ABOUT THAT |
| 11:51AM | 10 | MS. VANDEKAMP? |
| 11:51AM | 11 | PROSPECTIVE JUROR:  NO DOUBTS. |
| 11:51AM | 12 | THE COURT:  OKAY.  THANK YOU. |
| 11:51AM | 13 | ANY QUESTIONS, MR. SCHENK? |
| 11:51AM | 14 | MR. SCHENK:  NO.  THANK YOU, YOUR HONOR. |
| 11:51AM | 15 | MR. DOWNEY:  NO.  THANK YOU, YOUR HONOR. |
| 11:51AM | 16 | THE COURT:  THANK YOU VERY MUCH, MS. VANDEKAMP.  I |
| 11:51AM | 17 | APPRECIATE IT. |
| 11:51AM | 18 | IS THIS MS. GLIK? |
| 11:51AM | 19 | PROSPECTIVE JUROR:  YES. |
| 11:51AM | 20 | THE COURT:  ALL RIGHT. |
| 11:51AM | 21 | PROSPECTIVE JUROR:  SO WHEN I FILLED OUT THE |
| 11:51AM | 22 | QUESTIONNAIRE I WASN'T FAMILIAR WITH ANYTHING, NOT THE TOPIC OR |
| 11:51AM | 23 | THE NAME. |
| 11:51AM | 24 | BUT WHEN I CAME BACK HOME I COMPLETED THE QUESTIONS, AND |
| 11:51AM | 25 | THEN I REMEMBER MY HUSBAND'S MOVIE WAS IN THE MIDDLE ABOUT THE |

| | | |
|---|---|---|
| 11:51AM | 1 | BLOOD TESTS WHICH I MADE THE CONNECTION.  I DON'T KNOW MUCH |
| 11:51AM | 2 | ABOUT IT, JUST PART OF THE MOVIE.  I KNOW IT'S ABOUT BLOOD |
| 11:51AM | 3 | TESTING, LIKE A SMALL BLOOD TESTING, BUT NOTHING ELSE. |
| 11:51AM | 4 | THE COURT:  OKAY.  WELL, THANK YOU.  SO YOU SAW PART |
| 11:51AM | 5 | OF THE MOVIE? |
| 11:51AM | 6 | PROSPECTIVE JUROR:  YEAH.  MY HUSBAND, BUT NOTHING |
| 11:52AM | 7 | MUCH I REMEMBER. |
| 11:52AM | 8 | THE COURT:  DO YOU REMEMBER THE TITLE OF THE MOVIE? |
| 11:52AM | 9 | PROSPECTIVE JUROR:  NO. |
| 11:52AM | 10 | THE COURT:  AND HOW LONG AGO WAS THIS? |
| 11:52AM | 11 | PROSPECTIVE JUROR:  I DON'T REMEMBER MUCH, SO I |
| 11:52AM | 12 | GUESS IT WAS A LONG TIME AGO. |
| 11:52AM | 13 | THE COURT:  MORE THAN A YEAR AGO? |
| 11:52AM | 14 | PROSPECTIVE JUROR:  PERHAPS, YEAH.  I JUST -- |
| 11:52AM | 15 | THE COURT:  AND DO YOU REMEMBER HOW LONG THE MOVIE |
| 11:52AM | 16 | WAS OR HOW LONG YOU WATCHED THE MOVIE? |
| 11:52AM | 17 | PROSPECTIVE JUROR:  NO.  I WATCHED JUST A FEW |
| 11:52AM | 18 | MINUTES.  MY HUSBAND GAVE ME SOME MORE DETAILS ABOUT IT, BUT I |
| 11:52AM | 19 | DON'T REMEMBER THE DETAILS, SO -- |
| 11:52AM | 20 | THE COURT:  OKAY.  DO YOU REMEMBER OR DO YOU HAVE |
| 11:52AM | 21 | ANY KNOWLEDGE TODAY ABOUT ANYTHING ABOUT THIS CASE? |
| 11:52AM | 22 | PROSPECTIVE JUROR:  NO.  NOT EXCEPT THAT IT'S ABOUT |
| 11:52AM | 23 | VERY SMALL BLOOD TEST. |
| 11:52AM | 24 | THE COURT:  OKAY.  HAVE YOU TALKED TO ANYBODY ABOUT |
| 11:52AM | 25 | ANYTHING ABOUT THIS CASE? |

| | | |
|---|---|---|
| 11:52AM | 1 | PROSPECTIVE JUROR:  NO. |
| 11:52AM | 2 | THE COURT:  OR HAS ANYBODY TALKED TO YOU? |
| 11:52AM | 3 | PROSPECTIVE JUROR:  NO. |
| 11:52AM | 4 | THE COURT:  HAVE YOU READ ANYTHING ABOUT THIS CASE? |
| 11:52AM | 5 | PROSPECTIVE JUROR:  NO. |
| 11:52AM | 6 | THE COURT:  OKAY.  ALL RIGHT. |
| 11:52AM | 7 | MR. SCHENK, ANY QUESTIONS FOR MS. GLIK? |
| 11:52AM | 8 | MR. SCHENK:  NO.  THANK YOU. |
| 11:52AM | 9 | MR. DOWNEY:  NOTHING, YOUR HONOR. |
| 11:52AM | 10 | THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU, |
| 11:52AM | 11 | MS. GLIK. |
| 11:52AM | 12 | PROSPECTIVE JUROR:  THANK YOU. |
| 11:53AM | 13 | THE COURT:  YOU'RE WELCOME. |
| 11:53AM | 14 | IS THAT MR. FORSBERG? |
| 11:53AM | 15 | PROSPECTIVE JUROR:  YES. |
| 11:53AM | 16 | THE COURT:  169. |
| 11:53AM | 17 | PROSPECTIVE JUROR:  SO SINCE FILLING OUT THE |
| 11:53AM | 18 | QUESTIONNAIRE, THE ONLY EXPOSURE I'VE HAD WAS LAST NIGHT MY |
| 11:53AM | 19 | HUSBAND HAD THE T.V. ON AND THERE WAS A SHOT OF THE COURT |
| 11:53AM | 20 | REPORTER, OR THE REPORTER OUTSIDE THE COURT.  WE IMMEDIATELY |
| 11:53AM | 21 | TURNED OFF THE T.V., SO IT JUST FLASHED BY. |
| 11:53AM | 22 | THE COURT:  OKAY.  DID YOU SEE ANY -- OR EXCUSE ME. |
| 11:53AM | 23 | DID YOU HEAR ANY CONTENT? |
| 11:53AM | 24 | PROSPECTIVE JUROR:  JUST THAT THEY WERE DOING JURY |
| 11:53AM | 25 | SELECTION TODAY. |

11:53AM  1          THE COURT:  OKAY.  ALL RIGHT.

11:53AM  2       WHAT ABOUT PRE-QUESTIONNAIRE?

11:53AM  3          PROSPECTIVE JUROR:  SO PRE-QUESTIONNAIRE I HAD SEEN

11:53AM  4  THE "60 MINUTES" PIECE, AND ANOTHER PIECE ABOUT THE TESTING

11:53AM  5  THAT WAS POSSIBLE.

11:53AM  6          THE COURT:  AND DID YOU SEE THOSE IN THE ENTIRETY?

11:53AM  7          PROSPECTIVE JUROR:  YES, I DID.

11:53AM  8          THE COURT:  OKAY.  AND DO YOU RETAIN SOME OF WHAT

11:53AM  9  YOU SAW TODAY?

11:53AM  10         PROSPECTIVE JUROR:  YES, I DID.

11:53AM  11         THE COURT:  I SEE.  YOU HAVE THAT IN YOUR MIND

11:53AM  12  TODAY, WHAT YOU SAW?

11:53AM  13         PROSPECTIVE JUROR:  YES.

11:54AM  14         THE COURT:  AND YOU'VE HEARD ME TALK, OF COURSE, ALL

11:54AM  15  MORNING HERE ABOUT SEPARATING THINGS IF YOU'RE A JUROR IN THIS

11:54AM  16  CASE.

11:54AM  17      IS THAT SOMETHING THAT YOU THINK YOU COULD DO?

11:54AM  18         PROSPECTIVE JUROR:  I BELIEVE, YES, I COULD DO IT.

11:54AM  19  I THINK THAT I'M NOT UNBIASSED, BUT I THINK I'M AWARE OF MY

11:54AM  20  BIASES.

11:54AM  21         THE COURT:  OKAY.  AND HOW DO YOU -- MAY I ASK YOU,

11:54AM  22  MR. FORSBERG, HOW DO YOU RECONCILE THOSE TWO THINGS,

11:54AM  23  RECOGNIZING YOUR BIASES AND THEN MOVING TO PUT ASIDE THOSE

11:54AM  24  BIASES?  HOW DO YOU, HOW DO YOU -- WHAT TOOLS DO YOU USE TO

11:54AM  25  ACCOMPLISH THAT?

| | | |
|---|---|---|
| 11:54AM | 1 | PROSPECTIVE JUROR:  I THINK IN THIS APPLICATION IT |
| 11:54AM | 2 | WOULD BE BASICALLY LISTENING TO THE COURT AND THE DIRECTION |
| 11:54AM | 3 | THAT THEY HAVE. |
| 11:54AM | 4 | SO YOU MAY HEAR THINGS OR HAVE TO NOT APPLY THEM, IF YOU |
| 11:54AM | 5 | WILL. |
| 11:54AM | 6 | THE COURT:  AND YOU KNOW THIS AND I'VE TOLD THIS AND |
| 11:54AM | 7 | I'VE SAID THIS, THAT THERE WILL BE A COURT ORDER THAT JURORS, |
| 11:55AM | 8 | JURORS ARE NOT, NOT TO CONSULT ANYTHING OUTSIDE THE EVIDENCE IN |
| 11:55AM | 9 | THIS CASE.  YOU HAVE HEARD ME TALK ABOUT THE UNIVERSE OF |
| 11:55AM | 10 | EVIDENCE IN THIS COURTROOM AND THAT FORMS THE BASIS OF A |
| 11:55AM | 11 | JUROR'S INFORMATION. |
| 11:55AM | 12 | IS THAT SOMETHING THAT YOU CAN DO? |
| 11:55AM | 13 | PROSPECTIVE JUROR:  ABSOLUTELY, YES. |
| 11:55AM | 14 | THE COURT:  AND CAN YOU PARSE OUT THE PROGRAMS THAT |
| 11:55AM | 15 | YOU'VE SEEN AND ANY OTHER INFORMATION THAT YOU'VE SEEN AND NOT |
| 11:55AM | 16 | ALLOW THAT TO INFECT YOUR THOUGHT PROCESS AS YOU DELIBERATE AS |
| 11:55AM | 17 | A JUROR AND YOU SEE AND HEAR THE EVIDENCE IN THE CASE?  CAN YOU |
| 11:55AM | 18 | DO THAT? |
| 11:55AM | 19 | PROSPECTIVE JUROR:  I BELIEVE I CAN. |
| 11:55AM | 20 | THE COURT:  AND ANY DOUBT ABOUT THAT? |
| 11:55AM | 21 | PROSPECTIVE JUROR:  THERE'S A LITTLE DOUBT, YES. |
| 11:55AM | 22 | THE COURT:  AND LET'S TALK ABOUT THAT.  TELL ME |
| 11:55AM | 23 | ABOUT YOUR THOUGHTS ABOUT THAT.  AND I APPRECIATE YOUR CANDOR, |
| 11:55AM | 24 | MR. FORSBERG, I REALLY DO. |
| 11:55AM | 25 | PROSPECTIVE JUROR:  I THINK JUST -- I THINK THERE |

11:55AM  1   WAS SO MUCH POSSIBILITY ATTACHED TO THE PRODUCT THAT WOULD BE

11:56AM  2   DELIVERED, THAT THAT'S WHAT I HAVE TO DETACH AND GO BACK TO,

11:56AM  3   THIS IS WHAT IS HAPPENING IN THE COURTROOM AND THIS IS WHAT IS

11:56AM  4   BEING GUIDED, AND TO PUT THE OTHER PERCEPTIONS ASIDE.

11:56AM  5          THE COURT:  RIGHT.  AND THAT'S -- I RECOGNIZE --

11:56AM  6   YESTERDAY I SAID IT WAS A HERCULEAN TASK TO ACCOMPLISH THAT FOR

11:56AM  7   FOLKS, TO SEPARATE THAT, TO UNRING A BELL, TO UNREAD A BOOK,

11:56AM  8   WHATEVER THAT IS.

11:56AM  9       HOW WOULD YOU ACCOMPLISH THAT OR GO ABOUT DOING THAT?

11:56AM 10          PROSPECTIVE JUROR:  I'M NOT SURE HOW TO ANSWER THAT

11:56AM 11   QUESTION.  IT WOULD JUST BE TO THE BEST OF MY ABILITY TO REALLY

11:56AM 12   JUST FOLLOW THE INSTRUCTIONS AND THE GUIDANCE, LIKE WE HAD ON

11:56AM 13   THE QUESTIONNAIRE WHERE IT WAS DON'T GOOGLE IT, DON'T LOOK IT

11:56AM 14   UP, DON'T TALK ABOUT IT.  YOU KNOW, SO WHEN IT CAME ON T.V.

11:56AM 15   LAST NIGHT, WE IMMEDIATELY TURNED THE T.V. OFF.

11:56AM 16       SO I THINK JUST FOLLOWING THE GUIDANCE OF THE COURT IS

11:56AM 17   PROBABLY THE BEST ANSWER I HAVE AT THIS TIME.

11:56AM 18          THE COURT:  I APPRECIATE THAT.  THAT WAS A TOUGH

11:57AM 19   QUESTION.

11:57AM 20       SOMETIMES IN A CASE LIKE THIS, PERHAPS, A JUROR MIGHT SIT

11:57AM 21   HERE AND WILL INFORM US ALL THAT, YOU KNOW, I CAN KEEP THAT OUT

11:57AM 22   OF MY MIND.

11:57AM 23       AND THEN SOMETHING MIGHT COME UP IN THE TRIAL ITSELF, A

11:57AM 24   PIECE OF EVIDENCE, A WITNESS, AND SOMEONE MIGHT SAY, OH, I

11:57AM 25   REMEMBER HEARING ABOUT THAT IN THIS PODCAST, IN THIS MOVIE, AND

| | | |
|---|---|---|
| 11:57AM | 1 | THIS IS DIFFERENT THAN WHAT I HEARD, HOW CAN THAT BE? |
| 11:57AM | 2 | DO YOU UNDERSTAND THAT SCENARIO? |
| 11:57AM | 3 | PROSPECTIVE JUROR:  ABSOLUTELY, YES. |
| 11:57AM | 4 | THE COURT:  AND THAT'S OUR CONCERN HERE IS HOW CAN A |
| 11:57AM | 5 | JUROR, HOW CAN WE ASK A JUROR TO KEEP THAT SEPARATE? |
| 11:57AM | 6 | PROSPECTIVE JUROR:  I ALSO THINK TIME HAS A BIT OF |
| 11:57AM | 7 | AN ADVANTAGE.  MOST OF THE THINGS THAT I PREVIOUSLY SAW WERE, |
| 11:57AM | 8 | YOU KNOW, WELL OVER A YEAR AND A HALF AGO. |
| 11:57AM | 9 | THE COURT:  RIGHT.  OKAY. |
| 11:57AM | 10 | I WANT TO TALK A LITTLE BIT ABOUT YOU HAVE SOME TRAVEL. |
| 11:57AM | 11 | PROSPECTIVE JUROR:  I DO. |
| 11:57AM | 12 | THE COURT:  AND THAT'S FROM THE END OF OCTOBER |
| 11:57AM | 13 | THROUGH THE SECOND WEEK OF NOVEMBER I BELIEVE. |
| 11:57AM | 14 | PROSPECTIVE JUROR:  SO THE OCTOBER TRIP CAN BE |
| 11:58AM | 15 | CANCELLED AND RESCHEDULED, BUT I SENT AN EMAIL ON MONDAY AND I |
| 11:58AM | 16 | DO HAVE A TRIP SCHEDULED FROM DECEMBER 3RD THROUGH THE 13TH. |
| 11:58AM | 17 | THE COURT:  OH, OKAY. |
| 11:58AM | 18 | PROSPECTIVE JUROR:  AND WHEN I COUNTED 13 WEEKS, I |
| 11:58AM | 19 | DIDN'T REALIZE THAT WAS RIGHT AT THE END OF THE TRIAL SCHEDULE. |
| 11:58AM | 20 | THE COURT:  SO, I'M SORRY.  THE OCTOBER TRAVEL? |
| 11:58AM | 21 | PROSPECTIVE JUROR:  COULD BE RESCHEDULED. |
| 11:58AM | 22 | THE COURT:  OKAY.  THANK YOU FOR THAT. |
| 11:58AM | 23 | PROSPECTIVE JUROR:  YES. |
| 11:58AM | 24 | THE COURT:  MR. SCHENK, ANY QUESTIONS? |
| 11:58AM | 25 | MR. SCHENK:  NO, YOUR HONOR. |

| 11:58AM | 1 | MR. DOWNEY:  NO, YOUR HONOR. |
|---------|---|---|

11:58AM 1          MR. DOWNEY:  NO, YOUR HONOR.

11:58AM 2          THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

11:58AM 3        LET'S SEE.  WERE THERE OTHER HANDS?

11:58AM 4        OKAY.  I SEE.

11:58AM 5          PROSPECTIVE JUROR:  I'M JUROR 165.

11:58AM 6          THE COURT:  YES.

11:58AM 7          PROSPECTIVE JUROR:  I HAVE A 5-YEAR OLD SON I NEED

11:58AM 8     TO PICK UP FROM SCHOOL AT 12:30, AND THERE'S NO ONE ELSE THAT

11:58AM 9     CAN GO GET HIM.  I CAN ONLY GET HIM.

11:58AM 10          THE COURT:  I SEE IT'S NOON NOW.  WILL YOU BE ABLE

11:58AM 11     TO RETURN?

11:58AM 12          PROSPECTIVE JUROR:  NO, BECAUSE NO ONE IS ABLE TO

11:59AM 13     PICK HIM UP.  I'M THE ONLY ONE THAT CARES FOR HIM.

11:59AM 14          THE COURT:  IS THAT EVERY DAY, SIR?

11:59AM 15          PROSPECTIVE JUROR:  YEAH.

11:59AM 16          THE COURT:  ALL RIGHT.  THANK YOU.

11:59AM 17        THIS IS MR. RAZO; IS THAT RIGHT?

11:59AM 18          THE CLERK:  YES, JUROR 165.

11:59AM 19          THE COURT:  ALL RIGHT.  WHY DON'T YOU HAND THAT BACK

11:59AM 20     TO YOUR COLLEAGUE.  THANK YOU, MR. RAZO.  HAVE A SEAT.

11:59AM 21        WHERE DO YOU PICK UP YOUR CHILD?

11:59AM 22          PROSPECTIVE JUROR:  MORGAN HILL.

11:59AM 23          THE COURT:  THAT'S A BIT OF A DISTANCE FROM HERE.

11:59AM 24        MR. SCHENK, ANY OBJECTION?

11:59AM 25          MR. SCHENK:  NO OBJECTION.

| | | |
|---|---|---|
| 11:59AM | 1 | MR. DOWNEY:  NO OBJECTION. |
| 11:59AM | 2 | THE COURT:  MR. RAZO, YOU'RE EXCUSED.  DRIVE SAFELY. |
| 11:59AM | 3 | PROSPECTIVE JUROR:  THANK YOU. |
| 11:59AM | 4 | PROSPECTIVE JUROR:  MY NAME IS DANIEL HALL, JUROR |
| 11:59AM | 5 | 167. |
| 11:59AM | 6 | PRIOR TO FILLING OUT THIS QUESTIONNAIRE, I HAD NO |
| 11:59AM | 7 | KNOWLEDGE OF THIS CASE WHATSOEVER, NOT THE NAMES OR NOTHING |
| 11:59AM | 8 | INVOLVED. |
| 11:59AM | 9 | UP UNTIL THIS LAST WEEKEND, AND EVEN THIS MORNING, I SAW |
| 11:59AM | 10 | SOME NEWS ARTICLES COMING THROUGH, JUST THE TITLES ON THE FEED |
| 12:00PM | 11 | AND GOING TO COURT AND THAT KIND OF THING.  I DIDN'T CLICK ON |
| 12:00PM | 12 | THEM.  I DIDN'T GO TO THE STORY OR ANYTHING LIKE THAT. |
| 12:00PM | 13 | SO I DON'T HAVE ANY DETAILS ON THE CASE OR ANYTHING LIKE |
| 12:00PM | 14 | THAT, BUT IT WAS JUST THEY STARTED COMING THROUGH THE NEWS, |
| 12:00PM | 15 | SO -- |
| 12:00PM | 16 | THE COURT:  ALL RIGHT.  THANK YOU.  I APPRECIATE |
| 12:00PM | 17 | THAT. |
| 12:00PM | 18 | YOU KNOW, IT MAY BE THAT I CAN'T ORDER PEOPLE TO -- WELL, |
| 12:00PM | 19 | I CAN ORDER PEOPLE NOT TO READ AND PAY ATTENTION TO THOSE |
| 12:00PM | 20 | THINGS.  I CAN'T TELL YOU HOW TO DO THAT. |
| 12:00PM | 21 | BUT I'M TOLD THAT YOU CAN TURN THESE NEWS FEEDS OFF.  JUST |
| 12:00PM | 22 | LIKE THAT PHONE THAT IS RINGING, YOU CAN TURN THAT OFF.  I'M |
| 12:00PM | 23 | TOLD THAT THEY CAN TURN PHONES OFF LIKE THAT, SO -- |
| 12:00PM | 24 | BUT THAT'S SOMETHING THAT, YOU KNOW, THE JURORS MIGHT |
| 12:00PM | 25 | ENGAGE IN, THAT IS, TO TURN OFF THOSE NEWS FEEDS, AND THAT |

| | | |
|---|---|---|
| 12:00PM | 1 | MIGHT BE OF ASSISTANCE. |
| 12:00PM | 2 | SO THANK YOU.  THANK YOU FOR THAT. |
| 12:00PM | 3 | ANYONE ELSE IN THE BACK? |
| 12:00PM | 4 | WE'RE GOING TO TAKE OUR NOON RECESS NOW, BUT I'D LIKE TO |
| 12:00PM | 5 | FINISH THIS CONVERSATION WITH YOU IF I CAN. |
| 12:00PM | 6 | PROSPECTIVE JUROR:  GOOD AFTERNOON, YOUR HONOR. |
| 12:00PM | 7 | THE COURT:  YES. |
| 12:01PM | 8 | PROSPECTIVE JUROR:  HI.  I'M JUROR 161, |
| 12:01PM | 9 | RONNIE JACOBSON. |
| 12:01PM | 10 | THE COURT:  THANK YOU. |
| 12:01PM | 11 | PROSPECTIVE JUROR:  AS I PUT IN MY QUESTIONNAIRE, I |
| 12:01PM | 12 | DIDN'T -- |
| 12:01PM | 13 | (CELL PHONE RINGING.) |
| 12:01PM | 14 | PROSPECTIVE JUROR:  THAT WAS NOT MY PHONE. |
| 12:01PM | 15 | (LAUGHTER.) |
| 12:01PM | 16 | PROSPECTIVE JUROR:  I DID NOT KNOW MUCH ABOUT THE |
| 12:01PM | 17 | CASE.  I HEARD NAMES AND THINGS, BUT I DIDN'T REALLY PURSUE |
| 12:01PM | 18 | READING ANYTHING. |
| 12:01PM | 19 | SINCE I FILLED OUT THE QUESTIONNAIRE, MY COLLEAGUES AT |
| 12:01PM | 20 | WORK DID KNOW THAT I WAS AT JURY DUTY, SO THEY'VE BEEN TRYING |
| 12:01PM | 21 | TO GUESS. |
| 12:01PM | 22 | FORTUNATELY, I'VE BEEN ON ZOOM SO I DIDN'T HAVE TO -- IT |
| 12:01PM | 23 | WAS EASY TO KIND OF CONCEAL THAT.  BUT YESTERDAY WHEN MY FRIEND |
| 12:01PM | 24 | KNEW I HAD TO COME TODAY, SHE STARTED TEXTING ME LINKS TO |
| 12:01PM | 25 | THINGS, AND SO I JUST SAW A COUPLE OF HEADLINES ABOUT THE JURY |

| | | |
|---|---|---|
| 12:01PM | 1 | SELECTION THAT HAPPENED YESTERDAY AND THINGS LIKE THAT.  SO I |
| 12:01PM | 2 | DIDN'T READ IT AND THAT WAS THE END OF IT. |
| 12:01PM | 3 | THE COURT:  OKAY.  THANK YOU.  THANK YOU. |
| 12:01PM | 4 | I WONDER, IS IT ALSO POSSIBLE TO BLOCK PEOPLE FROM TEXTS? |
| 12:01PM | 5 | (LAUGHTER.) |
| 12:02PM | 6 | THE COURT:  THAT MIGHT BE A SOLUTION.  THANKS. |
| 12:02PM | 7 | WELL, YOU SAW THE HEADLINES? |
| 12:02PM | 8 | PROSPECTIVE JUROR:  IT SAID JURY SELECTION STARTED |
| 12:02PM | 9 | YESTERDAY WAS THE HEADLINE THAT I SAW, AND THEN I SAW THE |
| 12:02PM | 10 | CAMERAS DOWNSTAIRS WHEN I GOT HERE TODAY, SO -- |
| 12:02PM | 11 | THE COURT:  AND THAT'S THE EXTENT OF IT? |
| 12:02PM | 12 | PROSPECTIVE JUROR:  YES. |
| 12:02PM | 13 | THE COURT.  OKAY.  SO IF YOU'RE SEATED AS A JUROR, |
| 12:02PM | 14 | I'LL INSTRUCT YOU THAT YOU'RE NOT TO DISCUSS THE CASE WITH |
| 12:02PM | 15 | ANYONE.  YOU MAY TELL THEM THAT YOU'RE SEATED AS A JUROR IN A |
| 12:02PM | 16 | CASE, BUT YOU'RE NOT TO TALK ABOUT THE CASE AT ALL. |
| 12:02PM | 17 | ARMED WITH THAT, WE CAN GIVE YOU A WRITTEN ORDER IF YOU |
| 12:02PM | 18 | WOULD LIKE TO PUT IT IN FRONT OF YOUR FRIEND. |
| 12:02PM | 19 | (LAUGHTER.) |
| 12:02PM | 20 | PROSPECTIVE JUROR:  YES. |
| 12:02PM | 21 | THE COURT:  THAT MIGHT BE HELPFUL. |
| 12:02PM | 22 | BUT THAT MIGHT ASSIST YOU ALSO AS TO ANY COLLEAGUES WHO |
| 12:02PM | 23 | WANT TO ENGAGE YOU. |
| 12:02PM | 24 | BUT I APPRECIATE YOUR -- YOU KNOW, YOU AND MS. GONZALEZ |
| 12:02PM | 25 | ARE TERRIFIC IN DOING THAT AND AVOIDING THAT CONVERSATION. |

| | | |
|---|---|---|
| 12:02PM | 1 | THANK YOU. |
| 12:02PM | 2 | PROSPECTIVE JUROR:  IS IT POSSIBLE, MAY I ASK A |
| 12:02PM | 3 | QUESTION, PLEASE? |
| 12:02PM | 4 | THE COURT:  ABSOLUTELY, PLEASE. |
| 12:02PM | 5 | PROSPECTIVE JUROR:  I APPRECIATE VERY MUCH THAT YOU |
| 12:02PM | 6 | LET EVERYONE KNOW THAT EVERYONE IN HERE IS VACCINATED, BUT IF |
| 12:02PM | 7 | YOU SAW MY QUESTIONNAIRE, I WROTE SEVERAL TIMES HOW CONCERNED I |
| 12:03PM | 8 | AM ABOUT BEING IN AN ENCLOSED ROOM.  THIS IS THE MOST PEOPLE |
| 12:03PM | 9 | THAT I'VE BEEN WITH IN A YEAR AND A HALF, AND THE FACT THAT IT |
| 12:03PM | 10 | HAS HAPPENED TWICE NOW IN TWO WEEKS HAS ME VERY, VERY ANXIOUS, |
| 12:03PM | 11 | AND SO -- |
| 12:03PM | 12 | THE COURT:  YES. |
| 12:03PM | 13 | PROSPECTIVE JUROR:  -- SO I APPRECIATE ALL OF THE |
| 12:03PM | 14 | LENGTHS THAT YOU DESCRIBED IN TERMS OF TRYING TO KEEP US SAFE, |
| 12:03PM | 15 | BUT I DON'T KNOW THAT I CAN BE COMFORTABLE AT ALL. |
| 12:03PM | 16 | I MEAN, I'VE BEEN IN MY HOUSE AND WORKING FROM HOME.  I |
| 12:03PM | 17 | HAVE A SON WHO IS IN HIGH SCHOOL, AND THANKFULLY HE WAS ABLE TO |
| 12:03PM | 18 | GO BACK, AND I'M WORRIED AND I JUST -- |
| 12:03PM | 19 | THE COURT:  SURE.  IS YOUR SON VACCINATED? |
| 12:03PM | 20 | PROSPECTIVE JUROR:  HE IS, YES.  WE'RE ALL |
| 12:03PM | 21 | VACCINATED. |
| 12:03PM | 22 | AND A COLLEAGUE AT WORK WAS VACCINATED AND SHE AND HER |
| 12:03PM | 23 | PARENTS BOTH GOT SICK, AND SHE WAS SICK LAST WEEK, AND SO -- |
| 12:03PM | 24 | THE COURT:  RIGHT. |
| 12:03PM | 25 | PROSPECTIVE JUROR:  SO THREE MONTHS AGO MAYBE I |

| | | |
|---|---|---|
| 12:03PM | 1 | WOULD HAVE FELT A LITTLE BIT BETTER AFTER THE INITIAL WE ALL |
| 12:03PM | 2 | GOT VACCINATED AND WE SORT OF HAD HOPE. |
| 12:03PM | 3 | BUT THE LAST, YOU KNOW, SIX WEEKS ARE -- I'M KIND OF |
| 12:04PM | 4 | SHAKEN, AND I'VE NEVER TRIED TO GET OUT OF JURY DUTY BEFORE |
| 12:04PM | 5 | BECAUSE I BELIEVE IN IT. |
| 12:04PM | 6 | BUT I'VE NEVER BEEN IN A PANDEMIC BEFORE, AND THE THOUGHT |
| 12:04PM | 7 | OF HAVING TO BE IN A ROOM LIKE THIS WITH THIS MANY PEOPLE THREE |
| 12:04PM | 8 | DAYS A WEEK FOR 13 WEEKS, QUITE HONESTLY, I DON'T KNOW THAT I |
| 12:04PM | 9 | CAN DO THAT. |
| 12:04PM | 10 | THE COURT:  THANK YOU.  I EXPECT THAT ONCE WE GET |
| 12:04PM | 11 | OUR JURY SEATED, CERTAINLY THE NUMBERS ON YOUR SIDE OF THE ROOM |
| 12:04PM | 12 | I THINK WILL DIMINISH GREATLY.  THAT'S MY UNDERSTANDING. |
| 12:04PM | 13 | BUT THANK YOU FOR SHARING THAT WITH ME. |
| 12:04PM | 14 | ANY QUESTIONS, MR. SCHENK? |
| 12:04PM | 15 | MR. SCHENK:  NO, YOUR HONOR. |
| 12:04PM | 16 | MR. DOWNEY:  NO, YOUR HONOR. |
| 12:04PM | 17 | THE COURT:  THANK YOU. |
| 12:04PM | 18 | WAS THERE ONE MORE INDIVIDUAL? |
| 12:04PM | 19 | YES, LET'S -- IS THIS MS. CHEN? |
| 12:04PM | 20 | PROSPECTIVE JUROR:  YES. |
| 12:04PM | 21 | THE COURT:  YES? |
| 12:04PM | 22 | PROSPECTIVE JUROR:  I PREVIOUSLY WATCHED SOME |
| 12:04PM | 23 | YOUTUBE VIDEOS ABOUT THIS CASE ABOUT I'D SAY, LIKE, SIX MONTHS |
| 12:04PM | 24 | AGO, AND I SORT OF FELL DOWN THE RABBIT HOLE BACK THEN.  I HAVE |
| 12:04PM | 25 | A HABIT OF WATCHING A LOT OF DOCUMENTARIES, AND I BELIEVE THAT |

12:04PM   1    I WATCHED EITHER THE "20/20" OR THE "60 MINUTES" DOCUMENTARY ON

12:05PM   2    IT, AND SO I'M SOMEWHAT FAMILIAR WITH THE CASE.

12:05PM   3         I DO HAPPEN TO REMEMBER THE DETAILS ABOUT SORT OF WHAT

12:05PM   4    HAPPENED, AND ALSO THE FIRST VIDEO THAT I WATCHED, SPECIFICALLY

12:05PM   5    THE PERSON WAS A BIT MORE OPINIONATED AND NOT LINKED TO ANY

12:05PM   6    JOURNAL NATIONALISM, AND SO THEY WERE PURELY STATING OPINIONS

12:05PM   7    EXPLICITLY STATING THAT --

12:05PM   8              THE COURT:  PARDON ME FOR INTERRUPTING YOU, FIRST OF

12:05PM   9    ALL.

12:05PM  10         SO WAS IT A "20/20" THAT YOU SAW, I THINK?  IS THAT WHAT

12:05PM  11    YOU SAID?

12:05PM  12              PROSPECTIVE JUROR:  I'M NOT TOO SURE.  I TEND TO

12:05PM  13    WATCH THINGS, EVERYTHING ON TIMES 2.  SO I WATCH A LOT OF

12:05PM  14    VIDEOS.  IT WAS EITHER A "20/20" DOCUMENTARY OR "60 MINUTES."

12:05PM  15    I DON'T REALLY LOOK AT THE TITLES OF VIDEOS SOMETIMES.

12:05PM  16              THE COURT:  ALL RIGHT.  OKAY.  THANK YOU FOR THAT.

12:06PM  17         LET ME ASK YOU TO PASS THE MICROPHONE TO I THINK IT'S THE

12:06PM  18    LAST PERSON THERE.  IT'S JUST BEHIND YOU THERE.

12:06PM  19         OH, THERE'S MORE THAN --

12:06PM  20              PROSPECTIVE JUROR:  I'M JUROR 164.

12:06PM  21              THE COURT:  YES, MS. QUINTANILLA?

12:06PM  22              PROSPECTIVE JUROR:  YES.

12:06PM  23              THE COURT:  YES.  THANK YOU.

12:06PM  24              PROSPECTIVE JUROR:  AFTER THE QUESTIONNAIRE, I TRY

12:06PM  25    NOT TO TALK TO ANYBODY, INCLUDING MY FAMILY.  BUT LAST NIGHT MY

368

12:06PM  1    HUSBAND WAS WATCHING THE EVENING NEWS AND THE JURY SELECTION

12:06PM  2    COMMENT CAME ACROSS.

12:06PM  3         AND MY SON DID ASK ME, MOM, BY ANY CHANCE IS THIS CASE THE

12:06PM  4    ONE THAT YOU'RE POTENTIALLY IN THE JURY?

12:06PM  5         AND I SAID I COULD NOT DISCLOSE THAT, AND I KNOW IT WOULD

12:06PM  6    BE VERY DISRESPECTFUL IF I WERE TO TELL THEM THAT I'M PART OF

12:07PM  7    THIS CASE.

12:07PM  8         PRIOR TO THE QUESTIONNAIRE I DID WATCH -- I DON'T REMEMBER

12:07PM  9    IF IT WAS A T.V. SHOW OR A DOCUMENTARY, BUT IT WAS YEARS AGO

12:07PM  10   AND IT WAS REGARDING THE CASE.

12:07PM  11        AND I DIDN'T REALIZE UNTIL I WAS ANSWERING THE

12:07PM  12   QUESTIONNAIRE THAT I ALREADY HAD, LIKE, A LITTLE BIT OF A --

12:07PM  13   NOT A LITTLE BIT, BUT I ALREADY HAD BEEN TO AN EXTENT EXPOSED,

12:07PM  14   BUT I DIDN'T REMEMBER THE NAMES OR THE COMPANY, BUT I REMEMBER

12:07PM  15   WHAT IT WAS ABOUT AND IT WAS ABOUT TESTING.

12:07PM  16             THE COURT:  OKAY.

12:07PM  17             PROSPECTIVE JUROR:  I THINK I CAN FOLLOW DIRECTIONS

12:07PM  18   AND BE FAIR AND BE OBJECTIVE FOR THE ENTIRE PROCESS.

12:08PM  19             THE COURT:  THANK YOU.  THANK YOU VERY MUCH.

12:08PM  20        MS. QUINTANILLA, I ALSO SEE THAT YOU'RE TRAVELLING --

12:08PM  21             PROSPECTIVE JUROR:  I'M TRAVELLING --

12:08PM  22             THE COURT:  -- THIS WEEKEND.

12:08PM  23             PROSPECTIVE JUROR:  -- TOMORROW AND COMING BACK THIS

12:08PM  24   WEEKEND, AND THAT'S THE ONLY TRAVELLING I WILL BE DOING PLANNED

12:08PM  25   AS OF NOW.

| | | |
|---|---|---|
| 12:08PM | 1 | THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU VERY |
| 12:08PM | 2 | MUCH.  THANK YOU. |
| 12:08PM | 3 | AND THERE WAS ONE OTHER PERSON I THINK. |
| 12:08PM | 4 | IS THAT MS. DOMINGUEZ? |
| 12:08PM | 5 | PROSPECTIVE JUROR:  YES, IT IS, 211. |
| 12:08PM | 6 | THE COURT:  YES.  THANK YOU. |
| 12:08PM | 7 | PROSPECTIVE JUROR:  SAME AS HER.  CAN YOU HEAR ME? |
| 12:08PM | 8 | THE COURT:  YES. |
| 12:08PM | 9 | PROSPECTIVE JUROR:  PRIOR TO THE QUESTIONNAIRE I DID |
| 12:08PM | 10 | KNOW ABOUT THE CASE, BUT I DIDN'T REMEMBER WHEN I WAS FILLING |
| 12:09PM | 11 | OUT THE QUESTIONNAIRE, BUT I DID SEE IT AGAIN LAST NIGHT ON THE |
| 12:09PM | 12 | NEWS. |
| 12:09PM | 13 | THE COURT:  WHAT DID YOU SEE ON THE NEWS? |
| 12:09PM | 14 | PROSPECTIVE JUROR:  JURY SELECTION STARTED |
| 12:09PM | 15 | YESTERDAY. |
| 12:09PM | 16 | THE COURT:  OKAY.  ANYTHING ELSE? |
| 12:09PM | 17 | PROSPECTIVE JUROR:  I'M GOING ON VACATION TOMORROW |
| 12:09PM | 18 | AND COMING BACK THE 10TH, AND I DON'T THINK I STATED THAT ON |
| 12:09PM | 19 | THERE. |
| 12:09PM | 20 | THE COURT:  NO, I DON'T THINK YOU DID. |
| 12:09PM | 21 | AND IS THIS -- IS THIS TRAVEL OF A GREAT DISTANCE? |
| 12:09PM | 22 | PROSPECTIVE JUROR:  NOT A GREAT DISTANCE. |
| 12:09PM | 23 | THE COURT:  IS THIS SOMETHING THAT CAN BE |
| 12:09PM | 24 | RESCHEDULED? |
| 12:09PM | 25 | PROSPECTIVE JUROR:  NO.  I WORK FOR THE SUPERIOR |

| | | |
|---|---|---|
| 12:09PM | 1 | COURT FOR 21 YEARS AND I -- |
| 12:09PM | 2 | THE COURT:  SANTA CLARA SUPERIOR COURT? |
| 12:09PM | 3 | PROSPECTIVE JUROR:  SANTA CLARA. |
| 12:09PM | 4 | THE COURT:  YES. |
| 12:09PM | 5 | PROSPECTIVE JUROR:  AND EVERY YEAR WE HAVE TO PUT IN |
| 12:09PM | 6 | OUR BIDS AND SO I PUT IT IN LAST YEAR. |
| 12:09PM | 7 | THE COURT:  YOU KNOW, I HAVE SOME FAMILIARITY WITH |
| 12:09PM | 8 | THAT, I THINK. |
| 12:09PM | 9 | (LAUGHTER.) |
| 12:09PM | 10 | THE COURT:  I RECALL THAT THE CLERKS OF THE COURT, |
| 12:09PM | 11 | YOU DO HAVE A BIDDING PROCESS THAT YOU HAVE TO GO THROUGH. |
| 12:10PM | 12 | PROSPECTIVE JUROR:  YES. |
| 12:10PM | 13 | THE COURT:  AND THEN WHOEVER IT IS APPROVES IT AND |
| 12:10PM | 14 | THAT'S WHAT YOU GET. |
| 12:10PM | 15 | PROSPECTIVE JUROR:  YES. |
| 12:10PM | 16 | THE COURT:  AND IF YOU DON'T USE IT, YOU LOSE IT, I |
| 12:10PM | 17 | GUESS, IF YOU'LL PARDON ME FOR PUTTING IT THAT WAY. |
| 12:10PM | 18 | IS THAT RIGHT? |
| 12:10PM | 19 | PROSPECTIVE JUROR:  WE DON'T LOSE THE HOURS.  WE |
| 12:10PM | 20 | DON'T LOSE THE HOURS. |
| 12:10PM | 21 | THE COURT:  RIGHT.  BUT YOU HAVE TO TRADE WITH |
| 12:10PM | 22 | SOMEONE IF YOU MISS THAT DAY?  IS THAT HOW IT WORKS? |
| 12:10PM | 23 | PROSPECTIVE JUROR:  YES. |
| 12:10PM | 24 | THE COURT:  RIGHT. |
| 12:10PM | 25 | PROSPECTIVE JUROR:  AND IT IS ALREADY TOMORROW. |

| | | |
|---|---|---|
| 12:10PM | 1 | THE COURT:  IT IS TOMORROW.  OKAY.  THANK YOU. |
| 12:10PM | 2 | (LAUGHTER.) |
| 12:10PM | 3 | THE COURT:  ANY QUESTIONS FOR MS. DOMINGUEZ? |
| 12:10PM | 4 | MR. SCHENK:  NO, YOUR HONOR. |
| 12:10PM | 5 | MR. DOWNEY:  NO, YOUR HONOR. |
| 12:10PM | 6 | THE COURT:  THANK YOU, MS. DOMINGUEZ: |
| 12:10PM | 7 | LET ME -- |
| 12:10PM | 8 | PROSPECTIVE JUROR:  HI, YOUR HONOR. |
| 12:10PM | 9 | THE COURT:  I'M SORRY. |
| 12:10PM | 10 | PROSPECTIVE JUROR:  I'M IN THE BACK CORNER.  220. |
| 12:10PM | 11 | THE COURT:  OH, THAT'S MR. WAXMAN.  THERE WE ARE. |
| 12:10PM | 12 | PROSPECTIVE JUROR:  HERE I AM. |
| 12:10PM | 13 | THE COURT:  YES. |
| 12:10PM | 14 | PROSPECTIVE JUROR:  SO BY NATURE OF MY PROFESSION |
| 12:10PM | 15 | AND MY EDUCATION, MEDIA IS SOMETHING THAT I CONSUME |
| 12:10PM | 16 | VORACIOUSLY, SO I'VE BEEN READING, WATCHING PARTICULARLY |
| 12:11PM | 17 | BUSINESS NEWS AND PARTICULARLY SILICON VALLEY NEWS FOR MOST OF |
| 12:11PM | 18 | MY CAREER, AND I'VE READ ARTICLES MOSTLY CONTEMPORANEOUSLY AS |
| 12:11PM | 19 | THE COMPANY WAS ANNOUNCED AND SUCCESSFUL. |
| 12:11PM | 20 | AND THEN AFTER THAT I'M NOT AS FAMILIAR WITH THE |
| 12:11PM | 21 | DOCUMENTARY KINDS OF THINGS THAT HAPPENED AFTERWARDS. |
| 12:11PM | 22 | BUT I WAS VERY FAMILIAR DURING THE TIME.  SO I DON'T KNOW |
| 12:11PM | 23 | HOW MANY ARTICLES THAT I READ, INCLUDING BECAUSE I HAVE -- I |
| 12:11PM | 24 | ALSO ADVISE A LOT OF EARLY START-UP COMPANIES AND WORK WITH |
| 12:11PM | 25 | INVESTORS AND V.C.'S.  IT WAS KIND OF A CONVERSATIONAL, I DON'T |

| | | |
|---|---|---|
| 12:11PM | 1 | KNOW, CONTACT PARTY CONVERSATION, IF YOU WILL, FOR QUITE SOME |
| 12:11PM | 2 | TIME DURING THE TIME THAT IT ACTUALLY REALLY HAPPENED, NOT |
| 12:11PM | 3 | RECENTLY. |
| 12:11PM | 4 | YEAH, SO I HAVE A CONSIDERABLE BOTH AMOUNT OF INFORMATION |
| 12:12PM | 5 | AND PRECONCEIVED OPINION ON THE SUBJECT. |
| 12:12PM | 6 | THE COURT:  THANK YOU. |
| 12:12PM | 7 | NOW, TELL US WHAT YOU CAN DO TO PUT ALL OF THAT ASIDE IF |
| 12:12PM | 8 | YOU'RE SEATED AS A JUROR IN THIS CASE AND TO DECIDE THE CASE |
| 12:12PM | 9 | ONLY ON THE EVIDENCE IN THIS COURTROOM? |
| 12:12PM | 10 | IS THAT SOMETHING THAT YOU CAN DO, MR. WAXMAN? |
| 12:12PM | 11 | PROSPECTIVE JUROR:  AND THAT'S A REALLY HARD |
| 12:12PM | 12 | QUESTION AND I THOUGHT ABOUT THAT AND THERE ARE TWO THINGS THAT |
| 12:12PM | 13 | I FIND CONFLICTING FOR ME. |
| 12:12PM | 14 | ONE IS THAT I DO THINK I'M A VERY OBJECTIVE PERSON.  I DO |
| 12:12PM | 15 | THINK THAT I CAN LOOK AT INFORMATION OBJECTIVELY AND MAKE THAT |
| 12:12PM | 16 | KIND OF A DECISION. |
| 12:12PM | 17 | BUT I'LL ALSO SAY THAT HAD SOMEONE IN THIS COURTROOM |
| 12:12PM | 18 | WALKED UP TO ME A WEEK AGO AND, KNOWING WHAT THIS WAS ABOUT, |
| 12:12PM | 19 | AND ASKED, HEY, DO YOU KNOW ANYTHING ABOUT THIS, I WOULD HAVE |
| 12:12PM | 20 | BEEN VERY UNAMBIGUOUS ON MY OPINION ON THE SUBJECT BECAUSE IT'S |
| 12:12PM | 21 | STRONG. |
| 12:12PM | 22 | SO I'M A HUMAN BEING.  I CAN DO MY BEST TO BE OBJECTIVE, |
| 12:12PM | 23 | BUT I HAVE A STRONG OPINION. |
| 12:13PM | 24 | THE COURT:  OKAY.  THANK YOU FOR THAT.  ALL RIGHT. |
| 12:13PM | 25 | THANK YOU.  I APPRECIATE THAT. |

12:13PM   1          LET'S PASS THE MICROPHONE UP.

12:13PM   2          I THINK MS. COMILANG WANTS TO BE HEARD, SO LET'S GET THAT

12:13PM   3    TO HER, AND THEN WE'LL END WITH MR. CHATHAM, YES.

12:13PM   4          THIS IS JUROR NUMBER 124, MS. COMILANG.

12:13PM   5               PROSPECTIVE JUROR:  IT'S NOT RELATED TO THE

12:13PM   6    IMMEDIATE, BUT I HAVE TO PICK UP MY TWO DAUGHTERS TODAY AT 1:00

12:13PM   7    AND 1:30.  IF I COULD BE EXCUSED?

12:13PM   8               THE COURT:  AND IS THIS EVERY DAY YOU PICK THEM UP?

12:13PM   9               PROSPECTIVE JUROR:  YEAH, EVERY WEDNESDAY AND

12:13PM  10    THURSDAY.

12:13PM  11               THE COURT:  AND WHAT HAVE YOU DONE TO ARRANGE FOR

12:13PM  12    OTHER TRANSPORTATION FOR THEM SINCE YOU WERE SUMMONED FOR JURY

12:14PM  13    SERVICE?

12:14PM  14               PROSPECTIVE JUROR:  THERE'S NOBODY WHO CAN PICK UP

12:14PM  15    MY KIDS, BECAUSE MY HUSBAND HAS TO GO TO WORK UNTIL

12:14PM  16    3:00 O'CLOCK OR 2:30, 2:30, 3:00, SO --

12:14PM  17               THE COURT:  AND WHERE DO YOU PICK THEM UP?

12:14PM  18               PROSPECTIVE JUROR:  I PICK THEM UP AT PIEDMONT HIGH

12:14PM  19    SCHOOL AND MIDDLE SCHOOL.

12:14PM  20               THE COURT:  PIEDMONT.  AND DO YOU PICK THEM UP OR

12:14PM  21    TAKE THEM HOME?

12:14PM  22               PROSPECTIVE JUROR:  YEAH, I HAVE TO PICK THEM UP AND

12:14PM  23    TAKE THEM HOME.

12:14PM  24               THE COURT:  AND HOW OLD ARE YOUR CHILDREN?  WHAT ARE

12:14PM  25    THEIR AGES?

374

12:14PM   1          PROSPECTIVE JUROR:  THEY ARE 11 AND 15, AND I HAVE

12:14PM   2   ONE UNVACCINATED, SO --

12:14PM   3          THE COURT:  ALL RIGHT.  THANK YOU FOR SHARING THAT.

12:14PM   4      ANY QUESTIONS, MR. SCHENK?

12:14PM   5          MR. SCHENK:  NO, YOUR HONOR.

12:14PM   6          MR. DOWNEY:  NO, YOUR HONOR.

12:14PM   7          THE COURT:  ALL RIGHT.  PLEASE HAND THAT TO

12:14PM   8   MR. CHATHAM.

12:14PM   9          PROSPECTIVE JUROR:  I NEGLECTED TO PUT IN THE

12:14PM  10   QUESTIONNAIRE ABOUT SOME PLANNED TRIPS, AND SINCE YOU'RE ASKING

12:14PM  11   ABOUT THAT, I THOUGHT I WOULD BRING IT UP.

12:15PM  12          THE COURT:  WHAT WOULD YOU LIKE ME TO KNOW?

12:15PM  13          PROSPECTIVE JUROR:  WE HAVE THE FIRST VACATION

12:15PM  14   PLANNED IN TWO YEARS TO GO TO EUROPE TO SEE MY DAUGHTER FOR,

12:15PM  15   LIKE, EIGHT DAYS AT THE END OF -- OR AT THE BEGINNING OF -- END

12:15PM  16   OF OCTOBER, BEGINNING OF NOVEMBER, WHICH WE'VE ALREADY PAID FOR

12:15PM  17   THE HOTEL AND THE FLIGHT, SO --

12:15PM  18          THE COURT:  TELL ME THOSE DATES AGAIN.

12:15PM  19          PROSPECTIVE JUROR:  THAT WOULD BE -- WE'RE LEAVING

12:15PM  20   SUNDAY, THE 24TH OF OCTOBER, AND WE'RE RETURNING ON TUESDAY,

12:15PM  21   NOVEMBER 2ND.

12:15PM  22          THE COURT:  ALL RIGHT.  THANK YOU.

12:15PM  23      ANYTHING ELSE?

12:15PM  24          PROSPECTIVE JUROR:  THERE IS A SHORTER TRIP COMING

12:15PM  25   UP.  MY MOTHER-IN-LAW'S 90TH BIRTHDAY IS COMING UP AND WE ARE

12:15PM 1     GOING DOWN TO SAN DIEGO, JUST DRIVING.  I CAN MAKE SOME

12:15PM 2     ARRANGEMENTS FOR THAT, BUT THAT'S THE 1ST THROUGH THE 5TH OF

12:15PM 3     OCTOBER.

12:15PM 4             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU VERY MUCH.

12:15PM 5     THANK YOU FOR LETTING ME KNOW THAT.

12:16PM 6         LADIES AND GENTLEMEN, I'VE KEPT YOU PAST THE NOON HOUR, SO

12:16PM 7     WE'RE GOING TO TAKE OUR LUNCH BREAK NOW, AND THANK YOU FOR YOUR

12:16PM 8     PATIENCE.  I HAVE MORE QUESTIONS FOR YOU.

12:16PM 9         I REALIZE I TOOK A LOT OF TIME.  IT'S IMPORTANT FOR ME TO

12:16PM 10    KNOW AND THESE LAWYERS TO KNOW THIS INFORMATION THAT WE TALKED

12:16PM 11    ABOUT, SPECIFICALLY INFORMATION THAT YOU HAVE HAD ABOUT THE

12:16PM 12    ISSUES IN THIS CASE AND WHAT TO DO WITH THEM.

12:16PM 13        LET'S -- CAN WE HAVE -- I'D LIKE TO GET STARTED --

12:16PM 14        IF WE CAN -- MS. KRATZMANN, DO YOU THINK IT WOULD BE

12:16PM 15    POSSIBLE TO HAVE OUR JURORS UP HERE BY 1:40?  IS THAT POSSIBLE?

12:16PM 16            THE CLERK:  YES, YOUR HONOR.  IF THEY COULD COLLECT

12:16PM 17    AND RETURN FROM LUNCH NO LATER THAN 1:15.

12:16PM 18            THE COURT:  SURE.  SO WE HOPE WE CAN SEAT EVERYONE

12:16PM 19    AND START BY A QUARTER TO THE HOUR.  SO LET'S TRY, AND LET'S

12:16PM 20    SHOOT FOR THAT, FOLKS.

12:16PM 21        AND LET ME TELL YOU, DURING YOUR BREAK YOU'RE NOT TO

12:17PM 22    DISCUSS THE CASE WITH ANYONE.  YOU'RE NOT TO READ, LISTEN TO,

12:17PM 23    OBSERVE ANY NEWS STORIES, RADIO PROGRAMS ABOUT THIS CASE.

12:17PM 24    YOU'RE NOT TO DISCUSS IT AMONGST YOURSELVES IN ANY WAY AT ALL.

12:17PM 25    AND THAT WILL REMAIN IN PLACE UNTIL YOU'RE RELEASED OR

| | | |
|---|---|---|
| 12:17PM | 1 | OTHERWISE EXCUSED. |
| 12:17PM | 2 | ANYONE HAVE ANY QUESTION ABOUT THAT? |
| 12:17PM | 3 | I SEE NO HANDS. |
| 12:17PM | 4 | PROSPECTIVE JUROR:  DO WE COME TO THE DOOR? |
| 12:17PM | 5 | THE COURT:  YOU'LL COLLECT YOURSELVES DOWNSTAIRS ON |
| 12:17PM | 6 | THE SECOND FLOOR IN THE JURY ASSEMBLY ROOM IF YOU WOULD, |
| 12:17PM | 7 | PLEASE. |
| 12:17PM | 8 | PROSPECTIVE JUROR:  TIME? |
| 12:17PM | 9 | THE CLERK:  IF YOU COULD RETURN TO THE JURY ROOM NO |
| 12:17PM | 10 | LATER THAN 1:20, AND THEN YOU WILL GET WORD TO COME UP.  DO NOT |
| 12:17PM | 11 | COME UP DIRECTLY HERE.  HOPEFULLY -- IT TAKES TIME TO GET |
| 12:17PM | 12 | THROUGH THE ELEVATORS, AND WE CAN SEAT YOU BY 1:40. |
| 12:17PM | 13 | THE COURT:  THANK YOU, FOLKS.  HAVE A GOOD LUNCH. |
| 12:17PM | 14 | COUNSEL, IF YOU COULD REMAIN, PLEASE. |
| 12:17PM | 15 | (PROSPECTIVE JURY PANEL OUT AT 12:17 P.M.) |
| 12:19PM | 16 | THE COURT:  PLEASE BE SEATED.  I'M SORRY.  THANK |
| 12:19PM | 17 | YOU. |
| 12:19PM | 18 | THE RECORD SHOULD REFLECT THAT OUR JURY -- OUR PROSPECTIVE |
| 12:19PM | 19 | PANEL HAS LEFT THE ROOM.  ALL COUNSEL ARE PRESENT.  MS. HOLMES |
| 12:19PM | 20 | IS PRESENT. |
| 12:19PM | 21 | I WANTED TO DISCUSS SOME OF THE JURORS HERE AND GO OVER |
| 12:19PM | 22 | WHAT YOUR THOUGHTS ARE. |
| 12:19PM | 23 | JUROR NUMBER 32, MR. NGO, AND JUROR NUMBER 102, |
| 12:19PM | 24 | MR. GOLDBERG, COME TO MIND FIRST. |
| 12:19PM | 25 | MR. SCHENK:  YOUR HONOR, MR. NGO IS 172. |

| | | |
|---|---|---|
| 12:19PM | 1 | THE COURT: YOU'RE RIGHT. THANK YOU. IT'S 172. |
| 12:20PM | 2 | ANY COMMENTS ABOUT THIS JUROR? HE INDICATED HE DROPS OFF |
| 12:20PM | 3 | HIS KIDS AND WIFE DAILY. HE TAKES HIS WIFE I THINK AT |
| 12:20PM | 4 | 8:00 A.M. AND HIS CHILDREN AT NOON. |
| 12:20PM | 5 | MR. SCHENK: NO OBJECTION. |
| 12:20PM | 6 | MR. DOWNEY: AND NO OBJECTION AS TO THIS JUROR. |
| 12:20PM | 7 | AND AS TO MR. GOLDBERG, LET US TALK AT LUNCH AND I CAN LET |
| 12:20PM | 8 | YOUR HONOR KNOW BEFORE THE JURY RETURNS. |
| 12:20PM | 9 | THE COURT: OKAY. |
| 12:20PM | 10 | THE CLERK: OKAY. I'M SORRY, YOUR HONOR. CAN I GET |
| 12:20PM | 11 | CLARIFICATION OF THE JUROR THAT WAS JUST EXCUSED? |
| 12:20PM | 12 | THE COURT: 172, MR. NGO, AND HE'S EXCUSED FOR |
| 12:20PM | 13 | HARDSHIP. |
| 12:20PM | 14 | AND THEN 102 IS MR. GOLDBERG. |
| 12:20PM | 15 | MR. SCHENK: WE BELIEVE HE SHOULD BE EXCUSED FOR |
| 12:20PM | 16 | CAUSE. |
| 12:20PM | 17 | MR. DOWNEY: YOUR HONOR, LET US TALK. HE DOES SEEM |
| 12:20PM | 18 | TO HAVE A DIFFICULT SITUATION, SO WE'LL -- |
| 12:20PM | 19 | THE COURT: IT DOES TO ME, TOO. I'M INCLINED TO DO |
| 12:20PM | 20 | THAT. |
| 12:20PM | 21 | I DON'T WANT TO DISCOURAGE YOUR CONVERSATION, BUT HE |
| 12:20PM | 22 | TRAVELS FOR HIS FATHER. |
| 12:21PM | 23 | HE TOLD US ABOUT READING SOME ARTICLES AND KNOWING A |
| 12:21PM | 24 | WITNESS, THAT TYPE OF THING. |
| 12:21PM | 25 | BUT I'M INCLINED TO EXCUSE HIM FOR CAUSE JUST BASED ON THE |

| | | |
|---|---|---|
| 12:21PM | 1 | HEALTH ISSUE OF HIS FATHER. |
| 12:21PM | 2 | MR. DOWNEY:  I UNDERSTAND, YOUR HONOR.  IF YOU DO |
| 12:21PM | 3 | SO, THAT'S FINE. |
| 12:21PM | 4 | THE COURT:  THANK YOU.  LET'S EXCUSE JUROR NUMBER |
| 12:21PM | 5 | 102, MR. GOLDBERG, FOR HARDSHIP. |
| 12:21PM | 6 | LET ME DRAW YOUR ATTENTION TO JUROR 116.  THAT'S |
| 12:21PM | 7 | MS. NELSON. |
| 12:21PM | 8 | MY QUESTION ABOUT MS. NELSON WAS HER COMMENTS ABOUT HER |
| 12:21PM | 9 | HUSBAND BEING A SCIENTIST AND IN THE FIELD AND HER COMMENTS |
| 12:22PM | 10 | ABOUT THAT. |
| 12:22PM | 11 | WE KNOW SHE'S AN ATTORNEY.  SHE DEALS IN DOMESTIC VIOLENCE |
| 12:22PM | 12 | ISSUES.  BUT WHAT I'M MORE INTERESTED IN AND CONCERNED ABOUT IS |
| 12:22PM | 13 | HER CONTACT WITH HER HUSBAND. |
| 12:22PM | 14 | MR. SCHENK? |
| 12:22PM | 15 | MR. SCHENK:  YOUR HONOR, I WROTE DOWN THAT SHE SAID |
| 12:22PM | 16 | THAT HER HUSBAND'S OPINIONS ON THE SCIENCE WOULD WEIGH ON HER, |
| 12:22PM | 17 | AND I THINK THAT EXCUSING HER FOR CAUSE WOULD BE APPROPRIATE. |
| 12:22PM | 18 | MR. DOWNEY:  WE AGREE, YOUR HONOR. |
| 12:22PM | 19 | THE COURT:  THANK YOU.  WE'LL EXCUSE JUROR NUMBER |
| 12:22PM | 20 | 116 FOR CAUSE.  THE COURT FINDS THAT SHE WAS VERY CANDID ABOUT |
| 12:22PM | 21 | THE INFLUENCE THAT HER HUSBAND'S OPINIONS WOULD HAVE ON HER. |
| 12:22PM | 22 | JUROR NUMBER 13 -- EXCUSE ME -- 122, MS. PARODI, I THINK |
| 12:22PM | 23 | SHE EXPRESSED CHILDCARE ISSUES.  I WROTE IN MY NOTES FINANCIAL. |
| 12:23PM | 24 | MR. SCHENK? |
| 12:23PM | 25 | MR. SCHENK:  I HAVE THE SAME THING IN MY NOTES ALSO, |

12:23PM  1   COVID AND CHILDCARE CONCERNS, AND THEN AGAIN CHILDCARE CONCERNS

12:23PM  2   BECAUSE SHE WAS THE PRIMARY CAREGIVER.

12:23PM  3        NO OBJECTION TO HARDSHIP.

12:23PM  4            MR. DOWNEY:  SHE APPEARED TO HAVE NO SUBSTITUTE TO

12:23PM  5   TAKE CARE OF THE CHILDREN, SO WE AGREE THAT'S A HARDSHIP.

12:23PM  6        I THINK SHE ALSO INDICATED THAT SHE HAD A TRIP.

12:23PM  7            THE COURT:  THAT'S RIGHT.  THAT'S RIGHT.  MORE

12:23PM  8   IMPORTANTLY, SHE HAS A PRECOCIOUS 16-YEAR-OLD SON THAT REQUIRES

12:23PM  9   SOME ATTENTION, SO WE'LL EXCUSE MS. PARODI FOR HARDSHIP.

12:23PM 10        THAT BRINGS ME TO 160, MS. VANDEKAMP.  SHE SAW THE

12:23PM 11   DOCUMENTARY.  SHE SHARED WITH US HER VIEWS ON THAT.

12:23PM 12        BUT MORE IMPORTANTLY, SHE'S TRAVELLING TO CHICAGO, AND SHE

12:23PM 13   TOLD US THAT HER PRESENCE IS REQUIRED THERE FROM SEPTEMBER 20TH

12:24PM 14   TO THE 28TH I THINK SHE TOLD US.

12:24PM 15            MR. SCHENK:  NO OBJECTION TO HARDSHIP.

12:24PM 16            MR. DOWNEY:  NO OBJECTION.

12:24PM 17            THE COURT:  ALL RIGHT.  THANK YOU.  WE'LL EXCUSE

12:24PM 18   JUROR NUMBER 160, MS. VANDEKAMP.

12:24PM 19        MS. COMILANG, JUROR NUMBER 124, DID WE EXCUSE HER?

12:24PM 20            THE CLERK:  NOT YET, YOUR HONOR.

12:24PM 21            THE COURT:  SHE HAS CHILDCARE ISSUES THAT SHE TOLD

12:24PM 22   US ABOUT FROM PIEDMONT HIGH SCHOOL, I THINK.

12:24PM 23        MR. SCHENK?

12:25PM 24            MR. SCHENK:  NO OBJECTION TO HARDSHIP, YOUR HONOR.

12:25PM 25            MR. DOWNEY:  NO OBJECTION.

12:25PM 1          THE COURT:  ALL RIGHT.  I'LL EXCUSE MS. COMILANG.

12:25PM 2      I WANT TO ASK YOUR THOUGHTS ABOUT REMAINING JURORS.

12:25PM 3          AND 159, CHAN.  MS. CHAN TALKED ABOUT GOING DOWN THE

12:25PM 4  RABBIT HOLE, I THINK SHE PHRASED IT, OF INTERNET SEARCHES.

12:25PM 5      I CANDIDLY CUT HER OFF BEFORE SHE BEGAN I THINK

12:25PM 6  ELABORATING ON SOME OF THE THINGS THAT SHE HAD SEEN.

12:25PM 7      I'M HAPPY TO RECEIVE YOUR THOUGHTS ABOUT HER NOW IF YOU

12:25PM 8  HAVE ANY, WHETHER OR NOT THIS MIGHT BE SOMEONE THAT WE CAN CALL

12:25PM 9  UP IN ADVANCE OF THE OTHER JURORS AND HAVE A CONVERSATION WITH.

12:25PM 10         MR. DOWNEY:  YOUR HONOR, I DIDN'T REQUEST THAT, BUT

12:25PM 11  I THINK IT WOULD BE A GOOD IDEA.  I ACTUALLY THOUGHT HER

12:25PM 12  STATEMENTS WERE SUFFICIENT AS TO WHERE WE WERE TO DISMISS HER

12:25PM 13  ON THE GROUNDS OF BIAS, BUT IF THE GOVERNMENT DOESN'T OPPOSE WE

12:26PM 14  MAY NOT NEED TO HAVE HER BACK.

12:26PM 15         THE COURT:  WELL, BASED ON MY OBSERVATIONS AND ALSO

12:26PM 16  ON THE QUESTIONNAIRE THAT SHE FILED.

12:26PM 17      MR. SCHENK?

12:26PM 18         MR. SCHENK:  WE WOULD AGREE TO DISMISS HER NOW FOR

12:26PM 19  BIAS.  FOR QUESTION 39 ON THE QUESTIONNAIRE, SHE PUT YES, AND I

12:26PM 20  THINK HER STATEMENT IN COURT CONFIRMED HER ANSWERS IN THE

12:26PM 21  QUESTIONNAIRE.

12:26PM 22         THE COURT:  THAT'S WHAT I WAS FOCUSSED ON,

12:26PM 23  MR. SCHENK.

12:26PM 24      WE'LL EXCUSE JUROR 159 FOR CAUSE.

12:26PM 25      JUROR 164 IS MS. QUINTANILLA.  I MADE A NOTE TO MYSELF

12:26PM 1    WITH A QUESTION MARK FOR PRIVATE.  I DON'T KNOW THAT IT'S

12:26PM 2    NECESSARY, THOUGH.

12:26PM 3         SHE SEEMED TO -- SHE TOLD US THAT SHE COULD FOLLOW THE

12:26PM 4    DIRECTIONS AND BE FAIR AND OBJECTIVE.

12:26PM 5              MR. DOWNEY:  YOUR HONOR, MY QUESTION ABOUT THIS

12:26PM 6    WITNESS WAS ACTUALLY SOMETHING IN HER QUESTIONNAIRE, WHICH THIS

12:26PM 7    JUROR, SHE WAS NOT ASKED ABOUT AND DIDN'T SEEM TO BE AN ISSUE,

12:26PM 8    BUT SHE HAD CITED A HARDSHIP SITUATION IN THE QUESTIONNAIRE AS

12:26PM 9    TO A POTENTIAL LOSS OF INCOME.

12:27PM 10        I GATHER EITHER THAT'S BEEN RESOLVED OR SHE'S WAITING TO

12:27PM 11   SHARE THAT WITH US, BUT I THINK THERE'S A HARDSHIP ISSUE WITH

12:27PM 12   RESPECT TO HER.

12:27PM 13        I DON'T THINK, WITH REGARD TO THE BIAS INQUIRY, FRANKLY,

12:27PM 14   THAT IT WAS A SUFFICIENT BASIS FOR DISMISSAL.

12:27PM 15             MR. SCHENK:  AGREED.  NO BASIS TO DISMISS HER YET.

12:27PM 16             THE COURT:  OKAY.  THANK YOU.

12:27PM 17        JUROR 211, MS. DOMINGUEZ.  WAS IT MS. DOMINGUEZ WHO TOLD

12:27PM 18   US ABOUT HER VACATION SITUATION?

12:28PM 19             MR. SCHENK:  YES.

12:28PM 20             MR. DOWNEY:  YES, SHE'S LEAVING TOMORROW.

12:28PM 21             THE COURT:  ALL RIGHT.  THANK YOU.  SHE'LL WELCOME

12:28PM 22   THAT NEWS.  SO WE'LL EXCUSE MS. DOMINGUEZ FOR HARDSHIP.

12:28PM 23        220 IS MR. WAXMAN, AND I DID -- OWING TO THE HOUR, I DID

12:28PM 24   SOMEWHAT STOP OUR CONVERSATION.

12:28PM 25             MR. SCHENK:  THE GOVERNMENT AGREES TO EXCUSE HIM FOR

| | | |
|---|---|---|
| 12:28PM | 1 | CAUSE FOR BIAS. |
| 12:28PM | 2 | MR. DOWNEY:  AGREED, YOUR HONOR. |
| 12:28PM | 3 | THE COURT:  THANK YOU.  220, MR. WAXMAN, WILL BE |
| 12:28PM | 4 | EXCUSED. |
| 12:28PM | 5 | THAT BRINGS ME TO MR. CHATHAM WHO HAS THESE TRAVEL PLANS. |
| 12:29PM | 6 | ANY COMMENT ABOUT MR. CHATHAM? |
| 12:29PM | 7 | MR. SCHENK:  I BELIEVE THE TRAVEL WAS OCTOBER 3RD |
| 12:29PM | 8 | THROUGH THE 12TH, AND THERE WAS ALSO SOME OTHER TRAVEL.  WE |
| 12:29PM | 9 | AGREE TO EXCUSE HIM FOR HARDSHIP. |
| 12:29PM | 10 | MR. DOWNEY:  NO OBJECTION TO THAT. |
| 12:29PM | 11 | THE COURT:  ALL RIGHT.  THANK YOU.  WE'LL EXCUSE |
| 12:29PM | 12 | JUROR -- MR. CHATHAM.  HE'S JUROR NUMBER -- NO, I DON'T HAVE |
| 12:29PM | 13 | HIS NUMBER. |
| 12:29PM | 14 | THE CLERK:  HE'S 62, YOUR HONOR, SEATED IN A. |
| 12:29PM | 15 | THE COURT:  YES.  HE'S EXCUSED. |
| 12:29PM | 16 | THE ONLY JUROR NUMBER I HAVE LEFT IS 169, MR. FORSBERG. |
| 12:30PM | 17 | ANY COMMENT ON MR. FORSBERG? |
| 12:30PM | 18 | MR. DOWNEY:  YOUR HONOR, MR. FORSBERG INDICATED THAT |
| 12:30PM | 19 | HE WOULD TRY TO THE BEST OF HIS ABILITY, BUT THAT HE HAS DOUBT |
| 12:30PM | 20 | ABOUT SEPARATING OUT HIS PRIOR KNOWLEDGE AND FORMING HIS |
| 12:30PM | 21 | JUDGMENT IN THE CASE. |
| 12:30PM | 22 | I DON'T THINK THAT'S A STATEMENT OF SUFFICIENT |
| 12:30PM | 23 | IMPARTIALITY TO QUALIFY AS A JUROR, SO I THINK HE SHOULD BE |
| 12:30PM | 24 | DISMISSED FOR BIAS. |
| 12:30PM | 25 | MR. SCHENK:  YOUR HONOR, HE ALSO WROTE THAT HE HOPES |

12:30PM   1    NOT FOR QUESTION 39.  HE DIDN'T WRITE JUST NO.  HE WROTE, HOPES

12:30PM   2    NOT.

12:30PM   3        SO I AGREE WITH COUNSEL THAT HIS STATEMENT WASN'T CERTAIN

12:30PM   4    ENOUGH.

12:30PM   5            THE COURT:  THANK YOU.  I APPRECIATE THAT.  I NOTED

12:30PM   6    THAT AS WELL, AND WE'LL EXCUSE MR. FORSBERG, JUROR NUMBER 169,

12:30PM   7    FOR CAUSE.

12:30PM   8        I SAID THAT WAS THE LAST ONE.

12:31PM   9        I HAD FOR SOME REASON CIRCLED JUROR NUMBER 112, MR. DENT.

12:31PM  10            MR. SCHENK:  YOUR HONOR, WE WOULD NOT OBJECT TO

12:31PM  11    DISMISSING MR. DENT ALSO FOR BIAS.  HE SAID HE DID NOT KNOW IF

12:31PM  12    HE COULD HONESTLY SAY THAT HE COULD BE UNBIASSED.

12:31PM  13            MR. DOWNEY:  I BELIEVE THIS WAS THE RETIRED NURSE,

12:31PM  14    AND SHE DID MAKE THAT ADMISSION.

12:31PM  15            THE COURT:  MS. DENT.

12:31PM  16            MR. SCHENK:  MS. DENT.

12:31PM  17            THE COURT:  THANK YOU.  AND SHE WAS VERY CANDID WITH

12:31PM  18    US ABOUT THAT AND I APPRECIATE HER CANDOR.

12:31PM  19        THOSE ARE ALL OF THE JURORS THAT I --

12:31PM  20            THE CLERK:  SO 112 WILL BE?

12:31PM  21            THE COURT:  SHE'S EXCUSED FOR CAUSE.  THANK YOU.

12:31PM  22        ANYTHING ELSE BEFORE WE TAKE OUR LUNCH BREAK NOW?

12:31PM  23            MR. DOWNEY:  NO.

12:31PM  24        IF YOUR HONOR PREFERS AT SOME POINT BEFORE THE BREAK, WE

12:31PM  25    CAN LET YOUR HONOR KNOW IF THERE ARE ANY CAUSE CHALLENGES THAT

12:32PM 1    WE SEE FROM WHAT WE'VE HEARD.

12:32PM 2         BUT IF YOUR HONOR WOULD JUST PREFER TO DO THAT AT THE END,

12:32PM 3    THAT'S FINE WITH US, TOO.

12:32PM 4          THE COURT:  OKAY.  WELL, LET'S DO THAT.  I'D LIKE

12:32PM 5    TO -- AS YOU CAN SEE, I'D LIKE TO GET -- I'D LIKE TO HAVE YOU

12:32PM 6    HAVE A CHANCE TO SPEAK WITH THE PANEL AS WELL, AND THEN

12:32PM 7    HOPEFULLY WE CAN -- AS I SAID YESTERDAY, I THINK WE MAY HAVE,

12:32PM 8    WE MAY HAVE A COLLECTIVE NUMBER SUFFICIENT SUCH THAT YOU CAN

12:32PM 9    BEGIN ANY PEREMPTORY CHALLENGES, STRIKES THAT YOU HAVE, AND WE

12:32PM 10   CAN START THAT PROCESS TODAY.

12:32PM 11        I HOPE WE CAN ACCOMPLISH THAT.

12:32PM 12        IF WE DO, THEN THE NEXT QUESTION -- IF WE DO SELECT A JURY

12:32PM 13   AND ALTERNATES TODAY -- AND I DON'T MEAN TO GET AHEAD OF

12:32PM 14   MYSELF -- SHOULD WE INVITE THOSE FOLKS IN, IF POSSIBLE,

12:32PM 15   TOMORROW TO SWEAR THEM IN?  SHOULD WE WAIT UNTIL NEXT WEEK

12:32PM 16   AFTER THE HOLIDAY TO SWEAR THEM IN?

12:32PM 17        AND THAT'S THE NEXT QUESTION THAT WE'LL ADVANCE, AND I

12:32PM 18   JUST WANT YOU TO THINK ABOUT THAT.

12:32PM 19        OKAY.  ALL RIGHT.  HAVE A GOOD LUNCH.

12:32PM 20          MR. SCHENK:  THANK YOU.

12:32PM 21          MR. LEACH:  THANK YOU, YOUR HONOR.

12:33PM 22          THE COURT:  WE'LL SEE YOU BACK SOON.  THANK YOU.

12:33PM 23        (LUNCH RECESS TAKEN AT 12:33 P.M.)

24

25

01:42PM   1                        **AFTERNOON SESSION**

01:42PM   2          (PROSPECTIVE JURY PANEL OUT AT 1:42 P.M.)

01:42PM   3              THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

01:42PM   4     ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

01:42PM   5          OUR JURORS ARE NOT PRESENT.  I WANTED TO TALK ABOUT -- AND

01:42PM   6     I APOLOGIZE I FORGOT TO RAISE TWO JURORS.

01:42PM   7          NUMBER 161, MS. JACOBSON, SHE EXPRESSED AT THE BREAK SOME

01:42PM   8     COVID CONCERNS, I'LL CALL THEM; AND JUROR NUMBER 147, MR. TONG,

01:42PM   9     WHO TALKED TO US ABOUT HIS WORK SCHEDULE.

01:42PM  10          ANYTHING ABOUT -- LET'S START WITH MS. JACOBSON.

01:42PM  11          MR. SCHENK?

01:42PM  12              MR. SCHENK:  NO OBJECTION TO DISMISSING

01:42PM  13     MS. JACOBSON.

01:42PM  14              MR. DOWNEY:  NO OBJECTION.

01:42PM  15              THE COURT:  THANK YOU.  WE'LL EXCUSE JUROR 161,

01:42PM  16     MS. JACOBSON, FOR HARDSHIP.

01:43PM  17          AND THEN MR. TONG, 147?

01:43PM  18              MR. SCHENK:  YOUR HONOR, I THINK HE'S A HARDER CALL.

01:43PM  19     ON THE QUESTIONNAIRE HE WROTE THAT HE WASN'T SURE.  FOR

01:43PM  20     QUESTION 39 HE EXPRESSED SOME BIAS.

01:43PM  21          IN COURT HE DESCRIBED A SUBCONSCIOUS BIAS, I THINK HE

01:43PM  22     CALLED IT, AND A CONCERN WHETHER HE COULD PUT THAT ASIDE, AND

01:43PM  23     THEN EXPRESSED -- SO I'M NOT SURE THAT HE NEEDS TO BE EXCUSED

01:43PM  24     FOR CAUSE AT THIS POINT.

01:43PM  25          HE ALSO TALKED ABOUT AN IMPORTANT PROJECT AT WORK.  I

01:43PM 1    THINK HE WORKS AT APPLE IF MY NOTES ARE CORRECT ON THAT.  APPLE

01:43PM 2    TAKES ADVANTAGE OF THE COURT, LIKE EVERY OTHER COMPANY HERE,

01:43PM 3    AND I'M RETICENT TO EXCUSE A JUROR BECAUSE OF WORK DEMANDS WHEN

01:43PM 4    WE KNOW THE WORK WILL PAY FOR THEIR TIME AS JURY SERVICE.

01:43PM 5         I DON'T KNOW THAT HIS WORK DEMANDS ARE ENOUGH OF AN EXCUSE

01:43PM 6    FOR HIM TO NOT APPEAR FOR SERVICE AT THIS TIME.

01:43PM 7              THE COURT:  THANK YOU.

01:44PM 8              MR. DOWNEY:  YOUR HONOR, I THINK AS TO THE HARDSHIP

01:44PM 9    INQUIRY, I THINK THE CONCERN HE RAISED WAS HIS ABILITY TO FOCUS

01:44PM 10   HERE AS A RESULT OF THE WORK DEMANDS.  I DON'T THINK HE WAS

01:44PM 11   RAISING AN INCOME ISSUE.  I THINK HE INDICATED HE WOULD BE

01:44PM 12   UNABLE TO FOCUS AND CONCENTRATE ON THE EVIDENCE THAT WAS COMING

01:44PM 13   IN.

01:44PM 14        WITH REGARD TO BIAS, I'M NOT SURE HE HAD A SUFFICIENT

01:44PM 15   REHABILITATION TO SIT ON THE JURY.  HE BEGAN TO SAY HE WAS

01:44PM 16   CONCERNED ABOUT BIAS IN RESPONSE TO QUESTION 39.  HE AGAIN

01:44PM 17   STATED TODAY THE PROBABILITY OF BIAS.  I DON'T THINK HE

01:44PM 18   DEFINITIVELY SAID HE COULD PUT BIAS ASIDE.

01:44PM 19        SO I THINK THIS JUROR SHOULD BE EXCUSED FOR BOTH REASONS,

01:44PM 20   BUT IF THERE'S A DISPUTE ABOUT HARDSHIP, I THINK HE CERTAINLY

01:44PM 21   SHOULD BE DISMISSED ON CAUSE GROUNDS.

01:44PM 22             THE COURT:  THANK YOU.  I WAS CONCERNED ABOUT HIS --

01:44PM 23   AND MR. SCHENK, MAYBE YOU CAN HELP ME -- HIS LAST COMMENT WAS

01:45PM 24   THE FOCUSSED ONE ABOUT WORK, I'M NOT SURE I COULD FOCUS, THAT

01:45PM 25   TYPE OF THING.  THAT'S WHY I CALLED HIM TO OUR ATTENTION.

01:45PM  1          MR. SCHENK:  YES.  I ALSO HAVE HIM IN MY NOTES THAT

01:45PM  2     HE DESCRIBED THIS PROJECT AS BEING IMPORTANT TO HIS CAREER.

01:45PM  3          I RESPECT THAT.  I APPRECIATE THAT HE'S GOING TO BE

01:45PM  4     THINKING ABOUT HIS WORK DEMANDS WHEN HE'S IN COURT.  IT'S NOT A

01:45PM  5     SHORT TRIAL, SO IT'S REASONABLE TO THINK THAT THERE'S GOING TO

01:45PM  6     BE SOME MEASURE OF A TRADEOFF FOR HIS ACCOMPLISHMENTS AT WORK

01:45PM  7     DURING THIS PERIOD OF TIME.

01:45PM  8          THE GOVERNMENT DEFERS TO THE COURT.  I THINK THE RECORD IS

01:45PM  9     THIN, BUT SUFFICIENT.

01:45PM  10         THE COURT:  THANK YOU.

01:45PM  11         FIRST OF ALL, LET ME ACKNOWLEDGE YOUR COMMENTS ABOUT APPLE

01:45PM  12    IS A HEAVY COURT USER.  THEY'RE IN OUR COURTS WITH GREAT

01:45PM  13    FREQUENCY.  WE RESPECT THE FACT THAT THEY DO PAY, UNLIKE MANY

01:45PM  14    OTHER LARGE COMPANIES WHO ARE FREQUENT COURT USERS THAT DO NOT

01:45PM  15    PAY THEIR EMPLOYEES FOR JURY SERVICE.  I BELIVE APPLE IS ONE

01:45PM  16    THAT DOES, AND WE RECOGNIZE THAT.

01:46PM  17         MY CONCERN WAS HIS LACK OF FOCUS AND WHETHER OR NOT HIS

01:46PM  18    LOYALTIES WOULD BE TORN FROM HIS CAREER TO HIS OBLIGATIONS AS A

01:46PM  19    JUROR.

01:46PM  20         I'M GOING TO -- THANK YOU FOR YOUR HELP ON THIS, BOTH

01:46PM  21    SIDES.

01:46PM  22         I'M GOING TO EXCUSE JUROR NUMBER 147, MR. TONG, FOR CAUSE.

01:46PM  23         I THINK THAT'S ALL I NEED TO DO.

01:46PM  24         WE CAN CALL UP OUR JURORS NOW.

01:46PM  25         ANYTHING ELSE BEFORE WE DO THAT?

| | | |
|---|---|---|
| 01:46PM | 1 | MR. DOWNEY:  YOUR HONOR, ONLY THAT THERE WERE FIVE |
| 01:46PM | 2 | OTHER JURORS WHO, IN THEIR QUESTIONNAIRES, IDENTIFIED HARDSHIP |
| 01:46PM | 3 | ISSUES OR EXPLICITLY ASKED TO BE EXCUSED IN RESPONSE TO |
| 01:46PM | 4 | QUESTION 1.  I DON'T KNOW IF YOUR HONOR WANTS TO INQUIRE.  I |
| 01:46PM | 5 | THINK I LIKELY WILL IF YOUR HONOR DOESN'T. |
| 01:46PM | 6 | THE COURT:  WHAT NUMBERS ARE YOU REFERRING TO? |
| 01:46PM | 7 | MR. DOWNEY:  I HAVE THAT AS 117, 121, 142, 143, AND |
| 01:46PM | 8 | 145.  AND THERE'S A VARIETY OF ISSUES WITHIN THOSE. |
| 01:47PM | 9 | THE COURT:  MR. SCHENK, GO AHEAD AND FINISH YOUR |
| 01:47PM | 10 | CONVERSATION IF YOU'D LIKE. |
| 01:47PM | 11 | (DISCUSSION OFF THE RECORD.) |
| 01:47PM | 12 | MR. SCHENK:  I THINK ALSO MAYBE 127 IF MY NOTES ARE |
| 01:47PM | 13 | CORRECT. |
| 01:47PM | 14 | MR. DOWNEY:  I THINK THAT'S RIGHT, YOUR HONOR, NOW |
| 01:47PM | 15 | THAT I ACTUALLY LOOK AT MY NOTES.  I THINK HE ASKED TO BE |
| 01:47PM | 16 | EXCUSED ON THE BASIS OF INCOME, LOSS OF INCOME. |
| 01:47PM | 17 | MR. SCHENK:  I DON'T HAVE AN OPINION ON WHETHER |
| 01:47PM | 18 | MR. DOWNEY DOES IT OR THE COURT DOES IT, OR IF THE COURT, |
| 01:47PM | 19 | INSTEAD OF INDIVIDUALLY ASKING, AS ONE OF ITS QUESTIONS ASKED |
| 01:47PM | 20 | IF THERE ARE JURORS WHO HAVE OTHER CONCERNS ABOUT THE |
| 01:47PM | 21 | IMPLICATION THAT JURY SERVICE WOULD HAVE ON THEIR LIFE, NOW IS |
| 01:47PM | 22 | THE TIME TO RAISE THAT.  I THINK THAT ALSO WOULD BE SUFFICIENT. |
| 01:47PM | 23 | THE COURT:  I SEE -- THANK YOU.  I SEE 127 WAS |
| 01:47PM | 24 | ACTUALLY SOMEBODY WHO WE DISCUSSED YESTERDAY, OR AT LEAST I |
| 01:47PM | 25 | THINK HE WAS FORWARDED BY THE COURT.  HE'S A GENTLEMAN WHO I |

| | | |
|---|---|---|
| 01:47PM | 1 | THINK HE'S 63 YEARS YOUNG AND DRIVES A DELIVERY TRUCK IF I'M |
| 01:48PM | 2 | NOT MISTAKEN.  HE EXPRESSED SOME CONCERNS ABOUT FINANCES IN THE |
| 01:48PM | 3 | QUESTIONNAIRE, AND THAT'S WHY I FORWARDED HIM FOR OUR |
| 01:48PM | 4 | ATTENTION. |
| 01:48PM | 5 | I AM GOING TO STRIKE HIM FOR HARDSHIP NOW, 127.  127. |
| 01:48PM | 6 | IT'S MR. BREKKE. |
| 01:48PM | 7 | THE CLERK:  HE IS IN SEAT N, YOUR HONOR. |
| 01:48PM | 8 | THE COURT:  I'M SORRY? |
| 01:48PM | 9 | THE CLERK:  HE'S IN SEAT N. |
| 01:48PM | 10 | THE COURT:  YES.  SO HE NEED NOT COME UP. |
| 01:48PM | 11 | 142 I NOTED AS A FULL-TIME STUDENT, KINESIOLOGY, I THINK. |
| 01:49PM | 12 | MR. SCHENK:  YOUR HONOR, THIS INDIVIDUAL ALSO WORKS |
| 01:49PM | 13 | AT SAFEWAY, AND SAFEWAY IS A VICTIM IN THE CASE AND WE WERE |
| 01:49PM | 14 | GOING TO RAISE IT FOR THAT REASON AS WELL. |
| 01:49PM | 15 | THE COURT:  RIGHT. |
| 01:49PM | 16 | MR. DOWNEY? |
| 01:49PM | 17 | MR. DOWNEY:  WE AGREE, YOUR HONOR. |
| 01:49PM | 18 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 01:49PM | 19 | WE'LL EXCUSE JUROR NUMBER 142, 142.  IS THAT SEAT U, I |
| 01:49PM | 20 | BELIEVE? |
| 01:49PM | 21 | THE CLERK:  YES, YOUR HONOR, SEAT U. |
| 01:49PM | 22 | THE COURT:  JUROR NUMBER 143 EXPRESSED, IN ANSWER TO |
| 01:49PM | 23 | QUESTION 1, THERE WAS NO SUBSTITUTE FOR HER.  I BELIEVE SHE'S A |
| 01:49PM | 24 | TEACHER, PART-TIME TEACHER.  SHE SAYS THERE'S NO SUBSTITUTE FOR |
| 01:49PM | 25 | HER. |

01:49PM   1        SHE INDICATES THAT SHE DOESN'T KNOW ANYTHING ABOUT THE

01:50PM   2   CASE AS MY NOTES REFLECT, BUT SHE HAS A HEALTH CONDITION ALSO

01:50PM   3   THAT SHE SUGGESTS MIGHT REQUIRE SOME ATTENTION.

01:50PM   4        I THINK IN ANSWER TO QUESTION 1, SHE DID TALK ABOUT THERE

01:50PM   5   BEING NO SUBSTITUTE FOR HER.

01:50PM   6             MR. SCHENK:  IT WOULD BE THE GOVERNMENT'S PREFERENCE

01:50PM   7   TO WAIT FOR THE RECORD TO BE MORE FULLY DEVELOPED ON THAT ONE.

01:50PM   8             THE COURT:  SURE.  OKAY.  LET'S DO THAT.

01:50PM   9        145 IS AN INTENSIVE CARE NURSE, I BELIEVE, AT VALLEY

01:50PM  10   MEDICAL CENTER.

01:50PM  11             MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.

01:50PM  12             THE COURT:  AND EXPRESSES POTENTIAL HARDSHIP TO THAT

01:50PM  13   HOSPITAL.  I KNOW THAT THAT IS THE COUNTY HOSPITAL, AND I KNOW

01:50PM  14   THE RATES -- EXCUSE ME -- THE RATE OF ENTRY INTO THE HOSPITAL,

01:51PM  15   HOSPITALIZATIONS ARE QUITE HIGH IN THIS COUNTY NOW.

01:51PM  16        I'D BE INCLINED TO STRIKE HER SO SHE CAN CONTINUE, OR HE

01:51PM  17   CAN CONTINUE TO DO THE WORK HE DOES.

01:51PM  18             MR. SCHENK:  NO OBJECTION.

01:51PM  19             MR. DOWNEY:  NO OBJECTION.

01:51PM  20             THE COURT:  145 IS EXCUSED FOR HARDSHIP.

01:51PM  21        121 IS -- I THINK THAT'S MR. LEPE, AND HE INFORMS THAT HE

01:51PM  22   HAS TO PICK UP HIS KIDS AT 2:30.

01:51PM  23        I EXPECT WE'RE GOING TO GO BEYOND 2:30 TODAY, DESPITE OUR

01:51PM  24   BEST EFFORTS, BUT THAT MIGHT CREATE A PROBLEM HERE.  I WAS

01:51PM  25   GOING TO QUESTION WHETHER OR NOT, IF WE FINISH OUR COURT DAYS

01:51PM 1      AT 2:00 O'CLOCK, WHETHER THAT AFFORDED HIM SOME RELIEF.

01:51PM 2          BUT YOU MIGHT HAVE HIS QUESTIONNAIRE AT YOUR FINGERTIPS.

01:51PM 3      I CAN'T RECALL IF HE SAID HE HAD ALTERNATIVE PLANS FOR HIS

01:51PM 4      CHILDREN.

01:52PM 5              MR. DOWNEY:  I DON'T THINK HE TALKS ABOUT THE

01:52PM 6      AVAILABILITY OF AN ALTERNATIVE PLAN, YOUR HONOR.  SO I CAN'T

01:52PM 7      SAY THAT HE MAKES CLEAR THAT THERE WON'T BE SOME SUBSTITUTION.

01:52PM 8              THE COURT:  ANY THOUGHTS, MR. SCHENK?

01:52PM 9              MR. SCHENK:  HE SAYS THAT HIS WIFE IS OFF OF WORK AT

01:52PM 10     5:00.

01:52PM 11             THE COURT:  RIGHT.

01:52PM 12             MR. SCHENK:  GIVEN THE HOUR, I HAVE SOME CONCERNS

01:52PM 13     ABOUT HIM MAKING IT TODAY AND, THEREFORE, I WOULD CONSENT TO

01:52PM 14     DISMISSAL.

01:52PM 15             THE COURT:  ALL RIGHT.  THANK YOU.

01:53PM 16         LET'S STRIKE MR. LEPE, EXCUSE HIM I SHOULD SAY, 121,

01:53PM 17     SEAT K, FOR HARDSHIP.

01:53PM 18         117 IS TRUONG.  I JUST REVIEWED THE QUESTIONNAIRE.  I

01:53PM 19     THINK IT SOUNDS LIKE THERE'S A SINGLE SOURCE OF INCOME AND

01:53PM 20     THERE'S A FINANCIAL HARDSHIP THERE.

01:53PM 21             MR. DOWNEY:  THAT'S RIGHT, YOUR HONOR.

01:53PM 22             MR. SCHENK:  I'M DOING THIS FROM MEMORY.  I THINK HE

01:53PM 23     WORKS FOR VMWARE.  I DON'T THINK HE KNEW WHETHER HIS WORK PAID

01:53PM 24     FOR JURY SERVICE.  MAYBE HE HAS THE ANSWER NOW.

01:53PM 25             THE COURT:  IN RESPONSE TO QUESTION 1, HE SAYS, I AM

01:53PM   1    ONLY INCOME IN FAMILY.  I CAN'T COMMIT TO 13 WEEKS.  IT CAN

01:53PM   2    COST MY JOB.

01:54PM   3        WE COULD BRING HIM UP AND MAKE FURTHER INQUIRIES IF THAT

01:54PM   4    WOULD BE HELPFUL.

01:54PM   5            MR. SCHENK:  QUESTION 16, HE SAYS HE'S EMPLOYED BY

01:54PM   6    VMWARE, BUT I DON'T THINK HE -- HE CHECKED HE DID NOT KNOW IF

01:54PM   7    HIS EMPLOYER WOULD CONTINUE TO PAY HIS SALARY.

01:54PM   8        THE GOVERNMENT WOULD DEFER TO THE COURT.  WE WOULD NOT

01:54PM   9    OBJECT TO DISMISSING HIM, BUT WE THINK THERE MIGHT BE A

01:54PM   10   SOLUTION THAT THE JUROR MIGHT ALREADY HAVE INFORMATION ABOUT.

01:54PM   11           THE COURT:  MR. DOWNEY?

01:54PM   12           MR. DOWNEY:  I THINK THE QUESTIONNAIRE INDICATES

01:54PM   13   PROBABLY AS MUCH AS WE'RE GOING TO KNOW.  I THINK HE IS

01:54PM   14   ADMITTEDLY UNCERTAIN ABOUT INCOME, BUT I THINK HE'S CONCERNED

01:54PM   15   ABOUT CONTINUED EMPLOYMENT IF HE'S UNAVAILABLE FOR THAT PERIOD,

01:55PM   16   SO I'D BE INCLINED TO DISMISS HIM.

01:55PM   17           THE COURT:  ALL RIGHT.  THANK YOU.

01:55PM   18       HE DOES INDICATE THAT HE DOES HAVE CONCERNS ABOUT THE

01:55PM   19   LENGTH OF THE TRIAL.  HE ANSWERED THAT IN QUESTION 1, THE FIRST

01:55PM   20   QUESTION WHICH ASKS THAT.

01:55PM   21       I'LL EXCUSE HIM FOR HARDSHIP.  THAT'S JUROR NUMBER 117.

01:55PM   22   HE'S IN SEAT I.

01:55PM   23       I THINK WE CAN BRING THE PANEL UP NOW, COUNSEL?  SHOULD WE

01:55PM   24   CALL UP OUR PANEL NOW, MR. SCHENK?

01:55PM   25           MR. SCHENK:  YES.  SORRY, YOUR HONOR.

| | | |
|---|---|---|
| 01:55PM | 1 | MR. DOWNEY: YES, YOUR HONOR. |
| 01:55PM | 2 | THE COURT: ALL RIGHT. WE'LL DO THAT NOW. WE'LL |
| 01:56PM | 3 | BRING UP OUR PANEL NOW TO BEGIN THE ADDITIONAL QUESTIONING. |
| 01:56PM | 4 | LET ME TURN TO EITHER PARTY AT BOTH TABLES, IF YOU NEED A |
| 01:56PM | 5 | BREAK AT ANY TIME, YOU SHOULD LET ME KNOW. |
| 01:56PM | 6 | AS I SAID IN MY EARLIER COMMENTS, IF ANYONE NEEDS AN |
| 01:56PM | 7 | UNSCHEDULED BREAK, JUST LET ME KNOW, AND I'M HAPPY TO |
| 01:56PM | 8 | ACCOMMODATE THAT. SO JUST LET ME KNOW, PLEASE. |
| 01:56PM | 9 | WE'LL CALL UP OUR PANEL NOW. THANK YOU. |
| 02:01PM | 10 | (RECESS FROM 1:56 P.M. UNTIL 2:04 P.M.) |
| 02:04PM | 11 | (PROSPECTIVE JURY PANEL IN AT 2:04 P.M.) |
| 02:04PM | 12 | THE COURT: ALL RIGHT. THANK YOU. WE'RE BACK ON |
| 02:04PM | 13 | THE RECORD. |
| 02:05PM | 14 | ALL PREVIOUS PARTIES ARE PRESENT ONCE AGAIN AND OUR |
| 02:05PM | 15 | PROSPECTIVE PANEL. |
| 02:05PM | 16 | LADIES AND GENTLEMEN, I'D LIKE TO CONTINUE WITH MY |
| 02:05PM | 17 | QUESTIONS. |
| 02:05PM | 18 | NOW, AS I MENTIONED TO YOU EARLIER, YOU KNOW THE LENGTH OF |
| 02:05PM | 19 | THIS TRIAL, THE PROSPECTIVE LENGTH OF THIS TRIAL. IT'S LIKELY |
| 02:05PM | 20 | THAT THERE WILL BE CONTINUED MEDIA COVERAGE OF THE TRIAL. |
| 02:05PM | 21 | JURORS WILL BE INSTRUCTED, AS I'VE MENTIONED PREVIOUSLY, |
| 02:05PM | 22 | NOT TO READ, LISTEN TO MEDIA COVERAGE ABOUT THE CASE, AND THIS |
| 02:05PM | 23 | IS IMPORTANT AS A JUROR'S DECISION ON THE CASE, AS I'VE TOLD |
| 02:05PM | 24 | YOU, MUST BE FORMED ONLY BY THE EVIDENCE ADMITTED AND RECEIVED |
| 02:05PM | 25 | IN THE COURTROOM AND NOT ON ANY INFORMATION RECEIVED OUTSIDE OF |

02:05PM  1    THE COURTHOUSE.

02:05PM  2        A JUROR WHO IS EXPOSED TO ANY OUTSIDE INFORMATION MUST

02:06PM  3    REPORT THE EXPOSURE TO THE COURT.  THIS MEANS TO ME THROUGH MY

02:06PM  4    STAFF, MY COURTROOM DEPUTY.

02:06PM  5        NOW, AS WE DISCUSSED THIS MORNING, THIS MAY BE DIFFICULT

02:06PM  6    AND CHALLENGING, BUT LET ME ASK, IS THERE ANYONE WHO FEELS THAT

02:06PM  7    THEY CANNOT, THEY CANNOT FOLLOW THIS INSTRUCTION?

02:06PM  8        I SEE NO HANDS.

02:06PM  9        IS THERE ANYTHING ABOUT THE FACT THAT THE CHARGES, THE

02:06PM  10   CHARGE RELATES TO ALLEGATIONS OF WIRE FRAUD AND CONSPIRACY TO

02:06PM  11   COMMIT WIRE FRAUD THAT WILL AFFECT A JUROR'S ABILITY TO BE FAIR

02:06PM  12   AND IMPARTIAL?

02:06PM  13       THIS JUST RELATES TO THE NATURE OF THE CHARGES.  IS THERE

02:06PM  14   ANYTHING JUST BECAUSE OF THE NATURE OF THE CHARGES THAT A JUROR

02:06PM  15   FEELS THAT THEY COULD NOT BE FAIR?

02:06PM  16       I SEE NO HANDS.

02:06PM  17       OH, I'M SORRY.  I DO SEE A HAND.  LET'S CALL ON -- IS THAT

02:06PM  18   MR. DELAPAZ; IS THAT RIGHT?

02:07PM  19           PROSPECTIVE JUROR:  YES.

02:07PM  20           THE COURT:  YOU'RE JUROR NUMBER 156.

02:07PM  21       YES, SIR.

02:07PM  22           PROSPECTIVE JUROR:  WHEN YOU SAY "FRAUD," IT'S

02:07PM  23   PRETTY CLOSE TO MY MOTHER-IN-LAW BECAUSE SHE WENT TO PRISON FOR

02:07PM  24   FRAUD AND EMBEZZLEMENT, AND I DON'T THINK I CAN BE FAIR

02:07PM  25   CONCERNING WHAT WE WENT THROUGH WITH MY WIFE.

02:07PM 1         THE COURT:  HOW LONG AGO WAS THAT SITUATION, SIR?

02:07PM 2         PROSPECTIVE JUROR:  PROBABLY ABOUT 10 OR 11 OR

02:07PM 3 12 YEARS AGO.

02:07PM 4         THE COURT:  I SEE.

02:07PM 5    AND YOU WERE INVOLVED IN THAT PROCESS, SIR, THAT COURT

02:07PM 6 PROCESS?

02:07PM 7         PROSPECTIVE JUROR:  NO.  I WENT THROUGH IT WITH MY

02:07PM 8 WIFE.

02:07PM 9         THE COURT:  I SEE.

02:07PM 10         PROSPECTIVE JUROR:  I'VE SEEN WHAT SHE WENT THROUGH

02:07PM 11 AND ALL OF THE THINGS THAT HAPPENED WHILE SHE WAS INSIDE THERE.

02:08PM 12         THE COURT:  INSIDE THE COURT PROCESS YOU MEAN?

02:08PM 13         PROSPECTIVE JUROR:  NO.  BOTH COURT AND PRISON.

02:08PM 14         THE COURT:  OKAY.  I SEE.

02:08PM 15    SIR, YOU ALSO INDICATED ON NUMBER 1, IN ANSWER TO QUESTION

02:08PM 16 NUMBER 1 THAT YOU HAD A QUESTION ABOUT FINANCIAL ISSUES.

02:08PM 17         PROSPECTIVE JUROR:  YES, IT'S A HARDSHIP.  I DON'T

02:08PM 18 GET PAID FOR BEING ON JURY DUTY.

02:08PM 19         THE COURT:  I SEE.  ALL RIGHT.  THANK YOU.

02:08PM 20     MR. SCHENK, ANY QUESTIONS?

02:08PM 21       MR. SCHENK:  NOTHING FURTHER, YOUR HONOR.

02:08PM 22       MR. DOWNEY:  NOTHING FURTHER.

02:08PM 23      THE COURT:  ALL RIGHT.  THANK YOU FOR BRINGING THIS

02:08PM 24 TO MY ATTENTION, MR. DELAPAZ.  I'LL EXCUSE YOU FOR HARDSHIP.

02:08PM 25 THANK YOU.

02:08PM 1          PROSPECTIVE JUROR:  OKAY.

02:08PM 2          THE COURT:  ANYONE ELSE IN REGARDS TO THE NATURE OF

02:08PM 3   THE CHARGES IS WHAT THIS QUESTION CALLED FOR?

02:08PM 4      ALL RIGHT.  THANK YOU.

02:09PM 5      HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN ACCUSED OF WIRE

02:09PM 6   FRAUD OR ALLEGATIONS REGARDING FRAUDULENT CONDUCT?  ANYONE HAVE

02:09PM 7   ANY EXPERIENCE IN THAT?

02:09PM 8      AGAIN, IF ANYONE WISHES TO SPEAK PRIVATELY, PLEASE LET ME

02:09PM 9   KNOW, AND WE'RE HAPPY TO DO THAT.

02:09PM 10         I SEE NO HANDS.

02:09PM 11     HAVE YOU BEEN OR HAVE YOU EVER FELT THAT YOU OR A CLOSE

02:09PM 12  FRIEND OR RELATIVE WAS A VICTIM OF INTIMATE PARTNER VIOLENCE OR

02:09PM 13  ABUSE OR WHAT IS KNOWN AS DOMESTIC OR RELATIONSHIP VIOLENCE?

02:09PM 14     ANYONE HAVE ANY EXPERIENCE WITH A PERSON OR RELATIVE OR

02:09PM 15  FRIEND?  IF ANYONE NEEDS TO DO THAT, WE CAN DO THAT PRIVATELY.

02:09PM 16     LET'S -- WHERE'S THE MICROPHONE?  IT'S IN THE GALLERY.  SO

02:09PM 17  WHY DON'T WE KEEP IT THERE.

02:09PM 18     IF YOU COULD PASS THE WIPES AS WELL, PLEASE, MR. BUI.

02:09PM 19  THANK YOU.

02:10PM 20     YES.  JUROR NUMBER?

02:10PM 21         PROSPECTIVE JUROR:  154.

02:10PM 22         THE COURT:  154.  THANK YOU, MS. KEHN.

02:10PM 23  WHAT WOULD YOU LIKE ME TO KNOW?

02:10PM 24         PROSPECTIVE JUROR:  YES.  YES, I'VE BEEN A VICTIM.

02:10PM 25         THE COURT:  OKAY.

02:10PM 1          PROSPECTIVE JUROR:  YES.

02:10PM 2          THE COURT:  AND HOW LONG AGO WAS THAT MS. KEHN?

02:10PM 3          PROSPECTIVE JUROR:  LET'S SEE.  WE GOT DIVORCED IN

02:10PM 4    2011, AND I WAS MARRIED FOR 28 YEARS.

02:10PM 5          THE COURT:  ALL RIGHT.  THANK YOU.

02:10PM 6       DID YOU HAVE OCCASION TO REPORT THE ABUSE, THE SITUATION

02:10PM 7    TO AUTHORITIES?

02:10PM 8          PROSPECTIVE JUROR:  NO.  IT WASN'T PHYSICAL.  IT WAS

02:10PM 9    MENTAL AND EMOTIONAL.

02:10PM 10         THE COURT:  I SEE.  ALL RIGHT.  OKAY.

02:10PM 11      AND DID YOU RECEIVE -- MAY I ASK -- AND IF YOU WANT TO

02:10PM 12   SPEAK PRIVATELY, PLEASE LET ME KNOW.

02:10PM 13      DID YOU RECEIVE ANY COUNSELLING OR THERAPY OR ANYTHING

02:10PM 14   LIKE THAT AS A RESULT?

02:10PM 15         PROSPECTIVE JUROR:  YES.  ONCE I GOT -- ONCE HE WAS

02:11PM 16   GONE.

02:11PM 17         THE COURT:  I'M SORRY?

02:11PM 18         PROSPECTIVE JUROR:  ONCE HE LEFT.

02:11PM 19         THE COURT:  I SEE.  OKAY.  THANK YOU.

02:11PM 20      IS THERE ANYTHING ABOUT THAT EXPERIENCE THAT REMAINS WITH

02:11PM 21   YOU TODAY?

02:11PM 22         PROSPECTIVE JUROR:  YEAH.  ALL OF IT.

02:11PM 23         THE COURT:  TELL ME, CAN YOU JUST TELL ME WHAT WAS

02:11PM 24   THE DURATION OF THAT?  WAS IT THE ENTIRETY OF YOUR RELATIONSHIP

02:11PM 25   OR WAS IT A SEGMENT OF IT?

02:11PM 1           PROSPECTIVE JUROR:  HE WAS VERY CONTROLLING AND PUT

02:11PM 2  ME DOWN A LOT AND CONTROLLED LIKE MY TIME AND EVERYTHING A LOT.

02:11PM 3           THE COURT:  WAS THIS DURING THE ENTIRETY OF YOUR

02:11PM 4  RELATIONSHIP WITH HIM?

02:11PM 5           PROSPECTIVE JUROR:  MOSTLY, YEAH.

02:11PM 6           THE COURT:  AND THAT WAS HOW LONG?  I'M SORRY.

02:11PM 7           PROSPECTIVE JUROR:  I WAS MARRIED FOR 28 YEARS, BUT

02:11PM 8  I WOULD SAY LIKE THE LAST 12 WERE LIKE THE WORST.

02:11PM 9           THE COURT:  AND YOU DIVORCED OR SEPARATED WHEN?

02:12PM 10          PROSPECTIVE JUROR:  2011.  HE MOVED OUT IN 2011, BUT

02:12PM 11  IT WASN'T FINAL UNTIL '13.

02:12PM 12          THE COURT:  I SEE.  ALL RIGHT.  THANK YOU.  THANK

02:12PM 13  YOU, MS. KEHN.

02:12PM 14      ANY QUESTIONS, MR. SCHENK?

02:12PM 15          MR. SCHENK:  NO, YOUR HONOR.

02:12PM 16          MR. DOWNEY:  NO, YOUR HONOR.

02:12PM 17          THE COURT:  THANK YOU.

02:12PM 18      AND THERE WAS SOMEONE ELSE?

02:12PM 19      YES, LET'S PASS THAT FORWARD.  THANK YOU.

02:12PM 20      IS THAT MR. MURPHY?

02:12PM 21          PROSPECTIVE JUROR:  YES, 130.

02:12PM 22          THE COURT:  THANK YOU, MR. MURPHY.

02:12PM 23          PROSPECTIVE JUROR:  WHEN I WAS YOUNG THERE WERE A

02:12PM 24  FEW INCIDENTS I GUESS OF PHYSICAL FIGHTING BETWEEN MY PARENTS,

02:12PM 25  AND I ACTUALLY DON'T HAVE A DISTINCT MEMORY OF WITNESSING

| | | |
|---|---|---|
| 02:12PM | 1 | THOSE, BUT I KNEW THAT THEY TOOK PLACE AND AT LEAST ONE OF THEM |
| 02:12PM | 2 | WHEN I WAS IN THE HOME. |
| 02:12PM | 3 | THE COURT:  I SEE.  OKAY.  ALL RIGHT.  THANK YOU. |
| 02:12PM | 4 | DO YOU KNOW WHETHER -- I'M SORRY, AGAIN, IF ANYONE -- |
| 02:12PM | 5 | PROSPECTIVE JUROR:  GO AHEAD. |
| 02:12PM | 6 | THE COURT:  WERE LEGAL AUTHORITIES EVER INVOLVED IN |
| 02:12PM | 7 | ANY OF THOSE SITUATIONS? |
| 02:13PM | 8 | PROSPECTIVE JUROR:  I REMEMBER THE POLICE COMING TO |
| 02:13PM | 9 | THE HOUSE ONCE, BUT NOTHING OTHER THAN THAT. |
| 02:13PM | 10 | THE COURT:  OKAY. |
| 02:13PM | 11 | PROSPECTIVE JUROR:  AND IT RESOLVED WELL BEFORE THEY |
| 02:13PM | 12 | ARRIVED. |
| 02:13PM | 13 | THE COURT:  I SEE.  OKAY.  I'M SORRY. |
| 02:13PM | 14 | HOW LONG AGO WAS THIS APPROXIMATELY? |
| 02:13PM | 15 | PROSPECTIVE JUROR:  MANY YEARS AGO.  SO 53 MINUS 6. |
| 02:13PM | 16 | THE COURT:  ALL RIGHT.  THANK YOU.  I THINK THAT |
| 02:13PM | 17 | TIME STAMPS IT FOR US. |
| 02:13PM | 18 | HAVE YOU RECEIVED ANY COUNSELLING, THERAPY OR ANYTHING |
| 02:13PM | 19 | LIKE THAT FOR THAT, SIR? |
| 02:13PM | 20 | PROSPECTIVE JUROR:  NOT FOR THAT BUT IN GENERAL, BUT |
| 02:13PM | 21 | NOT SPECIFIC TO THAT INSTANCE. |
| 02:13PM | 22 | THE COURT:  THANK YOU FOR SHARING THAT.  I |
| 02:13PM | 23 | APPRECIATE THAT. |
| 02:13PM | 24 | IS THERE ANYONE ELSE? |
| 02:13PM | 25 | PROSPECTIVE JUROR:  YES. |

02:13PM  1              THE COURT:  IS THAT JUROR NUMBER 134, LARUE?

02:13PM  2              PROSPECTIVE JUROR:  YES.

02:13PM  3              THE COURT:  134?

02:13PM  4              PROSPECTIVE JUROR:  YES, 134.

02:13PM  5              THE COURT:  YES.

02:13PM  6              PROSPECTIVE JUROR:  MY SISTER WAS SEVERELY BEATEN BY

02:13PM  7      HER HUSBAND, AND WHEN I TRIED TO HELP HER HE ATTACKED ME.  AND

02:13PM  8      THAT WAS ABOUT 25 YEARS AGO.

02:13PM  9              THE COURT:  OKAY.  WAS THAT HERE IN CALIFORNIA,

02:14PM  10     MS. LARUE?

02:14PM  11             PROSPECTIVE JUROR:  YES.

02:14PM  12             THE COURT:  AND WERE THE AUTHORITIES CALLED?

02:14PM  13             PROSPECTIVE JUROR:  YES.  I CALLED WHEN HE ATTACKED

02:14PM  14     ME, AND I WASN'T GOING TO LET IT HAPPEN.

02:14PM  15             THE COURT:  ALL RIGHT.  AND WERE YOU REQUIRED TO GO

02:14PM  16     TO COURT FOR ANY PURPOSE?

02:14PM  17             PROSPECTIVE JUROR:  YES.

02:14PM  18             THE COURT:  AND DID YOU TESTIFY?

02:14PM  19             PROSPECTIVE JUROR:  YES.

02:14PM  20             THE COURT:  I SEE.  WAS THERE A TRIAL?

02:14PM  21             PROSPECTIVE JUROR:  IT WAS MORE SO SHE COULD GET A

02:14PM  22     RESTRAINING ORDER, GET CUSTODY OF HER CHILD, AND SO HE WOULD

02:14PM  23     STAY COMPLETELY AWAY.

02:14PM  24             THE COURT:  IT SOUNDS LIKE THAT WAS IN FAMILY COURT

02:14PM  25     REGARDING DISSOLUTION PROCEEDINGS?

| 02:14PM | 1 | PROSPECTIVE JUROR: YES. YES. |
|---|---|---|
| 02:14PM | 2 | THE COURT: I SEE. WAS A RESTRAINING ORDER ISSUED? |
| 02:14PM | 3 | PROSPECTIVE JUROR: YES. |
| 02:14PM | 4 | THE COURT: OKAY. I SEE. |
| 02:14PM | 5 | AND HAVE YOU, HAVE YOU SEEN THAT INDIVIDUAL, THAT IS, THE |
| 02:14PM | 6 | HUSBAND IN -- |
| 02:14PM | 7 | PROSPECTIVE JUROR: OH, HE'S NO LONGER HOME. HE IS |
| 02:14PM | 8 | NOWHERE AROUND. |
| 02:14PM | 9 | THE COURT: I'M SORRY. IF YOU COULD -- |
| 02:14PM | 10 | PROSPECTIVE JUROR: I'M SORRY. HE'S NOWHERE AROUND. |
| 02:14PM | 11 | THE COURT: ALL RIGHT. THANK YOU. |
| 02:14PM | 12 | DID YOU RECEIVE ANY COUNSELLING OR THERAPY? |
| 02:14PM | 13 | PROSPECTIVE JUROR: NO. TO ME IT WAS DONE AND OVER |
| 02:14PM | 14 | WITH. |
| 02:14PM | 15 | THE COURT: OKAY. HOW ABOUT YOUR SISTER? |
| 02:14PM | 16 | PROSPECTIVE JUROR: YES. YES. |
| 02:15PM | 17 | THE COURT: SHE DID RECEIVE COUNSELLING AND THERAPY? |
| 02:15PM | 18 | PROSPECTIVE JUROR: YES. |
| 02:15PM | 19 | THE COURT: ALL RIGHT. THANK YOU VERY MUCH. THANK |
| 02:15PM | 20 | YOU FOR SHARING THAT. |
| 02:15PM | 21 | ANYONE ELSE IN RESPONSE TO THIS QUESTION? |
| 02:15PM | 22 | IF WE COULD PASS IT UP TO MS. MASON-BURCHELL. |
| 02:15PM | 23 | PROSPECTIVE JUROR: YES. SO I WENT THROUGH IT BACK |
| 02:15PM | 24 | ABOUT 35 YEARS AGO, 30 YEARS AGO. I WITNESSED MY MOTHER BEING |
| 02:15PM | 25 | ABUSED BY MY STEPFATHER. |

02:15PM 1          THE COURT:  OKAY.

02:15PM 2          PROSPECTIVE JUROR:  AND THE AUTHORITIES WERE CALLED.

02:15PM 3          THE COURT:  I SEE.  WERE YOU INVOLVED AT ALL IN

02:15PM 4    THOSE -- ANY PROCEEDINGS?

02:15PM 5          PROSPECTIVE JUROR:  NOT AT ALL.  I WAS INVITED WHEN

02:15PM 6    IT HAPPENED.

02:15PM 7          THE COURT:  OKAY.  AND DO YOU KNOW IF THERE WERE ANY

02:15PM 8    LEGAL PROCEEDINGS THAT RESULTED FROM THAT?

02:15PM 9          PROSPECTIVE JUROR:  THE ONLY THING I KNOW IS THE

02:15PM 10   COPS WERE CALLED.

02:15PM 11         THE COURT:  AND DO YOU KNOW IF ANY THERAPY WAS

02:15PM 12   INVOLVED FOR ANYONE?

02:15PM 13         PROSPECTIVE JUROR:  I KNOW I WENT THROUGH IT WHEN I

02:16PM 14   WAS YOUNGER.

02:16PM 15         THE COURT:  OKAY.  HOW LONG DID YOU SEE A THERAPIST?

02:16PM 16         PROSPECTIVE JUROR:  IT WAS JUST BRIEFLY TO TALK

02:16PM 17   ABOUT THE SITUATION I WENT THROUGH, AND I GOT AWAY FROM IT

02:16PM 18   QUICKLY SO IT REALLY DIDN'T IMPACT ME.  IT WAS JUST SOMETHING

02:16PM 19   THAT I OBSERVED.

02:16PM 20         THE COURT:  SURE.  OKAY.  THANK YOU VERY MUCH.

02:16PM 21   THANK YOU.

02:16PM 22      IS THERE ANYONE ELSE?  OH, YES, MS. LOCKWOOD, NUMBER 99.

02:16PM 23         PROSPECTIVE JUROR:  BACK IN 2012 I HAD TO LEAVE AN

02:16PM 24   ABUSIVE PARTNER THAT I LIVED WITH AND AFTER THEY STOLE MY

02:16PM 25   IDENTITY AND HAD ALSO OTHER THINGS THAT WERE BOTH PHYSICALLY,

02:16PM 1    SEXUALLY, EMOTIONALLY ABUSIVE IN THE HOME AND OUTSIDE OF THE

02:16PM 2    HOME.  SO, YEAH.

02:16PM 3            THE COURT:  OKAY.  AND WERE THERE ANY LEGAL

02:16PM 4    PROCEEDINGS AS A RESULT OF THAT CONDUCT?

02:17PM 5            PROSPECTIVE JUROR:  JUST ABOUT THE IDENTITY BEING

02:17PM 6    STOLEN BECAUSE A LOT OF MONEY WAS INVOLVED AND IT HAD TO DO

02:17PM 7    WITH HIS PAST EMPLOYMENT.

02:17PM 8            THE COURT:  I SEE.

02:17PM 9       WERE YOU CALLED UPON TO OFFER TESTIMONY IN A PROCEEDING AT

02:17PM 10   ALL?

02:17PM 11           PROSPECTIVE JUROR:  I WAS NOT.

02:17PM 12           THE COURT:  OR DID YOU WRITE A DECLARATION OR

02:17PM 13   ANYTHING LIKE THAT?

02:17PM 14           PROSPECTIVE JUROR:  I DID WRITE A DECLARATION.

02:17PM 15           THE COURT:  OKAY.  WAS THAT FOR LAW ENFORCEMENT?

02:17PM 16           PROSPECTIVE JUROR:  YES.  I HAD DONE A STATEMENT AS

02:17PM 17   WELL AS A DECLARATION.

02:17PM 18           THE COURT:  I SEE.

02:17PM 19           PROSPECTIVE JUROR:  YEAH.

02:17PM 20           THE COURT:  AND, MS. LOCKWOOD, DID YOU RECEIVE ANY

02:17PM 21   THERAPY OR COUNSELLING FOR ANY OF THOSE?

02:17PM 22           PROSPECTIVE JUROR:  I DID.

02:17PM 23           THE COURT:  I SEE.  AND HOW LONG WAS THAT?

02:17PM 24           PROSPECTIVE JUROR:  I SEEKED IT OUT A FEW MONTHS

02:17PM 25   AFTER THAT AND THEN FOLLOWED UP ABOUT A YEAR AFTER THAT.

02:17PM 1          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU VERY MUCH.

02:17PM 2    THANK YOU.

02:17PM 3          I SAW A HAND BACK IN THE GALLERY, SO LET'S PASS THIS BACK.

02:18PM 4          WE'LL SEND IT BACK.  AND WE'LL START WITH MR. BROWN BACK

02:18PM 5    IN THE CORNER, JUROR NUMBER 171.

02:18PM 6          PROSPECTIVE JUROR:  YES, YOUR HONOR.

02:18PM 7          SO I GREW UP IN AN ABUSIVE HOUSEHOLD AS WELL AS A CHILD

02:18PM 8    WITNESSING MY MOM AND MY STEPFATHER FIGHTING AND JUST HAVING

02:18PM 9    ALTERCATIONS, AND THAT'S PROBABLY BEEN ABOUT 45 YEARS AGO.

02:18PM 10         THE COURT:  ALL RIGHT, SIR.  WAS LAW ENFORCEMENT

02:18PM 11   INVOLVED IN ANY OF THOSE SITUATIONS, SIR?

02:18PM 12         PROSPECTIVE JUROR:  NO.

02:18PM 13         THE COURT:  AND DID YOU, DID YOU OR HAVE YOU

02:18PM 14   RECEIVED ANY COUNSELLING, THERAPY, OR TALKED TO ANYONE ABOUT

02:18PM 15   THOSE CIRCUMSTANCES?

02:18PM 16         PROSPECTIVE JUROR:  NO.

02:18PM 17         THE COURT:  OKAY.  ALL RIGHT.  THANK YOU, SIR.

02:18PM 18         PROSPECTIVE JUROR:  HI.  IN '83 I MARRIED AN

02:19PM 19   ALCOHOLIC.

02:19PM 20         THE COURT:  AND WHAT JUROR NUMBER ARE YOU?

02:19PM 21         PROSPECTIVE JUROR:  174.

02:19PM 22         THE COURT:  174.  THANK YOU, MS. RIGGINS.

02:19PM 23         PROSPECTIVE JUROR:  I HAD THE COPS CALLED ON HIM A

02:19PM 24   FEW TIMES AND HAD HIM HAULED AWAY TO JAIL.  AFTER WE SPLIT HE

02:19PM 25   CONTINUED TO HARASS ME UNTIL HE DIED AND THEN I DIDN'T HAVE TO

02:19PM  1    WORRY ABOUT IT ANYMORE.

02:19PM  2              THE COURT:  OKAY.  I THINK I READ ABOUT THIS.  YOU

02:19PM  3    TOLD US ABOUT THIS IN YOUR QUESTIONNAIRE.  THANK YOU.

02:19PM  4         DID YOU RECEIVE ANY COUNSELLING, THERAPY FOR THIS?

02:19PM  5              PROSPECTIVE JUROR:  NO.

02:19PM  6              THE COURT:  DID YOU GO TO COURT FOR ANY LEGAL

02:19PM  7    PROCEEDINGS?

02:19PM  8              PROSPECTIVE JUROR:  NO, I COULDN'T AFFORD A DIVORCE.

02:19PM  9    I WAS A SINGLE MOTHER AFTER THAT AND SO JUST STAYING AWAY FROM

02:19PM  10   HIM.

02:19PM  11             THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU SO

02:19PM  12   MUCH.

02:19PM  13             PROSPECTIVE JUROR:  UH-HUH.

02:19PM  14             THE COURT:  WAS THERE ANOTHER HAND?

02:19PM  15        YES.  IS THAT MS. QUINTANILLA?

02:19PM  16             PROSPECTIVE JUROR:  YES.

02:19PM  17             THE COURT:  YES.

02:19PM  18             PROSPECTIVE JUROR:  A FEW MONTHS AGO WE HAD A

02:19PM  19   SITUATION IN OUR FAMILY WHERE MY BOY WAS FRIENDED BY SOMEBODY

02:20PM  20   ONLINE.

02:20PM  21             THE COURT:  I THINK YOU MENTIONED THIS IN YOUR

02:20PM  22   QUESTIONNAIRE.

02:20PM  23             PROSPECTIVE JUROR:  YES.

02:20PM  24             THE COURT:  YES, I SAW THAT.

02:20PM  25             PROSPECTIVE JUROR:  SO THIS GIRL OR LADY FRIENDED

406

| | | |
|---|---|---|
| 02:20PM | 1 | HIM, AND HE TOOK SOME COMPROMISING PICTURES, AND SHE THREATENED |
| 02:20PM | 2 | TO SEND THE PICTURES TO HIS FRIENDS, AND WE DIDN'T KNOW THIS. |
| 02:20PM | 3 | HE WAS REALLY -- HE SEEMED TO BE DEVASTATED, BUT WE |
| 02:20PM | 4 | DIDN'T KNOW IF IT WAS SCHOOL RELATED OR SOMETHING.  AND WHEN HE |
| 02:20PM | 5 | TOLD ME ABOUT IT HE HAD -- SHE HAD HIM SEND SOME MONEY. |
| 02:20PM | 6 | THE COURT:  YES. |
| 02:20PM | 7 | PROSPECTIVE JUROR:  SO THIS WAS SO HARD FOR HIM IN |
| 02:21PM | 8 | THE FAMILY, AND I WAS SO AFRAID FOR HIM THE WAY HE WAS.  AND I |
| 02:21PM | 9 | TOLD HIM WAS TO CUT EVERYTHING, AND HE DELETED HIS SAVINGS. |
| 02:21PM | 10 | AND I SAID, WELL, WHAT DO WE DO?  WE COULDN'T GO TO THE |
| 02:21PM | 11 | POLICE BECAUSE HE DIDN'T TAKE SNAPSHOTS, HE DIDN'T HAVE ANY |
| 02:21PM | 12 | PROOF.  HE ONLY HAD LIKE THE WIRE OF THE MONEY, BUT THIS |
| 02:21PM | 13 | FRIGHTENS ME BECAUSE IT COULD AFFECT HIM AND WHAT WE ADVISING |
| 02:21PM | 14 | HIM WAS TO CUT ALL TIES. |
| 02:21PM | 15 | THE COURT:  YES. |
| 02:21PM | 16 | PROSPECTIVE JUROR:  AND WE WOULD JUST HAVE TO DEAL |
| 02:21PM | 17 | WITH WHATEVER. |
| 02:22PM | 18 | SO THIS PERSON IS STILL HURTING OUR FAMILY BECAUSE WE |
| 02:22PM | 19 | DON'T KNOW WHAT THEY WILL DO. |
| 02:22PM | 20 | SO AS A MOTHER IT IS VERY HARD BECAUSE I FEEL HOPELESS OF |
| 02:22PM | 21 | WHAT CAN BE DONE.  AND THEN WE TRY TO SEE WHAT PROTECTION WE |
| 02:22PM | 22 | HAVE, AND IT SEEMS LIKE IT'S VERY LITTLE BECAUSE THE AMOUNT OF |
| 02:22PM | 23 | MONEY MIGHT BE LITTLE, BUT HOW IT IS AFFECTING THE FAMILY IS A |
| 02:22PM | 24 | LOT, AND IT'S VERY SCARY.  AND I DID TALK TO SOMEBODY ABOUT IT |
| 02:22PM | 25 | BECAUSE IT'S VERY SCARY. |

02:22PM 1      THE COURT:  YES, I THINK I UNDERSTAND.  THANK YOU

02:22PM 2  FOR SHARING THAT.  I APPRECIATE YOUR COMMENTS.  THANK YOU.

02:22PM 3      ANYONE ELSE?  ANY HANDS?

02:22PM 4      I SEE NO HANDS.

02:23PM 5      DO ANY OF YOU HAVE THOUGHTS ABOUT THE WORK OF

02:23PM 6  PROFESSIONALS WHO ARE INVOLVED IN CASES OF ABUSE OR VIOLENCE,

02:23PM 7  THAT IS, PROFESSIONAL EVALUATIONS, REPORTS, THOSE TYPES OF

02:23PM 8  THINGS?  DO ANY OF YOU HAVE ANY EXPERIENCE WITH THAT?  ANY

02:23PM 9  THOUGHTS ABOUT THOSE?

02:23PM 10     I SEE NO HANDS.

02:23PM 11     HAVE ANY OF YOU KNOWN ANYONE WHO YOU THOUGHT WAS FALSELY

02:23PM 12 OR UNFAIRLY ACCUSED OF DOMESTIC VIOLENCE OR PARTNER ABUSE

02:23PM 13 ALLEGATIONS?  ANYONE HAVE ANY OF THOSE EXPERIENCES?

02:23PM 14     I SEE NO HANDS.

02:23PM 15     HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN ASSOCIATED WITH

02:23PM 16 OR BEEN A CONTRIBUTOR TO ANY DOMESTIC VIOLENCE, VICTIM SUPPORT

02:23PM 17 GROUPS OR WOMEN'S SHELTER OR ORGANIZATIONS THAT ARE INVOLVED IN

02:23PM 18 ABUSE TYPE ISSUES?

02:23PM 19     I SEE NO HANDS.

02:24PM 20     HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN EMPLOYED BY A

02:24PM 21 LAW ENFORCEMENT AGENCY WHICH INCLUDES A DISTRICT ATTORNEY'S

02:24PM 22 OFFICE, UNITED STATES ATTORNEY'S OFFICE, FBI, I.R.S., OR IN THE

02:24PM 23 CRIMINAL JUSTICE SYSTEM, DEFENSE LAWYER, PROBATION OFFICER,

02:24PM 24 INVESTIGATOR, ANYONE HAVE ANY CONTACT WITH ANY OF THOSE

02:24PM 25 EMPLOYMENTS?

408

02:24PM  1          YES, I SEE A HAND.  YOU HAVE IT.

02:24PM  2          YES.  AND THIS IS MR. PERALTA?

02:24PM  3              PROSPECTIVE JUROR:  YES.

02:24PM  4      I HAVE A FRIEND WHO WORKS IN A WASHINGTON STATE DISTRICT

02:24PM  5  COURT AS A PARALEGAL SO.

02:24PM  6              THE COURT:  OKAY.  ALL RIGHT.

02:24PM  7              PROSPECTIVE JUROR:  AND SHE TELLING ME, BECAUSE I

02:24PM  8  ASK A LOT OF QUESTIONS REGARDING MY SITUATION WITH MY WIFE

02:25PM  9  BEFORE, AND SHE'S GIVING ME ADVICES WITH REGARDS TO THOSE.

02:25PM  10             THE COURT:  I SEE.

02:25PM  11     HOW LONG AGO HAS THAT BEEN, SIR?

02:25PM  12             PROSPECTIVE JUROR:  ABOUT FIVE YEARS AGO.  BUT MY

02:25PM  13  FRIEND IS STILL WORKING AT DISTRICT COURT IN WASHINGTON STATE.

02:25PM  14             THE COURT:  I SEE.  THANK YOU.

02:25PM  15     LET'S PASS THAT OVER, PLEASE.  IS THAT MR. HALL?

02:25PM  16             PROSPECTIVE JUROR:  WAS THE QUESTION ABOUT US HAVING

02:25PM  17  EMPLOYMENT OR US KNOWING SOMEONE EMPLOYED?

02:25PM  18             THE COURT:  BOTH HAVE YOU BEEN EMPLOYED OR KNOW

02:25PM  19  SOMEONE WHO IS?

02:25PM  20             PROSPECTIVE JUROR:  MY UNCLE WAS A DISTRICT ATTORNEY

02:25PM  21  IN SANTA CLARA COUNTY CONSUMER FRAUD DEPARTMENT FOR MANY, MANY

02:25PM  22  YEARS UNTIL HE RETIRED.

02:25PM  23             THE COURT:  I THINK I SAW THAT.  WHO WAS THAT

02:25PM  24  PERSON?

02:25PM  25             PROSPECTIVE JUROR:  ALBERT BENDER.

| | | |
|---|---|---|
| 02:25PM | 1 | THE COURT:  YES.  AND HE RETIRED SOME TIME AGO I |
| 02:25PM | 2 | THINK. |
| 02:25PM | 3 | PROSPECTIVE JUROR:  YEAH, HE DID. |
| 02:25PM | 4 | THE COURT:  OKAY.  ALL RIGHT. |
| 02:25PM | 5 | DID YOU EVER TALK TO HIM ABOUT HIS WORK? |
| 02:26PM | 6 | PROSPECTIVE JUROR:  NOT IN ANY GREAT DETAIL.  HE |
| 02:26PM | 7 | WROTE A BOOK, YOU KNOW, VERY HIGH LEVEL, NOT DETAILED, ABOUT |
| 02:26PM | 8 | JUST EXPERIENCE AS A D.A. AND AN ATTORNEY BUT IT WAS -- YOU |
| 02:26PM | 9 | KNOW, NOTHING HUGE DETAILS, PERSONAL STUFF SO. |
| 02:26PM | 10 | THE COURT:  THANK YOU.  I SEE SOME OTHER HANDS UP. |
| 02:26PM | 11 | IS THAT -- |
| 02:26PM | 12 | PROSPECTIVE JUROR:  155. |
| 02:26PM | 13 | THE COURT:  -- MS. MARTINEZ? |
| 02:26PM | 14 | PROSPECTIVE JUROR:  YES. |
| 02:26PM | 15 | THE COURT:  YES. |
| 02:26PM | 16 | PROSPECTIVE JUROR:  MY SISTER WORKED FOR THE SALINAS |
| 02:26PM | 17 | POLICE DEPARTMENT.  SHE DID REPORTING FOR THE POLICE |
| 02:26PM | 18 | DEPARTMENT. |
| 02:26PM | 19 | THE COURT:  DO YOU KNOW IN WHAT CAPACITY? |
| 02:26PM | 20 | PROSPECTIVE JUROR:  SHE DID THE PAPERWORK FOR THE |
| 02:26PM | 21 | DIFFERENT INCIDENTS THAT HAPPENED IN THE CITY OF SALINAS -- |
| 02:26PM | 22 | THE COURT:  I SEE. |
| 02:26PM | 23 | PROSPECTIVE JUROR:  -- REGARDING THE POLICE |
| 02:26PM | 24 | DEPARTMENT. |
| 02:26PM | 25 | THE COURT:  I SEE.  THANK YOU. |

| | | |
|---|---|---|
| 02:26PM | 1 | DOES SHE TALK TO YOU ABOUT HER WORK? |
| 02:26PM | 2 | PROSPECTIVE JUROR:  NO.  SHE SINCE HAS PASSED ON. |
| 02:27PM | 3 | THE COURT:  I SEE.  ALL RIGHT.  THANK YOU. |
| 02:27PM | 4 | LET'S MOVE IT UP TO -- IS THAT MR. TAUSWORTHE? |
| 02:27PM | 5 | PROSPECTIVE JUROR:  YES, 141. |
| 02:27PM | 6 | THE COURT:  YES. |
| 02:27PM | 7 | PROSPECTIVE JUROR:  I HAVE ONE FRIEND OF THE FAMILY. |
| 02:27PM | 8 | SHE RUNS A CHARITY ORGANIZATION THAT DONATES CLOTHES TO |
| 02:27PM | 9 | CHILDREN AND YOUNG PEOPLE WHO HAVE BEEN SEXUALLY ASSAULTED. |
| 02:27PM | 10 | THE COURT:  OKAY. |
| 02:27PM | 11 | PROSPECTIVE JUROR:  ANOTHER FRIEND OF THE FAMILY, |
| 02:27PM | 12 | SHE RUNS A SINGLE WOMEN, ESCAPED WOMEN, BATTERED WOMEN, |
| 02:27PM | 13 | ET CETERA, SUPPORT GROUP OVER IN DETROIT. |
| 02:27PM | 14 | I'D FORGOTTEN TO MENTION EARLIER, I DIDN'T REMEMBER UNTIL |
| 02:27PM | 15 | YOU BROUGHT IT UP, I KNOW PEOPLE WHO WORK IN THIS.  SHE WAS |
| 02:27PM | 16 | ALSO SOMEBODY WHO I KNEW WHO EXPERIENCED ABUSE LIKE THAT.  SHE |
| 02:27PM | 17 | HAD BEEN IN A RELATIONSHIP WITH A MAN FOR A LONG TIME AND UNTIL |
| 02:27PM | 18 | SHE MANAGED TO ESCAPE BASICALLY IN THE MIDDLE OF THE NIGHT |
| 02:28PM | 19 | WORKING WITH ANOTHER GROUP TO DO THAT AND RAN OVER TO DETROIT. |
| 02:28PM | 20 | THE COURT:  I SEE. |
| 02:28PM | 21 | PROSPECTIVE JUROR:  THAT WOULD HAVE BEEN -- I WAS IN |
| 02:28PM | 22 | FIFTH GRADE SO THAT WOULD HAVE BEEN 15 -- NO, FOURTH GRADE, 15, |
| 02:28PM | 23 | 16 YEARS AGO. |
| 02:28PM | 24 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU, SIR. |
| 02:28PM | 25 | MR. MURPHY? |

02:28PM  1                     PROSPECTIVE JUROR:  130.

02:28PM  2          I GUESS I WOULD CHARACTERIZE BEING PROFESSIONALLY

02:28PM  3     ACQUAINTED WITH THE SHERIFF OF THE COUNTY, THE DISTRICT

02:28PM  4     ATTORNEY OF THE COUNTY AND STAFF IN THOSE ORGANIZATIONS THROUGH

02:28PM  5     THE WORK THAT I'VE DONE AT THE COUNTY THROUGHOUT THE YEARS.

02:28PM  6                     THE COURT:  AND THAT WOULD INCLUDE COUNTY COUNSEL

02:28PM  7     AND THE PUBLIC DEFENDER'S OFFICE?

02:28PM  8                     PROSPECTIVE JUROR:  YEAH.  YOU DIDN'T MENTION COUNTY

02:28PM  9     COUNSEL IN YOUR LIST, BUT I WAS EMPLOYED BY COUNTY COUNSEL FOR

02:28PM 10     TWO AND A HALF YEARS FROM 2017 TO 2019 AND DURING MY TIME AS A

02:28PM 11     MEMBER OF THE MANAGEMENT AUDIT DIVISION TO THE BOARD OF

02:28PM 12     SUPERVISORS I CONDUCTED A MANAGEMENT AUDIT OF THE SHERIFF'S

02:29PM 13     DEPARTMENT.

02:29PM 14                     THE COURT:  OKAY.  AND HOW LONG AGO WAS THAT?

02:29PM 15                     PROSPECTIVE JUROR:  WHEW.  BETWEEN 2001 AND 2006,

02:29PM 16     AND I THINK THAT ENGAGEMENT WAS PROBABLY 2003, 2004.

02:29PM 17                     THE COURT:  ALL RIGHT.  THANK YOU.

02:29PM 18                     PROSPECTIVE JUROR:  YEAH.

02:29PM 19                     THE COURT:  AND WAS THAT YOUR JOB TITLE WITH THE

02:29PM 20     COUNTY COUNSEL?

02:29PM 21                     PROSPECTIVE JUROR:  MY JOB TITLE WITH THE COUNTY

02:29PM 22     COUNSEL, AND I'M NOT AN ATTORNEY --

02:29PM 23                     THE COURT:  RIGHT.

02:29PM 24                     PROSPECTIVE JUROR:  -- WAS WHISTLEBLOWER PROGRAM

02:29PM 25     MANAGER.

412

02:29PM  1          THE COURT:  OKAY.  AND YOU DID INTERNAL

02:29PM  2    INVESTIGATIONS THROUGH THE COUNTY COUNSEL'S OFFICE?

02:29PM  3          PROSPECTIVE JUROR:  YES.  I WAS MORE A PROGRAM

02:29PM  4    MANAGER BUILDING THE PROGRAM.  I DID SOME INVESTIGATIVE WORK,

02:29PM  5    BUT IT WAS GENERALLY REFERRING COMPLAINTS TO THE APPROPRIATE

02:29PM  6    PARTS TO THE COUNTY, AND THERE WERE PROGRAM STAFF UNDERNEATH ME

02:29PM  7    THAT CONDUCTED MOST OF THE INVESTIGATIONS.

02:29PM  8          THE COURT:  I SEE.

02:29PM  9        WERE THE INVESTIGATIONS -- OR EXCUSE ME.  WERE YOUR

02:29PM  10   REFERRALS EVER REFERRED TO THE ATTORNEY GENERAL'S OFFICE FOR

02:29PM  11   THE STATE OF CALIFORNIA OR ANY FEDERAL AGENCY TO YOUR

02:30PM  12   RECOLLECTION?

02:30PM  13         PROSPECTIVE JUROR:  NO.

02:30PM  14         THE COURT:  ALL RIGHT.

02:30PM  15         PROSPECTIVE JUROR:  AND IF YOU WANTED TO TALK ABOUT

02:30PM  16   IT FURTHER I WOULD ASK TO TALK TO YOU ABOUT IT IN PRIVATE

02:30PM  17   BECAUSE THOSE MATTERS ARE CONFIDENTIAL.

02:30PM  18         THE COURT:  NO, I DON'T WANT TO -- I DON'T NEED TO

02:30PM  19   KNOW THE SPECIFICS OF THE INVESTIGATIONS.

02:30PM  20         PROSPECTIVE JUROR:  OKAY.

02:30PM  21         THE COURT:  YOUR JOB TITLE AND DUTIES WAS

02:30PM  22   APPROPRIATE.  THANK YOU.

02:30PM  23        ANYONE ELSE IN RESPONSE TO THIS QUESTION?

02:30PM  24        I SEE NO HANDS.

02:30PM  25         WOULD ANY OF YOU GIVE GREATER OR LESSER CREDENCE TO A LAW

02:30PM 1   ENFORCEMENT OFFICER WHO IS AN AGENT, GOVERNMENT REPRESENTATIVE

02:30PM 2   SIMPLY BECAUSE THAT PERSON IS A LAW ENFORCEMENT OFFICER, AGENT,

02:30PM 3   OR REPRESENTATIVE?

02:30PM 4       THIS QUESTION ASKS YOU HOW WOULD YOU WEIGH A LAW

02:30PM 5   ENFORCEMENT OFFICER, AGENT, OR INVESTIGATOR TESTIMONY AS A

02:30PM 6   WITNESS?  WOULD YOU GIVE IT MORE WEIGHT, LESS WEIGHT JUST

02:30PM 7   BECAUSE OF THEIR EMPLOYMENT?  ANYONE FEEL THAT THEY WOULD DO

02:31PM 8   THAT?

02:31PM 9       YES.  LET'S PASS THAT.

02:31PM 10              PROSPECTIVE JUROR:  154.

02:31PM 11              THE COURT:  OKAY.  YES.

02:31PM 12              PROSPECTIVE JUROR:  MORE.

02:31PM 13              THE COURT:  MS. KEHN, YOU SAID MORE?

02:31PM 14              PROSPECTIVE JUROR:  YES, MORE.

02:31PM 15              THE COURT:  AND WHY IS THAT?

02:31PM 16              PROSPECTIVE JUROR:  BECAUSE I TRUST THEM IN GENERAL.

02:31PM 17              THE COURT:  I DON'T THINK I TOLD YOU THIS, BUT

02:31PM 18   YOU'RE JUDGES OF THE FACTS.  YOU GET TO DECIDE WHAT HAPPENED,

02:31PM 19   WHAT DIDN'T HAPPEN, AND IN THE COURSE OF DOING YOUR JOB, YOU

02:31PM 20   WEIGH THE CREDIBILITY OF TESTIMONY, WITNESSES, EXHIBITS, YOU

02:31PM 21   GET TO DECIDE THE CREDIBILITY OF THOSE THINGS.

02:31PM 22       I ASK THIS QUESTION BECAUSE I WANT TO KNOW, AND THE

02:31PM 23   LAWYERS WANT TO KNOW, WHETHER OR NOT IF LAW ENFORCEMENT

02:31PM 24   TESTIFIES IN THE CASE, AN AGENT OR SOMEBODY -- I HAVE REASON TO

02:32PM 25   BELIEVE THAT THERE AREN'T GOING TO BE LOCAL POLICE OFFICERS WHO

02:32PM 1    TESTIFY, BEAT COPS IF YOU WILL, AND OFFICERS WHO DRIVE BLACK

02:32PM 2    AND WHITE POLICE CARS IF YOU KNOW WHAT I MEAN.

02:32PM 3        THERE MAY BE AGENTS OR REPRESENTATIVES FROM OTHER

02:32PM 4    INVESTIGATIVE DIVISIONS, THEY MAY TESTIFY ABOUT AND GIVE

02:32PM 5    EVIDENCE ABOUT THEIR INVESTIGATIONS.

02:32PM 6        AND THIS QUESTION IS DESIGNED TO DETERMINE WHETHER OR NOT

02:32PM 7    JUST BECAUSE OF THE TITLE THAT THEY HAVE SOMEONE MIGHT WEIGH

02:32PM 8    THEIR TESTIMONY HIGHER OR GIVE IT GREATER CREDENCE NOT REALLY

02:32PM 9    LISTENING TO WHAT IT IS, BUT JUST BECAUSE OF THEIR JOB TITLE.

02:32PM 10   THAT'S WHAT THE QUESTION IS.

02:32PM 11       I THINK WHAT YOU SAID, MA'AM, IS THAT YOU'RE INCLINED TO

02:32PM 12   DO THAT.  YOU WOULD GIVE IT MORE WEIGHT?

02:32PM 13           PROSPECTIVE JUROR:  I JUST THINK I WOULD, ESPECIALLY

02:32PM 14   IF THEY'RE WEARING A UNIFORM, LIKE IF IT WAS A POLICE OFFICER

02:32PM 15   IN A UNIFORM.  I DON'T KNOW IF IT'S LIKE ATTORNEYS AND STUFF

02:33PM 16   LIKE THAT --

02:33PM 17       (LAUGHTER.)

02:33PM 18           PROSPECTIVE JUROR:  SORRY, GUYS.

02:33PM 19           THE COURT:  OKAY.  ALL RIGHT.  WELL, THANK YOU.  WE

02:33PM 20   ASK YOU TO BE CANDID, AND WE APPRECIATE YOUR COMMENTS.

02:33PM 21       I DON'T THINK THAT -- THIS WAS TOUCHED ON YESTERDAY.  I

02:33PM 22   DON'T BELIEVE THAT THERE'S GOING TO BE WITNESSES WHO WILL

02:33PM 23   TESTIFY IN THE TRADITIONAL POLICE UNIFORMS.  I DON'T THINK THAT

02:33PM 24   TYPE OF LAW ENFORCEMENT IS INVOLVED IN THIS CASE.

02:33PM 25       IS THAT ACCURATE, MR. SCHENK?

| | | |
|---|---|---|
| 02:33PM | 1 | MR. SCHENK:  YES, THAT IS CORRECT. |
| 02:33PM | 2 | PROSPECTIVE JUROR:  OKAY. |
| 02:33PM | 3 | THE COURT:  BUT YOU MIGHT HEAR REPRESENTATIVES FROM |
| 02:33PM | 4 | DIFFERENT GOVERNMENTAL AGENCIES WHO MIGHT TESTIFY IN AN |
| 02:33PM | 5 | INVESTIGATIVE FASHION, OR A REGULATORY AGENCY WHO WILL TALK |
| 02:33PM | 6 | ABOUT THE RESULT OF THEIR INVESTIGATION. |
| 02:33PM | 7 | YOU'RE SHAKING YOUR HEAD LEFT AND RIGHT. |
| 02:33PM | 8 | PROSPECTIVE JUROR:  NO.  LIKE YOU SAID ONE OF THESE |
| 02:33PM | 9 | GUYS ARE FBI.  NEY.  SORRY, BUT NEY. |
| 02:33PM | 10 | THE COURT:  OKAY.  ALL RIGHT. |
| 02:34PM | 11 | PROSPECTIVE JUROR:  IT'S MORE LIKE POLICE OFFICER |
| 02:34PM | 12 | UNIFORM, SHERIFF UNIFORM GUYS. |
| 02:34PM | 13 | THE COURT:  OKAY. |
| 02:34PM | 14 | PROSPECTIVE JUROR:  I JUST HAVE A TENDENCY TO -- AND |
| 02:34PM | 15 | IT'S JUST LEFT OVER FROM STUFF IN MY CHILDHOOD AND STUFF. |
| 02:34PM | 16 | THE COURT:  THANK YOU. |
| 02:34PM | 17 | PROSPECTIVE JUROR:  SO, YEAH. |
| 02:34PM | 18 | THE COURT:  NO.  THAT'S THE ANSWER.  THANK YOU. |
| 02:34PM | 19 | THANK YOU. |
| 02:34PM | 20 | ANYONE ELSE? |
| 02:34PM | 21 | YES, LET'S COME BACK TO -- OH, I'M SORRY.  IS THERE ANYONE |
| 02:34PM | 22 | BACK -- |
| 02:34PM | 23 | PROSPECTIVE JUROR:  WHERE AM I GOING?  BACKWARDS? |
| 02:34PM | 24 | THE COURT:  YES. |
| 02:34PM | 25 | PROSPECTIVE JUROR:  THERE YOU GO. |

02:34PM   1              THE COURT:  IS THIS MR. BUI?

02:34PM   2              PROSPECTIVE JUROR:  HI.  I'M 157.

02:34PM   3              THE COURT:  MR. BUI, YES.

02:34PM   4              PROSPECTIVE JUROR:  YEAH.  SO I THINK I WOULD BE A

02:34PM   5     LITTLE MORE INCLINED TO BELIEVE A PERSON OR OFFICERS, YOU KNOW,

02:34PM   6     THAT IS INVOLVED IN THE CASE AND GIVING EVIDENCE.

02:34PM   7         YOU KNOW, IF THEY WERE TO TESTIFY AND I'M LISTENING TO,

02:34PM   8     YOU KNOW, THEIR TESTIMONY, I WOULD BE MORE INCLINED TO BELIEVE

02:35PM   9     THAT THEY HAVE, YOU KNOW, MORE EXPERIENCE AND MORE WEIGHT TO

02:35PM   10    WHAT IS GOING ON.  THAT'S KIND OF WHERE I'M LEANING TO A LITTLE

02:35PM   11    BIT.

02:35PM   12             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

02:35PM   13        LET'S PASS THE MICROPHONE TO MS. LOCKWOOD, PLEASE.

02:35PM   14        (PAUSE IN PROCEEDINGS.)

02:35PM   15             THE COURT:  MS. LOCKWOOD.

02:35PM   16             PROSPECTIVE JUROR:  I WOULD ALMOST GIVE THEM LESS

02:35PM   17    WEIGHT BECAUSE OF MY PAST EXPERIENCES.  YOU KNOW, POLICE

02:36PM   18    OFFICERS, AGENTS, EVERYBODY IS STILL HUMAN AT THE END OF THE

02:36PM   19    DAY, AND MAYBE IT'S JUST MY LUCK OF THE DRAW, BUT I HAVE NOT

02:36PM   20    ALWAYS ENDED UP ON THE GREAT SIDE OF LAW ENFORCEMENT AND SO

02:36PM   21    THAT HAS -- I WILL ADMIT THAT HAS COLORED HOW I VIEW THEIR

02:36PM   22    TESTIMONY.

02:36PM   23             THE COURT:  OKAY.  ALL RIGHT.

02:36PM   24             PROSPECTIVE JUROR:  YOU KNOW, JUST BECAUSE OF A

02:36PM   25    POSITION OF POWER, I FEEL THAT IT HOLDS MORE RESPONSIBILITY TO

02:36PM   1      BE MORE HONEST, HAVE MORE INTEGRITY, AND THAT'S NOT WHAT I HAVE

02:36PM   2      PERSONALLY EXPERIENCED FROM LAW ENFORCEMENT.

02:36PM   3              THE COURT:  I SEE.  OKAY.

02:36PM   4          SO DO YOU THINK YOU WOULD -- IF YOU HEARD TESTIMONY FROM,

02:36PM   5      AND YOU HEARD ME AND MR. SCHENK TALK, THERE WON'T BE POLICE

02:36PM   6      OFFICERS WITH BADGES AND UNIFORMS, BEAT COPS, THEY'RE NOT IN

02:36PM   7      THIS CASE.

02:36PM   8          THEY MIGHT BE PEOPLE FROM AGENCIES WHO ARE IN THE

02:36PM   9      CAPACITY, THEIR JOB TITLE MIGHT BE AN INVESTIGATOR, AN

02:36PM  10      INSPECTOR, SOMETHING LIKE THAT, BUT THEY'RE NOT OUT GIVING

02:37PM  11      SPEEDING TICKETS AND ARRESTING PEOPLE ON THE STREET, THAT TYPE

02:37PM  12      OF THING.

02:37PM  13          DOES THAT MAKE A DISTINCTION FOR YOU THAT IS MORE --

02:37PM  14              PROSPECTIVE JUROR:  NOT REALLY BECAUSE IT'S STILL A

02:37PM  15      POSITION OF POWER THAT THEY HAVE OVER JUST THE AVERAGE PERSON

02:37PM  16      OUT THERE.

02:37PM  17              THE COURT:  I SEE.  I SEE.  OKAY.  ALL RIGHT.  THANK

02:37PM  18      YOU.  THANK YOU FOR THAT.

02:37PM  19          ANYONE ELSE IN RESPONSE TO THIS QUESTION?

02:37PM  20          I SEE NO HANDS.

02:37PM  21          DO ANY OF YOU HAVE ANY OPINIONS ABOUT THE UNITED STATES

02:37PM  22      GOVERNMENT OR THE STATE OF CALIFORNIA, OR ANY FEDERAL OR STATE

02:37PM  23      LAW ENFORCEMENT AGENT OR AGENCY THAT MAY AFFECT YOUR ABILITY TO

02:37PM  24      BE FAIR AND IMPARTIAL IN THIS CASE AS A JUROR?

02:37PM  25          I SEE NO HANDS.

02:37PM   1        IS ANYONE OF THE OPINION THAT THE CRIMINAL JUSTICE SYSTEM

02:37PM   2   IS FUNDAMENTALLY UNFAIR IN SOME WAY SUCH THAT YOUR ABILITY TO

02:37PM   3   BE FAIR AND IMPARTIAL MIGHT BE IMPAIRED?  ANYONE JUST FEEL THAT

02:37PM   4   ABOUT THE CRIMINAL JUSTICE SYSTEM?

02:37PM   5        I SEE NO HANDS.

02:37PM   6        A DEFENDANT IN A CRIMINAL CASE IS PRESUMED TO BE INNOCENT.

02:38PM   7   THIS PRESUMPTION REQUIRES THE GOVERNMENT TO PROVE EACH ELEMENT

02:38PM   8   OF THE CRIME BEYOND A REASONABLE DOUBT.  PROOF BEYOND A

02:38PM   9   REASONABLE DOUBT IS PROOF THAT LEAVES YOU FIRMLY CONVINCED THAT

02:38PM  10   THE DEFENDANT IS GUILTY.

02:38PM  11        IT IS NOT REQUIRED THAT THE GOVERNMENT PROVE GUILT BEYOND

02:38PM  12   ALL POSSIBLE DOUBT.  A REASONABLE DOUBT IS A DOUBT THAT IS

02:38PM  13   BASED ON REASON AND COMMON SENSE AND IS NOT BASED PURELY ON

02:38PM  14   SPECULATION.

02:38PM  15        IT MAY ARISE FROM A CAREFUL AND IMPARTIAL CONSIDERATION OF

02:38PM  16   ALL OF THE EVIDENCE OR FROM LACK OF EVIDENCE.

02:38PM  17        IF AFTER A CAREFUL AND IMPARTIAL CONSIDERATION OF ALL OF

02:38PM  18   THE EVIDENCE YOU ARE NOT CONVINCED BEYOND A REASONABLE DOUBT

02:38PM  19   THAT THE DEFENDANT IS GUILTY, IT IS YOUR DUTY TO FIND THE

02:38PM  20   DEFENDANT NOT GUILTY.

02:38PM  21        ON THE OTHER HAND, IF AFTER A CAREFUL AND IMPARTIAL

02:38PM  22   CONSIDERATION OF ALL OF THE EVIDENCE YOU ARE CONVINCED BEYOND A

02:39PM  23   REASONABLE DOUBT THAT THE DEFENDANT IS GUILTY, IT IS YOUR DUTY

02:39PM  24   TO FIND THE DEFENDANT GUILTY.

02:39PM  25        DOES ANYONE HAVE ANY QUARREL WITH THIS STATEMENT, THIS

02:39PM  1    PRESUMPTION OF INNOCENCE?

02:39PM  2        IS THERE ANYONE WHO CANNOT ABIDE BY, ABIDE BY THIS

02:39PM  3    INSTRUCTION AS TO THE PRESUMPTION OF INNOCENCE?

02:39PM  4        I SEE NO HANDS.

02:39PM  5        IS THERE ANYONE WHO BELIEVES THAT BECAUSE MS. HOLMES IS

02:39PM  6    PRESENT IN COURT ACCUSED OF THESE CHARGES SHE MUST BE GUILTY?

02:39PM  7        ANYONE FEEL THAT?

02:39PM  8        I SEE NO HANDS.

02:39PM  9        YOU UNDERSTAND THEN THAT AFTER HEARING ALL OF THE

02:39PM  10   EVIDENCE, IF YOU DETERMINE THAT THE GOVERNMENT HAS NOT MET

02:39PM  11   THEIR BURDEN OF PROVING THE CASE BEYOND A REASONABLE DOUBT, IT

02:39PM  12   WOULD BE YOUR DUTY TO FIND THE DEFENDANT NOT GUILTY?  YOU ALL

02:39PM  13   UNDERSTAND THAT?  ANYONE WHO DOESN'T?

02:39PM  14       I SEE NO HANDS ON THAT.

02:39PM  15       IF THAT WERE TO BE THE CASE, DO YOU THINK YOU COULD DO

02:39PM  16   THAT AND STILL FACE YOUR FRIENDS, FAMILY, AND MAKE THAT

02:40PM  17   DECISION WITHOUT FEAR OF CRITICISM FROM ANY OF THOSE

02:40PM  18   INDIVIDUALS OR MEDIA?

02:40PM  19       I SEE NO HANDS.

02:40PM  20       YOU HAVE SEEN A VIDEO THAT DISCUSSED THE TOPIC OF

02:40PM  21   UNCONSCIOUS BIAS, AND WE SHOW THIS TO YOU AS AN AID TO CONSIDER

02:40PM  22   YOUR JURY SERVICE AND THE TASK AHEAD OF YOU.  IT'S MEANT AS AN

02:40PM  23   EDUCATIONAL TOOL TO INFORM REGARDING RESEARCH AND STUDIES ON

02:40PM  24   THE ISSUES OF BIAS AND UNCONSCIOUS BIAS.

02:40PM  25       I HOPE YOU FOUND THAT VIDEO INFORMATIVE AND HELPFUL.

02:40PM 1        IN OUR NATION AND STATE WE HAVE CITIZENS, RESIDENTS, AND

02:40PM 2    NON-CITIZENS FROM MANY DIFFERENT RACES, ETHNIC AND CULTURAL

02:40PM 3    BACKGROUNDS.

02:40PM 4        IN THE JURISDICTION OF THIS COURT WE ENJOY A RICH

02:40PM 5    DIVERSITY OF INDIVIDUALS AND CULTURES.  UNDER THE LAW ALL

02:40PM 6    PEOPLE WHO APPEAR IN COURT REGARDLESS OF RACE, RELIGION, ETHNIC

02:40PM 7    HERITAGE, GENDER, AGE OR SEXUAL ORIENTATION ARE ENTITLED TO DUE

02:41PM 8    PROCESS OF LAW, AND WE GUARANTEE EACH PERSON THE RIGHT TO A

02:41PM 9    FAIR AND IMPARTIAL TRIAL.

02:41PM 10       WE ARE TO JUDGE EACH INDIVIDUAL AS WE WOULD WANT TO BE

02:41PM 11   JUDGED, THAT IS, FAIRLY AND IMPARTIALLY.

02:41PM 12       NOW, IT MAY APPEAR IN THE COURSE OF THIS TRIAL THAT MORE

02:41PM 13   THAN ONE PARTY, OR ATTORNEY, OR WITNESSES COME FROM A NATIONAL

02:41PM 14   OR RACIAL OR RELIGIOUS GROUP OR MAY HAVE A DIFFERENT LIFESTYLE

02:41PM 15   THAN YOUR OWN.

02:41PM 16       WOULD THIS IN ANY WAY AFFECT YOUR JUDGMENT OR THE WEIGHT

02:41PM 17   AND CREDIBILITY THAT YOU WOULD GIVE TO ANY EVIDENCE IN THIS

02:41PM 18   CASE?  ANYONE WHO FEELS THAT THAT WOULD AFFECT THEIR JUDGMENT

02:41PM 19   ON THIS ISSUE?

02:41PM 20       I SEE NO HANDS.

02:41PM 21       TO REACH A VERDICT THE JURY MUST BE UNANIMOUS.  DO YOU ALL

02:41PM 22   ACCEPT THE REQUIREMENT THAT A JURY MUST BE UNANIMOUS?

02:41PM 23       ANYONE WHO PARTS COMPANY WITH THAT?

02:41PM 24       I SEE NO HANDS.

02:41PM 25       DOES ANYONE FEEL THAT BECAUSE OF A PHILOSOPHICAL, MORAL OR

| | | |
|---|---|---|
| 02:41PM | 1 | OTHER RELIGIOUS REASONS THEY CANNOT SIT AS A JUROR IN A |
| 02:42PM | 2 | CRIMINAL CASE?  ANYONE HAVE THOSE FEELINGS? |
| 02:42PM | 3 | I SEE NO HANDS. |
| 02:42PM | 4 | AS A JUROR, AS I TOLD YOU, YOU'RE ASKED TO DETERMINE THE |
| 02:42PM | 5 | FACTS AND WHETHER THE DEFENDANT DID, IN FACT, COMMIT THE ACTS |
| 02:42PM | 6 | THAT CONSTITUTE THE OFFENSES CHARGED.  THAT'S YOUR TASK. |
| 02:42PM | 7 | AS A JUROR, YOU ARE NOT TO CONSIDER NOR SPECULATE ON THE |
| 02:42PM | 8 | QUESTION OF PUNISHMENT.  THAT QUESTION IS SOLELY IN THE |
| 02:42PM | 9 | PROVINCE OF THE COURT. |
| 02:42PM | 10 | IS THERE ANYONE WHO PARTS COMPANY WITH THAT? |
| 02:42PM | 11 | I SEE NO HANDS. |
| 02:42PM | 12 | IN OUR COURTS AN ACCUSED HAS THE RIGHT TO REMAIN SILENT |
| 02:42PM | 13 | AND NOT TESTIFY.  A DEFENDANT MAY CHOOSE TO RELY ON THE STATE |
| 02:42PM | 14 | OF THE EVIDENCE AT THE CONCLUSION OF THE GOVERNMENT'S CASE AND |
| 02:42PM | 15 | PRESENT NO AFFIRMATIVE EVIDENCE. |
| 02:42PM | 16 | DO YOU ALL ACCEPT THE DEFENDANT'S RIGHT UNDER THE |
| 02:42PM | 17 | CONSTITUTION TO REMAIN SILENT AND THUS NOT TESTIFY IN THE CASE? |
| 02:43PM | 18 | IS THERE ANYONE WHO PARTS COMPANY WITH THAT? |
| 02:43PM | 19 | I SEE NO HANDS. |
| 02:43PM | 20 | IF MS. HOLMES RELIES ON HER RIGHT NOT TO TESTIFY, WILL |
| 02:43PM | 21 | ANYONE HOLD THAT AGAINST HER? |
| 02:43PM | 22 | I SEE A HAND.  IS THAT MR. BUI? |
| 02:43PM | 23 | YES, SIR, WE'LL GET THE MICROPHONE TO YOU.  157. |
| 02:43PM | 24 | PROSPECTIVE JUROR:  TEST. |
| 02:43PM | 25 | THE COURT:  YES, MR. BUI? |

| | | |
|---|---|---|
| 02:43PM | 1 | PROSPECTIVE JUROR:  HI.  YEAH, YOU KNOW, I THINK I |
| 02:43PM | 2 | WOULD LIKE TO HEAR HER TESTIMONY AND HER SIDE OF, YOU KNOW, |
| 02:43PM | 3 | WHAT SHE'S GOING THROUGH AND THE SIDE OF HER STORY AND |
| 02:43PM | 4 | EXPERIENCE. |
| 02:43PM | 5 | I UNDERSTAND THAT SHE'S NOT FORCED OR REQUIRED TO, BUT I |
| 02:44PM | 6 | THINK FOR ME IT WOULD PROBABLY HELP ME, YOU KNOW, KIND OF |
| 02:44PM | 7 | UNDERSTANDING WHAT IS HAPPENING IN THIS TRIAL. |
| 02:44PM | 8 | THE COURT:  OKAY.  ALL RIGHT.  I APPRECIATE THAT. |
| 02:44PM | 9 | BUT EARLIER I TALKED TO YOU ABOUT THE PRESUMPTION OF |
| 02:44PM | 10 | INNOCENCE.  YOU REMEMBER THAT? |
| 02:44PM | 11 | PROSPECTIVE JUROR:  SORT OF. |
| 02:44PM | 12 | THE COURT:  OKAY. |
| 02:44PM | 13 | (LAUGHTER.) |
| 02:44PM | 14 | THE COURT:  WELL, WHAT IT MEANS, SIR, IS THAT WHEN |
| 02:44PM | 15 | SOMEONE IS CHARGED WITH AN OFFENSE THEY ARE PRESUMED -- THE |
| 02:44PM | 16 | PRESUMPTION IS THAT THEY ARE NOT GUILTY.  THIS PRESUMPTION THEN |
| 02:44PM | 17 | REQUIRES THE GOVERNMENT TO PROVE THEIR GUILT BEYOND A |
| 02:44PM | 18 | REASONABLE DOUBT.  I JUST CAN READ TO YOU THE INSTRUCTION, THE |
| 02:44PM | 19 | REASONABLE DOUBT INSTRUCTION. |
| 02:44PM | 20 | SO SOMEONE IN OUR COUNTRY WHO IS ACCUSED OF AN OFFENSE |
| 02:44PM | 21 | DOES NOT HAVE TO PROVE THAT THEY'RE NOT GUILTY.  THAT'S WHAT |
| 02:44PM | 22 | THAT CONCEPT MEANS. |
| 02:45PM | 23 | DO YOU UNDERSTAND THAT? |
| 02:45PM | 24 | PROSPECTIVE JUROR:  YEAH.  AND LIKE I SAID, I AGREE, |
| 02:45PM | 25 | YOU KNOW, SHE IS PRESUMED TO BE NOT GUILTY, BUT I WOULD LIKE TO |

| | | |
|---|---|---|
| 02:45PM | 1 | HEAR HER SIDE OF THE STORY AND TESTIMONY LIKE REGARDLESS. |
| 02:45PM | 2 | THE COURT:  SURE.  I APPRECIATE THAT. |
| 02:45PM | 3 | BUT THE WAY, THE WAY OUR LAW IS, IS THAT A DEFENDANT WHO |
| 02:45PM | 4 | IS ACCUSED, BECAUSE THE GOVERNMENT HAS THE BURDEN OF PROOF, A |
| 02:45PM | 5 | DEFENDANT COULD AT THE END OF A CASE NOT PUT ANY EVIDENCE ON |
| 02:45PM | 6 | AND MAKE THE ARGUMENT THAT THE GOVERNMENT HAS NOT PROVED THEIR |
| 02:45PM | 7 | CASE.  SOMEONE COULD DO THAT.  AND THEN THE JURY WILL HAVE TO |
| 02:45PM | 8 | DECIDE, WELL, DID THEY PROVE THE CASE OR NOT?  THAT'S THE |
| 02:45PM | 9 | ULTIMATE ISSUE. |
| 02:45PM | 10 | DOES THAT HELP YOU WITH THAT CONCEPT? |
| 02:45PM | 11 | PROSPECTIVE JUROR:  YEAH, I UNDERSTAND.  I WAS JUST |
| 02:45PM | 12 | REALLY SHARING A THOUGHT/OPINION I GUESS. |
| 02:46PM | 13 | THE COURT:  YEAH -- NO.  I'M NOT BEING CRITICAL OF |
| 02:46PM | 14 | YOUR OPINION, SIR.  I'M JUST TRYING TO CLEAR UP THE PROCEDURE |
| 02:46PM | 15 | THAT SOMEONE DOESN'T HAVE TO PUT EVIDENCE ON IF THEY DON'T WANT |
| 02:46PM | 16 | TO.  IT'S ENTIRELY THEIR CHOICE. |
| 02:46PM | 17 | I THINK I CAN APPRECIATE FROM A HUMAN STANDPOINT, GEE, I'D |
| 02:46PM | 18 | LIKE TO HEAR, I'D LIKE TO HEAR WHAT THE OTHER SIDE IS, BUT I |
| 02:46PM | 19 | SUPPOSE WHAT THAT SAYS IS THAT SOMEONE COULD HAVE CONFIDENCE IN |
| 02:46PM | 20 | THEIR OWN CASE AND PERHAPS IN A CASE THAT THE GOVERNMENT HAS |
| 02:46PM | 21 | NOT PROVED THEIR CASE AND SO WE DON'T HAVE TO PUT ANYTHING ON. |
| 02:46PM | 22 | DO YOU SEE HOW THAT MIGHT WORK? |
| 02:46PM | 23 | I AM SORRY? |
| 02:46PM | 24 | PROSPECTIVE JUROR:  YEAH. |
| 02:46PM | 25 | THE COURT:  DOES THAT HELP YOU IN ANY WAY? |

02:46PM 1      YESTERDAY WE HAD A CONVERSATION WITH SOMEONE ABOUT THIS

02:46PM 2  AND I THINK IT CAME TO AN OPPORTUNITY TO PUT A DEFENSE ON OR AN

02:46PM 3  OBLIGATION TO PUT A DEFENSE ON.  TWO DIFFERENT THINGS.

02:46PM 4      IN OUR CRIMINAL JUSTICE SYSTEM EVERYBODY HAS THE

02:47PM 5  OPPORTUNITY TO PUT A CASE ON; HOWEVER, THEY HAVE NO OBLIGATION

02:47PM 6  TO DO SO.

02:47PM 7      DOES THAT HELP YOU A LITTLE BIT WITH THAT CONCEPT?

02:47PM 8          PROSPECTIVE JUROR:  YEAH, UNDERSTOOD.

02:47PM 9          THE COURT:  OKAY.  ANY OTHER QUESTION OR ANYTHING

02:47PM 10 ELSE YOU WOULD LIKE ME TO KNOW ABOUT THAT QUESTION?

02:47PM 11         PROSPECTIVE JUROR:  NO.

02:47PM 12         THE COURT:  OKAY.  LET'S SEE.  I THINK I ASKED YOU

02:47PM 13 WHETHER YOU KNEW ANYONE WHO WAS A LAWYER OR A CRIMINAL DEFENSE

02:47PM 14 OR PROSECUTION OR DEFENSE, AND I THINK I GOT A RESPONSE.

02:47PM 15     ANYONE ELSE WANT TO RESPOND TO THAT QUESTION?

02:47PM 16     I SEE NO HANDS.

02:48PM 17     HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN INVOLVED WITH OR

02:48PM 18 APPEARED AS A DEFENDANT OR A VICTIM OR A WITNESS IN ANY

02:48PM 19 INVESTIGATION BY A GOVERNMENT AGENCY, WHICH INCLUDES POLICE

02:48PM 20 DEPARTMENTS, SHERIFF OFFICES, ANY FEDERAL INVESTIGATION OR

02:48PM 21 ANYTHING ELSE, PROSECUTION THAT YOU'VE BEEN INVOLVED WITH?

02:48PM 22     AND IF ANYONE WANTS TO SPEAK PRIVATELY ABOUT THAT, WE CAN,

02:48PM 23 OF COURSE, DO THAT.

02:48PM 24     MR. MURPHY, I SAW YOUR HAND UP.  DO YOU NEED THE

02:48PM 25 MICROPHONE?

02:48PM  1          PROSPECTIVE JUROR:  DO I NEED THIS?

02:48PM  2          THE COURT:  YOU KNOW, THE MOST IMPORTANT PERSON FOR

02:48PM  3  HEARING IN THE COURTROOM, SIR, IS OUR COURT REPORTER.  SO LET'S

02:48PM  4  GET THAT MICROPHONE FOR HER.

02:48PM  5          PROSPECTIVE JUROR:  IS IT ON?

02:48PM  6          THE COURT:  NOT YET.

02:48PM  7          PROSPECTIVE JUROR:  I WAS CALLED AS A WITNESS IN A

02:48PM  8  CASE BY THE DISTRICT ATTORNEY AND I -- I'M SORRY, I DON'T

02:48PM  9  REMEMBER THE EXACT YEAR.  I WANT TO SAY 2014.  IT WAS A CASE

02:49PM  10  AGAINST A PHYSICIAN FOR -- I DON'T KNOW WHAT THE WORD WOULD

02:49PM  11  BE -- I GUESS FRAUD FOR RECEIVING RESEARCH FUNDS.

02:49PM  12      AND ANOTHER POSITION THAT I HELD IN THE COUNTY WAS THE

02:49PM  13  RESEARCH ADMINISTRATOR AT THE VALLEY MEDICAL CENTER, AND I WAS

02:49PM  14  NOT, I GUESS, A PARTY TO THE CASE, AND I WAS JUST BROUGHT IN TO

02:49PM  15  EXPLAIN THE RESEARCH ADMINISTRATION PROCESS.

02:49PM  16          THE COURT:  OKAY.  WAS THAT IN STATE COURT, SIR?

02:49PM  17  WERE THOSE CASES --

02:49PM  18          PROSPECTIVE JUROR:  I THINK IT WAS COUNTY COURT.

02:49PM  19          THE COURT:  RIGHT, SUPERIOR COURT.

02:49PM  20          PROSPECTIVE JUROR:  SUPERIOR COURT.

02:49PM  21          THE COURT:  WAS IT ON HEDDING STREET OR FIRST

02:49PM  22  STREET?

02:49PM  23          PROSPECTIVE JUROR:  HEDDING.

02:49PM  24          THE COURT:  THAT'S THE CRIMINAL COURT?

02:49PM  25          PROSPECTIVE JUROR:  YEAH.

426

| | | |
|---|---|---|
| 02:49PM | 1 | THE COURT:  SO IT WAS A CRIMINAL PROSECUTION? |
| 02:49PM | 2 | PROSPECTIVE JUROR:  YEAH. |
| 02:49PM | 3 | THE COURT:  AND WERE YOU SWORN AND TOOK THE STAND |
| 02:49PM | 4 | AND TESTIFIED? |
| 02:49PM | 5 | PROSPECTIVE JUROR:  YES. |
| 02:49PM | 6 | THE COURT:  A LAWYER ASKED YOU QUESTIONS? |
| 02:49PM | 7 | PROSPECTIVE JUROR:  YES. |
| 02:49PM | 8 | THE COURT:  A LAWYER FROM COUNTY COUNSEL OR D.A.? |
| 02:49PM | 9 | PROSPECTIVE JUROR:  DISTRICT ATTORNEY. |
| 02:49PM | 10 | THE COURT:  AND THEN YOU WERE ASKED QUESTIONS BY A |
| 02:49PM | 11 | DEFENSE COUNSEL? |
| 02:49PM | 12 | PROSPECTIVE JUROR:  I DON'T THINK I WAS.  I DON'T |
| 02:49PM | 13 | REMEMBER SPECIFICALLY. |
| 02:49PM | 14 | THE COURT:  IT SOUNDS LIKE IT WASN'T MEMORABLE. |
| 02:50PM | 15 | (LAUGHTER.) |
| 02:50PM | 16 | PROSPECTIVE JUROR:  WELL, I THINK I DID A GOOD JOB. |
| 02:50PM | 17 | I WAS ACCURATE. |
| 02:50PM | 18 | THE COURT:  OKAY.  ALL RIGHT. |
| 02:50PM | 19 | AND HOW LONG WERE YOU -- HOW LONG DID YOU TESTIFY? |
| 02:50PM | 20 | PROSPECTIVE JUROR:  MAYBE TEN MINUTES. |
| 02:50PM | 21 | THE COURT:  I SEE.  OKAY. |
| 02:50PM | 22 | AND WAS THAT JUST THIS ONE TIME OR WERE THERE -- |
| 02:50PM | 23 | PROSPECTIVE JUROR:  JUST THE ONE TIME. |
| 02:50PM | 24 | THE COURT:  GOTCHA.  THANK YOU. |
| 02:50PM | 25 | LET ME GO BACK BEHIND YOU TO YOUR LEFT, MR. MURPHY. |

02:50PM 1          JUROR NUMBER 143.

02:50PM 2                  PROSPECTIVE JUROR:  YES.

02:50PM 3                  THE COURT:  YES, MS. ELSHENITI, YES.

02:50PM 4                  PROSPECTIVE JUROR:  YES.  I WANT TO MAKE SURE IS IT

02:50PM 5     ONLY IN THE U.S. COURT OR IT MIGHT BE OUT OF THE UNITED STATES

02:50PM 6     BECAUSE I HAVE A CASE FOR MY BROTHER WHO WAS DETAINED IN EGYPT

02:50PM 7     AND HE STILL -- HIS CASE IS UNDER INVESTIGATION FOR TWO YEARS.

02:50PM 8     NOW HE'S IN PRISON.  THIS IS LIKE A BIG THING FOR ME.

02:51PM 9                  THE COURT:  YES, OF COURSE.

02:51PM 10                 PROSPECTIVE JUROR:  IT'S A POLITICAL THING BECAUSE

02:51PM 11    HE'S ACCUSED OF SCHEMING THROUGH THE GOVERNMENT OR SOMETHING

02:51PM 12    LIKE THAT.

02:51PM 13                 THE COURT:  WERE YOU INVOLVED IN THAT CASE OR ARE

02:51PM 14    YOU INVOLVED IN THAT CASE?

02:51PM 15                 PROSPECTIVE JUROR:  I'M NOT INVOLVED.

02:51PM 16                 THE COURT:  ALL RIGHT.  THANK YOU FOR SHARING THAT.

02:51PM 17           LET'S GO BACK IF WE CAN PASS IT UPFRONT, PLEASE, TO

02:51PM 18    MS. MASON-BURCHELL.

02:51PM 19                 PROSPECTIVE JUROR:  YES.  WITH MY JOB PROBABLY ABOUT

02:51PM 20    TEN YEARS AGO I WAS SUED THROUGH MY JOB WITH WAL-MART AS THE

02:51PM 21    STORE MANAGER FOR WRONGFUL TERMINATION.

02:51PM 22           AND SHE FELT THAT IT WAS DEFAMATION OF CHARACTER, AND SO

02:51PM 23    SHE TOOK ME AND THE TERMINATING MANAGER TO COURT.  AND IT WAS

02:51PM 24    PROBABLY LIKE A TEN MINUTE PART, AND THAT'S THE ONLY OTHER

02:51PM 25    THING I HAD TO DEAL WITH.

| | | |
|---|---|---|
| 02:51PM | 1 | THE COURT:  WAS THAT HERE IN OUR SUPERIOR COURT? |
| 02:52PM | 2 | PROSPECTIVE JUROR:  IT ACTUALLY WAS SACRAMENTO |
| 02:52PM | 3 | COUNTY. |
| 02:52PM | 4 | THE COURT:  OH, OKAY.  HOW LONG AGO WAS THAT?  I'M |
| 02:52PM | 5 | SORRY? |
| 02:52PM | 6 | PROSPECTIVE JUROR:  IT'S PROBABLY 10 OR 12 YEARS. |
| 02:52PM | 7 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 02:52PM | 8 | ANYONE ELSE? |
| 02:52PM | 9 | I SEE NO HANDS. |
| 02:52PM | 10 | LET ME ASK THOSE OF YOU WHO ANSWERED THAT QUESTION, |
| 02:52PM | 11 | MS. MASON-BURCHELL, AND MS. ELSHENITI, AND MR. MURPHY, IS THERE |
| 02:52PM | 12 | ANYTHING ABOUT THOSE EXPERIENCES THAT YOU THINK WILL AFFECT |
| 02:52PM | 13 | YOUR ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE? |
| 02:52PM | 14 | MR. MURPHY, YOU'RE SHAKING YOUR HEAD SIDE TO SIDE NO I |
| 02:52PM | 15 | TAKE THAT?  NO? |
| 02:52PM | 16 | PROSPECTIVE JUROR:  NO. |
| 02:52PM | 17 | THE COURT:  OKAY.  THANK YOU VERY MUCH.  THANK YOU. |
| 02:52PM | 18 | HAVE YOU OR ANYONE CLOSE TO YOU EVER BEEN INVOLVED IN ANY |
| 02:52PM | 19 | LITIGATION -- THIS IS FOR THE PANEL -- ANY LITIGATION OR CLAIMS |
| 02:52PM | 20 | AGAINST THE UNITED STATES GOVERNMENT, THE STATE OF CALIFORNIA, |
| 02:52PM | 21 | OR ANY OTHER STATE OR MUNICIPAL GOVERNMENTAL AGENCY? |
| 02:53PM | 22 | ANYONE BEEN IN LITIGATION WITH THE GOVERNMENT, STATE, |
| 02:53PM | 23 | FEDERAL, AND MUNICIPAL? |
| 02:53PM | 24 | I SEE NO HANDS. |
| 02:53PM | 25 | CAN ANY OF YOU THINK OF ANY OTHER REASON WHY YOU MIGHT NOT |

02:53PM   1    BE ABLE TO TRY THIS CASE FAIRLY AND IMPARTIALLY BOTH TO THE

02:53PM   2    GOVERNMENT OR THE DEFENSE OR WHY YOU SHOULD NOT BE ON THIS

02:53PM   3    JURY?

02:53PM   4         ANYTHING ELSE A PARTY WISHES TO RAISE?

02:53PM   5         I SEE NO HANDS.

02:53PM   6         OH, I DO SEE A HAND.

02:53PM   7         YES, LET'S PASS IT BACK, PLEASE.

02:53PM   8         IS THAT MR. PERALTA?  166.

02:53PM   9         YOU HAVE A RESPONSE TO THIS, SIR?

02:53PM   10            PROSPECTIVE JUROR:  CORRECT.

02:53PM   11            THE COURT:  IS THIS MR. LEE?

02:53PM   12            PROSPECTIVE JUROR:  IT'S ONLY I HAVE A FEW WEDDINGS

02:53PM   13   TO ATTEND, AND I'M A GROOMSMAN, AND THOSE ARE OUT OF THE STATE

02:53PM   14   AS WELL.

02:53PM   15            THE COURT:  AND WHEN ARE THOSE?

02:54PM   16            PROSPECTIVE JUROR:  ONE I BELIEVE IN PARTICULAR

02:54PM   17   WOULD BE DECEMBER 3RD.  I NEED TO BE THERE ON A FRIDAY, AND THE

02:54PM   18   WEDDING HAPPENS ON SATURDAY.  IT'S IN HAWAII.

02:54PM   19            THE COURT:  IT'S IN HAWAII.  OKAY.

02:54PM   20            PROSPECTIVE JUROR:  AND THEN THERE ARE TWO OTHER

02:54PM   21   WEDDINGS THAT I'M SCHEDULED TO ATTEND ON THE COURT DATES.

02:54PM   22            THE COURT:  AND WHEN ARE THOSE?

02:54PM   23            PROSPECTIVE JUROR:  ONE WOULD BE DECEMBER -- IT'S A

02:54PM   24   TUESDAY.  I CAN PULL UP THE CALENDAR REAL QUICK?  I BELIEVE

02:54PM   25   IT'S THE 21ST WOULD BE ONE THAT IS ON TUESDAY, AND THEN THE ONE

430

| | | |
|---|---|---|
| 02:54PM | 1 | THAT I'M A GROOMSMAN FOR WOULD BE ON -- IT'S ON DECEMBER 4TH, |
| 02:54PM | 2 | BUT I NEED TO BE IN HAWAII ON THE 3RD. |
| 02:54PM | 3 | THE COURT:  SO IT'S THOSE TWO WEDDINGS? |
| 02:54PM | 4 | PROSPECTIVE JUROR:  CORRECT. |
| 02:54PM | 5 | THE COURT:  THANK YOU, SIR. |
| 02:54PM | 6 | LET'S PASS IT BACK NOW TO MR. PERALTA, PLEASE. |
| 02:55PM | 7 | PROSPECTIVE JUROR:  TWO WEEKS AGO I WAS -- I HAVE MY |
| 02:55PM | 8 | MRI ON MY HEAD BECAUSE OF THE PERSISTENT HEADACHE.  I WENT TO |
| 02:55PM | 9 | MY NEUROLOGIST, AND HE PRESCRIBED ME A MEDICATION FOR |
| 02:55PM | 10 | ANTIDEPRESSANT, SOMETHING LIKE THAT, AND FOR PAIN WHICH IS VERY |
| 02:55PM | 11 | UNCOMFORTABLE FOR ME WHEN I'M DOING MY WORK IN -- MY DAY WORK. |
| 02:55PM | 12 | SO AS A SUPERVISOR OF THE POST OFFICE, IT'S HARD FOR ME TO |
| 02:55PM | 13 | CONCENTRATE BECAUSE OF THE PERSISTENT HEADACHE THAT I'M HAVING |
| 02:55PM | 14 | RIGHT NOW SO. |
| 02:55PM | 15 | THE COURT:  DO YOU HAVE THAT HEADACHE NOW, SIR, |
| 02:56PM | 16 | DURING THESE PROCEEDINGS? |
| 02:56PM | 17 | PROSPECTIVE JUROR:  YEAH.  THIS MORNING I HAVE IT. |
| 02:56PM | 18 | THE COURT:  I SEE.  AND YOU TOOK YOUR MEDICATION? |
| 02:56PM | 19 | PROSPECTIVE JUROR:  YES, I HAVE IT IN MY CAR.  I |
| 02:56PM | 20 | JUST TAKE IT A WHILE AGO. |
| 02:56PM | 21 | THE COURT:  I SEE.  ALL RIGHT.  AND THAT HELPS YOU |
| 02:56PM | 22 | IN THIS? |
| 02:56PM | 23 | PROSPECTIVE JUROR:  IT IS. |
| 02:56PM | 24 | THE COURT:  ALL RIGHT.  IS THAT SOMETHING THAT WOULD |
| 02:56PM | 25 | BE A CONTINUING CONDITION? |

02:56PM 1          PROSPECTIVE JUROR:  I HAVE NO IDEA, YOUR HONOR,

02:56PM 2   BECAUSE I STILL HAVE ANOTHER APPOINTMENT ON SEPTEMBER 20TH.

02:56PM 3          THE COURT:  I SEE.  ALL RIGHT, SIR.  AND WHEN YOU

02:56PM 4   GET THESE HEADACHES, YOU TOLD US ABOUT THIS IN THE

02:56PM 5   QUESTIONNAIRE AND YOU HAVE SOME HEADACHES AND IT CAUSES YOU

02:56PM 6   SOME DISCOMFORT?

02:56PM 7          PROSPECTIVE JUROR:  CORRECT.

02:56PM 8          THE COURT:  AN INABILITY TO FOCUS?

02:56PM 9          PROSPECTIVE JUROR:  YES, YOUR HONOR.

02:56PM 10          THE COURT:  ALL RIGHT.  ANYTHING ELSE?

02:56PM 11          PROSPECTIVE JUROR:  AND BESIDES THAT I'M THE ONLY

02:56PM 12   ONE LEFT IN MY OFFICE.

02:56PM 13          THE COURT:  YES, YOU'RE MISSING OVERTIME.

02:56PM 14          PROSPECTIVE JUROR:  YES, WE'RE HIDING THOSE.

02:56PM 15          THE COURT:  ALL RIGHT.  THANK YOU.  ANY QUESTIONS,

02:56PM 16   MR. SCHENK?

02:56PM 17          MR. SCHENK:  NO, YOUR HONOR.

02:56PM 18          MR. DOWNEY:  NOTHING, YOUR HONOR.

02:56PM 19          THE COURT:  ALL RIGHT.  THANK YOU, MR. PERALTA.

02:56PM 20   THANK YOU VERY MUCH.

02:57PM 21      ALL RIGHT.  ANYTHING?  ANY OTHER RESPONSES TO THIS

02:57PM 22   QUESTION?

02:57PM 23          PROSPECTIVE JUROR:  CAN YOU REPEAT THE QUESTION

02:57PM 24   AGAIN?

02:57PM 25          THE COURT:  CAN YOU THINK OF ANY OTHER REASON WHY

432

02:57PM  1    YOU MIGHT NOT BE ABLE TO TRY THIS CASE FAIRLY AND IMPARTIALLY

02:57PM  2    BOTH TO THE GOVERNMENT AND THE DEFENSE OR WHY YOU SHOULD NOT BE

02:57PM  3    ON THIS JURY?

02:57PM  4            PROSPECTIVE JUROR:  YEAH.  SO --

02:57PM  5            THE COURT:  THIS IS MR. BUI, I BELIEVE, YOU'RE JUROR

02:57PM  6    NUMBER --

02:57PM  7            PROSPECTIVE JUROR:  -- 157.

02:57PM  8            THE COURT:  THANK YOU.

02:57PM  9            PROSPECTIVE JUROR:  AND SO THERE ARE MULTIPLE

02:57PM  10   REASONS WHY I WOULDN'T BE AVAILABLE FOR THIS JURY.  ONE IS I AM

02:57PM  11   CONTRACTED --

02:57PM  12           THE COURT:  I THINK YOU TOLD US IN ANSWER TO

02:57PM  13   QUESTION NUMBER 1, SIR, THAT YOU JUST PURCHASED A NEW HOME; IS

02:57PM  14   THAT RIGHT?

02:57PM  15           PROSPECTIVE JUROR:  YEAH, NOT PURCHASED, BUT WE JUST

02:57PM  16   STARTED RENTING A NEW HOME.

02:57PM  17           THE COURT:  AND I THINK YOU TOLD US THAT YOUR WORK

02:57PM  18   IS IMPORTANT BECAUSE IF YOU DON'T WORK, YOU WOULD LOSE YOUR

02:58PM  19   HOUSE I THINK; IS THAT RIGHT?

02:58PM  20           PROSPECTIVE JUROR:  YEAH.  AND SO IT'S JUST ME AND

02:58PM  21   MY GIRLFRIEND LIVING THERE, AND I'M TRYING TO GET CONVERTED TO

02:58PM  22   WORKING AS A PERMANENT WORKER AT THIS COMPANY, WHICH WILL BE

02:58PM  23   REVIEWED NEXT MONTH.

02:58PM  24           THE COURT:  ALL RIGHT.  THANK YOU, SIR.

02:58PM  25        I'VE READ YOUR QUESTIONNAIRE, AND I'VE READ YOUR RESPONSE.

433

02:58PM    1        I HAD AN AFFIRMATIVE RESPONSE TO ONE OF THE QUESTIONS AS TO

02:58PM    2        SELECTIONS IN THIS CASE.

02:58PM    3              ANY FURTHER QUESTIONS, MR. SCHENK?

02:58PM    4                   MR. SCHENK:  NO, YOUR HONOR.

02:58PM    5                   MR. DOWNEY:  NOTHING, YOUR HONOR.

02:58PM    6                   THE COURT:  ALL RIGHT.  THANK YOU.

02:58PM    7           ANYONE HAVE ANY FURTHER RESPONSE TO THIS QUESTION?

02:58PM    8           LET'S PASS IT OVER TO JUROR NUMBER 143.

02:58PM    9                   PROSPECTIVE JUROR:  IS IT ON?  162.

02:58PM   10                   THE COURT:  162.  I'M SORRY, MS. GLIK.

02:59PM   11                   PROSPECTIVE JUROR:  I'M A LITTLE BIT CONCERNED ABOUT

02:59PM   12        MY ENGLISH.

02:59PM   13                   MADAM COURT REPORTER:  SPEAK UP.

02:59PM   14                   PROSPECTIVE JUROR:  SO AS I SAID, I'M JUST A LITTLE

02:59PM   15        WORRIED ABOUT MY ENGLISH.  I THINK IT'S GOOD.  I'M NOT SURE

02:59PM   16        IT'S GOOD ENOUGH FOR THIS TRIAL.

02:59PM   17                   THE COURT:  OKAY.  ALL RIGHT.

02:59PM   18           HAVE YOU UNDERSTOOD?

02:59PM   19                   PROSPECTIVE JUROR:  I HAVE UNDERSTOOD EVERYTHING.

02:59PM   20                   THE COURT:  OKAY.

02:59PM   21                   PROSPECTIVE JUROR:  BUT I'M NOT SURE DURING THE

02:59PM   22        TRIAL I WILL UNDERSTAND.

02:59PM   23                   THE COURT:  WELL, I KNOW THAT THESE LAWYERS, ONE OF

02:59PM   24        THEIR JOBS IS TO MAKE THEIR CASES AND MAKE THEIR QUESTIONS

02:59PM   25        ACCESSIBLE AND TO MAKE IT UNDERSTANDABLE FOR THE JURY.  THAT'S

| | | |
|---|---|---|
| 02:59PM | 1 | SOMETHING THAT ALL LAWYERS DO. |
| 02:59PM | 2 | PROSPECTIVE JUROR: OKAY. |
| 02:59PM | 3 | THE COURT: SO I'M SURE THESE LAWYERS ARE GOING TO |
| 02:59PM | 4 | DO THEIR BEST TO ACCOMPLISH THAT AS WELL. |
| 02:59PM | 5 | SO THANK YOU FOR POINTING THAT OUT. THANK YOU. |
| 02:59PM | 6 | PROSPECTIVE JUROR: THANK YOU. |
| 02:59PM | 7 | THE COURT: YOU'RE WELCOME. |
| 03:00PM | 8 | PROSPECTIVE JUROR: NUMBER 155. |
| 03:00PM | 9 | THE COURT: YES, MS. MARTINEZ. |
| 03:00PM | 10 | PROSPECTIVE JUROR: YES. BEFORE I CAME WE HAD SOME |
| 03:00PM | 11 | STAFFING ISSUES AT WORK, AND AS OF LAST WEEK WE'VE LOST TWO |
| 03:00PM | 12 | OTHER TEACHERS THAT HAVE RESIGNED, AND THEY'VE BEEN TEXTING ME |
| 03:00PM | 13 | THROUGHOUT THIS PROCEEDING THAT IF I'M GOING TO BE PICKED FOR |
| 03:00PM | 14 | JURY DUTY BECAUSE I'M THE ONLY OTHER TEACHER FOR THIS CLASSROOM |
| 03:00PM | 15 | AND BECAUSE OF COVID RESTRICTIONS, WE CAN'T HAVE OTHER TEACHERS |
| 03:00PM | 16 | STEP INTO MY CLASSROOM. |
| 03:00PM | 17 | SO I'M JUST CONCERNED THAT IT'S 13 WEEKS BECAUSE THEY MAY |
| 03:00PM | 18 | HAVE TO HIRE SOMEONE FOR THE DAYS THAT I MIGHT BE OFF, AND THAT |
| 03:00PM | 19 | IS AN ISSUE BECAUSE WE HAVE STAFFING PROBLEMS. PEOPLE DON'T |
| 03:00PM | 20 | WANT TO COME AND WORK WITH SMALL CHILDREN BECAUSE THEY'RE |
| 03:00PM | 21 | EITHER AFRAID OR THEY DON'T LIKE THE HOURS. AND I'M JUST |
| 03:01PM | 22 | CONCERNED THAT BEING SUCH A LONG TRIAL THAT IT WILL IMPACT MY |
| 03:01PM | 23 | CLASSROOM AND MY ABILITY TO WORK WITH THE CHILDREN IF I'M HERE |
| 03:01PM | 24 | THE WHOLE TIME. |
| 03:01PM | 25 | THE COURT: SURE. ALL RIGHT. THANK YOU. THANK YOU |

|        |    |                                                                  |
|--------|----|------------------------------------------------------------------|
| 03:01PM | 1  | FOR THAT.                                                        |
| 03:01PM | 2  | ANY QUESTIONS MR. SCHENK?                                        |
| 03:01PM | 3  | MR. SCHENK:  NO.                                                 |
| 03:01PM | 4  | THE COURT:  MR. DOWNEY, ANY QUESTIONS?                           |
| 03:01PM | 5  | MR. DOWNEY:  NO.                                                 |
| 03:01PM | 6  | THE COURT:  ALL RIGHT.  THANK YOU.                              |
| 03:01PM | 7  | PROSPECTIVE JUROR:  SO I HAVE A SIMILAR CONCERN.                 |
| 03:01PM | 8  | THE COURT:  OKAY.  I'M SORRY.  THIS IS JUROR                    |
| 03:01PM | 9  | NUMBER 143.                                                      |
| 03:01PM | 10 | PROSPECTIVE JUROR:  143, CORRECT.                               |
| 03:01PM | 11 | THE COURT:  YES.                                                 |
| 03:01PM | 12 | PROSPECTIVE JUROR:  SO I HAVE A SIMILAR CONCERN.  I             |
| 03:01PM | 13 | WORK AS A TEACHER IN A PRIVATE NONPROFIT SCHOOL, SO WE ARE       |
| 03:01PM | 14 | SHORT IN STAFF AND IN BUDGET.                                    |
| 03:01PM | 15 | I'M A TEACHER FOR MIDDLE SCHOOL STUDENTS, SO THEY DON'T          |
| 03:01PM | 16 | HAVE ANOTHER TEACHER FOR THE REST OF THE YEAR.                   |
| 03:01PM | 17 | SO TODAY I WAS OFF SO I JUST GIVE THEM THINGS FOR THE            |
| 03:02PM | 18 | STUDENTS TO WORK INDEPENDENTLY, BUT I REALLY DON'T KNOW WHAT      |
| 03:02PM | 19 | THEY'RE GOING TO DO THE REST OF THE SEMESTER.                    |
| 03:02PM | 20 | THE COURT:  THANK YOU.                                           |
| 03:02PM | 21 | PROSPECTIVE JUROR:  THANK YOU.                                   |
| 03:02PM | 22 | THE COURT:  YOU'RE WELCOME.                                      |
| 03:02PM | 23 | LET'S PASS THIS FORWARD TO MS. GONZALEZ, 108.                    |
| 03:02PM | 24 | PROSPECTIVE JUROR:  HI.  I'M ALSO A TEACHER.                     |
| 03:02PM | 25 | SIMILAR PROBLEMS TO THE LAST TWO BUT ALSO I'M THE ONLY ONE IN    |

| | | |
|---|---|---|
| 03:02PM | 1 | MY HOUSEHOLD THAT IS WORKING RIGHT NOW.  MY HUSBAND LOST HIS |
| 03:02PM | 2 | JOB DUE TO COVID. |
| 03:02PM | 3 | SO, YEAH, BEING AWAY FOR 13 WEEKS FROM MY STUDENTS WOULD |
| 03:02PM | 4 | REALLY -- I HAVE A HARD TIME EVEN TALKING ABOUT IT, BUT ALSO |
| 03:02PM | 5 | NOT BEING ABLE TO BRING IN A PAYCHECK IS REALLY CONCERNING. |
| 03:02PM | 6 | THE COURT:  OKAY.  AND ARE YOU A FULL-TIME TEACHER |
| 03:02PM | 7 | THROUGH THE DAY BEGINNING AT 8:00 OR 9:00 A.M.? |
| 03:03PM | 8 | PROSPECTIVE JUROR:  YES. |
| 03:03PM | 9 | THE COURT:  ALL RIGHT.  I SEE.  THANK YOU. |
| 03:03PM | 10 | ANYONE ELSE? |
| 03:03PM | 11 | I SEE NO HANDS. |
| 03:03PM | 12 | ALL RIGHT.  ANY QUESTIONS, MR. SCHENK? |
| 03:03PM | 13 | MR. SCHENK:  NO.  THANK YOU. |
| 03:03PM | 14 | THE COURT:  ANY QUESTIONS? |
| 03:03PM | 15 | MR. DOWNEY:  NO. |
| 03:03PM | 16 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 03:03PM | 17 | THANK YOU, LADIES AND GENTLEMEN. |
| 03:03PM | 18 | I'M NOW GOING TO YIELD THE FLOOR TO COUNSEL TO HAVE THEM |
| 03:03PM | 19 | ASK SOME QUESTIONS.  WE'RE GOING TO TAKE A BREAK AT 3:30 AT THE |
| 03:03PM | 20 | BOTTOM OF THE HOUR, AND WE'LL TAKE UP ANY OTHER MATTERS THAT WE |
| 03:03PM | 21 | NEED TO AT THAT TIME. |
| 03:03PM | 22 | BUT I'D LIKE TO AT THIS TIME ALLOW FOR COUNSEL TO AT LEAST |
| 03:03PM | 23 | BEGIN THEIR QUESTIONING IF THEY HAVE ANY. |
| 03:03PM | 24 | OH, GOSH.  THANK YOU, MS. KRATZMANN. |
| 03:03PM | 25 | MR. SCHENK, DO YOU HAVE QUESTIONS? |

| | | |
|---|---|---|
| 03:03PM | 1 | MR. SCHENK:  I DO.  THANK YOU, YOUR HONOR. |
| 03:03PM | 2 | GOOD AFTERNOON.  MY NAME IS JEFF SCHENK.  I MET YOU THIS |
| 03:04PM | 3 | MORNING. |
| 03:04PM | 4 | I'M ONE OF THE PROSECUTORS REPRESENTING THE UNITED STATES |
| 03:04PM | 5 | IN THIS CASE. |
| 03:04PM | 6 | I JUST HAVE A COUPLE OF FOLLOW-UP QUESTIONS, A COUPLE OF |
| 03:04PM | 7 | GENERAL QUESTIONS, AND THEN ONE SPECIFIC INDIVIDUAL QUESTION. |
| 03:04PM | 8 | I'D LIKE TO START BY TALKING ABOUT THE KINDS OF WITNESSES |
| 03:04PM | 9 | THAT MAY APPEAR IN THIS CASE.  THE JUDGE ASKED SOME QUESTIONS |
| 03:04PM | 10 | ABOUT YOUR VIEW ON LAW ENFORCEMENT, AND IF LAW ENFORCEMENT |
| 03:04PM | 11 | WITNESSES TOOK THE STAND, HOW YOU WOULD FEEL ABOUT THEIR |
| 03:04PM | 12 | TESTIMONY. |
| 03:04PM | 13 | YOU ALSO SAW IN THE QUESTIONNAIRE WOULD YOU GIVE THEIR |
| 03:04PM | 14 | TESTIMONY MORE WEIGHT OR LESS WEIGHT. |
| 03:04PM | 15 | LET'S REPLACE LAW ENFORCEMENT WITH MEDICAL PROFESSIONALS, |
| 03:04PM | 16 | WITH DOCTORS.  I'M CURIOUS IF INDIVIDUALS HAVE EXPERIENCES IN |
| 03:04PM | 17 | THEIR LIFE THAT THEY'LL BRING INTO THE COURTROOM WITH THEM. |
| 03:04PM | 18 | LET'S SAY IN THE PAST YOU FOUGHT A BILL, YOU DISAGREED WITH A |
| 03:04PM | 19 | BILL, YOU WERE FRUSTRATED WITH MEDICAL CARE THAT YOU RECEIVED. |
| 03:04PM | 20 | DO YOU HAVE ANY LIFE EXPERIENCES THAT ARE GOING TO CAUSE |
| 03:04PM | 21 | YOU TO EVALUATE THE TESTIMONY OF MEDICAL DOCTORS DIFFERENTLY IN |
| 03:04PM | 22 | THIS CASE, EITHER GIVING THEM MORE WEIGHT OR LESS WEIGHT? |
| 03:04PM | 23 | ANY HANDS? |
| 03:05PM | 24 | PROSPECTIVE JUROR:  SO I'M JUROR NUMBER 131, |
| 03:05PM | 25 | KELLY KOCH. |

03:05PM 1      SO MY HUSBAND HAS RECEIVED DIFFERENT KINDS OF LEGAL

03:05PM 2  TREATMENT FROM DIFFERENT DOCTORS AND SURGERIES AND SUCH.  AND

03:05PM 3  HE'S GOT PASSED AROUND FROM DIFFERENT DOCTORS AND DIDN'T GET

03:05PM 4  ALL OF THE CARE THAT HE NEEDED, SO I DON'T KNOW THAT I WOULD

03:05PM 5  WEIGH IN IMPARTIALLY TO THEIR TESTIMONY BECAUSE TO ME IT SEEMS

03:05PM 6  LIKE A LOT OF DOCTORS, THEY'RE OUT FOR MONEY.  SO I DON'T KNOW

03:05PM 7  THAT I WOULD BE IMPARTIAL.

03:05PM 8      MR. SCHENK:  SO THE EXPERIENCES THAT YOU'VE HAD WITH

03:05PM 9  YOUR HUSBAND, YOU THINK YOU WOULD BRING INTO THE COURTROOM WITH

03:05PM 10  YOU.  AND IF A DOCTOR WAS ON THE STAND EXPLAINING SOMETHING TO

03:05PM 11  YOU, YOU MIGHT EVALUATE THEIR TESTIMONY DIFFERENTLY OR GIVE IT

03:05PM 12  LESS WEIGHT BECAUSE OF THESE PRIOR EXPERIENCES; IS THAT FAIR?

03:05PM 13      PROSPECTIVE JUROR:  YES, YES.  YES, I DO.

03:06PM 14      MR. SCHENK:  OKAY.  THANK YOU FOR SHARING THAT.

03:06PM 15      ANY OTHER HANDS?

03:06PM 16      DO YOU MIND PASSING THE MICROPHONE JUST BACK.  THANK YOU.

03:06PM 17      THE COURT:  IS THAT 154, MS. KEHN?

03:06PM 18      PROSPECTIVE JUROR:  154.  I'VE HAD ALL GOOD

03:06PM 19  EXPERIENCES WITH DOCTORS.

03:06PM 20      THE COURT:  CAN YOU SPEAK INTO THE MICROPHONE?  CAN

03:06PM 21  YOU USE THE MICROPHONE, PLEASE.

03:06PM 22      PROSPECTIVE JUROR:  HELLO.

03:06PM 23      THE COURT:  YES.  THANK YOU.

03:06PM 24      PROSPECTIVE JUROR:  YES, I HAVE NOT QUITE THE SAME

03:06PM 25  AS I WOULD WITH POLICE, BUT I -- THEY'VE BEEN TO SCHOOL FOR A

03:06PM 1    LONG TIME SO I HAVE A TENDENCY IF THEY'RE EXPLAINING SOMETHING,

03:06PM 2    I'M GOING TO BELIEVE THAT THEY KNOW WHAT THEY'RE TALKING ABOUT.

03:06PM 3              MR. SCHENK:  THERE WILL BE SOME INSTANCES WHEN THE

03:06PM 4    JUDGE MIGHT TELL YOU THAT BECAUSE OF THEIR EXPERIENCE YOU CAN

03:06PM 5    ACCEPT THEIR TESTIMONY AS WHAT IS CALLED EXPERT TESTIMONY.

03:06PM 6              PROSPECTIVE JUROR:  OKAY.

03:06PM 7              MR. SCHENK:  BUT THERE ARE OTHER INSTANCES WHEN THEY

03:06PM 8    MIGHT JUST BE A WITNESS, WHERE THEY OBSERVED SOMETHING, A

03:07PM 9    PERCIPIENT WITNESS, I SAW SOMETHING, I HEARD SOMETHING, AND I'M

03:07PM 10   THERE TO TELL YOU ABOUT THAT.

03:07PM 11      SO IT IS NOT SO MUCH ABOUT THEIR MEDICAL TRAINING THAT

03:07PM 12   THEY'RE SPEAKING TO YOU ABOUT.  IN THAT SITUATION, WOULD YOU

03:07PM 13   STILL GIVE THEIR TESTIMONY EVEN MORE WEIGHT JUST BECAUSE OF

03:07PM 14   THEIR EDUCATIONAL BACKGROUND?

03:07PM 15             PROSPECTIVE JUROR:  I DON'T KNOW BECAUSE I ONLY TALK

03:07PM 16   TO DOCTORS IF I -- I ONLY TALK TO DOCTORS IF I NEED ONE.  SO I

03:07PM 17   DON'T KNOW.  I CAN'T -- I DON'T -- I TRY NOT TO.  HOW ABOUT

03:07PM 18   THAT?

03:07PM 19             MR. SCHENK:  DO YOU HAVE A CONCERN ABOUT YOUR

03:07PM 20   ABILITY TO JUDGE IT FAIRLY?  IS THAT SAFE TO SAY?

03:07PM 21             PROSPECTIVE JUROR:  IF YOU TELL ME, IF YOU TELL ME

03:07PM 22   THIS PERSON IS A DOCTOR, HE'S BEEN A CARDIOLOGIST FOR TEN

03:07PM 23   YEARS, OR HOWEVER MANY YEARS, AND YOU'RE GOING TO ASK HIM

03:07PM 24   QUESTIONS, I'M PROBABLY GOING TO BELIEVE THAT HE KNOWS WHAT

03:07PM 25   HE'S TALKING ABOUT.

440

03:07PM  1           MR. SCHENK:  OKAY.  THANK YOU VERY MUCH FOR SHARING

03:07PM  2      THAT.

03:07PM  3           WERE THERE OTHER HANDS?

03:08PM  4           THE COURT:  THIS IS MR. BUI, 157.

03:08PM  5           PROSPECTIVE JUROR:  HI.  YEAH, IT'S KIND OF SIMILAR

03:08PM  6      TO WHAT SHE WAS SAYING AND MY PREVIOUS ANSWER WAS, YOU KNOW,

03:08PM  7      GIVEN THEIR CREDIBILITY AND THEIR BACKGROUND I WOULD WANT TO

03:08PM  8      STAY UNBIASSED, BUT THEN ALSO I WOULD LIKE TRUST THEM AND THEIR

03:08PM  9      PROFESSION THAT THEIR TESTIMONY HELD SOME SORT OF WEIGHT AS

03:08PM  10     WELL.

03:08PM  11          MR. SCHENK:  DO YOU THINK THAT YOU WOULD GIVE THEM

03:08PM  12     THIS ADDITIONAL WEIGHT JUST BECAUSE OF THE PROFESSION INSTEAD

03:08PM  13     OF EVALUATING THE TESTIMONY AND THE STATEMENTS THAT THEY MAKE

03:08PM  14     HERE IN COURT?

03:08PM  15          PROSPECTIVE JUROR:  YEAH.  I WOULD, I WOULD DO MY

03:08PM  16     BEST, BUT I FEEL LIKE PARTIALLY I WOULD INCLUDE THEIR

03:08PM  17     PROFESSION IN THIS WHOLE THING.

03:09PM  18          MR. SCHENK:  OKAY.  AND WHILE I'M SPEAKING WITH YOU,

03:09PM  19     IF I COULD FOLLOW UP.  YOU EXPRESSED A VIEW THAT YOU WOULD LIKE

03:09PM  20     TO HEAR MS. HOLMES'S SIDE OF THE STORY I THINK YOU SAID; IS

03:09PM  21     THAT RIGHT?

03:09PM  22          PROSPECTIVE JUROR:  YES.

03:09PM  23          MR. SCHENK:  WOULD YOU HOLD IT AGAINST HER IF SHE

03:09PM  24     DIDN'T PROVIDE HER SIDE OF THE STORY, IF SHE DIDN'T TESTIFY?

03:09PM  25          PROSPECTIVE JUROR:  NOT NECESSARILY.  I JUST, YOU

03:09PM  1    KNOW, I THINK TO ME IT'S IMPORTANT TO HEAR LIKE HER VOICE AND,

03:09PM  2    YOU KNOW, MAYBE LIKE WHO SHE IS AND WHAT IS HAPPENING THROUGH

03:09PM  3    HER.  I UNDERSTAND THAT, YOU KNOW, BEING IN THE COURTHOUSE IS

03:09PM  4    NOT NECESSARILY ABOUT THAT, BUT I THINK, YOU KNOW, HEARING

03:09PM  5    ANYTHING FROM, YOU KNOW, THE SOURCE IS KIND OF A BIG DEAL IN A

03:09PM  6    SENSE.

03:09PM  7         MR. SCHENK:  UNDERSTOOD.

03:09PM  8         THANK YOU FOR SHARING.

03:10PM  9         ANY OTHER HANDS TO THE MEDICAL DOCTOR'S QUESTION?

03:10PM 10         THE JUDGE ALSO ASKED YOU SOME QUESTIONS ABOUT PRIOR

03:10PM 11    EXPERIENCE WITH DOMESTIC VIOLENCE OR IPV.

03:10PM 12         I'M WONDERING INSTEAD OF GOING THROUGH EACH INDIVIDUAL

03:10PM 13    AGAIN, I'M WONDERING WHETHER YOUR EXPERIENCES WOULD AFFECT YOUR

03:10PM 14    ABILITY TO JUDGE EVIDENCE IN THIS CASE, IF YOU HEARD EVIDENCE

03:10PM 15    IN THIS CASE ABOUT THAT HAPPENING, WOULD THAT AFFECT YOUR

03:10PM 16    ABILITY TO BE FAIR AND IMPARTIAL IN THIS CASE?

03:10PM 17         ALSO, DO YOU HAVE A CONCERN THAT THIS MIGHT NOT BE THE

03:10PM 18    RIGHT TRIAL FOR YOU BECAUSE HEARING THE TESTIMONY MIGHT TRIGGER

03:10PM 19    FEELINGS ASSOCIATED WITH THE PRIOR EXPERIENCE IN YOUR PERSONAL

03:10PM 20    LIFE?

03:10PM 21         I SEE ONE HAND.

03:10PM 22         PROSPECTIVE JUROR:  YEAH, 154.  FOR SURE.  IF YOU

03:10PM 23    START TALKING ABOUT --

03:10PM 24         THE COURT:  LET'S GET YOU THE MICROPHONE, MS. KEHN.

03:10PM 25         PROSPECTIVE JUROR:  154.  YEAH, IF YOU START TALKING

03:10PM 1    ABOUT SOMEBODY ACTING LIKE HIM, YEAH, OF COURSE I'M GOING TO

03:11PM 2    RIGHT AWAY THINK ABOUT THAT.

03:11PM 3            MR. SCHENK:  SURE.

03:11PM 4            PROSPECTIVE JUROR:  SO I DON'T KNOW HOW I COULD NOT.

03:11PM 5            MR. SCHENK:  SO IF THERE WAS TESTIMONY THAT MADE YOU

03:11PM 6    THINK OF YOUR EXPERIENCE WITH YOUR FORMER HUSBAND, THIS MIGHT

03:11PM 7    NOT BE THE RIGHT TRIAL FOR YOU IT SOUNDS LIKE.

03:11PM 8            PROSPECTIVE JUROR:  YEAH, IF YOU STARTED TALKING

03:11PM 9    ABOUT SOMEBODY WHO WAS VERY CONTROLLING OR VERY MEAN, YEAH, I

03:11PM 10   DEFINITELY WOULD THINK ABOUT IT RIGHT AWAY.  OF COURSE IT'S

03:11PM 11   RIGHT THERE.

03:11PM 12           MR. SCHENK:  THANK YOU.  I APPRECIATE THAT.

03:11PM 13           THE COURT:  THIS IS 134, MS. LARUE.

03:11PM 14           PROSPECTIVE JUROR:  I HAVE A PROBLEM WITH ANYBODY

03:11PM 15   WITH DOMESTIC VIOLENCE.  MY SISTER, HE ALMOST KILLED HER.  SO

03:11PM 16   IT'S HARD FOR ME TO SEE SOMEBODY WHO BULLIES OR BEATS AND

03:12PM 17   SMALLER OR WEAKER PERSON.  I CAN'T COMPREHEND IT, AND I CAN'T

03:12PM 18   BELIEVE THAT SOMEONE WOULD DO THAT TO SOMEBODY ELSE.

03:12PM 19           MR. SCHENK:  SO THAT SEEMS A REASONABLE POSITION TO

03:12PM 20   ME, AND I UNDERSTAND WHY YOU WOULD THINK THAT.

03:12PM 21       DO YOU THINK IF YOU HEARD TESTIMONY ABOUT IT THAT YOU

03:12PM 22   WOULDN'T --

03:12PM 23           PROSPECTIVE JUROR:  I CAN'T HONESTLY SAY YES OR NO

03:12PM 24   BECAUSE I DON'T KNOW.  I JUST KNOW THAT IT'S STRONG FOR ME.

03:12PM 25   I'M SORRY, I KNOW IT'S STRONG FOR ME THAT ANYBODY ABUSING OR A

03:12PM   1    WEAKER PERSON, PERIOD, MEN OR WOMEN, IT DOESN'T MATTER TO ME, A

03:12PM   2    WEAKER PERSON, I CAN'T ABIDE BY IT -- I HAVE A HARD TIME WITH

03:12PM   3    IT SO.

03:12PM   4         I DON'T KNOW IF I HONESTLY COULD BE IMPARTIAL.  I CAN'T

03:12PM   5    SAY YES OR NO BECAUSE I DON'T KNOW.  I'VE NEVER BEEN HERE IN

03:12PM   6    THIS SITUATION.

03:12PM   7              MR. SCHENK:  SURE.  THANK YOU FOR SHARING.

03:12PM   8         ANY OTHER HANDS?

03:12PM   9         THANK YOU.  AND, MS. LOCKWOOD, IF I COULD FOLLOW UP

03:12PM  10    BRIEFLY WITH YOU.  THANK YOU FOR EXPRESSING YOUR VIEWS ON LAW

03:13PM  11    ENFORCEMENT.

03:13PM  12         THE ONLY QUESTION I HAVE IS MY SIDE GOING TO START BEHIND?

03:13PM  13    WE'RE GOING TO HAVE SOME NOT UNIFORMED LAW ENFORCEMENT BUT SORT

03:13PM  14    OF REGULATORS, AND MORE PEOPLE IN SUITS, BUT AS YOU SAID,

03:13PM  15    SHOULD BRING INTEGRITY TO THE JOB AND CERTAINLY BRING A MEASURE

03:13PM  16    OF AUTHORITY BEHIND THEIR PROFESSION.

03:13PM  17         I'M JUST WONDERING IF WE'RE GOING TO START A LITTLE BIT

03:13PM  18    FURTHER BEHIND BECAUSE OF YOUR VIEWS?

03:13PM  19              PROSPECTIVE JUROR:  I DON'T BELIEVE SO.  IT'S BEEN

03:13PM  20    YEARS AGO SINCE I'VE BEEN ON THAT SIDE OF THE LAW AND I PUT

03:13PM  21    MYSELF IN THAT POSITION.  I DON'T HOLD IT PERSONALLY AGAINST

03:13PM  22    PEOPLE.  I'M JUST MORE MINDFUL OF THE ABUSE OF POWER NOW THAT

03:13PM  23    I'M OLDER.

03:13PM  24         SO I DON'T BELIEVE THAT YOU GUYS ARE STARTING IN A

03:13PM  25    NEGATIVE PLACE IN MY POSITION.  I'M JUST MORE HYPERAWARE OF IT

03:13PM   1    NOW.

03:13PM   2              MR. SCHENK:  RIGHT.  AND HOW ABOUT THE WITNESSES?

03:14PM   3    IF SOMEONE IS TESTIFYING AND THEY HAPPEN TO WORK FOR THE

03:14PM   4    GOVERNMENT AND THEIR JOB HAPPENS TO BE A REGULATOR, ARE THEY

03:14PM   5    STARTING A LITTLE BIT FURTHER BEHIND?

03:14PM   6         EVERYBODY HAS VIEWS BUT SOME PEOPLE COME INTO COURT, AND I

03:14PM   7    DON'T WANT TO SAY THEY CHECK THEIR VIEWS AT THE DOOR, BUT ARE

03:14PM   8    ABLE TO HEAR AND EVALUATE TESTIMONY FAIRLY.

03:14PM   9         IS THE WITNESS GOING TO START BEHIND OR WILL YOU ALSO

03:14PM  10    LISTEN TO THEIR TESTIMONY FAIRLY?

03:14PM  11              PROSPECTIVE JUROR:  I BELIEVE EVERYBODY HAS A SHOT

03:14PM  12    TO BE HEARD, AND I'LL GIVE EVERYBODY THAT SHOT.

03:14PM  13         I'VE BEEN IN A POSITION WHERE I NEEDED MY PEERS TO HEAR

03:14PM  14    ME, SO I'M HAPPY TO DO THE SAME FOR OTHERS.

03:14PM  15              MR. SCHENK:  RIGHT.  THANK YOU VERY MUCH.  I

03:14PM  16    APPRECIATE IT.

03:14PM  17         THANK YOU, YOUR HONOR.

03:14PM  18         NO FURTHER QUESTIONS.

03:14PM  19              THE COURT:  MR. DOWNEY.

03:14PM  20              MR. DOWNEY:  GOOD AFTERNOON, LADIES AND GENTLEMEN.

03:14PM  21    I HAVE A FEW QUESTIONS FOR THE PANEL AND THEN A FEW QUESTIONS

03:14PM  22    FOR A COUPLE OF YOU INDIVIDUALLY.

03:14PM  23         FIRST, I WANT TO ASK ABOUT THE MEDIA ISSUES THAT YOU WERE

03:15PM  24    TALKING ABOUT THIS MORNING WITH JUDGE DAVILA.

03:15PM  25         DURING THE COURSE OF THE TRIAL, AS JUDGE DAVILA SAID, YOU

03:15PM 1    WILL BE INSTRUCTED NOT TO VIEW MEDIA THAT IS EITHER ABOUT THIS

03:15PM 2    TRIAL OR ABOUT THE EVENTS THAT THIS TRIAL CONCERNS.

03:15PM 3         WOULD ANYONE WHO FEELS LIKE THEY MIGHT NOT BE ABLE TO

03:15PM 4    COMPLY WITH THAT INSTRUCTION RAISE THEIR HAND?  IS THERE ANYONE

03:15PM 5    WHO FEELS LIKE THAT WILL BE HARD?

03:15PM 6         YES, MA'AM.  WHAT IS YOUR JUROR NUMBER?

03:15PM 7         THE COURT:  THIS IS MS. QUINTANILLA.

03:15PM 8         JUST A SECOND, MS. QUINTANILLA.  WE'RE GOING TO GET THE

03:15PM 9    MICROPHONE TO YOU SO YOU CAN BE HEARD.

03:16PM 10        PROSPECTIVE JUROR:  I JUST HAVE A QUESTION FOR YOU

03:16PM 11   GUYS.  I LIVE WITH MY HUSBAND AND TWO KIDS, AND THEY'RE ADULT

03:16PM 12   KIDS.  AND LIKE THE EXAMPLE I GAVE THIS MORNING IS WHERE I'M

03:16PM 13   COOKING DINNER AND THEY HAVE THE NEWS ON AND IT CAME ON.

03:16PM 14        MY CONCERN IS THAT I DON'T LIVE BY MYSELF AND I CANNOT

03:16PM 15   TURN THE T.V. OFF FOR THE WHOLE DAY, AND I CAN ALSO NOT

03:16PM 16   RESTRICT THEM TO HAVE A LIFE WHILE THE TRIAL GOES ON.  SO I

03:16PM 17   WILL HAVE TO BE HONEST, AND I WILL HAVE TO SAY THAT I WILL

03:16PM 18   CONTINUE TO LET THEM LIVE THEIR LIVES.

03:16PM 19        AND IF I AM CHOSEN, I WILL BE GOOD AND LIKE TRY NOT TO GET

03:16PM 20   ANY INFORMATION, BUT I LIVE WITH THREE OTHER INDIVIDUALS.  AND

03:16PM 21   IF THEY TURN ON THE T.V., I CAN WALK OUT OF THE ROOM, BUT THE

03:16PM 22   PAPER WILL BE THERE.  AND I JUST WANT TO PUT IT OUT THERE.

03:17PM 23        MR. DOWNEY:  WELL, I CAN UNDERSTAND.

03:17PM 24        DO YOU THINK YOU'LL BE ABLE TO DO, WHEN THE CASE GOES ON,

03:17PM 25   DO YOU THINK YOU'LL BE ABLE TO DO WHAT YOU DID YESTERDAY AND

03:17PM   1    THIS MORNING AND JUST WALK AWAY OR NOT LISTEN TO THE STORY?

03:17PM   2              PROSPECTIVE JUROR:  YES, BUT IT WILL BE THERE.  THE

03:17PM   3    NEWSPAPER WILL BE THERE SUNDAY MORNINGS, AND I MIGHT TURN

03:17PM   4    AROUND, AND IT MIGHT BE THERE.  AND SO I JUST WANT TO HAVE A

03:17PM   5    DISCLAIMER THAT THE LIGHT WILL GO ON IN MY HOUSEHOLD LIKE

03:17PM   6    NORMAL, AND I WILL DO MY BEST IF CHOSEN TO NOT TO LOOK, NOT TO

03:17PM   7    READ, TO WALK AWAY, BUT IT WILL BE THERE.

03:17PM   8              MR. DOWNEY:  THANK YOU, MA'AM, FOR BEING HONEST.

03:17PM   9         IS THERE ANYONE ELSE WHO FEELS LIKE THEY'LL HAVE

03:17PM  10    DIFFICULTY STAYING AWAY FROM MEDIA COVERAGE IN THE CASE?

03:17PM  11         MR. BUI.

03:17PM  12              PROSPECTIVE JUROR:  HELLO.  SORRY.  I FEEL LIKE I

03:17PM  13    KEEP GETTING THE MIKE NOW.

03:18PM  14         (LAUGHTER.)

03:18PM  15              PROSPECTIVE JUROR:  SO A LOT OF MY JUST DAY TO DAY

03:18PM  16    IS JUST OBSERVING INFORMATION FROM THE SOCIAL MEDIA AND SHARING

03:18PM  17    MY THOUGHTS, MY OPINIONS.

03:18PM  18         MOVING FORWARD, I WOULD DO MY BEST TO AVOID ANY

03:18PM  19    INFORMATION OF THIS CASE, BUT I WOULDN'T BE ABLE TO SAY, LIKE,

03:18PM  20    IT WON'T POP UP AND I MIGHT BE A LITTLE TEMPTED TO KNOW WHAT IS

03:18PM  21    HAPPENING.

03:18PM  22         AND ALSO, IF SOMEONE WERE TO COME UP TO ME AND TALK ABOUT

03:18PM  23    IT OR ANYTHING, I'D HAVE TO WALK AWAY FROM THE SITUATION.  IT

03:18PM  24    MAY BE WEIRD, I DON'T KNOW.

03:18PM  25         BUT THAT'S SOME OF THE THOUGHTS THAT ARE KIND OF GOING

03:18PM  1    THROUGH MY HEAD WHEN THINKING ABOUT CONSUMING MEDIA.

03:18PM  2              MR. DOWNEY:  IS THERE ANYONE ELSE WHO ALSO FEELS

03:18PM  3    LIKE IT MIGHT BE DIFFICULT FOR THEM TO AVOID MEDIA ABOUT THE

03:18PM  4    CASE?

03:18PM  5         I WANT TO ASK YOU A COUPLE OF QUESTIONS ABOUT THE

03:19PM  6    PRESUMPTION OF INNOCENCE.

03:19PM  7         JUDGE DAVILA GAVE YOU AN INSTRUCTION TODAY AND TALKED TO

03:19PM  8    YOU AT SOME LENGTH ABOUT THE PRESUMPTION OF INNOCENCE, AND

03:19PM  9    THAT'S AN IMPORTANT PRINCIPLE FOR ALL OF THE PARTIES REALLY,

03:19PM 10    FOR THE GOVERNMENT AND FOR THE DEFENSE, AND CERTAINLY FOR THE

03:19PM 11    COURT.

03:19PM 12         BUT I KNOW SOMETIMES DESPITE THE FACT THAT THAT'S AN

03:19PM 13    IMPORTANT PRINCIPLE IN OUR SYSTEM, PEOPLE CAN SOMETIMES FELL

03:19PM 14    LIKE THEY'LL HAVE DIFFICULTY ADHERING TO THAT INSTRUCTION.

03:19PM 15         WOULD THE PEOPLE WHO FEEL LIKE THEY MIGHT HAVE SOME

03:19PM 16    DIFFICULTY MAINTAINING A PRESUMPTION OF INNOCENCE PLEASE RAISE

03:19PM 17    YOUR HAND?

03:19PM 18         DOES EVERYONE FEEL LIKE, IN CONNECTION WITH THIS CASE,

03:19PM 19    THAT YOU CAN GRANT THAT PRESUMPTION TO MS. HOLMES?

03:19PM 20              THE COURT:  MR. DOWNEY, THE RECORD SHOULD REFLECT AS

03:20PM 21    TO YOUR FIRST QUESTION THERE WERE NO HANDS.

03:20PM 22              MR. DOWNEY:  THANK YOU, YOUR HONOR.

03:20PM 23         I BELIEVE THAT'S THE SAME CASE WITH RESPECT TO THE SECOND

03:20PM 24    QUESTION, THERE WERE NO HANDS.

03:20PM 25         I WANT TO ASK YOU ALSO, A FEW OF YOU INDIVIDUALLY, ABOUT

03:20PM  1    REPORTS TO LAW ENFORCEMENT THAT YOU MAY HAVE GIVEN IN THE PAST.

03:20PM  2         MR. MURPHY, JUROR 130, YOU REFERENCED ON YOUR

03:20PM  3    QUESTIONNAIRE A MATTER THAT YOU PREFERRED TO DISCUSS WITH THE

03:20PM  4    COURT IN PRIVATE, AND I DON'T WANT TO ASK YOU ABOUT THAT.

03:20PM  5         IS THAT THE MATTER THAT WE ALREADY DISCUSSED OR WAS THERE

03:20PM  6    ANOTHER MATTER THAT YOU THOUGHT WAS AN INCIDENT OF YOU

03:20PM  7    REPORTING SOMETHING EITHER AS A WHISTLEBLOWER OR IN CONNECTION

03:20PM  8    WITH WRONGDOING BY SOMEONE ELSE?

03:20PM  9         PROSPECTIVE JUROR:  IT WAS THE MATTER WE ALREADY

03:20PM  10   DISCUSSED.

03:20PM  11        I'M SORRY.  IT WAS THE MATTER WE ALREADY DISCUSSED RELATED

03:21PM  12   TO MY ROLE AS THE WHISTLEBLOWER PROGRAM MANAGER.

03:21PM  13        MR. DOWNEY:  OKAY.  THANK YOU, MR. MURPHY.

03:21PM  14        LAST QUESTION FOR THE PANEL IS THIS:  IT CAN BE THE CASE,

03:21PM  15   I THINK, PARTICULARLY WITH SO MUCH EXPOSURE TO MEDIA THROUGH

03:21PM  16   OUR IPHONES, THROUGH CONVERSATIONS WITH OTHERS WHO HAVE BEEN

03:21PM  17   EXPOSED TO MEDIA TO THINK THAT WHAT THE MEDIA SAYS AND WHAT THE

03:21PM  18   MEDIA REPORTS IS ACCURATE.

03:21PM  19        AS YOU KNOW, THERE'S BEEN A LOT OF MEDIA IN THIS CASE.

03:21PM  20   YOU'VE GATHERED THAT FROM FILLING OUT THE QUESTIONNAIRES.  MANY

03:21PM  21   OF YOU HAVE IN SOME SMALL SENSE HAVE BEEN EXPOSED TO.

03:21PM  22        IS THERE ANYONE WHO FEELS THAT BECAUSE THERE'S BEEN

03:21PM  23   SUBSTANTIAL MEDIA COVERAGE OF MS. HOLMES AND SOME OF THE ISSUES

03:21PM  24   THAT WILL BE INVOLVED IN THE TRIAL, THAT THAT MIGHT INDICATE

03:21PM  25   THAT SHE IS GUILTY OF SOME OFFENSE?

03:22PM   1          I SEE NO HANDS IN RESPONSE TO THAT QUESTION.

03:22PM   2          THANK YOU FOR YOUR OPEN MINDEDNESS.  THANK YOU FOR YOUR

03:22PM   3   PATIENCE TODAY.  THANK YOU FOR COMING DOWN TO FILL OUT THE

03:22PM   4   QUESTIONNAIRE IN THE MIDST OF A PANDEMIC.

03:22PM   5          THANK YOU, YOUR HONOR.

03:22PM   6              THE COURT:  THANK YOU.

03:22PM   7          ANY FURTHER QUESTIONS, MR. SCHENK?

03:22PM   8              MR. SCHENK:  NO, YOUR HONOR.

03:22PM   9              THE COURT:  LET ME ASK BEFORE WE BREAK, DOES THE

03:22PM  10   GOVERNMENT PASS FOR CAUSE?

03:22PM  11              MR. SCHENK:  YES, YOUR HONOR.

03:22PM  12              THE COURT:  MR. DOWNEY?

03:22PM  13              MR. DOWNEY:  THERE ARE A COUPLE OF SITUATIONS WE

03:22PM  14   WANT TO DISCUSS, YOUR HONOR.

03:22PM  15              THE COURT:  THANK YOU.  LET'S TAKE OUR BREAK NOW,

03:22PM  16   LADIES AND GENTLEMEN.  LET'S TAKE A 30 MINUTE BREAK, PLEASE,

03:22PM  17   30 MINUTES.  WE HOPE WE CAN GET YOU BACK UP HERE BY THE TOP OF

03:22PM  18   THE HOUR.

03:22PM  19          AGAIN, THE ADMONITION NOT TO DISCUSS ANYTHING WITH ANYONE

03:22PM  20   AND NOT TO READ ANYTHING ABOUT THIS CASE TO DO WITH IT REMAINS

03:22PM  21   IN PLACE.  THANK YOU.

03:22PM  22          WE'LL SEE YOU IN 30 MINUTES.  YOU SHOULD GO DOWNSTAIRS.

03:22PM  23   COLLECT YOURSELVES IN THE JURY ASSEMBLY ROOM.

03:23PM  24          MR. MURPHY, WE WILL GET THAT FROM YOU.  THANK YOU.

03:23PM  25          (PROSPECTIVE JURY PANEL OUT AT 3:23 P.M.)

450

| | | |
|---|---|---|
| 03:23PM | 1 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 03:23PM | 2 | THE RECORD SHOULD REFLECT OUR PROSPECTIVE JURY PANEL HAS |
| 03:23PM | 3 | LEFT THE COURTROOM.  ALL OTHER PARTIES REMAIN.  PLEASE BE |
| 03:23PM | 4 | SEATED.  THANK YOU. |
| 03:23PM | 5 | MR. DOWNEY, I'D LIKE TO HAVE A DISCUSSION ABOUT SOME OF |
| 03:23PM | 6 | THE JURORS HERE, AND IF YOU, IF YOU OR ANY OF YOUR PARTY NEED |
| 03:23PM | 7 | TO TAKE A BREAK AND YOU WANT TO INDICATE ON THE RECORD THAT YOU |
| 03:23PM | 8 | CAN PROCEED, FOR EXAMPLE, WITHOUT YOUR COLLEAGUES'S PRESENCE, |
| 03:24PM | 9 | I'M HAPPY TO RECEIVE THAT. |
| 03:24PM | 10 | MR. DOWNEY:  CERTAINLY, YOUR HONOR. |
| 03:24PM | 11 | I THINK AS TO MS. HOLMES THIS IS EFFECTIVELY A SIDE-BAR |
| 03:24PM | 12 | AND WE HAVE THAT SITUATION COVERED, SO PERHAPS WE COULD |
| 03:24PM | 13 | PROCEED. |
| 03:24PM | 14 | THE COURT:  WITH HER BEING PRESENT? |
| 03:24PM | 15 | MR. DOWNEY:  NO.  SHE COULD BE DISMISSED, AND THEN |
| 03:24PM | 16 | WE CAN PROCEED. |
| 03:24PM | 17 | THE COURT:  THAT'S WHAT I WAS ASKING.  THANK YOU. |
| 03:24PM | 18 | ALL RIGHT.  IF YOU AGREE WITH THAT, THAT SHE CAN BE |
| 03:24PM | 19 | DISMISSED FOR THE PURPOSES OF THIS CONVERSATION, WE'LL |
| 03:24PM | 20 | CERTAINLY PERMIT THAT, OR ANYONE ELSE OF YOUR TEAM WHO WANTS TO |
| 03:24PM | 21 | LEAVE THE COURTROOM, YOU CAN CERTAINLY DO THAT NOW IF YOU WOULD |
| 03:24PM | 22 | LIKE. |
| 03:24PM | 23 | FIRST I'D LIKE TO READ THESE COLLECTIVELY. |
| 03:25PM | 24 | 155 IS MS. MARTINEZ, SHE'S A TEACHER.  SHE SUGGESTED |
| 03:25PM | 25 | STAFFING ISSUES THAT WOULD COMPROMISE HER EMPLOYMENT. |

03:25PM 1     143 IS A TEACHER AT A NONPROFIT, AND SHE ALSO EXPRESSED

03:25PM 2  SIMILAR CONCERNS.

03:25PM 3     108, GONZALEZ, ALSO EXPRESSED CONCERNS.  SHE'S A TEACHER.

03:25PM 4     166 IS MR. PERALTA.  HE TALKED TO US ABOUT HIS MEDICAL

03:25PM 5  CONDITION AND FINANCES.

03:25PM 6     THEN 157, MR. BUI, WHO TALKS TO US ABOUT FINANCES AND HIS

03:25PM 7  CONCERNS.

03:25PM 8     ANY THOUGHTS ABOUT THESE RESPECTIVE JURORS?

03:25PM 9        MR. SCHENK:  NO OBJECTION TO DISMISSING THIS GROUP.

03:25PM 10       MR. DOWNEY:  NO OBJECTION, YOUR HONOR.

03:25PM 11       THE COURT:  ALL RIGHT.  THANK YOU.

03:26PM 12    SO THE COURT WILL, AS TO 155, MS. MARTINEZ, WE WILL EXCUSE

03:26PM 13 HER FOR HARDSHIP, AND SAME AS TO 143, AND SAME AS TO JUROR 108,

03:26PM 14 AND SAME AS TO 157, AND THE SAME AS TO JUROR 166.  THEY ARE

03:26PM 15 EXCUSED FOR HARDSHIP AND FINANCIAL REASONS.

03:26PM 16    MR. DOWNEY, WHAT DOES THAT DO TO THE POOL OF FOLKS THAT

03:26PM 17 YOU'D LIKE TO SPEAK ABOUT?

03:26PM 18       MR. DOWNEY:  YOUR HONOR, WITH REGARD TO JUROR

03:26PM 19 NUMBER 154, I THINK HER ADMITTED PREFERENCE FOR TESTIMONY OF

03:27PM 20 CERTAIN LAW ENFORCEMENT OFFICERS COUPLED WITH THE TESTIMONY OF

03:27PM 21 DOCTORS INDICATED A BIAS THAT COULD POTENTIALLY BE MEANINGFUL

03:27PM 22 IN CONNECTION WITH THE CASE.

03:27PM 23    SHE ALSO INDICATED WHEN SHE FILLED OUT HER QUESTIONNAIRE A

03:27PM 24 FAIR DEGREE OF BIAS TOWARDS THE GOVERNMENT GENERALLY IN

03:27PM 25 CRIMINAL CASES.  FOR EXAMPLE, SHE WROTE IN HER QUESTIONNAIRE

03:27PM  1   "USUALLY THE ACCUSED IS GUILTY," AND IN RESPONSE TO

03:27PM  2   QUESTION 57.

03:27PM  3       AND IN RESPONSE TO QUESTION 58 WHEN ASKED IF SHE BELIEVED

03:27PM  4   A DEFENDANT HAD AN OBLIGATION TO PROVE THEIR INNOCENCE SHE

03:27PM  5   WROTE, "IF THEY'RE NOT GUILTY, WHY ARE THEY ACCUSED?  WHAT DID

03:28PM  6   THEY DO TO MAKE THEM SEEM GUILTY?"

03:28PM  7       I THINK, YOUR HONOR, THERE'S A BIAS ISSUE GENERALLY

03:28PM  8   AGAINST CRIMINAL DEFENDANTS THERE, AND WE WOULD ASK FOR HER

03:28PM  9   DISMISSAL.

03:28PM  10           MR. SCHENK:  NO OBJECTION.

03:28PM  11           THE COURT:  ALL RIGHT.  THANK YOU.

03:28PM  12       NOTWITHSTANDING THE FACT THAT WHEN THE COURT ASKED THE

03:28PM  13   QUESTION OF WHETHER THERE WAS ANYONE WHO PARTED COMPANY WITH

03:28PM  14   THE PRESUMPTION OF INNOCENCE, FIFTH AMENDMENT PRIVILEGE NOT TO

03:28PM  15   TESTIFY, SHE DID NOT RAISE HER HAND TO THOSE QUESTIONS.  BUT I

03:28PM  16   HAVE REFERENCED HER QUESTIONNAIRE, HER RESPONSE TO QUESTIONS BY

03:28PM  17   MR. SCHENK IN REGARDS TO MEDICAL INDIVIDUALS AND OTHERS WHO

03:28PM  18   MIGHT TESTIFY ABOUT OTHER ISSUES.

03:28PM  19       I WILL STRIKE HER FOR CAUSE.  IT'S APPROPRIATE.

03:28PM  20       ANYONE ELSE?  MR. DOWNEY?

03:28PM  21           MR. DOWNEY:  I BEG YOUR PARDON, YOUR HONOR.  LET ME

03:28PM  22   JUST GET ORIENTED AS TO MY CHART.

03:30PM  23       (PAUSE IN PROCEEDINGS.)

03:30PM  24           MR. DOWNEY:  YOUR HONOR, I WOULDN'T WANT TO -- NEED

03:30PM  25   AN ADJOURNMENT IN CONNECTION WITH THE TRIAL IN CONNECTION WITH

03:30PM  1      JUROR NUMBER 133 OF CONFLICT WITH CERTAIN TRIAL DATES.

03:30PM  2           (PAUSE IN PROCEEDINGS.)

03:30PM  3           THE COURT:  HIS -- HE HAS WEDDINGS TO ATTEND, AND I

03:30PM  4      THINK A WEDDING WAS THE 21ST OF DECEMBER AND THE ONE IN HAWAII

03:30PM  5      REQUIRES HIM TO LEAVE ON A -- ON THE 3RD.  THE WEDDING IS ON

03:30PM  6      THE 4TH.

03:30PM  7           WE NEGLECTED TO ASK HIM IF HE WOULD BE RETURNING SHORTLY

03:30PM  8      AFTER THE WEDDING.  I'M NOT GOING TO EXCUSE HIM NOW.

03:31PM  9           LET ME SAY, I HAVE CONFIDENCE -- I TOLD THE JURORS THAT IT

03:31PM  10     MAY GO INTO DECEMBER.  AS YOU KNOW, OUR SCHEDULE I THINK NOW IS

03:31PM  11     INTO LATE NOVEMBER.  I HAVE CONFIDENCE THAT COUNSEL ARE GOING

03:31PM  12     TO, WITH THE ASSISTANCE OF THE COURT, EFFICIENTLY PRODUCE THE

03:31PM  13     EVIDENCE IN THE CASE SUCH THAT THAT WON'T BE AN ISSUE.

03:31PM  14           SO THANK YOU FOR RAISING THAT THOUGH.

03:31PM  15           MR. SCHENK:  YOUR HONOR, JUROR 134 IN RESPONSE TO A

03:31PM  16     QUESTION THAT I ASKED ABOUT THE ABILITY TO HEAR EVIDENCE DURING

03:31PM  17     TRIAL ABOUT DOMESTIC VIOLENCE OR IPV SAID SOMETHING I THINK

03:31PM  18     THAT WAS SIMILAR TO A JUROR WE JUST EXCUSED.

03:31PM  19           AND YOU TAKE THE WORST NOTES WHEN YOU'RE ASKING THE

03:31PM  20     QUESTION, SO I'M HONESTLY NOT POSITIVE -- I CAN'T QUOTE WHAT

03:31PM  21     SHE SAID, BUT MY RECOLLECTION IS THAT IT'S SOMETHING LIKE IT'S

03:31PM  22     VERY DIFFICULT FOR ME TO HEAR WHEN A WEAKER INDIVIDUAL OR

03:31PM  23     SOMEONE ELSE IS BEING PUT IN A VULNERABLE POSITION.

03:32PM  24           IT AT LEAST STRIKES ME AS AN INDIVIDUAL WORTH A DISCUSSION

03:32PM  25     ABOUT, WHETHER HER COMMENTS WERE SIMILAR ENOUGH TO MS. KEHN, I

03:32PM   1    THINK.

03:32PM   2              THE COURT:  MS. LARUE AND MS. KEHN, YES.

03:32PM   3         MR. DOWNEY?

03:32PM   4              MR. DOWNEY:  YOUR HONOR, I WOULDN'T BE INCLINED TO

03:32PM   5    DISMISS HER ON A CAUSE BASIS.

03:32PM   6         I UNDERSTAND THE STATEMENTS THAT SHE MADE, AND I

03:32PM   7    UNDERSTAND THAT WHAT SHE SAID ABOUT THE TESTIMONY, BUT I DON'T

03:32PM   8    THINK THAT'S JUSTIFICATION FOR AN EXCUSAL.

03:32PM   9         I UNDERSTAND THAT DIFFERENT JURORS WILL HAVE DIFFERENT

03:32PM  10    REACTIONS TO DIFFERENT KINDS.

03:32PM  11              THE COURT:  WELL, SHE SAID SHE HAS STRONG OPINIONS

03:32PM  12    ABOUT THE WEAKER PERSON AND THEN SHE QUALIFIED THAT OR EXPANDED

03:32PM  13    THAT BY SAYING IT DOESN'T MATTER IF IT'S A MAN OR A WOMAN I

03:32PM  14    THINK IS WHAT SHE SAID.

03:32PM  15              MR. DOWNEY:  THAT'S RIGHT.

03:32PM  16              THE COURT:  AND I WROTE DOWN THAT SHE SAID, "I CAN'T

03:33PM  17    ABIDE BY IT."

03:33PM  18              MR. DOWNEY:  RIGHT.

03:33PM  19              THE COURT:  IS THAT WHAT YOU'RE REFERRING TO,

03:33PM  20    MR. SCHENK?

03:33PM  21              MR. SCHENK:  YES, YOUR HONOR.

03:33PM  22              THE COURT:  AND IT SOUNDS TO ME -- OF COURSE, WE

03:33PM  23    DON'T KNOW WHETHER OR NOT THERE WILL BE ANY TESTIMONY THAT

03:33PM  24    AFFECTS THIS OPINION IN THE CASE.  SHE EXPRESSED THIS OPINION

03:33PM  25    NOW.

03:33PM   1          I DON'T THINK IT RISES TO A CAUSE CHALLENGE AT THIS POINT.

03:33PM   2                  MR. DOWNEY:  I AGREE, YOUR HONOR.

03:33PM   3                  THE COURT:  SO THANK YOU.

03:33PM   4          ANYTHING ELSE, MR. DOWNEY?

03:33PM   5                  MR. DOWNEY:  NO, YOUR HONOR.  I THINK I'VE EXHAUSTED

03:33PM   6    IT.

03:33PM   7                  THE COURT:  OKAY.

03:33PM   8                  MR. SCHENK:  BRIEFLY, ONE THING.  I WANT TO CONTINUE

03:33PM   9    TO MAKE A RECORD ON THIS ISSUE, YOUR HONOR.

03:33PM   10         WE CAME BACK FROM LUNCH TODAY, AND THE DEFENSE RAISED FIVE

03:33PM   11   POTENTIAL HARDSHIPS FOR THE COURT:  117, 121, 142, 143, AND

03:34PM   12   145.  I BELIEVE ALL OF THOSE WERE NON-WHITE JURORS.

03:34PM   13         I THEN STOOD UP AND NOTED FOR THE COURT THAT I THOUGHT

03:34PM   14   MR. BREKKE, WHO IS JUROR 127, ALSO CHECKED YES TO QUESTION

03:34PM   15   NUMBER 1 THAT HE HAD A HARDSHIP.

03:34PM   16         I WOULD ALSO NOTE FOR THE COURT THAT JUROR 130,

03:34PM   17   MR. MURPHY, DID NOT CHECK YES FOR QUESTION NUMBER 1, HE CHECKED

03:34PM   18   NO, BUT THEN HE WROTE A LENGTHY DESCRIPTION IN THERE ON A BASIS

03:34PM   19   FOR A HARDSHIP.

03:34PM   20         I WANT TO CONTINUE TO DEVELOP THE RECORD ON THIS CASE IN

03:34PM   21   CASE IT BECOMES AN ISSUE AS WE MOVE TO THE PEREMPTORY

03:34PM   22   CHALLENGES, YOUR HONOR.

03:34PM   23                  THE COURT:  THANK YOU.  YOU'RE NOT MAKING ANY MOTION

03:34PM   24   AT THIS POINT TIMING WISE?

03:34PM   25                  MR. SCHENK:  I AM NOT.

03:34PM  1          THE COURT:  ALL RIGHT.  ANY COMMENT ON THAT?

03:34PM  2          MR. DOWNEY:  YOUR HONOR, WE HAVE CONSENTED TO THE

03:34PM  3  DISMISSAL OF EVERY JUROR OF ANY RACE WHO HAS A REASONABLE

03:34PM  4  HARDSHIP REQUEST.

03:34PM  5      WE'VE PROPOSED IT OVER THE GOVERNMENT'S OPPOSITION, AS THE

03:34PM  6  COURT KNOWS, PRIOR TO THEM BEING FORCED TO COME DOWN HERE FOR

03:35PM  7  JURY SERVICE IN MANY INSTANCES.  SO I, I JUST WANT TO

03:35PM  8  DISASSOCIATE MYSELF IN STRONG TERMS FROM MR. SCHENK'S COMMENTS.

03:35PM  9          THE COURT:  ALL RIGHT.  THANK YOU.

03:35PM  10     AND THERE WERE SOME OF THESE THAT WERE RAISED.  I KNOW YOU

03:35PM  11 SAID "FORCED TO COME DOWN."  THERE WERE SOME OF THESE THAT WERE

03:35PM  12 RAISED THAT WE NEEDED SOME ADDITIONAL INFORMATION ON.

03:35PM  13         MR. DOWNEY:  YOUR HONOR, I AGREE WITH THOSE.  I

03:35PM  14 THINK OTHERS WE EXCUSED ON THE BASIS THAT WAS ARTICULATED IN

03:35PM  15 THE QUESTIONNAIRE WITHOUT MUCH ADDITIONAL INQUIRY, BUT I THINK

03:35PM  16 THE RECORD IS QUITE CLEAR OUR RAISING HARDSHIP REQUESTS WITHOUT

03:35PM  17 BEING TACTICAL, WHEREAS THE GOVERNMENT HAS WAITED TO SEE THE

03:35PM  18 JURORS FIRST.

03:35PM  19         THE COURT:  ALL RIGHT.  THANK YOU.

03:35PM  20     WELL, LET'S TAKE A BREAK.  MY SENSE IS THAT -- DO YOU

03:35PM  21 OTHERWISE PASS FOR CAUSE THEN, SIR?

03:35PM  22         MR. DOWNEY:  I DO, YOUR HONOR.  YES.

03:35PM  23         THE COURT:  ALL RIGHT.  THANK YOU.

03:35PM  24     ANY FURTHER CHALLENGES FROM THE DEFENSE?

03:36PM  25         MR. DOWNEY:  NO, YOUR HONOR.

| | | |
|---|---|---|
| 03:36PM | 1 | THE COURT:  FOR CAUSE CHALLENGES? |
| 03:36PM | 2 | MR. DOWNEY:  NO FOR CAUSE CHALLENGES. |
| 03:36PM | 3 | THE COURT:  ALL RIGHT. |
| 03:36PM | 4 | MR. SCHENK:  NO, YOUR HONOR. |
| 03:36PM | 5 | THE COURT:  IT SEEMS LIKE WHEN WE CAN CALL THE JURY |
| 03:36PM | 6 | BACK, IT SOUNDS LIKE IT'S THE TIMING NOW IS TO BEGIN JURY |
| 03:36PM | 7 | SELECTION PROPER, THAT IS, TO HAVE THE SIDES ENGAGE IN |
| 03:36PM | 8 | EXERCISES, ANY PEREMPTORY CHALLENGES THAT YOU MIGHT HAVE. |
| 03:36PM | 9 | YOU'VE BEEN PROVIDED A LIST, A RUNNING LIST I'LL CALL IT. |
| 03:36PM | 10 | THE CLERK:  I'LL UPDATE IT. |
| 03:36PM | 11 | THE COURT:  YOU'VE BEEN PROVIDED A LIST THAT HAS AT |
| 03:36PM | 12 | LEAST CURRENTLY THE ROSTER, IF YOU WILL, OF JURORS.  WE WILL |
| 03:36PM | 13 | NEED TO ADD THIS COMPLEMENT, TODAY'S COMPLEMENT TO THAT PANEL. |
| 03:36PM | 14 | MY SENSE IS, MY MATH IS, WHICH IS NOT A STRONG SUIT OF |
| 03:36PM | 15 | MINE, BUT MY MATH SUGGESTS THAT WE WILL HAVE SUFFICIENT NUMBER |
| 03:36PM | 16 | OF JURORS IN THIS LIST TO SELECT A JURY FOR THE CASE. |
| 03:37PM | 17 | WOULD YOU AGREE WITH THAT, MR. SCHENK? |
| 03:37PM | 18 | MR. SCHENK:  YES, WE DO. |
| 03:37PM | 19 | MR. DOWNEY:  I DO, YOUR HONOR. |
| 03:37PM | 20 | THE COURT:  OKAY.  THANK YOU. |
| 03:37PM | 21 | SO COMBINING, USING YESTERDAY'S PANEL WITH TODAY'S PANEL, |
| 03:37PM | 22 | THAT WILL BE THE UNIVERSE, THE COMBINATION OF THE ROSTER, IF |
| 03:37PM | 23 | YOU WILL. |
| 03:37PM | 24 | I'M CURIOUS IF WE SHOULD, IF THIS COURT SHOULD EXCUSE THIS |
| 03:37PM | 25 | JURY TODAY OR RELEASE THEM, NOT EXCUSE THEM BUT RELEASE THEM |

03:37PM  1    TODAY, IT SEEMS LIKE WE CAN CONDUCT THE SELECTION PROCESS

03:37PM  2    WITHOUT THEM BEING PRESENT BECAUSE WE'RE DRAWING FROM

03:37PM  3    YESTERDAY'S PANEL AS WELL WHO OBVIOUSLY ARE NOT HERE.

03:37PM  4         IF I INFORM OR IF I WERE TO RELEASE THE JURY TODAY OR

03:37PM  5    EXCUSE THEM FOR TODAY WITH THE PROVISO THAT THEY WILL BE

03:37PM  6    CONTACTED SHOULD THEY BE SELECTED OR IF THEY NEED TO RETURN FOR

03:37PM  7    ANY PURPOSE, WE CAN DO THAT AS WELL.

03:37PM  8         WHAT ARE YOUR THOUGHTS ON THAT, MR. SCHENK?

03:38PM  9              MR. SCHENK:  I THINK THAT MAKES SENSE.  NO

03:38PM 10    OBJECTION.

03:38PM 11              MR. DOWNEY:  THAT'S FINE, YOUR HONOR.

03:38PM 12              THE COURT:  AND THIS WILL ALLOW US TO ALSO SELECT

03:38PM 13    THE ALTERNATES THAT WILL NEED TO BE SELECTED AS WELL.  I THINK

03:38PM 14    OUR POOL SUFFICES FOR THAT AS WELL.

03:38PM 15              MR. DOWNEY:  MY MATH SUGGESTS THAT, BUT I DON'T HAVE

03:38PM 16    MATH AS A STRONG SUIT, EITHER.

03:38PM 17              THE COURT:  SO LET'S DO THAT THEN.

03:38PM 18         I'LL ASK MS. KRATZMANN TO NOTIFY THE JURY COMMISSIONER

03:38PM 19    DOWNSTAIRS THAT THE -- THAT WE HAVE -- THE COURT HAS EXCUSED

03:38PM 20    THOSE JURORS, THOSE FIVE JURORS THAT WE MENTIONED AND THAT THE

03:38PM 21    BALANCE OF THE PANEL ARE PERMITTED TO LEAVE THE COURT.  THEY'RE

03:38PM 22    NOT, THEY'RE NOT EXCUSED FROM JURY SERVICE, BUT THEY SHOULD,

03:38PM 23    THEY SHOULD JUST WAIT TO HEAR FROM THE COURT SHOULD THEY BE

03:38PM 24    CALLED BACK.

03:38PM 25              THE CLERK:  YOUR HONOR, CAN I JUST GET

03:38PM 1    CLARIFICATION?

03:38PM 2        I BELIEVE WE HAD THE FIVE JURORS EXCUSED, BUT JUROR 154,

03:38PM 3    THAT WOULD BE SIX TO BE EXCUSED; IS THAT CORRECT?

03:39PM 4            THE COURT:  MS. KRATZMANN, I SAID MATH WAS NOT MY

03:39PM 5    STRONG SUIT AND YOU WANTED TO PROVE THAT PUBLICLY, DIDN'T YOU?

03:39PM 6        (LAUGHTER.)

03:39PM 7            THE COURT:  THAT'S WHAT GOOD CLERKS ARE FOR, THEY

03:39PM 8    KEEP US ON OUR TOES.

03:39PM 9        SO IT LOOKS LIKE IT'S SIX.  I THINK YOUR MATH IS CORRECT.

03:39PM 10   SO THANK YOU FOR THAT, MS. KRATZMANN.

03:39PM 11           THE CLERK:  THANK YOU.

03:39PM 12           THE COURT:  SO WHAT WE'LL DO IS INDICATE TO OUR JURY

03:39PM 13   COMMISSIONER DOWNSTAIRS THAT THOSE JURORS WHO HAVE BEEN EXCUSED

03:39PM 14   ARE EXCUSED.

03:39PM 15       THE BALANCE SHOULD WAIT TO HEAR FROM THE COURT.  THE

03:39PM 16   ADMONITION REMAINS IN PLACE AS TO THEM.

03:39PM 17       LET'S SEE WHERE WE GO.  MY SENSE IS THAT WE'RE NOT GOING

03:39PM 18   TO BE ABLE TO -- IF WE SELECT A JURY TODAY, WHICH I'M CONFIDENT

03:39PM 19   WE WILL, WE'RE NOT GOING TO BRING THEM BACK TODAY FOR SWEARING

03:40PM 20   PURPOSES.

03:40PM 21       WHAT ARE YOUR THOUGHTS -- I MENTIONED THIS AT THE BREAK.

03:40PM 22   WHAT ARE YOUR THOUGHTS ABOUT WHEN WE SHOULD SWEAR IN THE PANEL

03:40PM 23   THEN.

03:40PM 24       MR. SCHENK?

03:40PM 25           MR. SCHENK:  YES, YOUR HONOR.

03:40PM 1      WE DISCUSSED THIS A WEEK OR TWO AGO, AND THE GOVERNMENT

03:40PM 2  SUGGESTED THAT WE WAIT TO SWEAR THEM IN UNTIL THE WEDNESDAY OF

03:40PM 3  OPENING.

03:40PM 4      THE COURT EXPRESSED A VIEW OR AT LEAST A THOUGHT THAT

03:40PM 5  THERE IS SOMETHING TO BE SAID FOR THE COURT TELLING THE JURY

03:40PM 6  YOU'RE NOW THE JURY, I'M SWEARING YOU IN, DON'T EXPOSE YOURSELF

03:40PM 7  TO ANY MEDIA, DON'T READ ANYTHING.

03:40PM 8      I THINK WHAT WE'VE SEEN OVER THE LAST TWO DAYS IS JURORS

03:40PM 9  HAVE A LOT OF FIDELITY TO THE INSTRUCTION PROVIDED IN THE

03:40PM 10  QUESTIONNAIRE.  THE JURORS TOOK THAT SERIOUSLY.  I THINK WE

03:40PM 11  SHOULD HAVE SOME MEASURE OF COMFORT THAT THE JURORS WILL NOT BE

03:40PM 12  EXPOSED TO ADDITIONAL MEDIA.

03:40PM 13      THE COURT CAN CERTAINLY ASK ON WEDNESDAY MORNING IF ANYONE

03:41PM 14  HAS BEEN EXPOSED TO IT, BUT I DON'T THINK IT'S NECESSARY TO

03:41PM 15  CALL IN THE 17, OR WHATEVER THE NUMBER WOULD BE FOR TOMORROW,

03:41PM 16  THE JURY PLUS THE ALTERNATES, JUST FOR THE PURPOSE OF SWEARING

03:41PM 17  THEM IN.

03:41PM 18      I DON'T NEED TO SAY A LOT ABOUT THE DISRUPTION TO

03:41PM 19  SOMEONE'S DAY OR THEIR LIFE TO COME INTO COURT JUST FOR THAT

03:41PM 20  SHORT PERIOD OF TIME.  I THINK THAT'S ALSO WORTH NOTING, BUT

03:41PM 21  CERTAINLY IF THERE WAS A SIGNIFICANT NEED TO DO IT, THAT

03:41PM 22  WOULDN'T BE AN OBSTACLE.

03:41PM 23           THE COURT:  OKAY.  THANK YOU.

03:41PM 24           MR. DOWNEY:  YOUR HONOR, I THINK WE'RE DISRUPTING

03:41PM 25  THESE PEOPLE WHO WILL BE SELECTED, THEIR LIVES A LOT, AND I

03:41PM  1    RECOGNIZE THAT.

03:41PM  2         IT WOULD BE MY PREFERENCE TO GET A JURY SWORN AS SOON AS

03:41PM  3    IT'S SEATED, BUT I LEAVE IT TO YOUR HONOR TO MAKE THE

03:41PM  4    DETERMINATION.

03:41PM  5              THE COURT:  ALL RIGHT.  THANK YOU.

03:41PM  6         YOU KNOW, I DON'T KNOW WHAT YOUR COMMENTS ARE OR IF YOU

03:41PM  7    HAVE ANY REGARDING, MR. DOWNEY, REGARDING THE JURY'S RESPONSES

03:41PM  8    TO THE QUESTION ABOUT MEDIA ACCESS.

03:42PM  9         I HAVE TO CONFESS, I'VE BEEN IMPRESSED WITH THEM ALSO.

03:42PM  10   THEY'VE TOLD US THAT THEY HAVE TURNED AWAY, THEY HAVEN'T

03:42PM  11   WATCHED THINGS.

03:42PM  12        MS. QUINTANILLA WAS VERY CANDID ABOUT HER HOUSEHOLD.  SHE

03:42PM  13   IS NOT GOING TO CHANGE THINGS, BUT SHE WILL LEAVE THE ROOM.

03:42PM  14        OTHER JURORS HAVE SAID, NO, I READ THIS.  I THINK ONE

03:42PM  15   JUROR TOLD US I SAW IT ON MY PHONE AND DIDN'T PUSH THE BUTTON,

03:42PM  16   DIDN'T CLICK.

03:42PM  17        I HAVE REMINDED THEM AT EACH BREAK WHAT THEY'RE NOT TO DO,

03:42PM  18   KIND OF A MODIFIED INSTRUCTION OF A PRELIMINARY AND FINAL

03:42PM  19   INSTRUCTION THAT THEY WOULD RECEIVE.

03:42PM  20        AND I, I -- MY SENSE IS THAT THEIR ANSWERS TO MY

03:42PM  21   QUESTIONS, MY OBSERVATIONS HAVE BEEN THAT, AND I SHARE

03:42PM  22   MR. SCHENK'S OBSERVATION, THEY'VE BEEN SINCERE IN THEIR

03:42PM  23   RESPONSES AND UNDERSTANDING THEIR RESPONSIBILITIES AND I

03:42PM  24   APPRECIATE THAT.  THAT'S BEEN -- MY SENSE IS THAT -- LET'S BE

03:42PM  25   CLEAR, THEY KNOW THE MEDIA IS INTERESTED IN THIS CASE, AND

462

03:43PM  1    THEY'VE -- WHEN THEY'VE COME IN THE COURTROOM, IT MAY BE -- I

03:43PM  2    DON'T KNOW WHAT THE FRONT DOOR LOOKS LIKE IN THE MORNING, BUT

03:43PM  3    MY SENSE IS THAT THEY'VE QUEUED UP WITH MEDIA AND OTHER

03:43PM  4    INTERESTED PEOPLE.  SO I THINK THEY UNDERSTAND THE IMPORTANCE

03:43PM  5    OF THAT.

03:43PM  6        I DON'T WANT TO DISRUPT.  I DON'T THINK IT'S NECESSARY TO

03:43PM  7    HAIL THEM IN TOMORROW TO BE SWORN IN AND INFORMED.

03:43PM  8        WE WILL INFORM THOSE JURORS WHO ARE SELECTED TODAY TO

03:43PM  9    RETURN WEDNESDAY NEXT, I BELIEVE IT IS THE 8TH, AT LEAST

03:43PM  10   POTENTIALLY AT 9:00 A.M. AT THIS TIME.

03:43PM  11       THAT STARTING TIME MAY ADJUST.  IT DEPENDS, AS I TOLD YOU

03:43PM  12   EARLY ON, THE GEOGRAPHY OF THE RESIDENTS OF OUR JURORS.  I

03:43PM  13   WOULD LIKE TO SEE IF WE COULD START EARLIER TO CAPTURE AS MUCH

03:43PM  14   COURT TIME AS WE CAN.  LET'S SEE WHERE THAT GOES.  BUT LET'S

03:44PM  15   NOT GET AHEAD OF OURSELVES.

03:44PM  16       LET'S TAKE A BREAK.  HOW MUCH TIME WOULD YOU LIKE TO

03:44PM  17   COLLECT YOUR THOUGHTS?

03:44PM  18       I SUPPOSE I WAS TALKING TO MY COURTROOM DEPUTY WHEN I SAID

03:44PM  19   THAT.  LET'S GO TO THE TOP OF THE HOUR, AND WE'LL SEE WHEN WE

03:44PM  20   COME BACK.

03:44PM  21           THE CLERK:  COURT IS IN RECESS.

03:44PM  22       (RECESS FROM 3:44 P.M. UNTIL 4:19 P.M.)

04:19PM  23           THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

04:19PM  24   ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.  OUR

04:19PM  25   PROSPECTIVE PANEL IS NOT PRESENT.

04:19PM  1    I BELIEVE DURING THE BREAK MS. KRATZMANN HAD AN

04:19PM  2   OPPORTUNITY TO SHARE WITH COUNSEL THE ACCUMULATED, I'LL CALL

04:19PM  3   IT, ROSTER OF POTENTIAL JURORS HERE.

04:19PM  4    LET ME ASK BOTH SIDES WHETHER YOU'VE HAD AN OCCASION TO

04:19PM  5   REVIEW THAT ROSTER AND WHETHER YOU AGREE WITH IT?

04:19PM  6         MR. SCHENK:  WE HAVE REVIEWED IT, AND IT IS

04:20PM  7   ACCURATE.

04:20PM  8         MR. DOWNEY:  THE SAME WITH DEFENSE, WE HAVE HAD AN

04:20PM  9   OPPORTUNITY TO GO THROUGH IT AND IT IS ACCURATE.

04:20PM  10         THE COURT:  THANK YOU.  THANK YOU VERY MUCH.

04:20PM  11    AS I INDICATED AT OUR BREAK, THIS THEN DOES COMPRISE THE

04:20PM  12   UNIVERSE OF JURORS THAT I BELIEVE WOULD ALLOW FOR A JURY TO BE

04:20PM  13   SELECTED IN THIS CASE.

04:20PM  14    I NOTE THE HOUR.  IT'S ABOUT 25 PAST 4:00 O'CLOCK.  WHAT I

04:20PM  15   THINK I WILL DO IS I THINK -- I'VE THOUGHT ABOUT THIS, AND MY

04:20PM  16   SENSE IS THAT IT WILL BE BETTER TO BEGIN THIS JURY SELECTION

04:20PM  17   PROCESS TOMORROW MORNING.

04:20PM  18    WHAT I'D LIKE TO DO, FIRST OF ALL, IS I WILL EXCUSE GROUP

04:20PM  19   NUMBER 3, WHICH WAS THE OTHER GROUP THAT WE WERE GOING TO HAVE

04:20PM  20   TOMORROW IN LIGHT OF THE JURY SERVICE.  IN LIGHT OF THE ROSTER,

04:20PM  21   I DON'T BELIEVE THAT THEY'RE NECESSARY, MATHEMATICALLY

04:20PM  22   NECESSARY, SO I WOULD LIKE TO EXCUSE THEM.

04:20PM  23    ANY COMMENT FROM THE GOVERNMENT, MR. SCHENK, ON THAT?

04:21PM  24         MR. SCHENK:  NO, YOUR HONOR.

04:21PM  25         MR. DOWNEY:  WE CONCUR.

464

| | | |
|---|---|---|
| 04:21PM | 1 | THE COURT:  SO, MADAM CLERK, IF YOU COULD CONTACT |
| 04:21PM | 2 | THE JURY COMMISSIONER AND INDICATE GROUP 3 WILL NOT BE NEEDED |
| 04:21PM | 3 | AND THEY'RE EXCUSED FROM FURTHER SERVICE. |
| 04:21PM | 4 | THE CLERK:  YES, YOUR HONOR. |
| 04:21PM | 5 | THE COURT:  I'LL ALSO ASK YOU, MADAM CLERK, TO |
| 04:21PM | 6 | NOTIFY THE JURY COMMISSIONER THAT THE 41 PROSPECTIVE JURORS |
| 04:21PM | 7 | THAT APPEAR IN OUR ROSTER LIST SHOULD BE SUMMONED TOMORROW |
| 04:21PM | 8 | MORNING.  I'D LIKE THEM TO RETURN TOMORROW MORNING AND LET'S |
| 04:21PM | 9 | HAVE THEM COME IN AT 9:30. |
| 04:21PM | 10 | IS THAT POSSIBLE? |
| 04:21PM | 11 | THE CLERK:  COME IN OR BE HERE? |
| 04:21PM | 12 | THE COURT:  COME IN THE COURTHOUSE AND BE IN THE |
| 04:21PM | 13 | JURY ASSEMBLY ROOM BY 9:30. |
| 04:21PM | 14 | I'D LIKE US TO BEGIN THE WORK AT -- IS 9:00 O'CLOCK A GOOD |
| 04:21PM | 15 | TIME TO DO THAT?  SHOULD WE START EARLIER? |
| 04:21PM | 16 | MR. SCHENK:  9:00 O'CLOCK IS FINE.  THANK YOU. |
| 04:21PM | 17 | MR. DOWNEY:  WHATEVER YOUR HONOR PREFERS.  9:00 |
| 04:22PM | 18 | O'CLOCK IS FINE.  EARLIER IS FINE. |
| 04:22PM | 19 | THE COURT:  LET'S START AT 9:00 O'CLOCK TOMORROW |
| 04:22PM | 20 | MORNING THEN, AND THAT WILL BE FOR COUNSEL TO ENGAGE ANY |
| 04:22PM | 21 | PEREMPTORY CHALLENGES THAT YOU MIGHT HAVE AS TO THE FINAL JURY. |
| 04:22PM | 22 | YOU KNOW THAT PROCESS, WE'VE GIVEN YOU A SHEET, AND I |
| 04:22PM | 23 | THINK WE'VE GIVEN YOU THE SHEET, AND YOU'LL PASS THAT BACK AND |
| 04:22PM | 24 | FORTH FROM YOU. |
| 04:22PM | 25 | AGAIN, IT'S REQUIRED -- BECAUSE THE PROSPECTIVE JURORS |

04:22PM 1    WON'T BE SITTING IN THE BOX, IT REQUIRES YOU TO DO THAT

04:22PM 2    VIRTUALLY WITH THE NOTES AND WITH THE ROSTER THAT WE HAVE.

04:22PM 3    I'LL REMIND YOU AGAIN OF THIS TOMORROW.

04:22PM 4         THE FIRST STRIKES, IF ANY, WILL BE FROM THE FIRST 12 ON

04:22PM 5    THE LIST.  THAT 12 WILL CONTINUE, YOU'LL ROTATE UP AND FILL

04:22PM 6    VIRTUALLY, IF YOU WILL, ANY STRIKES THAT ARE COMPRISED IN THAT.

04:22PM 7         WHICH IS TO SAY THAT YOUR STRIKE, YOUR FIRST STRIKES CAN'T

04:22PM 8    BE JUROR NUMBER 26, JUROR NUMBER 32.  YOU'D HAVE TO STAY IN

04:23PM 9    THAT CONFINE OF 12 AND KEEP THAT ROTATING.

04:23PM 10        ONCE WE DO HAVE AGREEMENT ON THE 12 JURORS, WE WILL THEN

04:23PM 11   MOVE TO THE SELECTION OF ALTERNATE JURORS, AND THAT -- THOSE

04:23PM 12   SELECTIONS WILL COME FROM THE BALANCE OF JURORS WHO ARE

04:23PM 13   REMAINING.  AND THE NEXT FIVE FOLLOWING THAT WILL BE THE

04:23PM 14   DEFAULT, IF YOU WILL, ALTERNATE JURORS, AND THAT WILL COMPRISE

04:23PM 15   THE UNIVERSE OF WHERE YOU'LL BEGIN YOUR SELECTIONS IF THAT

04:23PM 16   MAKES SENSE TO YOU.

04:23PM 17        I HOPE IT DOES.  OKAY.  ANYTHING FURTHER BEFORE WE RETIRE

04:23PM 18   FOR THE EVENING?

04:23PM 19             MR. SCHENK:  NO.

04:23PM 20             MR. DOWNEY:  NO, YOUR HONOR.

04:23PM 21             THE COURT:  ALL RIGHT.  THANK YOU FOR YOUR PATIENCE

04:23PM 22   TODAY.  WE'LL SEE YOU TOMORROW MORNING.

04:23PM 23             THE CLERK:  COURT IS ADJOURNED FOR THE DAY.

04:23PM 24        (COURT CONCLUDED AT 4:23 P.M.)

        25

1

2

3              CERTIFICATE OF REPORTERS

4

5

6

7         WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16        _____
          IRENE RODRIGUEZ, CSR, CRR
17        CERTIFICATE NUMBER 8076

18        _____

19        LEE-ANNE SHORTRIDGE, CSR, CRR
          CERTIFICATE NUMBER 9595
20

21        DATED:  SEPTEMBER 1, 2021

22

23

24

25

1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

     UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                     )
                       PLAINTIFF,     )   SAN JOSE, CALIFORNIA
7                                     )
           VS.                        )   VOLUME 3
8                                     )
     ELIZABETH A. HOLMES,             )   SEPTEMBER 2, 2021
9                                     )
                       DEFENDANT.     )   PAGES 466 - 491
10    _____ )

11                  TRANSCRIPT OF TRIAL PROCEEDINGS

12             BEFORE THE HONORABLE EDWARD J. DAVILA
                   UNITED STATES DISTRICT JUDGE
13
     A P P E A R A N C E S:
14

15   FOR THE PLAINTIFF:      UNITED STATES ATTORNEY'S OFFICE
                             BY:  JOHN C. BOSTIC
16                                JEFFREY B. SCHENK
                             150 ALMADEN BOULEVARD, SUITE 900
17                           SAN JOSE, CALIFORNIA 95113

18                           BY:  ROBERT S. LEACH
                                  KELLY VOLKAR
19                           1301 CLAY STREET, SUITE 340S
                             OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

     OFFICIAL COURT REPORTER:
22                             IRENE L. RODRIGUEZ, CSR, RMR, CRR
                               CERTIFICATE NUMBER 8074
23

24        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
25

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3    FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
 4                                  LANCE A. WADE
                                    KATHERINE TREFZ
 5                             725 TWELFTH STREET, N.W.
                               WASHINGTON, D.C. 20005
 6
                               LAW OFFICE OF JOHN D. CLINE
 7                             BY:  JOHN D. CLINE
                               ONE EMBARCADERO CENTER, SUITE 500
 8                             SAN FRANCISCO, CALIFORNIA 94111

 9

10    ALSO PRESENT:            FEDERAL BUREAU OF INVESTIGATION
                               BY:  ADELAIDA HERNANDEZ
11
                               OFFICE OF THE U.S. ATTORNEY
12                             BY:  LAKISHA HOLLIMAN, PARALEGAL
                                    MADDI WACHS, PARALEGAL
13

14

15

16

17

18

19

20

21

22

23

24

25
```

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | SAN JOSE, CALIFORNIA                    SEPTEMBER 2, 2021    |
|       | 2  | P R O C E E D I N G S                                        |
| 09:01AM | 3  | (COURT CONVENED AT 9:01 A.M.)                              |
| 09:01AM | 4  | (JURY OUT AT 9:01 A.M.)                                    |
| 09:01AM | 5  | THE COURT:  LET'S GO ON THE RECORD IN OUR MATTER.  I       |
| 09:01AM | 6  | SEE ALL COUNSEL PRESENT.                                   |
| 09:01AM | 7  | LET'S CAPTURE THE APPEARANCES, PLEASE.                     |
| 09:01AM | 8  | MR. SCHENK:  GOOD MORNING, YOUR HONOR.                     |
| 09:02AM | 9  | JEFF SCHENK ON BEHALF UNITED STATES.  WITH ME AT COUNSEL   |
| 09:02AM | 10 | TABLE ARE KELLY VOLKAR, JOHN BOSTIC, ROBERT LEACH, AND SPECIAL |
| 09:02AM | 11 | AGENT ADDY HERNANDEZ FROM THE FBI.                         |
| 09:02AM | 12 | THE COURT:  THANK YOU.  GOOD MORNING.                      |
| 09:02AM | 13 | AND FOR THE DEFENSE?                                       |
| 09:02AM | 14 | MR. DOWNEY:  GOOD MORNING, YOUR HONOR.                     |
| 09:02AM | 15 | KEVIN DOWNEY FOR MS. HOLMES.  WITH ME ARE MY COLLEAGUES    |
| 09:02AM | 16 | LANCE WADE AND KATHERINE TREFZ.  OUR COCOUNSEL, JOHN CLINE, IS |
| 09:02AM | 17 | WITH US HERE AS WELL.  AND MS. HOLMES IS PRESENT HERE IN COURT. |
| 09:02AM | 18 | THE COURT:  THANK YOU VERY MUCH.                           |
| 09:02AM | 19 | (DISCUSSION WITH THE COURT AND CLERK OFF THE RECORD.)      |
| 09:02AM | 20 | THE COURT:  THANK YOU, COUNSEL, FOR COMING IN THIS         |
| 09:02AM | 21 | MORNING.                                                   |
| 09:02AM | 22 | WHAT I THOUGHT WE WOULD DO IS HAVE A CONVERSATION BEFORE   |
| 09:02AM | 23 | THE JURY -- OUR JURY HAS BEEN SUMMONED FOR 9:30.  WE'LL BRING |
| 09:03AM | 24 | THEM IN, AND THEN WE CAN BEGIN YOUR JURY SELECTION EXERCISE OF |
| 09:03AM | 25 | ANY PREEMPTS SHOULD YOU HAVE ANY.                          |

09:03AM  1      THERE ARE A COUPLE OF THINGS I WANTED TO TALK ABOUT.

09:03AM  2      THERE IS SOMETHING THAT WAS JUST LEARNED RECENTLY -- A

09:03AM  3  COUPLE OF THINGS THAT WERE LEARNED RECENTLY.

09:03AM  4      BUT, MR. SCHENK, WHAT ARE THE THINGS YOU WOULD LIKE TO

09:03AM  5  BRING TO THE COURT'S ATTENTION?

09:03AM  6          MR. SCHENK:  YES.  THANK YOU, YOUR HONOR.

09:03AM  7      THERE ARE TWO JURORS THAT HAVE COME TO THE GOVERNMENT'S

09:03AM  8  ATTENTION THAT MAY NOT BE GREAT JURORS FOR THIS TRIAL.  I

09:03AM  9  RAISED IT WITH THE DEFENSE, AND I THINK WE AGREE THAT BOTH

09:03AM 10  SHOULD BE EXCUSED.  AND I CAN GO THROUGH EACH ONE FOR

09:03AM 11  YOUR HONOR INDIVIDUALLY IF THAT'S THE WAY THAT YOUR HONOR WOULD

09:03AM 12  LIKE TO PROCEED.

09:03AM 13          THE COURT:  WHY DON'T WE DO THAT, PLEASE.

09:03AM 14          MR. SCHENK:  JUROR 113 PROVIDED AN ANSWER ON HIS

09:03AM 15  QUESTIONNAIRE TO I THINK IT WAS QUESTION NUMBER 50.  THAT

09:03AM 16  ANSWER SUGGESTED THAT HE OR SOMEONE HE KNEW MAY HAVE BEEN

09:03AM 17  ARRESTED.

09:03AM 18      THE COURT ASKED A COUPLE OF QUESTIONS DURING ITS COURT

09:04AM 19  CONDUCTED VOIR DIRE YESTERDAY.  ONE QUESTION ON PAGE 396 OF THE

09:04AM 20  TRANSCRIPT AND ANOTHER ON PAGE 2 -- I'M SORRY, 424 OF THE

09:04AM 21  TRANSCRIPT THAT I THINK WOULD HAVE ELICITED FURTHER INFORMATION

09:04AM 22  REGARDING THIS PRIOR.

09:04AM 23      THE JUROR REMAINED SILENT DURING THAT QUESTIONING, AND

09:04AM 24  THAT CAUSES SOME CONCERN OBVIOUSLY ON THE GOVERNMENT'S PART,

09:04AM 25  AND I DON'T WANT TO SPEAK FOR THE DEFENSE BUT I THINK ON THE

09:04AM 1    DEFENSE'S PART AS WELL.

09:04AM 2         WHILE THE COURT CERTAINLY COULD BRING THE JUROR UP AND ASK

09:04AM 3    FURTHER QUESTIONS, I THINK WE HAVE SUFFICIENT INFORMATION THAT

09:04AM 4    BOTH SIDES FEEL COMFORTABLE EXCUSING THE JUROR AT THIS POINT,

09:04AM 5    BUT OBVIOUSLY WE WOULD DEFER TO THE COURT ON HOW THE COURT

09:04AM 6    WOULD LIKE TO HANDLE THAT ONE.

09:04AM 7         THE COURT:  THANK YOU.

09:04AM 8         MR. DOWNEY:  YOUR HONOR, WE BELIEVE THE JUROR CAN BE

09:04AM 9    DISMISSED AT THIS POINT.  IT MAY BE THAT THE JUROR IS ACTUALLY

09:04AM 10   INELIGIBLE TO SERVE, BUT I DON'T THINK WE NEED TO GO THAT FAR.

09:04AM 11        I THINK THERE WERE ACTUALLY A SERIES OF QUESTIONS THAT

09:04AM 12   SHOULD HAVE ELICITED INFORMATION THAT WOULD HAVE BEEN

09:05AM 13   RESPONSIVE THAT WOULD HAVE BEEN RELEVANT, AND THOSE QUESTIONS

09:05AM 14   WEREN'T ANSWERED, AND THE INFORMATION WAS NOT BROUGHT FORWARD.

09:05AM 15   SO IT WOULD BE OUR VIEW THAT THE JUROR CAN BE DISMISSED NOW.

09:05AM 16        THE COURT:  ALL RIGHT.  THANK YOU.  THANK YOU FOR

09:05AM 17   THIS.

09:05AM 18        THIS WAS BROUGHT TO MY ATTENTION YESTERDAY AFTER WE HAD

09:05AM 19   LEFT.  MS. KRATZMANN SHARED WITH ME SOME INFORMATION RECEIVED.

09:05AM 20   I HAD BEEN THINKING ABOUT WHETHER OR NOT WE SHOULD SUMMON THIS

09:05AM 21   JURY UP AND I SHOULD HAVE A CONVERSATION WITH HIM.

09:05AM 22        IT APPEARS THAT AT LEAST FROM THE INFORMATION THAT I HAVE,

09:05AM 23   WHEN THE QUESTION WAS POSED, AS YOU ALL KNOW, WE ASKED THE

09:05AM 24   QUESTIONS, AND I'D WAIT FOR THE RAISE OF HANDS IN RESPONSE TO

09:05AM 25   THOSE QUESTIONS.  AND IN REGARDS TO QUESTION 50, HE DIDN'T

09:05AM 1    RAISE HIS HAND.

09:05AM 2        AND THEN WE SUBSEQUENTLY LEARNED THAT THERE WAS

09:05AM 3    INFORMATION TO THAT ANSWER THAT HE SHOULD HAVE RAISED HIS HAND

09:05AM 4    AND THEN DISCUSSED IT.

09:05AM 5        THE COURT ALSO SAID, AS IT DID AT THE OUTSET AS TO ANY

09:06AM 6    QUESTION THAT THE COURT POSES OR THE LAWYERS POSE THAT WE CAN

09:06AM 7    SPEAK PRIVATELY ABOUT THAT, AND I THINK I WAS EMPHATIC ABOUT

09:06AM 8    THAT TO ALLOW PROSPECTIVE JURORS THE OPPORTUNITY TO HAVE A

09:06AM 9    PRIVATE CONVERSATION SHOULD THEY WISH FOR WHATEVER REASON.

09:06AM 10       AND THIS, THIS PARTICULAR JUROR WHO WAS SEATED CLOSE TO

09:06AM 11   THE BENCH, NOT IN THE AUDIENCE, FAILED TO RAISE HIS HAND IN

09:06AM 12   RESPONSE TO THAT QUESTION.

09:06AM 13       THAT WAS VERY DISAPPOINTING TO ME.  I LEARNED NOW.  I

09:06AM 14   DON'T KNOW IF THAT WAS AN ACTUAL EVASION.  WAS IT THE FACT THAT

09:06AM 15   THIS JUROR DID NOT HEAR THE COURT?

09:06AM 16       I'VE REVIEWED THE TRANSCRIPT LAST NIGHT TO SEE WHETHER OR

09:06AM 17   NOT I HAD ACTUALLY ASKED THAT QUESTION, AND I WAS CONFIRMED

09:06AM 18   THAT I DID ASK THE QUESTION, AND IT'S THE QUESTION THAT I

09:06AM 19   TYPICALLY ASK OF EVERY TRIAL.

09:06AM 20       SO I'M DISAPPOINTED.  THAT'S AN UNDERSTATEMENT.  I DON'T

09:07AM 21   KNOW IF THIS PARTICULAR JUROR WAS BEING EVASIVE OR LACKED THE

09:07AM 22   VERACITY INTENTIONALLY WITH THE COURT.

09:07AM 23       NOW, I COULD CALL THIS JUROR UP AND WE COULD HAVE A

09:07AM 24   CONVERSATION WITH THE JUROR ABOUT THE RESPONSE.  THE

09:07AM 25   INFORMATION I RECEIVED IS, AS YOU POINT OUT, OR I THINK

09:07AM 1    MR. DOWNEY POINTS OUT, MAYBE HE WOULD BE INITIALLY INELIGIBLE

09:07AM 2    FOR JURY SERVICE BASED ON THE INFORMATION THAT WE HAVE.  WE

09:07AM 3    COULD RECEIVE CLARIFICATION OF THAT.

09:07AM 4        I'M NOT SURE THAT WOULD HELP US.  I DON'T THINK IT SERVES

09:07AM 5    ANY PURPOSE.  I DON'T PERSONALLY RELISH THE FACT OF DRESSING

09:07AM 6    SOMEBODY DOWN FOR BEING LESS THAN CANDID WITH THE COURT.  I

09:07AM 7    DON'T THINK IN LIGHT OF WHERE WE ARE NOW, I DON'T THINK IT

09:07AM 8    SERVES ANY PURPOSE TO DO THAT.

09:07AM 9        I HAVE GREAT DISAPPOINTMENT.  IN FACT, IF HE WOULD COME UP

09:07AM 10   I WAS THINKING THIS MORNING WOULD I HAVE TO THEN HAVE TO TALK

09:08AM 11   TO HIM ABOUT HIS FIFTH AMENDMENT RIGHT?  HE WAS UNDER OATH, AND

09:08AM 12   HE DIDN'T RESPOND.  THE QUESTION IS A FAILURE TO RESPOND IN

09:08AM 13   AFFIRMATIVE DISAVOWMENT.

09:08AM 14       SO RATHER THAN GET INTO ALL OF THIS, I APPRECIATE YOUR

09:08AM 15   MEET AND CONFER ABOUT THIS, AND I AGREE THE APPROPRIATE THING

09:08AM 16   TO DO, JUST BASED ON THE CONDUCT HERE, THIS JUROR IS NOT FIT

09:08AM 17   FOR SERVICE, AND I'M GOING TO STRIKE HIM, JUROR NUMBER 113 IS

09:08AM 18   STRICKEN, AND HE CAN BE, HE CAN BE DISMISSED.

09:08AM 19           THE CLERK:  YES, YOUR HONOR.

09:08AM 20           MR. SCHENK:  THANK YOU, YOUR HONOR.

09:08AM 21       WE ALSO HAVE INFORMATION ABOUT JUROR NUMBER 130.  THE

09:08AM 22   SPOUSE OF SOMEONE ON THE PROSECUTION TEAM WORKS FOR THE COUNTY

09:08AM 23   COUNSEL'S OFFICE.

09:08AM 24       WE DISCOVERED LAST NIGHT THAT THIS SPOUSE HAS WORKED WITH

09:08AM 25   JUROR NUMBER 130 IN THE PAST.  THE SPOUSE HAS A DIFFERENT LAST

09:08AM  1    NAME, SO WE HAVE NO REASON TO THINK THAT WHEN MR. MURPHY

09:08AM  2    ANSWERED THE COURT'S QUESTION ABOUT WHETHER MR. MURPHY KNEW

09:08AM  3    ANYBODY ON EITHER SIDE THAT HE WAS EVASIVE.  AGAIN, A DIFFERENT

09:09AM  4    LAST NAME, SO I DON'T THINK HE WOULD HAVE HAD A REASON TO MAKE

09:09AM  5    A CONNECTION.

09:09AM  6         BUT WE RAISED THAT KNOWLEDGE, THAT RELATIONSHIP WITH THE

09:09AM  7    DEFENSE THIS MORNING AND WE AGREE, I THINK BOTH SIDES AGREE

09:09AM  8    THAT BECAUSE OF THE EXISTENCE OF THAT RELATIONSHIP WE ALSO

09:09AM  9    COULD EXCUSE JUROR 130.

09:09AM  10             MR. DOWNEY:  LET ME SAY FIRST, I TAKE MR. BOSTIC AT

09:09AM  11   HIS WORD.  I THINK HE LEARNED THIS LAST NIGHT.  WE WOULD BE

09:09AM  12   UNCOMFORTABLE WITH THE SITUATION BECAUSE, AGAIN, DISCOVERY

09:09AM  13   DURING THE COURSE OF THE TRIAL COULD PRESENT COMPLICATIONS.  SO

09:09AM  14   WE MOVE FOR DISMISSAL OF THE JUROR FOR CAUSE ON THE BASIS THAT

09:09AM  15   I BELIEVE BOTH TEAMS HAVE JUST DISCOVERED.

09:09AM  16             THE COURT:  ALL RIGHT.  ANY OBJECTION TO THAT?

09:09AM  17             MR. SCHENK:  NO OBJECTION.  THANK YOU.

09:09AM  18             THE COURT:  ALL RIGHT.  AND I'M SORRY, THE JUROR WAS

09:09AM  19   MR. MALO --

09:09AM  20             MR. SCHENK:  MURPHY.

09:09AM  21             THE COURT:  MURPHY, PARDON ME.  THANK YOU.

09:09AM  22        THEN WE WILL STRIKE MR. MURPHY.  I DON'T HAVE HIS JURY

09:09AM  23   NUMBER.

09:09AM  24             MR. SCHENK:  IT'S 130.

09:10AM  25             THE COURT:  THANK YOU.  HE'LL BE STRICKEN FOR CAUSE.

| 09:10AM | 1 | WITH THOSE TWO STRIKES, I THINK WE ARE AT THE MINIMUM |
|---|---|---|

09:10AM 1      WITH THOSE TWO STRIKES, I THINK WE ARE AT THE MINIMUM

09:10AM 2  NEEDED.  ASSUMING EVERYONE EXERCISES EVERY PEREMPTORY CHALLENGE

09:10AM 3  THEY HAVE, WE DO HAVE A COMPLEMENT SUFFICIENT TO SELECT 12

09:10AM 4  MEMBERS OF A JURY AND 5 ALTERNATES.

09:10AM 5      SO WE WILL -- WITH THOSE TWO STRIKES, WE HAVE ASKED OUR

09:10AM 6  JURY TO COME AT 9:30, I THINK, TO COLLECT THEMSELVES.  WE'LL

09:10AM 7  EXCUSE THOSE TWO JURORS WHO WE JUST HAVE HAD CONVERSATIONS

09:10AM 8  ABOUT.

09:10AM 9      BUT I -- IS THERE ANYTHING ELSE BEFORE I ASK WHETHER

09:10AM 10  YOU'RE READY TO BEGIN YOUR SELECTION?

09:10AM 11          MR. SCHENK:  NOTHING FROM THE GOVERNMENT.  THANK

09:10AM 12  YOU.

09:10AM 13          MR. DOWNEY:  NOTHING FROM MS. HOLMES.

09:10AM 14          THE COURT:  SHOULD WE ENGAGE THE SELECTION THEN NOW?

09:10AM 15  YOU HAVE THE SHEET.

09:10AM 16          THE CLERK:  I NEED TO UPDATE THE SHEET, YOUR HONOR,

09:10AM 17  WITH THE CHANGES.  IF I COULD HAVE A FEW MINUTES.

09:10AM 18          THE COURT:  SURE.  SHOULD WE TAKE A RECESS WHILE

09:10AM 19  WE --

09:10AM 20          THE CLERK:  YES.  IT SHOULD BE ABOUT FIVE MINUTES.

09:10AM 21          THE COURT:  WHY DON'T WE DO THAT.  WE'LL COME BACK

09:11AM 22  OUT IN FIVE MINUTES, AND WE'LL START THE SELECTION PROCESS.

09:11AM 23          MR. DOWNEY:  THANK YOU.

09:11AM 24          MR. LEACH:  THANK YOU.

09:11AM 25      (RECESS FROM 9:11 A.M. UNTIL 9:22 A.M.)

09:22AM   1          THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

09:22AM   2     ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN, AND

09:22AM   3     WE'RE OUTSIDE OF THE PRESENCE OF THE PROSPECTIVE JUROR PANEL.

09:22AM   4     THEY'RE DOWNSTAIRS.

09:23AM   5          I THINK MS. KRATZMANN HAS PROVIDED YOU WITH THE UPDATED

09:23AM   6     SELECTION LIST?

09:23AM   7          MR. SCHENK:  YES, SHE HAS.  THANK YOU.

09:23AM   8          THE COURT:  ALL RIGHT.  THANK YOU.

09:23AM   9          JUST A COUPLE OF THINGS.  YOU WILL EXCHANGE THE LIST AS

09:23AM   10    YOU ENGAGE ANY STRIKES THAT YOU HAVE.  A PASS IS NOT A STRIKE.

09:23AM   11    TWO PASSES IN SUCCESSION MEANS WE HAVE A JURY, AND WHEN YOU

09:23AM   12    HAVE COMPLETED YOUR PROCESS OR THERE ARE TWO PASSES IN

09:23AM   13    SUCCESSION, YOU SHOULD LET MS. KRATZMANN KNOW, AND SHE'LL TAKE

09:23AM   14    THE FORM FROM YOU.

09:23AM   15         IF YOU HAVE ANY QUESTIONS ABOUT THAT, PLEASE LET

09:23AM   16    MS. KRATZMANN KNOW.

09:23AM   17         ANYTHING FURTHER BEFORE WE BEGIN THE PROCESS?

09:23AM   18         MR. SCHENK:  NO, YOUR HONOR.

09:23AM   19         MR. DOWNEY:  NO, YOUR HONOR.

09:23AM   20         THE COURT:  YOU CAN START YOUR SELECTION.  THANK

09:23AM   21    YOU.

09:23AM   22         THE CLERK:  YOUR MICROPHONES ARE OFF, COUNSEL.

09:23AM   23    MICROPHONES ARE OFF.

09:23AM   24         MR. WADE:  THANK YOU.

09:23AM   25         MR. SCHENK:  THANK YOU.

| | | |
|---|---|---|
| 09:24AM | 1 | (COUNSEL ARE MAKING THEIR SELECTIONS.) |
| 09:34AM | 2 | THE COURT:  COUNSEL, MS. KRATZMANN HAS INFORMED ME |
| 09:34AM | 3 | AND PROVIDED ME WITH THE JURY SELECTION LIST THAT THE PARTIES |
| 09:34AM | 4 | HAVE REACHED AGREEMENT AS TO THE 12 JURORS WHO WILL SIT IN THIS |
| 09:34AM | 5 | CASE. |
| 09:34AM | 6 | IS THAT CORRECT, MR. SCHENK? |
| 09:34AM | 7 | MR. SCHENK:  NO, YOUR HONOR. |
| 09:34AM | 8 | THE COURT:  MR. DOWNEY? |
| 09:34AM | 9 | MR. DOWNEY:  YES. |
| 09:35AM | 10 | THE COURT:  ALL RIGHT.  I WILL RETURN THIS SHEET TO |
| 09:35AM | 11 | YOU NOW, AND MS. KRATZMANN WILL DELIVER IT TO YOU AND YOU WILL |
| 09:35AM | 12 | BEGIN SELECTING THE FIVE ALTERNATES WHO WILL ENGAGE THIS |
| 09:35AM | 13 | PROCESS. |
| 09:35AM | 14 | MR. SCHENK:  YES. |
| 09:35AM | 15 | THE COURT:  AND THEN MY PLAN IS THAT WE WILL SUMMON |
| 09:35AM | 16 | THOSE 17 TO THE COURTROOM.  WE WILL THEN SWEAR THE 12, AND THEN |
| 09:35AM | 17 | WE'LL SWEAR THE 5 ALTERNATES, AND WE'LL PROCEED.  I'M NOT GOING |
| 09:35AM | 18 | TO PRELIMINARILY INSTRUCT TODAY.  I DO, OF COURSE, HAVE AN |
| 09:35AM | 19 | ADMONITION THAT I WISH TO READ TO ALL OF THE JURORS AT THAT |
| 09:35AM | 20 | TIME. |
| 09:35AM | 21 | ALL RIGHT.  THANK YOU.  I'LL HAND THIS BACK, AND YOU CAN |
| 09:35AM | 22 | BEGIN YOUR SELECTION PROCESS FOR ALTERNATES. |
| 09:35AM | 23 | (HANDING.) |
| 09:35AM | 24 | (COUNSEL ARE MAKING THEIR SELECTIONS.) |
| 09:46AM | 25 | THE CLERK:  COUNSEL? |

09:46AM   1           MR. DOWNEY:  I THINK THEY NEED ANOTHER MINUTE.

09:46AM   2           THE COURT:  OKAY.

09:46AM   3        (COUNSEL ARE MAKING THEIR SELECTIONS.)

09:51AM   4           THE COURT:  COUNSEL, IT APPEARS THAT YOU HAVE

09:51AM   5    REACHED AGREEMENT ON THE ALTERNATES AS WELL?

09:52AM   6           MR. SCHENK:  YES, YOUR HONOR.

09:52AM   7           MR. DOWNEY:  YES, YOUR HONOR.

09:52AM   8           THE COURT:  ALL RIGHT.  THANK YOU.

09:52AM   9        WHAT I'D LIKE TO DO NEXT IS I'M GOING TO SUMMON THE ENTIRE

09:52AM   10   PANEL UP, AND THOSE FOLKS WHO ARE SEATED ON THE LEFT SIDE OF

09:52AM   11   THE COURTROOM, I'M GOING TO ASK YOU TO PLEASE MOVE OVER SO THE

09:52AM   12   JURY CAN TAKE THOSE SEATS.

09:52AM   13      I'M CALLING THE ENTIRE PANEL UP.  WHEN THEY COME UP, I'LL

09:52AM   14   ASK MS. KRATZMANN TO CALL OUT THE NUMBERS OF THOSE JURORS WHO

09:52AM   15   HAVE BEEN SELECTED TO SIT AS JURORS IN THE TRIAL.  WE WILL THEN

09:52AM   16   SWEAR THOSE JURORS.

09:52AM   17      I'LL THEN ASK MS. KRATZMANN TO CALL OUT THE NUMBERS OF

09:52AM   18   JURORS WHO HAVE BEEN CALLED TO SIT AS ALTERNATES.  THEY WILL

09:52AM   19   TAKE THAT FIRST ROW IN THE GALLERY FOR NOW, AND WE'LL SWEAR THE

09:52AM   20   ALTERNATES.

09:52AM   21      I THEN WANT TO THANK THE BALANCE OF THE JURORS WHO CAME

09:52AM   22   UP.  THAT'S WHY I'M CALLING THE PANEL UP.  I DO WANT TO THANK

09:52AM   23   THEM.  I DON'T WANT THEM TO LEAVE WITHOUT THE OPPORTUNITY TO

09:52AM   24   EXTEND THE COURT'S GRATITUDE AS WELL AS COUNSEL'S GRATITUDE TO

09:53AM   25   THEM AS WELL.

09:53AM   1        SO WE WILL DO THAT.  I WILL DISMISS THOSE JURORS WHO WERE

09:53AM   2    NOT SELECTED, AND THEN I'LL HAVE SOME BRIEF COMMENTS TO THE

09:53AM   3    JURY ABOUT OUR PROCESS.

09:53AM   4        I WILL READ THEM AN ADMONITION.

09:53AM   5        AND THEN MS. KRATZMANN IS GOING TO MEET WITH THEM TO GO

09:53AM   6    OVER CERTAIN PROTOCOLS THAT WE WILL HAVE.  SHE MIGHT HAVE THEIR

09:53AM   7    JUROR BADGES AND THOSE TYPES OF THINGS.

09:53AM   8        THEN WE'LL BREAK, AND WE'LL RECONVENE AFTER THE HOLIDAYS.

09:53AM   9    I BELIEVE IT'S NEXT WEDNESDAY WHEN WE'RE SCHEDULED TO MEET AT

09:53AM  10    9:00 A.M.  I THINK THAT'S RIGHT.

09:53AM  11        ANY DISTURBANCE IN THAT SCHEDULE FOR NOW?

09:53AM  12             MR. SCHENK:  NO, YOUR HONOR.

09:53AM  13             THE COURT:  ALL RIGHT.  THANK YOU.

09:53AM  14             THE CLERK:  I NEED A FEW MINUTES.

09:53AM  15             THE COURT:  YOU NEED A MINUTE?

09:53AM  16             THE CLERK:  MORE THAN A FEW MINUTES.

09:53AM  17        (LAUGHTER.)

09:53AM  18             THE CLERK:  IF I CAN?

09:53AM  19             THE COURT:  OF COURSE.  OF COURSE.

09:54AM  20        (PAUSE IN PROCEEDINGS.)

09:54AM  21             THE COURT:  COUNSEL, JUST TO REFRESH YOUR

09:54AM  22    RECOLLECTION, WE'LL SEAT A IN THE BOX AND N, AND THEN THE FIRST

09:54AM  23    ROW BEHIND YOU, BEHIND THE PROSECUTION THERE WILL BE USED FOR

09:54AM  24    FIVE SEATS.  IT MAY BE THE ALTERNATES WILL SIT THERE INITIALLY.

09:54AM  25        WE'RE GOING TO KEEP THE ROW BEHIND THE ALTERNATES OR

| | | |
|---|---|---|
| 09:54AM | 1 | BEHIND THAT JURY CLEAR FOR THE TRIAL SO NO ONE IS SITTING |
| 09:54AM | 2 | IMMEDIATELY BEHIND THEM.  THAT ROW WILL BE KEPT BLANK OPEN. |
| 09:54AM | 3 | WHAT I INTEND TO DO DURING THE TRIAL IS ROTATE OUR JURORS |
| 09:55AM | 4 | AS WELL SO THOSE SITTING IN THOSE SEATS AND OUTSIDE OF THE BOX |
| 09:55AM | 5 | AS WELL GENERALLY WILL HAVE AN OPPORTUNITY TO MOVE INTO THE |
| 09:55AM | 6 | WELL AND EXPERIENCE THE TRIAL THAT WAY.  THAT'S MY INTENT.  I |
| 09:55AM | 7 | HOPE THAT CAN WORK OUT.  I THINK WE CAN WORK THE LOGISTICS OF |
| 09:55AM | 8 | THAT OUT. |
| 09:55AM | 9 | ANY QUESTIONS ABOUT THAT? |
| 09:55AM | 10 | MR. SCHENK:  NO. |
| 09:55AM | 11 | MR. DOWNEY:  NO, YOUR HONOR. |
| 09:59AM | 12 | (PAUSE IN PROCEEDINGS.) |
| 10:01AM | 13 | THE CLERK:  YOUR HONOR, IF I MAY CALL UP THE JURY? |
| 10:01AM | 14 | THE COURT:  YES. |
| 10:03AM | 15 | (PAUSE IN PROCEEDINGS.) |
| 10:03AM | 16 | THE COURT:  GOOD MORNING.  PLEASE COME IN AND HAVE A |
| 10:03AM | 17 | SEAT IN THE GALLERY.  YES, THANK YOU, SIR. |
| 10:06AM | 18 | (SELECTED JURORS AND ALTERNATES BEING SEATED.) |
| 10:07AM | 19 | (JURY IN AT 10:07 A.M.) |
| 10:07AM | 20 | THE COURT:  ALL RIGHT.  THANK YOU, LADIES AND |
| 10:07AM | 21 | GENTLEMEN.  WE'RE ON THE RECORD. |
| 10:07AM | 22 | ALL COUNSEL ARE PRESENT, AND MS. HOLMES IS PRESENT.  OUR |
| 10:07AM | 23 | PROSPECTIVE PANEL HAS BEEN CALLED UP. |
| 10:07AM | 24 | LADIES AND GENTLEMEN, PROSPECTIVE JURORS, I WANTED TO SEAT |
| 10:07AM | 25 | YOU ALL IN THAT AREA. |

10:07AM  1      WE'RE GOING TO NOW -- I'M GOING TO ASK MS. KRATZMANN TO

10:08AM  2   CALL OUT THE JUROR NUMBERS AND NAMES OF THOSE, FIRST OF ALL,

10:08AM  3   WHO HAVE BEEN SELECTED TO SIT AS JURORS IN THIS CASE.

10:08AM  4      PLEASE LISTEN CLOSELY FOR YOUR NAME AND NUMBER TO BE

10:08AM  5   CALLED.  MS. KRATZMANN WILL CALL IT OUT.  WOULD YOU PLEASE,

10:08AM  6   WHEN YOUR NAME IS CALLED, WOULD YOU PLEASE COME FORWARD.

10:08AM  7      AND WE'RE GOING TO BE SITTING IN SEAT A; IS THAT CORRECT,

10:08AM  8   MS. KRATZMANN?

10:08AM  9           THE CLERK:  YES, YOUR HONOR.

10:08AM 10           THE COURT:  RIGHT.  AND THEN WE'RE GOING ACCORDINGLY

10:08AM 11   DOWN.

10:08AM 12      LADIES AND GENTLEMEN, THE LAWYERS HAVE MET, AND THEY HAVE

10:08AM 13   MADE THEIR DECISIONS AS TO THE JURY IN THIS CASE.  WE WILL

10:08AM 14   FIRST CALL OUT THOSE MEMBERS WHO HAVE BEEN SELECTED TO HEAR THE

10:08AM 15   CASE AS 12 JURORS.

10:08AM 16      I WILL THEN ASK MS. KRATZMANN TO ADMINISTER THE OATH TO

10:08AM 17   THOSE 12 JURORS.

10:08AM 18      I'LL THEN ASK MS. KRATZMANN TO CALL OUT THE NAMES OF THOSE

10:08AM 19   FIVE INDIVIDUALS WHO HAVE BEEN SELECTED TO SIT AS ALTERNATES IN

10:08AM 20   THIS TRIAL.  WE'LL HAVE THE ALTERNATES PROBABLY TAKE THE FRONT

10:09AM 21   ROW, IF POSSIBLE, AND THEN MS. KRATZMANN WILL SWEAR IN THE

10:09AM 22   ALTERNATES.

10:09AM 23      I'LL THEN HAVE SOME FURTHER COMMENTS AND GIVE YOU ADVICE

10:09AM 24   AS TO WHAT WE'RE GOING TO DO NEXT, THAT IS, THE SEATED JURORS.

10:09AM 25      MS. KRATZMANN, IF YOU COULD PLEASE CALL OUT THE NAMES OF

| | | |
|---|---|---|
| 10:09AM | 1 | THOSE 12 INDIVIDUALS WHO HAVE BEEN SELECTED TO SIT AS JURORS IN |
| 10:09AM | 2 | THIS CASE. |
| 10:09AM | 3 | THE CLERK:  YES, YOUR HONOR. |
| 10:09AM | 4 | MR. HANG, H-A-N-G.  IF YOU'LL TAKE SEAT A, PLEASE. |
| 10:09AM | 5 | MR. ESPINOSA, SEAT B. |
| 10:10AM | 6 | MR. BETTS.  IF YOU'LL TAKE SEAT C, PLEASE. |
| 10:10AM | 7 | MS. NGUYEN.  THAT'S MINH, M-I-N-H, MS. MINH NGUYEN. |
| 10:10AM | 8 | JUROR:  WHICH ONE? |
| 10:10AM | 9 | THE CLERK:  YOU, M-I-N-H.  IF YOU'LL TAKE SEAT D, |
| 10:10AM | 10 | PLEASE. |
| 10:10AM | 11 | MS. HERNANDEZ.  SEAT E IN THE FIRST ROW. |
| 10:11AM | 12 | MR. KAATZ, K-A-A-T-Z. |
| 10:11AM | 13 | JUROR:  KAATZ? |
| 10:11AM | 14 | THE CLERK:  KAATZ. |
| 10:11AM | 15 | JUROR:  OH, BOY. |
| 10:11AM | 16 | THE CLERK:  IF YOU'LL TAKE SEAT F, PLEASE. |
| 10:11AM | 17 | MS. HERNANDEZ-PEREZ.  IF YOU'LL TAKE THE NEXT SEAT IN |
| 10:11AM | 18 | ORDER, THAT'S G. |
| 10:11AM | 19 | MS. STEFANEK. |
| 10:12AM | 20 | MR. ROBBINS. |
| 10:12AM | 21 | THE COURT:  MR. ROBBINS WILL TAKE SEAT? |
| 10:12AM | 22 | THE CLERK:  SEAT I, PLEASE.  YES.  THANK YOU. |
| 10:12AM | 23 | MR. GUERRERO.  YOU'RE IN SEAT J. |
| 10:12AM | 24 | MR. KEW, K-E-W.  SIR, YOU WILL TAKE SEAT L WHICH IS RIGHT |
| 10:12AM | 25 | IN FRONT OF THE BAR AREA. |

| | | |
|---|---|---|
| 10:12AM | 1 | MS. GALANTE, YOU'LL TAKE SEAT M. |
| 10:13AM | 2 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:13AM | 3 | LADIES AND GENTLEMEN, THE 12 OF YOU HAVE BEEN SELECTED TO |
| 10:13AM | 4 | SIT AS JURORS IN THIS CASE. |
| 10:13AM | 5 | I'M NOW GOING TO ASK YOU TO PLEASE STAND AND RAISE YOUR |
| 10:13AM | 6 | RIGHT HANDS.  MS. KRATZMANN IS GOING TO ADMINISTER THE OATH TO |
| 10:13AM | 7 | YOU. |
| 10:13AM | 8 | (SELECTED JURORS WERE GIVEN THE OATH.) |
| 10:13AM | 9 | JURORS:  YES. |
| 10:13AM | 10 | THE COURT:  THANK YOU VERY MUCH.  PLEASE BE SEATED. |
| 10:13AM | 11 | I'M NOW GOING TO ASK MS. KRATZMANN TO CALL OUT THOSE FIVE |
| 10:13AM | 12 | NAMES OF INDIVIDUALS WHO HAVE BEEN SELECTED TO SERVE AS |
| 10:13AM | 13 | ALTERNATE JURORS. |
| 10:13AM | 14 | I'D LIKE YOU TO SIT IN THE FRONT ROW.  ARE THERE THREE |
| 10:14AM | 15 | PEOPLE IN THAT FRONT ROW NOW?  COULD I ASK YOU PLEASE TO MOVE, |
| 10:14AM | 16 | PLEASE.  THANK YOU.  I'M SORRY FOR THE INCONVENIENCE. |
| 10:14AM | 17 | MS. KRATZMANN, IF YOU WOULD CALL THOSE NAMES, PLEASE. |
| 10:14AM | 18 | THE CLERK:  ALTERNATE 1, MR. BEDNAR.  IF YOU'LL TAKE |
| 10:14AM | 19 | SEAT N, PLEASE. |
| 10:14AM | 20 | ALTERNATE 2, MS. MUNOZ, MS. GOMEZ-MUNOZ.  IF YOU'LL PLEASE |
| 10:15AM | 21 | TAKE SEAT O. |
| 10:15AM | 22 | ALTERNATE 3, MS. SALTING. |
| 10:15AM | 23 | ALTERNATE 4, MS. MASON-BURCHELL. |
| 10:15AM | 24 | ALTERNATE 5, MR. LEE.  IF YOU'LL TAKE SEAT R, PLEASE. |
| 10:15AM | 25 | THE COURT:  THANK YOU.  AND IF OUR ALTERNATES COULD |

10:15AM  1    PLEASE STAND AND RAISE YOUR RIGHT HAND, WE HAVE A SPECIAL OATH

10:15AM  2    FOR YOU AS WELL.

10:16AM  3         (ALTERNATE JURORS WERE GIVEN THE OATH.)

10:16AM  4         JURORS:  YES.

10:16AM  5         THE COURT:  THANK YOU VERY MUCH.  PLEASE BE SEATED.

10:16AM  6    THE RECORD SHOULD REFLECT THAT WE HAVE SELECTED OUR 12

10:16AM  7    JURORS WHO WILL HEAR THE CASE AS WELL AS 5 ALTERNATES.  THEY

10:16AM  8    HAVE ALL BEEN SWORN.

10:16AM  9    LADIES AND GENTLEMEN, BEHIND YOU -- I WANT TO SPEAK TO

10:16AM  10   THOSE BEHIND YOU, PROSPECTIVE JURORS WHO ARE SITTING BEHIND OUR

10:16AM  11   ALTERNATES.  I WANT TO TAKE A MOMENT TO FIRST OF ALL RECOGNIZE

10:16AM  12   DISAPPOINTMENT IN YOUR FACES.

10:16AM  13        (LAUGHTER.)

10:16AM  14        THE COURT:  I'M SERIOUS ABOUT THAT.  I'M SERIOUS

10:16AM  15   ABOUT THAT.  YOU CAME HERE AND YOU SAT FOR TWO DAYS TO SERVE

10:16AM  16   YOUR COMMUNITY FOR JURY SERVICE, AND I DO ANTICIPATE AND RATHER

10:17AM  17   EXPECT THAT THERE IS DISAPPOINTMENT THAT YOU COULD NOT CONTINUE

10:17AM  18   YOUR JURY SERVICE AT LEAST IN THIS CASE.

10:17AM  19   SO LET ME TELL YOU THAT WE HAVE A VERY EFFECTIVE JURY

10:17AM  20   COMMISSIONER, AND I EXPECT IT MAY COME TO PASS IN THE NEAR

10:17AM  21   FUTURE I'LL BE ABLE TO SEE YOU AGAIN AND PERHAPS MAYBE YOU'LL

10:17AM  22   BE PART OF A JURY IN A JURY TRIAL IN THIS BUILDING.

10:17AM  23   BUT I DO WANT TO THANK YOU.  I'M GOING TO RELEASE YOU IN

10:17AM  24   JUST A MOMENT.  I COULDN'T DO THAT THOUGH WITHOUT OFFERING ON

10:17AM  25   BEHALF OF ALL OF THE JUDGES OF THE NORTHERN DISTRICT OF

| | | |
|---|---|---|
| 10:17AM | 1 | CALIFORNIA OUR THANKS FOR YOUR SERVICE. |
| 10:17AM | 2 | I SAY THAT ALSO AND I HAVE AUTHORITY TO EXPRESS GRATITUDE |
| 10:17AM | 3 | FROM THESE LAWYERS HERE AS WELL, BOTH TABLES, THEY ALSO EXTEND |
| 10:17AM | 4 | THEIR GRATITUDE TO YOU FOR COMING FORWARD, SERVING, ANSWERING |
| 10:17AM | 5 | THE QUESTIONS THAT WE HAVE, AND SITTING FOR CONSIDERATION ON |
| 10:17AM | 6 | THIS TRIAL. |
| 10:17AM | 7 | I'M REALLY GRATEFUL THAT YOU WOULD DO THAT. |
| 10:17AM | 8 | MY REGRET IS THAT PERHAPS I DIDN'T GET TO MEET YOU MORE AS |
| 10:17AM | 9 | A SITTING JUROR AND TO WORK WITH YOU, BUT AS I SAID, I'M SURE |
| 10:18AM | 10 | THERE ARE MANY OPPORTUNITIES IN THE FUTURE THAT WILL PRESENT |
| 10:18AM | 11 | FOR THAT. |
| 10:18AM | 12 | IT'S SO IMPORTANT NOW FOR YOU TO COME FORWARD AND SERVE |
| 10:18AM | 13 | YOUR COMMUNITY AS I INDICATED IN MY OPENING REMARKS. |
| 10:18AM | 14 | SO I HOPE YOU TAKE SOME PRIDE IN YOUR SERVICE HERE.  I |
| 10:18AM | 15 | HOPE YOU ENJOYED YOUR BRIEF TIME HERE AND THAT YOU WALK AWAY |
| 10:18AM | 16 | WITH AN EDUCATIONAL EXPERIENCE AND ALSO YOU'LL TAKE SOME PRIDE |
| 10:18AM | 17 | IN YOUR JUSTICE SYSTEM AND YOUR COURTS. |
| 10:18AM | 18 | SO THANK YOU VERY MUCH.  THOSE OF YOU WHO WERE NOT |
| 10:18AM | 19 | SELECTED, YOU MAY LEAVE IF YOU WISH.  YOU MAY REMAIN.  IT'S A |
| 10:18AM | 20 | PUBLIC COURTROOM AND IT BELONGS TO YOU, BUT THANK YOU VERY |
| 10:18AM | 21 | MUCH. |
| 10:18AM | 22 | THE CLERK:  THEY CAN JUST GO HOME. |
| 10:18AM | 23 | THE COURT:  AND YOU CAN JUST GO.  YOU DON'T NEED TO |
| 10:18AM | 24 | CHECK IN DOWNSTAIRS.  THANK YOU. |
| 10:19AM | 25 | (PROSPECTIVE JURORS OUT AT 10:19 A.M.) |

10:19AM  1          THE COURT:  ALL RIGHT.  THANK YOU.

10:19AM  2          THE RECORD SHOULD REFLECT THAT THE BALANCE OF THE

10:19AM  3     PROSPECTIVE JURORS LEFT THE COURTROOM.  ALL OF OUR JURORS AND

10:19AM  4     ALTERNATES REMAIN.

10:19AM  5          LADIES AND GENTLEMEN, I WANT TO TAKE A COUPLE OF MINUTES

10:19AM  6     TO EXPLAIN TO YOU WHAT IS GOING TO HAPPEN NEXT AND HOW THINGS

10:19AM  7     ARE GOING TO PROCEED.

10:19AM  8          WE'RE GOING TO TAKE A BREAK IN JUST A MOMENT, AND I'LL ASK

10:19AM  9     YOU TO COME BACK WEDNESDAY NEXT, NEXT WEDNESDAY TO START OUR

10:19AM 10     TRIAL.  WHAT YOU WILL START WITH WILL BE PRELIMINARY

10:19AM 11     INSTRUCTIONS THAT I WILL GIVE TO YOU.  I WILL READ TO YOU

10:19AM 12     PRELIMINARY INSTRUCTIONS THAT WILL GUIDE YOU AS THE TRIAL

10:19AM 13     STARTS.

10:19AM 14          AFTER THAT I'LL ASK THE PARTIES IF THEY HAVE ANY OPENING

10:19AM 15     STATEMENTS THAT THEY WISH TO MAKE.  IF THEY DO, WE'LL START

10:19AM 16     WITH THE GOVERNMENT'S OPENING STATEMENT AND FOLLOWING THAT THE

10:19AM 17     DEFENSE, IF THEY CHOOSE TO GIVE AN OPENING STATEMENT AT THAT

10:19AM 18     TIME.

10:19AM 19          AFTER THOSE OPENING STATEMENTS, WE WILL THEN BEGIN

10:19AM 20     EVIDENCE, AND THAT MEANS, AS YOU RECALL, THE GOVERNMENT WILL

10:20AM 21     CALL WITNESSES OR INTRODUCE EXHIBITS IN THE TRIAL PROCESS AND

10:20AM 22     THE EVIDENTIARY PROCESS OF THE TRIAL WILL THEN BEGIN.

10:20AM 23          WE'LL MEET, AS I INDICATED, ON THOSE DATES.  AGAIN, THOSE

10:20AM 24     SCHEDULES MAY CHANGE.  I MAY ASK YOU DURING THE COURSE OF THE

10:20AM 25     TRIAL WHETHER YOUR SCHEDULES MIGHT PERMIT US MEETING EARLIER

| | | |
|---|---|---|
| 10:20AM | 1 | THAN 9:00 O'CLOCK, 8:30, SOMETHING LIKE THAT, DEPENDING ON |
| 10:20AM | 2 | GEOGRAPHY AND TRAVEL AND COMMUTES.  WE'LL LOOK INTO THAT. |
| 10:20AM | 3 | SOMETIMES PEOPLE WHO LIVE OVER THE HILL I'LL CALL IT, |
| 10:20AM | 4 | SANTA CRUZ COUNTY, SOMETIMES THEY TELL ME IT'S EASIER TO GET |
| 10:20AM | 5 | HERE IN THE MORNING AND LEAVE EARLIER IN THE MORNING AND WE CAN |
| 10:20AM | 6 | INCORPORATE THAT INTO OUR SCHEDULE IF NEEDED AND APPROPRIATE. |
| 10:20AM | 7 | IT MAY BE THAT ON SOME DAYS I'LL ASK IN ADVANCE, I'LL GIVE |
| 10:20AM | 8 | YOU NOTICE, THAT WE MAY GO A LITTLE LATER JUST BECAUSE OF |
| 10:20AM | 9 | WITNESS SCHEDULES, EVIDENCE SCHEDULES.  THAT SOMETIMES COMES UP |
| 10:21AM | 10 | AS WELL.  THAT CREATES SOME ISSUES. |
| 10:21AM | 11 | BUT I'LL GIVE YOU AS MUCH OF ADVANCE NOTICE AS I CAN FOR |
| 10:21AM | 12 | YOUR PLANNING. |
| 10:21AM | 13 | IF YOU HAVE ANY CONFLICTS THAT COME UP, YOU SHOULD LET |
| 10:21AM | 14 | MS. KRATZMANN KNOW IN ADVANCE.  WHEN WE FINISH HERE TODAY, THAT |
| 10:21AM | 15 | IS, WHEN I STEP DOWN AND WE FINISH THESE PROCEEDINGS, |
| 10:21AM | 16 | MS. KRATZMANN WILL STAY WITH YOU, AND SHE WILL GIVE YOU SOME |
| 10:21AM | 17 | INFORMATION.  SHE'LL PROVIDE YOU CONTACT INFORMATION.  SHE'LL |
| 10:21AM | 18 | GIVE YOU INFORMATION ON HOW YOU CAN COME IN AND ACCESS THE |
| 10:21AM | 19 | COURT AND JURY BADGES, WHICH WILL ENHANCE AND EASE YOUR ACCESS |
| 10:21AM | 20 | TO THE COURT.  SO SHE'LL DO ALL OF THAT WITH YOU WHEN WE'RE |
| 10:21AM | 21 | GONE.  SO SHE'LL ENGAGE THAT. |
| 10:21AM | 22 | WE WERE GOING TO TAKE YOU NEXT DOOR TO SHOW YOU THE ROOM |
| 10:21AM | 23 | THAT WE'LL USE FOR YOUR DELIBERATIONS AND MEETINGS, AND I'M |
| 10:21AM | 24 | INFORMED THAT OUR I.T. STAFF MAY BE WORKING IN THERE.  SO THAT |
| 10:21AM | 25 | MAY NOT BE AVAILABLE.  IF IT BECOMES AVAILABLE, MS. KRATZMANN |

10:21AM 1    WILL TAKE YOU NEXT DOOR TO SHOW YOU THAT AS WELL AND GIVE YOU

10:22AM 2    THAT INFORMATION AS WELL.

10:22AM 3        LET ME TELL YOU ONE THING THAT I'M THINKING OF DOING, AND

10:22AM 4    I HOPE I CAN ENGAGE THIS THROUGHOUT THE TRIAL.  IT'S A LONG

10:22AM 5    TRIAL.  I MAY TRY TO SEE IF WE CAN ROTATE YOUR SEATING, THAT

10:22AM 6    IS, WE MIGHT GO A WEEK AT A TIME AND HAVE FOLKS ROTATE OUT FROM

10:22AM 7    THE BOX HERE AND ROTATE OUT TO THE BENCH SO OUR FRIENDS IN THE

10:22AM 8    FRONT ROW THERE, THE ALTERNATE JURORS, CAN ALSO COME IN AND SIT

10:22AM 9    BACK IN THE BOXES IF POSSIBLE.  THAT MAY ALLOW FOR BETTER

10:22AM 10   COMFORT PERHAPS AND A FEELING OF GREATER PARTICIPATION.

10:22AM 11       I KNOW IT'S DIFFICULT TO BE SEATED THE ENTIRETY OF THE

10:22AM 12   TIME OUT BEHIND THAT RAIL.

10:22AM 13       I AM ALSO GOING TO ORDER THAT THE SEAT, THAT IS, THE PEW

10:22AM 14   THAT IS BEHIND WHERE OUR ALTERNATES ARE SEATED NOW, THAT IS

10:22AM 15   GOING TO REMAIN VACANT AND OPEN THROUGHOUT THE TRIAL.  I'M NOT

10:22AM 16   GOING TO HAVE ANYONE SIT BEHIND THE JURORS WHO ARE SEATED IN

10:23AM 17   THAT FRONT ROW.  AND WE'LL MARK THAT AS INDICATED.

10:23AM 18       SO NO ONE WILL BE SITTING BEHIND THE JURORS WHO ARE SEATED

10:23AM 19   THERE.

10:23AM 20       MS. KRATZMANN WILL TELL YOU ABOUT -- SHE'LL PROVIDE TO YOU

10:23AM 21   AND GIVE YOU INFORMATION ABOUT NOTE PADS.

10:23AM 22       THE LAWYERS HAVE INDICATED TO ME THAT THEY'RE GOING TO

10:23AM 23   PREPARE AND I'VE ASKED THEM TO PREPARE TRIAL BINDERS.  AND EACH

10:23AM 24   JUROR WILL HAVE A BINDER.  THE BINDERS WILL HAVE AND I EXPECT

10:23AM 25   WE'LL BE ABLE TO PROVIDE PHOTOGRAPHS OF EVERY WITNESS WHO

10:23AM 1    TESTIFIES IN THIS CASE FOR YOU TO PUT IN THAT BINDER.  YOU KNOW

10:23AM 2    IT'S GOING TO BE A LONG TRIAL, AND I'VE ASKED THE LAWYERS TO

10:23AM 3    PROVIDE THOSE PHOTOGRAPHS SUCH THAT YOUR MEMORY AT THE TIME

10:23AM 4    WHEN YOU DELIBERATE THE CASE, THOSE PHOTOGRAPHS MIGHT BE OF

10:23AM 5    SOME ASSISTANCE TO YOU AS YOU REVIEW THE EVIDENCE, THE

10:23AM 6    TESTIMONY, AND THE EXHIBITS.  THAT WILL BE PROVIDED FOR YOU AS

10:23AM 7    WELL, AND YOU'LL BE ABLE TO LEAVE THOSE BINDERS HERE IN COURT

10:24AM 8    IN THE DELIBERATION ROOM EACH DAY.  SO WE DO WANT TO PROVIDE

10:24AM 9    THAT FOR YOU AS WELL.

10:24AM 10        LET ME ASK COUNSEL, ANY OTHER QUESTIONS?  COMMENTS?

10:24AM 11            MR. SCHENK:  NO, YOUR HONOR.  THANK YOU.

10:24AM 12            MR. DOWNEY:  NOTHING, YOUR HONOR.

10:24AM 13            THE COURT:  ALL RIGHT.  THANK YOU.

10:24AM 14        SO, LADIES AND GENTLEMEN, WITH THAT WE WILL BREAK FOR THE

10:24AM 15    DAY.  HOWEVER, I DO WANT TO READ YOU AN ADMONITION.

10:24AM 16        YOU'RE ABOUT TO TAKE OUR FIRST BREAK AS A SWORN JURY IN

10:24AM 17    THE TRIAL.  REMEMBER, UNTIL THE TRIAL IS OVER, DO NOT DISCUSS

10:24AM 18    THIS CASE WITH ANYONE, INCLUDING YOUR FELLOW JURORS, MEMBERS OF

10:24AM 19    YOUR FAMILY, PEOPLE INVOLVED IN THE TRIAL, OR ANYONE ELSE, AND

10:24AM 20    DO NOT ALLOW OTHERS TO DISCUSS THE CASE WITH YOU.

10:24AM 21        THIS RESTRICTION INCLUDES DISCUSSING THE CASE IN PERSON,

10:24AM 22    IN WRITING, BY PHONE, TABLET, COMPUTER, OR ANY OTHER MEANS VIA

10:25AM 23    EMAIL, TEXT MESSAGING, OR ANY INTERNET CHAT ROOM, BLOG,

10:25AM 24    WEBSITE, OR APPLICATION, INCLUDING BUT NOT LIMITED TO FACEBOOK,

10:25AM 25    YOUTUBE, TWITTER, INSTAGRAM, LINKEDIN, SNAPCHAT, TIKTOK OR ANY

10:25AM  1    OTHER FORMS OF SOCIAL MEDIA.

10:25AM  2        IF ANYONE TRIES TO COMMUNICATE WITH YOU ABOUT THE CASE,

10:25AM  3    PLEASE LET ME KNOW ABOUT IT IMMEDIATELY.  DO NOT READ, WATCH,

10:25AM  4    OR LISTEN TO ANY NEWS REPORTS OR OTHER ACCOUNTS ABOUT THE TRIAL

10:25AM  5    OR ANYONE ASSOCIATED WITH IT, INCLUDING ANY ONLINE INFORMATION.

10:25AM  6        DO NOT DO ANY RESEARCH SUCH AS CONSULTING DICTIONARIES,

10:25AM  7    SEARCHING THE INTERNET OR USING OTHER REFERENCE MATERIALS, AND

10:25AM  8    DO NOT MAKE ANY INVESTIGATION ABOUT THE CASE ON YOUR OWN.

10:25AM  9        FINALLY, KEEP AN OPEN MIND UNTIL ALL OF THE EVIDENCE HAS

10:26AM  10   BEEN PRESENTED AND YOU HAVE HEARD THE ARGUMENTS OF COUNSEL, MY

10:26AM  11   INSTRUCTIONS ON THE LAW, AND THE VIEWS OF YOUR FELLOW JURORS.

10:26AM  12       NOW, LADIES AND GENTLEMEN, AS I'VE TOLD YOU BEFORE, THIS

10:26AM  13   CASE MUST BE DECIDED SOLELY AND EXCLUSIVELY ON THE EVIDENCE

10:26AM  14   WHICH WILL BE RECEIVED HERE IN COURT AND ALSO IN ACCORDANCE

10:26AM  15   WITH MY INSTRUCTIONS TO YOU AT THE CONCLUSION OF THE CASE.

10:26AM  16       I'VE TOLD YOU BEFORE, A DAY AGO, THAT ALL PARTIES HERE

10:26AM  17   HAVE A CONSTITUTIONAL RIGHT TO A FAIR TRIAL, THE GOVERNMENT AND

10:26AM  18   MS. HOLMES.  IT'S YOUR OBLIGATION TO FOLLOW THIS ADMONITION AS

10:26AM  19   I'VE READ IT TO YOU.

10:26AM  20       WE'VE TALKED ABOUT THE DIFFICULTIES THAT MAY COME IN

10:26AM  21   STAYING AWAY FROM MEDIA.  I HAVE MADE SUGGESTIONS ABOUT TURNING

10:26AM  22   OFF YOUR NOTIFICATIONS AND THOSE TYPES OF THINGS.  I'M SURE YOU

10:27AM  23   WILL BE CREATIVE IN YOUR ENDEAVOR TO KEEP FREE FROM ANY OUTSIDE

10:27AM  24   INFORMATION AS WELL.  THAT'S VERY IMPORTANT THAT YOU DO THAT.

10:27AM  25       ONE OTHER THING THAT I WILL DO WHEN WE RECONVENE EACH DAY,

10:27AM  1   I AM GOING TO ASK EACH OF YOU, AND IT MIGHT BE COLLECTIVELY,

10:27AM  2   BUT I'M GOING TO PUT THE QUESTION TO YOU WHETHER OR NOT DURING

10:27AM  3   OUR BREAK YOU HAVE, YOU HAVE BEEN EXPOSED TO ANY MEDIA, YOU'VE

10:27AM  4   SEEN MEDIA, YOU'VE HEARD MEDIA, OR ANYTHING THAT YOU MIGHT HAVE

10:27AM  5   EXPOSURE TO, AND I'M GOING TO ASK YOU TO PLEASE REPORT THAT TO

10:27AM  6   THE COURT SO THE COURT AND THE PARTIES CAN HEAR OF ANY INCIDENT

10:27AM  7   AND WE CAN DISCUSS IT.

10:27AM  8       SO I'LL BE ASKING YOU THAT QUESTION EACH DAY.  SO I GIVE

10:27AM  9   YOU THAT IN ADVANCE.  PLEASE BEAR THAT IN MIND AS YOU CONDUCT

10:27AM 10   YOURSELVES.

10:27AM 11       I'M NOW GOING TO -- I THINK WE CAN RECESS WITH OUR JURY.

10:27AM 12       ANYTHING ELSE FROM THE GOVERNMENT?

10:27AM 13           MR. SCHENK:  NO.  THANK YOU.

10:27AM 14           MR. DOWNEY:  NO, YOUR HONOR.

10:27AM 15           THE COURT:  ALL RIGHT.  YOU HAVE BADGES?

10:28AM 16           THE CLERK:  I DO.  I NEED NEW ONES, THOUGH.

10:28AM 17           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU VERY MUCH,

10:28AM 18   LADIES AND GENTLEMEN.  IT'S A PLEASURE MEETING YOU.  I LOOK

10:28AM 19   FORWARD TO WORKING WITH YOU AS DO THESE LAWYERS IN THIS TRIAL.

10:28AM 20       PLEASE REMEMBER THE ADMONITION.  THIS ADMONITION IS ALWAYS

10:28AM 21   IN PLACE.  IT IS NOT JUST IN THE COURTROOM, IT'S WITH YOUR

10:28AM 22   PERSONAL LIVES, AT HOME, THE THINGS THAT YOU DO WHEN YOU'RE

10:28AM 23   OUTSIDE OF COURT, THIS WILL STAY WITH YOU.

10:28AM 24       IF YOU NEED TO DISCUSS ANYTHING ABOUT THE TRIAL OR ANY

10:28AM 25   ISSUE, YOU'LL PLEASE CONTACT MS. KRATZMANN AND SHE CAN TAKE

10:28AM  1        CARE OF THAT.

10:28AM  2             ALL RIGHT.  THANK YOU VERY MUCH.  WE'LL BE IN RECESS.

10:28AM  3        THANK YOU.

10:28AM  4               THE CLERK:  COURT IS IN RECESS.  COURT IS ADJOURNED.

10:28AM  5             (COURT ADJOURNED AT 10:28 A.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16        IRENE RODRIGUEZ, CSR, RMR, CRR
          CERTIFICATE NUMBER 8074
17

18
          DATED:  SEPTEMBER 2, 2021
19

20

21

22

23

24

25

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

April 17, 2023