No. 22-10312

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

---

## EXCERPTS OF RECORD
## VOL. XXIII of LVII | ER-6249 to ER-6547

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2504

12:10PM    1    TO RUN THEN THEY SHOULD BE CLEARLY LABELED AS SUCH."

12:10PM    2         DO YOU SEE THAT?

12:10PM    3    A.   YES.

12:10PM    4    Q.   OKAY.  AND THEN HE ASKS, "CAN YOU GUYS PLEASE TOUCH BASE

12:10PM    5    WITH ADAM SO HE IS IN THE LOOP ON ALL HCG DECISIONS ON

12:10PM    6    EDISONS."

12:10PM    7         DO YOU SEE THAT?

12:10PM    8    A.   I SEE THAT.

12:10PM    9    Q.   OKAY.  LET'S GO TO THE NEXT EMAIL UP THE CHAIN.

12:10PM   10         DO YOU SEE THERE DANIEL SAYS THAT HE UPDATED YOU OVER THE

12:10PM   11    WEEKEND?  DO YOU SEE THAT?

12:10PM   12    A.   YES.

12:10PM   13    Q.   REGARDING THE REVIEW OF THE PAST HCG DATA AND WHAT THEY'RE

12:10PM   14    LOOKING AT MOVING FORWARD.

12:10PM   15         DO YOU SEE THAT?

12:10PM   16    A.   YES.

12:10PM   17    Q.   AND THERE HAD BEEN A HALT ON FRIDAY; RIGHT?

12:10PM   18    A.   YES.

12:10PM   19    Q.   AND THERE WAS WORK BEING DONE OVER THE WEEKEND TO ASSESS

12:10PM   20    WHETHER IT WAS OKAY TO DO THE HCG TEST; RIGHT?

12:10PM   21    A.   I DON'T KNOW WHAT THE WORK WAS CONDUCTED OR WHAT THE

12:10PM   22    INTENTION WAS.

12:10PM   23    Q.   BUT IT SAYS HERE THAT THEY HAD UPDATED YOU ON THAT.

12:11PM   24         DO YOU SEE THAT?

12:11PM   25    A.   IT'S PRETTY VAGUE.  I DON'T REALLY KNOW WHAT DANIEL MEANS

| | | |
|---|---|---|
| 12:11PM | 1 | IN THIS EMAIL TO BE HONEST. |
| 12:11PM | 2 | Q.   OKAY.  DO YOU SEE THE PART WHERE IT SAYS, "I UPDATED ADAM |
| 12:11PM | 3 | OVER THE WEEKEND REGARDING OUR REVIEW OF THE PAST DATA FOR HCG |
| 12:11PM | 4 | DATA AND WHAT WE WERE LOOKING AT MOVING FORWARDS." |
| 12:11PM | 5 | DO YOU SEE THAT? |
| 12:11PM | 6 | A.   YES. |
| 12:11PM | 7 | Q.   AND DO YOU SEE THE SUBJECT LINE HCG ON EDISONS? |
| 12:11PM | 8 | A.   YES. |
| 12:11PM | 9 | Q.   AND DO YOU SEE THAT IT SAYS, "WE'LL UPDATE HIM ON THE |
| 12:11PM | 10 | LATEST EFFORTS ON THIS"? |
| 12:11PM | 11 | A.   YES. |
| 12:11PM | 12 | Q.   OKAY. |
| 12:11PM | 13 | A.   IT LOOKS LIKE THEY'RE TRYING TO DO TROUBLESHOOTING AND |
| 12:11PM | 14 | LOOKING AT PREVIOUS DATA AND WHATNOT? |
| 12:11PM | 15 | Q.   BECAUSE YOU HAD HALTED TESTING, RIGHT, SIR? |
| 12:11PM | 16 | A.   CORRECT. |
| 12:11PM | 17 | Q.   YEAH.  AND SO THEY WERE TRYING TO FIGURE OUT WHAT WAS |
| 12:11PM | 18 | GOING ON WITH THE ASSAYS; CORRECT? |
| 12:11PM | 19 | A.   YES. |
| 12:11PM | 20 | Q.   OKAY.  AND ISN'T THAT WHAT YOU WOULD EXPECT EVERYONE IN |
| 12:11PM | 21 | THE COMPANY TO DO AT THAT POINT FOR AN IMPORTANT TEST LIKE HCG? |
| 12:11PM | 22 | A.   FOR ME THE URGENCY WAS TO HAVE AN HCG TEST THAT WAS |
| 12:11PM | 23 | ACCURATE. |
| 12:11PM | 24 | THE URGENCY WAS NOT TO PUT IT STRAIGHT BACK ON THE EDISON. |
| 12:12PM | 25 | Q.   BUT WHEN THERE'S A PROBLEM, YOU WANT TO LOOK INTO THE |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2506

12:12PM   1      PROBLEM AND ADDRESS IT; RIGHT?

12:12PM   2      A.   OF COURSE.

12:12PM   3      Q.   OKAY.  LET'S GO UP THE CHAIN.

12:12PM   4           DO YOU SEE THERE MR. BALWANI ACTUALLY FORWARDS THIS TO

12:12PM   5      YOU; RIGHT?

12:12PM   6      A.   YES.

12:12PM   7      Q.   AND HE TELLS YOU THAT HE'S GOING TO CONTINUE TO MONITOR

12:12PM   8      THIS AND MAKE SURE THAT THIS IS PART OF THE CULTURE; RIGHT?

12:12PM   9      A.   YES.

12:12PM   10     Q.   AND HE'S NOT TRYING TO UNDERMINE YOUR AUTHORITY; RIGHT?

12:12PM   11     A.   THAT CALLS FOR SPECULATION.

12:12PM   12     Q.   OKAY.  I DON'T WANT YOU TO SPECULATE.

12:12PM   13     A.   OKAY.

12:12PM   14     Q.   YOU ACKNOWLEDGE IT AND SAY IT MAKES SENSE.

12:12PM   15          SO WERE YOU SPECULATING AT THAT TIME?  LET'S GO UP THE

12:12PM   16     CHAIN.

12:12PM   17          DOES THIS HELP INFORM YOUR VIEW AS TO WHETHER

12:12PM   18     MR. BALWANI'S VIEW MADE SENSE?

12:12PM   19     A.   I'M AGREEING WITH THE SENTIMENT THAT HE'S EXPRESSING AT

12:12PM   20     THAT TIME, YES.

12:12PM   21     Q.   OKAY.  LET'S GO TO 13875.

12:13PM   22          DO YOU HAVE THAT IN FRONT OF YOU, SIR?

12:13PM   23     A.   YES.

12:13PM   24     Q.   DO YOU SEE THIS IS ANOTHER EMAIL DURING THAT SAME TIME

12:13PM   25     PERIOD ON HCG ISSUES?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2507

12:13PM   1      A.   YES.

12:13PM   2                MR. WADE:   OKAY.   MOVE THE ADMISSION OF 13875.

12:13PM   3                MR. BOSTIC:   NO OBJECTION.

12:13PM   4                THE COURT:   IT'S ADMITTED.   IT MAY BE PUBLISHED.

12:13PM   5           (DEFENDANT'S EXHIBIT 13875 WAS RECEIVED IN EVIDENCE.)

12:13PM   6                MR. WADE:   LET'S GO TO THE BOTTOM.

12:13PM   7      Q.   AND THIS IS AN EMAIL FROM YOU TO MR. BALWANI AND

12:13PM   8      DR. YOUNG; RIGHT?

12:13PM   9      A.   YES.

12:13PM   10     Q.   AND YOU KNOW FROM MR. BALWANI THAT THE THREE OF YOU HAD

12:14PM   11     DISCUSSED THE PLAN FOR HCG.

12:14PM   12          DO YOU SEE THAT?

12:14PM   13     A.   YES.

12:14PM   14     Q.   OKAY.   AND THEY TALK ABOUT THE WORK THAT IS BEING DONE TO

12:14PM   15     TRY TO FIGURE OUT THAT ASSAY?

12:14PM   16     A.   YES.

12:14PM   17     Q.   AND YOU'RE TALKING ABOUT THAT?

12:14PM   18     A.   YES.

12:14PM   19     Q.   OKAY.   BECAUSE YOU WERE IN THE LOOP THERE NOW; RIGHT?

12:14PM   20     A.   YES.

12:14PM   21     Q.   AND YOU SAY DOWN ON THE BOTTOM THAT YOU'RE GOING TO CHANGE

12:14PM   22     HCG TO A VACUTAINER AND RUN IT ON THE IMMULITE; RIGHT?

12:14PM   23     A.   CORRECT.

12:14PM   24     Q.   AND THAT'S THE PREDICATE DEVICE?

12:14PM   25     A.   CORRECT.

| | | |
|---|---|---|
| 12:14PM | 1 | Q. RIGHT? |
| 12:14PM | 2 | AND THEN YOU'RE GOING TO HOLD THE EDISON ORDERS AND CALL |
| 12:14PM | 3 | FOR A REDRAW AS NEEDED; RIGHT? |
| 12:14PM | 4 | A. CORRECT. |
| 12:14PM | 5 | Q. OKAY. WHILE YOU'RE LOOKING AT THIS? |
| 12:14PM | 6 | A. CORRECT. |
| 12:14PM | 7 | Q. OKAY. LET'S GO UP THE CHAIN. |
| 12:14PM | 8 | AND THEN DR. YOUNG NOTES WE'RE GOING TO ALSO REPEAT THE |
| 12:14PM | 9 | IQP STUDY TODAY? |
| 12:15PM | 10 | A. YES. |
| 12:15PM | 11 | Q. AND THAT'S THE PRIOR STUDY WE HAVE SEEN IN SOME EMAILS? |
| 12:15PM | 12 | A. YES. |
| 12:15PM | 13 | Q. AND TO TEST THE ACCURACY OF THE HCG ASSAY? |
| 12:15PM | 14 | A. YES. |
| 12:15PM | 15 | Q. OKAY. AND THEY'RE WORKING ON THAT TODAY? |
| 12:15PM | 16 | A. YES. |
| 12:15PM | 17 | Q. WHICH WAS WEDNESDAY, JUNE 4TH, 2014; RIGHT? |
| 12:15PM | 18 | A. YES. |
| 12:15PM | 19 | Q. OKAY. AND YOU'RE IN THE LOOP ON THIS; CORRECT? |
| 12:15PM | 20 | A. YES, YES. |
| 12:15PM | 21 | Q. OKAY. LET'S GO TO 12660. |
| 12:15PM | 22 | A. OKAY. |
| 12:15PM | 23 | Q. DO YOU HAVE THAT IN FRONT OF YOU? |
| 12:15PM | 24 | A. YES. |
| 12:15PM | 25 | Q. AND DO YOU SEE THAT THIS IS ANOTHER EMAIL ON HCG TESTING |

12:15PM  1    IN THIS SAME TIME PERIOD?

12:15PM  2    A.   YES.

12:15PM  3    Q.   WITH PEOPLE IN THE CLIA LAB?

12:15PM  4    A.   YES.

12:15PM  5            MR. WADE:  MOVE THE ADMISSION OF 12660.

12:15PM  6            MR. BOSTIC:  NO OBJECTION.

12:15PM  7            THE WITNESS:  I'M NOT ON THE EMAIL BY THE WAY.

12:15PM  8            THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:16PM  9       (DEFENDANT'S EXHIBIT 12660 WAS RECEIVED IN EVIDENCE.)

12:16PM 10    BY MR. WADE:

12:16PM 11    Q.   LET'S GO TO THE BOTTOM.  DO YOU SEE THE LAST EMAIL

12:16PM 12    ACTUALLY ON THE BOTTOM OF THE SECOND PAGE?

12:16PM 13    A.   YES.

12:16PM 14    Q.   THIS IS THE EMAIL WHERE YOU'RE HOLDING THE RESULTS.

12:16PM 15       DO YOU SEE THAT?

12:16PM 16    A.   YES.

12:16PM 17    Q.   AND LET'S GO UP TO THE EMAIL JUST ABOVE IT THAT SAYS, "HI

12:16PM 18    ADAM," FROM HODA?

12:16PM 19    A.   YES.

12:16PM 20    Q.   AND IT SAYS THAT SHE SEES SOME RESULTS IN LIS FOR HCG FROM

12:16PM 21    EDISON.

12:16PM 22       DO YOU SEE THAT?

12:16PM 23    A.   YES.

12:16PM 24    Q.   AND SHE'S WONDERING IF THEY CAN BE RELEASED OR IF THEY

12:16PM 25    NEED TO BE SWITCHED.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2510

12:16PM   1          DO YOU SEE THAT?

12:16PM   2     A.   YES.

12:16PM   3     Q.   OKAY.  LET'S GO UP THE CHAIN.  THIS IS THEN FORWARDED

12:17PM   4     TO -- MR. BALWANI IS ON THE CHAIN.  I THINK MAYBE HE GETS THE

12:17PM   5     CLS EMAILS?

12:17PM   6     A.   I HAVE NO IDEA.

12:17PM   7     Q.   OKAY.  LET'S GO TO THE EMAIL ABOVE THAT FROM DR. YOUNG.

12:17PM   8          OKAY.  AND HE REPORTS TO MR. BALWANI AND MR. PANGARKAR

12:17PM   9     THAT HE WAS JUST SPEAKING WITH YOU ABOUT THIS AND THAT YOU'RE

12:17PM  10     GOING TO HOLD THE RESULT UNTIL THE STUDY WE ARE RUNNING ON THE

12:17PM  11     EDISON ASSAY IS DONE.

12:17PM  12          DO YOU SEE THAT?

12:17PM  13     A.   YES.

12:17PM  14     Q.   AND THAT THE DATA SHOULD BE READY TONIGHT.  EVERYONE WAS

12:17PM  15     WORKING HARD TO GET THAT STUDY DONE; RIGHT?

12:17PM  16     A.   YES.

12:17PM  17     Q.   OKAY.  AND LET'S -- AND THAT'S -- IF YOU GO UP TO THE TOP,

12:17PM  18     YOU CAN SEE WITH MR. PANGARKAR'S EMAIL THAT THAT'S THAT IQP AAP

12:17PM  19     LIKE STUDY FOR A HCG?

12:18PM  20     A.   I'M NOT SURE REALLY WHAT WAS ENTAILED IN THE IQP.

12:18PM  21     Q.   OKAY.  DO YOU SEE THERE IT SAYS THAT THE LAST IQP WAS

12:18PM  22     PERFORMED ON 5-6 AND DEMONSTRATED GOOD CONCORDANCE?

12:18PM  23          DO YOU SEE THAT?

12:18PM  24     A.   YES, ACCORDING TO CHINMAY.

12:18PM  25     Q.   AND THAT SUGGESTS THE RESULTS ARE GOOD?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2511

| | | |
|---|---|---|
| 12:18PM | 1 | A.   NO.  CHINMAY IS MAKING AN ASSERTION ABOUT THE RESULTS |
| 12:18PM | 2 | BEING GOOD. |
| 12:18PM | 3 | Q.   I UNDERSTAND. |
| 12:18PM | 4 | DO YOU RECALL THE RESULTS FROM THE IQP THAT WAS DONE IN |
| 12:18PM | 5 | THIS TIME PERIOD ON HCG? |
| 12:18PM | 6 | A.   NO, I DO NOT. |
| 12:18PM | 7 | Q.   LET'S GO NEXT TO 13876. |
| 12:19PM | 8 | DO YOU HAVE THAT EMAIL IN FRONT OF YOU? |
| 12:19PM | 9 | A.   YES. |
| 12:19PM | 10 | Q.   AND THAT'S ANOTHER EMAIL ON HCG; CORRECT? |
| 12:19PM | 11 | A.   YES. |
| 12:19PM | 12 | Q.   AND THAT'S ON MID-JUNE 2014? |
| 12:19PM | 13 | A.   YES. |
| 12:19PM | 14 | MR. WADE:  I MOVE THE ADMISSION OF 13876. |
| 12:19PM | 15 | MR. BOSTIC:  NO OBJECTION. |
| 12:19PM | 16 | THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED. |
| 12:19PM | 17 | (DEFENDANT'S EXHIBIT 13876 WAS RECEIVED IN EVIDENCE.) |
| 12:19PM | 18 | MR. WADE:  LET'S GO TO THE BOTTOM OF THE FIRST PAGE |
| 12:19PM | 19 | AND IT CARRIES OVER. |
| 12:19PM | 20 | Q.   DO YOU SEE THIS IS JUNE 16TH, 2014, AT 10:30 OR SO? |
| 12:19PM | 21 | A.   YES. |
| 12:19PM | 22 | Q.   OKAY.  AND THAT CARRIES OVER TO THE SECOND PAGE.  LET'S |
| 12:19PM | 23 | LOOK AT THE SUBSTANCE OF THE EMAIL.  YOU ASK FOR A STATUS |
| 12:19PM | 24 | UPDATE ON THE HCG ON THE EDISON; RIGHT? |
| 12:20PM | 25 | A.   YES. |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2512

| | | |
|---|---|---|
| 12:20PM | 1 | Q.   BECAUSE THERE WERE EFFORTS BEING MADE TO FIGURE OUT |
| 12:20PM | 2 | GETTING IT BACK ON LINE. |
| 12:20PM | 3 | DO YOU RECALL THAT, THE STUDIES? |
| 12:20PM | 4 | A.   YES. |
| 12:20PM | 5 | Q.   AND LET'S GO UP THE CHAIN. |
| 12:20PM | 6 | IT THEN SAYS, "BASED ON REPORTS SINCE FRIDAY, WE HAVE BEEN |
| 12:20PM | 7 | CONSISTENTLY PASSING QC -- SO WE DON'T HAVE A PROBLEM WITH THE |
| 12:20PM | 8 | CURRENT BUILD." |
| 12:20PM | 9 | DO YOU SEE THAT? |
| 12:20PM | 10 | A.   YES. |
| 12:20PM | 11 | Q.   AND THAT MEANS THAT THE CURRENT BUILD IS THE CARTRIDGE |
| 12:20PM | 12 | BUILD? |
| 12:20PM | 13 | A.   I DON'T RECALL. |
| 12:20PM | 14 | Q.   OKAY.  THE QC IS BEING DONE ON DEVICES THAT ARE RUNNING |
| 12:20PM | 15 | WITHIN THE CLIA LAB; RIGHT? |
| 12:20PM | 16 | A.   I DON'T KNOW ACTUALLY.  HE'S SAYING THAT IT'S CONSISTENTLY |
| 12:20PM | 17 | PASSING QC. |
| 12:20PM | 18 | I DON'T KNOW IF HE'S RUNNING QC ON EDISONS, WHERE THOSE |
| 12:20PM | 19 | EDISONS ARE, IF THEY'RE IN THE CLIA LAB, IF THEY'VE BEEN |
| 12:20PM | 20 | QUALIFIED IN THE CLIA LAB.  I HAVE NO IDEA WHAT EDISONS HE'S |
| 12:20PM | 21 | RUNNING THIS QC ON. |
| 12:20PM | 22 | Q.   LET'S WORK UP THE CHAIN.  YOU RESPOND AND SAY, "GREAT |
| 12:20PM | 23 | THANKS." |
| 12:20PM | 24 | DO YOU SEE THAT? |
| 12:20PM | 25 | A.   YES. |

ROSENDORFF CROSS BY MR. WADE (RES.)                              2513

12:20PM   1      Q.   AND LET'S GRAB THE REST OF THE EMAILS FROM THE TOP.  IT

12:21PM   2      SAYS, "IN PARALLEL, A NEW BUILD HAS ALSO BEEN PLANNED AND IS ON

12:21PM   3      HIGH PRIORITY."

12:21PM   4           DO YOU SEE THAT?

12:21PM   5      A.   YES.

12:21PM   6      Q.   AND THEY'RE WORKING ON ANOTHER ONE.

12:21PM   7           AND YOU ASK "SO HCG IS BACK ON VACUTAINERS."

12:21PM   8           DO YOU SEE THAT?

12:21PM   9      A.   YES.

12:21PM   10     Q.   AND IF IT WAS BACK ON VACUTAINERS, THAT WOULD MEAN IT

12:21PM   11     WOULD HAVE TO GO OFF OF THE EDISON AND BACK ON THE VACUTAINERS;

12:21PM   12     RIGHT?

12:21PM   13     A.   YES.

12:21PM   14     Q.   AND THAT SUGGESTS IT WAS ON EDISON DURING THIS TIME

12:21PM   15     PERIOD; RIGHT?

12:21PM   16     A.   I DON'T KNOW.

12:21PM   17     Q.   WELL, LET'S LOOK AT THE TOP EMAIL.

12:21PM   18          MR. BALWANI MAKES CLEAR IT WAS ACTUALLY ON THE NANOTAINERS

12:21PM   19     WHICH WERE BEING USED ON THE EDISON DEVICE DURING THIS TIME

12:21PM   20     PERIOD, DOES IT NOT?

12:21PM   21     A.   WELL, THAT'S HIS ASSERTION.

12:21PM   22     Q.   OKAY.  DID YOU DO ANY FOLLOWUP TO SEE WHETHER THIS WAS THE

12:21PM   23     CASE IN THIS PERIOD?

12:21PM   24     A.   NO, I WASN'T POLICE -- I MADE A DECISION THAT HCG SHOULD

12:22PM   25     BE ON VACUTAINERS.  I ASSUMED THAT WAS BEING FOLLOWED ON.  I

ROSENDORFF CROSS BY MR. WADE (RES.)                                2514

12:22PM   1    DIDN'T DO ANY POLICING ON MY OWN OF THIS.

12:22PM   2    Q.   SIR, YOU WERE ACTIVELY INVOLVED IN THE RESEARCH AND

12:22PM   3    DEVELOPMENT WORK THAT WAS BEING DONE ON THAT AND THE

12:22PM   4    INVESTIGATION THAT WAS BEING DONE TO WORK TO GET THE EDISON

12:22PM   5    ASSAY BACK ONLINE; RIGHT?

12:22PM   6    A.   I WAS INFORMED OF THE INVESTIGATION EFFORTS, YES.

12:22PM   7    Q.   YEAH.  AND YOU'RE ASKING QUESTIONS AND THEY'RE TELLING YOU

12:22PM   8    IN THIS EMAIL THAT IT'S BACK ON THE EDISON DEVICE, ARE THEY

12:22PM   9    NOT, SIR?

12:22PM   10   A.   THAT'S WHAT SUNNY IS SAYING, YES.

12:22PM   11   Q.   OKAY.  YOU'RE BEING TOLD AT THIS TIME IT'S BACK ON THE

12:22PM   12   EDISON DEVICE?

12:22PM   13   A.   YES.

12:22PM   14   Q.   LET'S GO TO 13877.

12:23PM   15        DO YOU HAVE THAT IN FRONT OF YOU?

12:23PM   16   A.   13877?

12:23PM   17   Q.   CORRECT.

12:23PM   18   A.   I HAVE THAT.

12:23PM   19   Q.   YOU HAVE THAT IN FRONT OF YOU?

12:23PM   20   A.   YES.

12:23PM   21   Q.   AND THAT'S ANOTHER EMAIL ON HCG IN JUNE OF 2014?

12:23PM   22   A.   YES.

12:23PM   23        MR. WADE:  MOVE THE ADMISSION OF 13877.

12:23PM   24        MR. BOSTIC:  NO OBJECTION.

12:23PM   25        THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2515

12:23PM    1              (DEFENDANT'S EXHIBIT 13877 WAS RECEIVED IN EVIDENCE.)

12:23PM    2                   MR. WADE:  AND IF WE CAN JUST BLOW UP THE TOP THIRD

12:23PM    3       OR SO.

12:23PM    4       Q.   THIS IS AN EMAIL FROM MAX FOSQUE TO A GROUP OF PEOPLE

12:23PM    5       WITHIN THE CLIA LAB.

12:23PM    6            DO YOU SEE THAT?

12:23PM    7       A.   YES.

12:23PM    8       Q.   AND THAT INCLUDES YOU.  DO YOU SEE THAT?

12:23PM    9       A.   YES.

12:23PM   10       Q.   AND THIS IS DISCUSSING THE USE OF THE EDISON DEVICE IN THE

12:23PM   11       CLIA LAB?

12:23PM   12       A.   YES.

12:23PM   13       Q.   IN JUNE 18TH, 2014?

12:24PM   14       A.   YES.

12:24PM   15       Q.   AND THAT'S AFTER YOUR HOLD; CORRECT?

12:24PM   16       A.   CORRECT.

12:24PM   17       Q.   LET'S GO TO 13878.  THAT'S ANOTHER EMAIL ABOUT HCG ON THE

12:24PM   18       EDISON DEVICE; CORRECT?

12:24PM   19       A.   YES.

12:24PM   20                   MR. WADE:  I WOULD MOVE 13878.

12:24PM   21                   MR. BOSTIC:  NO OBJECTION.

12:24PM   22                   THE COURT:  IT'S ADMITTED AND MAY BE PUBLISHED.

12:24PM   23              (DEFENDANT'S EXHIBIT 13878 WAS RECEIVED IN EVIDENCE.)

12:24PM   24       BY MR. WADE:

12:24PM   25       Q.   SIR, THIS EMAIL REFLECTS DISCUSSION ABOUT THE USE OF THE

ROSENDORFF CROSS BY MR. WADE (RES.)                    2516

```
12:24PM   1    EDISON DEVICE IN THE CLIA LAB IN JULY OF 2014?

12:24PM   2    A.   YES.

12:24PM   3    Q.   I DON'T HAVE ANY OTHER QUESTIONS ON THIS ONE.

12:25PM   4         I HAVE ANOTHER LINE OF HCG QUESTIONING THAT I'D LIKE TO

12:25PM   5    ASK YOU ABOUT SOME OF YOUR TESTIMONY RELATING TO EXHIBIT 4840.

12:25PM   6         IF WE CAN BRING THAT UP.

12:25PM   7         IF WE CAN BLOW UP THE EMAIL IN THE MIDDLE.

12:25PM   8         DO YOU RECALL BEING ASKED QUESTIONS ABOUT THESE EMAILS?

12:25PM   9    A.   YES.

12:25PM  10    Q.   AND IN PARTICULAR I THINK THE GOVERNMENT FOCUSSED YOU --

12:26PM  11    IF YOU LOOK AT THAT BOTTOM EMAIL IT SAYS, "HCG RIGHT NOW IS

12:26PM  12    CAUSING SOME SERIOUS ISSUES AND PATIENT COMPLAINTS."

12:26PM  13         DO YOU SEE THAT?

12:26PM  14    A.   YES, YES.

12:26PM  15    Q.   AND HE SAYS HE'S BEEN SPENDING ALL OF HIS MORNING TALKING

12:26PM  16    TO DOCTORS ABOUT HCG?

12:26PM  17    A.   I SEE THAT.

12:26PM  18    Q.   AND YOU WERE ASKED WHETHER YOU WERE PART OF THE

12:26PM  19    CONVERSATIONS WITH DOCTORS IN THIS TIME PERIOD ON HCG?

12:26PM  20    A.   I DON'T RECALL.

12:26PM  21    Q.   AND DO YOU RECALL BEING QUESTIONED THAT THERE WAS A

12:26PM  22    SUGGESTION THAT THIS WAS A MEDICAL ISSUE AND YOU SHOULD BE, YOU

12:26PM  23    SHOULD BE INVOLVED IN MEDICAL ISSUES; RIGHT?

12:26PM  24         DO YOU RECALL THAT?

12:26PM  25    A.   I DON'T KNOW IF YOU'RE REFERRING TO AN EMAIL OR TO THE
```

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2517

12:27PM   1          GOVERNMENT'S LINE OF QUESTIONING OR WHAT YOU'RE REALLY

12:27PM   2          REFERRING TO RIGHT NOW.

12:27PM   3          Q.   I'M REFERRING TO THE GOVERNMENT'S LINE OF QUESTIONING

12:27PM   4          ABOUT THIS EMAIL.

12:27PM   5          A.   UH-HUH.

12:27PM   6          Q.   AND THEY WERE TRYING TO SUGGEST THAT YOU SHOULD BE

12:27PM   7          INVOLVED IN MEDICAL ISSUES; CORRECT?

12:27PM   8          A.   YES.

12:27PM   9          Q.   AND YOU THOUGHT YOU SHOULD?

12:27PM  10          A.   YES.

12:27PM  11          Q.   AND YOU DIDN'T THINK YOU WERE; CORRECT?

12:27PM  12          A.   YES.

12:27PM  13          Q.   OKAY.  LET'S -- LET ME FOCUS ON THE -- LET ME FOCUS

12:27PM  14          PARTICULARLY ON THAT LAST LINE THERE.  YOU SEE, "IT'S A

12:27PM  15          SENSITIVE ONE OBVIOUSLY B/C OF PEOPLE FINDING OUT IF PREGNANT."

12:27PM  16               DO YOU SEE THAT?

12:27PM  17          A.   YES.

12:27PM  18          Q.   AND THAT'S WHAT -- LET ME START OVER.

12:27PM  19               AN HCG TEST WILL HELP INFORM PEOPLE, A WOMAN IF SHE'S

12:27PM  20          PREGNANT; CORRECT?

12:27PM  21          A.   YES.

12:27PM  22          Q.   LET'S LOOK UP THIS CHAIN.

12:28PM  23               DO YOU RECALL WHAT THE ISSUE WAS THAT MR. HOLMES WAS

12:28PM  24          ADDRESSING HERE WHEN YOU LOOK AT THIS NEXT EMAIL UP HERE?

12:28PM  25               LET'S HIGHLIGHT IT.

| | | |
|---|---|---|
| 12:28PM | 1 | THERE WERE CAPACITY ISSUES; RIGHT? |
| 12:28PM | 2 | A.   YES. |
| 12:28PM | 3 | Q.   NOT MEDICAL ISSUES? |
| 12:28PM | 4 | A.   YES. |
| 12:28PM | 5 | Q.   THESE WERE CAPACITY ISSUES; CORRECT? |
| 12:28PM | 6 | A.   YES.  THAT'S WHAT CHRISTIAN IS SAYING, YES. |
| 12:28PM | 7 | Q.   OKAY.  AND THAT WAS THE CASE, WAS IT NOT? |
| 12:28PM | 8 | A.   I CAN EXPLAIN WHY. |
| 12:28PM | 9 | Q.   I'M JUST ASKING RIGHT NOW. |
| 12:28PM | 10 | A.   I DON'T RECALL IF THERE WERE CAPACITY ISSUES.  I DON'T |
| 12:28PM | 11 | RECALL IF THERE WERE CAPACITY ISSUES AT THAT TIME. |
| 12:28PM | 12 | Q.   OKAY.  AND JUST SO WE'RE CLEAR, THIS IS RAISED AT 2:35. |
| 12:28PM | 13 | DO YOU SEE THAT? |
| 12:28PM | 14 | A.   12:35. |
| 12:28PM | 15 | Q.   I'M SORRY, 12:35. |
| 12:29PM | 16 | A.   YES. |
| 12:29PM | 17 | Q.   THANK YOU.  AND DO YOU SEE MS. HOLMES RESPONDS THAT SHE |
| 12:29PM | 18 | WILL RESPOND WITHIN A HALF HOUR AND SAY SHE'LL CONNECT AS SOON |
| 12:29PM | 19 | AS SHE'S OUT; RIGHT? |
| 12:29PM | 20 | A.   YES. |
| 12:29PM | 21 | Q.   AND 30 MINUTES.  DO YOU CONSIDER THAT A PROMPT RESPONSE? |
| 12:29PM | 22 | A.   YES. |
| 12:29PM | 23 | Q.   OKAY.  LET'S JUST GO UP TO THE TOP AGAIN BECAUSE I THINK |
| 12:29PM | 24 | MAYBE YOU WERE ASKING ABOUT THIS PIECE OF AN EMAIL.  SAME |
| 12:29PM | 25 | DOCUMENT. |

ROSENDORFF CROSS BY MR. WADE (RES.)                              2519

12:29PM   1          LET'S BLOW UP THAT TOP EMAIL.

12:29PM   2          AND IT TALKS ABOUT HOW MR. HOLMES HAD JUST SPOKE WITH ONE

12:29PM   3    OF THE PATIENT'S HUSBANDS AND THE DOCTOR.

12:29PM   4          DO YOU SEE THAT?

12:30PM   5    A.   YES.

12:30PM   6    Q.   AND THAT DOCTOR HAD APPARENTLY SENT SEVERAL PEOPLE THERE?

12:30PM   7    A.   YES.

12:30PM   8    Q.   OVER FOUR DAYS; RIGHT?

12:30PM   9    A.   YES, YES.

12:30PM  10    Q.   AND ORIGINALLY HE SAID HE WON'T SEND US ANY MORE PATIENTS

12:30PM  11    BECAUSE WE'VE HAD ISSUES WITH ALL THREE; RIGHT?

12:30PM  12    A.   YES.

12:30PM  13    Q.   AND THE ISSUES WITH ALL THREE WERE THAT THE RESPONSES WERE

12:30PM  14    NOT COMING BACK; RIGHT?

12:30PM  15    A.   I DON'T KNOW IF THE ISSUES WERE ACCURACY OR TURNAROUND

12:30PM  16    TIME.

12:30PM  17    Q.   OKAY.  WELL, LET'S TAKE A LOOK AT THE LAST CHAIN IN THE

12:30PM  18    EMAIL, THE LAST TWO EMAILS ON THE BOTTOM OF PAGE 3.

12:30PM  19          AND I DON'T THINK THE GOVERNMENT SHOWED YOU THESE.

12:30PM  20          OKAY.  NOW, THESE ARE EMAILS FROM THE CUSTOMER SERVICE

12:30PM  21    FOLKS; RIGHT?

12:30PM  22    A.   YES.

12:30PM  23    Q.   AND BOTH OF THESE EMAILS TALK ABOUT DOCTORS CALLING

12:30PM  24    LOOKING FOR RESULTS; RIGHT?

12:31PM  25    A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2520

12:31PM    1    Q.   NOT COMPLAINING ABOUT INACCURATE RESULTS, BUT LOOKING FOR

12:31PM    2    RESULTS?

12:31PM    3    A.   CORRECT.

12:31PM    4    Q.   BECAUSE THEY HAD NOT GOTTEN THE RESULTS BACK; RIGHT?

12:31PM    5    A.   YES, THAT'S WHAT IT LOOKS LIKE.

12:31PM    6    Q.   OKAY.  NOW LET'S GO BACK UP TO THE TOP EMAIL.

12:31PM    7         AND DO YOU RECALL THAT THAT IS WHAT MR. HOLMES WAS TALKING

12:31PM    8    ABOUT IN THIS TIME PERIOD?

12:31PM    9         MAYBE IF WE LOOK AT THAT SECOND PARAGRAPH IT WILL HELP.

12:31PM   10    DO YOU SEE THERE IT SAYS, "AS FOR CURRENT STATUS OF HCG, WE ARE

12:31PM   11    WORKING IN PARALLEL TO RUN SAMPLE ON EDISON AS WELL AS

12:31PM   12    IMMULITE.  BUT WE FOUND OUT THIS MORNING THAT REAGENTS FOR

12:31PM   13    IMMULITE ARE ON ORDER AND BACK ORDERED."

12:31PM   14         DO YOU SEE THAT?

12:31PM   15    A.   UH-HUH, UH-HUH.

12:31PM   16    Q.   AND SO THIS HCG ISSUE WAS A BACKLOG ISSUE.

12:31PM   17         DO YOU RECALL THAT?

12:31PM   18    A.   I DON'T RECALL.  I DON'T RECALL FROM 2,000, NO, I DON'T

12:31PM   19    RECALL THAT.

12:32PM   20    Q.   OKAY.  DO YOU RECALL THAT THERE WERE PATIENTS THAT WERE

12:32PM   21    WAITING TO GET THE RESULTS AND THAT THAT WAS THE PROBLEM?

12:32PM   22    A.   I'M READING THAT FROM THE EMAIL THAT YOU'RE SHOWING ME,

12:32PM   23    YES.

12:32PM   24    Q.   WELL, LET'S SEE IF WE CAN HELP YOU REFRESH.  LET'S LOOK AT

12:32PM   25    13881.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2521

12:32PM   1    A.   OKAY.

12:32PM   2    Q.   AND THIS IS AN EMAIL WITH VARIOUS PEOPLE IN THE CHAIN, THE

12:32PM   3    SUBJECT OF WHICH IS INVENTORY; CORRECT?

12:32PM   4    A.   YES.

12:32PM   5    Q.   AND IT RELATES TO REAGENT INVENTORY; CORRECT?

12:32PM   6    A.   YES.

12:33PM   7    Q.   WITHIN THE CLIA LAB?

12:33PM   8    A.   YES.

12:33PM   9    Q.   FOR A NON-THERANOS MACHINE; RIGHT?

12:33PM  10    A.   YES.

12:33PM  11         MR. WADE:   OKAY.   MOVE THE ADMISSION OF 13881.

12:33PM  12         MR. BOSTIC:   NO OBJECTION.

12:33PM  13         THE COURT:   IT'S ADMITTED, AND IT MAY BE PUBLISHED.

12:33PM  14    (DEFENDANT'S EXHIBIT 13881 WAS RECEIVED IN EVIDENCE.)

12:33PM  15    BY MR. WADE:

12:33PM  16    Q.   OKAY.   LET'S GO TO THE END.

12:33PM  17         SO THIS IS MR. BALWANI FOLLOWING UP ON THAT IMMULITE

12:33PM  18    REAGENT ISSUE THAT WAS MENTIONED BY MS. HOLMES; CORRECT?

12:34PM  19    A.   YES.

12:34PM  20    Q.   AND HE'S SAYING -- HE'S ASKING WHAT IS HAPPENING; RIGHT?

12:34PM  21    A.   YES.

12:34PM  22    Q.   AND HE'S ASKING WHO WAS RESPONSIBLE BECAUSE HE JUST

12:34PM  23    DISCOVERED THAT YOU RAN OUT OF HCG REAGENT FOR THE IMMULITE;

12:34PM  24    RIGHT?

12:34PM  25    A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2522

12:34PM   1    Q.   AND THAT'S A PROBLEM BECAUSE IT'S CREATING A BACKLOG;

12:34PM   2    RIGHT?

12:34PM   3    A.   YES.

12:34PM   4    Q.   OKAY.  AND WHO IS RESPONSIBLE FOR ENSURING THAT THERE ARE

12:34PM   5    REAGENTS WITHIN THE CLIA LAB?

12:34PM   6    A.   A SUPERVISOR.

12:34PM   7    Q.   OKAY.

12:34PM   8    A.   OR A CLS, SOMETHING LIKE THAT.

12:34PM   9    Q.   OKAY.  SOMEONE UNDER YOUR GROUP?

12:34PM   10   A.   YES.

12:34PM   11   Q.   OKAY.  AND IF WE JUST GO UP THE CHAIN.

12:34PM   12        AND IF WE HAVE THE CHAIN -- I'M SORRY, YOU HAD THE RIGHT

12:35PM   13   EMAIL, MR. BENNETT.

12:35PM   14        YOU PROVIDED CLARIFICATION FOR MR. BALWANI ON WHY THERE

12:35PM   15   WAS THIS HCG BACKLOG IN THE CLIA LAB ON THE IMMULITE; RIGHT?

12:35PM   16   A.   YES.

12:35PM   17   Q.   AND YOU NOTE WHOSE RESPONSIBILITY IT WAS; RIGHT?

12:35PM   18   A.   YES.

12:35PM   19   Q.   OKAY.  JUST SO WE'RE CLEAR, THIS HAD NOTHING TO DO WITH

12:35PM   20   THE EDISON DEVICE, THIS WAS AN IMMULITE ISSUE?

12:35PM   21   A.   CORRECT.

12:35PM   22   Q.   AND A SUPPLY OR INVENTORY ISSUE; RIGHT?

12:35PM   23   A.   CORRECT.

12:35PM   24   Q.   AND LET'S GO UP JUST TO THE TOP EMAIL.  THIS IS AN EMAIL

12:35PM   25   WHERE YOU'RE HAVING A DISCUSSION WITH MR. BALWANI ABOUT ONE OF

ROSENDORFF CROSS BY MR. WADE (RES.)                          2523

12:35PM  1    YOUR SUBORDINATES; RIGHT?

12:36PM  2    A.   CORRECT.

12:36PM  3    Q.   AND ABOUT SOME CHALLENGES THAT YOU WERE HAVING IN

12:36PM  4    MANAGEMENT OF THAT SUBORDINATE; CORRECT?

12:36PM  5    A.   YES.

12:36PM  6    Q.   AND TALKING THROUGH WITH YOUR SUPERVISOR WAYS IN WHICH YOU

12:36PM  7    MIGHT WORK TO IMPROVE THAT; IS THAT FAIR?

12:36PM  8    A.   YES, YES.

12:36PM  9    Q.   OKAY.  AND THAT'S A PERFECTLY APPROPRIATE CONVERSATION TO

12:36PM  10   HAVE WITH TWO MORE SENIOR PEOPLE ABOUT A SUBORDINATE; IS IT

12:36PM  11   NOT?

12:36PM  12   A.   IN MY -- YES, IN MY OPINION.

12:36PM  13   Q.   OKAY.  I DON'T HAVE ANY MORE QUESTIONS ON THAT TOPIC, SIR.

12:37PM  14        I'D LIKE TO ASK YOU A FEW QUESTIONS, SIR, ABOUT WHAT I'M

12:37PM  15   GOING TO REFER TO AS THE SIXTH TIP POLICY.  OKAY?

12:37PM  16   A.   OKAY.

12:37PM  17   Q.   NOW, THE EDISON DEVICES HAD SIX TIPS THAT HAD RAN IN ORDER

12:37PM  18   TO PERFORM ON EACH INDIVIDUAL BLOOD SAMPLE; IS THAT CORRECT?

12:37PM  19   A.   NOT ORIGINALLY.  THE ORIGINAL EDISON DEVICES HAD THREE

12:37PM  20   TIPS.

12:37PM  21   Q.   IT HAD THREE TIPS?

12:37PM  22   A.   CORRECT.

12:37PM  23   Q.   AND THEN IT WAS MODIFIED IN EARLY 2014 TO USE SIX TIPS;

12:37PM  24   RIGHT?

12:37PM  25   A.   I BELIEVE SO.

ROSENDORFF CROSS BY MR. WADE (RES.)

| | | |
|---|---|---|
| 12:37PM | 1 | Q.   AND DO YOU RECALL THAT -- AND JUST SO THE JURY IS CLEAR, |
| 12:38PM | 2 | EACH OF THOSE TIPS ESSENTIALLY DELIVERS A RESULT; CORRECT?  OR |
| 12:38PM | 3 | WHY DON'T YOU EXPLAIN TO US HOW EACH OF THOSE SIX TIPS OPERATE |
| 12:38PM | 4 | WITHIN THE EDISON? |
| 12:38PM | 5 | A.   YEAH.  THOSE TIPS ARE -- I DON'T WANT TO GET TOO |
| 12:38PM | 6 | TECHNICAL, BUT THE TIPS ARE COATED WITH ANTIBODIES.  EACH TIP |
| 12:38PM | 7 | IS EXPOSED TO THE PATIENT SAMPLE.  THE ANTIBODIES BIND TO THE |
| 12:38PM | 8 | ANALYTE, AND THEN A SECONDARY ANTIBODY DETECTS THE PRIMARY |
| 12:38PM | 9 | ANTIBODY.  THE SECONDARY ANTIBODY IS CONJUGATED TO A |
| 12:38PM | 10 | CHLOROPHYLL, WHICH IS FLUORESCENT.  EACH TIP GIVES OUT A |
| 12:38PM | 11 | SIGNAL.  THERE ARE DIFFERENT CONFIGURATIONS.  I WON'T GO INTO |
| 12:39PM | 12 | THAT WHETHER IT'S A COMPETITIVE ELISA OR A DIRECT OR INDIRECT. |
| 12:39PM | 13 | AND ESSENTIALLY EACH TIP REPORTS OUT A RESULT IN A RELATIVE |
| 12:39PM | 14 | LIGHT UNITS AND IN CONCENTRATION. |
| 12:39PM | 15 | Q.   AND SO YOU HAVE SIX RESULTS FOR ONE SAMPLE; CORRECT? |
| 12:39PM | 16 | A.   CORRECT. |
| 12:39PM | 17 | Q.   AND THAT'S FOR A SINGLE ASSAY? |
| 12:39PM | 18 | A.   CORRECT. |
| 12:39PM | 19 | Q.   AND ACTUALLY FOR EACH ASSAY; CORRECT? |
| 12:39PM | 20 | A.   CORRECT. |
| 12:39PM | 21 | Q.   AND UNDER THE POLICY THAT THE COMPANY ADOPTED AFTER IT |
| 12:39PM | 22 | MOVED TO THE SIXTH TIP POLICY OR THE SIXTH TIP FORMAT? |
| 12:39PM | 23 | A.   YES. |
| 12:39PM | 24 | Q.   TWO RESULTS OF THOSE SIX TIPS COULD BE DISCARDED AND THEN |
| 12:39PM | 25 | THE REMAINING FOUR RESULTS FROM THE FOUR OTHER TIPS WOULD BE |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2525

12:39PM   1    AVERAGE TO PRODUCE THE RESULT; CORRECT?

12:40PM   2    A.   CORRECT.

12:40PM   3    Q.   OKAY.  AND I UNDERSTAND THAT THIS PRACTICE WHERE YOU MOVED

12:40PM   4    TO AN AVERAGE FOUR WAS SOMETHING THAT WAS DEVELOPED BY

12:40PM   5    DR. YOUNG; IS THAT CORRECT?

12:40PM   6    A.   CORRECT.

12:40PM   7    Q.   AND I UNDERSTAND THAT WAS SOMETHING THAT YOU APPROVED;

12:40PM   8    CORRECT?

12:40PM   9    A.   THERE WAS NO FORMAL PROCEDURE SOP REGARDING -- OR POLICY

12:40PM   10   REQUIRING ASSAY DETECTION.  I WAS TOLD BY DANIEL THAT THERE WAS

12:40PM   11   AN ALGORITHM INSIDE THE 3.5 THAT WOULD DO THOSE AUTOMATICALLY.

12:40PM   12   Q.   RIGHT.  BECAUSE INITIALLY IT WAS DONE MANUALLY BEFORE IT

12:40PM   13   WAS AUTOMATED; RIGHT?

12:40PM   14   A.   I BELIEVE SO.

12:40PM   15   Q.   AND THEN THAT POLICY OF AVERAGING THE FOUR AND REMOVING

12:40PM   16   THE TWO WAS AUTOMATED, YOU UNDERSTAND, WITHIN THE ALGORITHM;

12:41PM   17   RIGHT?

12:41PM   18   A.   YES.

12:41PM   19   Q.   AND YOU KNEW THAT WAS GOING TO HAPPEN?

12:41PM   20   A.   YES.

12:41PM   21   Q.   AND THAT WASN'T A SECRET; RIGHT?

12:41PM   22   A.   DANIEL TOLD ME THAT'S WHAT WAS GOING TO HAPPEN.

12:41PM   23   Q.   AND YOU APPROVED OF THAT; CORRECT?

12:41PM   24   A.   I THOUGHT IT WAS REASONABLE, YES.

12:41PM   25   Q.   OKAY.  WELL, DO YOU RECALL --

| | | |
|---|---|---|
| 12:41PM | 1 | A.   I THOUGHT IT WAS UNUSUAL.  I HADN'T REALLY HEARD OF THIS |
| 12:41PM | 2 | BEING DONE BEFORE. |
| 12:41PM | 3 | Q.   RIGHT.  DO YOU RECALL THAT YOU WERE ASKED IF THAT WAS |
| 12:41PM | 4 | SOMETHING THAT YOU APPROVED IN YOUR DEPOSITION AND YOU SAID |
| 12:41PM | 5 | YES? |
| 12:41PM | 6 | A.   YES. |
| 12:41PM | 7 | Q.   OKAY.  AND DOES THAT REMAIN TRUE TODAY? |
| 12:41PM | 8 | A.   YES. |
| 12:41PM | 9 | Q.   OKAY.  AND OTHER SCIENTISTS IN THE LAB APPROVED OF IT AS |
| 12:41PM | 10 | WELL; CORRECT? |
| 12:41PM | 11 | A.   I DON'T KNOW. |
| 12:41PM | 12 | Q.   DO YOU RECALL IN YOUR DEPOSITION THAT YOU WERE ASKED THAT |
| 12:41PM | 13 | OTHER SCIENTISTS IN THE LAB APPROVED AS WELL, CORRECT, AND YOU |
| 12:41PM | 14 | SAID YES? |
| 12:41PM | 15 | A.   I SUPPOSE SO.  I DON'T RECALL EVERY WORD OF MY DEPOSITION, |
| 12:42PM | 16 | NO. |
| 12:42PM | 17 | Q.   OKAY.  DR. PANDORI APPROVED OF IT; RIGHT? |
| 12:42PM | 18 | A.   I DON'T KNOW. |
| 12:42PM | 19 | Q.   YOU RECALL IN YOUR DEPOSITION THAT YOU SAID THAT |
| 12:42PM | 20 | DR. PANDORI APPROVED OF IT? |
| 12:42PM | 21 | A.   I DON'T KNOW. |
| 12:42PM | 22 | Q.   WHY DON'T WE TAKE A LOOK.  THIS IS GOING TO BE DX 11000. |
| 12:43PM | 23 | THE COURT:  IS THIS TO REFRESH A WITNESS'S |
| 12:43PM | 24 | RECOLLECTION? |
| 12:43PM | 25 | MR. WADE:  IT IS, YOUR HONOR.  IT'S IN ONE OF THE |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2527

12:43PM    1    YELLOW BINDERS.  IT'S YOUR DEPOSITION TESTIMONY FROM ARIZONA.

12:43PM    2           THE WITNESS:  OH, I THOUGHT WE WERE TALKING ABOUT MY

12:43PM    3    TESTIMONY YESTERDAY WITH THE GOVERNMENT.  I'M SORRY.  I

12:43PM    4    MISUNDERSTOOD WHAT YOU WERE REFERRING TO.

12:43PM    5    BY MR. WADE:

12:43PM    6    Q.   OKAY.  LET ME TRY AGAIN.

12:43PM    7         DO YOU RECALL TESTIFYING IN YOUR DEPOSITION IN ARIZONA

12:43PM    8    UNDER OATH; CORRECT?

12:43PM    9    A.   YES.

12:43PM   10    Q.   AND YOU RAISED YOUR HAND AND AGREED TO TELL THE TRUTH?

12:43PM   11    A.   YES.

12:43PM   12    Q.   OKAY.  AND DO YOU RECALL BEING ASKED WHETHER DR. PANDORI

12:43PM   13    APPROVED OF THIS AND YOU ANSWERED YES?

12:43PM   14    A.   I HONESTLY DON'T RECALL WHAT WAS DISCUSSED IN THE

12:43PM   15    DEPOSITION.  I CAN READ THROUGH THE TRANSCRIPT.

12:43PM   16    Q.   IF YOU COULD DRAW YOUR ATTENTION TO PAGE 228, LINES 18 TO

12:44PM   17    22 AND READ THEM TO YOURSELF, AND LET ME KNOW WHEN YOU'RE DONE,

12:44PM   18    DOCTOR.

12:44PM   19         (PAUSE IN PROCEEDINGS.)

12:44PM   20           THE WITNESS:  I'VE READ IT.

12:44PM   21    BY MR. WADE:

12:44PM   22    Q.   OKAY.  DOES THAT REFRESH YOUR RECOLLECTION THAT YOU

12:44PM   23    TESTIFIED THAT DR. PANDORI APPROVED OF THIS PRACTICE AS WELL?

12:44PM   24    A.   AS I SAID, I DON'T HAVE AN INDEPENDENT RECOLLECTION OF MY

12:44PM   25    DEPOSITION.  I'M JUST READING THE CONTENT, AND THAT'S WHAT IT

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2528

12:44PM   1    SAYS, YES.

12:44PM   2    Q.   AND DOES THAT REFRESH YOUR RECOLLECTION THAT THAT'S

12:44PM   3    WHAT -- THAT WAS YOUR VIEW?

12:44PM   4    A.   NO, IT DOES NOT REFRESH MY RECOLLECTION.

12:44PM   5    Q.   OKAY.  AND JUST SO WE'RE CLEAR, THIS WAS -- THIS WOULD NOT

12:44PM   6    BE A POLICY THAT WOULD BE IMPLEMENTED BY MS. HOLMES AS THE CEO

12:44PM   7    OF THE COMPANY; CORRECT?

12:44PM   8    A.   NO.

12:44PM   9    Q.   AND IT WAS IN THE CLIA LAB?

12:44PM   10   A.   YEAH.

12:44PM   11   Q.   AND IT WAS UNDER YOUR CONTROL; RIGHT?

12:45PM   12   A.   I TRIED TO CONTROL EVERYTHING THAT I POSSIBLY COULD.

12:45PM   13   Q.   RIGHT.  I UNDERSTAND.  AND YOU, UNDER THE REGULATIONS,

12:45PM   14   WERE IN CHARGE OF THE CLIA LAB?

12:45PM   15   A.   YES.

12:45PM   16   Q.   AND THIS POLICY OF THE SIXTH TIP PRACTICE IN AVERAGING

12:45PM   17   FOUR OF THOSE RESULTS WAS SOMETHING THAT WAS WELL-KNOWN TO YOU;

12:45PM   18   RIGHT?

12:45PM   19   A.   YES, YES.

12:45PM   20   Q.   AND IT WAS BEING DONE BOTH ON RESULTS AND QUALITY CONTROL;

12:45PM   21   RIGHT?

12:45PM   22   A.   YES, YES.

12:45PM   23   Q.   YES.  AND YOU APPROVED OF THAT PRACTICE; RIGHT?

12:45PM   24   A.   I DISCUSSED IT WITH DANIEL, AND I BELIEVE I AGREED AND

12:45PM   25   APPROVED IT AND DISCUSSED IT WITH HIM, YEAH.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2529

12:45PM  1    Q.   YES.  AND JUST SO YOU'RE AWARE, I BELIEVE YOU WERE ASKED A

12:45PM  2    QUESTION DURING YOUR DIRECT EXAMINATION RELATING TO WHETHER ANY

12:45PM  3    COMMERCIAL DEVICES AVERAGE CALCULATIONS; RIGHT?

12:45PM  4    A.   YES.

12:45PM  5    Q.   YES.  LET'S TAKE A LOOK AT EXHIBIT 392, WHICH IS A BIG

12:46PM  6    ONE, BUT I'M ONLY GOING TO ASK YOU ABOUT A VERY SMALL PORTION

12:46PM  7    OF IT.

12:46PM  8         LET ME KNOW WHEN YOU HAVE THAT.

12:46PM  9    A.   THIS IS THE OPERATOR'S GUIDE TO THE IMMULITE.

12:46PM  10   Q.   THIS IS THE OPERATOR'S GUIDE TO THE IMMULITE IMMUNOASSAY

12:46PM  11   SYSTEM; CORRECT?

12:46PM  12   A.   YES.

12:46PM  13   Q.   AND THIS WAS ONE OF THE DEVICES THAT WAS USED IN THE CLIA

12:46PM  14   LAB; RIGHT?

12:46PM  15   A.   YES.

12:46PM  16        MR. WADE:  I MOVE THE ADMISSION OF 392.

12:46PM  17        MR. BOSTIC:  NO OBJECTION.

12:46PM  18        THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:46PM  19   (GOVERNMENT'S EXHIBIT 392 WAS RECEIVED IN EVIDENCE.)

12:46PM  20        MR. WADE:  I THINK EVERYONE WILL BE THANKFUL WE'RE

12:46PM  21   GOING TO LOOK AT ONE PAGE OF THIS.

12:47PM  22        (LAUGHTER.)

12:47PM  23   BY MR. WADE:

12:47PM  24   Q.   I'D ASK YOU TO LOOK AT PAGE 41 OF THE EXHIBIT NUMBER THAT

12:47PM  25   IS.  LET ME KNOW WHEN YOU'RE THERE.

| | | |
|---|---|---|
| 12:47PM | 1 | A.   OKAY. |
| 12:47PM | 2 | Q.   DO YOU SEE AT THE TOP OF THAT PAGE IT TALKS ABOUT THE |
| 12:47PM | 3 | INSTRUMENT READINGS? |
| 12:47PM | 4 | DO YOU SEE THAT? |
| 12:47PM | 5 | A.   YES. |
| 12:47PM | 6 | Q.   AND IT EXCLUDES CERTAIN OF THE DARK COUNTS FROM ITS |
| 12:47PM | 7 | CALCULATION; CORRECT? |
| 12:47PM | 8 | A.   YES. |
| 12:47PM | 9 | Q.   AND THEN IT AVERAGES FIVE INDIVIDUAL READINGS; CORRECT? |
| 12:47PM | 10 | A.   YES. |
| 12:47PM | 11 | Q.   I DON'T HAVE ANY OTHER QUESTIONS ABOUT THAT. |
| 12:47PM | 12 | A.   OKAY. |
| 12:47PM | 13 | Q.   DO YOU RECALL YOU WERE ASKED SOME QUESTIONS ABOUT DEMOS; |
| 12:48PM | 14 | RIGHT? |
| 12:48PM | 15 | A.   YES. |
| 12:48PM | 16 | Q.   AND I JUST WANT TO MAKE SURE THE RECORD IS CLEAR, YOU WERE |
| 12:48PM | 17 | NOT IN THE ROOM WITH ANY VIP'S OR INVESTORS? |
| 12:48PM | 18 | A.   NO, I WAS NOT. |
| 12:48PM | 19 | Q.   THE ONLY QUESTION I HAVE FOR YOU RELATING TO THAT IS YOU |
| 12:48PM | 20 | WEREN'T CONCERNED ABOUT THE RESOURCES ASSIGNED TO DEMOS, THAT |
| 12:48PM | 21 | THEY WEREN'T DISRUPTIVE IN THE LAB; RIGHT? |
| 12:48PM | 22 | A.   NO, NOT AT ALL. |
| 12:49PM | 23 | Q.   WE'VE TALKED A LOT AT DIFFERENT TIMES ABOUT THE DOCTOR |
| 12:49PM | 24 | INQUIRIES AND THE HANDLING OF THE DOCTOR INQUIRIES. |
| 12:49PM | 25 | DO YOU RECALL THAT? |

ROSENDORFF CROSS BY MR. WADE (RES.)                    2531

12:49PM   1    A.   YES.

12:49PM   2    Q.   AND DO YOU RECALL THAT THERE WERE MULTIPLE WAYS THAT

12:49PM   3    THERANOS HAD FOR DOCTORS TO RAISE QUESTIONS; RIGHT?

12:49PM   4         WELL, THEY HAD A CUSTOMER SERVICE LINE; RIGHT?

12:49PM   5    A.   YES, YES.

12:49PM   6    Q.   AND DID THAT GO TO YOUR DESK AND DID YOU PICK UP THE

12:49PM   7    PHONE?

12:49PM   8    A.   NO.

12:49PM   9    Q.   THANKFULLY.

12:49PM   10   A.   SURE.

12:49PM   11   Q.   THAT COULD BE A TOUGH JOB; RIGHT?

12:49PM   12   A.   SURE.

12:49PM   13   Q.   AND YOU COULD BE FIELDING A LOT OF QUESTIONS; RIGHT?

12:49PM   14   A.   I STILL DO THAT AT MY CURRENT JOB.

12:49PM   15   Q.   WHAT IS YOUR CURRENT JOB?

12:49PM   16   A.   I'M A LAB DIRECTOR AT THE VALENCIA BRANCH LABORATORY.

12:49PM   17   IT'S A JOINT VENTURE BETWEEN PERKIN ELMER AND THE CALIFORNIA

12:49PM   18   DEPARTMENT OF PUBLIC HEALTH FOR COVID TESTING.

12:50PM   19   Q.   AND YOU STILL FIELD --

12:50PM   20   A.   YES.

12:50PM   21   Q.   -- QUESTIONS TODAY?

12:50PM   22   A.   YES.

12:50PM   23   Q.   BUT FOR THE MOST PART THERE ARE A LOT OF -- THERE ARE

12:50PM   24   CUSTOMER SERVICE REPRESENTATIVES WHO ARE SUPPOSED TO KIND OF

12:50PM   25   SEPARATE THE WHEAT FROM THE SHAFT; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2532

12:50PM    1      A.   IDEALLY, YES.

12:50PM    2      Q.   AND THEY RAISED THE ISSUES THAT ARE APPROPRIATE FOR YOUR

12:50PM    3      CONSIDERATION; RIGHT?

12:50PM    4      A.   YES.

12:50PM    5      Q.   OKAY.  AND THERE ARE ALSO SALES REPRESENTATIVES THAT ARE

12:50PM    6      OFTEN OUT IN THE FIELD AND THEY'RE DEALING WITH DOCTORS; RIGHT?

12:50PM    7      A.   YES.  LUCKILY FOR COVID, IT'S NOT SOMETHING THAT YOU HAVE

12:50PM    8      TO GO OUT AND SELL TO PEOPLE.

12:50PM    9      Q.   YEAH.

12:50PM   10      A.   IT'S SOMETHING THAT IS REALLY NEEDED.

12:50PM   11      Q.   SO YOU'RE NOT DOING THAT IN YOUR CURRENT JOB?

12:50PM   12      A.   NO.

12:50PM   13      Q.   BUT IN THERANOS, AT THERANOS THEY WERE OUT AS PART OF

12:50PM   14      THEIR COMMERCIAL EFFORTS AND THEY HAD PEOPLE OUT TALKING TO

12:50PM   15      DOCTORS; RIGHT?

12:50PM   16      A.   I WASN'T REALLY AWARE OF THE SALES, THE THERANOS SALES

12:50PM   17      FORCE AND WHAT THE ACTIVITIES WERE IN THAT REGARD.  I WASN'T

12:50PM   18      INVOLVED.

12:51PM   19      Q.   WELL, YOU TALKED ABOUT, YOU MAY RECALL, ON TUESDAY ABOUT

12:51PM   20      ALL OF THE PEOPLE AT THERANOS WHO WERE CONTRIBUTING TO MAKING

12:51PM   21      THE SYSTEM WORK; RIGHT?

12:51PM   22          DO YOU RECALL THAT?

12:51PM   23      A.   YES.

12:51PM   24      Q.   AND THAT INVOLVED A LOT OF DIFFERENT PEOPLE WHO WOULD TAKE

12:51PM   25      INPUTS FROM DIFFERENT CUSTOMERS; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2533

12:51PM   1    A.   YES.

12:51PM   2    Q.   AND SOMETIMES THOSE ISSUES WOULD BE APPROPRIATE FOR YOU;

12:51PM   3    RIGHT?

12:51PM   4    A.   YES.

12:51PM   5    Q.   AND SOMETIMES THEY WOULDN'T BE APPROPRIATE FOR YOU; IS

12:51PM   6    THAT RIGHT?

12:51PM   7    A.   YES, YES.

12:51PM   8    Q.   AND WHEN IT CAME TO THE INTERPRETATION OF THE TEST

12:51PM   9    RESULTS, THAT IS A THING THAT YOU NEEDED TO BE INVOLVED IN;

12:51PM   10   RIGHT?

12:51PM   11   A.   YES.

12:51PM   12   Q.   BECAUSE THERE'S ACTUALLY A SPECIFIC REGULATION WITHIN THE

12:51PM   13   FEDERAL CLIA LAB REGULATIONS THAT RELATE TO THE INTERPRETATION

12:51PM   14   OF LAB RESULTS; CORRECT?

12:51PM   15   A.   CORRECT.

12:51PM   16   Q.   BUT THEY DON'T REQUIRE YOU TO DEAL WITH EACH AND EVERY

12:51PM   17   THING THAT COMES UP; RIGHT?

12:51PM   18   A.   I BELIEVE THE REGULATIONS SAY THAT THE LABORATORY MUST

12:51PM   19   MAKE AVAILABLE TO CLIENTS CONSULTATION REGARDING INTERPRETATION

12:52PM   20   OF TEST RESULTS.  SOMETHING TO THAT EFFECT.

12:52PM   21       IN OTHER WORDS, IF SOMEBODY CALLS AND WANTED TO KNOW HOW

12:52PM   22   YOU INTERPRET A TEST, A LAB DIRECTOR WOULD HANDLE THAT, YEAH.

12:52PM   23   Q.   RIGHT.  THE REGULATION REQUIRES THAT THE LAB DIRECTOR MUST

12:52PM   24   ENSURE THAT CONSULTATION IS AVAILABLE TO THE LABORATORY'S

12:52PM   25   CLIENTS ON MATTERS RELATING TO THE QUALITY OF THE TEST RESULTS

ROSENDORFF CROSS BY MR. WADE (RES.)                    2534

12:52PM   1    REPORTED AND THEIR INTERPRETATION CONCERNING SPECIFIC PATIENT

12:52PM   2    CONDITIONS; RIGHT?

12:52PM   3    A.   ARE YOU READING THE STATUTE?

12:52PM   4    Q.   I AM.  I WOULD BE HAPPY TO SHOW IT TO YOU.

12:52PM   5    A.   THAT'S FINE.  IT SOUNDS LIKE YOU ARE, YEAH.

12:52PM   6    Q.   AND DOES THAT SOUND ABOUT RIGHT?

12:52PM   7    A.   YES.

12:52PM   8    Q.   AND SO THE REQUIREMENT IS THAT YOU NEED TO BE AVAILABLE TO

12:52PM   9    DO THAT; RIGHT?

12:52PM  10    A.   YES, YES.

12:52PM  11    Q.   AND NOT THAT YOU HAVE TO BE THE ONLY AND EXCLUSIVE PERSON

12:52PM  12    WHO DOES IT; RIGHT?

12:53PM  13    A.   THAT'S RIGHT.

12:53PM  14    Q.   AND SOMETIMES DOCTORS WOULD RAISE ISSUES AND -- OR HAVE

12:53PM  15    QUESTIONS, AND IT WOULDN'T PROMPT -- AND THEY WOULDN'T HAVE

12:53PM  16    MUCH VALIDITY TO IT OR IT WOULDN'T BE OF REAL CONCERN TO YOU;

12:53PM  17    CORRECT?

12:53PM  18    A.   BY THE TIME THAT THEY WERE ESCALATED TO ME, THE VAST

12:53PM  19    MAJORITY OF THEM POINTED TO SERIOUS ISSUES.

12:53PM  20    Q.   OKAY.  OKAY.

12:53PM  21         WELL, LET'S LOOK AT ONE OF THEM.  TAKE A LOOK AT 7462.

12:53PM  22    A.   I'M SORRY.  AGAIN, WHAT VOLUME AND WHAT BINDER?

12:54PM  23    Q.   EXHIBIT 7462, WHICH SHOULD BE IN THE VOLUME 1 OF THE BLACK

12:54PM  24    BINDER.

12:54PM  25    A.   7462.  YES, I HAVE THAT.

ROSENDORFF CROSS BY MR. WADE (RES.)                                     2535

12:54PM   1    Q.   DO YOU HAVE THAT IN FRONT OF YOU?

12:54PM   2    A.   YES.

12:54PM   3    Q.   AND YOU SEE THAT AS AN EMAIL RELATING TO A QUESTION THAT A

12:54PM   4    DOCTOR POSED TO YOU?

12:54PM   5    A.   YES.

12:54PM   6    Q.   AND DO YOU SEE THAT?

12:54PM   7    A.   YES.

12:54PM   8    Q.   OKAY.  AND --

12:54PM   9         I MOVE THE ADMISSION OF 7462.

12:54PM  10              MR. BOSTIC:  NO OBJECTION.

12:54PM  11              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:54PM  12         (DEFENDANT'S EXHIBIT 7462 WAS RECEIVED IN EVIDENCE.)

12:54PM  13    BY MR. WADE:

12:54PM  14    Q.   OKAY.  AND WE'LL GO VERY QUICKLY THROUGH THIS.  BUT LET'S

12:54PM  15    JUST, TO MAKE SURE EVERYONE IS ON THE SAME PAGE, LET'S JUST GO

12:55PM  16    TO THE LAST EMAIL.

12:55PM  17         DO YOU SEE THAT?

12:55PM  18    A.   YES.

12:55PM  19    Q.   AND THIS -- AGAIN, WE'VE SEEN MANY OF THESE WHERE THE

12:55PM  20    CUSTOMER SERVICE REPRESENTATIVE FIELDS A CALL?

12:55PM  21    A.   YES.

12:55PM  22    Q.   AND THIS ONE SAYS THAT THE PARTICULAR DOCTOR IS

12:55PM  23    QUESTIONING THE RESULTS.

12:55PM  24         DO YOU SEE THAT?

12:55PM  25    A.   AND HE WOULD LIKE TO BE CALLED ABOUT THE RESULTS, YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2536

12:55PM    1     Q.   AND THIS IS OF A LIPID PANEL?

12:55PM    2     A.   YES.

12:55PM    3     Q.   AND THIS IS ESCALATED TO YOU IN THE FIRST INSTANCE;

12:55PM    4     CORRECT?

12:55PM    5     A.   YES.

12:55PM    6     Q.   AND CONTACT INFORMATION IS PROVIDED.  DO YOU SEE THAT?

12:55PM    7     A.   YES.

12:55PM    8     Q.   AND SOME INFORMATION IS GATHERED THROUGHOUT THE COURSE OF

12:55PM    9     THIS EMAIL; CORRECT?

12:55PM   10     A.   YES.

12:55PM   11     Q.   AND YOU'RE GETTING UP TO SPEED ON THE ISSUE.  IS THAT A

12:56PM   12     FAIR SUMMARY OF THE COUPLE OF EMAILS?

12:56PM   13     A.   YES.

12:56PM   14     Q.   AND LET'S GO TO THE FIRST PAGE.

12:56PM   15          AND AT THE BOTTOM DO YOU SEE IT SAYS NISHIT DOSHI?

12:56PM   16     A.   YES.

12:56PM   17     Q.   AND LET'S GO OVER TO THE EMAIL THAT CARRIES OVER TO THE

12:56PM   18     NEXT PAGE, JUST THE TOP THERE.

12:56PM   19          HE HAD FORWARDED ALONG SOME OF THESE COMMUNICATIONS.

12:56PM   20          HE SAID, "SUNNY, I AM NOT SURE IF YOU READ THIS ALREADY.

12:56PM   21          "WE ARE CONFIDENT ABOUT OUR LIPID PANEL RESULTS BASED ON

12:56PM   22     THE DAILY RUNS WHERE WE COMPARE FINGERSTICK SAMPLES TO NEAT

12:56PM   23     VENOUS (PREDICATE)."

12:56PM   24          DO YOU SEE THAT?

12:56PM   25     A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2537

12:56PM   1    Q.   THERE WAS A COMPARISON TESTING; RIGHT?

12:56PM   2    A.   IT LOOKS THAT WAY.

12:56PM   3    Q.   YEAH.  AND TO ASSURE THE ACCURACY OF THE TEST; RIGHT?

12:57PM   4    A.   YES.

12:57PM   5    Q.   OKAY.  AND IF YOU GO UP TO THE NEXT EMAIL MR. BALWANI

12:57PM   6    FOLLOWS UP WITH YOU?

12:57PM   7    A.   YES.

12:57PM   8    Q.   AND HE DOESN'T CALL THE DOCTOR DIRECTLY HIMSELF; RIGHT?

12:57PM   9    A.   CORRECT.

12:57PM  10    Q.   AND HE SAYS, "WE NEED TO CALL THIS DOCTOR AND BE A BIT

12:57PM  11    MORE FIRM ABOUT OUR PERFORMANCE.  WE CAN DO A REDRAW, BUT HIS

12:57PM  12    IGNORANT COMMENTS ARE NOT OK.  YOU CAN EXPLAIN TO HIM WE RUN

12:57PM  13    THOUSANDS OF SAMPLES AND OUR SAMPLE TRACKING IS VERY TIGHT."

12:57PM  14        DO YOU SEE THAT?

12:57PM  15    A.   YES.

12:57PM  16    Q.   BUT HE ALSO SAYS THAT, "WE CAN DO A REDRAW FOR NO CHARGE

12:57PM  17    TO THE PATIENT, NO PROBLEMS."

12:57PM  18        RIGHT?

12:57PM  19    A.   YES.

12:57PM  20    Q.   ULTIMATELY THE PATIENT SUPPOSED TO --

12:57PM  21    A.   YES.

12:57PM  22    Q.   OKAY.  LET'S GO UP TO THE NEXT CHAIN.

12:58PM  23        AND YOU CALLED THE DOCTOR IN FACT; RIGHT?

12:58PM  24    A.   YES.

12:58PM  25    Q.   AND YOU REPORTED BACK THAT YOU'RE EMPHATIC WITH DR. CHEN

| 12:58PM | 1 | REGARDING OUR RIGOROUS VALIDATION AND QUALITY PROCESS; RIGHT? |
|---|---|---|
| 12:58PM | 2 | A.   YES. |
| 12:58PM | 3 | Q.   AND YOU BELIEVED THAT AT THE TIME; RIGHT? |
| 12:58PM | 4 | A.   YES. |
| 12:58PM | 5 | Q.   AND YOU SAID THAT, "I DID NOT AGREE WITH ANY OF DR. CHEN'S |
| 12:58PM | 6 | INSINUATIONS." |
| 12:58PM | 7 | RIGHT? |
| 12:58PM | 8 | A.   YES. |
| 12:58PM | 9 | Q.   AND THEN YOU SAID, "IN MY EXPERIENCE THERE ARE ALWAYS A |
| 12:58PM | 10 | HANDFUL OF M.D.'S WHO REFUSE TO ACKNOWLEDGE SCIENTIFIC DATA |
| 12:58PM | 11 | ABOUT THEIR PATIENTS." |
| 12:58PM | 12 | DO YOU SEE THAT? |
| 12:58PM | 13 | A.   YES. |
| 12:58PM | 14 | Q.   BUT YOU REVIEWED ALL OF THE RELEVANT INFORMATION; RIGHT? |
| 12:58PM | 15 | A.   YES. |
| 12:58PM | 16 | Q.   AND THE CTN IMAGE; RIGHT? |
| 12:58PM | 17 | A.   YES. |
| 12:58PM | 18 | Q.   AND THERE'S A PICTURE OF BLOOD SAMPLE THAT IS TAKEN IN THE |
| 12:58PM | 19 | MACHINE? |
| 12:58PM | 20 | A.   CORRECT. |
| 12:58PM | 21 | Q.   AND YOU CAN GO AND LOOK AT THAT TO MAKE SURE THE SAMPLE |
| 12:58PM | 22 | HAS INTEGRITY; RIGHT? |
| 12:58PM | 23 | A.   YES. |
| 12:58PM | 24 | Q.   AND YOU DID THAT? |
| 12:58PM | 25 | A.   YES. |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2539

| | | |
|---|---|---|
| 12:58PM | 1 | Q.   AND THOSE WERE CERTAIN IN THE LIS; RIGHT? |
| 12:58PM | 2 | A.   I THINK SO.  I DON'T RECALL. |
| 12:59PM | 3 | Q.   OKAY.  AND YOU LOOKED AT THAT AND YOU LOOKED AT THE QC |
| 12:59PM | 4 | DATA; RIGHT? |
| 12:59PM | 5 | A.   YES. |
| 12:59PM | 6 | Q.   AND THAT WAS PERFORMING? |
| 12:59PM | 7 | A.   YES. |
| 12:59PM | 8 | Q.   CORRECT? |
| 12:59PM | 9 | AND SO THAT WAS THE BASIS FOR YOUR COMFORT IN DEFENDING |
| 12:59PM | 10 | THOSE RESULTS; IS THAT CORRECT? |
| 12:59PM | 11 | A.   YES. |
| 12:59PM | 12 | Q.   OKAY.  AND LET'S JUST GO TO THE EMAIL AT THE TOP. |
| 12:59PM | 13 | AND HE THANKS YOU FOR DOING THIS. |
| 12:59PM | 14 | HE SAYS HE APPRECIATES IT.  AND HE SAYS, "SOME WILL ALWAYS |
| 12:59PM | 15 | BE DOUBTERS -- HAPPENS WITH NEW TECHNOLOGY." |
| 12:59PM | 16 | DO YOU SEE THAT? |
| 12:59PM | 17 | A.   YES. |
| 12:59PM | 18 | MR. WADE:  AND THIS MIGHT BE A GOOD PLACE TO BREAK, |
| 12:59PM | 19 | YOUR HONOR. |
| 12:59PM | 20 | THE COURT:  LET'S DO THAT.  THANK YOU. |
| 12:59PM | 21 | LADIES AND GENTLEMEN, WE'LL TAKE OUR NOON -- EXCUSE ME, |
| 12:59PM | 22 | OUR RECESS FOR THE WEEKEND.  WE'LL RESUME AGAIN ON TUESDAY, |
| 12:59PM | 23 | TUESDAY NEXT AT 9:00 A.M. |
| 12:59PM | 24 | LADIES AND GENTLEMEN, PLEASE RECALL THE ADMONITION, |
| 12:59PM | 25 | PLEASE.  YOU MUST NOT COMMUNICATE WITH ANYONE IN ANY WAY ABOUT |

2540

ROSENDORFF CROSS BY MR. WADE (RES.)

| | | |
|---|---|---|
| 12:59PM | 1 | THIS CASE, AND YOU MUST IGNORE ANY INFORMATION ABOUT THE CASE |
| 12:59PM | 2 | THAT YOU MIGHT SEE WHILE BROWSING THE INTERNET OR ANY OF YOUR |
| 01:00PM | 3 | SOCIAL MEDIA FEEDS. |
| 01:00PM | 4 | PLEASE ALSO DO NOT -- PLEASE IGNORE RATHER, PLEASE IGNORE |
| 01:00PM | 5 | ANY MEDIA THAT YOU MIGHT SEE OR COME ACROSS DURING THE WEEKEND. |
| 01:00PM | 6 | IF YOU SEE SOMETHING IN THE NEWSPAPER OR THE TELEVISION OR |
| 01:00PM | 7 | NEWSPAPER OR LISTEN TO SOMETHING, PLEASE TURN AWAY AND TURN THE |
| 01:00PM | 8 | DEVICE OFF. |
| 01:00PM | 9 | I'LL ASK YOU AGAIN TUESDAY NEXT WHETHER OR NOT YOU'VE HAD |
| 01:00PM | 10 | OCCASION TO SUFFER ANY ADDITIONAL INFORMATION ABOUT THE CASE, |
| 01:00PM | 11 | OTHER THAN WHAT YOU'VE HEARD HERE. |
| 01:00PM | 12 | OTHER THAN THAT, PLEASE ENJOY THE WEEKEND AND HAVE A GOOD |
| 01:00PM | 13 | WEEKEND, AND WE'LL SEE YOU NEXT WEEK.  THANK YOU. |
| 01:00PM | 14 | YOU MAY STAND DOWN, DOCTOR.  THANK YOU. |
| 01:01PM | 15 | (JURY OUT AT 1:01 P.M.) |
| 01:01PM | 16 | THE COURT:  PLEASE BE SEATED.  THANK YOU. |
| 01:01PM | 17 | THANK YOU.  THE RECORD SHOULD REFLECT OUR JURY HAS LEFT |
| 01:01PM | 18 | FOR THE WEEKEND AND DR. ROSENDORFF HAS LEFT THE COURTROOM. |
| 01:01PM | 19 | ALL COUNSEL AND THE DEFENDANT ARE PRESENT. |
| 01:01PM | 20 | ANYTHING FURTHER BEFORE WE BREAK? |
| 01:01PM | 21 | MR. BOSTIC:  VERY BRIEFLY, YOUR HONOR. |
| 01:01PM | 22 | JUST FOR PLANNING AND HOUSEKEEPING PURPOSES NEXT WEEK, IF |
| 01:01PM | 23 | WE COULD HAVE AN ESTIMATE AS TO HOW MUCH LONGER THE DEFENSE HAS |
| 01:01PM | 24 | WITH THIS WITNESS? |
| 01:01PM | 25 | WE HAVE OUT-OF-TOWN WITNESSES THAT WE'RE TRYING TO PLAN |

```
01:01PM   1    THEIR TRAVEL.

01:01PM   2            THE COURT:  SURE.  MR. WADE, CAN YOU HELP US WITH

01:01PM   3    THAT QUESTION?

01:01PM   4            MR. WADE:  THE SHORT ANSWER IS YES.  THE QUESTION IS

01:02PM   5    WHEN.

01:02PM   6       MR. BOSTIC RAISED THAT.  I SUGGEST THAT WE CONFER OVER THE

01:02PM   7    WEEKEND.  I UNDERSTAND THAT NEED, AND WE WILL GIVE GUIDANCE.  I

01:02PM   8    WOULD EXPECT THAT WE'LL TAKE PROBABLY ALL OF THE DAY ON

01:02PM   9    TUESDAY.

01:02PM  10            THE COURT:  OKAY.  IS THAT HELPFUL?

01:02PM  11            MR. BOSTIC:  THAT'S HELPFUL TO NOTE, YOUR HONOR.

01:02PM  12    THANK YOU.

01:02PM  13            THE COURT:  THANK YOU.

01:02PM  14            MR. WADE:  BUT AS I GO THROUGH I'LL STAY IN

01:02PM  15    COMMUNICATION WITH THE GOVERNMENT ON THAT.  I WANT TO MAKE SURE

01:02PM  16    THAT THEY'RE ABLE TO GIVE THEIR WITNESSES AS MUCH NOTICE AS

01:02PM  17    NECESSARY.

01:02PM  18            THE COURT:  THANK YOU.  I APPRECIATE THAT

01:02PM  19    COOPERATION.  PLEASE COMMUNICATE WITH THE COURT THROUGH

01:02PM  20    MS. KRATZMANN IF THERE'S ANY ISSUE THAT COMES UP THAT YOU FEEL

01:02PM  21    YOU WOULD LIKE TO MEET IN ADVANCE OF TUESDAY OR TUESDAY MORNING

01:02PM  22    OR ANY OTHER ISSUE.

01:02PM  23            MR. WADE:  THE GOVERNMENT -- WE'VE BEEN IN CONTINUED

01:02PM  24    COMMUNICATIONS ON THESE ISSUES AND PLEDGE TO HAVE MORE OVER THE

01:02PM  25    WEEKEND.
```

01:02PM  1        DOES THE COURT HAVE A PREFERENCE IF WE FEEL LIKE ISSUES

01:02PM  2    NEED TO BE RAISED JUST IN THE IMMEDIATE SCHEDULING PERIOD ON

01:03PM  3    MONDAY AND TUESDAY, WOULD THE COURT HAVE A PREFERENCE TO DO

01:03PM  4    THAT ON MONDAY OR TUESDAY?

01:03PM  5            THE COURT:  WELL, I THINK OUR CAL --

01:03PM  6        MS. KRATZMANN, CAN YOU REMIND US OF OUR CALENDAR ON

01:03PM  7    MONDAY?  I THINK WE HAVE A MATTER IN THE MORNING.

01:03PM  8            THE CLERK:  WE HAVE A MATTER IN THE MORNING AT 10:00

01:03PM  9    AND THEN YOU HAVE THE AFTERNOON PROBABLY FROM 1:30 TO 3:00,

01:03PM  10    3:15.

01:03PM  11        AFTER THAT YOU WOULD BE AVAILABLE.

01:03PM  12            MR. WADE:  WOULD IT BE THE COURT'S PREFERENCE TO DO

01:03PM  13    IT LATE IN THE AFTERNOON ON MONDAY IF THE GOVERNMENT WANTS TO

01:03PM  14    RAISE ISSUES OR SHOULD WE DO IT IN THE MORNING?  EITHER ONE IS

01:03PM  15    FINE BY THE -- FROM THE DEFENSE.

01:03PM  16            MR. BOSTIC:  YOUR HONOR, ON THAT POINT, WE WILL BE

01:03PM  17    GUIDED BY THE COURT.

01:03PM  18        UNLESS THE DEFENSE BELIEVES OTHERWISE, I DON'T THINK THESE

01:03PM  19    ISSUES WILL REQUIRE MORE TIME THAN WOULD BE AVAILABLE TUESDAY

01:03PM  20    MORNING.

01:03PM  21        SO I WOULD SUGGEST THAT WE HANDLE IT TUESDAY MORNING

01:03PM  22    UNLESS THESE ISSUES EXPAND DURING MY CONVERSATIONS WITH

01:04PM  23    MR. WADE OVER THE WEEKEND.

01:04PM  24            MR. WADE:  THAT SOUNDS LIKE A GOOD IDEA.  IF WE

01:04PM  25    THINK THERE'S ANY DANGER, WHY DON'T WE ADVISE THE COURT AND

01:04PM   1      COME IN MONDAY AFTERNOON.

01:04PM   2              THE COURT:  I APPRECIATE THAT.  SO THE DEFAULT WOULD

01:04PM   3      BE WE COULD DO ANYTHING ON TUESDAY, AND IF NOT, YOU FOLKS WILL

01:04PM   4      TALK, AND YOU'LL LET MS. KRATZMANN KNOW, AND WE'LL SCHEDULE

01:04PM   5      ACCORDINGLY.

01:04PM   6              MR. BOSTIC:  YES, YOUR HONOR.

01:04PM   7              THE COURT:  GREAT.  ALL RIGHT.

01:04PM   8              MR. WADE:  THANK YOU, YOUR HONOR.  HAVE A GOOD

01:04PM   9      WEEKEND.

01:04PM  10              THE COURT:  HAVE A GOOD WEEKEND.

01:04PM  11              THE CLERK:  COURT IS ADJOURNED.

01:04PM  12          (COURT ADJOURNED AT 1:04 P.M.)

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8   UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9   CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10  HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076
17

18       _____
19       LEE-ANNE SHORTRIDGE, CSR, CRR
         CERTIFICATE NUMBER 9595
20

21            DATED:  OCTOBER 1, 2021

22

23

24

25

2544

1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                         SAN JOSE DIVISION

5

    UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                    )
                    PLAINTIFF,       )   SAN JOSE, CALIFORNIA
7                                    )
            VS.                      )   VOLUME 15
8                                    )
    ELIZABETH A. HOLMES,             )   OCTOBER 5, 2021
9                                    )
                    DEFENDANT.       )   PAGES 2544 - 2774
10   _____)

11                  TRANSCRIPT OF TRIAL PROCEEDINGS

12            BEFORE THE HONORABLE EDWARD J. DAVILA
                  UNITED STATES DISTRICT JUDGE
13
    A P P E A R A N C E S:
14

15   FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
                           BY:  JOHN C. BOSTIC
                                JEFFREY B. SCHENK
16                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA 95113
17
                           BY:  ROBERT S. LEACH
18                              KELLY VOLKAR
                           1301 CLAY STREET, SUITE 340S
19                         OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

     OFFICIAL COURT REPORTERS:
22                         IRENE L. RODRIGUEZ, CSR, RMR, CRR
                           CERTIFICATE NUMBER 8074
23                         LEE-ANNE SHORTRIDGE, CSR, CRR
                           CERTIFICATE NUMBER 9595
24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25             TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        A P P E A R A N C E S: (CONT'D)

 2

 3    FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
 4                                  LANCE A. WADE
                                    KATHERINE TREFZ
 5                                  RICHARD CLEARY
                                    J.R. FLEURMONT
 6                                  ANDREW LEMENS
                               725 TWELFTH STREET, N.W.
 7                             WASHINGTON, D.C. 20005

 8                             LAW OFFICE OF JOHN D. CLINE
                               BY:  JOHN D. CLINE
 9                             ONE EMBARCADERO CENTER, SUITE 500
                               SAN FRANCISCO, CALIFORNIA 94111
10

11    ALSO PRESENT:            FEDERAL BUREAU OF INVESTIGATION
                               BY:  ADELAIDA HERNANDEZ
12
                               OFFICE OF THE U.S. ATTORNEY
13                             BY:  LAKISHA HOLLIMAN, PARALEGAL
                                    MADDI WACHS, PARALEGAL
14
                               WILLIAMS & CONNOLLY
15                             BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

16                             TBC
                               BY:  BRIAN BENNETT, TECHNICIAN
17

18

19

20

21

22

23

24

25
```

1

2                              INDEX OF PROCEEDINGS

3        GOVERNMENT'S:

4        **ADAM ROSENDORFF**
         CROSS-EXAM BY MR. WADE (RES.)              P. 2590
5        REDIRECT EXAM BY MR. BOSTIC                P. 2721

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX OF EXHIBITS

|  |  | IDENT. | EVIDENCE |
|---|---|---|---|
| GOVERNMENT'S: | | | |
| 1541 | | | 2603 |
| 1556 | | | 2611 |
| 1559 | | | 2612 |
| 1562 | | | 2613 |
| 5419 | | | 2748 |
| 5418 | | | 2751 |
| 5420 | | | 2758 |
| 5421 | | | 2765 |
| 5422 | | | 2768 |
| | | | |
| DEFENDANT'S: | | | |
| 12607 | | | 2626 |
| 13891 | | | 2631 |
| 13893 | | | 2633 |
| 12764 | | | 2638 |
| 7490 | | | 2640 |
| 9907 | | | 2648 |
| 12587 | | | 2652 |
| 13888 | | | 2659 |
| 13887 | | | 2666 |
| 13756 | | | 2675 |
| 13753 | | | 2676 |
| 13754 | | | 2677 |
| 12913 | | | 2681 |
| 12916 | | | 2686 |

|   |   |   |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    OCTOBER 5, 2021 |
| | 2 | P R O C E E D I N G S |
| 08:13AM | 3 | (COURT CONVENED AT 8:13 A.M.) |
| 08:13AM | 4 | (JURY OUT AT 8:13 A.M.) |
| 08:13AM | 5 | THE COURT:  LET'S CALL OUR MATTER 18-58, |
| 08:13AM | 6 | UNITED STATES VERSUS HOLMES. |
| 08:13AM | 7 | GOOD MORNING.  WE'RE WITH COUNSEL OUTSIDE OF THE PRESENCE |
| 08:13AM | 8 | OF THE JURY. |
| 08:13AM | 9 | LET ME HAVE COUNSEL IDENTIFY HIMSELF, PLEASE. |
| 08:13AM | 10 | MR. BOSTIC:  GOOD MORNING, YOUR HONOR. |
| 08:13AM | 11 | JOHN BOSTIC FOR THE UNITED STATES.  I'M JOINED BY |
| 08:13AM | 12 | JEFF SCHENK, ROBERT LEACH, AND KELLY VOLKAR. |
| 08:13AM | 13 | THE COURT:  THANK YOU. |
| 08:13AM | 14 | MR. WADE:  GOOD MORNING, YOUR HONOR. |
| 08:13AM | 15 | LANCE WADE ON BEHALF OF MS. HOLMES.  WITH ME THIS MORNING |
| 08:13AM | 16 | ARE MR. DOWNEY, MS. TREFZ, MR. CLEARY, MR. CLINE, AND |
| 08:13AM | 17 | MS. HOLMES IS PRESENT AS WELL. |
| 08:13AM | 18 | THE COURT:  THANK YOU.  GOOD MORNING EVERYONE. |
| 08:13AM | 19 | SO WE'RE MEETING THIS MORNING REGARDING SOME EVIDENTIARY |
| 08:14AM | 20 | QUESTIONS.  I THINK, MR. BOSTIC, YOU EMAILED MS. KRATZMANN AND |
| 08:14AM | 21 | SAID WE SHOULD MEET. |
| 08:14AM | 22 | MR. BOSTIC:  YES, YOUR HONOR.  AND WE PREVIOUSLY |
| 08:14AM | 23 | FLAGGED THESE ISSUES FOR THE COURT AND INDICATED WE MIGHT NEED |
| 08:14AM | 24 | THE COURT'S GUIDANCE ON HOW TO HANDLE THEM. |
| 08:14AM | 25 | THESE ARE ISSUES RELATING TO DR. ROSENDORFF'S |

08:14AM 1    POST-THERANOS EMPLOYMENT.  SINCE LEAVING THERANOS, HE HAS BEEN

08:14AM 2    EMPLOYED BY A NUMBER OF LABORATORIES, INCLUDING THREE IN

08:14AM 3    PARTICULAR THAT I UNDERSTAND THE DEFENSE MIGHT SEEK TO ELICIT

08:14AM 4    TESTIMONY FROM HIM ABOUT DURING CROSS.

08:14AM 5         IT'S THE GOVERNMENT'S POSITION THAT, FOR VARIOUS REASONS,

08:14AM 6    THAT TESTIMONY IS NOT ADMISSIBLE AND THE EVIDENCE THAT THE

08:14AM 7    DEFENSE SEEKS TO INTRODUCE IS NOT ADMISSIBLE UNDER 403, 608 AND

08:14AM 8    401.

08:14AM 9         I'M HAPPY TO ADDRESS THOSE DIFFERENT CATEGORIES OF

08:14AM 10   EVIDENCE IN TURN, BUT I'M NOT SURE WHETHER THE COURT WOULD FIND

08:14AM 11   THAT MORE HELPFUL OR HEARING FROM THE DEFENSE ON WHY, AS THE

08:15AM 12   PROPONENT, THE EVIDENCE IS --

08:15AM 13             THE COURT:  SURE.  WHY DON'T YOU TELL ME WHAT IT IS

08:15AM 14   YOU WANT TO DO, MR. WADE.

08:15AM 15             MR. WADE:  SURE, YOUR HONOR.

08:15AM 16        THERE ARE SEVERAL AVENUES BY WHICH THIS EVIDENCE CAN BE

08:15AM 17   ADMITTED, AND I CAN SET FORTH EACH OF THEM.  LET ME JUST FIRST

08:15AM 18   GIVE A LITTLE BIT OF A FACTUAL, RELEVANT FACTUAL OVERVIEW.

08:15AM 19             THE COURT:  LET ME ASK A PRELIMINARY QUESTION.

08:15AM 20        LAST NIGHT WE RECEIVED IN CHAMBERS AN EMAIL, I THINK IT

08:15AM 21   WAS AFTER 5:00 O'CLOCK, AND IT PERHAPS CONTAINED SOME

08:15AM 22   DOCUMENTS.

08:15AM 23        IS THIS WHAT WE'RE TALKING ABOUT?

08:15AM 24             MR. WADE:  IT'S NOT CLEAR, YOUR HONOR, THAT WE WOULD

08:15AM 25   ACTUALLY SEEK TO OFFER ANY OF THE DOCUMENTS DEPENDING UPON --

08:15AM 1          THE COURT:  LET ME START FROM THE BEGINNING.  ARE

08:15AM 2   THESE THE DOCUMENTS THAT WE'RE TALKING ABOUT NOW?  THE

08:15AM 3   DOCUMENTS THAT THE COURT RECEIVED AFTER 5:00 O'CLOCK LAST

08:15AM 4   NIGHT?  THE COLLECTION?

08:15AM 5      I'M NOT ASKING IF YOU'RE GOING TO INTRODUCE THEM.

08:15AM 6          MR. WADE:  YES.

08:15AM 7          THE COURT:  I THINK YOUR EMAIL SAID WE WILL ADDRESS

08:15AM 8   TOMORROW WHY WE THINK THIS TESTIMONY IS ADMISSIBLE UNDER 401,

08:16AM 9   608(B), AND FOR BIAS.  FOR PLANNING PURPOSES, WE CAN AVOID

08:16AM 10  ADDRESSING THESE ISSUES UNTIL AFTER THE LUNCH BREAK IF THAT

08:16AM 11  MAKES MATTERS EASIER FOR THE COURT.

08:16AM 12     YOU SAID IN THE EMAIL, WE WILL LIKELY, UNDERLINED, NOT

08:16AM 13  SEEK TO OFFER MANY OF THESE DOCUMENTS INTO EVIDENCE.

08:16AM 14     DOES THAT MEAN MORE THAN ONE OR LESS THAN ONE?

08:16AM 15         MR. WADE:  IT'S NOT CLEAR THAT WE'LL OFFER ANY,

08:16AM 16  YOUR HONOR.

08:16AM 17     WHAT WE WANTED TO DO, WITHOUT LAYING OUT OUR WHOLE

08:16AM 18  CROSS-EXAMINATION IN A SHORT PERIOD OF TIME, WE WANTED TO GIVE

08:16AM 19  SOME RELEVANT FACTUAL BACKGROUND TO THE COURT SO THE COURT CAN

08:16AM 20  CONSIDER SOME TESTIMONY THAT WE SEEK.

08:16AM 21     THE TESTIMONY REALLY RELATES TO -- IF I COULD GIVE THE

08:16AM 22  COURT JUST A VERY QUICK OVERVIEW.

08:16AM 23         THE COURT:  THERE'S EIGHT DOCUMENTS HERE.

08:16AM 24         MR. WADE:  THERE ARE EIGHT DOCUMENTS, BUT, FRANKLY,

08:16AM 25  YOUR HONOR, WHAT IS REALLY AT ISSUE WOULD BE THE QUESTIONS AND

08:16AM  1    ANSWERS THAT WE SEEK TO ELICIT FROM DR. ROSENDORFF.

08:16AM  2        IF HE ANSWERS THE QUESTIONS TRUTHFULLY, AS WE UNDERSTAND

08:17AM  3    HE PROBABLY WOULD BASED UPON THE DOCUMENTS, IT'S UNCLEAR TO US

08:17AM  4    THAT WE REALLY NEED TO ADMIT THE DOCUMENTS THEMSELVES IN THE

08:17AM  5    CASE.  SO IT'S NOT CLEAR THAT EXTRINSIC EVIDENCE WOULD BE

08:17AM  6    NEEDED.

08:17AM  7        IT MAY BE NEEDED TO IMPEACH OR REFRESH.

08:17AM  8        THERE ARE SEVERAL DIFFERENT POST-EMPLOYMENT ISSUES WITH

08:17AM  9    DR. ROSENDORFF THAT WE WOULD SEEK TO QUESTION HIM ABOUT.

08:17AM  10        LET ME GIVE AN OVERVIEW OF WHAT THEY ARE AND THEN I'LL

08:17AM  11    EXPLAIN WHY THEY'RE RELEVANT.

08:17AM  12        THE FIRST IS HIS EMPLOYMENT AT A COMPANY IMMEDIATELY

08:17AM  13    FOLLOWING HIS EMPLOYMENT WITH THERANOS.  HE WENT TO WORK AT A

08:17AM  14    COMPANY CALLED INVITAE.

08:17AM  15        WHILE HE WAS AT INVITAE --

08:17AM  16            THE COURT:  IT'S SPELLED?

08:17AM  17            MR. WADE:  I-N-V-I-T-A-E.

08:17AM  18        WHILE HE WAS AT THAT COMPANY, THE COMPANY HAD A MAJOR

08:18AM  19    ISSUE WITH RESPECT TO A QUALITY CONTROL FAILURE THAT RESULTED

08:18AM  20    IN INACCURATE AND UNRELIABLE PATIENT TEST RESULTS BEING SENT TO

08:18AM  21    50,000 PATIENTS RELATED TO GENETIC CANCER SCREENING.

08:18AM  22            THE COURT:  AND WHAT WAS THE TIMING OF THAT, THE

08:18AM  23    YEAR?

08:18AM  24            MR. WADE:  I BELIEVE THAT WAS IN 2016 OR '17.  LET

08:18AM  25    ME -- THE COURT'S INDULGENCE FOR A SECOND.

08:18AM 1        2017 IS WHEN IT CAME TO LIGHT, BUT THE RESULTS WERE THE

08:18AM 2    11 MONTHS PRIOR TO THAT.  SO IT WAS THE PERIOD 2016 TO '17 WHEN

08:18AM 3    THERE WERE INACCURATE RESULTS.  THE COMPANY CAME TO THE

08:18AM 4    CONCLUSION THAT THOSE RESULTS WERE, WERE DUE TO QUALITY CONTROL

08:18AM 5    FAILURES WITHIN THE LAB.

08:18AM 6        DR. ROSENDORFF LEFT THE COMPANY ALMOST IMMEDIATELY AFTER

08:19AM 7    THAT, I BELIEVE THE MONTH FOLLOWING THE ANNOUNCEMENT OR THE

08:19AM 8    DISCLOSURE OF THOSE ERRONEOUS RESULTS AND QUALITY CONTROL

08:19AM 9    FAILURES.  THAT'S ISSUE NUMBER ONE.

08:19AM 10       ISSUE NUMBER TWO IS WHILE HE WAS AT -- WORKING AT INVITAE,

08:19AM 11   HE ALSO WORKED AT A COMPANY CALLED UBIOME.  HE WAS A LAB

08:19AM 12   DIRECTOR THERE.  HE WAS FIRED FOR FAILING TO MEET HIS

08:19AM 13   PROFESSIONAL OBLIGATIONS, INCLUDING FOR NOT SHOWING UP IN THE

08:19AM 14   OFFICE AND NOT MAKING HIMSELF SUFFICIENTLY AVAILABLE.

08:19AM 15       THERE WERE ALSO VALIDATION REPORT ISSUES POTENTIALLY WITH

08:19AM 16   RESPECT TO VALIDATION REPORTS HE SIGNED.  HE WAS QUESTIONED BY

08:19AM 17   FEDERAL AGENTS AND PROSECUTORS ABOUT THOSE ACTS IN I BELIEVE IT

08:20AM 18   WAS NOVEMBER OR DECEMBER OF 2020.

08:20AM 19       AND TWO PEOPLE FROM UBIOME, THE CEO, I BELIEVE, AND THE

08:20AM 20   NUMBER TWO EXECUTIVE WERE INDICTED IN THAT CASE.

08:20AM 21       THE FOURTH ISSUE --

08:20AM 22           THE COURT:  THE THIRD ISSUE.

08:20AM 23           MR. WADE:  I'M SORRY, THIRD ISSUE.

08:20AM 24       AND MAYBE THERE'S ONLY THREE BECAUSE ONE RELATES TO HIS

08:20AM 25   COMPETENCE AT THERANOS, AND THEN WE HAVE INVITAE, UBIOME, AND

08:20AM 1    THE LAST IS PERKIN ELMER, WHICH IS A MATTER THAT DR. ROSENDORFF

08:20AM 2    HIMSELF ACTUALLY RAISED IN HIS TESTIMONY THE OTHER DAY.  HE

08:20AM 3    MENTIONED THAT HE STILL DEALS WITH INQUIRIES THERE AND

08:20AM 4    MENTIONED WHERE HE WORKS.  PERKIN ELMER HAS BEEN THE SUBJECT OF

08:21AM 5    ONGOING INVESTIGATIONS RELATING TO THE ACCURACY OF ITS TEST

08:21AM 6    RESULTS.  IT WAS INSPECTED BY CMS, THE VERY SAME INSPECTORS WHO

08:21AM 7    ARE -- THREE OF WHOM ARE WITNESSES IN THIS CASE CONDUCTED THAT

08:21AM 8    INSPECTION.

08:21AM 9        THEY ISSUED A NOTICE OF DEFICIENCIES THAT INDICATED THAT

08:21AM 10   THERE WERE SERIOUS DEFICIENCIES WITHIN THE LAB.  THOSE

08:21AM 11   DEFICIENCIES INCLUDED INACCURATE TEST RESULTS, AND THEY ALSO

08:21AM 12   INCLUDED DEFICIENT PERFORMANCE OF THE LABORATORY DIRECTOR IN

08:21AM 13   NUMEROUS RESPECTS.

08:21AM 14       THERE WAS AN OPPORTUNITY, MULTIPLE OPPORTUNITIES FOR THE

08:21AM 15   LABORATORY DIRECTOR TO ADDRESS THOSE DEFICIENCIES AND TO SHOW

08:21AM 16   COMPLIANCE IN REMEDIATION.  THOSE EFFORTS, AS OF THE SPRING AND

08:21AM 17   SUMMER, WERE UNSUCCESSFUL.

08:21AM 18           THE COURT:  SPRING AND SUMMER OF?

08:22AM 19           MR. WADE:  OF 2021.

08:22AM 20       THERE WAS A PROPOSED SANCTION AND NOTICE OF SANCTIONS

08:22AM 21   ISSUED.  THAT NOTICE OF SANCTIONS INDICATES THAT DR. ROSENDORFF

08:22AM 22   COULD BE SUSPENDED FROM HIS ABILITY TO SERVE AS A LABORATORY

08:22AM 23   DIRECTOR AS A RESULT OF THE IMMEDIATE JEOPARDY NOTICE AND HIS

08:22AM 24   INABILITY TO CURE THOSE DEFICIENCIES.

08:22AM 25       HE'S HAD COMMUNICATIONS WITH WITNESSES IN THIS CASE.

2554

08:22AM 1    MR. YAMAMOTO FROM CMS WHO WE UNDERSTAND THE GOVERNMENT MAY

08:22AM 2    CALL IN THIS CASE.  HE SPECIFICALLY RAISED CONCERN ABOUT THE

08:22AM 3    CONSEQUENCES THAT COULD RESULT TO HIM PERSONALLY AS A RESULT OF

08:23AM 4    THESE DEFICIENCIES AND THE NOTICE OF SANCTIONS.

08:23AM 5    I NOTE THAT THIS WITNESS HAS PREVIOUSLY TESTIFIED IN THE

08:23AM 6    GRAND JURY EVEN BEFORE THESE ISSUES, AND I'LL QUOTE --

08:23AM 7        THE COURT:  WHICH WITNESS ARE YOU TALKING ABOUT?

08:23AM 8        MR. WADE:  MR. ROSENDORFF.

08:23AM 9    AND I'LL QUOTE, "IF CMS SEES THAT THERE ARE CONSISTENT

08:23AM 10   PROBLEMS WITH LABORATORY DIRECTOR JUDGMENT OR CONSISTENT ERRORS

08:23AM 11   BY THE LABORATORY DIRECTOR, THEY CAN TAKE AWAY YOUR LICENSE TO

08:23AM 12   BE A LAB DIRECTOR," CLOSED QUOTE.

08:23AM 13   THOSE ARE THE INCIDENTS.  WE THINK THERE ARE SEVERAL BASES

08:23AM 14   TO ADMIT THESE AND TO QUESTION THE WITNESS WITH RESPECT TO

08:23AM 15   THESE.

08:23AM 16   ONE IS THE WITNESS'S COMPETENCE HAS BEEN PUT INTO QUESTION

08:24AM 17   IN THIS CASE.  ON NUMEROUS OCCASIONS HE'S BEEN OFFERED TO

08:24AM 18   PROVIDE HIS OPINION WITH RESPECT TO CERTAIN ISSUES AND THE

08:24AM 19   STANDARDS AND THE PROPRIETY OF SOME OF THE CONDUCT THAT

08:24AM 20   OCCURRED AT THERANOS.

08:24AM 21   HE SET HIMSELF FORTH AS COMPETENT WHEN HE WAS INTERVIEWED

08:24AM 22   AND HIRED TO DO THE JOB AND HE MAINTAINS HIS COMPETENCE

08:24AM 23   THROUGHOUT.

08:24AM 24   MUCH OF THE TESTIMONY THAT WAS OFFERED ON DIRECT

08:24AM 25   EXAMINATION AND SUBSEQUENTLY ON CROSS-EXAMINATION RELATES TO

08:24AM   1    702 TYPE OF ISSUES, WHETHER IT WAS SPECIFICALLY -- AND RELATE

08:24AM   2    TO HIS SPECIALIZED SKILL AND EXPERIENCE, WHETHER IT WAS

08:24AM   3    SPECIFICALLY NOTICED AS SUCH OR WHETHER HE WAS SPECIFICALLY

08:24AM   4    CERTIFIED AS SUCH, HE WAS OFFERING OPINIONS ABOUT LAB

08:24AM   5    PRACTICES.

08:24AM   6         HE WAS ALSO OFFERING OPINIONS THAT PEOPLE OTHER THAN

08:24AM   7    HIMSELF WERE RESPONSIBLE FOR SOME OF THESE DEFICIENCIES THAT

08:24AM   8    HE'S IDENTIFIED AT THERANOS.  HE'S POINTED THE FINGER AT MANY

08:24AM   9    OTHER PEOPLE, INCLUDING MY CLIENT, WHO STANDS HERE CHARGED

08:25AM  10    TODAY AS THE COURT WELL KNOWS.

08:25AM  11         TO THE EXTENT THAT FAILURES WITHIN THE LAB ARE THE RESULT

08:25AM  12    OF INCOMPETENCE OF SOMEONE OTHER THAN MY CLIENT, IT'S

08:25AM  13    EXCULPATORY OF MY CLIENT.

08:25AM  14         AND HIS -- HE HAS INDICATED THAT THE FAILURES ARE THE

08:25AM  15    RESULT OF, ARE THE RESULT OF AN UNWILLINGNESS OR AN INABILITY

08:25AM  16    TO ACT BY MS. HOLMES, MR. BALWANI, AND OTHERS.

08:25AM  17         WE THINK THE FACTS BELIE THAT, YOUR HONOR.  INDEED, IN

08:25AM  18    THIS VERY CASE THE GOVERNMENT HAS PUT AT ISSUE MR. ROSENDORFF,

08:25AM  19    DR. ROSENDORFF'S COMPETENCE.  THEY ACTUALLY NOTICED AN EXPERT

08:25AM  20    IN THE CASE WHO HAS -- WHO WE UNDERSTAND INTENDS TO OFFER

08:25AM  21    TESTIMONY, THEY'VE NOTICED TESTIMONY THAT HE WAS, IN FACT,

08:26AM  22    INCOMPETENT AND THAT ALL OF THE VALIDATION REPORTS THAT HE

08:26AM  23    SIGNED SHOULD HAVE NEVER BEEN ISSUED.

08:26AM  24         THAT IS THE TESTIMONY OF DR. MASTER THAT THEY'VE NOTICED,

08:26AM  25    AND IT'S ALSO THE TESTIMONY OF, WE UNDERSTAND, OF DR. DAS WHO

08:26AM   1    THEY'VE IDENTIFIED AS A WITNESS WHO THEY INTEND TO CALL.

08:26AM   2         IN OTHER WORDS, TO THE EXTENT THAT THERE WERE DEFICIENCIES

08:26AM   3    THAT WERE IDENTIFIED IN THE LAB, THEY RESULT FROM INCOMPETENCE

08:26AM   4    OF DR. ROSENDORFF.

08:26AM   5         SECONDLY, DR. ROSENDORFF WAS INTERVIEWED BY THE GOVERNMENT

08:26AM   6    AND WAS IDENTIFIED AND DISCLOSED AS AN EXPERT IN THIS CASE.

08:26AM   7         IN CONNECTION WITH HIS INTERVIEW IN 2020, HE PROVIDED A

08:26AM   8    RESUME.  HE WAS QUESTIONED ABOUT HIS PERSONAL EXPERIENCE AND HE

08:26AM   9    WAS QUESTIONED ABOUT ITEMS ON HIS RESUME.  HIS RESUME WAS

08:27AM  10    ATTACHED TO THE MEMORANDUM OF INTERVIEW.  HIS RESUME WAS

08:27AM  11    SUBSEQUENTLY ATTACHED TO THE EXPERT DISCLOSURE THAT WAS MADE TO

08:27AM  12    COUNSEL IN THIS CASE.  I BELIEVE IT'S THE ONLY EXPERT

08:27AM  13    DISCLOSURE THAT WE HAVE NOT CHALLENGED IN THIS CASE.

08:27AM  14         THAT, THAT INTERVIEW -- AND IN THAT INTERVIEW AND IN THAT

08:27AM  15    RESUME DR. ROSENDORFF CONCEALED MATERIAL INFORMATION FROM

08:27AM  16    FEDERAL AGENTS AND INDIRECTLY FROM THE DEFENSE BY FAILING TO

08:27AM  17    DISCLOSE THAT HE WORKED AT UBIOME AT ALL, AND IT'S OMITTED

08:27AM  18    COMPLETELY FROM HIS RESUME.

08:27AM  19         HE ALSO FAILED TO DISCLOSE HIS NUMEROUS PROFESSIONAL

08:27AM  20    FAILURES AT UBIOME AND INVITAE.

08:27AM  21              THE COURT:  IS THAT SOMETHING THAT PEOPLE TYPICALLY

08:27AM  22    PUT ON THEIR RESUME, THEIR FAILURES?

08:27AM  23         (LAUGHTER.)

08:27AM  24              MR. WADE:  I'M SORRY?

08:27AM  25              THE COURT:  IS THAT TYPICALLY SOMETHING WE SEE ON

08:27AM 1    PEOPLE'S RESUMES, THEIR CAREER FAILURES?

08:28AM 2            MR. WADE:  WHEN WITNESS ARE TOLD THAT THEY'RE GOING

08:28AM 3    TO BE DISCLOSED AS EXPERTS IN THE FIELD, YES.

08:28AM 4        IF I HIRED AN EXPERT AND IT TURNED OUT THE EXPERT HAD WHAT

08:28AM 5    COULD BE PERCEIVED AS FOUR DIFFERENT SIGNIFICANT DEFICIENCIES

08:28AM 6    OUT OF FIVE PERFORMANCES AS A LABORATORY DIRECTOR AND THAT

08:28AM 7    EXPERT DID NOT DISCLOSE THAT, I WOULD CONSIDER THAT A MATERIAL

08:28AM 8    CONCEALMENT AND I WOULD FIRE THAT EXPERT BECAUSE WHEN I'M --

08:28AM 9    WHEN THAT EXPERT IS BEING ASSESSED AND DISCLOSED AS AN EXPERT,

08:28AM 10   WHICH DR. ROSENDORFF WAS IN THIS CASE, YOU HAVE TO DISCLOSE THE

08:28AM 11   MATERIAL FACTS.

08:28AM 12       HE KNEW EXACTLY WHAT THE GOVERNMENT WAS DOING, AND HE

08:28AM 13   DIDN'T DISCLOSE THOSE FACTS, AND AS A RESULT WE BELIEVE HE HAS

08:28AM 14   EXPOSURE UNDER 18 U.S.C. 1001 FOR CONCEALING MATERIAL

08:28AM 15   INFORMATION FROM THE GOVERNMENT.

08:28AM 16       FINALLY, I THINK HE KNOWS PRESENTLY, UNLESS THERE'S BEEN

08:29AM 17   SUBSEQUENT EVENTS THAT THE GOVERNMENT HAS FAILED TO DISCLOSE TO

08:29AM 18   US, HIS, HIS CAREER CURRENTLY SITS IN THE BALANCE.  AND THE

08:29AM 19   DECISION AS TO WHETHER HIS CAREER WILL BE -- HE'LL CONTINUE TO

08:29AM 20   BE ABLE TO SERVE AS A LABORATORY DIRECTOR RESTS IN THE HANDS OF

08:29AM 21   THE FEDERAL GOVERNMENT REGULATORS, FEDERAL GOVERNMENT

08:29AM 22   REGULATORS THAT ARE PART OF THIS CASE AND THAT COOPERATE

08:29AM 23   EXTENSIVELY WITH THIS TEAM, AND THAT GIVES HIM BIAS TO TESTIFY

08:29AM 24   IN FAVOR OF THE FEDERAL GOVERNMENT AND TO AVOID THE

08:29AM 25   DEFICIENCIES THAT HE'S IDENTIFIED IN HIS OWN TESTIMONY AS BEING

08:29AM 1   THE TYPE OF DEFICIENCIES THAT COULD RESULT IN HIS INABILITY TO

08:29AM 2   SERVE AS A LABORATORY DIRECTOR.

08:29AM 3          THE COURT:  AND THIS IS ADMISSIBLE UNDER 608(B)

08:29AM 4   YOU'RE SAYING?

08:29AM 5          MR. WADE:  I THINK THERE ARE -- IT'S ADMISSIBLE

08:30AM 6   UNDER 608(B) FOR CHARACTER FOR TRUTHFULNESS.

08:30AM 7          THE COURT:  AND WHAT IS THE CHARACTER FOR

08:30AM 8   TRUTHFULNESS IN THIS?  TELL ME.

08:30AM 9          MR. WADE:  HIS CONCEALMENT OF TWO OF THE INCIDENTS

08:30AM 10  FROM GOVERNMENT AGENTS WHEN HE WAS QUESTIONED ABOUT HIS

08:30AM 11  PROFESSIONAL EXPERIENCE.

08:30AM 12      I BELIEVE THAT HE CONCEALED -- HE PROBABLY CONCEALED

08:30AM 13  THESE, THESE INCIDENTS FROM PERKIN ELMER WHEN HE WAS HIRED TO

08:30AM 14  SERVE AS A COVID DIRECTOR.  THAT GOES TO HIS CHARACTER FOR

08:30AM 15  TRUTHFULNESS.

08:30AM 16      IF HE'S NOT CANDID -- I UNDERSTAND, YOUR HONOR, THAT

08:30AM 17  PEOPLE NORMALLY DON'T PUT THEIR FAILURES.

08:30AM 18      BUT IF THEY'RE REPRESENTING THEMSELVES FOR AN IMPORTANT

08:30AM 19  POSITION TO BE QUALIFIED AND IF THEY'VE ACTUALLY BEEN

08:30AM 20  TERMINATED FROM SEVERAL JOBS FOR NOT BEING QUALIFIED, THAT'S

08:30AM 21  ARGUABLY -- NOT ARGUABLY -- THAT IS MISLEADING.

08:30AM 22      BUT AS TO BIAS, UNDER THE SUPREME COURT DECISION IN

08:30AM 23  UNITED STATES VERSUS ABEL, 469 U.S. 45, THE RELATIONSHIP

08:30AM 24  BETWEEN A PARTY AND A WITNESS WHICH MAY LEAD THE WITNESS TO

08:31AM 25  SLANT, UNCONSCIOUSLY OR OTHERWISE, HIS TESTIMONY IN FAVOR OR

08:31AM 1      AGAINST A PARTY IS BIAS, AND IT'S APPROPRIATE FOR INQUIRY IN

08:31AM 2      THIS CASE.

08:31AM 3          DR. ROSENDORFF --

08:31AM 4              THE COURT:  THE BIAS HERE IS, AS YOU SAY, BECAUSE

08:31AM 5      HE'S CONCERNED, HE HAS CAREER CONCERNS THAT IF HE DOES NOT

08:31AM 6      TESTIFY IN A WAY THAT IS OTHERWISE AGREEABLE TO THE GOVERNMENT,

08:31AM 7      THAT THE GOVERNMENT HAS SOME CONNECTION WITH HIS CAREER?

08:31AM 8              MR. WADE:  HIS TESTIMONY IS ON THE FRONT PAGE OF

08:31AM 9      MANY NEWSPAPERS.

08:31AM 10             THE COURT:  WHAT DOES THAT HAVE TO DO WITH THE

08:31AM 11     GOVERNMENT?  THAT'S THE BIAS ISSUE I'M TRYING TO EXPLORE.

08:31AM 12             MR. WADE:  IT HAS DIRECTLY TO DO WITH THE FEDERAL

08:31AM 13     GOVERNMENT.  THE FEDERAL GOVERNMENT, INCLUDING THERE'S AN AGENT

08:31AM 14     WHO WORKS UNDER HHS WHICH -- WHO IS SITTING IN THE BACK OF THIS

08:31AM 15     COURTROOM.  THEY'VE BEEN DEALING EXTENSIVELY WITH CMS AS THE

08:32AM 16     COURT KNOWS FROM DISCOVERY MATTERS IN THIS CASE.  THEY INTEND

08:32AM 17     TO CALL THREE OF THE WITNESSES IN THIS CASE WHO ARE INVOLVED IN

08:32AM 18     THAT JUDGMENT.

08:32AM 19         SO IF HE DOESN'T SATISFY THE GOVERNMENT THAT -- OR IF HE

08:32AM 20     DOESN'T BLAME OTHERS AND TAKES RESPONSIBILITY ON TO HIMSELF,

08:32AM 21     THAT INCREASES THE LIKELIHOOD THAT HE COULD BE SUBJECT TO

08:32AM 22     ADVERSE PENALTIES AND LOSE HIS ABILITY TO TESTIFY -- TO SERVE

08:32AM 23     AS A LABORATORY DIRECTOR.

08:32AM 24         THAT IS PRESENT RIGHT NOW IN THIS CASE.

08:32AM 25             BUT FUNDAMENTALLY, YOUR HONOR, HIS COMPETENCE HAS BEEN PUT

08:32AM 1    AT ISSUE BY THE EVIDENCE.  THE GOVERNMENT HAS SAID HE'S

08:32AM 2    COMPETENT.

08:32AM 3              THE COURT:  IS COMPETENCE AN ISSUE UNDER 608(B)?

08:32AM 4    608(B) REALLY TALKS ABOUT CHARACTER FOR TRUTHFULNESS, DOESN'T

08:32AM 5    IT?

08:32AM 6              MR. WADE:  COMPETENCE IS AN ISSUE IN THIS CASE UNDER

08:32AM 7    401.

08:32AM 8              THE COURT:  WE'RE TALKING ABOUT 608(B) HERE, AND I

08:32AM 9    THINK THAT'S WHAT YOU'VE SUGGESTED THIS WOULD BE ADMISSIBLE

08:32AM 10   FOR.

08:32AM 11             MR. WADE:  I THINK IT'S ADMISSIBLE UNDER 401.

08:33AM 12        JUST SO THE RECORD IS CLEAR, AND MAYBE I HAVEN'T DONE A

08:33AM 13   SUFFICIENTLY A GOOD JOB OF ADDRESSING THIS WITH THE COURT, I

08:33AM 14   BELIEVE ALL OF THE EVIDENCE, GIVEN THE THEORY THAT THE

08:33AM 15   GOVERNMENT HAS OFFERED WITH RESPECT TO THE THEORY OF

08:33AM 16   DR. ROSENDORFF, IS ADMISSIBLE UNDER 401 BECAUSE IT GOES TO HIS

08:33AM 17   COMPETENCE WHICH THE GOVERNMENT HAS PUT AT ISSUE IN THIS CASE,

08:33AM 18   PERIOD, FULL STOP.

08:33AM 19        WE DON'T NEED TO GO TO THE NEXT BRANCHES AT ALL.

08:33AM 20        UNDER THE NEXT BRANCHES WITH RESPECT TO BIAS AND HIS

08:33AM 21   CONCEALING INFORMATION FROM THE GOVERNMENT, WE THINK IT'S

08:33AM 22   ADMISSIBLE AS WELL.  IT'S ADMISSIBLE FOR BIAS ALSO BECAUSE IF

08:33AM 23   THE GOVERNMENT -- HE HAS A MOTIVE, HE HAS CONCEALED MATERIAL

08:33AM 24   INFORMATION FROM THE GOVERNMENT.  HE HAS 18 U.S.C. 1001

08:33AM 25   EXPOSURE.

08:33AM 1    TO THE EXTENT THAT HE TESTIFIES FAVORABLY FOR THE

08:33AM 2    GOVERNMENT, THAT MAY DECREASE THE LIKELIHOOD THAT THEY, THAT

08:34AM 3    THEY BRING CHARGES AGAINST HIM FOR THAT CONDUCT.  THAT'S A BIAS

08:34AM 4    BASIS.

08:34AM 5    THERE'S A BIAS BASIS FOR THE PERKIN ELMER BECAUSE HIS

08:34AM 6    CAREER HANGS IN THE BALANCE AT THE HANDS OF THE FEDERAL

08:34AM 7    GOVERNMENT.

08:34AM 8    AND SO -- AND THEN SEPARATE AND APART FROM THAT, THERE IS

08:34AM 9    608(B) BECAUSE WE DON'T THINK HE WAS CANDID AND TRUTHFUL IN

08:34AM 10   STATEMENTS THAT HE HAS MADE TO THESE POTENTIAL EMPLOYERS.

08:34AM 11       THE COURT:  UNDER 608(B), SHOULD WE ALLOW EXTRINSIC

08:34AM 12   EVIDENCE TO COME IN?

08:34AM 13       MR. WADE:  NO, UNDER THE 608(B) THEORY WE SHOULD

08:34AM 14   NOT.  AS THE COURT KNOWS, WE CAN INQUIRE OF THE WITNESS, BUT WE

08:34AM 15   CAN'T OFFER EXTRINSIC EVIDENCE.

08:34AM 16   AND I WANT TO BE CLEAR, I DON'T INTEND TO NECESSARILY

08:34AM 17   OFFER EXTRINSIC EVIDENCE.  I INTEND --

08:34AM 18       THE COURT:  RIGHT.  I THINK YOU'RE ON THAT PATH NOW

08:34AM 19   TO TELL ME WHAT IS IT THAT YOU INTEND TO DO WITH THE EVIDENCE

08:34AM 20   THAT YOU'VE TALKED ABOUT THIS MORNING WITH THIS WITNESS.

08:34AM 21       MR. WADE:  I INTEND TO QUESTION HIM ABOUT THE

08:34AM 22   EVENTS -- HIS COMPETENCE ABOUT THE FACT THAT THESE EVENTS

08:35AM 23   HAPPENED AND THESE RESULTS HAPPENED, HE HAD QUALITY CONTROL

08:35AM 24   FAILURES AT THIS COMPANY, AND IT RESULTED IN 50,000 INACCURATE

08:35AM 25   RESULTS, AND HE WAS TERMINATED AS A RESULT.

08:35AM   1          WITH RESPECT TO PERKIN ELMER, THERE WERE NUMEROUS

08:35AM   2     DEFICIENCIES WITH RESPECT TO HIS RESPONSIBILITIES, THERE WERE

08:35AM   3     QUALITY CONTROL FAILURES, THERE WERE INADEQUATE VALIDATION

08:35AM   4     REPORTS.

08:35AM   5          THE COURT:  AND THESE ARE ALL EMPLOYMENTS

08:35AM   6     POST-THERANOS?

08:35AM   7          MR. WADE:  THEY ARE, YES.

08:35AM   8          THE COURT:  AND WHAT IS THE RELEVANCE OF THAT?  WHY

08:35AM   9     IS HE -- LET'S JUST STAY ON YOUR TRACK.

08:35AM   10          MR. WADE:  YES.

08:35AM   11          THE COURT:  IF HE'S INCOMPETENT POST-THERANOS, WHAT

08:35AM   12     IS THE RELEVANCE TO HIS TIME AT THERANOS?

08:35AM   13          MR. WADE:  BECAUSE HE WAS INCOMPETENT AT THERANOS,

08:35AM   14     TOO, AND THAT'S THE REASON WHY MANY OF THE FAILURES WITHIN THE

08:36AM   15     LAB HAPPENED.

08:36AM   16          THE GOVERNMENT INTENDS TO OFFER THAT EVIDENCE ITSELF IN

08:36AM   17     THIS CASE, SO THE IDEA THAT -- THE GOVERNMENT'S EXPERT HAS

08:36AM   18     BASICALLY SAID THAT DR. ROSENDORFF IS INCOMPETENT, AND SO THE

08:36AM   19     LABORATORY DIRECTOR WHO MS. HOLMES HIRED AFTER CMS CAME IN AND

08:36AM   20     INSPECTED AND STARTED IDENTIFYING ISSUES, HE, TOO HAS SAID THAT

08:36AM   21     DR. ROSENDORFF IS INCOMPETENT AND THAT THE VALIDATION REPORTS

08:36AM   22     THAT HE SIGNED WERE DEFICIENT, AND SEVERAL OF THEM.

08:36AM   23          ALL OF THE VALIDATION REPORTS FOR THE EDISON DEVICE WERE

08:36AM   24     DEFICIENT.

08:36AM   25          TWO OF THE GOVERNMENT'S WITNESSES INTEND TO OFFER THAT.

| | | |
|---|---|---|
| 08:36AM | 1 | THERE WAS EVERY REASON FOR THESE FOLKS TO BELIEVE THAT HE |
| 08:36AM | 2 | WAS COMPETENT.  HE REPRESENTED HIMSELF TO BE COMPETENT, AND -- |
| 08:36AM | 3 | THE COURT:  WE DON'T HAVE TO GET INTO A CLOSING |
| 08:36AM | 4 | ARGUMENT HERE. |
| 08:36AM | 5 | MR. WADE:  YEAH. |
| 08:36AM | 6 | THE COURT:  I'M TRYING TO GLEAN WHAT IS THE |
| 08:36AM | 7 | RELEVANCE OF THE FACT THAT SOMEBODY IS INCOMPETENT POST HIS |
| 08:37AM | 8 | TIME AT THERANOS, AND I'M TRYING TO GAUGE THE RELEVANCE THAT |
| 08:37AM | 9 | AND MAYBE MR. BOSTIC CAN SHARE HIS OPINIONS. |
| 08:37AM | 10 | MR. WADE:  FUNDAMENTALLY, I BELIEVE THE TESTIMONY |
| 08:37AM | 11 | BEFORE THE COURT IS HE IS THE PERSON ULTIMATELY RESPONSIBLE |
| 08:37AM | 12 | WITHIN THE LABORATORY.  HE'S THE PERSON UPON WHOM EVERYONE IS |
| 08:37AM | 13 | LEGALLY ENTITLED TO RELY. |
| 08:37AM | 14 | THE COURT:  I UNDERSTAND. |
| 08:37AM | 15 | MR. WADE:  SO IF HE'S -- IF HE WAS INCOMPETENT AND |
| 08:37AM | 16 | DIDN'T DO HIS JOB, THAT IS EXCULPATORY OF MS. HOLMES. |
| 08:37AM | 17 | AND THE FACT THAT HE APPEARS TO HAVE ALMOST NEVER |
| 08:37AM | 18 | COMPETENTLY DONE HIS JOB IS HIGHLY RELEVANT. |
| 08:37AM | 19 | THE COURT:  THAT'S CHARACTER EVIDENCE OF A DIFFERENT |
| 08:37AM | 20 | TYPE, ISN'T IT? |
| 08:37AM | 21 | MR. WADE:  THE GOVERNMENT HAS ELICITED HIS VIEWS AS |
| 08:37AM | 22 | TO THE RIGHT WAY AND WRONG WAY TO DO THINGS. |
| 08:37AM | 23 | HE APPEARS NOT TO BE QUALIFIED TO DO THIS BASED UPON HIS |
| 08:38AM | 24 | PERFORMANCE AT THESE MANY COMPANIES. |
| 08:38AM | 25 | THE COURT:  THIS SOUNDS LIKE CHARACTER EVIDENCE FOR |

08:38AM   1        A DIFFERENT TRAIT.

08:38AM   2              MR. WADE:  NO.  IT GOES DIRECTLY TO COMPETENCE WHICH

08:38AM   3    THE GOVERNMENT HAS PUT AT ISSUE IN THIS CASE.

08:38AM   4        THE GOVERNMENT INTENDS TO OFFER EVIDENCE OF HIS

08:38AM   5    INCOMPETENCE, SO I DON'T KNOW HOW IT WOULDN'T BE RELEVANT.

08:38AM   6              THE COURT:  LET ME ASK MR. BOSTIC ABOUT THAT.

08:38AM   7        MR. BOSTIC?

08:38AM   8              MR. BOSTIC:  THANK YOU, YOUR HONOR.

08:38AM   9        THE COURT WON'T BE SURPRISED THAT I DISAGREE WITH A NUMBER

08:38AM  10    OF THE REPRESENTATIONS AND CHARACTERIZATIONS THAT DEFENSE

08:38AM  11    COUNSEL HAS MADE.

08:38AM  12        LET ME START WITH THE FACTS, AS MR. WADE DID, AND JUST

08:38AM  13    CLARIFY A FEW THINGS.

08:38AM  14        FIRST, WHEN IT COMES TO THE INCIDENT AT INVITAE, FIRST OF

08:38AM  15    ALL, THE DOCUMENT THAT THE DEFENSE HAS PROVIDED AS PROOF FOR

08:38AM  16    THIS IS AN ARTICLE FROM A PUBLICATION CALLED "THE DARK REPORT,"

08:38AM  17    WHICH I HAVEN'T HEARD OF BEFORE.  OBVIOUSLY THIS DOCUMENT

08:38AM  18    ITSELF IS HEARSAY, SO NOT COMPETENT TO ACTUALLY PROVE THE TRUTH

08:38AM  19    OF ANY OF THOSE FACTS.

08:38AM  20        BUT SUBJECT TO THAT, I NOTE THAT, AS REPORTED IN THAT

08:38AM  21    ARTICLE, IT DOES TALK ABOUT THE NEED, OR THE COMPANY'S DECISION

08:39AM  22    TO RETEST 50,000 PATIENTS AFTER THE COMPANY DISCOVERED THAT

08:39AM  23    THEY WEREN'T RUNNING A CERTAIN TEST, A TEST FOR WHAT I

08:39AM  24    UNDERSTAND TO BE A VERY RARE GENETIC VARIATION THAT UNDERLIES A

08:39AM  25    VERY TINY SLIVER OF GENETIC CANCERS.

08:39AM   1        THE COMPANY ESTIMATES THAT APPROXIMATELY 2 TO 15 PATIENTS

08:39AM   2   WOULD HAVE BEEN AFFECTED BY THAT FAILURE TO INCLUDE THAT

08:39AM   3   PARTICULAR TEST IN THEIR PANEL OF TESTS THAT THEY WERE RUNNING.

08:39AM   4        THEY'VE DECIDED TO RETEST 50,000 PATIENTS AS A REMEDIAL

08:39AM   5   MEASURE -- WHICH BY THE WAY, BRINGS THIS UNDER RULE 407 AND IT

08:39AM   6   SHOULD BE KEPT OUT FOR THAT REASON -- BUT BESIDES WHICH, THAT

08:39AM   7   NUANCE, I THINK, ILLUSTRATES WHY IT'S DANGEROUS TO ALLOW THE

08:39AM   8   DEFENSE TO GO INTO THESE ISSUES HERE BECAUSE THE WAY THAT

08:39AM   9   MR. WADE JUST CHARACTERIZED IT, YOU KNOW, INACCURATE RESULTS

08:39AM  10   FOR 50,000 PATIENTS IS SIMPLY NOT CORRECT, AND ALLOWING FULL

08:39AM  11   REIN FOR DR. ROSENDORFF TO BE QUESTIONED ON THESE ISSUES

08:40AM  12   INVITES -- I HESITATE TO EVEN CALL THEM MINI-TRIALS BECAUSE

08:40AM  13   THEY'RE TRIALS IN THEIR OWN RIGHT -- OF OUTSIDE THERANOS

08:40AM  14   COMPLICATED SITUATIONS THAT WE SIMPLY DON'T HAVE THE COMPLETE

08:40AM  15   RECORD TO LITIGATE AT THIS POINT.  THAT'S INVITAE.

08:40AM  16        I'LL ALSO POINT OUT ON UBIOME, MY UNDERSTANDING IS THAT

08:40AM  17   DR. ROSENDORFF WORKED AT UBIOME FOR A NUMBER OF MONTHS.  DUE TO

08:40AM  18   A MEDICAL ISSUE HE WAS ABSENT FOR PART OF THAT.  HE EVENTUALLY

08:40AM  19   SEPARATED FROM THE COMPANY.  IT'S UNCLEAR FROM THE DOCUMENTS

08:40AM  20   THAT I'VE SEEN THAT HE WAS FIRED FOR FAILURE TO PERFORM HIS

08:40AM  21   DUTIES AS MR. WADE DESCRIBED, SO I THINK THAT'S ANOTHER FACT

08:40AM  22   THAT MIGHT BE IN DISPUTE.

08:40AM  23        AS TO THE GOVERNMENT'S INVESTIGATION OF UBIOME, LET ME

08:40AM  24   RAISE THAT DR. ROSENDORFF WAS NEVER A TARGET OF THAT

08:40AM  25   INVESTIGATION.  HE WAS INTERVIEWED AS A WITNESS FAIRLY LATE IN

08:40AM 1    THE INVESTIGATION.  THAT CASE HAS SINCE BEEN CHARGED.  TWO

08:41AM 2    PEOPLE WERE CHARGED IN THAT CASE.  DR. ROSENDORFF WAS NOT ONE

08:41AM 3    OF THEM.

08:41AM 4        THE GOVERNMENT'S VIEW IS THAT THE CASE AND THE CONDUCT AT

08:41AM 5    ISSUE IN THAT CASE, WHICH REALLY RELATES TO BILLING BY THE WAY,

08:41AM 6    INSURANCE BILLING AND NOT THE ACCURACY OF THE TESTS THEMSELVES

08:41AM 7    AS THIS CASE DOES.

08:41AM 8        THE COURT:  THAT CASE DOES NOT REVOLVE AROUND

08:41AM 9    LABORATORY PRACTICES OR INACCURACIES IN THE LAB.  IT SOUNDS

08:41AM 10   LIKE IT'S A HEALTH FRAUD TYPE OF A SITUATION.

08:41AM 11       MR. BOSTIC:  THAT'S CORRECT, YOUR HONOR.  THE

08:41AM 12   ALLEGATIONS IN THAT CASE WERE THAT PATIENTS, AND THE INSURANCE

08:41AM 13   COMPANIES ACTUALLY, WERE BILLED FOR TESTS BEFORE THEY WERE

08:41AM 14   VALIDATED.

08:41AM 15       OF COURSE DR. ROSENDORFF, AS THE LABORATORY DIRECTOR, HAD

08:41AM 16   NOTHING TO DO WITH THE BILLING PRACTICES.  HE TOLD THE

08:41AM 17   GOVERNMENT THAT HE WAS UNAWARE OF THAT FRAUDULENT BILLING

08:41AM 18   PRACTICE.  THERE'S NO EVIDENCE TO THE CONTRARY.

08:41AM 19       IN FACT, I UNDERSTAND THAT THE PREVIOUS LAB DIRECTOR AT

08:41AM 20   UBIOME QUIT WHEN HE FOUND OUT ABOUT THE BILLING PRACTICES OF

08:42AM 21   THAT COMPANY.

08:42AM 22       SO THERE WOULD HAVE BEEN REASON FOR THE ACTUAL DEFENDANTS

08:42AM 23   IN THAT CASE TO CONCEAL WHAT THEY WERE DOING FROM

08:42AM 24   DR. ROSENDORFF.

08:42AM 25       THE DANGER OF GETTING INTO THAT TOPIC IS THAT

| | | |
|---|---|---|
| 08:42AM | 1 | DR. ROSENDORFF WILL BE DEEMED GUILTY BY ASSOCIATION FOR HAVING |
| 08:42AM | 2 | BEEN PART OF THAT COMPANY, PART OF THE COMPANY THAT WAS |
| 08:42AM | 3 | SUBSEQUENTLY INVESTIGATED BY THE GOVERNMENT AGAIN, PART OF THE |
| 08:42AM | 4 | COMPANY THAT RESULTED IN THE PRINCIPALS BEING INDICTED AS THIS |
| 08:42AM | 5 | COMPANY DID. |
| 08:42AM | 6 | THAT KIND OF GUILT BY ASSOCIATION WE THINK IS |
| 08:42AM | 7 | INAPPROPRIATE AND EXCLUDABLE UNDER 403. |
| 08:42AM | 8 | FINALLY, AS TO THE PERKIN ELMER SITUATION, THE CMS |
| 08:42AM | 9 | INSPECTION IN THAT CASE OBVIOUSLY HAS NOTHING TO DO WITH THE |
| 08:42AM | 10 | CONDITION OF THE LABORATORY AT THERANOS.  I AGREE WITH THE |
| 08:42AM | 11 | COURT THAT THIS IS CHARACTER EVIDENCE. |
| 08:42AM | 12 | IF WE'RE TALKING ABOUT DR. ROSENDORFF'S COMPETENCY, |
| 08:43AM | 13 | ANOTHER WAY TO SAY THAT IS HIS CHARACTER FOR BEING A COMPETENT |
| 08:43AM | 14 | OR INCOMPETENT LABORATORY DIRECTOR, AND I THINK WHAT THE |
| 08:43AM | 15 | DEFENSE IS TRYING TO DO HERE IS TO BRING IN UNRELATED CONDUCT |
| 08:43AM | 16 | TO SHOW THAT HE HAS THAT CHARACTER TRAIT, AND THE CHARACTER |
| 08:43AM | 17 | TRAIT BEING A CARELESS LAB DIRECTOR. |
| 08:43AM | 18 | THAT IS NOT A PROPER USE OF THAT KIND OF EVIDENCE UNDER |
| 08:43AM | 19 | 404, AND I DON'T THINK THAT THE DEFENSE CAN SALVAGE THE |
| 08:43AM | 20 | ADMISSIBILITY BY RELYING ON RULE 608 BECAUSE I DON'T THINK IT'S |
| 08:43AM | 21 | CLEAR AT ALL THAT DR. ROSENDORFF ACTUALLY CONCEALED THIS |
| 08:43AM | 22 | INFORMATION FROM THE GOVERNMENT OR SAID ANYTHING INCONSISTENT |
| 08:43AM | 23 | WITH THE TRUTH IN THIS CASE. |
| 08:43AM | 24 | THE DEFENSE CHARACTERIZES THAT INTERVIEW AND THAT |
| 08:43AM | 25 | INTERACTION WITH DR. ROSENDORFF AS DR. ROSENDORFF HOLDING |

08:43AM  1    HIMSELF OUT AS AN EXPERT.  THE DEFENSE COMPARED IT TO A

08:43AM  2    SITUATION WHERE A LITIGATING PARTY SELECTS AND HIRES AN EXPERT.

08:43AM  3        THAT'S NOT AT ALL WHAT HAPPENED HERE.

08:44AM  4        THE GOVERNMENT HAS ALWAYS VIEWED DR. ROSENDORFF'S

08:44AM  5    TESTIMONY AS PRIMARILY, IF NOT ENTIRELY, PERCIPIENT TESTIMONY.

08:44AM  6        OUT OF AN ABUNDANCE OF CAUTION, WE DID DISCLOSE SOME OF

08:44AM  7    HIS OPINIONS AS EXPERT OPINIONS.

08:44AM  8        HE DIDN'T END UP TESTIFYING AS AN EXPERT, HOWEVER.

08:44AM  9        AND THE MEETING THAT WE HAD IN SEPTEMBER OF 2020 WITH

08:44AM  10   DR. ROSENDORFF WAS FOR THE PURPOSE OF US ASKING HIM INFORMATION

08:44AM  11   ABOUT WHAT HIS OPINIONS WERE SO WE COULD SUMMARIZE THEM AND

08:44AM  12   PROVIDE THAT NOTICE TO THE DEFENSE.

08:44AM  13       IT WAS NOT SO THAT DR. ROSENDORFF COULD CONVINCE US OF HIS

08:44AM  14   QUALIFICATIONS OR PROVIDE US WITH A COMPREHENSIVE LIST OF

08:44AM  15   EVERYTHING THAT HE HAS DONE.

08:44AM  16       AND THROUGH THAT LENS, I JUST DON'T THINK IT HOLDS WATER

08:44AM  17   TO SAY THAT HE CONCEALED INFORMATION OR LIED TO THE GOVERNMENT

08:44AM  18   AND HAS ANY EXPOSURE UNDER 1001.

08:44AM  19            MR. WADE:  YOUR HONOR --

08:44AM  20            THE COURT:  EXCUSE ME.

08:44AM  21       MR. WADE SUGGESTS THAT HE FALSIFIED INFORMATION ON HIS

08:44AM  22   RESUME, AND THEN HE ALSO SUGGESTS THAT HE IS, IN ESSENCE, UNDER

08:45AM  23   YOUR CONTROL BECAUSE OF THE BIAS AND HIS CAREER FEARS RELATED

08:45AM  24   TO UNSATISFACTORY TESTIMONY AS JUDGED BY THE GOVERNMENT.

08:45AM  25       CAN YOU COMMENT ON THAT?

08:45AM 1          MR. BOSTIC:  YES, YOUR HONOR.

08:45AM 2      AS TO BIAS FIRST, I THINK THERE'S THE, THE KIND OF CORE

08:45AM 3  SITUATION THAT WE ALL HAVE IN MIND WHERE THERE'S A COOPERATING

08:45AM 4  WITNESS WHO ALSO HAS SOME CRIMINAL LIABILITY FOR SIMILAR

08:45AM 5  CONDUCT.  THE COOPERATING WITNESS HAS ENTERED INTO AN AGREEMENT

08:45AM 6  WITH THE GOVERNMENT, PERHAPS A PLEA AGREEMENT.

08:45AM 7      ON CROSS, THE DEFENDANT'S LAWYER IS ENTITLED TO GET INTO

08:45AM 8  THAT RELATIONSHIP, ANY PROMISES THAT HAVE BEEN MADE.  THERE'S

08:45AM 9  ENOUGH OF A NEXUS THERE TO MAKE THAT RELEVANT, NOT EXCLUDABLE

08:45AM 10 UNDER 403.

08:45AM 11     HERE I THINK THE BIAS ARGUMENT IS TOO ATTENUATED.  IT'S

08:45AM 12 COMPLETELY SPECULATIVE TO THINK THAT DR. ROSENDORFF'S TESTIMONY

08:45AM 13 IN THIS CRIMINAL CASE WILL ACTUALLY HAVE ANY EFFECT ON WHAT

08:45AM 14 ANOTHER GOVERNMENT REGULATORY BODY DOES WHEN VIEWING THE

08:46AM 15 LABORATORY VIOLATIONS.  THE NEXUS JUST HASN'T BEEN ESTABLISHED.

08:46AM 16          THE COURT:  MR. WADE SUGGESTS THAT THERE ARE

08:46AM 17 WITNESSES IN THIS CASE WHO PERHAPS HAVE DONE THE INVESTIGATIONS

08:46AM 18 IN THE LABS THAT THIS DOCTOR HAS WORKED AT, AND HE SUGGESTS

08:46AM 19 THAT THAT INTIMACY AND CONNECTION BETWEEN THOSE TWO CASES

08:46AM 20 SUGGESTS SOMETHING.  IS THAT A CONCERN?

08:46AM 21          MR. BOSTIC:  I DON'T THINK SO, YOUR HONOR.  I THINK

08:46AM 22 THE CMS WITNESSES HAVE A RELATIONSHIP TO THIS CASE THAT

08:46AM 23 DR. ROSENDORFF ALSO DOES AND THAT THEY BOTH HAVE RELEVANT

08:46AM 24 INFORMATION TO SHARE ABOUT THERANOS.

08:46AM 25     I DON'T THINK THAT LINKS THOSE WITNESSES TO

08:46AM  1    DR. ROSENDORFF.  HIS LINK TO THEM IS THROUGH THE REGULATORY

08:46AM  2    ACTIVITIES THAT AREN'T TIED TO THIS CASE.

08:46AM  3        I THINK LOOKING AT THE ABEL DECISION, IT'S CLEAR HOW FAR

08:46AM  4    AFIELD WE ARE HERE FROM WHAT HAPPENED THERE.  THERE WE'RE

08:46AM  5    TALKING ABOUT A WITNESS BEING IN THE SAME GANG AS THE DEFENDANT

08:46AM  6    AND A GANG THAT REQUIRES THEM TO LIE AND DO ANYTHING TO HELP

08:47AM  7    EACH OTHER.  THAT KIND OF THING OBVIOUSLY IS CRITICAL TO

08:47AM  8    EXPLORE ON CROSS-EXAMINATION.  THAT IS COMPETENT BIAS EVIDENCE.

08:47AM  9        THIS, THIS -- THE RELATIONSHIP THAT DR. ROSENDORFF HAS

08:47AM  10   WITH THE FEDERAL GOVERNMENT IS ONE THAT MANY PEOPLE HAVE WITH

08:47AM  11   THE FEDERAL GOVERNMENT, ANYONE WHO HAS DEALINGS WITH THE I.R.S.

08:47AM  12   OR OTHER BRANCHES OF THE NUMEROUS GOVERNMENT WHICH IS NOT

08:47AM  13   MONOLITHIC, YOU COULD MAKE THE SAME KIND OF ARGUMENT FOR.  I

08:47AM  14   THINK THE CONNECTION IS JUST NOT STRONG ENOUGH HERE.

08:47AM  15            THE COURT:  OKAY.

08:47AM  16            MR. WADE:  YOUR HONOR, IF I COULD JUST CLARIFY A FEW

08:47AM  17   FACTS.

08:47AM  18       THE WITNESS SAYS IN HIS INTERVIEW WITH THE GOVERNMENT ON

08:47AM  19   UBIOME THAT HE WAS FIRED.  OKAY?  SO THERE'S NO AMBIGUITY AS TO

08:47AM  20   THAT.  HE SAID HE WAS FIRED IN STATEMENTS TO THE GOVERNMENT.

08:47AM  21       SO -- AND HE WAS FIRED ESSENTIALLY PROBABLY BECAUSE, I

08:47AM  22   BELIEVE HE SAID IN HIS INTERVIEW, BECAUSE HE WASN'T SHOWING UP

08:47AM  23   AND HE WASN'T DISPATCHING HIS PROFESSIONAL OBLIGATIONS.

08:47AM  24            THE COURT:  MR. BOSTIC SUGGESTS THAT THERE WAS A

08:47AM  25   HEALTH ISSUE.

08:48AM  1          MR. WADE:  THERE WAS A HEALTH ISSUE WITH RESPECT TO

08:48AM  2     ONE ABSENCE, BUT NOT WITH RESPECT TO OTHER ABSENCES.

08:48AM  3          THE COURT:  SO WHEN WE GO INTO THIS -- AND THIS IS

08:48AM  4     WHAT 608(B) TEACHES -- THE REASON FOR 608(B) AND EXTRINSIC

08:48AM  5     EVIDENCE, AS YOU KNOW, IS TO AVOID MINI TRIALS, TO AVOID

08:48AM  6     GETTING INTO THESE OFF RAMPS THAT TALK ABOUT PERHAPS HELPFUL

08:48AM  7     INFORMATION, BUT LIKE YOU JUST HEARD ABOUT UBIOME, THEIR

08:48AM  8     PROBLEMS WERE NOT LAB PROBLEMS APPARENTLY, THEY WERE BILLING

08:48AM  9     PROBLEMS AT A DIFFERENT LEVEL.

08:48AM  10         THIS IS THE ISSUE WE COME INTO THEN.  IT BECOMES A 403

08:48AM  11    TYPE OF ISSUE.  SHOULD WE ALLOW -- SHOULD THE COURT ALLOW

08:48AM  12    ADDITIONAL EVIDENCE IN TO CLEAR THE RECORD TO SHOW THAT, WELL,

08:48AM  13    THERE WERE PROBLEMS THERE, HE WAS THERE, THE PROBLEMS WERE NOT

08:48AM  14    IN THE LAB, THEY WERE BECAUSE OF SOME ALLEGED INCOMPETENCE OR

08:48AM  15    ALLEGED THEFT IN THE BILLING THAT HE HAD NOTHING TO DO WITH.

08:49AM  16         THAT'S A DIFFERENT -- I THINK YOU'LL AGREE, THAT'S A

08:49AM  17    DIFFERENT CIRCUMSTANCE.

08:49AM  18         MR. WADE:  I SEE IT A BIT DIFFERENTLY, YOUR HONOR.

08:49AM  19         THE COURT:  OTHERWISE YOU'RE SAYING, WELL, HE'S A

08:49AM  20    BAD GUY AND, YOU KNOW, BAD GUYS, THEY SEEM TO COLLECT TOGETHER.

08:49AM  21         MR. WADE:  YOUR HONOR, WHAT I'M SAYING IS THAT BIAS

08:49AM  22    IS NOT SOMETHING THAT THE, THAT THE COURT -- THAT THE

08:49AM  23    GOVERNMENT GETS TO DECIDE, WELL, HE'S BIASSED OR HE'S NOT

08:49AM  24    BIASSED.  IT'S IN THE EYES OF THE WITNESS.

08:49AM  25         I READ HIS GRAND JURY TESTIMONY AS TO THE CONCERNS THAT HE

08:49AM 1    HAS ABOUT THE ABILITY TO PRACTICE IF THINGS ARE SHOWN TO BE

08:49AM 2    DEFICIENT.

08:49AM 3        HE KNOWS THAT HIS ABILITY TO PRACTICE IS CURRENTLY AT

08:49AM 4    ISSUE AND IN THE HANDS OF THE FEDERAL GOVERNMENT.  HE KNOWS

08:49AM 5    THAT.

08:49AM 6        HE KNOWS THAT THOSE PEOPLE ARE THE SAME PEOPLE INVOLVED IN

08:49AM 7    THIS CASE.  HE KNOWS THAT.

08:49AM 8        AND SO -- BUT THERE'S A MORE FUNDAMENTAL BIAS, YOUR HONOR.

08:49AM 9    THE GOVERNMENT JUST SAID THAT HE WASN'T A TARGET AND HE WASN'T

08:49AM 10   CHARGED, BUT HE WAS -- HE WAS ALMOST CERTAINLY A SUBJECT, WHICH

08:50AM 11   MEANS THAT HE WAS WITHIN THE ZONE OF DANGER WITHIN THAT AND HE

08:50AM 12   GOES IN TO INTERVIEW WITH THE GOVERNMENT AND THE FACT THAT THEY

08:50AM 13   DON'T CHARGE HIM IS MAYBE EVIDENCE OF WHY HE WANTS TO COOPERATE

08:50AM 14   WITH THIS OFFICE.  IT'S THE SAME U.S. ATTORNEY'S OFFICE,

08:50AM 15   YOUR HONOR.

08:50AM 16            THE COURT:  HOW LONG AGO WAS THAT?

08:50AM 17            MR. WADE:  LAST YEAR, LESS THAN A YEAR AGO.

08:50AM 18            MR. BOSTIC:  THE INTERVIEW, YOUR HONOR, WAS IN

08:50AM 19   DECEMBER OF 2020.  I BELIEVE THE CASE WAS CHARGED IN MARCH OF

08:50AM 20   2021.  BUT THE INVESTIGATION BEGAN IN 2019, I BELIEVE.

08:50AM 21       AND I CAN ALSO REPRESENT TO THE COURT THAT THE, THE

08:50AM 22   GOVERNMENT TEAM INVESTIGATING UBIOME WAS WELL AWARE OF

08:50AM 23   DR. ROSENDORFF'S INVOLVEMENT IN THAT CASE IN 2019, WELL IN

08:50AM 24   ADVANCE OF HIS INTERVIEW IN 2020 WITH THE THERANOS TEAM.

08:50AM 25       SO THERE WOULDN'T BE A POINT IN HIM TRYING TO CONCEAL THAT

08:50AM  1     FACT FROM THE GOVERNMENT AT THAT TIME.

08:50AM  2              THE COURT:  IS THAT A CASE THAT IS IN THIS DISTRICT?

08:50AM  3              MR. BOSTIC:  IT IS, YOUR HONOR.

08:51AM  4              THE COURT:  ALL RIGHT.  WELL, WE'RE CLOSING IN ON

08:51AM  5     9:00 O'CLOCK.  I APPRECIATE YOUR EMAIL LAST NIGHT, MR. WADE,

08:51AM  6     SAYING THAT THESE ISSUES ARE NOT LIKELY TO COME UP IN THE

08:51AM  7     MORNING SESSION.

08:51AM  8              MR. WADE:  YEAH.  YES, YOUR HONOR.

08:51AM  9          I HAVE OTHER TOPICS THAT I CAN RAISE AND WE'RE HAPPY,

08:51AM  10    WE'RE HAPPY TO DISCUSS THIS AT LUNCH.

08:51AM  11         I WOULD NOTE, AGAIN, FOR THE COURT'S CONSIDERATION AND

08:51AM  12    FOCUS, IN CONSIDERING THE TESTIMONY THAT HE OFFERED MANY TIMES

08:51AM  13    OVER DEFENSE OBJECTION THAT WENT INTO HIS COMPETENCE, I THINK

08:51AM  14    THAT'S AN INDEPENDENT BASIS AND UNDER 403 -- I DON'T THINK WE

08:51AM  15    NEED TO GET INTO -- THE BIAS IS AN APPROPRIATE REASON TO

08:51AM  16    INQUIRE.  I THINK 608 IS AN APPROPRIATE REASON, BUT I THINK

08:51AM  17    IT'S ACTUALLY -- GIVEN WHAT HE HAS TESTIFIED AS TO HIS

08:51AM  18    COMPETENCE AND HIS BLAMING OTHER PEOPLE, I THINK 401 IS THE

08:51AM  19    MOST STRAIGHTFORWARD ANALYSIS, AND IF THE GOVERNMENT THINKS

08:51AM  20    THAT WE'VE REPRESENTED THESE THINGS UNFAIRLY, THEY CAN GO INTO

08:51AM  21    IT AND STRAIGHTEN THOSE ISSUES OUT WITHIN REDIRECT.

08:52AM  22         BUT I WILL SAY THAT WE DID PROVIDE THAT ARTICLE FOR THE

08:52AM  23    COURT'S BENEFIT BECAUSE IT WAS EASILY DIGESTIBLE.  THOSE EVENTS

08:52AM  24    ARE NOT THE SUBJECT OF DISPUTE.  THEY'RE ALSO IN S.E.C. FILINGS

08:52AM  25    OF THE COMPANY WHERE THEY DISCLOSE ESSENTIALLY THE SAME FACTS.

2574

| | | |
|---|---|---|
| 08:52AM | 1 | THE COURT:  WELL, I SEE -- THANK YOU. |
| 08:52AM | 2 | FIRST OF ALL, I SEE SOME 403 ISSUES ABOUT GETTING INTO |
| 08:52AM | 3 | THIS, AND THERE ARE SOME 611 ISSUES AS TO THIS WITNESS AND WHAT |
| 08:52AM | 4 | SHOULD HAPPEN HERE.  SOME OF THIS IS CUMULATIVE. |
| 08:52AM | 5 | HOW MUCH -- AND I'M JUST CURIOUS, WHAT IS IT YOU WANT TO |
| 08:52AM | 6 | DO?  YOU TOLD ME YOU WANT TO RAISE ALL OF THESE ISSUES, BUT I |
| 08:52AM | 7 | DON'T THINK ALL OF THESE ISSUES NECESSARILY UNDER A 403 |
| 08:52AM | 8 | ANALYSIS, PARTICULARLY THE UBIOME ISSUE, I HAVE SOME QUALMS |
| 08:52AM | 9 | ABOUT THAT, AND I'LL LET YOU KNOW. |
| 08:52AM | 10 | MR. WADE:  ON THE UBIOME ISSUE, YOUR HONOR, I THINK |
| 08:52AM | 11 | WE CAN ADDRESS THAT WITHOUT GOING INTO THE FACT THAT HE ENGAGED |
| 08:52AM | 12 | WITH THE GOVERNMENT. |
| 08:52AM | 13 | I THINK THE FACT THAT -- THE FACT THAT HE CONCEALED THAT |
| 08:52AM | 14 | FROM HIS RESUME BECAUSE HE WAS FIRED FOR INCOMPETENCE I THINK |
| 08:53AM | 15 | IS A FAIR AVENUE OF INQUIRY. |
| 08:53AM | 16 | THE COURT:  IS THERE A DOCUMENT THAT SAYS YOU ARE |
| 08:53AM | 17 | FIRED BECAUSE YOU'RE INCOMPETENT? |
| 08:53AM | 18 | MR. WADE:  THERE'S A DOCUMENT THAT SAYS THAT WE'VE |
| 08:53AM | 19 | DECIDED TO MAKE A CHANGE.  IN HIS INTERVIEW REPORT WITH THE |
| 08:53AM | 20 | GOVERNMENT, HE SAYS HE WAS FIRED, AND I BELIEVE HE SAYS BECAUSE |
| 08:53AM | 21 | HE SUSPECTS BECAUSE HE WASN'T MEETING HIS PROFESSIONAL |
| 08:53AM | 22 | OBLIGATIONS. |
| 08:53AM | 23 | THE COURT:  I DIDN'T HERE COMPETENCE IN ANY OF THAT. |
| 08:53AM | 24 | MR. WADE:  WELL, HE WASN'T SHOWING UP. |
| 08:53AM | 25 | THE COURT:  AND I HEARD THERE WERE SOME HEALTH |

08:53AM   1    ISSUES.

08:53AM   2            MR. WADE:  THAT WAS A DIFFERENT ISSUE.  THEY'RE

08:53AM   3    CONFLATING THE TWO.

08:53AM   4            THE COURT:  THAT'S THE PROBLEM WITH THIS TYPE OF

08:53AM   5    EVIDENCE.  YOU TRY TO PARSE IT TOGETHER AND PUT IT TOGETHER.

08:53AM   6       I THINK I UNDERSTAND WHAT YOU WANT TO DO.  YOU TOLD ME HOW

08:53AM   7    VALUABLE THIS EVIDENCE IS TO YOUR CASE AND I APPRECIATE THAT.

08:53AM   8       SO I'LL HAVE TO LOOK AT THIS.  I'VE JUST GOT THESE

08:53AM   9    DOCUMENTS.  I'LL LOOK AT THESE AND WE'LL HAVE SOME FURTHER

08:54AM  10    DISCUSSION.

08:54AM  11       I DO HAVE SOME CONCERNS ABOUT THE CUMULATIVE NATURE OF

08:54AM  12    THIS AND HOW MUCH OF THIS IS GOING TO -- IF IT COMES IN AT ALL,

08:54AM  13    WHAT I'LL ALLOW YOU TO INQUIRE ON.

08:54AM  14       HIS COMPETENCY MIGHT BE AT ISSUE.  I THINK THERE ARE

08:54AM  15    REASONS TO PROBE SOMEBODY'S COMPETENCY.

08:54AM  16       BUT HOW FAR YOU GO WITH THAT AND WHAT TYPE OF EXTRINSIC

08:54AM  17    EVIDENCE THAT IS PERMITTED FOR THAT I THINK IS A REAL ISSUE

08:54AM  18    HERE, AND I'M NOT CERTAIN THAT I WOULD PERMIT YOU TO RAISE ALL

08:54AM  19    OF THESE ISSUES AS YOU'VE SAID.

08:54AM  20       PERHAPS HE HAD ISSUES AFTER HIS EMPLOYMENT, AND IF YOU

08:54AM  21    WANT TO SUGGEST THAT HE HAD SOME PROBLEMS AT THERANOS AND THAT

08:54AM  22    THEY CONTINUED.

08:54AM  23       I DON'T KNOW EXACTLY WHAT IT IS.  I WANT TO LOOK AT THESE

08:54AM  24    AND SEE.  I DO HAVE SOME ISSUES ABOUT GOING INTO EVERYTHING

08:54AM  25    THAT YOU'VE TALKED ABOUT THIS MORNING, MR. WADE.  I THINK

| | | |
|---|---|---|
| 08:54AM | 1 | THAT'S A LITTLE TOO BROAD. |
| 08:55AM | 2 | MR. WADE:  AS I TOLD THE COURT I WOULD, WE BASICALLY |
| 08:55AM | 3 | PUT ALL OF OUR CARDS ON THE TABLE WITH THE GOVERNMENT AT THE |
| 08:55AM | 4 | APPROPRIATE TIME AND WE WANT TO GIVE THEM THE OPPORTUNITY TO |
| 08:55AM | 5 | RAISE THIS, BUT WE BELIEVE THESE ARE APPROPRIATE AVENUES FOR |
| 08:55AM | 6 | INQUIRY AND WE'RE HAPPY TO ANSWER ANY FURTHER QUESTIONS IF THE |
| 08:55AM | 7 | COURT HAS ANY AS IT GOES ALONG HERE. |
| 08:55AM | 8 | MR. BOSTIC:  LIKEWISE, YOUR HONOR.  JUST FOR NOW, IN |
| 08:55AM | 9 | CASE IT'S HELPFUL TO THE COURT, I DO HAVE A CASE I WOULD LIKE |
| 08:55AM | 10 | TO BRING TO THE COURT'S ATTENTION.  I HAVE PROVIDED THE DEFENSE |
| 08:55AM | 11 | WITH A COPY. |
| 08:55AM | 12 | IT'S UNITED STATES VERSUS CANDOLI.  I HAVE A COPY HERE. |
| 08:55AM | 13 | IT'S A NINTH CIRCUIT, AND IT'S BEEN HIGHLIGHTED ON PAGE 8. |
| 08:55AM | 14 | THE COURT:  THANK YOU. |
| 08:55AM | 15 | MR. BOSTIC:  IN ESSENCE, IT DEALS WITH THE COURT |
| 08:55AM | 16 | EXCLUDING EVIDENCE THAT WOULD GO TO BIAS BECAUSE IT WOULD BE |
| 08:55AM | 17 | DIVERSIONARY AND COLLATERAL. |
| 08:55AM | 18 | THE COURT:  HOW FAR -- HOW MUCH LONGER DO YOU THINK |
| 08:55AM | 19 | YOU HAVE, MR. WADE, NOT INCLUDING THIS INFORMATION THAT WE'VE |
| 08:55AM | 20 | DISCUSSED? |
| 08:55AM | 21 | MR. WADE:  AS I BELIEVE I HAVE TOLD THE COURT, I |
| 08:55AM | 22 | HESITATE TO EVER MAKE SUCH REPRESENTATIONS BECAUSE I'M TERRIBLE |
| 08:55AM | 23 | AT PREDICTING.  I WOULD THINK WE PROBABLY HAVE ABOUT THE |
| 08:56AM | 24 | MORNING BEFORE WE WOULD GET INTO THIS GENERAL AREA, AND THEN IN |
| 08:56AM | 25 | THE AFTERNOON I WOULD THINK SOMETIME, MAYBE THE LATER PART OF |

08:56AM  1    THE AFTERNOON WE WOULD GET INTO THIS.  BUT I WOULD BE HAPPY TO

08:56AM  2    UPDATE THE COURT ON HOW I'M DOING ON THE BREAK.

08:56AM  3         THE COURT:  ARE WE GOING TO BE FINISHED WITH THIS

08:56AM  4    WITNESS THIS WEEK?

08:56AM  5         MR. WADE:  IT WAS OUR HOPE, AS I TOLD COUNSEL, THAT

08:56AM  6    WE WOULD PASS THE WITNESS AT SOME POINT IN THE AFTERNOON AND

08:56AM  7    SOMETIMES --

08:56AM  8         THE COURT:  TODAY?

08:56AM  9         MR. WADE:  TODAY.  SOMETIMES IT'S HARD TO PREDICT.

08:56AM  10   I BELIEVE --

08:56AM  11        THE COURT:  SO DO I NEED TO -- I'M STARTING TO

08:56AM  12   RETHINK.  MAYBE WE NEED TO BE IN SESSION FRIDAY.

08:56AM  13        MR. WADE:  I BELIEVE THIS WITNESS HAS LIMITATIONS IN

08:56AM  14   TERMS OF HIS ABILITY TO BE HERE PAST WEDNESDAY, AND I BELIEVE

08:56AM  15   WE CAN, WE CAN FINISH THIS WITNESS.

08:56AM  16     MY UNDERSTANDING IS THAT THE GOVERNMENT MAYBE HAS --

08:57AM  17        THE COURT:  WELL, HE'S BEEN HERE FOR WHAT, THREE OR

08:57AM  18   FOUR DAYS?

08:57AM  19        MR. WADE:  HE HAS, YEAH.

08:57AM  20        THE COURT:  SO MAYBE HE'S EAGER TO STAY.  I DON'T

08:57AM  21   KNOW.

08:57AM  22        MR. WADE:  WE'VE BEEN ADVISED -- BOTH PARTIES HAVE

08:57AM  23   BEEN ADVISED BY BOTH COUNSEL THAT HE HAS COMMITMENTS AND

08:57AM  24   TOMORROW IS HIS LAST -- HE WOULD HAVE TO GO MEET THOSE

08:57AM  25   OBLIGATIONS AFTER TOMORROW.

08:57AM 1        I DON'T THINK THERE WILL BE ANY ISSUE CERTAINLY WITH

08:57AM 2    COMPLETING HIM TOMORROW.

08:57AM 3             THE COURT:  FROM YOUR SIDE?

08:57AM 4             MR. WADE:  FROM OUR SIDE.  MY HOPE IS --

08:57AM 5             THE COURT:  THAT'S VERY GENEROUS FOR YOU TO GIVE

08:57AM 6    HALF A DAY TO THE GOVERNMENT.

08:57AM 7             MR. WADE:  I BELIEVE MR. BOSTIC SUGGESTED THERE HE

08:57AM 8    THOUGHT -- AGAIN, UNDERSTANDING IT'S JUST AN ESTIMATE -- MAYBE

08:57AM 9    90 MINUTES IS WHAT WE DISCUSSED LAST NIGHT, BUT I DON'T WANT TO

08:57AM 10   SPEAK FOR MR. BOSTIC.

08:57AM 11            MR. BOSTIC:  THAT WAS MY BEST ESTIMATE AT THE TIME,

08:57AM 12   YOUR HONOR.

08:57AM 13        AS MR. WADE'S CROSS GOES ON, THE REDIRECT GETS A LITTLE

08:57AM 14   LONGER, AS THE COURT MIGHT IMAGINE.  BUT MY INTENTION IS TO

08:57AM 15   HAVE A REDIRECT MUCH SHORTER THAN THE CROSS.

08:57AM 16        AS TO THE WITNESS'S AVAILABILITY, I APOLOGIZE, BUT IT

08:58AM 17   WASN'T CLEAR TO ME FROM THE EMAIL WHETHER HE WAS UNAVAILABLE

08:58AM 18   AFTER WEDNESDAY OR SIMPLY UNAVAILABLE STARTING NEXT WEEK.

08:58AM 19        MR. WADE MIGHT HAVE A SHARPER MEMORY OF THAT THAN I DO.

08:58AM 20            THE COURT:  SO, MR. WADE, SHOULD I KEEP YOU FRIDAY

08:58AM 21   THEN TO DO OTHER WITNESSES BECAUSE WE NEED TO MOVE?  SHOULD WE

08:58AM 22   HAVE A SESSION ON FRIDAY TO CAPTURE SOME ADDITIONAL EVIDENCE?

08:58AM 23            MR. WADE:  I DEFER TO THE COURT.  I KNOW THAT THE

08:58AM 24   SCHEDULE HAS BEEN OUT THERE, AND THE JURORS MAY HAVE MADE

08:58AM 25   PLANS.

08:58AM 1        THE COURT:  YOU MAYBE HAVE MADE PLANS.  MAYBE YOU'VE

08:58AM 2    MADE PLANS.

08:58AM 3        MR. WADE:  WE'RE HERE TO MEET OUR OBLIGATIONS TO THE

08:58AM 4    COURT, SO WE'LL DO WHATEVER IS NECESSARY.

08:58AM 5        THE COURT:  LET ME, LET ME, I DO WANT TO TURN MY

08:58AM 6    ATTENTION TO ONE OTHER TOPIC WHICH IS VERY IMPORTANT AND

08:58AM 7    SOMEWHAT TROUBLING.

08:58AM 8        WE -- THAT IS, MY CHAMBERS -- MY CAREER CLERK RECEIVED A

08:58AM 9    PHONE CALL YESTERDAY FROM AN INDIVIDUAL, DR. KRAL, K-R-A-L.

08:59AM 10   SHE INFORMED MY CAREER CLERK -- SHE PHONED BECAUSE THE DOCTOR

08:59AM 11   RECEIVED A CALL FROM A JOURNALIST, AND THE JOURNALIST TOLD THE

08:59AM 12   DOCTOR THAT THERE WAS AN EXHIBIT, A DEFENSE EXHIBIT DX 12846

08:59AM 13   WHICH WAS SUBMITTED BY THE DEFENSE AND ADMITTED AT THEIR

08:59AM 14   REQUEST, AND THIS DOCUMENT CONTAINED WAS NOT REDACTED.  IT

08:59AM 15   CONTAINED THE NAME OF THE PATIENT, AND THE DOCTOR INFORMED MY

08:59AM 16   CAREER CLERK THAT THIS WAS CLEARLY A HIPAA VIOLATION.

08:59AM 17   I DON'T KNOW WHO THE JOURNALIST WAS, I DON'T KNOW WHAT THE

08:59AM 18   CONVERSATION WAS, BUT IT WAS A JOURNALIST WHO CONTACTED THE

08:59AM 19   DOCTOR AND INFORMED HER OF THIS.

08:59AM 20   OUR STAFF, MY WONDERFUL CHAMBERS STAFF, IMMEDIATELY

08:59AM 21   CONTACTED THE COMMUNICATIONS DIRECTOR IN CHARGE OF PRESS

09:00AM 22   RELATIONS FOR THE COURT, THE NORTHERN DISTRICT, AND SAW THAT

09:00AM 23   THAT EXHIBIT WAS TAKEN DOWN.

09:00AM 24   I THINK WE CONTACTED YOUR FOLKS, MR. WADE.  I'M NOT SURE

09:00AM 25   IF THAT HAS HAPPENED YET, BUT WHAT WE WILL NEED TO DO IS FOR

09:00AM 1    YOU TO SUBMIT A PROPERLY REDACTED EXHIBIT FOR THE RECORD SUCH

09:00AM 2    THAT THERE IS NOT ANOTHER HIPAA VIOLATION OF A DISINTERESTED

09:00AM 3    PARTY IN THIS PARTICULAR CASE.

09:00AM 4        AND WHAT I AM GOING TO REQUIRE PARTIES TO DO IS TO SCREEN

09:00AM 5    THOROUGHLY ANY EXHIBITS THAT ARE PLACED INTO EVIDENCE AND MAKE

09:00AM 6    SURE AND ENSURE THAT THERE ARE APPROPRIATE AND PROPER

09:00AM 7    REDACTIONS SUCH THAT A MEMBER OF THE PUBLIC DOES NOT HAVE FEAR

09:00AM 8    THAT HIS OR HER PROPRIETARY AND PRIVATE HEALTH INFORMATION IS

09:00AM 9    MADE PUBLIC IN A CASE.  THAT'S WHAT HAPPENED HERE.

09:01AM 10       OF COURSE THE DOCTOR WAS OF GREAT CONCERN FOR HER PATIENT

09:01AM 11   AND SHE DID WHAT SHE FELT WAS APPROPRIATE.  I DON'T KNOW WHO

09:01AM 12   THE JOURNALIST WAS.  I DON'T HAVE THAT INFORMATION.  I DON'T

09:01AM 13   KNOW.

09:01AM 14       MY SENSE IS THAT THE JOURNALIST WILL RESPECT THE PRIVACY

09:01AM 15   OF THIS PATIENT AND KEEP THAT CONFIDENTIAL, BUT I DON'T HAVE

09:01AM 16   ANY CONTROL OVER THAT EITHER.

09:01AM 17           MR. WADE:  YOUR HONOR, OBVIOUSLY WE -- THIS IS AN

09:01AM 18   ISSUE THAT HAS COME UP A COUPLE OF TIMES DURING COURT.  I KNOW

09:01AM 19   I REPRESENT TO THE COURT WE ARE MAKING DILIGENT EFFORTS AS

09:01AM 20   WE'RE MOVING QUICKLY WITH A LOT OF DOCUMENTS TO TRY TO DO THAT,

09:01AM 21   BUT THAT'S NOT AN ACCEPTABLE RESULT AND WE WILL ADDRESS THAT

09:01AM 22   IMMEDIATELY AND REDOUBLE OUR EFFORTS ON CONTROL.

09:01AM 23       I KNOW THERE'S A DESIRE BY THE COURT TO TRY TO MAKE

09:01AM 24   INFORMATION PUBLIC QUICKLY.  MAYBE SEPARATELY WE CAN WORK WITH

09:01AM 25   THE COURT AND JUST ALLOW US A LITTLE MORE TIME TO DO AN EXTRA

09:02AM 1    LEVEL OF REVIEW GIVEN THE SENSITIVITY OF SOME OF THIS

09:02AM 2    INFORMATION, GIVEN THAT IT'S GOING UP ONTO THE INTERNET AND

09:02AM 3    JOURNALISTS ARE GOING THROUGH IT.  MAYBE WE NEED TO MAKE IT --

09:02AM 4    TAKE ANOTHER DAY OR SO JUST TO DOUBLE-CHECK.

09:02AM 5            THE COURT:  WELL, THAT SHOULD BE DONE, SHOULDN'T IT,

09:02AM 6    AT THE TIME THE EXHIBIT IS OFFERED?  SHOULDN'T THE REDACTIONS

09:02AM 7    BE ON THE DOCUMENTS?

09:02AM 8            MR. WADE:  THEY ARE.  AS THE COURT IS SEEING

09:02AM 9    SOMETIMES WHEN THE DOCUMENT IS PUBLISHED, I BELIEVE BOTH

09:02AM 10   PARTIES HAVE PUT UP DOCUMENTS AND THEY INADVERTENTLY INCLUDED

09:02AM 11   THAT, AND SO THERE'S AN EFFORT ON THE BACK END TO MAKE SURE

09:02AM 12   THAT THAT INFORMATION IS REMOVED.

09:02AM 13           THE COURT:  I KNOW DOCUMENTS HAVE COME UP ON MY

09:02AM 14   SCREEN AND I'VE INTERRUPTED YOUR EXAMINATION TO SAY I THINK

09:02AM 15   THERE'S SOME REDACTIONS.

09:02AM 16       I'VE BEEN INFORMED THAT, WELL, JUDGE, YOU'RE SEEING THE

09:02AM 17   UNREDACTED FORM, BUT THE DOCUMENT HAS ALREADY BEEN REDACTED AND

09:02AM 18   THE JURORS AND THE PUBLIC ARE SEEING THE REDACTED FORM.

09:02AM 19       SO I ASSUME THAT THAT CAN BE DONE AND I ASSUME THAT THAT

09:02AM 20   HAS BEEN DONE ONGOING.  I WAS QUITE SURPRISED, AS I'M SURE YOU

09:03AM 21   WERE, TO HEAR ABOUT IT.

09:03AM 22           MR. WADE:  VERY SURPRISED, YEAH.  IT'S NOT

09:03AM 23   ACCEPTABLE.

09:03AM 24           THE COURT:  WE CAN'T DO THIS.  THIS IS A TRIAL THAT

09:03AM 25   INVOLVES OBVIOUSLY A LOT OF EXHIBITS, AND PERSONAL EXHIBITS

09:03AM 1    REGARDING HEALTH, PROPRIETARY INFORMATION OF INDIVIDUALS WHO

09:03AM 2    ARE NOT CONNECTED TO THIS CASE OTHER THAN THEY HAPPEN TO HAVE

09:03AM 3    HEALTH ISSUES THAT SOMEHOW CAME TO BE DURING THEIR CONTACT WITH

09:03AM 4    EITHER THERANOS OR OTHER MEDICAL PROVIDERS, AND IT'S

09:03AM 5    INAPPROPRIATE FOR THEIR PRIVACY TO BE INVADED LIKE THIS WHEN

09:03AM 6    HIPAA GUARANTEES THAT IT WON'T BE.

09:03AM 7         SO I DON'T HAVE TO REMIND YOU ABOUT THIS.  WE JUST NEED TO

09:03AM 8    EXERCISE MORE CAUTION.

09:03AM 9              MR. WADE:  WE AGREE, YOUR HONOR.

09:03AM 10             THE COURT:  THE OTHER ISSUE THAT COMES UP -- WE'RE

09:03AM 11   ALREADY PAST 9:00 O'CLOCK -- BUT THERE WAS A MEDIA COALITION

09:03AM 12   THAT FILED A MOTION TO UNSEAL QUESTIONNAIRES OF THE JURY.

09:03AM 13        WE HAD A HEARING LAST WEEK.  I THINK REPRESENTATIVES OF

09:04AM 14   THE GOVERNMENT, MR. CLINE WAS A PARTICIPATE ON BEHALF OF

09:04AM 15   MS. HOLMES.

09:04AM 16        AS A RESULT OF THAT HEARING, I INFORMED THE PARTIES TO

09:04AM 17   THAT MOTION THAT I WOULD ENGAGE A CONVERSATION WITH THE JURORS

09:04AM 18   AND SPEAK WITH EACH OF THEM PRIVATELY IN CHAMBERS, IN CAMERA,

09:04AM 19   WITH A COURT REPORTER, OF COURSE, TO ASK THEIR OPINIONS ABOUT

09:04AM 20   THE ISSUE OF UNSEALING.

09:04AM 21        I'M GOING TO INFORM THE JURORS OF THIS JUST BEFORE OUR

09:04AM 22   BREAK.  I DON'T WANT TO TELL THEM THAT AS WE START.  I WANT

09:04AM 23   THEM TO BE FOCUSSED ON THE TESTIMONY AND EVIDENCE HERE.

09:04AM 24        BUT JUST BEFORE OUR BREAK, WHAT I BELIEVE I'LL DO -- AND

09:04AM 25   I'M THINKING I'LL DO THIS TODAY, BUT IN LIGHT OF ALL OF THESE

09:04AM 1    OTHER ISSUES IT MAY HAVE TO WAIT UNTIL NEXT WEEK -- BUT WHAT I

09:04AM 2    WANT TO DO IS TO PROVIDE THE JURORS WITH THEIR QUESTIONNAIRES

09:04AM 3    TODAY, OR AT SOME POINT DURING OUR TRIAL, SO THEY CAN REVIEW

09:04AM 4    THEM OVER THE BREAK.

09:04AM 5        I WILL THEN ASK THEM AT THE END OF OUR SESSION WHETHER OR

09:05AM 6    NOT ANY OF THEM WISH TO STAY.  THEY CAN STAY AFTER OUR COURT TO

09:05AM 7    TALK WITH ME.  IF THEY PREFER TO TAKE THEIR QUESTIONNAIRE HOME,

09:05AM 8    REVIEW IT, AND COME BACK THE NEXT DAY, WE CAN HAVE A

09:05AM 9    CONVERSATION AND ACCOMMODATE THEM IN THAT REGARD ALSO.

09:05AM 10        SO THAT MIGHT INTERRUPT SOME OF OUR COURT TIME.

09:05AM 11        MR. WADE, DO YOU NEED A MOMENT?

09:05AM 12            MR. WADE:  I'LL DEFER TO MR. DOWNEY ON THE ISSUES

09:05AM 13    RELATING TO THE JURY.

09:05AM 14            THE COURT:  SURE.

09:05AM 15            MR. DOWNEY:  JUDGE, I THINK IF THERE'S TO BE AN

09:05AM 16    EXERCISE WHERE THE JURORS HAVE THAT CONVERSATION WITH

09:05AM 17    YOUR HONOR, WE WOULD BE INCLINED TO WAIVE THE PRESENCE OF THE

09:05AM 18    DEFENDANT PERSONALLY FOR THAT.  BUT I ASSUME -- WILL COUNSEL --

09:05AM 19    DOES THE COURT INTEND TO HAVE ONE COUNSEL FROM EACH SIDE

09:05AM 20    PRESENT?

09:05AM 21            THE COURT:  NO.

09:05AM 22            MR. DOWNEY:  I THINK UNDER RULE 24 THAT WOULD BE

09:05AM 23    APPROPRIATE, SO WE WOULD REQUEST THAT COUNSEL HAVE THE

09:05AM 24    OPPORTUNITY TO BE PRESENT.

09:05AM 25            THE COURT:  MY, MY INTENT WAS TO HAVE, AS I SAID AT

09:06AM   1    THE MOTION, WAS TO HAVE AN INDIVIDUAL IN CAMERA CONVERSATION

09:06AM   2    WITH EACH JUROR WITHOUT COUNSEL.  WE'LL HAVE A REPORTER THERE

09:06AM   3    THAT WILL REPORT MY QUESTIONS.

09:06AM   4        I'M GOING TO ENDEAVOR TO ASK EACH JUROR THE SAME

09:06AM   5    QUESTIONS.  I'M NOT GOING TO DEVIATE FROM THAT.

09:06AM   6        BUT MY SENSE IS THAT THIS IS AN ISSUE THAT IS COLLATERAL

09:06AM   7    TO THE TRIAL -- THAT IS, THE EVIDENCE OF THE TRIAL -- AND IT

09:06AM   8    INVOLVES THEIR QUESTIONNAIRES AND THE PRESS DESIRE TO HAVE

09:06AM   9    ACCESS TO THOSE QUESTIONNAIRES.

09:06AM  10        YOU HAVE ALREADY -- YOU AND THE GOVERNMENT HAVE ALREADY

09:06AM  11    BEEN PARTICIPANTS IN THE VOIR DIRE PROCESS, OF COURSE, SO

09:06AM  12    YOU'VE HAD AN OPPORTUNITY TO ASK THOSE QUESTIONS.

09:06AM  13        THIS IS RELATED -- THIS ISSUE RELATES TO WHETHER OR NOT

09:06AM  14    AND UNDER WHAT CIRCUMSTANCES THAT INFORMATION IN THOSE

09:06AM  15    QUESTIONNAIRES WOULD BE PROVIDED.

09:06AM  16        AS I SAID IN THE MOTION, AT THE MOTION, THE COURT INTENDS

09:06AM  17    TO INVITE EACH JUROR IN, IN CAMERA WITH ME, AND I MAY HAVE A

09:07AM  18    LAW CLERK THERE AS WELL, AND I'M GOING TO ASK THEM THE

09:07AM  19    QUESTIONS.  IN ESSENCE, I'M GOING TO ASK THEM THEIR FEELINGS

09:07AM  20    ABOUT THE RECENT INFORMATION AND THEIR CONCERNS WITH ANY

09:07AM  21    PRIVATE INFORMATION, AND THAT'S WHAT I INTEND TO DO.

09:07AM  22        I DON'T THINK COUNSEL NEEDS TO BE PRESENT FOR THAT.  IT'S

09:07AM  23    NOT GOING TO BE AN EXAMINATION.  THEY'RE NOT GOING TO BE PUT

09:07AM  24    UNDER OATH.  I'M NOT GOING TO ADMINISTER AN OATH TO THEM.

09:07AM  25        I'LL ASK THEM THEIR FEELINGS.  WE'LL HAVE A TRANSCRIPT OF

| | | |
|---|---|---|
| 09:07AM | 1 | IT AND COUNSEL MAY BE ABLE TO REVIEW THE TRANSCRIPT IF THEY |
| 09:07AM | 2 | WISH.  BUT THE TRANSCRIPT, LET ME JUST SAY, WILL OTHERWISE BE |
| 09:07AM | 3 | SEALED PENDING RESOLUTION OF THE ISSUE. |
| 09:07AM | 4 | BUT THAT'S WHAT I TOLD THE LAWYER FOR THE MOTION. |
| 09:07AM | 5 | I ALSO INTEND TO IDENTIFY THE MEMBERS OF THE MEDIA |
| 09:07AM | 6 | COALITION TO THE JURORS AND THE MOVING PARTIES SO THEY HAVE |
| 09:07AM | 7 | THAT INFORMATION AS WELL. |
| 09:07AM | 8 | MR. DOWNEY:  WELL, I AGREE WITH THE COURT, IT'S A |
| 09:08AM | 9 | SENSITIVE PROCESS, AND MY PROPOSAL TO SIMPLY HAVE ONE COUNSEL |
| 09:08AM | 10 | PRESENT I THINK REFLECTS THAT. |
| 09:08AM | 11 | BUT WITH RESPECT, YOUR HONOR, I DON'T THINK THAT IT'S |
| 09:08AM | 12 | COLLATERAL TO THE TRIAL AND WE WOULD ASSERT OUR RIGHT TO HAVE |
| 09:08AM | 13 | AT LEAST COUNSEL PRESENT FOR THAT TYPE OF A DIALOGUE WHERE |
| 09:08AM | 14 | ISSUES AFFECTING THE TRIAL MAY BE RAISED BY THE JURORS. |
| 09:08AM | 15 | SO I UNDERSTAND YOUR HONOR'S INTENDED APPROACH, BUT WOULD |
| 09:08AM | 16 | OBJECT TO THE COLLOQUY HAPPENING OUTSIDE OF THE PRESENCE OF |
| 09:08AM | 17 | COUNSEL. |
| 09:08AM | 18 | THE COURT:  AND MY THOUGHT ON THAT IS THAT HAVING |
| 09:08AM | 19 | COUNSEL PRESENT WOULD SERVE A CONTRADICTORY PURPOSE FOR THE |
| 09:08AM | 20 | INTERVIEW.  MY SENSE IS THAT IT WOULD BE INTIMIDATING TO HAVE |
| 09:08AM | 21 | COUNSEL PRESENT WHEN I ASK THEM THOSE QUESTIONS, AND I WANT THE |
| 09:08AM | 22 | JURORS TO NOT BE INTIMIDATED OR FEEL UNDUE PRESSURE ABOUT THIS. |
| 09:08AM | 23 | THIS IS A QUESTION ABOUT THE QUESTIONNAIRES. |
| 09:09AM | 24 | MY SENSE IS THAT THE CONVERSATION WILL BE THEIR COMFORT |
| 09:09AM | 25 | LEVEL IN ALLOWING ANY INFORMATION TO BE REVEALED. |

09:09AM   1          I'M NOT GOING TO ASK THEM ABOUT THEIR THOUGHTS ABOUT THE

09:09AM   2     CASE.  I'M NOT GOING TO ASK THEM ABOUT THE EVIDENCE IN THE CASE

09:09AM   3     AT ALL.  THAT'S INAPPROPRIATE.  IT'S INAPPROPRIATE, AND I DON'T

09:09AM   4     INTEND TO DO THAT.

09:09AM   5          AGAIN, MY INTENT IS TO ASK THEM QUESTIONS JUST ABOUT THIS

09:09AM   6     QUESTIONNAIRE AND THAT'S IT.

09:09AM   7          IF YOU WANT TO BE PRESENT, I'LL ASK THE GOVERNMENT IF THEY

09:09AM   8     WANT TO BE PRESENT, THEN MAYBE WE WILL HAVE TO COME FRIDAY TO

09:09AM   9     TAKE CARE OF THIS.

09:09AM  10                MR. DOWNEY:  THAT WOULD BE FINE, YOUR HONOR.

09:09AM  11                THE COURT:  WE'LL HAVE TO DO THIS ON SOME OTHER DAY.

09:09AM  12                MR. DOWNEY:  YEAH.

09:09AM  13                MR. LEACH:  YOUR HONOR.

09:09AM  14                MR. BOSTIC:  YOUR HONOR, FOR THE GOVERNMENT, I THINK

09:09AM  15     WE DEFER TO THE COURT ON WHETHER COUNSEL'S PRESENCE IS

09:09AM  16     NECESSARY.

09:09AM  17          I THINK THE COURT'S POINT ABOUT FACILITATING THAT WITH THE

09:09AM  18     JURORS IS WELL TAKEN AND SO WE DEFER TO THE COURT ON THAT.

09:09AM  19          WE WILL MAKE OURSELVES AVAILABLE AT ANOTHER TIME IF THE

09:09AM  20     COURT DECIDES TO PROCEED WITH COUNSEL PRESENT.

09:09AM  21                MR. DOWNEY:  I WELL UNDERSTAND YOUR HONOR'S INTENT

09:10AM  22     AND I THINK THE NATURE OF THE EXERCISE -- I THINK YOUR HONOR'S

09:10AM  23     QUESTIONS WILL BE ALONG THE LINES THAT YOU'VE DESCRIBED.  BUT

09:10AM  24     THE NATURE OF THE EXERCISE IS A DIALOGUE AND WE DON'T KNOW WHAT

09:10AM  25     WILL RESULT FROM THAT DIALOGUE.  THAT'S WHAT ANIMATES MY

09:10AM 1    QUESTION.

09:10AM 2         THE COURT:  SO WHAT WOULD HAPPEN IF WE'RE IN THERE

09:10AM 3    AND IF I SAY, COME ON IN, AND I'D LIKE YOU TO JOIN ME, WHAT

09:10AM 4    WILL YOU DO?  IF YOU HAVE A CONCERN ABOUT A QUESTION, YOU'LL

09:10AM 5    OBJECT AND YOU WOULD LIKE TO RAISE AN OBJECTION IN FRONT OF THE

09:10AM 6    JURORS?  IS THAT WHAT YOU WANT TO DO, MR. DOWNEY?

09:10AM 7         MR. DOWNEY:  WELL, NO.  BUT I THINK THE REACTIONS OF

09:10AM 8    JURORS IN AN ONGOING TRIAL TO THEIR INFORMATION THAT THEY WERE

09:10AM 9    TOLD WOULD BE CONFIDENTIAL BEING UNSEALED MAY AFFECT THEIR

09:10AM 10   ATTITUDES IN A NUMBER OF WAYS.

09:10AM 11       I DON'T KNOW THAT WE WOULD NEED TO QUESTION THEM, BUT I

09:10AM 12   THINK WE HAVE A RIGHT TO BE PRESENT AT LEAST AND OBSERVE.

09:11AM 13       IF ISSUES COME UP THAT WE WANTED TO ADDRESS WITH

09:11AM 14   YOUR HONOR, WE WOULD PROBABLY DO IT WITHOUT THAT JUROR PRESENT

09:11AM 15   AND PREVIEW TO YOUR HONOR ANYTHING THAT WE THOUGHT NECESSITATED

09:11AM 16   THAT INQUIRY.

09:11AM 17       SO I DON'T WANT TO -- IT'S NOT TO OUR ADVANTAGE TO MAKE

09:11AM 18   THE JURORS UNCOMFORTABLE.  BUT IT IS, I THINK, NECESSARY TO

09:11AM 19   OBSERVE THE DIALOGUE WHEN IT'S IN PROCESS.

09:11AM 20       THE COURT:  I SEE.  SO IF I WERE TO ENGAGE JURORS IN

09:11AM 21   THIS COURTROOM AND TREAT THIS COURTROOM AS MY CHAMBERS, THAT

09:11AM 22   IS, SEAL THE COURTROOM, AND INVITE THE JURORS IN, AND YOU AND

09:11AM 23   THE GOVERNMENT WERE INVITED TO MY CHAMBERS AND I EXTENDED MY

09:11AM 24   CHAMBERS TO THE VIEWING ROOM THAT WE HAVE AND YOU COULD WATCH

09:11AM 25   IT ON A CLOSED CIRCUIT T.V., WOULD THAT SUFFICE FOR YOU?

2588

09:11AM 1          MR. DOWNEY:  WELL, YOUR HONOR, IT REALLY DEPENDS.

09:12AM 2     IT SEEMS TO ME THAT WHAT I'M SUGGESTING WITH ONE COUNSEL

09:12AM 3  BEING PRESENT IS MINIMALLY INVASIVE, AS WELL AS I THINK

09:12AM 4  DEFERRING ANY ISSUES THAT COME UP SO THE JUROR IS NOT IN THE

09:12AM 5  PROCESS OF BEING QUESTIONED.  I THINK IT ELIMINATES THE CONCERN

09:12AM 6  THAT THE COURT HAS.

09:12AM 7          FUNDAMENTALLY, I THINK OUR DISAGREEMENT IS I DON'T AGREE

09:12AM 8  THAT THIS IS COLLATERAL TO THE TRIAL.  I THINK THAT'S THE

09:12AM 9  ISSUE, AND I THINK FOR DEFENSE COUNSEL TO ABSENT ITSELF JUST IS

09:12AM 10  NOT AN APPROPRIATE DISCHARGE OF COUNSEL'S DUTY.

09:12AM 11          THE COURT:  SO WHAT I HEAR YOU SAYING IS THAT THE

09:12AM 12  TRANSCRIPT, YOUR OPINION IS THE TRANSCRIPT IS NOT SUFFICIENT

09:12AM 13  FOR THAT PURPOSE?

09:12AM 14          MR. DOWNEY:  THAT'S CORRECT, YOUR HONOR.

09:12AM 15          THE COURT:  AND WHAT ABOUT YOUR PARTICIPATION VIA

09:12AM 16  VIDEO, WATCHING THE PROCEEDINGS VIA VIDEO?

09:12AM 17          MR. DOWNEY:  GENERALLY THAT'S NOT APPROPRIATE,

09:12AM 18  YOUR HONOR, AND I WOULDN'T WANT TO CONSENT TO THAT.  BUT

09:13AM 19  OBVIOUSLY IT'S BETTER THAN NOT BEING PRESENT.

09:13AM 20     WE WOULDN'T HAVE THE OPPORTUNITY, I THINK, IN THE WAY THAT

09:13AM 21  IS NORMAL TO OBSERVE THOSE INTERACTIONS, AND I DON'T THINK --

09:13AM 22  I'M NOT INSULTED THAT YOU THINK THAT MR. SCHENK AND I WOULD BE

09:13AM 23  INTIMIDATING, BUT I DON'T THINK IT'S INTIMIDATING TO THE

09:13AM 24  JURORS.

09:13AM 25          THE COURT:  WELL, YOU KNOW, A COUPLE OF BLUE SUITS

09:13AM 1    NEXT TO THEM SITTING AND LOOKING AT THEM IN A JUDGE'S CHAMBERS,

09:13AM 2    WHAT COULD BE INTIMIDATING ABOUT THAT?

09:13AM 3        ALL RIGHT.  WELL, WE SHOULD GET OUR JURY AND GET STARTED

09:13AM 4    WITH THE EVIDENCE.

09:13AM 5            MR. DOWNEY:  THANK YOU.

09:13AM 6            THE COURT:  THANK YOU, YOUR HONOR.

09:16AM 7        (RECESS FROM 9:16 A.M. UNTIL 9:24 A.M.)

09:24AM 8        (JURY IN AT 9:24 A.M.)

09:24AM 9            THE COURT:  ALL RIGHT.  GOOD MORNING.  WE'RE BACK ON

09:24AM 10   THE RECORD IN THE HOLMES MATTER.  ALL COUNSEL IS PRESENT.

09:24AM 11   MS. HOLMES IS PRESENT.

09:24AM 12       DR. ROSENDORFF IS ON THE STAND.

09:24AM 13       GOOD MORNING, LADIES AND GENTLEMEN OF OUR JURY.  IT'S NICE

09:24AM 14   TO SEE YOU AGAIN.  I APOLOGIZE FOR THE DELAY.  I NEEDED SOME

09:24AM 15   ASSISTANCE FROM THE LAWYERS THIS MORNING ON SOME ISSUES.

09:24AM 16       BEFORE WE BEGIN THE CONTINUED EXAMINATION DR. ROSENDORFF,

09:24AM 17   I DO NEED TO ASK YOU, OVER THE LONG WEEKEND, LADIES AND

09:24AM 18   GENTLEMEN, HAVE ANY OF YOU HAD OCCASION TO COME ACROSS, BE

09:24AM 19   EXPOSED TO OR SPEAK ABOUT THIS CASE, ANY OF THE PARTIES OR

09:24AM 20   ANYTHING TO DO WITH THIS CASE IN ANY FASHION?  HAS ANYONE HAD

09:24AM 21   THAT EXPERIENCE?

09:24AM 22       AGAIN, IF YOU WANT TO SPEAK PRIVATELY, WE CAN DO THAT.

09:24AM 23       I SEE NO HANDS.

09:24AM 24       THANK YOU VERY MUCH.

09:25AM 25       MR. WADE, YOU HAVE QUESTIONS?

09:25AM  1              MR. WADE:  I DO, YOUR HONOR.  THANK YOU.

09:25AM  2              THE COURT:  DOCTOR, IF YOU COULD JUST STATE YOUR

09:25AM  3     NAME, PLEASE.

09:25AM  4              THE WITNESS:  ADAM ROSENDORFF.

09:25AM  5              THE COURT:  THANK YOU.  AND I'LL REMIND YOU, SIR,

09:25AM  6     YOU'RE STILL UNDER OATH.

09:25AM  7              THE WITNESS:  THANK YOU.

09:25AM  8              THE COURT:  YOU'RE WELCOME.

09:25AM  9          **(GOVERNMENT'S WITNESS, ADAM ROSENDORFF, WAS PREVIOUSLY**

09:25AM  10    **SWORN.)**

09:25AM  11                      **CROSS-EXAMINATION (RESUMED)**

09:25AM  12    BY MR. WADE:

09:25AM  13    Q.   GOOD MORNING, DR. ROSENDORFF.

09:25AM  14    A.   GOOD MORNING.

09:25AM  15    Q.   I'D LIKE TO ASK YOU SOME MORE QUESTIONS ABOUT SOME OF THE

09:25AM  16    ASSAYS THAT YOU TESTIFIED ABOUT ON DIRECT EXAMINATION.

09:25AM  17    A.   OKAY.

09:25AM  18    Q.   AND BEFORE I DO THAT, I WOULD JUST -- WE -- YOU GAVE SOME

09:25AM  19    TESTIMONY ABOUT YOUR INTERACTIONS WITH THE GOVERNMENT; CORRECT?

09:25AM  20    A.   YES.

09:25AM  21    Q.   AND THE MEETINGS THAT YOU HAD IN ADVANCE OF YOUR

09:25AM  22    TESTIMONY?

09:25AM  23    A.   YES.

09:25AM  24    Q.   THREE MEETINGS; CORRECT?

09:25AM  25    A.   CORRECT.

ROSENDORFF CROSS BY MR. WADE (RES.)                          2591

09:25AM  1    Q.   AND I JUST WANT TO MAKE A COUPLE OF POINTS CLEAR.  IN

09:25AM  2    THOSE MEETINGS, YOU DIDN'T DECIDE WHICH DOCUMENTS YOU WOULD

09:26AM  3    LOOK AT; CORRECT?  THEY SHOWED YOU DOCUMENTS?

09:26AM  4    A.   CORRECT.

09:26AM  5    Q.   AND THEY CHOSE WHICH ONES TO ASK YOU QUESTIONS ABOUT?

09:26AM  6    A.   CORRECT.

09:26AM  7    Q.   OKAY.  AND IN YOUR DIRECT EXAMINATION, YOU DIDN'T DECIDE

09:26AM  8    THE ORDER IN WHICH YOU WOULD GO THROUGH THE DOCUMENTS; CORRECT?

09:26AM  9    A.   NO.

09:26AM 10    Q.   THE GOVERNMENT FOCUSSED YOU ON SPECIFIC PORTIONS OF

09:26AM 11    DOCUMENTS AND ASKED YOU QUESTIONS ABOUT THAT?

09:26AM 12    A.   CORRECT.

09:26AM 13    Q.   I WANT TO LOOK AT A FEW OF THOSE DOCUMENTS.

09:26AM 14         SPECIFICALLY I WANT TO TURN TO HDL.  AND I'M GOING -- DO

09:26AM 15    YOU RECALL THAT YOU GAVE SOME TESTIMONY ABOUT HDL?

09:26AM 16    A.   YES.

09:26AM 17    Q.   OKAY.  AND YOU TALKED ABOUT AN HDL ISSUE THAT AROSE IN

09:26AM 18    FEBRUARY OF 2014.

09:26AM 19         DO YOU RECALL THAT?

09:26AM 20    A.   I DON'T RECALL THE EXACT DATE.

09:26AM 21    Q.   WELL, LET ME PULL UP THE DOCUMENT.  IT'S EXHIBIT 1543.

09:26AM 22    IT'S IN EVIDENCE AND WE'LL PUT -- WE'LL PUT THE PORTION OF THE

09:27AM 23    DOCUMENT THAT YOU WERE ASKED ABOUT BY THE GOVERNMENT UP ON TO

09:27AM 24    THE SCREEN.

09:27AM 25         DO YOU SEE UP ON THE SCREEN TWO PORTIONS OF THE

ROSENDORFF CROSS BY MR. WADE (RES.)                                2592

09:27AM   1    DOCUMENT 1543?

09:27AM   2        AND THE ENTIRE DOCUMENT I BELIEVE IS IN THE WHITE BINDER.

09:27AM   3    FEEL FREE TO LOOK AT IT ANY TIME.

09:27AM   4    A.   YES.

09:27AM   5            MR. WADE:  SHOULD WE WAIT A SECOND, YOUR HONOR?

09:27AM   6            THE CLERK:  MY APOLOGIES, BUT IT WAS POINTING TO THE

09:27AM   7    CEILING, YOUR HONOR.

09:27AM   8        MY APOLOGIES, COUNSEL.

09:27AM   9            MR. WADE:  MY BEST ANGLE.

09:27AM  10    Q.   DO YOU HAVE 1543 IN FRONT OF YOU, SIR?

09:27AM  11    A.   YES.

09:27AM  12    Q.   OKAY.  AND DO YOU RECALL BEING QUESTIONED BY THE

09:28AM  13    GOVERNMENT ABOUT THESE PORTIONS OF THE DOCUMENTS?

09:28AM  14    A.   YES.

09:28AM  15    Q.   AND IT WAS A PRETTY LENGTHY SERIES OF QUESTIONS.  YOU WERE

09:28AM  16    ASKED ABOUT THE CAUSE OF THIS ISSUE.

09:28AM  17        DO YOU RECALL THAT?

09:28AM  18    A.   YES.

09:28AM  19    Q.   AND YOU SAID THAT YOU SUSPECTED IT WAS A PROBLEM WITH THE

09:28AM  20    ASSAY; RIGHT?

09:28AM  21    A.   YES.

09:28AM  22    Q.   OKAY.  AND THEY ASKED YOU ABOUT THE SPATE -- DO YOU SEE UP

09:28AM  23    THERE, THE SPATE OF LOW HDL VALUES?

09:28AM  24    A.   YES.

09:28AM  25    Q.   AND THEY TALKED ABOUT HOW YOU NOTED IN THERE THAT THE

ROSENDORFF CROSS BY MR. WADE (RES.)                           2593

09:28AM   1      ASSAY HAD FAILED; RIGHT?

09:28AM   2      A.   YES.

09:28AM   3      Q.   OKAY.

09:28AM   4      A.   I SAID I SUSPECT THAT OUR HDL ASSAY HAD FAILED.

09:28AM   5      Q.   RIGHT.  AND THAT'S THE TESTIMONY THAT THE GOVERNMENT

09:28AM   6      ELICITED.

09:28AM   7           DO YOU RECALL THAT?  DO YOU RECALL QUESTIONS ABOUT THE

09:28AM   8      FACT THAT THE ASSAY HAD FAILED?

09:28AM   9      A.   YES.

09:28AM  10      Q.   AND THAT YOU ACTUALLY DESCRIBED SOME CIRCUMSTANCES

09:29AM  11      RELATING TO THAT THAT ARE REFERENCED IN THESE PORTIONS OF THE

09:29AM  12      EXHIBITS RELATING TO QC.

09:29AM  13           DO YOU RECALL THAT?

09:29AM  14      A.   YES.

09:29AM  15      Q.   THIS HAD ACTUALLY PASSED QC AND THE GOVERNMENT ASKED IF

09:29AM  16      THIS WAS AN OCCASION WHERE QC COULD PASS BUT THERE WOULD STILL

09:29AM  17      BE A PROBLEM.

09:29AM  18           DO YOU RECALL THAT?

09:29AM  19      A.   YES, YES.

09:29AM  20      Q.   AND YOU SAID YES; RIGHT?

09:29AM  21      A.   YES.

09:29AM  22      Q.   AND THEY ASKED YOU ABOUT TECAN USAGE.

09:29AM  23           DO YOU RECALL THAT?

09:29AM  24      A.   NOT SPECIFICALLY, NO.

09:29AM  25      Q.   AND THEY ASKED YOU ABOUT THE CTN PROBLEM THAT IS

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2594

09:29AM  1      IDENTIFIED THERE.

09:29AM  2           DO YOU SEE THAT?

09:29AM  3      A.   YES.

09:29AM  4      Q.   OKAY.  THEY ASKED YOU ABOUT THAT AND THEY ASKED YOU

09:29AM  5      WHETHER THIS -- YOU THOUGHT THIS WAS A BASIS FOR THE PROBLEM;

09:29AM  6      RIGHT?

09:29AM  7      A.   YES.

09:29AM  8      Q.   AND YOU SAID YOU THOUGHT IT WAS; RIGHT?

09:29AM  9      A.   YES.

09:29AM 10      Q.   AS REFLECTED IN THE EMAIL?

09:29AM 11      A.   YES.

09:29AM 12      Q.   AND THEY NOTED, THE GOVERNMENT NOTED THAT THERE WERE NO

09:29AM 13      CTN'S USED ON COMMERCIAL ASSAYS; RIGHT?

09:29AM 14      A.   CORRECT.

09:29AM 15      Q.   OKAY.  AND THEN THEY ASKED YOU ABOUT THE FACT THAT THIS

09:30AM 16      WAS SENT TO MS. HOLMES.

09:30AM 17           DO YOU RECALL THAT?

09:30AM 18           ACTUALLY THEY SWITCHED DOCUMENTS.  AT THIS POINT I THINK

09:30AM 19      THEY SWITCHED TO 1555.  LET'S PULL THAT UP.  AND LET'S FOCUS ON

09:30AM 20      THAT PIECE THERE.

09:30AM 21           DO YOU RECALL THAT THEY NOTED THAT YOU RAISED THIS WITH

09:30AM 22      MS. HOLMES?

09:30AM 23           DO YOU RECALL THAT?

09:30AM 24      A.   YES.

09:30AM 25      Q.   AND THEY ASKED YOU WHY, AND YOU TESTIFIED THAT YOU THOUGHT

ROSENDORFF CROSS BY MR. WADE (RES.)                                   2595

09:30AM  1    IT WAS IMPORTANT BECAUSE THAT WOULD BE SURE TO GET THE

09:30AM  2    ATTENTION; RIGHT?

09:30AM  3    A.   YES.

09:30AM  4    Q.   AND THERE WAS A SUGGESTION THAT MAYBE MR. BALWANI AND

09:30AM  5    DR. YOUNG MIGHT BE RELUCTANT WITHOUT MS. HOLMES BEING INVOLVED;

09:30AM  6    RIGHT?

09:30AM  7         DO YOU RECALL THAT?

09:30AM  8    A.   I THOUGHT IT WAS IMPORTANT THAT ELIZABETH WAS AWARE OF

09:30AM  9    THESE ISSUES AS THE CEO OF THE COMPANY.

09:30AM 10    Q.   AND I BELIEVE YOU TESTIFIED SOMETHING TO THE EFFECT OF IT

09:30AM 11    WOULD ENSURE THAT THE APPROPRIATE RESOURCES WOULD BE DEVOTED TO

09:30AM 12    IT; RIGHT?

09:31AM 13         DO YOU RECALL THAT?

09:31AM 14    A.   I DON'T RECALL THAT SPECIFICALLY, NO.

09:31AM 15    Q.   OKAY.  AND SO IF I CAN TAKE THAT DOWN AND PUT THE ELMO UP

09:31AM 16    IF I COULD.

09:31AM 17         THE CLERK:  IS THIS ADMITTED?

09:31AM 18         MR. WADE:  IT'S JUST A DEMONSTRATIVE THAT I NORMALLY

09:31AM 19    WOULD PUT ON A WHITE BOARD, YOUR HONOR, BUT I WANT EVERYONE TO

09:31AM 20    SEE IT.

09:31AM 21         IF WE CAN ZOOM --

09:31AM 22         MR. BOSTIC:  YOUR HONOR, THE GOVERNMENT COUNSEL HAS

09:31AM 23    NOT SEEN THIS DEMONSTRATIVE YET.

09:31AM 24         MR. WADE:  I WOULD PUT IT ON A WHITE BOARD.  I

09:31AM 25    NORMALLY DON'T SHOW MY WHITE BOARD, BUT I'M HAPPY TO GIVE --

09:32AM   1          THE COURT:  IF YOU HAVE A COPY, I'M SURE MR. BOSTIC

09:32AM   2     WOULD WELCOME IT.

09:32AM   3     BY MR. WADE:

09:32AM   4     Q.   SO THIS JUST SUMMARIZED WHAT WE TALKED ABOUT.  THE QC

09:32AM   5     PASSED, BUT THE GOVERNMENT ELICITED TESTIMONY THAT THAT DID NOT

09:32AM   6     PROVIDE PROTECTION IN THIS CIRCUMSTANCE?

09:32AM   7     A.   CORRECT.

09:32AM   8     Q.   AND THIS WAS A THERANOS ASSAY PROBLEM THAT YOU THOUGHT AT

09:32AM   9     THE TIME; RIGHT?

09:32AM  10     A.   YES.

09:32AM  11     Q.   AND THAT THERE WAS A CTN PROBLEM; RIGHT?

09:32AM  12     A.   YES.

09:32AM  13     Q.   AND THAT DIDN'T RELATE TO -- THAT WOULDN'T BE PRESENT IF

09:32AM  14     THERE WAS A COMMERCIAL MACHINE?

09:32AM  15     A.   CORRECT.

09:32AM  16     Q.   AND MAYBE MR. BALWANI AND DR. YOUNG MAY BE RELUCTANT TO

09:32AM  17     ADDRESS THAT, AND SO YOU RAISED IT TO MS. HOLMES; RIGHT?

09:32AM  18     A.   I REMEMBER TESTIFYING THAT I THOUGHT IT WAS IMPORTANT THAT

09:32AM  19     ELIZABETH WAS AWARE OF THESE ISSUES.

09:33AM  20     Q.   OKAY.

09:33AM  21     A.   I DID, I DID FACE PUSHBACK FROM MR. BALWANI AND DR. YOUNG

09:33AM  22     FREQUENTLY ABOUT THESE ISSUES, YEAH.

09:33AM  23     Q.   AND SOMETIMES THEY WERE RELUCTANT; RIGHT?

09:33AM  24     A.   YES.

09:33AM  25     Q.   OKAY.  NOW -- AND THEN AFTER THE GOVERNMENT WENT THROUGH

09:33AM  1    THAT TESTIMONY, THEY MOVED ON TO A DIFFERENT ASSAY.

09:33AM  2         DO YOU RECALL THAT?

09:33AM  3    A.   I DON'T RECALL WHICH ASSAY THEY MOVED ON TO.

09:33AM  4    Q.   OKAY.  NONE OF THESE ISSUES IS TRUE, RIGHT, SIR, WITH

09:33AM  5    RESPECT TO HDL IN FEBRUARY OF 2014?

09:33AM  6         IT WAS NOT AN ISSUE WHERE QC PASSED; RIGHT?  QC FAILED.

09:33AM  7         DO YOU RECALL THAT?

09:33AM  8    A.   NO.  I RECALL THAT QC WAS 10 PERCENT BELOW HOW IT HAD BEEN

09:33AM  9    TRENDING AND THAT WAS WITHIN THE ACCEPTABILITY CRITERIA.

09:33AM 10    Q.   OKAY.  WE'LL GET TO THAT.

09:33AM 11         AND IT WAS NOT THE CASE THAT IT WAS A THERANOS ASSAY

09:33AM 12    PROBLEM, IT WAS ACTUALLY AN ISSUE WITH VARIABILITY BETWEEN TWO

09:33AM 13    COMMERCIAL MACHINES, WAS IT NOT?

09:34AM 14    A.   THERE WAS A SMALL AMOUNT OF VARIABILITY BETWEEN TWO

09:34AM 15    COMMERCIAL MACHINES THAT WAS GREATLY EXACERBATED WHEN THOSE

09:34AM 16    MACHINES WERE MODIFIED FOR THE THERANOS METHOD.

09:34AM 17    Q.   AND IT WAS NOT --

09:34AM 18    A.   AND THAT'S WHAT THE DATA WILL REFLECT.

09:34AM 19    Q.   AND IT WAS NOT A CTN PROBLEM; RIGHT?

09:34AM 20    A.   IT COULD HAVE BEEN.

09:34AM 21    Q.   OKAY.  WELL, WE'LL TALK ABOUT WHAT ACTUALLY HAPPENED,

09:34AM 22    BECAUSE THE GOVERNMENT DIDN'T ACTUALLY GO THROUGH WHAT ACTUALLY

09:34AM 23    HAPPENED AND FOLLOW UP ON THAT, DID THEY?

09:34AM 24    A.   NO, SIR.

09:34AM 25    Q.   THEY DIDN'T SHOW YOU THOSE DOCUMENTS, DID THEY?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2598

09:34AM   1      A.   WHICH DOCUMENTS?

09:34AM   2      Q.   THE DOCUMENTS THAT FOLLOW UP ON THIS.  THEY DIDN'T SHOW

09:34AM   3      YOU A PIECE OF THE DOCUMENTS THAT WOULD ADDRESS THOSE ISSUES.

09:34AM   4      LET'S LOOK AT THEM.

09:34AM   5           LET'S GO TO 1543.  AND IF WE CAN SWITCH.  LET'S GO TO THE

09:35AM   6      SECOND PAGE.

09:35AM   7           DO YOU SEE IN THE MIDDLE THERE YOU RAISE THE ISSUE; RIGHT?

09:35AM   8      DO YOU SEE THAT?

09:35AM   9      A.   YES.

09:35AM   10     Q.   AND YOU'RE DIGGING IN ON THE ISSUE, AND YOU'RE RAISING IT

09:35AM   11     WITH DR. YOUNG AND YOU'RE RAISING IT WITH MR. BALWANI; RIGHT?

09:35AM   12     A.   YES.

09:35AM   13     Q.   AND THIS IS THE SAME EXHIBIT THAT THE GOVERNMENT WAS

09:35AM   14     EXAMINING YOU ABOUT, BUT JUST DIFFERENT PORTIONS OF IT; RIGHT?

09:35AM   15     A.   YES.

09:35AM   16     Q.   AND THEY RAISE THAT ISSUE AT 2:37; CORRECT?

09:35AM   17     A.   YES.

09:35AM   18     Q.   AND LET'S GO TO THE NEXT PAGE SO YOU CAN SEE THE DATE AND

09:35AM   19     TIME OF MR. BALWANI'S RESPONSE.

09:35AM   20           IT WAS TWO MINUTES LATER; RIGHT?

09:35AM   21     A.   I SEE THE ORIGINAL EMAIL AND IT WAS 2:37 P.M.

09:35AM   22           THE NEXT EMAIL FROM MR. BALWANI IS 2:39 P.M.

09:36AM   23     Q.   DO YOU SEE -- SO TWO MINUTES LATER HE RESPONDED?

09:36AM   24     A.   YES.

09:36AM   25     Q.   AND THAT DOESN'T LOOK LIKE RELUCTANCE, DOES IT?

09:36AM  1    A.   I'M REFERRING TO RELUCTANCE WHEN I HAD MY DISCUSSIONS, MY

09:36AM  2    PERSONAL DISCUSSIONS WITH HIM.

09:36AM  3    Q.   LET'S LOOK AT THE SUBSTANCE OF THE EMAIL.

09:36AM  4         DO YOU SEE THERE IT SAYS, DANIEL, CAN YOU HAVE NISHIT AND

09:36AM  5    TINA LEAD AN INVESTIGATION ON THIS?

09:36AM  6         DO YOU SEE THAT?

09:36AM  7    A.   YES.

09:36AM  8    Q.   AND TWO MINUTES LATER HE SAID THAT; RIGHT?

09:36AM  9    A.   YES.

09:36AM  10   Q.   AND THEN HE COPIED YOU IN AND SAYS HE'S NOT SURE WHY THIS

09:36AM  11   WOULD BE A CTN ISSUE, BUT HE'S HAPPY TO LOOK AT IT; RIGHT?

09:36AM  12   A.   YES.

09:36AM  13   Q.   OKAY.  AND THE GOVERNMENT DIDN'T YOU ASK ABOUT THAT PIECE

09:36AM  14   OF THE DOCUMENT WHEN THEY WERE ASKING YOU ABOUT THAT, DID THEY?

09:37AM  15   A.   CORRECT.

09:37AM  16   Q.   AND LET'S GO TO THE PORTION OF THE DOCUMENT -- LET'S GO TO

09:37AM  17   THE OTHER DOCUMENT THAT THE GOVERNMENT SHOWED YOU, 1555.  OKAY?

09:37AM  18        DO YOU HAVE THAT DOCUMENT IN FRONT OF YOU?  IT'S IN THE

09:37AM  19   WHITE BINDER, 1555.

09:37AM  20   A.   OKAY.

09:37AM  21   Q.   AND LET'S GO, LET'S GO TO THE END FIRST.

09:37AM  22        AND THIS BOTTOM EMAIL IS THE EMAIL IN WHICH YOU RAISE THE

09:37AM  23   ISSUE; RIGHT?

09:37AM  24   A.   YES.

09:37AM  25   Q.   AND THAT'S THE PORTION OF THE DOCUMENT THAT THE GOVERNMENT

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2600

09:37AM   1      ASKED YOU ABOUT; RIGHT?

09:37AM   2      A.   YES.

09:37AM   3      Q.   OKAY.  LET'S GO UP TO THE NEXT EMAIL.

09:38AM   4           DO YOU SEE THAT?

09:38AM   5      A.   YES.

09:38AM   6      Q.   AND IT SAYS, "ADAM, CAN WE COMPLETE A MINI-STUDY TOMORROW

09:38AM   7      MORNING?"

09:38AM   8           DO YOU SEE THAT?

09:38AM   9      A.   YES.

09:38AM  10      Q.   AND HE RESPONDED THE SAME DAY, AN HOUR OR SO LATER?

09:38AM  11      A.   YES.

09:38AM  12      Q.   AND HE WANTS TO ADDRESS IT RIGHT AWAY; RIGHT?

09:38AM  13      A.   YES, YES.

09:38AM  14      Q.   OKAY.  HE THEN SAYS HE PULLED SOME DATA, DO YOU SEE THAT,

09:38AM  15      AND HE'S STARTING TO LOOK AT IT ALREADY?

09:38AM  16      A.   YES.

09:38AM  17      Q.   AND INCLUDING THE CTN ISSUE?

09:38AM  18      A.   WELL, HE COMPARED CTN'S TO STANDARD PROTOCOL USING VENOUS

09:38AM  19      SAMPLES.

09:38AM  20      Q.   RIGHT.  BUT YOU SAID IT MIGHT BE A CTN ISSUE --

09:38AM  21      A.   IT COULD HAVE BEEN, YES.

09:38AM  22      Q.   AND HE'S LOOKING AT DATA RELATING TO WHETHER IT'S A

09:39AM  23      CTN ISSUE; RIGHT?

09:39AM  24      A.   HE'S LOOKING AT HISTORICAL DATA.

09:39AM  25      Q.   ON CTN'S?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2601

09:39AM   1    A.   YES.

09:39AM   2    Q.   RIGHT AWAY?

09:39AM   3    A.   HISTORICAL DATA, PREVIOUS DATA.

09:39AM   4    Q.   TO ASSESS WHETHER IT SUGGESTED IT WAS A CTN PROBLEM;

09:39AM   5    RIGHT?

09:39AM   6    A.   SO IN THE CTN'S THERE'S DIFFERENT AMOUNTS OF ANTICOAGULANT

09:39AM   7    THAT IS SPRAYED ON TO THE CTN'S THAT COULD IMPACT AN HDL

09:39AM   8    MEASUREMENT.  THAT MANUFACTURING PROCESS WAS NOT STANDARDIZED

09:39AM   9    AT THERANOS.

09:39AM  10         SO JUST BECAUSE IT LOOKS GOOD IN RUN TIME PERIOD, IT

09:39AM  11    DOESN'T GUARANTEE IT'S GOING TO LOOK GOOD IN A SUBSEQUENT TIME

09:39AM  12    PERIOD.

09:39AM  13    Q.   I UNDERSTAND, SIR.  BUT MY POINT IS THAT YOU RAISED THAT

09:39AM  14    IT COULD BE A CTN ISSUE AND THEY WERE LOOKING AT DATA RELATING

09:39AM  15    TO CTN'S; RIGHT?

09:39AM  16    A.   YES.

09:39AM  17    Q.   OKAY.  AND LET'S GO, LET'S GO UP AND GET THE NEXT TWO

09:39AM  18    EMAILS IN THE CHAIN.

09:39AM  19         YOU'RE WORKING TOGETHER AND YOU'RE ATTACKING THE PROBLEM;

09:39AM  20    RIGHT?

09:39AM  21    A.   CORRECT.

09:39AM  22    Q.   OKAY.  AND THE STUDY WAS GOING TO START THE NEXT MORNING;

09:40AM  23    RIGHT?

09:40AM  24    A.   CORRECT.

09:40AM  25    Q.   OKAY.  IN FACT, DR. YOUNG -- YOU RAISED -- THE GOVERNMENT

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2602

09:40AM   1    ASKED IF THIS WAS AN INDICATION OF WHERE QC CAN PASS AND THERE

09:40AM   2    IS STILL A PROBLEM; RIGHT?

09:40AM   3    A.   CORRECT.

09:40AM   4    Q.   OKAY.  AND YOU SAID YES.  BUT DR. YOUNG HAD ALREADY PULLED

09:40AM   5    THE QC DATA; RIGHT?

09:40AM   6    A.   SO THE QC SAMPLES DO NOT GO INTO A CTN, JUST TO CLARIFY.

09:40AM   7         SO IF THERE'S A PROBLEM WITH THE CTN, THAT WOULD NEVER BE

09:40AM   8    REFLECTED IN THE QC.

09:40AM   9    Q.   SIR, MY POINT IS THAT THE GOVERNMENT ASKED YOU -- YOU

09:40AM  10    NOTED THE QC PASSED; RIGHT?

09:40AM  11    A.   YES.

09:40AM  12    Q.   AND THAT'S THE DAILY QC; CORRECT?

09:40AM  13    A.   YES.

09:40AM  14    Q.   AND THEY ASKED YOU, IS THIS AN INDICATION WHERE QC CAN

09:40AM  15    PASS AND THERE CAN STILL BE A PROBLEM WITH THE ASSAY, AND YOU

09:40AM  16    SAID YES?

09:40AM  17    A.   THAT'S CORRECT.

09:40AM  18    Q.   DO YOU RECALL THAT?

09:40AM  19    A.   YES.

09:40AM  20    Q.   YEAH.  BUT, IN FACT, DR. YOUNG PULLED THE HISTORICAL

09:41AM  21    LEVEY-JENNINGS DATA AND HE FOUND THAT THE QC HAD ACTUALLY

09:41AM  22    FAILED, BUT THAT YOUR STAFF HAD NOT CAUGHT THAT QC FAILURE;

09:41AM  23    CORRECT?

09:41AM  24    A.   WE HAD DISCUSSED IMPLEMENTING LEVEY-JENNINGS PROCEDURES.

09:41AM  25    IT HAD NOT BEEN FORMALIZED IN AN SOP.

ROSENDORFF CROSS BY MR. WADE (RES.)                              2603

09:41AM  1     Q.   LET'S GO TO 1541.  THAT'S IN THE GOVERNMENT'S BOOK.

09:41AM  2          DO YOU HAVE THAT?

09:41AM  3               THE COURT:  HAS THIS BEEN ADMITTED?

09:41AM  4               THE WITNESS:  I DON'T HAVE IT, SIR.

09:41AM  5               MR. WADE:  YOU DON'T HAVE 1541?

09:41AM  6               THE WITNESS:  NO.

09:41AM  7               MR. WADE:  THE COURT'S INDULGENCE FOR ONE SECOND.

09:42AM  8     Q.   LOOK IN BLACK EXHIBIT BINDER, VOLUME 1.  IT SHOULD BE

09:42AM  9     ABOUT THE FOURTH DOCUMENT.

09:42AM 10     A.   I HAVE IT.

09:42AM 11     Q.   OKAY.  AND THIS IS AN EMAIL BETWEEN YOU, MR. BALWANI,

09:42AM 12     DR. PANDORI, AND DR. YOUNG ON THE SAME SUBJECT?

09:42AM 13     A.   CORRECT.

09:42AM 14               MR. WADE:  MOVE TO ADMIT 1541.

09:42AM 15               MR. BOSTIC:  NO OBJECTION.

09:42AM 16               THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:42AM 17          (GOVERNMENT'S EXHIBIT 1541 WAS RECEIVED IN EVIDENCE.)

09:42AM 18     BY MR. WADE:

09:42AM 19     Q.   AND THE GOVERNMENT DIDN'T ASK YOU QUESTIONS ABOUT THIS ON

09:42AM 20     YOUR DIRECT TESTIMONY; CORRECT?

09:42AM 21     A.   NO.

09:42AM 22     Q.   LET'S GO TO THIRD PAGE AND GRAB THE BOTTOM HALF.

09:43AM 23     A.   OKAY.

09:43AM 24     Q.   DO YOU SEE THAT?

09:43AM 25     A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2604

09:43AM  1   Q.   AND DO YOU SEE THAT'S AN INDICATION THAT, JUST AS YOU WERE

09:43AM  2   RAISING THIS ISSUE, DR. YOUNG GRABBED THE QC RESULTS TO LOOK AT

09:43AM  3   THE HDL QC RESULTS AND HE SAID THIS SHOULD HAVE RAISED AN ALARM

09:43AM  4   SEVERAL WEEKS AGO; RIGHT?

09:43AM  5   A.   THAT'S DANIEL YOUNG'S ASSERTION.

09:43AM  6   Q.   OKAY.  WELL, DID YOU AGREE WITH THAT ASSERTION OR NOT?

09:43AM  7   A.   NO.  IF THE QC PASSES, THE TEST IS CLEARED FOR PATIENT

09:43AM  8   USE.

09:43AM  9   Q.   IT'S CLEARED FOR PATIENT USE AT THAT POINT, BUT YOU NEED

09:43AM  10  TO GO BACK AND LOOK.

09:43AM  11      DO YOU RECALL THE TESTIMONY THAT YOU NEED TO GO AND LOOK

09:43AM  12  AT THE LEVEY-JENNINGS DATA AND LOOK AT THE WESTGARD RULES AND

09:43AM  13  LOOK AT THE TRENDS OVER TIME AND SEE WHAT THE TRENDS LOOK LIKE

09:43AM  14  OVER TIME?

09:43AM  15  A.   MR. WADE, THERE ARE A NUMBER OF WESTGARD RULES THAT RELY

09:43AM  16  ON STANDARD DEVIATIONS AND A SERIES OF STANDARD DEVIATIONS

09:44AM  17  FALLING ON ONE OR OTHER SIDE OF A MEAN.  IT'S A COMPLICATED SET

09:44AM  18  OF RULES.  WE DISCUSSED THEM MANY TIMES AND THEY WERE NOT

09:44AM  19  IMPLEMENTED IN THE LABORATORY.

09:44AM  20  Q.   LET'S LOOK AT YOUR EMAIL ON THIS, ON THE SECOND PAGE ON

09:44AM  21  THE BOTTOM.  LET'S BLOW THAT UP.

09:44AM  22      THIS IS YOUR EMAIL, RIGHT, SIR?

09:44AM  23  A.   YES.

09:44AM  24  Q.   AND THIS IS IN RESPONSE TO THIS QC DATA; RIGHT?

09:44AM  25  A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                    2605

09:44AM  1    Q.  AND YOU'RE COPIED IN ON THE FACT THAT THE QC'S SHOULD HAVE

09:44AM  2    CAUGHT THIS ISSUE WEEKS AGO; RIGHT?

09:44AM  3    A.  YES.

09:44AM  4    Q.  OKAY.  AND YOU WRITE THAT YOU REVIEWED THE DATA REGULARLY;

09:44AM  5    RIGHT?

09:44AM  6    A.  YES.

09:44AM  7    Q.  AND THAT YOU WERE LOOKING AT LEVEY-JENNINGS QC --

09:45AM  8    A.  YES.

09:45AM  9    Q.  RIGHT?

09:45AM  10   A.  YES.

09:45AM  11   Q.  AND YOU WERE LOOKING AT THOSE COMPLICATED RULES?

09:45AM  12   A.  YES.

09:45AM  13   Q.  BUT ESSENTIALLY THIS WAS MISSED; RIGHT?

09:45AM  14   A.  IT WAS NOT PART OF OUR FORMAL PROCEDURE.

09:45AM  15   Q.  OKAY.  BUT IT SHOULD HAVE BEEN UNDER YOUR POLICY; RIGHT?

09:45AM  16   A.  I DON'T BELIEVE SO.

09:45AM  17   Q.  OKAY.  SO WHEN THE GOVERNMENT SAID THIS IS AN ISSUE WHERE

09:45AM  18   THE QC PASSED, THE QC, AS DR. YOUNG NOTES, APPLYING YOUR POLICY

09:45AM  19   SAID THAT IT SHOULD HAVE RAISED THE ISSUE A LONG TIME AGO, BUT

09:45AM  20   YOU JUST FAILED TO CATCH IT; RIGHT?

09:45AM  21   A.  I'M SORRY.  COULD YOU POINT ME TO THE POLICY REGARDING THE

09:45AM  22   WESTGARD RULES, REFRESH MY MEMORY ON THAT.

09:45AM  23   Q.  WELL, YOU RECALL THAT YOU FOLLOWED WESTGARD RULES; RIGHT?

09:45AM  24   A.  NO.  WE DISCUSSED THEM ON MANY OCCASIONS, BUT THEY WERE

09:45AM  25   NOT IMPLEMENTED IN THE LABORATORY.

ROSENDORFF CROSS BY MR. WADE (RES.)                               2606

09:45AM   1     Q.   YOU NEVER FOLLOWED THE WESTGARD RULES?

09:45AM   2     A.   WE DISCUSSED WITH A NUMBER OF PEOPLE THE APPROPRIATENESS

09:45AM   3     OF APPLYING WESTGARD RULES TO QC DATA.  IT WAS NOT SIGNED OFF

09:45AM   4     AS PART OF A FORMAL POLICY.

09:46AM   5     Q.   WELL, YOU WERE RESPONSIBLE FOR THE POLICY.

09:46AM   6          DID YOU OR DID YOU NOT IMPLEMENT WESTGARD RULES?

09:46AM   7     A.   WE DID NOT.

09:46AM   8     Q.   DO YOU SEE HERE IT SAYS, "LOOKING AT LEVEY-JENNINGS QC FOR

09:46AM   9     JANUARY AND FEBRUARY SO FAR, INDEED WE WOULD HAVE FAILED

09:46AM  10     WESTGARD BASED ON THE 10 1S RULE FOR LEVEL 1 AT LEAST."

09:46AM  11          DO YOU SEE THAT?

09:46AM  12     A.   YES.

09:46AM  13     Q.   AND THEN DO YOU SEE DOWN BELOW IT SAYS, "I HAVE BEEN

09:46AM  14     ASKING THE SUPERVISORS TO COLLECT THE ADVIA QC DATA AND PRESENT

09:46AM  15     IT TO ME MONTHLY SINCE OUR CLIA INSPECTION."

09:46AM  16          DO YOU SEE THAT?

09:46AM  17     A.   YES.

09:46AM  18     Q.   BECAUSE THESE ARE ISSUES THAT COME UP IN THE CLIA

09:46AM  19     INSPECTION; RIGHT?

09:46AM  20     A.   I DON'T RECALL.

09:46AM  21     Q.   AND THAT WAS ONE OF THE ISSUES THAT MS. HOLMES AND

09:46AM  22     MR. BALWANI WERE UNHAPPY THAT THERE WAS AN ISSUE; RIGHT?

09:46AM  23     A.   THEY EXPECTED THERE TO BE NO DEFICIENCIES.

09:46AM  24     Q.   AND I ASSUME IF YOU EXPECTED THERE WAS ONE, YOU WOULD HAVE

09:46AM  25     ADDRESSED IT; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                    2607

09:47AM   1    A.   CORRECT.

09:47AM   2    Q.   AND IT SAYS, "IT SEEMS THIS IS NOT HAPPENING."

09:47AM   3         DO YOU SEE THAT?

09:47AM   4    A.   YES.

09:47AM   5    Q.   AND THOSE ARE YOUR WORDS; RIGHT, SIR?

09:47AM   6    A.   YES.

09:47AM   7    Q.   AND WHEN IT SAYS THIS IS NOT HAPPENING, IT'S YOUR BELIEF

09:47AM   8    AT THIS TIME THAT THAT SHOULD BE HAPPENING; RIGHT?

09:47AM   9    A.   YES.

09:47AM   10   Q.   AND YOU SAY, "I WILL IMPRESS UPON THEM THE IMPORTANCE OF

09:47AM   11   COLLECTING THIS DATA."

09:47AM   12        RIGHT?

09:47AM   13   A.   YES.

09:47AM   14   Q.   OKAY.  AND SO THE QC POLICY AND THE PRACTICES THAT YOU

09:47AM   15   THOUGHT SHOULD HAVE BEEN HAPPENING WOULD HAVE CAUGHT THIS;

09:47AM   16   RIGHT?

09:47AM   17   A.   AGAIN, I'D LIKE TO REVIEW THE QC POLICY TO SEE WHAT WAS

09:47AM   18   FORMALLY IMPLEMENTED.

09:47AM   19        ANOTHER THING THAT I'LL ADD IS THAT I'M NOT QUITE SURE

09:47AM   20   WHAT MY MEANING HERE IS IN TERMS OF THE MONTHLY QC.  I WAS

09:47AM   21   REVIEWING THAT WITH LANGLY GEE ON A MONTHLY BASIS.

09:47AM   22   Q.   SIR, YOU SAY RIGHT HERE THAT WHAT YOU WERE EXPECTING TO

09:47AM   23   HAPPEN WAS NOT HAPPENING; RIGHT?

09:47AM   24   A.   CORRECT.

09:47AM   25   Q.   AND YOU SAY THAT YOU WERE GOING TO IMPRESS UPON THEM THE

ROSENDORFF CROSS BY MR. WADE (RES.)                          2608

09:47AM  1    IMPORTANCE OF DOING THAT AS A RESULT OF THIS ISSUE; RIGHT?

09:47AM  2    A.   YES.

09:47AM  3    Q.   OKAY.  NOW, SIR, IF YOU GO UP THE CHAIN TO THE NEXT

09:48AM  4    EMAIL -- AND JUST SO WE'RE ALL CLEAR, WHEN THIS ISSUE IS BEING

09:48AM  5    RAISED, THERE ARE NOT TESTS GOING OUT, RIGHT?  YOU PUT A PAUSE

09:48AM  6    ON THE TEST, ON THE RESULTS?

09:48AM  7    A.   I BELIEVE I COMMUNICATED TO MANAGEMENT THAT THE LIPID TEST

09:48AM  8    SHOULD HAVE GONE ONTO A VACUTAINER AT THIS TIME.

09:48AM  9    Q.   RIGHT.  AND YOU HELD THE RESULTS UNTIL YOU FIGURED OUT

09:48AM  10   WHAT WAS GOING ON?

09:48AM  11   A.   YES.

09:48AM  12   Q.   AND THEN EVERYONE, IT LOOKS LIKE ON FRIDAY AND GOING

09:48AM  13   FORWARD, IS WORKING REALLY HARD TO FIGURE OUT WHAT THE ISSUE

09:48AM  14   IS; RIGHT?

09:48AM  15   A.   YES.

09:48AM  16   Q.   OKAY.  INCLUDING DR. YOUNG AND MR. BALWANI?

09:48AM  17   A.   I DON'T KNOW WHAT THEY WERE DOING DURING THIS TIME PERIOD.

09:48AM  18   Q.   TAKE A LOOK AT THE EMAILS UP AND DOWN THIS CHAIN.  THEY'RE

09:48AM  19   ENGAGED ACTIVELY DURING THIS PERIOD, ARE THEY NOT?

09:48AM  20   A.   I CAN'T ANSWER THAT YES OR NO.

09:48AM  21   Q.   CAN YOU LOOK AT THE DATES ON THE EMAIL AND TELL ME WHETHER

09:48AM  22   YOU CAN INFER FROM THAT WHETHER THEY WERE WORKING ACTIVELY AT

09:49AM  23   THIS TIME?

09:49AM  24   A.   I WOULD BE SPECULATING.

09:49AM  25   Q.   OKAY.  IF WE GO UP TO MR. PANDORI'S EMAIL, DO YOU SEE

ROSENDORFF CROSS BY MR. WADE (RES.)                           2609

09:49AM   1     THAT, HE ACTUALLY DISCUSSED THAT HE HAD ASSIGNED THIS QC

09:49AM   2     PROJECT FOR SOMEONE TO IMPLEMENT; RIGHT?

09:49AM   3     A.   YES.

09:49AM   4     Q.   OKAY.  AND SO THE POLICY SHOULD HAVE GOT THIS?

09:49AM   5     A.   AGAIN, I'M NOT SURE OF THE DETAILS OF THE POLICY THAT

09:49AM   6     YOU'RE REFERENCING SO I CAN'T REALLY COMMENT.

09:49AM   7     Q.   OKAY.  LET'S GO UP ONE MORE AND SEE IF WE CAN BRING YOU TO

09:49AM   8     THAT.

09:49AM   9         DR. YOUNG SAYS ON THE BOTTOM, "REGARDING WESTGARD RULES --

09:49AM  10     I THINK THERE IS SOME CONFUSION.  THERE ARE ACTUALLY TWO RULES

09:49AM  11     THAT I THINK OUR QC DATA FAILED."

09:50AM  12         DO YOU SEE THAT?

09:50AM  13     A.   YES.

09:50AM  14     Q.   AND LET'S GO TO THE NEXT PAGE.

09:50AM  15         HE LOOKS AT THAT DATA AND HE LAYS OUT THOSE RULES; RIGHT?

09:50AM  16     A.   YES.

09:50AM  17     Q.   OKAY.  AND THEN AT THE BOTTOM HE SAYS, "I'M LOOKING INTO

09:50AM  18     OTHER POTENTIAL CAUSES FOR THE LOW HDL VALUES."

09:50AM  19     A.   YES.

09:50AM  20     Q.   DO YOU SEE THAT?

09:50AM  21         AND SO THEY'RE LOOKING AT ANY ISSUE; RIGHT?

09:50AM  22     A.   YES.

09:50AM  23     Q.   INCLUDING REAGENTS OR CALIBRATION?

09:50AM  24     A.   YES.

09:50AM  25     Q.   AND EVERYONE WAS TRYING TO ADDRESS THIS; RIGHT?

09:50AM   1    A.   IT APPEARS THAT DANIEL WAS TRYING TO ADDRESS THIS AT THIS

09:50AM   2    TIME.

09:50AM   3    Q.   OKAY.   OKAY.   LET'S GO UP TO THE FIRST PAGE.

09:50AM   4         MR. BALWANI AS WELL, RIGHT, IS SAYING WE SHOULD TRY NEW

09:50AM   5    REAGENTS AND SEE IF THAT IS THE ISSUE BECAUSE IF THAT'S A

09:50AM   6    POSSIBLE CAUSE; CORRECT?

09:50AM   7    A.   YES.

09:50AM   8    Q.   AND LET'S GO TO THE NEXT EMAIL.

09:51AM   9         DO YOU SEE THAT?

09:51AM  10    A.   YES.

09:51AM  11    Q.   THERE'S A SUGGESTION, LET'S LOOK AT EVEN MORE QC DATA TO

09:51AM  12    SEE IF THAT SHEDS ANY LIGHT; RIGHT?

09:51AM  13    A.   RIGHT.   SO WHAT DANIEL IS SAYING IS THAT THE -- MY EMAIL

09:51AM  14    ABOUT THE 1 SD RULING -- FAILING WAS BASED ON DATA FROM OCTOBER

09:51AM  15    TO DECEMBER OF 2013, AND DANIEL WAS LOOKING AT DIFFERENT DATA

09:51AM  16    FROM JANUARY 2ND, 2014 TO FEBRUARY 18TH, 2014.

09:51AM  17    Q.   AND, IN FACT, LET'S GO TO EXHIBIT 1556, WHICH SHOULD BE IN

09:52AM  18    YOUR BLACK BOOK, VOLUME 1.

09:52AM  19    A.   I HAVE IT.

09:52AM  20    Q.   OKAY.   THIS IS ANOTHER EMAIL THAT INVOLVES YOU AND OTHERS

09:52AM  21    RELATING TO THIS ISSUE; CORRECT?

09:52AM  22    A.   YES.

09:52AM  23              MR. WADE:  MOVE THE ADMISSION OF 1556.

09:52AM  24              MR. BOSTIC:  NO OBJECTION.

09:52AM  25              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

ROSENDORFF CROSS BY MR. WADE (RES.)                              2611

09:52AM   1            (GOVERNMENT'S EXHIBIT 1556 WAS RECEIVED IN EVIDENCE.)

09:52AM   2                 MR. WADE:  AND IF WE CAN BLOW UP THE TOP HALF.

09:52AM   3    Q.   THIS EMAIL WITH MR. HAASE --

09:52AM   4    A.   YES.

09:52AM   5    Q.   -- REFLECTS THAT THERE IS EVEN MORE ANALYSIS BEING DONE IN

09:52AM   6    THIS PERIOD; RIGHT?

09:52AM   7    A.   YES.

09:52AM   8    Q.   AND DO YOU RECALL FROM THE EMAIL AT THE TOP THERE WERE

09:53AM   9    ISSUES THAT CAME UP AS TO WHETHER THIS MIGHT BE AN ISSUE WITH

09:53AM  10    RESPECT TO VARIABILITY IN THE ADVIA'S?

09:53AM  11    A.   SUNNY IS RAISING THAT ISSUE.

09:53AM  12    Q.   YEAH.

09:53AM  13    A.   YES.

09:53AM  14    Q.   AND DO YOU RECALL INVESTIGATING THAT ISSUE DURING THIS

09:53AM  15    TIME PERIOD?

09:53AM  16    A.   THERE WAS A STUDY LOOKING AT VENOUS AND FINGERSTICK LIPIDS

09:53AM  17    ON THE TWO DIFFERENT ADVIA'S AND COMPARING THE BIAS USING THE

09:53AM  18    TWO DIFFERENT METHODS.  THERE WAS A LONG DISCUSSION OF THAT.

09:53AM  19         AS I TESTIFIED, THERE WAS A DIFFERENCE BETWEEN THE TWO

09:53AM  20    ADVIA'S USING THE SAME REAGENTS, BUT THAT DIFFERENCE WAS

09:53AM  21    MARKEDLY EXACERBATED WHEN THE LDT WAS IMPLEMENTED.

09:53AM  22    Q.   AND WE'LL GET TO THAT.

09:53AM  23         BUT THE ASSAY DIDN'T FAIL, DID IT?

09:54AM  24    A.   NOT BASED ON QC.  IN MY MIND THE ASSAY WAS FAILING BECAUSE

09:54AM  25    WE HAD A SPATE OF HDL VALUES THAT DIDN'T SEEM BIOLOGICALLY

09:54AM  1    PLAUSIBLE AS WE'VE LOOKED AT BEFORE.

09:54AM  2    Q.   OKAY.  LET'S KEEP GOING.

09:54AM  3         AND THE GOVERNMENT DIDN'T SHOW YOU THIS DOCUMENT; RIGHT?

09:54AM  4    A.   CORRECT.

09:54AM  5    Q.   AND LET'S GO TO 1559.

09:54AM  6    A.   I HAVE IT.

09:54AM  7    Q.   YOU HAVE THAT?

09:54AM  8         AND THAT'S ANOTHER EMAIL ON THE SAME SUBJECT; RIGHT?

09:54AM  9    A.   YES.

09:54AM  10   Q.   AND IT INVOLVES YOU AND OTHERS?

09:54AM  11   A.   YES.

09:54AM  12        MR. WADE:  MOVE THE ADMISSION OF 1559.

09:54AM  13        MR. BOSTIC:  NO OBJECTION.

09:55AM  14        THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:55AM  15   (GOVERNMENT'S EXHIBIT 1559 WAS RECEIVED IN EVIDENCE.)

09:55AM  16        MR. WADE:  LET'S START ON THE SECOND PAGE WITH

09:55AM  17   DR. PANDORI'S EMAIL.

09:55AM  18   Q.   AND DO YOU SEE DOWN ON THE BOTTOM IT NOTES, ANYHOW, WE

09:55AM  19   NEED TO DECIDE WHAT TO DO BECAUSE THESE ARE PILING UP.

09:55AM  20        DO YOU SEE THAT?

09:55AM  21   A.   YES.

09:55AM  22   Q.   AND THAT MEANT THE TESTS WERE ON HOLD; RIGHT?

09:55AM  23   A.   YES.

09:55AM  24   Q.   AND THAT WAS APPROPRIATE; RIGHT?

09:55AM  25   A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                              2613

| | | |
|---|---|---|
| 09:55AM | 1 | Q.  LET'S GO TO 1562, WHICH I THINK IS IN THE GOVERNMENT'S |
| 09:56AM | 2 | BINDER. |
| 09:56AM | 3 | A.  I HAVE IT. |
| 09:56AM | 4 | Q.  AND THIS IS ANOTHER EMAIL WITH YOU AND OTHERS ON THE SAME |
| 09:56AM | 5 | TOPIC, IS THAT RIGHT, ON HDL? |
| 09:56AM | 6 | A.  JUST GIVE ME A SECOND. |
| 09:56AM | 7 | IT APPEARS, YES, YES. |
| 09:56AM | 8 | MR. WADE:  MOVE THE ADMISSION OF 1562. |
| 09:56AM | 9 | MR. BOSTIC:  NO OBJECTION. |
| 09:56AM | 10 | THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED. |
| 09:56AM | 11 | (GOVERNMENT'S EXHIBIT 1562 WAS RECEIVED IN EVIDENCE.) |
| 09:56AM | 12 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 09:56AM | 13 | Q.  THIS WAS IN THE GOVERNMENT'S BINDER, BUT THEY DIDN'T SHOW |
| 09:56AM | 14 | YOU THIS ON DIRECT TESTIMONY; RIGHT? |
| 09:56AM | 15 | A.  NO. |
| 09:56AM | 16 | Q.  AND LET'S GO TO THE LAST -- THE BOTTOM EMAIL ON PAGE 5. |
| 09:57AM | 17 | IF WE CAN BLOW UP THE WHOLE BOTTOM HALF, PLEASE. |
| 09:57AM | 18 | DO YOU SEE THIS IS THE STUDY THAT YOU SUGGESTED, THE |
| 09:57AM | 19 | CONCLUSIONS FROM THAT STUDY YOU SUGGESTED; RIGHT? |
| 09:57AM | 20 | A.  THESE ARE DANIEL'S CONCLUSIONS. |
| 09:57AM | 21 | Q.  RIGHT.  YOU HAD SUGGESTED A STUDY AND YOU WERE WORKING |
| 09:57AM | 22 | COLLABORATIVELY AS A TEAM TO PERFORM THAT STUDY; CORRECT? |
| 09:57AM | 23 | A.  WE HAVE TO LOOK AT THE DATA, SIR, TO SORT THROUGH THESE |
| 09:57AM | 24 | ISSUES. |
| 09:57AM | 25 | Q.  AND WE'LL LOOK AT SOME OF THAT DATA, SIR. |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2614

09:57AM   1         BUT MY QUESTION TO YOU IS, DO YOU RECALL THAT YOU ASKED

09:57AM   2    FOR INQUIRIES TO BE MADE ON THIS?

09:57AM   3    A.   YES.

09:57AM   4    Q.   AND INQUIRIES WERE MADE ALMOST IMMEDIATELY; RIGHT?

09:57AM   5    A.   YES.

09:57AM   6    Q.   INCLUDING BY DR. YOUNG?

09:57AM   7    A.   YES.

09:57AM   8    Q.   AND OTHERS?

09:57AM   9    A.   YES.

09:57AM  10    Q.   AND MR. BALWANI WAS WEIGHING IN; RIGHT?

09:57AM  11    A.   YES.

09:57AM  12    Q.   OKAY.  AND IN THIS EMAIL HE REPORTS OUT THE RESULTS OF

09:57AM  13    THAT STUDY.

09:57AM  14         DO YOU SEE THAT?

09:57AM  15         OR AT LEAST A STUDY.  DO YOU SEE HE REPORTS THAT OUT?

09:58AM  16    A.   YEAH.  I DO NOT AGREE WITH P-HDL ON FINGERSTICK AND VENOUS

09:58AM  17    ARE VERY COMPARABLE.  THE DATA WILL SHOW THAT THAT'S NOT IN

09:58AM  18    FACT TRUE.

09:58AM  19    Q.   OKAY.  SO HE'S REPORTING HERE BASICALLY THAT THE

09:58AM  20    FINGERSTICK AND VENOUS ARE VERY COMPARABLE.

09:58AM  21         DO YOU SEE THAT?

09:58AM  22    A.   CORRECT, CORRECT.

09:58AM  23    Q.   AND YOU DISAGREE WITH THAT?

09:58AM  24    A.   CORRECT.

09:58AM  25    Q.   AND LET'S LOOK AT WHAT HE'S REPORTING FIRST AND THEN WE'LL

ROSENDORFF CROSS BY MR. WADE (RES.)                    2615

09:58AM  1    GET TO YOU.  OKAY?

09:58AM  2         THE SECOND LINE THERE, HE REPORTS THAT THE FINGERSTICK

09:58AM  3    COMPARES VERY WELL TO PREDICATE ON VENOUS; RIGHT?

09:58AM  4    A.   YES.

09:58AM  5    Q.   AND THAT MEANS THE GOLD STANDARD; RIGHT?

09:58AM  6    A.   YES.

09:58AM  7    Q.   AND SO THE FINGERSTICK COMPARES WELL TO THE GOLD STANDARD?

09:58AM  8    A.   YES, THAT'S WHAT HE'S SAYING.

09:58AM  9    Q.   OKAY.  AND THEN IT SAYS, WE DO NOT SEE A PROBLEM OF

09:58AM  10   ABNORMALLY LOW HDL RESULTS.

09:58AM  11        DO YOU SEE THAT?

09:58AM  12   A.   YES.

09:58AM  13   Q.   OKAY.  LET'S GO TO YOUR RESPONSE.

09:59AM  14        DO YOU SEE THIS STARTS ON THE THIRD PAGE?

09:59AM  15   A.   YES.

09:59AM  16   Q.   AND DO YOU SEE THAT EMAIL IS YOUR RESPONSE TO DR. YOUNG'S

09:59AM  17   CONCLUSIONS; RIGHT?

09:59AM  18   A.   YES.

09:59AM  19   Q.   OKAY.  LET'S GO TO THE SECOND PAGE.

09:59AM  20   A.   SO YOU'LL SEE THAT THE BIAS ON THE HDL FOR FINGERSTICK IS

09:59AM  21   MUCH GREATER THAN THE BIAS FOR HDL USING VENOUS.

09:59AM  22             MR. WADE:  MOVE TO STRIKE.

09:59AM  23             THE WITNESS:  THAT'S THE ISSUE WE'RE DISCUSSING,

09:59AM  24   SIR.

09:59AM  25             THE COURT:  YES, BUT HE'LL ASK THE QUESTION.

ROSENDORFF CROSS BY MR. WADE (RES.)                                   2616

09:59AM   1                   THE WITNESS:  OKAY.

09:59AM   2                   THE COURT:  SO THAT'S STRICKEN.

09:59AM   3              YOU CAN ASK YOUR QUESTION.

09:59AM   4                   MR. WADE:  THANK YOU.

09:59AM   5       Q.   LET'S START ON THE SECOND PAGE.

09:59AM   6            DO YOU SEE WHERE IT SAYS METHOD BIAS?

09:59AM   7            I'M SORRY, IT'S THE BOTTOM OF PAGE 4.  IT'S THE SECOND

10:00AM   8       ITEM THERE.

10:00AM   9            DO YOU SEE THAT?  THERE'S A HEADING IN YOUR EMAIL THAT

10:00AM  10       SAYS METHOD BIAS?

10:00AM  11       A.   YES.

10:00AM  12       Q.   OKAY.  AND THAT SAYS, "THE P-PROTOCOL VALUES (FINGERSTICK

10:00AM  13       AND VENOUS), FOR CHOLESTEROL AND HDL MATCH VERY WELL WITH THE

10:00AM  14       PREDICATE VALUES."

10:00AM  15            RIGHT?

10:00AM  16       A.   YES.

10:00AM  17       Q.   THOSE ARE YOUR WORDS, RIGHT, SIR?

10:00AM  18       A.   YES.

10:00AM  19       Q.   OKAY.  AND THEN LET'S LOOK AT NUMBER 1, THE INSTRUMENT

10:00AM  20       BIAS.

10:00AM  21            AND BY THE WAY, WHEN YOU SAY THEY MATCH VERY WELL, THAT

10:00AM  22       MEANS THE FINGERSTICK MATCHES WELL AGAINST THE GOLD STANDARD

10:00AM  23       ASSAY; RIGHT?

10:00AM  24       A.   YES.

10:00AM  25       Q.   OKAY.  LET'S -- AND AGAIN, THOSE ARE YOUR WORDS, RIGHT,

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2617

10:00AM   1      SIR?

10:00AM   2      A.   YES.

10:00AM   3      Q.   OKAY.  LET'S GO TO NUMBER 1, INSTRUMENT BIAS.

10:00AM   4           DO YOU SEE THAT?

10:00AM   5      A.   YES.

10:00AM   6      Q.   AND IT SAYS, "IN GENERAL, INSTRUMENT BIAS IS GREATER THAN

10:00AM   7      METHOD BIAS."

10:00AM   8           DO YOU SEE THAT?

10:00AM   9      A.   YES.

10:00AM  10      Q.   AND THAT BIAS IS THE BIAS BETWEEN TWO COMMERCIAL MACHINES,

10:01AM  11      TWO DIFFERENT ADVIA'S; RIGHT?

10:01AM  12      A.   YES.

10:01AM  13      Q.   AND SO THERE'S VARIABILITY BETWEEN TWO COMMERCIAL

10:01AM  14      MACHINES; RIGHT?

10:01AM  15      A.   CORRECT.

10:01AM  16      Q.   AND THAT HAPPENS SOMETIMES; RIGHT?

10:01AM  17      A.   YES.

10:01AM  18      Q.   OKAY.  AND THOSE ARE THE CONCLUSIONS THAT WERE THE RESULT

10:01AM  19      OF THIS STUDY; RIGHT?

10:01AM  20      A.   YES.

10:01AM  21      Q.   OKAY.  AND IF YOU GO TO THE END OF THAT EMAIL, SAME EMAIL,

10:01AM  22      NEXT PAGE.  WE CAN BLOW UP THE LAST PARAGRAPH THERE.

10:01AM  23           DO YOU SEE YOU THANK EVERYONE FOR LOOKING INTO THIS;

10:01AM  24      RIGHT?  DO YOU SEE THAT?

10:01AM  25      A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)

| | | |
|---|---|---|
| 10:01AM | 1 | Q.   AND YOU ATTACH THE DATA AND THE ANALYSIS AND YOU WELCOME |
| 10:01AM | 2 | COMMENTS; RIGHT? |
| 10:01AM | 3 | A.   YES. |
| 10:01AM | 4 | Q.   OKAY.  AND THAT'S A GOOD TEAM COLLABORATIVE EFFORT; RIGHT? |
| 10:01AM | 5 | A.   YES. |
| 10:01AM | 6 | Q.   AND THE GOVERNMENT DIDN'T SHOW YOU THIS, DID THEY? |
| 10:01AM | 7 | A.   NO. |
| 10:01AM | 8 | Q.   OKAY.  AND BASED ON THIS STUDY, DR. PANDORI RECOMMENDS |
| 10:02AM | 9 | THAT YOU RELEASE RESULTS; RIGHT? |
| 10:02AM | 10 | A.   I'M SORRY, WHERE ARE YOU READING THAT? |
| 10:02AM | 11 | Q.   LET'S GO TO 1559. |
| 10:02AM | 12 | A.   THAT'S NOT IN THE GOVERNMENT'S BINDER. |
| 10:02AM | 13 | Q.   IT WILL BE IN YOUR BLACK BINDER, VOLUME 1. |
| 10:03AM | 14 | A.   OKAY. |
| 10:03AM | 15 | Q.   OKAY.  AND DO YOU SEE ON THE FIRST PAGE OF THIS EMAIL THAT |
| 10:03AM | 16 | DR. PANDORI SUGGESTS THAT THESE BE RESULTED OUT? |
| 10:03AM | 17 | A.   YES. |
| 10:03AM | 18 | Q.   AND THIS IS AFTER THAT STUDY? |
| 10:03AM | 19 | A.   YES. |
| 10:03AM | 20 | Q.   OKAY.  AND SO IF I CAN GO BACK TO THE ELMO. |
| 10:04AM | 21 | IN FACT, DR. YOUNG AND MR. BALWANI JUMPED ON THIS PROBLEM; |
| 10:04AM | 22 | RIGHT? |
| 10:04AM | 23 | A.   YES. |
| 10:04AM | 24 | Q.   AND THE QC SHOULD HAVE CAUGHT THE ISSUE IF IT WAS DONE AS |
| 10:04AM | 25 | YOU HAD DIRECTED; RIGHT? |

ROSENDORFF CROSS BY MR. WADE (RES.)                                2619

10:04AM  1    A.   NO.  THE WESTGARD WAS NOT PART OF OUR SOP.

10:04AM  2    Q.   SIR, THAT WAS THE POLICY IN THE EMAIL THAT YOU SAID SHOULD

10:04AM  3    HAVE HAPPENED AND DIDN'T; RIGHT?

10:04AM  4    A.   I NOTED IN THE EMAIL THAT IF WE WERE TO APPLY THAT

10:04AM  5    WESTGARD RULE, IT WOULD HAVE BEEN A FAILURE.

10:04AM  6    Q.   OKAY.  AND THIS WAS NOT A THERANOS ASSAY PROBLEM; RIGHT?

10:04AM  7    THIS WAS AN ASSAY VARIABILITY PROBLEM?

10:04AM  8    A.   NO, SIR, I DISAGREE.

10:04AM  9    Q.   OKAY.

10:04AM  10   A.   IF YOU -- I CAN CLARIFY THAT COMMENT IF NEEDED.

10:04AM  11   Q.   SIR, I'M LOOKING AT YOUR WORDS IN YOUR EMAIL WHERE YOU SAY

10:05AM  12   THAT THE THERANOS ASSAY AND THE GOLD STANDARD COMPARED WELL;

10:05AM  13   CORRECT?

10:05AM  14   A.   RIGHT.  I'M LOOKING AT THE DATA NOW --

10:05AM  15   Q.   THAT'S THE QUESTION THAT I HAVE PENDING TO YOU.

10:05AM  16   A.   YES, THAT WAS MY STATEMENT THEN.

10:05AM  17   Q.   AND DO YOU STAND BY THOSE WORDS?

10:05AM  18   A.   NO.  LOOKING AT THE DATA NOW.

10:05AM  19   Q.   I'M NOT INTERESTING IN YOUR ANALYSIS NOW.  I'M INTERESTED

10:05AM  20   IN WHAT YOU SAID AT THE TIME, SIR.

10:05AM  21   A.   AT THE TIME, YES.

10:05AM  22   Q.   OKAY.  I'D LIKE TO SWITCH TOPICS TO DISCUSS THE ICE'S.

10:06AM  23        DO YOU RECALL TESTIMONY -- ISE'S, I'M SORRY, NOT ICE.

10:06AM  24   A.   YES.

10:06AM  25   Q.   DO YOU RECALL THE TESTIMONY THAT YOU GAVE RELATING TO THAT

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2620

10:06AM  1     TOPIC?

10:06AM  2     A.   YES.

10:06AM  3     Q.   AND DO YOU RECALL INITIALLY THAT THE GOVERNMENT SHOWED YOU

10:06AM  4     A DOCUMENT THAT RELATED TO SOME QUESTIONS THAT CAME UP IN LATE

10:06AM  5     AUGUST OF 2013 RELATING TO ISE'S?

10:06AM  6     A.   I DON'T RECALL THE DATE, BUT THEY WERE ASKING ME ABOUT

10:06AM  7     ISE'S, YES.

10:06AM  8     Q.   YEAH.  AND IT WAS LATE AUGUST THEN AND THE IDEA WAS THAT

10:06AM  9     IT WAS RIGHT ON THE EVE OF THE LAUNCH.

10:06AM  10         DO YOU RECALL THAT?

10:06AM  11    A.   YES.

10:06AM  12    Q.   WHICH WE'VE ESTABLISHED WAS THE SOFT LAUNCH; RIGHT?

10:06AM  13    A.   IT WAS PATIENT TESTING.

10:06AM  14    Q.   IT WAS THE SOFT LAUNCH FOR FRIENDS AND FAMILY; RIGHT?

10:06AM  15    A.   THOSE ARE PATIENTS.

10:07AM  16    Q.   I UNDERSTAND.  BUT THAT'S NOT MY QUESTION.  MY QUESTION

10:07AM  17    WAS, THAT WAS THE SOFT LAUNCH.

10:07AM  18         DO YOU RECALL THAT?

10:07AM  19    A.   CORRECT.

10:07AM  20    Q.   AND DO YOU RECALL THAT SPREADSHEET OF ALL OF THE TESTS

10:07AM  21    THAT WE LOOKED AT?

10:07AM  22    A.   YES.

10:07AM  23    Q.   AND THERE WERE SOME DAYS THAT THERE WERE NO TESTS.

10:07AM  24         DO YOU RECALL THAT?

10:07AM  25    A.   I DON'T RECALL.

ROSENDORFF CROSS BY MR. WADE (RES.)                              2621

10:07AM  1    Q.   OKAY.  DO YOU RECALL THE TESTIMONY ABOUT THE PUBLIC

10:07AM  2    LAUNCH?

10:07AM  3    A.   YES.

10:07AM  4    Q.   AND THAT WAS TWO MONTHS LATER; RIGHT?

10:07AM  5    A.   YES.

10:07AM  6    Q.   OKAY.  AND IF THERE ARE QUESTIONS THAT ARE RAISED IN

10:07AM  7    AUGUST AND THEN YOU SIGN A VALIDATION REPORT AT A LATER DATE,

10:07AM  8    IS IT A FAIR CONCLUSION THAT WHATEVER THAT ISSUE WAS OR

10:07AM  9    QUESTION WAS, YOU WOULD HAVE ADDRESSED IT BEFORE YOU SIGNED THE

10:07AM  10   VALIDATION REPORT; RIGHT?

10:07AM  11   A.   I SIGNED THE VALIDATION REPORT ON THE BASIS OF THE DATA

10:07AM  12   THAT IS IN THE VALIDATION.

10:07AM  13   Q.   RIGHT.  WITHOUT ANY CONCERNS AT THAT POINT AS TO WHETHER

10:07AM  14   IT'S APPROPRIATE FOR PATIENT USE?

10:08AM  15   A.   NO.  OF COURSE I'M CONCERNED ABOUT APPROPRIATENESS FOR

10:08AM  16   PATIENT USE.

10:08AM  17   Q.   MY POINT IS, AT THE POINT -- I BELIEVE YOU TESTIFIED ABOUT

10:08AM  18   THIS MANY TIMES WITH RESPECT TO MANY DOCUMENTS.  AT THE POINT

10:08AM  19   THAT YOU'RE PUTTING YOUR SIGNATURE ON THAT DOCUMENT, YOU

10:08AM  20   BELIEVED THAT THAT ASSAY IS APPROPRIATE FOR PATIENT USE?

10:08AM  21   A.   YES.

10:08AM  22   Q.   OKAY.  AND LET'S JUST LOOK AT -- LET'S BRING UP, IT'S IN

10:08AM  23   EVIDENCE, 9099.

10:08AM  24        DO YOU SEE THAT?

10:08AM  25   A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2622

10:08AM    1    Q.   AND THIS IS A VALIDATION REPORT RELATING TO ONE OF THE ISE

10:08AM    2    ASSAYS.

10:08AM    3         DO YOU SEE THAT?

10:08AM    4    A.   YES.

10:08AM    5    Q.   AND THIS IS ACTUALLY THE FIRST REVISION.

10:08AM    6         DO YOU SEE THAT?

10:08AM    7    A.   YES.

10:08AM    8    Q.   AND IT SAYS THE DATE, THE INITIAL DATE WAS 9-26-2013;

10:09AM    9    RIGHT?

10:09AM   10    A.   YES.

10:09AM   11    Q.   AND THEN YOU SIGNED THIS UPDATED DOCUMENT IN MARCH OF

10:09AM   12    2014; CORRECT?

10:09AM   13    A.   YES.

10:09AM   14    Q.   OKAY.  AND LET'S GO TO 9352, WHICH IS IN EVIDENCE.

10:09AM   15         THIS IS FOR THE SODIUM ASSAY; CORRECT?

10:09AM   16    A.   YES.

10:09AM   17    Q.   OKAY.  AND SAME THING, IT WAS INITIALLY EFFECTIVE

10:09AM   18    SEPTEMBER 26TH, 2013; RIGHT?

10:09AM   19    A.   YES.

10:09AM   20    Q.   AND THAT'S AFTER AUGUST OF 2013; CORRECT?

10:09AM   21    A.   YES, SIR, SEPTEMBER IS AFTER AUGUST.

10:09AM   22    Q.   THANK YOU, DOCTOR.

10:09AM   23         AND YOU SIGNED IT AGAIN ON MARCH 24TH, 2014; RIGHT?

10:09AM   24    A.   YES.

10:09AM   25    Q.   THAT'S AN UPDATED VERSION?

10:10AM   1    A.   CORRECT.

10:10AM   2    Q.   OKAY.  AND LET'S GO TO ONE MORE.  THIS IS ONE OF THE ISE

10:10AM   3    ASSAYS; CORRECT?

10:10AM   4    A.   YES.

10:10AM   5    Q.   AND LET'S GO TO 9315.

10:10AM   6         THIS IS FOR THE POTASSIUM ASSAY; CORRECT?

10:10AM   7    A.   YES.

10:10AM   8    Q.   AND THAT'S ONE OF THE ICE ASSAYS?

10:10AM   9    A.   YES.

10:10AM  10    Q.   SAME THING HERE, 9-26-2013?

10:10AM  11    A.   YES.

10:10AM  12    Q.   AND YOU SIGNED IT AGAIN IN MARCH OF 2014; CORRECT?

10:10AM  13    A.   YES.

10:10AM  14    Q.   AND YOU -- THERE WAS SOME ONGOING WORK THAT WAS DONE ON

10:10AM  15    THE ISE ASSAYS; CORRECT?

10:10AM  16    A.   YES, THERE WERE TERRIBLE PROBLEMS WITH THE ISE'S AND

10:10AM  17    CONTINUOUS WORK TO TRY TO TROUBLESHOOT.

10:10AM  18    Q.   YOU NEVER PULLED THE ASSAYS, CORRECT, SIR?

10:10AM  19    A.   NO.  WELL, I ORDERED POTASSIUM THAT WAS ABOVE THE -- THE

10:11AM  20    POTASSIUM RESULTS THAT WERE OUT OF RANGE WERE NOT REPORTED, AND

10:11AM  21    SO THE RESULTS THAT WERE OUT OF RANGE WERE NOT REPORTED.

10:11AM  22    Q.   RIGHT.  BUT I WANT TO MAKE SURE WE HAVE YOUR TESTIMONY

10:11AM  23    CLEAR, BECAUSE IT'S YOUR JOB TO DETERMINE WHETHER AN ASSAY IS

10:11AM  24    SAFE FOR PATIENT USE; RIGHT?

10:11AM  25    A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                              2624

10:11AM  1    Q.   AND YOU NEVER REMOVED THESE ASSAYS FROM THE LABORATORY;

10:11AM  2    CORRECT?

10:11AM  3    A.   CORRECT.

10:11AM  4    Q.   AND THERE WAS ONGOING -- MY INITIAL QUESTION WAS THERE WAS

10:11AM  5    ONGOING RESEARCH AND DISCUSSIONS THAT WAS HAPPENING WITH

10:11AM  6    RESPECT TO THESE ASSAYS; CORRECT?

10:11AM  7    A.   YES.

10:11AM  8    Q.   AND YOU TESTIFIED ABOUT SOME DISAGREEMENTS THAT YOU HAD

10:11AM  9    ACTUALLY WITH DR. YOUNG ABOUT THESE ASSAYS; CORRECT?

10:11AM  10   A.   I DON'T RECALL.

10:11AM  11   Q.   OKAY.  LET'S LOOK AT 12607 WHICH SHOULD BE -- DO YOU SEE

10:12AM  12   THAT IN YOUR SECOND BINDER?

10:12AM  13   A.   YES.

10:12AM  14   Q.   AND THIS IS SOME WORK THAT WAS DONE IN CONNECTION WITH --

10:12AM  15   A.   YES.

10:12AM  16   Q.   -- THOSE ASSAYS?

10:13AM  17        LET'S TAKE A LOOK AT THAT.

10:13AM  18        I'M SORRY.  I MOVE TO ADMIT EXHIBIT 12607.

10:13AM  19            MR. BOSTIC:  OBJECTION.  HEARSAY.

10:13AM  20        (PAUSE IN PROCEEDINGS.)

10:13AM  21            THE COURT:  THE ENTIRETY OF THE DOCUMENT YOU'RE

10:13AM  22   ASKING?

10:13AM  23            MR. WADE:  I WAS ASKING, YOUR HONOR.  I CAN ADMIT

10:14AM  24   FOR PRESENT PURPOSES EVERYTHING FROM THE MIDDLE OF THE FIRST

10:14AM  25   PAGE BELOW FOR A LIMITED PURPOSE IF THAT'S EASIER.

ROSENDORFF CROSS BY MR. WADE (RES.)                    2625

10:14AM   1              THE COURT:  STRIKING THE TOP?

10:14AM   2              MR. WADE:  YEAH, AND I WOULD NOT PUBLISH THAT.  I

10:14AM   3    MAY REFRESH THE WITNESS'S RECOLLECTION WITH THOSE PORTIONS OF

10:14AM   4    THE DOCUMENT.

10:14AM   5              THE COURT:  I'LL SUSTAIN THE OBJECTION FOR NOW.  WHY

10:14AM   6    DON'T YOU ASK YOUR QUESTIONS?

10:14AM   7              MR. WADE:  OKAY.

10:14AM   8    Q.  DO YOU RECALL BEING CALLED BY MS. HOLMES FROM HER OFFICE

10:14AM   9    IN APRIL OF 2014 TO ENGAGE IN A DISCUSSION WITH HER AND

10:14AM   10   DR. YOUNG ABOUT THE POTASSIUM ASSAYS?

10:14AM   11   A.  NO.

10:14AM   12   Q.  TAKE A LOOK AT THE BOTTOM OF THE FIRST PAGE OF 12607.

10:14AM   13   A.  OKAY.

10:14AM   14   Q.  AND THEN ON TO THE SECOND PAGE.

10:15AM   15   A.  GOT IT.

10:15AM   16   Q.  DOES THAT REFRESH YOUR RECOLLECTION THAT YOU WERE CALLED

10:15AM   17   BY MS. HOLMES TO HAVE A DISCUSSION WITH HER AND MR. YOUNG --

10:15AM   18   DR. YOUNG WITH RESPECT TO THE POTASSIUM ASSAYS?

10:15AM   19   A.  I DON'T HAVE AN INDEPENDENT RECOLLECTION OF THAT OTHER

10:15AM   20   THAN READING IT TODAY HERE IN THE DOCUMENTS.

10:15AM   21   Q.  OKAY.  DO YOU RECALL THAT -- A DISCUSSION THAT YOU ENGAGED

10:15AM   22   IN WITH DR. YOUNG AND MS. HOLMES ABOUT THE POTASSIUM ASSAY AND

10:15AM   23   YOU FELT AS THOUGH MS. HOLMES WAS SIDING WITH DR. YOUNG?

10:15AM   24   A.  I DO NOT RECALL.

10:15AM   25   Q.  OKAY.  DO YOU RECALL WRITING AN EMAIL TO MS. HOLMES IN

10:16AM   1    APRIL OF 2014 DISCUSSING YOUR VIEWS WITH RESPECT TO THESE

10:16AM   2    MATTERS?

10:16AM   3    A.   YES, I'M READING THAT NOW.  I DON'T INDEPENDENTLY RECALL.

10:16AM   4    THAT WAS SEVEN YEARS AGO.  I'M SORRY.

10:16AM   5              MR. WADE:  I MOVE TO ADMIT EVERYTHING BELOW THAT,

10:16AM   6    YOUR HONOR, FOR LIMITED PURPOSE OF MY CLIENT'S STATE OF MIND.

10:16AM   7              THE COURT:  EVERYTHING BELOW?  EVERYTHING BELOW

10:16AM   8    WHAT?

10:16AM   9              MR. WADE:  EVERYTHING FROM THE MARCH 18TH, 2014

10:16AM   10   EMAIL BELOW.

10:16AM   11             MR. BOSTIC:  DO YOU MEAN APRIL, COUNSEL?

10:16AM   12             MR. WADE:  I'M SORRY, APRIL.  THANK YOU.

10:16AM   13             MR. BOSTIC:  WHICH EMAIL?

10:16AM   14             MR. WADE:  THE 10:39 A.M. AND THEN BELOW.

10:16AM   15             MR. BOSTIC:  YOUR HONOR, NO OBJECTION TO THAT.

10:17AM   16        (PAUSE IN PROCEEDINGS.)

10:17AM   17             THE COURT:  ALL RIGHT.  THAT PORTION WILL BE

10:17AM   18   ADMITTED, AND IT MAY BE PUBLISHED.

10:17AM   19        CAN YOU REDACT THE OTHER PORTIONS?

10:17AM   20        (DEFENDANT'S EXHIBIT 12607 WAS RECEIVED IN EVIDENCE.)

10:17AM   21             MR. WADE:  WE'LL REDACT EVERYTHING ABOVE.

10:17AM   22        LET'S GO TO THE SECOND PAGE.

10:17AM   23   Q.   THIS IS 12607.

10:17AM   24   A.   I SEE IT.

10:17AM   25   Q.   AND DO YOU SEE THE EMAIL THERE WHERE YOU'RE SAYING THAT

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2627

10:17AM  1    YOU'LL CALL MS. HOLMES AND TOUCH BASE TOMORROW MORNING?

10:17AM  2    A.   YES.

10:17AM  3    Q.   DO YOU SEE THAT?

10:17AM  4    A.   YES.

10:17AM  5    Q.   AND SHE ASKED YOU TO DROP IN IF YOU'RE AROUND?

10:17AM  6    A.   YES.

10:17AM  7    Q.   BUT IT WAS KIND OF LATE; RIGHT?

10:17AM  8    A.   YES.

10:18AM  9    Q.   LET'S GO UP TO THE NEXT PAGE.

10:18AM 10         DO YOU SEE SHE ASKS YOU TO CALL IN, AND IT SAYS, WE'RE ON

10:18AM 11    THE LINE WITH DANIEL?

10:18AM 12    A.   YES.

10:18AM 13    Q.   DO YOU SEE THAT?

10:18AM 14    A.   YES.

10:18AM 15    Q.   AND, AND DO YOU SEE UP ABOVE THERE'S AN EMAIL WHERE YOU'RE

10:18AM 16    WEIGHING IN ON THE POTASSIUM ASSAY?

10:18AM 17         DO YOU SEE THAT?

10:18AM 18    A.   YES.

10:18AM 19    Q.   AND DOES THAT REFRESH YOUR RECOLLECTION THAT YOU AND

10:18AM 20    DR. YOUNG WERE WEIGHING IN WITH MS. HOLMES ABOUT THE POTASSIUM

10:18AM 21    ASSAY IN THIS PERIOD?

10:18AM 22    A.   I DON'T HAVE AN INDEPENDENT RECOLLECTION OF IT.

10:18AM 23    Q.   DO YOU RECALL HAVING DISAGREEMENTS WITH MR. YOUNG ABOUT

10:18AM 24    THESE MATTERS?

10:18AM 25    A.   I RECALL ME REPEATEDLY RAISING PROBLEMS WITH POTASSIUM,

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2628

10:19AM  1    DR. YOUNG BEING ASKED TO FIX THOSE PROBLEMS, HIM ASSERTING THE

10:19AM  2    PROBLEMS HAD BEEN FIXED, BUT THEN THE PROBLEMS RECURRING.

10:19AM  3    Q.   RIGHT.  AND THERE WERE TIMES WHERE YOU FOUND SOLUTIONS TO

10:19AM  4    THE PROBLEMS AS WELL; RIGHT?

10:19AM  5    A.   I WASN'T REALLY IN THE R&D SIDE INVOLVED IN THE PARTICULAR

10:19AM  6    ASPECTS OF THE ASSAY.  SO I WAS IN A POSITION TO POINT OUT

10:19AM  7    PROBLEMS WITH THE ASSAY AND SUGGEST ROOT CAUSES, RIGHT, BUT I

10:19AM  8    WAS FAIRLY LIMITED IN TERMS OF TROUBLESHOOTING.  THAT REALLY

10:19AM  9    WASN'T MY AREA OF EXPERTISE.

10:19AM  10   Q.   THAT'S PART OF THE REASON WHY DR. YOUNG WAS ON A LOT OF

10:19AM  11   THESE EMAILS; RIGHT?

10:19AM  12   A.   CORRECT.

10:19AM  13   Q.   THAT'S BECAUSE HE WAS MORE INVOLVED IN SOME OF THE

10:19AM  14   RESEARCH AND DEVELOPMENT ON THE ASSAYS?

10:19AM  15   A.   MORE OF THE TECHNICAL HARDWARE ASPECTS, YES.

10:19AM  16   Q.   AND HE COULD DRAW UPON OTHER RESOURCES TO HELP PROVIDE

10:19AM  17   INSIGHTS; RIGHT?

10:19AM  18   A.   YES, YES.

10:19AM  19   Q.   AND WHEN YOU WOULD RAISE ISSUES OR CONCERNS, HE WAS GOING

10:19AM  20   TO WORK TO TRY TO FIGURE OUT A SOLUTION; RIGHT?

10:19AM  21   A.   YES.

10:19AM  22   Q.   AND MANY TIMES HE CAME UP WITH WHAT APPEARED TO BE

10:20AM  23   SOLUTIONS; RIGHT?

10:20AM  24   A.   CORRECT.

10:20AM  25   Q.   AND THAT DIDN'T ALWAYS TAKE HOLD; CORRECT?

| | | |
|---|---|---|
| 10:20AM | 1 | A.   CORRECT. |
| 10:20AM | 2 | Q.   OKAY.  AND LET'S LOOK -- BUT I THINK THERE ARE SOMETIMES |
| 10:20AM | 3 | WHEN YOU CAME UP WITH SOLUTIONS. |
| 10:20AM | 4 |     DO YOU RECALL THAT -- YOU PROPOSING THAT YOU RUN THE |
| 10:20AM | 5 | THERANOS ASSAYS NEAT? |
| 10:20AM | 6 | A.   YES.  DANIEL DIDN'T FEEL THAT WAS A GOOD SOLUTION.  I |
| 10:20AM | 7 | BELIEVE HE SAID NOT A GOOD SOLUTION CLEARLY. |
| 10:20AM | 8 | Q.   OKAY.  LET'S LOOK AT -- LET'S LOOK AT 1717, WHICH IS IN |
| 10:20AM | 9 | EVIDENCE, I BELIEVE. |
| 10:20AM | 10 |     I THINK THIS IS THE DOCUMENT THAT YOU WERE TALKING ABOUT; |
| 10:20AM | 11 | RIGHT? |
| 10:20AM | 12 | A.   YES. |
| 10:21AM | 13 | Q.   AND ON YOUR DIRECT TESTIMONY, YOU WERE ASKED ABOUT |
| 10:21AM | 14 | DR. YOUNG'S RESPONSE TO YOUR SUGGESTION ON RUNNING THESE NEAT. |
| 10:21AM | 15 |     DO YOU RECALL THAT? |
| 10:21AM | 16 | A.   NO. |
| 10:21AM | 17 | Q.   I BELIEVE YOU JUST TESTIFIED A MINUTE AGO THAT DR. YOUNG |
| 10:21AM | 18 | DIDN'T LIKE THAT SOLUTION? |
| 10:21AM | 19 | A.   WELL, HE SAID -- IN THE EMAIL, HE SAID, NOT A VERY GOOD |
| 10:21AM | 20 | ONE CLEARLY.  HE DIDN'T LIKE THE SOLUTION. |
| 10:21AM | 21 | Q.   HE DIDN'T LIKE THE SOLUTION? |
| 10:21AM | 22 | A.   NO. |
| 10:21AM | 23 | Q.   BUT YOU ACTUALLY ADOPTED THE SOLUTION; RIGHT? |
| 10:21AM | 24 | A.   I DO NOT RECALL. |
| 10:21AM | 25 | Q.   WELL, LET'S LOOK. |

ROSENDORFF CROSS BY MR. WADE (RES.)                              2630

10:21AM    1    A.   I MEAN THE -- ANYWAY.

10:21AM    2    Q.   LET'S TAKE A LOOK AT EXHIBIT 13891, WHICH SHOULD BE IN

10:22AM    3    YOUR BLACK BINDER.

10:22AM    4         PROBABLY SECOND VOLUME, DOCTOR.

10:22AM    5    A.   I'M SORRY, I DON'T SEE IT.

10:22AM    6    Q.   13891.

10:22AM    7    A.   CORRECT.

10:22AM    8         OH, I HAVE IT NOW.

10:22AM    9    Q.   DO YOU HAVE THAT IN FRONT OF YOU?

10:22AM   10    A.   YES.

10:22AM   11    Q.   AND 13891 ARE MINUTES FROM YOUR LAB DIRECTOR MEETING

10:22AM   12    MAY 20TH, 2014.

10:23AM   13         DO YOU SEE THAT?

10:23AM   14    A.   I'M SORRY.  COULD SOMEBODY COME AND HELP ME WITH THE

10:23AM   15    BINDER.  IT'S JUST BECOME -- IT'S JUST OPENED UP AND PAGES

10:23AM   16    HAVE --

10:23AM   17              MR. WADE:  SURE.  WITH THE COURT'S INDULGENCE FOR A

10:23AM   18    MOMENT?

10:23AM   19              THE WITNESS:  CAN WE TAKE A SMALL RECESS FOR THAT?

10:23AM   20              THE COURT:  WELL, WHY DON'T YOU SEE IF YOU CAN SOLVE

10:23AM   21    THE PROBLEM, MR. WADE.

10:23AM   22    BY MR. WADE:

10:23AM   23    Q.   IF YOU COULD TAKE OUT 13891, IF IT'S OPEN, AND THEN I'LL

10:23AM   24    HAVE YOU HOLD ON TO THAT DOCUMENT AND I'LL BRING THE BINDER

10:23AM   25    BACK AND WE'LL WORK ON IT WHILE WE'RE TALKING ABOUT 13891.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2631

10:23AM   1            I'LL TELL YOU WHAT?  WHY DON'T YOU GIVE IT TO ME, I'LL

10:23AM   2    TAKE IT OUT AND HAND IT BACK UP.

10:24AM   3            MAY I APPROACH, YOUR HONOR?

10:24AM   4                 THE COURT:  YES.

10:24AM   5                 MR. WADE:  (HANDING.)

10:24AM   6                 THE WITNESS:  THANK YOU.

10:24AM   7    BY MR. WADE:

10:24AM   8    Q.   DO YOU HAVE 13891 IN FRONT OF YOU, DOCTOR?

10:24AM   9    A.   THE -- YES.

10:24AM  10    Q.   AND THESE ARE THE LABORATORY DIRECTOR MEETING MINUTES FOR

10:24AM  11    MAY 20TH, 2014?

10:24AM  12    A.   YES.

10:24AM  13                 MR. WADE:  MOVE THE ADMISSION OF 13891.

10:24AM  14                 MR. BOSTIC:  NO OBJECTION.

10:24AM  15                 THE COURT:  IT MAY BE PUBLISHED.  IT'S ADMITTED.

10:24AM  16            (DEFENDANT'S EXHIBIT 13891 WAS RECEIVED IN EVIDENCE.)

10:24AM  17                 MR. WADE:  AND IF WE CAN GO TO THE SECOND PAGE.

10:25AM  18    Q.   DO YOU SEE ITEM 7?

10:25AM  19    A.   YES.

10:25AM  20    Q.   AND THAT'S THE ISE'S.

10:25AM  21            DO YOU SEE THAT?

10:25AM  22    A.   YES.

10:25AM  23    Q.   AND IT SAYS, "WITH NEAT TESTING, SODIUM AND CHLORIDE HAS

10:25AM  24    SETTLED DOWN."

10:25AM  25            DO YOU SEE THAT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                2632

10:25AM  1    A.   YES.

10:25AM  2    Q.   AND IT SOUNDS LIKE YOUR SUGGESTION WAS FOLLOWED, RIGHT,

10:25AM  3    DOCTOR?

10:25AM  4    A.   IT LOOKS THAT WAY, YES.

10:25AM  5    Q.   AND EVEN THOUGH IT MIGHT NOT HAVE BEEN A PERMANENT

10:25AM  6    SOLUTION, IT WAS A SOLUTION THAT WAS FOLLOWED ON A TEMPORARY

10:25AM  7    BASIS?

10:25AM  8    A.   YEAH, THE COMPANY DIDN'T REALLY LIKE THAT SOLUTION.

10:25AM  9    Q.   AND THEY KEPT WORKING ON OTHER SOLUTIONS; RIGHT?

10:25AM  10   A.   I GUESS SO.

10:25AM  11   Q.   WELL, LET'S LOOK AT --

10:25AM  12        MAY I APPROACH AGAIN, YOUR HONOR?

10:26AM  13        (HANDING.)

10:26AM  14        DR. ROSENDORFF, TURN IN YOUR BIND TO 13893.

10:26AM  15        DO YOU SEE THAT?

10:26AM  16   A.   YES.

10:26AM  17   Q.   AND THIS IS AN EMAIL RELATING TO A SOLUTION THAT DR. YOUNG

10:26AM  18   HAD IN CONNECTION WITH THE ISE --

10:26AM  19   A.   YES.

10:26AM  20   Q.   -- ISSUE?

10:26AM  21   A.   YES.

10:26AM  22   Q.   AND THIS IS THE ITEM THAT WE'VE JUST BEEN TALKING ABOUT;

10:27AM  23   RIGHT?

10:27AM  24   A.   YES.

10:27AM  25        MR. WADE:  MOVE THE ADMISSION OF 13893.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2633

10:27AM  1              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:27AM  2          (DEFENDANT'S EXHIBIT 13893 WAS RECEIVED IN EVIDENCE.)

10:27AM  3      BY MR. WADE:

10:27AM  4      Q.  LET'S GO TO THE SECOND PAGE.

10:27AM  5          DO YOU SEE THERE IT SAYS -- DR. YOUNG SAYS YOU'RE NOT ON

10:27AM  6      THIS EMAIL, BUT IT'S FORWARDED TO YOU LATER.

10:27AM  7          DO YOU SEE THAT?

10:27AM  8      A.  I SEE THAT I'M NOT ON IT.  I DON'T SEE WHERE IT WAS

10:27AM  9      FORWARDED TO ME LATER.

10:27AM 10      Q.  WELL, YOU SEE YOU'RE ON THE CHAIN LATER UP THE CHAIN.

10:27AM 11          DO YOU SEE THAT?

10:27AM 12      A.  OH, OKAY.

10:27AM 13      Q.  YEAH.

10:27AM 14      A.  YES.

10:27AM 15      Q.  OKAY.  LET'S -- DR. YOUNG SAYS IN THIS EMAIL TO MS. HOLMES

10:27AM 16      AND MR. BALWANI, "I WANTED TO UPDATE YOU ON THE ISE STUDIES IN

10:27AM 17      PREPARATION FOR SWITCHING BACK TO THE DILUTED ISE PROTOCOLS ON

10:27AM 18      TUESDAY."

10:27AM 19          DO YOU SEE THAT?

10:27AM 20      A.  YES.

10:27AM 21      Q.  AND SUGGESTING THAT BEFORE THEY WERE BEING RUN NEAT;

10:27AM 22      CORRECT?

10:27AM 23      A.  YES.

10:27AM 24      Q.  AND THEN HE SAYS, "WITH OUR NEW APPROACH, WE HAVE NOW

10:28AM 25      SHOWN THAT WE CAN PROCESS AND RUN ISE'S WITH DILUTED VENOUS

ROSENDORFF CROSS BY MR. WADE (RES.)                                   2634

10:28AM  1    SAMPLES WITH GREAT ACCURACY AND PRECISION."

10:28AM  2        DO YOU SEE THAT?

10:28AM  3    A.   YES.

10:28AM  4    Q.   AND DO YOU SEE HE NOTES THAT OVER 10 DAYS, 48 SUBJECTS

10:28AM  5    WERE RUN ON THAT PROJECT THAT HE WAS WORKING ON?

10:28AM  6    A.   YES.

10:28AM  7    Q.   OKAY.  AND HE SAYS NEVERTHELESS -- IF WE GO DOWN TO THE

10:28AM  8    NEXT PARAGRAPH --

10:28AM  9    A.   SO IN PRACTICE VENOUS BLOOD WAS NEVER DILUTED ON THE

10:28AM  10   THERANOS METHODS.

10:28AM  11        MR. WADE:  MOVE TO STRIKE, YOUR HONOR.

10:28AM  12        THE COURT:  OVERRULED.  OVERRULED.  YOU CAN ASK

10:28AM  13   ANOTHER QUESTION.

10:28AM  14   BY MR. WADE:

10:28AM  15   Q.   DO YOU SEE THE NEXT HEADING THERE WHERE IT SAYS

10:28AM  16   ADDITIONAL ISSUES THAT HE PLANS TO ADDRESS WITH THE TEAM?  HE

10:28AM  17   MENTIONS THAT?

10:28AM  18   A.   YES.

10:28AM  19   Q.   AND SO HE'S GOING TO CONTINUE TO WORK ON IT?

10:28AM  20   A.   YES.

10:28AM  21   Q.   BUT HE WAS ANNOUNCING THIS UPDATE.

10:28AM  22        DO YOU SEE THAT?

10:28AM  23   A.   YES.

10:28AM  24   Q.   OKAY.  LET'S GO TO THE NEXT PAGE.

10:29AM  25        DO YOU SEE AT THE BOTTOM MR. BALWANI WRITES HOW THIS IS

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2635

10:29AM  1    GREAT PROGRESS AND A BIG COMPETITIVE ADVANTAGE?

10:29AM  2    A.   YES.

10:29AM  3    Q.   AND THEN HE NOTES, "WE NEED TO KEEP THIS PROJECT, THE

10:29AM  4    CODE, CALIBRATION, AND EVERYTHING WE LEARNED HERE AS THERANOS

10:29AM  5    TRADE SECRET."

10:29AM  6         DO YOU SEE THAT?

10:29AM  7    A.   YES.

10:29AM  8    Q.   BECAUSE THIS WAS PROPRIETARY INFORMATION; RIGHT?

10:29AM  9    A.   I CAN'T COMMENT ON WHAT THE STATE OF THE ART WAS IN TERMS

10:29AM  10   OF DR. YOUNG'S FIX AND WHAT OTHER FOLKS WERE DOING, WHETHER

10:29AM  11   THAT WOULD QUALIFY AS PROPRIETARY, YOU KNOW -- GO AHEAD.  I'M

10:29AM  12   SORRY.

10:29AM  13   Q.   WELL, YOU RECOGNIZE THAT THE COMPANY CONSIDERED IT

10:29AM  14   PROPRIETARY INFORMATION HERE?

10:29AM  15   A.   MR. BALWANI DID, YES.

10:29AM  16   Q.   OKAY.  AND HE SAYS, "EVERYONE WHO IS WORKING ON THIS NEEDS

10:29AM  17   TO UNDERSTAND THIS."

10:29AM  18        DO YOU SEE THAT?

10:29AM  19   A.   YES.

10:29AM  20   Q.   AND PART OF THE REASON THAT I THINK YOU'RE COPIED IN IT

10:30AM  21   SAYS, "BESIDES ADAM, NO ONE IN CLIA NEEDS TO KNOW OUR SECRET

10:30AM  22   SAUCE."

10:30AM  23        DO YOU SEE THAT?

10:30AM  24   A.   YES.

10:30AM  25   Q.   AND IF ADAM THINKS ANYONE ELSE NEEDS TO KNOW THIS, THEN WE

UNITED STATES COURT REPORTERS

**ER-6382**

ROSENDORFF CROSS BY MR. WADE (RES.)                          2636

10:30AM  1    NEED TO GET THEM UNDER SAME AGREEMENT TO KEEP THIS

10:30AM  2    CONFIDENTIAL; RIGHT?

10:30AM  3    A.   YES.

10:30AM  4    Q.   BECAUSE HE SAYS THEY'RE TRADE SECRETS; RIGHT?

10:30AM  5    A.   YES.

10:30AM  6    Q.   AND THEN DR. YOUNG THEN SAYS THAT HE'LL ADDRESS THIS WITH

10:30AM  7    MONA RAMAMURTHY.

10:30AM  8        DO YOU SEE THAT?

10:30AM  9    A.   YES.

10:30AM  10   Q.   AND THEN YOU WEIGH IN AND YOU CONGRATULATE DANIEL ON THE

10:30AM  11   WORK THAT HE HAD DONE; RIGHT?

10:30AM  12   A.   YES.

10:30AM  13   Q.   BECAUSE THAT SEEMED LIKE A SUCCESS AT THE TIME; RIGHT?

10:30AM  14   A.   IT SEEMED LIKE IT.

10:30AM  15   Q.   AND THEN OTHERS CONGRATULATED DANIEL AS WELL; RIGHT?

10:31AM  16   A.   CORRECT.

10:31AM  17   Q.   OKAY.  NOW, LET ME BRING UP 1953, WHICH IS IN EVIDENCE,

10:31AM  18   AND IT'S IN YOUR BINDER IF YOU WOULD LIKE TO LOOK AT IT.

10:32AM  19   A.   I HAVE IT.

10:32AM  20   Q.   OKAY.  AND 1953 WAS AN EMAIL BETWEEN -- THAT YOU'RE NOT

10:32AM  21   ON; RIGHT?

10:32AM  22   A.   CORRECT.

10:32AM  23   Q.   AND THAT WAS AN EMAIL BETWEEN CHRISTIAN HOLMES AND

10:32AM  24   ELIZABETH HOLMES; RIGHT?

10:32AM  25   A.   CORRECT.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2637

10:32AM    1    Q.   AND HE WAS DISCUSSING ISSUES WITH RESPECT TO EXPERIENCES

10:32AM    2    THAT PEOPLE WERE HAVING WITH THE ISE ASSAYS; CORRECT?

10:32AM    3    A.   YES.

10:32AM    4    Q.   AND YOU WERE ASKED QUESTIONS ABOUT THIS; RIGHT?

10:32AM    5    A.   YES.

10:32AM    6    Q.   BUT THE GOVERNMENT DIDN'T SHOW YOU ANY FOLLOWUP ON THIS;

10:32AM    7    RIGHT?

10:32AM    8    A.   I DO NOT RECALL.

10:32AM    9    Q.   AND YOU DON'T KNOW WHAT ELSE MS. HOLMES WAS DEALING WITH

10:32AM   10    ON THESE ISSUES; RIGHT?  BECAUSE YOU'RE NOT ON THE EMAIL;

10:32AM   11    RIGHT?

10:32AM   12    A.   RIGHT, RIGHT.

10:32AM   13    Q.   WELL, LET'S GO TO 12764.

10:33AM   14         DO YOU SEE THAT'S AN EMAIL OF THE SAME DATE?

10:33AM   15    A.   I'M SORRY, CAN YOU PLEASE GIVE ME A MINUTE?

10:33AM   16    Q.   YEAH, SURE.

10:33AM   17    A.   12764, AND IT'S STILL IN THE WHITE BINDER?

10:33AM   18    Q.   NO.  MY APOLOGIES.  WE'RE PROBABLY BACK TO THE BLACK

10:33AM   19    BINDER NOW.

10:33AM   20    A.   OKAY.

10:33AM   21    Q.   OKAY.  DO YOU HAVE THAT IN FRONT OF YOU?

10:33AM   22    A.   YES.

10:33AM   23    Q.   AND THIS IS AN EMAIL UP AT THE TOP ON THAT SAME DATE,

10:33AM   24    SEPTEMBER 23RD, 2014?

10:33AM   25    A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2638

10:33AM  1      Q.   DO YOU SEE THAT?

10:33AM  2           AND IT RELATES TO THAT SAME TOPIC THAT -- MANY OF THE SAME

10:34AM  3      ASSAYS THAT CHRISTIAN HOLMES WAS REFERRING TO; CORRECT?

10:34AM  4      A.   THIS ONE LOOKS LIKE IT'S ABOUT C02, AND CHRISTIAN WAS

10:34AM  5      TALKING ABOUT SODIUM, POTASSIUM, AND CHLORIDE, I BELIEVE.

10:34AM  6      Q.   AND DO YOU SEE THE REFERENCE TO POTASSIUM THERE AS WELL?

10:34AM  7      A.   I'M SORRY, WHICH EMAIL ARE YOU REFERENCING?

10:34AM  8      Q.   THE THIRD ONE DOWN.

10:34AM  9      A.   YES.

10:34AM  10     Q.   OKAY.

10:34AM  11          YOUR HONOR, I WOULD MOVE THE ADMISSION OF 12764.

10:34AM  12              MR. BOSTIC:  NO OBJECTION.

10:34AM  13              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:34AM  14          (DEFENDANT'S EXHIBIT 12764 WAS RECEIVED IN EVIDENCE.)

10:34AM  15     BY MR. WADE:

10:34AM  16     Q.   AND THIS IS AN EMAIL WHERE MS. HOLMES IS GETTING SOME

10:34AM  17     UPDATES ON THESE ASSAYS ON THE SAME DATE, ON SEPTEMBER 23RD,

10:34AM  18     2014; RIGHT?

10:34AM  19     A.   YES.

10:34AM  20     Q.   OKAY.  I DON'T HAVE ANY OTHER QUESTIONS ABOUT THIS.

10:35AM  21          LET ME BRING UP 2228, WHICH SHOULD BE IN THE GOVERNMENT'S

10:35AM  22     BINDER.

10:35AM  23     A.   I HAVE IT.

10:35AM  24     Q.   YOU HAVE THAT?  LET'S GO TO THE SECOND PAGE.

10:35AM  25          DO YOU RECALL THIS EMAIL WHERE YOU FORWARDED ON

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2639

10:36AM  1    NOVEMBER 21ST AN EMAIL ABOUT THE ISE'S AND YOU SAID -- AND THE

10:36AM  2    VOIDING OF CERTAIN RESULTS.

10:36AM  3         DO YOU SEE THAT?

10:36AM  4    A.   YES.

10:36AM  5    Q.   AND YOU'RE ASKING THEM, ARE YOU COMFORTABLE WITH THAT;

10:36AM  6    RIGHT?

10:36AM  7    A.   YES.

10:36AM  8    Q.   AND NOW IN THE EMAIL UP THE CHAIN, MR. BALWANI SUGGESTS

10:36AM  9    THAT MAYBE YOU JUMPED THE GUN; RIGHT?

10:36AM  10        DO YOU SEE THAT?

10:36AM  11   A.   YES.

10:36AM  12   Q.   BUT MORE FUNDAMENTALLY, YOU SAID THAT YOU WEREN'T

10:36AM  13   COMFORTABLE WITH TAKING THIS APPROACH; RIGHT?  WITH VOIDING THE

10:36AM  14   RESULT?  THAT'S WHAT YOU SAID IN THE PRIOR EMAIL?

10:36AM  15   A.   IT WAS THE BEST I COULD DO TO PROTECT PATIENTS.

10:36AM  16   Q.   RIGHT, RIGHT.

10:36AM  17        BUT YOU'RE ASKING, ARE THEY BOTH COMFORTABLE WITH THIS;

10:36AM  18   RIGHT?

10:36AM  19   A.   CORRECT.

10:36AM  20   Q.   THE VOIDING OF THE RESULTS WAS ACTUALLY SOMETHING THAT YOU

10:36AM  21   AND YOUR GROUP CAME UP WITH --

10:36AM  22   A.   YES.

10:36AM  23   Q.   -- A COUPLE WEEKS EARLIER; RIGHT?

10:36AM  24   A.   A LONG TIME BEFORE THIS EMAIL, YES.

10:37AM  25   Q.   RIGHT.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2640

10:37AM   1        AND, IN FACT, MR. BALWANI AND MS. HOLMES DIDN'T KNOW ABOUT

10:37AM   2    IT; RIGHT?  YOU MADE THAT DECISION INDEPENDENT OF THEM?

10:37AM   3    A.   THEY KNEW ABOUT IT.

10:37AM   4    Q.   OKAY.  LET'S GO TO 7490.

10:37AM   5        DO YOU HAVE THAT DOCUMENT IN FRONT OF YOU?

10:37AM   6    A.   YES.

10:37AM   7    Q.   AND THIS IS AN EMAIL INVOLVING YOU, MR. BALWANI AND

10:38AM   8    MS. HOLMES IN LATE OCTOBER 2014?

10:38AM   9    A.   YES.

10:38AM   10   Q.   ON THE SAME TOPIC, THE CRITICAL ISE'S?

10:38AM   11   A.   YES.

10:38AM   12          MR. WADE:  MOVE THE ADMISSION OF 7490.

10:38AM   13          MR. BOSTIC:  NO OBJECTION.

10:38AM   14          THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:38AM   15      (DEFENDANT'S EXHIBIT 7490 WAS RECEIVED IN EVIDENCE.)

10:38AM   16          MR. WADE:  LET'S BLOW UP THE TOP HALF OF THAT EMAIL.

10:38AM   17   Q.   ACTUALLY, LET'S START -- DO YOU SEE THERE IT SAYS -- LET'S

10:38AM   18   START DOWN THE CHAIN.  I'M SORRY.  LET'S GO TO THE LAST EMAIL

10:38AM   19   ON THIS PAGE.

10:38AM   20       YOU SAY HERE, "I WANTED TO BRING THIS IMPORTANT ISSUE TO

10:38AM   21   YOUR ATTENTION.  RIGHT NOW, AFTER MUCH COOPERATIVE DISCUSSION

10:38AM   22   BETWEEN CLIA AND R&D AND THOUGHT, IF THE CTN --" YOU TALK ABOUT

10:38AM   23   VOIDING CRITICAL RESULTS; RIGHT?

10:38AM   24   A.   THAT'S THE SODIUM THAT I'M REFERRING TO --

10:38AM   25   Q.   RIGHT.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2641

10:38AM   1      A.    -- IN THAT EMAIL, YES.

10:38AM   2      Q.    AND THE RESPONSE FROM MR. BALWANI IS, LET'S TOUCH BASE,

10:39AM   3      WHEN DO WE START THIS POLICY?  RIGHT?

10:39AM   4      A.    SO THE VOIDING OF THE POTASSIUM RESULTS OUT OF RANGE HAD

10:39AM   5      BEGUN MUCH, MUCH EARLIER THAN THAT.

10:39AM   6      Q.    RIGHT.  YOU SEE HE DIDN'T KNOW ABOUT THIS; RIGHT?

10:39AM   7      A.    THAT'S WHAT HE'S ASSERTING.

10:39AM   8      Q.    OKAY.  LET'S LOOK AT YOUR EMAIL UP THE CHAIN.

10:39AM   9            YOU EXPLAIN, "WE HAD A MEETING WITH TINA, NISHIT, AND CLIA

10:39AM   10     LEADERSHIP ABOUT 6 WEEKS AGO TO COME UP WITH A CONSISTENT

10:39AM   11     PRACTICE."

10:39AM   12           DO YOU SEE THAT?

10:39AM   13     A.    YES.

10:39AM   14     Q.    AND THAT WAS YOUR DECISION; RIGHT?

10:39AM   15     A.    YES.

10:39AM   16     Q.    AND YOU MADE IT IN CONJUNCTION WITH OTHERS?

10:39AM   17     A.    YES.

10:39AM   18     Q.    AND IT LOOKS LIKE -- AND MR. BALWANI SAYS HE DIDN'T EVEN

10:39AM   19     KNOW ABOUT IT; RIGHT?

10:39AM   20     A.    THAT'S WHAT HE'S SAYING.

10:39AM   21     Q.    SO WHEN YOU'RE ASKING THEM IF THEY'RE COMFORTABLE WITH

10:39AM   22     THAT PRACTICE IN NOVEMBER TWO WEEKS LATER, YOU'RE TALKING ABOUT

10:39AM   23     A PRACTICE THAT YOU IMPLEMENTED; CORRECT?

10:39AM   24     A.    CORRECT.

10:39AM   25     Q.    AND A PRACTICE THAT THEY DIDN'T EVEN KNOW ABOUT FOR SIX

ROSENDORFF CROSS BY MR. WADE (RES.)                              2642

10:40AM  1   WEEKS UNTIL AFTER YOU WERE DOING IT; RIGHT?

10:40AM  2   A.   WELL, THEY KNEW ABOUT IT IN NOVEMBER.

10:40AM  3   Q.   WELL, THEY LEARNED ABOUT IT RIGHT HERE; RIGHT?

10:40AM  4   A.   THAT'S WHAT HE'S SAYING, YEAH.

10:40AM  5   Q.   AND IT WAS YOUR PRACTICE?

10:40AM  6   A.   CORRECT.

10:40AM  7   Q.   OKAY.  AND YOU DID IT IN CONJUNCTION WITH A TEAM OF OTHER

10:40AM  8   PEOPLE; RIGHT?

10:40AM  9   A.   CORRECT.

10:40AM  10  Q.   DO YOU RECALL GIVING TESTIMONY ON DIRECT EXAMINATION ABOUT

10:40AM  11  THE FREQUENCY OF DOCTOR QUESTIONS?

10:40AM  12  A.   YES.

10:40AM  13  Q.   OKAY.  I WANT TO MAKE SURE THAT I UNDERSTAND YOUR

10:41AM  14  TESTIMONY.

10:41AM  15       DO YOU RECALL THAT MR. BOSTIC ASKED YOU ABOUT THE

10:41AM  16  FREQUENCY OF THE PROBLEMS AND ASKED YOU TO COMPARE THEM WITH

10:41AM  17  THE FREQUENCY OF PROBLEMS AT UNIVERSITY OF PITTSBURGH?

10:41AM  18       DO YOU RECALL THAT?

10:41AM  19  A.   YES, YES.

10:41AM  20  Q.   AND YOUR ANSWER WAS THAT THEY WERE MUCH MORE FREQUENT AT

10:41AM  21  THERANOS; RIGHT?

10:41AM  22  A.   YES.

10:41AM  23  Q.   YOU PREVIOUSLY TESTIFIED ON EXACTLY THIS TOPIC, HAVE YOU

10:41AM  24  NOT?

10:41AM  25  A.   I BELIEVE SO.

ROSENDORFF CROSS BY MR. WADE (RES.)                            2643

| | | |
|---|---|---|
| 10:41AM | 1 | Q.   YEAH.  AND YOU GAVE EXACTLY THE OPPOSITE ANSWER |
| 10:41AM | 2 | ESSENTIALLY; RIGHT? |
| 10:41AM | 3 | A.   I DON'T RECALL. |
| 10:41AM | 4 | Q.   OKAY.  WELL, LET'S SEE IF WE CAN CLARIFY THIS.  IF YOU GO |
| 10:41AM | 5 | IN THE YELLOW BINDER TO EXHIBIT 11000. |
| 10:42AM | 6 | DO YOU HAVE THAT IN FRONT OF YOU? |
| 10:42AM | 7 | A.   YES. |
| 10:42AM | 8 | Q.   AND IF YOU COULD LOOK AT PAGE 122? |
| 10:42AM | 9 | A.   OKAY. |
| 10:42AM | 10 | Q.   DO YOU HAVE THAT IN FRONT OF YOU? |
| 10:42AM | 11 | A.   YES. |
| 10:42AM | 12 | Q.   OKAY.  AND THERE -- AND THAT WAS A DEPOSITION THAT YOU |
| 10:42AM | 13 | GAVE IN THE ARIZONA MATTER? |
| 10:42AM | 14 | A.   YES. |
| 10:42AM | 15 | Q.   AND WE'VE TALKED ABOUT THIS BEFORE.  YOU WERE UNDER OATH; |
| 10:43AM | 16 | RIGHT? |
| 10:43AM | 17 | A.   YES. |
| 10:43AM | 18 | Q.   AND THERE WAS A COURT REPORTER THERE TAKING DOWN YOUR |
| 10:43AM | 19 | ANSWERS? |
| 10:43AM | 20 | A.   YES. |
| 10:43AM | 21 | Q.   UNDER THE PAINS AND PENALTIES OF PERJURY; CORRECT? |
| 10:43AM | 22 | A.   YES. |
| 10:43AM | 23 | Q.   OKAY.  YOU WERE ASKED, "WERE THESE TYPE OF PHYSICIAN |
| 10:43AM | 24 | COMPLAINTS COMMON DURING YOUR TIME AT THERANOS?" |
| 10:43AM | 25 | AND YOU ANSWERED, "THEY WEREN'T MORE COMMON THAN WHAT ONE |

ROSENDORFF CROSS BY MR. WADE (RES.)                                2644

10:43AM   1      USUALLY SEES IN A -- SOME LABS WITH HIGH VOLUME."

10:43AM   2           CORRECT?

10:43AM   3                THE COURT:  EXCUSE ME.

10:43AM   4                MR. BOSTIC:  YOUR HONOR, THIS EXHIBIT IS NOT IN

10:43AM   5      EVIDENCE.  COUNSEL IS READING FROM IT.

10:43AM   6                MR. WADE:  I'M IMPEACHING THE WITNESS, YOUR HONOR.

10:43AM   7                THE COURT:  YES, YOU ARE IMPEACHING THE WITNESS.

10:43AM   8           DO YOU WANT TO ASK HIM WHETHER OR NOT -- I THINK YOU LAID

10:43AM   9      A FOUNDATION FOR THIS, BUT YOU CAN ASK HIM WHETHER -- TO READ

10:43AM  10      IT HIMSELF AND ASK IF THAT'S HIS RESPONSE.

10:43AM  11           SO WHY DON'T YOU ASK YOUR QUESTION AGAIN?

10:43AM  12                MR. WADE:  YOUR HONOR, I BELIEVE I ASKED --

10:43AM  13                THE COURT:  DO IT AGAIN.

10:44AM  14                MR. WADE:  OKAY.  OKAY.

10:44AM  15      Q.   SIR, ON LINE 12 OF THIS TRANSCRIPT, YOU WERE ASKED, "WERE

10:44AM  16      THESE TYPES OF PHYSICIAN COMPLAINTS COMMON DURING YOUR TIME AT

10:44AM  17      THERANOS?"

10:44AM  18      A.   YES.

10:44AM  19      Q.   AND YOU WERE ASKED THAT; RIGHT?

10:44AM  20      A.   YES.

10:44AM  21      Q.   AND YOU ANSWERED, "THEY WEREN'T MORE COMMON THAN WHAT ONE

10:44AM  22      USUALLY SEES IN A -- SOME LABS WITH HIGH VOLUME."

10:44AM  23           CORRECT?

10:44AM  24      A.   YES.  WE'VE SEEN BEFORE THAT THERANOS WAS NOT A HIGH

10:44AM  25      VOLUME LAB.

10:44AM  1    Q.   DO YOU SEE WHAT THAT SAYS THERE?

10:44AM  2    A.   YES, I DO.

10:44AM  3    Q.   DID I READ IT CORRECTLY?

10:44AM  4    A.   YOU DID.

10:44AM  5    Q.   AND THEN YOU WERE ASKED, CAN YOU EXPLAIN THAT A LITTLE BIT

10:44AM  6    MORE.

10:44AM  7         DO YOU SEE THAT?

10:44AM  8    A.   YES.

10:44AM  9    Q.   AND YOU WERE ASKED THAT; CORRECT?

10:44AM  10   A.   YES.

10:44AM  11   Q.   AND YOU ANSWERED, YOU, YOU ALWAYS GET QUESTIONS AS LAB

10:44AM  12   DIRECTOR?

10:44AM  13   A.   YES.

10:44AM  14   Q.   YOU CAN RUN A THOUSAND TESTS, AND THEN ONE OR TWO ARE

10:44AM  15   SEEMINGLY PROBLEMATIC OR ANOMALOUS?

10:44AM  16   A.   YES.

10:44AM  17   Q.   THEY'RE FLYERS.  YOU DON'T KNOW WHY THERE'S A DIFFERENCE

10:45AM  18   BETWEEN THAT TEST AND A TEST DONE AT A DIFFERENT CENTER AND

10:45AM  19   YOU -- I DON'T THINK THE TESTS, I DON'T THINK I HAD A GREATER

10:45AM  20   NUMBER OF TESTS THAT, THAT WERE ANOMALOUS, THAT I HAD TO REVIEW

10:45AM  21   AS LAB DIRECTOR AT THERANOS THAN AT OTHER PLACES THAT I'VE BEEN

10:45AM  22   LIKE AT UNIVERSITY OF PITTSBURGH.

10:45AM  23        CORRECT?

10:45AM  24   A.   YES.

10:45AM  25   Q.   OKAY.  AND THAT WAS TRUTHFUL TESTIMONY ON THAT DAY; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2646

10:45AM  1      A.   YES.

10:45AM  2      Q.   AND THAT WAS 180 DEGREES FROM WHAT YOU ANSWERED IN YOUR

10:45AM  3      DIRECT TESTIMONY; RIGHT?

10:45AM  4      A.   YES, IT SEEMS TO BE DIFFERENT.

10:45AM  5      Q.   NOW, THESE RESULTS WERE -- EVERY ONCE IN A WHILE PROBLEMS

10:45AM  6      COME UP IN LABS; RIGHT?

10:45AM  7      A.   YES.

10:45AM  8      Q.   AND EVERY LAB IN AMERICA PROBABLY?  PROBABLY EVERY LAB IN

10:46AM  9      THE WORLD; RIGHT?

10:46AM 10      A.   YES.

10:46AM 11      Q.   IT'S NOT GOING TO BE PERFECT; CORRECT?

10:46AM 12      A.   CORRECT.

10:46AM 13      Q.   OKAY.  AND --

10:46AM 14      A.   SO KEEP IN MIND THAT UNIVERSITY OF PITTSBURGH HAD A MUCH,

10:46AM 15      MUCH HIGHER VOLUME, SO THERANOS HAD A MUCH, MUCH LOWER VOLUME,

10:46AM 16      SO ACTUALLY THE NUMBER OF COMPLAINTS AND ISSUES WERE

10:46AM 17      COMPARABLE; RIGHT?

10:46AM 18          SO I JUST WANTED TO POINT OUT.  ACTUALLY THE HIGHER THE

10:46AM 19      VOLUME, THE MORE ISSUES YOU WOULD EXPECT, BUT THERANOS WAS LOW

10:46AM 20      VOLUME.

10:46AM 21      Q.   SIR, YOU TESTIFIED ON YOUR DIRECT EXAMINATION THAT THERE

10:46AM 22      WERE MUCH MORE FREQUENT ISSUES AT THERANOS; RIGHT?

10:46AM 23      A.   YES.

10:46AM 24      Q.   AND YOU TESTIFIED EXACTLY THE OPPOSITE IN YOUR DEPOSITION;

10:46AM 25      RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                     2647

10:46AM   1      A.   I CAN'T ANSWER YES OR NO.

10:47AM   2      Q.   OKAY.  WHEN AN ISSUE DID COME UP, DID YOU INVESTIGATE IT?

10:47AM   3      A.   YES, OF COURSE.

10:47AM   4      Q.   AND, IN FACT, THERE'S A REGULATION THAT REQUIRES YOU TO

10:47AM   5      INVESTIGATE IT; RIGHT?

10:47AM   6      A.   I'M NOT SURE EXACTLY WHICH ONE YOU'RE REFERRING TO, BUT --

10:47AM   7      Q.   A STANDARD FOR COMPLAINT INVESTIGATIONS?

10:47AM   8      A.   OKAY.

10:47AM   9      Q.   ARE YOU FAMILIAR WITH THAT UNDER CLIA?

10:47AM   10     A.   YES.

10:47AM   11     Q.   AND WOULD YOU FOLLOW THAT?

10:47AM   12     A.   YES.

10:47AM   13     Q.   AND YOU HAD SOP'S ON THAT; CORRECT?

10:47AM   14     A.   I BELIEVE SO.

10:47AM   15     Q.   LET'S LOOK AT 9907.

10:48AM   16     A.   I HAVE IT.

10:48AM   17     Q.   AND THIS IS THE COMPLAINT INVESTIGATION AND COMMUNICATION

10:48AM   18     POLICY AT THERANOS?

10:48AM   19     A.   OH, OKAY, 2011.

10:48AM   20     Q.   IS THAT RIGHT?

10:48AM   21     A.   IT'S DATED 2011.

10:48AM   22     Q.   AND THIS IS THE STANDARD FORMAT IN WHICH THESE CONTROLLED

10:48AM   23     DOCUMENTS WERE MAINTAINED?

10:48AM   24     A.   YES.

10:48AM   25            MR. WADE:  I MOVE THE ADMISSION OF EXHIBIT 9907.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2648

10:48AM   1              MR. BOSTIC:  NO OBJECTION.

10:48AM   2              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:48AM   3         (DEFENDANT'S EXHIBIT 9907 WAS RECEIVED IN EVIDENCE.)

10:48AM   4    BY MR. WADE:

10:48AM   5    Q.   AND IF WE COULD JUST GO TO THE THIRD PAGE, THERE'S A

10:48AM   6    SPECIFIC PROCESS THAT IS SET FORTH IN HERE FOR HOW THESE THINGS

10:49AM   7    ARE TO BE HANDLED; CORRECT?

10:49AM   8    A.   YES.

10:49AM   9    Q.   AND RESPONSIBILITIES; CORRECT?

10:49AM  10    A.   YES.

10:49AM  11    Q.   AND THERE IT SAYS, LIKE MANY OF THESE RESPONSIBILITIES IN

10:49AM  12    THE CLIA LAB, THAT YOU'RE ULTIMATELY RESPONSE; CORRECT?

10:49AM  13    A.   YES.

10:49AM  14    Q.   I DON'T HAVE ANY MORE QUESTIONS ON THAT DOCUMENT.

10:49AM  15         DO YOU RECALL BEING ASKED SOME QUESTIONS ABOUT C02 OR

10:49AM  16    BICARBONATE?

10:49AM  17    A.   YES.

10:49AM  18    Q.   AND LET'S GO THROUGH THAT TESTIMONY.  THAT IS

10:49AM  19    EXHIBIT 4116, WHICH I BELIEVE IS IN EVIDENCE.

10:50AM  20    A.   I SEE IT.

10:50AM  21    Q.   DO YOU RECALL THIS?  YOU WERE ASKING -- THE GOVERNMENT

10:50AM  22    ASKED YOU ABOUT THIS PORTION OF THE DOCUMENT IN THE MIDDLE

10:50AM  23    HERE.

10:50AM  24         DO YOU RECALL THIS?

10:50AM  25    A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2649

10:50AM   1    Q.   AND YOU WERE ASKED IF THIS COULD BE A PROBLEM, RIGHT, THE

10:50AM   2    LEAKAGE OF CO2?  YOU WERE ASKED THAT?

10:50AM   3    A.   THE GOVERNMENT --

10:50AM   4    Q.   YEAH, DO YOU REMEMBER THE GOVERNMENT ASKING YOU ABOUT

10:50AM   5    THAT?

10:50AM   6    A.   YEAH.

10:50AM   7    Q.   AND ASKED YOU TO EXPLAIN THE KIND OF PROBLEMS?

10:50AM   8    A.   YEAH.

10:50AM   9    Q.   AND YOU SAID -- YOU INDICATED THAT IT COULD BE A LUNG

10:50AM   10   PROBLEM; RIGHT?

10:50AM   11       DO YOU RECALL THAT?

10:50AM   12   A.   THEY WERE ASKING ME ABOUT THE MEDICAL IMPORTANCE OF

10:50AM   13   BICARBONATE, AND I SAID IT COULD INDICATE A LUNG PROBLEM, YEAH.

10:50AM   14   Q.   AND YOU NOTED THAT THIS WAS A HIGH IMPORTANCE DOCUMENT;

10:51AM   15   RIGHT?

10:51AM   16   A.   YES.

10:51AM   17   Q.   OKAY.  AND YOU TALKED ABOUT SOME INFORMATION THAT HAD COME

10:51AM   18   UP AS A RESULT OF CURTIS SCHNEIDER'S STUDY.

10:51AM   19       DO YOU RECALL THAT?

10:51AM   20   A.   YES.

10:51AM   21   Q.   AND DO YOU RECALL -- YOU WERE ASKED WHETHER YOU VIEWED

10:51AM   22   THIS AS A PROBLEM?

10:51AM   23   A.   YES.

10:51AM   24   Q.   AND YOU SAID, I THOUGHT IT WAS A PROBLEM, AND YOU DIDN'T

10:51AM   25   RECALL IF MANAGEMENT THOUGHT IT WAS A PROBLEM; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                              2650

10:51AM  1    A.   CORRECT.

10:51AM  2    Q.   DO YOU RECALL THAT?

10:51AM  3         OKAY.  DO YOU SEE -- LET'S SEE IF MANAGEMENT THOUGHT IT

10:51AM  4    WAS A PROBLEM.  GO UP ONE EMAIL.

10:51AM  5         DO YOU SEE MR. BALWANI FORWARDS THIS TO DR. PATEL AND

10:52AM  6    MR. ANEKAL?

10:52AM  7         DO YOU SEE THAT?

10:52AM  8    A.   YES.

10:52AM  9    Q.   AND YOU HAD ACTUALLY SUGGESTED THAT YOU WERE WONDERING IF

10:52AM 10    DR. PATEL HAD ANY DATA ON THIS.

10:52AM 11         DO YOU RECALL THAT FROM THE EMAIL BELOW?

10:52AM 12    A.   I'M SORRY, I DON'T RECALL.

10:52AM 13    Q.   WELL, TAKE A LOOK.

10:52AM 14    A.   OH, I SEE.  I SEE.  OKAY.

10:52AM 15    Q.   DO YOU SEE THAT?

10:52AM 16    A.   YEP.

10:52AM 17    Q.   AND YOU WERE ASKING IF THERE WAS ANY WORK, RIGHT --

10:52AM 18    A.   UH-HUH.

10:52AM 19    Q.   -- DONE ON THAT?

10:52AM 20         AND MR. BALWANI WAS FOLLOWING UP; RIGHT?

10:52AM 21    A.   YES.

10:52AM 22    Q.   OKAY.  AND LET'S LOOK ACTUALLY DOWN AT YOUR EMAIL BELOW.

10:52AM 23    LET'S BLOW UP THE BOTTOM THIRD OF YOUR EMAIL BELOW, SOME PIECES

10:52AM 24    THE GOVERNMENT DIDN'T FOCUS ON.

10:52AM 25         YOU SEE WHERE IT SAYS THAT PHYSICIANS ARE AWARE THAT IF

ROSENDORFF CROSS BY MR. WADE (RES.)                          2651

| | | |
|---|---|---|
| 10:52AM | 1 | THEY WANT AN ACCURATE BICARB READING, THEY NEED TO GET THE |
| 10:53AM | 2 | SAMPLE TO THE LAB STAT. |
| 10:53AM | 3 | DO YOU SEE THAT? |
| 10:53AM | 4 | A.   YES. |
| 10:53AM | 5 | Q.   AND THAT'S BECAUSE THERE CAN BE LEAKAGE OVER TIME AND IF A |
| 10:53AM | 6 | DOCTOR WANTS -- HAS A CONCERN THAT IS FOCUSSED ON BICARBONATE, |
| 10:53AM | 7 | THEY MIGHT GO TO A STAT LAB; RIGHT? |
| 10:53AM | 8 | A.   THAT'S WHAT I SAID AT THE TIME, YES. |
| 10:53AM | 9 | Q.   THAT'S WHAT YOU SAID. |
| 10:53AM | 10 | AND THEN IN THE NEXT SENTENCE YOU SAID, "SO FAR WE HAVE |
| 10:53AM | 11 | NOT HAD ANY CALLS REGARDING BICARB VALUES." |
| 10:53AM | 12 | DO YOU SEE THAT? |
| 10:53AM | 13 | A.   YES. |
| 10:53AM | 14 | Q.   AND YOU SAY YOU THINK DOCTORS KNOW THAT IT'S HIGHLY |
| 10:53AM | 15 | CONTEXT-DEPENDENT ASSAY. |
| 10:53AM | 16 | DO YOU SEE THAT? |
| 10:53AM | 17 | A.   YES. |
| 10:53AM | 18 | Q.   OKAY.  LET'S GO TO EXHIBIT 12587. |
| 10:54AM | 19 | A.   I HAVE IT. |
| 10:54AM | 20 | Q.   AND DO YOU RECOGNIZE THAT THIS IS A DIFFERENT EMAIL CHAIN |
| 10:54AM | 21 | ON THE SAME ISSUE? |
| 10:54AM | 22 | A.   YES. |
| 10:54AM | 23 | Q.   AND THE GOVERNMENT DIDN'T SHOW YOU THIS CHAIN, DID THEY? |
| 10:54AM | 24 | A.   NO. |
| 10:54AM | 25 | Q.   OKAY.  LET'S GO TO THE BACK. |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2652

10:54AM   1      A.   I SEE IT.

10:54AM   2      Q.   DO YOU SEE IT?

10:54AM   3      A.   YES.

10:54AM   4      Q.   OH, I'M SORRY.  THIS IS NOT IN EVIDENCE.

10:54AM   5           YOUR HONOR, I MOVE THE ADMISSION OF 12587.

10:54AM   6              MR. BOSTIC:  NO OBJECTION.

10:54AM   7              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

10:54AM   8      (DEFENDANT'S EXHIBIT 12587 WAS RECEIVED IN EVIDENCE.)

10:54AM   9              MR. WADE:  WE'LL GO TO THE LAST PAGE.

10:54AM  10      Q.   SO WE CAN ORIENT YOU AND THE JURY, THIS IS THE EMAIL THAT

10:54AM  11      WE WERE JUST TALKING ABOUT, EXHIBIT 4116; RIGHT?

10:55AM  12      A.   YES.

10:55AM  13      Q.   IT'S THE SAME EMAIL; RIGHT?

10:55AM  14      A.   YES.

10:55AM  15      Q.   OKAY.  AND THEN IF YOU GO -- AND THIS IS MARCH 31ST, 2014

10:55AM  16      AT 12:38 P.M.

10:55AM  17           DO YOU SEE THAT?

10:55AM  18      A.   YES.

10:55AM  19      Q.   OKAY.  AND IF YOU GO UP, YOU SEE MR. BALWANI RESPONDS IN

10:55AM  20      ABOUT 11 MINUTES.

10:55AM  21           DO YOU SEE THAT?

10:55AM  22      A.   YES.

10:55AM  23      Q.   AND HE TALKS ABOUT ALL OF THE DATA AND SUGGESTS DIGGING

10:55AM  24      INTO THE ISSUE; IS THAT FAIR?

10:55AM  25      A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2653

```
10:55AM   1    Q.   AND YOU DO, TOO.  YOU RESPOND ALMOST IMMEDIATELY.  AND YOU

10:55AM   2    NOTE THAT YOU WERE GOING TO HAVE LANGLY REVIEW YOUR

10:55AM   3    LEVEY-JENNINGS DATA.

10:55AM   4         DO YOU SEE THAT?

10:55AM   5    A.   YES.

10:55AM   6    Q.   FOR BOTH ADVIA'S.  DO YOU SEE THAT?

10:55AM   7    A.   YES.

10:55AM   8    Q.   AND THAT'S TO LOOK IF THERE'S A TREND IN THE QC; RIGHT?

10:56AM   9    A.   YES.

10:56AM  10    Q.   LET'S GO UP THE CHAIN.

10:56AM  11         YOU THEN REPORT THAT YOU'VE DUG IN SOME MORE; RIGHT?

10:56AM  12    A.   YES.

10:56AM  13    Q.   AND YOU'VE ACTUALLY GONE BACK AND COMPARED SOME OF THAT

10:56AM  14    DATA TO THE DATA IN THE VALIDATION REPORT; RIGHT?

10:56AM  15    A.   YES.

10:56AM  16    Q.   AND YOU SAY IN THAT SECOND PARAGRAPH, "BASED ON THIS

10:56AM  17    INFORMATION, I SUGGEST A NEW BICARBONATE REFERENCE RANGE FOR

10:56AM  18    OUR METHOD."

10:56AM  19         DO YOU SEE THAT?

10:56AM  20    A.   YES.

10:56AM  21    Q.   AND THEN THIS IS THE SAME DAY; RIGHT?

10:56AM  22    A.   YES.

10:56AM  23    Q.   EIGHT HOURS LATER?

10:56AM  24    A.   YES.

10:56AM  25    Q.   OKAY.  AND THEN YOU ACTUALLY THEN CLARIFY IN THE EMAIL
```

10:56AM   1      RIGHT ABOVE.

10:56AM   2           OKAY.  IT SAYS, "PARDON ME I MEANT 'BIAS OBSERVED BETWEEN

10:56AM   3      PREDICATE AND THERANOS METHODS.'"

10:56AM   4           DO YOU SEE THAT?

10:56AM   5      A.   YES.

10:56AM   6      Q.   AND SO THIS IS ONE OF THE AREAS WHERE THERE'S A BIAS THAT

10:56AM   7      YOU CAN CORRECT FOR; RIGHT?

10:57AM   8      A.   IT DEPENDS ON THE REPRODUCIBILITY OF THE ASSAY.

10:57AM   9      Q.   OKAY.

10:57AM   10     A.   IF THE ASSAY IS NOT REPRODUCIBLE, THEN BIAS CORRECTION IS

10:57AM   11     NOT APPROPRIATE.

10:57AM   12     Q.   BUT YOU WERE DIGGING IN ON THIS AND YOU WERE MAKING A

10:57AM   13     SUGGESTION ON HOW TO DEAL WITH THIS TO THE TEAM; RIGHT?

10:57AM   14     A.   YES.

10:57AM   15     Q.   OKAY.  AND LET'S GO UP THE CHAIN.  DR. YOUNG REPORTS SOME

10:57AM   16     INFORMATION, TOO, BASED ON HIS WORK; RIGHT?

10:57AM   17     A.   YES.

10:57AM   18     Q.   AND THEN IT SAYS, "THE DATA FROM OUR IN-HOUSE AAP DRY RUNS

10:57AM   19     (NOW 7 DAYS OF TESTING) LOOKS OK OVERALL."

10:57AM   20          DO YOU SEE THAT?

10:57AM   21     A.   YES.

10:57AM   22     Q.   AND THIS IS MARCH 31ST, 2014?

10:57AM   23     A.   YES.

10:57AM   24     Q.   AND WITH ABOUT A 90 PERCENT RECOVERY.

10:57AM   25          DO YOU SEE THAT?

ROSENDORFF CROSS BY MR. WADE (RES.)                    2655

10:57AM   1    A.   YES.

10:57AM   2    Q.   AND THEN IT SAYS, "WITH A FEW MORE DAYS OF TESTING, I

10:58AM   3    THINK WE WILL HAVE A GOOD DATA SET FROM WHICH TO MAKE A

10:58AM   4    DECISION."

10:58AM   5         DO YOU SEE THAT?

10:58AM   6    A.   THE ISSUE WITH C02 IS THE DELAY BETWEEN THE COLLECTION AND

10:58AM   7    WHEN IT ARRIVES IN THE LAB.  SO WHEN YOU DO A STUDY, THERE IS

10:58AM   8    NO DELAY.

10:58AM   9    Q.   AND I'M JUST ASKING IF YOU SEE WHAT HE WROTE THERE IN

10:58AM   10   TERMS OF WHAT HE WAS REPORTING OUT.

10:58AM   11        DO YOU SEE THAT?

10:58AM   12   A.   YES.

10:58AM   13   Q.   AND DO YOU SEE THAT HE SAYS, MOVING FORWARD, "WE WILL

10:58AM   14   APPLY A BIAS CORRECTION FOR C02 FINGERSTICK SAMPLES SUCH THAT

10:58AM   15   WE REPORT THE RESULTS IN THE VENOUS EQUIVALENT CONCENTRATION."

10:58AM   16        DO YOU SEE THAT?

10:58AM   17   A.   I SEE IT.

10:58AM   18   Q.   OKAY.  LET'S GO UP THE CHAIN.

10:58AM   19   A.   I DON'T KNOW WHAT IT MEANS, BUT I SEE IT, YEAH.

10:58AM   20   Q.   WELL, LET'S SEE HOW YOU RESPOND.

10:58AM   21   A.   OKAY.

10:58AM   22   Q.   AND YOU SAY "OK THANKS -- SO I GUESS THE 90 PERCENT

10:58AM   23   RECOVERY IS AFTER BIAS CORRECTION -- IF THIS IS THE CASE THEN

10:58AM   24   20 NORMALS MOST LIKELY WOULD BE IN THE PREDICATE RANGE."

10:59AM   25        DO YOU SEE THAT?

| | | |
|---|---|---|
| 10:59AM | 1 | A.   YES. |
| 10:59AM | 2 | Q.   AND IF YOU GO UP ONE MORE TIME, YOU RESPOND AGAIN. |
| 10:59AM | 3 | YOU ASK DANIEL TO LET YOU KNOW WHEN THIS CORRECTION IS |
| 10:59AM | 4 | IMPLEMENTED; RIGHT? |
| 10:59AM | 5 | A.   YES. |
| 10:59AM | 6 | Q.   AND SO THIS ISSUE WAS ADDRESSED IN ABOUT 24 HOURS? |
| 10:59AM | 7 | A.   I DON'T KNOW. |
| 10:59AM | 8 | Q.   WELL, LOOK AT THE TIME OF THE EMAIL ON THE LAST PAGE.  IT |
| 10:59AM | 9 | WAS 12:38. |
| 10:59AM | 10 | DO YOU SEE THAT? |
| 10:59AM | 11 | A.   YES. |
| 10:59AM | 12 | Q.   OKAY.  AND ON MARCH 31ST, DO YOU SEE THAT? |
| 10:59AM | 13 | AND THEN MAYBE IT WAS 32 HOURS.  YOU CAN LOOK AT THE EMAIL |
| 10:59AM | 14 | ON THE FIRST PAGE. |
| 10:59AM | 15 | A.   OKAY. |
| 10:59AM | 16 | Q.   OKAY.  SO JUST SO WE'RE CLEAR, NO DOCTORS RAISE ISSUES ON |
| 10:59AM | 17 | THIS; RIGHT? |
| 10:59AM | 18 | A.   RIGHT. |
| 10:59AM | 19 | Q.   AND THE ASSAY IS VERY CONTEXT DEPENDENT ACCORDING TO YOU; |
| 11:00AM | 20 | RIGHT? |
| 11:00AM | 21 | A.   RIGHT. |
| 11:00AM | 22 | Q.   AND DOCTORS KNOW THAT IT'S IMPORTANT THAT A STAT LAB WILL |
| 11:00AM | 23 | PROBABLY BE USED. |
| 11:00AM | 24 | THAT'S WHAT YOU SAID; RIGHT? |
| 11:00AM | 25 | A.   RIGHT. |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2657

```
11:00AM   1    Q.   AND YOU AND DR. YOUNG WORKED TOGETHER TO RESOLVE THIS IN

11:00AM   2    ABOUT A DAY; RIGHT?

11:00AM   3    A.   I CAN'T SAY THAT IT WAS RESOLVED.  I CAN'T ANSWER YOU YES

11:00AM   4    OR NO.

11:00AM   5    Q.   DO YOU SEE THAT HE'S ASKING IN THE EMAIL WHEN IS HE GOING

11:00AM   6    TO PUT THAT FIX INTO THE SYSTEM?

11:00AM   7    A.   YES.

11:00AM   8    Q.   AND THAT MEANS SO THAT YOU CAN REPORT RESULTS; RIGHT?

11:00AM   9    A.   YES.

11:00AM   10   Q.   AND SO YOU THOUGHT AT THAT POINT, WITHIN A DAY, IT WAS

11:00AM   11   SAFE AND APPROPRIATE TO REPORT RESULTS --

11:00AM   12   A.   BASED ON THE DATA -- I'M SORRY.

11:00AM   13   Q.   LET ME FINISH THE QUESTION AND THEN WE'LL LET YOU ANSWER

11:00AM   14   MY QUESTION.  OKAY?

11:00AM   15   A.   UH-HUH.

11:00AM   16   Q.   JUST SO THE COURT REPORTER DOESN'T GO CRAZY HERE.

11:00AM   17        OKAY.  SO ON THAT DAY, YOU WERE COMFORTABLE WITH THE

11:01AM   18   APPROACH AND YOU ASKED WHEN IT WAS GOING TO BE IMPLEMENTED SO

11:01AM   19   RESULTS COULD BE REPORTED; CORRECT?

11:01AM   20   A.   I WAS REVIEWING DANIEL'S STUDY, AND BASED ON HIS STUDY, I

11:01AM   21   BELIEVED THAT IT WAS NOW FIXED.

11:01AM   22   Q.   AND YOU WERE ASKING WHEN IT WAS GOING TO BE IMPLEMENTED

11:01AM   23   BECAUSE YOU BELIEVED IT WAS SAFE TO REPORT RESULTS AS A RESULT

11:01AM   24   OF THAT APPROACH; CORRECT?

11:01AM   25   A.   YES.
```

ROSENDORFF CROSS BY MR. WADE (RES.)                                      2658

11:01AM   1    Q.   OKAY.  AND THAT WAS DONE IN PART REFERENCING THE IN-HOUSE

11:01AM   2    AAP DRY RUNS; CORRECT?

11:01AM   3    A.   YES.

11:01AM   4    Q.   I'D LIKE TO SHOW YOU EXHIBIT 1772.  IT'S ON YOUR SCREEN,

11:02AM   5    AND IT'S IN EVIDENCE.

11:02AM   6         IF WE CAN BLOW UP THE TOP TWO EMAILS.

11:02AM   7         THIS RELATES TO SOME BACKLOGS THAT EXISTED ON EDISONS.

11:02AM   8         DO YOU RECALL THAT?

11:02AM   9    A.   YES.

11:02AM  10    Q.   AND YOU WERE ASKED SOME QUESTIONS ABOUT THIS AND ABOUT

11:02AM  11    SUNNY'S RESPONSE.

11:02AM  12         DO YOU RECALL THAT?

11:02AM  13    A.   YES.

11:02AM  14    Q.   OKAY.  DID YOU BELIEVE THE RESPONSE WAS A LITTLE CURT?

11:02AM  15    A.   I DON'T REMEMBER HOW SUNNY RESPONDED.

11:03AM  16    Q.   OKAY.  BUT YOU -- THE GOVERNMENT ASKED YOU ABOUT THIS

11:03AM  17    DOCUMENT.

11:03AM  18         DO YOU RECALL THEM ASKING ABOUT THIS?

11:03AM  19    A.   YES.

11:03AM  20    Q.   OKAY.  LET'S -- AND THIS IS AN EMAIL -- YOU SEE YOUR EMAIL

11:03AM  21    IS JUNE 11TH, 2014, 5:25 P.M.?

11:03AM  22    A.   YES.

11:03AM  23    Q.   DO YOU SEE THAT?

11:03AM  24         LET'S LOOK AT 13888.

11:03AM  25         THAT'S NOT IN EVIDENCE, SO I'LL HAVE TO IMPOSE UPON YOU TO

ROSENDORFF CROSS BY MR. WADE (RES.)                          2659

11:03AM  1    FIND THAT ONE IN THE BINDER.

11:04AM  2                MR. DOWNEY:  YOUR HONOR, MAY I JUST CONSULT WITH

11:04AM  3    MR. WADE FOR JUST A MOMENT?

11:04AM  4        (DISCUSSION OFF THE RECORD.)

11:04AM  5                MR. DOWNEY:  THANK YOU, YOUR HONOR.

11:04AM  6                THE WITNESS:  OKAY, I HAVE IT.

11:04AM  7    BY MR. WADE:

11:04AM  8    Q.   DO YOU RECOGNIZE THIS TO BE A DIFFERENT EMAIL ON THAT SAME

11:04AM  9    ISSUE?

11:04AM  10   A.   YES.

11:04AM  11   Q.   OKAY.

11:04AM  12       I MOVE THE ADMISSION OF 13888.

11:04AM  13               MR. BOSTIC:  NO OBJECTION.

11:04AM  14               THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

11:04AM  15       (DEFENDANT'S EXHIBIT 13888 WAS RECEIVED IN EVIDENCE.)

11:04AM  16   BY MR. WADE:

11:04AM  17   Q.   AND DO YOU SEE YOUR EMAIL RAISING THIS DOWN AT THE BOTTOM?

11:04AM  18   A.   YES.

11:04AM  19   Q.   OKAY.  BUT THERE'S A DIFFERENT RESPONSE UP AT THE TOP;

11:04AM  20   RIGHT?  DIFFERENT FROM EXHIBIT 1772 THAT THE GOVERNMENT ASKED

11:04AM  21   YOU ABOUT; RIGHT?

11:04AM  22   A.   I'M SORRY.  ARE YOU --

11:05AM  23   Q.   WELL, LET'S BLOW UP THE TOP HERE.

11:05AM  24       DO YOU RECALL THAT IN THE PRIOR VERSION OF THIS DOCUMENT

11:05AM  25   THERE WAS AN EMAIL WHERE THEY SAID THAT WE NEED TO RESOLVE

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2660

11:05AM  1    THIS -- WE NEED THIS MESS RESOLVED ASAP.

11:05AM  2        DO YOU RECALL THAT?

11:05AM  3    A.  YES, YES.

11:05AM  4    Q.  OKAY.  THIS ACTUALLY IS A DIFFERENT RESPONSE TO YOUR

11:05AM  5    EMAIL, ISN'T IT, A SEPARATE RESPONSE?

11:05AM  6    A.  YES.

11:05AM  7    Q.  AND IT'S JUST TO YOU PERSONALLY; CORRECT?

11:05AM  8    A.  YES.

11:05AM  9    Q.  AND THE GOVERNMENT DIDN'T SHOW YOU THIS ONE, DID THEY?

11:05AM  10   A.  NO.

11:05AM  11   Q.  AND I JUST WANT TO DRAW YOUR ATTENTION, DO YOU SEE IN THE

11:05AM  12   END THERE HE SAYS, MR. BALWANI SAYS, "IN THE MEANTIME WE WILL

11:05AM  13   PUSH TO GET MORE DEVICES DONE."

11:05AM  14       DO YOU SEE THAT?

11:05AM  15   A.  YES.

11:05AM  16   Q.  "AND THE DRIVING FACTOR WILL BE NO BACKLOG OR DELAY IN

11:05AM  17   PATIENT SAMPLES."

11:05AM  18       DO YOU SEE THAT?

11:05AM  19   A.  YES.

11:05AM  20   Q.  AND HE WAS GOING TO DO WHAT YOU ASKED HIM TO DO, RIGHT, TO

11:05AM  21   STOP ALIQUOTING THE SAMPLES; RIGHT?

11:05AM  22   A.  YES.

11:05AM  23   Q.  AND YOU THANKED HIM FOR THAT?

11:05AM  24   A.  YES.

11:05AM  25           MR. WADE:  YOUR HONOR, NOW MIGHT BE A GOOD TIME FOR

| | | |
|---|---|---|
| 11:06AM | 1 | A BREAK. |
| 11:06AM | 2 | THE COURT:  LET'S DO THAT.  LET'S TAKE OUR BREAK, |
| 11:06AM | 3 | LADIES AND GENTLEMEN.  LET'S TAKE ABOUT 45 MINUTES.  I THINK |
| 11:06AM | 4 | 45 MINUTES WILL BE GOOD NOW. |
| 11:06AM | 5 | WE'LL TAKE OUR BREAK.  I THINK I MENTIONED WE WOULD GO |
| 11:06AM | 6 | UNTIL 3:00 P.M. THIS AFTERNOON.  THAT'S MY RECOLLECTION. |
| 11:06AM | 7 | DOES THAT CAUSE A PROBLEM FOR ANYONE?  IF SO, LET ME SEE A |
| 11:06AM | 8 | HAND. |
| 11:06AM | 9 | THANKS SO MUCH.  ENJOY YOUR BREAK.  WE'LL SEE YOU IN ABOUT |
| 11:06AM | 10 | 45 MINUTES. |
| 11:07AM | 11 | (JURY OUT AT 11:07 A.M.) |
| 11:07AM | 12 | THE COURT:  THANK YOU.  DOCTOR, YOU CAN STAND DOWN |
| 11:07AM | 13 | AND TAKE A BREAK AS WELL. |
| 11:07AM | 14 | PLEASE BE SEATED.  THANK YOU. |
| 11:07AM | 15 | OUR JURY HAS LEFT THE COURTROOM.  ALL COUNSEL ARE PRESENT. |
| 11:07AM | 16 | THE WITNESS HAS LEFT THE COURTROOM. |
| 11:07AM | 17 | ANYTHING FURTHER BEFORE WE TAKE OUR BREAK? |
| 11:07AM | 18 | FROM THE PROSECUTION? |
| 11:07AM | 19 | MR. BOSTIC:  NO, YOUR HONOR. |
| 11:07AM | 20 | MR. DOWNEY:  NO, YOUR HONOR. |
| 11:07AM | 21 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 11:07AM | 22 | IT MAY BE THAT I WON'T BE ABLE TO ENGAGE THE JURY AS I |
| 11:07AM | 23 | SAID REGARDING THEIR QUESTIONNAIRES.  AS YOU RECALL, MY PLAN |
| 11:07AM | 24 | WAS TO LET THEM KNOW THAT PRIOR TO THE BREAK AND GIVE THEM |
| 11:07AM | 25 | THEIR QUESTIONNAIRES SO THEY CAN LOOK AT THEM OVER THE COURSE |

ROSENDORFF CROSS BY MR. WADE (RES.)                    2662

11:07AM   1    OF THEIR BREAK.

11:07AM   2         GIVEN OUR TIMING AND OUR DISCUSSION THIS MORNING, I DON'T

11:07AM   3    THINK THAT'S GOING TO BE APPROPRIATE TODAY.  I DON'T THINK

11:07AM   4    WE'LL HAVE TIME TO DO THAT TODAY.  I'M GOING TO HAVE TO ENGAGE

11:08AM   5    THAT NEXT WEEK IN A DIFFERENT SCHEDULE, I THINK.  I DON'T THINK

11:08AM   6    WE CAN GET IT DONE TOMORROW AS WELL.

11:08AM   7         BUT WE'LL SEE WHAT TOMORROW BRINGS.  OKAY.  THANK YOU.

11:08AM   8              MR. DOWNEY:  THANK YOU.

11:08AM   9              THE CLERK:  COURT IS IN RECESS.

11:08AM  10         (LUNCH RECESS TAKEN AT 11:08 A.M.)

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2663

11:08AM  1                        **AFTERNOON SESSION**

11:56AM  2              (JURY IN AT 11:56 A.M.)

11:56AM  3                  THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

11:56AM  4      ALL OF THE PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

11:56AM  5              OUR JURY IS PRESENT.  DR. ROSENDORFF IS ON THE STAND

11:56AM  6      AGAIN.

11:56AM  7              YOU HAVE QUESTIONS?

11:56AM  8                  MR. WADE:  I DO, YOUR HONOR.  THANK YOU.

11:57AM  9      Q.   DR. ROSENDORFF, I HAVE A COUPLE OF QUESTIONS ABOUT THE

11:57AM  10     T PROTOCOLS.

11:57AM  11     A.   OKAY.

11:57AM  12     Q.   SO WE'RE ALL ON THE SAME PAGE, THOSE WERE THE MODIFIED

11:57AM  13     ADVIA ASSAYS?

11:57AM  14     A.   CORRECT.

11:57AM  15     Q.   AND THOSE WERE LAB DEVELOPED TESTS?

11:57AM  16     A.   CORRECT.

11:57AM  17     Q.   AND THE SIEMENS ADVIA HAD OPEN CHANNELS FOR LAB DEVELOPED

11:57AM  18     TESTS?

11:57AM  19     A.   CORRECT.

11:57AM  20     Q.   AND AT THE TIME THESE WERE BEING PUT ON TO THE ADVIA,

11:57AM  21     THERE WERE NO COMMERCIALLY AVAILABLE FINGERSTICK TESTS THAT

11:57AM  22     COULD BE RUN ON THE ADVIA; CORRECT?

11:57AM  23     A.   CORRECT.

11:57AM  24     Q.   AND THERE WERE SOME QUESTIONS ASKED ON DIRECT EXAMINATION

11:57AM  25     ABOUT THESE PROTOCOLS.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2664

11:57AM   1          DO YOU RECALL SOME OF THOSE QUESTIONS GENERALLY?

11:57AM   2      A.   YES.

11:57AM   3      Q.   OKAY.  BUT WITH THE EXCEPTION OF POTASSIUM, THOSE ADVIA

11:58AM   4      PROTOCOLS WORKED REMARKABLY WELL, DIDN'T THEY?

11:58AM   5      A.   ARE YOU REFERRING TO THE PREDICATE OR THE THERANOS ASSAYS?

11:58AM   6      Q.   THE T PROTOCOLS RUNNING ON THE ADVIA'S WORKED REMARKABLY

11:58AM   7      WELL, WITH THE EXCEPTION OF POTASSIUMS; CORRECT?

11:58AM   8      A.   NO.

11:58AM   9      Q.   DO YOU RECALL TELLING THE GOVERNMENT, THE S.E.C., ONE OF

11:58AM  10      THE PROSECUTORS AND SOME OF THE AGENTS IN THIS CASE IN JUNE OF

11:58AM  11      2017 THAT WITH THE EXCEPTION OF POTASSIUM, THE T PROTOCOLS WITH

11:58AM  12      THE FINGERSTICK DRAW WORKED REMARKABLY WELL?

11:58AM  13      A.   NO, I DON'T RECALL.

11:58AM  14      Q.   IF YOU COULD GO TO THE YELLOW BINDER, EXHIBIT 11004.

11:59AM  15          DO YOU HAVE THAT MEMORANDUM OF INTERVIEW IN FRONT OF YOU?

11:59AM  16      A.   YES, YES.

11:59AM  17      Q.   IF YOU COULD GO TO THE FIFTH PAGE AND GO TO THE LAST

11:59AM  18      PARAGRAPH ON THE BOTTOM OF THAT PAGE AND READ IT TO YOURSELF

11:59AM  19      AND JUST TELL ME WHEN YOU'RE DONE READING IT.

11:59AM  20      A.   YES, I'M DONE READING IT.

11:59AM  21      Q.   DOES READING THAT PARAGRAPH REFRESH YOUR RECOLLECTION THAT

11:59AM  22      YOU TOLD THE S.E.C. AND THESE GOVERNMENT LAWYERS THAT THE

11:59AM  23      T PROTOCOL AND FINGERSTICK DRAW WORK REMARKABLY WELL FOR MOST

11:59AM  24      ANALYTES?

11:59AM  25      A.   I DON'T HAVE AN INDEPENDENT RECOLLECTION.  I'M READING IT

ROSENDORFF CROSS BY MR. WADE (RES.)                                2665

12:00PM   1    NOW.

12:00PM   2    Q.   DOES IT REFRESH YOUR RECOLLECTION, SIR, THAT YOU TOLD THEM

12:00PM   3    THAT?

12:00PM   4    A.   NO.

12:00PM   5    Q.   I'D LIKE TO ASK YOU SOME QUESTIONS ABOUT YOUR DEPARTURE

12:00PM   6    FROM THE COMPANY.

12:00PM   7         I BELIEVE THAT YOUR TESTIMONY WAS THAT YOU STARTED LOOKING

12:00PM   8    FOR A JOB IN THE MIDDLE OF 2013; CORRECT?

12:00PM   9    A.   I WAS LOOKING AROUND, YES.

12:00PM  10    Q.   YEAH.  YOU WERE LOOKING AROUND FOR OTHER JOBS IN THE

12:00PM  11    MIDDLE OF 2013; RIGHT?

12:00PM  12    A.   YES.

12:00PM  13    Q.   AND YOU WENT ON THE CLIA LAB CERTIFICATE AS A LAB DIRECTOR

12:00PM  14    STARTING IN JUNE OF 2013; RIGHT?

12:01PM  15    A.   YES.

12:01PM  16    Q.   RIGHT.  LET'S JUST -- SO WE HAVE IT IN EVIDENCE, LET'S

12:01PM  17    LOOK AT 13887, WHICH SHOULD BE IN ONE OF YOUR BLACK EXHIBIT

12:01PM  18    BINDERS.

12:01PM  19    A.   I HAVE IT.

12:01PM  20    Q.   AND THIS IS A COPY OF YOUR CLINICAL LABORATORY LICENSE?

12:01PM  21    A.   YES.

12:01PM  22    Q.   FOR THERANOS?

12:01PM  23    A.   YES.

12:01PM  24         MR. WADE:  I MOVE THE ADMISSION OF 13887.

12:01PM  25         MR. BOSTIC:  NO OBJECTION.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2666

12:01PM   1          THE COURT:  IT'S ADMITTED AND IT MAY BE PUBLISHED.

12:01PM   2          (DEFENDANT'S EXHIBIT 13887 WAS RECEIVED IN EVIDENCE.)

12:01PM   3          MR. WADE:  IF WE CAN PULL UP THE BOTTOM HALF.

12:01PM   4   Q.   THIS NOTES THAT IN JUNE OF 2013 YOU WENT ON TO THE CLIA

12:02PM   5   CERTIFICATE ALONG WITH SPENCER HIRAKI; CORRECT?

12:02PM   6   A.   CORRECT.

12:02PM   7   Q.   AND A LITTLE BIT LATER THAT YEAR, YOU BECAME THE ONLY

12:02PM   8   PERSON ON THE CLIA CERTIFICATE; RIGHT?

12:02PM   9   A.   CORRECT.

12:02PM   10   Q.   AND I THINK WE DISCUSSED THAT THE SOFT LAUNCH AT WALGREENS

12:02PM   11   FOR FRIENDS AND FAMILY WAS IN SEPTEMBER OF 2013?

12:02PM   12   A.   CORRECT.

12:02PM   13   Q.   AND SO YOU STARTED LOOKING FOR A JOB BEFORE ANY PATIENT

12:02PM   14   TESTS WERE PERFORMED AT THERANOS?

12:02PM   15   A.   YES.

12:02PM   16   Q.   YOU ESSENTIALLY HAD A FOOT OUT THE DOOR THE WHOLE TIME; IS

12:02PM   17   THAT RIGHT?

12:02PM   18   A.   I CAN'T ANSWER YES OR NO.  I WAS VERY COMMITTED TO MY JOB

12:02PM   19   AS LAB DIRECTOR AT THERANOS.

12:03PM   20   Q.   BUT YOU WERE DEDICATED TO TRYING TO FIND A DIFFERENT JOB;

12:03PM   21   CORRECT?

12:03PM   22   A.   ON OCCASION I WOULD LOOK AT WHAT JOBS WERE AVAILABLE.

12:03PM   23   Q.   AND THAT WAS BEFORE ANY OF THESE ISSUES THAT YOU TALKED

12:03PM   24   ABOUT ON DIRECT EXAMINATION; CORRECT?

12:03PM   25   A.   CORRECT.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2667

12:03PM   1    Q.   AND I BELIEVE YOU ALSO TESTIFIED THAT STARTING IN MAY OF

12:03PM   2    2013, OR THEREABOUTS, YOU WERE CONSIDERING A QUI TAM LAWSUIT;

12:03PM   3    IS THAT CORRECT?

12:03PM   4    A.   CORRECT.

12:03PM   5    Q.   AND JUST SO -- THAT'S KIND OF AN INTERESTING WORD.  JUST

12:03PM   6    FOR THE BENEFIT OF THE JURY, A QUI TAM LAWSUIT IS ONE WHERE YOU

12:03PM   7    WOULD TRY TO RECOVER MONEY FROM THERANOS; RIGHT?

12:03PM   8    A.   IT'S A LAWSUIT WHERE I WOULD BE ALERTING THE GOVERNMENT TO

12:03PM   9    A FALSE CLAIM ON BEHALF OF -- I WOULD BE A RELATOR AND WOULD BE

12:03PM   10   ALERTING THE GOVERNMENT TO WRONGDOING AT THERANOS.

12:03PM   11   Q.   RIGHT.  AND IN EXCHANGE FOR YOUR FILING A QUI TAM LAWSUIT,

12:04PM   12   IF THERE'S A RECOVERY, YOU WOULD GET BETWEEN 15 AND 25 PERCENT

12:04PM   13   OF THE MONEY FROM THAT RECOVERY; RIGHT?

12:04PM   14   A.   YES.  BUT I KNEW THAT THERANOS DIDN'T HAVE A LOT OF

12:04PM   15   MEDICARE WORK.

12:04PM   16   Q.   OKAY.

12:04PM   17   A.   IT WAS A WAY OF ALERTING THE GOVERNMENT TO WHAT WAS GOING

12:04PM   18   ON.  THAT'S HOW I VIEWED IT.

12:04PM   19   Q.   SIR, YOU'RE AWARE THAT A QUI TAM LAWSUIT IS A LAWSUIT

12:04PM   20   WHERE YOU WOULD GET 15 TO 25 PERCENT?

12:04PM   21   A.   I DON'T KNOW THE EXACT PERCENTAGES.  I DIDN'T LOOK INTO

12:04PM   22   THAT.

12:04PM   23   Q.   BUT YOU KNOW THAT YOU GET A PERCENTAGE OF RECOVERY OF

12:04PM   24   MONEY THAT WOULD COME BACK?

12:04PM   25   A.   RIGHT, YES, THERE'S A FINANCIAL AWARD.

ROSENDORFF CROSS BY MR. WADE (RES.)

12:04PM   1    Q.   AND YOU WERE TALKING TO LAWYERS ABOUT THAT LAWSUIT; RIGHT?

12:04PM   2    A.   CORRECT.

12:04PM   3    Q.   AND THOSE LAWYERS ARE NOT PAID ON AN HOURLY BASIS;

12:04PM   4    CORRECT?

12:04PM   5    A.   I PAID THE LAWYERS, PAID THOSE LAWYERS OUT OF MY OWN

12:04PM   6    POCKET.

12:04PM   7    Q.   OKAY.  BUT THEY GENERALLY GET A PERCENTAGE OF THE RECOVERY

12:04PM   8    AS WELL; RIGHT?

12:04PM   9    A.   I DON'T KNOW HOW THAT ARRANGEMENT WORKS.

12:04PM   10   Q.   OKAY.  AND THEY NEVER FILED A QUI TAM LAWSUIT; CORRECT?

12:05PM   11   A.   NO.

12:05PM   12   Q.   AND YOU SAY THAT YOU WANTED TO ALERT THE GOVERNMENT.

12:05PM   13        YOU ACTUALLY HAD A CONVERSATION IN OCTOBER OF 2014, OR IN

12:05PM   14   THE FALL OF 2014, WITH GARY YAMAMOTO OF CMS; CORRECT?

12:05PM   15   A.   YES, THAT'S CORRECT.

12:05PM   16   Q.   AND MR. YAMAMOTO IS ONE OF THE SENIOR PEOPLE FOR THE STATE

12:05PM   17   OF CALIFORNIA AT CMS?

12:05PM   18   A.   HE'S THE INSPECTOR, YES, AND I DON'T KNOW HIS SENIORITY

12:05PM   19   LEVEL.

12:05PM   20   Q.   OKAY.  AND YOU HAD A CONVERSATION WITH HIM WHERE YOU

12:05PM   21   SOUGHT GUIDANCE FOR HOW TO REPORT RESULTS FOR THERANOS'S LDT'S;

12:05PM   22   RIGHT?

12:05PM   23   A.   I BELIEVE THE DISCUSSION WAS ABOUT PROFICIENCY TESTING.

12:06PM   24   I -- YEAH.

12:06PM   25   Q.   AND YOU -- WAS THAT IN SEPTEMBER OF 2014?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2669

12:06PM   1    A.   I DON'T RECALL.

12:06PM   2    Q.   OKAY.  AND YOU CALLED TO CONSULT WITH HIM ON THERANOS'S

12:06PM   3    WORK ON THAT; RIGHT?

12:06PM   4    A.   YES.

12:06PM   5    Q.   AND YOU SOUGHT GUIDANCE FROM HIM ON THAT?

12:06PM   6    A.   YES.

12:06PM   7    Q.   AND CMS TOLD YOU, JUST WAIT UNTIL THE NEXT INSPECTION;

12:06PM   8    RIGHT?

12:06PM   9    A.   YES.

12:06PM   10   Q.   AND IN THAT MEETING WHERE YOU HAD GARY YAMAMOTO ON THE

12:06PM   11   PHONE, DID YOU RAISE ANY OF THESE OTHER ISSUES WITH HIM?

12:06PM   12   A.   NO.

12:06PM   13   Q.   NO.  OKAY.  THAT WOULD HAVE BEEN A PRETTY EASY WAY TO

12:06PM   14   ALERT THE GOVERNMENT; RIGHT?  YOU HAD HIM ON THE PHONE, RIGHT,

12:06PM   15   SIR?

12:06PM   16   A.   YES.

12:06PM   17   Q.   WE TALKED ABOUT YOUR SAYING THE REASON THAT YOU LEFT

12:06PM   18   RELATED TO AAP; CORRECT?

12:07PM   19   A.   YES.

12:07PM   20   Q.   DO YOU REMEMBER THAT?

12:07PM   21        AND LAST WEEK WE WALKED THROUGH THAT CHRONOLOGY A BIT IN

12:07PM   22   THE FALL OF 2014.

12:07PM   23        DO YOU RECALL THAT?

12:07PM   24   A.   YES.

12:07PM   25   Q.   AND THERE WAS A MEETING IN 2014; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                      2670

12:07PM   1     A.   YES.

12:07PM   2     Q.   AND I BELIEVE YOU TESTIFIED AT SOME POINT YOU LEFT

12:07PM   3     UNSATISFIED.  YOU THOUGHT IT WAS LIP SERVICE?

12:07PM   4     A.   CORRECT.

12:07PM   5     Q.   OKAY.  THAT WAS, THAT WAS THE MEETING THAT YOU ASKED FOR;

12:07PM   6     RIGHT?

12:07PM   7     A.   CORRECT.

12:07PM   8     Q.   OKAY.  AND THAT WAS THE MEETING THAT WAS SET FOR THE DAY

12:07PM   9     AFTER YOU ASKED FOR IT, RIGHT, ON OCTOBER 10TH?

12:07PM   10    A.   I BELIEVE SO.

12:07PM   11    Q.   OKAY.  AND YOU WERE GIVEN -- YOUR TESTIMONY, I BELIEVE,

12:07PM   12    WAS A CHANCE TO RAISE ALL OF YOUR CONCERNS IN THAT MEETING;

12:07PM   13    CORRECT?

12:07PM   14    A.   YES.

12:07PM   15    Q.   AND THERE WERE NO LIMITATIONS PLACED ON YOU IN THAT

12:07PM   16    MEETING; RIGHT?

12:07PM   17    A.   NO.

12:07PM   18    Q.   AND, IN FACT, YOU WERE -- YOU ACTUALLY RESCHEDULED THAT

12:08PM   19    MEETING FOR A WEEK AFTER?

12:08PM   20    A.   YES.

12:08PM   21    Q.   AND THERE WAS A FOLLOW-UP MEETING THAT YOU CANCELLED

12:08PM   22    BECAUSE YOU DIDN'T HAVE ANYTHING ELSE TO RAISE.

12:08PM   23         DO YOU RECALL THAT?

12:08PM   24    A.   YES.

12:08PM   25    Q.   AND DO YOU RECALL THAT THERE WERE ACTIONS --

ROSENDORFF CROSS BY MR. WADE (RES.)                              2671

12:08PM  1    A.   I DIDN'T THINK ANYTHING FURTHER WOULD BE ACCOMPLISHED WITH

12:08PM  2    ANOTHER MEETING.

12:08PM  3    Q.   BUT YOU RECALL THAT THERE WERE ACTIONS ALMOST IMMEDIATELY

12:08PM  4    COMING OUT OF THAT MEETING WHERE YOU WERE ENGAGING WITH

12:08PM  5    MR. ARINGTON ON THOSE ISSUES?

12:08PM  6        DO YOU RECALL THAT?

12:08PM  7    A.   MR. ARINGTON WAS PRESENT AT THAT MEETING.  I DON'T KNOW

12:08PM  8    WHAT YOU MEAN BY ACTIONS.

12:08PM  9    Q.   WELL, DO YOU RECALL SENDING AN EMAIL AFTER THAT SET FORTH

12:08PM  10   EXACTLY WHAT NEEDED TO BE DONE WITH RESPECT TO THE ANALYTES?

12:08PM  11       DO YOU RECALL THAT?

12:08PM  12   A.   I BELIEVE SO.

12:08PM  13   Q.   OKAY.  AND THAT WAS THE DAY AFTER THE MEETING?

12:08PM  14   A.   YES.

12:08PM  15   Q.   OR TWO DAYS.  WITHIN A DAY OR TWO AFTER THE MEETING;

12:08PM  16   RIGHT?

12:08PM  17   A.   YES.

12:08PM  18   Q.   BUT YOU MAINTAINED THE VIEW THAT THERE WEREN'T ENOUGH

12:08PM  19   RESOURCES THAT WERE DEDICATED TO THAT; RIGHT?

12:08PM  20   A.   CORRECT.

12:08PM  21   Q.   AND YOU'VE SEEN A LOT OF EMAILS IN YOUR NINE OR SO

12:09PM  22   APPEARANCES IN THIS CASE.

12:09PM  23       HAVE YOU EVER SEEN A SINGLE EMAIL WHERE YOU ASKED FOR

12:09PM  24   RESOURCES ON AAP FROM MS. HOLMES OR MR. BALWANI AND YOU WERE

12:09PM  25   TOLD, NO, YOU CAN'T HAVE THEM?  HAVE YOU SEEN A SINGLE EMAIL,

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2672

12:09PM  1    SIR?

12:09PM  2    A.   ON -- IT WASN'T MY PLACE TO BE DIRECTING THE COMPANY

12:09PM  3    REGARDING ALLOCATION OF RESOURCES.

12:09PM  4    Q.   SIR, YOU WERE RESPONSIBLE TO ENSURE THAT AAP WAS DONE

12:09PM  5    WITHIN THE COMPANY; CORRECT?

12:09PM  6    A.   CORRECT.

12:09PM  7    Q.   OKAY.  AND YOUR COMPLAINT WAS THAT THERE WASN'T ENOUGH

12:09PM  8    RESOURCES DEDICATED TO IT; RIGHT?

12:09PM  9    A.   CORRECT.

12:09PM  10   Q.   AND YOU SENT A LOT OF EMAILS WHILE AT THERANOS; CORRECT?

12:09PM  11   A.   CORRECT.

12:09PM  12   Q.   AND WAS THERE EVER A SINGLE EMAIL THAT YOU'VE SEEN WHERE

12:09PM  13   YOU ASKED FOR THAT AND YOU WERE DENIED RESOURCES FOR AAP, A

12:09PM  14   SINGLE EMAIL?

12:09PM  15   A.   I DON'T RECALL.

12:09PM  16   Q.   YEAH.  DO YOU RECALL IN THE FALL OF 2014 THERE WERE SOME

12:09PM  17   ACTIONS ON YOUR PART THAT WERE SOMEWHAT ERRATIC OR

12:10PM  18   UNCHARACTERISTIC.

12:10PM  19        DO YOU RECALL THAT?

12:10PM  20   A.   COULD YOU CLARIFY?

12:10PM  21   Q.   SURE.  DO YOU RECALL THERE WAS AN OCCASION WHERE YOU

12:10PM  22   FAILED TO RETURN THE CALL OF A DOCTOR FOR A WEEK?  DO YOU

12:10PM  23   RECALL THAT?

12:10PM  24   A.   I SPOKE TO THE DOCTOR ONCE.  I WAS RELUCTANT TO JUSTIFY

12:10PM  25   DISCREPANT RESULTS TO THE DOCTOR ON A SUBSEQUENT PHONE CALL.  I

ROSENDORFF CROSS BY MR. WADE (RES.)                              2673

12:10PM  1    COMMUNICATED THAT TO THE COMPANY.

12:10PM  2    Q.   WE'LL TALK ABOUT THAT ISSUE WHICH I BELIEVE WAS NOVEMBER

12:10PM  3    20TH OR 21ST.

12:10PM  4         BUT THERE WAS ACTUALLY AN EMAIL THAT YOU WERE SENT ON

12:10PM  5    OCTOBER 10TH WHERE YOU WERE ASKED TO CALL THE DOCTOR, YOU SAID

12:10PM  6    YOU WERE, YOU WOULD, AND YOU DIDN'T RETURN THE CALL FOR A WEEK

12:10PM  7    AND THEY HAD TO FOLLOW UP AGAIN.

12:10PM  8         DO YOU RECALL THAT?

12:10PM  9    A.   YES.

12:10PM  10   Q.   AND I BELIEVE YOU SAID IT WAS A MISTAKE?

12:10PM  11   A.   I WAS REALLY SWAMPED WITH DEALING WITH ISSUES AND PROBLEMS

12:10PM  12   AT THE COMPANY.  THAT MAY HAVE SKIPPED MY ATTENTION.

12:11PM  13   Q.   THAT'S WHAT YOU WERE SWAMPED WITH ON OCTOBER 10TH?

12:11PM  14   A.   I BELIEVE SO.

12:11PM  15   Q.   OKAY.  THAT WAS THE SAME DAY THAT YOU CANCELLED THE

12:11PM  16   MEETING THAT YOU REQUESTED WITH SENIOR LEADERSHIP TO DISCUSS

12:11PM  17   AAP?

12:11PM  18        DO YOU RECALL THAT, OCTOBER 10TH?

12:11PM  19   A.   NO.  SUNNY ASKED ME IF A FOLLOW-UP MEETING WAS NEEDED AND

12:11PM  20   I SAID NO.

12:11PM  21   Q.   NO.  BUT DO YOU RECALL THERE WAS A MEETING SET FOR

12:11PM  22   OCTOBER 10TH -- HERE, LET'S PULL IT UP.

12:11PM  23        EXHIBIT 13923.  IT'S IN EVIDENCE.  LET'S GO TO THE SECOND

12:11PM  24   PAGE.

12:11PM  25        IT WAS INITIALLY SET FOR THE 10TH, AND THEN IT WAS MOVED

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2674

12:11PM   1      PER ADAM'S REQUEST?

12:11PM   2      A.   YES, I SEE THAT.

12:11PM   3      Q.   DO YOU SEE THAT?

12:11PM   4      A.   YES.

12:12PM   5      Q.   AND SO THERE WAS INITIALLY -- SO YOU WERE ASKED TO CALL

12:12PM   6      THE DOCTOR ON THE 10TH AND YOU DIDN'T CALL THE DOCTOR; RIGHT?

12:12PM   7           AND THEN YOU ASKED TO SCHEDULE A MEETING -- IT WAS

12:12PM   8      SCHEDULED WITH THE SENIOR LEADERSHIP THE NEXT DAY ON

12:12PM   9      OCTOBER 10TH, AND YOU ASKED TO MOVE IT FIVE DAYS; CORRECT?

12:12PM   10     A.   YES.

12:12PM   11     Q.   OKAY.  AND THE REASON THAT YOU DID THAT, SIR, IS BECAUSE

12:12PM   12     YOU WERE INTERVIEWING FOR ANOTHER JOB THAT DAY; RIGHT?

12:12PM   13     A.   I DON'T RECALL.

12:12PM   14     Q.   WELL, LET'S LOOK AT THE DOCUMENT.

12:12PM   15          LET'S GO TO 13756.

12:13PM   16          IF YOU CAN REVIEW THE EMAILS DOWN AT THE BOTTOM OF THE

12:13PM   17     PAGE AND LET ME KNOW WHEN YOU'VE HAD A CHANCE TO REVIEW THAT.

12:13PM   18     A.   ARE YOU TALKING ABOUT THE SECOND PAGE OR ARE YOU --

12:13PM   19     Q.   YOU CAN REVIEW THE FIRST PAGE, AND I CALL YOUR ATTENTION

12:13PM   20     IN PARTICULAR TO THE BOTTOM OF THE PAGE.

12:13PM   21     A.   YES.

12:13PM   22     Q.   AND DO YOU RECALL THESE EMAILS BETWEEN YOU AND PEOPLE AT

12:13PM   23     INVITAE?

12:13PM   24     A.   YES.

12:13PM   25     Q.   AND A HEAD HUNTER?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2675

12:13PM  1    A.   YES.

12:13PM  2    Q.   OKAY.

12:13PM  3         MOVE THE ADMISSION OF 13756.

12:13PM  4              MR. BOSTIC:  NO OBJECTION.

12:13PM  5              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:14PM  6         (DEFENDANT'S EXHIBIT 13756 WAS RECEIVED IN EVIDENCE.)

12:14PM  7    Q.   DO YOU SEE WHERE IT TALKS ABOUT CONFIRMING A MEETING IN

12:14PM  8    SAN FRANCISCO FROM 12:00 TO 5:00 ON OCTOBER 10?

12:14PM  9         DO YOU SEE THAT?

12:14PM 10    A.   YES.

12:14PM 11    Q.   DO YOU SEE THAT?

12:14PM 12         AND, IN FACT, YOU WENT TO SAN FRANCISCO ON OCTOBER 10TH

12:14PM 13    AND YOU SPENT THE AFTERNOON INTERVIEWING WITH EXECUTIVES AT

12:14PM 14    INVITAE; CORRECT?

12:14PM 15    A.   I DO NOT RECALL THE EXACT DAY THAT I WENT THERE.  I DON'T

12:14PM 16    RECALL THAT INDEPENDENTLY FROM READING THIS.

12:14PM 17    Q.   OKAY.  WE'LL COME BACK TO THAT.

12:14PM 18         DO YOU RECALL THAT YOU STARTED APPLYING FOR THIS POSITION

12:14PM 19    IN AUGUST?

12:14PM 20    A.   I DON'T RECALL.

12:14PM 21    Q.   DO YOU RECALL THAT YOU WERE CONTACTED BY THAT HEADHUNTER

12:14PM 22    VIA LINKEDIN IN LATE AUGUST 2014?

12:15PM 23    A.   I DON'T RECALL.

12:15PM 24    Q.   LET'S LOOK AT EXHIBIT 13751.

12:15PM 25         DO YOU HAVE THAT IN FRONT OF YOU?

UNITED STATES COURT REPORTERS

**ER-6422**

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2676

| | | |
|---|---|---|
| 12:15PM | 1 | A.   YES. |
| 12:15PM | 2 | Q.   DOES THAT REFRESH YOUR RECOLLECTION THAT YOU ACCEPTED A |
| 12:15PM | 3 | LINKEDIN INVITATION FROM THAT HEADHUNTER IN AUGUST OF 2014? |
| 12:15PM | 4 | A.   YES. |
| 12:15PM | 5 | Q.   AND -- |
| 12:15PM | 6 | A.   I'M SORRY, CORRECTION.  I'M READING IT HERE.  I DON'T HAVE |
| 12:15PM | 7 | AN INDEPENDENT RECOLLECTION. |
| 12:15PM | 8 | Q.   OKAY.  LET'S GO TO EXHIBIT 13753. |
| 12:16PM | 9 | DO YOU HAVE THAT DOCUMENT IN FRONT OF YOU? |
| 12:16PM | 10 | A.   YES. |
| 12:16PM | 11 | Q.   AND THAT'S AN EMAIL FROM YOU TO THE HEADHUNTER WITH A COPY |
| 12:16PM | 12 | OF YOUR RESUME? |
| 12:16PM | 13 | A.   YES. |
| 12:16PM | 14 | MR. WADE:  MOVE THE ADMISSION OF 13753. |
| 12:16PM | 15 | MR. BOSTIC:  NO OBJECTION. |
| 12:16PM | 16 | THE COURT:  IT'S ADMITTED AND MAY BE PUBLISHED. |
| 12:16PM | 17 | (DEFENDANT'S EXHIBIT 13753 WAS RECEIVED IN EVIDENCE.) |
| 12:16PM | 18 | BY MR. WADE: |
| 12:16PM | 19 | Q.   AND HERE YOU'RE SENDING A COPY OF YOUR RESUME TO |
| 12:16PM | 20 | MOLLY RYAN AT DOUBLE-HELIX; CORRECT? |
| 12:16PM | 21 | A.   YES. |
| 12:16PM | 22 | Q.   AND THAT WAS IN PURSUIT OF THAT INVITAE POSITION? |
| 12:16PM | 23 | A.   YES. |
| 12:16PM | 24 | Q.   OKAY.  AND LET'S GO TO 13754. |
| 12:17PM | 25 | DO YOU HAVE THAT IN FRONT OF YOU? |

| | | |
|---|---|---|
| 12:17PM | 1 | A.   YES. |
| 12:17PM | 2 | Q.   THAT'S YOUR RESUME DURING THIS TIME PERIOD; CORRECT? |
| 12:17PM | 3 | A.   YES. |
| 12:17PM | 4 | MR. WADE:  MOVE THE ADMISSION OF 13754. |
| 12:17PM | 5 | MR. BOSTIC:  NO OBJECTION. |
| 12:17PM | 6 | THE COURT:  IT'S ADMITTED AND MAY BE PUBLISHED. |
| 12:17PM | 7 | (DEFENDANT'S EXHIBIT 13754 WAS RECEIVED IN EVIDENCE.) |
| 12:17PM | 8 | BY MR. WADE: |
| 12:17PM | 9 | Q.   LET'S BLOW UP THE SECTION RELATING TO THERANOS. |
| 12:17PM | 10 | IS THIS A TRUE, ACCURATE, AND COMPLETE DESCRIPTION OF YOUR |
| 12:17PM | 11 | WORK AT THERANOS? |
| 12:17PM | 12 | A.   IT'S A SELECTION OF THE THINGS THAT I WAS WORKING ON AT |
| 12:17PM | 13 | THERANOS. |
| 12:17PM | 14 | Q.   IS IT TRUTHFUL AND ACCURATE? |
| 12:17PM | 15 | A.   I BELIEVE SO. |
| 12:17PM | 16 | I'M SORRY, I WAS NOT INVOLVED IN NEW YORK STATE |
| 12:17PM | 17 | INSPECTIONS. |
| 12:17PM | 18 | Q.   SO IT'S INACCURATE? |
| 12:17PM | 19 | A.   THE NEW YORK STATE IS NOT ACCURATE, CORRECT. |
| 12:17PM | 20 | Q.   OKAY.  IS IT OTHERWISE ACCURATE? |
| 12:17PM | 21 | A.   YES. |
| 12:17PM | 22 | Q.   AND IT TALKS ABOUT MUCH OF THE GOOD WORK YOU WERE DOING |
| 12:17PM | 23 | THERE. |
| 12:17PM | 24 | DO YOU SEE THAT? |
| 12:17PM | 25 | A.   SO I DON'T KNOW IF YOU'VE EVER TRIED TO APPLY FOR A JOB, |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2678

12:17PM   1    BUT IT GENERALLY DOESN'T SERVE YOU IF YOU TALK ABOUT A COMPANY

12:17PM   2    THAT HAS BEEN ACCUSED OF FRAUDULENT PRACTICES OR IS UNDER

12:18PM   3    INVESTIGATION.

12:18PM   4              MR. WADE:  OKAY.  MOVE TO STRIKE THAT ANSWER,

12:18PM   5    YOUR HONOR.

12:18PM   6              THE COURT:  OVERRULED.

12:18PM   7    BY MR. WADE:

12:18PM   8    Q.   DO YOU SEE WHERE IT TALKS ABOUT SOME OF THE WORK THAT YOU

12:18PM   9    PERFORMED --

12:18PM  10    A.   YES.

12:18PM  11    Q.   -- AS A LABORATORY DIRECTOR AT THERANOS?

12:18PM  12    A.   YES.

12:18PM  13    Q.   OKAY.  AND DO YOU SEE WHERE IT TALKS ABOUT HOW YOU WORKED

12:18PM  14    EXTENSIVELY WITH R&D LEADS AND DIRECTED LABORATORY STAFF?

12:18PM  15         DO YOU SEE THAT?

12:18PM  16    A.   YES.

12:18PM  17    Q.   AND DO YOU SEE HOW IT SAYS YOU ESTABLISHED THE TECHNICAL

12:18PM  18    PERFORMANCE OF OVER 70 NOVEL ASSAY METHODS?

12:18PM  19    A.   YES.

12:18PM  20    Q.   AND YOU BELIEVED THAT AT THE TIME; CORRECT?

12:18PM  21    A.   YES.

12:18PM  22    Q.   OKAY.  AND DO YOU SEE WHERE IT SAYS THAT YOU SUCCESSFULLY

12:18PM  23    LED LABORATORY THROUGH STATE AND FEDERAL INSPECTIONS?

12:18PM  24         DO YOU SEE THAT?

12:18PM  25    A.   YES, YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2679

12:18PM   1    Q.   AND WITH THE EXCEPTION OF NEW YORK, YOU BELIEVE THAT TO BE

12:18PM   2    TRUE; CORRECT?

12:18PM   3    A.   YES.

12:18PM   4    Q.   AND DO YOU SEE WHERE IT SAYS THAT YOU'VE PROVIDED

12:18PM   5    REGULATORY GUIDANCE ON CLIA AND STATE LABORATORY COMPLIANCE?

12:18PM   6    A.   YES.

12:18PM   7    Q.   DO YOU SEE THAT?

12:19PM   8    A.   YES.

12:19PM   9    Q.   AND YOU BELIEVED THAT TO BE TRUE?

12:19PM   10   A.   YES.

12:19PM   11   Q.   OKAY.  AND YOU CONDUCTED AN INTERVIEW IN SEPTEMBER WITH A

12:19PM   12   GENTLEMAN BY THE NAME OF SWAROOP ARADHYA?

12:19PM   13   A.   ARADHYA.

12:19PM   14   Q.   ARADHYA.  HE WORKED AT INVITAE?

12:19PM   15   A.   YES.

12:19PM   16   Q.   AND IT WAS AFTER -- THAT WAS IN SEPTEMBER OF 2014?

12:19PM   17   A.   I REMEMBER MEETING WITH HIM AT A CAFE IN PALO ALTO.

12:19PM   18   Q.   DURING THE WORK DAY; RIGHT?

12:19PM   19   A.   YEAH.

12:19PM   20   Q.   OKAY.

12:19PM   21   A.   I DON'T REMEMBER THE DATE.

12:19PM   22   Q.   OKAY.  AND THEN YOU LATER SPENT OCTOBER 10TH WITH THE

12:19PM   23   EXECUTIVE TEAM AS SET FORTH IN THAT EMAIL; RIGHT?

12:19PM   24   A.   AGAIN, I DON'T REMEMBER THE DATE.

12:19PM   25   Q.   OKAY.  BUT IT WAS UP IN SAN FRANCISCO.

ROSENDORFF CROSS BY MR. WADE (RES.)                              2680

12:19PM  1         YOU RECALL THAT?

12:20PM  2    A.   CORRECT.

12:20PM  3    Q.   AND IT WAS IN THE AFTERNOON FROM 12:00 TO 5:00?

12:20PM  4    A.   CORRECT.

12:20PM  5    Q.   AND DO YOU HAVE ANY REASON TO QUESTION THAT IT WAS ON

12:20PM  6    OCTOBER 10TH AS SET FORTH IN THAT EMAIL?

12:20PM  7    A.   I HAVE -- I DO NOT RECALL WHEN IT WAS.

12:20PM  8    Q.   OKAY.  DO YOU RECALL THAT YOU WERE -- WITH RESPECT TO SOME

12:20PM  9    OF YOUR ACTS AT THE COMPANY, YOU ALSO ASKED THE COMPANY TO SEND

12:20PM  10   A COMPANY-WIDE EMAIL IN RESPONSE TO A RUMOR ABOUT EBOLA

12:20PM  11   TESTING?

12:20PM  12   A.   YES.

12:20PM  13   Q.   AND THERE WAS A RUMOR GOING AROUND AND YOU WERE DEMANDING

12:20PM  14   THAT A COMPANY-WIDE RUMOR -- THAT A COMPANY-WIDE EMAIL BE SENT

12:20PM  15   TO QUASH THAT RUMOR?

12:20PM  16   A.   I HAD BEEN INFORMED BY MEMBERS OF THE CLIA TEAM THAT THE

12:20PM  17   LABORATORY WAS PLANNING OR IN THE PROCESS OF VALIDATING A TEST

12:21PM  18   FOR EBOLA.  I HAD NOT BEEN INFORMED OF THIS.

12:21PM  19   Q.   YOU ASKED AND SENIOR LEADERSHIP TOLD YOU THAT'S NOT TRUE;

12:21PM  20   RIGHT?

12:21PM  21   A.   ELIZABETH TOLD ME THAT WAS NOT TRUE.

12:21PM  22   Q.   BUT YOU STILL WANT THEM TO SEND A COMPANY-WIDE EMAIL;

12:21PM  23   CORRECT?

12:21PM  24   A.   CORRECT.

12:21PM  25   Q.   AND YOU THEN RECEIVED -- AFTER THOSE EVENTS OF THE FALL

ROSENDORFF CROSS BY MR. WADE (RES.)                              2681

12:21PM  1      THAT WE JUST DISCUSSED, YOU RECEIVED AN OFFER TO JOIN INVITAE

12:21PM  2      AS LAB DIRECTOR ON NOVEMBER 12TH, 2014; RIGHT?

12:21PM  3      A.   I DON'T RECALL THE DATE.

12:21PM  4      Q.   OKAY.  LET'S LOOK AT EXHIBIT 12913.

12:22PM  5      A.   OKAY.

12:22PM  6      Q.   OKAY.  DO YOU HAVE THAT IN FRONT OF YOU?

12:22PM  7      A.   YES.

12:22PM  8      Q.   OKAY.  AND DOES THAT REFRESH YOUR RECOLLECTION -- IS THIS

12:22PM  9      YOUR OFFER LETTER FROM INVITAE?

12:22PM  10     A.   IT APPEARS TO BE, YES.

12:22PM  11     Q.   OKAY.  IF YOU LOOK AT THE THIRD PAGE, IS THAT YOUR

12:22PM  12     SIGNATURE THERE?

12:22PM  13     A.   YES.

12:22PM  14           MR. WADE:  MOVE THE ADMISSION OF 12913.

12:22PM  15           MR. BOSTIC:  NO OBJECTION.

12:22PM  16           THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:22PM  17        (DEFENDANT'S EXHIBIT 12913 WAS RECEIVED IN EVIDENCE.)

12:22PM  18     BY MR. WADE:

12:22PM  19     Q.   OKAY.  SO YOU WERE OFFERED AT SOME POINT ON OR ABOUT

12:22PM  20     NOVEMBER 12TH, 2014 A JOB AT INVITAE?

12:22PM  21     A.   YES.

12:22PM  22     Q.   AND YOU ACCEPTED IT ON NOVEMBER 12TH, 2014?

12:22PM  23     A.   YES.

12:22PM  24     Q.   AND THEY WANTED YOU TO START SOON; RIGHT?

12:22PM  25     A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2682

12:22PM  1    Q.   AND YOU WERE OFFERED MORE MONEY TO GO THERE; RIGHT?

12:22PM  2    A.   NOT A LOT MORE.

12:23PM  3         I ALSO WANT TO POINT OUT THAT ELIZABETH GAVE ME STOCK

12:23PM  4    OPTIONS.  IN VIEW OF THE RISKS AND MY CONCERNS WITH THERANOS, I

12:23PM  5    WALKED AWAY FROM THOSE STOCK OPTIONS AT THERANOS.  I DIDN'T

12:23PM  6    THINK IT WAS WORTH IT TO STAY AT THE COMPANY FOR THE ISSUES

12:23PM  7    THAT WE HAVE BEEN DISCUSSING IN THIS TRIAL.

12:23PM  8    Q.   ALL RIGHT, SIR.  I UNDERSTAND THAT.

12:23PM  9         BUT MY QUESTION TO YOU WAS THAT YOU WERE GOING TO BE PAID

12:23PM  10   MORE MONEY?

12:23PM  11   A.   $15,000 MORE.

12:23PM  12   Q.   HOW MUCH?

12:23PM  13   A.   $15,000 MORE.

12:23PM  14   Q.   OKAY.  YOU WERE GOING TO BE PAID $260,000 A YEAR?

12:23PM  15   A.   CORRECT.

12:23PM  16   Q.   AND DO YOU KNOW HOW MUCH YOU WERE MAKING AT THIS TIME AT

12:23PM  17   THERANOS?

12:23PM  18   A.   I HAVE -- I'VE REVIEWED MY OFFER LETTER RECENTLY FROM

12:23PM  19   THERANOS, AND ALSO WE HAVE DISCUSSED IT DURING THIS TRIAL, AND

12:23PM  20   I BELIEVE I WAS BEING PAID 240,000 A YEAR.

12:23PM  21   Q.   OKAY.  SO YOU WERE OFFERED MORE MONEY; CORRECT?

12:23PM  22   A.   NOT A LOT MORE.

12:23PM  23   Q.   OKAY.  BUT YOU WERE OFFERED --

12:23PM  24   A.   I DON'T KNOW WHAT WE'RE DISCUSSING HERE.

12:23PM  25   Q.   YOU WERE OFFERED 75,000 STOCK OPTIONS; CORRECT?

ROSENDORFF CROSS BY MR. WADE (RES.)                              2683

```
12:24PM   1    A.   CORRECT.

12:24PM   2         SO THAT WAS ACTUALLY DIVIDED BY FIVE AND THOSE STOCK

12:24PM   3    OPTIONS WERE FOR A LONG PERIOD.  THEY WERE NEVER IN THE MONEY.

12:24PM   4    I BELIEVE I MADE JUST A FEW THOUSAND DOLLARS OFF OF THOSE STOCK

12:24PM   5    OPTIONS AT INVITAE.

12:24PM   6         MR. WADE:  MOVE TO STRIKE EVERYTHING AFTER

12:24PM   7    "CORRECT."

12:24PM   8         THE COURT:  THE LAST PORTION WILL BE STRICKEN AFTER

12:24PM   9    "CORRECT."

12:24PM  10    BY MR. WADE:

12:24PM  11    Q.   IF I CALL YOUR ATTENTION TO PAGE 3, YOU WERE ACTUALLY

12:24PM  12    OFFERED 75,000 OPTIONS THAT WERE GOING TO VEST OVER FOUR YEARS;

12:24PM  13    CORRECT?

12:24PM  14    A.   YES.

12:24PM  15    Q.   OKAY.  AND INVITAE WAS ABOUT TO GO PUBLIC EARLY THE NEXT

12:24PM  16    YEAR; RIGHT?

12:24PM  17    A.   CORRECT.

12:24PM  18    Q.   AND YOU WANTED TO BE A PART OF THAT; CORRECT?

12:24PM  19    A.   CAN YOU CLARIFY?  CAN YOU CLARIFY THE QUESTION?

12:25PM  20    Q.   YEAH.  YOU WANTED, YOU WANTED TO HAVE -- YOU WANTED YOUR

12:25PM  21    INTEREST TO BE ALIGNED WITH THE SUCCESS OF THE COMPANY GOING

12:25PM  22    IN; RIGHT?

12:25PM  23    A.   I WANTED TO JOIN A REPUTABLE COMPANY WHOSE MISSION I

12:25PM  24    BELIEVED IN.

12:25PM  25    Q.   RIGHT.  I UNDERSTAND.
```

ROSENDORFF CROSS BY MR. WADE (RES.)                    2684

12:25PM   1          AND YOU WERE BEING GIVEN 75,000 OPTIONS IN A COMPANY WHO

12:25PM   2    WAS ABOUT TO GO PUBLIC AS PART OF THAT?

12:25PM   3    A.   YEAH, BUT I HAD NO IDEA WHAT THE VALUE OF THOSE OPTIONS

12:25PM   4    WERE.

12:25PM   5    Q.   OKAY.  AND IN ADDITION TO THAT, WHEN YOU WERE AT INVITAE,

12:25PM   6    YOU HAD THE ABILITY TO ALSO WORK AS A PART-TIME LAB DIRECTOR;

12:25PM   7    RIGHT?

12:25PM   8    A.   CORRECT.

12:25PM   9    Q.   AND THAT WAS ADDITIONAL MONEY THAT YOU COULD GET ON THE

12:25PM   10   SIDE; RIGHT?

12:25PM   11   A.   CORRECT.

12:25PM   12   Q.   AND YOU DID THAT; RIGHT?

12:25PM   13   A.   CORRECT.

12:25PM   14   Q.   AND YOU MADE A LOT OF MONEY DOING THAT?

12:25PM   15   A.   NO.

12:25PM   16   Q.   HOW MUCH DID YOU MAKE AS A PART-TIME LAB DIRECTOR?

12:25PM   17   A.   I DON'T REMEMBER FOR SURE.  I THINK IT WAS AROUND $2,000

12:25PM   18   PER MONTH.

12:25PM   19   Q.   WAS IT AROUND $4,500 A MONTH?

12:25PM   20   A.   IT MAY HAVE BEEN.  I DON'T RECALL.

12:26PM   21   Q.   AND HOW MANY POSITIONS DID YOU HAVE?

12:26PM   22   A.   I ALSO WAS WORKING FOR PRECISION TOXICOLOGY AT THE TIME AS

12:26PM   23   A PART-TIME LAB DIRECTOR, SO IT WOULD HAVE BEEN THREE.

12:26PM   24   Q.   WHEN YOU SAY AT THE TIME, YOU STARTED THAT WHEN?

12:26PM   25   A.   PRECISION?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2685

12:26PM   1    Q.   YES.  AT THE BEGINNING OF 2015?

12:26PM   2    A.   I THINK IT WAS AROUND THE SAME TIME I STARTED AT INVITAE,

12:26PM   3    YES.

12:26PM   4    Q.   AND I'M SORRY, WITH PRECISION, DO YOU KNOW HOW MUCH MONEY

12:26PM   5    YOU WERE GOING TO MAKE?

12:26PM   6    A.   I DON'T REMEMBER.

12:26PM   7    Q.   OKAY.  AND SO YOU ACCEPTED THIS OFFER THE VERY SAME DAY;

12:26PM   8    CORRECT?  THAT LETTER IS DATED NOVEMBER 12TH AND YOU SIGNED IT

12:26PM   9    NOVEMBER 12TH?

12:26PM   10   A.   YES.

12:26PM   11   Q.   YOU WROTE THERE THAT THEY -- THAT THE START DATE WAS GOING

12:26PM   12   TO BE NO LATER THAN JANUARY 12TH, 2015; CORRECT?

12:27PM   13   A.   CORRECT.

12:27PM   14   Q.   THEY WANTED YOU TO START QUICKLY, BUT YOU HAD A 60-DAY

12:27PM   15   NOTICE PERIOD; RIGHT?

12:27PM   16   A.   I BELIEVE I SENT AN EMAIL TO SUNNY AND ELIZABETH THE SAME

12:27PM   17   DAY, NOVEMBER 12TH, INFORMING THEM THAT I FOUND OTHER

12:27PM   18   EMPLOYMENT AND GIVING THEM A GOOD AMOUNT OF TIME TO FIND A

12:27PM   19   REPLACEMENT LAB DIRECTOR.

12:27PM   20   Q.   RIGHT.  IF YOU GO TO 12916.

12:28PM   21   A.   I'M THERE.  I'M THERE.

12:28PM   22   Q.   DO YOU HAVE THAT IN FRONT OF YOU?

12:28PM   23   A.   YES.

12:28PM   24   Q.   AND IS THIS THE EMAIL THAT YOU WERE JUST REFERRING TO?

12:28PM   25   A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2686

12:28PM  1              MR. WADE:  OKAY.  I MOVE 12916.

12:28PM  2              MR. BOSTIC:  NO OBJECTION.

12:28PM  3              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:28PM  4         (DEFENDANT'S EXHIBIT 12916 WAS RECEIVED IN EVIDENCE.)

12:28PM  5              MR. WADE:   IF WE BLOW UP THE BOTTOM.

12:28PM  6    Q.   DO YOU SEE THERE IT SAYS -- THIS IS 7:52 ON NOVEMBER 12TH;

12:28PM  7    CORRECT?

12:28PM  8    A.   YES.

12:28PM  9    Q.   AND THAT'S THE VERY EVENING THAT YOU SIGNED THE OFFER

12:28PM 10    LETTER; CORRECT?

12:28PM 11    A.   YES.

12:28PM 12    Q.   AND WHEN YOU SAID NO LATER THAN JANUARY 12TH, THAT WAS

12:28PM 13    BECAUSE YOU NEEDED TO GIVE TWO MONTHS NOTICE UNDER YOUR

12:28PM 14    CONTRACT?

12:28PM 15    A.   YES.

12:28PM 16    Q.   OKAY.  AND YOU RESIGNED.  YOU SAID YOU APPRECIATED THE

12:28PM 17    OPPORTUNITY AND THE ABILITY TO INTERACT WITH SO MANY TALENTED

12:28PM 18    AND DEDICATED INDIVIDUALS OVER THE LAST YEAR AND A HALF;

12:28PM 19    CORRECT?

12:28PM 20    A.   CORRECT.

12:28PM 21    Q.   AND YOU SAID IT'S BEEN A TREMENDOUS EXPERIENCE; CORRECT?

12:28PM 22    A.   CORRECT.

12:28PM 23    Q.   AND THEN YOU GAVE THE NOTICE -- THE 60-DAY NOTICE;

12:28PM 24    CORRECT?

12:28PM 25    A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2687

12:28PM   1    Q.   AND MR. BALWANI, WHO IS YOUR DIRECT REPORT, RESPONDED;

12:29PM   2    CORRECT?

12:29PM   3    A.   YES.

12:29PM   4    Q.   OKAY.  AND HE SAID -- HE THANKED YOU FOR THE COMMITMENT

12:29PM   5    AND SAID HE APPRECIATED IT AND THAT HE WOULD SWING BY AND

12:29PM   6    DISCUSS THIS WITH YOU; CORRECT?

12:29PM   7    A.   YES.

12:29PM   8    Q.   OKAY.  AND THIS IS ON NOVEMBER 13TH?

12:29PM   9    A.   CORRECT.

12:29PM  10    Q.   OKAY.  AND IT WAS NOVEMBER 14TH WHERE YOU SEND THE EMAIL

12:29PM  11    DEMANDING THE EBOLA RETRACTION; CORRECT?

12:29PM  12    A.   I DON'T RECALL THE DATE ON THE EBOLA EMAIL.  I'M SORRY.

12:29PM  13    Q.   OKAY.  AND IT'S EXHIBIT 4330.  I BELIEVE IT'S IN EVIDENCE.

12:30PM  14    WE HAVE IT ON THE SCREEN.  IF WE CAN GO TO THE LAST PAGE.

12:30PM  15    A.   YES, I HAVE IT.

12:30PM  16    Q.   RIGHT.  DO YOU SEE THAT?  THE LAST PAGE, DO YOU SEE THAT

12:30PM  17    YOU HAD SENT AN EMAIL LATE THE NIGHT WEDNESDAY, NOVEMBER 12TH

12:30PM  18    RESIGNING; CORRECT?

12:30PM  19    A.   YES.

12:30PM  20    Q.   AND THEN THIS IS NOVEMBER 14TH, 2014?

12:30PM  21    A.   YES.

12:30PM  22    Q.   AND YOU'RE DIRECTING THE EMAIL TO THE TWO SENIOR

12:30PM  23    EXECUTIVES IN THE COMPANY?

12:30PM  24    A.   YES.

12:30PM  25    Q.   ABOUT A RUMOR ABOUT EBOLA; RIGHT?

ROSENDORFF CROSS BY MR. WADE (RES.)                          2688

12:30PM   1          AND THAT RUMOR WAS DENIED; CORRECT?

12:30PM   2     A.   ELIZABETH DENIED IT.

12:30PM   3     Q.   RIGHT.  AND YOU ASKED FOR A COMPANY-WIDE EMAIL; RIGHT?

12:31PM   4     A.   YES.

12:31PM   5     Q.   AND SHE RESPONDED THAT NO ONE ELSE REALLY HAD THAT

12:31PM   6     IMPRESSION.

12:31PM   7          CAN YOU SEE THAT?

12:31PM   8     A.   YES.

12:31PM   9     Q.   AND DIDN'T SEEM INCLINED TO SEND THE EMAIL?

12:31PM  10     A.   SHE'S ACKNOWLEDGING THAT FOLKS AT THE SITE ARE UNDER THIS

12:31PM  11     IMPRESSION.

12:31PM  12     Q.   BUT SHE'S NOT AGREEING TO SEND THE EMAIL TO QUASH THE

12:31PM  13     RUMOR; RIGHT?

12:31PM  14     A.   CORRECT.

12:31PM  15     Q.   AND THEN YOU RESPOND THAT DAY, "I FEEL REALLY

12:31PM  16     UNCOMFORTABLE WITH WHAT IS HAPPENING RIGHT NOW IN THIS

12:31PM  17     COMPANY."

12:31PM  18          DO YOU SEE THAT?

12:31PM  19     A.   YES.

12:31PM  20     Q.   AND YOU ASKED TO BE OFF THE CLIA LICENSE; RIGHT?

12:31PM  21     A.   YES.

12:31PM  22     Q.   AND YOU WANTED TO BE OFF OF THE CLIA LICENSE SO YOU COULD

12:31PM  23     GO AND START YOUR OTHER JOB; RIGHT?

12:31PM  24     A.   NO.

12:31PM  25     Q.   YOU WERE ESCALATING ISSUES WITHIN THIS COMPANY IN THIS

ROSENDORFF CROSS BY MR. WADE (RES.)                              2689

12:32PM   1    TIME PERIOD BECAUSE YOU'RE TRYING TO GET THEM TO RELEASE YOU

12:32PM   2    FROM YOUR 60-DAY PERIOD; CORRECT?

12:32PM   3    A.   NO.

12:32PM   4    Q.   OKAY.  IN THIS SAME TIME PERIOD --

12:32PM   5    A.   THE EBOLA WAS THE FINAL -- I MEAN, IT WAS ONE OF THE FINAL

12:32PM   6    STRAWS FOR ME.

12:32PM   7    Q.   THAT RUMOR REALLY GOT TO YOU, SIR?

12:32PM   8    A.   NO.  MULTIPLE FOLKS TOLD ME ABOUT THIS.

12:32PM   9    Q.   OKAY.

12:32PM   10   A.   I DIDN'T BELIEVE IT TO BE A RUMOR.

12:32PM   11   Q.   WELL, THAT WAS A FINAL STRAW?

12:32PM   12   A.   ONE OF THEM.

12:32PM   13   Q.   YOU'VE NEVER TESTIFIED THAT THAT WAS A FINAL STRAW IN ANY

12:32PM   14   OF YOUR PRIOR TESTIMONY?  YOU'VE NEVER IDENTIFIED IT AS THE

12:32PM   15   FINAL STRAW, BUT NOW IT'S YOUR TESTIMONY THAT IT WAS THE FINAL

12:32PM   16   STRAW?

12:32PM   17   A.   WELL, I WASN'T ASKED ABOUT -- I'VE NEVER BEEN ASKED ABOUT

12:32PM   18   THIS EBOLA ISSUE OR WHAT THE FINAL DISSATISFACTION WAS AT

12:32PM   19   THERANOS.  THERE WERE MANY.

12:32PM   20   Q.   OKAY.  AT THE SAME TIME YOU RAISED THAT ISSUE, THE SAME

12:33PM   21   DAY, YOU RAISED AN ISSUE -- IF WE CAN BRING UP 4314, IF WE GO

12:33PM   22   TO THE SECOND PAGE -- LET'S GO TO THE THIRD PAGE JUST SO WE

12:33PM   23   HAVE THE CONTEXT.

12:33PM   24        THAT SAME DAY, NOVEMBER 14TH, AFTER YOU SENT THE EBOLA

12:33PM   25   EMAIL, YOU THEN WERE ASKED TO CALL A DOCTOR; RIGHT?

| | | |
|---|---|---|
| 12:33PM | 1 | A.   YES. |
| 12:33PM | 2 | Q.   AND YOU REFUSED TO CALL THE DOCTOR; RIGHT? |
| 12:33PM | 3 | A.   NO.  I SAID I WILL HAPPILY SPEAK TO A CLINICIAN, BUT I |
| 12:33PM | 4 | WILL NOT DEFEND THE RESULTS. |
| 12:33PM | 5 | Q.   IF I CAN FOCUS YOU ON THE EMAIL ON PAGE 3.  OKAY. |
| 12:33PM | 6 | DO YOU SEE YOU'RE ASKED TO CALL THE DOCTOR?  DO YOU SEE |
| 12:34PM | 7 | THAT? |
| 12:34PM | 8 | IN MR. HOLMES'S EMAIL AT 12:54 P.M. YOU'RE ASKED TO CALL |
| 12:34PM | 9 | THE DOCTOR. |
| 12:34PM | 10 | DO YOU SEE THAT ONE? |
| 12:34PM | 11 | A.   YES. |
| 12:34PM | 12 | Q.   AND YOU SAY, I'M GOING TO PASS ON THIS ONE? |
| 12:34PM | 13 | A.   WELL, MR. HOLMES WAS TRYING TO COME UP WITH A SCRIPT FOR |
| 12:34PM | 14 | ME IN MESSAGING AND I WAS RELUCTANT TO FOLLOW THAT SCRIPT. |
| 12:34PM | 15 | Q.   AND MR. HOLMES WASN'T GOING TO GO ON THAT CALL; RIGHT? |
| 12:34PM | 16 | A.   CORRECT. |
| 12:34PM | 17 | Q.   YOU WERE GOING TO CALL THE DOCTOR? |
| 12:34PM | 18 | A.   THAT WAS THE EXPECTATION. |
| 12:34PM | 19 | Q.   RIGHT.  AND YOU HAVE YOUR OWN ABILITY TO EXERCISE YOUR OWN |
| 12:34PM | 20 | PROFESSIONAL JUDGMENT ON WHAT YOU'RE GOING TO SAY TO THAT |
| 12:34PM | 21 | DOCTOR; RIGHT? |
| 12:34PM | 22 | A.   YES. |
| 12:34PM | 23 | Q.   OKAY.  BUT YOU DIDN'T PICK UP THE PHONE AND SAY WHATEVER |
| 12:34PM | 24 | YOU THOUGHT WAS APPROPRIATE, YOU SAID YOU'RE GOING TO PASS ON |
| 12:34PM | 25 | THIS ONE; RIGHT? |

ROSENDORFF CROSS BY MR. WADE (RES.)                    2691

| | | |
|---|---|---|
| 12:34PM | 1 | A.   YES. |
| 12:34PM | 2 | Q.   OKAY.  LET'S GO UP THE CHAIN. |
| 12:34PM | 3 | AND YOU'RE ASKED WHAT THIS MEANS. |
| 12:34PM | 4 | AND IF WE GO UP AGAIN. |
| 12:34PM | 5 | AND HE SAYS, "IF YOU'RE ASKING ME TO DEFEND THESE VALUES |
| 12:34PM | 6 | THEN THE ANSWER IS NO." |
| 12:35PM | 7 | RIGHT? |
| 12:35PM | 8 | A.   THAT WAS MY CLARIFICATION. |
| 12:35PM | 9 | Q.   THAT WAS YOUR CLARIFICATION. |
| 12:35PM | 10 | AND IF YOU GO UP THE CHAIN AGAIN, HE'S TELLING YOU THAT |
| 12:35PM | 11 | HE'S NOT ASKING YOU TO DO THAT.  HE'S JUST ASKING YOU TO CALL |
| 12:35PM | 12 | THE DOCTOR BACK; RIGHT? |
| 12:35PM | 13 | A.   NO, HE'S NOT ADDRESSING THE EXPECTED MESSAGING IN HIS |
| 12:35PM | 14 | EMAIL. |
| 12:35PM | 15 | Q.   OKAY.  WELL, HE'S ASKING YOU TO CALL THE DOCTOR; RIGHT? |
| 12:35PM | 16 | A.   CORRECT. |
| 12:35PM | 17 | Q.   OKAY.  AND JUST SO WE'RE ALL CLEAR, THIS IS THE FIRST |
| 12:35PM | 18 | INSTANCE, THIS TEST RIGHT HERE IS THE FIRST INSTANCE OF AN |
| 12:35PM | 19 | OBVIOUSLY INCORRECT VALUE BEING REPORTED TO A PATIENT DURING |
| 12:35PM | 20 | YOUR TENURE AT THERANOS; CORRECT? |
| 12:35PM | 21 | A.   NO. |
| 12:35PM | 22 | Q.   OKAY.  DO YOU RECALL GIVING TESTIMONY PREVIOUSLY WITH |
| 12:35PM | 23 | RESPECT TO THIS EMAIL? |
| 12:35PM | 24 | A.   YES. |
| 12:35PM | 25 | Q.   OKAY.  AND THAT WAS IN THAT DEPOSITION IN ARIZONA; |

ROSENDORFF CROSS BY MR. WADE (RES.)                                2692

12:36PM   1      CORRECT?

12:36PM   2      A.   I BELIEVE SO.

12:36PM   3      Q.   AND DO YOU RECALL TESTIFYING THAT THIS WAS THE FIRST

12:36PM   4      INSTANCE OF AN OBVIOUSLY INCORRECT VALUE BEING REPORTED TO THE

12:36PM   5      PATIENT?

12:36PM   6      A.   I DON'T RECALL.

12:36PM   7      Q.   OKAY.  LET'S LOOK AT THAT TESTIMONY.

12:36PM   8           GO TO 171.  IT'S THAT SAME ARIZONA EXHIBIT 11000.

12:37PM   9      A.   11000?

12:37PM  10      Q.   IT'S IN THE YELLOW BINDER.

12:37PM  11      A.   WHAT VOLUME?

12:37PM  12      Q.   VOLUME 1.

12:37PM  13      A.   OKAY.

12:37PM  14      Q.   OKAY.  IF YOU LOOK AT PAGE 168.

12:37PM  15      A.   YES.

12:37PM  16      Q.   YOU'RE WELCOME TO READ PAGE 168 WHICH INTRODUCES THAT

12:37PM  17      DOCUMENT, BUT I'M FOCUSSED ON THE QUESTION AND ANSWER ON

12:38PM  18      PAGE 171.

12:38PM  19      A.   OKAY, I'VE READ PAGE 168.

12:38PM  20      Q.   READ THROUGH 171 AND LET ME KNOW WHEN YOU GET TO LINE 15

12:38PM  21      ON 171.

12:38PM  22           (PAUSE IN PROCEEDINGS.)

12:39PM  23           THE WITNESS:  YES, I READ IT.

12:39PM  24      BY MR. WADE:

12:39PM  25      Q.   DO YOU SEE THAT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                  2693

12:39PM   1          AND DRAWING YOUR ATTENTION TO LINE 3, YOU WERE ASKED, "HAD

12:39PM   2     YOU BEEN ASKED TO DEFEND RESULTS IN THIS MANNER AT OTHER POINTS

12:39PM   3     IN YOUR TIME AT THERANOS?"

12:39PM   4     A.   THIS ISN'T -- I'M SORRY.

12:39PM   5     Q.   YOU WERE ASKED THAT QUESTION, CORRECT, SIR?

12:39PM   6     A.   YES, YES.

12:39PM   7     Q.   AND YOU GAVE THIS ANSWER, "NOT REALLY, NO.  I MEAN, THIS

12:39PM   8     IS THE FIRST INSTANCE OF AN OBVIOUSLY INCORRECT VALUE BEING

12:39PM   9     REPORTED TO THE PATIENT."

12:39PM   10         DO YOU SEE THAT?

12:39PM   11    A.   YES.

12:39PM   12    Q.   AND THAT'S WHAT YOU ANSWERED IN THAT SWORN TESTIMONY;

12:39PM   13    CORRECT?

12:39PM   14    A.   THAT'S WHAT I'M READING HERE.

12:39PM   15    Q.   AND THEN YOU WERE ASKED, "DO YOU REMEMBER OTHER INSTANCES

12:39PM   16    WHERE AN OBVIOUSLY INCORRECT VALUE WAS REPORTED TO THE

12:39PM   17    PATIENT?"

12:39PM   18         AND YOU SAID, "NO."

12:40PM   19         CORRECT?

12:40PM   20    A.   CORRECT.

12:40PM   21    Q.   YOU WERE TRYING IN THIS EMAIL TO GET THEM TO TAKE YOU OFF

12:40PM   22    THE LICENSE AND TO LET YOU GO START YOUR OTHER JOB, WERE YOU

12:40PM   23    NOT?

12:40PM   24    A.   NO.  I WANTED TO BE OFF THE LICENSE BECAUSE I WAS

12:40PM   25    UNCOMFORTABLE WITH THE LEGAL RESPONSIBILITY THAT I HELD AT

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2694

12:40PM   1    THERANOS AT THAT TIME.

12:40PM   2    Q.   AND IT DIDN'T WORK IN NOVEMBER 14TH, DID IT?  AND SO YOU

12:40PM   3    RAISED AN ISSUE AGAIN IN NOVEMBER 21ST.

12:40PM   4         LET'S GO TO THAT.  THIS IS 228.

12:40PM   5    A.   I'M SORRY, WHICH EXHIBIT IS IT?

12:40PM   6    Q.   IT'S EXHIBIT 228.  I BELIEVE IT'S IN THE GOVERNMENT'S

12:40PM   7    BINDER.

12:41PM   8    A.   OKAY.

12:41PM   9    Q.   AND WE WERE JUST LOOKING AT THIS.  WE WILL GO TO THE NEXT

12:41PM  10    PAGE.

12:41PM  11         SO A WEEK HAD GONE BY SINCE THAT LAST EMAIL, AND THIS IS

12:41PM  12    THE EMAIL THAT YOU REPORT UP, WE'RE STILL VOIDING CRITICAL ISE

12:41PM  13    RESULTS FOR THE REDRAW; CORRECT?

12:41PM  14    A.   YES.

12:41PM  15    Q.   AND THAT WAS THE PLAN THAT YOU HAD PUT IN PLACE TWO WEEKS

12:41PM  16    BEFORE THEN; CORRECT?

12:41PM  17    A.   THE VOIDING OF THE CRITICAL POTASSIUMS HAD STARTED WAY

12:41PM  18    BEFORE THAT.

12:41PM  19    Q.   RIGHT?

12:41PM  20    A.   IT WAS THE SODIUMS THAT WE WERE DISCUSSING.

12:41PM  21    Q.   YOU HAD DISCUSSED THE VOIDING OF THE ISE RESULTS JUST A

12:41PM  22    COUPLE WEEKS AGO.

12:41PM  23         DO YOU RECALL THAT?

12:41PM  24    A.   OF THE SODIUM RESULTS.

12:41PM  25    Q.   RIGHT.  AND DO YOU RECALL THAT MR. BALWANI AND MS. HOLMES

| | | |
|---|---|---|
| 12:41PM | 1 | WERE UNAWARE OF THAT AT THAT TIME? |
| 12:41PM | 2 | DO YOU RECALL THAT? |
| 12:42PM | 3 | A.  THEY WERE CLAIMING TO BE UNAWARE, YES.  THEY WERE CLAIMING |
| 12:42PM | 4 | TO BE. |
| 12:42PM | 5 | Q.  BUT IT WAS ENACTED UNDER YOUR PROTOCOL; RIGHT? |
| 12:42PM | 6 | THE COURT:  IS THIS IN EVIDENCE, 228? |
| 12:42PM | 7 | THE CLERK:  NO, AND IT'S NOT ON THE JURORS' DISPLAY. |
| 12:42PM | 8 | MR. WADE:  I'M SORRY.  IT'S NOT 228, IT'S 2228.  I'M |
| 12:42PM | 9 | SORRY.  AND IT IS IN EVIDENCE. |
| 12:42PM | 10 | THE COURT:  THANK YOU. |
| 12:42PM | 11 | BY MR. WADE: |
| 12:42PM | 12 | Q.  DO YOU SEE THAT?  AND THIS WAS THE PLAN YOU PUT IN PLACE |
| 12:42PM | 13 | AS THE CLIA LAB DIRECTOR; CORRECT? |
| 12:42PM | 14 | A.  WHICH PLAN? |
| 12:42PM | 15 | Q.  THE HANDLING OF THESE RESULTS IN THIS MANNER WAS SOMETHING |
| 12:42PM | 16 | THAT YOU HAD PUT IN PLACE AS THE CLIA LAB DIRECTOR; CORRECT? |
| 12:42PM | 17 | A.  YES. |
| 12:42PM | 18 | Q.  OKAY.  AND LET'S GO TO THE NEXT EMAIL. |
| 12:42PM | 19 | AND MR. BALWANI RESPONDS TO YOU; RIGHT? |
| 12:43PM | 20 | DO YOU SEE THAT? |
| 12:43PM | 21 | A.  YES. |
| 12:43PM | 22 | Q.  OKAY.  AND HE SAYS HE HAS VERY HIGH CONFIDENCE IN ALL OF |
| 12:43PM | 23 | THE RESULTS. |
| 12:43PM | 24 | DO YOU SEE THAT? |
| 12:43PM | 25 | A.  YES. |

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2696

12:43PM   1      Q.   AND YOU FORWARD HIS RESPONSE WHERE HE EXPLAINS HIS

12:43PM   2      POSITION UP TO --

12:43PM   3      A.   HIS RESPONSE IS NOT ACCURATE.

12:43PM   4      Q.   I UNDERSTAND YOUR VIEW, SIR.

12:43PM   5           YOU SENT HIS RESPONSE UP TO MS. HOLMES; CORRECT?

12:43PM   6      A.   YES.

12:43PM   7      Q.   AND YOU SAY YOU FIND IT DISINGENUOUS AND THAT HE SHOULD

12:43PM   8      APOLOGIZE; CORRECT?

12:43PM   9      A.   YES, YES.

12:43PM   10     Q.   AND ON THE DAY YOU WERE SENDING THIS, YOU WERE NOT EVEN IN

12:43PM   11     THE OFFICE, WERE YOU, SIR?

12:43PM   12     A.   I BELIEVE I WAS IN THE NEWARK FACILITY.  I DON'T RECALL

12:43PM   13     EXACTLY WHERE I WAS.

12:43PM   14     Q.   YOU ARE AWARE THAT THEY HAVE BADGES AT THERANOS; CORRECT?

12:43PM   15     A.   YES.

12:43PM   16     Q.   AND THEY'RE ABLE TO CHECK WHEN YOU GO IN AND OUT; RIGHT?

12:43PM   17     A.   OH, THE DOOR WAS PROPPED OPEN NEXT TO MY OFFICE SO I

12:43PM   18     WOULDN'T HAVE NEEDED TO BADGE IN.

12:43PM   19     Q.   OKAY.  AND, IN FACT, AFTER THIS DAY --

12:43PM   20     A.   I BELIEVE I WAS IN THE OFFICE ACTUALLY, YEAH.

12:44PM   21     Q.   AND AFTER THIS DAY, YOU DIDN'T GO INTO THE OFFICE AGAIN

12:44PM   22     UNTIL DECEMBER; CORRECT?

12:44PM   23     A.   I DON'T RECALL.  I REMEMBER VISITING FAMILY FOR

12:44PM   24     THANKSGIVING, AND THEN I REMEMBER ANOTHER VISIT AND IT WAS

12:44PM   25     ESSENTIALLY MY LAST DAY, BUT THAT WAS AT THE PALO ALTO OFFICE.

ROSENDORFF CROSS BY MR. WADE (RES.)                          2697

```
12:44PM   1    Q.   RIGHT.  YOU WERE CALLED IN SPECIFICALLY TO HAVE A MEETING

12:44PM   2    WITH MR. BALWANI AND MONA RAMAMURTHY; CORRECT?

12:44PM   3    A.   CORRECT.

12:44PM   4    Q.   AND IN BETWEEN THIS DAY WHEN YOU SENT THIS EMAIL AND THAT

12:44PM   5    DAY, YOU WEREN'T IN THE OFFICE; RIGHT?

12:44PM   6    A.   I RECALL -- AS I SAID, I RECALL TAKING SOME TIME OFF AT

12:44PM   7    THANKSGIVING, AND I INFORMED MANAGEMENT OF MY PLANS.

12:44PM   8    Q.   OKAY.

12:44PM   9    A.   I DON'T REMEMBER THE EXACT DATES.

12:44PM  10    Q.   LET'S LOOK AT 5 --

12:44PM  11         I'D ASK TO DISPLAY 5387C, WHICH IS IN EVIDENCE.

12:45PM  12              THE CLERK:  COUNSEL.

12:45PM  13              MR. WADE:  OH, IT ISN'T.  MY APOLOGIES.  I WOULD

12:45PM  14    MOVE THE ADMISSION OF 5387C, WHICH IS A SUBSET OF THE TEXT

12:45PM  15    MESSAGES THAT THE GOVERNMENT HAS BEEN DISPLAYING.

12:45PM  16              MR. BOSTIC:  HEARSAY, YOUR HONOR, ESPECIALLY WITHOUT

12:45PM  17    KNOWING WHICH SUBSET WE ARE TALKING ABOUT.

12:45PM  18              THE COURT:  MAYBE YOU SHOULD LAY A FOUNDATION.

12:45PM  19              MR. WADE:  WELL, THE FOUNDATION WAS LAID WITH THE

12:45PM  20    OTHER WITNESS, YOUR HONOR.  I CAN'T LAY A FOUNDATION WITH THIS

12:45PM  21    WITNESS.

12:45PM  22              THE COURT:  WELL, I'LL SUSTAIN AN OBJECTION.  I'M

12:45PM  23    NOT SURE WHAT YOU'RE GOING TO.

12:45PM  24              MR. WADE:  OKAY.

12:45PM  25    Q.   ARE YOU AWARE THAT IN THIS TIME PERIOD MR. BALWANI WAS
```

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2698

| 12:45PM | 1 | MAKING REPEATED TRIPS OVER TO THE NEWARK FACILITY? |
|---|---|---|
| 12:45PM | 2 | A.   WHAT TIME PERIOD ARE YOU REFERENCING? |
| 12:45PM | 3 | Q.   THE TIME PERIOD ESSENTIALLY IMMEDIATELY AFTER THIS EMAIL? |
| 12:45PM | 4 | A.   AFTER NOVEMBER 14TH? |
| 12:45PM | 5 | Q.   21ST? |
| 12:45PM | 6 | A.   NOVEMBER 21ST? |
| 12:46PM | 7 | Q.   YEAH. |
| 12:46PM | 8 | A.   I SAW HIM MAYBE ONCE -- |
| 12:46PM | 9 | Q.   OKAY. |
| 12:46PM | 10 | A.   -- WHILE I WAS IN NEWARK, YEAH. |
| 12:46PM | 11 | Q.   OKAY.  DO YOU RECALL HIM HAVING TO COME OVER AND BRING NEW |
| 12:46PM | 12 | STAFF INTO NEW POSITIONS IN THIS EXACT TIME PERIOD AND START TO |
| 12:46PM | 13 | ADDRESS PROBLEMS WITHIN YOUR LAB? |
| 12:46PM | 14 | A.   NO. |
| 12:46PM | 15 | Q.   BECAUSE YOU WEREN'T IN THE LAB, WERE YOU? |
| 12:46PM | 16 | A.   I DON'T RECALL. |
| 12:46PM | 17 | Q.   OKAY. |
| 12:46PM | 18 | A.   ARE YOU SUGGESTING THAT MY ABSENCE SOMEWHAT SHOWS MY LACK |
| 12:46PM | 19 | OF COMMITMENT AS A LAB DIRECTOR? |
| 12:46PM | 20 | Q.   I'M ASKING WHETHER YOU OBSERVED MR. BALWANI GO IN THERE TO |
| 12:46PM | 21 | CLEAN UP WHAT HE BELIEVED TO BE A DISASTER ZONE IN YOUR LAB. |
| 12:46PM | 22 |       DO YOU RECALL THAT? |
| 12:46PM | 23 | A.   I DON'T RECALL. |
| 12:46PM | 24 | Q.   OKAY. |
| 12:46PM | 25 | A.   THE NEWARK LAB HAD ONLY BEEN OPEN FOR MAYBE A FEW WEEKS AT |

ROSENDORFF CROSS BY MR. WADE (RES.)                          2699

12:46PM    1    THIS POINT.

12:46PM    2    Q.   OKAY.  AND YOU TESTIFIED THAT IN YOUR MEETING WITH

12:46PM    3    MR. BALWANI HE ASKED YOU TO STAY AT THE COMPANY; RIGHT?

12:46PM    4    A.   YES.

12:46PM    5    Q.   OKAY.  IN FACT, HE HAD PAPERWORK, HE HAD EXIT PAPERWORK

12:47PM    6    AND CLIA TRANSITION DOCUMENTS THERE FOR YOU AT THAT MEETING;

12:47PM    7    CORRECT?

12:47PM    8    A.   YES.

12:47PM    9    Q.   AND HE TOOK YOU OFF THE LICENSE AT THAT MEETING; CORRECT?

12:47PM   10    A.   HE DID NOT TAKE ME OFF THE ARIZONA LICENSE.

12:47PM   11    Q.   OKAY.

12:47PM   12    A.   I HAD TO FOLLOW UP WITH LFS TO GET MYSELF OFF THE ARIZONA

12:47PM   13    LICENSE.

12:47PM   14    Q.   AND THE POINT WAS, HE WANTED YOU OUT; RIGHT?

12:47PM   15    A.   NO.  HE WAS, HE WAS -- IT WAS CONCILIATORY.  HE WANTED TO

12:47PM   16    CHAT.  AS I TESTIFIED, I REFUSED TO SHAKE HIS HAND.  AT ONE

12:47PM   17    POINT HE SAID THAT I COULD STAY ON IF I WANTED TO AND I SAID

12:47PM   18    NO, IT WASN'T WORTH THE RISK TO MY REPUTATION.

12:47PM   19        AND THEN THE WHOLE TONE OF THE CONVERSATION CHANGED.

12:48PM   20    Q.   SIR, HE HAD THE TERMINATION CERTIFICATE IN HIS HAND TO

12:48PM   21    REMOVE YOU AS CLIA LAB DIRECTOR; CORRECT?

12:48PM   22    A.   I DON'T RECALL.

12:48PM   23    Q.   OKAY.  AND BY THE TIME YOU GOT THERE, SIR, THE COMPANY HAD

12:48PM   24    DISCOVERED THAT YOU HAD STOLEN OVER 150 EMAILS THAT YOU HAD

12:48PM   25    SENT TO YOURSELF; CORRECT?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2700

12:48PM   1    A.   I DID FORWARD MYSELF, CORRECT.

12:48PM   2    Q.   TO YOUR GMAIL ACCOUNT; CORRECT?

12:48PM   3    A.   CORRECT.

12:48PM   4    Q.   AND INCLUDING EXTENSIVE PATIENT HEALTH INFORMATION;

12:48PM   5    CORRECT?

12:48PM   6    A.   I DON'T RECALL.

12:48PM   7    Q.   YOU DON'T RECALL?

12:48PM   8         IF YOU TAKE A LOOK AT 13926.

12:49PM   9    A.   IN THE GOVERNMENT'S BINDER?

12:49PM  10    Q.   ACTUALLY -- I'M SORRY.  LOOK AT 13927 IN THE DEFENSE

12:49PM  11    BINDER.

12:49PM  12    A.   THE VOLUME 2 ENDS AT 13923.

12:49PM  13    Q.   TAKE A LOOK AT THE BACK OF IT.  I THINK YOU'LL FIND IT

12:49PM  14    THERE.  WE ADDED IT TO YOUR BINDER.

12:50PM  15    A.   OKAY.

12:50PM  16    Q.   OKAY.  DO YOU SEE, DO YOU SEE THIS IS AN EMAIL THAT YOU

12:50PM  17    SENT TO YOURSELF IN OCTOBER OF 2014?

12:50PM  18    A.   YES.

12:50PM  19    Q.   AND DO YOU SEE ATTACHED TO IT IS A SPREADSHEET?

12:50PM  20    A.   YES.

12:50PM  21    Q.   AND DO YOU SEE THAT THAT SPREADSHEET CONTAINS EXTENSIVE

12:50PM  22    PATIENT HEALTH INFORMATION?

12:50PM  23    A.   IT CONTAINS PATIENT INFORMATION, YES.

12:50PM  24    Q.   IT CONTAINS TWO PAGES OF DETAILED HEALTH INFORMATION FOR

12:50PM  25    MAYBE 100 PATIENTS?

ROSENDORFF CROSS BY MR. WADE (RES.)                              2701

12:50PM   1      A.   I DELETED THESE EMAILS THE SAME DAY.

12:50PM   2      Q.   WE'LL GET TO THAT.

12:50PM   3      A.   I SEE THAT IT HAS PATIENT INFORMATION, YES.

12:50PM   4      Q.   AND MANY OF THE OTHER EMAILS THAT YOU SENT HAD LAB -- HAD

12:50PM   5      PATIENT LAB INFORMATION RELATING TO THEIR HEALTH; CORRECT?

12:50PM   6      A.   YES.

12:50PM   7      Q.   AND YOU DIDN'T REDACT THEM WHEN YOU SENT THEM TO YOUR

12:50PM   8      GMAIL ACCOUNT, DID YOU?

12:51PM   9      A.   NO.

12:51PM  10      Q.   AND THAT'S A HIPAA VIOLATION, IS IT NOT?

12:51PM  11      A.   I DON'T KNOW.

12:51PM  12      Q.   AND YOU WERE SENDING THIS INFORMATION TO USE IT FOR YOUR

12:51PM  13      COMMERCIAL BENEFIT?

12:51PM  14      A.   NO, NOT AT ALL.

12:51PM  15      Q.   YOU WERE SENDING IT SO YOU COULD TRY TO GET MONEY IN THAT

12:51PM  16      LAWSUIT?

12:51PM  17      A.   NO, NOT AT ALL.

12:51PM  18      Q.   OKAY.  YOU ALSO STOLE SOME TRADE SECRET INFORMATION;

12:51PM  19      RIGHT?

12:51PM  20      A.   I DON'T BELIEVE, NO.

12:51PM  21      Q.   AND YOU STOLE INFORMATION THAT RELATED TO THE COMPANY'S

12:51PM  22      VALIDATION OF CERTAIN METHODS; RIGHT?

12:51PM  23      A.   I DON'T RECALL.

12:51PM  24      Q.   OKAY.  YOU STOLE INFORMATION THAT DESCRIBED THEIR PRIMARY

12:51PM  25      TESTING METHODS?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2702

12:51PM  1    A.   I DON'T RECALL.

12:51PM  2    Q.   OKAY.  AND ARE YOU AWARE THAT THE COMPANY, WHEN THEY

12:51PM  3    DISCOVERED THIS, HAD TO GO THROUGH SPECIAL PROCEDURES WITH

12:51PM  4    SPECIAL COUNSEL TO MAKE -- TO DEAL WITH THE HIPAA ISSUES?

12:51PM  5    A.   I WAS NOT AWARE.

12:51PM  6    Q.   THEY DIDN'T TELL YOU THAT?

12:51PM  7    A.   NO.

12:51PM  8    Q.   OKAY.  AND THEY WERE AWARE OF THIS ON THE DAY THAT YOU

12:51PM  9    WALKED IN THE DOOR; RIGHT?  YOU DISCUSSED THOSE EMAILS WITH

12:51PM 10    MS. RAMAMURTHY; RIGHT?

12:51PM 11    A.   YES.

12:51PM 12    Q.   BUT IT'S YOUR TESTIMONY THAT THEY OFFERED YOU TO COME BACK

12:51PM 13    IN; RIGHT?

12:51PM 14    A.   YES, WHEN I CHATTED WITH SUNNY IN THE BEGINNING, YES.

12:52PM 15    Q.   OKAY.  AND THEY ASKED YOU IF YOU DELETED THE INFORMATION;

12:52PM 16    RIGHT?

12:52PM 17    A.   YES.

12:52PM 18    Q.   BECAUSE THEY WERE DEALING WITH AN IMPORTANT HIPAA

12:52PM 19    VIOLATION HERE; CORRECT?

12:52PM 20    A.   I CAN'T SPECULATE AS TO WHAT THEIR REASONS WERE FOR ME

12:52PM 21    WANTING TO DELETE THE EMAILS.

12:52PM 22    Q.   WELL, THEY TOLD YOU THEY WERE VERY CONCERNED ABOUT THIS;

12:52PM 23    RIGHT?

12:52PM 24    A.   NO, THEY DIDN'T MENTION HIPAA AT THE TIME.

12:52PM 25    Q.   OKAY.  THEY TOLD YOU THAT THEY WERE VERY CONCERNED THAT

ROSENDORFF CROSS BY MR. WADE (RES.)

12:52PM  1      YOU HAD THIS INFORMATION; CORRECT?

12:52PM  2      A.   CORRECT.  THEY WERE VERY WORRIED.

12:52PM  3      Q.   AND THEY ASKED YOU IF YOU DELETED IT; RIGHT?

12:52PM  4      A.   SO WHAT HAPPENED -- I CAN EXPLAIN.

12:52PM  5           SO WHAT HAPPENED IS SUNNY VERY AGGRESSIVELY ORDERED ME TO

12:52PM  6      SIT WITH MONA AND TO GO INTO MY GMAIL ACCOUNT AND DELETE THESE

12:52PM  7      EMAILS WHILE STILL IN THE OFFICE.

12:52PM  8      Q.   HE WANTED YOU TO REMOVE THAT INFORMATION BECAUSE THEY WERE

12:52PM  9      VERY CONCERNED ABOUT IT; RIGHT?

12:52PM  10     A.   YES, THEY WERE.

12:52PM  11     Q.   AND YOU REFUSED TO DO THAT; RIGHT?

12:52PM  12     A.   AT THAT MOMENT, YES.

12:52PM  13     Q.   RIGHT.  AND WHEN YOU WENT BACK, THERE WAS FOLLOWUP ON THIS

12:53PM  14     ISSUE, THIS IMPORTANT ISSUE; RIGHT?

12:53PM  15     A.   WENT BACK WHERE?

12:53PM  16     Q.   WHEN YOU LEFT?  YOU LEFT SHORTLY AFTER THIS; CORRECT?

12:53PM  17     A.   YES, YES.

12:53PM  18     Q.   AND YOU WOULDN'T SIGN A CERTIFICATE THAT YOU HAD COMPLIED

12:53PM  19     WITH HIPAA AND OTHER COMPANY POLICIES AT THAT TIME; RIGHT?

12:53PM  20     A.   I DON'T RECALL.

12:53PM  21     Q.   OKAY.  AND YOU GOT A LAWYER; RIGHT?

12:53PM  22     A.   I ALREADY HAD A LAWYER, RIGHT.

12:53PM  23     Q.   AND YOU REPRESENTED -- YOU ACTUALLY SENT AN EMAIL AFTER

12:53PM  24     THAT TO MS. RAMAMURTHY IN WHICH YOU REPRESENTED THAT YOU

12:53PM  25     DELETED ALL OF THE EMAILS; RIGHT?

12:53PM  1    A.   I BELIEVE I DELETED THEM THE SAME EVENING.  I WENT INTO

12:53PM  2    THE APPLE STORE AND WENT INTO MY GMAIL ACCOUNT AND DELETED ALL

12:53PM  3    OF THE EMAILS.

12:53PM  4    Q.   YOU HAD NOT DELETED ALL OF THE EMAILS AS OF THAT DATE, HAD

12:53PM  5    YOU, SIR?

12:53PM  6    A.   I DON'T RECALL.

12:53PM  7    Q.   YOU DON'T RECALL?

12:53PM  8         YOU DON'T RECALL THAT IT CAME UP WHERE YOU LIED AGAIN AND

12:53PM  9    AGAIN ABOUT HAVING DELETED THOSE EMAILS THROUGH YOUR LAWYER?

12:53PM  10   YOU DON'T RECALL THAT COMING UP?

12:53PM  11   A.   NO, SIR.

12:53PM  12   Q.   OKAY.

12:54PM  13        YOUR HONOR, THIS MAY BE A GOOD TIME FOR COUNSEL TO

12:54PM  14   APPROACH TO DISCUSS THE ISSUE THAT WE DISCUSSED THIS MORNING.

12:54PM  15             THE COURT:  ARE YOU AT THE CONCLUSION OF YOUR

12:54PM  16   EXAMINATION, SAVE FOR THOSE ISSUES?

12:54PM  17             MR. WADE:  YES.

12:54PM  18             THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN, LET ME

12:54PM  19   ASK THE JURY TO -- WE'LL TAKE A BRIEF RECESS.  I NEED TO TALK

12:54PM  20   TO THESE LAWYERS ABOUT SOMETHING.  SO WE'LL TAKE A RECESS.

12:54PM  21        LADIES AND GENTLEMEN OF THE JURY, YOU CAN GO TO THE

12:54PM  22   DELIBERATION ROOM AND WE'LL CALL YOU BACK.

12:55PM  23        DR. ROSENDORFF, YOU MAY STEP DOWN.

12:55PM  24        (JURY OUT AT 12:55 P.M.)

12:55PM  25             THE COURT:  PLEASE BE SEATED.  THE RECORD SHOULD

ROSENDORFF CROSS BY MR. WADE (RES.)                                      2705

12:55PM  1    REFLECT THAT OUR JURY HAS LEFT THE COURTROOM.

12:55PM  2         DR. ROSENDORFF HAS LEFT THE COURTROOM.

12:55PM  3         ALL COUNSEL AND THE DEFENDANT ARE PRESENT.

12:55PM  4         MR. WADE.

12:55PM  5              MR. WADE:  THANK YOU, YOUR HONOR.

12:55PM  6         WE'RE AT THAT POINT WHERE I'VE GONE THROUGH EVERYTHING BUT

12:55PM  7    THE ISSUES THAT WE DISCUSSED THIS MORNING.  I THINK I MADE THE

12:55PM  8    COMMITMENT TO THE COURT THAT I WOULDN'T DO IT IN THE MORNING,

12:56PM  9    BUT WE'RE NOW AT THE POINT WHERE THAT'S ESSENTIALLY ALL I HAVE

12:56PM  10   LEFT.

12:56PM  11             THE COURT:  SO WHAT YOU HAVE LEFT IS THAT YOU WOULD

12:56PM  12   LIKE TO INQUIRE, AS YOU'VE TOLD ME THIS MORNING, REGARDING

12:56PM  13   THESE THREE ISSUES, INVITAE, UBIOME -- IS THAT WHAT IT'S

12:56PM  14   CALLED?

12:56PM  15             MR. WADE:  UBIOME.

12:56PM  16             THE COURT:  -- AND PERKIN ELMER; IS THAT RIGHT?

12:56PM  17             MR. WADE:  YES.

12:56PM  18             THE COURT:  ANYTHING FURTHER ON THOSE TOPICS?

12:56PM  19             MR. WADE:  I HAVE NOTHING FURTHER APART FROM WHAT WE

12:56PM  20   DISCUSSED THIS MORNING.

12:56PM  21             THE COURT:  OKAY.

12:56PM  22        MR. BOSTIC.

12:56PM  23             MR. BOSTIC:  YOUR HONOR, JUST VERY BRIEFLY.

12:56PM  24        I THINK IN LIGHT OF THE BREADTH AND THE STYLE OF THE

12:56PM  25   CROSS-EXAMINATION HERE, IT JUST UNDERLIES THE GOVERNMENT'S

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2706

12:56PM   1     CONCERNS ABOUT WHAT IT WOULD LOOK LIKE TO GO INTO THESE TOPICS.

12:56PM   2          I THINK PROBING THESE TOPICS REALLY IS ASKING FOR

12:56PM   3     EXTRANEOUS ISSUES TO BE LITIGATED IN A WAY THAT THIS TRIAL JUST

12:56PM   4     IS NOT SET UP TO DO.

12:56PM   5          I ALSO, WHEN IT COMES TO EXTRINSIC EVIDENCE AND WHETHER

12:56PM   6     DOCUMENTS THEMSELVES WILL BE ADMITTED INTO EVIDENCE, I HEARD

12:57PM   7     MR. WADE SAY THAT HE DOESN'T NECESSARILY INTEND TO ADMIT MANY

12:57PM   8     OR ANY OF THE DOCUMENTS THAT THE COURT HAS SEEN.

12:57PM   9          BUT THAT DOESN'T ALLEVIATE THE GOVERNMENT'S CONCERNS IN

12:57PM   10    LIGHT OF AN APPROACH THAT MR. WADE HAS BEEN TAKING TO

12:57PM   11    REFRESHING THE WITNESS'S RECOLLECTION WHEREIN HE ASKS THE

12:57PM   12    WITNESS A QUESTION AND THEN TAKES OUT A DOCUMENT AND

12:57PM   13    ESSENTIALLY READS IT INTO EVIDENCE.  THAT IS AS GOOD AS

12:57PM   14    PUBLISHING THE CONTENTS OF THAT DOCUMENT TO THE JURY AND

12:57PM   15    REPRESENTING TO THE JURY THAT THERE IS A PIECE OF EVIDENCE THAT

12:57PM   16    CONTAINS THIS INFORMATION.

12:57PM   17         GIVEN THAT APPROACH, THERE'S NOT MUCH DIFFERENCE BETWEEN I

12:57PM   18    THINK THE ANTICIPATED STYLE OF QUESTIONING AND JUST ADMITTING

12:57PM   19    THOSE DOCUMENTS.

12:57PM   20         SO THAT ONLY INCREASES THE GOVERNMENT'S CONCERNS.

12:57PM   21             THE COURT:  ANYTHING FURTHER?

12:57PM   22             MR. WADE:  I DON'T HAVE ANYTHING FURTHER TO WHAT WE

12:57PM   23    RAISED THIS MORNING APART FROM THERE'S BEEN 702 TYPE OF

12:57PM   24    EVIDENCE THAT HAS BEEN COMING OUT OF THIS WITNESS THROUGHOUT

12:57PM   25    HIS DIRECT EXAMINATION.  THAT PUTS SQUARELY AT ISSUE HIS

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2707

12:58PM  1     COMPETENCE, AND I THINK IT'S NECESSARY FOR MS. HOLMES TO BE

12:58PM  2     ABLE TO CONFRONT THAT.

12:58PM  3          THE COURT:  I THINK SHE'S DONE THAT THROUGH YOU,

12:58PM  4     SIR, FOUR AND A HALF DAYS OF IT.  I THINK THAT'S WHAT YOUR

12:58PM  5     EXAMINATION HAS DONE.

12:58PM  6          YOU WERE GRILLING HIM AND I THINK YOUR EXAMINATION SHOWS

12:58PM  7     THAT YOU WERE CHALLENGING HIS COMPETENCY IN SEVERAL REGARDS.

12:58PM  8     WE'VE HAD FOUR DAYS OF THAT.  I THINK YOU'VE DONE THAT.  YOU'VE

12:58PM  9     ACCOMPLISHED THAT.

12:58PM  10         I THINK WHAT YOU'RE ASKING TO DO IS TO CONTINUE WITH THAT

12:58PM  11    BECAUSE THE COMPETENCY IS AN ISSUE, AS YOU SAY.

12:58PM  12         I LOOK AT THE ISSUES THAT WE DISCUSSED THIS MORNING AND IT

12:58PM  13    DOES SEEM TO BE THAT IT'S REALLY CHARACTER EVIDENCE THAT YOU'RE

12:58PM  14    SEEKING TO ADMIT HERE, AND THAT IS THE CHARACTER FOR COMPETENCY

12:58PM  15    OR LACK THEREOF.

12:58PM  16         WE TALKED ABOUT 608(B) AND SOME OF THESE OTHER AREAS OF

12:58PM  17    ADMISSION FOR THIS TYPE OF EVIDENCE.

12:59PM  18         FIRST OF ALL, LET ME JUST -- I'M SORRY, WAS IT UBIOME,

12:59PM  19    UBIOME?

12:59PM  20              MR. BOSTIC:  UBIOME.

12:59PM  21         THE COURT:  THANK YOU.  AS TO THAT EVIDENCE, AS WE

12:59PM  22    DISCUSSED THIS MORNING, THE EVIDENCE THAT DR. ROSENDORFF WAS

12:59PM  23    THERE, THERE WAS -- I THINK IS THIS THE LAB WHERE THERE WAS A

12:59PM  24    FEDERAL INVESTIGATION, INDICTMENTS, AND A PENDING CRIMINAL

12:59PM  25    CASE.

ROSENDORFF CROSS BY MR. WADE (RES.)                              2708

12:59PM   1           MR. BOSTIC:  CORRECT, YOUR HONOR.

12:59PM   2           THE COURT:  UNDER 403, I THINK THAT'S MORE

12:59PM   3    PREJUDICIAL THAN PROBATIVE TO ALLOW YOU TO EXAMINE ON THAT.

12:59PM   4       THE ISSUES INVOLVED IN THAT CASE, AS I UNDERSTAND FROM OUR

12:59PM   5    CONVERSATION THIS MORNING, WERE CRIMINAL IN NATURE.  IT SOUNDS

12:59PM   6    LIKE THAT WAS A HEALTH CARE FRAUD IN REBILLING THAT DID NOT

12:59PM   7    RELATE TO OR DID NOT HAVE, AT LEAST BASED ON WHAT YOU TOLD ME,

12:59PM   8    DID NOT HAVE ANYTHING TO DO WITH THE OPERATION OF THE LAB PER

12:59PM   9    SE.

12:59PM   10       THE INDICTMENT -- UNLESS YOU TELL ME DIFFERENTLY,

12:59PM   11   MR. BOSTIC AND MR. WADE, THE INDICTMENT WAS NOT AN INDICTMENT

01:00PM   12   ALLEGING ANY FRAUD INVOLVING THE LABORATORY OR ANYTHING ABOUT

01:00PM   13   THE LAB.

01:00PM   14       SO I DO SEE THAT THAT, UNDER A 403 ANALYSIS, THAT -- TO

01:00PM   15   ALLOW YOU, MR. WADE, TO PROBE ON THAT ISSUE AND HIS INVOLVEMENT

01:00PM   16   THERE IS MORE PREJUDICIAL THAN PROBATIVE.

01:00PM   17       IT WOULD CALL THE JURY THEN TO CONJECTURE AND TO SPECULATE

01:00PM   18   THAT PERHAPS HE'S INVOLVED IN A FEDERAL CRIMINAL INVESTIGATION,

01:00PM   19   WHICH FROM WHAT YOU'VE TOLD ME, HE'S NOT.  HE'S NOT, OTHER THAN

01:00PM   20   HIS EMPLOYMENT THERE.  HE'S NOT A SUBJECT TO IT.  I THINK YOU

01:00PM   21   TOLD ME HE MIGHT HAVE BEEN A WITNESS.

01:00PM   22       BUT EVEN IF HE WAS, MR. WADE, THAT'S 403.  THAT'S MORE

01:00PM   23   PREJUDICIAL THAN PROBATIVE.

01:00PM   24       AGAIN, LOOKING AT THE JOB THAT YOU'VE DONE OVER THE LAST

01:00PM   25   FOUR DAYS WITH THIS WITNESS, YOU HAVE CHALLENGED HIS COMPETENCY

ROSENDORFF CROSS BY MR. WADE (RES.)                                2709

01:00PM   1     OVER THOSE DAYS WITH THE VARIOUS DOCUMENTS THAT WE HAVE IN

01:01PM   2     EVIDENCE HERE.

01:01PM   3          SO AS TO THAT, I WOULD NOT ALLOW YOU TO GO INTO ANY

01:01PM   4     EXAMINATION ON THAT.

01:01PM   5          THE INVITAE -- I THINK I'M PRONOUNCING THAT CORRECTLY, I

01:01PM   6     HOPE I AM -- IT SEEMS LIKE YOU WANT TO GO INTO THAT ALSO, AND

01:01PM   7     THAT'S ANOTHER AREA WHERE YOU WISH TO PROBE HIS COMPETENCY OF

01:01PM   8     THE -- OF HIS PERFORMANCE THERE AS LAB DIRECTOR, EITHER

01:01PM   9     PART-TIME OR NOT, WHATEVER HIS ENGAGEMENT IS.

01:01PM  10          AGAIN, THIS GOES TO THE -- I BELIEVE IT GOES TO A

01:01PM  11     CHARACTER QUALITY AND IT'S, FROM THE COURT'S PERSPECTIVE, I

01:01PM  12     BELIEVE IT'S INAPPROPRIATE CHARACTER EVIDENCE FOR WHAT YOU'RE

01:01PM  13     SEEKING TO ACCOMPLISH.

01:01PM  14          LET ME TURN, THOUGH, TO THE -- IS IT PERKIN ELMER?

01:01PM  15               MR. WADE:  CORRECT.

01:01PM  16               THE COURT:  THAT INVOLVES THE CMS INSPECTION.

01:01PM  17          AND THIS IS A CLOSER CASE.  AND THIS IS SOMETHING THAT,

01:02PM  18     MR. WADE, AN AREA, PARDON ME, WHERE I DO THINK THE COURT WOULD

01:02PM  19     PERMIT YOU SOME LIMITED, LIMITED EXAMINATION.

01:02PM  20          THE FACTORS HERE ARE THE FACT THAT AS I UNDERSTAND IT, THE

01:02PM  21     CMS INSPECTORS IN THERANOS WERE THE SAME INSPECTORS WHO WERE

01:02PM  22     INVOLVED IN THE PERKIN ELMER SITUATION.

01:02PM  23          THIS GOES, MR. WADE, TOWARDS YOUR BIAS, YOUR BIAS ISSUE.

01:02PM  24          I DO THINK THERE MIGHT BE SOME RELEVANCE AS TO POTENTIAL

01:02PM  25     ISSUE OF BIAS.  I DO BELIEVE THAT THE DEFENSE WOULD BE

01:02PM  1    PERMITTED AND IT'S APPROPRIATE TO ALLOW THE DEFENSE TO PROBE,

01:02PM  2    TO PROBE AN ISSUE OF BIAS.

01:02PM  3        WE'VE TALKED AND WE ALL KNOW THAT BIAS IS ALWAYS RELEVANT,

01:02PM  4    BUT -- AND I DO THINK FOR MS. HOLMES TO PRESENT HER DEFENSE, IF

01:02PM  5    SHE WISHES TO DO THAT, I DO THINK IT'S APPROPRIATE TO ALLOW THE

01:02PM  6    DEFENSE TO PROBE ANY ISSUES OF BIAS THAT MAY EXIST.

01:03PM  7        THE BIAS THAT IS REPRESENTED BY MR. WADE IS THAT THESE TWO

01:03PM  8    INSPECTORS ARE THE SAME INSPECTORS THAT WERE INVOLVED IN

01:03PM  9    THERANOS AND THEY'RE ALSO INVOLVED IN THE INSPECTION AT

01:03PM  10   PERKIN ELMER.

01:03PM  11       BUT, MR. WADE, THIS IS AN AREA WHERE YOU'LL, YOU'LL BE

01:03PM  12   PERMITTED TO PROBE, BUT YOU HAVE TO PROBE LIGHTLY.  THE ISSUE

01:03PM  13   REALLY IS WHETHER OR NOT DR. ROSENDORFF, WHETHER HIS TESTIMONY

01:03PM  14   HERE IS IN ANY WAY SHAPED, FOCUSSED, HIS ANSWERS TO YOUR

01:03PM  15   QUESTIONS AND THE GOVERNMENT QUESTIONS ARE IN ANY WAY FOCUSSED

01:03PM  16   OR SHAPED BY A PERSONAL INTEREST, BIAS, SUCH THAT AS YOU TOLD

01:03PM  17   ME THIS MORNING, SUCH THAT IT MIGHT IMPAIR EITHER HIS FUTURE

01:03PM  18   CAREER OR ANY LIABILITY HE MIGHT HAVE.  THAT'S A BROAD, A BROAD

01:04PM  19   AREA.

01:04PM  20       BUT I'M NOT GOING TO PERMIT YOU TO GET INTO, GET INTO THE

01:04PM  21   NATURE OF ANY INVESTIGATION, THE QUALITY OF THE INVESTIGATION,

01:04PM  22   HIS SPECIFIC ROLE IN IT.

01:04PM  23       I THINK THEN WE GET INTO WHAT 608(B), AND I DON'T MEAN TO

01:04PM  24   CONFLATE THESE TWO, BUT WHAT 608(B) -- THE PURPOSE OF 608(B) IS

01:04PM  25   TO AVOID MINI TRIALS AND TO AFFORD EFFICIENCY OF THE

ROSENDORFF CROSS BY MR. WADE (RES.)                              2711

01:04PM   1     PRESENTATION OF THE EVIDENCE.

01:04PM   2         SO I WILL PERMIT YOU TO PROBE THE BIAS ISSUE, BUT NOT TO

01:04PM   3     GET INTO -- I'M GOING TO -- I'M JUST GOING TO BE CANDID WITH

01:04PM   4     YOU.  I'M GOING TO SHUT YOU DOWN IF YOU GO A LITTLE TOO FAR AS

01:04PM   5     TO ANY SPECIFICS.

01:04PM   6         I'M GOING TO GIVE YOU SOME LATITUDE, AND I THINK YOU'RE

01:04PM   7     PERMITTED SOME LATITUDE ABOUT THAT TO DEVELOP THE BIAS, AND

01:04PM   8     WE'LL TAKE ANOTHER TEN MINUTES AND ALLOW YOU TO COLLECT YOUR

01:04PM   9     THOUGHTS ON THAT AND HOW YOU WANT TO APPROACH THAT.

01:05PM  10             MR. WADE:  AND IF I COULD JUST INQUIRE SO I DO NOT

01:05PM  11     CROSS THE LINE THAT THE COURT HAS IN MIND.

01:05PM  12             THE COURT:  SURE.

01:05PM  13             MR. WADE:  THERE ARE CERTAIN CONCLUSIONS THAT WERE

01:05PM  14     REACHED AND NOTICES GIVEN BY THE REGULATORS THAT SORT OF

01:05PM  15     TRIGGER THOSE CONSEQUENCES AND HIS RECOGNITION OF THOSE

01:05PM  16     CONSEQUENCES, AND SO MY INTENT WOULD BE TO NOT GO IN DETAIL

01:05PM  17     INTO ANY OF THOSE.

01:05PM  18         MY INTENT WOULD BE TO NOT INTRODUCE THE DOCUMENTS

01:05PM  19     THEMSELVES, BUT JUST TO NOTE THAT -- BECAUSE THAT'S THE REASON

01:05PM  20     WHY HE -- THAT'S THE REASON WHY HE IS IN JEOPARDY RIGHT NOW.

01:05PM  21             THE COURT:  WELL, MAYBE, MAYBE NOT.  YOUR

01:05PM  22     PERSPECTIVE IS HE'S IN JEOPARDY.  MAYBE HE FEELS HE'S IN

01:05PM  23     JEOPARDY.  THAT'S THE REASON FOR THE QUESTIONS, ISN'T IT?

01:05PM  24         AND THAT IS -- PERHAPS THAT IS THE WAY TO ASK THE

01:05PM  25     QUESTIONS.  I'M NOT GOING TO TELL A SEASONED VETERAN LIKE YOU

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2712

01:06PM   1    HOW TO PUT YOUR CASE ON.

01:06PM   2              MR. WADE:  UNDERSTOOD.

01:06PM   3              THE COURT:  BUT THE QUESTION WAS, DO YOU HAVE

01:06PM   4    CONCERNS?  WAS THERE AN INVESTIGATION FROM CMS AT PERKINS?  DID

01:06PM   5    IT INVOLVE THE SAME INSPECTORS HERE?  I DON'T KNOW, MAYBE

01:06PM   6    THAT'S EVEN A LITTLE CLOSER.  BUT THAT'S THE ISSUE.

01:06PM   7              MR. WADE:  OKAY.

01:06PM   8              THE COURT:  AND THEN AS A RESULT OF THAT INSPECTION,

01:06PM   9    DO YOU FEEL SOME ANXIETY ABOUT -- HAS THAT DIRECTED YOU?  HAS

01:06PM  10    THAT FOCUSSED YOU?

01:06PM  11        AGAIN, I AM NOT TELLING YOU WHAT QUESTIONS TO ASK.  I HOPE

01:06PM  12    YOU SEE THE GENERAL AREA, THOUGH.

01:06PM  13              MR. WADE:  I DO.

01:06PM  14              THE COURT:  BECAUSE THAT'S REALLY THE ISSUE.  THE

01:06PM  15    FACT THAT THERE WAS AN INSPECTION AT THIS LAB AND THE FACT THAT

01:06PM  16    THE SAME INSPECTORS WERE INVOLVED IN THERANOS, THERE'S SOME

01:06PM  17    SYMBIOSIS, SOME SYMBIOTIC RELATIONSHIP AT LEAST BY EMPLOYMENT.

01:06PM  18    MAYBE IT'S JUST PURE COINCIDENCE.

01:06PM  19        BUT NONETHELESS, I THINK BECAUSE OF WHAT IT IS, I'M GOING

01:06PM  20    TO ALLOW YOU TO PROBE THAT, BUT NOT TO GET INTO, ISN'T IT A

01:06PM  21    FACT THAT THE LAB WAS ALSO ENGAGED IN X, Y, Z?  OR THEIR LAB

01:07PM  22    WAS THIS?

01:07PM  23        YOU USED THE WORD "CHAOS" I THINK EARLIER TO DESCRIBE

01:07PM  24    NEWARK OR SOMETHING.

01:07PM  25              MR. WADE:  NOT NEWARK.  I THINK I WAS DESCRIBING

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2713

01:07PM  1    WHAT THE TEXT MESSAGES WITH WHICH MY UNDERSTANDING WAS THAT WE

01:07PM  2    HAD THE FOUNDATION.

01:07PM  3                THE COURT:  I'M JUST USING THAT AS AN EXAMPLE.  I'M

01:07PM  4    NOT CRITICIZING YOUR WORD CHOICE.

01:07PM  5                MR. WADE:  NO.  I UNDERSTAND.

01:07PM  6                THE COURT:  BUT I AM GOING TO PERMIT YOU TO DO THAT.

01:07PM  7    I THINK THAT'S RELEVANT FOR EXPLORATION OF WHETHER OR NOT THIS

01:07PM  8    WITNESS HAS ANY BIAS, WHETHER OR NOT THIS WITNESS'S RESPONSES

01:07PM  9    OVER THE LAST DAYS HAVE BEEN THE RESULT OF CONCERN.

01:07PM 10         THAT'S -- AND HIS ANSWERS WILL BE WHAT THEY ARE, AND THE

01:07PM 11    JURY CAN CERTAINLY GIVE IT WHATEVER WEIGHT THEY FEEL IS

01:07PM 12    APPROPRIATE.  THAT'S THE PURPOSE FOR BIAS.

01:07PM 13         LET ME ALSO INDICATE THERE ON THE RECORD -- AND I

01:07PM 14    MENTIONED I STARTED MY COMMENTS WITH YOUR FOUR AND A HALF DAYS

01:08PM 15    OF EXAMINATION, THE ISSUE OF CUMULATIVE COMES UP ALSO.  THE

01:08PM 16    PURPOSE TO EXAMINE ON THESE ISSUES WAS TO DIMINISH THE

01:08PM 17    CREDIBILITY OF THIS PARTICULAR WITNESS.

01:08PM 18         I THINK YOU'VE ACCOMPLISHED THAT FOR THE JURY OVER THE

01:08PM 19    LAST FOUR DAYS, AT LEAST SUCH THAT THEY CAN WEIGH IT AND GIVE

01:08PM 20    IT WHATEVER WEIGHT THEY THINK IS APPROPRIATE.

01:08PM 21         SO THERE IS SOME CUMULATIVE NATURE AS WELL IN ALL OF THIS,

01:08PM 22    WHICH ALSO IMPARTS A 403 ANALYSIS AS TO THE ADDITIONAL TIME

01:08PM 23    THAT WOULD BE REQUIRED TO PROBE INTO OTHER MATTERS, AND THAT'S

01:08PM 24    REALLY MORE TOWARDS THE OTHER TWO EXAMPLES WE TALKED ABOUT, BUT

01:08PM 25    IT ALSO TOUCHES ON THIS AS WELL, THOUGH.

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2714

01:08PM   1        SO THAT IS MY POSITION ON THIS AREA.

01:08PM   2        IS THAT HELPFUL TO YOU?

01:08PM   3            MR. WADE:  I DO UNDERSTAND, YOUR HONOR.

01:08PM   4        OBVIOUSLY WITH RESPECT TO THE BREADTH OF THE EXAMINATION,

01:08PM   5    YOU KNOW, WE HAVE SUBSTANTIAL CONCERNS ABOUT WHAT WAS PULLED

01:08PM   6    OUT ABOUT IN DIRECT UNDER NAPUE, N-A-P-U-E, AND OTHERWISE, AND

01:09PM   7    SO WE FELT WE NEEDED THE BREADTH THAT WE DID IN ORDER TO

01:09PM   8    CLARIFY THE RECORD.

01:09PM   9            THE COURT:  I HOPE YOU DON'T TAKE ME BEING CRITICAL

01:09PM  10    OF YOU DOING WHAT YOU DID, BUT -- AND I'M NOT.  I'M JUST

01:09PM  11    OBSERVING THAT WE HAD FOUR DAYS AND YOU WERE, YOU KNOW, YOU

01:09PM  12    WERE VERY THOROUGH WITH YOUR EXAMINATION, YOUR

01:09PM  13    CROSS-EXAMINATION.

01:09PM  14        SO THAT'S A FACTOR ALSO IN THIS ANALYSIS, AGAIN, GOING TO

01:09PM  15    THE CUMULATIVE NATURE OF IT, THE 403 TIME ISSUE.

01:09PM  16        MR. BOSTIC, ANYTHING FURTHER?

01:09PM  17            MR. BOSTIC:  NOTHING FURTHER, YOUR HONOR, EXCEPT TO

01:09PM  18    SAY THAT I ANTICIPATE, HAVING NOT DISCUSSED THESE ISSUES WITH

01:09PM  19    THIS WITNESS AT LENGTH, OR PERHAPS AT ALL, I'M NOT SURE WHAT

01:09PM  20    THE WITNESS WILL ANSWER IN RESPONSE TO MR. WADE'S QUESTIONS.

01:09PM  21        BUT I ANTICIPATE THAT THEY WILL NOT BE THE ANSWERS THAT

01:09PM  22    ARE SATISFACTORY TO MR. WADE, TO BE FRANK.

01:09PM  23        I UNDERSTAND THE COURT'S RULING TO FORECLOSE ANY EFFORT BY

01:10PM  24    THE DEFENSE TO HIGHLIGHT OR EMPHASIZE THE SEVERITY OF THE CMS

01:10PM  25    INSPECTION OR FINDINGS AT PERKIN ELMER IN AN EFFORT TO IMPEACH

01:10PM  1      THAT ANSWER.

01:10PM  2          BUT I'M GUIDED BY THE COURT, AS I'M SURE THE DEFENSE IS.

01:10PM  3              MR. WADE:  HE FACES THOSE CONSEQUENCES BECAUSE OF

01:10PM  4      THE CIRCUMSTANCES THAT THEY'RE IN AS A MATTER OF LAW, SO --

01:10PM  5      WHICH HE CLARIFIED IN A DIFFERENT CONVERSATION WITH

01:10PM  6      MR. YAMAMOTO, NOT THE ONE THAT I EXPLORED WITH HIM HERE, BUT

01:10PM  7      WITH RESPECT TO PERKIN ELMER.  THERE'S AN EMAIL THAT DOCUMENTS

01:10PM  8      HIS AWARENESS AND CONCERN ABOUT THE FACT THAT HE COULD LOSE HIS

01:10PM  9      LICENSE.

01:10PM  10             THE COURT:  SURE.  AND THAT'S -- BUT, MR. WADE, YOU

01:10PM  11     DON'T HAVE TO GET INTO ALL OF THE NUANCES OF WHAT IT WAS.

01:10PM  12     ISN'T IT A FACT THAT THE LAB HAD 47, 50 DEFICIENCIES?  YOU WERE

01:10PM  13     AWARE OF IT?  YOU KNEW, ET CETERA, ET CETERA.  THAT'S PILING

01:10PM  14     ON.  THAT'S NOT WHAT THIS IS ABOUT.

01:11PM  15         THIS IS CMS DID AN INVESTIGATION, MR. YAMAMOTO WAS THERE,

01:11PM  16     HE'S THE SAME GENTLEMAN THAT YOU TALKED WITH AT THERANOS, AND

01:11PM  17     NOW HE WAS INVOLVED IN AN INSPECTION OF SOME SORT.  HE WAS

01:11PM  18     INVOLVED WITH YOUR CURRENT EMPLOYER, DOES THAT CAUSE YOU ANY --

01:11PM  19     AND THEN YOU'LL FILL IN THE BLANK, I'M SURE, WITH THE

01:11PM  20     APPROPRIATE QUESTION.

01:11PM  21         BUT NOT GOING TO GET INTO THE DETAILS OF THAT.  I

01:11PM  22     UNDERSTAND THAT YOU WOULD LIKE TO GET INTO THE FOUNDATION OF

01:11PM  23     ALL OF THAT, BUT WHAT IS REALLY INVOLVED HERE IS THE CMS

01:11PM  24     CHARACTERS ARE THE SAME AS IN THERANOS.  HE HAS SOME INTIMACY

01:11PM  25     WITH THEM IN HIS FORMER EMPLOYMENT, HE NOW HAS RENEWED THAT

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2716

01:11PM   1    INTIMACY IN HIS CURRENT EMPLOYMENT.

01:11PM   2         HE MAY HAVE CONCERNS ABOUT HIS FUTURE EMPLOYMENT, AND HAS

01:11PM   3    THAT IN ANY WAY SHAPED ANY OF THE TESTIMONY THAT HE'S GIVEN

01:11PM   4    TODAY SUCH THAT HE FAVORS THE GOVERNMENT, SUCH THAT HE FAVORS

01:11PM   5    THERANOS?

01:11PM   6         I THINK IT'S PRETTY STRAIGHTFORWARD, I HOPE.  I THINK IT

01:12PM   7    IS.

01:12PM   8              MR. WADE:  I UNDERSTAND THE DIRECTION OF THE COURT.

01:12PM   9              THE COURT:  BUT WE'LL GIVE YOU TEN MINUTES TO PUT IT

01:12PM  10    ALL TOGETHER.

01:12PM  11              MR. WADE:  GREAT.  THANK YOU, YOUR HONOR.

01:12PM  12              THE COURT:  GREAT.  THANK YOU.

01:12PM  13              THE CLERK:  COURT IS IN RECESS.

01:12PM  14              THE COURT:  AND THEN -- I'M SORRY.

01:12PM  15         MR. BOSTIC, DO YOU THEN BEGIN YOUR REDIRECT EXAMINATION

01:12PM  16    THIS AFTERNOON?

01:12PM  17              MR. BOSTIC:  YES, YOUR HONOR.

01:12PM  18              THE COURT:  GREAT.  THANK YOU VERY MUCH.

01:12PM  19         (RECESS FROM 1:12 P.M. UNTIL 1:39 P.M.)

01:39PM  20         (JURY IN AT 1:39 P.M.)

01:39PM  21              THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

01:39PM  22    THE RECORD.

01:39PM  23         ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

01:39PM  24    THE WITNESS IS ON THE STAND.

01:39PM  25         DO YOU HAVE SOME ADDITIONAL QUESTIONS, MR. WADE?

ROSENDORFF CROSS BY MR. WADE (RES.)                                    2717

01:39PM   1                    MR. WADE:  YES, YOUR HONOR, JUST A FEW MORE

01:39PM   2      QUESTIONS.

01:39PM   3                    THE COURT:  SURE.

01:39PM   4      BY MR. WADE:

01:39PM   5      Q.   DR. ROSENDORFF, I BELIEVE YOU'VE BEEN A LAB DIRECTOR FOR

01:39PM   6      ABOUT 13 YEARS.

01:39PM   7      A.   CORRECT.

01:39PM   8      Q.   SINCE ABOUT 2008?

01:39PM   9      A.   CORRECT.

01:39PM  10      Q.   AND DURING THAT TIME, WE'VE TALKED ABOUT HOW YOU

01:39PM  11      FREQUENTLY WORKED IN THE CLIA ENVIRONMENT; RIGHT?

01:40PM  12      A.   YES.

01:40PM  13      Q.   WHERE THE REGULATORS ASSESS THE PERFORMANCE OF THE LAB

01:40PM  14      UNDER THE CLIA REGULATIONS?

01:40PM  15      A.   CORRECT.

01:40PM  16      Q.   AND WE'VE TALKED ABOUT THOSE REGULATIONS AT LENGTH IN THIS

01:40PM  17      EXAMINATION; CORRECT?

01:40PM  18      A.   YES.

01:40PM  19      Q.   AND AS PART OF THE WORK -- AS PART OF THE ENFORCEMENT OF

01:40PM  20      THESE CLIA REGULATIONS, OCCASIONALLY THE CENTER FOR THE CMS

01:40PM  21      WILL DO INSPECTIONS; RIGHT?

01:40PM  22      A.   YES.

01:40PM  23      Q.   AND YOU'VE HAD EXPERIENCE WITH DIFFERENT INSPECTIONS OVER

01:40PM  24      THE YEARS; CORRECT?

01:40PM  25      A.   YES.

ROSENDORFF CROSS BY MR. WADE (RES.)                                2718

01:40PM 1    Q.  AND ON OTHER OCCASIONS YOU'D INTERACT WITH REGULATORS;

01:40PM 2    CORRECT?

01:40PM 3    A.  YES.

01:40PM 4    Q.  LIKE WE JUST TALKED ABOUT YOUR INTERACTIONS WITH

01:40PM 5    MR. YAMAMOTO.

01:40PM 6       DO YOU RECALL?

01:41PM 7    A.  I RECALL PLACING A PHONE CALL TO CMS AND SPEAKING TO

01:41PM 8    MR. YAMAMOTO WHILE I WAS AT THERANOS.

01:41PM 9    Q.  RIGHT, RIGHT.  WE WERE JUST TALKING ABOUT THAT IN YOUR

01:41PM 10   PRIOR TESTIMONY.

01:41PM 11      DO YOU RECALL THAT?

01:41PM 12   A.  YES.

01:41PM 13   Q.  OKAY.  THE CURRENT LAB, I THINK YOU MENTIONED YESTERDAY,

01:41PM 14   IS A LAB THAT IS ALSO IN CALIFORNIA; IS THAT RIGHT?

01:41PM 15   A.  CORRECT.

01:41PM 16   Q.  AND REMIND ME WHERE THAT LAB IS LOCATED?

01:41PM 17   A.  IT IS LOCATED IN VALENCIA, CALIFORNIA.

01:41PM 18   Q.  OKAY.  AND VALENCIA, IS THAT JUST NORTH OF L.A.?

01:41PM 19   A.  CORRECT.

01:41PM 20   Q.  AN HOUR, HOUR AND A HALF OR SO?

01:41PM 21   A.  CORRECT.

01:41PM 22   Q.  AND AS PART OF -- AND YOU SERVE AS THE CLIA LAB DIRECTOR?

01:41PM 23   A.  CORRECT.

01:41PM 24   Q.  AND AS PART OF YOUR SERVICE AS THE CLIA LAB DIRECTOR, CMS

01:41PM 25   SUBJECTED THAT LAB TO A COMPLAINT SURVEY?

01:42PM  1    A.   CORRECT.

01:42PM  2    Q.   AND AS PART OF THAT, THEY CAME IN AND DID THE KIND OF

01:42PM  3    INVESTIGATION THAT WE'VE TALKED ABOUT THE OTHER DAY, IS THAT

01:42PM  4    FAIR, WHEN WE TALKED ABOUT THE 2013 INSPECTION AT THERANOS?

01:42PM  5    A.   NO.

01:42PM  6         CMS CAME IN EARLIER THIS YEAR.  MOST OF THE PROCEEDINGS

01:42PM  7    WERE DOCUMENT REVIEW AND REVIEW OF THE LIS.

01:42PM  8         IT WAS MR. YAMAMOTO AND ANOTHER INDIVIDUAL WHO WAS

01:42PM  9    ASSISTING HIM.

01:42PM  10   Q.   IS THAT JOSHUA COHEN?

01:42PM  11   A.   YES.

01:42PM  12   Q.   OKAY.  AND YOU UNDERSTAND THE HEAD OF THE REGION IS

01:42PM  13   KAREN FULLER?

01:42PM  14   A.   YES.

01:42PM  15   Q.   AND SHE'S SOMEONE WHO YOU AT LEAST RECEIVE CORRESPONDENCE

01:42PM  16   FROM IN CONNECTION WITH THAT SURVEY?

01:43PM  17   A.   THE CORRESPONDENCE WAS FROM -- YES, YES, YES.

01:43PM  18   Q.   AND SHE'S THE REGIONAL DIRECTOR FOR THE WESTERN STATES?

01:43PM  19   A.   OKAY.

01:43PM  20   Q.   OKAY.  AFTER THAT -- AFTER THAT INSPECTION, THEY PROVIDED

01:43PM  21   YOU, THEY PROVIDED YOU A NOTICE IDENTIFYING SOME MATTERS; IS

01:43PM  22   THAT RIGHT?

01:43PM  23   A.   YES.

01:43PM  24   Q.   AND THAT WAS IN JULY -- INITIALLY THEY PROVIDED A NOTICE

01:43PM  25   IN MAY OF '21?

| | | |
|---|---|---|
| 01:43PM | 1 | A.  I BELIEVE SO. |
| 01:43PM | 2 | Q.  MAY 6TH.  DOES THAT SOUND FAMILIAR? |
| 01:43PM | 3 | AND THERE WAS SOME RESPONSES WHERE YOU PROVIDED |
| 01:43PM | 4 | INFORMATION TO CMS? |
| 01:43PM | 5 | A.  YES. |
| 01:43PM | 6 | Q.  AND THEN THEY PROVIDED ANOTHER NOTICE IN JULY OF 2021. |
| 01:43PM | 7 | DO YOU RECALL THAT? |
| 01:44PM | 8 | A.  YES. |
| 01:44PM | 9 | Q.  AND YOU'RE AWARE THAT IF -- LET ME STRIKE THAT. |
| 01:44PM | 10 | IN CONNECTION WITH THAT NOTICE, THAT CREATED SOME |
| 01:44PM | 11 | IMPLICATIONS FOR YOU PERSONALLY; IS THAT RIGHT? |
| 01:44PM | 12 | A.  I DON'T HAVE THE TEXT OF THE JULY NOTICE IN FRONT OF ME SO |
| 01:44PM | 13 | I CAN'T COMMENT ON THAT, YEAH. |
| 01:44PM | 14 | THE COURT:  I DON'T THINK YOU NEED THAT. |
| 01:44PM | 15 | MR. WADE:  I DON'T THINK WE NEED THAT. |
| 01:44PM | 16 | Q.  DO YOU RECALL AFTER YOU GOT THE NOTICE YOU HAD A TELEPHONE |
| 01:44PM | 17 | CONVERSATION WITH MR. YAMAMOTO ABOUT POSSIBLE IMPLICATIONS -- |
| 01:44PM | 18 | A.  YES, YES. |
| 01:44PM | 19 | Q.  -- FOR YOU PERSONALLY? |
| 01:44PM | 20 | A.  YES, I DID.  YEAH. |
| 01:44PM | 21 | Q.  AND IN CONNECTION WITH THAT CONVERSATION WITH |
| 01:45PM | 22 | MR. YAMAMOTO, DID YOU UNDERSTAND DEPENDING UPON THE FINAL |
| 01:45PM | 23 | OUTCOME OF THOSE MATTERS THAT YOU COULD -- YOUR LICENSE TO BE A |
| 01:45PM | 24 | LAB DIRECTOR COULD BE SUSPENDED? |
| 01:45PM | 25 | A.  YES, FOR AT LEAST TWO YEARS, CORRECT. |

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2721

| | | |
|---|---|---|
| 01:45PM | 1 | MR. WADE:  I HAVE NO FURTHER QUESTIONS. |
| 01:45PM | 2 | THE COURT:  THANK YOU. |
| 01:45PM | 3 | MR. BOSTIC, DO YOU HAVE REDIRECT? |
| 01:45PM | 4 | MR. BOSTIC:  I DO, YOUR HONOR. |
| 01:45PM | 5 | MAY I PROCEED, YOUR HONOR? |
| 01:45PM | 6 | THE COURT:  YES, PLEASE. |

01:45PM 7                        **REDIRECT EXAMINATION**

01:45PM 8     BY MR. BOSTIC:

01:45PM 9     Q.   GOOD AFTERNOON, DR. ROSENDORFF.

01:45PM 10    A.   GOOD AFTERNOON, SIR.

01:45PM 11    Q.   I'D LIKE TO ASK YOU SOME FOLLOW-UP QUESTIONS ABOUT SOME

01:45PM 12    TOPICS THAT YOU DISCUSSED WITH MR. WADE.

01:46PM 13        FIRST, DO YOU RECALL QUESTIONS THAT MR. WADE ASKED YOU

01:46PM 14    ABOUT PREVIOUS MEETINGS THAT YOU HAD WITH THE GOVERNMENT?

01:46PM 15    A.   YES.

01:46PM 16    Q.   AND WHEN YOU MET WITH THE GOVERNMENT, WERE THOSE MEETINGS

01:46PM 17    VOLUNTARY OR WERE YOU FORCED TO MEET WITH THE GOVERNMENT?

01:46PM 18    A.   VOLUNTARY.

01:46PM 19    Q.   AND WHY DID YOU DECIDE TO MEET WITH THE GOVERNMENT AND

01:46PM 20    SHARE INFORMATION ABOUT THERANOS?

01:46PM 21    A.   I WANTED TO BE FULLY COOPERATIVE WITH THE GOVERNMENT AND

01:46PM 22    THEIR INVESTIGATION.  I WANTED THE STORY TO COME OUT.  I WANTED

01:46PM 23    JUSTICE TO BE SERVED, AND I BASICALLY SAW IT AS A PUBLIC

01:46PM 24    SERVICE IN ESSENCE TO COOPERATE WITH THE GOVERNMENT AND IN ANY

01:46PM 25    WAY THAT I COULD, YEAH.

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2722

01:46PM  1    Q.   I WANT YOU TO THINK ABOUT ALL OF THOSE MEETINGS AS A

01:46PM  2    WHOLE.

01:46PM  3         DO YOU HAVE THOSE MEETINGS IN YOUR MIND?

01:46PM  4    A.   YES.

01:46PM  5    Q.   AT ANY POINT DURING THOSE MEETINGS DID ANY REPRESENTATIVE

01:46PM  6    OF THE GOVERNMENT TELL YOU HOW TO TESTIFY AT TRIAL OR ATTEMPT

01:47PM  7    TO SHAPE YOUR TESTIMONY?

01:47PM  8    A.   NO, NOT AT ALL.

01:47PM  9    Q.   DID ANYONE FROM THE GOVERNMENT AT ANY OF THOSE MEETINGS

01:47PM 10    MAKE ANY PROMISES TO YOU ABOUT BENEFITS THAT YOU MIGHT OBTAIN

01:47PM 11    IF YOU TESTIFIED IN A CERTAIN WAY DURING THIS TRIAL?

01:47PM 12    A.   NO, NOT AT ALL.

01:47PM 13         ON THE CONTRARY, I'VE MADE SACRIFICES IN THE PROCESS.

01:47PM 14    Q.   AND WHAT SACRIFICES ARE YOU REFERRING TO?

01:47PM 15    A.   THE STRESS OF MEETING WITH THE GOVERNMENT, TRAVELLING TO

01:47PM 16    MEET WITH THE GOVERNMENT FROM SAN DIEGO TO TALK TO THE S.E.C.

01:47PM 17    IN SAN FRANCISCO, ESSENTIALLY HAVING THIS ISSUE ON MY MIND,

01:47PM 18    HAVING TO RELIVE VERY UNPLEASANT EXPERIENCES WHILE AT THERANOS,

01:48PM 19    ET CETERA, THE MEDIA ATTENTION, ET CETERA, YEAH.

01:48PM 20    Q.   OKAY.  WE CAN MOVE ON FROM THAT TOPIC.

01:48PM 21         DURING THE CROSS-EXAMINATION YOU WERE ASKED SOMETHING TO

01:48PM 22    THE EFFECT OF WHETHER YOU KNOWINGLY RELEASED TEST RESULTS AT

01:48PM 23    THERANOS.

01:48PM 24         DO YOU REMEMBER THAT QUESTION?

01:48PM 25    A.   YES.

ROSENDORFF REDIRECT BY MR. BOSTIC                                2723

01:48PM   1    Q.   AND WHAT WAS YOUR ANSWER TO THAT QUESTION?

01:48PM   2    A.   NO.

01:48PM   3    Q.   IN YOUR EXPERIENCE AS A LAB DIRECTOR, IS IT ALWAYS

01:48PM   4    POSSIBLE TO IDENTIFY INACCURATE TEST RESULTS BEFORE THEY WENT

01:48PM   5    OUT?

01:48PM   6    A.   NO.  IN THE VAST, VAST MAJORITY OF THE CASES PROBLEMS COME

01:48PM   7    TO LIGHT AFTER THE RESULTS HAVE BEEN REPORTED.

01:48PM   8         AS A LAB DIRECTOR ONE IMPLEMENTS ALL OF THE SAFEGUARDS AND

01:48PM   9    QUALITY CONTROL PROCEDURES TO ENSURE THE HIGHEST ACCURACY AND

01:48PM  10    INTEGRITY OF THE RESULTS, BUT IN THE CASE OF THERANOS THE

01:49PM  11    PROBLEMS EMERGED AFTER THOSE RESULTS WERE RELEASED.

01:49PM  12    Q.   IN OTHER WORDS, RESULTS CAN ONLY BE IDENTIFIED AS

01:49PM  13    INACCURATE AFTER THEY HAD GONE OUT THE DOOR?

01:49PM  14    A.   FOR THE MOST PART, YES.

01:49PM  15    Q.   HOW ABOUT EVEN AFTER THE LAB RESULTS GO OUT, IS IT

01:49PM  16    POSSIBLE AT THAT POINT TO IDENTIFY EACH AND EVERY INACCURATE

01:49PM  17    TEST RESULT THAT A LAB HAS PUT OUT?

01:49PM  18    A.   NO, NOT DEFINITIVELY, NO.

01:49PM  19    Q.   WHY NOT?

01:49PM  20    A.   YOU -- FOR ONE THING, YOU DON'T KNOW WHAT THE ACTUAL VALUE

01:49PM  21    IS.  YOU DON'T KNOW WHAT THE BIOLOGICAL VALUE SHOULD BE.

01:49PM  22         YOU RELY ON A ROBUST TESTING METHOD AND TECHNOLOGY -- YOU

01:49PM  23    RELY ON TECHNOLOGY TO A HUGE EXTENT.  IT'S REALLY -- AS I SAID,

01:50PM  24    ONE PUTS SAFEGUARDS IN PLACE SUCH AS PROFICIENCY TESTING AND QC

01:50PM  25    TO MITIGATE THE POTENTIAL FOR ERROR.  IT DOES NOT ELIMINATE THE

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2724

01:50PM   1    POTENTIAL FOR ERROR.

01:50PM   2        I DON'T KNOW IF THAT ANSWERS YOUR QUESTION.  YEAH.

01:50PM   3    Q.   I THINK IT DOES.  AND LET ME ASK A FOLLOWUP, WHICH IS,

01:50PM   4    WHAT ARE THE WAYS IN WHICH IT'S POSSIBLE TO IDENTIFY AN

01:50PM   5    INACCURATE TEST RESULT AFTER THE FACT?  WHAT ARE THE DIFFERENT

01:50PM   6    WAYS?

01:50PM   7    A.   SO, FOR INSTANCE, A FREE T4 COULD BE VERY HIGH, BUT THE

01:50PM   8    TSH COULD BE VERY NORMAL, AND WE KNOW FROM PHYSIOLOGY THAT TSH

01:50PM   9    COULD BE LOW AND THAT SUGGESTS A PROBLEM WITH TSH.

01:50PM  10    Q.   SO, IN OTHER WORDS, YOU MIGHT HAVE A SITUATION WHERE ONE

01:50PM  11    TEST RESULT IS INCOMPATIBLE WITH ANOTHER TEST RESULT FROM THE

01:50PM  12    SAME --

01:50PM  13    A.   CORRECT, CORRECT.

01:50PM  14        ANOTHER EXAMPLE WOULD BE THE CHOLESTEROL WHERE JUST THE

01:51PM  15    MATH -- WHAT IS MEASURED DOESN'T COMPUTE WITH THE MATH OF WHAT

01:51PM  16    THE ACTUAL RESULT SHOULD BE.

01:51PM  17    Q.   UH-HUH.  SO AGAIN, INTERNAL INCONSISTENCE BETWEEN TWO

01:51PM  18    DIFFERENT RESULTS?

01:51PM  19    A.   YES, OR A SPATE OF ABNORMALLY LOW RESULTS THAT IS

01:51PM  20    STATISTICALLY VERY UNLIKELY.

01:51PM  21    Q.   HOW ABOUT COMPARISON BETWEEN A RESULT OBTAINED FROM ONE

01:51PM  22    METHOD VERSUS A RESULT OBTAINED FROM ANOTHER PROVEN METHOD?  IS

01:51PM  23    THAT A METHOD THAT COULD BE USED TO IDENTIFY AN INACCURATE

01:51PM  24    RESULT?

01:51PM  25    A.   WELL, AT THERANOS THOSE KINDS OF TROUBLESHOOTING FOR THE

ROSENDORFF REDIRECT BY MR. BOSTIC                              2725

01:51PM  1    MOST PART WOULD RELY ON VENOUS BLOOD SAMPLES THAT WOULD BE RUN

01:52PM  2    ON A THERANOS METHOD AND A PREDICATE METHOD.  IT DID NOT TAKE

01:52PM  3    INTO ACCOUNT ISSUES WITH THE ACTUAL CTN TECHNOLOGY OR INDEED

01:52PM  4    DIFFERENCES BETWEEN CAPILLARY BLOOD AND VENOUS BLOOD.

01:52PM  5    Q.   IN YOUR EXPERIENCE AT THERANOS, DID YOU EVER ENCOUNTER

01:52PM  6    SITUATIONS WHERE YOU CAME TO DOUBT A THERANOS LAB RESULT

01:52PM  7    BECAUSE OF A RESULT FROM ANOTHER LAB AROUND THE SAME TIME

01:52PM  8    PERIOD?

01:52PM  9    A.   YES.  I BELIEVE THE TESTOSTERONE IS AN EXAMPLE OF THAT,

01:52PM  10   YEAH.

01:52PM  11   Q.   HOW ABOUT PATIENT FACTORS?

01:52PM  12        IS THERE SOMETIMES -- OR IS THERE EVER INFORMATION ABOUT

01:52PM  13   THE WAY A PATIENT PRESENTS OR WHAT IS GOING ON WITH A PATIENT

01:52PM  14   THAT CAN CALL INTO QUESTION LABORATORY RESULTS?

01:52PM  15   A.   UM, YES.  IN THE CASE OF A PATIENT TAKING COUMADIN, FOR

01:53PM  16   INSTANCE, YOU EXPECT THE PT TO BE PROLONGED.  IF YOU SEE A

01:53PM  17   SHORT PT, THAT'S INCONSISTENT WITH A PATIENT TAKING COUMADIN.

01:53PM  18   Q.   HOW ABOUT WITH THE HCG TEST, FOR EXAMPLE, ARE THERE

01:53PM  19   PATIENT FACTORS THERE THAT COULD CAST DOUBT ON THE ACCURACY OF

01:53PM  20   AN INDIVIDUAL HCG RESULT?

01:53PM  21   A.   YES.  THERE WAS AN INSTANCE WHERE THE ORIGINAL HCG RESULTS

01:53PM  22   SUGGESTED A MISCARRIAGE AS COMPARED TO A QUEST RESULT, AND THEN

01:53PM  23   A REPEAT THERANOS RESULT WAS MUCH HIGHER, AND IT IS NOT

01:53PM  24   PHYSIOLOGICALLY POSSIBLE TO HAVE THAT, YEAH.

01:53PM  25   Q.   ON DIRECT DO YOU RECALL REVIEWING SOME INDIVIDUAL

ROSENDORFF REDIRECT BY MR. BOSTIC                              2726

01:54PM   1    INCIDENTS BY REFERENCE TO EXHIBITS AT THIS TRIAL?

01:54PM   2    A.   YES.

01:54PM   3    Q.   AND DID SOME OF THOSE EXHIBITS INVOLVE TEST RESULTS FROM

01:54PM   4    THERANOS THAT YOU CONCLUDED WERE INACCURATE?

01:54PM   5    A.   AFTER THE FACT, YEAH.

01:54PM   6    Q.   DO YOU RECALL DURING YOUR CROSS-EXAMINATION THERE WAS A

01:54PM   7    DISCUSSION ABOUT ALL OF THE THINGS THAT COULD GO WRONG DURING

01:54PM   8    THE LAB TESTING PROCESS?

01:54PM   9    A.   YES.

01:54PM  10    Q.   AND THE DIFFERENT WAYS FOR ERROR TO CREEP INTO THE SYSTEM?

01:54PM  11         DO YOU RECALL THAT?

01:54PM  12    A.   YOU'RE REFERRING TO THE GOVERNMENT'S DIRECT?

01:54PM  13    Q.   I'M REFERRING TO YOUR CROSS-EXAMINATION.

01:54PM  14    A.   OH, I'M SORRY.  YES, I DO RECALL THAT, YEP.

01:54PM  15    Q.   AND YOU DISCUSSED PREANALYTIC SOURCES OF ERROR, ANALYTIC

01:54PM  16    SOURCES OF ERROR, AND POST ANALYTIC; IS THAT RIGHT?

01:54PM  17    A.   YES, YES.

01:54PM  18    Q.   AND I'D LIKE TO ASK YOU SOME FOLLOW-UP QUESTIONS ABOUT

01:54PM  19    THAT TOPIC.

01:54PM  20         FIRST, SOME OF THOSE TYPES OF ERROR HAVE NOTHING TO DO

01:55PM  21    WITH THE ACCURACY OF THE TEST METHOD ITSELF; CORRECT?

01:55PM  22    A.   CORRECT.

01:55PM  23    Q.   AND WHAT ARE SOME OF THOSE SOURCES OF ERROR THAT HAVE

01:55PM  24    NOTHING TO DO WITH THE ACTUAL TEST METHOD?

01:55PM  25    A.   ANTICOAGULANT, NOT BEING STANDARDIZED IN THE CTN'S FROM

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2727

01:55PM  1    ONE DEVICE TO ANOTHER, CAPILLARY BLOOD SHOOTING VERY RAPIDLY

01:55PM  2    INTO A CTN AND CAUSING HEMOLYSIS DURING BLOOD COLLECTION,

01:55PM  3    CLOTTING OF THE BLOOD SAMPLE IN THE CTN, TEMPERATURE EXCURSIONS

01:55PM  4    DURING TRANSPORTATION FROM ARIZONA TO CALIFORNIA.

01:55PM  5         THOSE ARE SOME OF THE THINGS I CAN THINK OF, YEAH.

01:55PM  6    Q.   AND DOES LAB TECHNICIAN ERROR GO INTO THAT CATEGORY ALSO?

01:55PM  7    A.   THAT WOULD BE ANALYTIC, YEAH.

01:55PM  8    Q.   AS A LAB DIRECTOR, IF YOU BELIEVE THAT TEMPERATURE

01:56PM  9    PROBLEMS, FOR EXAMPLE, ARE THE SOURCE OF ERRONEOUS RESULTS, HOW

01:56PM 10    DO YOU ADDRESS THAT?

01:56PM 11    A.   ONE CAN SIMULATE THE TEMPERATURE VARIATIONS THAT YOU GET

01:56PM 12    DURING TRANSPORTATION EXPERIMENTALLY IN THE LAB BY SUBJECTING A

01:56PM 13    SAMPLE TO, TO SIMILAR -- TO THE EXPECTED TEMPERATURE

01:56PM 14    VARIATIONS.

01:56PM 15    Q.   AND IF YOU BELIEVE THAT -- IF YOU CONCLUDE THAT THOSE

01:56PM 16    TEMPERATURE FLUCTUATIONS ARE THE SOURCE OF THE PROBLEM, WHAT

01:56PM 17    WOULD YOU DO IN RESPONSE?

01:56PM 18    A.   YOU WOULD REACH OUT TO THE COLLECTION SITES TO MAKE SURE

01:56PM 19    THAT AN ICE PACK WAS INCLUDED IN EACH SHIPMENT, FOR INSTANCE,

01:56PM 20    IF IT NEEDS TO BE REFRIGERATED.  YOU WOULD DO AN INVESTIGATION

01:56PM 21    AS TO HOW THESE SAMPLES ARE BEING STORED IN ARIZONA, WHETHER

01:57PM 22    THEY'RE BEING IMMEDIATELY REFRIGERATED OR SITTING OUT ON A

01:57PM 23    BENCH TOP, YOU WOULD NEED TO KNOW HOW MUCH TIME HAD ELAPSED

01:57PM 24    BETWEEN COLLECTION AND ARRIVAL IN THE LAB WOULD BE AN IMPORTANT

01:57PM 25    THING TO KNOW.

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2728

01:57PM  1    Q.   AND HOW ABOUT IF SAMPLING MISHANDLING WAS DETERMINED TO BE

01:57PM  2    THE SOURCE OF ERROR, HOW WOULD A LAB DIRECTOR ADDRESS THAT

01:57PM  3    PROBLEM?

01:57PM  4    A.   CAN YOU BE MORE SPECIFIC ABOUT SAMPLE MISHANDLING.  I'M

01:57PM  5    SORRY.

01:57PM  6    Q.   SURE.  WHAT IF A SAMPLE IS NOT BEING HANDLED GENTLY ENOUGH

01:57PM  7    IN THE LAB, WOULD THAT CAUSE POTENTIAL LAB ERROR IN THE RESULT?

01:57PM  8    A.   DEFINITELY IF A SAMPLE IS DROPPED AND CONTAMINATED OR IF

01:57PM  9    IT CROSS-CONTAMINATES OTHER SAMPLES OR -- THE OTHER THING ABOUT

01:57PM  10   PREANALYTIC I FORGOT TO MENTION IS THAT FREQUENTLY PATIENT

01:58PM  11   FINGERS WOULD BE SQUEEZED PRETTY HARD TO GET THE DROP OF BLOOD

01:58PM  12   OUT AND THAT COULD CAUSE BREAKAGE OF RED BLOOD CELLS.

01:58PM  13   Q.   ON THE TOPIC OF MISHANDLING OR CONTAMINATION?

01:58PM  14   A.   YES.

01:58PM  15   Q.   IF YOU BELIEVED THAT WAS THE SOURCE OF ERROR IN A LAB THAT

01:58PM  16   YOU WERE SUPERVISING, WHAT STEPS WOULD YOU TAKE TO ADDRESS IT?

01:58PM  17   A.   SO YOU DO WHAT IS CALLED A QUALITY EXCEPTION REPORT IF

01:58PM  18   THIS OCCURRED DOCUMENTING EXACTLY WHAT OCCURRED AND WHAT

01:58PM  19   PATIENT SAMPLE IT INVOLVED, YOU DO A ROOT CAUSE ANALYSIS, AND

01:58PM  20   THEN YOU DO PREVENTATIVE AND CORRECTIVE ACTIONS TO FIGURE OUT

01:58PM  21   WHAT CHANGES TO IMPLEMENT TO PREVENT THIS FROM HAPPENING IN THE

01:58PM  22   FUTURE.

01:58PM  23   Q.   NOW I WANT TO TALK SPECIFICALLY ABOUT YOUR EXPERIENCE AT

01:58PM  24   THERANOS.

01:58PM  25   A.   OKAY.

UNITED STATES COURT REPORTERS

**ER-6475**

ROSENDORFF REDIRECT BY MR. BOSTIC                          2729

| | | |
|---|---|---|
| 01:58PM | 1 | Q.   WHEN YOU WERE AT THE COMPANY, DID YOU COME TO CONCLUDE |
| 01:58PM | 2 | THAT THE COMPANY'S TEST HAD ACCURACY AND RELIABILITY PROBLEMS? |
| 01:58PM | 3 | A.   YES. |
| 01:58PM | 4 | Q.   DID YOU COME TO AN UNDERSTANDING OF WHAT THE SOURCE OF |
| 01:59PM | 5 | THOSE PROBLEMS WAS, IN OTHER WORDS, AT WHAT STAGE IN THE |
| 01:59PM | 6 | PROCESS THE ERROR WAS POPPING UP? |
| 01:59PM | 7 | A.   SOME OF THEM WERE PREANALYTIC AND SOME WERE ANALYTIC. |
| 01:59PM | 8 | Q.   AND HOW WERE YOU ABLE TO DETERMINE THAT SOME OF THE ERRORS |
| 01:59PM | 9 | THAT YOU WERE SEEING WERE ANALYTIC. |
| 01:59PM | 10 | A.   UM, SO IN TERMS OF MY EXPERIENCE IN DEALING WITH PATIENTS, |
| 01:59PM | 11 | IT WOULD BE REPEAT VALUES, VALUES NOT REPEATING FROM ONE SAMPLE |
| 01:59PM | 12 | TO ANOTHER, NOT REPEATING ON THE SAME SAMPLE. |
| 01:59PM | 13 | Q.   AND DOES QUALITY PERFORMANCE HAVE ANYTHING TO DO WITH THE |
| 01:59PM | 14 | ASSESSMENT OF WHETHER THERE IS ANALYTIC ERROR OCCURRING? |
| 02:00PM | 15 | A.   YES. |
| 02:00PM | 16 | Q.   AND HOW DOES THAT FIT IN? |
| 02:00PM | 17 | A.   IF THERE'S A VERY HIGH RATE OF QC FAILURE, IT COULD RAISE |
| 02:00PM | 18 | DOUBTS ABOUT THE ACCURACY OF THE ACTUAL ASSAY BECAUSE QC |
| 02:00PM | 19 | MATERIAL IS STABLE, IT'S NOT SUBJECT TO THE PREANALYTIC ISSUES |
| 02:00PM | 20 | THAT REAL SAMPLES ARE. |
| 02:00PM | 21 | Q.   MS. HOLMES'S LAWYER ASKED YOU IF SHE HAD EVER INSISTED |
| 02:00PM | 22 | THAT YOU USE AN UNRELIABLE TEST METHOD. |
| 02:00PM | 23 | DO YOU RECALL THAT QUESTION? |
| 02:00PM | 24 | A.   YES. |
| 02:00PM | 25 | Q.   AND WHAT IS YOUR ANSWER TO THAT QUESTION? |

| | | |
|---|---|---|
| 02:00PM | 1 | A.    NO. |
| 02:00PM | 2 | Q.    WHAT WAS YOUR OVERALL VIEW WHEN YOU WERE AT THE COMPANY OF |
| 02:00PM | 3 | THE RELIABILITY OF THE EDISON ANALYZER? |
| 02:00PM | 4 | A.    INITIALLY I WAS ENTHUSIASTIC ABOUT THE TECHNOLOGY, AND I |
| 02:00PM | 5 | REALLY TRIED TO MAKE IT WORK, AND I GAVE THE COMPANY A LOT OF |
| 02:00PM | 6 | BENEFIT OF THE DOUBT, BUT I CAME TO REALLY UNDERSTAND DURING MY |
| 02:00PM | 7 | TENURE AT THERANOS THAT MANY OF THOSE TESTS WERE INACCURATE. |
| 02:01PM | 8 | Q.    AND SPEAKING OF THE EDISON TESTS SPECIFICALLY? |
| 02:01PM | 9 | A.    YES. |
| 02:01PM | 10 | Q.    AND HOW DID YOU COME TO REACH THAT UNDERSTANDING? |
| 02:01PM | 11 | A.    DIFFICULTY GETTING QC TO FALL IN, FREQUENT TECHNICAL |
| 02:01PM | 12 | MALFUNCTIONS IN THE ACTUAL EQUIPMENT, UM, SINCE WE HAD A VERY |
| 02:01PM | 13 | INCOMPLETE AND POORLY IMPLEMENTED AAP PROGRAM, I WASN'T ABLE TO |
| 02:01PM | 14 | COMPREHENSIVELY ASSESS THE ACCURACY OF THOSE TESTS. |
| 02:01PM | 15 | Q.    DURING YOUR TIME AT THE COMPANY, DID YOU COME TO |
| 02:01PM | 16 | UNDERSTAND MS. HOLMES'S POSITION ON THE COMPANY'S USE OF THE |
| 02:01PM | 17 | EDISON ANALYZER? |
| 02:01PM | 18 | A.    YES. |
| 02:01PM | 19 | Q.    AND WHAT WAS THAT POSITION AS YOU UNDERSTOOD IT? |
| 02:01PM | 20 | A.    SHE WANTED, SHE WANTED TO RAPIDLY EXPAND THE USE OF |
| 02:01PM | 21 | EDISONS FROM THE TIME OF ROLLOUT THROUGH THE REST OF THE TIME |
| 02:02PM | 22 | THAT I WAS AT THE COMPANY. |
| 02:02PM | 23 | AND, IN FACT, MR. BALWANI WANTED TO ALIQUOT BLOOD FROM |
| 02:02PM | 24 | VACUTAINERS TO CTN'S SO THAT THEY COULD BE RUN ON THE EDISON |
| 02:02PM | 25 | TECHNOLOGY, SO YES. |

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2731

02:02PM  1    Q.   SO, IN OTHER WORDS, THAT WOULD BE USING THE EDISON EVEN TO

02:02PM  2    RUN VEIN DRAW SAMPLES?

02:02PM  3    A.   CORRECT.

02:02PM  4    Q.   AND THAT UNDERSTANDING THAT MS. HOLMES WANTED THERANOS TO

02:02PM  5    USE THE EDISON, WHAT MADE YOU THINK THAT?

02:02PM  6    A.   IT WAS MEETINGS WITH DANIEL AND OTHER PROJECT MANAGERS

02:02PM  7    WHERE THAT WAS THE SENSE THAT I WAS GETTING.

02:02PM  8        IT WASN'T ANYTHING IN PARTICULAR THAT MS. HOLMES HAD SAID

02:02PM  9    TO ME OR ANY EMAIL THAT I COULD POINT TO, YEAH.

02:02PM  10   Q.   DID YOU EVER HAVE CONVERSATIONS WITH MS. HOLMES ABOUT

02:02PM  11   TAKING AN ASSAY OFF OF A FINGERSTICK AND CEASE USING THE EDISON

02:03PM  12   FOR THAT ASSAY?

02:03PM  13   A.   WELL, I REMEMBER SENDING THE EMAIL ABOUT HCG AND SAYING IT

02:03PM  14   SHOULD BE RUN ON -- WITH THE FDA APPROVED TECHNIQUE.  I BELIEVE

02:03PM  15   SHE WAS AWARE OF THAT DECISION, YES.

02:03PM  16   Q.   OKAY.  WE'LL TALK ABOUT THAT SPECIFICALLY IN A LITTLE BIT.

02:03PM  17       DID YOU EVER ASK MS. HOLMES WHETHER THERANOS WOULD

02:03PM  18   CONSIDER CEASING USE OF THE EDISON ALTOGETHER?

02:03PM  19   A.   NO.

02:03PM  20   Q.   WHY NOT?

02:03PM  21   A.   THERE WAS TREMENDOUS PRESSURE AT THE COMPANY TO SHOW THAT

02:03PM  22   THIS TECHNOLOGY WAS SUCCESSFUL.  IT CAME FROM THE TOP.  IT

02:03PM  23   PERMEATED R&D.

02:04PM  24   Q.   AND WHY DID THAT DISSUADE YOU FROM MAKING THAT SUGGESTION

02:04PM  25   IF THAT'S THE CASE?

02:04PM   1      A.   IT WAS CREATING CONFLICT FOR ME.  AT VARIOUS POINTS I

02:04PM   2      THOUGHT I MIGHT BE FIRED IF I TOOK TOO STRONG A POSITION ON IT.

02:04PM   3      Q.   AND WHO AT THERANOS HAD THE AUTHORITY TO FIRE YOU?

02:04PM   4      A.   SUNNY.

02:04PM   5      Q.   ANYONE ELSE AT THERANOS WHO COULD FIRE YOU?

02:04PM   6      A.   WELL, HE WOULD HAVE CONSULTED WITH ELIZABETH ON IT, YEAH.

02:04PM   7      Q.   ANYONE ELSE BESIDES MR. BALWANI AND MS. HOLMES WHO COULD

02:04PM   8      HAVE FIRED YOU AT THERANOS?

02:04PM   9      A.   NO, NO.

02:04PM   10     Q.   BESIDES HCG SPECIFICALLY, WERE THERE OTHER INSTANCES AT

02:04PM   11     THERANOS WHERE THE TOPIC OF TAKING AN ASSAY OFF A FINGERSTICK

02:04PM   12     AND MOVING IT BACK TO VENOUS WAS PART OF THE DISCUSSION?

02:04PM   13     A.   YES.  AS DISCUSSED DURING CROSS FOR THE ISE'S, I SUGGESTED

02:04PM   14     RUNNING THEM NEAT WHICH WOULD BE WITHOUT ESSENTIALLY RUNNING

02:05PM   15     THEM BY A PREDICATE ASSAY, YEAH.

02:05PM   16     Q.   AND WAS THAT KIND OF DISCUSSION SOMETHING THAT YOU HAD

02:05PM   17     EXPERIENCED ROUTINELY AT YOUR OTHER LAB DIRECTOR POSITIONS?

02:05PM   18     A.   NO.

02:05PM   19     Q.   IN OTHER WORDS --

02:05PM   20     A.   I'M SORRY, I DIDN'T GIVE YOU A CHANCE.

02:05PM   21     Q.   NO.

02:05PM   22     A.   OKAY.

02:05PM   23     Q.   AND IN OTHER WORDS, A DISCUSSION ABOUT TAKING AN ASSAY OFF

02:05PM   24     OF A PARTICULAR PIECE OF EQUIPMENT BECAUSE IT WASN'T WORKING

02:05PM   25     PROPERLY AND MOVING IT BACK TO SOMETHING MORE ESTABLISHED?

ROSENDORFF REDIRECT BY MR. BOSTIC                          2733

02:05PM  1    A.   NO.

02:05PM  2    Q.   BY THE TIME YOU LEFT THE COMPANY IN NOVEMBER OF 2014, WHAT

02:05PM  3    WAS YOUR OVERALL IMPRESSION OF THE ACCURACY AND RELIABILITY OF

02:05PM  4    THE THERANOS TESTING PLATFORM?

02:05PM  5    A.   I HAD -- I WAS VERY SKEPTICAL.

02:05PM  6    Q.   AND WAS THAT A FACTOR IN YOUR DECISION TO LEAVE THE

02:05PM  7    COMPANY?

02:05PM  8    A.   YES, ABSOLUTELY.

02:06PM  9    Q.   OKAY.  AND WHY IS THAT?

02:06PM  10   A.   I FELT THAT IT WAS A QUESTION OF MY INTEGRITY AS A

02:06PM  11   PHYSICIAN NOT TO REMAIN THERE AND TO CONTINUE TO ENDORSING

02:06PM  12   RESULTS THAT I ESSENTIALLY DIDN'T HAVE FAITH IN.

02:06PM  13        I CAME TO UNDERSTAND THAT MANAGEMENT WAS NOT SINCERE IN

02:06PM  14   DIVERTING RESOURCES TO SOLVE ISSUES.  OTHER THAN HAVING R&D PUT

02:06PM  15   PATCHES ON THINGS, SUNNY WAS HEAVILY INVOLVED IN ACTUALLY

02:06PM  16   DIRECTING THE CLIA LAB.

02:06PM  17   Q.   ON CROSS YOU WERE ASKED A QUESTION ABOUT WHETHER OR NOT

02:06PM  18   YOU HAD EVER SEEN AN EMAIL WHERE YOU HAD ASKED FOR RESOURCES

02:06PM  19   AND BEEN TOLD NO?

02:06PM  20   A.   YES.

02:06PM  21   Q.   DO YOU RECALL THAT TESTIMONY?

02:06PM  22   A.   YES.

02:06PM  23   Q.   HOW DO YOU SQUARE THAT WITH WHAT YOU JUST SAID THAT YOU

02:06PM  24   FELT MANAGEMENT WASN'T SINCERE ABOUT DEVOTING THOSE RESOURCES?

02:07PM  25   A.   SO THE WAY I SAW IT A PROFICIENCY PROGRAM WOULD REQUIRE A

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2734

02:07PM  1    MAJOR OPERATIONAL OVERHAUL.  AS DR. PANDORI'S EMAIL INDICATED,

02:07PM  2    IT WOULD TIE UP MULTIPLE EDISONS, FOR INSTANCE, AND ESSENTIALLY

02:07PM  3    WOULD BECOME A BUSINESS DECISION REGARDING RESOURCES AND NOT A

02:07PM  4    LAB DIRECTOR DECISION.

02:07PM  5    Q.   AND IF THERE WEREN'T EMAILS WHERE YOU WERE TOLD NO ON THAT

02:07PM  6    ISSUE, HOW DID YOU KNOW WHAT MANAGEMENT'S POSITION WAS?

02:07PM  7    A.   BECAUSE I SAW VARIOUS EFFORTS BY R&D TO DO SOME KIND OF

02:07PM  8    IQP OR AAP, ET CETERA.  THEY WEREN'T FOLLOWING A PROTOCOL.

02:08PM  9    THEY WERE INCONSISTENT WITH HOW THEY WERE EXECUTING.

02:08PM  10   FREQUENTLY THEY WEREN'T SHOWING THE DATA TO ME SO I SUSPECTED

02:08PM  11   THAT DIRECTION WAS BEING GIVEN TO THEM ON THIS MATTER.

02:08PM  12   Q.   AND BESIDES EMAIL, DID YOU EVER DISCUSS THE NEED FOR AAP

02:08PM  13   WITH MS. HOLMES IN PERSON?

02:08PM  14   A.   NO.

02:08PM  15   Q.   HOW ABOUT MR. BALWANI?  DID YOU HAVE DISCUSSIONS WITH HIM

02:08PM  16   ABOUT THE NEED FOR AAP IN PERSON?

02:08PM  17   A.   I DON'T BELIEVE SO, NO.

02:08PM  18   Q.   DO YOU RECALL ON CROSS-EXAMINATION YOU WERE ASKED

02:08PM  19   QUESTIONS ABOUT THE LABORATORY INFORMATION SYSTEM, OR LIS?

02:08PM  20   A.   YES.

02:08PM  21   Q.   YOU TALKED A FEW MINUTES AGO ABOUT THE WAYS TO IDENTIFY A

02:08PM  22   TEST RESULT IS INACCURATE.

02:08PM  23        DO YOU REMEMBER THAT?

02:08PM  24   A.   YES.

02:08PM  25   Q.   YOU TALKED ABOUT, FOR EXAMPLE, HOW THERE MIGHT BE

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2735

02:09PM  1    INCONSISTENT RESULTS FROM THERANOS LAB TESTS AND LAB TESTS FROM

02:09PM  2    A DIFFERENT LABORATORY?

02:09PM  3    A.   YES.

02:09PM  4    Q.   AND WOULD THAT INFORMATION BE INCLUDED IN THE THERANOS

02:09PM  5    LABORATORY INFORMATION SYSTEM?

02:09PM  6    A.   NO, BUT REPEAT TESTING WOULD BE INCLUDED.

02:09PM  7    Q.   REPEAT TESTING WITHIN THERANOS?

02:09PM  8    A.   YES.

02:09PM  9    Q.   TESTING OUTSIDE OF THE COMPANY, THOUGH, FOR EXAMPLE, IF A

02:09PM 10    PATIENT WENT TO THERANOS ONE DAY AND THEN WENT TO SONORA QUEST

02:09PM 11    THE FOLLOWING DAY AND GOT ANOTHER RESULT, WOULD THAT SONORA

02:09PM 12    QUEST RESULT BE LOGGED INTO THE THERANOS LIS?

02:09PM 13    A.   NO.  IT'S ONLY IF THERANOS SENT OUT A SAMPLE TO A

02:09PM 14    REFERENCE LAB IS THEN THOSE RESULTS FROM THE OUTSIDE REFERENCE

02:09PM 15    LAB WOULD BE RECORDED IN THE LIS.

02:09PM 16    Q.   ONLY TESTING AT THERANOS OR THROUGH THERANOS ENDS UP IN

02:09PM 17    THAT DATABASE?

02:09PM 18    A.   CORRECT.

02:09PM 19    Q.   YOU ALSO TALKED ABOUT BEING ABLE TO IDENTIFY INACCURATE

02:10PM 20    TEST RESULTS BASED ON PATIENT FACTORS AND THE WAY A PATIENT

02:10PM 21    PRESENTS?

02:10PM 22    A.   YES.

02:10PM 23    Q.   AND ARE THOSE PATIENT FACTORS LOGGED IN LIS?

02:10PM 24    A.   NO.

02:10PM 25    Q.   FOR EXAMPLE, IF A PATIENT RECEIVED AN HCG TEST RESULT THAT

ROSENDORFF REDIRECT BY MR. BOSTIC                           2736

02:10PM  1    SHOWED THAT HER PREGNANCY WAS NONVIABLE AND THEN SHE CARRIED

02:10PM  2    HER BABY TO TERM AND SUCCESSFULLY GAVE BIRTH, WOULD THAT FACT

02:10PM  3    AUTOMATICALLY BE ENTERED IN THE LABORATORY INFORMATION SYSTEM?

02:10PM  4    A.   NO.

02:10PM  5    Q.   AND, FOR EXAMPLE, IF SOMEONE RECEIVED A POSITIVE TEST

02:10PM  6    SAYING THAT THEY WERE SUFFERING FROM A CERTAIN DISEASE AND THEN

02:10PM  7    THEY LATER RECEIVED A NEGATIVE TEST INDICATING THAT THEY

02:10PM  8    WEREN'T SUFFERING FROM THAT DISEASE FROM ANOTHER LABORATORY,

02:10PM  9    WOULD THAT INFORMATION BE LOGGED IN LABORATORY INFORMATION

02:10PM  10   SYSTEM?

02:10PM  11   A.   NO.

02:10PM  12   Q.   THE INFORMATION THAT WE'VE BEEN TALKING ABOUT, THE OUTSIDE

02:11PM  13   INFORMATION THAT CAN INDICATE OR REVEAL A TEST RESULT TO BE

02:11PM  14   INACCURATE, HOW WOULD THAT INFORMATION COME TO THERANOS, IF AT

02:11PM  15   ALL?

02:11PM  16   A.   THROUGH PHYSICIAN COMPLAINTS OR PHYSICIAN ASSISTANT --

02:11PM  17   ESSENTIALLY THROUGH A HEALTH CARE PROVIDER COMPLAINT OR QUERY.

02:11PM  18   Q.   AND AS LAB DIRECTOR, DID YOU RELY ON PHYSICIAN AND PATIENT

02:11PM  19   COMPLAINTS TO ASSESS THE ACCURACY OF TEST RESULTS IN SOME

02:11PM  20   CASES?

02:11PM  21   A.   YES.

02:11PM  22   Q.   IS THAT A STANDARD PRACTICE AMONG LAB DIRECTORS IN YOUR

02:11PM  23   EXPERIENCE?

02:11PM  24            MR. WADE:  YOUR HONOR, 702.

02:11PM  25            THE COURT:  WELL, YOU'RE ASKING ABOUT HIS BUSINESS

02:12PM 1   AND PROFESSIONAL EXPERIENCE?

02:12PM 2              MR. BOSTIC:  I CAN REPHRASE, YOUR HONOR.

02:12PM 3              THE COURT:  YES, WHY DON'T YOU.

02:12PM 4   BY MR. BOSTIC:

02:12PM 5   Q.   THAT PRACTICE OF RELYING ON DOCTOR OR PATIENT COMPLAINTS

02:12PM 6   TO ASSESS THE ACCURACY OF TESTS, IS THAT SOMETHING THAT YOU'VE

02:12PM 7   DONE THROUGHOUT YOUR CAREER AS A LAB DIRECTOR?

02:12PM 8   A.   YES.

02:12PM 9              MR. WADE:  SAME OBJECTION.  MOVE TO STRIKE.

02:12PM 10             THE COURT:  OVERRULED.

02:12PM 11  BY MR. BOSTIC:

02:12PM 12  Q.   ON CROSS-EXAMINATION YOU WERE SHOWN MANY VALIDATION

02:12PM 13  REPORTS FROM THERANOS.

02:12PM 14      DO YOU RECALL THAT?

02:12PM 15  A.   YES.

02:12PM 16  Q.   AND I WANT TO MAKE SURE THAT WE'RE CLEAR ON THE

02:12PM 17  RELATIONSHIP ON THE VALIDATION PROCESS AND THE ONGOING QUALITY

02:12PM 18  OF EVALUATION THAT GOES ON AFTER TESTING BEGINS.

02:12PM 19  A.   YES.

02:12PM 20  Q.   CAN YOU BRIEFLY EXPLAIN THAT DISTINCTION FOR US?

02:12PM 21  A.   VALIDATION OCCURS BEFORE PATIENT TESTING IS AUTHORIZED,

02:12PM 22  PERFORMANCE SPECIFICATIONS OF THE ASSAY ARE DEMONSTRATED UNDER

02:13PM 23  IDEAL CONDITIONS, PREANALYTIC FACTORS ARE NOT CONSIDERED FOR

02:13PM 24  THE MOST PART.

02:13PM 25      ONE HAS TO DEMONSTRATE ACCURACY, PRECISION, LINEARITY,

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2738

```
02:13PM   1    ET CETERA, ACCORDING TO THE CFR REGULATIONS.

02:13PM   2         SO THE VALIDATION REPORT IS APPROVED ON THE BASIS OF THE

02:13PM   3    STRENGTH OF THAT DATA ALONE.

02:13PM   4    Q.    AND ALL OF THAT DATA IS GENERATED BEFORE A SINGLE CLINICAL

02:13PM   5    PATIENT SAMPLE IS RUN?

02:13PM   6    A.    CORRECT.

02:13PM   7    Q.    HOW DO THINGS CHANGE THEN ONCE VALIDATION IS COMPLETED AND

02:13PM   8    PATIENT TESTING ACTUAL BEGINS?  HOW IS QUALITY MONITORED FROM

02:13PM   9    THAT POINT ON?

02:13PM  10    A.    WELL, NOW YOU HAVE QC DATA, YOU HAVE RATES OF TEST RESULTS

02:13PM  11    THAT ARE OUTSIDE OF THE REFERENCE RANGE THAT I WOULD REVIEW

02:13PM  12    FREQUENTLY AT THERANOS, YOU HAVE PHYSICIAN QUERIES AND

02:14PM  13    COMPLAINTS.

02:14PM  14    Q.    WHEN A TEST COMPLETES VALIDATION AND IT QUALIFIES FOR USE

02:14PM  15    ON ACTUAL PATIENTS, DOES THAT SETTLE THE RECORD FOREVER AS TO

02:14PM  16    ITS ACCURACY AND RELIABILITY?

02:14PM  17    A.    NO, IT DOES NOT.

02:14PM  18    Q.    AND WHY NOT?

02:14PM  19    A.    BECAUSE OF PREANALYTIC ISSUES THAT ARE NOT CAPTURED IN THE

02:14PM  20    VALIDATION, VARIATION BETWEEN INSTRUMENTS AND REAGENTS THAT ARE

02:14PM  21    NOT CAPTURED IN THE VALIDATION, THERE COULD BE SERIOUS

02:14PM  22    DIFFERENCES IN THE PERFORMANCE OF DIFFERENT INSTRUCTIONS,

02:14PM  23    DIFFERENT REAGENTS, KITS, INTERFERING SUBSTANCES, THAT'S

02:14PM  24    ANOTHER PREANALYTIC CONSIDERATION, ET CETERA.

02:14PM  25    Q.    AND ALL OF THOSE FACTORS ARE FACTORS THAT COULD ADVERSELY
```

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2739

02:14PM   1      AFFECT THE ACCURACY OF THE TEST?

02:14PM   2      A.   YES.

02:14PM   3      Q.   AND THOSE FACTORS AREN'T 100 PERCENT ACCOUNTED FOR DURING

02:15PM   4      THE VALIDATION PROCESS?

02:15PM   5      A.   NO.

02:15PM   6      Q.   AT THERANOS --

02:15PM   7      A.   ALSO THE ASSUMPTION DURING THE VALIDATION IS THAT VENOUS

02:15PM   8      BLOOD WOULD BEHAVE IDENTICALLY TO CAPILLARY BLOOD.  SO THE

02:15PM   9      MAJORITY OF VALIDATION WAS DONE ON VENOUS BLOOD AND ONLY THE

02:15PM   10     REFERENCE RANGE VERIFICATION WAS DONE USING CAPILLARY BLOOD.

02:15PM   11     Q.   AND CAN YOU EXPLAIN THAT, WHAT STEPS OF THE VALIDATION

02:15PM   12     PROCESS WERE DONE RELYING SOLELY ON BLOOD FROM THE VEIN INSTEAD

02:15PM   13     OF THE FINGERSTICK?

02:15PM   14     A.   REPRODUCIBILITY, ACCURACY, LINEARITY, UPPER LIMIT OF

02:15PM   15     QUANTITATION, LOWER LIMIT OF QUANTITATION, INTERFERING

02:15PM   16     SUBSTANCES.

02:15PM   17     Q.   THOSE ARE DONE ON VEIN BLOOD ONLY?

02:15PM   18     A.   CORRECT.

02:15PM   19     Q.   AND WHAT STEPS IN VALIDATION INCLUDED FINGERSTICK SAMPLES?

02:15PM   20     A.   THE REFERENCE RANGE VERIFICATION.

02:15PM   21     Q.   AND HOW DID THAT WORK?

02:15PM   22     A.   ONE RUNS A NUMBER OF CLINICAL SAMPLES -- ONE RUNS OLD

02:16PM   23     SAMPLES IN THE VALIDATION TO COME UP WITH A PROVISIONAL

02:16PM   24     REFERENCE RANGE AND THEN YOU RUN I THINK IT WAS 20 FINGERSTICK

02:16PM   25     SAMPLES AND YOU ENSURE THAT ALL OF THEM FALL WITHIN THAT

ROSENDORFF REDIRECT BY MR. BOSTIC                           2740

02:16PM  1    REFERENCE RANGE FOLLOWING CLSI GUIDANCE.

02:16PM  2         I'M SORRY, I HAVE TO BREAK FOR A FEW MINUTES FOR THE

02:16PM  3    RESTROOM.

02:16PM  4              THE COURT:  LET'S TAKE ABOUT SEVEN MINUTES.  LADIES

02:16PM  5    AND GENTLEMEN, LET'S TAKE ABOUT A SEVEN MINUTE BREAK.

02:17PM  6         (JURY OUT AT 2:17 P.M.)

02:17PM  7              THE COURT:  THE JURY AND THE WITNESS JUST LEFT THE

02:17PM  8    COURTROOM.

02:17PM  9         I JUST WANT TO ASK, AND I'M NOT PRESSURING ANYONE, BUT DO

02:17PM  10   WE ANTICIPATE THE GOVERNMENT WILL FINISH THIS WITNESS TODAY?

02:17PM  11             MR. BOSTIC:  THE COURT WOULD LIKE TO STOP AT

02:17PM  12   3:00 P.M.?

02:17PM  13             THE COURT:  THAT'S WHAT I THOUGHT WE WOULD DO, BUT

02:17PM  14   I'M HAPPY TO RECEIVE YOUR BEST ESTIMATES.

02:17PM  15        I COULD ASK THEM TO STAY UNTIL 4:00 O'CLOCK IF YOU THINK

02:17PM  16   THAT'S PRODUCTIVE.

02:17PM  17             MR. BOSTIC:  I THINK IF WE STAY UNTIL 4:00 IT'S

02:17PM  18   LIKELY WE WILL COMPLETE THE REDIRECT BUT NOT LEAVE MUCH TIME

02:17PM  19   FOR RECROSS.

02:17PM  20             THE COURT:  WELL, YOU WON'T HAVE ANYTHING, MR. WADE?

02:17PM  21             MR. WADE:  TO BE DETERMINED.  IT SOUNDS LIKE WE

02:17PM  22   WON'T GET THE WITNESS IN GIVEN -- WE WOULD HAVE ANOTHER HOUR

02:17PM  23   AND A HALF.  I WOULD ANTICIPATE AT SOME POINT HAVING SOME

02:17PM  24   RECROSS.

02:17PM  25             THE COURT:  SURE.  WELL, WE'LL HAVE HIM BACK

02:18PM  1    TOMORROW, I THINK, AND THEN FINISH HIM TOMORROW MORNING MOST

02:18PM  2    LIKELY.

02:18PM  3         AND YOU'LL HAVE ANOTHER WITNESS AVAILABLE I TAKE IT?

02:18PM  4              MR. BOSTIC:  YES, YOUR HONOR.  THAT'S OUR GOAL AND

02:18PM  5    EXPECTATION.

02:18PM  6              THE COURT:  OKAY.  LET'S DO THAT.  THANK YOU.

02:18PM  7         (RECESS FROM 2:18 P.M. UNTIL 2:25 P.M.)

02:25PM  8         (JURY IN AT 2:25 P.M.)

02:25PM  9              THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

02:25PM  10   THE RECORD.

02:26PM  11        THANK YOU.  PLEASE BE SEATED.  ALL PARTIES PREVIOUSLY

02:26PM  12   PRESENT ARE PRESENT ONCE AGAIN.

02:26PM  13        THE DOCTOR IS ON THE STAND.

02:26PM  14        MR. BOSTIC.

02:26PM  15              MR. BOSTIC:  THANK YOU, YOUR HONOR.

02:26PM  16   Q.  DR. ROSENDORFF, BEFORE THE BREAK WE WERE TALKING ABOUT

02:26PM  17   VALIDATION REPORTS.

02:26PM  18        DO YOU RECALL THAT?

02:26PM  19   A.  YES.

02:26PM  20   Q.  ON CROSS-EXAMINATION YOU WERE SHOWN A NUMBER OF VALIDATION

02:26PM  21   REPORTS THAT BORE YOUR SIGNATURE; CORRECT?

02:26PM  22   A.  YES.

02:26PM  23   Q.  CAN YOU EXPLAIN FOR THE JURY ONE MORE TIME WHAT

02:26PM  24   SIGNIFICANCE IT HAS WHEN A LABORATORY DIRECTOR SIGNS A

02:26PM  25   VALIDATION REPORT?

ROSENDORFF REDIRECT BY MR. BOSTIC                                2742

02:26PM   1    A.   SO THE VALIDATION REPORT IS SIGNED ON THE BASIS OF STUDIES

02:26PM   2    THAT ARE PERFORMED IN THE LABORATORY THAT SHOW EVIDENCE THAT

02:26PM   3    THE TEST IS ACCURATE, REPRODUCIBLE, ET CETERA, AND FULFILL THE

02:26PM   4    PERFORMANCE SPECIFICATIONS AS OUTLINED IN THE CLIA REGULATIONS.

02:27PM   5    Q.   AND I THINK YOU STARTED TO ANSWER WHAT WAS GOING TO BE MY

02:27PM   6    NEXT QUESTION ALSO WHICH IS, ARE THE STANDARDS FOR VALIDATION

02:27PM   7    SOMETHING THAT EACH LABORATORY DIRECTOR KIND OF EYEBALLS OR

02:27PM   8    RELIES ON THEIR GUT FOR OR ARE THERE A SET OF OBJECTIVE

02:27PM   9    STANDARDS?

02:27PM   10   A.   NO.  THEY'RE OUTLINED IN THE CLIA REGULATIONS.

02:27PM   11   Q.   AND --

02:27PM   12   A.   THAT'S A MINIMUM.

02:27PM   13   Q.   AND IF A GIVEN ASSAY MEETS THOSE STANDARDS, IS THERE ANY

02:27PM   14   REASON OR WOULD THERE BE ANY REASON NOT TO SIGN A VALIDATION

02:27PM   15   REPORT FOR THAT ASSAY?

02:27PM   16   A.   NO.

02:27PM   17   Q.   WHEN YOU WERE AT THERANOS, FOR EACH OF THE VALIDATION

02:27PM   18   REPORTS THAT YOU SIGNED, HAD THE ASSAY PERFORMED WELL ENOUGH IN

02:27PM   19   YOUR VIEW TO MEET THE STANDARDS FOR VALIDATION?

02:27PM   20   A.   YES.

02:27PM   21   Q.   AND THE VALIDATION REQUIREMENTS, DO THEY HAVE ANYTHING TO

02:28PM   22   DO WITH TESTING ACCURACY?

02:28PM   23   A.   YES.

02:28PM   24   Q.   AND ARE THEY THE END OF THE QUESTION WHEN IT COMES TO

02:28PM   25   ASSAY ACCURACY?

| | | |
|---|---|---|
| 02:28PM | 1 | A.   NO. |
| 02:28PM | 2 | Q.   FOR THE VALIDATION REPORTS THAT YOU SIGNED AND THE ASSAYS |
| 02:28PM | 3 | THAT MOVED INTO THE CLINICAL LAB AT THERANOS -- |
| 02:28PM | 4 | A.   YES. |
| 02:28PM | 5 | Q.   -- IN EVERY CASE DID THEY CONTINUE TO PERFORM AS WELL IN |
| 02:28PM | 6 | THE CLINICAL LAB AS THEY HAD IN VALIDATION? |
| 02:28PM | 7 | A.   NO, NOT AT ALL. |
| 02:28PM | 8 | Q.   EXPLAIN THAT. |
| 02:28PM | 9 | A.   PARTICULARLY WITH -- SO IN THE CASE OF THE EDISON TESTS |
| 02:28PM | 10 | THE -- MY ASSESSMENT WAS THAT THE ACCURACY AND REPRODUCIBILITY |
| 02:28PM | 11 | WERE NOT ANYWHERE CLOSE TO WHAT WAS SHOWN TO ME IN THE |
| 02:28PM | 12 | VALIDATION REPORTS. |
| 02:28PM | 13 | Q.   IN WHAT WAY SPECIFICALLY? |
| 02:28PM | 14 | A.   REPEAT TESTING ON SAMPLES GIVING DIFFERENT RESULTS, |
| 02:28PM | 15 | SAMPLES RUN ON DIFFERENT INSTRUMENTS GIVING DIFFERENT RESULTS, |
| 02:29PM | 16 | DISCREPANT RESULTS BETWEEN OURSELVES AND OUTSIDE LABORATORIES. |
| 02:29PM | 17 | SOMETIMES IT'S A REASONABLE APPROACH IN VALIDATION TO ACTUALLY |
| 02:29PM | 18 | SPLIT SAMPLES AND SEND OUT SOME OF THE SAMPLE TO AN OUTSIDE LAB |
| 02:29PM | 19 | SO THAT YOU CAN COMPARE YOUR RESULTS TO AN OUTSIDE LABORATORY. |
| 02:29PM | 20 | A SIMILAR THING I WAS OBSERVING AS A PHYSICIAN, AS A |
| 02:29PM | 21 | LABORATORY DIRECTOR, WAS THAT THE OUTSIDE RESULTS WERE NOT |
| 02:29PM | 22 | MATCHING OURS. |
| 02:29PM | 23 | Q.   AND ALL OF THE FACTORS THAT YOU JUST LISTED, WERE ANY OF |
| 02:29PM | 24 | THOSE FACTORS APPARENT DURING THE VALIDATION STAGE FOR THESE |
| 02:29PM | 25 | ASSAYS? |

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2744

02:29PM  1    A.   NO.

02:29PM  2    Q.   DO YOU KNOW WHETHER MS. HOLMES WAS GENERALLY FAMILIAR WITH

02:29PM  3    THE VALIDATION REPORTS?

02:29PM  4    A.   YES, SHE WAS FAMILIAR WITH THEM.

02:29PM  5    Q.   AND WHAT IS YOUR BASIS FOR SAYING THAT?

02:30PM  6    A.   SHE -- AS WE SAW DURING THE TRIAL, SHE HAD EMAILED SUREKHA

02:30PM  7    TO ASK HOW MANY OF THE TESTS HAD BEEN VALIDATED.  IT WAS

02:30PM  8    GENERALLY SOMETHING THAT SHE KEPT TABS ON, YEAH.

02:30PM  9    Q.   DURING YOUR TIME AS LABORATORY DIRECTOR AT THERANOS, DID

02:30PM 10    YOU HAVE CONVERSATIONS WITH MS. HOLMES ABOUT ACCURACY AND

02:30PM 11    RELIABILITY PROBLEMS OF THE ASSAYS?

02:30PM 12    A.   YES.

02:30PM 13    Q.   AND DURING ANY OF THOSE CONVERSATIONS DID MS. HOLMES CITE

02:30PM 14    THE VALIDATION REPORTS BACK TO YOU?

02:30PM 15    A.   NO.

02:30PM 16    Q.   IN ANY OF THOSE CONVERSATIONS DID SHE SAY, NO, WE CAN

02:30PM 17    DISMISS THESE PROBLEMS THAT WE'RE SEEING NOW BECAUSE WE SAW

02:30PM 18    GOOD PERFORMANCE AT THE VALIDATION STAGE?

02:30PM 19    A.   NO, SHE DID NOT.

02:30PM 20    Q.   DID MS. HOLMES EVER ASK YOU ABOUT THE INCONSISTENCY

02:31PM 21    BETWEEN GOOD PERFORMANCE IN VALIDATION AND POOR PERFORMANCE IN

02:31PM 22    THE LAB?

02:31PM 23    A.   NO, BUT I JUST -- DANIEL AND I DISCUSSED IT.

02:31PM 24    Q.   AND WHAT DID YOU TELL DANIEL YOUNG DURING THOSE

02:31PM 25    CONVERSATIONS?

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2745

02:31PM   1    A.   I TOLD HIM THAT THE ASSAY PERFORMANCE WAS NOT CONSISTENT

02:31PM   2    WITH THE VALIDATION ON THE EDISONS, AND HE AGREED.

02:31PM   3    Q.   SO THERE WAS NO DISPUTE AS TO THAT?

02:31PM   4    A.   NO.

02:31PM   5    Q.   AS TIME WENT BY AT THERANOS, IS IT FAIR TO SAY THAT YOU

02:31PM   6    SAW MORE AND MORE PROBLEMS WITH ACCURACY AND RELIABILITY?

02:31PM   7    A.   YES.

02:31PM   8    Q.   ON CROSS-EXAMINATION MR. WADE ASKED YOU ABOUT VALIDATION

02:31PM   9    REPORTS THAT YOU SIGNED OVER A SERIES OF MONTHS DURING YOUR

02:31PM   10   TIME AT THE COMPANY.

02:31PM   11        DO YOU RECALL THAT?

02:31PM   12   A.   YES.

02:31PM   13   Q.   AND WHY DID YOU CONTINUE TO SIGN VALIDATION REPORTS FOR

02:31PM   14   THE EDISON, FOR EXAMPLE, AFTER SEEING THE ACCURACY AND

02:32PM   15   RELIABILITY PROBLEMS THAT WE HAVE BEEN TALKING ABOUT?

02:32PM   16   A.   I WAS ASSESSING THE PERFORMANCE OF THE ASSAY FOR

02:32PM   17   INDIVIDUAL ANALYTES BASED ON THE DATA IN THE VALIDATION REPORT.

02:32PM   18   Q.   WHEN A VALIDATION REPORT WAS PRESENTED TO YOU FOR

02:32PM   19   SIGNATURE, WOULD THAT BE FOR AN ASSAY THAT WAS ALREADY BEING

02:32PM   20   RUN IN THE CLINICAL LAB?

02:32PM   21   A.   NO.

02:32PM   22   Q.   AND DOES THAT MEAN THAT THERE WERE KINDS OF INFORMATION

02:32PM   23   THAT YOU WOULDN'T HAVE ABOUT THAT ASSAY THAT YOU WOULD HAVE IF

02:32PM   24   IT HAD BEEN RUN ON ACTUAL PATIENT SAMPLES?

02:32PM   25   A.   YES.

ROSENDORFF REDIRECT BY MR. BOSTIC                              2746

02:32PM   1    Q.   AND WHAT KINDS OF INFORMATION ARE WE TALKING ABOUT THERE?

02:32PM   2    A.   AS I MENTIONED, INCONSISTENCIES WITH THE MEDICAL PICTURE

02:32PM   3    OF THE PATIENT, OUTSIDE LAB RESULTS THAT DON'T MATCH UP, REPEAT

02:32PM   4    TESTING ON, YOU KNOW, CLINICAL SAMPLES, PREANALYTIC ISSUES SUCH

02:33PM   5    AS DURING COLLECTION TRANSPORTATION THAT WE'VE SPOKEN ABOUT, A

02:33PM   6    HOST OF ISSUES THAT WOULD NOT BE CAPTURED IN THE VALIDATION

02:33PM   7    REPORT.

02:33PM   8    Q.   AS A LAB DIRECTOR, WOULD YOU EVER REFUSE TO SIGN A

02:33PM   9    VALIDATION REPORT FOR ONE ASSAY BASED ON THE PERFORMANCE THAT

02:33PM  10    YOU HAD SEEN OF ANOTHER ASSAY?

02:33PM  11    A.   NO.

02:33PM  12    Q.   WHY NOT?

02:33PM  13    A.   I WAS ASSESSING EACH VALIDATION ON ITS OWN MERITS BASED ON

02:33PM  14    THE DATA IN THE VALIDATION.  THERE WOULD BE NO, THERE WOULD BE

02:33PM  15    NO RIGOROUS SCIENTIFIC WAY OF REFUSING TO SIGN A VALIDATION

02:33PM  16    OTHER THAN WHAT WAS PRESENTED IN TERMS OF DATA IN THE

02:33PM  17    VALIDATION REPORT.

02:33PM  18    Q.   ALL OF THE VALIDATION WORK THAT YOU WITNESSED AT THERANOS,

02:33PM  19    THAT YOU WERE INVOLVED IN, I'M CURIOUS ABOUT HOW YOU VIEWED

02:34PM  20    THAT WORK AND THOSE DOCUMENTS AT THE TIME THAT YOU DECIDED TO

02:34PM  21    LEAVE THE COMPANY?

02:34PM  22         HOW DID THAT FACTOR INTO YOUR DECISION?

02:34PM  23    A.   I STARTED TO LOSE FAITH THAT THE VALIDATION DATA ACTUALLY

02:34PM  24    REFLECTED WHAT HAD BEEN DONE IN R&D DURING THEIR VALIDATION

02:34PM  25    WORK.

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2747

02:34PM  1    Q.  I'D LIKE TO TALK SOME MORE ABOUT HCG.

02:34PM  2    A.  YES.

02:34PM  3    Q.  DO YOU RECALL SOME QUESTIONS DURING DIRECT ABOUT HCG?

02:34PM  4    A.  YES.

02:34PM  5    Q.  AND ON CROSS-EXAMINATION YOU WERE ASKED SOME QUESTIONS

02:34PM  6    ABOUT THE HCG TEST?

02:34PM  7    A.  YES.

02:34PM  8    Q.  IF WE CAN PUT UP THE EXHIBIT 4147, PLEASE, WHICH HAS BEEN

02:34PM  9    ADMITTED.

02:34PM  10       DR. ROSENDORFF, DO YOU SEE ON THE SCREEN IN FRONT OF YOU

02:34PM  11   AN EMAIL FROM YOU ON MAY 3RD, 2014?

02:34PM  12   A.  YES.

02:34PM  13   Q.  AND YOU RECALL DISCUSSING THIS EMAIL ON DIRECT AND CROSS;

02:35PM  14   CORRECT?

02:35PM  15   A.  YES.

02:35PM  16   Q.  LET'S LOOK AT THE TEXT BELOW THAT BOX.

02:35PM  17       DR. ROSENDORFF, THIS IS THE EMAIL WHERE YOU TESTIFIED THAT

02:35PM  18   YOU DECIDED TO HALT ALL HCG TESTING ON THE EDISON.

02:35PM  19       DO YOU RECALL THAT?

02:35PM  20   A.  YES.

02:35PM  21   Q.  AND THERE WAS SOME DISCUSSION WITH MR. WADE ABOUT THE

02:35PM  22   EVENTS THAT FOLLOWED THIS AND WHAT HAPPENED NEXT.

02:35PM  23       DO YOU RECALL THAT?

02:35PM  24   A.  YES.

02:35PM  25   Q.  I'D LIKE TO SHOW YOU WHAT WE'LL MARK AS EXHIBIT 5419.

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2748

| | | |
|---|---|---|
| 02:35PM | 1 | MAY I APPROACH, YOUR HONOR? |
| 02:35PM | 2 | THE COURT:  YES. |
| 02:35PM | 3 | BY MR. BOSTIC: |
| 02:35PM | 4 | Q.  (HANDING.) |
| 02:36PM | 5 | A.  THANK YOU. |
| 02:36PM | 6 | Q.  DR. ROSENDORFF, I DON'T HAVE BINDERS FOR YOU TODAY.  I |
| 02:36PM | 7 | KNOW YOU'LL BE DISAPPOINTED. |
| 02:36PM | 8 | DO YOU HAVE EXHIBIT 5419 IN FRONT OF YOU? |
| 02:36PM | 9 | A.  THE ONE YOU JUST HANDED ME? |
| 02:36PM | 10 | Q.  UH-HUH. |
| 02:36PM | 11 | A.  YES. |
| 02:36PM | 12 | Q.  IS IT AN EMAIL DATED JUNE 5TH, 2014? |
| 02:36PM | 13 | A.  YES. |
| 02:36PM | 14 | Q.  AND IF YOU TURN TO PAGE 2 OF THE EXHIBIT, IS IT A |
| 02:36PM | 15 | CONTINUATION OF THE EMAIL CHAIN THAT WE WERE JUST LOOKING AT? |
| 02:36PM | 16 | A.  YES. |
| 02:36PM | 17 | MR. BOSTIC:  YOUR HONOR, MOVE TO ADMIT EXHIBIT 5419. |
| 02:36PM | 18 | MR. WADE:  NO OBJECTION, YOUR HONOR. |
| 02:36PM | 19 | THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED. |
| 02:36PM | 20 | (GOVERNMENT'S EXHIBIT 5419 WAS RECEIVED IN EVIDENCE.) |
| 02:36PM | 21 | BY MR. BOSTIC: |
| 02:36PM | 22 | Q.  SO IF WE CAN FLIP BRIEFLY TO PAGE 2. |
| 02:36PM | 23 | DR. ROSENDORFF, DO YOU SEE YOUR EMAIL ON MAY 30TH HALTING |
| 02:36PM | 24 | ALL TESTING ON THE EDISON; CORRECT? |
| 02:36PM | 25 | A.  YES. |

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2749

| | | |
|---|---|---|
| 02:36PM | 1 | Q.   AND YOU SAY IT'S TO BE RUN ON THE IMMULITE; IS THAT RIGHT? |
| 02:37PM | 2 | A.   YES. |
| 02:37PM | 3 | Q.   AND THE IMMULITE WAS A NON-THERANOS THIRD PARTY DEVICE? |
| 02:37PM | 4 | A.   CORRECT. |
| 02:37PM | 5 | Q.   AND LET'S GO BACK TO PAGE 1 AND MOVE UP THE CHAIN. |
| 02:37PM | 6 | AT THE BOTTOM OF PAGE 1 -- LET'S ZOOM IN ON THE BOTTOM |
| 02:37PM | 7 | COUPLE OF MESSAGES THERE. |
| 02:37PM | 8 | DO YOU SEE AT THE VERY BOTTOM THERE'S AN EMAIL FROM |
| 02:37PM | 9 | HODA ALAMDAR ASKING YOU WHETHER SHE CAN RELEASE RESULTS FOR A |
| 02:37PM | 10 | GIVEN PATIENT WHO HAD HCG TESTING ON EDISON? |
| 02:37PM | 11 | A.   YES. |
| 02:37PM | 12 | Q.   AND DO YOU SEE ABOVE THAT THERE'S AN EMAIL FROM |
| 02:37PM | 13 | DANIEL YOUNG TO SUNNY BALWANI AND CHINMAY PANGARKAR WHERE |
| 02:37PM | 14 | DANIEL YOUNG SAYS, "I WAS JUST SPEAKING WITH ADAM ABOUT THIS. |
| 02:37PM | 15 | WE WILL HOLD THE RESULT UNTIL THE STUDY WE ARE RUNNING TODAY ON |
| 02:37PM | 16 | THE EDISON ASSAY IS DONE.  DATA SHOULD BE READY TONIGHT TO |
| 02:38PM | 17 | REVIEW." |
| 02:38PM | 18 | DO YOU SEE THAT? |
| 02:38PM | 19 | A.   YES, YES. |
| 02:38PM | 20 | Q.   AND DO YOU RECALL THERE WAS A STUDY DONE AROUND THIS TIME |
| 02:38PM | 21 | TO TRY AND RESOLVE THE ISSUES AROUND THE HCG AND EDISON? |
| 02:38PM | 22 | A.   I DO NOT RECALL INDEPENDENTLY, NO. |
| 02:38PM | 23 | Q.   LET'S ZOOM IN ON THE TOP HALF OF PAGE 1. |
| 02:38PM | 24 | DO YOU SEE AN EMAIL FROM CHINMAY PANGARKAR AT THE BOTTOM |
| 02:38PM | 25 | OF THE COLLECTION THERE, "WE ARE DOING A STUDY TO ESTABLISH THE |

ROSENDORFF REDIRECT BY MR. BOSTIC                                        2750

02:38PM   1    CUT-OFF BETWEEN OORL AND INVALID RESULTS."

02:38PM   2    A.   YES.

02:38PM   3    Q.   AND THE SECOND LINE THERE SAYS, "ALSO, AS PART OF THIS, WE

02:38PM   4    WILL BE RE-DOING IQP FOR HCG."

02:38PM   5         DO YOU SEE THAT?

02:38PM   6    A.   YES.

02:38PM   7    Q.   AND WHAT WAS IQP?

02:38PM   8    A.   I DON'T KNOW ALL OF THE -- I BELIEVE IQP IS AN

02:38PM   9    INDIVIDUALIZED QUALITY CONTROL PROGRAM THAT IS -- IT'S A CAP.

02:39PM   10   IT'S AN ALTERNATIVE METHOD OF ASSESSING PROFICIENCY OR QUALITY

02:39PM   11   THAT CAP ALLOWS, AND THAT'S ABOUT ALL I KNOW ABOUT IT NOW.

02:39PM   12   Q.   AND WAS THE GOAL OF THIS ACTIVITY TO TRY TO FIGURE OUT

02:39PM   13   WHAT WAS GOING WRONG WITH HCG?

02:39PM   14   A.   YES.

02:39PM   15   Q.   AND WAS THIS ALL CONSISTENT WITH YOUR INITIAL EMAIL TO

02:39PM   16   HALT EDISON TESTING ON HCG FOR THE TIME BEING?

02:39PM   17   A.   WELL, HODA'S EMAIL SAYS I SEE SOME RESULTS IN LIS FOR HCG.

02:39PM   18        WHY WOULD THERE BE RESULTS IN THE LIS FOR HCG FOR THE

02:39PM   19   EDISON IF I'D INSTRUCTED THE LABORATORY TO HALT TESTING ON THE

02:39PM   20   EDISON?  THAT'S WHAT I DON'T UNDERSTAND.

02:39PM   21   Q.   DO YOU SEE ITEM NUMBER 2 IN YOUR THREE POINT LIST?

02:39PM   22   A.   YES.

02:39PM   23   Q.   AND IT READS HOLD ALL EDISON CTN RESULTS, DO NOT RELEASE?

02:39PM   24   A.   YES.

02:39PM   25   Q.   AND COULD THOSE HAVE BEEN RESULTS THAT HAD BEEN RUN

ROSENDORFF REDIRECT BY MR. BOSTIC                              2751

02:40PM   1    PREVIOUSLY BUT NOT YET RELEASED?

02:40PM   2    A.   I DO NOT KNOW.

02:40PM   3    Q.   I'D LIKE TO SHOW YOU NOW WHAT WE HAVE MARKED AS

02:40PM   4    EXHIBIT 5418.

02:40PM   5         MAY I APPROACH, YOUR HONOR?

02:40PM   6              THE COURT:  YES.

02:40PM   7    BY MR. BOSTIC:

02:40PM   8    Q.   (HANDING.)

02:40PM   9         DOCTOR, DO YOU NOW HAVE IN FRONT OF YOU EXHIBIT 5418?

02:40PM   10   A.   YES, I HAVE THE PAPER YOU JUST HANDED TO ME.

02:40PM   11   Q.   AND IS THIS ANOTHER EMAIL IN THE SAME CHAIN REGARDING HCG

02:40PM   12   TESTING?

02:40PM   13   A.   YES, IT IS.

02:40PM   14   Q.   BETWEEN INDIVIDUALS AT EMPLOYEES AT THERANOS INCLUDING AT

02:40PM   15   THE TOP OF THE MESSAGE SUNNY BALWANI AND ELIZABETH HOLMES?

02:41PM   16   A.   YES.

02:41PM   17              MR. BOSTIC:  YOUR HONOR, MOVE TO ADMIT EXHIBIT 5418.

02:41PM   18              MR. WADE:  NO OBJECTION.

02:41PM   19              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

02:41PM   20        (GOVERNMENT'S EXHIBIT 5418 WAS RECEIVED IN EVIDENCE.)

02:41PM   21   BY MR. BOSTIC:

02:41PM   22   Q.   AND IF WE CAN ZOOM IN ON THE BOTTOM HALF OF PAGE 1.  FROM

02:41PM   23   THERE DOWN IS PERFECT.  THANKS.

02:41PM   24        DR. ROSENDORFF, DO YOU SEE THIS IS THE SAME EMAIL CHAIN

02:41PM   25   THAT WE WERE JUST LOOKING AT?

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2752

02:41PM  1    A.   YES.

02:41PM  2    Q.   AND LET'S ZOOM IN ON THE TOP HALF OF THE PAGE NOW.

02:41PM  3         DO YOU SEE AN EMAIL FROM DANIEL YOUNG TO SUNNY BALWANI AND

02:41PM  4    CHINMAY PANGARKAR ON JUNE 4TH, 2014, AT 5:12 P.M.?

02:41PM  5    A.   YES.

02:41PM  6    Q.   AND THIS IS A FEW DAYS AFTER YOUR EMAIL ORDERING THAT HCG

02:41PM  7    TESTING ON EDISON BE STOPPED; CORRECT?

02:41PM  8    A.   CORRECT.

02:41PM  9    Q.   DANIEL YOUNG IN HIS EMAIL -- FIRST OF ALL, YOU WERE NOT

02:42PM 10    INCLUDED ON THAT EMAIL; RIGHT?

02:42PM 11    A.   CORRECT.

02:42PM 12    Q.   AND HE WRITES TO CHINMAY PANGARKAR AND SUNNY BALWANI AND

02:42PM 13    SAYS, "BY THE WAY, WE NEVER SWITCHED TO IMMULITE IN LIS -- IT

02:42PM 14    WAS NOT CLEAR TO ME THAT THIS DECISION WAS MADE.

02:42PM 15         "WE ARE LOOKING AT THE TIMING OF SWITCHING TO IMMULITE NOW

02:42PM 16    AS A FALLBACK DEPENDING ON THE STUDY RESULTS TODAY."

02:42PM 17         DO YOU SEE THAT?

02:42PM 18    A.   YES.

02:42PM 19    Q.   AND WHAT WOULD IT MEAN TO SWITCH TO IMMULITE IN LIS?

02:42PM 20    A.   IT WOULD MEAN THAT IT WOULD NOT BE RECORDED IN THE LIS

02:42PM 21    THAT THE IMMULITE WAS ACTIVE AS A METHOD FOR DOING THE HCG

02:42PM 22    TEST.  THAT REFERENCE RANGES WOULD BE THE IMMULITE REFERENCE

02:42PM 23    RANGES.  THE LIS WOULD BE ACCURATELY RECORDING WHAT METHOD WAS

02:42PM 24    USED AND WHAT THE SAMPLE TYPE WAS.

02:43PM 25         LIS IS THE SYSTEM OF RECORD FOR WHAT IS OCCURRING IN THE

ROSENDORFF REDIRECT BY MR. BOSTIC                                      2753

02:43PM   1     CLINICAL LABORATORY.

02:43PM   2     Q.   AND DOES LIS GUIDE THE WORKFLOW IN THE CLINICAL

02:43PM   3     LABORATORY?

02:43PM   4     A.   CAN YOU EXPLAIN A BIT?  I'M SORRY.

02:43PM   5     Q.   LET ME ASK A MORE SPECIFIC QUESTION.

02:43PM   6          IS MAKING THIS CHANGE IN LIS A NECESSARY STEP TO

02:43PM   7     IMPLEMENTING YOUR DIRECTION --

02:43PM   8     A.   YES.

02:43PM   9     Q.   -- TO MOVE HCG FROM EDISON ONTO THE IMMULITE?

02:43PM  10     A.   YES.

02:43PM  11     Q.   SITTING HERE TODAY, ARE YOU SURPRISED TO READ THAT ON

02:43PM  12     JUNE 4TH, 2014, DAYS AFTER YOUR EMAIL, DANIEL YOUNG WAS

02:43PM  13     EMAILING SUNNY BALWANI SAYING THAT IT WAS NOT CLEAR THAT THE

02:43PM  14     DECISION TO TAKE HCG OFF OF EDISON HAD ACTUALLY HAPPENED?

02:43PM  15     A.   YES, I AM SURPRISED.

02:43PM  16     Q.   IN YOUR VIEW WAS IT CLEAR THAT THAT DECISION HAD BEEN

02:43PM  17     MADE?

02:43PM  18     A.   YES.  IN FACT, DANIEL MAY HAVE BEEN ON THE CLS

02:44PM  19     DISTRIBUTION LIST.  I'D HAVE TO CHECK.

02:44PM  20     Q.   IN ANY CASE, DANIEL YOUNG IS RESPONDING TO THIS EMAIL

02:44PM  21     CHAIN THAT INCLUDES YOURS; CORRECT?

02:44PM  22     A.   SORRY, CAN YOU SAY AGAIN.

02:44PM  23     Q.   THE EMAIL IN FRONT OF YOU HAS DANIEL YOUNG RESPONDING IN

02:44PM  24     THE EMAIL CHAIN THAT INCLUDES YOUR INITIAL INSTRUCTIONS; IS

02:44PM  25     THAT RIGHT?

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2754

02:44PM    1      A.   YES.

02:44PM    2      Q.   THERE WAS SOME DISCUSSION DURING CROSS ABOUT THE ROLE OF

02:44PM    3      THE LABORATORY DIRECTOR.

02:44PM    4           DO YOU RECALL THAT?

02:44PM    5      A.   YES.

02:44PM    6      Q.   AND THE AUTHORITY OF THE LABORATORY DIRECTOR WITHIN THE

02:44PM    7      LAB?

02:44PM    8      A.   YES.

02:44PM    9      Q.   THIS KIND OF DECISION, THE DECISION TO CHANGE TESTING

02:44PM   10      METHODS FOR A GIVEN ASSAY BASED ON ACCURACY PROBLEMS, WHOSE

02:44PM   11      DECISION SHOULD THAT HAVE BEEN TO MAKE AT A CLINICAL LAB?

02:44PM   12      A.   THE LABORATORY DIRECTOR.

02:44PM   13      Q.   AND DID YOU FEEL AT THE TIME THAT THERE WAS ANY LACK OF

02:44PM   14      CLARITY AROUND THIS DECISION?

02:44PM   15      A.   NO.

02:44PM   16      Q.   YOU SEE AT THE TOP OF THE PAGE THAT THAT EMAIL WAS

02:45PM   17      FORWARDED BY SUNNY BALWANI TO ELIZABETH HOLMES; CORRECT?

02:45PM   18      A.   YES, I DO.

02:45PM   19      Q.   LET'S LOOK NEXT AT EXHIBIT 13875.  I BELIEVE THAT'S IN

02:45PM   20      EVIDENCE.

02:45PM   21           LOOK AT THE BOTTOM OF PAGE 1.  SO WE'RE STILL ON THAT SAME

02:45PM   22      DAY, DR. ROSENDORFF, JUNE 4TH, 2014.

02:45PM   23           DO YOU SEE THAT?

02:45PM   24      A.   YES.

02:45PM   25      Q.   AND STILL DISCUSSING HCG WITH OTHERS AT THERANOS?

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2755

02:45PM   1    A.   YES.

02:45PM   2    Q.   AND YOUR EMAIL SAYS THAT YOU HAD DISCUSSED THE PLAN FOR

02:45PM   3    HCG WITH DANIEL AND CHINMAY; CORRECT?

02:45PM   4    A.   YES.

02:45PM   5    Q.   UNDER NUMBER 2 YOU WRITE THAT THAT STEP INCLUDES ASSUMING

02:46PM   6    THAT THE INCONSISTENCIES WITH FRIDAY'S PATIENT HCG VALUES WAS

02:46PM   7    DUE TO SAMPLE MISHANDLING, AND THEN YOU PUT A QUESTION MARK.

02:46PM   8         DO YOU SEE THAT?

02:46PM   9    A.   YES.

02:46PM   10   Q.   HAD THAT BEEN ESTABLISHED AT THAT POINT THAT THE HCG

02:46PM   11   VALUES WAS DUE TO SAMPLE MISHANDLING?

02:46PM   12   A.   NO.

02:46PM   13   Q.   AND WHY WERE YOU WRITING THIS ASSUMPTION IN THIS EMAIL IF

02:46PM   14   YOU RECALL?

02:46PM   15   A.   I DON'T RECALL.

02:46PM   16   Q.   UNDERNEATH GOING FORWARD IN YOUR EMAIL.

02:46PM   17        DO YOU SEE THAT SECTION?

02:46PM   18   A.   YES.

02:46PM   19   Q.   ITEM NUMBER 1 SAYS, "CHANGE HCG TO VACUTAINER (SST OR

02:46PM   20   GOLD-TOP), AND RUN ON IMMULITE."

02:46PM   21        DO YOU SEE THAT?

02:46PM   22   A.   YES.

02:46PM   23   Q.   AND AS OF JUNE 4TH, 2014, DAYS AFTER YOUR MAY 30TH EMAIL,

02:46PM   24   WAS YOUR POSITION STILL THAT HCG SHOULD BE RUN ON THE THIRD

02:46PM   25   PARTY DEVICE AND NOT THE THERANOS DEVICE?

ROSENDORFF REDIRECT BY MR. BOSTIC                          2756

02:46PM   1    A.   YES.

02:46PM   2    Q.   LET'S GO TO PAGE 2 AND ZOOM IN ON THE TOP MESSAGE THERE.

02:47PM   3         DO YOU SEE ITEM 3 IN YOUR LIST CONTINUES, "RESUME CTN HCG

02:47PM   4    WHEN WE HAVE RESOLVED THESE ISSUES."

02:47PM   5    A.   YES.

02:47PM   6    Q.   FAIR TO SAY THAT ON JUNE 4TH AT THE TIME YOU WROTE THIS

02:47PM   7    EMAIL THAT THOSE ISSUES WERE NOT YET RESOLVED?

02:47PM   8    A.   CORRECT.

02:47PM   9    Q.   AND REMIND US WHAT THE CTN IS?

02:47PM   10   A.   CAPILLARY TUBE AND NANOTAINER.  IT'S THE COLLECTION DEVICE

02:47PM   11   FOR THERANOS TESTS.

02:47PM   12   Q.   LET'S GO BACK TO PAGE 1 OF THIS EMAIL AND ZOOM IN ON THE

02:47PM   13   MIDDLE MESSAGE ON THE PAGE FROM DANIEL YOUNG.

02:47PM   14        OKAY.  DR. ROSENDORFF, DO YOU SEE MORE REFERENCE HERE TO

02:48PM   15   REPEATING THE IQP STUDY?

02:48PM   16   A.   YES.

02:48PM   17   Q.   AND HE SAYS, "AT THIS TIME WE WILL BE READY TO SWITCH TO

02:48PM   18   IMMULITE TOMORROW NIGHT."

02:48PM   19        DO YOU SEE THAT?

02:48PM   20   A.   YES.

02:48PM   21   Q.   AND DOES THAT MEAN THAT THE SWITCH TO IMMULITE STILL HAD

02:48PM   22   NOT HAPPENED?

02:48PM   23   A.   THAT'S HOW I UNDERSTAND THIS EMAIL, YES.

02:48PM   24   Q.   AND THERE'S A NOTE BELOW THAT THAT SAYS, "IF WE NEED TO

02:48PM   25   COLLECT VACUTAINERS TOMORROW, WE WOULD NEED TO SEND SPECIAL

ROSENDORFF REDIRECT BY MR. BOSTIC                                2757

02:48PM  1    INSTRUCTIONS TO THE PSC'S."

02:48PM  2         DO YOU SEE THAT?

02:48PM  3    A.   YES.

02:48PM  4    Q.   AND DO YOU HAVE AN UNDERSTANDING AS TO WHY THAT WOULD BE

02:48PM  5    NECESSARY?

02:48PM  6    A.   THE SERVICE CENTERS THAT DO THE BLOOD COLLECTION WOULD

02:48PM  7    NEED TO KNOW WHAT KIND OF SAMPLE WAS REQUIRED FOR THIS TEST.

02:48PM  8         HOWEVER, THERE WAS ALSO A PIECE OF SOFTWARE THAT WAS

02:48PM  9    AVAILABLE TO THE PHLEBOTOMIST AT THE PSC'S THAT WOULD TELL THEM

02:48PM  10   EXACTLY -- OR CTN WAS REQUIRED FOR ANY GIVEN TEST.

02:48PM  11   Q.   AND DOES THIS MEAN THAT IN ORDER TO FOLLOW THROUGH WITH

02:48PM  12   THE CHANGE TO THE THIRD PARTY DEVICE, THE PSC'S WOULD NEED TO

02:49PM  13   RECEIVE THESE INSTRUCTIONS?

02:49PM  14   A.   YES.

02:49PM  15   Q.   DANIEL YOUNG'S EMAIL SAYS, "RIGHT NOW WE ARE NOT PLANNING

02:49PM  16   ON DOING THIS."

02:49PM  17        DO YOU SEE THAT?

02:49PM  18   A.   YES.

02:49PM  19   Q.   AND WHAT DOES THAT TELL YOU ABOUT THE LIKELIHOOD OR

02:49PM  20   WHETHER EVENTS WERE IN MOTION ALREADY TO ACTUALLY CARRY OUT

02:49PM  21   THIS CHANGE?

02:49PM  22   A.   IT INDICATES THAT HE'S NOT WILLING TO PERFORM THE STEPS TO

02:49PM  23   MOVE THE ASSAY ONTO THE IMMULITE.

02:49PM  24        I DON'T KNOW WHO HE MEANS BY "WE."

02:49PM  25   Q.   WHO WOULD BE RESPONSIBLE FOR SENDING THOSE INSTRUCTIONS TO

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2758

02:49PM   1    THE PSC'S?

02:49PM   2    A.   I BELIEVE MAX FOSQUE WAS IN CHARGE OF COORDINATION WITH

02:49PM   3    THE PSC'S.

02:50PM   4    Q.   I'D LIKE TO SHOW YOU ANOTHER EXHIBIT.

02:50PM   5         MAY I APPROACH, YOUR HONOR?

02:50PM   6              THE COURT:  YES.

02:50PM   7    BY MR. BOSTIC:

02:50PM   8    Q.   (HANDING.)

02:50PM   9         DR. YOUNG, I'VE HANDED YOU WHAT HAS BEEN MARKED AS EXHIBIT

02:50PM  10    5420?

02:50PM  11    A.   SORRY, YOU SAID DR. YOUNG.  IT'S DR. ROSENDORFF.

02:50PM  12    Q.   I'M SORRY.  DR. ROSENDORFF, I'M SORRY.

02:50PM  13    A.   NO PROBLEM.

02:50PM  14    Q.   DO YOU HAVE EXHIBIT 5420?

02:50PM  15    A.   YES.

02:50PM  16    Q.   AND IS IT AN EMAIL DATED AT THE TOP JUNE 13TH, 2014, FROM

02:50PM  17    CHRISTIAN HOLMES TO DANIEL YOUNG?

02:50PM  18    A.   YES.

02:50PM  19    Q.   AND IS THE SUBJECT LINE HCG DELAYS IN LAB?

02:50PM  20    A.   YES.

02:50PM  21              MR. BOSTIC:  YOUR HONOR, MOVE TO ADMIT EXHIBIT 5420.

02:50PM  22              MR. WADE:  NO OBJECTION, YOUR HONOR.

02:50PM  23              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

02:51PM  24        (GOVERNMENT'S EXHIBIT 5420 WAS RECEIVED IN EVIDENCE.)

02:51PM  25    BY MR. BOSTIC:

ROSENDORFF REDIRECT BY MR. BOSTIC                    2759

02:51PM  1    Q.   OKAY.  LET'S START ON PAGE 2 OF THIS EXHIBIT, PLEASE.  YOU

02:51PM  2    CAN ZOOM IN ON THE TEXT.

02:51PM  3         DO YOU SEE AT THE BOTTOM THERE AN EMAIL FROM

02:51PM  4    CHRISTIAN HOLMES TO DANIEL YOUNG ON JUNE 12TH, 2014?

02:51PM  5    A.   YES.

02:51PM  6    Q.   AND THIS IS A FEW DAYS AFTER THE EMAILS THAT WE WERE JUST

02:51PM  7    LOOKING AT; CORRECT?

02:51PM  8    A.   YES.

02:51PM  9    Q.   THIS EMAIL SAYS, "SEEMS LIKE THERE HAVE BEEN MULTIPLE

02:51PM  10   INSTANCES OF HCG TAKING MORE THAN 48 HOURS TO RUN IN THE LAB."

02:51PM  11        DO YOU SEE THAT?

02:51PM  12   A.   YES.

02:51PM  13   Q.   "THE LAB MENTIONS THAT QC CONTINUES TO FAIL PREVENTING

02:51PM  14   RESULTS GENERATION."

02:51PM  15        DO YOU SEE THAT?

02:51PM  16   A.   YES.

02:51PM  17   Q.   WHY WOULD QC FAILURE PREVENT RESULTS GENERATION?

02:51PM  18   A.   THE REGULATIONS IN GOOD LABORATORY PRACTICE PREVENT

02:51PM  19   RESULTS FROM BEING RELEASED UNLESS QC PASSES ON THEIR

02:51PM  20   INSTRUMENT FOR THAT DAY AT LEAST.

02:51PM  21   Q.   AND SO, IN OTHER WORDS, CHRISTIAN HOLMES IS SAYING HERE

02:52PM  22   THAT HCG IS TAKING A LONG TIME AND IT SEEMS LIKE A CONTRIBUTING

02:52PM  23   FACTOR IS CONTINUED FAILING OF QC?

02:52PM  24   A.   YES.

02:52PM  25   Q.   AND DO YOU RECALL THIS BEING AN ISSUE WITH HCG AT

ROSENDORFF REDIRECT BY MR. BOSTIC                          2760

02:52PM   1    THERANOS?

02:52PM   2    A.   I RECALL QC FAILURES BEING AN ISSUE WITH MULTIPLE ASSAYS.

02:52PM   3    Q.   INCLUDING HCG?

02:52PM   4    A.   YES.

02:52PM   5    Q.   LET'S GO TO PAGE 1 OF THIS EXHIBIT.

02:52PM   6         AND AT THE BOTTOM OF THE PAGE.  IF WE CAN ZOOM IN ON THE

02:52PM   7    BOTTOM HALF.

02:52PM   8         CHRISTIAN HOLMES RESPONDS TO AN ANSWER THAT THESE ARE NEW

02:52PM   9    REPORTS AND THE SAMPLES ARE CURRENTLY BEING RUN.

02:52PM  10         HE SAID "HAD TWO DOCS JUST CALL ABOUT HCG DELAYS -- CS

02:52PM  11    CHECKED ON STATUS AND THE LAB SAID THEY ARE FAILING QC AND

02:52PM  12    DON'T HAVE AN EXPECTED TURN AROUND TIME."

02:52PM  13         DO YOU SEE THAT?

02:52PM  14    A.   YES.

02:52PM  15    Q.   AND IF WE CAN ZOOM IN ON THE TOP HALF OF PAGE 1, PLEASE.

02:53PM  16         DO YOU SEE ON THE PAGE THERE AT THE BOTTOM OF THAT

02:53PM  17    COLLECTION, "WE ARE WORKING IN PARALLEL TO RUN SAMPLE ON EDISON

02:53PM  18    AS WELL AS IMMULITE"?

02:53PM  19    A.   YES.

02:53PM  20    Q.   AND DR. YOUNG GOES ON TO SAY, "BUT FOUND OUT THIS MORNING

02:53PM  21    THAT REAGENTS FOR IMMULITE ARE ON ORDER AND BACK ORDERED."

02:53PM  22         DO YOU SEE THAT?

02:53PM  23    A.   YES.

02:53PM  24    Q.   AND SO HE SAYS, "SO WE ARE PUSHING EVEN HARDER TO GET THEM

02:53PM  25    RUN ON EDISONS."

ROSENDORFF REDIRECT BY MR. BOSTIC                    2761

02:53PM   1        DO YOU SEE THAT?

02:53PM   2    A.   YES.

02:53PM   3    Q.   AND LET'S CALL UP EXHIBIT 4840 IF WE CAN.  I BELIEVE IT'S

02:53PM   4    IN EVIDENCE.  AND IF WE CAN ZOOM IN ON THE BOTTOM HALF OF

02:53PM   5    PAGE 1.

02:54PM   6        DR. ROSENDORFF, DO YOU RECALL REVIEWING THIS EMAIL DURING

02:54PM   7    CROSS-EXAMINATION?

02:54PM   8    A.   YES.

02:54PM   9    Q.   DO YOU RECALL DISCUSSING WITH MR. WADE A SUPPLY PROBLEM

02:54PM   10   INVOLVING THE COMMERCIAL REAGENT THAT WAS USED FOR HCG?

02:54PM   11   A.   YES.

02:54PM   12   Q.   MY QUESTION FOR YOU IS WAS THE PROBLEM AT THAT TIME

02:54PM   13   LIMITED TO REAGENT SUPPLY OR WERE THERE ALSO ISSUES WITH EDISON

02:54PM   14   TEST ACCURACY FOR HCG?

02:54PM   15   A.   REVIEWING THE EMAILS TODAY IT SEEMS THAT HCG WAS BEING RUN

02:54PM   16   BOTH ON THE IMMULITE AND ON THE EDISON.

02:54PM   17        THE EDISON RESULTS COULD NOT BE RELEASED BECAUSE OF QC

02:54PM   18   FAILURE, AND IT APPEARS THAT THERE WAS A SUPPLY CHAIN PROBLEM

02:54PM   19   WITH THE IMMULITE REAGENTS.

02:54PM   20   Q.   AND ARE THOSE TWO DIFFERENT THINGS OR ARE THEY ONE AND THE

02:54PM   21   SAME PROBLEM?

02:54PM   22   A.   TWO DIFFERENT THINGS.

02:54PM   23   Q.   DO YOU SEE THAT CHRISTIAN HOLMES'S EMAIL TO

02:55PM   24   ELIZABETH HOLMES IN THE MIDDLE OF THE PAGE THERE SAYS, "JUST

02:55PM   25   FYI -- HCG RIGHT NOW CAUSING SOME SERIOUS ISSUES AND PATIENT

02:55PM  1      COMPLAINTS."

02:55PM  2           DO YOU SEE THAT?

02:55PM  3      A.  YES.

02:55PM  4      Q.  HE SAYS, "BEEN SPENDING ALL MORNING TALKING TO DOCS JUST

02:55PM  5      ABOUT HCG AND WILL CONTINUE TO DO SO."

02:55PM  6           DO YOU SEE THAT?

02:55PM  7      A.  YES.

02:55PM  8      Q.  AND THE EMAIL ABOVE THAT CHRISTIAN HOLMES FOLLOWS UP AND

02:55PM  9      SAYS, "SEEMS LIKE WE ALSO HAVE A CAPACITY ISSUE RIGHT NOW WITH

02:55PM  10     EDISONS AT FULL CAPACITY AND VENOUS SAMPLES IN A SERIOUS QUEUE

02:55PM  11     NOT BEING RUN."

02:55PM  12          DO YOU SEE THAT?

02:55PM  13     A.  YES.

02:55PM  14     Q.  AND DOES THAT CONFIRM YOUR UNDERSTANDING THAT THE ACCURACY

02:55PM  15     PROBLEMS WITH HCG WERE SEPARATE FROM THE BACKLOG PROBLEM?

02:55PM  16     A.  YES, ABSOLUTELY.

02:55PM  17     Q.  AND JUST TO BE CLEAR, YOU MENTIONED THAT THIS TOLD YOU

02:55PM  18     THAT THE HCG TEST WAS BEING RUN ON THE EDISON AS WELL AS THE

02:55PM  19     IMMULITE; CORRECT?

02:55PM  20     A.  SORRY.  THESE EMAILS INDICATE THAT, YES.

02:56PM  21     Q.  AND WHY WAS THE IMMULITE BEING USED IN THE FIRST PLACE FOR

02:56PM  22     THE HCG TEST?

02:56PM  23     A.  WELL, I -- ON MAY 30TH, I HAD ORDERED THE HCG TEST TO BE

02:56PM  24     TRANSFERRED FROM THE EDISON TO THE IMMULITE.

02:56PM  25     Q.  AND WHY WAS THAT NECESSARY?

ROSENDORFF REDIRECT BY MR. BOSTIC                          2763

02:56PM  1     A.   BECAUSE OF CONCERNS ABOUT -- AROUND ACCURACY THAT STEMMED

02:56PM  2     FROM PATIENT COMPLAINTS.

02:56PM  3     Q.   LET'S MOVE FORWARD A LITTLE BIT IN TIME.  LET'S LOOK AT

02:56PM  4     EXHIBIT 13876, WHICH IS ALSO IN EVIDENCE.

02:56PM  5          LET'S GO TO PAGE 2.  ZOOM IN THERE.

02:56PM  6          AND, DR. ROSENDORFF, DO YOU RECALL THAT THIS IS AN EMAIL

02:56PM  7     FROM YOU TO CHINMAY PANGARKAR AND SURAJ SAKSENA AND

02:57PM  8     SUNNY BALWANI?

02:57PM  9     A.   YES.

02:57PM  10    Q.   AND YOU ASKED FOR A STATUS UPDATE ON THE HCG AND THE

02:57PM  11    EDISON; CORRECT?

02:57PM  12    A.   YES.

02:57PM  13    Q.   AND LET'S GO TO THE BOTTOM OF PAGE 1, PLEASE.  LET'S ZOOM

02:57PM  14    IN.

02:57PM  15         DO YOU SEE AN EMAIL FROM CHINMAY PANGARKAR SAYING, "BASED

02:57PM  16    ON REPORTS SINCE FRIDAY, WE HAVE BEEN CONSISTENTLY PASSING

02:57PM  17    QC -- SO WE DON'T HAVE A PROBLEM WITH THE CURRENT BUILD."

02:57PM  18         DO YOU SEE THAT?

02:57PM  19    A.   YES.

02:57PM  20    Q.   LET'S ZOOM OUT.

02:57PM  21         LET'S LOOK AT THE TOP HALF OF PAGE 1.  AND IN THE SECOND

02:57PM  22    TO THE TOP EMAIL YOU ASK, "SO HCG IS BACK ON VACUTAINERS?"

02:57PM  23    A.   YES.

02:57PM  24    Q.   AND MR. BALWANI ANSWERS YOU, "NO.  IT IS ON NANOTAINER'S

02:57PM  25    PER CHINMAY'S EMAIL BELOW."

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2764

02:57PM  1          DO YOU SEE THAT?

02:57PM  2     A.   YES.

02:57PM  3     Q.   AND IN THIS EMAIL ARE YOU ASKING WHAT WAS BEING USED TO

02:57PM  4     RUN HCG AT THIS POINT?

02:57PM  5     A.   YES.

02:57PM  6     Q.   AND AS LAB DIRECTOR, WHOSE DECISION SHOULD IT HAVE BEEN

02:58PM  7     WHAT DEVICE WAS BEING USED FOR A GIVEN ASSAY AT THERANOS?

02:58PM  8     A.   100 PERCENT THE LABORATORY DIRECTOR.

02:58PM  9     Q.   IF IT WORKED THAT WAY AT THERANOS, WOULD YOU HAVE HAD TO

02:58PM 10     ASK WHAT METHOD WAS BEING USED FOR A GIVEN ASSAY?

02:58PM 11     A.   NO, THERE WOULD HAVE BEEN NO CONFUSION IN MY MIND.

02:58PM 12     Q.   WE JUST SAW AN EMAIL IN THIS CHAIN INDICATING THAT HCG HAD

02:58PM 13     BEEN EXPERIENCING SOME GOOD QC PERFORMANCE.

02:58PM 14          DO YOU REMEMBER THAT?

02:58PM 15     A.   FROM CHINMAY?

02:58PM 16     Q.   YES.

02:58PM 17     A.   YES.

02:58PM 18     Q.   I'D LIKE TO SHOW YOU WHAT WE HAVE MARKED AS EXHIBIT 5421.

02:58PM 19          YOUR HONOR, I THINK I HAVE MORE THAN TWO MINUTES, BUT IF I

02:58PM 20     COULD HAVE THE COURT'S INDULGENCE, I'LL WRAP UP SOON.

02:58PM 21               THE COURT:  YES, PLEASE.  PLEASE.

02:58PM 22               MR. BOSTIC:  MAY I APPROACH, YOUR HONOR?

02:58PM 23               THE COURT:  YES.

02:58PM 24     BY MR. BOSTIC:

02:58PM 25     Q.   (HANDING.)

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2765

02:59PM   1        DR. ROSENDORFF, DO YOU HAVE IN FRONT OF YOU EXHIBIT 5421,

02:59PM   2   AN EMAIL DATED JUNE 25TH, 2014?

02:59PM   3   A.   YES.

02:59PM   4   Q.   AND THIS IS JUST A FEW DAYS AFTER THE EMAILS THAT WE WERE

02:59PM   5   JUST LOOKING AT; CORRECT?

02:59PM   6   A.   YES.

02:59PM   7   Q.   AND DO YOU SEE THE SUBJECT IS INSTRUMENT BREAKUP?

02:59PM   8   A.   YES.

02:59PM   9   Q.   AND THIS IS AN EMAIL FROM LANGLY GEE TO SUNNY BALWANI AND

02:59PM  10   YOURSELF?

02:59PM  11   A.   YES.

02:59PM  12        MR. BOSTIC:  YOUR HONOR, MOVE TO ADMIT EXHIBIT 5421.

02:59PM  13        MR. WADE:  NO OBJECTION.

02:59PM  14        THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

02:59PM  15   (GOVERNMENT'S EXHIBIT 5421 WAS RECEIVED IN EVIDENCE.)

02:59PM  16        MR. BOSTIC:  IF WE CAN ZOOM IN ON THE TEXT.

02:59PM  17   Q.   DR. ROSENDORFF, DO YOU SEE THAT THIS IS AN EMAIL ABOUT QC

02:59PM  18   PERFORMANCE ON THE EDISONS --

02:59PM  19   A.   YES.

02:59PM  20   Q.   -- ON THIS DATE IN 2014?

02:59PM  21   A.   YES.

02:59PM  22   Q.   THE EMAIL FROM LANGLY GEE NOTES, "33 EDISONS QC 6/24

02:59PM  23   EVENING, 20 EDISONS PASSED."

02:59PM  24        DOES THIS MEAN THAT ONLY 20 OUT OF 33 EDISONS PASSED

03:00PM  25   QUALITY CONTROL ON THAT OCCASION?

ROSENDORFF REDIRECT BY MR. BOSTIC                                2766

03:00PM   1      A.   CORRECT.

03:00PM   2      Q.   LESS THAN TWO-THIRDS?

03:00PM   3      A.   CORRECT, SLIGHTLY LESS THAN TWO-THIRDS, CORRECT.

03:00PM   4      Q.   AND THE EMAIL THEN GOES ON TO NOTE, "9 EDISONS FOR TES,

03:00PM   5      TSH, HCG, FT4, AND VITAMIN D FAILED LEVEL 1 AND/OR LEVEL 2 QC."

03:00PM   6           DO YOU SEE THAT?

03:00PM   7      A.   YES.

03:00PM   8      Q.   AND HAVING MULTIPLE EDISONS FAIL QC FOR HCG, WOULD THAT

03:00PM   9      GIVE YOU CONFIDENCE IN THE ACCURACY OF THE EDISON HCG TEST?

03:00PM  10      A.   NO.

03:00PM  11      Q.   BY THE WAY, THIS EMAIL, THE FIRST LINE OF LANGLY GEE'S

03:00PM  12      EMAIL SAYS AT THE END THERE, "ALL QC'S PASSED UPSTAIRS."

03:00PM  13           DO YOU SEE THAT?

03:00PM  14      A.   YES.

03:00PM  15      Q.   AND WHAT WAS THE UPSTAIRS PORTION OF THE LAB AT THERANOS?

03:00PM  16      A.   THAT'S WHERE THE IMMULITE WAS STATIONED.

03:00PM  17      Q.   AND WHAT OTHER EQUIPMENT WAS STORED OR USED IN THE

03:00PM  18      UPSTAIRS PORTION OF THE LAB?

03:00PM  19      A.   ADVIA 1800'S FOR GENERAL CHEMISTRIES, THE DIASORIN FOR

03:01PM  20      VITAMIN D, AN INSTRUMENT FOR ORDER ANTIBODIES, AN INSTRUMENT

03:01PM  21      FOR PT AND INR.  ALL OF THEM WERE PREDICATE FDA APPROVED

03:01PM  22      INSTRUMENTS.

03:01PM  23      Q.   AND ALL DEVICES BOUGHT BY THIRD PARTIES NOT MANUFACTURED

03:01PM  24      BY THERANOS; CORRECT?

03:01PM  25      A.   YES.

03:01PM  1     Q.   NOT MODIFIED BY THERANOS?

03:01PM  2     A.   YES.

03:01PM  3     Q.   WERE THEY FDA APPROVED?

03:01PM  4     A.   YES.

03:01PM  5     Q.   AND THIS INDICATES THAT FOR THOSE MACHINES ALL QC'S WERE

03:01PM  6     PASSED; CORRECT?

03:01PM  7     A.   YES.

03:01PM  8     Q.   LET ME SHOW YOU ONE MORE EXHIBIT, WHICH WE'VE MARKED AS

03:01PM  9     5422.

03:01PM  10         MAY I APPROACH, YOUR HONOR?

03:01PM  11             THE COURT:  YES.

03:01PM  12    BY MR. BOSTIC:

03:01PM  13    Q.   (HANDING.)

03:02PM  14         DR. ROSENDORFF, IN FRONT OF YOU IS AN EMAIL MARKED

03:02PM  15    EXHIBIT 5422 DATED JUNE 28TH, 2014?

03:02PM  16    A.   YES.

03:02PM  17    Q.   AND SO JUST A FEW DAYS AFTER THE LAST EMAIL THAT WE LOOKED

03:02PM  18    AT; CORRECT?

03:02PM  19    A.   YES.

03:02PM  20    Q.   AND NOT QUITE A MONTH AFTER YOUR EMAIL WHERE YOU ATTEMPTED

03:02PM  21    TO HALT EDISON HCG TESTING; CORRECT?

03:02PM  22    A.   YES.

03:02PM  23    Q.   AND IS THIS ANOTHER EMAIL DISCUSSING QC PERFORMANCE ON THE

03:02PM  24    EDISON?

03:02PM  25    A.   YES.

ROSENDORFF REDIRECT BY MR. BOSTIC                            2768

03:02PM   1              MR. BOSTIC:  YOUR HONOR, MOVE TO ADMIT EXHIBIT 5422.

03:02PM   2              MR. WADE:  NO OBJECTION.

03:02PM   3              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

03:02PM   4         (GOVERNMENT'S EXHIBIT 5422 WAS RECEIVED IN EVIDENCE.)

03:02PM   5              THE WITNESS:  I'M SORRY, I HAVE TO GO TO THE

03:02PM   6   BATHROOM AGAIN.  I'M SORRY.

03:02PM   7              THE COURT:  OKAY.

03:02PM   8              MR. BOSTIC:  OKAY.

03:02PM   9              THE COURT:  IF YOU NEED TO TAKE A BREAK, WE'LL TAKE

03:02PM  10   A BREAK.

03:02PM  11         LADIES AND GENTLEMEN, LET'S TAKE ABOUT A FIVE MINUTE

03:02PM  12   BREAK, AND THEN WE'LL COME BACK.

03:03PM  13         (JURY OUT AT 3:03 P.M.)

03:03PM  14              THE COURT:  PLEASE BE SEATED.  THANK YOU.

03:03PM  15         THE JURY HAS LEFT.  THE WITNESS HAS STEPPED DOWN.

03:03PM  16         ALL COUNSEL AND MS. HOLMES IS PRESENT.

03:03PM  17         YOU'RE JUST GOING TO FINISH WITH THIS DOCUMENT AND THEN

03:03PM  18   WE'LL WRAP IT UP I TAKE IT?

03:03PM  19              MR. BOSTIC:  I HAVE ABOUT 30 SECONDS LEFT,

03:03PM  20   YOUR HONOR.

03:03PM  21              THE COURT:  ALL RIGHT.  GREAT.  WE'LL TAKE A FIVE

03:03PM  22   MINUTE RECESS.  THANK YOU.

03:04PM  23         (RECESS FROM 3:04 P.M. UNTIL 3:09 P.M.)

03:09PM  24         (JURY IN AT 3:09 P.M.)

03:09PM  25              THE COURT:  PLEASE BE SEATED.  THANK YOU.  WE'RE

ROSENDORFF REDIRECT BY MR. BOSTIC                                      2769

03:09PM   1      BACK ON THE READY.

03:09PM   2           ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

03:09PM   3           MR. BOSTIC -- OH, WE'RE MISSING ONE.  MR. BOSTIC, YOU HAD

03:09PM   4      A NICE PIC THERE AND I COULDN'T SEE, WHICH IS TO SAY BASKETBALL

03:09PM   5      SEASON IS UPON US, RIGHT?

03:09PM   6           MR. BOSTIC:  I'LL RELY ON THE OTHER MEMBERS OF MY

03:09PM   7      TEAM FOR SPORTS REFERENCE EXPLANATIONS.

03:09PM   8           (LAUGHTER.)

03:10PM   9           THE COURT:  ALL RIGHT.  THANK YOU.  PLEASE BE

03:10PM  10      SEATED.

03:10PM  11           OUR JURY IS PRESENT.  ALL PARTIES PREVIOUSLY PRESENT ARE

03:10PM  12      PRESENT ONCE AGAIN.

03:10PM  13           MR. BOSTIC.

03:10PM  14      BY MR. BOSTIC:

03:10PM  15      Q.   DR. ROSENDORFF, JUST TWO FINAL QUESTIONS ABOUT THE

03:10PM  16      DOCUMENT IN FRONT OF YOU.

03:10PM  17           DO YOU SEE AN EMAIL ON JUNE 29TH, 2014?

03:10PM  18      A.   JUNE 28TH.

03:10PM  19      Q.   JUNE 28TH, 2014?

03:10PM  20      A.   YES.

03:10PM  21      Q.   AND WE JUST LOOKED AT AN EMAIL REPORTING THAT ABOUT

03:10PM  22      TWO-THIRDS, NOT QUITE TWO-THIRDS OF EDISONS HAD PASSED QC A FEW

03:10PM  23      DAYS EARLIER; IS THAT CORRECT?

03:10PM  24      A.   YES, THAT WAS THE PREVIOUS EMAIL ON JUNE 25TH.

03:10PM  25      Q.   THIS EMAIL ON JUNE 28TH INDICATES THAT ONLY 17 OUT OF 35

ROSENDORFF REDIRECT BY MR. BOSTIC                                    2770

03:10PM    1    EDISONS PASSED QC FOR THE PRECEDING NIGHT.

03:10PM    2         DO YOU SEE THAT?

03:10PM    3    A.   YES.

03:10PM    4    Q.   AND IS THAT LESS THAN HALF OF THE EDISONS?

03:10PM    5    A.   YES.

03:10PM    6    Q.   AND THE FOLLOWING SENTENCE NOTES THAT HCG WAS NOT

03:11PM    7    AVAILABLE FOR TESTING ON THAT DAY.

03:11PM    8         DO YOU SEE THAT?

03:11PM    9    A.   YES.

03:11PM   10    Q.   MY QUESTION FOR YOU IS AT THERANOS WERE YOUR CONCERNS

03:11PM   11    ABOUT HCG TESTING ACCURACY EVER ADDRESSED TO YOUR SATISFACTION?

03:11PM   12    A.   NO.

03:11PM   13    Q.   WE SAW A MAY 30TH EMAIL FROM YOU IN ALL CAPS DIRECTING

03:11PM   14    THAT TESTING STOP ON THE EDISON?

03:11PM   15    A.   YES.

03:11PM   16    Q.   WHY DON'T WE SEE MORE ALL CAPS EMAILS FROM YOU ABOUT THIS

03:11PM   17    ISSUE FOLLOWING THAT DATE?

03:11PM   18    A.   AS SHOWN IN THE PREVIOUS EMAIL, THERE WAS SOME UNCERTAINTY

03:11PM   19    IN MY MIND WHAT METHOD WAS BEING RUN FOR HCG.

03:11PM   20         I TRUSTED MY COLLEAGUES THAT THEY WOULD FOLLOW MY

03:11PM   21    INSTRUCTIONS.

03:11PM   22    Q.   FOLLOWING THIS INCIDENT, DID YOU CONTINUE TO TRUST THAT

03:11PM   23    THE COMPANY WOULD FOLLOW YOUR DIRECTION WHEN IT CAME TO THESE

03:12PM   24    KINDS OF DECISIONS?

03:12PM   25         LET ME ASK IT A DIFFERENT WAY.

2771

03:12PM 1    DID THIS INCIDENT HAVE ANY EFFECT ON YOUR TRUST IN THE

03:12PM 2    COMPANY TO FOLLOW THROUGH ON YOUR DIRECTIONS?

03:12PM 3    A.   YES.

03:12PM 4         MR. BOSTIC:  NO FURTHER QUESTIONS FOR TODAY.  THIS

03:12PM 5    MIGHT BE A GOOD TIME FOR A BREAK, YOUR HONOR.

03:12PM 6         THE COURT:  LET'S -- WE'LL TAKE OUR EVENING RECESS

03:12PM 7    NOW, LADIES AND GENTLEMEN.  THANK YOU.

03:12PM 8    AND BEFORE WE DO THAT, I DO NEED TO ADVISE YOU ONCE AGAIN,

03:12PM 9    REMIND YOU OF THE ADMONITION, PLEASE DO NOT DO ANY RESEARCH ON

03:12PM 10   THIS CASE OR ANYONE ATTACHED TO IT.

03:12PM 11   DO NOT PAY ATTENTION AND PLEASE IGNORE ANY INFORMATION

03:12PM 12   THAT YOU MIGHT COME ACROSS IN ANY MEDIA, YOUR SOCIAL MEDIA, ANY

03:12PM 13   CONVERSATIONS YOU MIGHT HAVE WITH OTHER INDIVIDUALS.

03:12PM 14   IF YOU SHOULD INADVERTENTLY COME ACROSS ANY OF THAT

03:12PM 15   MATERIAL, I WOULD ASK YOU TO PLEASE TURN AWAY, TURN OFF THE

03:12PM 16   DEVICE, WHATEVER IT IS, AND YOU CAN TELL ME ABOUT IT TOMORROW

03:13PM 17   MORNING WHEN I ASK THE QUESTION.

03:13PM 18   BUT I APPRECIATE YOUR CONTINUED FIDELITY TO THIS

03:13PM 19   ADMONITION.  WE'RE ALL GRATEFUL FOR IT.

03:13PM 20   SO WE'LL TAKE OUR RECESS.  WE'LL SEE YOU TOMORROW MORNING

03:13PM 21   AT 9:00 O'CLOCK, 9:00 O'CLOCK.

03:13PM 22   MY SENSE IS THAT WE'LL BE ABLE TO FINISH WITH

03:13PM 23   DR. ROSENDORFF IN THE MORNING, I THINK, AND THEN THE GOVERNMENT

03:13PM 24   WILL HAVE AN ADDITIONAL WITNESS, AND WE CAN PROCEED.

03:13PM 25        ALL RIGHT.  THANK YOU VERY MUCH.  WE'LL SEE YOU TOMORROW.

2772

03:13PM   1    THANK YOU.

03:13PM   2              (JURY OUT AT 3:13 P.M.)

03:13PM   3              THE COURT:  THANK YOU, DOCTOR.  YOU CAN STAND DOWN.

03:13PM   4    WE'LL SEE YOU IN THE MORNING.

03:13PM   5              THE WITNESS:  THANK YOU, YOUR HONOR.

03:13PM   6              THE COURT:  YOU'RE WELCOME.

03:14PM   7         PLEASE BE SEATED.  THANK YOU.

03:14PM   8         ALL RIGHT.  THE RECORD SHOULD REFLECT THAT THE JURY HAS

03:14PM   9    LEFT FOR THE DAY.  DR. ROSENDORFF HAS LEFT THE COURTROOM.

03:14PM   10        ALL COUNSEL AND MS. HOLMES ARE PRESENT.

03:14PM   11        ANYTHING BEFORE WE END FOR THE DAY?

03:14PM   12        MR. LEACH, YES?

03:14PM   13             MR. LEACH:  VERY BRIEFLY, YOUR HONOR.  JUST ONE

03:14PM   14    HOUSEKEEPING MATTER.

03:14PM   15        TOMORROW THE GOVERNMENT ANTICIPATES ABOUT ANOTHER HOUR OF

03:14PM   16    REDIRECT OF DR. ROSENDORFF.  WE'RE BUDGETING IN SOME TIME FOR

03:14PM   17    RECROSS.

03:14PM   18        WE HAVE ANOTHER LOCAL WITNESS WHO I ANTICIPATE THE DIRECT

03:14PM   19    WILL BE SOMEWHERE IN THE NEIGHBORHOOD WILL BE AN HOUR AND A

03:14PM   20    HALF TO TWO HOURS.

03:14PM   21        I'M ADVISED BY MR. DOWNEY THE CROSS WOULD BE AN EQUIVALENT

03:14PM   22    LENGTH.

03:14PM   23        BASED ON THAT WE DON'T ANTICIPATE A NEED FOR A THIRD

03:14PM   24    WITNESS TOMORROW, BUT IF THE COURT HAS A PREFERENCE?  WE DIDN'T

03:15PM   25    FLY WITNESSES OUT THIS WEEK BECAUSE OF THE SHORT WEEK.

2773

03:15PM  1        IF THE COURT HAS A PREFERENCE, WE CAN FIND SOMEONE ELSE TO

03:15PM  2   FILL WHATEVER VERY SMALL AMOUNT OF TIME WE COULD HAVE.

03:15PM  3        BUT I JUST WANT TO MAKE SURE THAT WE'RE MANAGING THE

03:15PM  4   COURT'S TIME.

03:15PM  5             THE COURT:  THANK YOU FOR ADVISING ME OF THAT.

03:15PM  6        MR. DOWNEY, ANY COMMENT?  OBSERVATION?

03:15PM  7             MR. DOWNEY:  I THINK PROJECTING LENGTHS SIMILAR TO

03:15PM  8   MR. LEACH AND THEN CONTROLLING FOR THEM A LITTLE BIT.  I DON'T

03:15PM  9   THINK THERE'S ANY LIKELIHOOD THAT ANOTHER WITNESS WOULD BE

03:15PM 10   NEEDED BY THE GOVERNMENT.  SO I ADVISED MR. LEACH OF THAT, AND

03:15PM 11   I THINK -- I DON'T THINK WE'LL BE PROVEN WRONG IN THAT REGARD.

03:15PM 12             THE COURT:  ALL RIGHT.  THANK YOU FOR LETTING ME

03:15PM 13   KNOW.

03:15PM 14        MY SENSE IS THAT WE'LL JUST HAVE THIS ONE WITNESS AFTER

03:15PM 15   DR. ROSENDORFF, AND WE'LL SEE HOW FAR WE GET WITH THAT WITNESS,

03:15PM 16   AND THAT WILL BE OUR WEEK I PRESUME.

03:15PM 17             MR. LEACH:  VERY WELL.

03:15PM 18             MR. DOWNEY:  YOUR HONOR, I THINK THERE WILL BE ONE

03:15PM 19   SMALL 403 TYPE WITNESS WITH RESPECT TO THE NEW WITNESS

03:15PM 20   TOMORROW.  I DON'T THINK IT INVOLVES ANY DOCUMENTS.  I THINK IT

03:16PM 21   WOULD PROBABLY JUST BE A DISCUSSION WITH THE COURT.

03:16PM 22             THE COURT:  SURE.

03:16PM 23             MR. DOWNEY:  BUT JUST TO APPRISE YOU WE MIGHT NEED

03:16PM 24   THE 8:30 SEGMENT TOMORROW.

03:16PM 25             THE COURT:  ALL RIGHT.  WE'LL PLAN ON THAT THEN.

03:16PM 1    YOU CAN LET ME KNOW TOMORROW MORNING WHETHER YOU NEED TO CHAT

03:16PM 2    OR NOT OR WHATEVER.

03:16PM 3        OKAY.  THAT SOUNDS GOOD.

03:16PM 4            MR. LEACH:  THANK YOU, YOUR HONOR.

03:16PM 5            MR. DOWNEY:  THANK YOU, YOUR HONOR.

03:16PM 6            THE COURT:  HAVE A GOOD EVENING EVERYONE.

03:16PM 7            THE CLERK:  COURT IS ADJOURNED.

03:16PM 8        (COURT ADJOURNED AT 3:16 P.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2
 3                        CERTIFICATE OF REPORTERS
 4
 5
 6
 7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE
 8   UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
 9   CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10   HEREBY CERTIFY:
11        THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13   ABOVE-ENTITLED MATTER.
14
15
16        _____
          IRENE RODRIGUEZ, CSR, CRR
17        CERTIFICATE NUMBER 8076
18
19        _____
          LEE-ANNE SHORTRIDGE, CSR, CRR
20        CERTIFICATE NUMBER 9595
21        DATED:  OCTOBER 5, 2021
22
23
24
25
```

2775

1

2                      UNITED STATES DISTRICT COURT

3                     NORTHERN DISTRICT OF CALIFORNIA

4                           SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
6                                    )
                      PLAINTIFF,     )  SAN JOSE, CALIFORNIA
7                                    )
             VS.                     )  VOLUME 16
8                                    )
   ELIZABETH A. HOLMES,              )  OCTOBER 6, 2021
9                                    )
                      DEFENDANT.     )  PAGES 2775 - 3000
10   _____)

11

12                   TRANSCRIPT OF TRIAL PROCEEDINGS
               BEFORE THE HONORABLE EDWARD J. DAVILA
13               UNITED STATES DISTRICT JUDGE

     A P P E A R A N C E S :
14

15   FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                            BY:  JOHN C. BOSTIC
16                               JEFFREY B. SCHENK
                            150 ALMADEN BOULEVARD, SUITE 900
                            SAN JOSE, CALIFORNIA 95113
17

18                          BY:  ROBERT S. LEACH
                                 KELLY VOLKAR
19                          1301 CLAY STREET, SUITE 340S
                            OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

     OFFICIAL COURT REPORTERS:
22                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074
23                          LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER

```
 1       A P P E A R A N C E S: (CONT'D)

 2

 3   FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                              BY:  KEVIN M. DOWNEY
 4                                 LANCE A. WADE
                                   KATHERINE TREFZ
 5                                 RICHARD CLEARY
                                   J.R. FLEURMONT
 6                                 ANDREW LEMENS
                              725 TWELFTH STREET, N.W.
 7                            WASHINGTON, D.C. 20005

 8                            LAW OFFICE OF JOHN D. CLINE
                              BY:  JOHN D. CLINE
 9                            ONE EMBARCADERO CENTER, SUITE 500
                              SAN FRANCISCO, CALIFORNIA 94111
10

11   ALSO PRESENT:           FEDERAL BUREAU OF INVESTIGATION
                              BY:  ADELAIDA HERNANDEZ
12
                              OFFICE OF THE U.S. ATTORNEY
13                            BY:  LAKISHA HOLLIMAN, PARALEGAL
                                   MADDI WACHS, PARALEGAL
14
                              WILLIAMS & CONNOLLY
15                            BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

16                            TBC
                              BY:  BRIAN BENNETT, TECHNICIAN
17

18

19

20

21

22

23

24

25
```

INDEX OF PROCEEDINGS

GOVERNMENT'S:


**ADAM ROSENDORFF**
REDIRECT EXAM BY MR. BOSTIC                    P. 2804
RECROSS-EXAM BY MR. WADE                       P. 2890


**STEVEN BURD**
DIRECT EXAM BY MR. LEACH                        P. 2938

<u>INDEX OF EXHIBITS</u>

|  | IDENT. | EVIDENCE |
|---|---|---|
| <u>GOVERNMENT'S:</u> | | |
| 1113 | | 2819 |
| 4316 | | 2846 |
| 1295 | | 2849 |
| 5417 | | 2861 |
| 336 | | 2950 |
| 370 | | 2959 |
| 378 | | 2965 |
| 387 | | 2969 |
| 423 | | 2982 |
| 5426 | | 2986 |
| 495 | | 2987 |
| 496 | | 2989 |
| 718 | | 2994 |
| | | |
| | | |
| <u>DEFENDANT'S:</u> | | |
| 13950 | | 2892 |

2779

1   SAN JOSE, CALIFORNIA                    OCTOBER 6, 2021

2                    P R O C E E D I N G S

08:35:16   3        (COURT CONVENED AT 8:35 A.M.)

08:35:16   4        (JURY OUT AT 8:35 A.M.)

08:35:16   5             THE COURT:  THANK YOU.  PLEASE BE SEATED.

08:35:22   6        AND WE'RE BACK ON THE RECORD IN UNITED STATES VERSUS

08:35:27   7   HOLMES.  ALL COUNSEL ARE PRESENT.  MS. HOLMES IS PRESENT.

08:35:33   8        WE'RE OUTSIDE THE PRESENCE OF THE JURY.

08:35:34   9        I THINK COUNSEL WANTED TO MEET THIS MORNING.

08:35:36   10        MR. DOWNEY, YOU HAD A QUESTION, I THINK.

08:35:40   11             MR. DOWNEY:  I DO, YOUR HONOR.

08:35:42   12        YOUR HONOR, THIS IS RELATED TO OUR SECOND WITNESS TODAY,

08:35:46   13   THE NEW WITNESS WHO IS STEVEN BURD, WHO IS THE FORMER CEO OF

08:35:51   14   SAFEWAY.

08:35:52   15        AS THE COURT KNOWS, SAFEWAY WAS A CONTRACTUAL COUNTERPARTY

08:35:55   16   OF THERANOS UNDER AN AGREEMENT WHERE THERANOS WAS TO OPEN SITES

08:36:07   17   WITHIN SAFEWAY STORES.  THAT WAS DONE PURSUANT TO A SERIES OF

08:36:09   18   CONTRACTS UNDER WHICH SAFEWAY PAID UNDER FAIRLY COMPLEX

08:36:11   19   ARRANGEMENTS WHICH AREN'T REALLY RELEVANT TO THE DISCUSSION I

08:36:15   20   WANT TO HAVE WITH THE COURT THIS MORNING.

08:36:17   21        WE RAISED THE ISSUE, AS YOUR HONOR KNOWS, IN THE PRETRIAL

08:36:21   22   PHASE AS TO WHETHER THAT CONSTITUTED AN INVESTMENT.

08:36:24   23        THE COURT HAS ALREADY RULED THAT IT DOES, SO THERE'S NO

08:36:26   24   QUESTION, I THINK, FOR PRESENT PURPOSES THAT THE ASSUMPTION IS

08:36:29   25   THAT THE MONEY SPENT BY SAFEWAY UNDER THAT CONTRACT ARE THE

| | | |
|---|---|---|
| 08:36:36 | 1 | PROPERTY OF WHICH IT WAS DEPRIVED, AND IT'S BEEN DETERMINED BY |
| 08:36:39 | 2 | YOUR HONOR THAT THAT WAS AN INVESTMENT. |
| 08:36:41 | 3 | THAT EVIDENCE I ANTICIPATE WILL ALL COME IN. |
| 08:36:45 | 4 | THIS DISCUSSION RELATES TO A SEPARATE SET OF EVIDENCE, |
| 08:36:50 | 5 | WHICH IS TESTIMONY FROM MR. BURD ABOUT RENOVATION EXPENSES THAT |
| 08:36:53 | 6 | SAFEWAY INCURRED TO PLACE THERANOS IN ITS STORES. |
| 08:36:59 | 7 | I DON'T THINK THERE'S ANY SERIOUS QUESTION THAT THAT IS |
| 08:37:01 | 8 | NOT AN INVESTMENT.  IT'S FAIRLY -- IT'S NOT AN INVESTMENT, NOR |
| 08:37:05 | 9 | IS IT PROPERTY UNDER THE WIRE FRAUD STATUTE.  I THINK THE |
| 08:37:10 | 10 | SUPREME COURT CASE LAW IS VERY CLEAR, INCLUDING IN THE LAST |
| 08:37:14 | 11 | TERM UNDER UNITED STATES VERSUS KELLY, THAT THAT DOES NOT |
| 08:37:17 | 12 | CONSTITUTE PROPERTY, WHICH IS -- WHICH THE VICTIM IS DEPRIVED |
| 08:37:23 | 13 | OF. |
| 08:37:24 | 14 | SO I DON'T THINK UNDER 401 IT HAS DIRECT RELEVANCE. |
| 08:37:28 | 15 | THAT'S NOT REALLY THE ISSUE, BECAUSE THE COURT MIGHT SAY |
| 08:37:30 | 16 | THERE'S SOME OTHER REASON THAT A DISCUSSION OF THAT IS |
| 08:37:33 | 17 | RELEVANT. |
| 08:37:34 | 18 | IT'S A VERY COMPLEX ISSUE, YOUR HONOR.  WE WOULD HAVE TO |
| 08:37:39 | 19 | PUT IN EVIDENCE REBUTTING THE REASONS WHY SAFEWAY SPENT THAT |
| 08:37:43 | 20 | MONEY, THERANOS'S OFFER TO ACTUALLY PAY TO LEASE THAT SPACE, |
| 08:37:48 | 21 | WHETHER THAT MONEY, THE DETERMINATION TO PAY THAT MONEY WAS |
| 08:37:55 | 22 | SAFEWAY'S OWN DECISION OR NOT. |
| 08:37:56 | 23 | SO WE'RE EXPOSED TO A VARIETY OF MINI TRIALS AS OPPOSED TO |
| 08:38:00 | 24 | PREJUDICE FROM SHOWING THE AMOUNT OF THE EXPENDITURE, WHICH IS |
| 08:38:03 | 25 | SAID TO BE IN THE HUNDREDS OF MILLIONS OF DOLLARS. |

```
08:38:06   1          SO I WOULD LIKE TO ASK THAT THAT BE EXCLUDED FROM

08:38:09   2    MR. BURD'S TESTIMONY, WHICH I THINK WILL LARGELY BE ORAL.

08:38:12   3          THE COURT:  OKAY.  THANK YOU.

08:38:14   4       MR. LEACH, DO YOU WANT TO COMMENT ON THIS?  LET'S SEE IF

08:38:18   5    THIS -- MAYBE YOU KNOW MR. LEACH IS GOING TO GO INTO THIS.  I

08:38:22   6    DON'T KNOW.

08:38:22   7          MR. DOWNEY:  I DON'T KNOW FOR SURE, BUT WE DID CHAT

08:38:26   8     YESTERDAY AND I SUSPECT SO.

08:38:27   9          MR. LEACH:  WE ARE GOING TO GET INTO IT, YOUR HONOR,

08:38:30  10     ABSENT THE COURT SUSTAINING AN OBJECTION.

08:38:33  11       AND JUST TO BE CLEAR, SAFEWAY IS AN INVESTOR.  THEY

08:38:37  12    ENTERED INTO A CONTRACTUAL ARRANGEMENT WITH THERANOS WHEREBY

08:38:42  13    THEY NEED TO HAVE THE RIGHTS TO ACQUIRE CONVERTIBLE NOTES.

08:38:49  14       A NUMBER OF REPRESENTATIONS ARE MADE DIRECTLY BY

08:38:52  15    MS. HOLMES TO MR. BURD ABOUT WHAT THERANOS'S TECHNOLOGY CAN DO,

08:38:57  16    WHAT THERANOS'S FINANCIAL STATUS IS, THEIR RELATIONSHIP WITH

08:39:02  17    PHARMACEUTICAL COMPANIES, AND THE BONA FIDES OF THE TECHNOLOGY.

08:39:06  18       BASED ON THOSE STATEMENTS, SAFEWAY SPENT APPROXIMATELY

08:39:10  19    $300 MILLION BUILDING OUT ITS STORES IN ANTICIPATION OF THE

08:39:14  20    DEVICE BEING PLACED INTO THE SAFEWAY STORES.

08:39:19  21       THE AMOUNTS THAT SAFEWAY SPENDS IS DIRECTLY RELEVANT TO

08:39:23  22    THE MATERIALITY OF MS. HOLMES'S STATEMENTS.  IT SHOWS THE

08:39:27  23    SERIOUSNESS WITH WHICH SAFEWAY TOOK MS. HOLMES'S

08:39:31  24    REPRESENTATIONS IN REAL TIME.  I THINK IT'S DIRECTLY RELEVANT

08:39:36  25    TO ONE OF THE ESSENTIAL ELEMENTS OF THE OFFENSE, WHICH IS
```

08:39:40   1    MATERIALITY.

08:39:41   2         AND, FRANKLY, I DON'T UNDERSTAND THE PREJUDICE OF THIS

08:39:48   3    NUMBER.

08:39:49   4         PERHAPS THERE ARE SOME ALTERNATIVE REASONS WHY SAFEWAY DID

08:39:51   5    THIS.  YOU CAN EXPLORE THAT IN CROSS-EXAMINATION.

08:39:54   6         BUT I'M TALKING ABOUT ONE, MAYBE TWO DOCUMENTS WHERE

08:39:57   7    MR. BURD MAKES REFERENCE TO THE NUMBER OR THE NUMBER OF STORES

08:40:01   8    DIRECTLY TO MS. HOLMES.  ONE OF THEM IS IN A POWERPOINT THAT

08:40:05   9    SHE HAD A HAND IN PREPARING FOR THE SAFEWAY BOARD.

08:40:09  10         AND I REALLY THINK THIS IS DIRECTLY RELEVANT TO

08:40:12  11    MATERIALITY.

08:40:13  12         IT'S ALSO DIRECTLY RELEVANT TO THE STATE OF MIND OF THE

08:40:16  13    VICTIM AND WHY IT -- ONE OF THE VICTIMS AND WHY IT DID WHAT IT

08:40:20  14    DID.

08:40:21  15         THE OBJECTION I HEAR FROM MR. DOWNEY IS THAT THERE'S

08:40:25  16    SOMEHOW SOME CONFUSION ABOUT WHAT THE MONEY OR PROPERTY THAT'S

08:40:30  17    AT ISSUE WITHIN -- FOR PURPOSES OF THE WIRE FRAUD STATUTE.

08:40:36  18         THAT CAN BE CURED WITH INSTRUCTION, AS I ANTICIPATE THE

08:40:40  19    COURT WILL DO IN FINAL INSTRUCTIONS.

08:40:42  20         BUT THE AMOUNT THAT SAFEWAY SPENDS TO BUILD OUT ITS STORES

08:40:45  21    IS DIRECTLY RELEVANT TO THE MATERIALITY OF MS. HOLMES'S

08:40:50  22    REPRESENTATIONS.  IT SHOWS THE SERIOUSNESS WITH WHICH THEY TOOK

08:40:53  23    THIS INVESTMENT IN WHAT SHE WAS SAYING, AND IT'S A VERY

08:40:57  24    IMPORTANT PIECE OF THE GOVERNMENT'S PROOF.

08:41:00  25         SO I DON'T -- I DON'T THINK THERE'S A BASIS UNDER 403 TO

08:41:03  1    EXCLUDE IT HERE.

08:41:07  2              MR. DOWNEY:  INJECTING THOSE ISSUES INTO THIS CASE,

08:41:09  3    YOUR HONOR, REQUIRES AN EXAMINATION OF WHY SAFEWAY SPENT THAT

08:41:12  4    MONEY.

08:41:13  5         ITS DECISION TO SPEND THAT MONEY WASN'T THE RESULT OF ANY

08:41:16  6    AGREEMENT WITH THERANOS.  IT WAS THE RESULT OF ITS OWN

08:41:18  7    DECISIONS AS TO WHEN IT WOULD BUILD THOSE FACILITIES, ITS

08:41:22  8    EFFORTS TO PRESSURE THERANOS TO HAVE TECHNOLOGY READY AT

08:41:25  9    PARTICULAR POINTS IN TIME.

08:41:26  10        THAT SPACE IS, IN FACT, USED FOR OTHER PURPOSES TODAY.  IT

08:41:31  11   HAD MULTIPLE USES.  THOSE POTENTIAL USES EXISTED AT THAT TIME

08:41:35  12   AND, IN FACT, ANOTHER PROVIDER OF BLOOD TESTING SERVICES SITS

08:41:40  13   IN THAT SPACE TODAY, WHICH SAFEWAY ALWAYS KNEW WAS POSSIBLE.

08:41:44  14        SO I THINK TO GET INTO THIS ISSUE AND, YOU KNOW, SPEND

08:41:48  15   TIME ON IT IS, IS MORE WITNESSES AND MORE DAYS WHEN IT'S REALLY

08:41:52  16   NOT -- I THINK IT'S CONCEDED THAT IT'S NOT PROPERTY OF WHICH

08:41:56  17   SAFEWAY IS DEPRIVED.

08:41:57  18             THE COURT:  IS IT THE -- MR. DOWNEY, IS IT THE NUMBER

08:42:00  19   THAT TROUBLES YOU?  IS THAT WHAT IT IS?  IS IT THE FACT THAT

08:42:05  20   SAFEWAY, EITHER IN RELIANCE OR BECAUSE OF THEIR RELATIONSHIP,

08:42:11  21   DID SOMETHING TO FURTHER THEIR SIDE OF THE AGREEMENT?

08:42:15  22        ISN'T THAT RELEVANT AND SHOULDN'T THE JURY KNOW THAT?  AND

08:42:21  23   THEN THEY CAN DECIDE WHETHER OR NOT -- ISN'T THAT A JURY

08:42:23  24   QUESTION, TO DECIDE WHETHER OR NOT THAT HAS ANY RELATION?

08:42:27  25             MR. DOWNEY:  WELL, I THINK IT'S BOTH, YOUR HONOR,

08:42:30   1   BOTH THE PREJUDICE OF THE NUMBER, BUT ALSO DISTRACTING INTO

08:42:34   2   THAT ISSUE AS A SIDE ISSUE.

08:42:36   3       I THINK WHAT WE WOULD SAY TO YOUR HONOR IS THE NOTION --

08:42:40   4   THERE'S NO CONDUCT ON THERANOS'S PART THAT AUTHORIZES OR

08:42:45   5   ENCOURAGES SAFEWAY TO UNDERTAKE THE DECISION TO BUILD THESE

08:42:50   6   FACILITIES AT THAT TIME.  THERANOS HAS NO INVOLVEMENT IN THEIR

08:42:55   7   SUBSEQUENT USE OF THOSE PROPERTIES OF -- YOU KNOW, THOSE

08:42:58   8   RENOVATIONS FOR OTHER PURPOSES.

08:43:00   9       SO ALL OF THOSE ISSUES BECOME RELEVANT AND IT SWITCHES A

08:43:03  10   BURDEN TO US THAT I THINK IS, YOU KNOW, CUMULATIVE AND A

08:43:06  11   DISTRACTION AND WILL LEAD TO, YOU KNOW, A LOT OF EVIDENCE ON AN

08:43:12  12   ISSUE THAT'S NOT CENTRALLY RELEVANT HERE.

08:43:14  13            THE COURT:  THANK YOU.

08:43:15  14            MR. DOWNEY:  SO IT IS THE NUMBER, AND THAT'S A

08:43:17  15   PREJUDICE ISSUE.

08:43:17  16            THE COURT:  RIGHT.

08:43:17  17            MR. DOWNEY:  BUT IT'S ALSO A QUESTION OF WHAT IT'S

08:43:19  18   PUTTING INTO THIS TRIAL.

08:43:21  19            THE COURT:  WELL, IT -- MR. LEACH SUGGESTS IF THERE

08:43:24  20   IS AN ISSUE ABOUT THAT AS TO WHETHER OR NOT THAT'S APPROPRIATE

08:43:27  21   FOR THE JURY TO CONSIDER WHEN THEY CONSIDER A WIRE FRAUD

08:43:34  22   CONDUCT, AN INSTRUCTION CAN CERTAINLY GUIDE THEM AS TO WHAT

08:43:39  23   THEY MAY OR MAY NOT USE, THE NUMBER OR ANYTHING ABOUT IT, IN

08:43:44  24   THEIR DELIBERATIONS.  WOULDN'T THAT BE PROPHYLACTIC?

08:43:47  25            MR. DOWNEY:  YOUR HONOR, I THINK THE NOTION THAT

08:43:49   1        THERE'S A LARGE NUMBER PUT IN FRONT OF THE JURY AND THAT IT'S

08:43:52   2        CURED BY AN INSTRUCTION WOULD EVISCERATE REALLY THE PURPOSES OF

08:43:58   3        403.

08:44:00   4             I MEAN, I THINK IT'S -- WHEN YOU COMBINE THE PREJUDICE OF

08:44:03   5        THE NUMBER WITH THE FACT THAT YOU HAVE COMPLEX CIRCUMSTANCES

08:44:06   6        AROUND DECISIONS SAFEWAY MADE THAT HAVE NOTHING TO DO WITH

08:44:10   7        THERANOS, YOU KNOW, I THINK IT'S -- IT'S LEADING TO A

08:44:14   8        DISTRACTION IN THE CASE THAT WE DON'T NEED AND THAT I THINK

08:44:19   9        ISN'T NECESSARY FOR THE GOVERNMENT TO PROVE ITS CASE.

08:44:22  10             WE ALL AGREE IT'S NOT THE PROPERTY THAT'S AT ISSUE.  THEY

08:44:27  11        SAY THAT IT'S A DEMONSTRATION OF MATERIALITY.  THEY CAN ELICIT

08:44:33  12        THAT SAFEWAY BEGAN TO BUILD FACILITIES WITHOUT GETTING INTO

08:44:39  13        NUMBERS AND DETAILS ABOUT THAT.

08:44:41  14             THE COURT:  WELL, LET -- MY SENSE IS THE NUMBER IS,

08:44:45  15        IS WHAT'S CONSUMING THE CONVERSATION HERE.

08:44:48  16             IS THERE ANY WAY TO GET THIS INFORMATION IN WITHOUT

08:44:52  17        MENTIONING A NUMBER OR MENTIONING PERHAPS A RANGE OR SOME

08:44:56  18        ALTERNATIVE, MR. LEACH?

08:44:57  19             MR. LEACH:  I CERTAINLY COULD DO IT WITHOUT THE

08:45:00  20        NUMBER, YOUR HONOR.  BUT THE NUMBER ITSELF IS EVIDENCE OF THE

08:45:05  21        WEIGHT SAFEWAY PUT ON THE DEFENDANT'S MISREPRESENTATIONS.

08:45:10  22             SAFEWAY DIDN'T SPEND 30 BUCKS BUILDING OUT A SINGLE STORE.

08:45:14  23        IT SPENT $300 MILLION BUILDING OUT HUNDREDS OF STORES BASED ON

08:45:19  24        THIS CONTRACT, THIS INVESTMENT, THE REPRESENTATIONS OF THE

08:45:23  25        DEFENDANT.

08:45:24  1          I CAN'T THINK OF MANY THINGS MORE PROBATIVE OF

08:45:27  2    MATERIALITY --

08:45:28  3              THE COURT:  SURE.

08:45:28  4              MR. LEACH:  -- THAN WHAT THE VICTIM DOES IN RESPONSE

08:45:31  5    TO THOSE STATEMENTS.

08:45:32  6              THE COURT:  SO IF THE --

08:45:33  7              MR. LEACH:  THERE ARE A LOT OF BIG NUMBERS IN THIS

08:45:35  8    CASE, YOUR HONOR.

08:45:36  9              THE COURT:  YEAH, WE'VE HEARD SEVERAL ALREADY.

08:45:38  10         IF THEY -- IF YOU ASKED HIM, WHAT DID YOU DO?  WE BUILT

08:45:43  11   HUNDREDS OF STORES.  DID YOU SPEND MILLIONS OF DOLLARS?  WE

08:45:47  12   DID.

08:45:48  13             MR. LEACH:  I COULD DO IT THAT WAY, YOUR HONOR.  I

08:45:50  14   DON'T THINK IT'S NECESSARY.

08:45:51  15             MR. DOWNEY:  WELL, YOUR HONOR, I STILL OBJECT TO

08:45:52  16   THAT.  I THINK THAT PUTS A BURDEN ON US TO SHOW THE CONTEXT IN

08:45:56  17   WHICH THOSE DECISIONS WERE MADE INTERNALLY AT SAFEWAY THAT JUST

08:46:01  18   SHOULD NOT BE PART OF THIS TRIAL.

08:46:02  19             THE COURT:  WELL, IS THAT SOMETHING THAT YOU WOULD BE

08:46:04  20   ABLE TO PROBE WITH THIS WITNESS?

08:46:06  21             MR. DOWNEY:  POSSIBLY.  BUT POSSIBLY NOT.

08:46:09  22         AND IT CERTAINLY WOULD INTRODUCE A BURDEN THAT SHOULDN'T

08:46:12  23   BE HERE FOR, YOU KNOW, AN EXCHANGE OF MONEY THAT HAS NOTHING TO

08:46:17  24   DO WITH THE PROPERTY THAT THIS DEFENDANT IS ACCUSED OF --

08:46:21  25             THE COURT:  SURE, OKAY.

08:46:22  1              MR. DOWNEY:  -- DEFRAUDING THEM OF.

08:46:26  2              THE COURT:  ARE YOU INTENDING TO GET INTO THIS TODAY?

08:46:28  3      WILL THIS COME UP TODAY, MR. LEACH?  OF COURSE, THAT'S

08:46:31  4      DEPENDENT ON DR. ROSENDORFF'S TESTIMONY.

08:46:33  5              MR. LEACH:  YES, I DO BELIEVE IT'LL COME UP TODAY,

08:46:36  6      YOUR HONOR.

08:46:36  7              THE COURT:  PROBABLY NOT THIS MORNING.  MY SENSE IS

08:46:38  8      WE'RE GOING TO FINISH DR. ROSENDORFF THIS MORNING.

08:46:41  9          OKAY.  THANK YOU.  THANK YOU FOR GIVING ME THE HEADS UP.

08:46:43 10          BEFORE YOU LEAVE THE LECTERNS, I DO WANT TO TALK ABOUT A

08:46:46 11      COUPLE OF OTHER ISSUES.

08:46:48 12          APPARENTLY ONE OF THE JURORS HAS CONTACTED MS. KRATZMANN

08:46:51 13      AND THE JUROR HAS ASKED TO SPEAK WITH ME PRIVATELY.  AND I'M

08:46:59 14      INFORMED THIS IS IN REGARDS TO THIS JUROR'S THOUGHTS AND

08:47:04 15      FEELINGS ABOUT CONTINUED SERVICE AS A JUROR IN THE CASE.

08:47:09 16          I HAVEN'T RESPONDED TO THE JUROR THROUGH MS. KRATZMANN

08:47:14 17      YET.  I WANTED TO RAISE IT TO YOUR ATTENTION.

08:47:17 18          MY SENSE IS -- AND I -- MS. KRATZMANN SHARED WITH ME SOME

08:47:22 19      OF THE COMMENTS THAT THIS JUROR HAS MADE, AND IT -- IT SOUNDS

08:47:28 20      LIKE THE JUROR HAS EXPRESSED, I THINK -- I'M NOT TRYING TO

08:47:36 21      QUOTE WHAT SHE TOLD MS. KRATZMANN -- THAT IT WAS ANXIETY ABOUT

08:47:39 22      CONTINUING AND HAVING SOME CONCERNS ABOUT -- AND, AGAIN, THIS

08:47:44 23      ISSUE OF PUNISHMENT APPARENTLY CAME UP AND THIS JUROR IS

08:47:49 24      CONCERNED ABOUT PUNISHMENT AND WHETHER OR NOT HER CONTINUED

08:47:54 25      SERVICE WILL CREATE ISSUES FOR THAT.

08:47:57   1        I THINK SHE EXPRESSED SOME RELIGIOUS FEELINGS TO

08:48:01   2   MS. KRATZMANN.

08:48:02   3        SO I THINK WE NEED TO TALK WITH HER.  SHE ASKED TO SPEAK

08:48:06   4   WITH ME PRIVATELY.  I'M GOING TO TELL MS. KRATZMANN TO INFORM

08:48:10   5   THE JUROR THAT THAT'S NOT POSSIBLE, UNLESS YOU CONSENT TO THAT.

08:48:19   6        BUT WHAT I WOULD INTEND TO DO IS TO BRING HER TO THE

08:48:23   7   COURTROOM AND SEE IF I CAN ENGAGE A DIALOGUE WITH HER.  IF

08:48:28   8   SHE -- IF SHE TELLS ME THAT SHE WANTS TO SPEAK PRIVATELY

08:48:36   9   OUTSIDE THE COURTROOM, WE'LL SEE IF -- I WON'T DO THAT WITHOUT

08:48:40   10  COUNSEL PRESENT.

08:48:42   11       BUT PERHAPS WE SHOULD ENGAGE THAT BEFORE WE START OUR

08:48:45   12  EVIDENCE THIS MORNING.

08:48:47   13            MR. LEACH:  THAT'S FINE WITH THE GOVERNMENT, YOUR

08:48:49   14  HONOR.

08:48:49   15            THE COURT:  OKAY.

08:48:50   16            MR. DOWNEY:  THAT'S FINE HERE, YOUR HONOR.

08:48:51   17            THE COURT:  OKAY, GREAT.

08:48:52   18            MR. DOWNEY:  WHILE WE'RE DISCUSSING THE JURY, I DID

08:48:55   19  WANT TO SEE IF WE SHOULD CLOSE THE LOOP ON ALTERNATE JUROR 3.

08:48:58   20  I THINK SHE WAS GOING TO GET BACK TO US.  I THINK SHE, SHE

08:49:01   21  LIKELY HAS ADDRESSED THE ISSUE, BUT I THINK FOR PURPOSES OF THE

08:49:04   22  RECORD, MAYBE WE SHOULD HAVE A FURTHER COLLOQUY WITH HER.

08:49:07   23            THE COURT:  MS. KRATZMANN RECEIVED AN EMAIL -- YOU'RE

08:49:13   24  PRESCIENT, MR. DOWNEY -- MS. KRATZMANN RECEIVED AN EMAIL AND

08:49:18   25  THE ISSUE OF THAT EMPLOYMENT IS NO LONGER ON THE TABLE, SO SHE

08:49:21  1          WILL BE ABLE TO CONTINUE WITH HER SERVICE AS I UNDERSTAND IT.

08:49:25  2              IS THAT CORRECT, MS. KRATZMANN?

08:49:27  3                  THE CLERK:  YES, YOUR HONOR.

08:49:27  4                  THE COURT:  ALL RIGHT.

08:49:30  5          ALL RIGHT.  SO LET'S -- I'LL STAND DOWN AND WE'LL SEE IF,

08:49:33  6      IF AND WHEN THE JUROR ARRIVES, AND THEN WE'LL INVITE THAT JUROR

08:49:36  7      OUT AND WE'LL HAVE A CONVERSATION.

08:49:38  8                  MR. LEACH:  THANK YOU, YOUR HONOR.

08:49:39  9                  THE COURT:  ALL RIGHT.  THANK YOU.

08:49:40  10                  MR. DOWNEY:  THANK YOU, YOUR HONOR.

08:49:40  11                  THE CLERK:  COURT IS IN RECESS.

08:49:42  12          (RECESS FROM 8:49 A.M. UNTIL 8:57 A.M.)

08:57:46  13          (JURY OUT AT 8:57 A.M.)

08:57:48  14                  THE COURT:  ALL RIGHT.  WE'RE BACK ON THE RECORD.

08:57:57  15      ALL COUNSEL ARE PRESENT.  DR. ROSENDORFF WAS IN THE ROOM, HE'S

08:58:00  16      LEAVING NOW.

08:58:09  17          AND WE'RE OUTSIDE THE PRESENCE OF THE JURY.

08:58:15  18          MS. KRATZMANN, IF YOU COULD PLEASE BRING IN JUROR

08:58:18  19      NUMBER 4.

08:58:19  20                  THE CLERK:  YES, YOUR HONOR.

08:58:37  21          (JUROR NUMBER 4 PRESENT.)

08:58:41  22                  JUROR:  GOOD MORNING.

08:58:41  23                  THE COURT:  GOOD MORNING, JUROR NUMBER 4.  PLEASE,

08:58:44  24      SIT DOWN, PLEASE.  THANK YOU.

08:58:45  25          AND I BROUGHT YOU OUT HERE BECAUSE MS. KRATZMANN, OUR

08:58:50  1    COURTROOM DEPUTY, TOLD ME THAT YOU WANTED TO SPEAK WITH ME, AND

08:58:53  2    I'M GOING TO IDENTIFY YOU AS JUROR NUMBER 4.  AND MS. KRATZMANN

08:58:59  3    SAID YOU WANTED TO TALK WITH ME ABOUT SOMETHING ABOUT YOUR JURY

08:59:03  4    SERVICE.

08:59:05  5              JUROR:  YES.

08:59:07  6              THE COURT:  IF YOU COULD USE THE MICROPHONE, THAT --

08:59:10  7              JUROR:  YES.

08:59:11  8         MY NAME IS MINH NGUYEN, AND I AM A BUDDHIST, AND SO I

08:59:15  9     PRACTICE FOR COMPASSION, YOU KNOW, FOR, LIKE, NOT KILLING

08:59:21  10    PEOPLE, FOR LOVING AND FORGIVENESS.

08:59:24  11        SO FROM BEGINNING, I ONLY THINK FOR FAIR.

08:59:28  12        BUT THEN, IF I BE FAIR FOR BOTH SIDES AND THEN MAYBE I

08:59:32  13    HAVE TO VOTE, MAYBE I HAVE TO VOTE FOR HER GUILTY, AND THEN I'M

08:59:37  14    THINKING ALL THE TIME SHE IN JAIL AND I WOULD BE SO SAD.  SO

08:59:45  15    IT'S REALLY HARD FOR ME.

08:59:47  16        FROM BEGINNING, I DIDN'T THINK ANYTHING LIKE THAT.  I JUST

08:59:51  17    THINK TO BE FAIR.

08:59:52  18        BUT NOW I'M THINKING, WHAT HAPPEN IF SHE HAVE TO BE IN

08:59:58  19    THERE FOR LONG, LONG TIME, AND THEN I AM OUT HERE.

09:00:00  20              THE COURT:  OKAY.

09:00:01  21              JUROR:  I FEEL LIKE IT'S MY FAULT AND I FEEL GUILTY

09:00:04  22     FOR THAT.

09:00:04  23              THE COURT:  SO -- THANK YOU.  AND LET ME SAY, JUROR

09:00:07  24    NUMBER 4, FIRST OF ALL, YOUR RESPONSIBILITY AS A JUROR, AND ALL

09:00:15  25    OF YOUR COLLEAGUES, YOUR FELLOW JURORS, YOUR RESPONSIBILITY IS

| | | |
|---|---|---|
| 09:00:18 | 1 | TO ONLY DECIDE THE FACTS OF THE CASE. |
| 09:00:23 | 2 | JUROR:  YEAH. |
| 09:00:24 | 3 | THE COURT:  YOU ARE NOT TO DETERMINE, YOU ARE NOT TO |
| 09:00:27 | 4 | DETERMINE ANY PUNISHMENT AT ALL.  THAT'S FOR THE COURT TO |
| 09:00:31 | 5 | DECIDE.  THAT'S NOT YOUR DECISION. |
| 09:00:34 | 6 | DO YOU UNDERSTAND THAT?  AS A MATTER OF FACT, YOU'LL BE |
| 09:00:38 | 7 | INSTRUCTED THAT YOU MAY NOT CONSIDER PUNISHMENT AT ALL IN YOUR |
| 09:00:42 | 8 | DELIBERATIONS. |
| 09:00:47 | 9 | JUROR:  BUT, YOU KNOW, I STILL FEEL -- I'M NOT -- I |
| 09:00:56 | 10 | KEEP THINKING ABOUT THIS EVERY DAY, EVERY TIME. |
| 09:00:58 | 11 | THE COURT:  I SEE.  HAS THAT -- WELL, LET ME -- AND |
| 09:01:01 | 12 | THANK YOU FOR YOUR CANDOR.  THANK YOU FOR BEING HONEST.  I'M |
| 09:01:04 | 13 | GRATEFUL FOR YOU TELLING ALL OF US THIS. |
| 09:01:07 | 14 | I THINK WHAT I HEARD YOU SAY EARLIER IS YOU'RE A BUDDHIST. |
| 09:01:11 | 15 | JUROR:  YES, I AM. |
| 09:01:12 | 16 | THE COURT:  AND YOUR FAITH PERMITS YOU TO EXPRESS |
| 09:01:17 | 17 | COMPASSION. |
| 09:01:20 | 18 | JUROR:  YES. |
| 09:01:21 | 19 | THE COURT:  I THINK I HEARD YOU SAY THAT. |
| 09:01:23 | 20 | JUROR:  YEAH.  THAT'S WHY FOR, YOU KNOW, FOR LOVING, |
| 09:01:26 | 21 | FORGIVENESS. |
| 09:01:27 | 22 | THE COURT:  YES.  ALL RIGHT. |
| 09:01:29 | 23 | ARE YOU -- DO YOU THINK, MA'AM, DO YOU THINK YOU'RE ABLE |
| 09:01:33 | 24 | TO SEPARATE, TO SEPARATE YOUR BELIEFS, YOUR RELIGIOUS AND YOUR |
| 09:01:40 | 25 | PERSONAL BELIEFS, CAN YOU SEPARATE THOSE FROM YOUR JOB TO |

| | | |
|---|---|---|
| 09:01:45 | 1 | DECIDE THE FACTS IN THIS CASE?  IS THAT SOMETHING THAT YOU CAN |
| 09:01:48 | 2 | DO? |
| 09:01:49 | 3 | JUROR:  I -- I CAN -- YOU KNOW, THE FACTS, YOU KNOW, |
| 09:01:55 | 4 | I CAN DO THAT.  BUT THEN I STILL -- IF SOMETHING, YOU KNOW, IS |
| 09:02:01 | 5 | LIKE -- IT'S TO VOTE, AND THEN I FEEL LIKE IT'S BECOME MY, MY |
| 09:02:09 | 6 | VOTE IS A VOTE FOR THE FUTURE OF HERS.  SO THAT'S THE THING I |
| 09:02:16 | 7 | WOULD -- |
| 09:02:17 | 8 | THE COURT:  I SEE.  OKAY.  AND IF YOU COULD SPEAK |
| 09:02:19 | 9 | INTO THE MICROPHONE, PLEASE. |
| 09:02:20 | 10 | AND DO YOU THINK THAT THOSE FEELINGS ARE GOING TO STAY |
| 09:02:28 | 11 | WITH YOU IF YOU REMAIN ON THIS JURY? |
| 09:02:30 | 12 | JUROR:  I CAN -- IF IN THE FUTURE, LET'S SAY, LET'S |
| 09:02:37 | 13 | SAY IF SHE GUILTY AND THEN, YOU KNOW, SHE GET PUNISHMENT FROM |
| 09:02:44 | 14 | THE GOVERNMENT AND, YOU KNOW, AND IT'S -- IT WILL STAY WITH ME |
| 09:02:49 | 15 | BECAUSE I KEEP THINKING OF THAT EVERY DAY -- |
| 09:02:52 | 16 | THE COURT:  I SEE. |
| 09:02:54 | 17 | JUROR:  -- IN MY LIFE. |
| 09:02:56 | 18 | THE COURT:  I SEE.  AND DO YOU THINK THAT -- IT |
| 09:02:58 | 19 | SOUNDS LIKE THAT'S GIVING YOU TROUBLE TO SIT AS A JUROR IN THIS |
| 09:03:01 | 20 | CASE.  IS THAT -- IS THAT WHAT YOU'RE FEELING NOW?  YOU'RE |
| 09:03:09 | 21 | FEELING PROBLEMS ABOUT SITTING AS A JUROR BECAUSE OF THAT? |
| 09:03:12 | 22 | JUROR:  I CAN SIT, BUT MY -- MAY I NOT VOTE? |
| 09:03:16 | 23 | THE COURT:  OKAY.  ALL RIGHT.  THANK YOU. |
| 09:03:18 | 24 | ALL RIGHT.  I'M GOING TO ASK THE LAWYERS IF THEY HAVE ANY |
| 09:03:21 | 25 | QUESTIONS FOR YOU. |

| | | |
|---|---|---|
| 09:03:23 | 1 | MR. SCHENK:  NO FURTHER QUESTIONS, THANK YOU. |
| 09:03:25 | 2 | MR. DOWNEY:  NOT FROM US, YOUR HONOR. |
| 09:03:26 | 3 | THE COURT:  ALL RIGHT. |
| 09:03:27 | 4 | IS THERE ANYTHING ELSE YOU WOULD LIKE ME TO KNOW? |
| 09:03:29 | 5 | JUROR:  NO.  I OKAY TO SIT HERE UNTIL THE END, BUT |
| 09:03:33 | 6 | MY -- IF I CAN -- IF I'M NOT TO VOTE, I WILL BE OKAY. |
| 09:03:36 | 7 | THE COURT:  IF YOU DON'T HAVE TO VOTE, YOU'D BE OKAY. |
| 09:03:39 | 8 | ALL RIGHT.  OKAY. |
| 09:03:41 | 9 | ALL RIGHT.  WELL, THANK YOU VERY MUCH.  THANK YOU VERY |
| 09:03:43 | 10 | MUCH. |
| 09:03:43 | 11 | YOU CAN LEAVE THE MICROPHONE, AND MS. KRATZMANN WILL TAKE |
| 09:03:46 | 12 | YOU BACK. |
| 09:03:48 | 13 | JUROR:  THANK YOU. |
| 09:03:48 | 14 | THE COURT:  YOU'RE WELCOME. |
| 09:03:49 | 15 | JUROR:  THANK YOU, EVERYONE. |
| 09:03:57 | 16 | (JUROR NUMBER 4 NOT PRESENT.) |
| 09:04:00 | 17 | THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT |
| 09:04:02 | 18 | THAT WE HAVE FINISHED OUR CONVERSATION WITH JUROR NUMBER 4. |
| 09:04:07 | 19 | I'M HAPPY TO HEAR FROM COUNSEL NOW.  AND YOU CAN COME UP |
| 09:04:12 | 20 | TO THE LECTERN.  I DON'T KNOW, MR. DOWNEY, ARE YOU SPEAKING FOR |
| 09:04:15 | 21 | YOUR TEAM? |
| 09:04:15 | 22 | MR. DOWNEY:  YES. |
| 09:04:17 | 23 | MR. SCHENK:  YOUR HONOR, I THINK WE SHOULD EXCUSE |
| 09:04:20 | 24 | JUROR NUMBER 4.  HER BELIEFS SEEM TO BE SINCERELY HELD.  I |
| 09:04:25 | 25 | FOUND IT INSIGHTFUL THAT SHE OFFERED TO STAY ON AND SIT THROUGH |

2794

09:04:28  1    THE TRIAL IF SHE DIDN'T HAVE TO VOTE, AND THAT CERTAINLY

09:04:32  2    SUGGESTS SHE'S NOT SAYING THIS TO TRY TO GET OUT OF THE REST OF

09:04:37  3    HER SERVICE, BUT INSTEAD THAT THESE ARE SINCERELY HELD BELIEFS

09:04:40  4    THAT ARE CAUSING A SIGNIFICANT AMOUNT OF STRESS AND ANXIETY,

09:04:43  5    AND THAT CERTAINLY ISN'T SOMETHING WE WANT THE TRIAL TO CAUSE.

09:04:46  6        SO WE THINK THAT SHE SHOULD BE EXCUSED.

09:04:48  7            MR. DOWNEY:  YOUR HONOR, WE DON'T HAVE -- MOVE FOR

09:04:51  8    HER EXCUSAL, BUT WE DON'T HAVE AN OBJECTION TO IT.

09:04:53  9            THE COURT:  ALL RIGHT.  THANK YOU.  AND THANK YOU FOR

09:04:58  10   HEARING JUROR NUMBER 4.  SHE -- WE ALL HEARD WHAT SHE SAID.

09:05:02  11   SHE DID EXPRESS HER RELIGIOUS BELIEFS.

09:05:05  12       I KNOW I READ -- I THINK I READ TO THE PANEL 7.4 EARLIER

09:05:09  13   ABOUT PUNISHMENT AND THEY MAY NOT CONSIDER PUNISHMENT.  WE HAD

09:05:14  14   ANOTHER ISSUE WITH ANOTHER JUROR AND I READ THAT AGAIN.

09:05:17  15       AND I APPRECIATE JUROR NUMBER 4'S CANDOR.  IT APPEARS THAT

09:05:22  16   HER DEEPLY HELD RELIGIOUS CONVICTIONS WOULD CAUSE HER SOME

09:05:27  17   DIFFICULTY.  THEY ARE CAUSING HER DIFFICULTY.  SHE'S EXPRESSED

09:05:33  18   SOME CONCERN, IF NOT ANXIOUSNESS, ABOUT CONTINUED SERVICE.

09:05:37  19       AND EVEN THOUGH, AS I TOLD HER, EVEN THOUGH THE PUNISHMENT

09:05:43  20   IS SOMETHING THEY MAY NOT CONSIDER, IT'S SOMETHING THAT THE

09:05:45  21   JURORS DO NOT CONSIDER, THAT'S THE COURT'S PROVINCE, THAT DID

09:05:48  22   NOT SEEM TO, TO ASSUAGE HER FROM HER FEELINGS.

09:05:55  23       SO I DO THINK IT'S APPROPRIATE AT THIS TIME TO EXCUSE

09:05:57  24   JUROR NUMBER 4, AND WE WILL EXCUSE JUROR NUMBER 4 AND WE'LL

09:06:01  25   HAVE OUR NEXT ALTERNATE MOVE IN, MS. KRATZMANN, TO THAT SEAT.

09:06:05  1                    THE CLERK:  YES, YOUR HONOR.

09:06:07  2                    THE COURT:  ALL RIGHT.

09:06:07  3                    THE CLERK:  THAT WOULD BE MS. -- JUROR NUMBER --

09:06:12  4         ALTERNATE 2.

09:06:12  5                    THE COURT:  YES, THANK YOU.

09:06:16  6              AND WE CAN INFORM -- MS. KRATZMANN, YOU'LL INFORM JUROR

09:06:19  7         NUMBER 4 OF THAT, AND PLEASE SEND HER OUR THANKS FROM COUNSEL

09:06:24  8         AND THE COURT.

09:06:25  9                    THE CLERK:  YES, YOUR HONOR.

09:06:25  10                   THE COURT:  AND WE'LL TAKE A RECESS FOR ABOUT FIVE

09:06:29  11        MINUTES TO GET THINGS SET UP AND THEN WE'LL BEGIN THE

09:06:32  12        EXAMINATION.

09:06:33  13             THANK YOU.

09:06:33  14                   MR. DOWNEY:  THANK YOU, YOUR HONOR.

09:06:34  15                   MR. SCHENK:  THANK YOU.

09:06:35  16                   THE CLERK:  COURT IS IN RECESS.

09:06:37  17             (RECESS FROM 9:06 A.M. UNTIL 9:23 A.M.)

09:23:19  18                   THE COURT:  DOCTOR, CAN I ASK YOU TO WAIT OUTSIDE?

09:23:24  19                   THE WITNESS:  SURE.

09:23:24  20                   THE COURT:  WE'RE BACK ON THE RECORD.  ALL COUNSEL

09:23:26  21        ARE PRESENT.  MS. HOLMES IS PRESENT.

09:23:31  22             THE WITNESS, DR. ROSENDORFF, IS LEAVING THE COURTROOM.

09:23:34  23             I JUST WANT TO TALK TO COUNSEL ABOUT SOMETHING.

09:23:47  24             AND THE RECORD SHOULD REFLECT DR. ROSENDORFF HAS LEFT THE

09:23:50  25        COURTROOM.

2796

09:23:51  1        AS WE WERE COLLECTING -- AS MS. KRATZMANN WAS COLLECTING

09:23:59  2   THE JURORS TO COME AND RETURN, SHE WAS APPROACHED BY ALTERNATE

09:24:02  3   NUMBER 2, WHO WOULD REPLACE THE JUST RELEASED JUROR.  ALTERNATE

09:24:10  4   NUMBER 2 APPARENTLY EXPRESSED TO MS. KRATZMANN SIMILAR CONCERNS

09:24:14  5   ABOUT CONTINUING HER SERVICE.  SO WE'RE GOING TO BRING HER IN

09:24:23  6   AND HAVE A CONVERSATION WITH HER.

09:24:55  7        (PAUSE IN PROCEEDINGS.)

09:24:55  8            THE CLERK:  ARE YOU READY, YOUR HONOR?

09:24:59  9            THE COURT:  YES.

09:25:00 10            THE CLERK:  OKAY.

09:25:04 11        (JUROR NUMBER 4, FORMER ALTERNATE JUROR NUMBER 2,

09:25:06 12   PRESENT.)

09:25:11 13            THE COURT:  GOOD MORNING.  PLEASE BE SEATED.  THANK

09:25:13 14   YOU.  AND GOOD MORNING.

09:25:15 15        YOU ARE ALTERNATE -- ACTUALLY, YOU'RE NOW SEATED JUROR

09:25:23 16   NUMBER 4.

09:25:24 17        YOU HAD -- I UNDERSTAND YOU EXPRESSED SOME COMMENTS TO

09:25:28 18   MS. KRATZMANN, OUR COURTROOM DEPUTY, ABOUT YOUR SERVICE.

09:25:32 19            JUROR:  YES, SIR.

09:25:33 20            THE COURT:  YES.  WHAT WOULD YOU LIKE ME TO KNOW

09:25:35 21   ABOUT THAT?  AND PLEASE SPEAK INTO THE MICROPHONE.

09:25:37 22            JUROR:  WELL, I PREFER TO SPEAK PRIVATELY, PLEASE.

09:25:40 23            THE COURT:  YES.  WELL, I -- I'M NOT ABLE TO DO THAT.

09:25:44 24   I NEED TO HAVE THESE LAWYERS HERE LISTENING.

09:25:46 25            JUROR:  IT'S OKAY.

09:25:47  1        THE COURT:  YES, PLEASE.  SO --

09:25:49  2        JUROR:  WELL, AS I TOLD YOU FROM THE BEGINNING,

09:25:53  3  ENGLISH IS NOT MY FIRST LANGUAGE.  AND I'M FOLLOWING ALL THE

09:25:59  4  SITUATION HERE.  IT'S MY FIRST TIME IN THIS SITUATION, AND IT'S

09:26:10  5  HER FUTURE.

09:26:12  6        I DON'T KNOW IF I'M 100 PERCENT READY TO PARTICIPATE IN

09:26:21  7  SOMETHING LIKE THIS BEING ENGLISH NOT MY FIRST LANGUAGE, AND I

09:26:28  8  COULD MAKE A MISTAKE IN SOMETHING.

09:26:30  9        SO I DON'T KNOW.

09:26:37  10        THE COURT:  OKAY.  WELL, THANK YOU FOR TELLING US

09:26:39  11  ABOUT THIS.

09:26:40  12        FIRST OF ALL, THIS IS YOUR FIRST JURY TRIAL.  YOU'VE NEVER

09:26:45  13  SAT ON A JURY BEFORE.

09:26:46  14        JUROR:  YES.

09:26:47  15        THE COURT:  AND I THINK THERE ARE -- MANY OF YOUR

09:26:52  16  FELLOW JURORS HAVE THE SAME EXPERIENCE.  THE FIRST TIME FOR

09:26:59  17  ANYTHING CAN BE SOMETIMES CHALLENGING.  I UNDERSTAND THAT.

09:27:02  18        SO I HOPE YOU DON'T FEEL THAT -- AND YOU SHOULDN'T FEEL --

09:27:08  19  THAT JUST BECAUSE IT'S YOUR FIRST TIME, THAT ANY, ANY FEELINGS

09:27:13  20  YOU HAVE, NERVOUS FEELINGS ABOUT YOUR SERVICE SHOULD PRESENT A

09:27:18  21  PROBLEM.  THAT'S VERY NORMAL FOR JURORS TO BE NERVOUS ABOUT THE

09:27:26  22  PROCEEDING.

09:27:27  23        YOU TALKED ABOUT ENGLISH NOT BEING YOUR FIRST LANGUAGE.

09:27:31  24  YOU MENTIONED THAT IN YOUR QUESTIONNAIRE, AND THESE LAWYERS

09:27:34  25  HAVE HAD AN OPPORTUNITY READ YOUR QUESTIONNAIRE ABOUT THAT.

2798

09:27:36  1    THERE WERE QUESTIONS ASKED ABOUT YOU BEFORE YOUR JURY SERVICE.

09:27:40  2         AND I THINK YOU'VE TOLD ME THAT YOU'RE FOLLOWING THINGS,

09:27:46  3    YOU'RE ABLE TO UNDERSTAND.

09:27:47  4         I THINK I MENTIONED ALSO AT THE BEGINNING OF THE TRIAL

09:27:50  5    THAT THIS COURT WHERE WE SIT, WE DRAW, WE DRAW -- WE ASK PEOPLE

09:27:58  6    TO COME IN TO SIT AS JURORS FROM MANY, MANY DIFFERENT

09:28:02  7    NEIGHBORHOODS, GEOGRAPHIC REGIONS, MANY DIFFERENT PARTS ALL THE

09:28:09  8    WAY FROM MONTEREY COUNTY UP TO SANTA CLARA COUNTY AND

09:28:12  9    EVERYTHING IN BETWEEN, SAN BENITO, SANTA CRUZ.

09:28:17 10         AND SO WE PULL PEOPLE IN FROM ALL THESE REGIONS AND WE

09:28:22 11    ENJOY THE DIVERSITY OF THOSE PEOPLE WHO COME, PEOPLE WHO COME

09:28:26 12    FROM DIFFERENT CULTURES, DIFFERENT BACKGROUNDS, DIFFERENT

09:28:29 13    GENDERS, AND OFTEN TIMES PEOPLE WHO SPEAK DIFFERENT LANGUAGES

09:28:33 14    AS THEIR PRIMARY LANGUAGE.

09:28:35 15         BUT THEY'VE COME HERE TO LIVE IN THIS AREA, AND WE RESPECT

09:28:40 16    AND ENJOY OUR COMMUNITIES THAT ARE MADE UP BY THIS RICH, RICH

09:28:47 17    COLLECTION OF INDIVIDUALS.

09:28:48 18         AND WE RECOGNIZE THAT IN OUR COUNTRY, THIS IS A COUNTRY

09:28:51 19    THAT WAS CREATED FROM IMMIGRANTS, WASN'T IT?  WE KNOW THAT.

09:28:55 20    AND WE KNOW THAT WHEN PEOPLE COME TO THE COUNTRY FROM DIFFERENT

09:28:58 21    PLACES, TO THIS COUNTRY FROM DIFFERENT PLACES, THEY BRING THEIR

09:29:03 22    CULTURE, THEIR LANGUAGE.

09:29:05 23         BUT WHEN THEY ALSO COME AND THEY SERVE THE COMMUNITY AS

09:29:09 24    YOU'RE DOING, AND AS YOU'VE DONE -- YOUR QUESTIONNAIRE INFORMS

09:29:14 25    US THAT YOUR BACKGROUND AND YOUR ABILITY TO LIVE AND WORK IN

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

April 17, 2023