No. 22-10312

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

---

## EXCERPTS OF RECORD
## VOL. XXXIII of LVII | ER-9236 to ER-9535

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

10:23AM 1    THEN IT GETS USED WITH INVESTORS, AND HE CAN'T TESTIFY TO THAT.

10:23AM 2        SO THE CLOSER WE ADHERE TO THOSE OBJECTIVE FACTS, THE LESS

10:23AM 3    WE HAVE TO WORRY ABOUT WHAT OTHER PEOPLE TOLD HIM, PRIVILEGE

10:23AM 4    ISSUES, THE SUBPOENA AND SO FORTH.

10:23AM 5        THE MORE WE VEER AWAY FROM THOSE, THE MORE WE'RE GOING TO

10:23AM 6    GET INTO THOSE THINGS.

10:23AM 7        SO WITH THAT SORT OF FRAME, LET'S TALK ABOUT HIS

10:23AM 8    UNDERSTANDING.  AND THE EXAMPLE THAT MR. BOSTIC GAVE MIGHT BE A

10:23AM 9    HELPFUL ONE.

10:23AM 10       HE ASKED MS. HOLMES WHAT USE THE MILITARY WAS MAKING OR

10:23AM 11   WHAT WAS GOING ON IN AFGHANISTAN OR WHATEVER.

10:23AM 12       AND SHE SAID -- I'M PARAPHRASING MR. BOSTIC.  SHE SAYS, I

10:23AM 13   CAN'T TELL YOU.

10:23AM 14       SO MR. BOSTIC WANTS HIM TO TESTIFY, WANTS MR. PARLOFF TO

10:23AM 15   TESTIFY, I TOOK FROM THAT SOMETHING OTHER THAN WHAT MS. HOLMES

10:23AM 16   ACTUALLY SAID.  I INFERRED FROM THAT SOMETHING DIFFERENT.

10:24AM 17       WELL, MR. PARLOFF, IN THE COURSE OF HIS REPORTING, TALKED

10:24AM 18   TO GENERAL MATTIS, HE TALKED TO FORMER SECRETARY OF DEFENSE

10:24AM 19   WILLIAM PERRY, BOTH OF WHOM WERE ON THE THERANOS BOARD AT THE

10:24AM 20   TIME, AND HE TALKED WITH THEM ABOUT THAT ISSUE.

10:24AM 21       AND SO IF MR. PARLOFF IS GOING TO SAY, THAT WAS MY

10:24AM 22   UNDERSTANDING, I GET TO PROBE THAT, IT SEEMS TO ME, AND SUGGEST

10:24AM 23   THAT THAT UNDERSTANDING EITHER, A, WAS UNREASONABLE OR PERHAPS

10:24AM 24   NOT CREDIBLE; OR, B, THAT THE -- IF HE CAME AWAY WITH THAT

10:24AM 25   UNDERSTANDING, IT WAS NOT AS A RESULT OF WHATEVER MS. HOLMES

5614

| | | |
|---|---|---|
| 10:24AM | 1 | SAID TO HIM, IT WAS A RESULT OF TALKING TO THESE OTHER PEOPLE. |
| 10:24AM | 2 | THE COURT:  SO IF HE SAYS, "MY UNDERSTANDING BASED |
| 10:24AM | 3 | ON WHAT SHE TOLD ME DURING THAT INTERVIEW WAS X" -- |
| 10:24AM | 4 | MR. CLINE:  RIGHT. |
| 10:24AM | 5 | THE COURT:  -- AND THAT'S IT, THAT WAS THE QUESTION, |
| 10:24AM | 6 | "WHAT WAS YOUR UNDERSTANDING BASED ON WHAT SHE TOLD YOU," NOT |
| 10:24AM | 7 | WHAT GENERAL MATTIS OR ANYONE ELSE SAID, BUT JUST BASED ON WHAT |
| 10:25AM | 8 | SHE TOLD YOU, ISN'T THAT PROPER? |
| 10:25AM | 9 | MR. CLINE:  NO, I DON'T THINK IT IS.  I THINK "WHAT |
| 10:25AM | 10 | DID SHE TELL YOU" IS CERTAINLY PROPER.  HIS SUBJECTIVE |
| 10:25AM | 11 | UNDERSTANDING OF THAT, FIRST OF ALL, I THINK IS IRRELEVANT AND |
| 10:25AM | 12 | I THINK IT'S 403. |
| 10:25AM | 13 | BUT BEYOND THAT, I SHOULD NOT HAVE TO JUST TAKE THAT AT |
| 10:25AM | 14 | FACE VALUE.  I SHOULD NOT HAVE TO JUST SAY, OKAY, THAT'S WHAT |
| 10:25AM | 15 | YOU SAY, I CAN'T CHALLENGE IT.  I GET TO CHALLENGE IT. |
| 10:25AM | 16 | AND THE CHALLENGE IS, IF YOU CAME AWAY, MR. PARLOFF, WITH |
| 10:25AM | 17 | THAT IMPRESSION OF WHAT WAS GOING ON IN AFGHANISTAN, IT'S NOT |
| 10:25AM | 18 | BASED ON MS. HOLMES'S REFUSAL TO TELL YOU, IT'S BASED ON YOUR |
| 10:25AM | 19 | CONVERSATIONS WITH THESE OTHER PEOPLE. |
| 10:25AM | 20 | THE COURT:  IF THAT FORMED THE -- I'M SORRY TO |
| 10:25AM | 21 | INTERRUPT YOU. |
| 10:25AM | 22 | BUT IF THAT INFORMED PART OF HIS STORY, IN OTHER WORDS, IF |
| 10:25AM | 23 | HE DID ADDITIONAL RESEARCH AND TALKED TO MATTIS AND OTHER |
| 10:25AM | 24 | PEOPLE, AND THAT'S THE INFORMATION THAT GOT INTO THE STORY -- |
| 10:25AM | 25 | THIS IS WHERE I HAVE SOME CONCERNS ABOUT BLEEDING OVER, |

10:25AM 1     MR. BOSTIC, I'M LOOKING AT YOU -- IF HE SAID OR IF HE'S

10:26AM 2   QUESTIONED, WHAT DID SHE TELL YOU ABOUT AFGHANISTAN?

10:26AM 3        SHE SAID WHATEVER SHE SAID.

10:26AM 4        AND THAT COMES IN ALONE, THAT'S IT, AND THEN YOU MOVE TO

10:26AM 5   ANOTHER TOPIC, THERE'S NO OBJECTION TO THAT BECAUSE HE'S SAYING

10:26AM 6   THAT'S WHAT SHE SAID.

10:26AM 7        AND THEN IT'S UP TO, I SUPPOSE, OTHER WITNESSES TO TIE ALL

10:26AM 8   OF THAT TOGETHER.

10:26AM 9        BUT I DO HAVE SOME CONCERN ABOUT IF IT GOES FURTHER

10:26AM 10   THAN -- IF HE USED OTHER INFORMATION FOR HIS STORY, THEN THAT'S

10:26AM 11   THE CONCERN THAT I HAVE, AND HOW DO WE PARSE THAT OUT?  AND

10:26AM 12   DOES THAT THEN BLEED INTO THE 17 SUBPOENA THAT IS BEFORE US?

10:26AM 13            MR. BOSTIC:  SO A FEW POINTS IN RESPONSE,

10:26AM 14   YOUR HONOR.

10:26AM 15            THE COURT:  SURE.

10:26AM 16            MR. BOSTIC:  FIRST, JUST TO MAKE SURE THAT WE'RE

10:26AM 17   THINKING OF THIS EXAMPLE ACCURATELY, WITH THE USE IN

10:26AM 18   AFGHANISTAN, I'M NOT SURE WHAT THE QUESTION WAS.  I DON'T

10:26AM 19   REMEMBER OFFHAND.

10:26AM 20        BUT I UNDERSTAND THE RESPONSE FROM MS. HOLMES WAS "I CAN'T

10:27AM 21   TELL YOU ABOUT THE ACTUAL USE IN AFGHANISTAN."

10:27AM 22        SO IT'S SOMETHING MORE THAN "I CAN'T TELL YOU."  THERE'S

10:27AM 23   AN IMPLICIT STATEMENT OR ASSERTION IN THAT STATEMENT.  WHEN

10:27AM 24   SOMEONE SAYS, "I CAN'T TELL YOU ABOUT THE ACTUAL USE IN

10:27AM 25   AFGHANISTAN," IT DOES IMPLY THAT THERE IS ACTUAL USE IN

10:27AM  1    AFGHANISTAN.

10:27AM  2         SO THE QUESTION TO MR. PARLOFF WOULD BE SOMETHING TO THE

10:27AM  3    EFFECT OF, "DID YOU UNDERSTAND THAT TO IMPLY OR TO BE TELLING

10:27AM  4    YOU THAT THERE WAS ACTUAL USE OCCURRING IN AFGHANISTAN?"

10:27AM  5         SO, AGAIN, THIS IS ABOUT CONNECTING THE ACTUAL LANGUAGE

10:27AM  6    FROM THE DEFENDANT TO MR. PARLOFF'S UNDERSTANDING.

10:27AM  7         THE REASON WHY IT'S NOT IRRELEVANT, THE REASON WHY IT

10:27AM  8    MATTERS IS BECAUSE MR. PARLOFF WASN'T A CONDUIT OF MS. HOLMES'S

10:27AM  9    STATEMENTS.  IT'S NOT THAT HE TOOK THESE STATEMENTS AND MADE

10:27AM  10   THESE RECORDINGS AND PROVIDED THESE RECORDINGS TO THE PUBLIC.

10:27AM  11   THAT WOULD BE ONE THING.

10:27AM  12        WHAT ACTUALLY HAPPENED WAS THAT HE HAD CONVERSATIONS WITH

10:28AM  13   MS. HOLMES AND HE DEVELOPED AN UNDERSTANDING OF WHAT THE TRUTH

10:28AM  14   WAS ABOUT THERANOS BASED ON THOSE CONVERSATIONS, AND THEN HIS

10:28AM  15   UNDERSTANDING SHAPED THE CONTENT OF THE ARTICLE.

10:28AM  16        SO HE WASN'T JUST A CONDUIT FOR MR. HOLMES'S STATEMENTS.

10:28AM  17   HE WAS A CONDUIT OF INACCURATE OR MISLEADING IMPRESSIONS OR

10:28AM  18   UNDERSTANDING, AND SO IT'S IMPORTANT FOR THE JURY TO HEAR ABOUT

10:28AM  19   WHAT HE TOOK FROM MS. HOLMES'S STATEMENTS BECAUSE THAT'S WHAT

10:28AM  20   ACTUALLY INFORMED THE CONTENT OF THE ARTICLE.

10:28AM  21        THAT DOES NOT CREATE DISCOVERY PROBLEMS AND IT DOESN'T

10:28AM  22   NECESSITATE GETTING INTO WHAT OTHER PEOPLE SAID, AND HERE'S

10:28AM  23   WHY.  I NOTICED THAT WHEN MR. CLINE WAS DISCUSSING THIS, HE

10:28AM  24   SAID HE WANTED TO BE ABLE TO CHALLENGE MR. PARLOFF'S

10:28AM  25   UNDERSTANDINGS TO SHOW WHETHER THEY WERE UNREASONABLE, FOR

10:28AM 1    EXAMPLE, WHETHER MR. PARLOFF DREW AN UNREASONABLE UNDERSTANDING

10:28AM 2    FROM WHAT MS. HOLMES SAID.

10:28AM 3         THIS IS NOT A CASE WHERE -- FIRST OF ALL, MR. PARLOFF IS

10:28AM 4    NOT A VICTIM OF THE FRAUD.  EVEN IF HE WERE, THE GOVERNMENT

10:29AM 5    WOULD NOT BE REQUIRED TO SHOW RELIANCE, MUCH LESS REASONABLE

10:29AM 6    RELIANCE.

10:29AM 7         SO IF THIS WERE A CASE WHERE THE GOVERNMENT HAD TO SHOW

10:29AM 8    REASONABLE RELIANCE AS TO THIS INDIVIDUAL, IT WOULD BE MORE

10:29AM 9    RELEVANT WHAT OTHER INFORMATION WAS AVAILABLE TO HIM.

10:29AM 10        AND AS TO VICTIMS IN THIS CASE, ACTUAL VICTIMS, THE

10:29AM 11   DEFENSE HAS BEEN ABLE TO EXPLORE OTHER SOURCES OF INFORMATION

10:29AM 12   THAT WERE AVAILABLE TO THOSE VICTIMS BECAUSE THAT IS ARGUABLY

10:29AM 13   RELEVANT TO MATERIALITY.

10:29AM 14        MATERIALITY IS NOT RELEVANT AS TO THIS WITNESS EITHER.

10:29AM 15        THE GOVERNMENT IS SEEKING TO SHOW NOT THAT HE WAS A VICTIM

10:29AM 16   OF THE FRAUD, BUT ONLY THAT HE WAS DECEIVED.  THE FACT THAT HE

10:29AM 17   WAS DECEIVED IS RELEVANT AND IT'S PROBATIVE OF MS. HOLMES'S

10:29AM 18   INTENT TO DECEIVE THE ACTUAL VICTIMS.  THIS IS ALLEGED IN THE

10:29AM 19   INDICTMENT.  WE PROVIDED SUBSTANTIAL NOTICE OF THIS UNDER

10:29AM 20   404(B) AS WELL.

10:29AM 21        SO TO BE ABLE TO SHOW THAT HE WAS DECEIVED BY MS. HOLMES'S

10:29AM 22   STATEMENTS, AGAIN, KEEPING THE FOCUS JUST ON THOSE STATEMENTS,

10:30AM 23   SHOULD BE PERMISSIBLE.

10:30AM 24        IT'S UNCLEAR WHAT RELEVANCE THE STATEMENTS THAT OTHERS

10:30AM 25   MADE COULD HAVE TO THAT QUESTION.

5618

10:30AM 1      FOR EXAMPLE, IF OTHER PEOPLE MADE STATEMENTS THAT WERE

10:30AM 2   CONSISTENT WITH WHAT MS. HOLMES SAID -- FIRST OF ALL, MANY, IF

10:30AM 3   NOT ALL, OF THESE INDIVIDUALS WOULD HAVE HAD MS. HOLMES AS

10:30AM 4   THEIR PRIMARY SOURCE OF INFORMATION, SO ITS UNCLEAR HOW MUCH

10:30AM 5   VALUE THEIR STATEMENTS OR INFORMATION WOULD HAVE SEPARATE FROM

10:30AM 6   THE DEFENDANT'S.

10:30AM 7      BUT REGARDLESS, IT SEEMS LIKE THE MOST IMPACTFUL USE OF

10:30AM 8   OTHER STATEMENTS WOULD BE TO BOLSTER MS. HOLMES'S CLAIMS AND

10:30AM 9   ASSERTIONS.  SO IF MS. HOLMES SAID SOMETHING THAT THE

10:30AM 10  GOVERNMENT IS POINTING TO AS FALSE AND THE DEFENSE CAN SHOW

10:30AM 11  OTHER PEOPLE SAID THE SAME THING, WELL, YOU MIGHT THINK THAT

10:30AM 12  MIGHT REHABILITATE MS. HOLMES'S CREDIBILITY AND SHOW THAT OTHER

10:30AM 13  PEOPLE WERE SAYING THE SAME THING, MAYBE IT WAS TRUE.

10:30AM 14     BUT THAT'S AN IMPERMISSIBLE HEARSAY USE OF THOSE OUT OF

10:31AM 15  COURT STATEMENTS BY NONTESTIFYING INDIVIDUALS.  SO THEY CAN'T

10:31AM 16  COME IN FOR THAT PURPOSE.

10:31AM 17     TO THE EXTENT THAT THEY WERE ALSO MISLEADING, AGAIN, IT'S

10:31AM 18  UNCLEAR WHY THAT WOULD MATTER HERE.  THE FOCUS IS ON THIS

10:31AM 19  DEFENDANT'S INTENT.  SO THE FACT THAT OTHER PEOPLE EITHER

10:31AM 20  KNOWINGLY OR UNKNOWINGLY PASSED ALONG SIMILARLY MISLEADING

10:31AM 21  INFORMATION, IF THAT IS INDEED THE CASE, AND WE DON'T HAVE ANY

10:31AM 22  REASON TO KNOW OR BELIEVE THAT IS THE CASE, BUT IF THAT

10:31AM 23  HAPPENED, IT'S UNCLEAR WHY THAT SHOULD MATTER FOR THIS JURY

10:31AM 24  WHOSE TASK IS TO JUDGE THE DEFENDANT'S INTENT, NOT SCRUTINIZE

10:31AM 25  THIS WITNESS AND DETERMINE WHETHER HE HAD A REASONABLE

10:31AM 1     FOUNDATION FOR ARRIVING AT THE BELIEFS THAT HE DID.

10:31AM 2          THE COURT:  IS -- THANK YOU.

10:31AM 3     IF THE QUESTION ABOUT AFGHANISTAN WERE ASKED AND IF THE

10:31AM 4     QUESTION, THE FOLLOW-UP QUESTION FROM YOU, WAS, DID IT APPEAR

10:32AM 5     THAT THAT INFORMATION WAS CONFIDENTIAL AND THAT'S WHY SHE

10:32AM 6     COULDN'T TELL YOU, I THINK THAT WOULD BE A PERMISSIBLE

10:32AM 7     QUESTION, AND I THINK I WOULD ALLOW HER -- HIM TO ANSWER THAT

10:32AM 8     QUESTION, "I CAN'T TELL YOU THAT."  WELL, IT MUST BE

10:32AM 9     CONFIDENTIAL.

10:32AM 10     SHE PROBABLY DIDN'T SAY THAT.  I DON'T KNOW.

10:32AM 11     BUT THAT TYPE OF INFERENCE IS ONE.

10:32AM 12     BUT, AGAIN, I GET BACK TO -- THE CONCERN THAT I HAVE IS

10:32AM 13     THE ULTIMATE WORK PRODUCT, HIS STORY, AND WHETHER INFORMATION

10:32AM 14     THAT, IF HE WROTE ABOUT AFGHANISTAN AND WROTE THINGS OTHER THAN

10:32AM 15     WHAT SHE ACTUALLY SAID, IS THERE A SOURCE, A SECONDARY SOURCE

10:32AM 16     FOR THAT INFORMATION?

10:32AM 17     AND I UNDERSTAND IN THE ABSTRACT MR. CLINE'S POINT, WELL,

10:32AM 18     IF THE STORY WAS NOT INFORMED BY WHAT SHE SAID BUT BY

10:32AM 19     ADDITIONAL RESEARCH, WE SHOULD BE ABLE TO ASK THAT QUESTION.

10:32AM 20     THAT'S THE CONCERN THAT I HAVE ABOUT THAT, AND HOW FAR

10:32AM 21     DOES THAT GO?

10:32AM 22     I, I -- AS I SAID, I THINK HE CAN ASK CERTAIN QUESTIONS,

10:33AM 23     DID SHE APPEAR -- DID THAT SUGGEST CONFIDENTIALITY BECAUSE SHE

10:33AM 24     COULDN'T SAY THAT?  OR DID IT SUGGEST IGNORANCE THAT SHE JUST

10:33AM 25     DIDN'T KNOW?

10:33AM   1          I SUPPOSE THOSE ARE BOTH REASONABLE INFERENCES I SUPPOSE.

10:33AM   2          I CAN'T SAY THAT.  DOES THAT MEAN IT'S CONFIDENTIAL?  DOES

10:33AM   3     IT MEAN SHE DIDN'T KNOW?  I DON'T KNOW.

10:33AM   4          MR. CLINE?

10:33AM   5             MR. CLINE:  I CERTAINLY THING HE CANNOT BE PERMITTED

10:33AM   6     TO OFFER HIS UNDERSTANDING AND HAVE IT BE UNCHALLENGEABLE, IN

10:33AM   7     EFFECT, BY US.

10:33AM   8          AND I THINK QUESTIONING HIM ABOUT OTHER SOURCES OF

10:33AM   9     INFORMATION ON THE SAME TOPIC THAT WE KNOW HE TALKED TO WOULD

10:33AM  10     CLEARLY BE PERMISSIBLE IF THAT HAPPENED.

10:33AM  11          AS TO YOUR HONOR'S EXAMPLE, EVEN THAT MAKES ME ANXIOUS.

10:33AM  12     THE MORE WE GET INTO MR. PARLOFF'S SUBJECTIVE STATE OF MIND AS

10:33AM  13     OPPOSED TO SIMPLY HIS, HE TOOK THESE STATEMENTS, HE WROTE THIS

10:34AM  14     ARTICLE -- AND AGAIN, THIS IS NOT SOMETHING THAT HE CAN TESTIFY

10:34AM  15     ABOUT, BUT THE GOVERNMENT CAN PROVE IT, OR ATTEMPT TO PROVE

10:34AM  16     IT -- WHAT MS. HOLMES DID WITH THAT ARTICLE, THAT'S WHAT IS

10:34AM  17     IMPORTANT HERE, AND HOW WHAT MS. HOLMES SAID TRANSLATED INTO

10:34AM  18     THE ARTICLE IS REALLY BESIDE THE POINT.

10:34AM  19             THE COURT:  CAN HE ASK, WELL, DID SHE APPEAR NERVOUS

10:34AM  20     DURING THE INTERVIEW?  DID SHE APPEAR -- WHAT WAS HER DEMEANOR?

10:34AM  21          HE CAN CERTAINLY ASK THOSE QUESTIONS.  A WITNESS CAN

10:34AM  22     TESTIFY ABOUT THOSE THINGS, CAN'T THEY?

10:34AM  23             MR. CLINE:  WITHIN NARROW LIMITS.

10:34AM  24             THE COURT:  WE HEARD A LAB WITNESS SAY THAT THE

10:34AM  25     ANSWERS WERE CAGEY.  I THINK THEY USED THAT TERM.

5621

| | | |
|---|---|---|
| 10:34AM | 1 | DO YOU RECALL THAT? |
| 10:34AM | 2 | MR. CLINE:  I DO RECALL THAT. |
| 10:34AM | 3 | BUT I ALSO REMEMBER WHEN MR. WEBER WANTED TO TESTIFY THAT |
| 10:34AM | 4 | MS. HOLMES WAS EVASIVE, I HAD VERY STRONG OBJECTIONS TO THAT. |
| 10:34AM | 5 | THE COURT:  SURE. |
| 10:34AM | 6 | MR. CLINE:  THIS IS A WITNESS, YOUR HONOR, WHO -- |
| 10:35AM | 7 | SOMETHING BAD HAPPENED WITH THIS WITNESS.  WHAT I MEAN BY THAT |
| 10:35AM | 8 | IS HE WROTE THIS GLOWING ARTICLE, AND A YEAR AND A HALF LATER |
| 10:35AM | 9 | MR. CARREYROU WROTE HIS ARTICLE, AND THIS WITNESS WAS BADLY |
| 10:35AM | 10 | EMBARRASSED. |
| 10:35AM | 11 | AND HE ENDED UP WRITING AN ARTICLE WHICH THE GOVERNMENT |
| 10:35AM | 12 | AGREES IT'S NOT GOING TO TRY TO ADMIT, AND I'M CERTAINLY NOT |
| 10:35AM | 13 | GOING TO OPEN THE DOOR FOR IT, IN WHICH HE BASICALLY SAYS, I |
| 10:35AM | 14 | WAS MISLED. |
| 10:35AM | 15 | ANY OPPORTUNITY -- THIS IS MY FEAR.  NOW, I HAVE NEVER MET |
| 10:35AM | 16 | MR. PARLOFF, AND I HAVE NO REASON TO THINK THAT HE'S NOT AN |
| 10:35AM | 17 | HONORABLE FELLOW, BUT MY FEAR IS THAT IF HE'S GIVEN ANY |
| 10:35AM | 18 | OPPORTUNITY TO VOICE A SUBJECTIVE VIEW, IT'S GOING TO BE |
| 10:35AM | 19 | PREJUDICIAL, DAMAGING, AND SOMETHING THAT I'M NOT GOING TO BE |
| 10:35AM | 20 | ABLE TO DO ANYTHING WITH. |
| 10:35AM | 21 | SO THE MORE OPPORTUNITY HE HAS FOR THAT, THE MORE LIKELY |
| 10:35AM | 22 | WE ARE TO GET INTO TROUBLE; AND THE MORE HE'S CONSTRAINED TO |
| 10:35AM | 23 | WHAT I THINK IS TRULY RELEVANT TO THIS CONDUIT THEORY, WHICH IS |
| 10:35AM | 24 | KIND OF THE OBJECTIVE FACTS, THE BETTER OFF WE'RE ALL GOING TO |
| 10:35AM | 25 | BE. |

5622

| | | |
|---|---|---|
| 10:35AM | 1 | SO THAT'S MY CONCERN. |
| 10:36AM | 2 | I'M ALWAYS TROUBLED WHEN WITNESSES START TESTIFYING, WELL, |
| 10:36AM | 3 | SHE WAS, SHE WAS CAGEY. |
| 10:36AM | 4 | WELL, WHAT DOES THAT EVEN MEAN?  AND HOW MUCH IS THAT VIEW |
| 10:36AM | 5 | INFORMED BY RETROSPECT? |
| 10:36AM | 6 | NOW, IN MR. WEBER'S CASE, HE WROTE THAT AT THE TIME, SO |
| 10:36AM | 7 | THAT WAS ACTUALLY HIS OPINION AT THE TIME FOR WHATEVER IT IS |
| 10:36AM | 8 | WORTH.  I STILL DON'T THINK IT WAS ADMISSIBLE, BUT THAT WAS HIS |
| 10:36AM | 9 | OPINION AT THE TIME. |
| 10:36AM | 10 | HERE WHAT WE'RE TALKING ABOUT, IT'S NOT THAT MR. PARLOFF |
| 10:36AM | 11 | RECORDED AT THE TIME HIS OPINION OF MS. HOLMES'S DEMEANOR. |
| 10:36AM | 12 | HE'S GOING TO BE TESTIFYING ABOUT THAT WITH ALL OF THIS |
| 10:36AM | 13 | AFTERMATH IN HIS MIND. |
| 10:36AM | 14 | AND SO IT, IT IS NOT GOING TO BE PRETTY. |
| 10:36AM | 15 | AND I DON'T THINK IT'S RELEVANT.  I THINK IT'S 403 |
| 10:36AM | 16 | MATERIAL.  I DON'T THINK IT OUGHT TO COME IN. |
| 10:36AM | 17 | I REALLY THINK HE NEEDS TO BE CONFINED TO THE OBJECTIVE |
| 10:36AM | 18 | FACTS. |
| 10:36AM | 19 | MR. BOSTIC:  AND, YOUR HONOR, ON THAT -- |
| 10:36AM | 20 | THE COURT:  GO AHEAD. |
| 10:36AM | 21 | MR. BOSTIC:  ON THAT KIND OF QUESTION, I DISAGREE |
| 10:36AM | 22 | WITH MR. CLINE.  I THINK THAT WOULD BE ADMISSIBLE AND |
| 10:37AM | 23 | APPROPRIATE, BUT I DON'T INTEND TO ASK THIS WITNESS ABOUT |
| 10:37AM | 24 | MS. HOLMES'S DEMEANOR. |
| 10:37AM | 25 | I DON'T THINK HE HAS MUCH TO OFFER ON THAT FRONT, SO IT'S |

5623

10:37AM   1    NOT MY PRESENT INTENTION TO GO THERE.  SO HOPEFULLY THAT'S

10:37AM   2    COMFORTING TO MR. CLINE.

10:37AM   3        I THINK THAT'S DIFFERENT, THOUGH, FROM ASKING HIM ABOUT

10:37AM   4    HIS UNDERSTANDING OF WHAT MS. HOLMES SAID.

10:37AM   5        AND I WANT TO GO BACK TO CONTEXT JUST BRIEFLY BECAUSE I

10:37AM   6    THINK THAT PART OF WHY THIS IS NECESSARY IS BECAUSE HE DID HAVE

10:37AM   7    MANY LENGTHY CONVERSATIONS WITH MS. HOLMES.  HE WAS PROVIDED

10:37AM   8    WRITTEN MATERIALS FROM THE COMPANY, INCLUDING THE PURPORTED

10:37AM   9    PHARMA REPORTS, SLIDE PRESENTATIONS, HE HAD TOURS.

10:37AM  10        SO PROVIDING HIS UNDERSTANDING REGARDING SPECIFIC

10:37AM  11    STATEMENTS THAT MS. HOLMES MADE GIVES THE JURY THE BENEFIT OF

10:37AM  12    THE CONTEXT THAT HE HAD AND THE PREVIOUS CONVERSATIONS AND THE

10:37AM  13    UNDERSTANDING THAT HE HAD BUILT UP ABOUT WHAT THOSE STATEMENTS

10:37AM  14    MEANT.

10:38AM  15        AND IF I COULD, LET ME PROVIDE ONE OR TWO ADDITIONAL

10:38AM  16    EXAMPLES THAT MIGHT HELP KIND OF ILLUMINATE THAT.

10:38AM  17        SO, FOR EXAMPLE, MS. HOLMES SAID AT SOME POINT THAT SHE

10:38AM  18    DIDN'T WANT MR. PARLOFF TO USE THE WORD "DEVICE" IN THE

10:38AM  19    "FORTUNE" ARTICLE.  HE ASKED HER WHY AND WHAT IS THE

10:38AM  20    SENSITIVITY AROUND THAT?  AND SHE SAID SOMETHING LIKE "THE FACT

10:38AM  21    THAT WE HAVE A SINGLE DEVICE THAT CAN PERFORM ANY TEST IS A BIG

10:38AM  22    DEAL."

10:38AM  23        SHE WANTED TO KEEP THAT A SECRET SHE TOLD MR. PARLOFF.

10:38AM  24        I WOULD WANT TO ASK HIM, IN CONNECTION WITH THAT, DID YOU

10:38AM  25    UNDERSTAND FROM MR. HOLMES'S STATEMENT THAT THEY DID, IN FACT,

10:38AM 1     HAVE A SINGLE DEVICE THAT COULD PERFORM ANY TEST?

10:38AM 2          THIS IS JUST ASKING HIM ABOUT THE LANGUAGE THAT SHE HAD

10:39AM 3     JUST STATED.  SO THIS IS NOT GETTING INTO WHAT OTHER PEOPLE

10:39AM 4     MIGHT HAVE SAID.  THIS IS JUST ASKING, WHAT DID YOU TAKE FROM

10:39AM 5     MS. HOLMES'S STATEMENT ON THAT DATE?

10:39AM 6          THE COURT:  WHAT IS WRONG WITH THAT, MR. CLINE?

10:39AM 7          MR. CLINE:  BECAUSE IT IS -- WHAT HE TOOK FROM HER

10:39AM 8     STATEMENT IS TOTALLY IRRELEVANT.  THEY CAN PLAY FOR THE JURY

10:39AM 9     WHAT MS. HOLMES ACTUALLY SAID, THEY CAN ARGUE TO THE JURY WHAT

10:39AM 10    THAT MEANT.

10:39AM 11         BUT WHAT MR. PARLOFF TOOK FROM THAT, WHY IS THAT

10:39AM 12    IMPORTANT?

10:39AM 13         THE COURT:  WELL, CAN HE ASK HIM -- DOES IT BECOME

10:39AM 14    MORE RELEVANT IF, WHAT DID YOU TAKE FROM THAT AND DID YOU WRITE

10:39AM 15    THAT IN YOUR ARTICLE?

10:39AM 16         YES, THAT'S WHAT I WROTE IN MY ARTICLE BECAUSE THAT'S WHAT

10:39AM 17    I TOOK FROM HER STATEMENT.

10:39AM 18         MR. CLINE:  EVEN THAT, YOUR HONOR, TO ME THIS

10:39AM 19    LINKAGE BETWEEN WHAT SHE SAID AND WHAT HE PUT IN HIS ARTICLE

10:39AM 20    DOESN'T MAKE ANY DIFFERENCE.

10:39AM 21         THE COURT:  BUT HE'S THE AUTHOR.  THAT'S --

10:39AM 22         MR. CLINE:  HE IS THE AUTHOR, BUT HE'S NOT -- HIS --

10:39AM 23    HE'S PLAYING A LIMITED ROLE HERE, AND THE LIMITED ROLE IS THAT

10:39AM 24    HE TOOK STATEMENTS FROM MS. HOLMES, HE WROTE AN ARTICLE.

10:40AM 25         SOME OF THOSE STATEMENTS MIGHT BE ADMISSIBLE WHETHER HE

5625

10:40AM 1    HAD EVER WRITTEN AN ARTICLE OR NOT.  THEY'RE JUST STATEMENTS

10:40AM 2    THAT MS. HOLMES MADE.  IF THEY ARE RELEVANT AND THEY'RE

10:40AM 3    OTHERWISE ADMISSIBLE, THEY COME IN.

10:40AM 4         THE ARTICLE IS THE REAL KEY POINT HERE, BECAUSE THE

10:40AM 5    GOVERNMENT'S THEORY IS ONCE THIS ARTICLE WAS PRODUCED,

10:40AM 6    MS. HOLMES TOOK IT AND USED IT TO GET INVESTORS.

10:40AM 7         NOW, IF SHE HAD NEVER TALKED TO MR. PARLOFF BUT THE

10:40AM 8    ARTICLE CONTAINED A BUNCH OF THINGS THAT SHE KNEW TO BE FALSE

10:40AM 9    AND SHE HAD TAKEN IT OUT AND USED IT WITH INVESTORS, THE

10:40AM 10   GOVERNMENT COULD BE MAKING THE SAME ARGUMENT.

10:40AM 11        SO WHAT PARLOFF THOUGHT AND WHAT CONNECTION HE MADE

10:40AM 12   BETWEEN WHAT SHE SAID AND WHAT HE WROTE IN THE ARTICLE, IT JUST

10:40AM 13   DOESN'T MATTER.

10:40AM 14        AND THE PROBLEM WITH IT IS -- IN SOME CONTEXTS IT WOULD BE

10:40AM 15   KIND OF HARMLESS.  I MEAN, SURE, HE CAN EXPLAIN IT.

10:40AM 16        IT'S NOT HARMLESS HERE, AND IT'S PARTICULARLY NOT HARMLESS

10:40AM 17   BECAUSE THE JURY IS GOING TO HAVE HER ACTUAL WORDS IN MOST

10:41AM 18   INSTANCES.  I MEAN, THEY WILL HAVE A RECORDING OF EXACTLY WHAT

10:41AM 19   SHE SAID.

10:41AM 20        AND TO ALLOW HIM TO GLOSS THAT, TO NOT -- TO GO BEYOND

10:41AM 21   WHAT SHE ACTUALLY SAID AND PUT HIS OWN, NO DOUBT PEJORATIVE

10:41AM 22   CAST ON IT, PEJORATIVE IN LIGHT OF EVERYTHING THAT HAS HAPPENED

10:41AM 23   SINCE, IS JUST UNFAIR.

10:41AM 24        AND, OF COURSE, THERE'S NOTHING WHATSOEVER THAT I CAN DO

10:41AM 25   WITH THAT ON CROSS.  I CAN SAY, SHE SAID X AND NOW YOU'RE

5626

10:41AM 1   SAYING THAT YOU UNDERSTOOD Y.  BUT WHERE IS THAT GOING TO GET

10:41AM 2   ME?  IT'S JUST UNFAIR AND IT'S TOTALLY UNNECESSARY.

10:41AM 3          THE COURT:  I GUESS, HOW DO YOU QUESTION THE AUTHOR

10:41AM 4   THEN?  HE ASKED A QUESTION, SHE SAID THIS, AND IT APPEARED IN

10:41AM 5   HIS STORY.

10:41AM 6      CAN'T THE GOVERNMENT SAY, YOU ASKED THIS QUESTION, SHE

10:41AM 7   ANSWERED, AND DID YOU INCORPORATE HER ANSWER INTO YOUR STORY?

10:41AM 8      YES.

10:41AM 9      WHERE IS IT?  IS IT THIS PAGE?  IS IT THIS LINE?  AND

10:41AM 10  THAT'S WHY YOU WROTE IT?

10:42AM 11         MR. CLINE:  WELL, THAT ACTUALLY GETS US TO ANOTHER

10:42AM 12  OF MR. BOSTIC'S POINTS AND MAYBE I SHOULD MOVE THERE WITH YOUR

10:42AM 13  HONOR'S PERMISSION.

10:42AM 14         THE COURT:  SURE.

10:42AM 15         MR. CLINE:  THESE THINGS TEND TO BE --

10:42AM 16         THE COURT:  THEY OVERLAP A LITTLE.

10:42AM 17         MR. CLINE:  -- OVERLAPPING.  THIS IS -- I'M SKIPPING

10:42AM 18  OVER ONE OF THEM, MOVING IN REVERSE ORDER, AND I'LL COME BACK

10:42AM 19  TO IT.

10:42AM 20     CONNECTING WHAT MS. HOLMES SAID TO THE CONTENT.  THIS IS A

10:42AM 21  LITTLE BIT MORE NUANCED BECAUSE IF MS. HOLMES SAID SOMETHING

10:42AM 22  AND IT'S QUOTED IN THE ARTICLE, I DON'T HAVE ANY PROBLEM WITH

10:42AM 23  MR. PARLOFF SAYING, YEAH, SHE TOLD ME THAT, AND HERE'S WHEN SHE

10:42AM 24  TOLD ME THAT, APRIL 7TH, 2014.  HERE IT IS, AND HERE IT IS

10:42AM 25  QUOTED IN THE ARTICLE.

5627

10:42AM   1        IF MR. PARLOFF PARAPHRASES SOMETHING AND ATTRIBUTES IT TO

10:42AM   2   MS. HOLMES, HE CAN SAY -- I THINK HE COULD SAY, HERE IS WHERE I

10:42AM   3   DREW THAT PARAPHRASE FROM.  HERE'S WHAT SHE SAID, HERE'S MY

10:42AM   4   PARAPHRASE.

10:42AM   5        I DON'T THINK HE CAN GO BEYOND THAT AND SAY, HERE'S WHY I

10:42AM   6   PARAPHRASED IT THAT WAY, BUT I THINK THE CONNECTION CAN BE

10:43AM   7   DRAWN.

10:43AM   8        WHERE WE GET INTO TROUBLE IS IF THERE ARE THINGS IN THE

10:43AM   9   ARTICLE THAT ARE NOT ATTRIBUTED TO ANYONE, STATEMENTS ABOUT

10:43AM  10   THERANOS'S OPERATIONS, AND HE SAYS, I BASED THAT ON WHAT

10:43AM  11   ELIZABETH HOLMES TOLD ME, THEN WE GET INTO WHAT OTHER PEOPLE

10:43AM  12   TOLD HIM.

10:43AM  13        AND THAT'S GOING TO BE A PROBLEM BECAUSE HE TALKED TO A

10:43AM  14   LOT OF PEOPLE ABOUT A BROAD RANGE OF TOPICS, INCLUDING ALMOST

10:43AM  15   EVERYTHING THAT HE TALKED TO MS. HOLMES ABOUT, AND IF HE TRIES

10:43AM  16   TO SAY, I WROTE THAT THAT WAY BECAUSE ELIZABETH HOLMES TOLD

10:43AM  17   ME X, I THINK I GET TO SAY, WELL, THESE OTHER PEOPLE TOLD YOU X

10:43AM  18   ALSO AND YOU DIDN'T WRITE THAT JUST BASED ON WHAT

10:43AM  19   ELIZABETH HOLMES TOLD YOU, YOU WROTE THAT BASED ON WHAT A LOT

10:43AM  20   OF OTHER PEOPLE TOLD YOU AS WELL?

10:43AM  21        SO THERE ARE GRADATIONS ON THAT POINT.  WHERE HE QUOTES

10:43AM  22   HER, OF COURSE HE CAN SAY THAT'S A QUOTE, HERE'S WHERE SHE SAID

10:43AM  23   IT, I HAVE IT RECORDED, HERE IT IS IN THE ARTICLE.

10:43AM  24        WHERE HE PARAPHRASES HER, ELIZABETH HOLMES TOLD ME, AND

10:43AM  25   THEN IT'S NOT A DIRECT QUOTE, IT'S A PARAPHRASE, I THINK THAT'S

5628

10:44AM  1    PROBABLY OKAY, TOO.

10:44AM  2        THE PROBLEM COMES IN THESE UNATTRIBUTED STATEMENTS WHERE I

10:44AM  3    THINK I GET TO CHALLENGE A CLAIM ON HIS PART THAT, OH, YEAH, I

10:44AM  4    BASED THAT ON WHAT ELIZABETH HOLMES TOLD ME.

10:44AM  5            THE COURT:  DO YOU HAVE -- HAVE YOU IDENTIFIED THOSE

10:44AM  6    PARTICULAR STATEMENTS IN THE ARTICLE?

10:44AM  7            MR. CLINE:  WELL, THERE ARE -- THE ARTICLE IS FULL

10:44AM  8    OF STATEMENTS OF ONE KIND OR ANOTHER ABOUT THERANOS AND I'M NOT

10:44AM  9    SURE WHICH ONES THE GOVERNMENT IS GOING TO FOCUS ON.

10:44AM  10       THERE ARE CERTAINLY QUOTES FROM MS. HOLMES THAT ARE EASILY

10:44AM  11   IDENTIFIED IN THE ARTICLE, AND THERE ARE ALSO PARAPHRASES OF

10:44AM  12   MS. HOLMES IN THE ARTICLE THAT ARE EASILY IDENTIFIED.

10:44AM  13       WHAT I DON'T KNOW IS WHAT EFFORT THE GOVERNMENT IS GOING

10:44AM  14   TO MAKE TO LINK THE PORTIONS THAT IT PLANS TO PLAY WITH

10:44AM  15   UNATTRIBUTED STATEMENTS IN THE ARTICLE.

10:44AM  16           THE COURT:  LET ME JUST BE CLEAR.  THIS ARTICLE IS

10:44AM  17   IN EVIDENCE.

10:44AM  18           MR. CLINE:  IT IS.

10:44AM  19           MR. BOSTIC:  YES, YOUR HONOR.

10:44AM  20           MR. CLINE:  IT IS.

10:44AM  21           MR. BOSTIC:  AND I THINK I CAN PROVIDE SOME CONCRETE

10:44AM  22   EXAMPLES THERE, TOO, IF IT'S HELPFUL.

10:45AM  23           THE COURT:  SURE.

10:45AM  24           MR. BOSTIC:  I FIND THAT POSITION EXPRESSED BY

10:45AM  25   MR. CLINE TO BE A LITTLE CONFUSING IN LIGHT OF EXAMPLES LIKE

5629

10:45AM 1    THIS:  THE ARTICLE SAYS, FOR EXAMPLE, "IMPORTANTLY, IT'S NOT

10:45AM 2    JUST THE BLOOD DRAWS THAT ARE TINY.  IT'S ALSO THE ANALYTICAL

10:45AM 3    SYSTEMS THERANOS USES TO PERFORM THE TESTS.  THEY TAKE UP A

10:45AM 4    SMALL FRACTION OF THE FOOTPRINT REQUIRED BY A CONVENTIONAL LAB

10:45AM 5    TODAY."

10:45AM 6         THAT'S A PARAGRAPH ON ITS OWN.  IT'S NOT A QUOTE FROM

10:45AM 7    MS. HOLMES.  IT DOESN'T SAY, MS. HOLMES TOLD ME SOMETHING TO

10:45AM 8    THIS EFFECT.

10:45AM 9         SO UNDER THE POSITION THAT MR. CLINE JUST ARTICULATED, THE

10:45AM 10   GOVERNMENT I THINK WOULD NOT BE PERMITTED TO LINK THIS TO ANY

10:45AM 11   STATEMENT BY MS. HOLMES.

10:45AM 12        BUT IN THE RECORDINGS, THERE ARE MULTIPLE OCCASIONS WHERE

10:45AM 13   MS. HOLMES TALKS ABOUT THE SMALL SIZE OF A THERANOS ANALYZERS.

10:45AM 14        SO I TRULY CANNOT THINK OF A REASON WHY IT WOULD BE

10:45AM 15   INAPPROPRIATE OR INADMISSIBLE FOR THE JURY TO HEAR THOSE

10:45AM 16   STATEMENTS, MS. HOLMES SAYING THE ANALYZERS ARE SMALL, HERE'S

10:45AM 17   HOW BIG THEY ARE, OTHER LABS HAVE THESE BIG ANALYZERS, WE'RE

10:46AM 18   DIFFERENT, AND THEN TO POINT TO THIS LANGUAGE IN THE ARTICLE

10:46AM 19   AND SIMPLY HAVE THIS WITNESS CONFIRM THAT THAT LANGUAGE WAS

10:46AM 20   CONSISTENT WITH WHAT MS. HOLMES SAID.

10:46AM 21        AS FAR AS WHAT OTHER PEOPLE MIGHT HAVE TOLD HIM, I WOULD

10:46AM 22   STEER CLEAR OF ASKING HIM WHETHER A STATEMENT IN THE ARTICLE

10:46AM 23   WAS SOLELY BASED ON WHAT MS. HOLMES SAID.  THAT'S NOT RELEVANT

10:46AM 24   TO THIS CASE OR TO THE JURY'S ANALYSIS.

10:46AM 25        AND I STILL JUST DON'T UNDERSTAND WHY THE STATEMENTS MADE

5630

10:46AM  1    BY OTHERS WOULD BE RELEVANT OR IMPORTANT FOR THE JURY TO KNOW

10:46AM  2    ABOUT.  IF MS. HOLMES MADE A STATEMENT THAT IS CONSISTENT WITH

10:46AM  3    WHAT IS IN THE ARTICLE, WHY DOES IT MATTER THAT OTHER PEOPLE

10:46AM  4    SAID SOMETHING THE SAME OR DIFFERENT, ESPECIALLY IF THOSE

10:46AM  5    STATEMENTS ARE NOT COMING IN FOR THEIR TRUTH?  I JUST HAVEN'T

10:46AM  6    HEARD THAT EXPLANATION ARTICULATED BY THE DEFENSE.

10:46AM  7              THE COURT:  SURE.

10:46AM  8         WHAT ABOUT MR. BOSTIC'S HYPOTHETICAL?  THAT'S NOT A

10:46AM  9    PROBLEM, I TAKE IT.

10:47AM  10             MR. CLINE:  IF MS. HOLMES IS THE ONLY SOURCE OF SOME

10:47AM  11   PARTICULAR FACT, THERE'S NO NEED FOR HIM TO LINK IT.  I DON'T

10:47AM  12   THINK IT'S RELEVANT.  I DON'T THINK THE LINKAGE IS IMPORTANT.

10:47AM  13        BUT IN THAT UNIQUE INSTANCE, IT MAY NOT OPEN UP THE KIND

10:47AM  14   OF CROSS THAT I'VE BEEN TALKING ABOUT, ALTHOUGH IF OTHER PEOPLE

10:47AM  15   PROVIDED THAT SAME INFORMATION AND HE SAYS, I WROTE THIS BASED

10:47AM  16   ON WHAT MS. HOLMES TOLD ME, THEN I'M GOING TO GET INTO THOSE

10:47AM  17   OTHER AREAS.

10:47AM  18        NOW, THAT MAY BE AN INSTANCE WHERE THERE ISN'T SOMEBODY

10:47AM  19   ELSE, SO MY CONCERN IS MORE THEORETICAL THAN REAL.

10:47AM  20        BUT THERE ARE PLENTY OF OTHER EXAMPLES.  THE AFGHANISTAN

10:47AM  21   ONE IS A PERFECT ILLUSTRATION WHERE MR. PARLOFF TALKED TO A

10:47AM  22   NUMBER OF PEOPLE ABOUT WHATEVER THE TOPIC WAS, AND THERE'S JUST

10:47AM  23   NO WAY THAT HE SHOULD BE PERMITTED TO SAY, I WROTE THAT BASED

10:47AM  24   ON WHAT ELIZABETH HOLMES TOLD ME, AND HAVE ME NOT ABLE TO SAY,

10:48AM  25   WELL, NOW, WAIT A MINUTE, YOU'RE SAYING THAT ELIZABETH HOLMES

5631

10:48AM 1    WAS RESPONSIBLE FOR CAUSING YOU TO PUT THAT IN THE ARTICLE WHEN

10:48AM 2    YOU TALKED TO SECRETARY PERRY, YOU TALKED TO GENERAL MATTIS,

10:48AM 3    AND I DON'T MEAN TO -- I'M USING THIS AS A PURELY HYPOTHETICAL

10:48AM 4    EXAMPLE.

10:48AM 5            THE COURT:  SURE.

10:48AM 6            MR. CLINE:  I'M NOT ATTRIBUTING PARTICULAR

10:48AM 7    STATEMENTS TO THOSE PEOPLE.  I WANT TO BE CLEAR ABOUT THAT.

10:48AM 8    BUT THAT'S JUST AN EXAMPLE.

10:48AM 9       OR TAKE THE WALGREENS RELATIONSHIP.  MS. HOLMES AND

10:48AM 10   MR. PARLOFF TALKED ABOUT THE WALGREENS RELATIONSHIP.

10:48AM 11      WELL, MR. PARLOFF ALSO TALKED TO THE CEO OF WALGREENS, AND

10:48AM 12   SO IF HE WROTE SOMETHING IN THE ARTICLE ABOUT THE RELATIONSHIP

10:48AM 13   WITH WALGREENS AND TRIES TO ATTRIBUTE THAT TO MS. HOLMES, I CAN

10:48AM 14   CERTAINLY SAY, NOW, WAIT A MINUTE, YOU ALSO -- YOU TALKED TO

10:48AM 15   THE CEO OF WALGREENS AND THE CEO OF WALGREENS TOLD YOU X, Y,

10:48AM 16   AND Z.

10:48AM 17      I JUST DON'T SEE HOW WE CAN PRESENT TO THE JURY A FALSE

10:49AM 18   PICTURE OF BASICALLY PARLOFF TALKS TO HOLMES, HOLMES SAYS X,

10:49AM 19   PARLOFF WRITES X, AND WE LOOK AT ALL OF THAT AS IF THAT'S ALL

10:49AM 20   THAT HAPPENED.

10:49AM 21      PARLOFF DID A -- HE TALKED TO A WHOLE BUNCH OF PEOPLE.

10:49AM 22           THE COURT:  WELL, SHE TOLD HIM TO, RIGHT?  SHE GAVE

10:49AM 23   HIM OTHER SOURCES TO SPEAK TO?

10:49AM 24           MR. CLINE:  SHE DID, AND HE TALKED TO A NUMBER OF

10:49AM 25   PEOPLE THAT SHE RECOMMENDED.

5632

| | | |
|---|---|---|
| 10:49AM | 1 | I THINK HE ALSO TALKED TO OTHER PEOPLE. |
| 10:49AM | 2 | HE TALKED, FOR EXAMPLE, TO REPRESENTATIVES FROM QUEST AND |
| 10:49AM | 3 | LABCORP, THE BIGGEST COMPETITORS. |
| 10:49AM | 4 | THE COURT:  SO HOW DO WE DEAL WITH THAT ISSUE IF |
| 10:49AM | 5 | THAT COMES UP?  I DON'T KNOW IF IT'S GOING TO, BUT, MR. BOSTIC, |
| 10:49AM | 6 | HAVE YOU THOUGHT ABOUT THAT? |
| 10:49AM | 7 | MR. BOSTIC:  THE GOVERNMENT WON'T ASK ABOUT THOSE |
| 10:49AM | 8 | OTHER CONVERSATIONS, YOUR HONOR.  I DON'T KNOW IF THAT IS |
| 10:49AM | 9 | ENOUGH TO -- I'M SORRY, GO AHEAD. |
| 10:49AM | 10 | THE COURT:  I'M SORRY TO INTERRUPT YOU. |
| 10:49AM | 11 | BUT IF SHE SAYS -- OR PARLOFF SAYS, WELL, SHE TOLD ME TO |
| 10:49AM | 12 | TALK TO ASK OTHER PEOPLE. |
| 10:49AM | 13 | DID YOU TALK TO OTHER PEOPLE? |
| 10:49AM | 14 | YES. |
| 10:49AM | 15 | THEN THAT DOOR IS OPENED, IS IT?  I KNOW YOU'RE GOING TO |
| 10:50AM | 16 | STAY AWAY FROM THAT. |
| 10:50AM | 17 | BUT, I DON'T KNOW.  WHAT DO YOU THINK ABOUT THAT, |
| 10:50AM | 18 | MR. CLINE? |
| 10:50AM | 19 | MR. CLINE:  WELL, I THINK THE FACT THAT MS. HOLMES |
| 10:50AM | 20 | URGED HIM TO TALK TO OTHER PEOPLE IS AN EXCULPATORY FACT.  I |
| 10:50AM | 21 | THINK THAT WILL UNDOUBTEDLY -- I MEAN, IT'S APPARENT FROM THE |
| 10:50AM | 22 | ARTICLE ITSELF.  I THINK IT WILL LIKELY COME OUT IN ONE FORM OR |
| 10:50AM | 23 | ANOTHER JUST AS HE'S DESCRIBING WHAT HE DID. |
| 10:50AM | 24 | IF HE'S CONFINED TO THE OBJECTIVE FACTS, THEN I WILL ASK |
| 10:50AM | 25 | RELATIVELY LITTLE ABOUT THOSE OTHER INQUIRIES. |

| | | |
|---|---|---|
| 10:50AM | 1 | HERE'S THE BASIC PROBLEM: AS LONG AS HE'S CONFINED TO |
| 10:50AM | 2 | SORT OF THE OBJECTIVE FACTS, I TALKED TO ELIZABETH HOLMES, SHE |
| 10:50AM | 3 | TOLD ME X, I WROTE AN ARTICLE, HERE IT IS, GOOD-BYE, I DON'T |
| 10:50AM | 4 | THINK WE NEED TO GET INTO THE AREAS THAT MR. PARLOFF IS |
| 10:50AM | 5 | CONCERNED ABOUT ON PRIVILEGE GROUNDS AND CONFIDENTIALITY |
| 10:50AM | 6 | GROUNDS, THE WHOLE SUBPOENA ISSUE, AS WELL AS AREAS OF |
| 10:51AM | 7 | CROSS-EXAMINATION THAT I THINK MR. PARLOFF WOULD FIND |
| 10:51AM | 8 | OBJECTIONABLE, RIGHTLY OR WRONGLY. |
| 10:51AM | 9 | THE FURTHER WE STRAY AWAY FROM THAT, AND IN PARTICULAR IF |
| 10:51AM | 10 | WE START GETTING INTO THESE DISCUSSIONS OF I, I, YOU KNOW, I |
| 10:51AM | 11 | BASED WHAT I WROTE ON WHAT MS. HOLMES TOLD ME, WE'RE GOING TO |
| 10:51AM | 12 | START GETTING INTO THOSE AREAS. |
| 10:51AM | 13 | AND I THINK IT IS PARTICULARLY IMPORTANT TO BE ABLE TO GET |
| 10:51AM | 14 | INTO THOSE AREAS IN LIGHT OF THE FACT THAT IN MANY INSTANCES |
| 10:51AM | 15 | MS. HOLMES DID URGE MR. PARLOFF TO TALK TO PEOPLE. |
| 10:51AM | 16 | AND THESE WEREN'T -- YOU KNOW, I THINK THE GOVERNMENT |
| 10:51AM | 17 | WOULD LIKE TO PORTRAY IT AS PEOPLE WHO ARE SORT OF UNDER HER |
| 10:51AM | 18 | CONTROL. |
| 10:51AM | 19 | WE'RE TALKING ABOUT THE HEAD OF UCSF, WE'RE TALKING ABOUT |
| 10:51AM | 20 | THE CEO OF WALGREENS, WE'RE TALKING ABOUT DR. DAVID HELFET WHO |
| 10:51AM | 21 | IS -- |
| 10:51AM | 22 | THE COURT: AND ARE ANY OF THOSE RELATED TO THE |
| 10:51AM | 23 | SUBPOENA? |
| 10:51AM | 24 | MR. CLINE: YES, YES, THEY ARE. |
| 10:52AM | 25 | BUT AGAIN -- SORRY TO KEEP SOUNDING LIKE A BROKEN RECORD |

```
10:52AM   1    HERE, BUT THE MORE WE CAN CONFINE THIS TO THESE OBJECTIVE FACTS
10:52AM   2    AND STAY AWAY FROM MR. PARLOFF'S KIND OF SUBJECTIVE LINKAGES
10:52AM   3    AND IMPRESSIONS AND SO FORTH, THE LESS RELEVANCE THE SUBSTANCE
10:52AM   4    OF WHAT THOSE PEOPLE TOLD THEM HAS.
10:52AM   5           THE COURT:  SURE.  I UNDERSTAND THAT.
10:52AM   6        BUT MR. BOSTIC'S EXAMPLE ABOUT THE MACHINE, SHE SAID THE
10:52AM   7    MACHINE COULD DO THIS, BUT SHE DIDN'T WANT TO TALK ABOUT IT,
10:52AM   8    AND THOSE TYPES OF THINGS.
10:52AM   9        AND THEN HE PUT IN HIS ARTICLE, NOT A DIRECT QUOTE, BUT HE
10:52AM  10    WROTE IN HIS ARTICLE, THE MACHINES ARE SMALL, THEY'RE THIS,
10:52AM  11    THEY'RE THAT, THEY'RE THAT.
10:52AM  12        YOU DON'T HAVE A PROBLEM WITH THAT?
10:52AM  13           MR. CLINE:  I DON'T HAVE A PROBLEM WITH HIM
10:52AM  14    SAYING -- PLAYING THE RECORDING OF WHAT SHE ACTUALLY TOLD HIM
10:52AM  15    SO IT'S NOT HIS IMPRESSION OF IT OR HIS UNDERSTANDING OF IT,
10:52AM  16    THIS IS WHAT SHE SAID, I DON'T HAVE A PROBLEM WITH HIM SAYING,
10:52AM  17    I WROTE IN MY ARTICLE X, Y, AND Z.
10:52AM  18        I THINK THE LINKAGE IS FOR THE GOVERNMENT TO MAKE IN
10:52AM  19    ARGUMENT AND FOR US TO DISPUTE IN ARGUMENT.
10:53AM  20        I THINK IT MAY BE -- AND I'M NOT COMMITTING MYSELF TO
10:53AM  21    THIS -- BUT IT MAY BE IN THAT ONE INSTANCE THAT MR. BOSTIC
10:53AM  22    PICKED, NONE OF THOSE OTHER PEOPLE SHE TALKED TO WOULD HAVE
10:53AM  23    ADVISED HER ON THAT PARTICULAR TOPIC.
10:53AM  24        SO IT MIGHT BE, JUST AS A FACTUAL MATTER, THAT ON THAT ONE
10:53AM  25    TOPIC MY CROSS -- I WOULDN'T HAVE ANYTHING TO CROSS HIM ABOUT.
```

5635

10:53AM 1    BUT I DON'T THINK MR. BOSTIC PLANS TO JUST ASK THAT ONE

10:53AM 2    EXAMPLE.  I THINK HE'S GOT PROBABLY A RANGE OF THINGS THAT

10:53AM 3    HE -- WHERE HE WANTS TO DRAW THOSE SAME LINKAGES AND WE'RE

10:53AM 4    GOING TO GET INTO THESE OTHER AREAS AS SOON AS HE STARTS TO

10:53AM 5    LINK WHAT SHE SAID TO WHAT HE WROTE.

10:53AM 6    AND WHAT TROUBLES ME ABOUT IT IS IT'S TOTALLY UNNECESSARY

10:53AM 7    TO THE REAL POINT THAT THE GOVERNMENT WANTS TO MAKE, WHICH IS

10:53AM 8    SHE TALKED TO HIM, SHE SAID THESE THINGS, HE WROTE AN ARTICLE,

10:53AM 9    AND THE CRITICAL POINT IS THAT SHE TOOK AN ARTICLE THAT --

10:53AM 10   ACCORDING TO THE GOVERNMENT -- IS FULL OF FALSE THINGS AND --

10:53AM 11   AGAIN, ACCORDING TO THE GOVERNMENT -- USED IT WITH INVESTORS.

10:54AM 12   THAT'S WHAT IS IMPORTANT HERE.

10:54AM 13   THE COURT:  I UNDERSTAND THAT, AND I THINK

10:54AM 14   MR. BOSTIC DOES, TOO.  I THINK THE GOVERNMENT DOES, TOO.

10:54AM 15   AND WE'RE FLIRTING WITH THE MARGINS HERE ABOUT HOW FAR AND

10:54AM 16   WHAT DOORS MIGHT BE OPENED OR NOT.

10:54AM 17   MR. BOSTIC?

10:54AM 18   MR. BOSTIC:  YES, YOUR HONOR.

10:54AM 19   SO I THINK THIS WITNESS OBVIOUSLY IS IN THE BEST POSITION

10:54AM 20   TO TESTIFY ABOUT THE LINKAGE BETWEEN WHAT MS. HOLMES SAID AND

10:54AM 21   WHAT ENDS UP IN THE ARTICLE.  HE'S THE ONE WHO HAD THE

10:54AM 22   CONVERSATION WITH MS. HOLMES.  HE'S THE ONE WHO CREATED THE

10:54AM 23   ARTICLE.

10:54AM 24   MR. CLINE KEEPS USING A CONSTRUCTION OF A QUESTION LIKE, I

10:54AM 25   WROTE THIS BASED ON WHAT MS. HOLMES TOLD ME.

10:54AM 1    AND I THINK HIS CONCERN IS THE IMPLICATION THAT

10:54AM 2    INFORMATION IN THE ARTICLE MIGHT BE SOLELY ATTRIBUTED TO

10:54AM 3    MS. HOLMES.

10:54AM 4    THE GOVERNMENT HAS NO INTEREST IN DRIVING HOME THAT POINT

10:54AM 5    AND SHOWING THAT THIS INFORMATION ONLY CAME FROM MS. HOLMES.

10:54AM 6    THE POINT INSTEAD IS ON MS. HOLMES'S INTENT, AND THE

10:54AM 7    GOVERNMENT IS PERMITTED TO SHOW THAT SHE INTENDED TO DECEIVE

10:55AM 8    THIS WITNESS.

10:55AM 9    THAT'S NOT THE SAME THING AS SAYING HE'S A VICTIM OF THE

10:55AM 10   FRAUD, BUT I WANT TO BE CLEAR THAT THAT IS AN ACCEPTABLE

10:55AM 11   ARGUMENT AND SUBJECT OF TESTIMONY FOR THIS WITNESS, THE

10:55AM 12   DEFENDANT'S INTENT TO DECEIVE HIM.

10:55AM 13          THE COURT:  SURE.  SURE.

10:55AM 14          MR. BOSTIC:  AND WHEN IT COMES TO THAT, WHY SHOULD

10:55AM 15   THE WITNESS NOT BE ABLE TO EXPLAIN THE EFFECT THAT MS. HOLMES'S

10:55AM 16   STATEMENTS, AGAIN, HER STATEMENTS ALONE, WERE HAVING ON HIS

10:55AM 17   UNDERSTANDING OF WHAT THE COMPANY'S TECHNOLOGY COULD DO?

10:55AM 18   AND I STILL JUST HAVEN'T HEARD -- I HEARD MR. CLINE TALK

10:55AM 19   ABOUT THE FACT THAT MS. HOLMES ENCOURAGED THE WITNESS TO TALK

10:55AM 20   TO OTHER INDIVIDUALS, I SEE THE ARGUMENT THAT THAT MIGHT BE

10:55AM 21   RELEVANT TO HER STATE OF MIND.  IF SHE'S SENDING HIM TO SEEK

10:55AM 22   OTHER SOURCES OF INFORMATION, I THINK THAT'S A FAIR POINT FOR

10:55AM 23   THEM TO BRING OUT IF IT'S WITHIN THE SCOPE OF THE DIRECT AND

10:55AM 24   OTHERWISE ADMISSIBLE.

10:55AM 25   BUT THAT POINT CAN BE MADE WITHOUT REFERENCE TO THE

5637

10:55AM 1    CONTENT OF THE CONVERSATIONS THAT HE HAD WITH THOSE

10:55AM 2    INDIVIDUALS.

10:55AM 3         I JUST DON'T SEE WHY THE SUBSTANCE OF HIS COMMUNICATIONS

10:56AM 4    WITH THOSE OTHER INDIVIDUALS PLAYS TO THAT POINT.

10:56AM 5         CONVERSATIONS THAT MS. HOLMES WASN'T PRESENT AT,

10:56AM 6    CONVERSATIONS WHERE THE STATEMENTS THAT THOSE WITNESSES MADE

10:56AM 7    ARE JUST HEARSAY.

10:56AM 8         SO IF THEY'RE COMING IN FOR THE TRUTH AS CONFIRMATION OF

10:56AM 9    WHAT MS. HOLMES SAID, THAT'S AN IMPERMISSIBLE USE OF THOSE

10:56AM 10   STATEMENTS, AND I CAN'T THINK OF A PERMISSIBLE ONE.

10:56AM 11        THE COURT:  SO WHAT DO WE -- HOW DO WE DEAL WITH

10:56AM 12   THAT THOUGH?  THE ARTICLE IS NOT JUST AN INTERVIEW OF

10:56AM 13   MS. HOLMES APPARENTLY.  HE DID SOME ADDITIONAL RESEARCH.  HE

10:56AM 14   MAY HAVE TALKED TO PEOPLE AT HER URGING REQUEST TO INFORM HIM

10:56AM 15   SO HE COULD WRITE THE ARTICLE.

10:56AM 16        AND HOW DO YOU -- HOW DO WE CROSS THOSE BRIDGES WHEN THEY

10:56AM 17   COME UP AS TO CERTAIN TOPICS AND THINGS?

10:56AM 18        I THINK THIS IS A REAL ISSUE THAT WE HAVE TO NAVIGATE VERY

10:56AM 19   CAREFULLY.

10:56AM 20        MR. BOSTIC:  I THINK PART OF IT, YOUR HONOR, IS THAT

10:56AM 21   IT'S ON THE GOVERNMENT TO MAKE SURE THAT OUR QUESTIONS ARE

10:57AM 22   FRAMED NOT TO MAKE THE SUGGESTION THAT MS. HOLMES WAS THE ONLY

10:57AM 23   SOURCE OF INFORMATION FOR THE ARTICLE OR THAT OTHER PEOPLE

10:57AM 24   MIGHT NOT HAVE SAID CONSISTENT THINGS.

10:57AM 25        AS LONG AS THAT IMPLICATION ISN'T MADE, THEN THAT FALSE

5638

10:57AM  1    IMPRESSION WON'T BE MADE IN THE JURY'S MINDS.

10:57AM  2         THIS ISN'T ABOUT LOOKING AT THE ARTICLE AND DETERMINING

10:57AM  3    WHO IS RESPONSIBLE FOR EACH LINE IN THE ARTICLE.

10:57AM  4         THE FOCUS HERE IS ON THE DEFENDANT'S INTENT AND THE

10:57AM  5    STATEMENTS SHE MADE, SOME OF WHICH ARE RELEVANT JUST BECAUSE

10:57AM  6    THEY'RE DECEPTIVE STATEMENTS ON THEIR OWN, SOME CAN BE TIED TO

10:57AM  7    LANGUAGE IN THE ARTICLE.

10:57AM  8         BUT THE FACT IS THAT THE DEFENDANT, WHILE SHE WAS SPEAKING

10:57AM  9    TO MR. PARLOFF, INTENDED TO DECEIVE HIM, AND I THINK THAT WILL

10:57AM  10   BE CLEAR FROM THE RECORDINGS AND THE STATEMENTS THAT THE

10:57AM  11   WITNESS RECOUNTS.

10:57AM  12        THE FACT THAT THOSE STATEMENTS CREATED A FALSE IMPRESSION

10:57AM  13   IN THE WITNESS'S MIND THAT THEN RESULTED IN A FALSE IMPRESSION

10:58AM  14   BEING CONVEYED IN THE ARTICLE IS WHAT THIS IS ALL ABOUT.

10:58AM  15             THE COURT:  SURE.

10:58AM  16             MR. BOSTIC:  AND TO THE EXTENT THAT HE HAD OTHER

10:58AM  17   SOURCES --

10:58AM  18             THE COURT:  RIGHT.  BUT HE'S NOT GOING TO SAY, "I

10:58AM  19   WAS LIED TO"?

10:58AM  20             MR. BOSTIC:  NO, YOUR HONOR.

10:58AM  21             THE COURT:  HE'S GOING TO SAY, I WAS WRITING A STORY

10:58AM  22   AND THIS IS WHAT WAS SAID AND HERE'S WHAT I WROTE AT THAT

10:58AM  23   PARTICULAR TIME.

10:58AM  24        HE'S NOT GOING TO TALK AT ALL ABOUT HIS LATER ARTICLE.

10:58AM  25        AND I KNOW THAT THE OTHER ISSUE I HAVE IS WHETHER OR NOT

5639

```
10:58AM   1    YOU'RE GOING TO TRY TO RAISE, MR. CLINE, SOME BIAS OR SOMETHING
10:58AM   2    BECAUSE OF HIS SUBSEQUENT ARTICLE AND BRING IT IN SOMEHOW,
10:58AM   3    BECAUSE AS YOU'VE TOLD ME, I THINK YOUR PLEADINGS SUGGEST, HE'S
10:58AM   4    VERY BIASSED AGAINST HER, HE'S UPSET WITH HER, SHE CAUSED HIS
10:58AM   5    REPUTATION TO BE DAMAGED IN THE JOURNALISTIC COMMUNITY AND,
10:58AM   6    THEREFORE, HE HAS AN AX TO GRIND.
10:58AM   7         AND AS YOU KNOW, WE'VE TALKED ABOUT IT, BIAS IS ALWAYS
10:58AM   8    RELEVANT.
10:58AM   9         I DON'T KNOW HOW FAR YOU'RE GOING TO GO WITH THAT, AND IF
10:58AM  10    YOU DO, THAT CREATES OTHER ISSUES, DOESN'T IT?
10:59AM  11         BUT BACK TO MR. BOSTIC FOR A SECOND.
10:59AM  12              MR. CLINE:  SURE.
10:59AM  13              THE COURT:  I UNDERSTAND THAT THE ARTICLE IS PART OF
10:59AM  14    THE GOVERNMENT'S CASE, IT SOUNDS LIKE, AS TO DECEPTION, THAT
10:59AM  15    SHE USED IT TO DECEIVE.
10:59AM  16         HIS PART IN THIS IS NOT -- HIS PART IS HE WAS THE AUTHOR.
10:59AM  17    THE FACT THAT HE MAY OR MAY NOT HAVE BEEN DECEIVED IS NOT
10:59AM  18    RELEVANT.  THE FACT IS, HE'S THE SCRIVENER AND HE WROTE THE
10:59AM  19    ARTICLE BASED ON HER STATEMENTS, HE MEMORIALIZED HER STATEMENTS
10:59AM  20    IN AN ARTICLE THAT WAS SUBSEQUENTLY USED BY HER, AND THAT'S THE
10:59AM  21    IMPORTANT PART OF IT.
10:59AM  22              MR. BOSTIC:  THAT'S AN IMPORTANT PART, YOUR HONOR.
10:59AM  23    I THINK THE FACT THAT HE WAS DECEIVED IS RELEVANT BECAUSE IT'S
10:59AM  24    RELEVANT OF HER INTENT TO DECEIVE.
10:59AM  25              THE COURT:  AND HOW DOES HIS DECEPTION COME IN?  ARE
```

5640

| | | |
|---|---|---|
| 10:59AM | 1 | YOU EVER GOING TO ASK HIM, DID YOU FEEL THAT YOU WERE DECEIVED? |
| 10:59AM | 2 | MR. BOSTIC:  NO, YOUR HONOR. |
| 10:59AM | 3 | THE COURT:  OF COURSE NOT. |
| 10:59AM | 4 | MR. BOSTIC:  BECAUSE HE DOESN'T HAVE A BASIS TO SAY |
| 10:59AM | 5 | THAT. |
| 10:59AM | 6 | THE COURT:  RIGHT. |
| 10:59AM | 7 | MR. BOSTIC:  BECAUSE THAT WOULD REQUIRE HIM TO JUDGE |
| 10:59AM | 8 | THE TRUTH OF WHAT MS. HOLMES SAID. |
| 10:59AM | 9 | THE COURT:  EXACTLY. |
| 10:59AM | 10 | MR. BOSTIC:  SO THAT'S WHAT WE'RE GOING TO BE |
| 11:00AM | 11 | CAREFUL TO STAY AWAY FROM. |
| 11:00AM | 12 | BUT THE FACT THAT HE CAME AWAY FROM CONVERSATIONS WITH |
| 11:00AM | 13 | MS. HOLMES BELIEVING X WHEN THE JURY KNOWS THAT NOT X WAS TRUE, |
| 11:00AM | 14 | THAT'S AN IMPORTANT FACT. |
| 11:00AM | 15 | THE COURT:  SO YOU BELIEVED WHAT SHE TOLD YOU? |
| 11:00AM | 16 | YES. |
| 11:00AM | 17 | YOU WROTE THE ARTICLE BASED ON THOSE BELIEFS? |
| 11:00AM | 18 | YES. |
| 11:00AM | 19 | AND WE MOVE ON. |
| 11:00AM | 20 | MR. BOSTIC:  YES, YOUR HONOR.  THE ONLY REASON I'M |
| 11:00AM | 21 | PUSHING BACK ON BEING ABLE TO GET INTO HIS UNDERSTANDING, LET |
| 11:00AM | 22 | ME PROVIDE ONE MORE EXAMPLE AND MAYBE THIS ONE WILL HELP. |
| 11:00AM | 23 | THE COURT:  SURE. |
| 11:00AM | 24 | MR. BOSTIC:  THERE WILL BE SOME CASES WHERE A |
| 11:00AM | 25 | STATEMENT FROM MS. HOLMES NEEDS TO BE PLACED IN THE CONTEXT OF |

5641

11:00AM  1    MR. PARLOFF'S OVERALL UNDERSTANDING, INFORMED BY THEIR SEVERAL

11:00AM  2    CONVERSATIONS, IN ORDER TO MAKE SENSE TO THE JURY.

11:00AM  3        FOR EXAMPLE, I DON'T HAVE THE EXACT LANGUAGE IN FRONT OF

11:00AM  4    ME, BUT THERE'S A POINT WHERE MR. PARLOFF ASKS ABOUT THE

11:00AM  5    ARIZONA LAB AND WHAT IS BEING DONE THERE.

11:00AM  6        AND THE COURT MAY KNOW THAT THE ARIZONA LAB OPERATED BY

11:00AM  7    THERANOS DID NOT RUN ANY LABORATORY DEVELOPED TESTS, IT ONLY

11:01AM  8    RAN FDA APPROVED NONTHERANOS ASSAYS, THE SAME WAY THAT ANY

11:01AM  9    OTHER LAB WOULD DO.

11:01AM 10        WHEN MR. PARLOFF ASKED ABOUT THAT AND THE NEED FOR VEIN

11:01AM 11    PUNCTURE, MS. HOLMES SAID SOMETHING TO THE EFFECT OF, WELL,

11:01AM 12    THAT RELATES TO OUR REFERENCE LAB SERVICE WHERE WE'RE DOING

11:01AM 13    ESOTERIC TESTS, SOMETHING DIFFERENT FROM WE'RE JUST RUNNING RUN

11:01AM 14    OF THE MILL TESTS THERE THE WAY THAT ANY OTHER LAB WOULD.

11:01AM 15        THEY PREVIOUSLY HAD SPOKEN ABOUT ESOTERIC TESTS AND

11:01AM 16    REFERENCE LABS, SO IT'S IMPORTANT IN THAT CASE TO BE ABLE TO

11:01AM 17    ASK HIM, WHAT DID YOU UNDERSTAND HER ANSWER TO MEAN?  WHAT DID

11:01AM 18    SHE MEAN BY ESOTERIC TESTS?  AND WHAT DID THAT MEAN ABOUT WHAT

11:01AM 19    THEY WERE DOING IN THE PHOENIX LAB?  WHAT WAS SHE SAYING TO YOU

11:01AM 20    AS YOU UNDERSTOOD IT?

11:01AM 21        BECAUSE HE HAS A BACKGROUND TO UNDERSTAND THAT, SUPPLIED

11:01AM 22    BY HER, THAT THE JURY WON'T HAVE.

11:01AM 23        SO IN ORDER FOR THE SIGNIFICANCE TO COME THROUGH TO THE

11:01AM 24    JURY, IT'S IMPORTANT THAT HE BE ABLE TO PROVIDE THAT.

11:01AM 25        IT'S NOT AN OPINION, IT'S SIMPLY THE ADDITIONAL CONTEXT TO

5642

11:01AM   1   UNDERSTAND THAT.

11:02AM   2        KEEPING IT OUT ROBS THE TESTIMONY OF SOME OF ITS IMPACT

11:02AM   3   AND SIGNIFICANCE, SO IT BENEFITS THE DEFENSE, BUT I DON'T THINK

11:02AM   4   THOSE POINTS ARE IRRELEVANT OR INADMISSIBLE.

11:02AM   5        THE COURT:  SO THAT'S A SITUATION WHERE SHE TOLD YOU

11:02AM   6   X ABOUT THE PHOENIX LABS AT ONE TIME, AND THEN YOU ASKED HER

11:02AM   7   AGAIN AND SHE SAID THIS ABOUT THE PHOENIX LABS, DIFFERENT THAN

11:02AM   8   THE PREVIOUS STATEMENT?

11:02AM   9        MR. BOSTIC:  I DON'T THINK THAT'S AN EXAMPLE OF

11:02AM  10   INCONSISTENT STATEMENTS ON DIFFERENT OCCASIONS.

11:02AM  11        I THINK INSTEAD IT'S THAT, THROUGH THE COURSE OF THEIR

11:02AM  12   CONVERSATIONS, MR. PARLOFF HAD DEVELOPED AN UNDERSTANDING ABOUT

11:02AM  13   WHAT AN ESOTERIC TEST WAS.

11:02AM  14        AN ESOTERIC TEST WOULD BE SOMETHING THAT WAS RARELY

11:02AM  15   ORDERED, IT'S TYPICALLY VERY EXPENSIVE, MAYBE ONLY A TINY

11:02AM  16   SEGMENT OF THE POPULATION NEEDS IT.

11:02AM  17        SO WHEN MS. HOLMES SAYS, THE PHOENIX LAB IS THERE TO DO

11:03AM  18   ESOTERIC TESTS AS PART OF OUR REFERENCE LAB SERVICE, SHE WAS

11:03AM  19   TELLING HIM, BASED UPON THEIR PREVIOUS CONVERSATIONS, THAT THAT

11:03AM  20   LAB WAS FOCUSSED ON DOING THESE SPECIALIZED RARE TESTS.

11:03AM  21        THAT WASN'T TRUE.

11:03AM  22        BUT IN ORDER FOR THE JURY TO UNDERSTAND KIND OF THE INTENT

11:03AM  23   BEHIND HER STATEMENT, THEY NEED TO UNDERSTAND WHAT A LISTENER

11:03AM  24   IN MR. PARLOFF'S POSITION, WITH HIS BACKGROUND, WOULD HAVE

11:03AM  25   TAKEN FROM IT, AND SO THAT'S WHAT HE SHOULD BE ALLOWED TO

5643

| | | |
|---|---|---|
| 11:03AM | 1 | PROVIDE. |
| 11:03AM | 2 | THE COURT:  OKAY. |
| 11:03AM | 3 | MR. CLINE:  AND I DISAGREE WITH THAT. |
| 11:03AM | 4 | I MEAN, IF THE GOVERNMENT WANTS TO PLAY THE RELEVANT, WHAT |
| 11:03AM | 5 | THEY CONSIDER TO BE THE RELEVANT PORTIONS OF MS. HOLMES'S |
| 11:03AM | 6 | STATEMENT AND THEN ARGUE, AS MR. BOSTIC JUST DID, TO THE JURY |
| 11:03AM | 7 | ULTIMATELY THAT THIS WAS A LIE BECAUSE OF X, Y, AND Z, OF |
| 11:03AM | 8 | COURSE THEY CAN DO THAT. |
| 11:03AM | 9 | BUT TO ADD TO THAT THE GLOSS OF MR. PARLOFF'S |
| 11:03AM | 10 | UNDERSTANDING, IT'S, IT'S -- IT INVITES -- IT JUST INVITES A |
| 11:04AM | 11 | MESS HERE. |
| 11:04AM | 12 | AND LET ME GIVE YOU HAVE AN EXAMPLE OF WHY IT INVITES |
| 11:04AM | 13 | THAT.  YOU MENTIONED BIASSED A MOMENT AGO, WHICH IS SOMETHING I |
| 11:04AM | 14 | DIDN'T REALLY TALK ABOUT EARLY ON, BUT THE MORE WE GET INTO |
| 11:04AM | 15 | MR. PARLOFF'S SUBJECTIVE VIEWS, WHICH, OF COURSE, ARE NOT -- |
| 11:04AM | 16 | HE'S NOT ABLE TO TESTIFY NOW ABOUT WHAT HE THOUGHT AT THE TIME. |
| 11:04AM | 17 | EVERYTHING IS FILTERED THROUGH THE EVENTS THAT HAVE HAPPENED |
| 11:04AM | 18 | OVER THE LAST SEVEN YEARS, AND A LOT HAS HAPPENED IN |
| 11:04AM | 19 | MR. PARLOFF'S LIFE AND OTHERWISE. |
| 11:04AM | 20 | SO WHEN HE STARTS TALKING ABOUT HIS SUBJECTIVE VIEWS OF |
| 11:04AM | 21 | WHAT SHE SAID, NOT HER ACTUAL WORDS, THOSE OF COURSE ARE |
| 11:04AM | 22 | ADMISSIBLE, BUT NOW HE'S GLOSSING THEM, BIAS AND OTHER |
| 11:04AM | 23 | IMPEACHMENT METHODOLOGIES COME VERY MUCH INTO PLAY. |
| 11:04AM | 24 | AND THE FACT THAT HE'S BIASSED BASED ON WHAT HE PERCEIVES |
| 11:04AM | 25 | AS HAVING BEEN MISLED, AND PERHAPS ON OTHER ISSUES AS WELL, |

5644

| | | |
|---|---|---|
| 11:05AM | 1 | COMES DIRECTLY INTO PLAY. |
| 11:05AM | 2 | I WILL TELL YOU THAT IF WE STICK TO SORT OF THE PROGRAM |
| 11:05AM | 3 | THAT I HAVE TALKED ABOUT, I DON'T PLAN TO GET INTO ANY OF THAT, |
| 11:05AM | 4 | BECAUSE IT JUST TURNS INTO A BIG MESS THAT WILL -- IT WILL |
| 11:05AM | 5 | AFFECT MR. PARLOFF, IT WILL HURT THE GOVERNMENT, AND NO DOUBT |
| 11:05AM | 6 | SOME OF IT WILL SPLATTER BACK ON US.  IT'S JUST A MESS. |
| 11:05AM | 7 | AND IT'S ALSO GOING TO IMPLICATE THESE PRIVILEGE ISSUES |
| 11:05AM | 8 | AND THESE OTHER ISSUES THAT MR. PARLOFF WANTS TO STAY AWAY |
| 11:05AM | 9 | FROM. |
| 11:05AM | 10 | AND ALTHOUGH I DISAGREE WITH HIM ON THE LAW, I UNDERSTAND |
| 11:05AM | 11 | WHY HE WANTS TO TAKE THAT VIEW. |
| 11:05AM | 12 | AND, IN FACT, I'M CONFIDENT THAT THAT IS WHY MR. PARLOFF |
| 11:05AM | 13 | HIMSELF IN HIS PLEADING HAS TAKEN A VERY NARROW VIEW OF WHAT |
| 11:05AM | 14 | HIS PERMISSIBLE TESTIMONY WOULD BE.  I THINK HE WANTS TO STAY |
| 11:05AM | 15 | AWAY FROM ALL OF THAT.  SO DO I. |
| 11:05AM | 16 | BUT THE MORE WE GET INTO HIS SUBJECTIVE IMPRESSION, THE |
| 11:05AM | 17 | MORE WE'RE GOING TO BE TALKING ABOUT A RANGE OF ISSUES THAT |
| 11:05AM | 18 | WILL CREATE NOTHING BUT PROBLEMS, AND BIAS IS CERTAINLY ONE OF |
| 11:06AM | 19 | THEM.  THESE OTHER SOURCES ARE ANOTHER. |
| 11:06AM | 20 | I UNDERSTAND WHY THE GOVERNMENT WANTS TO DO THAT, BECAUSE |
| 11:06AM | 21 | THEY HAVE A WITNESS HERE WHO WILL, IN EVERY INSTANCE, PUT THE |
| 11:06AM | 22 | MOST PEJORATIVE POSSIBLE TWIST ON THINGS AND IN THE MOST |
| 11:06AM | 23 | FAVORABLE TO THE GOVERNMENT. |
| 11:06AM | 24 | I DON'T THINK THE COURT SHOULD ALLOW IT UNDER RULE 403, |
| 11:06AM | 25 | BUT ALSO FOR THE PRACTICAL REASONS THAT WE'RE JUST GOING TO |

| | | |
|---|---|---|
| 11:06AM | 1 | CREATE A MESS IF WE GO DOWN THAT ROAD. |
| 11:06AM | 2 | THE COURT: OKAY. DID YOU HAVE ANOTHER TOPIC YOU |
| 11:06AM | 3 | WANTED TO GET BACK TO? |
| 11:06AM | 4 | MR. CLINE: I DID. LET ME GO THROUGH THEM IN |
| 11:06AM | 5 | REVERSE. |
| 11:06AM | 6 | MR. BOSTIC MENTIONED, AND WE TALKED ABOUT THIS A LITTLE |
| 11:06AM | 7 | BIT IN OUR PHONE CALL ON FRIDAY, IF MS. HOLMES HAD TOLD YOU X, |
| 11:06AM | 8 | WOULD YOU HAVE WRITTEN WHAT YOU WROTE? |
| 11:06AM | 9 | I THINK, AGAIN, THAT'S JUST TOTAL SPECULATION AT THIS |
| 11:06AM | 10 | POINT, AND THE FACT THAT HE IS NOT -- IF HE WERE AN INVESTOR, |
| 11:06AM | 11 | THEN MAYBE THAT QUESTION WOULD GO TO MATERIALITY. |
| 11:07AM | 12 | BUT AS MR. BOSTIC HAS SAID, AND I AGREE, MATERIALITY IS |
| 11:07AM | 13 | NOT AN ISSUE WITH MR. PARLOFF. |
| 11:07AM | 14 | HERE IT'S JUST PURE SPECULATION, AND OF COURSE IN EVERY |
| 11:07AM | 15 | INSTANCE HE'S GOING TO SAY, OH, NO, I WOULD NEVER HAVE WRITTEN |
| 11:07AM | 16 | THAT IF ONLY I HAD KNOWN X, Y, AND Z. |
| 11:07AM | 17 | THE COURT: WELL, THAT LOOKS A LITTLE BROAD, |
| 11:07AM | 18 | MR. BOSTIC. WOULD YOU HAVE WRITTEN IT DIFFERENTLY IF SHE HAD |
| 11:07AM | 19 | SAID SOMETHING? IS THAT A QUESTION THAT YOU INTEND TO ASK HIM? |
| 11:07AM | 20 | MR. BOSTIC: YES, YOUR HONOR. |
| 11:07AM | 21 | FIRST OF ALL, THAT'S NOT SPECULATION. IT'S ASKING THE |
| 11:07AM | 22 | WITNESS ABOUT HIS OWN DECISIONS, NOT ABOUT SOMEONE ELSE'S OR |
| 11:07AM | 23 | NOT SOMETHING IN THE FUTURE. |
| 11:07AM | 24 | HERE'S AN EXAMPLE. THE ARTICLE TALKS ABOUT THE NUMBER OF |
| 11:07AM | 25 | TESTS THAT COULD BE RUN ON THERANOS'S TECHNOLOGY. |

5646

| 11:07AM | 1 | IF MS. HOLMES HAD TOLD HIM -- AND I THINK THE ARTICLE |

11:07AM  1      IF MS. HOLMES HAD TOLD HIM -- AND I THINK THE ARTICLE

11:07AM  2   SAYS -- I FORGET WHETHER IT SAYS 200 OR 1,000 TESTS CAN BE RUN,

11:07AM  3   BUT THE QUESTION MIGHT BE SOMETHING LIKE, IF MS. HOLMES HAD

11:07AM  4   TOLD YOU THAT THE MAJORITY OF THERANOS'S TESTS WERE ACTUALLY

11:08AM  5   RUN ON THIRD PARTY DEVICES, WOULD THAT HAVE AFFECTED THAT

11:08AM  6   STATEMENT IN THE ARTICLE?

11:08AM  7      I THINK THE ANSWER IS OBVIOUS.  I THINK THE ANSWER IS YES,

11:08AM  8   OF COURSE IT WOULD HAVE, BECAUSE THE ARTICLE GIVES THE

11:08AM  9   IMPRESSION THAT ALL OF THOSE TESTS ARE BEING RUN ON THE

11:08AM  10  THERANOS TECHNOLOGY.

11:08AM  11     SO IF MS. HOLMES HAD TOLD HIM ABOUT THE COMPANY'S RELIANCE

11:08AM  12  ON THIRD PARTY DEVICES, WOULD THAT HAVE AFFECTED THE

11:08AM  13  INFORMATION THAT WAS THEN CONVEYED IN THE ARTICLE?

11:08AM  14        THE COURT:  WELL, THAT SOUNDS LIKE IT'S A SHE SAID

11:08AM  15  ONE THING, THEY'RE BEING RUN ON ONE TYPE OF MACHINE, AND

11:08AM  16  THEN -- I THINK YOU'VE ASKED THIS OF INVESTORS -- YOU KNOW, IF

11:08AM  17  YOU KNEW THAT THEY WEREN'T RUN -- IF YOU KNEW THAT THEY WERE

11:08AM  18  RUN ON A THIRD PARTY'S, AS OPPOSED TO THE COMPANY'S MACHINES,

11:08AM  19  WOULD THAT HAVE CHANGED YOUR OPINION?  ISN'T THIS THE SAME

11:08AM  20  QUESTION?

11:08AM  21        MR. BOSTIC:  I THINK IT'S SIMILAR, YOUR HONOR.  IT'S

11:08AM  22  ASKED FOR A DIFFERENT REASON.

11:08AM  23        THE COURT:  RIGHT.

11:08AM  24        MR. BOSTIC:  I THINK --

11:08AM  25        THE COURT:  AND WHY ISN'T THAT, WHY ISN'T THAT

5647

11:08AM  1   PERMISSIBLE?

11:08AM  2              MR. CLINE:  HERE'S THE DIFFERENCE.  WITH INVESTORS,

11:08AM  3   THEY HAVE TO PROVE MATERIALITY.  SO A QUESTION LIKE THAT, EVEN

11:09AM  4   IF THE ANSWER IS OBVIOUS, GOES TO THE MATERIALITY OF THE

11:09AM  5   INFORMATION.

11:09AM  6         MATERIALITY IS IRRELEVANT WHEN IT COMES TO MR. PARLOFF.

11:09AM  7   IT DOESN'T MATTER WHETHER THE STATEMENTS WERE MATERIAL OR NOT.

11:09AM  8              THE COURT:  BUT DOESN'T IT COME IN TO PROVE, AS

11:09AM  9   MR. BOSTIC SAID, AT LEAST IT'S INFORMATION THAT THE JURY CAN

11:09AM  10  CONSIDER AS TO WHETHER OR NOT THERE WAS DECEPTION?  NOT AS TO

11:09AM  11  THIS WITNESS, BUT AS TO HOW SHE USED IT, AND THE GOVERNMENT IS

11:09AM  12  GOING TO ARGUE THAT'S PART OF THE PLAN AND SCHEME.

11:09AM  13             MR. CLINE:  AND THE GOVERNMENT CAN ARGUE THAT ALL IT

11:09AM  14  WANTS.

11:09AM  15        BUT THIS WITNESS SHOULD NOT BE PERMITTED SIMPLY TO

11:09AM  16  RECITE -- IN EFFECT WHAT HE'LL BE DOING IS DESCRIBING WHAT HE

11:09AM  17  LATER WROTE IN HIS NOW, YOU KNOW, WE'VE AGREED, INADMISSIBLE

11:09AM  18  2016 ARTICLE.  IF SHE TOLD YOU THIS, WOULD YOU HAVE WRITTEN

11:09AM  19  THIS?  IF SHE TOLD YOU THAT, WOULD YOU HAVE WRITTEN THAT?

11:09AM  20        IT'S NOT RELEVANT.  IT'S 403 MATERIAL.  AND, OF COURSE,

11:10AM  21  IT'S NOTHING THAT CAN COULD POSSIBLY CROSS-EXAMINE HIM ON.

11:10AM  22        AND IT'S SPECULATIVE.  HE'S TESTIFYING NOW WITH THE

11:10AM  23  BENEFIT OF SEVEN YEARS OF HINDSIGHT, SO OF COURSE HE'S GOING TO

11:10AM  24  SAY THAT.

11:10AM  25             THE COURT:  RIGHT.  BUT IF AT THE TIME, AND I

5648

| | | |
|---|---|---|
| 11:10AM | 1 | DON'T -- YOU KNOW, I DON'T KNOW WHEN THE INTERVIEW WAS AND ALL |
| 11:10AM | 2 | OF THAT -- BUT IF AT THE TIME, IF AT THE TIME THE MACHINES |
| 11:10AM | 3 | WEREN'T RUNNING AS SHE SAID THEY WERE, AND THAT SEEMS TO BE IN |
| 11:10AM | 4 | EVIDENCE NOW, I THINK.  IF IT IS, I THINK YOU CAN TIE THAT IN |
| 11:10AM | 5 | THE TIME STAMP, THAT THE MACHINES WERE NOT RUNNING, AND I'M |
| 11:10AM | 6 | JUST USING THIS AS AN EXAMPLE. |
| 11:10AM | 7 | CAN'T HE ASK THAT THE TIME, TIME STAMP THOSE MACHINES?  IF |
| 11:10AM | 8 | ON THIS DATE SHE HAD TOLD YOU X, THAT THESE MACHINES WERE |
| 11:10AM | 9 | RUNNING, WOULD YOU HAVE PUT THAT IN? |
| 11:10AM | 10 | MR. CLINE:  I ABSOLUTELY DO NOT THINK SO, |
| 11:10AM | 11 | YOUR HONOR. |
| 11:10AM | 12 | AGAIN, IT'S TOTALLY UNLIKE AN INVESTOR WHO IS MAKING AN |
| 11:10AM | 13 | INVESTMENT DECISION AND SO MATERIALITY IS IN PLAY. |
| 11:10AM | 14 | IT DOESN'T MAKE THE SLIGHTEST DIFFERENCE TO WHAT THE JURY |
| 11:11AM | 15 | HAS TO DECIDE, WHETHER MR. PARLOFF WOULD HAVE WRITTEN WHAT HE |
| 11:11AM | 16 | WROTE OR WOULD HAVE WRITTEN SOMETHING DIFFERENT IF HE HAD KNOWN |
| 11:11AM | 17 | CERTAIN FACTS THAT, ALLEGED FACTS THAT HE DIDN'T KNOW.  IT'S |
| 11:11AM | 18 | IRRELEVANT. |
| 11:11AM | 19 | THE COURT:  SO IT'S -- I GUESS IT'S EQUALLY |
| 11:11AM | 20 | IRRELEVANT THAT IF MR. BOSTIC WERE NOT TO ASK THAT QUESTION, |
| 11:11AM | 21 | BUT WERE TO ASK, SHE SAID THE MACHINES WERE RUNNING, X AMOUNT |
| 11:11AM | 22 | OF MACHINES WERE RUNNING X TYPES OF TESTS, WOULD YOU BE |
| 11:11AM | 23 | SURPRISED TO KNOW THAT ON THE TIME THAT THEY WEREN'T? |
| 11:11AM | 24 | MR. CLINE:  TOTALLY 100 PERCENT IN MY VIEW |
| 11:11AM | 25 | IRRELEVANT AND 403 MATERIAL. |

5649

11:11AM 1        WHETHER MR. PARLOFF WOULD BE SURPRISED BY SOMETHING?  WHO

11:11AM 2    CARES.  IT'S JUST NOT RELEVANT TO WHAT THE JURY HAS TO DECIDE.

11:11AM 3        THE COURT:  AND YOUR POINT IS THAT THAT EVIDENCE IS

11:11AM 4    ALREADY IN BEFORE THE JURY BECAUSE THE JURY HAS EVIDENCE NOW

11:11AM 5    THAT THE MACHINES WERE EITHER RUNNING OR NOT RUNNING OR

11:11AM 6    WHATEVER.

11:11AM 7        MR. CLINE:  THE JURY HAS PLENTY OF EVIDENCE.  THERE

11:12AM 8    WILL NO DOUBT BE MORE BEFORE THE CASE IS OVER.

11:12AM 9        AND IN CLOSING ARGUMENT, THE GOVERNMENT OF COURSE IS

11:12AM 10   PERFECTLY FREE TO GET UP AND LINK THESE FACTS TOGETHER.

11:12AM 11       HERE IS WHAT DR. ROSENDORFF TOLD YOU, HERE IS WHAT

11:12AM 12   MS. HOLMES SAID, HERE IS WHAT SHOWED UP IN THE ARTICLE, AND

11:12AM 13   THEN HERE IS WHAT MS. HOLMES DID WITH THE ARTICLE.

11:12AM 14       BUT THAT'S CLOSING ARGUMENT.

11:12AM 15       AND TO ASK THIS MAN, WOULD YOU BE SURPRISED TO KNOW X?

11:12AM 16   HIS SURPRISE OR LACK OF SURPRISE IS IRRELEVANT.

11:12AM 17       SIMILARLY, HIS NOW IN RETROSPECT VIEW THAT HAD HE KNOWN X,

11:12AM 18   Y, AND Z HE WOULD HAVE WRITTEN SOMETHING DIFFERENT, IT HAS

11:12AM 19   NOTHING TO DO WITH WHAT THE JURY HAS TO DECIDE AND IT'S JUST

11:12AM 20   PREJUDICIAL AND IT IS A WAY OF SMUGGLING INTO THE CASE THE

11:12AM 21   EFFECT, AT LEAST, OF HIS 2016 ARTICLE.

11:12AM 22       MR. BOSTIC:  YOUR HONOR, HERE IS WHY THAT IS

11:12AM 23   RELEVANT.  IT'S RELEVANT NOT BECAUSE WE NEED TO SHOW

11:12AM 24   MATERIALITY WITH THIS WITNESS, BUT BECAUSE IT'S HIGHLY

11:12AM 25   PROBATIVE OF MS. HOLMES'S INTENT IN MAKING THE STATEMENTS THAT

5650

11:13AM 1    SHE MADE TO MR. PARLOFF AND IN WITHHOLDING THE INFORMATION THAT

11:13AM 2    SHE WITHHELD FROM HIM.

11:13AM 3        HER INTENT WAS TO END UP AT THE END OF THE DAY WITH THIS

11:13AM 4    ARTICLE.  THIS ARTICLE SAYS SEVERAL VERY POSITIVE AND FALSE

11:13AM 5    THINGS ABOUT THE COMPANY.

11:13AM 6        SHE WANTED THIS PRODUCT AT THE END OF THE DAY.  IN ORDER

11:13AM 7    TO ACCOMPLISH THAT, SHE HAD HOURS OF CONVERSATIONS WITH

11:13AM 8    MR. PARLOFF WHERE SHE CULTIVATED A FALSE IMPRESSION IN HIS MIND

11:13AM 9    ABOUT WHAT THE TECHNOLOGY COULD DO.

11:13AM 10       WHEN SHE DECIDED NOT TO PROVIDE HIM WITH A CERTAIN FACT,

11:13AM 11   FOR EXAMPLE, THE COMPANY'S RELIANCE ON THIRD PARTY DEVICES, IT

11:13AM 12   WAS TO PRESERVE THE FALSE IMPRESSION THAT SHE HAD OTHERWISE

11:13AM 13   CREATED IN HIS MIND AND TO MAKE SURE THAT, OR AT LEAST TO

11:13AM 14   MAXIMIZE THE CHANCES OF THE ARTICLE CONTAINING THAT SAME

11:13AM 15   POSITIVE SPIN, THAT SAME FALSE EXAGGERATED IMPRESSION OF WHAT

11:13AM 16   THE THERANOS TECHNOLOGY COULD DO.

11:13AM 17       SO THE QUESTION, IF MS. HOLMES HAD TOLD YOU ABOUT THE

11:14AM 18   RELIANCE ON THIRD PARTY DEVICES, WOULD THAT HAVE CHANGED THIS

11:14AM 19   CONTENT IN THE ARTICLE IS RELEVANT BECAUSE IT SHOWS THAT

11:14AM 20   MS. HOLMES'S PLAN WORKED.  HER INTENT TO WITHHOLD THAT

11:14AM 21   INFORMATION BECAUSE IT WOULD HAVE JEOPARDIZED THE POSITIVE,

11:14AM 22   HELPFUL PRODUCT THAT SHE WAS ABOUT TO GIVE OUT OF THIS PROCESS,

11:14AM 23   I THINK THERE'S NOTHING WRONG WITH HAVING HIM EXPLAIN THAT.

11:14AM 24            THE COURT:  DO YOU NEED THAT, MR. BOSTIC?  DO YOU

11:14AM 25   THINK YOU NEED THAT TO TIE ALL OF THAT TOGETHER?

5651

| | | |
|---|---|---|
| 11:14AM | 1 | I REALIZE -- AND, AGAIN, I'M NOT -- I DON'T EVER WANT TO |
| 11:14AM | 2 | GET INTO EITHER OF YOUR CASES, YOU PUT YOUR CASE ON, BUT I AM |
| 11:14AM | 3 | JUST WONDERING, DON'T YOU HAVE THAT SUFFICIENT INFORMATION JUST |
| 11:14AM | 4 | WITH THE ARTICLE ITSELF THAT YOU CAN MAKE THAT ARGUMENT WITHOUT |
| 11:14AM | 5 | THE NEED TO PUSH THE MARGIN ON IT? |
| 11:14AM | 6 | MR. BOSTIC:  MY INTENTION CERTAINLY IS NOT TO PUSH |
| 11:14AM | 7 | THE MARGIN, YOUR HONOR. |
| 11:14AM | 8 | THE COURT:  IT'S MY WORDS, NOT YOURS, OF COURSE. |
| 11:15AM | 9 | MR. BOSTIC:  NO, NO.  WE'RE HERE FOR THE COURT'S |
| 11:15AM | 10 | GUIDANCE, SO I'LL ULTIMATELY BE GUIDED BY THE COURT'S THINKING |
| 11:15AM | 11 | ON THIS. |
| 11:15AM | 12 | I THINK THAT IS APPROPRIATE.  I THINK IT'S NORMAL TO ASK A |
| 11:15AM | 13 | WITNESS TO TESTIFY ABOUT HIS REACTION TO A CONVERSATION THAT HE |
| 11:15AM | 14 | WAS HAVING. |
| 11:15AM | 15 | WE'RE NOT CALLING HIM A VICTIM.  THAT WOULD CREATE |
| 11:15AM | 16 | PROBLEMS. |
| 11:15AM | 17 | THE COURT:  RIGHT. |
| 11:15AM | 18 | MR. BOSTIC:  WE'RE NOT HAVING HIM OPINE ON THE |
| 11:15AM | 19 | DEFENDANT'S CREDIBILITY OR TRUTHFULNESS.  THAT WOULD CAUSE A |
| 11:15AM | 20 | PROBLEM. |
| 11:15AM | 21 | THOSE ARE THE THIRD RAILS THAT WE'RE STAYING FAR AWAY |
| 11:15AM | 22 | FROM. |
| 11:15AM | 23 | I THINK THE QUESTIONS THAT WE DO INTEND TO ASK ARE |
| 11:15AM | 24 | PERMISSIBLE. |
| 11:15AM | 25 | I UNDERSTAND WHY THE DEFENSE WOULD WANT THIS WITNESS'S |

5652

11:15AM 1      ROLE TO BE MORE RESTRICTED AND MECHANICAL, BUT I DON'T THINK

11:15AM 2      THE LAW SUPPORTS THEM ON IT.

11:15AM 3              THE COURT:  OKAY.

11:15AM 4              MR. CLINE:  YOUR HONOR, SHALL I MOVE TO ANOTHER

11:15AM 5      TOPIC?

11:15AM 6              THE COURT:  YES.  SURE.

11:15AM 7              MR. CLINE:  WE PROBABLY HAVE BEATEN THAT ONE PRETTY

11:15AM 8      CLOSE TO DEATH.

11:15AM 9          MR. BOSTIC MENTIONED -- AND THIS IS AN AREA WHERE I THINK

11:15AM 10     WE ACTUALLY MAY AGREE, AMONG OTHERS.  I MEAN, WE ACTUALLY HAVE

11:15AM 11     NARROWED THINGS QUITE A BIT.

11:16AM 12         BUT HE, I THINK, PROPOSES TO HAVE MR. PARLOFF TESTIFY TO

11:16AM 13     THINGS LIKE HE WAS GIVEN A TOUR OF THE FACILITIES.

11:16AM 14         I DON'T HAVE ANY CONCERN WITH THAT.  HE'S AN EYEWITNESS.

11:16AM 15     HE SAW WHAT HE SAW.  HE CAN TESTIFY TO THAT.

11:16AM 16         GOING A TINY BIT FARTHER, THERE ARE TIMES IN THESE, IN

11:16AM 17     THESE TAPES WHERE IT'S CLEAR THAT THEY ARE DISCUSSING SOMETHING

11:16AM 18     ELSE.  AND IN PARTICULAR, FOR EXAMPLE, THEY -- I THINK AT ONE

11:16AM 19     POINT THEY GO THROUGH A SLIDE DECK.  SO THE TAPE RECORDS THE

11:16AM 20     DISCUSSION, BUT THE DISCUSSION IS ABOUT SLIDES THAT ARE -- THAT

11:16AM 21     THEY'RE BOTH, AS FAR AS I CAN TELL, SITTING THERE LOOKING AT.

11:16AM 22         IT SEEMS TO ME THAT MR. PARLOFF COULD SAY, AS WE WERE

11:16AM 23     HAVING THIS CONVERSATION, WE WERE GOING THROUGH THE SLIDES.

11:16AM 24         IT MAY BE THAT THE GOVERNMENT WILL ACTUALLY HAVE THE

11:16AM 25     SLIDES IN HAND AND PUT THEM UP.

5653

11:16AM  1        AND HE'LL SAY, YEAH, THAT'S THE SLIDE THAT WE WERE TALKING

11:17AM  2   ABOUT.

11:17AM  3        THAT TYPE OF CONTEXT, WHICH, AGAIN, IS JUST OBJECTIVE

11:17AM  4   FACT, I DON'T HAVE A PROBLEM WITH.

11:17AM  5        SO THINGS THAT HE PERSONALLY WITNESSED, YOU KNOW, HE TOOK

11:17AM  6   A TOUR, HE SAW THIS, HE SAW THAT, AND FACTS LIKE THAT THAT ARE

11:17AM  7   REALLY ESSENTIAL TO UNDERSTAND WHAT THEY'RE TALKING ABOUT, YOU

11:17AM  8   KNOW, IN THE CONTEXT OF THE TAPE, I DON'T HAVE ANY PARTICULAR

11:17AM  9   PROBLEMS WITH THAT.

11:17AM 10        BEYOND THAT, AS I'VE SAID OVER AND OVER AND OVER, WE GET

11:17AM 11   INTO, WE GET INTO TROUBLE.

11:17AM 12        MR. BOSTIC PROPOSES TO ASK MR. PARLOFF WHETHER STATEMENTS

11:17AM 13   THAT MS. HOLMES MADE ON ONE DAY WERE CONSISTENT WITH STATEMENTS

11:17AM 14   SHE MADE ON ANOTHER DAY.

11:17AM 15        AGAIN, I JUST DON'T THINK THAT THAT'S SOMETHING THAT

11:17AM 16   MR. PARLOFF OUGHT TO BE TESTIFYING ABOUT.  IT IS A SUBJECTIVE

11:17AM 17   ASSESSMENT ON HIS PART.

11:17AM 18        IT, IT IS FINE FOR THE GOVERNMENT TO PLAY THE RELEVANT,

11:18AM 19   WHAT THEY CONSIDER TO BE THE RELEVANT SECTIONS, OBVIOUSLY

11:18AM 20   SUBJECT TO 106, AND IF THERE ARE INCONSISTENCIES, PRESUMABLY

11:18AM 21   THOSE WILL BE OBVIOUS TO THE JURY, AND IF NECESSARY, THE

11:18AM 22   GOVERNMENT CAN ARGUE THEM IN CLOSING.

11:18AM 23        BUT TO ALLOW MR. PARLOFF TO EDITORIALIZE ON WHETHER ONE

11:18AM 24   STATEMENT WAS CONSISTENT WITH ANOTHER IS JUST AN INVITATION TO

11:18AM 25   START TO GET INTO AREAS THAT WE DON'T NEED TO GET INTO.  IT'S

5654

| | | |
|---|---|---|
| 11:18AM | 1 | UNNECESSARY AND BOUND TO BE PROBLEMATIC. |
| 11:18AM | 2 | THE COURT:  WELL, CAN'T HE SAY -- AND WE TALKED |
| 11:18AM | 3 | ABOUT THIS PREVIOUSLY -- ON X DAY SHE SAID THIS, AND ON THEN |
| 11:18AM | 4 | THIS DAY, SHE SAID SOMETHING DIFFERENT? |
| 11:18AM | 5 | WHY CAN'T HE, WHY CAN'T HE TESTIFY ABOUT THAT TO THE SAME |
| 11:18AM | 6 | QUESTION? |
| 11:18AM | 7 | MR. BOSTIC:  WHAT THE GOVERNMENT CAN DO IS PLAY THE |
| 11:18AM | 8 | RELEVANT PORTIONS, AND ON -- AGAIN, I'M JUST TOTALLY MAKING |
| 11:19AM | 9 | THIS UP.  ON APRIL 7TH THEY HAVE AN INTERVIEW, AND MS. HOLMES |
| 11:19AM | 10 | SAYS WE CAN RUN A MILLION TESTS, YOU KNOW, FROM A SINGLE DROP |
| 11:19AM | 11 | OF BLOOD. |
| 11:19AM | 12 | AND ON JUNE 1ST THEY HAVE AN ANOTHER INTERVIEW, AND HE |
| 11:19AM | 13 | ASKS, HOW MANY TESTS CAN YOU RUN ON A SINGLE DROP OF BLOOD? |
| 11:19AM | 14 | AND SHE SAYS 50. |
| 11:19AM | 15 | WELL, THE GOVERNMENT CAN PUT THOSE STATEMENTS IN.  THE |
| 11:19AM | 16 | INCONSISTENCY WILL BE OBVIOUS.  IT'S NOT GOING TO NEED A GLOSS |
| 11:19AM | 17 | FROM MR. -- |
| 11:19AM | 18 | THE COURT:  WELL, NO.  ISN'T THE GLOSS, YOU ASKED |
| 11:19AM | 19 | HER THIS ON THIS DAY.  DIDN'T SAY SHE SOMETHING DIFFERENT IN |
| 11:19AM | 20 | JUNE? |
| 11:19AM | 21 | YES. |
| 11:19AM | 22 | WHAT DID SHE SAY IN JUNE? |
| 11:19AM | 23 | MR. CLINE:  AND WHERE I PART COMPANY A LITTLE BIT |
| 11:19AM | 24 | WITH THE COURT IS, DID SHE SAY SOMETHING DIFFERENT IN JUNE? |
| 11:19AM | 25 | THE COURT:  BUT SHE DID IN THE HYPOTHETICAL. |

5655

```
11:19AM    1              MR. CLINE:  BUT WHY NOT -- THE CLEANEST WAY TO
11:19AM    2    HANDLE THAT WOULD BE, DID SHE SAY -- DID YOU ASK HER THIS
11:19AM    3    QUESTION?
11:19AM    4         YES, I DID.
11:19AM    5         I'M GOING TO PLAY YOU WHAT SHE SAID ON APRIL 7TH.
11:19AM    6         HE PLAYS IT.
11:19AM    7         DID YOU ASK THE QUESTION AGAIN?
11:19AM    8         YES.
11:20AM    9         I'M GOING TO PLAY YOU WHAT SHE SAID.  HERE IT IS.
11:20AM   10         THE --
11:20AM   11              THE COURT:  AND THEN THE QUESTION IS, WAS THE SECOND
11:20AM   12    QUESTION AND ANSWER DIFFERENT THAN THE SECOND TIME?  IT'S THE
11:20AM   13    SAME THING.  IT'S SEMANTICS.  I UNDERSTAND THE DELIVERY MIGHT
11:20AM   14    BE A LITTLE DIFFERENT, BUT THOSE TYPES OF QUESTIONS I DON'T
11:20AM   15    HAVE A PROBLEM WITH.
11:20AM   16         DID SHE SAY SOMETHING DIFFERENT?
11:20AM   17         WELL, YES AND NO.
11:20AM   18         AND THEN YOU PLAY THE TAPE.  IS THAT WHAT SHE SAID?
11:20AM   19              MR. CLINE:  WHERE WE'RE GOING TO GET INTO DIFFICULTY
11:20AM   20    IS -- THE EXAMPLE I GAVE, THE DIFFERENCE WAS OBVIOUS.  IT MAKES
11:20AM   21    NO DIFFERENCE WHETHER HE SAYS THE ANSWERS WERE DIFFERENT.  THEY
11:20AM   22    WERE OBVIOUSLY DIFFERENT.
11:20AM   23         THERE WILL BE MUCH MORE SUBTLE EXAMPLES WHERE WHETHER WHAT
11:20AM   24    SHE SAID WAS INCONSISTENT IS VERY MUCH IN DOUBT.
11:20AM   25         AND ALLOWING HIM TO PUT HIS GLOSS ON IT IS GOING TO
```

5656

11:20AM   1    TROUBLESOME.

11:20AM   2         THE COURT:  SURE.  I UNDERSTAND THOSE WHERE YOU GET

11:20AM   3    TO, WELL, IT MIGHT BE -- YOU KNOW, IT MIGHT BE A SHADE OF A

11:20AM   4    COLOR OR SOMETHING LIKE THAT.

11:20AM   5         BUT IF IT'S A STATEMENT THAT IS COMPLETELY DIFFERENT, THEN

11:20AM   6    THE QUESTION, DOESN'T IT HAVE TO BE, DID SHE SAY DIFFERENT?

11:21AM   7    THE QUESTION COULD BE, WAS SHE CONSISTENT IN HER RESPONSE IN

11:21AM   8    THE SECOND QUESTION?

11:21AM   9         YES, NO.

11:21AM   10        YOU KNOW, WE'RE GOING TO HAVE A -- I DON'T WANT TO EDIT

11:21AM   11   THE WHOLE TESTIMONY, AND I DON'T THINK WE HAVE TO.  I THINK

11:21AM   12   THERE'S SOME OF THESE QUESTIONS I UNDERSTAND AND IT'S GOOD THAT

11:21AM   13   WE'RE HAVING THE CONVERSATION.  IT GIVES ME A HEADS UP ON IT.

11:21AM   14        MR. CLINE:  AND IT MAY BE ON ITEMS LIKE THAT,

11:21AM   15   YOUR HONOR, WE MAY HAVE TO OBJECT SORT OF ON THE FLY.

11:21AM   16        THE COURT:  RIGHT.

11:21AM   17        MR. CLINE:  BECAUSE THERE WILL BE GRADATIONS.

11:21AM   18        THE COURT:  RIGHT.

11:21AM   19        MR. CLINE:  BUT I DEFINITELY WANT TO FLAG THE ISSUE

11:21AM   20   AND LET YOU KNOW MY CONCERN ABOUT IT.

11:21AM   21        THE COURT:  NO.  I APPRECIATE THAT.

11:21AM   22        MR. CLINE:  ON THAT TYPE OF QUESTION, IF I COULD

11:21AM   23   JUST BRIEFLY?

11:21AM   24        THE COURT:  YES, PLEASE.

11:21AM   25        MR. CLINE:  SO I THINK THIS IS THE THEME.  IF THE

| 11:21AM | 1 | DEFENSE COULD RESTRICT THIS WITNESS'S ROLE TO SIMPLY |

11:21AM 1    DEFENSE COULD RESTRICT THIS WITNESS'S ROLE TO SIMPLY

11:21AM 2    AUTHENTICATING THE RECORDINGS AND THEN LEAVING THE STAND, THAT

11:21AM 3    WOULD BE A GREAT OUTCOME FOR THEM.

11:21AM 4        THE LAW DOESN'T REQUIRE SO NARROW A ROLE FOR HIM.

11:21AM 5        HE'S ALLOWED TO TESTIFY ABOUT THE SUBSTANCE OF

11:22AM 6    CONVERSATIONS THAT HE HAD AND THE CONTENT OF THOSE

11:22AM 7    COMMUNICATIONS REGARDLESS OF WHETHER THE AUDIO IS BEING PLAYED.

11:22AM 8        WHAT I HEARD MR. CLINE SAY IS THAT IF THERE'S AUDIO OF A

11:22AM 9    CONVERSATION, THE GOVERNMENT NEEDS TO DEFAULT TO THE AUDIO AND

11:22AM 10   CAN'T RELY ON THE WITNESS TO TALK ABOUT THE CONTENT.

11:22AM 11       BUT THAT'S NOT TRUE.  UNDER RULE 102, THE REQUIREMENT OF

11:22AM 12   THE ORIGINAL, IT'S ONLY IF WE WERE TRYING TO PROVE THE CONTENT

11:22AM 13   OF THE RECORDING THROUGH A WITNESS'S TESTIMONY THAT WE WOULD

11:22AM 14   RUN INTO PROBLEMS WITH THAT RULE.

11:22AM 15       DESPITE THE EXISTENCE OF A RECORDING, THE WITNESS CAN

11:22AM 16   TESTIFY ABOUT THE SUBSTANCE OF THE CONVERSATION WITHOUT

11:22AM 17   INTRODUCING A SPECIFIC RECORDING.

11:22AM 18       IN SOME OF THESE INSTANCES, BY THE WAY, MAYBE MOST OF

11:22AM 19   THEM, THE EXPECTED ANSWER WOULD BE, YOU KNOW, TO THE QUESTION,

11:22AM 20   DID MS. HOLMES ADDRESS THIS TOPIC ON OTHER OCCASIONS?

11:22AM 21       YES, AND SHE SAID SOMETHING SIMILAR.

11:22AM 22       AND THE POINT THERE IS TO SHOW THAT THIS WAS A RECURRING

11:22AM 23   TOPIC IN THEIR CONVERSATION.

11:22AM 24            THE COURT:  SURE.

11:22AM 25            MR. BOSTIC:  AND THE FACT THAT MS. HOLMES SAID

5658

11:23AM  1    CONSISTENTLY MISLEADING THINGS OVER TIME IS RELEVANT TO HER

11:23AM  2    ABSENCE OF MISTAKE, SO THAT'S WHY IT'S IMPORTANT FOR THE JURY

11:23AM  3    TO UNDERSTAND THAT.

11:23AM  4        THE GOVERNMENT SHOULD NOT HAVE TO PLAY FIVE CLIPS IN ORDER

11:23AM  5    TO ACCOMPLISH THAT.  THAT'S JUST A WASTE OF TIME AND THE RULES

11:23AM  6    DON'T REQUIRE IT.

11:23AM  7        AND JUST ON THE COMMENTS THAT HAVE BEEN MADE ABOUT

11:23AM  8    MR. PARLOFF'S BIAS, I SHOULD SAY THAT I DON'T WANT THE COURT TO

11:23AM  9    BE IMAGINING THIS WITNESS AS SOMEONE WHO HAS A BONE TO PICK

11:23AM  10   WITH THE DEFENDANT AND WHO IS GOING TO TAKE EVERY OPPORTUNITY

11:23AM  11   TO SAY SOMETHING PEJORATIVE AS MR. CLINE FEARS.  THAT'S NOT

11:23AM  12   WHAT I EXPECT FROM THIS WITNESS.

11:23AM  13       I THINK THE REPORTS THAT HAVE BEEN PROVIDED TO THE DEFENSE

11:23AM  14   SHOW THAT, IF ANYTHING, THIS WITNESS, FOR A TIME, WISHED THAT

11:23AM  15   HE HAD ASKED BETTER QUESTIONS OF THE DEFENDANT AND THAT HE HAD

11:23AM  16   DONE MORE TO ASK DIRECT QUESTIONS GETTING AT THE TRUTH OF WHAT

11:23AM  17   WAS HAPPENING, AND FOR A TIME HE BLAMED HIMSELF.

11:23AM  18       I DON'T THINK HE DOES ANY LONGER, AND I THINK THE

11:23AM  19   RECORDINGS SHOW THAT HE DID, IN FACT, ASK THE DIRECT QUESTIONS

11:23AM  20   THAT HE SHOULD HAVE.

11:23AM  21       BUT I DON'T EXPECT THIS WITNESS TO BE LOOKING FOR AN

11:24AM  22   OPPORTUNITY TO CRITICIZE OR SAY BAD THINGS ABOUT THE DEFENDANT.

11:24AM  23       SO TO THE EXTENT THAT THAT'S THE DEFENSE'S CONCERN OR THE

11:24AM  24   COURT'S, I THINK IT'S OVERBLOWN.

11:24AM  25           THE COURT:  OKAY.  THANK YOU.

5659

11:24AM  1          MR. CLINE:  I THINK WE HAVE COVERED THE TOPICS THAT

11:24AM  2     MR. BOSTIC WENT OVER, AND I THINK THE COURT UNDERSTANDS OUR

11:24AM  3     CONCERN AND SORT OF THE FRAMEWORK THAT WE'RE OPERATING IN.

11:24AM  4          THE OTHER ISSUE OUT THERE, OF COURSE, IS THE SUBPOENA,

11:24AM  5     WHICH IS, I THINK, PRINCIPALLY WHY MR. KORZENIK IS ON THE LINE.

11:24AM  6          I GUESS WHAT I WOULD SUGGEST ON THAT IS THAT WE WAIT FOR

11:24AM  7     THE COURT'S RULING ON THE MOTION IN LIMINE, AND IT MAY BE THAT

11:24AM  8     THE SUBPOENA ISSUE WILL LARGELY VANISH, AND THAT WOULD BE

11:24AM  9     BECAUSE THE RELEVANCE OF THESE OTHER STATEMENTS BECOME SO

11:24AM  10    ATTENUATED THAT YOUR HONOR CONCLUDES, AND I MIGHT EVEN

11:25AM  11    CONCLUDE, THAT THE GAME IS NOT WORTH THE CANDLE AND IT'S

11:25AM  12    PARTICULARLY BECAUSE MR. PARLOFF OBVIOUSLY FEELS VERY STRONGLY

11:25AM  13    ABOUT THE PRIVILEGE ISSUE.

11:25AM  14          SO RATHER THAN REPEAT ALL OF THE ARGUMENTS WE'VE JUST BEEN

11:25AM  15    MAKING ABOUT THE SUBPOENA, WHAT I WOULD SUGGEST IS THAT WE

11:25AM  16    AWAIT THE COURT'S RULING ON THE MOTION IN LIMINE AND THEN SEE

11:25AM  17    IF THERE'S STILL ANYTHING TO DISCUSS ON THE SUBPOENA.  THERE

11:25AM  18    MAY BE, THERE MAY NOT BE.  BUT IT WILL CERTAINLY INFORM OUR

11:25AM  19    DISCUSSION ON THAT.

11:25AM  20          THE COURT:  THANK YOU FOR THAT.

11:25AM  21          THE ONE THING, AND I TAKE IT FROM BOTH OF YOU, IS THAT

11:25AM  22    NEITHER SIDE WANTS TO GET TO ANY THIRD PARTY CONVERSATIONS SUCH

11:25AM  23    THAT WE DEAL WITH THE SUBPOENA AND ALL OF THOSE OTHER ISSUES,

11:25AM  24    AND LET ME JOIN THAT CAMP AS WELL.  I DON'T THINK IT'S

11:25AM  25    NECESSARY.

5660

11:25AM 1          MR. CLINE:  WE WOULD ABSOLUTELY PREFER NOT TO.  BUT,

11:25AM 2    AGAIN, IT'S GOING TO DEPEND ON THE SCOPE OF THE DIRECT.  I

11:25AM 3    MEAN --

11:25AM 4          THE COURT:  NO.  I UNDERSTAND THAT.  IT'S A LOOMING

11:25AM 5    ISSUE THAT LOOMS OVER ALL OF US --

11:25AM 6          MR. CLINE:  YES.

11:25AM 7          THE COURT:  -- IN THAT REGARD, BUT I'M GLAD WE'RE

11:26AM 8    ALL OF COMMON PURPOSE HERE TO AVOID IT.

11:26AM 9          MR. CLINE:  YES.

11:26AM 10         THE COURT:  AND I WOULD ENCOURAGE BOTH SIDES TO DO

11:26AM 11   THAT SUCH THAT WE DON'T IMPLICATE THAT AND CREATE ANOTHER

11:26AM 12   OPPORTUNITY TO TAKE TIME AWAY ON AN IMPORTANT ISSUE, BUT TAKE

11:26AM 13   TIME AWAY FROM THE EVIDENCE THAT IS BEING PUT BEFORE THE JURY.

11:26AM 14    WE'RE GETTING CLOSE TO THE HOLIDAY SEASON HERE AND I KNOW

11:26AM 15   THESE JURORS ARE PROBABLY GETTING A LITTLE ANXIOUS ABOUT

11:26AM 16   SCHEDULING, AND I'M ANXIOUS ABOUT SCHEDULING AS WELL.

11:26AM 17    I'M CONCERNED ABOUT OUR SHORT WEEK TODAY AND HOW MUCH TIME

11:26AM 18   WE'RE GOING TO TAKE IN TOMORROW MORNING'S CONVERSATION ABOUT

11:26AM 19   WHAT THAT ENTAILS.

11:26AM 20    SO LET ME STATE THAT -- LET ME JUST INDICATE -- ANYTHING

11:26AM 21   FURTHER BEFORE WE --

11:26AM 22         MR. BOSTIC:  NO, YOUR HONOR, UNLESS THE COURT HAS

11:26AM 23   ANY QUESTIONS.

11:26AM 24         MR. CLINE:  NO, YOUR HONOR.

11:26AM 25         THE COURT:  I DON'T HAVE ANY REAL QUESTIONS.  YOU'VE

5661

| 11:26AM | 1 | BEEN HELPFUL IN ANSWERING THE QUESTIONS THAT I PUT TO YOU |
|---|---|---|
| 11:26AM | 2 | TODAY. |
| 11:26AM | 3 | I WAS CONCERNED ABOUT THE DEFINITION OF WHAT CONTEXT MEANT |
| 11:26AM | 4 | AND WHERE THAT WAS GOING TO GO.  I THINK WE TALKED ABOUT |
| 11:27AM | 5 | CONNECTING THE STATEMENTS AND THOSE TYPES OF THINGS, AS WELL AS |
| 11:27AM | 6 | THE WITNESS'S UNDERSTANDING OF HER STATEMENTS. |
| 11:27AM | 7 | I THINK I UNDERSTAND, MR. CLINE, YOUR POSITION. |
| 11:27AM | 8 | AND, MR. BOSTIC, I DO HAVE -- I THINK I RAISED THESE LAST |
| 11:27AM | 9 | WEEK -- I DO HAVE SOME CONCERNS ABOUT THE CONTEXT AND WHERE |
| 11:27AM | 10 | DOES THAT GO?  WHAT DOES THAT MEAN? |
| 11:27AM | 11 | I'M GOING TO -- I DO THINK THAT SOME OF THE QUESTIONS, |
| 11:27AM | 12 | THAT IF YOU ASK THEM IN THE WAY THAT YOU SUGGESTED IN A |
| 11:27AM | 13 | WHOLESALE WAY MIGHT BE OBJECTIONABLE UNDER 403 AND OTHERWISE. |
| 11:27AM | 14 | IF SHE TOLD YOU X, WOULD YOU HAVE WRITTEN Y? |
| 11:27AM | 15 | NOW, THERE'S A WAY TO GET THAT INFORMATION IN, I THINK, OR |
| 11:27AM | 16 | TO PROBE THAT AREA.  BUT IT MAY CALL FOR SPECULATION IN THAT |
| 11:27AM | 17 | SPECULATING IF SHE HAD SAID SOMETHING, AND THEN SPECULATING, |
| 11:27AM | 18 | WOULD HE HAVE WRITTEN IT? |
| 11:27AM | 19 | WE'VE TALKED A LITTLE BIT ABOUT THE PARAMETERS OF THAT. |
| 11:28AM | 20 | IF HE KNEW INFORMATION -- AND AGAIN, THE TIME STAMP AREA THAT |
| 11:28AM | 21 | I'M PAUSING BECAUSE I DON'T WANT TO GET INTO WHAT HE WROTE |
| 11:28AM | 22 | SUBSEQUENTLY AND SO WE'RE GOING TO HAVE TO AVOID THAT. |
| 11:28AM | 23 | I DO THINK THAT THE WITNESS COULD TESTIFY ABOUT HIS |
| 11:28AM | 24 | OBSERVATIONS OF HER, AND I USE THE WORD "DEMEANOR," BUT HE CAN |
| 11:28AM | 25 | SAY, WAS IT A FRIENDLY CONVERSATION?  WAS SHE COOPERATIVE?  DID |

5662

11:28AM 1    SHE ANSWER?  DID SHE SEEM TO BE EAGER TO GIVE YOU INFORMATION?

11:28AM 2    IS THAT REPRESENTED IN THE FACT THAT YOU GOT A TOUR?  AND HOW

11:28AM 3    DID THE TOUR GO?

11:28AM 4        THOSE TYPE OF BACKGROUND THAT WOULD FRAME THE CONTEXT,

11:28AM 5    I'LL USE THAT WORD, OF THE RELATIONSHIP DURING THE INTERVIEW, I

11:28AM 6    THINK THAT'S FAIR GAME.  I THINK HE -- AND THEN I THINK THIS

11:28AM 7    WITNESS CAN TESTIFY ABOUT THAT.

11:28AM 8        WAS SHE, YOU KNOW, WAS SHE VOLUNTARILY GIVING YOU

11:28AM 9    INFORMATION?  DID SHE PROVIDE IT?  WAS SHE HESITANT?  WAS SHE

11:28AM 10   RETICENT ABOUT ANYTHING?

11:29AM 11       I THINK THAT'S FAIR GAME AND HE CAN OFFER HIS OPINIONS

11:29AM 12   ABOUT THAT.  HE'S A JOURNALIST, AND I THINK PART OF HIS

11:29AM 13   EXPERIENCE IS -- YOU KNOW, HE'S LOOKING AT THE SUBJECT MUCH

11:29AM 14   LIKE AN ARTIST LOOKS AT A MODEL WHEN SHE PAINTS.  I THINK IT'S

11:29AM 15   THE SAME TYPE OF THING.

11:29AM 16       MR. CLINE, YOU WANTED TO COMMENT?

11:29AM 17           MR. CLINE:  I WAS JUST GOING TO SAY, I SUSPECT THAT

11:29AM 18   WE ARE ALL LARGELY IN AGREEMENT ON THAT TOPIC, AND IT'S

11:29AM 19   PROBABLY AN AREA WHERE QUESTION-BY-QUESTION OBJECTIONS WILL BE

11:29AM 20   NECESSARY.

11:29AM 21           THE COURT:  RIGHT, I THINK SO.

11:29AM 22       BUT IN GENERAL, I THINK -- I JUST WANT TO LET YOU KNOW, IN

11:29AM 23   GENERAL, I THINK HE CAN TESTIFY ABOUT THAT.

11:29AM 24       AND YOU'RE GOING TO STAY AWAY FROM -- AS YOUR PLEADINGS

11:29AM 25   SUGGEST, HE'S NOT GOING TO BE ASKED, DID YOU FEEL SHE WAS

5663

11:29AM  1    LYING?  GIVE US YOUR OPINION OF HER VERACITY, ANYTHING OF THOSE

11:29AM  2    THINGS.

11:29AM  3         AS YOU'VE SAID, MR. BOSTIC, THOSE ARE NOT RELEVANT FOR HIS

11:29AM  4    TESTIMONY.

11:29AM  5         HIS UNDERSTANDING OF HER STATEMENTS, HE MAY BE ABLE TO

11:30AM  6    TESTIFY ABOUT THAT.  HE MIGHT BE ABLE TO, DEPENDING ON THE

11:30AM  7    QUESTIONS.

11:30AM  8         HE CAN'T SAY, WELL, DO YOU THINK SHE MEANT X?  I'M NOT

11:30AM  9    GOING TO ALLOW THAT TYPE OF QUESTION.

11:30AM 10         BUT SHE ANSWERED IN THIS WAY, OR WHEN SHE SAID THIS, IS

11:30AM 11    THAT WHAT FORMED YOUR OPINION SUCH THAT IT APPEARED IN YOUR

11:30AM 12    ARTICLE?

11:30AM 13         THOSE TYPES OF QUESTIONS, I THINK, ARE -- AGAIN, WE MAY

11:30AM 14    HAVE TO GO QUESTION BY QUESTION ON THIS, BUT I JUST WANTED TO

11:30AM 15    INFORM YOU ABOUT MY THINKING ABOUT THAT.

11:30AM 16         I THINK HE CAN TESTIFY IN A LIMITED DEGREE ABOUT HER

11:30AM 17    RESPONSES, HIS UNDERSTANDING SUCH THAT IT FORMED THE BASIS FOR

11:30AM 18    HIS ARTICLE.

11:30AM 19         NOW, GOING FURTHER LIKE YOU TALKED ABOUT, MR. CLINE, I

11:30AM 20    AGREE WITH YOU, I DON'T THINK HE CAN WHOLESALE GO FORWARD AND

11:30AM 21    SAY, WELL, I THINK SHE MEANT THIS AND THAT'S WHY I WROTE Y, AS

11:30AM 22    OPPOSED TO, SHE TOLD ME THIS AND THIS IS WHAT I WROTE.

11:31AM 23         AND MAYBE THERE'S NOT A GREAT DISTINCTION BETWEEN THOSE

11:31AM 24    TWO THINGS, BUT IT DEPENDS, AGAIN, ON THE QUESTION AND THE

11:31AM 25    ANSWER.

11:31AM 1        BUT I DO THINK THAT HE'S -- THERE'S SOME -- HE'S A

11:31AM 2    JOURNALIST.  HE INTERVIEWED.  I'M SURE MR. BOSTIC WILL BE

11:31AM 3    INFORMED ABOUT HIS BACKGROUND AS A JOURNALIST, HOW MANY

11:31AM 4    ARTICLES HE'S WRITTEN, HIS EXPERIENCE, ET CETERA.

11:31AM 5        AND HE MAY EVEN PROBE AS TO, WHAT DO YOU NORMALLY DO WHEN

11:31AM 6    YOU DO AN INTERVIEW LIKE THIS?  WHAT IS IMPORTANT TO WRITING A

11:31AM 7    STORY?

11:31AM 8        HE'LL TALK ABOUT JOURNALISTIC INTEGRITY PERHAPS.  HE'LL

11:31AM 9    TALK ABOUT PERHAPS -- WE KNOW THAT THERE ARE JOURNALISTS, A

11:31AM 10   STANDARD OF ETHICS THAT JOURNALISTS HAVE TO FOLLOW.

11:31AM 11       I DON'T KNOW.  BUT ALL OF THOSE QUESTIONS, I KNOW THEY

11:31AM 12   EXIST, BUT I DON'T KNOW IF HE REFERENCED THEM FOR THIS, BUT --

11:31AM 13   SO THOSE ARE, I THINK, QUESTIONS THAT ARE OPEN TO INQUIRY.

11:31AM 14       BUT DRILLING DOWN ON TO SOME OF THESE OTHERS, MR. BOSTIC,

11:32AM 15   I THINK I DO STILL HAVE SOME CONCERNS ABOUT GOING TOO FAR WITH

11:32AM 16   THE CONTEXT AS IT'S CALLED AND THESE OTHER QUESTIONS ABOUT

11:32AM 17   SPECULATION.

11:32AM 18       I'M TELLING YOU THIS TO PERHAPS ASK YOU TO FRAME THOSE

11:32AM 19   QUESTIONS AND GIVE SOME THOUGHT TO THOSE QUESTIONS IN A WAY

11:32AM 20   THAT WOULD AVOID THAT.

11:32AM 21       BECAUSE, MR. CLINE, YOU KNOW, YOU OBVIOUSLY WILL BRING TO

11:32AM 22   MY ATTENTION ANY OBJECTION THAT YOU THINK MIGHT EXIST.

11:32AM 23            MR. CLINE:  I WILL CERTAINLY DO THAT.

11:32AM 24       AGAIN, FOR THE MOMENT I THINK WE'RE PUTTING THE SUBPOENA

11:32AM 25   ASIDE.

| | | |
|---|---|---|
| 11:32AM | 1 | THE COURT:  YES, I THINK SO. |
| 11:32AM | 2 | MR. CLINE:  AND I'M CONTENT TO DO THAT. |
| 11:32AM | 3 | THE COURT:  I, I -- |
| 11:32AM | 4 | MR. CLINE:  WITH THE UNDERSTANDING THAT IF THE |
| 11:32AM | 5 | TESTIMONY STRAYS, I MAY ASK AT A BREAK IF WE CAN ENFORCE IT. |
| 11:32AM | 6 | THE COURT:  SURE. |
| 11:32AM | 7 | MR. CLINE:  I WANT TO EMPHASIZE, I HOPE THAT WE |
| 11:32AM | 8 | DON'T GET TO THAT POINT. |
| 11:33AM | 9 | THE COURT:  WELL, I'D LIKE TO KEEP THE HERD ON THE |
| 11:33AM | 10 | PATH AND NOT HAVE ANY STRAYS HERE. |
| 11:33AM | 11 | MR. CLINE:  YES. |
| 11:33AM | 12 | THE COURT:  SO WE'RE IN COMMON PURPOSE FOR THAT. |
| 11:33AM | 13 | SURE. |
| 11:33AM | 14 | MR. CLINE:  BUT I THINK BECAUSE MR. BOSTIC CONTROLS |
| 11:33AM | 15 | THE DIRECT HERE, I THINK IT'S GOING TO BE LARGELY UP TO HIM. |
| 11:33AM | 16 | THE COURT:  RIGHT. |
| 11:33AM | 17 | MR. CLINE:  AND FROM TALKING WITH HIM, I THINK WE |
| 11:33AM | 18 | HAVE A PRETTY GOOD UNDERSTANDING OF EACH OTHER'S POSITION. |
| 11:33AM | 19 | THE COURT:  RIGHT. |
| 11:33AM | 20 | MR. BOSTIC:  I AGREE, YOUR HONOR. |
| 11:33AM | 21 | THE COURT'S COMMENTS HAVE BEEN HELPFUL.  THE GOVERNMENT |
| 11:33AM | 22 | WILL DO ITS BEST TO CRAFT ITS QUESTIONS TO ADHERE TO THE |
| 11:33AM | 23 | GUIDANCE FROM THE COURT. |
| 11:33AM | 24 | THE COURT:  AND, YOU KNOW, NEITHER PARTY SHOULD FEEL |
| 11:33AM | 25 | SHY ABOUT RAISING OBJECTIONS, AND THEY MIGHT BE 403 OR OTHER, |

| | | |
|---|---|---|
| 11:33AM | 1 | BUT LET ME SAY I'M COGNIZANT OF THE 403 ISSUE THAT OVERLAPS ALL |
| 11:33AM | 2 | OF THIS POTENTIAL TESTIMONY. |
| 11:33AM | 3 | MR. CLINE:  YES. |
| 11:33AM | 4 | THE COURT:  AND, MR. CLINE, I KNOW YOU'RE GOING TO |
| 11:33AM | 5 | AVOID GETTING INTO THE SECOND ARTICLE BECAUSE WE DON'T WANT TO |
| 11:33AM | 6 | OPEN THAT DOOR. |
| 11:33AM | 7 | MR. CLINE:  WE DO NOT. |
| 11:33AM | 8 | THE COURT:  AND LET'S SEE.  WHO WAS ON THE LINE |
| 11:34AM | 9 | AGAIN?  IS THAT -- |
| 11:34AM | 10 | MR. KORZENIK:  YES, DAVID KORZENIK. |
| 11:34AM | 11 | THE COURT:  YES.  I HOPE THIS CONVERSATION HAS BEEN |
| 11:34AM | 12 | OF HELPFUL TO YOU.  WHAT I'M GOING TO DO IS I'M NOT GOING TO |
| 11:34AM | 13 | DISTURB JUDGE COUSINS'S RULING AT THIS TIME, AND WE'LL KEEP THE |
| 11:34AM | 14 | OBJECTIONS BEFORE THIS COURT UNDER SUBMISSION PENDING THE |
| 11:34AM | 15 | TESTIMONY OF THIS WITNESS AND WHETHER OR NOT WE NEED TO REVISIT |
| 11:34AM | 16 | YOUR MOTION AND WHETHER OR NOT THE COURT HAS TO RULE ON THE |
| 11:34AM | 17 | OBJECTIONS WILL BE DEPENDENT ON THE TESTIMONY OF MR. PARLOFF. |
| 11:34AM | 18 | BUT I THINK THAT OUR CONVERSATION THIS MORNING ABOUT THE |
| 11:34AM | 19 | PARAMETERS OF HIS CONVERSATION CERTAINLY HELP ME TO INFORM ME |
| 11:34AM | 20 | AS TO WHAT WE CAN EXPECT. |
| 11:34AM | 21 | AND I HOPE IT'S INFORMED YOU AS TO HOW YOUR DIRECT AND |
| 11:34AM | 22 | CROSS SHOULD BE CONDUCTED. |
| 11:34AM | 23 | MR. KORZENIK:  YES, YOUR HONOR. |
| 11:34AM | 24 | I'LL JUST MAKE THIS BRIEF COMMENT.  I THINK IT LOOKS TO ME |
| 11:34AM | 25 | AS IF THE PARTIES HAVE KIND OF SOME SENSE OF THE BOUNDARIES AND |

11:35AM  1    WHAT THEY NEED TO DO.  AND I'M NOT GOING TO WEIGH IN ON

11:35AM  2    RELEVANCE, THAT'S NOT MY BUSINESS.

11:35AM  3         BUT I DO UNDERSTAND, TOO, WHY THE -- BUT I'M SYMPATHETIC,

11:35AM  4    I WILL SAY, WHY MR. CLINE WOULD LIKE TO KEEP THE RULE 17 AND

11:35AM  5    REPORTER'S PRIVILEGE ISSUE THE ON THE GRIDDLE.

11:35AM  6         BUT I WOULD JUST REMIND THE COURT THAT MAGISTRATE JUDGE

11:35AM  7    COUSINS'S RULING WAS ONE THAT HE DESCRIBED AS "NOT CLOSE,"

11:35AM  8    THAT HE SAID THAT THEY HAD NOT ESTABLISHED THE RELEVANCE, THE

11:35AM  9    ADMISSIBILITY, MATERIALITY, NEED OR SPECIFICITY FOR WHAT THEY

11:35AM  10   ARE SEEKING, AND HE SAID THIS WAS REALLY MORE GUESSING, A

11:35AM  11   FISHING EXPEDITION.

11:35AM  12        AND I MUST SAY THAT I THINK WHAT MR. CLINE HAS BEEN

11:36AM  13   BUILDING HIS ARGUMENTS ON BEFORE MAGISTRATE JUDGE COUSINS, AND

11:36AM  14   EVEN TODAY AS WELL, IS LARGELY SPECULATION AND FANTASY ABOUT

11:36AM  15   WHAT THOSE OTHER WITNESSES MIGHT HAVE SAID WHEN THOSE WITNESSES

11:36AM  16   HAVE ALL BEEN AT HIS COMMAND BY SUBPOENA, WHEN MOST OF THEM

11:36AM  17   HAVE BEEN WITNESSES IN THE TRIAL AND WILL BE.  AND SO THAT

11:36AM  18   THERE IS STILL, WHATEVER HE MIGHT IMAGINE, MIGHT BE THERE, HE

11:36AM  19   SHOULD BE CAREFUL BECAUSE IT'S MORE LIKELY TO BE HARMFUL TO

11:36AM  20   HIM.  WE DID NOT GIVE THESE THINGS, OTHER INTERVIEWS TO ANYONE.

11:36AM  21   WE WANTED TO PRESERVE OUR PRIVILEGE AND OUR COMMITMENTS OF

11:36AM  22   CONFIDENTIALITY TO AT LEAST FIVE OF THEM.

11:36AM  23        BUT A LOT OF WHAT I'M HEARING FROM MR. CLINE IS BASED

11:36AM  24   LARGELY ON HIGHLY SPECULATIVE IMAGININGS OF WHAT THIS MATERIAL

11:37AM  25   MIGHT INCLUDE, AND I WOULD SAY THAT IF HE BREAKS OUR PRIVILEGE,

11:37AM 1    HE MAY HURT HIMSELF MORE THAN THIS PROSECUTOR.

11:37AM 2         MR. CLINE:  MR. KORZENIK HAS BEEN KIND ENOUGH TO

11:37AM 3    WARN ME OF THAT POSSIBILITY EVER SINCE WE'VE BEEN TALKING, AND

11:37AM 4    I'M PROCEEDING WITH FULL AWARENESS.

11:37AM 5         THE COURT:  ALL RIGHT.  THANK YOU, COUNSEL.  I

11:37AM 6    APPRECIATE THAT.

11:37AM 7         MR. KORZENIK:  THE MAIN POINT THAT I MAKE IS THAT

11:37AM 8    THIS WAS NOT A CLOSE CALL ON THE ISSUE OF RULE 17, AND SINCE

11:37AM 9    THE FACTORS OF RULE 17 OVERLAP SUBSTANTIALLY WITH THE FACTORS

11:37AM 10   TO BE CONSIDERED ON THE REPORTER'S PRIVILEGE, I DON'T SEE IT AS

11:37AM 11   BEING A CLOSE CALL HERE.

11:37AM 12        THE COURT:  WELL, IT, IT -- I APPRECIATE THAT

11:37AM 13   OBSERVATION.  AND, OF COURSE, I RESPECT JUDGE COUSINS AND HIS

11:37AM 14   OBSERVATION.

11:37AM 15     OF COURSE, THE PLAYING FIELD MAY CHANGE DEPENDENT ON WHAT

11:37AM 16   TESTIMONIAL EVIDENCE COMES IN THAT MIGHT HAVE SOME RELATIONSHIP

11:38AM 17   WITH JUDGE COUSIN'S ORDER AND THE SUBPOENA, THAT COULD CHANGE.

11:38AM 18     SO, AGAIN, JUDGE COUSINS WAS -- HIS WISDOM IS TIME STAMPED

11:38AM 19   WITH THE MOTION AND THE TIME AND THE FACTS THAT IT PRESENTED TO

11:38AM 20   HIM.  I'M NOT CERTAIN THAT THINGS WILL CHANGE.  I THINK OUR

11:38AM 21   CONVERSATION THIS MORNING, WITH ALL COUNSEL, HAS INFORMED US

11:38AM 22   ALL THAT WE HOPE THINGS DON'T CHANGE, AND THAT THE MATERIAL

11:38AM 23   THAT THE GOVERNMENT SEEKS TO INTRODUCE IN ITS CASE-IN-CHIEF CAN

11:38AM 24   BE ACHIEVED, AND THAT EVIDENCE CAN BE ACHIEVED WITHOUT

11:38AM 25   VIOLATION OF ANY OF THE SPIRIT OF JUDGE COUSINS'S ORDER.

11:38AM 1        AND I THINK MR. CLINE RESPECTS THAT, TOO.  HE'S BEEN

11:38AM 2    WARNED BY YOU NOW, AND MAYBE WARNING IS TOO HARSH A WORD, BUT

11:38AM 3    YOU'VE INFORMED HIM A COUPLE OF TIMES OF WHAT IS IN THE

11:38AM 4    PANDORA'S BOX AND I THINK HE WANTS TO STAY AWAY FROM IT.

11:38AM 5        SO FAIR ENOUGH.  ALL RIGHT.

11:38AM 6        MR. BOSTIC:  YOUR HONOR, JUST TO MAKE CERTAIN THAT I

11:38AM 7    UNDERSTAND WHERE THE LINE IS THERE, AND MR. CLINE AND I MAY

11:39AM 8    DISAGREE.

11:39AM 9        BUT, FOR EXAMPLE, IF THE GOVERNMENT ASKS A QUESTION, YOU

11:39AM 10   KNOW, MS. HOLMES TOLD YOU X ON THIS DATE, I'LL DIRECT YOUR

11:39AM 11   ATTENTION TO THIS LINE IN THE ARTICLE, IS THAT CONSISTENT WITH

11:39AM 12   WHAT MS. HOLMES TOLD YOU ON THAT DATE AND AT OTHER TIMES DURING

11:39AM 13   THE CONVERSATION?

11:39AM 14       MY POSITION WOULD BE THAT THAT'S IN LINE WITH THE COURT'S

11:39AM 15   GUIDANCE TODAY.

11:39AM 16       I ALSO WOULD NOT THINK THAT THAT WOULD OPEN THE DOOR TO

11:39AM 17   TESTIMONY OR ADDITIONAL DISCOVERY ABOUT THIRD PARTY STATEMENTS,

11:39AM 18   BUT I JUST WANT TO MAKE SURE THAT I'M UNDERSTANDING.

11:39AM 19       THE COURT:  CONCEPTUALLY, I DON'T HAVE A PROBLEM

11:39AM 20   WITH THAT PHRASING AND THAT QUESTION.  I THINK THAT'S ENTIRELY

11:39AM 21   APPROPRIATE.

11:39AM 22       MR. CLINE:  PHRASED EXACTLY THAT WAY, IT MAY AVOID

11:39AM 23   THE PROBLEMS THAT WE'RE TALKING ABOUT, BUT I'M JUST TELLING

11:39AM 24   MOSTLY MR. BOSTIC TO REALLY BE CAREFUL BECAUSE IT DOESN'T TAKE

11:39AM 25   MUCH OF A TWEAK TO THAT QUESTION AND WE'RE RIGHT INTO THE

5670

| | | |
|---|---|---|
| 11:39AM | 1 | PROBLEM THAT WE'RE ALL TRYING TO AVOID. |
| 11:40AM | 2 | THE COURT:  AND I THINK -- I APPRECIATE THAT, |
| 11:40AM | 3 | MR. CLINE.  AND I THINK YOU WANT TO AVOID TWEAKS.  AND YOU'RE |
| 11:40AM | 4 | IN CONTROL OF THE TWEAKING, AND SO THE QUESTIONS THAT YOU ASK, |
| 11:40AM | 5 | I KNOW WE TALKED ABOUT THIS LAST WEEK, YOU DON'T WANT TO |
| 11:40AM | 6 | INTENTIONALLY GO SOMEWHERE AND OPEN A DOOR. |
| 11:40AM | 7 | MR. CLINE:  YOU WILL FIND ME ON CROSS CAREFULLY |
| 11:40AM | 8 | TIPTOEING. |
| 11:40AM | 9 | THE COURT:  ALL RIGHT.  GOOD.  THANKS.  GOOD SEEING |
| 11:40AM | 10 | YOU. |
| 11:40AM | 11 | AND TOMORROW WE'RE GETTING TOGETHER AT 8:00 O'CLOCK |
| 11:40AM | 12 | TOMORROW, ARE WE? |
| 11:40AM | 13 | MR. DOWNEY:  YES, YOUR HONOR. |
| 11:40AM | 14 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 11:40AM | 15 | MR. KORZENIK:  THANK YOU VERY MUCH, YOUR HONOR. |
| 11:40AM | 16 | THE COURT:  YOU'RE WELCOME.  THANK YOU.  WE'LL |
| 11:40AM | 17 | DISENGAGE THE LINE NOW. |
| 11:40AM | 18 | MR. KORZENIK:  OKAY. |
| 11:40AM | 19 | (COURT ADJOURNED AT 11:40 A.M.) |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
 1
 2
 3                          CERTIFICATE OF REPORTERS
 4
 5
 6
 7            WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE
 8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
 9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10     HEREBY CERTIFY:
11            THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12     A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13     ABOVE-ENTITLED MATTER.
14
15
16            _____
              IRENE RODRIGUEZ, CSR, CRR
              CERTIFICATE NUMBER 8076
17
18            _____
19            LEE-ANNE SHORTRIDGE, CSR, CRR
              CERTIFICATE NUMBER 9595
20
21            DATED:  NOVEMBER 8, 2021
22
23
24
25
```

5671

1

2                          UNITED STATES DISTRICT COURT

3                        NORTHERN DISTRICT OF CALIFORNIA

4                              SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                    )
                      PLAINTIFF,     )   SAN JOSE, CALIFORNIA
7                                    )
              VS.                    )   VOLUME 30
8                                    )
   ELIZABETH A. HOLMES,             )   NOVEMBER 9, 2021
9                                    )
                      DEFENDANT.     )   PAGES 5671 - 5872
10  _____  )

11

12                      TRANSCRIPT OF TRIAL PROCEEDINGS
                  BEFORE THE HONORABLE EDWARD J. DAVILA
                       UNITED STATES DISTRICT JUDGE
13

     A P P E A R A N C E S:
14

   FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                        BY:  JOHN C. BOSTIC
                               JEFFREY B. SCHENK
16                        150 ALMADEN BOULEVARD, SUITE 900
                          SAN JOSE, CALIFORNIA 95113
17
                          BY:  ROBERT S. LEACH
18                             KELLY VOLKAR
                          1301 CLAY STREET, SUITE 340S
19                        OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

   OFFICIAL COURT REPORTERS:
22                             IRENE L. RODRIGUEZ, CSR, RMR, CRR
                               CERTIFICATE NUMBER 8074
23                             LEE-ANNE SHORTRIDGE, CSR, CRR
                               CERTIFICATE NUMBER 9595
24
           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25              TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        A P P E A R A N C E S:  (CONT'D)

 2

 3     FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                                BY:  KEVIN M. DOWNEY
 4                                   LANCE A. WADE
                                     KATHERINE TREFZ
 5                                   PATRICK LOOBY
                                     SEEMA ROPER
 6                                   J.R. FLEURMONT
                                725 TWELFTH STREET, N.W.
 7                              WASHINGTON, D.C. 20005

 8                              LAW OFFICE OF JOHN D. CLINE
                                BY:  JOHN D. CLINE
 9                              ONE EMBARCADERO CENTER, SUITE 500
                                SAN FRANCISCO, CALIFORNIA 94111
10

11     ALSO PRESENT:           FEDERAL BUREAU OF INVESTIGATION
                                BY:  ADELAIDA HERNANDEZ
12
                                OFFICE OF THE U.S. ATTORNEY
13                              BY:  LAKISHA HOLLIMAN, PARALEGAL
                                     MADDI WACHS, PARALEGAL
14
                                WILLIAMS & CONNOLLY
15                              BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

16                              TBC
                                BY:  BRIAN BENNETT, TECHNICIAN
17

18

19

20

21

22

23

24

25
```

5673

1                           INDEX OF PROCEEDINGS

2          GOVERNMENT'S:

3

4          **LYNETTE SAWYER**
           CROSS-EXAM BY MR. WADE (RES.)            P. 5730
5          REDIRECT EXAM BY MR. LEACH               P. 5772
           RECROSS-EXAM BY MR. WADE                 P. 5777
6
           **KINGSHUK DAS**
7          DIRECT EXAM BY MR. LEACH                 P. 5781
           CROSS-EXAM BY MR. WADE                   P. 5861
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5674

```
 1                           INDEX OF EXHIBITS

 2
                                       IDENT.     EVIDENCE
 3         GOVERNMENT'S:

 4         4621, PAGES 1 - 4                        5802
           4621, PAGES 51 - 53                      5810
 5         4621, PAGE 55                            5814
           4943, PAGES 1 AND 9                      5827
 6         4621, AS REDACTED                        5852

 7


 8


 9         DEFENDANT'S:

10         13047                                    5746
           13655                                    5751
11         10584                                    5765
           13158                                    5770

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**ER-9299**

5675

```
         1    SAN JOSE, CALIFORNIA                    NOVEMBER 9, 2021
08:13AM  2                    P R O C E E D I N G S
08:23AM  3         (COURT CONVENED AT 8:23 A.M.)
08:23AM  4         (JURY OUT AT 8:23 A.M.)
08:23AM  5              THE COURT:  ALL RIGHT.  LET'S GO ON THE RECORD IN
08:23AM  6    THE HOLMES MATTER.  ALL COUNSEL ARE PRESENT.  MS. HOLMES IS
08:23AM  7    PRESENT.
08:23AM  8         WE'RE OUTSIDE OF THE PRESENCE OF THE JURY TAKING UP A
08:23AM  9    COUPLE OF MATTERS REGARDING SOME EVIDENCE.
08:23AM 10         LET'S SEE.  I THINK WE'RE GOING TO TALK THIS MORNING ABOUT
08:23AM 11    DOCKET 1086, 1133, AND 1134, AMONGST OTHERS, WHICH WILL
08:24AM 12    PROBABLY INCLUDE A DISCUSSION OF 989 AS WELL.  THOSE ARE WHAT
08:24AM 13    I'VE IDENTIFIED.
08:24AM 14         HAVE YOU IDENTIFIED, FOLKS, WHO IS GOING TO SPEAK TO
08:24AM 15    THESE?  MR. LEACH AND MR. WADE?
08:24AM 16              MR. LEACH:  I'LL BE SPEAKING TO THIS, YOUR HONOR.
08:24AM 17              THE COURT:  ALL RIGHT.  THANK YOU.
08:24AM 18              MR. WADE:  GOOD MORNING, YOUR HONOR.
08:24AM 19         LANCE WADE ON BEHALF OF MS. HOLMES.  I'LL DEAL WITH A
08:24AM 20    SUBSTANTIAL PART OF THIS.  THERE ARE CERTAIN ISSUED RELATING TO
08:24AM 21    THE CMS REPORT THAT I HAVE MR. LOOBY'S PRESENCE TO HELP THE
08:24AM 22    COURT WITH.
08:24AM 23              THE COURT:  OKAY, GREAT.
08:24AM 24         WELL, WHERE DO WE START?  LET'S -- I HAVE 1133, WHICH IS A
08:24AM 25    SUPPLEMENTAL BRIEF REGARDING TRIAL EXHIBIT 4621.  WE HAD TALKED
```

5676

08:25AM 1    ABOUT THIS BEFORE.  THIS WAS THE -- IS THIS THE JANUARY 25TH

08:25AM 2    LETTER AND THE REPORT I THINK IT IS?

08:25AM 3              MR. LEACH:  THIS IS, YOUR HONOR.  THIS IS THE CMS

08:25AM 4    STATEMENT OF DEFICIENCIES --

08:25AM 5              THE COURT:  EXCUSE ME.

08:25AM 6              MR. LEACH:  -- WHICH WAS ISSUED ON JANUARY 25TH,

08:25AM 7    2016.

08:25AM 8        DR. DAS IS THE LAB DIRECTOR AT THE TIME THAT 4621 WAS

08:25AM 9    ISSUED, AND ONE OF HIS RESPONSIBILITIES WAS TO INVESTIGATE THE

08:25AM 10   ALLEGED DEFICIENCIES IN THE 2567, REVIEW DOCUMENTS IN

08:25AM 11   CONNECTION WITH THAT TO RESPOND, AND TO PREPARE THE COMPANY'S

08:25AM 12   RESPONSE.

08:25AM 13       SO HE'S INTIMATELY FAMILIAR WITH THE DOCUMENT.  HE TOLD

08:25AM 14   THE GOVERNMENT PREVIOUSLY HE 100 PERCENT AGREES WITH THE

08:25AM 15   DEFICIENCIES THAT WERE FOUND.

08:25AM 16       WE INTEND TO EXAMINE HIM ABOUT A PORTION OF THE 2567,

08:25AM 17   INCLUDING THE COVER LETTER.

08:26AM 18       IN ADDITION TO BEING ADMISSIBLE IN THE CONTEXT OF

08:26AM 19   DR. DAS'S TESTIMONY FOR, YOU KNOW, HIS CORROBORATION OF THE

08:26AM 20   TRUTHFULNESS, WE THINK THE 2567 IS RELEVANT TO THE DEFENDANT'S

08:26AM 21   STATE OF MIND.  THE INVESTOR OR THE PATIENT CONSPIRACY COUNT

08:26AM 22   GOES THROUGH 2016.

08:26AM 23       THE DEFENDANT HAS INTRODUCED EVIDENCE FROM MARCH OF 2016

08:26AM 24   WHERE SHE'S RELAYING THE FINDINGS OF A SCIENTIFIC BOARD THAT

08:26AM 25   SHE CONVENED THAT DOCTORS AND OTHER PEOPLE WITH CONNECTIONS TO

5677

08:26AM 1    THE COMPANY ARE GLOWING ABOUT THE TECHNOLOGY, SAYING THE

08:26AM 2    VACUTAINER WORKS, SAYING THIS IS A LAB IN THE BOX AND IS A GAME

08:26AM 3    CHANGER.

08:26AM 4         AND THE PROFFER IN THE MOMENT WITH GENERAL MATTIS WAS THAT

08:26AM 5    THIS WAS RELEVANT TO THE DEFENDANT'S STATE OF MIND.

08:26AM 6         IF GLOWING REVIEWS ABOUT THE TECHNOLOGY ARE RELEVANT TO

08:27AM 7    HER STATE OF MIND IN MARCH OF 2016, THE CMS REPORT, WHICH IS

08:27AM 8    CRITICAL OF THERANOS'S TECHNOLOGY, IS EQUALLY RELEVANT TO HER

08:27AM 9    STATE OF MIND.

08:27AM 10        SO IT SHOULD COME IN FOR THAT PURPOSE.  AND DR. DAS WILL

08:27AM 11   ALSO REVIEW PORTIONS OF THE REPORT AND SAY, YES, I LOOKED INTO

08:27AM 12   THAT AND I AGREE WITH THAT COMPLETELY.  IN FACT, THE ISSUE IS

08:27AM 13   EVEN WORSE THAN WHAT IS DESCRIBED HERE.

08:27AM 14             THE COURT:  THANK YOU.

08:27AM 15        WILL DR. DAS INDICATE THAT HE SPOKE WITH MS. HOLMES ABOUT

08:27AM 16   THE INFORMATION CONTAINED IN THIS?  IN OTHER WORDS, IS THERE

08:27AM 17   SOME EVIDENCE THAT WILL CONNECT MS. HOLMES TO THE DOCUMENT SUCH

08:27AM 18   THAT IT COULD BE INTRODUCED FOR STATE OF MIND?

08:27AM 19             MR. LEACH:  YES.  HE WILL TESTIFY THAT HE WAS

08:27AM 20   INSTRUCTED BY MS. HOLMES TO REVIEW THE 2567 AND RESPOND TO IT.

08:27AM 21   I ANTICIPATE THAT'S WHAT HE'LL SAY.

08:27AM 22        IN ADDITION, HE WILL DESCRIBE HOW, IN THE COURSE OF

08:28AM 23   PREPARING THE RESPONSE TO THE 2567, HE RELAYED TO MS. HOLMES

08:28AM 24   WHAT HE WAS FINDING AND WHAT HE INTENDED TO REPORT BACK TO CMS,

08:28AM 25   AND THE COURT HAS FOUND IN THE MOTION IN LIMINE ORDER THAT THE

5678

08:28AM   1    DIALOGUE BACK AND FORTH BETWEEN CMS AND THERANOS IS CLEARLY

08:28AM   2    RELEVANT.

08:28AM   3        AND DR. DAS IS GOING TO SAY NOT ONLY DID MS. HOLMES

08:28AM   4    UNDERSTAND WHAT I WAS FINDING AND WHAT OUR INVESTIGATION OF THE

08:28AM   5    DEFICIENCIES ENTAILED, SHE INSISTED THAT I CHARACTERIZE THIS AS

08:28AM   6    A QUALITY SYSTEMS ISSUE AND NOT AN ISSUE WITH THE DEVICE, WHICH

08:28AM   7    IS WHAT I WAS ACTUALLY SEEING.

08:28AM   8        SO DR. DAS, I ANTICIPATE, WILL TESTIFY MS. HOLMES ASKED

08:28AM   9    HIM TO MINIMIZE THE EXTENT OF THE PROBLEM TO CMS.

08:28AM   10        THAT GOES DIRECTLY TO HER STATE OF MIND, NOT JUST HER

08:28AM   11    KNOWLEDGE OF PROBLEMS, BUT HER DESIRE TO MINIMIZE THEM WHEN

08:28AM   12    CONFRONTED WITH ISSUES.

08:28AM   13            THE COURT:  I THINK YOUR PLEADINGS CALL THIS PUSH

08:28AM   14    BACK.

08:29AM   15            MR. LEACH:  YES.  AND THOSE ARE HIS WORDS IN OUR

08:29AM   16    PRIOR INTERVIEWS.

08:29AM   17        SO HE WILL CONNECT THE 2567 DIRECTLY TO MS. HOLMES, AND I

08:29AM   18    THINK HER REACTION AND HER DESIRE TO MINIMIZE WHAT IS

08:29AM   19    COMMUNICATED TO CMS IS HIGHLY RELEVANT TO HER STATE OF MIND.

08:29AM   20            THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

08:29AM   21        THERE'S ANOTHER ISSUE ABOUT THIS, AND I THINK THIS

08:29AM   22    INVOLVES MR. LOOBY, AND WE SPOKE SOME TIME AGO ABOUT THIS AND

08:29AM   23    REDACTIONS IN THIS.  I THINK IT -- THERE'S SOME REDACTIONS.

08:29AM   24        MR. LOOBY IDENTIFIED CATEGORIES A, B, AND C, AND I THINK

08:29AM   25    IN YOUR PLEADING 1133 YOU SUGGEST, BASED ON THE COURT'S PRIOR

08:29AM   1   COMMENTS, THAT YOU'RE GIVING NOTICE THAT YOU WANT THE ENTIRETY

08:29AM   2   OF THE DOCUMENT TO COME IN.  I THINK WE'LL HAVE TO TALK ABOUT

08:29AM   3   POSSIBLE REDACTIONS.

08:29AM   4       I DON'T KNOW IF YOU WANT TO DO THAT NOW OR BEFORE -- MAYBE

08:29AM   5   WE SHOULD ALLOW MR. WADE TO STATE HIS CURRENT POSITION ON THAT?

08:29AM   6           MR. LEACH:  I'M HAPPY TO HEAR MR. WADE'S CURRENT

08:30AM   7   POSITION ON THAT, YOUR HONOR.

08:30AM   8       I WOULD LIKE TO NOTE THAT IN PREPARING FOR DR. DAS'S

08:30AM   9   DIRECT, THERE ARE ONLY CERTAIN PORTIONS OF THE CMS REPORT THAT

08:30AM  10   I INTEND TO DISPLAY TODAY.  I'M HAPPY TO GO THROUGH THOSE IN

08:30AM  11   ADVANCE.  I THINK THEY ELIMINATE A LOT OF THE REDACTIONS, BUT

08:30AM  12   NOT ALL OF THEM, BECAUSE I THINK THE ONE THING WE NEED TO BE

08:30AM  13   ABLE TO DISPLAY IS THE -- IT'S LAID OUT BY -- THERE'S A

08:30AM  14   PARTICULAR CITE TO A CODE SECTION, THERE'S A DESCRIPTION OF THE

08:30AM  15   LANGUAGE OF THE CODE SECTION, AND THEN IT SAYS THIS STANDARD OR

08:30AM  16   THIS CONDITION IS EITHER MET OR NOT MET, AND THERE'S A

08:30AM  17   DESCRIPTION OF THE EVIDENCE THAT CMS NOTED.

08:30AM  18       ALL OF THOSE, FOR THESE PARTICULAR PORTIONS, RELATE TO THE

08:30AM  19   EDISON DEVICE, THE TECHNOLOGY THAT THE DEFENDANT WAS HOLDING

08:30AM  20   OUT, SO I DON'T THINK IT RAISES ISSUES WITH ASSAYS THAT AREN'T

08:30AM  21   AT ISSUE OR OTHER ISSUES RAISED IN THE MOTION.

08:31AM  22       SO I ONLY INTEND TO DISPLAY THOSE TODAY, AND I'M HAPPY TO

08:31AM  23   GIVE THE COURT THOSE NUMBERS.

08:31AM  24       I DO THINK THAT THE ENTIRE EXHIBIT IS ADMISSIBLE FOR HER

08:31AM  25   STATE OF MIND, THE EXTENT OF THE ISSUES.  SO I THINK WE'VE --

5680

08:31AM  1    AS THE TRIAL HAS PROGRESSED, WE'VE MOVED A LITTLE BIT PAST,

08:31AM  2    DOES IT REFER TO AN ASSAY THAT'S NOT IN THE BILL OF PARTICULARS

08:31AM  3    OR A PARTICULAR MORE MINOR ISSUE.

08:31AM  4        I DO THINK THE ENTIRETY IS RELEVANT TO HER STATE OF MIND,

08:31AM  5    AND FOR THAT REASON WE DON'T THINK ANY REDACTIONS ARE

08:31AM  6    APPROPRIATE.

08:31AM  7        BUT I'M HAPPY TO PREVIEW THE PARTICULAR PAGES THAT WE WANT

08:31AM  8    TO GO THROUGH TODAY WITH DR. DAS, WHICH I DON'T THINK SHOULD BE

08:31AM  9    REDACTED IN ANY WAY.

08:31AM 10            THE COURT:  OKAY.

08:31AM 11        MR. WADE, DO YOU WANT TO HEAR THOSE LIMITATIONS TODAY OR

08:31AM 12    DO YOU WANT TO GO FORWARD WITH --

08:31AM 13            MR. WADE:  YOUR HONOR, I THINK THERE ARE SEVERAL

08:31AM 14    ISSUES HERE.  LET ME TRY TO ADDRESS SOME OF THE POINTS THAT THE

08:31AM 15    COURT HAS RAISED AND MR. LEACH HAS RAISED, AND THEN WE CAN GET

08:32AM 16    TO PERHAPS THE PARTICULAR ASPECTS OF THE REPORT ITSELF.

08:32AM 17        I THINK THE SHORT ANSWER TO THAT QUESTION IS WE NEED TO

08:32AM 18    KNOW WHAT IS IN AND WHAT IS OUT IN ORDER TO BE IN A POSITION

08:32AM 19    WHERE WE CAN CROSS-EXAMINE THE WITNESS.

08:32AM 20        SO I UNDERSTAND MR. LEACH HAS SAID THAT HE ONLY INTENDS TO

08:32AM 21    GO INTO CERTAIN PARTS.  WE DON'T KNOW WHAT THOSE PARTS ARE.  WE

08:32AM 22    DON'T KNOW WHAT IS GOING TO GO IN, SO WE DON'T KNOW HOW TO

08:32AM 23    PREPARE CROSS-EXAMINATION THAT WILL ADDRESS THE RELEVANT

08:32AM 24    PIECES.

08:32AM 25        THAT'S ONE OF THE REASONS WHY, AS THE COURT KNOWS, WE

5681

08:32AM 1    RAISED THIS ISSUE EARLY ON SO WE COULD GET NOTICE AND BE IN A

08:32AM 2    POSITION TO FAIRLY CONFRONT THE WITNESS.

08:32AM 3        I THINK THERE IS A MORE FUNDAMENTAL THRESHOLD ISSUE THAT

08:32AM 4    RELATES TO DR. DAS AND THE CMS CORRESPONDENCE, AND THAT IS

08:32AM 5    WHETHER THAT -- AND THE CMS REPORT, THE 2567.

08:32AM 6        AS THE COURT KNOWS, THAT WAS THE SUBJECT OF EXTENSIVE

08:32AM 7    MOTIONS PRACTICE DURING THE MOTION IN LIMINE PHASE AND THE

08:32AM 8    SUBJECT OF THE COURT'S ORDER.

08:32AM 9        WE RAISED CONCERNS AT THAT TIME ABOUT HEARSAY, AND ABOUT

08:33AM 10   LAYERED HEARSAY IN PARTICULAR, THAT MANY OF THE ITEMS WITHIN

08:33AM 11   THE REPORT ARE BASED UPON STATEMENTS OF WITNESSES THAT WERE

08:33AM 12   MADE TO THE PEOPLE WHO WROTE THE REPORT, THAT PEOPLE WHO WROTE

08:33AM 13   THE REPORT THEN OBVIOUSLY MADE STATEMENTS WITHIN THE REPORT,

08:33AM 14   DIFFERENT PEOPLE MADE DIFFERENT STATEMENTS.

08:33AM 15       THERE ARE SOME SUBJECTIVE DETERMINATIONS WITHIN THE REPORT

08:33AM 16   THAT WE WERE CONCERNED ABOUT, AND I KNOW THE COURT IN ITS ORDER

08:33AM 17   NOTED THE CONCERN THAT THE -- THE REAL CONCERN THAT A CIVIL

08:33AM 18   VIOLATION HERE COULD CONFUSE THE JURY AND COULD CREATE THE

08:33AM 19   POSSIBILITY THAT, YOU KNOW, MS. HOLMES WOULD BE CONVICTED

08:33AM 20   BECAUSE OF SOME PERCEIVED VIOLATION OF LAW THAT IS A CIVIL

08:33AM 21   VIOLATION.  THAT REALLY ISN'T WHAT THIS CASE IS ABOUT.

08:33AM 22           THE COURT:  WELL, THAT RELATES MORE TO THE 3217, NOT

08:33AM 23   SO MUCH TO THIS DOCUMENT.

08:33AM 24       BUT GO AHEAD.  I JUST WANT TO LET YOU KNOW THAT.

08:34AM 25           MR. WADE:  AND WE NOTE THAT IN RAISING THOSE ISSUES

5682

08:34AM   1    AND THE CONCERNS THAT WE HAD AND THE ABILITY TO CONFRONT THAT

08:34AM   2    EVIDENCE FAIRLY ON BEHALF OF OUR CLIENT, THE GOVERNMENT

08:34AM   3    ADDRESSED THOSE CONCERNS REPEATEDLY BY SAYING IT WAS GOING TO

08:34AM   4    OFFER IT THROUGH ONE OF THE AUTHORS OF THE REPORT SO MS. HOLMES

08:34AM   5    WOULD HAVE A CHANCE TO ADDRESS ALL OF THESE CONCERNS BY

08:34AM   6    CROSS-EXAMINATION OF THE WITNESS ON THE STAND.

08:34AM   7        IT APPEARS THAT THE GOVERNMENT NOW DOES NOT INTEND TO DO

08:34AM   8    THAT, OR AT LEAST INTENDS TO OFFER THIS THROUGH DR. DAS, WHO,

08:34AM   9    OF COURSE, WE CAN'T CROSS-EXAMINE ON THE PREPARATION OF THE

08:34AM  10    REPORT AND ALL OF THE STATEMENTS THAT WERE MADE IN THERE, WHICH

08:34AM  11    CREATES BOTH SIGNIFICANT 403 ISSUES, BUT ALSO CONSTITUTIONAL

08:34AM  12    ISSUES TO THE EXTENT THAT WE'RE NOT ABLE TO CONFRONT THE AUTHOR

08:34AM  13    OF THE REPORT, THE MULTIPLE LAYERS OF HEARSAY, ET CETERA.

08:35AM  14        AND I JUST NOTE AT DOCKET 675 AT PAGES 4, 2 -- 2, 4, 8 --

08:35AM  15    8 AND 9, THE GOVERNMENT REPEATEDLY REPRESENTED TO THE COURT IN

08:35AM  16    THE MOTIONS IN LIMINE PRACTICE THAT THESE WITNESSES WOULD BE

08:35AM  17    OFFERED, EITHER SARAH BENNETT OR GARY YAMAMOTO, THAT THEY WOULD

08:35AM  18    TESTIFY AS TO THE CONTENT AND WE WOULD HAVE THE ABILITY TO

08:35AM  19    CROSS-EXAMINE THEM.

08:35AM  20        I DON'T KNOW WHAT THE STATUS OF THAT IS NOW, BUT THEY NOW

08:35AM  21    WANT TO BRING THIS IN THROUGH DR. DAS, WHO, OF COURSE, DIDN'T

08:35AM  22    PREPARE THE REPORT, DOESN'T KNOW WHAT --

08:35AM  23        THE COURT:  SO IF ONE OF THOSE WITNESSES TESTIFIED,

08:35AM  24    THAT WOULD ALLEVIATE YOUR CONCERN?

08:35AM  25        MR. WADE:  IT WOULD ALLEVIATE OUR CONCERN.

5683

| | | |
|---|---|---|
| 08:35AM | 1 | WE DO THINK THAT THAT WITNESS SHOULD ADMIT THE DOCUMENT, |
| 08:35AM | 2 | SO IF THEY WANT DR. DAS TO TESTIFY AS TO THIS DOCUMENT AS A |
| 08:35AM | 3 | THRESHOLD MATTER, IT HAS TO COME INTO EVIDENCE WITH AN |
| 08:36AM | 4 | APPROPRIATE FOUNDATION. |
| 08:36AM | 5 | THE COURT:  SO YOU THINK WHOEVER COULD AUTHENTICATE |
| 08:36AM | 6 | THE DOCUMENT SHOULD TESTIFY FIRST AND THEN DR. DAS COULD |
| 08:36AM | 7 | TESTIFY TO IT, AND THAT'S YOUR SUGGESTION TO THE GOVERNMENT ON |
| 08:36AM | 8 | HOW THEY SHOULD PUT THEIR CASE ON? |
| 08:36AM | 9 | MR. WADE:  WE DO.  WE RAISED THIS ISSUE WITH THE |
| 08:36AM | 10 | GOVERNMENT. |
| 08:36AM | 11 | IT'S NOT A SUGGESTION OF TRIAL PRESENTATION.  IT'S A 403 |
| 08:36AM | 12 | ISSUE AND A CONFRONTATION ISSUE, BECAUSE THEY WANT TO PUT IT IN |
| 08:36AM | 13 | THROUGH A WITNESS WHO DIDN'T PREPARE IT, AND THEY WANT TO GO TO |
| 08:36AM | 14 | THE END OF IT AND HAVE HIM AGREE WITH CERTAIN THINGS, AND WE |
| 08:36AM | 15 | DON'T THINK THAT THAT'S APPROPRIATE FOR IT TO COME IN BEFORE |
| 08:36AM | 16 | THE JURY UNDERSTANDS THE CONTEXT OF THE REPORT, WHAT IT IS, HOW |
| 08:36AM | 17 | IT WAS PREPARED, THE SIGNIFICANCE OF IT, SO THEY CAN UNDERSTAND |
| 08:36AM | 18 | HOW IT IS THAT DR. DAS RESPONDED TO IT. |
| 08:36AM | 19 | BUT DIRECTLY TO THE COURT'S CONCERN, YES, IF THEY PUT UP |
| 08:36AM | 20 | THAT WITNESS AND WERE ABLE TO CROSS-EXAMINE, WE OBVIOUSLY HAVE |
| 08:36AM | 21 | THE ISSUES THAT WE RAISED IN THE MOTION IN LIMINE, BUT WE |
| 08:36AM | 22 | UNDERSTAND THE COURT'S ORDER ON THAT. |
| 08:36AM | 23 | BUT WE THINK AS A MATTER OF FAIRNESS AND CONSTITUTIONAL |
| 08:36AM | 24 | PRINCIPLES, WE SHOULD HAVE THE ABILITY TO CONFRONT THAT |
| 08:37AM | 25 | WITNESS. |

5684

08:37AM  1        WE DON'T THINK IT NECESSARILY ELIMINATES THE CONCERN OF

08:37AM  2     PREJUDICE RELATING -- WE DON'T THINK NECESSARILY THINK THAT IT

08:37AM  3     COMPLETELY ADDRESSES THE CONCERNS WITH RESPECT TO THE CONFUSION

08:37AM  4     ON THE CIVIL ISSUES WITHIN THIS CRIMINAL CASE.

08:37AM  5        WE HAVE AN INSTRUCTION, PROPOSED INSTRUCTION, THAT WE HAD

08:37AM  6     SUBMITTED TO THE COURT AT DOCKET 809, PAGE 88, AND I'LL OFFER

08:37AM  7     THAT UP TO THE COURT.

08:37AM  8        (HANDING.)

08:37AM  9        WE DO THINK IN THESE UNIQUE CIRCUMSTANCES IF THE COURT IS

08:37AM 10     GOING TO ADMIT THIS, THAT THIS IS A CIRCUMSTANCE WHERE THIS

08:37AM 11     INSTRUCTION SHOULD BE, SHOULD BE GIVEN CONTEMPORANEOUS WITH THE

08:37AM 12     EVIDENCE SO THAT THE JURY UNDERSTANDS, YOU KNOW, THE

08:38AM 13     APPROPRIATE LIMITATION OF THE EVIDENCE WITH RESPECT TO THE

08:38AM 14     MATTERS THAT ARE AT ISSUE IN THE CASE.

08:38AM 15        WE THEN HAVE -- BEFORE WE GET TO MR. LOOBY'S ISSUES ON THE

08:38AM 16     PROPOSED REDACTIONS AND WHAT IS IN THE DOCUMENT, THERE ARE A

08:38AM 17     COUPLE OF OTHER ISSUES WITH RESPECT TO MR. DAS.

08:38AM 18        ONE RELATES TO VOIDING AND WHETHER HE IS PERMITTED TO

08:38AM 19     TESTIFY AS TO VOIDING OF THE RESULTS, AND THE OTHER RELATES TO

08:38AM 20     EXPERT TESTIMONY, WHICH WAS THE SUBJECT OF A PRETRIAL MOTION.

08:38AM 21        I KNOW THE COURT REMEMBERS THAT AND THE COURT ISSUED AN

08:38AM 22     ORDER ON THAT.  WE'RE SURE THE GOVERNMENT WILL HONOR THAT ORDER

08:39AM 23     AND ONLY OFFER PERCIPIENT WITNESS TESTIMONY.

08:39AM 24        THERE IS ONE REPRESENTATION THAT MR. LEACH JUST MADE THAT

08:39AM 25     GIVES ME, YOU KNOW, SIGNIFICANT PAUSE AS TO THAT.  THE -- A

5685

08:39AM  1      JUDGMENT THAT THIS WITNESS IS GOING TO COME IN AND SAY, I AGREE

08:39AM  2      100 PERCENT WITH EACH AND EVERY FINDING IN THE REPORT IS --

08:39AM  3      CLEARLY GOES TO, YOU KNOW, EXPERT TESTIMONY.  THEY HAVEN'T

08:39AM  4      NOTICED -- THEY HAVEN'T PROVIDED NOTICE THAT THAT WAS AN

08:39AM  5      OPINION THAT HE WAS GOING TO OFFER.  IT WASN'T NECESSARY TO HIS

08:39AM  6      JOB.

08:39AM  7          THERE WERE MANY TIMES WITHIN HIS JOB WHERE HE WAS ACTUALLY

08:39AM  8      GOING BACK AND FORTH WITH CMS WITH RESPECT TO PARTICULAR ITEMS

08:39AM  9      WITHIN THE REPORT AND ACTUALLY RAISING DISAGREEMENT WITH ITEMS

08:39AM  10     IN THE REPORT OR SEEKING CLARIFICATION OR TRYING TO RESPOND ON

08:39AM  11     THE COMPANY'S BEHALF.

08:39AM  12          THE COURT:  WAS HE HIRED -- AT THE TIME HE WAS

08:40AM  13     HIRED -- WHEN WAS THAT?  DECEMBER OF '15, WASN'T IT?

08:40AM  14          MR. WADE:  HE WAS HIRED IN DECEMBER OF '15, YES.

08:40AM  15          THE COURT:  AND WAS HE HIRED -- WAS HIS TASK TO

08:40AM  16     ADDRESS THE CMS AND DEAL WITH THE QUESTIONS, AND ALSO DEAL WITH

08:40AM  17     REALIGNMENT OF THE LABORATORY IN COMPLIANCE WITH REGULATIONS?

08:40AM  18     WASN'T THAT HIS TASK?

08:40AM  19          MR. WADE:  THERE WAS CERTAINLY A PART OF THAT,

08:40AM  20     YOUR HONOR.  HE WAS ACTUALLY HIRED IN THIS PERIOD BETWEEN --

08:40AM  21     THERE HAD BEEN AN INSPECTION IN LATE 2015.

08:40AM  22          THE COURT:  SEPTEMBER?

08:40AM  23          MR. WADE:  AND THE 2567 WAS ISSUED IN LATE FEBRUARY

08:40AM  24     OF '15.  SO HE CAME IN ON A PART-TIME BASIS BEFORE THE NOTICE

08:40AM  25     WAS RECEIVED.

5686

08:40AM 1          THE COURT:  AND THEN HE WAS CONTINUED ON AS A

08:40AM 2    FULL-TIME EMPLOYEE UNTIL WHEN WAS IT, 2018?  IS THAT WHEN HE

08:40AM 3    LEFT?

08:40AM 4          MR. WADE:  HE DID, YES.

08:40AM 5          THE COURT:  RIGHT.

08:40AM 6          MR. WADE:  AND THERANOS MADE A DECISION TO -- THAT A

08:40AM 7    SETTLEMENT WITH CMS --

08:41AM 8          THE COURT:  SURE, RIGHT.

08:41AM 9          MR. WADE:  -- IN THE LATE SUMMER, EARLY FALL OF

08:41AM 10   2016.

08:41AM 11         THE COURT:  SO MY POINT ABOUT THIS, PARDON ME --

08:41AM 12         MR. WADE:  YEAH.

08:41AM 13         THE COURT:  -- MY POINT WAS WHETHER OR NOT HE --

08:41AM 14   BECAUSE OF THE REASONS HE WAS HIRED, AND IF HE TESTIFIES, I WAS

08:41AM 15   HIRED TO DO X, Y, Z, PART OF THAT IS, IN RESPONSE TO YOUR

08:41AM 16   QUESTION, CAN HE SAY, I AGREED WITH IT OR NOT?

08:41AM 17       THAT MIGHT BE PART OF HIS JOB TITLE.  I DON'T KNOW.  WE'LL

08:41AM 18   HAVE TO SEE WHETHER OR NOT THAT EVIDENCE COMES IN.

08:41AM 19       I UNDERSTAND YOUR CONCERN ABOUT MORPHING OVER INTO EXPERT,

08:41AM 20   AND I THINK I WAS VERY SPECIFIC ABOUT THAT IN 798, AND OTHER

08:41AM 21   ORDERS, THAT HE COULD NOT -- 989 ALSO, THAT HE COULD NOT.

08:41AM 22       HE'S GOING TO TESTIFY AS A PERCIPIENT WITNESS, AND HE'S

08:41AM 23   NOT TO TESTIFY UNLESS THE FOUNDATION IS LAID, WHICH I DON'T

08:41AM 24   THINK THAT WOULD HAPPEN.  AS YOU POINT OUT, HE HASN'T BEEN

08:41AM 25   IDENTIFIED AS AN EXPERT.  YOU HAVE NO NOTICE ABOUT THAT.

5687

08:41AM 1      BUT HE CAN TESTIFY ABOUT A PERCIPIENT WITNESS.  WHETHER OR

08:42AM 2  NOT A FOUNDATION IS LAID AS TO THAT QUESTION THAT YOU HAVE

08:42AM 3  CONCERNS ABOUT REMAINS TO BE SEEN.

08:42AM 4      HE MAY BE ABLE TO ANSWER THAT QUESTION BASED ON

08:42AM 5  FOUNDATION.  I DON'T KNOW.

08:42AM 6          MR. WADE:  YEAH.  I JUST WANT TO RAISE IT BECAUSE

08:42AM 7  OBVIOUSLY IT HAS PARTICULAR SIGNIFICANCE.

08:42AM 8          THE COURT:  SURE.

08:42AM 9          MR. WADE:  AND IT HAS PARTICULAR PREJUDICIAL IMPACT

08:42AM 10  IF IT HAPPENS IN FRONT OF THE JURY.

08:42AM 11      IN THIS PARTICULAR CASE, THE CORRESPONDENCE THROUGHOUT

08:42AM 12  2016 MAKES CLEAR THAT HE IS ENGAGING ACTIVELY WITH CMS TO

08:42AM 13  ADDRESS THESE CONCERNS.

08:42AM 14          THE COURT:  RIGHT.

08:42AM 15          MR. WADE:  HE'S CLEARLY COMING TO VIEWS AND

08:42AM 16  RESPONDING TO THE COMPANY, AND WE DON'T HAVE ANY ISSUE WITH

08:42AM 17  THAT.

08:42AM 18      HE'S CLEARLY OF THE VIEW THAT THERE WERE SIGNIFICANT

08:42AM 19  ISSUES WITHIN THE LAB.  WE DON'T HAVE ANY ISSUE WITH THAT.

08:42AM 20  THAT'S WHAT HE WAS HIRED TO DEAL WITH.

08:42AM 21      THE CONCERN THAT WE HAVE IS IT'S ONE THING FOR HIM TO GO

08:42AM 22  THROUGH IN REALTIME THE PARTICULAR POSITIONS THAT HE WAS TAKING

08:42AM 23  ON PARTICULAR ISSUES.

08:42AM 24      IT'S ANOTHER THING FOR HIM TO SAY, WHICH I HAVEN'T SEEN

08:42AM 25  ANY CONTEMPORANEOUS EVIDENCE OF, I AGREED 100 PERCENT WITH THE

5688

08:43AM  1    CMS REPORT, AND I'M GOING TO OFFER THIS IN FRONT OF THIS

08:43AM  2    JURY --

08:43AM  3              THE COURT:  SURE.

08:43AM  4              MR. WADE:  -- WHEN THERE'S NO INDICATION THAT THAT

08:43AM  5    WAS COMMUNICATED WITH MS. HOLMES THAT HE 100 PERCENT AGREED

08:43AM  6    WITH THE CMS REPORT.  THERE'S NO NOTICE FOR THAT OR A BASIS FOR

08:43AM  7    HIS CONCLUSIONS.

08:43AM  8         IN FACT, THE CONTEMPORANEOUS EVIDENCE SUGGESTS OTHERWISE.

08:43AM  9              THE COURT:  SO WE'RE TALKING ABOUT THEORETICAL

08:43AM 10    THINGS HERE.  HE MAY LAY A FOUNDATION -- PARDON ME, MR. LEACH.

08:43AM 11         BUT THE GOVERNMENT MAY LAY A FOUNDATION FOR THIS.  YOU'RE

08:43AM 12    RAISING THIS AS A CONCERN, AND I APPRECIATE IT, AND I THINK

08:43AM 13    IT'S A WAIT AND SEE.  LET'S SEE WHAT HAPPENS.

08:43AM 14         I APPRECIATE YOUR CONCERN.  HE'S NOT GOING TO BE ABLE TO

08:43AM 15    TESTIFY AS AN EXPERT.  I THINK MR. LEACH'S TEAM KNOWS THAT.

08:43AM 16    THEY'VE CONFIRMED THAT IN THEIR RESPONSIVE PLEADINGS, SO I

08:43AM 17    THINK WE CAN EXPECT THAT THEY WILL CONDUCT THE EXAMINATION OF

08:43AM 18    DR. DAS ACCORDING TO THE LIMITATIONS THAT THE COURT HAS IMPOSED

08:43AM 19    ON THEM.

08:43AM 20              MR. WADE:  THE OTHER ISSUE THAT I RELATED,

08:43AM 21    YOUR HONOR, WAS THE ISSUE OF VOIDING.

08:43AM 22              THE COURT:  YES.

08:43AM 23              MR. WADE:  AND THE GOVERNMENT HAD AN OBLIGATION, I

08:44AM 24    BELIEVE UNDER THE COURT'S ORDER, TO OFFER EVIDENCE OR PROFFER

08:44AM 25    EVIDENCE THAT THIS WAS A LEGAL VIOLATION.

5689

08:44AM 1    AS THE COURT MAY RECALL -- AND TO BE FRANK, THE RECORD IS

08:44AM 2   A LITTLE BIT MIXED ON THIS -- THERE WAS ANOTHER 302 MEMORANDUM

08:44AM 3   OF INTERVIEW THAT -- RELATING TO MR. DAS, OR DR. DAS, THAT THE

08:44AM 4   GOVERNMENT PROVIDED TO US AFTER IT FILED ITS SUBMISSION.

08:44AM 5   THERE'S SOME AMBIGUITY AS TO INITIALLY HE SAID THERE WAS A

08:44AM 6   REQUIREMENT --

08:44AM 7    THE COURT:  HE SAID, I WAS REQUIRED TO REDACT OR

08:44AM 8   VOID AND I DID IT BECAUSE I THOUGHT IT WAS THE RIGHT THING.

08:44AM 9    IT SEEMED LIKE A SEMANTIC TYPE ISSUE, WHICH HAS

08:44AM 10   RAMIFICATIONS, I UNDERSTAND.  WAS HE REQUIRED OR DID HE DO IT

08:44AM 11   BECAUSE THIS FILTERS INTO HIS CONVERSATION WITH YOUR CLIENT, ET

08:44AM 12   CETERA.

08:44AM 13    SO I THINK I CAPTURE THAT.

08:45AM 14    MR. WADE:  YEAH.  AND THAT HAS ISSUES UNDER 407.

08:45AM 15   AND I THINK IT'S A PRETTY IMPORTANT THRESHOLD ISSUE JUST IN

08:45AM 16   TERMS OF IF IT'S A LEGAL REQUIREMENT UNDER 407, AS THE COURT

08:45AM 17   KNOWS FROM PRIOR MOTIONS, THAT'S ONE THING.  IF IT'S A MATTER

08:45AM 18   OF DISCRETION, WE -- OF COURSE THERE'S TESTIMONY -- THE

08:45AM 19   GOVERNMENT HAS NOT POINTED TO A LEGAL REGULATION THAT DOES

08:45AM 20   REQUIRE VOIDING OF RESULTS.  IT'S UNCLEAR EXACTLY WHAT MR. --

08:45AM 21   DR. DAS'S VIEW ON THIS IS.

08:45AM 22    THERE'S TESTIMONY FROM THE PEOPLE WHO PREPARED THE REPORT,

08:45AM 23   MR. YAMAMOTO OF CMS WHO SAID THAT HE DIDN'T UNDERSTAND VOIDING

08:45AM 24   TO BE REQUIRED, IT WAS WITHIN THE DISCRETION AS A POSSIBLE WAY

08:45AM 25   TO REMEDY ISSUES.

5690

08:45AM   1        AND SO I THINK THAT'S A PRETTY SIGNIFICANT ISSUE EMBEDDED

08:46AM   2   WITHIN A LOT OF WHAT DR. DAS IS DOING AND IS GOING TO TESTIFY

08:46AM   3   TO.

08:46AM   4        AND SO -- AND I THINK THERE IS NOT A CLEAR PROFFER ON

08:46AM   5   THAT, AND I WONDER WHETHER THAT'S AN ISSUE ON WHICH, OUTSIDE OF

08:46AM   6   THE PRESENCE OF THE JURY, WE OUGHT TO VOIR DIRE THE WITNESS TO

08:46AM   7   ASSESS THAT, OR MAYBE DEFER IT.

08:46AM   8        MAYBE THIS IS AN ISSUE -- LIKE I SAID, IF THE REPORT IS

08:46AM   9   GOING TO COME IN THROUGH A CMS WITNESS, MAYBE CMS CAN

08:46AM  10   APPROPRIATELY DEAL WITH THAT SINCE THEY'RE THE ONES WHO

08:46AM  11   DETERMINE WHAT IS REQUIRED AND WHAT IS NOT.

08:46AM  12        AND THAT'S THE POINT AT WHICH WE THINK THE EVIDENCE OF CMS

08:46AM  13   SHOULD COME IN.

08:46AM  14             THE COURT:  OKAY.

08:46AM  15        MR. LEACH?

08:46AM  16             MR. LEACH:  I'D LIKE TO RESPOND TO THE VOIDING POINT

08:46AM  17   FIRST, YOUR HONOR.

08:46AM  18             THE COURT:  SURE.

08:46AM  19             MR. LEACH:  407 APPLIES TO MEASURES.  IT DOESN'T

08:46AM  20   APPLY TO AN INVESTIGATION.  IT DOESN'T APPLY TO YOUR OWN

08:46AM  21   ANALYSIS.  IT DOESN'T APPLY TO INTERNAL THINGS THE COMPANY DOES

08:47AM  22   TO UNDERSTAND ITS PRODUCT, WHICH IS EXACTLY WHAT DR. DAS WAS

08:47AM  23   DOING.

08:47AM  24        WHAT IS LEGALLY REQUIRED IS ONCE DR. DAS FINDS AN ERROR,

08:47AM  25   THERE'S NO DISCRETION UNDER THE CLIA REGS -- I DON'T HAVE IT IN

5691

| | | |
|---|---|---|
| 08:47AM | 1 | FRONT OF ME -- I THINK IT'S 493.1290 OR 80.  I'M SORRY, |
| 08:47AM | 2 | YOUR HONOR, I DON'T HAVE THE CITE IN FRONT OF ME. |
| 08:47AM | 3 |          MR. WADE:  I'M SORRY, COUNSEL, I BELIEVE IT'S |
| 08:47AM | 4 | .1840(A)(6).  IS THAT WHAT YOU'RE REFERRING TO? |
| 08:47AM | 5 |          MR. LEACH:  I STAND CORRECTED. |
| 08:47AM | 6 |      ONCE THE ERROR IS IDENTIFIED, THERE'S NO DISCRETION TO |
| 08:47AM | 7 | VOID THE TEST.  YOU MUST DO THAT.  AND THAT'S THE MEASURE. |
| 08:47AM | 8 | THAT'S THE ACTION. |
| 08:47AM | 9 |      AND SO DR. DAS WILL SAY, AND I THINK THERE IS SOME |
| 08:47AM | 10 | SEMANTICS IN IT FROM THE WITNESS'S POINT OF VIEW, BUT HE'LL |
| 08:47AM | 11 | SAY, AS THE CLIA DIRECTOR, I HAD A RESPONSIBILITY TO GET TO THE |
| 08:47AM | 12 | BOTTOM OF THIS PROBLEM.  I FOUND ERRORS.  ONCE I FOUND THE |
| 08:48AM | 13 | ERROR, I HAD NO CHOICE.  I NEEDED TO VOID THE TESTS. |
| 08:48AM | 14 |      SO THERE'S NO 407 ISSUE. |
| 08:48AM | 15 |      AND EVEN IF THERE WERE, IT GOES TO MS. HOLMES'S OWNERSHIP |
| 08:48AM | 16 | AND CONTROL OF THIS COMPANY.  IT GOES, YOU KNOW, TO ISSUES |
| 08:48AM | 17 | OUTSIDE OF THE LIMITS OF 407. |
| 08:48AM | 18 |      SO I THINK WE HAVE PROFFERED A SUFFICIENT FOUNDATION, OR I |
| 08:48AM | 19 | THINK YOU'LL HEAR THIS FROM DR. DAS WHEN HE SAYS, I HAD NO |
| 08:48AM | 20 | CHOICE BUT TO VOID THESE TESTS ONCE I FOUND THE ERROR. |
| 08:48AM | 21 |      WITH RESPECT TO TYING IT TO MS. HOLMES'S STATE OF MIND, |
| 08:48AM | 22 | YOUR HONOR, THERE'S TWO REASONS WHY IT CONNECTS. |
| 08:48AM | 23 |      FIRST OF ALL, SHE PUSHES BACK.  SHE SAYS, DON'T |
| 08:48AM | 24 | CHARACTERIZE THIS AS A QUALITY SYSTEM -- OR DON'T CHARACTERIZE |
| 08:48AM | 25 | THIS AS AN ACCURACY ISSUE TO CMS, CHARACTERIZE THIS AS A |

5692

| | | |
|---|---|---|
| 08:48AM | 1 | QUALITY SYSTEMS ISSUE. |
| 08:48AM | 2 | AND WHEN SHE TALKS TO LISA PETERSON, SHE AGAIN MINIMIZES |
| 08:48AM | 3 | THE EXTENT OF WHAT DR. DAS IS FINDING.  THAT'S ONE WAY THAT IT |
| 08:48AM | 4 | CONNECTS TO HER STATE OF MIND. |
| 08:49AM | 5 | THE SECOND WAY IT CONNECTS IS THAT FOR ALL OF THE REASONS |
| 08:49AM | 6 | THAT WE TALKED ABOUT WITH THE CMS REPORT, THAT THE DEFENDANT |
| 08:49AM | 7 | HAS INJECTED EVIDENCE, AND THIS IS AT 7653 AND 1052 WHERE |
| 08:49AM | 8 | DOCUMENTS HAVE BEEN OFFERED TO SHOW MS. HOLMES'S STATE OF MIND |
| 08:49AM | 9 | IN 2016 GENERALLY ABOUT THE TECHNOLOGY. |
| 08:49AM | 10 | AND THE FACT THAT THERANOS IS REQUIRED TO VOID THESE TESTS |
| 08:49AM | 11 | IN THIS EXACT SAME TIME PERIOD GOES TO HER OVERALL KNOWLEDGE |
| 08:49AM | 12 | AND STATE OF MIND, WHICH THE DEFENSE HAS PROFFERED AS RELEVANT. |
| 08:49AM | 13 | SO 407 IS A RED HERRING IN THIS CASE.  THEY WERE REQUIRED |
| 08:49AM | 14 | TO DO THIS.  DR. DAS WILL -- TO VOID THE TESTS.  HE WILL SAY |
| 08:49AM | 15 | THAT. |
| 08:49AM | 16 | AND IT GOES DIRECTLY TO THE ACCURACY OF THE TESTS, AND IT |
| 08:49AM | 17 | GOES DIRECTLY TO MS. HOLMES'S STATE OF MIND. |
| 08:49AM | 18 | FOR THAT REASON IT SHOULD COME IN. |
| 08:49AM | 19 | THE COURT:  OKAY.  DID YOU WANT TO SPEAK TO ANY OF |
| 08:49AM | 20 | THE OTHER COMMENTS? |
| 08:49AM | 21 | MR. LEACH:  I DID, YOUR HONOR. |
| 08:50AM | 22 | WITH RESPECT TO THE CONFRONTATION ISSUE, I DON'T THINK |
| 08:50AM | 23 | THAT'S AN ISSUE.  THE CMS REPORT IS NOT TESTIMONIAL, AND, YOU |
| 08:50AM | 24 | KNOW, IT'S NOT PREPARED IN A LAW ENFORCEMENT CONTEXT, SO I |
| 08:50AM | 25 | DON'T THINK THERE'S A CONFRONTATION ISSUE. |

08:50AM 1      THE ENTIRETY OF THE DOCUMENT IS ADMISSIBLE FOR HER STATE

08:50AM 2  OF MIND FOR A NONHEARSAY PURPOSE.

08:50AM 3      AND THEN I THINK IT'S PERFECTLY APPROPRIATE TO SHOW THE

08:50AM 4  DOCUMENT TO DR. DAS -- HE'S INTIMATELY FAMILIAR WITH THIS, THIS

08:50AM 5  WAS A CORE PART OF HIS JOB -- AND TO ASK HIM, DID YOU LOOK AT

08:50AM 6  THIS?  WHAT DID YOU DO?  DID YOU COME TO THE SAME CONCLUSION

08:50AM 7  THAT IS LISTED HERE?

08:50AM 8      HE'S NO MORE OF AN EXPERT IN THAT CONTEXT THAN

08:50AM 9  SARAH BENNETT OR GARY YAMAMOTO ARE WHEN THEY ARE WRITING DOWN

08:50AM 10  THE WORDS.

08:50AM 11      SO THE FACT THAT CMS LOOKED AT THESE DOCUMENTS IN THE

08:50AM 12  FIRST INSTANCE AND REPORTED THE PERCENTAGE CV OR THE NUMBER OF

08:50AM 13  STANDARD DEVIATIONS THAT ARE AWAY, THAT'S THE SAME THING THAT

08:50AM 14  DR. DAS IS LOOKING AND HE'S PERFECTLY COMPETENT TO SAY WAS THAT

08:50AM 15  CONSISTENT OR INCONSISTENT WITH DOCUMENTS THAT YOU WERE LOOKING

08:51AM 16  AT.

08:51AM 17      SO I THINK THAT'S AN APPROPRIATE USE OF THE 2567.  HE CAN

08:51AM 18  AUTHENTICATE IT, HE GOT IT, AND IT'S BEING OFFERED HERE FOR A

08:51AM 19  NONHEARSAY PURPOSE.

08:51AM 20      CERTAINLY WE COULD AUTHENTICATE IT THROUGH SARAH BENNETT

08:51AM 21  OR GARY YAMAMOTO OR ANOTHER CMS WITNESS, BUT I DON'T THINK WE

08:51AM 22  HAVE TO FOR THE PURPOSES THAT WE'RE USING IT WITH FOR DR. DAS.

08:51AM 23      WITH RESPECT TO THE MULTIPLE LAYERS OF HEARSAY, I THINK

08:51AM 24  THIS ISSUE WAS RAISED AND REJECTED AT THE MOTION IN LIMINE

08:51AM 25  STAGE.  BUT I ALSO SUBMIT THAT THE PORTIONS WE'LL BE REFERRING

08:51AM   1    TO WITH DR. DAS, WHICH ARE ON PAGES 45 THROUGH 58 OF THE

08:51AM   2    REPORT, ARE LARGELY THE WITNESS JUST -- OR THE CMS SURVEYOR

08:51AM   3    REPORTING WHAT IS IN DOCUMENTS, NOT RELAYING CONVERSATIONS.

08:51AM   4        BUT I WOULD ALSO ADD, THROUGH THE COURSE OF THIS TRIAL,

08:52AM   5    THE COURT HAS HEARD EVIDENCE ABOUT WHO THE GENERAL SUPERVISOR

08:52AM   6    AND THE TECHNICAL SUPERVISOR AND THE OTHER PEOPLE WITHIN THE

08:52AM   7    LAB ARE.  THESE ARE NOT LOWER LEVEL PERSONNEL, YOU KNOW, IN

08:52AM   8    SOME FACTORY MILES AWAY FROM MS. HOLMES.

08:52AM   9        THESE ARE PEOPLE WHO REPORTED DIRECTLY TO THE LAB DIRECTOR

08:52AM  10    UNDER MS. HOLMES'S AND MR. BALWANI'S SUPERVISION.  SHE KNEW OF

08:52AM  11    THE INSPECTION IN ADVANCE, AND SHE HELD THESE PEOPLE OUT AS

08:52AM  12    BEING COMPETENT AND CAPABLE TO TALK TO THE ISSUES IN THE LAB.

08:52AM  13        SO I DON'T THINK THAT THERE'S A LAYERED HEARSAY ISSUE.

08:52AM  14            THE COURT:  IN EXHIBIT 4 OF YOUR 1133, I THINK YOU

08:52AM  15    HAVE -- EXHIBIT 4 IS -- IT SEEMS LIKE IT'S A SLIDE PRESENTATION

08:52AM  16    THAT MAY HAVE BEEN USED FOR THAT INITIAL MEETING WITH CMS.

08:52AM  17        IS THAT WHAT THAT IS?

08:52AM  18            MR. LEACH:  YES.  AND THAT WAS INTRODUCED BY THE

08:52AM  19    DEFENDANT WITH ONE OF THE LAB WITNESSES.

08:52AM  20            THE COURT:  AND AT THAT INITIAL MEETING WITH CMS AT

08:52AM  21    THE COMPANY, THE LAB PEOPLE THAT YOU JUST MENTIONED WERE

08:53AM  22    PRESENT AND WERE THERE AS REPRESENTATIVES OF THE COMPANY?

08:53AM  23            MR. LEACH:  MANY OF THEM, YES.

08:53AM  24            THE COURT:  ALL RIGHT.  THANK YOU.  I'M SORRY TO

08:53AM  25    INTERRUPT YOU.

08:53AM 1      GO AHEAD.

08:53AM 2           MR. LEACH:  WITH RESPECT TO DR. DAS AND THE 701 AND

08:53AM 3      702 ISSUE, AGAIN, I THINK THIS WAS -- NOTHING HAS CHANGED SINCE

08:53AM 4      THE COURT'S ORDER IN 989.

08:53AM 5           DR. DAS IS TALKING ABOUT WHAT HE SAW, HEARD, AND DID IN

08:53AM 6      HIS JOB, AND THE CONCLUSIONS THAT HE COMMUNICATED DIRECTLY TO

08:53AM 7      THE DEFENDANT.  HE'S PROVIDING TESTIMONY DIRECTLY IN LINE WITH

08:53AM 8      WHAT THE COURT HAS HEARD FROM DR. ROSENDORFF.

08:53AM 9           HE HAPPENS TO HAVE AN M.D., BUT HE'S -- YOU KNOW, WE'RE

08:53AM 10     NOT ASKING HIM TO REVIEW SOMETHING THAT IS OUTSIDE OF THE

08:53AM 11     COURSE OF HIS DUTIES.  HE'S TALKING ABOUT WHAT HE SAW, HEARD,

08:53AM 12     AND DID IN HIS JOB AND COMMUNICATED TO MS. HOLMES, AND THAT'S

08:53AM 13     CLASSIC PERCIPIENT WITNESS TESTIMONY.

08:54AM 14          UNLESS THE COURT HAS FURTHER QUESTIONS, I THINK THAT'S --

08:54AM 15               THE COURT:  NO.  THANK YOU.  THANK YOU.

08:54AM 16               MR. WADE:  YOUR HONOR, IF I COULD MAYBE START WITH

08:54AM 17     THE LAST POINT, WHAT HE SAW, HEARD, AND COMMUNICATED TO

08:54AM 18     MS. HOLMES, I JUST WANT TO MAKE SURE THAT HIS CONCLUSION THAT

08:54AM 19     HE 100 PERCENT AGREED WITH WHAT WAS IN THE CMS REPORT MEETS THE

08:54AM 20     THRESHOLD STANDARD THAT THE GOVERNMENT JUST SAID BEFORE THEY

08:54AM 21     OFFER IT AND IT SPILLS OUT IN FRONT OF THIS JURY, BECAUSE

08:54AM 22     THAT'S THE PART THAT CONCERNS ME.  I HAVEN'T SEEN ANY EVIDENCE

08:54AM 23     TO THAT EFFECT, THAT IT MAY BE A LITTLE BIT OF RETROSPECTIVE

08:54AM 24     ANALYSIS OR CONCLUSIONS AFTER, YOU KNOW, THE COURSE OF DEALING.

08:54AM 25          SO ON THE EXPERT ISSUE, THAT'S WHAT CONCERNS US THE MOST.

08:54AM 1      WITH RESPECT TO THE CMS REPORT, THE GOVERNMENT HAS SAID

08:54AM 2   THAT THIS IS EVIDENCE OF WHETHER THE TESTS WERE ACCURATE AND

08:54AM 3   RELIABLE.  THEY'VE MADE THAT REPRESENTATION TO THE COURT IN

08:54AM 4   NUMEROUS WRITTEN SUBMISSIONS TO THIS COURT.

08:54AM 5      THEY ALSO SAID THAT WE HAVE THE ABILITY TO CONFRONT THAT

08:55AM 6   EVIDENCE BY CROSS-EXAMINING THE AUTHORS OF THE REPORT.

08:55AM 7      NOW THEY'RE SAYING -- NOW THEY'RE KIND OF PIVOTING AND

08:55AM 8   SAYING IT'S SOMEHOW RELEVANT TO THE STATE OF MIND OF OUR

08:55AM 9   CLIENT, WHICH IS A RATIONALE THAT I DON'T FULLY UNDERSTAND, BUT

08:55AM 10  IT CERTAINLY --

08:55AM 11            THE COURT:  IT COULD BE BOTH.

08:55AM 12            MR. WADE:  IT COULD CONCEIVABLY BE BOTH, BUT THERE'S

08:55AM 13  CERTAIN LIMITATIONS ON THE USE OF THE DOCUMENT AND A FOUNDATION

08:55AM 14  THAT IS REQUIRED IF THEY'RE OFFERING IT JUST FOR THE STATE OF

08:55AM 15  MIND OF THE CLIENT.

08:55AM 16      AND THEN THAT WILL GO INTO WHETHER IT'S ACTUALLY RELEVANT

08:55AM 17  TO THE CASE, AND THOSE ARE MR. LOOBY'S ISSUES WITH RESPECT TO

08:55AM 18  PARTICULAR ITEMS.

08:55AM 19      BUT THE ABILITY TO CONFRONT THAT EVIDENCE AND TO AVOID THE

08:55AM 20  CONFUSION THAT IS NECESSARY AS A RESULT OF THAT DOCUMENT

08:55AM 21  REMAINS.  THE ENTIRE LITIGATION RECORD REMAINS.

08:55AM 22      THE NEED TO CONFRONT THE MULTIPLE LAYERS OF HEARSAY

08:56AM 23  REMAINS, AND THE GOVERNMENT HAS CONSISTENTLY SAID TO THIS

08:56AM 24  COURT, THE REMEDY TO THAT IS CROSS-EXAMINATION.  LET IT IN,

08:56AM 25  PLEASE LET IT IN, THE REMEDY IS CROSS-EXAMINATION.

5697

| | | |
|---|---|---|
| 08:56AM | 1 | THE COURT AGREED TO LET IT IN, AND NOW THEY WANT TO SHIFT |
| 08:56AM | 2 | THE TABLE A LITTLE BIT AND PREVENT US FROM FAIRLY CONFRONTING |
| 08:56AM | 3 | THAT EVIDENCE. |
| 08:56AM | 4 | THE COURT:  BUT IF A WITNESS, AS I ASKED YOU |
| 08:56AM | 5 | EARLIER, IF ONE OF THE WITNESSES THAT YOU IDENTIFIED, |
| 08:56AM | 6 | MR. YAMAMOTO OR MS. BENNETT OR ANOTHER PERSON TESTIFIES, THEN |
| 08:56AM | 7 | YOU'LL HAVE THE OPPORTUNITY TO CROSS-EXAMINE. |
| 08:56AM | 8 | MR. WADE:  EXACTLY. |
| 08:56AM | 9 | THE COURT:  OKAY. |
| 08:56AM | 10 | MR. WADE:  WE, WE -- AND I HAVEN'T HEARD THE |
| 08:56AM | 11 | GOVERNMENT REPRESENT THAT YET. |
| 08:56AM | 12 | BUT THE -- THOSE CONCERNS WOULD ADDRESS THAT. |
| 08:56AM | 13 | WE STILL THINK, AS A MATTER OF FAIRNESS, THAT SHOULD COME |
| 08:56AM | 14 | FIRST, FOR THE DOCUMENT TO COME IN SO THE JURY UNDERSTANDS IT. |
| 08:56AM | 15 | THE COURT:  SURE.  I UNDERSTAND THE LOGIC OF THAT. |
| 08:56AM | 16 | I THINK I CAN SEE THAT.  SURE, OKAY. |
| 08:56AM | 17 | MR. WADE:  THE -- WITH RESPECT TO THE VOIDING ISSUE, |
| 08:56AM | 18 | YOUR HONOR, THE REGULATION THAT THE GOVERNMENT POINTED TO, |
| 08:57AM | 19 | WHICH IS 42 CFR 493.1840, WHICH IS WITHIN TRIAL EXHIBIT 7603, |
| 08:57AM | 20 | WHICH I BELIEVE THE COURT HAS ABOUT SEVEN COPIES UP THERE IN |
| 08:57AM | 21 | ITS BINDER, THAT REGULATION DOES NOT ACTUALLY ADDRESS THE -- |
| 08:57AM | 22 | I'M SORRY.  IT MIGHT BE -- I'M REFERRING TO A DIFFERENT |
| 08:57AM | 23 | REGULATION.  I APOLOGIZE.  I'LL CORRECT THE CITE IN A SECOND. |
| 08:57AM | 24 | THAT RELATES TO THE NEXT POINT THAT I WANTED TO RAISE. |
| 08:57AM | 25 | THE REGULATION THAT THE GOVERNMENT HAS POINTED TO, WHICH |

5698

| | | |
|---|---|---|
| 08:57AM | 1 | CAME OUT, I BELIEVE, FOR THE FIRST TIME IN AN INTERVIEW WITH |
| 08:57AM | 2 | DR. DAS LAST NIGHT, IS A REGULATION THAT RELATES TO IF YOU FIND |
| 08:57AM | 3 | AN ERROR IN A LAB REPORT, YOU HAVE AN OBLIGATION TO CORRECT |
| 08:58AM | 4 | THAT ERROR. |
| 08:58AM | 5 | THAT'S NOT WHAT HAPPENED HERE FOR THE MOST PART. |
| 08:58AM | 6 | THEY CORRECTED ISSUES IN AN ABUNDANCE OF CAUTION BECAUSE |
| 08:58AM | 7 | OF CONCERNS THAT THEY IDENTIFIED AS A RESULT OF THIS.  THAT |
| 08:58AM | 8 | PROVISION DOESN'T RELATE TO VOIDING OF TEST RESULTS, IT RELATES |
| 08:58AM | 9 | TO THE CORRECTION OF A KNOWN ERROR THAT IS IDENTIFIED. |
| 08:58AM | 10 | HERE, IN AN ABUNDANCE OF CAUTION, BECAUSE OF CONCERNS THAT |
| 08:58AM | 11 | THEY IDENTIFIED AND TO MAKE CLEAR THAT THE PATIENT SHOULD NOT |
| 08:58AM | 12 | RELY UPON THESE RESULTS, THEY SAID, WE'RE GOING TO VOID THE |
| 08:58AM | 13 | RESULTS AND GIVE NOTICE TO DOCTORS AND PATIENTS OF THAT. |
| 08:58AM | 14 | THAT'S NOT THE LEGAL REQUIREMENT, AND -- |
| 08:58AM | 15 | THE COURT:  IS THIS FODDER FOR CROSS-EXAMINATION OF |
| 08:58AM | 16 | DR. DAS? |
| 08:58AM | 17 | MR. WADE:  WELL, IT'S A -- |
| 08:58AM | 18 | THE COURT:  CAN'T YOU ASK HIM, YOU DID THE WRONG |
| 08:58AM | 19 | THING?  YOU DIDN'T HAVE TO DO THAT?  IS THAT YOUR |
| 08:58AM | 20 | CROSS-EXAMINATION? |
| 08:58AM | 21 | MR. WADE:  I THINK IT'S A THRESHOLD ISSUE AS TO |
| 08:58AM | 22 | WHETHER THE EXAMINATION COMES IN AT ALL, THAT'S THE POINT. |
| 08:59AM | 23 | BECAUSE UNDER 407 IT SHOULDN'T COME IN IF IT IS A |
| 08:59AM | 24 | SUBSEQUENT REMEDIAL MEASURE. |
| 08:59AM | 25 | AND IF THE -- DR. DAS CAME IN AND MADE VERY CLEAR THAT IN |

08:59AM   1    THE RESPONSE WE WANT TO BE CONSERVATIVE.  THERE WAS A LOT OF

08:59AM   2    DISCUSSION BACK AND FORTH ABOUT THE APPROACH THAT SHOULD BE

08:59AM   3    TAKEN.  THERE ARE DIFFERENT OPTIONS ON THE TABLE, AND THEY

08:59AM   4    DECIDED TO TAKE WHAT DR. DAS DESCRIBED AS A CONSERVATIVE

08:59AM   5    APPROACH.

08:59AM   6         AND CONTRARY TO THE SUGGESTION OF THE GOVERNMENT, THAT WAS

08:59AM   7    SUPPORTED BY MY CLIENT, BUT IT WASN'T REQUIRED.

08:59AM   8         AND SO THAT'S HOW WE, THAT'S HOW WE END UP IN 407.  IT WAS

08:59AM   9    A MATTER OF DISCRETION.  IT WAS A REMEDIAL MEASURE.

08:59AM   10        WITH APOLOGIES FOR THE CONFUSION ON THE REGULATION, IT

09:00AM   11   RELATES TO ONE OTHER ISSUE, WHICH IS SOMETHING THAT MR. LEACH

09:00AM   12   TOUCHED UPON, WHICH, AGAIN, I BELIEVE CAME OUT IN INTERVIEWS

09:00AM   13   LAST NIGHT.

09:00AM   14        THERE'S SOME INDICATION THAT THE GOVERNMENT WANTS TO

09:00AM   15   SUGGEST THAT AN OWNER OR OPERATOR WHO AIDED AND ABETTED IN THE

09:00AM   16   VIOLATION OF CLIA OR A CLIA REGULATION CAN BE LIABLE.  THAT'S

09:00AM   17   THE PROVISION THAT I MENTIONED BY MISTAKE JUST A SECOND AGO,

09:00AM   18   WHICH IS 493.1840(A)(6).

09:00AM   19        THAT IS NOT THE PROVISION.  THE PROVISION FOR AIDING AND

09:00AM   20   ABETTING THE VIOLATION IS NOT THE PROVISION THAT WAS INVOKED IN

09:01AM   21   THE IMPOSITION OF PENALTIES IN THIS CASE.

09:01AM   22        THERE WAS A REVOCATION OF THE LICENSE IN THIS CASE.  THERE

09:01AM   23   WAS NO FINDING THAT MS. HOLMES AIDED AND ABETTED AS AN OWNER IN

09:01AM   24   THIS, AND I, I -- THAT WOULD BE AN EXTREMELY PREJUDICIAL

09:01AM   25   STATEMENT TO INJECT IN THIS CASE, AND I BELIEVE AN ERRONEOUS

09:01AM 1    ONE BASED UPON CMS.  IT JUST CAME UP FOR THE FIRST TIME LAST

09:01AM 2    NIGHT SO I WANTED --

09:01AM 3              THE COURT:  THIS RELATES TO THE 3217, I THINK,

09:01AM 4    DOESN'T IT?

09:01AM 5              MR. WADE:  IT MAY, YES, YOUR HONOR.

09:01AM 6              THE COURT:  AND THAT'S THE -- THAT IS THE DOCUMENT

09:01AM 7    THAT IS THE PENALTY DOCUMENT, IT'S THE JULY 7, 2016, IMPOSITION

09:01AM 8    OF SANCTIONS?

09:01AM 9              MR. WADE:  CORRECT.

09:01AM 10             THE COURT:  AND I THINK WE'RE GOING TO HAVE A

09:01AM 11   SEPARATE CONVERSATION ABOUT THAT.

09:01AM 12         AND YOUR ARGUMENT ON THAT, I THINK, IS 403?  THAT'S WHAT

09:01AM 13   YOU TOLD ME PREVIOUSLY, I THINK.

09:01AM 14             MR. WADE:  YEAH, CERTAINLY WITH RESPECT TO SOME OF

09:02AM 15   THE ULTIMATE CONCLUSIONS WITHIN THAT, WITHIN THAT DOCUMENT,

09:02AM 16   YES.

09:02AM 17             THE COURT:  SURE.  SURE.

09:02AM 18             MR. WADE:  AND IT RELATES TO IT, BUT IT'S SLIGHTLY

09:02AM 19   DIFFERENT.

09:02AM 20         EVEN THERE THE PROPOSED REVOCATION, WHICH ULTIMATELY WAS

09:02AM 21   NOT OF MY CLIENT'S ABILITY TO OPERATE A CLIA LAB, WAS NOT BASED

09:02AM 22   UPON THE PROVISION OF AIDING AND ABETTING A CLIA VIOLATION.

09:02AM 23   THERE'S NO EVIDENCE OF THAT IN THE RECORD.

09:02AM 24         THE GOVERNMENT APPEARS TO HAVE FOUND THAT REGULATION AND

09:02AM 25   PUT IT IN FRONT OF A COUPLE OF WITNESSES RECENTLY, AND I FEAR

09:02AM  1    THAT THEY'RE GOING TO TRY TO OBTAIN TESTIMONY IN CONNECTION

09:02AM  2    WITH THAT WHEN THAT WAS NOT -- THAT IS NOT IN THIS RECORD, AND

09:02AM  3    OBVIOUSLY IT WOULD BE EXTREMELY PREJUDICIAL, AND IT WOULD

09:02AM  4    CLEARLY BE AN EXPERT OPINION IF, IF -- GIVEN THAT DOCTOR --

09:02AM  5    THIS WAS NOWHERE IN DR. DAS'S SPHERE OF INFLUENCE.

09:02AM  6         SO I WANTED TO RAISE -- THAT'S AN IMPORTANT ISSUE FOR THE

09:02AM  7    DEFENSE AND A NEW ISSUE, AND I WANTED TO RAISE THAT AS WELL.

09:02AM  8              THE COURT:  OKAY.

09:03AM  9              MR. LEACH:  IF I COULD RESPOND BRIEFLY, YOUR HONOR,

09:03AM  10   BECAUSE I THINK THERE ARE TWO VERY DIFFERENT ISSUES, AND I

09:03AM  11   THINK ON THAT SECOND ISSUE I MIGHT BE ABLE TO CLEAR UP SOME OF

09:03AM  12   THE DEFENSE'S CONCERN.

09:03AM  13        WITH RESPECT TO THE VOIDING, DR. DAS IS THE AUTHORITY ON

09:03AM  14   THIS.  HE WAS THE LAB DIRECTOR AT THE TIME.  AND 407 APPLIES TO

09:03AM  15   VOLUNTARY MEASURES WHERE A COMPANY ON ITS OWN IN A MATTER OF

09:03AM  16   BEING CONSERVATIVE DECIDES TO DO SOMETHING.

09:03AM  17        HERE UNDER SERIOUS THREAT OF REGULATORY PRESSURE FROM CMS,

09:03AM  18   DR. DAS CONCLUDED THAT THERE WERE ERRORS IN THE TESTS.  ONCE HE

09:03AM  19   CONCLUDED THAT, AND I NOW HAVE THE RIGHT CITE, 493.1291,

09:03AM  20   REQUIRED HIM TO CORRECT THOSE REPORTS AND NOTIFY THE PATIENTS.

09:03AM  21        THE FACT THAT I CAN'T CORRECT THE REPORT TO SAY A VALUE IS

09:03AM  22   Y INSTEAD OF X AND INSTEAD WHOLESALE VOIDS IT IS NEITHER HERE

09:03AM  23   NOR THERE.

09:04AM  24        HE WILL NOT SAY THIS WAS OUT OF AN ABUNDANCE OF CAUTION.

09:04AM  25   HE WILL SAY I -- MY RESPONSIBILITIES AS THE CLIA LAB DIRECTOR

5702

09:04AM 1    CAUSED ME TO INVESTIGATE THESE, I FOUND THESE ERRORS, I WAS

09:04AM 2    REQUIRED TO VOID THEM.

09:04AM 3         HE'S NOT GOING TO SAY THIS WAS OUT OF AN ABUNDANCE OF

09:04AM 4    CAUTION.

09:04AM 5         407 APPLIES TO MEASURES, NOT THE INTERNAL ANALYSIS.  I

09:04AM 6    THINK I'VE TOUCHED ON THAT POINT.

09:04AM 7         SO I REALLY THINK THERE'S NO 407 ISSUE AND THIS REALLY

09:04AM 8    TIES TO HER STATE OF MIND.

09:04AM 9         WITH RESPECT TO THE SECOND ISSUE, WE HAVE IN EVIDENCE

09:04AM 10   7603, A HUNDRED PAGES OF CLIA REGULATIONS, AND THE DEFENSE HAS

09:04AM 11   USED THESE CLIA REGULATIONS WITH THE LAB DIRECTOR TO SUGGEST

09:04AM 12   THAT THE BUCK STOPS WITH THE LAB DIRECTOR AND NOBODY ELSE.

09:04AM 13   THIS IS YOUR RESPONSIBILITY AND NOBODY ELSE'S, NOTHING BAD

09:04AM 14   COULD EVER HAPPEN TO THE OWNER OR OPERATOR OF A LAB.

09:05AM 15        ALL WE'VE DONE WITH THE WITNESSES, INCLUDING DR. DAS'S

09:05AM 16   INTERVIEWS AND MS. BENNETT IN INTERVIEWS, IS GO THROUGH THE

09:05AM 17   SAME EXHIBIT THAT IS ALREADY IN EVIDENCE AND NOTE THAT THERE

09:05AM 18   ARE PROVISIONS WHERE OWNERS AND OPERATORS CAN FACE

09:05AM 19   CONSEQUENCES, AND NOTHING MORE.  AND IT'S ESSENTIALLY TO REBUT

09:05AM 20   THE SUGGESTION THAT THE ONLY PERSON WITH RESPONSIBILITY HERE,

09:05AM 21   OR POTENTIAL RESPONSIBILITY, IS THE LAB DIRECTOR.

09:05AM 22        WE HAVE NEVER ASKED THESE WITNESSES, DID ELIZABETH HOLMES

09:05AM 23   AID AND ABET A VIOLATION OF THE CLIA REGULATIONS?  IT IS NOT

09:05AM 24   OUR INTENTION TO ASK THAT.

09:05AM 25        BUT THE GOVERNMENT DOES WANT TO REBUT THE FALSE SUGGESTION

5703

| | | |
|---|---|---|
| 09:05AM | 1 | THAT OWNERS AND OPERATORS OF LABORATORIES HAVE, YOU KNOW, |
| 09:05AM | 2 | NOTHING TO FEAR FROM A CLIA INSPECTION OR HAVE NO POSSIBLE |
| 09:05AM | 3 | EXPOSURE AT THE END OF THE DAY BECAUSE I THINK THE DEFENSE HAS |
| 09:05AM | 4 | CREATED A PICTURE THAT IT'S THE LAB DIRECTOR AND NOBODY ELSE, |
| 09:05AM | 5 | AND UNDER THE EVIDENCE THAT THEY HAVE SUBMITTED THAT'S JUST NOT |
| 09:05AM | 6 | THE CASE. |
| 09:05AM | 7 | THE COURT:  THERE HAS BEEN TESTIMONY. |
| 09:06AM | 8 | DR. ROSENDORFF WAS ON THE STAND FOR A LENGTHY PERIOD OF TIME. |
| 09:06AM | 9 | AND I THINK THE CROSS-EXAMINATION AT LEAST FOCUSSED A |
| 09:06AM | 10 | SIGNIFICANT DEAL ON, AS MR. LEACH JUST SAID, YOU WERE |
| 09:06AM | 11 | RESPONSIBLE, YOU WERE ULTIMATELY RESPONSIBLE. |
| 09:06AM | 12 | YOU WENT THROUGH THE REGULATIONS WITH HIM, MR. WADE, AND |
| 09:06AM | 13 | OTHERS, I THINK MAYBE DHAWAN AS WELL, PARDON ME, DR. DHAWAN. |
| 09:06AM | 14 | SO IT SEEMS LIKE IT'S RELEVANT FOR SOME ISSUE AS TO THAT, JUST |
| 09:06AM | 15 | AS A, NOT NECESSARILY REBUTTAL, BUT JUST TO PRESENT ANOTHER |
| 09:06AM | 16 | POSSIBILITY TO THE JURY. |
| 09:06AM | 17 | MR. WADE:  JUST SO WE'RE CLEAR, I DON'T ACTUALLY |
| 09:06AM | 18 | THINK -- I DON'T THINK THAT WE WERE MISREPRESENTING ANYTHING. |
| 09:06AM | 19 | ULTIMATELY -- |
| 09:06AM | 20 | THE COURT:  NO, NO, I DIDN'T SAY THAT. |
| 09:06AM | 21 | MR. WADE:  NO, I KNOW THE COURT WASN'T, BUT COUNSEL |
| 09:06AM | 22 | WAS.  SO I JUST WANT TO MAKE SURE THAT THE RECORD IS CLEAR AND |
| 09:06AM | 23 | WHY THIS SPECIFIC PROVISION OF AIDING AND ABETTING A VIOLATION, |
| 09:07AM | 24 | WHICH IS THE SPECIFIC SUB PROVISION THAT THE GOVERNMENT POINTED |
| 09:07AM | 25 | THE WITNESS TO, IS NOT APPROPRIATE HERE. |

| | | |
|---|---|---|
| 09:07AM | 1 | THE COURT:  IS THAT PART OF THE -- IS THIS |
| 09:07AM | 2 | REGULATION PART OF THE EVIDENCE THAT YOU -- THAT WAS SUBMITTED |
| 09:07AM | 3 | THAT IS ADMITTED IN THE CASE? |
| 09:07AM | 4 | MR. LEACH:  YES. |
| 09:07AM | 5 | MR. WADE:  IT IS PART OF 7603. |
| 09:07AM | 6 | THE COURT:  RIGHT.  WELL, IF IT IS IN EVIDENCE, |
| 09:07AM | 7 | CAN'T HE CALL ATTENTION TO IT NOW AND SAY WHAT DID THIS SAY? |
| 09:07AM | 8 | IT SEEMS LIKE IT'S FAIR GAME NOW IF IT'S IN EVIDENCE. |
| 09:07AM | 9 | MR. WADE:  WELL, YOUR HONOR, HE CAN CALL ATTENTION |
| 09:07AM | 10 | TO IT, BUT CREATING THE IMPRESSION IN FRONT OF THIS JURY, |
| 09:07AM | 11 | AGAIN, WITH ALL OF THIS CONFUSION AROUND WHAT IS ALL OF THIS |
| 09:07AM | 12 | CMS STUFF AND WHAT DOES IT MEAN AND IT'S A CIVIL VIOLATION. |
| 09:07AM | 13 | THE COURT:  RIGHT. |
| 09:07AM | 14 | MR. WADE:  AND THE CONCERNS ABOUT WHETHER SOMEONE |
| 09:07AM | 15 | CAN BE CONVICTED AS A RESULT OF THIS.  THE PROVISION THAT |
| 09:07AM | 16 | THEY'RE POINTING TO HAS NOTHING TO DO WITH THIS CASE.  THERE |
| 09:07AM | 17 | WAS NO FINDING, ET CETERA. |
| 09:07AM | 18 | ALL OF THE PROVISIONS THAT I HAVE POINTED WITNESSES TO |
| 09:07AM | 19 | WERE THE GUIDING REGULATIONS THAT THEY ADMITTED, EACH AND EVERY |
| 09:08AM | 20 | ONE OF THEM ARE WHAT FRAMED THEIR OBLIGATIONS FOR ACTING WITHIN |
| 09:08AM | 21 | THE LABORATORY. |
| 09:08AM | 22 | I'VE NEVER SUGGESTED THAT THERE'S NO POSSIBILITY OF |
| 09:08AM | 23 | PENALTIES TO AN OWNER OF THE LAB.  WE'VE NEVER SUGGESTED THAT. |
| 09:08AM | 24 | THERE IS.  THEY CAN HAVE THEIR STATUS.  IF YOU OWN MORE THAN |
| 09:08AM | 25 | 5 PERCENT, THEY CAN HAVE THE STATUS REVOKED. |

09:08AM  1      THAT DOES NOT MEAN THAT THEY HAVE AN AFFIRMATIVE

09:08AM  2  OBLIGATION TO STEP IN AND OVERRULE A LAB DIRECTOR.

09:08AM  3      IN FACT, THE GOVERNMENT HAS ARGUED THE OPPOSITE.  IF THE

09:08AM  4  OWNER WERE TO STEP IN, AND ISN'T QUALIFIED, AND OVERRULES THE

09:08AM  5  LAB DIRECTOR, THAT WOULD BE A DIFFERENT KIND OF PROBLEM.

09:08AM  6      SO TO CREATE THE IMPRESSION THAT THERE IS SOME VIOLATION

09:08AM  7  FOR AIDING AND ABETTING HERE WHEN THERE IS NO SUGGESTION OF

09:08AM  8  THAT AT ALL IN THIS RECORD IS INCREDIBLY PREJUDICIAL.

09:08AM  9      THE COURT:  WELL, I UNDERSTAND THAT, BUT I DO THINK

09:08AM 10  THAT THERE MIGHT BE SOME BALANCE HERE.  THE CROSS-EXAMINATION,

09:08AM 11  THE VIGOROUS CROSS-EXAMINATION THAT YOU ENGAGED IN WITH THE TWO

09:08AM 12  PRIOR LAB DIRECTORS WERE VERY FOCUSSED ON INDICATING YOU, YOU,

09:08AM 13  YOU, YOU, YOU'RE RESPONSIBLE, YOU'RE RESPONSIBLE, ULTIMATELY

09:09AM 14  YOU'RE RESPONSIBLE.

09:09AM 15      YOU HAD -- DR. ROSENDORFF SAID THAT SEVERAL TIMES IN YOUR

09:09AM 16  CROSS-EXAMINATION AND AS DID DR. DHAWAN.  MAYBE IT DOESN'T HAVE

09:09AM 17  TO COME IN AS YOU SUGGEST AS MR. LEACH WON'T BE PERMITTED TO

09:09AM 18  SAY, WELL, SHE'S POTENTIALLY LIABLE AS A COCONSPIRATOR, OR

09:09AM 19  WHATEVER UNDER THAT, I CAPTURE THAT.

09:09AM 20      BUT IT SEEMS LIKE THERE SHOULD BE SOME BALANCING ABOUT

09:09AM 21  THAT ONE POINTING OUT THAT YOU ULTIMATELY WERE RESPONSIBLE.

09:09AM 22      WELL, THE CODE ALLOWS FOR RESPONSIBILITY OF THE OWNER, OR

09:09AM 23  SOMEBODY ELSE, BUT THAT'S NOT AN ISSUE IN THE CASE.  BUT JUST

09:09AM 24  TO SOFTEN THE BLOW, I SUPPOSE, OF WHAT YOU'VE SAID, IT SEEMS

09:09AM 25  LIKE THERE'S A BALANCE THAT CAN BE REACHED IN THAT.

| | | |
|---|---|---|
| 09:09AM | 1 | MR. WADE:  WE'LL SEE WHAT THE GOVERNMENT SUGGESTS. |
| 09:09AM | 2 | TO THE EXTENT THAT THEY TRY TO CREATE SOME IMPLICATION |
| 09:09AM | 3 | THAT IT IS A FALSE ONE, THAT OUR CLIENT AIDED AND ABETTED A |
| 09:10AM | 4 | CLIA VIOLATION, THAT WOULD BE EXTRAORDINARILY PREJUDICIAL. |
| 09:10AM | 5 | THE COURT:  RIGHT.  WELL, I DON'T THINK MR. LEACH IS |
| 09:10AM | 6 | GOING TO DO THAT.  I DON'T THINK HE'S GOING TO SAY THAT SHE'S |
| 09:10AM | 7 | ALSO AIDING AND ABETTING. |
| 09:10AM | 8 | THAT'S NOT PART OF THE CASE, IS IT, MR. LEACH? |
| 09:10AM | 9 | MR. LEACH:  IT IS NOT, YOUR HONOR, BUT THE |
| 09:10AM | 10 | POSSIBILITY OF THE SANCTIONS FOR AN OWNER AND OPERATOR OF THE |
| 09:10AM | 11 | LAB DIRECTOR ARE IN EVIDENCE HERE AND IT NEGATES, ON SOME |
| 09:10AM | 12 | LEVEL, THAT THE BUCK STOPS WITH THE LAB DIRECTOR. |
| 09:10AM | 13 | BUT I WILL NOT IN ANY WAY SUGGEST THAT MS. HOLMES AIDED |
| 09:10AM | 14 | AND ABETTED A VIOLATION. |
| 09:10AM | 15 | THE COURT:  RIGHT. |
| 09:10AM | 16 | MR. WADE:  YOUR HONOR, IF I MIGHT PASS UP THE |
| 09:10AM | 17 | GOVERNMENT'S SUBMISSION WITH RESPECT TO DR. DAS ON THIS VOIDING |
| 09:10AM | 18 | ISSUE DID NOT INCLUDE AN MOI FROM LAST FRIDAY.  IF I MIGHT PASS |
| 09:10AM | 19 | THAT UP. |
| 09:10AM | 20 | THE COURT:  SURE. |
| 09:10AM | 21 | MR. WADE:  (HANDING.) |
| 09:10AM | 22 | JUST SO THAT THE COURT HAS IT, BECAUSE THERE HAVE BEEN |
| 09:10AM | 23 | REPRESENTATIONS IN THE PLEADINGS AND BY COUNSEL.  IF THE COURT |
| 09:11AM | 24 | TURNS TO PAGE 3 OF THIS, AND THE SECOND PARAGRAPH ON PAGE 3 |
| 09:11AM | 25 | NOTES, "THE DECISION TO VOID CERTAIN TESTS WAS MADE SOME TIME |

09:11AM  1    IN MARCH 2016.  DAS INITIALLY SAID THAT HIS DECISION TO VOID

09:11AM  2    THE TEST WAS VOLUNTARY, BUT CLARIFIED THAT IT WOULD HAVE BEEN

09:11AM  3    INCORRECT NOT TO DO SO.  BASED ON HIS REVIEW OF DATA, IT WAS

09:11AM  4    NECESSARY TO VOID THE TEST."

09:11AM  5         AGAIN, THIS DOESN'T GO TO -- THIS GOES TO A MATTER OF

09:11AM  6    DISCRETION.  THERE'S SOME AMBIGUITY THERE, AND THIS

09:11AM  7    DEMONSTRATES IT, AND THIS IS WHY WE SUGGESTED VOIR DIRING THE

09:11AM  8    WITNESS OUTSIDE THE JURY JUST TO CLARIFY BECAUSE I DON'T THINK

09:11AM  9    IT'S QUITE AS CLEAR AS THE GOVERNMENT IS SUGGESTING WITH

09:11AM  10   RESPECT.

09:11AM  11        THE COURT:  AND YOU THINK VOIR DIRE ON THIS

09:11AM  12   PARTICULAR ISSUE AS TO WHETHER OR NOT THIS WITNESS FELT IT WAS

09:11AM  13   VOLUNTARY OR HE HAD AN OBLIGATION, IS THAT WHAT YOU WANT TO

09:11AM  14   CLEAR UP?

09:11AM  15        MR. WADE:  YEAH.  WAS THERE A LEGAL OBLIGATION OR

09:11AM  16   WAS IT A VOLUNTARY DISCRETIONARY ACT THAT HE TOOK TO BE

09:11AM  17   CONSERVATIVE IN AN ABUNDANCE OF CAUTION?

09:12AM  18        THE COURT:  WOULD THAT BE A FOUNDATIONAL QUESTION

09:12AM  19   THAT MR. LEACH COULD ASK HIM BEFORE THE TESTIMONY?

09:12AM  20        MR. WADE:  I SUPPOSE.

09:12AM  21        THE COURT:  MR. LEACH?

09:12AM  22        MR. LEACH:  THAT'S AN APPROPRIATE APPROACH.  I DON'T

09:12AM  23   THINK WE'RE REQUIRED TO DO THAT, BUT WE'RE HAPPY TO DO THAT.

09:12AM  24        AND I WOULD POINT THE COURT TO THE ENTIRETY OF THE

09:12AM  25   PARAGRAPH FROM THE MOI --

5708

09:12AM 1                    THE COURT:  INVOKING 106, MR. WADE.

09:12AM 2                    MR. WADE:  RULE OF COMPLETENESS.

09:12AM 3                    THE COURT:  YES.

09:12AM 4                    MR. LEACH:  I THINK A FAIR UNDERSTANDING OF WHAT

09:12AM 5      DR. DAS WAS SAYING HERE IS THAT WHEN I'M -- AS THE LAB

09:12AM 6      DIRECTOR, I'M COMPELLED TO LOOK AT ISSUES, AND WHEN I'M LOOKING

09:12AM 7      AT ISSUES I COULD GO EITHER WAY.  BUT ONCE I FIND THE ERROR, I

09:12AM 8      MUST VOID.  THAT'S THE TENOR OF WHAT THE COURT WILL HEAR.

09:12AM 9                    THE COURT:  OKAY.  I APPRECIATE ONE AVENUE TO

09:12AM 10     RESOLVE THIS IS A VOIR DIRE OF THE WITNESS, BUT IT SEEMS LIKE

09:12AM 11     IT'S A FOUNDATIONAL QUESTION ALSO THAT AT LEAST YOU PUT

09:13AM 12     MR. LEACH ON NOTICE AND YOU PUT ME ON NOTICE ABOUT, AND THAT

09:13AM 13     MIGHT BE THE MOST EFFICIENT WAY TO GO.

09:13AM 14                   MR. WADE:  I THINK WE STILL HAVE, YOUR HONOR, THE

09:13AM 15     PARTICULAR ASPECTS OF THE CMS REPORT.

09:13AM 16                   THE COURT:  RIGHT.  I KNOW MR. LOOBY HAS BEEN

09:13AM 17     SCRATCHING HIS FEET BACK THERE AND HE WANTS TO GET UP HERE.

09:13AM 18                   MR. WADE:  AND THE REDACTIONS OF THOSE LATER

09:13AM 19     EXHIBITS.

09:13AM 20                   THE COURT:  YES.  WELL, THAT'S THE QUESTION THAT I

09:13AM 21     HAVE ABOUT THESE REDACTIONS.

09:13AM 22                MR. LOOBY, GOOD MORNING.

09:13AM 23                   MR. LOOBY:  GOOD MORNING.  THANK YOU, YOUR HONOR.

09:13AM 24                SO YOUR HONOR WILL RECALL THAT THE COURT'S ORDER AT

09:13AM 25     DOCKET 989 ON THE DEFENSE'S PRETRIAL MOTIONS ORDERED THE

5709

| | |
|---|---|
| 09:13AM | 1 |
| 09:13AM | 2 |
| 09:13AM | 3 |
| 09:13AM | 4 |
| 09:14AM | 5 |

09:13AM  1     GOVERNMENT TO PROVIDE BOTH THE DEFENSE AND THE COURT WITH

09:13AM  2     ADVANCE NOTICE OF THE PORTIONS OF THE CMS REPORT THAT IT

09:13AM  3     INTENDED TO OFFER.

09:13AM  4              THE COURT:  IT DID THAT IN 1133.

09:14AM  5              MR. LOOBY:  YES.  AND I SUPPOSE WE GOT OUR NOTICE

09:14AM  6     LAST THURSDAY AT THE END OF COURT THAT THE ANSWER IS ALL OF IT,

09:14AM  7     TWO MONTHS LATER, AND THAT WAS KIND OF THE SUM AND SUBSTANCE OF

09:14AM  8     THE NOTICE.

09:14AM  9          AND THEN -- SO WHERE DOES THAT LEAVE US?

09:14AM  10          WE HAD PROPOSED REDACTIONS ON MULTIPLE GROUNDS, AND TWO OF

09:14AM  11     THEM, I THINK, REMAIN PARTICULARLY IMPORTANT TODAY, AND ONE OF

09:14AM  12     THEM IS RELATED TO THE TESTS NOT IN THE INDICTMENT AND BILL OF

09:14AM  13     PARTICULARS, AND THEN THE SECOND CATEGORY -- AND THAT'S

09:14AM  14     REDACTION CATEGORY A IN OUR PROPOSED REDACTIONS.

09:14AM  15          AND THAT PROPOSED REDACTIONS ARE AT 898-6, AND THE

09:14AM  16     PROPOSED REDACTIONS FOR DOUBLE HEARSAY WHICH IS CATEGORY B AT

09:14AM  17     THAT SAME DOCKET ENTRY.

09:14AM  18          SO THE GOVERNMENT, UNDER THE COURT'S PRETRIAL MOTION IN

09:14AM  19     LIMINE ORDER, HAS TO OFFER A PURPOSE OTHER THAN ACCURACY AND

09:15AM  20     RELIABILITY FOR EVIDENCE PERTAINING EXCLUSIVELY TO TESTS NOT AT

09:15AM  21     ISSUE IN THE INDICTMENT AND BILL OF PARTICULARS.

09:15AM  22          SEVERAL OF THE CMS REPORT CITATIONS FALL DIRECTLY INTO

09:15AM  23     THAT CATEGORY.

09:15AM  24          TO DATE, I MEAN, I MINED THE PLEADINGS AND THE ARGUMENTS

09:15AM  25     AND TRANSCRIPTS, AND I HAVE NOT HEARD A NONACCURACY AND

5710

09:15AM 1    RELIABILITY RELATED ISSUE UNTIL TODAY WHEN I HEARD THAT IT'S

09:15AM 2    RELEVANT TO STATE OF MIND WHICH KIND OF IS NEW BECAUSE

09:15AM 3    PREVIOUSLY IT WAS TO BE ADMITTED FOR THE TRUTH AND RELATED TO

09:15AM 4    ACCURACY AND RELIABILITY.

09:15AM 5        BUT MY QUESTION WOULD BE STATE OF MIND AS TO WHAT.  IF A

09:15AM 6    CITATION IN A CMS REPORT RELATES TO SAY A PROFICIENCY TESTING

09:15AM 7    ISSUE ON AN ASSAY ON AN FDA APPROVED DEVICE THAT IS NOT

09:15AM 8    INVOLVED IN THE CASE, WHETHER OR NOT MS. HOLMES BECAME AWARE OF

09:15AM 9    THAT IN JANUARY 2016 WHEN THE REPORT WAS ISSUED, I DON'T SEE

09:16AM 10   HOW THAT BEARS ON HER STATE OF MIND AS IS RELEVANT TO THE CASE.

09:16AM 11       TO ME THIS IS -- THERE'S PULLED PORTIONS OF THIS REPORT

09:16AM 12   THAT ARE IRRELEVANT UNDER THE COURT'S ORDER, AND WE NEED TO

09:16AM 13   SQUARE THE ORDER ON THE BILL OF PARTICULARS AND THE ORDER

09:16AM 14   ADMITTING THE CMS REPORT.  THAT'S WHAT OUR PROPOSED REDACTIONS

09:16AM 15   IN AUGUST WERE MEANT TO DO.  WE HOPED IT WOULD START A DIALOGUE

09:16AM 16   OVER WHICH PORTIONS THE GOVERNMENT INTENDED TO OFFER.  IT

09:16AM 17   SOUNDS LIKE TODAY THEY HAVE A FEW PAGES PICKED OUT, AND THIS IS

09:16AM 18   THE FIRST THAT WE'RE HEARING ABOUT THAT.

09:16AM 19        THE COURT:  THESE ARE THE PAGES MR. LEACH IDENTIFIED

09:16AM 20   EARLIER YOU'RE REFERRING TO?

09:16AM 21      IS THAT RIGHT, MR. LOOBY?

09:16AM 22        MR. LOOBY:  YEAH.  AND I HEARD 45 TO 58.  I HAVE NOT

09:16AM 23   HAD A CHANCE TO REVIEW THOSE IN PARTICULAR.

09:16AM 24        THE COURT:  RIGHT.

09:16AM 25        MR. LOOBY:  BUT, OF COURSE, THE CMS REPORT IS

5711

09:16AM  1      128 PAGES LONG.

09:16AM  2              THE COURT:  WELL, HE'S DONE YOU A FAVOR.  HE'S

09:16AM  3      REALLY CUT IT DOWN SIGNIFICANTLY.

09:16AM  4              MR. LOOBY:  YES.  I MEAN, I WILL BE INTERESTED TO

09:17AM  5      SEE WHAT THOSE ARE, AND, YOU KNOW, WHETHER OR NOT -- BUT ALSO,

09:17AM  6      MR. LEACH SAID THAT THEY BELIEVED THAT THE ENTIRE REPORT SHOULD

09:17AM  7      COME INTO EVIDENCE.  AND WE, OF COURSE, OBJECT TO THAT FOR THE

09:17AM  8      REASONS THAT WE'VE PREVIOUSLY STATED.

09:17AM  9              THE COURT:  SURE.  SO LET ME SAY -- IT'S A QUARTER

09:17AM  10     AFTER, AND WE'VE ASKED OUR JURY TO COME IN AT 9:30.  AND LET ME

09:17AM  11     JUST SAY, I'M GOING TO BE VERY MINDFUL OF TIMING BECAUSE I'D

09:17AM  12     LIKE TO KEEP US ALL ON TRACK HERE, AND WE'RE DOING A GOOD JOB

09:17AM  13     OF THAT.

09:17AM  14         I DO -- I HOPE WE CAN START AT 9:30, AND I THINK I SHOULD

09:17AM  15     GIVE YOU TIME TO REVIEW 45 THROUGH 58 TO SEE.

09:17AM  16         IT'S UNLIKELY THAT WE'LL GET TO THAT THIS MORNING,

09:17AM  17     MR. LEACH?  IS THAT FAIR?

09:17AM  18              MR. LEACH:  I'M NOT SURE HOW MUCH MR. WADE HAS WITH

09:17AM  19     DR. SAWYER.

09:17AM  20              THE COURT:  I THINK HE TOLD US ABOUT AN HOUR.

09:17AM  21              MR. LEACH:  I THINK AT SOME POINT AFTER OUR FIRST

09:17AM  22     BREAK IT WILL EMERGE.

09:17AM  23              THE COURT:  RIGHT.  SO WE MAY HAVE TO -- I DO WANT

09:17AM  24     TO GIVE YOU AN OPPORTUNITY TO REVIEW WHAT MR. LEACH HAS

09:17AM  25     SUGGESTED, AND MAYBE THAT WILL CULL SOME OF YOUR CONCERNS.

5712

09:18AM 1          MR. LOOBY:  WELL, YOUR HONOR, I BELIEVE IT'S THE

09:18AM 2    GOVERNMENT'S INTENTION STILL TO ADMIT THE ENTIRETY OF THE

09:18AM 3    REPORT.  WHAT I HEARD IS THAT THEY WANTED TO ADMIT THE ENTIRETY

09:18AM 4    OF THE REPORT AND ONLY PUBLISH CERTAIN PORTIONS WITH DR. DAS.

09:18AM 5          SO I THINK REGARDLESS OF WHAT THESE PORTIONS ARE, AND I

09:18AM 6    FOR SURE DO WANT TO REVIEW THEM, AND I APPRECIATE THE

09:18AM 7    OPPORTUNITY FROM THE COURT TO DO THAT.

09:18AM 8          I THINK REGARDLESS OF THAT, I THINK THE ISSUE OF THE

09:18AM 9    ADMISSIBILITY OF THE REPORT WHOLESALE IS STILL GOING TO BE AN

09:18AM 10   ISSUE AND SO WE CAN TAKE THAT UP, YOU KNOW, WHENEVER THE COURT

09:18AM 11   BELIEVES IT'S MOST EFFICIENT.

09:18AM 12         AND THEN THERE ARE OTHER -- THERE ARE TWO OTHER ISSUES

09:18AM 13   THAT I WAS HOPING TO ADDRESS WITH THE COURT THIS MORNING, AND

09:18AM 14   THEY RELATE TO GOVERNMENT EXHIBITS -- AND SO I'LL PREVIEW THEM

09:18AM 15   QUICKLY.

09:18AM 16         THE COURT:  SURE.

09:18AM 17         MR. LOOBY:  THEY RELATE TO GOVERNMENT EXHIBITS THAT

09:18AM 18   RELATED TO CMS.  THESE ARE IDENTIFIED IN MS. HOLMES'S NOTICE

09:18AM 19   FROM YESTERDAY AT 1134.

09:19AM 20         ONE OF THEM IS 5274, AND THAT IS A SEPTEMBER 26TH DRAFT

09:19AM 21   CMS DOCUMENT ATTACHED IN AN EMAIL FROM A THERANOS LAB DIRECTOR,

09:19AM 22   LISA HELFEND, TO DR. DAS.

09:19AM 23         SO WE HAVE OBJECTIONS TO THAT COMING INTO EVIDENCE.

09:19AM 24         AND THEN THE OTHER BUCKET OF EXHIBITS, AND THEY CAN BE

09:19AM 25   ADDRESSED TOGETHER, ARE ALSO FLAGGED IN OUR NOTICE FROM

5713

09:19AM 1   YESTERDAY, AND THOSE ARE GOVERNMENT EXHIBITS 3144, 4943, 5257,

09:19AM 2   5260, 5471.

09:19AM 3       AND THESE COLLECTIVELY ARE THE DOWNSTREAM CORRESPONDENCE

09:19AM 4   BETWEEN THERANOS AND CMS RESPONDING TO THE JANUARY 2016 REPORT.

09:19AM 5   THESE DOCUMENTS HAVE SEVERAL ISSUES THAT ARE KIND OF -- THEY

09:19AM 6   SHARE IN COMMON WITH THE CMS REPORT BECAUSE THE CMS REPORT

09:19AM 7   ADDRESSES SO MANY TESTS NOT AT ISSUE AND LAB PRACTICES RELATING

09:20AM 8   TO TESTS NOT AT ISSUE, IT'S OUR POSITION THAT THE CMS REPORT

09:20AM 9   SHOULD BE REDACTED FOR THOSE REASONS, BUT ALSO THOSE REDACTIONS

09:20AM 10  SHOULD CARRY THROUGH TO THE PORTIONS OF THOSE LETTERS THAT

09:20AM 11  SPECIFICALLY ADDRESS THOSE SAME DEFICIENCIES.

09:20AM 12      SO EACH OF THE LETTERS KIND OF MARCHES THROUGH EACH

09:20AM 13  DEFICIENCY AND SAYS, YOU KNOW, THIS IS WHAT CMS SAID, THIS IS

09:20AM 14  THERANOS'S RESPONSE, THIS IS CMS'S RESPONSE.  SO IT IS LIKE A

09:20AM 15  SERIATIM BACK AND FORTH, AND SO THEY JUST KIND OF ADD ON TO

09:20AM 16  EACH OTHER.

09:20AM 17      AND THEN THEY ALSO POSE SOME RELEVANCE AND 403 ISSUES THAT

09:20AM 18  I THINK ARE UNIQUE TO THESE LATER LETTERS THAT AREN'T SHARED

09:20AM 19  WITH THE CMS REPORT AND AREN'T COVERED BY OUR PRIOR

09:20AM 20  CONVERSATIONS, ALTHOUGH THEY ARE RELATED TO OUR PRIOR

09:20AM 21  CONVERSATION ABOUT THE JULY 7TH LETTER THAT YOUR HONOR

09:20AM 22  MENTIONED AT 3217 WITH MR. LEACH AND MR. WADE, WHICH IS

09:20AM 23  ACTUALLY AN EXHIBIT THAT THE GOVERNMENT HAS NOT NOTICED AN

09:21AM 24  INTENT TO INTRODUCE THROUGH DR. DAS.

09:21AM 25          THE COURT:  3217?

5714

| | | |
|---|---|---|
| 09:21AM | 1 | MR. LOOBY:  YEAH.  BUT A LOT OF THE SAME ISSUES THAT |
| 09:21AM | 2 | WE DISCUSSED WITH THAT ARE SHARED WITH THIS OTHER |
| 09:21AM | 3 | CORRESPONDENCE WHICH IS, YOU KNOW, THIS ISN'T EVIDENCE OF CMS'S |
| 09:21AM | 4 | FINDINGS NECESSARILY, IT'S AN ONGOING DIALOGUE ABOUT THE |
| 09:21AM | 5 | ADEQUACY OF THERANOS'S RESPONSES. |
| 09:21AM | 6 | I HAVEN'T HEARD A RELEVANCE THEORY THAT WOULD SWEEP THOSE |
| 09:21AM | 7 | IN.  I DON'T KNOW PRECISELY WHY THAT IS RELEVANT. |
| 09:21AM | 8 | BUT IT DOES POSE UNIQUE 403 CONCERNS BECAUSE OF SOME OF |
| 09:21AM | 9 | THE LANGUAGE THAT WE REVIEWED TOGETHER IN REJECTING THERANOS'S |
| 09:21AM | 10 | RESPONSES GOES TO WORDS LIKE CREDIBLE, YOU KNOW, WHICH IS THE |
| 09:21AM | 11 | LINGO OF THE REGULATIONS, BUT HERE IN THE CONTEXT OF A CRIMINAL |
| 09:21AM | 12 | CASE POSES SOME UNIQUE ISSUES. |
| 09:21AM | 13 | AND THEN THERE ARE ALSO 702 ISSUES KIND OF WRAPPED UP IN |
| 09:21AM | 14 | SOME OF THESE REPORTS.  AND IN PARTICULAR EXHIBIT 4943 ARE A |
| 09:22AM | 15 | COMPILATION OF PATIENT IMPACT ASSESSMENTS THAT ARE COMPILED BY |
| 09:22AM | 16 | THERANOS WITH DR. DAS'S INVOLVEMENT, AND THEY MARCH THROUGH ON |
| 09:22AM | 17 | AN ASSAY-BY-ASSAY BASIS, YOU KNOW, HERE ARE SOME OF THE ISSUES |
| 09:22AM | 18 | THAT WE SPOTTED, AND THEY GET PRETTY TECHNICAL PRETTY QUICK, |
| 09:22AM | 19 | YOU KNOW, GOING THROUGH TRENDS IN QC DATA ON SPECIFIC DATES, |
| 09:22AM | 20 | CALCULATIONS BASED OFF OF THAT, EXTRAPOLATIONS AND OPINIONS |
| 09:22AM | 21 | ABOUT WHAT THAT DATA MEANS. |
| 09:22AM | 22 | DR. DAS HAS NOT BEEN NOTICED AS AN EXPERT TO WALK THE JURY |
| 09:22AM | 23 | THROUGH THOSE.  SEVERAL OF THOSE PATIENT IMPACT ASSESSMENTS |
| 09:22AM | 24 | RELATES TO TESTS THAT ARE NOT AT ISSUE IN THE INDICTMENT SO |
| 09:22AM | 25 | THEY HAVE THAT SAME FLAW AS, YOU KNOW, PORTIONS OF THE CMS |

5715

| | | |
|---|---|---|
| 09:22AM | 1 | REPORT. |
| 09:22AM | 2 | SO THERE'S A LOT OF THORNY ISSUES, AND I KNOW YOUR HONOR |
| 09:22AM | 3 | SAW WHEN YOU GOT THE PLEADINGS YESTERDAY, IT'S BIG DOCUMENTS |
| 09:22AM | 4 | THAT THE GOVERNMENT IS PUTTING IN AND CUMULATIVELY THE |
| 09:22AM | 5 | IMPRESSION THAT THESE GIVE, EVEN BEYOND THE PARTICULARS, WHICH |
| 09:23AM | 6 | ARE PRETTY TECHNICAL AND PREJUDICIAL IN THEIR OWN, IS EVIDENCE |
| 09:23AM | 7 | OF A LOT OF CIVIL KIND OF REGULATORY VIOLATIONS THAT ARE BEING |
| 09:23AM | 8 | KIND OF PUSHED INTO THE CASE PERHAPS WITHOUT AN ADEQUATE |
| 09:23AM | 9 | NARRATION OF WHAT IT ALL MEANS TO BE PUT IN FRONT OF THE JURY. |
| 09:23AM | 10 | AND WE HAVE SERIOUS CONCERNS ABOUT THE UNFAIR PREJUDICE |
| 09:23AM | 11 | FROM THEM. |
| 09:23AM | 12 | THE COURT:  WELL, THANK YOU. |
| 09:23AM | 13 | YOUR COLLEAGUE SUGGESTS A PROPOSED JURY INSTRUCTION THAT |
| 09:23AM | 14 | BE READ CONTEMPORANEOUS WITH ANY OF THE CIVIL REGULATIONS THAT |
| 09:23AM | 15 | COME IN, OR CERTAINLY HE'S GOING TO ASK.  I'M SURE YOUR TEAM IS |
| 09:23AM | 16 | GOING TO ASK FOR A SIMILAR FINAL INSTRUCTION THAT TALKS ABOUT |
| 09:23AM | 17 | THE JURY NOT BEING ABLE TO USE ANY CIVIL VIOLATIONS OR |
| 09:23AM | 18 | REGULATIONS AT ALL IN THEIR DELIBERATION AS TO WHETHER OR NOT |
| 09:23AM | 19 | YOUR CLIENT HAS VIOLATED ANY CRIMINAL STATUTE, AND I THINK IT |
| 09:23AM | 20 | PROBABLY WOULD BE APPROPRIATE TO INCLUDE SOME TYPE OF |
| 09:24AM | 21 | INSTRUCTION IN THE FINAL INSTRUCTIONS TO THAT, TO THAT EXTENT |
| 09:24AM | 22 | JUST FOR PROPHYLACTIC MEASURES. |
| 09:24AM | 23 | MR. LEACH, DID YOU WANT TO COMMENT? |
| 09:24AM | 24 | MR. LEACH:  I HAVEN'T HAD A CHANCE TO FULSOMELY |
| 09:24AM | 25 | REVIEW THE DEFENSE'S PROPOSED INSTRUCTION, BUT I CAN SAY NOW I |

5716

09:24AM  1    DON'T THINK IT SHOULD BE GIVEN IN THE MOMENT, AND THE COURT

09:24AM  2    SHOULD HEAR FULSOME BRIEFING FROM THE PARTIES ABOUT THE

09:24AM  3    PROPRIETARY OF THAT AT THE END OF THE DAY.

09:24AM  4         WITH RESPECT TO THE CMS REPORT, I DON'T MEAN TO ADD TO

09:24AM  5    MR. LOOBY'S BURDEN, BUT I OVERLOOKED ONE ADDITIONAL PAGE OF THE

09:24AM  6    REPORT, WHICH IS PAGE 7 THROUGH 8, AND THESE ARE THE TRIAL

09:24AM  7    EXHIBIT PAGES, BUT THOSE ARE THE ONLY PAGES I INTEND TO DISPLAY

09:24AM  8    WITH DR. DAS.

09:24AM  9         I THINK THE DEFENSE WANTS -- YOU KNOW, THE DEFENSE

09:24AM  10   PROFFERED DOCUMENTS FROM THE MARCH TIME PERIOD WITH GLOWING

09:25AM  11   REVIEWS ABOUT THE TECHNOLOGY AT A HIGH LEVEL, THE NANOTAINER

09:25AM  12   WORKS, WE CAN TEST SMALL SAMPLES RELIABLY.  THESE ARE AT 7653

09:25AM  13   AND 10512.

09:25AM  14        AND IT CAN'T BE A RESPONSE THAT YOU CAN SHOW THE

09:25AM  15   DEFENDANT'S STATE OF MIND WITH THESE PITHY GLOWING REVIEWS BUT

09:25AM  16   NOT THE GRANULAR DETAIL OF WHAT SHE'S GETTING FROM THE CLIA

09:25AM  17   LAB.

09:25AM  18        IT GOES TO HOW SERIOUSLY SHE TOOK THESE ISSUES, IT GOES TO

09:25AM  19   HER CONTROL OF THE LAB, IT GOES TO WHETHER SHE LEAPT INTO

09:25AM  20   ACTION.  AND, YES, SEVERAL OF THEM ARE TECHNICAL AND OF A

09:25AM  21   VARIETY THAT REQUIRES SOME EXPLANATION FROM THE WITNESS, BUT

09:25AM  22   THEY WANT TO PRESENT IT AT A HIGH LEVEL AND AVOID ANY

09:25AM  23   GRANULARITY ON THE ARGUMENT THAT THE GRANULARITY SOMEHOW

09:25AM  24   PREJUDICES THEM.

09:25AM  25        SO THE WHOLE THING IS RELEVANT TO HER SPEED.  IF DOCUMENTS

5717

09:25AM 1   GOING TO HER IN MARCH OF 2016 ARE RELEVANT TO HER STATE OF

09:25AM 2   MIND, THIS DOCUMENT IS RELEVANT TO HER STATE OF MIND.

09:25AM 3       WITH RESPECT TO -- I DO INTEND TO STICK TO ASSAYS THAT ARE

09:26AM 4   IN THE BILL OF PARTICULARS.  WE'VE NOTICED, YOU KNOW, FOR THE

09:26AM 5   POSSIBILITY OF REFRESHING OR IF THE DEFENSE GOES THERE, CERTAIN

09:26AM 6   EXHIBITS.  SO I DON'T INTEND TO PUT IN ALL OF THE LETTERS BACK

09:26AM 7   AND FORTH BETWEEN CMS AND THERANOS, BUT I WOULD SAY THESE

09:26AM 8   AREN'T EXPERT OPINIONS.  THESE ARE STATEMENTS BY THERANOS

09:26AM 9   AUTHORIZED BY MS. HOLMES TO TRY TO EXPLAIN WHAT HAPPENED.

09:26AM 10  THEY'RE CLEARLY RELEVANT.

09:26AM 11      THE ONE I DO INTEND TO INTRODUCE, YOUR HONOR, IS 493,

09:26AM 12  PAGE 9, WHICH IS A PATIENT IMPACT ASSESSMENT RELATING TO THE

09:26AM 13  EDISON DEVICE.  THE EDISON DEVICE IS IN THE BILL OF

09:26AM 14  PARTICULARS.

09:26AM 15      THE COURT HAS HEARD LOTS OF TESTIMONY ABOUT THE EDISON

09:26AM 16  DEVICE.  AND THIS IS A STATEMENT THAT GOES TO CMS IN AN ATTEMPT

09:26AM 17  TO EXPLAIN WHETHER THE DEVICE WAS OR WAS NOT WORKING IN THE WAY

09:27AM 18  IT WAS SUPPOSED TO AND WHAT THE QUALITY SYSTEMS WERE OR WEREN'T

09:27AM 19  DOING.  IT'S AN ADMISSION BY MS. HOLMES AND THERANOS.  IT'S NOT

09:27AM 20  AN EXPERT OPINION.  NONE OF -- THERE'S NO ISSUES WITH RESPECT

09:27AM 21  TO OTHER ASSAYS, AND THIS IS VERY MUCH A PART OF THE

09:27AM 22  GOVERNMENT'S PROOF WITH DR. DAS.

09:27AM 23      BUT I THINK THE OTHER LENGTHY BACK AND FORTH, I URGE THE

09:27AM 24  COURT TO WAIT AND SEE, BECAUSE I DON'T THINK AT THE END OF THE

09:27AM 25  DAY THE GOVERNMENT IS GOING TO NEED THEM.

5718

09:27AM 1          MR. LOOBY:  AND JUST ONE POINT ON THE ISSUE OF THE

09:27AM 2   ENTIRETY OF THE REPORT BEING RELEVANT TO STATE OF MIND.  AND

09:27AM 3   THE GOVERNMENT IS MUSHING TOGETHER REPRESENTATIONS AND

09:27AM 4   STATEMENTS AND FACTS ABOUT THE TECHNOLOGY WITH THE FINDINGS OF

09:27AM 5   THE CMS REPORT, WHICH RELATE TO LAB PRACTICES, AND WHICH COVER

09:27AM 6   THE WHOLE GAMUT OF THE LAB WHICH, OF COURSE, INCLUDED

09:27AM 7   TECHNOLOGY THAT WASN'T MANUFACTURED BY THERANOS.

09:27AM 8          AND SO THERE ISN'T A ONE-TO-ONE CONNECTION BETWEEN KIND OF

09:28AM 9   THE ISSUES IN THE CASE THAT ARE ACTUALLY IN THE CASE AND THE

09:28AM 10  ENTIRETY OF THE CMS REPORT.

09:28AM 11         IT DOES SOUND LIKE THE GOVERNMENT, IN PREPARING ITS

09:28AM 12  WITNESSES, HAS LOCATED THE SPECIFIC D TAGS IN THE CMS REPORT

09:28AM 13  THAT IT WOULD LIKE TO HIGHLIGHT, AND IT HAS LOCATED THE

09:28AM 14  PARTICULAR PATIENT IMPACT ASSESSMENT, BUT IT'S PROPOSED TO PUT

09:28AM 15  INTO EVIDENCE STACKS OF PAPERS WHERE THESE ARE JUST A FEW PAGES

09:28AM 16  OF THEM.

09:28AM 17         AND I THINK IT PAYS TO BE PRECISE AND TO LOOK AT THE

09:28AM 18  ENTIRETY OF THESE REPORTS AND WHAT THEY SAY AND DON'T SAY

09:28AM 19  BEFORE THEY'RE PUT INTO EVIDENCE AND GO BACK WITH THE JURY FOR

09:28AM 20  DELIBERATIONS.

09:28AM 21         SO, YOU KNOW, I WOULD, I WOULD -- WE MAINTAIN OUR

09:28AM 22  OBJECTION TO PORTIONS OF THE REPORT OTHER THAN THOSE, YOU KNOW,

09:28AM 23  THAT ARE -- WE MAINTAIN OUR OBJECTIONS OF CATEGORIES A AND B IN

09:28AM 24  OUR PROPOSED REDACTIONS AT 898-6.  WE STILL MAINTAIN THAT THOSE

09:29AM 25  ARE APPROPRIATE.

09:29AM 1      AND JUST ONE WORD ON THE DOUBLE HEARSAY ISSUE, WHICH I

09:29AM 2   DON'T BELIEVE HAS BEEN SOLVED.  THE GOVERNMENT'S ARGUMENT, AS I

09:29AM 3   UNDERSTAND IT, IS ESSENTIALLY BECAUSE THESE LAB STAFF WERE

09:29AM 4   INTERVIEWED ARE WHAT THEY CALL HIGH LEVEL LAB STAFF.

09:29AM 5      I MEAN, IF YOU GO TO THE PRESENTATION THAT WAS IN EVIDENCE

09:29AM 6   THAT WAS GIVEN AT THE START OF THE CMS INSPECTION, I MEAN, I

09:29AM 7   THINK IT'S MORE FAIR TO CHARACTERIZE THEM AS MID LEVEL.

09:29AM 8      MS. HOLMES -- THERE HAS NOT BEEN TESTIMONY OR EVIDENCE

09:29AM 9   THAT MS. HOLMES HAD DAY-TO-DAY SUPERVISION OF THE LAB.  THERE

09:29AM 10  HAS NOT BEEN TESTIMONY FROM THESE PARTICULAR WITNESSES, THESE

09:29AM 11  PARTICULAR LAB STAFF THAT MS. HOLMES CONTROLLED THEIR

09:29AM 12  ACTIVITIES.

09:29AM 13     THERE HASN'T BEEN A FOUNDATION TO CONNECT AN AGENCY

09:29AM 14  RELATIONSHIP BETWEEN MS. HOLMES AND THESE PARTICULAR WITNESSES.

09:29AM 15     THE COURT HAD REJECTED THE GOVERNMENT'S EFFORT TO, TO LUMP

09:30AM 16  IN ALL THERANOS EMPLOYEES AS MS. HOLMES'S AGENTS.  IT SEEMS

09:30AM 17  HERE WE'RE JUST KIND OF TRYING TO LOWER THE BAR DOWN THE

09:30AM 18  CORPORATE HIERARCHY, THAT'S THE SENSE OF THE ARGUMENT THAT I

09:30AM 19  GET, BUT THAT'S NOT PARTICULAR ENOUGH TO FORM THE AGENCY LINK.

09:30AM 20  SO I DON'T THINK THEY'VE CLEARED THAT HURDLE YET.

09:30AM 21        THE COURT:  AND YOU'RE REFERENCING THE COURT'S 798,

09:30AM 22  THE COURT'S ORDERS AND THE MILS WHICH WAS IN MAY, I THINK

09:30AM 23  MAY 22ND OF THIS YEAR?

09:30AM 24        MR. LOOBY:  CORRECT, YEAH.

09:30AM 25        THE COURT:  AND NOW -- OF COURSE WE'VE HAD SOME

5720

| | | |
|---|---|---|
| 09:30AM | 1 | TESTIMONY.  WE'VE HAD TEN WEEKS OF TESTIMONY AND EVIDENCE. |
| 09:30AM | 2 | PART OF THAT TESTIMONY, IF I RECALL, HAS BEEN WITNESSES, |
| 09:30AM | 3 | DIFFERENT WITNESSES WHO TESTIFY ABOUT YOUR CLIENT'S CONTROL OF |
| 09:30AM | 4 | THE LAB, AND WHO IS ALLOWED AND WHO ISN'T, CERTAIN PERSONNEL |
| 09:30AM | 5 | THAT WERE PERMITTED TO GO IN THERE. |
| 09:30AM | 6 | AND MY SENSE FROM THE GOVERNMENT'S PLEADING IS THAT THERE |
| 09:31AM | 7 | IS A STRONG INFERENCE THAT ANYBODY WHO WAS THERE FOR THE CMS |
| 09:31AM | 8 | EVENT, WHICH WAS AN IMPORTANT EVENT IN THE LIFE OF THE COMPANY, |
| 09:31AM | 9 | WAS THERE WITH KNOWLEDGE AND CONSENT OF THE CEO OF THE COMPANY |
| 09:31AM | 10 | SUCH THAT THAT DECISION WAS MADE TO ALLOW THEM TO BE THERE FOR |
| 09:31AM | 11 | THAT IMPORTANT EVENT. |
| 09:31AM | 12 | AND I THINK WHAT MR. LEACH, I THINK WHAT I AM INFORMED |
| 09:31AM | 13 | FROM HIS PLEADINGS, SUGGESTS IT'S A FAIR INFERENCE, IF NOT |
| 09:31AM | 14 | CIRCUMSTANTIAL EVIDENCE, THAT THEY WERE THERE WITH HER |
| 09:31AM | 15 | IMPRIMATUR. |
| 09:31AM | 16 | MR. LOOBY:  WELL, THE TECHNICAL SUPERVISOR, THE |
| 09:31AM | 17 | GENERAL SUPERVISOR, AND THE QA/QC MANAGER OF THE THERANOS CLIA |
| 09:31AM | 18 | LABORATORY, SO THEY WOULD BE OBLIGATED AND EXPECTED TO BE |
| 09:31AM | 19 | THERE TO ANSWER CMS -- THEY WORK IN THE LAB, AND THE CMS |
| 09:31AM | 20 | INSPECTION IS AN INSPECTION OF THE LAB. |
| 09:31AM | 21 | SO I THINK IT'S NOT THE CORRECT QUESTION TO ASK WAS -- |
| 09:31AM | 22 | WERE THEY THERE WITH MS. HOLMES'S PERMISSION?  OF COURSE THEY |
| 09:32AM | 23 | ARE EMPLOYEES OF THERANOS. |
| 09:32AM | 24 | BUT THE QUESTION IS WHETHER OR NOT MS. HOLMES -- THEY'RE |
| 09:32AM | 25 | AGENTS OF MS. HOLMES AS THEY WERE ACTING ON THAT DAY? |

5721

09:32AM    1          AND I THINK THERE HASN'T BEEN TESTIMONY ABOUT MS. HOLMES

09:32AM    2    AND A PRESENCE IN OR INVOLVEMENT IN THE LAB IN THE 2014, 2015

09:32AM    3    PERIOD.  I MEAN, THE LAB DIRECTOR AT THE TIME TESTIFIED THAT HE

09:32AM    4    HADN'T MET MS. HOLMES.  SO I THINK THERE'S A GAP THERE.

09:32AM    5          THE COURT:  OKAY.  MR. LEACH, DO YOU WANT TO COMMENT

09:32AM    6    ON THAT?

09:32AM    7          MR. LEACH:  THERE ARE TEXT MESSAGES, YOUR HONOR,

09:32AM    8    WHERE MS. HOLMES IS PRAYING DURING THE SEPTEMBER 2015 CMS

09:32AM    9    EXAMINATION.

09:32AM   10       THE DEFENSE -- OR AFTER THE COURT DENIED A MOTION

09:32AM   11    IN LIMINE TO EXCLUDE A DOCUMENT THAT MR. BALWANI HANDED TO CMS

09:32AM   12    DURING THE INSPECTION, AFTER THE COURT DENIED THAT MOTION, THE

09:32AM   13    DEFENSE INTRODUCED THAT DOCUMENT THROUGH DR. DHAWAN.

09:32AM   14       THERE'S AMPLE EVIDENCE THAT MS. HOLMES WAS AWARE OF AND

09:33AM   15    DIRECTING AND SENDING OUT AGENTS FOR THE PURPOSE OF THE CMS

09:33AM   16    INSPECTION, WHICH WAS, AS THE COURT NOTES, AN IMPORTANT EVENT

09:33AM   17    IN THE COMPANY.

09:33AM   18       I DON'T SEE A DOUBLE HEARSAY PROBLEM HERE, AND I DON'T

09:33AM   19    HAVE ANYTHING MORE TO ADD THAN WHAT WE HAVE IN OUR --

09:33AM   20          THE COURT:  YOU SUGGEST THAT AT LEAST FOR PURPOSES

09:33AM   21    OF OVERCOMING A HEARSAY OBJECTION THIS -- THAT TESTIMONY OR

09:33AM   22    THOSE OBSERVATIONS ARE ADMISSIBLE UNDER AN AGENCY THEORY?

09:33AM   23          MR. LEACH:  YES, YOUR HONOR.

09:33AM   24          THE COURT:  OKAY.  OKAY.

09:33AM   25          MR. LOOBY:  YOUR HONOR, UNDER THE TEST FOR AGENCY OF

5722

09:33AM  1    AUTHORIZATION AND CONTROL OF THE EMPLOYEES'S ACTIONS, I DON'T

09:33AM  2    THINK THERE IS A FOUNDATION THERE.  I THINK WHAT MR. LEACH JUST

09:33AM  3    DESCRIBED IS MS. HOLMES AWARENESS OF THE CMS INSPECTION, HER

09:33AM  4    HOPES THAT IT WOULD GO WELL, HER PRAYERS THAT IT WOULD GO WELL.

09:33AM  5        I MEAN, THAT DOESN'T CONNECT TO WHETHER OR NOT THESE

09:33AM  6    PARTICULAR LAB EMPLOYEES RESPONDED TO MS. HOLMES, REPORTED TO

09:34AM  7    MS. HOLMES, INTERACTED WITH MS. HOLMES, THAT SHE AUTHORIZED

09:34AM  8    SPECIFIC REPRESENTATIONS THAT THEY WOULD HAVE MADE DURING THE

09:34AM  9    INSPECTION.

09:34AM  10        THEY'RE EMPLOYEES OF THE LAB, AND THEY WERE BEING

09:34AM  11   INTERVIEWED AS EMPLOYEES OF THE LAB.

09:34AM  12               THE COURT:  OF THERANOS?

09:34AM  13               MR. LOOBY:  YES.

09:34AM  14               THE COURT:  MR. LEACH?

09:34AM  15               MR. LEACH:  I HAVE NOTHING FURTHER, YOUR HONOR.

09:34AM  16               THE COURT:  OKAY.  I'M INFORMED THAT IT'S GOING TO

09:34AM  17   TAKE US TEN MINUTES TO REBOOT OUR SYSTEM TO ALLEVIATE SOME OF

09:34AM  18   THE PROBLEMS THAT WE'VE HAD THIS MORNING, ELECTRICAL PROBLEMS.

09:34AM  19        I'LL STEP DOWN, AND WE'LL GET THAT STARTED.

09:34AM  20        I THINK WE'RE GOING TO BREAK AT ABOUT 11:00 O'CLOCK AND

09:34AM  21   THEN AGAIN AT 1:30.  AND I THINK I TOLD YOU I HAVE SOMETHING

09:34AM  22   FROM 12:30 TO 1:00.  SO WE'LL TRY TO INCORPORATE ALL OF THAT IN

09:34AM  23   TODAY.

09:34AM  24        AND I THINK WE'RE GOING UNTIL 4:00 TODAY.

09:34AM  25               MR. LOOBY:  AND, YOUR HONOR, FOR EXHIBIT 5274, I'M

| | | |
|---|---|---|
| 09:34AM | 1 | NOT SURE -- THIS IS THE SEPTEMBER 2016 DRAFT CMS DOCUMENT.  I'M |
| 09:35AM | 2 | NOT SURE IF THE GOVERNMENT INTENDS TO OFFER THAT INTO EVIDENCE. |
| 09:35AM | 3 | BUT EITHER AT A BREAK OR AT A SIDE-BAR WE MAY WANT TO |
| 09:35AM | 4 | DEVOTE A FEW MINUTES TO DISCUSSING THAT. |
| 09:35AM | 5 | THE COURT:  OKAY.  THANK YOU.  OKAY. |
| 09:35AM | 6 | ANYTHING FURTHER? |
| 09:35AM | 7 | MR. LEACH:  THANK YOU, YOUR HONOR.  NOT FROM THE |
| 09:35AM | 8 | GOVERNMENT. |
| 09:35AM | 9 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 09:35AM | 10 | THE CLERK:  COURT IS IN RECESS. |
| 09:35AM | 11 | (RECESS FROM 9:35 A.M. UNTIL 11:11 A.M.) |
| 11:11AM | 12 | (JURY IN AT 11:11 A.M.) |
| 11:11AM | 13 | THE COURT:  ALL RIGHT.  THANK YOU.  WE ARE ON THE |
| 11:11AM | 14 | RECORD IN THE HOLMES MATTER.  ALL COUNSEL ARE PRESENT. |
| 11:11AM | 15 | MS. HOLMES IS PRESENT. |
| 11:11AM | 16 | OUR JURY IS PRESENT. |
| 11:11AM | 17 | GOOD AFTERNOON, LADIES AND GENTLEMEN. |
| 11:11AM | 18 | (LAUGHTER.) |
| 11:11AM | 19 | THE COURT:  I WANT TO TELL YOU, WE'VE HAD SOME |
| 11:11AM | 20 | TECHNICAL PROBLEMS, AND OUR VIDEO SYSTEM IS COMPROMISED.  YOUR |
| 11:11AM | 21 | SCREENS WILL NOT BE WORKING.  THE SCREENS IN FRONT OF ALL OF US |
| 11:11AM | 22 | ARE NOT WORKING. |
| 11:11AM | 23 | WE HAVE, DURING THE BREAK, COUNSEL HAVE TRIED TO BE |
| 11:11AM | 24 | EFFICIENT AND GOOD AND TRY TO WORK OUT COMPROMISES.  WHAT YOU |
| 11:12AM | 25 | SEE ON THE SCREEN IN FRONT OF YOU IS THE DEVICE THAT IS |

5724

11:12AM 1    PROJECTING ON THE WALL.  AND AFTER DOING VARIOUS TESTING, I

11:12AM 2    THINK THE PARTIES HAVE AGREED THAT THIS IS PROBABLY THE BEST

11:12AM 3    THAT WE'LL BE ABLE TO DO TODAY.

11:12AM 4        I'M INFORMED THAT TO PROPERLY CORRECT THE ISSUE, WE WILL

11:12AM 5    NEED TO SHUT THE SYSTEM DOWN, AND THEY'RE GOING TO HAVE TO DO

11:12AM 6    THAT AT THE END OF TODAY.

11:12AM 7        SO WHAT I WOULD LIKE TO DO TODAY, AFTER I ASK YOU A

11:12AM 8    QUESTION ABOUT YOUR WEEKENDS AND WHETHER OR NOT YOU'VE HAD AN

11:12AM 9    OCCASION TO SEE ANYTHING OR TALK TO ANYONE OR COME ACROSS

11:12AM 10   ANYTHING TO DO WITH THIS CASE, WHAT WE WILL DO IS TURN THE

11:12AM 11   LIGHTS DOWN, AND WE'VE THOUGHT ABOUT TURNING SOME OF THESE

11:12AM 12   LIGHTS OFF SUCH THAT THIS SCREEN CAN BE MORE VISIBLE.

11:12AM 13       AND WHAT I'D LIKE TO DO IS TO ASK YOU TO LOOK AT THIS AND

11:12AM 14   LOOK AT OUR SCREEN HERE, AND TELL ME IF THIS PRESENTS ANY

11:13AM 15   PROBLEMS AS FAR AS VIEWING ANY OF THE EXHIBITS.

11:13AM 16       SO THAT'S WHAT WE'RE GOING TO DO FIRST BEFORE WE RESUME

11:13AM 17   TESTIMONY.

11:13AM 18       SO AS TO MY QUESTION AND THE ADMONITION, HAS ANYONE COME

11:13AM 19   ACROSS ANYTHING, DISCUSSED WITH ANYONE, HEARD, READ, OR

11:13AM 20   LISTENED TO ANYTHING ABOUT THIS CASE SUCH THAT YOU THINK YOU

11:13AM 21   SHOULD INFORM ME?

11:13AM 22       IF SO, PLEASE RAISE YOUR HANDS.

11:13AM 23       I SEE NO HANDS.

11:13AM 24       THANK YOU VERY MUCH AGAIN.

11:13AM 25       SO WHAT WE'LL DO NOW, COUNSEL, WE'LL TURN DOWN THE LIGHTS

11:13AM 1    TO A LEVEL THAT YOU AGREED THAT WE'D LOOK AT, AND THEN I'LL ASK

11:13AM 2    THE JURORS WHETHER OR NOT THEY'RE ABLE TO SEE THE EXHIBITS.

11:13AM 3        MS. KRATZMANN.

11:13AM 4            THE CLERK:  YES, YOUR HONOR.

11:13AM 5        (PAUSE IN PROCEEDINGS.)

11:13AM 6            THE COURT:  I'LL GIVE THE JURORS A COUPLE OF MINUTES

11:13AM 7    TO LOOK AT THAT.

11:13AM 8        DOES THAT PRESENT ANYONE ANY ISSUE TO SEE AND UNDERSTAND,

11:13AM 9    TO READ AND COMPREHEND AT LEAST THIS DOCUMENT THAT WE HAVE

11:14AM 10   DISPLAYED HERE AS A SAMPLE?  IF SO, IF THAT'S A PROBLEM, IF YOU

11:14AM 11   COULD PLEASE RAISE YOUR HAND.

11:14AM 12       AND THIS IS IMPORTANT.  IF YOU'RE NOT ABLE TO SEE THIS,

11:14AM 13   THEN WE'LL HAVE TO DO SOMETHING ELSE.  IT'S IMPORTANT THAT THE

11:14AM 14   JURY BE ABLE TO SEE AND FOLLOW THE EXHIBITS AS THE TESTIMONY IS

11:14AM 15   GIVEN.

11:14AM 16       YES.

11:14AM 17           JUROR:  NO, I'M GOOD.

11:14AM 18           THE COURT:  THAT'S A THUMBS UP?

11:14AM 19           JUROR:  YOUR HONOR, IF I COULD RETURN TO THE ROOM

11:14AM 20   AND GET A PAIR OF GLASSES, I WILL BE ABLE TO SEE THAT.

11:14AM 21           THE COURT:  WHY DON'T WE DO THAT.  AND THANK YOU FOR

11:14AM 22   THAT.

11:16AM 23       (PAUSE IN PROCEEDINGS.)

11:16AM 24           THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT

11:16AM 25   THAT OUR JUROR HAS RETURNED WITH GLASSES.

5726

| 11:16AM | 1 | IS THAT WORKING OKAY? |
| 11:16AM | 2 | JUROR:  YES. |
| 11:16AM | 3 | THE COURT:  ALL RIGHT. |
| 11:16AM | 4 | IS THERE ANYONE HAVING A PROBLEM WITH THIS, NOT JUST |
| 11:16AM | 5 | VIEWING THIS, BUT ANYTHING ABOUT THE LIGHTING IN THE COURTROOM |
| 11:16AM | 6 | THAT WILL CAUSE A JUROR ANY IMPEDIMENT AS TO BE ABLE TO FOLLOW |
| 11:16AM | 7 | THE EVIDENCE, BOTH THE SPOKEN EVIDENCE AS WELL AS THE VISUAL |
| 11:16AM | 8 | EVIDENCE? |
| 11:16AM | 9 | DOES ANYONE FEEL THAT THE CURRENT CONDITION WILL NOT SERVE |
| 11:16AM | 10 | THEM THE OPPORTUNITY TO ACCOMPLISH THAT? |
| 11:16AM | 11 | IF SO, RAISE YOUR HAND. |
| 11:16AM | 12 | I SEE NO HANDS. |
| 11:16AM | 13 | OKAY.  ALL RIGHT.  THANK YOU. |
| 11:16AM | 14 | LET ME APOLOGIZE, LADIES AND GENTLEMEN.  I JUST WANT TO |
| 11:16AM | 15 | BE -- I'M VERY EMBARRASSED THAT OUR COURTROOM HAS HAD THESE |
| 11:16AM | 16 | PROBLEMS.  WE HAD WATER OUTAGES TWO WEEKS AGO AND NOW OUR |
| 11:16AM | 17 | SYSTEM IS, FOR SOME REASON, NOT FUNCTIONING.  I APOLOGIZE TO |
| 11:17AM | 18 | YOU AS MEMBERS OF THE PUBLIC AS PART OF THIS TRIAL, AND COUNSEL |
| 11:17AM | 19 | AND ALL OF THE PARTIES HERE. |
| 11:17AM | 20 | I'M SORRY, THIS IS NOT SUPPOSED TO HAPPEN.  WE SHOULD NOT |
| 11:17AM | 21 | HAVE THESE DISRUPTIONS.  WE'VE LOST VALUABLE TIME THIS MORNING. |
| 11:17AM | 22 | BUT MORE THAN THAT, IT'S REGRETTABLY A DISPLAY OF ISSUES |
| 11:17AM | 23 | WITH OUR COURT THAT I'M NOT PROUD OF.  AND WE'LL LOOK INTO |
| 11:17AM | 24 | THIS.  I'LL LOOK INTO THIS AND SEE WHAT WE CAN DO TO CORRECT |
| 11:17AM | 25 | THIS TO MAKE YOUR TIME WITH US A LITTLE MORE ENJOYABLE. |

| | | |
|---|---|---|
| 11:17AM | 1 | SO THANK YOU FOR THAT. |
| 11:17AM | 2 | IF AT ANY TIME A JUROR DOES HAVE AN ISSUE WITH FOLLOWING, |
| 11:17AM | 3 | TRACKING, PLEASE RAISE YOUR HAND AND LET US KNOW SO I CAN TAKE |
| 11:17AM | 4 | APPROPRIATE ACTION. |
| 11:17AM | 5 | LET ME TELL YOU SCHEDULE WISE, I HOPE YOU RECALL WE'RE |
| 11:17AM | 6 | GOING TO TAKE A BREAK FROM 12:30 TO 1:00 O'CLOCK, I THINK.  I |
| 11:17AM | 7 | HOPE THAT WILL WORK.  AND THEN WE'RE GOING UNTIL 4:00 O'CLOCK |
| 11:17AM | 8 | TODAY.  SO WE'LL PROBABLY HAVE ANOTHER BREAK PUT IN THERE IN |
| 11:18AM | 9 | THE AFTERNOON SOMETIME. |
| 11:18AM | 10 | ALL RIGHT.  THANK YOU. |
| 11:18AM | 11 | ANYTHING FURTHER, MR. SCHENK? |
| 11:18AM | 12 | MR. SCHENK:  NO, YOUR HONOR. |
| 11:18AM | 13 | MR. DOWNEY:  NO, YOUR HONOR. |
| 11:18AM | 14 | THE COURT:  ALL RIGHT.  LET ME ASK, DO BOTH SIDES |
| 11:18AM | 15 | CONSENT TO PROCEEDING IN THIS FASHION? |
| 11:18AM | 16 | MR. SCHENK:  YES, WE DO. |
| 11:18AM | 17 | MR. DOWNEY:  WE DO, YOUR HONOR. |
| 11:18AM | 18 | THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH. |
| 11:18AM | 19 | LET'S SEE.  WE HAVE A WITNESS.  I THINK, MR. WADE, HAVE |
| 11:18AM | 20 | YOU -- YOU HAVE SOME QUESTIONS STILL FOR MS. SAWYER? |
| 11:18AM | 21 | MR. WADE:  I DO. |
| 11:18AM | 22 | THE COURT:  ALL RIGHT.  WE'LL BRING MS. SAWYER IN. |
| 11:18AM | 23 | THE CLERK:  DID YOU WANT ME TO TURN ON THE LIGHTS |
| 11:18AM | 24 | FOR NOW, YOUR HONOR? |
| 11:18AM | 25 | THE COURT:  WHY DON'T WE TURN THEM ON UNTIL WE HAVE |

| | | |
|---|---|---|
| 11:18AM | 1 | AN EXHIBIT? |
| 11:18AM | 2 | COUNSEL, DO YOU WANT A LIGHT FOR THE LECTERNS? |
| 11:18AM | 3 | MR. WADE:  I THINK I'M OKAY WITH THE LIGHT HERE AND |
| 11:18AM | 4 | MY GLASSES. |
| 11:18AM | 5 | THE COURT:  OKAY. |
| 11:19AM | 6 | MS. SAWYER, GOOD AFTERNOON.  PLEASE COME FORWARD.  THANK |
| 11:19AM | 7 | YOU. |
| 11:19AM | 8 | IF YOU COULD RESUME THE STAND AGAIN, PLEASE. |
| 11:19AM | 9 | MAKE YOURSELF COMFORTABLE AGAIN. |
| 11:19AM | 10 | DR. SAWYER, WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE |
| 11:19AM | 11 | STATE YOUR NAME AGAIN FOR THE RECORD, PLEASE. |
| 11:19AM | 12 | THE WITNESS:  LYNETTE SAWYER. |
| 11:19AM | 13 | THE COURT:  THANK YOU.  I REMIND YOU THAT YOU'RE |
| 11:19AM | 14 | STILL UNDER OATH. |
| 11:19AM | 15 | AND YOU CAN REMOVE YOUR MASK AS YOU DID LAST WEEK WHEN YOU |
| 11:19AM | 16 | TESTIFIED IF YOU WOULD LIKE. |
| 11:19AM | 17 | THE WITNESS:  THANK YOU. |
| 11:19AM | 18 | **(GOVERNMENT'S WITNESS, LYNETTE SAWYER, WAS PREVIOUSLY** |
| 11:19AM | 19 | **SWORN.)** |
| 11:19AM | 20 | THE COURT:  THANK YOU. |
| 11:19AM | 21 | MR. WADE:  YOUR HONOR, WOULD YOU LIKE TO UPDATE THE |
| 11:19AM | 22 | WITNESS ON THE CONDITIONS THAT WE'RE GOING TO BE WORKING UNDER, |
| 11:19AM | 23 | OR WOULD YOU LIKE ME TO DO THAT? |
| 11:19AM | 24 | THE COURT:  WELL, NO. |
| 11:19AM | 25 | LET ME TELL YOU, DOCTOR, WE'VE HAD SOME TIME TODAY AND |

5729

| | | |
|---|---|---|
| 11:19AM | 1 | WE'VE TRIED TO SOLVE A PROBLEM THAT IS UNSOLVABLE. |
| 11:19AM | 2 | OUR VIDEO FOR SOME REASON HAS CHOSEN TODAY TO GO OUT. |
| 11:20AM | 3 | THE WITNESS:  OKAY. |
| 11:20AM | 4 | THE COURT:  I'M SURE THIS IS A CASE OF FIRST |
| 11:20AM | 5 | IMPRESSION TO YOU. |
| 11:20AM | 6 | SO WHAT WE'RE GOING TO DO IS TO GO FORWARD TODAY.  WE PUT |
| 11:20AM | 7 | THIS LITTLE LAMP NEXT TO YOU. |
| 11:20AM | 8 | IF THERE ARE EXHIBITS THAT COUNSEL ARE GOING TO USE, WE'RE |
| 11:20AM | 9 | GOING TO DIM THE LIGHTS AND PROJECT THEM ON THE SCREEN UP HERE. |
| 11:20AM | 10 | YOU WON'T HAVE BENEFIT OF THE TELEVISION MONITOR THERE.  YOU'LL |
| 11:20AM | 11 | HAVE TO LOOK AT THAT SCREEN. |
| 11:20AM | 12 | THE WITNESS:  OKAY. |
| 11:20AM | 13 | THE COURT:  SO IF AT ANY TIME YOU'RE UNABLE TO SEE |
| 11:20AM | 14 | THAT SCREEN, YOU SHOULD LET US KNOW.  LET ME KNOW, PLEASE -- |
| 11:20AM | 15 | THE WITNESS:  OKAY. |
| 11:20AM | 16 | THE COURT:  -- SO WE CAN TAKE ANY OTHER ACTION. |
| 11:20AM | 17 | OR IF ANY OF THIS IS DISRUPTIVE TO YOUR ABILITY TO |
| 11:20AM | 18 | PARTICIPATE, YOU NEED TO LET ME KNOW AND WE'LL TAKE CORRECTIVE |
| 11:20AM | 19 | ACTIONS. |
| 11:20AM | 20 | THE WITNESS:  OKAY. |
| 11:20AM | 21 | THE COURT:  FOR THE TIME BEING, I'M JUST GOING TO |
| 11:20AM | 22 | LEAVE THAT CHARMING LAMP THERE AND LEAVE IT ON, AND HOPEFULLY |
| 11:20AM | 23 | IT WILL BE OF SOME ASSISTANCE.  THANK YOU. |
| 11:20AM | 24 | COUNSEL. |
| 11:20AM | 25 | MR. WADE:  THANK YOU, YOUR HONOR. |

SAWYER CROSS BY MR. WADE (RES.)                                    5730

| | | |
|---|---|---|
| 11:20AM | 1 | **CROSS-EXAMINATION (RESUMED)** |
| 11:20AM | 2 | BY MR. WADE: |
| 11:20AM | 3 | Q.   GOOD MORNING, DR. SAWYER. |
| 11:20AM | 4 | A.   GOOD MORNING. |
| 11:20AM | 5 | Q.   DO YOU RECALL THAT WHEN WE BROKE LAST WEEK WE WERE -- I |
| 11:20AM | 6 | WAS ASKING YOU SOME QUESTIONS ABOUT THE CONSULTING AGREEMENT |
| 11:21AM | 7 | UNDER WHICH YOU WERE RETAINED? |
| 11:21AM | 8 | A.   YES. |
| 11:21AM | 9 | Q.   AND THAT WAS A CONSULTING AGREEMENT WITH LABORATORY |
| 11:21AM | 10 | CONSULTING SERVICES? |
| 11:21AM | 11 | A.   YES. |
| 11:21AM | 12 | Q.   AND THAT SET FORTH THE WORK THAT YOU WERE GOING TO PROVIDE |
| 11:21AM | 13 | THROUGH THAT ENTITY. |
| 11:21AM | 14 | DO YOU RECALL THAT? |
| 11:21AM | 15 | A.   YES. |
| 11:21AM | 16 | Q.   LET'S BRING THAT BACK UP. |
| 11:21AM | 17 | THAT'S 10586 WHICH IS IN EVIDENCE. |
| 11:21AM | 18 | MAY I PUBLISH, YOUR HONOR? |
| 11:21AM | 19 | THE COURT:  YES, THANK YOU. |
| 11:21AM | 20 | BY MR. WADE: |
| 11:21AM | 21 | Q.   AND IT'S ALSO IN YOUR BOOK, SO IF IT'S EASIER FOR YOU TO |
| 11:21AM | 22 | READ IN YOUR BOOK, PLEASE FEEL FREE TO DO THAT. |
| 11:21AM | 23 | IF I COULD CALL YOUR ATTENTION TO EXHIBIT 81. |
| 11:21AM | 24 | THE COURT:  PARDON ME, MR. WADE. |
| 11:21AM | 25 | IS THERE ANY MEMBER OF THE JURY WHO IS HAVING DIFFICULTY |

SAWYER CROSS BY MR. WADE (RES.)                                          5731

11:22AM   1    VIEWING THIS?

11:22AM   2         I SEE NO HANDS.

11:22AM   3         IF ANY EXHIBIT IS BEING SHOWN AND YOU CAN'T SEE IT, PLEASE

11:22AM   4    RAISE YOUR HAND AND WE'LL TRY TO REFOCUS AND DO WHAT WE NEED TO

11:22AM   5    DO.

11:22AM   6         THANK YOU, MR. WADE.

11:22AM   7              MR. WADE:  THANK YOU, YOUR HONOR.

11:22AM   8    Q.   AND I BELIEVE THAT WE WERE GOING THROUGH SOME QUESTIONS ON

11:22AM   9    THIS WHEN WE BROKE LAST TIME.

11:22AM  10         YOU RECOGNIZE THIS AS THE SCOPE OF SERVICES AND

11:22AM  11    COMPENSATION FOR THE WORK THAT YOU WERE GOING TO DO AT

11:22AM  12    THERANOS; CORRECT?

11:22AM  13    A.   RIGHT.

11:22AM  14    Q.   AND ON THAT TOP PARAGRAPH NUMBER 1, DO YOU SEE THAT YOU'RE

11:22AM  15    PROVIDED A CONTACT THERE AND THAT IS MR. BALWANI; CORRECT?

11:22AM  16    A.   CORRECT.

11:22AM  17    Q.   AND I BELIEVE YOU TESTIFIED LAST WEEK THAT YOU HAD TWO

11:22AM  18    INTERACTIONS WITH MR. BALWANI; RIGHT?

11:22AM  19    A.   AS I RECALL, YES.

11:22AM  20    Q.   OKAY.  AND DO YOU RECALL UNDERSTANDING AT THE TIME THAT

11:22AM  21    YOU BEGAN THIS ENGAGEMENT THAT HE WAS TO BE YOUR PRINCIPAL

11:22AM  22    POINT OF CONTACT AT THE COMPANY?

11:23AM  23    A.   I DON'T ACTUALLY RECALL ONE WAY OR THE OTHER.

11:23AM  24    Q.   OKAY.  DO YOU REMEMBER THAT YOU RECALL THAT WE SAW THIS

11:23AM  25    DOCUMENT THAT WAS SIGNED BY MR. HURST?

SAWYER CROSS BY MR. WADE (RES.)                                    5732

11:23AM  1    A.    YES.

11:23AM  2    Q.    OKAY.  DO YOU RECALL WHETHER MR. HURST EVER TOLD YOU, IF

11:23AM  3    YOU HAVE ANY QUESTIONS OR HAVE ANY NEEDS, YOUR POINT OF CONTACT

11:23AM  4    SHOULD BE MR. BALWANI?

11:23AM  5    A.    I DO NOT RECALL HIM TELLING ME THAT.

11:23AM  6    Q.    OKAY.  THE AGREEMENT THEN SETS FORTH SERVICES THAT YOU'RE

11:23AM  7    TO PROVIDE, AND JUST UNDER THIS SECOND PARAGRAPH, IF WE CAN

11:23AM  8    GRAB THE NEXT SECTION OF THE DOCUMENT BELOW THIS SECTION, DO

11:24AM  9    YOU SEE IT SAYS THAT YOU'RE TO FUNCTION AS THE CO-LAB DIRECTOR?

11:24AM 10         DO YOU SEE THAT?

11:24AM 11    A.    UH-HUH.

11:24AM 12    Q.    AND THAT WAS CLEAR FROM THE OUTSET; CORRECT?

11:24AM 13    A.    CORRECT.

11:24AM 14    Q.    AND THERE ARE THEN -- IF WE CAN BLOW -- IF WE CAN GO BACK

11:24AM 15    TO THE MAIN DOCUMENT AND GRAB, SAY, THE BOTTOM -- FROM THERE

11:24AM 16    DOWN, PLEASE.

11:24AM 17         THERE ARE A BUNCH OF POTENTIAL SERVICES THAT YOU MAY

11:24AM 18    PROVIDE THERE.

11:24AM 19         DO YOU SEE THAT?

11:24AM 20    A.    YES.

11:24AM 21    Q.    AND THEY ALL SAY IF REQUESTED BY THE COMPANY; RIGHT?

11:24AM 22    A.    YES.

11:24AM 23    Q.    AND THERE -- AND YOU UNDERSTOOD AT THE TIME THAT THE

11:24AM 24    NATURE OF SERVICES THAT YOU WERE TO PROVIDE WAS GOING TO BE

11:24AM 25    LIMITED IN NATURE; CORRECT?

SAWYER CROSS BY MR. WADE (RES.)                                    5733

11:24AM  1      A.   YES.

11:24AM  2      Q.   AND IF PARTICULAR SUBSETS OF SERVICES WERE REQUIRED, THE

11:24AM  3      COMPANY WOULD CONTACT YOU AND ASK YOU TO PERFORM THOSE

11:25AM  4      SERVICES; CORRECT?

11:25AM  5      A.   YES.

11:25AM  6      Q.   AND THE COMPANY DID CONTACT YOU WITH RESPECT TO A NUMBER

11:25AM  7      OF DIFFERENT POLICIES THAT THEY ASKED YOU TO REVIEW; RIGHT?

11:25AM  8      A.   THEY HAD ME REVIEW A NUMBER OF SOP'S, YES.

11:25AM  9      Q.   AND DO YOU RECALL THAT ONE OF THE THINGS THAT THE COMPANY

11:25AM  10     WAS SEEKING ASSISTANCE WITH IN THIS TIME PERIOD WAS IMPROVING

11:25AM  11     THE PAPERWORK AND ITS POLICIES GIVEN SOME DEFICIENCIES WITH

11:25AM  12     RESPECT TO A PRIOR LAB DIRECTOR?

11:25AM  13     A.   NO.

11:25AM  14     Q.   OKAY.  BUT YOU DO RECALL THAT YOU WERE SENT A NUMBER OF

11:25AM  15     POLICIES THROUGHOUT YOUR TENURE TO REVIEW; CORRECT?

11:25AM  16     A.   YES.  BUT THAT WOULD NOT HAVE NECESSARILY HAD ANYTHING TO

11:25AM  17     DO WITH DEFICIENCIES BECAUSE A NEW LAB DIRECTOR MUST SIGN

11:25AM  18     DOCUMENT -- MUST SIGN SOP'S WITHIN A REASONABLE TIME.

11:25AM  19     Q.   OKAY.  RIGHT.

11:25AM  20          SO IF THERE WERE NEW POLICIES OR CHANGES IN POLICIES THAT

11:26AM  21     WERE PUT IN PLACE, YOU WERE THERE TO REVIEW THEM AND SIGN OFF

11:26AM  22     ON THEM; IS THAT CORRECT?

11:26AM  23     A.   YES.

11:26AM  24     Q.   AND, AND WE'LL GET TO SOME OF THOSE.

11:26AM  25          BUT YOU DID THAT, IT LOOKS LIKE, FOR HUNDREDS OF POLICIES

SAWYER CROSS BY MR. WADE (RES.)                                    5734

11:26AM  1    MAYBE; RIGHT?

11:26AM  2    A.    THAT IS TRUE.

11:26AM  3    Q.    OKAY.  AND THAT WAS ON A REGULAR BASIS?  DURING YOUR

11:26AM  4    TENOR, YOU WOULD BE SENT DOCUMENTATION FOR YOU TO REVIEW AND

11:26AM  5    APPROVE; CORRECT?

11:26AM  6    A.    YES.

11:26AM  7    Q.    OKAY.  AND IF WE CAN GO TO PAGE 2 --

11:26AM  8          THE COURT:  WHILE THAT IS BEING DRAWN UP -- PARDON

11:26AM  9    ME, MR. WADE -- LADIES AND GENTLEMEN, YOU SHOULD BE ABLE TO SEE

11:26AM  10   THE WITNESS ALSO.  IF ANYONE CANNOT SEE THE WITNESS AS SHE

11:26AM  11   TESTIFIES, PLEASE RAISE YOUR HAND.  THAT'S AN IMPORTANT PART OF

11:26AM  12   THE EVIDENCE ALSO.

11:26AM  13      I SEE NO HANDS.

11:26AM  14      I ASSUME THEN EVERYONE HAS THE OPPORTUNITY TO SEE THE

11:26AM  15   WITNESS AS SHE TESTIFIES.  ALL RIGHT.  THANK YOU.

11:27AM  16      SORRY, MR. WADE.

11:27AM  17          MR. WADE:  SORRY, MR. BENNETT.

11:27AM  18      IF WE CAN GO TO ATTACHMENT 2, PAGE 1, BATES RANGE 809.

11:27AM  19   Q.    OKAY.  AND DO YOU SEE THIS SETS FORTH THE COMPENSATION

11:27AM  20   THAT WAS TO BE PAID IN CONNECTION WITH THE SERVICES?

11:27AM  21      DO YOU SEE THAT?

11:27AM  22   A.    YES.

11:27AM  23   Q.    AND DO YOU RECALL LAST WEEK YOU TESTIFIED THAT AT THE

11:27AM  24   OUTSET IT WAS CONTEMPLATED THAT THE ENGAGEMENT WOULD BE FOR A

11:27AM  25   COUPLE OF MONTHS?

SAWYER CROSS BY MR. WADE (RES.)                    5735

11:27AM  1        DO YOU RECALL THAT?

11:27AM  2    A.   TWO TO MAYBE THREE.

11:27AM  3    Q.   OKAY.  LET'S TAKE A LOOK AT THE LANGUAGE WITHIN THIS

11:27AM  4    COMPENSATION.  IF WE CAN FOCUS ON THIS LANGUAGE HERE

11:27AM  5    (INDICATING), "PAYMENTS WILL BE MADE WITHIN 30 DAYS."

11:27AM  6        DO YOU SEE THAT?

11:27AM  7        AND THEN LET'S HIGHLIGHT THE NEXT SENTENCE AS WELL,

11:27AM  8    PLEASE, MR. BENNETT.

11:28AM  9        DO YOU SEE THERE WITHIN THE AGREEMENT IT SETS FORTH THAT

11:28AM  10   THE DURATION OF THIS AGREEMENT WILL BE THROUGH MAY 19TH, 2015?

11:28AM  11       DO YOU SEE THAT?

11:28AM  12   A.   YES.

11:28AM  13   Q.   AND THIS AGREEMENT, DO YOU RECALL, WAS SIGNED ON

11:28AM  14   NOVEMBER 19TH --

11:28AM  15   A.   YES.

11:28AM  16   Q.   -- 2014?

11:28AM  17       DO YOU RECALL THAT?

11:28AM  18   A.   YES.

11:28AM  19   Q.   OKAY.  AND SO THE AGREEMENT SETS FORTH A PERIOD OF SIX

11:28AM  20   MONTHS; CORRECT?

11:28AM  21   A.   YES.

11:28AM  22   Q.   OKAY.  AND UP HERE IT SAYS THAT AT THAT POINT WE WILL

11:28AM  23   ASSESS THIS AGREEMENT AND THE TERMS OF THE SERVICES OF THE

11:28AM  24   AGREEMENT GOING FORWARD.

11:28AM  25       DO YOU SEE THAT?

UNITED STATES COURT REPORTERS
**ER-9360**

SAWYER CROSS BY MR. WADE (RES.)                          5736

| | | |
|---|---|---|
| 11:28AM | 1 | A.   UH-HUH. |
| 11:28AM | 2 | Q.   AND THEN A DECISION WOULD BE MADE AS TO WHETHER OR NOT |
| 11:28AM | 3 | THOSE SERVICES WOULD CONTINUE; CORRECT? |
| 11:28AM | 4 | A.   CORRECT. |
| 11:28AM | 5 | Q.   OKAY.  AND THE FACT THAT THIS -- I'LL STRIKE THAT. |
| 11:28AM | 6 | LET ME GO TO THE NEXT PAGE, EXHIBIT A-2. |
| 11:29AM | 7 | AND IN ADDITION TO YOUR SERVICES, THE COMPANY ALSO |
| 11:29AM | 8 | RETAINED THE SERVICES OF JERRY HURST. |
| 11:29AM | 9 | DO YOU SEE THAT? |
| 11:29AM | 10 | A.   I SEE THAT. |
| 11:29AM | 11 | Q.   AND DO YOU SEE THAT THAT SETS FORTH, IF YOU LOOK IN THE |
| 11:29AM | 12 | LAST PARAGRAPH UNDER NUMBER 2, "GENERAL CONSULTATION ON STATE |
| 11:29AM | 13 | AND FEDERAL (CLIA) REQUIREMENTS, COMPLIANCE, AND CLINICAL |
| 11:29AM | 14 | LABORATORY OPERATIONS, OTHER SERVICES, EACH TO THE EXTENT |
| 11:29AM | 15 | REQUESTED BY THE COMPANY." |
| 11:29AM | 16 | DO YOU SEE THAT? |
| 11:29AM | 17 | A.   I SEE THAT. |
| 11:29AM | 18 | Q.   AND THAT'S A -- THAT WAS A SIX MONTH CONTRACT AS WELL; |
| 11:29AM | 19 | CORRECT? |
| 11:29AM | 20 | A.   IT WOULD APPEAR SO. |
| 11:29AM | 21 | Q.   AND I THINK WE TALKED A LITTLE BIT ABOUT MR. HURST LAST |
| 11:29AM | 22 | WEEK, BUT HE WAS A VERY EXPERIENCED LAB PERSON, WAS HE NOT? |
| 11:30AM | 23 | A.   YES. |
| 11:30AM | 24 | Q.   HE, HE HAD BEEN, HE HAD BEEN A LABORATORY CONSULTANT FOR |
| 11:30AM | 25 | MANY YEARS. |

SAWYER CROSS BY MR. WADE (RES.)                                      5737

11:30AM  1          DO YOU RECALL YOUR TESTIMONY RELATING TO THAT?

11:30AM  2     A.   HE HAS BEEN A LABORATORY CONSULTANT FOR SEVERAL YEARS,

11:30AM  3     YES.

11:30AM  4     Q.   AND THAT WAS AFTER HE WAS A CLIA INSPECTOR FOR THE STATE

11:30AM  5     OF CALIFORNIA; CORRECT?

11:30AM  6     A.   TECHNICALLY HE WAS NOT A CLIA INSPECTOR.  HE WAS A STATE

11:30AM  7     OF CALIFORNIA INSPECTOR.  THEY DID INSPECTIONS FOR CLIA.  HE

11:30AM  8     WAS NOT A CLIA EMPLOYEE.

11:30AM  9     Q.   FAIR POINT.

11:30AM 10          HE WORKED FOR THE STATE OF CALIFORNIA; RIGHT?

11:30AM 11     A.   YES.

11:30AM 12     Q.   AND HE DID CLIA INSPECTIONS PURSUANT TO A JOINT

11:30AM 13     ARRANGEMENT BETWEEN THE STATE AND FEDERAL GOVERNMENTS; CORRECT?

11:30AM 14     A.   CORRECT.

11:30AM 15     Q.   OKAY.  BUT THERE WERE THE FEDERAL CLIA REGULATIONS HE WAS

11:30AM 16     LOOKING AT; RIGHT?

11:30AM 17     A.   YES.

11:30AM 18     Q.   AND HE HAS A LOT OF EXPERTISE IN THAT AREA, DOES HE NOT?

11:30AM 19     A.   I BELIEVE SO.

11:30AM 20     Q.   AND I THINK YOU TESTIFIED LAST WEEK THAT HE'S A GUY WHO

11:30AM 21     WOULD FREQUENTLY CONSULT WITH A VARIETY OF COMPANIES THAT

11:31AM 22     OPERATED LABS IN THIS AREA; CORRECT?

11:31AM 23     A.   TO THE BEST OF MY KNOWLEDGE, BUT I DON'T KEEP TABS ON

11:31AM 24     EXACTLY WHO HE WORKS WITH.

11:31AM 25     Q.   OKAY.  DO YOU RECALL, FOR EXAMPLE, THAT HE HAD DONE

SAWYER CROSS BY MR. WADE (RES.)                              5738

11:31AM  1    CONSULTING WORK FOR QUEST DIAGNOSTICS?

11:31AM  2    A.   NO, I DID NOT KNOW THAT.

11:31AM  3    Q.   OKAY.  DO YOU RECALL THAT HE HAD DONE CONSULTING WORK FOR,

11:31AM  4    YOU KNOW, ABOUT 50 DIFFERENT LAB COMPANIES?

11:31AM  5    A.   I WOULD HAVE NO IDEA OF THE NUMBER.  I KNOW A VARIETY

11:31AM  6    OF -- THAT HE HAS DONE WORK FOR A VARIETY OF LABS, YES.

11:31AM  7    Q.   OKAY.  AND DO YOU KNOW THAT HE ALSO HAS -- HE'S CALLED

11:31AM  8    UPON FOR HIS EXPERTISE FROM TIME TO TIME?

11:31AM  9         DO YOU KNOW THAT?

11:31AM  10   A.   YES.

11:31AM  11   Q.   AND INCLUDING HE SERVED AS AN EXPERT FOR THE UNITED STATES

11:31AM  12   DEPARTMENT OF JUSTICE.

11:31AM  13        ARE YOU AWARE OF THAT?

11:31AM  14   A.   NO.

11:31AM  15   Q.   OKAY.  ARE YOU AWARE THAT HE SERVED AS AN INDEPENDENT

11:31AM  16   EXPERT CONSULTANT FOR THE CENTER FOR MEDICARE AND MEDICAID

11:31AM  17   SERVICES?

11:32AM  18   A.   NO.

11:32AM  19   Q.   AND HE'S SOMEONE WHO YOU HAD INTERACTED WITH FREQUENTLY

11:32AM  20   WHILE YOU WERE WORKING WITH HIS COMPANY; IS THAT FAIR?

11:32AM  21   A.   RELATIVELY, YES.

11:32AM  22   Q.   AND YOU HAVE RESPECT FOR MR. HURST?

11:32AM  23   A.   YES.

11:32AM  24   Q.   AND YOU THINK HE'S A HIGHLY COMPETENT PROFESSIONAL?

11:32AM  25   A.   YES.

SAWYER CROSS BY MR. WADE (RES.)                                    5739

11:32AM   1    Q.   OKAY.  NOW, THE PART-TIME ARRANGEMENT THAT YOU HAD WITH

11:32AM   2    THE COMPANY, THAT WAS GENERALLY FOR A LIMITED PERIOD OF HOURS A

11:32AM   3    WEEK; CORRECT?

11:32AM   4    A.   YES.

11:32AM   5    Q.   AND I THINK WE TALKED ABOUT LAST WEEK THAT YOU WERE -- IT

11:32AM   6    WAS UNDERSTOOD THAT YOU WEREN'T GOING TO BE ON SITE; CORRECT?

11:32AM   7    A.   CORRECT.

11:32AM   8    Q.   OKAY.  LET'S TAKE A LOOK AT EXHIBIT 2553, WHICH IS IN

11:32AM   9    EVIDENCE.

11:32AM  10         MAY I PUBLISH, YOUR HONOR?

11:32AM  11              THE COURT:  YES.

11:32AM  12              MR. WADE:  AND IF WE CAN GO TO PAGE 4 OF THE

11:33AM  13    EXHIBIT.  LET'S BLOW UP THE TOP THIRD OR SO.

11:33AM  14         BOY, AND THIS IS A TOUGH ONE.

11:33AM  15    Q.   DO YOU SEE THAT THIS IS A RENEWAL OF CLINICAL LABORATORY

11:33AM  16    LICENSE?  IT MIGHT BE EASIER FOR YOU TO SEE IT IN THE BOOK.

11:33AM  17    A.   YES.

11:33AM  18    Q.   AND YOU'VE SEEN THESE FORMS BEFORE; CORRECT?

11:33AM  19    A.   YES.

11:33AM  20    Q.   OKAY.  AND THIS IS ONE THAT WAS SUBMITTED ON BEHALF OF

11:33AM  21    THERANOS IN JUNE OF 2015.

11:33AM  22         DO YOU SEE THAT?

11:33AM  23         LET ME GO TO THE NEXT PAGE.  I'LL, I'LL -- IF YOU'LL --

11:33AM  24    A.   I'M NOT ACTUALLY SEEING THE DATE RIGHT NOW.

11:33AM  25    Q.   LET'S BLOW THIS UP RIGHT HERE, AND IF WE CAN HIGHLIGHT THE

SAWYER CROSS BY MR. WADE (RES.)                                    5740

11:34AM  1    DATE THERE (INDICATING)?

11:34AM  2    A.   OKAY.

11:34AM  3    Q.   DO YOU SEE IT SAYS -- IS THAT JUNE 12TH, MAYBE, 2015?

11:34AM  4    A.   MAYBE.

11:34AM  5    Q.   OKAY.  AND IF YOU -- BUT YOU'VE SEEN DOCUMENTS OF THIS

11:34AM  6    KIND BEFORE; CORRECT?

11:34AM  7    A.   YES.

11:34AM  8    Q.   OKAY.  AND THIS IS KIND OF A STANDARD RENEWAL FOR A

11:34AM  9    CLINICAL LABORATORY LICENSE?

11:34AM 10    A.   I BELIEVE SO.

11:34AM 11    Q.   OKAY.  AND IF WE GO JUST UP FROM THE PARAGRAPH THAT IS

11:34AM 12    BLOWN UP, IF WE GO TO THE TOP OF EXHIBIT -- PAGE 5 OF

11:34AM 13    EXHIBIT 2553.

11:34AM 14         DO YOU SEE THERE THAT YOU'RE IDENTIFIED AS ONE OF THE

11:34AM 15    LABORATORY DIRECTORS?

11:34AM 16         DO YOU SEE THAT?

11:34AM 17    A.   YES.

11:34AM 18    Q.   AND DO YOU SEE OVER ON THE RIGHT-HAND SIDE IT SAYS ONE TO

11:34AM 19    FIVE HOURS AS NEEDED?

11:34AM 20    A.   I SEE THAT.

11:34AM 21    Q.   AND DO YOU BELIEVE THAT TO BE AN ACCURATE STATEMENT OF THE

11:34AM 22    SERVICES THAT YOU WERE TO BE PROVIDING?

11:34AM 23    A.   PROBABLY.

11:34AM 24    Q.   OKAY.  AND DO YOU RECALL LAST WEEK THAT YOU, YOU HAD SAID

11:35AM 25    THAT YOU WANTED TO HAVE A ROSTER OF PERSONNEL WITHIN THE

SAWYER CROSS BY MR. WADE (RES.)                                    5741

11:35AM   1        LABORATORY?

11:35AM   2        A.   YES.

11:35AM   3        Q.   AND I THINK WE ESTABLISHED THAT YOU HAD TWO CONVERSATIONS

11:35AM   4        WITH MR. BALWANI.

11:35AM   5             DO YOU THINK THAT YOU ASKED FOR THAT IN THAT FIRST

11:35AM   6        CONVERSATION WITH MR. BALWANI?

11:35AM   7        A.   YES.

11:35AM   8        Q.   OKAY.

11:35AM   9        A.   YES.

11:35AM  10        Q.   AND HE, HE MUST HAVE FORGOTTEN TO SEND IT OR SOMETHING;

11:35AM  11        RIGHT?

11:35AM  12             MR. LEACH:  OBJECTION.

11:35AM  13             THE WITNESS:  SOMETHING.

11:35AM  14             MR. LEACH:  OBJECTION.

11:35AM  15             THE COURT:  IT CALLS FOR SPECULATION, I THINK.

11:35AM  16        THE ANSWER IS STRICKEN.  YOU CAN ASK ANOTHER QUESTION.

11:35AM  17             MR. WADE:  OKAY.

11:35AM  18        Q.   IN ANY EVENT, YOU DIDN'T RECEIVE A COPY OF IT; RIGHT?

11:35AM  19        A.   CORRECT.

11:35AM  20        Q.   OKAY.  AND DID YOU EVER GO BACK TO MR. BALWANI AND ASK HIM

11:35AM  21        AGAIN FOR THAT?

11:35AM  22        A.   I DID NOT.

11:35AM  23        Q.   OKAY.  LET'S GO FORWARD TO PAGE 11 OF THIS DOCUMENT.

11:35AM  24             AND IF WE CAN JUST BLOW UP THE MIDDLE THIRD OR SO.

11:36AM  25        A.   HMM.

SAWYER CROSS BY MR. WADE (RES.)                                    5742

11:36AM  1    Q.  DO YOU HAVE THAT IN FRONT OF YOU, DR. SAWYER?

11:36AM  2    A.  YES, I DO.

11:36AM  3    Q.  AND THIS IS THE TYPE OF LABORATORY PERSONNEL REPORT THAT

11:36AM  4    YOU WERE SEEKING?

11:36AM  5    A.  YES.

11:36AM  6    Q.  OKAY.  AND YOU SEE IT'S FILLED OUT AND IDENTIFIES THE

11:36AM  7    DIRECTORS AT THIS TIME AND THE TESTING PERSONNEL?

11:36AM  8    A.  YEP.

11:36AM  9    Q.  OKAY.  SO THIS WAS JUST SOMETHING THAT YOU WERE HOPING TO

11:36AM 10    HAVE AT THE TIME THAT YOU JOINED THE COMPANY?

11:36AM 11    A.  YES.

11:36AM 12    Q.  OKAY.  LET'S GO TO 10562, WHICH I DON'T BELIEVE IS IN

11:37AM 13    EVIDENCE.

11:37AM 14           THE CLERK:  IT IS.

11:37AM 15           MR. WADE:  IT IS IN EVIDENCE?

11:37AM 16           THE CLERK:  YES.

11:37AM 17           MR. WADE:  CAN WE GO TO THE SECOND PAGE OF THIS.

11:37AM 18    Q.  YEAH.  I THINK THE GOVERNMENT SHOWED YOU THE LAST PAGE OF

11:37AM 19    THIS DOCUMENT LAST WEEK.

11:37AM 20           DO YOU RECALL THAT?

11:37AM 21    A.  YES.

11:37AM 22    Q.  IF WE CAN BLOW UP THE BOTTOM OF THAT PAGE THERE WITH YOUR

11:37AM 23    SIGNATURE.

11:37AM 24           THIS IS DATED NOVEMBER 19TH, 2014; RIGHT?

11:37AM 25    A.  YES.

SAWYER CROSS BY MR. WADE (RES.)                                    5743

11:37AM  1    Q.   THAT'S THE DATE ON WHICH YOUR CONSULTING CONTRACT WAS

11:37AM  2    DATED; RIGHT?

11:37AM  3    A.   YES.

11:37AM  4    Q.   AND HERE -- DO YOU SEE THERE, THERE'S A BOX FOR WHETHER

11:37AM  5    YOU'RE GOING TO BE THE CLIA DIRECTOR?

11:37AM  6    A.   I DO.

11:37AM  7    Q.   AND YOU WERE NOT TO BE THE CLIA DIRECTOR; RIGHT?  THAT'S

11:38AM  8    WHAT THAT SAYS?

11:38AM  9    A.   CORRECT.

11:38AM  10   Q.   OKAY.  AND, AGAIN, YOU UNDERSTOOD THAT AT THE TIME, THAT

11:38AM  11   YOU WERE GOING TO BE A CO-DIRECTOR?

11:38AM  12   A.   YES.

11:38AM  13   Q.   OKAY.  LET'S GO TO 13 -- WELL, BEFORE I GO TO THE NEXT

11:38AM  14   EXHIBIT, YOU RECALL THAT THERE WAS SOME TESTIMONY ABOUT YOUR

11:38AM  15   DEPARTURE FROM THE COMPANY WHEN YOU STOPPED WORKING AT

11:38AM  16   THERANOS?

11:38AM  17   A.   YES.

11:38AM  18   Q.   AND YOU SAID SOMETHING TO THE EFFECT OF YOU WERE -- YOU

11:38AM  19   WEREN'T COMFORTABLE WITH THE CONDITIONS UNDER WHICH YOU WERE

11:38AM  20   WORKING, SO YOU WANTED TO DEPART?

11:38AM  21   A.   YES.

11:38AM  22   Q.   OKAY.  AND BETWEEN NOVEMBER 19TH, 2014, AND THE TIME

11:38AM  23   PERIOD WHERE YOU COMMUNICATED WITH MR. BALWANI, DID YOU

11:38AM  24   COMMUNICATE WITH ANYONE AT THE COMPANY ABOUT THE FACT THAT YOU

11:39AM  25   WANTED TO MAKE SOME CHANGES TO BE MORE COMFORTABLE WITH THE

SAWYER CROSS BY MR. WADE (RES.)                                    5744

11:39AM  1    CONDITIONS?

11:39AM  2    A.   I ATTEMPTED TO COMMUNICATE CHANGES TO SOME OF THE SOP'S I

11:39AM  3    WAS SIGNING.

11:39AM  4    Q.   OKAY.  AND WHO -- DID YOU CALL YOUR PRIMARY POINT OF

11:39AM  5    CONTACT, MR. BALWANI --

11:39AM  6    A.   NO.

11:39AM  7    Q.   -- TO COMMUNICATE THOSE?

11:39AM  8    A.   NO.

11:39AM  9    Q.   OKAY.  DO YOU KNOW WHO YOU CONTACTED TO COMMUNICATE THOSE?

11:39AM  10   A.   I CONTACTED THE WOMAN WHO HAD SENT ME THE SOP'S.

11:39AM  11   Q.   OKAY.  AND DID YOU COMMUNICATE WITH HER?

11:39AM  12   A.   YEAH.

11:39AM  13   Q.   AND DID YOU TELL HER --

11:39AM  14   A.   THROUGH EMAIL.

11:39AM  15   Q.   I'M SORRY?

11:39AM  16   A.   THROUGH EMAIL, YES.

11:39AM  17   Q.   THROUGH EMAIL.  BUT YOU DIDN'T CALL ANYONE TO HAVE A

11:39AM  18   CONVERSATION TO TRY TO CHANGE THE CONDITIONS UNDER WHICH YOU

11:39AM  19   WORKED?

11:39AM  20   A.   NO.

11:39AM  21   Q.   OKAY.  AND THE, THE -- AT YOUR DEPARTURE, I THINK YOU SAID

11:39AM  22   THAT YOU HAD A CONVERSATION WITH MR. BALWANI AND THAT HE WAS

11:39AM  23   KIND OF PUSHY.

11:39AM  24        DO YOU RECALL THAT?

11:40AM  25   A.   I RECALL SAYING THAT.  THAT IS MY RECOLLECTION, YES.

SAWYER CROSS BY MR. WADE (RES.)                                5745

11:40AM  1    Q.   OKAY.  AND THAT IS BECAUSE YOU WERE, YOU WERE -- IT WAS

11:40AM  2    YOUR BELIEF THAT YOU WERE TRYING TO DEPART OR -- DESCRIBE FOR

11:40AM  3    US WHY YOU SAY HE WAS PUSHY.

11:40AM  4    A.   HE WAS JUST HOPING I WOULD STAY LONGER.

11:40AM  5    Q.   OH.  SO HE WANTED YOU TO STAY WITH THE COMPANY?

11:40AM  6    A.   UH-HUH.

11:40AM  7         THE COURT:  IS THAT YES?  EXCUSE ME, IS THAT YES

11:40AM  8    DR. SAWYER?

11:40AM  9         THE WITNESS:  YES.  SORRY.

11:40AM  10        THE COURT:  THANK YOU.

11:40AM  11   BY MR. WADE:

11:40AM  12   Q.   YEAH, WE HAVE TO MAKE SURE OUR ANSWERS ARE AUDIBLE TO MAKE

11:40AM  13   OUR RECORD CLEAR WITH OUR COURT REPORTER.

11:40AM  14   A.   YES.

11:40AM  15   Q.   SO WHEN YOU SAY HE WAS PUSHY, HE WAS HOPING THAT YOU WERE

11:40AM  16   GOING TO STAY A LITTLE BIT LONGER; IS THAT RIGHT?

11:40AM  17   A.   YES.

11:40AM  18   Q.   OKAY.  LET'S TAKE A LOOK AT EXHIBIT 13047.

11:41AM  19        DO YOU HAVE THAT IN FRONT OF YOU?

11:41AM  20   A.   I DO.

11:41AM  21   Q.   AND DO YOU RECOGNIZE THIS TO BE AN EMAIL CHAIN WITH YOU,

11:41AM  22   MR. HURST, AND MR. BALWANI IN CONNECTION WITH THE EXPIRATION OF

11:41AM  23   YOUR CONTRACT?

11:41AM  24   A.   I DO.  BUT I DON'T KNOW THAT I'M ACTUALLY A RECIPIENT ON

11:41AM  25   THIS EMAIL CHAIN.

SAWYER CROSS BY MR. WADE (RES.)                                    5746

11:41AM  1    Q.   IF YOU LOOK IN THE SECOND EMAIL DOWN, DO YOU SEE THAT?

11:41AM  2    A.   YES, THERE I AM.  OKAY.

11:41AM  3              MR. WADE:  MOVE THE ADMISSION OF 13047.

11:41AM  4              THE WITNESS:  GOT IT.

11:41AM  5              MR. LEACH:  NO OBJECTION, YOUR HONOR.

11:41AM  6              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

11:41AM  7         (DEFENDANT'S EXHIBIT 13047 WAS RECEIVED IN EVIDENCE.)

11:41AM  8    BY MR. WADE:

11:41AM  9    Q.   LET'S START BRIEFLY ON THE BOTTOM.  I'M GOING TO GO

11:41AM  10   THROUGH AND ASK YOU A COUPLE OF QUESTIONS ABOUT THAT.  OKAY?

11:41AM  11        LET'S START ON THE BOTTOM.  DO YOU SEE THIS IS AN EMAIL

11:42AM  12   FROM MR. HURST TO MR. BALWANI ON APRIL 5TH, 2015, AND THE

11:42AM  13   SUBJECT IS LYNETTE'S DIRECTOR CONTRACT.

11:42AM  14        DO YOU SEE THAT?

11:42AM  15   A.   UH-HUH.

11:42AM  16   Q.   AND IT SAYS "HI SUNNY."

11:42AM  17        AND THEN WE HAVE TO GO TO THE NEXT PAGE TO LOOK AT THE

11:42AM  18   REST OF THE EMAIL.

11:42AM  19        AND DO YOU SEE IT NOTES, "I RECENTLY TALKED WITH LYNETTE

11:42AM  20   ABOUT HER CO-DIRECTOR POSITION AND SHE WOULD LIKE TO TERMINATE

11:42AM  21   HER POSITION.  HER CURRENT CONTRACT ENDS ON MAY 19TH, 2015, BUT

11:42AM  22   SHE IS HAPPY TO EXTEND HER RESPONSIBILITIES THROUGH THE END OF

11:42AM  23   MAY IF THAT IS BETTER FOR YOU."

11:42AM  24        DO YOU SEE THAT?

11:42AM  25   A.   YES.

SAWYER CROSS BY MR. WADE (RES.)                                5747

11:42AM   1    Q.   OKAY.  AND THAT WAS MR. HURST GIVING MR. BALWANI NOTICE

11:42AM   2    THAT AT THE END OF THAT SIX MONTH CONTRACT YOU WERE GOING TO,

11:42AM   3    YOU WERE GOING TO STOP WORKING WITH THERANOS; RIGHT?

11:42AM   4    A.   YEAH, I WAS NOT GOING TO RENEW THE CONTRACT.

11:42AM   5    Q.   RIGHT.  AND THE CONTRACT ACTUALLY SPECIFICALLY

11:42AM   6    CONTEMPLATED THAT.  IT SAYS LET'S LOOK AFTER SIX MONTHS AND SEE

11:43AM   7    WHAT HAPPENS; RIGHT?

11:43AM   8    A.   UH-HUH.

11:43AM   9    Q.   IS THAT A YES?

11:43AM  10    A.   YES, IT DID.

11:43AM  11    Q.   OKAY.  BUT YOU KINDLY AGREED TO STAY UNTIL THE END OF MAY

11:43AM  12    IF THAT WOULD HELP FACILITATE THE TRANSITION; RIGHT?

11:43AM  13    A.   YES, BECAUSE THE MIDDLE OF THE MONTH IS KIND OF AN ODD

11:43AM  14    TIME IN GENERAL TO HIRE PEOPLE LIKE DIRECTORS.

11:43AM  15    Q.   UNDERSTOOD.  LET'S WORK OUR WAY UP THE CHAIN AND GO TO

11:43AM  16    MR. BALWANI'S RESPONSE.

11:43AM  17        DO YOU SEE HE RESPONDS TO YOU BOTH AND NOTES THAT THE "END

11:43AM  18    OF JUNE WOULD BE IDEAL FOR US BUT IF THIS IS NOT A POSSIBILITY

11:43AM  19    THEN WE WILL WORK WITH END OF MAY TIMELINE."

11:43AM  20        DO YOU SEE THAT?

11:43AM  21    A.   YES.

11:43AM  22    Q.   AND HE THANKS YOU BOTH FOR YOUR EFFORTS.

11:43AM  23        DO YOU SEE THAT?

11:43AM  24    A.   YES.

11:43AM  25    Q.   OKAY.  SO HE WAS JUST SAYING HERE HE WOULD LIKE YOU TO

SAWYER CROSS BY MR. WADE (RES.)                              5748

11:44AM   1     STAY, BUT IF NOT, NO BIG DEAL?

11:44AM   2     A.   YES.

11:44AM   3     Q.   AND YOU ACTUALLY AGREED TO STAY UNTIL THE END OF JUNE?

11:44AM   4     A.   I DID.

11:44AM   5     Q.   OKAY.  LET'S FOCUS ON SOME OF THE WORK THAT YOU DID WHILE

11:44AM   6     YOU WERE THERE, OKAY?  I WANT TO ASK YOU SOME QUESTIONS ABOUT

11:44AM   7     THAT.

11:44AM   8     A.   OKAY.

11:44AM   9     Q.   WE TALKED ABOUT HOW YOU REVIEWED SOP'S AND THE LIKE.

11:44AM  10          DO YOU RECALL THAT?

11:44AM  11     A.   YES.

11:44AM  12     Q.   AND DO YOU RECALL ABOUT A YEAR AGO THE GOVERNMENT CALLED

11:44AM  13     AND ASKED YOU, ASKED YOU SOME QUESTIONS, SOME GOVERNMENT AGENTS

11:44AM  14     WHO WORK WITH THIS TEAM?

11:44AM  15     A.   YES.

11:44AM  16     Q.   OKAY.  AND DO YOU RECALL WHAT THEY ASKED YOU FOR -- AND

11:44AM  17     THEY TALKED TO YOU ABOUT THE FACT THAT YOU WERE THE

11:45AM  18     CO-LABORATORY DIRECTOR; RIGHT?

11:45AM  19     A.   YES.

11:45AM  20     Q.   AND THEY ASKED YOU SOME QUESTIONS ABOUT YOUR WORK; RIGHT?

11:45AM  21     A.   YES.

11:45AM  22     Q.   AND THEY ASKED YOU IF YOU COULD PROVIDE ANY DOCUMENTS THAT

11:45AM  23     YOU HAVE RELATING TO YOUR WORK.

11:45AM  24          DO YOU RECALL THAT?

11:45AM  25     A.   UM, I DON'T RECALL THEM ASKING SPECIFICALLY IN THAT WAY,

SAWYER CROSS BY MR. WADE (RES.)                    5749

| | | |
|---|---|---|
| 11:45AM | 1 | BUT I DID PROVIDE THEM WITH DOCUMENTS. |
| 11:45AM | 2 | Q.   OKAY.  WELL, AND IN SOME WAY -- |
| 11:45AM | 3 | A.   YEAH. |
| 11:45AM | 4 | Q.   -- THERE WAS AN AGREEMENT THAT YOU WOULD FIND WHATEVER |
| 11:45AM | 5 | DOCUMENTS YOU COULD LOCATE AND YOU WOULD GIVE THEM TO THE |
| 11:45AM | 6 | GOVERNMENT. |
| 11:45AM | 7 | DO YOU RECALL THAT? |
| 11:45AM | 8 | A.   YES. |
| 11:45AM | 9 | Q.   AND I THINK AT THE TIME YOU INFORMED THEM THAT YOU HAD |
| 11:45AM | 10 | SWITCHED COMPUTERS OR SOMETHING AND SO YOU PROBABLY DIDN'T HAVE |
| 11:45AM | 11 | ALL OF THE DOCUMENTS THAT YOU HAD WORKED WITH. |
| 11:45AM | 12 | DO YOU RECALL THAT? |
| 11:45AM | 13 | A.   I DON'T KNOW THAT I TOLD THEM THAT AT THE TIME.  I HAVE |
| 11:45AM | 14 | TOLD THEM THAT SINCE. |
| 11:45AM | 15 | Q.   OKAY.  BUT IN ANY EVENT -- |
| 11:45AM | 16 | A.   YEAH. |
| 11:45AM | 17 | Q.   -- YOU RECOGNIZE THAT BECAUSE OF COMPUTER CHANGES AND THE |
| 11:45AM | 18 | LIKE, YOU MAY NOT HAVE EVERYTHING THAT YOU LOOKED AT? |
| 11:45AM | 19 | A.   CORRECT. |
| 11:45AM | 20 | Q.   OKAY.  AND THE WAY THAT YOU WERE ABLE TO IDENTIFY |
| 11:46AM | 21 | PARTICULAR DOCUMENTS THAT YOU COULD PROVIDE TO THEM WAS, WAS IT |
| 11:46AM | 22 | DOCUMENTS THAT WERE BASED IN THE CLOUD THAT YOU HAD SIGNED |
| 11:46AM | 23 | ELECTRONICALLY -- |
| 11:46AM | 24 | A.   YES. |
| 11:46AM | 25 | Q.   -- YOU WERE ABLE TO PULL DOWN? |

SAWYER CROSS BY MR. WADE (RES.)                                    5750

| | | |
|---|---|---|
| 11:46AM | 1 | A.   YES. |
| 11:46AM | 2 | Q.   OKAY.  AND SO IF YOU HAD -- WHATEVER YOU STILL HAD ACCESS |
| 11:46AM | 3 | TO FOR THOSE PURPOSES, YOU WERE ABLE TO GIVE THEM, BUT I THINK |
| 11:46AM | 4 | YOU SAID YOU COULDN'T GUARANTEE THAT THERE WAS -- THIS WAS |
| 11:46AM | 5 | EVERYTHING BECAUSE YOU HAD CHANGED COMPUTERS A COUPLE OF TIMES? |
| 11:46AM | 6 | A.   YES. |
| 11:46AM | 7 | Q.   OKAY.  BUT IN ANY EVENT, YOU WERE, YOU WERE ABLE TO FIND |
| 11:46AM | 8 | SOME OF THE SOP'S THAT YOU LOOKED AT; RIGHT? |
| 11:46AM | 9 | A.   CORRECT. |
| 11:46AM | 10 | Q.   OKAY.  LET'S -- AND DO YOU RECALL THAT YOU KIND OF |
| 11:46AM | 11 | PROVIDED THEM IN GROUPS TO THE GOVERNMENT? |
| 11:46AM | 12 | A.   YES. |
| 11:46AM | 13 | Q.   OKAY.  LET'S TAKE A LOOK AT ONE OF THOSE GROUPS. |
| 11:46AM | 14 | TAKE A LOOK AT EXHIBIT 1366 -- I'M SORRY, 13655. |
| 11:47AM | 15 | AND DO YOU HAVE THAT IN FRONT OF YOU -- |
| 11:47AM | 16 | A.   UH-HUH, YES, I DO. |
| 11:47AM | 17 | Q.   -- DR. SAWYER? |
| 11:47AM | 18 | A.   YES, I DO. |
| 11:47AM | 19 | Q.   AND DO YOU RECOGNIZE THIS TO BE ONE OF THOSE GROUPS OF |
| 11:47AM | 20 | SOP'S THAT YOU REVIEWED AT THE TIME? |
| 11:47AM | 21 | A.   NOT SPECIFICALLY, BUT IT PROBABLY -- IT LOOKS LIKE IT |
| 11:47AM | 22 | COULD BE, YES. |
| 11:47AM | 23 | Q.   AND DO YOU SEE THE BATES LABEL ON THE BOTTOM RIGHT-HAND |
| 11:47AM | 24 | CORNER? |
| 11:47AM | 25 | A.   YES. |

SAWYER CROSS BY MR. WADE (RES.)                                  5751

| | | |
|---|---|---|
| 11:47AM | 1 | Q.   OKAY.  AND THESE ARE DOCUMENTS THAT YOU SIGNED, CORRECT, |
| 11:47AM | 2 | ELECTRONICALLY? |
| 11:47AM | 3 | A.   YES. |
| 11:47AM | 4 | Q.   OKAY. |
| 11:47AM | 5 | MOVE THE ADMISSION OF 13655. |
| 11:47AM | 6 | MR. LEACH:  NO OBJECTION. |
| 11:47AM | 7 | THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED. |
| 11:48AM | 8 | (DEFENDANT'S EXHIBIT 13655 WAS RECEIVED IN EVIDENCE.) |
| 11:48AM | 9 | BY MR. WADE: |
| 11:48AM | 10 | Q.   AND THIS PARTICULAR DOCUMENT, THIS HAPPENS TO BE THE FIRST |
| 11:48AM | 11 | PAGE IN EXHIBIT 13655, BUT THIS IS SORT OF A STANDARD TEMPLATE |
| 11:48AM | 12 | OF A POLICY OR PROCEDURE THAT YOU WERE ASKED TO REVIEW; IS THAT |
| 11:48AM | 13 | RIGHT? |
| 11:48AM | 14 | A.   YES. |
| 11:48AM | 15 | Q.   OKAY.  I WANT TO ASK YOU JUST A COUPLE OF QUESTIONS ABOUT |
| 11:48AM | 16 | THIS. |
| 11:48AM | 17 | IF I COULD BRING YOU TO THE PAGE BATES LABEL ENDING 558 IN |
| 11:48AM | 18 | THE BOTTOM RIGHT-HAND CORNER. |
| 11:48AM | 19 | A.   YES. |
| 11:48AM | 20 | Q.   DO YOU SEE THAT? |
| 11:48AM | 21 | A.   YES. |
| 11:48AM | 22 | Q.   AND DO YOU SEE THAT THAT IS THERANOS LIS APPLICATION USER |
| 11:48AM | 23 | GUIDE? |
| 11:48AM | 24 | DO YOU SEE THAT? |
| 11:49AM | 25 | A.   I'M SORRY, WHAT BATES LABEL IS THIS? |

SAWYER CROSS BY MR. WADE (RES.)                                    5752

11:49AM   1        Q.   558 IN THE BOTTOM RIGHT CORNER.

11:49AM   2        A.   I'M SORRY.  HOLD ON.  WRONG PAGE.

11:49AM   3             YES.

11:49AM   4        Q.   OKAY.  DO YOU SEE THAT?

11:49AM   5        A.   YES.

11:49AM   6        Q.   OKAY.  AND IT'S ALSO PROJECTED UP HERE.  DO YOU SEE --

11:49AM   7        A.   YEP.

11:49AM   8        Q.   SO THIS WAS A THERANOS LIS APPLICATION USER GUIDE?

11:49AM   9        A.   YES.

11:49AM  10        Q.   AND LIS STANDS FOR LABORATORY INFORMATION SYSTEMS; IS THAT

11:49AM  11   CORRECT?

11:49AM  12        A.   YES.

11:49AM  13        Q.   OKAY.  AND AM I -- IS IT CORRECT THAT THE LABORATORY

11:49AM  14   INFORMATION SYSTEM IS THE DATABASE THAT STORES ALL OF THE

11:49AM  15   LABORATORY TESTING INFORMATION AND PATIENT INFORMATION?

11:49AM  16        A.   YES.

11:49AM  17        Q.   AND QUALITY CONTROL INFORMATION?

11:50AM  18        A.   YEAH.  IT SHOULD, YES.

11:50AM  19        Q.   OKAY.  AND THIS WAS ONE OF THE POLICIES THAT YOU WERE

11:50AM  20   ASKED TO REVIEW AND SIGN?

11:50AM  21        A.   YES.

11:50AM  22        Q.   OKAY.  LET'S -- AND LET'S JUST GO TO PAGE 560 IN THE

11:50AM  23   BOTTOM RIGHT-HAND CORNER.

11:50AM  24             AND THE DEFINITIONS AND ABBREVIATIONS SECTION THERE,

11:50AM  25   SECTION 3, DO YOU SEE THAT?

SAWYER CROSS BY MR. WADE (RES.)                                    5753

11:50AM  1    A.   YES.

11:50AM  2    Q.   AND THIS SETS FORTH DIFFERENT SPECIFICATIONS FOR SOME OF

11:50AM  3    THE TERMS THAT ARE GOING TO BE USED IN THE POLICY AND THE

11:50AM  4    INFORMATION THAT IS CONTAINED WITHIN THE LIS; CORRECT?

11:50AM  5    A.   IT -- YEAH, IT SETS FORTH DEFINITIONS.  IT DEFINES TERMS

11:50AM  6    THAT ARE USED IN THE SOP.

11:50AM  7    Q.   OKAY.  AND WITHIN THIS APPLICATION USER GUIDE, IT ALSO

11:51AM  8    TALKS ABOUT, NOT NECESSARILY THE DEFINITION SPECIFICALLY, BUT

11:51AM  9    THE, THE USER GUIDE TALKS ABOUT HOW ONE CAN GO ABOUT USING THE

11:51AM 10    LIS AND OBTAIN INFORMATION FROM THE LIS; CORRECT?

11:51AM 11    A.   YES.

11:51AM 12    Q.   LET'S GO TO PAGE 652 AND LOOK AT 3.19.

11:51AM 13         FOR EXAMPLE, CRITICAL VALUES ARE SOMETHING THAT WAS

11:51AM 14    TRACKED WITHIN THE LIS; RIGHT?

11:51AM 15    A.   IT WOULD APPEAR SO, YES.

11:51AM 16    Q.   AND SO IN THE LIS YOU WOULD BE ABLE TO QUERY FOR THOSE

11:51AM 17    VALUES; RIGHT?

11:51AM 18    A.   I DON'T KNOW.  I HAVE NO EXPERIENCE WITH THEIR LIS.

11:51AM 19    Q.   OKAY.  BUT YOU UNDERSTAND WHAT THE POLICY IS SAYING;

11:51AM 20    RIGHT?

11:51AM 21    A.   YEAH.

11:51AM 22    Q.   AND THEN IF WE CAN GO DOWN TO 3.23, THERE'S A TEST LIST

11:52AM 23    DIRECTORY.

11:52AM 24         DO YOU SEE THAT?

11:52AM 25    A.   YES.

SAWYER CROSS BY MR. WADE (RES.)                                5754

11:52AM  1    Q.   AND YOU UNDERSTOOD THAT TESTS AND LISTS OF PANELS WERE

11:52AM  2    SOMETHING THAT WAS ORDINARILY TRACKED WITHIN AN LIS?

11:52AM  3    A.   IT WAS APPARENTLY TRACKED WITHIN THE THERANOS LIS.

11:52AM  4    Q.   OKAY.  AND IF WE GO TO 565, AND WE BLOW UP THE MIDDLE OF

11:52AM  5    THE PAGE.

11:52AM  6         THIS SHOWS HOW YOU CAN SEARCH FOR RECORDS WITHIN THE LIS;

11:52AM  7    RIGHT?

11:52AM  8    A.   IT WOULD APPEAR SO, YES.

11:52AM  9    Q.   AND IF WE CAN GO TO 569.

11:53AM  10        DO YOU HAVE THAT PAGE UP?

11:53AM  11   A.   YES.

11:53AM  12   Q.   IF WE CAN FOCUS ON THE BOTTOM.

11:53AM  13        DO YOU SEE WHERE IT SAYS REVIEW IMAGE?  IF WE CAN -- ABOUT

11:53AM  14   THREE-QUARTERS OF THE WAY DOWN.

11:53AM  15   A.   OH, OKAY.

11:53AM  16   Q.   DO YOU SEE RIGHT HERE (INDICATING)?

11:53AM  17   A.   AH.  OKAY.

11:53AM  18   Q.   AND IT SAYS THAT THERE WAS A WAY WITHIN THE LIS THAT YOU

11:53AM  19   COULD VIEW THE NANOTAINER IMAGE?

11:53AM  20   A.   I WOULD NOT NECESSARILY INTERPRET THAT THAT'S WHAT THAT

11:53AM  21   SAYS.

11:53AM  22        IT IS TELLING YOU THAT THE NANOTAINER IMAGE NEEDS TO BE

11:53AM  23   VIEWED.  IT DOESN'T TELL ME THAT YOU CAN DO THAT WITHIN THE

11:53AM  24   LIS.

11:53AM  25   Q.   OKAY.  FAIR ENOUGH.

SAWYER CROSS BY MR. WADE (RES.)                                    5755

11:53AM   1          WHAT IS A NANOTAINER?

11:53AM   2     A.   I DON'T KNOW.

11:53AM   3     Q.   OKAY.  DID YOU UNDERSTAND THAT IT WAS THE SMALL SAMPLE

11:54AM   4     VIAL --

11:54AM   5     A.   NO.

11:54AM   6     Q.   -- THAT THERANOS USED AT THE TIME?

11:54AM   7     A.   NO.

11:54AM   8     Q.   YOU DIDN'T UNDERSTAND THAT AT THE TIME?

11:54AM   9     A.   NO.

11:54AM  10     Q.   DID YOU ASK MR. BALWANI ANY QUESTIONS ABOUT THE

11:54AM  11     NANOTAINER?

11:54AM  12     A.   NO.

11:54AM  13     Q.   OKAY.  IF WE GO TO 583 AND BLOW UP THE TOP.

11:54AM  14          DO YOU SEE THAT THIS PAGE AND THE PAGE THAT FOLLOWS TALKS

11:54AM  15     ABOUT HOW YOU CAN PULL UP ALL OF THE RESULTS FOR PARTICULAR

11:54AM  16     PATIENTS OR PHYSICIANS OR PROVIDERS?

11:55AM  17     A.   YES, IT APPEARS THAT WAY.

11:55AM  18     Q.   OKAY.  IF WE CAN GO TO 585.  IF WE CAN PULL UP THE THIRD

11:55AM  19     BULLET.

11:55AM  20          AND DO YOU SEE THERE THAT THERE WAS AN OPTION WITHIN THE

11:55AM  21     LIS TO INDICATE THAT VENOUS DRAWS ONLY COULD BE IDENTIFIED AS A

11:55AM  22     PREFERENCE?

11:55AM  23     A.   I SEE THAT, YES.

11:55AM  24     Q.   AND SO DID YOU UNDERSTAND THAT IF DOCTORS DIDN'T WANT THE

11:55AM  25     MICRO-SAMPLE TAKEN, THAT THEY COULD, THEY COULD LET THE COMPANY

SAWYER CROSS BY MR. WADE (RES.)                           5756

| | | |
|---|---|---|
| 11:55AM | 1 | KNOW THAT VENOUS DRAWS COULD BE USED AS A DEFAULT? |
| 11:55AM | 2 | A.   I WAS NOT AWARE OF POLICY AROUND DRAWING -- THE DECISIONS |
| 11:55AM | 3 | FOR DRAWING VENOUS OR CAPILLARY BLOOD. |
| 11:56AM | 4 | Q.   OKAY.  AND IN ADDITION TO THIS LIS POLICY, THERE WERE |
| 11:56AM | 5 | HUNDREDS OF POLICIES THAT YOU REVIEWED IN CONNECTION WITH YOUR |
| 11:56AM | 6 | WORK AT THE COMPANY. |
| 11:56AM | 7 | IS THAT FAIR? |
| 11:56AM | 8 | A.   YEAH, PROBABLY A COUPLE HUNDRED. |
| 11:56AM | 9 | Q.   AND I THINK SOMETIMES THAT WOULD INCLUDE, SOMETIMES THAT |
| 11:56AM | 10 | WOULD INCLUDE ASSAY VERIFICATION INFORMATION? |
| 11:56AM | 11 | A.   YES. |
| 11:56AM | 12 | Q.   RIGHT?  FOR FDA CLEARED DEVICES? |
| 11:56AM | 13 | A.   YES, YES. |
| 11:56AM | 14 | Q.   AND DO YOU RECALL THERE WERE A COUPLE INSTANCES WHERE |
| 11:56AM | 15 | THERE WERE LAB DEVELOPED TESTS THAT YOU LOOKED AT AS WELL? |
| 11:56AM | 16 | A.   YES. |
| 11:56AM | 17 | Q.   AND IN ADDITION TO -- AND THOSE WOULD REQUIRE VALIDATION |
| 11:57AM | 18 | PLANS; RIGHT? |
| 11:57AM | 19 | A.   YES. |
| 11:57AM | 20 | Q.   THE -- AND IF WE CAN LOOK AT EXHIBIT 4533, WHICH IS IN |
| 11:57AM | 21 | EVIDENCE. |
| 11:57AM | 22 | MAY I PUBLISH, YOUR HONOR? |
| 11:57AM | 23 | THE COURT:  YES. |
| 11:57AM | 24 | BY MR. WADE: |
| 11:57AM | 25 | Q.   DO YOU RECALL THIS DOCUMENT?  THE GOVERNMENT ASKED YOU A |

SAWYER CROSS BY MR. WADE (RES.)                                    5757

11:57AM   1    FEW QUESTIONS ABOUT THIS.

11:57AM   2    A.   IS THIS 4533?

11:57AM   3    Q.   4533, CORRECT.

11:57AM   4         CAN WE GO BACK?

11:57AM   5         DO YOU RECALL THIS DOCUMENT?

11:57AM   6    A.   I CAN'T REALLY SEE IT, AND I AM NOT SEEING 4533 ON HERE --

11:57AM   7    IN HERE.

11:57AM   8    Q.   IT'S IN EVIDENCE.  I THINK THE GOVERNMENT DIDN'T -- JUST

11:58AM   9    CALLED IT UP BECAUSE IT WAS IN EVIDENCE.

11:58AM  10         MAYBE I'LL PUT IT ON YOUR SCREEN, AND IF NEED BE, I CAN

11:58AM  11    TRY TO GET YOU A HARD COPY.  OKAY?  I JUST HAVE A COUPLE OF

11:58AM  12    QUESTIONS.

11:58AM  13    A.   OKAY.  THANK YOU.

11:58AM  14    Q.   AND DO YOU RECALL THIS DOCUMENT -- IF WE LOOK AT THE CHART

11:58AM  15    ON THE BOTTOM, THIS RELATED TO TESTS THAT WERE DONE ON

11:58AM  16    THERANOS'S DEVICE?

11:58AM  17    A.   OH, RIGHT.

11:58AM  18    Q.   AND DO YOU RECALL THAT MR. LEACH ASKED YOU SOME QUESTIONS

11:58AM  19    ABOUT THIS?

11:58AM  20    A.   YES.

11:58AM  21    Q.   AND I JUST WANT TO FOCUS ON, IF WE CAN HIGHLIGHT THE

11:58AM  22    INITIAL COLUMN GOING DOWN.

11:58AM  23         DO YOU SEE THAT?

11:58AM  24    A.   YES.

11:58AM  25    Q.   OKAY.  AND JUST SO WE'RE CLEAR, NONE OF THOSE TESTS CAME

SAWYER CROSS BY MR. WADE (RES.)                                    5758

| | | |
|---|---|---|
| 11:58AM | 1 | INTO THE LAB WHEN YOU WERE SERVING AS THE LABORATORY DIRECTOR; |
| 11:58AM | 2 | CORRECT? |
| 11:58AM | 3 | A.   CORRECT. |
| 11:58AM | 4 | Q.   OKAY.  AND SO ORDINARILY BEFORE A TEST COMES INTO THE LAB, |
| 11:58AM | 5 | THERE'S A VALIDATION REPORT THAT NEEDS TO BE PREPARED IF IT'S |
| 11:58AM | 6 | AN LDT; CORRECT? |
| 11:58AM | 7 | A.   CORRECT. |
| 11:58AM | 8 | Q.   AND THAT HAPPENS BEFORE YOU COULD OFFER THE TEST WITHIN A |
| 11:59AM | 9 | CLIA LAB? |
| 11:59AM | 10 | A.   CORRECT. |
| 11:59AM | 11 | Q.   AND NONE OF THESE PARTICULAR LDT'S CAME ON BOARD WHEN YOU |
| 11:59AM | 12 | WERE SERVING AS CO-LABORATORY DIRECTOR; CORRECT? |
| 11:59AM | 13 | A.   CORRECT. |
| 11:59AM | 14 | Q.   AND IF THE COMPANY STOPPED DOING CERTAIN LDT'S FOR |
| 11:59AM | 15 | BUSINESS REASONS OF SOME KIND, THAT WOULDN'T NECESSARILY BE |
| 11:59AM | 16 | SOMETHING THAT YOU WOULD NEED TO OPINE ON, WOULD IT? |
| 11:59AM | 17 | A.   NO. |
| 11:59AM | 18 | Q.   THE -- THERE WERE -- YOU WERE ASKED ABOUT DELEGATIONS LAST |
| 12:00PM | 19 | TIME. |
| 12:00PM | 20 | DO YOU RECALL THAT? |
| 12:00PM | 21 | A.   I DO. |
| 12:00PM | 22 | Q.   AND I BELIEVE YOU SAID THERE WAS A DELEGATION MADE, I |
| 12:00PM | 23 | THINK YOU RECALLED ONE DELEGATION TO A TECHNICAL SUPERVISOR? |
| 12:00PM | 24 | A.   I LOOKED AT MY NOTES AND MY INFORMATION OVER THE WEEKEND. |
| 12:00PM | 25 | THERE WAS, YES, ONE DELEGATION, BUT IT WAS NOT THE TECHNICAL |

SAWYER CROSS BY MR. WADE (RES.)                                    5759

12:00PM   1    SUPERVISOR.  IT WAS THE QA/QC MANAGER.

12:00PM   2    Q.   OKAY.  OKAY.  SO YOU WENT AND DID SOME RESEARCH OVER THE

12:00PM   3    WEEKEND?

12:00PM   4    A.   I LOOKED AT MY NOTES, YEAH.

12:00PM   5    Q.   OKAY.  DID THE GOVERNMENT ASK YOU FOR A COPY OF YOUR

12:00PM   6    NOTES, BY ANY CHANCE, WHEN THEY TALKED TO YOU?

12:00PM   7    A.   NO.

12:00PM   8    Q.   AND IT WAS A QA/QC SUPERVISOR.

12:00PM   9         WAS THAT A MR. GEE, LANGLY GEE?

12:00PM   10   A.   I THINK SO, YEAH.  IT WAS ACTUALLY A MANAGER, NOT A

12:01PM   11   SUPERVISOR.

12:01PM   12   Q.   OKAY.  DO YOU RECALL IT BEING MR. GEE, LANGLY GEE?

12:01PM   13   A.   YES.

12:01PM   14   Q.   OKAY.  AND THE QA/QC SUPERVISOR IS THE PERSON WHO IS

12:01PM   15   RESPONSIBLE FOR DOING ALL OF THE QUALITY CONTROL WORK WITHIN

12:01PM   16   THE LAB; RIGHT?

12:01PM   17   A.   OR REVIEWING IT.  NOT NECESSARILY DOING IT, BUT REVIEWING

12:01PM   18   IT AND ANALYZING IT.

12:01PM   19   Q.   AND YOU RECALL THAT YOU REVIEWED A FORMAL WRITTEN

12:01PM   20   DELEGATION FOR HIM THAT WAS SENT TO YOU AT SOME POINT?

12:01PM   21   A.   YES.

12:01PM   22   Q.   OKAY.  AND THAT WASN'T NECESSARILY ONE OF THE MATERIALS

12:01PM   23   THAT EXISTED WITHIN YOUR COMPUTER GIVEN --

12:01PM   24   A.   YES, IT WAS.

12:01PM   25   Q.   OH, IT WAS?

SAWYER CROSS BY MR. WADE (RES.)                                    5760

| | | |
|---|---|---|
| 12:01PM | 1 | A.   YES. |
| 12:01PM | 2 | Q.   AND SO YOU SIGNED THAT DELEGATION FOR MR. GEE SO HE COULD |
| 12:01PM | 3 | DO THAT WORK? |
| 12:01PM | 4 | A.   YES. |
| 12:01PM | 5 | Q.   AND YOU DON'T RECALL AS YOU SIT HERE TODAY WHETHER YOU SAW |
| 12:02PM | 6 | ANY OTHER DELEGATIONS? |
| 12:02PM | 7 | A.   I DO NOT BELIEVE THAT I DID. |
| 12:02PM | 8 | Q.   OKAY.  AND DO YOU RECALL WHETHER THERE WERE ANY |
| 12:02PM | 9 | DELEGATIONS THAT WERE IN PLACE AT THE TIME THAT YOU CAME IN? |
| 12:02PM | 10 | A.   I DID NOT SEE ANY. |
| 12:02PM | 11 | Q.   OKAY.  SO THERE MAY HAVE BEEN DELEGATIONS, YOU JUST DIDN'T |
| 12:02PM | 12 | SEE ANY? |
| 12:02PM | 13 | A.   CORRECT. |
| 12:02PM | 14 | Q.   THE -- I WANT TO ASK YOU ABOUT ONE MORE SOP. |
| 12:02PM | 15 | A.   OKAY. |
| 12:02PM | 16 | MR. WADE:  MAY I APPROACH, YOUR HONOR? |
| 12:03PM | 17 | THE COURT:  YES. |
| 12:03PM | 18 | BY MR. WADE: |
| 12:03PM | 19 | Q.   (HANDING.) |
| 12:03PM | 20 | A.   THANK YOU. |
| 12:03PM | 21 | Q.   I'M HANDING YOU WHAT IS MARKED AS EXHIBIT 5400.  AND YOU |
| 12:03PM | 22 | RECOGNIZE -- THIS IS A POLICY RELATING TO FINGERSTICK |
| 12:03PM | 23 | COLLECTION DATED 11-17-2015. |
| 12:03PM | 24 | DO YOU SEE THAT? |
| 12:03PM | 25 | A.   YES. |

SAWYER CROSS BY MR. WADE (RES.)                                    5761

12:03PM   1    Q.   AND IF YOU LOOK AT THE LAST PAGE UNDER THE REVISION

12:03PM   2    HISTORY --

12:03PM   3    A.   OKAY.

12:03PM   4    Q.   -- DO YOU SEE THAT OTHER VERSIONS OF THIS WERE APPROVED

12:03PM   5    DURING YOUR TENURE AS CO-LABORATORY DIRECTOR?

12:04PM   6    A.   YES.

12:04PM   7            MR. WADE:  MOVE THE ADMISSION OF 5400.

12:04PM   8            MR. LEACH:  FOUNDATION.

12:04PM   9            THE COURT:  CAN YOU ASK A FEW MORE QUESTIONS

12:04PM  10    REGARDING FOUNDATION?

12:04PM  11            MR. WADE:  SURE.

12:04PM  12    Q.   DO YOU RECALL REVIEWING THE FINGERSTICK COLLECTION SOP?

12:04PM  13    A.   ONCE.

12:04PM  14    Q.   OKAY.  AND YOU UNDERSTAND THAT WITHIN THE LAB SOME

12:04PM  15    VERSIONS -- SOMETIMES VERSIONS ARE UPDATED AND THEY CHANGE OVER

12:04PM  16    TIME?

12:04PM  17    A.   YES.

12:04PM  18    Q.   OKAY.  AND THIS ISN'T THE PRECISE VERSION THAT YOU SAW;

12:04PM  19    CORRECT?

12:04PM  20    A.   CORRECT.

12:04PM  21    Q.   OKAY.  I'D LIKE TO ASK SOME QUESTIONS ABOUT HOW THIS MAY

12:04PM  22    HAVE DIFFERED FROM YOUR VERSION IF YOU RECALL.

12:04PM  23            AND I WOULD OFFER 5400.

12:04PM  24            MR. LEACH:  SAME OBJECTION, YOUR HONOR.

12:04PM  25            THE COURT:  ARE YOU GOING TO CONTINUE A LITTLE BIT

SAWYER CROSS BY MR. WADE (RES.)                           5762

12:04PM   1    MORE FOUNDATION ABOUT HOW SHE KNOWS THIS?

12:04PM   2              MR. WADE:  SURE.

12:04PM   3    Q.  AS PART OF THE REVIEW OF POLICIES, YOU WERE -- YOU WOULD

12:05PM   4    BE SENT DIFFERENT PAPERS THROUGH DOCUSIGN?

12:05PM   5        DO YOU RECALL THAT?

12:05PM   6    A.  YES.

12:05PM   7    Q.  AND I THINK YOU JUST TESTIFIED A FEW MINUTES AGO THAT

12:05PM   8    BECAUSE OF THE COMPUTER CHANGE, YOU DIDN'T NECESSARILY HAVE ALL

12:05PM   9    OF THE POLICIES IN YOUR POSSESSION.

12:05PM   10   A.  YES, THAT'S TRUE.

12:05PM   11   Q.  AND DO YOU RECALL THAT WHEN YOU MET WITH THE GOVERNMENT,

12:05PM   12   YOU MENTIONED TO THEM HOW YOU HAD LOOKED AT SOME OF -- A

12:05PM   13   FINGERSTICK SOP?

12:05PM   14   A.  YES.

12:05PM   15   Q.  AND, AND DO YOU RECALL THAT THAT FINGERSTICK SOP SET FORTH

12:05PM   16   THE SPECIFIC METHODS BY WHICH THERANOS WOULD GO ABOUT

12:05PM   17   COLLECTING FINGERSTICK SAMPLES?

12:05PM   18   A.  YES.

12:05PM   19   Q.  AND THEY HAD, THEY HAD A SPECIFIC PROCESS IN PLACE; RIGHT?

12:05PM   20   A.  YES.

12:05PM   21   Q.  AND THEY -- YOU HAD SIGNED A COUPLE OF DIFFERENT VERSIONS

12:05PM   22   OF THAT?

12:05PM   23   A.  NO.  I SIGNED ONE.

12:05PM   24   Q.  JUST ONE?

12:05PM   25   A.  YES.

SAWYER CROSS BY MR. WADE (RES.)                                    5763

12:05PM   1      Q.   OKAY.  AND THAT WAS AN UPDATE ON A PRIOR POLICY THAT WAS

12:05PM   2      PUT IN PLACE?

12:05PM   3      A.   I BELIEVE SO.

12:05PM   4      Q.   OKAY.  AND HAD YOU AT THE TIME EVER SEEN SUCH AN ELABORATE

12:06PM   5      AND SPECIFIC PROCEDURE FOR FINGERSTICK?

12:06PM   6      A.   FOR FINGERSTICKS?

12:06PM   7      Q.   YEAH.

12:06PM   8      A.   NO.

12:06PM   9      Q.   OKAY.  AND SO IS THAT PART OF THE REASON WHY IT STANDS,

12:06PM   10     STANDS OUT IN YOUR MIND?

12:06PM   11     A.   UM, NO, NOT PARTICULARLY.

12:06PM   12          IT STANDS OUT IN MY MIND BECAUSE I KNEW THAT THEY WERE

12:06PM   13     WORKING ON SOME FINGERSTICK TECHNOLOGY, AND I WAS INTERESTED IN

12:06PM   14     THAT, AND SO I RECALLED SEEING SOMETHING -- I WAS INTERESTED IN

12:06PM   15     SOMETHING THAT MIGHT RELATE TO IT, AND THAT'S WHY I RECALL

12:06PM   16     SEEING IT.

12:06PM   17     Q.   OKAY.  AND DO YOU RECALL SEEING SOME SPECIFIC PICTURES

12:06PM   18     ABOUT EXACTLY HOW BLOOD WOULD BE DRAWN AND THE LIKE?

12:06PM   19     A.   YOU KNOW, I DON'T.  I CAN'T SAY THAT THEY WEREN'T THERE,

12:06PM   20     BUT I DO NOT RECALL PICTURES IN THE VERSION THAT I SIGNED.

12:06PM   21     Q.   OKAY.  AND DO YOU RECALL THAT THERE WERE SOME PICTURES

12:07PM   22     ABOUT -- WITH THE CTN DEVICE THAT THERANOS USED?

12:07PM   23     A.   I DON'T.

12:07PM   24     Q.   OKAY.  DO YOU RECALL THAT THERE WAS A PRETTY ELABORATE

12:07PM   25     PROCESS WHERE THEY WOULD WARM THE FINGER AND NOTE SPECIFIC

SAWYER CROSS BY MR. WADE (RES.)                                      5764

12:07PM   1    PLACES ON THE FINGER WHERE THEY WOULD DRAW THE SAMPLE FROM?

12:07PM   2    A.   THAT'S PRETTY STANDARD FOR FINGERSTICKS.

12:07PM   3    Q.   OKAY.

12:07PM   4    A.   ACTUALLY, I DON'T RECALL THAT.  AND I ACTUALLY DO NOT

12:07PM   5    BELIEVE THAT THERE WERE ANY PICTURES OF THE COLLECTION DEVICE

12:07PM   6    BECAUSE LOOKING -- I JUST FOUND ONE IN THIS, AND THAT IS NOT

12:07PM   7    SOMETHING THAT I HAVE EVER SEEN BEFORE.

12:07PM   8    Q.   OKAY.  AND DO YOU RECALL REFERENCES TO THERANOS'S

12:07PM   9    NANOTAINERS?

12:07PM  10    A.   POSSIBLY.  I DON'T SPECIFICALLY RECALL.

12:07PM  11    Q.   OKAY.

12:08PM  12         I'LL OFFER THE DOCUMENT.

12:08PM  13              MR. LEACH:  SAME OBJECTION, YOUR HONOR.

12:08PM  14              THE COURT:  I DON'T THINK THERE'S ENOUGH FOUNDATION

12:08PM  15    AS TO THIS DOCUMENT.  SHE HAS KNOWLEDGE ABOUT THIS AREA, BUT

12:08PM  16    NOT THIS DOCUMENT, SO I'LL SUSTAIN THE OBJECTION.

12:08PM  17              MR. WADE:  RIGHT.  I UNDERSTAND.

12:08PM  18    Q.   YOUR RECOLLECTION AS YOU SIT HERE TODAY IS THAT THE

12:08PM  19    FINGERSTICK COLLECTION WOULD HAVE BEEN AN EARLIER VERSION OF

12:08PM  20    THE DOCUMENT I'VE HANDED YOU; IS THAT RIGHT?

12:08PM  21    A.   YES.

12:08PM  22    Q.   OKAY.  FAIR ENOUGH.

12:08PM  23         THE -- LET ME GO TO -- THE -- AT THE TIME THAT YOU

12:09PM  24    TRANSITIONED OUT OF SERVING AS THE CO-LABORATORY DIRECTOR, DO

12:09PM  25    YOU RECALL THAT THAT WAS COMMUNICATED TO THE COMPANY, THAT YOU

SAWYER CROSS BY MR. WADE (RES.)                                    5765

12:09PM   1      WERE GOING TO BE MAKING THE TRANSITION AND FILING SOME

12:09PM   2      PAPERWORK?

12:09PM   3      A.   YES.

12:09PM   4      Q.   LET'S LOOK AT 10584.

12:10PM   5           DO YOU HAVE THAT IN FRONT OF YOU?

12:10PM   6      A.   YES.

12:10PM   7      Q.   AND IS THIS A DOCUMENT THAT RELATES TO YOUR TRANSITION --

12:10PM   8      YOUR FORMAL TRANSITION FROM A PAPERWORK STANDPOINT OUT OF

12:10PM   9      THERANOS?

12:10PM   10     A.   YES.

12:10PM   11              MR. WADE:  OKAY.  MOVE THE ADMISSION OF 10584.

12:10PM   12              MR. LEACH:  NO OBJECTION.

12:10PM   13              THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED.

12:10PM   14        (DEFENDANT'S EXHIBIT 10584 WAS RECEIVED IN EVIDENCE.)

12:10PM   15              MR. WADE:  AND IF WE CAN GO JUST GO TO THE BOTTOM

12:10PM   16     EMAIL.

12:10PM   17     Q.   AND THIS IS AN EMAIL FROM MR. HURST WHERE HE JUST PROVIDES

12:10PM   18     MR. BALWANI WITH THAT REMINDER THAT YOU'RE GOING TO BE ENDING

12:10PM   19     YOUR SERVICES AS CO-DIRECTOR JUNE 30TH.

12:10PM   20           DO YOU SEE THAT?

12:10PM   21     A.   YES.

12:10PM   22     Q.   AND THIS WAS WHERE YOU AGREED TO STAY ABOUT -- WAS IT

12:10PM   23     ABOUT A MONTH AND A HALF PAST YOUR INITIAL CONTRACT?

12:11PM   24     A.   YES.

12:11PM   25     Q.   AND IT NOTES THAT YOU'LL FILE THAT NOTIFICATION WITH LFS,

SAWYER CROSS BY MR. WADE (RES.)                                      5766

12:11PM   1      OR MR. HURST WILL.

12:11PM   2           DO YOU SEE THAT?

12:11PM   3      A.   I WILL, YEAH.

12:11PM   4      Q.   AND WHAT IS LFS?

12:11PM   5      A.   LABORATORY FIELD SERVICES.

12:11PM   6      Q.   AND IS THAT THE PART OF THE CALIFORNIA DEPARTMENT OF

12:11PM   7      HEALTH THAT DEALS WITH LABS?

12:11PM   8      A.   YES.

12:11PM   9      Q.   OKAY.  AND HE BASICALLY SAYS, IF YOU HAVE ANY QUESTIONS,

12:11PM  10      MR. BALWANI IS INVITED TO ASK THEM; CORRECT?

12:11PM  11      A.   YES.

12:11PM  12      Q.   AND THERE'S NO INDICATION -- THIS WAS JUST TO END THE

12:11PM  13      PORTION OF THE SERVICES RELATING TO YOUR CO-DIRECTORSHIP;

12:11PM  14      RIGHT?

12:11PM  15      A.   CORRECT.

12:11PM  16      Q.   ALL RIGHT.  AND IF WE JUST GO UP THE CHAIN.  MR. BALWANI

12:11PM  17      THANKS YOU AND SAYS, "PLEASE LET US KNOW IF ANYTHING HAS

12:12PM  18      CHANGED OR CHANGES AND LYNETTE WANTS TO CONTINUE WORKING;"

12:12PM  19      RIGHT?

12:12PM  20      A.   CORRECT.

12:12PM  21      Q.   HE WAS HAPPY TO CONTINUE TO HAVE YOUR SERVICES; RIGHT?

12:12PM  22      A.   YES.

12:12PM  23      Q.   OKAY.  AND LET'S GO UP.

12:12PM  24           YOU NOTE THAT, FOR THE RECORDS, ATTACHED IS THE FORM 193

12:12PM  25      THAT IS GOING TO BE SENT TO LABORATORY FIELD SERVICES?

SAWYER CROSS BY MR. WADE (RES.)                                    5767

```
12:12PM   1            DO YOU SEE THAT?

12:12PM   2     A.   YES.

12:12PM   3     Q.   OKAY.  AND IT'S GOING TO BE -- EVEN THOUGH YOU'RE SENDING

12:12PM   4     THIS ON JUNE 23RD, IT'S GOING TO BE EFFECTIVE -- IT'S GOING TO

12:12PM   5     BE EFFECTIVE JUNE 30TH.

12:12PM   6            DO YOU SEE THAT?

12:12PM   7     A.   YES.

12:12PM   8     Q.   AND YOU NOTE -- YOU'RE STILL LOOKING AT A BATCH OF

12:12PM   9     DOCUMENTS; RIGHT?

12:12PM  10     A.   YES.

12:12PM  11     Q.   AND SO YOU WORKED RIGHT UP UNTIL THE END?

12:12PM  12     A.   YES.

12:12PM  13     Q.   OKAY.  AND IF WE GO TO THE ATTACHMENT, THIS IS A LETTER

12:13PM  14     THAT NOTIFIES THERANOS THAT YOU'RE GOING TO BE STEPPING DOWN AS

12:13PM  15     CO-DIRECTOR; CORRECT?

12:13PM  16     A.   NO.  THAT'S ACTUALLY A LETTER SENT TO THE LABORATORY FIELD

12:13PM  17     SERVICES REGARDING THERANOS.

12:13PM  18     Q.   FAIR ENOUGH.

12:13PM  19            IS THAT THE 111 BROADWAY?  IF WE GO UP ON THE TOP.

12:13PM  20     A.   YEAH -- NO.

12:13PM  21     Q.   THERE'S AN ADDRESS MISSING THERE, BUT --

12:13PM  22     A.   YES.

12:13PM  23     Q.   -- DO YOU HAVE IT IN YOUR DOCUMENT?

12:13PM  24     A.   YES.

12:13PM  25     Q.   AND SO IT WAS ADDRESSED TO LABORATORY FIELD SERVICES?
```

SAWYER CROSS BY MR. WADE (RES.)                                    5768

12:13PM   1    A.   THE OVERALL MAILING WAS ADDRESSED TO LABORATORY FIELD

12:13PM   2    SERVICES.

12:13PM   3    Q.   OKAY.  AND IF WE GO TO THE NEXT PAGE --

12:13PM   4    A.   THAT'S THE FORM THAT THE LETTER WENT WITH.

12:13PM   5    Q.   OKAY.  AND IT NOTES ON THIS FORM THAT YOU WERE REMOVED AS

12:13PM   6    OF JUNE 30TH; CORRECT?

12:13PM   7    A.   RIGHT.

12:13PM   8    Q.   OKAY.  AND DO YOU RECALL THAT A LITTLE BIT LATER THERE WAS

12:13PM   9    SOME CONFUSION AS TO WHETHER THE PAPERWORK HAD BEEN PROCESSED

12:14PM  10    CORRECTLY?

12:14PM  11    A.   I DO.

12:14PM  12    Q.   AND DO YOU RECALL THAT IN CONNECTION WITH SOME MOCK AUDIT

12:14PM  13    WORK THAT MR. HURST WAS DOING, THAT THEY REALIZED THAT YOU WERE

12:14PM  14    STILL ON THE PAPERWORK?

12:14PM  15    A.   I DID NOT KNOW THAT.

12:14PM  16           MR. LEACH:  OBJECTION.  VAGUE, FOUNDATION.

12:14PM  17           THE COURT:  WELL, I'LL ALLOW THAT LAST ANSWER TO

12:14PM  18    REMAIN.  THE LAST ANSWER WAS THAT SHE WAS NOT AWARE OF THAT.

12:14PM  19    BY MR. WADE:

12:14PM  20    Q.   YOU WERE NOT AWARE OF THAT.  OKAY.

12:14PM  21        DO YOU RECALL BEING CONTACTED BY SOMEONE AT THE COMPANY IN

12:14PM  22    AUGUST OF 2015 TO RAISE THIS ISSUE WITH YOU?

12:14PM  23    A.   YES.

12:14PM  24    Q.   AND DO YOU RECALL WHO AT THE COMPANY CONTACTED YOU?

12:14PM  25    A.   I BELIEVE IT WAS MR. YOUNG.

SAWYER CROSS BY MR. WADE (RES.)                                         5769

12:15PM  1      Q.   DANIEL YOUNG?

12:15PM  2      A.   YEAH.

12:15PM  3      Q.   AND WERE YOU AWARE AT THE TIME THAT, AS MR. HURST'S

12:15PM  4      SERVICES CONTINUED, HE WAS DOING MOCK AUDITS TO HELP THE

12:15PM  5      COMPANY PREPARE FOR A CLIA INSPECTION?

12:15PM  6           MR. LEACH:  OBJECTION.  ASSUMES FACTS.

12:15PM  7           THE COURT:  WELL, OVERRULED AS TO THE FORM OF THE

12:15PM  8      QUESTION, IT WAS WHETHER SHE WAS AWARE.

12:15PM  9           THE WITNESS:  NO, I WAS NOT AWARE.

12:15PM  10     BY MR. WADE:

12:15PM  11     Q.   YOU WEREN'T AWARE OF THAT.  OKAY.

12:15PM  12          AND SO -- WELL, LET'S GO TO EXHIBIT 13158.

12:15PM  13     A.   UH-HUH.

12:15PM  14     Q.   DO YOU ALSO RECALL THAT THERE WAS A NEED THAT AROSE TO GET

12:15PM  15     A COPY OF YOUR CLINICAL LABORATORY BIOANALYST CERTIFICATE?

12:16PM  16     A.   YES.

12:16PM  17     Q.   SO THAT THE COMPANY WOULD HAVE IT FOR ITS PAPERWORK IN

12:16PM  18     ADVANCE OF AN INSPECTION THAT THEY WERE ANTICIPATING?

12:16PM  19     A.   I DIDN'T KNOW WHETHER IT WAS IN ADVANCE OF THE INSPECTION

12:16PM  20     OR AS A RESULT OF THE INSPECTION, BUT YES.

12:16PM  21     Q.   OKAY.  FAIR ENOUGH.

12:16PM  22          AND IS EMAIL 13158 AN EMAIL THAT YOU SENT TO DANIEL YOUNG

12:16PM  23     RELATING TO THAT LICENSE?

12:16PM  24     A.   YES.

12:16PM  25     Q.   OKAY.

SAWYER CROSS BY MR. WADE (RES.)                                    5770

12:16PM  1          MOVE THE ADMISSION OF 13158.

12:16PM  2                MR. LEACH:  NO OBJECTION, YOUR HONOR.

12:16PM  3                THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:16PM  4          (DEFENDANT'S EXHIBIT 13158 WAS RECEIVED IN EVIDENCE.)

12:16PM  5   BY MR. WADE:

12:16PM  6   Q.   AND THIS IS AN EMAIL WHERE YOU SAY, "HI DANIEL,

12:16PM  7          "ATTACHED IS A SCANNED IMAGE OF MY CURRENT BIOANALYST

12:17PM  8   LICENSE."

12:17PM  9          DO YOU SEE THAT?

12:17PM  10  A.   YES.

12:17PM  11  Q.   AND I THINK YOU SAID THIS ON DIRECT TESTIMONY, BUT IS THE

12:17PM  12  REASON THAT THEY NEED THAT IS BECAUSE THAT BIOANALYST LICENSE

12:17PM  13  IS WHAT GAVE YOU THE ABILITY TO SERVE AS A LABORATORY DIRECTOR?

12:17PM  14  A.   YES.

12:17PM  15  Q.   AND SO AS PART OF THE DOCUMENTATION THAT THE COMPANY WAS

12:17PM  16  MAINTAINING, THEY WANTED TO MAKE SURE THAT THEY HAD A COPY OF

12:17PM  17  THAT IN THEIR FILES; IS THAT RIGHT?

12:17PM  18  A.   YES.

12:17PM  19  Q.   AND YOU SENT THIS TO DANIEL YOUNG.

12:17PM  20          DID DANIEL YOUNG CALL YOU TO ASK YOU FOR IT?

12:17PM  21  A.   I DON'T RECALL WHETHER IT WAS -- I DON'T BELIEVE IT WAS A

12:17PM  22  CALL, NO.

12:17PM  23  Q.   OKAY.  YOU SEE MR. HURST IS COPIED HERE?

12:17PM  24  A.   YES.

12:17PM  25  Q.   AND DO YOU KNOW WHETHER YOU HEARD ABOUT THIS FROM

SAWYER CROSS BY MR. WADE (RES.)                                    5771

12:17PM   1        MR. HURST?

12:17PM   2    A.   I DON'T RECALL.

12:17PM   3    Q.   YOU DON'T RECALL.

12:17PM   4        BUT YOU KNEW SOMEONE IN THIS TIME PERIOD WAS ASKING FOR A

12:17PM   5    COPY OF THAT PAPERWORK?

12:17PM   6    A.   UH-HUH.

12:17PM   7    Q.   AND YOU DON'T RECALL WHETHER IT WAS IN CONNECTION WITH

12:17PM   8    AUDIT PREPARATION?

12:17PM   9    A.   NO, I DIDN'T KNOW WHETHER IT WAS IN CONNECTION WITH

12:18PM  10    PREPARATION OR WHETHER IT WAS THE RESULT OF AN AUDIT FINDING.

12:18PM  11    Q.   FAIR ENOUGH.

12:18PM  12        THERE WAS ALSO -- IN AND AROUND THE SAME TIME PERIOD,

12:18PM  13    THERE WAS A NEED TO TRY TO CLEAR UP THAT MISCOMMUNICATION TO

12:18PM  14    MAKE SURE THAT YOU WERE REMOVED FROM THE PAPERWORK?

12:18PM  15    A.   YES.

12:18PM  16    Q.   DO YOU RECALL THAT?

12:18PM  17        AND YOU WORKED COOPERATIVELY WITH THE COMPANY TO MAKE SURE

12:18PM  18    THAT THAT WAS ADDRESSED; RIGHT?

12:18PM  19    A.   OH, YES.

12:18PM  20    Q.   AND THAT WAS JUST AN ADMINISTRATIVE ISSUE; RIGHT?

12:18PM  21    A.   YES.

12:18PM  22    Q.   OKAY.

12:18PM  23        THE COURT'S INDULGENCE FOR ONE MOMENT?

12:18PM  24            THE COURT:  YES.

12:18PM  25        (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

SAWYER REDIRECT BY MR. LEACH                                          5772

12:18PM  1              MR. WADE:  THANK YOU, DR. SAWYER.

12:18PM  2         I HAVE NO FURTHER QUESTIONS AT THIS TIME.

12:18PM  3              THE COURT:  MR. LEACH.

12:18PM  4              MR. LEACH:  VERY BRIEFLY, YOUR HONOR.

12:19PM  5         MAY I INQUIRE, YOUR HONOR?

12:19PM  6              THE COURT:  YES.

12:18PM  7                   **REDIRECT EXAMINATION**

12:18PM  8    BY MR. LEACH:

12:19PM  9    Q.   GOOD AFTERNOON, DR. SAWYER.  I JUST HAVE A FEW QUESTIONS.

12:19PM 10         COUNSEL DREW YOUR ATTENTION TO EXHIBIT 2553.

12:19PM 11         DO YOU HAVE THAT IN THE BINDER IN FRONT OF YOU?

12:19PM 12    A.   YES, GOT IT.

12:20PM 13    Q.   AND THIS APPEARS TO BE A LETTER DATED JUNE 12TH, 2015

12:20PM 14    ATTACHING SOME PAPERWORK?

12:20PM 15    A.   YES.

12:20PM 16    Q.   AND THE PAPERWORK INCLUDES A LIST OF LABORATORY PERSONNEL?

12:20PM 17    A.   IT DOES.

12:20PM 18    Q.   OKAY.  THIS IS WHAT YOU HAD BEEN LOOKING FOR, FOR THE PAST

12:20PM 19    FEW MONTHS IN YOUR WORK AS CO-LAB DIRECTOR?

12:20PM 20    A.   YES.

12:20PM 21    Q.   AND I JUST WANT TO BE CLEAR, YOU DON'T SIGN ANY OF THESE

12:20PM 22    LETTERS OR REPORTS IN HERE, DO YOU?

12:20PM 23    A.   I -- A LAB DIRECTOR NEEDS TO SIGN THEM.

12:20PM 24    Q.   BUT YOUR SIGNATURE IS NOT ON THESE; IS THAT CORRECT?

12:20PM 25    A.   NO.  IF THERE'S MORE THAN ONE LAB DIRECTOR, THERE DOESN'T

SAWYER REDIRECT BY MR. LEACH                                    5773

| | | |
|---|---|---|
| 12:20PM | 1 | NEED TO BE BOTH OF US.  AND, YES, MY SIGNATURE IS NOT ON IT. |
| 12:20PM | 2 | Q.   BUT THERE'S NOTHING ON THE FACE OF THESE DOCUMENTS THAT |
| 12:20PM | 3 | THESE EVER WENT TO YOU? |
| 12:20PM | 4 | A.   CORRECT. |
| 12:20PM | 5 | Q.   OKAY.  YOU WERE ALSO ASKED SOME QUESTIONS ABOUT 13047. |
| 12:21PM | 6 | DO YOU HAVE THAT IN FRONT OF YOU? |
| 12:21PM | 7 | A.   I WILL IN A SECOND. |
| 12:21PM | 8 | Q.   AND I'M NOT GOING TO DISPLAY THIS BECAUSE I ONLY HAVE ONE |
| 12:21PM | 9 | QUESTION ABOUT THIS. |
| 12:21PM | 10 | IS THIS THE EMAIL WHERE MR. HURST INDICATED THAT YOU |
| 12:21PM | 11 | WANTED TO TERMINATE YOUR SERVICES AS THE CO-LAB DIRECTOR? |
| 12:21PM | 12 | A.   YES. |
| 12:21PM | 13 | Q.   AND YOU WANTED TO TERMINATE BECAUSE YOU WEREN'T SATISFIED |
| 12:21PM | 14 | WITH THE LEVEL OF INFORMATION THAT YOU WERE GETTING? |
| 12:21PM | 15 | A.   YES. |
| 12:21PM | 16 | Q.   AND THE DATE OF THE EMAIL IS APRIL 5TH, 2015; IS THAT |
| 12:21PM | 17 | CORRECT? |
| 12:21PM | 18 | A.   YES. |
| 12:21PM | 19 | Q.   SO YOU COME ON AT SOME POINT IN LATE 2014, AND BY APRIL OF |
| 12:21PM | 20 | 2015 YOU WANT OUT? |
| 12:21PM | 21 | A.   YES. |
| 12:21PM | 22 | Q.   YOU WERE ASKED A NUMBER OF QUESTIONS ABOUT THE DOCUMENTS |
| 12:21PM | 23 | THAT YOU OBTAINED FROM YOUR WORK AS THE CO-LAB DIRECTOR. |
| 12:21PM | 24 | DO YOU RECALL THAT QUESTIONING? |
| 12:21PM | 25 | A.   YES. |

SAWYER REDIRECT BY MR. LEACH                                    5774

12:21PM   1    Q.   AND IF YOU SIGNED AN SOP OR A VERIFICATION DOCUMENT, IS

12:21PM   2    THAT SOMETHING THAT YOU ALWAYS SENT BACK TO THERANOS?

12:21PM   3    A.   YES.  WELL, I WAS SIGNING THEM VIA DOCUSIGN, SO THEN

12:21PM   4    DOCUSIGN GAVE COPIES TO -- WENT TO THERANOS, AND USUALLY I GOT

12:21PM   5    A COPY ALSO.

12:22PM   6    Q.   OKAY.  AND WAS IT YOUR EXPECTATION THAT THERANOS WOULD

12:22PM   7    HAVE EQUAL ACCESS TO THE DOCUMENTS THAT YOU SIGNED?

12:22PM   8    A.   OH, YES.

12:22PM   9    Q.   YOU DIDN'T HAVE SOME SECRET SOP THAT YOU DIDN'T SHARE WITH

12:22PM   10   THEM?

12:22PM   11   A.   NO.

12:22PM   12   Q.   YOU WERE ASKED A NUMBER OF QUESTIONS ABOUT SOMETHING

12:22PM   13   CALLED LIS.

12:22PM   14        DO YOU REMEMBER THAT?

12:22PM   15   A.   YES.

12:22PM   16   Q.   AND YOU NEVER SAW THE LIS SYSTEM, DID YOU?

12:22PM   17   A.   NO.

12:22PM   18   Q.   YOU NEVER USED THE LIS SYSTEM, DID YOU?

12:22PM   19   A.   NO.

12:22PM   20   Q.   YOU NEVER DREW A PATIENT RECORD FROM THE LIS SYSTEM?

12:22PM   21   A.   I DID NOT.

12:22PM   22   Q.   AND YOU NEVER HEARD ABOUT ANYBODY DOING THAT, DID YOU?

12:22PM   23   A.   NO, BUT I WOULDN'T REALLY EXPECT TO HEAR THAT.

12:22PM   24   Q.   OKAY.  WE SAW REFERENCE IN THE LIS SOP ABOUT SOMETHING

12:22PM   25   CALLED THE NANOTAINER.

SAWYER REDIRECT BY MR. LEACH                                     5775

| | | |
|---|---|---|
| 12:22PM | 1 | AND I THINK YOU SAID YOU DIDN'T KNOW WHAT THAT WAS? |
| 12:22PM | 2 | A.   YES, YES. |
| 12:22PM | 3 | Q.   AND THERE WAS SOME REFERENCE TO PULLING UP RESULTS FOR |
| 12:22PM | 4 | DOCTORS. |
| 12:22PM | 5 | YOU NEVER DID THAT THROUGH THE LIS SYSTEM; CORRECT? |
| 12:22PM | 6 | A.   NO, I DID NOT. |
| 12:22PM | 7 | Q.   THERE WAS ALSO A REFERENCE IN THERE TO VENOUS DRAWS. |
| 12:22PM | 8 | DO YOU REMEMBER THAT? |
| 12:22PM | 9 | A.   YES. |
| 12:22PM | 10 | Q.   AND DID YOU HAVE AN UNDERSTANDING AT THE TIME THAT |
| 12:22PM | 11 | THERANOS WAS TESTING FROM FINGERSTICKS ON THEIR OWN DEVICES? |
| 12:23PM | 12 | A.   NOT THAT THEY WERE TESTING, NO. |
| 12:23PM | 13 | Q.   DID YOU HAVE AN UNDERSTANDING THAT THERANOS WAS ACTUALLY |
| 12:23PM | 14 | USING FINGERSTICK BLOOD TO TEST ON MODIFIED THIRD PARTY |
| 12:23PM | 15 | DEVICES? |
| 12:23PM | 16 | A.   NO. |
| 12:23PM | 17 | Q.   YOU SIGNED SOME SOP'S OR SOME VERIFICATION REPORTS |
| 12:23PM | 18 | RELATING TO LDT'S? |
| 12:23PM | 19 | A.   NO, NO. |
| 12:23PM | 20 | I DID SIGN A COUPLE OF VALIDATIONS RELATING TO LDT'S. |
| 12:23PM | 21 | Q.   OKAY.  AND TELL ME YOUR MEMORY OF THOSE. |
| 12:23PM | 22 | A.   THEY EITHER PERTAINED TO STOOL SAMPLES AND FINDING A |
| 12:23PM | 23 | COUPLE OF DIFFERENT SPECIFIC BACTERIA ASSAYS TO FIND SOME |
| 12:23PM | 24 | SPECIFIC BACTERIA IN STOOL SAMPLES, OR -- A COUPLE OF DIFFERENT |
| 12:23PM | 25 | BACTERIA SAMPLES, OR THEY PERTAINED TO ANTIBIOTIC |

SAWYER REDIRECT BY MR. LEACH                                5776

12:23PM 1    SUSCEPTIBILITY TESTING OF BACTERIA.

12:23PM 2    Q.   OKAY.  SO NOTHING RELATING TO AN EDISON?

12:23PM 3    A.   CORRECT.

12:23PM 4    Q.   AND NOTHING RELATING TO DRAWING FINGERSTICK FOR USE ON A

12:24PM 5    MODIFIED SIEMENS MACHINE?

12:24PM 6    A.   DRAWING FINGERSTICK, YES.  BUT NO USE OF IT.  IT WAS

12:24PM 7    SIMPLY THE PHLEBOTOMY SOP.

12:24PM 8    Q.   AND IF -- WITHDRAWN.

12:24PM 9         YOU WERE ALSO ASKED SOME QUESTIONS ABOUT JERRY HURST.

12:24PM 10        DO YOU RECALL THAT?

12:24PM 11   A.   YES.

12:24PM 12   Q.   AND DID YOU EVER SEE JERRY HURST IN THE LAB?

12:24PM 13   A.   AT A THERANOS LAB?  NO.

12:24PM 14   Q.   THAT'S BECAUSE YOU DIDN'T PERSONALLY GO TO THE THERANOS

12:24PM 15   LAB?

12:24PM 16   A.   CORRECT.

12:24PM 17   Q.   AND DID YOU EVER CONSULT WITH MR. HURST ABOUT THE SOP'S

12:24PM 18   RELATING TO THE FDA MACHINES THAT YOU REVIEWED?

12:24PM 19   A.   NO.

12:24PM 20   Q.   FDA APPROVED MACHINES?

12:24PM 21   A.   NO.

12:24PM 22   Q.   YOU DON'T RECALL TALKING TO HIM ABOUT THOSE?

12:24PM 23   A.   I DON'T RECALL.  I DON'T THINK SO.

12:24PM 24   Q.   AT THE TIME YOU WERE A LAB DIRECTOR, OTHER THAN EXPRESSING

12:24PM 25   THE VIEW THAT YOU WANTED TO GET OUT, DID YOU EVER HAVE ANY

SAWYER RECROSS BY MR. WADE                                          5777

12:24PM   1    SUBSEQUENT CONVERSATIONS WITH MR. HURST?

12:24PM   2    A.   NOT ABOUT THERANOS.  NOT THAT I RECALL.

12:25PM   3    Q.   OKAY.

12:25PM   4         MAY I HAVE A MOMENT, YOUR HONOR?

12:25PM   5              THE COURT:  YES.

12:25PM   6         (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.)

12:25PM   7              MR. LEACH:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

12:25PM   8         THANK YOU, DR. SAWYER.

12:25PM   9              THE WITNESS:  THANK YOU.

12:25PM   10             MR. WADE:  BRIEFLY, YOUR HONOR.

12:25PM   11                       **RECROSS-EXAMINATION**

12:25PM   12   BY MR. WADE:

12:25PM   13   Q.   DR. SAWYER, MR. LEACH ASKED YOU ABOUT THE EMAIL WHERE THE

12:25PM   14   COMPANY WAS INFORMED THAT YOU WERE NOT GOING TO EXTEND YOUR

12:25PM   15   CONTRACT?

12:25PM   16   A.   YES.

12:25PM   17   Q.   DO YOU RECALL THAT?

12:25PM   18        THAT WAS AN EMAIL DATED APRIL 5TH, 2015; RIGHT?

12:25PM   19   A.   YES.

12:25PM   20   Q.   AND YOUR CONTRACT WAS SET TO EXPIRE IN MID-MAY; CORRECT?

12:26PM   21   A.   YES.

12:26PM   22   Q.   AND ISN'T IT CUSTOMARY TO GIVE NOTICE IN ADVANCE SO THAT

12:26PM   23   IF THE COMPANY NEEDS TO FIND A NEW LABORATORY DIRECTOR, THEY

12:26PM   24   HAVE ENOUGH TIME TO DO THAT?

12:26PM   25   A.   THAT'S WHY WE SENT IT, OR THAT'S WHY NOTICE WAS GIVEN IN

SAWYER RECROSS BY MR. WADE                                          5778

| 12:26PM | 1 | MAY OR APRIL, YES. |
|---|---|---|

12:26PM  2    Q.   AND RIGHT.  SO YOU STARTED IN NOVEMBER AND YOU GAVE NOTICE

12:26PM  3    IN APRIL OF THE FACT THAT YOU WERE NOT INTENDING TO EXTEND THE

12:26PM  4    CONTRACT; RIGHT?

12:26PM  5    A.   YES.

12:26PM  6    Q.   AND THEN YOU MADE THE DECISION TO EXTEND IT ANOTHER

12:26PM  7    45 DAYS OR SO AT THE REQUEST OF MR. BALWANI; IS THAT RIGHT?

12:26PM  8    A.   RIGHT.  SOMETHING LIKE THAT.  ABOUT SIX WEEKS.

12:26PM  9    Q.   ABOUT A MONTH AND A HALF OR SO, UNTIL THE END OF JUNE?

12:26PM 10    A.   YES.

12:26PM 11            MR. WADE:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

12:26PM 12        THANK YOU, YOUR HONOR.

12:26PM 13            THE COURT:  MR. LEACH?

12:26PM 14            MR. LEACH:  NO, YOUR HONOR.

12:26PM 15            THE COURT:  MAY THIS WITNESS BE EXCUSED?

12:26PM 16            MR. LEACH:  YES.

12:26PM 17            MR. WADE:  YES.

12:27PM 18            THE COURT:  YOU MAY BE EXCUSED.

12:27PM 19        THE GOVERNMENT HAS ANOTHER WITNESS TO CALL?

12:27PM 20            MR. LEACH:  WE DO, YOUR HONOR.  I NOTICE IT'S 12:26.

12:27PM 21            THE COURT:  I THINK WE SHOULD TAKE OUR BREAK NOW.  I

12:27PM 22    SAID WE WOULD HAVE TO TAKE A BREAK AT 12:30, AND WE'LL RETURN

12:27PM 23    AT 1:00 OR 5 AFTER 1:00.  AND SO LET'S TAKE OUR BREAK NOW, AND

12:27PM 24    WE'LL COME BACK AND CALL YOUR NEXT WITNESS.

12:27PM 25            MR. LEACH:  THANK YOU, YOUR HONOR.

5779

| | | |
|---|---|---|
| 12:27PM | 1 | THE COURT:  GREAT.  THANK YOU. |
| 12:27PM | 2 | (JURY OUT AT 12:27 P.M.) |
| 01:04PM | 3 | (LUNCH RECESS TAKEN AT 12:27 P.M.) |
| | 4 | |
| | 5 | |
| | 6 | |
| | 7 | |
| | 8 | |
| | 9 | |
| | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

5780

| | | |
|---|---|---|
| 01:04PM | 1 | **AFTERNOON SESSION** |
| 01:13PM | 2 | (JURY IN AT 1:13 P.M.) |
| 01:13PM | 3 | THE COURT:  WE'RE BACK ON THE RECORD.  OUR JURY IS |
| 01:13PM | 4 | PRESENT.  ALL COUNSEL ARE PRESENT, AND MS. HOLMES IS PRESENT. |
| 01:13PM | 5 | THE GOVERNMENT HAS AN ADDITIONAL WITNESS? |
| 01:13PM | 6 | MR. LEACH:  YES, YOUR HONOR. |
| 01:13PM | 7 | THE UNITED STATES CALLED KINGSHUK DAS. |
| 01:14PM | 8 | THE COURT:  GOOD AFTERNOON.  IF YOU WOULD COME |
| 01:14PM | 9 | FORWARD.  IF YOU COULD WALK UP HERE AND FACE OUR COURTROOM |
| 01:14PM | 10 | DEPUTY WHILE YOU RAISE YOUR RIGHT HAND, SHE HAS A QUESTION FOR |
| 01:14PM | 11 | YOU. |
| 01:14PM | 12 | **(GOVERNMENT'S WITNESS, KINGSHUK DAS, WAS SWORN.)** |
| 01:14PM | 13 | THE WITNESS:  YES. |
| 01:14PM | 14 | THE CLERK:  THANK YOU. |
| 01:14PM | 15 | THE COURT:  PLEASE HAVE A SEAT HERE, SIR. |
| 01:14PM | 16 | I'LL INVITE YOU TO MAKE YOURSELF COMFORTABLE.  FEEL FREE |
| 01:14PM | 17 | TO ADJUSTS THE CHAIR AND THE MICROPHONE AS YOU NEED. |
| 01:14PM | 18 | I'LL ENCOURAGE YOU TO SPEAK DIRECTLY INTO THE MICROPHONE. |
| 01:14PM | 19 | WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE STATE YOUR NAME |
| 01:14PM | 20 | AND THEN SPELL IT, PLEASE. |
| 01:14PM | 21 | THE WITNESS:  YES.  SHALL I KEEP MY MASK ON, SIR? |
| 01:14PM | 22 | THE COURT:  HAVE YOU BEEN VACCINATED, SIR? |
| 01:14PM | 23 | THE WITNESS:  YES. |
| 01:14PM | 24 | THE COURT:  YES, YOU MAY, YOU MAY TAKE IT OFF. |
| 01:15PM | 25 | THE WITNESS:  THANK YOU. |

DAS DIRECT BY MR. LEACH                                          5781

```
01:15PM   1              MY NAME IS KINGSHUK DAS.  THAT IS SPELLED K-I-N-G-S-H-U-K.

01:15PM   2    LAST NAME DAS, D-A-S.

01:15PM   3              THE COURT:  THANK YOU.

01:15PM   4          COUNSEL.

01:15PM   5              MR. LEACH:  THANK YOU, YOUR HONOR.

01:15PM   6                         DIRECT EXAMINATION

01:15PM   7    BY MR. LEACH:

01:15PM   8    Q.   GOOD AFTERNOON, DR. DAS.

01:15PM   9          IN OR ABOUT DECEMBER OF 2015, WERE YOU ENGAGED TO SERVE AS

01:15PM  10    THE LABORATORY DIRECTOR OF THERANOS'S CALIFORNIA CLINICAL

01:15PM  11    LABORATORY?

01:15PM  12    A.   YES, I WAS.

01:15PM  13    Q.   OKAY.  HOW LONG DID YOU SERVE IN THAT ROLE?

01:15PM  14    A.   APPROXIMATELY TWO AND A HALF YEARS.

01:15PM  15    Q.   OKAY.  LET'S TALK A LITTLE BIT ABOUT YOUR EDUCATIONAL AND

01:15PM  16    PROFESSIONAL BACKGROUND.

01:15PM  17          DO YOU HAVE A COLLEGE DEGREE?

01:15PM  18    A.   I DO.

01:15PM  19    Q.   WHERE DID YOU GET YOUR COLLEGE DEGREE FROM?

01:15PM  20    A.   AT CASE WESTERN RESERVE UNIVERSITY.

01:15PM  21    Q.   AND WHAT WAS YOUR DEGREE IN?

01:15PM  22    A.   IT WAS A BACHELOR OF ARTS IN BIOCHEMISTRY.

01:15PM  23    Q.   AND WHEN DID YOU OBTAIN YOUR BACHELOR OF ARTS IN

01:15PM  24    BIOCHEMISTRY FROM CASE WESTERN?

01:15PM  25    A.   THAT WOULD HAVE BEEN 1996.
```

DAS DIRECT BY MR. LEACH                                      5782

01:15PM   1      Q.   AND DO YOU HAVE A MEDICAL DEGREE?

01:16PM   2      A.   I DO.

01:16PM   3      Q.   AND IS THAT ALSO FROM CASE WESTERN RESERVE UNIVERSITY?

01:16PM   4      A.   YES.

01:16PM   5      Q.   AND WHEN DID YOU GET YOUR MEDICAL DEGREE?

01:16PM   6      A.   THAT WOULD HAVE BEEN 2002.

01:16PM   7      Q.   OKAY.  AFTER OBTAINING YOUR MEDICAL DEGREE, DID YOU DO AN

01:16PM   8      INTERNSHIP?

01:16PM   9      A.   I DID.

01:16PM  10      Q.   AND WHAT WAS YOUR INTERNSHIP IN?

01:16PM  11      A.   INTERNAL MEDICINE.

01:16PM  12      Q.   AND WHERE DID YOU PERFORM YOUR INTERNSHIP?

01:16PM  13      A.   THAT WAS AT THE UCLA WEST LOS ANGELES MEDICAL CENTER.

01:16PM  14      Q.   IS THAT IN WESTWOOD?

01:16PM  15      A.   YES, IT IS.

01:16PM  16      Q.   OKAY.  AND DID YOU PERFORM A RESIDENCY?

01:16PM  17      A.   I DID.

01:16PM  18      Q.   AND WHAT WAS YOUR RESIDENCY IN?

01:16PM  19      A.   IN CLINICAL PATHOLOGY.

01:16PM  20      Q.   WHAT IS CLINICAL PATHOLOGY?

01:16PM  21      A.   THAT IS A DISCIPLINE OF PATHOLOGY THAT SPECIALIZES IN

01:16PM  22      LABORATORY MEDICINE.

01:16PM  23      Q.   AFTER -- AND WHERE DID YOU PERFORM YOUR RESIDENCY?

01:16PM  24      A.   IT WAS BETWEEN TWO SITES.  FIRST AT WASHINGTON UNIVERSITY

01:16PM  25      IN ST. LOUIS, FOLLOWED BY THE UNIVERSITY OF SOUTHERN

DAS DIRECT BY MR. LEACH                                                5783

01:16PM   1      CALIFORNIA.

01:16PM   2      Q.   SO YOU WENT FROM UCLA TO U.S.C.?

01:16PM   3      A.   THAT IS CORRECT, SIR.

01:17PM   4      Q.   OKAY.  AND DID YOU GO BACK TO UCLA AT SOME POINT AFTER

01:17PM   5      YOUR RESIDENCY?

01:17PM   6      A.   I DID.

01:17PM   7      Q.   TELL US ABOUT THAT, PLEASE.

01:17PM   8      A.   I PURSUED A FELLOWSHIP IN MOLECULAR GENETICS AT UCLA.

01:17PM   9      Q.   AND DID YOU ALSO SERVE ON THE FACULTY AT UCLA?

01:17PM  10      A.   I DID AFTERWARD.

01:17PM  11      Q.   AND WHAT POSITIONS ON THE FACULTY DID YOU HOLD?

01:17PM  12      A.   I STARTED OFF AS AN ASSOCIATE MEDICAL DIRECTOR FOR THEIR

01:17PM  13      MOLECULAR PATHOLOGY DEPARTMENT, AND THAT WAS FOLLOWED BY A ROLE

01:17PM  14      AS DIRECTOR OF OPERATIONS OF GENETIC MEDICINE, AFTER WHICH I

01:17PM  15      WAS ASSOCIATE MEDICAL DIRECTOR OF CLINICAL LABORATORIES.

01:17PM  16      Q.   OKAY.  AND HAVE YOU SERVED IN SOMETHING CALLED UCLA

01:17PM  17      CLINICAL LABORATORIES?

01:17PM  18      A.   YES.

01:17PM  19      Q.   AND WHAT IS THAT?

01:17PM  20      A.   THAT IS THE ACADEMIC MEDICAL CENTER LABORATORY AT UCLA.

01:17PM  21      Q.   AND DID YOU HOLD A POSITION EQUIVALENT TO A LABORATORY

01:17PM  22      DIRECTOR IN THAT INSTITUTION?

01:17PM  23      A.   CORRECT.

01:17PM  24      Q.   ARE YOU LICENSED TO PRACTICE MEDICINE?

01:17PM  25      A.   YES, I AM.

DAS DIRECT BY MR. LEACH                                                  5784

| | | |
|---|---|---|
| 01:17PM | 1 | Q.   IN WHAT STATES? |
| 01:18PM | 2 | A.   IN THE STATES OF CALIFORNIA AND MINNESOTA. |
| 01:18PM | 3 | Q.   AND DO YOU HOLD ANY BOARD CERTIFICATIONS? |
| 01:18PM | 4 | A.   I DO. |
| 01:18PM | 5 | Q.   IN WHAT? |
| 01:18PM | 6 | A.   IN CLINICAL PATHOLOGY. |
| 01:18PM | 7 | Q.   I WANT TO DRAW YOUR ATTENTION TO THE TIME PERIOD DECEMBER |
| 01:18PM | 8 | OF 2015.  IN OR ABOUT THAT TIME PERIOD, DID YOU LEARN OF A |
| 01:18PM | 9 | COMPANY CALLED THERANOS? |
| 01:18PM | 10 | A.   I DID. |
| 01:18PM | 11 | Q.   OKAY.  HOW DID THERANOS COME TO YOUR ATTENTION? |
| 01:18PM | 12 | A.   I RESPONDED TO A JOB POSTING ON THE THERANOS WEBSITE. |
| 01:18PM | 13 | Q.   AND WHAT WAS THE JOB POSTING FOR? |
| 01:18PM | 14 | A.   IT WAS FOR A LABORATORY DIRECTOR OF THEIR NEWARK, |
| 01:18PM | 15 | CALIFORNIA LAB. |
| 01:18PM | 16 | Q.   AND DID YOU INTERVIEW FOR THAT POSITION? |
| 01:18PM | 17 | A.   I DID. |
| 01:18PM | 18 | Q.   AND DID YOU INTERVIEW WITH MS. HOLMES? |
| 01:18PM | 19 | A.   I DID. |
| 01:18PM | 20 | Q.   AND DID YOU ULTIMATELY GET THE JOB? |
| 01:18PM | 21 | A.   I DID. |
| 01:18PM | 22 | Q.   WHEN YOU WERE HIRED, WERE YOU ABLE TO START RIGHT AWAY IN |
| 01:18PM | 23 | DECEMBER OF 2015? |
| 01:18PM | 24 | A.   NOT RIGHT AWAY. |
| 01:18PM | 25 | Q.   OKAY.  WHY WAS THAT? |

DAS DIRECT BY MR. LEACH                                                    5785

01:18PM   1    A.   I HAD ADDITIONAL RESPONSIBILITIES AT UCLA THAT NEEDED

01:18PM   2    ATTENDING TO.

01:18PM   3    Q.   OKAY.  AND WHEN WERE YOU ABLE TO START FULL TIME AS THE

01:19PM   4    LABORATORY DIRECTOR AT THERANOS?

01:19PM   5    A.   FULL TIME WOULD HAVE BEEN -- I FORGET THE EXACT DATE, BUT

01:19PM   6    IT WOULD HAVE BEEN A MONDAY IN MID-MARCH 2016.

01:19PM   7    Q.   OKAY.  AND IN BETWEEN MID-MARCH AND DECEMBER, DID YOU

01:19PM   8    SERVE IN A CONTRACTING ROLE FOR THERANOS AS YOU WRAPPED UP

01:19PM   9    THINGS AT UCLA?

01:19PM   10   A.   I DID.

01:19PM   11   Q.   OKAY.  I WANT TO TALK A LITTLE BIT ABOUT THE ROLE OF

01:19PM   12   LABORATORY DIRECTOR.

01:19PM   13        YOU HAD SERVED IN THAT CAPACITY BEFORE YOUR TIME AT

01:19PM   14   THERANOS; IS THAT CORRECT?

01:19PM   15   A.   CORRECT.

01:19PM   16   Q.   OKAY.  AND IN THE COURSE OF SERVING AS A LAB DIRECTOR, DID

01:19PM   17   YOU BECOME FAMILIAR WITH SOMETHING CALLED CMS?

01:19PM   18   A.   YES.

01:19PM   19   Q.   AND WHAT IS CMS?

01:19PM   20   A.   IT IS THE CENTER FOR MEDICARE AND MEDICAID SERVICES.

01:19PM   21   Q.   OKAY.  AND HOW IS CMS RELEVANT TO YOUR JOB AS A LABORATORY

01:19PM   22   DIRECTOR?

01:19PM   23   A.   THEY ADMINISTER THE CLIA AMENDMENTS AND, THEREFORE,

01:19PM   24   OVERSEE CLINICAL LABORATORIES IN THE UNITED STATES.

01:19PM   25   Q.   OKAY.  CLIA IS AN ACRONYM?

DAS DIRECT BY MR. LEACH                                              5786

01:20PM   1        A.   YES.

01:20PM   2        Q.   OKAY.  AND TO YOUR KNOWLEDGE, DOES CMS CONDUCT ON-SITE

01:20PM   3    SURVEYS TO DETERMINE WHETHER ANY GIVEN LABORATORY IS MEETING

01:20PM   4    THE CONDITIONS AND STANDARDS SET FORTH IN THE FEDERAL

01:20PM   5    REGULATIONS?

01:20PM   6        A.   THAT IS MY UNDERSTANDING.

01:20PM   7        Q.   OKAY.  AND HAVE YOU PARTICIPATED IN SURVEYS LIKE THAT

01:20PM   8    BEFORE?

01:20PM   9        A.   I HAVE NOT.

01:20PM  10        Q.   OKAY.  PRIOR TO YOUR TIME AT THERANOS, HAVE YOU

01:20PM  11    PARTICIPATED IN A SURVEY SUCH AS THAT?

01:20PM  12        A.   NO.

01:20PM  13        Q.   OKAY.  DO CLIA REGULATIONS PLACE CERTAIN RESPONSIBILITIES

01:20PM  14    ON YOU WHEN SERVING AS A LABORATORY DIRECTOR?

01:20PM  15        A.   YES, THAT'S CORRECT.

01:20PM  16        Q.   OKAY.  DO THE CLIA REGULATIONS ALSO PROVIDE POSSIBLE

01:20PM  17    CONSEQUENCES FOR THE OWNERS AND OPERATORS OF LABORATORIES?

01:20PM  18        A.   THAT IS MY UNDERSTANDING.

01:20PM  19        Q.   OKAY.  DR. DAS, WE ARE HAVING SOME TECHNOLOGY ISSUES IN

01:20PM  20    THE COURTROOM TODAY, AND SO FOR THE DISPLAY OF DOCUMENTS, WE'RE

01:20PM  21    GOING TO BE DISPLAYING THEM UP ON THE WALL AND DIMMING THE

01:20PM  22    LIGHTS, AND THAT'S WHY WE HAVE A LIGHT NEAR YOU.

01:21PM  23        SO FOR CERTAIN DOCUMENTS, YOU SHOULD HAVE A COPY RIGHT IN

01:21PM  24    FRONT OF YOU IN YOUR BINDER, AND FOR OTHER ONES THAT ARE IN

01:21PM  25    EVIDENCE, WE MAY JUST BE DISPLAYING THEM.  BUT AT ANY POINT IF

DAS DIRECT BY MR. LEACH                                              5787

01:21PM  1    YOU NEED ASSISTANCE OR CAN'T SEE SOMETHING OR NEEDS GLASSES,

01:21PM  2    JUST LET ME KNOW.

01:21PM  3        BUT I WANTED TO DRAW YOUR ATTENTION TO WHAT IS IN EVIDENCE

01:21PM  4    AS DOCUMENT 7603.

01:21PM  5        PERMISSION TO DISPLAY, YOUR HONOR?

01:21PM  6            THE COURT:  YES.  THAT'S NOT IN THE BINDER -- IT IS

01:21PM  7    IN THE BINDER?

01:21PM  8            MR. LEACH:  YES.

01:21PM  9            THE WITNESS:  IT IS HERE.

01:21PM 10    BY MR. LEACH:

01:21PM 11    Q.   DR. DAS, IF I COULD PLEASE DRAW YOUR ATTENTION TO PAGE 118

01:21PM 12    OF EXHIBIT 7603.

01:21PM 13        AND, MS. HOLLIMAN, IF WE COULD PLEASE HIGHLIGHT THE TOP

01:21PM 14    PORTION OF THE RIGHT COLUMN UNDERNEATH THE BOLD HEADING, THE

01:22PM 15    FIRST TWO PARAGRAPHS BENEATH THAT HEADING.

01:22PM 16        DR. DAS, I'M DRAWING YOUR ATTENTION TO PAGE 118 OF THE

01:22PM 17    TRIAL EXHIBIT.

01:22PM 18        DO YOU HAVE THAT IN FRONT OF YOU?

01:22PM 19    A.   I DO NOW.

01:22PM 20    Q.   OKAY.  ARE YOU ABLE TO SEE IT OKAY WITH THE LIGHT THERE?

01:22PM 21    A.   YES, I CAN SEE IT JUST FINE.

01:22PM 22    Q.   OKAY.  DO YOU SEE THE SECTION HEADING 493.1840,

01:22PM 23    "SUSPENSION, LIMITATION, OR REVOCATION OF ANY TYPE OF CLIA

01:22PM 24    CERTIFICATE"?

01:22PM 25        DO YOU SEE THAT HEADING?

DAS DIRECT BY MR. LEACH                                                    5788

01:22PM   1    A.   I DO.

01:22PM   2              MR. WADE:   YOUR HONOR, OBJECTION FOR THE REASONS

01:22PM   3    PREVIOUSLY STATED.

01:22PM   4              THE COURT:   WE DISCUSSED THIS.  OVERRULED.  THIS IS

01:22PM   5    IN EVIDENCE.  IT CAN BE EXAMINED.

01:22PM   6    BY MR. LEACH:

01:22PM   7    Q.   IS THIS ONE OF THE CLIA REGULATIONS, DR. DAS, THAT AFFECTS

01:23PM   8    LABORATORY DIRECTORS?

01:23PM   9    A.   YES, I BELIEVE SO.

01:23PM  10    Q.   IN PARAGRAPH A IT SAYS, "ADVERSE ACTION BASED ON ACTIONS

01:23PM  11    OF THE LABORATORY'S OWNER, OPERATOR, OR EMPLOYEES."

01:23PM  12         DO YOU SEE THAT LANGUAGE?

01:23PM  13    A.   I DO.

01:23PM  14    Q.   AND DO YOU SEE WHERE IT SAYS, "CMS MAY INITIATE ADVERSE

01:23PM  15    ACTION TO SUSPEND, LIMIT, OR REVOKE ANY CLIA CERTIFICATE IF CMS

01:23PM  16    FINDS THAT A LABORATORY'S OWNER OR OPERATOR OR ONE OF ITS

01:23PM  17    EMPLOYEES HAS --"

01:23PM  18         DO YOU SEE THAT LANGUAGE?

01:23PM  19    A.   I DO.

01:23PM  20    Q.   AND THEN IS THERE A LIST OF CERTAIN CONDUCT THAT --

01:23PM  21    FOLLOWING PARAGRAPH A IN THAT SUBSECTION?

01:23PM  22    A.   YES, THERE IS.

01:23PM  23    Q.   OKAY.  LET ME DRAW YOUR ATTENTION DOWN TO THE BOTTOM

01:23PM  24    PORTION OF THIS COLUMN.

01:23PM  25         AND IF WE CAN HIGHLIGHT PARAGRAPH 4 ALL OF THE WAY DOWN,

DAS DIRECT BY MR. LEACH                                                    5789

01:24PM    1          MS. HOLLIMAN.

01:24PM    2              DO YOU SEE WHERE IT SAYS IN PARAGRAPH 6, "VIOLATED OR

01:24PM    3      AIDED AND ABETTED IN THE VIOLATION OF ANY PROVISIONS OF CLIA

01:24PM    4      AND ITS IMPLEMENTING REGULATIONS"?

01:24PM    5      A.   I DO.

01:24PM    6      Q.   AND IS THAT ONE OF THE CONDITIONS WHERE CMS MAY INITIATE

01:24PM    7      ACTION TO SUSPEND, LIMIT, OR REVOKE ANY CLIA CERTIFICATE IF IT

01:24PM    8      MAKES THAT FINDING?

01:24PM    9              MR. WADE:  SAME OBJECTION, YOUR HONOR.

01:24PM   10              THE COURT:  OVERRULED.

01:24PM   11              THE WITNESS:  YES, I BELIEVE SO.

01:24PM   12      BY MR. LEACH:

01:24PM   13      Q.   AND FURTHER DOWN BELOW IN PARAGRAPH 8, DO YOU SEE WHERE IT

01:24PM   14      SAYS, "WITHIN THE PRECEDING TWO-YEAR PERIOD, OWNED OR OPERATED

01:24PM   15      A LABORATORY THAT HAD ITS CLIA CERTIFICATE REVOKED."

01:25PM   16              DO YOU SEE THAT?

01:25PM   17      A.   I DO SEE THAT.

01:25PM   18      Q.   IS THAT ONE OF THE PROVISIONS RELATING TO OWNERS AND

01:25PM   19      OPERATORS OF LABORATORIES?

01:25PM   20      A.   YES, I BELIEVE SO.

01:25PM   21      Q.   IF I COULD DRAW YOUR ATTENTION NOW TO PAGE 8 -- EXCUSE ME,

01:25PM   22      PAGE 7 OF THE EXHIBIT WHICH IS IN EVIDENCE.

01:25PM   23              MS. HOLLIMAN, IF WE COULD PLEASE HIGHLIGHT THE COLUMN ON

01:25PM   24      THE FAR RIGHT STARTING WITH THE ITALICIZED WORD "OPERATOR."

01:25PM   25              DOWN A LITTLE MORE, PLEASE.  A LITTLE MORE.  THAT WILL DO.

5790

DAS DIRECT BY MR. LEACH

| | | |
|---|---|---|
| 01:26PM | 1 | DR. DAS, WE'RE ON PAGE 7 OF EXHIBIT 4603, THE CLIA |
| 01:26PM | 2 | REGULATIONS. |
| 01:26PM | 3 | DO YOU SEE SOME DEFINITIONS LISTED OUT ON THIS PAGE? |
| 01:26PM | 4 | A.   I DO. |
| 01:26PM | 5 | Q.   AND DO YOU SEE A DEFINITION FOR "OPERATOR"? |
| 01:26PM | 6 | A.   YES, I DO. |
| 01:26PM | 7 | Q.   AND DOES THIS READ, "OPERATOR MEANS THE INDIVIDUAL OR |
| 01:26PM | 8 | GROUP OF INDIVIDUALS WHO OVERSEE ALL FACETS OF THE OPERATION OF |
| 01:26PM | 9 | A LABORATORY AND WHO BEAR PRIMARY RESPONSIBILITY FOR THE SAFETY |
| 01:26PM | 10 | AND RELIABILITY OF THE RESULTS OF ALL SPECIMEN TESTING |
| 01:26PM | 11 | PERFORMED IN THAT LABORATORY"? |
| 01:26PM | 12 | DID I READ THAT DEFINITION CORRECTLY? |
| 01:26PM | 13 | A.   YES. |
| 01:26PM | 14 | Q.   AND FURTHER DOWN BELOW, IS THERE A DEFINITION FOR THE |
| 01:26PM | 15 | "OWNER" OF A LABORATORY? |
| 01:26PM | 16 | A.   YES. |
| 01:26PM | 17 | Q.   AND WAS THIS PART OF THE REGULATIONS THAT YOU UNDERSTOOD |
| 01:26PM | 18 | YOU WERE SUBJECT TO IN YOUR ROLE OF THE -- AS THE LABORATORY |
| 01:27PM | 19 | DIRECTOR? |
| 01:27PM | 20 | A.   YES, THAT'S CORRECT. |
| 01:27PM | 21 | Q.   OKAY.  LET ME FOCUS -- |
| 01:27PM | 22 | WE CAN TAKE THAT DOWN, MS. HOLLIMAN.  THANK YOU. |
| 01:27PM | 23 | LET ME FOCUS ON WHAT YOU DID UPON YOUR ARRIVAL AT THE |
| 01:27PM | 24 | COMPANY. |
| 01:27PM | 25 | IF WE CAN BREAK IT INTO THE TIME PERIOD WHEN YOU WERE |

5791
DAS DIRECT BY MR. LEACH

01:27PM    1    INITIALLY WORKING PART-TIME COMING UP FROM UCLA, DESCRIBE FOR

01:27PM    2    US WHAT YOU DID TO ORIENT YOURSELF WITH THE LABORATORY.

01:27PM    3    A.   I WAS COMING UP FOR ABOUT ONE DAY PER WEEK UNTIL I JOINED

01:27PM    4    FULL TIME, AND MOST OF THAT TIME WAS SPENT GETTING TO KNOW THE

01:27PM    5    PHYSICAL SPACE, THE LABORATORY, THE EMPLOYEES, THE CONSULTANTS,

01:27PM    6    AS WELL AS DEALING WITH SOME PAPERWORK FROM CMS.

01:27PM    7    Q.   WHEN YOU STARTED IN THE -- AND THIS IS LEADING UP TO YOUR

01:27PM    8    TIME PERIOD IN MARCH?

01:27PM    9    A.   THAT'S CORRECT.

01:27PM   10    Q.   AND HOW REGULARLY WERE YOU COMING UP?

01:27PM   11    A.   ONCE PER WEEK.

01:27PM   12    Q.   OKAY.

01:27PM   13    A.   ONE DAY PER WEEK.

01:27PM   14    Q.   AS YOU WERE GETTING ORIENTED WITH THE LAB, DID YOU DEVELOP

01:28PM   15    A FAMILIARITY WITH WHAT TYPE OF TESTS THERANOS WAS CURRENTLY

01:28PM   16    PERFORMING AND HAD BEEN PERFORMING IN ITS LABORATORY?

01:28PM   17    A.   YES, I DID.

01:28PM   18    Q.   OKAY.  AT THE TIME THAT YOU STARTED, WAS THERANOS

01:28PM   19    PERFORMING ANY LAB DEVELOPED TESTS?

01:28PM   20    A.   NOT TO MY KNOWLEDGE.

01:28PM   21    Q.   OKAY.  AND ARE YOU FAMILIAR WITH THE ACRONYM LDT?

01:28PM   22    A.   YES, I AM.

01:28PM   23    Q.   AND IS THAT FOR LABORATORY DEVELOPED TESTS?

01:28PM   24    A.   CORRECT.

01:28PM   25    Q.   AND WHAT DOES THAT MEAN?

DAS DIRECT BY MR. LEACH                                                5792

01:28PM   1     A.   IT MEANS ANY TEST THAT IS EITHER DEVELOPED BY THE

01:28PM   2     LABORATORY OR AN FDA APPROVED METHOD THAT IS MODIFIED

01:28PM   3     GENERALLY.

01:28PM   4     Q.   SO IF YOU TAKE AN FDA APPROVED METHOD AND MAKE SOME TYPE

01:28PM   5     OF TWEAK TO IT, THAT CONVERTS IT TO A LAB DEVELOPED TEST?

01:28PM   6     A.   IT'S ANALOGOUS TO A LAB DEVELOPED TEST, YES.

01:28PM   7     Q.   AND AT THE TIME THAT YOU STARTED IN THE LAB, WAS THERANOS

01:28PM   8     PERFORMING ANY TESTS ON THERANOS MANUFACTURED ANALYZERS?

01:29PM   9     A.   NOT TO MY KNOWLEDGE.

01:29PM  10     Q.   TO YOUR KNOWLEDGE, WAS IT PERFORMING ANY TESTS ON

01:29PM  11     SOMETHING CALLED EDISON?

01:29PM  12     A.   NOT TO MY KNOWLEDGE.

01:29PM  13     Q.   WAS IT PERFORMING ANY TESTS ON SOMETHING CALLED THE

01:29PM  14     MINILAB?

01:29PM  15     A.   NOT TO MY KNOWLEDGE.

01:29PM  16     Q.   HOW ABOUT SOMETHING CALLED THE TSPU?

01:29PM  17     A.   AGAIN, NOT TO MY KNOWLEDGE.

01:29PM  18     Q.   AND TO YOUR KNOWLEDGE, WAS IT PERFORMING ANY TESTS ON

01:29PM  19     FINGERSTICK SAMPLES ON NON-FDA APPROVED MACHINES?

01:29PM  20     A.   NO, NOT TO MY KNOWLEDGE.

01:29PM  21     Q.   I'D LIKE TO DISPLAY FOR YOU WHAT IS -- WITHDRAWN.

01:29PM  22          WHEN YOU JOINED THE LAB IN SEPTEMBER OF 2015, IN THE

01:29PM  23     INTERIM PERIOD, DID YOU DEVELOP A SENSE OF THE ANNUAL VOLUME OF

01:29PM  24     TESTS THAT WERE PERFORMED IN THE CALIFORNIA LAB BEFORE YOU

01:29PM  25     JOINED?

DAS DIRECT BY MR. LEACH                                          5793

01:29PM  1    A.   I BELIEVE THERE WAS AN ESTIMATE IN SOME OF THE FEDERAL

01:30PM  2    PAPERWORK.

01:30PM  3    Q.   AND WHAT WAS THAT ESTIMATE?

01:30PM  4    A.   I BELIEVE IT WAS SOMEWHERE BETWEEN 800- AND 900,000 TESTS.

01:30PM  5    Q.   AND WAS THAT ON AN ANNUAL BASIS?

01:30PM  6    A.   I BELIEVE SO.

01:30PM  7    Q.   AND AS YOU ARE BECOMING FAMILIAR WITH THERANOS AND THE

01:30PM  8    LABORATORY AS THE LABORATORY DIRECTOR IN CALIFORNIA, DID YOU

01:30PM  9    ALSO DEVELOP AN AWARENESS THAT THERANOS HAD A LAB IN ARIZONA?

01:30PM  10   A.   I WAS AWARE OF THAT.

01:30PM  11   Q.   AND WHAT WAS YOUR UNDERSTANDING?  WHAT DID YOU UNDERSTAND

01:30PM  12   ABOUT THAT LAB?

01:30PM  13   A.   MY UNDERSTANDING WAS THAT THAT LABORATORY IN SCOTTSDALE

01:30PM  14   WAS A MODERATE COMPLEXITY LABORATORY.

01:30PM  15   Q.   AND WHAT DOES THAT MEAN TO BE A MODERATE COMPLEXITY

01:30PM  16   LABORATORY?

01:30PM  17   A.   IN THIS CONTEXT IT MEANS THAT THAT TYPE OF LABORATORY RUNS

01:30PM  18   FDA APPROVED TESTING.

01:30PM  19   Q.   SO WOULD THAT LABORATORY BE RUNNING AN EDISON?

01:30PM  20   A.   I DON'T BELIEVE SO.

01:30PM  21   Q.   WOULD THAT LABORATORY BE RUNNING A FINGERSTICK TEST ON A

01:30PM  22   MODIFIED FDA APPROVED MACHINE?

01:30PM  23   A.   NO, I DON'T BELIEVE SO.

01:31PM  24   Q.   AND HOW DID THE MODERATE COMPLEXITY IN THE ARIZONA LAB

01:31PM  25   COMPARE TO THE CALIFORNIA LAB THAT YOU TOOK THE REINS OF IN THE

DAS DIRECT BY MR. LEACH                                              5794

01:31PM  1    LATE 2015, EARLY 2016 TIME PERIOD?

01:31PM  2    A.   THE NEWARK, CALIFORNIA LABORATORY WAS CONSIDERED HIGH

01:31PM  3    COMPLEXITY AND COULD OFFER SUCH TESTING.

01:31PM  4    Q.   SUCH AS LDT'S?

01:31PM  5    A.   SUCH AS LDT'S, YES.

01:31PM  6    Q.   AND AS YOU'RE BECOMING THE LABORATORY DIRECTOR, DID YOU

01:31PM  7    DEVELOP A SENSE OF THE RELATIVE VOLUME OF TESTING BETWEEN THE

01:31PM  8    MODERATE COMPLEXITY LAB IN ARIZONA AND THE HIGH COMPLEXITY LAB

01:31PM  9    IN CALIFORNIA?

01:31PM  10   A.   I DID NOT HAVE A GOOD SENSE OF THE PROPORTION OF TESTING

01:31PM  11   DONE IN BOTH LABS.

01:31PM  12   Q.   AT SOME POINT DID YOU DEVELOP THAT UNDERSTANDING?

01:31PM  13   A.   I DID NOT.

01:31PM  14   Q.   OKAY.  DID YOU HAVE ANY INTERACTIONS WITH SUNNY BALWANI?

01:31PM  15   A.   YES, TO SOME EXTENT.

01:31PM  16   Q.   OKAY.  A LOT OF INTERACTIONS?  A FEW INTERACTIONS?

01:32PM  17   DESCRIBE THOSE FOR US.

01:32PM  18   A.   QUITE MINIMUM NUMBER OF INTERACTIONS.  I BELIEVE SUNNY

01:32PM  19   LEFT THE COMPANY NOT TOO LONG AFTER I JOINED.

01:32PM  20   Q.   SO SOMETIME IN THE MARCH 2016 TIME PERIOD?

01:32PM  21   A.   YEAH.  I'M NOT CLEAR ON THE EXACT DATES, BUT WE HAD VERY

01:32PM  22   LIMITED CHANCES TO INTERACT.

01:32PM  23   Q.   LET'S MOVE FORWARD IN TIME TO THE TIME PERIOD OF MARCH OF

01:32PM  24   2016.  THAT'S WHEN YOU BEGAN WORKING ON A FULL-TIME BASIS IN

01:32PM  25   THE LAB?

DAS DIRECT BY MR. LEACH                                           5795

01:32PM   1     A.   THAT'S CORRECT.

01:32PM   2     Q.   AND YOU LEFT YOUR RESPONSIBILITIES IN UCLA?

01:32PM   3     A.   YES.

01:32PM   4     Q.   AND DID YOU MOVE UP TO CALIFORNIA TO WORK IN THE LAB

01:32PM   5     HERE -- MOVE UP TO THE BAY AREA TO WORK IN THE LAB?

01:32PM   6     A.   I DID.

01:32PM   7     Q.   OKAY.  AND YOU MENTIONED EARLIER PART OF YOUR

01:32PM   8     RESPONSIBILITIES INITIALLY WAS DEALING WITH PAPERWORK FROM CMS.

01:32PM   9          WHAT WERE YOU TALKING ABOUT?

01:32PM  10     A.   IT WAS RELATED TO AN AUDIT, I BELIEVE, THAT WOULD HAVE

01:32PM  11     BEEN BEFORE I JOINED, AND A STATEMENT OF DEFICIENCIES FROM THAT

01:33PM  12     AUDIT.

01:33PM  13     Q.   AND WAS A SIGNIFICANT PART OF YOUR JOB AS THE LAB DIRECTOR

01:33PM  14     REVIEWING THAT STATEMENT, DEVELOPING AN UNDERSTANDING OF IT,

01:33PM  15     AND RESPONDING TO IT?

01:33PM  16     A.   YES.  THAT WAS NEARLY THE SOLE RESPONSIBILITY THAT I HAD.

01:33PM  17     Q.   OKAY.  IN THIS EARLY MARCH 2016 TIME PERIOD, WHAT TYPES OF

01:33PM  18     DOCUMENTS DID YOU REVIEW AND GATHER IN CONNECTION WITH, WITH

01:33PM  19     RESPONDING TO THIS STATEMENT OF DEFICIENCIES?

01:33PM  20     A.   OH, THERE WERE A VARIETY OF DOCUMENTS.

01:33PM  21          DO YOU NEED SPECIFIC EXAMPLES, OR ARE YOU REFERRING TO

01:33PM  22     SPECIFIC EXAMPLES?

01:33PM  23     Q.   IF YOU COULD PUT THEM INTO BUCKETS FOR US, THAT WOULD BE

01:33PM  24     GREAT.

01:33PM  25     A.   I WOULD SAY THE MAJORITY OF MY RESPONSIBILITY IN

5796

DAS DIRECT BY MR. LEACH

01:33PM 1    RESPONDING TO THAT FORM, THAT STATEMENT OF DEFICIENCIES, WAS TO

01:33PM 2    PERFORM WHAT ARE CALLED PATIENT IMPACT ASSESSMENTS.

01:34PM 3        I BELIEVE THE DOCUMENTATION WAS GENERALLY SPLIT INTO ABOUT

01:34PM 4    THREE BUCKETS.

01:34PM 5    Q.   OKAY.  WHAT ARE THOSE?

01:34PM 6    A.   THE FIRST ONE WAS VALIDATION REPORTS FOR THE TESTS

01:34PM 7    PERFORMED.

01:34PM 8    Q.   WHAT WAS THE SECOND?

01:34PM 9    A.   THE SECOND ONE WAS GENERALLY QUALITY CONTROL RESULTS AND

01:34PM 10   REPORTS.

01:34PM 11   Q.   AND THE THIRD?

01:34PM 12   A.   THE THIRD WAS PATIENT TEST RESULT DISTRIBUTIONS AND

01:34PM 13   CALCULATIONS FROM THOSE.

01:34PM 14   Q.   AND DID YOU HAVE A TEAM WORKING WITH YOU IN RESPONDING TO

01:34PM 15   THIS REPORT FROM, OR STATEMENT OF DEFICIENCIES FROM CMS?

01:34PM 16   A.   YES, INDEED.

01:34PM 17   Q.   OKAY.  AND WHO WAS ON YOUR TEAM?

01:34PM 18   A.   OKAY.  IT WAS QUITE A LARGE TEAM.  I WON'T REMEMBER ALL OF

01:34PM 19   THE NAMES.  THE PEOPLE THAT I WORKED MOST CLOSELY WITH I COULD

01:34PM 20   NAME IF THAT'S OF HELP.

01:35PM 21   Q.   THAT WOULD BE HELPFUL.  THANK YOU.

01:35PM 22   A.   THE DIRECTORS THAT I WORKED WITH VERY CLOSELY WERE

01:35PM 23   DOCTORS TSCHIRHART AND HELFEND.

01:35PM 24   Q.   COULD YOU SPELL TSCHIRHART FOR US, PLEASE.

01:35PM 25   A.   YES, I HOPE I CAN.  I BELIEVE THAT'S T-S-C-H-I-R-H-A-R-T.

DAS DIRECT BY MR. LEACH                                              5797

01:35PM  1    FIRST NAME IS DONALD.

01:35PM  2    Q.   AND YOU MENTIONED DR. HELFEND.

01:35PM  3    A.   YES, LISA HELFEND.

01:35PM  4    Q.   IS THAT H-E-L-F-U-N-D?

01:35PM  5    A.   H-E-L-F-E-N-D.

01:35PM  6    Q.   OKAY.  DID THEY COME ON AT AROUND THE TIME YOU CAME ON AS

01:35PM  7    LAB DIRECTOR?

01:35PM  8    A.   I BELIEVE DON JOINED THE EXACT SAME DAY I JOINED, AND LISA

01:35PM  9    WAS ALREADY THERE AS A CONTRACT DIRECTOR.

01:35PM 10    Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO WHAT HAS BEEN

01:35PM 11    MARKED FOR IDENTIFICATION AS 4621.

01:36PM 12    A.   YES.

01:36PM 13    Q.   DO YOU RECOGNIZE THIS DOCUMENT?

01:36PM 14    A.   YES, I DO.

01:36PM 15    Q.   AND WHAT IS IT?

01:36PM 16    A.   THIS APPEARS TO BE THE COVER LETTER FOR THE STATEMENT OF

01:36PM 17    DEFICIENCIES.

01:36PM 18    Q.   AND DOES THE COVER LETTER COMPRISE PAGES 1 THROUGH 4 OF

01:36PM 19    EXHIBIT 4621?

01:36PM 20    A.   YES.

01:36PM 21    Q.   AND DOES THE STATEMENT OF DEFICIENCIES BEGIN ON PAGE 5?

01:36PM 22    A.   YES.

01:36PM 23    Q.   OKAY.  LET ME DRAW YOUR ATTENTION TO THE BOTTOM OF PAGE 5.

01:36PM 24         DO YOU SEE TO THE LEFT WHERE IT SAYS FORM 6 CMS 2567?

01:36PM 25    A.   YES, I DO.

DAS DIRECT BY MR. LEACH                                          5798

01:36PM   1    Q.   AND DO YOU SEE A DATE IN THE UPPER RIGHT-HAND CORNER,

01:37PM   2    JANUARY 25TH, 2016?

01:37PM   3    A.   I DO.

01:37PM   4    Q.   AND TO THE LEFT DO YOU SEE A BOX THAT SAYS, FOR THE TITLE

01:37PM   5    OF THE DOCUMENT, STATEMENT OF DEFICIENCIES AND PLAN OF

01:37PM   6    CORRECTION?

01:37PM   7    A.   YES.

01:37PM   8    Q.   OKAY.  IS THIS THE FORM THAT YOU TESTIFIED YOU SPENT A

01:37PM   9    SIGNIFICANT AMOUNT OF YOUR TIME RESPONDING TO IN YOUR ROLE AS

01:37PM  10    THE LAB DIRECTOR?

01:37PM  11    A.   YES, THAT'S CORRECT.

01:37PM  12    Q.   OKAY.  HOW MANY PAGES IS THE STATEMENT OF DEFICIENCIES?

01:37PM  13    A.   IT LOOKS LIKE IN MY COPY 121.

01:37PM  14    Q.   IN YOUR ROLE AS LABORATORY DIRECTOR, WHO DID YOU REPORT

01:37PM  15    TO?

01:37PM  16    A.   I REPORTED TO MS. HOLMES.

01:37PM  17    Q.   AND IN THE COURSE OF RESPONDING TO THE FORM 2567, THE

01:38PM  18    STATEMENT OF DEFICIENCIES, DID YOU HAVE CONVERSATIONS WITH

01:38PM  19    MS. HOLMES?

01:38PM  20    A.   YES.

01:38PM  21    Q.   MORE THAN ONE?

01:38PM  22    A.   MANY CONVERSATIONS.

01:38PM  23    Q.   AND DID THOSE RELATE TO WHAT YOU WERE FIND -- OR WHAT CMS

01:38PM  24    HAD BROUGHT TO THE COMPANY'S ATTENTION, WHAT YOU WERE FINDING

01:38PM  25    AND HOW THE COMPANY WAS GOING TO RESPOND?

DAS DIRECT BY MR. LEACH                                                5799

01:38PM   1    A.   YES, AMONG OTHERS.

01:38PM   2    Q.   OKAY.  DID YOU TRAVEL TO WASHINGTON, D.C. WITH MS. HOLMES

01:38PM   3    TO MEET WITH INDIVIDUALS FROM CMS?

01:38PM   4    A.   YES, I DID.

01:38PM   5    Q.   AND WAS THAT IN CONNECTION WITH RESPONDING TO THE FORM

01:38PM   6    2567?

01:38PM   7    A.   YES, IT WAS.

01:38PM   8    Q.   WE'RE GOING TO COME BACK TO 4621, BUT I'D LIKE TO BRIEFLY

01:38PM   9    DRAW YOUR ATTENTION TO EXHIBIT 5260.

01:39PM  10    A.   OKAY.

01:39PM  11    Q.   AND IF I COULD DRAW YOUR ATTENTION TO PAGE 90, IS THAT

01:39PM  12    YOUR SIGNATURE?

01:39PM  13    A.   YES.

01:39PM  14    Q.   AND IF WE CAN GO TO PAGE 2 OF THE EXHIBIT, DO YOU SEE A

01:39PM  15    DATE AT THE TOP OF MARCH 28TH, 2016?

01:39PM  16    A.   YES, I DO.

01:39PM  17    Q.   AND IS THIS A LETTER THAT YOU SENT TO CMS IN RESPONSE TO A

01:39PM  18    LETTER FROM CMS TO DR. SUNIL DHAWAN, ELIZABETH HOLMES, AND

01:39PM  19    SUNNY BALWANI?

01:39PM  20    A.   YES, I BELIEVE SO.

01:39PM  21    Q.   OKAY.  AND IS THIS LETTER IN CONNECTION WITH THE COMPANY'S

01:39PM  22    RESPONSE TO THE 2567?

01:39PM  23    A.   THAT'S CORRECT.

01:39PM  24    Q.   OKAY.  AND DID YOU HAVE MANY CONVERSATIONS WITH MS. HOLMES

01:40PM  25    BOTH ABOUT WHAT CMS BROUGHT TO THE COMPANY'S ATTENTION IN 2567

DAS DIRECT BY MR. LEACH                                      5800

01:40PM  1      AND HOW THE COMPANY WAS GOING TO RESPOND?

01:40PM  2      A.   YES, THAT'S CORRECT.

01:40PM  3      Q.   PLEASE LOOK BRIEFLY AT EXHIBIT 3144.

01:40PM  4           IS THAT YOUR -- AND I DRAW YOUR ATTENTION TO PAGE 93.

01:40PM  5      A.   YES.

01:40PM  6      Q.   IS THAT YOUR SIGNATURE?

01:40PM  7      A.   YES, THAT'S CORRECT.

01:40PM  8      Q.   OKAY.  AND IF WE CAN GO BACK TO PAGE 1, DOES THIS APPEAR

01:40PM  9      TO BE AN APRIL 1ST, 2016 LETTER FROM YOU TO THERANOS UPDATING A

01:40PM  10     RESPONSE TO A LETTER FROM CMS TO DR. SUNIL DHAWAN,

01:41PM  11     ELIZABETH HOLMES, AND SUNNY BALWANI?

01:41PM  12     A.   YES, THAT'S CORRECT, FROM THERANOS.

01:41PM  13     Q.   OKAY.  AND WE'VE JUST LOOKED AT SOME LETTERS FROM THE

01:41PM  14     MARCH AND APRIL TIME PERIOD, BUT YOU HAD -- DID YOU HAVE A

01:41PM  15     NUMBER OF CONVERSATIONS WITH MS. HOLMES ABOUT THE 2567 AND WHAT

01:41PM  16     WAS BEING REPORTED TO THE COMPANY?

01:41PM  17     A.   YES, PERIODICALLY.

01:41PM  18     Q.   OKAY.  LET ME GO -- WAS THERE SOME URGENCY IN RESPONDING

01:41PM  19     TO THE CMS 2567?

01:41PM  20     A.   YES, THERE WAS.

01:41PM  21     Q.   WHY WAS THAT?

01:41PM  22     A.   I BELIEVE THERE WAS A DEADLINE IMPOSED BY CMS FOR A

01:41PM  23     RESPONSE.

01:41PM  24     Q.   OKAY.  LET ME DRAW YOUR ATTENTION BACK TO 4621.

01:41PM  25     A.   YES.

DAS DIRECT BY MR. LEACH                                                    5801

01:41PM   1    Q.   AND I'D LIKE TO FOCUS ON THE COVER LETTER, PAGES 1 THROUGH

01:41PM   2    4.   ON PAGE 2, DO YOU SEE REFERENCE TO, IN PARAGRAPH 3, A

01:42PM   3    DEADLINE IMPOSED BY CMS?

01:42PM   4    A.   YES, I DO.

01:42PM   5    Q.   OKAY.   AND ON -- ABOVE THAT DO YOU SEE SOME LANGUAGE

01:42PM   6    SUGGESTING REASONING BEHIND THE DATE THAT IS BEING IMPOSED BY

01:42PM   7    CMS?

01:42PM   8             MR. WADE:   YOUR HONOR, THE DOCUMENT IS NOT IN

01:42PM   9    EVIDENCE, BUT WE'RE REFERRING TO SUBSTANTIAL PARTS OF IT HERE.

01:42PM   10            THE COURT:   MR. LEACH?

01:42PM   11            MR. LEACH:   I'M TRYING TO LAY A FOUNDATION TO ADMIT

01:42PM   12   IT INTO EVIDENCE, YOUR HONOR, AND I THINK MY NEXT QUESTION IS,

01:42PM   13   DID HE DISCUSS THIS WITH MS. HOLMES?

01:42PM   14            THE COURT:   ALL RIGHT.   THANK YOU.

01:42PM   15   BY MR. LEACH:

01:42PM   16   Q.   DID YOU DISCUSS THE CIRCUMSTANCES DESCRIBED IN THIS LETTER

01:42PM   17   WITH MS. HOLMES?

01:42PM   18   A.   YES, THE CIRCUMSTANCES WERE DESCRIBED OR DISCUSSED.

01:42PM   19            MR. LEACH:   YOUR HONOR, I OFFER PAGES 1 THROUGH 4 OF

01:42PM   20   EXHIBIT 4621.

01:43PM   21            MR. WADE:   YOUR HONOR, WE OBJECT TO ALL OF THE

01:43PM   22   REFERENCE OF THE EXHIBIT FOR REASONS WE DISCUSSED WITH COUNSEL

01:43PM   23   AND THE COURT THIS MORNING AND THE REASONS SET FORTH IN THE

01:43PM   24   MOTION PAPERS.

01:43PM   25            THE COURT:   ALL RIGHT.   THANK YOU.

DAS DIRECT BY MR. LEACH                                          5802

01:43PM  1        SO YOU'RE ASKING FOR 1 THROUGH 4 ONLY?

01:43PM  2              MR. LEACH:  YES.

01:43PM  3              THE COURT:  OF 4621?

01:43PM  4              MR. LEACH:  YES.

01:43PM  5              THE COURT:  ALL RIGHT.  I DO YOU THINK AN

01:43PM  6    APPROPRIATE FOUNDATION HAS BEEN LAID TO ADMIT THIS, OVERRULING

01:43PM  7    THE OBJECTIONS THAT WERE MADE EARLIER.

01:43PM  8        SO THIS WILL BE ADMITTED OVER OBJECTION.  THANK YOU.

01:43PM  9              MR. LEACH:  THANK YOU.

01:43PM 10              THE COURT:  AND IT CAN BE, IT CAN BE DISPLAYED IF

01:43PM 11    YOU WISH.

01:43PM 12        (GOVERNMENT'S EXHIBIT 4621, PAGES 1 THROUGH 4, WAS

01:43PM 13    RECEIVED IN EVIDENCE.)

01:43PM 14              MR. LEACH:  IF WE CAN PLEASE START AT THE TOP,

01:43PM 15    MS. HOLLIMAN, CATCHING THE CMS HEADER IF YOU COULD, PLEASE.

01:44PM 16    Q.   DR. DHAWAN, IS THIS THE COVER LETTER THAT ACCOMPANIED CMS

01:44PM 17    DEFICIENCY NOTICE?

01:44PM 18    A.   I'M SORRY.

01:44PM 19    Q.   I'M TERRIBLY SORRY, I'M READING THE DOCUMENT AND MOVING

01:44PM 20    TOO QUICKLY.

01:44PM 21        DR. DAS, IS THIS THE COVER LETTER THAT ACCOMPANIED THE

01:44PM 22    STATEMENT OF DEFICIENCIES FROM CMS?

01:44PM 23    A.   YES.

01:44PM 24    Q.   OKAY.  AND DO YOU SEE THE DATE JANUARY 25TH, 2016?

01:44PM 25    A.   I DO.

DAS DIRECT BY MR. LEACH                                    5803

01:44PM   1    Q.   OKAY.  AND THIS IS ADDRESSED TO SOMEONE NAMED

01:44PM   2    SUNIL DHAWAN.  DID YOU HAVE AN UNDERSTANDING OF WHO

01:44PM   3    SUNIL DHAWAN WAS?

01:44PM   4    A.   YES.

01:44PM   5    Q.   AND WHO WAS HE?

01:44PM   6    A.   MY UNDERSTANDING IS THAT HE WAS THE PRIOR LABORATORY

01:44PM   7    DIRECTOR BEFORE I JOINED.

01:44PM   8    Q.   IN THE RE LINE, IT SAYS, CONDITION LEVEL DEFICIENCIES -

01:44PM   9    IMMEDIATE JEOPARDY.

01:44PM  10         DO YOU SEE THAT LANGUAGE?

01:44PM  11    A.   YES, I DO.

01:44PM  12    Q.   AND THEN IN THE FIRST PARAGRAPH -- WELL, I'M SORRY, IN THE

01:45PM  13    SECOND PARAGRAPH IT SAYS, "THE CENTERS FOR MEDICARE AND

01:45PM  14    MEDICAID SERVICES CONDUCTED A CLIA RECERTIFICATION AND

01:45PM  15    COMPLAINT SURVEY OF THE LABORATORY."

01:45PM  16         I'LL RESTATE, MS. RODRIGUEZ.  THANK YOU.

01:45PM  17         IS IT YOUR UNDERSTANDING THAT A SURVEY WAS PERFORMED BY

01:45PM  18    CMS PRIOR TO JANUARY THAT GENERATED THIS STATEMENT OF

01:45PM  19    DEFICIENCIES?

01:45PM  20    A.   YES, THAT IS MY UNDERSTANDING.

01:45PM  21    Q.   OKAY.  IT GOES ON TO SAY, "THE ONSITE SURVEY WAS COMPLETED

01:45PM  22    ON NOVEMBER 20TH, 2015.  HOWEVER, THE SURVEY CONCLUDED WITH THE

01:45PM  23    RECEIPT OF CRITICAL INFORMATION RECEIVED FROM THE LABORATORY ON

01:45PM  24    DECEMBER 23RD, 2015."

01:45PM  25         DO YOU SEE THAT?

DAS DIRECT BY MR. LEACH                                              5804

01:45PM   1    A.   YES, I DO.

01:45PM   2    Q.   THEN IT SAYS, "AS A RESULT OF THE SURVEY, IT WAS

01:45PM   3    DETERMINED THAT YOUR FACILITY WAS NOT IN COMPLIANCE WITH ALL OF

01:45PM   4    THE CONDITIONS REQUIRED FOR CERTIFICATION IN THE CLIA PROGRAM."

01:46PM   5         DO YOU SEE THAT?

01:46PM   6    A.   I DO.

01:46PM   7    Q.   AND IS "CONDITIONED" A TERM OF ART IN THE CLIA

01:46PM   8    REGULATIONS?

01:46PM   9    A.   YES, THAT IS.

01:46PM  10    Q.   AND WHAT IS A CONDITION?

01:46PM  11    A.   THESE ARE ANALOGOUS TO REQUIREMENTS OR REGULATIONS.

01:46PM  12    Q.   OKAY.  IT THEN SAYS, "IN ADDITION, BASED ON THE

01:46PM  13    CONDITION-LEVEL REQUIREMENT, HEMATOLOGY, IT WAS DETERMINED THAT

01:46PM  14    THE DEFICIENT PRACTICES OF THE LABORATORY POSE IMMEDIATE

01:46PM  15    JEOPARDY TO PATIENT HEALTH AND SAFETY."

01:46PM  16         DO YOU SEE THAT?

01:46PM  17    A.   YES, I DO.

01:46PM  18    Q.   AND IS THAT PART OF WHAT WAS TRIGGERING THE URGENCY FOR

01:46PM  19    YOUR RESPONSE TO CMS?

01:46PM  20    A.   YES, THAT IS CORRECT.

01:46PM  21    Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE

01:46PM  22    NEED TO RESPOND URGENTLY TO CMS?

01:46PM  23    A.   YES, WE DID.

01:46PM  24    Q.   FURTHER DOWN THERE'S A LIST OF CONDITIONS THAT WERE NOT

01:46PM  25    MET.

DAS DIRECT BY MR. LEACH                                                5805

01:46PM   1            IF WE CAN ZOOM OUT, MS. HOLLIMAN AND HIGHLIGHT THE BOTTOM.

01:47PM   2            DR. DAS, DO YOU SEE THE REFERENCE D5024 COLON, AND THEN A

01:47PM   3     REFERENCE TO 42 CFR WITH ANOTHER NUMBER?

01:47PM   4     A.   YES, I SEE THAT.

01:47PM   5     Q.   OKAY.  DO YOU HAVE AN UNDERSTANDING OF WHAT THAT D NUMBER

01:47PM   6     REFERENCES?

01:47PM   7     A.   D IS REFERENCING A DEFICIENCY.

01:47PM   8     Q.   AND THE 42 CFR, IS THAT A REFERENCE TO A PARTICULAR CLIA

01:47PM   9     REGULATION?

01:47PM   10    A.   THAT'S CORRECT.

01:47PM   11    Q.   AND THIS PARTICULAR REFERENCE IS A REFERENCE TO

01:47PM   12    HEMATOLOGY?

01:47PM   13    A.   THAT IS MY UNDERSTANDING.

01:47PM   14    Q.   AND WHAT IS HEMATOLOGY?

01:47PM   15    A.   IT'S A STUDY OF THE BLOOD.

01:47PM   16    Q.   THE NEXT TAG D5400.

01:47PM   17         DO YOU SEE THAT?

01:47PM   18    A.   I DO.

01:47PM   19    Q.   AND TO THE RIGHT, THIS RELATES TO A CONDITION FOR ANALYTIC

01:47PM   20    SYSTEMS.  IS THAT A TERM THAT YOU'RE FAMILIAR WITH IN THE CLIA

01:47PM   21    REGULATIONS?

01:47PM   22    A.   YES, I'M FAMILIAR WITH THAT TERM.

01:48PM   23    Q.   AND WHAT DOES THAT REFER TO?

01:48PM   24    A.   IT GENERALLY REFERS TO INSTRUMENTS AND METHODS USED FOR

01:48PM   25    TESTING.

DAS DIRECT BY MR. LEACH                                                5806

01:48PM   1    Q.   AND THEN D6076, DO YOU SEE THAT NUMBER IN THE THIRD ROW?

01:48PM   2    A.   YES.

01:48PM   3    Q.   OKAY.  AND THIS CONDITION IS LABORATORIES PERFORMING HIGH

01:48PM   4    COMPLEXITY TESTING; LABORATORY DIRECTOR.

01:48PM   5         DO YOU SEE THAT REFERENCE?

01:48PM   6    A.   I DO.

01:48PM   7    Q.   AND THERANOS'S CLIA LABORATORY IN CALIFORNIA WAS A HIGH

01:48PM   8    COMPLEXITY LAB?

01:48PM   9    A.   THAT IS CORRECT.

01:48PM   10   Q.   DESCRIBE FOR US HOW YOU WENT ABOUT RESPONDING TO CMS.

01:48PM   11   WHAT DID YOU DO IN TERMS OF RESPONDING TO THIS LETTER FROM CMS?

01:48PM   12   A.   HONESTLY, THE FIRST STEP WAS TO READ THE STATEMENT OF

01:48PM   13   DEFICIENCIES VERY CAREFULLY TO UNDERSTAND THE SPECIFICS OF THE

01:48PM   14   DEFICIENCIES.

01:48PM   15   Q.   AND I TRUST YOU DID THAT.

01:49PM   16   A.   YES, WE DID.

01:49PM   17   Q.   OKAY.  AND DID YOU HAVE MULTIPLE DISCUSSIONS WITH YOUR

01:49PM   18   TEAM ABOUT THE DEFICIENCIES THAT CMS IDENTIFIED?

01:49PM   19   A.   YES, WE DID.

01:49PM   20   Q.   DID YOU HAVE MULTIPLE DISCUSSIONS WITH MS. HOLMES ABOUT

01:49PM   21   THE DEFICIENCIES THAT CMS IDENTIFIED?

01:49PM   22   A.   YES.  SHE WAS PART OF SOME OF THOSE DISCUSSIONS.

01:49PM   23   Q.   OKAY.  LET ME -- I WANT TO DRAW YOUR ATTENTION, PLEASE, TO

01:49PM   24   PARTICULAR PROVISIONS WITHIN 2567, AND IF I COULD DRAW YOUR

01:49PM   25   ATTENTION, PLEASE, TO -- AND LET'S NOT DISPLAY THIS,

DAS DIRECT BY MR. LEACH                                                5807

01:49PM   1    MS. HOLLIMAN.

01:49PM   2         BUT IF I COULD PLEASE DRAW YOUR ATTENTION TO PAGE 51.

01:49PM   3              THE COURT:  I'M SORRY, WHAT PAGE?

01:49PM   4              MR. LEACH:  51, YOUR HONOR.

01:49PM   5              THE COURT:  THANK YOU.

01:49PM   6              THE WITNESS:  OKAY.

01:49PM   7    BY MR. LEACH:

01:49PM   8    Q.  BEFORE I ASK QUESTIONS ABOUT PAGE 51, AFTER REVIEWING THE

01:49PM   9    CMS STATEMENT OF DEFICIENCIES IN ITS ENTIRETY, DID YOU LOOK AT

01:50PM  10    THE CATEGORIES OF DOCUMENTS THAT YOU DESCRIBED EARLIER?

01:50PM  11    A.  NOT IMMEDIATELY.

01:50PM  12    Q.  AT SOME POINT DID YOU?

01:50PM  13    A.  YES.

01:50PM  14    Q.  AND DID YOU LOOK AT THE DOCUMENTS THAT WERE REFERENCED IN

01:50PM  15    THE CMS STATEMENT OF DEFICIENCIES TO UNDERSTAND WHAT THEY WERE

01:50PM  16    REFERRING TO?

01:50PM  17    A.  YES, THAT'S CORRECT.

01:50PM  18    Q.  AND DID YOU HAVE DISCUSSION WITH YOUR TEAM ABOUT THOSE?

01:50PM  19    A.  YES, WE DID.

01:50PM  20    Q.  DID YOU, AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES

01:50PM  21    ABOUT THAT?

01:50PM  22    A.  TO SOME EXTENT, YES.

01:50PM  23    Q.  LET ME DRAW YOUR ATTENTION -- WE'RE ON PAGE 51.  AT THE

01:50PM  24    BOTTOM, DO YOU SEE ANOTHER ONE OF THOSE D NUMBERS TO THE LEFT

01:50PM  25    AT THE BOTTOM?

DAS DIRECT BY MR. LEACH                                                      5808

01:50PM   1    A.   I DO.

01:50PM   2    Q.   AND IF I COULD ASK YOU, PLEASE, TO CONTINUE READING -- OR

01:50PM   3    IF I COULD ASK YOU TO CONTINUE READING TO THE NEXT PAGE, DO YOU

01:50PM   4    SEE AT THE TOP LANGUAGE, A REFERENCE TO A STANDARD?

01:50PM   5    A.   MR. LEACH, IF I MAY?  ARE YOU REFERRING TO D5791?

01:51PM   6    Q.   YES.

01:51PM   7    A.   AND READ UNTIL WHEN?

01:51PM   8    Q.   IF YOU COULD PLEASE READ UNTIL PAGE 52, THERE'S A

01:51PM   9    REFERENCE TO STANDARD AT THE TOP.

01:51PM  10         DO YOU SEE THAT LANGUAGE?

01:51PM  11    A.   I DO.

01:51PM  12    Q.   AND --

01:51PM  13    A.   PLEASE GIVE ME A MINUTE.

01:51PM  14         MR. WADE:  COUNSEL, IF I MAY INQUIRE, YOU'RE

01:51PM  15    REFERRING TO THE PAGE NUMBERS IN THE MIDDLE OF THE DOCUMENT OR

01:51PM  16    THE DOCUMENT ITSELF?

01:51PM  17         MR. LEACH:  THE TRIAL EXHIBIT NUMBER.

01:51PM  18         MR. WADE:  OKAY.  THANK YOU.

01:51PM  19    BY MR. LEACH:

01:51PM  20    Q.   AND DO YOU SEE A NUMBER 1 BENEATH THAT STANDARD LANGUAGE?

01:51PM  21    A.   YES, I DO.

01:51PM  22    Q.   OKAY.  I WANT TO SKIP OVER THE SUBSTANCE OF WHAT IS IN

01:51PM  23    NUMBER 1 AND GO TO NUMBER 2 ON THE NEXT PAGE, PAGE 53.

01:51PM  24    A.   YES.

01:51PM  25    Q.   OKAY.  AND DO YOU SEE A DESCRIPTION RELATING TO SOMETHING

DAS DIRECT BY MR. LEACH                                              5809

| | | |
|---|---|---|
| 01:51PM | 1 | CALLED TPS IN NUMBER 2 DOWN AT THE BOTTOM OF PAGE 53? |
| 01:52PM | 2 | A.   I DO. |
| 01:52PM | 3 | Q.   OKAY.  AND ARE YOU FAMILIAR WITH THIS PORTION OF THE 2567? |
| 01:52PM | 4 | A.   I'LL HAVE TO REVIEW IT CAREFULLY. |
| 01:52PM | 5 | Q.   IF YOU COULD REVIEW CAREFULLY PAGES 53, 54, UP TO NUMBER 3 |
| 01:52PM | 6 | ON PAGE 55. |
| 01:53PM | 7 | (PAUSE IN PROCEEDINGS.) |
| 01:53PM | 8 | THE WITNESS:  OKAY.  I'VE HAD A CHANCE TO REVIEW |
| 01:53PM | 9 | THIS. |
| 01:53PM | 10 | BY MR. LEACH: |
| 01:53PM | 11 | Q.   OKAY.  ARE YOU FAMILIAR WITH THIS PORTION OF FORM 2567? |
| 01:53PM | 12 | A.   YES. |
| 01:53PM | 13 | Q.   OKAY.  AND DID YOU DISCUSS ISSUES RELATING TO QUALITY |
| 01:53PM | 14 | CONTROL AND THE EDISON DEVICE WITH MS. HOLMES? |
| 01:53PM | 15 | A.   YES, WE HAD DISCUSSED THAT. |
| 01:53PM | 16 | MR. LEACH:  YOUR HONOR, I OFFER PAGES 51 FROM THE |
| 01:53PM | 17 | BOTTOM -- WITH THE D TAG BEGINNING D5791, THE TOP OF PAGE 52 |
| 01:53PM | 18 | WHERE IT SAYS "THE STANDARD IS" WITH SOME ADDITIONAL LANGUAGE |
| 01:54PM | 19 | THERE. |
| 01:54PM | 20 | THE COURT:  LET ME -- YOU SAID 51 FROM D5791? |
| 01:54PM | 21 | MR. LEACH:  YES. |
| 01:54PM | 22 | THE COURT:  OKAY. |
| 01:54PM | 23 | MR. LEACH:  ALL THE WAY DOWN TO PAGE 52 DOWN TO THE |
| 01:54PM | 24 | LINE INCLUDING "THIS STANDARD," AND THEN CONTINUING ON THE |
| 01:54PM | 25 | BOTTOM OF PAGE 53 FROM THE INFORMATION UNDER NUMBER 2 TO |

DAS DIRECT BY MR. LEACH                                              5810

| | | |
|---|---|---|
| 01:54PM | 1 | PAGE 55 WITH THE INFORMATION NUMBERED L. |
| 01:55PM | 2 | (PAUSE IN PROCEEDINGS.) |
| 01:55PM | 3 | MR. WADE:  I'M NOT SURE I TOTALLY FOLLOWED THE |
| 01:55PM | 4 | PORTIONS THAT COUNSEL WAS OFFERING. |
| 01:55PM | 5 | THE COURT:  OKAY.  MR. LEACH, MAYBE YOU SHOULD JUST |
| 01:55PM | 6 | WALK OVER AND SHOW MR. WADE WHERE IT IS. |
| 01:55PM | 7 | MR. LEACH:  SURE. |
| 01:55PM | 8 | (DISCUSSION OFF THE RECORD.) |
| 01:55PM | 9 | MR. WADE:  YOUR HONOR, SAME OBJECTIONS AS PREVIOUSLY |
| 01:55PM | 10 | NOTED. |
| 01:55PM | 11 | THE COURT:  THANK YOU.  I'LL NOTE THOSE OBJECTIONS |
| 01:56PM | 12 | AND NOTE THE FOUNDATION THAT HAS BEEN LAID THIS AFTERNOON WITH |
| 01:56PM | 13 | TESTIMONY. |
| 01:56PM | 14 | SO THE OBJECTION IS OVERRULED. |
| 01:56PM | 15 | (GOVERNMENT'S EXHIBIT 4621B, REDACTED PAGES 51 - 55, WAS |
| 01:56PM | 16 | RECEIVED IN EVIDENCE.) |
| 01:56PM | 17 | MR. LEACH:  THANK YOU, YOUR HONOR.  AND WE'LL DO OUR |
| 01:56PM | 18 | BEST TO DISPLAY JUST THOSE PORTIONS. |
| 01:56PM | 19 | SO, MS. HOLLIMAN, IF WE COULD PLEASE DISPLAY PAGE 51, |
| 01:56PM | 20 | BEGINNING -- REDACTING EVERYTHING EXCEPT THE BOTTOM OF THE PAGE |
| 01:56PM | 21 | STARTING WITH 5791. |
| 01:56PM | 22 | THE COURT:  AND, MR. LEACH, THESE ARE ADMITTED |
| 01:56PM | 23 | FOR -- I KNOW WE'VE DISCUSSED THIS -- FOR STATE OF MIND ISSUES? |
| 01:56PM | 24 | MR. LEACH:  YES, YOUR HONOR. |
| 01:56PM | 25 | THE COURT:  ALL RIGHT.  THANK YOU. |

DAS DIRECT BY MR. LEACH                                                5811

01:56PM    1        SO, LADIES AND GENTLEMEN, THESE PAGES THAT YOU'RE ABOUT TO

01:56PM    2    SEE ARE ADMITTED FOR THE STATE OF MIND OF THE DEFENDANT,

01:57PM    3    MR. LEACH?

01:57PM    4            MR. LEACH:  YES, YOUR HONOR.

01:57PM    5            THE COURT:  YES.  AS TO ANY ISSUE OF INTENT AND

01:57PM    6    KNOWLEDGE.

01:57PM    7        (PAUSE IN PROCEEDINGS.)

01:58PM    8            MR. LEACH:  JUST ONE MOMENT, YOUR HONOR.

01:58PM    9            THE COURT:  YES, OF COURSE.

01:58PM   10        (PAUSE IN PROCEEDINGS.)

01:58PM   11            MR. WADE:  YOUR HONOR, WHILE COUNSEL IS LOOKING FOR

01:58PM   12    THAT, I MIGHT JUST CLARIFY.

01:58PM   13        I UNDERSTAND THE COURT'S DIRECTION OF THE LIMITED PURPOSE

01:58PM   14    FOR WHICH THEY'RE OFFERED FOR, BUT I JUST MIGHT ASK THAT IT BE

01:58PM   15    CLARIFIED, BUT NOT FOR THE TRUTH OF THE MATTER ASSERTED.

01:58PM   16            THE COURT:  THAT WAS YOUR INTENT AS WELL, MR. LEACH?

01:58PM   17            MR. LEACH:  YES.

01:58PM   18            THE COURT:  LADIES AND GENTLEMEN, AS I SAID -- THANK

01:58PM   19    YOU, MR. WADE.

01:58PM   20        AS I SAID EARLIER, THESE ARE RECEIVED NOT FOR THE TRUTH OF

01:58PM   21    THE MATTER ASSERTED IN EACH OF THE DOCUMENTS, BUT THEY ARE

01:58PM   22    ADMITTED ONLY AS TO THE ISSUE OF KNOWLEDGE AND INTENT AS TO THE

01:59PM   23    DEFENDANT MS. HOLMES.

02:03PM   24        (PAUSE IN PROCEEDINGS.)

02:03PM   25            MR. LEACH:  YOUR HONOR, WE'RE HAVING SOME TECHNICAL

DAS DIRECT BY MR. LEACH                                                5812

02:03PM   1    ISSUES WITH THE REDACTIONS AND DISPLAYING THEM UP THERE.

02:03PM   2         I THINK WHILE WE'RE RESOLVING THAT I'D LIKE TO GO THROUGH

02:03PM   3    ADDITIONAL PORTIONS OF THIS AND MAKE MY OFFER OF PROOF AND

02:03PM   4    HOPEFULLY SAVE EVERYBODY SOME TIME THAT WAY.

02:03PM   5              THE COURT:  IT SEEMS TO BE THE ORDER OF THE DAY.

02:03PM   6              MR. LEACH:  I APOLOGIZE TO THE COURT AND APPRECIATE

02:03PM   7    EVERYONE'S PATIENCE.

02:04PM   8    Q.   BEFORE WE DISPLAY THE PORTIONS THAT WERE JUST ADMITTED,

02:04PM   9    DR. DAS, LET ME DRAW YOUR ATTENTION TO PAGE 55 OF EXHIBIT 4621,

02:04PM  10    THE COVER LETTER AND THE STATEMENT OF DEFICIENCIES.

02:04PM  11    A.   YES.

02:04PM  12    Q.   AND DO YOU SEE THE NUMBER 3 IN THE COLUMN FOR SUMMARY

02:04PM  13    STATEMENT OF DEFICIENCIES?

02:04PM  14    A.   I DO.

02:04PM  15    Q.   OKAY.  AND PLEASE TAKE A MOMENT TO READ TO YOURSELF THE

02:04PM  16    INFORMATION BEGINNING AT 3 AND CONTINUING TO PAGE 57 THROUGH

02:04PM  17    THE SUBSTANCE OF NUMBER K IN THE MIDDLE OF THE PAGE.

02:04PM  18         (PAUSE IN PROCEEDINGS.)

02:06PM  19              THE WITNESS:  THANKS FOR YOUR PATIENCE.

02:06PM  20    BY MR. LEACH:

02:06PM  21    Q.   HAVE YOU READ THOSE CAREFULLY TO YOURSELF?

02:06PM  22    A.   I HAVE.

02:06PM  23    Q.   AND IN THE MARCH AND APRIL TIME PERIOD, DID YOU HAVE

02:06PM  24    CONVERSATIONS WITH MS. HOLMES ABOUT THERANOS'S QUALITY CONTROL

02:06PM  25    RESULTS FOR THE TIME PERIOD JULY 2014 THROUGH JUNE OF 2015?

DAS DIRECT BY MR. LEACH                                                5813

02:06PM   1      A.   YES, WE DID.

02:06PM   2             MR. LEACH:  YOUR HONOR, I OFFER PAGE 55, BEGINNING

02:06PM   3      FROM THE NUMBER 3 ALL OF THE WAY THROUGH PAGE 57, STOPPING AT

02:07PM   4      THE NUMBER -- JUST ABOVE THE NUMBER 4.

02:07PM   5             THE COURT:  MR. LEACH, COULD YOU TELL ME -- YOUR

02:07PM   6      LAST QUESTION WAS REGARDING CONVERSATIONS THAT THIS WITNESS HAD

02:07PM   7      WITH MS. HOLMES BETWEEN, WHAT WAS THE TIME PERIOD?

02:07PM   8             MR. LEACH:  BETWEEN JULY -- RELATING TO QC DATA

02:07PM   9      BETWEEN JULY OF 2014 AND JUNE OF 2015.

02:08PM  10             (PAUSE IN PROCEEDINGS.)

02:08PM  11             THE COURT:  COUNSEL?

02:08PM  12             MR. WADE:  I MIGHT JUST INQUIRE.

02:08PM  13          FOR WHAT PURPOSE IS THIS ADMISSION?

02:08PM  14             THE COURT:  IT'S NOT FOR THE TRUTH OF THE MATTER --

02:08PM  15      IS THIS LIKEWISE AS THE PREVIOUS ADMISSIONS?

02:08PM  16             MR. LEACH:  YES, YOUR HONOR, FOR STATE OF MIND.

02:08PM  17             THE COURT:  YES.

02:08PM  18             MR. WADE:  I HAVE THE SAME OBJECTION, AND I WOULD

02:08PM  19      ADD 104 TO THIS AS WELL.

02:08PM  20             THE COURT:  ALL RIGHT.  THANK YOU.

02:08PM  21          LADIES AND GENTLEMEN -- OVERRULED.

02:08PM  22          LADIES AND GENTLEMEN, THESE EXHIBITS WILL BE ADMITTED, AND

02:08PM  23      THEY ARE OFFERED NOT FOR THE TRUTH OF THE MATTER ASSERTED, BUT

02:08PM  24      ONLY AS TO THE STATE OF MIND OF MS. HOLMES, AS THE PREVIOUS

02:08PM  25      ADMISSIONS, AS TO INTENT AND KNOWLEDGE, AND THOSE ISSUES ONLY,

DAS DIRECT BY MR. LEACH                                                    5814

| | | |
|---|---|---|
| 02:08PM | 1 | NOT FOR THE TRUTH OF THE MATTER ASSERTED, BUT ONLY AS TO THE |
| 02:08PM | 2 | STATE OF MIND OF MS. HOLMES AS TO KNOWLEDGE AND INTENT. |
| 02:08PM | 3 | (GOVERNMENT'S EXHIBIT 4621, PAGE 55 WAS RECEIVED IN |
| 02:09PM | 4 | EVIDENCE.) |
| 02:09PM | 5 | MR. LEACH:  MS. HOLLIMAN, IF WE'RE ABLE TO, I THINK |
| 02:09PM | 6 | WE CAN NOW DISPLAY THE ENTIRETY OF PAGE 55. |
| 02:10PM | 7 | (PAUSE IN PROCEEDINGS.) |
| 02:10PM | 8 | MR. LEACH:  OKAY.  MS. HOLLIMAN, IF WE CAN PLEASE |
| 02:10PM | 9 | ZOOM IN ON THE TOP PORTION OF PAGE 55 JUST TO ORIENT THE JURY |
| 02:10PM | 10 | AT THE TOP OF THE PAGE. |
| 02:10PM | 11 | Q.  DR. DAS, DO YOU SEE THE TOP PORTION OF PAGE 55 ON TRIAL |
| 02:10PM | 12 | EXHIBIT 4621? |
| 02:10PM | 13 | A.  I DO. |
| 02:10PM | 14 | Q.  OKAY.  AND DO YOU SEE THE DATE IN THE UPPER RIGHT CORNER, |
| 02:10PM | 15 | JANUARY 25TH, 2016? |
| 02:10PM | 16 | A.  YES. |
| 02:10PM | 17 | Q.  OKAY.  AND TO THE LEFT OF THE PAGE THERE'S A BOX |
| 02:11PM | 18 | "STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION." |
| 02:11PM | 19 | IS THAT PART OF THE CMS FORM? |
| 02:11PM | 20 | A.  YES, IT IS. |
| 02:11PM | 21 | Q.  AND TO THE RIGHT DO YOU SEE THE DATE OF NOVEMBER 20TH, |
| 02:11PM | 22 | 2015? |
| 02:11PM | 23 | A.  YES. |
| 02:11PM | 24 | Q.  OKAY.  AND IS THAT YOUR UNDERSTANDING OF THE DATE THAT THE |
| 02:11PM | 25 | CMS SURVEY WAS COMPLETED? |

DAS DIRECT BY MR. LEACH                                                5815

02:11PM  1      A.   THAT IS MY UNDERSTANDING.

02:11PM  2      Q.   OKAY.  THERE'S A STREET ADDRESS LISTED FOR THE LABORATORY,

02:11PM  3      733 GATEWAY BOULEVARD.

02:11PM  4           IS THAT WHERE THE CLIA LABORATORY WAS LOCATED?

02:11PM  5      A.   THAT'S CORRECT.

02:11PM  6      Q.   THAT'S WHERE YOU WENT TO WORK IN YOUR JOB?

02:11PM  7      A.   YES.

02:11PM  8      Q.   OKAY.  IF WE COULD PLEASE ZOOM OUT, MS. HOLLIMAN.

02:11PM  9           IF WE CAN NOW CAPTURE EVERY -- THE TOP -- DOWN A LITTLE

02:11PM 10      BIT MORE TO NUMBER 3.

02:11PM 11           DR. DAS, DO YOU SEE THE NUMBER D5791 --

02:11PM 12      A.   I DO.

02:11PM 13      Q.   -- IN THE TOP LEFT CORNER?

02:12PM 14           AND IS THAT A REFERENCE TO SOME IDENTIFICATION TAG OR

02:12PM 15      PREFIX TAG?

02:12PM 16      A.   THAT'S CORRECT, D TAG.

02:12PM 17      Q.   OKAY.  WHAT DO YOU MEAN, D TAG?

02:12PM 18      A.   DEFICIENCY TAG.

02:12PM 19      Q.   AND DOWN ON 3 IT SAYS, "BASED ON REVIEW OF QUALITY

02:12PM 20      ASSESSMENT AND QA PROCEDURES, THE LABORATORY FAILED TO HAVE A

02:12PM 21      QUALITY ASSESSMENT PROCEDURE ESTABLISHED TO IDENTIFY AND

02:12PM 22      CORRECT PROBLEMS WITH THE QUALITY CONTROL PROGRAM FOR THE

02:12PM 23      THERANOS PROPRIETARY SYSTEM (TPS)."

02:12PM 24           DO YOU SEE THAT LANGUAGE?

02:12PM 25      A.   YES, I DO.

DAS DIRECT BY MR. LEACH                                              5816

02:12PM   1    Q.   AND DID YOU UNDERSTAND TPS TO BE THE EDISON 3.5 DEVICE?

02:12PM   2    A.   YES.

02:12PM   3    Q.   AND WHAT DID YOU UNDERSTAND QUALITY ASSESSMENT TO MEAN?

02:12PM   4    A.   MEANING THE TERM, MR. LEACH?

02:12PM   5    Q.   YES.

02:12PM   6    A.   THAT'S A TERM THAT ENCOMPASSES ALL QUALITY PROGRAMS, NOT

02:13PM   7    INCLUDING QUALITY CONTROL.

02:13PM   8    Q.   AND WHAT DO YOU MEAN BY "QUALITY PROGRAMS"?

02:13PM   9    A.   IN GENERAL, QUALITY CONTROL HAS TO DO WITH DAY-TO-DAY

02:13PM  10    RUNS, QUALITY OF DAY-TO-DAY RUNS.

02:13PM  11         AND QUALITY ASSESSMENT IS -- DESCRIBES ALL OF THE OTHER

02:13PM  12    QUALITY ACTIVITIES OUTSIDE OF THE DAY-TO-DAY RUNS ON ANY GIVEN

02:13PM  13    INSTRUMENT.

02:13PM  14    Q.   AND WAS PART OF YOUR JOB AS THE LAB DIRECTOR TO

02:13PM  15    INVESTIGATE THIS FINDING, UNDERSTAND IT, AND COME UP WITH THE

02:13PM  16    COMPANY'S RESPONSE?

02:13PM  17    A.   YES.

02:13PM  18    Q.   IF WE CAN GO FURTHER DOWN, PLEASE, MS. HOLLIMAN, ON

02:13PM  19    PAGE 55.

02:13PM  20         IT READS HERE, "MONTHLY QC REPORTS WERE REVIEWED FOR

02:13PM  21    JULY 2014, OCTOBER 2014, AND FEBRUARY THROUGH JUNE 2015."

02:13PM  22         DID YOU ALSO REVIEW MONTHLY QC REPORTS IN THE COURSE OF

02:14PM  23    YOUR WORK AS THE LABORATORY DIRECTOR?

02:14PM  24    A.   WE DID.  WE HAD THE REPORTS CREATED FOR US.

02:14PM  25    Q.   OKAY.  AND THAT WAS IN PART TO RESPOND TO THE 2567?

DAS DIRECT BY MR. LEACH                                           5817

02:14PM   1    A.    THAT'S CORRECT.

02:14PM   2    Q.    AND IN NUMBER 2 IT SAYS, "THE TOTAL PERCENTAGE OF QC

02:14PM   3    VALUES GREATER THAN 2 STANDARD DEVIATIONS (SDS) WAS REVIEWED BY

02:14PM   4    THE SURVEYOR."

02:14PM   5          DO YOU SEE THAT LANGUAGE?

02:14PM   6    A.    I DO.

02:14PM   7    Q.    AND DO YOU UNDERSTAND WHAT IS MEANT BY "STANDARD

02:14PM   8    DEVIATIONS"?

02:14PM   9    A.    YES, I DO.

02:14PM   10   Q.    AND WHAT IS A STANDARD DEVIATION?

02:14PM   11   A.    WOULD YOU LIKE THE MORE TECHNICAL DEFINITION?

02:14PM   12   Q.    I'D LIKE THE LESS TECHNICAL DEFINITION IF YOU COULD.

02:14PM   13   A.    IT'S, IN GENERAL, AN ESTIMATE OF THE SPREAD OF A DATA SET,

02:14PM   14   HOW WIDELY THE VALUES VARY.

02:14PM   15   Q.    OKAY.

02:14PM   16   A.    IN LABORATORY PARLANCE, WE USE IT TO ESTIMATE PRECISION.

02:14PM   17   Q.    AND IF WE CAN GO TO THE NEXT PAGE, PLEASE, PAGE 56.

02:15PM   18         DR. DAS, DO SOME OF THE CMS FINDINGS CONTINUE -- WITH

02:15PM   19   RESPECT TO THIS D TAG CONTINUE ON TO THE NEXT PAGE?

02:15PM   20   A.    YES, I SEE THAT.

02:15PM   21   Q.    OKAY.  DO YOU SEE WHERE IT SAYS, "IN JULY 2014, THE DATA

02:15PM   22   REVEALED THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES

02:15PM   23   WITH MORE THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."  AND

02:15PM   24   THEN THERE'S TESTOSTERONE, TOTAL T4, VITAMIN D.

02:15PM   25         "OVERALL 16 PERCENT OF QC SAMPLES ON ALL TESTS ON ALL

DAS DIRECT BY MR. LEACH                                            5818

02:15PM  1    DEVICES HAD VALUES GREATER THAN 2 SDS."

02:15PM  2        DO YOU SEE THAT LANGUAGE?

02:15PM  3    A.   I DO SEE THAT.

02:15PM  4    Q.   OKAY.  AND WERE TST, TOTAL T4, AND VITAMIN D ASSAYS RUN ON

02:15PM  5    THE EDISON IN THE 2014 TIME PERIOD?

02:15PM  6    A.   THAT IS CORRECT.  I BELIEVE THAT'S WHAT THEY'RE REFERRING

02:15PM  7    TO.

02:15PM  8    Q.   AND DID YOU AND YOUR TEAM ALSO REVIEW THE DATA THAT IS

02:16PM  9    LISTED HERE ON THIS FORM?

02:16PM  10   A.   YES.

02:16PM  11   Q.   AND DID YOU REVIEW AN EVEN BROADER UNIVERSE OF QC DATA IN

02:16PM  12   ORDER TO RESPOND TO THE CMS REPORT?

02:16PM  13   A.   WE DID.

02:16PM  14   Q.   AND IS THIS -- IS THE FINDING LISTED HERE CONSISTENT WITH

02:16PM  15   WHAT YOU REVIEWED IN YOUR REVIEW OF DATA?

02:16PM  16        MR. WADE:  YOUR HONOR, 702 ON THIS ISSUE,

02:16PM  17   PARTICULARLY GIVEN THE PURPOSE THAT THIS EVIDENCE HAS BEEN

02:16PM  18   OFFERED.

02:16PM  19        THE COURT:  MR. LEACH, I THINK YOU'RE ON THE MARGINS

02:16PM  20   OF A 702 AREA, SO LET ME ASK YOU TO REPHRASE YOUR QUESTION.

02:16PM  21   BY MR. LEACH:

02:16PM  22   Q.   DID YOU ALSO -- DID YOU ALSO REVIEW THE DATA THAT IS

02:16PM  23   LISTED IN THIS REPORT, IN THIS PARAGRAPH E, DR. DAS?

02:16PM  24   A.   I DON'T RECALL THESE EXACT NUMBERS, BUT THESE TIME FRAMES

02:17PM  25   ARE CONSISTENT WITH MY RECOLLECTION.

DAS DIRECT BY MR. LEACH                                              5819

02:17PM   1    Q.   OKAY.  AND IN RESPONDING TO CMS, DID -- OR YOU NEEDED TO

02:17PM   2    FORMULATE A RESPONSE TO CMS ON BEHALF OF THE COMPANY; IS THAT

02:17PM   3    CORRECT?

02:17PM   4    A.   YES, THAT IS CORRECT.

02:17PM   5    Q.   AND DID YOU LOOK AT NOT JUST DATA FOR JULY OF 2014, BUT A

02:17PM   6    BROADER UNIVERSE OF DATA IN ORDER TO UNDERSTAND AND RESPOND TO

02:17PM   7    CMS?

02:17PM   8    A.   YES, WE DID.

02:17PM   9    Q.   OKAY.  AT ANY POINT DID YOU TELL CMS THAT THE COMPANY

02:17PM   10   DISAGREED WITH THIS PARTICULAR FINDING?

02:17PM   11   A.   NO, I DON'T BELIEVE WE DID.

02:17PM   12   Q.   OKAY.  WHY NOT?

02:17PM   13   A.   THESE FINDINGS --

02:17PM   14            MR. WADE:  YOUR HONOR, AGAIN, 702.  WE'RE JUST USING

02:17PM   15   REVERSE INSTEAD OF FORWARD.

02:17PM   16            THE COURT:  I UNDERSTAND.

02:17PM   17      I THINK YOU'RE ASKING FOR AN OPINION THAT FALLS UNDER 702

02:17PM   18   THE WAY THE QUESTION IS FORMED, SO I'LL SUSTAIN THE OBJECTION.

02:17PM   19   BY MR. LEACH:

02:17PM   20   Q.   BUT YOU NEVER SAID TO ANYBODY AT CMS, "I DISAGREE WITH

02:17PM   21   THIS FINDING"?

02:18PM   22   A.   I DON'T RECALL SAYING THAT OR WRITING THAT.

02:18PM   23   Q.   LET'S GO TO NUMBER F.

02:18PM   24   A.   OKAY.

02:18PM   25   Q.   AND IF WE CAN ENLARGE THAT, MS. HOLLIMAN.

DAS DIRECT BY MR. LEACH                                        5820

02:18PM   1        I'M SORRY.  I THINK WE'RE DOWN ON H.  I WANTED TO FOCUS ON

02:18PM   2   F IF WE COULD:

02:18PM   3        THIS READS, DR. DAS, "IN OCTOBER 2014 THE DATA REVEALED

02:18PM   4   THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES WITH MORE

02:18PM   5   THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."

02:18PM   6        DO YOU SEE THAT LANGUAGE?

02:18PM   7   A.   I DO.

02:18PM   8   Q.   AND THEN THERE'S A LIST FOR ESTRADIOL, FREE T4, PROLACTIN,

02:18PM   9   SHBG, TSH, TST, TOTAL T3, TT4, VITAMIN D, AND VITAMIN B12.

02:19PM  10        DO YOU SEE THOSE?

02:19PM  11   A.   I DO.

02:19PM  12   Q.   AND ARE ALL OF THOSE ASSAYS THAT WERE RUN ON THE EDISON?

02:19PM  13   A.   YES.

02:19PM  14   Q.   AND AS A LAB DIRECTOR, IS IT DESIRABLE OR UNDESIRABLE TO

02:19PM  15   HAVE A CV OF GREATER THAN 15 PERCENT?

02:19PM  16   A.   THAT WOULD BE UNDESIRABLE.

02:19PM  17   Q.   THIS SAYS, "OVERALL 29 PERCENT OF QC SAMPLES ON ALL TESTS

02:19PM  18   ON ALL DEVICES HAD VALUES GREATER THAN 2 SD'S."

02:19PM  19        DO YOU SEE THAT?

02:19PM  20   A.   YES, I SEE THAT.

02:19PM  21   Q.   AND WHAT DID YOU UNDERSTAND THAT TO MEAN?

02:19PM  22   A.   THAT -- I UNDERSTAND THAT TO MEAN THAT 15 PERCENT OF THE

02:19PM  23   VALUES WERE VIOLATING THE 2 SD RULE, WHICH IS A COMMON QUALITY

02:19PM  24   CONTROL RULE.

02:19PM  25   Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THIS

DAS DIRECT BY MR. LEACH                                                    5821

| | | |
|---|---|---|
| 02:19PM | 1 | QUALITY CONTROL RULE AND THE DATA THAT WAS BEING REPORTED BY |
| 02:19PM | 2 | CMS? |
| 02:19PM | 3 | A.   IN GENERAL, YES. |
| 02:19PM | 4 | Q.   LET'S GO TO LETTER G. |
| 02:20PM | 5 | DO YOU SEE WHERE IT SAYS, "IN FEBRUARY OF 2015, THE |
| 02:20PM | 6 | DATA" -- OH, BEFORE I LEAVE G, DID YOU EVER TELL CMS THAT YOU |
| 02:20PM | 7 | DISAGREED WITH THIS FINDING IN F? |
| 02:20PM | 8 | MR. WADE:  YOUR HONOR, I'M GOING TO OBJECT ON 702 |
| 02:20PM | 9 | GROUNDS TO THIS AS WELL. |
| 02:20PM | 10 | THE COURT:  OVERRULED.  YOU CAN ANSWER THE QUESTION. |
| 02:20PM | 11 | THE WITNESS:  NO, I DO NOT RECALL THAT. |
| 02:20PM | 12 | BY MR. LEACH: |
| 02:20PM | 13 | Q.   IN G IT SAYS, "IN FEBRUARY 2015, THE DATA REVEALED THE |
| 02:20PM | 14 | FOLLOWING TESTS SHOWED THE PERCENTAGE OF QC SAMPLES WITH MORE |
| 02:20PM | 15 | THAN 15 PERCENT OF VALUES GREATER THAN 2 SD." |
| 02:20PM | 16 | AND IT LISTS FT4, SHBG, TT3, VITAMIN D, VITAMIN B12. |
| 02:20PM | 17 | DO YOU SEE THAT? |
| 02:20PM | 18 | A.   I DO. |
| 02:20PM | 19 | Q.   AND THOSE ARE TESTS THAT ARE RUN ON EDISON? |
| 02:20PM | 20 | A.   THAT IS CORRECT. |
| 02:20PM | 21 | Q.   AND AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU |
| 02:20PM | 22 | DISAGREED WITH THIS FINDING? |
| 02:20PM | 23 | A.   NO, I DON'T RECALL DOING SO. |
| 02:20PM | 24 | Q.   LET'S LOOK AT H AND I. |
| 02:21PM | 25 | DO YOU SEE WHERE IT SAYS, "IN MARCH OF 2015, THE DATA |

DAS DIRECT BY MR. LEACH                                              5822

02:21PM   1    REVEALED THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES

02:21PM   2    WITH MORE THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."

02:21PM   3        DO YOU SEE THAT LANGUAGE?

02:21PM   4    A.   I DO.

02:21PM   5    Q.   OKAY.  AND DID YOU UNDERSTAND THIS TO BE A SIMILAR ISSUE

02:21PM   6    TO WHAT CMS WAS RAISING FOR FEBRUARY, OCTOBER, AND JULY?

02:21PM   7    A.   YES, I DO.

02:21PM   8    Q.   AND AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU

02:21PM   9    DISAGREED WITH THIS FINDING?

02:21PM   10   A.   NO, I DON'T RECALL DOING SO.

02:21PM   11   Q.   AND THEN I SAYS, "IN APRIL THE DATA REVEALED THE FOLLOWING

02:21PM   12   TESTS, SHOWED PERCENTAGE OF QC SAMPLES WITH MORE THAN

02:21PM   13   15 PERCENT OF VALUES GREATER THAN 2 SD, SHBG," AND THEN THERE'S

02:22PM   14   A LIST OF ASSAYS CONTINUING ON TO PAGE 57.

02:22PM   15       IS THIS A SIMILAR ISSUE BEING RAISED IN THE FINDINGS THAT

02:22PM   16   WE JUST LOOKED AT PREVIOUSLY?

02:22PM   17   A.   YES, I AGREE.

02:22PM   18   Q.   AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU DISAGREED

02:22PM   19   WITH THIS FINDING?

02:22PM   20   A.   NO, I DON'T RECALL DOING SO.

02:22PM   21   Q.   WAS TSA -- OR EXCUSE ME, PSA AN --

02:22PM   22       YOU CAN TAKE THIS DOWN, MS. HOLLIMAN.

02:22PM   23       WAS PSA ANOTHER ASSAY THAT WAS RUN ON THE EDISON DEVICE IN

02:22PM   24   THE TIME PERIOD BEFORE YOU BECAME THE LAB DIRECTOR?

02:22PM   25   A.   YES, THAT'S MY UNDERSTANDING.

DAS DIRECT BY MR. LEACH                                                    5823

02:22PM    1     Q.    OKAY.  AND IN CONNECTION WITH YOUR REVIEW OF THE CMS

02:22PM    2     REPORT AND RESPONDING TO CMS, DID YOU HAVE DISCUSSIONS WITH

02:22PM    3     MS. HOLMES ABOUT WHAT CMS WAS FINDING WITH RESPECT TO CMS AND

02:23PM    4     WHAT YOU WERE FINDING AND WHAT THAT -- HOW TO RESPOND TO THAT?

02:23PM    5     A.    I COULD USE A LITTLE MORE SPECIFICITY, MR. LEACH, IF YOU

02:23PM    6     MAY.

02:23PM    7     Q.    THAT WAS A COMPOUND QUESTION.  LET ME ASK IT BETTER.

02:23PM    8           IN THIS 2015 OR 2016, MARCH AND APRIL TIME PERIOD, DID YOU

02:23PM    9     HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE COMPANY'S PSA TEST?

02:23PM   10     A.    I DID.

02:23PM   11     Q.    AND WAS THAT IN THE CONTEXT OF SOME OF THE CMS FINDINGS

02:23PM   12     AND HOW TO RESPOND TO THAT?

02:23PM   13     A.    IT WAS RELATED TO THE CMS FINDINGS.

02:23PM   14     Q.    OKAY.  DESCRIBE TO US YOUR CONVERSATIONS WITH MS. HOLMES?

02:23PM   15     A.    I RECALL USING THE PSA TEST AS AN EXAMPLE OF THE EDISON'S

02:23PM   16     ERROR PROPENSITY OR GENERATING ERROR -- ERRONEOUS RESULTS.

02:23PM   17     Q.    OKAY.  AND DID YOU GIVE MS. HOLMES A PARTICULAR REASON WHY

02:23PM   18     YOU THOUGHT THE EDISON WAS PRONE TO ERRONEOUS RESULTS?

02:23PM   19     A.    YES.  IN REVIEWING THE DATA, IT ENDED UP BEING AN EASILY

02:24PM   20     DIGESTIBLE EXAMPLE OF THE EDISON'S ERRORS AND THAT I RECALL

02:24PM   21     QUITE A FEW FEMALE PATIENTS RETURNING PSA RESULTS, WHICH WOULD

02:24PM   22     BE HIGHLY UNLIKELY.

02:24PM   23     Q.    WHY WAS THAT A RED FLAG TO YOU?

02:24PM   24     A.    BECAUSE FEMALES SHOULD GENERALLY NOT HAVE PSA DETECTABLE.

02:24PM   25     IT SHOULD ONLY BE DETECTED IN MALES.

DAS DIRECT BY MR. LEACH                                                  5824

02:24PM   1    Q.   AND WHY WERE YOU BRINGING THIS TO MS. HOLMES'S ATTENTION?

02:24PM   2    A.   IT WAS JUST TO EXEMPLIFY WHAT WE WERE DISCUSSING REGARDING

02:24PM   3    SOME OF THE ERRORS SEEN ON THE TSPU.

02:24PM   4    Q.   AND AFTER THIS CONVERSATION WITH MS. HOLMES, DID SHE COME

02:24PM   5    BACK TO YOU ABOUT WITH ANY LITERATURE RELATING TO PSA RESULTS?

02:24PM   6    A.   YES, I BELIEVE SO.  SHE OFFERED AN ALTERNATIVE

02:24PM   7    EXPLANATION.

02:24PM   8    Q.   AND WHAT WAS THE ALTERNATIVE EXPLANATION?

02:24PM   9    A.   I DON'T REMEMBER THE DETAILS, BUT IT WAS ALONG THE LINES

02:24PM  10    OF AN ARTICLE OR TWO DESCRIBING A FEW, I BELIEVE IT WAS A

02:25PM  11    FRACTION OF A SUBSET OF A RARE BREAST CANCER AND THOUGH FEMALES

02:25PM  12    FROM TIME TO TIME EXHIBITING PSA RESULTS FROM THEIR TUMORS.

02:25PM  13    Q.   AND WAS THAT EXPLANATION SATISFYING TO YOU?

02:25PM  14    A.   IT SEEMED IMPLAUSIBLE.

02:25PM  15    Q.   LET ME MOVE FORWARD IN TIME, PLEASE, TO THE END OF OR THE

02:25PM  16    LATE TIME PERIOD OF MARCH OF 2016.

02:25PM  17         HAVING REVIEWED THE FORM 2567, DID YOU WRITE BACK TO CMS

02:25PM  18    WITH THE COMPANY'S RESPONSES?

02:25PM  19    A.   YES, I DO RECALL THAT.

02:25PM  20    Q.   OKAY.  AND DID YOU -- YOU MENTIONED SOMETHING EARLIER

02:25PM  21    CALLED A PATIENT IMPACT ASSESSMENT.

02:25PM  22         WHAT IS THAT?

02:25PM  23    A.   YES.  THOSE WERE DESCRIPTIONS OF OUR ASSESSMENTS ON OUR

02:25PM  24    EVALUATION OF WHETHER THESE TESTS LED TO POTENTIAL FOR PATIENT

02:25PM  25    HARM.

DAS DIRECT BY MR. LEACH                                                    5825

02:25PM   1    Q.   AND IN THE COURSE OF, IN THE COURSE OF PREPARING THESE

02:26PM   2    PATIENT IMPACT ASSESSMENTS, WERE YOU -- DID YOU VIEW YOURSELF

02:26PM   3    AS FULFILLING YOUR OBLIGATIONS AS THE CLIA LAB DIRECTOR?

02:26PM   4    A.   YES, I DID.

02:26PM   5    Q.   AND WHY DID YOU FEEL THAT WAS PART OF YOUR OBLIGATIONS AS

02:26PM   6    THE CLIA LAB DIRECTOR?

02:26PM   7    A.   THAT'S NOT ONLY A REGULATORY OBLIGATION BUT A PROFESSIONAL

02:26PM   8    ONE AND AN ETHICAL ONE AS WELL.

02:26PM   9    Q.   OKAY.  LET ME DRAW YOUR ATTENTION BACK TO 7603,

02:27PM  10    SPECIFICALLY PAGES 82 AND 83.

02:27PM  11         DO YOU HAVE THAT IN FRONT OF YOU, DR. DAS?

02:27PM  12    A.   YES, I DO.  THANK YOU.

02:27PM  13    Q.   OKAY.  AND ON PAGE 82 THERE'S A CFR SECTION 493.1291,

02:27PM  14    STANDARD TEST REPORT.

02:27PM  15         DO YOU SEE THAT?

02:27PM  16    A.   YES, I SEE THAT.

02:27PM  17    Q.   AND IF YOU LOOK ON PAGE 83, THERE'S A SUBPARAGRAPH K.

02:27PM  18         DO YOU SEE WHERE IT SAYS, "WHEN ERRORS IN THE REPORTED

02:27PM  19    PATIENT TEST RESULTS ARE DETECTED, THE LABORATORY MUST DO THE

02:27PM  20    FOLLOWING"?

02:27PM  21    A.   I DO SEE THAT.

02:27PM  22    Q.   OKAY.  AND DOES THAT LAY OUT CERTAIN THINGS THAT YOU FELT

02:27PM  23    AS THE LABORATORY DIRECTOR NEEDED TO BE DONE IF THE CONDITION

02:27PM  24    IN K WAS SATISFIED?

02:27PM  25    A.   THAT'S CORRECT, THAT'S STANDARD PRACTICE.

DAS DIRECT BY MR. LEACH                                                    5826

02:27PM   1    Q.   OKAY.  IN THE COURSE OF RESPONDING TO THE CMS 2567, DID

02:28PM   2    YOU, AS THE LABORATORY, DETECT ERRORS IN THE PATIENT REPORTED

02:28PM   3    TEST RESULTS?

02:28PM   4    A.   WE DID.

02:28PM   5    Q.   AND DID YOU FEEL THAT YOU WERE REQUIRED TO TAKE CERTAIN

02:28PM   6    ACTION PURSUANT TO THIS CLIA REGULATION AND YOUR PROFESSIONAL

02:28PM   7    RESPONSIBILITIES?

02:28PM   8    A.   YES, THAT'S CORRECT.

02:28PM   9    Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO EXHIBIT 4943.

02:28PM  10         DO YOU HAVE THAT IN FRONT OF YOU, DR. DAS?

02:28PM  11    A.   YES, I DO.

02:28PM  12    Q.   DO YOU RECOGNIZE THE FIRST PAGE OF 4943?

02:28PM  13    A.   I DO IN GENERAL, NOT THE SPECIFIC PAGE, THOUGH.

02:28PM  14    Q.   OKAY.  IN GENERAL, WHAT IS THIS?

02:28PM  15    A.   IT LOOKS LIKE IT'S A TABLE OF CONTENTS FOR THE EXHIBITS

02:29PM  16    THAT WE SUBMITTED TO CMS AS EVIDENCE.

02:29PM  17    Q.   AS PART OF YOUR REVIEW AND RESPONSE TO THE 2567?

02:29PM  18    A.   THAT'S CORRECT.

02:29PM  19    Q.   OKAY.  DO YOU SEE THAT THERE'S A ROW -- THE THIRD ROW FROM

02:29PM  20    THE BOTTOM WITH TAB NUMBER 3?

02:29PM  21    A.   YES, I DO.

02:29PM  22    Q.   OKAY.  AND WE CAN NOW TURN TO PAGE 9.

02:29PM  23         DO YOU SEE THE HEADING PATIENT IMPACT ASSESSMENT?

02:29PM  24    A.   I DO.  THE PRINT IS RATHER SMALL.

02:29PM  25    Q.   OKAY.  WE'LL, WE'LL --

DAS DIRECT BY MR. LEACH                                                    5827

02:29PM    1    A.   WE'LL MANAGE.

02:29PM    2    Q.   AND IS THIS A PATIENT IMPACT ASSESSMENT THAT WAS PROVIDED

02:29PM    3    TO CMS FOLLOWING YOUR REVIEW OF THE 2567?

02:29PM    4    A.   I'LL NEED JUST A MOMENT TO REVIEW IT.

02:30PM    5    Q.   YES.  THANK YOU.

02:30PM    6         (PAUSE IN PROCEEDINGS.)

02:30PM    7            THE WITNESS:  YES, I BELIEVE SO.

02:30PM    8            MR. LEACH:  YOUR HONOR, I OFFER PAGE 1 AND 9 OF

02:30PM    9    4943.

02:30PM   10         (PAUSE IN PROCEEDINGS.)

02:30PM   11            MR. WADE:  JUST THE SAME OBJECTIONS, YOUR HONOR.

02:30PM   12            THE COURT:  ALL RIGHT.  THANK YOU.

02:30PM   13       THE COURT WILL OVERRULE THE OBJECTION.  THE FOUNDATION HAS

02:31PM   14    BEEN LAID.  I THINK THERE WAS A PREVIOUS 407 OBJECTION THAT WAS

02:31PM   15    MADE, AND THAT IS OVERRULED NOW BY THE TESTIMONY OF THE

02:31PM   16    WITNESS.  THE OBJECTION IS OVERRULED.

02:31PM   17       (GOVERNMENT'S EXHIBIT 4943, PAGES 1 AND 9, WAS RECEIVED IN

02:31PM   18    EVIDENCE.)

02:31PM   19            MR. LEACH:  THANK YOU, YOUR HONOR.  MAY WE DISPLAY,

02:31PM   20    YOUR HONOR?

02:31PM   21            THE COURT:  YES.

02:31PM   22    BY MR. LEACH:

02:31PM   23    Q.   JUST TO ORIENT THE JURY, DR. DAS, I WAS REFERENCING -- YOU

02:31PM   24    BELIEVE THIS WAS A DOCUMENT THAT WAS SUBMITTED TO CMS?

02:31PM   25    A.   YES, I BELIEVE SO.

DAS DIRECT BY MR. LEACH                                        5828

02:31PM  1    Q.   OKAY.  AND WE WERE TALKING ABOUT THE THIRD ROW.  TAB 3

02:31PM  2    THERE'S SOME REFERENCE TO TPS 3.5 EDISONS AND SOME CERTAIN

02:31PM  3    FINDINGS IN THE 2567.

02:31PM  4         AND DO YOU SEE THAT?

02:31PM  5    A.   YES, I DO.

02:31PM  6    Q.   OKAY.  AND IF WE CAN PLEASE DISPLAY PAGE 9.  AND LET'S

02:32PM  7    HIGHLIGHT THE FIRST HALF OR BLOW UP, ENLARGE THE FIRST TOP HALF

02:32PM  8    OF THE DOCUMENT RIGHT THERE ALL OF THE WAY DOWN TO PATIENT

02:32PM  9    IMPACT.

02:32PM  10        THAT'S FINE, MS. HOLLIMAN.  THANK YOU.

02:32PM  11        IS THIS SOMETHING THAT YOU HAD A HAND IN DRAFTING,

02:32PM  12   DR. DAS?

02:32PM  13   A.   I DON'T REMEMBER THE SPECIFIC DOCUMENT, BUT IT DOES LOOK

02:32PM  14   FAMILIAR.

02:32PM  15   Q.   OKAY.  YOU RECALL WORKING ON PATIENT IMPACT ASSESSMENT IN

02:32PM  16   RESPONSE TO 2567?

02:32PM  17   A.   YES, INDEED.

02:32PM  18   Q.   AND WAS THAT SOMETHING THAT YOU FELT YOU HAD TO DO AS THE

02:32PM  19   LAB DIRECTOR?

02:32PM  20   A.   THAT'S CORRECT.

02:32PM  21   Q.   OKAY.  UP AT THE TOP THERE'S A LIST OF DEFICIENCIES AND

02:32PM  22   THERE'S SOME D TAGS, D5403, D5481, D5791, D6102, AND D6115.

02:32PM  23        DO YOU SEE THOSE?

02:32PM  24   A.   I DO.

02:32PM  25   Q.   AND WHAT ARE THOSE?

DAS DIRECT BY MR. LEACH                                                   5829

02:32PM   1    A.    THOSE APPEAR TO BE THE SPECIFIC D TAGS REFERENCED IN THIS

02:33PM   2    PATIENT IMPACT ASSESSMENT.

02:33PM   3    Q.    AND THOSE D TAGS ORIGINATE FROM THE 2567?

02:33PM   4    A.    THAT'S CORRECT.

02:33PM   5    Q.    AND EARLIER WE WERE LOOKING AT A D TAG FOR 2571, FINDING

02:33PM   6    NUMBER 3?

02:33PM   7    A.    I BELIEVE WE WERE.

02:33PM   8    Q.    AND SO DO YOU BELIEVE THAT THIS PATIENT IMPACT ASSESSMENT

02:33PM   9    RELATES TO THE PORTION OF THE CMS REPORT THAT WE JUST LOOKED

02:33PM  10    AT?

02:33PM  11    A.    I EXPECT SO.

02:33PM  12    Q.    OKAY.  THIS SAYS, "THE LABORATORY AGREES THAT ITS

02:33PM  13    DESCRIPTION OF PRIOR ANALYSIS WERE LACKING SUFFICIENT DETAIL TO

02:33PM  14    EXPLAIN THE CONCLUSIONS SUBMITTED IN THE RESPONSE."

02:33PM  15        IS THAT A REFERENCE TO PRIOR RESPONSES THAT THERANOS HAD

02:33PM  16    MADE TO CMS?

02:33PM  17    A.    I BELIEVE SO.

02:33PM  18    Q.    IT THEN READS, "UPON A REVIEW OF THAT RESPONSE, INCLUDING

02:33PM  19    THE ENTIRETY OF THE PRIOR ANALYSIS OF TPS 3.5 QC DATA AND

02:33PM  20    PATIENT TEST RESULT DISTRIBUTIONS FOR ALL ANALYTES DURING THE

02:34PM  21    TIME PERIOD EXAMINED, THE LABORATORY MADE NOTE OF POOR QC

02:34PM  22    PERFORMANCE THROUGHOUT."

02:34PM  23        IS THAT AN ACCURATE STATEMENT?

02:34PM  24    A.    THAT IS AN ACCURATE STATEMENT.

02:34PM  25    Q.    AND THE PATIENT TEST RESULT DISTRIBUTIONS THAT YOU'RE

DAS DIRECT BY MR. LEACH                                              5830

02:34PM  1    TALKING ABOUT THERE, DID THAT REFER TO ALL TESTS RUN ON THE

02:34PM  2    EDISON DEVICE?

02:34PM  3    A.   YES, ALL TESTS.

02:34PM  4    Q.   OKAY.  AND DO YOU HAVE A MEMORY OF HOW MANY TESTS WERE RUN

02:34PM  5    ON THE EDISON DEVICE?

02:34PM  6    A.   I BELIEVE IT WAS A TOTAL OF 12.

02:34PM  7    Q.   OKAY.  TWELVE TESTS RUN ON THE EDISON DEVICE THROUGHOUT

02:34PM  8    THE LIFE OF THE CLIA LAB?

02:34PM  9    A.   THAT IS MY UNDERSTANDING.

02:34PM  10   Q.   IT THEN SAYS, "THEREFORE, LABORATORY CONDUCTED AN EXPANDED

02:34PM  11   RETROSPECTIVE ANALYSIS FOR 2014 AND 2015 QC DATA."

02:34PM  12        WHAT DOES THAT MEAN?

02:34PM  13   A.   IN GENERAL THAT MEANS WE EXPAND THE RANGE OF THE QC DATA

02:34PM  14   THAT WE LOOKED AT BECAUSE WE IDENTIFIED ISSUES WITH THE

02:34PM  15   ORIGINAL DATA, MEANING WE WANTED TO SEE HOW FAR THE POOR

02:35PM  16   PERFORMANCE EXTENDED.

02:35PM  17   Q.   YOU WANTED TO LOOK AT A BROADER UNIVERSE?

02:35PM  18   A.   YES, THAT'S ONE WAY TO DESCRIBE IT.

02:35PM  19   Q.   OKAY.  AND THAT'S WHAT YOU'RE REPORTING TO CMS?

02:35PM  20   A.   YES, THAT'S CORRECT.

02:35PM  21   Q.   OKAY.  AFTER EXTENSIVE DIALOGUE WITH MS. HOLMES?

02:35PM  22   A.   I DON'T KNOW HOW TO DESCRIBE.

02:35PM  23   Q.   HOW ABOUT AFTER SOME DIALOGUE WITH MS. HOLMES?

02:35PM  24   A.   YES, SOME DIALOGUE.

02:35PM  25   Q.   IT THEN SAYS, "THE LABORATORY NOTED MULTIPLE AND RECURRENT

DAS DIRECT BY MR. LEACH                                              5831

02:35PM   1    TIME PERIODS (ACROSS ALL ANALYTES TESTED) OF ABRUPT SHIFTS IN

02:35PM   2    QC TARGET MEANS."

02:35PM   3         WHAT DOES THAT MEAN?

02:35PM   4    A.   PLEASE GIVE A MINUTE TO REVIEW THAT.

02:35PM   5         (PAUSE IN PROCEEDINGS.)

02:35PM   6              THE WITNESS:  SO THAT FIRST PART MEANS THAT THE

02:35PM   7    AVERAGE VALUES OF QUALITY CONTROL, THE TARGETS THAT WE WERE

02:36PM   8    TRYING TO REACH, OR THAT THE LABORATORY WAS TARGETING, WERE

02:36PM   9    BEING SHIFTED UNEXPLAINEDLY.

02:36PM   10   BY MR. LEACH:

02:36PM   11   Q.   "HIGH RATES OF 1-2S QC RULE FAILURES."

02:36PM   12        WHAT IS MEANT BY "1-2S"?

02:36PM   13   A.   SO THIS 1-2S ACTUALLY REFERS TO THE SAME QC RULE FAILURES

02:36PM   14   THAT THE CMS INSPECTORS WERE NOTING IN THAT D TAG.  I BELIEVE

02:36PM   15   IT WAS 5791, I BELIEVE.  SO THEY CALL IT A --

02:36PM   16   Q.   AND THE 1-2S, THAT'S STANDARD DEVIATIONS?

02:36PM   17   A.   YES.  SO THE 2S REFERS TO 2 SD ANALOGOUS TO WHAT IS BEING

02:36PM   18   REFERRED TO IN THE D TAG.

02:36PM   19   Q.   AND "QC CV'S FAR EXCEEDING LIMITS FOR A STABLE TESTING

02:36PM   20   PROCESS."

02:36PM   21        WHAT DID THAT MEAN?

02:36PM   22   A.   TO SIMPLIFY THAT ONE A BIT, IT JUST MEANS THAT THERE WAS A

02:37PM   23   LOT OF IMPRECISION NOTED.

02:37PM   24   Q.   AND IS IMPRECISION DESIRABLE OR UNDESIRABLE?

02:37PM   25   A.   UNDESIRABLE.

DAS DIRECT BY MR. LEACH                                          5832

02:37PM   1    Q.   LET'S ZOOM OUT, MS. HOLLIMAN, AND LOOK AT THE NEXT TWO

02:37PM   2    PARAGRAPHS IN THIS PATIENT IMPACT ASSESSMENT.

02:37PM   3         DO YOU SEE WHERE IT SAYS PATIENT IMPACT, DR. DAS?

02:37PM   4    A.   YES, I DO.

02:37PM   5    Q.   AND THIS READS, "ALTHOUGH THE MAGNITUDE OF QC DEVIATIONS

02:37PM   6    FROM TARGET MEANS DOES NOT NECESSARILY REFLECT THE EXACT NATURE

02:37PM   7    AND MAGNITUDE OF BIAS ON PATIENT RESULTS BECAUSE OF DIFFERENCES

02:37PM   8    IN MATRICES, THE QC FAILURES IDENTIFIED BY THIS COMPREHENSIVE

02:37PM   9    RETROSPECTIVE ANALYSIS REFLECT A GLOBAL AND LONG-TERM FAILURE

02:37PM   10   OF THE QUALITY CONTROL PROGRAM FOR THIS INSTRUMENT, AS WELL AS

02:37PM   11   FAILURES OF RELATED QUALITY ASSURANCE PROCEDURES THAT SHOULD

02:37PM   12   HAVE ALERTED THE LABORATORY TO CORRECT SUCH AN UNSTABLE

02:37PM   13   PROCESS."

02:37PM   14        WHY DID YOU INCLUDE THIS IN THE PATIENT IMPACT PORTION OF

02:38PM   15   THIS?

02:38PM   16   A.   FIRST OF ALL, THAT'S QUITE A MOUTHFUL.

02:38PM   17   Q.   YES.

02:38PM   18   A.   THIS WAS JUST TO DESCRIBE OUR FINDINGS.

02:38PM   19   Q.   AND "THE LABORATORY HAS CONCLUDED THAT THERE IS A POSSIBLE

02:38PM   20   PATIENT IMPACT FOR EVERY TEST REPORTED FROM THE LABORATORY'S

02:38PM   21   TPS 3.5 INSTRUMENTS."

02:38PM   22        IS THAT WHAT YOU COMMUNICATED TO CMS?

02:38PM   23   A.   YES, I BELIEVE SO.

02:38PM   24   Q.   AND WAS THAT YOUR VIEW AT THE TIME?

02:38PM   25   A.   YES, IT WAS.

DAS DIRECT BY MR. LEACH                                                    5833

02:38PM   1    Q.   IN CORRECTIVE ACTION IT READS, "THE FRACTION OF PATIENT

02:38PM   2    RESULTS TRULY IMPACTED, AND THE NATURE AND MAGNITUDE OF ANY

02:38PM   3    EFFECT ARE UNKNOWN.  OUT OF AN ABUNDANCE OF CAUTION, THE

02:38PM   4    LABORATORY HAS VOIDED ALL PATIENT TEST RESULTS REPORTED FROM

02:38PM   5    THE TPS 3.5 INSTRUMENTS."

02:38PM   6         DO YOU SEE THAT?

02:38PM   7    A.   I DO SEE THAT.

02:38PM   8    Q.   OKAY.  AND DID YOU, IN FACT, VOID ALL OF THE TEST RESULTS

02:38PM   9    FROM THE EDISON DEVICE FROM THE 2014, 2015 TIME PERIOD?

02:39PM   10   A.   YES, WE DID SO.

02:39PM   11   Q.   OKAY.  AND THEN IT SAYS, "MANY CORRECTED REPORTS HAVE BEEN

02:39PM   12   TRANSMITTED AND THE REMAINDER ARE BEING TRANSMITTED.

02:39PM   13   TRANSMISSION WILL BE COMPLETE BY MARCH 31ST, 2016."

02:39PM   14        DO YOU SEE THAT LANGUAGE?

02:39PM   15   A.   YES, I DO.

02:39PM   16   Q.   DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT HOW TO

02:39PM   17   COMMUNICATE THE VOIDING OF THE TESTS TO CMS AND OTHER

02:39PM   18   CONSTITUENCIES?

02:39PM   19   A.   COULD YOU BE MORE SPECIFIC.

02:39PM   20   Q.   DID YOU HAVE CONVERSATIONS WITH MS. HOLMES ABOUT HOW TO

02:39PM   21   COMMUNICATE THERANOS'S VOIDING OF THE TESTS?

02:39PM   22   A.   YES, WE DID.

02:39PM   23   Q.   DESCRIBE THE SUBSTANCE OF WHAT WAS SAID?

02:39PM   24   A.   I DESCRIBED OUR RATIONALE FOR VOIDING THESE TESTS WHICH

02:39PM   25   RELIED ON SOME OF THE THINGS THAT WE DISCUSSED EARLIER, WHICH

DAS DIRECT BY MR. LEACH                                              5834

02:39PM   1    WAS THE VALIDATION DATA AS WELL AS THE QC DATA THAT IS

02:39PM   2    REFERENCED HERE, AS WELL AS THE PATIENT TEST RESULTS THAT WERE

02:40PM   3    REFERENCED HERE, AND IT WAS -- I CAN'T REMEMBER ALL OF THE

02:40PM   4    CONSTITUENTS AT THAT MEETING, BUT I TRIED TO PRESENT IT IN A

02:40PM   5    MORE UNDERSTANDABLE FORMAT.

02:40PM   6        SO I DESCRIBED THE ISSUE IN TERMS OF THE VALIDATION DATA

02:40PM   7    IN DESCRIBING THAT THESE INSTRUMENTS APPARENTLY WERE NOT

02:40PM   8    PERFORMING FROM THE VERY BEGINNING.

02:40PM   9    Q.   AND DID MS. HOLMES MAKE ANY STATEMENTS TO YOU ABOUT

02:40PM  10    WHETHER WHAT YOU JUST SAID SHOULD BE COMMUNICATED TO CMS OR

02:40PM  11    WHETHER SOMETHING ELSE SHOULD BE COMMUNICATED?

02:40PM  12    A.   YES.  I RECALL HER OFFERING AN ALTERNATIVE EXPLANATION.

02:40PM  13    Q.   TELL US ABOUT THAT, PLEASE.

02:40PM  14    A.   I DON'T REMEMBER THE EXACT WORDS, BUT SHE POINTED TO ONE

02:40PM  15    OF HER DEPUTIES AND PROVIDED AN ALTERNATIVE EXPLANATION, WHICH

02:40PM  16    WAS ALONG THE LINES OF IT NOT BEING AN INSTRUMENT FAILURE

02:40PM  17    PER SE BUT RATHER THE, QUOTE, "A FAILURE OF THE QUALITY CONTROL

02:40PM  18    AND QUALITY ASSURANCE PROGRAM AROUND IT."

02:41PM  19    Q.   AND DID YOU THINK IT WAS A COMPLETE EXPLANATION TO

02:41PM  20    DESCRIBE IT AS JUST A QUALITY CONTROL ISSUE?

02:41PM  21    A.   NO, SIR.

02:41PM  22    Q.   HOW COME?

02:41PM  23    A.   BECAUSE THE VALIDATION DATA HAD NO BEARING ON THE QUALITY

02:41PM  24    CONTROL OR QUALITY ASSURANCE PROGRAM.

02:41PM  25    Q.   AFTER THE TESTS WERE VOIDED, DR. DAS, DID THERANOS EVER

DAS DIRECT BY MR. LEACH                                                    5835

| | | |
|---|---|---|
| 02:41PM | 1 | RESUME TESTING ON THE 3.5 DEVICE IN THE CLIA? |
| 02:41PM | 2 | THE COURT:  I'M SORRY. |
| 02:41PM | 3 | THE WITNESS:  COULD YOU REPEAT THE QUESTION, PLEASE. |
| 02:41PM | 4 | BY MR. LEACH: |
| 02:41PM | 5 | Q.   AFTER THE VOIDING OF THE TESTS AT SOME POINT IN MARCH OR |
| 02:41PM | 6 | APRIL OF 2016, DID THERANOS EVER RESUME TESTING ON THE 3.5 IN |
| 02:41PM | 7 | THE CLIA LAB? |
| 02:41PM | 8 | A.   NO, NOT TO MY KNOWLEDGE. |
| 02:41PM | 9 | Q.   OKAY.  DID YOU EVER RECOMMEND THAT TESTING BE RESUMED IN |
| 02:41PM | 10 | THE CLIA LAB? |
| 02:41PM | 11 | A.   NO. |
| 02:41PM | 12 | Q.   AND WHY WAS THAT? |
| 02:41PM | 13 | A.   I FOUND THESE INSTRUMENTS TO BE UNSUITABLE FOR CLINICAL |
| 02:41PM | 14 | USE. |
| 02:42PM | 15 | MR. LEACH:  YOUR HONOR, I NOTE THE TIME.  THERE'S |
| 02:42PM | 16 | SOME ADDITIONAL PORTIONS OF THE CMS REPORT THAT I WANT TO GO |
| 02:42PM | 17 | THROUGH, BUT I THINK I MAY BENEFIT FROM A BREAK TO WORK THROUGH |
| 02:42PM | 18 | SOME OF THE REDACTIONS, AND THEN I THINK I'LL TENDER THE |
| 02:42PM | 19 | WITNESS. |
| 02:42PM | 20 | THE COURT:  ALL RIGHT.  LET'S TAKE A BREAK NOW. |
| 02:42PM | 21 | SHOULD WE TAKE 30 MINUTES?  IS 30 MINUTES GOOD?  LET'S DO THAT. |
| 02:42PM | 22 | WE'LL TAKE A 30 MINUTE BREAK, LADIES AND GENTLEMEN, AND THEN |
| 02:42PM | 23 | WE'LL FINISH OUR DAY.  THANK YOU. |
| 02:42PM | 24 | YOU CAN STAND DOWN, SIR, AND COME BACK IN ABOUT |
| 02:42PM | 25 | 30 MINUTES. |

DAS DIRECT BY MR. LEACH                                           5836

02:42PM   1                    THE WITNESS:  THANK YOU, YOUR HONOR.

02:42PM   2                    THE COURT:  YOU'RE WELCOME.

02:42PM   3              (JURY OUT AT 2:42 P.M.)

02:43PM   4                    THE COURT:  PLEASE BE SEATED.  THANK YOU.

02:43PM   5         DR. DAS, YOU CAN STAND DOWN IF YOU WOULD LIKE.

02:43PM   6                    THE WITNESS:  THANK YOU.

02:43PM   7                    THE CLERK:  YOU CAN GO OUTSIDE OF THE COURTROOM

02:43PM   8         PROBABLY.

02:43PM   9                    THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT

02:43PM  10         THAT OUR JURY HAS LEFT FOR OUR BREAK, AND THE WITNESS HAS LEFT

02:43PM  11         THE COURTROOM.

02:43PM  12            MR. LEACH, YOU WANT A BREAK TO DO SOME REDACTIONS I THINK

02:43PM  13         YOU SAID?

02:43PM  14                    MR. LEACH:  YES, YOUR HONOR.  I THINK THERE ARE TWO

02:43PM  15         MORE PORTIONS OF THE REPORT THAT I'D LIKE TO ADMIT THROUGH THIS

02:43PM  16         WITNESS ON THE BASIS THAT WE DISCUSSED EARLIER.  I'D LIKE TO

02:43PM  17         WORK THROUGH THE REDACTIONS AND THEN I WILL BE COMPLETE.

02:43PM  18                    THE COURT:  ALL RIGHT.  TO THE EXTENT THAT YOU FEEL

02:43PM  19         COMFORTABLE, MAYBE YOU CAN SHARE THE REDACTIONS WITH

02:44PM  20         MR. WADE --

02:44PM  21                    MR. LEACH:  YES.

02:44PM  22                    THE COURT:  -- SO WE CAN TAKE CARE OF ANY OBJECTIONS

02:44PM  23         OR ANYTHING IF WE CAN, IF THAT'S POSSIBLE.

02:44PM  24            OKAY.  THANK YOU.

02:44PM  25                    MR. LEACH:  THANK YOU.

DAS DIRECT BY MR. LEACH

02:44PM  1            MR. WADE:  YOUR HONOR, IF I MIGHT BRIEFLY?

02:44PM  2        I DID JUST WANT TO RAISE AND REITERATE, THE POINT THAT WE

02:44PM  3    RAISED BEFORE ABOUT THE AIDING AND ABETTING LIABILITY AND WHICH

02:44PM  4    IS NOWHERE AT ISSUE IN THIS CASE, AND WE RAISED IT AND

02:44PM  5    SPECIFICALLY RAISED THE IDEA OF FOCUSSING ON THAT ISSUE.

02:44PM  6        IT'S MY UNDERSTANDING FROM THE COLLOQUY THIS MORNING THAT

02:44PM  7    MR. LEACH WAS NOT GOING TO SPECIFICALLY FOCUS ON THAT.

02:44PM  8        INSTEAD, IN THE EXAMINATION HE DID EXACTLY THAT.  HE WENT

02:44PM  9    EXACTLY TO THAT PROVISION.  HE FOCUSSED ON THAT PROVISION,

02:44PM 10    WHICH IS NOT AT ISSUE, BUT CREATES THE IMPLICATION WITH THIS

02:44PM 11    JURY THAT IT IS AT ISSUE.

02:44PM 12        AND SO WE WOULD ASK THAT THE CURATIVE INSTRUCTION -- THAT

02:44PM 13    THE INSTRUCTION THAT WE PROVIDE BE SUBMITTED AND AN INSTRUCTION

02:44PM 14    BE GIVEN THAT THAT PROVISION IS NOT RELEVANT TO THIS MATTER.

02:45PM 15        I UNDERSTAND THAT WE HAVE EXTENSIVELY QUESTIONED WITNESSES

02:45PM 16    ON REGULATORY RESPONSIBILITIES.  ALL OF THOSE REGULATORY

02:45PM 17    RESPONSIBILITIES ARE RELEVANT TO THE ACTIONS IN THE CASE.

02:45PM 18        FOCUSSING ON THAT PROVISION AND CREATING THE IMPRESSION

02:45PM 19    THAT THERE IS SOME LIABILITY ON THE PART OF THE OWNER FOR

02:45PM 20    AIDING AND ABETTING A CLIA VIOLATION WHEN THAT IS NOT AN ISSUE

02:45PM 21    IN THIS CASE IS INCREDIBLY PREJUDICIAL.  SO WE --

02:45PM 22            THE COURT:  I APPRECIATE THAT, AND WE DID DISCUSS

02:45PM 23    THIS.  THIS DOCUMENT WAS PUT IN EVIDENCE, I THINK BY THE

02:45PM 24    DEFENSE, AND AS I INDICATED, IT'S FAIR GAME TO EXAMINE ON WHAT

02:45PM 25    IT IS.

DAS DIRECT BY MR. LEACH                                           5838

02:45PM  1      I THINK WHAT WE TALKED ABOUT THIS MORNING WAS THE

02:45PM  2  GOVERNMENT WOULD NOT BE PERMITTED TO ARGUE TO THE JURY IN ANY

02:45PM  3  WAY THAT THIS IS AN AIDING AND ABETTING CASE BASED ON A

02:45PM  4  REGULATORY SCHEME.

02:45PM  5      MR. LEACH?

02:45PM  6          MR. LEACH:  THAT IS CORRECT, YOUR HONOR, AND I DID

02:45PM  7  NOT ARGUE THAT.  I DREW ATTENTION TO THE PROVISION.  BUT I IN

02:46PM  8  NO WAY SUGGESTED THAT MS. HOLMES AIDED AND ABETTED A CLIA

02:46PM  9  VIOLATION.

02:46PM 10      I WAS BRINGING SOMETHING TO THE JURY'S ATTENTION THAT IS

02:46PM 11  IN EVIDENCE THAT IS A POSSIBLE CONSEQUENCE AFFECTING OWNERS AND

02:46PM 12  OPERATORS OF ALL LABORATORIES, AND I DON'T THINK THERE WAS

02:46PM 13  ANYTHING INAPPROPRIATE WITH THE GOVERNMENT'S EXAMINATION ON

02:46PM 14  THAT POINT.

02:46PM 15          THE COURT:  I THINK THAT -- AND I UNDERSTAND YOUR

02:46PM 16  CONCERN, THE DEFENSE CONCERN ABOUT THAT.

02:46PM 17      MY SENSE IS I WILL -- AND YOU'LL DRAFT IF YOU HAVEN'T

02:46PM 18  ALREADY.  YOU SUBMITTED SOMETHING, BUT I DON'T THINK THAT'S

02:46PM 19  APPROPRIATE TO GIVE THAT NOW.  I THINK IT'S APPROPRIATE TO GIVE

02:46PM 20  IT WITH FINAL INSTRUCTIONS.

02:46PM 21      I THINK IF I GIVE AN INSTRUCTION NOW, IT WILL ONLY

02:46PM 22  HIGHLIGHT IT.

02:46PM 23          MR. WADE:  I'M OKAY WITH HIGHLIGHTING THIS ISSUE,

02:46PM 24  YOUR HONOR, BECAUSE I THINK IT CREATES -- THE IMPRESSION IS

02:46PM 25  RIPE IN THE AIR.

DAS DIRECT BY MR. LEACH                                                5839

| | | |
|---|---|---|
| 02:46PM | 1 | I UNDERSTAND THERE'S EVIDENCE IN THE CASE, BUT THERE'S |
| 02:46PM | 2 | QUESTIONING OVER OBJECTION ABOUT A PROVISION THAT IS NOT |
| 02:46PM | 3 | RELEVANT IN THE CASE AND FOCUSSING -- THERE'S NO EVIDENTIARY |
| 02:46PM | 4 | VALUE IN DOING THAT, AND THERE'S A HIGH DEGREE OF PREJUDICE. |
| 02:47PM | 5 | SO WE WOULD AGAIN REQUEST THAT THE INSTRUCTION BE GIVEN. |
| 02:47PM | 6 | WE THINK IT'S BEEN PUT BEFORE THE JURY IN A WAY THAT WAS |
| 02:47PM | 7 | INCONSISTENT WITH WHAT COUNSEL HAD REPRESENTED WOULD BE DONE, |
| 02:47PM | 8 | AND WE THINK IT'S INCREDIBLY PREJUDICIAL.  SO WE THINK THE ONLY |
| 02:47PM | 9 | REMEDY FOR US AT THIS POINT IS TO GIVE THE INSTRUCTION NOW TO |
| 02:47PM | 10 | MAKE SURE WE AVOID THAT CONFUSION. |
| 02:47PM | 11 | THE COURT:  WELL, THANK YOU FOR THAT. |
| 02:47PM | 12 | I DID -- PART OF OUR COLLOQUY THIS MORNING WAS THAT I |
| 02:47PM | 13 | RECOGNIZED THE CROSS-EXAMINATION OF THE TWO PREVIOUS LAB |
| 02:47PM | 14 | DIRECTORS AND THERE WAS EXTENSIVE AND MULTIPLE QUESTIONS POSED |
| 02:47PM | 15 | TO THOSE DIRECTORS REGARDING YOU'RE RESPONSIBLE, YOU'RE |
| 02:47PM | 16 | RESPONSIBLE. |
| 02:47PM | 17 | AND THAT'S APPROPRIATE QUESTIONS.  AND I THINK IT'S |
| 02:47PM | 18 | LEGALLY CORRECT, THEY WERE RESPONSIBLE. |
| 02:47PM | 19 | AS I OBSERVED, SHOWING WHAT WAS ALREADY IN EVIDENCE AND |
| 02:47PM | 20 | TALKING ABOUT THAT MIGHT EQUATE TO A BALANCING OF, WELL, THERE |
| 02:47PM | 21 | ARE OTHER REGULATIONS ABOUT THAT. |
| 02:47PM | 22 | BUT I AGREE WITH YOU, AND I THINK MR. LEACH AGREES WITH |
| 02:48PM | 23 | YOU AND ME, THAT THIS IS NOT GOING TO BE ARGUED AT ALL AS ANY |
| 02:48PM | 24 | EVIDENCE FOR CONVICTION IN THIS CASE. |
| 02:48PM | 25 | I DON'T THINK THAT -- AS I SAY, I DON'T THINK A JURY |

DAS DIRECT BY MR. LEACH                                             5840

02:48PM   1     INSTRUCTION RIGHT NOW WILL IN ANY WAY ASSUAGE THE CONCERNS THAT

02:48PM   2     YOU HAVE, BUT I THINK IT WOULD CAUSE MORE DAMAGE TO DRAW

02:48PM   3     ATTENTION TO THAT.  THAT'S JUST MY OPINION NOW.  I JUST THINK

02:48PM   4     THAT DRAWING ATTENTION TO IT NOW WILL PERHAPS CAUSE THEM TO

02:48PM   5     THINK ABOUT IT IN AN UNTOWARD MANNER.

02:48PM   6          MR. LEACH, DO YOU WANT TO BE HEARD ON THIS?

02:48PM   7            MR. LEACH:  I DO BRIEFLY, YOUR HONOR.

02:48PM   8          I DON'T MEAN TO PROLONG THIS, BUT THE FACT THAT OWNERS AND

02:48PM   9     OPERATORS FACE REVOCATION OF THEIR CLIA CERTIFICATION IF AN

02:48PM   10    EMPLOYEE OR ANYBODY WITHIN THE LAB VIOLATES OR AIDS AND ABETS A

02:48PM   11    CLIA VIOLATION IS A MOTIVE TO MAINTAIN A GOOD LAB, AND ALSO

02:49PM   12    REALLY SCARY IF YOU'RE BEING TOLD THAT YOU'RE NOT MAINTAINING A

02:49PM   13    GOOD LAB.

02:49PM   14          SO IT'S THE EXISTENCE OF THE REGULATION THAT IS RELEVANT.

02:49PM   15          AND IT'S ALSO RELEVANT TO CONFRONT THE FALSE SUGGESTION

02:49PM   16    THAT -- AND I DON'T CAST ASPERSION ON MY COLLEAGUE WITH THAT,

02:49PM   17    BUT THERE IS AN IMPRESSION, THROUGH THE EXAMINATION OF

02:49PM   18    DR. ROSENDORFF, THAT ONLY THE LAB DIRECTOR HAS ANY

02:49PM   19    RESPONSIBILITY.

02:49PM   20          SO WE ARE NOT ARGUING THAT MS. HOLMES AIDED AND ABETTED A

02:49PM   21    VIOLATION.

02:49PM   22          BUT WE ARE SAYING THAT THIS REGULATION EXISTS AND IT'S

02:49PM   23    SOMETHING THAT OWNERS AND OPERATORS IN GENERAL ARE AFFECTED AND

02:49PM   24    MOTIVATED BY, AND I THINK THAT'S FAIR.

02:49PM   25            THE COURT:  I THINK THE WAY IT WAS PRESENTED,

DAS DIRECT BY MR. LEACH                                                5841

02:49PM  1    MR. WADE, WAS THAT THE LABORATORY COULD LOSE THEIR LICENSE, AND

02:49PM  2    THAT'S SOMETHING THAT COULD HAPPEN.

02:49PM  3         IT, IT DIDN'T TALK ABOUT CRIMINAL LIABILITY.  IT'S NOT A

02:49PM  4    CRIMINAL STATUTE.  IT'S A CIVIL STATUTE THAT HAS OTHER

02:49PM  5    RAMIFICATIONS, AND I CONTINUE TO BE COGNIZANT OF THE FACT THAT

02:50PM  6    EVIDENCE OF A VIOLATION OF A CIVIL STATUTE CANNOT AND WILL NOT

02:50PM  7    BE PERMITTED TO BE ARGUED FOR A CONVICTION OF A CRIMINAL

02:50PM  8    STATUTE.  THAT'S INAPPROPRIATE, AND WE ALL KNOW THAT.

02:50PM  9         THE STATUTE THAT WAS READ TALKS ABOUT LICENSE, THE LOSS OF

02:50PM  10   A LICENSE, AND THAT -- I THINK THAT'S A DIFFERENT, A DIFFERENT

02:50PM  11   FACTOR.

02:50PM  12        MR. WADE:  NO.  TO BE SURE, IT IS, YOUR HONOR.  MY

02:50PM  13   ONLY POINT IS THAT THERE'S ABSOLUTELY NO EVIDENCE OR ALLEGATION

02:50PM  14   IN THIS CASE THAT MY CLIENT AIDED AND ABETTED A CLIA VIOLATION.

02:50PM  15        SO BY PUTTING THAT UP THERE, THEY'RE CREATING THE

02:50PM  16   IMPRESSION THAT MY CLIENT DID.  THAT'S WHY I SOUGHT TO PREVENT

02:50PM  17   THE ADMISSION OF IT.

02:50PM  18        IT'S DIFFERENT FROM QUESTIONS TO A LABORATORY DIRECTOR

02:50PM  19   ABOUT DO YOU HAVE THIS RESPONSIBILITY AND DO YOU HAVE THAT

02:50PM  20   RESPONSIBILITY WITHIN THE LAB?  DO THE REGULATIONS SAY YOU HAVE

02:50PM  21   ULTIMATE RESPONSIBILITY?

02:50PM  22        BY THE WAY, THE ANSWER TO ALMOST ALL OF THOSE QUESTIONS

02:50PM  23   WAS YES, AND IT WAS RELEVANT BECAUSE THOSE ARE THE ONES WHO ARE

02:50PM  24   DISPATCHING THE OBLIGATIONS WITHIN THE LABORATORY.

02:51PM  25        OUR -- MY CLIENT DOESN'T HAVE THE SAME RESPONSIBILITY.  IF

DAS DIRECT BY MR. LEACH                                              5842

02:51PM  1    ANYTHING, SHE'S EFFECTIVELY STRICTLY LIABLE WITHIN THE

02:51PM  2    REGULATORY SCHEME FOR THE ACTIONS OF OTHERS.

02:51PM  3        SO THEY'RE NOT REALLY ANALOGOUS IN THE SENSE THAT SHE

02:51PM  4    DOESN'T HAVE THAT -- HER RESPONSIBILITY IS TO HIRE A LAB

02:51PM  5    DIRECTOR -- OR THE COMPANY'S RESPONSIBILITY IS TO HIRE A LAB

02:51PM  6    DIRECTOR, AND THEN IT'S THE LAB DIRECTOR'S RESPONSIBILITY TO

02:51PM  7    DISPENSE THOSE OBLIGATIONS.

02:51PM  8        SO I THINK IT'S A FALSE COMPARISON.  AND TO CREATE THE

02:51PM  9    IMPRESSION WITH THIS JURY THAT THERE'S SOME AIDING AND ABETTING

02:51PM 10    I THINK IS INCREDIBLY PREJUDICIAL.

02:51PM 11        THE COURT:  I UNDERSTAND THAT.

02:51PM 12        AND I RECALL ONE OF THE LAST QUESTIONS THAT YOU ASKED

02:51PM 13    DR. ROSENDORFF WAS ABOUT HIS ISSUES SUBSEQUENT TO EMPLOYMENT AT

02:51PM 14    THE COMPANY AND THE FACT THAT HE WAS -- POTENTIALLY ONE OF THE

02:51PM 15    RAMIFICATIONS OF THAT CONDUCT COULD BE THE LOSS OF A LICENSE.

02:51PM 16    I THINK THAT'S WHAT YOU ASKED HIM AT THE LAST PART, RIGHT.

02:52PM 17        AND SO --

02:52PM 18        MR. WADE:  THAT WENT TO BIAS, YOUR HONOR.

02:52PM 19        THE COURT:  RIGHT.  RIGHT.

02:52PM 20        BUT THE LOSS OF A LICENSE IS A BIG THING FOR A LAB

02:52PM 21    DIRECTOR.  I THINK WE CAN ALL AGREE WITH THAT.  THIS IS THE

02:52PM 22    REGULATION, ONE OF THE REGULATIONS THAT POINTS TO THAT.

02:52PM 23        BUT I TAKE YOUR POINT.  I DON'T THINK IT'S NECESSARY TO

02:52PM 24    GIVE THE INSTRUCTION NOW.

02:52PM 25        MY SENSE IS THAT WE STILL HAVE A LOT OF EVIDENCE TO GO.  I

02:52PM  1    KNOW THE JURY IS TAKING NOTES.  THEY'RE BEING ATTENTIVE OF

02:52PM  2    THIS.

02:52PM  3        BUT THIS IS NOT GOING TO BE ARGUED IN ANY WAY, BE

02:52PM  4    PERMITTED TO BE ARGUED WHY THE GOVERNMENT FEELS IN THEIR

02:52PM  5    CLOSING ARGUMENT THAT THE JURY SHOULD REACH A CONVICTION AT

02:52PM  6    ALL.

02:52PM  7        AND IF YOU WANT TO PREPARE AN INSTRUCTION FOR FINAL

02:52PM  8    INSTRUCTIONS, I'LL LOOK AT IT.

02:52PM  9        I INTEND TO GIVE ONE THAT IS PROPHYLACTIC TO THAT EXTENT,

02:52PM  10   MR. LEACH.  AND YOUR TEAM CAN PUT SOMETHING TOGETHER, TOO, IF

02:52PM  11   YOU WOULD LIKE, BUT THERE WILL BE AN INSTRUCTION THAT TALKS

02:52PM  12   ABOUT THIS, ASSUMING YOU WANT IT TO BE GIVEN AT THAT POINT.

02:52PM  13       SO WE'LL TALK ABOUT IT THEN.

02:53PM  14           MR. WADE:  OKAY.  THANK YOU, YOUR HONOR.

02:53PM  15           MR. LEACH:  THANK YOU, YOUR HONOR.

02:53PM  16           THE COURT:  ALL RIGHT.  THANK YOU.

02:53PM  17       (RECESS FROM 2:53 P.M. UNTIL 3:22 P.M.)

03:22PM  18       (JURY IN AT 3:22 P.M.)

03:22PM  19           THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

03:22PM  20   ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

03:22PM  21   MS. HOLMES IS PRESENT.

03:22PM  22       DR. DAS IS ON THE STAND.

03:22PM  23       MR. LEACH?

03:22PM  24           MR. LEACH:  THANK YOU, YOUR HONOR.

03:22PM  25   Q.  GOOD AFTERNOON, DR. DAS.

DAS DIRECT BY MR. LEACH                                              5844

03:22PM   1        I'D LIKE TO GO BACK TO EXHIBIT 4621, AND I THINK WE'RE NOW

03:22PM   2   PREPARED TO DISPLAY THE PORTIONS OF 51, 52, 53, AND 54 THAT

03:22PM   3   WERE ADMITTED BUT WE WERE UNABLE TO REDACT IN THE MOMENT.

03:23PM   4        THE COURT:  OH MY GOSH.  DOES IT HAVE TO WARM UP?

03:23PM   5        MR. LEACH:  IT WAS TIRED.

03:23PM   6        THE COURT:  I'LL SPARE COMMENT.  IT HAS TO WARM UP,

03:23PM   7   DOES IT?

03:23PM   8        AH.  THERE WE GO.

03:23PM   9        MR. LEACH:  I BELIEVE WE'RE ONLY SHOWING THE BOTTOM

03:23PM  10   PORTION, THE D TAG 5791 AT THE BOTTOM OF THE PAGE.

03:24PM  11        THE COURT:  AND COULD YOU IDENTIFY JUST FOR THE

03:24PM  12   RECORD THIS PAGE, PLEASE, MR. LEACH?

03:24PM  13        MR. LEACH:  I WILL, YOUR HONOR.  YES, YOUR HONOR.

03:24PM  14     WE'RE LOOKING AT PAGE 51 OF EXHIBIT 4621.  DOWN AT THE

03:24PM  15   BOTTOM OF THE PAGE TO THE LEFT THERE'S AN I.D. PREFIX TAG

03:24PM  16   D5791.

03:24PM  17   Q.   DO YOU SEE THAT, DR. DAS?

03:24PM  18   A.   I DO.

03:24PM  19   Q.   AND JUST TO ORIENT US, TO THE RIGHT IS THERE A CODE

03:24PM  20   SECTION WITHIN CLIA?

03:24PM  21   A.   YES.

03:24PM  22   Q.   THAT'S 493.1289.  THAT'S ONE OF THE REGULATIONS RELATING

03:24PM  23   TO OPERATION OF THE CLIA LAB?

03:24PM  24   A.   YES.

03:24PM  25   Q.   AND THEN BENEATH THAT IN PARAGRAPH A IT SAYS, "THE

DAS DIRECT BY MR. LEACH

03:24PM 1      LABORATORY MUST ESTABLISH AND FOLLOW WRITTEN POLICIES AND

03:24PM 2      PROCEDURES FOR AN ONGOING MECHANISM TO MONITOR, ASSESS, AND

03:25PM 3      WHEN INDICATED, CORRECT PROBLEMS IDENTIFIED IN THE ANALYTIC

03:25PM 4      SYSTEMS SPECIFIED."

03:25PM 5          DO YOU SEE THAT LANGUAGE?

03:25PM 6      A.   YES.

03:25PM 7      Q.   AND IS THAT ESSENTIALLY SPELLING OUT THE CLIA REQUIREMENT?

03:25PM 8      A.   YES.

03:25PM 9      Q.   OKAY.  AND IF WE CAN GO TO PAGE 52, MS. HOLLIMAN, I THINK

03:25PM 10     ONLY THE TOP PORTION GOING -- THERE WE GO.

03:25PM 11         IF WE COULD HIGHLIGHT THE TOP PORTION OF THIS PAGE.

03:25PM 12         DR. DAS, DO YOU SEE THE REGULATORY REQUIREMENT CONTINUES

03:25PM 13     IN COLUMN 2 BENEATH THE WORDS "CONTINUED FROM PAGE 47"?

03:25PM 14     A.   YES.

03:25PM 15     Q.   IS THAT HOW YOU READ THIS DOCUMENT?

03:25PM 16     A.   YES.

03:25PM 17     Q.   AND THEN IT SAYS, "THIS STANDARD IS NOT MET AS EVIDENCED

03:26PM 18     BY."

03:26PM 19         DO YOU SEE THAT LANGUAGE?

03:26PM 20     A.   YES.

03:26PM 21     Q.   AND IS STANDARD A TERM OF ART IN THE CLIA REGULATIONS?

03:26PM 22     A.   YES.

03:26PM 23     Q.   AND HOW DOES A STANDARD COMPARE TO A CONDITION?

03:26PM 24     A.   I BELIEVE IT IS LESS SEVERE.

03:26PM 25     Q.   THEN DOES THE FORMAT OF THE 2567 LAY OUT PARTICULAR

5846
DAS DIRECT BY MR. LEACH

03:26PM  1    FINDINGS BY CMS AS TO HOW, IN CMS'S VIEW, THAT STANDARD WAS NOT

03:26PM  2    MET?

03:26PM  3    A.  YES.

03:26PM  4    Q.  AND THAT'S WHAT YOU'RE TRYING TO RESPOND TO IN THE COURSE

03:26PM  5    OF YOUR WORK?

03:26PM  6    A.  YES.

03:26PM  7    Q.  IF WE CAN GO TO PAGE 53, DO YOU SEE THE FINDING AT THE

03:26PM  8    BOTTOM, "BASED ON REVIEW OF QUALITY CONTROL DATA AND MONTHLY QC

03:27PM  9    REPORTS, THE LABORATORY FAILED TO HAVE A QUALITY ASSESSMENT

03:27PM 10    PROCEDURE TO IDENTIFY AND CORRECT PROBLEMS WITH QC VALUES FOR

03:27PM 11    THE THERANOS PROPRIETARY SYSTEM (TPS) WHEN PRECISION DID NOT

03:27PM 12    MEET THE LABORATORY'S REQUIREMENT FOR PRECISION."

03:27PM 13        DO YOU SEE THAT?

03:27PM 14    A.  YES.

03:27PM 15    Q.  AND IS PRECISION A TERM THAT YOU'RE FAMILIAR WITH IN YOUR

03:27PM 16    WORK AS THE LAB DIRECTOR?

03:27PM 17    A.  YES.

03:27PM 18    Q.  AND WHAT IS PRECISION?

03:27PM 19    A.  IT'S A MEASURE OF THE SPREAD OF DATA.

03:27PM 20    Q.  AND IN THE COURSE OF RESPONDING TO THE 2567, DID YOU

03:27PM 21    REVIEW A BROAD RANGE OF PRECISION DATA?

03:27PM 22    A.  YES.

03:27PM 23    Q.  LET'S GO TO PAGE 54, AND IF WE COULD ZOOM IN,

03:27PM 24    MS. HOLLIMAN, ON THE TAGS DOWN TO D.

03:28PM 25        DO YOU SEE IN B, DR. DAS, WHERE IT SAYS, "QC RESULTS WERE

UNITED STATES COURT REPORTERS

ER-9471

DAS DIRECT BY MR. LEACH                                                5847

| | | |
|---|---|---|
| 03:28PM | 1 | REVIEWED FROM JUNE 2014 THROUGH NOVEMBER 2014 AND JANUARY |
| 03:28PM | 2 | THROUGH FEBRUARY 2015 FOR VITAMIN B12, VITAMIN D, AND SEX |
| 03:28PM | 3 | HORMONE BINDING GLOBULIN WHICH WERE USED FOR PATIENT TESTING ON |
| 03:28PM | 4 | THE TPS DEVICES." |
| 03:28PM | 5 | DO YOU SEE THAT LANGUAGE? |
| 03:28PM | 6 | A.   YES. |
| 03:28PM | 7 | Q.   AND IS THIS ALSO DATA THAT YOU REVIEWED IN THE COURSE OF |
| 03:28PM | 8 | YOUR WORK? |
| 03:28PM | 9 | A.   YES. |
| 03:28PM | 10 | Q.   IN C IT SAYS, "VITAMIN B12 QC LEVEL 1 AND LEVEL 3 ON |
| 03:28PM | 11 | DEVICE E 110 REVEALED THE FOLLOWING PERCENT CV:   34.3 PERCENT |
| 03:28PM | 12 | AND 48.5 PERCENT RESPECTIVELY FROM JANUARY 5TH, '15 THROUGH |
| 03:29PM | 13 | 1-30-15." |
| 03:29PM | 14 | DO YOU SEE THAT LANGUAGE? |
| 03:29PM | 15 | A.   YES. |
| 03:29PM | 16 | Q.   AND THE DEVICE E 110, DID YOU UNDERSTAND THAT TO REFER TO |
| 03:29PM | 17 | A PARTICULAR EDISON DEVICE WITHIN THE LAB?  DID YOU UNDERSTAND |
| 03:29PM | 18 | THAT TO REFER TO A DEVICE WITHIN THE LAB? |
| 03:29PM | 19 | A.   YES. |
| 03:29PM | 20 | Q.   AND THE QC LEVEL 1 AND LEVEL 3, WHAT DID YOU UNDERSTAND |
| 03:29PM | 21 | THOSE TO REFER TO? |
| 03:29PM | 22 | A.   THOSE ARE DIFFERENT LEVELS OF THE RESPECTIVE TEST QC, IN |
| 03:29PM | 23 | THIS CASE VITAMIN B12. |
| 03:29PM | 24 | Q.   AND CAN YOU -- AND WHAT IS THE PURPOSE OF DIFFERENT |
| 03:29PM | 25 | LEVELS? |

DAS DIRECT BY MR. LEACH                                                5848

03:29PM  1    A.    A LABORATORY IS REQUIRED TO RUN MULTIPLE LEVELS FOR EVERY

03:29PM  2    QUANTITATIVE TEST, SO --

03:29PM  3    Q.    SO A HIGH LEVEL, A LOW LEVEL, SOMETHING IN BETWEEN?

03:29PM  4    A.    CORRECT.

03:29PM  5    Q.    OKAY.  AND THIS SAYS THE QC LEVEL 1 AND 3 WERE 34.3 AND

03:29PM  6    48.5 PERCENT.

03:29PM  7          WHAT WAS -- WHAT DID YOU UNDERSTAND THAT TO MEAN?

03:30PM  8    A.    IT APPEARS THEY'RE REFERENCING THOSE PARTICULAR LEVELS FOR

03:30PM  9    THOSE QC.

03:30PM 10    Q.    AND ARE THESE DESIRABLE LEVELS OF QC OR UNDESIRABLE LEVELS

03:30PM 11    OF QC?

03:30PM 12    A.    THOSE WOULD BE UNDESIRABLE.

03:30PM 13    Q.    AND IS THIS SOMETHING THAT YOU LOOKED INTO AS THE

03:30PM 14    LABORATORY DIRECTOR?

03:30PM 15    A.    YES.

03:30PM 16    Q.    AND IF WE COULD ZOOM IN.

03:30PM 17          IN D THERE'S SOME REFERENCE TO VITAMIN B12, QC1, AND QC3

03:30PM 18    ON DEVICE E 1085.

03:30PM 19          IS THIS SIMILAR INFORMATION RELATING TO A DIFFERENT EDISON

03:30PM 20    DEVICE THAT WAS BEING USED IN THE CLIA LAB?

03:30PM 21    A.    YES.

03:30PM 22    Q.    AND IS THAT SOMETHING THAT YOU INVESTIGATED?

03:30PM 23    A.    YES.

03:30PM 24    Q.    IF WE CAN ZOOM OUT, MS. HOLLIMAN, AND LOOK AT E THROUGH L,

03:30PM 25    OR E THROUGH LITTLE I.

DAS DIRECT BY MR. LEACH                                           5849

03:31PM   1          DR. DAS, DID YOU UNDERSTAND THESE TO BE ADDITIONAL

03:31PM   2    EXAMPLES OF HIGH CV IN QC TESTING ON DEVICES WITHIN THE CLIA

03:31PM   3    LAB?

03:31PM   4    A.   YES.

03:31PM   5    Q.   AND SIMILAR TO WHAT WE LOOKED AT BEFORE, ARE THESE ISSUES

03:31PM   6    THAT YOU INVESTIGATED AS PART OF YOUR WORK?

03:31PM   7    A.   YES.

03:31PM   8    Q.   AND AT ANY POINT IN TIME, DID YOU DISAGREE WITH WHAT CMS

03:31PM   9    WAS FINDING HERE?

03:31PM  10    A.   NO.

03:31PM  11    Q.   LET ME DRAW YOUR ATTENTION TO --

03:31PM  12          YOU CAN TAKE THAT DOWN, MS. HOLLIMAN.

03:31PM  13          LET ME DRAW YOUR ATTENTION, PLEASE, TO PAGE 40 OF

03:31PM  14    EXHIBIT 4621.

03:32PM  15          DO YOU HAVE THAT IN FRONT OF YOU, SIR?

03:32PM  16    A.   I DO.

03:32PM  17    Q.   OKAY.  AND DO YOU SEE A D TAG, D5481?

03:32PM  18    A.   YES.

03:32PM  19    Q.   AND DOES THIS D TAG RELATE TO CONTROL PROCEDURES?

03:32PM  20    A.   YES.

03:32PM  21    Q.   INCLUDING CONTROL PROCEDURES FOR EDISON DEVICES AND ASSAY

03:32PM  22    PT INR?

03:32PM  23    A.   YES.

03:32PM  24          MR. LEACH:  YOUR HONOR, I OFFER -- AND I'VE PROVIDED

03:32PM  25    THESE REDACTIONS TO MR. WADE, BUT AT THIS POINT I'M OFFERING

DAS DIRECT BY MR. LEACH                                               5850

| | | |
|---|---|---|
| 03:32PM | 1 | EVERYTHING ON PAGE 40 FROM THE D TAG 5481 DOWN THROUGH PAGE 47, |
| 03:33PM | 2 | WITH A REDACTION ON PAGE 45 BEGINNING WITH PARAGRAPH 1 IN THE |
| 03:33PM | 3 | SECOND COLUMN FROM THE LEFT, AND WITH ANOTHER REDACTION ON |
| 03:33PM | 4 | PAGE 46 WITH THE PARAGRAPH FOR B. |
| 03:33PM | 5 | AND I'VE PROVIDED THESE TO THE DEFENSE. |
| 03:33PM | 6 | MR. WADE:  YOUR HONOR, I'M NOT SURE THE FOUNDATION |
| 03:33PM | 7 | HAS BEEN LAID WITH RESPECT TO THESE. |
| 03:33PM | 8 | THE COURT:  CAN YOU LAY A FOUNDATION, MR. LEACH? |
| 03:33PM | 9 | MR. LEACH:  YES. |
| 03:33PM | 10 | THE COURT:  EXCUSE ME.  IS THAT YOUR -- OTHER THAN |
| 03:33PM | 11 | THAT, THAT'S YOUR ONLY OBJECTION, WHICH IS TO SAY THAT YOU |
| 03:33PM | 12 | AGREE WITH THE REDACTIONS? |
| 03:33PM | 13 | MR. WADE:  I UNDERSTAND THE REDACTIONS.  I MAY HAVE |
| 03:33PM | 14 | AN OBJECTION. |
| 03:33PM | 15 | BUT I'M JUST TRYING TO UNDERSTAND THE FOUNDATION AND THE |
| 03:34PM | 16 | PURPOSE FOR WHICH THEY'RE OFFERED. |
| 03:34PM | 17 | THE COURT:  THANK YOU. |
| 03:34PM | 18 | MR. LEACH:  I'LL LAY MORE FOUNDATION, YOUR HONOR. |
| 03:34PM | 19 | Q.   DR. DAS, IF YOU COULD JUST LOOK BRIEFLY AT PARAGRAPH 1 ON |
| 03:34PM | 20 | PAGE 40, IS THERE A REFERENCE TO QC FOR AN ASSAY CALLED PT INR? |
| 03:34PM | 21 | A.   YES. |
| 03:34PM | 22 | Q.   AND WAS PT INR ONE OF THE TESTS THAT THERANOS VOIDED? |
| 03:34PM | 23 | A.   YES. |
| 03:34PM | 24 | Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE |
| 03:34PM | 25 | PT INR ASSAY AND HOW IT WAS RUN AT THERANOS? |

DAS DIRECT BY MR. LEACH                                                   5851

03:34PM   1    A.   YES.

03:34PM   2    Q.   IF I DRAW YOUR ATTENTION TO PAGE 41, DO YOU SEE TOWARDS

03:34PM   3    THE BOTTOM IN PARAGRAPH 2 THERE BEGINS A DISCUSSION RELATING TO

03:35PM   4    QC AND VARIOUS ASSAYS ON THE EDISON DEVICE?

03:35PM   5    A.   YES.

03:35PM   6    Q.   AND DOES THAT CONTINUE TO PAGE 45?

03:35PM   7    A.   YES.

03:35PM   8    Q.   AND DID YOU DISCUSS WITH MS. HOLMES QC ISSUES RELATED TO

03:35PM   9    THE EDISON DEVICE DURING THE TIME PERIOD BEFORE YOU BECAME THE

03:35PM  10    LAB DIRECTOR?

03:35PM  11    A.   YES.

03:35PM  12    Q.   AND DID THERANOS ULTIMATELY VOID ALL OF THE TESTS ON THE

03:35PM  13    EDISON DEVICE?

03:35PM  14    A.   YES.

03:35PM  15    Q.   AND IF YOU CONTINUE ON PAGE 45, THERE'S A D TAG, D575

03:35PM  16    COMPARISON OF TEST RESULTS.

03:36PM  17         DO YOU SEE THAT?

03:36PM  18    A.   MR. LEACH, DO YOU MEAN D5775?

03:36PM  19    Q.   I DO.  THANK YOU.

03:36PM  20         AND DO YOU SEE THAT DISCUSSION CONTINUES ON TO PAGE 46 AND

03:36PM  21    47 WITH PARTICULAR REFERENCE TO THE EDISON DEVICE?

03:36PM  22    A.   YES.

03:36PM  23    Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT STUDIES

03:36PM  24    THAT THERANOS HAD PREPARED RELATING TO THE EDISON DEVICE?

03:36PM  25    A.   YES.

DAS DIRECT BY MR. LEACH                                              5852

03:36PM  1            MR. LEACH:  YOUR HONOR, I OFFER THESE PAGES AS I'VE

03:36PM  2    DESCRIBED AS EVIDENCE OF STATE OF MIND.

03:36PM  3            MR. WADE:  SAME OBJECTIONS AS PREVIOUSLY NOTED.

03:36PM  4        AND I TAKE IT STATE OF MIND AS OF THIS TIME PERIOD.

03:36PM  5            THE COURT:  YES.

03:36PM  6            MR. WADE:  YEAH.

03:36PM  7            THE COURT:  IS THAT RIGHT, MR. LEACH?

03:36PM  8            MR. LEACH:  YES.

03:36PM  9            THE COURT:  ALL RIGHT.  THANK YOU.  THE OBJECTION IS

03:36PM 10    OVERRULED.

03:37PM 11        LADIES AND GENTLEMEN, THESE WILL BE ADMITTED NOT FOR THE

03:37PM 12    TRUTH OF THE MATTER ASSERTED IN THE DOCUMENTS, BUT RATHER TO

03:37PM 13    SHOW EVIDENCE OF THE STATE OF MIND AS TO INTENT, KNOWLEDGE.

03:37PM 14        IS THAT CORRECT, MR. LEACH, INTENT AND KNOWLEDGE --

03:37PM 15            MR. LEACH:  YES, YOUR HONOR.

03:37PM 16            THE COURT:  -- AS TO MS. HOLMES.  IT'S OFFERED FOR

03:37PM 17    THAT PURPOSE ONLY.

03:37PM 18        (GOVERNMENT'S EXHIBIT 4621, AS REDACTED, WAS RECEIVED IN

03:37PM 19    EVIDENCE.)

03:37PM 20    BY MR. LEACH:

03:37PM 21    Q.  AND MS. HOLLIMAN, IF WE CAN NOW PLEASE DISPLAY PAGE 40 AS

03:37PM 22    REDACTED.

03:37PM 23        DR. DAS, DO YOU SEE IN THE LEFT THERE'S THE NUMBER D5481?

03:37PM 24    A.  YES.

03:37PM 25    Q.  IS THAT A REFERENCE TO THE D TAG FOR THIS IDENTIFIED

DAS DIRECT BY MR. LEACH                                              5853

03:38PM  1    DEFICIENCY?

03:38PM  2    A.   YES.

03:38PM  3    Q.   OKAY.  AND IS THERE A RESTATEMENT OF THE REGULATORY

03:38PM  4    PROVISION IN THE COLUMN TO THE RIGHT BRIEFLY IN F AND G?

03:38PM  5    A.   YES.

03:38PM  6    Q.   OKAY.  AND THEN IT SAYS, "THIS STANDARD IS NOT MET AS

03:38PM  7    EVIDENCED BY."

03:38PM  8        DO YOU SEE THAT LANGUAGE?

03:38PM  9    A.   YES.

03:38PM  10   Q.   AND THEN DOES CMS LIST THE PARTICULAR FINDINGS AND

03:38PM  11   EVIDENCE THAT RELATE TO THIS PARTICULAR STANDARD?

03:38PM  12   A.   YES.

03:38PM  13   Q.   OKAY.  AND THIS RELATES TO QC FOR SOMETHING CALLED PT INR.

03:38PM  14        WHAT IS PT INR?

03:38PM  15   A.   IT IS A BLOOD CLOTTING TEST.

03:38PM  16   Q.   AND DID -- IN RESPONSE TO THE 2567, DID YOU ULTIMATELY

03:38PM  17   DETERMINE TO -- THAT THERE WERE ERRORS IN THE PT INR TEST?

03:38PM  18   A.   YES.

03:38PM  19   Q.   AND DESCRIBE THOSE FOR US, PLEASE.

03:39PM  20   A.   YES.  THERE WERE ACTUALLY A VARIETY OF FINDINGS.  ONE OF

03:39PM  21   THEM WAS ERRORS IN THE CALCULATION OF THE VALUES THAT HAS TO DO

03:39PM  22   WITH EACH LOT THAT IS USED FOR THIS ASSAY ON THE SIEMENS

03:39PM  23   INSTRUMENT.

03:39PM  24        THERE WERE ALSO DEVIATIONS IN THE PATIENT TEST RESULT

03:39PM  25   DISTRIBUTIONS, AS WELL AS QUALITY CONTROL ISSUES.

DAS DIRECT BY MR. LEACH                                                5854

03:39PM   1        Q.   AND DID --

03:39PM   2               MR. WADE:  YOUR HONOR, PARDON ME.  JUST MOVE TO

03:39PM   3    STRIKE ON 702 GROUNDS.

03:39PM   4               THE COURT:  I'M GOING TO SUSTAIN THE OBJECTION.

03:39PM   5        AND THAT LAST PORTION IS STRICKEN, LADIES AND GENTLEMEN.

03:39PM   6    BY MR. LEACH:

03:39PM   7        Q.   DID YOU -- IN COMMUNICATING TO CMS, DID YOU DESCRIBE THE

03:39PM   8    BASES -- DID YOU TELL CMS THAT THERANOS WAS VOIDING PT INR

03:39PM   9    TESTS?

03:39PM  10        A.   YES.

03:39PM  11        Q.   AND DID YOU EXPLAIN TO THEM WHY THERANOS WAS DOING THAT?

03:39PM  12        A.   YES.

03:39PM  13        Q.   WHAT DID YOU TELL CMS?

03:40PM  14        A.   I DO NOT RECALL THE EXACT LANGUAGE, BUT IT REFLECTED THE

03:40PM  15    INACCURATE CALCULATIONS, AS WELL AS QUALITY CONTROL ISSUES AND

03:40PM  16    INACCURACIES REFLECTED IN THE PATIENT TEST RESULT

03:40PM  17    DISTRIBUTIONS.

03:40PM  18        Q.   LET'S GO FURTHER IN TIME IN THIS DOCUMENT TO PAGE 41.  IF

03:40PM  19    WE CAN HIGHLIGHT D THROUGH H -- OR ACTUALLY D THROUGH I.  I'M

03:40PM  20    SORRY, MS. HOLLIMAN.

03:40PM  21        DO YOU SEE, DR. DAS, IN D WHERE IT SAYS, "ON

03:40PM  22    SEPTEMBER 7TH, 2015, CITROL 3 WAS RUN SEVEN TIMES WITHOUT

03:41PM  23    OBTAINING AN ACCEPTABLE QC VALUE"?

03:41PM  24        A.   YES.

03:41PM  25        Q.   AND FURTHER DOWN IN I, IT SAYS, "81 PATIENTS WERE REPORTED

                    DAS DIRECT BY MR. LEACH                        5855

03:41PM   1    FROM APRIL 1ST, 2015 THROUGH 9/16/15."

03:41PM   2         DO YOU SEE THAT LANGUAGE?

03:41PM   3    A.   YES.

03:41PM   4    Q.   AND WHAT WAS THE THRUST OF THE DEFICIENCY AS YOU

03:41PM   5    UNDERSTOOD IT THAT WAS BEING BROUGHT TO YOUR ATTENTION?

03:41PM   6    A.   WHAT IS BEING REFERENCED HERE IS THAT PATIENT RESULTS WERE

03:41PM   7    RECORDED WHEN QUALITY CONTROLS WERE NOT RECORDED.

03:41PM   8    Q.   AND EXPLAIN WHY THAT'S, EXPLAIN WHY THAT'S AN ISSUE.

03:41PM   9    A.   QUALITY CONTROL MUST BE RUN DAILY WHEN PATIENT TEST

03:41PM  10    RESULTS ARE BEING RUN ON ANY ASSAY.

03:41PM  11    Q.   SO IF YOU RUN QUALITY CONTROL AND YOU FAIL QUALITY CONTROL

03:41PM  12    FOR WHATEVER REASON, YOU SHOULDN'T BE REPORTING A TEST?

03:41PM  13    A.   THAT'S RIGHT.

03:41PM  14    Q.   AND IS THIS LISTING EXAMPLES OF WHERE IT APPEARED THAT

03:41PM  15    THERANOS WAS RUNNING TESTS AFTER NOT PASSING QUALITY CONTROL?

03:41PM  16    A.   YES.

03:41PM  17         MR. WADE:  YOUR HONOR, MOVE TO STRIKE.  IT'S BEYOND

03:42PM  18    THE SCOPE OF WHAT THE EVIDENCE IS OFFERED FOR.

03:42PM  19         THE COURT:  YOU CAN ASK THAT IN A DIFFERENT WAY.

03:42PM  20    I'LL SUSTAIN THE OBJECTION AND STRIKE THAT ANSWER.

03:42PM  21    BY MR. LEACH:

03:42PM  22    Q.   AS PART OF YOUR WORK, DR. DAS, DID YOU INVESTIGATE WHETHER

03:42PM  23    THERE WERE INSTANCES WHERE THERANOS REPORTED PATIENT RESULTS

03:42PM  24    AFTER NOT PASSING QUALITY CONTROL?

03:42PM  25    A.   YES.

DAS DIRECT BY MR. LEACH                                                5856

03:42PM   1    Q.   AND DID YOU FIND EXAMPLES OF THAT RELATING TO PT INR?

03:42PM   2    A.   YES.

03:42PM   3              MR. WADE:  702, YOUR HONOR.

03:42PM   4              THE COURT:  OVERRULED.

03:42PM   5    BY MR. LEACH:

03:42PM   6    Q.   YOU FOUND EXAMPLES OF THAT?

03:42PM   7    A.   YES.

03:42PM   8    Q.   DID YOU ALSO -- LOOKING DOWN AT PARAGRAPH 2, DO YOU SEE

03:42PM   9    THAT THE FINDING HERE IS BASED ON A REVIEW OF THE QUALITY

03:42PM  10    CONTROL PROCEDURE, QC RECORDS, AND RAW DATA FROM PATIENT TEST

03:43PM  11    RUNS AND INTERVIEW WITH THE GENERAL SUPERVISOR, THE LABORATORY

03:43PM  12    FAILED TO ENSURE THAT THE QC WAS ACCEPTABLE FOR THE TPS SYSTEM,

03:43PM  13    OR THERANOS PROPRIETARY SYSTEM, PRIOR TO REPORTING PATIENT TEST

03:43PM  14    RESULTS.

03:43PM  15         DO YOU SEE THAT?

03:43PM  16    A.   YES.

03:43PM  17    Q.   IN YOUR MIND, WAS THIS RAISING A SIMILAR ISSUE WITH THE

03:43PM  18    EDISONS THAT WAS RAISED WITH RESPECT TO PT INR?

03:43PM  19    A.   YES.

03:43PM  20              MR. WADE:  702, YOUR HONOR.

03:43PM  21              THE COURT:  OVERRULED.

03:43PM  22    BY MR. LEACH:

03:43PM  23    Q.   AND DID YOU INVESTIGATE WHETHER THERE WERE INSTANCES WHERE

03:43PM  24    THERANOS REPORTED PATIENT RESULTS FROM THE EDISON DEVICE AFTER

03:43PM  25    FAILING QUALITY CONTROL?

DAS DIRECT BY MR. LEACH                                                5857

03:43PM   1      A.   YES.

03:43PM   2      Q.   AND DID YOU FIND INSTANCES OF THAT?

03:43PM   3      A.   YES.

03:43PM   4      Q.   MORE THAN ONE?

03:43PM   5      A.   YES.

03:43PM   6      Q.   AND WAS THAT AN ISSUE?

03:43PM   7      A.   YES.

03:43PM   8      Q.   WHY IS THAT?

03:43PM   9      A.   FOR THE REASONS I DELINEATED EARLIER.  IT'S REQUIRED TO DO

03:43PM  10      QUALITY CONTROL ON EVERY DAY THAT PATIENT TEST RESULTS ARE RUN.

03:44PM  11      Q.   LET ME GO, PLEASE, TO PAGE -- LET ME GO TO PAGE 42, AND I

03:44PM  12      WANT TO DRAW YOUR ATTENTION TO PARAGRAPHS D THROUGH G.

03:44PM  13           DO YOU SEE WHERE IT SAYS IN D, "QC RECORDS FOR SEX HORMONE

03:44PM  14      BINDING GLOBULIN, SHOWED THAT ON DEVICE E 1025, QC LEVEL 2'S,

03:44PM  15      24 EXPIRATION WAS ON 8/14/14 AT 18:54 AND WAS NOT RUN AGAIN

03:44PM  16      UNTIL 8/15/14.  PATIENT DATA SHOWED THAT PATIENT SESSION," AND

03:45PM  17      THERE'S A NUMBER, "WAS RUN ON 8/14/14 AT 19:09."

03:45PM  18           DO YOU SEE THAT LANGUAGE?

03:45PM  19      A.   YES.

03:45PM  20      Q.   AND IN YOUR MIND, DID YOU UNDERSTAND THIS -- WAS THIS CMS

03:45PM  21      RAISING THE ISSUE OF THERANOS REPORTING PATIENT RESULTS FOR

03:45PM  22      THIS PARTICULAR ASSAY AFTER FAILING QUALITY CONTROL?

03:45PM  23      A.   YES.

03:45PM  24      Q.   AND THAT'S AN ISSUE THAT YOU INVESTIGATED AS WELL?

03:45PM  25      A.   YES.

DAS DIRECT BY MR. LEACH                                                    5858

03:45PM  1      Q.   AND YOU FOUND INSTANCES WHERE THAT HAPPENED?

03:45PM  2      A.   YES.

03:45PM  3      Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO PAGE 43.  AND I

03:45PM  4      WANT TO DRAW YOUR ATTENTION TO THE FINDING L AT THE BOTTOM.

03:45PM  5           DO YOU SEE WHERE IT SAYS, "QC RECORDS FOR VITAMIN B12

03:45PM  6      SHOWED THAT ON DEVICE E 37, QC1 HAD A '10X WARNING' MESSAGE"?

03:46PM  7      A.   YES.

03:46PM  8      Q.   AND WHAT IS A 10X WARNING MESSAGE?

03:46PM  9      A.   THAT IS REFERRING TO A QUALITY CONTROL FAILURE WHERE THE

03:46PM 10      QUALITY CONTROL RESULTS LIE ON ONE SIDE OF THE MEAN EITHER

03:46PM 11      ABOVE OR BELOW TEN TIMES CONSECUTIVELY.

03:46PM 12      Q.   AND IN THE COURSE OF YOUR WORK, DID YOU SEE INSTANCES

03:46PM 13      WHERE THERANOS CONTINUED TO REPORT PATIENT RESULTS AFTER THIS

03:46PM 14      10X WARNING HAD COME UP?

03:46PM 15      A.   YES.

03:46PM 16      Q.   PLEASE LOOK AT THE NEXT PAGE, PAGE 44.

03:46PM 17           AND IF I COULD FOCUS ON THE SECOND HALF BEGINNING WITH THE

03:46PM 18      FINDING AT O THROUGH Q.

03:46PM 19           DO YOU SEE, DR. DAS, WHERE IT SAYS, "LEVEY-JENNINGS CHARTS

03:47PM 20      REVEALED THAT SHBG DEVICE E 26 QC1 HAD 13 CONSECUTIVE DAYS AND

03:47PM 21      QC2 HAD 15 CONSECUTIVE DAYS THAT THE RESULTS WERE AT LEAST TWO

03:47PM 22      STANDARD DEVIATIONS BELOW THE MEAN FROM SEPTEMBER 30TH, 2014,

03:47PM 23      THROUGH 10/29/14."

03:47PM 24           DO YOU SEE THAT LANGUAGE?

03:47PM 25      A.   YES.

DAS DIRECT BY MR. LEACH                                          5859

03:47PM   1    Q.   DID YOU ALSO REVIEW LEVEY-JENNINGS CHARTS IN THE COURSE OF

03:47PM   2    YOUR WORK IN INVESTIGATING THE 2567?

03:47PM   3    A.   YES.

03:47PM   4    Q.   AND IT'S BEEN A WHILE SINCE WE'VE HEARD THAT TERM, BUT

03:47PM   5    WHAT IS A LEVEY-JENNINGS CHART?

03:47PM   6    A.   IT'S ALSO KNOWN AS A CONTROL CHART.  IT'S JUST A WAY TO

03:47PM   7    CHART QUALITY CONTROL VALUES OVER TIME WITH RESPECT TO THE

03:47PM   8    EXPECTED MEAN AND STANDARD DEVIATIONS.

03:47PM   9    Q.   AND AT ANY POINT IN TIME DID YOU COMMUNICATE TO CMS THAT

03:47PM  10    YOU DISAGREED WITH THIS FINDING?

03:47PM  11    A.   NO.

03:47PM  12    Q.   THAT WOULD BE TRUE OF THE FINDINGS IN P AND Q RELATED TO

03:48PM  13    THE LEVY-JENNINGS CHARTS?

03:48PM  14    A.   YES.

03:48PM  15    Q.   WE TALKED A LITTLE BIT ABOUT --

03:48PM  16         THANK YOU, MS. HOLLIMAN.  WE CAN TAKE THAT DOWN.

03:48PM  17         DURING THE COURSE OF YOUR WORK, DID YOU BECOME FAMILIAR

03:48PM  18    WITH THE ARIZONA LAB, THE MODERATE COMPLEXITY ARIZONA LAB?

03:48PM  19    A.   YES.

03:48PM  20    Q.   AND AS A RESULT OF YOUR WORK, THE TESTING THAT WAS DONE IN

03:48PM  21    THE ARIZONA LAB WAS NOT DONE ON ANY THERANOS DEVICES; IS THAT

03:48PM  22    CORRECT?

03:48PM  23    A.   YES.

03:48PM  24    Q.   AND IT WAS NOT DONE ON ANY MODIFIED THIRD PARTY DEVICES?

03:49PM  25    A.   YES.

DAS DIRECT BY MR. LEACH                                    5860

03:49PM  1    Q.   AND DID YOU UNDERSTAND THAT THE VOLUME OF TESTING IN

03:49PM  2    ARIZONA EXCEEDED THE VOLUME OF TESTING IN CALIFORNIA?

03:49PM  3    A.   YES.

03:49PM  4    Q.   BY SOME ORDER OF MAGNITUDE?

03:49PM  5    A.   COULD YOU BE MORE SPECIFIC?

03:49PM  6    Q.   BY WHAT ORDER OF MAGNITUDE APPROXIMATELY?

03:49PM  7    A.   I'M NOT AWARE OF THAT NUMBER.

03:49PM  8    Q.   OKAY.  WE TALKED EARLIER ABOUT THE VOIDING OF THE TEST

03:49PM  9    RESULTS FROM THE EDISON 3.5.

03:49PM  10        WHAT MECHANICALLY DID YOU DO TO VOID THE RESULTS?

03:49PM  11   A.   COULD YOU SPECIFY "MECHANICALLY"?

03:49PM  12   Q.   DID THE COMPANY SEND SOMETHING TO PATIENTS?  WHAT DID IT

03:49PM  13   DO?

03:49PM  14   A.   AH, YES.  CORRECTIVE REPORTS WERE SENT, IN THIS CASE

03:49PM  15   VOIDED REPORTS.

03:49PM  16   Q.   AND DID THE CORRECTED REPORTS GIVE A PARTICULAR NUMBER OR

03:49PM  17   DID IT JUST SAY VOID?

03:49PM  18   A.   EXACTLY, VOID.

03:49PM  19   Q.   APPROXIMATELY HOW MANY EDISON TESTS WERE VOIDED?

03:50PM  20   A.   I DON'T KNOW THE EXACT NUMBER, BUT IT WAS APPROXIMATELY

03:50PM  21   50- TO 60,000.

03:50PM  22   Q.   AND THAT'S THE TOTAL UNIVERSE OF TESTS THAT WERE RUN ON

03:50PM  23   EDISON IN THE CLIA LAB?

03:50PM  24   A.   YES.

03:50PM  25   Q.   DID YOU EVER RESUME TESTING ON THE EDISON 3.5 IN THE CLIA

DAS CROSS BY MR. WADE                                                    5861

03:50PM   1    LAB?

03:50PM   2    A.   NO.

03:50PM   3    Q.   DID YOU EVER RESUME TESTING ON ANY OTHER THERANOS

03:50PM   4    MANUFACTURED DEVICE IN THE CLIA LAB?

03:50PM   5    A.   NO.

03:50PM   6             MR. LEACH:  MAY I HAVE A MOMENT, YOUR HONOR?

03:50PM   7             THE COURT:  YES.

03:50PM   8        (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.)

03:50PM   9             MR. LEACH:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

03:50PM  10        THANK YOU.  THANK YOU, DR. DAS.

03:50PM  11             THE COURT:  MR. WADE, DO YOU HAVE CROSS-EXAMINATION?

03:50PM  12             MR. WADE:  I DO, YOUR HONOR.

03:51PM  13        (PAUSE IN PROCEEDINGS.)

03:51PM  14                        **CROSS-EXAMINATION**

03:51PM  15    BY MR. WADE:

03:51PM  16    Q.   GOOD AFTERNOON, DR. DAS.

03:51PM  17    A.   GOOD AFTERNOON.

03:51PM  18    Q.   MY NAME IS LANCE WADE.  I REPRESENT ELIZABETH HOLMES, AND

03:52PM  19    I'LL ASK YOU A FEW QUESTIONS ON HER BEHALF HERE THIS AFTERNOON,

03:52PM  20    AND IT LOOKS LIKE PROBABLY GOING INTO TOMORROW AS WELL.

03:52PM  21        OKAY?

03:52PM  22    A.   YES.

03:52PM  23    Q.   OKAY.  I'D LIKE TO JUST START BY ORIENTING EVERYONE TO

03:52PM  24    SOME OF THE DATES HERE.

03:52PM  25             MR. LEACH ASKED YOU ABOUT THE CMS INSPECTION THAT WAS

DAS CROSS BY MR. WADE                                                    5862

03:52PM  1    REFLECTED IN THE REPORT THAT HE WAS SHOWING YOU.

03:52PM  2        DO YOU RECALL THAT?

03:52PM  3    A.  YES.

03:52PM  4    Q.  AND THAT INSPECTION OCCURRED, OR CONCLUDED, IN NOVEMBER OF

03:52PM  5    2015; CORRECT?

03:52PM  6    A.  YES.

03:52PM  7    Q.  AND YOU DIDN'T INTERACT WITH THE COMPANY UNTIL DECEMBER OF

03:52PM  8    2015; CORRECT?

03:52PM  9    A.  YES.

03:52PM  10   Q.  AND YOU ACCEPTED YOUR JOB IN MID-DECEMBER OF 2015?

03:52PM  11   A.  YES.

03:52PM  12   Q.  AND YOU STARTED ON A CONTRACT BASIS; CORRECT?

03:52PM  13   A.  YES.

03:52PM  14   Q.  AND THEN THE REPORT THAT MR. LEACH SHOWED YOU WAS ISSUED

03:53PM  15   TOWARDS THE END OF JANUARY; RIGHT?

03:53PM  16   A.  YES.

03:53PM  17   Q.  SO THERE WAS A PERIOD OF TIME BETWEEN WHEN YOU STARTED AND

03:53PM  18   WHEN YOU RECEIVED THE CMS REPORT; RIGHT?

03:53PM  19   A.  YES.

03:53PM  20   Q.  AND IN THAT PERIOD OF TIME BEFORE IT EVEN GOT THE CMS

03:53PM  21   REPORT, THERANOS WAS WORKING ON IMPROVING ITS LAB PRACTICES AND

03:53PM  22   STRENGTHENING ITS LAB PRACTICES, WAS IT NOT?

03:53PM  23   A.  YES.

03:53PM  24   Q.  AND, IN FACT, THERANOS HAD BROUGHT IN A LARGE TEAM OF

03:53PM  25   PEOPLE TO WORK ON THOSE EFFORTS, HAD IT NOT?

DAS CROSS BY MR. WADE                                                    5863

03:53PM   1    A.   COULD YOU SPECIFY "LARGE" PLEASE.

03:53PM   2    Q.   YOU RECALL -- I BELIEVE IN YOUR DIRECT TESTIMONY YOU SAID

03:53PM   3    THERE WAS A BIG GROUP OF PEOPLE WHO WERE WORKING ON THESE

03:53PM   4    ISSUES.

03:53PM   5         DO YOU RECALL THAT?

03:53PM   6    A.   YES.

03:53PM   7    Q.   AND THERE WERE ACTUALLY -- THERE ENDED UP BEING, I THINK,

03:53PM   8    THREE DIFFERENT LAB DIRECTORS WHO WERE DIRECTLY INVOLVED IN

03:53PM   9    IMPROVING THE LABORATORY AT THERANOS; RIGHT?

03:54PM  10    A.   YES.

03:54PM  11    Q.   THAT WAS DR. HELFEND; CORRECT?

03:54PM  12    A.   YES.

03:54PM  13    Q.   AND SHE WAS THERE INITIALLY?

03:54PM  14    A.   YES.

03:54PM  15    Q.   AND SHE WAS ACTUALLY THERE BEFORE YOU WERE EVEN HIRED;

03:54PM  16    RIGHT?

03:54PM  17    A.   YES.

03:54PM  18    Q.   AND BEFORE THE CMS REPORT WAS ISSUED?

03:54PM  19    A.   YES.

03:54PM  20    Q.   AND THEN YOU WERE HIRED BY MS. HOLMES; CORRECT?

03:54PM  21    A.   YES.

03:54PM  22    Q.   AND ONE OF THE THINGS THAT YOU WERE ASKED TO DO WAS TO GO

03:54PM  23    TO WORK ON IMPROVING THE LAB RIGHT AWAY; RIGHT?

03:54PM  24    A.   YES.

03:54PM  25    Q.   AND THEN IS IT DR. TSCHIRHART?

DAS CROSS BY MR. WADE                                                5864

03:54PM   1      A.   TSCHIRHART.

03:54PM   2      Q.   TSCHIRHART.  IS HE A DOCTOR?

03:54PM   3      A.   YES.

03:54PM   4      Q.   OKAY.  DR. TSCHIRHART WAS HIRED AS WELL; CORRECT?

03:54PM   5      A.   YES.

03:54PM   6      Q.   AND BOTH YOU AND DR. TSCHIRHART WERE HIRED BEFORE THE CMS

03:54PM   7      REPORT WAS ISSUED; RIGHT?

03:54PM   8      A.   YES.

03:54PM   9      Q.   BECAUSE THE COMPANY WANTED TO GO TO WORK TO STRENGTHEN ITS

03:54PM  10      LAB PRACTICES; RIGHT?

03:54PM  11      A.   YES.

03:54PM  12      Q.   AND YOU DID THAT ALMOST IMMEDIATELY; RIGHT?

03:54PM  13      A.   YES.

03:54PM  14      Q.   BEFORE THE CMS REPORT WAS ISSUED; RIGHT?

03:54PM  15      A.   YES.

03:54PM  16      Q.   OKAY.  AND IN ADDITION TO THAT, THE COMPANY HAD ALSO

03:55PM  17      RETAINED SOME LABORATORY CONSULTANTS TO WORK ON THOSE EFFORTS;

03:55PM  18      ISN'T THAT RIGHT?

03:55PM  19      A.   YES.

03:55PM  20      Q.   AND THESE WERE PEOPLE WHO HAD SOME PARTICULAR EXPERTISE IN

03:55PM  21      LAB PRACTICES; RIGHT?

03:55PM  22      A.   YES.

03:55PM  23      Q.   LIKE ARTHUR BACA?

03:55PM  24      A.   YES.

03:55PM  25      Q.   AND ARTHUR BACA HAD A LABORATORY CONSULTING FIRM; IS THAT

DAS CROSS BY MR. WADE                                                5865

03:55PM   1      RIGHT?

03:55PM   2      A.   YES.

03:55PM   3      Q.   AND HE WAS RETAINED EVEN BEFORE YOU WERE HIRED TO WORK ON

03:55PM   4      STRENGTHENING THE LAB PRACTICES; RIGHT?

03:55PM   5      A.   YES.

03:55PM   6      Q.   AND THERE WAS A FRANCIS YOUNG?

03:55PM   7      A.   YES.

03:55PM   8      Q.   DID SHE GO BY FRAN?  AM I UNDERSTANDING THAT?

03:55PM   9      A.   YES.

03:55PM   10     Q.   OKAY.  AND SHE ALSO HAD EXPERTISE IN LABORATORY PRACTICES?

03:55PM   11     A.   YES.

03:55PM   12     Q.   AND SHE WAS PART OF THE TEAM THAT WENT TO WORK ON

03:55PM   13     IMPROVING THE LAB PRACTICES?

03:55PM   14     A.   YES.

03:55PM   15     Q.   AND WAS SHE HIRED BEFORE YOU OR AFTER YOU?

03:56PM   16     A.   PRIOR TO.

03:56PM   17     Q.   OKAY.  AND MICHELLE CARBONE, AM I PRONOUNCING THAT

03:56PM   18     CORRECTLY?

03:56PM   19     A.   YES.

03:56PM   20     Q.   SHE WAS ANOTHER PERSON WHO THE COMPANY HAD HIRED TO GO TO

03:56PM   21     WORK ON STRENGTHENING THE LABORATORY PRACTICES; CORRECT?

03:56PM   22     A.   YES.

03:56PM   23     Q.   AND SHE WAS HIRED BEFORE YOU WERE HIRED AS WELL; CORRECT?

03:56PM   24     A.   YES.

03:56PM   25     Q.   AND BEFORE -- ALL OF THESE PEOPLE WERE HIRED BEFORE THE

DAS CROSS BY MR. WADE                                                5866

03:56PM 1    CMS REPORT WAS ISSUED IN LATE JANUARY OF 2016; CORRECT?

03:56PM 2    A.   YES.

03:56PM 3    Q.   AND THIS WAS ALL PART OF AN EFFORT TO TRY TO STRENGTHEN

03:56PM 4    THE CLIA LAB WITHIN THERANOS; RIGHT?

03:56PM 5    A.   YES.

03:56PM 6    Q.   AND JUST SO WE'RE CLEAR, THERE WERE THREE LABORATORY

03:56PM 7    DIRECTORS WHO WERE WORKING ON THIS AT THE TIME THAT YOU AND

03:56PM 8    DR. TSCHIRHART JOINED THE COMPANY; IS THAT RIGHT?

03:56PM 9    A.   YES.

03:56PM 10   Q.   OKAY.  AND THOSE THREE LABORATORY DIRECTORS CONTINUED FOR

03:56PM 11   MANY MONTHS TO WORK THROUGH THIS PROBLEM; IS THAT RIGHT?

03:57PM 12   A.   COULD YOU SPECIFY THE NUMBER OF MONTHS?

03:57PM 13   Q.   SIX MONTHS OR MORE?

03:57PM 14   A.   I DON'T REMEMBER THE EXACT NUMBER --

03:57PM 15   Q.   OKAY.

03:57PM 16   A.   -- OF MONTHS.

03:57PM 17   Q.   BUT SEVERAL MONTHS AT LEAST?

03:57PM 18   A.   YES.

03:57PM 19   Q.   AND YOU WERE THERE FOR A COUPLE OF YEARS; CORRECT?

03:57PM 20   A.   YES.

03:57PM 21   Q.   AND AS THE PEOPLE WERE WORKING TO DO THIS, WAS IT YOUR

03:57PM 22   OBSERVATION THAT THEY WERE -- LET ME STRIKE THAT.

03:57PM 23        YOU WERE ESSENTIALLY, ONCE YOU CAME ON BOARD, YOU WERE THE

03:57PM 24   CLIA DIRECTOR; RIGHT?

03:57PM 25   A.   YES.

DAS CROSS BY MR. WADE                                        5867

03:57PM   1    Q.   AND THERE WAS A DEGREE TO WHICH YOU WERE THE QUARTERBACK

03:57PM   2    FOR THAT WHOLE EFFORT; IS THAT FAIR?

03:57PM   3    A.   YES.

03:57PM   4    Q.   OKAY.   AND WAS IT YOUR OBSERVATION THAT THIS TEAM WAS

03:57PM   5    WORKING REALLY HARD?

03:57PM   6    A.   YES.

03:57PM   7    Q.   AND DILIGENTLY?

03:57PM   8    A.   YES.

03:57PM   9    Q.   AND IN GOOD FAITH?

03:57PM   10   A.   YES.

03:57PM   11   Q.   AND THAT THEY WERE TRYING TO DO EVERYTHING THAT THEY COULD

03:57PM   12   TO TRY TO STRENGTHEN THE LABORATORY PRACTICES AT THERANOS?

03:57PM   13   A.   YES.

03:57PM   14   Q.   AND THAT AS THEY WERE WORKING TO UNDERSTAND WAYS TO

03:57PM   15   IMPROVE, THEY WERE DIGGING INTO THE RELEVANT EVIDENCE AND FACTS

03:58PM   16   THAT WAS NECESSARY TO THEM TO UNDERSTAND THE ISSUES.   IS THAT

03:58PM   17   RIGHT?

03:58PM   18   A.   YES.

03:58PM   19   Q.   OKAY.   AND ALL OF THE PEOPLE WHO I HAVE JUST IDENTIFIED

03:58PM   20   WERE NOT PEOPLE WHO WERE PART OF THE HISTORICAL LAB OPERATIONS

03:58PM   21   AT THERANOS; CORRECT?

03:58PM   22   A.   YES.

03:58PM   23   Q.   AND THEY WERE ALL ESSENTIALLY OUTSIDERS WHO WERE BROUGHT

03:58PM   24   IN TO WORK ON STRENGTHENING THESE LAB PRACTICES; RIGHT?

03:58PM   25   A.   YES.

DAS CROSS BY MR. WADE                                              5868

03:58PM   1      Q.   OKAY.  AND WAS IT YOUR OBSERVATION WHEN THIS WAS HAPPENING

03:58PM   2      THAT MS. HOLMES WAS SUPPORTIVE OF THOSE EFFORTS?

03:58PM   3      A.   YES.

03:58PM   4      Q.   AND THAT SHE WAS SUPPORTIVE OF YOUR EFFORTS AS THE

03:58PM   5      QUARTERBACK OF THIS TEAM?

03:58PM   6      A.   YES.

03:58PM   7      Q.   AND INITIALLY, AGAIN, ALL OF THIS WORK STARTED BEFORE

03:58PM   8      THERE WAS ANY NOTICE OF THE KIND THAT MR. LEACH WAS PUTTING UP

03:58PM   9      ON THE SCREEN; RIGHT?

03:58PM   10     A.   YES.

03:58PM   11     Q.   OKAY.  AND IN THOSE EARLY DAYS, I TAKE IT YOU HAD TO KIND

03:59PM   12     OF DIG IN A LITTLE BIT AND GET A SENSE OF WHAT -- HOW THE LAB

03:59PM   13     OPERATED; IS THAT RIGHT?

03:59PM   14     A.   YES.

03:59PM   15     Q.   AND YOU HAD TO LOOK AT THE HISTORICAL RECORDS OF THE

03:59PM   16     COMPANY; RIGHT?

03:59PM   17     A.   YES.

03:59PM   18     Q.   AND, AND SOME OF THE DATA THAT THE COMPANY HAD?

03:59PM   19     A.   YES.

03:59PM   20     Q.   AND YOU -- I TAKE IT YOU SAT DOWN AND YOU TALKED WITH MANY

03:59PM   21     OF THE PEOPLE WHO HAD WORKED THERE HISTORICALLY ON -- IN THE

03:59PM   22     LAB AND ON THE TECHNOLOGY.

03:59PM   23     A.   YES, SOME OF THOSE EMPLOYEES.

03:59PM   24     Q.   TO TRY TO FAMILIARIZE YOURSELF WITH SOME OF THE HISTORICAL

03:59PM   25     PRACTICES; IS THAT FAIR?

DAS CROSS BY MR. WADE                                              5869

| | | |
|---|---|---|
| 03:59PM | 1 | A.   YES. |
| 03:59PM | 2 | Q.   OKAY.  AND YOU -- YOU TALKED WITH DR. YOUNG; IS THAT FAIR? |
| 03:59PM | 3 | A.   YES. |
| 03:59PM | 4 | Q.   AND DR. PANGARKAR? |
| 03:59PM | 5 | A.   NOT AT THAT TIME. |
| 03:59PM | 6 | Q.   NOT AT THAT TIME.  LATER ON YOU INTERACTED WITH |
| 03:59PM | 7 | DR. PANGARKAR? |
| 03:59PM | 8 | A.   YES. |
| 03:59PM | 9 | Q.   OKAY.  AND THIS WAS ALL IN AN EFFORT FOR YOU TO FULLY |
| 03:59PM | 10 | UNDERSTAND ALL OF THE RELEVANT FACTS SO THAT YOU COULD DIG IN |
| 04:00PM | 11 | AND WORK ON IMPROVING THE LAB PRACTICES; RIGHT? |
| 04:00PM | 12 | A.   COULD YOU SPECIFY "FULLY UNDERSTAND"? |
| 04:00PM | 13 | Q.   WELL, YOU WANTED TO MAKE SURE THAT YOU UNDERSTOOD THE |
| 04:00PM | 14 | FACTS NEEDED TO STRENGTHEN THE LAB AND BE COMFORTABLE WITH HOW |
| 04:00PM | 15 | IT WAS OPERATING FROM A CLIA STANDPOINT; IS THAT RIGHT? |
| 04:00PM | 16 | A.   YES. |
| 04:00PM | 17 | Q.   OKAY.  AND, AND MS. HOLMES PLACED NO LIMITATIONS ON YOU |
| 04:00PM | 18 | WHATSOEVER IN TERMS OF WHAT YOU COULD LOOK AT; RIGHT? |
| 04:00PM | 19 | A.   YES. |
| 04:00PM | 20 | Q.   AND THIS WAS A LOT OF WORK, WAS IT NOT, DR. DAS? |
| 04:00PM | 21 | A.   YES. |
| 04:00PM | 22 | Q.   AND, AND INITIALLY YOU WERE STILL HOLDING DOWN A JOB AT |
| 04:00PM | 23 | UCLA AS WELL? |
| 04:00PM | 24 | A.   YES. |
| 04:00PM | 25 | Q.   AND THEN EVENTUALLY YOU CAME IN AND YOU WORKED FULL TIME |

DAS CROSS BY MR. WADE                                                    5870

04:00PM  1    ON TACKLING THIS PROBLEM; RIGHT?

04:00PM  2    A.   YES.

04:00PM  3    Q.   AND YOU WORKED HARD ON THAT JOB AS WELL, DID YOU NOT?

04:00PM  4    A.   YES.

04:00PM  5    Q.   AND THE WHOLE TEAM THAT WAS WORKING HARD -- WAS WORKING

04:01PM  6    HARD ON THAT; IS THAT FAIR?

04:01PM  7    A.   YES.

04:01PM  8    Q.   BECAUSE YOU DISCUSSED EARLIER THAT YOU WERE UNDER A PRETTY

04:01PM  9    TIGHT TIMEFRAME TO BE IN A POSITION TO RESPOND TO THESE ISSUES;

04:01PM  10   RIGHT?

04:01PM  11   A.   YES.

04:01PM  12   Q.   AND INITIALLY THERE WAS A DESIRE BEFORE THE CMS REPORT,

04:01PM  13   THERE WAS A DESIRE THAT WAS COMMUNICATED TO STRENGTHEN THE LAB;

04:01PM  14   RIGHT?

04:01PM  15   A.   YES.

04:01PM  16   Q.   AND PEOPLE WANTED THAT DONE QUICKLY; RIGHT?

04:01PM  17   A.   YES.

04:01PM  18   Q.   AND THEN ONCE YOU GOT TO THE POINT WHERE THERE WAS A CMS

04:01PM  19   REPORT, THERE WERE ACTUALLY PRETTY FIRM DEADLINES AND A DESIRE

04:01PM  20   TO DIG IN AND TACKLE THOSE ISSUES AGGRESSIVELY; RIGHT?

04:01PM  21   A.   COULD YOU SPECIFY THE DEADLINES?

04:01PM  22   Q.   WELL, YOU RECALL MR. LEACH SHOWED YOU -- I THINK HE SHOWED

04:01PM  23   YOU A LETTER THAT SAID THAT THERE WERE TEN DAYS TO RESPOND, OR

04:01PM  24   SOMETHING TO THAT EFFECT, IN THE INITIAL -- TO THE INITIAL

04:01PM  25   NOTICE.

5871

DAS CROSS BY MR. WADE

04:01PM    1         DO YOU RECALL?

04:01PM    2    A.   YES.

04:01PM    3    Q.   AND THE COMPANY WANTED TO RESPOND QUICKLY; RIGHT?

04:01PM    4    A.   YES.

04:02PM    5    Q.   AND AGGRESSIVELY?

04:02PM    6    A.   COULD YOU SPECIFY "AGGRESSIVELY"?

04:02PM    7    Q.   SURE.  IT WANTED TO BE RESPONSIVE TO THE ISSUES THAT WERE

04:02PM    8    BEING RAISED BY CMS; IS THAT RIGHT?

04:02PM    9    A.   YES.

04:02PM   10    Q.   OKAY.

04:02PM   11         YOUR HONOR, THIS MIGHT BE A GOOD PLACE TO STOP.  WE'RE AT

04:02PM   12    4:00 O'CLOCK.

04:02PM   13         WE'LL PICK UP TOMORROW MORNING, DOCTOR.  THANK YOU.

04:02PM   14              THE WITNESS:  THANK YOU.

04:02PM   15              THE COURT:  SO WE'LL TAKE OUR RECESS TONIGHT, LADIES

04:02PM   16    AND GENTLEMEN.  I HOPE WE'LL BE ABLE TO START TOMORROW MORNING

04:02PM   17    AT 9:00 A.M.  WE'LL SEE WHAT SURPRISES AWAIT US.  I HAVE GREAT

04:02PM   18    CONFIDENCE IN OUR I.T. STAFF, THAT THEY'LL BE ABLE TO RESOLVE

04:02PM   19    THIS ISSUE.

04:02PM   20         SO THANK YOU FOR YOUR COURTESY IN GOING THROUGH -- IT WAS

04:02PM   21    A TRIP DOWN MEMORY LANE.  THIS IS HOW TRIALS USED TO BE DONE

04:02PM   22    YEARS AGO.  BEFORE WE HAD THE COMPUTERS, WE HAD PROJECTORS AND

04:02PM   23    THAT'S HOW IT WORKED, AND THOSE TRIALS WERE SUCCESSFUL.  IT

04:02PM   24    WORKS.

04:02PM   25         SO I APOLOGIZE FOR THE DISRUPTION TODAY.  I HOPE WE CAN

5872

| | | |
|---|---|---|
| 04:02PM | 1 | ALLEVIATE THAT OVER THE EVENING. |
| 04:03PM | 2 | BUT OVER THE EVENING, PLEASE REFRAIN AND AVOID |
| 04:03PM | 3 | COMMUNICATING WITH ANYONE ABOUT ANYTHING ABOUT THIS CASE. |
| 04:03PM | 4 | DON'T DO ANY RESEARCH.  DON'T MAKE ANY OPINIONS OR FORM ANY |
| 04:03PM | 5 | OPINIONS OR REACH ANY CONCLUSIONS YET UNTIL THE CASE HAS BEEN |
| 04:03PM | 6 | DELIVERED TO YOU FOR YOUR DELIBERATIONS. |
| 04:03PM | 7 | HAVE A GOOD EVENING.  WE'LL SEE YOU TOMORROW AT 9:00 A.M. |
| 04:03PM | 8 | AND, DR. DAS, YOU CAN STAND DOWN.  WE'LL SEE YOU TOMORROW |
| 04:03PM | 9 | AT 9:00 A.M. |
| 04:03PM | 10 | THE WITNESS:  THANK YOU, YOUR HONOR. |
| 04:03PM | 11 | THE COURT:  YOU'RE WELCOME. |
| 04:03PM | 12 | (JURY OUT AT 4:03 P.M.) |
| 04:03PM | 13 | THE COURT:  THANK YOU.  PLEASE BE SEATED.  THANK |
| 04:03PM | 14 | YOU. |
| 04:03PM | 15 | DOCTOR, YOU CAN STAND DOWN.  THANK YOU. |
| 04:04PM | 16 | ALL RIGHT.  THE RECORD SHOULD REFLECT THAT OUR JURY HAS |
| 04:04PM | 17 | LEFT FOR THE EVENING AND THE WITNESS HAS LEFT THE COURTROOM. |
| 04:04PM | 18 | ANYTHING FURTHER BEFORE WE BREAK, MR. LEACH AND YOUR TEAM? |
| 04:04PM | 19 | MR. LEACH:  NOT FROM THE GOVERNMENT, NO, YOUR HONOR. |
| 04:04PM | 20 | MR. WADE:  NOT AT THIS TIME, YOUR HONOR. |
| 04:04PM | 21 | THE COURT:  ALL RIGHT.  THANK YOU.  HAVE A GOOD |
| 04:04PM | 22 | EVENING.  WE'LL SEE YOU TOMORROW.  THANKS. |
| 04:04PM | 23 | THE CLERK:  COURT IS ADJOURNED. |
| 04:04PM | 24 | (COURT ADJOURNED AT 4:04 P.M.) |
| | 25 | |

1

2

3                        CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8     UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9     CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10    HEREBY CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18         _____
19         LEE-ANNE SHORTRIDGE, CSR, CRR
           CERTIFICATE NUMBER 9595
20

21         DATED:  NOVEMBER 9, 2021

22

23

24

25

```
 1
 2                    UNITED STATES DISTRICT COURT
 3                  NORTHERN DISTRICT OF CALIFORNIA
 4                        SAN JOSE DIVISION
 5
     UNITED STATES OF AMERICA,      )  CR-18-00258-EJD
 6                                  )
                      PLAINTIFF,    )  SAN JOSE, CALIFORNIA
 7                                  )
             VS.                    )  VOLUME 31
 8                                  )
     ELIZABETH A. HOLMES,           )  NOVEMBER 10, 2021
 9                                  )
                      DEFENDANT.    )  PAGES 5873 - 6145
10   _____)
11                   TRANSCRIPT OF TRIAL PROCEEDINGS
12              BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13
     A P P E A R A N C E S:
14
     FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                          BY:  JOHN C. BOSTIC
                                 JEFFREY B. SCHENK
16                          150 ALMADEN BOULEVARD, SUITE 900
                            SAN JOSE, CALIFORNIA 95113
17
                            BY:  ROBERT S. LEACH
18                               KELLY VOLKAR
                            1301 CLAY STREET, SUITE 340S
19                          OAKLAND, CALIFORNIA 94612
20       (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21
     OFFICIAL COURT REPORTERS:
22                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074
23                          LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24
            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25               TRANSCRIPT PRODUCED WITH COMPUTER
```

A P P E A R A N C E S: (CONT'D)


FOR DEFENDANT HOLMES:     WILLIAMS & CONNOLLY LLP
                          BY:  KEVIN M. DOWNEY
                               LANCE A. WADE
                               KATHERINE TREFZ
                               PATRICK LOOBY
                               SEEMA ROPER
                               RICHARD CLEARY
                               J.R. FLEURMONT
                          725 TWELFTH STREET, N.W.
                          WASHINGTON, D.C. 20005

                          LAW OFFICE OF JOHN D. CLINE
                          BY:  JOHN D. CLINE
                          ONE EMBARCADERO CENTER, SUITE 500
                          SAN FRANCISCO, CALIFORNIA 94111


ALSO PRESENT:             FEDERAL BUREAU OF INVESTIGATION
                          BY:  ADELAIDA HERNANDEZ

                          OFFICE OF THE U.S. ATTORNEY
                          BY:  LAKISHA HOLLIMAN, PARALEGAL
                               MADDI WACHS, PARALEGAL

                          WILLIAMS & CONNOLLY
                          BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

                          TBC
                          BY:  BRIAN BENNETT, TECHNICIAN

5875

```
1                        INDEX OF PROCEEDINGS
2
        GOVERNMENT'S:
3

4       KINGSHUK DAS
        CROSS-EXAM BY MR. WADE (RES.)          P. 5891
5       REDIRECT EXAM BY MR. LEACH             P. 6017
        RECROSS-EXAM BY MR. WADE               P. 6030
6
        ALAN EISENMAN
7       DIRECT EXAM BY MR. BOSTIC              P. 6037
        CROSS-EXAM BY MR. DOWNEY               P. 6101
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         INDEX OF EXHIBITS

 2
                                       IDENT.     EVIDENCE
 3         GOVERNMENT'S:

 4         663                                    6058
           713                                    6073
 5         1334                                   6081
           1371, PAGES 1 - 8                      6083
 6         2223                                   6089
           2216                                   6095
 7         2468                                   6096

 8

 9         DEFENDANT'S:

10         10290                                  5893
           10563                                  5899
11         10634                                  5902
           14159                                  5904
12         10665                                  5906
           10666                                  5912
13         10678                                  5938
           14162                                  5946
14         10674                                  5973
           10651                                  5976
15         10641                                  5979
           7746 AND 7747                          5982
16         10628                                  5991
           13333, REDACTED                        5995
17         10668, REDACTED                        5998, 6002
           10639                                  6004
18         10675                                  6006
           10638                                  6011
19         10626                                  6109

20

21

22

23

24

25
```

5877

```
         1    SAN JOSE, CALIFORNIA                    NOVEMBER 10, 2021
08:32AM  2                    P R O C E E D I N G S
08:32AM  3         (COURT CONVENED AT 8:32 A.M.)
08:32AM  4         (JURY OUT AT 8:32 A.M.)
08:32AM  5             THE COURT:  WE'RE ON THE RECORD IN THE HOLMES
08:32AM  6    MATTER.  ALL COUNSEL ARE PRESENT AND MS. HOLMES IS PRESENT.
08:32AM  7         I UNDERSTAND THAT COUNSEL WANTED TO SPEAK ABOUT SOMETHING?
08:32AM  8             MR. SCHENK:  YES.  GOOD MORNING.  THANK YOU,
08:32AM  9    YOUR HONOR.
08:32AM 10         THERE ARE TWO ISSUES THAT WE WANTED TO BRING TO THE
08:32AM 11    COURT'S ATTENTION.  THE FIRST ONE I THINK WE WOULD BENEFIT FROM
08:32AM 12    SOME GUIDANCE FROM THE COURT ON.  THE ISSUE IS RELATED TO LIS.
08:32AM 13         THIS ISSUE HAS BEEN RAISED TO THE COURT PREVIOUSLY.  IT
08:32AM 14    WAS AROUND THE TIME OF THE CROSS-EXAMINATION OF DR. ROSENDORFF.
08:32AM 15    THE DEFENSE ASKED QUESTIONS ABOUT WHETHER THERANOS HAD AN LIS
08:32AM 16    AND THE CAPABILITIES OF LIS.
08:32AM 17         AT THAT TIME WE RAISED TO THE COURT THE QUESTION OF
08:32AM 18    WHETHER THE DOOR HAD BEEN OPENED TO THE GOVERNMENT PRESENTING
08:32AM 19    THE TRUE STORY ABOUT WHY LIS IS NOT AVAILABLE, AND WE RAISED
08:33AM 20    THAT AT THE TIME FOR THE COURT TO CONSIDER AND SUGGESTED THAT
08:33AM 21    WE MIGHT BE RAISING IT LATER IN THE TRIAL DEPENDING ON HOW
08:33AM 22    QUESTIONS PROCEED.
08:33AM 23         YESTERDAY DURING THE CROSS-EXAMINATION OF DR. SAWYER, THE
08:33AM 24    DEFENSE WENT THROUGH ABOUT SEVEN OR EIGHT PAGES OF THE LIS SOP
08:33AM 25    AND ASKED QUESTIONS, AGAIN, ABOUT THE CAPABILITIES OF LIS, ITS
```

5878

08:33AM 1     FUNCTIONALITY, OF A WITNESS WHO HASN'T USED IT.

08:33AM 2         WE NOW WONDER, FROM THE COURT, WHETHER THE DOOR HAS BEEN

08:33AM 3     OPENED TO THE GOVERNMENT CALLING WITNESSES TO ADDRESS THE

08:33AM 4     REASON WHY LIS IS NOT AVAILABLE.

08:33AM 5         I CAN EVEN REFINE THE ISSUE A LITTLE BIT MORE FOR THE

08:33AM 6     COURT.  WHAT WE'RE INTERESTED IN IS KNOWING WHETHER THE DEFENSE

08:33AM 7     IS GOING TO BE PERMITTED IN ARGUMENT TO SUGGEST THAT THERE IS

08:33AM 8     MISSING EVIDENCE, THAT THE EVIDENCE IS LACKING AND, THEREFORE,

08:33AM 9     INSUFFICIENT TO SUPPORT CONVICTIONS ON COUNTS FOR WHICH LIS IS

08:34AM 10    RELEVANT.

08:34AM 11        I DISTINGUISH THAT FROM ARGUMENTS THAT THERANOS RAN A GOOD

08:34AM 12    LAB BECAUSE IT HAD LIS, BECAUSE LABS ARE SUPPOSED TO HAVE LIS.

08:34AM 13    THAT'S WHAT THE TESTIMONY FROM DR. SAWYER WAS.  THERANOS HAD

08:34AM 14    LIS AND THEREFORE, THERANOS WAS A GOOD LAB.

08:34AM 15        THAT'S LEGITIMATE, AND I DON'T THINK I NEED TO CALL

08:34AM 16    WITNESSES TO ADDRESS THIS SORT OF MISSING EVIDENCE POINT IF

08:34AM 17    THAT'S THE DIRECTION THAT THEY'RE GOING.

08:34AM 18        BUT IF THE DEFENSE IS GOING TO ARGUE THAT THE EVIDENCE IS

08:34AM 19    INSUFFICIENT TO CONVICT ON THE PATIENT COUNTS OR ON THE

08:34AM 20    CONSPIRACY COUNT THAT IS RELATED TO THAT, OUR VIEW IS THAT THE

08:34AM 21    DOOR HAS BEEN OPENED IF THAT'S THE WAY THAT THE EVIDENCE IS

08:34AM 22    GOING TO BE ARGUED, AND WE SHOULD BE ALLOWED TO EXPLAIN WHY

08:34AM 23    THERE ISN'T MISSING EVIDENCE, AND I THINK WE WOULD BENEFIT FROM

08:34AM 24    SOME CLARITY ON THAT ISSUE AS WE PLAN OUT THE REMAINING

08:34AM 25    WITNESSES IN THE CASE.

08:34AM  1          THE COURT:  THANK YOU.

08:34AM  2          MR. SCHENK:  THERE'S ONE OTHER ISSUE, BUT I'LL

08:34AM  3     PAUSE.

08:34AM  4          THE COURT:  OKAY.  THANK YOU, MR. SCHENK.

08:34AM  5       MR. WADE.

08:34AM  6        MR. WADE:  GOOD MORNING.

08:35AM  7      MR. SCHENK RAISES A FAIR ISSUE.  WE OBVIOUSLY HEARD THE

08:35AM  8     COMMENTS THAT WERE MADE BY COUNSEL FOR THE GOVERNMENT AT THE

08:35AM  9     TIME OF DR. ROSENDORFF'S EXAMINATION.  WE UNDERSTAND THE POINT

08:35AM  10    HE'S MAKING NOW.  WE WOULD LIKE TO THINK ABOUT IT, LOOK AT THE

08:35AM  11    TRANSCRIPTS, AND GIVE A MORE INFORMED VIEW.

08:35AM  12     I DON'T THINK THE ISSUE IS WHETHER OR NOT THE LIS IS

08:35AM  13    MISSING.  THE LIS IS MISSING.

08:35AM  14     I THINK THE LITIGATION RELATING TO THAT IS, WHO IS

08:35AM  15    RESPONSIBLE FOR THAT?

08:35AM  16      AND IF WE WERE TO COME IN AND BLAME THE GOVERNMENT FOR NOT

08:35AM  17    OBTAINING THAT EVIDENCE OR FAULTING THEM FOR FAILING TO PRESENT

08:35AM  18    ALL OF THAT EVIDENCE OR OBTAINING THAT, WHATEVER THE CASE MAY

08:35AM  19    BE, WE'LL HAVE TO LOOK BACK AT THE COURT'S ORDER, THAT MAY OPEN

08:35AM  20    THE DOOR TO, WELL, WHO IS ACTUALLY RESPONSIBLE FOR THE LIS NOT

08:35AM  21    BEING HERE?

08:35AM  22      THE LIS IS -- NUMEROUS WITNESSES HAVE SAID, AND I EXPECT

08:35AM  23    TO A DEGREE DR. DAS MAY SAY THIS TODAY, IT'S PART OF THE CORE

08:36AM  24    FUNCTION OF THE LAB, IT'S HOW IT TRACKS ITS DATA, IT'S HOW IT

08:36AM  25    TRACKS ITS PATIENTS, AND THEY LOOK AT THIS INFORMATION, AND I

08:36AM  1    THINK ALL OF THAT QUESTIONING IS FAIR AND APPROPRIATE IN THE

08:36AM  2    CASE AND IT'S KIND OF AT THE HEART OF THE LAB ISSUES.

08:36AM  3        I DON'T THINK IT OPENS THE DOOR TO SOME MINI TRIAL ABOUT

08:36AM  4    WHO AT THERANOS WAS RESPONSIBLE FOR, YOU KNOW, NOT PRESERVING

08:36AM  5    LIS AT THE TIME THE COMPANY WAS WRAPPING UP OPERATIONS BECAUSE,

08:36AM  6    AS THE COURT KNOWS, THE GOVERNMENT HAS PRESENTED NO EVIDENCE

08:36AM  7    THAT MS. HOLMES WAS, YOU KNOW, INVOLVED IN THOSE DECISIONS OR

08:36AM  8    RESPONSIBLE FOR THOSE DECISIONS.

08:36AM  9          THE COURT:  I THINK THAT'S WHAT MR. SCHENK IS

08:36AM 10    ACTUALLY SAYING.  HE'S SAYING WE HAVE IT AND WE DON'T THINK

08:36AM 11    IT'S APPROPRIATE.

08:36AM 12        BUT WHAT I HEAR MR. SCHENK SAYING IS, I'M ASKING DIRECTION

08:36AM 13    FROM THE COURT.  IS IT APPROPRIATE NOW BECAUSE HAS THE DOOR

08:36AM 14    BEEN OPENED?  IS THE KNOB TURNED AND IS THE DOOR OPENED?

08:36AM 15        AND I DON'T THINK MR. SCHENK PARTS COMPANY WITH YOU

08:37AM 16    TALKING ABOUT OBVIOUSLY LABS HAVE TO HAVE THE LIS.  THAT'S PART

08:37AM 17    OF AN INTEGRAL COMPONENT TO THE LEGITIMACY OF THE LAB.

08:37AM 18        SHIFTING THE ISSUE IS -- AND WE HAD LITIGATION ON THIS

08:37AM 19    PRETRIAL, AND I THINK YOU'RE RIGHT TO FOCUS ON IT -- IF THERE'S

08:37AM 20    GOING TO BE -- IF PART OF THIS TRIAL BECOMES RESPONSIBILITY FOR

08:37AM 21    THE LOSS OF THE LIS, AND IF PART OF THE TRIAL BECOMES THAT'S

08:37AM 22    EVIDENCE THAT IS IMPORTANT TO ONE SIDE OR THE OTHER, AND THEN

08:37AM 23    CONNECTED TO THAT IS, IF THERE'S GOING TO BE AN ARGUMENT ABOUT

08:37AM 24    IT DOESN'T EXIST, AND IT DOESN'T EXIST BECAUSE THE GOVERNMENT

08:37AM 25    LOST IT, THEN WE'LL HAVE SOME LITIGATION ON THAT PROBABLY IN

| | | |
|---|---|---|
| 08:37AM | 1 | FRONT OF THE JURY. |
| 08:37AM | 2 | MR. WADE:  YEAH, IT WOULD SEEM THAT'S THE CASE, |
| 08:37AM | 3 | YOUR HONOR. |
| 08:37AM | 4 | AS THE COURT KNOWS, WE, WE -- WE'RE NOT AFRAID OF THAT |
| 08:37AM | 5 | LITIGATION IN THE SENSE THAT, YOU KNOW, WE DON'T THINK IT |
| 08:37AM | 6 | INVOLVES MS. HOLMES. |
| 08:37AM | 7 | THE COURT:  RIGHT. |
| 08:37AM | 8 | MR. WADE:  AND IT'S JUST A QUESTION OF WHETHER IT |
| 08:38AM | 9 | WAS THE GOVERNMENT'S RESPONSIBILITY AND THEIR FAILURES, OR |
| 08:38AM | 10 | WHETHER -- AND SOME OF THE MEMBERS OF THE TEAM PRESENT MAY BE |
| 08:38AM | 11 | WITNESSES WITH RESPECT TO THAT. |
| 08:38AM | 12 | BUT I DO THINK IT'S A SIGNIFICANT ISSUE WITH RESPECT TO |
| 08:38AM | 13 | SORT OF THE PROCEEDING WITHIN THE TRIAL IN THE SENSE THAT THAT |
| 08:38AM | 14 | COULD ELONGATE THE TRIAL BY, YOU KNOW, A WEEK OR TWO TO |
| 08:38AM | 15 | LITIGATE THOSE ISSUES. |
| 08:38AM | 16 | SO I THINK IT'S SOMETHING THAT WE SHOULD, WE SHOULD GIVE |
| 08:38AM | 17 | SOME THOUGHT TO IN LIGHT OF THE FACT THAT MR. SCHENK IS RAISING |
| 08:38AM | 18 | IT AS TO HOW WE MIGHT WANT TO ARGUE THE ISSUE, AND THEN GIVE |
| 08:38AM | 19 | THE GOVERNMENT NOTICE AS TO WHAT WE MIGHT DO. |
| 08:38AM | 20 | AND IF THEY -- IF THERE'S A -- ANY AMBIGUITY AS TO WHETHER |
| 08:38AM | 21 | WE'RE OPENING THE DOOR, WE CAN PRESENT IT TO THE COURT. |
| 08:38AM | 22 | AND IF THE GOVERNMENT -- IF -- |
| 08:38AM | 23 | THE COURT:  I THINK THAT'S WHAT MR. SCHENK IS DOING |
| 08:38AM | 24 | NOW. |
| 08:38AM | 25 | MR. WADE:  YEAH.  YEAH.  ALL I'M SAYING IS THAT I'M |

5882

08:38AM   1    NOT PREPARED TO TELL THE COURT WHAT WE'RE PREPARED TO ARGUE IN

08:38AM   2    CLOSING ON THIS ISSUE GIVEN THIS ISSUE WAS RAISED THIS MORNING.

08:38AM   3         THE COURT:  WELL -- I'M SORRY, I KEEP CUTTING YOU

08:38AM   4    OFF.  I APOLOGIZE, MR. WADE.

08:38AM   5         BUT BEFORE WE LOSE THIS WITNESS, IT MAY BECOME NECESSARY

08:39AM   6    TO EXAMINE THIS WITNESS AS TO SOME OF THESE TOPICS.  I DON'T

08:39AM   7    KNOW.  AND I THINK THAT'S -- THAT'S WHY I'M TAKING THAT IT'S

08:39AM   8    BEING RAISED NOW.

08:39AM   9         IF IT'S APPROPRIATE TO GET INFORMATION ABOUT THE LIS FROM

08:39AM  10    THIS WITNESS, WE DO IT WHILE HE'S HERE, AS OPPOSED TO BRINGING

08:39AM  11    HIM BACK I SUPPOSE, THAT COULD BE IT.

08:39AM  12         BUT, YOU KNOW, I APPRECIATE YOUR OBSERVATION OF NOT

08:39AM  13    WANTING TO ELONGATE THE TRIAL.  I THINK THAT'S WHAT I HEARD YOU

08:39AM  14    SAY.

08:39AM  15         MR. WADE:  YEAH.

08:39AM  16         THE COURT:  THE TRIAL HAS BEEN GOING PRETTY LONG.  I

08:39AM  17    DON'T KNOW IF THE GOVERNMENT IS CLOSE TO THE END OF THEIR CASE.

08:39AM  18    IT SOUNDS LIKE -- I'M PARAPHRASING MR. BOSTIC, THEY'RE PROBABLY

08:39AM  19    CLOSER TO THE END THAN THE BEGINNING I WOULD THINK, AND WE CAN

08:39AM  20    WRAP UP VERY SOON I THINK.

08:39AM  21         BUT -- AND I HAVE TO SAY, MY EARS OPENED UP A LITTLE MORE

08:39AM  22    YESTERDAY WHEN I HEARD LIS BEING MENTIONED FOR THIS VERY

08:40AM  23    REASON, BECAUSE IT IS A CONTROVERSIAL TOPIC.  WE HAD LITIGATION

08:40AM  24    ON IT PRETRIAL, AND THE ISSUE ABOUT RESPONSIBILITY FOR THAT AND

08:40AM  25    WHETHER OR NOT THAT RESPONSIBILITY GOES BACK TO YOUR CLIENT OR

5883

08:40AM  1    NOT IS STILL PERHAPS AN OPEN ISSUE.  I DON'T KNOW.

08:40AM  2         BUT I APPRECIATE YOUR CONCERN ABOUT WANTING TO INFECT THAT

08:40AM  3    ISSUE IN THE TRIAL.

08:40AM  4         MR. SCHENK IS TELLING ME THAT IT'S COMING CLOSE, JUDGE,

08:40AM  5    AND WE JUST WANT TO KNOW.  I UNDERSTAND YOU NEEDED TO CONSULT

08:40AM  6    WITH YOUR TEAM ABOUT THAT.

08:40AM  7         BUT I DON'T KNOW WHAT TRIAL STRATEGY IS ON BOTH SIDES, BUT

08:40AM  8    I DON'T WANT THE TRIAL TO GO INTO JANUARY.  I DON'T THINK WE

08:40AM  9    NEED TO, BUT THAT DEPENDS ON WHAT YOU'RE GOING TO DO WHEN THE

08:40AM  10   GOVERNMENT RESTS, OF COURSE.

08:40AM  11        MR. WADE:  UNDERSTOOD, YOUR HONOR.

08:40AM  12        WE, TOO, HAVE HEARD WE'RE CLOSER TO THE END THAN THE

08:40AM  13   BEGINNING.  I THINK FOR SOME OF US THAT PROBABLY DESCRIBES OUR

08:40AM  14   STATE OF LIFE GENERALLY.

08:40AM  15        BUT, YOU KNOW, WE DON'T KNOW EXACTLY WHEN IT IS THAT THE

08:41AM  16   GOVERNMENT INTENDS TO REST.

08:41AM  17        BUT WITH RESPECT TO THIS ISSUE AND THIS WITNESS, TO MY

08:41AM  18   KNOWLEDGE THIS WITNESS DOESN'T HAVE ANY INFORMATION ABOUT THE,

08:41AM  19   YOU KNOW, THE MOTH BALLING OF THE LIS SERVERS OR ANYTHING TO

08:41AM  20   THAT EFFECT.

08:41AM  21        SO I'M NOT SURE THAT WHO IS RESPONSIBLE FOR THE

08:41AM  22   DESTRUCTION OF LIS IS SOMETHING THAT IS RIPE FOR THIS WITNESS.

08:41AM  23        I WILL JUST BE CANDID WITH THE COURT AND COUNSEL.  I

08:41AM  24   BELIEVE THAT ON DIRECT EXAMINATION DR. DAS TALKED ABOUT KIND OF

08:41AM  25   THREE PILLARS THAT HE LOOKED AT IN MAKING SOME OF THE JUDGMENTS

08:41AM   1       THAT HE MADE IN CONNECTION WITH HIS WORK, AND I BELIEVE SOME OF

08:41AM   2       THAT RELATED TO DATA THAT HE OBTAINED FROM THE LIS SYSTEM, AND

08:41AM   3       I INTEND TO ASK HIM ABOUT THE PROCESS THAT HE WENT THROUGH.

08:41AM   4            BUT I DON'T INTEND TO ASK HIM QUESTIONS RELATING TO, AND

08:41AM   5       THE GOVERNMENT FAILED TO PRESENT YOU WITH ANY OF THIS EVIDENCE,

08:42AM   6       OR ANYTHING THAT I THINK IS IN THE SPIRIT OF THE ORDER THAT THE

08:42AM   7       COURT ISSUED ON THAT.

08:42AM   8            I JUST -- AND I'M NOT SURE THAT WE'LL BE IN A PLACE WHERE

08:42AM   9       WE WOULD OPEN THE DOOR ON ARGUMENT, BUT I DON'T WANT TO MAKE

08:42AM  10       THAT DECISION ON THE FLY.  I WANT TO CONSULT WITH MY TEAM, AND

08:42AM  11       WE CAN COME BACK TO THAT BEFORE WE RESUME TRIAL IF THE

08:42AM  12       GOVERNMENT WOULD LIKE.

08:42AM  13            THE COURT:  MR. SCHENK, ANYTHING FURTHER?

08:42AM  14            MR. SCHENK:  COULD, BY 7:00 P.M. TOMORROW, THE

08:42AM  15       DEFENSE LET US KNOW WHETHER THEY INTEND TO ARGUE THAT THE

08:42AM  16       FAILURE OF LIS EVIDENCE TO BE PRESENTED IN THE CASE BY THE

08:42AM  17       GOVERNMENT IS A BASIS TO FIND MS. HOLMES NOT GUILTY?  THAT

08:42AM  18       MS. HOLMES SHOULD NOT BE FOUND GUILTY BECAUSE THE EVIDENCE IS

08:42AM  19       INSUFFICIENT?  THAT'S WHAT THE HEART OF MY CONCERN IS.

08:42AM  20            TO ARGUE THAT THERANOS HAD LIS, JUST LIKE THEY HAD A

08:42AM  21       GENERAL SUPERVISOR IN THE LAB AND A TECHNICAL SUPERVISOR,

08:43AM  22       THAT'S FINE.  I THINK THAT'S APPROPRIATE ARGUMENT.  IT'S

08:43AM  23       APPROPRIATE FOR THEM TO SAY, THERANOS WAS A LEGITIMATE LAB AND

08:43AM  24       LET ME GIVE YOU THE REASONS WHY, ONE OF THOSE IS THAT YOU HEARD

08:43AM  25       THAT THEY HAD AN LIS.

08:43AM  1        THE COURT HAS HEARD AND COUNSEL HAS HEARD ME SAY, I DON'T

08:43AM  2    OBJECT TO THAT.

08:43AM  3        WHAT DOES PROVIDE SOME CONCERN TO ME IS THE KINDS OF

08:43AM  4    QUESTIONS THAT THEY HAVE ASKED ON CROSS MIGHT BE USED IN

08:43AM  5    ARGUMENT TO SUGGEST THAT YOU HEARD THAT THERANOS HAD AN LIS,

08:43AM  6    YOU HEARD WHAT ITS CAPABILITIES WERE AND THE KIND OF DATA THAT

08:43AM  7    IT STORED, AND THAT EVIDENCE WASN'T PRESENTED TO YOU AND THE

08:43AM  8    GOVERNMENT IS ASKING YOU TO CONVICT MS. HOLMES OF OFFENSES

08:43AM  9    RELATED TO THE PATIENT COUNTS.  YOU CAN'T DO THAT WITHOUT

08:43AM 10    KNOWING WHAT WAS IN LIS.  THAT'S WHERE THE REAL EVIDENCE IS.

08:43AM 11        THAT WOULD NOT BE APPROPRIATE TO ARGUE WITHOUT A FINDING

08:43AM 12    BY THE COURT THAT THE DOOR HAS BEEN OPENED SO THE GOVERNMENT'S

08:43AM 13    CASE-IN-CHIEF CAN ARGUE ABOUT WHERE LIS IS AND WHY IT IS NOT IN

08:43AM 14    FRONT OF THE COURT.

08:43AM 15        THAT'S THE HEART OF MY CONCERN.

08:43AM 16        AND AS THE COURT NOTED, AS WE PLAN OUT OUR REMAINING

08:44AM 17    WITNESSES IN THE CASE, IT WOULD BE VERY HELPFUL TO KNOW IF THE

08:44AM 18    DOOR HAS BEEN OPENED AND WE CAN PRESENT THE LIS DESTRUCTION

08:44AM 19    EVIDENCE, OR WHETHER THE DEFENSE JUST INTENDS TO ARGUE LIS WAS

08:44AM 20    ONE OF MANY THINGS THAT SHOWED THERANOS HAD A GOOD LAB OR WAS

08:44AM 21    TRYING TO HAVE A GOOD LAB.

08:44AM 22        THAT'S SORT OF THE FORK IN THE ROAD AS I SEE IT, AND IT

08:44AM 23    WOULD BE HELPFUL TO KNOW TOMORROW EVENING AS WE PRESENT OUR

08:44AM 24    NEXT ROUND OF NAMES TO THE DEFENSE ON A THURSDAY 7:00 P.M.

08:44AM 25    DEADLINE OF WHO WOULD TESTIFY.

5886

08:44AM 1           MR. WADE:  THE COURT'S INDULGENCE FOR ONE SECOND?

08:44AM 2           THE COURT:  NO, NO.  SURE.  OF COURSE.

08:44AM 3       (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

08:45AM 4           MR. WADE:  TWO ISSUES, YOUR HONOR.

08:45AM 5       FIRST OF ALL, WITH RESPECT TO MR. SCHENK'S REQUEST, WE CAN

08:45AM 6   DO SLIGHTLY BETTER, WHICH IS WE CAN INFORM THE GOVERNMENT BY

08:45AM 7   4:00 P.M. TOMORROW WHETHER WE CAN RULE OUT THE POSSIBILITY THAT

08:45AM 8   WE CAN OFFER THAT DEFENSE.

08:45AM 9       I WON'T BE IN A POSITION TO TELL THE GOVERNMENT WE ARE OR

08:45AM 10  ARE NOT GOING TO OFFER IT UNTIL MUCH LATER, AS THE COURT KNOWS.

08:45AM 11      BUT WE CAN ADVISE THE GOVERNMENT AS TO WHETHER WE'LL RULE

08:45AM 12  THAT OUT.  WE SUGGEST 4:00 P.M. BECAUSE THE GOVERNMENT GIVES US

08:45AM 13  NOTICES OF WITNESSES AT 7:00 P.M., AND SO WE'LL GIVE THEM A FEW

08:45AM 14  HOURS TO CONSIDER OUR POSITION ON THAT.

08:45AM 15      I DO WANT TO MAKE ONE POINT CLEAR, THOUGH, WHICH IS WE'RE

08:46AM 16  MOVING THE GOALPOST A LITTLE BIT HERE, WHICH IS WE HAVE NOT YET

08:46AM 17  OPENED THE DOOR ON THIS ISSUE AND THE GOVERNMENT IS NOW ASKING

08:46AM 18  FOR A DIFFERENT INQUIRY.

08:46AM 19      SO I DON'T THINK WE'VE OPENED THE DOOR TO MAKING THIS

08:46AM 20  ARGUMENT AND PRESENTING THIS EVIDENCE.

08:46AM 21      IF WE GO INTO THESE ISSUES IN OUR CASE AND THE GOVERNMENT

08:46AM 22  WANTS TO PRESENT THESE ISSUES IN REBUTTAL, YOU KNOW, THAT'S A

08:46AM 23  DIFFERENT STORY.

08:46AM 24      BUT I THINK THROUGH THE QUESTIONING WE HAVEN'T ELICITED

08:46AM 25  THE TYPES OF QUESTIONS THAT, UNDER THE COURT'S ORDER ON THIS

5887

08:46AM  1    ISSUE, WOULD OPEN THE DOOR.

08:46AM  2        SO I THINK THAT'S WHAT WAS CONTEMPLATED.  I DON'T THINK IT

08:46AM  3    WAS CONTEMPLATED THAT IN THE MIDDLE OF THE GOVERNMENT'S CASE

08:46AM  4    THAT WE WERE TO BE TOLD, WE WERE TO BE ASKED TO CONFINE AND

08:46AM  5    DEFINE ALL OF THE -- OUR DEFENSES AND WHAT WE INTEND TO PRESENT

08:46AM  6    IN OUR CASE AND WHAT WE INTEND TO ARGUE TO THE JURY, BECAUSE I

08:46AM  7    DON'T THINK, YOU KNOW, THAT'S OBVIOUSLY CONSTITUTIONALLY

08:46AM  8    APPROPRIATE TO EVER REQUIRE DEFENSE COUNSEL TO DO THAT.

08:47AM  9        THAT BEING SAID, WE'LL BE IN A POSITION TO PROVIDE THAT,

08:47AM  10   THE NOTICE REQUESTED BY THE GOVERNMENT.

08:47AM  11            THE COURT:  THANK YOU.

08:47AM  12        AND THERE IS SOME TENSION HERE, TENSION IN THAT THE

08:47AM  13   DEFENSE SHOULD NOT HAVE BURDEN SHIFTING, OR THE DEFENSE SHOULD

08:47AM  14   NOT HAVE TO REVEAL ANY OF THEIR DEFENSES IN THE PROSECUTION

08:47AM  15   CASE, OF COURSE.

08:47AM  16        THE TENSION, HOWEVER, JUXTAPOSED WITH THAT IS, OF COURSE,

08:47AM  17   THE PRETRIAL ISSUE AND THIS ISSUE DOES LINGER IN THIS CASE

08:47AM  18   ABOUT THE LIS AND WHETHER OR NOT RESPONSIBILITY ABOUT -- AS TO

08:47AM  19   ITS DESTRUCTION IS GOING TO BE AN ISSUE IN THE CASE.

08:47AM  20        AND WE'VE TALKED LONG AND HARD ABOUT DOORS AND OPENING

08:47AM  21   THEM, AND I THINK THAT'S RIPE FOR DISCUSSION HERE AND I THINK

08:47AM  22   IT'S APPROPRIATE FOR MR. SCHENK TO RAISE IT JUST AS A CONCERN

08:47AM  23   OF HIS TEAM, AND ALSO IT PERHAPS HAS PROPHYLACTIC ASSISTANCE TO

08:47AM  24   YOU AND YOUR TEAM AS TO GETTING CLOSE AND THERE'S SOME NOTICE

08:47AM  25   HERE AND THIS COULD BE ANOTHER ISSUE.

5888

08:47AM 1        SO I THINK IT'S APPROPRIATE FOR THE DISCUSSION.

08:47AM 2        I DO THINK THAT THE TENSION HERE IS -- AND I DON'T SEE THE

08:47AM 3   GOVERNMENT ASKING YOU TO REVEAL YOUR DEFENSE.  THAT'S NOT -- I

08:48AM 4   DON'T TAKE IT THAT WAY, AND IF YOU FEEL THAT WAY, WE SHOULD

08:48AM 5   TALK ABOUT THAT.

08:48AM 6        BUT WHAT I HEAR THE DEFENSE SAYING IS THAT THIS IS AN

08:48AM 7   ISSUE, AND IF IT'S GOING TO BE SOMETHING THAT THE DEFENSE IS

08:48AM 8   PLANNING ON ARGUING BECAUSE THEY HAVE THESE WITNESSES, THEY'RE

08:48AM 9   ASKING THE QUESTION, THEY'RE IN CONTROL OF THAT NOW, AND THEN

08:48AM 10  WE WOULD LIKE -- "WE" THE GOVERNMENT -- WOULD LIKE TO KNOW THAT

08:48AM 11  BECAUSE WE'LL CALL WITNESSES IN OUR CASE-IN-CHIEF

08:48AM 12  APPROPRIATELY.

08:48AM 13       IF YOU FEEL, IF YOU FEEL THAT IT'S GOING INTO YOUR

08:48AM 14  CLIENT'S CONSTITUTIONAL RIGHT TO PUT ON A DEFENSE AND KEEP THAT

08:48AM 15  QUIET UNTIL ITS YOUR TURN, YOU SHOULD TELL ME THAT, TOO, AND

08:48AM 16  WE'LL TALK ABOUT THAT.

08:48AM 17       BUT I THINK THIS IS A LITTLE MORE STRATEGIC THAN THAT, AND

08:48AM 18  NOT IN A PEJORATIVE WAY.

08:48AM 19       MR. WADE:  NO, NO.  FAIR POINT, YOUR HONOR.

08:48AM 20       AGAIN, WE WELCOME THE DIALOGUE.  IT WAS RAISED THIS

08:48AM 21  MORNING.  WE'LL GIVE IT SOME THOUGHT AND WE'LL CONSIDER IT.

08:48AM 22       OF COURSE IT'S PART OF THE REASON WHY OUR SYSTEM ALLOWS

08:49AM 23  THE GOVERNMENT A REBUTTAL CASE, WHICH IS SOMETHING THAT THE

08:49AM 24  DEFENSE DOES NOT HAVE.

08:49AM 25       SO, YOU KNOW, TO THE EXTENT THAT THAT BECOMES AN ISSUE,

5889

08:49AM 1        THEY DO HAVE THAT OPPORTUNITY IN REBUTTAL.

08:49AM 2            BUT WE UNDERSTAND THE COMMENTS OF THE COURT.  WE RESPECT

08:49AM 3    MR. SCHENK'S INQUIRY AND THE NOTICE, AND WE'LL BE IN A POSITION

08:49AM 4    TO ADVISE THEM THAT BY 4:00 O'CLOCK TOMORROW.

08:49AM 5            THE COURT:  OKAY.  GOOD.

08:49AM 6        MR. SCHENK?

08:49AM 7            MR. SCHENK:  NOTHING FURTHER ON THAT ISSUE.

08:49AM 8        THE OTHER VERY BRIEF ISSUE IS THAT THE FIRST WITNESS IN

08:49AM 9    TRIAL WAS DANISE YAM.  THE GOVERNMENT HAS ONE EMAIL THAT IT

08:49AM 10   WANTS TO ADMIT.  WE ASKED THE DEFENSE IF THEY WOULD STIPULATE

08:49AM 11   TO THE ADMISSION.  OBVIOUSLY IT'S THEIR PREROGATIVE TO GIVE US

08:49AM 12   A YES OR NO, THEY ARE NOT INTERESTED IN STIPULATING.

08:49AM 13       AND SO WE WILL BE RECALLING MS. YAM TO ADMIT THIS EMAIL,

08:49AM 14   AND I JUST WANTED TO GIVE THE COURT NOTICE OF IT.

08:49AM 15           THE COURT:  OKAY.

08:49AM 16       MS. TREFZ, GOOD MORNING.

08:49AM 17           MS. TREFZ:  THE DEFENSE IS FINE WITH MS. YAM BEING

08:50AM 18   RECALLED FOR THIS LIMITED PURPOSE.

08:50AM 19       IT'S TRUE THAT WE WOULD NOT STIPULATE TO THE ADMISSION OF

08:50AM 20   THIS EMAIL.

08:50AM 21           THE COURT:  OKAY.  THAT'S FINE.

08:50AM 22       DO YOU HAVE ANY IDEA WHEN THAT IS GOING TO BE?

08:50AM 23           MR. SCHENK:  NEXT WEEK.

08:50AM 24           THE COURT:  OKAY.  I SEE.  SO THAT SHOULD BE A

08:50AM 25   BRIEF -- THE BINDER WILL BE THIN ON THIS --

5890

| | | |
|---|---|---|
| 08:50AM | 1 | MS. TREFZ:  THERE'S NO GUARANTEE. |
| 08:50AM | 2 | THE COURT:  FAIR ENOUGH.  THANK YOU. |
| 08:50AM | 3 | MR. SCHENK:  THANK YOU. |
| 08:50AM | 4 | THE COURT:  AND I'M JUST HAPPY TO TELL YOU THAT OUR |
| 08:50AM | 5 | I.T. PEOPLE WORKED HERE, I THINK I GOT AN EMAIL PAST 7:30 THAT |
| 08:50AM | 6 | THEY HAD WORKED OUT THE BUGS IN THE SYSTEM. |
| 08:50AM | 7 | SO KNOCKING ON WOOD, I HOPE FOR A PRODUCTIVE DAY TODAY. |
| 08:50AM | 8 | OKAY.  THANK YOU. |
| 08:50AM | 9 | MR. WADE:  WE'RE VERY APPRECIATIVE.  THANK YOU, |
| 08:50AM | 10 | YOUR HONOR. |
| 08:50AM | 11 | THE COURT:  GREAT. |
| 08:50AM | 12 | THE CLERK:  COURT IS IN RECESS. |
| 08:50AM | 13 | (RECESS FROM 8:50 A.M. UNTIL 9:03 A.M.) |
| 09:03AM | 14 | (JURY IN AT 9:03 A.M.) |
| 09:03AM | 15 | THE COURT:  PLEASE BE SEATED.  THANK YOU.  GOOD |
| 09:03AM | 16 | MORNING. |
| 09:03AM | 17 | WE ARE BACK ON THE RECORD IN THE HOLMES MATTER.  ALL |
| 09:03AM | 18 | COUNSEL ARE PRESENT, MS. HOLMES IS PRESENT. |
| 09:03AM | 19 | OUR JURY IS PRESENT. |
| 09:03AM | 20 | LET'S -- IS OUR WITNESS HERE, DR. DAS?  YES. |
| 09:03AM | 21 | MR. WADE, YOU HAVE ADDITIONAL QUESTIONS I THINK? |
| 09:03AM | 22 | MR. WADE:  I DO, YOUR HONOR.  BUT DO YOU WANT TO |
| 09:03AM | 23 | MAKE YOUR MORNING INQUIRY? |
| 09:03AM | 24 | THE COURT:  I DO, YES, I DO. |
| 09:03AM | 25 | GOOD MORNING, DR. DAS. |

DAS CROSS BY MR. WADE (RES.)                                    5891

| | | |
|---|---|---|
| 09:03AM | 1 | THE WITNESS:  GOOD MORNING. |
| 09:04AM | 2 | THE COURT:  GOOD MORNING, SIR. |
| 09:04AM | 3 | I'LL ASK YOU TO STATE YOUR NAME AGAIN.  YOU CAN TAKE YOUR |
| 09:04AM | 4 | MASK OFF IF YOU WOULD LIKE. |
| 09:04AM | 5 | THE WITNESS:  THANK YOU, YOUR HONOR. |
| 09:04AM | 6 | KINGSHUK DAS. |
| 09:04AM | 7 | THE COURT:  THANK YOU.  I'LL REMIND YOU YOU'RE STILL |
| 09:04AM | 8 | UNDER OATH, SIR. |
| 09:04AM | 9 | **(GOVERNMENT'S WITNESS, KINGSHUK DAS, WAS PREVIOUSLY** |
| 09:04AM | 10 | **SWORN.)** |
| 09:04AM | 11 | THE COURT:  AND MR. WADE, BEFORE YOU BEGIN, LADIES |
| 09:04AM | 12 | AND GENTLEMEN, GOOD MORNING.  I JUST WANT TO ASK YOU THAT |
| 09:04AM | 13 | QUESTION.  OVERNIGHT, SINCE YOU LEFT HERE, DID ANY OF YOU HAVE |
| 09:04AM | 14 | OCCASION TO COME ACROSS, DISCUSS, READ, WATCH OR SEE ANYTHING |
| 09:04AM | 15 | TO DO ABOUT THIS CASE IN ANY OTHER MANNER? |
| 09:04AM | 16 | IF SO, PLEASE RAISE YOUR HAND. |
| 09:04AM | 17 | I SEE NO HANDS. |
| 09:04AM | 18 | THANK YOU VERY MUCH. |
| 09:04AM | 19 | MR. WADE. |
| 09:04AM | 20 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 09:04AM | 21 | **CROSS-EXAMINATION (RESUMED)** |
| 09:04AM | 22 | BY MR. WADE: |
| 09:04AM | 23 | Q.  GOOD MORNING, DR. DAS. |
| 09:04AM | 24 | A.  GOOD MORNING. |
| 09:04AM | 25 | Q.  I HAVE SOME QUESTIONS FOR YOU THIS MORNING. |

DAS CROSS BY MR. WADE (RES.)                                5892

09:04AM   1        I WOULD LIKE TO START WHERE YOU STARTED, WHICH WAS WHEN

09:04AM   2   YOU WERE JOINING THE COMPANY IN DECEMBER OF 2015.  I'D LIKE TO

09:05AM   3   ASK YOU SOME QUESTIONS ABOUT YOUR QUALIFICATIONS FOLLOWING UP

09:05AM   4   ON SOME OF THE QUESTIONS THAT THE GOVERNMENT ASKED.  OKAY?

09:05AM   5   A.   YES.

09:05AM   6   Q.   COULD I TURN YOUR ATTENTION --

09:05AM   7        ACTUALLY, YOUR HONOR, MAY I APPROACH?

09:05AM   8             THE COURT:  YES.

09:05AM   9   BY MR. WADE:

09:05AM   10  Q.   (HANDING.)

09:05AM   11  A.   THANK YOU.

09:05AM   12  Q.   DR. DAS, I'VE HANDED YOU A BINDER OF DOCUMENTS THAT I MAY

09:05AM   13  REFER TO DURING THE EXAMINATION.  YOU'LL NOTICE THAT THE

09:05AM   14  EXHIBITS ARE NUMBERED ON THE SIDE, AND SO I'LL CALL ATTENTION

09:05AM   15  TO THEM AS WE'RE ASKING QUESTIONS.  OKAY?

09:05AM   16  A.   YES.

09:05AM   17  Q.   THE FIRST EXHIBIT I'D LIKE TO DRAW YOUR ATTENTION TO IS

09:05AM   18  EXHIBIT 10290.

09:05AM   19  A.   YES.

09:05AM   20  Q.   AND DO YOU RECOGNIZE THIS TO BE YOUR RESUME AS OF 2015 AT

09:06AM   21  THE TIME THAT YOU WERE APPLYING FOR THE POSITION AT THERANOS?

09:06AM   22  A.   YES.

09:06AM   23  Q.   AND DO YOU UNDERSTAND ONE OF THE RESPONSIBILITIES UNDER

09:06AM   24  CLIA IS FOR A LABORATORY TO LOG INFORMATION RELATING TO THE

09:06AM   25  QUALIFICATIONS OF THEIR PERSONNEL?  YOU'RE AWARE OF THAT?

DAS CROSS BY MR. WADE (RES.)                                              5893

| | | |
|---|---|---|
| 09:06AM | 1 | A.   YES. |
| 09:06AM | 2 | Q.   AND TO DOCUMENT THAT? |
| 09:06AM | 3 | A.   YES. |
| 09:06AM | 4 | Q.   AND THAT'S FREQUENTLY DONE BY PUTTING A COPY OF THE RESUME |
| 09:06AM | 5 | AND OTHER CERTIFICATIONS AND THE LIKE IN THE FILES; IS THAT |
| 09:06AM | 6 | RIGHT? |
| 09:06AM | 7 | A.   YES. |
| 09:06AM | 8 | MR. WADE:  I MOVE THE ADMISSION OF 10290. |
| 09:06AM | 9 | MR. LEACH:  NO OBJECTION, YOUR HONOR. |
| 09:06AM | 10 | THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED. |
| 09:06AM | 11 | (DEFENDANT'S EXHIBIT 10290 WAS RECEIVED IN EVIDENCE.) |
| 09:06AM | 12 | BY MR. WADE: |
| 09:06AM | 13 | Q.   THE GOVERNMENT YESTERDAY ASKED YOU SOME QUESTIONS ABOUT |
| 09:06AM | 14 | YOUR TRAINING AND BACKGROUND, AND I'D JUST LIKE TO ASK A FEW |
| 09:06AM | 15 | MORE BASED ON THE RESUME. |
| 09:06AM | 16 | LET ME START WITH THE QUESTION THE GOVERNMENT ASKED.  YOU |
| 09:07AM | 17 | MENTIONED YOU WERE BOARD CERTIFIED. |
| 09:07AM | 18 | DO YOU RECALL THAT? |
| 09:07AM | 19 | A.   YES. |
| 09:07AM | 20 | Q.   AND I THINK YOU SAID YOU WERE BOARD CERTIFIED IN CLINICAL |
| 09:07AM | 21 | PATHOLOGY. |
| 09:07AM | 22 | A.   YES. |
| 09:07AM | 23 | Q.   AND WHAT DOES BOARD CERTIFICATION MEAN? |
| 09:07AM | 24 | A.   IT MEANS YOU'VE MET THE REQUIREMENTS TO TAKE A CERTAIN |
| 09:07AM | 25 | EXAMINATION, IN THIS CASE CLINICAL PATHOLOGY, SUPPLIED BY THE |

5894

DAS CROSS BY MR. WADE (RES.)

09:07AM  1    AMERICAN BOARD OF PATHOLOGY.  SO YOU HAVE TO MEET THEIR

09:07AM  2    TRAINING REQUIREMENTS FOR THE EXAMINATION, AND THEN YOU HAVE TO

09:07AM  3    PASS THE EXAMINATION, AND THEREAFTER YOU HAVE CERTAIN

09:07AM  4    REQUIREMENTS EVERY TWO YEARS THAT YOU NEED TO MAKE IN ORDER TO

09:07AM  5    MAINTAIN YOUR CERTIFICATION.

09:07AM  6    Q.   ONGOING TRAINING REQUIREMENTS AND THE LIKE?

09:07AM  7    A.   YES.

09:07AM  8    Q.   AND SO IF YOU MEET THE REQUIREMENTS TO BE ABLE TO SIT FOR

09:07AM  9    THE EXAMINATION, AND THEN YOU PASS THE EXAMINATION, IS THAT --

09:07AM  10   IS IT FAIR TO SAY THAT THE CERTIFICATION IS MEANT TO SUGGEST A

09:07AM  11   PARTICULAR EXPERTISE IN AN AREA?

09:07AM  12   A.   YES.

09:07AM  13   Q.   OKAY.  AND YOUR PARTICULAR EXPERTISE WAS IN CLINICAL

09:07AM  14   PATHOLOGY?

09:07AM  15   A.   YES.

09:07AM  16   Q.   WHICH RELATES FUNDAMENTALLY TO THE OPERATION OF A CLINICAL

09:07AM  17   LABORATORY; CORRECT?

09:08AM  18   A.   YES.

09:08AM  19   Q.   OKAY.  AND YOU TESTIFIED -- IF I CAN DRAW YOUR ATTENTION

09:08AM  20   TO THE TOP UNDER EDUCATION, YOU TESTIFIED YESTERDAY AS TO

09:08AM  21   NUMEROUS RESIDENCIES AND FELLOWSHIPS THAT YOU DID IN YOUR

09:08AM  22   TRAINING; IS THAT CORRECT?

09:08AM  23   A.   YES.

09:08AM  24   Q.   AND YOU -- I BELIEVE MR. LEACH MENTIONED YOU SPENT TIME

09:08AM  25   BOTH AS A TROJAN AND A BRUIN.

DAS CROSS BY MR. WADE (RES.)                                    5895

```
09:08AM   1              DO YOU RECALL THAT?

09:08AM   2       A.   I DO.

09:08AM   3       Q.   AND IN ADDITION TO THAT, YOU HAD -- YOU DID SOME

09:08AM   4       FELLOWSHIPS WITH THE CLEVELAND CLINIC AS WELL?

09:08AM   5       A.   THAT WAS PRIOR TO RESIDENCY, YES.

09:08AM   6       Q.   THAT WAS PRIOR TO YOUR RESIDENCY.

09:08AM   7              AND THOSE FELLOWSHIPS FOCUSSED -- IN PARTICULAR, ONE OF

09:08AM   8       THEM FOCUSSED ON MOLECULAR PATHOLOGY; IS THAT RIGHT?

09:08AM   9       A.   YES.

09:08AM  10       Q.   AND YOU HAD A PARTICULAR AREA OF FOCUS WITH RESPECT TO

09:09AM  11       MOLECULAR PATHOLOGY; IS THAT CORRECT?

09:09AM  12       A.   YES.

09:09AM  13       Q.   AND A PARTICULAR AREA OF EXPERTISE -- THAT WAS A

09:09AM  14       PARTICULAR AREA OF EXPERTISE FOR YOU.

09:09AM  15              IS THAT FAIR?

09:09AM  16       A.   YES.

09:09AM  17       Q.   OKAY.  AND LET'S GO TO UNDER THE CURRENT PROFESSIONAL

09:09AM  18       EXPERIENCE.

09:09AM  19              YOU TALKED A LITTLE BIT, I THINK SOMEWHAT HUMBLY, ABOUT

09:09AM  20       THE FACT THAT YOU WERE A PROFESSOR AT UCLA AS WELL.

09:09AM  21              DO YOU RECALL THAT?

09:09AM  22       A.   YES.

09:09AM  23       Q.   IN FACT, YOU WERE A SUCCESSFUL PROFESSOR.  YOU HAD WON A

09:09AM  24       NUMBER OF AWARDS AND THE LIKE WHILE YOU WERE THERE; CORRECT?

09:09AM  25       A.   YES.
```

DAS CROSS BY MR. WADE (RES.)

| | | |
|---|---|---|
| 09:09AM | 1 | Q.   AND IN ADDITION TO THE WORK THAT YOU WERE DOING THERE AS |
| 09:09AM | 2 | TEACHING, YOU WERE ALSO WORKING IN THE CLINICAL LABORATORIES AT |
| 09:09AM | 3 | UCLA; RIGHT? |
| 09:09AM | 4 | A.   YES. |
| 09:09AM | 5 | Q.   AND IS IT FAIR TO SAY THAT UCLA IS A PREMIER INSTITUTION |
| 09:09AM | 6 | ON THE WEST COAST? |
| 09:09AM | 7 | A.   YES. |
| 09:09AM | 8 | Q.   I -- IN ADDITION TO THAT WORK THAT YOU DID AT UCLA, YOU |
| 09:10AM | 9 | ALSO SERVED AS A CLINICAL CONSULTANT FOR A NUMBER OF TECHNOLOGY |
| 09:10AM | 10 | COMPANIES; IS THAT RIGHT? |
| 09:10AM | 11 | A.   YES. |
| 09:10AM | 12 | Q.   AND YOU ACTUALLY HAD A PARTICULAR FOCUS IN LABORATORY |
| 09:10AM | 13 | MEDICINE AND HOW IT RELATED TO TECHNOLOGY; RIGHT? |
| 09:10AM | 14 | A.   YES. |
| 09:10AM | 15 | Q.   AND IF WE CAN GO AND JUST LOOK AT THE BOTTOM OF YOUR |
| 09:10AM | 16 | RESUME, WHICH WE'RE DISPLAYING ON THE SCREEN, THIS IDENTIFIES A |
| 09:10AM | 17 | NUMBER OF DIFFERENT ENTITIES FOR WHOM YOU WERE SERVING IN AN |
| 09:10AM | 18 | ADVISORY CAPACITY WITH RESPECT TO CERTAIN NOVEL TECHNOLOGIES; |
| 09:10AM | 19 | IS THAT RIGHT? |
| 09:10AM | 20 | A.   TO SOME EXTENT, YES. |
| 09:10AM | 21 | Q.   AND IF WE JUST CONTINUE UP, IT CAN BE INCLUSIVE OF THE |
| 09:10AM | 22 | OTHER EXPERIENCES THAT YOU HAD THERE, AND JUST PUT THEM UP |
| 09:11AM | 23 | TOGETHER, THERE ARE ACTUALLY A NUMBER OF DIFFERENT TECHNOLOGY |
| 09:11AM | 24 | COMPANIES THAT YOU WERE PROVIDING CONSULTING WORK FOR WITH |
| 09:11AM | 25 | RESPECT TO LABORATORY MEDICINE AND TECHNOLOGY ISSUES; CORRECT? |

5897

DAS CROSS BY MR. WADE (RES.)

09:11AM  1    A.   YES.

09:11AM  2    Q.   OKAY.  AND IS IT FAIR TO SAY THIS BECAME AN AREA OF GREAT

09:11AM  3    INTEREST FOR YOU?

09:11AM  4    A.   I BELIEVE SO, YES.

09:11AM  5    Q.   AND WAS, WAS THE INTERSECTION OF LABORATORY MEDICINE AND

09:11AM  6    TECHNOLOGY ULTIMATELY ONE OF THE REASONS THAT YOU BECAME

09:11AM  7    ATTRACTED TO WORKING AT THERANOS?

09:11AM  8    A.   YES.

09:11AM  9    Q.   OKAY.  THE -- AND I WON'T GO THROUGH THEM LINE BY LINE,

09:11AM 10    BUT IN ADDITION TO ALL OF THIS OTHER WORK THAT YOU DO, YOU SEEM

09:11AM 11    TO FIND TIME TO WRITE A NUMBER OF RESEARCH PAPERS THAT WERE

09:11AM 12    PEER REVIEWED; IS THAT RIGHT?

09:11AM 13    A.   YES.

09:11AM 14    Q.   AND WRITING PEER REVIEWED RESEARCH PAPERS IN ACADEMIC

09:11AM 15    WORLDS IS SOMETHING THAT CONNOTES A LEVEL OF PRESTIGE.

09:11AM 16         IS THAT FAIR TO SAY?

09:11AM 17    A.   YES.

09:12AM 18    Q.   AND I BELIEVE AS OF THIS DATE YOU HAD PUBLISHED, WAS IT

09:12AM 19    MAYBE APPROXIMATELY 15 RESEARCH PAPERS THAT WERE PEER REVIEWED?

09:12AM 20    A.   YES.

09:12AM 21    Q.   AND WOULD YOU, AT THE TIME YOU WERE APPLYING TO THERANOS,

09:12AM 22    CONSIDERED YOURSELF TO BE A PRETTY THOROUGH SCIENTIST?

09:12AM 23    A.   IF YOU COULD PLEASE CLARIFY.

09:12AM 24    Q.   SURE.  WHEN YOU RESEARCHED ISSUES AND CAME TO CONCLUSIONS,

09:12AM 25    DID YOU LIKE TO DO THOROUGH AND COMPREHENSIVE RESEARCH BEFORE

DAS CROSS BY MR. WADE (RES.)                                    5898

09:12AM   1    YOU CAME TO A CONCLUSION?

09:12AM   2    A.   YES.

09:12AM   3    Q.   AND WERE YOU INCLINED TO DIG IN DEEPLY ON WHATEVER ISSUE

09:12AM   4    YOU WERE CONSIDERING AND UNDERSTAND THE RELEVANT FACTS BEFORE

09:12AM   5    YOU REACHED CONCLUSIONS?

09:12AM   6    A.   YES.

09:12AM   7    Q.   AND WAS THAT THE GENERAL APPROACH WITH RESPECT TO SCIENCE

09:12AM   8    THAT YOU BROUGHT TO THERANOS?

09:12AM   9    A.   YES.

09:12AM   10   Q.   OKAY.  AND IF WE CAN GO -- DO YOU RECALL YESTERDAY WE

09:13AM   11   TALKED ABOUT HOW DR. HELFEND HAD COME ON BEFORE YOU JOINED THE

09:13AM   12   COMPANY TO SERVE ON AN INTERIM BASIS AS THE LAB DIRECTOR.

09:13AM   13        DO YOU RECALL THAT?

09:13AM   14   A.   YES.

09:13AM   15   Q.   AND COULD WE TAKE A LOOK AT 10563 --

09:13AM   16   A.   SURE.

09:13AM   17   Q.   -- WHICH I DON'T BELIEVE IS IN YOUR BINDER?

09:13AM   18   A.   I DON'T SEE IT HERE.

09:13AM   19   Q.   BUT I WILL PASS THAT ONE UP, DOCTOR.

09:13AM   20        MAY I APPROACH, YOUR HONOR?

09:13AM   21            THE COURT:  YES.

09:13AM   22   BY MR. WADE:

09:13AM   23   Q.   (HANDING.)

09:13AM   24   A.   THANK YOU.

09:13AM   25   Q.   AND DO YOU RECOGNIZE 10563 AS A CALIFORNIA DEPARTMENT OF

DAS CROSS BY MR. WADE (RES.)

| | | |
|---|---|---|
| 09:14AM | 1 | PUBLIC HEALTH FORM THAT PROVIDES NOTIFICATION OF A LAB CHANGE? |
| 09:14AM | 2 | A.   YES. |
| 09:14AM | 3 | Q.   AND YOU KNOW, BASED UPON YOUR WORK IN LABORATORIES, THAT |
| 09:14AM | 4 | THIS IS THE TYPE OF PAPERWORK THAT IS FILED WITH LABORATORY |
| 09:14AM | 5 | AUTHORITIES AT THE TIME THAT, FOR EXAMPLE, A LAB DIRECTOR IS |
| 09:14AM | 6 | ADDED TO WORK AT A COMPANY; IS THAT RIGHT? |
| 09:14AM | 7 | A.   YES. |
| 09:14AM | 8 | Q.   AND THIS PARTICULAR, THIS PARTICULAR NOTIFICATION OF |
| 09:14AM | 9 | LABORATORY CHANGE RELATES TO THE ADDITION OF DR. HELFEND AS A |
| 09:14AM | 10 | LAB DIRECTOR; CORRECT? |
| 09:14AM | 11 | A.   YES. |
| 09:14AM | 12 | MR. WADE:  MOVE THE ADMISSION OF 10563. |
| 09:14AM | 13 | MR. LEACH:  NO OBJECTION. |
| 09:14AM | 14 | THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED. |
| 09:14AM | 15 | (DEFENDANT'S EXHIBIT 10563 WAS RECEIVED IN EVIDENCE.) |
| 09:14AM | 16 | BY MR. WADE: |
| 09:14AM | 17 | Q.   AND I'LL JUST DRAW YOUR ATTENTION TO THE BOTTOM HALF OF |
| 09:15AM | 18 | THE PAGE.  THIS NOTES THAT DR. HELFEND -- WHO I GUESS IS AN |
| 09:15AM | 19 | M.D. AND A PH.D.; RIGHT? |
| 09:15AM | 20 | A.   YES. |
| 09:15AM | 21 | Q.   AND SHE WAS BEING ADDED AS THE CO-DIRECTOR OF THE LAB. |
| 09:15AM | 22 | DO YOU SEE THAT? |
| 09:15AM | 23 | A.   YES. |
| 09:15AM | 24 | Q.   BUT NOT AS THE CLIA DIRECTOR AT THIS TIME.  SHE WAS JUST |
| 09:15AM | 25 | ADDED AS A SECONDARY LAB DIRECTOR TO WORK ALONGSIDE THE CLIA |

DAS CROSS BY MR. WADE (RES.)                                          5900

09:15AM    1    LAB DIRECTOR.

09:15AM    2         DO YOU RECALL THAT?

09:15AM    3    A.   YES.

09:15AM    4    Q.   AND AROUND THIS TIME IN MID-DECEMBER, YOU STARTED ON A

09:15AM    5    PART-TIME BASIS AND YOU WERE ADDED AS THE CLIA LAB DIRECTOR FOR

09:15AM    6    THERANOS; CORRECT?

09:15AM    7    A.   YES.

09:15AM    8    Q.   AND ALTHOUGH YOU CAN ONLY SERVED ON A PART-TIME BASIS

09:15AM    9    INITIALLY, AS YOU WRAPPED UP YOUR WORK AT UCLA, YOU KNEW THAT

09:15AM   10    DR. HELFEND AND A TEAM OF OTHER PEOPLE WERE INVOLVED IN DIGGING

09:16AM   11    INTO ISSUES AT THERANOS; CORRECT?

09:16AM   12    A.   YES.

09:16AM   13    Q.   AND THAT GAVE YOU COMFORT THAT EVERYTHING WAS BEING

09:16AM   14    ADDRESSED ADEQUATELY; CORRECT?

09:16AM   15    A.   YES.

09:16AM   16    Q.   AND I THINK YOU TESTIFIED A LITTLE BIT YESTERDAY ABOUT THE

09:16AM   17    FACT THAT YOU WERE INTERVIEWED FOR YOUR POSITION AT THERANOS BY

09:16AM   18    MS. HOLMES.

09:16AM   19         DO YOU RECALL THAT?

09:16AM   20    A.   YES.

09:16AM   21    Q.   AND THAT WAS 2015, EARLY DECEMBER?

09:16AM   22    A.   YES.

09:16AM   23    Q.   AND LET'S TAKE A LOOK AT 10634, WHICH SHOULD BE IN YOUR

09:16AM   24    BINDER.

09:16AM   25    A.   OKAY.

DAS CROSS BY MR. WADE (RES.)                                    5901

09:16AM  1    Q.   AND DO YOU RECOGNIZE THIS TO BE CORRESPONDENCE WITH

09:16AM  2    MS. HOLMES FOLLOWING UP ON THE INTERVIEW THAT YOU HAD WITH HER

09:17AM  3    IN EARLY DECEMBER?

09:17AM  4    A.   YES.

09:17AM  5              MR. WADE:  MOVE THE ADMISSION OF 10634.

09:17AM  6              MR. LEACH:  YOUR HONOR, NO OBJECTION TO THE BOTTOM

09:17AM  7    PORTION OF 10634.  THE RESPONSE IS HEARSAY.

09:17AM  8         (PAUSE IN PROCEEDINGS.)

09:17AM  9              THE COURT:  MR. WADE?

09:17AM  10             MR. WADE:  I THINK THE RESPONSE IS RELEVANT TO THIS

09:17AM  11   WITNESS'S UNDERSTANDING OF THE ENGAGEMENT AND CONDITIONS UNDER

09:17AM  12   WHICH HE WAS JOINING THE COMPANY.  HE REPORTED DIRECTLY TO

09:17AM  13   MS. HOLMES, AND THIS WAS AN INTERACTION THAT RELATED TO THAT.

09:18AM  14        I'M NOT OFFERING THAT TOP PART FOR THE TRUTH OF THE MATTER

09:18AM  15   ASSERTED WITHIN THE DOCUMENT.

09:18AM  16             THE COURT:  WHAT IS THE RELEVANCE?

09:18AM  17             MR. WADE:  I'M SORRY?

09:18AM  18             THE COURT:  WHAT IS THE RELEVANCE?

09:18AM  19             MR. WADE:  THE RELEVANCE IS THE CIRCUMSTANCES UNDER

09:18AM  20   WHICH HE WAS BEING ASKED TO JOIN THE COMPANY WITH THE SUPPORT

09:18AM  21   OF --

09:18AM  22             THE COURT:  ALL RIGHT.  I'LL ADMIT THIS, 10634.

09:18AM  23        THE TOP HALF, LADIES AND GENTLEMEN, YOU'LL SEE DISPLAYED

09:18AM  24   IN JUST A MOMENT.  IT'S THE RESPONSE SENT SUNDAY, JANUARY 3RD,

09:18AM  25   2016 AT 5:18 P.M., THAT IS NOT OFFERED FOR THE TRUTH OF THE

DAS CROSS BY MR. WADE (RES.)                                      5902

| | | |
|---|---|---|
| 09:18AM | 1 | MATTER ASSERTED.  IT'S NOT OFFERED FOR THE TRUTH OF THE |
| 09:18AM | 2 | STATEMENTS ASSERTED THERE, BUT ONLY TO SHOW CONTEXT TO THE |
| 09:18AM | 3 | ORIGINAL EMAIL. |
| 09:18AM | 4 | ALL RIGHT.  IT'S ADMITTED WITH THOSE RESTRICTIONS.  IT CAN |
| 09:19AM | 5 | BE DISPLAYED. |
| 09:19AM | 6 | MR. WADE:  THANK YOU, YOUR HONOR. |
| 09:19AM | 7 | (DEFENDANT'S EXHIBIT 10634 WAS RECEIVED IN EVIDENCE.) |
| 09:19AM | 8 | MR. WADE:  IF WE CAN FOCUS ON THE FIRST PARAGRAPH IN |
| 09:19AM | 9 | THE BOTTOM EMAIL. |
| 09:19AM | 10 | Q.  AND DO YOU SEE THIS WAS SENT DECEMBER 7TH, 2015? |
| 09:19AM | 11 | AND YOU THANKED HER FOR THE OPPORTUNITY TO MEET WITH HER |
| 09:19AM | 12 | OVER THE WEEKEND. |
| 09:19AM | 13 | DO YOU SEE THAT? |
| 09:19AM | 14 | A.  YES. |
| 09:19AM | 15 | Q.  AND THAT WAS, IN PART, FOR LOGISTICAL REASONS THAT YOU ALL |
| 09:19AM | 16 | HAD TO HAVE YOUR INTERVIEW OVER THE WEEKEND; CORRECT? |
| 09:19AM | 17 | A.  YES. |
| 09:19AM | 18 | Q.  AND DID YOU GO UP TO PALO ALTO FOR THAT MEETING? |
| 09:19AM | 19 | A.  I DID. |
| 09:19AM | 20 | Q.  OKAY.  AND YOU NOTE IN THAT LINE THAT "I WAS SO IMPRESSED |
| 09:19AM | 21 | BY THE VISION OF WHAT YOU'VE ACCOMPLISHED ALREADY, AND YOUR |
| 09:19AM | 22 | PLANS FOR THE FUTURE." |
| 09:19AM | 23 | DO YOU SEE THAT? |
| 09:19AM | 24 | A.  YES. |
| 09:19AM | 25 | Q.  AND CAN YOU TELL US A LITTLE BIT WHAT YOU MEANT BY THAT? |

5903
DAS CROSS BY MR. WADE (RES.)

09:19AM 1    A.   THAT WAS BASED ON A DISCUSSION THAT WE HAD DURING THE

09:19AM 2    INTERVIEW.

09:19AM 3    Q.   AND WHAT ASPECTS -- IN THAT INTERVIEW, SHE WAS

09:19AM 4    COMMUNICATING TO YOU WHAT SHE WANTED TO DO WITH THE COMPANY; IS

09:20AM 5    THAT RIGHT?

09:20AM 6    A.   YES.  I DON'T RECALL THE SPECIFICS, BUT YES.

09:20AM 7    Q.   YOU DON'T RECALL THE SPECIFICS?

09:20AM 8    A.   NO.

09:20AM 9    Q.   AND DO YOU RECALL ANYTHING ABOUT THAT DISCUSSION?

09:20AM 10   A.   YES.

09:20AM 11   Q.   AND WHAT DO YOU RECALL?

09:20AM 12   A.   I REMEMBER IT BEING A VERY POSITIVE MEETING.  I REMEMBER

09:20AM 13   IT BEING VERY CHARISMATIC.  IT WAS A VERY POSITIVE MEETING.

09:20AM 14   Q.   AND AS A RESULT OF THIS, YOU WERE, YOU WERE EXCITED ABOUT

09:20AM 15   THE POSSIBILITY OF GOING AND JOINING THIS ENDEAVOR; IS THAT

09:20AM 16   RIGHT?

09:20AM 17   A.   YES.

09:20AM 18   Q.   AND IF YOU LOOK DOWN A COUPLE OF PARAGRAPHS TO THE FIRST

09:20AM 19   SENTENCE IN THE LAST PARAGRAPH, YOU ACTUALLY PRETTY QUICKLY

09:20AM 20   ACCEPTED THE POSITION AT THERANOS; CORRECT?

09:20AM 21   A.   YES.

09:20AM 22   Q.   AND YOU AGREED DURING THIS PERIOD TO START ON THE

09:20AM 23   PART-TIME BASIS ALMOST RIGHT AWAY WHILE YOU WERE WRAPPING UP

09:21AM 24   YOUR WORK AT UCLA; CORRECT?

09:21AM 25   A.   YES.

5904

DAS CROSS BY MR. WADE (RES.)

09:21AM   1    Q.   YOU WANTED TO BE RESPONSIBLE TO YOUR FORMER LAB AT UCLA

09:21AM   2    AND MAKE SURE EVERYTHING WAS COMPLETED THERE; CORRECT?

09:21AM   3    A.   YES.

09:21AM   4    Q.   OKAY.  AND IF WE CAN GO NEXT -- AND YOU TALKED A LITTLE

09:21AM   5    BIT ABOUT THAT CONTRACTING WORK DURING THAT TRANSITION PERIOD

09:21AM   6    AND HOW YOU SPENT -- YOU TRIED TO SPEND AT LEAST ONE DAY A WEEK

09:21AM   7    UP, UP AT THE FACILITY.

09:21AM   8         IS THAT RIGHT?

09:21AM   9    A.   YES.

09:21AM   10   Q.   AND YOU WERE OTHERWISE CONSULTING WITH THE COMPANY ON KIND

09:21AM   11   OF AN AS-NEEDED BASIS?

09:21AM   12   A.   YES.

09:21AM   13   Q.   OKAY.  LET'S JUST TAKE A QUICK LOOK AT 14159.

09:21AM   14   A.   OKAY.

09:21AM   15   Q.   AND DO YOU RECOGNIZE THIS TO BE AN INVOICE THAT SETS FORTH

09:22AM   16   THE CONSULTING SERVICES THAT YOU PROVIDED IN THAT PERIOD BEFORE

09:22AM   17   YOU BECAME THE FULL-TIME LAB DIRECTOR AT THERANOS?

09:22AM   18   A.   YES.

09:22AM   19          MR. WADE:  I MOVE THE ADMISSION OF 14159.

09:22AM   20          MR. LEACH:  NO OBJECTION, YOUR HONOR.

09:22AM   21          THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:22AM   22      (DEFENDANT'S EXHIBIT 14159 WAS RECEIVED IN EVIDENCE.)

09:22AM   23   BY MR. WADE:

09:22AM   24   Q.   AND I WON'T SPEND MUCH TIME ON THIS, BUT THIS JUST SETS

09:22AM   25   FORTH IN THAT TIME PERIOD EACH AND EVERY WEEK YOU TRIED TO GET

DAS CROSS BY MR. WADE (RES.)                                    5905

09:22AM   1    UP TO THE COMPANY TO DO ON-SITE CONSULTATION WORK FOR A FULL

09:22AM   2    DAY?

09:22AM   3    A.   YES.

09:22AM   4    Q.   AND YOU WOULD FLY UP FROM L.A. AND SPEND THE DAY AND THEN

09:22AM   5    GO BACK?

09:22AM   6    A.   YES.

09:22AM   7    Q.   AND THEN THERE'S ALSO ON THE BOTTOM, YOU SEE THERE ARE A

09:22AM   8    NUMBER OF REFERENCES TO PART-TIME REMOTE CONSULTATION.

09:22AM   9         DO YOU SEE THAT?

09:22AM  10    A.   YES.

09:22AM  11    Q.   AND THAT WAS -- THAT WORK WAS IN ADDITION TO THE WORK THAT

09:23AM  12    YOU WERE DOING WHERE YOU WOULD GO UP ONE DAY A WEEK; RIGHT?

09:23AM  13    A.   YES.

09:23AM  14    Q.   SO THERE WOULD BE TIMES WHERE YOU WOULD BE PULLED IN TO

09:23AM  15    ASK QUESTIONS OR CONSULT OR PROVIDE GUIDANCE WHILE YOU WERE

09:23AM  16    WORKING REMOTELY; IS THAT RIGHT?

09:23AM  17    A.   YES.

09:23AM  18    Q.   OKAY.  AND DO YOU RECALL THAT IN THIS TIME PERIOD, THE

09:23AM  19    GOVERNMENT -- OR THE COMPANY WAS ALSO IN THE PROCESS OF

09:23AM  20    CREATING A SCIENTIFIC ADVISORY BOARD?

09:23AM  21    A.   I DON'T RECALL THAT.

09:23AM  22    Q.   OKAY.  LET ME SEE IF I CAN REFRESH YOUR RECOLLECTION.

09:23AM  23         LET'S LOOK AT 10665.

09:24AM  24    A.   APOLOGIES, MR. WADE.  JUST A MOMENT.

09:24AM  25    Q.   NO APOLOGIES, DOCTOR.  TAKE WHATEVER TIME YOU NEED.

DAS CROSS BY MR. WADE (RES.)                                    5906

09:24AM  1      A.   COULD YOU REPEAT THAT NUMBER, PLEASE.

09:24AM  2      Q.   SURE.  IT'S 10665.

09:24AM  3      A.   10665.

09:24AM  4           OKAY.  THERE WE GO.

09:24AM  5      Q.   FEEL FREE TO TAKE THE TIME YOU NEED.  AND I'M JUST GOING

09:24AM  6      TO ASK A FEW QUESTIONS ABOUT THE DOCUMENT, BUT IF YOU JUST WANT

09:24AM  7      TO TAKE A FEW SECONDS AND FAMILIARIZE YOURSELF YOUR WITH THE

09:24AM  8      CONTENT GENERALLY.

09:25AM  9           (PAUSE IN PROCEEDINGS.)

09:25AM  10          THE WITNESS:  YES.  OKAY.

09:25AM  11     BY MR. WADE:

09:25AM  12     Q.   OKAY.  DOES THIS REFRESH YOUR RECOLLECTION THAT IN THIS

09:25AM  13     TIME PERIOD, THE COMPANY WAS CREATING A SCIENTIFIC REVIEW

09:25AM  14     COMMITTEE TO HELP ADVISE THE COMPANY?

09:25AM  15     A.   YES.

09:25AM  16     Q.   AND DO YOU RECALL THAT YOUR INPUT ON MEMBERSHIP RELATING

09:25AM  17     TO THAT COMMITTEE WAS SOLICITED?

09:25AM  18     A.   YES.

09:25AM  19          MR. WADE:  I WOULD MOVE THE ADMISSION OF 10665.

09:25AM  20          MR. LEACH:  NO OBJECTION, YOUR HONOR.

09:25AM  21          THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

09:25AM  22     (DEFENDANT'S EXHIBIT 10665 WAS RECEIVED IN EVIDENCE.)

09:26AM  23          MR. WADE:  IF WE CAN GO TO THE SECOND PAGE AND BLOW

09:26AM  24     UP THAT TOP -- YEAH, THE MIDDLE DOWN THROUGH NUMBER 1.

09:26AM  25          THANK YOU, MR. BENNETT.

DAS CROSS BY MR. WADE (RES.)                                    5907

09:26AM   1    Q.   AND THIS WAS AN EMAIL FROM DANIEL EDLIN.

09:26AM   2         DO YOU SEE THAT?

09:26AM   3    A.   YES.

09:26AM   4    Q.   AND THAT WAS SOMEONE WHO WORKED WITH MS. HOLMES?

09:26AM   5    A.   YES.

09:26AM   6    Q.   AND YOU SEE HERE THAT THERE WERE SOME NAMES BEING PROPOSED

09:26AM   7    FOR -- TO JOIN THIS SCIENCE REVIEW COMMITTEE.

09:26AM   8         DO YOU SEE THAT?

09:26AM   9    A.   YES.

09:26AM  10    Q.   AND IT SAYS HERE THAT BILL FOEGE HAD SUGGESTED THE

09:26AM  11    FOLLOWING THREE PEOPLE TO BE ADDED?

09:26AM  12    A.   YES.

09:26AM  13    Q.   AND DO YOU KNOW WHO BILL FOEGE IS?

09:26AM  14    A.   YES.

09:26AM  15    Q.   AND WHO IS HE?

09:26AM  16    A.   I DON'T REMEMBER HIS TITLE, BUT WE HAD MET AT ONE OF THE

09:26AM  17    ADVISORY BOARDS.

09:26AM  18    Q.   OKAY.  AND YOU RECALL THAT HE WAS THE FORMER HEAD OF THE

09:26AM  19    CDC PREVIOUSLY?

09:27AM  20    A.   I DO BELIEVE THAT.

09:27AM  21    Q.   AND HE WAS VIEWED AS A HIGHLY REPUTABLE PROFESSIONAL IN

09:27AM  22    THAT SPACE; IS THAT FAIR?

09:27AM  23    A.   YES.

09:27AM  24    Q.   INFECTIOUS DISEASE AND OTHER AREAS?

09:27AM  25    A.   YES.

DAS CROSS BY MR. WADE (RES.)                                      5908

09:27AM   1    Q.   AND HE WAS WORKING WITH THE COMPANY DURING THIS PERIOD?

09:27AM   2    A.   THAT'S WHAT I RECALL.

09:27AM   3    Q.   AND HE WAS RECOMMENDING SOME NAMES.  BUT YOUR FEEDBACK --

09:27AM   4    THE FEEDBACK FROM YOU WAS SOLICITED TO MAKE SURE THAT YOU WERE

09:27AM   5    COMFORTABLE WITH THE NAMES; CORRECT?

09:27AM   6    A.   YES.

09:27AM   7    Q.   OKAY.  AND DID YOU RECOGNIZE THE PEOPLE WHO ARE IDENTIFIED

09:27AM   8    IN THIS LIST?  LET'S START WITH MR. -- I GUESS IT'S

09:27AM   9    DR. TRISTRAM PARSLOW?

09:27AM   10   A.   NO.

09:27AM   11   Q.   YOU DIDN'T RECOGNIZE DR. PARSLOW?

09:27AM   12   A.   NO.

09:27AM   13   Q.   OKAY.  LET'S GO TO THE NEXT PAGE.

09:28AM   14        THIS IS DR. AHMED?  DID YOU RECOGNIZE DR. AHMED?

09:28AM   15   A.   NO.

09:28AM   16   Q.   AND LET'S GO TO THE NEXT PAGE.

09:28AM   17        DR. KESSLER?  DO YOU RECALL THAT?  DO YOU RECALL

09:28AM   18   DR. KESSLER?

09:28AM   19   A.   NO.

09:28AM   20   Q.   OKAY.  SO YOU WEREN'T PERSONALLY FAMILIAR WITH THE NAMES

09:28AM   21   WHO WERE RECOMMENDED BY DR. FOEGE?

09:28AM   22   A.   THAT'S CORRECT.

09:28AM   23   Q.   BUT DO YOU RECOGNIZE THEM, BASED UPON THEIR

09:28AM   24   QUALIFICATIONS, TO BE HIGHLY QUALIFIED PEOPLE IN THEIR FIELDS?

09:28AM   25   A.   YES.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Amy Mason Saharia
AMY MASON SAHARIA

April 17, 2023