No. 22-10312

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

---

## EXCERPTS OF RECORD
## VOL. XLI of LVII | ER-11633 to ER-11931

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

HOLMES CROSS BY MR. LEACH (RES.)                                    8067

12:39PM   1     A.   YES.

12:39PM   2     Q.   AND MR. BALWANI WROTE, "WE NEED TO COMMIT TO FOCUSSING AND

12:39PM   3     GETTING IN PARADISE."

12:39PM   4          DO YOU SEE THAT LANGUAGE?

12:39PM   5     A.   I DO.

12:39PM   6     Q.   "PRODUCT COMPANY.  WINNING."

12:39PM   7          THOSE WERE YOUR WORDS; RIGHT?

12:39PM   8     A.   YES.

12:39PM   9     Q.   LET'S GO TO PAGE 8, PLEASE.

12:39PM  10          IS IT ALSO THE CASE, MS. HOLMES, THAT MR. BALWANI SPEAKS

12:40PM  11     OPENLY TO YOU ABOUT PROBLEMS HE'S SEEING IN THE CLIA LAB?

12:40PM  12     A.   YES.

12:40PM  13     Q.   LET'S LOOK AT EXAMPLES OF THOSE.

12:40PM  14          DO YOU SEE THIS TEXT EXCHANGE FROM MAY OF 2012?

12:40PM  15     A.   I DO.

12:40PM  16     Q.   DO YOU SEE WHERE -- AND THIS 2012 TIME PERIOD, THIS IS

12:40PM  17     BEFORE THERANOS IS DOING ANY LDT'S IN THE CLIA LAB; IS THAT

12:40PM  18     FAIR?

12:40PM  19     A.   IT IS.

12:40PM  20     Q.   HE WROTE, "ARNE" -- THAT'S A REFERENCE TO DR. GELB?

12:40PM  21     A.   YES.

12:40PM  22     Q.   -- "CALLED JUST NOW.  FREAKING OUT BECAUSE DIANA" -- WHO

12:40PM  23     IS DIANA?

12:40PM  24     A.   I'M NOT SURE.  I'M JUST READING IT.

12:40PM  25     Q.   IS IT DIANA DUPUY?

HOLMES CROSS BY MR. LEACH (RES.)                                    8068

| | | |
|---|---|---|
| 12:40PM | 1 | A.   I THINK SO. |
| 12:40PM | 2 | Q.   -- "CAUGHT AN ERROR BY HOAI (AND ARNE) AND SHE BROUGHT A |
| 12:40PM | 3 | HUNTER LAB CONFIDENTIAL SOP TO HIM TO TELL HIM WHY SHE WAS |
| 12:40PM | 4 | RIGHT.  HE TOLD HER NEVER TO BRING ANY CONFIDENTIAL MATERIAL TO |
| 12:41PM | 5 | THE BUILDING AND WAS TELLING ME HE MADE A MISTAKE IN KEEPING |
| 12:41PM | 6 | HER." |
| 12:41PM | 7 | DO YOU SEE THAT MESSAGE? |
| 12:41PM | 8 | A.   I DO. |
| 12:41PM | 9 | Q.   "HOWEVER, THE ISSUE SHE BROUGHT UP WAS A SERIOUS ONE." |
| 12:41PM | 10 | DO YOU SEE THAT LANGUAGE? |
| 12:41PM | 11 | A.   YES. |
| 12:41PM | 12 | Q.   IS THIS AN EXAMPLE OF MR. BALWANI RAISING ISSUES THAT ARE |
| 12:41PM | 13 | GOING ON IN THE CLIA LAB WITH YOU? |
| 12:41PM | 14 | A.   YES. |
| 12:41PM | 15 | Q.   SPEAKING OPENLY WITH YOU ABOUT THAT? |
| 12:41PM | 16 | A.   YES. |
| 12:41PM | 17 | Q.   HE'S NOT HIDING ANYTHING FROM YOU HERE? |
| 12:41PM | 18 | A.   HE'S NOT. |
| 12:41PM | 19 | Q.   AND YOU UNDERSTOOD MR. BALWANI LARGELY CAME FROM A |
| 12:41PM | 20 | SOFTWARE BACKGROUND; CORRECT? |
| 12:41PM | 21 | A.   I DID. |
| 12:41PM | 22 | Q.   YOU KNEW HE WASN'T A PATHOLOGIST? |
| 12:41PM | 23 | A.   I DID. |
| 12:41PM | 24 | Q.   YOU KNEW HE WASN'T A MEDICAL DOCTOR? |
| 12:41PM | 25 | A.   I DID. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8069

12:41PM  1     Q.   OKAY.  YOU KNEW HE HAD NO EXPERIENCE RUNNING A CLINICAL

12:41PM  2     LAB; CORRECT?

12:41PM  3     A.   I DID.

12:41PM  4     Q.   YOU ADMIRED HIS BUSINESS ACUMEN FROM HIS SOFTWARE DAYS?

12:41PM  5     A.   I DID.

12:41PM  6     Q.   LET'S LOOK AT PAGES 14 TO 15, AND I DRAW YOUR ATTENTION TO

12:42PM  7     THE FIRST TEXT.

12:42PM  8          DO YOU SEE THE DATE NOVEMBER 20TH, 2013?

12:42PM  9     A.   I DO.

12:42PM 10     Q.   THIS IS A FEW MONTHS AFTER THERANOS HAS ANNOUNCED ITS

12:42PM 11     PARTNERSHIP WITH WALGREENS PUBLICLY?

12:42PM 12     A.   YES.

12:42PM 13     Q.   OKAY.  AND MR. BALWANI IS WRITING UP AT THE TOP, "BTW.

12:42PM 14     WHEN WE DO THE PATCH, CHEM8 OR CHEM14 IS THE MOST IMPORTANT AND

12:42PM 15     FIRST THING TO MONITOR."

12:42PM 16          DO YOU SEE THAT LANGUAGE?

12:42PM 17     A.   I DO.

12:42PM 18     Q.   AND THEN DOWN AT THE BOTTOM HE WROTE, "PISSING ME OFF WE

12:42PM 19     DON'T HAVE ANYONE MANAGING PSC, CTN PRODUCTION, CART

12:42PM 20     PRODUCTION, ELISA ASSAYS, TSH."

12:42PM 21          DO YOU SEE THAT LANGUAGE?

12:42PM 22     A.   I DO.

12:42PM 23     Q.   WHAT IS PSC?

12:42PM 24     A.   I THINK IT'S THE PATIENT SERVICE CENTER, OR WELLNESS

12:42PM 25     CENTERS.

12:42PM  1     Q.   AND CTN PRODUCTION, THAT'S A REFERENCE TO THE NANOTAINER

12:43PM  2     PRODUCTION?

12:43PM  3     A.   YES.

12:43PM  4     Q.   AND CART PRODUCTION, WHAT IS THAT?

12:43PM  5     A.   I'M ASSUMING IT'S CART PRODUCTION.

12:43PM  6     Q.   AND ELISA ASSAYS, THAT'S A REFERENCE TO THE IMMUNOASSAYS?

12:43PM  7     A.   YES.

12:43PM  8     Q.   AND THE TSH, THAT'S A REFERENCE TO ONE OF THE ASSAYS?

12:43PM  9     A.   EXACTLY, YES.

12:43PM 10     Q.   AND MR. BALWANI IS EXPRESSING FRUSTRATION ABOUT THE LACK

12:43PM 11     OF ANYONE MANAGING THESE ISSUES?

12:43PM 12     A.   YES, THAT'S WHAT HE'S SAYING.

12:43PM 13     Q.   HE'S SPEAKING OPENLY TO YOU ABOUT THAT?

12:43PM 14     A.   HE IS.

12:43PM 15     Q.   HE'S NOT HIDING ANYTHING FROM YOU HERE?

12:43PM 16     A.   NO.

12:43PM 17     Q.   LET'S LOOK AT THE NEXT PAGE, PAGE 15.

12:43PM 18          DO YOU SEE YOUR REPLY "I KNOW.

12:43PM 19          "RECRUITING.

12:43PM 20          "AND BETTER MANAGEMENT.

12:44PM 21          "FULL TIME JOB."

12:44PM 22     A.   YES.

12:44PM 23     Q.   YOU'RE CONCURRING WITH WHAT MR. BALWANI IS BRINGING TO

12:44PM 24     YOUR ATTENTION HERE?

12:44PM 25     A.   YES.

12:44PM   1    Q.   LET ME DRAW YOUR ATTENTION TO PAGES 23 THROUGH 25.

12:44PM   2         DO YOU SEE THE DATE NOVEMBER 19TH, 2014, MS. HOLMES?

12:44PM   3    A.   I DO, YES.

12:44PM   4    Q.   AND THIS IS RIGHT AROUND THE TIME THAT DR. ROSENDORFF IS

12:44PM   5    LEAVING THE COMPANY?

12:44PM   6    A.   YES.

12:44PM   7    Q.   AND MR. BALWANI IS WRITING TO YOU, "NEED TO FOCUS ON OPS.

12:44PM   8    GETTING HURT IN MARKET."

12:44PM   9         DO YOU SEE THAT LANGUAGE?

12:44PM   10   A.   I DO.

12:44PM   11   Q.   "CUSTOMER SERVICE SEEMS TO BE TERRIBLE.  EVERYONE

12:44PM   12   COMPLAINING."

12:44PM   13        AND YOU WRITE BACK, "YES.

12:45PM   14        "WE HAVE TO OWN THIS."

12:45PM   15        DID I READ THAT CORRECTLY?

12:45PM   16   A.   YOU DID.

12:45PM   17   Q.   "LAB, CUSTOMER SERVICE, TAT, ALL NEED DIRECTOR LEVEL

12:45PM   18   PEOPLE."

12:45PM   19        THAT'S WHAT MR. BALWANI CONVEYED TO YOU IN THIS

12:45PM   20   NOVEMBER 2014 TIME PERIOD; CORRECT?

12:45PM   21   A.   YES.

12:45PM   22   Q.   HE'S NOT HIDING THAT FROM YOU?

12:45PM   23   A.   HE'S NOT.

12:45PM   24   Q.   HE'S NOT CONCEALING THAT FROM YOU?

12:45PM   25   A.   NO.

HOLMES CROSS BY MR. LEACH (RES.)                                        8072

12:45PM   1     Q.   HE'S NOT MISLEADING YOU?

12:45PM   2     A.   HE'S DEFINITELY NOT HIDING ANYTHING FROM ME IN THIS TEXT.

12:45PM   3     Q.   OKAY.  AND IF WE CAN SCROLL DOWN EVEN FURTHER, PLEASE.

12:45PM   4          DO YOU SEE WHERE HE WROTE, "WE NEED.  THE LAB AND CALL

12:45PM   5     CENTER FIXED..."

12:45PM   6          DO YOU SEE THAT LANGUAGE?

12:45PM   7     A.   I DO.

12:45PM   8     Q.   "NEED PROFESSIONALS ACROSS THE BOARD.  NEED PMS AND

12:45PM   9     ALLISON OUT ASAP.

12:46PM   10         "WASTE OF TIME IMP."

12:46PM   11         AND THEN I THINK HE CORRECTS HIMSELF "IMO."

12:46PM   12         IN MY OPINION?

12:46PM   13    A.   I THINK SO, YES.

12:46PM   14    Q.   AND YOUR RESPONSE WAS "EXACTLY"?

12:46PM   15    A.   YES.

12:46PM   16    Q.   HE WAS SPEAKING OPENLY WITH YOU ABOUT PROBLEMS?

12:46PM   17    A.   YES.

12:46PM   18    Q.   AND YOU'RE AGREEING WITH HIM?

12:46PM   19    A.   YES.

12:46PM   20    Q.   IF WE CAN GO DOWN FURTHER, PLEASE, TO PAGE 24.

12:46PM   21         DO YOU SEE WHERE MR. BALWANI -- AND THESE MESSAGES ARE

12:46PM   22    FROM NOVEMBER 19TH, 2014?

12:46PM   23    A.   YES.

12:46PM   24    Q.   AND THIS IS ROUGHLY THE SAME TIME PERIOD IN THE CONTEXT OF

12:46PM   25    THE MESSAGES THAT WE WERE JUST LOOKING AT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8073

| | | |
|--|--|--|
| 12:46PM | 1 | A.   I THINK SO. |
| 12:46PM | 2 | Q.   AND HE WROTE TO YOU, "WE NEED CALL CENTER MANAGER, NEW |
| 12:46PM | 3 | CALL CENTER TEAM, GET RECURRENT CREW OUT OF DOCS FACING |
| 12:47PM | 4 | COMMUNICATIONS." |
| 12:47PM | 5 | DO YOU SEE THAT LANGUAGE? |
| 12:47PM | 6 | A.   I DO. |
| 12:47PM | 7 | Q.   HE WROTE, "FUNDAMENTALLY WE NEED TO STOP FIGHTING FIRES BY |
| 12:47PM | 8 | NOT CREATING THEM." |
| 12:47PM | 9 | DO YOU SEE THAT? |
| 12:47PM | 10 | A.   I DO. |
| 12:47PM | 11 | Q.   AND YOUR RESPONSE WAS, "YES"? |
| 12:47PM | 12 | A.   YES. |
| 12:47PM | 13 | Q.   "CALL CENTER, TECH SUPPORT, EVERYTHING. |
| 12:47PM | 14 | "REBUILD. |
| 12:47PM | 15 | "NEW LAB DIRECTORS, LAB MANAGER LIKE TRACY." |
| 12:47PM | 16 | DO YOU SEE THAT LANGUAGE? |
| 12:47PM | 17 | A.   I DO. |
| 12:47PM | 18 | Q.   AND THE NEXT TEXT, "18C."  WHAT IS 18C A REFERENCE TO? |
| 12:47PM | 19 | A.   I DON'T KNOW. |
| 12:47PM | 20 | Q.   BUT YOU KNOW THAT CTN IS THE NANOTAINER? |
| 12:47PM | 21 | A.   I DO. |
| 12:47PM | 22 | Q.   AND TIP COATING, IS THAT A REFERENCE TO THE TIP IN THE |
| 12:47PM | 23 | EITHER TECAN OR THE EDISON DEVICE? |
| 12:47PM | 24 | A.   IT'S THE TIP IN THE EDISON OR THE MINILAB DEVICE, YES. |
| 12:47PM | 25 | Q.   AND YOU WROTE, "FUNDAMENTALLY, WE NEED TO STOP FIGHTING |

12:48PM   1    FIRES BY NOT CREATING THEM."

12:48PM   2        DID I READ THAT CORRECTLY?

12:48PM   3    A.   YES.

12:48PM   4    Q.   YOU WROTE, "NEED TO FIX ROOT CAUSE HERE"?

12:48PM   5    A.   YES.

12:48PM   6    Q.   YOU'RE AGREEING WITH MR. BALWANI?

12:48PM   7    A.   I'M REPEATING BACK TO HIM WHAT HE SAID TO ME.

12:48PM   8    Q.   OKAY.  WELL, YOUR WORDS ARE "YES" AND "EXACTLY."

12:48PM   9        AM I RIGHT?

12:48PM  10    A.   YES.

12:48PM  11    Q.   YOUR WORDS IN THE MOMENT?

12:48PM  12    A.   YES.

12:48PM  13    Q.   LET'S LOOK AT PAGE 25, PLEASE.

12:48PM  14        DO YOU SEE WHERE MR. BALWANI WROTE, "NEED CTN FIXED.  OUR

12:48PM  15    ROOT CAUSE OF ISSUES"?

12:48PM  16    A.   I DO.

12:48PM  17    Q.   AND CTN AGAIN IS A REFERENCE TO THE NANOTAINER?

12:48PM  18    A.   IT IS.

12:48PM  19    Q.   OKAY.  LET'S GO TO THE NEXT PAGE, PLEASE.

12:49PM  20        SO, MS. HOLMES, THE DATE OF THESE EMAILS OR TEXTS ARE

12:49PM  21    NOVEMBER 27TH, 2014, ROUGHLY TWO WEEKS FROM THE EXCHANGES THAT

12:49PM  22    WE JUST LOOKED AT.

12:49PM  23        AM I RIGHT ABOUT THAT?

12:49PM  24    A.   OKAY.  YES.

12:49PM  25    Q.   AND IN THIS TIME PERIOD WHERE MR. BALWANI IS RAISING

HOLMES CROSS BY MR. LEACH (RES.)                                   8075

12:49PM   1     ISSUES ABOUT WHAT HE'S SEEING IN THE LAB IN THIS TIME PERIOD

12:49PM   2     WHEN DR. ROSENDORFF IS LEAVING, YOU'RE ALSO RAISING MONEY; IS

12:49PM   3     THAT CORRECT?

12:49PM   4     A.   YES.

12:49PM   5     Q.   AND WE KNOW THAT BECAUSE YOU WRITE HERE, IN RESPONSE TO

12:49PM   6     MR. BALWANI'S TEXT, "WE NEED TO LOCK ON A BILLION OR MORE NOW

12:50PM   7     SO WE HAVE LEVERAGE OVER BOTH.  AND TIME TO OPERATIONALIZE

12:50PM   8     NORMANDY AND THEN DAY."

12:50PM   9          DO YOU SEE THAT?

12:50PM   10    A.   I DO.

12:50PM   11    Q.   AND THEN HE CORRECTS HIMSELF LATER AND SAID "DDAY."

12:50PM   12         DO YOU SEE THAT?

12:50PM   13    A.   I DO.

12:50PM   14    Q.   AND YOU HAD REFERENCED D DAY INTERNALLY AS WHEN THERANOS

12:50PM   15    WOULD DO PHASE II?

12:50PM   16    A.   YES.

12:50PM   17    Q.   AND MR. BALWANI IS SAYING THE BILLION DOLLARS OR MORE

12:50PM   18    WOULD GIVE THEM TIME TO OPERATIONALIZE NORMANDY; CORRECT?

12:50PM   19    A.   UM, I THINK HE'S SAYING THAT WE ALSO NEED TIME TO

12:50PM   20    OPERATIONALIZE NORMANDY.

12:50PM   21    Q.   OKAY.  NORMANDY IS THE CLIA LAB WHERE YOU'RE DOING THE

12:50PM   22    TESTING ON THE EDISON AND THE MODIFIED SIEMENS MACHINES?

12:50PM   23    A.   EXACTLY.

12:50PM   24    Q.   AND YOU REPLY, "DRIVING HOME.

12:50PM   25         "AMAZING MEETING.

HOLMES CROSS BY MR. LEACH (RES.)                                        8076

| | | |
|---|---|---|
| 12:50PM | 1 | "HE IS IN." |
| 12:50PM | 2 | IS THAT A REFERENCE TO RUPERT MURDOCH? |
| 12:51PM | 3 | A.  I'M NOT SURE. |
| 12:51PM | 4 | Q.  WELL, LET'S LOOK AT THE NEXT PAGE. |
| 12:51PM | 5 | DO YOU SEE WHERE MR. BALWANI WROTE, "AWESOME.  I KNEW |
| 12:51PM | 6 | ALREADY"? |
| 12:51PM | 7 | A.  I DO. |
| 12:51PM | 8 | Q.  DO YOU SEE WHERE HE WROTE, "WE NEED LEVERAGE ALWAYS"? |
| 12:51PM | 9 | A.  I DO. |
| 12:51PM | 10 | Q.  AND DO YOU SEE WHERE YOU WROTE, "RUPERT SAID SAME THING AS |
| 12:51PM | 11 | YOU AND I TALKED ABOUT ON SEPARATE R&D BUCKET"? |
| 12:51PM | 12 | A.  I DO. |
| 12:51PM | 13 | Q.  DOES THIS REFRESH YOUR MEMORY THAT THE "HE IS IN" IS A |
| 12:51PM | 14 | REFERENCE TO RUPERT MURDOCH? |
| 12:51PM | 15 | A.  IT DOESN'T. |
| 12:51PM | 16 | Q.  YOU AGREE WITH ME THAT THIS IS ALL IN THE CONTEXT OF A |
| 12:51PM | 17 | TEXT EXCHANGE? |
| 12:51PM | 18 | A.  I THINK SO, YES. |
| 12:51PM | 19 | Q.  LET'S LOOK AT PAGE 38, PLEASE. |
| 12:52PM | 20 | DO YOU SEE THAT THIS IS ANOTHER TEXT EXCHANGE BETWEEN YOU |
| 12:52PM | 21 | AND MR. BALWANI IN THE MARCH 2015 TIME PERIOD? |
| 12:52PM | 22 | A.  YES. |
| 12:52PM | 23 | Q.  AND HE'S WRITING TO YOU, "I AM BLOCKING EVERYONE INVOLVED |
| 12:52PM | 24 | WITH DEVICE IN SOFTWARE ALL NEXT WEEK AND I WILL ONLY DO THIS |
| 12:52PM | 25 | ALSO.  NOTHING ELSE.  THIS IS THE ONLY WAY TO GET THIS DONE." |

HOLMES CROSS BY MR. LEACH (RES.)                                    8077

12:52PM  1          DO YOU SEE THAT LANGUAGE?

12:52PM  2     A.   I DO.

12:52PM  3     Q.   AND MR. BALWANI IS NOT HIDING ANYTHING FROM YOU HERE, IS

12:52PM  4     HE?

12:52PM  5     A.   I DON'T KNOW WHAT HE'S TALKING ABOUT.

12:52PM  6     Q.   OKAY.  HE'S NOT CONCEALING WITH YOU THE NEED TO GET DEVICE

12:52PM  7     AND SOFTWARE NEXT WEEK AND TO MAKE PROGRESS ON THE PRODUCT, IS

12:52PM  8     HE?

12:52PM  9     A.   NO.

12:52PM 10     Q.   OKAY.  AND IF WE CAN GO BACK, PLEASE, MS. HOLLIMAN, TO

12:53PM 11     PAGE 23.  ONE MORE PAGE.  ONE MORE PAGE, PLEASE.  ONE MORE.

12:53PM 12     ONE MORE.  OKAY.  ONE MORE, PLEASE.

12:53PM 13          LET ME DRAW YOUR ATTENTION, PLEASE, TO THIS TEXT EXCHANGE

12:53PM 14     FROM THE NOVEMBER 2013 TIME PERIOD, MS. HOLMES.

12:54PM 15          DO YOU SEE WHERE YOU WROTE, "LET'S BUILD THE TRUE AMERICAN

12:54PM 16     EMPIRE."

12:54PM 17          OR EXCUSE ME, MR. BALWANI WROTE, "THEN LET'S BUILD THE

12:54PM 18     TRUE AMERICAN EMPIRE.  A MONOPOLY.  OUR OBLIGATION TO U.S.A.

12:54PM 19          "THAT'S WHAT WE'RE DOING."

12:54PM 20     A.   YES.

12:54PM 21     Q.   AND THIS IS AN EXPRESSION FOR WHAT YOU WANTED TO DO WITH

12:54PM 22     THERANOS?

12:54PM 23     A.   YES.

12:54PM 24     Q.   ISN'T IT TRUE, MS. HOLMES, THAT YOU AND MR. BALWANI SPOKE

12:54PM 25     OPENLY AT INSPECTIONS WITH GOVERNMENT REGULATORS ABOUT WHAT

12:54PM  1     THEY WERE FINDING.

12:54PM  2     A.   YES.

12:54PM  3     Q.   LET ME DRAW YOUR ATTENTION TO PAGE 97 OF 387D.

12:55PM  4          DO YOU SEE THE DATE OF THESE TEXT EXCHANGES IS

12:55PM  5     AUGUST 28TH, 2015?

12:55PM  6     A.   I DO.

12:55PM  7     Q.   OKAY.  AND YOU RECALL THAT THE FDA CONDUCTED AN INSPECTION

12:55PM  8     OF THERANOS IN OR AROUND THAT TIME PERIOD?

12:55PM  9     A.   YES.

12:55PM  10    Q.   THAT INSPECTION WAS UNEXPECTED?

12:55PM  11    A.   YES.

12:55PM  12    Q.   THEY SHOWED UP UNANNOUNCED?

12:55PM  13    A.   THAT'S RIGHT.

12:55PM  14    Q.   THEY DIDN'T CALL BEFORE THEY CAME?

12:55PM  15    A.   THAT'S RIGHT.

12:55PM  16    Q.   THEY WERE THERE IN ARIZONA AND CALIFORNIA?

12:55PM  17    A.   YES.

12:55PM  18    Q.   AND THEY WERE ASKING QUESTIONS ABOUT PRODUCTION OF THE

12:55PM  19    NANOTAINER AND THE USE OF THE NANOTAINER IN CONNECTION WITH

12:55PM  20    YOUR LDT'S?

12:55PM  21    A.   THEY WERE ASKING QUESTIONS ABOUT OUR QUALITY SYSTEM FOR

12:55PM  22    THE NANOTAINER.

12:55PM  23    Q.   OKAY.  AND WHILE THIS WAS GOING ON, YOU WERE TEXTING BACK

12:55PM  24    AND FORTH TO MR. BALWANI ABOUT WHAT HE WAS LEARNING AND WHAT

12:55PM  25    YOU WERE LEARNING?

HOLMES CROSS BY MR. LEACH (RES.)                                          8079

| | | |
|---|---|---|
| 12:55PM | 1 | A.   YES. |
| 12:55PM | 2 | Q.   YOU SPOKE OPENLY ABOUT THOSE THINGS? |
| 12:55PM | 3 | A.   YES. |
| 12:55PM | 4 | Q.   HE DIDN'T HIDE FROM YOU WHAT THE FDA WAS SAYING TO HIM; |
| 12:56PM | 5 | CORRECT? |
| 12:56PM | 6 | A.   I DON'T THINK SO. |
| 12:56PM | 7 | Q.   AND YOU DIDN'T HIDE FROM HIM WHAT THE FDA WAS SAYING TO |
| 12:56PM | 8 | YOU? |
| 12:56PM | 9 | A.   I DID NOT. |
| 12:56PM | 10 | Q.   OKAY.  UP AT THE TOP HE WROTE, "THEY ARE ASKING IF IN OUR |
| 12:56PM | 11 | IDEAL WORLD FOR CTN 510K IF WE USED OUR LDT." |
| 12:56PM | 12 | WHAT IS A 510K? |
| 12:56PM | 13 | A.   AN FDA APPROVAL. |
| 12:56PM | 14 | Q.   "LDT AS METHOD VERSUS PREDICATE WE WOULD LIKE THAT AND NOT |
| 12:56PM | 15 | HAVE TO DO WHAT THEY HAVE ASKED US TO DO (POOL 8 CTN'S AND RUN |
| 12:56PM | 16 | ON ADVIA INSTEAD OF JUST 1-2 CTN AND RUN ON CLIA AS LDT)." |
| 12:56PM | 17 | DO YOU SEE THAT LANGUAGE? |
| 12:56PM | 18 | A.   I DO. |
| 12:56PM | 19 | Q.   AND YOU AND HE ARE SPEAKING OPENLY ABOUT WHAT THE FDA IS |
| 12:56PM | 20 | ASKING FOR AND WHAT THERANOS MIGHT BE ABLE TO PROVIDE? |
| 12:56PM | 21 | A.   YES. |
| 12:56PM | 22 | Q.   GO TO THE TOP, MS. HOLLIMAN. |
| 12:57PM | 23 | IS THIS ANOTHER TEXT IN THE CONTEXT OF THE FDA |
| 12:57PM | 24 | CONVERSATION, MS. HOLMES? |
| 12:57PM | 25 | A.   YES. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8080

12:57PM   1    Q.   LET'S LOOK AT THE NEXT PAGE, PLEASE.

12:57PM   2         DO YOU SEE WHERE YOU WROTE, "WE ARE PREPARING FOR DAN TO

12:57PM   3    CALL SOMEONE HE KNOWS AT THE TOP OF FDA BECAUSE HE KNOWS HIM.

12:57PM   4    MAY RUFFLE FEATHERS BUT WE THINK HE WILL GET THAT 483 WILL BE

12:57PM   5    BAD FOR FDA ARE ALSO DRAFTING EMAIL TO ALBERTO TO LET HIM KNOW

12:57PM   6    WE'RE FOLLOWING UP WITH COUNSEL ON THIS (LEAVE DOOR OPEN FOR

12:57PM   7    DAN)."

12:58PM   8         THOSE ARE YOUR WORDS; CORRECT?

12:58PM   9    A.   YES.

12:58PM   10   Q.   DAN IS A REFERENCE TO YOUR LAWYER?

12:58PM   11   A.   I THINK SO.

12:58PM   12   Q.   A LAWYER IN WASHINGTON, D.C. THAT YOU HIRED TO INTERACT

12:58PM   13   WITH THE FDA?

12:58PM   14   A.   YES.

12:58PM   15   Q.   OKAY.  AND ALBERTO IS A REFERENCE TO ALBERTO GUTIERREZ?

12:58PM   16   A.   YES.

12:58PM   17   Q.   HE'S A SENIOR OFFICIAL WITHIN THE FDA WHO HAD A HAND IN

12:58PM   18   WHETHER THERANOS TECHNOLOGY WOULD BE FDA APPROVED?

12:58PM   19   A.   HE DID.

12:58PM   20   Q.   AND YOU'RE EXPRESSING A VIEW HERE THAT DAN CALLING AT THE

12:58PM   21   TOP OF THE FDA MIGHT RUFFLE FEATHERS?

12:58PM   22   A.   YES.

12:58PM   23   Q.   AND MR. BALWANI SAYS, "I THINK THIS IS NOW OUTRAGEOUS WHAT

12:58PM   24   THEY ARE DOING."

12:58PM   25        YOU WROTE BACK "AGREE."

HOLMES CROSS BY MR. LEACH (RES.)                                    8081

12:58PM   1          THOSE ARE YOUR WORDS?

12:58PM   2     A.   YES.

12:58PM   3     Q.   AND THAT'S A REFERENCE TO THE FDA INSPECTION THAT IS GOING

12:58PM   4     ON?

12:58PM   5     A.   I THINK IT'S A REFERENCE TO THE REGULATION OF LDT'S IN A

12:58PM   6     WAY THAT WAS DIFFERENT THAN THE POLICY.

12:58PM   7     Q.   DIFFERENT FROM THE POLICY AS YOU UNDERSTOOD IT?

12:59PM   8     A.   YEAH.

12:59PM   9     Q.   DOWN AT THE BOTTOM MR. BALWANI SAYS, "WE NEED TO CHANGE

12:59PM  10     .COM PROVIDER SECTION.  IT TALKS ABOUT MICRO SAMPLES AND

12:59PM  11     REFLECT TESTING ON MICRO SAMPLES."

12:59PM  12          AND YOU WROTE BACK WITH A QUESTION, "IS THAT FROM AUDIT?"

12:59PM  13          DO YOU SEE THAT?

12:59PM  14     A.   I DO.

12:59PM  15     Q.   THAT'S A REFERENCE TO THE ONGOING FDA INSPECTION?

12:59PM  16     A.   YES.

12:59PM  17     Q.   OKAY.  AND MR. BALWANI IS EXPRESSING CONCERN HERE THAT YOU

12:59PM  18     MIGHT NEED TO CHANGE SOME OF THE LANGUAGE ON THE WEBSITE IN

12:59PM  19     LIGHT OF WHAT IS GOING ON WITH THE FDA OR POSSIBLE CONCERNS

12:59PM  20     ABOUT ITS ACCURACY?

12:59PM  21     A.   UM, HE SAYS HE'S JUST SAYING IT'S A DISASTER, IT'S NOT

12:59PM  22     FROM THE FDA AUDIT.

12:59PM  23     Q.   OKAY.  BUT HE'S NOT HIDING THAT FROM YOU HERE?

12:59PM  24     A.   NO.

12:59PM  25     Q.   HE'S SPEAKING WITH YOU OPENLY ABOUT THAT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8082

| 12:59PM | 1 | A.   HE IS. |
| 12:59PM | 2 | Q.   LET'S GO TO THE NEXT PAGE, PLEASE. |
| 01:00PM | 3 | DO YOU SEE WHERE YOU WROTE, "DANIEL INCLUDED ADVIA NUMBERS |
| 01:00PM | 4 | OF TESTS RUN SINCE 2013, BUT TECHNICALLY THOSE WERE THE |
| 01:00PM | 5 | DIFFERENT LDT'S THAN THE ADVIA ONES RUN NOW.  LET ME KNOW YOUR |
| 01:00PM | 6 | THOUGHTS ON WHETHER YOU'D USE THE BIGGER NUMBER." |
| 01:00PM | 7 | DO YOU SEE THAT LANGUAGE? |
| 01:00PM | 8 | A.   YES. |
| 01:00PM | 9 | Q.   THE DANIEL THERE WAS A REFERENCE TO DANIEL YOUNG? |
| 01:00PM | 10 | A.   YES. |
| 01:00PM | 11 | Q.   HE WAS AIDING YOU IN GATHERING DOCUMENTS FOR THE FDA? |
| 01:00PM | 12 | A.   YES. |
| 01:00PM | 13 | Q.   AND YOU'RE SPEAKING HERE OPENLY WITH MR. BALWANI ABOUT HOW |
| 01:00PM | 14 | TO RESPOND TO THE FDA? |
| 01:00PM | 15 | A.   YES. |
| 01:00PM | 16 | Q.   LET'S GO TO THE NEXT PAGE, PLEASE. |
| 01:00PM | 17 | DO YOU SEE WHERE MR. BALWANI WROTE, "WE SHOULD DISCUSS |
| 01:01PM | 18 | TONIGHT TURNING CTN OFF"? |
| 01:01PM | 19 | A.   I DO. |
| 01:01PM | 20 | Q.   THAT'S A REFERENCE TO THE NANOTAINER? |
| 01:01PM | 21 | A.   YES. |
| 01:01PM | 22 | Q.   AND YOU HAD BEEN THINKING ABOUT DOING THAT, TOO? |
| 01:01PM | 23 | A.   I SEE THAT. |
| 01:01PM | 24 | Q.   DO YOU HAVE A MEMORY OF THAT? |
| 01:01PM | 25 | A.   NO. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8083

01:01PM    1    Q.    OKAY.  AND THE REASON YOU WANTED TO DO THAT WAS BECAUSE

01:01PM    2    THE FDA WAS SUGGESTING TO YOU THAT THE CTN NEEDED TO BE FDA

01:01PM    3    APPROVED; IS THAT CORRECT?

01:01PM    4    A.    NO.

01:01PM    5    Q.    WHAT WAS YOUR UNDERSTANDING?

01:01PM    6    A.    I UNDERSTOOD THAT WE WERE USING THE CTN AS PART OF OUR LDT

01:01PM    7    CONSISTENT WITH THE FDA'S GUIDANCE ON LDT'S, AND THAT AS SUCH

01:01PM    8    WE WOULD NOT NEED TO BE COMPLIANT WITH CERTAIN FDA QUALITY

01:01PM    9    STANDARDS UNTIL WE GOT APPROVAL, AND WE GOT DIFFERENT GUIDANCE

01:01PM   10    IN THIS INSPECTION.

01:01PM   11    Q.    AND I THINK WE'RE TALKING PAST EACH OTHER, BUT YOU'RE

01:01PM   12    EXPRESSING NOW IN THE SEPTEMBER 2015 TIME PERIOD THE NEED TO

01:02PM   13    STOP USING THE NANOTAINER BECAUSE OF FDA CONCERNS?

01:02PM   14    A.    YES.

01:02PM   15    Q.    AND YOU ULTIMATELY DID THAT?

01:02PM   16    A.    YES.

01:02PM   17    Q.    YOU ALSO SPOKE TO MR. BALWANI ABOUT WHAT WAS GOING ON

01:02PM   18    DURING THE CMS INSPECTION; ISN'T THAT CORRECT?

01:02PM   19    A.    I DID.

01:02PM   20    Q.    OKAY.  LET ME DRAW YOUR ATTENTION, PLEASE, TO 106.

01:02PM   21          DO YOU SEE THE DATE OF SEPTEMBER 22ND, 2015?

01:02PM   22    A.    I DO.

01:02PM   23    Q.    DO YOU SEE WHERE MR. BALWANI WROTE, "VERY HOSTILE SO FAR.

01:02PM   24    THEY HAVE COMPLAINTS"?

01:03PM   25    A.    I DO.

HOLMES CROSS BY MR. LEACH (RES.)                                    8084

01:03PM  1    Q.   AND THAT'S A REFERENCE TO THE CMS INSPECTORS?

01:03PM  2    A.   I THINK SO.

01:03PM  3    Q.   "THEY SHOULD KNOW THE ENTIRE LAB INDUSTRY IS AND WILL BE

01:03PM  4    SEEDING EVERYONE THEY CAN TO GET AT TO FILE COMPLAINTS."

01:03PM  5         IS THAT HOW YOU RESPONDED?

01:03PM  6    A.   YES.

01:03PM  7    Q.   AND THEN YOU WROTE, "I'M SURE TYLER IS ONE THEY PROB GOT

01:03PM  8    FROM NY.  ADAM IS THE OTHER."

01:03PM  9         IS THAT A REFERENCE TO DR. ROSENDORFF?

01:03PM 10    A.   I THINK SO.

01:03PM 11    Q.   OKAY.  YOU KNEW ENOUGH IN THIS SEPTEMBER 2015 TIME PERIOD

01:03PM 12    TO THINK THAT DR. ROSENDORFF WAS ONE OF MR. CARREYROU'S SOURCES

01:03PM 13    AND A POSSIBLE REASON FOR THE CMS INSPECTION?

01:03PM 14    A.   I DID.

01:03PM 15    Q.   OKAY.  "JC HIMSELF PLAYING LITERALLY OFF LAB COMMENTS IS

01:03PM 16    LIKELY THE OTHER."

01:03PM 17         JC IS A REFERENCE TO JOHN CARREYROU; CORRECT?

01:03PM 18    A.   I THINK SO, YES.

01:03PM 19    Q.   AND THEN YOU WROTE HMFR; CORRECT?

01:03PM 20    A.   I DID.

01:04PM 21    Q.   AND THAT'S AN ACRONYM FOR A RELIGIOUS TERM THAT YOU WOULD

01:04PM 22    YOU USE WITH MR. BALWANI?

01:04PM 23    A.   IT'S AN ACRONYM FOR A PRAYER, YES.

01:04PM 24    Q.   OKAY.  EXPRESSING GRATITUDE TO GOD?

01:04PM 25    A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                    8085

01:04PM   1    Q.   AND YOU WROTE, "PRAYING LITERALLY NONSTOP"?

01:04PM   2    A.   YES.

01:04PM   3    Q.   AND THAT'S A REFERENCE TO THE CMS INSPECTION?

01:04PM   4    A.   YES.  I DON'T KNOW THAT IT'S A REFERENCE TO THE CMS

01:04PM   5    INSPECTION.  IT'S SAYING THAT I'M PRAYING.

01:04PM   6    Q.   "DO YOU WANT ME TO STEP OUT OF FDA CALL?

01:04PM   7         "NO."

01:04PM   8         DO YOU SEE THAT LANGUAGE?

01:04PM   9    A.   I DO.

01:04PM  10    Q.   IN THIS TIME PERIOD, YOU WERE ALSO DEALING WITH THE FDA?

01:04PM  11    A.   I WAS.

01:04PM  12    Q.   OKAY.  LET'S LOOK AT THE NEXT PAGE.

01:05PM  13         DO YOU SEE WHERE MR. BALWANI WROTE, "OUR VALIDATION

01:05PM  14    REPORTS ARE TERRIBLE.  REALLY PAINFUL GOING THRU THIS PROCESS.

01:05PM  15    SAME ISSUES FDA POINTED OUT."

01:05PM  16         DO YOU SEE THAT LANGUAGE?

01:05PM  17    A.   I DO.

01:05PM  18    Q.   HE'S BEING OPEN WITH YOU ABOUT WHAT CMS IS FINDING IN THIS

01:05PM  19    TIME PERIOD?

01:05PM  20    A.   YES.

01:05PM  21    Q.   HE'S NOT HIDING ANYTHING FROM YOU HERE?

01:05PM  22    A.   NO.  I'M NOT SURE IF THIS IS WHAT CMS IS FINDING OR WHAT

01:05PM  23    HE'S SAYING TO ME.

01:05PM  24    Q.   OKAY.  HE'S REPORTING TO YOU WHAT HE'S SEEING FROM CMS?

01:05PM  25    A.   I THINK HE'S REPORTING TO ME HIS OPINION.

HOLMES CROSS BY MR. LEACH (RES.)                                    8086

| | | |
|---|---|---|
| 01:05PM | 1 | Q.   OKAY.  AND YOU TOLD US YESTERDAY THAT AT SOME POINT IN |
| 01:05PM | 2 | JANUARY OF 2016, YOU REALIZED THE GRAVITY OF THE CMS INSPECTION |
| 01:05PM | 3 | AND FORCED MR. BALWANI OUT? |
| 01:05PM | 4 | A.   I REALIZED THE GRAVITY OF THE CMS INSPECTION IN JANUARY, |
| 01:05PM | 5 | OR AROUND JANUARY OF 2016, STARTING IN NOVEMBER OF 2015, AND |
| 01:05PM | 6 | MR. BALWANI LEFT THE COMPANY IN MAY. |
| 01:05PM | 7 | Q.   OKAY.  YOU PUSHED HIM OUT; ISN'T THAT FAIR? |
| 01:06PM | 8 | A.   I ASKED HIM TO LEAVE, YES. |
| 01:06PM | 9 | Q.   OKAY.  YOU MADE THAT CHOICE TO GET HIM OUT OF THE COMPANY? |
| 01:06PM | 10 | A.   I DID. |
| 01:06PM | 11 | Q.   IN 2016 AFTER GETTING THE CMS REPORT? |
| 01:06PM | 12 | A.   YES. |
| 01:06PM | 13 | Q.   OKAY.  AND MR. BALWANI IN THIS SEPTEMBER TIME PERIOD IS |
| 01:06PM | 14 | REPORTING TO YOU HIS OPINIONS ABOUT WHAT CMS IS FINDING HERE? |
| 01:06PM | 15 | A.   HE IS. |
| 01:06PM | 16 | Q.   OKAY. |
| 01:06PM | 17 | A.   AGAIN, I DON'T KNOW THAT THIS IS WHAT CMS IS FINDING, BUT |
| 01:06PM | 18 | HE'S REPORTING TO ME HIS OPINIONS. |
| 01:06PM | 19 | Q.   OKAY.  LET'S GO DOWN, PLEASE. |
| 01:06PM | 20 | DO YOU SEE WHERE YOU WROTE, "WILL MAKE SURE ALL TEAMS ARE |
| 01:06PM | 21 | REVIEWING REPORTS.  LET ME KNOW ANYTHING ELSE CAN DO TO |
| 01:06PM | 22 | SUPPORT." |
| 01:06PM | 23 | IS THAT A REFERENCE TO YOUR EXPRESSION OF WILLINGNESS TO |
| 01:06PM | 24 | BRING RESOURCES TO THE CMS INSPECTION? |
| 01:06PM | 25 | A.   IT IS. |

01:07PM   1    Q.   AND BALWANI, MR. BALWANI WRITES BACK, "GOING BAD SO FAR.

01:07PM   2    PRAY.

01:07PM   3        "DANIEL HAS NOTHING READY.

01:07PM   4        "TOLD ME EVERYTHING IS IN THE BINDERS.

01:07PM   5        "NOT THERE."

01:07PM   6        AND WHAT WAS YOUR RESPONSE, MS. HOLMES?

01:07PM   7    A.   "PRAYING."

01:07PM   8    Q.   YOU THEN WROTE, "AT MY DESK.

01:07PM   9        "TELL ME HOW I CAN HELP."

01:07PM  10    A.   YES.

01:07PM  11    Q.   THE REFERENCE HERE IS TO THE CMS INSPECTION; CORRECT?

01:07PM  12    A.   YES.

01:07PM  13    Q.   AND DOES THIS REFRESH YOUR RECOLLECTION THAT THE EARLY ONE

01:07PM  14    IS IN RELATION TO THE CMS INSPECTION?

01:07PM  15    A.   IT DOESN'T.

01:07PM  16    Q.   OKAY.  MR. BALWANI WAS ALSO OPEN WITH YOU ABOUT WHAT WAS

01:07PM  17    HAPPENING WITH WALGREENS; ISN'T THAT RIGHT?

01:07PM  18    A.   I THINK SO.

01:07PM  19    Q.   OKAY.  LET'S LOOK AT SOME OF THAT.

01:07PM  20        IF WE CAN GO TO PAGE 39.

01:08PM  21        DO YOU SEE THE DATE OF APRIL 7TH, 2015, MS. HOLMES?

01:08PM  22    A.   I DO.

01:08PM  23    Q.   AND YOU'RE WRITING TO MR. BALWANI, "DEEP CONCERN ABOUT

01:08PM  24    SENSE WE'RE GETTING THAT TRYING TO MANIPULATE TO FAIL.  CAN

01:08PM  25    ASSURE NOT THE CASE.  FIX STORES SUCCEED.  THERANOS OFFERED

HOLMES CROSS BY MR. LEACH (RES.)                                      8088

01:08PM  1      PAY."

01:08PM  2           YOU'RE TALKING ABOUT A CONVERSATION RELATING TO WALGREENS

01:08PM  3      HERE, AREN'T YOU?

01:08PM  4      A.   I'M NOT SURE.

01:08PM  5      Q.   DID YOU HAVE STORES IN ANY OTHER PLACE IN APRIL OF 2015?

01:08PM  6      A.   WE DID NOT.

01:08PM  7      Q.   OKAY.  "ANYTIME ASK DON'T RESPOND.  SIGNAGE.  LOGOS.

01:08PM  8      CAN'T FIND.  CONFUSE HCC."

01:08PM  9           YOU DIDN'T HAVE SIGNAGE AND LOGOS ANYWHERE ELSE OTHER THAN

01:09PM  10     WALGREENS STORES, DID YOU?

01:09PM  11     A.   THAT'S RIGHT.

01:09PM  12     Q.   "TEAM NOT MAKING ANY PROGRESS.  DELIBERATE FAIL.  NOT --

01:09PM  13     DON'T NEED EXCLUSIVITY AZ.

01:09PM  14          "CAN'T SPEND DOLLARS ON MARKETING DON'T BUILD OUTRIGHT.

01:09PM  15     PATIENTS COMPLAIN."

01:09PM  16          DO YOU SEE THAT?

01:09PM  17     A.   YES.

01:09PM  18     Q.   DOES THIS REFRESH YOUR RECOLLECTION THAT YOU'RE TALKING

01:09PM  19     ABOUT WALGREENS HERE WITH MR. BALWANI?

01:09PM  20     A.   NO.

01:09PM  21     Q.   LET'S LOOK AT THE NEXT PAGE, PLEASE.

01:09PM  22          DO YOU SEE THE DATE OF APRIL 9TH, 2015?

01:09PM  23     A.   I DO.

01:09PM  24     Q.   AND MR. BALWANI WRITES, "GOING THRU CVS CONTRACT.  WE

01:09PM  25     CAN'T WORK WITH WAG OR CVS.  BOTH ARE SAME."

HOLMES CROSS BY MR. LEACH (RES.)                                      8089

01:09PM   1          DO YOU SEE THAT LANGUAGE?

01:09PM   2     A.   I DO.

01:09PM   3     Q.   HE'S BEING OPEN WITH YOU ABOUT HIS VIEWS OF WHAT IS

01:10PM   4     POSSIBLE WITH WALGREENS, ISN'T HE?

01:10PM   5     A.   I THINK HE'S EXPRESSING HIS FRUSTRATIONS WITH WALGREENS

01:10PM   6     AND CVS.

01:10PM   7     Q.   OKAY.  BUT HE'S NOT HIDING THAT FROM YOU HERE, IS HE?

01:10PM   8     A.   NO.

01:10PM   9     Q.   HE'S NOT CONCEALING FROM YOU WHAT IS GOING ON WITH

01:10PM  10     WALGREENS?

01:10PM  11     A.   I DON'T THINK SO.

01:10PM  12     Q.   OKAY.  LET ME NEXT DRAW YOUR ATTENTION TO EXHIBIT 5653.

01:11PM  13     A.   I DON'T THINK I HAVE THAT ONE.

01:11PM  14          MR. LEACH:  MAY I HAVE A MOMENT, YOUR HONOR?

01:11PM  15          THE COURT:  YES.

01:11PM  16        (PAUSE IN PROCEEDINGS.)

01:11PM  17          THE COURT:  IS THIS IN VOLUME 2 OF YOUR BINDERS?

01:11PM  18          MR. LEACH:  IT IS, YOUR HONOR, BUT I'M NOT PREPARED

01:11PM  19     TO USE THE REMAINDER OF THE DOCUMENTS.

01:12PM  20        (PAUSE IN PROCEEDINGS.)

01:12PM  21          MR. LEACH:  MAY I APPROACH, YOUR HONOR?

01:12PM  22          THE COURT:  YES.

01:12PM  23     BY MR. LEACH:

01:12PM  24     Q.   (HANDING.)

01:12PM  25          THERE YOU GO.

| | | |
|---|---|---|
| 01:12PM | 1 | A.   THANK YOU. |
| 01:12PM | 2 | Q.   YOU'RE WELCOME. |
| 01:12PM | 3 | DO YOU SEE YOUR NAME AT THE TOP OF THIS EMAIL, MS. HOLMES? |
| 01:12PM | 4 | A.   I DO. |
| 01:12PM | 5 | Q.   AND DO YOU SEE MR. BALWANI'S NAME IN THE FROM LINE? |
| 01:12PM | 6 | A.   I DO. |
| 01:12PM | 7 | Q.   AND THIS IS DATED AUGUST 15TH, 2014? |
| 01:12PM | 8 | A.   YES. |
| 01:12PM | 9 | Q.   AND DOES THIS EMAIL RELATE TO THOUGHTS AND GOALS RELATING |
| 01:12PM | 10 | TO WALGREENS? |
| 01:12PM | 11 | A.   IS IT OKAY IF I READ IT REALLY FAST? |
| 01:12PM | 12 | Q.   YES, PLEASE. |
| 01:12PM | 13 | A.   OKAY. |
| 01:12PM | 14 | (PAUSE IN PROCEEDINGS.) |
| 01:12PM | 15 | THE WITNESS:  YES. |
| 01:12PM | 16 | MR. LEACH:  YOUR HONOR, I MOVE THE ADMISSION OF |
| 01:12PM | 17 | 5663. |
| 01:13PM | 18 | THE COURT:  5663? |
| 01:13PM | 19 | MR. LEACH:  YES. |
| 01:13PM | 20 | MR. DOWNEY:  NO OBJECTION. |
| 01:13PM | 21 | THE COURT:  THAT'S ADMITTED, 5663. |
| 01:13PM | 22 | (GOVERNMENT'S EXHIBIT 5663 WAS RECEIVED IN EVIDENCE.) |
| 01:13PM | 23 | MR. LEACH:  I THINK THAT'S THE WRONG DOCUMENT, |
| 01:13PM | 24 | MS. HOLLIMAN. |
| 01:13PM | 25 | THERE WE GO. |

HOLMES CROSS BY MR. LEACH (RES.)                                  8091

01:13PM   1    Q.   LET ME DRAW YOUR --

01:13PM   2              THE CLERK:  EXCUSE ME.

01:13PM   3              THE COURT:  5663, NOT 5653; IS THAT CORRECT?

01:13PM   4              MR. LEACH:  I THINK WE MAY HAVE A NUMBERING ISSUE

01:13PM   5    WITH OUR ELECTRONIC COPY.

01:13PM   6         YOUR HONOR, I'LL DISPLAY IT ON THE ELMO.

01:13PM   7              THE COURT:  OKAY.

01:13PM   8              MR. LEACH:  OR MAY I USE?

01:13PM   9              THE COURT:  YES.

01:13PM  10              MR. LEACH:  AND JUST TO BE CLEAR, THE DOCUMENT I

01:13PM  11    MOVED INTO EVIDENCE IS 5663, AND MS. HOLLIMAN HAS THE COPY WITH

01:13PM  12    A DIFFERENT NUMBER THAN WE'RE DISPLAYING.

01:14PM  13              THE COURT:  OKAY.

01:14PM  14              MR. LEACH:  MS. HOLLIMAN, YOU CAN DISPLAY WHAT WE'RE

01:14PM  15    LOOKING AT.

01:14PM  16    Q.   DO YOU SEE AN EMAIL FROM NIMESH JHAVERI DATED AUGUST 15TH,

01:14PM  17    MS. HOLMES?

01:14PM  18    A.   I DO.

01:14PM  19    Q.   AND IF WE SCROLL DOWN TO THE SUBSTANCE OF MR. JHAVERI'S

01:14PM  20    EMAIL, DO YOU SEE WHERE HE'S WRITING, "IT WILL BE IMPORTANT

01:14PM  21    THAT WE DRIVE A SINGLE FOCUS TOGETHER.  THE 2 AREAS WHICH MUST

01:14PM  22    BE FOCUSSED ON ARE:"

01:14PM  23         AND THEN HE WROTE, "PATIENTS PER DAY WITH A 4 PERCENT

01:14PM  24    EXPERIENCE.

01:14PM  25         "VENOUS PERCENT IN THE 10 PERCENT RANGE."

HOLMES CROSS BY MR. LEACH (RES.)                                    8092

01:14PM   1        DO YOU SEE THAT?

01:14PM   2    A.   I DO.

01:14PM   3    Q.   AND THEN MR. JHAVERI WROTE, "WE NEED TO HAVE A DOCUMENTED

01:14PM   4    DETAILED PLAN ON BOTH OR IT WILL BE DIFFICULT FOR ME TO

01:14PM   5    CONVINCE EXPANSION BEYOND AZ."

01:14PM   6        DO YOU SEE THAT LANGUAGE?

01:14PM   7    A.   I DO.

01:14PM   8    Q.   AND MR. BALWANI FORWARDS THIS TO YOU; DOESN'T HE?

01:15PM   9    A.   HE DID.

01:15PM   10   Q.   AND HE WROTE, "WE CAN DISCUSS THIS TODAY.  GIVES US HUGE

01:15PM   11   OPENING FOR WHAT WE WANT TO DO."

01:15PM   12       IF WE CAN ZOOM OUT, MS. HOLLIMAN.

01:15PM   13       DO YOU SEE THAT LANGUAGE AT THE TOP, MS. HOLMES?

01:15PM   14   A.   I DO.

01:15PM   15   Q.   AND SO MR. BALWANI IS NOT HIDING FROM YOU INFORMATION THAT

01:15PM   16   HE'S GETTING FROM WALGREENS?

01:15PM   17   A.   NO.

01:15PM   18   Q.   AND HE'S OFFERING TO DISCUSS WHAT HE'S LEARNING FROM

01:15PM   19   WALGREENS WITH YOU THAT DAY?

01:15PM   20   A.   YES.

01:15PM   21   Q.   AND HE'S EXPLAINING THAT THIS MIGHT ALSO GIVE YOU AN

01:15PM   22   OPPORTUNITY TO EXPLORE RELATIONSHIPS WITH OTHER RETAILERS;

01:15PM   23   ISN'T THAT RIGHT?  ISN'T THAT THE OPPORTUNITY THAT HE'S TALKING

01:15PM   24   ABOUT?

01:15PM   25   A.   I THINK HE'S TALKING ABOUT EXPANDING WITH WALGREENS.

HOLMES CROSS BY MR. LEACH (RES.)                                    8093

01:15PM  1    Q.   OKAY.  EVEN THOUGH HE'S FORWARDING MR. JHAVERI'S

01:15PM  2    COMPLAINTS ABOUT THE PERCENTAGE OF VENOUS DRAWS WITHIN THE

01:16PM  3    STORE?

01:16PM  4    A.   I READ THIS TO SAY THAT IF WE HAD A DETAILED PLAN WITHIN

01:16PM  5    THE NEXT 30 DAYS, THEY COULD MEET WITH MANAGEMENT ABOUT

01:16PM  6    EXPANSION BEYOND ARIZONA.

01:16PM  7    Q.   OKAY.  AND YOU NEVER DID EXPAND BEYOND ARIZONA?

01:16PM  8    A.   WE DID NOT.

01:16PM  9    Q.   OKAY.  WERE THERE TIMES IN YOUR WORKING RELATIONSHIP WITH

01:16PM 10    MR. BALWANI WHERE YOU GAVE HIM DIRECTION ON WHAT TO DO?

01:16PM 11    A.   I'M SURE THERE WAS.

01:16PM 12    Q.   THERE WERE TIMES WHERE YOU TOLD HIM WHAT TO DO?

01:16PM 13    A.   I'M SURE THERE COULD HAVE BEEN.

01:16PM 14    Q.   OKAY.  WELL, LET'S LOOK AT SOME EXAMPLES.

01:16PM 15         AND HE REPORTED DIRECTLY TO YOU; CORRECT?

01:16PM 16    A.   HE DID.

01:16PM 17    Q.   HE WAS THE CHIEF OPERATING OFFICER?

01:16PM 18    A.   YES.

01:16PM 19    Q.   AND THE PRESIDENT?

01:16PM 20    A.   YES.

01:16PM 21    Q.   AND YOU WERE THE CEO?

01:16PM 22    A.   THAT'S RIGHT.

01:16PM 23    Q.   OKAY.  AND HE WAS AN AT WILL EMPLOYEE?

01:16PM 24    A.   HE WAS.

01:16PM 25    Q.   OKAY.  YOU COULD FIRE HIM AT ANY TIME?

HOLMES CROSS BY MR. LEACH (RES.)                                    8094

01:16PM  1      A.   I COULD.

01:16PM  2      Q.   LET'S LOOK AT EXHIBIT 5629.

01:17PM  3      A.   I DON'T KNOW IF I HAVE THAT ONE HERE.

01:17PM  4           MR. LEACH:  I'M MOVING INTO A SLIGHTLY DIFFERENT

01:17PM  5      TOPIC, YOUR HONOR, IF NOW MIGHT BE A CONVENIENT TIME FOR A

01:17PM  6      BREAK?

01:17PM  7           THE COURT:  DOES THIS WORK FOR A BREAK, FOLKS?

01:17PM  8        MR. DOWNEY, ANY OPPOSITION TO A BREAK NOW?

01:17PM  9           MR. DOWNEY:  NO.

01:17PM  10          THE COURT:  ALL RIGHT.  LET'S TAKE A 30 MINUTE BREAK

01:17PM  11     NOW.

01:17PM  12        (RECESS FROM 1:17 P.M. UNTIL 1:56 P.M.)

01:56PM  13          THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

01:56PM  14     THE RECORD.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT AGAIN.

01:56PM  15        OUR JURY IS PRESENT.

01:56PM  16        MR. LEACH, WOULD YOU LIKE TO CONTINUE?

01:56PM  17          MR. LEACH:  YES.  THANK YOU.

01:56PM  18     Q.   GOOD AFTERNOON, MS. HOLMES.

01:56PM  19     A.   GOOD AFTERNOON.

01:56PM  20     Q.   WOULD YOU AGREE WITH ME THAT THERE WERE ASPECTS OF YOUR

01:56PM  21     BUSINESS RELATIONSHIP WHERE MR. BALWANI DEFERRED TO YOU?

01:56PM  22     A.   I'M SURE THERE WERE.

01:56PM  23     Q.   YOU'RE SURE THAT THERE ARE AREAS WHERE HE DEFERRED TO YOU

01:56PM  24     ON ASPECTS OF THERANOS'S BUSINESS?

01:56PM  25     A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                    8095

01:56PM   1      Q.   AND WOULD ONE OF THOSE AREAS BE SAFEWAY?

01:57PM   2      A.   THAT'S POSSIBLE.

01:57PM   3      Q.   WELL, YOU HAD A VERY CLOSE RELATIONSHIP WITH STEVE BURD,

01:57PM   4      THE CEO OF SAFEWAY?

01:57PM   5      A.   I DID.

01:57PM   6      Q.   AND ON THE THERANOS SIDE, YOU WERE RESPONSIBLE FOR THE

01:57PM   7      SAFEWAY RELATIONSHIP AT LEAST UNTIL MR. BURD LEFT THE COMPANY

01:57PM   8      IN MAY OF 2013?

01:57PM   9      A.   YES.

01:57PM   10     Q.   AND IF THE TWO OF YOU -- IF YOU AND MR. BALWANI DISAGREED

01:57PM   11     ON A MATTER PERTAINING TO SAFEWAY PRIOR TO MAY OF 2013, IT WAS

01:57PM   12     PROBABLY YOU WHO WOULD MAKE THE ULTIMATE DECISION?

01:57PM   13     A.   POTENTIALLY.

01:57PM   14     Q.   WELL, YOU RECALL BEING ASKED THAT QUESTION BEFORE, RIGHT,

01:57PM   15     MS. HOLMES?

01:57PM   16     A.   I DON'T, BUT I'M SURE I HAVE BEEN.

01:57PM   17     Q.   OKAY.  WELL, LET ME DRAW YOUR ATTENTION TO THE RED BINDER.

01:57PM   18     A.   OKAY.

01:57PM   19     Q.   AND IF YOU COULD PLEASE LOOK AT PAGE 5270, AND I WOULD

01:58PM   20     DRAW YOUR ATTENTION TO PAGE 55 OF THE TRANSCRIPT.

01:58PM   21     A.   OKAY.

01:58PM   22           MR. LEACH:  AND, YOUR HONOR, I SEEK PERMISSION TO

01:58PM   23     READ FROM PAGE 55, LINE 20 TO PAGE 56, LINE 4.

01:58PM   24           THE COURT:  YES.

01:58PM   25     BY MR. LEACH:

HOLMES CROSS BY MR. LEACH (RES.)                                    8096

| | | |
|---|---|---|
| 01:58PM | 1 | Q.   MS. HOLMES, YOU WERE ASKED THE QUESTION, "SO I THINK WE |
| 01:58PM | 2 | MENTIONED A NUMBER OF DIFFERENT AREAS OF THE COMPANY, BUT, FOR |
| 01:58PM | 3 | INSTANCE, ON BUSINESS PARTNERSHIPS, YOU KNOW, WHO WOULD BE THE |
| 01:58PM | 4 | ONE WHO WOULD MAKE THE ULTIMATE DECISION IF THE TWO OF YOU |
| 01:58PM | 5 | DISAGREED? |
| 01:59PM | 6 | "ANSWER:  IF IT PERTAINED TO WALGREENS, IT WAS SUNNY. |
| 01:59PM | 7 | "IF IT PERTAINED TO SAFEWAY, PROBABLY ME. |
| 01:59PM | 8 | "BUT IT DEPENDS ON WHAT THE ISSUE WAS.  IF IT HAD TO DO |
| 01:59PM | 9 | WITH SOMETHING THAT WAS IN A FUNCTIONAL AREA THAT HE WAS |
| 01:59PM | 10 | MANAGING, I WOULD DEFER TO HIM." |
| 01:59PM | 11 | THAT WAS YOUR TESTIMONY BEFORE THE S.E.C.; CORRECT? |
| 01:59PM | 12 | A.   YES. |
| 01:59PM | 13 | Q.   AND YOU TOOK AN OATH EACH OF THE THREE DAYS YOU WERE THERE |
| 01:59PM | 14 | WITH THE S.E.C.? |
| 01:59PM | 15 | A.   I DID. |
| 01:59PM | 16 | Q.   THE SAME ONE THAT YOU'RE TAKING TODAY? |
| 01:59PM | 17 | A.   YES. |
| 01:59PM | 18 | Q.   AND ISN'T IT TRUE THAT MR. BALWANI DEFERRED TO YOU ON |
| 01:59PM | 19 | DEALINGS WITH THE MILITARY? |
| 01:59PM | 20 | A.   I THINK PROBABLY IN MANY OF THEM, YES. |
| 01:59PM | 21 | Q.   OKAY.  YOU WERE HERE WHEN MR. EDLIN TESTIFIED? |
| 01:59PM | 22 | A.   YES, I WAS. |
| 01:59PM | 23 | Q.   OKAY.  AND DO YOU RECALL HIM SAYING SHE WAS HIGHLY -- THAT |
| 01:59PM | 24 | YOU WERE HIGHLY INVOLVED IN MATTERS WITH THE MILITARY? |
| 01:59PM | 25 | A.   I DO. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8097

01:59PM   1    Q.   AND IF HE HAD ANY FORM OF SUBSTANTIVE COMMUNICATION WITH

01:59PM   2    THE MILITARY, HE CAME TO YOU?

01:59PM   3    A.   YES.

01:59PM   4    Q.   NOT MR. BALWANI?

01:59PM   5    A.   YES.

01:59PM   6    Q.   ISN'T IT TRUE THAT MR. BALWANI DEFERRED TO YOU ON ASPECTS

02:00PM   7    OF INVENTIONS AT THERANOS?

02:00PM   8    A.   HE DID.

02:00PM   9    Q.   IF YOU THOUGHT THE MINILAB SHOULD WORK IN A PARTICULAR

02:00PM   10   WAY, YOU WEREN'T GOING TO TAKE ADVICE FROM MR. BALWANI ON THAT;

02:00PM   11   IS THAT FAIR?

02:00PM   12   A.   I WOULD TAKE HIS ADVICE, BUT HE WOULD DEFER TO ME.

02:00PM   13   Q.   FAIR ENOUGH.  HE WOULD DEFER TO YOU ON THAT ASPECT OF

02:00PM   14   THERANOS'S BUSINESS?

02:00PM   15   A.   YES.

02:00PM   16   Q.   OKAY.  HOW ABOUT WITH REGULATORY MATTERS?  ISN'T IT THE

02:00PM   17   CASE THAT YOU AND MR. BALWANI WERE JOINTLY INVOLVED IN THE

02:00PM   18   REGULATORY STRATEGY?

02:00PM   19   A.   WE WERE.

02:00PM   20   Q.   AND GENERALLY, YOU AND MR. BALWANI WOULD BE INVOLVED IN

02:00PM   21   FIRING PERSONNEL?

02:00PM   22   A.   WE COULD BE.

02:00PM   23   Q.   DO YOU HAVE THE RED BINDER THERE?

02:00PM   24   A.   I DO.

02:00PM   25   Q.   OKAY.  LET ME DRAW YOUR ATTENTION, PLEASE, TO 5269.

HOLMES CROSS BY MR. LEACH (RES.)                                    8098

| | | |
|---|---|---|
| 02:01PM | 1 | YOUR HONOR, I SEEK PERMISSION TO READ FROM PAGE 53, |
| 02:01PM | 2 | LINE 19 TO LINE 21. |
| 02:01PM | 3 | THE COURT:  YES. |
| 02:01PM | 4 | BY MR. LEACH: |
| 02:01PM | 5 | Q.  YOU WERE ASKED THE QUESTION, "SO GENERALLY YOU AND |
| 02:01PM | 6 | MR. BALWANI WOULD BE INVOLVED IN FIRING PERSONNEL? |
| 02:01PM | 7 | "ANSWER:  I THINK SO, YEAH." |
| 02:01PM | 8 | THAT WAS YOUR TESTIMONY BEFORE THE S.E.C.; CORRECT? |
| 02:01PM | 9 | A.  IT IS. |
| 02:01PM | 10 | Q.  AND ISN'T IT TRUE THAT YOU -- OR THAT MR. BALWANI DEFERRED |
| 02:01PM | 11 | TO YOU ON MARKETING MATTERS? |
| 02:01PM | 12 | A.  IN CERTAIN CIRCUMSTANCES, YES. |
| 02:01PM | 13 | Q.  ISN'T IT TRUE THAT ON SOME OCCASIONS MR. BALWANI |
| 02:01PM | 14 | COMPLETELY DISENGAGED FROM MARKETING SO THAT YOU COULD MANAGE |
| 02:02PM | 15 | IT? |
| 02:02PM | 16 | A.  PROBABLY. |
| 02:02PM | 17 | Q.  WELL, LET'S LOOK AT AN EXAMPLE.  IF YOU CAN LOOK IN YOUR |
| 02:02PM | 18 | BINDER AT EXHIBIT 5541.  THIS MIGHT BE ONE THAT YOU DON'T HAVE. |
| 02:02PM | 19 | A.  YEAH, I DON'T THINK I HAVE THAT ONE. |
| 02:02PM | 20 | MR. LEACH:  MAY I APPROACH, YOUR HONOR? |
| 02:02PM | 21 | THE COURT:  YES. |
| 02:02PM | 22 | BY MR. LEACH: |
| 02:02PM | 23 | Q.  (HANDING.) |
| 02:02PM | 24 | A.  THANK YOU. |
| 02:02PM | 25 | Q.  YOU'RE WELCOME. |

HOLMES CROSS BY MR. LEACH (RES.)

| | | |
|---|---|---|
| 02:02PM | 1 | DO YOU SEE YOUR NAME AT THE TOP OF THIS EMAIL, MS. HOLMES? |
| 02:03PM | 2 | A.   I DO. |
| 02:03PM | 3 | Q.   AND DO YOU SEE THAT MR. BALWANI'S NAME IS IN THE FROM |
| 02:03PM | 4 | LINE? |
| 02:03PM | 5 | A.   I DO. |
| 02:03PM | 6 | Q.   AND THE DATE OF THIS IS MAY 21ST, 2013? |
| 02:03PM | 7 | A.   YES. |
| 02:03PM | 8 | Q.   AND THE SUBJECT IS CHIAT/DAY? |
| 02:03PM | 9 | A.   YES. |
| 02:03PM | 10 | Q.   AND CHIAT/DAY WAS YOUR MARKETING FIRM? |
| 02:03PM | 11 | A.   THEY WERE. |
| 02:03PM | 12 | MR. LEACH:  OKAY.  I MOVE THE ADMISSION OF |
| 02:03PM | 13 | EXHIBIT 5541, YOUR HONOR. |
| 02:03PM | 14 | MR. DOWNEY:  NO OBJECTION, YOUR HONOR. |
| 02:03PM | 15 | THE COURT:  IT'S ADMITTED. |
| 02:03PM | 16 | (GOVERNMENT'S EXHIBIT 5541 WAS RECEIVED IN EVIDENCE.) |
| 02:03PM | 17 | BY MR. LEACH: |
| 02:03PM | 18 | Q.   IF I COULD DRAW YOUR ATTENTION TO THE BOTTOM EMAIL, |
| 02:03PM | 19 | MS. HOLMES, DO YOU SEE THERE'S A MESSAGE FROM SUNNY BALWANI ON |
| 02:03PM | 20 | MAY 21ST, 2013? |
| 02:03PM | 21 | A.   I DO. |
| 02:03PM | 22 | Q.   OKAY.  AND DO YOU SEE THE SECOND PARAGRAPH WHERE HE WROTE, |
| 02:03PM | 23 | "I WOULD LIKE TO COMPLETELY DISENGAGE MYSELF FROM ALL THINGS |
| 02:04PM | 24 | CHIAT DAY SO YOU AND THE GUYS CAN MANAGE ALL THAT IS ASKED FROM |
| 02:04PM | 25 | THEM, ALL THAT IS NEEDED TO BE DELIVERED, ET CETERA, AND ALL |

| | | |
|---|---|---|
| 02:04PM | 1 | COMMUNICATIONS AND I CAN FOCUS ON OPERATIONS MANUFACTURING, |
| 02:04PM | 2 | SUPPLY CHAIN, MATERIALS MANAGEMENT, WALGREENS, CAPSYS." |
| 02:04PM | 3 | DO YOU SEE THAT LANGUAGE? |
| 02:04PM | 4 | A.  I DO. |
| 02:04PM | 5 | Q.  AND DID I READ THAT CORRECTLY? |
| 02:04PM | 6 | A.  YOU DID. |
| 02:04PM | 7 | Q.  AM I RIGHT THAT YOU HAD MANY BUSINESS MENTORS BESIDES |
| 02:04PM | 8 | MR. BALWANI? |
| 02:04PM | 9 | A.  I DID. |
| 02:04PM | 10 | Q.  OKAY.  ONE OF THOSE BUSINESS MENTORS WAS DON LUCAS? |
| 02:04PM | 11 | A.  YES. |
| 02:04PM | 12 | Q.  YOU TALKED A LOT ABOUT -- IT'S DON LUCAS, SENIOR; RIGHT? |
| 02:04PM | 13 | A.  YES. |
| 02:04PM | 14 | Q.  THERE'S A DON LUCAS, JUNIOR? |
| 02:04PM | 15 | A.  YES. |
| 02:04PM | 16 | Q.  HE WAS AN INVESTOR IN THERANOS TOO, RIGHT? |
| 02:04PM | 17 | A.  HE WAS. |
| 02:04PM | 18 | Q.  BUT DON LUCAS WAS A BUSINESS MENTOR OF YOURS; CORRECT? |
| 02:04PM | 19 | A.  HE WAS. |
| 02:04PM | 20 | Q.  HE CHAIRED YOUR BOARD FOR A NUMBER OF YEARS? |
| 02:05PM | 21 | A.  YES. |
| 02:05PM | 22 | Q.  YOU WOULD GO TO HIM FOR BUSINESS ADVICE FREQUENTLY? |
| 02:05PM | 23 | A.  I DID. |
| 02:05PM | 24 | Q.  AND YOU VIEWED HIM AS VERY KNOWLEDGEABLE IN FINANCE AREAS? |
| 02:05PM | 25 | A.  I DID. |

| | | |
|---|---|---|
| 02:05PM | 1 | Q.   AND HE WAS A VERY SUCCESSFUL ORACLE EXECUTIVE; CORRECT? |
| 02:05PM | 2 | A.   HE WAS ON THE ORACLE BOARD, YES. |
| 02:05PM | 3 | Q.   OKAY.  BUT HE KNEW HOW TO BUILD A BUSINESS? |
| 02:05PM | 4 | A.   I THINK SO. |
| 02:05PM | 5 | Q.   OKAY.  AND HE PASSED AWAY AT SOME POINT IN 2019? |
| 02:05PM | 6 | A.   HE DID. |
| 02:05PM | 7 | Q.   OKAY.  AND HE STEPPED DOWN FROM THERANOS ACTIVITIES AROUND |
| 02:05PM | 8 | 2012, 2013? |
| 02:05PM | 9 | A.   2013, YEP. |
| 02:05PM | 10 | Q.   YOU WERE ALSO VERY CLOSE TO CHANNING ROBERTSON; RIGHT? |
| 02:05PM | 11 | A.   I WAS. |
| 02:05PM | 12 | Q.   HE WAS A MENTOR TO YOURS? |
| 02:05PM | 13 | A.   YES. |
| 02:05PM | 14 | Q.   EXCUSE ME.  HE WAS A MENTOR TO YOU? |
| 02:05PM | 15 | A.   YES. |
| 02:05PM | 16 | Q.   YOU FELT LIKE YOU COULD GO TO HIM ON ANY ASPECT OF |
| 02:05PM | 17 | THERANOS'S BUSINESS? |
| 02:05PM | 18 | A.   I DID. |
| 02:05PM | 19 | Q.   AND YOU FELT HE WAS VERY, VERY KNOWLEDGEABLE ON HOW TO |
| 02:05PM | 20 | BUILD DEVICES AND HOW TO BUILD A COMPANY? |
| 02:05PM | 21 | A.   I DID. |
| 02:05PM | 22 | Q.   AND IF THERE WERE ISSUES ON HOW TO BUILD THE BUSINESS AND |
| 02:06PM | 23 | AN ASPECT OF WHERE TO GO, YOU FELT FREE ON GOING TO HIM FOR |
| 02:06PM | 24 | ADVICE AND WISDOM? |
| 02:06PM | 25 | A.   I DID. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8102

02:06PM   1    Q.   I THINK WE TALKED ABOUT GEORGE SHULTZ EARLIER.  YOU WERE

02:06PM   2    VERY CLOSE TO HIM?

02:06PM   3    A.   YES.

02:06PM   4    Q.   AND GEORGE SHULTZ WAS THE FORMER SECRETARY OF THE

02:06PM   5    TREASURY?

02:06PM   6    A.   YES.

02:06PM   7    Q.   AND HE WAS THE FORMER SECRETARY OF STATE?

02:06PM   8    A.   YES.

02:06PM   9    Q.   HE STARED DOWN THE SOVIET UNION IN THE COLD WAR?

02:06PM  10    A.   I'VE BEEN TOLD THIS.

02:06PM  11    Q.   YOU'VE BEEN TOLD THAT?

02:06PM  12    A.   YES.

02:06PM  13    Q.   AND YOU HAD GREAT RESPECT FOR HIS BUSINESS EXPERIENCE AND

02:06PM  14    HIS POLITICAL WISDOM?

02:06PM  15    A.   I DID.

02:06PM  16    Q.   AND YOU WOULD MEET WITH HIM ALMOST WEEKLY?  AM I RIGHT

02:06PM  17    ABOUT THAT?

02:06PM  18    A.   I DID.

02:06PM  19    Q.   AND YOU FELT LIKE YOU COULD GO TO HIM WITH ANY ISSUE

02:06PM  20    RELATING TO THERANOS?

02:06PM  21    A.   I DID.

02:06PM  22    Q.   OKAY.  YOU FELT IF THERE WAS SOME ASPECT OF THE BUSINESS,

02:06PM  23    BE IT FINANCE, MILITARY, YOU COULD GO TO HIM WITH QUESTIONS?

02:06PM  24    A.   I DID.

02:06PM  25    Q.   YOU WERE ALSO CLOSE TO HENRY KISSINGER; IS THAT CORRECT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8103

02:06PM   1    A.   I WAS.

02:06PM   2    Q.   AND HENRY KISSINGER WAS A FORMER NATIONAL SECURITY

02:07PM   3    ADVISOR?

02:07PM   4    A.   YES.

02:07PM   5    Q.   HE WAS A FORMER SECRETARY OF STATE?

02:07PM   6    A.   YES.

02:07PM   7    Q.   HE WON THE NOBEL PEACE PRIZE?

02:07PM   8    A.   HE DID.

02:07PM   9    Q.   VERY DISTINGUISHED STATESMAN; IS THAT FAIR?

02:07PM  10    A.   HE WAS.

02:07PM  11    Q.   AND HE SERVED ON OTHER BOARDS; CORRECT?

02:07PM  12    A.   YES.

02:07PM  13    Q.   AND YOU HAD TREMENDOUS RESPECT FOR HIS WISDOM AND

02:07PM  14    ABILITIES AND ABILITY TO GUIDE YOU IN RUNNING THE THERANOS

02:07PM  15    BUSINESS?

02:07PM  16    A.   I DID.

02:07PM  17    Q.   AND IF THERE WERE ANY ASPECT OF OPERATIONS AT THERANOS OR

02:07PM  18    MANAGEMENT ISSUES OR ANYTHING RELATING TO THE BUSINESS, YOU

02:07PM  19    FELT COMFORTABLE GOING TO HIM?

02:07PM  20    A.   I DID.

02:07PM  21    Q.   YOU WERE ALSO CLOSE TO WILLIAM PERRY; IS THAT CORRECT?

02:07PM  22    A.   I WAS.

02:07PM  23    Q.   WILLIAM PERRY WAS A FORMER SECRETARY OF DEFENSE?

02:07PM  24    A.   YES.

02:07PM  25    Q.   AND HE JOINED THE BOARD AT SOME POINT IN 2013?

HOLMES CROSS BY MR. LEACH (RES.)                                      8104

02:07PM  1      A.   HE DID.

02:07PM  2      Q.   OKAY.  AND YOU HAD TREMENDOUS RESPECT FOR HIS ABILITY TO

02:07PM  3      GIVE YOU ADVICE AND WISDOM ABOUT HOW TO OPERATE AND MANAGE

02:08PM  4      THERANOS?

02:08PM  5      A.   I DID.

02:08PM  6      Q.   IF THERE WERE ANY ISSUE, YOU FELT YOU COULD GO TO HIM?

02:08PM  7      A.   I DID.

02:08PM  8      Q.   YOU ALSO TALKED ABOUT WILLIAM FOEGE.

02:08PM  9           DO YOU RECALL MENTIONING WILLIAM FOEGE?

02:08PM 10      A.   YES.

02:08PM 11      Q.   HE WAS A FORMER LEADER AT THE CDC?

02:08PM 12      A.   YES.

02:08PM 13      Q.   AND HE JOINED YOUR BOARD AT SOME POINT AFTER 2013?

02:08PM 14      A.   YES.

02:08PM 15      Q.   AND YOU HAD TREMENDOUS RESPECT FOR HIS ABILITIES TO GUIDE

02:08PM 16      THE THERANOS BUSINESS?

02:08PM 17      A.   I DID, YES.

02:08PM 18      Q.   AND IF THERE WERE ANY ASPECTS OF THERANOS'S OPERATIONS,

02:08PM 19      YOU FELT COMFORTABLE GOING TO HIM?

02:08PM 20      A.   YES.

02:08PM 21      Q.   YOU ALSO HAD A RELATIONSHIP WITH SAM NUNN; IS THAT

02:08PM 22      CORRECT?

02:08PM 23      A.   I DID.

02:08PM 24      Q.   AND SAM NUNN IS A FORMER SENATOR FROM GEORGIA?

02:08PM 25      A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                      8105

02:08PM   1        Q.   AND SERVED ON THE BOARD OF COCA-COLA?

02:08PM   2        A.   HE DID.

02:08PM   3        Q.   YOU HAD TREMENDOUS RESPECT FOR HIS BUSINESS ACUMEN?

02:08PM   4        A.   I DID.

02:08PM   5        Q.   YOU FELT YOU COULD GO TO FORMER SENATOR NUNN WITH ANY

02:09PM   6   QUESTION YOU HAD ABOUT HOW TO OPERATE THERANOS, RUN THE

02:09PM   7   BUSINESS, MANAGE THE FINANCES, NO RESTRICTION; IS THAT FAIR?

02:09PM   8        A.   I DID.

02:09PM   9        Q.   YOU'VE ALSO TALKED ABOUT RICHARD KOVACEVICH.

02:09PM  10             DO YOU RECALL TALKING ABOUT HIM?

02:09PM  11        A.   I DO.

02:09PM  12        Q.   AND HE WAS THE FORMER CEO OF WELLS FARGO?

02:09PM  13        A.   YES.

02:09PM  14        Q.   AND A VERY RESPECTED BUSINESSMAN?

02:09PM  15        A.   YES.

02:09PM  16        Q.   AND HE JOINED YOUR BOARD -- HE RETIRED FROM WELLS FARGO IN

02:09PM  17   OR AROUND 2009?

02:09PM  18        A.   I THINK SO.

02:09PM  19        Q.   AND HE JOINED YOUR BOARD AT SOME POINT, WAS IT AFTER 2013?

02:09PM  20        A.   2013 OR 2014.  ONE OF THOSE TWO.

02:09PM  21        Q.   OKAY.  AND YOU HAD TREMENDOUS RESPECT FOR HIS BUSINESS

02:09PM  22   ACUMEN?

02:09PM  23        A.   I DID.

02:09PM  24        Q.   YOU FELT YOU COULD GO TO HIM WITH ANY QUESTION YOU HAD

02:09PM  25   ABOUT THERANOS'S FINANCES, THERANOS'S OPERATIONS, ANY ASPECT OF

HOLMES CROSS BY MR. LEACH (RES.)                                        8106

02:09PM   1     ITS BUSINESS?

02:09PM   2     A.   YES.

02:09PM   3     Q.   OKAY.  YOU ALSO FORMED A RELATIONSHIP WITH JIM MATTIS; IS

02:10PM   4     THAT FAIR?

02:10PM   5     A.   YES.

02:10PM   6     Q.   GENERAL MATTIS?

02:10PM   7     A.   YES.

02:10PM   8     Q.   WENT ON TO BECOME THE SECRETARY OF DEFENSE?

02:10PM   9     A.   HE DID.

02:10PM   10    Q.   OKAY.  HE WAS THE LEADER AT CENTCOM?

02:10PM   11    A.   YES.

02:10PM   12    Q.   AND HE JOINED YOUR BOARD IN 2013?

02:10PM   13    A.   HE DID.

02:10PM   14    Q.   AND RESIGNED AT SOME POINT IN 2016?

02:10PM   15    A.   YES.

02:10PM   16    Q.   AND YOU WOULD MEET WITH GENERAL MATTIS REGULARLY; IS THAT

02:10PM   17    RIGHT?

02:10PM   18    A.   I DID.

02:10PM   19    Q.   YOU WOULD GO TO HIS OFFICE AT STANFORD, OR HIS RESIDENCE

02:10PM   20    AT STANFORD, AND HAVE WEEKLY MEETINGS WITH HIM?

02:10PM   21    A.   I NEVER WENT TO HIS OFFICE AT STANFORD, BUT I MET WITH HIM

02:10PM   22    REGULARLY.  HE WOULD COME TO THERANOS.

02:10PM   23    Q.   OH, SO GENERAL MATTIS CAME TO YOU?

02:10PM   24    A.   HE DID.

02:10PM   25    Q.   OKAY.  AND HE GAVE YOU ADVICE ABOUT MANY MATTERS RELATING

| | | |
|---|---|---|
| 02:10PM | 1 | TO THERANOS'S BUSINESS? |
| 02:10PM | 2 | A.   HE DID. |
| 02:10PM | 3 | Q.   HE GAVE YOU ADVICE RELATING TO HR ISSUES RELATING TO |
| 02:10PM | 4 | THERANOS? |
| 02:10PM | 5 | A.   ABOUT MANAGEMENT, YES. |
| 02:10PM | 6 | Q.   OKAY.  AND YOU FELT FREE TO GO WITH HIM -- AND YOU HAD |
| 02:11PM | 7 | RESPECT FOR HIS ACUMEN AS A LEADER? |
| 02:11PM | 8 | A.   I DID. |
| 02:11PM | 9 | Q.   AND YOU FELT IF THERE WAS ANY ISSUE RELATING TO THERANOS'S |
| 02:11PM | 10 | OPERATIONS, ITS FINANCES, ITS BUSINESS, YOU COULD GO TO HIM FOR |
| 02:11PM | 11 | ADVICE? |
| 02:11PM | 12 | A.   I DID. |
| 02:11PM | 13 | Q.   IS IT TRUE THAT IN JULY OF 2013 YOU AND MR. BALWANI AGREED |
| 02:11PM | 14 | TO FORM A LIMITED LIABILITY COMPANY TOGETHER? |
| 02:11PM | 15 | A.   I THINK SO, YES. |
| 02:11PM | 16 | Q.   OKAY. |
| 02:11PM | 17 | MAY I APPROACH, YOUR HONOR? |
| 02:11PM | 18 | THE COURT:  YES. |
| 02:12PM | 19 | BY MR. LEACH: |
| 02:12PM | 20 | Q.   I'VE PLACED BEFORE YOU, MS. HOLMES, WHAT HAS BEEN MARKED |
| 02:12PM | 21 | AS 5652. |
| 02:12PM | 22 | DO YOU RECOGNIZE THIS AS AN OPERATING AGREEMENT FOR A |
| 02:12PM | 23 | LIMITED LIABILITY COMPANY THAT YOU AND MR. BALWANI FORMED? |
| 02:12PM | 24 | A.   I DO. |
| 02:12PM | 25 | Q.   AND ONE OF THE PURPOSES OF THIS LIMITED LIABILITY COMPANY |

HOLMES CROSS BY MR. LEACH (RES.)                              8108

02:12PM   1    WAS TO OWN THE HOME WHERE YOU AND MR. BALWANI LIVED?

02:12PM   2    A.   YES.

02:12PM   3              MR. LEACH:  YOUR HONOR, I OFFER EXHIBIT 5652.

02:12PM   4              MR. DOWNEY:  NO OBJECTION, YOUR HONOR, TO THIS

02:12PM   5    EXHIBIT.  NO OBJECTION TO THIS ONE.

02:12PM   6              THE COURT:  IT'S ADMITTED.

02:12PM   7         (GOVERNMENT'S EXHIBIT 5652 WAS RECEIVED IN EVIDENCE.)

02:12PM   8              MR. LEACH:  AND MAY WE PUBLISH, YOUR HONOR?

02:12PM   9              THE COURT:  YES.

02:12PM   10   BY MR. LEACH:

02:12PM   11   Q.   DO YOU SEE THE HEADING AT THE TOP, MS. HOLMES, OPERATING

02:12PM   12   AGREEMENT OF HMFR LLC?

02:13PM   13   A.   I DO.

02:13PM   14   Q.   THAT'S THE ACRONYM THAT WE'VE SEEN IN SOME OF THE TEXT

02:13PM   15   MESSAGES THAT IS SOME FORM OF PRAYER, OR GIVING THANKS TO GOD?

02:13PM   16   A.   IT IS.

02:13PM   17   Q.   OKAY.  LET ME DRAW YOUR ATTENTION TO PAGE 3.

02:13PM   18        IS THAT YOUR SIGNATURE?

02:13PM   19   A.   IT IS.

02:13PM   20   Q.   IS THAT MR. BALWANI'S SIGNATURE?

02:13PM   21   A.   YES.

02:13PM   22   Q.   OKAY.  YOU SIGNED THIS VOLUNTARILY?

02:13PM   23   A.   I DID.

02:13PM   24   Q.   IT WAS NOT AGAINST YOUR WILL?

02:13PM   25   A.   NO.

02:13PM  1    Q.   AND IF WE COULD GO TO -- BACK TO THE FIRST PAGE, THE TWO

02:13PM  2    MEMBERS OF THIS LIMITED LIABILITY COMPANY ARE YOU AND

02:13PM  3    MR. BALWANI.

02:13PM  4         AM I RIGHT ABOUT THAT?

02:13PM  5    A.   YES.

02:13PM  6    Q.   AND ON PAGE 4, DOES IT SPELL OUT THE RESPECTIVE MEMBERSHIP

02:13PM  7    INTERESTS, PERCENTAGE INTEREST OF THE LLC?

02:13PM  8    A.   IT DOES.

02:13PM  9    Q.   OKAY.  THERE'S A MAILING ADDRESS 227 PARK LANE, ATHERTON,

02:14PM  10   CALIFORNIA 94027.

02:14PM  11        DO YOU SEE THAT?

02:14PM  12   A.   I DO.

02:14PM  13   Q.   AND THAT'S THE HOME WHERE YOU AND MR. BALWANI LIVED?

02:14PM  14   A.   YES.

02:14PM  15   Q.   AND TO THE RIGHT IT ASSIGNS TO MR. BALWANI A 50 PERCENT

02:14PM  16   INTEREST FOR THIS LIMITED LIABILITY COMPANY?

02:14PM  17   A.   IT DOES.

02:14PM  18   Q.   IN THE MAILING ADDRESS 855 EL CAMINO REAL, SUITE 13A,

02:14PM  19   THAT'S A P.O. BOX, ISN'T IT?

02:14PM  20   A.   IT IS.

02:14PM  21   Q.   AND AM I RIGHT THAT ONE OF THE ASSETS HMFR OWNED WAS

02:14PM  22   227 PARK LANE IN ATHERTON?

02:14PM  23   A.   YES.

02:14PM  24   Q.   I'D LIKE TO DRAW YOUR ATTENTION TO WHAT HAS BEEN MARKED AS

02:14PM  25   EXHIBIT 5512.

HOLMES CROSS BY MR. LEACH (RES.)                                    8110

| | | |
|---|---|---|
| 02:15PM | 1 | A.   I DON'T KNOW THAT I HAVE THAT ONE. |
| 02:15PM | 2 | MR. LEACH:  MAY I APPROACH, YOUR HONOR? |
| 02:15PM | 3 | THE COURT:  YES. |
| 02:15PM | 4 | BY MR. LEACH: |
| 02:15PM | 5 | Q.   (HANDING.) |
| 02:15PM | 6 | DO YOU RECOGNIZE THE IMAGE ON EXHIBIT 5512? |
| 02:15PM | 7 | A.   I DO. |
| 02:15PM | 8 | Q.   AND DO YOU RECOGNIZE THE IMAGE ON THE SECOND PAGE OF |
| 02:15PM | 9 | EXHIBIT 5512? |
| 02:15PM | 10 | A.   I DO. |
| 02:15PM | 11 | Q.   IS THIS 227 PARK LANE, ATHERTON? |
| 02:15PM | 12 | A.   IT IS. |
| 02:15PM | 13 | Q.   AND THIS IS THE HOME THAT YOU AND MR. BALWANI SHARED? |
| 02:15PM | 14 | A.   YES. |
| 02:15PM | 15 | MR. LEACH:  YOUR HONOR, I OFFER EXHIBIT 5512. |
| 02:15PM | 16 | MR. DOWNEY:  YOUR HONOR, 403, AND CONTRARY TO ORDER |
| 02:15PM | 17 | AT DOCKET 798. |
| 02:16PM | 18 | (PAUSE IN PROCEEDINGS.) |
| 02:16PM | 19 | THE COURT:  THANK YOU.  I DON'T SEE THIS AS -- MAYBE |
| 02:16PM | 20 | YOU COULD LAY A LITTLE MORE FOUNDATION, IF YOU WILL, AS TO THE |
| 02:16PM | 21 | ISSUE THAT WAS RAISED IN 798 AND THE COURT'S RULING ON 798. |
| 02:16PM | 22 | MR. LEACH:  OKAY. |
| 02:16PM | 23 | Q.   YOU WERE AN EQUAL MEMBER OF THIS LLC, MS. HOLMES; IS THAT |
| 02:16PM | 24 | CORRECT? |
| 02:16PM | 25 | A.   I THOUGHT I WAS. |

02:16PM  1      Q.   OKAY.  YOU HAD A 50 PERCENT INTEREST IN THIS?

02:16PM  2      A.   I THOUGHT SO.

02:16PM  3      Q.   AND SO 50 PERCENT OF THE ASSETS OF THIS LLC WERE YOUR

02:16PM  4      ASSETS THAT YOU FELT YOU COULD USE HOW YOU SAW FIT?

02:16PM  5      A.   I THOUGHT SO.

02:16PM  6      Q.   AND THIS WAS THE HOME WHERE YOU AND MR. BALWANI LIVED FROM

02:17PM  7      2013 THROUGH 2016?

02:17PM  8      A.   YES.

02:17PM  9      Q.   YOU TALKED ABOUT MOVING OUT.

02:17PM  10          IS THIS THE PLACE THAT YOU MOVED OUT FROM?

02:17PM  11     A.   IT IS.

02:17PM  12     Q.   OKAY.  AND I KNOW YOU TALKED ABOUT SOME EXPERIENCES WITH

02:17PM  13     MR. BALWANI IN YOUR DIRECT TESTIMONY, BUT DID SOME OF THOSE

02:17PM  14     EVENTS OCCUR AT 227 PARK LANE IN ATHERTON?

02:17PM  15     A.   THEY DID.

02:17PM  16     Q.   OKAY.  AND YOU WOULD HAVE FOLKS FROM THERANOS COME AND

02:17PM  17     VISIT YOU FROM TIME TO TIME AT THIS ADDRESS.  IS THAT FAIR?

02:17PM  18     A.   YES.

02:17PM  19     Q.   OKAY.  FOR EXAMPLE, MR. EDLIN WAS THERE?

02:17PM  20     A.   HE WAS.

02:17PM  21     Q.   AND DO YOU RECALL TESTIMONY FROM MR. EDLIN WHEN HE WOULD

02:17PM  22     COME TO DINNER PARTIES AT YOUR HOUSE WHERE HE WOULD HAVE AN

02:17PM  23     OPPORTUNITY TO OBSERVE YOUR INTERACTIONS WITH MR. BALWANI IN A

02:17PM  24     SOCIAL SETTING?

02:17PM  25     A.   I DO.

HOLMES CROSS BY MR. LEACH (RES.)                                8112

02:17PM   1              MR. LEACH:  YOUR HONOR, I RENEW OUR MOTION TO ADMIT

02:18PM   2    5512.

02:18PM   3              THE COURT:  ALL RIGHT.

02:18PM   4              MR. DOWNEY:  SAME OBJECTION, YOUR HONOR.

02:18PM   5              THE COURT:  ALL RIGHT.  THANK YOU.

02:18PM   6         FIRST OF ALL, I DO THINK THAT THERE'S RELEVANCE TO THIS.

02:18PM   7    UNDER 403, AND REFERENCING DOCKET 798, SPECIFICALLY LINE 19 ON

02:18PM   8    PAGE 9 OF THE COURT'S PREVIOUS ORDER, I DO THINK THAT THE

02:18PM   9    PROBATIVE VALUE OF THIS, BASED ON THE FOUNDATION LAID,

02:18PM  10    OUTWEIGHS ANY PREJUDICIAL EFFECT.

02:18PM  11         AND THE REFERENCE THE PARTIES TO THOSE LINES IN THE

02:18PM  12    COURT'S ORDER.

02:18PM  13         SO IT WILL BE ADMITTED, AND IT MAY BE PUBLISHED.

02:18PM  14         (GOVERNMENT'S EXHIBIT 5512 WAS RECEIVED IN EVIDENCE.)

02:18PM  15              MR. LEACH:  OKAY.  THANK YOU, YOUR HONOR.

02:18PM  16    Q.   MS. HOLMES, DO YOU SEE AN IMAGE ON THE SCREEN NOW?

02:18PM  17    A.   I DO.

02:18PM  18    Q.   OKAY.  AND THAT'S THE RESIDENCE THAT WE'VE BEEN TALKING

02:18PM  19    ABOUT, 227 PARK LANE IN ATHERTON?

02:18PM  20    A.   IT IS.

02:18PM  21    Q.   OKAY.  AND IF WE COULD LOOK BRIEFLY AT THE SECOND PAGE.

02:19PM  22         WERE THERE OCCASIONS WHEN AN INVESTOR NAMED KENDRA FADIL

02:19PM  23    WOULD COME TO YOUR HOUSE AND PERFORM SERVICES FOR YOU AT THIS

02:19PM  24    ADDRESS?

02:19PM  25    A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                      8113

02:19PM  1      Q.   SHE WAS A CONTRACTOR OF YOURS?

02:19PM  2      A.   YES.

02:19PM  3      Q.   AND SHE ALSO BECAME AN INVESTOR AT SOME POINT IN TIME?

02:19PM  4      A.   SHE DID.

02:19PM  5      Q.   AND SHE WOULD COME TO YOUR HOUSE AND PERFORM SERVICES, AND

02:19PM  6      IN CONNECTION WITH GETTING TO KNOW YOU, SHE EXPRESSED AN

02:19PM  7      INTEREST IN INVESTING IN THERANOS?

02:19PM  8      A.   I THINK DON LUCAS HAD GIFTED HER SOME OF HIS SHARES, AND

02:19PM  9      SHE WANTED TO BE ABLE TO BUY ADDITIONAL SHARES.

02:19PM  10     Q.   AND THAT WAS AT SOME POINT IN 2013, 2014?

02:19PM  11     A.   YES.

02:19PM  12     Q.   OKAY.  AND AT SOME POINT IN 2016, DID SHE COME TO YOU

02:19PM  13     ATTEMPTING TO SELL HER SHARES BACK TO THE COMPANY?

02:19PM  14     A.   SHE DID.

02:19PM  15     Q.   AND YOU TOLD HER NO?

02:19PM  16     A.   WE COULDN'T, YES.

02:19PM  17     Q.   YOU TOLD HER NO?

02:19PM  18     A.   YES.

02:19PM  19     Q.   IS IT TRUE -- WE CAN TAKE THIS DOWN, MS. HOLLIMAN.

02:20PM  20          IS IT TRUE, MS. HOLMES, THAT YOU WERE AWAY FROM

02:20PM  21     MR. BALWANI FOR LARGE PERIODS OF TIME IN THE 2010 TO 2015 TIME

02:20PM  22     PERIOD?

02:20PM  23     A.   YES.

02:20PM  24     Q.   YOU TRAVELLED ON BUSINESS REGULARLY; IS THAT FAIR?

02:20PM  25     A.   I DID.

HOLMES CROSS BY MR. LEACH (RES.)                                    8114

02:20PM   1    Q.   AND YOU TRAVELLED WITHOUT MR. BALWANI ON MANY, IF NOT

02:20PM   2    MOST, OF THOSE OCCASIONS?

02:20PM   3    A.   CERTAINLY ON MANY.

02:20PM   4    Q.   OKAY.  IF WE LOOK AT EXHIBIT 5387, THERE WOULD BE MANY

02:20PM   5    INSTANCES OF YOU TEXTING MR. BALWANI FROM THE PLANE SAYING "I'M

02:20PM   6    ON MY WAY HOME," LOTS OF EVIDENCE IN THE TEXTS THAT YOU TWO

02:20PM   7    WERE PHYSICALLY SEPARATED FOR WEEKS OR DAYS ON END; IS THAT

02:20PM   8    FAIR?

02:20PM   9    A.   I'M SURE THERE IS, YES.

02:20PM   10   Q.   AM I RIGHT THAT YOU WERE ALSO INVOLVED IN ANOTHER ROMANTIC

02:20PM   11   RELATIONSHIP DURING THE TIME PERIOD 2010 TO 2015?

02:21PM   12   A.   NO.

02:21PM   13   Q.   DID YOU EVER TELL ANYBODY YOU WERE IN ANOTHER ROMANTIC

02:21PM   14   RELATIONSHIP DURING THAT TIME PERIOD?

02:21PM   15   A.   I'M SORRY, 2010 TO 2015?  I THINK FOR PART OF THAT.

02:21PM   16   Q.   WHICH PART OF THAT?

02:21PM   17   A.   THE BEGINNING PART.

02:21PM   18   Q.   SO THE BEGINNING PART OF 2010?

02:21PM   19   A.   YES.  YES.

02:21PM   20   Q.   OKAY.  HOW LONG DID THAT RELATIONSHIP LAST?

02:21PM   21   A.   IT DIDN'T.

02:21PM   22   Q.   OKAY.  I UNDERSTAND IT DIDN'T LAST, BUT MY QUESTION IS,

02:21PM   23   HOW LONG DID IT LAST?

02:21PM   24   A.   IT WAS NOT ACTUALLY A FORMAL RELATIONSHIP.

02:21PM   25   Q.   OKAY.  BUT YOU WERE ROMANTIC WITH SOMEBODY OTHER THAN

HOLMES CROSS BY MR. LEACH (RES.)                                    8115

02:21PM   1      MR. BALWANI DURING THE TIME PERIOD 2010 TO 2015?

02:21PM   2      A.   YES.

02:21PM   3      Q.   AND IN 2016 YOU, YOU PUSHED MR. BALWANI OUT OF THE

02:22PM   4      COMPANY; IS THAT FAIR?

02:22PM   5      A.   I ASKED HIM TO LEAVE.

02:22PM   6      Q.   YOU ASKED HIM TO LEAVE?

02:22PM   7      A.   YES.

02:22PM   8      Q.   AND THE BOARD SUPPORTED THAT DECISION?

02:22PM   9      A.   YES.

02:22PM  10      Q.   I'D LIKE TO SHOW -- TALK TO YOU ABOUT SOME ADVICE THAT YOU

02:22PM  11      RECEIVED PRIOR TO THE WALGREENS LAUNCH IN SEPTEMBER OF 2013.

02:22PM  12           DO YOU HAVE THAT TIME PERIOD IN MIND?

02:22PM  13      A.   I DO.

02:22PM  14      Q.   LET ME DRAW YOUR ATTENTION TO WHAT IS IN THE BINDER AS

02:22PM  15      EXHIBIT 3970.

02:23PM  16           DO YOU SEE YOUR NAME IN THE FROM LINE OF THIS EMAIL?

02:23PM  17      A.   I'M JUST FINDING IT.

02:23PM  18           OKAY, YES.

02:23PM  19      Q.   AND DO YOU SEE YOUR NAME IN THE FROM LINE?

02:23PM  20      A.   I DO.

02:23PM  21      Q.   AND THIS APPEARS TO BE AN EMAIL TO MR. BALWANI?

02:23PM  22      A.   YES.

02:23PM  23      Q.   AND DO YOU SEE THE DATE SEPTEMBER 5TH, 2013?

02:23PM  24      A.   I DO.

02:23PM  25                  MR. LEACH:  YOUR HONOR, I DON'T BELIEVE THIS IS IN

HOLMES CROSS BY MR. LEACH (RES.)                                    8116

02:23PM  1    EVIDENCE, SO I MOVE THE ADMISSION OF EXHIBIT 3970.

02:23PM  2                 MR. DOWNEY:  I DON'T HAVE IT AS BEING IN EVIDENCE,

02:23PM  3    BUT I HAVE NO OBJECTION.

02:23PM  4                 THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

02:23PM  5             (GOVERNMENT'S EXHIBIT 3970 WAS RECEIVED IN EVIDENCE.)

02:23PM  6    BY MR. LEACH:

02:23PM  7    Q.   LET ME DRAW YOUR ATTENTION TO THE BOTTOM EMAIL,

02:23PM  8    MS. HOLMES.

02:23PM  9         DO YOU SEE THERE'S AN EMAIL FROM YOU TO SOMEONE NAMED

02:23PM  10   KATE BEARDSLEY?

02:24PM  11   A.   I DO.

02:24PM  12   Q.   AND KATE BEARDSLEY WAS A LAWYER YOU HIRED TO REVIEW

02:24PM  13   THERANOS'S MARKETING MATERIAL?

02:24PM  14   A.   YES.

02:24PM  15   Q.   AND THE SUBJECT OF THIS IS "FORWARD DOT COM PDF."

02:24PM  16        WERE YOU FORWARDING A COPY OF WHAT WOULD HAVE BEEN

02:24PM  17   THERANOS'S WEBSITE AROUND THE TIME OF THE WALGREENS LAUNCH?

02:24PM  18   A.   YES.

02:24PM  19   Q.   I'D LIKE TO MOVE UP IN THE CHAIN AND FOCUS ON

02:24PM  20   MS. BEARDSLEY'S RESPONSE ON THURSDAY, SEPTEMBER 5TH, AT

02:24PM  21   8:58 A.M.

02:24PM  22        DO YOU SEE THAT HEADING THERE?

02:24PM  23   A.   YES.

02:24PM  24   Q.   AND SHE WROTE TO YOU, "I HAVEN'T QUITE WORKED MY WAY

02:24PM  25   THROUGH THE WHOLE WEBSITE, BUT I'M WORRIED."

HOLMES CROSS BY MR. LEACH (RES.)                                    8117

02:24PM   1          DO YOU SEE THAT LANGUAGE?

02:24PM   2     A.   I DO.

02:24PM   3     Q.   AND SHE WENT ON TO WRITE, "UNLESS SOMEONE ELSE HAS WORKED

02:24PM   4     THROUGH THIS WITH YOU, THE WHOLE THING NEEDS TO BE CAREFULLY

02:24PM   5     REVIEWED."

02:24PM   6          DID I READ THAT CORRECTLY?

02:24PM   7     A.   YES.

02:24PM   8     Q.   AND THERE'S A -- "HERE ARE A FEW OF THE GENERAL ISSUES

02:25PM   9     THAT NEED TO BE DISCUSSED."

02:25PM  10          AND I WANT TO DRAW YOUR ATTENTION TO SOME OF THE BULLETS

02:25PM  11     HERE IN MS. BEARDSLEY'S EMAIL.

02:25PM  12          DO YOU SEE NUMBER 4, "THERE ARE MANY COMPARATIVE CLAIMS"?

02:25PM  13     A.   I DO.

02:25PM  14     Q.   "FOR EXAMPLE, EVERY TIME YOU SAY BETTER WITHOUT SPECIFYING

02:25PM  15     WHAT IT IS BETTER THAN, YOU ARE MAKING A COMPARATIVE CLAIM AT

02:25PM  16     LEAST TO ALL MARKET LEADERS.  YOU MUST BE ABLE TO SUBSTANTIATE

02:25PM  17     THESE CLAIMS.  I DON'T KNOW IF WE HAVE SUBSTANTIATION FOR ALL

02:25PM  18     OF THESE, BUT I AM VERY WORRIED THAT WE ARE OPENING THE DOOR TO

02:25PM  19     BIG TROUBLE FROM COMPETITORS.  ALSO, THE WORDS THAT END IN

02:25PM  20     "EST" (EG HIGHEST QUALITY) CREATE PARITY CLAIMS AT LEAST AS TO

02:25PM  21     ALL OTHER MARKET LEADERS.  WE NEED TO BE ABLE TO BE SURE THAT

02:25PM  22     WE CAN SUBSTANTIATE THOSE AS WELL."

02:25PM  23          DID I READ THAT CORRECTLY?

02:25PM  24     A.   YOU DID.

02:25PM  25     Q.   AND THIS IS ADVICE THAT YOU'RE GETTING FROM MS. BEARDSLEY

02:26PM   1     AROUND THE WALGREENS LAUNCH AROUND SEPTEMBER 10TH, SOMETIME IN

02:26PM   2     EARLY SEPTEMBER?

02:26PM   3     A.   IT IS.

02:26PM   4     Q.   AND MS. BEARDSLEY WRITES DIRECTLY TO YOU, AM I RIGHT, IN

02:26PM   5     THIS EMAIL?

02:26PM   6     A.   SHE DID.

02:26PM   7     Q.   YOU'RE PASSING THAT ON TO MR. BALWANI?

02:26PM   8     A.   YES.

02:26PM   9     Q.   LET ME NEXT DRAW YOUR ATTENTION TO EXHIBIT 3981.

02:26PM   10          AND I BELIEVE THIS IS IN EVIDENCE, YOUR HONOR, BUT IF NOT,

02:26PM   11    I MOVE IT IN.

02:26PM   12              MR. DOWNEY:  IT IS, I THINK.

02:26PM   13              THE CLERK:  IT IS.

02:26PM   14              MR. LEACH:  OKAY.  PERMISSION TO DISPLAY?

02:26PM   15              THE COURT:  YES.

02:26PM   16    BY MR. LEACH:

02:26PM   17    Q.   DO YOU HAVE 3981 IN FRONT OF YOU, MS. HOLMES?

02:26PM   18    A.   I DO.

02:26PM   19    Q.   OKAY.  AND DO YOU RECALL TESTIMONY FROM DAN EDLIN ABOUT

02:27PM   20    THIS EMAIL RELATING TO THERANOS WEBSITE COMMENTS?

02:27PM   21    A.   I DO.

02:27PM   22    Q.   LET ME START FROM THE -- ON PAGE 5, IF WE COULD.

02:27PM   23          DO YOU SEE THERE'S THE INITIAL EMAIL THAT YOU SENT TO

02:27PM   24    MS. BEARDSLEY ON SEPTEMBER 4TH?

02:27PM   25    A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                      8119

02:27PM  1      Q.   AND MS. BEARDSLEY FORWARDS YOUR EMAIL TO ROBERT DORMER AND

02:27PM  2      JAIME WOLSZON.

02:27PM  3           DO YOU SEE THAT?

02:27PM  4      A.   I DO.

02:27PM  5      Q.   AND YOU UNDERSTOOD MR. DORMER AND MS. WOLSZON TO BE

02:27PM  6      ATTORNEYS WITH HYMAN PHELPS & MCNAMARA IN WASHINGTON, D.C.?

02:27PM  7      A.   YES.

02:27PM  8      Q.   AND THEY WERE ALSO BROUGHT ON TO REVIEW YOUR WEBSITE AND

02:27PM  9      PROVIDE FEEDBACK ABOUT WHAT WAS APPROPRIATE; IS THAT FAIR?

02:27PM 10      A.   YES.

02:28PM 11      Q.   MS. BEARDSLEY WRITES, "THIS IS THE THERANOS WEBSITE THAT

02:28PM 12      NEEDS TO BE REVIEWED.  IT IS SCHEDULED TO GO LIVE TOMORROW

02:28PM 13      NIGHT, SO THERE IS SOME URGENCY.  I THINK WE WILL NEED TO GET

02:28PM 14      ON THE PHONE WITH THE CLIENT ONCE WE KNOW WHAT WE WANT TO SAY.

02:28PM 15      YOU CAN REACH ME," AND THEN THERE'S A BUSINESS NUMBER.

02:28PM 16           DO YOU SEE THAT?

02:28PM 17      A.   I DO.

02:28PM 18      Q.   OKAY.  LET ME NEXT DRAW YOUR ATTENTION TO MR. WOLSZON'S

02:28PM 19      RESPONSE, W-O-L-S-Z-O-N?

02:28PM 20           AND IF WE CAN ZOOM OUT, MS. HOLLIMAN, TO ALSO CAPTURE THE

02:28PM 21      NEXT MESSAGE IN THE CHAIN, PLEASE.

02:28PM 22           DO YOU SEE THAT JAIME WOLSZON REPLIES ON SEPTEMBER 5TH,

02:28PM 23      2013, MS. HOLMES?

02:28PM 24      A.   I DO.

02:28PM 25      Q.   AND THIS IS ULTIMATELY FORWARDED TO YOU; CORRECT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8120

02:29PM  1     A.   IT IS.

02:29PM  2     Q.   AND JAIME WOLSZON WRITES, "PLEASE FIND BELOW MY COMMENTS

02:29PM  3     TO THE THERANOS WEBSITE," AND DO THOSE COMMENTS CONTINUE ON TO

02:29PM  4     THE NEXT PAGE?

02:29PM  5     A.   YES.

02:29PM  6     Q.   LET'S LOOK AT THE NEXT PAGE, PLEASE.

02:29PM  7          AND I WANT TO DRAW YOUR ATTENTION TO THE TOP BULLET.

02:29PM  8          DO YOU SEE WHERE IT SAYS, "PLEASE REMOVE REFERENCES TO

02:29PM  9     'ALL' TESTS AND REPLACE WITH STATEMENTS SUCH AS 'MULTIPLE' OR

02:29PM 10     'SEVERAL.'  IT IS HIGHLY UNLIKELY THAT THE LABORATORY CAN

02:29PM 11     PERFORM EVERY CONCEIVABLE TEST, BOTH FROM A LOGISTICAL

02:29PM 12     STANDPOINT AND BECAUSE THE CLIA CERTIFICATION DESIGNATES

02:29PM 13     SPECIFIC SPECIALTIES OF TESTS THE LAB PERFORMS."

02:29PM 14          DID I READ THAT CORRECTLY?

02:29PM 15     A.   YOU DID.

02:29PM 16     Q.   AND FURTHER DOWN THERE'S A BULLET THAT SAYS, "REPLACE

02:29PM 17     'HIGHEST QUALITY' WITH 'HIGH QUALITY.'"

02:29PM 18          DO YOU SEE THAT RECOMMENDATION?

02:29PM 19     A.   I DO.

02:29PM 20     Q.   AND BENEATH THAT IT SAYS, "ENSURE SUBSTANTIATION FOR

02:30PM 21     '4 HOURS OR LESS.'"

02:30PM 22          DID I READ THAT CORRECTLY?

02:30PM 23     A.   YES.

02:30PM 24     Q.   AND IF WE CAN ZOOM OUT, MS. HOLLIMAN, AND GO DOWN TO THE

02:30PM 25     NEXT SERIES OF BULLETS.

02:30PM   1        DO YOU SEE WHERE THE ATTORNEYS AT HYMAN PHELPS ARE SAYING,

02:30PM   2   "REPLACE 'HIGHEST LEVELS OF ACCURACY' WITH 'HIGH LEVELS OF

02:30PM   3   ACCURACY,'" THE THIRD BULLET FROM THE BOTTOM?

02:30PM   4   A.   I DO.

02:30PM   5   Q.   AND IF WE CAN GO TO THE NEXT PAGE, PLEASE.

02:30PM   6        DO YOU SEE THE THIRD BULLET WHERE ONE OF THE RECOMMENDED

02:31PM   7   CHANGES WAS, "CHANGE 'MORE PRECISE' TO 'PRECISE'"?

02:31PM   8   A.   I DO.

02:31PM   9   Q.   DO YOU SEE THE BULLET FOR "ENSURE SUBSTANTIATION FOR 'IT'S

02:31PM  10   A LESS INVASIVE, AND LESS PAINFUL EXPERIENCE'"?

02:31PM  11   A.   YES.

02:31PM  12   Q.   IF WE COULD ZOOM OUT, PLEASE, MS. HOLLIMAN, AND THEN LOOK

02:31PM  13   AT THE REMAINING BULLET.

02:31PM  14        DO YOU SEE THE FOURTH FROM THE BOTTOM IT SAYS, "ENSURE

02:31PM  15   SUBSTANTIATION FOR DRAMATICALLY LOWER"?

02:31PM  16   A.   I DO.

02:31PM  17   Q.   AND THESE WERE ALL COMMENTS THAT YOU WERE RECEIVING ON THE

02:31PM  18   EVE OF LAUNCHING YOUR PUBLIC WEBSITE ABOUT THERANOS'S WALGREENS

02:31PM  19   RELATIONSHIP?

02:31PM  20   A.   THEY ARE.

02:31PM  21   Q.   AND THESE ARE GOING IN THE FIRST INSTANCE TO YOU; CORRECT?

02:31PM  22   A.   THAT'S RIGHT.

02:31PM  23   Q.   AND YOU SHARE THEM WITH CHRISTIAN HOLMES AND MR. BALWANI

02:31PM  24   AND OTHER MEMBERS OF YOUR TEAM?

02:31PM  25   A.   I THINK SO, YES.  YES, I SHARED THEM WITH CHRISTIAN AND

HOLMES CROSS BY MR. LEACH (RES.)                                    8122

02:32PM  1    SUNNY, YES.

02:32PM  2    Q.   OKAY.  I'D NOW LIKE TO SHOW YOU SOME OF THE INVESTOR

02:32PM  3    POWERPOINTS THAT HAVE BEEN ADMITTED INTO EVIDENCE, AND I'D LIKE

02:32PM  4    TO START WITH EXHIBIT 4077.

02:32PM  5    A.   OKAY.

02:32PM  6    Q.   DO YOU RECALL MR. GROSSMAN TESTIFYING ABOUT EXHIBIT 4077?

02:32PM  7    A.   I DO.

02:32PM  8    Q.   OKAY.  LET ME DRAW YOUR ATTENTION, PLEASE, TO PAGE 17.

02:32PM  9         AND IF I COULD DRAW YOUR ATTENTION TO THAT LAST LANGUAGE

02:32PM 10    ON THE SLIDE, DO YOU SEE WHERE IT SAYS, "THERANOS PROVIDES THE

02:32PM 11    HIGHEST LEVEL OF OVERSIGHT, AUTOMATION, AND STANDARDIZATION IN

02:33PM 12    OUR PRE- AND POST-ANALYTIC PROCESSES, ENSURING THE HIGHEST

02:33PM 13    LEVELS OF ACCURACY AND PRECISION."

02:33PM 14         DO YOU SEE THAT LANGUAGE?

02:33PM 15    A.   I DO.

02:33PM 16    Q.   AND DID I READ THAT CORRECTLY?

02:33PM 17    A.   YOU DID.

02:33PM 18    Q.   AND THIS IS GOING TO MR. GROSSMAN IN JANUARY OF 2014?

02:33PM 19    A.   IT IS.

02:33PM 20    Q.   SO ROUGHLY THREE OR FOUR MONTHS AFTER THE WALGREENS

02:33PM 21    LAUNCH?

02:33PM 22    A.   YES.

02:33PM 23    Q.   AND THREE OR FOUR MONTHS AFTER YOU RECEIVED ADVICE FROM

02:33PM 24    THE ATTORNEYS AT HYMAN PHELPS?

02:33PM 25    A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                  8123

02:33PM  1    Q.   LET'S LOOK AT PAGE 21 OF THIS.

02:33PM  2         DO YOU SEE THE HEADING, "A NEW STANDARD IN QUALITY"?

02:33PM  3    A.   I DO.

02:33PM  4    Q.   AND DO YOU SEE BENEATH THAT THERE'S A BULLET, OR THE LINE,

02:33PM  5    "THE HIGHEST LEVELS OF ACCURACY"?

02:33PM  6    A.   I DO.

02:33PM  7    Q.   AND IN THE REMAINDER OF THE TEXT IT SAYS, "BY

02:33PM  8    SYSTEMATICALLY CONTROLLING AND STANDARDIZING OUR PROCESSES,

02:34PM  9    THERANOS OFFERS TESTS WITH THE HIGHEST LEVELS OF ACCURACY."

02:34PM 10         DO YOU SEE THAT LANGUAGE?

02:34PM 11    A.   I DO.

02:34PM 12    Q.   I READ THAT CORRECTLY?

02:34PM 13    A.   YOU DID.

02:34PM 14    Q.   AND THIS IS, AGAIN, IN JANUARY OF 2014?

02:34PM 15    A.   YES.

02:34PM 16    Q.   AFTER YOU GOT THE ADVICE FROM HYMAN & PHELPS?

02:34PM 17    A.   YES.

02:34PM 18    Q.   AND THERE'S ALSO THAT LESS THAN 10 PERCENT COEFFICIENT OF

02:34PM 19    VARIATION OF VITAMIN D.

02:34PM 20         DO YOU SEE THAT?

02:34PM 21    A.   I DO.

02:34PM 22    Q.   AND VITAMIN D WAS THE SAME ASSAY THAT MR. SHULTZ STARTS

02:34PM 23    RAISING CONCERNS ABOUT IN THE APRIL 2014 TIME PERIOD?

02:34PM 24    A.   YES.

02:34PM 25    Q.   AND LET'S LOOK NOW AT 4858.

HOLMES CROSS BY MR. LEACH (RES.)                                8124

02:35PM   1    A.   OKAY.

02:35PM   2    Q.   AND THIS IS IN EVIDENCE, SO WE CAN DISPLAY IT.

02:35PM   3         DO YOU SEE THE BATES LABEL IN THE BOTTOM RDV, MS. HOLMES?

02:35PM   4    A.   OH, SORRY.  I'M ON THE WRONG ONE.

02:35PM   5    Q.   IT'S ALSO ON THE SCREEN IF THAT'S EASIER FOR YOU.

02:35PM   6    A.   OKAY.  I DON'T HAVE A 4858.

02:35PM   7    Q.   ARE YOU COMFORTABLE?

02:35PM   8    A.   YEAH, YEAH, TOTALLY COMFORTABLE.

02:35PM   9    Q.   OKAY.  DO YOU SEE IN THE BOTTOM RIGHT-HAND CORNER THERE'S

02:35PM   10   A NUMBER RDV WITH SOME NUMBERS BY IT?

02:35PM   11   A.   I DO.

02:35PM   12   Q.   OKAY.  AND YOU WERE HERE WHEN LISA PETERSON TESTIFIED

02:35PM   13   ABOUT RDV'S INVESTMENT IN THERANOS?

02:35PM   14   A.   I WAS.

02:35PM   15   Q.   AND YOU WERE HERE WHEN SHE TESTIFIED ABOUT THIS

02:35PM   16   POWERPOINT?

02:35PM   17   A.   YES.

02:35PM   18   Q.   LET'S GO TO PAGE 5, PLEASE.

02:35PM   19        DO YOU SEE THE SLIDE, "THERANOS IS CERTIFIED AS A HIGH

02:35PM   20   COMPLEXITY CLIA LABORATORY"?

02:36PM   21   A.   I DO.

02:36PM   22   Q.   OKAY.  AND WE TALKED EARLIER ABOUT HOW THE CALIFORNIA

02:36PM   23   LABORATORY IS HIGH COMPLEXITY.

02:36PM   24        AT SOME POINT YOU ALSO HAVE AN ARIZONA LAB THAT IS

02:36PM   25   MODERATE COMPLEXITY?

HOLMES CROSS BY MR. LEACH (RES.)                                    8125

02:36PM   1    A.   YES.

02:36PM   2    Q.   AND HERE YOU'RE TALKING ABOUT THE HIGH COMPLEXITY?

02:36PM   3    A.   YES.

02:36PM   4    Q.   AND YOU'RE HOLDING THIS OUT AS PART OF THE INFORMATION FOR

02:36PM   5    INVESTORS TO GET COMFORT THAT YOUR TECHNOLOGY WORKS; IS THAT

02:36PM   6    FAIR?

02:36PM   7    A.   I THINK WE WERE TRYING TO DESCRIBE WHAT A HIGH COMPLEXITY

02:36PM   8    LAB WAS HERE IN TERMS OF WHAT REQUIREMENTS WERE IN PLACE FOR

02:36PM   9    ONE.

02:36PM  10    Q.   OKAY.  AND THIS WAS PART OF THE WAY THAT YOU PERSUADED

02:36PM  11    INVESTORS THAT THERANOS'S TECHNOLOGY WAS ACCURATE; ISN'T THAT

02:36PM  12    RIGHT?

02:36PM  13    A.   IT WAS PART OF WHY I BELIEVED IN OUR TECHNOLOGY, YES.

02:36PM  14    Q.   LET'S LOOK AT PAGE 7, PLEASE.

02:36PM  15         DO YOU SEE THE SLIDE TITLED "THERANOS PROFICIENCY TESTING

02:36PM  16    AND AUDITS"?

02:37PM  17    A.   I DO.

02:37PM  18    Q.   AND I THINK YOU TALKED TO MR. DOWNEY ABOUT THE CONCEPT OF

02:37PM  19    PROFICIENCY TESTING IN YOUR DIRECT EXAMINATION.

02:37PM  20         DO YOU RECALL THAT?

02:37PM  21    A.   I DID, YES.

02:37PM  22    Q.   AND PROFICIENCY TESTING WAS WHERE YOU, IF YOU HAVE AN FDA

02:37PM  23    APPROVED MACHINE IN A LAB, YOU RUN YOUR SAMPLES, REPORT THE

02:37PM  24    RESULTS TO SOME AGENCY, AND THOSE ARE COMPARED AGAINST OTHERS

02:37PM  25    RUNNING THAT SAME DEVICE?

HOLMES CROSS BY MR. LEACH (RES.)                          8126

02:37PM  1      A.   YES.

02:37PM  2      Q.   AND YOU TOOK THE POSITION AT THERANOS THAT BECAUSE THERE

02:37PM  3  WAS NO COMPARATOR FOR THE EDISON 3.5, OR THE MODIFIED SIEMENS

02:37PM  4  TEST, THAT YOU WERE GOING TO DO SOMETHING CALLED ALTERNATIVE

02:37PM  5  ASSESSMENT OF PROFICIENCY?

02:37PM  6      A.   YES.

02:37PM  7      Q.   AND THOSE WERE CONCEPTS THAT YOU WERE FAMILIAR WITH IN

02:37PM  8  2013 AND 2014?

02:37PM  9      A.   YES.

02:37PM 10      Q.   NOW, THIS SLIDE TALKS ABOUT PROFICIENCY TESTING THAT IS

02:37PM 11  OCCURRING IN 2011, 2012, AND 2013 BEFORE THE WALGREENS LAUNCH.

02:37PM 12          DO YOU SEE THAT?

02:38PM 13      A.   I DO.

02:38PM 14      Q.   AM I RIGHT THAT ANY PROFICIENCY TESTING THAT WAS DONE AT

02:38PM 15  THERANOS IN 2011 RELATED ONLY TO THE FDA APPROVED MACHINES?

02:38PM 16      A.   YES.

02:38PM 17      Q.   OKAY.  SO THIS BULLET API HEMATOLOGY, THAT DOESN'T SAY

02:38PM 18  ANYTHING ABOUT HOW THE EDISON 3.5 OR HOW THE MODIFIED SIEMENS

02:38PM 19  TESTS ARE PERFORMING?

02:38PM 20      A.   THAT'S RIGHT.

02:38PM 21      Q.   AND THAT WOULD ALSO BE RIGHT FOR THE PROFICIENCY TESTING

02:38PM 22  IN 2012?

02:38PM 23      A.   YES.

02:38PM 24      Q.   THOSE WOULD RELATE ONLY TO FDA APPROVED MACHINES RUNNING

02:38PM 25  FDA APPROVED TESTS?

HOLMES CROSS BY MR. LEACH (RES.)                                8127

02:38PM    1        A.   YES.

02:38PM    2        Q.   THEY DON'T SAY ANYTHING AT ALL ABOUT PROFICIENCY TESTING

02:38PM    3    ON THE EDISON, OR PROFICIENCY TESTING ON THE MODIFIED SIEMENS

02:38PM    4    MACHINES?

02:38PM    5        A.   YES.

02:38PM    6        Q.   OKAY.  AND THAT WOULD BE THE SAME FOR THE 2013 PROFICIENCY

02:38PM    7    TESTING THAT IS REPORTED HERE.  THESE WOULD RELATE ONLY TO FDA

02:38PM    8    APPROVED MACHINES?

02:39PM    9        A.   I THINK SO.

02:39PM   10        Q.   IN OTHER WORDS, THEY DON'T SAY ANYTHING ABOUT PROFICIENCY

02:39PM   11    TESTING ON YOUR MINILAB, ON YOUR EDISON 3.5, OR THE MODIFIED

02:39PM   12    SIEMENS MACHINES?

02:39PM   13        A.   I THINK SO.

02:39PM   14        Q.   OKAY.  HOW ABOUT 2014, CHLAMYDIA, YOU DIDN'T TEST FOR

02:39PM   15    CHLAMYDIA ON THE EDISON?

02:39PM   16        A.   NO.

02:39PM   17        Q.   THAT'S NOT AN IMMUNOASSAY?

02:39PM   18        A.   IT IS NOT.

02:39PM   19        Q.   HOW ABOUT HEPATITIS VIRAL LOAD-B?  THAT WAS NOT SOMETHING

02:39PM   20    YOU RAN ON THE EDISON, IS IT?

02:39PM   21        A.   IT IS NOT.

02:39PM   22        Q.   OKAY.  SO EVEN THE 2014 NUMBERS HERE DON'T SAY ANYTHING

02:39PM   23    ABOUT PROFICIENCY TESTING ON THE EDISON DEVICE OR YOUR MINILAB?

02:39PM   24        A.   CORRECT.

02:39PM   25        Q.   AND YOU WERE HOLDING THIS OUT TO INVESTORS SO THAT THEY

HOLMES CROSS BY MR. LEACH (RES.)                                    8128

02:39PM   1    COULD BE COMFORTABLE WITH THERANOS BECAUSE THEY HAD PASSED

02:39PM   2    PROFICIENCY TESTING IN 2011, 2012, AND 2013?

02:39PM   3    A.   YES, I WAS SHARING OUR PROFICIENCY TESTING SCORES FOR

02:40PM   4    THOSE YEARS.

02:40PM   5    Q.   AND YOU NEVER TOLD THE INVESTORS THAT THE NUMBERS ON THIS

02:40PM   6    SLIDE HAD ZERO TO DO WITH EDISON, DID YOU?

02:40PM   7    A.   WE DID NOT.  I DON'T REMEMBER EVER DISCUSSING THE NUMBERS

02:40PM   8    ON THIS SLIDE.

02:40PM   9    Q.   AND YOU NEVER TOLD AN INVESTOR THAT THE NUMBERS ON THIS

02:40PM   10   SCREENS HAVE ZERO TO DO WITH THE MODIFIED SIEMENS MACHINES?

02:40PM   11   A.   NO, I DON'T THINK WE DISCUSSED THE SLIDE.

02:40PM   12   Q.   YOU DIDN'T TALK ABOUT MODIFIED SIEMENS MACHINES WITH ANY

02:40PM   13   INVESTORS.

02:40PM   14        AM I RIGHT ABOUT THAT?

02:40PM   15   A.   I DID NOT.

02:40PM   16   Q.   LET ME NEXT ASK YOU TO LOOK AT EXHIBIT 39, OR ACTUALLY IF

02:40PM   17   WE COULD LOOK AT PAGE 28 OF THIS EXHIBIT.

02:40PM   18        IS THIS ANOTHER SLIDE THAT IS SIMILAR TO THE ONE THAT WE

02:40PM   19   SAW IN THE PFM PRESENTATION IN THE PRIOR EXHIBIT?

02:40PM   20   A.   YES.

02:40PM   21   Q.   OKAY.  AND THIS SLIDE ALSO HAS IN THAT THIRD LINE,

02:41PM   22   "THERANOS PROVIDES THE HIGHEST LEVEL OF OVERSIGHT, AUTOMATION,

02:41PM   23   AND STANDARDIZATION IN OUR PRE- AND POST-ANALYTIC PROCESSES,

02:41PM   24   ENSURING THE HIGHEST LEVELS OF ACCURACY AND PRECISION."

02:41PM   25        DID I READ THAT CORRECTLY?

HOLMES CROSS BY MR. LEACH (RES.)                          8129

02:41PM   1      A.   YOU DID.

02:41PM   2      Q.   AND THIS IS GOING TO RDV AT SOME POINT IN SEPTEMBER OR

02:41PM   3      OCTOBER OF 2014?

02:41PM   4      A.   I THINK SO.  I DON'T HAVE THE EMAIL, BUT THAT SOUNDS

02:41PM   5      RIGHT.

02:41PM   6      Q.   WELL, YOU REMEMBER THE BDT CONFERENCE IN SEPTEMBER OR

02:41PM   7      OCTOBER OF 2014?

02:41PM   8      A.   I DO.

02:41PM   9      Q.   AND YOU ASSOCIATE THAT WITH THE RDV INVESTMENT?

02:41PM  10      A.   I DO.

02:41PM  11      Q.   SO ARE YOU COMFORTABLE THAT THIS PRESENTATION IS SOMETIME

02:41PM  12      IN THE FALL OF 2014?

02:41PM  13      A.   YES.

02:41PM  14      Q.   AND MORE THAN A YEAR AFTER THE LAUNCH?

02:41PM  15      A.   YES.

02:41PM  16      Q.   AND MORE THAN A YEAR AFTER YOU GOT THE ADVICE FROM

02:41PM  17      HYMAN PHELPS ABOUT THE HIGHEST LEVELS OF ACCURACY?

02:41PM  18      A.   YES.

02:41PM  19      Q.   LET'S LOOK AT PAGE 30.

02:42PM  20           IS THIS SLIDE SIMILAR TO THE SLIDE THAT WE SAW IN THE PFM

02:42PM  21      PRESENTATION?

02:42PM  22      A.   IT IS.

02:42PM  23      Q.   AND IT ALSO INCLUDES TWICE HIGHEST LEVELS OF ACCURACY?

02:42PM  24      A.   IT DOES.

02:42PM  25      Q.   OKAY.  DAN YOUNG DIDN'T GO TO INVESTOR PRESENTATIONS; IS

02:42PM  1     THAT CORRECT?

02:42PM  2     A.   NOT GENERALLY.  HE MAY HAVE BEEN AT SOME.

02:42PM  3     Q.   YOU DON'T HAVE A SPECIFIC MEMORY OF DAN YOUNG EVER GOING

02:42PM  4     TO AN INVESTOR PRESENTATION?

02:42PM  5     A.   I DO.

02:42PM  6     Q.   WHICH ONE?

02:42PM  7     A.   WHEN WE STARTED DOING SHAREHOLDER MEETINGS, DR. YOUNG

02:42PM  8     WOULD JOIN US IN THOSE SHAREHOLDER MEETINGS.

02:42PM  9     Q.   OKAY.  THAT'S 2016?

02:42PM  10    A.   YES.

02:42PM  11    Q.   RIGHT.

02:42PM  12         LET'S FOCUS ON THE TIME PERIOD PRIOR TO OCTOBER 2015.  YOU

02:42PM  13    HAVE NO MEMORY OF DAN YOUNG EVER GOING TO AN INVESTOR

02:43PM  14    PRESENTATION?

02:43PM  15    A.   I DON'T THINK SO.

02:43PM  16    Q.   HE WASN'T THERE WHEN YOU PRESENTED TO PFM?

02:43PM  17    A.   I DON'T THINK SO.

02:43PM  18    Q.   HE WASN'T THERE WHEN YOU PRESENTED TO RDV?

02:43PM  19    A.   NO.

02:43PM  20    Q.   AND HE WASN'T THERE FOR MEETINGS THAT YOU HAD WITH BDT?

02:43PM  21    A.   I'M SORRY.  WITH?

02:43PM  22    Q.   BDT.

02:43PM  23    A.   I DON'T THINK SO.

02:43PM  24    Q.   HE WASN'T THERE FOR MEETINGS YOU HAD WITH RUPERT MURDOCH?

02:43PM  25    A.   HE WAS NOT.

HOLMES CROSS BY MR. LEACH (RES.)                              8131

| | | |
|---|---|---|
| 02:43PM | 1 | Q.   HE WASN'T THERE FOR MEETINGS THAT YOU HAD WITH THE |
| 02:43PM | 2 | DEVOS FAMILY? |
| 02:43PM | 3 | A.   HE WAS NOT. |
| 02:43PM | 4 | Q.   HIS JOB WAS TO RUN R&D.  AM I RIGHT? |
| 02:43PM | 5 | A.   IT WAS, YES. |
| 02:43PM | 6 | Q.   AND NOT INVESTOR RELATIONS? |
| 02:43PM | 7 | A.   CORRECT. |
| 02:43PM | 8 | Q.   THANK YOU, MS. HOLLIMAN.  WE CAN TAKE THAT DOWN. |
| 02:43PM | 9 | AM I RIGHT IT'S YOUR TESTIMONY THAT YOU TOLD THE BOARD OF |
| 02:44PM | 10 | DIRECTORS THERANOS WAS USING MODIFIED COMMERCIAL ANALYZERS TO |
| 02:44PM | 11 | DO THE PHASE I TESTING? |
| 02:44PM | 12 | A.   I TOLD THE BOARD OF DIRECTORS THAT WE HAD AN INVENTION |
| 02:44PM | 13 | AROUND MODIFIED COMMERCIAL ANALYZERS. |
| 02:44PM | 14 | Q.   OKAY.  AND YOU -- YOUR TESTIMONY IS THAT YOU TOLD THE |
| 02:44PM | 15 | BOARD OF DIRECTORS THAT IN OCTOBER OF 2013? |
| 02:44PM | 16 | A.   YES. |
| 02:44PM | 17 | Q.   OKAY.  AND WE SAW DURING YOUR DIRECT EXAMINATION THE |
| 02:44PM | 18 | MINUTES OF THAT MEETING; CORRECT? |
| 02:44PM | 19 | A.   YES. |
| 02:44PM | 20 | Q.   OKAY.  AND YOU POINTED TO SOME LANGUAGE ABOUT TRADE |
| 02:44PM | 21 | SECRETS, BUT THERE'S NO REFERENCE IN THE MINUTES TO MODIFIED |
| 02:44PM | 22 | COMMERCIAL MACHINES. |
| 02:44PM | 23 | CAN WE AGREE ON THAT? |
| 02:44PM | 24 | A.   I THINK THAT'S RIGHT.  I HAVEN'T REREAD THEM, BUT THAT |
| 02:44PM | 25 | WOULD MAKE SENSE. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8132

02:44PM   1      Q.   OKAY.  WE HAVE YOUR MEMORY FOR THAT POINT.  IT'S NOT

02:44PM   2      SOMETHING IN THE MINUTES?

02:44PM   3      A.   I THINK THAT'S RIGHT.

02:44PM   4      Q.   OKAY.  AND YOU WERE HERE WHEN GENERAL MATTIS TESTIFIED

02:45PM   5      THAT HE WAS UNAWARE THAT THE COMPANY WAS USING THIRD PARTY

02:45PM   6      COMMERCIAL MACHINES TO DO THIS TESTING?

02:45PM   7      A.   I WAS.

02:45PM   8      Q.   OKAY.  AND CAN WE AGREE THAT YOU HAD NO REASON TO KEEP

02:45PM   9      FROM THE -- THE BOARD OF DIRECTORS IS A -- CAN BE TRUSTED TO

02:45PM   10     KEEP SECRETS, CAN WE AGREE ON THAT?

02:45PM   11     A.   YES.

02:45PM   12     Q.   AND SO I KNOW YOU'VE MENTIONED TRADE SECRETS IN THE PAST,

02:45PM   13     BUT YOU CAN SHARE YOUR TRADE SECRETS FREELY WITH YOUR BOARD OF

02:45PM   14     DIRECTORS; CORRECT?

02:45PM   15     A.   I THINK SO.

02:45PM   16     Q.   SO THERE WAS NOTHING IN YOUR VIEW OF TRADE SECRETS THAT

02:45PM   17     GOT IN THE WAY OF YOU TELLING MEMBERS OF THE BOARD, WE'RE

02:45PM   18     MODIFYING SIEMENS MACHINES, THAT THIS IS HOPEFULLY JUST PART OF

02:45PM   19     PHASE I.

02:45PM   20          THERE WAS NOTHING IN THE WAY OF YOU TELLING THEM THAT?

02:45PM   21     A.   I UNDERSTOOD DESCRIBING THAT WE HAD THIS INVENTION THAT WE

02:45PM   22     HAD A TRADE SECRET WAS TOTALLY APPROPRIATE.

02:46PM   23     Q.   AND YOU WERE ALSO SHOWN SOME PATENT PORTFOLIOS THAT WERE

02:46PM   24     PROVIDED TO THE BOARD?

02:46PM   25     A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                        8133

02:46PM   1    Q.   OKAY.  YOU DON'T HAVE A MEMORY OF GOING THROUGH THE PATENT

02:46PM   2    PORTFOLIO WITH MEMBERS OF YOUR BOARD OF DIRECTORS, DO YOU?

02:46PM   3    A.   I DO.

02:46PM   4    Q.   YOU WENT THROUGH LINE BY LINE AND TOLD THEM THIS RELATES

02:46PM   5    TO THAT, THIS RELATES TO THIS?

02:46PM   6    A.   I WOULD GO THROUGH SECTIONS OF IT, SO WE WOULD DESCRIBE

02:46PM   7    GENERAL SECTIONS RELATED TO DIFFERENT TOPICS, LIKE IN THAT CASE

02:46PM   8    COLLECTION DEVICES ASSOCIATED WITH THE LAUNCH OR OTHER

02:46PM   9    TECHNOLOGIES THAT WERE ASSOCIATED WITH THE LAUNCH THAT WE WERE

02:46PM  10    TRYING TO PROTECT IN ANTICIPATION OF THE PUBLIC ANNOUNCEMENT.

02:46PM  11    Q.   BUT YOU AGREE WITH ME THAT THERE'S NO RECORD OF THE

02:46PM  12    SPECIFIC PORTION OF THE DOCUMENT THAT YOU WALKED THROUGH WITH

02:46PM  13    THE BOARD OF DIRECTORS IN OCTOBER OF 2013?

02:46PM  14    A.   I THINK YOU'RE RIGHT.  AGAIN, I HAVEN'T READ THOSE MINUTES

02:46PM  15    IN THEIR ENTIRETY.

02:46PM  16    Q.   OKAY.  WE HAVE YOUR MEMORY FOR THAT?

02:46PM  17    A.   YES.

02:46PM  18    Q.   AND WE HAVE GENERAL MATTIS'S MEMORY OF THAT?

02:46PM  19    A.   WE DO.

02:46PM  20    Q.   OKAY.  I'D LIKE TO DRAW YOUR ATTENTION TO -- WELL, ISN'T

02:47PM  21    IT RIGHT AFTER "THE WALL STREET JOURNAL" ARTICLE COMES OUT IN

02:47PM  22    2015, MS. HOLMES, MEMBERS OF THE BOARD ASK YOU QUESTIONS ABOUT

02:47PM  23    WHAT ARE WE TESTING AND WHAT ARE WE TESTING ON?

02:47PM  24    A.   THEY DID.

02:47PM  25    Q.   LET ME DRAW YOUR ATTENTION TO EXHIBIT 4553.

HOLMES CROSS BY MR. LEACH (RES.)                                    8134

02:47PM   1     A.   OKAY.

02:47PM   2     Q.   IS THAT YOUR EMAIL ADDRESS?

02:47PM   3     A.   IT IS.

02:47PM   4     Q.   AND DO YOU SEE THE DATE SATURDAY, OCTOBER 17TH, 2015?

02:47PM   5     A.   I DO.

02:48PM   6     Q.   AND DO YOU SEE EMAIL ADDRESSES FOR A NUMBER OF YOUR BOARD

02:48PM   7     MEMBERS?

02:48PM   8     A.   I DO.

02:48PM   9           MR. LEACH:  YOUR HONOR, I MOVE THE ADMISSION OF

02:48PM   10    EXHIBIT 4553.

02:48PM   11          THE CLERK:  THAT WAS PREVIOUSLY ADMITTED.  IT'S

02:48PM   12    PREVIOUSLY ADMITTED, YOUR HONOR.

02:48PM   13          MR. LEACH:  EVEN BETTER.

02:48PM   14        THANK YOU, MS. KRATZMANN.

02:48PM   15          THE COURT:  IT LOOKS LIKE IT HAS BEEN PREVIOUSLY

02:48PM   16    ADMITTED, SO IT CAN BE PUBLISHED.

02:48PM   17    BY MR. LEACH:

02:48PM   18    Q.   LET ME DRAW YOUR ATTENTION, MS. HOLMES, TO THE BOTTOM

02:48PM   19    EMAIL.  THERE'S AN EMAIL FROM -- IS THAT MR. KOVACEVICH'S EMAIL

02:48PM   20    IN THE FROM LINE AT WELLS FARGO?

02:48PM   21    A.   IT IS.

02:48PM   22    Q.   OKAY.  AND YOU SEE THE DATE OCTOBER 16TH, 2015?

02:48PM   23    A.   I DO.

02:48PM   24    Q.   AND THIS IS AFTER MR. CARREYROU HAS COME OUT WITH HIS

02:48PM   25    ARTICLE?

HOLMES CROSS BY MR. LEACH (RES.)                                    8135

02:48PM   1     A.   I THINK SO.

02:48PM   2     Q.   AND MR. KOVACEVICH IS WRITING, "THIS WAS WELL DONE.  I AM

02:49PM   3     STILL CONFUSED, HOWEVER, REGARDING MY PREVIOUS EMAIL.  AT THIS

02:49PM   4     MOMENT, HOW MANY OF OUR CUSTOMER SUBMISSIONS ARE BEING TESTED

02:49PM   5     ON LAB EQUIPMENT VERSUS EDISON?  I UNDERSTAND WHAT IS BEING

02:49PM   6     SAID THERE IS VERY LITTLE."

02:49PM   7          DO YOU SEE THAT LANGUAGE?

02:49PM   8     A.   YES.

02:49PM   9     Q.   AND IS THIS CONSISTENT WITH OTHER QUESTIONS THAT YOU

02:49PM  10     RECEIVED FROM YOUR BOARD IN THIS TIME PERIOD ABOUT WHAT EXACTLY

02:49PM  11     THERANOS WAS TESTING AND ON WHAT?

02:49PM  12     A.   IT IS.

02:49PM  13     Q.   LET'S LOOK AT YOUR RESPONSE.

02:49PM  14          CAN WE AGREE, MS. HOLMES, THAT YOU DON'T USE THE WORD

02:49PM  15     "SIEMENS" IN YOUR RESPONSE TO YOUR BOARD OF DIRECTORS HERE?

02:49PM  16     A.   I HAVEN'T READ IT YET, BUT I PROBABLY DIDN'T.

02:49PM  17     Q.   OKAY.  AND CAN WE AGREE THAT YOU DID NOT USE THE WORD

02:50PM  18     "BECTON DICKINSON" IN YOUR RESPONSE TO THE BOARD OF DIRECTORS?

02:50PM  19     A.   I'M SURE I DIDN'T.

02:50PM  20     Q.   AND YOU DO WRITE IN THAT THIRD PARAGRAPH -- I DON'T KNOW

02:50PM  21     THE PARAGRAPHS, BUT IT'S THE LINE BEGINNING DURING, "DURING THE

02:50PM  22     TIME WE ARE TRANSITIONING THE NANOTAINERS OPERATIONS, WE ARE

02:50PM  23     STILL ABLE TO USE ALL OF OUR PROPRIETARY TECHNOLOGY, INCLUDING

02:50PM  24     OUR DEVICES, WHICH WERE APPROVED FOR USE THIS SUMMER BASED ON

02:50PM  25     THE STUDIES WITH APPROXIMATELY 900 PATIENT SAMPLES."

HOLMES CROSS BY MR. LEACH (RES.)                                    8136

02:50PM   1          DID I READ THAT CORRECTLY?

02:50PM   2     A.   YOU DID.

02:50PM   3     Q.   AND THEN YOU WROTE, "NOTE THE NAME EDISON WAS THE NAME OF

02:50PM   4     THE COMPANY'S VERY FIRST DEVICE (NOT OUR CURRENT SYSTEMS) -

02:50PM   5     THIS IS ONE OF MANY INCORRECT STATEMENTS BY THE FORMER EMPLOYEE

02:50PM   6     WHO COMMUNICATED THIS INFORMATION TO THE WSJ REPORTER."

02:50PM   7          DO YOU SEE THAT LANGUAGE?

02:50PM   8     A.   I DO.

02:50PM   9     Q.   AND IS THIS SIMILAR TO COMMENTS THAT YOU MADE PUBLIC ABOUT

02:50PM  10     EDISON BEING SOMETHING THAT YOU HAD USED WAY IN THE PAST?

02:51PM  11     A.   IT IS.

02:51PM  12     Q.   AND THAT WASN'T COMPLETELY FORTHRIGHT; IS THAT RIGHT?

02:51PM  13     A.   I DEFINITELY WOULDN'T SAY IT THAT WAY NOW.  WHAT I WAS

02:51PM  14     ATTEMPTING TO EXPRESS IS THAT I THOUGHT OF EDISON AS AN EARLIER

02:51PM  15     VERSION OF THE 3 SERIES.

02:51PM  16     Q.   SO THIS IS ANOTHER THING THAT YOU WISH YOU DID

02:51PM  17     DIFFERENTLY?

02:51PM  18     A.   YES.  THERE ARE MANY THINGS THAT I WISH I DID DIFFERENTLY.

02:51PM  19     Q.   INCLUDING THIS ONE?

02:51PM  20     A.   YES.

02:51PM  21     Q.   OKAY.  THANK YOU.

02:51PM  22          THANK YOU, MS. HOLLIMAN.  WE CAN TAKE THAT DOWN.

02:51PM  23          I'D LIKE TO DRAW YOUR ATTENTION, MS. HOLMES, TO SOME OF

02:51PM  24     YOUR DIRECT TESTIMONY ABOUT PHARMACEUTICAL COMPANIES.

02:51PM  25          DO YOU RECALL TESTIFYING ABOUT PHARMACEUTICAL COMPANIES?

HOLMES CROSS BY MR. LEACH (RES.)                                    8137

02:52PM    1      A.   I DO.

02:52PM    2      Q.   AND I UNDERSTAND YOU'VE SEEN, THROUGH A NUMBER OF

02:52PM    3   WITNESSES, A REPORT THAT YOU SENT TO INVESTORS AND TO WALGREENS

02:52PM    4   BEARING THE PFIZER LOGO.

02:52PM    5           DO YOU RECALL TESTIMONY AROUND THAT?

02:52PM    6      A.   I DO.

02:52PM    7      Q.   AND YOUR TESTIMONY ON DIRECT EXAMINATION WAS YOU APPLIED

02:52PM    8   THAT LOGO TO THE DOCUMENT?

02:52PM    9      A.   IT WAS.

02:52PM   10      Q.   OKAY.  AND IF WE COULD PLEASE DISPLAY WHAT IS IN EVIDENCE

02:52PM   11   AS TRIAL EXHIBIT 291 AT PAGE 8.

02:52PM   12           DO YOU RECOGNIZE THIS AS THE ATTACHMENT THAT YOU SENT TO

02:52PM   13   WALGREENS IN ADVANCE OF OR IN CONNECTION WITH DISCUSSIONS ABOUT

02:52PM   14   A POTENTIAL PARTNERSHIP?

02:52PM   15      A.   I DO.

02:52PM   16      Q.   OKAY.  AND DO YOU AGREE WITH ME THAT THIS DOCUMENT IS NOT

02:53PM   17   FROM PFIZER?

02:53PM   18      A.   NO.  IT'S FROM THERANOS.

02:53PM   19      Q.   IT'S FROM THERANOS, NOT PFIZER?

02:53PM   20      A.   YES.

02:53PM   21      Q.   WE CAN AGREE ON THAT?

02:53PM   22      A.   YES.

02:53PM   23      Q.   OKAY.  AND YOU PUT THE PFIZER LOGO ON THIS?

02:53PM   24      A.   I DID.

02:53PM   25      Q.   YOU DID NOT SEEK PFIZER'S PERMISSION TO DO THAT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8138

02:53PM  1    A.  I DON'T KNOW.

02:53PM  2    Q.  NO ONE FROM PFIZER AUTHORIZED YOU TO DO THAT?

02:53PM  3    A.  AGAIN, I DON'T KNOW.  I CAN'T REMEMBER.  I CAN'T REMEMBER

02:53PM  4    DOING THIS.

02:53PM  5    Q.  NO ONE FROM PFIZER ORALLY TOLD YOU THAT YOU HAD PFIZER'S

02:53PM  6    PERMISSION TO PUT THE PFIZER LOGO ON A THERANOS REPORT; IS THAT

02:53PM  7    RIGHT?

02:53PM  8    A.  I DON'T KNOW.

02:53PM  9    Q.  AND NO ONE TOLD YOU IN WRITING THAT YOU HAD PERMISSION TO

02:53PM 10    PUT THE PFIZER LOGO ON THE THERANOS REPORT?

02:53PM 11    A.  I DON'T THINK SO.

02:53PM 12    Q.  BEFORE GIVING THE DOCUMENT TO WALGREENS, YOU DID NOT TELL

02:54PM 13    PFIZER YOU WERE ADDING ITS LOGO TO A DOCUMENT THAT THERANOS

02:54PM 14    PREPARED; AM I RIGHT?

02:54PM 15    A.  I DON'T KNOW.  I DON'T REMEMBER THIS PROCESS.

02:54PM 16    Q.  AND YOU NEVER TOLD WALGREENS THAT YOU PUT THE PFIZER LOGO

02:54PM 17    ON THIS?

02:54PM 18    A.  I'M SURE WE DIDN'T.

02:54PM 19    Q.  DO YOU AGREE WITH ME THAT THIS IS NOT AN INDEPENDENT DUE

02:54PM 20    DILIGENCE REPORT?

02:54PM 21    A.  I THOUGHT IT WAS.

02:54PM 22    Q.  SITTING HERE TODAY, DO YOU AGREE WITH ME THAT THIS IS NOT

02:54PM 23    AN INDEPENDENT DUE DILIGENCE REPORT?

02:54PM 24    A.  I STILL THINK IT WAS.

02:54PM 25    Q.  IT'S NOT AN INDEPENDENT DUE DILIGENCE REPORT FROM PFIZER;

HOLMES CROSS BY MR. LEACH (RES.)                                    8139

02:54PM  1    IS THAT FAIR?  WILL YOU AGREE WITH ME ON THAT?

02:54PM  2    A.   IT IS WRITTEN BY THERANOS.  IT WAS FROM THE PROGRAM THAT

02:54PM  3    WE DID WITH PFIZER.

02:54PM  4    Q.   OKAY.  BUT IT'S NOT FROM PFIZER?  THAT WAS YOUR TESTIMONY

02:55PM  5    A FEW MINUTES AGO?

02:55PM  6    A.   CORRECT.  IT WAS -- I SENT IT TO WALGREENS.  THERANOS SENT

02:55PM  7    IT TO WALGREENS, NOT PFIZER.  PFIZER DID NOT SEND IT TO

02:55PM  8    WALGREENS.

02:55PM  9    Q.   NOW, THERANOS DID MORE THAN SIMPLY AFFIX THE PFIZER LOGO

02:55PM  10   TO THIS; ISN'T THAT CORRECT?

02:55PM  11   A.   I'M NOT SURE.

02:55PM  12   Q.   WELL, LET'S LOOK.  IF WE CAN COMPARE EXHIBIT 291, PAGE 8

02:55PM  13   WITH EXHIBIT 143, PAGE 3.  THESE ARE IN EVIDENCE.

02:55PM  14        (PAUSE IN PROCEEDINGS.)

02:55PM  15   BY MR. LEACH:

02:56PM  16   Q.   MS. HOLMES, DO YOU SEE ON THE SCREEN ON THE LEFT SIDE

02:56PM  17   EXHIBIT 291, PAGE 8?

02:56PM  18   A.   I DO.

02:56PM  19   Q.   AND THIS WAS WHAT WAS SENT TO WALGREENS?

02:56PM  20   A.   YES.

02:56PM  21   Q.   AND DO YOU SEE ON THE RIGHT EXHIBIT 143, PAGE 3, THIS IS

02:56PM  22   THE DOCUMENT THAT YOU HAD INITIALLY SENT TO PFIZER?

02:56PM  23   A.   YES.

02:56PM  24   Q.   AND DO YOU SEE HOW THE WORDS "PREPARED FOR

02:56PM  25   DR. AIDAN POWER" ARE ABSENT FROM EXHIBIT 291 ON PAGE 8?

HOLMES CROSS BY MR. LEACH (RES.)                                      8140

02:56PM  1      A.   I DO.

02:56PM  2      Q.   AND DID YOU DELETE THOSE WORDS?

02:57PM  3      A.   I THINK SO.

02:57PM  4      Q.   YOU DIDN'T MENTION THAT IN YOUR DIRECT EXAMINATION, DID

02:57PM  5      YOU?

02:57PM  6      A.   NO, I DON'T THINK WE TALKED ABOUT THAT EXPLICITLY.

02:57PM  7      Q.   OKAY.  DO YOU AGREE WITH ME THAT EXPLICITLY STATING THAT

02:57PM  8      THIS WAS PREPARED FOR DR. AIDAN POWER MIGHT MAKE IT EASIER FOR

02:57PM  9      A READER TO DETERMINE THAT THIS WAS PREPARED BY THERANOS?

02:57PM  10     A.   IT COULD.

02:57PM  11     Q.   IS DELETING THOSE WORDS ANOTHER THING YOU WISH YOU HAD

02:57PM  12     DONE DIFFERENTLY?

02:57PM  13     A.   I DO.  I WISH I HAD HANDLED THIS DIFFERENTLY, YES.

02:57PM  14     Q.   OKAY.  LET'S LOOK AT EXHIBIT 174, WHICH IS IN EVIDENCE.  I

02:57PM  15     THINK IT'S ALSO IN YOUR BINDER, MS. HOLMES.

02:57PM  16          DO YOU RECALL TESTIMONY FROM SHANE WEBER RELATING TO THIS

02:57PM  17     EXHIBIT, MS. HOLMES?

02:57PM  18     A.   I DO.

02:57PM  19     Q.   OKAY.  DO YOU RECALL SHANE WEBER TELLING YOU PFIZER DID

02:58PM  20     NOT HAVE AT THAT TIME A FORESEEABLE USE FOR THE THERANOS

02:58PM  21     DEVICE?

02:58PM  22     A.   I DON'T.

02:58PM  23     Q.   IN THIS DOCUMENT IT SAYS, "TODAY I SPOKE WITH

02:58PM  24     ELIZABETH HOLMES, CEO, THERANOS AND EXPLAINED TO HER THAT

02:58PM  25     PFIZER DID NOT HAVE AT THIS TIME A FORESEEABLE USE FOR THE

HOLMES CROSS BY MR. LEACH (RES.)                                    8141

02:58PM  1    THERANOS IMMUNOASSAY DEVICE FOR AT PATIENT SELF USE AT HOME BUT

02:58PM  2    SHE AND I AGREED TO STAY IN TOUCH EVERY SIX MONTHS."

02:58PM  3        DO YOU RECALL DR. WEBER TELLING YOU THAT YOU AGREED TO

02:58PM  4    STAY IN TOUCH EVERY SIX MONTHS?

02:58PM  5    A.   I REMEMBER GENERALLY THAT I HAD A CALL WITH PFIZER AND

02:58PM  6    THAT WE WERE GOING TO CONTINUE TALKING.

02:58PM  7    Q.   YOU ALSO TESTIFIED ABOUT INTERACTIONS THAT YOU HAD WITH

02:58PM  8    PFIZER AFTER JANUARY OF 2009.

02:58PM  9        DO YOU RECALL THAT TESTIMONY?

02:58PM  10   A.   I DO.

02:58PM  11   Q.   AND LET'S BE 100 PERCENT CLEAR.  NONE OF THOSE

02:59PM  12   INTERACTIONS WITH PFIZER RESULTED IN ANY REVENUE GENERATING

02:59PM  13   CONTRACT WITH THERANOS; CORRECT?

02:59PM  14   A.   THAT'S RIGHT.

02:59PM  15   Q.   NOTHING EVER CAME OF THAT TALK?

02:59PM  16   A.   CORRECT.

02:59PM  17   Q.   IT WAS JUST TALK?

02:59PM  18   A.   IT WAS TALK AND WORK, BUT WE DIDN'T GET REVENUE FROM IT.

02:59PM  19   Q.   YOU NEVER HAD ANOTHER AGREEMENT WITH PFIZER AFTER THE 2009

02:59PM  20   REPORT; ISN'T THAT RIGHT?

02:59PM  21   A.   THAT'S RIGHT.

02:59PM  22   Q.   PFIZER DIDN'T PAY THERANOS ANOTHER DIME AFTER JANUARY OF

02:59PM  23   2009; CORRECT?

02:59PM  24   A.   THAT'S RIGHT.

02:59PM  25   Q.   OKAY.  LET ME DRAW YOUR ATTENTION TO EXHIBIT 1504, 15041,

HOLMES CROSS BY MR. LEACH (RES.)                              8142

| | | |
|---|---|---|
| 02:59PM | 1 | WHICH I THINK WAS ADMITTED DURING YOUR DIRECT EXAMINATION. |
| 02:59PM | 2 | AND IF WE COULD -- MS. HOLLIMAN, IS THERE A WAY TO BE ABLE |
| 02:59PM | 3 | TO PULL THAT UP? |
| 03:00PM | 4 | AND IF WE CAN ALSO DISPLAY THIS NEXT TO EXHIBIT 291, |
| 03:00PM | 5 | PAGE 33. |
| 03:00PM | 6 | MS. HOLMES, DO YOU SEE ON THE SCREEN ON THE LEFT |
| 03:00PM | 7 | EXHIBIT 15041? |
| 03:00PM | 8 | A.   I DO. |
| 03:00PM | 9 | Q.   AND YOU RECALL TESTIFYING ABOUT THIS ON YOUR DIRECT |
| 03:00PM | 10 | EXAMINATION? |
| 03:00PM | 11 | A.   I DO. |
| 03:00PM | 12 | Q.   AND I JUXTAPOSED THIS AGAINST PAGE 33 OF EXHIBIT 291. |
| 03:00PM | 13 | THAT'S THE DOCUMENT THAT YOU SENT TO WALGREENS WITH THE PFIZER |
| 03:00PM | 14 | LOGO ON IT? |
| 03:00PM | 15 | A.   YES. |
| 03:00PM | 16 | Q.   AND THIS PAGE OF EXHIBIT 291 LISTS A NUMBER OF |
| 03:00PM | 17 | CONCLUSIONS. |
| 03:00PM | 18 | DO YOU SEE THAT TO THE RIGHT? |
| 03:01PM | 19 | A.   I DO. |
| 03:01PM | 20 | Q.   FOCUSSING ON EXHIBIT 15041, THERE WERE A COUPLE NAMES, |
| 03:01PM | 21 | DAVID LESTER.  DAVID LESTER WAS SOMEBODY WHO HAD WORKED AT |
| 03:01PM | 22 | PFIZER? |
| 03:01PM | 23 | A.   YES. |
| 03:01PM | 24 | Q.   AND THEN HE CAME TO THERANOS? |
| 03:01PM | 25 | A.   HE DID. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8143

03:01PM   1    Q.   AND HE LEFT PRETTY SHORTLY AFTER COMING TO THERANOS; ISN'T

03:01PM   2    THAT RIGHT?

03:01PM   3    A.   YEAH.  I DON'T REMEMBER WHEN HE LEFT, BUT HE WASN'T THERE

03:01PM   4    VERY LONG.

03:01PM   5    Q.   A MATTER OF MONTHS MAYBE?

03:01PM   6    A.   I REMEMBER IT AS LONGER, BUT I DON'T KNOW.

03:01PM   7    Q.   NOT MORE THAN THREE OR FOUR YEARS?

03:01PM   8    A.   NO.

03:01PM   9    Q.   AND HE CERTAINLY WASN'T THERE IN 2011, 2012, 2013?

03:01PM  10    A.   HE WASN'T.

03:01PM  11    Q.   AND THINGS JUST DIDN'T WORK OUT WITH MR. LESTER?

03:01PM  12    A.   THEY DID NOT.

03:01PM  13    Q.   AND THE EMAIL -- AND WE CAN ZOOM OUT, MS. HOLLIMAN.

03:01PM  14         THE EMAIL DOWN AT THE BOTTOM FROM CRAIG LIPSET, THAT WAS

03:01PM  15    ANOTHER CONTACT THAT YOU HAD WITH PFIZER; IS THAT CORRECT?

03:02PM  16    A.   YES, HE OVERSAW OUR PROGRAM THAT WE DID WITH THEM.

03:02PM  17    Q.   OKAY.  AND YOU RECALL MR. WEBER TESTIFYING ABOUT HIS

03:02PM  18    INTERACTIONS WITH CRAIG LIPSET WHEN HE CAME TO PFIZER?

03:02PM  19    A.   I DO.

03:02PM  20    Q.   OKAY.  AND THIS EMAIL RELATES TO MODELING CAPABILITIES;

03:02PM  21    CORRECT?

03:02PM  22    A.   IT DOES.

03:02PM  23    Q.   THERANOS IN THIS TIME PERIOD WAS TRYING TO DEVELOP MODELS

03:02PM  24    TO HELP PHARMACEUTICAL COMPANIES ASSESS DRUG CONCENTRATIONS AND

03:02PM  25    IDENTIFY BIOMARKERS.

HOLMES CROSS BY MR. LEACH (RES.)                                    8144

03:02PM   1        AM I SUMMARIZING IT AT A HIGH LEVEL CORRECTLY?

03:02PM   2   A.   YES.  OTHER THINGS, TOO, BUT YES.

03:02PM   3   Q.   BUT IT RELATES TO MODELING?

03:02PM   4   A.   YES.

03:02PM   5   Q.   IT'S NOT RELATED TO THE DEVICE.

03:02PM   6        IS THAT FAIR?

03:02PM   7   A.   I THINK HE'S SAYING UNLESS SAMPLES BECOME AVAILABLE.  IF

03:02PM   8   SAMPLES BECOME AVAILABLE, THEN IT WOULD.

03:02PM   9   Q.   YOU AGREE WITH ME THAT NOWHERE IN EXHIBIT 15041 DOES

03:02PM  10   MR. LIPSET SAY THAT HE AGREES WITH THE CONCLUSIONS IN

03:03PM  11   EXHIBIT 291?

03:03PM  12   A.   THAT'S RIGHT.

03:03PM  13   Q.   AND NOWHERE HERE DOES MR. LIPSET SAY THAT PFIZER HAS

03:03PM  14   VALIDATED THERANOS'S TECHNOLOGY?

03:03PM  15   A.   HE DOES NOT.

03:03PM  16   Q.   AND NOWHERE IN 15041 DOES MR. LIPSET SAY THAT PFIZER HAS

03:03PM  17   COMPREHENSIVELY VALIDATED THERANOS'S TECHNOLOGY?

03:03PM  18   A.   HE DOES NOT.

03:03PM  19   Q.   AND NOWHERE IN HERE DOES MR. LIPSET AUTHORIZE YOU TO AFFIX

03:03PM  20   THE PFIZER LOGO TO DOCUMENTS?

03:03PM  21   A.   CORRECT.

03:03PM  22   Q.   AND NOTHING EVER CAME OF THIS EMAIL EXCHANGE ABOUT

03:03PM  23   MODELING CAPABILITIES; CORRECT?

03:03PM  24   A.   ULTIMATELY, NO.

03:03PM  25   Q.   OKAY.  THERE WAS NO CONTRACT RELATING TO MODELING

HOLMES CROSS BY MR. LEACH (RES.)                              8145

03:03PM  1      CAPABILITIES?

03:03PM  2      A.   THAT'S RIGHT.

03:03PM  3      Q.   OKAY.   THERE WAS SOME TALK?

03:03PM  4      A.   YES.   WE DID SOME WORK ON THIS, AND ULTIMATELY THE DRUG

03:03PM  5      WAS DISCONTINUED.

03:03PM  6      Q.   OKAY.   AND PFIZER DIDN'T PAY MONEY TO THERANOS AS A RESULT

03:03PM  7      OF THIS EMAIL EXCHANGE, DID THEY?

03:03PM  8      A.   THEY DID NOT.

03:03PM  9      Q.   OKAY.   LET'S LOOK AT EXHIBIT 15047, WHICH I THINK YOU

03:04PM  10     COVERED WITH MR. DOWNEY.

03:04PM  11          AND IF WE CAN ALSO DISPLAY THAT SIDE-BY-SIDE WITH 291,

03:04PM  12     PAGE 33.

03:04PM  13          THIS IS AN EMAIL DATED OCTOBER 29TH, 2013.

03:04PM  14          DO YOU SEE THAT ON THE SCREEN, MS. HOLMES?

03:04PM  15     A.   I DO.

03:04PM  16     Q.   AND YOU RECALL TESTIFYING ABOUT THIS?

03:04PM  17     A.   I DO.

03:04PM  18     Q.   OKAY.   AND THIS IS AN EMAIL EXCHANGE BETWEEN YOU AND

03:04PM  19     SOMEONE NAMED HAKAN SAKUL?

03:04PM  20     A.   YES.

03:04PM  21     Q.   AND EARLIER IN THE EXCHANGE THERE'S ALSO REFERENCE TO

03:04PM  22     MORTEN SOGAARD?

03:04PM  23     A.   YES.   I DON'T KNOW IF I HAVE A COPY OF IT.

03:04PM  24          OH, I CAN SEE IT, YES.

03:04PM  25     Q.   IF YOU LOOK AT THE VERY BOTTOM.

HOLMES CROSS BY MR. LEACH (RES.)                                        8146

03:04PM   1     A.   YEP, YEP.

03:04PM   2     Q.   AND THIS IS FROM OCTOBER OF 2013; CORRECT?

03:05PM   3     A.   IT IS.

03:05PM   4     Q.   AND MR. SAKUL WROTE TO YOU, "IT WAS VERY NICE TO MEET WITH

03:05PM   5     YOU AND SEEING YOU AGAIN ELIZABETH, AND LEARN ABOUT THE GREAT

03:05PM   6     PROGRESS THERANOS HAS MADE OVER THE YEARS."

03:05PM   7          DO YOU RECALL TESTIFYING ABOUT THIS EXCHANGE?

03:05PM   8     A.   I DO.

03:05PM   9     Q.   LET'S BE CLEAR ABOUT THE TIMING OF THIS EMAIL.  THIS WAS

03:05PM  10     AFTER THE SEPTEMBER 23RD, OR 2013 JOE RAGO PIECE IN "THE

03:05PM  11     WALL STREET JOURNAL"; CORRECT?

03:05PM  12     A.   IT IS.

03:05PM  13     Q.   SO THIS IS AFTER THERANOS HAS VERY PUBLICLY TOLD THE WORLD

03:05PM  14     ABOUT ITS TECHNOLOGY AND WHAT IT WAS HOPING TO DO?

03:05PM  15     A.   IT IS.

03:05PM  16     Q.   OKAY.  AND THIS IS AFTER WALGREENS HAS ISSUED A PRESS

03:05PM  17     RELEASE SAYING THAT WE HAVE A RELATIONSHIP WITH THERANOS?

03:05PM  18     A.   YES.

03:05PM  19     Q.   AND AFTER THERANOS HAD ISSUED A PRESS RELEASE SAYING WE

03:05PM  20     ARE DOING TESTING WITH WALGREENS?

03:05PM  21     A.   I THINK IT WAS THE SAME PRESS RELEASE, BUT YES.

03:06PM  22     Q.   I THINK WE'VE SEEN TWO.

03:06PM  23     A.   I'D DEFER TO YOU.

03:06PM  24     Q.   NOT MATERIAL FOR OUR DISCUSSION?

03:06PM  25     A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                    8147

03:06PM   1    Q.   THIS EMAIL COMES AFTER THAT; CORRECT?

03:06PM   2    A.   IT DOES.

03:06PM   3    Q.   SO THERE'S NEW INFORMATION OUT IN THE WORLD AND PFIZER IS

03:06PM   4    EMAILING YOU AND MEETING WITH YOU IN THIS TIME PERIOD?

03:06PM   5    A.   YES.

03:06PM   6    Q.   OKAY.  AND THIS WAS AFTER MR. RAGO HAD WRITTEN IN HIS

03:06PM   7    ARTICLE "THERANOS TECHNOLOGY ELIMINATES MULTIPLE LAB TRIPS

03:06PM   8    BECAUSE IT CAN RUN ANY COMBINATION OF TESTS AT ONCE VERY

03:06PM   9    QUICKLY ALL FROM A SINGLE MICRO SAMPLE"?

03:06PM  10         THIS IS AFTER THAT?

03:06PM  11    A.   YES.

03:06PM  12    Q.   AND THIS IS AFTER MR. RAGO HAD SAID "THERANOS'S PROCESSES

03:06PM  13    ARE FASTER, CHEAPER AND MORE ACCURATE THAN CONVENTIONAL

03:06PM  14    METHODS"?

03:06PM  15    A.   YES.  I DON'T HAVE THE ARTICLE IN FRONT OF ME, BUT I'M

03:06PM  16    ASSUMING THAT'S FROM THE ARTICLE.

03:06PM  17    Q.   THAT SOUNDS RIGHT TO YOU?

03:06PM  18    A.   IT DOES.

03:06PM  19    Q.   OKAY.  AND THAT WAS AN ARTICLE THAT YOU HAD AN OPPORTUNITY

03:06PM  20    TO REVIEW AND COMMENT ON?

03:06PM  21    A.   I DID.

03:06PM  22    Q.   YOU DON'T DISPUTE THAT?

03:06PM  23    A.   I DON'T.

03:06PM  24    Q.   NOW, NOWHERE IN EXHIBIT 15047 DO MR. SAKUL OR MR. SOGAARD

03:07PM  25    SAY PFIZER AGREES WITH THE CONCLUSIONS IN EXHIBIT 291; IS THAT

HOLMES CROSS BY MR. LEACH (RES.)                                    8148

03:07PM   1    CORRECT?

03:07PM   2    A.   THAT'S RIGHT.

03:07PM   3    Q.   AND IF WE CAN ZOOM OUT, MS. HOLLIMAN.

03:07PM   4         NOWHERE IN EXHIBIT 15047 DO DR. SAKUL OR DR. SOGAARD SAY

03:07PM   5    PFIZER HAS VALIDATED THERANOS'S TECHNOLOGY?

03:07PM   6    A.   CORRECT.

03:07PM   7    Q.   AND NOWHERE IN EXHIBIT 15047 DO DR. SAKUL OR DR. SOGAARD

03:07PM   8    SAY PFIZER HAS COMPREHENSIVELY VALIDATED THERANOS'S TECHNOLOGY?

03:07PM   9    A.   I DON'T THINK SO.

03:07PM   10   Q.   AND NOWHERE IN HERE DO THOSE TWO INDIVIDUALS AUTHORIZE YOU

03:07PM   11   TO AFFIX THE PFIZER LOGO TO DOCUMENTS.

03:07PM   12        AM I RIGHT ABOUT THAT?

03:08PM   13   A.   YES.

03:08PM   14   Q.   AND NOTHING EVER CAME OF THIS EXCHANGE EITHER, DID IT?

03:08PM   15   A.   AGAIN, I THINK THERE'S ONGOING MEETINGS AND DISCUSSIONS

03:08PM   16   ABOUT CLINICAL TRIALS AT RETAIL.

03:08PM   17   Q.   MEETINGS AND DISCUSSIONS AND TALK; RIGHT?

03:08PM   18   A.   YES.

03:08PM   19   Q.   BUT PFIZER DIDN'T PAY ANY MONEY TO THERANOS AS A RESULT OF

03:08PM   20   THIS EMAIL EXCHANGE?

03:08PM   21   A.   THEY DID NOT.

03:08PM   22   Q.   OKAY.  LET'S LOOK AT EXHIBIT 15039.  AND IF WE CAN

03:08PM   23   JUXTAPOSE THEN AGAINST 291, PAGE 33.

03:08PM   24        MS. HOLMES, DO YOU SEE ON THE SCREEN AN EMAIL EXCHANGE

03:08PM   25   THAT STARTS FROM CRAIG LIPSET IN OR AROUND FEBRUARY 20TH, 2015?

HOLMES CROSS BY MR. LEACH (RES.)                                    8149

03:09PM  1      A.   I DO.

03:09PM  2      Q.   OKAY.  AND I DRAW YOUR ATTENTION TO THE SUBJECT LINE

03:09PM  3      "TOUCHING BASE; OPPORTUNITIES."

03:09PM  4           DO YOU SEE THAT?

03:09PM  5      A.   I DO.

03:09PM  6      Q.   AND MR. LIPSET WRITES, "HI, ELIZABETH.  IT HAS BEEN

03:09PM  7      YEARS," ALL CAPS, "SINCE WE LAST TOUCHED BASE, BUT YOU HAVE

03:09PM  8      CLEARLY BEEN BUSY."

03:09PM  9           DO YOU SEE THAT LANGUAGE?

03:09PM 10      A.   I DO.

03:09PM 11      Q.   WAS IT TRUE THAT IT HAD BEEN YEARS SINCE YOU AND

03:09PM 12      MR. LIPSET HAD LAST TOUCHED BASE?

03:09PM 13      A.   I THINK SO.

03:09PM 14      Q.   AND LET'S BE CLEAR ON THE TIMING OF THIS EMAIL, FEBRUARY

03:09PM 15      OF 2015.

03:09PM 16           THIS WAS MORE THAN A YEAR AND A COUPLE MONTHS AFTER

03:09PM 17      THERANOS AND WALGREENS ANNOUNCED THEIR PARTNERSHIP; CORRECT?

03:09PM 18      A.   IT IS.

03:09PM 19      Q.   AND THIS WAS AFTER ROGER PARLOFF'S ARTICLE IN JUNE OF

03:09PM 20      2014?

03:09PM 21      A.   YES.

03:09PM 22      Q.   THIS IS AFTER MR. PARLOFF HAD REPORTED THAT THERANOS DID

03:10PM 23      NOT BUY COMMERCIALLY AVAILABLE ANALYZERS; CORRECT?

03:10PM 24      A.   I SAW THAT IN HIS ARTICLE, YES.

03:10PM 25      Q.   AND THIS IS AFTER THAT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8150

03:10PM  1    A.   IT IS.

03:10PM  2    Q.   AND THIS IS AFTER, FAIR TO SAY, A LOT OF PUBLICITY ABOUT

03:10PM  3    THERANOS?

03:10PM  4    A.   YES.

03:10PM  5    Q.   AND SO BY FEBRUARY OF 2015, THERE'S SIGNIFICANT NEW

03:10PM  6    INFORMATION OUT THERE ABOUT THERANOS?

03:10PM  7    A.   THERE IS.

03:10PM  8    Q.   AND MR. LIPSET IS REACHING OUT TO YOU IN THAT CONTEXT

03:10PM  9    SAYING IT'S BEEN YEARS SINCE YOU'VE BEEN IN TOUCH?

03:10PM  10   A.   YES.

03:10PM  11   Q.   AND IF WE CAN ZOOM OUT, MS. HOLLIMAN.

03:10PM  12        AM I RIGHT THAT NOWHERE IN EXHIBIT 15039 DOES MR. LIPSET

03:10PM  13   SAY PFIZER AGREES WITH THE CONCLUSIONS IN EXHIBIT 291?

03:10PM  14   A.   CORRECT.

03:10PM  15   Q.   AND NOWHERE IN EXHIBIT 15039 DOES MR. LIPSET SAY PFIZER

03:10PM  16   HAS VALIDATED THERANOS'S TECHNOLOGY?

03:10PM  17   A.   CORRECT.

03:10PM  18   Q.   AND NOWHERE IN HERE DOES MR. LIPSET SAY PFIZER HAS

03:11PM  19   COMPREHENSIVELY VALIDATED THERANOS'S TECHNOLOGY?

03:11PM  20   A.   YES.

03:11PM  21   Q.   AND NOWHERE IN HERE DOES MR. LIPSET AUTHORIZE YOU TO AFFIX

03:11PM  22   THE PFIZER LOGO TO DOCUMENTS?

03:11PM  23   A.   CORRECT.

03:11PM  24   Q.   OKAY.  AND NOTHING EVER CAME OF THIS EXHIBIT; ISN'T THAT

03:11PM  25   RIGHT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8151

03:11PM   1    A.   CORRECT.

03:11PM   2    Q.   IT WAS TALK?

03:11PM   3    A.   IT WAS WORK TOWARD SEEING IF WE COULD DO CLINICAL TRIALS

03:11PM   4    IN THE STORES, BUT WE NEVER DID THAT.

03:11PM   5    Q.   OKAY.  AND PFIZER DIDN'T PAY MONEY TO THERANOS AS A RESULT

03:11PM   6    OF THIS EXCHANGE?

03:11PM   7    A.   THEY DID NOT.

03:11PM   8    Q.   YOU ALSO TESTIFIED ABOUT SCHERING-PLOUGH.

03:11PM   9         DO YOU RECALL SOME TESTIMONY ABOUT SCHERING-PLOUGH?

03:11PM  10    A.   I DO.

03:11PM  11    Q.   OKAY.  AND IF WE COULD DISPLAY EXHIBIT 291, WHICH WE'VE

03:11PM  12    BEEN ON, PAGE 34.

03:12PM  13         AND WE CAN TAKE DOWN 15039, MS. HOLLIMAN.

03:12PM  14         DO YOU RECALL TESTIFYING, MS. HOLMES, THAT YOU WERE THE

03:12PM  15    INDIVIDUAL WHO APPLIED THE SCHERING-PLOUGH LOGO TO THIS

03:12PM  16    DOCUMENT?

03:12PM  17    A.   I DO.

03:12PM  18    Q.   OKAY.  DID YOU DO THAT AT OR AROUND THE TIME THAT YOU

03:12PM  19    APPLIED THE LOGO FOR THE PFIZER DOCUMENT?

03:12PM  20    A.   I BELIEVE SO.

03:12PM  21    Q.   OKAY.  DO YOU AGREE WITH ME THAT THIS DOCUMENT IS NOT FROM

03:12PM  22    SCHERING-PLOUGH?

03:12PM  23    A.   NO.  IT IS WRITTEN BY THERANOS.

03:12PM  24    Q.   IT'S FROM THERANOS?

03:12PM  25    A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                    8152

03:12PM  1    Q.   AND YOU DON'T HAVE A MEMORY OF SEEKING SCHERING-PLOUGH'S

03:12PM  2    PERMISSION TO DO THAT?

03:12PM  3    A.   I DON'T.

03:12PM  4    Q.   YOU DON'T HAVE A MEMORY OF SOMEONE FROM SCHERING-PLOUGH

03:12PM  5    AUTHORIZING YOU TO DO THAT?

03:12PM  6    A.   I DON'T.

03:13PM  7    Q.   YOU DON'T HAVE A MEMORY OF SOMEONE FROM SCHERING-PLOUGH

03:13PM  8    ORALLY TELLING YOU THAT YOU HAD SCHERING-PLOUGH'S PERMISSION TO

03:13PM  9    PUT THE SCHERING-PLOUGH LOGO ON THIS THERANOS REPORT?

03:13PM  10   A.   I DON'T.

03:13PM  11   Q.   AND YOU DON'T HAVE A MEMORY OF SOMEONE FROM

03:13PM  12   SCHERING-PLOUGH TELLING YOU IN WRITING THAT YOU HAD

03:13PM  13   SCHERING-PLOUGH'S PERMISSION TO APPLY THE SCHERING-PLOUGH LOGO

03:13PM  14   TO THE THERANOS REPORT; CORRECT?

03:13PM  15   A.   CORRECT.

03:13PM  16   Q.   BEFORE GIVING THE DOCUMENT TO WALGREENS, YOU DON'T HAVE A

03:13PM  17   MEMORY OF TELLING SCHERING-PLOUGH YOU WERE ADDING ITS LOGO TO A

03:13PM  18   DOCUMENT THAT YOU PREPARED?

03:13PM  19   A.   I DON'T HAVE A MEMORY.

03:13PM  20   Q.   AND YOU NEVER TOLD WALGREENS YOU PUT THE SCHERING-PLOUGH

03:13PM  21   LOGO ON THIS?

03:13PM  22   A.   I DON'T THINK SO.

03:13PM  23   Q.   AND JUST TO BE 100 PERCENT CLEAR, THERE ARE SOME WORDS IN

03:13PM  24   THIS DOCUMENT BENEATH THE LOGO, IT SAYS SCHERING-PLOUGH

03:13PM  25   CORPORATION, SCHERING-PLOUGH RESEARCH, AND THEN THERE'S SOME

HOLMES CROSS BY MR. LEACH (RES.)                                    8153

03:13PM   1      ADDITIONAL LANGUAGE.

03:14PM   2          DID YOU WRITE THAT?

03:14PM   3      A.   I THINK SO.

03:14PM   4      Q.   OKAY.  AND THERANOS DID MORE THAN SIMPLY AFFIX THE

03:14PM   5      SCHERING-PLOUGH LOGO TO THIS AND ADD THOSE WORDS; ISN'T THAT

03:14PM   6      RIGHT, MS. HOLMES?

03:14PM   7      A.   YES.

03:14PM   8      Q.   LET'S LOOK AT PAGE, IF WE CAN SCROLL DOWN, MS. HOLLIMAN,

03:14PM   9      TO THE CONCLUSIONS PORTION OF THIS AND COMPARE IT WITH 259.

03:14PM  10          SO, MS. HOLLIMAN, IF WE COULD PLEASE COMPARE EXHIBIT 291

03:14PM  11      AT PAGE 51 TO 259, PAGE 19.

03:16PM  12          OKAY.  MS. HOLMES, DO YOU SEE ON THE LEFT-HAND SIDE OF THE

03:16PM  13      PAGE WE HAVE EXHIBIT 291, PAGE 51?

03:16PM  14      A.   I DO.

03:16PM  15      Q.   AND DO YOU SEE THE SCHERING-PLOUGH LOGO AT THE TOP?

03:16PM  16      A.   I DO.

03:16PM  17      Q.   THAT'S THE LOGO THAT YOU AFFIXED?

03:16PM  18      A.   YES.

03:16PM  19      Q.   OKAY.  AND TO THE RIGHT, DO YOU SEE EXHIBIT 259, PAGE 19?

03:16PM  20      A.   I DO.

03:16PM  21      Q.   AND DO YOU SEE JUST THE THERANOS LOGO IN THE UPPER LEFT?

03:16PM  22      A.   I DO.

03:16PM  23      Q.   AND THIS IS THE VERSION OF THE REPORT THAT YOU SENT TO

03:16PM  24      SCHERING-PLOUGH?

03:16PM  25      A.   YES.

HOLMES CROSS BY MR. LEACH (RES.)                                    8154

03:16PM   1      Q.   259?

03:16PM   2      A.   I THINK SO.  I DON'T HAVE THEM IN FRONT OF ME, BUT I

03:16PM   3      ASSUME SO.

03:16PM   4      Q.   OKAY.  AND, MS. HOLLIMAN, IF WE COULD PLEASE ZOOM OUT.

03:16PM   5           THERE ARE SOME DIFFERENCES IN THE CONCLUSIONS PARAGRAPH OF

03:16PM   6      THIS -- OF THESE TWO DOCUMENTS.

03:16PM   7           DO YOU SEE HOW ON 291 IT SAYS, "THE THERANOS IL-6, TNF-A,

03:17PM   8      CRP ASSAY MULTIPLEX HAS BEEN SHOWN TO GIVE MORE ACCURATE AND

03:17PM   9      PRECISE RESULTS FOR THREE INDEPENDENTLY CALIBRATED CARTRIDGE

03:17PM   10     LOTS AND ALL OF THE MANY INSTRUMENTS USED THAN CURRENT 'GOLD

03:17PM   11     STANDARD' REFERENCE METHODS."

03:17PM   12          DO YOU SEE THAT LANGUAGE?

03:17PM   13     A.   I DO.

03:17PM   14     Q.   AND I PROBABLY DIDN'T READ THAT AS WELL AS I SHOULD HAVE.

03:17PM   15          BUT DO YOU SEE THAT LANGUAGE?

03:17PM   16     A.   I DO.

03:17PM   17     Q.   AND DO YOU SEE HOW THOSE WORDS, "GOLD STANDARD REFERENCE

03:17PM   18     METHODS," ARE NOT ON THE CONCLUSIONS IN THE REPORT THAT GOES TO

03:17PM   19     SCHERING-PLOUGH?

03:17PM   20     A.   YES.

03:17PM   21     Q.   DID YOU ADD THOSE WORDS?

03:17PM   22     A.   I THINK SO.

03:17PM   23     Q.   OKAY.  AND YOU DIDN'T TESTIFY TO THAT IN YOUR DIRECT

03:17PM   24     EXAMINATION; IS THAT CORRECT?

03:17PM   25     A.   I DON'T THINK SO.

HOLMES CROSS BY MR. LEACH (RES.)                                     8155

03:17PM   1    Q.   IS MAKING THE CHANGE TO THE CONCLUSIONS PARAGRAPH ALSO

03:18PM   2    SOMETHING THAT YOU WISH YOU HAD DONE DIFFERENTLY?

03:18PM   3    A.   I THINK THIS WAS ACCURATELY REFLECTING THE DATA IN THE

03:18PM   4    DOCUMENT.

03:18PM   5         BUT, YES, I THINK THAT THE WAY THAT THESE REPORTS WERE

03:18PM   6    COMMUNICATED, I ABSOLUTELY WISH IT HAD BEEN BOLDED THAT THEY

03:18PM   7    WERE WRITTEN BY US.

03:18PM   8    Q.   LET'S TALK ABOUT GSK.

03:18PM   9         DO YOU RECALL TESTIFYING ABOUT GSK?

03:18PM  10    A.   I DO.

03:18PM  11    Q.   OKAY.  AND IF WE COULD LOOK AT EXHIBIT 291, PAGE 2.

03:18PM  12         IS THIS ANOTHER ONE OF THE ATTACHMENTS THAT WENT TO

03:18PM  13    WALGREENS?

03:18PM  14    A.   YES.

03:18PM  15    Q.   AND DO YOU SEE THE GLAXOSMITHKLINE LOGO IN THE TOP LEFT

03:19PM  16    PORTION OF THIS DOCUMENT?

03:19PM  17    A.   I DO.

03:19PM  18    Q.   AND DO YOU SEE THE HEADING "EXCERPTS FROM GSK METABOLIC

03:19PM  19    STUDY REPORT"?

03:19PM  20    A.   I DO.

03:19PM  21    Q.   NOW, GSK, UNLIKE SCHERING-PLOUGH AND PFIZER, GSK HAD

03:19PM  22    PROVIDED TO THERANOS AN EMAIL TITLED "THERANOS EVALUATION."

03:19PM  23         YOU RECALL SEEING THAT?

03:19PM  24    A.   I DO.

03:19PM  25    Q.   AND THAT WAS FROM SOMEONE NAMED NELSON RHODES?

HOLMES CROSS BY MR. LEACH (RES.)                                    8156

03:19PM   1      A.   YES.

03:19PM   2      Q.   AND HE EMAILED YOU A WORD DOCUMENT WITH INFORMATION FROM

03:19PM   3    THAT EVALUATION?

03:19PM   4      A.   I THINK SO.

03:19PM   5      Q.   AND THE WORD DOCUMENT INCLUDED A SUMMARY OF THERANOS

03:19PM   6    SYSTEMS BY SOMETHING CALLED THE GSK METABOLIC BIOMARKER.

03:19PM   7           DOES THAT SOUND RIGHT?

03:19PM   8      A.   IT DOES.

03:19PM   9      Q.   AND YOU REVIEWED THAT DOCUMENT WHEN YOU RECEIVED IT?

03:19PM  10      A.   I'M SURE I DID.

03:19PM  11      Q.   YOU WERE PLEASED WITH THE FEEDBACK?

03:19PM  12      A.   YES.

03:19PM  13      Q.   AND SO UNLIKE PFIZER, GSK HAD PROVIDED A WRITTEN DOCUMENT

03:20PM  14    SETTING FORTH AT LEAST SOME OF ITS VIEWS?

03:20PM  15      A.   YES.

03:20PM  16      Q.   AND UNLIKE SCHERING-PLOUGH, GSK HAD PROVIDED A DOCUMENT

03:20PM  17    SETTING FORTH SOME OF ITS VIEWS?

03:20PM  18      A.   YES.

03:20PM  19      Q.   LET'S LOOK AT EXHIBIT 142, WHICH IS IN EVIDENCE.

03:20PM  20           LET ME CONFIRM, MS. KRATZMANN, IS 142 IN EVIDENCE?

03:20PM  21                THE CLERK:   142?  NO.

03:20PM  22                MR. LEACH:   IS 112 IN EVIDENCE?

03:20PM  23                THE CLERK:   THERE'S 112 AND --

03:20PM  24                MR. LEACH:   OKAY.  LET'S TRY 112.

03:21PM  25      Q.   MS. HOLMES, DO YOU SEE EXHIBIT 112 ON THE SCREEN?

HOLMES CROSS BY MR. LEACH (RES.)                                    8157

03:21PM   1    A.   I DO, YES.

03:21PM   2    Q.   AND THIS IS THE EMAIL THAT WE HAVE BEEN TALKING ABOUT FROM

03:21PM   3    NELSON RHODES AT GSK?

03:21PM   4    A.   YES.

03:21PM   5    Q.   AND IF WE COULD PLEASE GO TO PAGE 2.

03:21PM   6         AND IF WE CAN SPLIT THE SCREEN, MS. HOLLIMAN, WITH

03:21PM   7    EXHIBIT 291, PAGE 2.

03:21PM   8         DO YOU SEE ON THE LEFT SCREEN THE SECOND PAGE OF

03:21PM   9    EXHIBIT 112, MS. HOLMES?

03:21PM   10   A.   I'M SORRY, WHICH ONE?

03:22PM   11   Q.   ON THE LEFT SIDE OF THE SCREEN --

03:22PM   12   A.   YES.

03:22PM   13   Q.   -- DO YOU SEE THE SECOND PAGE OF EXHIBIT 112?

03:22PM   14   A.   I DO.

03:22PM   15   Q.   OKAY.  AND TO THE RIGHT IS THE SECOND PAGE OF EXHIBIT 291

03:22PM   16   AT PAGE 2?

03:22PM   17   A.   YES.

03:22PM   18   Q.   AND 291 IS THE DOCUMENT THAT GOES TO WALGREENS?

03:22PM   19   A.   YES.

03:22PM   20   Q.   OKAY.  THERE'S A LOGO FOR GSK AT THE TOP LEFT OF 291.

03:22PM   21        DID YOU ADD THAT LOGO?

03:22PM   22   A.   I ASSUME SO.

03:22PM   23   Q.   AND DID YOU PROVIDE THE -- AND YOU PROVIDED THE DOCUMENT

03:22PM   24   IN 291 TO WALGREENS?

03:22PM   25   A.   I DID.

HOLMES CROSS BY MR. LEACH (RES.)                                   8158

03:22PM  1    Q.   DID YOU RECEIVE ANY PERMISSION FROM GSK TO ADD THE LOGO?

03:22PM  2    A.   I DON'T KNOW.

03:22PM  3    Q.   AND YOU HAVE NO MEMORY OF RECEIVING ANY ORAL PERMISSION

03:22PM  4    FROM GSK TO ADD THE LOGO?

03:22PM  5    A.   I DON'T.

03:22PM  6    Q.   AND YOU HAVE NO MEMORY OF ANY WRITTEN COMMUNICATION FROM

03:23PM  7    GSK AUTHORIZING YOU TO ADD THE LOGO?

03:23PM  8    A.   I DON'T.

03:23PM  9    Q.   AND YOU DON'T HAVE A MEMORY OF TELLING ANYBODY FROM GSK

03:23PM  10   THAT YOU HAD ALTERED THE DOCUMENT IN EXHIBIT 112?

03:23PM  11   A.   I'M NOT SURE.  THERE WAS A GSK EXECUTIVE THAT CAME IN TO

03:23PM  12   WORK WITH US WHO WAS IN ACTUAL COMMUNICATION WITH THEM.

03:23PM  13   Q.   BUT YOU DON'T HAVE A MEMORY OF HIM TELLING YOU TO AFFIX

03:23PM  14   THE LOGO TO THIS AND DO WHAT YOU WILL TO IT?

03:23PM  15   A.   NO.

03:23PM  16   Q.   DID YOU TELL ANYBODY FROM GSK THAT YOU MIGHT BE PROVIDING

03:23PM  17   EXCERPTS OF A METABOLIC STUDY REPORT TO INVESTORS?

03:23PM  18   A.   WE MIGHT HAVE.

03:23PM  19   Q.   BUT YOU DON'T HAVE A MEMORY OF IT?

03:23PM  20   A.   I'M NOT SURE.

03:23PM  21   Q.   IF YOU COMPARE EXHIBIT 112 AT PAGE 2 ON THE LEFT TO 291-2

03:24PM  22   ON THE RIGHT, YOU'LL SEE THAT THE DATES ON MAY 27TH TO 28TH,

03:24PM  23   2008 ARE NOT PRESENT ON THE DOCUMENT WITH THE GSK LOGO.

03:24PM  24        DO YOU SEE THAT?

03:24PM  25   A.   I DO.

HOLMES CROSS BY MR. LEACH (RES.)                                      8159

03:24PM   1      Q.   DID YOU DELETE THOSE WORDS?

03:24PM   2      A.   I DON'T KNOW.

03:24PM   3      Q.   IS THE REASON THAT THOSE WORDS ARE DELETED IS BECAUSE IT

03:24PM   4      MIGHT SUGGEST THE LIMITS OF GSK'S EVALUATION?

03:24PM   5      A.   I DON'T THINK SO.

03:24PM   6      Q.   YOU DON'T RECALL TESTIFYING ABOUT ADDING THE GSK LOGO

03:24PM   7      DURING YOUR DIRECT EXAMINATION, DO YOU?

03:24PM   8      A.   I DON'T THINK SO.

03:24PM   9      Q.   AND THERANOS DID MORE THAN SIMPLY DELETE DATES HERE.

03:24PM  10           WHY DON'T -- CAN I DRAW YOUR ATTENTION, PLEASE, TO THE

03:25PM  11      BULLETS?

03:25PM  12      A.   YES.

03:25PM  13      Q.   IF WE COULD ZOOM OUT, MS. HOLLIMAN, AND GO TO PAGE 3 OF

03:25PM  14      112.

03:25PM  15           DO YOU SEE IN 112 THERE'S A BULLET UNDER "GSK METABOLIC

03:25PM  16      BIOMARKER LAB COMMENTS" THAT SAYS, "FINGER PRICK/BLOOD DRAW

03:25PM  17      PROCEDURE WAS DIFFICULT (NEEDED LARGER LANCET AND BETTER

03:25PM  18      SYRINGE SYSTEM)."

03:25PM  19           DO YOU SEE THAT LANGUAGE?

03:25PM  20      A.   I DO.

03:25PM  21      Q.   AND THAT COMMENT IS DELETED FROM THE DOCUMENT THAT GOES TO

03:25PM  22      WALGREENS; ISN'T THAT RIGHT?

03:25PM  23      A.   I DON'T KNOW.  I HAVEN'T LOOKED AT IT, BUT -- BUT I TAKE

03:25PM  24      YOUR WORD FOR IT.

03:25PM  25      Q.   DID YOU MAKE THAT DELETION?

HOLMES CROSS BY MR. LEACH (RES.)                                        8160

03:26PM   1      A.   I DON'T KNOW.

03:26PM   2      Q.   OKAY.  IF WE COULD ZOOM OUT, MS. HOLLIMAN, SO WE MIGHT --

03:26PM   3           DO YOU SEE HOW ON THE 291 UNDER "GSK METABOLIC BIOMARKER

03:26PM   4      LAB COMMENTS," THERE ARE THREE -- SIX BULLETS OR --

03:26PM   5      A.   I DO.

03:26PM   6      Q.   AND THE LAST ONE ENDS WITH "ASSAYS TOOK APPROXIMATELY ONE

03:26PM   7      HOUR."

03:26PM   8      A.   YES.

03:26PM   9      Q.   AND THE COMMENT ABOUT THE FINGER PRICK BEING DIFFICULT IS

03:26PM  10      NOT THERE; AM I RIGHT ABOUT THAT?

03:26PM  11      A.   YOU ARE.

03:26PM  12      Q.   AND YOU DON'T KNOW WHO AT THERANOS MADE THE CHANGE TO

03:26PM  13      THESE DOCUMENTS?

03:26PM  14      A.   I DON'T.

03:26PM  15      Q.   AND DID YOU EVER TELL ANYONE AT THERANOS THAT WE CAN'T

03:26PM  16      HAVE THE SLIGHTEST NEGATIVE COMMENT IN WHAT IS GOING OUT TO OUR

03:26PM  17      PARTNERS?

03:26PM  18      A.   I DON'T THINK SO.

03:26PM  19      Q.   AM I RIGHT THAT THE MEMO THAT DR. RHODES SENT YOU WAS

03:26PM  20      NEVER INTENDED FOR USE OUTSIDE OF GSK?

03:27PM  21      A.   I DON'T KNOW.

03:27PM  22      Q.   DIDN'T YOU UNDERSTAND THAT IT WAS A MEANS BY WHICH OTHER

03:27PM  23      UNITS WITHIN GSK MIGHT HAVE SOME INFORMATION ABOUT THERANOS?

03:27PM  24      A.   I THINK THAT'S WHAT THE EVALUATION WAS FOR.

03:27PM  25      Q.   OKAY.  LET'S LOOK AT THE EMAIL.

HOLMES CROSS BY MR. LEACH (RES.)                              8161

03:27PM   1            IF WE CAN GO OUT TO 112.

03:27PM   2            DO YOU SEE THE EMAIL FROM, IS IT SUSAN DIGIAIMO?

03:27PM   3       A.   YES.

03:27PM   4       Q.   AND SHE WAS A SALESPERSON FOR THERANOS DURING THIS TIME

03:27PM   5       PERIOD?

03:27PM   6       A.   YES.

03:27PM   7       Q.   BY THE WAY, WE SAW DURING YOUR DIRECT SOME EMAILS TO HER

03:27PM   8       PERSONAL EMAIL ADDRESS.  DO YOU KNOW WHY SHE DID THAT?

03:27PM   9       A.   I THINK SHE LIKED TO MAINTAIN LOGS OF ALL OF HER CUSTOMER

03:27PM  10       RELATIONSHIPS SO THAT SHE COULD USE THEM ON AN ONGOING BASIS.

03:27PM  11       Q.   DID YOU GIVE HER AUTHORITY TO DO THAT?

03:27PM  12       A.   TO DO WHAT?

03:28PM  13       Q.   FORWARD THERANOS PROPRIETARY INFORMATION TO HER PERSONAL

03:28PM  14       EMAIL ADDRESS?

03:28PM  15       A.   I DID NOT.

03:28PM  16       Q.   SO THAT'S AN INSTANCE WHERE YOU WERE LESS CONCERNED ABOUT

03:28PM  17       TRADE SECRETS?

03:28PM  18       A.   I DON'T REMEMBER ANY TRADE SECRETS IN THAT EMAIL.

03:28PM  19       Q.   YOU WOULD FEEL COMFORTABLE JUST PUTTING ON THE WEBSITE

03:28PM  20       YOUR WORK WITH PFIZER AND YOUR WORK WITH GSK AND YOUR WORK WITH

03:28PM  21       SCHERING-PLOUGH?

03:28PM  22       A.   IT DEPENDS ON WHAT IT IS.

03:28PM  23       Q.   OKAY.  GOING BACK TO THE EMAIL, DO YOU SEE WHERE IT SAYS,

03:28PM  24       "SEE ATTACHED SUMMARY OF GSK'S EVALUATION OF OUR SYSTEMS.  I AM

03:28PM  25       FOLLOWING UP WITH REBECCA HODGE AS WELL AS DEREK AND

HOLMES CROSS BY MR. LEACH (RES.)                              8162

03:28PM   1    BOB DOBBINS IN REGARDS TO THE UP COMING AXOR STUDY AS WELL AS

03:28PM   2    ADDITIONAL OPPORTUNITIES."

03:28PM   3        YOU KNEW REBECCA HODGE AND DEREK AND BOB DOBBINS WERE GSK

03:28PM   4    EMPLOYEES?

03:28PM   5    A.   I DID.

03:28PM   6    Q.   AND YOU UNDERSTOOD THAT WHAT DR. RHODES WAS DOING WAS SO

03:28PM   7    OTHER UNITS WITHIN GSK MIGHT HAVE INFORMATION ABOUT THERANOS?

03:28PM   8    A.   YES.

03:28PM   9    Q.   AND AM I RIGHT THAT YOUR CONTRACTS WITH PFIZER AND

03:29PM  10    SCHERING-PLOUGH AND GSK PROHIBITED THERANOS FROM USING THE

03:29PM  11    PFIZER -- THE RESPECTIVE LOGOS WITHOUT THEIR WRITTEN

03:29PM  12    PERMISSION?

03:29PM  13    A.   I DON'T KNOW.

03:29PM  14    Q.   WELL, LET'S LOOK.

03:29PM  15        IF WE CAN GO TO WHAT IS IN EVIDENCE AS EXHIBIT 7753.  AND

03:29PM  16    IF WE CAN GO TO THE BATES ENDING 837, WHICH I BELIEVE IS

03:29PM  17    PAGE 117 OF THE DOCUMENT.

03:29PM  18        MS. HOLMES, DO YOU RECALL DURING MS. SPIVEY'S TESTIMONY A

03:29PM  19    NUMBER OF CONTRACTS WITH PHARMACEUTICAL COMPANIES WERE

03:29PM  20    INTRODUCED INTO EVIDENCE?

03:29PM  21    A.   I DO.

03:29PM  22    Q.   AND DURING YOUR DIRECT EXAMINATION, YOU WERE SHOWN SOME OF

03:30PM  23    THE CONTRACTS WITH YOUR PHARMACEUTICAL PARTNERS.

03:30PM  24        DO YOU RECALL TESTIFYING TO THAT?

03:30PM  25    A.   I DO.

HOLMES CROSS BY MR. LEACH (RES.)                                        8163

03:30PM   1    Q.   OKAY.  I'M SHOWING YOU A PORTION OF THE PFIZER CONTRACT,

03:30PM   2    AND I DRAW YOUR ATTENTION TO THE PARAGRAPH 7.2 UNDER PUBLICITY.

03:30PM   3         DO YOU SEE WHERE IT SAYS, "NEITHER PARTY WILL USE, OR

03:30PM   4    AUTHORIZE OTHERS TO USE, THE NAME, SYMBOLS, OR MARKS OF THE

03:30PM   5    OTHER PARTY IN ANY ADVERTISING OR PUBLICITY MATERIAL OR MAKE

03:30PM   6    ANY FORM OF REPRESENTATION OR STATEMENT WITH REGARD TO THE

03:30PM   7    SERVICES WHICH WOULD KNOWINGLY CONSTITUTE AN EXPRESS OR IMPLIED

03:30PM   8    ENDORSEMENT BY THE OTHER PARTY OF ANY COMMERCIAL PRODUCT OR

03:30PM   9    SERVICE WITHOUT THAT OTHER PARTY'S PRIOR WRITTEN APPROVAL."

03:30PM   10        DO YOU SEE THAT LANGUAGE?

03:30PM   11   A.   I DO.

03:30PM   12   Q.   AND IF I UNDERSTAND YOUR TESTIMONY, BEFORE APPLYING THE

03:30PM   13   LOGO, YOU DIDN'T LOOK AT THE CONTRACT TO MAKE SURE THAT IT WAS

03:30PM   14   OKAY TO DO THAT?

03:30PM   15   A.   I DID NOT.

03:30PM   16   Q.   AND THIS WOULD BE THE TYPE OF THING THAT WOULD UPSET

03:30PM   17   THERANOS IF ONE OF THERANOS'S COUNTER PARTIES DID THIS.

03:30PM   18        IS THAT FAIR?

03:31PM   19   A.   I'M NOT SURE.  IT DEPENDS ON THE CONTEXT.

03:31PM   20   Q.   YOU WERE VERY AGGRESSIVE WITH YOUR INTELLECTUAL PROPERTY;

03:31PM   21   ISN'T THAT CORRECT?

03:31PM   22   A.   WE WERE.

03:31PM   23   Q.   YOU WERE NOT AFRAID TO SUE PEOPLE YOU THOUGHT WERE

03:31PM   24   INFRINGING PATENTS; IS THAT CORRECT?

03:31PM   25   A.   CORRECT.

HOLMES CROSS BY MR. LEACH (RES.)                                    8164

03:31PM   1    Q.   YOU WERE VERY, VERY AGGRESSIVE IN ENFORCING YOUR

03:31PM   2    INTELLECTUAL PROPERTY?

03:31PM   3    A.   YES.

03:31PM   4    Q.   AND IF SOMEBODY WAS USING YOUR LOGO WITHOUT YOUR CONSENT,

03:31PM   5    YOU WOULD HAVE BEEN ANGRY ABOUT THAT?

03:31PM   6    A.   AGAIN, IT DEPENDS ON THE CONTEXT.

03:31PM   7         WE HAD PHARMA PARTNERS WHO WERE REPRESENTING OUR WORK AT

03:31PM   8    CONFERENCES WITH OUR LOGO I THINK.

03:31PM   9    Q.   LET'S LOOK AT THE SCHERING-PLOUGH AGREEMENT.

03:31PM  10         IF WE CAN GO TO PAGE 135.

03:31PM  11         AND I DRAW YOUR ATTENTION TO PARAGRAPH 7.

03:31PM  12         DO YOU SEE THE REFERENCE TO SPRI?

03:31PM  13    A.   I DO.

03:31PM  14    Q.   AND IS THAT A REFERENCE TO A SCHERING-PLOUGH ENTITY?

03:32PM  15    A.   I THINK SO.

03:32PM  16    Q.   OKAY.  AND THIS SAYS, "PROVIDER AGREES" -- PROVIDER IN

03:32PM  17    THIS IS THERANOS; RIGHT?

03:32PM  18    A.   I THINK SO.

03:32PM  19    Q.   "PROVIDER AGREES THAT IT WILL NOT, WITHOUT THE PRIOR

03:32PM  20    WRITTEN PERMISSION OF SPRI, USE INFORMATION AND DATA RECEIVED

03:32PM  21    BY IT OR GENERATED PURSUANT TO THE PROJECT FOR ANY PURPOSE

03:32PM  22    OTHER THAN IN CARRYING OUT THIS AGREEMENT.

03:32PM  23         "NEITHER PARTY MAY USE THE NAME OF THE OTHER PARTY IN ANY

03:32PM  24    PUBLICITY OR ADVERTISING NOR ISSUE A PRESS RELEASE OR OTHERWISE

03:32PM  25    PUBLICIZE OR DISCLOSE ANY INFORMATION RELATED TO THE EXISTENCE

HOLMES CROSS BY MR. LEACH (RES.)                                          8165

03:32PM   1      OF THIS AGREEMENT OR THE TERMS AND CONDITIONS HEREOF, WITHOUT

03:32PM   2      THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY."

03:32PM   3           DO YOU SEE THAT LANGUAGE?

03:32PM   4      A.   I DO.

03:32PM   5      Q.   AND YOU DIDN'T CONSULT WITH SCHERING-PLOUGH OR REVIEW THE

03:32PM   6      CONTRACT BEFORE APPLYING THE SCHERING-PLOUGH LOGO?

03:32PM   7      A.   I DID NOT REVIEW THE CONTRACT.

03:32PM   8      Q.   AND AM I RIGHT THAT YOU DID NOT REVIEW THE GSK CONTRACT

03:32PM   9      BEFORE DOING THAT?

03:32PM  10      A.   I DID NOT.

03:32PM  11      Q.   OKAY.  AND WOULD IT SURPRISE YOU THAT THE GSK CONTRACT

03:33PM  12      ALSO HAS LANGUAGE GOVERNING ITS USE OF TRADEMARKS?

03:33PM  13      A.   IT WOULD NOT.

03:33PM  14      Q.   LET ME DRAW YOUR ATTENTION TO --

03:33PM  15           MS. HOLLIMAN, IS 5537 IN EVIDENCE?

03:33PM  16           OR, I'M SORRY, MS. KRATZMANN?

03:33PM  17               THE CLERK:  5537?  NO.

03:33PM  18               MR. LEACH:  OKAY.  THANK YOU.

03:33PM  19           MAY I APPROACH, YOUR HONOR?

03:33PM  20               THE COURT:  YES.

03:34PM  21      BY MR. LEACH:

03:34PM  22      Q.   I'M PLACING BEFORE YOU WHAT HAS BEEN MARKED AS

03:34PM  23      EXHIBIT 5537.

03:34PM  24           DO YOU HAVE THAT IN FRONT OF YOU, MS. HOLMES?

03:34PM  25      A.   I DO, YES.

HOLMES CROSS BY MR. LEACH (RES.)                    8166

03:34PM  1    Q.   AND THIS IS AN EMAIL EXCHANGE BETWEEN -- INVOLVING YOU AND

03:34PM  2    DAN EDLIN?

03:34PM  3    A.   YES.

03:34PM  4    Q.   AND IT RELATES TO INFORMATION THAT MR. EDLIN AT YOUR

03:34PM  5    DIRECTION IS TO PROVIDE TO ROGER PARLOFF IN CONNECTION WITH HIS

03:34PM  6    REPORTING?

03:34PM  7    A.   YES.

03:34PM  8         MR. LEACH:  YOUR HONOR, I OFFER EXHIBIT 5537.

03:35PM  9         (PAUSE IN PROCEEDINGS.)

03:35PM  10        MR. DOWNEY:  NO OBJECTION.

03:35PM  11        THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

03:35PM  12        (GOVERNMENT'S EXHIBIT 5537 WAS RECEIVED IN EVIDENCE.)

03:35PM  13        MR. LEACH:  IF WE CAN ZOOM IN ON THE TOP HALF,

03:35PM  14   MS. HOLLIMAN.

03:35PM  15   Q.   DO YOU SEE THERE'S AN EMAIL FROM YOU, MS. HOLMES, TO

03:35PM  16   DAN EDLIN ON SUNDAY, JUNE 1ST, 2014?

03:35PM  17   A.   YES.

03:35PM  18   Q.   AND THE SUBJECT IS "ROGER PARLOFF - AGGREGATED ACTION

03:35PM  19   ITEMS"?

03:35PM  20   A.   YES.

03:35PM  21   Q.   AND YOU GAVE GUIDANCE TO MR. EDLIN ABOUT HOW TO -- WHAT

03:35PM  22   INFORMATION TO COMMUNICATE TO ROGER PARLOFF IN CONNECTION WITH

03:35PM  23   HIS REPORTING; IS THAT CORRECT?

03:35PM  24   A.   I DID.

03:35PM  25   Q.   AND HERE DOES IT APPEAR THAT YOU ARE FORWARDING THE -- A

HOLMES CROSS BY MR. LEACH (RES.)                                    8167

03:35PM   1        VERSION OF THE DOCUMENT RELATING TO SCHERING-PLOUGH TO

03:36PM   2        DAN EDLIN FOR HIM TO PROVIDE TO ROGER PARLOFF?

03:36PM   3        A.   I DID.

03:36PM   4        Q.   OKAY.  IF WE CAN LOOK AT THE NEXT PAGE, MS. HOLLIMAN.  AND

03:36PM   5        THE NEXT ONE.  LET'S GO TO THE ATTACHMENT IF WE COULD.

03:36PM   6             AND THE VERSION THAT YOU ARE SENDING IS THE ONE WITH THE

03:36PM   7        SCHERING-PLOUGH LOGO UP AT THE TOP; CORRECT?

03:36PM   8        A.   YES.

03:36PM   9        Q.   AND THAT'S THE ONE THAT YOU APPLIED?

03:36PM  10        A.   YES.

03:36PM  11        Q.   OKAY.  AND YOU NEVER TOLD DAN EDLIN ABOUT THE APPLICATION

03:36PM  12        OF THE SCHERING-PLOUGH LOGO TO THIS; IS THAT CORRECT?

03:36PM  13        A.   I DON'T KNOW.

03:36PM  14        Q.   YOU DON'T HAVE A MEMORY OF THAT?

03:36PM  15        A.   I DON'T.

03:36PM  16        Q.   OKAY.  AND YOU DON'T HAVE A MEMORY OF INSTRUCTING

03:36PM  17        DAN EDLIN TO LET ROGER PARLOFF KNOW THAT?

03:36PM  18        A.   I DON'T.

03:36PM  19        Q.   OKAY.  LET'S LOOK AT EXHIBIT 553 --

03:37PM  20             CAN YOU ZOOM OUT, PLEASE, MS. HOLLIMAN.

03:37PM  21             IF WE COULD PLEASE LOOK AT 5538.

03:37PM  22        A.   I DON'T THINK I HAVE THAT ONE.

03:37PM  23        Q.   THAT'S BECAUSE I DIDN'T PUT IT IN YOUR BINDER.

03:37PM  24        A.   OKAY.

03:37PM  25        Q.   I'LL BRING IT UP.

| | | |
|---|---|---|
| 03:37PM | 1 | MAY I APPROACH, YOUR HONOR? |
| 03:37PM | 2 | THE COURT:  YES. |
| 03:37PM | 3 | BY MR. LEACH: |
| 03:37PM | 4 | Q.  (HANDING.) |
| 03:37PM | 5 | IS THIS ANOTHER EMAIL EXCHANGE INVOLVING YOU AND MR. EDLIN |
| 03:37PM | 6 | RELATING TO INFORMATION TO PROVIDE TO ROGER PARLOFF? |
| 03:37PM | 7 | A.  IT IS. |
| 03:37PM | 8 | MR. LEACH:  YOUR HONOR, I MOVE 5538 INTO EVIDENCE. |
| 03:38PM | 9 | MR. DOWNEY:  ARE THESE ALL THE SAME ATTACHMENTS, |
| 03:38PM | 10 | BOB? |
| 03:38PM | 11 | YEAH, NO OBJECTION. |
| 03:38PM | 12 | THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED. |
| 03:38PM | 13 | (GOVERNMENT'S EXHIBIT 5538 WAS RECEIVED IN EVIDENCE.) |
| 03:38PM | 14 | BY MR. LEACH: |
| 03:38PM | 15 | Q.  AND IF WE CAN ZOOM IN AT THE TOP. |
| 03:38PM | 16 | DO YOU SEE, MS. HOLMES, YOU'RE EMAILING MR. EDLIN ON THE |
| 03:38PM | 17 | SAME DAY AS THE PRIOR EXHIBIT, THIS TIME ATTACHING THE -- A |
| 03:38PM | 18 | REPORT RELATING TO PFIZER? |
| 03:38PM | 19 | A.  I DO. |
| 03:38PM | 20 | Q.  OKAY.  AND IS THIS SIMILAR TO THE EXHIBIT THAT WE SAW |
| 03:38PM | 21 | PREVIOUSLY WHERE YOU'RE PROVIDING SCHERING-PLOUGH RELATED |
| 03:38PM | 22 | DOCUMENTS TO MR. EDLIN TO PROVIDE TO MR. PARLOFF? |
| 03:38PM | 23 | A.  IT IS. |
| 03:38PM | 24 | Q.  OKAY.  FURTHER BELOW YOU WROTE, "WHAT CAN BE DISCLOSED IS |
| 03:38PM | 25 | DEVICES. |

HOLMES CROSS BY MR. LEACH (RES.)                                    8169

03:38PM   1            "DECENTRALIZABLE.

03:39PM   2            "WILL DECENTRALIZE.

03:39PM   3            "WILL MAINTAIN CENTRALIZED OVERSIGHT."

03:39PM   4            DO YOU SEE THAT LANGUAGE?

03:39PM   5       A.   I DO.

03:39PM   6       Q.   AND YOU RECALL SOME OF THE AUDIO CONVERSATIONS WITH

03:39PM   7       MR. PARLOFF WHERE YOU TALKED TO MR. PARLOFF ABOUT THIS IDEA

03:39PM   8       THAT YOU CAN REFER TO OUR SYSTEM AS DEVICES, BUT DON'T USE THE

03:39PM   9       WORD "DEVICE."

03:39PM  10            DO YOU RECALL THAT AUDIO?

03:39PM  11       A.   YES.

03:39PM  12       Q.   AND YOU WERE BEING VERY CAREFUL IN YOUR WORD CHOICE IN

03:39PM  13       THAT CONVERSATION.

03:39PM  14            IS THAT FAIR, MS. HOLMES?

03:39PM  15       A.   I THINK SO.

03:39PM  16       Q.   OKAY.  YOU WERE PAYING ATTENTION TO THE DIFFERENCE BETWEEN

03:39PM  17       "DEVICES" AND "DEVICE"?

03:39PM  18       A.   I THINK SO, YES.

03:39PM  19       Q.   OKAY.  AND THAT'S WHAT YOU'RE EXPRESSING HERE IN THIS

03:39PM  20       EMAIL?

03:39PM  21       A.   I'M NOT SURE WHAT I'M EXPRESSING HERE.

03:39PM  22       Q.   OKAY.  WELL, YOU'RE ALSO TALKING ABOUT WAYS TO USE THE

03:39PM  23       FUTURE TENSE TO TALK ABOUT DECENTRALIZATION OF THE LAB, AREN'T

03:39PM  24       YOU?

03:39PM  25       A.   YOU'RE REFERRING TO "WILL DECENTRALIZE"?

HOLMES CROSS BY MR. LEACH (RES.)                                    8170

03:40PM  1   Q.  WELL, AREN'T ALL THREE OF THOSE WORDS A WAY TO EXPRESS THE

03:40PM  2   ABILITY TO DECENTRALIZE SOMETHING?

03:40PM  3   A.  I THINK SO.

03:40PM  4   Q.  OKAY.  AND THIS WAS GUIDANCE THAT YOU WERE GIVING TO

03:40PM  5   MR. EDLIN IN ANY CONVERSATIONS HE MIGHT HAVE WITH MR. PARLOFF?

03:40PM  6   A.  IT'S CERTAINLY RELATED TO MR. PARLOFF.  IT'S NOTES OF

03:40PM  7   SOMETHING.  I'M NOT QUITE SURE WHAT THIS IS.

03:40PM  8   Q.  OKAY.  ISN'T THIS AN EXAMPLE OF YOU BEING EXTRAORDINARILY

03:40PM  9   CAREFUL WITH THE WAY YOU PUT PHRASES IN TERMS OF FUTURE USE,

03:40PM  10  ASPIRATION, HISTORICAL USE?

03:40PM  11  A.  I DON'T KNOW.  THIS IS -- IT LOOKS LIKE NOTES OF SOMETHING

03:40PM  12  TO ME.

03:40PM  13  Q.  OKAY.  ON YOUR DIRECT -- WE CAN TAKE THIS DOWN,

03:40PM  14  MS. HOLLIMAN.

03:40PM  15      ON YOUR DIRECT EXAMINATION YOU WERE ASKED A QUESTION, "AND

03:40PM  16  AS OF DECEMBER 13TH, DECEMBER 2013, DID THERANOS NEED CAPITAL

03:41PM  17  BY THE END OF 2013?"

03:41PM  18      DO YOU RECALL THAT QUESTION BEING ASKED OF YOU?

03:41PM  19  A.  I DO.

03:41PM  20  Q.  AND YOU ANSWERED, "WE HAD RECEIVED $75 MILLION IN CAPITAL

03:41PM  21  FROM WALGREENS, SO WE DID NOT NEED CAPITAL AFTER THAT."

03:41PM  22      THAT WAS YOUR TESTIMONY?

03:41PM  23  A.  IT WAS.

03:41PM  24  Q.  OKAY.  ISN'T IT TRUE THOUGH, MS. HOLMES, THAT YOU NEEDED

03:41PM  25  CAPITAL IN SEPTEMBER OF 2013 AND AGAIN IN DECEMBER OF 2013?

HOLMES CROSS BY MR. LEACH (RES.)                                    8171

| | | |
|---|---|---|
| 03:41PM | 1 | A.   YES. |
| 03:41PM | 2 | Q.   LET'S LOOK AT SOME OF THE EXAMPLES OF THAT. |
| 03:41PM | 3 | IF WE CAN CALL UP WHAT IS IN EVIDENCE AS EXHIBIT 5172. |
| 03:41PM | 4 | AND I THINK WE NEED THE NATIVE FILE FOR THIS, |
| 03:41PM | 5 | MS. HOLLIMAN. |
| 03:42PM | 6 | MS. HOLMES, DO YOU RECALL TESTIMONY FROM MS. SPIVEY ABOUT |
| 03:42PM | 7 | CASH BALANCE SPREADSHEETS THAT SHE WOULD SHARE WITH YOU FROM |
| 03:42PM | 8 | TIME TO TIME? |
| 03:42PM | 9 | A.   I DO. |
| 03:42PM | 10 | Q.   AND I BELIEVE YOU TESTIFIED THAT YOU PAID ATTENTION TO THE |
| 03:42PM | 11 | COMPANY'S CASH POSITION OVER TIME? |
| 03:42PM | 12 | A.   YES. |
| 03:42PM | 13 | Q.   I WOULD LIKE -- MR. DOWNEY ASKED YOU QUESTIONS ABOUT THE |
| 03:42PM | 14 | END OF DECEMBER 2013.  I'D LIKE TO FOCUS ON THE SEPTEMBER 2013 |
| 03:42PM | 15 | TIME PERIOD. |
| 03:42PM | 16 | AND IF WE CAN MOVE TO COLUMN EN, MS. HOLLIMAN. |
| 03:43PM | 17 | DO YOU SEE, MS. HOLMES, THAT THERE ARE ROWS FOR THE WEEK |
| 03:43PM | 18 | BEGINNING SEPTEMBER 23RD, 2013, AND ENDING SEPTEMBER 29TH, |
| 03:43PM | 19 | 2013? |
| 03:43PM | 20 | A.   I DO. |
| 03:43PM | 21 | Q.   AND THEN DO YOU SEE A LISTING OF PARTICULAR ACCOUNTS IN |
| 03:43PM | 22 | ROWS 9 THROUGH 14, FIDELITY, MORGAN STANLEY-INVESTMENT, |
| 03:43PM | 23 | MORGAN STANLEY-LOC. |
| 03:43PM | 24 | DO YOU SEE THOSE? |
| 03:43PM | 25 | A.   I DO. |

HOLMES CROSS BY MR. LEACH (RES.)                                          8172

03:43PM   1    Q.   AND IN THE MORGAN STANLEY-LOC LINE, THAT LOC STANDS FOR

03:43PM   2    LINE OF CREDIT; CORRECT?

03:43PM   3    A.   YES.

03:43PM   4    Q.   AND THAT LINE OF CREDIT WAS SECURING THERANOS'S RENT

03:44PM   5    OBLIGATIONS?

03:44PM   6    A.   I'M NOT SURE.

03:44PM   7    Q.   OKAY.  IT WAS SECURING SOMETHING; IS THAT FAIR?

03:44PM   8    A.   I DON'T KNOW.

03:44PM   9    Q.   DO YOU GENERALLY HAVE A MEMORY THAT YOU WEREN'T SIMPLY

03:44PM  10    FREE TO DRAW DOWN ON THE LETTER OF CREDIT?

03:44PM  11    A.   I THINK THAT'S RIGHT.

03:44PM  12    Q.   OKAY.  SO DIPPING INTO THAT $7.5 MILLION WOULD NOT BE A

03:44PM  13    HAPPY DAY FOR THERANOS?

03:44PM  14    A.   I THINK YOU'RE RIGHT.

03:44PM  15    Q.   OKAY.  AND THIS SAYS THERE'S $5 MILLION IN A FIDELITY

03:44PM  16    ACCOUNT.

03:44PM  17         DO YOU SEE THAT?

03:44PM  18    A.   I DO.

03:44PM  19    Q.   AND 85,700,000 IN ANOTHER -- IN A MORGAN

03:44PM  20    STANLEY-INVESTMENT ACCOUNT?

03:44PM  21    A.   YES.

03:44PM  22    Q.   AND AT THIS POINT IN TIME, THERANOS'S TOTAL CASH BALANCE

03:44PM  23    IS DOWN TO APPROXIMATELY $14.46 MILLION; IS THAT CORRECT?

03:45PM  24    A.   YES.

03:45PM  25    Q.   AND IF YOU SCROLL TO THE LEFT, DO YOU SEE AT THE END OF --

HOLMES CROSS BY MR. LEACH (RES.)                                    8173

03:45PM   1      IN ROW EI THERE'S A DEBIT FOR $18.5 MILLION IN LINE 22?

03:45PM   2           FURTHER DOWN, MS. HOLLIMAN.

03:45PM   3           DO YOU SEE THAT?

03:45PM   4      A.   I DO.

03:45PM   5      Q.   AND THAT 18.5 MILLION DEBIT WAS TAKEN OUT OF YOUR FIDELITY

03:45PM   6      ACCOUNT, DROPPING IT DOWN FROM $32 MILLION TO $12 MILLION IN

03:45PM   7      THAT WEEK.

03:45PM   8           DO YOU SEE THAT IN LINE 9?

03:45PM   9      A.   I DO.

03:45PM   10     Q.   AND THAT 18.5 MILLION, THAT WAS FROM BLUE CROSS BLUE

03:45PM   11     SHIELD, WASN'T IT?

03:45PM   12     A.   I THINK SO.

03:45PM   13     Q.   YOU HAD GOTTEN MONEY FROM BLUE CROSS BLUE SHIELD IN 2011

03:45PM   14     WITH THE HOPE THAT YOU WERE GOING TO FULFILL SOME CONTRACT

03:45PM   15     OBLIGATIONS TO THEM?

03:45PM   16     A.   YES.

03:45PM   17     Q.   AND AT SOME POINT IN THE SUMMER OF 2013, BLUE CROSS BLUE

03:46PM   18     SHIELD TOLD YOU THERANOS HADN'T MET ITS OBLIGATIONS, WE WANT

03:46PM   19     OUR 18.5 MILLION BACK?

03:46PM   20     A.   I THINK IT WAS WE HADN'T DEPLOYED IN THAT STATE.

03:46PM   21     Q.   OKAY.  BUT IN ANY EVENT, THEY WANTED THEIR MONEY BACK?

03:46PM   22     A.   WE REFUNDED IT TO THEM.

03:46PM   23     Q.   AND THAT'S THE 18.5 MILLION THAT WE SEE HERE?

03:46PM   24     A.   IT IS.

03:46PM   25     Q.   AND THAT PUT PRESSURE ON THE COMPANY; ISN'T THAT RIGHT?

HOLMES CROSS BY MR. LEACH (RES.)                                    8174

03:46PM  1   A.   YES.

03:46PM  2   Q.   THIS WAS A MATTER OF WEEKS BEFORE THE LAUNCH WITH

03:46PM  3   WALGREENS?

03:46PM  4   A.   IT WAS.

03:46PM  5   Q.   THIS WAS WHEN YOU WERE PUSHING YOUR TEAMS VERY, VERY HARD

03:46PM  6   TO VALIDATE ASSAYS ON THE MODIFY SIEMENS MACHINES?

03:46PM  7   A.   YES.

03:46PM  8   Q.   THIS WAS IN THE TIME PERIOD WHEN YOU WERE PUSHING YOUR

03:46PM  9   TEAM TO VALIDATE ASSAYS ON THE 3.5 DEVICE?

03:46PM  10  A.   YES, WE WERE WORKING REALLY HARD ON THAT.

03:46PM  11  Q.   OKAY.  AND YOU KNEW THAT THERANOS HAD A BURN RATE IN THE

03:47PM  12  MILLIONS OF DOLLARS?

03:47PM  13  A.   I DID.

03:47PM  14  Q.   THERANOS WAS ALMOST OUT OF MONEY IN SEPTEMBER OF 2013;

03:47PM  15  ISN'T THAT CORRECT?

03:47PM  16  A.   I HAD NEVER THOUGHT OF IT LIKE THAT, NO.

03:47PM  17  Q.   OKAY.  WELL, YOU RAISED MONEY FROM INVESTORS IN SEPTEMBER

03:47PM  18  OF 2013, DIDN'T YOU?

03:47PM  19  A.   WE DID.

03:47PM  20  Q.   YOU RAISED OVER $21 MILLION FROM INVESTORS IN SEPTEMBER OF

03:47PM  21  2013; IS THAT FAIR?

03:47PM  22  A.   THAT SOUNDS RIGHT.

03:47PM  23  Q.   OKAY.  WELL, LET'S LOOK AT THE SPREADSHEETS.

03:47PM  24       DO YOU SEE IF WE MOVE -- IF WE LOOK DOWN AT THE CUSTOMER

03:47PM  25  RECEIPTS FOR THE FOLLOWING WEEK, SEPTEMBER 30TH, 2013, DO YOU

HOLMES CROSS BY MR. LEACH (RES.)                                    8175

03:47PM  1    SEE THE $21 MILLION NUMBER THERE, ROW 27, COLUMN EO?

03:47PM  2    A.   I DO.

03:47PM  3    Q.   AND LET'S JUST GIVE MS. HOLLIMAN A MOMENT TO GET THERE.

03:47PM  4         DO YOU SEE $21,995,100 IN OPTION/STOCK PROCEEDS?

03:48PM  5    A.   I DO.

03:48PM  6    Q.   AND IF WE CAN GO TO, THERE'S A TAB IN THE EXCEL

03:48PM  7    SPREADSHEET TO COMERICA.  IF WE CAN CLICK ON THAT.

03:48PM  8         AND IF WE CAN GO TO THE EO COLUMN.

03:48PM  9         I THINK, MS. HOLLIMAN, IF YOU CLICK ON THIS, ON THE PLUS

03:48PM  10   SIGN UP THERE, IT WILL EXPAND IT EVEN MORE.  THERE YOU GO.

03:48PM  11        AND DO YOU SEE THAT SAME NUMBER $21,995,100 IN ROW 23 EO?

03:48PM  12   A.   I DO.

03:48PM  13   Q.   AND IF I COULD ASK MS. HOLLIMAN TO HIGHLIGHT ON THAT.

03:48PM  14        DO YOU SEE HOW IT CALLS UP A COMMENT FROM MS. YAM, OR JUST

03:49PM  15   CLICK ON THE CELL, 15 MILLION PEER?

03:49PM  16        DO YOU SEE THAT?

03:49PM  17   A.   I DO.

03:49PM  18   Q.   AND THAT'S A REFERENCE TO PEER VENTURES?

03:49PM  19   A.   IT IS.

03:49PM  20   Q.   AND PEER VENTURES WAS AN INVESTMENT FUND THAT INVESTED IN

03:49PM  21   THERANOS?

03:49PM  22   A.   YES.

03:49PM  23   Q.   AND THEY INVESTED IN 2010?

03:49PM  24   A.   YES.

03:49PM  25   Q.   AND THEY INVESTED AGAIN IN 2013?

HOLMES CROSS BY MR. LEACH (RES.)                                    8176

| 03:49PM | 1 | A.   YES. |
|---|---|---|

03:49PM  2   Q.   BASED IN PART ON THE PROMISE OF THE WALGREENS LAUNCH?

03:49PM  3   A.   YES.

03:49PM  4   Q.   AND THERE'S ALSO A REFERENCE TO LVG XI AND LVG IV.

03:49PM  5        DO YOU SEE THAT?

03:49PM  6   A.   I DO.

03:49PM  7   Q.   AND YOU UNDERSTAND THAT TO BE REFERENCE TO DON LUCAS,

03:49PM  8   JUNIOR'S INVESTMENT FUNDS?

03:49PM  9   A.   YES.

03:49PM  10  Q.   AND THOSE TWO FIRMS PUT IN ABOUT 21,995,000 AT OR AROUND

03:49PM  11  THE TIME YOUR CASH BALANCE HAD DROPPED TO $14 MILLION?

03:49PM  12  A.   THEY DID.

03:50PM  13  Q.   AND YOU KNEW THAT PEER VENTURES WAS AN INVESTMENT FUND RUN

03:50PM  14  BY JARED HUTCHINGS AND MARK CAMPBELL?

03:50PM  15  A.   I DID.

03:50PM  16  Q.   THEY WERE 20 SOMETHINGS, 30 SOMETHINGS IN THE INVESTMENT

03:50PM  17  BUSINESS?

03:50PM  18  A.   YOU MEAN YEARS OLD?

03:50PM  19  Q.   YES.

03:50PM  20  A.   YES, YES.

03:50PM  21  Q.   ENTREPRENEURS LIKE YOURSELF?

03:50PM  22  A.   YES.

03:50PM  23  Q.   AND YOU AND MR. BALWANI WERE EXTREMELY RELIEVED WHEN THIS

03:50PM  24  MONEY CAME IN; ISN'T THAT RIGHT?

03:50PM  25  A.   I'M SURE WE WERE HAPPY WHEN IT CAME IN.

HOLMES CROSS BY MR. LEACH (RES.)                                    8177

03:50PM   1    Q.   WELL, LET'S LOOK AT EXHIBIT 5646.

03:51PM   2    A.   OKAY.

03:51PM   3              MR. LEACH:  MAY I APPROACH, YOUR HONOR?

03:51PM   4              THE COURT:  YES.

03:51PM   5    BY MR. LEACH:

03:51PM   6    Q.   (HANDING.)

03:51PM   7         DO YOU RECOGNIZE THIS DOCUMENTS, MS. HOLMES?

03:51PM   8    A.   I DON'T REMEMBER IT, BUT I SEE IT'S AN EMAIL EXCHANGE.

03:52PM   9    Q.   OKAY.  YOU HAVE NO REASON TO DOUBT THAT THIS IS A TRUE

03:52PM   10   EMAIL EXCHANGE BETWEEN YOU AND MR. BALWANI IN SEPTEMBER OF

03:52PM   11   2014?

03:52PM   12   A.   I DON'T.

03:52PM   13   Q.   AND THIS RELATES TO INVESTMENTS BY PEER AND DON LUCAS'S

03:52PM   14   FUND?

03:52PM   15   A.   IT DOES.

03:52PM   16              MR. LEACH:  YOUR HONOR, I OFFER EXHIBIT 5646.

03:52PM   17              MR. DOWNEY:  NO OBJECTION, YOUR HONOR.

03:52PM   18              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

03:52PM   19        (GOVERNMENT'S EXHIBIT 5646 WAS RECEIVED IN EVIDENCE.)

03:52PM   20   BY MR. LEACH:

03:52PM   21   Q.   LET ME DRAW YOUR ATTENTION TO THE BOTTOM PORTION OF THIS

03:52PM   22   EMAIL, MS. HOLMES.

03:52PM   23        DO YOU SEE AN EMAIL FROM JARED HUTCHINGS?

03:52PM   24   A.   I DO.

03:52PM   25   Q.   IT SAYS, "BY THE WAY, WE ARE PLANNING TO LET A VERY

HOLMES CROSS BY MR. LEACH (RES.)                                   8178

03:52PM   1    CONTRITE MASSY INTO THIS CLOSING.  I HAVE A CALL WITH HER

03:52PM   2    TOMORROW TO CONFIRM.  LET ME KNOW IF THAT GIVES YOU PAUSE."

03:52PM   3        IS THAT A REFERENCE TO AN INVESTOR IN THE PEER VENTURES

03:52PM   4    FUND?

03:52PM   5    A.  I THINK SO, YES.

03:52PM   6    Q.  YOU WROTE BACK, "THAT IS FINE.  LET ME KNOW HOW MUCH SHE

03:52PM   7    WANTS TO BE ABLE TO COME IN FOR/WHAT TOTAL YOU'RE PLANNING FOR

03:53PM   8    THIS CLOSE AND WE'LL PLAN ACCORDINGLY."

03:53PM   9        DO YOU SEE THAT?

03:53PM  10    A.  I DO.

03:53PM  11    Q.  AND PEER VENTURES -- YOU UNDERSTOOD PEER VENTURES WOULD

03:53PM  12    RAISE MONEY FROM ITS OWN INVESTORS OR EVEN HOSPITALS FOR THE

03:53PM  13    WHOLE PURPOSE OF INVESTING IN THERANOS?

03:53PM  14    A.  I DID.

03:53PM  15    Q.  AND IF WE COULD MOVE UP THE CHAIN, PLEASE.

03:53PM  16        DO YOU SEE WHERE MR. HUTCHINGS WRITES, "OK.  I HAVE A CALL

03:53PM  17    WITH INTERMOUNTAIN THIS MORNING TO FINALIZE EVERYTHING.  IT

03:53PM  18    LOOKS LIKES WE CLOSE THE PEER WIRES TOMORROW.  I WILL SEND YOU

03:53PM  19    A FINAL CONFIRMATION ON OUR TOTAL THIS AFTERNOON.  WE SHOULD BE

03:53PM  20    READY TO CLOSE WITH YOU ON MONDAY.  LET ME KNOW IF THAT WORKS."

03:53PM  21        DID I READ THAT CORRECTLY?

03:53PM  22    A.  YOU DID.

03:53PM  23    Q.  AND YOU UNDERSTOOD THAT INTERMOUNTAIN WAS GOING TO INVEST

03:53PM  24    IN PEER TO INVEST IN THERANOS?

03:53PM  25    A.  I DID.

HOLMES CROSS BY MR. LEACH (RES.)                                  8179

03:53PM  1    Q.   AND YOU FORWARDED THIS TO MR. BALWANI ON SEPTEMBER 26TH?

03:54PM  2    A.   I DID.

03:54PM  3    Q.   AND HIS RESPONSE WAS HMFR, AND THAT'S THE ACRONYM THAT

03:54PM  4    WE'VE SEEN BEFORE IN THE TEXT?

03:54PM  5    A.   IT IS.

03:54PM  6    Q.   THANKING GOD FOR THE MONEY THAT IS COMING IN NOW?

03:54PM  7    A.   I THINK IT'S THE PRAYER THAT HE WOULD RECITE ON A REGULAR

03:54PM  8    BASIS.

03:54PM  9    Q.   OKAY.  AND THAT'S A PRAYER THAT YOU WOULD RECITE ON A

03:54PM 10    REGULAR BASIS?

03:54PM 11    A.   IT IS.

03:54PM 12    Q.   BUT THERANOS'S CASH CRUNCH DIDN'T END WITH PEER AND

03:54PM 13    LUCAS'S FUND INVESTING AT THE END OF SEPTEMBER; ISN'T THAT

03:54PM 14    RIGHT?

03:54PM 15    A.   AGAIN, I DIDN'T THINK ABOUT IT THAT WAY.

03:54PM 16    Q.   OKAY.  WELL, LET'S LOOK AT THE CASH BALANCE SPREADSHEET.

03:54PM 17         THIS IS EXHIBIT 5172, MS. HOLLIMAN.

03:55PM 18         AND IF WE CAN GO BACK NEAR COLUMN EN.

03:55PM 19         DO YOU SEE THE $14 MILLION NUMBER IN THE TOTAL CASH

03:55PM 20    BALANCE FOR THE END OF SEPTEMBER, MS. HOLMES?

03:55PM 21    A.   I DO.

03:55PM 22    Q.   AND IF WE CAN SCROLL TO THE LEFT -- THE RIGHT, PLEASE.

03:55PM 23    AND STOP RIGHT THERE, MS. HOLLIMAN.

03:55PM 24         I DRAW YOUR ATTENTION TO THE TIME PERIOD -- WELL, LET ME

03:55PM 25    FIRST ASK YOU, DO YOU SEE THAT THE TOTAL CASH BALANCES GET DOWN

HOLMES CROSS BY MR. LEACH (RES.)                                    8180

03:55PM   1    TO APPROXIMATELY 23 MILLION, 21 MILLION, 19 MILLION IN THE TIME

03:56PM   2    PERIOD NOVEMBER 2013 TO DECEMBER 15TH OF 2013?

03:56PM   3    A.   I DO.

03:56PM   4    Q.   AND IF WE WERE TO DEDUCT THE AMOUNT OF THE LOC PAYMENT

03:56PM   5    FROM THOSE AMOUNTS, THAT MEANS THAT THERANOS HAS IN THE

03:56PM   6    NEIGHBORHOOD OF 14 -- $12- TO $16 MILLION OF FREE CASH?

03:56PM   7    A.   SOMETHING LIKE THAT, YEAH.

03:56PM   8    Q.   OKAY.  LET'S LOOK AT SOME OF THE TEXT MESSAGES BETWEEN YOU

03:56PM   9    AND MR. BALWANI IN THIS TIME PERIOD, AND IF WE CAN GO TO

03:56PM  10    EXHIBIT 5387D, AND SPECIFICALLY PAGE 20.

03:57PM  11         AND IF WE CAN ZOOM IN ON THE SUBSTANCE?

03:57PM  12         DO YOU SEE THE DATE OF NOVEMBER 28TH, 2013, MS. HOLMES?

03:57PM  13    A.   I DO.

03:57PM  14    Q.   AND DO YOU SEE WHERE MR. BALWANI WROTE, "WE ARE AT 15M AS

03:57PM  15    OF TODAY"?

03:57PM  16    A.   I DO.

03:57PM  17    Q.   "FREE CASH," HE WROTE.

03:57PM  18         AND YOU SAY "I SAW THAT.

03:57PM  19         "DROP BY TO DISCUSS WHEN U CAN."

03:57PM  20         DO YOU SEE THAT LANGUAGE?

03:57PM  21    A.   I DO.

03:57PM  22              MR. LEACH:  YOUR HONOR, I'M ABOUT TO MOVE ON TO A

03:57PM  23    DIFFERENT TOPIC, AND I HAVE ONE HOUSEKEEPING MATTER, WHICH IS

03:57PM  24    TO MOVE INTO EVIDENCE PAGES 11, 12, 19, 72, 129, 208, 341, AND

03:57PM  25    342 OF EXHIBIT 5387.

8181

03:57PM 1          AND WE CAN PUT THAT IN ONE DOCUMENT CALLED 5387G.

03:58PM 2               THE COURT:  G?

03:58PM 3          ANY OBJECTION?

03:58PM 4               MR. DOWNEY:  YOUR HONOR, MR. LEACH AND I HAVE

03:58PM 5     CONFERRED, AND IF THERE ARE ANY ADDITIONS AS A RESULT OF

03:58PM 6     COMPLETENESS CONCERNS, I THINK WE'LL WORK THAT OUT AND

03:58PM 7     SUPPLEMENT THE EXHIBIT.

03:58PM 8          BUT SUBJECT TO THAT, NO OBJECTION.

03:58PM 9               THE COURT:  ALL RIGHT.  THANK YOU.

03:58PM 10         THESE WILL BE ADMITTED THEN, SUBJECT TO ANY REVIEW, AND

03:58PM 11    YOU CAN BRING THAT UP WITH THE COURT AS NEEDED.

03:58PM 12         (GOVERNMENT'S EXHIBIT 5387G WAS RECEIVED IN EVIDENCE.)

03:58PM 13              THE COURT:  LET'S TAKE OUR BREAK NOW.  YOU HAVE

03:58PM 14    ADDITIONAL QUESTIONS?  LET'S TAKE OUR BREAK NOW?

03:58PM 15              MR. LEACH:  I DO, YOUR HONOR.

03:58PM 16              THE COURT:  LET'S DO THAT THEN, LADIES AND

03:58PM 17    GENTLEMEN.

03:58PM 18         WE'LL RECESS FOR THE DAY.  PLEASE RECALL THAT WE'RE NOT

03:58PM 19    GOING TO SEE EACH OTHER FOR SOME TIME, I BELIEVE.

03:58PM 20         I THINK OUR NEXT DATE TOGETHER IS THE 7TH, MS. KRATZMANN?

03:58PM 21              THE CLERK:  YES, YOUR HONOR.

03:58PM 22              THE COURT:  SO ONCE AGAIN, LADIES AND GENTLEMEN, WE

03:58PM 23    HAVE A LARGE BREAK HERE.  YOU WILL GO BACK TO YOUR REGULAR

03:58PM 24    LIVES OUTSIDE OF THE TRIAL, AND AS YOU DO THAT WITH YOUR

03:59PM 25    FAMILY, YOUR JOBS, AND YOUR SOCIAL ENGAGEMENTS, I'M GOING TO

| | | |
|---|---|---|
| 03:59PM | 1 | ASK YOU AGAIN TO PLEASE, PLEASE DO NOT IN ANY WAY DO ANY |
| 03:59PM | 2 | INVESTIGATION, DO NOT LISTEN TO, READ, OR IN ANY WAY TRY TO |
| 03:59PM | 3 | GAIN ANY INFORMATION ABOUT ANYTHING IN THIS CASE OR ANYTHING |
| 03:59PM | 4 | ABOUT IT OR ANY OF THE PARTIES INVOLVED. |
| 03:59PM | 5 | PLEASE PAY FIDELITY, CONTINUED FIDELITY TO THAT |
| 03:59PM | 6 | ADMONISHMENT, PLEASE. |
| 03:59PM | 7 | THE SECOND THING I'LL ASK YOU TO DO IS, THE WORLD IS AWARE |
| 03:59PM | 8 | OF NEW HEALTH CONCERNS, SO I'M GOING TO ASK YOU TO PLEASE, |
| 03:59PM | 9 | PLEASE BE CAREFUL, CONTINUE TO BE CAREFUL WITH YOU AND YOUR |
| 03:59PM | 10 | LOVED ONES.  WE WANT ALL OF US TO STAY HEALTHY, AND THAT'S MY |
| 03:59PM | 11 | WISH FOR YOU AND ALL OF US HERE, AND PLEASE BE CAREFUL IN |
| 03:59PM | 12 | REGARDS TO YOUR SAFETY, YOUR PERSONAL SAFETY IN THAT REGARD. |
| 03:59PM | 13 | WITH THAT ADMONISHMENT, WE WILL SEE YOU -- I THINK WE'RE |
| 03:59PM | 14 | GOING TO BE BACK AT 9:00 A.M., MS. KRATZMANN, AND THAT'S GOING |
| 03:59PM | 15 | TO BE FOR A FULL DAY I'M HOPEFUL. |
| 03:59PM | 16 | PLEASE RECALL THAT WEEK IS THE WEEK OF DECEMBER 6TH. |
| 04:00PM | 17 | DECEMBER 7TH AGAIN IS OUR FIRST DAY.  THAT WILL BE A BUSY WEEK. |
| 04:00PM | 18 | WE'LL BE IN SESSION THE 7TH, THE 8TH, THE 10TH. |
| 04:00PM | 19 | I DON'T BELIEVE WE'RE IN SESSION ON THE 9TH, AT LEAST AS |
| 04:00PM | 20 | FAR AS -- WE ARE.  I HAVE A MISDATED CALENDAR IN FRONT OF ME. |
| 04:00PM | 21 | THAT'S A BUSY WEEK.  WE'RE IN SESSION ALL WEEK, AND THAT'S |
| 04:00PM | 22 | TO ACCOMPLISH AS MUCH AS WE CAN DURING THIS SEASON. |
| 04:00PM | 23 | SO THANK YOU VERY MUCH.  HAVE A GOOD TIME OFF. |
| 04:00PM | 24 | WITH THAT ADMONISHMENT, WE'LL SEE YOU THEN.  THANK YOU. |
| 04:00PM | 25 | MS. HOLMES, YOU CAN STAND DOWN.  THANK YOU. |

8183

04:00PM  1          (JURY OUT AT 4:00 P.M.)

04:00PM  2              THE COURT:  PLEASE BE SEATED.  THANK YOU.

04:00PM  3          THE RECORD SHOULD REFLECT THAT THE JURY HAS LEFT FOR OUR

04:01PM  4      BREAK.

04:01PM  5          COUNSEL, I JUST WANT TO TALK ABOUT WHAT WE SHOULD DO

04:01PM  6      ABOUT -- I GUESS THIS IS -- I WANT TO TALK ABOUT OUR CONTINUED

04:01PM  7      MOTION THAT WE HAD THIS MORNING WITH MR. FLEURMONT, BUT I DON'T

04:01PM  8      KNOW IF WE SHOULD GO FORWARD WITH THAT TODAY.

04:01PM  9          LET ME JUST ASK THE LAWYERS HERE IN THE WELL, ANYTHING

04:01PM  10     FURTHER BEFORE WE BREAK?

04:01PM  11         (DISCUSSION OFF THE RECORD.)

04:01PM  12             MR. FLEURMONT:  GOOD AFTERNOON, YOUR HONOR.

04:01PM  13             MR. LEACH:  YOUR HONOR, I EXPECT MS. HOLMES'S

04:01PM  14     TESTIMONY TO BE COMPLETE --

04:01PM  15             THE COURT:  I'M SORRY.  LET ME ASK YOU TO COME

04:01PM  16     FORWARD.

04:01PM  17             MR. LEACH:  MAY I TAKE MY MASK OFF?

04:01PM  18             THE COURT:  YEAH, SURE.

04:02PM  19             MR. LEACH:  I EXPECT MS. HOLMES'S TESTIMONY TO

04:02PM  20     COMPLETE EARLY NEXT WEEK, POSSIBLY ON MONDAY.  I DON'T KNOW HOW

04:02PM  21     MUCH REDIRECT THE DEFENSE WILL HAVE.

04:02PM  22             THE CLERK:  TUESDAY.

04:02PM  23             MR. LEACH:  TUESDAY, EXCUSE ME.

04:02PM  24         AND I DON'T KNOW WHAT ADDITIONAL WITNESSES THE DEFENSE

04:02PM  25     INTENDS TO CALL, BUT I DO THINK IT MIGHT BE THE APPROPRIATE

04:02PM  1    TIME TO START THINKING OF WHEN TO SCHEDULE THE CHARGING

04:02PM  2    CONFERENCE AND MAP AROUND THOSE DATES.

04:02PM  3              THE COURT:  SURE.  OKAY.

04:02PM  4              MR. DOWNEY:  YEAH, I CERTAINLY THINK THE DEFENSE

04:02PM  5    CASE WILL NOT LAST THE BALANCE OF NEXT WEEK AFTER MS. HOLMES'S

04:02PM  6    TESTIMONY, SO I THINK IT DOES IMPLICATE AT LEAST TWO ISSUES I

04:02PM  7    CAN THINK OF.

04:02PM  8        ONE IS THAT I AGREE WITH MR. LEACH THAT IF WE CAN FIND A

04:02PM  9    TIME TO THINK ABOUT CHARGING AND, YOU KNOW, WE PROBABLY OWE THE

04:02PM  10   COURT SOME FILINGS ON THAT, WHICH WE CAN, WE CAN GET ON FILE

04:02PM  11   EXPEDITIOUSLY IF THAT SUITS THE COURT, AND THAT WAY WE CAN KEEP

04:02PM  12   MOVING.

04:02PM  13             THE COURT:  WELL, IT DOES.  I'D LIKE TO KEEP AN EYE

04:03PM  14   ON THAT.

04:03PM  15       I KNOW YOUR ORIGINAL SUBMISSIONS WERE MONTHS AGO.

04:03PM  16             MR. DOWNEY:  RIGHT.

04:03PM  17             THE COURT:  THINGS HAVE CHANGED A BIT PERHAPS.

04:03PM  18       AND I HAVE THOSE.  I'VE USED THEM AS A WORKING COPY, BUT

04:03PM  19   CANDIDLY, I STEPPED BACK BECAUSE I ANTICIPATE THERE WILL BE

04:03PM  20   CHANGES, AND WE SHOULD DEVOTE OUR RESOURCES TOWARDS A FRESH

04:03PM  21   SET.

04:03PM  22       SO WHAT'S YOUR THOUGHTS ABOUT THAT?

04:03PM  23       AND, MR. DOWNEY, I DON'T WANT -- WHEN WE ASK THESE

04:03PM  24   QUESTIONS, OF COURSE THERE MAY BE SOME OTHER EVIDENCE THAT

04:03PM  25   YOU'RE GOING TO PUT IN THAT MIGHT CALL FOR OTHER INSTRUCTIONS.

04:03PM 1          MR. DOWNEY:  SURE.  AND I THINK PART OF THE REASON

04:03PM 2    WE'RE HAVING THIS CONVERSATION IS THAT IT'S EVIDENT TO ALL OF

04:03PM 3    US IS THAT WE HAVE THREE DAYS THIS WEEK WITHOUT A JURY AND THEN

04:03PM 4    NEXT WEEK WE'RE, WE'RE BACKED UP WITH THE JURY EVERY DAY.

04:03PM 5          SO THIS IS MORE OF A SCHEDULING MATTER OBVIOUSLY.

04:03PM 6          THE COURT:  RIGHT.

04:03PM 7          MR. DOWNEY:  EVENTS CAN ALWAYS CHANGE SUBJECT TO

04:03PM 8    EVIDENCE.

04:03PM 9          THE COURT:  RIGHT.  SO WHAT ARE YOUR THOUGHTS

04:03PM 10   ABOUT -- WHAT WOULD YOU LIKE TO DO TO SOLVE THE PROBLEM?  DO

04:04PM 11   YOU WANT TO GET ME OR AUGMENT YOUR SET?  SHOULD I GET A NEW SET

04:04PM 12   FROM YOU?

04:04PM 13         MR. DOWNEY:  I THINK THAT WOULD BE WELL.  LET ME --

04:04PM 14   CAN I JUST TALK TO MS. SAHARIA?

04:04PM 15         THE COURT:  SURE.

04:04PM 16     (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

04:04PM 17         THE COURT:  AND LET ME SAY, WHILE YOU'RE DISCUSSING

04:04PM 18   THIS, I'M NOT -- I DON'T MEAN TO TASK YOU, OVER TASK YOU WITH

04:04PM 19   CREATING A WHOLE NEW SET.  BUT THERE MIGHT BE SOME AUGMENTATION

04:04PM 20   IF THAT WOULD BE EASIER FOR YOU.  THAT'S FINE, TOO.

04:04PM 21     (DISCUSSION OFF THE RECORD.)

04:04PM 22         MR. LEACH:  YOUR HONOR, THE GOVERNMENT -- I'LL WAIT

04:04PM 23   FOR MY COLLEAGUES.

04:04PM 24     (PAUSE IN PROCEEDINGS.)

04:05PM 25         MR. DOWNEY:  I THINK FROM OUR PERSPECTIVE,

8186

04:05PM 1    YOUR HONOR, WE HAD -- WE HAD, AT THE OUTSET, AS YOU MENTIONED,

04:05PM 2    SUBMITTED SOME PROPOSED INSTRUCTIONS.  I THINK WE'VE AUGMENTED

04:05PM 3    THOSE OVER TIME IN LIGHT OF SUBSEQUENT DEVELOPMENTS.

04:05PM 4        AND I THINK WE ALSO HAVE NOTED THE OBJECTIONS WE HAVE TO

04:05PM 5    WHAT THE GOVERNMENT SUBMITTED ORIGINALLY.

04:05PM 6        IF IT WOULD BE HELPFUL -- I DON'T THINK WE'RE QUITE IN A

04:05PM 7    POSITION TO FILE THOSE, BUT WE COULD DO IT PROBABLY LATE

04:05PM 8    TOMORROW NIGHT SO YOUR HONOR COULD HAVE THEM THURSDAY MORNING

04:05PM 9    TO WORK ON IF THAT'S HELPFUL.

04:05PM 10           THE COURT:  WELL, I JUST -- I WANT TO GIVE YOU TIME

04:05PM 11   TO DO WHAT YOU NEED TO DO.

04:05PM 12       SO, MR. LEACH, WHAT IS YOUR TEAM'S POSITION?

04:05PM 13           MR. LEACH:  THURSDAY IS CERTAINLY SUFFICIENT FOR US

04:05PM 14   TO AUGMENT OUR FILINGS.  WE MAY HAVE A FEW, BUT I DON'T THINK

04:06PM 15   THE VOLUME FROM THE GOVERNMENT WILL BE SIGNIFICANT, AND I ALSO

04:06PM 16   THINK THAT WE COULD BE AVAILABLE ON FRIDAY FOR A CONFERENCE.

04:06PM 17       I REALIZE THERE MIGHT BE SOME ISSUES THAT ARE RESOLVED,

04:06PM 18   BUT THAT FRIDAY COULD BE USED PRODUCTIVELY IF THE COURT IS

04:06PM 19   AVAILABLE.

04:06PM 20           THE COURT:  SURE.

04:06PM 21           MR. DOWNEY:  WELL, I ALSO RECOGNIZE IT'S A SHORT

04:06PM 22   WINDOW FOR THE COURT, BUT FRIDAY OR MONDAY IS FINE FOR US.

04:06PM 23       I THINK THE COURT MAY BE SCHEDULED OTHERWISE ON MONDAY,

04:06PM 24   BUT I'M NOT SURE.

04:06PM 25           THE COURT:  WELL, LET'S DO THIS, WHAT I'LL DO IS

8187

04:06PM 1    I'LL RESERVE -- I DON'T THINK WE HAVE ANYTHING ON FRIDAY, DO

04:06PM 2    WE?

04:06PM 3              THE CLERK:  THIS FRIDAY?

04:06PM 4              THE COURT:  CORRECT.

04:06PM 5              THE CLERK:  NO, YOUR HONOR.

04:06PM 6              THE COURT:  OTHER THAN RESPITE.

04:06PM 7         (LAUGHTER.)

04:06PM 8              THE COURT:  WELL, WHAT WE CAN DO IS I'LL MAKE MYSELF

04:06PM 9    AVAILABLE, AND MAYBE WE CAN HAVE JUST A HIGH LEVEL PASS AND WE

04:06PM 10   CAN SEE WHERE WE ARE ON THESE THINGS WITHOUT -- AND I'M NOT

04:06PM 11   SUGGESTING OR GUARANTEEING THAT WE'LL HAVE ANY FORMAL, FORMAL

04:07PM 12   FINALITY AS TO WHAT THEY ARE.

04:07PM 13        BUT I THINK IT WOULD BE A GOOD IDEA JUST TO GIVE A HIGH

04:07PM 14   LEVEL PASS ON WHAT WE HAVE NOW.

04:07PM 15        AND AGAIN, THINGS COULD CHANGE DEPENDING ON WHERE THE

04:07PM 16   EVIDENCE GOES AND --

04:07PM 17             MR. DOWNEY:  AND I THINK THERE ARE PROBABLY SOME

04:07PM 18   THINGS THAT WE CAN'T DO UNTIL THE EVIDENCE CLOSES, BUT, YEAH.

04:07PM 19             THE COURT:  RIGHT.  BUT I APPRECIATE THE OFFER TO

04:07PM 20   GET STARTED ON THIS.

04:07PM 21        WELL, LET'S DO THAT.  I'LL KEEP FRIDAY OPEN, AND WE CAN

04:07PM 22   HAVE A DISCUSSION ABOUT IT.  AND YOU'LL SUBMIT SOMETHING, WHAT,

04:07PM 23   CLOSE OF BUSINESS THURSDAY?  DID YOU SAY THAT?

04:07PM 24             MR. LEACH:  IF THAT'S OKAY WITH THE COURT.

04:07PM 25             MR. DOWNEY:  THAT'S FINE, YOUR HONOR.

| | | |
|---|---|---|
| 04:07PM | 1 | THE COURT:  THAT GIVES US ALL NIGHT TO LOOK AT THEM. |
| 04:07PM | 2 | MR. DOWNEY:  WE CAN MAKE AN EFFORT TO SUBMIT THEM |
| 04:07PM | 3 | WEDNESDAY NIGHT IF THAT MAKES IT EASIER FOR YOU. |
| 04:07PM | 4 | THE COURT:  IF YOU CAN.  I SEE MS. SAHARIA SAYING, |
| 04:07PM | 5 | YES, THAT'S FINE. |
| 04:07PM | 6 | MS. SAHARIA:  THAT'S FINE, YOUR HONOR. |
| 04:07PM | 7 | THE COURT:  GREAT.  I APPRECIATE IT.  THAT'S GOOD. |
| 04:07PM | 8 | MR. LEACH:  COULD WE HAVE THURSDAY MORNING? |
| 04:07PM | 9 | MR. DOWNEY:  YEAH, WHEN I SAY WEDNESDAY NIGHT, I'M |
| 04:08PM | 10 | NOT SURE THERE'S A BIG DIFFERENCE BETWEEN WHAT I'M TALKING |
| 04:08PM | 11 | ABOUT. |
| 04:08PM | 12 | THE COURT:  LET'S FIGURE OUT OUR TIME ZONE FIRST. |
| 04:08PM | 13 | LET'S START THERE. |
| 04:08PM | 14 | THAT'S FINE.  10:00 O'CLOCK.  WHY DON'T WE SAY 10:00 |
| 04:08PM | 15 | O'CLOCK ON THURSDAY. |
| 04:08PM | 16 | THE CLERK:  FOR THE HEARING ON FRIDAY? |
| 04:08PM | 17 | THE COURT:  NO.  THIS IS FOR YOUR SUBMISSIONS. |
| 04:08PM | 18 | MR. LEACH:  YES. |
| 04:08PM | 19 | THE CLERK:  WHAT TIME WOULD YOU LIKE TO START ON |
| 04:08PM | 20 | FRIDAY? |
| 04:08PM | 21 | THE COURT:  WE'LL START AT 9:00 O'CLOCK?  IS THAT |
| 04:08PM | 22 | ALL RIGHT?  DOES THAT WORK FOR YOUR TEAMS? |
| 04:08PM | 23 | MR. DOWNEY:  YES, THAT'S FINE. |
| 04:08PM | 24 | THE COURT:  LET'S DO THAT.  GREAT.  THANK YOU. |
| 04:08PM | 25 | THANK YOU FOR THAT. |

04:08PM 1      YOU PUT YOUR MASK ON TOO QUICKLY, MR. DOWNEY.

04:08PM 2           MR. DOWNEY:  YES.  THIS IS PROBABLY ONLY MY THIRD

04:08PM 3   TRIP UP.  WE'LL SEE HOW MANY ARE LEFT.

04:08PM 4      I UNDERSTAND THAT IN CONNECTION WITH THE MATTER

04:08PM 5   MR. FLEURMONT IS GOING TO DISCUSS WITH YOU, MR. WADE SPOKE WITH

04:08PM 6   MR. COOPERSMITH AND ASKED HIM TO BE AVAILABLE IN CONNECTION

04:09PM 7   WITH STATING WHATEVER POSITION HE WOULD STATE IN RESPONSE TO

04:09PM 8   YOUR HONOR'S QUESTIONS.

04:09PM 9      SO I BELIEVE HE IS -- HE IS HERE, YES, I BELIEVE HE'S

04:09PM 10  HERE.

04:09PM 11          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

04:09PM 12     WELL, I WANTED TO -- I SEE MS. VOLKAR HERE, TOO.

04:09PM 13     ONE OF THE THOUGHTS I HAD, I KNOW MS. VOLKAR HAD INDICATED

04:09PM 14  SHE WANTED TO REVIEW THE TRANSCRIPTS, AND I DID NOT WANT TO

04:09PM 15  ENGAGE THIS UNTIL EVERYBODY IS READY, INCLUDING AN ABILITY TO

04:09PM 16  TALK ABOUT THIS 106 ISSUE AS IT EXISTED.

04:09PM 17     BUT, MS. VOLKAR, WHAT IS YOUR THOUGHT ON TIMING?

04:09PM 18     MR. FLEURMONT, ARE YOU HERE?  YES, THANK YOU.

04:09PM 19          MS. VOLKAR:  MAY I REMOVE MY MASK, YOUR HONOR?

04:09PM 20          THE COURT:  YES, THANK YOU.

04:09PM 21     AS WELL AS MR. FLEURMONT.

04:09PM 22          MR. FLEURMONT:  THANK YOU, YOUR HONOR.

04:09PM 23          MS. VOLKAR:  TO BE CLEAR, YOUR HONOR, THE GOVERNMENT

04:09PM 24  WOULD LIKE ADDITIONAL TIME TO GO THROUGH THE TRANSCRIPT FOR THE

04:09PM 25  RULE 106 ADDITIONS.

04:09PM  1        IT WOULD BE BENEFICIAL TO THE GOVERNMENT IF THE COURT WERE

04:10PM  2   ABLE TO GIVE A TENTATIVE OR SORT OF WHAT IT WAS THINKING.

04:10PM  3        AS OBVIOUSLY JUST AN EXAMPLE, I WOULD HAVE BEEN REVIEWING

04:10PM  4   WITH THE NULL PROTOCOL SECTION IN MIND, BUT I UNDERSTAND THE

04:10PM  5   DEFENSE HAS WITHDRAWN THAT SECTION.

04:10PM  6        EACH SECTION THAT IS GOING TO BE REMOVED IS LESS THAT I

04:10PM  7   WOULD LOOK FOR RULE 106 COMPLETENESS ADDITIONS TO.

04:10PM  8        SO WITH THAT, I COULD PROVIDE THE COURT AND THE DEFENSE

04:10PM  9   WITH THE RULE 106 BY THURSDAY NIGHT, I BELIEVE.

04:10PM 10        BUT IT WOULD BE HELPFUL TO KNOW WHAT THE VOLUME IS.  IF

04:10PM 11   THE VOLUME SHRINKS, I COULD GET IT TO THEM SOONER.

04:10PM 12             MR. FLEURMONT:  THURSDAY NIGHT WOULD BE FINE WITH

04:10PM 13   US, YOUR HONOR.  WE DON'T NEED A TENTATIVE RULING.

04:10PM 14        I THINK THE COURT SHOULD BE INFORMED OF ALL OF THE ISSUES

04:10PM 15   AND WE SHOULD HAVE A FULL DISCUSSION BEFORE WE HAVE A RULING,

04:10PM 16   AND IF THEY NEED UNTIL THURSDAY TO HAVE THEIR RULE 106

04:10PM 17   DESIGNATIONS, I THINK THAT'S OKAY WITH US.

04:10PM 18             THE COURT:  SO YOU WOULD LIKE US TO CONTINUE OUR

04:10PM 19   DISCUSSION THURSDAY?  IS THAT WHAT I HEAR YOU SAYING?

04:10PM 20             MS. VOLKAR:  WELL, YOUR HONOR --

04:10PM 21             THE COURT:  ARE YOU SAYING YOU WOULD LIKE THE RULING

04:11PM 22   NOW SO YOU COULD THEN LOOK?  IS THAT WHAT I HEARD YOU SAY?

04:11PM 23             MS. VOLKAR:  I GUESS THE CLEAREST POINT OF THE

04:11PM 24   GOVERNMENT'S POSITION IS THAT WE DON'T BELIEVE THE EVIDENCE IS

04:11PM 25   ADMISSIBLE, AND SO THEREFORE I WOULD RATHER NOT SPEND THE TIME

| | | |
|---|---|---|
| 04:11PM | 1 | ON RULE 106 -- |
| 04:11PM | 2 | THE COURT:  I UNDERSTAND.  I UNDERSTAND. |
| 04:11PM | 3 | MS. VOLKAR:  -- TO POSSIBLY BE TOO BLUNT. |
| 04:11PM | 4 | BUT THE GOVERNMENT'S POSITION IS THAT UNDER RULE 804, THIS |
| 04:11PM | 5 | EVIDENCE IS NOT ADMISSIBLE. |
| 04:11PM | 6 | AND ALSO, AS I HOPE I CLARIFIED THIS MORNING, |
| 04:11PM | 7 | ALTERNATIVELY, MUCH OF THE TESTIMONY IS NOT ADMISSIBLE UNDER |
| 04:11PM | 8 | RULE 403, EXCUSE ME, AS CUMULATIVE EVIDENCE AS WELL. |
| 04:11PM | 9 | I DON'T WANT TO REHASH THAT. |
| 04:11PM | 10 | THE COURT:  RIGHT. |
| 04:11PM | 11 | MS. VOLKAR:  I BELIEVE THAT MATTER HAS BEEN |
| 04:11PM | 12 | SUFFICIENTLY ARGUED FOR THE COURT TO RULE ON IT. |
| 04:11PM | 13 | IF THE COURT WERE GOING TO GRANT AND ADMIT ANY OF THE |
| 04:11PM | 14 | PORTIONS, THEN THE GOVERNMENT WAS REQUESTING TIME FOR RULE 106. |
| 04:11PM | 15 | THE COURT:  OKAY. |
| 04:11PM | 16 | MS. VOLKAR:  AND I DON'T KNOW THAT THE RULE 106 |
| 04:11PM | 17 | ADDITIONS HAVE TO HOLD UP YOUR HONOR'S RULING. |
| 04:11PM | 18 | CANDIDLY, I DON'T QUITE UNDERSTAND MY COLLEAGUE'S COMMENT |
| 04:12PM | 19 | THAT THE TWO RELATE TO ONE ANOTHER. |
| 04:12PM | 20 | BUT I DID ALSO FLAG THIS MORNING FOR YOUR HONOR THAT IN |
| 04:12PM | 21 | DOING THE RULE 106 ANALYSIS I'VE DONE THUS FAR, I HAVE REALIZED |
| 04:12PM | 22 | THAT IT COULD TRIGGER ADDITIONAL ISSUES, SUCH AS CONFRONTATION |
| 04:12PM | 23 | CLAUSE ISSUES. |
| 04:12PM | 24 | I'M JUST PERHAPS FORECASTING WHAT I IMAGINE MY COLLEAGUES |
| 04:12PM | 25 | MAY SAY, ON THE OTHER SIDE OF THE TABLE MAY SAY. |

| | | |
|---|---|---|
| 04:12PM | 1 | SO THAT, YOUR HONOR, IS WHAT I'VE PERHAPS MUDDIED THE |
| 04:12PM | 2 | WATERS WITH THIS MORNING, BUT THE GOVERNMENT'S POSITION IS THAT |
| 04:12PM | 3 | NONE OF IT IS ADMISSIBLE AND I THINK WE CAN DO AWAY WITH THAT, |
| 04:12PM | 4 | AND IF THE COURT FEELS DIFFERENTLY, OF COURSE -- |
| 04:12PM | 5 | THE COURT:  I HEAR BOTH YOUR POSITIONS ARE THE SAME, |
| 04:12PM | 6 | AND IF YOU JUST RULE FOR US, JUDGE, WE'RE DONE WITH THOSE |
| 04:12PM | 7 | ISSUES.  I THINK I GET THAT.  THAT'S CLEAR. |
| 04:12PM | 8 | (LAUGHTER.) |
| 04:12PM | 9 | THE COURT:  LET ME SAY THIS, MAYBE WE CAN HAVE A |
| 04:12PM | 10 | LITTLE DISCUSSION NOW. |
| 04:12PM | 11 | SOMETHING CAME UP DURING THE EXAMINATION OF MS. HOLMES |
| 04:12PM | 12 | THAT I THINK I HAVE A QUESTION ABOUT THAT MAY BE SIMILAR TO THE |
| 04:12PM | 13 | ISSUE IN THE NULL VOID, AND THIS REGARDS TESTIMONY FROM |
| 04:13PM | 14 | MS. HOLMES ABOUT A CERTAIN ISSUE, I THINK IT WAS ABOUT |
| 04:13PM | 15 | WALGREENS. |
| 04:13PM | 16 | I WANT TO GET MY NOTES.  I HAVE YOUR MOTION IN MY OFFICE. |
| 04:13PM | 17 | SO LET'S TAKE ABOUT A 10 MINUTE BREAK.  I'LL GO GET THAT AND |
| 04:13PM | 18 | COME BACK. |
| 04:13PM | 19 | AS I SAID EARLIER, IT'S THE DEFENSE BURDEN TO SHOW |
| 04:13PM | 20 | UNAVAILABILITY.  SO WHATEVER YOU WANT TO DO ON THAT -- YOU |
| 04:13PM | 21 | KNOW, IF YOU WANT TO DO SOMETHING ABOUT THAT THIS AFTERNOON, WE |
| 04:13PM | 22 | CAN DO THAT. |
| 04:13PM | 23 | MR. FLEURMONT:  YES, YOUR HONOR. |
| 04:13PM | 24 | I UNDERSTAND THAT MR. COOPERSMITH IS HERE AND HE'S |
| 04:13PM | 25 | AVAILABLE TO MAKE A PROFFER TO THE COURT CONSISTENT WITH -- |

04:13PM 1    THE COURT:  OKAY.  WE'LL TAKE OUR BREAK.  WE'LL COME

04:13PM 2   BACK AND YOU'LL TELL ME WHAT YOU WOULD LIKE TO DO IN REGARD TO

04:13PM 3   MR. COOPERSMITH.

04:13PM 4        SHOULD I ORDER HIM TO STAY IN THE COURTROOM, OR IS HE

04:13PM 5   SUBJECT TO FLIGHT DO YOU THINK?

04:13PM 6            MR. FLEURMONT:  I DON'T THINK YOU NEED TO DO THAT.

04:13PM 7            THE COURT:  HE'S A TRUSTWORTHY LAD, IS HE?

04:13PM 8        (LAUGHTER.)

04:13PM 9            MR. FLEURMONT:  YEAH.

04:13PM 10           THE CLERK:  COURT IS IN RECESS.

04:35PM 11       (RECESS FROM 4:14 P.M. UNTIL 4:41 P.M.)

04:41PM 12           THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD

04:41PM 13  WITH ALL PARTIES BEING PRESENT ONCE AGAIN.

04:41PM 14       WE'RE OUTSIDE OF THE PRESENCE OF THE JURY, AND WE WANTED

04:41PM 15  TO HAVE SOME MORE DISCUSSION ON THE MOTIONS BEFORE THE COURT

04:41PM 16  REGARDING PRIOR TESTIMONY.

04:41PM 17       LET ME JUST, LET ME JUST SAY, THANK YOU FOR YOUR

04:41PM 18  ARGUMENTS.  I'VE LISTENED TO THE ARGUMENTS.

04:41PM 19       COUNSEL, YOU CAN COME FORWARD IF YOU WOULD LIKE.  THANKS.

04:41PM 20  YOU CAN TAKE YOUR MASKS OFF IF YOU WISH.

04:41PM 21           MS. VOLKAR:  THANK YOU, YOUR HONOR.

04:41PM 22           THE COURT:  LET ME -- I JUST WANT TO START WITH

04:41PM 23  EXHIBIT C.  AND THIS IS ONE WHERE I DON'T THINK I NEED ANY MORE

04:41PM 24  HELP FROM YOU ON THIS.

04:41PM 25       I THINK THERE'S BEEN EVIDENCE REGARDING THE CLIA LAB AND

04:41PM   1    MR. BALWANI'S CONNECTION TO THE CLIA LAB.

04:41PM   2        I THINK DIFFERENT WITNESSES HAVE TOLD THE JURY ABOUT THEIR

04:42PM   3    OBSERVATIONS, THEIR OPINIONS, THEIR OPINIONS SUCH THAT THEY

04:42PM   4    WERE PERMITTED TO TESTIFY ON THIS.

04:42PM   5        I DO THINK THAT, UNDER 403, THIS IS CUMULATIVE.  I THINK

04:42PM   6    THERE IS SUFFICIENT, SUFFICIENT EVIDENCE IN THE RECORD NOW THAT

04:42PM   7    SUPPORTS THE FINDINGS, MR. FLEURMONT, THAT YOU SEEK TO CAPTURE

04:42PM   8    WITH 1163-4, EXHIBIT C, AND SO I'M NOT GOING TO ALLOW THIS TO

04:42PM   9    COME IN.

04:42PM  10        I THINK THERE'S PLENTY OF INFORMATION IN THE RECORD

04:42PM  11    ALREADY THAT ESTABLISHES WHAT YOU NEED TO DO.

04:42PM  12        ANYTHING FURTHER, AS I SAID, WOULD BE FOUND CUMULATIVE.

04:42PM  13        SO UNDER 403, I THINK THAT TO ALLOW THIS WOULD TAKE MORE

04:42PM  14    TIME AND WOULD POSSIBLY CONFUSE THE JURY ON THIS ISSUE.  IT

04:42PM  15    COULD OPEN UP TO OTHER ADDITIONAL EVIDENCE THAT MIGHT HAVE TO

04:42PM  16    COME IN TO SUPPORT OR DETRACT FROM IT THAT WOULD BE AN

04:42PM  17    UNNECESSARY WASTE OF TIME.

04:43PM  18        SO I'M GOING TO RESPECTFULLY DECLINE YOUR INVITATION TO

04:43PM  19    ADMIT EXHIBIT C.

04:43PM  20        SO THAT'S THE RULING ON THAT.

04:43PM  21        LET'S GO BACK TO WHERE WE WERE INITIALLY.

04:43PM  22        SO LET ME TURN BACK TO YOU, MR. FLEURMONT.  YOU HAVE THE

04:43PM  23    FLOOR.

04:43PM  24        LET'S DO THE THRESHOLD ISSUE FIRST.  WHY DON'T WE DO THAT?

04:43PM  25            MR. FLEURMONT:  YES, YOUR HONOR.

| 04:43PM | 1 | WE WOULD LIKE TO INVITE MR. COOPERSMITH UP SO HE COULD |
| 04:43PM | 2 | PROVIDE A PROFFER TO THE COURT. |
| 04:43PM | 3 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 04:43PM | 4 | AND, MR. COOPERSMITH, I SEE YOU HERE.  THANK YOU FOR BEING |
| 04:43PM | 5 | HERE. |
| 04:43PM | 6 | MR. FLEURMONT, THIS IS, AGAIN, YOUR BURDEN.  SO WHAT IS IT |
| 04:43PM | 7 | YOU WOULD LIKE TO KNOW FROM MR. COOPERSMITH. |
| 04:43PM | 8 | I'M NOT GOING TO -- I'M A NEUTRAL PARTY HERE, SO I JUST |
| 04:43PM | 9 | NEED TO KNOW WHAT IT IS. |
| 04:43PM | 10 | THERE'S A QUESTION OF UNAVAILABILITY THAT YOU HAVE |
| 04:43PM | 11 | INDICATED MR. WADE HAS.  HE HAS PROVIDED A DECLARATION TO THE |
| 04:43PM | 12 | COURT.  I'VE INDICATED THAT I NEED MORE WITH RESPECT TO |
| 04:44PM | 13 | MR. WADE AND THAT DECLARATION. |
| 04:44PM | 14 | SO WHAT IS IT YOU WOULD LIKE THE COURT TO CONSIDER IN |
| 04:44PM | 15 | REGARDS TO THE ISSUE OF UNAVAILABILITY OF MR. BALWANI. |
| 04:44PM | 16 | MR. FLEURMONT:  UNDERSTOOD, YOUR HONOR. |
| 04:44PM | 17 | OUR FIRST QUESTION IS IF WE WERE TO CALL -- WELL, WE SEEK |
| 04:44PM | 18 | TO CALL MR. BALWANI IN OUR CASE.  IS HE AVAILABLE TO TESTIFY? |
| 04:44PM | 19 | SO THAT'S THE FIRST QUESTION. |
| 04:44PM | 20 | THE COURT:  SO LET ME ASK THEN, YOU'VE CAUSED THE |
| 04:44PM | 21 | YOUNG MAN TO COME FORWARD HERE. |
| 04:44PM | 22 | MAY I KNOW YOUR NAME, SIR? |
| 04:44PM | 23 | MR. COOPERSMITH:  JEFF COOPERSMITH.  I REPRESENT |
| 04:44PM | 24 | MR. BALWANI. |
| 04:44PM | 25 | THE COURT:  THANK YOU.  YOU CURRENTLY REPRESENT HIM? |

8196

04:44PM  1          MR. COOPERSMITH:  YES, YOUR HONOR.

04:44PM  2          THE COURT:  IN THIS LITIGATION?

04:44PM  3          MR. COOPERSMITH:  YES, YOUR HONOR.

04:44PM  4          THE COURT:  AND YOU'RE HERE AS HIS ATTORNEY AND YOU

04:44PM  5  CAN ANSWER ANY QUESTIONS THAT MR. FLEURMONT HAS ABOUT YOU AND

04:44PM  6  YOUR CLIENT AND HIS DESIRE TO ASK YOUR CLIENT QUESTIONS?

04:44PM  7          MR. COOPERSMITH:  YES, YOUR HONOR.

04:44PM  8          THE COURT:  OKAY.

04:45PM  9          MR. FLEURMONT:  OKAY.  MR. COOPERSMITH, IF WE WERE

04:45PM  10  TO CALL MR. BALWANI IN THIS CASE, WOULD HE BE AVAILABLE TO

04:45PM  11  TESTIFY?

04:45PM  12          MR. COOPERSMITH:  UNDER THE CIRCUMSTANCES, IF

04:45PM  13  MR. BALWANI WERE CALLED AS A WITNESS, I UNDERSTAND THAT UNDER

04:45PM  14  THE ADVICE OF COUNSEL HE WOULD ASSERT HIS FIFTH AMENDMENT

04:45PM  15  RIGHTS WITH RESPECT TO ANY SUBSTANTIVE QUESTION, INCLUDING ON

04:45PM  16  THE TOPICS THAT I UNDERSTAND THE DEFENSE IS INTERESTED IN

04:45PM  17  CALLING HIM FOR BASED ON THEIR MOTION.

04:45PM  18          THE COURT:  ALL RIGHT.  AND YOU'VE BEEN APPRISED OF

04:45PM  19  THE CONTEXT OF THE QUESTIONS THAT WOULD BE POSED TO YOUR CLIENT

04:45PM  20  WERE HE TO BE SUBPOENAED?

04:45PM  21          MR. COOPERSMITH:  YES, YOUR HONOR.  I'VE REVIEWED

04:45PM  22  THE PLEADINGS ON THIS ISSUE.  SO YES.

04:45PM  23          THE COURT:  OKAY.

04:45PM  24          MR. FLEURMONT:  MR. COOPERSMITH, IF WE WERE TO ASK

04:45PM  25  HIM QUESTIONS RELATED TO HIS ROLE IN THE CLIA LAB, WOULD HE

04:45PM   1     ANSWER THOSE QUESTIONS?

04:45PM   2              MR. COOPERSMITH:  ON ADVICE OF COUNSEL I UNDERSTAND

04:45PM   3     MR. BALWANI WOULD ASSERT HIS FIFTH AMENDMENT RIGHTS.

04:45PM   4              MR. FLEURMONT:  MR. COOPERSMITH, IF WE WERE TO ASK

04:46PM   5     HIM QUESTIONS RELATED TO HIS ROLE IN FINANCIAL MODELING, WOULD

04:46PM   6     HE ANSWER.

04:46PM   7              MR. COOPERSMITH:  AGAIN, ON ADVICE OF COUNSEL, HE

04:46PM   8     WOULD ASSERT HIS FIFTH AMENDMENT RIGHTS.

04:46PM   9              MR. FLEURMONT:  AND, MR. COOPERSMITH, IF WE WERE TO

04:46PM   10    ASK HIM QUESTIONS RELATED TO HIS ROLE IN THE WALGREENS AND

04:46PM   11    SAFEWAY RELATIONSHIPS, WOULD HE ANSWER?

04:46PM   12             MR. COOPERSMITH:  ON ADVICE OF COUNSEL, I UNDERSTAND

04:46PM   13    THAT HE WOULD ASSERT HIS FIFTH AMENDMENT RIGHTS.

04:46PM   14             THE COURT:  OKAY.  ANYTHING FURTHER, MR. FLEURMONT?

04:46PM   15             MR. FLEURMONT:  NO, YOUR HONOR.

04:46PM   16             THE COURT:  OKAY.

04:46PM   17        DO YOU WISH TO CROSS-EXAMINE MR. COOPERSMITH?

04:46PM   18        (LAUGHTER.)

04:46PM   19             MS. VOLKAR:  I RESPECTFULLY DECLINE, YOUR HONOR.

04:46PM   20             THE COURT:  ALL RIGHT.  THANK YOU, MR. COOPERSMITH.

04:46PM   21    I APPRECIATE YOUR ATTENTION TO THIS.  IT'S BEEN VERY HELPFUL TO

04:46PM   22    THE COURT.  THANK YOU.

04:46PM   23             MR. COOPERSMITH:  YOU'RE WELCOME, YOUR HONOR.  THANK

04:46PM   24    YOU.

04:46PM   25             THE COURT:  ALL RIGHT.  THANK YOU.

| | | |
|---|---|---|
| 04:46PM | 1 | LET ME JUST STATE, AFTER HEARING FROM MR. BALWANI'S |
| 04:46PM | 2 | ATTORNEY, THE COURT DOES FIND THEN AND MAKES A FINDING THAT |
| 04:46PM | 3 | WERE MR. BALWANI TO BE CALLED TO TESTIFY IN THIS CASE -- AND |
| 04:46PM | 4 | ONCE AGAIN, WE ARE OUTSIDE OF THE PRESENCE OF THE JURY NOW -- |
| 04:47PM | 5 | PURSUANT TO THE REPRESENTATIONS OF COUNSEL, MR. BALWANI WOULD |
| 04:47PM | 6 | ASSERT HIS FIFTH AMENDMENT PRIVILEGE TO NOT ANSWER THOSE |
| 04:47PM | 7 | QUESTIONS. |
| 04:47PM | 8 | SO THE COURT DOES FIND HIM THEN UNAVAILABLE FOR PURPOSES |
| 04:47PM | 9 | OF TESTIMONY HERE. |
| 04:47PM | 10 | ALL RIGHT.  THANK YOU. |
| 04:47PM | 11 | AND THANK YOU FOR DOING THAT, MR. FLEURMONT.  I APPRECIATE |
| 04:47PM | 12 | IT. |
| 04:47PM | 13 | SO ONE OF THE -- I MENTIONED TO YOU THAT THERE WAS SOME |
| 04:47PM | 14 | TESTIMONY, AND I WAS -- LET ME JUST DRAW YOUR ATTENTION TO IT. |
| 04:47PM | 15 | I THINK IT WAS IN EXHIBIT 5387D, I THINK IT WAS, BUT IT WAS |
| 04:47PM | 16 | CONVERSATION REGARDING -- I THINK MS. HOLMES TESTIFIED, I'M |
| 04:47PM | 17 | PARAPHRASING HERE, BUT "WE WOULD WORK TOGETHER ON A REVENUE |
| 04:47PM | 18 | PIECE," I THINK IT WAS. |
| 04:47PM | 19 | AND THAT TO ME SUGGESTED THAT -- I GUESS IT GOES TO THE |
| 04:47PM | 20 | INCULPATION ISSUE, THAT IF THEY WORKED TOGETHER, THEN THAT |
| 04:47PM | 21 | MIGHT SOMEHOW MITIGATE THE QUESTION OF WHETHER OR NOT THAT IS |
| 04:48PM | 22 | INCULPATORY AS TO MR. BALWANI. |
| 04:48PM | 23 | AND I DON'T HAVE THAT PIECE IN FRONT OF ME, AND I'LL |
| 04:48PM | 24 | INVITE YOUR TEAMS TO FIND IT FOR ME IF YOU WOULD LIKE. |
| 04:48PM | 25 | BUT THAT WAS MY GENERAL RECOLLECTION OF THAT TESTIMONY. |

8199

04:48PM  1          AND I'M NOT CERTAIN I HAVE THE CITE CORRECT, BUT I DO

04:48PM  2      REMEMBER --

04:48PM  3              MR. FLEURMONT:  I REMEMBER THAT TESTIMONY,

04:48PM  4      YOUR HONOR.

04:48PM  5              THE COURT:  GREAT.

04:48PM  6              MR. FLEURMONT:  SO FROM WHAT I REMEMBER, THERE WAS A

04:48PM  7      TEXT MESSAGE AND "WE WORKED TOGETHER ON THE REV PIECE."

04:48PM  8              THE COURT:  RIGHT.

04:48PM  9              MR. FLEURMONT:  AND I WASN'T SURE -- I BELIEVE SHE

04:48PM  10     SAID "I WASN'T SURE IF THAT MEANT REVISIONS OR REVENUE."

04:48PM  11             THE COURT:  RIGHT.

04:48PM  12             MR. FLEURMONT:  WE DON'T HAVE CONTEXT FOR THAT TEXT

04:48PM  13     MESSAGE.

04:48PM  14        I'M NOT EVEN QUITE SURE WHAT IT WOULD RELATE TO IN TERMS

04:48PM  15     OF WHAT WE'RE DISCUSSING HERE.  IT COULD RELATE TO PROJECTIONS.

04:48PM  16     IT COULD RELATE TO THE WALGREENS RELATIONSHIP.

04:48PM  17        I'M NOT -- I DON'T EVEN HAVE ENOUGH CONTEXT I THINK TO

04:49PM  18     UNDERSTAND WHAT IT RELATES TO EVEN IN THIS MOTION.

04:49PM  19        SO I THINK THIS IS JUST AN EXAMPLE OF HOW THAT TEXT

04:49PM  20     MESSAGE IN ISOLATION DOESN'T CHANGE THE NEED FOR ANY OF THE

04:49PM  21     TESTIMONY HERE.

04:49PM  22             THE COURT:  OKAY.  WELL, I RECALL, I THINK MR. LEACH

04:49PM  23     DREW HER ATTENTION -- I SAY "HER," PARDON ME, I MEAN NO

04:49PM  24     DISRESPECT -- MS. HOLMES'S ATTENTION TO THAT COLLOQUY AND

04:49PM  25     TRACED IT BACK TO REVENUE, IF I RECALL CORRECTLY.

8200

| | | |
|---|---|---|
| 04:49PM | 1 | AND MR. LEACH HAS THE DOCUMENT HERE. |
| 04:49PM | 2 | MS. VOLKAR:  YES, YOUR HONOR, WITH THE HELP OF MY -- |
| 04:49PM | 3 | WITH THE HELP OF MR. LEACH, I DO HAVE -- |
| 04:49PM | 4 | THE COURT:  WHAT PAGE WAS THAT ON?  MAYBE YOU CAN -- |
| 04:49PM | 5 | MS. VOLKAR:  PAGE 19 OF 5387, SO IT WAS JUST |
| 04:50PM | 6 | ADMITTED, IT WAS JUST ADMITTED MOMENTS AGO WHEN MR. LEACH MOVED |
| 04:50PM | 7 | IT INTO EVIDENCE. |
| 04:50PM | 8 | THE COURT:  THANK YOU. |
| 04:50PM | 9 | MS. VOLKAR:  AND TO BE -- SPECIFICALLY, MR. LEACH |
| 04:50PM | 10 | ASKED MS. HOLMES ABOUT HER SKYPE MESSAGE, "WE HAVE TO WORK |
| 04:50PM | 11 | TOGETHER ON THE REV PIECE," I BELIEVE MR. FLEURMONT'S -- MY |
| 04:50PM | 12 | MEMORY MATCHED MR. FLEURMONT'S WITH RESPECT TO HER ANSWER, |
| 04:50PM | 13 | WHICH WAS THAT SHE WASN'T SURE WHETHER IT WAS REVENUE OR |
| 04:50PM | 14 | REVISIONS OR IT COULD HAVE BEEN. |
| 04:50PM | 15 | AND THEN MR. LEACH POINTED OUT THAT JUST A FEW LINES DOWN, |
| 04:50PM | 16 | MR. BALWANI RESPONDED, "YOU ARE THE COMPANY," REFERRING TO |
| 04:50PM | 17 | MS. HOLMES, "WE NEED REVENUE PLUS A FEW SENIOR LEVEL MANAGERS |
| 04:50PM | 18 | EXPERIENCED EVEN IF THEY ONLY WORK 11 HOURS." |
| 04:50PM | 19 | AND MY RECOLLECTION IS THAT MR. LEACH ASKED IF SHE HAD ANY |
| 04:50PM | 20 | REASON TO DOUBT THAT THEY WERE TALKING ABOUT REVENUE, AND I |
| 04:50PM | 21 | THOUGHT SHE SAID THAT SHE DIDN'T HAVE A REASON TO DOUBT, OR |
| 04:50PM | 22 | THERE WAS AT LEAST SOME UNCERTAINTY THERE, BUT IT WASN'T A |
| 04:50PM | 23 | SOLID, NO, WE WEREN'T TALKING ABOUT REVENUE. |
| 04:50PM | 24 | THAT'S MY BEST RECOLLECTION. |
| 04:51PM | 25 | THE COURT:  ALL RIGHT.  THANK YOU. |

8201

04:51PM   1          THIS IS WHAT I WAS REMEMBERING, AND IT CAUSED ME TO LOOK

04:51PM   2     BACK AT THE STATEMENT THAT YOU SEEK TO INTRODUCE, AND IT CAUSED

04:51PM   3     ME TO THINK THAT, WELL, IF SHE WAS IN THE REVENUE PIECE, IF

04:51PM   4     MS. HOLMES WAS IN THE REVENUE PIECE, THEN I DON'T SEE WHERE THE

04:51PM   5     INCULPATION IS.

04:51PM   6          MR. FLEURMONT:  YES.  SO I THINK THE COURT IS

04:51PM   7     ASKING, BASED ON THIS TEXT MESSAGE AND THE CONTEXT, IS THERE

04:51PM   8     LESS CORROBORATION FOR THE STATEMENT THAT WE SEEK TO ADMIT?

04:51PM   9          THE STATEMENTS WE SEEK TO ADMIT RELATE TO THE PROJECTIONS

04:51PM  10     AND THE FINANCIAL MODEL.

04:51PM  11          I DON'T THINK THERE'S ANYTHING IN THESE TEXT MESSAGES THAT

04:51PM  12     CONTRADICT HIS TESTIMONY THAT HE OWNED THE MODEL OR CONTRADICT

04:51PM  13     HIS TESTIMONY RELATED TO WALGREENS AND HIS RELATIONSHIP WITH

04:51PM  14     WALGREENS.

04:51PM  15          THE FACT THAT THEY'RE DISCUSSING REVENUE AND ARE BOTH

04:51PM  16     TALKING ABOUT REVENUE, I DON'T THINK UNDERMINES HIS STATEMENT

04:51PM  17     THAT "I OWNED THE FINANCIAL MODEL."

04:52PM  18          SHE -- MS. HOLMES MAY KNOW ABOUT REVENUE, AND I THINK A

04:52PM  19     CEO OF A COMPANY WILL KNOW ABOUT SOME REVENUE.

04:52PM  20          BUT IT DOESN'T NECESSARILY MEAN THAT THE STATEMENTS THAT

04:52PM  21     HE'S MAKING IN HIS DEPOSITION ARE UNDERMINED.

04:52PM  22          MS. VOLKAR:  THANK YOU, YOUR HONOR.

04:52PM  23          THE GOVERNMENT WOULD LIKE TO DIRECT THAT THERE ARE TWO

04:52PM  24     REQUIREMENTS AT ISSUE HERE FOR 804(B)(3).

04:52PM  25          THERE IS WHETHER OR NOT THE SUBJECT, OR THE STATEMENT

8202

04:52PM  1    TENDED TO SUBJECT THE DECLARANT TO PENAL LIABILITY OR CRIMINAL

04:52PM  2    LIABILITY.  THAT'S THE INCULPATORY STATEMENTS THAT WE HAVE

04:52PM  3    SPENT A LOT OF TIME TALKING ABOUT.

04:52PM  4        AND THEN THERE'S ALSO THE SECOND REQUIREMENT FOR

04:52PM  5    804(B)(3), THAT THERE EXIST CORROBORATING CIRCUMSTANCES THAT

04:52PM  6    CLEARLY INDICATE THE STATEMENT'S TRUSTWORTHINESS.

04:52PM  7        AND I THINK THAT YOUR HONOR FORESAW WHERE THE GOVERNMENT

04:52PM  8    WAS GOING.  I THINK THAT WHAT OUR POSITION IS HERE IS THAT

04:52PM  9    THERE ISN'T SUFFICIENT EVIDENCE TO CORROBORATE OR SHOW THE

04:53PM  10   TRUSTWORTHINESS OF THESE STATEMENTS WHEN THE TESTIMONY TO DATE

04:53PM  11   HAS BEEN PERHAPS MR. BALWANI WOULD BE THE ONE TO PRESENT THE

04:53PM  12   PROJECTIONS, THERE HAS BEEN SOME TESTIMONY THERE.

04:53PM  13       THERE HASN'T NECESSARILY BEEN ANY TESTIMONY ABOUT WHO

04:53PM  14   CREATED OR WHO OWNED THE MODELS.  THIS WOULD BE SORT OF THE

04:53PM  15   FIRST INSTANCE OF THAT.

04:53PM  16       AND WHAT WE DO HAVE ARE TEXT MESSAGES SHOWING THAT

04:53PM  17   MR. BALWANI AND MS. HOLMES TALKED ABOUT THESE MODELS, AND IT IS

04:53PM  18   AT BEST UNCLEAR WHO WAS REALLY TAKING OWNERSHIP OF IT.

04:53PM  19       SO I WANT TO FOCUS ON THE PIECE THAT DEFENSE COUNSEL IS

04:53PM  20   TALKING ABOUT, THE OWNERSHIP PIECE.  THERE ISN'T ANY

04:53PM  21   CORROBORATION OR ANYTHING TO INDICATE TRUSTWORTHINESS OF THAT

04:53PM  22   PORTION.

04:53PM  23       IN FACT, THE TEXT MESSAGES, I WOULD SAY, POINT IN BOTH

04:53PM  24   DIRECTIONS AND THE TESTIMONY WE HAVE HEARD TODAY POINTS IN BOTH

04:53PM  25   DIRECTIONS.

04:53PM   1         AND THEN IN TERMS OF THE REMAINDER OF THE STATEMENT AROUND

04:53PM   2    IT, THAT MR. BALWANI WORKED WITH MULTIPLE PEOPLE TO BUILD THIS

04:53PM   3    MODEL, THAT'S WHERE I GO BACK TO THE GADSON AND THE PRONG ABOUT

04:54PM   4    INCULPATORY STATEMENTS BECAUSE GADSON SAYS IF SOMEONE IS

04:54PM   5    DEFLECTING OR SHARING BLAME, THAT'S NOT INCULPATORY.

04:54PM   6         SO I WOULD SAY THAT BETWEEN THOSE TWO PRONGS, ALL OF THE

04:54PM   7    PORTIONS ABOUT THE FINANCIAL MODEL AND PROJECTIONS ARE

04:54PM   8    INADMISSIBLE HEARSAY.

04:54PM   9              MR. FLEURMONT:  IF I COULD BRIEFLY RESPOND,

04:54PM  10    YOUR HONOR?

04:54PM  11              THE COURT:  YES, PLEASE.

04:54PM  12              MR. FLEURMONT:  BRIAN GROSSMAN TESTIFIED THAT HE

04:54PM  13    RECEIVED THE FINANCIAL MODEL FROM SUNNY, FROM MR. BALWANI,

04:54PM  14    EXCUSE ME.

04:54PM  15         AND THERE IS OTHER -- AND THAT'S AT TRANSCRIPT 6411,

04:54PM  16    NOVEMBER 16TH.

04:54PM  17         THERE'S TESTIMONY FROM GENERAL MATTIS THAT THE BOARD

04:54PM  18    RECEIVED PRESENTATIONS ABOUT THE FINANCIALS FROM MR. BALWANI.

04:54PM  19         THE RULE DOES NOT REQUIRE, AND I HAVE NOT SEEN A CASE THAT

04:54PM  20    SAYS THIS, THAT THE RULE REQUIRES A WITNESS TO SAY WHAT THE,

04:55PM  21    WHAT THE PROPONENT WANTS TO ADMIT IS -- THERE'S NO REQUIREMENT

04:55PM  22    THAT THERE'S A ONE-TO-ONE MATCH WITH THE STATEMENT THAT THE

04:55PM  23    DECLARANT WANTS TO ADMIT AND THE CORROBORATION.

04:55PM  24         WHAT THE RULE REQUIRES IS THAT CORROBORATING CIRCUMSTANCES

04:55PM  25    THAT INDICATE TRUSTWORTHINESS.

8204

04:55PM  1      AND SO THE TESTIMONY OF GENERAL MATTIS, THE TESTIMONY OF

04:55PM  2   BRIAN GROSSMAN, AND OTHER STATEMENTS BY MR. BALWANI'S SWORN

04:55PM  3   DECLARATION, EXCUSE ME, SWORN DEPOSITION SUPPORT THE STATEMENTS

04:55PM  4   THAT WE SEEK TO ADMIT.

04:55PM  5      THE COURT:  OKAY.  IT SEEMS LIKE THERE'S A -- WHAT

04:55PM  6   DO WE DO WHEN THERE'S, THERE'S AN EQUAL WEIGHT OR EQUAL

04:55PM  7   INTERPRETATION AS TO EACH?  IT COULD BE LOOKED AT THIS WAY?  IT

04:55PM  8   COULD BE LOOKED AT ANOTHER WAY?

04:55PM  9      I GUESS THAT'S FOR THE COURT TO BALANCE AND SEE, BUT

04:55PM  10  THAT'S ONE OF THE THINGS THAT THE COURT HAS TO LOOK AT, AND

04:56PM  11  THAT'S WHY WE'RE HAVING THIS CONVERSATION CANDIDLY.

04:56PM  12     YOU SHOULD UNDERSTAND THAT I'M HAVING DIFFICULTY FINDING

04:56PM  13  THAT HERE.  THAT'S WHY WE'RE DISCUSSING THIS NOW.

04:56PM  14     AND THEN I LOOK AT -- AND I DON'T MEAN TO MUDDLE THE

04:56PM  15  WATERS -- BUT ON 1163-3, ECF PAGE 6, LINE 19, THE QUESTION WAS,

04:56PM  16  "DID SHE EVER EDIT THE MODEL?"

04:56PM  17     AND MR. BALWANI TELLS US THAT, HE SAYS, "TO THE BEST OF MY

04:56PM  18  KNOWLEDGE, NO.  I HAD QUESTIONS FOR HER AND THEN I PUT A MODEL

04:56PM  19  WITH HER NAME ON IT SO SHE COULD EDIT."

04:56PM  20     THIS IS ONE OF THOSE AREAS THAT, WELL, WAIT A MINUTE, NOW

04:56PM  21  SHE'S EDITING.  I DON'T KNOW IF IT'S THE SAME MODEL.  IS IT A

04:56PM  22  DIFFERENT MODEL?

04:56PM  23     AND THEN HE SAYS, "I DON'T THINK SHE DID BECAUSE I

04:56PM  24  CONTINUED WITH MY ASSUMPTIONS.  I NEVER EVEN LOOKED AT THAT

04:56PM  25  MODEL.  SO I THINK MY ANSWER IS NO."

8205

04:56PM 1    SO THAT -- IT JUST CREATES ANOTHER ISSUE OF, IS THAT

04:56PM 2    SUFFICIENT CORROBORATION?

04:57PM 3    YOU'RE GOING TO TELL ME YES.

04:57PM 4         MR. FLEURMONT:  I THINK SO.

04:57PM 5    THERE ARE TWO ISSUES AT PLAY HERE.  ONE, IS THERE

04:57PM 6    SUFFICIENT CORROBORATION FOR THE STATEMENT?

04:57PM 7    WE'VE INCLUDED THE STATEMENT BECAUSE IT CORROBORATES THE

04:57PM 8    FACT THAT TO HIS KNOWLEDGE HE NEVER -- TO HIS KNOWLEDGE, SHE

04:57PM 9    DID NOT EDIT THE MODEL, MS. HOLMES DID NOT EDIT THE MODEL.

04:57PM 10    AND HE SAYS AT THE END, "I THINK MY ANSWER IS NO."

04:57PM 11    THE MAIN STATEMENT THAT WE'RE SEEKING TO INTRODUCE IS

04:57PM 12    EARLIER AND -- BUT ONE IN EXHIBIT A WHERE HE SAYS HE OWNS THE

04:57PM 13    MODEL, AND THEN ALSO IN EXHIBIT B WHERE HE SAYS -- THIS IS AT

04:57PM 14    PAGE 4, LINES 8 THROUGH 9 -- "I WOULD, YOU KNOW, UPDATE THE

04:57PM 15    MODEL AND KEEP IT UPDATED."

04:57PM 16         THE COURT:  RIGHT.

04:57PM 17         MR. FLEURMONT:  HE IS A PERSON WHO IS UPDATING THIS

04:57PM 18    MODEL.

04:57PM 19    SO THE FACT THAT HE SAYS "TO THE BEST OF MY KNOWLEDGE, NO"

04:57PM 20    IN RESPONSE TO A QUESTION ABOUT MS. HOLMES EDITING THE MODEL

04:58PM 21    CORROBORATES THAT STATEMENT.

04:58PM 22    THE COURT MAY LOOK AT THIS STATEMENT AND SAY -- JUST TO BE

04:58PM 23    CLEAR, I DON'T THINK THIS IS A WHOLESALE EXERCISE.  IF THE

04:58PM 24    COURT SEES ONE QUESTION AND ANSWER THAT THEN IT DOESN'T BELIEVE

04:58PM 25    IS EITHER INCULPATORY, OR IF THE COURT SEES ONE QUESTION AND

8206

04:58PM   1    ANSWER AND IT DOESN'T BELIEVE IT'S CORROBORATED, THEN IT SHOULD

04:58PM   2    THROW OUT THE REST OF THE TRANSCRIPT.

04:58PM   3        IF THE COURT THINKS THAT THE SCALES ARE EQUAL ON THIS ONE,

04:58PM   4    I THINK THE COURT IS WELL WITHIN ITS RIGHTS TO LOOK AT THE

04:58PM   5    OTHER STATEMENTS AND SAY, WELL, THIS ONE MEETS THE RULE.

04:58PM   6        THE COURT:  OKAY.  OKAY.

04:58PM   7        MS. VOLKAR:  YOUR HONOR, I THINK THE COURT'S

04:58PM   8    QUESTIONS SHOW AND DEMONSTRATE WHY THIS -- THESE PORTIONS ARE

04:58PM   9    INADMISSIBLE, AND THE REASON IS BECAUSE WHEN THERE IS EVIDENCE

04:58PM   10   POINTING IN BOTH DIRECTIONS, THE TYPICAL ANSWER IN OUR COURT

04:58PM   11   AND LEGAL SYSTEM IS THROUGH CROSS-EXAMINATION, IS TO TEST IT

04:58PM   12   THROUGH THE ADVERSARIAL PROCESS.

04:58PM   13       AND THAT BRINGS US BACK TO THE FUNDAMENTAL PROBLEM HERE.

04:58PM   14       THE DEFENSE SEEKS TO ADMIT THESE STATEMENTS WHEN THE

04:59PM   15   GOVERNMENT, THE PROSECUTION TEAM HAS NOT HAD THE OPPORTUNITY TO

04:59PM   16   CROSS-EXAMINE MR. BALWANI.

04:59PM   17       AND I KNOW THAT WHEN WE'RE LOOKING AT THIS, WE'RE TALKING

04:59PM   18   ABOUT THOSE TWO PRONGS THAT I MENTIONED.

04:59PM   19       BUT FOR A HEARSAY EXCEPTION, THE INDICATION OF

04:59PM   20   TRUSTWORTHINESS, THAT PRONG IS INCORPORATING THE IDEA THAT IF

04:59PM   21   WE'RE GOING TO BRING IN AN OUT-OF-COURT STATEMENT THAT CAN'T

04:59PM   22   NECESSARILY -- WHERE THE DECLARANT CANNOT BE TESTED THROUGH THE

04:59PM   23   TYPICAL PROCESS OF CROSS-EXAMINATION, DO WE HAVE SUFFICIENT --

04:59PM   24   DO WE HAVE SUFFICIENT INDICATION OF TRUSTWORTHINESS THAT WE CAN

04:59PM   25   RELY ON THOSE STATEMENTS WITHOUT TESTING THEM THROUGH THE

04:59PM 1    NORMAL TRIAL PROCESS?

04:59PM 2              THE COURT:  OKAY.

04:59PM 3              MS. VOLKAR:  AND THAT'S WHERE I WOULD ARGUE,

04:59PM 4    ALTHOUGH WE'RE TALKING ABOUT CORROBORATION, WHEN WE ARE IN A

04:59PM 5    SITUATION THAT THE COURT FACES HERE WHERE THERE IS SOME

04:59PM 6    EVIDENCE THAT POINTS BOTH WAYS, THERE'S NOTHING ELSE EXPLICITLY

04:59PM 7    EVIDENT.

04:59PM 8         AND WITH RESPECT TO MY COLLEAGUE, I LISTENED TO WHAT HE

04:59PM 9    SAID ABOUT MR. GROSSMAN AND THE OTHER INVESTORS RECEIVING THE

04:59PM 10   MODEL, BUT I DIDN'T HEAR ANYTHING ABOUT WHO HAS TESTIFIED, AND

05:00PM 11   I HAVE NOT HEARD ANY TESTIMONY IN THIS CASE FROM A WITNESS TO

05:00PM 12   DATE ABOUT WHO BUILT THE MODEL OTHER THAN THIS.

05:00PM 13             THE COURT:  OKAY.  MR. FLEURMONT, ANYTHING ELSE YOU

05:00PM 14   WANT ME TO KNOW?

05:00PM 15             MR. FLEURMONT:  YES, YOUR HONOR.

05:00PM 16        BRIEFLY ON THE MODEL VERSUS PROJECTIONS DISCUSSIONS WE HAD

05:00PM 17   EARLIER, I JUST WANTED TO CLARIFY SOME THINGS.

05:00PM 18             THE COURT:  SURE.

05:00PM 19             MR. FLEURMONT:  SO THE WAY THE PROJECTIONS WERE MADE

05:00PM 20   WERE BY PLUGGING THE ASSUMPTIONS INTO THE MODEL, AND THERE ARE

05:00PM 21   DIFFERENT ASSUMPTIONS.  FOR EXAMPLE, HOW MANY STORES DO WE

05:00PM 22   THINK WILL OPEN THIS YEAR?  HOW MUCH REVENUE DO WE THINK WE'LL

05:00PM 23   GET BASED ON DIFFERENT METRICS?

05:00PM 24        ONCE THOSE METRICS WERE PUT INTO THE MODEL, THEN THAT'S

05:00PM 25   WHAT GENERATES A PROJECTION THAT IS ACTUALLY SENT TO THE

05:00PM  1    INVESTOR.

05:00PM  2        SO I JUST WANT IT TO BE CLEAR THAT THE MODEL AND THE

05:00PM  3    PROJECTION ARE ESSENTIALLY THE SAME THING FOR THAT REASON.  THE

05:00PM  4    MODEL IS WHAT IS GENERATING THE PROJECTION THAT IS SENT TO THE

05:00PM  5    INVESTORS.  SO I WANTED TO CLARIFY THAT.

05:00PM  6            THE COURT:  RIGHT.  I THINK I FOLLOW THAT.

05:00PM  7            MR. FLEURMONT:  OKAY.

05:00PM  8            THE COURT:  THE MODEL IS THE, IS THE INITIAL

05:01PM  9    DOCUMENT WHERE ALL OF THE INFORMATION IS PUT IN, AND THAT IS --

05:01PM  10   THE FINAL PRODUCT IS THE PROJECTION THAT IS SENT OUT.

05:01PM  11           MR. FLEURMONT:  OKAY.  COOL.  I JUST WANTED TO MAKE

05:01PM  12   SURE.

05:01PM  13       (LAUGHTER.)

05:01PM  14           THE COURT:  NO, IT IS COOL.

05:01PM  15           MR. FLEURMONT:  I JUST WANTED TO MAKE SURE I WAS

05:01PM  16   CLEAR ON THAT.

05:01PM  17       JUST TAKE A STEP BACK FROM THE PRIOR DISCUSSION, WHAT THE

05:01PM  18   RULE REQUIRES IS A STATEMENT AGAINST INTEREST.  THERE'S NO

05:01PM  19   REQUIREMENT IN THAT RULE FOR SIMILAR MODE OF OPPORTUNITY TO

05:01PM  20   CROSS-EXAMINE LIKE THERE IS IN 804(B)(1), AND THAT'S FOR A

05:01PM  21   REASON TYPICALLY.

05:01PM  22       AS I MENTIONED EARLIER TODAY, THESE STATEMENTS AGAINST

05:01PM  23   INTEREST ARE SAID TO ANOTHER WITNESS OR SAID TO A POLICE

05:01PM  24   OFFICER, AND THE OTHER PARTY ISN'T EVEN THERE.

05:01PM  25       THE REASON THAT THEY'RE ALLOWED TO COME IN IS BECAUSE

05:01PM   1    THEY'RE TYPICALLY RELIABLE BECAUSE THEY'RE STATEMENTS AGAINST

05:01PM   2    THE PERSON'S INTEREST.  THEY WOULDN'T MAKE THE STATEMENT IF

05:01PM   3    THEY -- THEY WOULDN'T MAKE THE STATEMENT BECAUSE IT SUBJECTS

05:01PM   4    THEM TO SOME SORT OF LIABILITY, WHETHER IT'S CIVIL OR CRIMINAL

05:02PM   5    LIABILITY.

05:02PM   6         AND WE SUBMIT, YOUR HONOR, THAT THAT'S WHAT HAPPENED HERE.

05:02PM   7         I DO THINK THAT IT'S IMPORTANT TO NOTE THAT THESE ARE

05:02PM   8    STATEMENTS MADE IN A DEPOSITION OF THE S.E.C. UNDER THE PENALTY

05:02PM   9    OF PERJURY.  THESE ARE NOT STATEMENTS MADE TO ANOTHER WITNESS,

05:02PM   10   NOT STATEMENTS MADE TO A POLICE OFFICER.

05:02PM   11        AND I'M NOT SAYING THAT THE CORROBORATION ELEMENT DOES NOT

05:02PM   12   NEED TO BE MET BECAUSE OF THAT, BUT I THINK THAT'S SOMETHING

05:02PM   13   THAT THE COURT SHOULD CONSIDER WHEN CONSIDERING IF THESE

05:02PM   14   STATEMENTS ARE TRUSTWORTHY.

05:02PM   15        THERE'S A WHOLE OTHER EXCEPTION THAT TALKS ABOUT

05:02PM   16   STATEMENTS MADE IN DEPOSITIONS FOR A REASON.  I THINK THAT'S --

05:02PM   17   YOU KNOW, YOU SWORN UNDER PERJURY, LIKE, YOU WANT TO BE HONEST.

05:02PM   18        SO THERE IS THAT POINT.

05:02PM   19        IN TERMS OF THE RULE 106 AND WHAT WE WANT TO ADMIT, GOING

05:03PM   20   BACK TO JUST WHAT I SAID EARLIER, I THINK I'VE POINTED THE

05:03PM   21   COURT TO THE PORTIONS THAT WE'RE SEEKING TO ADMIT.

05:03PM   22        IF THE COURT WAS TO FASHION A LIMITED RULING THAT JUST HAD

05:03PM   23   THOSE PORTIONS, THAT WOULD KIND OF GUIDE OUR 106 DESIGNATIONS.

05:03PM   24             THE COURT:  SURE.  OKAY.  UNDERSTOOD.  OKAY.

05:03PM   25        ALL RIGHT.  WELL, IT USED TO BE AT PERIL OF ONE'S SOUL,

| | | |
|---|---|---|
| 05:03PM | 1 | REMEMBER THOSE DAYS, BUT NOW WE'VE MOVED IT TO PERILS OF |
| 05:03PM | 2 | PERJURY, SO -- |
| 05:03PM | 3 | MS. VOLKAR:  YOUR HONOR, THE LAST THING I WANT TO |
| 05:03PM | 4 | SAY ON THE CORROBORATION AND THE TRUSTWORTHINESS POINT, BECAUSE |
| 05:03PM | 5 | I THINK THAT'S REALLY WHERE WE ARE FOCUSSING FOR THESE PIECES, |
| 05:03PM | 6 | THIS IS APPROXIMATELY A YEAR AFTER THE PARTIES SPLIT UP, AND WE |
| 05:03PM | 7 | DID HEAR TODAY AND YESTERDAY THAT THERE WAS A COMPLICATED |
| 05:03PM | 8 | RELATIONSHIP BETWEEN MS. HOLMES AND MR. BALWANI.  THERE WERE |
| 05:03PM | 9 | LOVING ASPECTS AND NOT LOVING ASPECTS. |
| 05:03PM | 10 | BUT WE HAVEN'T YET HEARD FROM MR. BALWANI, TO BE FRANK, |
| 05:03PM | 11 | AND HIS SIDE OF THE STORY, AND WE -- AS FAR AS WE CAN TELL FROM |
| 05:03PM | 12 | THE TEXT MESSAGES, HE EXPRESSED A LOT OF LOVE AND DEVOTION. |
| 05:04PM | 13 | AND AGAIN, WITHOUT CROSS-EXAMINATION, WE DON'T KNOW WHAT |
| 05:04PM | 14 | INFLUENCE THAT WOULD HAVE HAD ON HIM IN THESE SITUATIONS. |
| 05:04PM | 15 | AND WE HAVE THE NINTH CIRCUIT SAYING A MOTIVE OF LOVE IS |
| 05:04PM | 16 | ANOTHER REASON TO TAKE A LITTLE BIT CLOSER LOOK AT CERTAIN |
| 05:04PM | 17 | STATEMENTS. |
| 05:04PM | 18 | THE COURT:  I DID.  I DID LOOK AT THAT, AND I LOOKED |
| 05:04PM | 19 | AT THAT IN RELATION TO THE TIMING AND IS THIS A SITUATION WHERE |
| 05:04PM | 20 | MR. BALWANI WOULD HAVE, BECAUSE OF THAT MOTIVATION, HIS |
| 05:04PM | 21 | FEELINGS FOR MS. HOLMES, HE MIGHT HAVE BEEN TRYING TO PROTECT |
| 05:04PM | 22 | HER IN SOME WAY, OR IN SOME WAY SHIELD HER?  THAT'S A |
| 05:04PM | 23 | CONSIDERATION. |
| 05:04PM | 24 | I THINK IT'S MITIGATED BECAUSE OF THE TIMING HERE, BUT I |
| 05:04PM | 25 | THINK YOU'RE RIGHT TO POINT OUT THAT THERE'S SOME -- IT WAS A |

| | | |
|---|---|---|
| 05:04PM | 1 | COMPLEX RELATIONSHIP I THINK IS WHAT YOU SAID, AND I THINK THE |
| 05:04PM | 2 | RECORD REFLECTS THAT. |
| 05:04PM | 3 | SO THANK YOU FOR THAT. |
| 05:04PM | 4 | OKAY.  ALL RIGHT.  THANK YOU. |
| 05:04PM | 5 | LET ME TURN TO 1165, WHICH WAS THE RENEWED MOTION TO ADMIT |
| 05:04PM | 6 | 14259.  THIS IS REALLY ABOUT DR. ASIN IF I'M NOT MISTAKEN. |
| 05:05PM | 7 | MS. VOLKAR:  IT IS, YOUR HONOR. |
| 05:05PM | 8 | I WAS CURIOUS IF YOUR HONOR HAD A TENTATIVE RULING ON THE |
| 05:05PM | 9 | FINANCIAL MODELS OR IF IT WAS STILL UNDER SUBMISSION. |
| 05:05PM | 10 | THE COURT:  I DO, BUT WHAT I'M GOING TO DO IS GIVE |
| 05:05PM | 11 | IT TO YOU PROBABLY TOMORROW BECAUSE I WANT TO LOOK, AND I'M |
| 05:05PM | 12 | GOING TO COMPARE THIS AND GO THROUGH THE TRANSCRIPTS, AND I'LL |
| 05:05PM | 13 | HAVE SOMETHING. |
| 05:05PM | 14 | BUT MY SENSE IS THAT I DON'T THINK ALL OF IT COMES IN, |
| 05:05PM | 15 | MR. FLEURMONT.  I'M GOING TO LOOK AT THIS AND SEE WHAT |
| 05:05PM | 16 | PORTIONS. |
| 05:05PM | 17 | SO YOU CAN STOP READING THE TRANSCRIPTS, MS. VOLKAR. |
| 05:05PM | 18 | BUT I THINK I'M PROBABLY GOING TO GRANT THE MOTION AS TO |
| 05:05PM | 19 | SOME PORTIONS, BUT IT'S NOT GOING TO BE A WHOLESALE GRANT.  I |
| 05:05PM | 20 | THINK THERE WILL BE SOME LIMITATIONS TO IT, IF I COULD TELL YOU |
| 05:05PM | 21 | THAT. |
| 05:05PM | 22 | MR. FLEURMONT:  UNDERSTOOD, YOUR HONOR. |
| 05:05PM | 23 | MS. VOLKAR:  THANK YOU, YOUR HONOR.  VERY HELPFUL. |
| 05:05PM | 24 | THE COURT:  YOU BET. |
| 05:05PM | 25 | AS TO 1165, LET ME JUST SAY THAT I'VE LOOKED AT THIS. |

| | | |
|---|---|---|
| 05:05PM | 1 | MR. BOSTIC, I THINK YOU'RE RESPONSIBLE FOR THIS.  THANK |
| 05:05PM | 2 | YOU FOR YOUR COMMENTS ON THIS. |
| 05:05PM | 3 | AS TO THE MOTION TO ADMIT THIS, I'VE LOOKED THIS OVER, |
| 05:06PM | 4 | CONSIDERED THE ARGUMENTS OF COUNSEL.  I'M GOING TO ALLOW IT TO |
| 05:06PM | 5 | COME IN.  I DO THINK THAT THERE WAS, THERE WAS TESTIMONY ABOUT |
| 05:06PM | 6 | DR. ASIN AND THE WITNESS TESTIFIED AS SHE DID ABOUT HER TEST |
| 05:06PM | 7 | RESULTS. |
| 05:06PM | 8 | I DID ALLOW THE GOVERNMENT TO GET IN CERTAIN EVIDENCE AND |
| 05:06PM | 9 | DOCUMENTS AS I THINK THE DEFENSE POINTS OUT HERE.  I DO THINK |
| 05:06PM | 10 | IT'S APPROPRIATE TO ALLOW THIS TO COME IN.  THERE IS A 401 |
| 05:06PM | 11 | THRESHOLD OF RELEVANCE THAT HAS BEEN MET. |
| 05:06PM | 12 | UNDER 403, I DO THINK THAT PROBATIVE VALUE OUTWEIGHS ANY |
| 05:06PM | 13 | PREJUDICIAL VALUE.  THE PARTIES HAVE TALKED ABOUT THAT. |
| 05:06PM | 14 | SO I AM GOING TO GRANT THE MOTION AS TO THAT.  THAT WILL |
| 05:06PM | 15 | BE ALLOWED TO COME IN.  SO THANK YOU. |
| 05:06PM | 16 | (DEFENDANT'S EXHIBIT 14259 WAS RECEIVED IN EVIDENCE.) |
| 05:06PM | 17 | THE COURT:  YES, MR. BOSTIC? |
| 05:06PM | 18 | MR. BOSTIC:  IS THE COURT CONSIDERING WHETHER TO |
| 05:06PM | 19 | REDACT THAT ONE LINE WHERE IT SAYS THAT DR. ASIN -- I FORGET |
| 05:07PM | 20 | WHAT THE PHRASE IS, I DON'T HAVE IT IN FRONT OF ME.  BUT |
| 05:07PM | 21 | DR. ASIN HAD NO PROBLEM WITH THE PROCESS. |
| 05:07PM | 22 | THE COURT:  RIGHT. |
| 05:07PM | 23 | MR. BOSTIC:  MY CONCERN IS THAT MIGHT BE PORTRAYED |
| 05:07PM | 24 | AS THE DOCTOR HAVING NO CONCERNS ABOUT THE ACCURACY OF THE TEST |
| 05:07PM | 25 | OR THAT MIGHT CAUSE CONFUSION IN THE JURY. |

05:07PM   1           THE COURT:  YEAH, FAIR QUESTION.

05:07PM   2       SO WHEN I -- LET ME GET THE LANGUAGE.  I THINK IT'S

05:07PM   3   PROTOCOL.  I THINK IT'S PROTOCOL.  I THOUGHT ABOUT THAT, AND IN

05:07PM   4   GRANTING THE MOTION, I THOUGHT THAT THESE LAWYERS ARE

05:07PM   5   INTELLIGENT ENOUGH TO KNOW THAT WHEN THEY MAKE THEIR ARGUMENTS,

05:07PM   6   IF THEY WISH, TO INFORM THE JURY THE DIFFERENCE BETWEEN TEST

05:07PM   7   RESULTS AND A PROTOCOL.

05:07PM   8       AND I THINK THAT -- I GUESS THAT'S MY ANSWER.

05:07PM   9           MR. BOSTIC:  THANK YOU.  I JUST WANT TO MAKE SURE

05:07PM  10   THE COURT HAD CONSIDERED IT, YOUR HONOR.  SUBMITTED.

05:07PM  11           THE COURT:  GREAT.  ALL RIGHT.  THANK YOU.

05:07PM  12       ANYTHING FURTHER?  THANK YOU VERY MUCH.  THANK YOU.

05:07PM  13       ANYTHING FURTHER BEFORE WE BREAK FOR THE DAY FROM EITHER

05:07PM  14   TEAM?

05:07PM  15           MR. BOSTIC:  NOT FROM THE GOVERNMENT, YOUR HONOR.

05:08PM  16           THE COURT:  OKAY.  SO WE'LL SEE EACH OTHER NEXT, IS

05:08PM  17   IT FRIDAY?

05:08PM  18           MR. DOWNEY:  FRIDAY AT 9:00.

05:08PM  19           THE COURT:  OKAY.  THANK YOU.

05:08PM  20           THE CLERK:  COURT IS ADJOURNED.

05:08PM  21       (COURT ADJOURNED AT 5:08 P.M.)

         22

         23

         24

         25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076
17

18       _____
19       LEE-ANNE SHORTRIDGE, CSR, CRR
         CERTIFICATE NUMBER 9595
20

21                 DATED:  NOVEMBER 30, 2021

22

23

24

25

8214

```
 1
 2                    UNITED STATES DISTRICT COURT
 3                  NORTHERN DISTRICT OF CALIFORNIA
 4                        SAN JOSE DIVISION
 5
      UNITED STATES OF AMERICA,      )   CR-18-00258-EJD
 6                                   )
                      PLAINTIFF,     )   SAN JOSE, CALIFORNIA
 7                                   )
             VS.                     )   VOLUME 41
 8                                   )
      ELIZABETH A. HOLMES,           )   DECEMBER 3, 2021
 9                                   )
                      DEFENDANT.     )   PAGES 8214 - 8305
10    _____)
11
                    TRANSCRIPT OF TRIAL PROCEEDINGS
12              BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13
      A P P E A R A N C E S:
14
      FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                           BY:  JOHN C. BOSTIC
                                  JEFFREY B. SCHENK
16                           150 ALMADEN BOULEVARD, SUITE 900
                             SAN JOSE, CALIFORNIA 95113
17
                             BY:  ROBERT S. LEACH
18                                KELLY VOLKAR
                             1301 CLAY STREET, SUITE 340S
19                           OAKLAND, CALIFORNIA 94612
20         (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21
      OFFICIAL COURT REPORTERS:
22                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
                             CERTIFICATE NUMBER 8074
23                           LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595
24
           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25               TRANSCRIPT PRODUCED WITH COMPUTER
```

A P P E A R A N C E S: (CONT'D)


FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                        BY:  KEVIN M. DOWNEY
                             LANCE A. WADE
                             AMY SAHARIA
                             KATHERINE TREFZ
                             SEEMA ROPER
                             J.R. FLEURMONT
                             RICHARD CLEARY
                             PATRICK LOOBY
                        725 TWELFTH STREET, N.W.
                        WASHINGTON, D.C. 20005

                        LAW OFFICE OF JOHN D. CLINE
                        BY:  JOHN D. CLINE
                        ONE EMBARCADERO CENTER, SUITE 500
                        SAN FRANCISCO, CALIFORNIA 94111

```
         1    SAN JOSE, CALIFORNIA                    DECEMBER 3, 2021

09:06AM  2                      P R O C E E D I N G S

09:06AM  3         (COURT CONVENED AT 9:06 A.M.)

09:06AM  4         (JURY OUT AT 9:06 A.M.)

09:06AM  5              THE COURT:  WE ARE ON THE RECORD IN THE HOLMES

09:06AM  6    MATTER.  ALL COUNSEL ARE PRESENT.  MS. HOLMES IS PRESENT.

09:06AM  7         GOOD MORNING.  WE'RE OUTSIDE OF THE PRESENCE OF THE JURY.

09:06AM  8    TODAY WE RESERVED THIS MORNING.  LET ME INDICATE THAT WE JUST

09:06AM  9    HAVE THIS MORNING TO HAVE THIS DISCUSSION.  WE WON'T BE IN

09:06AM 10    SESSION THIS AFTERNOON.

09:06AM 11         BUT WE SCHEDULED THIS MORNING JUST TO HAVE A HIGH LEVEL,

09:07AM 12    AS I DESCRIBED IT, A HIGH LEVEL DISCUSSION REGARDING YOUR JURY

09:07AM 13    INSTRUCTIONS AND YOUR SUBMISSIONS, AND I'VE RECEIVED THE

09:07AM 14    SUBMISSIONS.  I'LL ASK A COUPLE OF QUESTIONS ABOUT THAT, AND

09:07AM 15    THEN WE CAN JUST HAVE A CONVERSATION ABOUT THOSE.

09:07AM 16         I DO WANT TO TALK ABOUT ONE EVIDENTIARY ISSUE, AND THIS IS

09:07AM 17    IN LIGHT OF THE COURT'S RULING ON THE MOTION TO RECONSIDER.  I

09:07AM 18    THINK I ORALLY GAVE YOU AN ORDER REGARDING, MR. BOSTIC, RELATED

09:07AM 19    TO YOUR RESPONSE TO I THINK IT WAS TX 14259, AND I INDICATED I

09:07AM 20    WOULD ALLOW THAT TO BE ADMITTED.

09:07AM 21         LET ME INDICATE THAT I THINK THAT SHOULD BE DONE IN FRONT

09:07AM 22    OF THE JURY.

09:07AM 23         SO I'M JUST POINTING TO THE DEFENSE.  YOU SHOULD, AT SOME

09:07AM 24    POINT IN TIME DURING YOUR CASE, SEEK TO ADMIT THAT IN FRONT OF

09:08AM 25    THE JURY BASED ON THE COURT'S, THE COURT'S RULING.
```

09:08AM 1          MR. DOWNEY:  UNDERSTOOD, YOUR HONOR.

09:08AM 2          THE COURT:  THERE'S NOT A DEARTH OF BINDERS, LET ME

09:08AM 3   JUST SAY THAT AT THE OUTSET.

09:08AM 4          MS. SAHARIA:  WE SUFFER FROM THE SAME PROBLEM.

09:08AM 5          THE COURT:  BUT YOU HAVE MORE SPACE AT YOUR TABLE.

09:08AM 6      SO I DID RECEIVE, AND I KNOW YOU EXCHANGED YOUR 1176,

09:08AM 7   WHICH IS THE GOVERNMENT'S REVISED PROPOSED INSTRUCTIONS, AND

09:08AM 8   1174, WHICH ARE MS. HOLMES'S REVISED INSTRUCTIONS.

09:08AM 9      AS I WENT THROUGH THOSE REVISIONS AND LOOKED BACK ON 804

09:08AM 10  AND THE PREVIOUS SUBMISSIONS, OF COURSE THERE ARE SOME CHANGES

09:09AM 11  NOW.  AND I DON'T KNOW IF YOU'VE HAD AN OPPORTUNITY TO MEET AND

09:09AM 12  CONFER.  I DOUBT YOU HAVE BECAUSE THESE WERE SUBMITTED HERE,

09:09AM 13  YOUR MOST RECENTS WERE SUBMITTED JUST YESTERDAY BY 10:00 A.M.,

09:09AM 14  AND I DOUBT SERIOUSLY WHETHER YOU'VE HAD A CHANCE TO DISCUSS

09:09AM 15  EACH OF THE CHANGES.

09:09AM 16      BUT AS I LOOK AT YOUR RECENT SUBMISSIONS, IT DOES SEEM

09:09AM 17  THAT SOME OF THE OBJECTIONS, MS. SAHARIA, THAT YOU HAVE MADE IN

09:09AM 18  YOUR PLEADINGS MAY HAVE BEEN -- THIS IS JUST A HIGH LEVEL

09:09AM 19  REVIEW -- IT SEEMS LIKE THEY MAY HAVE BEEN RESOLVED BY SOME OF

09:09AM 20  THE GOVERNMENT'S MORE UPDATED AND RECENT FILINGS OF THEIR

09:09AM 21  INSTRUCTIONS.  WE'LL SEE.  WE'LL SEE.

09:09AM 22      SO THIS MORNING IS I DON'T ANTICIPATE THAT WE WILL ACHIEVE

09:09AM 23  A FINAL FINALITY OF THE INSTRUCTIONS, BUT I APPRECIATE THE

09:09AM 24  OPPORTUNITY TO HEAR FROM BOTH SIDES JUST AT A HIGH LEVEL AS TO

09:09AM 25  WHAT YOU THINK THIS INSTRUCTION SHOULD BE.

| | | |
|---|---|---|
| 09:10AM | 1 | WE'RE STILL IN THE DEFENSE CASE, AND THERE MAY BE |
| 09:10AM | 2 | ADDITIONAL INSTRUCTIONS THAT WOULD BE FORTHCOMING BASED ON THE |
| 09:10AM | 3 | DEFENSE ADMISSIONS OF OTHER WITNESSES OR OTHER EVIDENCE.  SO |
| 09:10AM | 4 | WE'LL BEAR THAT IN MIND. |
| 09:10AM | 5 | SO THIS MORNING WHAT I THOUGHT WE WOULD DO -- OR LET ME |
| 09:10AM | 6 | ASK YOU FIRST, HAVE YOU HAD ANY DISCUSSION?  ARE THERE ANY |
| 09:10AM | 7 | THINGS THAT EITHER SIDE WANTS TO SAY BEFORE WE JUST PORE |
| 09:10AM | 8 | THROUGH -- YES, MS. VOLKAR.  THANK YOU. |
| 09:10AM | 9 | MS. VOLKAR:  YES, YOUR HONOR. |
| 09:10AM | 10 | ONE ESSENTIALLY ADMINISTRATIVE POINT.  I DO NOT BELIEVE |
| 09:10AM | 11 | THAT EITHER OF THE SIDES HAVE HAD DISCUSSION TO ANSWER YOUR |
| 09:10AM | 12 | QUESTION, BUT THE GOVERNMENT DOES WANT TO SAY, WITH OUR AMENDED |
| 09:10AM | 13 | FILING YESTERDAY, WE ATTACHED THE VERDICT FORM, THE SAME |
| 09:10AM | 14 | VERDICT FORM WE HAD SUBMITTED TO THE COURT IN MAY.  AND AS I |
| 09:10AM | 15 | WAS REVIEWING THAT THIS MORNING, I DID REALIZE THAT IN ERROR WE |
| 09:10AM | 16 | INCLUDED COUNT NINE -- |
| 09:10AM | 17 | THE COURT:  RIGHT. |
| 09:10AM | 18 | MS. VOLKAR:  -- AS WE DID INITIALLY, AND I JUST WANT |
| 09:11AM | 19 | TO SAY THAT WAS INADVERTENT. |
| 09:11AM | 20 | WE REMOVED COUNT NINE THROUGHOUT THE AMENDED JURY |
| 09:11AM | 21 | INSTRUCTIONS, AND TO THE EXTENT THAT THE COURT WOULD LIKE US TO |
| 09:11AM | 22 | SUBMIT AN AMENDED VERDICT FORM REFLECTING THAT AS WELL, WE |
| 09:11AM | 23 | STAND READY TO DO SO.  BUT BEFORE WE GOT STARTED WITH OUR |
| 09:11AM | 24 | DISCUSSION, I WANTED TO BE ABSOLUTELY CLEAR THAT THE VERDICT |
| 09:11AM | 25 | FORM WE SUBMITTED ERRONEOUSLY INCLUDES COUNT NINE. |

09:11AM 1          THE COURT:  THANK YOU.  AND I EXPECT THERE WILL BE

09:11AM 2    SOME MINOR CHANGES LIKE THAT.  THANK YOU FOR DRAWING THAT TO MY

09:11AM 3    ATTENTION.  THAT'S WHY WE'RE HAVING THIS DISCUSSION THIS

09:11AM 4    MORNING.

09:11AM 5          MS. VOLKAR:  THANK YOU.

09:11AM 6          THE COURT:  SO WHAT I PROPOSE TO DO, IF YOU'D

09:11AM 7    LIKE -- DO YOU HAVE THOUGHTS ABOUT HOW YOU WOULD LIKE TO

09:11AM 8    PROCEED THE ANALYSIS?

09:11AM 9       MS. SAHARIA, GOOD MORNING.

09:11AM 10         MS. SAHARIA:  GOOD MORNING, YOUR HONOR.

09:11AM 11      WE HAVE DIVIDED THE INSTRUCTION AMONGST MYSELF,

09:11AM 12   MR. CLEARY, AND MR. LEMENS KIND OF ON A TAG TEAM BASIS.

09:11AM 13      BUT I DON'T KNOW WHAT THE COURT HAS IN MIND, WHETHER YOU

09:11AM 14   WANT TO PROCEED INSTRUCTION BY INSTRUCTION OR WHETHER THERE'S

09:12AM 15   SOME YOU WANT TO TALK ABOUT NOW AND SOME YOU WANT TO POSTPONE.

09:12AM 16      THE PARTIES HAVE NOT MET AND CONFERRED.  I DO THINK A FEW

09:12AM 17   OF OUR OBJECTIONS HAVE BEEN RESOLVED.  I THINK WE HAVE SOME NEW

09:12AM 18   ONES BASED ON THEIR AMENDMENTS, WHICH WE CAN TALK THROUGH

09:12AM 19   TODAY.

09:12AM 20      EXCUSE ME.  I DO JUST WANT TO MAKE CLEAR THAT WE HAVE NOT

09:12AM 21   OBJECTED TO THE INSTRUCTIONS RIGHT NOW BASED ON THE STATE OF

09:12AM 22   THE RECORD, AND BECAUSE THE EVIDENCE IS STILL OPEN AND THE

09:12AM 23   DEFENSE CASE IS STILL OPEN, AND I DO EXPECT THAT THERE WILL BE

09:12AM 24   A SMALLER NUMBER OF THINGS TO WORK THROUGH AT THE CLOSE OF

09:12AM 25   EVIDENCE RELATED TO THE OBJECTIONS AND THE INSTRUCTIONS.

09:12AM  1      SO I JUST WANTED TO KIND OF PUT THAT MARKER DOWN TO MAKE

09:12AM  2  CLEAR THAT WE RESERVE THE RIGHT TO PROPOSE ADDITIONAL

09:12AM  3  INSTRUCTIONS OR TO -- WE THINK THERE WILL NEED TO BE A SUMMARY

09:12AM  4  OF THE ALLEGATIONS IN THE INDICTMENT THAT GOES INTO THESE

09:12AM  5  INSTRUCTIONS FOR THE JURY, AND WE THINK IT'S BEST TO TAKE THAT

09:12AM  6  UP AT THE CLOSE OF EVIDENCE.

09:12AM  7      THE COURT:  OKAY.

09:13AM  8      MS. VOLKAR:  YOUR HONOR, FOR THE GOVERNMENT'S

09:13AM  9  PART -- KELLY VOLKAR ON BEHALF OF THE UNITED STATES -- I WILL

09:13AM  10  BE SHARING THIS WITH MY COLLEAGUE, MR. LEACH.  SO I'LL TAKE

09:13AM  11  SOME INSTRUCTIONS AND HE'LL TAKE OTHERS.

09:13AM  12      IN MY MIND, I SORT OF GROUPED THE INSTRUCTIONS INTO SORT

09:13AM  13  OF THE BATCH WHERE THERE'S VERY LITTLE OR NO DISPUTE BETWEEN

09:13AM  14  THE PARTIES, WHICH IS A LOT OF THE STANDARD DUTY TO DELIBERATE

09:13AM  15  INSTRUCTIONS, AND THEN I THINK IN MY MIND THERE'S THE MORE

09:13AM  16  SUBSTANTIVE INSTRUCTIONS WHERE THERE'S MORE SIGNIFICANT

09:13AM  17  DISPUTES BETWEEN THE PARTIES.

09:13AM  18      IT CERTAINLY IS UP TO YOUR HONOR, BUT I THOUGHT THAT THE

09:13AM  19  TIME TODAY MIGHT BE BEST SPENT ON THOSE MORE SUBSTANTIVE ONES.

09:13AM  20  I IMAGINE IT WILL BE HARDER FOR THE PARTIES THROUGH MEET AND

09:13AM  21  CONFER TO COME TO REAL AGREEMENT IN THAT AREA WITHOUT FURTHER

09:13AM  22  GUIDANCE FROM THE COURT; WHEREAS ON THOSE, AGAIN, I'LL CALL

09:13AM  23  THEM MORE RUN-OF-THE MILL INSTRUCTIONS, SUCH AS THE DUTY TO

09:13AM  24  DELIBERATE, ET CETERA, IT MIGHT BE EASIER FOR THE PARTIES TO

09:14AM  25  COME TO AGREEMENTS THERE.

09:14AM  1          THE COURT:  WELL, THANK YOU.

09:14AM  2      I WAS LOOKING AND I THOUGHT WE PROBABLY -- TO YOUR POINT,

09:14AM  3  MS. VOLKAR, WE PROBABLY DON'T NEED TO HAVE SERIOUS DISCUSSION

09:14AM  4  THIS MORNING ABOUT THE 7 SERIES, ABOUT THE NINTH CIRCUIT MODEL

09:14AM  5  7 SERIES, WHICH ARE THE FINAL INSTRUCTIONS, DUTY TO DELIBERATE,

09:14AM  6  ET CETERA.  I KNOW THERE ARE SOME SUGGESTED AMENDMENTS TO

09:14AM  7  THOSE, BUT IT SEEMS LIKE THE TWO OR THREE HOURS WE HAVE THIS

09:14AM  8  MORNING, MAYBE IT WOULD BE BETTER SPENT ON --

09:14AM  9          MS. SAHARIA:  THAT'S FINE, YOUR HONOR.

09:14AM  10         THE COURT:  -- SOME OF THE MORE SUBSTANTIVE.  DO YOU

09:14AM  11  AGREE WITH THAT?

09:14AM  12         MS. SAHARIA:  I DO, AS LONG AS AT SOME POINT, IF WE

09:14AM  13  NEED TO, WE HAVE THE OPPORTUNITY TO STATE ON THE RECORD ANY

09:14AM  14  OBJECTIONS THAT WE MAY HAVE TO THE INSTRUCTIONS AS TO THE 7

09:14AM  15  SERIES.  BUT I AGREE THAT DOES MAKE SENSE TO FOCUS ON THE

09:14AM  16  SUBSTANTIVE INSTRUCTIONS TODAY.

09:14AM  17         THE COURT:  RIGHT.  AND LET ME SAY, THIS IS NOT THE

09:14AM  18  ONLY DISCUSSION THAT WE'RE GOING TO HAVE.

09:14AM  19         MS. SAHARIA:  UNDERSTOOD.

09:14AM  20         THE COURT:  THIS IS NOT THE ONLY CHARGING CONFERENCE

09:14AM  21  THAT WE'RE GOING TO HAVE.  THIS IS, AS I ADVERTISED IT

09:14AM  22  PREVIOUSLY, JUST AN OPPORTUNITY TO HAVE A HIGH LEVEL DISCUSSION

09:14AM  23  ABOUT WHERE WE ARE.

09:14AM  24         MS. SAHARIA:  UNDERSTOOD, YOUR HONOR.

09:15AM  25         THE COURT:  SO YOU'LL HAVE AN OPPORTUNITY TO MAKE

09:15AM   1   ANY OBJECTIONS AS TO THE FINAL INSTRUCTIONS YOU WISH.  THIS IS

09:15AM   2   JUST INFORMATIVE FOR ME, AND FOR EACH OF YOU I HOPE.

09:15AM   3       OKAY.

09:15AM   4           MS. VOLKAR:  YOUR HONOR, I WILL JUST SAY THAT I

09:15AM   5   THINK THE SAME MAY HOLD TRUE FOR THE 3 SERIES AS WELL.  AND IN

09:15AM   6   THE 3 SERIES -- I THINK THERE'S A HANDFUL OF 4 SERIES, SUCH AS

09:15AM   7   THE DUAL ROLE EXPERT TESTIMONY, AND THOSE WERE THE INSTRUCTIONS

09:15AM   8   THAT I HAD IN MIND WHEN I WAS THINKING THAT THE PARTIES DON'T

09:15AM   9   SEEM TO BE PARTICULARLY FAR APART ON VERY MANY OF THOSE.

09:15AM  10           THE COURT:  RIGHT.

09:15AM  11       DO YOU AGREE?

09:15AM  12           MS. SAHARIA:  I THINK THAT'S LARGELY RIGHT,

09:15AM  13   YOUR HONOR.

09:15AM  14       THERE'S A FEW 3 SERIES INSTRUCTIONS THAT I THINK THE

09:15AM  15   GOVERNMENT HAS OMITTED FROM ITS INSTRUCTIONS.  BUT APART FROM

09:15AM  16   THOSE ONES, I THINK THE REAL DISPUTE IS, YOU KNOW, LARGELY THE

09:15AM  17   SUBSTANTIVE INSTRUCTIONS.

09:15AM  18           THE COURT:  RIGHT.

09:15AM  19       AND LET ME SAY, AS I LOOKED AT SOME OF THE -- AT YOUR

09:15AM  20   INSTRUCTIONS, I DO NOTE THAT I ALSO CALLED ATTENTION TO THE

09:15AM  21   PRELIMINARY INSTRUCTIONS THAT THE COURT GAVE, AND THE

09:15AM  22   PRELIMINARY INSTRUCTIONS, AS I REVIEWED THEM, CONTAINED MANY OF

09:16AM  23   THE -- SOME OF THE CHANGES THAT THE DEFENSE ADVOCATED FOR.

09:16AM  24       AND WHEN I WENT THROUGH THOSE, IT SEEMED LIKE SOME OF

09:16AM  25   THESE ARGUMENTS MAY -- YOU'LL TELL ME, MS. SAHARIA, BUT IT

| | | |
|---|---|---|
| 09:16AM | 1 | SEEMS LIKE SOME OF THESE ARGUMENTS MAY BE RESOLVED BY THAT SAME |
| 09:16AM | 2 | ANALYSIS, BUT YOU MIGHT HAVE SOME NEW ARGUMENTS AS WELL. |
| 09:16AM | 3 | MS. SAHARIA: THAT'S RIGHT. I THINK THE COURT -- |
| 09:16AM | 4 | SOME OF OUR OBJECTIONS WE MADE IN CONNECTION WITH OUR |
| 09:16AM | 5 | PRELIMINARY INSTRUCTIONS, AND THE COURT REJECTED SOME OF THEM |
| 09:16AM | 6 | AND ACCEPTED SOME OF THEM, AND SO I'M HAPPY TO POINT THE COURT |
| 09:16AM | 7 | KIND OF AS APPROPRIATE AS WE GO ALONG. |
| 09:16AM | 8 | THE COURT: OKAY. WELL -- |
| 09:16AM | 9 | MS. VOLKAR: THE SAME FOR THE GOVERNMENT, YOUR |
| 09:16AM | 10 | HONOR. THE PRELIMINARY INSTRUCTIONS, SOME OF THE DEFENSE'S |
| 09:16AM | 11 | ADDITIONS WERE GRANTED OVER GOVERNMENT OBJECTION. BUT FROM THE |
| 09:16AM | 12 | GOVERNMENT'S PERSPECTIVE, WE SORT OF START AT THE PLACE WHERE |
| 09:16AM | 13 | THE COURT MAY FOLLOW THE SAME ANALYSIS, AND WE'RE HAPPY TO |
| 09:16AM | 14 | REARGUE THEM, BUT WE ALSO UNDERSTAND THAT OUR OBJECTIONS ARE |
| 09:16AM | 15 | NOTED, AND WE'RE HAPPY TO MOVE ON TO MORE SUBSTANTIVE ISSUES. |
| 09:17AM | 16 | THE COURT: OKAY. THANK YOU. |
| 09:17AM | 17 | WHERE SHOULD WE BEGIN, MS. SAHARIA? |
| 09:17AM | 18 | MS. SAHARIA: WELL, I HAVE PRIMARY RESPONSIBILITY |
| 09:17AM | 19 | FOR THE SUBSTANTIVE INSTRUCTIONS, AT LEAST THE CORE ONES, |
| 09:17AM | 20 | CONSPIRACY AND WIRE FRAUD. |
| 09:17AM | 21 | SO IF THE COURT WANTS TO START THERE, I THINK WE COULD |
| 09:17AM | 22 | START WITH CONSPIRACY. |
| 09:17AM | 23 | THE COURT: LET'S SEE. I THINK THIS IS 820? |
| 09:17AM | 24 | MS. SAHARIA: CORRECT. |
| 09:17AM | 25 | THE COURT: THIS IS IN DOCKET 1174. THIS IS FOUND |

09:17AM  1    ON PAGE 7.

09:17AM  2         AND IN DOCUMENT 1176, THIS IS FOUND ON PAGE 15, I BELIEVE.

09:17AM  3              MS. SAHARIA:  YES, CORRECT.

09:17AM  4              THE COURT:  PLEASE SING OUT AND CORRECT ME.

09:17AM  5              MS. SAHARIA:  YES, I HAVE THOSE TWO DOCUMENTS IN

09:17AM  6    FRONT OF ME AS WELL.

09:17AM  7              THE COURT:  SO SING OUT IF YOU NEED ME TO GO TO A

09:17AM  8    DIFFERENT AREA OR A DIFFERENT LOCATION SO I CAN TRACK.

09:17AM  9         ALL RIGHT.  SO, MS. SAHARIA, I'M AT PAGE 7 AND YOUR 820

09:18AM  10   PROPOSED NUMBER 27 THROUGH 41, I THINK, IS WHAT YOU ADVOCATE.

09:18AM  11             MS. SAHARIA:  CORRECT, YOUR HONOR.

09:18AM  12             THE COURT:  I THINK THAT'S FOUND ON PAGE 36 OF YOUR

09:18AM  13   ORIGINAL SUBMISSION 809; IS THAT CORRECT?

09:18AM  14             MS. SAHARIA:  I WILL TELL YOU IN A MOMENT,

09:18AM  15   YOUR HONOR.

09:18AM  16        YES, THAT'S CORRECT.

09:18AM  17             THE COURT:  AND ALSO YOU CITE TO 41, WHICH IS ON

09:18AM  18   PAGE 56 OF 809.

09:19AM  19             MS. SAHARIA:  CORRECT.

09:19AM  20             THE COURT:  YOU'RE THERE?

09:19AM  21             MS. VOLKAR:  I AM, YOUR HONOR.  THANK YOU.

09:19AM  22             THE COURT:  ALL RIGHT.

09:19AM  23        MS. SAHARIA.

09:19AM  24             MS. SAHARIA:  SO I THINK THE FIRST ISSUE IS ONE THAT

09:19AM  25   I THINK PERMEATES THE INSTRUCTIONS, WHICH IS THE FACT THAT WE

09:19AM  1   HAVE TWO DIFFERENT CHARGED CONSPIRACIES AND TWO DIFFERENT

09:19AM  2   CHARGED SCHEMES TO DEFRAUD.

09:19AM  3       THE GOVERNMENT HAS ADDED TO ITS REVISED INSTRUCTIONS ON

09:19AM  4   PAGE 15 AT ECF 1176 A BRIEF DESCRIPTION OF THE TWO CHARGED

09:19AM  5   CONSPIRACIES, THE INVESTOR CONSPIRACY AND THE PAYING PATIENTS

09:19AM  6   CONSPIRACY.

09:19AM  7       BUT OUR POSITION IS THAT IT'S GOING TO BE VERY COMPLICATED

09:19AM  8   AND CONFUSING FOR THE JURY TO HAVE THE TWO CONSPIRACIES AND THE

09:19AM  9   TWO SCHEMES TO DEFRAUD CHARGED IN THE SAME INSTRUCTION,

09:19AM 10   PARTICULARLY WHEN WE GET TO THINGS LIKE PINKERTON LIABILITY AND

09:19AM 11   COSCHEMER LIABILITY -- WHICH WE OBJECT TO THOSE INSTRUCTIONS --

09:20AM 12   BUT ASSUMING THE COURT IS GOING TO GIVE THOSE INSTRUCTIONS,

09:20AM 13   IT'S GOING TO GET VERY COMPLICATED, WE THINK, FOR THE JURY TO

09:20AM 14   UNDERSTAND HOW THE DIFFERENT CHARGES RELATE TO THE DIFFERENT

09:20AM 15   CONSPIRACIES OR THE SCHEMES TO DEFRAUD, AND THERE'S A RISK OF

09:20AM 16   THE JURY KIND OF MIXING AND MATCHING ACROSS THE CONSPIRACIES ON

09:20AM 17   THE SCHEMES.

09:20AM 18       I ALSO THINK WHEN WE GET TO WIRE FRAUD IT WOULD BE -- AND

09:20AM 19   AGAIN, OUR POSITION IS THAT THERE SHOULD BE A SUMMARY OF THE

09:20AM 20   ALLEGED MISSTATEMENTS IN THE JURY INSTRUCTIONS, WHICH WE WILL

09:20AM 21   PROPOSE AT THE CLOSE OF EVIDENCE, THAT IT'S GOING TO BE

09:20AM 22   COMPLICATED TO DO ALL OF THAT IN ONE WIRE FRAUD INSTRUCTION, AS

09:20AM 23   OPPOSED TO ONE WIRE FRAUD INSTRUCTION ON THE PATIENT COUNTS AND

09:20AM 24   ONE WIRE FRAUD INSTRUCTION ON THE INVESTOR COUNTS.

09:20AM 25       SO JUST OUR FIRST KIND OF OVERALL POINT IS THAT WE THINK

09:20AM 1    THE COURT SHOULD INSTRUCT SEPARATELY ON CONSPIRACY TO COMMIT

09:20AM 2    WIRE FRAUD AGAINST INVESTORS, AND THEN SEPARATELY ON CONSPIRACY

09:20AM 3    TO COMMIT WIRE FRAUD AGAINST PAYING PATIENTS.

09:21AM 4        SO THAT'S KIND OF MY OVERALL POINT THAT I WOULD MAKE.

09:21AM 5        I DON'T KNOW, DO YOU WANT TO GO POINT BY POINT?  SHOULD

09:21AM 6    MS. VOLKAR RESPOND TO THAT?

09:21AM 7            THE COURT:  YEAH, LET ME HEAR FROM MS. VOLKAR

09:21AM 8    INITIALLY.

09:21AM 9        YES, MS. VOLKAR.

09:21AM 10           MS. VOLKAR:  THANK YOU, YOUR HONOR.

09:21AM 11       THE GOVERNMENT'S POSITION, AND IT MAY BE REPEATED OFTEN

09:21AM 12   TODAY, IS THIS IS A WIRE FRAUD CASE AND A CONSPIRACY CASE.  AND

09:21AM 13   THE COURT HAS HAD MANY WIRE FRAUD AND CONSPIRACY CASES, MOST

09:21AM 14   RECENTLY THE CHANG CASE, THE KRAMER CASE.  I KNOW THE COURT IS

09:21AM 15   VERY FAMILIAR WITH THOSE.

09:21AM 16       ONE OF THE GOVERNMENT'S MAIN OBJECTIONS TO THE FORMAT THAT

09:21AM 17   THE DEFENSE HAS PROPOSED IS BREAKING OUT WHAT COULD BE IN ONE

09:21AM 18   INSTRUCTION ACROSS ESSENTIALLY 10 TO 15 PAGES AND BREAKING DOWN

09:21AM 19   AND ADDING TO THE MODEL INSTRUCTION SIGNIFICANT DETAIL THAT, IN

09:21AM 20   THE GOVERNMENT'S VIEW, IS REALLY UNNECESSARY.

09:21AM 21       THE MODEL INSTRUCTIONS HAVE BEEN TRIED AND TRUE, AND THE

09:21AM 22   COURT HAS USED THEM OFTEN, AND WE THINK THAT THEY SHOULD

09:22AM 23   LARGELY CONTROL.

09:22AM 24       WHAT WE ADDED WAS ACTUALLY IN RESPONSE TO THE PARTIES'

09:22AM 25   MEET AND CONFER FOR THE PRELIMINARY INSTRUCTIONS, AND WE WENT

09:22AM 1   BACK TO THE COURT'S ORDER IN ECF 1006, AND AT THE TIME THE

09:22AM 2   PARTIES HAD AGREED ON THIS DESCRIPTION OF THE CHARGES AND WE

09:22AM 3   DID TAKE THE DEFENSE'S POINT THAT THE TIME PERIOD, FOR EXAMPLE,

09:22AM 4   SHOULD BE DESCRIBED IN THE INSTRUCTION.  BUT THE GOVERNMENT'S

09:22AM 5   POSITION IS THAT A BRIEF DESCRIPTION IS SUFFICIENT ALONG WITH

09:22AM 6   THE MODEL INSTRUCTION.

09:22AM 7       OF COURSE, THE PARTIES WILL HAVE LEAVE TO ARGUE WHAT THEY

09:22AM 8   WANT TO IN CLOSING ARGUMENTS, BUT FOR THE INSTRUCTIONS, THEY

09:22AM 9   SHOULD BE LEGALLY CORRECT, THEY SHOULD BE CLEAR FOR THE JURY,

09:22AM 10  AND THEY SHOULD BE BRIEF SO THAT THE JURY ISN'T HERE FOR HOURS

09:22AM 11  AND HOURS FOR INSTRUCTIONS.  IT'S NOT MEANT TO BE A LEGAL

09:22AM 12  TREATISE.  IT'S JUST MEANT TO INSTRUCT THEM ON THE LAW.

09:22AM 13      AND WITH THAT IN MIND, I THINK THAT THE -- WE'LL GET TO

09:22AM 14  SPECIFIC UNANIMITY EVENTUALLY, BUT IT'S VERY CLEAR IN

09:23AM 15  NINTH CIRCUIT CASE LAW, THE QUESTION IS, IS THERE A GENUINE

09:23AM 16  RISK OF JUROR CONFUSION?

09:23AM 17      AND I GUESS THIS IS WHERE THE GOVERNMENT DISAGREES PRETTY

09:23AM 18  STRONGLY WITH THE DEFENSE, BECAUSE I SEE NO GENUINE RISK FOR

09:23AM 19  JUROR CONFUSION HERE.  THERE ARE TWO SCHEMES.  THERE ARE TWO

09:23AM 20  CONSPIRACIES.  ONE RELATES TO INVESTORS.  ONE RELATES TO

09:23AM 21  PATIENTS.

09:23AM 22      I DON'T -- I GUESS I RESPECTFULLY DISAGREE THAT IT WOULD

09:23AM 23  BE CONFUSING TO THE JURY THAT, FOR EXAMPLE, WHETHER OR NOT THE

09:23AM 24  TRANSMISSION TO E.T. OF HER PATIENT TEST RESULTS RELATED TO THE

09:23AM 25  INVESTOR SCHEME TO DEFRAUD.  I THINK THE JURY IS SMARTER THAN

09:23AM 1    THAT.

09:23AM 2          MS. SAHARIA:  I MEAN, ON THAT POINT, THE

09:23AM 3    NINTH CIRCUIT INSTRUCTIONS EXPRESSLY CAUTION ON THINGS LIKE

09:23AM 4    PINKERTON LIABILITY AND COSCHEMER LIABILITY WHEN THERE'S TWO

09:23AM 5    CONSPIRACIES OR TWO SCHEMES, THAT IT'S ADVISABLE TO GIVE TWO

09:23AM 6    SEPARATE INSTRUCTIONS.  WE'RE GETTING A LITTLE BIT AHEAD OF

09:23AM 7    OURSELVES ON THAT PARTICULAR ISSUE.

09:23AM 8    BUT I'LL JUST REITERATE OUR POSITION BEING THAT WE DO

09:23AM 9    THINK THE COURT SHOULD INSTRUCT SEPARATELY ON BOTH CONSPIRACIES

09:24AM 10    AND BOTH SCHEMES.

09:24AM 11    I THINK THAT'S A LITTLE SEPARATE THAN THE OTHER ISSUE THAT

09:24AM 12    MS. VOLKAR ALLUDED TO, WHICH IS THAT THE DEFENSE INSTRUCTIONS

09:24AM 13    DIVIDED OUT THE INDIVIDUAL ELEMENTS OF CONSPIRACY AND WIRE

09:24AM 14    FRAUD, AND I DO UNDERSTAND THAT AT THE TIME OF THE PRELIMINARY

09:24AM 15    INSTRUCTIONS, THE COURT EXPRESSED SOME HESITATION TO DO -- TO

09:24AM 16    HAVE THAT LONGER RECITATION.

09:24AM 17    WE WOULD REQUEST THAT THE COURT DO SO, BUT I THINK THAT

09:24AM 18    ISSUE IS A LITTLE SEPARATE FROM THE ISSUE OF CHARGING

09:24AM 19    SEPARATELY AS TO THE TWO CONSPIRACIES AND THE TWO SCHEMES.

09:24AM 20          THE COURT:  ALL RIGHT.  THANK YOU.

09:24AM 21    AND I THINK -- ARE YOU STILL, MS. SAHARIA, ARE YOU STILL

09:24AM 22    PROPOSING YOUR INSTRUCTIONS THAT ARE IN 809?  OR HAVE THOSE

09:24AM 23    CHANGED?

09:24AM 24          MS. SAHARIA:  YES, YOUR HONOR, WE WOULD REQUEST THAT

09:24AM 25    THE COURT GIVE THE INSTRUCTIONS IN 809.

| | | |
|---|---|---|
| 09:24AM | 1 | THE COURT:  OKAY. |
| 09:24AM | 2 | MS. SAHARIA:  SO APART FROM THAT GENERAL OBJECTION, |
| 09:25AM | 3 | LET ME MOVE TO MORE SPECIFIC OBJECTIONS. |
| 09:25AM | 4 | LOOKING AT THE GOVERNMENT'S NEW PROPOSED 820 AT PAGE 15 |
| 09:25AM | 5 | WHERE THE GOVERNMENT ADDED THE BRIEF DESCRIPTION OF THE TWO |
| 09:25AM | 6 | CONSPIRACIES, WE DO THINK THAT IT WOULD BE, AT A MINIMUM, |
| 09:25AM | 7 | ADVISABLE TO TELL THE JURY, FOR INSTANCE, AT THE SECOND |
| 09:25AM | 8 | PARAGRAPH, "THE DEFENDANT IS CHARGED IN COUNT ONE OF THE |
| 09:25AM | 9 | INDICTMENT WITH CONSPIRING TO COMMIT WIRE FRAUD AGAINST |
| 09:25AM | 10 | INVESTORS AND THERANOS DURING THE PERIOD OF 2010 TO 2015." |
| 09:25AM | 11 | I DO THINK IT WOULD BE ADVISABLE TO SAY "AS DEFINED LATER |
| 09:25AM | 12 | IN THESE INSTRUCTIONS" OR "AS WIRE FRAUD IS DEFINED LATER IN |
| 09:25AM | 13 | THESE INSTRUCTIONS" TO MAKE CLEAR TO THE JURY THAT IT NEEDS |
| 09:25AM | 14 | TO -- THE CONSPIRACY NEEDS TO BE A CONSPIRACY TO COMMIT WIRE |
| 09:25AM | 15 | FRAUD AS THE COURT IS GOING TO DEFINE WIRE FRAUD FOR THE JURY |
| 09:25AM | 16 | SO THAT THE SPECIFIC INDICTMENT ALLEGATIONS THAT RELATES TO |
| 09:25AM | 17 | EACH OF THESE TWO CONSPIRACIES IS INCORPORATED INTO THE |
| 09:26AM | 18 | CONSPIRACY INSTRUCTIONS. |
| 09:26AM | 19 | THE COURT:  EXCUSE ME.  WOULDN'T THAT -- WHEN WE GET |
| 09:26AM | 20 | TO THE WIRE FRAUD -- AND I KNOW SOMETIMES WE GET AHEAD OF |
| 09:26AM | 21 | OURSELVES -- WHEN WE GET TO THAT, I'M JUST CURIOUS WHETHER THAT |
| 09:26AM | 22 | WIRE INSTRUCTION WILL SAY, "AS CHARGED, THE CONSPIRACY," AND |
| 09:26AM | 23 | THAT WILL DEFINE IT AND REFERENCE THE JURY TO THE CONSPIRACY |
| 09:26AM | 24 | SUCH THAT IT WOULD SOLVE THAT. |
| 09:26AM | 25 | MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR. |

09:26AM  1    I THINK THAT, AT LEAST AS THE WAY THAT I UNDERSTAND

09:26AM  2    CONSPIRACY AND WIRE FRAUD INSTRUCTIONS TO FIT TOGETHER, WIRE

09:26AM  3    FRAUD IS KIND OF THE FREE STANDING OFFENSE.  IT IS THE

09:26AM  4    SUBSTANTIVE OFFENSE THAT IS CHARGED, AND I DON'T THINK THAT IT

09:26AM  5    WOULD NECESSARILY MAKE SENSE FOR THE WIRE FRAUD INSTRUCTION TO

09:26AM  6    REFER BACK TO CONSPIRACY.  THE CONSPIRACY IS THE CONSPIRACY TO

09:26AM  7    COMMIT THAT SUBSTANTIVE OFFENSE.

09:26AM  8        SO I THINK, IF ANYTHING, IT'S THE CONSPIRACY INSTRUCTION

09:26AM  9    THAT SHOULD INCORPORATE THE LATER INSTRUCTION OF WIRE FRAUD.

09:27AM 10            THE COURT:  I SEE WHAT YOU'RE SAYING.  THE

09:27AM 11    CONSPIRACY SHOULD TALK ABOUT CONSPIRACY TO WHAT --

09:27AM 12            MS. SAHARIA:  EXACTLY.

09:27AM 13            THE COURT:  -- AND RELATING TO THE WIRE FRAUD.

09:27AM 14            MS. SAHARIA:  RIGHT, AND NOT JUST WIRE FRAUD IN THE

09:27AM 15    ABSTRACT, BUT WIRE FRAUD AS THE COURT IS GOING TO INSTRUCT THE

09:27AM 16    JURY LATER ON IN THE INSTRUCTIONS.

09:27AM 17            THE COURT:  OKAY.

09:27AM 18        MS. VOLKAR.

09:27AM 19            MS. VOLKAR:  YOUR HONOR, IF I UNDERSTAND MS. SAHARIA

09:27AM 20    CORRECTLY, I DON'T SEE ANY ISSUE WITH THE COURT ADDING THE -- I

09:27AM 21    THINK YOU DID THIS IN THE PRELIMINARY INSTRUCTIONS, "THE COURT

09:27AM 22    WILL DEFINE WIRE FRAUD FOR YOU IN A MOMENT."

09:27AM 23        I THINK THAT'S FINE.

09:27AM 24            THE COURT:  AND I THINK THAT'S WHAT I WAS REFERRING

09:27AM 25    TO AND WHAT I WAS REFERENCING, MS. SAHARIA.

09:27AM 1      I NEGLECTED TO BRING THE PRELIMINARY INSTRUCTIONS THAT I

09:27AM 2   GAVE.

09:27AM 3      THAT'S OKAY, ALYX.

09:27AM 4      MS. VOLKAR:  YOUR HONOR, I HAVE A COPY.  WOULD YOU

09:27AM 5   LIKE ME TO HAND IT UP?

09:27AM 6      THE COURT:  NO.  THAT'S FINE.  I HAVE PLENTY OF

09:27AM 7   BINDERS UP HERE.

09:27AM 8      (LAUGHTER.)

09:27AM 9      THE COURT:  I'LL HAVE TO REFERENCE IT, AND I THINK I

09:27AM 10  DID REFERENCE IT IN THAT WAY.  IS THAT OBJECTIONABLE TO YOU?

09:28AM 11     MS. SAHARIA:  I'M NOT SURE I QUITE FOLLOWED HOW WHAT

09:28AM 12  MS. VOLKAR WAS PROPOSING WAS DIFFERENT THAN WHAT I WAS

09:28AM 13  PROPOSING.

09:28AM 14     MS. VOLKAR:  I THINK WE'RE ESSENTIALLY SAYING THE

09:28AM 15  SAME THING, MS. SAHARIA, ONLY TO BE CRYSTAL CLEAR, I THINK IN

09:28AM 16  THE PRELIMINARY INSTRUCTIONS HE'S DEFINED WHAT I HAVE HERE, THE

09:28AM 17  TWO CONSPIRACIES THAT THE GOVERNMENT LAID OUT ON PAGE 15 AND

09:28AM 18  FOLLOWED WITH ONE STATEMENT, "THE COURT WILL DEFINE WIRE FRAUD

09:28AM 19  IN A MOMENT."

09:28AM 20     MS. SAHARIA:  I THINK THAT'S FINE, YOUR HONOR.

09:28AM 21     MS. VOLKAR:  OKAY.

09:28AM 22     THE COURT:  I THINK THAT'S WHAT I SAID.

09:28AM 23     MS. SAHARIA:  YES, THAT'S FINE, YOUR HONOR.

09:28AM 24     THE COURT:  ALL RIGHT.

09:28AM 25     MS. SAHARIA:  SO MOVING ON, WITH RESPECT TO THE

09:28AM 1    EXISTENCE OF AN AGREEMENT, WHICH IS THE FIRST ELEMENT THAT IS

09:28AM 2    SET FORTH IN 820, FIRST LINE, I THINK THE LANGUAGE, "TO COMMIT

09:29AM 3    AT LEAST ONE CRIME" IS A LITTLE CONFUSING BECAUSE THE AGREEMENT

09:29AM 4    NEEDS TO BE TO COMMIT WIRE FRAUD AS CHARGED IN THE INDICTMENT,

09:29AM 5    AND I THINK THAT LANGUAGE WILL CONFUSE THE JURY.

09:29AM 6        SO I THINK WE WOULD PROPOSE TO CHANGE THAT LANGUAGE TO SAY

09:29AM 7    "TO COMMIT WIRE FRAUD AS CHARGED IN THE INDICTMENT."

09:29AM 8        IN GENERAL, THIS IS AN OBJECTION THAT PERMEATES THE

09:29AM 9    INSTRUCTIONS, IS THAT EVERY TIME THE INSTRUCTIONS REFER TO

09:29AM 10   THING LIKE "THE CONSPIRACY" OR "THE OFFENSE" OR "THE CRIME," WE

09:29AM 11   WOULD ASK THE COURT TO ADD THE WORD "ALLEGED" BEFORE THOSE KIND

09:29AM 12   OF WORDS BECAUSE, AGAIN, THERE'S A PRESUMPTION OF INNOCENCE AND

09:29AM 13   WE THINK IT'S IMPORTANT TO CONVEY TO THE JURY THAT AT THIS

09:29AM 14   POINT THESE ARE STILL ALLEGATIONS.

09:29AM 15       THE COURT:  LET ME ASK, LET ME JUST ASK MS. VOLKAR,

09:30AM 16   DO YOU WISH TO COMMENT ON THAT?

09:30AM 17       MS. VOLKAR:  YOUR HONOR, I THINK THE GOVERNMENT'S

09:30AM 18   POSITION IS THAT WE JUST COPIED THE MODEL INSTRUCTIONS, AND IF,

09:30AM 19   IN THE WISDOM OF THE MODEL INSTRUCTIONS, WHICH, OF COURSE,

09:30AM 20   INCORPORATE AND THINK OF THE PRESUMPTION OF INNOCENCE, IT

09:30AM 21   DOESN'T THINK THAT "ALLEGED" NEEDS TO BE REPEATED BEFORE EACH

09:30AM 22   ONE.  THERE IS, OF COURSE, VERY EARLY ON AN INSTRUCTION THAT I

09:30AM 23   ASSUME THE COURT WILL GIVE ON THE PRESUMPTION OF INNOCENCE, AND

09:30AM 24   I THINK THE JURORS TAKE THAT SERIOUSLY.

09:30AM 25       THE GOVERNMENT DOESN'T HAVE A STRONG OBJECTION TO IT.  I

09:30AM 1    JUST ASSUME IF THE MODEL INSTRUCTIONS DO NOT THINK IT'S

09:30AM 2    NECESSARY, THEN IT'S JUST UNNECESSARY.

09:30AM 3            THE COURT:  OKAY.  THANK YOU.

09:30AM 4        AND THIS REQUEST, I THINK, PERMEATES --

09:30AM 5            MS. SAHARIA:  CORRECT.

09:30AM 6            THE COURT:  -- THROUGHOUT THE ENTIRETY OF EACH OF

09:30AM 7    THESE SUBSTANTIVE INSTRUCTIONS AND OTHER PLACES WHERE IT SPEAKS

09:30AM 8    TO THE CONSPIRACY, THE OFFENSE, ET CETERA.

09:30AM 9            MS. SAHARIA:  CORRECT.  EXACTLY.  SO I'M NOT GOING

09:30AM 10   TO REPEAT THAT FOR EVERY INSTRUCTION.

09:30AM 11           THE COURT:  RIGHT.  RIGHT.

09:30AM 12           MS. SAHARIA:  THE OTHER POINT THAT WE WOULD MAKE

09:30AM 13   WITH RESPECT TO THE AGREEMENT ELEMENT IS THAT WE WOULD REQUEST

09:31AM 14   THAT THE COURT ADD LANGUAGE THAT STATES THAT THE FACT THAT

09:31AM 15   ALLEGED COCONSPIRATORS WORKED TOGETHER AT THERANOS IS NOT

09:31AM 16   ENOUGH TO ESTABLISH AN AGREEMENT.  THAT LANGUAGE IS CONTAINED

09:31AM 17   WITHIN OUR PROPOSED INSTRUCTIONS 28 AND 35.

09:31AM 18       AND THAT SIMPLY REFLECTS THE WELL ESTABLISHED

09:31AM 19   NINTH CIRCUIT LAW THAT MERE ASSOCIATION AND ACTIVITY WITH A

09:31AM 20   COCONSPIRATOR DOES NOT MEET THE TEST FOR ESTABLISHING AN

09:31AM 21   AGREEMENT WHICH COMES FROM THE ESPINOZA VALDEZ CASE THAT WE

09:31AM 22   CITE ON PAGE 9 OF OUR OBJECTIONS.

09:31AM 23           THE COURT:  ALL RIGHT.  THANK YOU.

09:31AM 24       YOUR PAGE 28, WHICH IS 38 OF 809, I THINK THIS LANGUAGE IS

09:31AM 25   AT LINE 15.  IT'S ITALICIZED.

8234

09:31AM 1          MS. SAHARIA:  YES, IT'S AT PAGE 38, "NOR IS IT

09:32AM 2    ENOUGH THAT THEY WORKED AT THERANOS TOGETHER."

09:32AM 3          THE COURT:  MS. VOLKAR, AS TO THAT, DO YOU WISH TO

09:32AM 4    BE HEARD?

09:32AM 5          MS. VOLKAR:  I DO, YOUR HONOR.  JUST ONE MOMENT.

09:32AM 6       YOUR HONOR, THE GOVERNMENT'S POSITION IS THAT THE EVIDENCE

09:32AM 7    HAS SHOWN MORE THAN MERE ASSOCIATION.  WE DO AGREE THAT THAT IS

09:32AM 8    AN ACCURATE STATEMENT OF NINTH CIRCUIT LAW THAT MERE

09:32AM 9    ASSOCIATION IS NOT ENOUGH.

09:32AM 10      I WAS REMEMBERING THAT IN THE CHANG CASE YOU GAVE A MERE

09:32AM 11   PRESENCE INSTRUCTION, AND I WAS TRYING TO LOOK TO SEE IF THAT

09:32AM 12   WAS SIMILAR ENOUGH OR RELATABLE ENOUGH TO THIS.  I DO REALIZE

09:32AM 13   THAT'S A MERE PRESENCE OF THE CRIME, SO IT'S A LITTLE BIT

09:32AM 14   DIFFERENT.

09:32AM 15      I DON'T THINK THAT THE LANGUAGE THAT THE DEFENSE HAS

09:32AM 16   SUGGESTED IS PARTICULARLY OBJECTIONABLE.  AGAIN, WE JUST GO

09:33AM 17   BACK TO WE THINK IT'S UNNECESSARY GIVEN THE EVIDENCE THAT HAS

09:33AM 18   COME IN IN THE CASE SO FAR.

09:33AM 19         THE COURT:  OKAY.  THANK YOU.

09:33AM 20         MS. SAHARIA:  OF COURSE WE INTEND TO ARGUE THE

09:33AM 21   EVIDENCE SHOWS SOMETHING DIFFERENT.  THE TWO PARTIES HAVE

09:33AM 22   DIFFERENT VIEWS OF THE EVIDENCE, SO WE DO THINK THAT THE JURY

09:33AM 23   HEARING THAT LEGAL PRINCIPLE IS AN IMPORTANT ONE TO HELP THE

09:33AM 24   JURY UNDERSTAND HOW TO APPLY THE LAW TO THE EVIDENCE.

09:33AM 25         THE COURT:  ALL RIGHT.

09:33AM 1          MS. SAHARIA:  SO LET ME TURN TO THE SECOND ELEMENT

09:33AM 2   HERE, WHICH IS THAT THE DEFENDANT BECAME A MEMBER OF THE

09:33AM 3   CONSPIRACY.

09:33AM 4          AND HERE I WANT TO FOCUS ON THE INTENT ELEMENT THAT IS

09:33AM 5   REQUIRED TO BECOME A MEMBER OF THE CONSPIRACY.  IT'S CLEAR THAT

09:33AM 6   THAT CONSPIRACY REQUIRES THE MENTAL STATE OF WILLFULNESS, AND

09:33AM 7   THAT'S CLEAR FROM THE PARAGRAPH.  THIS IS ALSO IN THE MODEL

09:33AM 8   INSTRUCTIONS AT THE BOTTOM OF 15 WHERE IT EXPLAINS THAT "ONE

09:33AM 9   BECOMES A MEMBER OF A CONSPIRACY BY WILLFULLY PARTICIPATING IN

09:34AM 10  THE UNLAWFUL PLAN," AND THEN LATER AGAIN THE NEXT SENTENCE,

09:34AM 11  "FURTHERMORE, ONE WHO WILLFULLY JOINS AN EXISTING CONSPIRACY."

09:34AM 12         GIVEN THAT THE MENTAL STATE IS WILLFUL, IT SEEMS STRANGE

09:34AM 13  TO PUT THE WILLFUL MENTAL STATE IN THIS PARAGRAPH, BUT NOT TO

09:34AM 14  HAVE IT IN THE ACTUAL ELEMENT IN THE SECOND LINE.

09:34AM 15         SO I WOULD ASK THE COURT TO ADD THE WORD "WILLFULLY"

09:34AM 16  BEFORE THE WORD "INTENDING," SO IT WOULD READ, "SECOND, THAT

09:34AM 17  MS. HOLMES BECAME A MEMBER OF THE ALLEGED CONSPIRACY," WE WOULD

09:34AM 18  SAY, "KNOWING OF AT LEAST ONE OF ITS OBJECTS AND WILLFULLY

09:34AM 19  INTENDING TO HELP ACCOMPLISH IT," GIVEN THAT THAT IS THE MENTAL

09:34AM 20  STATE.

09:34AM 21         AND THEN WE HAVE REQUESTED THAT THE COURT DEFINE THE TERM

09:34AM 22  "WILLFULLY."  AS THE NINTH CIRCUIT HAS ACKNOWLEDGED, THAT IS A

09:34AM 23  TERM OF MANY MEANINGS AND I DON'T THINK THAT MEANING WILL BE

09:34AM 24  CLEAR TO THE JURY.

09:34AM 25         THE COURT:  THERE IS NO MODEL FOR THE DEFINITION OF

09:35AM 1      WILLFULLY.

09:35AM 2               MS. SAHARIA:  THAT'S CORRECT.

09:35AM 3               THE COURT:  AND WOULD IT SURPRISE YOU IF I WERE TO

09:35AM 4      TELL YOU THAT WHEN I LOOKED AT THIS AND I TRIED TO WORDSMITH

09:35AM 5      WHAT IS THE APPROPRIATE DEFINITION FOR OUR CASE, AND I THOUGHT,

09:35AM 6      WELL, I'VE WRESTLED WITH THIS LONG ENOUGH, LET ME TURN IT BACK

09:35AM 7      TO THE LAWYERS AND SEE IF THEY CAN MEET AND CONFER AND COME

09:35AM 8      UPON SOME TYPE OF A DEFINITION THAT IS APPROPRIATE FOR OUR

09:35AM 9      CASE.

09:35AM 10              MS. SAHARIA:  I'M HAPPY TO TRY TO MEET AND CONFER.

09:35AM 11     I'M NOT SURE IF WE WILL AGREE.

09:35AM 12         BUT IT IS OUR POSITION THAT THE CORRECT DEFINITION OF

09:35AM 13     WILLFULLY IN THIS CASE COMES FROM THE SUPREME COURT'S DECISION

09:35AM 14     IN BRYAN, BRYAN VERSUS UNITED STATES, 524 US 184.  AND IN BRYAN

09:35AM 15     THE COURT EXPLAINED THAT, "AS A GENERAL MATTER IN THE CRIMINAL

09:35AM 16     CONTEXT TO ESTABLISH WILLFULNESS, THE GOVERNMENT MUST PROVE

09:35AM 17     THAT THE DEFENDANT ACTED WITH KNOWLEDGE THAT HIS CONDUCT WAS

09:35AM 18     UNLAWFUL."

09:35AM 19         AND THAT IS THE DEFINITION THAT WE HAVE PROPOSED, WHICH IS

09:35AM 20     AT OUR PROPOSED INSTRUCTIONS 30 AND 37.

09:36AM 21         THE GOVERNMENT HAS NOT PROPOSED A DEFINITION, SO I'M HAPPY

09:36AM 22     TO MEET AND CONFER WITH THEM IF THAT WOULD BE HELPFUL TO THE

09:36AM 23     COURT.

09:36AM 24              THE COURT:  WELL, THAT'S WHAT I THOUGHT.  I LOOKED

09:36AM 25     AT EVEN THE CALJIC -- THERE IS A WILLFUL INSTRUCTION IN CALJIC,

09:36AM  1    AND I CAN'T REMEMBER THE NUMBER JUST NOW, BUT IT'S OPEN ON MY

09:36AM  2    DESK, AND I WOULD ENCOURAGE YOU TO LOOK AT THAT AS WELL.

09:36AM  3            MS. SAHARIA:  I WILL, YOUR HONOR.

09:36AM  4            THE COURT:  AND THAT GIVES SOME OTHER AT LEAST

09:36AM  5    DESCRIPTION OF THAT DEFINITION AND WHETHER OR NOT IT WILL FIT

09:36AM  6    OUR NEEDS.

09:36AM  7        I THINK I LOOKED AT THE EIGHTH CIRCUIT AS WELL, PERHAPS

09:36AM  8    THE SIXTH.  I THINK THEY MIGHT HAVE SOMETHING.

09:36AM  9        BUT IN ANY EVENT, I'M GOING TO TASK YOU BOTH WITH LOOKING

09:36AM  10   AT THAT AND SEEING IF YOU CAN COME UP WITH EITHER AN AGREEMENT

09:36AM  11   OR --

09:36AM  12           MS. SAHARIA:  OR COMPETING PROPOSALS?

09:36AM  13           THE COURT:  RIGHT.

09:36AM  14           MS. VOLKAR:  YOUR HONOR, IF I MAY, I'M ACTUALLY

09:36AM  15   GOING TO TURN THIS OVER TO MY COLLEAGUE, MR. LEACH.  IT IS THE

09:36AM  16   GOVERNMENT'S POSITION THAT WILLFULLY IS THE WRONG MENS REA

09:36AM  17   HERE.  I THINK IT IS VERY WELL ESTABLISHED THAT WIRE FRAUD IS A

09:37AM  18   KNOWINGLY CRIME, NOT A WILLFULLY CRIME.  MR. LEACH HAS PREPARED

09:37AM  19   SPECIFICALLY ON BRYAN AND OTHERS.

09:37AM  20       BEFORE I MOVED AWAY FROM THE PODIUM, I WANTED TO NOTE THAT

09:37AM  21   THERE WAS SIGNIFICANTLY MORE LANGUAGE IN THE FIRST ELEMENT IN

09:37AM  22   INSTRUCTION NUMBER 28 THAT DEFENSE PROPOSED THAT THE GOVERNMENT

09:37AM  23   HAS SIGNIFICANT OBJECTION TO.

09:37AM  24       WE MOVED PAST THAT, AND I JUST WANTED TO MAKE SURE THAT

09:37AM  25   IT'S RECOGNIZED THAT THE GOVERNMENT DOESN'T THINK AN ADDITIONAL

8238

09:37AM 1      INSTRUCTION FOR EACH ELEMENT IS NEEDED, AND THAT THE GOVERNMENT

09:37AM 2      DOESN'T THINK THAT THOROUGH DESCRIPTION OF THE FACTS IN THE

09:37AM 3      JURY INSTRUCTIONS IS NEEDED.

09:37AM 4          I THINK IT'S IMPROPER FOR THE COURT TO GIVE A FULL FLEDGED

09:37AM 5      EXPLANATION OF THE CASE IN THE JURY INSTRUCTIONS.  OF COURSE

09:37AM 6      THE PARTIES WILL HAVE AN OPPORTUNITY TO DO THAT IN ARGUMENT.

09:37AM 7          WE MOVED TO THE SECOND ELEMENT, AND I JUST DIDN'T WANT TO

09:37AM 8      LOSE SIGHT OF THAT.

09:37AM 9              THE COURT:  NO, THANK YOU.  BEFORE YOU LEAVE, I DID

09:37AM 10     NOTE THAT.  THE DEFENSE IS MORE THAN FULSOME.

09:38AM 11         WHEN WE LOOK AT THE INSTRUCTIONS, TO MS. VOLKAR'S POINT,

09:38AM 12     THE INSTRUCTIONS SHOULD BE HELPFUL.  THEY SHOULD NOT CONFUSE

09:38AM 13     THE JURY.  THEY SHOULD RATHER INFORM AND ASSIST THE JURY AS

09:38AM 14     THEY SIFT AND WEIGH THE EVIDENCE THAT THEY HAVE HEARD.

09:38AM 15         AND I SOMETIMES HAVE CAUTION ABOUT TOO MUCH VERBIAGE

09:38AM 16     THAT -- I USED THE WORD "JURY FATIGUE" BEFORE, BUT IT'S REALLY

09:38AM 17     JURY COMPREHENSION, AND THE INSTRUCTIONS SHOULD INFORM AND NOT

09:38AM 18     CONFUSE.

09:38AM 19             MS. SAHARIA:  I UNDERSTAND THE COURT'S POSITION,

09:38AM 20     YOUR HONOR.

09:38AM 21             THE COURT:  RIGHT.

09:38AM 22             MS. SAHARIA:  I DO THINK IT IS ESSENTIAL THAT THE

09:38AM 23     COURT AT SOME PLACE GIVE THE JURY A SUMMARY OF THE CORE

09:38AM 24     ALLEGATIONS IN PARAGRAPH 12 OF THE INDICTMENT AND PARAGRAPH 16

09:38AM 25     OF THE INDICTMENT, WHICH ARE THE ALLEGED MISSTATEMENTS TO

09:38AM  1    INVESTORS AND TO PAYING PATIENTS, AND WE WILL PROPOSE THAT TO

09:38AM  2    THE COURT.

09:38AM  3         WITHOUT THAT LANGUAGE BEING BEFORE THE JURY, WE THINK

09:38AM  4    THERE'S A SIGNIFICANT RISK THAT ANY VERDICT WOULD REST ON A

09:38AM  5    CONSTRUCTIVE AMENDMENT OF THE INDICTMENT.

09:39AM  6         THE JURY NEEDS TO UNDERSTAND WHAT THE CHARGED

09:39AM  7    MISSTATEMENTS ARE IN ORDER TO ASSESS THE PROOF AT TRIAL AGAINST

09:39AM  8    THE ALLEGATIONS IN THE INDICTMENT.

09:39AM  9         THE COURT:  AND THERE'S, THERE'S SOME -- I DON'T

09:39AM  10   WANT TO SAY TENSION -- BUT THERE IS -- IN THESE TYPES OF

09:39AM  11   INSTRUCTIONS, THE COURT KNOWS, AND YOU DO, TOO, EXPERIENCED

09:39AM  12   TRIAL LAWYERS, YOU KNOW THAT IT'S NOT UNUSUAL IN ARGUMENT FOR

09:39AM  13   EITHER SIDE TO PUT A CHART UP THAT INCLUDES THE SUMMARY AND

09:39AM  14   INDICATES, AS TO CHARGE NUMBER X, HERE'S WHAT THE EVIDENCE IS,

09:39AM  15   HERE'S WHAT THE GOVERNMENT MUST PROVE.

09:39AM  16        AND WE'VE ALL BEEN IN TRIALS WHERE THAT'S DONE.  AND, OF

09:39AM  17   COURSE, THAT'S WHAT CLOSING ARGUMENTS ARE FOR, TO DRAW THE

09:39AM  18   JURY'S ATTENTION TO THE EVIDENCE AND TO INTERPRET IT IN THE WAY

09:39AM  19   THAT THE SIDE THINKS IS APPROPRIATE.  THAT'S DONE.

09:39AM  20        MS. SAHARIA:  IT IS.  BUT IF JUST THOSE CORE

09:39AM  21   ALLEGATIONS ARE NOT IN THE INSTRUCTIONS, THEN THE JURY WILL NOT

09:39AM  22   HAVE THEM BACK IN THE JURY ROOM, AND THERE'S NO WAY FOR EITHER

09:39AM  23   THE COURT OR THE PARTIES TO KNOW WHETHER THE JURY HAS ASSESSED

09:39AM  24   THE EVIDENCE AGAINST THE ALLEGATIONS OF THE INDICTMENT.

09:40AM  25        AND THIS IS A VERY SERIOUS CONCERN OF THE DEFENSE'S GIVEN

09:40AM 1    THE WAY THAT EVIDENCE HAS UNFOLDED AND THE FACT THAT THE JURY

09:40AM 2    MAY BE ASKED TO DECIDE THIS CASE BASED ON ALLEGATIONS THAT ARE

09:40AM 3    NOT ACTUALLY THE ALLEGATIONS THAT THE GRAND JURY PASSED ON.

09:40AM 4        SO WE THINK IT'S VITALLY IMPORTANT FOR THE JURY TO HAVE A

09:40AM 5    SUMMARY OF THOSE ALLEGATIONS IN THE INSTRUCTIONS THEMSELVES.

09:40AM 6            THE COURT:  WELL, LET ME ASK THIS.  PERHAPS WHAT THE

09:40AM 7    COURT SHOULD DO IS TO GIVE THE JURY A COPY OF THE INDICTMENT

09:40AM 8    WITHOUT ALL OF THE LANGUAGE, THE PREPARATORY LANGUAGE, BUT JUST

09:40AM 9    GIVE A COPY OF THE INDICTMENT TO THE JURY THAT HAS THE ACTUAL

09:40AM 10   CHARGES, THE ALLEGATIONS.  THAT MIGHT SOLVE THAT ISSUE.

09:40AM 11           MS. SAHARIA:  WE CAN ASSESS THAT MAYBE AT THE CLOSE

09:40AM 12   OF EVIDENCE.

09:40AM 13           THE COURT:  SURE.

09:40AM 14           MS. SAHARIA:  THERE IS A LOT OF SPEAKING LANGUAGE IN

09:40AM 15   THE INDICTMENT.

09:40AM 16           THE COURT:  RIGHT.

09:40AM 17           MS. SAHARIA:  AS THE COURT IS AWARE, THAT WOULD BE

09:40AM 18   IMPROPER FOR THE JURY TO HAVE.

09:40AM 19           THE COURT:  RIGHT, OF COURSE.

09:40AM 20           MS. SAHARIA:  BUT LET ME -- I WANT TO CONFIRM WITH

09:40AM 21   MY TEAM ABOUT THAT.

09:40AM 22       OUR GENERAL POSITION IS THAT THE JURY SHOULDN'T HAVE THE

09:40AM 23   INDICTMENT, BUT WE DO THINK THAT THERE NEEDS TO BE SOME

09:41AM 24   DESCRIPTION OF THE ALLEGATIONS THAT ARE BEFORE THE JURY.

09:41AM 25           THE COURT:  SURE.  I THOUGHT ABOUT THAT LAST NIGHT,

8241

09:41AM 1    THINKING, WELL, THAT MIGHT BE A POSSIBLE SOLUTION, AN EDITED OR

09:41AM 2    REVISED SOMEHOW -- DARE I USE THE WORD "REDACTED" -- BUT

09:41AM 3    PORTIONS OF THE INDICTMENT THAT DOES INFORM SPECIFICALLY AS TO

09:41AM 4    THE CHARGES IN THE INDICTMENT, WITHOUT THE LANGUAGE AS YOU

09:41AM 5    SUGGEST.

09:41AM 6        MS. VOLKAR:  AND THAT'S THE GOVERNMENT'S POSITION,

09:41AM 7    YOUR HONOR, IS THAT THE COURT COULD READ THE INDICTMENT OR

09:41AM 8    PROVIDE THE INDICTMENT.

09:41AM 9        AND ONE OF THE THINGS WE TOOK ISSUE WITH THE OBJECTIONS

09:41AM 10   THAT THE DEFENSE FILED YESTERDAY, THEY CITE A D.C. CIRCUIT CASE

09:41AM 11   AND A SECOND CIRCUIT CASE SAYING THE INDICTMENT -- IT'S ERROR

09:41AM 12   TO PROVIDE THE INDICTMENT TO THE JURY.

09:41AM 13       THAT'S NOT THE LAW IN THE NINTH CIRCUIT.  THERE ARE PLENTY

09:41AM 14   OF CASES, AND I HAVE TWO OR THREE AT MY FINGERTIPS IF THE COURT

09:41AM 15   WOULD LIKE THEM, THAT SAYS THE INDICTMENT CAN GO BACK WITH THE

09:41AM 16   JURY.  IT'S REALLY IN THE TRIAL COURT'S DISCRETION, ESPECIALLY

09:41AM 17   IF THERE ARE A LOT OF ALLEGATIONS IN THE CASE OR, YOU KNOW,

09:41AM 18   DIFFERENT CATEGORIES OF MISREPRESENTATIONS THAT WE HAVE HERE.

09:41AM 19       IT'S CERTAINLY PROPER FOR THE COURT TO AT LEAST READ FROM

09:42AM 20   THE INDICTMENT TO THE JURY, AND IT COULD BE ANOTHER DECISION

09:42AM 21   POINT WHETHER OR NOT TO SEND THE INDICTMENT BACK.

09:42AM 22       SO THE GOVERNMENT'S PERSPECTIVE IS WHY GO THROUGH THE

09:42AM 23   EXERCISE OF PUTTING TOGETHER WHAT WILL LIKELY BE ARGUMENTATIVE

09:42AM 24   BY EITHER SIDE IN TERMS OF TRYING TO DESCRIBE HOW THE EVIDENCE

09:42AM 25   CAME IN WHEN WE HAVE WHAT THE GRAND JURY ISSUED IN THE

09:42AM 1    INDICTMENT.

09:42AM 2          THE COURT:  AND I THINK IT MIGHT BE MORE BENEFICIAL

09:42AM 3    FOR THE JURY TO RECEIVE A HARD COPY IF THAT'S POSSIBLE, AS

09:42AM 4    OPPOSED TO THE COURT READING THEM 12, 11 CHARGES, WHATEVER IT

09:42AM 5    IS, AND ASK THEM TO COMMIT THAT TO MEMORY OR WRITE DOWN AS

09:42AM 6    WELL.

09:42AM 7       WHILE I'M ON THIS POINT, AND BEFORE WE INVITE MR. LEACH

09:42AM 8    UP, IF YOU'RE FINISHED, MS. VOLKAR, ONE THING I HAVE DONE WHEN

09:42AM 9    I DO INSTRUCT -- AND I INSTRUCT FOLLOWING THE ARGUMENTS --

09:43AM 10   EARLY IN MY CAREER I DID PROVIDE THE JURORS COPIES OF THE

09:43AM 11   INSTRUCTIONS AND THEY READ ALONG.  I CHANGED THAT AND I HAVEN'T

09:43AM 12   DONE THAT FOR MANY YEARS.

09:43AM 13      I'M CURIOUS WHETHER OR NOT -- AND DON'T ANSWER ME TODAY --

09:43AM 14   BUT I'M CURIOUS ABOUT YOUR THOUGHTS ABOUT WHETHER OR NOT, ONCE

09:43AM 15   WE GET FINALITY ON THE INSTRUCTIONS, WHETHER OR NOT I SHOULD

09:43AM 16   PROVIDE COPIES OF THE INSTRUCTIONS TO THE JURORS AS THEY'RE

09:43AM 17   READ.  I'M HAPPY --

09:43AM 18          MS. SAHARIA:  WE WILL CONSIDER THAT, YOUR HONOR.  SO

09:43AM 19   I'LL CONFER WITH THE TEAM.

09:43AM 20          THE COURT:  ALL RIGHT.  I'M HAPPY TO HEAR FROM YOU

09:43AM 21   ON THAT POINT.

09:43AM 22       MS. VOLKAR?

09:43AM 23          MS. VOLKAR:  SAME, YOUR HONOR.  WE'LL DISCUSS AS A

09:43AM 24   TEAM.

09:43AM 25       I WOULD LIKE TO INVITE MR. LEACH UP TO TALK ABOUT THE

09:43AM 1    WILLFULLY VERSUS KNOWINGLY IF THAT'S OKAY.

09:43AM 2              THE COURT:  OKAY.  GREAT.

09:43AM 3              MR. LEACH:  GOOD MORNING, YOUR HONOR.

09:43AM 4              THE COURT:  GOOD MORNING.

09:43AM 5              MR. LEACH:  SORRY TO DO THIS PIECEMEAL.

09:43AM 6              THE COURT:  NO, NOT AT ALL.

09:43AM 7              MR. LEACH:  OUR VIEW IS, WITH RESPECT TO THE

09:43AM 8    CONSPIRACY COUNTS, IT WOULD BE IMPROPER TO DEFINE "WILLFULLY"

09:44AM 9    IN THE WAY THAT THE DEFENSE PROPOSES, KNOWLEDGE THAT WHAT

09:44AM 10   YOU'RE DOING IS UNLAWFUL.

09:44AM 11        THE STATUTE, 18 U.S.C. 1349, DOES NOT INCLUDE THE WORD

09:44AM 12   "WILLFULLY."  THE MODEL INSTRUCTION IS AN AMALGAM OF 371 AND

09:44AM 13   1349.

09:44AM 14        THE BRYAN CASE THAT THEY CITE IS VERY, VERY DIFFERENT FROM

09:44AM 15   CONSPIRACY AND WIRE FRAUD.  IT'S A CRIME TO COMMIT A FEDERAL

09:44AM 16   FIREARM LICENSING OFFENSE.  IT'S DRAWING ON THE RATZLAFV LINE

09:44AM 17   OF CASES INVOLVING TAX OFFENSES WHERE THE COURT, THE SUPREME

09:44AM 18   COURT HAS IMPOSED A HIGHER MENTAL STATE REQUIREMENT WHERE YOU

09:44AM 19   NEED TO KNOW WHAT YOU'RE DOING IS UNLAWFUL HERE.

09:44AM 20        THE CRIME OF CONSPIRACY IS THE AGREEMENT TO COMMIT WIRE

09:44AM 21   FRAUD, AND IT'S VERY CLEAR IN WIRE FRAUD YOU DO NOT NEED TO ACT

09:44AM 22   WITH THE KNOWLEDGE THAT YOU'RE ACTING UNLAWFULLY.  YOU NEED TO

09:44AM 23   ACT WITH THE INTENT TO DECEIVE OR CHEAT.

09:45AM 24        AND SO I THINK THE APPROPRIATE -- OF COURSE WE'LL LOOK AT

09:45AM 25   THE CALIFORNIA CITES YOUR HONOR POINTS TO AND WE'LL MEET AND

09:45AM 1      CONFER WITH THE DEFENSE.

09:45AM 2          BUT THE TERM "WILLFULLY" AS USED IN THE BRYAN CASE IS

09:45AM 3      REALLY A SIGNIFICANTLY HIGHER STANDARD THAT'S EVER BEEN IMPOSED

09:45AM 4      IN THE WIRE FRAUD OR THE CONSPIRACY CONTEXT.  IT WOULD BE

09:45AM 5      IMPROPER TO DEFINE IT AS A REQUIREMENT THAT YOU KNOW WHAT

09:45AM 6      YOU'RE DOING IS ILLEGAL.

09:45AM 7          THE APPROPRIATE MENTAL STATE IS THAT YOU INTENTIONALLY

09:45AM 8      ENTER INTO THE AGREEMENT TO COMMIT THE ELEMENTS OF WIRE FRAUD

09:45AM 9      OR THE ELEMENTS OF THE OFFENSE.

09:45AM 10         AND THEY HAVEN'T CITED TO ANYTHING IN THE NINTH CIRCUIT

09:45AM 11     THAT SUGGESTS THERE'S SOME RATZLAFV OR BRYAN HIGHER STANDARD

09:45AM 12     WHEN IT COMES TO CONSPIRACY.

09:45AM 13         SO THOSE ARE THE ONLY POINTS THAT I WOULD LIKE TO MAKE

09:45AM 14     RIGHT NOW.

09:45AM 15             THE COURT:  OKAY.  THANK YOU.

09:45AM 16         MS. SAHARIA?

09:45AM 17             MS. SAHARIA:  SURE.  IT SEEMS TO ME THAT THE

09:45AM 18     GOVERNMENT IS CONFLATING THE MENTAL STATE FOR WIRE FRAUD

09:45AM 19     ITSELF, THE SUBSTANTIVE OFFENSE, WITH THE MENTAL STATE FOR

09:45AM 20     CONSPIRACY, AND THE MODEL INSTRUCTIONS MAKE CLEAR THAT THE

09:45AM 21     MENTAL STATE FOR JOINING A CONSPIRACY, AS OPPOSED TO COMMITTING

09:46AM 22     THE UNDERLYING OFFENSE, IS WILLFUL.  IT'S IN THE MODEL

09:46AM 23     INSTRUCTIONS ITSELF.

09:46AM 24         SO IF WE'RE GOING TO CHARGE THE JURY THAT MS. HOLMES

09:46AM 25     NEEDED TO HAVE WILLFULLY JOINED A CONSPIRACY, WE NEED TO GIVE

| | | |
|---|---|---|
| 09:46AM | 1 | THE JURY INSTRUCTION ON WHAT WILLFULLY MEANS AS OPPOSED TO |
| 09:46AM | 2 | KNOWINGLY. |
| 09:46AM | 3 | WE HAVE CITED THE COURT TO MULTIPLE CASES, NOT IN THE |
| 09:46AM | 4 | NINTH CIRCUIT, BUT THE GOVERNMENT HASN'T CITED A CONTRARY CASE |
| 09:46AM | 5 | IN THE NINTH CIRCUIT WHERE THE COURT -- WHERE THE COURT DID USE |
| 09:46AM | 6 | THE BRYAN DEFINITION WHEN IT CAME TO WILLFULLY JOINING A |
| 09:46AM | 7 | CONSPIRACY TO COMMIT WIRE FRAUD. |
| 09:46AM | 8 | BRYAN SETS FORTH THE GENERAL TEST FOR THE WORD "WILLFULLY" |
| 09:46AM | 9 | IN THE CRIMINAL CONTEXT.  AS A GENERAL MATTER IN THE CRIMINAL |
| 09:46AM | 10 | CONTEXT, THAT IS THE DEFINITION.  SO IT'S OUR POSITION THAT |
| 09:46AM | 11 | SHOULD BE THE DEFINITION. |
| 09:46AM | 12 | BUT, AGAIN, I'M HAPPY TO LOOK AT THE CALIFORNIA TREATISE |
| 09:46AM | 13 | AND THEN WE CAN CONFER WITH THE GOVERNMENT ABOUT THIS. |
| 09:47AM | 14 | MR. LEACH:  AGAIN, YOUR HONOR, "WILLFULLY" IS NOT IN |
| 09:47AM | 15 | THE STATUTE, AND "WILLFULLY" IS A WORD WITH DIFFERENT MEANINGS |
| 09:47AM | 16 | IN DIFFERENT CONTEXTS, AND THERE'S NOTHING TO SUGGEST THAT IN |
| 09:47AM | 17 | THE MODEL INSTRUCTION AS THE NINTH CIRCUIT IS USING IT, IT'S |
| 09:47AM | 18 | INTENT TO IMPORT THIS HIGHER BRYAN/RATZLAFV TYPE STANDARD. |
| 09:47AM | 19 | I'VE NEVER SEEN IT IN AN INSTRUCTION IN THE NINTH CIRCUIT OR IN |
| 09:47AM | 20 | THIS COURT, AND I THINK YOUR HONOR HAS NOT DONE IT BEFORE IN |
| 09:47AM | 21 | THE CHANG AND THE OTHER CASES. |
| 09:47AM | 22 | I THINK IT WOULD BE VERY DANGEROUS TO BRING KNOWLEDGE THAT |
| 09:47AM | 23 | YOUR CONDUCT IS UNLAWFUL WITH SO THIN AUTHORITY BASED ON SOME |
| 09:47AM | 24 | OUT-OF-CIRCUIT PRECEDENT. |
| 09:47AM | 25 | SO WE JUST THINK THERE'S NO BASIS FOR -- THERE'S NO NEED |

| | | |
|---|---|---|
| 09:47AM | 1 | FOR A DEFINITION HERE.  THE PROPOSAL FROM THE GOVERNMENT IS, |
| 09:47AM | 2 | "ONE BECOMES A MEMBER OF A CONSPIRACY BY PARTICIPATING IN THE |
| 09:47AM | 3 | UNLAWFUL PLAN WITH THE INTENT TO ADVANCE IT." |
| 09:47AM | 4 | THAT CERTAINLY DESCRIBES WHAT YOU NEED TO DO. |
| 09:47AM | 5 | I THINK FURTHER MUDDYING THE WATERS WITH WILLFULLY WILL |
| 09:48AM | 6 | CREATE CONFUSION, AND THERE'S JUST NO SUPPORT IN THE |
| 09:48AM | 7 | NINTH CIRCUIT FOR DOING WHAT THE DEFENSE IS PROPOSING HERE. |
| 09:48AM | 8 | THE COURT:  WELL, THANK YOU.  I THINK ON PAGE 15 |
| 09:48AM | 9 | 1176, LINE 24, "ONE BECOMES A MEMBER OF A CONSPIRACY BY |
| 09:48AM | 10 | WILLFULLY PARTICIPATING." |
| 09:48AM | 11 | THAT'S YOUR 820 PROPOSAL OF THE MODEL INSTRUCTION. |
| 09:48AM | 12 | MR. LEACH:  YES. |
| 09:48AM | 13 | THE COURT:  AND I THINK MS. SAHARIA'S POINT, AS SHE |
| 09:48AM | 14 | MADE IT, IS, WELL, SHOULDN'T WE DEFINE WILLFULLY? |
| 09:48AM | 15 | MR. LEACH:  WE'RE HAPPY TO LOOK INTO DEFINING IT, |
| 09:48AM | 16 | YOUR HONOR.  BUT THE POINT THE GOVERNMENT IS TRYING TO MAKE IS |
| 09:48AM | 17 | WILLFULLY IS NOT KNOWLEDGE OF UNLAWFULNESS. |
| 09:48AM | 18 | THE COURT:  RIGHT. |
| 09:48AM | 19 | MR. LEACH:  AND I THINK THE MORE APPROPRIATE |
| 09:48AM | 20 | DEFINITION WOULD BE KNOWINGLY OR INTENTIONALLY. |
| 09:48AM | 21 | AND, AGAIN, THAT'S A WORD THAT IS USED FOR MULTIPLE |
| 09:48AM | 22 | DIFFERENT CONSPIRACY STATUTES.  THE WORD "WILLFULLY" IS NOT IN |
| 09:48AM | 23 | 1349. |
| 09:48AM | 24 | I DON'T MIND TRYING TO ENDEAVOR TO DO A DEFINITION THERE, |
| 09:48AM | 25 | BUT IT'S NOT -- THE GOVERNMENT'S -- |

09:49AM   1                      THE COURT:  I APPRECIATE THAT.

09:49AM   2                      MR. LEACH:  I THINK I HAVE ARTICULATED OUR VIEW

09:49AM   3       THERE.

09:49AM   4                      THE COURT:  RIGHT.  I CAPTURE YOUR POINT.

09:49AM   5           AND WHAT I WAS SUGGESTING IS, WELL, THE NINTH CIRCUIT SAYS

09:49AM   6       THERE IS NO MODEL ON WILLFUL, AND TO ENHANCE OUR DISCUSSION, I

09:49AM   7       WOULD JUST INVITE YOU TO LOOK AT THOSE, SEE IF THAT ALTERS

09:49AM   8       POSITIONS, SEE WHAT THAT DOES, AND THEN WE CAN CHAT ABOUT IT

09:49AM   9       SOME MORE.

09:49AM  10           THANK YOU FOR RAISING IT.  IT'S AN INTERESTING ISSUE.

09:49AM  11                      MR. LEACH:  IT IS, YOUR HONOR.  WILL DO.

09:49AM  12                      THE COURT:  OKAY.  THANK YOU.

09:49AM  13                      MS. SAHARIA:  SHOULD I CONTINUE ON CONSPIRACY?  I

09:49AM  14       THINK WE'RE CLOSE TO --

09:49AM  15                      THE COURT:  YES.

09:49AM  16                      MS. SAHARIA:  -- BEING DONE WITH CONSPIRACY

09:49AM  17       POTENTIALLY.

09:49AM  18           I WOULD JUST STATE FOR THE RECORD OUR OBJECTION TO THE

09:49AM  19       OMISSION OF AN OVERT ACT REQUIREMENT, AND I KNOW THE COURT

09:49AM  20       REJECTED THAT IN THE PRELIMINARY INSTRUCTIONS SO I'M NOT GOING

09:49AM  21       TO REPEAT THAT ARGUMENT, BUT I WOULD JUST PRESERVE THAT

09:49AM  22       ARGUMENT.

09:49AM  23                      THE COURT:  OKAY.  THANK YOU.

09:49AM  24           YEAH, THIS IS ONE WHERE I SAID EARLIER THIS MORNING, I

09:49AM  25       THINK WE COVERED THIS IN THE ARGUMENTS ON PRELIMINARY.

09:49AM   1                MS. SAHARIA:  YES, WE DID.

09:49AM   2                THE COURT:  RIGHT.  AND YOU'VE PRESERVED YOUR

09:49AM   3       ARGUMENT FOR TODAY.

09:50AM   4                MS. SAHARIA:  THANK YOU.

09:50AM   5                THE COURT:  AND YOU'LL HAVE ANOTHER OPPORTUNITY ON

09:50AM   6       OUR FINAL DISCUSSION ON THE INSTRUCTIONS.

09:50AM   7                MS. SAHARIA:  THANK YOU.

09:50AM   8           TWO MORE POINTS ON KIND OF THIS CORE CONSPIRACY

09:50AM   9       INSTRUCTION.

09:50AM  10           FIRST, WE DO REQUEST THAT THE COURT GIVE A SPECIFIC

09:50AM  11       UNANIMITY INSTRUCTION THAT -- AND WE PROPOSE THAT AT

09:50AM  12       INSTRUCTIONS 33 AND 40, WHICH INSTRUCTS THE JURY THAT IT NEEDS

09:50AM  13       TO UNANIMOUSLY AGREE BOTH ON THE OBJECT OF EACH CONSPIRACY AND

09:50AM  14       ON AT LEAST ONE PARTICIPANT IN THE CONSPIRACY, AND I THINK

09:50AM  15       THAT'S AN IMPORTANT POINT HERE WHERE THE INDICTMENT IS -- DOES

09:50AM  16       NOT DEFINE WHO IS IN EACH CONSPIRACY.

09:50AM  17           SO I THINK, GIVEN THOSE FACTS, GIVEN THAT WE HAVE TWO

09:50AM  18       DIFFERENT CONSPIRACIES CHARGED, THERE IS A RISK IN THIS CASE OF

09:50AM  19       JUROR CONFUSION, AND FOR THAT REASON WE ASK THAT THE COURT GIVE

09:50AM  20       A SPECIFIC UNANIMITY INSTRUCTION AS WE PROPOSED AT 33 AND 40.

09:51AM  21                THE COURT:  OKAY.

09:51AM  22           MS. VOLKAR?

09:51AM  23                MS. VOLKAR:  YOUR HONOR, THIS IS WHAT I ALLUDED TO

09:51AM  24       EARLIER, WHICH IS I THINK THAT THERE'S NO RISK FOR JUROR

09:51AM  25       CONFUSION HERE, AS IT WILL NOT LIKELY SURPRISE THE COURT.

09:51AM 1       I THINK THAT THE LAPIERRE CASE THAT THE DEFENSE CITES HAS

09:51AM 2    VERY DIFFERENT FACTS.  THERE THE GOVERNMENT CHARGED ONE

09:51AM 3    CONSPIRACY, AND THE EVIDENCE AT TRIAL SHOWED MORE THAN ONE

09:51AM 4    CONSPIRACY, WHICH BOTH THE COURT AND THE PROSECUTION IN THAT

09:51AM 5    CASE ACKNOWLEDGED ESSENTIALLY AT THIS MOMENT IN TIME WHEN THEY

09:51AM 6    WERE IN THE CHARGING CONFERENCE AND LOOKING AT THE

09:51AM 7    INSTRUCTIONS.

09:51AM 8       WE HAVE A VERY DIFFERENT CASE HERE.  THE GOVERNMENT HAS

09:51AM 9    CLEARLY ARTICULATED TWO CONSPIRACIES, TWO SCHEMES TO DEFRAUD.

09:51AM 10   THEY'RE LAID OUT CLEARLY IN THE INDICTMENT.

09:51AM 11      AGAIN, I GO BACK TO THE RISK FOR JUROR CONFUSION IS LOW TO

09:51AM 12   NONEXISTENT FROM THE GOVERNMENT'S PERSPECTIVE BECAUSE THERE IS

09:51AM 13   A SCHEME TO DEFRAUD INVESTORS, AND THERE IS A SCHEME TO DEFRAUD

09:51AM 14   PATIENTS.

09:51AM 15      AND I DON'T THINK THAT THERE'S ANY RISK OF REAL OVERLAP OR

09:52AM 16   CONFUSION, EXCEPT FOR IF THE DEFENSE WERE TO ARGUE THAT SOME OF

09:52AM 17   THE SAME MISREPRESENTATIONS FROM MS. HOLMES WENT TO BOTH GROUPS

09:52AM 18   OF PEOPLE.

09:52AM 19      BUT I DON'T THINK THAT THAT IS WHAT LAPIERRE OR THE

09:52AM 20   NINTH CIRCUIT CASES ARE TALKING ABOUT.  THEY'RE TALKING ABOUT

09:52AM 21   IS THERE RISK OF -- LIKE IN THE LAPIERRE CASE, WHICH CONSPIRACY

09:52AM 22   ARE WE TALKING ABOUT?  WHO ARE THE MEMBERS?

09:52AM 23      THAT'S NOT AT RISK HERE.

09:52AM 24      OF COURSE THERE'S MR. BALWANI, WHO IS LIKELY AT LEAST ONE

09:52AM 25   COCONSPIRATOR, AND THERE MAY BE OTHER COCONSPIRATORS AS WELL

09:52AM 1    WITHIN THE COMPANY.

09:52AM 2        THERE'S NOT MUCH RISK FOR THE JUROR TO BE CONFUSED ABOUT

09:52AM 3    WHO IS INVOLVED IN THE CONSPIRACY.

09:52AM 4            MS. SAHARIA:  THE PARTICULAR POINT WITH RESPECT TO

09:52AM 5    THE COCONSPIRATORS IS THAT A SPECIFIC UNANIMITY INSTRUCTION

09:52AM 6    INSTRUCTS THE JURY THAT IT NEEDS TO UNANIMOUSLY AGREE NOT ONLY

09:52AM 7    ON WHAT THE OBJECT OF THE CONSPIRACY IS, BUT ON AT LEAST ONE

09:52AM 8    COCONSPIRATOR, AND THAT'S AN IMPORTANT POINT THAT, WITHOUT THIS

09:53AM 9    INSTRUCTION, THE JURY WILL NOT HAVE THIS CONCEPT BEFORE THEM.

09:53AM 10       SO FOR THAT REASON, WE DO THINK IT'S IMPORTANT FOR THE

09:53AM 11   JURY TO HEAR THIS INSTRUCTION.

09:53AM 12           THE COURT:  ALL RIGHT.  THANK YOU.

09:53AM 13       WHEN I LOOKED AT THOSE TWO THAT THE DEFENSE OFFERS, THEY

09:53AM 14   SEEM TO BE LENGTHY --

09:53AM 15           MS. SAHARIA:  UH-HUH.

09:53AM 16           THE COURT:  -- AND THEY SEEM TO HAVE LANGUAGE THAT

09:53AM 17   MIGHT NOT BE NEEDED.

09:53AM 18           MS. SAHARIA:  WE CAN PROPOSE A SHORTER VERSION FOR

09:53AM 19   THE COURT IF THAT WOULD BE HELPFUL.

09:53AM 20           THE COURT:  WELL, AT A MINIMUM, THAT'S WHAT I WOULD

09:53AM 21   LIKE TO LOOK AT.

09:53AM 22           MS. SAHARIA:  SURE.

09:53AM 23           THE COURT:  SOMETHING THAT -- I THINK THIS CAN BE

09:53AM 24   ACCOMPLISHED IN A COUPLE OF SENTENCES.  I REALLY DO.

09:53AM 25           MS. SAHARIA:  WE WILL TRY THAT, YOUR HONOR.

09:53AM   1          THE COURT:  IF THIS WAS GOING TO BE GIVEN.

09:53AM   2       WHICH IS TO SAY, I'M RETICENT TO GIVE IT AS YOU'VE

09:53AM   3   PROPOSED IT.  I THINK IT'S TOO LONG.

09:53AM   4          MS. SAHARIA:  OKAY.

09:53AM   5          THE COURT:  AND IF YOU WANT TO PROPOSE SOMETHING

09:53AM   6   THAT IS -- THAT HAS BREVITY, I'LL LOOK AT IT.

09:53AM   7          MS. SAHARIA:  OKAY.  WE WILL DO THAT.

09:53AM   8          THE COURT:  WE CAN DISCUSS IT AGAIN.

09:53AM   9       MS. VOLKAR?

09:53AM  10          MS. VOLKAR:  YOUR HONOR, ONE OF THE CHANGES THAT WE

09:53AM  11   MADE IN RESPONSE TO SEEING THE DEFENSE'S FILING FROM THE SUMMER

09:53AM  12   WAS ON PAGE 15 OF ECF 1176, RIGHT AFTER THE GOVERNMENT

09:54AM  13   DESCRIBED THE TWO CHARGED CONSPIRACIES, ON LINE 8, "IN ORDER

09:54AM  14   FOR THE DEFENDANT TO BE FOUND GUILTY OF EITHER CHARGE," THAT'S

09:54AM  15   FROM THE MODEL, THE GOVERNMENT ADDED, "YOU MUST ALL UNANIMOUSLY

09:54AM  16   AGREE WITH RESPECT TO EACH COUNT, THAT THE GOVERNMENT MUST

09:54AM  17   PROVE EACH OF THE FOLLOWING ELEMENTS BEYOND A REASONABLE

09:54AM  18   DOUBT."

09:54AM  19          THE COURT:  RIGHT.

09:54AM  20          MS. VOLKAR:  AND THAT WAS THE GOVERNMENT ESSENTIALLY

09:54AM  21   ACKNOWLEDGING THAT THERE ARE TWO CONSPIRACIES.

09:54AM  22       AND ALTHOUGH WE DON'T THINK IT'S CONFUSING, WE DO THINK

09:54AM  23   SOMETHING AS STRAIGHTFORWARD AS THAT IS ALIGNED WITH, FOR

09:54AM  24   EXAMPLE, THE GONZALEZ CASE, WHICH HELD THAT WITH VERY MINIMAL

09:54AM  25   ADDITIONAL INSTRUCTION, THE COURT COULD CLEAR UP ANY CHANCE OF

09:54AM  1      CONFUSION.

09:54AM  2          SO THAT WOULD BE THE GOVERNMENT'S SUGGESTED ADDITION,

09:54AM  3      RATHER THAN THE LENGTHY SUBMISSION OF THE DEFENSE.

09:55AM  4              THE COURT:  AND THIS IS WHAT I WAS ALLUDING TO,

09:55AM  5      MS. SAHARIA.  I THINK YOU'VE CAPTURED THAT.  I THINK YOU CAN --

09:55AM  6              MS. SAHARIA:  WE WILL PROPOSE SOMETHING.  I DON'T

09:55AM  7      THINK THAT SENTENCE QUITE DOES IT, BUT WE'LL PROPOSE SOMETHING

09:55AM  8      SHORTER, YOUR HONOR.

09:55AM  9              THE COURT:  SURE.  I DO THINK THIS CAN BE

09:55AM  10     ACCOMPLISHED IN A COUPLE OF SENTENCES.

09:55AM  11             MS. SAHARIA:  UNDERSTOOD.

09:55AM  12             THE COURT:  JUST BASED ON MY EXPERIENCE WITH YOUR

09:55AM  13     PREVIOUS WORK, I KNOW THIS CAN BE DONE.  LET ME PUT IT THAT

09:55AM  14     WAY.

09:55AM  15             MS. SAHARIA:  I HAVE SOME EXPERIENCE SHORTENING

09:55AM  16     THINGS, YOUR HONOR.

09:55AM  17             THE COURT:  OKAY.

09:55AM  18             MS. SAHARIA:  THEN I THINK THE LAST POINT THAT WE

09:55AM  19     INCLUDED ON PAGE 11 -- I THINK THIS SHOULD BE A RELATIVELY

09:55AM  20     STRAIGHTFORWARD ONE -- IS THAT WE PROPOSE THAT THE COURT

09:55AM  21     INCLUDE THE MULTIPLE CONSPIRACIES INSTRUCTION, WHICH IS A MODEL

09:55AM  22     NINTH CIRCUIT INSTRUCTION.  IT'S MODEL 8.22 WHICH JUST EXPLAINS

09:55AM  23     TO THE JURY WHEN THERE ARE TWO CONSPIRACIES CHARGED, THE JURY

09:55AM  24     NEEDS TO ASSESS EACH ONE INDIVIDUALLY AND NOT CONCLUDE THAT, IF

09:55AM  25     THE JURY FINDS ONE CONSPIRACY EXISTED, IT DOESN'T MEAN THE

09:55AM   1    OTHER ONE EXISTED.

09:55AM   2              MS. VOLKAR:  YOUR HONOR, IF I MAY BE HEARD?

09:55AM   3              THE COURT:  YES.

09:55AM   4              MS. VOLKAR:  NOT AS STRAIGHTFORWARD.

09:56AM   5         IF YOU LOOK AT THE MODEL INSTRUCTION, THE VERY FIRST PART

09:56AM   6    OF THE COMMENT IS, "USE THIS INSTRUCTION WHEN THE INDICTMENT

09:56AM   7    CHARGES A SINGLE CONSPIRACY AND THE EVIDENCE INDICATES TWO OR

09:56AM   8    MORE POSSIBLE CONSPIRACIES."

09:56AM   9         THIS IS A NINTH CIRCUIT MODEL INSTRUCTION MEANT TO HELP

09:56AM  10    OBVIATE THE ISSUE THAT AROSE IN LAPIERRE.

09:56AM  11         AGAIN, THE GOVERNMENT'S POSITION IS THAT'S NOT THIS CASE.

09:56AM  12    THERE ARE TWO CONSPIRACIES THAT ARE CHARGED IN THE INDICTMENT.

09:56AM  13    THEY ARE CLEAR.  THEY ARE SEPARATE FROM ONE ANOTHER.

09:56AM  14         THE MULTIPLE CONSPIRACIES CHARGE, ALTHOUGH WE HAVE NO

09:56AM  15    OBJECTION TO THE MODEL LANGUAGE, WE OBJECT TO INSERTING THE

09:56AM  16    INSTRUCTION WHEN IT'S NOT CALLED FOR IN THE FACTS OF THIS CASE.

09:56AM  17              MS. SAHARIA:  I DO THINK IT IS CALLED FOR IN THE

09:56AM  18    FACTS OF THIS CASE, BECAUSE I DO THINK IT'S IMPORTANT TO

09:56AM  19    CHARGE -- TO INSTRUCT THE JURY THAT IT NEEDS TO ASSESS THE TWO

09:56AM  20    MULTIPLE CHARGED CONSPIRACIES SEPARATELY, AND ALTHOUGH THIS MAY

09:56AM  21    HAVE BEEN DRAFTED FOR SOMEWHAT DIFFERENT CIRCUMSTANCES, THAT IS

09:57AM  22    WHAT IT DOES, AND THAT'S WHAT OUR PROPOSED INSTRUCTION DOES

09:57AM  23    WHICH WE PROPOSED AGAIN AT -- LET ME JUST MAKE CLEAR --

09:57AM  24    INSTRUCTION 41 WAS OUR PROPOSED INSTRUCTION AT PAGE 56 AT

09:57AM  25    ECF 809.

| | | |
|---|---|---|
| 09:57AM | 1 | AGAIN, WE CAN PROPOSE A SHORTER VERSION IF THAT WOULD BE |
| 09:57AM | 2 | HELPFUL TO THE COURT. |
| 09:57AM | 3 | THE COURT:  WELL, FOR ME TO CONSIDER IT, THAT WOULD |
| 09:57AM | 4 | BE HELPFUL.  I APPRECIATE IT. |
| 09:57AM | 5 | MS. SAHARIA:  OKAY. |
| 09:57AM | 6 | THE COURT:  I LOOKED AT THIS AND I WAS -- LET ME |
| 09:57AM | 7 | JUST SAY, I WAS LOOKING AT MY NOTES.  I HAD PENCILLED OUT THE |
| 09:57AM | 8 | ITALICIZED LANGUAGE AT THE FIRST -- YOUR FIRST PARAGRAPH THERE, |
| 09:57AM | 9 | AND I THINK I DID THAT AS A SUGGESTION TO MYSELF THAT MAYBE |
| 09:57AM | 10 | THIS IS TOO LONG AND WE SHOULD DO SOMETHING ABOUT IT. |
| 09:57AM | 11 | MS. SAHARIA:  SURE.  UNDERSTOOD. |
| 09:58AM | 12 | THE COURT:  YEAH, WHY DON'T YOU WORK ON THAT? |
| 09:58AM | 13 | MS. SAHARIA:  OKAY.  WE WILL DO THAT. |
| 09:58AM | 14 | THE COURT:  AND WE WILL LOOK AT IT AGAIN. |
| 09:58AM | 15 | MS. SAHARIA:  THE NEXT ONE IS GOVERNMENT INSTRUCTION |
| 09:58AM | 16 | 8.23, KNOWLEDGE OF AND ASSOCIATION WITH OTHER CONSPIRATORS. |
| 09:58AM | 17 | I THINK THE OBJECTIONS THAT WE HAVE ALREADY TALKED ABOUT |
| 09:58AM | 18 | ALREADY COVER OUR OBJECTIONS TO THIS ONE, WHICH IS THAT IT |
| 09:58AM | 19 | DOESN'T DESCRIBE THE TWO CONSPIRACIES AND DOESN'T DISTINGUISH |
| 09:58AM | 20 | BETWEEN THE TWO CONSPIRACIES, AND WE HAVE ALREADY KIND OF |
| 09:58AM | 21 | TALKED ABOUT THAT. |
| 09:58AM | 22 | AND WE HAD KIND OF -- THE INSTRUCTIONS THAT WE DRAFTED ON |
| 09:58AM | 23 | CONSPIRACY ALREADY INCORPORATE THIS CONCEPT ELSEWHERE.  SO |
| 09:58AM | 24 | THAT'S THE -- OUR OBJECTION IS JUST THAT WE THINK THAT THE |
| 09:58AM | 25 | COURT -- THIS IS AN UNNECESSARY INSTRUCTION, BUT I UNDERSTAND |

09:58AM  1      IT'S A MODEL INSTRUCTION.

09:58AM  2          WE DO ASK -- AND THIS IS AT FOOTNOTE 6 OF OUR

09:59AM  3      OBJECTIONS -- THAT IF THE COURT GIVES THIS INSTRUCTION, WE

09:59AM  4      WOULD ASK THE COURT TO RE-ADD THE LANGUAGE FROM 820, THAT "A

09:59AM  5      PERSON DOES NOT BECOME A CONSPIRATOR MERELY BY ASSOCIATING WITH

09:59AM  6      ONE OR MORE PERSONS WHO ARE CONSPIRATORS, NOR MERELY BY KNOWING

09:59AM  7      THAT A CONSPIRACY EXISTS."  ALTHOUGH THAT IS IN 820, I THINK

09:59AM  8      GIVEN THAT THIS INSTRUCTION IS KIND OF ABOUT KNOWLEDGE ABOUT

09:59AM  9      CONSPIRATORS, IT'S IMPORTANT TO REITERATE THAT PRINCIPLE IN

09:59AM  10     THIS INSTRUCTION.

09:59AM  11          THE COURT:  ALL RIGHT.

09:59AM  12      MS. VOLKAR?

09:59AM  13          MS. VOLKAR:  YOUR HONOR, I BELIEVE I HEARD

09:59AM  14     MS. SAHARIA SAY THAT THE CONCEPTS OF THIS ARE INCLUDED

09:59AM  15     ELSEWHERE.

09:59AM  16          THAT'S WHERE THE GOVERNMENT SAYS THE MODEL EXISTS FOR A

09:59AM  17     REASON.  THE COURT SHOULD GIVE THE MODEL.  THE COURT HAS GIVEN

09:59AM  18     THE MODEL INSTRUCTION IN OTHER CASES.

09:59AM  19          AND I WOULD ADD ON THAT LAST POINT, IF THE MERE

09:59AM  20     ASSOCIATION LANGUAGE, I DON'T -- I WON'T DO IT THE JUSTICE

09:59AM  21     MS. SAHARIA JUST DID TO DESCRIBING THE KEY PORTION, BUT I DON'T

10:00AM  22     SEE THE NEED FOR IT TO BE IN TWO PLACES.  I DO THINK THAT THE

10:00AM  23     MORE TIMES THAT SOMETHING IS REPEATED THROUGHOUT INSTRUCTIONS,

10:00AM  24     ESPECIALLY IF THEY ARE SIGNIFICANTLY SHORTER, IT BLEEDS INTO

10:00AM  25     ARGUMENT RATHER THAN A NEUTRAL STATEMENT OF THE INSTRUCTIONS ON

10:00AM 1      THE LAW.

10:00AM 2          I DON'T THINK THE GOVERNMENT HAS AN OBJECTION IF WE WANT

10:00AM 3      TO ADD THAT LANGUAGE INTO THIS INSTRUCTION.  IT DOES SEEM TO

10:00AM 4      FIT WITH THE TOPICS OF THIS INSTRUCTION.

10:00AM 5          BUT THEN WE WOULD ASK THAT IT BE REMOVED FROM 8.20, AGAIN,

10:00AM 6      BECAUSE THE MORE TIMES SOMETHING IS REPEATED, IT COULD SEEM

10:00AM 7      LIKE IT IS A MORE IMPORTANT CONCEPT THAN OTHER CONCEPTS IN THE

10:00AM 8      INSTRUCTIONS WHEN THEY SHOULD ALL BE GIVEN EQUAL WEIGHT.

10:00AM 9          THE COURT:  OKAY.  THANK YOU.

10:00AM 10         THIS IS ANOTHER ONE WHERE I LOOKED AT THIS AND I THOUGHT,

10:00AM 11     WELL, CAN WE JUST SAY TWO CONSPIRACIES ALLEGED AND THEN APPLY

10:00AM 12     EACH SEPARATELY OR SOME LANGUAGE LIKE THAT?

10:00AM 13         I WAS ABLE TO JUST READ MY NOTE AND IT SAYS, "MEET AND

10:00AM 14     CONFER."

10:00AM 15         MS. SAHARIA:  WE'LL DO THAT, TOO.  YOUR HONOR.

10:01AM 16         I THINK THE NEXT ONE IS INSTRUCTION 825, WHICH IS

10:01AM 17     PINKERTON LIABILITY.

10:01AM 18         I WILL JUST STATE FOR THE RECORD THAT WE OBJECT ON THE

10:01AM 19     GROUND THAT PINKERTON LIABILITY IS AN IMPROPER JUDGE-MADE

10:01AM 20     THEORY OF LIABILITY.

10:01AM 21         THAT IS OBVIOUSLY FORECLOSED BY PRECEDENT, BUT I WOULD

10:01AM 22     POINT THE COURT TO THE VERY THOUGHTFUL CONCURRENCE BY

10:01AM 23     JUDGE WATFORD JUST A FEW MONTHS AGO ON THAT ISSUE.

10:01AM 24         THE COURT:  THAT WAS A TOPIC OF DISCUSSION IN

10:01AM 25     CHAMBERS, JUDGE WATFORD'S OBSERVATION.

| | | |
|---|---|---|
| 10:01AM | 1 | MS. SAHARIA:  SO THIS IS THE INSTRUCTION, TOGETHER |
| 10:01AM | 2 | WITH THE COSCHEMER LIABILITY INSTRUCTION, WHERE WE HAVE A VERY |
| 10:01AM | 3 | SIGNIFICANT CONCERN ABOUT JUROR CONFUSION, BECAUSE AS THE |
| 10:01AM | 4 | GOVERNMENT INSTRUCTION CURRENTLY READS, IT DOESN'T -- IT MERGES |
| 10:01AM | 5 | ALL OF -- THE TWO CONSPIRACIES AND ALL OF THE SUBSTANTIVE WIRE |
| 10:01AM | 6 | FRAUD COUNTS WITHOUT EXPLAINING TO THE JURY HOW IT NEEDS TO |
| 10:02AM | 7 | MATCH THEM UP, AND IT MIGHT -- I THINK MS. VOLKAR SAID EARLIER, |
| 10:02AM | 8 | THAT WOULD BE INTUITIVE TO THE JURY, AND IT MIGHT BE. |
| 10:02AM | 9 | BUT IT MIGHT NOT BE.  JURY INSTRUCTIONS, FRANKLY, ARE |
| 10:02AM | 10 | NEVER QUITE INTUITIVE TO A JURY, AND THAT'S WHY THE |
| 10:02AM | 11 | NINTH CIRCUIT COMMENTARY SUGGESTS TO COURTS THAT WHEN THERE ARE |
| 10:02AM | 12 | TWO CONSPIRACIES, THE COURT CONSIDER GIVING TWO PINKERTON |
| 10:02AM | 13 | CHARGES TO MAKE CLEAR TO THE JURY THAT IN THIS CASE, IF IT |
| 10:02AM | 14 | CONCLUDES THAT THE DEFENDANT IS A MEMBER OF THE CONSPIRACY |
| 10:02AM | 15 | CHARGED IN COUNT ONE, THEN IT COULD FIND THE DEFENDANT GUILTY |
| 10:02AM | 16 | OF COUNTS THREE THROUGH EIGHT. |
| 10:02AM | 17 | AND THEN VICE VERSA.  COUNT TWO IS MATCHED UP WITH |
| 10:02AM | 18 | COUNTS TEN THROUGH TWELVE, AND THAT CONCEPT IS CURRENTLY |
| 10:02AM | 19 | MISSING FROM THE GOVERNMENT INSTRUCTION.  I THINK WE CAN |
| 10:02AM | 20 | RESOLVE THAT IF WE WERE TO MEET AND CONFER WITH THE GOVERNMENT, |
| 10:02AM | 21 | BUT I THINK THAT'S A SERIOUS DEFECT AS IT IS CURRENTLY WRITTEN. |
| 10:02AM | 22 | THE COURT:  OKAY.  THANK YOU. |
| 10:02AM | 23 | ANYTHING FURTHER ON THIS? |
| 10:02AM | 24 | MS. VOLKAR:  I THINK WE COULD PROBABLY RESOLVE THIS |
| 10:03AM | 25 | THROUGH MEET AND CONFER IF THAT'S A SUBSTANTIAL CONCERN OF THE |

| | | |
|---|---|---|
| 10:03AM | 1 | DEFENSE. |
| 10:03AM | 2 | THE GOVERNMENT DOESN'T HAVE NECESSARILY AN OBJECTION TO |
| 10:03AM | 3 | TWO PINKERTON CHARGES, AGAIN, AS LONG AS THE WHOLE OF THE |
| 10:03AM | 4 | INSTRUCTIONS ARE SHRUNK DOWN IN SIZE, AND IT SOUNDS LIKE THERE |
| 10:03AM | 5 | WILL BE AN EFFORT TO STREAMLINE, IF THAT IS A SOURCE THAT THE |
| 10:03AM | 6 | DEFENSE THINKS IS A SIGNIFICANT SOURCE OF CONFUSION. |
| 10:03AM | 7 | WHAT THE GOVERNMENT DOES HAVE OBJECTION TO IS, ONCE AGAIN, |
| 10:03AM | 8 | GOING BEYOND THE MODEL INSTRUCTION.  AND I DON'T HAVE IT RIGHT |
| 10:03AM | 9 | IN FRONT OF ME, BUT MY RECOLLECTION OF THE DEFENSE'S SUGGESTED |
| 10:03AM | 10 | PINKERTON CHARGE SIGNIFICANTLY CHANGES THE MODEL INSTRUCTION, |
| 10:03AM | 11 | AND SO I JUST WANT TO STATE FOR THE RECORD THAT THAT'S WHERE |
| 10:03AM | 12 | THE GOVERNMENT'S OBJECTIONS COME IN, NOT WHAT MS. SAHARIA JUST |
| 10:03AM | 13 | SAID, THAT THERE SHOULD BE SORT OF TWO TO BE CLEAR, BUT ALL OF |
| 10:03AM | 14 | THE EXTRA VERBIAGE THAT IS ADDED IN THE DEFENSE'S SUGGESTED |
| 10:03AM | 15 | INSTRUCTIONS. |
| 10:04AM | 16 | THE COURT:  MS. SAHARIA, DID YOU HAVE A PROPOSAL? |
| 10:04AM | 17 | MS. SAHARIA:  WE PROPOSED A PINKERTON INSTRUCTION AS |
| 10:04AM | 18 | A SUPPLEMENTAL INSTRUCTION TO WHAT WE FILED THIS WEEK, AND |
| 10:04AM | 19 | THAT'S AT PAGE -- I WILL TELL YOU -- IT'S AT PAGE 33 OF ECF |
| 10:04AM | 20 | 1174. |
| 10:04AM | 21 | WE DIDN'T ACTUALLY ADD VERY MUCH VERBIAGE AT ALL.  IT'S |
| 10:04AM | 22 | ACTUALLY QUITE CLOSE TO THE MODEL INSTRUCTION. |
| 10:04AM | 23 | WHAT WE DID ADD IS IN THE FIRST LINE WE ADDED THAT THE |
| 10:04AM | 24 | CONCEPT THAT THE -- A MEMBER OF A CONSPIRACY IS RESPONSIBLE FOR |
| 10:04AM | 25 | THE REASONABLY FORESEEABLE ACTIONS.  THAT CONCEPT IS LOWER IN |

10:05AM 1      THE MODEL INSTRUCTION, BUT WE THINK IT'S CRITICAL THAT THAT

10:05AM 2      CONCEPT BE COMMUNICATED TO THE JURY RIGHT AWAY SINCE THAT'S

10:05AM 3      KIND OF THE CORE OF PINKERTON LIABILITY.

10:05AM 4          AND THEN WE DID -- THE OTHER THING THAT I WOULD

10:05AM 5      PARTICULARLY POINT OUT IS THAT THE CASE LAW MAKES CLEAR THAT

10:05AM 6      THIS CONCEPT OF REASONABLY FORESEEABLE ACTIONS NEEDS TO BE

10:05AM 7      BASED ON THE FACTS THAT WERE KNOWN TO THE DEFENDANT AT THE

10:05AM 8      TIME, AND WE ADDED THAT LANGUAGE INTO THE FINAL ELEMENT, WHICH

10:05AM 9      IN OUR MODEL -- IN OUR PROPOSAL IS ELEMENT 6 AT PAGE 34, WHICH

10:05AM 10     THE COURT COULD JUST AS EASILY INCORPORATE INTO WHAT IS I THINK

10:05AM 11     THE FIFTH ELEMENT OF THE GOVERNMENT'S PROPOSAL.

10:05AM 12         AND THEN I WOULD JUST NOTE THAT THE GOVERNMENT'S PROPOSAL

10:05AM 13     DOES NOT -- THIS IS OUR FOURTH OBJECTION ON PAGE 14 -- DOES NOT

10:06AM 14     MAKE CLEAR THAT THE RELEVANT OFFENSE NEEDS TO TAKE PLACE DURING

10:06AM 15     THE PERIOD OF THE CONSPIRACY.

10:06AM 16         THE COURT:  ALL RIGHT.  SO YOU'RE GOING TO -- I'M

10:06AM 17     SORRY, MS. VOLKAR.

10:06AM 18         MS. VOLKAR:  YOUR HONOR, I JUST WANTED TO RESPOND

10:06AM 19     THAT THE LAST PART THAT MS. SAHARIA WAS TALKING ABOUT

10:06AM 20     HIGHLIGHTS THE GOVERNMENT'S CONCERN.  PINKERTON HAS BEEN AROUND

10:06AM 21     FOR THE BETTER PART OF A CENTURY.  THE MODEL INSTRUCTION HAS

10:06AM 22     BEEN IN PLACE FOR A LONG TIME.

10:06AM 23         BUT THE DEFENSE'S SUGGESTION ON PAGE 34 OF ECF 1174

10:06AM 24     SUGGESTS ADDING ANOTHER ELEMENT TO IT, AND SIGNIFICANTLY ALTERS

10:06AM 25     THE FIFTH PARAGRAPH AS WELL AND THE SIXTH PARAGRAPH.

| | | |
|---|---|---|
| 10:06AM | 1 | SO, YES, THE PARTIES WILL MEET AND CONFER.  BUT, AGAIN, I |
| 10:06AM | 2 | NOTE THAT THERE IS SIGNIFICANT DISAGREEMENT ON WHAT THE |
| 10:06AM | 3 | LANGUAGE SHOULD BE, NOT THE BROADER CONCEPTS OR WHAT THE STATE |
| 10:06AM | 4 | OF THE LAW IS. |
| 10:06AM | 5 | THE COURT:  OKAY.  THANK YOU. |
| 10:06AM | 6 | I'LL NOTE YOUR CONCERNS AND OBJECTIONS. |
| 10:07AM | 7 | ALL RIGHT.  ANYTHING FURTHER ON THIS, MS. SAHARIA? |
| 10:07AM | 8 | MS. SAHARIA:  I DON'T BELIEVE SO.  I THINK WE'RE NOW |
| 10:07AM | 9 | READY TO TALK ABOUT WIRE FRAUD. |
| 10:07AM | 10 | THE COURT:  OKAY.  THIS IS GOVERNMENT INSTRUCTION |
| 10:07AM | 11 | 8.124, AND THE CORRESPONDING INSTRUCTIONS FROM MS. HOLMES ARE |
| 10:07AM | 12 | 42 TO 55. |
| 10:07AM | 13 | AND WE'VE ALREADY COVERED, I THINK, THE BIG PICTURE POINT |
| 10:07AM | 14 | THAT IT'S OUR POSITION THAT THE COURT SHOULD INSTRUCT |
| 10:07AM | 15 | SEPARATELY ON THE TWO SCHEMES TO DEFRAUD. |
| 10:07AM | 16 | WE PROPOSED TO OVERVIEW KIND OF UMBRELLA INSTRUCTION AND |
| 10:07AM | 17 | KIND OF BREAK OUT THE ELEMENTS.  I UNDERSTAND THE GOVERNMENT'S |
| 10:07AM | 18 | POSITION ON THAT. |
| 10:07AM | 19 | AND IT'S OUR POSITION THAT THERE SHOULD BE IN SOME WAY A |
| 10:07AM | 20 | COMMUNICATION OF THE PRECISE MISREPRESENTATIONS FROM THE |
| 10:08AM | 21 | INDICTMENT, AND WE'VE ALREADY TALKED ABOUT THAT. |
| 10:08AM | 22 | SO I DON'T THINK WE NEED TO DWELL ON THOSE POINTS UNLESS |
| 10:08AM | 23 | MS. VOLKAR WANTS TO ADD ANYTHING TO THOSE GENERAL POINTS. |
| 10:08AM | 24 | MS. VOLKAR:  NO, I THINK MS. SAHARIA CAPTURES IT. |
| 10:08AM | 25 | AGAIN, WE DON'T THINK THE ELEMENTS NEED TO BE BROKEN OUT. |

10:08AM 1    WE DON'T THINK THERE NEEDS TO BE A SEPARATE INSTRUCTION FOR

10:08AM 2    EACH COUNT.

10:08AM 3        WE DID ENDEAVOR TO ADD IN THE FILING THAT WE SUBMITTED

10:08AM 4    YESTERDAY MORNING THE SPECIFIC COUNTS.  WE FOLLOWED WHAT WE HAD

10:08AM 5    IN THE VERDICT FORM.  WE DID REMOVE COUNT NINE THROUGHOUT THE

10:08AM 6    INSTRUCTIONS, OR ENDEAVORED TO DO SO.

10:08AM 7        AND SO I THINK MS. SAHARIA IS CORRECT THAT WE'VE SORT OF

10:08AM 8    COVERED THAT GROUND, BUT I WANTED TO ADD WHAT THE GOVERNMENT

10:08AM 9    DID CHANGE IN THIS UPDATED FILING.

10:08AM 10        THE COURT:  OKAY.  THANK YOU.

10:08AM 11        MS. SAHARIA:  SO THAT BRINGS ME TO THE POINT THAT

10:08AM 12   THE GOVERNMENT HAS PROPOSED TO ADD TO THE MODEL INSTRUCTIONS,

10:08AM 13   WHICH WE COVER AT PAGES 14 TO 16 OF OUR OBJECTIONS.

10:09AM 14        SO THE FIRST IS THE LANGUAGE THAT THEY PROPOSED TO ADD

10:09AM 15   WHICH READS, "A DEFENDANT'S ACTIONS CAN CONSTITUTE A SCHEME TO

10:09AM 16   DEFRAUD EVEN IF THERE ARE NO SPECIFIC FALSE STATEMENTS

10:09AM 17   INVOLVED.  YOU, AS MEMBERS OF THE JURY, DO NOT NEED TO AGREE ON

10:09AM 18   WHICH STATEMENTS WERE FALSE, DECEITFUL OR FRAUDULENT IN

10:09AM 19   FURTHERANCE OF THE SCHEME."

10:09AM 20        WE HAVE GRAVE CONCERN ABOUT THIS LANGUAGE.  THE INDICTMENT

10:09AM 21   CHARGES WIRE FRAUD BASED ON FALSE STATEMENTS AND

10:09AM 22   REPRESENTATIONS, AND IF ADOPTED, THIS LANGUAGE WOULD, WE THINK,

10:09AM 23   CONSTITUTE AN IMPERMISSIBLE CONSTRUCTIVE AMENDMENT OF THE

10:09AM 24   INDICTMENT.

10:09AM 25        WE THINK THE COURT SHOULD JUST, AS WE SAID ALREADY, GIVE

8262

10:09AM 1    THE ALLEGATIONS OF THE INDICTMENT IN SOME WAY TO THE JURY, AND

10:09AM 2    THE JURY CAN READ THOSE ALLEGATIONS WITHOUT THIS ARGUMENTATIVE

10:09AM 3    LANGUAGE THAT THREATENS TO CONSTRUCTIVELY AMEND THE INDICTMENT.

10:10AM 4         MS. VOLKAR:  WELL, YOUR HONOR, I THINK AS FAR AS

10:10AM 5    ARGUMENTATIVE LANGUAGE, OF COURSE WE HAVE SEEN THE 100-PLUS

10:10AM 6    PAGE FILING FROM THE DEFENSE, WHICH IS LITTERED WITH

10:10AM 7    ARGUMENTATIVE STATEMENTS, AND I THINK THESE ARE ACCURATE

10:10AM 8    STATEMENTS OF THE LAW.

10:10AM 9         IN FACT, THE SECOND SENTENCE, THAT THE JURY DOES NOT NEED

10:10AM 10   TO AGREE ON WHICH STATEMENTS ARE FALSE, DECEITFUL, OR

10:10AM 11   FRAUDULENT IS A SOURCE OF MAJOR DISAGREEMENT BETWEEN THE

10:10AM 12   GOVERNMENT AND THE DEFENSE, WHICH IS SURPRISING, BECAUSE I

10:10AM 13   THINK IT'S BLACK LETTER NINTH CIRCUIT LAW.

10:10AM 14        YOUR HONOR CITED ALMOST THIS EXACT STATEMENT IN THE CHANG

10:10AM 15   CASE, AND I THINK IN A CASE SUCH AS THIS, IT IS IMPORTANT TO

10:10AM 16   DESCRIBE FOR THE JURY UNDER THE LAW WHAT THEY DO AND DON'T HAVE

10:10AM 17   TO AGREE ON, ESPECIALLY IF WE'RE IN THE LAND, WHERE IT SOUNDS

10:10AM 18   LIKE WE ARE, THAT WE'LL BE MEETING AND CONFERRING AND

10:10AM 19   DISCUSSING A SPECIFIC UNANIMITY INSTRUCTION, I THINK IT'S

10:10AM 20   IMPORTANT TO ALSO LET THE JURY KNOW WHAT THEY DON'T HAVE TO

10:10AM 21   AGREE ON, AGAIN, UNDER THE NINTH CIRCUIT PRECEDENT THAT WE ARE

10:11AM 22   BOUND BY.

10:11AM 23        SO I DON'T THINK IT'S ARGUMENTATIVE.  I THINK IT'S AN

10:11AM 24   ACCURATE STATEMENT OF NINTH CIRCUIT LAW AND IMPORTANT TO HELP

10:11AM 25   THE JURORS UNDERSTAND WHAT THEIR DUTIES ARE.

10:11AM 1        SAME WITH THE -- I'M NOT SURE IF WE'VE MOVED TO THE SECOND

10:11AM 2    PORTION, SO I DON'T WANT TO GET AHEAD OF MYSELF.

10:11AM 3        BUT THE PORTIONS THAT WE HAVE ADDED HAVE BEEN PROVIDED BY

10:11AM 4    THIS COURT, YOUR HONOR IN THE CHANG CASE IN SOME INSTANCES, AND

10:11AM 5    JUDGE BREYER IN THE HUSSAIN CASE, ANOTHER HIGH PROFILE WIRE

10:11AM 6    FRAUD AND CONSPIRACY CASE RECENTLY TRIED IN THIS DISTRICT.

10:11AM 7        THERE IS PRECEDENT IN THIS DISTRICT FOR USING THESE, AND

10:11AM 8    THEY ARE, AGAIN, BLACK LETTER NINTH CIRCUIT LAW.  I DON'T

10:11AM 9    CONSIDER THEM ARGUMENTATIVE, AND I THINK GIVEN THE WAY THE

10:11AM 10   EVIDENCE HAS COME IN, SOME OF THEM ARE REQUIRED TO HELP CLEAR

10:11AM 11   UP JUROR CONFUSION ABOUT WHAT IS AND ISN'T REQUIRED UNDER THE

10:11AM 12   LAW.

10:11AM 13       THE COURT:  THANK YOU.

10:11AM 14   MS. SAHARIA?

10:11AM 15       MS. SAHARIA:  YES.

10:11AM 16       AGAIN, OUR FUNDAMENTAL POINT IS THAT THE FIRST SENTENCE OF

10:11AM 17   THIS PARAGRAPH, WHICH MS. VOLKAR DID NOT ADDRESS, THREATENS TO

10:12AM 18   CONSTRUCTIVELY AMEND THE INDICTMENT WHICH CHARGES FALSE

10:12AM 19   STATEMENTS.

10:12AM 20       IT WILL BE HIGHLY CONFUSING TO THE JURY TO TELL THE JURY

10:12AM 21   THAT IT DOESN'T NEED TO FIND SPECIFIC FALSE STATEMENTS WHEN THE

10:12AM 22   INDICTMENT, THAT'S THE THEORY OF LIABILITY IN THIS CASE.  THE

10:12AM 23   THEORY OF LIABILITY IS ONE BASED ON FALSE STATEMENTS, NOT, YOU

10:12AM 24   KNOW, SOME OTHER SCHEME TO DEFRAUD, LIKE CHECK KITING OR

10:12AM 25   SOMETHING.

10:12AM   1        I THINK THE CASES THAT INVOLVE CONDUCT, AS OPPOSED TO

10:12AM   2   STATEMENTS, INVOLVE THINGS LIKE OF THAT NATURE.

10:12AM   3        SO I THINK THAT THAT FIRST SENTENCE IS VERY MISLEADING IN

10:12AM   4   THE CONTEXT OF THE ALLEGATIONS IN THIS CASE.

10:12AM   5              THE COURT:  IN REGARDS TO OUR CASE?

10:12AM   6              MS. SAHARIA:  EXACTLY, YOUR HONOR.

10:12AM   7              THE COURT:  AND, MS. VOLKAR, WHAT ABOUT THAT?  IS

10:12AM   8   THIS, IS THIS -- THAT FIRST SENTENCE, AND I -- TO TAKE

10:12AM   9   MS. SAHARIA'S POINT, AND I'M NOT SAYING I AGREE WITH IT, BUT

10:12AM  10   SHE EXPRESSES CONCERN THAT THIS IS ABOUT SPECIFIC FALSE

10:13AM  11   STATEMENTS, ISN'T IT?  I THINK THAT'S WHAT SHE'S SAYING THE

10:13AM  12   CASE IS ABOUT.

10:13AM  13        AND DOES THIS MISINFORM?  SHOULD IT BE REWORDED IN SOME

10:13AM  14   OTHER MANNER TO CAPTURE THE SAME SENTIMENT?

10:13AM  15              MS. VOLKAR:  YOUR HONOR, I DO BELIEVE THAT THERE IS

10:13AM  16   THE MODEL INSTRUCTION THAT WE HAVEN'T GOTTEN TO YET ON WHAT A

10:13AM  17   SCHEME TO DEFRAUD IS, SO I'M SORRY THAT I DON'T HAVE IT ALL

10:13AM  18   RIGHT IN FRONT OF ME AND RIGHT IN MIND AT THE MOMENT.

10:13AM  19        I DON'T THINK IT IS A CONSTRUCTIVE AMENDMENT.  I DO THINK

10:13AM  20   THAT IT'S A STATEMENT OF NINTH CIRCUIT LAW, WHICH IS, WHAT IS A

10:13AM  21   SCHEME TO DEFRAUD?

10:13AM  22        A SCHEME TO DEFRAUD IS A BROADER SCHEME.  IT DOESN'T

10:13AM  23   NECESSARILY HAVE TO BE THIS ONE FALSE STATEMENT TO THIS PERSON

10:13AM  24   ON X DATE.

10:13AM  25        AND I THINK THAT IS THE SENTIMENT THAT IS TRYING TO BE --

8265

10:13AM 1    THAT IS EXPRESSED IN THIS STATEMENT.

10:13AM 2         NOW, IF IT NEEDS TO BE SLIGHTLY REWORDED, MY UNDERSTANDING

10:14AM 3    IS -- I BELIEVE THAT I PULLED THIS FROM THE INSTRUCTIONS IN THE

10:14AM 4    HUSSAIN CASE, BUT AGAIN, IF IT NEEDS TO BE SLIGHTLY REWORDED,

10:14AM 5    WE CAN WORK ON THAT.

10:14AM 6         BUT I THINK AS A GENERAL PRINCIPLE, AND I DON'T THINK IT'S

10:14AM 7    A CONSTRUCTIVE VARIANCE, IS THAT IN A SCHEME TO DEFRAUD, IT'S

10:14AM 8    NOT BASED ON ONE SINGLE MISSTATEMENT MADE TO ONE SINGLE PERSON.

10:14AM 9    IT IS AN OVERARCHING SCHEME THAT COULD INVOLVE MULTIPLE

10:14AM 10   MISREPRESENTATIONS OR MULTIPLE MISSTATEMENTS TO DIFFERENT

10:14AM 11   PARTIES, AND THAT IS THE CONCEPT THAT WE WERE TRYING TO CAPTURE

10:14AM 12   HERE.

10:14AM 13        THE COURT:  I SEE.  ALL RIGHT.

10:14AM 14        MS. SAHARIA:  I'M WILLING TO DISCUSS WITH MY TEAM

10:14AM 15   AND MEET AND CONFER WITH MS. VOLKAR ON THE SECOND SENTENCE.

10:14AM 16        BUT THE FIRST SENTENCE, EVEN IF IT'S A CORRECT STATEMENT

10:14AM 17   OF THE LAW IN THE ABSTRACT, IT'S NOT A CORRECT STATEMENT OF THE

10:14AM 18   LAW AS IT APPLIES AS THE GOVERNMENT CHARGED THIS CASE.  THAT'S

10:14AM 19   OUR FUNDAMENTAL POINT.

10:14AM 20        THE COURT:  SURE.

10:14AM 21        WELL, I'M CURIOUS, MS. VOLKAR, WHETHER YOU CAN LOOK AT

10:14AM 22   THAT FIRST SENTENCE AND SEE IF YOU NEED IT, IF IT'S NEEDED IN

10:14AM 23   THE CASE.  AND IF SO, IF THERE'S SOME MODIFICATION THAT IS

10:14AM 24   REQUIRED TO FIT THE FACTS IN OUR CASE DIFFERENT THAN WHAT IS

10:15AM 25   HERE, AND I'LL CHARGE YOU WITH DOING THAT AND WE'LL HAVE SOME

8266

10:15AM 1   ADDITIONAL DISCUSSION ABOUT THIS.

10:15AM 2            MS. VOLKAR:  UNDERSTOOD.  THANK YOU, YOUR HONOR.

10:15AM 3            MS. SAHARIA:  OKAY.  THE NEXT ISSUE IS THE

10:15AM 4   ADDITIONAL LANGUAGE, WHICH IS -- I'LL JUST READ IT TO BE CLEAR.

10:15AM 5   "IT DOES NOT MATTER WHETHER THE MATERIAL TRANSMITTED BY WIRE

10:15AM 6   WAS ITSELF FALSE OR DECEPTIVE SO LONG AS THE WIRE COMMUNICATION

10:15AM 7   WAS USED AS A PART OF THE SCHEME, NOR DOES IT MATTER WHETHER

10:15AM 8   THE SCHEME OR PLAN WAS SUCCESSFUL OR THAT ANY MONEY OR PROPERTY

10:15AM 9   WAS OBTAINED."

10:15AM 10       THIS REALLY COVERS TWO DIFFERENT CONCEPTS, SO LET ME JUST

10:15AM 11  TAKE THEM IN TURN.

10:15AM 12       THE FIRST IS THE PART BEFORE THE COMMA ABOUT THE

10:15AM 13  TRANSMISSION OF THE WIRE.

10:15AM 14       THAT IS AN INCORRECT DILUTION, IN OUR VIEW, OF THE WIRE

10:15AM 15  ELEMENT.  THE WIRE ELEMENT REQUIRES THAT THE DEFENDANT USE AN

10:15AM 16  INTERSTATE WIRE COMMUNICATION TO CARRY OUT OR ATTEMPT TO CARRY

10:16AM 17  OUT AN ESSENTIAL PART OF THE SCHEME.  THAT IS THE LANGUAGE IN

10:16AM 18  THE MODEL INSTRUCTION THAT COVERS THAT WIRE ELEMENT.

10:16AM 19       AND THIS LANGUAGE IS SIMPLY SAYING THAT THE WIRE

10:16AM 20  COMMUNICATION NEEDED TO BE USED AS A PART OF THE SCHEME, AS

10:16AM 21  OPPOSED TO, TO CARRY OUT AN ESSENTIAL PART OF THE SCHEME.

10:16AM 22       SO THOSE TWO PHRASES ARE SIMPLY INCONSISTENT WITH EACH

10:16AM 23  OTHER, AND WE THINK IT'S AN ERROR TO INCLUDE THAT LANGUAGE FOR

10:16AM 24  THAT REASON.

10:16AM 25            MS. VOLKAR:  YOUR HONOR, THIS I WAS ABLE TO LOCATE

10:16AM 1    IN THE TIME WHILE UP HERE.  THIS WAS PULLED DIRECTLY FROM THE

10:16AM 2    HUSSAIN INSTRUCTIONS GIVEN BY JUDGE BREYER.  IT IS AN ACCURATE

10:16AM 3    STATEMENT OF NINTH CIRCUIT LAW.

10:16AM 4        I BELIEVE IT'S ALSO, AT LEAST THE SECOND HALF OF IT, THE

10:16AM 5    PART THAT THE SCHEME OR PLAN NEED NOT BE SUCCESSFUL, WHICH I

10:16AM 6    THINK WE MAY HAVE FURTHER ARGUMENT ON AS WE CONTINUE, WAS

10:16AM 7    REITERATED BY YOUR HONOR IN THE CHANG ORDER FROM LAST YEAR.

10:17AM 8        AND, AGAIN, I THINK IT'S BLACK LETTER NINTH CIRCUIT LAW

10:17AM 9    AND I THINK IT'S IMPORTANT TO LET THE JURY KNOW WHAT THE LAW

10:17AM 10   IS, AND IT MAY BE THAT THE INSTRUCTION THAT THE GOVERNMENT

10:17AM 11   PROPOSED LATER COVERS THIS CONCEPT, AND THEN PERHAPS WE CAN

10:17AM 12   STRIKE THIS SENTENCE.

10:17AM 13       BUT OUT OF AN ABUNDANCE -- JUST IN CASE THE GOVERNMENT --

10:17AM 14   THE COURT WAS NOT INCLINED TO ADOPT THE GOVERNMENT'S LATER

10:17AM 15   PROPOSED INSTRUCTION -- WHICH, OF COURSE, ISN'T BASED ON THE

10:17AM 16   MODEL -- THIS IS SOMETHING THAT HAS BEEN DONE IN THIS DISTRICT,

10:17AM 17   AND THEREFORE, WE WANTED TO USE SOMETHING THAT HAD CLEAR

10:17AM 18   PRECEDENT, AND THAT'S WHY WE PROPOSED THIS LANGUAGE.

10:17AM 19       THE COURT:  WELL, I LOOKED AT THIS WITH THE SAME,

10:17AM 20   THE SAME LENS AS OUR PREVIOUS DISCUSSION, WHETHER OR NOT THIS

10:17AM 21   LANGUAGE FITS THE FACTS OF OUR CASE, AND IT'S -- I THINK YOU

10:17AM 22   BOTH TOLD ME YOUR POSITIONS ON THAT.

10:17AM 23       I'M NOT SURE WHETHER OR NOT A MEET AND CONFER ON THIS IS

10:17AM 24   GOING TO BE HELPFUL.

10:18AM 25       MS. SAHARIA:  WELL, LET ME ADDRESS THE SUCCESS

| | | |
|---|---|---|
| 10:18AM | 1 | POINT. |
| 10:18AM | 2 | I THINK, AS MS. VOLKAR NOTED, THERE'S THIS ONE PHRASE |
| 10:18AM | 3 | HERE, AND THEN THE GOVERNMENT HAS PROPOSED AN ENTIRELY SEPARATE |
| 10:18AM | 4 | INSTRUCTION ON SUCCESS OF THE SCHEME. |
| 10:18AM | 5 | I DON'T UNDERSTAND THE PURPOSE OF THAT INSTRUCTION ON THE |
| 10:18AM | 6 | FACTS OF THIS CASE.  I THINK IT WILL MISLEAD THE JURY.  NO ONE |
| 10:18AM | 7 | IS CLAIMING IN THIS CASE THAT THE SCHEME, THE ALLEGED SCHEME |
| 10:18AM | 8 | WAS NOT SUCCESSFUL. |
| 10:18AM | 9 | THE GOVERNMENT'S CLAIM IS THAT MS. HOLMES DEFRAUDED |
| 10:18AM | 10 | INVESTORS AND THEY DID GIVE MONEY TO THERANOS, AND THAT SHE |
| 10:18AM | 11 | DEFRAUDED PAYING PATIENTS, AND THEY DID PAY MONEY. |
| 10:18AM | 12 | OF COURSE, WE DISAGREE WITH THOSE ALLEGATIONS, BUT THAT IS |
| 10:18AM | 13 | THE THEORY OF THIS CASE.  SO WHY IT'S NECESSARY TO TELL THE |
| 10:18AM | 14 | JURY THAT SUCCESS OF THE ALLEGED SCHEME IS NOT -- IS |
| 10:18AM | 15 | IMMATERIAL.  I JUST DON'T UNDERSTAND. |
| 10:18AM | 16 | SO THAT'S MY CONCERN ABOUT CONFUSION. |
| 10:19AM | 17 | NOW, WE DO SEPARATELY TAKE THE POSITION THAT THIS |
| 10:19AM | 18 | PARTICULAR LANGUAGE, AS WELL AS THE SIMILAR LANGUAGE THAT THE |
| 10:19AM | 19 | GOVERNMENT INCLUDED LATER, IS INCORRECT AS A MATTER OF LAW. |
| 10:19AM | 20 | IT IS CERTAINLY TRUE THAT WHETHER A SCHEME OR PLAN IS |
| 10:19AM | 21 | SUCCESSFUL IS NOT REQUIRED.  IT IS NOT AN ELEMENT OF WIRE |
| 10:19AM | 22 | FRAUD. |
| 10:19AM | 23 | AND THE GOVERNMENT ADDED A SENTENCE TO THAT EFFECT IN |
| 10:19AM | 24 | THEIR LATER SUCCESS OF THE SCHEME INSTRUCTION, WHICH WAS AT |
| 10:19AM | 25 | PAGE 46 OF THEIR ORIGINAL SET.  I'M NOT SURE WHAT PAGE IT IS ON |

10:19AM 1   NOW.

10:19AM 2        BUT THAT'S VERY DIFFERENT THAN SAYING IT'S IMMATERIAL.

10:19AM 3   YOU CAN IMAGINE A CASE WHERE A SCHEME DOESN'T SUCCEED AND THAT

10:19AM 4   IS RELEVANT EVIDENCE THAT THE REPRESENTATIONS WERE NOT

10:19AM 5   MATERIAL, FOR INSTANCE.

10:19AM 6        AND WE CITED TO THE COURT THE LESTERBERG CASE WHICH STANDS

10:19AM 7   FOR THE PROPOSITION THAT REFUNDS CAN BE RELEVANT TO INTENT OR

10:20AM 8   MATERIALITY.

10:20AM 9        AND THE SAME WITH THE SANDS MODEL INSTRUCTIONS THAT MAKE

10:20AM 10  THIS POINT VERY CLEAR, THAT WHETHER THE SCHEME IS SUCCESSFUL

10:20AM 11  MAY BE RELEVANT TO THE JURY EVEN IF IT'S NOT AN ELEMENT.

10:20AM 12       AND USING THE LANGUAGE THAT THE GOVERNMENT HAS PROPOSED,

10:20AM 13  WHICH IS TO SAY "NOR DOES IT MATTER," OR LATER THEY USE THE

10:20AM 14  LANGUAGE "IMMATERIAL" WE THINK IS AN INCORRECT STATEMENT OF THE

10:20AM 15  LAW FOR THAT REASON.

10:20AM 16       THE COURT:  THE SUCCESS OF THE FRAUD IS AT 1176,

10:20AM 17  PAGE 26, I BELIEVE.

10:20AM 18       MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

10:20AM 19       MS. SAHARIA:  YES, YOUR HONOR.

10:20AM 20       AND OUR POINT THERE IS THAT -- SO THEY HAVE ADDED A NEW

10:20AM 21  SENTENCE TO THIS IN THE MOST RECENT VERSION, WHICH IS THE

10:20AM 22  SECOND SENTENCE.  "IT IS NOT NECESSARY THAT THE DEFENDANT MADE

10:20AM 23  A PROFIT OR THAT ANYONE ACTUALLY SUFFERED A LOSS."

10:20AM 24       THAT IS, I BELIEVE, A CORRECT STATEMENT OF THE LAW.

10:20AM 25       I DON'T UNDERSTAND ITS PURPOSE IN THIS CASE.  IT'S

10:20AM  1    COMPLETELY INCONGRUOUS WITH THE FACTS OF THE CASE AND I THINK

10:21AM  2    ITS ONLY PURPOSE WILL BE TO MISLEAD THE JURY.

10:21AM  3         BUT THE FIRST SENTENCE, WE MAINTAIN THE "NOT MATERIAL"

10:21AM  4    SENTENCE IS A MISSTATEMENT OF THE LAW BECAUSE IT SUGGESTS TO

10:21AM  5    THE JURY THAT IT'S IRRELEVANT, AND THAT'S JUST NOT THE CASE.

10:21AM  6              THE COURT:  OKAY.

10:21AM  7              MS. VOLKAR:  YOUR HONOR, THIS IS ANOTHER AREA WHERE

10:21AM  8    I WAS PREPARED TO TALK ABOUT THE SENTENCE ADDED TO THAT, BUT

10:21AM  9    WE'VE SORT OF MOVED INTO THE SUCCESSFUL WIRE FRAUD, SO I'D LIKE

10:21AM  10   TO TURN IT OVER TO MR. LEACH.

10:21AM  11             THE COURT:  SURE.  OF COURSE.

10:21AM  12        MR. LEACH, YOU CAN TAKE YOUR MASK OFF IF YOU WOULD LIKE.

10:21AM  13             MR. LEACH:  THANK YOU, YOUR HONOR.

10:21AM  14        SO THE FIRST SENTENCE OF -- I'M ON PAGE 26 AT

10:21AM  15   DOCUMENT 1176, SUCCESS OF THE WIRE FRAUD SCHEME.

10:21AM  16        THAT FIRST SENTENCE IS DRAWN DIRECTLY FROM YOUR HONOR'S

10:21AM  17   INSTRUCTIONS IN A PRIOR CASE.

10:21AM  18        I HEAR MS. SAHARIA'S POINT THAT SUCCESS OF THE SCHEME MAY

10:21AM  19   BE RELEVANT TO A JURY'S ASSESSMENT OF WHETHER THE

10:21AM  20   REPRESENTATIONS WERE MATERIAL.  I THINK THAT'S CURATIVE.  WE

10:22AM  21   SIMPLY SAY SUCCESS OF THE SCHEME IS NOT REQUIRED FOR -- AS AN

10:22AM  22   ELEMENT OF WIRE FRAUD.  SO I THINK THAT CONCERN COULD BE

10:22AM  23   ADDRESSED THAT WAY.

10:22AM  24        WE ADDED THE SECOND SENTENCE BECAUSE I THINK THERE HAS

10:22AM  25   BEEN SOME SUGGESTION FROM THE DEFENSE IN THIS CASE THAT THE

10:22AM   1      DEFENDANT DIDN'T SELL HER STOCK AND, THEREFORE, SHE DIDN'T HAVE

10:22AM   2      A MOTIVE.

10:22AM   3          AND WE DON'T WANT THE JURORS TO THINK THAT PROFIT IS

10:22AM   4      SOMEHOW REQUIRED IN ORDER TO MEET THE ELEMENTS HERE.

10:22AM   5          I ALSO THINK THERE'S BEEN SOME SUGGESTION THAT THESE ARE

10:22AM   6      SOPHISTICATED INVESTORS WHO ARE WELL POSITIONED, OR WHO ARE --

10:22AM   7      WHO HAVE SUFFICIENT RESOURCES TO ABSORB THESE LOSSES, AND WE

10:22AM   8      DON'T WANT THE JURORS TO THINK THAT YOU NEED TO FIND THAT THIS

10:22AM   9      PARTICULAR VICTIM LOST MONEY OR THAT THIS LOSS WAS PARTICULARLY

10:22AM   10     IMPORTANT TO THEM.

10:22AM   11         SO I DO THINK THAT THIS SERVES A PURPOSE, AND WHAT I'M

10:22AM   12     HEARING FROM THE DEFENSE IS THAT THESE ARE, WITH THE EXCEPTION

10:22AM   13     OF THE WORD "MATERIAL" THERE, THESE ARE ACCURATE STATEMENTS OF

10:22AM   14     THE LAW, AND FOR THOSE REASONS WE THINK THIS INSTRUCTION IS

10:23AM   15     APPROPRIATE.

10:23AM   16             THE COURT:  WELL, AS TO THE -- I'M SORRY.  GO AHEAD.

10:23AM   17             MR. LEACH:  GOING BACK TO THE WIRE FRAUD INSTRUCTION

10:23AM   18     ITSELF, IF I WAS HEARING THE DEFENSE CORRECTLY, THE OBJECTION

10:23AM   19     IS THAT THE WIRE NEEDS TO BE IN FURTHERANCE OF AN ESSENTIAL

10:23AM   20     ELEMENT OF THE SCHEME OR BE AN ESSENTIAL PART OF THE SCHEME.

10:23AM   21         I THINK THAT OBJECTION COULD BE CURED BY ADDING WORDS TO

10:23AM   22     THE LANGUAGE THAT HAS BEEN USED BEFORE.

10:23AM   23         BUT I DON'T HEAR ANY DISAGREEMENT WITH THE PRINCIPLE THAT

10:23AM   24     THE WIRING ITSELF DOESN'T HAVE TO BE FALSE, AND WE JUST DON'T

10:23AM   25     WANT THERE TO BE ANY CONFUSION AMONG THE JURORS THAT THEY HAVE

10:23AM  1    TO SEE A FALSE STATEMENT IN THE WIRE.  I THINK THAT'S A COMMON

10:23AM  2    MISUNDERSTANDING.

10:23AM  3         THE COURT:  OKAY.

10:23AM  4         MS. SAHARIA, TO MR. LEACH'S POINT, THAT LAST LANGUAGE IN

10:23AM  5    THEIR SUCCESS OF THE WIRE FRAUD, 1176, PAGE 26, IT SEEMS TO ME

10:23AM  6    THAT'S WHAT CAME TO MY MIND IS THAT THERE WAS EVIDENCE THAT WAS

10:23AM  7    BROUGHT OUT FROM VARIOUS WITNESSES ABOUT WHETHER OR NOT

10:23AM  8    MS. HOLMES HAD SECURED PROFIT; HER SALARY, I THINK, WAS IN

10:24AM  9    EVIDENCE; AND ALSO THERE WAS EVIDENCE, AS MR. LEACH POINTS OUT,

10:24AM  10   THROUGH CROSS-EXAMINATION OF WITNESSES, ABOUT THERE BEING

10:24AM  11   SUCCESSFUL INVESTORS AND THOSE TYPES OF THINGS, WHICH SEEMS TO

10:24AM  12   SUGGEST WHY THAT WOULD BE IN THERE.  I'M NOT PUTTING MYSELF IN

10:24AM  13   THE GOVERNMENT'S SHOES.

10:24AM  14        MS. SAHARIA:  UNDERSTOOD.

10:24AM  15        THE COURT:  I'M JUST SAYING, WELL, PROBABLY THAT'S

10:24AM  16   WHY THEY DID IT.

10:24AM  17        MS. SAHARIA:  LET ME CONFER.  THEY JUST ADDED THIS

10:24AM  18   ONE YESTERDAY, SO LET ME CONFER WITH MY TEAM.  I HAVEN'T HAD A

10:24AM  19   CHANCE TO DISCUSS THAT PARTICULAR SENTENCE WITH THE TEAM.

10:24AM  20        THE COURT:  RIGHT.

10:24AM  21        MS. SAHARIA:  I THINK YOUR HONOR HAS HEARD OUR

10:24AM  22   OBJECTIONS MORE GENERALLY ON THIS ISSUE.

10:24AM  23        THE COURT:  RIGHT.  OKAY.

10:24AM  24     ANYTHING FURTHER, MR. LEACH, ON THIS TOPIC?

10:24AM  25        MR. LEACH:  NO, YOUR HONOR.  THANK YOU.

| | | |
|---|---|---|
| 10:24AM | 1 | THE COURT:  GREAT.  THANK YOU. |
| 10:24AM | 2 | MS. SAHARIA:  JUST TO FINALIZE ON THIS POINT, I |
| 10:24AM | 3 | THINK THERE'S A SIMILAR SENTENCE THAT THEY HAVE ADDED INTO THE |
| 10:25AM | 4 | WIRE FRAUD INSTRUCTION, WHICH I THINK IS OF THE SAME VEIN -- |
| 10:25AM | 5 | AND THIS IS AT THE TOP OF 16 AT ECF 1174.  "SIMILARLY, IT DOES |
| 10:25AM | 6 | NOT MATTER IF THE DEFENDANT INTENDED TO REPAY THE MONEY |
| 10:25AM | 7 | OBTAINED THROUGH DECEPTION." |
| 10:25AM | 8 | WE ARE, AGAIN, VERY CONCERNED THAT THIS WILL CONFUSE THE |
| 10:25AM | 9 | JURY.  A DEFENDANT'S BELIEF THAT INVESTORS WILL MAKE MONEY IS |
| 10:25AM | 10 | RELEVANT TO THE CASE, AND WE'VE HAD THAT DISCUSSION BACK A LONG |
| 10:25AM | 11 | TIME AGO AT THE MOTION IN LIMINE STAGE. |
| 10:25AM | 12 | THIS IS JUST AN ARGUMENTATIVE SENTENCE.  IT DOESN'T REALLY |
| 10:25AM | 13 | FIT THE FACTS OF THIS CASE.  IT'S GOING TO CONFUSE THE JURY. |
| 10:25AM | 14 | WE THINK AS RAISED, IT WOULD NEED A LOT MORE CONTEXT TO MAKE IT |
| 10:26AM | 15 | A NONCONFUSING, NONMISLEADING STATEMENT.  WE WOULD NEED TO ADD |
| 10:26AM | 16 | LANGUAGE TO IT SIMILAR TO WHAT I JUST INDICATED ABOUT A |
| 10:26AM | 17 | DEFENDANT'S BELIEF THAT INVESTORS WILL MAKE MONEY MAY WELL BE |
| 10:26AM | 18 | RELEVANT.  IN FACT, IT'S QUITE RELEVANT, AND SO WE OBJECT TO |
| 10:26AM | 19 | THAT SENTENCE. |
| 10:26AM | 20 | THE COURT:  MR. LEACH? |
| 10:26AM | 21 | MR. LEACH:  YOUR HONOR, I THINK THIS INSTRUCTION IS |
| 10:26AM | 22 | IMPORTANT FOR THE REASONS UNDERSCORED BY WHAT MS. SAHARIA JUST |
| 10:26AM | 23 | SAID. |
| 10:26AM | 24 | THE INTENT REQUIRED FOR WIRE FRAUD IS AN INTENT TO DECEIVE |
| 10:26AM | 25 | OR CHEAT.  IT'S KNOWLEDGE THAT THE STATEMENTS THAT YOU'RE |

10:26AM  1    MAKING TO THE VICTIM ARE FALSE AND MISLEADING.

10:26AM  2         AND IT DOES NOT MATTER IF YOU HAVE A GOOD FAITH BELIEF

10:26AM  3    THAT THEY'RE GOING TO GET REPAID SOME DAY.  IT DOESN'T MATTER

10:26AM  4    IF YOU HAVE A WIDE HEART HOPING THAT IT'S ALL GOING TO WORK OUT

10:26AM  5    AT THE END OF THE DAY.

10:26AM  6         IF YOU KNOW THAT THE STATEMENTS YOU'RE MAKING TO THE

10:26AM  7    VICTIM ARE FALSE, THAT'S THE INTENT THAT'S RELEVANT FOR WIRE

10:26AM  8    FRAUD.

10:26AM  9         AND WE DON'T WANT THE JURORS TO BE CONFUSED HERE THAT, YOU

10:26AM 10    KNOW, A HOPE THAT IT'S GOING TO WORK OUT; OR YOU THINK, IN THE

10:27AM 11    PONZI SCHEME CONTEXT, THAT SOME DAY SOMETHING IS GOING TO COME

10:27AM 12    THROUGH, THAT THAT NEGATES THE INTENT THAT'S REQUIRED FOR WIRE

10:27AM 13    FRAUD, WHICH IS THE INTENT TO MISLEAD SOMEBODY THROUGH FALSE

10:27AM 14    AND MISLEADING STATEMENTS.  THAT'S THE INTENT THAT MATTERS.

10:27AM 15         AND, YOU KNOW, I THINK WE'VE HEARD A LOT OF SUGGESTIONS

10:27AM 16    FROM THE DEFENSE IN CROSS-EXAMINATION THAT EVERYBODY HOPED THIS

10:27AM 17    WAS GOING TO WORK OUT AT THE END OF THE DAY, AND THAT VERY WELL

10:27AM 18    MIGHT BE NICE AND TRUE.

10:27AM 19         BUT THAT'S NOT REALLY GETTING AT THE CORE OF THE MENTAL

10:27AM 20    STATE THAT IS REQUIRED HERE.

10:27AM 21         AND SO THIS TIES WITH SOME OF THE OBJECTIONS THAT WE'RE

10:27AM 22    GOING TO HAVE TO THEIR GOOD FAITH ARGUMENT, BUT WE THINK IT'S

10:27AM 23    VERY IMPORTANT TO GET ACROSS THIS CONCEPT THAT A GOOD FAITH

10:27AM 24    INTENT TO REPAY AT THE END OF THE DAY DOESN'T NEGATE KNOWINGLY

10:27AM 25    MAKING FALSE STATEMENTS TO SOMEBODY.

10:27AM  1              THE COURT:  DO YOU PART COMPANY WITH THAT CONCEPT,

10:27AM  2    MS. SAHARIA?

10:27AM  3              MS. SAHARIA:  I'M SORRY?

10:27AM  4              THE COURT:  DO YOU PART COMPANY WITH THAT CONCEPT?

10:27AM  5              MS. SAHARIA:  NO, YOUR HONOR.  AND, IN FACT, THE

10:28AM  6    COURT HAS ALREADY ENTERED AN ORDER IN CONNECTION WITH THE

10:28AM  7    MOTION IN LIMINE PROHIBITING US FROM MAKING THAT ARGUMENT, AND

10:28AM  8    OF COURSE WE DON'T INTEND TO MAKE THAT ARGUMENT.

10:28AM  9         THE INTENT THAT IS REQUIRED UNDER THE STATUTE IS ALREADY

10:28AM 10    CONVEYED IN THE INSTRUCTIONS.

10:28AM 11         OF COURSE WE CANNOT ARGUE TO THE JURY THAT IF MS. HOLMES

10:28AM 12    INTENDED TO DECEIVE INVESTORS, IT DOESN'T MATTER SO LONG AS SHE

10:28AM 13    THOUGHT AT SOME POINT IN THE FUTURE THEY WOULD GET REPAID.  WE

10:28AM 14    CAN'T MAKE THAT ARGUMENT.  WE'RE NOT GOING TO MAKE THAT

10:28AM 15    ARGUMENT.

10:28AM 16         THIS INSTRUCTION IS A STRAW MAN AGAINST AN ARGUMENT THAT

10:28AM 17    WE'RE NOT GOING TO BE MAKING IN THIS CASE.

10:28AM 18         AGAIN, FOR THE REASONS I'VE ALREADY SAID, WE'RE CONCERNED

10:28AM 19    IT WILL CONFUSE THE JURY ABOUT THE FACT THAT IF SHE BELIEVED

10:28AM 20    THE INVESTORS WOULD MAKE MONEY, THAT IS RELEVANT.

10:28AM 21         SO IF THE GOVERNMENT IS GOING TO INSIST ON INCLUDING THIS

10:28AM 22    LANGUAGE, WE WOULD PROPOSE ADDITIONAL LANGUAGE TO ACCOMPANY IT

10:28AM 23    TO GIVE THE JURY KIND OF A FULSOME UNDERSTANDING OF THESE

10:28AM 24    ISSUES AROUND INTENT, AND WE THINK IT'S PERFECTLY COVERED BY

10:28AM 25    THE INSTRUCTIONS ALREADY AND IS UNNECESSARY.

8276

10:29AM  1          THE COURT:  DOES THIS TOUCH ON YOUR, I DON'T WANT TO

10:29AM  2   GET AHEAD OF OURSELVES, BUT YOUR GOOD FAITH OFFERING, YOUR

10:29AM  3   DESIRE TO HAVE A GOOD FAITH -- I'LL JUST CALL IT THAT --

10:29AM  4   INSTRUCTION?  IT SEEMS LIKE THESE TWO ARE INTERTWINED.

10:29AM  5          MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR, BECAUSE

10:29AM  6   A GOOD FAITH INSTRUCTION IS COMMONLY GIVEN IN CASES OF THIS

10:29AM  7   SORT, AND I'LL TURN TO THAT WHEN WE TALK A LITTLE BIT ABOUT

10:29AM  8   PUFFERY AND THE CASES AROUND PUFFERY INSTRUCTIONS AND GOOD

10:29AM  9   FAITH INSTRUCTIONS.

10:29AM  10         BUT I'M, I'M HAPPY TO KIND OF TAKE THIS SENTENCE AND SEE

10:29AM  11  IF THERE'S SOME WAY TO -- IF THE GOVERNMENT WANTS TO PROPOSE A

10:29AM  12  WAY TO INCORPORATE THIS CONCEPT INTO OUR GOOD FAITH

10:29AM  13  INSTRUCTION, WE CAN MEET AND CONFER AROUND THAT.  I'D BE HAPPY

10:29AM  14  TO MEET AND CONFER WITH MR. LEACH ABOUT THAT.

10:29AM  15         THE COURT:  RESTRAIN YOUR ENTHUSIASM, MR. LEACH.

10:29AM  16         MR. LEACH:  I'M DOING MY BEST.

10:30AM  17         THE COURT:  SO THE CONCEPT HERE IS ONE THAT I THINK

10:30AM  18  WE ALL AGREE WITH, THE FACT THAT A DEFENDANT, AN ACCUSED,

10:30AM  19  BELIEVED THAT, OH, THIS IS GOING TO SUCCEED, AND SO THAT'S A

10:30AM  20  DEFENSE, BECAUSE I KNEW IT WAS GOING TO SUCCEED, I THINK THAT'S

10:30AM  21  WHAT WE'RE TALKING ABOUT IS -- AND YOU AGREE WITH THAT GENERAL

10:30AM  22  CONCEPT?

10:30AM  23         MS. SAHARIA:  NOT QUITE, YOUR HONOR.

10:30AM  24         I THINK THE FACT THAT A DEFENDANT THINKS THAT HER VENTURE

10:30AM  25  IS GOING TO SUCCEED IS HIGHLY RELEVANT EVIDENCE OF INTENT THAT

| | | |
|---|---|---|
| 10:30AM | 1 | IS ENTIRELY PROPER. |
| 10:30AM | 2 | WHAT IS NOT PROPER IS FOR -- IS TO ARGUE THAT A DEFENDANT |
| 10:30AM | 3 | KNOWINGLY MADE FALSE STATEMENTS AND THOUGHT NONETHELESS, I |
| 10:30AM | 4 | THINK IT'S GOING TO SUCCEED.  THAT IS THE IMPROPER ARGUMENT. |
| 10:30AM | 5 | BUT EVIDENCE THAT A DEFENDANT THOUGHT HER VENTURE WAS |
| 10:30AM | 6 | GOING TO SUCCEED IS HIGHLY RELEVANT, WE BELIEVE, TO HER INTENT |
| 10:30AM | 7 | BECAUSE IT SHOWS THAT SHE BELIEVED THAT WHAT SHE WAS SAYING WAS |
| 10:30AM | 8 | TRUE. |
| 10:30AM | 9 | THE COURT:  AND I GUESS WHAT I WAS REFERRING TO IS |
| 10:30AM | 10 | THAT VICTIMS WOULD GET REPAID THROUGH WHATEVER IT IS THE |
| 10:31AM | 11 | SCHEME, THE PLAN WAS. |
| 10:31AM | 12 | MS. SAHARIA:  IF THERE OTHERWISE IS AN INTENT TO |
| 10:31AM | 13 | DEFRAUD, YES, I AGREE WITH THAT, YOUR HONOR. |
| 10:31AM | 14 | THE COURT:  THAT'S RIGHT. |
| 10:31AM | 15 | OKAY.  MR. LEACH? |
| 10:31AM | 16 | MR. LEACH:  AGAIN, YOUR HONOR, IT'S -- I THINK, |
| 10:31AM | 17 | BASED ON EVERYTHING THAT MS. SAHARIA JUST SAID, IT'S IMPORTANT |
| 10:31AM | 18 | TO MAKE THIS CONCEPT CLEAR TO THE JURY.  YES, A DEFENDANT'S |
| 10:31AM | 19 | OPTIMISM ABOUT A COMPANY MIGHT HAVE SOME RELEVANCE IN THE CASE |
| 10:31AM | 20 | SOMEWHERE, BUT THE REQUIRED INTENT IS THE INTENT TO DECEIVE AND |
| 10:31AM | 21 | CHEAT. |
| 10:31AM | 22 | AND I'M VERY WORRIED ABOUT JUROR CONFUSION THAT, YOU KNOW, |
| 10:31AM | 23 | BECAUSE THE DEFENDANT HAD A VISION OR BECAUSE THE DEFENDANT, |
| 10:31AM | 24 | YOU KNOW, WAS GUNG HO ABOUT THE COMPANY, THAT THAT THEREFORE |
| 10:31AM | 25 | NEGATES THE INTENT OR THE KNOWLEDGE THAT THE STATEMENTS THAT |

10:31AM 1    SHE'S MAKING ARE FALSE, AND I THINK THAT CONCEPT, IT'S VERY

10:31AM 2    EASY TO MUDDLE THAT GOOD FAITH INTO SOMETHING THAT SUPPORTS AN

10:31AM 3    IMPROPER CONCLUSION BY THE JURY.

10:32AM 4            THE COURT:  ALL RIGHT.  THANK YOU.

10:32AM 5            MS. SAHARIA:  OKAY.  I THINK WE CAN MOVE ON FROM

10:32AM 6    THAT POINT.

10:32AM 7        I'M STILL AT PAGE 16, AND THIS IS THE ISSUE OF DEFINING

10:32AM 8    SCHEME TO DEFRAUD.

10:32AM 9        YOUR HONOR MAY RECALL THAT WE HAD THIS DISCUSSION AT THE

10:32AM 10   TIME OF THE PRELIMINARY INSTRUCTIONS, AND OUR CONCERN WITH THE

10:32AM 11   MODEL INSTRUCTION IS THAT IT DOESN'T DEFINE SCHEME TO DEFRAUD

10:32AM 12   AND THAT A JURY MIGHT BE MISLED FROM THE MODEL LANGUAGE INTO

10:32AM 13   THINKING THAT A SCHEME TO DEFRAUD IS NOT A SCHEME FOR OBTAINING

10:32AM 14   MONEY OR PROPERTY, AND THE SUPREME COURT HAS EXPLAINED HOW THAT

10:32AM 15   SIMPLE READING OF THE STATUTE IN THE MCNALLY CASE IS AN

10:32AM 16   INCORRECT READING OF THE STATUTE.

10:32AM 17       AT THE TIME OF THE PRELIMINARY INSTRUCTIONS, WE PROPOSED

10:32AM 18   THE DEFINITION OF THE SCHEME TO DEFRAUD, WHICH AS I RECALL, THE

10:33AM 19   COURT DID ADD TO THE PRELIMINARY INSTRUCTIONS.

10:33AM 20       WE PROPOSED A SOMEWHAT DIFFERENT ONE FOR THE COURT'S

10:33AM 21   CONSIDERATION NOW, AND THAT'S AT THE PAGE -- LET ME JUST FLIP

10:33AM 22   AHEAD.  THAT'S AT 32 OF OUR SUBMISSION 1174.

10:33AM 23       AND THIS IS STILL BASED ON THE SUPREME COURT'S RECENT CASE

10:33AM 24   IN KELLY, WHICH IS THE MOST RECENT WIRE FRAUD CASE FROM THE

10:33AM 25   COURT.

10:33AM   1       THE PRINCIPAL DIFFERENCE BETWEEN WHAT WE HAD EARLIER

10:33AM   2   PROPOSED AND WHAT WE PROPOSE NOW IS TO USE THE WORD "OBTAIN"

10:33AM   3   MONEY OR PROPERTY" AS OPPOSED TO "DEPRIVE THE VICTIM OF MONEY

10:33AM   4   OR PROPERTY," AND THE REASON FOR THAT IS THAT THE STATUTE USES

10:33AM   5   THE WORD "OBTAIN," AND SO WE THOUGHT IT WAS MORE FAITHFUL TO

10:33AM   6   THE STATUTE AND TO THE NINTH CIRCUIT CASES DISCUSSING THE

10:33AM   7   STATUTE TO USE THE WORD "OBTAIN."

10:34AM   8           THE COURT:  ALL RIGHT.

10:34AM   9           MR. LEACH:  THERE'S NO NEED TO REVISE THE MODEL

10:34AM  10   INSTRUCTION HERE, YOUR HONOR.  THIS HAS BEEN USED REPEATEDLY IN

10:34AM  11   THIS COURT AND BY OTHER JUDGES WITHIN THIS DISTRICT.

10:34AM  12       I THINK THERE'S NO RISK FOR CONFUSION ABOUT WHAT A SCHEME

10:34AM  13   OR PLAN TO DEFRAUD IS.

10:34AM  14       WE WOULD OBJECT TO USING "OBTAIN" RATHER THAN "DEPRIVE."

10:34AM  15   EVEN UNDER THE <u>KELLY</u> CASE AND OTHER RECENT SUPREME COURT CASES,

10:34AM  16   EVEN A TEMPORARY DEPRIVATION OF PROPERTY WOULD BE SUFFICIENT.

10:34AM  17       I THINK THE MORE DEFINITIONS WE ADD HERE, THE MORE RISK OF

10:34AM  18   CONFUSION AND LENGTHENING OF THE INSTRUCTIONS, SO WE WOULD URGE

10:34AM  19   THE COURT TO STICK TO THE MODEL HERE.

10:34AM  20           THE COURT:  I THINK I DID CHANGE THE PRELIMINARY AND

10:34AM  21   GAVE THE DEFENSE VERSION, I THINK.

10:34AM  22           MS. SAHARIA:  YOU DID, YOUR HONOR.

10:34AM  23           THE COURT:  AND I ADOPTED YOUR SUGGESTIONS.

10:34AM  24       AND WHY IS THAT NOT APPROPRIATE NOW TO CONTINUE WITH THAT?

10:35AM  25   PARDON ME.

10:35AM 1          MS. SAHARIA:  I DO THINK IT IS APPROPRIATE TO GIVE A

10:35AM 2     DEFINITION OF SCHEME TO DEFRAUD, FOR THE REASONS THAT WE SAID

10:35AM 3     BOTH AT THAT TIME AND NOW.

10:35AM 4          IT'S JUST WHEN WE LOOKED BACK AT THE LANGUAGE WE HAD

10:35AM 5     PROPOSED, WHICH USED THE LANGUAGE "DEPRIVE," AND WE LOOKED AT

10:35AM 6     THE REST OF THE KELLY CASE, AS WELL AS THE LANGUAGE OF THE

10:35AM 7     STATUTE, IT SEEMED TO US THAT "OBTAIN" IS THE MORE PROPER

10:35AM 8     STANDARD, WHICH WAS THE REASON FOR PROPOSING SLIGHTLY DIFFERENT

10:35AM 9     LANGUAGE.

10:35AM 10          BUT IF THE COURT IS NOT CONVINCED THAT "OBTAIN" NEEDS TO

10:35AM 11     BE THE LANGUAGE, THEN WE WOULD ASK THE COURT TO USE THE

10:35AM 12     LANGUAGE IT USED IN THE PRELIMINARY INSTRUCTIONS AS AN

10:35AM 13     ALTERNATIVE.

10:35AM 14          THE COURT:  ALL RIGHT.  THANK YOU.

10:35AM 15          MS. SAHARIA:  I THINK JUST -- THERE'S STILL A FEW

10:35AM 16     MORE OBJECTIONS ON WIRE FRAUD THAT I'LL JUST KIND OF WALK

10:35AM 17     THROUGH.

10:35AM 18          WE ASKED THE COURT TO GIVE LANGUAGE, THIS IS AT 16 -- THE

10:36AM 19     BOTTOM OF PAGE 16 OF ECF 1174.  THIS COMES STRAIGHT FROM

10:36AM 20     NINTH CIRCUIT LAW, THAT "A SCHEME TO DEFRAUD IS NOT NECESSARILY

10:36AM 21     TO BE INFERRED FROM AN UNPROFITABLE VENTURE," JUST GIVEN THE

10:36AM 22     FACTS OF THIS CASE AND GIVEN THE FACT THAT, OF COURSE, THERANOS

10:36AM 23     NO LONGER EXISTS.

10:36AM 24          THE COURT:  MR. LEACH?

10:36AM 25          MR. LEACH:  WE OBJECT, YOUR HONOR.  I THINK THAT'S

8281

| | | |
|---|---|---|
| 10:36AM | 1 | ARGUMENT. |
| 10:36AM | 2 | THE COURT:  AND THESE ARE YOUR -- IS THIS YOUR 43 |
| 10:36AM | 3 | AND 50, MS. SAHARIA? |
| 10:36AM | 4 | MS. SAHARIA:  I BELIEVE SO, YOUR HONOR.  HOLD ON. |
| 10:37AM | 5 | CORRECT, YOUR HONOR. |
| 10:37AM | 6 | THE COURT:  OKAY. |
| 10:37AM | 7 | MS. SAHARIA:  AND TO THE EXTENT IT'S ARGUMENT, IT'S |
| 10:37AM | 8 | NO LESS ARGUMENT THAN THE POINT WE WERE JUST DISCUSSING, |
| 10:37AM | 9 | YOUR HONOR.  SO I'LL JUST LEAVE IT AT THAT. |
| 10:37AM | 10 | THE COURT:  OKAY.  THANK YOU. |
| 10:37AM | 11 | MS. SAHARIA:  THE NEXT POINT I'LL MAKE IS THAT WE |
| 10:37AM | 12 | REQUEST THAT THE COURT INSTRUCT THE JURY THAT -- AND THIS |
| 10:37AM | 13 | COMES -- THIS IS AT PAGE 17, THAT -- AND THIS IS THE LANGUAGE |
| 10:37AM | 14 | THAT WE ADDED. |
| 10:37AM | 15 | THIS IS AT PAGE 59 OF ECF 809.  WE ADDED LANGUAGE |
| 10:37AM | 16 | EXPLAINING, "IT IS NOT ENOUGH FOR THE GOVERNMENT TO PROVE THAT |
| 10:37AM | 17 | THOSE STATEMENTS CAUSED SOMEONE TO ENTER INTO A TRANSACTION |
| 10:37AM | 18 | THAT HE OR SHE WOULD OTHERWISE HAVE AVOIDED.  IN ORDER TO PROVE |
| 10:37AM | 19 | THAT A SCHEME TO DEFRAUD EXISTED, THE GOVERNMENT MUST PROVE |
| 10:37AM | 20 | BEYOND A REASONABLE DOUBT THAT THE MATERIALLY FALSE AND |
| 10:37AM | 21 | FRAUDULENT PRETENSES, REPRESENTATIONS AND PROMISES |
| 10:38AM | 22 | MISREPRESENTED AN ESSENTIAL ELEMENT OF THE BARGAIN." |
| 10:38AM | 23 | AND THAT POINT IS TO INCORPORATE THE POINT THAT WE HAD |
| 10:38AM | 24 | DISCUSSED WAY BACK WHEN AT THE FIRST MOTION TO DISMISS, WHICH |
| 10:38AM | 25 | IS THAT IF AN ALLEGED VICTIM GOT WHAT THEY THOUGHT THEY WERE |

10:38AM 1    GETTING, FOR EXAMPLE, THEY ACTUALLY GOT AN ACCURATE AND

10:38AM 2    RELIABLE BLOOD TEST, THAT IS NOT WIRE FRAUD, EVEN IF KNOWING

10:38AM 3    WHAT THEY, YOU KNOW, WHAT THEY NOW KNOW, THEY WOULDN'T HAVE

10:38AM 4    ENTERED THAT TRANSACTION.

10:38AM 5         IF THEY GOT WHAT THEY THOUGHT THEY WERE GETTING, THEN

10:38AM 6    THAT'S NOT WIRE FRAUD, AND WE THINK ON THE FACTS OF THIS CASE,

10:38AM 7    THAT'S AN IMPORTANT CONCEPT FOR THE JURY TO HEAR.

10:38AM 8              THE COURT:  MR. LEACH?

10:38AM 9              MR. LEACH:  I THINK THESE ARE ADDITIONS AND NUANCES

10:38AM 10   THAT COULD BE MADE IN VIRTUALLY ANY WIRE FRAUD CASE, AND IT'S

10:38AM 11   ADDING UNNECESSARY DETAIL TO THE MODEL WIRE FRAUD INSTRUCTION.

10:38AM 12        IT'S REALLY A DEFENSE THEORY OF THE CASE, AND I THINK IT

10:39AM 13   UNNECESSARILY MUDDIES THE WATERS, MAKES THE INSTRUCTIONS

10:39AM 14   LONGER, AND REALLY IS INJECTING A DEFENSE ARGUMENT THAT IS

10:39AM 15   BETTER MADE BY THEM AND NOT WITH THE IMPRIMATUR OF THE COURT.

10:39AM 16             THE COURT:  WELL, IT LOOKED -- YOU KNOW, PARDON ME,

10:39AM 17   AND I DON'T MEAN TO BE CRITICAL OF THE WORK PRODUCT, BUT IT

10:39AM 18   JUST LOOKED TO ME -- AND I JUST GAVE IT A HIGH LEVEL

10:39AM 19   GLANCE PERHAPS AND LOOKED AT IT A LITTLE BIT -- IT DID LOOK A

10:39AM 20   LITTLE, YOUR C, WHAT YOU IDENTIFY IN PARAGRAPH C, IT JUST SEEMS

10:39AM 21   TO BE A LOT.  I'M CONCERNED THAT IT'S GOING TO BE CONFUSING TO

10:39AM 22   A JURY.

10:39AM 23        IF YOU WANT TO WORK SOME EDITS ON THIS SO WE CAN DISCUSS

10:39AM 24   IT SOME MORE --

10:39AM 25             MS. SAHARIA:  OKAY.

| 10:39AM | 1 | THE COURT:  -- I'M HAPPY TO DO THAT. |
| 10:39AM | 2 | MS. SAHARIA:  WE WILL TRY THAT, YOUR HONOR. |
| 10:39AM | 3 | THE COURT:  OKAY.  AND THEN I THINK D IS, AGAIN, |
| 10:39AM | 4 | BACK TO THE SUMMARY. |
| 10:39AM | 5 | MS. SAHARIA:  I THINK D WE DISCUSSED ALREADY. |
| 10:39AM | 6 | THE COURT:  RIGHT, I THINK WE HAVE. |
| 10:39AM | 7 | MS. SAHARIA:  AND THEN WE DISCUSSED THE ISSUE OF |
| 10:39AM | 8 | SPECIFIC UNANIMITY ALREADY.  I THINK -- I TAKE YOUR -- IF I |
| 10:40AM | 9 | MIGHT TAKE THE COURT'S INVITATION TO PROPOSE A VERY SHORT |
| 10:40AM | 10 | VERSION OF THAT, WE WILL TRY OUR HAND AT THAT. |
| 10:40AM | 11 | THE COURT:  OKAY. |
| 10:40AM | 12 | MS. VOLKAR:  YOUR HONOR, MAY I BE HEARD ON THAT |
| 10:40AM | 13 | POINT? |
| 10:40AM | 14 | THE COURT:  YES, OF COURSE. |
| 10:40AM | 15 | MS. VOLKAR:  AND SORRY FOR THE BACK AND FORTH |
| 10:40AM | 16 | BETWEEN MR. LEACH AND MYSELF.  WE DIDN'T BREAK IT UP ON THE |
| 10:40AM | 17 | OBJECTIONS, SO -- |
| 10:40AM | 18 | THE COURT:  NO, THIS IS -- YOU'RE HELPING ME. |
| 10:40AM | 19 | MS. VOLKAR:  WE'RE DOING A DANCE OVER HERE. |
| 10:40AM | 20 | BUT ON THE SPECIFIC UNANIMITY, I WANTED TO SPECIFICALLY |
| 10:40AM | 21 | OBJECT MORE SO THAN WHAT WE TALKED ABOUT BEFORE. |
| 10:40AM | 22 | THERE IS NO BASIS, NO PRECEDENT FOR GIVING A SPECIFIC |
| 10:40AM | 23 | UNANIMITY INSTRUCTION FOR A WIRE FRAUD COUNT. |
| 10:40AM | 24 | WE WERE DISCUSSING IT WITH RESPECT TO CONSPIRACY AND THE |
| 10:40AM | 25 | FACT THAT THERE MAY BE CONFUSION WHEN THE EVIDENCE SHOWS |

```
10:40AM   1    MULTIPLE CONSPIRACIES AND THE INDICTMENT HAS ONLY CHARGED ONE
10:40AM   2    CONSPIRACY.  THAT'S THE LAPIERRE CASE.  WE UNDERSTAND THE
10:40AM   3    LAPIERRE CASE.
10:40AM   4              THE COURT:  THAT'S TYPICALLY WHERE YOU SEE THAT.
10:40AM   5              MS. VOLKAR:  THAT'S TYPICALLY WHERE YOU SEE THAT.
10:41AM   6    THAT'S NOT WIRE FRAUD.
10:41AM   7        I HAVE SEARCHED, AND I INVITE THE DEFENSE TO POINT ME TO
10:41AM   8    ONE, I HAVE NOT SEEN A SINGLE CASE, AND THEY DIDN'T CITE ANY IN
10:41AM   9    THE NINTH CIRCUIT, WHERE A SPECIFIC UNANIMITY INSTRUCTION IS
10:41AM  10    USED IN A WIRE FRAUD CASE.
10:41AM  11        SO I WANT TO REALLY STRENUOUSLY OBJECT.  THEY INCLUDE IT
10:41AM  12    FOR EACH AND EVERY COUNT, NOT JUST THE CONSPIRACY COUNTS, BUT
10:41AM  13    ALSO WIRE FRAUD, AND IT IS PARTICULARLY INAPPROPRIATE FOR THE
10:41AM  14    WIRE FRAUD COUNTS AND THERE'S NO SUPPORT, NO PRECEDENT, NO
10:41AM  15    BASIS FOR IT.
10:41AM  16              MS. SAHARIA:  I MEAN, I THINK THE NINTH CIRCUIT
10:41AM  17    CASES MAKE PRETTY CLEAR THAT SCHEMES TO DEFRAUD IN CONSPIRACIES
10:41AM  18    ARE, YOU KNOW, VERY CLOSE TO EACH OTHER.  AND, IN FACT, THAT'S
10:41AM  19    WHY THE NINTH CIRCUIT RECOGNIZES THE PRINCIPLE OF COSCHEMER
10:41AM  20    LIABILITY AND BASICALLY BASES IT ON PINKERTON LIABILITY AND
10:41AM  21    SAYS WHEN YOU HAVE TWO PEOPLE IN A SCHEME TO DEFRAUD, WE'RE
10:41AM  22    GOING TO APPLY THE SAME CONCEPTS FROM CONSPIRACY IN THE SCHEME
10:41AM  23    TO DEFRAUD CONTEXT.
10:41AM  24        SO I DON'T THINK THERE'S ANYTHING AT ALL UNUSUAL ABOUT
10:42AM  25    HAVING A SPECIFIC UNANIMITY INSTRUCTION WHEN THE TWO SEPARATE
```

8285

10:42AM  1   SCHEMES ARE CHARGED, JUST LIKE TWO SEPARATE CONSPIRACIES.

10:42AM  2        BUT LET US AGAIN PROPOSE LANGUAGE AND THE COURT CAN

10:42AM  3   CONSIDER IT.

10:42AM  4           THE COURT:  WELL, THAT'S FINE.

10:42AM  5        LET ME SAY, I DO CAPTURE THE OBSERVATION THAT THIS

10:42AM  6   INSTRUCTION IS, IS PERHAPS STRONGER AND MORE APPROPRIATE FOR

10:42AM  7   CONSPIRACIES AND MULTIPLE CONSPIRACIES.

10:42AM  8        I'VE NOT EXPERIENCED IT IN WIRE FRAUDS AS YOU SUGGEST, SO

10:42AM  9   I'M HAPPY TO LOOK AT WHAT YOUR SUGGESTION IS.

10:42AM 10           MS. SAHARIA:  OKAY.  THANK YOU, YOUR HONOR.

10:42AM 11           MS. VOLKAR:  YOUR HONOR, IF I MAY MAKE A BROADER

10:42AM 12   POINT?

10:42AM 13        AS WE HAVE BEEN GOING THROUGH, SINCE WE'VE BEEN GOING

10:42AM 14   THROUGH THE OBJECTIONS OF THE GOVERNMENT'S, WE'RE OF COURSE

10:42AM 15   SKIPPING LARGE SWATHS, PARAGRAPHS, PAGES OF WHAT THE DEFENSE

10:42AM 16   HAS SUGGESTED IN THEIR ORIGINAL FILING.  I UNDERSTAND THAT

10:42AM 17   MAYBE THEY'RE INTENDING TO STREAMLINE THAT.

10:42AM 18        IT HAD BEEN MY UNDERSTANDING THAT THAT'S WHAT THE PARTIES

10:42AM 19   WERE ORDERED TO DO BY 10:00 A.M. YESTERDAY.  IT SEEMS THAT

10:42AM 20   THERE MAY HAVE BEEN SOME CONFUSION, PERHAPS ON MY PART

10:42AM 21   CANDIDLY, BUT THERE MAY HAVE BEEN SOME CONFUSION ABOUT WHAT WE

10:43AM 22   WERE SUPPOSED TO DO.

10:43AM 23        BUT I WILL POINT OUT THAT WE'RE DOING A HIGH LEVEL PASS

10:43AM 24   HERE, AND IF WE'RE STARTING FROM THE GOVERNMENT'S SUGGESTIONS,

10:43AM 25   THEN THAT'S FINE WITH ME.

10:43AM 1       BUT THERE ARE LARGE SWATHS OF THE DEFENSE'S PROPOSALS

10:43AM 2    WHICH ARE VERY ARGUMENTATIVE, GO FAR BEYOND THE MODEL

10:43AM 3    INSTRUCTION, AS I STARTED OFF SAYING, THAT WE'RE WHOLLY

10:43AM 4    SKIPPING TODAY.  AND AGAIN, MAYBE THAT'S BECAUSE THE INTENT IS

10:43AM 5    TO CUT THAT OUT IN THE STREAMLINING PROCESS AND, THEREFORE,

10:43AM 6    THERE'S NO POINT TO WASTE TIME ON IT.

10:43AM 7       BUT I DO WANT TO EMPHASIZE THAT AS WE'RE FOCUSSING ON THE

10:43AM 8    GOVERNMENT'S INSTRUCTIONS HERE, I DON'T WANT TO LOSE SIGHT OF

10:43AM 9    THE FACT THAT THERE'S MANY PARAGRAPHS, MANY PAGES THAT WE'RE

10:43AM 10   NOT EVEN DISCUSSING OF WHAT THE DEFENSE HAS SUGGESTED ADDING.

10:43AM 11      THE COURT:  THANK YOU.  AND YOUR TEAMS CAN LOOK AT

10:43AM 12   CALENDARS AND WE'LL HAVE TO HAVE ANOTHER MEETING, MAYBE TWO, WE

10:43AM 13   MIGHT HAVE ANOTHER -- WE WILL HAVE ANOTHER MEETING, AND MAYBE

10:43AM 14   WE'LL HAVE A FINAL MEETING ON THE INSTRUCTIONS.

10:44AM 15      BUT TODAY WE'VE GOT ABOUT ANOTHER 20 MINUTES.  I THINK WE

10:44AM 16   NEED TO BREAK AT 11:00 O'CLOCK TODAY.  SO LET'S PRESS ON AND

10:44AM 17   GET WHAT WE CAN DONE.

10:44AM 18      MS. SAHARIA:  OKAY.  JUST TO RESPOND TO MS. VOLKAR'S

10:44AM 19   POINT, I TAKE TO HEART THE COURT'S REQUEST THAT WE, YOU KNOW,

10:44AM 20   STREAMLINE OUR PROPOSAL.

10:44AM 21      TO THE EXTENT THAT THERE IS LANGUAGE THAT WE INCLUDED IN

10:44AM 22   OUR PROPOSAL THAT WE REQUEST BE ADDED INTO THE MODELS, I HAVE

10:44AM 23   BEEN COVERING THOSE.  WE COVERED THOSE BOTH IN OUR WRITTEN

10:44AM 24   OBJECTIONS AND I'VE BEEN REITERATING THOSE TODAY.

10:44AM 25      SO TO THE EXTENT THAT THERE'S A CONCEPT THAT WE THINK

10:44AM   1    SHOULD BE INCLUDED THAT WE PROPOSED, I HAVE BEEN COVERING THOSE

10:44AM   2    TODAY.

10:44AM   3            THE COURT:  OKAY.  THANK YOU.

10:44AM   4        CAN I -- LET ME JUST STOP ALSO HERE AND TELL YOU THAT

10:44AM   5    ULTIMATELY WHEN WE GET TO THE INSTRUCTIONS WHAT I HAVE DONE,

10:44AM   6    AND WHAT I THINK I'LL DO IN THIS CASE, IS I'M GOING TO TASK THE

10:44AM   7    PARTIES TO, AGAIN, SINCE YOU'RE DOING SO WELL AS MEETING AND

10:44AM   8    CONFERRING, I'M GOING TO -- IT'S HIGHLY LIKELY THAT WHEN WE

10:45AM   9    FINISH OUR DISCUSSION AND WE START WINNOWING DOWN WHAT THE

10:45AM   10   FINAL INSTRUCTIONS WILL BE, I MAY TASK THE PARTIES TO PUT

10:45AM   11   TOGETHER IN A WORD DOCUMENT THE FINAL VERSION, AND THEN WE'LL

10:45AM   12   LOOK AT THAT AND USE THAT AS WELL.

10:45AM   13       SO I JUST GIVE YOU THAT NOTICE IN ADVANCE.  I MAY ASK YOU

10:45AM   14   TO BE THE SCRIBNER FOR THE INSTRUCTIONS, AND THEN I'LL LOOK AT

10:45AM   15   THEM AND THEN COMPARE THEM WITH WHAT I HAVE AND THEN WE'LL GO

10:45AM   16   FORWARD.

10:45AM   17       WHAT I WANT TO DO IS PREPARE THEM IN A WORD DOC, AND THE

10:45AM   18   GOVERNMENT IS FAMILIAR WITH MY PRACTICE HERE.  WE PUT IT IN A

10:45AM   19   WORD DOC.  WE ELIMINATE THE -- IF MODEL INSTRUCTIONS ARE USED,

10:45AM   20   AND IT'S JUST THE INSTRUCTION AND THE TITLE, AND ALL OF THE

10:45AM   21   BORDERS AND ALL OF THAT IS GONE.

10:45AM   22       SO THAT'S GOING TO BE OUR FINAL WORK PRODUCT.  BUT I'M

10:45AM   23   MOST LIKELY GOING TO TASK YOU TO PUT THAT TOGETHER, BOTH SIDES,

10:45AM   24   AND THEN WE'LL HAVE OUR FINAL MEETING ON THAT.

10:45AM   25       OKAY.  THANK YOU.

10:45AM  1                    MS. SAHARIA:  GREAT.

10:45AM  2                    THE COURT:  WHAT IS NEXT, MS. SAHARIA?

10:45AM  3                    MS. SAHARIA:  WELL, LET'S SEE IF WE CAN AT LEAST GET

10:45AM  4       THROUGH MOST OF WIRE FRAUD BEFORE WE CONCLUDE.

10:45AM  5           SO NOW I'M AT PAGE 18 OF OUR OBJECTIONS.  WE PROPOSED, AND

10:46AM  6       I'LL JUST REQUEST THAT THE COURT GIVE OUR MORE FULSOME

10:46AM  7       DESCRIPTIONS OF WHAT CONSTITUTES FALSITY AS SUBPARAGRAPH A.

10:46AM  8           BUT I DON'T THINK THAT WE NEED TO DWELL ON THAT.

10:46AM  9           ON B, I DO REQUEST THAT -- I THINK WE'RE LARGELY IN

10:46AM  10      AGREEMENT ON THE DEFINITION OF MATERIALITY, WHICH COMES FROM

10:46AM  11      THE MODEL INSTRUCTION.

10:46AM  12          BUT WE DO PROPOSE THAT THE COURT ADD THE LANGUAGE "IN THE

10:46AM  13      CONTEXT IT WAS MADE" TO MAKE CLEAR TO THE JURY, AS WE'VE BEEN

10:46AM  14      DISCUSSING IN THIS CASE, INCLUDING AT THE MOTION IN LIMINE

10:46AM  15      STAGE, THAT MATERIALITY IS ASSESSED IN THE CONTEXT IN WHICH

10:46AM  16      STATEMENTS WERE MADE, AND WE THINK THAT LANGUAGE IS IMPORTANT

10:46AM  17      TO CONVEY IN THIS CASE.

10:46AM  18          AND WE INCLUDED THAT IN OUR PROPOSAL, WHICH IS 46 AND 53,

10:47AM  19      JUST THAT BRIEF ADDITION.

10:47AM  20          MS. VOLKAR?

10:47AM  21                   MS. VOLKAR:  YOUR HONOR, I THINK THAT THE FALSITY

10:47AM  22      AND MATERIALITY INSTRUCTIONS ARE POSSIBLY THE EPITOME OF THE

10:47AM  23      GOVERNMENT'S OBJECTIONS.

10:47AM  24          THERE ARE TWO SEPARATE INSTRUCTIONS THERE, I THINK THEY

10:47AM  25      ARE NEARLY IDENTICAL FOR SEPARATE COUNTS.  THEY ARE A PAGE

| | | |
|---|---|---|
| 10:47AM | 1 | LONG.  THEY TAKE A SENTENCE OUT OF THE MODEL INSTRUCTION AND |
| 10:47AM | 2 | MAKE IT A PAGE, AND I DO THINK THAT THAT SPEAKS FOR ITSELF. |
| 10:47AM | 3 | IT'S UNNECESSARY.  THE JURORS DON'T NEED A LEGAL TREATISE. |
| 10:47AM | 4 | THE MODEL INSTRUCTIONS HAVE BEEN USED OVER AND OVER AND OVER |
| 10:47AM | 5 | AGAIN IN WIRE FRAUD AND CONSPIRACY CASES AND I DON'T KNOW WHY |
| 10:47AM | 6 | THERE'S ANYTHING ABOUT THE FACTS OF THIS CASE THAT WARRANT |
| 10:47AM | 7 | ANYTHING DIFFERENT. |
| 10:47AM | 8 | AGAIN, THE PARTIES ARE FREE TO ARGUE IN CLOSING ARGUMENTS |
| 10:47AM | 9 | THEIR INTERPRETATION, AS LONG AS IT'S CONSISTENT WITH THE LAW. |
| 10:48AM | 10 | WE DON'T NEED TO GO BEYOND THE MODEL. |
| 10:48AM | 11 | THE COURT:  THANK YOU. |
| 10:48AM | 12 | I WAS LOOKING AT THIS AND I WAS LOOKING AT PAGE 20 OF |
| 10:48AM | 13 | 1176, THAT'S THE GOVERNMENT'S.  ON LINE 1 AFTER -- IT READS, |
| 10:48AM | 14 | "SECOND, THE STATEMENTS MADE OR FACTS OMITTED AS PART OF THE |
| 10:48AM | 15 | SCHEME WERE MATERIAL." |
| 10:48AM | 16 | PARDON ME.  I'M JUST GOING TO THIS BECAUSE IT'S IN MY MIND |
| 10:48AM | 17 | RIGHT NOW AND I'M LOOKING AT THIS. |
| 10:48AM | 18 | MS. SAHARIA:  YES. |
| 10:48AM | 19 | THE COURT:  AND I'M CURIOUS WHETHER, AFTER THE "WERE |
| 10:48AM | 20 | MATERIAL," WOULD IT BE HELPFUL TO ADD SOMETHING, "A STATEMENT |
| 10:48AM | 21 | IS MATERIAL IF," OR SOME KIND OF DEFINITION OR SOMETHING THERE? |
| 10:48AM | 22 | MS. SAHARIA:  SO I THINK THAT MIGHT BE MORE |
| 10:48AM | 23 | UNDERSTANDABLE TO THE JURY THAN THE PHRASE "THAT IS." |
| 10:48AM | 24 | WE ALL UNDERSTAND THAT THAT IS DEFINING MATERIAL, BUT THE |
| 10:48AM | 25 | JURY MAY NOT BE UNDERSTANDING THAT. |

| 10:48AM | 1 | OUR POINT IS THAT WE WOULD ADD TO THE END OF THAT LINE, "A |
| 10:49AM | 2 | PERSON TO PART WITH MONEY OR PROPERTY IN THE CONTEXT THEY WERE |
| 10:49AM | 3 | MADE, IN THE CONTEXT THE STATEMENTS WERE MADE." |
| 10:49AM | 4 | THAT'S OUR PROPOSAL.  BUT I DO AGREE WITH THE COURT WITH |
| 10:49AM | 5 | RESPECT TO MAYBE REPLACING "THAT IS" LANGUAGE. |
| 10:49AM | 6 | THE COURT:  A DEFINITIVE STATEMENT. |
| 10:49AM | 7 | MS. SAHARIA:  YEAH, EXACTLY. |
| 10:49AM | 8 | THE COURT:  RIGHT.  AND THAT MIGHT GIVE SOME CLARITY |
| 10:49AM | 9 | AND RESOLVE THAT. |
| 10:49AM | 10 | MS. VOLKAR:  YOUR HONOR, MY APOLOGIES.  I DIDN'T GET |
| 10:49AM | 11 | TO THE PAGE FAST ENOUGH.  WHAT PAGE? |
| 10:49AM | 12 | THE COURT:  PAGE 20, 1176, THE FIRST LINE. |
| 10:49AM | 13 | MS. VOLKAR:  OH.  OKAY. |
| 10:49AM | 14 | I THINK THE GOVERNMENT IS FINE WITH THAT CHANGE, |
| 10:49AM | 15 | YOUR HONOR. |
| 10:49AM | 16 | THE COURT:  MAYBE YOU CAN LOOK AT THAT AND WORK ON |
| 10:49AM | 17 | THAT.  EXCUSE ME. |
| 10:49AM | 18 | THAT WAS JUST A SUGGESTION I HAD. |
| 10:49AM | 19 | MS. SAHARIA:  UNDERSTOOD.  I THINK THAT IS A GOOD |
| 10:49AM | 20 | SUGGESTION. |
| 10:49AM | 21 | THE COURT:  THAT MIGHT RESOLVE THAT. |
| 10:49AM | 22 | MS. SAHARIA:  WELL, I DON'T THINK THAT RESOLVES OUR |
| 10:49AM | 23 | CONCERNS, BUT I AGREE THAT MAKES SENSE, YOUR HONOR. |
| 10:49AM | 24 | THE COURT:  IT'S A STEP FORWARD. |
| 10:50AM | 25 | MS. SAHARIA:  YES. |

10:50AM 1      SO LET ME TURN TO PUFFERY AND ASPIRATIONAL STATEMENTS.

10:50AM 2   THIS IS THE LANGUAGE THAT WE HAVE PROPOSED TO ADD TO THE WIRE

10:50AM 3   FRAUD DEFINITION AT INSTRUCTIONS 46 AND 53 OF OUR INSTRUCTIONS,

10:50AM 4   TO INFORM THE JURY THAT EXPRESSIONS OF OPINION, ASPIRATIONS OR

10:50AM 5   GOALS OR GENERAL SUBJECTIVE CLAIMS ARE NOT ACTIONABLE.

10:50AM 6      THE COURT:  THIS IS PARAGRAPH C, I BELIEVE.

10:50AM 7      MS. SAHARIA:  CORRECT.  AND THE JURY HAS HEARD MANY

10:50AM 8   EXAMPLES OF THESE KINDS OF STATEMENTS IN THIS CASE.

10:50AM 9      MS. HOLMES OFTENTIMES SPOKE ABOUT HER ASPIRATIONS AND

10:50AM 10  ASPIRATIONS FOR THE FUTURE.

10:50AM 11     THE SLIDE PRESENTATIONS THAT WE HAVE SEEN IN THIS CASE

10:50AM 12  CONTAIN MANY HIGH LEVEL SUBJECTIVE STATEMENTS THAT ARE NOT

10:50AM 13  THEMSELVES KIND OF STATEMENTS OF FACTS AND THAT WOULD QUALIFY

10:50AM 14  AS PUFFERY, AND I WOULD POINT THE COURT TO TRIAL EXHIBIT 3696

10:51AM 15  FOR SOME EXAMPLES OF THAT.

10:51AM 16     NOW, I WILL READILY CONCEDE THAT THERE IS SUBSTANTIAL

10:51AM 17  NINTH CIRCUIT CASE LAW THAT SAYS A DISTRICT COURT IS NOT

10:51AM 18  REQUIRED TO GIVE A PUFFERY INSTRUCTION IN SOME CIRCUMSTANCES.

10:51AM 19  AND I WOULD POINT THE COURT TO U.S. V. GAY, 967 F.2D 322,

10:51AM 20  U.S. VERSUS AMLANI., 111 F.3D 705, AND UNITED STATES VERSUS

10:51AM 21  TARALLO, 380 F.3D 1174.

10:51AM 22     TARALLO WAS THE MOST RECENT OF THESE CASES, BUT ALL THREE

10:51AM 23  OF THEM STAND FOR THE PROPOSITION THAT A DISTRICT COURT NEED

10:51AM 24  NOT GIVE A PUFFERY INSTRUCTION IF IT GIVES A GOOD FAITH

10:51AM 25  INSTRUCTION.

| | | |
|---|---|---|
| 10:51AM | 1 | AND THIS IS WHAT THE <u>TARALLO</u> CASE SAID.  IT SAID, "NO |
| 10:51AM | 2 | PUFFERY INSTRUCTION IS REQUIRED IF THE DISTRICT COURT GIVES AN |
| 10:51AM | 3 | INSTRUCTION THAT GOOD FAITH CONSTITUTES A COMPLETE DEFENSE. |
| 10:51AM | 4 | THE ONE WHO ACTS WITH HONEST INTENTION DOES NOT POSSESS |
| 10:52AM | 5 | FRAUDULENT INTENT.  THE ONE WHO EXPRESSES AN OPINION HONESTLY |
| 10:52AM | 6 | HELD BY HIM IS NOT CHARGED WITH FRAUDULENT INTENT, EVEN THOUGH |
| 10:52AM | 7 | SUCH OPINION IS ERRONEOUS AND SUCH BELIEF IS A MISTAKEN BELIEF |
| 10:52AM | 8 | AND THAT EVIDENCE ESTABLISHING ONLY THAT A PERSON MADE A |
| 10:52AM | 9 | MISTAKE OF JUDGMENT OR IN ERROR IN MANAGEMENT OR WAS CARELESS |
| 10:52AM | 10 | DOES NOT ESTABLISH FRAUDULENT INTENT." |
| 10:52AM | 11 | SO WHAT THE <u>TARALLO</u> CASE STANDS FOR IS THIS IF THE COURT |
| 10:52AM | 12 | DOES GIVE THAT GOOD FAITH INSTRUCTION, OR SOME VERSION OF A |
| 10:52AM | 13 | GOOD FAITH INSTRUCTION, IT DOESN'T NEED TO GIVE THE PUFFERY |
| 10:52AM | 14 | INSTRUCTION. |
| 10:52AM | 15 | SO OUR FUNDAMENTAL SUBMISSION ON THIS POINT IS THAT THE |
| 10:52AM | 16 | COURT SHOULD GIVE THE GOOD FAITH INSTRUCTION, WHICH WE MAY HAVE |
| 10:52AM | 17 | TO TABLE UNTIL OUR NEXT MEETING. |
| 10:52AM | 18 | IN <u>TARALLO</u> THE DISTRICT COURT APPEARS TO HAVE GIVEN A |
| 10:52AM | 19 | VERSION OF THE STANDARD GOOD FAITH INSTRUCTION THAT IS OFTEN |
| 10:52AM | 20 | GIVEN BY COURTS FROM THE <u>O'MALLEY</u> MODEL INSTRUCTIONS, AND WE |
| 10:52AM | 21 | HAVE ALSO BASED OUR PROPOSED GOOD FAITH INSTRUCTION ON THAT |
| 10:52AM | 22 | <u>O'MALLEY</u> INSTRUCTION WHICH APPEARS TO BE WHAT THE NINTH CIRCUIT |
| 10:52AM | 23 | ENDORSED IN <u>TARALLO</u>. |
| 10:53AM | 24 | THE COURT:  AND THIS IS YOUR 46, IS IT?  IS THAT |
| 10:53AM | 25 | RIGHT? |

10:53AM  1          MS. SAHARIA:  HOLD ON, YOUR HONOR.

10:53AM  2          MS. VOLKAR:  IT'S INSTRUCTION NUMBER 57, YOUR HONOR.

10:53AM  3          MS. SAHARIA:  IT'S AT PAGE 38, ECF 809 AT 78.

10:53AM  4          THE COURT:  YES.  THANK YOU.

10:53AM  5          MS. SAHARIA:  SO IF THE COURT IS NOT GOING TO GIVE

10:53AM  6  THE GOOD FAITH INSTRUCTION, WE WOULD ASK FOR A PUFFERY

10:53AM  7  INSTRUCTION, BUT MORE FUNDAMENTALLY, GIVEN THE CASE LAW AND

10:53AM  8  GIVEN THAT GOOD FAITH IS A BROADER CONCEPT THAT WE THINK

10:53AM  9  PERMEATES THIS CASE, WE STRONGLY ASK THE COURT TO GIVE A GOOD

10:53AM 10  FAITH INSTRUCTION.

10:53AM 11          THE COURT:  OKAY.  THANK YOU.

10:53AM 12          MS. VOLKAR:  YOUR HONOR, I AM GLAD WE GOT TO THIS

10:53AM 13  TODAY BECAUSE I THINK THIS IS GOING TO BE ANOTHER MAJOR AREA OF

10:53AM 14  DISPUTE BETWEEN THE PARTIES.

10:53AM 15      FIRST OF ALL, STARTING WITH THE MODEL INSTRUCTIONS, WHICH

10:54AM 16  I THINK THE COURT SHOULD, OR I THINK THE PARTIES SHOULD OR

10:54AM 17  SHOULD HAVE, MODEL INSTRUCTION 5.12 CLEARLY STATES

10:54AM 18  NINTH CIRCUIT LAW, WHICH IS THAT "A GOOD FAITH INSTRUCTION IS

10:54AM 19  NOT NECESSARY IF THE COURT PROPERLY INSTRUCTS ON THE INTENT TO

10:54AM 20  DEFRAUD OR DECEIVE."

10:54AM 21      NOW, MS. SAHARIA IS TALKING ABOUT A DIFFERENT DISTINCTION,

10:54AM 22  WHICH IS GOOD FAITH VERSUS PUFFERY.  THAT IS A SIDE ISSUE.

10:54AM 23  THAT'S A RED HERRING.

10:54AM 24      THE ISSUE BEFORE THE COURT IS, IS A GOOD FAITH INSTRUCTION

10:54AM 25  NECESSARY AT ALL?

10:54AM 1        AND IF THE COURT PROPERLY INSTRUCTS ON THE INTENT TO

10:54AM 2   DEFRAUD, WHICH THERE IS PLENTY OF PRECEDENT TO, AND THERE'S THE

10:54AM 3   MILLER CASE MOST RECENTLY THAT THE COURT IS FAMILIAR WITH, TO

10:54AM 4   GIVE THE COURT A GUIDANCE ON HOW TO PROPERLY INSTRUCT THE JURY

10:54AM 5   ON THE INTENT TO DEFRAUD AND THE KNOWINGLY STANDARD.

10:54AM 6        AND YOUR HONOR ACTUALLY RECENTLY DISCUSSED THIS IN THE

10:54AM 7   KRAMER CASE.  AND IN THE KRAMER CASE YOUR HONOR LOOKED AT

10:54AM 8   ALMOST AN EXACT SAME ARGUMENT THAT THE DEFENDANTS RAISED HERE

10:54AM 9   WHICH WAS I HAD ASPIRATIONS FOR THE ENTERPRISE, I THOUGHT THE

10:54AM 10  ENTERPRISE WAS GOING TO BE MORE SUCCESSFUL, I BELIEVED IT WAS A

10:55AM 11  LEGITIMATE BUSINESS, I BELIEVED THAT I WAS SAYING THE RIGHT

10:55AM 12  THINGS.

10:55AM 13       AND YOUR HONOR SAID BECAUSE I PROPERLY INSTRUCTED ON

10:55AM 14  INTENT TO DEFRAUD, I DO NOT HAVE TO GIVE A GOOD FAITH

10:55AM 15  INSTRUCTION.  THAT IS WHAT THE NINTH CIRCUIT TELLS US.

10:55AM 16       SO, FIRST OF ALL, TO START WITH THE INITIAL POINT IS A

10:55AM 17  GOOD FAITH INSTRUCTION REQUIRED OR EVEN WARRANTED BASED ON THE

10:55AM 18  FACTS HERE AT ALL?  THE ANSWER IS NO.  UNDER THE NINTH CIRCUIT

10:55AM 19  LAW, IF YOU PROPERLY INSTRUCT ON THE INTENT TO DEFRAUD, YOU DO

10:55AM 20  NOT NEED TO GIVE A GOOD FAITH INSTRUCTION.

10:55AM 21       NOW, MOVING TO MS. SAHARIA'S POINT.  IF THE COURT IS GOING

10:55AM 22  TO GIVE THE GOOD FAITH INSTRUCTION, THEN THE GOVERNMENT TAKES

10:55AM 23  SERIOUS ISSUE WITH THE ONE THAT THEY HAVE PROPOSED.

10:55AM 24       IN PARTICULAR, MS. SAHARIA POINTS TO THE TARALLO CASE -- I

10:55AM 25  HOPE I PRONOUNCED THAT CORRECTLY -- 380 F.3D 1174 AT 1191.  AND

10:55AM  1    I HOPE THE COURT TAKES A GOOD LOOK AT THIS CASE IF THE COURT IS

10:55AM  2    GOING TO GIVE THE GOOD FAITH INSTRUCTION, BECAUSE WHAT THE

10:55AM  3    DEFENSE HAS DONE IS GONE THROUGH AND CHERRY PICKED THE

10:56AM  4    PARAGRAPHS THAT THEY LIKE AND OMITTED THE PARAGRAPHS THAT THEY

10:56AM  5    DIDN'T LIKE, AND THAT CANNOT BE THE INSTRUCTION THAT IS GIVEN

10:56AM  6    TO THE JURY.  THAT DOES NOT ACCURATELY STATE THE LAW, AND THAT

10:56AM  7    IN AND OF ITSELF IS MISLEADING IN TERMS OF WHAT THE LAW

10:56AM  8    REQUIRES.

10:56AM  9        I'LL READ A PARAGRAPH TO COUNTER WHAT MS. SAHARIA READ

10:56AM  10   INTO THE RECORD WHICH IS IN THE TARALLO CASE, "A DEFENDANT DOES

10:56AM  11   NOT ACT IN GOOD FAITH IF EVEN THOUGH HE OR SHE HONESTLY HOLDS A

10:56AM  12   CERTAIN OPINION OR BELIEF, THAT DEFENDANT ALSO KNOWINGLY MAKES

10:56AM  13   MATERIAL FALSE OR FRAUDULENT PRETENSES, REPRESENTATIONS, OR

10:56AM  14   PROMISES TO OTHERS."  THAT IS WHAT THE INTENT REQUIREMENT FOR

10:56AM  15   WIRE FRAUD IS.  THIS IS VERY WELL ESTABLISHED.

10:56AM  16       AND AGAIN, THAT IS PART OF WHY THE NINTH CIRCUIT HOLDS IF

10:56AM  17   THE JURY IS PROPERLY INSTRUCTED ON WHAT THE INTENT ELEMENT

10:56AM  18   REQUIRES, A GOOD FAITH INSTRUCTION IS NOT REQUIRED.

10:56AM  19       NOW, AGAIN, TO TALK SPECIFICALLY ABOUT PUFFERY OR GOOD

10:56AM  20   FAITH IF WE'RE IN THAT LAND.  PUFFERY IS A SECURITIES FRAUD

10:57AM  21   CONCEPT.  I THINK YOUR HONOR IS WELL AWARE OF THAT.  ALL OF THE

10:57AM  22   CASES THEY CITE ARE ABOUT SECURITY FRAUD, WHICH HAS HEIGHTENED

10:57AM  23   INTENT REQUIREMENTS, AND THAT'S NOT THE LAND THAT WE'RE IN.

10:57AM  24   WE'RE IN WIRE FRAUD.  THIS IS A WIRE FRAUD CASE.

10:57AM  25       I KNOW THE GOVERNMENT KEEPS POUNDING THE TABLE ON THIS,

10:57AM  1    BUT THIS IS A CASE THAT YOUR HONOR HAS SEEN DOZENS, IF NOT MORE

10:57AM  2    THAN THAT, TIMES.  THIS IS NOT A CASE THAT IS SOME SPECIAL CASE

10:57AM  3    THAT REQUIRES 100 PAGES OF INSTRUCTIONS.

10:57AM  4        THIS IS A WIRE FRAUD CASE LIKE ANY OTHER WIRE FRAUD CASE.

10:57AM  5    AND THE FACTS, EVEN IF THEY DO SUPPORT A GOOD FAITH ARGUMENT

10:57AM  6    HERE, WHICH I DON'T THINK THEY DO, BECAUSE AGAIN, THE INTENT TO

10:57AM  7    DEFRAUD IS VERY WELL DEFINED MOST RECENTLY IN MILLER, IT SHOULD

10:57AM  8    AT LEAST BE A WELL BALANCED STATEMENT OF THE ENTIRETY OF THE

10:57AM  9    LAW SUCH AS GIVEN IN TARALLO THAT SHOWS THAT IF CONDUCT FROM

10:57AM  10   THE GOVERNMENT'S PERSPECTIVE WHAT THE DEFENDANT DID HERE WOULD

10:57AM  11   STILL CONSTITUTE WIRE FRAUD.

10:57AM  12        THE COURT:  ALL RIGHT.  THANK YOU.

10:57AM  13        I NOTICE YOUR SUBMISSION 5.12 IN DOCUMENT 1176 IS

10:57AM  14   DIFFERENT THAN YOUR ORIGINAL.  I THINK IT'S PARED DOWN.  IT MAY

10:58AM  15   BE RECOGNIZING MILLER OR OTHERS, BUT I BELIEVE -- IT LOOKS

10:58AM  16   DIFFERENT THAN THE ORIGINAL.

10:58AM  17        MS. SAHARIA:  WE DID PARE IT DOWN, YOUR HONOR.

10:58AM  18        THE COURT:  YES, RIGHT.

10:58AM  19        MS. SAHARIA:  I HAVE NO OBJECTION TO GIVING THE GOOD

10:58AM  20   FAITH INSTRUCTION THAT WAS GIVEN IN TARALLO.  IF THE GOVERNMENT

10:58AM  21   WANTS TO ADD IN THE PARAGRAPH THAT MS. VOLKAR READ, I THINK WE

10:58AM  22   HAVE ABSOLUTELY NO OBJECTION TO THAT.  I'M HAPPY TO CONSIDER

10:58AM  23   ANY PROPOSAL FOR ADDITIONAL LANGUAGE, WHETHER FROM TARALLO OR

10:58AM  24   WHETHER FROM O'MALLEY.

10:58AM  25        BUT, FIRST OF ALL, IT'S INCORRECT THAT PUFFERY IS SOLELY A

10:58AM  1    CONCEPT IN THE SECURITIES CASES.  IT'S A CONCEPT THAT DRIVES

10:58AM  2    FROM THE COMMON LAW OF FRAUD WHICH INFORMS BOTH WIRE FRAUD AND

10:58AM  3    SECURITIES FRAUD.

10:58AM  4            THE COURT:  THAT'S WHERE YOU SEE IT THOUGH.  THAT'S

10:58AM  5    REALLY WHERE IT THRIVES, DOESN'T IT, IN SECURITIES?

10:58AM  6            MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR.  I THINK

10:58AM  7    IT PERMEATES ALL KINDS OF FRAUD, AND, IN FACT, ONE OF THE CASES

10:58AM  8    WE CITED WAS A LANHAM ACT CASE, NOT A SECURITIES CASE.

10:58AM  9        SO PUFFERY IS A CONCEPT -- IT'S ABOUT WHETHER A STATEMENT

10:58AM 10    IS FRAUDULENT, AND STATEMENTS OF OPINIONS, STATEMENTS THAT ARE

10:59AM 11    NOT VERIFIABLE CANNOT BE MATERIALLY FALSE.  THAT IS JUST A

10:59AM 12    COMMON LAW CONCEPT OF FRAUD.

10:59AM 13            THE COURT:  SURE.

10:59AM 14            MS. SAHARIA:  SO, AGAIN, OUR FUNDAMENTAL POINT, AND

10:59AM 15    I DIDN'T HEAR A RESPONSE TO THE LANGUAGE I READ FROM TARALLO,

10:59AM 16    WHICH IS IN CASES WHEN THERE IS AT LEAST A BASIS FOR THINKING

10:59AM 17    THAT SOME OF THE STATEMENTS COULD BE PUFFERY, WHICH IN THIS

10:59AM 18    CASE WE CLEARLY HAVE, NO PUFFERY INSTRUCTION IS REQUIRED IF THE

10:59AM 19    DISTRICT COURT GIVES A GOOD FAITH INSTRUCTION.  THAT IS THE

10:59AM 20    NINTH CIRCUIT HOLDING FROM THE TARALLO CASE AND FROM THE OTHER

10:59AM 21    CASES THAT I HAVE CITED ALL SAID THE SAME THING.

10:59AM 22        SO WE DO THINK -- LOOK, THE GOVERNMENT, OF COURSE, IS

10:59AM 23    ENTITLED TO ARGUE TO THE JURY THAT THEY DON'T THINK THE FACTS

10:59AM 24    IN THIS CASE RISE TO THE LEVEL OF GOOD FAITH.  THAT'S A JURY

10:59AM 25    ARGUMENT.

| | | |
|---|---|---|
| 10:59AM | 1 | WE, OF COURSE, HAVE THE OPPOSITE ARGUMENT.  AND GIVEN THE |
| 10:59AM | 2 | FACTS OF THIS CASE, GIVEN THE TARALLO CASE, GIVEN THE MANY |
| 10:59AM | 3 | CASES THAT DO GIVE GOOD FAITH INSTRUCTIONS, WE THINK THIS IS A |
| 11:00AM | 4 | QUINTESSENTIAL CASE WHERE THAT INSTRUCTION SHOULD BE GIVEN, AND |
| 11:00AM | 5 | I HAVE NO OBJECTION TO ADDING THE LANGUAGE THAT MS. VOLKAR JUST |
| 11:00AM | 6 | READ. |
| 11:00AM | 7 | THE COURT:  WELL, LET ME LET YOU DISCUSS THAT THEN. |
| 11:00AM | 8 | CAN I TASK YOU WITH THAT? |
| 11:00AM | 9 | MS. VOLKAR:  WELL, YOUR HONOR, AGAIN, I GO BACK TO |
| 11:00AM | 10 | THE GOVERNMENT'S STARTING POSITION, AND ALTHOUGH WE'RE HAPPY TO |
| 11:00AM | 11 | DISCUSS IT, I WOULD RATHER HAVE OUR PRIMARY POSITION CONSIDERED |
| 11:00AM | 12 | BY THE COURT, WHICH IS THAT NO GOOD FAITH INSTRUCTION IS |
| 11:00AM | 13 | REQUIRED. |
| 11:00AM | 14 | MS. SAHARIA KEEPS GOING TO THE SECOND STEP.  THE FIRST |
| 11:00AM | 15 | STEP IS WHAT THE NINTH CIRCUIT CLEARLY SAYS IN WIRE FRAUD |
| 11:00AM | 16 | CASES, IS THAT IF THE INTENT TO DEFRAUD IS PROPERLY DEFINED BY |
| 11:00AM | 17 | THE COURT, AND, AGAIN, YOUR HONOR, I'M SPEAKING TO THE CHOIR |
| 11:00AM | 18 | HERE BECAUSE YOUR HONOR JUST HELD THIS IN KRAMER LESS THAN A |
| 11:00AM | 19 | YEAR AGO, IF THE COURT PROPERLY DEFINES INTENT TO DEFRAUD, NO |
| 11:00AM | 20 | GOOD FAITH INSTRUCTION IS REQUIRED. |
| 11:00AM | 21 | NOW, MS. SAHARIA IS POINTING TO SECURITIES CASES OR LANHAM |
| 11:00AM | 22 | ACT CASES, CASES WITH A HIGHER SCIENTER REQUIREMENT AND SAYING |
| 11:00AM | 23 | THAT IF A GOOD FAITH INSTRUCTION IS GIVEN, THEN NO PUFFERY |
| 11:01AM | 24 | INSTRUCTION IS REQUIRED.  THAT'S THE SECOND STEP IN THE |
| 11:01AM | 25 | ANALYSIS. |

11:01AM  1          WE'RE AT THE FIRST STEP.  AND THE FIRST STEP IS IF INTENT

11:01AM  2   TO DEFRAUD IS PROPERLY DEFINED, NO GOOD FAITH INSTRUCTION IS

11:01AM  3   REQUIRED AND INTENT TO DEFRAUD IS VERY WELL ESTABLISHED BY

11:01AM  4   PRECEDENT IN THE NINTH CIRCUIT, MOST RECENTLY THE MILLER CASE.

11:01AM  5   THERE IS NO AMBIGUITY ABOUT WHAT IS REQUIRED TO FULLY DESCRIBE

11:01AM  6   THE INTENT TO DEFRAUD, AND THEREFORE, THERE'S NO NEED FOR A

11:01AM  7   GOOD FAITH INSTRUCTION IN THIS CASE OR REALLY ANY WIRE FRAUD

11:01AM  8   CASE, AGAIN, SO LONG AS THE COURT PROPERLY INSTRUCTS ON THE

11:01AM  9   INTENT TO DEFRAUD.

11:01AM 10          THE COURT:  OKAY.

11:01AM 11          MS. SAHARIA:  I THINK WE'RE OUT OF TIME, BUT I WILL

11:01AM 12   JUST NOTE THAT TARALLO WAS NOT SOLELY A SECURITIES FRAUD CASE.

11:01AM 13   IT ALSO INCLUDED CLAIMS FOR WIRE FRAUD.

11:01AM 14          THE COURT:  THANK YOU, MS. SAHARIA.

11:01AM 15      DID I HEAR YOU SAY THAT PUFFERY EXISTS IN THIS CASE?

11:01AM 16          MS. SAHARIA:  ABSOLUTELY, YOUR HONOR.  WE THINK

11:01AM 17   THERE ARE STATEMENTS IN THIS CASE THAT MEET THE STANDARD FOR

11:01AM 18   PUFFERY.

11:01AM 19      THE COURT CAN RECALL THE SLIDE DECK.  I CAN JUST READ A

11:02AM 20   FEW EXAMPLES THAT ARE EITHER PUFFERY OR ASPIRATIONAL STATEMENTS

11:02AM 21   SUCH AS "THERANOS IS A NEW STANDARD IN LAB TESTING THAT CAN

11:02AM 22   HELP EVERY PRACTICE."  THAT'S AT EXHIBIT 3696, PAGE 21.

11:02AM 23          "AMAZING SPEED."  I MEAN, THAT'S CLASSIC PUFFERY.  THAT'S

11:02AM 24   AT PAGE 27.

11:02AM 25          "AN ENTIRELY NEW LAB EXPERIENCE," PAGE 31.

11:02AM   1        "THERANOS'S FOOTPRINT UPON NATIONAL DEPLOYMENT," PAGE 34

11:02AM   2    WITH A MAP SHOWING WHERE THERANOS HOPED TO HAVE STORES IN THE

11:02AM   3    FUTURE.  CLEARLY AN ASPIRATIONAL STATEMENT.

11:02AM   4        "OUR MISSION IS TO MAKE ACTIONABLE HEALTH INFORMATION

11:02AM   5    ACCESSIBLE TO EVERYONE AT THE TIME IT MATTERS."  ANOTHER

11:02AM   6    ASPIRATIONAL STATEMENT AT PAGE 3.

11:02AM   7        THESE KIND OF STATEMENTS PERMEATE THIS CASE.  THEY'RE

11:02AM   8    PUFFERY, THEY'RE ASPIRATIONAL STATEMENTS, AND FOR THAT REASON

11:02AM   9    WE REQUEST THE GOOD FAITH INSTRUCTION.

11:02AM  10             THE COURT:  MS. VOLKAR?

11:02AM  11             MS. VOLKAR:  YOUR HONOR, I WOULD SAY THAT WHAT I

11:02AM  12    DIDN'T HEAR IN THERE IS THAT THERANOS RUNS ALL LAB TESTS OR

11:03AM  13    SOME OF THE OTHER KEY STATEMENTS THAT INVESTORS HAVE SAID OVER

11:03AM  14    AND OVER AGAIN, BUT I DON'T WANT TO TAKE UP THE COURT'S TIME BY

11:03AM  15    ARGUING THE FACTS RIGHT NOW.  THAT'S BEST LEFT FOR CLOSING

11:03AM  16    ARGUMENT.

11:03AM  17        THE LAST POINT I DO WANT TO MAKE, BECAUSE I NEGLECTED TO A

11:03AM  18    MOMENT AGO, I READ THE PARAGRAPH TARALLO THAT IS ABSENT FROM

11:03AM  19    THE DEFENSE'S INSTRUCTION THAT I THOUGHT WAS THE MOST GLARING,

11:03AM  20    BUT THERE ARE MULTIPLE PARAGRAPHS THAT WERE DROPPED, ALL OF

11:03AM  21    WHICH, OF COURSE, BALANCE OUT THE STATEMENT THAT THE DEFENSE

11:03AM  22    SUGGESTED.

11:03AM  23        SO, AGAIN, IF WE GET TO THE LAND WHERE THE COURT IS

11:03AM  24    CONSIDERING A GOOD FAITH INSTRUCTION, I WOULD JUST ASK THAT IT

11:03AM  25    ACTUALLY REPRESENT THE WELL BALANCED VIEW OF THE LAW AND NOT

11:03AM  1     JUST THE DEFENSE'S VIEW.

11:03AM  2              MS. SAHARIA:  I THINK I ALREADY SAID WE DON'T OBJECT

11:03AM  3     TO THE TARALLO INSTRUCTION.

11:03AM  4              THE COURT:  OKAY.  THANK YOU.

11:03AM  5              MS. SAHARIA:  THANK YOU.

11:03AM  6              THE COURT:  THANK YOU VERY MUCH.  THIS IS HELPFUL.

11:03AM  7         WE ARE NEXT TOGETHER, I THINK, TUESDAY FOR CONTINUED

11:03AM  8     EVIDENCE, I BELIEVE.

11:03AM  9         SHOULD I ASK THE PARTIES ABOUT SCHEDULING, WHERE WE THINK

11:03AM  10    WE ARE?

11:04AM  11        I THINK, MR. DOWNEY --

11:04AM  12        I'M SORRY, I DON'T MEAN TO TALK OVER YOU, MS. SAHARIA.

11:04AM  13             MS. SAHARIA:  I'LL TURN IT OVER TO MR. DOWNEY.

11:04AM  14             MS. VOLKAR:  I'LL DO THE SAME, OR MY TEAM.

11:04AM  15             THE COURT:  I KNOW MR. DOWNEY LAST WEEK, OR EXCUSE

11:04AM  16    ME, EARLIER THIS WEEK I THINK YOU SUGGESTED THAT THE JURY MIGHT

11:04AM  17    GET THIS CASE NEXT WEEK OR MAYBE YOU SAID EVIDENCE MIGHT BE

11:04AM  18    FINISHED NEXT WEEK?

11:04AM  19             MR. DOWNEY:  WELL, YOUR HONOR, I CERTAINLY SAID AS

11:04AM  20    TO THE DEFENSE CASE, I DID NOT THINK IT WOULD TAKE THE BALANCE

11:04AM  21    OF NEXT WEEK.

11:04AM  22        WE ASKED MR. LEACH WHERE HE WAS IN TERMS OF A REBUTTAL

11:04AM  23    CASE BASED ON WHAT HAS OCCURRED SO FAR, AND HE SAYS RIGHT NOW

11:04AM  24    HE HAS NO REBUTTAL WITNESSES, BUT THE COURT AWAITS THE CLOSURE

11:04AM  25    OF THE DEFENSE CASE AND CERTAIN EXPERTS WOULD TRIGGER A

| | | |
|---|---|---|
| 11:04AM | 1 | REBUTTAL CASE, THE GOVERNMENT TO CALL EXPERTS.  AND THE COURT, |
| 11:04AM | 2 | OF COURSE, IS FAMILIAR WITH THOSE ISSUES. |
| 11:04AM | 3 | IT FEELS TO ME, BASED ON THAT, LIKE EVIDENCE WILL LIKELY |
| 11:05AM | 4 | CONCLUDE DURING NEXT WEEK. |
| 11:05AM | 5 | THE COURT:  I'M SORRY, YOUR EVIDENCE AND THE |
| 11:05AM | 6 | GOVERNMENT'S? |
| 11:05AM | 7 | MR. DOWNEY:  WELL, ASSUMING THE GOVERNMENT'S CASE IS |
| 11:05AM | 8 | EITHER THERE IS NO REBUTTAL CASE OR IT'S LIMITED TO ONE |
| 11:05AM | 9 | WITNESS, I WOULD THINK IT WOULD PROBABLY CONCLUDE AT SOME POINT |
| 11:05AM | 10 | NEXT WEEK, WHICH I THINK WILL RAISE THE QUESTION, ALTHOUGH I |
| 11:05AM | 11 | DON'T KNOW REALLY WHAT DAY THAT WOULD BE, YOUR HONOR. |
| 11:05AM | 12 | THE COURT:  SURE. |
| 11:05AM | 13 | MR. DOWNEY:  BUT I DO THINK IT RAISES THE QUESTION |
| 11:05AM | 14 | OF HOW WOULD YOUR HONOR WANT TO THEN PROCEED WITH REGARD TO A |
| 11:05AM | 15 | CHARGING -- A FURTHER CHARGING CONFERENCE, WHICH, YOU KNOW, IS, |
| 11:05AM | 16 | UNDERSTANDABLY I THINK GIVEN THE CASE, COMPLICATED AND PROBABLY |
| 11:05AM | 17 | A LENGTHY EVENT. |
| 11:05AM | 18 | THE COURT:  RIGHT. |
| 11:05AM | 19 | MR. DOWNEY:  I DON'T KNOW IF WE COULD GET GUIDANCE |
| 11:05AM | 20 | FROM THE COURT ON THAT, WHETHER THE COURT WOULD TAKE ONE OF THE |
| 11:05AM | 21 | DAYS NEXT WEEK TO DO THAT, EVEN THOUGH WE'VE OBVIOUSLY ASKED |
| 11:05AM | 22 | THE JURY TO BE AVAILABLE THOSE DAYS. |
| 11:05AM | 23 | THE COURT:  WELL, THANK YOU.  THAT'S WHY I'M ASKING |
| 11:05AM | 24 | IS TO LOOK AT OUR SCHEDULE AND SEE HOW THIS MIGHT FIT. |
| 11:05AM | 25 | REGRETTABLY THE COURT IS NOT AVAILABLE, AS I TOLD YOU, ON |

| | | |
|---|---|---|
| 11:06AM | 1 | THE 14TH AND 15TH. |
| 11:06AM | 2 | MR. DOWNEY:  RIGHT. |
| 11:06AM | 3 | THE COURT:  THAT'S NOT GOING TO CHANGE.  I CAN'T |
| 11:06AM | 4 | CHANGE THAT. |
| 11:06AM | 5 | ASSUMING THE TIME ESTIMATES ARE AS YOU INDICATE, AND I |
| 11:06AM | 6 | HAVE NO REASON TO DOUBT IT, THE JURY MIGHT GET THIS CASE AS |
| 11:06AM | 7 | EARLY AS FRIDAY THE 17TH, POSSIBLY THE 16TH, BUT CERTAINLY THE |
| 11:06AM | 8 | 20TH IT SOUNDS LIKE. |
| 11:06AM | 9 | MR. DOWNEY:  OH, I THINK SO, YOUR HONOR.  YEAH. |
| 11:06AM | 10 | THAT SOUNDS RIGHT TO ME. |
| 11:06AM | 11 | MR. LEACH:  THAT SOUNDS RIGHT TO ME, YOUR HONOR. |
| 11:06AM | 12 | AND JUST TO -- I CAN CONFIRM WHAT MR. DOWNEY IS SAYING. |
| 11:06AM | 13 | WE'RE WAITING AND SEE WHAT THEY DO IN TERMS OF EXPERTS, BUT |
| 11:06AM | 14 | I -- |
| 11:06AM | 15 | THE COURT:  RIGHT. |
| 11:06AM | 16 | MR. LEACH:  -- BUT BASED ON WHAT WE HAVE SEEN SO |
| 11:07AM | 17 | FAR, I DON'T ANTICIPATE A LENGTHY REBUTTAL CASE. |
| 11:07AM | 18 | MY POSITION IS THAT WE MAY BE COMPLETING EVIDENCE |
| 11:07AM | 19 | THURSDAY, WHICH RAISES THE QUESTION OF HOW WE USE FRIDAY. |
| 11:07AM | 20 | BUT I THINK CERTAINLY BY THE 17TH THE JURY WILL BE GETTING |
| 11:07AM | 21 | THE CASE. |
| 11:07AM | 22 | THE COURT:  YOU KNOW, JUST TO -- THIS REALLY BOILS |
| 11:07AM | 23 | DOWN TO IF THERE'S GOING TO BE EXPERT TESTIMONY FROM THE |
| 11:07AM | 24 | DEFENSE REALLY, AND THEN THAT WOULD MEAN AN EXPERT REBUTTAL I |
| 11:07AM | 25 | PRESUME AND WHERE THAT IS. |

| | | |
|---|---|---|
| 11:07AM | 1 | IF THERE ISN'T ANY EXPERT TESTIMONY, WE'LL HAVE TO HAVE A |
| 11:07AM | 2 | DISCUSSION ON THE STATE OF THE EVIDENCE THEN AS TO WHERE THAT |
| 11:07AM | 3 | IS AND WHAT IT IS. |
| 11:07AM | 4 | OKAY.  WELL -- |
| 11:07AM | 5 | MR. DOWNEY:  AND I ASSUME AT THAT POINT, YOU KNOW, |
| 11:07AM | 6 | YOUR HONOR, IT MIGHT ALSO MEAN THAT ONE OF THE DAYS WE'VE |
| 11:07AM | 7 | RESERVED FOR THE JURY TOWARDS THE BACK END OF NEXT WEEK MIGHT |
| 11:07AM | 8 | BE A DAY THAT YOUR HONOR WANTED TO SPEND WITH THE LAWYERS |
| 11:07AM | 9 | INSTEAD. |
| 11:07AM | 10 | BUT I WANTED TO PUT THAT ON THE COURT'S RADAR BECAUSE |
| 11:08AM | 11 | UNDER CERTAIN SCENARIOS I THINK THAT COULD HAPPEN. |
| 11:08AM | 12 | THE COURT:  RIGHT.  ALL RIGHT.  WELL, LET ME ASK HOW |
| 11:08AM | 13 | DO YOU SPEND YOUR EVENINGS AFTER HOURS?  I GUESS I'LL ASK YOU |
| 11:08AM | 14 | TO THINK ABOUT THAT OVER THE WEEKEND. |
| 11:08AM | 15 | MR. DOWNEY:  WELL, WE CAN DO IT THAT WAY AS WELL, |
| 11:08AM | 16 | YOUR HONOR. |
| 11:08AM | 17 | THE COURT:  OKAY. |
| 11:08AM | 18 | MR. DOWNEY:  IT SEEMS LIKE FROM TODAY'S CONVERSATION |
| 11:08AM | 19 | IT'S A CUMBERSOME PROCESS. |
| 11:08AM | 20 | THE COURT:  OKAY.  THANK YOU VERY MUCH. |
| 11:08AM | 21 | MR. DOWNEY:  THANK YOU, YOUR HONOR. |
| 11:08AM | 22 | THE COURT:  MR. SCHENK? |
| 11:08AM | 23 | MR. SCHENK:  YES, YOUR HONOR. |
| 11:08AM | 24 | JUST ONE VERY BRIEF QUESTION.  I WANT TO CONFIRM THAT IT'S |
| 11:08AM | 25 | OKAY WITH THE COURT TO USE A LAPEL MICROPHONE FOR CLOSING, AND |

11:08AM 1    IF IT WOULD BE OKAY TO SCHEDULE SOME TIME WITH COURT STAFF TO

11:08AM 2    TEST IT AND MAKE SURE?

11:08AM 3        I KNOW THAT THE GOVERNMENT HAS ONE THAT WORKS WITH THE

11:08AM 4    COURT SYSTEM THAT HAS SECURITY FEATURES, SO WE'VE USED IT IN

11:08AM 5    OTHER INSTANCES, BUT I WANT TO MAKE SURE THAT'S OKAY WITH THE

11:08AM 6    COURT, AND WE WOULD MAKE IT AVAILABLE FOR THE DEFENSE IF THEY

11:08AM 7    WOULD ALSO BE INTERESTED IN USING IT.

11:08AM 8            THE COURT:  THANK YOU.  I'M HAPPY TO CAPTURE ANY

11:08AM 9    EFFICIENCIES, AND WITH THE GREAT TECHNOLOGY WE HAVE, I'M SURE

11:08AM 10   THERE WILL BE NO PROBLEM INTERFACING THAT.  SO YES.

11:09AM 11       I THINK IT MAKES SENSE TO TEST IT OUT AGAIN.  I APPRECIATE

11:09AM 12   THAT.

11:09AM 13       AND IF THE DEFENSE WANTS TO LOOK AT THAT, IT SOUNDS LIKE

11:09AM 14   YOU'RE HAPPY TO SHARE.

11:09AM 15           MR. SCHENK:  THANK YOU.

11:09AM 16           THE COURT:  OKAY.  GREAT.  THANK YOU.

11:09AM 17   HAVE A GREAT WEEKEND EVERYONE.

11:09AM 18           MR. DOWNEY:  THANK YOU.

11:09AM 19       (COURT ADJOURNED AT 11:09 A.M.)

20

21

22

23

24

25

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7        WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16       _____
         IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076
17

18       _____
19       LEE-ANNE SHORTRIDGE, CSR, CRR
         CERTIFICATE NUMBER 9595
20

21       DATED:  DECEMBER 3, 2021

22

23

24

25

1

2                        UNITED STATES DISTRICT COURT

3                      NORTHERN DISTRICT OF CALIFORNIA

4                            SAN JOSE DIVISION

5

   UNITED STATES OF AMERICA,        )   CR-18-00258-EJD
6                                    )
                       PLAINTIFF,    )   SAN JOSE, CALIFORNIA
7                                    )
               VS.                   )   VOLUME 42
8                                    )
   ELIZABETH A. HOLMES,              )   DECEMBER 7, 2021
9                                    )
                       DEFENDANT.    )   PAGES 8306 - 8567
10   _____  )

11

12                    TRANSCRIPT OF TRIAL PROCEEDINGS
                 BEFORE THE HONORABLE EDWARD J. DAVILA
13                   UNITED STATES DISTRICT JUDGE

     A P P E A R A N C E S :
14

15   FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                            BY:  JOHN C. BOSTIC
16                               JEFFREY B. SCHENK
                            150 ALMADEN BOULEVARD, SUITE 900
17                          SAN JOSE, CALIFORNIA 95113

                            BY:  ROBERT S. LEACH
18                               KELLY VOLKAR
                            1301 CLAY STREET, SUITE 340S
19                          OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

     OFFICIAL COURT REPORTERS:
22                            IRENE L. RODRIGUEZ, CSR, RMR, CRR
                              CERTIFICATE NUMBER 8074
23                            LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER

```
1        A P P E A R A N C E S: (CONT'D)

2

3    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                              BY:  KEVIN M. DOWNEY
4                                  LANCE A. WADE
                                   KATHERINE TREFZ
5                                  AMY SAHARIA
                                   SEEMA ROPER
6                                  J.R. FLEURMONT
                                   RICHARD CLEARY
7                                  PATRICK LOOBY
                              725 TWELFTH STREET, N.W.
8                             WASHINGTON, D.C. 20005

9                             LAW OFFICE OF JOHN D. CLINE
                              BY:  JOHN D. CLINE
10                            ONE EMBARCADERO CENTER, SUITE 500
                              SAN FRANCISCO, CALIFORNIA 94111
11

12   ALSO PRESENT:           FEDERAL BUREAU OF INVESTIGATION
                              BY:  ADELAIDA HERNANDEZ
13
                              OFFICE OF THE U.S. ATTORNEY
14                            BY:  LAKISHA HOLLIMAN, PARALEGAL
                                   MADDI WACHS, PARALEGAL
15
                              WILLIAMS & CONNOLLY
16                            BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

17                            TBC
                              BY:  BRIAN BENNETT, TECHNICIAN
18

19

20

21

22

23

24

25
```

1                        INDEX OF PROCEEDINGS

2

        DEFENDANT'S:
3

4       **ELIZABETH HOLMES**
        CROSS-EXAM BY MR. LEACH (RES.)              P. 8353
5       REDIRECT EXAM BY MR. DOWNEY                 P. 8507

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        INDEX OF EXHIBITS

 2                                      IDENT.    EVIDENCE

 3        GOVERNMENT'S:

 4        5126                                    8371
          5127                                    8375
 5        5727                                    8405
          5728                                    8434
 6        5733                                    8445
          5731                                    8446
 7        5730                                    8448
          2065                                    8450
 8        5536                                    8459
          5611                                    8461
 9        5090                                    8463
          5623                                    8468
10        5609                                    8469
          5635, PAGES 6 AND 7                     8498
11

12

13        DEFENDANT'S:

14        15066                                   8524
          15058                                   8526
15        15054                                   8529
          15055                                   8530
16        14186                                   8535
          15070                                   8549
17        7439                                    8550
          15062                                   8559
18        15061                                   8561

19

20

21

22

23

24

25
```

```
       1    SAN JOSE, CALIFORNIA                    DECEMBER 7, 2021

       2                    P R O C E E D I N G S

08:36AM 3        (COURT CONVENED AT 8:36 A.M.)

08:36AM 4        (JURY OUT AT 8:36 A.M.)

08:36AM 5            THE COURT:  WE ARE ON THE RECORD IN THE HOLMES

08:36AM 6    MATTER.  ALL COUNSEL ARE PRESENT.  MS. HOLMES IS PRESENT.

08:36AM 7        WE'RE OUTSIDE OF THE PRESENCE OF THE JURY, AND I THINK

08:36AM 8    THERE ARE SOME MATTERS THAT THE PARTIES WANT TO DISCUSS.

08:36AM 9        LET ME JUST ASK BEFORE WE GET INTO WHAT YOU FILED, I

08:36AM 10   BELIEVE YESTERDAY, LAST NIGHT, LET ME JUST ASK ABOUT

08:36AM 11   SCHEDULING.  WHERE ARE WE AS FAR AS OUR TESTIMONY?  MAYBE THAT

08:36AM 12   WOULD BE HELPFUL.

08:36AM 13       MR. LEACH, YOU'RE STILL ON CROSS.

08:36AM 14           MR. LEACH:  GOOD MORNING, YOUR HONOR.

08:36AM 15       YES, THAT'S CORRECT, I STILL HAVE ADDITIONAL

08:36AM 16   CROSS-EXAMINATION I EXPECT TO COMPLETE SOMETIME TODAY, POSSIBLY

08:36AM 17   IN TIME FOR THE REDIRECT TO COMPLETE.  WE'VE ALERTED THE

08:36AM 18   DEFENSE TO THAT, AND I UNDERSTAND THAT THEY HAVE ANOTHER

08:36AM 19   WITNESS READY TO GO.

08:36AM 20           THE COURT:  ALL RIGHT.

08:36AM 21       ANYTHING TO ADD, MR. DOWNEY?

08:36AM 22           MR. DOWNEY:  NO, YOUR HONOR.  WE'VE HAD THAT

08:36AM 23   CONVERSATION.

08:36AM 24           THE COURT:  OKAY.  IS THERE ANYTHING WE NEED TO DO

08:37AM 25   PRIOR TO START OF TESTIMONY THIS MORNING?
```

08:37AM  1          MS. VOLKAR IS EAGER TO GET TO THE LECTERN TO ANSWER THAT

08:37AM  2     QUESTION.

08:37AM  3               MR. LEACH:  I'LL LEAVE IT TO MS. VOLKAR THEN.

08:37AM  4               THE COURT:  GOOD MORNING.

08:37AM  5               MS. VOLKAR:  GOOD MORNING, YOUR HONOR.  MAY I REMOVE

08:37AM  6     MY MASK?

08:37AM  7               THE COURT:  YES, PLEASE, THANK YOU.

08:37AM  8               MS. VOLKAR:  KELLY VOLKAR ON BEHALF OF THE UNITED

08:37AM  9     STATES.

08:37AM  10         I'M PREPARED TO ARGUE THE TWO MOTIONS THAT WERE FILED

08:37AM  11    YESTERDAY.  I KNOW ONE WAS FILED LATE LAST NIGHT, BUT I DO

08:37AM  12    THINK THAT THAT IS THE MORE URGENT ONE, AND SO I WOULD LIKE TO

08:37AM  13    START WITH THE GOVERNMENT'S MOTION TO EXCLUDE DOCUMENTS.

08:37AM  14         THE REASON I BELIEVE IT'S MORE URGENT IS BECAUSE THE

08:37AM  15    DEFENSE MAY VERY WELL SEEK TO ADMIT THOSE THROUGH MS. HOLMES

08:37AM  16    SOMETIME TODAY, AND I'M NOT SURE WHEN THAT WILL BE.

08:37AM  17         SO THAT'S THE MATTER THAT I WOULD LIKE TO TAKE UP FIRST IF

08:37AM  18    YOUR HONOR IS SO INCLINED.

08:37AM  19               THE COURT:  OKAY.  THE OTHER IS A MOTION TO

08:37AM  20    RECONSIDER, THE DEFENSE MOTION TO RECONSIDER.  IS THAT --

08:38AM  21               MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

08:38AM  22               THE COURT:  OKAY.

08:38AM  23               MS. VOLKAR:  AT LEAST THOSE ARE THE TWO MOTIONS BOTH

08:38AM  24    NOTIFIED FOR THIS MORNING.

08:38AM  25               THE COURT:  OKAY.  THANK YOU.

08:38AM 1          AND SO YOUR MOTION TO EXCLUDE, I BELIEVE, IS 1185?

08:38AM 2              MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

08:38AM 3              THE COURT:  ALL RIGHT.  THANK YOU.  WHAT WOULD YOU

08:38AM 4      LIKE ME TO KNOW ABOUT THAT?

08:38AM 5              MS. VOLKAR:  SO, YOUR HONOR, MR. LEACH HAS INFORMED

08:38AM 6      THE COURT A COUPLE OF TIMES THROUGHOUT THE DEFENDANT'S

08:38AM 7      TESTIMONY THAT THE GOVERNMENT HAS RECEIVED FOR THE FIRST TIME

08:38AM 8      DURING THE DEFENDANT'S TESTIMONY SEVERAL DOCUMENTS PRODUCED

08:38AM 9      WITH A HOLMES BATES STAMP IN THE BOTTOM RIGHT-HAND CORNER AS A

08:38AM 10     PREFIX.

08:38AM 11         I THINK THE KEY POINT HERE IS THAT THERE'S BEEN A LOT OF

08:38AM 12     DISCOVERY IN THIS CASE, I BELIEVE IT'S SOMEWHERE IN THE

08:38AM 13     NEIGHBORHOOD OF 2 MILLION DOCUMENTS, THAT BOTH SIDES HAVE

08:38AM 14     PRODUCED TO ONE ANOTHER GOING INTO THIS TRIAL.

08:38AM 15         NEVERTHELESS, FOR THE FIRST TIME IN THE LAST THREE

08:38AM 16     WEEKS -- AND AGAIN, THIS IS THE THIRD TIME IN AS MANY WEEKS --

08:39AM 17     WE HAVE RECEIVED DOCUMENTS THAT HAVE NEVER BEEN PRODUCED

08:39AM 18     BEFORE, AND THEREFORE, NEVER SEEN.  THERE'S NO WAY THAT THE

08:39AM 19     GOVERNMENT COULD KNOW OF THEIR EXISTENCE AT WHAT I WOULD CALL

08:39AM 20     CRITICAL JUNCTURES IN THE CASE.

08:39AM 21         FIRST IS AFTER THE DEFENDANT TAKES THE STAND, THEY PRODUCE

08:39AM 22     SEVERAL DOCUMENTS, INCLUDING COMMUNICATIONS WITH PHARMA

08:39AM 23     COMPANIES.  THESE ARE DOCUMENTS FROM EMAILS, THERANOS EMAILS

08:39AM 24     FROM BEFORE 2010.

08:39AM 25         THEN WHEN MR. LEACH BROUGHT THAT TO THE ATTENTION OF THE

08:39AM  1    COURT, DEFENSE COUNSEL RESPONDED AND SAID WE'RE DOING OUR BEST.

08:39AM  2    THE GOVERNMENT'S CASE JUST CLOSED.  WE NEED TO LOOK AT WHAT

08:39AM  3    THEY HAVE.  WE'LL GIVE THEM EVERYTHING THIS WEEKEND.

08:39AM  4        THEY THEN PRODUCED, I BELIEVE IT WAS LATE IN THE DAY ON

08:39AM  5    SATURDAY, I THINK 20 TO 30 ADDITIONAL DOCUMENTS.

08:39AM  6        MR. LEACH RAISED THAT WITH THE COURT, HAD INTENDED TO MOVE

08:39AM  7    TO EXCLUDE, BUT THE WAY THE TRIAL SCHEDULE FELL, THE DIRECT

08:39AM  8    TESTIMONY CONTINUED, AND THERE WAS NO OPPORTUNITY TO -- THE

08:39AM  9    DOCUMENTS CAME IN BEFORE THE GOVERNMENT COULD MAKE A FORMAL

08:39AM 10    MOTION.

08:39AM 11        HERE WE ARE, AND THIS IS THUS THE LATE FILING, YESTERDAY

08:40AM 12    AFTERNOON WE SEE -- WE RECEIVED FOUR ADDITIONAL DOCUMENTS THAT,

08:40AM 13    TO THE BEST OF OUR KNOWLEDGE, WE HAVE NEVER RECEIVED BEFORE,

08:40AM 14    AND THE DEFENDANT'S STATED INTENT -- THE DEFENSE COUNSEL'S

08:40AM 15    STATED INTENTION TO INTRODUCE THESE DOCUMENTS.

08:40AM 16        AGAIN, I WANT TO DRAW AN IMPORTANT DISTINCTION BETWEEN

08:40AM 17    DOCUMENTS THAT HAVE PREVIOUSLY BEEN PRODUCED IN DISCOVERY, BUT

08:40AM 18    ARE IDENTIFIED AS AN EXHIBIT FOR THE FIRST TIME SHORTLY BEFORE

08:40AM 19    A WITNESS HAS TESTIFIED.  WE UNDERSTAND THAT THAT HAPPENS IN

08:40AM 20    TRIAL, AND BOTH SIDES HAVE DONE THAT TO A SIGNIFICANT EXTENT IN

08:40AM 21    THIS TRIAL.

08:40AM 22        BUT THE PARTIES WOULD AT LEAST HAVE KNOWN OF THE EXISTENCE

08:40AM 23    OF THOSE DOCUMENTS FOR THE MOST PART BEFORE THE TRIAL EVER

08:40AM 24    EXISTED, AND THEY'RE JUST LEARNING THAT THOSE ARE WHAT THE

08:40AM 25    PARTY INTENDS TO USE WITH THE WITNESS WHILE THEY'RE ON THE

08:40AM   1       STAND.

08:40AM   2            THIS IS AN ENTIRELY DIFFERENT CATEGORY WHERE THESE

08:40AM   3       DOCUMENTS HAVE NEVER BEEN PRODUCED TO THE GOVERNMENT BEFORE,

08:40AM   4       AND THEREFORE, THE GOVERNMENT COULD NOT HAVE ANY KNOWLEDGE OF

08:40AM   5       THEIR EXISTENCE PRIOR TO YESTERDAY.

08:41AM   6            AND AGAIN, THE REASON WHY THIS IS SO CRITICALLY IMPORTANT

08:41AM   7       IS THAT WE'VE HEARD MS. HOLMES ON THE STAND TALK ABOUT HER

08:41AM   8       VERSION.  SHE STATED THAT SHE WAS THE ONE WHO ADDED THE LOGO TO

08:41AM   9       THE PHARMACEUTICAL COMPANY DOCUMENTS.

08:41AM  10            BUT OVER THE COURSE OF THE LAST THREE WEEKS, ALL OF A

08:41AM  11       SUDDEN I THINK, IF MY COUNT IS CORRECT, FIVE NEW DOCUMENTS THAT

08:41AM  12       NEVER PREVIOUSLY WERE PRODUCED AND THEREFORE, FROM THE

08:41AM  13       GOVERNMENT'S PERSPECTIVE, COULD NOT HAVE KNOWN EXISTED, HAVE

08:41AM  14       ALL OF A SUDDEN BEEN PROVIDED, ADDING MORE CONTEXT AROUND THESE

08:41AM  15       LOGOS BEING ADDED TO THE PHARMACEUTICAL COMPANY REPORTS, AND

08:41AM  16       ANOTHER ONE WITH GSK WAS JUST GIVEN TO THE GOVERNMENT

08:41AM  17       YESTERDAY.

08:41AM  18            AND THE REASON WHY THIS IS IMPORTANT TO BRING UP NOW AND

08:41AM  19       THE REASON WHY THE GOVERNMENT IS ASKING YOUR HONOR TO EXCLUDE

08:41AM  20       THESE DOCUMENTS IS BECAUSE IF THE PRETRIAL DISCOVERY RULES --

08:41AM  21       IF RULE 16 MEANS ANYTHING, IT MEANS THAT THESE DOCUMENTS CANNOT

08:41AM  22       COME IN AT THIS POINT IN TIME.

08:41AM  23            AND THAT IS BECAUSE THE FEDERAL RULES DON'T ALLOW FOR A

08:42AM  24       TRIAL BY AMBUSH SYSTEM.  WE HAVE ACTUALLY HEARD SIMILAR

08:42AM  25       ARGUMENTS FROM THE DEFENSE RAISING RULE 16 AND THE FAIRNESS

08:42AM  1     THAT IT REQUIRES AND A FAIR OPPORTUNITY FOR BOTH SIDES TO

08:42AM  2     UNDERSTAND WHAT THE FACTS IN THE CASE MAY BE.

08:42AM  3         I CAN THINK OF A FEW HYPOTHETICALS WHERE, IF THE

08:42AM  4     GOVERNMENT WERE TO FIND AN INCREDIBLY HELPFUL DOCUMENT THAT IT

08:42AM  5     HAD NEVER PRODUCED BEFORE AND GAVE IT TO THE DEFENSE AT THIS

08:42AM  6     POINT AND STAGE IN THE CASE AND TRIED TO USE IT IN THE

08:42AM  7     CROSS-EXAMINATION, I THINK THEY WOULD BE SCREAMING AT THE TOP

08:42AM  8     OF THEIR LUNGS THAT IT'S ENTIRELY UNFAIR.

08:42AM  9         AND WHILE I DON'T MEAN TO OVERSTATE THE IMPORTANCE OF

08:42AM 10     THESE DOCUMENTS, I THINK AT THE END OF THE DAY THEY COULD BE

08:42AM 11     DEALT WITH.

08:42AM 12         THE KEY ISSUE HERE IS, WHAT DOES RULE 16 MEAN?  WHY DO THE

08:42AM 13     RULES OF DISCOVERY EXIST AND GOVERN TRIALS?

08:42AM 14         AND THIS IS NOT THE FIRST TIME, BUT THE THIRD TIME, WHILE

08:42AM 15     THIS WITNESS HAS BEEN TESTIFYING, THAT NEW DOCUMENTS ARE

08:43AM 16     MATERIALIZED.

08:43AM 17         AND WE DON'T EVEN KNOW WHERE FROM, TO BE COMPLETELY FRANK.

08:43AM 18         SO I JUST WANT TO EXPRESS IN THE STRONGEST TERMS THAT THE

08:43AM 19     GOVERNMENT IS VERY CONCERNED, AND WE THINK THAT RULE 16

08:43AM 20     PROVIDES THE REMEDY HERE, WHICH IS WHEN THERE'S AN UNFAIR

08:43AM 21     SURPRISE WHEN IT COMES TO NEW DISCOVERY, THE REMEDY IS TO

08:43AM 22     EXCLUDE THOSE DOCUMENTS, AND THAT'S WHAT WE ASK YOUR HONOR TO

08:43AM 23     DO.

08:43AM 24             THE COURT:  ALL RIGHT.  THANK YOU.

08:43AM 25         IS THERE ANOTHER REMEDY THAT -- IF THE COURT FINDS THAT A

| | | |
|---|---|---|
| 08:43AM | 1 | REMEDY IS APPROPRIATE, IS ANOTHER REMEDY TO ALLOW A BREAK IN |
| 08:43AM | 2 | THE TESTIMONY SO THAT THE OFFENDED PARTY COULD DO WHATEVER |
| 08:43AM | 3 | RESEARCH THEY NEED TO DO AND ADVISE THE JURY THAT THE DEFENSE |
| 08:43AM | 4 | HAS PROVIDED SOME LATE DISCOVERY AND THE GOVERNMENT IS ENTITLED |
| 08:43AM | 5 | TO REVIEW IT AND WE'RE GOING TO TAKE A BREAK IN THE TRIAL TO |
| 08:43AM | 6 | ALLOW THAT TO HAPPEN? |
| 08:43AM | 7 | MS. VOLKAR:  NOT IN THIS INSTANCE, YOUR HONOR. |
| 08:43AM | 8 | WHILE I DO THINK THAT THAT IS A REMEDY THAT COULD BE USED |
| 08:43AM | 9 | FOR RULE 16, THE REASON I THINK IT'S INAPPROPRIATE HERE IS THAT |
| 08:44AM | 10 | THE DEFENSE IS PROVIDING SPECIFIC DOCUMENTS THAT IT CONSIDERS |
| 08:44AM | 11 | TO BE HELPFUL TO ITS CASE. |
| 08:44AM | 12 | IT'S NOT PROVIDING THE GOVERNMENT WITH A "HERE'S ALL OF |
| 08:44AM | 13 | THE PHARMA COMMUNICATIONS BETWEEN 2006 AND 2010 THAT WE HAVE IN |
| 08:44AM | 14 | OUR POSSESSION." |
| 08:44AM | 15 | I HAVE SERIOUS CONCERNS THAT THERE ARE OTHER DOCUMENTS OUT |
| 08:44AM | 16 | THERE THAT PROBABLY COUNTER THESE DOCUMENTS THAT THEY'RE |
| 08:44AM | 17 | PROVIDING TO US.  THEY HAVE NOT PROVIDED THOSE DOCUMENTS.  THEY |
| 08:44AM | 18 | HAVE NOT PROVIDED INCULPATORY DOCUMENTS OF MS. HOLMES OR |
| 08:44AM | 19 | DOCUMENTS THAT MAY CONTRADICT HER STORY. |
| 08:44AM | 20 | THE COURT:  IS THERE A REVERSE <u>BRADY</u> SITUATION THAT |
| 08:44AM | 21 | APPLIES? |
| 08:44AM | 22 | MS. VOLKAR:  I APOLOGIZE, YOUR HONOR.  I'M NOT |
| 08:44AM | 23 | ALLEGING THAT. |
| 08:44AM | 24 | BUT I AM -- I GUESS WHAT I'M TRYING TO SAY HERE IS THAT |
| 08:44AM | 25 | THE REASON THAT I DON'T THINK THAT REMEDY IS APPROPRIATE IS |

08:44AM  1   BECAUSE THEY HAVE PRODUCED DOCUMENTS THAT THEY THINK ARE

08:44AM  2   HELPFUL TO THEIR SIDE.  THEY HAVE NOT PRODUCED A CATEGORY OF

08:44AM  3   DOCUMENTS THAT THEY HAVE RECENTLY UNCOVERED OR ANYTHING OF THAT

08:44AM  4   NATURE SUCH THAT IF THE GOVERNMENT WERE GIVEN MORE TIME, IT

08:45AM  5   WOULD BE ABLE TO REVIEW THIS FULL VOLUME OF DOCUMENTS AND

08:45AM  6   DETERMINE WHICH ARE USEFUL FOR ITS CASE OR WHICH ARE NOT.

08:45AM  7           THE COURT:  SURE.

08:45AM  8           MS. VOLKAR:  THESE ARE SPECIFICALLY, "HERE, HAVE

08:45AM  9   CERTAIN DOCUMENTS THAT ARE HELPFUL TO US, YOU'RE JUST LEARNING

08:45AM  10  ABOUT THEM, MAKE OF THEM WHAT YOU WILL," AND I JUST THINK THAT

08:45AM  11  THAT -- IT REALLY IS UNFAIR, AND IT REALLY IS COUNTER TO

08:45AM  12  RULE 16.

08:45AM  13          THE COURT:  WHAT DOES RULE 16 TELL US?  WHAT ADVICE

08:45AM  14  DOES IT GIVE A JUDGE THAT SHE SHOULD USE?  WHAT TOOLS DOES A

08:45AM  15  JUDGE HAVE WHEN SHE LOOKS AT A RULE 16 SITUATION AS YOU

08:45AM  16  SUGGEST?  WHAT SHOULD SHE DO?

08:45AM  17          MS. VOLKAR:  I MEAN, I THINK, AGAIN, YOUR HONOR, AT

08:45AM  18  THE END OF THE DAY, THERE -- THERE COULD BE NO DISCOVERY RULES

08:45AM  19  IN A TRIAL, AND THERE COULD BE NO DISCOVERY RULES ON A CRIMINAL

08:45AM  20  DEFENDANT.

08:45AM  21      THERE ARE CERTAINLY FAR MORE RULES AND LEGAL PRINCIPLES

08:45AM  22  GOVERNING WHAT THE GOVERNMENT IS REQUIRED TO DO IN CRIMINAL

08:45AM  23  PROCEEDINGS, AND WE DON'T DISPUTE THAT.  WE'VE DONE OUR BEST,

08:46AM  24  AND WE SUBMIT THAT WE HAVE LIVED UP TO ALL OF OUR OBLIGATIONS.

08:46AM  25      BUT RULE 16 WAS IMPLEMENTED, ENACTED, AND RULE 16(B) IN

08:46AM 1    PARTICULAR WAS ENACTED TO GOVERN WHAT THE DEFENDANT MUST

08:46AM 2    DISCLOSE, AND I WOULD PUT FORWARD THAT THE REASON WAS TO AVOID

08:46AM 3    A TRIAL BY AMBUSH.

08:46AM 4         SO TO MORE SPECIFICALLY ANSWER YOUR QUESTION, YOUR HONOR,

08:46AM 5    TYPICALLY I THINK RULE 16 IS ABOUT DISCLOSURE, AND SO THE IDEA

08:46AM 6    IS TO ALLOW FOR DELAY OR WHAT HAVE YOU.

08:46AM 7         I WOULD JUST SUBMIT THAT WHERE WE ARE IN THE TRIAL

08:46AM 8    PROCESS, THIS IS A VERY EGREGIOUS VIOLATION, I WOULD PUT

08:46AM 9    FORWARD.  IT'S NOT THE FIRST ONE, IT'S THE THIRD ONE, AND IT'S

08:46AM 10   HAPPENING IN THE DEFENDANT'S CASE-IN-CHIEF AND NOT WHILE THE

08:46AM 11   GOVERNMENT STILL HAS THE TIME TO PUT ON ADDITIONAL WITNESSES OR

08:46AM 12   OTHERWISE REACT TO IT IN ITS CASE-IN-CHIEF.

08:46AM 13        OF COURSE THERE'S REBUTTAL, BUT I JUST THINK THAT GIVEN

08:46AM 14   THE EGREGIOUS NATURE OF THIS, THE RIGHT REMEDY IS TO JUST

08:46AM 15   EXCLUDE THE DOCUMENTS OR TO PUT SIGNIFICANT LIMITATIONS ON

08:47AM 16   THEM.

08:47AM 17        AND, OF COURSE, I HAVEN'T TALKED ABOUT THE ADDITIONAL

08:47AM 18   HURDLE FOR ONE DOCUMENT, EXHIBIT 4, WHICH IS THE HEARSAY WITHIN

08:47AM 19   THE HEARSAY PROBLEM.  SO AT THE VERY LEAST, IF YOUR HONOR IS

08:47AM 20   INCLINED TO PERMIT THE DEFENSE TO GO FORWARD WITH SOME OF THE

08:47AM 21   DOCUMENTS, WE SUBMIT THAT THAT ONE AT THE VERY LEAST SHOULD BE

08:47AM 22   EXCLUDED.

08:47AM 23             THE COURT:  IS THAT THE EMAIL CHAIN WITH

08:47AM 24   GENERAL MATTIS?  IS THAT --

08:47AM 25             MS. VOLKAR:  NO, YOUR HONOR.  I BELIEVE IT'S FROM --

08:47AM 1    MS. HOLMES TESTIFIED IT'S FROM HER FORMER ASSISTANT,

08:47AM 2    CAROLYN BALKENHOL, AND IT ATTACHES THE GSK REPORT AND IT SAYS

08:47AM 3    WHAT SHE SAID TO HER.

08:47AM 4            THE COURT:  ALL RIGHT.  THANK YOU.

08:47AM 5        MR. DOWNEY, MS. VOLKAR SUGGESTS IF THE SITUATION WERE

08:47AM 6    REVERSED, IF YOU WERE RECEIVING DOCUMENTS AS YOU'VE GIVEN THEM

08:47AM 7    TO THE GOVERNMENT, THAT YOU WOULD BE OUT OF YOUR LOAFERS

08:47AM 8    SCREAMING.  IS THAT TRUE?

08:47AM 9            MR. DOWNEY:  WELL, YOUR HONOR, IT WOULD DEPEND ON

08:47AM 10   THE SITUATION.

08:47AM 11       BUT LET ME SAY TO YOU I'M VERY GLAD TO HAVE THIS CHANCE TO

08:48AM 12   TALK TO THE COURT ABOUT THESE DOCUMENTS.

08:48AM 13       THIS GOVERNMENT TEAM INVESTIGATED THIS CASE FOR THREE

08:48AM 14   YEARS.  IT'S SIX YEARS SINCE THIS INVESTIGATION BEGAN.  THEY

08:48AM 15   TURNED THERANOS UPSIDE DOWN.  THEY TURNED PFIZER UPSIDE DOWN.

08:48AM 16   THEY TURNED GSK UPSIDE DOWN.

08:48AM 17       AND NOWHERE IN ANY OF THOSE PRODUCTIONS DID WE GET, IN

08:48AM 18   RULE 16 DISCOVERY, EMAILS THAT WENT FROM MS. HOLMES'S ACCOUNT

08:48AM 19   ATTACHING COPIES OF THE REPORT AT ISSUE WITH THE LOGOS ON THEM

08:48AM 20   TO THE PHARMACEUTICAL COMPANIES.  NOWHERE.

08:48AM 21       NOW, YOUR HONOR KNOWS THAT THAT HAS BEEN AN ISSUE IN THIS

08:48AM 22   CASE SINCE THE BEGINNING.  MR. LEACH OPENED ON IT.

08:48AM 23       I WILL SAY WITH RESPECT TO GSK, IT'S A LITTLE BIT OF A

08:48AM 24   DIFFERENT CATEGORY.  IN CONNECTION WITH GSK, MR. LEACH DID NOT

08:49AM 25   OPEN ON THAT SUBJECT.

08:49AM  1          GSK HAS ACTUALLY ONLY BEEN A SUBJECT OF TESTIMONY IN THE

08:49AM  2     CASE ONCE, WHICH WAS IN MS. GANGAKHEDKAR'S TESTIMONY.  SHE WAS

08:49AM  3     ASKED ABOUT DID GSK VALIDATE THIS ASSAY THAT YOU DEVELOPED?

08:49AM  4     SHE TESTIFIED YES, AND SHE SAID SHE SAID SHE WAS PROUD OF IT.

08:49AM  5          THERE WAS NO SUGGESTION THAT THE ATTACHMENT OF LOGOS TO

08:49AM  6     THE GSK REPORT WAS INAPPROPRIATE UNTIL TUESDAY OF LAST WEEK.

08:49AM  7          SO THE DOCUMENTS THAT MS. VOLKAR IS REFERRING TO ARE

08:49AM  8     DOCUMENTS THAT ONLY BECAME RELEVANT AND APPROPRIATE FOR OUR

08:49AM  9     INTRODUCTION AS EXHIBITS ON THE CROSS-EXAMINATION OF THE

08:49AM  10    DEFENDANT.

08:49AM  11         IT'S AS SIMPLE AS THAT.

08:49AM  12         NOW, WHY WE DIDN'T GET THOSE DOCUMENTS AFTER EXTENSIVE

08:49AM  13    NEGOTIATIONS BETWEEN THE GOVERNMENT AND THESE COMPANIES, WHY

08:49AM  14    THE PRODUCTIONS FROM THOSE PARTIES ARE CURATED TO EXCLUDE THOSE

08:49AM  15    DOCUMENTS, I DON'T KNOW.  BUT IT'S CONCERNING.

08:50AM  16         THE COURT:  ANYTHING ELSE YOU WANT ME TO KNOW?

08:50AM  17         MR. DOWNEY:  NO.

08:50AM  18         WELL, YOUR HONOR, OBVIOUSLY IN CONNECTION WITH THE

08:50AM  19    DOCUMENTS SHE'S REFERRING TO, WHAT I JUST SAID IS THE REASON

08:50AM  20    THAT THEY'VE JUST BEEN PRODUCED.

08:50AM  21         THE GSK ISSUE JUST CAME UP ON THE CROSS-EXAMINATION OF

08:50AM  22    MS. HOLMES.  AS YOU KNOW, THERE'S BEEN TESTIMONY ABOUT PFIZER,

08:50AM  23    THERE'S BEEN TESTIMONY ABOUT SCHERING-PLOUGH, WE HAD WITNESSES

08:50AM  24    FROM BOTH COMPANIES.  WE HAVEN'T HAD A WITNESS FROM GSK BEFORE.

08:50AM  25         I DON'T THINK THERE'S ANY DISPUTE IN THE CASE THAT GSK

| | | |
|---|---|---|
| 08:50AM | 1 | PREPARED THAT REPORT.  I THINK MR. LEACH'S EXAMINATION |
| 08:50AM | 2 | SUGGESTS -- |
| 08:50AM | 3 | THE COURT:  JUST A MOMENT WHILE I ASK WHOEVER'S |
| 08:50AM | 4 | DEVICE HAS THAT TO LEAVE THE COURTROOM, PLEASE. |
| 08:50AM | 5 | SOMEONE HAD THEIR DEVICE -- I'M SORRY TO INTERRUPT YOUR |
| 08:50AM | 6 | ARGUMENT. |
| 08:50AM | 7 | WHOEVER THAT PARTY WAS, PLEASE STAND UP. |
| 08:50AM | 8 | YES.  COULD YOU PLEASE GO OUTSIDE, PLEASE, AND MAKE SURE |
| 08:50AM | 9 | YOUR ITEM IS SECURE.  THANK YOU VERY MUCH. |
| 08:50AM | 10 | AUDIENCE MEMBER:  YES. |
| 08:51AM | 11 | THE COURT:  THANK YOU VERY MUCH. |
| 08:51AM | 12 | I APOLOGIZE FOR THE INTERRUPTION. |
| 08:51AM | 13 | MR. DOWNEY:  THANK YOU, YOUR HONOR. |
| 08:51AM | 14 | THE POINT IS SIMPLY THAT THEY HAVE BECOME RELEVANT AS A |
| 08:51AM | 15 | RESULT OF THE CROSS-EXAMINATION.  BEFORE THAT TIME, OUR |
| 08:51AM | 16 | INTENTION WAS NOT TO INTRODUCE THIS AS ANOTHER ISSUE THAT WE |
| 08:51AM | 17 | HAD TO DEAL WITH.  THAT'S THE STANDARD OF RULE 16 FOR THE |
| 08:51AM | 18 | DEFENDANTS, SO WE GAVE THEM IN ADVANCE.  I THINK THE LENGTH OF |
| 08:51AM | 19 | THE EMAIL, AS YOUR HONOR SEES, IS ABOUT THAT LONG (INDICATING). |
| 08:51AM | 20 | I THINK THEY HAVE WELL TALKED TO GSK FOR MANY YEARS.  THEY |
| 08:51AM | 21 | KNOW WHAT THE SITUATION IS. |
| 08:51AM | 22 | WHY THIS DOCUMENT DOESN'T COME IN A PRODUCTION FROM GSK |
| 08:51AM | 23 | IS -- YOU KNOW, THROUGH THE GOVERNMENT TO US IS BEYOND ME. |
| 08:51AM | 24 | THE COURT:  MS. VOLKAR? |
| 08:51AM | 25 | MS. VOLKAR:  YOUR HONOR, MR. DOWNEY'S COMMENTS ARE |

08:51AM   1    ACTUALLY MORE CONCERNING TO ME, DEEPLY CONCERNING, AND THAT IS

08:51AM   2    BECAUSE WHAT THE GOVERNMENT SOUGHT THROUGH VARIOUS SUBPOENAS

08:51AM   3    RELIED ON THE COMPANIES WHO WERE THE CUSTODIANS OF THE

08:51AM   4    DOCUMENTS TO PROVIDE IT TO THE GOVERNMENT.

08:51AM   5        THE GOVERNMENT EXPECTS THOSE COMPANIES TO FULFILL THEIR

08:52AM   6    DISCOVERY OBLIGATIONS AND COMPLY WITH SUBPOENAS IN GOOD FAITH.

08:52AM   7        THERE WERE MULTIPLE SUBPOENAS TO THERANOS.  THESE ARE

08:52AM   8    THERANOS DOCUMENTS.  MANY OF THOSE SUBPOENAS WERE SENT WHEN

08:52AM   9    DEFENDANT WAS STILL IN CHARGE OF THERANOS OR THE CHAIRMAN OF

08:52AM   10   THE BOARD OF THERANOS.

08:52AM   11       WHAT LAWYERS, EITHER ON THE COMPANY'S BEHALF OR HER OWN,

08:52AM   12   DETERMINED TO PRODUCE TO THE GOVERNMENT, THE GOVERNMENT CANNOT

08:52AM   13   CONTROL THAT.  THE GOVERNMENT CAN ONLY ASK FOR WHAT DOCUMENTS

08:52AM   14   IT BELIEVES EXISTED.

08:52AM   15       AND TO SAY THAT GSK, A PHARMACEUTICAL COMPANY, ONE OF THE

08:52AM   16   10 TO 15 THAT SHE CLAIMED COMPREHENSIVELY VALIDATED IT, WAS NOT

08:52AM   17   COVERED BY THOSE SUBPOENAS BECAUSE THE DEFENDANT -- OR BECAUSE

08:52AM   18   THE GOVERNMENT, PARDON ME, DID NOT IN ITS OPENING STATEMENT

08:52AM   19   TALK ABOUT IT, THAT'S DISINGENUOUS.  THAT IS REALLY, REALLY

08:52AM   20   TWISTING THE DISCOVERY STANDARD AND PROTOCOLS ON ITS HEAD.

08:52AM   21       YES, THE GOVERNMENT HAS INVESTIGATED THIS CASE FOR MANY

08:52AM   22   YEARS.  THE LAST SEVERAL YEARS THERE'S BEEN SOME DELAY BECAUSE

08:53AM   23   OF THE PANDEMIC.

08:53AM   24       BUT WE'RE TALKING ABOUT DISCOVERY PROTOCOLS WHICH THE

08:53AM   25   GOVERNMENT CAN MAKE REQUESTS.  IT HAS TO RELY ON THE GOOD FAITH

08:53AM 1     COMPLIANCE FROM THE PERSON ACTUALLY PROVIDING THOSE DOCUMENTS.

08:53AM 2          THE GOVERNMENT DOES NOT CONTAIN ANY OF THESE EMAILS.  THE

08:53AM 3     GOVERNMENT WAS NOT THE SERVER THAT HOSTED THESE EMAILS.  THAT

08:53AM 4     WAS THERANOS.

08:53AM 5          AND NOW WHETHER OR NOT GSK STILL HAD THIS IN ITS RECORDS,

08:53AM 6     IT'S AN EMAIL FROM 2009, OR WHETHER OR NOT GSK STILL MAINTAINED

08:53AM 7     THIS, CLEARLY THERANOS DID, AND CLEARLY THE DEFENDANT HAS

08:53AM 8     ACCESS TO IT.

08:53AM 9          AGAIN, WE'RE GOING BACK TO MR. DOWNEY SAID TO THIS COURT

08:53AM 10    ONCE BEFORE, "I'M NOT SITTING ON A TROVE OF DOCUMENTS THAT THE

08:53AM 11    GOVERNMENT DOESN'T KNOW ABOUT."

08:53AM 12         I NOW, STANDING BEFORE YOU, YOUR HONOR, DON'T KNOW IF

08:53AM 13    THAT'S TRUE, BECAUSE THERE'S CLEARLY TONS -- I SHOULDN'T SAY

08:53AM 14    TONS -- THERE'S CLEARLY AT LEAST 40 EMAILS THAT THEY HAVE

08:53AM 15    DISCOVERED FROM THERANOS SERVERS THAT HAVE NEVER BEEN PROVIDED

08:53AM 16    TO THE GOVERNMENT BEFORE.  AND, AGAIN, THAT IS A VIOLATION OF

08:54AM 17    RULE 16.

08:54AM 18         AND TALKING ABOUT WHAT HAS AND HASN'T BEEN AT ISSUE IN THE

08:54AM 19    TRIAL TO DATE IS VERY DIFFERENT THAN WHAT HAVE SUBPOENAS SOUGHT

08:54AM 20    FOR YEARS PRIOR TO THIS CASE SUCH THAT THE PARTIES COULD

08:54AM 21    PREPARE THE OPENING STATEMENT, COULD PREPARE THEIR QUESTIONING

08:54AM 22    OF WITNESSES.

08:54AM 23         AND THAT -- THEY'RE JUST TWO TOTALLY SEPARATE THINGS, AND

08:54AM 24    THAT IS WHY THIS IS A VIOLATION OF RULE 16.  I DO THINK IT IS

08:54AM 25    EGREGIOUS, AND I DO THINK THESE DOCUMENTS SHOULD BE EXCLUDED.

08:54AM  1          THE COURT:  THANK YOU.

08:54AM  2          SO, MS. VOLKAR, WHAT I HEAR YOU SAYING IS THAT THE

08:54AM  3   GOVERNMENT, IN PREPARATION, ISSUED SUBPOENAS, YOU ISSUED

08:54AM  4   SUBPOENAS TO THE COMPANY, THE DEFENDANT'S COMPANY.  YOU

08:54AM  5   RECEIVED BACK INFORMATION, BUT YOU DID NOT RECEIVE ANY OF THESE

08:54AM  6   DOCUMENTS IN RESPONSE TO THAT SUBPOENA?

08:54AM  7          MS. VOLKAR:  TO THE BEST OF MY KNOWLEDGE -- OF

08:54AM  8   COURSE I'M RELYING ON MY TEAM MEMBERS WHO HAVE BEEN WITH THE

08:54AM  9   CASE FOR MUCH MORE OF ITS LIFE SPAN THAN ME -- BUT TO THE BEST

08:54AM  10  OF OUR KNOWLEDGE, WE HAVE NOT SEEN THESE DOCUMENTS BEFORE

08:54AM  11  YESTERDAY.

08:54AM  12         THE COURT:  YOU HAVE NOT SEEN THESE DOCUMENTS UNTIL

08:54AM  13  JUST THE OTHER NIGHT?

08:54AM  14         MS. VOLKAR:  CORRECT, YESTERDAY.

08:54AM  15         THE COURT:  IS THAT DIFFERENT?

08:55AM  16         MR. DOWNEY:  WELL, OBVIOUSLY ALL I CAN SAY IS I

08:55AM  17  ACCEPT WHAT MS. VOLKAR SAYS, BUT AS SHE CONCEDES, AND I THINK

08:55AM  18  AS HER STATEMENT THAT THERE ARE 2 MILLION DOCUMENTS EVIDENCES,

08:55AM  19  SHE HAS NOT BEEN INVOLVED IN THE MATTER FOR A LONG TIME.

08:55AM  20         I ONLY SAY TO THE COURT THIS:  LET THE GOVERNMENT CERTIFY

08:55AM  21  TODAY THAT IT DID NOT NEGOTIATE THESE SUBPOENAS.  I DON'T

08:55AM  22  BELIEVE THAT.

08:55AM  23         THERE WAS 360-DEGREE FOCUS BY THE GOVERNMENT ON DR. WEBER.

08:55AM  24  DR. WEBER DEALT WITH THERANOS TWICE.

08:55AM  25         THERE WERE DEALINGS BETWEEN PFIZER AND THERANOS BETWEEN

08:55AM   1    2006 AND 2014, WHICH INCLUDED EVIDENCE THAT THE DOCUMENTS WITH

08:55AM   2    THE LOGOS HAD BEEN TRANSMITTED TO PFIZER AS YOU SAW ON

08:55AM   3    MS. HOLMES'S DIRECT EXAMINATION.

08:55AM   4            THE COURT:  WELL, IF THEY NEVER RECEIVED THESE --

08:55AM   5    AND I TAKE MS. VOLKAR ON HER WORD -- THEY NEVER HAD THEM, SO,

08:55AM   6    YOU KNOW, FOR YOU TO SUGGEST THAT, WELL, THEY'VE BEEN

08:55AM   7    WITHHOLDING THEM FROM US IS DISINGENUOUS AS SHE SAYS.

08:56AM   8            MR. DOWNEY:  WELL, YOUR HONOR, I COMPLETELY DISAGREE

08:56AM   9    WITH THAT.  I THINK -- IT IS NOT CREDIBLE TO ME THAT IN THE

08:56AM   10   DISCUSSIONS BETWEEN -- AND I'M NOT ACCUSING ANY PARTICULAR

08:56AM   11   LAWYER.  I'M NOT REFERENCING LAWYERS.  I DON'T KNOW WHAT

08:56AM   12   HAPPENED.

08:56AM   13           THE COURT:  RIGHT.

08:56AM   14           MR. DOWNEY:  BUT IF THE GOVERNMENT KNEW IT WAS GOING

08:56AM   15   TO MAKE A BIG DEAL OUT OF THESE LOGOS, IT SEEMS TO ME THE

08:56AM   16   LOGICAL QUESTION FOR EITHER THERANOS AND THE PHARMACEUTICAL

08:56AM   17   COMPANIES WOULD HAVE BEEN, IS THERE IN THE EMAIL COMMUNICATIONS

08:56AM   18   BETWEEN THE PHARMACEUTICAL COMPANY AND THERANOS WHICH EVIDENCES

08:56AM   19   THAT THE PHARMACEUTICAL COMPANIES WERE SENT THESE REPORTS WITH

08:56AM   20   THE LOGOS ON THEM?

08:56AM   21           THE COURT:  WELL, YOU GOT THEM.

08:56AM   22           MR. DOWNEY:  I DID GET THEM.

08:56AM   23           THE COURT:  RIGHT.  AND SO NOW WHAT I HEAR YOU

08:56AM   24   SAYING IS THAT THEY SHOULD HAVE ASKED BETTER QUESTIONS IN THEIR

08:56AM   25   SUBPOENAS.

8326

08:56AM 1          MR. DOWNEY:  I'M NOT SAYING THAT AT ALL.

08:56AM 2          THE COURT:  OH.

08:56AM 3          MR. DOWNEY:  I'M SAYING I AM SKEPTICAL THAT AN EMAIL

08:56AM 4   FROM MS. HOLMES'S ACCOUNT, WHICH CONTAINS A TRANSMISSION, WOULD

08:57AM 5   NOT HAVE BEEN IN SOME FORM RESPONSIVE, AND I DON'T SEE A MOTIVE

08:57AM 6   FOR A PHARMACEUTICAL COMPANY NOT TO PRODUCE THAT.

08:57AM 7          THE COURT:  WELL, ALL RIGHT.  FAIR ENOUGH.

08:57AM 8        BUT HERE WE ARE.  THEY DIDN'T GET IT.  YOU DID.  AND

08:57AM 9   THEY'RE SAYING, "WE DIDN'T GET IT AND NOW WE GET IT THE NIGHT

08:57AM 10  BEFORE POTENTIAL TESTIMONY, AND THERE IS A CERTAIN UNFAIRNESS

08:57AM 11  IN THAT."

08:57AM 12         MR. DOWNEY:  WELL, THE UNFAIRNESS COMES FROM THE

08:57AM 13  FACT THAT MR. LEACH WAITED FOR THE DEFENSE CASE FOR THE FIRST

08:57AM 14  TIME TO SUGGEST THAT THERE WAS SOMETHING INAPPROPRIATE WITH

08:57AM 15  REGARD TO THE GSK LOGO.  THAT'S A NEW ISSUE.

08:57AM 16        THE OTHER DOCUMENTS THEY HAVE, RIGHT?  THIS IS ABOUT THE

08:57AM 17  GSK LOGO THAT HE IS -- THAT THEY'RE CURRENTLY COMPLAINING

08:57AM 18  ABOUT.  THAT TESTIMONY WAS ELICITED TUESDAY AFTERNOON.

08:57AM 19         THE COURT:  OKAY.

08:57AM 20         MR. DOWNEY:  AND I THINK I WON'T -- YOUR HONOR WELL

08:57AM 21  KNOWS THE STANDARDS UNDER RULE 16, SO I DON'T THINK

08:57AM 22  MS. VOLKAR'S ARTICULATION OF THEM IS CORRECT.  BUT I WON'T GO

08:57AM 23  INTO THAT BECAUSE I KNOW IT'S WELL FAMILIAR TO YOUR HONOR.

08:57AM 24         MS. VOLKAR:  WELL, I ALSO DON'T THINK THE DEFENSE'S

08:58AM 25  FORMULATION OF RULE 16 IS CORRECT, TO A SURPRISE TO NO ONE.

08:58AM  1      I KNOW THAT THEY WANT TO WITHHOLD EVERYTHING AND HAVE THE

08:58AM  2  GOVERNMENT PRODUCE EVERYTHING.  THEY ALSO DON'T BELIEVE THAT

08:58AM  3  THEY HAVE TO COMPLY WITH JENCKS.

08:58AM  4      WE STRONGLY DISAGREE WITH ALL OF THAT.  BUT REGARDLESS, WE

08:58AM  5  BELIEVE WE CAN MEET OUR BURDEN OF PROOF.  WE BELIEVE WE HAVE

08:58AM  6  PUT OUR BURDEN OF PROOF.

08:58AM  7      WHAT I'M TALKING ABOUT IS IF THE DISCOVERY RULES MEAN

08:58AM  8  ANYTHING, IT MEANS THAT TRIAL BY AMBUSH, SURPRISE DOCUMENTS

08:58AM  9  WHILE SOMEBODY IS IN THE MIDDLE OF CROSS-EXAMINATION ARE

08:58AM 10  FORBIDDEN.

08:58AM 11      AGAIN, I DON'T UNDERSTAND MR. DOWNEY'S STATEMENTS THAT THE

08:58AM 12  GOVERNMENT MUST HAVE THESE DOCUMENTS.  WE DON'T HAVE THEM, AND

08:58AM 13  WE RELIED ON PEOPLE ANSWERING OUR SUBPOENAS TO GIVE US WHAT

08:58AM 14  THEY HAVE.

08:58AM 15      SOMEHOW THEY WERE PROVIDED TO DOWNEY.

08:58AM 16      AND I'LL NOTE THAT THESE DOCUMENTS WERE NOT PRODUCED WITH

08:58AM 17  A GSK BATES NUMBER AS IF GSK PROVIDED THESE.

08:58AM 18      THESE ARE MOST LIKELY DOCUMENTS SITTING ON A THERANOS

08:58AM 19  SERVER THAT DEFENSE PRETTY CLEARLY STILL HAS ACCESS TO SOMEHOW.

08:58AM 20  I DON'T KNOW.  I DON'T KNOW ANY OF THAT.  THEY HAVEN'T PROVIDED

08:58AM 21  ANY OF THAT INFORMATION TO US.

08:58AM 22      I DON'T MEAN TO MAKE THIS A BIGGER DISCOVERY FIGHT, WHICH

08:59AM 23  REALLY, IF IT WERE GOING TO BE ONE, SHOULD HAVE HAPPENED

08:59AM 24  PRETRIAL, TO BE COMPLETELY FRANK.

08:59AM 25      WHAT I'M ASKING IS THAT IN THE MOMENT WITH WHAT WE HAVE,

08:59AM 1    THE REMEDY IS TO EXCLUDE THESE DOCUMENTS.

08:59AM 2        NOW, TO SPECIFICALLY ADDRESS MR. DOWNEY'S STATEMENTS ABOUT

08:59AM 3    GSK COMING UP FOR THE FIRST TIME DURING CROSS-EXAMINATION, THE

08:59AM 4    GOVERNMENT -- AND IT'S MY BEST RECOUNT OF THE EVIDENCE -- THE

08:59AM 5    GOVERNMENT IN ITS OPENING ARGUMENT TALKED ABOUT PLACING THE

08:59AM 6    PFIZER LOGO ON THE DOCUMENTS, AND THAT CAME UP THROUGH THE

08:59AM 7    PFIZER WITNESS.

08:59AM 8        THERE WAS ALSO THE SCHERING-PLOUGH REPORT.

08:59AM 9        MY RECOLLECTION OF THE EVIDENCE IS THAT DEFENDANT HAS

08:59AM 10   ACTUALLY RAISED THAT ISSUE MORE FREQUENTLY THAN THE GOVERNMENT

08:59AM 11   HAS BY CROSS-EXAMINING MY COUNT IS FOUR DIFFERENT WITNESSES

08:59AM 12   ABOUT IT, INCLUDING INVESTORS, SAYING "DIDN'T YOU SEE THE

08:59AM 13   THERANOS ADDRESS AND EMAIL ADDRESS AT THE BOTTOM?  WASN'T THAT

08:59AM 14   A CLEAR SIGN THAT THERANOS WROTE IT, NOT THE PHARMACY?"

08:59AM 15       THERE WERE SEVERAL DIFFERENT THEORIES ABOUT IT.

08:59AM 16       AND THEN WHEN MS. HOLMES TOOK THE STAND, SHE ADMITTED

09:00AM 17   PUTTING THE LOGOS ON THE DOCUMENTS.

09:00AM 18       SO THE DEFENDANTS, IF ANYTHING, HAVE BROUGHT THIS ISSUE UP

09:00AM 19   MORE FREQUENTLY THAN THE GOVERNMENT.

09:00AM 20       THE GOVERNMENT IN CROSS-EXAMINATION ASKED MORE QUESTIONS

09:00AM 21   ABOUT THAT TO DETERMINE THE EXTENT OF WHAT MS. HOLMES WAS

09:00AM 22   ESSENTIALLY CONCEDING THAT SHE DID WITH RESPECT TO THESE LOGOS.

09:00AM 23       I DON'T KNOW IF THE GOVERNMENT KNEW THAT SHE ADDED THE

09:00AM 24   LOGO TO GSK BEFORE TUESDAY, AND I DON'T THINK THAT WE KNEW WHAT

09:00AM 25   HER ANSWER TO THAT QUESTION WAS GOING TO BE.

09:00AM   1          WE CERTAINLY HADN'T BEEN PROVIDED THIS INFORMATION IN

09:00AM   2    DISCOVERY TO THE BEST OF MY KNOWLEDGE.

09:00AM   3          SO, AGAIN, THE POINT IS THAT REASONABLE QUESTIONS IN

09:00AM   4    CROSS-EXAMINATION TO FOLLOW UP ON POINTS THAT WERE RAISED IN

09:00AM   5    THE DIRECT IS FAIR GAME.

09:00AM   6          I'M NOT ENTIRELY SEEING THE CONNECT TO HOW THAT ALL OF A

09:00AM   7    SUDDEN OPENS DOORS TO DOCUMENTS THAT SHOULD HAVE BEEN PRODUCED

09:00AM   8    OVER THE LAST SEVERAL YEARS AND HAVEN'T BEEN PRODUCED, BUT THE

09:00AM   9    DEFENSE CLEARLY HAD IN THEIR POSSESSION.

09:00AM  10          AND I WILL JUST POINT OUT FOR WHY I'M SUSPICIOUS THAT

09:00AM  11    THERE IS MORE HANGING OUT THERE, THAT THERE'S A 70 PAGE GAP IN

09:01AM  12    THE BATES NUMBERS OF WHAT WE WERE GIVEN YESTERDAY, AND I HAVE

09:01AM  13    NO IDEA WHAT THOSE DOCUMENTS ARE, YOUR HONOR.

09:01AM  14          I HAVE A FEELING THAT THEY'RE WAITING UNTIL THE END OF

09:01AM  15    CROSS-EXAMINATION TO HAND THEM OVER AND THEN MAGICALLY USE THEM

09:01AM  16    IN REDIRECT.

09:01AM  17          LIKE, THIS IS OUR GROWING CONCERN THAT THIS IS A PATTERN,

09:01AM  18    A PATTERN THAT MR. DOWNEY SAID WEEKS AGO WAS NOT GOING TO

09:01AM  19    HAPPEN.

09:01AM  20          IT HAS HAPPENED, AND THESE DOCUMENTS SHOULD BE EXCLUDED.

09:01AM  21          THE COURT:  MR. DOWNEY?

09:01AM  22          MR. DOWNEY:  WELL, YOUR HONOR, JUST IN THE INTEREST

09:01AM  23    OF CLARITY AS TO MS. HOLMES'S TESTIMONY, SHE SAID ACTUALLY ON

09:01AM  24    TUESDAY IN CONNECTION SPECIFICALLY WITH THE GSK LOGO, SHE

09:01AM  25    DIDN'T KNOW WHEN THE LOGO HAD BEEN ADDED.  THAT WAS HER

09:01AM  1    TESTIMONY.

09:01AM  2        SHE DIDN'T KNOW -- FOR EXAMPLE, IN RESPONSE TO QUESTIONS

09:01AM  3    ABOUT THE SUBJECT FOR MR. LEACH, SHE DIDN'T KNOW WHETHER GSK

09:01AM  4    KNEW THAT OR NOT.  THAT WAS HER TESTIMONY ON TUESDAY.

09:01AM  5        I DON'T THINK IT'S EXACTLY AS MS. VOLKAR JUST RECOUNTED.

09:01AM  6        BUT IN ANY EVENT, YOUR HONOR, I THINK THE STANDARD UNDER

09:01AM  7    RULE 16 IS WHEN WE KNOW WE'RE GOING TO USE SOMETHING AS AN

09:02AM  8    EXHIBIT IN CONNECTION WITH THE CASE, WE'RE OBLIGATED TO

09:02AM  9    DISCLOSE IT.

09:02AM  10        AND GSK WAS NOT AN ISSUE PRIOR TO THE TIME THE DEFENDANT

09:02AM  11    TOOK THE STAND FOR DIRECT EXAMINATION.

09:02AM  12        AND IT'S SURPRISING TO ME THAT THE GOVERNMENT, WITHOUT A

09:02AM  13    WITNESS IN ITS CASE, WOULD TRY TO IMPLY ON CROSS-EXAMINATION

09:02AM  14    THAT THERE WAS SOME IMPROPRIETY OR THAT THE DEFENSE HAD EVEN --

09:02AM  15    THE DEFENDANT HAD PREPARED THE GSK REPORT, WHICH IS, I THINK,

09:02AM  16    ALL EVIDENCE INDICATES UNTRUE.

09:02AM  17        BUT IT CAME UP ON THE CROSS-EXAMINATION.  WE'RE ENTITLED

09:02AM  18    TO SHOW THE SEQUENCE OF EVENTS AROUND ITS TRANSMISSION TO GSK.

09:02AM  19        THE COURT:  IS THAT WHAT YOUR DOCUMENTS THAT YOU

09:02AM  20    PROVIDED TO THE GOVERNMENT YOU BELIEVE DOES?  IS THAT WHY

09:02AM  21    YOU'RE ASKING?

09:02AM  22        MR. DOWNEY:  YEAH.  AND IN FAIRNESS TO MS. VOLKAR,

09:02AM  23    SHE RAISES A SEPARATE EVIDENTIARY OBJECTION.

09:02AM  24        BUT THE DOCUMENT INTERNALLY REFLECTS THAT THE DOCUMENT

09:02AM  25    WITH THE LOGOS IS BEING SENT AT MS. HOLMES'S DIRECTION.

09:02AM   1          THE COURT:  AND LET'S TALK ABOUT THE EVIDENTIARY

09:02AM   2   OBJECTIONS THAT MS. VOLKAR JUST MENTIONS IN HER PLEADINGS.

09:03AM   3      DO YOU THINK YOU COULD OVERCOME THOSE?

09:03AM   4          MR. DOWNEY:  I THINK SO, BUT WE'LL SEE.

09:03AM   5          THE COURT:  MS. VOLKAR, DO YOU WANT TO BE HEARD ON

09:03AM   6   THAT?

09:03AM   7          MS. VOLKAR:  YOUR HONOR, I FIRST JUST WANT TO GET

09:03AM   8   BACK TO THE POINT, TO SAY THAT GSK WASN'T AT ISSUE IN THIS CASE

09:03AM   9   BEFORE MS. HOLMES TOOK THE STAND IS JUST NOT TRUE.

09:03AM  10      THE PHARMACEUTICAL COMPANIES AND THERANOS'S RELATIONSHIP

09:03AM  11   WITH THE PHARMACEUTICAL COMPANIES HAS BEEN -- IT'S IN THE

09:03AM  12   INDICTMENT, AND HER STATEMENTS THAT 10 OUT OF 15

09:03AM  13   COMPREHENSIVELY VALIDATED THE TECHNOLOGY HAS BEEN ONE OF THE

09:03AM  14   CORE STATEMENTS.  THE PARTIES HAVE BEEN DISCUSSING THIS FOR

09:03AM  15   YEARS.

09:03AM  16      SO TO SAY THAT THE RELATIONSHIP WITH GSK ALL OF A SUDDEN

09:03AM  17   BECAME RELEVANT TO THE DEFENSE ONCE THE DEFENDANT TESTIFIED

09:03AM  18   BECAUSE IT WAS ONE OF THE THREE REPORTS SHE SENT TO WALGREENS,

09:03AM  19   THAT'S JUST NOT TRUE, YOUR HONOR.

09:03AM  20      SO GOING TO THE EVIDENTIARY POINTS FOR EXHIBIT 4, FIRST OF

09:04AM  21   ALL, THE DOCUMENT DOES NOT PROVE THE VERSION OF THE EVENTS THAT

09:04AM  22   THE DEFENSE WANTS IT TO BECAUSE IT DOESN'T IN ANY WAY, SHAPE,

09:04AM  23   OR FORM SHOW GSK VALIDATING OR RESPONDING AND SAYING, YES, YOU

09:04AM  24   CAN USE OUR LOGO.

09:04AM  25      IT DOESN'T CHANGE MY RECOLLECTION OF THE TESTIMONY, WHICH

09:04AM  1    WAS THAT MS. HOLMES WASN'T SURE IF GSK EVER RESPONDED OR SAID

09:04AM  2    THAT THERANOS COULD PROVIDE THIS OUTSIDE OF GSK.

09:04AM  3         AND I BELIEVE THAT WAS ONE OF THE PIECES OF TESTIMONY WAS

09:04AM  4    IN THE CONTRACT, WAS THIS MEANT TO BE AN INTERNAL TO GSK ONLY

09:04AM  5    DOCUMENT AND NOT MEANT TO BE PROVIDED OUTSIDE OF GSK?

09:04AM  6         SO THIS DOES NOT ANSWER THAT.  THIS DOES NOT IN ANY WAY,

09:04AM  7    SHAPE, OR FORM GIVE GSK AUTHORIZING THE USE OF ITS LOGO OR

09:04AM  8    THERANOS SENDING IT TO OUTSIDE PARTIES.

09:04AM  9         THIS IS WHO I BELIEVE MS. HOLMES TESTIFIED HER ASSISTANT

09:04AM  10   AT THE TIME SENDING A DOCUMENT PURPORTEDLY ON DEFENDANT'S

09:04AM  11   BEHALF WITH THE GSK REPORT AND THE LOGO.

09:04AM  12        AND AGAIN, I GO BACK TO WHY I'M MAKING SUCH A BIG DEAL

09:05AM  13   ABOUT RULE 16 AND THE DISCOVERY OBLIGATIONS IS WE, THE

09:05AM  14   GOVERNMENT, DON'T KNOW IF THERE'S A DOCUMENT OUT THERE THAT

09:05AM  15   EXISTS THAT IS GSK RESPONDING TO THIS SAYING, "THANK YOU,

09:05AM  16   PLEASE KEEP THIS CONFIDENTIAL AND DON'T SHARE WITH ANYBODY."

09:05AM  17        THAT WOULD BE CRITICAL.  AND WE DON'T KNOW IF THAT

09:05AM  18   DOCUMENT EXISTS.

09:05AM  19        SO I GO BACK TO THIS BOTH, IT DOESN'T PROVE WHAT THEY

09:05AM  20   THINK IT DOES OR WHAT THEY'RE ASSERTING IT DOES, AND THEY CAN'T

09:05AM  21   GET IT IN.  IT'S HEARSAY WITHIN HEARSAY.

09:05AM  22        MS. BALKENHOL IS NOT HERE TO TESTIFY AND PUT THIS FORWARD.

09:05AM  23        IT'S NOT A BUSINESS RECORD AS WE'VE BEEN TALKING ABOUT

09:05AM  24   MANY TIMES WITH YOUR HONOR THROUGHOUT THIS CASE.  IT'S NOT EVEN

09:05AM  25   AN INTERNAL THERANOS EMAIL.  IT'S AN EMAIL FROM MS. HOLMES'S

09:05AM 1      THEN ASSISTANT TO SOMEONE AT A PHARMACEUTICAL COMPANY.

09:05AM 2          THERE'S NO WITNESS HERE TO SPONSOR IT.  THERE'S NO ONE

09:05AM 3      WITH PERSONAL KNOWLEDGE ABOUT THIS, AND IT'S ALSO PURPORTING TO

09:05AM 4      RECOUNT SOMETHING THAT THE DEFENDANT SAID.  IT'S HEARSAY WITHIN

09:05AM 5      HEARSAY, AND NO ONE CAN GET PAST THE FIRST LEVEL.

09:05AM 6          THE COURT:  THAT WAS WHEN I READ IT AND I READ

09:05AM 7      MS. VOLKAR'S OBJECTIONS, THEY SEEMED TO BE PRETTY -- ON SOLID

09:06AM 8      GROUND, MR. DOWNEY.  I DON'T KNOW IF YOU WANT TO RESPOND NOW OR

09:06AM 9      WAIT UNTIL YOU DECIDE TO SEEK ADMISSION OF THE DOCUMENT.

09:06AM 10         MR. DOWNEY:  WELL, I'LL JUST RESPOND PRELIMINARILY,

09:06AM 11     AND I WOULD ACKNOWLEDGE FOR CERTAIN EXCEPTIONS, I WOULD HAVE TO

09:06AM 12     LIKELY LAY A FOUNDATION THROUGH TESTIMONY.

09:06AM 13         BUT LET ME NOT LET THE GOVERNMENT SLIP IN ITS ALLEGATIONS

09:06AM 14     FROM THE INDICTMENT.

09:06AM 15         THE ALLEGATION OF THE INDICTMENT IS THAT THE DEFENDANT

09:06AM 16     REPRESENTED THAT THERANOS TECHNOLOGY HAD BEEN EXAMINED, USED,

09:06AM 17     AND VALIDATED BY PHARMACEUTICAL COMPANIES.

09:06AM 18         THERE'S NO DISPUTE IN THIS CASE THAT GSK EXAMINED, USED,

09:06AM 19     AND VALIDATED THERANOS'S TECHNOLOGY.

09:06AM 20         THIS LOGO ISSUE ACROSS ALL OF THESE COMPANIES IS A

09:06AM 21     SIDESHOW ISSUE TO THE ISSUE THAT IS SET FORTH IN THE

09:07AM 22     INDICTMENT.  THAT IS THE ALLEGATION OF THE INDICTMENT IN 12(H).

09:07AM 23         THERE'S NO OBVIOUS REASON WHY THERE WOULD BE -- THE

09:07AM 24     DEFENDANT WOULD BE ON THE STAND AND THE GOVERNMENT WOULD TRY TO

09:07AM 25     ELICIT TESTIMONY AS TO HOW A LOGO WAS PLACED ON THAT WHEN, WHEN

09:07AM   1    IT WAS PLACED, WHO PLACED IT, ET CETERA.

09:07AM   2        I THINK WE ALL AGREE THAT MS. GANGAKHEDKAR TESTIFIED THAT

09:07AM   3    GSK EXAMINED, USED, AND VALIDATED THE TECHNOLOGY.

09:07AM   4        SO THE NOTION THAT THIS IS CORE TO THE GOVERNMENT'S CASE,

09:07AM   5    IT IS NOT.

09:07AM   6            THE COURT:  OKAY.  MAYBE YOU KNOW YOUR CASE A LITTLE

09:07AM   7    BIT BETTER THAN MR. DOWNEY DOES?

09:07AM   8            MR. DOWNEY:  I WAS GOING BY THE INDICTMENT.

09:07AM   9            MS. VOLKAR:  I THINK SO, YOUR HONOR.

09:07AM  10        AND THE MOST OBVIOUS RESPONSE TO ME IS THAT IF THIS WAS

09:07AM  11    SUCH A SIDESHOW ISSUE, THEN WHY DID THE DEFENSE RAISE IT IN

09:07AM  12    FOUR OR FIVE DIFFERENT CROSS-EXAMINATIONS OF VARIOUS WITNESSES,

09:07AM  13    INCLUDING INVESTORS?

09:07AM  14        I BELIEVE THE RECORD WILL SUPPORT ME ON THAT.  I'M HAPPY

09:08AM  15    TO PULL CITATIONS.

09:08AM  16        AND ALSO WHY ASK MS. HOLMES ABOUT IT ON THE STAND DURING

09:08AM  17    CROSS-EXAMINATION?  TO THE BEST OF MY KNOWLEDGE, WE DON'T HAVE

09:08AM  18    A DOCUMENT WHERE MS. HOLMES IS SAYING, "I PLACED THE LOGO ON

09:08AM  19    IT."  SHE TESTIFIED TO THAT.

09:08AM  20        I'M JUST SAYING -- SO I GUESS I'LL LEAVE IT THERE, THAT

09:08AM  21    THE DEFENSE IS THE ONE WHO HAS PUT THE LOGOS VERY MUCH IN THE

09:08AM  22    CENTER OF THE CASE.

09:08AM  23            THE COURT:  ALL RIGHT.

09:08AM  24            MR. DOWNEY:  WELL, YOUR HONOR, LET ME JUST SAY, THIS

09:08AM  25    IS THE SORT OF KALEIDOSCOPE WORLD WE'RE IN WITH THIS.  THE

09:08AM 1    GOVERNMENT STARTS BY SAYING THEY DIDN'T USE OR EXAMINE YOUR

09:08AM 2    TECHNOLOGY.  WE ESTABLISH THAT THEY DID.

09:08AM 3        THEN THEY SAY, OKAY, MAYBE THEY EXAMINED AND USED YOUR

09:08AM 4    TECHNOLOGY AND VALIDATED IT, BUT YOU PUT LOGOS ON IT, AND THOSE

09:08AM 5    LOGOS WERE NOT AUTHORIZED BY THE COMPANY.

09:08AM 6        WE THEN INTRODUCED EVIDENCE IN RESPONSE TO THAT, INTEND TO

09:08AM 7    INTRODUCE EVIDENCE IN OUR CASE THAT, IN FACT, WE TOLD THEM, WE

09:08AM 8    SHOWED THEM THAT WE HAD CREATED A DOCUMENT IN THAT FORM.

09:09AM 9        THE GOVERNMENT SAYS, WELL, THERE'S AN EVIDENTIARY ISSUE,

09:09AM 10   YOU CAN'T GET THAT IN.

09:09AM 11       THAT STRIKES ME, YOUR HONOR, AS SHIFTING GROUND THAT IS

09:09AM 12   JUST DESIGNED NOT TO DEAL WITH THE ALLEGATIONS OF WHAT THE

09:09AM 13   GRAND JURY INDICTED ON, BUT ON SOME SHIFTING SANDS THAT JUST

09:09AM 14   TRY TO FIND A CONVICTION.

09:09AM 15       BUT I KNOW WE'RE AT THE --

09:09AM 16          MS. VOLKAR:  YOUR HONOR, I HATE TO PROLONG THIS

09:09AM 17   FURTHER, BUT WITH SHIFTING GROUNDS I HAVE TO RESPOND.

09:09AM 18       I DON'T THINK THE EVIDENCE HAS SHOWN THAT THE PHARMA

09:09AM 19   EXAMINED, USED, AND VALIDATED THE TECHNOLOGY.  WE'VE HAD THREE

09:09AM 20   DIFFERENT PHARMA WITNESSES TESTIFY TO THE EXACT OPPOSITE.

09:09AM 21          THE COURT:  THAT'S WHY WE HAVE 12 MEMBERS OF THE

09:09AM 22   COMMUNITY HERE TO DECIDE THAT ISSUE.

09:09AM 23       LET ME, LET ME TURN TO 1180 FOR JUST A MOMENT, AND I'M

09:09AM 24   GOING TO STEP DOWN SO WE CAN GET OUR JURY OUT.  WE'RE ABOUT TEN

09:09AM 25   MINUTES AFTER 9:00.

09:09AM 1       THIS IS MS. HOLMES'S RENEWED MOTION TO ADMIT FEEDBACK

09:09AM 2  REPORTS.  AND I NOTE AT PAGE 2 OF THE DOCUMENT AT LINES, I

09:10AM 3  THINK AROUND 12 THROUGH 14, THERE IS REFERENCE TO SOME

09:10AM 4  TESTIMONY, TRANSCRIPT PAGES 8087 TO -89.  I'VE LOOKED AT THOSE

09:10AM 5  AND IT SEEMS TO ME THAT THOSE ARE MR. BALWANI'S STATEMENTS AND

09:10AM 6  MS. HOLMES WAS ASKED WHETHER OR NOT THOSE STATEMENTS REFRESHED

09:10AM 7  HER RECOLLECTION.

09:10AM 8       I DON'T KNOW HOW THOSE SUPPORT THE REINTRODUCTION OF THESE

09:10AM 9  DOCUMENTS.  I'M NOT CERTAIN I SHOULD DISTURB THE COURT'S

09:10AM 10  PREVIOUS RULING JUST BASED ON THIS.

09:10AM 11       I STILL THINK THERE'S A FOUNDATIONAL ISSUE HERE.  THE

09:10AM 12  TESTIMONY THAT I HEARD WAS THAT MS. HOLMES RECEIVED EMAILS AND

09:10AM 13  WAS APPRISED OF CERTAIN INFORMATION, BUT I DON'T RECALL

09:10AM 14  ANYTHING SPECIFIC THAT SHE LOOKED AT THE DOCUMENTS AS THEY WERE

09:10AM 15  PRESENTED OR ATTEMPTED TO BE PRESENTED, THAT IS, THE

09:10AM 16  PHLEBOTOMIST REPORTS THEMSELVES.

09:10AM 17       I THINK EMAILS AND PHLEBOTOMIST REPORTS ARE TWO DIFFERENT

09:11AM 18  THINGS.

09:11AM 19       SO I STILL DON'T THINK THERE'S A FOUNDATION FOR THAT.  SO

09:11AM 20  I'M JUST LETTING YOU KNOW THAT, MR. DOWNEY.

09:11AM 21           MR. DOWNEY:  YOUR HONOR, WE MAY BE SAYING THE SAME

09:11AM 22  THING.  I THINK THE GIST OF THE TESTIMONY WAS THAT SHE REVIEWED

09:11AM 23  WHAT IS IN THE EXHIBIT, BUT MY FRIEND MR. CLEARLY IS --

09:11AM 24           THE COURT:  ALL RIGHT.  MR. CLEARY.

09:11AM 25           MR. CLEARY:  YOUR HONOR, RICHARD CLEARY ON BEHALF OF

| | | |
|---|---|---|
| 09:11AM | 1 | MS. HOLMES. |
| 09:11AM | 2 | SO I THINK A COUPLE OF ITEMS TO ADDRESS THE COURT'S |
| 09:11AM | 3 | CONCERNS. |
| 09:11AM | 4 | ON PAGE 8578 -- EXCUSE ME, 8057 AND 8058, MS. HOLMES WAS |
| 09:11AM | 5 | QUESTIONED BY THE GOVERNMENT CONCERNING THE INCREASE OF |
| 09:11AM | 6 | FINGERSTICK PERCENTAGE AT WALGREENS STORES CONCERNING -- |
| 09:11AM | 7 | INCLUDING IN THE 2015 TIME PERIOD. |
| 09:12AM | 8 | AND IN RESPONSE TO THOSE QUESTIONS, MS. HOLMES ANSWERERS |
| 09:12AM | 9 | IN THE AFFIRMATIVE. |
| 09:12AM | 10 | YOUR HONOR IS CORRECT WITH RESPECT TO CERTAIN TEXT |
| 09:12AM | 11 | MESSAGES FAILING TO REFRESH MS. HOLMES'S RECOLLECTION.  WE CAN |
| 09:12AM | 12 | GO TO THOSE PAGES AND I CAN WALK THROUGH THOSE EXCHANGES AS |
| 09:12AM | 13 | WELL WITH THE COURT, BUT THESE ARE OTHER PARTS OF THE |
| 09:12AM | 14 | CROSS-EXAMINATION THAT I THINK VERY CLEANLY HIT ON THESE |
| 09:12AM | 15 | ISSUES. |
| 09:12AM | 16 | MS. HOLMES IS ASKED, "HE'S BEING" -- THIS IS ON PAGE 8058. |
| 09:12AM | 17 | "HE'S BEING OPEN WITH YOU ABOUT IDEAS ON HOW TO INCREASE THE |
| 09:12AM | 18 | FINGERSTICK PERCENTAGE AT WALGREENS? |
| 09:12AM | 19 | "HE IS. |
| 09:12AM | 20 | "HE'S TALKING" -- AND THIS IS A QUESTION.  "HE'S TALKING |
| 09:12AM | 21 | OPENLY ABOUT THIS ISSUE IN THE 2015 TIME PERIOD WITH YOU? |
| 09:12AM | 22 | "ANSWER:  YES." |
| 09:12AM | 23 | WITH RESPECT TO MS. HOLMES'S TESTIMONY ON DIRECT |
| 09:12AM | 24 | EXAMINATION CONCERNING CUSTOMER FEEDBACK, MS. HOLMES WAS ASKED |
| 09:13AM | 25 | WHETHER SHE RECEIVED CUSTOMER FEEDBACK CONCERNING THERANOS'S |

09:13AM  1    PERFORMANCE IN WALGREENS STORES, WHETHER SHE RECEIVED -- HOW

09:13AM  2    SHE RECEIVED THAT FEEDBACK.

09:13AM  3        SHE RECEIVED IT BY EMAIL.  THE DOCUMENTS WE SEEK TO ADMIT

09:13AM  4    WERE SENT TO HER BY EMAIL.

09:13AM  5        SHE ALSO TESTIFIED THAT SHE RECEIVED SOME OF IT IN

09:13AM  6    MEETINGS, AND SHE RECEIVED THE FEEDBACK OVER THE COURSE OF THE

09:13AM  7    WALGREENS/THERANOS PARTNERSHIP INTO 2016.

09:13AM  8            THE COURT:  AND I DON'T MEAN TO PICK NITS, BUT I

09:13AM  9    UNDERSTAND THAT.  SHE RECEIVED EMAILS.  SHE RECEIVED THAT.

09:13AM  10   THERE'S NOTHING IN THE RECORD YET THAT SAYS, "I RECEIVED THESE

09:13AM  11   DOCUMENTS VIA THAT EMAIL AND I REVIEWED THESE DOCUMENTS."

09:13AM  12       I DON'T THINK THERE'S ANYTHING IN THE RECORD THAT SAYS

09:13AM  13   THAT.

09:13AM  14           MR. CLEARY:  MS. HOLMES -- WE DID NOT PUT THE

09:13AM  15   DOCUMENTS IN FRONT OF MS. HOLMES IN LIGHT OF THE COURT'S PRIOR

09:13AM  16   RULING.

09:13AM  17           THE COURT:  RIGHT.  RIGHT.

09:13AM  18           MR. CLEARY:  MS. HOLMES DID TESTIFY TO THIS TYPE OF

09:13AM  19   EVIDENCE, EMAILS CONTAINING CUSTOMER FEEDBACK.

09:14AM  20           THE COURT:  RIGHT.

09:14AM  21           MR. CLEARY:  THAT'S WHAT THESE DOCUMENTS ARE.

09:14AM  22   THEY'RE EMAILS.

09:14AM  23       AS THE COURT WELL KNOWS, THE COURT IS VERY FAMILIAR WITH

09:14AM  24   THIS ISSUE, AND I WILL ALSO JUST SAY THIS IS NOT A MATTER THAT

09:14AM  25   WE BRING LIGHTLY TO THE COURT.  WE KNOW THE BURDENS ON THE

| | | |
|---|---|---|
| 09:14AM | 1 | COURT.  WE KNOW THE EXTENT OF THE COURT'S FAMILIARITY WITH |
| 09:14AM | 2 | THESE ISSUES. |
| 09:14AM | 3 | THE COURT:  SO THAT'S WHAT -- THANK YOU.  AND PARDON |
| 09:14AM | 4 | ME, MR. CLEARY. |
| 09:14AM | 5 | I'M JUST SAYING I'M NOT PICKING NITS WITH YOU, PERHAPS I |
| 09:14AM | 6 | AM, BUT I THINK THERE'S STILL A FOUNDATIONAL VACUUM HERE. |
| 09:14AM | 7 | WE KNOW THESE DOCUMENTS WERE SENT BY EMAIL.  SHE RECEIVED |
| 09:14AM | 8 | EMAIL.  SHE REVIEWED EMAIL. |
| 09:14AM | 9 | DID SHE REVIEW THESE OR NOT?  THAT'S THE VACUUM, I THINK, |
| 09:14AM | 10 | AND MAYBE THAT WILL BE SOLVED, I DON'T KNOW. |
| 09:14AM | 11 | BUT I JUST WANT TO LET YOU KNOW, THAT'S WHAT I'M LOOKING |
| 09:14AM | 12 | AT, AND THAT'S THE LACK OF FOUNDATION THAT I SEE HERE. |
| 09:14AM | 13 | THE OTHER THING I WANTED TO SUGGEST, AGAIN, ON PAGE 2 AND |
| 09:14AM | 14 | RIGHT AROUND LINES 19 THROUGH THE BOTTOM OF THE PAGE, YOU SEEM |
| 09:14AM | 15 | TO SUGGEST -- AND I KNOW YOU'RE NOT SUGGESTING EVERY TIME |
| 09:15AM | 16 | THINGS DON'T GO YOUR WAY, IT AUTOMATICALLY RESULTS IN A FIFTH |
| 09:15AM | 17 | AND SIXTH AMENDMENT VIOLATION OF YOUR CLIENT'S RIGHTS.  I KNOW |
| 09:15AM | 18 | YOU'RE NOT TAKING THAT STEP AND THAT POSITION. |
| 09:15AM | 19 | BUT YOU SEEM TO SUGGEST THAT UNDER HAISCHER, THE HAISCHER |
| 09:15AM | 20 | CASE -- H-A-I-S-C-H-E-R -- THAT THE COURT NOT ALLOWING THESE TO |
| 09:15AM | 21 | COME IN WOULD VIOLATE THE PRECEPTS OF HAISCHER, WHICH OF COURSE |
| 09:15AM | 22 | SUGGEST, DOESN'T IT, WHAT YOU'RE GOING TO DO, AND PERHAPS MORE |
| 09:15AM | 23 | IMPORTANTLY, WHAT YOU'RE NOT GOING TO DO VIA EXPERT TESTIMONY. |
| 09:15AM | 24 | MR. CLEARY:  WELL, I WILL -- WITH RESPECT TO THE |
| 09:15AM | 25 | CONTENTS OF THE HAISCHER CASE, I'LL DEFER TO MY COLLEAGUES AND |

09:15AM  1    TO THE COURT'S SPECIFIC QUESTION, WHICH I BELIEVE RELATES TO

09:15AM  2    12.2.

09:15AM  3         AND I KNOW THAT THEY ARE AVAILABLE TO DISCUSS THOSE ISSUES

09:15AM  4    WITH THE COURT IF THE COURT IS SO INCLINED.

09:15AM  5         HAISCHER, FOR PURPOSES OF THIS RENEWED MOTION, IS RELEVANT

09:16AM  6    IN TWO WAYS.

09:16AM  7         FIRST, THE COURT -- THE COURT CLEARLY SAYS, AND I'M

09:16AM  8    QUOTING, "WE ARE ALSO MINDFUL, HOWEVER, THAT THE EXCLUSION OF

09:16AM  9    EVIDENCE OFFERED BY THE DEFENDANT IN A CRIMINAL PROSECUTION

09:16AM 10    UNDER RULE 403 IS AN EXTRAORDINARY REMEDY TO BE USED

09:16AM 11    SPARINGLY."

09:16AM 12         THE COURT GOES ON TO SAY, "APPLICATION OF RULE 403 MUST BE

09:16AM 13    CAUTIOUS AND SPARING."

09:16AM 14         AND THEN THE BACKSTOP IN THAT CASE, AS THE COURT RECALLS,

09:16AM 15    IS THE CONCLUSION THAT THE EXCLUSION OF CERTAIN EVIDENCE GOING

09:16AM 16    TO THE DEFENDANT'S MENTAL STATE UNDER 403 DID VIOLATE HER RIGHT

09:16AM 17    TO PRESENT A COMPLETE DEFENSE BECAUSE IT WAS CENTRAL TO HER

09:16AM 18    DEFENSE WITH RESPECT TO THE ELEMENT OF THE OFFENSE.

09:16AM 19         THE COURT:  AND IN THAT CASE, AS YOU RECALL,

09:16AM 20    MR. CLEARY, THE DEFENSE INDICATED TO THE COURT THAT THEY WERE

09:17AM 21    GOING TO PURSUE A DURESS DEFENSE.  YOU RECALL THAT?

09:17AM 22         MR. CLEARY:  YES, YOUR HONOR.

09:17AM 23         THE COURT:  AND THEN THEY CHANGED THEIR MIND

09:17AM 24    MIDSTREAM.  AT SOME POINT, THEY CHANGED AND SAID, "WELL,

09:17AM 25    ACTUALLY WE'RE NOT GOING TO PURSUE DURESS.  WE'RE NOT GOING TO

09:17AM 1      DO THAT."

09:17AM 2          AND THERE ARE CERTAIN REQUIREMENTS, THE SPECIFIC ONE I

09:17AM 3      THINK IN THAT CASE WAS FOR DURESS, A CLIENT HAS TO ADMIT THE

09:17AM 4      CONDUCT, DON'T THEY?  AND THEN DURESS GIVES AN EXCUSE FOR THE

09:17AM 5      CONDUCT.  BUT THEY DO HAVE TO ADMIT THE CONDUCT.

09:17AM 6          IN THAT CASE I THINK THEY CHANGED THEIR MIND.  THEY WERE

09:17AM 7      NOT GOING TO DO DURESS, AND THEY TRIED SOMETHING -- A DIFFERENT

09:17AM 8      DEFENSE.

09:17AM 9          IN THAT CASE, THE FACTS ARE A LITTLE DIFFERENT, TOO.

09:17AM 10     DIDN'T THAT INVOLVE A BROKEN LEG BY THE WITNESS, AND THE

09:17AM 11     DEFENDANT AND THE CODEFENDANT WAS DENYING MEDICAL ATTENTION

09:17AM 12     UNTIL THE CODEFENDANT SIGNED A DOCUMENT?  ISN'T THAT WHAT WAS

09:17AM 13     GOING ON THERE?

09:17AM 14         AND THAT WAS WHAT THE MENTAL STATE ISSUE THAT I THINK THE

09:17AM 15     NINTH CIRCUIT LOOKED AT THAT JUDGE DU HAD BEFORE HER IN NEVADA

09:17AM 16     IN THE TRIAL CASE, THEY LOOKED AT, AND THAT'S WHERE THAT

09:18AM 17     CONVERSATION COMES IN.

09:18AM 18         ISN'T THAT THE DISTINCTION HERE?

09:18AM 19             MR. CLEARY:  WE WOULD SUBMIT SO.  FIRST, HAISCHER

09:18AM 20     DID INVOLVE A BROKEN LEG AND TESTIMONY BY THE DEFENDANT AND BY

09:18AM 21     HER SISTER AS TO THAT ISSUE.

09:18AM 22         EVERY -- THE FACTS OF EVERY CASE ARE DIFFERENT.

09:18AM 23         HERE PARAGRAPH 12(D) SQUARELY PUTS AT ISSUE MS. HOLMES'S

09:18AM 24     STATEMENTS WITH RESPECT TO WALGREENS.

09:18AM 25             THE COURT:  I'M SORRY.  SAY THAT AGAIN.

8342

| | | |
|---|---|---|
| 09:18AM | 1 | MR. CLEARY:  DO YOU MIND IF I REMOVE MY MASK? |
| 09:18AM | 2 | THE COURT:  PLEASE.  NO.  THANK YOU. |
| 09:18AM | 3 | MR. CLEARY:  HERE WE HAVE I THINK THREE DIFFERENT |
| 09:18AM | 4 | LAYERS WHICH THE GOVERNMENT HAS PUT AT ISSUE:  MS. HOLMES'S |
| 09:18AM | 5 | MENTAL STATE WHEN SPEAKING ABOUT THE WALGREENS RELATIONSHIP, |
| 09:18AM | 6 | AND SPECIFICALLY THE WALGREENS ROLLOUT. |
| 09:18AM | 7 | SO FIRST WE HAVE THE INDICTMENT, PARAGRAPH 12(D), IN |
| 09:18AM | 8 | CONTRAST TO CERTAIN OTHER PARAGRAPHS OF THE DOCUMENT WHICH DO |
| 09:18AM | 9 | RELATE EXPRESSLY TO THE ACCURATE -- THE PERFORMANCE OF THERANOS |
| 09:18AM | 10 | TECHNOLOGY AND THE ACCURACY AND RELIABILITY OF THAT TECHNOLOGY |
| 09:19AM | 11 | OR ITS CAPABILITY TO CONSISTENTLY PRODUCE ACCURATE AND RELIABLE |
| 09:19AM | 12 | RESULTS. |
| 09:19AM | 13 | IN THE CASE OF 12(D), WE HAVE AN ALLEGATION THAT |
| 09:19AM | 14 | MS. HOLMES MISREPRESENTED THE CURRENT STATE AND THE FUTURE |
| 09:19AM | 15 | PROSPECTS OF THE WALGREENS RELATIONSHIP, SPECIFICALLY THE |
| 09:19AM | 16 | PROSPECTS OF A CONTINUED ROLLOUT. |
| 09:19AM | 17 | IN THE GOVERNMENT'S OPENING STATEMENT, CONSISTENT WITH |
| 09:19AM | 18 | THAT INDICTMENT ALLEGATION, THE GOVERNMENT ACCUSED MS. HOLMES |
| 09:19AM | 19 | OF LYING TO INVESTORS WITH RESPECT TO THE LIKELIHOOD OF A |
| 09:19AM | 20 | CONTINUED WALGREENS ROLLOUT.  THE GOVERNMENT EXPLAINED OR |
| 09:19AM | 21 | ALLEGED THAT THOSE STATEMENTS WERE FALSE BECAUSE WALGREENS WAS |
| 09:19AM | 22 | VERY CONCERNED ABOUT THE PROPORTION OF VENOUS TO FINGERSTICK |
| 09:19AM | 23 | DRAWS. |
| 09:19AM | 24 | AND THEN ON MS. HOLMES'S EXAMINATION AND |
| 09:19AM | 25 | CROSS-EXAMINATION, THE GOVERNMENT HAS REPEATEDLY RETURNED TO |

| | | |
|---|---|---|
| 09:19AM | 1 | THIS ISSUE OF THE WALGREENS ROLLOUT AND THE ROLE OF VENOUS -- |
| 09:20AM | 2 | THE PROPORTION OF VENOUS DRAWS IN CONNECTION WITH THAT ROLLOUT. |
| 09:20AM | 3 | SO YOU HAVE QUESTIONING BY THE GOVERNMENT OF MS. HOLMES |
| 09:20AM | 4 | CONCERNING AN EMAIL THAT WAS SENT BY MR. JHAVERI TO MR. BALWANI |
| 09:20AM | 5 | AND IN TURN FORWARDED TO MS. HOLMES.  THAT WAS AN AUGUST 2014 |
| 09:20AM | 6 | EMAIL IN WHICH MR. JHAVERI COMMUNICATED WITH MR. BALWANI ABOUT |
| 09:20AM | 7 | PUTTING A GAME PLAN IN PLACE OVER A CERTAIN, I BELIEVE IT WAS A |
| 09:20AM | 8 | 30-DAY PERIOD ON SOME PATIENT SATISFACTION ISSUE AND ON THE |
| 09:20AM | 9 | VENOUS DRAW, VENOUS VERSUS FINGERSTICK DRAW ISSUE. |
| 09:20AM | 10 | AND NOW THAT THESE -- NOW THAT MS. HOLMES'S MENTAL STATE |
| 09:20AM | 11 | IS FULLY AT ISSUE HERE, IT'S ONE OF THE CORE ALLEGATIONS IN THE |
| 09:20AM | 12 | INDICTMENT.  THIS IS CENTRAL EVIDENCE TO CORROBORATE |
| 09:21AM | 13 | MS. HOLMES'S TESTIMONY THAT SHE DID NOT BELIEVE THAT THE RATE |
| 09:21AM | 14 | OF FINGERSTICK -- EXCUSE ME, THE PROPORTION OF VENOUS DRAWS |
| 09:21AM | 15 | WOULD SLOW DOWN OR PREVENT THE WALGREENS EXPANSION. |
| 09:21AM | 16 | SO THAT'S THE WAY IT'S RELEVANT IN THIS CASE. |
| 09:21AM | 17 | MS. HOLMES TESTIFIED THAT SHE HAD HEARD ABOUT THE |
| 09:21AM | 18 | PROPORTION OF VENOUS DRAWS, THE NUMBER OF VENOUS DRAWS, I |
| 09:21AM | 19 | BELIEVE, WAS THE EXACT PHRASING OF THE QUESTION, AND ANSWERED |
| 09:21AM | 20 | THAT SHE DID NOT BELIEVE THAT THAT WOULD PREVENT OR SLOW DOWN |
| 09:21AM | 21 | THE WALGREENS EXPANSION, AND THAT HER RECEIPT OF CUSTOMER |
| 09:21AM | 22 | FEEDBACK INFORMED HER THAT, CONTRARY TO THE INITIAL EXPECTATION |
| 09:21AM | 23 | THAT FINGERSTICK WOULD BE -- LIKE THEY'RE REALLY EXCITING, KEY |
| 09:21AM | 24 | ELEMENTS OF THE CUSTOMER EXPERIENCE, THAT CUSTOMERS ACTUALLY |
| 09:22AM | 25 | WERE MUCH MORE CONCERNED ABOUT PRICE THAN THEY WERE ABOUT |

09:22AM   1      RECEIVING A VENOUS DRAW OR A FINGERSTICK.

09:22AM   2              THE COURT:  SHE'S ALREADY TESTIFIED TO THAT?

09:22AM   3              MR. CLEARY:  SHE HAS TESTIFIED TO THAT.

09:22AM   4      THE GOVERNMENT SUBSEQUENTLY HAS CROSS-EXAMINED HER

09:22AM   5  REGARDING THIS VERY QUESTION, AND BOTH IN ORDER TO GIVE THE

09:22AM   6  JURY A FULL SENSE OF WHY SHE BELIEVED WHAT SHE BELIEVED AND IN

09:22AM   7  ORDER TO RESPOND TO THAT CROSS-EXAMINATION, WE BELIEVE THAT

09:22AM   8  THESE REPORTS ARE ADMISSIBLE AND NECESSARY.

09:22AM   9      AND I WILL ADD, YOUR HONOR, THAT WE BELIEVE THAT THEY'RE

09:22AM  10  ALL ADMISSIBLE.

09:22AM  11      IF THE COURT DISAGREES, WE DID PROFFER ONE OF THE

09:22AM  12  EXHIBITS --

09:22AM  13              THE COURT:  7586A I THINK IS THE ONE.

09:22AM  14              MR. CLEARY:  THAT'S RIGHT.  SO WHAT WE DID IN

09:22AM  15  3586A --

09:22AM  16              THE COURT:  75.

09:22AM  17              MR. CLEARY:  EXCUSE ME, 7586A IS JUST TAKE A

09:22AM  18  SELECTION TO WINNOW DOWN THE VOLUME.

09:23AM  19      AND IN 7476, WE SELECTED A REPORT THAT DATES FROM EARLY

09:23AM  20  OCTOBER 2014, BECAUSE I KNOW THAT THE COURT HAD EXPRESSED A

09:23AM  21  CONCERN ABOUT VOLUME IN THE PAST AND WE BELIEVE THAT --

09:23AM  22  ALTHOUGH ACTUALLY THE VOLUME AND THE REGULARITY OF THESE

09:23AM  23  UPDATES ARE IMPORTANT IN UNDERSTANDING WHY MS. HOLMES DID HAVE

09:23AM  24  THE BELIEF THAT SHE TESTIFIED TO, THAT THESE WOULD RESOLVE ANY

09:23AM  25  CONCERNS ABOUT --

8345

| | | |
|---|---|---|
| 09:23AM | 1 | THE COURT: WELL, SHE HASN'T TESTIFIED THAT SHE'S |
| 09:23AM | 2 | LOOKED AT AND ACTUALLY READ ANY OF THESE, HAS SHE? |
| 09:23AM | 3 | MR. CLEARY: SHE TESTIFIED THAT SHE RECEIVED |
| 09:23AM | 4 | CUSTOMER FEEDBACK AND THEN SHE REVIEWED THE FEEDBACK THAT WAS |
| 09:23AM | 5 | SENT TO HER. |
| 09:23AM | 6 | THE COURT: SO SHE HASN'T TESTIFIED THAT SHE |
| 09:23AM | 7 | REVIEWED ANY OF THESE DOCUMENTS. AM I ACCURATE? |
| 09:23AM | 8 | MR. CLEARY: YOU'RE ACCURATE, YOUR HONOR. |
| 09:23AM | 9 | IF THE COURT IS CONCERNED ABOUT FOUNDATION ON REDIRECT, WE |
| 09:23AM | 10 | WOULD BE HAPPY TO PUT THESE DOCUMENTS IN FRONT OF HER AND SEE |
| 09:23AM | 11 | IF WE CAN LAY THAT FOUNDATION. |
| 09:23AM | 12 | THE COURT: WELL, THAT'S MR. DOWNEY'S JOB. YOU |
| 09:24AM | 13 | BETTER NOT MAKE A PROMISE FOR HIM THAT HE DOESN'T KNOW ABOUT. |
| 09:24AM | 14 | MR. CLEARY: I THINK THE FOUNDATION OF THESE |
| 09:24AM | 15 | DOCUMENTS WOULD BE FULLY CONSISTENT WITH THAT TESTIMONY, |
| 09:24AM | 16 | YOUR HONOR. |
| 09:24AM | 17 | THE COURT: THANK YOU. |
| 09:24AM | 18 | MS. VOLKAR? |
| 09:24AM | 19 | MS. VOLKAR: YOUR HONOR, IF I MAY BE HEARD? |
| 09:24AM | 20 | WE HAVEN'T HEARD ANYTHING THIS MORNING THAT IS DIFFERENT |
| 09:24AM | 21 | THAN WHAT WE'VE HEARD THE PRIOR TWO TIMES THAT MY COLLEAGUE, |
| 09:24AM | 22 | MR. BOSTIC, WAS UP HERE ARGUING THIS EXACT SAME MOTION. |
| 09:24AM | 23 | THERE'S NOTHING TO DISTURB THE COURT'S RULING. |
| 09:24AM | 24 | YOUR HONOR CHARACTERIZED THE TESTIMONY THAT THEY CITED, |
| 09:24AM | 25 | MR. CLEARY QUOTED IT, AND IT EXACTLY COINCIDED WITH WHAT |

09:24AM   1   YOUR HONOR SAID.  THEY ASKED ABOUT WHETHER OR NOT MR. BALWANI

09:24AM   2   TOLD HER ABOUT FINGERSTICK, AND HE REPEATEDLY DID IN TEXT

09:24AM   3   MESSAGES.  THAT DOESN'T ALTER THE CORE PROBLEMS WITH ADMITTING

09:24AM   4   THIS TESTIMONY.

09:24AM   5        FIRST, THERE'S THE FOUNDATIONAL ISSUE, WHICH YOUR HONOR

09:24AM   6   HAS NOTED, AND THEY HAVE ADMITTED THAT THEY HAVEN'T SOLVED THAT

09:24AM   7   ISSUE.

09:24AM   8        NOW, MAYBE SHE CAN ON REDIRECT, BUT THAT'S ONLY THE FIRST

09:24AM   9   STEP.

09:24AM  10        THEN THERE'S THE RELEVANCE PROBLEM.  THEN THERE'S THE 403

09:25AM  11   PROBLEM.  AND THEY WANT TO JUMP OVER AND SKIP THE RELEVANCE

09:25AM  12   PROBLEMS AND TALK ABOUT 403 AND MENTAL STATE, BUT I WANT TO

09:25AM  13   PAUSE FOR A MOMENT ON THE RELEVANCE, WHICH EVEN THE EXCERPTS,

09:25AM  14   THE WINNOWED DOWN EXCERPTS SHOW IN EXACERBATING DETAIL,

09:25AM  15   90 PERCENT OF THOSE EXCERPTS THAT THEY INCLUDE ARE ALL ABOUT

09:25AM  16   PRICE.

09:25AM  17        AND YOUR HONOR'S ORDER -- AND I KNOW I QUOTED IT IN MY

09:25AM  18   BRIEF SO I WON'T REPEAT IT -- TALKED ABOUT AND ACKNOWLEDGED

09:25AM  19   THIS IS NOT A PRICING, A MISPRICED OR A LYING ABOUT HOW LOW THE

09:25AM  20   PRICES WOULD BE.  THIS IS NOT THAT TYPE OF CASE.

09:25AM  21        THE ALLEGATIONS IN THE INDICTMENT ARE THAT THERANOS WOULD

09:25AM  22   OFFER BETTER, CHEAPER, FASTER, MORE ACCURATE TESTS.  CHEAPER

09:25AM  23   WAS ONE PART OF THAT, BUT I THINK WE HAVE ALSO HEARD WITNESSES

09:25AM  24   SAY, I BELIEVE MS. GOULD, IF I'M NOT MISTAKEN, THAT IF SHE KNEW

09:25AM  25   THE TESTS WERE LESS ACCURATE, IT WOULD MATTER A LOT LESS TO HER

09:25AM  1    IF IT WAS CHEAPER.

09:25AM  2        AND WE DON'T HAVE THE OPPORTUNITY TO ASK THOSE PATIENTS

09:25AM  3    WHO AT THE MOMENT OF CARE OR WERE TELLING PHLEBOTOMISTS, "WOW,

09:26AM  4    THE PRICES ARE SO GREAT," WE DON'T HAVE THE OPPORTUNITY TO ASK

09:26AM  5    THEM, "WOULD IT MATTER TO YOU IF YOU KNEW THE TEST WAS GOING TO

09:26AM  6    BE INACCURATE THAT IT WAS CHEAPER?"

09:26AM  7        AND AGAIN, WE QUOTED MS. CHEUNG, WHO I THINK SPEAKS FOR

09:26AM  8    COMMON SENSE IN A LOT OF PEOPLE, THAT PEOPLE MIGHT LIKE THE

09:26AM  9    CHEAPER PRICES, BUT THEY ALSO EXPECT AT LEAST AS ACCURATE TEST

09:26AM  10   AS WHAT THEY WOULD GUESS ELSEWHERE, AND THAT'S THE CORE

09:26AM  11   ALLEGATIONS OF THIS CASE AND THAT'S WHY THIS IS IRRELEVANT AS

09:26AM  12   YOUR HONOR HAS FOUND TWICE BEFORE.

09:26AM  13       SO EVEN IF THEY PUT THESE DOCUMENTS BEFORE MS. HOLMES, I

09:26AM  14   WOULD ARGUE IT'S AN EXERCISE IN FUTILITY, BECAUSE EVEN IF SHE

09:26AM  15   SAYS THAT SHE'S REVIEWED THEM, WHAT IS CONTAINED IN THEM IS

09:26AM  16   IRRELEVANT TO THE ALLEGATIONS AND WHAT IS GOING ON WITH THIS

09:26AM  17   CASE.

09:26AM  18       NOW, THEY'RE TRYING TO BOOTSTRAP IT BY TYING IT TO HER

09:26AM  19   MENTAL STATE AND REFERENCE IN THE 12.2.  MR. CLEARY SAYS HER

09:26AM  20   MENTAL STATE IS NOW CLEARLY AT ISSUE.

09:26AM  21       I DON'T KNOW ABOUT THAT.  THEY HAVE NOT YET IDENTIFIED FOR

09:26AM  22   US OR FOR THE COURT THAT THEIR EXPERT IS ACTUALLY GOING TO

09:26AM  23   TESTIFY.  THEY HAVE NOT YET -- SHE SAID THAT MR. BALWANI DIDN'T

09:26AM  24   TELL ME WHAT TO SAY, MR. BALWANI DIDN'T TELL ME THIS.  AND I'M

09:27AM  25   WORRIED I'M GOING TO MISQUOTE THE TRANSCRIPT, SO I DON'T WANT

8348

| | | |
|---|---|---|
| 09:27AM | 1 | TO GO TOO FAR. |
| 09:27AM | 2 | BUT AT THE END OF DISCUSSING THE ASPECTS OF THEIR |
| 09:27AM | 3 | RELATIONSHIP, SHE ACTUALLY DISAVOWED A DIRECT CONNECTION TO HER |
| 09:27AM | 4 | MENTAL STATE WITH RESPECT TO THAT. |
| 09:27AM | 5 | AND, AGAIN, HOW THE GOVERNMENT COUNTERED THAT IN |
| 09:27AM | 6 | CROSS-EXAMINATION WAS TO ASK WHAT MR. BALWANI DID TELL HER, AND |
| 09:27AM | 7 | IT WAS ABOUT THE FACT THAT THE FINGERSTICK WAS TOO LOW. |
| 09:27AM | 8 | SO THAT'S A RED HERRING, YOUR HONOR. |
| 09:27AM | 9 | THE CORE ISSUE HERE IS THAT THE EVIDENCE IS NOT RELEVANT. |
| 09:27AM | 10 | AND THE LAST ARGUMENT THAT I WANTED TO MAKE, WHICH YOUR |
| 09:27AM | 11 | HONOR I THINK ALSO FOUND PERSUASIVE FROM THE LAST TIME WE |
| 09:27AM | 12 | BRIEFED THIS, IS THE TIMING. |
| 09:27AM | 13 | DEFENSE COUNSEL SKIPS OVER THE TIMING, AND BY GIVING A |
| 09:27AM | 14 | WINNOWED VIEW OF THIS, I THINK THAT THEY ACKNOWLEDGE IT, THE |
| 09:27AM | 15 | VAST MAJORITY OF THESE REPORTS SENT TO MS. HOLMES ARE IN THE |
| 09:27AM | 16 | SECOND HALF OF 2015. |
| 09:27AM | 17 | THEY HAVE NOT YET IDENTIFIED WHAT INVESTOR, IF ANY, THIS |
| 09:27AM | 18 | ACTUALLY WENT TO HER MENTAL STATE FOR WHEN SHE DEFRAUDED THEM. |
| 09:27AM | 19 | THEY HAVE NOT ACTUALLY TIED THESE REPORTS AND HER KNOWLEDGE OF |
| 09:28AM | 20 | THEM TO ANY SPECIFIC EVENTS THAT IT WOULD HAVE IMPACTED HER |
| 09:28AM | 21 | STATE OF MIND FOR. |
| 09:28AM | 22 | RATHER, WHEN SHE'S TALKING TO RDV, WHEN SHE'S TALKING TO |
| 09:28AM | 23 | RUPERT MURDOCH, THE VAST MAJORITY OF THESE REPORTS DON'T EVEN |
| 09:28AM | 24 | EXIST YET.  AND SO, AGAIN, THE TIMING POINT IS ANOTHER KEY |
| 09:28AM | 25 | POINT. |

09:28AM  1          THE COURT:  WELL, THAT'S A SIGNIFICANCE POINT, TOO.

09:28AM  2      I RAISE THIS CONVERSATION -- AND I'M GOING TO STEP DOWN SO

09:28AM  3  WE CAN GET OUR JURY OUT HERE -- BUT I RAISED THIS BECAUSE I WAS

09:28AM  4  INTRIGUED BY THE REFERENCE TO THE HAISCHER CASE, AND IT CAUSED

09:28AM  5  ME TO THINK, WELL, IN HAISCHER THERE WAS NO EXPERT.

09:28AM  6          MR. CLEARY:  THAT'S RIGHT, YOUR HONOR.

09:28AM  7          THE COURT:  AND IN HAISCHER, I THINK THE TESTIMONY

09:28AM  8  WAS JUST FROM -- NOT JUST -- BUT IT WAS FROM THE DEFENDANT, OR

09:28AM  9  AT LEAST INFORMATION ABOUT THE DEFENDANT'S MENTAL STATE IN

09:28AM 10  REGARDS TO THE CONDUCT THAT SHE ENGAGED IN.

09:28AM 11      AND, OF COURSE, WE KNOW THE FACTS ARE DIFFERENT.  THEY'RE

09:28AM 12  MUCH MORE DRAMATIC THERE.  THERE WAS A BROKEN LEG, AS I SAID,

09:28AM 13  AND AS YOU KNOW, MR. CLEARLY, SHE WAS DENIED MEDICAL ATTENTION

09:29AM 14  UNTIL SHE SIGNED THE DOCUMENT THAT WAS USED FOR THE FRAUDULENT

09:29AM 15  CONDUCT IN THAT CASE.  AND THAT WAS NOT PERMITTED TO GO TO THE

09:29AM 16  JURY.

09:29AM 17      AND THE NINTH CIRCUIT SAID THAT -- REVERSED ON THAT GROUND

09:29AM 18  AND SAID THAT COULD HAVE COMING IN, THAT SHOULD HAVE COME IN

09:29AM 19  FOR THE ISSUE OF STATE OF MIND OF THE PERSON.

09:29AM 20      A LITTLE MORE DRAMATIC THAN WHAT WE HAVE HERE, I THINK

09:29AM 21  YOU'LL CONCEDE THAT.

09:29AM 22          MR. CLEARY:  YOUR HONOR, JUST A FEW THINGS.

09:29AM 23      SO THE HAISCHER CASE, I WILL SAY THAT I CITED IT NOT WITH

09:29AM 24  THE VIEW OF TUMBLING THIS MOTION INTO A 12.2 DISCUSSION, BUT

09:29AM 25  JUST BECAUSE IT STATES THE LEGAL PROPOSITION VERY CLEARLY.

8350

09:29AM 1        WITH RESPECT TO 403, THE APPLICATION OF 403, WHEN A

09:29AM 2    DEFENDANT SEEKS TO INTRODUCE EVIDENCE HERSELF.

09:29AM 3        SO IF I COULD JUST RESPOND TO A FEW POINTS, AND THEN WE

09:29AM 4    CAN LET THE JURY COME IN.

09:29AM 5        SO PRICE, CUSTOMER FEEDBACK, IT'S HIGHLY RELEVANT.  IT'S

09:30AM 6    IDENTIFIED AS ESSENTIAL TO THE ROLLOUT IN THE MASTER SERVICES

09:30AM 7    AGREEMENT BETWEEN THERANOS AND WALGREENS.  SO I THINK THAT IS

09:30AM 8    RELEVANT.

09:30AM 9        WALGREENS, THE TIMING, NUMEROUS QUESTIONS RELATING TO THE

09:30AM 10   2015 TIME PERIOD, AND THAT'S AN EXACT QUOTE FROM THE

09:30AM 11   GOVERNMENT.  WE HAVE APRIL 2015 TEXT MESSAGES, AND IT'S

09:30AM 12   PAGE 8093.

09:30AM 13       I'M HAPPY TO ANSWER ANY OTHER QUESTIONS THAT THE COURT

09:30AM 14   HAS.

09:30AM 15           THE COURT:  OKAY.  I DON'T HAVE ANY NOW.  THANK YOU.

09:30AM 16       ALL RIGHT.

09:30AM 17           MS. VOLKAR:  I THINK YOUR HONOR HAS HEARD EVERYTHING

09:30AM 18   THAT YOU NEEDED TO HEAR, WHICH IS THAT THE DEFENSE IS NOT

09:30AM 19   ALLEGING THIS EVIDENCE IN SUPPORT FOR HER STATE OF MIND AND

09:30AM 20   WITH RESPECT TO THE 12.2.

09:30AM 21       I THINK THAT SQUARELY PUTS TO BED ANY CONCERNS YOU HAVE

09:30AM 22   ABOUT HAISCHER.  THEY'RE NOT OFFERING THIS EVIDENCE FOR THAT

09:30AM 23   PURPOSE, SO THEREFORE, THERE'S NOTHING TO CHANGE YOUR PRIOR

09:30AM 24   RULINGS.

09:30AM 25           MR. CLEARY:  YOUR HONOR, INTENT TO DEFRAUD IS AN

| | | |
|---|---|---|
| 09:30AM | 1 | ESSENTIAL ELEMENT OF THE OFFENSES.  MS. HOLMES'S STATE OF MIND, |
| 09:31AM | 2 | HER UNDERSTANDING, HER KNOWLEDGE AND INTENT WITH RESPECT TO THE |
| 09:31AM | 3 | STATE OF THE WALGREENS RELATIONSHIP, THAT IS, I THINK, THE CORE |
| 09:31AM | 4 | RELEVANCY ARGUMENT THAT WE'RE MAKING. |
| 09:31AM | 5 | SO JUST WHAT SHE UNDERSTOOD THE STATE OF THE WALGREENS |
| 09:31AM | 6 | RELATIONSHIP TO BE BASED ON THE INFORMATION THAT WAS |
| 09:31AM | 7 | TRANSMITTED TO HER. |
| 09:31AM | 8 | THE COURT:  OKAY.  WELL, WE'LL SEE IF THAT COMES |
| 09:31AM | 9 | INTO EVIDENCE.  I'M SUGGESTING, AS TO THESE SPECIFIC DOCUMENTS, |
| 09:31AM | 10 | IT HAS NOT. |
| 09:31AM | 11 | BUT THERE HAVE BEEN TIMES THROUGHOUT THE TRIAL THAT YOUR |
| 09:31AM | 12 | COLLEAGUES HAVE ADVOCATED THE ADMISSION OF SOME CERTAIN |
| 09:31AM | 13 | STATEMENT, PIECE OF EVIDENCE FOR THE RELEVANT ISSUE OF STATE OF |
| 09:31AM | 14 | MIND.  WE KNOW THAT.  THE RECORD SAYS THAT. |
| 09:31AM | 15 | ALL RIGHT.  THANK YOU.  WE'LL TAKE ABOUT FIVE MINUTES AND |
| 09:31AM | 16 | THEN WE'LL BRING OUR JURY IN.  THANK YOU. |
| 09:31AM | 17 | MS. VOLKAR:  THANK YOU, YOUR HONOR. |
| 09:31AM | 18 | THE CLERK:  COURT IS IN RECESS. |
| 09:31AM | 19 | (RECESS FROM 9:31 A.M. UNTIL 9:44 A.M.) |
| 09:44AM | 20 | (JURY IN AT 9:44 A.M.) |
| 09:44AM | 21 | THE COURT:  ALL RIGHT.  THANK YOU.  GOOD MORNING. |
| 09:44AM | 22 | WE ARE BACK ON THE RECORD IN THE HOLMES MATTER.  ALL |
| 09:44AM | 23 | COUNSEL ARE PRESENT.  MS. HOLMES IS PRESENT.  OUR JURY IS |
| 09:44AM | 24 | PRESENT. |
| 09:44AM | 25 | GOOD MORNING, LADIES AND GENTLEMEN.  IT'S NICE TO SEE YOU |

09:44AM  1      ALL AGAIN AFTER OUR BREAK.

09:44AM  2          WE WILL START OUR TESTIMONY IN JUST A MOMENT.  BUT BEFORE

09:44AM  3   WE DO, LET ME ASK YOU THAT QUESTION AGAIN.  DURING OUR BREAK,

09:44AM  4   HAVE ANY OF YOU HAD OCCASION TO DISCUSS, LEARN ABOUT, SEE,

09:44AM  5   WATCH, READ, OR HAVE ANYTHING TO DO WITH THIS CASE OUTSIDE OF

09:44AM  6   WHAT YOU'VE HEARD HERE?  ANYONE HAVE THAT EXPERIENCE?  IF SO,

09:44AM  7   PLEASE RAISE YOUR HAND.

09:44AM  8          I SEE NO HANDS.

09:44AM  9          THANK YOU VERY MUCH.

09:44AM 10          MS. HOLMES, IF YOU WOULD RETURN TO THE STAND, PLEASE.

09:44AM 11          MAKE YOURSELF COMFORTABLE AGAIN, MS. HOLMES.

09:44AM 12          WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE STATE YOUR

09:44AM 13   NAME.

09:44AM 14              THE WITNESS:  MY NAME IS ELIZABETH HOLMES.

09:44AM 15              THE COURT:  THANK YOU.  AND YOU MAY REMOVE YOUR MASK

09:44AM 16   IF YOU WISH.

09:44AM 17              THE WITNESS:  THANK YOU.

09:44AM 18              THE COURT:  AND I'LL REMIND YOU, YOU'RE STILL UNDER

09:44AM 19   OATH.

09:44AM 20              JUROR:  THANK YOU.

09:44AM 21              THE COURT:  MR. LEACH.

09:44AM 22              MR. LEACH:  THANK YOU, YOUR HONOR.

09:44AM 23          **(DEFENDANT'S WITNESS, ELIZABETH HOLMES, WAS PREVIOUSLY**

09:44AM 24   **SWORN.)**

09:45AM 25   ///

HOLMES CROSS BY MR. LEACH (RES.)                                8353

| | | |
|---|---|---|
| 09:45AM | 1 | **CROSS-EXAMINATION (RESUMED)** |
| 09:45AM | 2 | BY MR. LEACH: |
| 09:45AM | 3 | Q.   GOOD MORNING.  MS. HOLMES. |
| 09:45AM | 4 | A.   GOOD MORNING. |
| 09:45AM | 5 | Q.   THERANOS ANALYZERS WERE NEVER PLACED ON MEDEVACS; IS THAT |
| 09:45AM | 6 | CORRECT? |
| 09:45AM | 7 | A.   CORRECT. |
| 09:45AM | 8 | Q.   AND THERANOS DID NOT ACTUALLY DEPLOY ITS ANALYZER ON A |
| 09:45AM | 9 | MILITARY HELICOPTER; IS THAT CORRECT? |
| 09:45AM | 10 | A.   NOT FOR CLINICAL USE, NO. |
| 09:45AM | 11 | Q.   DO YOU RECALL TELLING THE S.E.C. YOU DID NOT DEPLOY A |
| 09:45AM | 12 | THERANOS DEVICE ON HELICOPTERS? |
| 09:45AM | 13 | A.   I RECALL GENERALLY TALKING TO THE S.E.C. ABOUT THAT TOPIC, |
| 09:45AM | 14 | YES. |
| 09:45AM | 15 | Q.   DO YOU RECALL TELLING THEM THAT YOU DID NOT DEPLOY A |
| 09:45AM | 16 | THERANOS DEVICE ON HELICOPTERS? |
| 09:45AM | 17 | A.   I DON'T REMEMBER THAT, BUT I KNOW THAT I TALKED TO THEM |
| 09:45AM | 18 | ABOUT IT. |
| 09:46AM | 19 | Q.   WELL, LET ME DRAW YOUR ATTENTION TO THE RED BINDER. |
| 09:46AM | 20 | YOU RECALL GIVING TESTIMONY TO THE S.E.C.; CORRECT? |
| 09:46AM | 21 | A.   I DO. |
| 09:46AM | 22 | Q.   AND YOU WERE ASKED QUESTIONS OVER THE COURSE OF THREE |
| 09:46AM | 23 | DAYS; RIGHT? |
| 09:46AM | 24 | A.   I WAS. |
| 09:46AM | 25 | Q.   AND YOU TOOK AN OATH BEFORE THE S.E.C.? |

HOLMES CROSS BY MR. LEACH (RES.)                                    8354

09:46AM  1    A.  I DID.

09:46AM  2    Q.  THE SAME OATH THAT YOU'RE TAKING TODAY; CORRECT?

09:46AM  3    A.  YES.

09:46AM  4    Q.  OKAY.  AND IF I COULD DRAW YOUR ATTENTION TO THE RED

09:46AM  5    BINDER, PLEASE, TO THE BATES NUMBER 5566, AND PAGE 84 -- OR

09:46AM  6    844.

09:46AM  7    A.  I'M SORRY.  5586?

09:46AM  8    Q.  5566 DOWN IN THE RIGHT-HAND CORNER.

09:47AM  9    A.  OKAY.

09:47AM  10   Q.  AND IT'S PAGE 844.

09:47AM  11   A.  OKAY.

09:47AM  12          MR. LEACH:  AND, YOUR HONOR, I ASK PERMISSION TO

09:47AM  13   READ LINES 3 THROUGH 11 ON PAGE 844.

09:47AM  14          THE COURT:  YES.

09:47AM  15   BY MR. LEACH:

09:47AM  16   Q.  MS. HOLMES, ISN'T IT CORRECT THAT YOU WERE ASKED THE

09:47AM  17   FOLLOWING QUESTIONS AND GAVE THE FOLLOWING ANSWERS:

09:47AM  18       "QUESTION:  DID YOU TELL WADE MIQUELON AT WALGREENS THAT

09:47AM  19   THERANOS HAD DEPLOYED ITS TSPU ON MILITARY HELICOPTERS?

09:47AM  20       "ANSWER:  NO.

09:47AM  21       "QUESTION:  DID YOU HEAR MR. BALWANI TELL MR. MIQUELON

09:47AM  22   THAT?

09:47AM  23       "ANSWER:  I DID NOT.

09:47AM  24       "QUESTION:  WOULD IT -- WOULD THAT HAVE BEEN TRUE ANY TIME

09:47AM  25   FROM 2010 TO 2014?

HOLMES CROSS BY MR. LEACH (RES.)                                  8355

09:47AM  1         "ANSWER:  WE DID NOT DEPLOY ON HELICOPTERS.

09:47AM  2         "QUESTION:  YOU DID NOT DEPLOY ON HELICOPTERS EVER?

09:47AM  3         "ANSWER:  CORRECT."

09:47AM  4         DID I READ THAT CORRECTLY, MS. HOLMES?

09:48AM  5    A.   YOU DID.

09:48AM  6    Q.   OKAY.  AND THERANOS ANALYZERS WERE NEVER DEPLOYED ON THE

09:48AM  7    BATTLEFIELD; CORRECT?

09:48AM  8    A.   CORRECT.

09:48AM  9    Q.   THERANOS DID NOT ACTUALLY SEND ONE OF ITS ANALYZERS TO

09:48AM  10   AFGHANISTAN; IS THAT CORRECT?

09:48AM  11   A.   THAT'S RIGHT.

09:48AM  12   Q.   OKAY.  AND THERANOS DID NOT ACTUALLY SEND ONE OF ITS

09:48AM  13   ANALYZERS TO THE MIDDLE EAST; IS THAT CORRECT?

09:48AM  14   A.   CORRECT.

09:48AM  15   Q.   AND THERANOS DID NOT ACTUALLY SEND ONE OF ITS ANALYZERS TO

09:48AM  16   IRAQ; IS THAT CORRECT?

09:48AM  17   A.   WE DID NOT.

09:48AM  18   Q.   OKAY.  THERANOS ANALYZERS WERE NEVER USED FOR CLINICAL

09:48AM  19   CARE FOR SOLDIERS ABROAD; CORRECT?

09:48AM  20   A.   CORRECT.

09:48AM  21   Q.   NOW, IN THE TIME PERIOD 2013 TO 2015, YOU WERE AWARE THAT

09:48AM  22   THERANOS ANALYZERS HAD NEVER BEEN PLACED ON MEDEVACS; CORRECT?

09:48AM  23   A.   I WAS.

09:48AM  24   Q.   AND NO ONE EVER TOLD YOU THAT THERANOS ANALYZERS HAD BEEN

09:48AM  25   PLACED ON MEDEVACS?

HOLMES CROSS BY MR. LEACH (RES.)                                8356

09:48AM    1     A.   AGAIN, I THINK THERE WAS WORK DONE FOR TRANSPORT OF THE

09:49AM    2     DEVICES ON MEDEVACS, BUT THEY WERE NOT USED FOR CLINICAL CARE

09:49AM    3     ON MEDEVACS.

09:49AM    4     Q.   NO ONE EVER TOLD YOU THAT THERANOS ANALYZERS HAD ACTUALLY

09:49AM    5     BEEN PLACED ON MEDEVACS; IS THAT CORRECT?

09:49AM    6     A.   FOR CLINICAL CARE, CORRECT.

09:49AM    7     Q.   AND SUNNY BALWANI NEVER TOLD YOU THAT THERANOS ANALYZERS

09:49AM    8     HAD BEEN PLACED ON MEDEVACS; IS THAT CORRECT?

09:49AM    9     A.   AGAIN, NO FOR CLINICAL CARE.

09:49AM   10     Q.   IN THE TIME 2013 TO 2015, YOU WERE AWARE THAT THERANOS DID

09:49AM   11     NOT ACTUALLY DEPLOY ITS ANALYZER ON A HELICOPTER; CORRECT?

09:49AM   12     A.   CORRECT, FOR CLINICAL CARE.

09:49AM   13     Q.   WELL, YOU DIDN'T QUALIFY YOUR ANSWERS WITH "FOR CLINICAL

09:49AM   14     CARE" TO THE S.E.C.; ISN'T THAT RIGHT, MS. HOLMES?

09:49AM   15     A.   I THINK RIGHT AFTER THIS SECTION YOU READ, IT SAYS, "IS

09:49AM   16     THAT RIGHT"?

09:49AM   17     Q.   I'M NOT ASKING YOU TO READ FROM THE S.E.C. TESTIMONY.

09:49AM   18     A.   OH, I'M SORRY.

09:50AM   19     Q.   I AM ASKING YOU ABOUT THE QUESTIONS YOU WERE ASKED, AND

09:50AM   20     YOU SAID, "WE DID NOT DEPLOY ON HELICOPTERS."  RIGHT?

09:50AM   21     A.   I SAID CORRECT.  AND THEN, AM I ALLOWED TO READ WHAT I

09:50AM   22     SAID, OR NO?

09:50AM   23     Q.   IF YOU COULD PLEASE FOCUS ON MY QUESTION.

09:50AM   24     A.   OKAY.

09:50AM   25     Q.   AND MY QUESTION IS REALLY, NO ONE EVER TOLD YOU THAT THE

HOLMES CROSS BY MR. LEACH (RES.)                                    8357

09:50AM   1    DEVICE HAD ACTUALLY BEEN DEPLOYED ON A MEDEVAC HELICOPTER; IS

09:50AM   2    THAT RIGHT?

09:50AM   3    A.   FOR CLINICAL CARE.

09:50AM   4    Q.   AND NO ONE EVER TOLD YOU -- AND SUNNY BALWANI HAD NEVER

09:50AM   5    TOLD YOU THAT THE THERANOS ANALYZER HAD BEEN DEPLOYED ON A

09:50AM   6    HELICOPTER FOR CLINICAL CARE?

09:50AM   7    A.   CORRECT.

09:50AM   8    Q.   AND IN THE TIME PERIOD OF 2013 TO 2015, YOU WERE AWARE

09:50AM   9    THAT THE THERANOS DEVICE HAD NEVER BEEN USED ON THE

09:50AM   10   BATTLEFIELD?

09:50AM   11   A.   I WAS.

09:50AM   12   Q.   AND NO ONE EVER TOLD YOU THAT THE THERANOS DEVICE HAD

09:50AM   13   ACTUALLY BEEN USED ON THE BATTLEFIELD?

09:50AM   14   A.   CORRECT.

09:50AM   15   Q.   AND SUNNY BALWANI NEVER TOLD YOU THAT THE THERANOS DEVICE

09:50AM   16   HAD ACTUALLY BEEN USED ON THE BATTLEFIELD; CORRECT?

09:51AM   17   A.   CORRECT.

09:51AM   18   Q.   AND IN THE TIME PERIOD OF 2013 TO 2015, YOU WERE AWARE

09:51AM   19   THAT THERANOS HAD NOT ACTUALLY SENT ONE OF ITS ANALYZERS TO

09:51AM   20   AFGHANISTAN; CORRECT?

09:51AM   21   A.   I WAS.

09:51AM   22   Q.   OKAY.  NO ONE EVER TOLD YOU THAT THE ANALYZER HAD ACTUALLY

09:51AM   23   BEEN SENT TO AFGHANISTAN?

09:51AM   24   A.   CORRECT.

09:51AM   25   Q.   AND SUNNY BALWANI NEVER TOLD YOU THAT THE DEVICE HAD

HOLMES CROSS BY MR. LEACH (RES.)                                    8358

09:51AM   1    ACTUALLY BEEN SENT TO AFGHANISTAN?

09:51AM   2    A.    CORRECT.

09:51AM   3    Q.    AND IN THE TIME PERIOD 2013 TO 2015, YOU WERE AWARE THAT

09:51AM   4    THERANOS DID NOT ACTUALLY SEND ONE OF ITS DEVICES TO THE MIDDLE

09:51AM   5    EAST; CORRECT?

09:51AM   6    A.    CORRECT.

09:51AM   7    Q.    NO ONE EVER TOLD YOU THAT THE DEVICE HAD BEEN SENT TO THE

09:51AM   8    MIDDLE EAST; CORRECT?

09:51AM   9    A.    THAT'S RIGHT.

09:51AM   10   Q.    AND SUNNY BALWANI NEVER TOLD YOU THAT THE DEVICE HAD BEEN

09:51AM   11   SENT TO THE MIDDLE EAST; CORRECT?

09:51AM   12   A.    THAT'S RIGHT.

09:51AM   13   Q.    AND YOU WERE ALSO AWARE THAT THE DEVICE HAD NEVER BEEN

09:51AM   14   SENT TO IRAQ; CORRECT?

09:51AM   15   A.    YES.

09:51AM   16   Q.    NO ONE EVER TOLD YOU THAT THE DEVICE HAD ACTUALLY BEEN

09:52AM   17   SENT TO IRAQ?

09:52AM   18   A.    THAT'S RIGHT.

09:52AM   19   Q.    AND SUNNY BALWANI HAD NEVER ACTUALLY TOLD YOU THAT THE

09:52AM   20   DEVICE HAD BEEN SENT TO IRAQ?

09:52AM   21   A.    CORRECT.

09:52AM   22   Q.    AND IN THE TIME PERIOD 2013 TO 2015, YOU WERE AWARE THAT

09:52AM   23   THE THERANOS ANALYZERS WERE NEVER USED FOR CLINICAL CARE OF

09:52AM   24   SOLDIERS ABROAD; CORRECT?

09:52AM   25   A.    I WAS.

HOLMES CROSS BY MR. LEACH (RES.)                          8359

09:52AM  1    Q.   NO ONE EVER TOLD YOU THAT THE DEVICE WAS BEING USED FOR

09:52AM  2    CLINICAL CARE FOR SOLDIERS ABROAD; CORRECT?

09:52AM  3    A.   CORRECT.

09:52AM  4    Q.   AND SUNNY BALWANI NEVER TOLD YOU THAT THAT HAD HAPPENED,

09:52AM  5    THAT IT HAD BEEN USED FOR CLINICAL CARE FOR SOLDIERS ABROAD?

09:52AM  6    A.   THAT'S RIGHT.

09:52AM  7    Q.   OKAY.  YOU HOPED ONE DAY THAT THE MINILAB MIGHT BE USED ON

09:52AM  8    A MEDEVAC HELICOPTER TO SAVE LIVES ABROAD; CORRECT?

09:52AM  9    A.   I DID.

09:52AM  10   Q.   YOU WERE SPENDING MONEY TO TRY TO MAKE THAT HAPPEN;

09:52AM  11   CORRECT?

09:52AM  12   A.   YES.

09:52AM  13   Q.   AND THERE WAS SOME LEVEL OF INTEREST FROM THE DEPARTMENT

09:52AM  14   OF DEFENSE?

09:52AM  15   A.   YES.

09:52AM  16   Q.   THERANOS HAD AN AGREEMENT TO DO SIDE-BY-SIDE TESTING WITH

09:53AM  17   CENTCOM WITH -- HAD AN AGREEMENT WITH CENTCOM TO DO

09:53AM  18   SIDE-BY-SIDE TESTING; CORRECT?

09:53AM  19   A.   WE DID.

09:53AM  20   Q.   AND IF THAT ACTUALLY HAPPENED AND WENT WELL, YOUR HOPE WAS

09:53AM  21   SOME DAY IT MIGHT BE USED IN AFGHANISTAN TO SAVE LIVES; IS THAT

09:53AM  22   CORRECT?

09:53AM  23   A.   YES.

09:53AM  24   Q.   BUT THAT SIDE-BY-SIDE TESTING NEVER HAPPENED; CORRECT?

09:53AM  25   A.   THAT'S RIGHT.

HOLMES CROSS BY MR. LEACH (RES.)                                      8360

09:53AM   1    Q.   AND WITH RESPECT TO AFRICOM, AM I RIGHT THAT AFRICOM TOOK

09:53AM   2    ONE OR TWO DEVICES TO AFRICA TO LOOK AT THERMAL STABILITY AND

09:53AM   3    THE USE FOR THE OPERATOR, BUT AGAIN, THEY WEREN'T USED FOR

09:53AM   4    PATIENT TESTING AND DIAGNOSIS?

09:53AM   5    A.   THAT'S RIGHT.

09:53AM   6    Q.   AND YOU HAVE NO KNOWLEDGE OF THERANOS RECEIVING ANY

09:53AM   7    REVENUE FROM AFRICOM?

09:53AM   8    A.   I DON'T THINK SO.

09:53AM   9    Q.   AND WITH RESPECT TO SOCOM, YOU SENT TWO DEVICES TO SOCOM

09:53AM   10   IN THE UNITED STATES; CORRECT?

09:54AM   11   A.   WE DID.

09:54AM   12   Q.   BUT YOU DON'T THINK THAT THEY ACTUALLY USED THEM IN

09:54AM   13   DEPLOYMENT; CORRECT?

09:54AM   14   A.   I DON'T KNOW WHAT THEY DID WITH THEM.

09:54AM   15   Q.   OKAY.  BUT YOUR BELIEF -- YOU DON'T THINK THAT THEY

09:54AM   16   ACTUALLY USED THEM IN DEPLOYMENT; CORRECT?

09:54AM   17   A.   AGAIN, I DON'T KNOW WHAT THEY DID WITH THEM.  IF I HAD TO

09:54AM   18   GUESS, I WOULD GUESS THAT THEY DIDN'T.

09:54AM   19   Q.   I DON'T WANT YOU TO GUESS.

09:54AM   20        BUT YOU WERE ASKED THIS QUESTION BEFORE, WEREN'T YOU,

09:54AM   21   MS. HOLMES?

09:54AM   22   A.   I PROBABLY WAS.

09:54AM   23   Q.   OKAY.  WELL, LET'S LOOK BACK AT YOUR TESTIMONY BEFORE THE

09:54AM   24   S.E.C.

09:54AM   25   A.   OKAY.

HOLMES CROSS BY MR. LEACH (RES.)                                    8361

09:54AM   1    Q.   AND I DRAW YOUR ATTENTION TO PAGE 5519.

09:54AM   2    A.   OKAY.

09:54AM   3    Q.   DO YOU HAVE THAT IN FRONT OF YOU?

09:54AM   4    A.   I DO.

09:54AM   5              MR. LEACH:  YOUR HONOR, I SEEK PERMISSION TO READ

09:54AM   6    FROM PAGE 656, LINE 24 TO LINE -- PAGE 657, LINE 3.

09:55AM   7              THE COURT:  YES.

09:55AM   8    BY MR. LEACH:

09:55AM   9    Q.   MS. HOLMES, YOU WERE ASKED THE FOLLOWING QUESTION AND GAVE

09:55AM  10    THE FOLLOWING ANSWER:

09:55AM  11        "QUESTION:  WERE ANY OF THERANOS MANUFACTURED DEVICES EVER

09:55AM  12    DEPLOYED BY SOCOM?

09:55AM  13        "ANSWER:  MY MEMORY IS THAT WE SENT THEM TWO OF THEM, BUT

09:55AM  14    I DON'T THINK THEY ACTUALLY USED THEM IN ANY DEPLOYMENT."

09:55AM  15        DID I READ THAT CORRECTLY?

09:55AM  16    A.   YOU DID.

09:55AM  17    Q.   OKAY.  AND YOU'RE NOT AWARE OF ANY REVENUE FROM SOCOM;

09:55AM  18    CORRECT?

09:55AM  19    A.   I'M NOT.

09:55AM  20    Q.   YOU'RE NOT AWARE OF THERANOS EARNING ANY MONEY FROM ITS

09:55AM  21    RELATIONSHIP WITH SOCOM?

09:55AM  22    A.   I DON'T THINK SO.

09:55AM  23    Q.   YOU ARE AWARE THAT THERANOS HAD A CONTRACT RELATING TO A

09:55AM  24    BURN STUDY RUN BY DR. CHUNG; CORRECT?

09:56AM  25    A.   WE DID.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

April 17, 2023