No. 22-10312

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-00258
Hon. Edward J. Davila

## EXCERPTS OF RECORD
### VOL. XLIII of LVII | ER-12232 to ER-12531

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA  98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Ave. S.W.
  Washington, D.C. 200024
  (202) 434-5000
  asaharia@wc.com

| | | |
|---|---|---|
| 11:45AM | 1 | PLEASE AVOID THAT.  IT'S -- AS YOU MIGHT IMAGINE, THE |
| 11:46AM | 2 | CASE -- THE EVIDENCE IS NOW IN, SO IT'S CRITICALLY IMPORTANT |
| 11:46AM | 3 | THAT YOU CONTINUE TO MAINTAIN VIGILANCE TO AVOID INFORMATION |
| 11:46AM | 4 | ABOUT ANYTHING TO DO WITH THIS CASE. |
| 11:46AM | 5 | HAVE A GOOD DAY.  WE'LL SEE YOU BACK ON THE 16TH. |
| 11:46AM | 6 | THANK YOU. |
| 11:46AM | 7 | (JURY OUT AT 11:46 A.M.). |
| 11:46AM | 8 | THE COURT:  ALL RIGHT.  PLEASE BE SEATED. |
| 11:46AM | 9 | THE RECORD SHOULD REFLECT THAT OUR JURY HAS LEFT FOR THE |
| 11:46AM | 10 | RECESS. |
| 11:46AM | 11 | COUNSEL, ANYTHING FURTHER BEFORE WE BREAK? |
| 11:46AM | 12 | MR. SCHENK:  NOT FROM THE GOVERNMENT.  THANK YOU. |
| 11:46AM | 13 | MR. DOWNEY:  YOUR HONOR, I WONDER IF BEFORE WE MEET |
| 11:46AM | 14 | ON FRIDAY, MAYBE MR. SCHENK AND I CAN TALK ABOUT THE CLOSING |
| 11:47AM | 15 | ARGUMENTS.  I'M OBVIOUSLY NOT KEEN TO HAVE A LENGTHY CLOSING |
| 11:47AM | 16 | ARGUMENT ON THE BACK END OF THE DAY AND TO HAVE THE GOVERNMENT |
| 11:47AM | 17 | HAVE TWO CLOSINGS ON CONSECUTIVE MORNINGS.  SO MAYBE WE'LL SEE |
| 11:47AM | 18 | HOW LONG EACH OF US WANTS TO BE AND WE'LL PROPOSE SOME SCHEDULE |
| 11:47AM | 19 | IN CONNECTION WITH THAT. |
| 11:47AM | 20 | THE COURT:  OKAY.  THANK YOU. |
| 11:47AM | 21 | RESTRAIN YOUR ENTHUSIASM, MR. SCHENK. |
| 11:47AM | 22 | (LAUGHTER.) |
| 11:47AM | 23 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 11:47AM | 24 | AND I APPRECIATE YOUR CONTINUED COOPERATION AND EFFORTS IN |
| 11:47AM | 25 | DISCUSSING MATTERS TO ASSIST BOTH YOUR TEAMS AND THE EFFICIENCY |

8660

11:47AM   1     OF THE CASE GOING FORWARD.  I APPRECIATE THAT.

11:47AM   2          ALL RIGHT.  WE'LL AWAIT YOUR SUBMISSIONS TOMORROW, AND

11:47AM   3     THEN WE'LL SEE EACH OTHER ON THE 10TH AT 9:00 A.M.

11:47AM   4               MR. DOWNEY:  THANK YOU, YOUR HONOR.

11:47AM   5               THE COURT:  ALL RIGHT.  THANK YOU.

11:47AM   6               THE CLERK:  COURT IS ADJOURNED.

11:47AM   7          (COURT ADJOURNED AT 11:47 A.M.)

          8

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

**ER-12234**

1

2

3                    CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16                    IRENE RODRIGUEZ, CSR, CRR
                      CERTIFICATE NUMBER 8076
17

18

19                    LEE-ANNE SHORTRIDGE, CSR, CRR
                      CERTIFICATE NUMBER 9595
20

21                    DATED:  DECEMBER 8, 2021

22

23

24

25

```
 1

 2                    UNITED STATES DISTRICT COURT

 3                   NORTHERN DISTRICT OF CALIFORNIA

 4                          SAN JOSE DIVISION

 5
     UNITED STATES OF AMERICA,        )  CR-18-00258-EJD
 6                                    )
                     PLAINTIFF,       )  SAN JOSE, CALIFORNIA
 7                                    )
              VS.                     )  VOLUME 44
 8                                    )
     ELIZABETH A. HOLMES,             )  DECEMBER 10, 2021
 9                                    )
                     DEFENDANT.       )  PAGES 8661 - 8826
10   _____ )

11                   TRANSCRIPT OF TRIAL PROCEEDINGS
12              BEFORE THE HONORABLE EDWARD J. DAVILA
                   UNITED STATES DISTRICT JUDGE
13   A P P E A R A N C E S:

14
     FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
15                         BY:  JOHN C. BOSTIC
                                JEFFREY B. SCHENK
16                         150 ALMADEN BOULEVARD, SUITE 900
                           SAN JOSE, CALIFORNIA 95113
17
                           BY:  ROBERT S. LEACH
18                              KELLY VOLKAR
                           1301 CLAY STREET, SUITE 340S
19                         OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

     OFFICIAL COURT REPORTERS:
22                              IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                CERTIFICATE NUMBER 8074
23                              LEE-ANNE SHORTRIDGE, CSR, CRR
                                CERTIFICATE NUMBER 9595
24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25              TRANSCRIPT PRODUCED WITH COMPUTER
```

1     A P P E A R A N C E S: (CONT'D)

2

3    FOR DEFENDANT HOLMES:  WILLIAMS & CONNOLLY LLP
                        BY:  KEVIN M. DOWNEY
4                          LANCE A. WADE
                          KATHERINE TREFZ
5                          AMY SAHARIA
                          ANDREW LEMENS
6                          SEEMA ROPER
                          J.R. FLEURMONT
7                          RICHARD CLEARY
                          PATRICK LOOBY
8                  725 TWELFTH STREET, N.W.
                  WASHINGTON, D.C. 20005

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                    DECEMBER 10, 2021 |
| 09:09AM 2 | P R O C E E D I N G S |
| 09:09AM 3 | (COURT CONVENED AT 9:09 A.M.) |
| 09:10AM 4 | (JURY OUT AT 9:10 A.M.) |
| 09:10AM 5 | THE COURT:  WE ARE ON THE RECORD.  ALL COUNSEL ARE |
| 09:10AM 6 | PRESENT.  MS. HOLMES IS PRESENT.  WE'RE OUTSIDE OF THE PRESENCE |
| 09:10AM 7 | OF THE JURY. |
| 09:10AM 8 | WE'RE HERE TO JUST REVIEW, IF WE CAN, INSTRUCTIONS. |
| 09:10AM 9 | WE DID RECEIVE 1188, WHICH WAS THE JOINT PROPOSED |
| 09:10AM 10 | INSTRUCTIONS.  THANK YOU FOR THAT.  THAT WAS HELPFUL.  I'VE |
| 09:10AM 11 | LOOKED OVER THAT, AND I'M HAPPY TO DISCUSS SOME OF THESE WITH |
| 09:10AM 12 | YOU. |
| 09:10AM 13 | WE'LL SEE HOW FAR WE GET THIS MORNING.  IT MAY BE THAT WE |
| 09:10AM 14 | CAN -- I HOPE WE CAN ACCOMPLISH GETTING THROUGH THE MAJORITY OF |
| 09:10AM 15 | THESE TODAY SUCH THAT, AS OUR PLAN WAS, AS YOU RECALL, WE HAVE |
| 09:10AM 16 | MONDAY TO FINISH UP, AND THEN WE'RE DARK TWO DAYS, AND THEN |
| 09:11AM 17 | THURSDAY NEXT, AND FRIDAY, WE'VE ALLOCATED FOR CLOSING. |
| 09:11AM 18 | MY HOPE IS THAT WE CAN GET -- IT WOULD BE GREAT IF WE CAN |
| 09:11AM 19 | GET RESOLUTION OF THE INSTRUCTIONS TODAY SUCH THAT YOU CAN HAVE |
| 09:11AM 20 | THEM FOR YOUR PLANNING PURPOSES, AND WE CAN WORK ON THEM AND |
| 09:11AM 21 | MAYBE GET A FINALIZED COPY, AN AGREED COPY FOR MONDAY, BY |
| 09:11AM 22 | MONDAY, SO THE PARTIES CAN USE THIS.  THAT'S WHAT I HOPE TO |
| 09:11AM 23 | ACCOMPLISH.  I HOPE WE CAN GET THAT DONE TODAY. |
| 09:11AM 24 | WE'LL PROBABLY TAKE A BREAK.  ASSUMING WE CAN'T GET THIS |
| 09:11AM 25 | DONE IN 40 MINUTES, WHAT TIME SHOULD WE BREAK TODAY? |

| | | |
|---|---|---|
| 09:11AM | 1 | MR. DOWNEY:  I THINK, YOUR HONOR, SOMETIME IN THAT |
| 09:11AM | 2 | 11:00 TO 11:30 TIME WOULD BE GOOD. |
| 09:11AM | 3 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:11AM | 4 | ANYTHING BEFORE WE START?  I JUST INTEND TO GO THROUGH |
| 09:11AM | 5 | THESE FROM THE BEGINNING. |
| 09:11AM | 6 | BUT ANYTHING FROM EITHER SIDE BEFORE WE START? |
| 09:12AM | 7 | MS. SAHARIA? |
| 09:12AM | 8 | MS. SAHARIA:  YES, YOUR HONOR. |
| 09:12AM | 9 | GOOD MORNING, YOUR HONOR. |
| 09:12AM | 10 | THE COURT:  GOOD MORNING. |
| 09:12AM | 11 | MS. SAHARIA:  I JUST NOTED -- I JUST WANTED TO NOTE |
| 09:12AM | 12 | THAT THE PARTIES NEGLECTED TO MEET AND CONFER ABOUT THE VERDICT |
| 09:12AM | 13 | FORM.  I REALIZED LAST NIGHT THAT WE HAD FAILED TO PROPOSE TO |
| 09:12AM | 14 | THE COURT A VERDICT FORM. |
| 09:12AM | 15 | WE HAVE, OF COURSE, BOTH PROPOSED OUR OWN VERSIONS OF |
| 09:12AM | 16 | VERDICT FORMS.  SO TIME PERMITTING, PERHAPS WE CAN TAKE THOSE |
| 09:12AM | 17 | UP AT THE END OF THE INSTRUCTIONS. |
| 09:12AM | 18 | THE COURT:  SURE.  OKAY. |
| 09:12AM | 19 | MS. SAHARIA:  I APOLOGIZE FOR THAT. |
| 09:12AM | 20 | THE COURT:  NO, NO, NO.  THAT'S QUITE ALL RIGHT. |
| 09:12AM | 21 | MS. SAHARIA:  AND IS IT THE COURT'S INTENTION THAT |
| 09:12AM | 22 | WE JUST PROCEED THROUGH 1188 AND TAKE UP THE INSTRUCTIONS IN |
| 09:12AM | 23 | ORDER? |
| 09:12AM | 24 | THE COURT:  I THINK SO. |
| 09:12AM | 25 | MS. SAHARIA:  I THINK THAT MAKES SENSE TO ME AS |

8665

| | | |
|---|---|---|
| 09:12AM | 1 | WELL. |
| 09:12AM | 2 | THE COURT:  IT DOES TO ME. |
| 09:12AM | 3 | MS. VOLKAR, ARE YOU SPEAKING? |
| 09:12AM | 4 | MS. SAHARIA:  I'M GOING TO DEFER TO MR. CLEARY, WHO |
| 09:12AM | 5 | IS GOING TO ADDRESS THE FIRST SEVERAL INSTRUCTIONS. |
| 09:12AM | 6 | THE COURT:  OKAY.  THANK YOU. |
| 09:12AM | 7 | MS. VOLKAR:  YES, YOUR HONOR. |
| 09:12AM | 8 | KELLY VOLKAR ON BEHALF OF THE UNITED STATES.  AND I'LL BE |
| 09:13AM | 9 | SHARING THE PODIUM TODAY WITH MR. LEACH. |
| 09:13AM | 10 | THE COURT:  GREAT.  THANK YOU. |
| 09:13AM | 11 | MR. CLEARY:  YOUR HONOR, RICHARD CLEARY ON BEHALF OF |
| 09:13AM | 12 | MS. HOLMES. |
| 09:13AM | 13 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:13AM | 14 | MR. CLEARY:  GOOD MORNING, YOUR HONOR. |
| 09:13AM | 15 | THE COURT:  SO LET'S JUST MARSHAL THROUGH. |
| 09:13AM | 16 | WE'LL START WITH 1 -- JURY INSTRUCTION 1.  WHAT I INTEND |
| 09:13AM | 17 | TO DO IS GIVE WHAT I GAVE IN THE PRELIMINARIES FOR THIS, WHICH |
| 09:13AM | 18 | I THINK YOU DO KNOW DOES INCLUDE THE LANGUAGE THAT IS |
| 09:13AM | 19 | HIGHLIGHTED.  SO I INTEND TO STICK WITH THAT. |
| 09:13AM | 20 | MR. CLEARY:  THANK YOU, YOUR HONOR. |
| 09:13AM | 21 | THE COURT:  AND LET'S MOVE TO NUMBER 2.  THE -- WHAT |
| 09:13AM | 22 | I -- AT THE START OF LINE 4 -- AND THIS IS ALL REFERENCING |
| 09:13AM | 23 | DOCKET 1188 -- WHAT I INTEND TO DO HERE IS THE FIRST LINE, |
| 09:13AM | 24 | EXCUSE ME, LINE 4, THE INDICTMENT IS NOT EVIDENCE, AND THEN |
| 09:13AM | 25 | I'LL READ, "MS. HOLMES, THE DEFENDANT, HAS PLEADED NOT GUILTY |

09:14AM  1    TO THE CHARGES," AND THEN I'LL READ "MS. HOLMES" THROUGHOUT THE

09:14AM  2    BALANCE OF THE INSTRUCTION.

09:14AM  3         AND THEN GOING DOWN TO LINE 8, I'M NOT GOING TO GIVE LINE

09:14AM  4    9 THROUGH 19, AND THAT'S THE DEFENSE ADDITIONS TO THE MODEL

09:14AM  5    INSTRUCTION.

09:14AM  6              MR. CLEARY:  YOUR HONOR, IF I MAY?

09:14AM  7              THE COURT:  YES.

09:14AM  8              MR. CLEARY:  ONE POINT OF CLARIFICATION.

09:14AM  9         I UNDERSTAND THE COURT'S INTENTION ON LINE 4 OF PAGE 3 OF

09:14AM 10    ECF 1188 TO USE "MS. HOLMES, THE DEFENDANT," IN THE INITIAL

09:14AM 11    REFERENCE AND THEN "MS. HOLMES" THEREAFTER.

09:14AM 12         IS IT THE COURT'S INTENTION TO USE SIMPLY "MS. HOLMES" FOR

09:14AM 13    THE DURATION OF THE INSTRUCTIONS?

09:14AM 14              THE COURT:  I THINK I WILL UNLESS THERE'S SOMETHING

09:14AM 15    ELSE THAT -- I HAVEN'T SEEN IT -- UNLESS THERE'S SOMETHING ELSE

09:14AM 16    THAT WOULD CALL OUT FOR IT.

09:15AM 17         BUT THAT'S MY THOUGHT.

09:15AM 18         AS WE GO THROUGH THEM, WE'LL LOOK AND SEE WHETHER OR NOT

09:15AM 19    THAT SHOULD BE CHANGED.

09:15AM 20              MR. CLEARY:  THANK YOU, YOUR HONOR.

09:15AM 21              THE COURT:  YOU'RE WELCOME.

09:15AM 22              MR. CLEARY:  YOUR HONOR, IF I MAY, THE DEFENSE

09:15AM 23    ACKNOWLEDGES THAT THE COURT PREVIOUSLY CONSIDERED AND DECLINED

09:15AM 24    TO GIVE PARAGRAPHS 2 AND 3, LINES 19 THROUGH -- 9 THROUGH 19 OF

09:15AM 25    JURY INSTRUCTION NUMBER 2 AT THE PRELIMINARY INSTRUCTIONS

09:15AM 1    STAGE.  SO WE UNDERSTAND THAT.

09:15AM 2         AND WE JUST OBJECT TO THE ABSENCE OF THESE FOR -- I CAN

09:15AM 3    WALK THE COURT BRIEFLY THROUGH THE REASONS JUST TO PRESERVE OUR

09:15AM 4    RIGHTS.

09:15AM 5              THE COURT:  BUT DO YOU WANT TO INCORPORATE BY

09:15AM 6    REFERENCE YOUR PREVIOUS OBJECTIONS?

09:15AM 7              MR. CLEARY:  YES, YOUR HONOR.  WE CAN INCORPORATE BY

09:15AM 8    REFERENCE OUR PREVIOUS OBJECTIONS, AND THEN THE OBJECTIONS

09:15AM 9    IDENTIFIED IN ECF 1174 JUST FOR EFFICIENCY THIS MORNING.

09:15AM 10             THE COURT:  SURE.  THAT'S FINE.  SO NOTED.  THANK

09:16AM 11   YOU.

09:16AM 12        LET'S SEE, 3.  THERE'S NO OBJECTION TO 3.  THIS IS

09:16AM 13   INSTRUCTION NUMBER 3.  THIS IS MODEL INSTRUCTION 215.  I'LL

09:16AM 14   GIVE THAT.

09:16AM 15        THERE'S NO OBJECTION TO 3.4, WHICH IS JURY INSTRUCTION 4.

09:16AM 16   I'LL GIVE THAT.

09:16AM 17        INSTRUCTION 5, WHICH IS THE REASONABLE DOUBT INSTRUCTION,

09:16AM 18   I HAVE LOOKED AT THIS AND I INTEND TO GIVE THE MODEL

09:16AM 19   INSTRUCTION, WHICH WOULD BE TO DELETE THE BLUE SECTION.  AND

09:16AM 20   FOR THE RECORD, THAT'S LINES 7 THROUGH 10 I THINK IS

09:16AM 21   MS. HOLMES'S SUGGESTION, AND I WON'T GIVE THAT.

09:16AM 22        I'LL INCORPORATE BY REFERENCE YOUR PREVIOUS OBJECTIONS IF

09:16AM 23   YOU WOULD LIKE.

09:16AM 24             MR. CLEARY:  YES, YOUR HONOR.

09:16AM 25             AGAIN, THESE ARE IDENTIFIED AT ECF 1174 INCLUDING THE

| | | |
|---|---|---|
| 09:17AM | 1 | VELASQUEZ CASE AND THE GARCIA-FREGOSO CASE, BOTH OF WHICH ARE |
| 09:17AM | 2 | CITED IN THAT PLEADING. |
| 09:17AM | 3 | THE COURT: RIGHT, F-R-E-G-O-S-O. |
| 09:17AM | 4 | AND LOOKING AT THAT, GARCIA-FREGOSO, IT SEEMS TO |
| 09:17AM | 5 | HESITATE -- THE ADDITION OF "HESITATE TO ACT" IS UNNECESSARY. |
| 09:17AM | 6 | THAT'S PART OF THE EVALUATION THAT I MADE. |
| 09:17AM | 7 | SO I'LL GIVE THE MODEL. |
| 09:17AM | 8 | MS. VOLKAR, SING OUT ANYTHING IF YOU HAVE ANYTHING YOU |
| 09:17AM | 9 | WANT TO ADD FOR THE RECORD. |
| 09:17AM | 10 | MS. VOLKAR: I WILL, YOUR HONOR. |
| 09:17AM | 11 | I THINK WE MIGHT HAVE DISCUSSED THIS LAST TIME, BUT IN |
| 09:17AM | 12 | CASE WE DIDN'T AND FOR PURPOSES OF THE RECORD, THE GOVERNMENT'S |
| 09:17AM | 13 | POSITION IS TO GIVE THE MODEL AS THE COURT INTENDS TO, AND THE |
| 09:17AM | 14 | GOVERNMENT JUST SPECIFICALLY CALLS THE COURT'S ATTENTION TO |
| 09:17AM | 15 | THIS MODEL INSTRUCTION ON REASONABLE DOUBT 3.5 WAS REVISED |
| 09:17AM | 16 | SEPTEMBER OF 2021, JUST A COUPLE MONTHS AGO. |
| 09:17AM | 17 | AND WHAT WAS AMENDED WAS THE COMMENTARY, NOT THE ACTUAL |
| 09:18AM | 18 | INSTRUCTION -- |
| 09:18AM | 19 | THE COURT: RIGHT. |
| 09:18AM | 20 | MS. VOLKAR: -- TO MOVE TO THE FIRST LINE OF THE |
| 09:18AM | 21 | COMMENTARY THAT THE NINTH CIRCUIT HAS REPEATEDLY UPHELD THIS |
| 09:18AM | 22 | INSTRUCTION. |
| 09:18AM | 23 | SO THAT'S THE GOVERNMENT'S POSITION. |
| 09:18AM | 24 | THE COURT: ALL RIGHT. THANK YOU. |
| 09:18AM | 25 | LET'S MOVE TO NUMBER 6, WHICH IS 3.6, THE COURT WILL GIVE. |

| 09:18AM | 1 | 3.7, WHAT IS NOT EVIDENCE, THE COURT WILL GIVE. |
| 09:18AM | 2 | JURY INSTRUCTION NUMBER 8, WHICH IS 3.8, I THINK |
| 09:18AM | 3 | MS. HOLMES WOULD LIKE TO HAVE THE EXAMPLE, THE GARDEN HOSE |
| 09:18AM | 4 | EXAMPLE. |
| 09:18AM | 5 | MR. CLEARY:  YES, YOUR HONOR, WE WOULD. |
| 09:18AM | 6 | THE COURT:  RIGHT.  ALL RIGHT.  WE'LL TALK ABOUT |
| 09:18AM | 7 | GARDEN HOSES.  I'LL GIVE THAT WITH THAT ADDITION. |
| 09:18AM | 8 | MS. VOLKAR:  YOUR HONOR, IF THE GOVERNMENT MAY BE |
| 09:18AM | 9 | HEARD ON THAT ONE? |
| 09:18AM | 10 | THE COURT:  SURE, OF COURSE. |
| 09:18AM | 11 | MS. VOLKAR:  WE UNDERSTAND OF COURSE THIS IS IN THE |
| 09:18AM | 12 | COMMENTARY TO THE MODEL INSTRUCTIONS. |
| 09:18AM | 13 | THIS WOULD BE AN EXAMPLE OF THE COURT GAVE IT AT THE |
| 09:18AM | 14 | OUTSET, AND I THINK IT CAN BE HELPFUL TO THE JURY, ESPECIALLY |
| 09:18AM | 15 | FOR THOSE WHO HAVE NOT SERVED ON A JURY BEFORE, TO UNDERSTAND |
| 09:18AM | 16 | THE DIFFERENCE. |
| 09:18AM | 17 | NOW AT THE CLOSE OF EVIDENCE, WITH ALL OF THE EVIDENCE IN, |
| 09:18AM | 18 | THIS EXAMPLE, OF COURSE, HAS NOTHING TO DO WITH THIS CASE, AND |
| 09:19AM | 19 | THE JURY HAS BEEN LISTENING TO THE VARIOUS TYPES OF EVIDENCE |
| 09:19AM | 20 | THROUGHOUT THE CASE. |
| 09:19AM | 21 | AND OF COURSE I THINK WE SHOULD ALWAYS KEEP IN MIND THE |
| 09:19AM | 22 | LENGTH OVERALL OF THE INSTRUCTIONS, AND THIS DOES ADD ANOTHER |
| 09:19AM | 23 | PARAGRAPH TO LENGTHY INSTRUCTIONS. |
| 09:19AM | 24 | SO FOR THOSE REASONS, THE GOVERNMENT SUBMITS IT'S |
| 09:19AM | 25 | UNNECESSARY TO REPEAT THIS PORTION OF THE INSTRUCTION. |

09:19AM 1          BUT WE, OF COURSE, DEFER TO THE COURT.

09:19AM 2               THE COURT:  ALL RIGHT.  THANK YOU.

09:19AM 3          JUST FOR CONSISTENCY AS TO THIS CONCEPT, I THINK I'LL,

09:19AM 4     I'LL GIVE IT.  I THINK IT ASSISTS THE JURY, WILL ASSIST THE

09:19AM 5     JURY.  AND THIS IS JURY INSTRUCTION NUMBER 8.

09:19AM 6          I APPRECIATE THE RECOGNITION OF THE NEED FOR BREVITY.  I

09:19AM 7     ASSURE YOU, THERE WILL BE SOME MORE BREVITY WE'LL CAPTURE AS WE

09:19AM 8     GO FORWARD.

09:19AM 9          (LAUGHTER.)

09:19AM 10              THE COURT:  JURY INSTRUCTION NUMBER 9, CREDIBILITY

09:19AM 11    OF WITNESSES, I'LL GIVE THAT.

09:19AM 12         NUMBER 10 IS 3.10, AND I LOOKED AT THIS AND I THINK WHAT I

09:20AM 13    WILL READ HERE IS THE FIRST LINE THAT BEGINS ON LINE 3 AND ENDS

09:20AM 14    AT LINE 4 I'LL GIVE.  "YOU ARE HERE ONLY TO DETERMINE WHETHER

09:20AM 15    MS. HOLMES IS GUILTY OR NOT GUILTY OF THE CHARGES IN THE

09:20AM 16    INDICTMENT."

09:20AM 17         AND THEN I'LL READ AFTER THAT, "MS. HOLMES IS NOT ON TRIAL

09:20AM 18    FOR ANY CONDUCT THAT TOOK PLACE BEFORE THE TIME PERIODS OF THE

09:20AM 19    ALLEGED OFFENSES."

09:20AM 20              MR. CLEARY:  YOUR HONOR, IS THE COURT'S INTENTION TO

09:20AM 21    READ THE SECOND SENTENCE, "MS. HOLMES IS NOT ON TRIAL FOR ANY

09:21AM 22    CONDUCT OR OFFENSE NOT CHARGED IN THE INDICTMENT"?

09:21AM 23              THE COURT:  NO.  NO.  I WOULD CUT THAT OUT.

09:21AM 24              MR. CLEARY:  YOUR HONOR, IF I MAY, MS. HOLMES

09:21AM 25    CERTAINLY APPRECIATES THE COURT'S INTENTION TO GIVE THAT

8671

| | | |
|---|---|---|
| 09:21AM | 1 | FINAL -- WHAT WE UNDERSTAND IS THE LINE HIGHLIGHTED IN BLUE ON |
| 09:21AM | 2 | PAGE 12 IN CONNECTION WITH JURY INSTRUCTION NUMBER 10. |
| 09:21AM | 3 | WE WOULD ASK THAT THE COURT ALSO INCLUDE THAT SECOND LINE |
| 09:21AM | 4 | FOR THE FOLLOWING REASON: |
| 09:21AM | 5 | THE LINE CONCERNING MS. HOLMES NOT BEING ON TRIAL FOR |
| 09:21AM | 6 | CONDUCT THAT TOOK PLACE BEFORE THE TIME PERIODS OF THE ALLEGED |
| 09:21AM | 7 | OFFENSES IN THE INDICTMENT IS VERY HELPFUL IN GUARDING AGAINST |
| 09:21AM | 8 | IMPROPER CONVICTION BASED ON CONDUCT THAT PREDATES 2010 OR |
| 09:21AM | 9 | PREDATES 2013, DEPENDING ON THE PARTICULAR CONSPIRACY AT ISSUE. |
| 09:21AM | 10 | THE DEFENSE IS ALSO CONCERNED ABOUT EVIDENCE IN THE RECORD |
| 09:21AM | 11 | THAT GOES BEYOND THE FOUR CORNERS OF THE INDICTMENT, BUT FALLS |
| 09:21AM | 12 | WITHIN THE TIME PERIOD OF THE INDICTMENT. |
| 09:22AM | 13 | TO TAKE AN EXAMPLE, THE COURT WILL RECALL ITS EXCHANGE |
| 09:22AM | 14 | WITH MR. DOWNEY CONCERNING REPRESENTATIONS TO THE DEPARTMENT OF |
| 09:22AM | 15 | DEFENSE.  THAT'S THE TYPE OF EVIDENCE THAT WOULD NOT FALL |
| 09:22AM | 16 | WITHIN THE FOUR CORNERS OF THE INDICTMENT AND WOULD NOT BE A |
| 09:22AM | 17 | FACTUAL ALLEGATION CONTAINED IN THE INDICTMENT, A THEORY OF |
| 09:22AM | 18 | LIABILITY, SPECIFICALLY ANY ALLEGED MISSTATEMENTS TO THE |
| 09:22AM | 19 | DEPARTMENT OF DEFENSE ON WHICH A CONVICTION COULD PROPERLY |
| 09:22AM | 20 | RELY. |
| 09:22AM | 21 | AND THIS SECOND SENTENCE, WE BELIEVE, GUARDS AGAINST THAT |
| 09:22AM | 22 | JUST BY EXPLAINING OVERALL THAT MS. HOLMES IS NOT ON TRIAL FOR |
| 09:22AM | 23 | ANY CONDUCT OR OFFENSE NOT CHARGED IN THE INDICTMENT. |
| 09:22AM | 24 | THE COURT:  OKAY. |
| 09:22AM | 25 | MS. VOLKAR? |

| | | |
|---|---|---|
| 09:22AM | 1 | MS. VOLKAR:  YOUR HONOR, THE PARTIES ARE NOT TOO FAR |
| 09:22AM | 2 | APART ON THIS INSTRUCTION, AND THAT'S BECAUSE THE FIRST TWO |
| 09:22AM | 3 | SENTENCES ARE BASED ON THE MODEL INSTRUCTION, AND THE |
| 09:22AM | 4 | GOVERNMENT HAS NO ISSUE WITH THAT.  WE THINK THAT THAT IS AN |
| 09:23AM | 5 | ACCURATE STATEMENT THAT SHE'S NOT ON TRIAL FOR ANY CONDUCT OR |
| 09:23AM | 6 | OFFENSE NOT CHARGED IN THE INDICTMENT. |
| 09:23AM | 7 | WE FIND THAT THE FOLLOWING SENTENCE IS MERELY REDUNDANT, |
| 09:23AM | 8 | AND I THINK THAT'S PROBABLY WHAT YOUR HONOR WAS THINKING WHEN |
| 09:23AM | 9 | YOU COMBINED THE TWO SENTENCES TOGETHER. |
| 09:23AM | 10 | AND SO WE WOULD SAY THAT TO ADDRESS THE DEFENSE'S CONCERN |
| 09:23AM | 11 | THAT MR. CLEARY JUST RAISED, THE EASY ANSWER IS TO PROVIDE THE |
| 09:23AM | 12 | TWO SENTENCES FROM THE MODEL INSTRUCTION, AND THAT REALLY |
| 09:23AM | 13 | COVERS IT. |
| 09:23AM | 14 | THE COURT:  I THINK IT'S -- I THINK THE POINT HERE |
| 09:23AM | 15 | IS THAT MS. HOLMES NOT BE -- THAT THE JURY NOT, NOT ENGAGE OR |
| 09:23AM | 16 | NOT CONVICT HER ON CONDUCT THAT IS OUTSIDE OF WHAT THE |
| 09:23AM | 17 | GOVERNMENT HAS ALLEGED, AND THIS IS AN ATTEMPT TO KEEP THEM IN |
| 09:23AM | 18 | THOSE LANES.  I APPRECIATE THAT. |
| 09:23AM | 19 | AND I DON'T THINK THAT -- I DO THINK THAT THAT LAST |
| 09:23AM | 20 | SENTENCE IS UNNECESSARY. |
| 09:23AM | 21 | I'M GOING TO GIVE IT AS MODIFIED.  I THINK THAT |
| 09:23AM | 22 | ACCOMPLISHES WHAT YOUR CONCERNS ARE, MR. CLEARY. |
| 09:24AM | 23 | MR. CLEARY:  WELL, YOUR HONOR, WE WOULD OBJECT FOR |
| 09:24AM | 24 | THE REASONS IDENTIFIED IN ECF 1174, AND ALTHOUGH WE ARE PLEASED |
| 09:24AM | 25 | TO HEAR THAT THE COURT INTENDS TO GIVE THE FIRST TWO SENTENCES |

8673

| | | |
|---|---|---|
| 09:24AM | 1 | OF THE MODEL INSTRUCTION, BECAUSE THE -- WE BELIEVE THAT THE |
| 09:24AM | 2 | MODEL INSTRUCTION AND THE SUPPLEMENTAL SENTENCE PROPOSED BY THE |
| 09:24AM | 3 | DEFENSE ARE NECESSARY IN THIS CASE BECAUSE THERE'S BEEN |
| 09:24AM | 4 | EVIDENCE AS DISCUSSED DURING THE ALLEGED CONSPIRACY PERIODS |
| 09:24AM | 5 | OUTSIDE OF THE FOUR CORNERS OF THE FACTUAL ALLEGATIONS |
| 09:24AM | 6 | CONTAINED IN THE INDICTMENT, AND THEN THERE HAS ALSO BEEN A |
| 09:24AM | 7 | SUBSTANTIAL VOLUME OF TESTIMONY SPECIFICALLY BY INVESTORS, BUT |
| 09:24AM | 8 | ALSO BY PHARMA WITNESSES, CONCERNING INTERACTIONS WITH |
| 09:24AM | 9 | MS. HOLMES AND OTHER EVIDENCE THAT PREDATES THE 2010 OR 2013 |
| 09:24AM | 10 | TIME PERIOD. |
| 09:24AM | 11 | SO FOR THAT REASON WE WOULD ASK THAT THE COURT GIVE |
| 09:24AM | 12 | THAT -- THE THIRD SENTENCE, UNDERSTANDING THE COURT'S RULING. |
| 09:24AM | 13 | THE COURT:  ALL RIGHT.  WELL, YOU'VE MADE YOUR |
| 09:25AM | 14 | RECORD.  THANK YOU. |
| 09:25AM | 15 | MS. VOLKAR, ARE YOU GOING TO ARGUE ANY ACTIVITIES OUTSIDE |
| 09:25AM | 16 | OF THE CHARGED CONDUCT? |
| 09:25AM | 17 | MS. VOLKAR:  YOUR HONOR, ONLY WHAT THE COURT HAS |
| 09:25AM | 18 | HEARD THROUGHOUT THIS TRIAL, WHICH IS THAT THE PRE-INDICTMENT |
| 09:25AM | 19 | ACTIONS SOMETIMES INFORM -- FOR EXAMPLE, WHAT INVESTORS KNEW |
| 09:25AM | 20 | BEFOREHAND MIGHT INFORM HOW THEY HEARD INFORMATION FROM |
| 09:25AM | 21 | MS. HOLMES DURING THE ALLEGED TIME PERIOD. |
| 09:25AM | 22 | BUT OF COURSE WE HAVE IT LATER IN THESE INSTRUCTIONS, THE |
| 09:25AM | 23 | ALLEGED TIME PERIODS ARE CLEARLY DEFINED. |
| 09:25AM | 24 | WE CERTAINLY DO NOT PLAN TO ARGUE THAT SHE IS ON TRIAL OR |
| 09:25AM | 25 | THAT THE JURY SHOULD FIND HER GUILTY BASED ON ANY PRIOR, OR ANY |

**ER-12248**

| | | |
|---|---|---|
| 09:25AM | 1 | ACTIVITY PRIOR TO 2010. |
| 09:25AM | 2 | BUT AS WE HAVE SAID THROUGHOUT THIS TRIAL, THAT ACTIVITY |
| 09:25AM | 3 | CAN BE RELEVANT TO SHED LIGHT ON CONDUCT THAT OCCURS DURING THE |
| 09:25AM | 4 | INDICTMENT, AND WE WILL BE VERY CLEAR ABOUT THAT AS WE DISCUSS |
| 09:25AM | 5 | IT WITH THE JURY. |
| 09:25AM | 6 | THE COURT:  I THINK WHEN WE GET TO THE INSTRUCTIONS |
| 09:25AM | 7 | ALSO, THE INSTRUCTIONS THEMSELVES AS TO THE OFFENSES ARE VERY |
| 09:25AM | 8 | CLEAR AND DELINEATE TIME PERIODS, AND I THINK WE'LL SEE THAT |
| 09:26AM | 9 | WHEN WE GET TO THEM. |
| 09:26AM | 10 | BUT YOUR OBJECTIONS ARE NOTED.  THANK YOU. |
| 09:26AM | 11 | MR. CLEARY:  THANK YOU, YOUR HONOR. |
| 09:26AM | 12 | I'M GOING TO TURN THE FLOOR OVER TO MS. SAHARIA. |
| 09:26AM | 13 | THE COURT:  OKAY.  WE'RE NOW AT INSTRUCTION |
| 09:26AM | 14 | NUMBER 11, AND THIS IS -- THERE'S NO OBJECTION TO 11 OR 12 OR |
| 09:26AM | 15 | 15, I THINK -- 13, PARDON ME, WHICH IS THE DUAL ROLE TESTIMONY. |
| 09:26AM | 16 | LET ME BE CLEAR ABOUT THAT.  NO OBJECTION TO 11. |
| 09:26AM | 17 | NO OBJECTION TO 12 AS I UNDERSTAND IT. |
| 09:26AM | 18 | MS. VOLKAR:  CORRECT. |
| 09:26AM | 19 | MS. SAHARIA:  CORRECT. |
| 09:26AM | 20 | THE COURT:  NUMBER 13 IS MODEL 4.15, DUAL ROLE |
| 09:26AM | 21 | TESTIMONY. |
| 09:26AM | 22 | I JUST WANTED TO ASK, ARE THE PARTIES SATISFIED WITH |
| 09:26AM | 23 | GIVING THE DUAL ROLE INSTRUCTION HERE AT THIS POINT? |
| 09:27AM | 24 | MS. SAHARIA:  YOU MEAN AS OPPOSED TO ELSEWHERE IN |
| 09:27AM | 25 | THE INSTRUCTIONS? |

| | | |
|---|---|---|
| 09:27AM | 1 | THE COURT:  YES, OR AT ANY OTHER TIME.  LET ME SAY |
| 09:27AM | 2 | THAT. |
| 09:27AM | 3 | MS. SAHARIA:  I THINK SO, YOUR HONOR.  BUT I'M HAPPY |
| 09:27AM | 4 | TO GO BACK AND LOOK WHETHER THERE'S ANY NATURAL PLACE FOR IT. |
| 09:27AM | 5 | YOU KNOW, WE DON'T HAVE A CLASSIC EXPERT INSTRUCTION -- |
| 09:27AM | 6 | THE COURT:  RIGHT. |
| 09:27AM | 7 | MS. SAHARIA:  -- BECAUSE THE GOVERNMENT DIDN'T CALL |
| 09:27AM | 8 | ANY EXPERTS IN THIS CASE. |
| 09:27AM | 9 | SO I THINK IT'S A FINE PLACE FOR IT, BUT LET ME THINK |
| 09:27AM | 10 | ABOUT IT AND WE CAN PROPOSE. |
| 09:27AM | 11 | THE COURT:  WELL, LET ME BE CLEAR, I DON'T HAVE AN |
| 09:27AM | 12 | OBJECTION TO THE LOCATION OF IT.  THERE WAS DUAL ROLE -- |
| 09:27AM | 13 | POTENTIAL DUAL TESTIMONY GIVEN DURING THE TRIAL AS INDICATED IN |
| 09:27AM | 14 | THIS INSTRUCTION. |
| 09:27AM | 15 | WHAT THE COURT DID NOT DO AT THE TIME THIS TESTIMONY WAS |
| 09:27AM | 16 | GIVEN, I DID NOT INFORM THE JURY AT THAT TIME ABOUT THE |
| 09:27AM | 17 | POTENTIAL OF THE DUAL TESTIMONY AND HOW THEY SHOULD CONSIDER -- |
| 09:27AM | 18 | MS. SAHARIA:  UNDERSTOOD. |
| 09:27AM | 19 | THE COURT:  -- IT AT THE TIME OF THE TESTIMONY. |
| 09:27AM | 20 | MY SENSE WAS THAT WASN'T NECESSARY GIVEN THE SPECIFICS, |
| 09:27AM | 21 | AND MY SENSE WAS AT THE TIME THE JURY WAS ABLE TO DISTINGUISH |
| 09:28AM | 22 | BETWEEN FACT AS THE DOCTORS TESTIFIED AND EXPERT AS THEY |
| 09:28AM | 23 | TESTIFIED.  SO I DIDN'T FIND IT NECESSARY TO GIVE IT THEN, AND |
| 09:28AM | 24 | I DIDN'T HEAR FROM EITHER SIDE A REQUEST TO GIVE IT AT THAT |
| 09:28AM | 25 | POINT. |

09:28AM 1      THAT'S WHY I RAISE THE POINT NOW.  I DO THINK IT'S

09:28AM 2  APPROPRIATE TO GIVE THE DUAL ROLE TESTIMONY INSTRUCTION.  I

09:28AM 3  THINK THE WAY THAT YOU HAVE MET AND CONFERRED AND PARSED IT OUT

09:28AM 4  HERE IS SUFFICIENT FOR THAT PURPOSE SUCH THAT THE JURY IS

09:28AM 5  INFORMED AS TO THAT TESTIMONY, AND THEY'LL RECALL IT, I'M SURE,

09:28AM 6  AND YOU'LL SPEAK TO IT.

09:28AM 7      THAT'S WHAT I WANTED TO --

09:28AM 8          MS. SAHARIA:  I AGREE, YOUR HONOR.

09:28AM 9          THE COURT:  RIGHT.

09:28AM 10          MS. VOLKAR:  I AGREE, TOO, YOUR HONOR.  IN THE

09:28AM 11  MOMENT I RECALL THE COURT BEING QUITE CLEAR WHAT THE EXPERTISE

09:28AM 12  REFERRED TO AND THERE WAS SPECIFICITY IN THE MOMENT, AND I

09:28AM 13  THINK THAT'S PART OF WHY NEITHER SIDE FELT THAT THERE WAS NEED

09:28AM 14  FOR ADDITIONAL ELABORATION AT THAT POINT IN TIME.

09:29AM 15          THE COURT:  RIGHT.

09:29AM 16          MS. VOLKAR:  AS FAR AS WHERE THIS FALLS IN THE

09:29AM 17  INSTRUCTIONS, I THINK THIS IS IN THE ROW OF DIFFERENT

09:29AM 18  CATEGORIES OF EVIDENCE THAT THE JURY HAS BEFORE IT TO CONSIDER,

09:29AM 19  AND SO IT SEEMS A LOGICAL PLACE TO US.

09:29AM 20      IF THE COURT WANTED TO MOVE IT, FOR EXAMPLE, TO RIGHT

09:29AM 21  AFTER THE CREDIBILITY OF WITNESSES INSTRUCTIONS, OR SOMETHING

09:29AM 22  OF THAT NATURE, I DON'T SEE ANY ISSUE WITH THAT.

09:29AM 23      BUT I THINK IT'S FINE WHERE IT IS.

09:29AM 24          THE COURT:  I'M HAPPY TO HAVE IT HERE.

09:29AM 25          MS. SAHARIA:  THAT'S FINE.  I THINK THERE'S NO

| | | |
|---|---|---|
| 09:29AM | 1 | LOGICAL PLACE FOR IT TO GO. |
| 09:29AM | 2 | THE COURT:  RIGHT.  AND THEN MY COMMENT AND |
| 09:29AM | 3 | MS. VOLKAR'S OBSERVATION ABOUT THE TESTIMONY DURING THE TRIAL, |
| 09:29AM | 4 | YOU AGREE WITH THAT? |
| 09:29AM | 5 | MS. SAHARIA:  NEITHER PARTY REQUESTED A |
| 09:29AM | 6 | CONTEMPORANEOUS INSTRUCTION, SO I THINK WE ARE WHERE WE ARE, |
| 09:29AM | 7 | WHICH IS TO PUT IT IN THE FINAL INSTRUCTIONS. |
| 09:29AM | 8 | THE COURT:  OKAY.  LET'S SEE.  14 IS CHARTS AND |
| 09:29AM | 9 | SUMMARIES NOT ADMITTED, AND 15 IS CHARTS AND SUMMARIES |
| 09:29AM | 10 | ADMITTED. |
| 09:29AM | 11 | I'LL GIVE THOSE. |
| 09:29AM | 12 | NOW WE'RE AT 16, AND THIS IS CONSPIRACY AND THE ELEMENTS. |
| 09:30AM | 13 | AND WE HAVE TO TALK ABOUT THIS.  LET ME SAY, IT IS VERY |
| 09:30AM | 14 | HELPFUL THE WAY YOU HAVE PROVIDED THE BLUE/YELLOW HERE FOR YOUR |
| 09:30AM | 15 | ADDITIONS, AND THAT WAS HELPFUL FOR ME AS I WENT THROUGH THESE. |
| 09:30AM | 16 | SO AS TO 16, WHICH IS CONSPIRACY ELEMENTS, I WILL -- AND |
| 09:30AM | 17 | WE WILL GO DOWN TO, I THINK IT'S LINE 23, I THINK IT IS -- AND |
| 09:30AM | 18 | I WILL GIVE A VARIATION OF LINE 23, AND IT WILL READ:  "NOR IS |
| 09:30AM | 19 | IT ENOUGH THAT THEY HAD A BUSINESS OR ROMANTIC RELATIONSHIP." |
| 09:31AM | 20 | MS. VOLKAR:  YOUR HONOR, MAY THE GOVERNMENT BE HEARD |
| 09:31AM | 21 | ON THAT? |
| 09:31AM | 22 | THE COURT:  YES. |
| 09:31AM | 23 | MS. VOLKAR:  YOUR HONOR, THE GOVERNMENT OBJECTS EVEN |
| 09:31AM | 24 | TO THE COURT'S PROPOSED MODIFIED VERSION.  THERE IS NO |
| 09:31AM | 25 | SUPPORT -- THE CASE THAT IS CITED I'LL COME BACK TO THAT IN A |

09:31AM 1    MOMENT -- THERE'S NO NINTH CIRCUIT SUPPORT, AT LEAST THAT WE'VE

09:31AM 2    BEEN PROVIDED OR THAT THE GOVERNMENT HAS BEEN ABLE TO FIND, TO

09:31AM 3    SUPPORT THE INSTRUCTION THAT THEY WANT HERE, THAT WORKING

09:31AM 4    TOGETHER OR HAVING A ROMANTIC RELATIONSHIP IS NOT ENOUGH.

09:31AM 5        AND I WORRY THAT HAVING THAT IN THE INSTRUCTIONS COULD

09:31AM 6    CONFUSE THE JURY THAT THAT COULD CERTAINLY BE A PIECE ALONG THE

09:31AM 7    WAY TO THEM BEING IN A CONSPIRACY TOGETHER.

09:31AM 8        THE ESPINOZA-VALDEZ CASE THAT THEY CITE HERE HAS VERY

09:31AM 9    DIFFERENT FACTS.  I'M SURE YOUR HONOR HAS READ IT, BUT IT'S A

09:31AM 10   PERSON WHO HAPPENS TO BE SOME DISTANCE AWAY FROM TWO OTHERS,

09:31AM 11   HAS A BACKPACK, IS NEAR THE BORDER OF MEXICO, AND WAS ON TRIAL

09:31AM 12   FOR CONSPIRACY TO SMUGGLE DRUGS.

09:32AM 13       AND THE GOVERNMENT'S THEORY WAS THAT THAT PERSON MUST HAVE

09:32AM 14   BEEN ASSOCIATED WITH THE TWO PEOPLE HE WAS WALKING NEAR BECAUSE

09:32AM 15   THEY WERE ALL FOUND IN THE SAME LOCATION.

09:32AM 16       DRUGS WERE NOT FOUND ON ANY OF THEM.  IT WAS REALLY JUST A

09:32AM 17   THEORY OF THIS IS A COMMON DRUG SMUGGLING ROUTE AND THOSE

09:32AM 18   PEOPLE HAPPENED TO BE NEAR EACH OTHER.

09:32AM 19       AND THAT WAS THE NINTH CIRCUIT SAYING MERE ASSOCIATION IS

09:32AM 20   NOT ENOUGH.

09:32AM 21       THAT, TO ME, IS A FAR CRY FROM THE WORKING TOGETHER IS NOT

09:32AM 22   ENOUGH, THE ROMANTIC RELATIONSHIP IS NOT ENOUGH.

09:32AM 23       I WOULD HOPE THAT WE CAN ALL AGREE THAT THOSE FACTORS --

09:32AM 24   THEY AT LEAST SEEM TO BE PART OF A FACTOR INDICATING THAT ONE

09:32AM 25   MIGHT BE IN A CONSPIRACY.  ONE WOULD CERTAINLY BE A LOT CLOSER

| | | |
|---|---|---|
| 09:32AM | 1 | TO SOMEONE THEY'RE IN A ROMANTIC RELATIONSHIP WITH. |
| 09:32AM | 2 | SO I JUST GO BACK TO THE NINTH CIRCUIT HAS NEVER ENDORSED |
| 09:32AM | 3 | ANYTHING CLOSE TO THIS INSTRUCTION. |
| 09:32AM | 4 | AND THE INTIMATE PARTNER PORTION, THE ROMANTIC |
| 09:32AM | 5 | RELATIONSHIP THAT YOUR HONOR JUST MENTIONED, THAT WAS ADDED FOR |
| 09:32AM | 6 | THE FIRST TIME YESTERDAY, AND THAT IS REALLY WHERE THE |
| 09:32AM | 7 | GOVERNMENT STRENUOUSLY, STRENUOUSLY OBJECTS.  THERE'S NOTHING |
| 09:32AM | 8 | THAT INDICATES THAT THAT CANNOT BE A PIECE IN THE PUZZLE |
| 09:33AM | 9 | TOWARDS SHOWING THAT A CONSPIRACY EXITS, AND WE WORRY THAT IT |
| 09:33AM | 10 | WOULD BE MISLEADING TO THE JURY TO INCLUDE SUCH AN INSTRUCTION |
| 09:33AM | 11 | HERE. |
| 09:33AM | 12 | THE COURT:  THANK YOU.  AND I APPRECIATE THAT. |
| 09:33AM | 13 | DO YOU THINK IF WE ADDED SOME -- IF THE COURT WERE |
| 09:33AM | 14 | INCLINED TO GIVE THIS, IF WE ADDED SOMETHING, "NOR IS IT |
| 09:33AM | 15 | STANDING ALONE," SOME LANGUAGE LIKE THAT OR SOME MODIFICATION? |
| 09:33AM | 16 | I THINK I UNDERSTAND YOUR CONCERN THAT THE JURY MIGHT LOOK |
| 09:33AM | 17 | AT THIS AND SAY, WELL, THERE WAS -- THEY DID WORK TOGETHER, |
| 09:33AM | 18 | THERE WAS A RELATIONSHIP, THEREFORE, THERE'S NOT GUILT HERE |
| 09:33AM | 19 | BECAUSE OF THAT. |
| 09:33AM | 20 | IT SEEMS LIKE YOU WANT TO -- I DON'T WANT TO USE THE WORD |
| 09:33AM | 21 | "SANITIZE," BUT SOMEHOW ENSURE THAT THE JURY DOESN'T -- IF THIS |
| 09:33AM | 22 | CONCEPT IS GIVEN TO THEM, THAT THEY DON'T ABUSE IT. |
| 09:33AM | 23 | MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR. |
| 09:33AM | 24 | AND I WOULD SAY THAT I THINK RIGHT ABOVE IT, AS THE COURT |
| 09:33AM | 25 | WILL READ THE ELEMENTS, THAT DOES PROTECT AGAINST THAT.  I |

| | | |
|---|---|---|
| 09:33AM | 1 | DON'T THINK THAT THE "STANDING ALONE" LANGUAGE WOULD SUFFICE TO |
| 09:34AM | 2 | ALLAY THE GOVERNMENT'S CONCERNS. |
| 09:34AM | 3 | THE REASON I SAY THAT IS BECAUSE OF COURSE THE ELEMENTS, |
| 09:34AM | 4 | WHICH WE ALL KNOW, ARE AN AGREEMENT BETWEEN TWO OR MORE PERSONS |
| 09:34AM | 5 | TO COMMIT WIRE FRAUD, AND THAT SHE BECAME A MEMBER OF THE |
| 09:34AM | 6 | CONSPIRACY KNOWING OF ONE OF ITS OBJECTS AND HELPING TO INTEND |
| 09:34AM | 7 | TO ACCOMPLISH IT, SO OF COURSE THE JURY WILL ALREADY HAVE HEARD |
| 09:34AM | 8 | THAT IN CONTEXT. |
| 09:34AM | 9 | AND WE UNDERSTAND, FOR EXAMPLE, IN THE SENTENCE PRIOR ON |
| 09:34AM | 10 | LINES 21 TO 22, "IT'S NOT ENOUGH, HOWEVER, THAT THEY SIMPLY |
| 09:34AM | 11 | MET, DISCUSSED MATTERS OF COMMON INTEREST, ACTED IN SIMILAR |
| 09:34AM | 12 | WAYS, WORKED TOGETHER, OR PERHAPS HELPED ONE ANOTHER," IF THE |
| 09:34AM | 13 | DEFENSE WANT THAT'S CONCEPT TO BE IN THERE. |
| 09:34AM | 14 | BUT WE DO STRENUOUSLY OBJECT TO THE ROMANTIC RELATIONSHIP |
| 09:34AM | 15 | OR TO SINGLING OUT THE FACT THAT THEY WORKED TOGETHER. |
| 09:34AM | 16 | OF COURSE THAT IS PART OF IT. OF COURSE HOW CLOSE THEY |
| 09:34AM | 17 | ARE, THE ALMOST 500 PAGES OF TEXT MESSAGES, THOSE DO GO TO AND |
| 09:34AM | 18 | INDICATE THAT THERE MIGHT HAVE BEEN A CONSPIRACY, AND TO |
| 09:34AM | 19 | INDICATE OTHERWISE IN THE INSTRUCTIONS I THINK WOULD BE |
| 09:35AM | 20 | MISLEADING TO THE JURY. |
| 09:35AM | 21 | THE COURT: WELL, THOSE ARE GOOD POINTS. |
| 09:35AM | 22 | MS. SAHARIA? |
| 09:35AM | 23 | MS. SAHARIA: I THINK THE "STANDING ALONE" LANGUAGE |
| 09:35AM | 24 | THAT YOUR HONOR PROPOSED PERFECTLY RESOLVES THE GOVERNMENT'S |
| 09:35AM | 25 | CONCERN, WHICH IS THE GOVERNMENT'S POSITION, AS I UNDERSTAND |

8681

09:35AM  1      IT, IS THAT THE FACT THAT THEY HAD A ROMANTIC RELATIONSHIP IS

09:35AM  2      EVIDENCE, IS SOME RELEVANT EVIDENCE OF A CONSPIRACY.

09:35AM  3           AND THAT'S EXACTLY OUR WORRY HERE, WHICH IS THAT THE JURY

09:35AM  4      MIGHT CONCLUDE FROM THE MERE FACT OF A ROMANTIC RELATIONSHIP OR

09:35AM  5      FROM THE MERE FACT OF A BUSINESS RELATIONSHIP THAT A CONSPIRACY

09:35AM  6      EXISTED.

09:35AM  7           AND SO I THINK THE COURT'S PROPOSAL TO ADD THE "STANDING

09:35AM  8      ALONE" LANGUAGE KIND OF CAPTURES THE MIDDLE GROUND BETWEEN THE

09:35AM  9      TWO PARTIES, WHICH IS THE JURY CAN CONSIDER IT, BUT IT CAN'T

09:35AM 10      CONSIDER THAT BY ITSELF.  THAT'S NOT ENOUGH.

09:35AM 11           AND THE NINTH CIRCUIT CASE LAW MAKES THAT VERY CLEAR.

09:35AM 12      IT'S BLACK LETTER LAW THAT MERE ASSOCIATION OF SOME KIND IS NOT

09:35AM 13      ENOUGH.

09:35AM 14           THE GOVERNMENT BEARS THE BURDEN TO PROVE A MEETING OF THE

09:35AM 15      MINDS BEYOND MERE ASSOCIATION, AND IN THE CONTEXT OF THIS CASE

09:36AM 16      WHERE YOU HAVE TWO PEOPLE WHO ARE BOTH BUSINESS ASSOCIATES AND

09:36AM 17      ROMANTIC ASSOCIATES, WE THINK IT'S IMPORTANT TO CONVEY THAT TO

09:36AM 18      THE JURY IN THIS WAY.

09:36AM 19           SO WE WOULD BE PERFECTLY SATISFIED WITH THE COURT'S -- THE

09:36AM 20      FIRST PROPOSAL THAT THE COURT GAVE WITH THE BUSINESS OR THE

09:36AM 21      ROMANTIC RELATIONSHIP LANGUAGE, AND EVEN ADDING THE "STANDING

09:36AM 22      ALONE" LANGUAGE WOULD BE FINE WITH US AS WELL.

09:36AM 23                THE COURT:  ALL RIGHT.

09:36AM 24                MS. VOLKAR:  YOUR HONOR, I THINK THE GOVERNMENT DOES

09:36AM 25      OBJECT.  I DON'T THINK NINTH CIRCUIT LAW IS CLEAR THAT -- I'M

| | | |
|---|---|---|
| 09:36AM | 1 | NOT AWARE OF A CASE THAT TALKS ABOUT THE ROMANTIC RELATIONSHIP |
| 09:36AM | 2 | IN THIS CATEGORY OF MERE ASSOCIATION IS NOT ENOUGH. |
| 09:36AM | 3 | I THINK MOST OF US WOULD ARGUE THAT A ROMANTIC |
| 09:36AM | 4 | RELATIONSHIP IS SOMETHING BEYOND MERE ASSOCIATION, SO I DO |
| 09:36AM | 5 | THINK IT'S A LITTLE BIT IN THE GREY AREA. |
| 09:36AM | 6 | IF THE COURT IS INCLINED TO GIVE IT, WE DO REQUEST THAT |
| 09:36AM | 7 | THE "STANDING ALONE" LANGUAGE BE ADDED TO MAKE THAT CLEAR THAT |
| 09:36AM | 8 | THE COURT IS SAYING THE BUSINESS OR ROMANTIC RELATIONSHIP |
| 09:36AM | 9 | STANDING ALONE IS NOT SUFFICIENT, THAT THERE DOES HAVE TO BE |
| 09:36AM | 10 | THE MEETING OF THE MINDS. |
| 09:36AM | 11 | BUT THE GOVERNMENT DOES OBJECT OVERALL. |
| 09:37AM | 12 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:37AM | 13 | SO WHEN I LOOKED AT IT FIRST, INTIMATE PARTNER, I THOUGHT |
| 09:37AM | 14 | THAT WAS TOO SPECIFIC -- |
| 09:37AM | 15 | MS. SAHARIA:  UNDERSTOOD, YOUR HONOR. |
| 09:37AM | 16 | THE COURT:  -- AND ARGUMENTATIVE.  AND I'M HAPPY TO |
| 09:37AM | 17 | RECEIVE ANOTHER DEFINITION OF WHAT YOU THINK THE RELATIONSHIP |
| 09:37AM | 18 | SHOULD BE CALLED, MS. VOLKAR, SOMETHING OTHER THAN ROMANTIC |
| 09:37AM | 19 | RELATIONSHIP. |
| 09:37AM | 20 | MS. VOLKAR:  I DON'T TAKE ISSUE WITH THE COURT'S |
| 09:37AM | 21 | CHARACTERIZATION.  IT'S MORE SO THE CONCEPT ITSELF. |
| 09:37AM | 22 | THE COURT:  SURE. |
| 09:37AM | 23 | MS. VOLKAR:  SO IF IT'S GOING TO BE REFERENCED, I |
| 09:37AM | 24 | THINK THE FORMULATION THAT YOUR HONOR JUST MENTIONED, WHICH IS |
| 09:37AM | 25 | "THE BUSINESS AND ROMANTIC RELATIONSHIP STANDING ALONE IS NOT |

09:37AM  1    ENOUGH," THAT WOULD BE ACCEPTABLE IF THE COURT IS GOING TO GIVE

09:37AM  2    THIS.

09:37AM  3        BUT THE GOVERNMENT'S POSITION IS THAT IT SHOULDN'T BE

09:37AM  4    GIVEN AT ALL.

09:37AM  5            THE COURT:  PRESERVING YOUR OBJECTION.

09:37AM  6            MS. VOLKAR:  EXACTLY.

09:37AM  7            THE COURT:  OKAY.  THANK YOU.

09:37AM  8        TURNING THE PAGE, AND THIS IS PAGE 18, ECF PAGE 19, I AM

09:38AM  9    NOT INCLINED TO GIVE THE HIGHLIGHTING THAT BEGINS AT THE END OF

09:38AM  10   THAT AND OVER TO THE TOP OF LINES 1 AND 2 AS THE DEFENSE

09:38AM  11   REQUESTED.

09:38AM  12       I'LL GIVE THE LINES 3 THROUGH 10, "ONE BECOMES A MEMBER,"

09:38AM  13   AND IT ENDS AT LINE 10, "CONSPIRACY EXISTS."

09:38AM  14       THE NEXT SECTION THAT IS ON LINES 11 THROUGH 16 IS 822,

09:38AM  15   ISN'T IT?

09:38AM  16            MS. SAHARIA:  YES, YOUR HONOR.  WE TOOK TO HEART THE

09:38AM  17   COURT'S REQUEST THAT WE SHORTEN OUR PROPOSED VERSION OF 8.22,

09:38AM  18   AND SO WE DID PROPOSE A SHORTER VERSION OF 8.22, WHICH IS THE

09:38AM  19   MULTIPLE CONSPIRACIES INSTRUCTION.

09:38AM  20       AND I DO THINK IT'S IMPORTANT TO CONVEY THIS CONCEPT TO

09:38AM  21   THE JURY HERE, NOT ONLY BECAUSE THE GOVERNMENT HAS CHARGED TWO

09:38AM  22   DIFFERENT CONSPIRACIES, BUT AS MR. CLEARY WAS ALLUDING TO,

09:39AM  23   THERE IS EVIDENCE IN THE RECORD THAT THE GOVERNMENT PUT INTO

09:39AM  24   ITS CASE ABOUT REPRESENTATIONS TO OTHER FORMS OF INDIVIDUALS OR

09:39AM  25   COMPANIES THAT ARE NOT PART OF THE CHARGED CONSPIRACIES, THE

09:39AM   1     PHARMACEUTICAL COMPANIES, THE DEPARTMENT OF DEFENSE,

09:39AM   2     REGULATORS.

09:39AM   3          AND IT'S IMPORTANT, GIVEN THOSE FACTS, THAT THAT'S THE

09:39AM   4     TYPE OF SITUATION WHERE THE NINTH CIRCUIT HAS SAID A MULTIPLE

09:39AM   5     CONSPIRACIES INSTRUCTION SHOULD BE GIVEN, IF THERE'S A RISK

09:39AM   6     THAT THE JURY COULD FIND THAT A DIFFERENT CONSPIRACY EXISTS,

09:39AM   7     THE COURT SHOULD GIVE THIS MULTIPLE CONSPIRACIES INSTRUCTION,

09:39AM   8     INSTRUCTING THE JURY THAT IT NEEDS TO FIND ONLY THE CONSPIRACY

09:39AM   9     THAT WAS CHARGED IN THE INDICTMENT.

09:39AM  10          THE COURT:  SO WHEN WE LOOK AT THE -- THANK YOU.

09:39AM  11          SO WHEN WE LOOK AT THE USE NOTE, THE USE NOTE INFORMS US

09:39AM  12     THAT THIS COULD BE GIVEN WHEN THERE'S A SINGLE, A SINGLE

09:39AM  13     CONSPIRACY ALLEGED, AND THAT THERE IS SOME DANGER THAT THE

09:39AM  14     FACTS MIGHT YIELD SOMETHING DIFFERENT FROM THE CHARGED CONDUCT.

09:40AM  15          AND HERE, WHEN I LOOK AT THESE HERE, I THINK THE TWO

09:40AM  16     CONSPIRACIES ARE VERY DISTINCT AND THEY'RE CHARGED WITH VERY

09:40AM  17     CLEAR LANGUAGE, AND IT SEEMS LIKE THE CHARGING DOCUMENT, AS

09:40AM  18     WELL AS THE FOLLOWING INSTRUCTIONS, DELINEATE SPECIFICALLY WHAT

09:40AM  19     THE CONSPIRACIES ARE.

09:40AM  20          SO I GUESS THE QUESTION I HAVE IS, WHAT IS THE OTHER

09:40AM  21     CONSPIRACY?  WHAT ARE THE OTHER CONSPIRACIES?  YOU'VE TOLD ME

09:40AM  22     ABOUT DOD AND SOME OTHER THINGS.  BUT, MS. SAHARIA, I'M NOT

09:40AM  23     SURE WE'RE --

09:40AM  24          MS. SAHARIA:  WELL, THAT'S JUST OUR CONCERN,

09:40AM  25     YOUR HONOR, WHICH IS THAT THE JURY COULD BE -- GIVEN THE AMOUNT

09:40AM  1    OF EVIDENCE THAT CAME INTO THIS CASE ABOUT REPRESENTATIONS TO

09:40AM  2    OTHER PARTIES, THAT THE JURY COULD MISTAKENLY CONCLUDE THAT

09:40AM  3    SOME OTHER CONSPIRACY EXISTED, LIKE A CONSPIRACY TO DEFRAUD THE

09:40AM  4    DEPARTMENT OF DEFENSE, AND IT'S IMPORTANT TO GIVE THE JURY THE

09:40AM  5    INSTRUCTION FOR THAT REASON.

09:40AM  6             THE COURT:  MS. VOLKAR?

09:40AM  7             MS. VOLKAR:  YOUR HONOR, I THINK THE COURT CAPTURED

09:40AM  8    IT EXACTLY.  THE TWO CONSPIRACIES ARE CHARGED.  THEY'RE VERY

09:41AM  9    DISTINCT.  THEY'RE VERY CLEAR.

09:41AM  10        THE GOVERNMENT WILL NOT BE ARGUING, AS WE REPRESENTED TO

09:41AM  11   YOUR HONOR PREVIOUSLY, THAT THERE WAS ANY CONSPIRACY TO DEFRAUD

09:41AM  12   THE DEPARTMENT OF DEFENSE.

09:41AM  13        I DO NOT THINK THAT THE EVIDENCE ALONE WILL LEAD THE JURY

09:41AM  14   TO THINK ABOUT THAT.

09:41AM  15        HONESTLY, JUST THE PRIOR PAGE OF THIS INSTRUCTION, WHICH

09:41AM  16   THE PARTIES DO AGREE TO, DEFINES THE TWO CONSPIRACIES,

09:41AM  17   CONSPIRING TO COMMIT WIRE FRAUD AGAINST INVESTORS AND THERANOS

09:41AM  18   DURING A SPECIFIC PERIOD OF TIME; AND CONSPIRING TO COMMIT WIRE

09:41AM  19   FRAUD AGAINST PATIENTS WHO PAID FOR THERANOS'S BLOOD TESTING

09:41AM  20   SERVICES, ALSO DURING A SPECIFIC PERIOD OF TIME.  I DON'T THINK

09:41AM  21   THERE'S ANY RISK FOR CONFUSION HERE, AND THEREFORE, THERE'S NO

09:41AM  22   NEED TO PROVIDE THE MULTIPLE CONSPIRACIES INSTRUCTION.

09:41AM  23             THE COURT:  ANYTHING FURTHER?

09:41AM  24             MS. SAHARIA:  NOTHING FURTHER, YOUR HONOR.

09:41AM  25             THE COURT:  ALL RIGHT.  THANK YOU.

|          |    |                                                                      |
|----------|----|----------------------------------------------------------------------|
| 09:41AM  | 1  | MS. SAHARIA:  I DO JUST WANT TO CONFIRM, AT THE                       |
| 09:41AM  | 2  | BOTTOM OF 18, THE COURT WILL GIVE THE YELLOW LANGUAGE, JUST NOT       |
| 09:42AM  | 3  | THE BLUE VERSION OF THE LANGUAGE; CORRECT?                            |
| 09:42AM  | 4  | THE COURT:  I'M SORRY, WHERE ARE YOU?                                 |
| 09:42AM  | 5  | MS. SAHARIA:  I'M SORRY.  THE BOTTOM OF 18.                           |
| 09:42AM  | 6  | THE COURT:  PAGE 18?                                                  |
| 09:42AM  | 7  | MS. SAHARIA:  YES.  YOU'LL GIVE THE YELLOW LANGUAGE;                  |
| 09:42AM  | 8  | CORRECT?                                                              |
| 09:42AM  | 9  | THE COURT:  YES, THAT'S RIGHT.                                        |
| 09:42AM  | 10 | MS. SAHARIA:  IF I MAY JUST STATE FOR THE RECORD TWO                  |
| 09:42AM  | 11 | ADDITIONAL OBJECTIONS AS THEY RELATE TO CONSPIRACY?                   |
| 09:42AM  | 12 | THE COURT:  SURE.                                                     |
| 09:42AM  | 13 | MS. SAHARIA:  WE'VE ALREADY COVERED OUR OBJECTIONS                    |
| 09:42AM  | 14 | TO THE LACK OF AN OVERT ACT ELEMENT, AND I'M NOT GOING TO             |
| 09:42AM  | 15 | REPEAT THAT ONE.                                                      |
| 09:42AM  | 16 | THE COURT:  RIGHT.                                                    |
| 09:42AM  | 17 | MS. SAHARIA:  I DO JUST WANT TO NOTE THAT WE DO                       |
| 09:42AM  | 18 | REITERATE THE MOTION THAT WE MADE AT THE MOTION TO DISMISS            |
| 09:42AM  | 19 | STAGE, THAT OUR POSITION IS THAT THE GOVERNMENT IMPROPERLY            |
| 09:42AM  | 20 | EXPANDED THE SCOPE OF THE CHARGED INVESTOR CONSPIRACY AND THE         |
| 09:42AM  | 21 | SECOND AND THIRD SUPERSEDING INDICTMENT, SUCH THAT THE THIRD          |
| 09:42AM  | 22 | SUPERSEDING INDICTMENT DOES NOT RELATE BACK TO THE ORIGINAL           |
| 09:42AM  | 23 | INDICTMENT.                                                           |
| 09:42AM  | 24 | THE RESULT OF THAT WOULD BE THAT THE JURY WOULD NEED TO BE            |
| 09:42AM  | 25 | INSTRUCTED THAT IT NEEDED TO FIND THAT THE INDICTMENT CONTINUED       |

| | | |
|---|---|---|
| 09:42AM | 1 | PAST THE DATE THAT IS FIVE YEARS BEFORE THE RETURN OF THE |
| 09:42AM | 2 | SECOND SUPERSEDING INDICTMENT. |
| 09:42AM | 3 | THE COURT HAS REJECTED THAT ARGUMENT, BUT IF THE COURT HAD |
| 09:43AM | 4 | ACCEPTED IT, WE WOULD HAVE REQUESTED A JURY INSTRUCTION ON THE |
| 09:43AM | 5 | STATUTE OF LIMITATIONS. |
| 09:43AM | 6 | THE COURT:  UNDERSTOOD. |
| 09:43AM | 7 | MS. VOLKAR, DO YOU WANT TO BE HEARD? |
| 09:43AM | 8 | MS. VOLKAR:  THE GOVERNMENT RELIES ON ITS FILINGS |
| 09:43AM | 9 | AND AGREES WITH THE COURT'S RULING. |
| 09:43AM | 10 | THE COURT:  OKAY.  THANK YOU. |
| 09:43AM | 11 | SO I'M NOT GOING TO GIVE -- RETURNING NOW TO 1188, |
| 09:43AM | 12 | ECF PAGE 20, PAGE 19 OF THE DOCUMENT, I WON'T GIVE LINES 11 |
| 09:43AM | 13 | THROUGH 16.  THE COURT FINDS THAT'S NOT NECESSARY HERE. |
| 09:43AM | 14 | THE COURT FINDS THAT THE AS CHARGED, AND IN THE OTHER |
| 09:43AM | 15 | INSTRUCTIONS, THE TWO, THE TWO CONSPIRACIES ARE SUFFICIENTLY |
| 09:43AM | 16 | DESCRIBED SUCH THAT THERE DOES NOT APPEAR TO THE COURT THAT |
| 09:43AM | 17 | THERE WOULD BE JURY CONFUSION AS TO THOSE TWO CONSPIRACIES SUCH |
| 09:43AM | 18 | THAT 8.22 IS NOT NECESSARY.  I WON'T GIVE 8.22. |
| 09:43AM | 19 | INITIALLY LET ME SAY THAT I WOULDN'T GIVE 8.22 COMBINED |
| 09:44AM | 20 | WITH THIS INSTRUCTION.  I THINK THAT'S MORE CONFUSING, |
| 09:44AM | 21 | CANDIDLY.  BUT I'M NOT GOING TO GIVE IT, SO ENOUGH SAID ON |
| 09:44AM | 22 | THAT. |
| 09:44AM | 23 | LET'S MOVE TO 17.  17 IS THE DEFINITION OF WILLFULLY.  I |
| 09:44AM | 24 | KNOW WE HAD SOME SPIRITED CONVERSATION ABOUT THIS, AND THE |
| 09:44AM | 25 | BRYAN CASE, BRYAN VERSUS U.S., 524 U.S. 184, THAT THE |

```
09:44AM   1    PARTIES -- I THINK BOTH OF YOU TALK ABOUT BRYAN IN RESPONSE.
09:44AM   2         AND, MS. VOLKAR, DO YOU WANT TO BE HEARD ON THIS?
09:44AM   3              MS. VOLKAR:  JUST TO CLARIFY THAT THE AUTHORITY THAT
09:44AM   4    IS ON THIS PAGE UNDER 17 IS WHAT THE DEFENSE SUGGESTS SUPPORTS
09:44AM   5    ITS DEFINITION.
09:44AM   6         THE GOVERNMENT STRONGLY DISAGREES AND THINKS THAT
09:44AM   7    WILLFULLY IS NOT IN THE STATUTE OF 1349.  IT'S NOT IN THE
09:44AM   8    STATUTE FOR CONSPIRACY.
09:44AM   9         WE TOOK YOUR HONOR UP ON THE SUGGESTION OF LOOKING AT
09:45AM  10    CALJIC AND THE OTHER CASES, AND I WOULD NOTE THAT IN THE
09:45AM  11    COMMENTS TO THE CALJIC SECTION, IT SAYS LOOK TO WHETHER
09:45AM  12    WILLFULLY IS IN THE STATUTE.
09:45AM  13         SO I JUST THINK THAT WE FAIL AT STEP ONE.  BUT IF THE
09:45AM  14    COURT IS SO INCLINED -- AND WE'RE GOING TO HAVE THIS
09:45AM  15    CONVERSATION A FEW TIMES TODAY --
09:45AM  16              THE COURT:  RIGHT.
09:45AM  17              MS. VOLKAR:  -- I THINK THE DEFENSE IS TRYING TO
09:45AM  18    HEIGHTEN THE MENS REA FOR WIRE FRAUD UNDULY AND THIS IS ONE OF
09:45AM  19    THOSE INSTANCES.
09:45AM  20         THE GOVERNMENT CERTAINLY OBJECTS TO THE DEFINITION THAT
09:45AM  21    THEY HAVE, WHICH IS THAT THE DEFENDANT HAS TO KNOW THE LAW AND
09:45AM  22    VIOLATE IT.  THAT'S TYPICALLY RESERVED FOR TAX FRAUD CASES AND
09:45AM  23    CERTAINLY NOT APPROPRIATE HERE.
09:45AM  24              THE COURT:  THANK YOU.
09:45AM  25         AND I LOOKED AT THE CALJIC THAT I SUGGESTED, THAT'S CALJIC
```

09:45AM    1    1.20, AND THEN WHEN I LOOK AT THE USE NOTE THERE, IT SAYS NOT

09:45AM    2    TO USE IT FOR SPECIFIC INTENT OFFENSES.

09:45AM    3         SO THAT'S INFORMATIVE, AT LEAST FROM THE CALIFORNIA

09:45AM    4    COURTS.

09:45AM    5         MS. SAHARIA?

09:46AM    6              MS. SAHARIA:  YOUR HONOR, WE WOULD STRONGLY OBJECT

09:46AM    7    TO USING THE CALIFORNIA STANDARD IN THIS CASE.  THE GOVERNMENT

09:46AM    8    CITED NO AUTHORITY FOR IMPORTING A STATE LAW DEFINITION INTO

09:46AM    9    THIS FEDERAL CRIMINAL CASE.

09:46AM   10         AND AS THE COURT NOTES, THIS IS A SPECIFIC INTENT CASE,

09:46AM   11    AND IN PARTICULAR, THE INTENT FOR WIRE FRAUD IS THE INTENT TO

09:46AM   12    INJURE SOMEONE.  IT'S THE INTENT TO DEPRIVE SOMEONE OF MONEY OR

09:46AM   13    PROPERTY.

09:46AM   14         SO TO USE THIS DEFINITION OF WILLFULLY TO DEFINE THE

09:46AM   15    CONSPIRACY TO COMMIT WIRE FRAUD WHEN THIS DEFINITION SAYS THE

09:46AM   16    WORD "WILLFULLY" DOES NOT REQUIRE ANY INTENT TO INJURE ANOTHER

09:46AM   17    WOULD BE SQUARELY CONTRARY TO THIS SPECIFIC INTENT TO COMMIT

09:46AM   18    WIRE FRAUD.

09:46AM   19         SO WE JUST THINK THAT THE STATE LAW DEFINITION IS

09:46AM   20    COMPLETELY INAPPLICABLE HERE AND WOULD BE AN ERROR TO GIVE.

09:46AM   21         WE SUBMIT THE COURT SHOULD GIVE THE BRYAN INSTRUCTION, BUT

09:46AM   22    IF NOT THE BRYAN INSTRUCTION, THEN NO INSTRUCTION AS OPPOSED TO

09:46AM   23    THIS CALIFORNIA INSTRUCTION --

09:46AM   24              THE COURT:  WELL, DON'T POINT THE FINGER AT

09:47AM   25    MS. VOLKAR.  THAT WAS THE COURT'S SUGGESTION TO LOOK AT IT AND

09:47AM 1      SEE IF THERE WAS LANGUAGE THERE THAT COULD BE IMPORTED AND

09:47AM 2      OTHERWISE WORDSMITHED TO ASSIST US.

09:47AM 3            MS. SAHARIA:  I CAN BRIEFLY ELABORATE ON WHY WE

09:47AM 4      THINK THE BRYAN STANDARD IS THE RIGHT STANDARD.  WE DID COVER

09:47AM 5      THAT A LITTLE BIT LAST WEEK.

09:47AM 6         BUT I TAKE ISSUE WITH MS. VOLKAR'S SUGGESTION THAT BRYAN

09:47AM 7      IS A HEIGHTENED STANDARD OF WILLFULNESS THAT APPLIES ONLY IN

09:47AM 8      SPECIALIZED CASES.

09:47AM 9         IN FACT, BRYAN SAYS THE OPPOSITE.  BRYAN SAYS, "AS A

09:47AM 10     GENERAL MATTER, WHEN USED IN THE CRIMINAL CONTEXT, A WILLFUL

09:47AM 11     ACT IS ONE UNDERTAKEN WITH A BAD PURPOSE.  IN OTHER WORDS, IN

09:47AM 12     ORDER TO ESTABLISH A WILLFUL VIOLATION OF A STATUTE, THE

09:47AM 13     GOVERNMENT MUST PROVE THAT THE DEFENDANT ACTED WITH KNOWLEDGE

09:47AM 14     THAT HIS CONDUCT WAS UNLAWFUL."

09:47AM 15        THE DEFENDANT IN BRYAN WAS ADVOCATING AN EVEN HIGHER

09:47AM 16     STANDARD OF WILLFULNESS, AND THE CASES DISTINGUISH BETWEEN THE

09:47AM 17     BRYAN STANDARD, WHICH IS A LESSER OR DEFAULT STANDARD, AND THEN

09:48AM 18     A HIGHER STANDARD WHERE IN THESE COMPLEX CASES, LIKE TAX CASES,

09:48AM 19     THE COURT SOMETIMES REQUIRES A DEFENDANT TO KNOW OF THE

09:48AM 20     PARTICULAR STATUTE AT ISSUE.

09:48AM 21        AND THAT'S NOT OUR ARGUMENT HERE, NOT THAT MS. HOLMES

09:48AM 22     NEEDED TO KNOW OF THE WIRE FRAUD STATUTE, BUT JUST THE GENERAL

09:48AM 23     DEFAULT PRINCIPLE THAT TO ACT WILLFULLY, ONE NEEDS TO INTENT TO

09:48AM 24     ACT UNLAWFULLY, EVEN IF KNOWING OF THE PARTICULAR STATUTE.

09:48AM 25        AND THE NINTH CIRCUIT'S DECISION IN UNITED STATES VERSUS

09:48AM  1    HERNANDEZ, WHICH IS CITED IN THE COMMENTARY TO THIS MODEL

09:48AM  2    RULE -- AND THAT'S AT 859 F.3D 817, NINTH CIRCUIT 2017 -- HAS A

09:48AM  3    VERY GOOD DISCUSSION OF THIS, AND THAT CASE CHARACTERIZES THE

09:48AM  4    BRYAN STANDARD AS, QUOTE, "THE LOWER STANDARD OF WILLFULNESS,"

09:48AM  5    AND IT APPROVES THE DEFINITION OF WILLFULNESS TAKEN FROM THE

09:48AM  6    BRYAN CASE, WHICH IS, "A PERSON ACTS WILLFULLY IF HE ACTS

09:48AM  7    INTENTIONALLY AND PURPOSEFULLY AND WITH THE INTENT TO DO

09:49AM  8    SOMETHING THAT THE LAW FORBIDS, THAT IS, WITH A BAD PURPOSE TO

09:49AM  9    DISOBEY OR DISREGARD THE LAW."

09:49AM 10        WE THINK IT MAKES PERFECT SENSE TO APPLY THIS DEFINITION

09:49AM 11    TO THE CONSPIRACY COUNT BECAUSE THE INSTRUCTIONS FOR CONSPIRACY

09:49AM 12    ALSO PROVIDE THAT THE CRIME OF CONSPIRACY IS THE AGREEMENT TO

09:49AM 13    DO SOMETHING UNLAWFUL.  THAT IS ACTUALLY IN THESE INSTRUCTIONS.

09:49AM 14        AND THAT'S IN PERFECT HARMONY WITH BRYAN'S DEFINITION OF

09:49AM 15    WILLFULNESS.  AND AS WE'VE ALREADY DISCUSSED, THE MODEL

09:49AM 16    INSTRUCTIONS USE THE ADVERB "WILLFULLY" IN TWO PLACES.

09:49AM 17        SO WE SUBMIT THE COURT SHOULD GIVE THE DEFINITION THAT WE

09:49AM 18    HAVE GIVEN, WHICH IS THE BRYAN DEFINITION.  IT'S THE DEFAULT

09:49AM 19    STANDARD IN FEDERAL CRIMINAL LAW.

09:49AM 20        BUT IF THE COURT DOESN'T GIVE THAT, IT CERTAINLY SHOULD

09:49AM 21    NOT GIVE THE STATE LAW DEFINITION GIVEN THAT THIS IS A SPECIFIC

09:49AM 22    INTENT CRIME.

09:49AM 23            THE COURT:  ANYTHING FURTHER, MS. VOLKAR?

09:49AM 24            MS. VOLKAR:  YOUR HONOR, THE PARTIES DO SEEM TO

09:49AM 25    AGREE ON ONE THING, WHICH IS DEPENDING ON THE COURT'S VIEW OF

09:50AM 1      BRYAN, NO INSTRUCTION SHOULD BE GIVEN, AND THAT IS BECAUSE

09:50AM 2      CERTAINLY THE INSTRUCTION THAT THEY HAVE SUGGESTED IS

09:50AM 3      INAPPROPRIATE.

09:50AM 4          AND BRYAN STARTS WITH THERE IS WILLFULLY IN THE STATUTE

09:50AM 5      AND IT IS INTERPRETING A WORD IN THE STATUTE, AND THE ENTIRE

09:50AM 6      OPINION IS ABOUT THAT.

09:50AM 7          AND I WOULD SUBMIT -- I DIDN'T SEE HERNANDEZ IN THE CASES,

09:50AM 8      THE PAGE LONG AUTHORITY CITED HERE.  I DO SEE A LOT OF OUT OF

09:50AM 9      CIRCUIT CASES.

09:50AM 10             THE COURT:  RIGHT.

09:50AM 11             MS. VOLKAR:  I LOOKED AT THE NINTH CIRCUIT CASES.

09:50AM 12     THEY ARE ALL REGULATORY FRAUD VIOLATION CASES THAT HAVE A

09:50AM 13     HIGHER MENS REA, AND EVEN AMONGST THOSE THERE ARE TIERS.

09:50AM 14     SECURITY FRAUD AND CERTAIN HEALTH CARE FRAUD TEND TO HAVE AN

09:50AM 15     INSTRUCTION THAT IS CLOSER TO WHAT THE CALJIC INSTRUCTION IS.

09:50AM 16         ONLY TAX FRAUD CASES THAT I HAVE FOUND TEND TO HAVE THIS

09:50AM 17     HIGHEST ONE OF YOU HAD TO KNOW THE LAW AND KNOW THAT YOU WERE

09:50AM 18     VIOLATING IT.

09:50AM 19         THAT'S RESERVED FOR THE HIGHEST CATEGORY OF REGULATORY

09:50AM 20     FRAUD VIOLATIONS.

09:50AM 21         AS YOU WILL HEAR THE PARTIES AT MULTIPLE TIMES TODAY, I

09:51AM 22     BELIEVE WE AGREE THIS IS NOT A REGULATORY FRAUD VIOLATION CASE.

09:51AM 23         IN FACT, YOUR HONOR INDICATED THAT THE COURT WILL GIVE AN

09:51AM 24     INSTRUCTION ON THAT, AND WE'LL GET THERE LATER.

09:51AM 25         WE ARE JUST SIMPLY SAYING THAT IF THIS IS NOT A REGULATORY

8693

09:51AM 1    FRAUD VIOLATION CASE, WHICH I BELIEVE THE PARTIES AGREE ON,

09:51AM 2    THEN THE HEIGHTENED MENS REA THAT GOES WITH THAT SHOULD ALSO BE

09:51AM 3    OMITTED, AND THAT MEANS THERE SHOULD NOT BE A DEFINITION OF

09:51AM 4    WILLFULNESS.

09:51AM 5        THAT MEANS THAT KNOWINGLY AND THE SPECIFIC INTENT TO

09:51AM 6    DEFRAUD, WHICH HAS BEEN DEFINED BY THE NINTH CIRCUIT OVER AND

09:51AM 7    OVER AND OVER AGAIN, IS WHAT THE MENS REA STANDARD SHOULD BE.

09:51AM 8        THERE SHOULD NOT BE ANY ATTEMPT TO INJECT A HIGHER MENS

09:51AM 9    REA IN THIS STRAIGHTFORWARD WIRE FRAUD AND CONSPIRACY TO COMMIT

09:51AM 10   WIRE FRAUD CASE.

09:51AM 11       AND THE LAST POINT I WANT TO MAKE ON THAT IS, AGAIN, THAT

09:51AM 12   WILLFULLY IS NOT IN THE STATUTE.

09:51AM 13       AND IF THE COURT DID WANT TO GIVE ANYTHING TO FURTHER

09:51AM 14   EXPLAIN THE STRAY REFERENCES OF WILLFULLY IN THE FURTHER

09:51AM 15   EXPLANATION OF THE ELEMENTS OF CONSPIRACY, IT'S REALLY JUST THE

09:52AM 16   INTENT TO ACT WITH PURPOSE, WHICH IS ALONG THE LINES OF WHAT

09:52AM 17   CALJIC SAYS.

09:52AM 18       THE GOVERNMENT'S FIRST POSITION IS REALLY THIS INSTRUCTION

09:52AM 19   WILL INJECT CONFUSION, IT'S NOT WARRANTED, WILLFULLY IS NOT IN

09:52AM 20   THE STATUTE, AND THUS, THIS INSTRUCTION SHOULD NOT BE GIVEN.

09:52AM 21           THE COURT:  WELL, THANK YOU.

09:52AM 22       WE DO NOTE THAT WILLFULLY APPEARS.

09:52AM 23           MS. SAHARIA:  IT DOES.

09:52AM 24           THE COURT:  THERE ARE TWO PLACES WHERE IT'S USED.

09:52AM 25   THAT CAUSED ME SOME CONCERN.  I LOOKED AT THE NORA CASE THAT

| | | |
|---|---|---|
| 09:52AM | 1 | WAS CITED, 988 F.3D.  AND THAT SEEMED TO -- DID THAT INVOLVE A |
| 09:52AM | 2 | 1349 TYPE CASE? |
| 09:52AM | 3 | MS. SAHARIA:  IT DID, YOUR HONOR. |
| 09:52AM | 4 | THE COURT:  IT'S A FIFTH CIRCUIT CASE, I UNDERSTAND |
| 09:52AM | 5 | THAT, BUT IT DID PROVIDE SOME GUIDANCE AS TO WHEN YOU HAVE THE |
| 09:52AM | 6 | WORD WILLFULLY, LEAVING IT OUT THERE JUST ALONE IS -- THAT'S |
| 09:52AM | 7 | WHERE MY CONCERN WAS AS FAR AS JURY CONFUSION, AND DO WE NEED |
| 09:52AM | 8 | TO ANSWER THAT?  DO WE NEED TO TELL THEM WHAT IS WILLFULLY? |
| 09:53AM | 9 | WILL WE -- IF WE DON'T, WHAT DO WE DO IN THE FUTURE WHEN |
| 09:53AM | 10 | THE JURY SENDS A QUESTION OUT AND SAYS, "TELL US ABOUT |
| 09:53AM | 11 | WILLFULLY."  WHAT SHOULD WE DO WITH THAT? |
| 09:53AM | 12 | MS. VOLKAR:  I THINK, YOUR HONOR, WE SHOULD WAIT |
| 09:53AM | 13 | UNTIL THAT -- IF THAT OCCURS, WAIT UNTIL THAT OCCURS. |
| 09:53AM | 14 | THEN, OF COURSE, THE PARTIES MAY BE BACK HERE HAVING A |
| 09:53AM | 15 | SIMILAR DEBATE. |
| 09:53AM | 16 | BUT I DON'T THINK THAT IT IS CONFUSING IN THE BROADER |
| 09:53AM | 17 | CONTEXT THAT THE WORD "WILLFULLY" IS USED.  ESSENTIALLY IT'S |
| 09:53AM | 18 | NOT IN THE ELEMENTS OF CONSPIRACY OF INSTRUCTION 16 THAT WE |
| 09:53AM | 19 | WERE JUST TALKING ABOUT. |
| 09:53AM | 20 | IT IS TALKING ABOUT WILLFULLY PARTICIPATING AND WILLFULLY |
| 09:53AM | 21 | JOINING A CONSPIRACY.  AND, AGAIN, I DON'T THINK THAT THAT |
| 09:53AM | 22 | ALONE WOULD INJECT JUROR CONFUSION.  I THINK SOME PEOPLE COULD |
| 09:53AM | 23 | READ THAT TO SAY VOLUNTARILY AND NOT AGAINST YOUR WILL.  I |
| 09:53AM | 24 | THINK THAT'S ONE DEFINITION THAT COULD BE. |
| 09:53AM | 25 | BUT I ALSO WANT TO JUST STEP BACK TO THE DEFINITION THAT |

09:53AM   1    THE DEFENSE IS PROPOSING, THE DANGER THERE IS HEIGHTENING THE

09:54AM   2    MENS REA AND THERE IS A DEARTH OF NINTH CIRCUIT CASE LAW IN

09:54AM   3    THIS AREA.  I THINK BOTH SIDES ACKNOWLEDGE THAT BY NOT CITING

09:54AM   4    MORE FOR THE COURT TO LOOK AT.

09:54AM   5        BUT I WOULD ARGUE THAT THAT IS BECAUSE THE INTENT TO

09:54AM   6    DEFRAUD AND THE SPECIFIC INTENT OF THIS CONTEXT IS SO WELL

09:54AM   7    DEFINED, AND THE REASON THERE'S A DEARTH OF CASE LAW IS BECAUSE

09:54AM   8    THE NINTH CIRCUIT HAS NOT FOLLOWED THESE OTHER CIRCUITS THAT

09:54AM   9    HAVE REQUIRED A HIGHER MENS REA.

09:54AM  10        THE NINTH CIRCUIT, AS SHOWN IN MILLER AND OTHER VERY

09:54AM  11    RECENT CASES, KNOWS EXACTLY WHAT THE MENS REA IS IN THESE

09:54AM  12    CONTEXTS AND HAS REPEATEDLY AFFIRMED IT.

09:54AM  13        I'M NOT AWARE OF ANY DISTRICT COURT IN THIS DISTRICT, FOR

09:54AM  14    EXAMPLE, THAT HAS PROVIDED A WILLFULLY INSTRUCTION IN THE

09:54AM  15    CONSPIRACY TO COMMIT WIRE FRAUD CONTEXT WHEN THERE WASN'T ALSO

09:54AM  16    A SECURITIES FRAUD, TAX FRAUD, REGULATORY FRAUD CASE THAT I'VE

09:54AM  17    TALKED ABOUT.

09:54AM  18        SO I JUST HAVE NOT SEEN A COURT IN THIS DISTRICT GIVE THIS

09:54AM  19    INSTRUCTION WHEN IT'S JUST CONSPIRACY TO COMMIT WIRE FRAUD.

09:55AM  20            THE COURT:  THANK YOU.

09:55AM  21        WHEN I WAS LOOKING AT THIS, IF I WERE TO GIVE THIS, I

09:55AM  22    WOULD STOP AT LINE 4 AFTER THE WORD "FORBIDS" AND I WOULD NOT

09:55AM  23    GIVE THE REST OF THOSE TWO SENTENCES, OR THE REST OF THAT

09:55AM  24    SENTENCE AND THE FOLLOWING.  I JUST DON'T THINK THAT'S

09:55AM  25    APPROPRIATE.

| | | |
|---|---|---|
| 09:55AM | 1 | I DON'T THINK THAT CHANGES YOUR OPINION, MS. VOLKAR. |
| 09:55AM | 2 | MS. VOLKAR:  IT DOESN'T, YOUR HONOR. |
| 09:55AM | 3 | AND I JUST HAVE TO ADD THERE THAT WITH THE INTENT TO DO |
| 09:55AM | 4 | SOMETHING THE LAW FORBIDS, THAT GETS DANGEROUSLY CLOSE TO THE |
| 09:55AM | 5 | WILLFULLY DEFINITION FOR TAX FRAUD CASES, AND THE NINTH CIRCUIT |
| 09:55AM | 6 | HAS ACKNOWLEDGED THAT'S THE HIGHEST MENS REA ASSOCIATED WITH |
| 09:55AM | 7 | THESE REGULATORY FRAUD CASES. |
| 09:55AM | 8 | SO THERE'S JUST, THERE'S A LOT OF DANGER IN DOING THAT. |
| 09:55AM | 9 | IT'S HEIGHTENING THE MENS REA THAT THE JURY HAS TO FIND.  IT |
| 09:55AM | 10 | WOULD BE INAPPROPRIATE GIVEN THE CHARGES IN THIS CASE. |
| 09:55AM | 11 | THE COURT:  OKAY.  WELL, THANK YOU FOR THE COMMENT. |
| 09:55AM | 12 | THIS IS ONE I MIGHT THINK ABOUT A LITTLE BIT.  SO THANK |
| 09:55AM | 13 | YOU, THIS IS HELPFUL. |
| 09:56AM | 14 | LET'S MOVE TO 18.  I THINK WE'RE ON 18.  THIS IS 8.23, |
| 09:56AM | 15 | MODEL INSTRUCTION 8.23. |
| 09:56AM | 16 | THE SUGGESTED LANGUAGE FROM MS. HOLMES IS LINE 18. |
| 09:56AM | 17 | I'M NOT INCLINED TO GIVE THAT, MS. SAHARIA.  DO YOU WANT |
| 09:56AM | 18 | TO BE HEARD? |
| 09:56AM | 19 | MS. SAHARIA:  I DON'T NEED TO BE HEARD ON THAT ONE, |
| 09:56AM | 20 | YOUR HONOR. |
| 09:56AM | 21 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:56AM | 22 | LET ME JUST SAY I THINK THAT'S NEEDLESSLY DUPLICATIVE OF |
| 09:56AM | 23 | OTHER INFORMATION ALREADY PROVIDED. |
| 09:56AM | 24 | NOW WE'RE ON INSTRUCTION 19, WHICH IS THE PINKERTON.  I'LL |
| 09:56AM | 25 | GIVE THAT OVER YOUR OBJECTION, MS. SAHARIA. |

8697

| | | |
|---|---|---|
| 09:56AM | 1 | MS. SAHARIA:  THANK YOU, YOUR HONOR. |
| 09:56AM | 2 | THE COURT:  AND NOW WE'RE AT 20, WHICH IS WIRE |
| 09:56AM | 3 | FRAUD. |
| 09:56AM | 4 | MS. VOLKAR:  YOUR HONOR, I'LL TURN THE MIKE OVER TO |
| 09:56AM | 5 | MY COLLEAGUE, MR. LEACH. |
| 09:57AM | 6 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:57AM | 7 | THIS IS MODEL 8.124, MODEL 8.124. |
| 09:57AM | 8 | I'M ON ECF PAGE 26, AND IT LOOKS LIKE THERE'S NO |
| 09:57AM | 9 | DISCUSSION ON THE FIRST PAGE, EXCUSE ME -- YES, 26. |
| 09:57AM | 10 | ON ECF 27 THERE'S SOME SUGGESTIONS HERE. |
| 09:57AM | 11 | MS. SAHARIA:  YOUR HONOR, IF I MAY BE HEARD ON THE |
| 09:57AM | 12 | FIRST PAGE JUST VERY BRIEFLY? |
| 09:57AM | 13 | THE COURT:  SURE. |
| 09:57AM | 14 | MS. SAHARIA:  WE DID MISS ONE THING, WHICH IS IN THE |
| 09:57AM | 15 | FIRST PARAGRAPH, IT REFERS TO THE THIRD SUPERSEDING INDICTMENT. |
| 09:57AM | 16 | ELSEWHERE THE INSTRUCTIONS JUST SAY "THE INDICTMENT," WHICH WE |
| 09:57AM | 17 | THINK IS MORE APPROPRIATE. |
| 09:57AM | 18 | THE COURT:  YES. |
| 09:57AM | 19 | MS. SAHARIA:  AND WE JUST MISSED THAT ONE REFERENCE, |
| 09:57AM | 20 | SO I WOULD REQUEST THAT IT JUST SAY "THE INDICTMENT." |
| 09:57AM | 21 | THE COURT:  ANY OBJECTION TO THAT? |
| 09:57AM | 22 | MR. LEACH:  NO OBJECTION TO THAT, YOUR HONOR. |
| 09:57AM | 23 | THAT'S FINE. |
| 09:57AM | 24 | THE COURT:  OKAY.  ALL RIGHT.  THROUGHOUT THE |
| 09:57AM | 25 | INSTRUCTIONS I -- I DID NOTE THAT AS WELL.  THANK YOU.  SO |

09:58AM 1    THROUGHOUT THE INSTRUCTIONS IT SHOULD JUST REFERENCE THE

09:58AM 2    INDICTMENT.

09:58AM 3              MS. SAHARIA:  THAT'S OUR PREFERENCE, YOUR HONOR.

09:58AM 4              THE COURT:  AS TO EACH INSTRUCTION WHERE IT APPEARS.

09:58AM 5              MR. LEACH:  YES.

09:58AM 6              MS. SAHARIA:  THE ONLY OTHER THING I WOULD NOTE ON

09:58AM 7    THE FIRST PAGE IS, AGAIN, AS I DID ON CONSPIRACY, I DID WANT TO

09:58AM 8    RESTATE FOR THE RECORD OUR STATUTE OF LIMITATIONS OBJECTION TO

09:58AM 9    THESE VARIOUS COUNTS OF WIRE FRAUD, AND HAD THE COURT RULED

09:58AM 10   DIFFERENTLY ON THE MOTION TO DISMISS, WE WOULD BE ASKING FOR A

09:58AM 11   STATUTE OF LIMITATIONS INSTRUCTION TO THE JURY, WHICH WOULD

09:58AM 12   FORECLOSE MOST OF THESE COUNTS.

09:58AM 13         SO I JUST WANT TO RESTATE THAT OBJECTION FOR THE RECORD.

09:58AM 14              THE COURT:  OKAY.  THANK YOU.

09:58AM 15         WELL, LET ME JUST START OFF WITH MY OBSERVATIONS.  ON

09:58AM 16   PAGE -- DOCUMENT PAGE 26, ECF PAGE 27, LINES 1 AND 2, THE COURT

09:58AM 17   IS INCLINED TO CHANGE THAT -- THOSE TWO AND, CANDIDLY,

09:58AM 18   INCORPORATE THE LANGUAGE FROM PAGE 18, LINES 10 THROUGH 12,

09:59AM 19   WHICH WOULD READ, "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY

09:59AM 20   OF EACH SCHEME TO DEFRAUD, YOU MUST ALL UNANIMOUSLY AGREE WITH

09:59AM 21   RESPECT TO EACH COUNT THAT THE GOVERNMENT HAS PROVED EACH OF

09:59AM 22   THE FOLLOWING ELEMENTS BEYOND A REASONABLE DOUBT."

09:59AM 23              MS. SAHARIA:  THAT'S FINE, YOUR HONOR.

09:59AM 24              MR. LEACH:  COULD YOU SAY THAT ONE MORE TIME,

09:59AM 25   YOUR HONOR?

8699

| | | |
|---|---|---|
| 09:59AM | 1 | THE COURT:  SURE. |
| 09:59AM | 2 | "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY OF EACH SCHEME |
| 09:59AM | 3 | TO DEFRAUD, YOU MUST ALL UNANIMOUSLY AGREE WITH RESPECT TO EACH |
| 09:59AM | 4 | COUNT THAT THE GOVERNMENT HAS PROVED EACH OF THE FOLLOWING |
| 09:59AM | 5 | ELEMENTS BEYOND A REASONABLE DOUBT," AND THEN THERE'S A COLON |
| 09:59AM | 6 | THERE. |
| 09:59AM | 7 | MS. SAHARIA:  SO COULD I TAKE BACK MY PRIOR -- |
| 09:59AM | 8 | THE COURT:  YES. |
| 10:00AM | 9 | MS. SAHARIA:  -- THAT'S FINE, YOUR HONOR? |
| 10:00AM | 10 | I DO THINK YOUR HONOR SAID "IN ORDER FOR MS. HOLMES TO BE |
| 10:00AM | 11 | FOUND GUILTY OF EACH SCHEME TO DEFRAUD," AND "SCHEME TO |
| 10:00AM | 12 | DEFRAUD" IS JUST ONE ELEMENT OF WIRE FRAUD. |
| 10:00AM | 13 | SO I THINK PERHAPS WHAT IT SHOULD SAY IS, "TO BE FOUND |
| 10:00AM | 14 | GUILTY OF EACH COUNT OF WIRE FRAUD, YOU MUST ALL UNANIMOUSLY |
| 10:00AM | 15 | AGREE THAT THE GOVERNMENT HAS PROVED." |
| 10:00AM | 16 | I THINK IT'S NOT QUITE CORRECT TO CALL IT "TO BE FOUND |
| 10:00AM | 17 | GUILTY OF A SCHEME TO DEFRAUD," BECAUSE THESE ARE INDIVIDUAL |
| 10:00AM | 18 | COUNTS OF WIRE FRAUD. |
| 10:00AM | 19 | THE COURT:  WELL, I -- WHEN I LOOK BACK AT WHAT I |
| 10:00AM | 20 | TOLD YOU I'M QUOTING FROM, PAGE 18, LINES 10 THROUGH 12, IT |
| 10:00AM | 21 | ACTUALLY READS, "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY OF |
| 10:01AM | 22 | EITHER CHARGE." |
| 10:01AM | 23 | MS. SAHARIA:  CORRECT, BECAUSE THE CHARGES THERE ARE |
| 10:01AM | 24 | CONSPIRACY, AND HERE THE CHARGE IS NOT A SCHEME TO DEFRAUD, BUT |
| 10:01AM | 25 | WIRE FRAUD. |

10:01AM 1          THE COURT:  WIRE FRAUD, RIGHT.

10:01AM 2          MS. SAHARIA:  EXACTLY.

10:01AM 3          THE COURT:  I UNDERSTAND YOUR DISTINCTION THERE.

10:01AM 4       MR. LEACH?

10:01AM 5          MR. LEACH:  IF I UNDERSTAND THE COURT'S PROPOSAL,

10:01AM 6    IT'S, "IN ORDER FOR MS. HOLMES TO BE FOUND GUILTY OF EACH COUNT

10:01AM 7    OF WIRE FRAUD" OR CURRENTLY "SCHEME TO DEFRAUD, YOU MUST ALL

10:01AM 8    UNANIMOUSLY AGREE WITH RESPECT TO EACH COUNT THAT THE

10:01AM 9    GOVERNMENT HAS PROVED THE FOLLOWING," THAT WOULD BE FINE WITH

10:01AM 10   THE GOVERNMENT, YOUR HONOR.

10:01AM 11         THE COURT:  OKAY.  SO LET'S INSERT "COUNT OF WIRE

10:01AM 12   FRAUD" IN PLACE OF "SCHEME TO DEFRAUD."

10:01AM 13      MOVING DOWN.  THE NEXT IS LINE 5.  I WILL ACCEPT THE

10:01AM 14   OMITTED FACTS.

10:01AM 15         MS. SAHARIA:  MAY I BE HEARD ON THAT, YOUR HONOR?

10:02AM 16         THE COURT:  YES.

10:02AM 17         MS. SAHARIA:  I'D LIKE TO MAKE TWO POINTS WITH

10:02AM 18   RESPECT TO OMISSIONS, AND THIS PERMEATES THE INSTRUCTIONS,

10:02AM 19   THESE OBJECTIONS.

10:02AM 20         THE COURT:  OKAY.

10:02AM 21         MS. SAHARIA:  FIRST, AND I WANT TO BE CLEAR THAT I'M

10:02AM 22   DISTINGUISHING A PURE OMISSION DUTY TO DISCLOSE THEORY FROM THE

10:02AM 23   GOVERNMENT'S HALF-TRUTH THEORY, WHICH IS IN THE NEXT SENTENCE,

10:02AM 24   WHICH WE HAVE NOT OBJECTED TO.

10:02AM 25      BUT WHEN IT COMES TO A DUTY TO DISCLOSE, WHICH GIVES RISE

| | | |
|---|---|---|
| 10:02AM | 1 | TO A PURE OMISSION THEORY, I WANT TO TAKE THAT IN TWO PARTS. |
| 10:02AM | 2 | FIRST, WITH RESPECT TO THE PATIENT RELATED COUNTS, WE |
| 10:02AM | 3 | MOVED TO DISMISS THE INDICTMENT, AT THIS POINT I THINK ALMOST |
| 10:02AM | 4 | TWO YEARS AGO, INSOFAR AS AN ALLEGED OMISSIONS THEORY AND BASED |
| 10:02AM | 5 | ON A DUTY TO DISCLOSE, AND IN RESPONSE THE GOVERNMENT ARGUED |
| 10:02AM | 6 | THAT IT HAD ADEQUATELY ALLEGED AN OMISSIONS THEORY BASED ON A |
| 10:02AM | 7 | DUTY TO DISCLOSE ONLY AS TO INVESTORS.  THAT'S AT ECF 266, |
| 10:02AM | 8 | PAGE 9. |
| 10:02AM | 9 | IT DID NOT ARGUE THAT MS. HOLMES OWED A DUTY TO DISCLOSE |
| 10:03AM | 10 | AS TO PATIENTS. |
| 10:03AM | 11 | THE COURT'S RULING ON THE MOTION TO DISMISS HELD THAT THE |
| 10:03AM | 12 | GOVERNMENT HAD ALLEGED A DUTY TO DISCLOSE ONLY AS TO INVESTORS. |
| 10:03AM | 13 | THAT'S AT ECF 330 AT PAGES 24 TO 26. |
| 10:03AM | 14 | THE GOVERNMENT HAS NEVER CLAIMED IN THIS CASE IN RESPONSE |
| 10:03AM | 15 | TO ANY OF OUR ARGUMENTS WITH RESPECT TO OMISSIONS THAT |
| 10:03AM | 16 | MS. HOLMES COULD POSSIBLY HAVE AN INFORMAL FIDUCIARY TYPE OF |
| 10:03AM | 17 | RELATIONSHIP WITH PATIENTS, AND IT'S OUR POSITION THAT AS A |
| 10:03AM | 18 | RESULT, IF THE COURT IS GOING TO CHARGE AN OMISSIONS THEORY AT |
| 10:03AM | 19 | ALL, IT NEEDS TO BE LIMITED TO THE INVESTOR SCHEME AND NOT |
| 10:03AM | 20 | APPLIED TO THE PATIENT SCHEME, AND THAT WOULD REQUIRE SOME |
| 10:03AM | 21 | REVISIONS IF THE COURT IS GOING TO CHARGE ON OMISSIONS. |
| 10:03AM | 22 | THAT'S POINT ONE. |
| 10:03AM | 23 | NOW, WHEN IT COMES TO INVESTORS, THE COURT'S PRIOR RULING |
| 10:03AM | 24 | ON THE MOTION TO DISMISS ESTABLISHED ONLY THAT THE GOVERNMENT |
| 10:03AM | 25 | HAD ALLEGED FACTS GIVING RISE TO A DUTY TO DISCLOSE TO |

| | | |
|---|---|---|
| 10:03AM | 1 | INVESTORS. |
| 10:03AM | 2 | WE, OF COURSE, STAND ON OUR OBJECTIONS WITH RESPECT TO |
| 10:04AM | 3 | THAT RULING. |
| 10:04AM | 4 | BUT IT WAS STILL INCUMBENT ON THE GOVERNMENT TO COME |
| 10:04AM | 5 | FORWARD WITH EVIDENCE AT TRIAL THAT WOULD PERMIT A CHARGE TO |
| 10:04AM | 6 | THE JURY ON THIS THEORY, AND WE SUBMIT THAT THE GOVERNMENT HAS |
| 10:04AM | 7 | FAILED TO DO THAT. |
| 10:04AM | 8 | THE TEST FOR A DUTY TO DISCLOSE COMES FROM THE |
| 10:04AM | 9 | NINTH CIRCUIT'S DECISION IN UNITED STATES VERSUS SHIELDS, |
| 10:04AM | 10 | 844 F.3D 819. |
| 10:04AM | 11 | THAT CASE HOLDS THAT A DUTY TO DISCLOSE REQUIRES EITHER A |
| 10:04AM | 12 | FORMAL FIDUCIARY RELATIONSHIP OR AN INFORMAL TRUSTING |
| 10:04AM | 13 | RELATIONSHIP IN WHICH ONE PARTY ACTS FOR THE BENEFIT OF |
| 10:04AM | 14 | ANOTHER, AND INDUCES THE TRUSTING PART TO RELAX THE CARE AND |
| 10:04AM | 15 | VIGILANCE WHICH IT WOULD ORDINARILY EXERCISE. |
| 10:04AM | 16 | AND THERE ARE TWO PARTS TO THAT TEST.  ONE, ONE PARTY MUST |
| 10:04AM | 17 | ACT FOR THE BENEFIT OF ANOTHER; AND THEN IT MUST INDUCE THE |
| 10:04AM | 18 | TRUSTING PARTY TO RELAX CARE AND VIGILANCE. |
| 10:04AM | 19 | ON THAT LATTER ELEMENT, THE TRUST NEEDS TO BE CREATED BY |
| 10:04AM | 20 | THE DEFENDANT'S POSITION IN THE TRANSACTION.  THAT COMES FROM |
| 10:04AM | 21 | THE MILOVANOVIC CASE, 678 F.3D 713. |
| 10:05AM | 22 | NO EVIDENCE SATISFIES THIS TEST WHEN IT COMES TO THE |
| 10:05AM | 23 | INVESTORS.  THERE'S NO EVIDENCE THAT MS. HOLMES WAS ACTING FOR |
| 10:05AM | 24 | THE BENEFIT OF POTENTIAL INVESTORS AS OPPOSED TO FOR THE |
| 10:05AM | 25 | BENEFIT OF THERANOS.  THERE'S NO AGENCY TYPE OF RELATIONSHIP |

| | | |
|---|---|---|
| 10:05AM | 1 | BETWEEN MS. HOLMES AND POTENTIAL INVESTORS, NO EVIDENCE THAT |
| 10:05AM | 2 | HER POSITION IN THE RELATIONSHIP INDUCED INVESTORS TO RELAX THE |
| 10:05AM | 3 | CARE AND VIGILANCE THEY WOULD ORDINARILY EXERCISE. |
| 10:05AM | 4 | THE GOVERNMENT'S EVIDENCE ESTABLISHES NOTHING MORE THAN A |
| 10:05AM | 5 | NORMAL ARM'S LENGTH TRANSACTION, WHICH CANNOT SATISFY THE TEST |
| 10:05AM | 6 | FOR A DUTY TO DISCLOSE. |
| 10:05AM | 7 | EACH INVESTOR WITNESS WAS A SOPHISTICATED INVESTOR.  TWO |
| 10:05AM | 8 | WERE LARGE NATIONAL COMPANIES.  WALGREENS REPRESENTED IN ITS |
| 10:05AM | 9 | AGREEMENT WITH THERANOS THAT THERANOS WAS NOT ITS AGENT AND DID |
| 10:05AM | 10 | NOT HAVE AUTHORITY TO REPRESENT IT.  THAT'S TX 372, PAGE 19. |
| 10:05AM | 11 | SAFEWAY MADE THE SAME EXACT REPRESENTATION, TX 387, |
| 10:05AM | 12 | PAGE 21. |
| 10:06AM | 13 | THE OTHER INVESTORS WERE WEALTHY, EXPERIENCED INVESTORS, |
| 10:06AM | 14 | ALL OF WHOM AFFIRMED THAT THEY WERE ACCREDITED INVESTORS WITHIN |
| 10:06AM | 15 | THE MEANING OF THE S.E.C. RULES, AND THEIR AGREEMENTS WITH |
| 10:06AM | 16 | THERANOS AFFIRMATIVELY DISCLAIMED AN INFORMAL FIDUCIARY |
| 10:06AM | 17 | RELATIONSHIP WITH THERANOS. |
| 10:06AM | 18 | SECTION 4.3 OF THE INVESTOR AGREEMENT, TX 1505 IS ONE |
| 10:06AM | 19 | EXAMPLE, BUT THEY'RE ALL THE SAME, AND I QUOTE, "SUCH INVESTOR |
| 10:06AM | 20 | OR ITS PURCHASER REPRESENTATIVE CAN PROTECT ITS OWN INTERESTS." |
| 10:06AM | 21 | EACH INVESTOR CERTIFIED TO THAT, THAT THEY WERE NOT RELYING ON |
| 10:06AM | 22 | MS. HOLMES TO PROTECT THEIR INTERESTS, THEY WERE PROTECTING |
| 10:06AM | 23 | THEIR OWN INTERESTS. |
| 10:06AM | 24 | THEY ALSO CERTIFIED THAT EACH INVESTOR, QUOTE, "HAS SUCH |
| 10:06AM | 25 | KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS SO |

10:06AM 1     THAT SUCH INVESTOR IS CAPABLE OF EVALUATING THE MERITS AND

10:06AM 2     RISKS OF ITS INVESTMENT IN THE COMPANY."

10:06AM 3          SECTION 4.5, THEY WENT ON TO ACKNOWLEDGE THAT THEY WERE

10:07AM 4     NOT NECESSARILY RECEIVING ALL INFORMATION FROM THERANOS.  THEY

10:07AM 5     ACKNOWLEDGED THAT THE DISCUSSIONS AND INFORMATION THAT THEY

10:07AM 6     RECEIVED, QUOTE, "WERE INTENDED TO DESCRIBE CERTAIN ASPECTS OF

10:07AM 7     THE COMPANY'S BUSINESS AND PROSPECTS, BUT WERE NOT NECESSARILY

10:07AM 8     A THOROUGH OR EXHAUSTIVE DESCRIPTION."

10:07AM 9          THEY WERE THUS ADMITTING THAT THERE WAS SOME INFORMATION

10:07AM 10    THAT WAS NOT SHARED WITH THEM, IN OTHER WORDS, THAT THERE MAY

10:07AM 11    BE OMISSIONS, AND WE SUBMIT THAT TO IMPLY A DUTY TO DISCLOSE ON

10:07AM 12    THESE FACTS WITH THESE INVESTORS WOULD BE ERROR, IT WOULD

10:07AM 13    REWRITE THE PARTIES' AGREEMENTS, AND IT WOULD CREATE A DUTY

10:07AM 14    RESPECTIVELY THAT NEVER EXISTED IN REAL TIME.

10:07AM 15         WE STRENUOUSLY OBJECT TO ANY INSTRUCTION ON A DUTY TO

10:07AM 16    DISCLOSE OR OMISSIONS.

10:07AM 17              THE COURT:  ALL RIGHT.  THANK YOU.

10:07AM 18         MR. LEACH?

10:07AM 19              MR. LEACH:  YOUR HONOR, I THINK THE LANGUAGE IN THE

10:07AM 20    PROPOSED INSTRUCTION ON PAGE 27 FROM LINE 17 TO 21 CURES ALL OF

10:07AM 21    THE CONCERNS THAT MS. SAHARIA IS EXPRESSING, AND SHE'S CITED TO

10:08AM 22    EVIDENCE IN THE RECORD FROM WHICH A JURY MIGHT FIND THERE WAS

10:08AM 23    NO DUTY, AND I SUSPECT THOSE ARE ARGUMENTS THAT WILL BE MADE IN

10:08AM 24    CLOSING AND WILL GO TO THE WEIGHT OF THE EVIDENCE AND WHETHER

10:08AM 25    THERE'S A SUFFICIENT FOUNDATION HERE.

10:08AM 1      SO I THINK THE INSTRUCTION AT LEAST I ASSUME WE'RE

10:08AM 2  GETTING -- THE PORTION I ASSUME WE'RE GETTING TO LAYS OUT FOR

10:08AM 3  THE JURY EXACTLY WHAT IT NEEDS TO FIND FOR THIS OMISSIONS

10:08AM 4  THEORY TO WORK.

10:08AM 5      I DO THINK THAT THERE IS EVIDENCE IN THE RECORD THAT

10:08AM 6  SUPPORTS AN OMISSIONS THEORY, SPECIFICALLY WITH RESPECT TO SOME

10:08AM 7  OF THE EARLY INVESTORS, LIKE MR. EISENMAN AND MR. LUCAS WHO

10:08AM 8  SAID THAT THEY HAD BEEN LONG-TIME SHAREHOLDERS WITH THERANOS,

10:08AM 9  THEY GOT LIMITED INFORMATION FROM THEM, THEY GREW TO TRUST

10:08AM 10  MS. HOLMES AND, FOR LACK OF A BETTER WORD, LET THEIR GUARD

10:08AM 11  DOWN.

10:08AM 12      SO I THINK THERE ARE FACTS FROM WHICH A JURY COULD FIND

10:08AM 13  THIS PORTION OF THE INSTRUCTION SATISFIED, AND SO ON THAT BASIS

10:08AM 14  I THINK IT'S APPROPRIATE TO GIVE AN OMISSIONS INSTRUCTION HERE.

10:09AM 15      THEY'D MADE A LOT OF ARGUMENTS THAT GO TO THE WEIGHT OF

10:09AM 16  WHETHER THE JURY CAN OR CAN'T FIND THAT, BUT THE INSTRUCTIONS

10:09AM 17  AS THEY'RE WRITTEN ARE LAYING OUT THE PREDICATE FOR WHAT THE

10:09AM 18  OMISSIONS THEORY WOULD ENTAIL.

10:09AM 19      WITH RESPECT TO THE PATIENT POINT, I THINK WE'RE NOT

10:09AM 20  ARGUING A DUTY TO DISCLOSE TO PATIENTS BASED ON OMISSIONS.

10:09AM 21  THAT COULD BE CURED BY SIMPLY SAYING, "YOU MAY NOT CONVICT

10:09AM 22  MS. HOLMES OF A WIRE THEORY BASED ON OMISSIONS WITH RESPECT TO

10:09AM 23  COUNTS," WHATEVER THE PATIENT COUNTS ARE.  SO I THINK THERE IS

10:09AM 24  A WAY TO ADDRESS THAT.

10:09AM 25          THE COURT:  SO YOU AGREE WITH THE PATIENTS, THEY'RE

| | | |
|---|---|---|
| 10:09AM | 1 | NOT PART OF AN OMISSION? |
| 10:09AM | 2 | MR. LEACH:  I DO.  I WOULD WANT TO BE CAREFUL ON HOW |
| 10:09AM | 3 | THAT IS ADDRESSED BECAUSE I THINK WE SHOULD HAVE ONE |
| 10:09AM | 4 | INSTRUCTION FOR WIRE FRAUD AND NOT MULTIPLE INSTRUCTIONS. |
| 10:09AM | 5 | THE COURT:  SURE. |
| 10:09AM | 6 | MR. LEACH:  BUT WITH RESPECT TO THE INVESTORS, I DO |
| 10:09AM | 7 | THINK THERE ARE FACTS IN THE RECORD SUPPORTING THE ARGUMENT |
| 10:09AM | 8 | THAT INVESTORS LET THEIR GUARD DOWN IN PART BECAUSE OF THE |
| 10:09AM | 9 | TIGHTLY HELD NATURE OF INFORMATION THAT MS. HOLMES CONDUCTED |
| 10:10AM | 10 | HERSELF WITH, PARTLY BECAUSE OF THE LONG-TERM RELATIONSHIP WITH |
| 10:10AM | 11 | SOME OF THE INVESTORS WITH THERANOS, PART OF THE WAYS |
| 10:10AM | 12 | MS. HOLMES ENCOURAGED INVESTORS TO RELY SOLELY ON PUBLIC |
| 10:10AM | 13 | INFORMATION AS OPPOSED TO WHAT SHE WAS RECEIVING, AND I THINK |
| 10:10AM | 14 | THIS LANGUAGE AT 17 THROUGH 21 TELLS, ON PAGE 27, TELLS THE |
| 10:10AM | 15 | JURY EXACTLY WHAT THEY NEED TO FIND IN ORDER TO RELY ON OMITTED |
| 10:10AM | 16 | FACTS. |
| 10:10AM | 17 | THE COURT:  PAGE 27 OF THE DOCUMENT, NOT THE ECF |
| 10:10AM | 18 | PAGE? |
| 10:10AM | 19 | MR. LEACH:  PAGE 27 AT ECF -- OH, PAGE 28 OF THE |
| 10:10AM | 20 | ECF, YES, THANK YOU. |
| 10:10AM | 21 | THE COURT:  RIGHT. |
| 10:10AM | 22 | WHAT ABOUT MS. SAHARIA'S COMMENT THAT THE INVESTORS WERE |
| 10:10AM | 23 | UNDER A CONTRACTUAL RELATIONSHIP AND THAT THAT SHOULD OBVIATE |
| 10:10AM | 24 | ANY OTHER, ANY OTHER CONCERN ABOUT OMISSIONS BECAUSE THEY WERE |
| 10:10AM | 25 | UNDER CONTRACT? |

10:10AM  1          MR. LEACH:  I THINK THAT'S A WEIGHT ARGUMENT,

10:10AM  2   YOUR HONOR, NOT A, IS IT APPROPRIATE TO INSTRUCT ON THIS?

10:10AM  3   ALAN EISENMAN TESTIFIED THAT'S BOILER PLATE, THAT -- YOU KNOW,

10:11AM  4   THAT WAS HIS TESTIMONY.  AND SO HE'S SAYING, "YES, I SIGNED

10:11AM  5   THAT, BUT BOTH PARTIES KNEW THAT THAT'S BOILER PLATE THAT WE

10:11AM  6   HAVE TO DO TO DO THAT TRANSACTION."

10:11AM  7          AND IT'S A WEIGHT ARGUMENT.

10:11AM  8          THE COURT:  DOES THERE -- AND, MS. SAHARIA, DOES

10:11AM  9   THERE HAVE TO BE -- IF THERE WERE FURTHER REFINEMENT ON THIS,

10:11AM  10  THAT THE JURY FIND THAT THEY ACTED ON RELIANCE OR SOME OTHER

10:11AM  11  MEASURE FROM MS. HOLMES'S REPRESENTATION, THEN PERHAPS THAT

10:11AM  12  WOULD ALLOW FOR AN OMISSION IF THEIR CONTRACTUAL BELIEF WAS

10:11AM  13  OVERCOME BY REPRESENTATIONS, MISREPRESENTATIONS, I COULD SEE

10:11AM  14  WHERE IT MIGHT, IT MIGHT LIE THEN.

10:11AM  15         MS. SAHARIA:  I RESPECTFULLY THINK THAT WOULD NOT

10:11AM  16  SATISFY THE SHIELDS TEST BECAUSE A DUTY TO DISCLOSE DOES NOT

10:11AM  17  ARISE SIMPLY BECAUSE ONE PARTY IS MISLED BY ANOTHER.

10:11AM  18         IF THAT WERE THE CASE, THERE WOULD BE A DUTY TO DISCLOSE

10:12AM  19  ANY TIME THERE'S AN AFFIRMATIVE MISREPRESENTATION.

10:12AM  20         THE SHIELDS TEST REQUIRES THAT THERE BE SOMETHING AKIN TO

10:12AM  21  AN INFORMAL FIDUCIARY RELATIONSHIP, AND THAT IS IN WHICH ONE

10:12AM  22  PARTY IS ACTING FOR THE BENEFIT OF THE OTHER PARTY, SO AGENCY

10:12AM  23  TYPE SITUATIONS, WHICH WE SIMPLY DON'T HAVE HERE.

10:12AM  24         AND I DON'T QUITE UNDERSTAND MR. LEACH'S COMMENT THAT

10:12AM  25  INVESTORS LIKE MR. EISENMAN RELAXED THEIR DUTY OF CARE BECAUSE

10:12AM 1     THEY KNEW SHE WASN'T GIVING THEM ALL OF THE INFORMATION.

10:12AM 2         IF THEY KNEW SHE WASN'T GIVING THEM ALL OF THE

10:12AM 3     INFORMATION, THEN HOW COULD THERE POSSIBLY BE AN INFORMAL

10:12AM 4     FIDUCIARY RELATIONSHIP IN WHICH SHE HAD A DUTY TO DISCLOSE?

10:12AM 5     THEY KNEW THAT THEY WERE NOT RECEIVING ALL OF THE INFORMATION.

10:12AM 6         SO I DO NOT THINK THAT THERE IS EVIDENCE IN THE RECORD

10:12AM 7     THAT SUPPORTS THE GIVING OF THIS INFORMATION.

10:12AM 8         AND IT'S NO ANSWER TO SAY THAT, WELL, THE INSTRUCTION IS

10:12AM 9     IN HERE, SO THE JURY WILL JUST FOLLOW IT, BECAUSE ANY

10:12AM 10    INSTRUCTION NEEDS TO HAVE SOME EVIDENTIARY BASIS IN THE RECORD

10:12AM 11    BEFORE IT'S GIVEN TO THE JURY, AND WE AGAIN SUBMIT THERE'S JUST

10:13AM 12    NO EVIDENTIARY BASIS ON THIS RECORD TO INSTRUCT THE JURY THAT

10:13AM 13    THEY COULD FIND THAT THESE INVESTORS, THESE SOPHISTICATED

10:13AM 14    INVESTORS, HAD AN INFORMAL FIDUCIARY RELATIONSHIP WITH

10:13AM 15    MS. HOLMES.

10:13AM 16         THE COURT:  WELL, MR. LEACH, IS THERE -- MY SENSE IS

10:13AM 17    THAT THE GOVERNMENT'S THEORY IS THAT EVERYONE WAS MISLED.

10:13AM 18    DESPITE THEIR SOPHISTICATION, THEY WERE MISLED AND OVERCOME.

10:13AM 19         MR. LEACH:  YES, YOUR HONOR.

10:13AM 20         THE COURT:  AND IS THERE ANOTHER WAY TO GET YOUR

10:13AM 21    ARGUMENT IN TO INSTRUCT THE JURY ON THAT ABSENT AN OMISSION?

10:13AM 22         I'M TRYING TO SEE WHETHER -- IF IT'S A MISLEADING, IF

10:13AM 23    THAT'S THE GOVERNMENT'S CASE, THAT MS. HOLMES MISLED, DOES THAT

10:13AM 24    NECESSARILY CAPTURE OMISSION?  OR IS IT REALLY MISSTATEMENT?

10:13AM 25    OR ARE THEY THE SAME THING?

| | | |
|---|---|---|
| 10:13AM | 1 | MR. LEACH: I'M NOT SURE IF THAT WOULD CAPTURE IT, |
| 10:13AM | 2 | YOUR HONOR, AND PART OF THE CONCERN HERE IS THAT I THINK |
| 10:14AM | 3 | THERE'S GOING TO BE SOME FORM OF ARGUMENT THAT THE DEFENDANT |
| 10:14AM | 4 | CONTRACTED HER WAY OUT OF FRAUD, THAT SHE HAD THESE LENGTHY |
| 10:14AM | 5 | INVESTOR AGREEMENTS THAT DESCRIBED ACCESS TO INFORMATION, AND |
| 10:14AM | 6 | BECAUSE I DID THAT, I GET A FREE PASS FOR EVERYTHING I SAY TO |
| 10:14AM | 7 | THEM, INCLUDING INVESTORS WITH WHOM SHE HAD LONG-TERM |
| 10:14AM | 8 | RELATIONSHIPS OVER THE COURSE OF MANY, MANY YEARS, AND, YOU |
| 10:14AM | 9 | KNOW, SHE WAS A FIDUCIARY TO HER SHAREHOLDERS IN THE SENSE OF |
| 10:14AM | 10 | HER SERVING AS THE CEO. |
| 10:14AM | 11 | SO I'M NOT SURE THE COURT'S PROPOSAL WOULD SATISFY THE |
| 10:14AM | 12 | GOVERNMENT. |
| 10:14AM | 13 | AND AGAIN, THE JURY IS BEING INSTRUCTED ON WHAT IT'S |
| 10:14AM | 14 | REQUIRED TO FIND FOR THIS OMISSIONS THEORY TO WORK, AND IT CAN |
| 10:14AM | 15 | ACCEPT -- YOU KNOW, IF IN THE DEFENSE CLOSING IF THEY'RE SAYING |
| 10:14AM | 16 | THIS WAS NOT A FIDUCIARY RELATIONSHIP, LOOK AT THE CONTRACTS, |
| 10:14AM | 17 | THE JURY MAY ACCEPT THAT. |
| 10:14AM | 18 | THE JURY MAY ACCEPT ALAN EISENMAN'S TESTIMONY THAT, "YES, |
| 10:14AM | 19 | I SIGNED THIS, BUT I TRUSTED MS. HOLMES AND MR. BALWANI, THAT |
| 10:15AM | 20 | THEY WEREN'T LEADING ME ASTRAY HERE." |
| 10:15AM | 21 | SO I THINK SO LONG AS THE COURT IS LAYING OUT WHAT THE |
| 10:15AM | 22 | OMISSIONS THEORY REQUIRES, IT'S AN APPROPRIATE INSTRUCTION ON |
| 10:15AM | 23 | THE LAW AND THE PARTIES CAN ARGUE THE WEIGHT OF THE FACTS AS |
| 10:15AM | 24 | THEY SEE THEM THERE. |
| 10:15AM | 25 | THE COURT: SO NOTHING PRECLUDES MS. SAHARIA FROM |

10:15AM  1    ARGUING TO THE JURY, WITH YOUR INCLUSION HERE, NOTHING

10:15AM  2    PRECLUDES HER FROM ARGUING TO THE JURY THAT THERE IS NO

10:15AM  3    OMISSIONS IN THIS CASE BECAUSE LOOK AT THE CONTRACT, AND THAT'S

10:15AM  4    A FACTUAL FINDING THAT THEY CAN MAKE, THAT THE CONTRACT

10:15AM  5    SUGGESTS THAT THERE'S NO FIDUCIARY RELATIONSHIP.

10:15AM  6              MR. LEACH:  YES.

10:15AM  7              THE COURT:  AND THEREFORE, IT DOESN'T LIE.

10:15AM  8         AND WHAT IS THE OMISSION THEORY THEN?  IS IT THAT

10:15AM  9    MS. HOLMES OMITTED THE FINANCIAL -- THE TRUE FINANCIAL STATUS

10:15AM  10   OF THE BUSINESS, THE TRUE BUSINESS RELATIONSHIPS WITH THIRD

10:15AM  11   PARTIES?  IS THAT THE OMISSION, OR IS THAT A MISREPRESENTATION?

10:15AM  12        I'M BACK TO THAT DISTINCTION.

10:16AM  13             MR. LEACH:  I THINK THERE ARE BOTH FALSE

10:16AM  14   REPRESENTATIONS AND OMISSIONS.  I THINK ONE COULD ARGUE THAT

10:16AM  15   HAVING A DEMO WITH THE MINILAB AS THE DEVICE IN THE ROOM AND

10:16AM  16   SAYING, HERE IS HOW WE DO PATIENT TESTING, THAT THAT IS A

10:16AM  17   DECEITFUL HALF-TRUTH IF THEY'RE DOING TESTING WITH THIRD PARTY

10:16AM  18   SIEMENS MACHINES.

10:16AM  19        I THINK WITHOUT THE DEVICE THERE, OR WITHOUT SOME OTHER

10:16AM  20   STATEMENTS SIMPLY OMITTING THE FACT THAT THEY'RE USING MODIFIED

10:16AM  21   THIRD PARTY DEVICES MIGHT BE A PURE OMISSION.

10:16AM  22        SO I THINK IT'S A BLEND OF FALSE STATEMENTS, HALF-TRUTHS,

10:16AM  23   WHICH DO BY THEMSELVES GIVE RISE TO A DUTY TO DISCLOSE, AND, IN

10:16AM  24   SOME CIRCUMSTANCES, PURE OMISSIONS, YOUR HONOR.

10:16AM  25             THE COURT:  SO, MS. SAHARIA, WHY DOESN'T LINE 17,

UNITED STATES COURT REPORTERS

**ER-12285**

| 10:16AM | 1 | WHY DON'T THOSE ALLOW YOU TO ARGUE SUCH THAT YOU'RE PROTECTED? |
| 10:17AM | 2 | MS. SAHARIA:  WELL, THEY DO ALLOW US TO ARGUE, |
| 10:17AM | 3 | YOUR HONOR. |
| 10:17AM | 4 | BUT, AGAIN, I COME BACK TO THE POINT THAT THE COURT SHOULD |
| 10:17AM | 5 | NOT BE INSTRUCTING ON A THEORY THAT LACKS EVIDENTIARY BASIS, |
| 10:17AM | 6 | AND I STILL HAVEN'T HEARD ANY EVIDENTIARY BASIS FOR THERE BEING |
| 10:17AM | 7 | AN INFORMAL FIDUCIARY RELATIONSHIP. |
| 10:17AM | 8 | IT'S NOT JUST ENOUGH THAT ONE PARTY BELIEVES THE OTHER, OR |
| 10:17AM | 9 | THAT ONE PARTY TRUSTS THE OTHER.  THAT'S NOT WHAT THE SHIELDS |
| 10:17AM | 10 | TEST STATES.  IT STATES THAT ONE PARTY NEEDS TO BE ACTING FOR |
| 10:17AM | 11 | THE OTHER, FOR THE BENEFIT OF THE OTHER, AND THAT'S NOT THE |
| 10:17AM | 12 | KIND OF RELATIONSHIP THAT WE HAVE HERE.  SO I JUST COME BACK TO |
| 10:17AM | 13 | THAT. |
| 10:17AM | 14 | THERE'S NO EVIDENTIARY BASIS FOR THIS. |
| 10:17AM | 15 | MR. LEACH'S EXAMPLES WERE ALL HALF-TRUTH TYPE OF EXAMPLES |
| 10:17AM | 16 | TO IMPLY -- THAT'S DISTINCT.  WE'RE NOT TALKING ABOUT |
| 10:17AM | 17 | HALF-TRUTHS.  WE'RE TALKING ABOUT A PURE DUTY TO DISCLOSE. |
| 10:17AM | 18 | THE ARGUMENT THAT THEY MIGHT MAKE IN CLOSING THAT |
| 10:17AM | 19 | MS. HOLMES HAD A DUTY TO TELL INVESTORS EVERY SINGLE THING |
| 10:17AM | 20 | ABOUT THE COMPANY, EVEN IF SHE DIDN'T SAY ANYTHING ABOUT THOSE |
| 10:17AM | 21 | ASPECTS OF THE COMPANY, THAT'S THE DANGER OF A DUTY TO DISCLOSE |
| 10:18AM | 22 | THEORY IN THIS CASE. |
| 10:18AM | 23 | THE COURT:  MR. LEACH, ANYTHING FURTHER? |
| 10:18AM | 24 | MR. LEACH:  I DON'T BELIEVE IT'S THE GOVERNMENT'S |
| 10:18AM | 25 | INTENTION TO ARGUE THAT SHE HAD A DUTY TO DISCLOSE EVERY SINGLE |

8712

| 10:18AM | 1 | FACT ABOUT THERANOS, AND WE SUBMIT THIS INSTRUCTION IS |
| 10:18AM | 2 | APPROPRIATE AS WORDED AND THE INCLUSION OF LINES 17 THROUGH 21 |
| 10:18AM | 3 | GIVE THE DEFENSE THE LATITUDE TO ARGUE THE GOVERNMENT SIMPLY |
| 10:18AM | 4 | HASN'T MET ITS BURDEN THERE. |
| 10:18AM | 5 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:18AM | 6 | I'M GOING TO LOOK AT THIS SOME MORE, AND I APPRECIATE YOUR |
| 10:18AM | 7 | COMMENTS ON THIS. |
| 10:18AM | 8 | MS. SAHARIA:  THANK YOU, YOUR HONOR. |
| 10:18AM | 9 | THE COURT:  LET'S SEE. |
| 10:18AM | 10 | MS. SAHARIA:  I THINK WE'RE UP TO A SCHEME TO |
| 10:18AM | 11 | DEFRAUD.  THIS IS LINE 5 ON ECF PAGE 27. |
| 10:19AM | 12 | THIS IS THE LANGUAGE THAT THE COURT INCLUDED IN THE |
| 10:19AM | 13 | PRELIMINARY INSTRUCTIONS. |
| 10:19AM | 14 | THE COURT:  I WAS LOOKING AT LINE 7, EXPRESSIONS OF |
| 10:19AM | 15 | OPINIONS, ASPIRATIONS, ET CETERA.  THAT'S WHAT MS. HOLMES IS |
| 10:19AM | 16 | ASKING. |
| 10:19AM | 17 | AND I'M WONDERING ABOUT, IS THIS RELATED TO GOOD FAITH, A |
| 10:19AM | 18 | GOOD FAITH INSTRUCTION? |
| 10:19AM | 19 | MS. SAHARIA:  WELL, IT IS, YOUR HONOR.  INSOFAR AS |
| 10:19AM | 20 | WE TALKED ABOUT LAST WEEK, WE THINK THERE IS NINTH CIRCUIT CASE |
| 10:19AM | 21 | LAW THAT I ACKNOWLEDGE SAYS THAT THESE KIND OF PUFFERY |
| 10:19AM | 22 | INSTRUCTIONS ARE NOT NECESSARY WHEN THE COURT INSTRUCTS ON THE |
| 10:19AM | 23 | CONCEPT OF GOOD FAITH. |
| 10:19AM | 24 | AND SO I ACKNOWLEDGE THAT IF THE COURT WERE TO GIVE A GOOD |
| 10:20AM | 25 | FAITH, I WOULD HAVE A HARD TIME STANDING HERE AND ASKING THE |

| | | |
|---|---|---|
| 10:20AM | 1 | COURT TO ALSO GIVE THIS INSTRUCTION, AND IT'S OUR PREFERENCE |
| 10:20AM | 2 | THAT THE COURT GIVE A GOOD FAITH INSTRUCTION AS OPPOSED TO THIS |
| 10:20AM | 3 | ONE. |
| 10:20AM | 4 | THE COURT:  I SEE.  THAT WAS MY NEXT QUESTION, WHAT |
| 10:20AM | 5 | IS YOUR PREFERENCE? |
| 10:20AM | 6 | MS. SAHARIA:  THAT'S OUR PREFERENCE, BUT WE'LL TALK |
| 10:20AM | 7 | ABOUT WHAT THE GOOD FAITH INSTRUCTION SAYS.  I DON'T WANT TO |
| 10:20AM | 8 | CONCEDE THAT ALL THE WAY YET. |
| 10:20AM | 9 | THE COURT:  SO JUST RETURNING TO LINE 5, I'M SORRY. |
| 10:20AM | 10 | THE COURT WILL GIVE, INTENDS TO GIVE THE HIGHLIGHTED, THAT ONE |
| 10:20AM | 11 | SENTENCE THAT ENDS AT LINE 6, "A SCHEME TO DEFRAUD IS A |
| 10:20AM | 12 | DECEPTIVE SCHEME TO DEPRIVE A PERSON OF MONEY OR PROPERTY." |
| 10:20AM | 13 | AND THEN THERE'S NO OBJECTION TO THE FOLLOWING SENTENCE. |
| 10:20AM | 14 | WE WERE TALKING ABOUT THIS EXPRESSION, WHICH IS -- AND |
| 10:20AM | 15 | THAT'S PULLED, I THINK -- YOUR FOOTNOTE THERE CITES FROM CIVIL |
| 10:20AM | 16 | CASES.  AND I THINK THOSE ARE ALL CIVIL CASES -- |
| 10:20AM | 17 | MS. SAHARIA:  THAT'S CORRECT. |
| 10:21AM | 18 | THE COURT:  -- THAT CITE TO. |
| 10:21AM | 19 | MR. LEACH, ANYTHING ON THIS? |
| 10:21AM | 20 | MR. LEACH:  CIVIL CASES INCLUDING A LANHAM ACT CASE |
| 10:21AM | 21 | AND NOT A WIRE FRAUD CASE, AND I THINK THE AUTHORITY CITED IS A |
| 10:21AM | 22 | VERY THIN READ FOR TINKERING WITH THE MODEL HERE. |
| 10:21AM | 23 | I ALSO THINK IT'S ARGUMENTATIVE AND SIMPLY NOT NECESSARY. |
| 10:21AM | 24 | THE COURT:  OKAY.  WELL, I LOOKED AT THIS AND I'M |
| 10:21AM | 25 | NOT INCLINED TO GIVE THIS.  AND I KNOW WE'LL HAVE A DISCUSSION |

10:21AM   1    ABOUT GOOD FAITH IN A MOMENT.

10:21AM   2         THIS IS REALLY -- WHAT I'M CAPTURING HERE IS THE

10:21AM   3    EXPRESSIONS OF OPINION, I THINK ASPIRATIONS AND THOSE TYPES OF

10:21AM   4    THINGS THAT WE'VE HEARD ABOUT.

10:21AM   5         LET'S SEE.  MOVING DOWN ON LINE 9 NOW, FACTS OMITTED,

10:21AM   6    WE'LL HAVE TO DEAL WITH THAT.

10:22AM   7              MS. SAHARIA:  THAT'S THE SAME ISSUE.

10:22AM   8              THE COURT:  RIGHT, RIGHT.  WE'LL HAVE TO DEAL WITH

10:22AM   9    THAT AND I'LL THINK ABOUT THAT.

10:22AM  10         LINE 10, FACTS -- EXCUSE ME, "STATEMENTS ARE MATERIAL IF,"

10:22AM  11    AND THEN THE BLUE IS MS. HOLMES'S.

10:22AM  12              MS. SAHARIA:  CORRECT, YOUR HONOR.  WE JUST THINK

10:22AM  13    IT'S IMPORTANT TO CONVEY TO THE JURY THAT IT CAN CONSIDER THE

10:22AM  14    WHOLE CONTEXT OF THE STATEMENTS TO DETERMINE THEIR MATERIALITY,

10:22AM  15    AND THAT COMES FROM THE DISTRICT COURT'S OPINION IN BOGUCKI,

10:22AM  16    WHICH IS A GOOD EXAMPLE OF THE COURT CONSIDERING THE CONTEXT IN

10:22AM  17    WHICH STATEMENTS WERE MADE TO DETERMINE WHETHER OR NOT THEY

10:22AM  18    WERE MATERIAL.

10:22AM  19              MR. LEACH:  I THINK IT UNNECESSARILY DEVIATES FROM

10:22AM  20    THE MODEL, YOUR HONOR.  THE BOGUCKI CASE, THAT'S A HOLDING ON A

10:22AM  21    RULE 29 MOTION, NOT AN ARTICULATION OF THE APPROPRIATE JURY

10:22AM  22    INSTRUCTION.

10:22AM  23         I THINK THE MODEL CAPTURES WHAT IS REQUIRED, WHICH IS THAT

10:22AM  24    THE STATEMENTS HAD A NATURAL TENDENCY TO INFLUENCE OR WERE

10:22AM  25    CAPABLE OF INFLUENCING A PERSON TO PART WITH MONEY OR PROPERTY.

10:22AM   1          SO I DON'T THINK IT'S NECESSARY TO MAKE ANY CHANGES THERE.

10:23AM   2               THE COURT:  THANK YOU.  I'M INCLINED TO STICK WITH

10:23AM   3     THE MODEL ON THIS, MS. SAHARIA, AND NOT GIVE YOUR HIGHLIGHTED

10:23AM   4     SUGGESTION THERE.

10:23AM   5               MS. SAHARIA:  UNDERSTOOD.

10:23AM   6               THE COURT:  AND IT WILL CONTINUE TO THE END.

10:23AM   7          NOW WE'RE ON -- I BELIEVE WE'RE ON LINE 12.

10:23AM   8               MS. SAHARIA:  CORRECT.

10:23AM   9          SO I THINK THE PARTIES ARE FAIRLY CLOSE HERE.  SO THE

10:23AM  10     MODEL INSTRUCTION IS "THE INTENT TO DECEIVE AND CHEAT."  IT

10:23AM  11     USED TO BE "CHEAT OR DECEIT," AND YOUR HONOR KNOWS IT WAS NOW

10:23AM  12     CHANGED TO "DECEIVE AND CHEAT."

10:23AM  13          THE WORD "CHEAT" BY ITSELF I ACTUALLY THINK IS RATHER

10:23AM  14     VAGUE AND UNHELPFUL TO A JURY.

10:23AM  15          SO THE PARTIES HAVE BOTH AGREED TO SAY, "THAT IS, TO

10:23AM  16     DEPRIVE SOMEONE OF MONEY OR PROPERTY" TO HELP THE JURY

10:23AM  17     UNDERSTAND WHAT "CHEAT" MEANS.

10:23AM  18          THE DISPUTE IS BETWEEN THE GOVERNMENT'S PROPOSAL, WHICH IS

10:24AM  19     TO SAY "MEANS OF DECEPTION," AND OUR PROPOSAL, WHICH IS TO SAY,

10:24AM  20     "DECEIVING THAT PERSON."

10:24AM  21               THE COURT:  RIGHT.

10:24AM  22               MS. SAHARIA:  AND THE REASON FOR "DECEIVING THAT

10:24AM  23     PERSON" IS TO INCORPORATE THE CONVERGENCE PRINCIPLE THAT WE'VE

10:24AM  24     TALKED ABOUT IN THIS CASE BEFORE, WHICH COMES FROM THE NINTH

10:24AM  25     CIRCUIT'S DECISION IN UNITED STATES CIRCUIT LEW, L-E-W, AND

| | | |
|---|---|---|
| 10:24AM | 1 | THAT'S AN IMPORTANT CONCEPT IN THIS CASE WHERE WE DO HAVE |
| 10:24AM | 2 | CLAIMS THAT REPRESENTATIONS WERE MADE TO INDIVIDUALS WHO WERE |
| 10:24AM | 3 | NOT THE PERSON WHO WAS BEING DEPRIVED OF MONEY OR PROPERTY, IN |
| 10:24AM | 4 | THIS CASE THE PAYING PATIENTS, AND WE HAD A LOT OF DISCUSSION |
| 10:24AM | 5 | AROUND THE FACT THAT THE GOVERNMENT, SOME OF ITS ALLEGATIONS |
| 10:24AM | 6 | RELATE TO REPRESENTATIONS MADE PERHAPS TO DOCTORS AND NOT TO |
| 10:24AM | 7 | PATIENTS. |
| 10:24AM | 8 | SO WE JUST THINK IT'S IMPORTANT FOR THE JURY TO HAVE |
| 10:24AM | 9 | LANGUAGE THAT TIES THE PERSON BEING DEPRIVED TO THE DECEPTION |
| 10:24AM | 10 | TO INCORPORATE THE CONVERGENCE PRINCIPLE OF LEW. |
| 10:24AM | 11 | THE COURT:  LEW WAS THE IMMIGRATION ATTORNEY, I |
| 10:25AM | 12 | BELIEVE. |
| 10:25AM | 13 | MS. SAHARIA:  CORRECT. |
| 10:25AM | 14 | THE COURT:  AND THE REAL DEFRAUDED PERSON WAS NOT |
| 10:25AM | 15 | THE CLIENTS, BUT THE GOVERNMENT, I THINK. |
| 10:25AM | 16 | MS. SAHARIA:  THAT'S RIGHT, YOUR HONOR. |
| 10:25AM | 17 | THE COURT:  RIGHT. |
| 10:25AM | 18 | MR. LEACH:  YOUR HONOR, I THINK THE COURT CURED THE |
| 10:25AM | 19 | LEW PROBLEM, TO THE EXTENT THAT THE COURT SAW IT, WITH ITS |
| 10:25AM | 20 | ORDER ON THE MOTION TO DISMISS WHERE, YOU KNOW, THE COUNTS ON |
| 10:25AM | 21 | THE PATIENTS ARE COUNTS TO DEFRAUD PAYING PATIENTS. |
| 10:25AM | 22 | AND IN A SCHEME TO DEFRAUD, YOU CERTAINLY CAN USE MEANS OF |
| 10:25AM | 23 | DECEPTION DIRECTED AT A THIRD PARTY IF THE VICTIM IS CLOSELY |
| 10:25AM | 24 | CONNECTED TO THAT THIRD PARTY. |
| 10:25AM | 25 | YOU KNOW, I THINK THIS WOULD GIVE A, AN UNDULY NARROW VIEW |

| | | |
|---|---|---|
| 10:25AM | 1 | OF HOW WIRE FRAUD CAN BE COMMITTED. |
| 10:25AM | 2 | I WOULD ALSO SAY THE MODEL INSTRUCTION STOPS AT, "THAT IS, |
| 10:25AM | 3 | THE INTENT TO DECEIVE AND CHEAT."  WE'RE ALREADY GETTING INTO |
| 10:25AM | 4 | LAND HERE WHERE WE'RE EXPANDING FROM THE MODEL, AND I THINK IF |
| 10:25AM | 5 | WE'RE GOING TO DO THAT, "MEANS OF DECEPTION" IS CONSISTENT WITH |
| 10:25AM | 6 | THE LANGUAGE OF "SCHEME TO DEFRAUD" AND "OBTAIN MONEY OR |
| 10:25AM | 7 | PROPERTY BY MEANS OF FALSE AND FRAUDULENT MISREPRESENTATIONS." |
| 10:26AM | 8 | THERE'S NO LEW PROBLEM THE WAY THE CASE IS CURRENTLY |
| 10:26AM | 9 | CHARGED, AND WE WOULD URGE THE COURT, IF IT'S GOING TO GO |
| 10:26AM | 10 | BEYOND THE MODEL, TO USE "MEANS OF DECEPTION." |
| 10:26AM | 11 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:26AM | 12 | I LOOKED AT THIS AND I APPRECIATE IT.  I WILL GIVE THE |
| 10:26AM | 13 | "MEANS OF DECEPTION."  I THINK THAT'S THE APPROPRIATE |
| 10:26AM | 14 | INSTRUCTION. |
| 10:26AM | 15 | SO IT WOULD READ, "THIRD, MS. HOLMES ACTED WITH THE INTENT |
| 10:26AM | 16 | TO DEFRAUD, THAT IS, THE INTENT TO DECEIVE AND CHEAT.  THE |
| 10:26AM | 17 | INTENT TO DECEIVE AND CHEAT MEANS AN INTENT TO DEPRIVE SOMEONE |
| 10:26AM | 18 | OF MONEY OR PROPERTY BY MEANS OF DECEPTION." |
| 10:26AM | 19 | MS. SAHARIA:  THAT'S BETTER THAN THE TO THAT IS, |
| 10:26AM | 20 | WHICH WE DIDN'T CATCH. |
| 10:26AM | 21 | MR. LEACH:  WE AGREE, YOUR HONOR. |
| 10:26AM | 22 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:26AM | 23 | MS. SAHARIA:  I STILL STAND ON MY OBJECTION TO |
| 10:26AM | 24 | "DECEIVING THAT PERSON" -- TO NOT INCLUDING "DECEIVING THAT |
| 10:27AM | 25 | PERSON," BUT I AGREE WITH THE COURT'S GRAMMATICAL REPHRASING OF |

```
10:27AM   1       THE SENTENCE.

10:27AM   2               THE COURT:  ALL RIGHT.  THANK YOU, AND YOUR

10:27AM   3       OBJECTION IS NOTED.

10:27AM   4           NEXT WE'RE DOWN TO, I THINK IT'S LINE 17.

10:27AM   5           AND I WANTED TO ASK, IS THE GOVERNMENT GOING TO ARGUE THE

10:27AM   6       UNPROFITABILITY OR THE FAILURE OF A COMPANY IN ANY MANNER?  I

10:27AM   7       SEE THAT IS SOMEWHAT CAPTURED HERE IN THE HIGHLIGHTED, "A

10:27AM   8       SCHEME TO DEFRAUD MUST MISREPRESENT AN ESSENTIAL ELEMENT OF THE

10:27AM   9       BARGAIN.  A SCHEME TO DEFRAUD IS NOT TO BE INFERRED SOLELY

10:27AM  10       BECAUSE A VENTURE TURNED OUT TO BE UNPROFITABLE OR FAILED."

10:27AM  11           AND I JUST -- MR. LEACH, CAN YOU JUST HELP ME OUT ON THAT?

10:27AM  12       IS THAT SOMETHING THAT YOU'RE GOING TO DO?  AND IF YOU'RE NOT,

10:27AM  13       THEN WHY DO WE NEED THIS IN THE INSTRUCTIONS IS MY THOUGHT.

10:27AM  14               MR. LEACH:  I DON'T THINK WE NEED THIS IN THE

10:27AM  15       INSTRUCTIONS, YOUR HONOR.

10:27AM  16           IT IS NOT OUR INTENTION TO ARGUE THE FACT THAT THERANOS

10:28AM  17       FAILED, BY ITSELF, IS SUFFICIENT EVIDENCE TO FIND WIRE FRAUD.

10:28AM  18           WE INTEND TO ARGUE THAT MS. HOLMES MADE FALSE

10:28AM  19       REPRESENTATIONS TO INVESTORS AND PATIENTS TO INDUCE THEM INTO

10:28AM  20       THE TRANSACTIONS.

10:28AM  21           WE WORRY ABOUT THAT -- SO IT'S NOT OUR INTENTION TO SAY

10:28AM  22       THAT SIMPLY BECAUSE THERANOS FAILED, YOU MAY CONVICT.

10:28AM  23           CERTAINLY THE FACT THAT THERANOS FAILED IS OUT THERE, BUT

10:28AM  24       IT'S NOT OUR INTENTION TO MAKE ANY ARGUMENT THAT THAT FACT,

10:28AM  25       STANDING ALONE, IS A BASIS FOR A CONVICTION.
```

| | | |
|---|---|---|
| 10:28AM | 1 | WITH RESPECT TO THE FIRST SENTENCE, YOUR HONOR, MY CONCERN |
| 10:28AM | 2 | ABOUT THIS IS, A, IT'S IMPORTING CONCEPTS FROM OUT OF CIRCUIT |
| 10:28AM | 3 | CASES AND I FEEL THAT WE'RE STRAYING FAR FROM WHAT THE |
| 10:28AM | 4 | NINTH CIRCUIT SAID HERE. |
| 10:28AM | 5 | BUT MORE FUNDAMENTALLY, AND THIS GOES BACK TO SOME OF THE |
| 10:28AM | 6 | CONTRACTS, I'M WORRIED THE DEFENSE IS GOING TO ARGUE, YOU KNOW, |
| 10:29AM | 7 | THE BARGAIN HERE WAS YOU'RE MAKING A SPECULATIVE INVESTMENT, |
| 10:29AM | 8 | YOU HAVE ALL OF THE ACCESS YOU POSSIBLY COULD HAVE, AND |
| 10:29AM | 9 | THEREFORE, YOU WEREN'T DEFRAUDED EVEN THOUGH OTHER |
| 10:29AM | 10 | REPRESENTATIONS WERE MADE TO YOU. |
| 10:29AM | 11 | SO I THINK THIS LANGUAGE HERE IS A LITTLE BIT DANGEROUS. |
| 10:29AM | 12 | AND IT IS NOT OUR INTENTION TO ARGUE THAT WIRE FRAUD IS |
| 10:29AM | 13 | ANYTHING OTHER THAN WHAT THE COURT HAS OUTLINED IN THE |
| 10:29AM | 14 | INSTRUCTIONS ABOVE. |
| 10:29AM | 15 | SO WE THINK THIS IS UNNECESSARY, IT'S POSSIBLY MISLEADING |
| 10:29AM | 16 | AND COULD CONFUSE THE JURY THAT SOMEHOW, BECAUSE OF SOME |
| 10:29AM | 17 | CONTRACTUAL LANGUAGE ABOUT THE SPECULATIVE NATURE OF AN |
| 10:29AM | 18 | INVESTMENT, THAT INVESTORS GOT WHAT THEY BARGAINED FOR AND YOU |
| 10:29AM | 19 | SHOULD FIND THAT THEY WEREN'T DEFRAUDED. |
| 10:29AM | 20 | MS. SAHARIA:  SO IF I MAY ADDRESS THE FIRST |
| 10:29AM | 21 | SENTENCE, YOUR HONOR? |
| 10:29AM | 22 | THE COURT:  YES. |
| 10:29AM | 23 | MS. SAHARIA:  OUR CONCERN WITH THE FIRST SENTENCE |
| 10:29AM | 24 | REALLY GOES NOT TO THE INVESTOR COUNTS, BUT TO THE PATIENT |
| 10:29AM | 25 | COUNTS. |

| 10:29AM | 1 | AND THIS IS INTENDED TO REFLECT THE PRINCIPLE WHICH WE'VE |
| 10:30AM | 2 | ADDRESSED BEFORE, WHICH IS THAT MERELY TRICKING SOMEONE INTO |
| 10:30AM | 3 | ENTERING INTO A TRANSACTION IS NOT WIRE FRAUD IF THEY GOT WHAT |
| 10:30AM | 4 | THEY PAID FOR. |
| 10:30AM | 5 | YOU HAVE TO INDUCE THEM TO ENTER THE TRANSACTION BY |
| 10:30AM | 6 | MISREPRESENTING AN ESSENTIAL ELEMENT OF THE BARGAIN. |
| 10:30AM | 7 | HERE, MANY PATIENTS RECEIVED ACCURATE AND RELIABLE BLOOD |
| 10:30AM | 8 | TESTS. |
| 10:30AM | 9 | AND SO THE GOVERNMENT CANNOT PROVE WIRE FRAUD BY SHOWING |
| 10:30AM | 10 | THAT THOSE PATIENTS MIGHT NOT HAVE BOUGHT A THERANOS BLOOD TEST |
| 10:30AM | 11 | IF THEY SIMPLY KNEW X, Y, OR Z, IF WHAT THEY GOT WAS AN |
| 10:30AM | 12 | ACCURATE AND RELIABLE TEST. |
| 10:30AM | 13 | AND BECAUSE MANY PATIENTS DID GET ACCURATE AND RELIABLE |
| 10:30AM | 14 | TESTS -- |
| 10:30AM | 15 | THE COURT:  BECAUSE?  I'M SORRY? |
| 10:30AM | 16 | MS. SAHARIA:  BECAUSE MANY PATIENTS DID RECEIVE |
| 10:30AM | 17 | ACCURATE AND RELIABLE TESTS, THERE WAS NOTHING MISREPRESENTED |
| 10:30AM | 18 | TO THEM ABOUT AN ESSENTIAL ELEMENT OF THE BARGAIN. |
| 10:30AM | 19 | THAT'S OUR CONCERN ABOUT -- WITH THE FIRST SENTENCE AND |
| 10:30AM | 20 | THAT'S WHY WE THINK IT'S IMPORTANT TO INCLUDE THAT SENTENCE |
| 10:30AM | 21 | HERE. |
| 10:30AM | 22 | THE COURT:  WAS THERE EVIDENCE THAT PAYING PATIENTS |
| 10:30AM | 23 | RECEIVED INACCURATE TESTS? |
| 10:30AM | 24 | MS. SAHARIA:  I'M SURE THE GOVERNMENT WILL, WILL |
| 10:30AM | 25 | CLAIM THAT THERE IS EVIDENCE THAT SOME PATIENTS RECEIVED |

```
10:31AM   1    INACCURATE TESTS.

10:31AM   2              THE COURT:  DOES THAT HAVE ANY EFFECT ON WHETHER OR

10:31AM   3    NOT THIS SHOULD STAY IN OR OUT?

10:31AM   4              MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR, BECAUSE

10:31AM   5    AS I RECALL, THEY HAVE PROVEN ONLY PERHAPS TWO OF THOSE TESTS

10:31AM   6    OUT OF MANY MILLIONS.

10:31AM   7              MR. LEACH:  WELL, WE PROVED THAT ALL OF THE TESTS ON

10:31AM   8    THE EDISON DEVICE WERE VOIDED, YOUR HONOR.

10:31AM   9         SO I'M NOT SURE IT'S A DEFENSE TO THE PARTICULAR WIRE

10:31AM  10    FRAUD CLAIMS THAT ARE CHARGED HERE AGAINST PATIENTS TO SAY THAT

10:31AM  11    THERE WERE OTHERS WHO RECEIVED COMPLETELY ACCURATE RESULTS.

10:31AM  12         AND SO IT'S NOT THE INTENTION OF THE GOVERNMENT TO ARGUE

10:31AM  13    ANYTHING INCONSISTENT WITH WHAT IS IN THE BLUE HERE.

10:31AM  14         I REALLY THINK IT'S UNNECESSARY AT THIS POINT.

10:31AM  15         IF THE DEFENSE HAS CONCERNS AFTER HEARING THE GOVERNMENT'S

10:31AM  16    ARGUMENT, I THINK WE CAN ADDRESS THAT THEN.

10:31AM  17         BUT I JUST THINK THAT WE'RE ADDING TO ALREADY A LENGTHY

10:31AM  18    INSTRUCTION IN WAYS THAT DON'T HAVE NINTH CIRCUIT SUPPORT OR

10:31AM  19    CITES, AND REALLY ARE ADDRESSING PROBLEMS THAT I DON'T THINK

10:32AM  20    ARE GOING TO ARISE.

10:32AM  21              THE COURT:  OKAY.

10:32AM  22              MS. SAHARIA:  THAT'S IT, YOUR HONOR.

10:32AM  23              THE COURT:  ALL RIGHT.  THANK YOU.

10:32AM  24         I JUST SEE THIS AS UNNECESSARY, MS. SAHARIA.  I DON'T

10:32AM  25    THINK THIS IS NECESSARY TO CAPTURE -- I THINK THE BALANCE OF
```

10:32AM 1     THE INSTRUCTIONS ALLOW BOTH PARTIES TO ARGUE THE EVIDENCE, AND

10:32AM 2     I'M NOT GOING TO GIVE THIS.

10:32AM 3         TURNING THEN TO THE YELLOW HIGHLIGHTING AT THE BOTTOM OF

10:32AM 4     LINE 19, AND THEN CARRYING OVER TO PAGE 27, ECF 28, THAT LARGE

10:32AM 5     PARAGRAPH, I WASN'T INCLINED TO GIVE THIS, BUT I'M --

10:32AM 6     MR. LEACH, I'M HAPPY TO HEAR FROM YOU IF YOU WOULD LIKE.

10:32AM 7         MR. LEACH:  YOUR HONOR, THIS IS DRAWN DIRECTLY FROM

10:32AM 8     AN INSTRUCTION THAT WAS GIVEN IN THE WOODS CASE AND APPROVED BY

10:32AM 9     THE NINTH CIRCUIT.

10:32AM 10     I'LL SUBMIT ON OUR PRIOR ARGUMENTS, BUT I THINK THIS IS AN

10:32AM 11     ACCURATE STATEMENT OF THE LAW.  BUT I'LL STAND ON OUR PRIOR

10:33AM 12     ARGUMENTS.

10:33AM 13         THE COURT:  OKAY.

10:33AM 14         MS. SAHARIA:  I'M HAPPY TO ADDRESS WHY THOSE CASES

10:33AM 15     WERE NOT ON POINT, BUT IF I'M ALREADY AHEAD, I'M NOT GOING TO

10:33AM 16     WASTE THE COURT'S TIME ON THIS ONE.

10:33AM 17     IF YOUR HONOR WANTS ARGUMENT ON THAT ONE, I'M HAPPY TO

10:33AM 18     OFFER IT.

10:33AM 19         THE COURT:  THERE'S THAT VICTORY FROM THE JAWS --

10:33AM 20         MS. SAHARIA:  THAT'S RIGHT.

10:33AM 21         THE COURT:  OR DEFEAT FROM THE JAWS OF VICTORY, YES,

10:33AM 22     INDEED.

10:33AM 23     I WAS LOOKING AT THE LAST SENTENCE ON LINE 5 AND WONDERING

10:33AM 24     WHETHER OR NOT THAT SHOULD BE MODIFIED IN SOME MANNER.

10:33AM 25         MS. SAHARIA:  DO YOU MEAN THE FINAL HIGHLIGHTED

| 10:33AM | 1 | SENTENCE?  I'M NOT SURE WHICH SENTENCE. |

10:33AM  1    SENTENCE?  I'M NOT SURE WHICH SENTENCE.

10:33AM  2         THE COURT:  "YOU, AS MEMBERS OF THE JURY, DO NOT

10:33AM  3    NEED TO ALL AGREE ON WHICH STATEMENTS WERE FALSE."  I'M LOOKING

10:33AM  4    AT THIS AS KIND OF A UNANIMITY TYPE.  DO WE NEED TO ADD

10:33AM  5    SOMETHING THERE?

10:33AM  6         MS. SAHARIA:  I THINK IF YOU'RE GOING TO INCLUDE

10:33AM  7    THAT LANGUAGE, THEN THE COURT SHOULD ALSO INCLUDE OUR UNANIMITY

10:34AM  8    LANGUAGE AT THE BOTTOM OF THE PAGE, WHICH IS THE BLUE LANGUAGE,

10:34AM  9    WHICH MAKES CLEAR THAT THEY DO NEED TO BE UNANIMOUS ON THE

10:34AM  10   PARTICULAR SCHEME, EVEN IF THEY DON'T NEED TO BE UNANIMOUS ON

10:34AM  11   THE PARTICULAR STATEMENT.

10:34AM  12      BUT I THINK PERHAPS A BETTER APPROACH IS TO PERHAPS NOT

10:34AM  13   INCLUDE EITHER OF THOSE TWO SENTENCES.  I DON'T THINK THEY'RE

10:34AM  14   NECESSARY.

10:34AM  15        THE COURT:  SO I LOOKED AT THESE, AND THAT'S EXACTLY

10:34AM  16   WHAT I WAS WONDERING, IF I COLLAPSED BOTH OF THESE TOGETHER, IF

10:34AM  17   WE STARTED WITH LINES 22 THROUGH 23, AND THEN ADDED LINES 5

10:34AM  18   THROUGH 7.

10:34AM  19      BUT PERHAPS I'M OVER WORDSMITHING.

10:34AM  20        MR. LEACH:  YOUR HONOR, THE GOVERNMENT WOULD BE FINE

10:34AM  21   WITH THAT.  WE -- I DON'T THINK A SPECIFIC UNANIMITY

10:34AM  22   INSTRUCTION IS REQUIRED HERE.

10:34AM  23      AND IF THE COURT WERE INCLINED TO GIVE 22 THROUGH 23, WE

10:34AM  24   THINK IT'S IMPORTANT TO ALSO INCLUDE 5 THROUGH 7.

10:34AM  25        BUT I THINK THE COURT'S EARLIER --

| 10:35AM | 1 | THE COURT:  RIGHT. |
| 10:35AM | 2 | MR. LEACH:  -- PROPOSAL EXPRESSES THE JURY MUST |
| 10:35AM | 3 | UNANIMOUSLY FIND. |
| 10:35AM | 4 | SO THE GOVERNMENT WOULD BE FINE EITHER WITH NO INSTRUCTION |
| 10:35AM | 5 | THERE AT ALL, OR THE BLUE PART WITH THOSE TWO LINES FROM THE |
| 10:35AM | 6 | YELLOW ADDED. |
| 10:35AM | 7 | MS. SAHARIA:  I THINK I'M FINE WITH NEITHER OF THOSE |
| 10:35AM | 8 | INSTRUCTIONS, BECAUSE AS MR. LEACH INDICATED, THE COURT DID, I |
| 10:35AM | 9 | THINK, BEEF UP THE UNANIMOUS PART AT THE BEGINNING OF THIS |
| 10:35AM | 10 | INSTRUCTION. |
| 10:35AM | 11 | THE COURT:  RIGHT.  OKAY.  THANK YOU.  I APPRECIATE |
| 10:35AM | 12 | THAT THEN. |
| 10:35AM | 13 | I'M NOT GOING TO GIVE LINES 1 THROUGH 7 AS I INDICATED. |
| 10:35AM | 14 | AND I'M NOT INCLINED TO GIVE AS WELL, LET'S SEE, THE |
| 10:35AM | 15 | HIGHLIGHTED IN LINES 9 THROUGH 12, MR. LEACH.  I JUST DON'T |
| 10:35AM | 16 | THINK THAT'S NECESSARY.  I'M HAPPY TO HEAR FROM YOU IF YOU |
| 10:35AM | 17 | WISH. |
| 10:35AM | 18 | MR. LEACH:  I DO HAVE SOME CONCERNS HERE, |
| 10:35AM | 19 | YOUR HONOR. |
| 10:35AM | 20 | IN ONE OF THE WIRES -- ONE OF THE CHARGED WIRES IS A |
| 10:35AM | 21 | PAYMENT TO AN ADVERTISING COMPANY.  ONE OF THE CHARGED WIRES |
| 10:35AM | 22 | IS, IF MEMORY SERVES, A PHONE CALL ABOUT A TEST. |
| 10:36AM | 23 | I DON'T WANT THE JURY TO BE CONFUSED THAT FOR A "FRAUD |
| 10:36AM | 24 | CLAIM," IT NEEDS TO FIND THAT THE WIRE ITSELF WAS FALSE AND |
| 10:36AM | 25 | MISLEADING. |

10:36AM  1        IT'S A WIRE THAT IS IN FURTHERANCE OF AN ESSENTIAL PART OF

10:36AM  2    THE SCHEME.

10:36AM  3        SO THIS IS LANGUAGE THAT HAS BEEN GIVEN BY THE COURT

10:36AM  4    BEFORE IN PRIOR INSTRUCTIONS.

10:36AM  5            THE COURT:  RIGHT.

10:36AM  6            MR. LEACH:  FROM OUR LAST DIALOGUE, I HEARD ARGUMENT

10:36AM  7    THAT THIS LANGUAGE WAS OBJECTIONABLE BECAUSE OF THE ARGUMENT IT

10:36AM  8    DOESN'T MATTER, OR THE LANGUAGE IN LINE 11 WHERE IT SAYS IT

10:36AM  9    DOES NOT MATTER.

10:36AM  10       I THINK WE WOULD BE EQUALLY FINE WITH LANGUAGE, "NOR MUST

10:36AM  11   YOU FIND THAT THE SCHEME OR PLAN WAS SUCCESSFUL," AND ADDING

10:36AM  12   THE WORDS "ESSENTIAL PART OF THE SCHEME" IN THE LINE ABOVE IN

10:36AM  13   10.

10:36AM  14       SO I THINK THIS IS GOING TO TWO THINGS:  ONE, THE

10:37AM  15   ARGUMENT THAT MS. HOLMES -- THIS ADDRESSES AN ARGUMENT THAT I

10:37AM  16   THINK WE'RE GOING TO HEAR THAT MS. HOLMES DIDN'T PROFIT IN ANY

10:37AM  17   WAY FROM THIS, AND I THINK THE JURY SHOULD NOT BE MISLED THAT

10:37AM  18   THAT'S SOMETHING THAT THEY NEED TO FIND IN ORDER TO FIND THAT

10:37AM  19   WIRE FRAUD OCCURRED HERE; AND WE ALSO WANT TO COMBAT AGAINST

10:37AM  20   THE CONCERN THAT, YOU KNOW, WHAT WOULD OTHERWISE BE INNOCUOUS

10:37AM  21   NONFALSE WIRES CAN STILL BE A WIRE COMMUNICATION IN FURTHERANCE

10:37AM  22   OF THE SCHEME.

10:37AM  23       SO THAT'S WHY WE PROPOSED THAT.

10:37AM  24           THE COURT:  WELL, I APPRECIATE THAT.  THAT'S HELPFUL

10:37AM  25   AS TO THE REASONS WHY.

| | | |
|---|---|---|
| 10:37AM | 1 | AND I'M NOT BEING CRITICAL OF THE LANGUAGE HERE, BUT I WAS |
| 10:37AM | 2 | TRYING TO -- WHAT IS THIS INTENDING TO CONVEY? |
| 10:37AM | 3 | AND THEN AS TO THE LAST LANGUAGE ON LINE 12 REGARDING |
| 10:37AM | 4 | MS. HOLMES INTENDING TO REPAY, AND I KNOW THAT'S FROM CASES |
| 10:37AM | 5 | THAT SAY THAT'S NOT A DEFENSE. |
| 10:37AM | 6 | IS THERE GOING TO BE ARGUMENT OF THAT? |
| 10:37AM | 7 | MS. SAHARIA:  NO, YOUR HONOR. |
| 10:37AM | 8 | THAT KIND OF INSTRUCTION -- AND I WOULD POINT THE COURT TO |
| 10:37AM | 9 | THE SECOND CIRCUIT CASE IN UNITED STATES VERSUS ROSSOMONDO, |
| 10:38AM | 10 | WHICH IS AT 144 F.3D 197, SECOND CIRCUIT 1998, WHICH WE'LL |
| 10:38AM | 11 | DISCUSS WHEN WE GET TO GOOD FAITH AS WELL. |
| 10:38AM | 12 | THAT CASE MAKES CLEAR THAT THAT KIND OF INSTRUCTION MAY BE |
| 10:38AM | 13 | APPROPRIATE IN A CASE WHERE THE DEFENDANT IS CLAIMING, "I |
| 10:38AM | 14 | INTENDED TO CAUSE A HARM IN THE SHORT TERM, BUT I THOUGHT IT |
| 10:38AM | 15 | WOULD WORK OUT IN THE LONG TERM." |
| 10:38AM | 16 | AND THAT'S NOT OUR DEFENSE HERE.  WE ALREADY HAD |
| 10:38AM | 17 | DISCUSSION ABOUT THAT AT THE MOTION IN LIMINE STAGE.  WE'RE NOT |
| 10:38AM | 18 | GOING TO ARGUE THAT. |
| 10:38AM | 19 | THE SECOND CIRCUIT, IN THE CASE I JUST CITED, ACTUALLY |
| 10:38AM | 20 | REVERSED THE CONVICTION WHERE THE COURT GAVE THAT INSTRUCTION |
| 10:38AM | 21 | BECAUSE THE COURT FOUND THAT UNDER THE CIRCUMSTANCES OF THAT |
| 10:38AM | 22 | CASE, WHERE THE DEFENDANT WASN'T MAKING THAT KIND OF ARGUMENT, |
| 10:38AM | 23 | IT WAS MISLEADING TO THE JURY TO GIVE THAT TYPE OF INSTRUCTION. |
| 10:38AM | 24 | SO WE DO OBJECT TO THAT FINAL SENTENCE FOR THAT REASON. |
| 10:38AM | 25 | AS TO THE OTHER TWO SENTENCES -- |

| | | |
|---|---|---|
| 10:38AM | 1 | THE COURT:  PARDON ME.  LET ME JUST STOP YOU THERE. |
| 10:38AM | 2 | WELL, MR. LEACH, ON THE REPRESENTATION THAT THE DEFENSE IS |
| 10:38AM | 3 | NOT GOING TO ARGUE THAT AS A DEFENSE IN ANY WAY, I JUST DON'T |
| 10:39AM | 4 | KNOW WHY WE WOULD LEAVE THIS IN HERE. |
| 10:39AM | 5 | SO I'M INCLINED NOT TO GIVE IT WITH THAT REPRESENTATION. |
| 10:39AM | 6 | LET ME SAY THAT. |
| 10:39AM | 7 | MR. LEACH:  BASED ON THAT REPRESENTATION, |
| 10:39AM | 8 | YOUR HONOR, WE'LL SUBMIT ON OUR ARGUMENT.  I UNDERSTAND THE |
| 10:39AM | 9 | COURT'S POSITION. |
| 10:39AM | 10 | THE COURT:  SO LET'S GO BACK. |
| 10:39AM | 11 | MS. SAHARIA? |
| 10:39AM | 12 | MS. SAHARIA:  SURE.  SO ON THE FIRST PART ON THE |
| 10:39AM | 13 | YELLOW HIGHLIGHTING, ON THE MATERIAL TRANSMITTED BY WIRE, I |
| 10:39AM | 14 | DON'T THINK THERE'S ANY RISK OF THE JURY BEING CONFUSED. |
| 10:39AM | 15 | MOST OF THE WIRES HERE ARE THE INVESTORS SENDING MONEY TO |
| 10:39AM | 16 | THERANOS, WHICH, OF COURSE, THE SENDING OF MONEY DOES NOT |
| 10:39AM | 17 | ITSELF CONTAIN A FALSE STATEMENT.  IT'S NOT A DECEPTIVE |
| 10:39AM | 18 | TRANSMISSION. |
| 10:39AM | 19 | SO I JUST DON'T SEE HOW THE JURY COULD BE CONFUSED ABOUT |
| 10:39AM | 20 | THAT ELEMENT. |
| 10:39AM | 21 | OF COURSE WE'RE NOT GOING TO ARGUE TO THE JURY THAT IT |
| 10:39AM | 22 | CAN'T CONVICT ON THOSE COUNTS BECAUSE THE WIRE TRANSFER DID NOT |
| 10:39AM | 23 | ITSELF CONTAIN FALSE OR MISLEADING STATEMENTS. |
| 10:39AM | 24 | SO I JUST DON'T SEE THAT AS BEING NECESSARY IN THIS CASE. |
| 10:40AM | 25 | WE STAND ON THE PRIOR OBJECTION THAT WE ALSO CONVEYED, |

| | | |
|---|---|---|
| 10:40AM | 1 | THAT IT MISSTATES THE WIRE COMMUNICATION ELEMENT BY SAYING THAT |
| 10:40AM | 2 | AS LONG AS THE WIRE COMMUNICATION WAS USED AS A PART OF THIS |
| 10:40AM | 3 | SCHEME, AS OPPOSED TO CARRYING OUT AN ESSENTIAL PART OF THE |
| 10:40AM | 4 | SCHEME. |
| 10:40AM | 5 | BUT FUNDAMENTALLY, I JUST DON'T SEE THAT AS BEING -- AS |
| 10:40AM | 6 | BEING LIKELY TO BE A SOURCE OF JURY CONFUSION AND, OF COURSE, |
| 10:40AM | 7 | WE'RE NOT GOING TO ARGUE THAT. |
| 10:40AM | 8 | AND THEN ON THE SECOND PART OF IT, WHICH IS, "NOR DOES IT |
| 10:40AM | 9 | MATTER WHETHER THIS SCHEME OR PLAN WAS SUCCESSFUL OR THAT ANY |
| 10:40AM | 10 | MONEY OR PROPERTY WAS OBTAINED," AGAIN, I JUST DON'T THINK SEE |
| 10:40AM | 11 | THIS AS BEING HELPFUL TO THE JURY ON THE FACTS OF THIS CASE. |
| 10:40AM | 12 | OF COURSE, THE GOVERNMENT CLAIMS THAT MONEY OR PROPERTY |
| 10:40AM | 13 | WAS OBTAINED ON THIS CASE.  THAT'S THEIR THEORY OF THE CASE, SO |
| 10:40AM | 14 | I'M NOT SURE WHY WE WOULD BE TELLING THE JURY THAT. |
| 10:40AM | 15 | AND THE SAME WITH "NOR DOES IT MATTER WHETHER THE SCHEME |
| 10:40AM | 16 | OR PLAN WAS SUCCESSFUL," THE "DOES NOT MATTER" LANGUAGE IS |
| 10:41AM | 17 | QUITE OBJECTIONABLE BECAUSE IT IS RELEVANT WHETHER THE SCHEME |
| 10:41AM | 18 | WAS SUCCESSFUL.  THAT'S ALWAYS RELEVANT TO INTENT OR |
| 10:41AM | 19 | MATERIALITY. |
| 10:41AM | 20 | AGAIN, IT'S JUST GOVERNMENT ARGUMENT THAT I DO NOT THINK |
| 10:41AM | 21 | IT HAS ANY PLACE IN THESE INSTRUCTIONS, SIMILAR TO THE SENTENCE |
| 10:41AM | 22 | THAT WE JUST TALKED ABOUT ON LINE 12.  IT'S THE SAME KIND OF |
| 10:41AM | 23 | CONCEPT. |
| 10:41AM | 24 | MR. LEACH:  I DON'T THINK IT'S ARGUMENT, YOUR HONOR. |
| 10:41AM | 25 | I'M AGREEING WITH MS. SAHARIA THAT IF WE WANT TO CHANGE |

UNITED STATES COURT REPORTERS

```
10:41AM   1    "NOR DOES IT MATTER" TO "NOR MUST YOU FIND THE SCHEME OR PLAN

10:41AM   2    WAS SUCCESSFUL OR THAT ANY MONEY OR PROPERTY WAS OBTAINED," I

10:41AM   3    THINK THAT JUST UNDERSCORES THAT THEY DON'T NEED TO FIND

10:41AM   4    SUCCESS OF THE SCHEME OR ACTUAL OBTAINING OF THE MONEY OR

10:41AM   5    PROPERTY IN A PERSONAL WAY TO MS. HOLMES.

10:41AM   6         SO THAT'S WHAT WE'RE GETTING AT THERE.

10:41AM   7             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

10:42AM   8         IT LOOKS LIKE THIS ONE I'M GOING TO LOOK AT A LITTLE MORE

10:42AM   9    WITH SOME WORDSMITHING AND SEE IF THERE'S A CHANGE.

10:42AM  10         I THINK I UNDERSTAND YOUR CONCERN, MR. LEACH, ABOUT

10:42AM  11    LETTING THE JURY KNOW THAT -- I GUESS YOUR CONCERN IS THAT THE

10:42AM  12    MATERIAL TRANSMITTED DOESN'T HAVE TO BE FRAUDULENT OR FALSE IN

10:42AM  13    ANY WAY.

10:42AM  14         I'M NOT SURE THAT THIS CAPTURES THAT A LITTLE BIT.  MAYBE

10:42AM  15    YOU CAN WORK ON IT DURING OUR BREAK.  WE'RE GOING TO BREAK IN

10:42AM  16    ABOUT 15 OR 20 MINUTES.

10:42AM  17             MR. LEACH:  I WAS THINKING IN THE MOMENT, YOUR

10:42AM  18    HONOR, THAT I THINK I COULD DO IT PRETTY SIMPLY, "THE WIRE

10:42AM  19    ITSELF NEED NOT BE FALSE OR MISLEADING."

10:42AM  20             THE COURT:  THAT SOUNDS BETTER.

10:42AM  21             MR. LEACH:  BUT I'LL WORK ON THE BREAK ON THAT.

10:42AM  22             THE COURT:  OKAY.  IF I'M GRADING YOUR PAPERS, THAT

10:42AM  23    SOUNDS BETTER.

10:42AM  24             MR. LEACH:  OKAY.

10:42AM  25             THE COURT:  LET'S MOVE DOWN.
```

| | | |
|---|---|---|
| 10:42AM | 1 | I'M NEXT HERE AT LINE 17. |
| 10:42AM | 2 | MS. SAHARIA:  I THINK THIS IS ALREADY COVERED BY OUR |
| 10:42AM | 3 | DISCUSSIONS ON OMISSIONS, WITH JUST REITERATING MR. LEACH'S |
| 10:43AM | 4 | CONCESSION THAT THEY'RE NOT CLAIMING AN OMISSIONS THEORY AS TO |
| 10:43AM | 5 | PATIENTS, SO AT A MINIMUM WE'LL NEED TO DO SOME WORDSMITHING |
| 10:43AM | 6 | HERE IF THE COURT DOES INSTRUCT AS TO INVESTORS. |
| 10:43AM | 7 | THE COURT:  RIGHT.  OKAY. |
| 10:43AM | 8 | ALL RIGHT.  LET'S MOVE TO PAGE 29.  THIS IS INSTRUCTION |
| 10:43AM | 9 | 21, INTENT TO DEFRAUD. |
| 10:43AM | 10 | LET ME JUST SAY, THE COURT IS INCLINED TO GIVE THE MODEL |
| 10:43AM | 11 | ON THIS, WHICH IS SHORT AND SWEET.  IT'S 5.12.  "AN INTENT TO |
| 10:43AM | 12 | DEFRAUD IS AN INTENT TO DECEIVE AND CHEAT."  I THINK THAT'S |
| 10:43AM | 13 | WHAT THE MODEL IS AND THAT'S WHAT I'M INCLINED TO GIVE. |
| 10:43AM | 14 | I'M HAPPY TO HEAR YOUR OBJECTIONS. |
| 10:44AM | 15 | MS. SAHARIA:  THAT'S FINE, YOUR HONOR.  WE ALREADY |
| 10:44AM | 16 | DISCUSSED A LONGER VERSION OF THAT IN THE WIRE FRAUD |
| 10:44AM | 17 | INSTRUCTION. |
| 10:44AM | 18 | THE COURT:  RIGHT. |
| 10:44AM | 19 | MS. SAHARIA:  AND I THINK THE COURT DID AGREE TO |
| 10:44AM | 20 | GIVE A LONGER VERSION THERE. |
| 10:44AM | 21 | SO IF THE COURT IS GOING TO GIVE THE SOMEWHAT LONGER |
| 10:44AM | 22 | VERSION THERE, I WOULD SUGGEST THE COURT SHOULD JUST GIVE THE |
| 10:44AM | 23 | SAME LANGUAGE HERE SO AS NOT TO SUGGEST TO THE JURY THAT |
| 10:44AM | 24 | THERE'S SOME DISTINCTION BETWEEN THE TWO PLACES.  SO I WOULD |
| 10:44AM | 25 | JUST SUGGESTS THE COURT MIRROR THE LANGUAGE THAT IT'S GOING TO |

| 10:44AM | 1 | USE IN THE WIRE FRAUD INSTRUCTION ITSELF AND JUST MIRROR THAT |

10:44AM 1 USE IN THE WIRE FRAUD INSTRUCTION ITSELF AND JUST MIRROR THAT

10:44AM 2 HERE.

10:44AM 3      THE COURT: OKAY.

10:44AM 4   MS. VOLKAR?

10:44AM 5      MR. LEACH: I'M GOING TO HAND IT BACK TO MS. VOLKAR.

10:44AM 6      THE COURT: SURE.

10:44AM 7      MS. VOLKAR: THANK YOU, YOUR HONOR.

10:44AM 8   THE GOVERNMENT AGREES THAT THE COURT SHOULD GIVE THE

10:44AM 9 MODEL. ALONG THE LINES OF NOT NEEDING TO REPEAT SOMETHING OVER

10:44AM 10 AND OVER AGAIN IN THE INSTRUCTIONS, AGREEING TO THE LONGER

10:44AM 11 VERSION IN THE PRIOR INSTRUCTION, I DON'T KNOW THAT THE COURT

10:44AM 12 NEEDS TO REPEAT IT HERE.

10:45AM 13   IF THE COURT WERE GOING TO REPEAT IT, WE THINK IT SHOULD

10:45AM 14 BE THE EXACT SAME FORMULATION.

10:45AM 15   AND I UNDERSTAND FROM WHAT THE COURT IS SAYING THAT THE

10:45AM 16 COURT DOES NOT INTEND TO GIVE A GOOD FAITH INSTRUCTION, AND THE

10:45AM 17 GOVERNMENT AGREES WITH THAT.

10:45AM 18      THE COURT: OKAY. WELL, I'LL LOOK AT THE LONG WIRE

10:45AM 19 FRAUD AND SEE IF IT'S APPROPRIATE TO GIVE IT HERE AGAIN. I

10:45AM 20 DON'T WANT TO GET INTO JURY CONFUSION, OF COURSE, AND HAVE THEM

10:45AM 21 WONDER WHY IT'S LONGER IN ONE AND NOT THE OTHER.

10:45AM 22      MS. SAHARIA: JURORS SOMETIMES PARSE LANGUAGE, AND

10:45AM 23 IF THEY SEE ONE PHRASE IN ONE PLACE AND A DIFFERENT PHRASE IN

10:45AM 24 ANOTHER PLACE, I JUST DON'T WANT THEM TO BE CONFUSED.

10:45AM 25      THE COURT: RIGHT. AND I WANT TO AVOID JURY

8732

| | | |
|---|---|---|
| 10:45AM | 1 | QUESTIONS IF WE CAN TO KEEP THEM DELIBERATING. |
| 10:45AM | 2 | MS. VOLKAR? |
| 10:45AM | 3 | MS. VOLKAR:  AND, YOUR HONOR, THE GOVERNMENT'S |
| 10:45AM | 4 | POSITION ON THAT IS THAT THE LANGUAGE THAT THE COURT AND THE |
| 10:45AM | 5 | PARTIES JUST AGREED UPON IN THE WIRE FRAUD WAS, WAS WHAT |
| 10:45AM | 6 | MILLER, THE MILLER CASE USED. |
| 10:45AM | 7 | THE COURT:  RIGHT. |
| 10:45AM | 8 | MS. VOLKAR:  AND SO I THINK THAT'S APPROPRIATE. |
| 10:46AM | 9 | AND IF THE COURT WANTS TO GIVE IT A SECOND TIME, WE DON'T |
| 10:46AM | 10 | OBJECT TO THAT.  AGAIN, IT'S THE LANGUAGE FROM MILLER. |
| 10:46AM | 11 | BUT WE ALSO THINK THE MODEL ITSELF IS SUFFICIENT. |
| 10:46AM | 12 | THE COURT:  ALL RIGHT. |
| 10:46AM | 13 | MS. SAHARIA? |
| 10:46AM | 14 | MS. SAHARIA:  YES.  I WASN'T SURE WHETHER THE |
| 10:46AM | 15 | COURT'S COMMENT MEANT THAT YOU DECIDED NOT TO GIVE A GOOD FAITH |
| 10:46AM | 16 | INSTRUCTION, OR WHETHER WE SHOULD STILL DISCUSS THAT. |
| 10:46AM | 17 | THE COURT:  NO, I THINK WE'RE DISCUSSING THAT. |
| 10:46AM | 18 | MS. SAHARIA:  WE HAD JUST PUT OUR GOOD FAITH LINE IN |
| 10:46AM | 19 | THIS INSTRUCTION, BUT OF COURSE IT COULD BE PULLED OUT AS A |
| 10:46AM | 20 | SEPARATE GOOD FAITH INSTRUCTION. |
| 10:46AM | 21 | THE COURT:  YES. |
| 10:46AM | 22 | MS. SAHARIA:  WE TOOK TO HEART THE COURT'S |
| 10:46AM | 23 | ADMONITION WITH RESPECT TO LENGTH, AND SO WE HAVE PROPOSED A |
| 10:46AM | 24 | VERY SHORT GOOD FAITH INSTRUCTION THAT JUST SIMPLY INFORMS THE |
| 10:46AM | 25 | JURY THAT GOOD FAITH IS INCONSISTENT WITH A FINDING THAT |

10:46AM 1    MS. HOLMES ACTED WITH THE INTENT TO DEFRAUD.

10:46AM 2        THAT'S WHY WE PUT IT IN THE INTENT TO DEFRAUD INSTRUCTION.

10:46AM 3        THE GOVERNMENT HAS PROPOSED THREE SENTENCES, ONE BEING

10:46AM 4    KIND OF THE DEFENSE ARTICULATION OF GOOD FAITH, AND THEN TWO

10:46AM 5    GOVERNMENT SENTENCES THAT CONVEY THE GOVERNMENT'S THEORY OF THE

10:46AM 6    CASE.

10:47AM 7        IT'S NOT A BALANCED INSTRUCTION.

10:47AM 8        THE SECOND SENTENCE I WILL SAY I THINK IS UNOBJECTIONABLE

10:47AM 9    IN THE GOVERNMENT'S INSTRUCTION.  IT IS A CORRECT STATEMENT OF

10:47AM 10   THE LAW.

10:47AM 11       WE STRONGLY OBJECT TO THE LAST SENTENCE.  I DID MORE

10:47AM 12   THINKING ABOUT THAT SENTENCE OVER THE PAST WEEK.  THIS WAS IN

10:47AM 13   THE TARALLO INSTRUCTION, BUT AS WE DID MORE RESEARCH AND LOOKED

10:47AM 14   AT THE CASE I CITED TO THE COURT, THE ROSSOMONDO CASE, THAT'S

10:47AM 15   WHERE THE SECOND CIRCUIT REVERSED A CONVICTION BASED ON SIMILAR

10:47AM 16   LANGUAGE.

10:47AM 17       THIS SENTENCE BY ITSELF IS VERY CONFUSING TO THE JURY

10:47AM 18   BECAUSE GOOD FAITH AND THE HONEST BELIEF IN THE ULTIMATE

10:47AM 19   SUCCESS OF AN ENTERPRISE MAY ITSELF MEAN THAT MS. HOLMES ACTED

10:47AM 20   IN COMPLETE GOOD FAITH BECAUSE SHE BELIEVED WHAT SHE WAS SAYING

10:47AM 21   WAS TRUE.

10:47AM 22       THIS TYPE OF SENTENCE IS GIVEN IN THE SITUATION, LIKE I

10:47AM 23   SAID BEFORE, WHERE A DEFENDANT ENGAGES IN FRAUD, BUT THINKS

10:48AM 24   THAT "I'LL MAKE IT ALL WORK IN THE LONG RUN," AND THAT'S NOT

10:48AM 25   OUR DEFENSE HERE, AND WE'RE VERY CONCERNED THAT THAT FINAL

10:48AM   1      SENTENCE WILL MISLEAD THE JURY.

10:48AM   2          SO IF THE COURT IS INCLINED TO GIVE TWO SENTENCES, WE

10:48AM   3      WOULD GIVE THE FIRST AND THE SECOND SENTENCE OF THE GOVERNMENT

10:48AM   4      INSTRUCTION, OR JUST GIVE OUR ONE SENTENCE.

10:48AM   5          MS. VOLKAR:  WELL, YOUR HONOR, I RECALL BACK TO OUR

10:48AM   6      CONVERSATION LAST FRIDAY, AND I THINK ONE OF THE THINGS I

10:48AM   7      POINTED OUT THERE IS THAT THE GOOD FAITH INSTRUCTION THAT THE

10:48AM   8      DEFENSE HAD PREVIOUSLY SUGGESTED WAS ONE SIDED AND DIDN'T

10:48AM   9      INCLUDE ALL OF THE PORTIONS OF TARALLO.  IT'S FUNNY THAT WE'RE

10:48AM   10     NOW IN THE REVERSE SITUATION BECAUSE THIS IS LANGUAGE EXACTLY

10:48AM   11     PULLED FROM TARALLO.

10:48AM   12         THE GOVERNMENT'S POSITION IS A GOOD FAITH INSTRUCTION

10:48AM   13     SHOULD NOT BE GIVEN.  AND THE GOVERNMENT IS VERY CONCERNED AT

10:48AM   14     EVEN THOUGH IT'S ONE SENTENCE AND SHORTER, THE LANGUAGE THAT

10:48AM   15     THE DEFENSE ADDED TO THE TOP OF PAGE 29, LINES 4 TO 5, BECAUSE

10:49AM   16     IT STILL PROVIDES AN INCOMPLETE PICTURE OF GOOD FAITH.

10:49AM   17         AND I'LL GIVE THE MOST OBVIOUS EXAMPLE.

10:49AM   18         "GOOD FAITH ON THE PART OF MS. HOLMES."  GOOD FAITH AS TO

10:49AM   19     WHAT?

10:49AM   20         THAT LANGUAGE RIGHT THERE IS AN INACCURATE STATEMENT OF

10:49AM   21     NINTH CIRCUIT LAW AND IT VIOLATES THIS COURT'S MOTION IN LIMINE

10:49AM   22     ORDER AT 798, PAGES 88 TO 90 WHICH PARSED THERE ARE DIFFERENT

10:49AM   23     TYPES OF GOOD FAITH.  IT HAS TO BE GOOD FAITH BELIEF IN THE

10:49AM   24     TRUTH OF MISREPRESENTATIONS.  IT HAS TO BE A PARTICULARIZED

10:49AM   25     TYPE OF GOOD FAITH.

10:49AM 1       AND I BELIEVE WE SUGGESTED THAT LANGUAGE.  THE DEFENSE

10:49AM 2    REJECTED IT.

10:49AM 3       THEY WANT TO BE ABLE TO JUST CLAIM SOME ROSY FEELINGS

10:49AM 4    ABOUT HOW THINGS WOULD WORK OUT.

10:49AM 5       EVERY FRAUD CASE IS SOMEONE BELIEVING IT WILL WORK OUT

10:49AM 6    DOWN THE LINE.  IN PONZI SCHEMES IT'S "I'M GOING TO BE ABLE TO

10:49AM 7    PAY BACK THOSE FIRST PEOPLE AND EVENTUALLY I'M GOING TO BE ABLE

10:49AM 8    TO MAKE IT WORK, AND I'LL BE ABLE TO PAY EVERYONE BACK, AND IT

10:50AM 9    WILL BE GREAT."

10:50AM 10       WHAT I JUST HEARD MS. SAHARIA SAY IS THIS IS NOT A CASE

10:50AM 11    WHERE MS. HOLMES THOUGHT IT WOULD WORK OUT IN THE LONG RUN.

10:50AM 12       I COULD NOT DISAGREE MORE STRONGLY.  SHE ABSOLUTELY

10:50AM 13    THOUGHT IT WOULD WORK OUT IN THE LONG RUN.  SHE THOUGHT SHE

10:50AM 14    COULD EVENTUALLY GET HER TECHNOLOGY TO WORK.  AND THEN THE

10:50AM 15    STATEMENTS THAT SHE MADE WOULDN'T NECESSARILY BE AS FALSE OR

10:50AM 16    MISLEADING AS THEY WERE WHEN SHE MAKES THEM.

10:50AM 17       I'M SORRY.  THE FIRST POINT IS THAT A GOOD FAITH

10:50AM 18    INSTRUCTION IS NOT NEEDED AS LONG AS THE COURT IS IMPROPERLY

10:50AM 19    INSTRUCTING ON THE INTENT TO DEFRAUD, AND WE BELIEVE THAT WE'RE

10:50AM 20    VERY CLOSE ON REACHING THAT AGREEMENT.

10:50AM 21       IF A GOOD FAITH INSTRUCTION IS GOING TO BE GIVEN, THEN IT

10:50AM 22    SHOULD ACCURATELY STATE THE LAW, IT SHOULD ACCURATELY STATE

10:50AM 23    WHAT THAT GOOD FAITH BELIEF IS, OTHERWISE IT RUNS AFOUL OF THIS

10:50AM 24    COURT'S ORDER, NINTH CIRCUIT CASE LAW.  AND BECAUSE OF THE

10:50AM 25    PARTIES' DISCUSSION LAST WEEK, THE GOVERNMENT SUGGESTED AN

| 10:50AM | 1 | INSTRUCTION THAT WAS A SHORTER VERSION OF THE PAGE LONG |
| 10:50AM | 2 | INSTRUCTION GIVEN IN TARALLO, AND THAT IS AN ACCURATE STATEMENT |
| 10:51AM | 3 | OF NINTH CIRCUIT LAW, NOT SECOND CIRCUIT LAW. |
| 10:51AM | 4 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 10:51AM | 5 | LET ME JUST OFFER YOU SOMETHING HERE AND SEE WHAT YOUR |
| 10:51AM | 6 | THOUGHTS ARE.  "YOU MAY DETERMINE WHETHER MS. HOLMES HAD AN |
| 10:51AM | 7 | HONEST, GOOD FAITH BELIEF IN THE TRUTH OF THE SPECIFIC |
| 10:51AM | 8 | MISREPRESENTATIONS ALLEGED IN THE INDICTMENT IN DETERMINING |
| 10:51AM | 9 | WHETHER OR NOT THE DEFENDANT ACTED WITH INTENT TO DEFRAUD." |
| 10:51AM | 10 | WE CAN CHANGE "DEFENDANT" TO "MS. HOLMES," MS. SAHARIA. |
| 10:51AM | 11 | MS. SAHARIA:  COULD I DISCUSS THAT WITH THE TEAM |
| 10:51AM | 12 | DURING THE BREAK, WHICH I THINK IS COMING UP SOON.  I THINK IT |
| 10:51AM | 13 | WOULD HELPFUL FOR US TO DISCUSS THAT. |
| 10:52AM | 14 | THE COURT:  DO YOU WANT ME TO REPEAT IT? |
| 10:52AM | 15 | MS. SAHARIA:  IF YOU COULD REPEAT THAT, THAT WOULD |
| 10:52AM | 16 | BE GREAT. |
| 10:52AM | 17 | THE COURT:  SURE.  "YOU MAY DETERMINE WHETHER |
| 10:52AM | 18 | MS. HOLMES HAD AN HONEST, GOOD FAITH BELIEF IN THE TRUTH OF THE |
| 10:52AM | 19 | SPECIFIC MISREPRESENTATIONS ALLEGED IN THE INDICTMENT IN |
| 10:52AM | 20 | DETERMINING WHETHER OR NOT MS. HOLMES ACTED WITH INTENT TO |
| 10:52AM | 21 | DEFRAUD." |
| 10:52AM | 22 | MS. VOLKAR:  YOUR HONOR, THE GOVERNMENT'S OBJECTION |
| 10:52AM | 23 | THERE IS THAT THAT ONLY ADDRESSES ONE OF THE TWO PROBLEMS. |
| 10:52AM | 24 | THAT ADDRESSES THE SPECIFICITY OF WHAT GOOD FAITH WE'RE TALKING |
| 10:52AM | 25 | ABOUT THAT MORE ALIGNS WITH THE COURT'S PRIOR MOTION IN LIMINE |

10:52AM  1    ORDER.  SO THAT SOLVES THAT PROBLEM.

10:52AM  2         BUT THEN IT'S STILL THE UNBALANCED DESCRIPTION OF WHAT A

10:52AM  3    GOOD FAITH DEFENSE IS.  THAT'S ESSENTIALLY THE FIRST SENTENCE

10:52AM  4    OF THE GOVERNMENT'S PROPOSED GOOD FAITH WITHOUT THE BALANCING

10:52AM  5    IF SHE KNOWINGLY MADE MISREPRESENTATIONS IN THE MOMENT.

10:52AM  6         AND WE WOULD PUSH FOR THE THIRD SENTENCE FROM TARALLO THAT

10:53AM  7    SAYS, "A GOOD FAITH BELIEF THAT THE BUSINESS WILL ULTIMATELY

10:53AM  8    WORK OUT OR THE THING THAT YOU'RE MISREPRESENTING WILL

10:53AM  9    ULTIMATELY BECOME TRUE," THAT IS NOT SUFFICIENT FOR A GOOD

10:53AM 10    FAITH BELIEF DEFENSE, EITHER.

10:53AM 11              THE COURT:  OKAY.

10:53AM 12              MS. SAHARIA:  AGAIN, I WANT TO DISCUSS IT WITH MY

10:53AM 13    TEAM, BUT I DO THINK THE COURT'S INSTRUCTION DOES CONTAIN

10:53AM 14    BALANCE BECAUSE IT SAYS WHETHER OR NOT SHE ACTED WITH THE

10:53AM 15    INTENT TO DEFRAUD AND WHETHER -- THE WORD "WHETHER" CONNOTES IT

10:53AM 16    COULD BE ONE, IT COULD BE THE OTHER.

10:53AM 17         BUT LET ME TALK ABOUT IT WITH THE TEAM AT THE BREAK AND

10:53AM 18    COME BACK TO THE COURT.

10:53AM 19         BUT I DO, AGAIN, STRENUOUSLY OBJECT TO THAT LAST SENTENCE.

10:53AM 20    JUST CONTRARY TO MS. VOLKAR'S REPRESENTATIONS A FEW MINUTES

10:53AM 21    AGO, IT IS VERY MUCH OUR POSITION THAT MS. HOLMES DID BELIEVE

10:53AM 22    IN THE SUCCESS OF THERANOS OVER THE LONG TERM.

10:53AM 23         OUR POINT IS THAT THIS INSTRUCTION MAY MAKE SENSE IN A

10:53AM 24    CASE WHERE A DEFENDANT IS TRYING TO ARGUE, YES, I REALIZED I

10:54AM 25    WAS DOING SOMETHING WRONG, BUT THAT DOESN'T MATTER BECAUSE I

10:54AM 1    THOUGHT I WOULD WORK IT OUT IN THE LONG TERM.

10:54AM 2       THAT'S NOT OUR DEFENSE.  WE'RE NOT GOING TO ARGUE THAT.

10:54AM 3    WE'VE HAD THAT DISCUSSION ALREADY.  SO I JUST DON'T SEE THAT

10:54AM 4    INSTRUCTION AS BEING HELPFUL, AND I THINK IT WILL MISLEAD THE

10:54AM 5    JURY.

10:54AM 6            THE COURT:  OKAY.

10:54AM 7            MS. SAHARIA:  THAT'S IT, YOUR HONOR.

10:54AM 8            MS. VOLKAR:  AND, YOUR HONOR, MY COLLEAGUE,

10:54AM 9    MR. LEACH, POINTED OUT THE COURT MIGHT HAVE BEEN READING FROM

10:54AM 10   THE COMMENTARY.

10:54AM 11      I JUST NOTE THAT THERE'S A SENTENCE IMMEDIATELY FOLLOWING

10:54AM 12   WHAT THE COURT READ, WHICH IS MORE ALONG THE LINES OF WHAT THE

10:54AM 13   GOVERNMENT IS SUGGESTING FOR BALANCE, WHICH IS "THE DEFENDANT'S

10:54AM 14   BELIEF THAT THE VICTIM OF THE FRAUD WILL BE PAID IN THE FUTURE

10:54AM 15   OR WILL SUSTAIN NO ECONOMIC LOSS IS NO DEFENSE TO THE CRIME."

10:54AM 16      SO, AGAIN, I JUST GO BACK TO IF WE'RE IN THE LAND OF GOOD

10:54AM 17   FAITH, WHICH THE GOVERNMENT STILL STRENUOUSLY ARGUES WE SHOULD

10:54AM 18   NOT BE, BUT IF WE ARE, IT NEEDS TO BE A BALANCED VERSION OF

10:54AM 19   GOOD FAITH.  AND THERE'S A LOT OF DANGER HERE BECAUSE OF THE

10:54AM 20   DEFENSE'S THEORY, BECAUSE THEY WANT TO USE HALF OF THAT

10:54AM 21   DEFINITION AND LAUNCH FROM THERE, AND THAT'S WHY IT'S

10:55AM 22   CRITICALLY IMPORTANT WE HAVE A BALANCED INSTRUCTION FOR THE

10:55AM 23   JURY ON WHAT THE LAW IN THE NINTH CIRCUIT IS.

10:55AM 24           THE COURT:  OKAY.  WELL, THANK YOU.  WE'RE GOING TO

10:55AM 25   TAKE OUR BREAK IN JUST A MINUTE.

10:55AM 1      I WANT TO TALK ABOUT ONE LAST THING, AND THIS IS YOUR

10:55AM 2  OPPORTUNITY TO WORDSMITH THOSE AS WELL.

10:55AM 3      YOU'RE ABSOLUTELY RIGHT, I LOOKED AT THAT COMMENT, AND NOT

10:55AM 4  EVERYTHING FITS AND ALL CASES ARE DIFFERENT, BUT IT DOESN'T

10:55AM 5  SEEM THAT THAT LAST LINE, AS WRITTEN, IS APPLICABLE.  BUT I'M

10:55AM 6  HAPPY TO LET YOU WORDSMITH AND SEE WHAT COMES UP.

10:55AM 7      LET'S TURN TO 23, INSTRUCTION 23 FOR JUST A MOMENT, AND

10:55AM 8  THIS IS ON 31, ECF PAGE 32, KNOWINGLY.

10:55AM 9      LET ME JUST SAY I'M INCLINED TO GIVE THE MODEL 5.7 ON

10:55AM 10  THIS.  BUT I'M HAPPY TO HEAR FROM YOU.

10:56AM 11          MS. SAHARIA:  BRIEFLY.  OF COURSE, THE WORD

10:56AM 12  "OMISSIONS" APPEARS, AND SO THAT'S JUST OUR STANDING OBJECTION.

10:56AM 13      WE DO REQUEST THAT THE COURT ADD THE TWO SENTENCES IN BLUE

10:56AM 14  WHICH CONVEY I THINK THE IMPORTANT PRINCIPLE THAT IS NOT

10:56AM 15  ELSEWHERE CONVEYED IN THESE INSTRUCTIONS, THAT THE JURY NEEDS

10:56AM 16  TO FIND PERSONAL KNOWLEDGE ON THE PART OF MS. HOLMES, AND THAT

10:56AM 17  KNOWLEDGE OF OTHERS CANNOT BE IMPUTED TO HER, WHETHER IT'S A

10:56AM 18  THERANOS EMPLOYEE, WHETHER IT'S AN ALLEGED EVEN COCONSPIRATOR.

10:56AM 19      WE'VE HAD DISCUSSION AROUND THAT PRINCIPLE AND IN

10:56AM 20  CONNECTION WITH THE MOTIONS IN LIMINE, AND IT COMES FROM

10:56AM 21  STRAIGHT FROM NINTH CIRCUIT CASE LAW, THE PHILLIPS CASE, THAT

10:56AM 22  WE CITED TO THE COURT.

10:56AM 23      I DO THINK THERE'S A DANGER IN THIS CASE GIVEN THAT THE

10:56AM 24  GOVERNMENT DID PRESENT, I THINK, A LARGE VOLUME OF EVIDENCE OF

10:56AM 25  THINGS THAT OTHER PEOPLE AT THERANOS KNEW THAT WAS NEVER

| 10:56AM | 1 | BROUGHT TO MS. HOLMES'S ATTENTION.  AND SO THIS IS AN IMPORTANT |
| 10:57AM | 2 | CONCEPT IN THIS CASE GIVEN THE RECORD THAT WILL BE BEFORE THE |
| 10:57AM | 3 | JURY. |
| 10:57AM | 4 | MS. VOLKAR:  YOUR HONOR, I THINK THE MODEL |
| 10:57AM | 5 | INSTRUCTION COVERS IT.  I THINK THAT SPECIFICALLY THE SECOND |
| 10:57AM | 6 | SENTENCE THAT THE GOVERNMENT SUGGESTED SHOULD BE INCLUDED AS IT |
| 10:57AM | 7 | IS IN BRACKETS IN THE MODEL. |
| 10:57AM | 8 | AGAIN, THIS IS NOT A REGULATORY FRAUD CASE THAT WOULD HAVE |
| 10:57AM | 9 | A HIGHER MENS REA.  AND BASED ON THE COMMENTS, THAT MEANS THIS |
| 10:57AM | 10 | IS A SENTENCE THAT IS APPROPRIATE HERE. |
| 10:57AM | 11 | AS FOR THE DEFENSE SUGGESTION IN BLUE, THE PHILLIPS CASE |
| 10:57AM | 12 | IS A CASE FROM OVER 50 YEARS AGO.  IT HASN'T BEEN INCORPORATED |
| 10:57AM | 13 | INTO THE MODEL INSTRUCTION I THINK FOR A REASON.  IT IS AN |
| 10:57AM | 14 | EVIDENTIARY CASE THAT THE NINTH CIRCUIT WAS DISCUSSING WHETHER |
| 10:57AM | 15 | OR NOT IT WAS PROPER FOR THE COURT TO ADMIT CERTAIN EVIDENCE. |
| 10:57AM | 16 | I KNOW THAT THE COURT HAS HAD THIS CASE IN MIND.  IT'S |
| 10:57AM | 17 | BEEN RAISED SEVERAL TIMES THROUGHOUT THIS TRIAL, AND THE COURT |
| 10:57AM | 18 | HAS HAD IT IN MIND IN ADMITTING OR NOT ADMITTING CERTAIN |
| 10:57AM | 19 | EVIDENCE, MOST NOTABLY THE NEGATIVE CUSTOMER COMPLAINTS, WHICH |
| 10:58AM | 20 | THE COURT REJECTED BASED ON THIS CASE.  THAT DOESN'T MEAN THAT |
| 10:58AM | 21 | IT REQUIRES AN INSTRUCTION TO GO WITH IT. |
| 10:58AM | 22 | THERE'S NOTHING EVEN IN THE CASE ITSELF, THE PHILLIPS CASE |
| 10:58AM | 23 | ITSELF, THAT WOULD PERMIT THAT OR SUGGEST THAT THAT'S |
| 10:58AM | 24 | APPROPRIATE. |
| 10:58AM | 25 | THE COURT:  OKAY. |

8741

| | | |
|---|---|---|
| 10:58AM | 1 | MS. SAHARIA:  THAT'S IT, YOUR HONOR. |
| 10:58AM | 2 | THE COURT:  OKAY.  THANK YOU. |
| 10:58AM | 3 | LET'S TAKE A BREAK NOW AND LET YOU WORDSMITH.  I'LL DO THE |
| 10:58AM | 4 | SAME.  WE'LL COME BACK AND CHAT SOME MORE.  THANK YOU. |
| 10:58AM | 5 | MS. VOLKAR:  THANK YOU, YOUR HONOR. |
| 10:58AM | 6 | MS. SAHARIA:  THANK YOU, YOUR HONOR. |
| 10:58AM | 7 | THE CLERK:  WHAT TIME WILL YOU BE RESUMING, |
| 10:58AM | 8 | YOUR HONOR? |
| 10:58AM | 9 | THE COURT:  I'M SORRY? |
| 10:58AM | 10 | THE CLERK:  WHAT TIME WILL YOU BE RESUMING? |
| 10:58AM | 11 | MS. SAHARIA:  CAN WE HAVE HALF AN HOUR? |
| 10:58AM | 12 | THE COURT:  LET'S SEE, IT'S 11:00 NOW.  SHOULD WE |
| 10:58AM | 13 | SAY 60 MINUTES?  IS THAT GOOD? |
| 10:58AM | 14 | MS. SAHARIA:  I'M SORRY. |
| 10:58AM | 15 | THE COURT:  SO 60 MINUTES?  AN HOUR? |
| 10:58AM | 16 | MS. VOLKAR:  THAT'S FINE. |
| 10:58AM | 17 | MS. SAHARIA:  I THINK HALF AN HOUR WOULD BE FINE |
| 10:58AM | 18 | WITH US, BUT IF THE COURT NEEDS TO DO SOMETHING, AN HOUR IS |
| 10:58AM | 19 | FINE AS WELL. |
| 10:58AM | 20 | THE COURT:  NO.  THAT'S FINE.  WE'VE BEEN TAKING |
| 10:58AM | 21 | 30 MINUTES BREAKS.  LET'S EXTEND IT TO 15, 45 MINUTES. |
| 10:59AM | 22 | MS. VOLKAR:  I WAS LIKE 15 IS A LITTLE SHORT, |
| 10:59AM | 23 | YOUR HONOR, BUT 45 MINUTES IS GREAT. |
| 10:59AM | 24 | MS. SAHARIA:  THANK YOU. |
| 10:59AM | 25 | (LAUGHTER.) |

**ER-12316**

| 10:59AM | 1 | (RECESS FROM 10:59 A.M. UNTIL 12:09 P.M.) |
|---|---|---|
| 12:09PM | 2 | THE COURT:  WE'RE BACK ON THE RECORD.  ALL PARTIES |
| 12:09PM | 3 | PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN. |
| 12:09PM | 4 | WE'LL CONTINUE WITH OUR DISCUSSION ON JURY INSTRUCTIONS. |
| 12:09PM | 5 | WE'RE OUTSIDE OF THE PRESENCE OF THE JURY AGAIN. |
| 12:09PM | 6 | LET ME ASK, DID YOU ACCOMPLISH ANYTHING DURING THE BREAK? |
| 12:09PM | 7 | MS. VOLKAR:  I DID, YOUR HONOR. |
| 12:09PM | 8 | THE COURT:  GREAT. |
| 12:09PM | 9 | MS. VOLKAR:  AND I'D LIKE TO DISCUSS OR CIRCLE BACK |
| 12:09PM | 10 | FOR A COUPLE POINTS ON THE MENS REA BEFORE WE MOVE ON TO OTHER |
| 12:09PM | 11 | INSTRUCTIONS. |
| 12:09PM | 12 | THE COURT:  SURE. |
| 12:09PM | 13 | MS. VOLKAR:  SO FIRST, I MIGHT HAVE SAID THIS, BUT I |
| 12:09PM | 14 | DID WANT TO BE CLEAR FOR THE RECORD THAT THIS IS NOT A |
| 12:09PM | 15 | REGULATORY FRAUD CASE, THIS IS NOT A TAX FRAUD CASE, NOT A |
| 12:09PM | 16 | SECURITIES FRAUD CASE, NOT A HEALTH CARE FRAUD CASE. |
| 12:09PM | 17 | I KNOW THIS IS CIRCLING FAR BACK, BUT WITH RESPECT TO THE |
| 12:09PM | 18 | WILLFULLY INSTRUCTION, I STILL HAVE NOT YET FOUND IN THE |
| 12:09PM | 19 | NINTH CIRCUIT OR THIS DISTRICT A CASE THAT HAS PROVIDED A |
| 12:10PM | 20 | WILLFULLY INSTRUCTION WHEN THERE IS NOT ONE OF THOSE HEIGHTENED |
| 12:10PM | 21 | MENS REA IN REGULATORY FRAUD CHARGES INVOLVED IN THE CASE. |
| 12:10PM | 22 | I'VE LOOKED AT THE NORA CASE, THE FIFTH CIRCUIT CASE THAT |
| 12:10PM | 23 | YOUR HONOR POINTED OUT -- |
| 12:10PM | 24 | THE COURT:  RIGHT. |
| 12:10PM | 25 | MS. VOLKAR:  -- AND THAT WAS A HEALTH FRAUD CASE. |

8743

| 12:10PM | 1 | AND YOUR HONOR MIGHT HAVE ALSO NOTICED THIS, BUT THE |
| 12:10PM | 2 | STATUTE, 1347, HAS THE WORD "WILLFULLY" IN IT, WHEREAS 1343 AND |
| 12:10PM | 3 | 1349 OF COURSE DO NOT. |
| 12:10PM | 4 | SO I HAD THE OPPORTUNITY OVER THE BREAK TO LOOK AT NORA |
| 12:10PM | 5 | AND I WOULD WANTED TO REITERATE THAT THE GOVERNMENT HAS STILL |
| 12:10PM | 6 | NOT YET FOUND A CASE WHERE NO REGULATORY FRAUD VIOLATIONS ARE |
| 12:10PM | 7 | AT PLAY, AND YET, THE WILLFULLY DEFINITION IS GIVEN. |
| 12:10PM | 8 | THE WAY I SEE THAT TYING WITH THE GOOD FAITH INSTRUCTION |
| 12:10PM | 9 | WHERE WE LEFT OFF ON, THE GOOD FAITH INSTRUCTION IS FREQUENTLY |
| 12:10PM | 10 | GIVEN WHEN THERE IS A REGULATORY FRAUD VIOLATION OR WHEN ONE OF |
| 12:10PM | 11 | THOSE HEIGHTENED MENS REA IS AT ISSUE, AND THE REASON IS |
| 12:11PM | 12 | BECAUSE A GOOD FAITH BELIEF CAN NEGATE THAT HIGHER MENS REA. |
| 12:11PM | 13 | THE REASON WHY THE NINTH CIRCUIT SAYS THAT GOOD FAITH |
| 12:11PM | 14 | INSTRUCTIONS ARE UNNECESSARY WHEN KNOWINGLY IS PROPERLY |
| 12:11PM | 15 | DEFINED -- AND HERE WE HAVE THE INTENT TO DECEIVE AND CHEAT -- |
| 12:11PM | 16 | IS BECAUSE IT IS THE LOWER BAR OF MENS REA AND IT'S NOT THAT |
| 12:11PM | 17 | HEIGHTENED STANDARD. |
| 12:11PM | 18 | NOW, I UNDERSTAND THAT WE'RE LIKELY IN A LAND WHERE WE'RE |
| 12:11PM | 19 | GIVING THE GOOD FAITH INSTRUCTION, AND SO I TOOK THE TIME TO |
| 12:11PM | 20 | LOOK AT THE PORTION THE COURT REFERENCED, WHICH IS IN THE |
| 12:11PM | 21 | COMMENTARY OF MODEL INSTRUCTION 5.12. |
| 12:11PM | 22 | AND THE GOVERNMENT DOES JUST -- WE ARE FINE WITH THAT |
| 12:11PM | 23 | FIRST SENTENCE THAT YOUR HONOR READ ALOUD, AND EVEN |
| 12:11PM | 24 | UNDERSTANDING THAT "MS. HOLMES" WOULD BE SUBSTITUTED FOR "THE |
| 12:11PM | 25 | DEFENDANT," THE GOVERNMENT DOES WANT TO REITERATE THE SECOND |

8744

| | | |
|---|---|---|
| 12:11PM | 1 | SENTENCE, "THE DEFENDANT'S BELIEF THAT THE VICTIMS WILL BE PAID |
| 12:12PM | 2 | IN THE FUTURE OR SUFFER NO ECONOMIC LOSS," SHOULD BE GIVEN, AND |
| 12:12PM | 3 | A COUPLE OF INSTANCES OF FACTS IN THIS CASE THAT WE THINK |
| 12:12PM | 4 | SUPPORT THAT SECOND SENTENCE INCLUDE -- ONE OF THE COMMON |
| 12:12PM | 5 | THEMES IN THE CROSS-EXAMINATIONS OF INVESTORS IN THIS CASE |
| 12:12PM | 6 | FOCUSSED ON THE INCREASED VALUE OF THOSE INVESTOR'S SHARES OVER |
| 12:12PM | 7 | TIME, AND THAT DISCUSSION ABOUT WHETHER OR NOT THOSE INVESTORS |
| 12:12PM | 8 | COULD HAVE SOLD OR COULD HAVE MADE MORE MONEY OVER TIME MIGHT |
| 12:12PM | 9 | BE CONFUSING WITHOUT THE SECOND SENTENCE THAT I REFERENCED. |
| 12:12PM | 10 | THERE'S ALSO -- THE END OF THE CROSS-EXAMINATION OF |
| 12:12PM | 11 | DR. DAS ENDED WITH THE QUOTE FROM A MOVIE, YOUR HONOR PROBABLY |
| 12:12PM | 12 | REMEMBERS, AND IT WAS SOMETHING ALONG THE LINES -- I WON'T DO |
| 12:12PM | 13 | IT JUSTICE, BUT IT WAS SOMETHING ALONG THE LINES OF IF IT'S NOT |
| 12:12PM | 14 | ALL RIGHT YET, THEN IT'S NOT YET THE END, WHICH IS AGAIN THIS |
| 12:12PM | 15 | IDEA THAT IT WILL WORK OUT IN THE FUTURE. |
| 12:13PM | 16 | AND THE FINAL POINT IS THAT ONE OF THE KEY TENETS OF THIS |
| 12:13PM | 17 | CASE AND WHAT WE UNDERSTAND TO BE PART OF THE DEFENSE IS THAT |
| 12:13PM | 18 | MS. HOLMES BELIEVED THE 4 SERIES OR MINILAB WOULD WORK ONE DAY, |
| 12:13PM | 19 | AND THEREFORE, HER STATEMENTS TO INVESTORS WERE NOT MISLEADING |
| 12:13PM | 20 | BECAUSE SHE WAS TALKING ABOUT THE CAPABILITIES OF THE DEVICE |
| 12:13PM | 21 | AND SOMETHING THAT MIGHT WORK OUT IN THE FUTURE. |
| 12:13PM | 22 | SO WE JUST WANTED TO FURTHER SUPPORT OUR ARGUMENT THAT IF |
| 12:13PM | 23 | THE COURT IS GOING TO GIVE A GOOD FAITH INSTRUCTION, WE DO NOT |
| 12:13PM | 24 | HAVE ANY -- WE DO NOT OBJECT TO THAT FIRST SENTENCE IN THE |
| 12:13PM | 25 | COMMENTARY THAT THE COURT READ, BUT WE WOULD REQUEST THAT THE |

| | | |
|---|---|---|
| 12:13PM | 1 | SECOND SENTENCE BE GIVEN AS WELL. |
| 12:13PM | 2 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 12:13PM | 3 | MS. SAHARIA:  I DON'T WANT TO REHASH THE WILLFULLY |
| 12:13PM | 4 | ISSUE. |
| 12:13PM | 5 | RESPECTFULLY, THE GOVERNMENT IS CONFLATING A BUNCH OF |
| 12:13PM | 6 | DIFFERENT THINGS HERE.  THE BRYAN WILLFUL STANDARD IS THE LOWER |
| 12:13PM | 7 | STANDARD OF WILLFULNESS.  IT'S NOT THE STANDARD THAT APPLIES ON |
| 12:14PM | 8 | REGULATORY CASES.  THAT'S THE HIGHER STANDARD THAT REQUIRES |
| 12:14PM | 9 | KNOWLEDGE OF A SPECIFIC STATUTE, AND THAT'S NOT OUR ARGUMENT |
| 12:14PM | 10 | HERE.  SO I JUST WANT TO MAKE THAT CLEAR. |
| 12:14PM | 11 | BUT I THINK THAT'S A TOTALLY SEPARATE ISSUE THAN THE GOOD |
| 12:14PM | 12 | FAITH INSTRUCTION. |
| 12:14PM | 13 | WE ARE FINE WITH THE FIRST SENTENCE THAT THE COURT |
| 12:14PM | 14 | PROPOSED, ALTHOUGH I WOULD SUGGEST THAT THE FIRST VERB |
| 12:14PM | 15 | "DETERMINED" MIGHT MAKE MORE SENSE IF IT READ "CONSIDER," ONLY |
| 12:14PM | 16 | BECAUSE THE WORD "DETERMINING" ALSO APPEARS IN THE SENTENCE, |
| 12:14PM | 17 | AND I THINK IT IS MORE NATURAL TO SAY "YOU MAY CONSIDER WHETHER |
| 12:14PM | 18 | A DEFENDANT HAD AN HONEST GOOD FAITH BELIEF," ET CETERA, "IN |
| 12:14PM | 19 | DETERMINE WHETHER OR NOT THE DEFENDANT ACTED WITH INTENT TO |
| 12:14PM | 20 | DEFRAUD." |
| 12:14PM | 21 | SO I THINK THAT WOULD BE A MORE NATURAL WAY TO PHRASE THAT |
| 12:14PM | 22 | SENTENCE. |
| 12:14PM | 23 | AND I WANTED TO CLARIFY, IS IT THE COURT'S INTENTION TO |
| 12:14PM | 24 | INCLUDE THAT SENTENCE IN THE INTENT TO DEFRAUD INSTRUCTION?  OR |
| 12:14PM | 25 | IS IT A SEPARATE INSTRUCTION? |

| | | |
|---|---|---|
| 12:14PM | 1 | THE COURT:  I THINK A SEPARATE INSTRUCTION IS WHAT I |
| 12:14PM | 2 | HAD IN MIND. |
| 12:15PM | 3 | MS. SAHARIA:  WE WOULD SUGGEST IT MIGHT MAKE MORE |
| 12:15PM | 4 | SENSE TO PUT IT IN THE INTENT TO DEFRAUD INSTRUCTION BECAUSE IT |
| 12:15PM | 5 | IS EXPLAINING HOW THE JURY MAY GO ABOUT DETERMINING WHETHER |
| 12:15PM | 6 | THERE IS AN INTENT TO DEFRAUD, AND THE COMMENT IN THE MODEL |
| 12:15PM | 7 | RULES IS IN THE INSTRUCTION 5.12 ON INTENT TO DEFRAUD. |
| 12:15PM | 8 | SO THAT WOULD BE OUR SUGGESTION.  THAT'S JUST OUR |
| 12:15PM | 9 | SUGGESTION AS TO WHERE IT COULD GO. |
| 12:15PM | 10 | WE DO OBJECT TO THAT FINAL SENTENCE.  IT DOESN'T FIT THE |
| 12:15PM | 11 | FACTS OF THE CASE. |
| 12:15PM | 12 | WE'VE HAD THIS DISCUSSION ALREADY.  WE'RE NOT GOING TO |
| 12:15PM | 13 | ARGUE THAT AN INTENT TO DEFRAUD IS NOT INTENT TO DEFRAUD IF SHE |
| 12:15PM | 14 | INTENDED -- IF SHE THOUGHT THEY WOULD BE REPAID IN THE FUTURE. |
| 12:15PM | 15 | THAT'S JUST NOT OUR ARGUMENT.  WE'RE NOT GOING TO SAY THAT. |
| 12:15PM | 16 | I HAVE A NUMBER OF OBJECTIONS TO THE LANGUAGE OF THE |
| 12:15PM | 17 | SENTENCE IF THE COURT WAS CONSIDERING GIVING IT.  I DON'T THINK |
| 12:15PM | 18 | IT'S FAIR TO SAY "THE VICTIMS OF THE FRAUD." |
| 12:15PM | 19 | THAT SUGGESTS A FRAUD HAS OCCURRED AND THERE ARE VICTIMS. |
| 12:15PM | 20 | IF THE COURT WERE GOING TO GIVE SOME VERSION OF THIS |
| 12:15PM | 21 | SENTENCE, I THINK YOU WOULD NEED TO ADD THE "STANDING ALONE" |
| 12:16PM | 22 | KIND OF LANGUAGE THAT WE WERE TALKING ABOUT BEFORE TO NOT |
| 12:16PM | 23 | MISLEAD THE JURY. |
| 12:16PM | 24 | BUT FUNDAMENTALLY, OUR POSITION IS THAT THE SENTENCE DOES |
| 12:16PM | 25 | NOT FIT THIS CASE AND SHOULD NOT BE GIVEN. |

8747

| | | |
|---|---|---|
| 12:16PM | 1 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 12:16PM | 2 | SO YOU'RE SUGGESTING, MS. SAHARIA, INSTEAD OF "DETERMINE," |
| 12:16PM | 3 | "CONSIDER"? |
| 12:16PM | 4 | MS. SAHARIA:  "YOU MAY CONSIDER," CORRECT. |
| 12:16PM | 5 | THE COURT:  AND OTHERWISE YOU'RE FINE WITH AT LEAST |
| 12:16PM | 6 | THE COURT'S SUGGESTION OF SUBSTITUTING "MS. HOLMES" FOR |
| 12:16PM | 7 | "DEFENDANT"? |
| 12:16PM | 8 | MS. SAHARIA:  YES, YOUR HONOR. |
| 12:16PM | 9 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 12:16PM | 10 | ANYTHING FURTHER ON THIS? |
| 12:16PM | 11 | MS. VOLKAR:  THE GOVERNMENT IS FINE WITH "CONSIDER" |
| 12:16PM | 12 | RATHER THAN "DETERMINE." |
| 12:16PM | 13 | THE GOVERNMENT DOES THINK IT SHOULD BE A SEPARATE |
| 12:16PM | 14 | INSTRUCTION.  I RISK REPEATING MYSELF FOR THE UMPTEENTH TIME, |
| 12:16PM | 15 | BUT THE NINTH CIRCUIT, OF COURSE, SAYS A GOOD FAITH INSTRUCTION |
| 12:16PM | 16 | IS NOT REQUIRED WHEN INTENT TO DEFRAUD IS PROPERLY DEFINED. |
| 12:16PM | 17 | I WORRY THAT CONFLATING THOSE TWO MUDDIES THE WATERS EVEN |
| 12:16PM | 18 | FURTHER, SO I WOULD ARGUE THAT IT SHOULD BE A SEPARATE |
| 12:17PM | 19 | INSTRUCTION. |
| 12:17PM | 20 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 12:17PM | 21 | I DO THINK IT SHOULD BE A SEPARATE INSTRUCTION.  I DON'T |
| 12:17PM | 22 | WANT TO CONFLATE IT WITH THE OTHER.  I DON'T KNOW IF IT SHOULD |
| 12:17PM | 23 | BE ENTITLED "GOOD FAITH DEFENSE."  I'M NOT SURE THAT'S THE |
| 12:17PM | 24 | RIGHT TITLE. |
| 12:17PM | 25 | MS. SAHARIA:  I WOULD ADVISE AGAINST THE WORD |

12:17PM 1    "DEFENSE" BECAUSE THAT MAKES IT SOUND LIKE WE BEAR THE BURDEN

12:17PM 2    TO PROVE GOOD FAITH --

12:17PM 3              THE COURT:  RIGHT.

12:17PM 4              MS. SAHARIA:  -- AND THAT'S NOT SO.  IT'S JUST

12:17PM 5    NEGATING THE GOVERNMENT'S BURDEN.

12:17PM 6         PERHAPS "GOOD FAITH OF THE DEFENDANT," OR "GOOD FAITH OF

12:17PM 7    MS. HOLMES" MIGHT BE A BETTER FORMULATION.

12:17PM 8              MS. VOLKAR:  I'VE SEEN "GOOD FAITH DEFENSE" USED BY

12:17PM 9    OTHER COURTS IN THIS DISTRICT.  I DON'T KNOW THAT THE COURT

12:17PM 10   READS THE TITLE OF THE INSTRUCTION TO THE JURY, BUT --

12:17PM 11             THE COURT:  NO, I DON'T.

12:17PM 12             MS. SAHARIA:  I'M SO SORRY.

12:17PM 13        I DON'T KNOW IF THE VERSION OF THE INSTRUCTIONS THE COURT

12:17PM 14   SENDS BACK TO THE JURY ROOM HAS THE TITLES.  IF SO, I WOULD

12:17PM 15   CONTINUE TO OBJECT TO THAT TITLE.

12:17PM 16             THE COURT:  IT DOES.  IT DOES HAVE JUST THE TITLES

12:17PM 17   ON IT.  AND I DON'T READ THE TITLES OF THE INSTRUCTION.

12:18PM 18        IT WILL READ JURY INSTRUCTION NUMBER, WHATEVER IT IS, AND

12:18PM 19   THEN IT WILL HAVE A TITLE, YOU KNOW, PRESUMPTION OF INNOCENCE,

12:18PM 20   THOSE TYPES OF THINGS.

12:18PM 21             MS. SAHARIA:  RIGHT.  YOU COULD JUST USE "GOOD

12:18PM 22   FAITH," YOUR HONOR, I THINK THAT WOULD BE FINE AS WELL.

12:18PM 23        I DO OBJECT TO THE WORD "DEFENSE" BECAUSE IT MAKES IT

12:18PM 24   SOUND LIKE IT'S A DEFENSE THAT WE NEED TO PROVE.

12:18PM 25             THE COURT:  OKAY.

| 12:18PM | 1 | ANYTHING FURTHER ON THIS? |
| 12:18PM | 2 | MS. VOLKAR:  NO, YOUR HONOR. |
| 12:18PM | 3 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 12:18PM | 4 | ALL RIGHT.  THE COURT IS GOING TO GIVE THE SUGGESTION THAT |
| 12:18PM | 5 | I PROPOSED TO YOU, CHANGING MODEL 5.12. |
| 12:18PM | 6 | I'M NOT GOING TO GIVE THE FINAL SENTENCE SUGGESTED BY THE |
| 12:18PM | 7 | GOVERNMENT AT LINE 15 THROUGH 16. |
| 12:18PM | 8 | I'LL CHANGE "DETERMINE" TO "CONSIDER," AND WE'LL CHANGE |
| 12:18PM | 9 | THE TITLE TO "GOOD FAITH" AND LEAVE IT AT THAT, STRIKING |
| 12:18PM | 10 | "DEFENSE." |
| 12:18PM | 11 | THIS IS FOR YOUR PREPARATION, WHOEVER IS DOING THIS. |
| 12:19PM | 12 | MS. SAHARIA:  THANK YOU. |
| 12:19PM | 13 | JUST TO BE CLEAR, YOUR HONOR, YOU'RE GOING TO SWAP OUT THE |
| 12:19PM | 14 | GOVERNMENT'S PROPOSAL AT 12 TO 17 WITH THE LANGUAGE THAT THE |
| 12:19PM | 15 | COURT READ FROM THE MODEL; RIGHT? |
| 12:19PM | 16 | THE COURT:  THAT'S RIGHT.  THAT'S RIGHT. |
| 12:19PM | 17 | MS. VOLKAR:  YOUR HONOR, JUST TO ALSO CLARIFY, DOES |
| 12:19PM | 18 | THAT INCLUDE THE SECOND SENTENCE THAT THE GOVERNMENT REQUESTED |
| 12:19PM | 19 | FROM THE COMMENTARY IN THE MODEL? |
| 12:19PM | 20 | THE COURT:  WELL, I HADN'T PUT THAT IN.  I WAS JUST |
| 12:19PM | 21 | GIVING MINE THAT I READ TO YOU. |
| 12:19PM | 22 | YOU WOULD LIKE THAT SECOND SENTENCE ADDED? |
| 12:19PM | 23 | MS. VOLKAR:  YES, YOUR HONOR. |
| 12:19PM | 24 | THE COURT:  ANY OBJECTION TO THAT, MS. SAHARIA? |
| 12:19PM | 25 | MS. SAHARIA:  YES.  I THINK THAT'S WHAT I WAS |

8750

| | | |
|---|---|---|
| 12:19PM | 1 | SPEAKING TO A FEW MINUTES AGO.  WE DO OBJECT TO THE SENTENCE, |
| 12:19PM | 2 | "HOWEVER, A DEFENDANT'S BELIEF THAT THE VICTIMS OF THE FRAUD |
| 12:19PM | 3 | WILL BE PAID IN THE FUTURE OR WILL SUSTAIN NO ECONOMIC LOSS IS |
| 12:19PM | 4 | NO DEFENSE TO THE CRIME." |
| 12:19PM | 5 | WE DO OBJECT TO THAT SENTENCE.  I DON'T THINK IT FITS THIS |
| 12:19PM | 6 | CASE.  IT'S NOT WHAT WE'RE GOING TO ARGUE. |
| 12:20PM | 7 | THAT'S AN INSTRUCTION THAT REBUTS A DEFENSE ARGUMENT THAT |
| 12:20PM | 8 | IT DOESN'T MATTER IF I DEFRAUDED SOMEONE AS LONG AS I THOUGHT |
| 12:20PM | 9 | THEY WOULD BE MADE WHOLE IN THE END. |
| 12:20PM | 10 | WE'RE NOT GOING TO ARGUE THAT.  I THINK IT'S A MISLEADING |
| 12:20PM | 11 | SENTENCE ON THE FACTS OF THIS CASE. |
| 12:20PM | 12 | BUT, AGAIN, IF THE COURT WERE GOING TO GIVE IT, I THINK IT |
| 12:20PM | 13 | WOULD BE APPROPRIATE TO ADD SOME SORT OF "STANDING ALONE" |
| 12:20PM | 14 | LANGUAGE, BUT I DO THINK THAT IT'S NOT REQUIRED ON THE FACTS OF |
| 12:20PM | 15 | THIS CASE AND COULD CONFUSE THE JURY. |
| 12:20PM | 16 | THE COURT:  YES. |
| 12:20PM | 17 | MS. VOLKAR:  YOUR HONOR, THIS WAS WHAT I WAS |
| 12:20PM | 18 | SPEAKING TO EARLIER.  I THINK THIS ALREADY HAS BEEN ARGUED |
| 12:20PM | 19 | REPEATEDLY THROUGH THE DEFENSE'S CROSS-EXAMINATION.  I LISTED |
| 12:20PM | 20 | OFF THREE EXAMPLES THAT I COULD THINK OF OFF THE TOP OF MY |
| 12:20PM | 21 | HEAD, WHICH IS THE CROSS-EXAMINATION OF INVESTORS FOCUSSED ON |
| 12:20PM | 22 | THE INCREASING VALUE OF THEIR SHARES OVER TIME.  I'M |
| 12:21PM | 23 | SPECIFICALLY THINKING OF WITH MR. EISENMAN THERE WAS DISCUSSION |
| 12:21PM | 24 | ABOUT HOW THERE WERE MULTIPLE OPPORTUNITIES THAT HE COULD HAVE |
| 12:21PM | 25 | SOLD HIS SHARES. |

| | | |
|---|---|---|
| 12:21PM | 1 | AND THEN THERE WAS THE CROSS-EXAMINATION OF DR. DAS WITH |
| 12:21PM | 2 | THE QUOTE FROM THE MOVIE, IF IT'S NOT ALL RIGHT, THEN IT'S NOT |
| 12:21PM | 3 | YET THE END.  THAT SEEMS TO SPEAK EXACTLY TO THIS, SOMETHING |
| 12:21PM | 4 | BETTER WILL COME ALONG IN THE FUTURE. |
| 12:21PM | 5 | AND THEN ONE OF THE CORE PIECES OF THE CASE, AS I |
| 12:21PM | 6 | UNDERSTAND MS. HOLMES'S TESTIMONY, THAT SHE UNDERSTOOD THE 4 |
| 12:21PM | 7 | SERIES OR THE MINILAB HAD THE CAPABILITY TO DO ALL OF THE TESTS |
| 12:21PM | 8 | AND THAT'S WHY SHE WAS NOT MISLEADING THE INVESTORS, ONE DAY IT |
| 12:21PM | 9 | WOULD WORK. |
| 12:21PM | 10 | AND THAT IS TALKING ABOUT WHAT WOULD COME ABOUT IN THE |
| 12:21PM | 11 | FUTURE. |
| 12:21PM | 12 | THE COURT:  SO HOW WOULD YOURS READ THEN? |
| 12:21PM | 13 | MS. VOLKAR:  YOUR HONOR, IN KEEPING WITH -- ONE OF |
| 12:21PM | 14 | TWO THINGS.  ONE, OF COURSE WE PROPOSED THE INSTRUCTION FROM |
| 12:21PM | 15 | TARALLO. |
| 12:21PM | 16 | BUT TAKING THE COURT'S DIRECTION OF LOOKING AT THE |
| 12:21PM | 17 | COMMENTARY, WE WOULD JUST ASK TO INCLUDE THAT SECOND SENTENCE, |
| 12:21PM | 18 | "HOWEVER, A DEFENDANT'S BELIEF THAT THE VICTIMS OF THE FRAUD |
| 12:22PM | 19 | WILL BE PAID IN THE FUTURE OR WILL SUSTAIN NO ECONOMIC LOSS IS |
| 12:22PM | 20 | NO DEFENSE TO THE CRIME." |
| 12:22PM | 21 | MS. SAHARIA:  IF I MAY, YOUR HONOR, THE PROBLEM IS |
| 12:22PM | 22 | THAT A DEFENDANT'S BELIEF THAT VICTIMS WILL SUSTAIN NO ECONOMIC |
| 12:22PM | 23 | LOSS MAY INDEED BE A DEFENSE TO THE CRIME BECAUSE THAT IS |
| 12:22PM | 24 | RELEVANT EVIDENCE THAT THE DEFENDANT THOUGHT WHAT SHE WAS |
| 12:22PM | 25 | SAYING WAS TRUE, THAT SHE THOUGHT THAT SHE WAS -- SHE HAD A |

```
12:22PM   1    SUCCESSFUL COMPANY, THAT SHE BELIEVED IN THE TRUTH OF WHAT SHE
12:22PM   2    WAS SAYING.  THAT IS A DEFENSE.
12:22PM   3        IT'S NOT A DEFENSE IF SHE IS KNOWINGLY MISLEADING PEOPLE.
12:22PM   4    BUT THE FACT THAT A DEFENDANT BELIEVES THAT HER VICTIMS OR
12:22PM   5    SUPPOSED VICTIMS WILL NOT SUSTAIN A LOSS MAY ITSELF BE EVIDENCE
12:22PM   6    THAT, THAT SHE BELIEVED WHAT SHE WAS SAYING WAS TRUE.
12:22PM   7        SO THAT VERY WELL COULD MISLEAD THE JURY.
12:22PM   8            THE COURT:  WELL, AND WHAT YOU'VE TOLD ME IS THAT'S
12:22PM   9    NOT WHAT YOU'RE GOING TO ARGUE --
12:22PM  10            MS. SAHARIA:  CORRECT, YOUR HONOR.
12:22PM  11            THE COURT:  -- BUT I UNDERSTAND THAT IT POTENTIALLY
12:23PM  12    COULD.
12:23PM  13        I GUESS THE LANGUAGE OF THAT IS SOMETHING THAT I WAS
12:23PM  14    UNCOMFORTABLE WITH, MS. VOLKAR.
12:23PM  15        I JUST --
12:23PM  16            MS. VOLKAR:  YOUR HONOR --
12:23PM  17            THE COURT:  THAT THE VICTIMS OF THE FRAUD WILL BE
12:23PM  18    PAID IN THE FUTURE, I'M NOT SURE THAT -- THAT LANGUAGE RELATES,
12:23PM  19    OF COURSE, DOESN'T IT, TO SOME OTHER TYPE OF A FACT PATTERN
12:23PM  20    MORE SO THAN THIS, I THINK.
12:23PM  21            MS. VOLKAR:  YOUR HONOR, I GO BACK TO THAT'S PART OF
12:23PM  22    WHY THE GOVERNMENT OFFERED THE TARALLO FORMULATION IN OUR -- IN
12:23PM  23    THE ECF 1188, THE LAST TWO LINES, WHICH I UNDERSTAND THE COURT
12:23PM  24    WAS PLANNING TO STRIKE.  THIS IS FROM TARALLO.
12:23PM  25            THE COURT:  RIGHT.
```

12:23PM 1          MS. VOLKAR:  "WHILE GOOD FAITH IS A DEFENSE TO WIRE

12:23PM 2    FRAUD, AN HONEST BELIEF IN THE ULTIMATE SUCCESS OF THE

12:23PM 3    ENTERPRISE IS NOT IN ITSELF A DEFENSE."

12:23PM 4          AND I THINK WHERE THE DISAGREEMENT BETWEEN THE PARTIES IS,

12:24PM 5    THE NINTH CIRCUIT HAS REPEATEDLY AFFIRMED THIS OVER AND OVER

12:24PM 6    AND OVER AGAIN.  IT'S IN THE COMMENTARY TO THE MODEL

12:24PM 7    INSTRUCTION.  IT'S IN TARALLO.

12:24PM 8          THEY DON'T LIKE THAT LANGUAGE BECAUSE IT LIMITS THE

12:24PM 9    DEFENSE THAT THEY WANT TO MAKE, BUT THAT'S EXACTLY WHY THE

12:24PM 10   GOVERNMENT THINKS IT MUST BE IN THE INSTRUCTION.

12:24PM 11         IT'S MISLEADING TO THE JURY TO NOT HAVE SOMETHING LIKE

12:24PM 12   THAT AS A GUARDRAIL AGAINST WHAT WE EXPECT THE DEFENSE WILL

12:24PM 13   ARGUE IN SOME WAY, SHAPE, OR FORM IN THEIR CLOSING ARGUMENTS.

12:24PM 14         MS. SAHARIA:  THAT'S JUST NOT TRUE, YOUR HONOR.  WE

12:24PM 15   ARE NOT GOING TO MAKE ARGUMENTS THAT ARE FORECLOSED BY LAW.

12:24PM 16         THE ISSUE IS NOT THAT THIS LANGUAGE FORECLOSES ARGUMENTS

12:24PM 17   WE WANT TO MAKE.  IT'S THAT THE JURY WILL BE MISLED INTO

12:24PM 18   THINKING THAT MS. HOLMES -- TO TAKE THE GOVERNMENT'S PROPOSAL

12:24PM 19   AT ECF 1188, ECF PAGE 30, THE JURY WILL BE MISLED INTO THINKING

12:24PM 20   THAT IF MS. HOLMES HAD AN HONEST BELIEF IN THE ULTIMATE SUCCESS

12:25PM 21   OF THE ENTERPRISE -- WHICH OF COURSE SHE DID, SHE VERY MUCH

12:25PM 22   BELIEVED IN THERANOS -- THAT THAT SOMEHOW IS NOT RELEVANT TO

12:25PM 23   THEIR DETERMINATION.

12:25PM 24         AND OF COURSE IT'S RELEVANT TO THEIR DETERMINATION OF

12:25PM 25   WHETHER SHE INTENDED TO DEFRAUD.  THAT IS A RELEVANT FACT IF

12:25PM  1    SHE TRULY BELIEVED THAT THERANOS HAD COME UP WITH TECHNOLOGY

12:25PM  2    THAT WORKED AND THAT WAS GOING TO SUCCEED.  THAT'S HIGHLY

12:25PM  3    RELEVANT.

12:25PM  4        THIS LANGUAGE WILL MISLEAD THE JURY.

12:25PM  5            THE COURT:  WELL, IF IT'S QUALIFIED, MS. SAHARIA,

12:25PM  6    "IS NOT IN ITSELF," "IS NOT WITHOUT MORE" --

12:25PM  7            MS. SAHARIA:  I THINK IT'S STILL CONFUSING IN MY

12:25PM  8    VIEW.  AN HONEST BELIEF IN THE ULTIMATE SUCCESS OF THE

12:25PM  9    ENTERPRISE IS NOT IN ITSELF A DEFENSE.

12:25PM 10    IT IS A DEFENSE.  IF THERE'S -- IF IT'S ACCOMPANIED WITH

12:25PM 11    FALSE AND MISLEADING -- KNOWINGLY FALSE AND MISLEADING

12:25PM 12    STATEMENTS, IT MAY NOT BE A DEFENSE.  BUT THAT CONCEPT ISN'T IN

12:25PM 13    THIS SENTENCE.

12:25PM 14    I THINK YOUR HONOR'S PROPOSAL TO INCLUDE THE FIRST

12:25PM 15    LANGUAGE FROM THE MODEL COMMENTARY MAKES PERFECT SENSE.  IT'S A

12:26PM 16    BALANCED STATEMENT.  IT DOESN'T TELL THE JURY WHICH WAY TO COME

12:26PM 17    OUT.  IT SAYS, "YOU MAY CONSIDER WHETHER, IN DETERMINING

12:26PM 18    WHETHER OR NOT THE DEFENDANT ACTED WITH INTENT TO DEFRAUD."

12:26PM 19        THE GOVERNMENT CAN ARGUE FROM THAT SENTENCE EVERYTHING IT

12:26PM 20    WANTS TO ARGUE.  IT CAN ARGUE THAT MS. HOLMES DIDN'T HAVE AN

12:26PM 21    HONEST GOOD FAITH BELIEF IN THE TRUTH OF THE

12:26PM 22    MISREPRESENTATIONS.  IT CAN MAKE ALL OF THE ARGUMENTS IT WANTS

12:26PM 23    TO MAKE FROM THAT SENTENCE.

12:26PM 24            THE COURT:  WHEN I LOOKED AT MY PROPOSAL, I WAS

12:26PM 25    ACTUALLY LOOKING AT JUST THE REVERSE.  I WAS LOOKING AT THIS

| | | |
|---|---|---|
| 12:26PM | 1 | SAYING, WELL, THE GOVERNMENT -- EXCUSE ME, THE DEFENSE WILL |
| 12:26PM | 2 | STILL BE ABLE TO ARGUE WHATEVER. |
| 12:26PM | 3 | MS. SAHARIA:  WE BOTH CAN ARGUE WHATEVER FROM THAT |
| 12:26PM | 4 | SENTENCE, YOUR HONOR. |
| 12:26PM | 5 | THE COURT:  THAT'S WHAT I WAS LOOKING AT. |
| 12:26PM | 6 | ALL RIGHT.  THANK YOU. |
| 12:26PM | 7 | I'M GOING TO KEEP IT AS IS, MS. VOLKAR.  THANK YOU FOR |
| 12:26PM | 8 | YOUR COMMENT. |
| 12:26PM | 9 | ALL RIGHT.  WHAT ELSE? |
| 12:26PM | 10 | MS. SAHARIA:  I THINK WE'RE UP TO AIDING AND |
| 12:26PM | 11 | ABETTING, YOUR HONOR. |
| 12:26PM | 12 | MS. VOLKAR:  I'M GOING TO LET MR. LEACH COME TO THE |
| 12:27PM | 13 | PODIUM, YOUR HONOR. |
| 12:27PM | 14 | THE COURT:  ALL RIGHT.  ONE THING I WANTED TO -- I'M |
| 12:27PM | 15 | SORRY, MS. VOLKAR, BEFORE YOU LEAVE, I WAS LOOKING AT MAYBE |
| 12:27PM | 16 | REFINING A COUPLE OF THE INSTRUCTIONS. |
| 12:27PM | 17 | KNOWINGLY, I THINK YOU WERE TALKING ABOUT KNOWINGLY? |
| 12:27PM | 18 | MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR. |
| 12:27PM | 19 | THE COURT:  AND IT SEEMS TO ME THAT MAYBE WE NEED TO |
| 12:27PM | 20 | DESCRIBE KNOWINGLY AND WILLFULLY AND ADHERE THEM TO THE |
| 12:27PM | 21 | SPECIFIC INSTRUCTIONS, THAT IS, CONSPIRACY AND WIRE FRAUD. |
| 12:27PM | 22 | AND I WONDER IF WE NEED TO -- BECAUSE I LOOK AT THESE AND |
| 12:27PM | 23 | THERE MIGHT BE SOME JUROR CONFUSION AS TO THOSE, WITHOUT |
| 12:27PM | 24 | TETHERING THEM TO THE INSTRUCTIONS SPECIFIC, AND I WONDERED IF, |
| 12:27PM | 25 | FOR KNOWINGLY -- I'M AT 23, NUMBER 23 -- IF WE CAN ADD SOME |

| | | |
|---|---|---|
| 12:27PM | 1 | LANGUAGE THAT SAYS "AS DESCRIBED IN INSTRUCTION 20 MEANS," OR |
| 12:27PM | 2 | SOMETHING LIKE THAT. |
| 12:27PM | 3 | AND THE SAME THING WITH WILLFULLY, "AS DESCRIBED IN |
| 12:27PM | 4 | INSTRUCTION NUMBER," WHATEVER CONSPIRACY IS. |
| 12:28PM | 5 | MS. SAHARIA:  I THINK THAT WOULD BE FINE, |
| 12:28PM | 6 | YOUR HONOR.  OUR CONCERN WITH THIS INSTRUCTION IS THAT WE DO |
| 12:28PM | 7 | THINK THAT THERE IS SOME CONFLICT BETWEEN THE KNOWING STANDARD |
| 12:28PM | 8 | AND THE WILLFULLY STANDARD, AND SO IT MIGHT HELP TO ALLEVIATE |
| 12:28PM | 9 | SOME CONFUSION IF THAT WERE INCLUDED. |
| 12:28PM | 10 | THE COURT:  IT SEEMS LIKE IF THEY'RE TETHERED TO |
| 12:28PM | 11 | THOSE SPECIFIC INSTRUCTIONS, THAT WOULD ELIMINATE ANY OF THAT |
| 12:28PM | 12 | CROSS CONFUSION. |
| 12:28PM | 13 | MS. VOLKAR:  WELL, YOUR HONOR, I THINK THIS IS WHERE |
| 12:28PM | 14 | THE FUNDAMENTAL DISAGREEMENT LIES.  WHEN I LOOK AT INSTRUCTION |
| 12:28PM | 15 | NUMBER 16, THE SECOND ELEMENT IS THAT SHE BECAME A MEMBER OF |
| 12:28PM | 16 | THE ALLEGED CONSPIRACY KNOWING OF AT LEAST ONE OF ITS OBJECTS. |
| 12:28PM | 17 | AND THE DEFENSE ORIGINALLY WANTED TO INSERT IN THERE "AND |
| 12:28PM | 18 | WILLFULLY HELPING TO INTEND TO ACCOMPLISH THAT," AND I BELIEVE |
| 12:28PM | 19 | THAT'S STILL THEIR POSITION OF WHERE THAT WILLFULLY FILLS IN. |
| 12:28PM | 20 | I THINK IT'S READING WORDS THAT AREN'T IN THE STATUTE, |
| 12:28PM | 21 | THAT AREN'T IN THE ELEMENTS. |
| 12:28PM | 22 | I THINK THE GREATER RISK FOR JURY CONFUSION IS TETHERING |
| 12:28PM | 23 | ONE INSTRUCTION TO ONE AND NOT TO BOTH WHEN I THINK THE |
| 12:28PM | 24 | STANDARD IS KNOWINGLY -- THE STANDARD IS THE INTENT TO DECEIVE |
| 12:29PM | 25 | AND CHEAT. |

| | | |
|---|---|---|
| 12:29PM | 1 | I WORRY THAT TETHERING THEM IN THAT MANNER COULD CAUSE |
| 12:29PM | 2 | GREATER CONFUSION ON WHAT THE STANDARD OF MENS REA IS. |
| 12:29PM | 3 | MS. SAHARIA:  I'M HAPPY TO LOOK AT, IF THE COURT IS |
| 12:29PM | 4 | GOING TO PROPOSE SOMETHING, TO LOOK AT THAT. |
| 12:29PM | 5 | THE COURT:  WELL, I LOOKED AT THAT, AND I'VE DONE |
| 12:29PM | 6 | THAT IN OTHER INSTRUCTIONS BEFORE WHERE THERE MIGHT SOME |
| 12:29PM | 7 | CONFUSION. |
| 12:29PM | 8 | IF THE PARTIES THINK THAT AT THE RISK OF CONFUSION, AND |
| 12:29PM | 9 | YOU'RE ACCEPTING THAT THE RISK OF CONFUSION DOESN'T EXIST, OR |
| 12:29PM | 10 | IF I'M DOING TOO MUCH ON THIS, I'M HAPPY TO LEAVE IT AS IS. |
| 12:29PM | 11 | BUT I JUST LOOKED AT IT AS A POSSIBILITY TO CLEAN UP ANY |
| 12:29PM | 12 | POSSIBLE CONFUSION THERE. |
| 12:29PM | 13 | BUT IF YOU FEEL IT'S NOT NECESSARY, I WON'T GIVE IT. |
| 12:29PM | 14 | MS. SAHARIA:  I THINK IT DEPENDS ON WHAT THE COURT |
| 12:29PM | 15 | ULTIMATELY DOES WITH THE WILLFULLY INSTRUCTION, BUT I CAN SEE A |
| 12:29PM | 16 | POTENTIAL FOR CONFUSION IF THE COURT ACCEPTS OUR PROPOSAL OR |
| 12:29PM | 17 | PART OF OUR PROPOSAL. |
| 12:29PM | 18 | SO I DO THINK THAT THERE'S A POTENTIAL FOR CONFUSION |
| 12:30PM | 19 | BETWEEN THE KNOWING DEFINITION AND THE WILLFULLY DEFINITION -- |
| 12:30PM | 20 | THE COURT:  OKAY. |
| 12:30PM | 21 | MS. SAHARIA:  -- WHICH IS WHY WE HAD OBJECTED TO |
| 12:30PM | 22 | PART OF THE KNOWINGLY DEFINITION IN THE FIRST PLACE. |
| 12:30PM | 23 | THE COURT:  ALL RIGHT.  WELL, LET'S RETURN TO THIS. |
| 12:30PM | 24 | LET'S GO ON TO, YES, AIDING AND ABETTING.  THAT'S |
| 12:30PM | 25 | MR. LEACH? |

| | | |
|---|---|---|
| 12:30PM | 1 | MR. LEACH: YES, YOUR HONOR. |
| 12:30PM | 2 | MS. VOLKAR: THANK YOU, YOUR HONOR. |
| 12:30PM | 3 | THE COURT: ALL RIGHT. MR. LEACH, DO YOU WANT TO GO |
| 12:30PM | 4 | FIRST ON THIS? |
| 12:30PM | 5 | MR. LEACH: THE COURT SHOULD GIVE THE MODEL |
| 12:30PM | 6 | INSTRUCTION FOR AIDING AND ABETTING. THIS IS A CONCEPT THAT IS |
| 12:30PM | 7 | APPLIED TO ALL TYPES OF CRIMINAL CASES THROUGHOUT THE |
| 12:30PM | 8 | NINTH CIRCUIT. I DON'T SEE ANYTHING UNIQUE TO THIS CASE TO |
| 12:30PM | 9 | CAUSE THE COURT TO DEVIATE FROM THAT. |
| 12:30PM | 10 | WE HAD PROPOSED THE LANGUAGE IN YELLOW, WHICH IS DRAWN |
| 12:30PM | 11 | DIRECTLY FROM THE MODEL INSTRUCTION. |
| 12:31PM | 12 | THE DEFENSE IS PROPOSING TO ADD "TOOK AN AFFIRMATIVE ACT |
| 12:31PM | 13 | TO AID, COUNSEL, COMMAND." AND THEIR CITATION TO THAT IS THE |
| 12:31PM | 14 | ROSEMOND CASE. THE ROSEMOND CASE IS CITED IN THE MODEL |
| 12:31PM | 15 | INSTRUCTION, AND WITHOUT A RECOMMENDATION THAT THIS LANGUAGE |
| 12:31PM | 16 | ABOUT AN AFFIRMATIVE ACT BE ADDED. |
| 12:31PM | 17 | IN ADDITION, THE MODEL INSTRUCTION HAS FOUR ELEMENTS FOR |
| 12:31PM | 18 | AIDING AND ABETTING. THE DEFENSE IS PROPOSING A FIFTH ELEMENT |
| 12:31PM | 19 | THAT IT'S LABELLED AT LINES 16 THROUGH 17, ADDING THE MENTAL |
| 12:31PM | 20 | STATE FOR INTENT TO DEFRAUD. |
| 12:31PM | 21 | WE OBJECT TO THAT. THE COURT SHOULD GIVE THE MODEL |
| 12:31PM | 22 | INSTRUCTION. |
| 12:31PM | 23 | THE COURT: OKAY. THANK YOU. |
| 12:31PM | 24 | MS. SAHARIA: JUST A FEW POINTS, YOUR HONOR. |
| 12:31PM | 25 | WE DO OBJECT TO THIS INSTRUCTION IN ITS ENTIRETY. THE |

| 12:31PM | 1 | INDICTMENT DOES NOT CHARGE AIDING AND ABETTING OR EVEN CITE |
| 12:31PM | 2 | SECTION 2 OF 18 U.S.C. |
| 12:31PM | 3 | I UNDERSTAND, OF COURSE, THAT AIDING AND ABETTING IS |
| 12:32PM | 4 | IMPLIED IN ALL INDICTMENT, AND SO THAT IN AND OF ITSELF IS NOT |
| 12:32PM | 5 | DISPOSITIVE. |
| 12:32PM | 6 | THE PARTIES FILED PROPOSED JURY INSTRUCTIONS BEFORE TRIAL. |
| 12:32PM | 7 | THE GOVERNMENT DID NOT INCLUDE AN AIDING AND ABETTING |
| 12:32PM | 8 | INSTRUCTION IN ITS PROPOSED INSTRUCTIONS. |
| 12:32PM | 9 | THOSE INSTRUCTIONS SERVED TO PUT THE COURT AND THE |
| 12:32PM | 10 | PARTIES, THE DEFENSE, ON NOTICE AS TO WHAT THEORIES OF |
| 12:32PM | 11 | LIABILITY THE GOVERNMENT INTENDED TO PURSUE AT TRIAL. |
| 12:32PM | 12 | WE HAD NO NOTICE BEFORE TRIAL THAT THEY INTENDED TO PURSUE |
| 12:32PM | 13 | AN AIDING AND ABETTING THEORY OF LIABILITY. |
| 12:32PM | 14 | WE THEN HAD A DISCUSSION OF AIDING AND ABETTING BEFORE THE |
| 12:32PM | 15 | TESTIMONY OF DR. DAS WHEN IT CAME TO AIDING AND ABETTING CLIA |
| 12:32PM | 16 | VIOLATIONS.  THE GOVERNMENT NEVER SUGGESTED IN THAT COLLOQUY |
| 12:32PM | 17 | THAT AIDING AND ABETTING WAS AT ISSUE IN THIS CASE. |
| 12:32PM | 18 | SO WE SUBMIT THAT TO SPRING AIDING AND ABETTING LIABILITY |
| 12:32PM | 19 | ON US AT THE CLOSE OF EVIDENCE IS PREJUDICIAL. |
| 12:32PM | 20 | I WOULD CITE THE COURT TO THE U.S.A. V. GASKINS CASE, |
| 12:32PM | 21 | 849 F.2D 454, NINTH CIRCUIT 1988, WHERE THE COURT SAID THAT |
| 12:33PM | 22 | "LIABILITY AS PRINCIPAL AND AS AIDER AND ABETTOR ARE TWO |
| 12:33PM | 23 | DIFFERENT THEORIES OF LIABILITY, TWO CONCEPTUALLY DIFFERENT |
| 12:33PM | 24 | THEORIES."  AND THE COURT SAID THAT THE DEFENSE MIGHT ARGUING |
| 12:33PM | 25 | AIDING AND ABETTING LIABILITY DIFFERENTLY THAN PRINCIPAL |

8760

12:33PM   1    LIABILITY IF IT WAS ON NOTICE.

12:33PM   2         THAT CASE IS A LITTLE DIFFERENT, I WILL CONCEDE, BECAUSE

12:33PM   3    IN THAT CASE THE COURT DECIDED TO INSTRUCT ON AIDING AND

12:33PM   4    ABETTING LIABILITY AFTER CLOSING ARGUMENTS FOR THE FIRST TIME,

12:33PM   5    SO I WILL CONCEDE IT'S A LITTLE DIFFERENT.

12:33PM   6         BUT WE WILL SUBMIT THAT THERE SHOULD BE NO AIDING AND

12:33PM   7    ABETTING INSTRUCTION AT ALL.

12:33PM   8         BUT PUTTING THAT ASIDE, AND I DON'T WANT TO BELABOR THAT,

12:33PM   9    WE DO HAVE A FEW OBJECTIONS TO THE LANGUAGE OF THE INSTRUCTION.

12:33PM  10         FIRST, WE DO REQUEST THAT THE COURT INCLUDE AT LINE 10 THE

12:33PM  11    WORDS "TOOK AN AFFIRMATIVE ACT," WHICH COMES FROM THE SUPREME

12:33PM  12    COURT'S DECISION AT ROSEMOND; AND SECOND, AT LINES 16 AND 17,

12:34PM  13    WE DO THINK THIS ELEMENT OF AIDING AND ABETTING LIABILITY IS

12:34PM  14    ABSENT FROM THE MODEL INSTRUCTION.

12:34PM  15         NINTH CIRCUIT CASE LAW MAKES CLEAR THAT THERE ARE TWO

12:34PM  16    INTENTS THAT ARE REQUIRED AS PART OF AIDING AND ABETTING

12:34PM  17    LIABILITY.  THERE IS THE INTENT TO FACILITATE THE UNDERLYING

12:34PM  18    CRIME, BUT THERE'S ALSO YOU NEED TO HAVE THE UNDERLYING INTENT

12:34PM  19    OF THAT CRIME, IN THIS CASE THE INTENT TO DEFRAUD.

12:34PM  20         WE CITED THE COURT, AT FOOTNOTE 35, TO THE SAYETSITTY

12:34PM  21    CASE -- THAT'S S-A-Y-E-T-S-I-T-T-Y -- AND AGAIN, THE GASKINS

12:34PM  22    CASE WHICH LAY OUT THE ELEMENTS OF AIDING AND ABETTING

12:34PM  23    LIABILITY AND IDENTIFY THOSE TWO INTENTS AS SEPARATE ELEMENTS

12:34PM  24    OF THAT LIABILITY, AND THAT'S MISSING FROM THE MODEL

12:34PM  25    INSTRUCTION.

| | |
|---|---|
| 12:34PM | 1 |
| 12:34PM | 2 |
| 12:35PM | 3 |
| 12:35PM | 4 |
| 12:35PM | 5 |
| 12:35PM | 6 |
| 12:35PM | 7 |
| 12:35PM | 8 |
| 12:35PM | 9 |
| 12:35PM | 10 |

12:34PM 1    TWO OTHER VERY BRIEF POINTS.  I DO THINK IT READS SOMEWHAT

12:34PM 2    ODDLY TO SAY AT LINES 12, 14, AND THEN LINE 1 OF THE NEXT PAGE

12:35PM 3    TO SAY COUNTS THREE THROUGH EIGHT AND TEN THROUGH TWELVE,

12:35PM 4    WITHOUT SAYING "WIRE CHARGE AS CHARGED IN."  FOR INSTANCE, IF

12:35PM 5    YOU LOOK AT LINE 14, IT WOULD READ, UNDER THE GOVERNMENT'S

12:35PM 6    PROPOSAL, "MS. HOLMES ACTED WITH THE INTENT TO FACILITATE

12:35PM 7    COUNTS THREE THROUGH EIGHT."  THAT READS A LITTLE ODDLY TO ME.

12:35PM 8    THE INTENT IS TO FACILITATE THE OFFENSE, AND THE OFFENSE

12:35PM 9    HERE IS WIRE FRAUD, AND SO WE THINK THAT LANGUAGE SHOULD BE

12:35PM 10   ADDED IN THOSE LOCATIONS.

12:35PM 11   AND THEN THE LAST POINT I WOULD MAKE IS ON THE NEXT PAGE,

12:35PM 12   ECF 34, LINES 6 AND 7.  THE MODEL INSTRUCTION READS AS IF

12:35PM 13   THERE'S TWO DEFENDANTS IN THE CASE AND IS TELLING THE JURY YOU

12:35PM 14   DON'T NEED TO DECIDE WHICH DEFENDANT IS THE PRINCIPAL AND WHICH

12:35PM 15   IS THE AIDER AND ABETTOR.

12:35PM 16   THAT LANGUAGE DOESN'T MAKE SENSE IN THIS CASE SINCE

12:35PM 17   THERE'S ONLY ONE DEFENDANT, SO WE THINK THE COURT SHOULD CHANGE

12:35PM 18   "WHICH DEFENDANT" TO "WHICH PERSON."

12:36PM 19   THE COURT:  OKAY.  THANK YOU.

12:36PM 20   MR. LEACH?

12:36PM 21   MR. LEACH:  YOUR HONOR, WITH RESPECT TO THE NOTICE

12:36PM 22   POINT, THE DEFENDANT CONCEDES THAT AIDING AND ABETTING

12:36PM 23   LIABILITY IS IMPLICIT IN EVERY INDICTMENT.

12:36PM 24   THE INDICTMENT DOESN'T SPELL OUT PINKERTON LIABILITY, IT

12:36PM 25   DOESN'T SPELL OUT THE COSCHEMER THEORY OF LIABILITY.  THERE'S

12:36PM 1    BEEN AMPLE NOTICE THERE, AND WE SHOULD GIVE AN INSTRUCTION FOR

12:36PM 2    ANY THEORY THAT IS SUPPORTED BY THE EVIDENCE AT THE END OF THE

12:36PM 3    DAY.  SO I DON'T THINK THE NOTICE ARGUMENT IS WELL TAKEN.

12:36PM 4        I HAVE NO PROBLEM WITH THE LAST TWO SUGGESTIONS

12:36PM 5    MS. SAHARIA WAS MAKING ABOUT, ON LINE 14, SAYING, "WIRE FRAUD

12:36PM 6    AS CHARGED IN," AND I HAVE NO PROBLEM WITH, ON PAGE 34, LINES 6

12:36PM 7    TO 7, SAYING, "WHICH PERSON ACTUALLY COMMITTED THE CRIME, AND

12:36PM 8    WHICH PERSON AIDED AND ABETTED."

12:36PM 9        AND I JUST SEE NO OTHER REASON TO DEVIATE FROM THE MODEL

12:36PM 10   INSTRUCTION UNDER THE CIRCUMSTANCES.

12:36PM 11           THE COURT:  OKAY.  WHY SHOULDN'T WE STAY WITH THE

12:37PM 12   MODEL LANGUAGE ON LINE 10?  YOUR SUGGESTED LANGUAGE,

12:37PM 13   MS. SAHARIA, DOESN'T THE, DOESN'T THE MODEL ACCOMPLISH THAT?

12:37PM 14           MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR.  I THINK

12:37PM 15   THE LANGUAGE "AIDED," AND PARTICULARLY "COUNSELLED" IS A WORD

12:37PM 16   THAT MAY NOT CONNOTE AN ACTUAL AFFIRMATIVE ACT.

12:37PM 17       SO WE THINK THAT THAT LANGUAGE, "AIDED, COUNSELLED,

12:37PM 18   COMMANDED, INDUCED, OR PROCURED" IS NOT CLEAR ENOUGH TO MAKE

12:37PM 19   CLEAR TO THE JURY THAT AN AFFIRMATIVE ACT IS REQUIRED, WHICH

12:37PM 20   THE SUPREME COURT MADE CLEAR IN THE ROSEMOND CASE.

12:37PM 21           THE COURT:  OKAY.

12:37PM 22           MS. SAHARIA:  JUST TO BE CLEAR, OUR SUGGESTION TO

12:37PM 23   ADD THE LANGUAGE "WIRE FRAUD AS CHARGED IN" IS AT BOTH LINES 12

12:37PM 24   AND 14, AND THEN LINE 1 OF THE NEXT PAGE.

12:38PM 25           THE COURT:  WE'LL MAKE THOSE CHANGES TO THE WIRE

| | |
|---|---|
| 12:38PM | 1 | FRAUD AS INDICATED, AND CHANGING "DEFENDANT" TO "PERSON" ON
| 12:38PM | 2 | LINES 6 AND 7.  I THINK THOSE ARE APPROPRIATE.
| 12:38PM | 3 | AND I'M GOING TO USE THE MODEL INSTRUCTION WITH THE FOUR
| 12:38PM | 4 | ELEMENTS.  I THINK THAT'S SUFFICIENT TO FULLY INFORM, AND THE
| 12:38PM | 5 | PARTIES CAN ARGUE THE STATE OF THE EVIDENCE.
| 12:38PM | 6 | LET'S MOVE NEXT TO 25, AND THIS IS SCHEME TO DEFRAUD.
| 12:38PM | 7 | MS. SAHARIA:  THIS IS COSCHEMER LIABILITY,
| 12:38PM | 8 | YOUR HONOR?
| 12:38PM | 9 | THE COURT:  YES.
| 12:38PM | 10 | MS. SAHARIA, LET ME JUST START OUT, YOU KNOW, YOURS IS
| 12:39PM | 11 | QUITE LENGTHY.
| 12:39PM | 12 | MS. SAHARIA:  IT IS, YOUR HONOR, ALTHOUGH I WILL SAY
| 12:39PM | 13 | THAT OURS IS NO LENGTHIER THAN THE PINKERTON INSTRUCTION
| 12:39PM | 14 | BECAUSE WE DIVIDED IT.
| 12:39PM | 15 | THE COURT:  I UNDERSTAND.
| 12:39PM | 16 | MS. SAHARIA:  AS WE SAID BEFORE, AND AS THE
| 12:39PM | 17 | GOVERNMENT AGREED IN THE PINKERTON ONE, THERE ARE TWO DIFFERENT
| 12:39PM | 18 | SCHEMES, JUST LIKE THERE ARE TWO DIFFERENT CONSPIRACIES, AND SO
| 12:39PM | 19 | THEY AGREED IN THE PINKERTON ONE TO DIVIDE IT SO THE JURY IS
| 12:39PM | 20 | NOT CONFUSED BETWEEN THE SCHEMES AND THE ACTS.
| 12:39PM | 21 | BUT WHAT I WILL SAY IS THE FOLLOWING:  PUTTING ASIDE OUR
| 12:39PM | 22 | MORE GENERAL OBJECTION TO COSCHEMER LIABILITY IN GENERAL,
| 12:39PM | 23 | THERE'S TWO FUNDAMENTAL PROBLEMS WITH THE GOVERNMENT AND MODEL
| 12:39PM | 24 | INSTRUCTION.
| 12:39PM | 25 | THE FIRST IS THE FAILURE TO MATCH UP THE SCHEMES WITH THE

8764

12:39PM  1    COUNTS, WHICH IS AN ISSUE HERE BECAUSE THERE'S TWO DIFFERENT

12:39PM  2    SCHEMES.

12:39PM  3        BUT EVEN MORE FUNDAMENTALLY THAN THAT, THE MODEL

12:39PM  4    INSTRUCTION IN MY VIEW IS BIZARRELY INADEQUATE WHEN YOU COMPARE

12:39PM  5    IT TO ALL OF THE OTHER MODEL INSTRUCTIONS, WHICH TELL THE JURY

12:40PM  6    THAT THEY NEED TO FIND CERTAIN ELEMENTS BEYOND A REASONABLE

12:40PM  7    DOUBT.

12:40PM  8        AND THAT'S HOW ALL OF THE OTHER MODEL INSTRUCTIONS AND

12:40PM  9    INSTRUCTIONS THAT WE'VE BEEN DISCUSSING ARE FRAMED.  THEY TELL

12:40PM  10   THE JURY, "TO FIND MS. HOLMES GUILTY ON BLAH BLAH BLAH, YOU

12:40PM  11   NEED TO FIND BEYOND A REASONABLE DOUBT THE FOLLOWING ELEMENTS."

12:40PM  12       THIS MODEL INSTRUCTION ON COSCHEMER LIABILITY DOES NONE OF

12:40PM  13   THAT.  THERE'S NO, NO REQUIREMENT HERE TO FIND LIABILITY BEYOND

12:40PM  14   A REASONABLE DOUBT, AND IT DOESN'T LIST THE ELEMENTS FOR THE

12:40PM  15   JURY IN THE WAY THAT EVERY OTHER INSTRUCTION DOES.

12:40PM  16       SO ALL THAT WE DID IS TO MODEL THE COSCHEMER LIABILITY

12:40PM  17   INSTRUCTION AFTER ALL OF THE OTHER INSTRUCTIONS, INCLUDING THE

12:40PM  18   PINKERTON INSTRUCTION, BY TELLING THE JURY THAT IT NEEDS TO

12:40PM  19   FIND THE ELEMENTS BEYOND A REASONABLE DOUBT.

12:40PM  20       SUBSTANTIVELY I DON'T THINK IT'S REALLY ANY DIFFERENT THAN

12:40PM  21   THE GOVERNMENT MODEL AND PINKERTON.  IT'S JUST THAT WE PUT IT

12:41PM  22   IN THE FORMAT THAT THE JURY WILL UNDERSTAND AND THAT CONVEYS

12:41PM  23   THE GOVERNMENT'S BURDEN OF PROOF, WHICH IS ABSENT FROM THE

12:41PM  24   MODEL.

12:41PM  25       (PAUSE IN PROCEEDINGS.)

12:41PM  1        THE COURT:  MR. LEACH, OTHER THAN THE LENGTH OF THE

12:41PM  2    DEFENSE PROPOSED INSTRUCTIONS, DOES IT OTHERWISE COMPORT WITH

12:41PM  3    THE MODEL?

12:41PM  4        MR. LEACH:  I THINK THERE ARE ELEMENTS THAT THE

12:41PM  5    GOVERNMENT WOULD STILL OBJECT TO, YOUR HONOR.

12:41PM  6    IN LINE 18 IT SAYS, "BASED ON THE FACTS THAT WERE KNOWN TO

12:41PM  7    HER," I THINK THAT'S AN ADDITION FROM BOTH THE MODEL FOR

12:42PM  8    COSCHEMER LIABILITY, BUT ALSO THE MODEL FOR PINKERTON

12:42PM  9    LIABILITY.  SO I THINK THAT'S ADDING LANGUAGE THAT WOULD NOT BE

12:42PM 10    REQUIRED.

12:42PM 11        MS. SAHARIA:  THAT'S CORRECT, YOUR HONOR.

12:42PM 12    AND WE DID AGREE TO REMOVE THAT LANGUAGE FROM THE AGREED

12:42PM 13    UPON PINKERTON INSTRUCTION, SO ASSUMING WE COULD OTHERWISE

12:42PM 14    AGREE ON THIS INSTRUCTION, I THINK WE WOULD BE FINE REMOVING

12:42PM 15    THAT LANGUAGE AS WELL.

12:42PM 16        THE COURT:  OKAY.  THANK YOU.

12:42PM 17        MR. LEACH:  OTHER THAN THAT, YOUR HONOR, I'M NOT

12:42PM 18    CURRENTLY IDENTIFYING ANYTHING THAT IS -- THAT WOULD DIFFER

12:42PM 19    FROM THE PINKERTON THEORY.

12:42PM 20    BUT, AGAIN, I THINK THE MODEL CAPTURES WHAT -- ADEQUATELY

12:43PM 21    DESCRIBES THE THEORY OF LIABILITY.

12:43PM 22    IF THE CRITICISM IS THAT IT DOESN'T SAY "BEYOND A

12:43PM 23    REASONABLE DOUBT," I THINK THAT'S INSTRUCTED ELSEWHERE, BUT I

12:43PM 24    DO THINK THAT ELEMENT COULD BE ADDED TO THE MODEL.

12:43PM 25    BUT OUR COMPLAINTS HERE WERE LARGELY THAT IT'S ADDING IN

12:43PM  1    THAT ONE PART, AND IT'S ALSO LONGER THAN NECESSARY TO TELL THE

12:43PM  2    JURY WHAT IT NEEDS TO KNOW.

12:43PM  3            THE COURT:  ALL RIGHT.  THANK YOU.

12:43PM  4        I'LL GIVE THIS AS MODIFIED, EDITING LINE 18 AS YOU BOTH

12:43PM  5    AGREED TO DO.

12:43PM  6            MS. SAHARIA:  THANK YOU, YOUR HONOR.

12:43PM  7        AND WE WOULD CONSENT TO REMOVE THE SAME LANGUAGE ON THE

12:43PM  8    NEXT PAGE, WHICH IS LINE 14.

12:43PM  9            THE COURT:  YES.

12:43PM 10            MS. SAHARIA:  IT'S REPEATED TWICE.

12:43PM 11            THE COURT:  ALL RIGHT.  THANK YOU.

12:43PM 12        WE'RE NOW ON 27, WHICH IS VICTIM'S CONDUCT, AND THIS IS

12:43PM 13    THE OMISSION AGAIN.

12:43PM 14            MS. SAHARIA:  CORRECT.  APART FROM THAT, WE HAVE

12:43PM 15    AGREED TO THE GOVERNMENT'S PROPOSAL.

12:43PM 16            THE COURT:  WE'RE GOING TO TALK ABOUT OMISSIONS

12:43PM 17    AGAIN IN JUST A MOMENT.

12:43PM 18            MR. LEACH:  YOUR HONOR, I MIGHT BE ABLE TO --

12:44PM 19            THE COURT:  HELP OUT?

12:44PM 20            MR. LEACH:  -- CIRCUMSCRIBE AND HELP OUT ON THAT

12:44PM 21    DISCUSSION.

12:44PM 22            THE COURT:  SURE.

12:44PM 23            MR. LEACH:  HAVING CONSIDERED THE DEFENSE ARGUMENTS

12:44PM 24    AND AFTER DISCUSSION AND UPON SOME REFLECTION, WE WOULD BE FINE

12:44PM 25    TAKING OUT THE OMISSIONS THEORY IN THE WIRE FRAUD INSTRUCTION,

12:44PM   1      AND WE WOULD BE FINE TAKING OUT "FACTS OMITTED" IN THIS

12:44PM   2      PARTICULAR INSTRUCTION.

12:44PM   3               THE COURT:  OKAY.

12:44PM   4               MR. LEACH:  SO THIS IS JURY INSTRUCTION NUMBER 20

12:44PM   5      BEGINNING ON PAGE 26.  WE WOULD AGREE TO TAKE OUT "OMITTED

12:44PM   6      FACTS" IN LINE 5 AND LINE 9; AND REMOVING, ON PAGE 28, LINES 17

12:44PM   7      TO 21, THE ONE SPELLING OUT THE THEORY FOR OMISSIONS.

12:45PM   8          I THINK IT'S WARRANTED BY THE EVIDENCE, BUT IT IS NOT THE

12:45PM   9      GOVERNMENT'S INTENTION TO ARGUE AN OMISSIONS THEORY, SO IN

12:45PM  10      LIGHT OF THE COURT'S COMMENTS AND SOME OF THE ARGUMENT, WE'RE

12:45PM  11      PREPARED TO TAKE THAT OUT.

12:45PM  12               THE COURT:  ALL RIGHT.  THANK YOU.  THAT IS WHAT WE

12:45PM  13      WERE GOING TO CIRCLE BACK TO, AND I WANTED TO ASK THAT

12:45PM  14      QUESTION.

12:45PM  15          BUT LET ME HEAR MS. SAHARIA'S OBJECTION.

12:45PM  16               MS. SAHARIA:  I DON'T HAVE ANY OBJECTION TO REMOVING

12:45PM  17      OMISSIONS.  I WOULD CERTAINLY AGREE WITH THAT.

12:45PM  18          I DO WANT TO CAREFULLY GO BACK AND LOOK AT THE REST OF THE

12:45PM  19      INSTRUCTIONS, BECAUSE I THINK THERE'S A FEW OTHER PLACES WHERE

12:45PM  20      OMISSIONS LANGUAGE APPEARS, AND I JUST WANT TO MAKE SURE THAT

12:45PM  21      WE'RE BEING CONSISTENT.  BUT I JUST WANT TO HAVE THE

12:45PM  22      OPPORTUNITY TO DO THAT.

12:45PM  23               THE COURT:  THANK YOU.  WHEN WE FINISH OUR

12:45PM  24      CONVERSATION HERE, HOPEFULLY WE CAN -- I THINK WE'RE VERY

12:45PM  25      CLOSE --

8768

| | |
|---|---|
| 12:45PM | 1 |

                    MS. SAHARIA:  I THINK SO, YOUR HONOR.

                    THE COURT:  -- TO FINISHING THIS.  THEN WHAT I'M

GOING TO DO IS TASK THE PARTIES TO GO BACK, REVIEW, AND SEE IF,

SOMETIME TODAY, YOU CAN COME UP WITH A FINALIZED COPY, SHARE IT

WITH THE COURT, AND WE CAN HAVE ANOTHER MEETING BY ZOOM OR YOU

CAN COME BACK HERE, WHATEVER YOU WOULD LIKE TO DO, TO FINALIZE

THINGS.

                    MR. LEACH:  I DO WANT TO BE CLEAR, YOUR HONOR.

OMISSIONS DOES SHOW UP IN JURY INSTRUCTION NUMBER 23 ON THE

DEFINITION OF KNOWINGLY.

    WE DO THINK IT'S APPROPRIATE TO KEEP OMISSIONS IN THE

DEFINITION OF THE INTENT HERE BECAUSE THE THINGS THAT

MS. HOLMES DOES NOT SAY IN THE CONTEXT OF AN ENTIRE

CONVERSATION MIGHT HAVE SOME BEARING ON HER MENTAL STATE,

WHETHER SHE ACTED KNOWINGLY.  SO IT'S NOT IN BRACKETS IN THE

MODEL INSTRUCTION FOR KNOWINGLY, AND WE THINK IT'S APPROPRIATE

TO KEEP IT IN THERE.

    BUT IT'S THE GOVERNMENT'S INTENTION NOT TO RELY ON THE

OMISSIONS THEORY FOR WIRE FRAUD IN THAT INSTRUCTION, AND IF

IT'S IN ADDITIONAL ONES, SUCH AS THE VICTIM'S NEGLIGENCE,

ALLEGED NEGLIGENCE THAT WE'RE LOOKING AT NOW, WE'LL WORK WITH

MS. SAHARIA TO MAKE SURE THAT'S OUT.

                    THE COURT:  OKAY.

                    MS. SAHARIA:  I'LL LOOK AT THE KNOWINGLY ONE.  I

JUST WANT TO THINK ABOUT IT.  SO WE CAN MEET AND CONFER WITH

8769

12:47PM   1    THE GOVERNMENT ABOUT THAT.

12:47PM   2            THE COURT:  ALL RIGHT.  THANK YOU.

12:47PM   3        LINE 28, SUCCESS OF THE SCHEME.

12:47PM   4            MR. LEACH:  WE THOUGHT THE COURT GOT IT RIGHT IN THE

12:47PM   5    CHANG CASE BY INCLUDING THIS INSTRUCTION.

12:47PM   6        THIS DOVETAILS SIGNIFICANTLY WITH THE GOOD FAITH ARGUMENT

12:47PM   7    THAT WE'VE BEEN HAVING.  WE DO THINK THE SECOND LINE HERE IS

12:47PM   8    PARTICULARLY IMPORTANT GIVEN SOME OF THE ARGUMENTS THAT THE

12:47PM   9    DEFENSE HAS MADE IN TERMS OF HER SELLING HER STOCK.

12:47PM   10       BUT WE THOUGHT THIS INSTRUCTION WAS APPROPRIATELY GIVEN IN

12:47PM   11   CHANG AND THE CHANNELS THE LANGUAGE OF TARALLO AND IS

12:47PM   12   APPROPRIATE HERE.

12:47PM   13           MS. SAHARIA:  I THINK WE'VE ALREADY DISCUSSED THIS

12:47PM   14   CONCEPT A LOT TODAY, SO I DON'T WANT TO BELABOR THE POINT.

12:47PM   15       WE DON'T THINK IT FITS THE FACTS OF THE CASE.

12:47PM   16       I WOULD JUST NOTE AGAIN THAT WE HAD THIS DISCUSSION LAST

12:47PM   17   WEEK.  I DON'T THINK THE FIRST SENTENCE IS A CORRECT STATEMENT

12:47PM   18   OF THE LAW BECAUSE IT SAYS "SUCCESS IS NOT MATERIAL."

12:48PM   19       IT CERTAINLY IS RELEVANT, AND THAT WORD COULD MISLEAD THE

12:48PM   20   JURY.

12:48PM   21       IF THE COURT WERE GOING TO GIVE SUCH AN INSTRUCTION, I

12:48PM   22   THINK "MATERIAL" WOULD NEED TO BE "REQUIRED" OR "NECESSARY" OR

12:48PM   23   SOME SIMILAR LANGUAGE.

12:48PM   24       BUT, AGAIN, THIS IS -- I JUST DON'T THINK THIS FITS THE

12:48PM   25   FACTS OF THIS CASE.  THE GOVERNMENT IS NOT -- THIS IS AN

8770

| | | |
|---|---|---|
| 12:48PM | 1 | INSTRUCTION THAT IS GIVEN WHEN THE DEFENDANT TRIES TO DEFRAUD |
| 12:48PM | 2 | SOMEONE AND DOESN'T, IS UNSUCCESSFUL IN DOING SO. |
| 12:48PM | 3 | HERE THE GOVERNMENT'S CASE IS THAT MS. HOLMES WAS CAPABLE |
| 12:48PM | 4 | AND DID DEFRAUD PEOPLE.  WE OBVIOUSLY DISAGREE WITH THAT. |
| 12:48PM | 5 | BUT I JUST DON'T THINK THAT THIS FITS THIS CASE. |
| 12:48PM | 6 | THE COURT:  WELL, THERE'S -- YOU KNOW, THE WITNESSES |
| 12:48PM | 7 | TESTIFIED AND THERE WAS EXAMINATION, BOTH DIRECT AND CROSS, AS |
| 12:48PM | 8 | TO A WIDE, BROAD CATEGORY OF CONDUCT AND STATEMENTS AND |
| 12:48PM | 9 | INFORMATION THAT WAS SHARED AND THAT WAS NOT SHARED. |
| 12:48PM | 10 | SO LOOKING AT IT THROUGH A BROAD LENS, I DON'T THINK IT'S |
| 12:49PM | 11 | INAPPROPRIATE TO GIVE THIS. |
| 12:49PM | 12 | BUT I DO TAKE YOUR POINT ABOUT "MATERIAL" AND MAYBE |
| 12:49PM | 13 | "NECESSARY" OR SOME OTHER DESCRIPTOR COULD BE USED THERE, |
| 12:49PM | 14 | MR. LEACH. |
| 12:49PM | 15 | MR. LEACH:  WE'RE FINE WITH "REQUIRED" OR "IS NOT |
| 12:49PM | 16 | NECESSARY." |
| 12:49PM | 17 | THE COURT:  LET'S PUT "IS NOT NECESSARY." |
| 12:49PM | 18 | AND I'LL NOTE YOUR COMMENTS, MS. SAHARIA. |
| 12:49PM | 19 | MS. SAHARIA:  THANK YOU. |
| 12:49PM | 20 | THE COURT:  THE NEXT IS RESPONDEAT SUPERIOR. |
| 12:49PM | 21 | MS. SAHARIA:  I'M HAPPILY GOING TO CEDE THE PODIUM |
| 12:49PM | 22 | NOW TO MR. LEMENS. |
| 12:49PM | 23 | MR. LEMENS:  GOOD AFTERNOON, YOUR HONOR. |
| 12:49PM | 24 | THE COURT:  GOOD AFTERNOON. |
| 12:49PM | 25 | MR. LEMENS:  ANDREW LEMENS FOR MS. HOLMES. |

**ER-12345**

| | | |
|---|---|---|
| 12:49PM | 1 | THE COURT:  WHY SHOULD THIS BE GIVEN?  WHY IS THIS |
| 12:50PM | 2 | RELEVANT TO THE CASE HERE, MR. LEMENS? |
| 12:50PM | 3 | MR. LEMENS:  I THINK, YOUR HONOR, THIS HEARKENS BACK |
| 12:50PM | 4 | TO THE MOTION IN LIMINE ORDER THAT YOU ENTERED RECOGNIZING A |
| 12:50PM | 5 | CONCERN ABOUT TESTIMONY OR EVIDENCE RELATED TO MS. HOLMES'S |
| 12:50PM | 6 | ROLE, OR ANY INFLUENCE OR AUTHORITY RELATED TO THAT ROLE, AND |
| 12:50PM | 7 | IN PARTICULAR HER STATUS AS CEO.  THAT'S DOCKET 798 AT PAGE 59. |
| 12:50PM | 8 | THERE'S BEEN CONSIDERABLE EVIDENCE FROM THE GOVERNMENT IN |
| 12:50PM | 9 | THIS CASE, TESTIMONY ABOUT MS. HOLMES'S ROLE AT THE COMPANY, |
| 12:50PM | 10 | HER LEVEL OF AUTHORITY AT THE COMPANY, STATEMENTS FROM HER THAT |
| 12:50PM | 11 | SHE WAS THE CEO AND SHE HAD RESPONSIBILITY. |
| 12:50PM | 12 | MR. LEACH ADDUCED ON CROSS-EXAMINATION STATEMENTS, I AM -- |
| 12:50PM | 13 | ALL ROADS LED TO HER, THE BUCK STOPS WITH HER. |
| 12:50PM | 14 | IN JUSTIFYING THOSE STATEMENTS, THE GOVERNMENT HAS NOTED |
| 12:50PM | 15 | THAT THEY ARE ADMISSIONS. |
| 12:50PM | 16 | AND OF COURSE HER ROLE AND POSITION AS CEO IS NOT A |
| 12:50PM | 17 | GENERAL ADMISSION OF CRIMINAL LIABILITY.  IT'S EXACTLY THE |
| 12:51PM | 18 | CONCERN THAT ANIMATED OUR MOTION IN LIMINE DISCUSSION. |
| 12:51PM | 19 | IN LIGHT OF THE EVIDENCE THAT HAS COME IN, WE THINK AN |
| 12:51PM | 20 | INSTRUCTION HERE IS APPROPRIATE SIMPLY TO REMIND THE JURY THAT |
| 12:51PM | 21 | HER POSITION AT THE COMPANY IS NOT SUFFICIENT FROM WHICH TO |
| 12:51PM | 22 | INFER LIABILITY. |
| 12:51PM | 23 | THE COURT:  OKAY. |
| 12:51PM | 24 | MR. LEACH? |
| 12:51PM | 25 | MR. LEACH:  THIS IS ARGUMENT, YOUR HONOR, AND IT'S |

8772

| | | |
|---|---|---|
| 12:51PM | 1 | SINGLING OUT PARTICULAR CATEGORIES OF EVIDENCE THAT ARE FAIR |
| 12:51PM | 2 | GAME FOR BOTH PARTIES TO ARGUE. |
| 12:51PM | 3 | WE ELICITED ON CROSS-EXAMINATION OF MS. HOLMES HER TITLE |
| 12:51PM | 4 | AND HER AUTHORITY WITHIN THE COMPANY. |
| 12:51PM | 5 | THE REDIRECT WAS FILLED WITH ARGUMENTS, THAT DOESN'T MEAN |
| 12:51PM | 6 | YOU KNOW EVERYTHING AT THE COMPANY. |
| 12:51PM | 7 | SO I REALLY THINK THIS IS ARGUMENTATIVE.  IT'S NOT |
| 12:51PM | 8 | SOMETHING THAT THE JURY IS REQUIRED TO FIND OR NOT FIND. |
| 12:51PM | 9 | THE COURT IS ALREADY INSTRUCTING, IN CONNECTION WITH THE |
| 12:51PM | 10 | CONSPIRACY CHARGE, THAT IT'S NOT ENOUGH THAT CONSPIRATORS |
| 12:52PM | 11 | SIMPLY MET, DISCUSSED MATTERS OF COMMON INTEREST, ACTED IN |
| 12:52PM | 12 | SIMILAR WAYS, OR PERHAPS HELPED ONE ANOTHER, NOR IS IT ENOUGH |
| 12:52PM | 13 | THAT THEY HAD A BUSINESS OR ROMANTIC RELATIONSHIP. |
| 12:52PM | 14 | THE COURT IS INSTRUCTING IN OTHER AREAS THAT, YOU KNOW, |
| 12:52PM | 15 | ONE FACT BY ITSELF IS NOT SUFFICIENT TO FIND LIABILITY. |
| 12:52PM | 16 | I THINK THIS IS A, A DEFENSE THEORY DRESSED UP IN A LEGAL |
| 12:52PM | 17 | INSTRUCTION THAT SIMPLY IS NOT NECESSARY AND IS ARGUMENT, AND |
| 12:52PM | 18 | IT IS ALSO TO SOME EXTENT COVERED BY OTHER INSTRUCTIONS. |
| 12:52PM | 19 | THE COURT:  MR. LEMENS, ANYTHING? |
| 12:52PM | 20 | MR. LEMENS:  I THINK IF THEY'RE GOING TO MAKE THE |
| 12:52PM | 21 | ARGUMENT THAT SHE HAS SOME ULTIMATE RESPONSIBILITY AS CEO, |
| 12:52PM | 22 | THERE'S A VIABLE AND NECESSARY INSTRUCTION IN LIGHT OF WHAT THE |
| 12:52PM | 23 | COURT HAS PREVIOUSLY FOUND AT THE MOTION IN LIMINE STAGE. |
| 12:52PM | 24 | THE COURT:  WELL, THAT WAS -- THANK YOU.  AND THAT |
| 12:52PM | 25 | FINDING WAS RELATED TO CERTAIN OTHER EVIDENCE COMING IN WITHOUT |

|  |  |  |
|---|---|---|
| 12:52PM | 1 | ADDITIONAL FOUNDATION.  IT WAS -- I THINK SOME OF IT RELATED TO |
| 12:53PM | 2 | AGENCY AND WHETHER OR NOT CERTAIN STATEMENTS COULD COME IN. |
| 12:53PM | 3 | AND THIS ALMOST SOUNDS LIKE IT'S STRICT LIABILITY AND THAT |
| 12:53PM | 4 | IF SHE'S THE CEO, EVERYTHING THAT SHE DID, SAID, AND ANYTHING |
| 12:53PM | 5 | THAT THE COMPANY DID FALLS BACK TO HER. |
| 12:53PM | 6 | I KNOW THERE WAS TESTIMONY FROM BOTH SIDES, BOTH CROSS AND |
| 12:53PM | 7 | DIRECT EXAMINATION, THERE WAS ADDITIONAL EVIDENCE, I THINK, |
| 12:53PM | 8 | SOME -- IT MIGHT HAVE BEEN ONE OF THE VIDEOS THAT WE SAW OR |
| 12:53PM | 9 | CERTAINLY SOME OF THE OTHER WRITINGS THAT SUGGESTED THAT. |
| 12:53PM | 10 | I DON'T -- ARE YOU GOING TO ARGUE STRICT LIABILITY? |
| 12:53PM | 11 | MR. LEACH:  NO, YOUR HONOR. |
| 12:53PM | 12 | THE COURT:  I DON'T THINK THIS IS NECESSARY.  I |
| 12:53PM | 13 | UNDERSTAND THE SPIRIT OF THIS.  I'M NOT GOING TO GIVE THIS. |
| 12:53PM | 14 | I THINK THE PARTIES WILL BE ABLE TO ARGUE THE EVIDENCE |
| 12:53PM | 15 | SUFFICIENTLY TO KEEP -- NOW THAT THE GOVERNMENT IS NOT GOING TO |
| 12:53PM | 16 | ARGUE STRICT LIABILITY OR A THEORY LIKE THAT, I THINK THE |
| 12:53PM | 17 | DEFENSE WILL BE ABLE TO SUGGEST TO THE JURY THAT WHATEVER THEY |
| 12:54PM | 18 | NEED TO DO, THAT HER POSITION AT THE COMPANY WAS NOT IN AND OF |
| 12:54PM | 19 | ITSELF ENOUGH TO FIND VIOLATIONS AS INDICATED IN THE |
| 12:54PM | 20 | INDICTMENT. |
| 12:54PM | 21 | SO I'M NOT GOING TO GIVE THAT INSTRUCTION. |
| 12:54PM | 22 | NUMBER 30 IS NEXT. |
| 12:54PM | 23 | MR. LEMENS:  YOUR HONOR, WE'LL JUST PRESERVE OUR |
| 12:54PM | 24 | OBJECTION. |
| 12:54PM | 25 | THE COURT:  YES, OF COURSE. |

| | | |
|---|---|---|
| 12:54PM | 1 | MR. LEMENS:  OKAY. |
| 12:54PM | 2 | THE COURT:  AND NUMBER 30 IS THE DEFENSE PROPOSAL, |
| 12:54PM | 3 | REGULATORY VIOLATIONS, SUGGESTED NUMBER 30 FROM THE GOVERNMENT, |
| 12:54PM | 4 | THIS IS REGARDING -- I THINK I SAID, OR I TOLD THE PARTIES I |
| 12:54PM | 5 | WOULD GIVE AN INSTRUCTION LIKE THIS. |
| 12:54PM | 6 | I WAS CONCERNED A COUPLE OF TIMES DURING THE TESTIMONY -- |
| 12:54PM | 7 | I MAY HAVE ADVISED THE JURY ALSO -- BUT I CERTAINLY TOLD |
| 12:54PM | 8 | COUNSEL THAT THERE WAS CONCERN OF THE COURT THAT PROOF OF A |
| 12:54PM | 9 | VIOLATION OF A CIVIL REGULATION WOULD NOT SUFFICE FOR A |
| 12:54PM | 10 | CONVICTION IN THE CASE AND SOMEHOW WE NEEDED TO IMPART THAT. |
| 12:54PM | 11 | THIS IS BOTH OF YOUR EFFORTS TO INFORM THE JURY OF THAT, I |
| 12:54PM | 12 | THINK. |
| 12:55PM | 13 | MR. LEACH:  THAT'S CORRECT, YOUR HONOR. |
| 12:55PM | 14 | MR. LEMENS:  YES, YOUR HONOR. |
| 12:55PM | 15 | THE COURT:  RIGHT. |
| 12:55PM | 16 | SO LET ME JUST SAY, MR. LEMENS, LINES 7 THROUGH 9 I DON'T |
| 12:55PM | 17 | THINK WERE NECESSARY.  AND LINE 4, THE END OF LINE 4, GIVING |
| 12:55PM | 18 | THEM KNOWLEDGE, THE JURY KNOWLEDGE ABOUT FINAL DETERMINATION, |
| 12:55PM | 19 | I'M NOT SURE THAT'S NECESSARY TO ACCOMPLISH WHAT WE NEED TO DO. |
| 12:55PM | 20 | MR. LEMENS:  AND THAT WOULD CONTINUE THROUGH TO THE |
| 12:55PM | 21 | END OF LINE 6? |
| 12:55PM | 22 | THE COURT:  THAT'S CORRECT.  THAT'S CORRECT. |
| 12:55PM | 23 | MR. LEMENS:  SO THE COURT WOULD BE INCLINED TO GIVE |
| 12:55PM | 24 | LINES 10 THROUGH 13? |
| 12:55PM | 25 | THE COURT:  WELL, I'M TELLING YOU MY INITIAL -- |

8775

| 12:55PM | 1 | MR. LEMENS:  OKAY. |
| 12:55PM | 2 | THE COURT:  JUST MY INITIAL SANITATION, I'LL CALL IT |
| 12:55PM | 3 | HERE, JUST GOING THROUGH THESE. |
| 12:55PM | 4 | MR. LEMENS:  IF I MIGHT JUST RESPOND TO THOSE TWO |
| 12:55PM | 5 | SPECIFICALLY? |
| 12:55PM | 6 | THE COURT:  YES, PLEASE. |
| 12:56PM | 7 | MR. LEMENS:  AND THEN WE CAN CONTINUE. |
| 12:56PM | 8 | I THINK LINES 7 THROUGH 9 WERE RESPONSIVE TO COMMENTS THAT |
| 12:56PM | 9 | WE HEARD FROM THE COURT REGARDING NEGLIGENCE, CONCERN ABOUT A |
| 12:56PM | 10 | NEGLIGENCE STANDARD. |
| 12:56PM | 11 | THE COURT:  RIGHT. |
| 12:56PM | 12 | MR. LEMENS:  AND I THINK OUR POSITION IS THAT IT IS |
| 12:56PM | 13 | APPROPRIATE AND NECESSARY. |
| 12:56PM | 14 | AT LINES 4 THROUGH 6, I THINK MR. LEACH AND I ARE GOING TO |
| 12:56PM | 15 | TUMBLE INTO A DISCUSSION ABOUT WHAT THE RECORD SHOWS SHORTLY, |
| 12:56PM | 16 | BUT OUR POSITION IS THAT THERE HASN'T BEEN EVIDENCE OF A |
| 12:56PM | 17 | REGULATORY VIOLATION IN THE CASE AND THE JURY SHOULD BE |
| 12:56PM | 18 | INSTRUCTED NOT AS TO ACTUAL VIOLATIONS, BUT ALLEGED VIOLATIONS |
| 12:56PM | 19 | OR EVIDENCE OF REGULATIONS GENERALLY.  THAT IS THE POSITION |
| 12:56PM | 20 | ANIMATING LINES 4 THROUGH 6. |
| 12:56PM | 21 | SO WE WOULD PRESERVE OUR POSITIONS THERE. |
| 12:56PM | 22 | THE COURT:  OKAY.  WELL, LET ME ASK YOU TO CRITIQUE, |
| 12:57PM | 23 | MR. LEMENS, THE GOVERNMENT'S VERSION FOUND ON ECF 42, PAGE 41 |
| 12:57PM | 24 | OF THE DOCUMENT, "YOU'VE HEARD REFERENCE AT TIMES DURING THE |
| 12:57PM | 25 | TRIAL TO FEDERAL REGULATIONS ENFORCED BY," AND THEN IT |

12:57PM 1    DESCRIBES CMS AND FDA.  AND THEY THEN INDICATE, "IN AND OF

12:57PM 2    ITSELF, A VIOLATION OF THESE REGULATIONS," ET CETERA, "DOES NOT

12:57PM 3    ESTABLISH A VIOLATION OF CRIMINAL LAW.  HOWEVER, IT MAY BE

12:57PM 4    CONSIDERED."

12:57PM 5        WHAT IS WRONG WITH THAT LANGUAGE?

12:57PM 6            MR. LEMENS:  SO I THINK THERE'S A FEW THINGS.

12:57PM 7        I'LL START WITH THE FIRST SENTENCE.  THERE'S BEEN NO

12:57PM 8    EVIDENCE AS TO FDA REGULATIONS OR VIOLATIONS IN THE CASE.

12:57PM 9        THERE WAS CERTAINLY DISCUSSION OF AN INSPECTION.  THERE

12:57PM 10   WAS NO TESTIMONY AS TO THE RESOLUTION OF THAT INSPECTION, ANY

12:57PM 11   FINDINGS RESULTING FROM THAT INSPECTION.

12:57PM 12       CERTAINLY WE HAD THAT BACK AND FORTH PRETRIAL AS TO

12:57PM 13   VARIOUS ASPECTS OF THE FDA AND ITS ACTIVITIES WITH RESPECT TO

12:58PM 14   THERANOS, BUT THAT DID NOT COME INTO THE RECORD IN THE CASE.

12:58PM 15       SO I THINK THE FDA AND THE REFERENCE TO THE FDA IS

12:58PM 16   INAPPROPRIATE HERE.

12:58PM 17           THE COURT:  WELL, IT SAYS "REGULATIONS ENFORCED."

12:58PM 18       THE VIOLATIONS COME IN THE SECOND SENTENCE I THINK.

12:58PM 19           MR. LEMENS:  RIGHT.  AND I'M NOT AWARE OF EVEN ANY

12:58PM 20   DISCUSSION OF REGULATIONS RELATED TO THE FDA.  THAT WOULD NOT

12:58PM 21   BE APPROPRIATE.

12:58PM 22       AS TO THE SECOND SENTENCE, IT PRESUMES A VIOLATION.  I

12:58PM 23   THINK AT THE VERY LEAST, THE REFERENCE SHOULD BE TO "IN AND OF

12:58PM 24   ITSELF AN ALLEGED VIOLATION OF THESE REGULATIONS" FOR THE SAME

12:58PM 25   REASONS THAT I JUST EXPLAINED.

| 12:58PM | 1 | AND THEN IN THE THIRD SENTENCE, I THINK THE COURT HAD |
| 12:58PM | 2 | EXPRESSED SOME CONCERN WITH THE JURY CONSIDERING THIS EVIDENCE. |
| 12:59PM | 3 | THE FINAL SENTENCE OF WHAT THE GOVERNMENT HAS PROPOSED, |
| 12:59PM | 4 | STARTING WITH LINE 6 AND CONTINUING THROUGH LINE 8, IN OUR |
| 12:59PM | 5 | READING SUGGESTS THAT THE JURY CONSIDER THAT EVIDENCE, AND IT |
| 12:59PM | 6 | SUGGESTS THE JURY CONSIDER THAT EVIDENCE IN CONNECTION WITH |
| 12:59PM | 7 | EACH ELEMENT OF THE OFFENSE, AS OPPOSED TO SIMPLY FOR |
| 12:59PM | 8 | MS. HOLMES'S NOTICE, WHICH IS THE LIMITED PURPOSE THAT THE |
| 12:59PM | 9 | REGULATORY -- THE CMS REPORT AND OTHER TESTIMONY SURROUNDING |
| 12:59PM | 10 | THAT REPORT CAME IN IN THE CASE. |
| 12:59PM | 11 | SO I THINK THERE ARE SEVERAL ISSUES WITH WHAT THE |
| 12:59PM | 12 | GOVERNMENT HAS PROPOSED. |
| 12:59PM | 13 | I WILL NOTE ALSO FOR THE RECORD THAT THE GOVERNMENT CITED |
| 12:59PM | 14 | TO THE HUSSAIN AND THE REYES CASE. |
| 12:59PM | 15 | WE THINK THE RELIANCE THERE IS MISPLACED.  BOTH OF THOSE |
| 12:59PM | 16 | HAD TO DO WITH ACCOUNTING STANDARDS IN WHICH THE ACCOUNTING |
| 12:59PM | 17 | STANDARD, REVENUE RECOGNITION, BACKDATING OPTIONS WAS CENTRAL |
| 12:59PM | 18 | TO THE STATEMENTS OR THE MISREPRESENTATIONS AT ISSUE. |
| 01:00PM | 19 | THAT IS NOT THE CASE HERE. |
| 01:00PM | 20 | SECOND, IN THE REYES CASE IN PARTICULAR, THE REGULATORY |
| 01:00PM | 21 | VIOLATION WAS UNDISPUTED, AND THAT'S REFLECTED IN -- IT'S |
| 01:00PM | 22 | REFLECTED IN THE CASE.  I CAN HAND IT UP TO THE COURT. |
| 01:00PM | 23 | I JUST THINK THAT THIS IS A VERY DIFFERENT SITUATION WHERE |
| 01:00PM | 24 | THERE'S BEEN NO ESTABLISHED VIOLATION OF A REGULATION, AND THE |
| 01:00PM | 25 | JURY SHOULD NOT BE INSTRUCTED AS SUCH. |

8778

| | | |
|---|---|---|
| 01:00PM | 1 | THE COURT:  OKAY.  THANK YOU. |
| 01:00PM | 2 | MR. LEACH? |
| 01:00PM | 3 | MR. LEACH:  I'LL GO IN REVERSE ORDER, YOUR HONOR, |
| 01:00PM | 4 | WITH THE GOVERNMENT'S INSTRUCTION, WHICH I THINK GETS IT |
| 01:00PM | 5 | EXACTLY RIGHT AND IS TRIED AND TRUE FROM OTHER CASES IN THIS |
| 01:00PM | 6 | DISTRICT. |
| 01:00PM | 7 | YES, HUSSAIN AND REYES INVOLVED ACCOUNTING VIOLATIONS, AND |
| 01:00PM | 8 | IN REYES VIOLATIONS OF SOME OF THE SECURITIES LAWS, BUT THE |
| 01:00PM | 9 | OVERALL PRINCIPLE IS THE SAME.  YOU'VE HEARD EVIDENCE THAT |
| 01:00PM | 10 | SOMETHING OTHER THAN THE PARTICULAR STATUTE THAT IS AT ISSUE |
| 01:00PM | 11 | MAY OR MAY HAVE NOT HAVE BEEN VIOLATED; THEY'RE NOT ON TRIAL |
| 01:01PM | 12 | FOR THOSE OFFENSES; THEY'RE NOT ON TRIAL FOR THOSE GAAP |
| 01:01PM | 13 | VIOLATIONS; THEY'RE ON TRIAL FOR WIRE FRAUD AND CONSPIRACY, AND |
| 01:01PM | 14 | YOU SHOULD CONSIDER THAT EVIDENCE IN CONNECTION WITH THE |
| 01:01PM | 15 | ELEMENTS THAT YOU'RE BEING ASKED TO CONSIDER HERE. |
| 01:01PM | 16 | SO I THINK THIS INSTRUCTION GETS IT EXACTLY RIGHT. |
| 01:01PM | 17 | I'M FINE WITH ADDING "AN ALLEGED" BEGINNING AT LINE 5.  WE |
| 01:01PM | 18 | DON'T MEAN TO SUGGEST A VIOLATION ACTUALLY OCCURRED. |
| 01:01PM | 19 | I DO THINK THERE HAS BEEN TESTIMONY ABOUT FDA REGULATIONS. |
| 01:01PM | 20 | MS. HOLMES TESTIFIED THAT THEY STOPPED USING THE NANOTAINER IN |
| 01:01PM | 21 | RESPONSE TO COMMENTS DURING THE FDA INSPECTION. |
| 01:01PM | 22 | THERE'S ALSO BEEN TESTIMONY ABOUT SUBMISSIONS, EITHER |
| 01:01PM | 23 | PRESUBMISSIONS OR 510K SUBMISSIONS. |
| 01:01PM | 24 | SO I DO THINK THERE'S BEEN SOME REFERENCE TO THOSE FEDERAL |
| 01:01PM | 25 | REGULATIONS AND I THINK THIS WOULD AID THE JURY. |

01:01PM 1      SO WHAT I THINK THE CONCEPT THAT THE COURT WANTS TO

01:01PM 2  EXPRESS, AND I THINK IT'S A FAIR CONCEPT TO EXPRESS, IS THAT

01:02PM 3  YOU'VE HEARD EVIDENCE ABOUT A REGULATORY SCHEME AND POTENTIAL

01:02PM 4  VIOLATIONS.  THEY'RE NOT ON TRIAL FOR THOSE OFFENSES.  YOU CAN

01:02PM 5  CONSIDER THAT EVIDENCE LIKE YOU CAN CONSIDER ALL OF THE

01:02PM 6  EVIDENCE IN THIS CASE IN LIGHT OF THE ELEMENTS THAT THE

01:02PM 7  GOVERNMENT IS REQUIRED TO PROVE.  BUT IN AND OF ITSELF, AN

01:02PM 8  ALLEGED VIOLATION OF THOSE REGULATIONS IS NOT WHAT YOU'RE BEING

01:02PM 9  ASKED TO DECIDE HERE.

01:02PM 10      SO WE THINK THAT'S CAPTURED IN THE GOVERNMENT PROPOSAL.

01:02PM 11  IT'S BEEN TRIED AND TRUE IN OTHER SIMILAR CIRCUMSTANCES, AND WE

01:02PM 12  URGE THE COURT TO ADOPT IT.

01:02PM 13      WITH RESPECT TO PAGE 41, WE HAVE NO PROBLEM WITH THE FIRST

01:02PM 14  LINE, "YOU HAVE HEARD EVIDENCE REGARDING ALLEGED VIOLATIONS OF

01:02PM 15  REGULATIONS AND INDUSTRY STANDARDS."  I THINK THAT'S

01:02PM 16  UNOBJECTIONABLE.

01:02PM 17      THE NEXT TWO LINES ARE ACTUALLY FACTUAL ASSERTIONS.  "YOU

01:02PM 18  SHOULD KNOW THERE'S BEEN NO FINAL DETERMINATION," I MEAN,

01:03PM 19  THAT'S A STATEMENT OF FACT, NOT A STATEMENT OF THE LAW THAT IS

01:03PM 20  GOVERNING HERE, AND SO I DON'T THINK IT WOULD BE APPROPRIATE TO

01:03PM 21  INSTRUCT THE JURY ON WHAT HAPPENED OR DIDN'T HAPPEN AFTER THIS

01:03PM 22  CASE.

01:03PM 23      "MANY OF THE ALLEGED VIOLATIONS WERE DISPUTED."  AGAIN,

01:03PM 24  THAT'S A FACTUAL MATTER.  IF MS. HOLMES WANTED TO ELICIT

01:03PM 25  TESTIMONY ON THAT, SHE WAS FREE TO DO SO.  I THINK SHE CHOSE

8780

01:03PM  1    NOT TO BECAUSE SHE WANTS TO USE THE CMS REPORT AND ITS FINDINGS

01:03PM  2    NOW AS THE EPIPHANY MOMENT FOR BREAKING OFF THE RELATIONSHIP

01:03PM  3    WITH MR. BALWANI.

01:03PM  4        THE -- WE AGREE THAT PARAGRAPHS -- OR LINES 7 THROUGH 9

01:03PM  5    ARE OBJECTIONABLE.  I THINK INJECTING DIFFERENT BURDENS OF

01:03PM  6    PROOF AND NOTING THAT INDUSTRY STANDARDS DON'T CARRY THE FORCE

01:03PM  7    OF LAW WILL JUST INJECT CONFUSION.

01:03PM  8        AND THEN WITH RESPECT TO 10 AND 13, I THINK THE CONCEPT

01:03PM  9    THERE IS VERY SIMILAR TO WHAT WE'RE TRYING TO GET AT IN OUR

01:04PM  10   INSTRUCTION.  I OBJECT TO STARTING AN INSTRUCTION BY SAYING

01:04PM  11   "MS. HOLMES IS NOT GUILTY OF ANY OF THE OFFENSES."  I THINK

01:04PM  12   THAT'S ARGUMENT.

01:04PM  13       BUT IF THE IDEA IS, YOU'VE HEARD EVIDENCE OF REGULATORY

01:04PM  14   VIOLATIONS, SHE'S NOT ON TRIAL FOR THOSE REGULATIONS, THE POINT

01:04PM  15   OF THIS EVIDENCE IS TO CONSIDER -- YOU MAY CONSIDER THIS

01:04PM  16   EVIDENCE IN THE CONTEXT OF THE ELEMENTS THAT THE GOVERNMENT

01:04PM  17   NEEDS TO PROVE FOR WIRE FRAUD AND CONSPIRACY, I THINK THIS IS

01:04PM  18   GETTING AT SOMETHING SIMILAR TO WHAT WE TRIED TO GET AT WITH

01:04PM  19   OUR LANGUAGE.

01:04PM  20       SO FOR THOSE REASONS I THINK OUR INSTRUCTION IS BETTER AND

01:04PM  21   MORE APPROPRIATE, AND I THINK THE COURT HAS IDENTIFIED ASPECTS

01:04PM  22   ON PAGE 41 THAT ARE PARTICULARLY OBJECTIONABLE TO THE

01:04PM  23   GOVERNMENT.

01:04PM  24           THE COURT:  ALL RIGHT.  THANK YOU.

01:04PM  25       SO, MR. LEACH, IF WE USED LINE 4 FROM PAGE 40, THAT IS

8781

01:04PM 1    MS. HOLMES'S -- "YOU HAVE HEARD EVIDENCE REGARDING ALLEGED

01:04PM 2    VIOLATIONS OF REGULATIONS AND INDUSTRY STANDARDS," AND THEN

01:05PM 3    WENT DOWN TO LINE 10, AGAIN OF MS. HOLMES, "MS. HOLMES IS NOT

01:05PM 4    GUILTY OF ANY OF THE OFFENSES ALLEGED," AND THEN READ THROUGH

01:05PM 5    13, AND THEN ADD YOUR LINE 6, "HOWEVER, EVIDENCE OF SUCH

01:05PM 6    REGULATORY VIOLATIONS MAY BE CONSIDERED, ALONG WITH OTHER

01:05PM 7    EVIDENCE IN LIGHT OF," AND THE SPECIFIC ELEMENTS, I WONDER

01:05PM 8    IF -- I'M NOT SURE THAT SPECIFIC ELEMENTS DESCRIBES

01:05PM 9    SUFFICIENTLY.

01:05PM 10       I THINK I UNDERSTAND WHAT YOU MEAN.  I'M NOT SURE A JURY

01:05PM 11   WOULD CAPTURE THAT AS EASILY.

01:05PM 12       WHAT I'M SAYING IS TO PUT THOSE TWO IN AND ADD YOUR --

01:05PM 13   THIS LAST LINE AS THE FINAL.

01:05PM 14           MR. LEACH:  THAT WOULD BE -- THAT WOULD BE FINE,

01:05PM 15   YOUR HONOR, AND I'M HAPPY TO WORK WITH THE DEFENSE TO TRY TO

01:06PM 16   CONNECT THOSE TWO.

01:06PM 17           THE COURT:  AND IT MAY BE SPECIFIC ELEMENTS IS THE

01:06PM 18   ONLY WAY TO PROPERLY GUIDE THE JURY AS TO WHAT NEEDS TO BE

01:06PM 19   PROVED FOR EACH COUNT.

01:06PM 20           MR. LEACH:  YOU CAN EVEN JUST SAY, "IN CONNECTION

01:06PM 21   WITH" -- OR "IN ASSESSING WHETHER THE GOVERNMENT HAS PROVED

01:06PM 22   EACH OF THE COUNTS CHARGED IN THE INDICTMENT."

01:06PM 23           THE COURT:  SHOULD I LET YOU WORDSMITH THAT A BIT?

01:06PM 24           MR. LEACH:  I'M SURE I COULD DO IT A LITTLE BIT

01:06PM 25   BETTER THAN ON THE FLY.

01:06PM  1          MR. LEMENS:  I IMAGINE WE'LL HAVE SOME THOUGHTS AS

01:06PM  2   WELL, AND I'LL OF COURSE NEED TO CONSULT WITH MY COLLEAGUES.

01:06PM  3          THE COURT:  WITH YOUR TEAM, SURE.

01:06PM  4          MR. LEMENS:  I THINK I'D JUST NOTE, I THINK THERE'S

01:06PM  5   STILL THE CONCERN THAT THE SUGGESTION THAT THAT EVIDENCE HAS

01:06PM  6   COME IN IN THE CASE FOR ANYTHING OTHER THAN MS. HOLMES'S NOTICE

01:06PM  7   IS, OF COURSE, OF CONCERN TO THE DEFENSE.

01:06PM  8          THE COURT:  RIGHT.  AND I THINK I INSTRUCTED THE

01:07PM  9   JURY OF THAT, I INFORMED THEM AT THE TIME THAT SOME EVIDENCE

01:07PM 10   CAME IN, THAT IT WENT TO HER STATE OF MIND.  I THINK THAT WAS

01:07PM 11   THE OBJECTION IF I'M NOT MISTAKEN.

01:07PM 12          MR. LEMENS:  THAT WAS OUR UNDERSTANDING AS WELL.

01:07PM 13      I THINK THE GOVERNMENT IS NOW TAKING A DIFFERENT -- A

01:07PM 14   SLIGHTLY DIFFERENT POSITION, WHICH KIND OF TUMBLES US INTO

01:07PM 15   NUMBER 31, SO PERHAPS MR. LEACH AND I CAN TAKE NUMBER 30 AND

01:07PM 16   SEE WHAT WE CAN DO AND WHERE OUR RESPECTIVE POSITIONS ARE.  BUT

01:07PM 17   I DON'T KNOW IF THERE'S ANYTHING MORE WE CAN ACCOMPLISH THERE

01:07PM 18   RIGHT NOW.

01:07PM 19          THE COURT:  OKAY.  AND 31, THIS CMS REPORT, I'M

01:07PM 20   NOT -- I JUST DON'T KNOW ABOUT FOCUSSING THE JURY AS TO A

01:07PM 21   SPECIFIC EXHIBIT.  IT JUST SEEMS LIKE THIS IS ARGUMENT AND IT

01:07PM 22   DOESN'T BELONG IN AN INSTRUCTION.  THAT'S JUST MY VIEW OF IT.

01:07PM 23          MR. LEMENS:  SO I THINK IT'S, TO THE GOVERNMENT, AN

01:07PM 24   IMPORTANT DOCUMENT IN THE CASE.  IT CAME IN THROUGH ONE OF

01:07PM 25   THEIR KEY WITNESSES WHO WAS HIGHLIGHTED IN OPENING AND WHO I

8783

01:07PM 1   EXPECT WE'LL HEAR MUCH ABOUT IN CLOSING ARGUMENT.  WE PROPOSED

01:08PM 2   IT FOR THAT REASON.

01:08PM 3      THE GOVERNMENT HAS TAKEN THE POSITION THAT 4621A CAME IN

01:08PM 4   FOR ITS TRUTH.

01:08PM 5      WE THINK THE RECORD AS A WHOLE STRONGLY SUGGESTS THAT IS

01:08PM 6   NOT THE CASE, AND I'M HAPPY TO WALK THE COURT THROUGH THAT

01:08PM 7   RECORD.

01:08PM 8      BUT OUR UNDERSTANDING IS THAT ALL OF 4621, THE PORTIONS OF

01:08PM 9   THAT WHICH WERE ADMITTED, WHICH ARE A AND B, WERE ADMITTED FOR

01:08PM 10   NOTICE PURPOSES, AND THAT WAS NOTICE TO MS. HOLMES, AND FOR A

01:08PM 11   LIMITED PURPOSE.

01:08PM 12      WE THINK IT WOULD BE NECESSARY AND APPROPRIATE TO INSTRUCT

01:08PM 13   THE JURY AS TO THAT GIVEN WHAT THE -- WE EXPECT THE GOVERNMENT

01:08PM 14   VIEWS AS THE IMPORTANCE OF THIS DOCUMENT.

01:08PM 15      BUT AT THE VERY LEAST, TO CLEAR UP THE RECORD AS WE

01:08PM 16   PREPARE FOR CLOSING ARGUMENTS, WE SHOULD GET CERTAINTY ON HOW

01:08PM 17   THOSE EXHIBITS CAME IN AND FOR WHAT PURPOSE.

01:08PM 18        THE COURT:  MS. VOLKAR?

01:08PM 19        MS. VOLKAR:  HI, YOUR HONOR.  I'LL BE ADDRESSING

01:09PM 20   THIS ONE.

01:09PM 21      SO THERE ARE TWO ISSUES:  ONE, WHETHER OR NOT THERE SHOULD

01:09PM 22   BE AN INSTRUCTION SINGLING OUT A PIECE OF EVIDENCE.

01:09PM 23      THE GOVERNMENT'S POSITION ALIGNS WITH THAT OF THE COURT,

01:09PM 24   WHICH IS THERE SHOULD NOT BE AN INSTRUCTION FOCUSSED ON ONE

01:09PM 25   PIECE OF EVIDENCE.

**ER-12358**

8784

01:09PM  1    THERE HAVE BEEN A MULTITUDE OF EXHIBITS THAT HAVE COME IN

01:09PM  2    IN THIS CASE FOR A LIMITED PURPOSE.  OFF THE TOP OF MY HEAD I

01:09PM  3    CAN THINK OF A LOT OF 2016 AND 2017 MATERIALS, THE AACC

01:09PM  4    CONFERENCE MATERIALS, THE DOCUMENTS THAT DEFENDANT SUBMITTED

01:09PM  5    FOR PEER REVIEW, AND I CAN THINK OF A DOZEN EXHIBITS THAT THE

01:09PM  6    DEFENSE SUBMITTED THAT I THINK IS GOING TO BE CORE TO THEIR

01:09PM  7    CASE OF WHY SHE STILL BELIEVED IN THE TECHNOLOGY IN LATER TIME

01:09PM  8    PERIODS.  THOSE EXHIBITS CAME IN FOR THE LIMITED PURPOSE OF HER

01:09PM  9    STATE OF MIND.

01:09PM 10    BUT I DO AGREE WITH MR. LEMENS THAT THERE IS ALSO A

01:09PM 11    FACTUAL DISPUTE, OR A DISPUTE ABOUT THE RECORD, AND IN THAT

01:09PM 12    REGARD I'D ACTUALLY LIKE TO HAND UP, IF I COULD, YOUR HONOR,

01:09PM 13    JUST A COUPLE OF PAGES OF TRANSCRIPT.

01:09PM 14    THE COURT:  SURE.

01:10PM 15    MS. VOLKAR:  (HANDING.)

01:10PM 16    SO FIRST AND FOREMOST, THE REASON WHY THERE IS A TRIAL

01:10PM 17    EXHIBIT 4621A AND 4621B IS BECAUSE THE FIRST, THE COVER LETTER,

01:10PM 18    CAME IN ENTIRELY WITHOUT LIMITATION, AND THAT'S THE PORTION OF

01:10PM 19    THE TRANSCRIPT THAT I JUST HANDED TO YOUR HONOR.

01:10PM 20    AND 4621B CAME IN FOR A LIMITED PURPOSE BECAUSE COUNSEL

01:10PM 21    OBJECTED IN THE MOMENT, THE COURT INQUIRED OF THE GOVERNMENT

01:10PM 22    WHAT THE PURPOSE WAS, AND IN THE MOMENT THE GOVERNMENT AGREED

01:10PM 23    TO SEEK ADMISSION ONLY FOR A LIMITED PURPOSE.

01:10PM 24    THE GOVERNMENT'S POSITION HAS ALWAYS BEEN, AND REMAINS TO

01:10PM 25    THIS DAY, THAT THE CMS REPORT IS ADMISSIBLE IN ITS ENTIRETY.

ER-12359

8785

01:10PM 1    THE FIRST TIME AROUND WHEN WE ARGUED THIS SEVERAL MONTHS

01:10PM 2    AGO, THE COURT AGREED WITH THE GOVERNMENT AND GRANTED WHOLESALE

01:10PM 3    ADMISSION OF THE CMS REPORT, OF COURSE, IN ECF 798 AT PAGES 16

01:11PM 4    TO 20.

01:11PM 5    THE DEFENSE HAS SINCE SUBMITTED FOUR MOTIONS TO

01:11PM 6    RECONSIDER.  THEY'VE NAMED THEM DIFFERENT THINGS.  THEY CALL IT

01:11PM 7    WHATEVER -- THEY CALL IT DIFFERENT TOPICS.  BUT THEY HAVE BEEN

01:11PM 8    ASKING THE COURT REPEATEDLY, OVER AND OVER AND OVER AGAIN, TO

01:11PM 9    RECONSIDER THAT INITIAL ORDER, WHICH IN THE GOVERNMENT'S VIEW

01:11PM 10   WAS ENTIRELY PROPER.  THE CMS REPORT IS ADMISSIBLE IN ITS

01:11PM 11   ENTIRETY.

01:11PM 12   AND I DON'T WANT TO REHASH ALL OF THOSE ARGUMENTS HERE.

01:11PM 13   BUT THEN I WANT TO FAST FORWARD TO THE NOVEMBER 9TH DAY.

01:11PM 14   NOW, ON NOVEMBER 9TH WHEN THIS WAS DISCUSSED YET AGAIN

01:11PM 15   AMONG THE PARTIES AND THE COURT, THE GOVERNMENT PUT FORWARD

01:11PM 16   THAT TO -- THE GOVERNMENT PUT FORWARD AS AN ALTERNATIVE, YET

01:11PM 17   ANOTHER ALTERNATIVE IN ADDITION TO ITS OTHER ARGUMENTS, THAT AT

01:11PM 18   THE VERY LEAST THE ENTIRETY OF THE DOCUMENT COULD COME IN FOR

01:11PM 19   HER STATE OF MIND SO THAT THE PARTIES, THE GOVERNMENT, AND THE

01:11PM 20   COURT DIDN'T HAVE TO SPEND TIME NIT-PICKING LINE BY LINE ALL OF

01:12PM 21   THE DIFFERENT REDACTIONS THAT THE DEFENSE WAS SUGGESTING.

01:12PM 22   THERE WAS NO RESOLUTION AT THE END OF THAT DISCUSSION.

01:12PM 23   THEY HAVE CITED THE PORTIONS OF THE RECORD.  I'VE READ THEM.

01:12PM 24   THERE'S NO RESOLUTION.

01:12PM 25   THEN IN THE MOMENT, WHEN DR. DAS WAS TESTIFYING -- AND

01:12PM  1    THIS IS WHERE I POINT YOUR HONOR SPECIFICALLY TO 5802 THAT I

01:12PM  2    HANDED UP, LINES 5 THROUGH 13 -- THE GOVERNMENT SOUGHT TO ADMIT

01:12PM  3    PAGES 1 THROUGH 4, WHICH IS THE COVER LETTER.

01:12PM  4        THE COURT SAID, "I DO THINK AN APPROPRIATE FOUNDATION HAS

01:12PM  5    BEEN LAID," OVERRULING THE OBJECTIONS THAT WERE MADE EARLIER,

01:12PM  6    "THIS WILL BE ADMITTED OVER OBJECTION."

01:12PM  7        AND THEN IT SAYS THE GOVERNMENT'S EXHIBIT WAS ADMITTED AND

01:12PM  8    RECEIVED INTO EVIDENCE.

01:12PM  9        AND THEN THE PARTIES -- AND THEN MR. LEACH AND THE WITNESS

01:12PM  10   CONTINUED TO DISCUSS THE LETTER.

01:12PM  11       THAT WAS THE ADMISSION OF 4621A.

01:12PM  12       THERE'S NO INSTRUCTION FROM THE COURT HERE TO THE JURY

01:12PM  13   THAT THIS IS FOR A LIMITED PURPOSE.  THERE'S NO INSTRUCTION AT

01:13PM  14   THIS POINT IN TIME.

01:13PM  15       THERE WAS NO CLARIFICATION FROM DEFENSE COUNSEL WHAT WAS

01:13PM  16   THE PURPOSE FOR THIS.  THAT COMES LATER.

01:13PM  17       LATER, 10, 15 MINUTES LATER, MR. LEACH SOUGHT TO INTRODUCE

01:13PM  18   A NARROWED DOWN PORTION OF THE CMS REPORT.  IN THE MOMENT

01:13PM  19   DEFENSE COUNSEL ASKED WHAT THE PURPOSE WAS.

01:13PM  20       AND FOR, TO BE FRANK, THE ORDERLY PROGRESSION, AND TO NOT

01:13PM  21   RELITIGATE THE ISSUE FOR THE FIFTH TIME IN FRONT OF THE JURY,

01:13PM  22   THE GOVERNMENT OFFERED IT FOR A LIMITED PURPOSE OF

01:13PM  23   MS. HOLMES'S -- NOTICE TO MS. HOLMES.

01:13PM  24            THE COURT:  THOSE SPECIFIC PAGES?

01:13PM  25            MS. VOLKAR:  THOSE SPECIFIC PAGES.

8787

01:13PM 1          AND THAT'S WHY, AT THE END OF THE DAY, YOUR HONOR, THOSE

01:13PM 2     SPECIFIC PAGES WERE COLLECTED IN 4621B, AND THEY'RE NOTED IN

01:13PM 3     THE TRIAL LOG, AND ALSO IN THOSE PORTIONS OF THE RECORD.  I

01:13PM 4     APOLOGIZE I DON'T HAVE THOSE, BUT DEFENSE COUNSEL CITED TO

01:13PM 5     THEM.

01:13PM 6          YOUR HONOR TURNED TO THE JURY AND INSTRUCTED THEM, AS YOU

01:13PM 7     DO WHENEVER EVIDENCE IS ADMITTED FOR A LIMITED PURPOSE, THAT

01:13PM 8     THOSE PAGES WERE TO BE ADMITTED FOR THE LIMITED PURPOSE OF

01:14PM 9     NOTICE TO MS. HOLMES.

01:14PM 10         THE RECORD IS AS CLEAR AS DAY.  THE REASON THAT THERE ARE

01:14PM 11    TWO EXHIBITS CURRENTLY IN THE FORM THAT IS GOING TO GO BACK TO

01:14PM 12    THE JURY IS BECAUSE ONE WAS ADMITTED WHOLESALE AND ONE WAS

01:14PM 13    ADMITTED FOR A LIMITED PURPOSE.

01:14PM 14         NOW, WHY THIS IS SURPRISING TO THE GOVERNMENT TO HEAR

01:14PM 15    ABOUT THIS ESSENTIALLY FOR THE FIRST TIME IN THE LAST WEEK IS

01:14PM 16    THERE HAVE BEEN MULTIPLE TIMES THROUGHOUT THIS TRIAL -- YOUR

01:14PM 17    HONOR IS FAMILIAR -- WHEN EITHER SIDE SEEKS TO CLARIFY, WHAT IS

01:14PM 18    THE STATE OF THE DOCUMENT?  OR WAS THIS PARTIALLY ADMITTED?  OR

01:14PM 19    WHAT WAS THE PURPOSE AT THE END OF THE DAY, OR EVEN THE NEXT

01:14PM 20    DAY AFTER READING THE TRANSCRIPT, OR EVEN A WEEK LATER

01:14PM 21    OCCASIONALLY.

01:14PM 22         WE ARE HEARING ABOUT THIS NOW WHEN EVIDENCE HAS CLOSED.

01:14PM 23    EVIDENCE HAS CLOSED, AND THE DEFENSE IS TRYING TO RETROACTIVELY

01:14PM 24    CHANGE THE RECORD AND TO GIVE AN INSTRUCTION TO THE JURY

01:14PM 25    TELLING IT FOR THE FIRST TIME THAT THEY MUST CONSIDER 4621A FOR

01:15PM  1    A LIMITED PURPOSE.

01:15PM  2         THIS IS A GOOD JURY.  THEY'VE BEEN TAKING NOTES.  WHEN

01:15PM  3    YOUR HONOR SAYS THAT SOMETHING IS ADMITTED FOR A LIMITED

01:15PM  4    PURPOSE, THEY TAKE NOTES.  THEY SCRIBBLE DOWN.  THEY WRITE NEXT

01:15PM  5    TO IT THAT THAT'S WHAT IT IS FOR.

01:15PM  6         THEY WON'T HAVE THAT IN THEIR NOTES FOR PAGES 1 THROUGH 4

01:15PM  7    IN THE CMS LETTER.

01:15PM  8         SO WE THINK THAT THE RECORD IS ABSOLUTELY CLEAR.  THESE

01:15PM  9    PAGES SHOW IT.  THERE'S BEEN PLENTY OF ARGUMENT ABOUT THE CMS

01:15PM 10    REPORT.  THE GOVERNMENT'S POSITION HASN'T CHANGED.

01:15PM 11         BUT THE KEY HERE IS, WHAT IS THE STATE OF THE EVIDENCE?

01:15PM 12         AND I DO THINK IT MATTERS FOR THE PARTIES TO HAVE CLARITY

01:15PM 13    ON THIS GOING INTO CLOSING ARGUMENT.

01:15PM 14         DESPITE MY DISCUSSION ABOUT THE STATE OF THE RECORD, OF

01:15PM 15    COURSE THIS INSTRUCTION SHOULD NOT BE GIVEN, OR IF THERE'S SOME

01:15PM 16    KIND OF INSTRUCTION, IT SHOULD APPLY TO ALL OF THE EVIDENCE IN

01:15PM 17    THE CASE THAT HAS COME IN FOR A LIMITED PURPOSE.

01:15PM 18              THE COURT:  THANK YOU.

01:15PM 19              MR. LEMENS:  YES, IF YOU LOOK AT THESE TWO PAGES,

01:15PM 20    MS. VOLKAR HAS EXPLAINED WHAT HAPPENED IN THE COURTROOM.

01:15PM 21         SHE IGNORES THE LONGER CONTEXT OF THIS REPORT, WHICH

01:15PM 22    STARTED BACK WHEN WE STARTED LITIGATING THIS ISSUE AT THE

01:15PM 23    MOTIONS IN LIMINE STAGE, AT WHICH POINT THIS DOCUMENT WAS

01:16PM 24    LITIGATED TOGETHER, BOTH THE COVER LETTER AND ITS ATTACHMENT.

01:16PM 25              THE COURT:  WHAT ABOUT THE EVIDENCE THAT WAS

01:16PM 1    ACTUALLY ADMITTED TO THE JURY AND FOR THAT LIMITED PURPOSE,

01:16PM 2    THEY HAVE IT?  ARE YOU SEEKING NOW TO CHANGE THAT?

01:16PM 3         MR. LEMENS:  NO.  I THINK THE RECORD AS A WHOLE

01:16PM 4    REFLECTS THAT EVERYONE UNDERSTOOD AT THE TIME THAT THAT

01:16PM 5    EVIDENCE CAME IN FOR A LIMITED PURPOSE, AND IF YOUR HONOR

01:16PM 6    PERHAPS WOULD BEAR WITH ME JUST TO KIND OF EXPLAIN THE BEFORE

01:16PM 7    AND AFTER OF THIS SHORT PORTION SHE SHOWED YOU.

01:16PM 8         PRIOR TO THE TRIAL THE COURT MADE CLEAR -- AND THIS IS AT

01:16PM 9    DOCKET 989 AT 7 -- THAT IT WOULD TREAT THE COVER LETTER AND THE

01:16PM 10   LETTER TOGETHER.  THE ATTACHMENT IS A REPORT.  THE COVER LETTER

01:16PM 11   SUMMARIZES THE FINDINGS IN THAT REPORT.  THERE'S REALLY NO WAY

01:16PM 12   TO DISTINGUISH THE TWO AS SEPARATE.  BOTH SPEAK OF FINDINGS

01:16PM 13   FROM CMS.  BOTH SPEAK TO THE SAME EVENT.  THE REPORT -- THE

01:16PM 14   COVER LETTER SIMPLY SUMMARIZES WHAT IS CONTAINED THEREIN.

01:16PM 15        PRIOR TO THE TRIAL, WE MOVED TO EXCLUDE THE REPORT.  THE

01:17PM 16   GOVERNMENT'S EXPLANATION AT THAT TIME WAS THAT THERE IS NO

01:17PM 17   UNFAIR PREJUDICE BECAUSE THE DEFENSE WILL BE ABLE TO

01:17PM 18   CROSS-EXAMINE A CMS WITNESS, EITHER MS. BENNETT OR

01:17PM 19   MR. YAMAMOTO, AND THAT WILL THUS ELIMINATE THE 403 CONCERNS AND

01:17PM 20   THE LITANY OF CONCERNS THAT WE RAISED.

01:17PM 21        THE MORNING, SEVERAL DAYS BEFORE AND THEN THE MORNING OF,

01:17PM 22   THE GOVERNMENT TOOK THE POSITION THAT IT WOULD ADMIT THE REPORT

01:17PM 23   NOT THROUGH A CMS WITNESS, BUT THROUGH DR. DAS.

01:17PM 24        DR. DAS OBVIOUSLY DID NOT DRAFT THE REPORT.  HE COULD BE

01:17PM 25   CROSS-EXAMINED ABOUT ITS CREATION OR THE CONTEXT IN WHICH IT

8790

01:17PM 1    WAS DRAFTED.

01:17PM 2         AND THE GOVERNMENT'S RESPONSE AT THAT POINT WAS, DON'T

01:17PM 3    WORRY, THIS JUST HAS TO COME IN JUST FOR STATE OF MIND.  IT CAN

01:17PM 4    COME IN FOR A NONHEARSAY PURPOSE.

01:17PM 5         MR. LEACH, AT PAGE 5693 OF THE TRANSCRIPT, "THE ENTIRETY

01:17PM 6    OF THE DOCUMENT IS ADMISSIBLE FOR HER STATE OF MIND FOR A

01:18PM 7    NONHEARSAY PURPOSE."

01:18PM 8         LATER THAT SAME PAGE, "SO I THINK THAT'S AN APPROPRIATE

01:18PM 9    USE OF THE 2567.  HE CAN AUTHENTICATE IT.  HE GOT IT AND IT'S

01:18PM 10   BEING OFFERED HERE FOR A NONHEARSAY PURPOSE."

01:18PM 11        "CERTAINLY WE CAN AUTHENTICATE IT THROUGH SARA BENNETT OR

01:18PM 12   GARY YAMAMOTO OR ANOTHER CMS WITNESS, BUT I DON'T THINK WE HAVE

01:18PM 13   TO FOR THE PURPOSES THAT WE'RE USING IT FOR WITH DR. DAS."

01:18PM 14        THAT WAS THE DISCUSSION THE MORNING IT WAS ADMITTED.

01:18PM 15        WHEN MR. LEACH LAID A FOUNDATION FOR THE REPORT WITH

01:18PM 16   DR. DAS, IT WAS WITH RESPECT TO THE NOTICE OF MS. HOLMES.

01:18PM 17        THE COVER LETTER, THE FIRST FOUR PAGES, WERE FIRST OFFERED

01:18PM 18   AFTER THAT FOUNDATION.

01:18PM 19        MR. WADE OBJECTED, CITING THE MORNING'S DISCUSSION, AND

01:18PM 20   THE COURT ADMITTED THE DOCUMENT OVER THAT OBJECTION.

01:18PM 21        MR. LEACH THEN WENT TO OFFER TWO ADDITIONAL SECTIONS OF

01:18PM 22   THE DOCUMENT.  HE OFFERED THE FIRST FOUR PAGES.  THIS IS AT

01:19PM 23   5809 OF THE TRANSCRIPT.  HE LAID THE SAME FOUNDATION.  MR. WADE

01:19PM 24   MADE THE SAME OBJECTION.  THE COURT OVERRULED THE OBJECTION AND

01:19PM 25   THEN GAVE A LIMITING INSTRUCTION TO THE JURY THAT IT WAS COMING

01:19PM  1    IN FOR MS. HOLMES'S STATE OF MIND.

01:19PM  2         IMPORTANTLY, THE THIRD TIME THAT PORTIONS OF THE DOCUMENT

01:19PM  3    CAME IN -- THIS IS AT 5813 OF THE TRANSCRIPT -- MR. LEACH LAID

01:19PM  4    THE SAME OBJECTION, OR SAME FOUNDATION.

01:19PM  5         MR. WADE MADE THE SAME OBJECTION.

01:19PM  6         AND THE COURT'S COMMENTS -- THIS IS AT 5813, LINES 14 TO

01:19PM  7    15 -- "IT'S NOT FOR THE TRUTH OF THE MATTER.  IS THIS LIKEWISE

01:19PM  8    AS THE PREVIOUS ADMISSIONS?" PLURAL.

01:19PM  9         "MR. LEACH:  YES, YOUR HONOR, FOR STATE OF MIND."

01:19PM  10        WE ALL UNDERSTOOD IN THE MOMENT THAT THE COVER LETTER, THE

01:19PM  11   FIRST ADMISSION AND THE FIRST SET OF PAGES FROM THE REPORT,

01:20PM  12   WERE ADMITTED FOR MS. HOLMES'S STATE OF MIND.  THERE'S NO

01:20PM  13   DISPUTE ABOUT THAT.

01:20PM  14        THE COURT OVERRULED THE OBJECTION AND WE WENT ON.

01:20PM  15        AFTER DR. DAS'S TESTIMONY, AFTER THE GOVERNMENT HAD CLOSED

01:20PM  16   ITS CASE, MR. LOOBY CAME UP AND MADE A MOTION TO STRIKE THE

01:20PM  17   REPORT IN LIGHT OF THE 403 CONCERNS.

01:20PM  18        MR. LEACH MADE THE SAME REPRESENTATION TO THE COURT THAT

01:20PM  19   THE DOCUMENT, BOTH 4621A AND 4621B, WAS ADMISSIBLE BECAUSE IT

01:20PM  20   WAS OFFERED FOR A NONHEARSAY PURPOSE.

01:20PM  21        THAT SHOULD DO IT.  THE GOVERNMENT'S POSITION ON THIS HAS

01:20PM  22   BEEN CLEAR.  OUR UNDERSTANDING ON THIS HAS BEEN CLEAR.  WE'RE

01:20PM  23   NOT TRYING TO REOPEN OR RECREATE OR CREATE MISCHIEF, AS

01:20PM  24   MS. VOLKAR SUGGESTS.

01:20PM  25        AND I WOULD POINT YOUR HONOR TO THE PORTIONS OF THE

01:20PM  1    TRANSCRIPT THAT I HAVE CITED.

01:20PM  2             THE COURT:  SO LET ME ASK YOU, WHY DO YOU NEED THIS

01:20PM  3    INSTRUCTION?  YOU CAN ARGUE IT.  I DON'T THINK YOU NEED THE

01:20PM  4    INSTRUCTION.

01:20PM  5             MR. LEMENS:  WELL, AT THE VERY LEAST, I THINK WE

01:21PM  6    NEED CLARITY THAT IT CAME IN FOR NOTICE SO THAT THE GOVERNMENT

01:21PM  7    DOESN'T STAND UP IN CLOSING AND PUT UP THE COVER LETTER AND

01:21PM  8    SUGGEST IT WAS OFFERED AND MAKE ARGUMENTS BASED ON THE FACT

01:21PM  9    THAT IT WAS OFFERED FOR ITS TRUTH.

01:21PM  10        THE INSTRUCTION WE THINK IS IMPORTANT.  I, OF COURSE,

01:21PM  11   UNDERSTAND IF THE COURT HAS A DIFFERENT VIEW.  BUT WE THINK

01:21PM  12   IT'S AN IMPORTANT DOCUMENT IN THE CASE.

01:21PM  13            THE COURT:  NO, SURE.

01:21PM  14            MR. LEMENS:  AND IN LIGHT OF THE CONFUSION THAT THE

01:21PM  15   GOVERNMENT HAS JUST PERHAPS EVEN JUSTIFIES THE INSTRUCTION EVEN

01:21PM  16   FURTHER.

01:21PM  17            THE COURT:  OKAY.

01:21PM  18            MS. VOLKAR:  WELL, YOUR HONOR, I THINK IT'S NO

01:21PM  19   SURPRISE TO SAY -- MR. LEMENS MULTIPLE TIMES SAID WE ALL

01:21PM  20   UNDERSTOOD.  AND I ALSO THOUGHT WE ALL UNDERSTOOD IN THE ROOM

01:21PM  21   WHAT HAPPENED BECAUSE YOUR HONOR WAS CRYSTAL CLEAR, THIS

01:21PM  22   DOCUMENT IS ADMITTED, NO QUALIFICATIONS, UNLIKE ALL OF THE

01:21PM  23   OTHER TIMES IN THE CASE WHEN YOU'VE TURNED TO THE JURY AND

01:21PM  24   GIVEN THE TYPICAL INSTRUCTION THAT GOES WITH EVIDENCE THAT'S

01:21PM  25   FOR A LIMITED PURPOSE.

01:21PM 1        THAT DIDN'T HAPPEN FOR THE COVER LETTER.  THAT, AGAIN, IS

01:21PM 2    WHY THERE'S A 4621A AND A 4621B.

01:21PM 3        AND AT THE END OF EVERY TRIAL DAY, THERE IS THE WONDERFUL

01:21PM 4    SUPPORT STAFF THAT MEET AND TALK ABOUT THIS.  THERE WAS NO

01:22PM 5    UNCERTAINTY THERE, EITHER.  4621A WAS ENTIRELY ADMITTED, NO

01:22PM 6    LIMITATION.  4621B WAS ADMITTED FOR A LIMITED PURPOSE.

01:22PM 7        IT'S REFLECTED IN THE COURT'S TRIAL LOG AND MINUTE ORDER

01:22PM 8    FOR THE DAY.

01:22PM 9        THERE WAS NO CONFUSION IN THE MOMENT.  THAT PART I AGREE

01:22PM 10   WITH.

01:22PM 11       THE CONFUSION NOW IS SURPRISING APPARENTLY TO BOTH SIDES.

01:22PM 12   AND, AGAIN, THERE WAS AN EASY WAY TO SOLVE THIS IF THERE WAS

01:22PM 13   ANY AMBIGUITY.  THEN AT THE END OF EACH TRIAL DAY, AFTER

01:22PM 14   LOOKING BACK AT THE RECORD, EACH SIDE HAS FREQUENTLY SOUGHT

01:22PM 15   CLARIFICATION FROM YOUR HONOR AND ASKED THE COURT TO GO BACK

01:22PM 16   AND INSTRUCT THE JURY THAT WHEN I MEANT THIS LIMITING

01:22PM 17   INSTRUCTION, I MEANT IT WITH RESPECT TO EACH OF THESE EXHIBITS,

01:22PM 18   OR I MEANT IT WITH RESPECTS TO ALL OF THIS.

01:22PM 19       THAT NEVER HAPPENED.

01:22PM 20       SO FROM THE JURY'S PERSPECTIVE RIGHT NOW, WHICH IS WHAT WE

01:22PM 21   CARE ABOUT, I THINK, FOR PURPOSES OF THE STATE OF THE EVIDENCE,

01:22PM 22   THIS IS WHAT THEY HEARD.

01:22PM 23       WHAT THEY HEARD WAS ADMITTED, AND THEY DIDN'T HEAR ANY

01:22PM 24   LIMITING INSTRUCTIONS ON THIS PIECE.

01:22PM 25       I WOULD LIKE TO ADDRESS MR. LEMENS'S BROADER CONTEXT

8794

01:23PM 1      POINT, BUT IF YOUR HONOR --

01:23PM 2                 THE COURT:  GO RIGHT AHEAD.  GO RIGHT AHEAD.

01:23PM 3                 MS. VOLKAR:  SO ON THE BROADER CONTEXT POINT, AGAIN,

01:23PM 4      I GO BACK TO THE GOVERNMENT'S POSITION HAS BEEN THE SAME THE

01:23PM 5      ENTIRE TIME, THAT THE CMS REPORT IS FULLY ADMISSIBLE.

01:23PM 6           THE FIRST MOTION TO RECONSIDER THAT I STOOD UP HERE AND

01:23PM 7      DISCUSSED WITH YOUR HONOR BACK IN AUGUST, THE DEFENSE WAS

01:23PM 8      TAKING THE POSITION THAT WHEN THE COURT GRANTED THE

01:23PM 9      GOVERNMENT'S REQUEST TO ADMIT THE CMS REPORT, THAT DIDN'T

01:23PM 10     EXTEND TO THE COVER LETTER.

01:23PM 11          WHAT UNDID THEM WAS THEIR OWN MOTION IN LIMINE WHICH

01:23PM 12     COVERED BOTH, AND THE COURT'S RULING WAS CLEARLY APPLICABLE TO

01:23PM 13     BOTH, THAT THEY WERE GRANTED.

01:23PM 14          BUT WE'RE STANDING HERE WITH MR. LEMENS SAYING THAT

01:23PM 15     THEY'VE ALWAYS BEEN THE SAME.

01:23PM 16          THE DEFENSE TOOK THE POSITION IN AUGUST THAT THE COVER

01:23PM 17     LETTER SHOULD BE TREATED DIFFERENTLY FROM THE CMS REPORT.

01:23PM 18          THE GOVERNMENT HAS ARGUED CONSISTENTLY THAT THE DOCUMENT

01:24PM 19     IS FULLY ADMISSIBLE, AND ARGUED AS AN ALTERNATIVE POSITION THAT

01:24PM 20     IT COULD COME IN FOR THE NONHEARSAY PURPOSE OF HER STATE OF

01:24PM 21     MIND, AND IT TOOK THAT ALTERNATIVE POSITION THE MORNING OF

01:24PM 22     DR. DAS'S TESTIMONY IN LARGE PART BECAUSE THE DEFENSE WANTED TO

01:24PM 23     CONTINUE TO GO LINE BY LINE AND DO A BUNCH OF REDACTIONS.

01:24PM 24          THE GOVERNMENT LISTENED TO THEIR OBJECTIONS, EVEN THOUGH,

01:24PM 25     UNDER THE COURT'S PRIOR RULING, THE ENTIRE CMS REPORT WAS

8795

01:24PM 1      ADMISSIBLE, AND THE GOVERNMENT SOUGHT TO REDUCE WHAT IT WAS

01:24PM 2      SEEKING TO ADMIT THROUGH DR. DAS.

01:24PM 3          AND THERE IS A DIFFERENCE BETWEEN THE COVER LETTER AND THE

01:24PM 4      CMS REPORT, HOW IT CAME IN THROUGH DR. DAS.

01:24PM 5          DR. DAS DID HIS OWN INDEPENDENT INVESTIGATION OF THE

01:24PM 6      FINDINGS IN THE CMS REPORT AND HE AGREED WITH THEM 100 PERCENT.

01:24PM 7          NOW, THAT'S ALSO TESTIMONY THAT THEY WANT OUT BECAUSE IT'S

01:24PM 8      BAD FOR THEIR CASE.

01:24PM 9          BUT THAT'S NOT THE STANDARD HERE.  THE STANDARD IS

01:24PM 10     ADMISSIBILITY.

01:24PM 11         AND WHEN MR. LOOBY STOOD UP HERE A FEW DAYS LATER AND

01:24PM 12     ARGUED THAT THIS MATERIAL SHOULD BE STRICKEN FROM THE RECORD,

01:25PM 13     HE ARGUED ABOUT THE CONFRONTATION CLAUSE.

01:25PM 14         WHAT IS THE POINT OF ARGUING ABOUT THE CONFRONTATION

01:25PM 15     CLAUSE IF NONE OF IT CAME IN FOR A -- LIKE, IF IT CAME IN ONLY

01:25PM 16     FOR A NONHEARSAY PURPOSE?

01:25PM 17         WHEN MR. LEACH TALKED ABOUT THAT AND SAID THAT IN

01:25PM 18     RESPONSE, HE WAS, IF NOT EXPLICITLY, IMPLICITLY TALKING ABOUT

01:25PM 19     4621B.

01:25PM 20         BUT I WOULD PUT FORWARD, WHY WOULD THEY EVEN BE ARGUING

01:25PM 21     ABOUT THE CONFRONTATION CLAUSE IF THE ENTIRETY CAME IN FOR A

01:25PM 22     NONHEARSAY PURPOSE?

01:25PM 23             THE COURT:  THANK YOU.

01:25PM 24         SO IS THERE A DANGER THAT THE JURY WILL BE CONFUSED

01:25PM 25     BECAUSE SOME OF THIS WAS ADMITTED FOR A PURPOSE OTHER THAN

01:25PM  1    STATE OF MIND?

01:25PM  2              MS. VOLKAR:  I DON'T THINK SO, YOUR HONOR, BECAUSE I

01:25PM  3    THINK THE STATE OF THE JURORS' NOTES RIGHT NOW IS THAT PAGES --

01:25PM  4    AGAIN, I'M LOOKING AT THE TRANSCRIPT PAGE -- OR 5802 FROM

01:25PM  5    NOVEMBER 9TH.  THE STATE OF THE JURORS' NOTES IS THAT PAGES 1

01:25PM  6    THROUGH 4 OF 4621, WHICH IS NOW LABELLED 4621A, IS FULLY

01:25PM  7    ADMITTED.

01:25PM  8         AND THEN I'M SURE THAT THEIR NOTES ALSO REFLECT THAT 4621,

01:26PM  9    WHICH HAS BEEN LABELLED 4621B, WHICH IS THE REPORT -- THIS IS

01:26PM  10   NOT WITHIN THE SAME DOCUMENT -- CERTAIN PAGES OF THAT CAME IN,

01:26PM  11   BUT FOR A LIMITED PURPOSE.

01:26PM  12        AND TO THE EXTENT THAT YOUR HONOR IS WORRIED ABOUT ONE

01:26PM  13   DOCUMENT BEING PARSED OUT IN THAT MANNER, THERE HAVE BEEN TIMES

01:26PM  14   DURING THIS TRIAL THAT, WITHIN ONE EMAIL, A TOP EMAIL GOES TO

01:26PM  15   MS. HOLMES OR IS FROM MS. HOLMES AND THE COURT HAS INSTRUCTED

01:26PM  16   THAT THAT ONE EMAIL IS ADMITTED FOR A LIMITED PURPOSE.

01:26PM  17        THESE JURORS ARE SMART, THEY'RE PAYING ATTENTION, THEY'RE

01:26PM  18   TAKING NOTES.

01:26PM  19        WHEN YOUR HONOR GIVES INSTRUCTIONS, THE NINTH CIRCUIT IS

01:26PM  20   CLEAR THAT WE PRESUME THE JURORS FOLLOW THE COURT'S

01:26PM  21   INSTRUCTIONS.

01:26PM  22        AND HERE THE RECORD COULD NOT BE CLEARER.

01:26PM  23        SO, YES, THERE'S A LONG HISTORY AND CONTEXT OF ARGUING

01:26PM  24   ABOUT THE CMS REPORT AMONG THE PARTIES.  THE COURT IS VERY

01:26PM  25   FAMILIAR WITH THAT.

01:26PM  1           BUT WHAT WE NEED RIGHT NOW IS CLARITY ON THE RECORD, AND

01:26PM  2      THE GOVERNMENT'S POSITION HAS BEEN, FOR THE LAST MONTH, THAT IT

01:26PM  3      COULD NOT BE CLEARER THAT THE LETTER IS FULLY ADMITTED IN

01:27PM  4      4621A, AND THE CMS REPORT PORTIONS WERE ONLY ADMITTED FOR THE

01:27PM  5      LIMITED PURPOSE OF HER STATE OF MIND.

01:27PM  6           THE COURT:  OKAY.

01:27PM  7           MS. VOLKAR:  AND WE DON'T NEED AN INSTRUCTION ON

01:27PM  8      EITHER.

01:27PM  9           THE COURT:  AND IS THE GOVERNMENT INTENDING TO ARGUE

01:27PM 10      IN THEIR ARGUMENT SOMETHING DIFFERENT?  ARE YOU INTENDING TO

01:27PM 11      ARGUE THAT THE CMS, PARTS OF THE CMS LETTER WERE -- ARE FOR THE

01:27PM 12      TRUTH OF THE MATTER ASSERTED THAT WERE NOT OFFERED FOR THE

01:27PM 13      TRUTH OF THE MATTER ASSERTED, BUT ONLY FOR STATE OF MIND?

01:27PM 14           DO YOU UNDERSTAND MY QUESTION?

01:27PM 15           MS. VOLKAR:  I DO, AND I WANT TO BE CRYSTAL CLEAR IN

01:27PM 16      RESPONSE.

01:27PM 17           4621B, THE CMS REPORT, BECAUSE THAT WAS ADMITTED NOT FOR

01:27PM 18      THE TRUTH OF THE MATTER ASSERTED AND ONLY TO HER STATE OF MIND,

01:27PM 19      THE GOVERNMENT IN ITS CLOSING ARGUMENTS WAS SPECIFICALLY NOT

01:27PM 20      INTENDING TO ARGUE THAT WITH RESPECT TO THE TRUTH OF THE

01:27PM 21      DOCUMENT.

01:27PM 22           THE GOVERNMENT UNDERSTOOD 4621B WAS ADMITTED FOR A LIMITED

01:27PM 23      PURPOSE.

01:27PM 24           4621A, THE COVER LETTER, THE GOVERNMENT WAS INTENDING TO

01:28PM 25      ARGUE THAT TO THE FULL BENEFIT THAT IT THOUGHT IT WAS ENTITLED,

8798

01:28PM  1    WHICH WAS FOR THE TRUTH.

01:28PM  2         AND IN THE MOMENT, IT WASN'T CLARIFIED.  DEFENDANT WAITED

01:28PM  3    UNTIL AFTER THE CLOSE OF EVIDENCE TO BRING THIS UP.

01:28PM  4         AND I GO BACK TO EVEN THE INSTRUCTION THEY'RE IMPOSING --

01:28PM  5    OH, SORRY.

01:28PM  6         EACH THE INSTRUCTION THAT THEY'RE SUGGESTING RECOGNIZES

01:28PM  7    THE SPLIT BETWEEN THE TWO DOCUMENTS.  THE ONLY REASON FOR THE

01:28PM  8    SPLIT, THE 4621A AND THE 4621B, WAS BECAUSE THEY WERE ADMITTED

01:28PM  9    FOR DIFFERENT PURPOSES.

01:28PM 10         THE COURT:  AND I THINK YOU'RE SAYING THE RECORD

01:28PM 11    REFLECTS B WAS ADMITTED FOR STATE OF MIND ONLY.

01:28PM 12         MS. VOLKAR:  CORRECT.  AND THE GOVERNMENT ENTIRELY

01:28PM 13    INTENDS TO ABIDE BY THAT.

01:28PM 14         THE COURT:  OKAY.

01:28PM 15         MR. LEMENS:  YOUR HONOR, IF I MAY?  THE COVER LETTER

01:28PM 16    I'LL JUST READ:  "AS A RESULT OF THE SURVEY, IT WAS DETERMINED

01:28PM 17    THAT YOUR FACILITY IS NOT IN COMPLIANCE WITH ALL OF THE

01:28PM 18    CONDITIONS REQUIRED FOR CERTIFICATION."

01:28PM 19         THE GOVERNMENT SOUGHT TO PREVENT US FROM CROSS-EXAMINING A

01:28PM 20    CMS WITNESS ON THAT STATEMENT ON THE PREPARATION OF THIS

01:28PM 21    DOCUMENT BY ARGUING THAT THIS WOULD COME IN FOR A NONHEARSAY

01:29PM 22    PURPOSE AND ONLY FOR MS. HOLMES'S STATE OF MIND.

01:29PM 23         THAT WAS THE ARGUMENT.  THAT WAS THE ARGUMENT MR. LEACH

01:29PM 24    MADE AFTER -- DURING THE MOTION TO STRIKE.

01:29PM 25         THE SECOND REASON IS IT CAME IN FOR THE STATE OF MIND ON

8799

01:29PM   1    MS. HOLMES, AND WE ASKED QUESTIONS OF DR. DAS THAT TOUCHED ON

01:29PM   2    HER STATE OF MIND.  SO IT CAME IN FOR A NONHEARSAY PURPOSE.

01:29PM   3    THAT'S PAGE 7089 OF THE TRANSCRIPT.

01:29PM   4        WE'VE BEEN VERY CLEAR ABOUT OUR POSITION.  WE EITHER

01:29PM   5    WANTED TO BE ABLE TO CROSS A CMS WITNESS ON THE CREATION OF

01:29PM   6    THAT DOCUMENT, OR AT THE VERY LEAST IT SHOULD COME IN FOR -- WE

01:29PM   7    WERE TOLD IT WAS COMING IN FOR A NONHEARSAY PURPOSE.

01:29PM   8        WE STILL OBJECTED BECAUSE WE STILL HAVE CONCERNS.  WE

01:29PM   9    STILL HAVE A PENDING MOTION BECAUSE OF THE ANIMATING CONCERNS

01:29PM   10   UNDER 403.

01:29PM   11       BUFF THE GOVERNMENT'S POSITION NOW, TO TRY TO PUT THIS

01:29PM   12   DOCUMENT IN FOR ITS TRUTH, TO ARGUE THAT REGULATORY VIOLATIONS

01:29PM   13   WERE ESTABLISHED, TO ARGUE THAT IT SHOULD HAVE BEEN KNOWN IS

01:29PM   14   BAFFLING TO ME.

01:29PM   15       I THINK THE TRANSCRIPT IS CLEAR.  YOUR HONOR REFERRED TO

01:30PM   16   PREVIOUS ADMISSIONS.  YOUR HONOR REFERRED TO AN INSTRUCTION

01:30PM   17   REFERENCING THESE EXHIBITS AT PAGE 5813 TO 5814.  AND I THINK

01:30PM   18   THE JURY WAS PROPERLY INSTRUCTED AS TO THE LIMITED PURPOSE.

01:30PM   19       TO SUGGEST THAT IT CAN COME IN NOW FOR ITS TRUTH RAISES

01:30PM   20   CONCERNS, GREAT CONCERNS FOR THE DEFENSE.

01:30PM   21           THE COURT:  OKAY.

01:30PM   22           MS. VOLKAR:  YOUR HONOR, IF I MAY JUST CLARIFY TWO

01:30PM   23   POINTS?

01:30PM   24       I THINK, ONE, YOUR HONOR PROBABLY REMEMBERS IT, BUT IF YOU

01:30PM   25   WERE TO LOOK BACK AT THE TRANSCRIPT, THE ARGUMENT -- MR. LEACH

8800

01:30PM  1      ALSO SAID THAT THE CMS REPORT IS NOT TESTIMONIAL.

01:30PM  2          SO IT WASN'T JUST THAT THE ONLY REASON THAT THIS COULD

01:30PM  3      COME IN THROUGH DR. DAS WAS BECAUSE IT WENT TO HER STATE OF

01:30PM  4      MIND.  IT WAS AN ALTERNATIVE ARGUMENT.

01:30PM  5          THE GOVERNMENT'S PRIMARY POSITION WAS, IS, AND WILL

01:30PM  6      CONTINUE TO BE, THAT THE CMS REPORT AND THE LETTER ARE NOT

01:30PM  7      TESTIMONIAL.

01:30PM  8          THAT WAS ARGUED EACH OF THE SAME TIMES.  MR. LEMENS JUST

01:30PM  9      IS NOT READING THE FULL ARGUMENT BECAUSE IT SPANS MANY PAGES,

01:31PM 10      TO BE FAIR.

01:31PM 11          AND THEN THE SECOND POINT IS WHEN YOUR HONOR WAS TALKING

01:31PM 12      ABOUT THE PREVIOUS ADMISSIONS, THIS WAS IN A TIME PERIOD WHEN

01:31PM 13      MR. LEACH WAS MOVING THROUGH CERTAIN PAGES OF THE REPORT, AND

01:31PM 14      YOU'LL RECALL CERTAIN PAGES AND VERY SPECIFIC SECTIONS WERE

01:31PM 15      BEING ADMITTED TO TRY TO AVOID ASSAYS THAT WERE NOT ON THE BILL

01:31PM 16      OF PARTICULARS, ADDRESSING A DIFFERENT CONCERN THAT THE DEFENSE

01:31PM 17      HAS RAISED.

01:31PM 18          SO WHEN YOUR HONOR WAS TALKING ABOUT THESE ADMISSIONS, WE

01:31PM 19      WERE TALKING ABOUT THE PORTIONS OF THE CMS REPORT THAT WERE

01:31PM 20      COMING IN IN PIECES.

01:31PM 21          ALL OF THE CMS REPORT WAS INCLUDED AS 4621B, THAT WAS

01:31PM 22      ADMITTED FOR A LIMITED PURPOSE, THE GOVERNMENT UNDERSTANDS

01:31PM 23      THAT.

01:31PM 24              THE COURT:  ALL RIGHT.  WELL, I THINK I'M GOING TO

01:31PM 25      NEED TO LOOK AT THE TRANSCRIPT.

01:31PM  1     THIS SHOULD HAVE BEEN RAISED, I THINK, AT SOME POINT IN

01:31PM  2     TIME PRIOR TO JURY INSTRUCTIONS.

01:31PM  3          MR. LEMENS:  YOUR HONOR, THE DISPUTE TUMBLED OUT

01:31PM  4     WHEN THE GOVERNMENT INFORMED US OF THEIR POSITION.

01:31PM  5          THE COURT:  NO, I WISH WE HAD TIME TO DISCUSS THIS A

01:31PM  6     LITTLE EARLIER THAN WHERE WE ARE NOW.

01:31PM  7          BUT LET ME JUST STATE, I STILL, I'M STILL -- I DON'T HAVE

01:32PM  8     GREAT COMFORT GIVING AN INSTRUCTION THAT RELATES TO A SPECIFIC

01:32PM  9     PIECE OF EVIDENCE.  I JUST AM NOT -- I'M TROUBLED BY THAT.

01:32PM  10         AND I THINK THE GENESIS OF THIS IS BECAUSE YOU HAVE SOME

01:32PM  11    DIFFERENCES AS TO WHAT THE EVIDENCE IS.

01:32PM  12         MR. LEMENS:  AND WE RECOGNIZE THE COURT'S POSITION

01:32PM  13    AND PRESERVE, OF COURSE, OURS, THAT ISSUE BEING INCLUDED.

01:32PM  14         THE COURT:  WELL, LET ME JUST SAY, I THINK I'M GOING

01:32PM  15    TO HAVE TO READ THESE TRANSCRIPTS AGAIN, THE PAGES.  IF YOU

01:32PM  16    HAVE A SUMMATION OF THOSE THAT YOU'D LIKE ME TO LOOK AT, YOU'LL

01:32PM  17    GIVE ME THOSE, THOSE PAGES.

01:32PM  18         MR. LEMENS:  OF COURSE.

01:32PM  19         MS. VOLKAR:  YOUR HONOR, IT IS ON 1188.  IN FACT,

01:32PM  20    MERE MINUTES BEFORE WE FILED, DEFENSE ADDED ADDITIONAL

01:32PM  21    CITATIONS.

01:32PM  22         SO ON 1188, ECF PAGE 43, THE DEFENSE ADDED THE -- I'M

01:32PM  23    SORRY, THERE'S THE AUTHORITY THERE.  THE DEFENSE SIGNIFICANTLY

01:32PM  24    ADDED TO THAT AFTER THE GOVERNMENT PROVIDED ITS TRANSCRIPT

01:33PM  25    LINES, WHICH ARE INCLUDED IN FOOTNOTE 40 AT THE BOTTOM OF THAT

8802

01:33PM 1    SAME PAGE.

01:33PM 2                THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

01:33PM 3                MS. VOLKAR:  THANK YOU, YOUR HONOR.

01:33PM 4                THE COURT:  LET'S TURN TO 32, TRADE SECRETS.

01:33PM 5        I'VE LOOKED AT THIS.  LET ME, JUST FOR BREVITY'S SAKE, I

01:33PM 6    HAVE -- THIS IS DEFENSE TRADE SECRETS.

01:33PM 7        I HAVE SOME DISCOMFORT WITH LINES 3 THROUGH 10, WHICH IS

01:33PM 8    THE, I GUESS, FOUNDATIONAL, I'LL CALL IT, ABOUT CALIFORNIA LAW.

01:33PM 9        IT SEEMS TO ME, MR. LEMENS, THAT THE REAL INSTRUCTION, OR

01:33PM 10   WHAT YOU WOULD SEEK TO INFORM THE JURY OF IS BEGINNING AT LINE

01:33PM 11   11, "EVIDENCE THAT MS. HOLMES OR THERANOS TOOK REASONABLE

01:34PM 12   EFFORTS TO PROTECT TRADE SECRETS IS NOT EVIDENCE THAT

01:34PM 13   MS. HOLMES ACTED WITH AN INTENT TO DEFRAUD."

01:34PM 14                MR. LEMENS:  I CERTAINLY THINK THAT'S THE POINT OF

01:34PM 15   THE INSTRUCTION, YOUR HONOR.  I THINK THE PRIOR LINES IN OUR

01:34PM 16   VIEW ARE IMPORTANT TO INSTRUCT THE JURY WHAT THE LAW IS, AS IS

01:34PM 17   THE PROVINCE OF THE COURT.

01:34PM 18       I'M CERTAIN, HAD THE DEFENSE CALLED AN EXPERT TO TRY TO

01:34PM 19   OFFER THAT TESTIMONY AS TO WHAT THE LAW REQUIRES, IT WOULD HAVE

01:34PM 20   BEEN INAPPROPRIATE AND OBJECTIONABLE, WHICH IS WHY WE DIDN'T DO

01:34PM 21   THAT.

01:34PM 22       I THINK WHAT WE HAVE SUMMARIZED IS WHAT WE UNDERSTAND TO

01:34PM 23   BE THE STATE OF THE LAW.  WE HAVE TRIED TO DO SO IN A NEUTRAL

01:34PM 24   MANNER.

01:34PM 25       I HAVE NOT -- TO MY KNOWLEDGE, THE GOVERNMENT HAS NOT

8803

01:34PM 1    OFFERED A COMPETING VIEW OF WHAT THE TRADE SECRETS LAW IS.

01:34PM 2        THEY'VE, OF COURSE, RAISED CONCERNS WITH THIS INSTRUCTION

01:34PM 3    AS A WHOLE, BUT I DON'T UNDERSTAND THERE TO BE ANY DISPUTE

01:34PM 4    ABOUT WHAT THE STATE OF CALIFORNIA LAW IS.  AND IT'S CITED, OF

01:34PM 5    COURSE, IN THE AUTHORITY THAT WE HAVE PROVIDED.

01:35PM 6        THE COURT:  WHAT IS IN THE EVIDENCE REGARDING TRADE

01:35PM 7    SECRETS?  HAS THERE BEEN ANY -- FIRST OF ALL, THERE'S NO EXPERT

01:35PM 8    TESTIMONY ABOUT TRADE SECRETS AS I RECALL.

01:35PM 9        MR. LEACH:  THERE'S NOT EXPERT TESTIMONY, YOUR

01:35PM 10   HONOR.

01:35PM 11       THERE IS AN EMAIL THAT WAS ADMITTED DURING MS. HOLMES'S

01:35PM 12   TESTIMONY SPELLING OUT THE COMPANY'S POLICY WITH RESPECT TO

01:35PM 13   TRADE SECRETS.

01:35PM 14       THE COURT:  THAT WAS A DRAFT?

01:35PM 15       MR. LEACH:  IT WAS A DRAFT, CORRECT.  SO THERE'S

01:35PM 16   THAT EVIDENCE ABOUT THE BACK AND FORTH SHE HAD WITH --

01:35PM 17       THE COURT:  BUT IS THERE EVIDENCE THAT THAT WAS THE

01:35PM 18   COMPANY'S POLICY THAT WAS ADHERED TO, ACCEPTED, FOLLOWED?  IT

01:35PM 19   SEEMS LIKE THAT WAS INFORMATIVE TO MS. HOLMES, BUT THERE'S -- I

01:35PM 20   DON'T RECALL ANY EVIDENCE THAT THAT WAS COMPANY POLICY.

01:35PM 21       MR. LEACH:  I DON'T HAVE A CLEAR MEMORY, YOUR HONOR,

01:35PM 22   BUT IT DOESN'T MATTER, AND LET ME PLEASE TELL YOU WHY.

01:35PM 23       THE COURT:  SURE.

01:35PM 24       MR. LEACH:  THE JURY IS NOT REQUIRED TO FIND

01:35PM 25   ANYTHING RELATING TO TRADE SECRETS.  THIS IS A RED HERRING

8804

01:35PM  1          INSTRUCTION.

01:35PM  2              THE JURY IS REQUIRED TO FIND, DID SHE HAVE THE INTENT TO

01:36PM  3      DECEIVE OR TO CHEAT?

01:36PM  4              NOW, THE GOVERNMENT ARGUES SHE DID NOT DISCLOSE THE USE OF

01:36PM  5      THIRD PARTY SIEMENS MACHINES TO INVESTORS, TO MR. PARLOFF, TO

01:36PM  6      OTHER AUDIENCES.

01:36PM  7              HER RESPONSE TO THAT IS, I WAS PROHIBITED FROM DOING THAT,

01:36PM  8      OR I THOUGHT I WAS PROHIBITED FROM DOING THAT BECAUSE OF TRADE

01:36PM  9      SECRETS LAW.

01:36PM  10             WHAT TRADE SECRETS LAW IS OR IS NOT IS IRRELEVANT.

01:36PM  11             WHAT MATTERS IS WHAT IS IN HER HEAD WITH RESPECT TO HER

01:36PM  12     INTENT.

01:36PM  13             SHE COULD BE TOTALLY RIGHT.  SHE COULD BE TOTALLY WRONG.

01:36PM  14             IT'S A FACTUAL MATTER RELATING TO WHAT HER INTENT IS AND

01:36PM  15     WHAT HER UNDERSTANDING IS.

01:36PM  16             SO THERE'S NO POINT TO INSTRUCTING ON WHAT TRADE SECRETS

01:36PM  17     LAW, THE OBJECTIVE, IS.

01:36PM  18             WHAT MATTERS IS WHAT IS IN HER MIND AND WHAT HER INTENT

01:36PM  19     WAS.

01:36PM  20             AND THE GOVERNMENT'S CONCERN IS ACTUALLY MOST ACUTE WITH

01:36PM  21     THE LAST TWO LINES THAT YOUR HONOR WAS SUGGESTING MIGHT BE

01:37PM  22     APPROPRIATE.  WE THINK IT'S TOTALLY INAPPROPRIATE.  WE THINK

01:37PM  23     THAT THIS IS SINGLING OUT PARTICULAR EVIDENCE.

01:37PM  24             I THINK THE COURT SHOULD NOT BE IN THE BUSINESS OF DOING

01:37PM  25     THAT.

8805

01:37PM 1       AND THIS IS COMPLETELY UNBALANCED WITH RESPECT TO TRADE

01:37PM 2  SECRETS LAWS, YOUR HONOR, BECAUSE A PARTY CAN PROTECT ITS TRADE

01:37PM 3  SECRETS THROUGH A CONFIDENTIALITY AGREEMENT.

01:37PM 4       THIS IS BLACK LETTER LAW IN THE NINTH CIRCUIT.  I WOULD

01:37PM 5  CITE UNITED STATES VERSUS NOSAL, 844 F.3D 1024.  IT'S A 2016

01:37PM 6  CASE.  THERE HAS BEEN SOME APPEALS FROM THAT, BUT I DON'T THINK

01:37PM 7  IT TOUCHES ON THIS ISSUE, WHICH IS A COMPANY CAN PROTECT ITS

01:37PM 8  TRADE SECRETS THROUGH CONFIDENTIALITY AGREEMENTS.

01:37PM 9       AND WHAT IS BEING PROPOSED HERE IS TOTALLY UNNECESSARY.

01:37PM 10      WHAT MATTERS IS WHAT WAS IN MS. HOLMES'S MIND.  MAYBE SHE

01:37PM 11  THOUGHT SHE WAS REASONABLY PROTECTING TRADE SECRETS.  MAYBE SHE

01:38PM 12  COULD HAVE GOTTEN A CONFIDENTIALITY AGREEMENT WITH WALGREENS,

01:38PM 13  OR A MORE ROBUST CONFIDENTIALITY AGREEMENT AND PROTECTED

01:38PM 14  HERSELF THAT WAY.

01:38PM 15      BUT THIS IS INSTRUCTING ON AN AREA OF LAW THAT THE JURY

01:38PM 16  DOES NOT NEED TO DECIDE.

01:38PM 17        THE COURT:  WELL, THAT WAS -- EXCUSE ME.  THAT'S A

01:38PM 18  CONCERN THAT I HAD.

01:38PM 19      ISN'T THIS ASKING US TO ASK THE JURY TO DETERMINE WHETHER

01:38PM 20  OR NOT THERE WAS A TRADE SECRET AND WHETHER OR NOT THERE WAS A

01:38PM 21  VIOLATION OF A TRADE SECRET?

01:38PM 22      IT SEEMS LIKE THAT IS ANCILLARY.  WHAT IS REALLY AT ISSUE

01:38PM 23  IS WHAT YOUR CLIENT BELIEVED IN HER, IN HER MIND, AND DO WE

01:38PM 24  NEED TO -- DO WE NEED TO TELL THEM, THE JURY, THAT THEY HAVE TO

01:38PM 25  FIND OUT WHAT A TRADE SECRET IS?  THAT SEEMS TO BE BEYOND THE

**ER-12380**

8806

```
01:38PM   1    SCOPE HERE.
01:38PM   2              MR. LEMENS:  WELL, IT'S BEEN OUR POSITION THAT NONE
01:38PM   3    OF THIS SHOULD COME IN.  I THINK THE LAST TIME I WAS UP HERE IN
01:38PM   4    FRONT OF THE COURT, WE WERE TALKING ABOUT THIS SAME ISSUE BACK
01:38PM   5    IN MAY, AND THE COURT ALLOWED THE EVIDENCE OF REASONABLE
01:39PM   6    MEASURES TO COME IN.
01:39PM   7         OUR POSITION HAS BEEN AND CONTINUES TO BE THAT THAT IS --
01:39PM   8    ANYTHING THAT CONSTITUTES A REASONABLE MEASURE IS LEGALLY
01:39PM   9    REQUIRED CONDUCT AND, AS SUCH, IS NOT PROPERLY CONSIDERED BY A
01:39PM  10    JURY IN DETERMINING MS. HOLMES'S LIABILITY.
01:39PM  11         I WILL CITE THE VALLEJO CASE, THAT'S UNITED STATES V.
01:39PM  12    VALLEJO, V-A-L-L-E-J-O, 237 F.3D 1008.  THAT'S OUT OF THE
01:39PM  13    NINTH CIRCUIT.
01:39PM  14         THE GOVERNMENT, THROUGHOUT ITS CASE, HAS PUT EVIDENCE INTO
01:39PM  15    THE RECORD OF TRADE SECRETS -- OF CONFIDENTIALITY PRACTICES,
01:39PM  16    LIMITATIONS ON INFORMATION WITHIN THE COMPANY.  WE HEARD THAT
01:39PM  17    FROM MS. GANGAKHEDKAR, DR. ROSENDORFF, AND MR. EDLIN, THE USE
01:39PM  18    OF NONDISCLOSURE AGREEMENTS, LIMITATIONS ON ACCESS, THE
01:39PM  19    PRESENCE OF SECURITY.
01:39PM  20         THEY HAVE PUT THIS EVIDENCE INTO THE CASE.
01:39PM  21         WE, OF COURSE -- THEY, OF COURSE, CROSS-EXAMINED
01:39PM  22    MS. HOLMES ABOUT CERTAIN PRACTICES, THE USE OF LITIGATION, THE
01:40PM  23    FACT THAT THE COMPANY AGGRESSIVELY PROTECTED ITS INTELLECTUAL
01:40PM  24    PROPERTY.  I THINK THAT WAS A THEME OF MR. LEACH'S
01:40PM  25    CROSS-EXAMINATION.
```

01:40PM 1      OUR POINT IS NOT TO LITIGATE THROUGH INSTRUCTIONS WHAT IS

01:40PM 2    AND IS NOT A REASONABLE MEASURE.

01:40PM 3      YOU'LL SEE IN WHAT WE PROPOSED WE DO NOT SUGGEST THAT

01:40PM 4    NONDISCLOSURE AGREEMENTS ARE OR ARE NOT REASONABLE, THAT THE

01:40PM 5    CONDUCT THAT THE COMPANY ENGAGED IS OR IS NOT REASONABLE.

01:40PM 6      IT'S SIMPLY TO INFORM THE JURY THAT REASONABLE EFFORTS ARE

01:40PM 7    REQUIRED UNDER CALIFORNIA LAW, AND REASONABLE EFFORTS CANNOT BE

01:40PM 8    CONSIDERED IN THE CONTEXT OF THIS CASE.

01:40PM 9      THE COURT:  I'M NOT SURE THIS INFORMS AS TO THAT.

01:40PM 10   PARDON ME.

01:40PM 11     I THINK I UNDERSTAND YOUR POINT, BUT I THINK THIS IS TOO

01:40PM 12   BROAD WHEN YOU'RE GIVING A BACKGROUND ABOUT CALIFORNIA LAW.  IT

01:40PM 13   JUST SEEMS TO ME YOU'RE ASKING THE JURY TO MAKE A DECISION AS

01:41PM 14   TO WHAT CALIFORNIA LAW IS, AND THEN TO DETERMINE REASONABLE

01:41PM 15   EFFORTS, AND I DON'T THINK THAT'S APPROPRIATE.

01:41PM 16     I JUST -- I THINK ON DIRECT SOME OF THIS TRADE SECRETS

01:41PM 17   INFORMATION CAME UP, AND PERHAPS THAT WAS IN RESPONSE TO THE

01:41PM 18   EVIDENCE THAT HAD COME IN FROM OTHER WITNESSES ON THE

01:41PM 19   PROSECUTION, BUT --

01:41PM 20     MR. LEMENS:  I TAKE YOUR HONOR'S POINT THAT THIS IS

01:41PM 21   BROAD AND PERHAPS AS A THEME HAS BEEN TOO LONG.

01:41PM 22     I DO THINK, AT THE VERY LEAST, THE LAST TWO LINES ARE

01:41PM 23   NECESSARY IN LIGHT OF THE VALLEJO CASE AND THIS CONCEPT OF

01:41PM 24   LEGALLY REQUIRED CONDUCT.  BUT I'M HAPPY TO CAUCUS WITH THE

01:41PM 25   TEAM AND SEE IF THERE'S SOMETHING THAT WE CAN DO THAT ADDRESSES

01:41PM 1    THE COURT'S CONCERNS.

01:41PM 2              THE COURT:  WELL, THANK YOU.

01:41PM 3        I'M NOT INCLINED TO GIVE THIS AS IT IS FOR THE REASONS

01:41PM 4    THAT I HAVE OBSERVED AND MENTIONED.

01:41PM 5        "REASONABLE EFFORTS," YOU KNOW, I'LL ALLOW YOU TO WORK ON

01:42PM 6    THAT.  I DON'T KNOW IF THERE'S OTHER LANGUAGE THAT CAN BE USED

01:42PM 7    ABOUT MS. HOLMES'S CONDUCT, AS SHE TESTIFIED, MAY BE CONSIDERED

01:42PM 8    WITH ALL OF THE OTHER EVIDENCE AS TO HER INTENT TO DEFRAUD.

01:42PM 9    THAT'S REALLY WHAT THIS FOCUSES ON, AND I'M NOT SURE YOU NEED

01:42PM 10   TO SPECIFY TRADE SECRETS.  YOU CAN CERTAINLY ARGUE THAT.

01:42PM 11       BUT IT'S REALLY THE EFFORTS THAT SHE MADE.  IT'S A

01:42PM 12   COLLECTIVE EFFORT, I THINK WHAT I HEAR YOU SAYING, THAT THE

01:42PM 13   COMPANY MAY HAVE MADE.  AND WE'RE TALKING ABOUT -- I THINK

01:42PM 14   THERE WAS EVIDENCE ABOUT PEOPLE HAVING TO CHECK IN WITH

01:42PM 15   SECURITY AND THOSE TYPES OF THINGS.

01:42PM 16       IS THAT WHAT THIS IS REALLY COVERING?

01:42PM 17            MR. LEMENS:  YEAH, THERE'S A BEVY OF EVIDENCE IN THE

01:42PM 18   RECORD, AND I IMAGINE THE GOVERNMENT WILL ARGUE THAT THE

01:42PM 19   COMPANY CREATED A BROAD CULTURE OF SECRECY.  THEY WILL TRY TO

01:42PM 20   USE ALL OF THAT EVIDENCE TO SUGGEST A BROADER THEME IN THEIR

01:42PM 21   CLOSING ARGUMENT.

01:42PM 22       THAT IS, OF COURSE, WHAT WE'RE CONCERNED ABOUT.  LEGALLY

01:43PM 23   REQUIRED CONDUCT IS NOT AN APPROPRIATE CONSIDERATION BY THE

01:43PM 24   JURY.  REASONABLE MEASURES FALL WITHIN THAT BUCKET OF LEGALLY

01:43PM 25   REQUIRED CONDUCT.

8809

01:43PM  1         THE COURT:  MAYBE THAT'S WHAT YOU SHOULD -- MAYBE

01:43PM  2    THAT'S HOW YOU SHOULD --

01:43PM  3         MR. LEMENS:  YOU KNOW, IF I KEEP TALKING, I MIGHT

01:43PM  4    WRITE IT MYSELF.  BUT LET ME TALK TO THE TEAM AND SEE WHAT WE

01:43PM  5    CAN COME UP WITH.

01:43PM  6         THE COURT:  THAT SOUNDED VERY SIMPLE AND ELEGANT,

01:43PM  7    AND THAT IS REALLY WHAT THE CONCEPT IS, WITHOUT HAVING TO

01:43PM  8    SPECIFY.  AND THEN YOUR TEAM, WHOEVER IT IS WHO HAS THE

01:43PM  9    PRIVILEGE OF ARGUING, CAN CERTAINLY MAKE THAT ARGUMENT, "THAT

01:43PM  10   THE EVIDENCE SHOWS THAT THIS IS CONSISTENT WITH."

01:43PM  11     THAT'S REALLY THE SPIRIT OF WHAT YOU WANT TO BE ABLE TO

01:43PM  12   DO, I THINK.

01:43PM  13        MR. LEMENS:  THAT'S CORRECT, YOUR HONOR.

01:43PM  14        THE COURT:  SO I'LL LET YOU WORK ON THAT.  WE'LL

01:43PM  15   PASS THIS.

01:43PM  16     THE NEXT IS NUMBER OF WITNESSES.

01:43PM  17        MR. LEMENS:  I'M GOING TO PASS THE PODIUM TO

01:43PM  18   MR. CLEARY.

01:43PM  19        THE COURT:  OKAY.  THANK YOU.

01:43PM  20     IS THERE A MODEL INSTRUCTION THAT TALKS ABOUT NOT MAKING A

01:43PM  21   DECISION BASED ON THE NUMBER OF WITNESSES?

01:44PM  22        MR. LEACH:  THERE IS, YOUR HONOR, AND THE COURT HAS

01:44PM  23   ALREADY AGREED TO GIVE IT AT JURY INSTRUCTION NUMBER 9, WHICH

01:44PM  24   SAYS, "THE WEIGHT OF THE EVIDENCE AS TO A FACT DOES NOT

01:44PM  25   NECESSARILY DEPEND ON THE NUMBER OF WITNESSES WHO TESTIFY ABOUT

UNITED STATES COURT REPORTERS

**ER-12384**

01:44PM   1      IT.  WHAT IS IMPORTANT IS HOW BELIEVABLE THE WITNESSES ARE AND

01:44PM   2      HOW MUCH WEIGHT YOU THINK THEIR TESTIMONY DESERVES."

01:44PM   3           THE SAME INSTRUCTION ALSO SAYS "YOU CAN BELIEVE SOME OF

01:44PM   4      WHAT A WITNESS SAYS, ALL OF IT, OR NONE OF IT."

01:44PM   5           THE DEFENSE'S PROPOSED INSTRUCTION FROM THE SAND MODEL

01:44PM   6      FEDERAL JURY INSTRUCTIONS IS WAY TOO LONG.  IT'S ARGUMENT IN

01:44PM   7      LIGHT OF OTHER INSTRUCTIONS THAT THE COURT HAS ALREADY GIVEN.

01:44PM   8      IT REPEATS THE BURDEN OF PROOF BEYOND A REASONABLE DOUBT,

01:44PM   9      AGAIN, WHOLLY UNNECESSARILY, AND WE THINK THESE CONCEPTS ARE

01:44PM  10      ADEQUATELY ADDRESSED BY THE CREDIBILITY OF WITNESSES

01:44PM  11      INSTRUCTIONS.

01:44PM  12           THE COURT:  WELL, WITH THAT, MR. CLEARY, WELCOME TO

01:44PM  13      THE LECTERN.

01:44PM  14           MR. CLEARY:  IT'S GOOD TO BE BACK, YOUR HONOR.

01:44PM  15           RICHARD CLEARY ON BEHALF OF MS. HOLMES.

01:45PM  16           THE INSTRUCTION THAT MR. LEACH JUST REFERENCED, I THINK,

01:45PM  17      ADDRESSES AN ANALYTICALLY CONCEPTUALLY DISTINCT POINT, WHICH IS

01:45PM  18      THE NUMBER OF WITNESSES WHO TESTIFY TO A PARTICULAR PROPOSITION

01:45PM  19      AND THE WEIGHT THAT SHOULD BE AFFORDED TO THAT PARTICULAR

01:45PM  20      PROPOSITION SIMPLY BY VIRTUE OF THE NUMBER OF WITNESSES WHO

01:45PM  21      TESTIFY TO IT, THE SAND MODEL INSTRUCTION, THE FIFTH CIRCUIT

01:45PM  22      INSTRUCTIONS, THE SIXTH CIRCUIT INSTRUCTIONS HAVE A DIFFERENT

01:45PM  23      PURPOSE, WHICH IS SIMPLY TO INSTRUCT THE JURY AS TO THE OVERALL

01:45PM  24      NUMBER OF WITNESSES IN A CASE CALLED BY EITHER SIDE.

01:45PM  25           AND HERE, AS THE COURT WELL KNOWS, THE GOVERNMENT CALLED

8811

01:45PM  1    29 WITNESSES.  MS. HOLMES CALLED 3 WITNESSES.  THERE HAS BEEN

01:45PM  2    AS LOPSIDED PRESENTATION.

01:45PM  3        SOME OF THE WITNESSES CALLED BY THE GOVERNMENT MS. HOLMES

01:45PM  4    MAY WELL HAVE CALLED EITHER TO INTRODUCE DOCUMENTS THROUGH, OR

01:45PM  5    WE MAY HAVE CALLED OTHER WITNESSES BECAUSE THE COURT PERMITTED

01:46PM  6    US TO INTRODUCE AFFIRMATIVE EVIDENCE THROUGH CERTAIN WITNESSES.

01:46PM  7        AND HERE THIS IS JUST A STANDARD INSTRUCTION FROM THE SAND

01:46PM  8    MODEL TO MAKE SURE THAT THE JURY DOES NOT DRAW ANY INFERENCES

01:46PM  9    AS TO MS. HOLMES'S GUILT OR INNOCENCE SIMPLY BY REFERENCE TO

01:46PM  10   THE NUMBER OF WITNESSES CALLED IN THE CASE OVERALL.

01:46PM  11       THE COURT:  SURE.  NO, I THINK I UNDERSTAND THAT.

01:46PM  12       THERE'S SOME CONCERN FROM A DEFENSE POSITION PERHAPS THAT

01:46PM  13   BECAUSE THE GOVERNMENT BEARS THE BURDEN OF PROOF, IT'S -- AND A

01:46PM  14   JURY MIGHT NOT PUT THIS TOGETHER, BUT THEY'RE GOING TO CALL AS

01:46PM  15   MANY WITNESSES AS THEY FEEL THEY NEED TO TO PROVE THEIR CASE,

01:46PM  16   AND OFTENTIMES THAT MAY OUTNUMBER THE DEFENSE BECAUSE THE

01:46PM  17   DEFENSE, AS YOU KNOW, YOU DON'T HAVE TO PUT ANYTHING ON BECAUSE

01:46PM  18   OF THAT BURDEN.

01:46PM  19       AND THIS INSTRUCTION, AND THE ONE THAT MR. LEACH

01:47PM  20   REFERENCED, WHICH IS A MODEL INSTRUCTION, RECOGNIZES THAT, THAT

01:47PM  21   THE JURY SHOULD NOT, SHOULD NOT WEIGH THE EVIDENCE JUST BECAUSE

01:47PM  22   OF THE NUMBER OF WITNESSES THAT TESTIFY ABOUT A FACT OR TESTIFY

01:47PM  23   FOR A SIDE.  THAT'S NOT PROPER.

01:47PM  24       IT REALLY DOES BOIL DOWN TO THE QUALITY OF THE WITNESSES'

01:47PM  25   TESTIMONY AND WHAT THE JURY DOES WITH THAT TESTIMONY, AND HOW

8812

01:47PM   1    THEY BELIEVED THE TESTIMONY.

01:47PM   2         AND THE FACT THAT THE DEFENSE CALLS FEWER WITNESSES THAN

01:47PM   3    THE GOVERNMENT MIGHT ALSO BE SEEN AS RELIANCE ON THE STATE OF

01:47PM   4    THE EVIDENCE AND THAT THE DEFENSE FEELS THAT THEY HAVEN'T

01:47PM   5    PROVED THEIR CASE AND WE DON'T HAVE TO PROVE IT FOR THEM AND

01:47PM   6    WE'RE NOT GOING TO OFFER ANYTHING ELSE BECAUSE THEY HAVEN'T

01:47PM   7    PROVED THEIR CASE.

01:47PM   8         I JUST -- I THINK THAT THE MODEL INSTRUCTIONS, MR. CLEARY,

01:47PM   9    PROPERLY INFORM THE JURY THAT THEY'RE NOT TO CONSIDER, AND THEY

01:47PM  10    DON'T ADD UP WITNESSES AND THEN KEEP A SCORE CARD ON WITNESSES.

01:47PM  11         I THINK THE MODEL INSTRUCTION PROPERLY INFORMS THE JURY

01:47PM  12    THAT THEY NEED TO CONSIDER NOT JUST THE NUMBER, AND THEY

01:48PM  13    SHOULDN'T JUST CONSIDER THE NUMBER AS A WEIGHT ON A SCALE, BUT

01:48PM  14    RATHER THE QUALITY AND THE NATURE OF THE WITNESS'S TESTIMONY,

01:48PM  15    INCLUDING THEIR DEMEANOR, THEIR BELIEVABILITY, THEIR

01:48PM  16    CREDIBILITY.  THE COURT GIVES THEM A MODEL INSTRUCTION THAT HAS

01:48PM  17    SEVERAL FACTORS THAT THEY MAY CONSIDER, INCLUDING ANYTHING ELSE

01:48PM  18    THAT THE JURY FEELS BEARS ON BELIEVABILITY AND CREDIBILITY IN

01:48PM  19    THEIR ASSESSMENT OF THE TESTIMONY.

01:48PM  20         AND I THINK THAT'S A RATHER FULSOME INFORMATION FOR THE

01:48PM  21    JURY TO HAVE.  SO I'M RESPECTFULLY GOING TO DECLINE YOUR

01:48PM  22    INVITATION TO GIVE THIS, WITH YOUR OBJECTION NOTED.

01:48PM  23              MR. CLEARY:  THANK YOU, YOUR HONOR.

01:48PM  24              THE COURT:  YOU'RE WELCOME.

01:48PM  25         NUMBER 34 I THINK IS THE DUTY TO DELIBERATE, WE'RE NOW IN

| | | |
|---|---|---|
| 01:48PM | 1 | THE FINAL INSTRUCTIONS, AND I'LL USE THIS CONSISTENT WITH WHAT |
| 01:48PM | 2 | I'VE DONE PREVIOUSLY. |
| 01:48PM | 3 | MR. CLEARY:  THAT MAKES SENSE TO US, YOUR HONOR. |
| 01:48PM | 4 | THE COURT:  AND THEN 35, I THINK YOU'D LIKE TO GIVE |
| 01:48PM | 5 | GOOGLE SOME FREE ADVERTISING HERE. |
| 01:49PM | 6 | MR. CLEARY:  THIS WAS INCLUDED IN THE PRELIMINARY |
| 01:49PM | 7 | INSTRUCTIONS AT OUR REQUEST.  WE THINK IT'S CLARIFYING AND |
| 01:49PM | 8 | OBVIOUSLY IT'S VERY MINOR FOR THE JURY. |
| 01:49PM | 9 | MR. LEACH:  NO FURTHER ARGUMENT, YOUR HONOR.  THE |
| 01:49PM | 10 | COURT HAS BEEN VERY CAREFUL IN REMINDING THE JURY NOT TO |
| 01:49PM | 11 | CONSIDER OUTSIDE EVIDENCE.  THIS IS FINE. |
| 01:49PM | 12 | THE COURT:  WE'LL RECOGNIZE GOOGLE.  WE'LL GIVE THEM |
| 01:49PM | 13 | THAT. |
| 01:49PM | 14 | HAVE WE -- LET'S SEE.  OH, YES.  PUNISHMENT, ALLEGED |
| 01:49PM | 15 | OFFENSE, OFFENSES, EXCUSE ME. |
| 01:49PM | 16 | ANY OBJECTION TO THAT, MR. LEACH, FROM YOUR TEAM? |
| 01:49PM | 17 | MR. LEACH:  NO, YOUR HONOR. |
| 01:49PM | 18 | THE COURT:  ALL RIGHT.  WE'LL GIVE THAT, MR. CLEARY. |
| 01:49PM | 19 | MR. CLEARY:  NOW, YOUR HONOR, I'M GOING TO RETURN |
| 01:49PM | 20 | THE PODIUM TO MR. LEMENS. |
| 01:49PM | 21 | THE COURT:  OH, OKAY?  WE'RE NOT FINISHED?  WE HAVE |
| 01:49PM | 22 | MORE TO DO? |
| 01:49PM | 23 | MR. LEACH:  YOUR HONOR, I THINK ON THE LAST PAGE, |
| 01:49PM | 24 | PAGE 54, THERE IS SOME HIGHLIGHTED LANGUAGE ABOUT THE READBACK |
| 01:49PM | 25 | OR PLAYBACK INSTRUCTION. |

01:49PM   1          WE PUT THIS IN HERE BECAUSE WE THOUGHT IT COULD EMERGE AT

01:50PM   2     SOME POINT, BUT WE'RE NOT ASKING THE COURT TO GIVE IT IN ITS

01:50PM   3     FINAL INSTRUCTIONS TO THE JURY.

01:50PM   4          THE COURT:  RIGHT.

01:50PM   5          MR. LEACH:  AND I SUPPOSE WE CAN WAIT UNTIL WE GET A

01:50PM   6     REQUEST TO DECIDE HOW TO HANDLE THIS.

01:50PM   7          MR. CLEARY:  WE AGREE WITH THAT.  IT WOULD BE

01:50PM   8     PREMATURE TO INCLUDE IT, AND WE'LL JUST ADDRESS THAT ISSUE IF

01:50PM   9     AND WHEN IT ARISES AND RESERVE ANY OBJECTIONS UNTIL THAT TIME.

01:50PM  10          THE COURT:  OKAY.  WELL, WE'LL BE THINKING ABOUT

01:50PM  11     THIS.

01:50PM  12          I APPRECIATE YOU NOT WANTING TO INVITE THE JURY TO COME

01:50PM  13     BACK AND HEAR THE TRIAL AGAIN THROUGH TRANSCRIPT TESTIMONY.

01:50PM  14          ALL RIGHT.  THANK YOU.

01:50PM  15          ALL RIGHT.  WELL, I THINK WE ALL HAVE SOME WORK TO DO.

01:50PM  16          MS. VOLKAR?

01:50PM  17          MS. VOLKAR:  YOUR HONOR, BECAUSE I UNDERSTOOD THE

01:50PM  18     COURT WOULD LIKE THE PARTIES TO SUBMIT A REVISED VERSION,

01:50PM  19     REALLY JUST A COUPLE OF CLARIFYING QUESTIONS ON THAT.

01:50PM  20          ONE, DO YOU WANT US TO REFILE, OR WOULD SUBMITTING A WORD

01:50PM  21     VERSION UPDATED TO MS. KRATZMANN SUFFICE?

01:50PM  22          THE COURT:  YES, THE LATTER, PLEASE.  YEAH, YOU

01:51PM  23     DON'T HAVE TO REFILE.

01:51PM  24          YOU'RE OKAY WITH THAT IF BOTH SIDES ARE OKAY WITH THAT?

01:51PM  25          MS. VOLKAR:  THAT WORKS FOR THE GOVERNMENT.

8815

01:51PM 1               MR. LEMENS:  AND FOR MS. HOLMES, YOUR HONOR.

01:51PM 2       I THINK I WOULD JUST -- I THINK THE ONE THING WE LEFT OFF

01:51PM 3    WAS THE VERDICT FORM, AND I BELIEVE WHERE WE LEFT OFF WITH

01:51PM 4    MS. SAHARIA IS THAT WE WOULD MEET AND CONFER AND PROVIDE AN

01:51PM 5    UPDATED COPY BEFORE WE GET INTO IT WITH THE COURT.

01:51PM 6               THE COURT:  THAT SOUNDS GREAT.

01:51PM 7               MS. VOLKAR:  I'M HAPPY TO SUBMIT THAT ALONG WITH THE

01:51PM 8    WORD VERSION.

01:51PM 9               THE COURT:  OKAY.

01:51PM 10             MS. VOLKAR:  TO AID THE PARTIES IN PROVIDING THAT

01:51PM 11   UPDATED WORD DOCUMENT, THERE WERE TWO PORTIONS AT LEAST THAT I

01:51PM 12   WAS CONFUSED ABOUT, AND IT MAY JUST BE ME.

01:51PM 13      ON THE CMS REPORT INSTRUCTION, NOT TO REOPEN THAT

01:51PM 14   DISCUSSION, BUT I THOUGHT THE COURT MIGHT HAVE BEEN TRENDING

01:51PM 15   TOWARDS NOT GIVING THE INSTRUCTION.

01:51PM 16      I THOUGHT IN LIGHT OF THE PARTIES' DISPUTE ABOUT THE STATE

01:51PM 17   OF THE RECORD, I LOST WHERE WE LANDED WITH RESPECT TO THE

01:51PM 18   ACTUAL INSTRUCTION.

01:51PM 19            THE COURT:  I WANT TO READ THE PORTIONS OF THE

01:51PM 20   TRANSCRIPTS JUST TO GIVE ME SOME GUIDANCE AND GREATER

01:51PM 21   INFORMATION, SO WE'RE GOING TO DEFER THAT ONE FOR NOW.

01:52PM 22      YOU CAN PUT AN ASTERISK, WHATEVER IT IS, IN YOUR -- IN THE

01:52PM 23   WORD DOC JUST AS A PLACEHOLDER.

01:52PM 24            MS. VOLKAR:  WILL DO, YOUR HONOR.

01:52PM 25      AGAIN, THE GOVERNMENT, SO IT WASN'T LOST IN OUR OTHER

ER-12390

01:52PM  1    ARGUMENT, THINKS EITHER NO INSTRUCTION OR A GENERIC INSTRUCTION

01:52PM  2    FOR ALL EVIDENCE THAT WAS ADMITTED FOR A LIMITED PURPOSE SHOULD

01:52PM  3    BE GIVEN.

01:52PM  4              THE COURT:  OKAY.

01:52PM  5              MS. VOLKAR:  I DON'T KNOW IF MR. LEMENS WANTS TO

01:52PM  6    RESPOND TO THAT.

01:52PM  7         THE LAST PORTION I WANTED TO CLARIFY WAS ON KNOWINGLY, SO

01:52PM  8    I'LL LET MR. LEMENS RESPOND TO THAT IF HE WANTS TO.

01:52PM  9              THE COURT:  OKAY.

01:52PM 10              MR. LEMENS:  I DON'T HAVE ANYTHING FURTHER ON THAT

01:52PM 11    OTHER THAN WE'LL AWAIT THE COURT'S GUIDANCE AFTER IT HAS A

01:52PM 12    CHANCE TO REVIEW THE TRANSCRIPT.

01:52PM 13              THE COURT:  OH, I'M SORRY, MS. SAHARIA, DO YOU HAVE

01:52PM 14    SOMETHING?

01:52PM 15              MR. LEMENS:  I'M GOING TO LET HER SPEAK TO THE

01:52PM 16    KNOWINGLY ISSUE.

01:52PM 17              THE COURT:  OKAY.

01:52PM 18              MS. SAHARIA:  I DON'T HAVE ANYTHING, YOUR HONOR.

01:52PM 19         BUT IF MS. VOLKAR WANTS TO DISCUSS KNOWINGLY, THEN I'M

01:52PM 20    HAPPY TO DISCUSS IT.

01:52PM 21         I DON'T HAVE ANYTHING ELSE TO RAISE.

01:52PM 22              THE COURT:  OKAY.

01:52PM 23              MS. VOLKAR:  THIS IS JUST ANOTHER CLARIFICATION.  IT

01:52PM 24    WAS RIGHT BEFORE OUR BREAK, WE WERE DISCUSSING THE KNOWINGLY

01:52PM 25    INSTRUCTION ON PAGE 31.

8817

01:53PM 1      WE DISCUSSED BOTH THE GOVERNMENT'S ADDITION, WHICH THE

01:53PM 2    DEFENSE OBJECTS TO IN YELLOW, THAT WAS OF COURSE BRACKETED

01:53PM 3    LANGUAGE FROM THE MODEL, AND THEN WE ALSO DISCUSSED THE

01:53PM 4    DEFENSE'S ADDED PORTIONS ON LINES 7 TO 9 THAT THE GOVERNMENT

01:53PM 5    OBJECTS TO.

01:53PM 6      I WASN'T CLEAR WHERE THE COURT LANDED, IF WE SHOULD MAKE

01:53PM 7    ANY CHANGES TO THAT, RESUBMIT IT AS IS, OR IF THE COURT HAD ANY

01:53PM 8    DIRECTION TO GIVE TO THE PARTIES AT THIS TIME.

01:53PM 9          THE COURT:  SURE.  WELL, MY DIRECTION IS KEEP THIS

01:53PM 10   AS A PLACE HOLDER AND I'LL HAVE MS. KRATZMANN PROBABLY SEND YOU

01:53PM 11   AN EMAIL ABOUT THIS.  I'LL DO THAT WHEN I LOOK AT THESE OTHER

01:53PM 12   TRANSCRIPTS.

01:53PM 13     SO JUST KEEP IT OPEN.  KEEP IT OPEN.

01:53PM 14          MS. SAHARIA:  OKAY.

01:53PM 15          MS. VOLKAR:  THANK YOU.  THAT'S ALL I WANTED TO

01:53PM 16   CLARIFY.

01:53PM 17          THE COURT:  I DID HAVE -- ANYTHING ELSE,

01:53PM 18   MS. SAHARIA?

01:53PM 19          MS. SAHARIA:  NO, YOUR HONOR.

01:53PM 20          THE COURT:  OH, I'M SORRY.  MR. LEACH, ANYTHING?

01:53PM 21          MR. LEACH:  THERE WAS ONE OTHER MATTER, AND I'M SO

01:53PM 22   SORRY TO DO THIS PIECEMEAL.

01:53PM 23          THE COURT:  NO, NOT AT ALL.

01:53PM 24          MR. LEACH:  AND I HAVEN'T HAD A CHANCE TO TALK TO

01:53PM 25   MS. SAHARIA ABOUT THIS, BUT IN THE INSTRUCTION FOR WIRE FRAUD,

01:54PM  1    WE CURRENTLY JUST HAVE THE DATES AND THE DOLLAR AMOUNTS OF THE

01:54PM  2    WIRES.  THIS IS ON PAGE 26.

01:54PM  3              THE COURT:  ECF 26, 25 OF THE DOCUMENT.

01:54PM  4              MR. LEACH:  YES, ECF 26, 25 OF THE DOCUMENT.

01:54PM  5         BEGINNING AT LINE 8 THROUGH 19, WE'RE IDENTIFYING THE

01:54PM  6    WIRES BY DATES AND DOLLAR AMOUNT.

01:54PM  7         IT MAY BE HELPFUL TO THE JURY TO ALSO IDENTIFY THE

01:54PM  8    PARTICULAR INVESTOR THAT IT RELATES TO, AND WE WOULD RECOMMEND

01:54PM  9    INSERTING, AT THE END OF EACH SENTENCE, A PARENTHETICAL JUST

01:54PM  10   RELATING TO "AND THE INVESTOR NAME."

01:54PM  11             THE COURT:  THAT MIGHT BE HELPFUL.

01:54PM  12             MS. SAHARIA:  MY INITIAL INSTINCT IS TO SAY THAT

01:54PM  13   THOSE INVESTOR NAMES ARE NOT IN THE INDICTMENT.

01:55PM  14        THE PATIENT NAMES ARE IN THE INDICTMENT, WHICH IS WHY THEY

01:55PM  15   WERE INCLUDED, BUT THE INVESTOR NAMES ARE NOT.

01:55PM  16        I ASSUME, OF COURSE, THE GOVERNMENT WILL PROBABLY PUT UP A

01:55PM  17   CHART FOR THE JURY IN CLOSING THAT SHOWS THE NAMES

01:55PM  18   CORRESPONDING TO THE COUNTS AND THE DOLLAR FIGURES, BUT I'M NOT

01:55PM  19   SURE THAT WE SHOULD BE PUTTING THE NAMES IN WHEN IT'S NOT IN

01:55PM  20   THE INDICTMENT.

01:55PM  21        BUT LET ME TALK TO MY TEAM AND WE'LL CONSIDER THE REQUEST.

01:55PM  22             THE COURT:  WELL, IF IT'S PUT IN PARENTHETICALLY, I

01:55PM  23   THINK IT'S FOR IDENTIFICATION TO AID, AS LONG AS THERE'S

01:55PM  24   AGREEMENT THAT THE PARTY RELATES TO THE SPECIFIC COUNT.

01:55PM  25             MS. SAHARIA:  I THINK THAT WE KNOW WHICH PARTY

8819

01:55PM 1      RELATES TO WHICH COUNT.  SO LET ME CONFER WITH MR. LEACH ABOUT

01:55PM 2      THAT.

01:55PM 3              THE COURT:  OKAY.  I DON'T SEE THE REAL HARM IN

01:55PM 4      THAT.  I DON'T SEE ANY CONFUSION.  IT WOULD PROBABLY BE MORE

01:55PM 5      HELPFUL TO THE JURY.  THEY HAVE GOT JURY BINDERS, REMEMBER,

01:55PM 6      THAT THEY HAVE ALL OF THE PARTIES AND WITNESSES.

01:55PM 7              MS. SAHARIA:  UNDERSTOOD.

01:55PM 8              THE COURT:  I HAD A COUPLE THAT I WANTED TO, A

01:55PM 9      COUPLE OF THOUGHTS THAT I WANTED TO RAISE, AND I DON'T KNOW WHO

01:55PM 10     IS GOING TO SPEAK TO THESE FROM EACH SIDE, BUT I THINK

01:56PM 11     MR. DOWNEY TALKED ABOUT TIMING OF ARGUMENT, AND MAYBE THAT WAS

01:56PM 12     SOMETHING THAT MR. SCHENK WAS TALKING ABOUT AS FAR AS WE KNOW

01:56PM 13     WE HAVE THE 16TH AND 17TH.

01:56PM 14             MS. SAHARIA:  I'LL LET MR. DOWNEY COMMENT ON IT,

01:56PM 15     YOUR HONOR.

01:56PM 16             THE COURT:  OKAY, THANK YOU.

01:56PM 17         AND I THINK YOU WANTED TO DISCUSS TIMING SUCH THAT THERE

01:56PM 18     WON'T BE, OR WE CAN MINIMIZE INTERRUPTIONS OF YOUR ARGUMENTS.

01:56PM 19             MR. DOWNEY:  I THINK THAT MR. SCHENK AND I TALKED

01:56PM 20     ABOUT THIS DURING THE LUNCH BREAK, AND I THINK HE'S NOT YET

01:56PM 21     QUITE SURE HOW LONG HE'LL BE.

01:56PM 22             THE COURT:  OKAY.

01:56PM 23             MR. DOWNEY:  BUT IT SEEMS LIKE HE THINKS HE'LL BE

01:56PM 24     LONG ENOUGH THAT REALISTICALLY THE DEFENSE ARGUMENT WILL

01:56PM 25     PROBABLY HAVE TO BE DIVIDED BETWEEN THURSDAY AFTERNOON, THE

8820

01:56PM  1    16TH, AND THEN EXTEND INTO FRIDAY MORNING.

01:56PM  2        SO I'LL DO MY BEST, AS WE GET CLOSER, TO GIVE THE COURT A

01:56PM  3    SENSE OF WHAT THE DIVISION IS.

01:57PM  4            THE COURT:  THANK YOU.  THAT WILL BE HELPFUL SO I

01:57PM  5    KNOW WHEN TO DO BREAKS AND WHEN NOT.

01:57PM  6        I DON'T WANT TO INTERRUPT YOUR ARGUMENTS UNTOWARDLY IF I

01:57PM  7    CAN AVOID IT.

01:57PM  8            MR. DOWNEY:  RIGHT.

01:57PM  9            THE COURT:  AND IF WE NEED TO HAVE ANY OTHER BREAKS,

01:57PM  10   YOU'LL FACTOR THAT INTO YOUR PRESENTATIONS, TOO.

01:57PM  11           MR. DOWNEY:  THAT'S RIGHT.  AND I'LL GIVE -- I DON'T

01:57PM  12   THINK IT WILL BE INCONSISTENT WITH THE WAY THAT WE'VE BROKEN

01:57PM  13   DURING THE COURSE OF THE TRIAL.  BUT I'LL TALK TO MR. SCHENK IN

01:57PM  14   ADVANCE ABOUT, YOU KNOW, HOW FREQUENTLY BREAKS WOULD PROBABLY

01:57PM  15   BE APPROPRIATE.

01:57PM  16           THE COURT:  OKAY.

01:57PM  17       MR. SCHENK?

01:57PM  18           MR. SCHENK:  JUST ONE QUESTION ON THAT, YOUR HONOR.

01:57PM  19       IF THE ARGUMENT WAS GOING TO GO PAST A TIME WE WOULD TAKE

01:57PM  20   BREAKS, 11:30, LET'S SAY, WOULD IT BE HELPFUL TO PLAN A BREAK

01:57PM  21   AT 11:30, EVEN IF THE CLOSING ARGUMENT HASN'T BEEN COMPLETED BY

01:57PM  22   THEN?

01:57PM  23           THE COURT:  WELL, LET'S -- YOU KNOW, IT PROBABLY

01:57PM  24   WOULD BE BEST IF WE CAN PLAN AHEAD AND I CAN INFORM THE JURY OF

01:57PM  25   THAT.

01:57PM   1          SOMETIMES, YOU KNOW, AS ARGUMENTS GO, I DON'T WANT THEM TO

01:57PM   2   GET RESTLESS, AND IF THEY KNOW THERE'S A TIME PERIOD WHEN

01:58PM   3   THEY'RE GOING TO BREAK, THAT'S SOMETIMES HELPFUL.

01:58PM   4          SO IF YOU CAN COORDINATE THAT, I THINK THAT WOULD BE

01:58PM   5   HELPFUL FOR EVERYBODY.

01:58PM   6              MR. DOWNEY:  WE'LL TALK ABOUT THAT, YOUR HONOR.  I

01:58PM   7   THINK WE'LL KNOW MORE AS WE GET CLOSER.

01:58PM   8              THE COURT:  RIGHT.

01:58PM   9          WHAT ABOUT -- THE OTHER QUESTION THAT I ASKED YOU WAS YOUR

01:58PM  10   THOUGHTS, IF YOU HAVE ANY, ABOUT WHETHER OR NOT I SHOULD GIVE

01:58PM  11   THE JURY A COPY OF THE INSTRUCTIONS WHILE THEY'RE BEING

01:58PM  12   INSTRUCTED?  I TOLD YOU MY PRACTICE IS NOT TO DO THAT

01:58PM  13   REGULARLY.  THIS MIGHT BE A DIFFERENT CASE.

01:58PM  14          BUT I JUST WANTED TO REMIND YOU OF THAT.  GIVE IT SOME

01:58PM  15   THOUGHT.  YOU DON'T HAVE TO TELL ME NOW.

01:58PM  16          THEY DO -- EACH JUROR DOES GET AN INDIVIDUAL COPY OF THE

01:58PM  17   INSTRUCTIONS IN THE DELIBERATION ROOM.  EACH ONE HAS A COPY.

01:58PM  18   THE QUESTION IS, SHOULD I GIVE ONE TO THEM WHILE I'M

01:58PM  19   INSTRUCTING?  THAT'S UP TO YOU, OR NOT UP TO YOU, BUT I WANT

01:58PM  20   YOUR INPUT ON THAT.

01:58PM  21          AND I ALSO WANTED TO ASK ABOUT -- I'VE LOOKED AT THE

01:58PM  22   INSTRUCTIONS.  I THINK I HAVE TALKED A LITTLE BIT ABOUT, I'LL

01:58PM  23   JUST USE THE TERM, HAISCHER AND THAT TYPE OF ARGUMENT AND/OR

01:59PM  24   CONCURRENT INSTRUCTION.

01:59PM  25          I DIDN'T SEE ANY IN HERE, WHICH MEANS TO ME THE PARTIES

8822

01:59PM  1    AREN'T INTENDING TO INFORM THE JURY OF THAT.

01:59PM  2        THE NEXT QUESTION I HAVE IS, DOES THE COURT NEED TO BE

01:59PM  3    MINDFUL, CONCERNED ABOUT ANY COMMENT ABOUT HAISCHER-TYPE

01:59PM  4    CONDUCT, MATERIAL THAT IS GOING TO BE PRESENTED TO THE JURY

01:59PM  5    THAT MIGHT EITHER RAISE AN OBJECTION OR BE OBJECTIONABLE

01:59PM  6    BECAUSE IT'S -- THERE'S NO FOUNDATION?

01:59PM  7        FOR EXAMPLE, EXPERT TESTIMONY, ET CETERA, THOSE TYPES OF

01:59PM  8    THINGS.

01:59PM  9        I'M JUST LOOKING AHEAD AT THAT TO AVOID AN OBJECTION

01:59PM 10    DURING EITHER OF YOUR CLOSINGS, WHICH I KNOW THAT NO LAWYER

01:59PM 11    LIKES.

01:59PM 12        I JUST RAISE IT AS AN ISSUE.  IT'S AT LEAST SOMETHING I'M

01:59PM 13    THINKING ABOUT.

01:59PM 14            MR. DOWNEY:  WE'LL THINK ABOUT THAT, YOUR HONOR.

02:00PM 15        MY SENSE IS THAT I THINK THE INSTRUCTION ACTUALLY -- IT'S

02:00PM 16    A LITTLE AMBIGUOUS FROM THE RECORD IN HAISCHER BECAUSE I THINK

02:00PM 17    THE INSTRUCTION GIVEN THE SECOND TIME AFTER THE REMAND WAS WITH

02:00PM 18    THE BENEFIT OF AN EXPERT --

02:00PM 19            THE COURT:  RIGHT.

02:00PM 20            MR. DOWNEY:  -- BUT I THINK THE INSTRUCTIONS

02:00PM 21    NEVERTHELESS ON CORE INTENT BOTH TIMES KIND OF MIRRORED CORE

02:00PM 22    INTENT INSTRUCTIONS, SO I DON'T KNOW THAT THERE'S ANY ISSUE

02:00PM 23    AROUND THAT.

02:00PM 24        BUT WE'LL LOOK AT THAT IN LIGHT OF YOUR HONOR'S COMMENT.

02:00PM 25            THE COURT:  RIGHT.  I JUST -- YOU KNOW, I HOPE

02:00PM  1    YOU'LL PARDON ME, BUT I'M JUST LOOKING AHEAD THINKING, WELL, I

02:00PM  2    COULD SEE A POTENTIAL WHERE THERE MIGHT BE AN ARGUMENT THAT,

02:00PM  3    YOU KNOW -- AND YOU'LL PARDON ME -- THAT OVERSTATES THE

02:00PM  4    EVIDENCE, IF YOU WILL, THAT IS PERMISSIBLE THAT OVERSTATES THE

02:00PM  5    EVIDENCE WITHOUT, FOR EXAMPLE, EXPERT TESTIMONY OR THOSE TYPES

02:00PM  6    OF THINGS.

02:00PM  7         AND THIS IS RELATED REALLY TO, LET ME JUST BE CLEAR, STATE

02:00PM  8    OF MIND TYPE ISSUES AND WHAT IS NEEDED FOR THAT.

02:00PM  9         MR. DOWNEY:  I THINK I UNDERSTAND THE GIST OF

02:00PM  10   YOUR HONOR'S COMMENTS AND I DON'T ANTICIPATE IT.

02:01PM  11        BUT I WOULD ALSO SAY THAT I THINK THERE ARE A NUMBER OF

02:01PM  12   ISSUES, IN LIGHT OF THE FORM IN WHICH EVIDENCE HAS BEEN

02:01PM  13   ADMITTED ON BOTH SIDES, THAT WE'RE MINDFUL OF THAT MIGHT RAISE

02:01PM  14   POTENTIAL ISSUES DURING THE GOVERNMENT'S CLOSING, AND I THINK

02:01PM  15   IF IT'S HELPFUL TO THE COURT, YOU KNOW, WE WOULD CERTAINLY BE

02:01PM  16   HAPPY TO FLAG THOSE IN ADVANCE TO -- YOU KNOW, BECAUSE THERE

02:01PM  17   CERTAINLY ARE -- I THINK, AS YOUR HONOR SAW TODAY, THERE'S

02:01PM  18   CONFUSION AROUND A PARTICULAR PIECE OF EVIDENCE WHICH HAS BEEN

02:01PM  19   MUCH DISCUSSED, BUT THERE'S BEEN A GOOD DEAL OF OTHER EVIDENCE

02:01PM  20   ADMITTED FOR A LIMITED PURPOSE, AND I WOULDN'T WANT TO SEE THAT

02:01PM  21   PURPOSE EXCEEDED IN THE GOVERNMENT'S CLOSING.

02:01PM  22        MR. SCHENK:  I DON'T HAVE A RESPONSE TO THAT LAST

02:01PM  23   COMMENT.

02:01PM  24        I APPRECIATE THE COURT RAISING THE CONCERNS REGARDING THE

02:01PM  25   LACK OF EXPERT TESTIMONY AND WHETHER THAT AFFECTS THE ARGUMENTS

8824

02:01PM  1      THAT CAN BE MADE.

02:01PM  2          I THINK IT MIGHT BE ONE OF THOSE THAT WE JUST HAVE TO SEE

02:01PM  3      IT.  IT WOULD BE NICE TO AVOID THOSE ISSUES DURING CLOSING.

02:01PM  4      WE'LL THINK ON THAT, AND IF WE HAVE SOME FURTHER SUGGESTIONS,

02:02PM  5      WE'LL MAKE THEM TO THE COURT.

02:02PM  6          THE COURT:  RIGHT.  I JUST WANTED TO SHARE WITH YOU

02:02PM  7      MY THOUGHT AS WE'RE GOING INTO THE WEEKEND WHEN YOU'LL BE DOING

02:02PM  8      YOUR PREPARATIONS AND ONGOING.

02:02PM  9          SO WE'LL SEE WHERE WE ARE WITH THIS.  I'M GOING TO BE HERE

02:02PM  10     MONDAY MORNING.

02:02PM  11         I HOPE THAT WE CAN GET THIS DONE TODAY, "THIS" MEANING THE

02:02PM  12     INSTRUCTIONS, TODAY SO YOU CAN HAVE THEM.

02:02PM  13         BUT I'LL BE HERE ON MONDAY.  YOU KNOW I'M NOT HERE TUESDAY

02:02PM  14     AND WEDNESDAY.

02:02PM  15         MAYBE WE SHOULD PLAN ON TOUCHING BASE IN ANY EVENT MONDAY

02:02PM  16     SOMETIME JUST TO GET A STATUS ON THINGS.

02:02PM  17             MR. DOWNEY:  THAT WOULD BE FINE, YOUR HONOR.

02:02PM  18         CAN I JUST RECONFIRM ON THE SCHEDULE, WE'LL BE HERE ON THE

02:02PM  19     16TH AND 17TH?

02:02PM  20             THE COURT:  THAT'S RIGHT.

02:02PM  21             MR. DOWNEY:  AND THEN THE JURY WILL BE DELIBERATING

02:02PM  22     THE 20TH, THE 21ST, AND THE 23RD.

02:02PM  23             THE COURT:  CORRECT.

02:02PM  24             MR. DOWNEY:  AND THEN FROM THERE, DO WE SEE WHERE WE

02:02PM  25     ARE?

8825

02:02PM 1          THE COURT:  I THINK SO.  I BELIEVE -- MY

02:02PM 2    RECOLLECTION IS THAT THE JURY TOLD US THAT THEY WILL DELIBERATE

02:02PM 3    THAT WEEK, THE WEEK OF THE 20TH, SAVE FOR THE 22ND.

02:03PM 4          MR. DOWNEY:  THAT'S RIGHT.

02:03PM 5       IT WOULD NOT BE MY PREFERENCE, FRANKLY, YOUR HONOR, TO ASK

02:03PM 6    THEM TO COME IN THE WEEK OF THE 27TH JUST BECAUSE OF THE EFFECT

02:03PM 7    OF THE -- THAT THAT MIGHT HAVE ON THE JURY AND RECOGNIZING THE

02:03PM 8    HOLIDAY.

02:03PM 9       MY PREFERENCE, JUST TO LET THE COURT KNOW, WOULD BE THAT

02:03PM 10   THEY BE ASKED TO COME BACK ON THE 3RD IF THEY HAVEN'T REACHED A

02:03PM 11   VERDICT BY THE 23RD.  BUT I'LL LEAVE THAT FOR THE COURT'S

02:03PM 12   CONSIDERATION.

02:03PM 13         MR. SCHENK:  I THINK FIRST WE CAN DEAL WITH THAT ON

02:03PM 14   THE 23RD, AND TO SOME EXTENT I WOULD THINK THAT WE DEFER TO THE

02:03PM 15   JURY AND WHAT THEIR DESIRES ARE, OBVIOUSLY IF THE COURT IS

02:03PM 16   AVAILABLE.

02:03PM 17      IF THE COURT IS NOT AVAILABLE, THEN WE HAVE OUR ANSWER.

02:03PM 18      BUT IF THE JURY IS INTERESTED IN DELIBERATING AND THINKS

02:03PM 19   THAT THEY WILL BE HERE AND THEY CAN BE PRODUCTIVE, I DON'T KNOW

02:03PM 20   THAT WE SHOULD ACTIVELY DISCOURAGE THAT.

02:03PM 21      BUT MAYBE THAT'S SOMETHING TO TAKE UP, IF NECESSARY, ON

02:03PM 22   THE 23RD.

02:04PM 23         THE COURT:  RIGHT.  I CAN'T RECALL IF WE TOLD THEM

02:04PM 24   THAT WE WOULD BE AVAILABLE THE WEEK OF THE 27TH.

02:04PM 25      I MEAN, I WILL BE IF THAT'S NEEDED, BUT I THINK I TOLD

ER-12400

8826

| | | |
|---|---|---|
| 02:04PM | 1 | THEM WE COULD -- MAYBE I TOLD YOU WE COULD ARGUE AND THEN PUT |
| 02:04PM | 2 | THE WHOLE -- THEIR DELIBERATIONS OVER TO THE FIRST OF THE YEAR. |
| 02:04PM | 3 | THAT WASN'T DESIRABLE. |
| 02:04PM | 4 | MR. DOWNEY:  I THINK MY THOUGHT WOULD SIMPLY BE THAT |
| 02:04PM | 5 | THEY BE TOLD AT SOME POINT THAT IF THEY'RE NOT DONE BY THE |
| 02:04PM | 6 | 23RD, THEY HAVE THE OPTION OF COMING BACK ON THE 3RD AND NOT |
| 02:04PM | 7 | BEING HERE ON THE 27TH SO IT DOESN'T HAVE ANY UNDUE EFFECT ON |
| 02:04PM | 8 | THEIR DELIBERATIONS. |
| 02:04PM | 9 | THE COURT:  ALL RIGHT.  WELL, I'M ALWAYS LEERY ABOUT |
| 02:04PM | 10 | TRYING TO GIVE ANY KIND OF LIMITS OR TIME LIMITATIONS OR THINGS |
| 02:04PM | 11 | TO THEM.  I DON'T WANT TO DISRUPT THAT DELIBERATIVE PROCESS. |
| 02:04PM | 12 | MR. DOWNEY:  RIGHT. |
| 02:04PM | 13 | THE COURT:  SO LET'S JUST -- YEAH.  OKAY.  WE'LL |
| 02:05PM | 14 | KEEP AN EYE ON IT. |
| 02:05PM | 15 | MR. DOWNEY:  GOOD ENOUGH.  THANKS, YOUR HONOR. |
| 02:05PM | 16 | THE COURT:  OKAY. |
| 02:05PM | 17 | THE CLERK:  COURT IS ADJOURNED. |
| 02:05PM | 18 | (COURT ADJOURNED AT 2:05 P.M.) |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

UNITED STATES COURT REPORTERS

**ER-12401**

1

2

3                        CERTIFICATE OF REPORTERS

4

5

6

7           WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16          IRENE RODRIGUEZ, CSR, CRR
            CERTIFICATE NUMBER 8076
17

18

19          LEE-ANNE SHORTRIDGE, CSR, CRR
            CERTIFICATE NUMBER 9595
20

21          DATED:  DECEMBER 10, 2021

22

23

24

25

8827

1

2                         UNITED STATES DISTRICT COURT

3                       NORTHERN DISTRICT OF CALIFORNIA

4                              SAN JOSE DIVISION

5

       UNITED STATES OF AMERICA,          )   CR-18-00258-EJD
6                                         )
                          PLAINTIFF,      )   SAN JOSE, CALIFORNIA
7                                         )
                  VS.                     )   VOLUME 45
8                                         )
       ELIZABETH A. HOLMES,               )   DECEMBER 13, 2021
9                                         )
                          DEFENDANT.      )   PAGES 8827 - 8898
10     _____        )

11                     TRANSCRIPT OF TRIAL PROCEEDINGS
12               BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13     A P P E A R A N C E S:

14
       FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                            BY:  JOHN C. BOSTIC
                                   JEFFREY B. SCHENK
16                            150 ALMADEN BOULEVARD, SUITE 900
                              SAN JOSE, CALIFORNIA 95113
17
                              BY:  ROBERT S. LEACH
18                                 KELLY VOLKAR
                              1301 CLAY STREET, SUITE 340S
19                            OAKLAND, CALIFORNIA 94612

20         (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21

       OFFICIAL COURT REPORTERS:
22                            IRENE L. RODRIGUEZ, CSR, RMR, CRR
                              CERTIFICATE NUMBER 8074
23                            LEE-ANNE SHORTRIDGE, CSR, CRR
                              CERTIFICATE NUMBER 9595
24
           PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25              TRANSCRIPT PRODUCED WITH COMPUTER

```
1        A P P E A R A N C E S: (CONT'D)

2

3    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                             BY:  KEVIN M. DOWNEY
4                                 LANCE A. WADE
                                  KATHERINE TREFZ
5                                 AMY SAHARIA
                                  ANDREW LEMENS
6                                 SEEMA ROPER
                                  J.R. FLEURMONT
7                                 RICHARD CLEARY
                                  PATRICK LOOBY
8                            725 TWELFTH STREET, N.W.
                             WASHINGTON, D.C. 20005
9
                             LAW OFFICE OF JOHN D. CLINE
10                           BY:  JOHN D. CLINE
                             ONE EMBARCADERO CENTER, SUITE 500
11                           SAN FRANCISCO, CALIFORNIA 94111

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
        1     SAN JOSE, CALIFORNIA                    DECEMBER 13, 2021

09:07AM 2                     P R O C E E D I N G S

09:07AM 3         (COURT CONVENED AT 9:07 A.M.)

09:07AM 4         (JURY OUT AT 9:07 A.M.)

09:07AM 5              THE COURT:  THANK YOU.  PLEASE BE SEATED.

09:07AM 6         WE'RE ON THE RECORD IN THE HOLMES MATTER.  ALL COUNSEL ARE

09:07AM 7     PRESENT AND MS. HOLMES IS PRESENT.

09:07AM 8         GOOD MORNING EVERYONE.  WE'RE HERE TO DISCUSS SOME FINAL

09:07AM 9     ISSUES ON THE INSTRUCTIONS, JURY INSTRUCTIONS.

09:07AM 10        I DID RECEIVE YOUR SUBMISSIONS OVER THE WEEKEND.  THANK

09:08AM 11    YOU FOR THOSE.  THEY WERE HELPFUL.

09:08AM 12        THIS IS 1191 AND 1192, AND THAT RELATED TO THE 4621A AND B

09:08AM 13    THAT WE HAD SOME CONVERSATIONS ABOUT.

09:08AM 14        I KNOW THERE'S -- WE'LL TALK ABOUT THAT, AND THERE ARE A

09:08AM 15    FEW OTHER INSTRUCTIONS ALSO THAT I THINK I ASKED YOU TO, AT

09:08AM 16    LEAST ONE, TO MEET AND CONFER ABOUT, AND SOME OTHERS THAT I HAD

09:08AM 17    TAKEN UNDER SUBMISSION.

09:08AM 18        LET ME ASK THE PARTIES WHO ARE GOING TO SPEAK TO THESE,

09:08AM 19    FIRST OF ALL, IS THERE ANYTHING YOU WOULD LIKE ME TO KNOW?

09:08AM 20    MAYBE YOU'VE HAD SOME CONFERENCE AND REACHED SOME OTHER

09:08AM 21    RESOLUTIONS, HE ASKED OPTIMISTICALLY?

09:08AM 22        GOOD MORNING, MS. VOLKAR.

09:08AM 23              MS. VOLKAR:  GOOD MORNING, YOUR HONOR.  KELLY VOLKAR

09:08AM 24    ON BEHALF OF THE UNITED STATES.

09:09AM 25        MAY I REMOVE MY MASK?
```

8830

| | | |
|---|---|---|
| 09:09AM | 1 | THE COURT:  YES, AND MS. SAHARIA LIKEWISE. |
| 09:09AM | 2 | THANK YOU.  GOOD MORNING. |
| 09:09AM | 3 | MS. SAHARIA:  THANK YOU, YOUR HONOR. |
| 09:09AM | 4 | MS. VOLKAR:  WHILE FRIDAY FEELS LIKE A LONG TIME |
| 09:09AM | 5 | AGO, I THINK, IF I UNDERSTOOD THE COURT'S QUESTION CORRECTLY, |
| 09:09AM | 6 | THE PARTIES DID MEET AND CONFER AT LEAST ABOUT THE TRADE |
| 09:09AM | 7 | SECRETS INSTRUCTION, AND I'LL LET MS. SAHARIA SPEAK TO THAT. |
| 09:09AM | 8 | MY UNDERSTANDING IS THAT THE DEFENSE WITHDREW ITS REQUEST |
| 09:09AM | 9 | IN THAT REGARD, AND I THINK THE REMAINDER OF THE MEET AND |
| 09:09AM | 10 | CONFER IS REFLECTED IN THE SUBMISSION WE SENT ON FRIDAY. |
| 09:09AM | 11 | BUT IF I'VE MISCHARACTERIZED ANYTHING, I'LL TURN IT OVER |
| 09:09AM | 12 | TO MS. SAHARIA. |
| 09:09AM | 13 | THE COURT:  OKAY.  THANK YOU. |
| 09:09AM | 14 | GOOD MORNING. |
| 09:09AM | 15 | MS. SAHARIA:  THAT'S CORRECT, YOUR HONOR.  WE DID |
| 09:09AM | 16 | MEET AND CONFER WITH THE GOVERNMENT FOLLOWING COURT ON FRIDAY, |
| 09:09AM | 17 | AND THE RESULT OF THAT MEET AND CONFER IS REFLECTED IN THE |
| 09:09AM | 18 | DOCUMENT THAT I EMAILED MS. KRATZMANN ON FRIDAY EVENING. |
| 09:09AM | 19 | WE WERE ABLE TO REACH AGREEMENT WITH THE GOVERNMENT ON A |
| 09:09AM | 20 | NUMBER OF THE OUTSTANDING ISSUES, FOR EXAMPLE, THE ALLEGED |
| 09:09AM | 21 | VIOLATIONS OR REGULATIONS INSTRUCTION. |
| 09:09AM | 22 | SO EVERYTHING THAT IS IN THAT DOCUMENT THAT IS NOT |
| 09:09AM | 23 | HIGHLIGHTED, THE PARTIES EITHER REACHED AGREEMENT OR THE |
| 09:10AM | 24 | DOCUMENT SIMPLY REFLECTS THE COURT'S RULINGS AS REFLECTED ON |
| 09:10AM | 25 | THE RECORD FROM FRIDAY. |

ER-12406

09:10AM  1          THE ONLY ISSUES THAT WE UNDERSTOOD TO BE REMAINING FOR THE

09:10AM  2     COURT'S RESOLUTION WERE THE ONES HIGHLIGHTED, AND MS. VOLKAR IS

09:10AM  3     RIGHT THAT WE ELECTED TO WITHDRAW OUR REQUEST FOR A TRADE

09:10AM  4     SECRET INSTRUCTION.

09:10AM  5          THE COURT:  OKAY.

09:10AM  6          MS. SAHARIA:  I'M PREPARED TO ADDRESS THOSE

09:10AM  7     INSTRUCTIONAL ISSUES, BUT MR. LEMENS IS GOING TO ADDRESS THE

09:10AM  8     FILINGS WITH RESPECT TO THE CMS REPORT.

09:10AM  9     SO IF YOUR HONOR WANTS TO START THERE?

09:10AM 10          THE COURT:  WELL, WHILE YOU'RE AT THE LECTERN, LET'S

09:10AM 11     TALK ABOUT SOME OF THE OTHERS.  I BELIEVE I HAVE THE PACKET

09:10AM 12     THAT YOU SUBMITTED ON SATURDAY -- FRIDAY NIGHT, PARDON ME.

09:10AM 13     JURY INSTRUCTION NUMBER 17, THIS IS WILLFULLY.  I KNOW THE

09:10AM 14     GOVERNMENT -- I NOTE THE NOTE BEGINNING ON LINE 6, THE

09:10AM 15     GOVERNMENT OBJECTS TO THIS.

09:11AM 16     THE COURT'S LANGUAGE THAT IT HAD TALKED ABOUT APPEARS AT

09:11AM 17     LINES 3 AND 4, THAT SENTENCE.

09:11AM 18     ANYTHING FURTHER ON THIS, MS. VOLKAR?

09:11AM 19          MS. VOLKAR:  NO, YOUR HONOR.

09:11AM 20     THE GOVERNMENT RESTS ON ITS PRIOR ARGUMENTS.

09:11AM 21          THE COURT:  ALL RIGHT.  THANK YOU.

09:11AM 22          MS. SAHARIA:  NOTHING FURTHER, YOUR HONOR.

09:11AM 23          THE COURT:  ALL RIGHT.  THANK YOU.

09:11AM 24     I'LL GIVE THIS, AS I INDICATED, LINES 3 AND 4, I'LL GIVE

09:11AM 25     THIS OVER THE GOVERNMENT'S OBJECTIONS.

| 09:11AM | 1 | INSTRUCTION 20.  WE HAD DISCUSSION ABOUT IDENTIFYING THE |
|---|---|---|

09:11AM   1    INSTRUCTION 20.  WE HAD DISCUSSION ABOUT IDENTIFYING THE

09:11AM   2    INDIVIDUALS RELATED TO EACH CHARGE, AND I SEE INSTRUCTION 20

09:11AM   3    CAPTURES THAT.

09:11AM   4         MS. SAHARIA:  YES, WE DO OBJECT TO THIS.

09:11AM   5    PROVING THE WIRES IS AN ELEMENT OF THE GOVERNMENT'S BURDEN

09:11AM   6    OF PROOF.  IT DOES BEAR THAT BURDEN OF PROOF TO PROVE THE WIRES

09:11AM   7    BEYOND A REASONABLE DOUBT.  THAT INCLUDES PROVING THE FACT OF

09:12AM   8    THE WIRES AND WHO THEY RELATE TO, THAT THEY WERE THERANOS

09:12AM   9    INVESTORS.

09:12AM   10   IT'S OUR POSITION THAT ADDING THESE NAMES INTO THE

09:12AM   11   INSTRUCTIONS TO THE JURY IMPROPERLY RELIEVES THE GOVERNMENT OF

09:12AM   12   PART OF ITS BURDEN OF PROOF TO PROVE THESE WIRES BEYOND A

09:12AM   13   REASONABLE DOUBT, AND FOR THAT REASON IT WOULD BE IMPROPER TO

09:12AM   14   PUT THEM IN THE INSTRUCTIONS.

09:12AM   15        THE COURT:  ALL RIGHT.  THANK YOU.

09:12AM   16        MS. VOLKAR:  YOUR HONOR, I THINK IT -- THE

09:12AM   17   GOVERNMENT'S POSITION IS THAT THIS IS SIMPLY IDENTIFYING FOR

09:12AM   18   THE JURY TO MAKE IT A LITTLE BIT EASIER THAN JUST THE DOLLAR

09:12AM   19   FIGURES, WHICH COUNT RELATES TO WHICH INVESTOR VICTIM WHO

09:12AM   20   TESTIFIED.

09:12AM   21   I BELIEVE AT THE OUTSET THE INSTRUCTIONS SAY THE

09:12AM   22   GOVERNMENT MUST PROVE ALL ASPECTS BEYOND A REASONABLE DOUBT.  I

09:12AM   23   DO NOT BELIEVE IT RELIEVES THE GOVERNMENT OF ANY BURDEN.

09:12AM   24        THE COURT:  THANK YOU.

09:12AM   25   IS THERE CONCERN, MS. SAHARIA, THAT THE JURY MIGHT LOOK AT

| | | |
|---|---|---|
| 09:12AM | 1 | THE DECEMBER 30TH ALLEGATIONS REGARDING MR. EISENMAN AND |
| 09:12AM | 2 | SOMEHOW CONFUSE THAT WITH THE COUNT 7, THE 99 MILLION RELATING |
| 09:13AM | 3 | TO DYNASTY?  IS THAT PART OF YOUR CONCERN? |
| 09:13AM | 4 | MS. SAHARIA:  NO.  MY CONCERN IS SIMPLY THAT THE |
| 09:13AM | 5 | GOVERNMENT BEARS THE BURDEN TO PROVE THESE ALLEGATIONS AND |
| 09:13AM | 6 | THESE NAMES DO NOT APPEAR IN THE INDICTMENT. |
| 09:13AM | 7 | ONLY THE DATES AND THE DOLLAR FIGURES APPEAR IN THE |
| 09:13AM | 8 | INDICTMENT. |
| 09:13AM | 9 | SO IT'S THE GOVERNMENT'S BURDEN TO ARGUE TO THE JURY IN |
| 09:13AM | 10 | CLOSING THAT THE EVIDENCE PROVED THESE WIRES.  I ASSUME PART OF |
| 09:13AM | 11 | THAT WILL BE SHOWING ITS PROOF TO THE JURY AS TO WHICH WIRES |
| 09:13AM | 12 | RELATE TO WHICH INDIVIDUALS.  THAT'S WHAT THEY WILL DO IN |
| 09:13AM | 13 | CLOSING ARGUEMENT. |
| 09:13AM | 14 | I JUST DON'T THINK IT'S APPROPRIATE FOR THE COURT TO BE |
| 09:13AM | 15 | DOING THAT FOR THE GOVERNMENT TO MAKE IT EASIER FOR THEM. |
| 09:13AM | 16 | MS. VOLKAR USED THE WORD "EASIER."  THAT'S OUR CONCERN, |
| 09:13AM | 17 | THIS MAKES IT EASIER FOR THE GOVERNMENT TO PROVE ITS CASE |
| 09:13AM | 18 | BEYOND A REASONABLE DOUBT WHEN INFORMATION THAT IS NOT IN THE |
| 09:13AM | 19 | INDICTMENT THAT IS PART OF ITS BURDEN OF PROOF IS ADDED TO THE |
| 09:13AM | 20 | JURY INSTRUCTIONS. |
| 09:13AM | 21 | THE COURT:  IS IT YOUR CONCERN THAT IF THE COURT |
| 09:13AM | 22 | GIVES THIS INSTRUCTION, IT GIVES ITS IMPRIMATUR THAT THE JURY |
| 09:14AM | 23 | SHOULD FIND EACH OF THESE -- |
| 09:14AM | 24 | MS. SAHARIA:  YES, EXACTLY. |
| 09:14AM | 25 | THE COURT:  -- FOR EACH OF THE VICTIMS INDICATED? |

09:14AM  1     IS THAT YOUR CONCERN?

09:14AM  2              MS. SAHARIA:  THAT IS OUR CONCERN, THAT IT'S THE

09:14AM  3     GOVERNMENT'S BURDEN AND THE COURT SHOULD NOT BE HELPING THE

09:14AM  4     GOVERNMENT MEET THAT BURDEN.

09:14AM  5              THE COURT:  WELL, I THINK I MAY HAVE SUGGESTED THIS.

09:14AM  6     I'M NOT SURE IF THE GOVERNMENT DID, BUT I SUGGESTED THIS AS A

09:14AM  7     WAY TO ASSIST, TO HELP THE JURY -- NOT TO HELP THE GOVERNMENT,

09:14AM  8     NOT TO HELP THE DEFENSE -- BUT RATHER TO INFORM THE JURY AS TO

09:14AM  9     WHICH OF THESE ALLEGATIONS RELATED TO WHICH COUNT.

09:14AM 10         I THINK WE HAD TALKED ALSO ABOUT PROVIDING THE JURY WITH

09:14AM 11     ANOTHER DOCUMENT THAT CONTAINED ALL OF THIS INFORMATION.  WHAT

09:14AM 12     HAS HAPPENED TO THAT?

09:14AM 13              MS. SAHARIA:  SO WE HAD TALKED ABOUT THE POTENTIAL

09:14AM 14     OF GIVING THE JURY A REDACTED INDICTMENT.

09:14AM 15         WE HAVE GONE BACK AND LOOKED AT THE INDICTMENT.  WE DON'T

09:14AM 16     SEE A WAY TO FEASIBLY REDACT THE INDICTMENT.  THAT DOESN'T GIVE

09:15AM 17     THE JURY GOVERNMENT ARGUMENT IN THE INDICTMENT.

09:15AM 18         IT'S OUR POSITION THAT THE INSTRUCTIONS AS THEY'RE

09:15AM 19     CURRENTLY WORDED GIVES THE JURY THE CORE INFORMATION WITH

09:15AM 20     RESPECT TO WHAT IS THE OBJECT OF BOTH SCHEMES AND CONSPIRACIES,

09:15AM 21     THE RELEVANT DATES, AND THE DATES OF THE WIRES.

09:15AM 22         AND THEN PRESUMABLY THE PARTIES WILL ARGUE TO THE JURY IN

09:15AM 23     CLOSING THE MISREPRESENTATIONS THAT ARE ALLEGED IN THE

09:15AM 24     INDICTMENT.

09:15AM 25         SO IT'S OUR POSITION THAT NO FURTHER DOCUMENT NEEDS TO GO

| | | |
|---|---|---|
| 09:15AM | 1 | BACK TO THE JURY. |
| 09:15AM | 2 | THE COURT:  WELL, I THINK THIS IS A SWITCH IN YOUR |
| 09:15AM | 3 | POSITION, OR YOUR TEAM'S POSITION. |
| 09:15AM | 4 | YOU HAD ADVOCATED PREVIOUSLY THAT A DOCUMENT THAT INFORMS |
| 09:15AM | 5 | FULSOME SHOULD BE PROVIDED TO THE JURY TO ASSIST THEM.  I |
| 09:15AM | 6 | AGREED WITH THAT, AND THAT'S WHY I THOUGHT A REDACTED VERSION, |
| 09:15AM | 7 | A SOMEHOW MODIFIED VERSION OF THE INDICTMENT WOULD BE HELPFUL. |
| 09:16AM | 8 | MS. SAHARIA:  THAT'S RIGHT, YOUR HONOR. |
| 09:16AM | 9 | I THINK I SAID AT THAT FIRST CONFERENCE THAT I WANTED TO |
| 09:16AM | 10 | CONFER WITH MY TEAM ABOUT WHETHER WE THOUGHT IT COULD WORK TO |
| 09:16AM | 11 | REDACT THE INDICTMENT, AND WE DID GO BACK AND LOOK AT THE |
| 09:16AM | 12 | INDICTMENT. |
| 09:16AM | 13 | AND WE DON'T SEE A GOOD WAY TO DO THAT, TO GIVE -- THAT |
| 09:16AM | 14 | WOULDN'T GIVE THE JURY IMPROPER ARGUMENT FROM THE GOVERNMENT. |
| 09:16AM | 15 | AS YOUR HONOR KNOWS, IT'S A SPEAKING INDICTMENT.  IT |
| 09:16AM | 16 | CONTAINS, YOU KNOW, LOTS OF ALLEGATIONS THROUGHOUT THE |
| 09:16AM | 17 | INDICTMENT. |
| 09:16AM | 18 | AND SO WE JUST DIDN'T SEE A GOOD WAY TO DO THAT. |
| 09:16AM | 19 | SO WE DO THINK THAT AT THE TIME THAT WE FIRST MET, SOME OF |
| 09:16AM | 20 | THE LANGUAGE THAT IS NOW IN THESE INSTRUCTIONS WITH RESPECT TO |
| 09:16AM | 21 | THE OBJECTS OF THE VARIOUS SCHEMES WERE NOT IN THE DRAFT FROM |
| 09:16AM | 22 | THE GOVERNMENT.  THEY HAVE NOW AGREED TO ADD THAT INFORMATION. |
| 09:16AM | 23 | SO I DO THINK THAT THIS IS NOW A MORE FULSOME DOCUMENT |
| 09:16AM | 24 | THAT ARTICULATES THE DATES, THE OBJECTS OF THE SCHEMES AND |
| 09:16AM | 25 | CONSPIRACIES, WHICH ONES RELATE TO PATIENTS, PAYING PATIENTS, |

```
09:16AM   1    WHICH ONES RELATE TO INVESTORS.

09:17AM   2         SO I DO THINK THAT THERE IS SIGNIFICANTLY MORE INFORMATION

09:17AM   3    IN THIS NOW THAN THERE WAS WHEN WE FIRST MET TWO FRIDAYS AGO.

09:17AM   4              THE COURT:  ALL RIGHT.  THANK YOU.

09:17AM   5         IT WAS MY INTENTION, IF THE JURY WOULD RECEIVE AN

09:17AM   6    INDICTMENT, TO NOT GIVE THEM THE ENTIRETY OF THE INDICTMENT

09:17AM   7    THAT HAD ALL OF THE SUMMATION OF THE FACTS AND THE ALLEGATIONS,

09:17AM   8    BUT RATHER JUST THE CHARGING PORTION.  THAT'S WHAT I THOUGHT

09:17AM   9    YOU WOULD WORK ON.

09:17AM  10         IS THAT WHAT YOU WORKED ON, AS OPPOSED TO ALL OF THE

09:17AM  11    PRELIMINARY LANGUAGE?

09:17AM  12              MS. SAHARIA:  BY "CHARGING PORTION," DO YOU MEAN

09:17AM  13    JUST THE COUNTS AT THE END, YOUR HONOR?

09:17AM  14              THE COURT:  YES, WITHOUT THE LANGUAGE, THE PREFATORY

09:17AM  15    LANGUAGE.

09:17AM  16              MS. SAHARIA:  WE WERE LOOKING AT THE LANGUAGE OF THE

09:17AM  17    ALLEGED MISREPRESENTATIONS, WHICH LARGELY IS IN PARAGRAPH 12,

09:17AM  18    AND THEN I THINK PRIMARILY PARAGRAPH 16 AS IT RELATES TO THE

09:17AM  19    PATIENTS.

09:17AM  20         AND THAT'S WHAT WE WERE CONCERNED ABOUT, THAT WE DIDN'T

09:18AM  21    SEE A GOOD WAY TO GIVE THOSE PARAGRAPHS TO THE JURY WITHOUT

09:18AM  22    KIND OF EXPOSING THEM TO WHAT WE VIEW AS IMPROPER ARGUMENT IN

09:18AM  23    THE INDICTMENT.

09:18AM  24         THE COUNTS, I THINK, PROBABLY ARE LESS OBJECTIONABLE, BUT

09:18AM  25    I WOULD WANT TO GO BACK AND LOOK AT THAT ONE MORE TIME.
```

| | | |
|---|---|---|
| 09:18AM | 1 | THE COURT:  OKAY. |
| 09:18AM | 2 | MS. VOLKAR? |
| 09:18AM | 3 | MS. VOLKAR:  THE GOVERNMENT'S POSITION REMAINS THAT |
| 09:18AM | 4 | THE COURT COULD READ OR GIVE THE INDICTMENT TO THE JURY. |
| 09:18AM | 5 | WHEN WE SPOKE ABOUT THIS BEFORE, I BELIEVE THE DEFENSE |
| 09:18AM | 6 | RAISED CONCERNS ABOUT A POTENTIAL VARIANCE, AND THE BEST WAY TO |
| 09:18AM | 7 | AVOID A VARIANCE IS TO READ THE INDICTMENT. |
| 09:18AM | 8 | THE GOVERNMENT SEES NOTHING IMPROPER WITH THAT, BUT ALSO |
| 09:18AM | 9 | SUBMITS THAT THE JURY INSTRUCTIONS THAT THE PARTIES HAVE AGREED |
| 09:18AM | 10 | ON THUS FAR DO LAY OUT EACH OF THE INDIVIDUAL COUNTS IN A |
| 09:18AM | 11 | MANNER THAT, IF THE DEFENSE STRONGLY OBJECTS TO PROVIDING THE |
| 09:18AM | 12 | INDICTMENT, WE DON'T THINK IT'S NEEDED GIVEN THE CURRENT STATE |
| 09:18AM | 13 | OF THE INSTRUCTIONS. |
| 09:18AM | 14 | I DO WANT TO LOOP BACK TO THE NAMES OF THE VICTIMS. |
| 09:18AM | 15 | THE COURT:  YES. |
| 09:19AM | 16 | MS. VOLKAR:  I GO BACK TO THE COURT'S POINT THAT |
| 09:19AM | 17 | ADDING THE NAMES OF THE INVESTOR VICTIMS IS REALLY JUST TO |
| 09:19AM | 18 | ASSIST THE JURORS. |
| 09:19AM | 19 | I DO NOT BELIEVE THERE IS ANY CONTESTING FROM THE DEFENSE |
| 09:19AM | 20 | WHICH WIRE RELATES TO WHICH VICTIM. |
| 09:19AM | 21 | ADDING THE NAME IS REALLY JUST A TOOL FOR THE JURY TO BE |
| 09:19AM | 22 | ABLE TO LINK UP A DOLLAR FIGURE WITH THE VICTIM THAT TESTIFIED |
| 09:19AM | 23 | ABOUT IT, AND OF COURSE THEY'LL HAVE THE WIRE ITSELF WHICH |
| 09:19AM | 24 | LISTS THE VICTIM. |
| 09:19AM | 25 | I'M SORRY.  I DON'T HAVE THE EXHIBIT NUMBER OFF THE TOP OF |

09:19AM 1    MY HEAD, BUT THAT'S WHAT I LOOKED AT WHEN I ADDED THE VICTIMS'

09:19AM 2    NAMES HERE.

09:19AM 3        SO THAT'S WHY I ASSERT THAT IT'S NOT LESSENING THE

09:19AM 4    GOVERNMENT'S BURDEN OF PROOF, IT REALLY IS JUST TO ASSIST THE

09:19AM 5    JURY, AND I BELIEVE IT'S A FACT THAT IS NOT IN CONTENTION.

09:19AM 6        I DON'T THINK THE DEFENSE IS GOING TO ARGUE IN CLOSING

09:19AM 7    ARGUMENTS THAT THE 5 MILLION WIRED BY PERSON X WAS ACTUALLY BY

09:20AM 8    PERSON Y ON THAT DATE.

09:20AM 9        THE COURT:  THANK YOU.  THANK YOU.

09:20AM 10       I'M TRYING TO SEE HOW THIS PREJUDICES YOU.

09:20AM 11       AND, MS. SAHARIA, I THINK YOU'RE SAYING THAT, WELL, THEY

09:20AM 12   HAVE TO PROVE THAT THE 990 CAME TO MR. EISENMAN.

09:20AM 13       MS. SAHARIA:  CAME FROM MR. EISENMAN.

09:20AM 14       THE COURT:  RIGHT.  BUT IT SAYS RELATING TO, IT

09:20AM 15   DOESN'T SAY -- DOESN'T THAT CHANGE IT?  IT DOESN'T --

09:20AM 16       MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR.  THE

09:20AM 17   FACT THAT WE DON'T CONTEST WHICH WIRES RELATE TO WHICH

09:20AM 18   INDIVIDUALS DOESN'T MATTER BECAUSE, AGAIN, WE'RE THE DEFENDANT.

09:20AM 19   WE HAVE NO BURDEN TO CONTEST ANYTHING.

09:20AM 20       THE GOVERNMENT HAS THE BURDEN TO PROVE EVERY ELEMENT

09:20AM 21   BEYOND A REASONABLE DOUBT, EVEN IF WE DON'T CONTEST ANYTHING.

09:20AM 22       SO THE GOVERNMENT, I ASSUME, WILL MAKE A CHART AND IT WILL

09:20AM 23   SHOW THE CHART TO THE JURY IN CLOSING AND THE CHART WILL

09:20AM 24   LINK ITS EVIDENCE AND WILL SHOW THE JURY ITS EVIDENCE AND WILL

09:21AM 25   LINK THE AMOUNTS TO THE VICTIMS, AND THAT'S PROPER CLOSING

| 09:21AM | 1 | ARGUMENT AND THE JURY CAN TAKE NOTES. |
| 09:21AM | 2 | BUT THAT'S THE GOVERNMENT'S BURDEN.  THE COURT SHOULDN'T |
| 09:21AM | 3 | BE DOING THE GOVERNMENT'S WORK FOR IT IN THE INSTRUCTIONS. |
| 09:21AM | 4 | SO I'LL JUST REST ON THAT. |
| 09:21AM | 5 | THE COURT:  ALL RIGHT.  ANYTHING FURTHER? |
| 09:21AM | 6 | MS. VOLKAR:  JUST THAT THE INSTRUCTIONS SAY THAT THE |
| 09:21AM | 7 | GOVERNMENT MUST PROVE EVERYTHING BEYOND A REASONABLE DOUBT. |
| 09:21AM | 8 | AND WITH THAT, THE GOVERNMENT RESTS. |
| 09:21AM | 9 | THE COURT:  THANK YOU. |
| 09:21AM | 10 | I DO THINK THAT IDENTIFYING THESE IN THE INSTRUCTIONS IS |
| 09:21AM | 11 | MORE HELPFUL TO THE JURY.  I REALLY DO.  I DON'T SEE THE |
| 09:21AM | 12 | PREJUDICE. |
| 09:21AM | 13 | I UNDERSTAND, MS. SAHARIA, YOUR POINT THAT, WELL, THE |
| 09:21AM | 14 | GOVERNMENT HAS TO CONNECT THESE UP, AND IF THEY WANT TO DO IT, |
| 09:21AM | 15 | THEY CAN DO IT IN THEIR CHART ON A POWERPOINT. |
| 09:21AM | 16 | YOU HAVE CONCERN, YOU HAVE GRAVE CONCERN THAT SOMEHOW THIS |
| 09:21AM | 17 | MEANS THAT THE COURT IS ASSISTING THE GOVERNMENT IN THEIR |
| 09:21AM | 18 | PROSECUTION. |
| 09:21AM | 19 | ALL RIGHT.  I WILL NOT GIVE THESE. |
| 09:21AM | 20 | AND THE GOVERNMENT CAN IDENTIFY THESE AS THEY WISH IN |
| 09:21AM | 21 | THEIR CLOSING ARGUMENT, AND THE JURY WILL BE TASKED TO SEE IF |
| 09:22AM | 22 | THE GOVERNMENT MET THEIR BURDEN AS TO EACH OF THESE COUNTS. |
| 09:22AM | 23 | ALL RIGHT? |
| 09:22AM | 24 | MS. SAHARIA:  THANK YOU, YOUR HONOR. |
| 09:22AM | 25 | THE COURT:  PAGE 23, LINE 19, THERE'S -- I THINK YOU |

| 09:22AM | 1 | OBJECT TO THAT SENTENCE, MS. SAHARIA? |
| 09:22AM | 2 | MS. SAHARIA:  I'M SORRY, LINE 4? |
| 09:22AM | 3 | THE COURT:  I'M ON PAGE 23, THE SAME INSTRUCTION. |
| 09:22AM | 4 | MS. SAHARIA:  OH, I'M SORRY.  YES, YES, I WAS |
| 09:22AM | 5 | LOOKING AT INSTRUCTION 23.  APOLOGIES, YOUR HONOR. |
| 09:22AM | 6 | YES, WE HAD THIS DISCUSSION LAST WEEK.  THE GOVERNMENT HAD |
| 09:22AM | 7 | PROPOSED A PARAGRAPH ON THIS TOPIC WHICH THE COURT SAID IT |
| 09:22AM | 8 | WOULDN'T GIVE. |
| 09:22AM | 9 | THE GOVERNMENT IS NOW PROPOSING THIS LINE. |
| 09:22AM | 10 | AGAIN, THERE'S NO NEED FOR THE SENTENCE.  IT'S NOT GOING |
| 09:22AM | 11 | TO -- THE JURY WILL NOT BE CONFUSED ABOUT THIS POINT.  THE |
| 09:22AM | 12 | WIRES IN THIS CASE, THE MAJORITY OF THEM ARE JUST WIRING MONEY. |
| 09:22AM | 13 | SO I JUST DON'T SEE HOW THE JURY COULD POSSIBLY BE |
| 09:22AM | 14 | CONFUSED THAT THE WIRE NEEDS TO BE FALSE OR MISLEADING IF THE |
| 09:23AM | 15 | WIRE IS MONEY. |
| 09:23AM | 16 | WE'RE NOT GOING TO ARGUE TO THE JURY THAT THE WIRE NEEDS |
| 09:23AM | 17 | TO BE FALSE OR MISLEADING.  I JUST DON'T SEE THE POINT OF THE |
| 09:23AM | 18 | SENTENCE. |
| 09:23AM | 19 | THE COURT:  OKAY. |
| 09:23AM | 20 | MS. SAHARIA:  AND IT'S NOT A MODEL INSTRUCTION. |
| 09:23AM | 21 | THE COURT:  OKAY. |
| 09:23AM | 22 | MS. VOLKAR:  YOUR HONOR, THIS WAS BECAUSE OF THE |
| 09:23AM | 23 | DISCUSSION BETWEEN THE COURT AND MR. LEACH LAST FRIDAY, WHICH |
| 09:23AM | 24 | IS THE POINT THE GOVERNMENT WAS TRYING TO CONVEY WITH THE PRIOR |
| 09:23AM | 25 | PARAGRAPH WAS A STATEMENT OF THE LAW. |

| | | |
|---|---|---|
| 09:23AM | 1 | WE UNDERSTAND IF THE COURT WANTS TO GIVE THE MODEL |
| 09:23AM | 2 | INSTRUCTION, BUT WE DID WANT TO PROPOSE THE SENTENCE THAT GOT |
| 09:23AM | 3 | MORE TO THE HEART OF WHAT WE WERE TRYING TO SAY. |
| 09:23AM | 4 | THE COURT:  MS. VOLKAR, IF I GIVE THIS, DOES IT LEND |
| 09:23AM | 5 | ANY CONFUSION, DO YOU THINK?  DOES THIS ADD TO CONFUSION? |
| 09:23AM | 6 | EXCUSE ME. |
| 09:23AM | 7 | MS. VOLKAR:  I DO NOT BELIEVE SO.  I THINK IT IS A |
| 09:23AM | 8 | CLEAR STATEMENT OF THE LAW AND IT MAKES CLEAR -- NOT EVERYBODY |
| 09:23AM | 9 | IS FAMILIAR WITH WIRE FRAUD, AND IT MAKES CLEAR THAT WIRE |
| 09:24AM | 10 | ITSELF DOES NOT HAVE TO BE FRAUDULENT OF MISREP -- MISLEADING. |
| 09:24AM | 11 | EXCUSE ME. |
| 09:24AM | 12 | THE COURT:  SO TELL ME -- REMIND ME AGAIN WHAT THIS |
| 09:24AM | 13 | MEANS, EXCUSE ME, WHAT THIS MEANS, "THE WIRE ITSELF NEED NOT BE |
| 09:24AM | 14 | FALSE OR MISLEADING."  WHAT DOES THAT INFORM THE JURY? |
| 09:24AM | 15 | MS. VOLKAR:  I THINK WE HAVE SEEN CASE LAW WHERE |
| 09:24AM | 16 | THE -- WHAT IS SENT IN THE MAIL IS, FOR EXAMPLE, A FRAUDULENT |
| 09:24AM | 17 | ADVERTISEMENT. |
| 09:24AM | 18 | AND I THINK THIS IS A CASE WHERE THE WIRE IS RELATING TO |
| 09:24AM | 19 | OR IN FURTHERANCE OF THE SCHEME WHERE, AS MS. SAHARIA POINTED |
| 09:24AM | 20 | OUT, SEVERAL OF THE INVESTORS ARE SIMPLY WIRING MONEY, OR IN |
| 09:24AM | 21 | ONE INSTANCE A PATIENT CALLED TO TALK ABOUT A BLOOD TEST |
| 09:24AM | 22 | RESULT, RATHER THAN NECESSARILY RECEIVING THE INACCURATE RESULT |
| 09:24AM | 23 | BY FAX AS A DIFFERENT PATIENT DID. |
| 09:24AM | 24 | SO I THINK IT'S JUST TRYING TO CLEAR UP FOR THE JURY THAT |
| 09:24AM | 25 | WHILE IN SOME INSTANCES THE WIRE MAY ITSELF BE THE FRAUDULENT |

| | | |
|---|---|---|
| 09:25AM | 1 | DOCUMENT, THAT'S NOT TRUE IN ALL CASES, AND IT'S NOT THE |
| 09:25AM | 2 | GOVERNMENT'S BURDEN TO PROVE THAT UNDER THE LAW OF THE |
| 09:25AM | 3 | NINTH CIRCUIT. |
| 09:25AM | 4 | THE COURT:  OKAY. |
| 09:25AM | 5 | MS. SAHARIA? |
| 09:25AM | 6 | MS. SAHARIA:  THE INSTRUCTION INFORMS THE JURY AS TO |
| 09:25AM | 7 | WHAT THE WIRING ELEMENT IS.  THAT'S THE FOURTH ELEMENT AT LINES |
| 09:25AM | 8 | 14 TO 15.  THAT IS THE MODEL INSTRUCTION. |
| 09:25AM | 9 | THE WIRE SIMPLY NEEDS TO BE USED TO CARRY OUT OR ATTEMPT |
| 09:25AM | 10 | TO CARRY OUT AN ESSENTIAL PART OF THE SCHEME. |
| 09:25AM | 11 | THIS LINE IS JUST THE GOVERNMENT ARGUMENT ABOUT THE WIRING |
| 09:25AM | 12 | ELEMENT. |
| 09:25AM | 13 | AND AGAIN, THERE'S JUST NO POTENTIAL FOR THE JURY TO BE |
| 09:25AM | 14 | CONFUSED HERE GIVEN WHAT THE GOVERNMENT HAS CHARGED AS THE |
| 09:25AM | 15 | WIRES.  I DON'T SEE THE NEED FOR THIS SENTENCE. |
| 09:25AM | 16 | THE COURT:  MS. VOLKAR, I THINK IF I'M GOING TO GIVE |
| 09:26AM | 17 | THIS, I THINK IT SHOULD BE GIVEN FOLLOWING THE END OF THE |
| 09:26AM | 18 | SENTENCE IN THE FOURTH AS MS. SAHARIA POINTS OUT. |
| 09:26AM | 19 | IT SEEMS THAT IF IT WOULD BE GIVEN, IT WOULD FLOW BETTER |
| 09:26AM | 20 | THERE IF I MOVED IT TO FOLLOW THE WORD "SCHEME." |
| 09:26AM | 21 | MS. VOLKAR:  THAT WOULD BE FINE, YOUR HONOR. |
| 09:26AM | 22 | THE COURT:  SO I'LL GIVE THIS AND I'LL MOVE IT TO |
| 09:26AM | 23 | THAT LOCATION FOLLOWING THE WORD "SCHEME" IN THE FOURTH -- IT'S |
| 09:26AM | 24 | ON LINE 14, PAGE 23 OF THE SUBMISSION. |
| 09:26AM | 25 | AND I'LL NOTE YOUR OBJECTIONS, MS. SAHARIA. |

| | | |
|---|---|---|
| 09:26AM | 1 | MS. SAHARIA:  THANK YOU. |
| 09:26AM | 2 | THE COURT:  KNOWINGLY IS INSTRUCTION 23, AND |
| 09:27AM | 3 | MR. WADE'S FAVORITE CASE, PHILLIPS, IS CITED HERE. |
| 09:27AM | 4 | MS. SAHARIA:  YES, YOUR HONOR. |
| 09:27AM | 5 | THE COURT:  RIGHT.  AS ARE THE MODEL INSTRUCTIONS. |
| 09:27AM | 6 | MS. SAHARIA:  CORRECT. |
| 09:27AM | 7 | THE COURT:  SO WE HAVE SOME TENSION BETWEEN THOSE |
| 09:27AM | 8 | TWO CONCEPTS. |
| 09:27AM | 9 | MS. SAHARIA, WHAT SHOULD BE GIVEN? |
| 09:27AM | 10 | MS. SAHARIA:  WELL, I DON'T THINK THERE'S ANY |
| 09:27AM | 11 | TENSION BETWEEN THE TWO CONCEPTS.  THE FIRST PARAGRAPH IS THE |
| 09:27AM | 12 | MODEL INSTRUCTION. |
| 09:27AM | 13 | THE SECOND PARAGRAPH IS AN INSTRUCTION THAT IS TAILORED TO |
| 09:27AM | 14 | THE FACTS OF THIS CASE WHERE THE GOVERNMENT HAS PUT INTO |
| 09:27AM | 15 | EVIDENCE LARGE SWATHS OF EVIDENCE ABOUT INFORMATION THAT NEVER |
| 09:27AM | 16 | WENT TO MS. HOLMES. |
| 09:27AM | 17 | ONE OF ITS FIRST WITNESSES, FOR EXAMPLE, WAS ERIKA CHEUNG, |
| 09:27AM | 18 | WHO TESTIFIED ABOUT HER CONCERNS IN THE LAB THAT SHE NEVER ONCE |
| 09:27AM | 19 | COMMUNICATED TO MS. HOLMES. |
| 09:27AM | 20 | SO GIVEN THE WAY THAT THE GOVERNMENT HAS PROVED ITS CASE, |
| 09:27AM | 21 | WE THINK IT'S VERY IMPORTANT FOR THE JURY TO UNDERSTAND THAT IT |
| 09:27AM | 22 | IS NOT PERMITTED TO IMPUTE KNOWLEDGE FROM OTHER THERANOS |
| 09:28AM | 23 | EMPLOYEES, FROM ALLEGED -- AN ALLEGED COCONSPIRATOR, FROM |
| 09:28AM | 24 | ALLEGED AGENTS OF MS. HOLMES.  THAT'S BLACK LETTER LAW.  THE |
| 09:28AM | 25 | PHILLIPS CASE SQUARELY HOLDS THAT. |

| | | |
|---|---|---|
| 09:28AM | 1 | SO WE THINK GIVEN THE FACTS OF THIS CASE, IT'S VERY |
| 09:28AM | 2 | IMPORTANT FOR THE JURY TO HEAR THAT INSTRUCTION. |
| 09:28AM | 3 | THERE'S NO TENSION BETWEEN THAT AND WHAT IT MEANS TO ACT |
| 09:28AM | 4 | KNOWINGLY.  THIS IS SIMPLY EXPLAINING TO THE JURY THAT TO ACT |
| 09:28AM | 5 | KNOWINGLY, MS. HOLMES HERSELF NEEDS TO BE AWARE OF THE RELEVANT |
| 09:28AM | 6 | FACTS AND THE JURY CAN'T IMPUTE ANYONE ELSE'S KNOWLEDGE TO HER. |
| 09:28AM | 7 | THE COURT:  THANK YOU. |
| 09:28AM | 8 | WHAT ABOUT OMISSION?  SHOULD THAT REMAIN HERE ON LINE 5? |
| 09:28AM | 9 | MS. SAHARIA:  I DON'T BELIEVE SO, YOUR HONOR. |
| 09:28AM | 10 | THIS GOES TO THE POINT THAT WE WERE DISCUSSING LAST WEEK. |
| 09:28AM | 11 | THE GOVERNMENT DID AGREE TO DROP ITS OMISSIONS AND DUTY TO |
| 09:28AM | 12 | DISCLOSE THEORY.  THE WORD "OMISSIONS" HAS BEEN REMOVED FROM |
| 09:29AM | 13 | THE REMAINDER OF THE INSTRUCTIONS. |
| 09:29AM | 14 | AS I UNDERSTAND IT FROM MR. LEACH LAST WEEK, IT'S HIS VIEW |
| 09:29AM | 15 | THAT THE WORD "OMISSIONS" HERE STILL BELONGS HERE BECAUSE THIS |
| 09:29AM | 16 | IS NOT DIRECTLY IMPLICATING THE DUTY TO DISCLOSE. |
| 09:29AM | 17 | BUT I THINK, GIVEN THAT THERE'S NO DUTY TO DISCLOSE THEORY |
| 09:29AM | 18 | IN THIS CASE ANYMORE, THE WORD "OMISSIONS" WILL CONFUSE THE |
| 09:29AM | 19 | JURY.  I'M NOT EVEN SURE HOW THE JURY COULD INFER KNOWLEDGE |
| 09:29AM | 20 | FROM AN OMISSION UNLESS THERE WAS A DUTY TO DISCLOSE. |
| 09:29AM | 21 | I DON'T EVEN KNOW WHAT THE PURPOSE OF THAT WORD IS IN THIS |
| 09:29AM | 22 | SENTENCE, AND I'M CONCERNED THAT IT WILL SUGGEST TO THE JURY |
| 09:29AM | 23 | THAT MS. HOLMES DID HAVE SOME DUTY TO DISCLOSE INFORMATION THAT |
| 09:29AM | 24 | WAS OMITTED. |
| 09:29AM | 25 | I JUST, I THINK IT'S HIGHLY MISLEADING HERE AND SHOULD BE |

| | | |
|---|---|---|
| 09:29AM | 1 | ELIMINATED. |
| 09:29AM | 2 | THE COURT:  OKAY.  THANK YOU. |
| 09:29AM | 3 | AND WHAT IS YOUR VIEW ON THE COURT GIVING BOTH OF THESE? |
| 09:29AM | 4 | MS. SAHARIA:  I THINK IF THE COURT IS GOING TO GIVE |
| 09:29AM | 5 | THE FIRST PARAGRAPH, WE WOULD ASK THAT THE COURT ADD THE SECOND |
| 09:29AM | 6 | PARAGRAPH SO THAT THEY BOTH BE GIVEN TOGETHER. |
| 09:29AM | 7 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:29AM | 8 | MS. VOLKAR? |
| 09:29AM | 9 | MS. VOLKAR:  YOUR HONOR, THERE IS TENSION BETWEEN |
| 09:30AM | 10 | THE MODEL INSTRUCTION AND THE PHILLIPS INSTRUCTION. |
| 09:30AM | 11 | AND AS THE GOVERNMENT POINTED OUT LAST WEEK, PHILLIPS IS A |
| 09:30AM | 12 | CASE FROM 1965.  IT'S BEEN AROUND FOR A LONG TIME.  AS FAR AS I |
| 09:30AM | 13 | KNOW, IT'S OFTEN CITED BY CRIMINAL DEFENDANTS, YET IT HAS NEVER |
| 09:30AM | 14 | MADE ITS WAY INTO THE MODEL INSTRUCTIONS, NOT EVEN AS BRACKETED |
| 09:30AM | 15 | LANGUAGE, AND I THINK THAT REALLY SHOULD INFORM YOUR HONOR'S |
| 09:30AM | 16 | RULING HERE. |
| 09:30AM | 17 | THE KNOWINGLY STANDARD IS WELL DEFINED.  IT'S DEFINED IN |
| 09:30AM | 18 | THE MODEL.  IT ENCOMPASSES THE CONCEPTS THAT THEY'RE TRYING TO |
| 09:30AM | 19 | ADD THROUGH THE PHILLIPS CASE. |
| 09:30AM | 20 | AND THE DEFENSE, OF COURSE, CAN MAKE THESE ARGUMENTS IN |
| 09:30AM | 21 | THEIR CLOSING ARGUMENT, BUT IT DOESN'T HAVE ANY PLACE IN THE |
| 09:30AM | 22 | COURT'S INSTRUCTIONS BECAUSE, FOR EXAMPLE, THE FIRST SENTENCE |
| 09:30AM | 23 | SAYS, "AN ACT IS DONE KNOWINGLY IF MS. HOLMES IS AWARE." |
| 09:30AM | 24 | NOW, SHE COULD BE AWARE OF INFORMATION THAT SHE LEARNS |
| 09:30AM | 25 | FROM HER COCONSPIRATOR, THAT SHE LEARNS FROM MR. BALWANI WITH |

09:30AM 1     RESPECT TO WHAT ERIKA CHEUNG TOLD HIM.

09:30AM 2          AND I DO THINK THAT THERE IS EVIDENCE IN THIS CASE THAT

09:30AM 3     THERE WAS AT LEAST SOME COMMUNICATION ON THAT FRONT.

09:31AM 4          SO JUST BECAUSE ERIKA CHEUNG DID NOT NECESSARILY TALK TO

09:31AM 5     MS. HOLMES DIRECTLY, THERE IS OTHER EVIDENCE THAT, FOR EXAMPLE,

09:31AM 6     SHE KNEW TYLER SHULTZ TALKED TO MS. HOLMES DIRECTLY, AND, OF

09:31AM 7     COURSE, MS. HOLMES TESTIFIED ABOUT THAT.

09:31AM 8          AND THERE WAS COPIOUS CONVERSATION BETWEEN MS. HOLMES AND

09:31AM 9     HER COCONSPIRATOR.

09:31AM 10         SO I THINK IT'S MISLEADING TO INCLUDE THE PHILLIPS

09:31AM 11    INSTRUCTION HERE, THAT THE JURY HAS TO PUT BLINDERS ON AND

09:31AM 12    NARROW ITS FOCUS IN TERMS OF WHAT IT'S ALLOWED TO INCLUDE.

09:31AM 13         AND I WANT TO GO BACK TO WHAT THE PHILLIPS CASE ACTUALLY

09:31AM 14    SAYS.  THE PHILLIPS CASE WAS AN EVIDENTIARY RULING, WHETHER OR

09:31AM 15    NOT DOCUMENTS SHOULD BE ADMITTED THAT ONE COCONSPIRATOR NEVER

09:31AM 16    SAW, AND I BELIEVE THAT WAS ONE OF THOSE CASES WHERE THE

09:31AM 17    DOCUMENT ITSELF WAS A VEHICLE OF THE FRAUD.

09:31AM 18         AND ONE OF THE COCONSPIRATORS NEVER SAW THE OTHER -- THE

09:31AM 19    DOCUMENT, THE LETTER THAT THE OTHER COCONSPIRATOR ACTUALLY

09:31AM 20    SENT.

09:31AM 21         AND THE QUESTION BEFORE THE NINTH CIRCUIT IN THE DISTRICT

09:31AM 22    COURT IN THAT CASE WAS WHETHER OR NOT THE DOCUMENT THAT THE

09:31AM 23    COCONSPIRATOR NEVER SAW SHOULD BE ADMITTED IN THE CASE OF THE

09:32AM 24    DEFENDANT WHO HAD NEVER SEEN THE DOCUMENT.

09:32AM 25         YOUR HONOR RELIED ON THIS CASE, THE PHILLIPS CASE, IN

09:32AM 1    REJECTING THE GOVERNMENT'S PROFFER OF THE STACK OF NEGATIVE

09:32AM 2    COMPLAINTS ABOUT ACCURACY AND RELIABILITY THAT WAS SENT TO

09:32AM 3    MR. BALWANI, BUT NOT SENT TO MS. HOLMES.

09:32AM 4        YOUR HONOR HAS BEEN FOLLOWING THE PHILLIPS CASE ALL ALONG.

09:32AM 5        AND IT JUST SIMPLY HAS NOTHING TO DO WITH INSTRUCTIONAL

09:32AM 6    ERROR, IT HAS NOTHING TO DO WITH INSTRUCTIONS, IT'S NOT IN THE

09:32AM 7    MODEL INSTRUCTIONS FOR A REASON AFTER MORE THAN 50 YEARS, AND

09:32AM 8    THERE'S NO REASON TO GIVE IT NOW.

09:32AM 9        AND I'M ALSO HAPPY TO RESPOND TO THE OMISSIONS POINT.

09:32AM 10            THE COURT:  YES, PLEASE.

09:32AM 11            MS. VOLKAR:  SO WE DID, THROUGH MEET AND CONFER,

09:32AM 12   AGREE TO DROP THE OMISSIONS FROM THE MIDDLE SENTENCE, THE

09:32AM 13   SECOND SENTENCE, BECAUSE WE BELIEVED THAT WAS TIED TO THE

09:32AM 14   OMISSIONS THEORY.

09:32AM 15       I THINK IT'S AGAIN NOTEWORTHY THAT IN THE LAST SENTENCE OF

09:32AM 16   THE MODEL, "OMISSIONS" IS NOT IN BRACKETS.  AND THAT'S BECAUSE

09:32AM 17   WHEN WE'RE TALKING ABOUT WHAT A DEFENDANT KNOWS OR IS AWARE OF,

09:32AM 18   THAT IS A BROADER STANDARD.  YOU CAN ENCOMPASS EVERYTHING THAT

09:33AM 19   IS WITHIN THAT PERSON'S KNOWLEDGE AND WHEELHOUSE, WHETHER IT

09:33AM 20   WAS TOLD TO THEM BY COCONSPIRATORS, WHETHER IT WAS SHOWED TO

09:33AM 21   THEM THROUGH DOCUMENTS, HOW THEY CAME TO BE AWARE OF IT.

09:33AM 22       THAT DOES RELATE TO THE KNOWINGLY STANDARD, AND THAT MAY

09:33AM 23   INCLUDE OMISSIONS.  THAT MAY INCLUDE FORWARDING AN EMAIL WITH

09:33AM 24   THE "FORTUNE" ARTICLE AND NOT POINTING OUT THAT IT HAS

09:33AM 25   INACCURATE STATEMENTS IN IT.

09:33AM 1          THAT ALL CAN BE ENCOMPASSED IN WHAT A DEFENDANT KNOWS.

09:33AM 2          IT'S A BROADER STANDARD FOR THE JURY TO CONSIDER WHAT ONE

09:33AM 3   PERSON IS AWARE OF WHEN WE'RE TALKING ABOUT THE MENS REA FOR A

09:33AM 4   CRIMINAL OFFENSE.

09:33AM 5          IT'S NOT AN OMISSIONS THEORY.  IT'S NOT TIED TO A

09:33AM 6   FIDUCIARY DUTY.  IT'S JUST THE WHOLE MIX OF INFORMATION THAT

09:33AM 7   GOES TO A DEFENDANT'S STATE OF MIND.

09:33AM 8          THE COURT:  AND THE GOVERNMENT IS NOT GOING TO

09:33AM 9   ARGUE -- BY WITHDRAWING YOUR ADMISSIONS IN THE OTHER

09:33AM 10  INSTRUCTIONS, YOU'VE INDICATED THAT YOU'RE NOT GOING TO ARGUE

09:33AM 11  AN OMISSIONS THEORY IN YOUR CASE.

09:34AM 12         MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

09:34AM 13         MS. SAHARIA:  I WOULD JUST NOTE THAT MS. VOLKAR'S

09:34AM 14  ARGUMENT ON THE PHILLIPS LANGUAGE SHOWS EXACTLY WHY THIS

09:34AM 15  INSTRUCTION IS NECESSARY.

09:34AM 16         I'M NOT AWARE OF ANY EVIDENCE THAT IN REALTIME MR. BALWANI

09:34AM 17  INFORMED MS. HOLMES OF WHAT MS. CHEUNG SAID.

09:34AM 18         AND MS. VOLKAR SUGGESTED THAT THE JURY COULD INFER THAT

09:34AM 19  COMMUNICATION OCCURRED SIMPLY FROM THE FACT THAT THEY'RE

09:34AM 20  ALLEGED COCONSPIRATORS.

09:34AM 21         THAT'S EXACTLY WHAT PHILLIPS PROHIBITS AND THAT'S EXACTLY

09:34AM 22  WHY THIS INSTRUCTION SHOULD BE GIVEN TO THE JURY.

09:34AM 23         THE COURT:  WELL, YOU'RE AWARE, I THINK, THAT

09:34AM 24  MS. VOLKAR'S MEMORY OF THE FACTS OF PHILLIPS IS ACCURATE.  IT

09:34AM 25  WAS REALLY ABOUT DOCUMENTS.  IT WAS LETTERS AND IT WAS THE LAND

09:34AM   1    FRAUD CASE, AND I THINK THEY ENGAGED A -- THE DEFENDANTS

09:34AM   2    ENGAGED AN ADVERTISING COMPANY TO ASSIST IN THEIR FRAUD,

09:34AM   3    SENDING THESE DOCUMENTS OUT.

09:34AM   4         WASN'T THAT THE ISSUE THERE, THE LETTERS?

09:34AM   5             MS. SAHARIA:  THAT'S RIGHT.  THE ISSUE THERE WAS

09:34AM   6    WHETHER INFORMATION, IN THAT CASE DOCUMENTS THAT WERE KNOWN TO

09:35AM   7    ONE COCONSPIRATOR, COULD BE -- WHETHER THE COCONSPIRATOR'S

09:35AM   8    KNOWLEDGE OF THOSE DOCUMENTS COULD BE IMPUTED TO THE OTHER

09:35AM   9    ALLEGED COCONSPIRATOR, AND THE NINTH CIRCUIT SAID, NO, IT COULD

09:35AM  10    NOT.

09:35AM  11         THAT'S THE SAME POINT THAT WE'RE MAKING HERE, WHICH IS TO

09:35AM  12    THE EXTENT THAT MR. BALWANI RECEIVED INFORMATION FROM THERANOS

09:35AM  13    EMPLOYEES, BUT THAT INFORMATION WAS NOT COMMUNICATED TO

09:35AM  14    MS. HOLMES, IT IS IMPROPER FOR THE JURY TO INFER THAT

09:35AM  15    MS. HOLMES HAS KNOWLEDGE OF THAT INFORMATION SIMPLY BECAUSE THE

09:35AM  16    GOVERNMENT IS ALLEGING THEM TO BE COCONSPIRATORS.

09:35AM  17         IT'S THE EXACT SAME PRINCIPLE.  THE FACT THAT WE HAVE HAD

09:35AM  18    SO MUCH EVIDENCE IN THIS CASE ALONG THESE LINES OF THINGS THAT

09:35AM  19    WERE NOT COMMUNICATED TO MS. HOLMES I THINK SHOWS WHY THIS

09:35AM  20    INSTRUCTION IS CRITICAL IN THIS CASE.

09:35AM  21             THE COURT:  WELL, WHAT -- YOUR POINT IS THAT THE

09:35AM  22    JURY MUST FIND THAT MS. HOLMES, IF THEY FIND THAT SHE ACTED

09:35AM  23    KNOWINGLY, THAT SHE HERSELF HAD KNOWLEDGE OF THE FACT, SHE

09:36AM  24    HERSELF.

09:36AM  25             MS. SAHARIA:  CORRECT.

09:36AM   1              THE COURT:  RIGHT.  AND NOT ANYONE ELSE.

09:36AM   2        I COULD SEE ADDING THAT ONE SENTENCE.

09:36AM   3              MS. SAHARIA:  THE FIRST SENTENCE, YOUR HONOR?

09:36AM   4              THE COURT:  YES.

09:36AM   5              MS. SAHARIA:  THAT WOULD BE BETTER THAN NEITHER OF

09:36AM   6        THEM.  WE DO REQUEST BOTH OF THEM.

09:36AM   7          AND I DO WORRY THAT IF THE GOVERNMENT MAKES ARGUMENT IN

09:36AM   8        CLOSING SIMILAR TO WHAT WE JUST HEARD, WE WILL BE COMING BACK

09:36AM   9        TO THE COURT AND ASKING THE COURT TO ADD THAT SECOND SENTENCE

09:36AM   10       TO THE EXTENT THAT THE ARGUMENT STRAYS INTO THIS IMPROPER

09:36AM   11       IMPUTING THEORY.

09:36AM   12         BUT I WOULD BE HAPPY IF THE COURT WOULD, AT A MINIMUM, ADD

09:36AM   13       THE FIRST SENTENCE, ALTHOUGH WE REQUEST THE SECOND SENTENCE AS

09:36AM   14       WELL.

09:36AM   15             THE COURT:  I THINK GIVING THE SECOND -- PARDON ME,

09:36AM   16       THE FIRST SENTENCE IS -- WHEN I LOOK AT IT, IT'S SOMEWHAT

09:36AM   17       CUMULATIVE OF THE FIRST SENTENCE, ISN'T IT?  IT'S A REPETITIVE

09:36AM   18       STATEMENT OF THE FIRST SENTENCE.

09:36AM   19         MS. VOLKAR?

09:36AM   20             MS. VOLKAR:  YOUR HONOR, THE GOVERNMENT JUST POINTS

09:37AM   21       OUT, AGAIN, THAT THE MODEL INSTRUCTION HAS BEEN AROUND FOR A

09:37AM   22       LONG TIME.  THIS CASE HAS BEEN OUT THERE FOR 50 YEARS.  THIS

09:37AM   23       HASN'T BEEN ADDED FOR A REASON.  IT WASN'T EVEN AN

09:37AM   24       INSTRUCTIONAL ERROR CASE.  IT WAS ABOUT AN EVIDENTIARY ISSUE.

09:37AM   25         YOUR HONOR HAS BEEN FOLLOWING THIS CASE IN MAKING

8851

```
09:37AM  1    EVIDENTIARY RULINGS AND THE GOVERNMENT IS NOT CONTESTING THAT

09:37AM  2    HERE.

09:37AM  3         THERE'S JUST NO NEED TO ADD THIS TO THE TRIED AND TRUE

09:37AM  4    STANDARD OF KNOWINGLY THAT IS USED DAY IN AND DAY OUT IN WIRE

09:37AM  5    FRAUD CASES, IN CRIMINAL CASES.

09:37AM  6         I JUST -- I REALLY DON'T -- I FAIL TO SEE HOW THIS ONE

09:37AM  7    CASE FROM 1965 THAT ISN'T EVEN AN INSTRUCTIONAL ERROR CASE

09:37AM  8    WARRANTS CHANGING THE MODEL INSTRUCTION GIVEN IN EVERY WIRE

09:37AM  9    FRAUD CASE.

09:37AM 10         THE COURT:  WELL, TO THE POINT THAT MS. VOLKAR

09:37AM 11    MAKES, SHE'S -- EXCUSE ME, MS. SAHARIA MAKES, SHE'S CONCERNED

09:37AM 12    THAT THERE MIGHT BE SOME PHILLIPS ISSUE.

09:37AM 13         I DON'T SEE IT, FRANKLY.  I THINK THE FACTS ARE

09:37AM 14    SIGNIFICANTLY DISTINGUISHABLE IN THAT CASE.

09:37AM 15         BUT I'LL GIVE THAT SENTENCE, THAT ONE SENTENCE.

09:38AM 16         I'M NOT GOING TO GIVE THE SECOND SENTENCE, MS. SAHARIA.

09:38AM 17         MS. SAHARIA:  THANK YOU, YOUR HONOR.

09:38AM 18         THE COURT:  BUT I'LL GIVE THE FIRST SENTENCE.

09:38AM 19    INSTRUCTION 26, I THINK YOU WANT TO REMOVE "ALLEGED."

09:38AM 20         MS. SAHARIA:  WE WANT TO ADD "ALLEGED."

09:38AM 21         THE COURT:  EXCUSE ME, YOU WANT TO ADD "ALLEGED."

09:38AM 22         MS. VOLKAR:  YOUR HONOR, EXCUSE ME.  SORRY TO CIRCLE

09:38AM 23    BACK.  WHAT ABOUT THE OMISSIONS POINT?

09:38AM 24         THE COURT:  I'M GOING TO LEAVE THAT.

09:38AM 25         MS. VOLKAR:  OKAY.  THANK YOU.
```

| | | |
|---|---|---|
| 09:38AM | 1 | THE COURT: MS. VOLKAR, ALLEGED? |
| 09:38AM | 2 | MS. VOLKAR: YOUR HONOR, THE GOVERNMENT OBJECTS TO |
| 09:38AM | 3 | REFERRING TO THEM AS ALLEGED VICTIMS. WE UNDERSTAND WHY THEY |
| 09:38AM | 4 | WANT TO ADD "ALLEGED CRIME" OR "ALLEGED CONSPIRACY," EVEN |
| 09:38AM | 5 | THOUGH THE MODEL INSTRUCTIONS USED IN EVERY CASE DON'T HAVE |
| 09:38AM | 6 | THEM IN THERE, AND OF COURSE THAT IS TRUE OF EVERY CRIMINAL |
| 09:38AM | 7 | CASE. |
| 09:38AM | 8 | THESE ARE VICTIMS, AND THE DEFENSE HAS REJECTED THAT ALL |
| 09:38AM | 9 | ALONG, AND THEY ARE ENTITLED TO THEIR VIEW, BUT THEY ARE |
| 09:38AM | 10 | VICTIMS AND I THINK IT DOES A DISSERVICE TO CALLED THEM ALLEGED |
| 09:38AM | 11 | VICTIMS. IT'S REALLY NOT FAIR. |
| 09:38AM | 12 | MS. SAHARIA: YOUR HONOR, IT'S THE GOVERNMENT'S -- |
| 09:39AM | 13 | THEIR CLAIM IS THAT THEY'RE VICTIMS AND WE'RE, OF COURSE, |
| 09:39AM | 14 | ENTITLED TO DISPUTE THAT THEY ARE VICTIMS. |
| 09:39AM | 15 | THE WORD "VICTIMS" CONNOTES THAT A CRIME HAS OCCURRED. |
| 09:39AM | 16 | THIS WHOLE CASE IS ABOUT WHETHER A CRIME HAS OCCURRED. |
| 09:39AM | 17 | THE COURT: UNDERSTOOD. BUT "ALLEGED" IS NOT IN THE |
| 09:39AM | 18 | MODEL INSTRUCTIONS. |
| 09:39AM | 19 | MS. SAHARIA: THIS IS NOT A MODEL INSTRUCTION. THIS |
| 09:39AM | 20 | IS A GOVERNMENT WRITTEN INSTRUCTION. |
| 09:39AM | 21 | THE COURT: I UNDERSTAND. BUT "ALLEGED" IS NOT -- |
| 09:39AM | 22 | YOU DON'T SEE THAT IN THE INSTRUCTIONS WHERE YOU'VE ASKED ME TO |
| 09:39AM | 23 | ADD IT, AND I THINK I -- |
| 09:39AM | 24 | MS. SAHARIA: I DON'T THINK THE WORD "VICTIM" IS IN |
| 09:39AM | 25 | THE INSTRUCTIONS EITHER. TO BE FAIR, THE WORD "VICTIM" IS NOT |

09:39AM 1    IN THE MODEL INSTRUCTIONS EITHER.

09:39AM 2         THIS IS NOT A MODEL INSTRUCTION.  THIS IS AN INSTRUCTION

09:39AM 3    THAT THE GOVERNMENT WROTE, AND WE HAVE AGREED TO THE CONCEPT OF

09:39AM 4    THIS INSTRUCTION AS PART OF THE MEET AND CONFER PROCESS.  WE

09:39AM 5    DID NOT OBJECT TO THIS INSTRUCTION.

09:39AM 6         WE SIMPLY OBJECT TO CALLING INVESTORS VICTIMS WHEN THAT'S

09:39AM 7    PART OF THE GOVERNMENT'S BURDEN OF PROOF.

09:39AM 8              THE COURT:  WHAT SHOULD THEY BE CALLED?

09:39AM 9              MS. SAHARIA:  ALLEGED VICTIMS.  THE GOVERNMENT

09:39AM 10   ALLEGES THAT THEY'RE VICTIMS.  THAT'S WHAT THEY ALLEGE IN THE

09:40AM 11   INDICTMENT.

09:40AM 12             THE COURT:  WHAT SHOULD THEY BE CALLED IF THEY'RE

09:40AM 13   NOT CALLED VICTIMS?

09:40AM 14             MS. SAHARIA:  YOU COULD SAY "INVESTORS' CONDUCT," IT

09:40AM 15   COULD BE "WIRE FRAUD," THE TITLE COULD BE "WIRE FRAUD

09:40AM 16   INVESTORS' CONDUCT," AND THEN THE FIRST SENTENCE COULD READ,

09:40AM 17   "AN INVESTOR'S NEGLIGENCE IS NOT A DEFENSE TO WIRE FRAUD."

09:40AM 18        THE NEXT SENTENCE REFERS TO THEM AS INVESTORS.  THIS

09:40AM 19   SENTENCE IS ABOUT THE INVESTORS.

09:40AM 20        SO I THINK, GIVEN THAT THE SECOND SENTENCE EXPRESSLY USES

09:40AM 21   THE WORD "INVESTORS," THE COURT COULD SUBSTITUTE "INVESTORS"

09:40AM 22   FOR "VICTIMS" AND THAT WOULD ALSO RESOLVE OUR CONCERN.

09:40AM 23        (PAUSE IN PROCEEDINGS.)

09:40AM 24             MS. VOLKAR:  YOUR HONOR, MAY I BE HEARD ON THAT

09:40AM 25   POINT?

8854

09:40AM 1          THE COURT:  YES.

09:40AM 2          MS. VOLKAR:  I FEEL LIKE WE'RE BACK SLIDING.  THIS

09:40AM 3    IS AN INSTRUCTION THAT, THROUGH THE MEET AND CONFER PROCESS,

09:40AM 4    THE PARTIES ACTUALLY SUBSTANTIALLY AGREED ABOUT.  THAT, OF

09:41AM 5    COURSE, DIDN'T HAVE TO BE THE CASE.

09:41AM 6          BUT WHEN WE CAME BEFORE YOUR HONOR THIS PAST FRIDAY, THE

09:41AM 7    WORD "ALLEGED" WASN'T IN THERE AND THE PARTIES AGREED TO

09:41AM 8    EVERYTHING BUT THE WORD "OMISSIONS" IN THIS INSTRUCTION, AND

09:41AM 9    NOW WE'RE MOVING FROM NOT JUST ADDING THE WORD "ALLEGED" ON

09:41AM 10   FRIDAY AFTER WE HAD THE HEARING BEFORE YOUR HONOR, BUT CHANGING

09:41AM 11   IT TO A DIFFERENT WORD ENTIRELY.

09:41AM 12         IF THE DEFENSE DISAGREED WITH THIS INSTRUCTION, WE COULD

09:41AM 13   HAVE CONTINUED TO DISCUSS THAT DURING THE MEET AND CONFER

09:41AM 14   PROCESS.

09:41AM 15         SO I STRONGLY OBJECT TO THE BACK SLIDING OF PROGRESS THAT

09:41AM 16   WE'RE DOING HERE, AND I CERTAINLY OBJECT TO THE CONCEPT THAT

09:41AM 17   PEOPLE WHO LOST MONEY IN THIS SCHEME, WHETHER OR NOT MS. HOLMES

09:41AM 18   WAS PART OF IT, THERE ARE CERTAINLY OTHER WAYS THAT THE

09:41AM 19   DEFENDANTS CAN POINT TO YOU.

09:41AM 20         THESE PEOPLE DID LOSE MONEY BECAUSE THEY WERE LIED TO.

09:41AM 21   THEY ARE VICTIMS.

09:41AM 22         I THINK TRYING TO REFER TO THEM AS INVESTORS IS JUST ALONG

09:41AM 23   THE LINES OF BLAMING THE VICTIM THAT YOUR HONOR HAS POINTED OUT

09:41AM 24   THE DEFENSE SHOULD NOT BE ALLOWED TO DO, BOTH IN THE MOTIONS IN

09:41AM 25   LIMINE STAGE AND THROUGHOUT THE TRIAL.

09:42AM  1      THIS INSTRUCTION IS A DIRECT RESPONSE TO THAT AND AN

09:42AM  2  ATTEMPT TO PUT GUARDRAILS IN, AND NOW THEY'RE TRYING TO GO BACK

09:42AM  3  TO, WELL, THEY'RE JUST INVESTORS AND MAYBE THEY DESERVED TO

09:42AM  4  LOSE MONEY.

09:42AM  5      THAT'S NOT PROPER, YOUR HONOR.

09:42AM  6      MS. SAHARIA:  YOUR HONOR, WE'RE NOT ARGUING THAT

09:42AM  7  MAYBE THEY DESERVED TO LOSE MONEY.  THAT'S NOT A FAIR ARGUMENT

09:42AM  8  FROM MS. VOLKAR.

09:42AM  9      BOTH PARTIES, AS WE'VE BEEN CRAFTING THESE INSTRUCTIONS,

09:42AM 10  HAVE REALIZED THINGS THAT WE OBJECT TO.

09:42AM 11      WE REALIZED ON FRIDAY THAT WE OBJECT TO THE WORD "VICTIM."

09:42AM 12  THEY REALIZED THEY WANTED TO ADD THE NAMES OF THE INVESTORS.

09:42AM 13  WE'RE ALL ACTING IN GOOD FAITH HERE.

09:42AM 14      BUT THE FACT OF WHETHER THEY'RE VICTIMS PRESUPPOSES THAT A

09:42AM 15  CRIME HAS OCCURRED, AND THAT'S WHAT THE JURY IS SUPPOSED TO

09:42AM 16  DECIDE, SO LET'S NOT CALL THEM AFFIRMATIVELY VICTIMS.

09:42AM 17      THE COURT:  IS THERE ANY QUESTION THAT THEY LOST

09:42AM 18  MONEY, THEY LOST THEIR INVESTMENT?

09:42AM 19      MS. SAHARIA:  NO, YOUR HONOR.  BUT THAT DOESN'T MEAN

09:42AM 20  THEY'RE A VICTIM.

09:42AM 21      THE COURT:  SHOULD WE CALL THEM THEN "INVESTORS WHO

09:42AM 22  LOST THEIR INVESTMENT," OR WORDSMITH THAT SOMEHOW SO THAT

09:42AM 23  REFLECTS WHAT REALLY HAPPENED?

09:43AM 24      MS. SAHARIA:  THE INDICTMENT --

09:43AM 25      THE COURT:  YOU SUGGEST THAT THEY'RE NOT VICTIMS YET

09:43AM  1    BECAUSE THAT HAS NOT YET BEEN PROVED.

09:43AM  2         BUT WHAT WE KNOW IS THAT THEY HAVE LOST MONEY.

09:43AM  3              MS. SAHARIA:  THE INDICTMENT CALLS THEM "INVESTORS,"

09:43AM  4    SO LET'S USE THE WORD OF THE INDICTMENT AND CALL THEM

09:43AM  5    "INVESTORS," YOUR HONOR.

09:43AM  6              THE COURT:  AND SHOULD WE IDENTIFY THEM IN SOME

09:43AM  7    MANNER AS THE INVESTORS WHO LOST MONEY SOMEHOW?  DO YOU WANT TO

09:43AM  8    WORDSMITH THAT?  I'LL GIVE YOU A CHANCE TO DO THAT WHILE WE

09:43AM  9    MOVE ON TO THE OTHERS.

09:43AM  10             MS. SAHARIA:  I WILL CONSIDER THAT WHILE WE TALK

09:43AM  11   ABOUT THE CMS REPORT, YOUR HONOR.

09:43AM  12             THE COURT:  RIGHT.

09:43AM  13             MS. SAHARIA:  IF WE COULD SKIP THE CMS REPORT AND

09:43AM  14   JUST BRIEFLY TOUCH ON THE VERDICT FORM?  I THINK THAT'S THE

09:43AM  15   ONLY REMAINING ISSUE.

09:43AM  16             THE COURT:  OKAY.

09:43AM  17             MS. SAHARIA:  THE PARTIES ARE IN AGREEMENT AS TO THE

09:43AM  18   SUBSTANCE OF THE VERDICT FORM, WITH ONE EXCEPTION, WHICH IS

09:43AM  19   IT'S OUR POSITION THAT THE WORD "NOT GUILTY" SHOULD GO BEFORE

09:43AM  20   THE WORD "GUILTY."  GIVEN THE PRESUMPTION OF INNOCENCE, IT'S

09:43AM  21   APPROPRIATE FOR THE WORD "NOT GUILTY" TO GO FIRST SINCE

09:44AM  22   MS. HOLMES IS PRESUMED TO BE INNOCENT.

09:44AM  23             THE COURT:  UNDERSTOOD.

09:44AM  24             MS. VOLKAR:  YOUR HONOR, WE JUST MIMICKED, AS FAR AS

09:44AM  25   WE KNOW, EVERY VERDICT FORM THAT WE'RE USED TO SEEING.  IT JUST

09:44AM  1    TENDS TO READ, IN ORDER, GUILTY/NOT GUILTY, AND I THINK THAT,

09:44AM  2    AS WITH A LOT OF THE INSTRUCTIONS, THAT THE DEFENSE IS OVERLY

09:44AM  3    WORDSMITHING AND TRYING TO SPLIT HAIRS WHERE IT'S REALLY JUST

09:44AM  4    UNNECESSARY.

09:44AM  5            THE COURT:  THANK YOU.

09:44AM  6        I'LL LEAVE THE VERDICT FORM AS GUILTY/NOT GUILTY.  THAT'S

09:44AM  7    WHAT I'VE DONE IN MY PRACTICE.

09:44AM  8            MS. SAHARIA:  UNDERSTOOD.

09:44AM  9            THE COURT:  I DON'T THINK THERE'S ANYTHING UNTOWARD

09:44AM  10   ABOUT IT.  I DON'T THINK IT PREJUDICES A DEFENDANT AT ALL.

09:44AM  11       THE JURY IS GOING TO BE ADVISED OF THE PRESUMPTION OF

09:44AM  12   INNOCENCE.  THEY WERE THOROUGHLY VETTED ON THAT CONCEPT DURING

09:44AM  13   VOIR DIRE BOTH FROM COUNSEL AND FROM THE COURT, AND I'VE DONE

09:44AM  14   THAT -- I THINK I'VE MADE SOME COMMENTS ABOUT THAT THROUGHOUT

09:44AM  15   THE TRIAL IN REGARDS TO CERTAIN TOPICS THAT HAVE COME UP.

09:44AM  16           MS. SAHARIA:  BEFORE I CEDE THE PODIUM TO MR. LEMENS

09:44AM  17   ON THE CMS ISSUE, I JUST KIND OF WANTED TO MAKE ONE POINT CLEAR

09:45AM  18   WITH RESPECT TO OUR OBJECTIONS, AND THEN TALK ABOUT THE PROCESS

09:45AM  19   OF READING THE INSTRUCTIONS TO THE JURY.

09:45AM  20       IN THE PRIOR CHARGE CONFERENCES, OF COURSE WE DIDN'T HAVE

09:45AM  21   DRAFT INSTRUCTIONS YET FROM THE COURT, SO WE WERE OBJECTING TO

09:45AM  22   EITHER THE GOVERNMENT'S PROPOSAL OR THE MODEL INSTRUCTIONS.

09:45AM  23       I JUST WANT TO MAKE CLEAR AND REITERATE TO THE EXTENT THAT

09:45AM  24   THE COURT HAS NOW ADOPTED THOSE MODELS OR ADOPTED THE

09:45AM  25   GOVERNMENT'S PROPOSALS, OF COURSE WE HAVE THE SAME OBJECTIONS,

| | | |
|---|---|---|
| 09:45AM | 1 | AND I JUST WANTED TO REITERATE THOSE FOR THE RECORD. |
| 09:45AM | 2 | THE COURT:  OKAY. |
| 09:45AM | 3 | MS. SAHARIA:  AND THEN WITH RESPECT TO THE READING |
| 09:45AM | 4 | OF THE INSTRUCTIONS TO THE JURY, AS THE COURT NO DOUBT KNOWS, |
| 09:45AM | 5 | RULE 30(D) REQUIRES THAT THERE BE, OR AT LEAST SUGGESTS, THAT |
| 09:45AM | 6 | THERE BE ANOTHER OBJECTION RIGHT AFTER THE INSTRUCTIONS ARE |
| 09:45AM | 7 | READ TO THE JURY BEFORE THEY RETIRE. |
| 09:45AM | 8 | THE NINTH CIRCUIT HAS ALLOWED THAT TO OCCUR BY AN |
| 09:45AM | 9 | INCORPORATING OF THE PREVIOUSLY STATED OBJECTIONS. |
| 09:45AM | 10 | WE ARE ENTITLED TO DO THAT OUTSIDE OF THE HEARING OF THE |
| 09:46AM | 11 | JURY, BUT OF COURSE WE'RE NOT HAVING BENCH CONFERENCES WITH THE |
| 09:46AM | 12 | COURT DUE TO THE COVID PROTOCOLS. |
| 09:46AM | 13 | SO I WASN'T SURE IF THE COURT HAD AN IDEA AS TO HOW WE |
| 09:46AM | 14 | MIGHT DO THAT OUTSIDE OF THE HEARING OF THE JURY. |
| 09:46AM | 15 | I THOUGHT PERHAPS THE COURT COULD STATE ON THE RECORD, IF |
| 09:46AM | 16 | THE GOVERNMENT WILL CONCEDE TO THIS, "I NOW INCORPORATE BOTH |
| 09:46AM | 17 | PARTIES' PRIOR OBJECTIONS," AND JUST ASK IF THERE ARE ANY |
| 09:46AM | 18 | ADDITIONAL OBJECTIONS AT THAT TIME. |
| 09:46AM | 19 | I JUST WOULD THROW THAT OUT AS A PROPOSAL FOR HOW TO |
| 09:46AM | 20 | HANDLE THAT. |
| 09:46AM | 21 | THE COURT:  WELL, THANK YOU. |
| 09:46AM | 22 | THE COURT DOES, AT THE CONCLUSION OF THE READING OF THE |
| 09:46AM | 23 | INSTRUCTIONS, THE COURT DOES TURN TO EACH TABLE AND ASK, "ARE |
| 09:46AM | 24 | THERE ANY OBJECTIONS TO THE COURT'S READING OF THE |
| 09:46AM | 25 | INSTRUCTIONS?" |

```
09:46AM   1         AND I THINK THE SPIRIT OF THAT IS, DID THE COURT MAKE A
09:46AM   2    MISTAKE --
09:46AM   3              MS. SAHARIA:  UNDERSTOOD, YOUR HONOR.
09:46AM   4              THE COURT:  -- WHEN IT READ WHAT WE HAD PREVIOUSLY
09:46AM   5    AGREED TO.  THAT'S WHY WE'RE MEETING THIS MORNING.
09:46AM   6              MS. SAHARIA:  YES.
09:46AM   7              THE COURT:  AND THAT'S THE REAL SPIRIT, I BELIEVE,
09:46AM   8    OF THAT QUESTION, IS IF THE COURT MADE A MISTAKE IN READING,
09:46AM   9    THAT'S THE TIME TO CORRECT IT.
09:47AM  10         ARE YOU SUGGESTING, MS. SAHARIA, THAT IF YOU ANSWER "NO
09:47AM  11    OBJECTION" TO THAT, THAT MEANS THAT YOU'RE SAYING --
09:47AM  12              MS. SAHARIA:  I HAVE SOMETIMES SEEN THE GOVERNMENT
09:47AM  13    MAKE THAT ARGUMENT -- I'M NOT SUGGESTING THAT THESE PROSECUTORS
09:47AM  14    WOULD -- BUT THERE'S SOME CASE LAW THAT SUGGESTS THAT IT'S
09:47AM  15    APPROPRIATE AT THAT TIME JUST TO SAY "WE INCORPORATE BY
09:47AM  16    REFERENCE OUR PRIOR OBJECTIONS," AND LEAVE IT AT THAT.
09:47AM  17         SO I JUST WANTED TO THROW OUT THAT WE WOULD FEEL MORE
09:47AM  18    COMFORTABLE IF WE HAD THE OPPORTUNITY TO SAY "WE INCORPORATE
09:47AM  19    OUR PRIOR OBJECTIONS."
09:47AM  20              THE COURT:  IN FRONT OF THE JURY?
09:47AM  21              MS. SAHARIA:  NO, WE PREFER NOT TO DO THAT IN FRONT
09:47AM  22    OF THE JURY.
09:47AM  23              THE COURT:  SO WHEN I ASK THE QUESTION, "DO YOU HAVE
09:47AM  24    ANY OBJECTIONS TO THE COURT'S READING OF THE INSTRUCTIONS," AND
09:47AM  25    IF YOU DO --
```

09:47AM  1          MS. SAHARIA:  IF WE DO, WE WOULD SAY, "YES, YOUR

09:47AM  2   HONOR," AND WE WOULD HAVE TO EXCUSE THE JURY.

09:47AM  3       BUT I ASSUME THE COURT WILL READ THEM PROPERLY, SO I DON'T

09:47AM  4   ANTICIPATE THAT HAPPENING.

09:47AM  5       PERHAPS WE CAN JUST SAY "NOTHING FURTHER, YOUR HONOR," AND

09:47AM  6   THEN YOUR HONOR CAN JUST SAY SOMETHING LIKE, "I UNDERSTAND THE

09:48AM  7   PARTIES TO INCORPORATE THEIR PRIOR OBJECTIONS," SOMETHING LIKE

09:48AM  8   THAT.

09:48AM  9          THE COURT:  CAN'T WE DO THAT IN ADVANCE OF THAT?

09:48AM  10         MS. SAHARIA:  WE COULD DO THAT RIGHT IN ADVANCE OF

09:48AM  11  THE READING, WHENEVER THERE'S AN APPROPRIATE BREAK, MAYBE WE

09:48AM  12  COULD DO SOMETHING LIKE THAT.

09:48AM  13         THE COURT:  OKAY.

09:48AM  14      MS. VOLKAR?

09:48AM  15         MS. VOLKAR:  YOUR HONOR, I DON'T SEE ANY REASON WHY

09:48AM  16  THE PARTIES CAN'T DO WHAT THEY'VE DONE SORT OF AT OTHER POINTS

09:48AM  17  DURING THE TRIAL IN FRONT OF THE JURY WHEN THERE HAS BEEN

09:48AM  18  LENGTHY DISCUSSION THE MORNING OF, SUCH AS "WE INCORPORATE OUR

09:48AM  19  PRIOR DISCUSSION," OR "NOTHING FURTHER BEYOND OUR PRIOR

09:48AM  20  DISCUSSION" OR "NOTHING FURTHER BEYOND OUR PRIOR OBJECTIONS."

09:48AM  21  I THINK THE PARTIES HAVE BEEN DOING THAT THROUGHOUT THIS TRIAL.

09:48AM  22      PERHAPS I'M NOT FULLY SEEING THE ISSUE HERE, BUT I GUESS

09:48AM  23  THAT'S THE GOVERNMENT'S POSITION IS SOMETHING LIKE THAT COULD

09:48AM  24  BE SAID.

09:48AM  25         MS. SAHARIA:  I THINK WE COULD SAY "NOTHING FURTHER

09:48AM  1    IN ADDITION, YOUR HONOR."  BUT IF THE COURT COULD THEN SAY,

09:48AM  2    "UNDERSTOOD, THE PRIOR OBJECTIONS ARE INCORPORATED," SOMETHING

09:48AM  3    LIKE THAT WOULD BE HELPFUL TO US, YOUR HONOR.

09:48AM  4         THE COURT:  WELL, THERE'S NOTHING MAGICAL ABOUT

09:48AM  5    READING THE INSTRUCTIONS THAT SOMEHOW EVISCERATES YOUR PRIOR

09:49AM  6    OBJECTIONS.  THEY'RE IN THE RECORD.

09:49AM  7         MS. SAHARIA:  YES, YOUR HONOR.

09:49AM  8         THE COURT:  AND THEY'RE PRESERVED.

09:49AM  9         MS. SAHARIA:  THANK YOU.

09:49AM  10        THE COURT:  BUT IF YOU WOULD LIKE ME, OUT OF AN

09:49AM  11   ABUNDANCE OF CAUTION, TO ALLOW YOU TO STATE THAT, I'LL LET YOU

09:49AM  12   STATE THAT ON THE RECORD IF YOU WOULD LIKE.

09:49AM  13        MS. SAHARIA:  OKAY.  THANK YOU.

09:49AM  14        MS. VOLKAR:  THAT'S FINE WITH THE GOVERNMENT.  THANK

09:49AM  15   YOU.

09:49AM  16        MS. SAHARIA:  I'M GOING TO TURN THE PODIUM OVER TO

09:49AM  17   MR. LEMENS.

09:49AM  18        THE COURT:  OKAY.

09:49AM  19      (PAUSE IN PROCEEDINGS.)

09:49AM  20        THE COURT:  MS. SAHARIA, MS. KRATZMANN JUST PROVIDED

09:49AM  21   ME A COPY OF THE VERDICT FORM, AND IS THERE A NUMERICAL --

09:49AM  22   LET'S SEE, IT'S ON PAGE 2.

09:49AM  23        MS. SAHARIA:  WELL, BECAUSE A COUNT WAS ELIMINATED,

09:49AM  24   WE SKIPPED THAT NUMBER SO THAT THE NUMBERS IN THE PARAGRAPHS

09:49AM  25   CORRESPOND TO THE NUMBERS OF THE COUNT.  THE COURT COULD CHOOSE

8862

| | | |
|---|---|---|
| 09:49AM | 1 | TO DO IT DIFFERENTLY.  THAT WAS THE REASON FOR THAT MISSING |
| 09:49AM | 2 | NUMBER. |
| 09:49AM | 3 | THE COURT:  OKAY. |
| 09:49AM | 4 | MS. SAHARIA:  THAT'S THE COUNT THAT WAS DISMISSED BY |
| 09:49AM | 5 | THE GOVERNMENT. |
| 09:49AM | 6 | THE COURT:  MS. VOLKAR? |
| 09:50AM | 7 | MS. VOLKAR:  THE GOVERNMENT AGREED TO THAT |
| 09:50AM | 8 | FORMULATION.  IT JUST MAKES IT A LITTLE BIT EASIER, EIGHT IS |
| 09:50AM | 9 | EIGHT AND TEN IS TEN. |
| 09:50AM | 10 | BUT WE DON'T OBJECT IF THE COURT WANTS TO NUMERICALLY |
| 09:50AM | 11 | ORDER THE PARAGRAPHS. |
| 09:50AM | 12 | (DISCUSSION OFF THE RECORD.) |
| 09:50AM | 13 | THE COURT:  WELL, I THINK WE HAVE AN INTELLIGENT AND |
| 09:50AM | 14 | SMART JURY, BUT THE CONCERN IS WHETHER OR NOT THEY'LL NOT |
| 09:50AM | 15 | UNDERSTAND THAT NINE IS GONE.  DO WE NEED TO ADD SOMETHING |
| 09:50AM | 16 | HERE, OR WOULD THAT BE TOO MUCH INFORMATION FOR THEM? |
| 09:50AM | 17 | MS. SAHARIA:  I THINK THE GOVERNMENT, AS I RECALL, |
| 09:50AM | 18 | DISMISSED THAT COUNT IN FRONT OF THE JURY, SO I DON'T THINK |
| 09:50AM | 19 | THERE'S ANY NEED TO ADD THAT TO THE VERDICT FORM. |
| 09:50AM | 20 | I DON'T FEEL STRONGLY ABOUT THE NUMBERING OF THE |
| 09:50AM | 21 | PARAGRAPHS.  IF YOUR HONOR WANTS THEM TO GO IN NUMERICAL ORDER |
| 09:51AM | 22 | AND SKIP NINE, THAT'S FINE WITH ME. |
| 09:51AM | 23 | THE COURT:  WELL, WE'RE DOING SO MUCH TO HELP THIS |
| 09:51AM | 24 | JURY UNDERSTAND THINGS. |
| 09:51AM | 25 | MS. VOLKAR:  I AGREE, YOUR HONOR. |

UNITED STATES COURT REPORTERS

**ER-12438**

09:51AM 1    I WOULD RATHER JUST NUMERICALLY ORDER THE PARAGRAPHS THAN

09:51AM 2    TRY TO CONTINUE TO ADD ANYTHING TO THE VERDICT FORM.  I THINK

09:51AM 3    THE PARTIES HAVE DONE A LOT IN MEET AND CONFER THUS FAR AND

09:51AM 4    THERE'S NO REASON TO INTERJECT SOMETHING FURTHER IN THAT.

09:51AM 5         THE COURT:  SO YOU'D LIKE TO RENUMBER THEM SO

09:51AM 6    THERE'S NO SKIP, NO BREAK?

09:51AM 7         MS. VOLKAR:  I PREFER THAT.  I DO THINK I'M FINE THE

09:51AM 8    WAY IT IS, BUT I'M IN THE SAME POSITION AS MS. SAHARIA, I DON'T

09:51AM 9    HAVE A STRONG POSITION ABOUT RENUMBERING IF THE COURT THINKS

09:51AM 10   THAT WOULD BE EASIER FOR THE JURY.

09:51AM 11        MS. SAHARIA:  IT'S UP TO THE COURT'S PREFERENCE.

09:51AM 12        THE COURT:  WELL, WHAT DO YOU THINK IS GOING TO BE

09:51AM 13   EASIER FOR THE JURY TO CAPTURE?  ARE WE GOING TO HAVE JURY

09:51AM 14   CONFUSION IF THERE IS NO NINE, OR WILL THEY UNDERSTAND THAT

09:51AM 15   NINE WAS DISMISSED?

09:51AM 16        MS. SAHARIA:  THEY WERE TOLD ABOUT THE DISMISSAL IN

09:52AM 17   THEIR PRESENCE, SO I'M NOT SURE THAT THEY WILL BE CONFUSED.

09:52AM 18        THE COURT:  I SUPPOSE WE STILL HAVE TO TALK ABOUT IF

09:52AM 19   THEY'RE GOING TO GET SOMETHING, EITHER THE INDICTMENT OR

09:52AM 20   SOMETHING THAT IS LIKE THE INDICTMENT THAT HAS THE FULSOME.  I

09:52AM 21   KNOW YOU WERE CONCERNED ABOUT THAT, MS. SAHARIA, AND I DON'T

09:52AM 22   KNOW IF THE GOVERNMENT STILL INTENDS TO DO SOMETHING TO PROVIDE

09:52AM 23   THEM WITH A LIST OF THE CHARGES.

09:52AM 24        MS. SAHARIA:  I THINK I HEARD MS. VOLKAR SAY THAT

09:52AM 25   THEY THINK THAT THE INSTRUCTIONS ARE SUFFICIENT FOR THAT

09:52AM  1      PURPOSE, AND THAT'S OUR POSITION AS WELL.

09:52AM  2           I'M -- I WILL GO BACK AND LOOK AT JUST THE COUNTS, THE

09:52AM  3      COUNT PARAGRAPHS, AND I CAN CONFER WITH MY TEAM ABOUT THAT.

09:52AM  4                THE COURT:  OKAY.

09:52AM  5                MS. SAHARIA:  BUT OUR POSITION IS THAT WE THINK THE

09:52AM  6      INSTRUCTIONS ARE SUFFICIENT.

09:52AM  7                THE COURT:  ALL RIGHT.  THANK YOU.

09:52AM  8           I'LL LEAVE IT AS IS.  IT'S MY EXPERIENCE THAT COUNSEL

09:52AM  9      ALWAYS REFERENCE THE VERDICT FORM MORE -- USUALLY REFERENCE THE

09:52AM 10      VERDICT FORM WHEN THEY ASK THE JURY TO DO WHAT THEY WOULD LIKE

09:52AM 11      THEM TO DO, AND THEY REFERENCE THE VERDICT FORM AND IT'S

09:52AM 12      AVAILABLE FOR YOU TO DO THAT IF YOU WISH, IF YOU THINK

09:52AM 13      CLARIFICATION IS NEEDED.

09:52AM 14                MS. SAHARIA:  THANK YOU.

09:52AM 15                THE COURT:  SO I'LL LEAVE IT AS IT IS WITHOUT

09:53AM 16      RENUMBERING IT.

09:53AM 17           OKAY?

09:53AM 18                MS. SAHARIA:  THANK YOU.

09:53AM 19                MS. VOLKAR:  THANK YOU, YOUR HONOR.

09:53AM 20           ONE LAST POINT BEFORE MS. SAHARIA LEAVES THE PODIUM.

09:53AM 21           GOING BACK TO THE ALLEGED VICTIM OR THE VICTIM'S CONDUCT,

09:53AM 22      I WOULD LIKE TO SAY THAT THE GOVERNMENT'S POSITION IS THAT IF

09:53AM 23      WORDSMITHING IS GOING TO OCCUR, THEN "ALLEGED VICTIM" IS BETTER

09:53AM 24      THAN -- I KNOW THERE WERE MULTIPLE OTHER FORMULATIONS THAT THE

09:53AM 25      COURT WAS GOING TO CONSIDER, AND I KNOW MS. SAHARIA WAS GOING

09:53AM  1    TO THINK ABOUT THEM.

09:53AM  2        SO I WANTED TO, FOR HER BENEFIT, SAY THAT THE GOVERNMENT'S

09:53AM  3    PREFERENCE WOULD BE TO ADD JUST "ALLEGED VICTIM" RATHER THAN TO

09:53AM  4    GO BACK AND TRY AND RESTART NEGOTIATING ABOUT WHAT THE PROPER

09:53AM  5    DESCRIPTION OF THIS CLASS OF INDIVIDUALS IS.

09:53AM  6            THE COURT:  ALL RIGHT.  THANK YOU.

09:53AM  7            MS. SAHARIA:  THAT'S FINE WITH ME, YOUR HONOR.

09:53AM  8            THE COURT:  YOU'RE STILL GOING TO WORDSMITH THOUGH.

09:53AM  9            MS. SAHARIA:  I WILL, BUT IT SOUNDS LIKE MS. VOLKAR

09:53AM  10   WOULD TAKE "ALLEGED VICTIM" OVER ANY WORDSMITHING, BUT I'M

09:53AM  11   HAPPY TO GO BACK AND LOOK AT IT.

09:53AM  12           THE COURT:  WELL, LET'S SEE HOW CREATIVE YOU CAN BE

09:53AM  13   WHILE I'M TALKING TO MR. LEMENS.  I'M SURE YOU'LL COME UP WITH

09:53AM  14   SOMETHING.

09:53AM  15           MS. SAHARIA:  OKAY.  I'LL TRY TO BE CREATIVE,

09:54AM  16   YOUR HONOR.

09:54AM  17           THE COURT:  ALL RIGHT.

09:54AM  18       CMS REPORT.  AND THIS IS REGARDING JURY INSTRUCTION 29, I

09:54AM  19   BELIEVE.

09:54AM  20           MR. LEMENS:  I BELIEVE THAT'S HOW WE GOT HERE,

09:54AM  21   YOUR HONOR, YES.

09:54AM  22           THE COURT:  AND I HAVE 29, WHICH WAS -- I THINK WE

09:54AM  23   TALKED ABOUT THIS LAST WEEK ON FRIDAY, AND THE WHOLE TOPIC IS

09:54AM  24   WHETHER OR NOT 4621A AND B SHOULD COME IN FOR THE LIMITED

09:54AM  25   PURPOSE OF STATE OF MIND.  I THINK ONE OF THEM WAS ADMITTED FOR

09:54AM 1    THAT PURPOSE, AND THE OTHER ONE WASN'T.

09:54AM 2        I TOLD YOU I WAS GOING TO READ THE TRANSCRIPTS OVER THE

09:54AM 3    WEEKEND.  I DID.  YOU IDENTIFIED PORTIONS THAT YOU WOULD LIKE

09:54AM 4    ME TO READ.  THAT WAS HELPFUL.

09:54AM 5        I THINK, MR. CLEARLY, YOU PROVIDED THE COURT WITH SOME

09:54AM 6    TRANSCRIPTS FRIDAY THAT I LOOKED AT ALSO AND READ OTHER

09:54AM 7    PORTIONS OF THE TRANSCRIPT.

09:54AM 8        SO WHAT ELSE WOULD YOU LIKE ME TO KNOW ON THIS?

09:54AM 9            MR. LEMENS:  SO I THINK, JUST FOR THE RECORD,

09:54AM 10   ANDREW LEMENS FOR THE RECORD.

09:55AM 11           THE COURT:  I SAID MR. CLEARY, DIDN'T I?  I

09:55AM 12   APOLOGIZE.

09:55AM 13           MR. LEMENS:  WE LOOK VERY SIMILAR.

09:55AM 14           THE COURT:  WHICH ONE OF YOU IS YOUNGER?  OH, YOU

09:55AM 15   CAN ANSWER THAT LATER.

09:55AM 16           MR. LEMENS:  HE IS, I THINK.

09:55AM 17       (LAUGHTER.)

09:55AM 18           THE COURT:  YOU ALL LOOK TERRIBLY YOUNG TO ME.

09:55AM 19           MR. LEMENS:  IF IT GIVES YOUR HONOR COMFORT, THIS IS

09:55AM 20   A COMMON PROBLEM WE'VE BEEN HAVING THROUGHOUT OUR TIME IN

09:55AM 21   SAN JOSE.

09:55AM 22       I WILL JUST SAY ON THE MOTION, MS. HOLMES'S POSITION IS,

09:55AM 23   OF COURSE, THAT THE DOCUMENTS, BOTH A AND B, CAME IN FOR A

09:55AM 24   LIMITED PURPOSE.

09:55AM 25       I THINK THE GOVERNMENT'S POSITION IS NOW 4621A CAME IN FOR

09:55AM  1    ITS TRUTH.  WE DISAGREE FOR THE REASONS WE SET FORTH IN OUR

09:55AM  2    PLEADING BOTH AS TO WHAT OCCURRED PRIOR TO DR. DAS'S TESTIMONY,

09:55AM  3    DURING DR. DAS'S TESTIMONY, AND THEN THE REPRESENTATIONS THAT

09:55AM  4    WERE MADE AFTER DR. DAS'S TESTIMONY AT THE CLOSE OF THE

09:55AM  5    GOVERNMENT'S CASE.

09:55AM  6        EVEN IF THEY CAME IN FOR THAT LIMITED PURPOSE, WE HAVE

09:56AM  7    CONCERNS UNDER RULE 403.  THOSE CONCERNS ARE THAT THE REPORT

09:56AM  8    ITSELF, THE CONTENT OF THE REPORT, AND THE CONTENT OF THE COVER

09:56AM  9    LETTER HAS VERY LITTLE PROBATIVE VALUE, IF ANYTHING, TO THE

09:56AM  10   ISSUES IN THE CASE, AND CONSIDERABLE PREJUDICE IN LIGHT OF THE

09:56AM  11   GOVERNMENT'S FAILURE TO CALL A CMS WITNESS WHO COULD PROVIDE

09:56AM  12   CONTEXT AROUND THE REPORT, HOW IT WAS DRAFTED, WHAT DECISIONS

09:56AM  13   WERE MADE AND, IN THE COURSE OF THAT DRAFTING, WHAT WAS

09:56AM  14   INCLUDED, WHAT WASN'T INCLUDED AND WHY, WHAT OTHER INFLUENCES

09:56AM  15   OR FACTORS WERE CONSIDERED BY CMS IN PUTTING THIS DOCUMENT

09:56AM  16   TOGETHER, AND, OF COURSE, JUST THE NATURE OF THE DOCUMENT

09:56AM  17   ITSELF AND THE IMPRIMATUR THAT IT CREATES EVEN IF COMING IN FOR

09:56AM  18   NOTICE.

09:56AM  19       I THINK THE GOVERNMENT HAS PUT FORWARD SEVERAL ARGUMENTS

09:56AM  20   AS TO ITS RELEVANCE.  THOSE ARE GENERAL STATEMENTS ABOUT, AS I

09:56AM  21   UNDERSTAND THEM, YOU KNOW, WE'VE TALKED -- YOU KNOW, THERE WAS

09:56AM  22   EVIDENCE ABOUT WHAT HAPPENED IN 2016 IN THIS CASE, AND

09:57AM  23   THEREFORE, THIS COMES IN.

09:57AM  24       OUR POSITION IS THAT THEY NEED TO CONNECT IT MORE CLOSELY

09:57AM  25   OR MORE DIRECTLY TO A SPECIFIC ISSUE.  WE DO NOT DISPUTE THAT

8868

09:57AM 1    THE FACT OF THE CMS REPORT WAS ISSUED, THE FACT THAT AN

09:57AM 2    INSPECTION HAD OCCURRED, I THINK THERE'S EVEN BEEN SOME

09:57AM 3    TESTIMONY THAT THE CMS REPORT WAS GENERALLY NEGATIVE.

09:57AM 4        BUT THAT DOES NOT JUSTIFY THE ADMISSION OF THIS DOCUMENT

09:57AM 5    SIMPLY FOR NOTICE.  IF IT CAME IN FOR NOTICE, IF IT CAME IN FOR

09:57AM 6    STATE OF MIND, IT NEEDS TO CONNECT TO SOMETHING.  WHAT DOES

09:57AM 7    THAT STATE OF MIND INFORM?

09:57AM 8        I THINK THE BEST ANALOGY THAT I FOUND OVER THE WEEKEND

09:57AM 9    AFTER THINKING QUITE A BIT ABOUT THIS IS "THE

09:57AM 10   WALL STREET JOURNAL" ARTICLE THAT YOUR HONOR EXCLUDED FROM

09:57AM 11   EVIDENCE, OR THE SERIES OF ARTICLES.

09:57AM 12       THERE WAS PLENTY OF TESTIMONY IN THE CASE ABOUT THOSE

09:57AM 13   ARTICLES, THE FACT OF THOSE ARTICLES, WHAT HAPPENED AS A RESULT

09:57AM 14   OF THOSE ARTICLES, OR WHAT COULD HAVE HAPPENED, KIND OF HOW

09:57AM 15   THOSE ARTICLES WERE RESPONDED TO.

09:58AM 16       BUT THE ARTICLES DIDN'T NEED TO COME IN.

09:58AM 17       THAT'S THE SAME SITUATION HERE.  WE HAVE A REPORT, WE HAVE

09:58AM 18   A COVER LETTER THAT HAS INCREDIBLY PREJUDICIAL LANGUAGE, HAS

09:58AM 19   IMPLICATIONS OR SUGGESTIONS BASED ON THAT LANGUAGE, AND WAS NOT

09:58AM 20   SUBJECT TO CROSS-EXAMINATION SUCH THAT THE JURY UNDERSTANDS

09:58AM 21   WHAT IT MEANS BECAUSE THE GOVERNMENT DECIDED NOT TO CALL THE

09:58AM 22   WITNESS WHO COULD PROVIDE THAT CONTEXT.

09:58AM 23       SO THAT'S ALL TO SAY IT DIDN'T COME IN FOR ITS TRUTH,

09:58AM 24   NEITHER A NOR B IN OUR POSITION, AND EVEN IF IT CAME IN FOR

09:58AM 25   THAT LIMITED PURPOSE, IT SHOULD BE STRUCK UNDER 403.

| | | |
|---|---|---|
| 09:58AM | 1 | THE COURT:  DOES IT -- THANK YOU. |
| 09:58AM | 2 | DOES IT, DOES IT GO -- 4621, LET'S TALK ABOUT A AND B. |
| 09:58AM | 3 | IF THE COURT FINDS THAT, IN LOOKING AT -- AND MS. VOLKAR, |
| 09:58AM | 4 | I KNOW YOU'RE LISTENING CAREFULLY HERE -- BUT IN LOOKING AT THE |
| 09:58AM | 5 | TOTALITY OF THE CONVERSATIONS IN THE TRANSCRIPTS, INCLUDING |
| 09:58AM | 6 | CONVERSATION AT THE MIL AND OTHERS, IF THE COURT WERE TO FIND |
| 09:59AM | 7 | THAT THE TOTALITY OF ALL OF THOSE CONVERSATIONS PRIOR TO THE |
| 09:59AM | 8 | INTRODUCTION OF THE DOCUMENTS AND IN THE WAY THAT THEY WERE |
| 09:59AM | 9 | INTRODUCED SUGGESTS THAT PARTIES WERE UNDER THE BELIEF THAT |
| 09:59AM | 10 | THEY WERE COMING IN NOT FOR THEIR TRUTH, BUT JUST FOR THE ISSUE |
| 09:59AM | 11 | OF NOTICE AND STATE OF MIND OF MS. HOLMES, THEN THE COURT -- |
| 09:59AM | 12 | AND IF THE COURT DECIDED TO ADMIT A AND B FOR THAT LIMITED |
| 09:59AM | 13 | PURPOSE AND GIVE YOUR 29, FORMERLY 31, IT SEEMS THAT THAT MIGHT |
| 09:59AM | 14 | ASSUAGE YOUR CONCERNS. |
| 09:59AM | 15 | MR. LEMENS:  WE CERTAINLY OBJECT TO THE DOCUMENTS |
| 09:59AM | 16 | COMING IN FOR THEIR TRUTH. |
| 09:59AM | 17 | EVERYTHING I HAVE JUST EXPLAINED WOULD ALSO -- WE HAVE THE |
| 09:59AM | 18 | SAME CONCERNS IF THEY CAME IN FOR A LIMITED PURPOSE BECAUSE |
| 09:59AM | 19 | THERE WAS NO WITNESS TO CONTEXTUALIZE THE DOCUMENT.  THERE WAS |
| 09:59AM | 20 | NO -- YOU KNOW, THEY STILL ARE INFLAMMATORY IF NOT EXPLAINED. |
| 10:00AM | 21 | OF COURSE, YOU KNOW, THOSE CONCERNS WOULD BE GREATER |
| 10:00AM | 22 | SUBSTANTIALLY IF THE DOCUMENTS CAME IN FOR THEIR TRUTH, BUT |
| 10:00AM | 23 | THAT DOESN'T ASSUAGE ALL OF OUR CONCERNS. |
| 10:00AM | 24 | AND, IN FACT, I THINK AS YOUR HONOR WILL RECALL, OUR |
| 10:00AM | 25 | MOTION TO STRIKE WAS PREMISED ON THE IDEA THAT THEY CAME IN FOR |

8870

10:00AM 1    NOTICE, AND I BELIEVE MULTIPLE TIMES THAT WE HAVE TOLD THE

10:00AM 2    COURT THAT OUR CONCERNS WOULD HAVE BEEN RESOLVED IF THE

10:00AM 3    GOVERNMENT CALLED MS. BENNETT OR MR. YAMAMOTO TO TESTIFY ABOUT

10:00AM 4    THE DOCUMENT.  THAT DID NOT OCCUR.

10:00AM 5         AND BECAUSE THAT DID NOT OCCUR, WE THINK THE DOCUMENT

10:00AM 6    SHOULD BE STRUCK EVEN FOR THE LIMITED PURPOSE OF NOTICE.

10:00AM 7              THE COURT:  WELL, THANK YOU.

10:00AM 8         DON'T THEY SHOW, THE DOCUMENTS, THE DOCUMENTS TEND TO

10:00AM 9    SHOW -- AND THIS IS IN LIGHT OF THE EVIDENCE, BOTH EVIDENCE

10:00AM 10   THAT WAS DERIVED IN THE GOVERNMENT'S CASE, BUT ALSO IN

10:00AM 11   CROSS-EXAMINATION, AND I THINK WE ALL KNOW THAT THE DEFENSE

10:00AM 12   CASE IS TYPICALLY BEGINNING CROSS-EXAMINATION.  I THINK ONE OF

10:00AM 13   YOUR COLLEAGUES MAY HAVE SAID THAT.

10:00AM 14        AND SO THERE WAS EVIDENCE THAT WAS DEVELOPED THROUGH

10:01AM 15   CROSS-EXAMINATION THAT DID SOMEWHAT TETHER, CONNECT

10:01AM 16   MS. HOLMES'S STATE OF MIND, OR AT LEAST HER KNOWLEDGE, OF WHAT

10:01AM 17   WAS GOING ON IN THE LAB SUCH THAT UNDER 403, THESE DOCUMENTS, A

10:01AM 18   AND B, COULD PROVIDE SOME INFORMATION ABOUT WHETHER OR NOT SHE

10:01AM 19   WAS AWARE OF THE DEFICIENCIES IN THE LABS AND WHETHER OR NOT

10:01AM 20   SHE TOOK ANY ACTION ABOUT IT.

10:01AM 21             MR. LEMENS:  WELL, CERTAINLY IF THEY COME IN FOR

10:01AM 22   NOTICE -- THE DOCUMENTS WERE ISSUED AND ARE DATED IN JANUARY OF

10:01AM 23   2016 -- IT WOULD ONLY BE NOTICE AFTER THAT DATE.

10:01AM 24        FOR THE GOVERNMENT TO USE -- AND I'VE SEEN THIS ARGUMENT,

10:01AM 25   OF COURSE, IN THE GOVERNMENT'S PLEADING.

| | | |
|---|---|---|
| 10:01AM | 1 | FOR THE GOVERNMENT TO USE THAT DOCUMENT RETROACTIVELY |
| 10:01AM | 2 | WOULD BE A PURPOSE FOR -- REQUIRING ITS TRUTH, AND FOR THE |
| 10:01AM | 3 | GOVERNMENT TO TRY TO CONNECT THE CLAIMS OR THE STATEMENTS IN |
| 10:01AM | 4 | THAT DOCUMENT TO TESTIMONY OR WHAT OCCURRED PREVIOUSLY WOULD |
| 10:01AM | 5 | REQUIRE IT TO COME IN FOR ITS TRUTH, WHICH IS NOT WHAT HAPPENED |
| 10:02AM | 6 | AND WE THINK IS, IS -- WOULD BE INCREDIBLY PROBLEMATIC. |
| 10:02AM | 7 | THE COURT:  SO THE INVESTIGATION OCCURRED IN 2015, I |
| 10:02AM | 8 | THINK.  IS THAT -- THAT'S WHEN CMS CAME, AND EARLIER, AND THEY |
| 10:02AM | 9 | DRAFTED A REPORT IN NOVEMBER, I THINK IT WAS. |
| 10:02AM | 10 | MR. LEMENS:  I BELIEVE WHAT THE RECORD REFLECTS IS |
| 10:02AM | 11 | THAT THERE WAS AN INSPECTION IN SEPTEMBER, AND THERE WAS A |
| 10:02AM | 12 | SUBSEQUENT FOLLOW-ON INSPECTION IN NOVEMBER, AND THERE'S OF |
| 10:02AM | 13 | COURSE BEEN TESTIMONY ABOUT THAT, AND THAT THE REPORT ITSELF |
| 10:02AM | 14 | WAS ISSUED IN JANUARY, AND IT WAS PROVIDED TO THE COMPANY IN |
| 10:02AM | 15 | JANUARY. |
| 10:02AM | 16 | THE COURT:  RIGHT. |
| 10:02AM | 17 | MR. LEMENS:  SO TO THE EXTENT THE REPORT COMES IN |
| 10:02AM | 18 | FOR NOTICE, IT IS NOTICE AS OF THE DATE IT IS ISSUED. |
| 10:02AM | 19 | THE COURT:  AND WE HAVE EVIDENCE THAT YOUR CLIENT, |
| 10:02AM | 20 | MS. HOLMES, TOOK SOME ACTION SUBSEQUENT TO HER NOTICE. |
| 10:02AM | 21 | ISN'T THAT WHEN SHE FORMED THE BOARD, THE ADVISORY BOARD |
| 10:02AM | 22 | AND DID SOME -- MADE SOME EMPLOYMENT DECISIONS AND OTHER |
| 10:02AM | 23 | THINGS? |
| 10:02AM | 24 | MR. LEMENS:  CERTAINLY, YOUR HONOR. |
| 10:02AM | 25 | I THINK OUR POSITION IS THAT YOU DON'T NEED THE DOCUMENT |

```
10:03AM   1    TO COME IN FOR THE GOVERNMENT TO MAKE ITS ARGUMENT ABOUT THE

10:03AM   2    REPORT, THE FACT THAT THE REPORT WAS NEGATIVE.

10:03AM   3         THE FACT THAT THERE WAS CONSIDERABLE TESTIMONY ABOUT THE

10:03AM   4    INSPECTION APART FROM THE DOCUMENT I THINK IS, IS IMPORTANT,

10:03AM   5    THE FACT THAT THE GOVERNMENT WAS ABLE TO ASK WITNESSES ABOUT

10:03AM   6    THE INSPECTION OR THE REPORT OR THE IMPLICATIONS THEREOF

10:03AM   7    WITHOUT THE DOCUMENT.  FOR EXAMPLE, THEY DID NOT SHOW

10:03AM   8    MS. HOLMES THE DOCUMENT.  THEY DID NOT ASK HER QUESTIONS ABOUT

10:03AM   9    THE DOCUMENT.  THEY WERE ABLE TO JUST --

10:03AM  10              THE COURT:  SO I THOUGHT ALSO ABOUT -- WE'VE HAD

10:03AM  11    TESTIMONY FROM MS. CHEUNG AND MR. SHULTZ ABOUT THE LAB AND

10:03AM  12    MS. HOLMES HAVING NOTICE, POTENTIAL NOTICE ABOUT THAT FROM

10:03AM  13    THOSE PARTIES IN SOME MANNER.

10:03AM  14              MR. LEMENS:  UH-HUH.

10:03AM  15              THE COURT:  DOES THIS TIE BACK TO THAT?  WOULDN'T

10:03AM  16    THAT BE RELEVANT FOR THAT CONSIDERATION AS TO NOTICE?

10:04AM  17              MR. LEMENS:  AGAIN, IF THE REPORT IS ISSUED IN

10:04AM  18    JANUARY -- AND I BELIEVE THE TESTIMONY FROM MS. CHEUNG IS THAT

10:04AM  19    HER CONCERNS, AND MR. SHULTZ, WAS THAT THEIR CONCERNS WERE

10:04AM  20    RAISED IN 2014.

10:04AM  21         MS. CHEUNG TESTIFIED THAT SHE DID NOT INFORM MS. HOLMES OF

10:04AM  22    THOSE CONCERNS IN 2014.  MR. SHULTZ DID.

10:04AM  23         THE FACT THAT MS. HOLMES LATER RECEIVED NOTICE IN 2016 OF

10:04AM  24    PROBLEMS WITH THE LAB, TO CONNECT THE TWO -- ONE, THERE'S NO

10:04AM  25    EVIDENCE IN THE RECORD CONNECTING THOSE TWO.  THE GOVERNMENT,
```

10:04AM 1    AGAIN, DID NOT SHOW MS. HOLMES THE REPORT AND ASK HER, YOU

10:04AM 2    KNOW, DOES THIS LINE UP WITH MR. SHULTZ'S CONCERNS AS YOU

10:04AM 3    UNDERSTOOD THEM?  THEY ASKED THE QUESTION AT THE GENERAL LEVEL,

10:04AM 4    AND I BELIEVE HER TESTIMONY WAS THAT IT DID NOT.

10:04AM 5        BUT I DON'T SEE WHERE THE CONNECTION IS BETWEEN THOSE TWO.

10:04AM 6    IT'S, IT'S -- THERE'S EITHER -- THERE'S SOME SORT OF MISSING

10:04AM 7    LINK IN WHAT THE GOVERNMENT SEEKS TO ARGUE.

10:04AM 8        BUT CERTAINLY NOT A REPORT THAT COMES IN FOR NOTICE IN

10:04AM 9    2016 CAN THEN BE USED RETROACTIVELY TO PROVE THAT MS. CHEUNG OR

10:04AM 10   MR. SHULTZ WAS, IN FACT, CORRECT.

10:04AM 11       PERHAPS THE GOVERNMENT COULD ARGUE SOMETHING AS OF 2016,

10:05AM 12   BUT TO GO BACK EARLIER AND SUGGEST STATE OF MIND IN 2014 USING

10:05AM 13   NOTICE THAT WAS GIVEN IN 2016 SEEMS LIKE WE HAVE A LOGICAL

10:05AM 14   ISSUE.

10:05AM 15            THE COURT:  SO I THINK WHAT YOU'RE SAYING IS THAT

10:05AM 16   YOU OBJECT TO IT COMING IN AT ALL, BUT IF IT COMES IN FOR

10:05AM 17   NOTICE, THE NOTICE IS FROM JANUARY 2016 FORWARD, AND THE

10:05AM 18   GOVERNMENT WOULD NOT BE PERMITTED THEN TO ARGUE THAT SHE

10:05AM 19   RECEIVED -- SHE, MS. HOLMES -- RECEIVED NOTICE IN JANUARY OF

10:05AM 20   2016 AND YOU SHOULD, JURY, LADIES AND GENTLEMEN OF THE JURY,

10:05AM 21   THEN FIND THAT SHE KNEW IN 2013 AND 2014 THAT THERE WERE

10:05AM 22   PROBLEMS.  YOU CAN'T USE THAT PIECE OF EVIDENCE.

10:05AM 23       THEY COULD CONSIDER MR. CHEUNG -- OR MS. CHEUNG,

10:05AM 24   MR. SHULTZ AND OTHER INDICIA AS THEY DECIDE THAT, BUT THEY

10:05AM 25   CAN'T USE THE CMS REPORT GOING BACK.

| | | |
|---|---|---|
| 10:05AM | 1 | IS THAT WHAT YOU'RE SAYING? |
| 10:05AM | 2 | MR. LEMENS:  I BELIEVE THAT'S A FAIR |
| 10:06AM | 3 | CHARACTERIZATION, YOUR HONOR. |
| 10:06AM | 4 | THE COURT:  OKAY. |
| 10:06AM | 5 | MS. VOLKAR? |
| 10:06AM | 6 | MS. VOLKAR:  YOUR HONOR, IT WON'T SURPRISE YOU TO |
| 10:06AM | 7 | LEARN THAT THE GOVERNMENT STRONGLY DISAGREES. |
| 10:06AM | 8 | BUT TWO KEY ISSUES, AND I DON'T WANT TO LOSE SIGHT OF THE |
| 10:06AM | 9 | FIRST ONE, THE MAIN REASON THAT WE'RE HERE IS THE JURY |
| 10:06AM | 10 | INSTRUCTION, AND THE GOVERNMENT, AGAIN, STRONGLY OBJECTS TO ANY |
| 10:06AM | 11 | INSTRUCTION THAT SINGLES OUT A PIECE OF EVIDENCE ALONG THE |
| 10:06AM | 12 | LINES OF WHAT THE DEFENSE HAS SUGGESTED IN WHAT I THINK IS NOW |
| 10:06AM | 13 | NUMBER 29. |
| 10:06AM | 14 | I APOLOGIZE.  I'M WORKING OFF OF AN OUTDATED COPY. |
| 10:06AM | 15 | IN FACT, IN MY SPARE TIME THIS WEEKEND I WENT BACK AND |
| 10:06AM | 16 | LOOKED AT ALL OF THE DOCUMENTS THAT WERE ADMITTED FOR A LIMITED |
| 10:06AM | 17 | PURPOSE.  THERE'S APPROXIMATELY 20. |
| 10:06AM | 18 | THE MAJORITY OF THEM ARE AFTER 2016 OR AFTER 2017, |
| 10:06AM | 19 | INCLUDING, AS WE PUT IN OUR PAPERS, THE MULTIPLE DOCUMENTS |
| 10:06AM | 20 | DEFENDANTS SUBMITTED FOR PEER REVIEW TO SHOW THAT THE |
| 10:06AM | 21 | TECHNOLOGY WORKED, INCLUDING SEVERAL THINGS RELATED TO THE AACC |
| 10:06AM | 22 | CONFERENCE THAT THE DEFENDANT AND OUR TEAM HAS ARGUED WAS |
| 10:07AM | 23 | RELEVANT TO HER STATE OF MIND TO SHOW THAT THE TECHNOLOGY |
| 10:07AM | 24 | WORKED. |
| 10:07AM | 25 | ALL OF THOSE THINGS ARE AFTER THE CMS REPORT AND AFTER A |

| | | |
|---|---|---|
| 10:07AM | 1 | STATEMENT FROM REGULATORS AND HER OWN INTERNAL TEAM, DR. DAS, |
| 10:07AM | 2 | THAT THE DEVICE, OR AT LEAST A VERSION OF IT, DID NOT WORK, AND |
| 10:07AM | 3 | THE VERSION THAT THEY WERE USING FOR PATIENTS DID NOT WORK. |
| 10:07AM | 4 | THE COURT:  AND THOSE EXHIBITS WERE ADMITTED BY THE |
| 10:07AM | 5 | DEFENSE? |
| 10:07AM | 6 | MS. VOLKAR:  CORRECT, YOUR HONOR. |
| 10:07AM | 7 | AND THERE WERE -- THERE ARE SEVERAL OTHER CATEGORIES AS |
| 10:07AM | 8 | WELL, BUT I THINK THAT THOSE ARE THE ONES WITH THE CLOSEST |
| 10:07AM | 9 | DIRECT TIE BECAUSE THEY ALL RELATE TO WHAT IS THE CAPABILITY OF |
| 10:07AM | 10 | THE TECHNOLOGY IN 2016. |
| 10:07AM | 11 | OF COURSE YOUR HONOR ALREADY NOTED THIS, AND THERE IS |
| 10:07AM | 12 | EVIDENCE TO THIS EFFECT, TWO THINGS:  ONE, THE CMS INSPECTORS |
| 10:07AM | 13 | HAVE SAID IN INTERVIEWS TO THE GOVERNMENT -- OF COURSE THEY |
| 10:07AM | 14 | DIDN'T TESTIFY AT THIS TRIAL -- THAT THEY TOLD MS. HOLMES OF |
| 10:07AM | 15 | THE STATE OF THE FINDINGS AND THAT IT WAS GOING TO BE IMMEDIATE |
| 10:07AM | 16 | JEOPARDY AT THE CONCLUSION OF THE HEARINGS IN FALL OF 2015. |
| 10:07AM | 17 | THAT EVIDENCE HAS NOT COME IN IN THAT FORM IN THIS TRIAL. |
| 10:08AM | 18 | WHAT HAS COME IN IN THIS TRIAL -- AND A LOT OF IT, QUITE |
| 10:08AM | 19 | FRANKLY, THROUGH THE TESTIMONY OF MS. HOLMES THROUGH BOTH |
| 10:08AM | 20 | CROSS-EXAMINATION AND DIRECT -- IS THAT SHE LEARNED FROM |
| 10:08AM | 21 | MR. BALWANI THAT THE INSPECTIONS WERE GOING VERY POORLY SUCH |
| 10:08AM | 22 | THAT SHE FELT SHE HAD TO SHOW UP FOR THE LAST DAY THAT THE CMS |
| 10:08AM | 23 | INSPECTORS WERE THERE IN NOVEMBER OF 2015. |
| 10:08AM | 24 | THAT'S FAIRLY IN THE RECORD.  THAT'S FAIR FOR THE |
| 10:08AM | 25 | GOVERNMENT TO ARGUE. |

10:08AM  1      I BELIEVE ON CROSS-EXAMINATION THE GOVERNMENT QUESTIONED

10:08AM  2   WHY SHE WAITED UNTIL JANUARY OF 2016 TO SEE THE REPORT TO SORT

10:08AM  3   OF KNOW EXACTLY HOW BAD THINGS WERE AND START CHANGING THINGS.

10:08AM  4   I WANT TO SAY HER ANSWER WAS "I DON'T KNOW."

10:08AM  5      BUT AGAIN, I WANT TO MAKE SURE THAT THE RECORD IS CLEAR OF

10:08AM  6   SORT OF WHAT IS IN THE RECORD TO ARGUE.  SHE HAD ENOUGH

10:08AM  7   KNOWLEDGE OF THE STATE OF THE LAB IN FALL OF 2015 TO THINK THAT

10:08AM  8   SHE HAD TO COME BACK FOR THE LAST DAY OF THE CMS INSPECTION.

10:08AM  9      AND THE GOVERNMENT CAN FAIRLY ARGUE FROM THAT.

10:08AM  10      NOW, TURNING TO --

10:08AM  11         THE COURT:  AND YOU DON'T NEED THESE TO ARGUE THAT?

10:09AM  12   YOU WOULDN'T NEED 4621A OR B TO ARGUE THAT?

10:09AM  13         MS. VOLKAR:  YOUR HONOR, THAT'S CORRECT.

10:09AM  14      BUT I REALLY DON'T WANT TO LOSE SIGHT OF -- THE DEFENSE

10:09AM  15   HAS REALLY NOT PUT FORWARD ANY ARGUMENT TO STRIKE 4621A AND B,

10:09AM  16   AND THAT'S WHERE I WANTED TO LAND, BECAUSE WHAT I HEARD

10:09AM  17   MR. LEMENS SAY A MOMENT AGO IS "THIS IS LIKE THE 'THE

10:09AM  18   WALL STREET JOURNAL' ARTICLE."

10:09AM  19      THINKING BACK TO THE MOTION IN LIMINE STAGE, THE

10:09AM  20   GOVERNMENT WANTED TO ADMIT "THE WALL STREET JOURNAL" AS WELL.

10:09AM  21   THE COURT STRUCK THAT FOR A HEARSAY PURPOSE.

10:09AM  22      WE'RE IN A VERY DIFFERENT LAND HERE.  THE COURT DID NOT

10:09AM  23   STRIKE THAT FOR A 403 PURPOSE.

10:09AM  24      THE DEFENSE ARGUED, I THINK JUST LAST WEEK, 403 IS A RARE

10:09AM  25   REMEDY TO BE USED AND CERTAINLY SHOULDN'T BE -- TO UNDO A

10:09AM 1    COURT'S PRIOR EVIDENTIARY RULING AND NOT ON SORT OF THE THIN

10:09AM 2    READ THAT THEY'RE PUTTING FORWARD.

10:09AM 3        I WANT TO GET THERE IN A MOMENT AS WELL.

10:09AM 4        WHERE I REALLY WANT TO START IS THE INCONSISTENCY IN THE

10:09AM 5    DEFENSE'S POSITION.

10:09AM 6        THEY BOTH SAY THAT THEY HAVE ALWAYS THOUGHT 4621A AND B

10:10AM 7    CAME IN FOR A LIMITED PURPOSE, BUT THEY MOVED TO STRIKE ON 403

10:10AM 8    AND CONFRONTATION CLAUSE GROUNDS.

10:10AM 9        THEIR PLEADING YESTERDAY MAKES CLEAR THAT THEY UNDERSTAND

10:10AM 10   THAT THERE'S NO CONFRONTATION CLAUSE ISSUE IF THE TWO EXHIBITS

10:10AM 11   CAME IN FOR A LIMITED PURPOSE.

10:10AM 12       BOTH OF THOSE THINGS CANNOT BE TRUE AT THE SAME TIME.

10:10AM 13       NOW, THE GOVERNMENT'S POSITION IS THAT, IN THE MOMENT, ONE

10:10AM 14   DOCUMENT CAME IN FOR ITS TRUTH, THE COVER LETTER, AND ONE

10:10AM 15   DOCUMENT CAME IN FOR A LIMITED PURPOSE.

10:10AM 16       THE GOVERNMENT UNDERSTANDS IF THE COURT -- AND AS THE

10:10AM 17   DEFENSE PUTS FORWARD IN THE GRANDER CONTEXT OF THINGS, IF

10:10AM 18   EVERYTHING CAME IN FOR A MORE LIMITED PURPOSE FOR HER STATE OF

10:10AM 19   MIND, THAT'S FINE.  THEN THERE'S NO CONFRONTATION CLAUSE

10:10AM 20   ISSUES.

10:10AM 21       BUT THEN THERE'S CERTAINLY NO GROUNDS FOR A MOTION TO

10:10AM 22   STRIKE BECAUSE THEN ALL THEY HAVE LEFT WITH IS WHAT MR. LEMENS

10:10AM 23   STARTED WITH, RULE 403, AND THAT'S A VERY THIN READ THAT I

10:10AM 24   WOULD NOW LIKE TO ADDRESS.

10:10AM 25       BUT I DO WANT TO MAKE VERY CRYSTAL CLEAR, THEY'VE BEEN

8878

10:10AM 1    SAYING "CONFRONTATION CLAUSE."

10:11AM 2        UNDER THEIR VIEW OF THE EVENTS, THAT IT WAS CRYSTAL CLEAR

10:11AM 3    TO EVERYONE IN THE ROOM THAT THE DOCUMENTS CAME IN ONLY FOR A

10:11AM 4    LIMITED PURPOSES, THERE'S NO CONFRONTATION CLAUSE ISSUE.

10:11AM 5        SO TURNING TO THE 403.

10:11AM 6        SO FOR THE 403 CONCERNS, MR. LEMENS TALKED ABOUT HOW

10:11AM 7    THERE'S NO CMS WITNESS TO CONNECT THE DOTS.

10:11AM 8        FIRST OF ALL, THEY HAVE PREVIOUSLY OBJECTED TO, AND OBJECT

10:11AM 9    IN THIS PLEADING, TO THE IMMEDIATE JEOPARDY LANGUAGE.

10:11AM 10       THAT LANGUAGE IS ALREADY IN, AND IT CAME IN THROUGH "THE

10:11AM 11   TODAY SHOW" CLIP THAT CAME IN BECAUSE THE DEFENDANT WANTED,

10:11AM 12   THROUGH RULE 106, THE ENTIRE CLIP TO BE PLAYED.

10:11AM 13       THE GOVERNMENT HAD SUGGESTED JUST MS. HOLMES'S STATEMENTS.

10:11AM 14   THE DEFENSE WANTED THE ENTIRE CLIP TO BE PLAYED.

10:11AM 15       IMMEDIATE JEOPARDY IS IN THE RECORD, AND IN THE RECORD FOR

10:11AM 16   ITS TRUTH.

10:11AM 17       I HAVE NOT HEARD THEM OBJECT TO THAT, BUT I JUST WANT TO

10:11AM 18   POINT OUT THAT EVEN IF THE CMS REPORT GOES AWAY, THAT'S FAIR

10:11AM 19   GAME FOR THE GOVERNMENT TO ARGUE.

10:11AM 20       SECOND, I WANT TO POINT OUT THAT I'M NOT ENTIRELY SURE

10:12AM 21   WHAT ENTIRE MORE CONTEXT THEY THINK THAT A CMS WITNESS WOULD

10:12AM 22   GIVE TO THESE DOCUMENTS.

10:12AM 23       THERE'S DR. DAS WHO TESTIFIED, WHO WAS ON THE STAND AND

10:12AM 24   SUBJECT TO CROSS-EXAMINATION, WHO THE DEFENDANT HIRED TO

10:12AM 25   ANALYZE AND THOROUGHLY VET THE ISSUES THAT WERE RAISED IN THE

| | | |
|---|---|---|
| 10:12AM | 1 | CMS REPORT AND GIVE HIS OUTPUT, AND THAT'S EXACTLY WHAT HE DID. |
| 10:12AM | 2 | SO, AGAIN, I THINK THAT THE DOCUMENT IS IMPORTANT FOR |
| 10:12AM | 3 | GIVING CONTEXT TO WHAT DR. DAS DID, WHAT DEFENDANT HIRED HIM TO |
| 10:12AM | 4 | DO, AND ALL OF THE SUBSEQUENT ACTIONS THAT THE DEFENDANT AND |
| 10:12AM | 5 | THE COMPANY TOOK. |
| 10:12AM | 6 | AND THE LAST THING I REALLY WANT TO POINT OUT, IT IS |
| 10:12AM | 7 | IMPORTANT BECAUSE DEFENDANT THEN MINIMIZED THOSE FINDINGS TO |
| 10:12AM | 8 | INVESTORS IN A LOWLY MANNER TO SORT OF KEEP THE WOOL OVER THE |
| 10:12AM | 9 | INVESTORS' EYES AND TO AVOID HAVING SORT OF THE SCHEME TO |
| 10:12AM | 10 | UNRAVEL, AND THAT IS IMPORTANT IN 2016, ESPECIALLY GIVEN ALL OF |
| 10:12AM | 11 | THE EVIDENCE THAT THE DEFENSE HAS ADMITTED SHOWING HER, THE |
| 10:12AM | 12 | DEFENDANT'S, STATE OF MIND WITH RESPECT TO THE TECHNOLOGY AFTER |
| 10:13AM | 13 | THIS REPORT CAME OUT. |
| 10:13AM | 14 | IT'S A CRITICAL PIECE OF EVIDENCE.  RULE 403 IS NOT A |
| 10:13AM | 15 | BASIS TO OVERTURN THE COURT'S PRIOR EVIDENTIARY RULING, AND THE |
| 10:13AM | 16 | DEFENSE ESSENTIALLY ADMITS THAT THERE'S NO CONFRONTATION CLAUSE |
| 10:13AM | 17 | ISSUE HERE. |
| 10:13AM | 18 | THE COURT:  THANK YOU. |
| 10:13AM | 19 | DR. DAS IN HIS TESTIMONY, IF I RECALL, HE TALKED ABOUT HOW |
| 10:13AM | 20 | HE WAS HIRED TO LOOK AT THE PROBLEMS, LOOK AT THE ISSUES, AND I |
| 10:13AM | 21 | THINK BRING IT TO CODE.  I FORGET THE PHRASE HE USED. |
| 10:13AM | 22 | BUT DID HE TESTIFY THAT IN HIS INDEPENDENT REVIEW, HE |
| 10:13AM | 23 | FOUND DISPARITIES GREATER THAN THE CMS REPORT?  AND I THINK HE |
| 10:13AM | 24 | TESTIFIED ABOUT THAT AND REFLECTED ON SOME OF THE ASSAYS THAT |
| 10:13AM | 25 | HE THOUGHT HAD PROBLEMS IN ADDITION TO CMS. |

8880

10:13AM  1        THAT'S MY RECOLLECTION.  IS THAT YOURS?

10:13AM  2            MR. LEMENS:  SO DR. DAS'S TESTIMONY I THINK WE HAVE

10:13AM  3    SEPARATE AND INDEPENDENT CONCERNS WITH, WHICH I DON'T THINK ARE

10:13AM  4    GERMANE OR THAT WE NEED TO TUMBLE OURSELVES INTO TODAY.

10:14AM  5        AND, YOU KNOW, THE TESTIMONY YOUR HONOR IS DESCRIBING, I

10:14AM  6    THINK OUR CONCERN IS WHERE THAT EXPERT LINE IS WITH HIS

10:14AM  7    RETROSPECTIVE ANALYSIS.

10:14AM  8        BUT FOR THE PURPOSES OF THIS DOCUMENT, I THINK THE

10:14AM  9    GOVERNMENT'S POSITION KIND OF SOLVES THE ISSUE, WHICH IS THEY

10:14AM  10   SAY, I BELIEVE ON THE LAST PAGE OF THEIR BRIEF THAT WAS FILED

10:14AM  11   OVER THE WEEKEND, WE DON'T NEED THE REPORT FOR DR. DAS.  RIGHT?

10:14AM  12       DR. DAS WAS JUST A VEHICLE TO GET THIS DOCUMENT INTO

10:14AM  13   EVIDENCE.  DR. DAS'S TESTIMONY, IN THE GOVERNMENT'S VIEW,

10:14AM  14   STANDS APART FROM 4621.

10:14AM  15       SO I DON'T THINK IT'S REALLY RELEVANT TO THE CONSIDERATION

10:14AM  16   HERE.  DR. DAS CERTAINLY LOOKED AT THE REPORT DURING HIS

10:14AM  17   TESTIMONY.  HE WAS ASKED TO READ OR SPEAK ABOUT WHETHER HE

10:14AM  18   SHARED PORTIONS OF THAT REPORT WITH MS. HOLMES, OR DISCUSSED

10:14AM  19   PORTIONS OF THAT REPORT WITH MS. HOLMES.

10:14AM  20       BUT THERE IS, OF COURSE, A SEPARATE -- THERE IS SEPARATE

10:15AM  21   TESTIMONY FROM HIM ABOUT HIS INVESTIGATION AND REVIEW WHICH

10:15AM  22   YOUR HONOR HAS JUST DESCRIBED.

10:15AM  23       ON THAT POINT, DR. DAS, OF COURSE, WAS AND COULD HAVE

10:15AM  24   BEEN -- OR WAS CROSS-EXAMINED ABOUT HIS TESTIMONY.

10:15AM  25       THE CMS WITNESSES ARE UNIQUE -- AND I THINK THIS IS

10:15AM   1     IMPORTANT -- BECAUSE THEY COULD FURTHER EXPLAIN WHAT THE REPORT

10:15AM   2     IS.  THEY COULD PROVIDE CONTEXT AROUND THE REPORT.

10:15AM   3         DR. DAS WAS NEVER AN INSPECTOR.  I DON'T KNOW IF WE'VE

10:15AM   4     SEEN OR HEARD TESTIMONY FROM ANYONE WITH EXPERIENCE AS AN

10:15AM   5     INSPECTOR.

10:15AM   6         MS. BENNETT HAS SAID IN PRIOR INTERVIEWS AND TESTIMONY

10:15AM   7     THAT CMS DOESN'T DETERMINE WHETHER TESTS ARE ACCURATE.  SHE HAS

10:15AM   8     SUGGESTED THAT CMS DOESN'T LOOK AT PATIENT DATA, AND WE BELIEVE

10:15AM   9     SHE WOULD TESTIFY THAT CMS'S CONCLUSIONS ARE, TO SOME DEGREE,

10:15AM  10     SUBJECTIVE, IN ADDITION TO BEING ABLE TO LAY CLEAR FOR THE JURY

10:15AM  11     EVERYTHING ELSE THAT WENT INTO THIS REPORT.

10:16AM  12         THE GOVERNMENT DIDN'T CALL HER.  THE GOVERNMENT DIDN'T

10:16AM  13     CALL MR. YAMAMOTO.

10:16AM  14         SO WE'RE LEFT WITH A HOLE IN THE RECORD THAT UNDERLIES

10:16AM  15     THIS DOCUMENT AND THAT, TO US, IS A SIGNIFICANT PROBLEM.

10:16AM  16             THE COURT:  OKAY.  THANK YOU.

10:16AM  17             MS. VOLKAR:  YOUR HONOR, THE FACT THAT DR. DAS'S

10:16AM  18     TESTIMONY IS SEPARATE FROM 4621, WHICH IT CERTAINLY IS, DOES

10:16AM  19     NOT MEAN THAT 4621 IS THEREFORE INADMISSIBLE.

10:16AM  20         THE PARTIES -- AND THE COURT IS VERY FAMILIAR WITH THIS --

10:16AM  21     HAVE HAD MANY DISPUTES OVER THE CMS REPORT FOR THE BETTER PART

10:16AM  22     OF THIS PAST YEAR.

10:16AM  23         THIS IS NOT AN ISSUE THAT HAS BEEN LIGHTLY LITIGATED.

10:16AM  24     THIS HAS BEEN THOROUGHLY LITIGATED.

10:16AM  25             AFTER THOROUGH LITIGATION, HEARING THE EVIDENCE, THE COURT

10:16AM 1    OVERRULED THE DEFENSE'S OBJECTIONS AND ADMITTED IT.  THERE'S NO

10:16AM 2    403 REASON TO GO BACK AND OVERTURN THE COURT'S EVIDENTIARY

10:16AM 3    DECISION THAT WAS MADE SOUNDLY WITHIN ITS DISCRETION AND ON THE

10:16AM 4    BASIS OF A LOT OF INFORMATION AND INPUT FROM BOTH SIDES.

10:16AM 5        IT WAS A SOUND DECISION, AND 403 IS NOT A REASON TO GO

10:17AM 6    BACK AND RECONSIDER IT NOW.

10:17AM 7        THE FACT THAT DR. DAS'S TESTIMONY COULD STAND SEPARATE

10:17AM 8    FROM THAT DOESN'T CHANGE THE FOCUS OF TODAY, WHICH IS WHETHER

10:17AM 9    OR NOT 4621 SHOULD BE STRICKEN FROM THE RECORD AFTER THE CLOSE

10:17AM 10   OF EVIDENCE BEFORE -- AFTER THE GOVERNMENT HAS GIVEN UP ITS

10:17AM 11   RIGHT TO CALL REBUTTAL WITNESSES.

10:17AM 12       ALSO, I WANT TO CORRECT ONE THING THAT MR. LEMENS SAID.

10:17AM 13   HE SAID THAT THERE WAS NO TESTIMONY FROM ANYONE WHO HAD BEEN AN

10:17AM 14   INSPECTOR.  THAT'S FALSE.

10:17AM 15       DR. SAWYER TESTIFIED, IN A SIGNIFICANT PORTION OF THE

10:17AM 16   CROSS-EXAMINATION -- AND I THINK MAYBE MR. LEMENS AGREES WITH

10:17AM 17   ME NOW -- BUT A SIGNIFICANT PORTION OF HER CROSS-EXAMINATION

10:17AM 18   WAS ABOUT HER TIME AS AN INSPECTOR AND WHAT SHE HAD DONE.

10:17AM 19       THERE'S A LOT IN THIS RECORD.  THERE'S THE CROSS OF

10:17AM 20   MS. CHEUNG AND THE CROSS OF DR. ROSENDORFF WHERE I THINK A GOOD

10:17AM 21   40 MINUTE CHUNK, OR LONGER, WAS ABOUT THE CMS INSPECTION, HOW

10:17AM 22   OFTEN IT OCCURS, WHAT THEY LOOK AT.  THERE'S 40 TO 50 PAGES OF

10:18AM 23   TRANSCRIPT IN HIS CROSS-EXAMINATION ABOUT THAT.

10:18AM 24       THERE'S DR. DAS WHO TESTIFIED.

10:18AM 25       AND THEN THERE IS MS. HOLMES, WHO ELECTED TO TAKE THE

10:18AM  1    STAND, AND BOTH IN HER DIRECT AND IN HER CROSS TALKED A

10:18AM  2    SIGNIFICANT DEAL ABOUT THE CMS INSPECTION AND WHAT THEY DO AND

10:18AM  3    HOW IT OCCURRED.

10:18AM  4        THERE'S A LOT OF CITES IN OUR BRIEF TO THIS RESPECT, BUT

10:18AM  5    THE RECORD IS REPLETE WITH EXAMPLES OF WHAT CMS IS, WHAT THEY

10:18AM  6    DO, HOW THE INSPECTION OCCURRED, THE FACT THAT THIS WAS A

10:18AM  7    ROUTINE INSPECTION.

10:18AM  8        AND I DON'T MEAN TO RETREAD OLD GROUND, BUT YOUR HONOR DID

10:18AM  9    HAVE A LOT OF THIS INFORMATION BEFORE THE COURT WHEN IT

10:18AM  10   DECIDED, BASED ON THE TOTALITY OF THE RECORD AT THE TIME, TO

10:18AM  11   OVERRULE DEFENSE'S OBJECTIONS AND ADMIT THE REPORT.

10:18AM  12       I UNDERSTAND THE ENTIRETY OF IT, I THINK THIS IS WHERE WE

10:18AM  13   ARE AT IT RIGHT NOW, THE ENTIRETY OF IT FOR A LIMITED PURPOSE,

10:18AM  14   AND THERE'S NO BASIS TO STRIKE IT NOW, AND THERE'S CERTAINLY NO

10:18AM  15   BASIS TO CALL IT OUT IN A JURY INSTRUCTION.

10:18AM  16            THE COURT:  OKAY.

10:18AM  17            MR. LEMENS:  I WILL CEDE MS. SAWYER SLIPPED MY MIND,

10:19AM  18   SO I WILL TAKE THAT BACK.

10:19AM  19       BUT NO ONE TESTIFIED TO WHAT HAPPENED AT CMS WITH RESPECT

10:19AM  20   TO THIS INSPECTION AND THIS REPORT.  THAT'S, OF COURSE, OUR

10:19AM  21   CONCERN.

10:19AM  22       WE THINK THE GOVERNMENT'S REPRESENTATIONS AND STATEMENTS

10:19AM  23   THAT IT INTENDED TO CALL A CMS WITNESS FROM THE OUTSET OF OUR

10:19AM  24   LITIGATION OVER THIS DOCUMENT SHOWS THE IMPORTANCE THAT THAT

10:19AM  25   HAD.

8884

10:19AM 1      THAT WITNESS DID NOT APPEAR AND THIS DOCUMENT SHOULD THUS

10:19AM 2  BE STRUCK EVEN IF IT WAS OFFERED FOR A LIMITED PURPOSE.

10:19AM 3          THE COURT:  OKAY.

10:19AM 4       ANYTHING FURTHER, MS. VOLKAR?

10:19AM 5          MS. VOLKAR:  YOUR HONOR, ONLY TO SAY THAT THE

10:19AM 6  GOVERNMENT'S STATEMENT THAT IT INTENDED TO CALL A CMS WITNESS

10:19AM 7  DOESN'T IMPACT HOW THE EVIDENCE COMES IN AT TRIAL.

10:19AM 8       THE DEFENSE, OF COURSE, MADE REPRESENTATIONS ABOUT CALLING

10:19AM 9  A DEFENSE EXPERT AND DIDN'T DO IT.  THINGS HAPPEN AT TRIAL.

10:19AM 10      THAT JUST HAS NO BEARING ON WHAT ACTUALLY OCCURRED AND HOW

10:19AM 11  THE DOCUMENTS WERE ACTUALLY ADMITTED.

10:19AM 12         THE COURT:  OKAY.

10:19AM 13      ANYTHING FURTHER?

10:20AM 14          MR. LEMENS:  NOTHING FURTHER.

10:20AM 15          THE COURT:  ALL RIGHT.  THANK YOU.

10:20AM 16          MS. VOLKAR:  CAN WE TURN TO THE JURY INSTRUCTION,

10:20AM 17  YOUR HONOR, OR --

10:20AM 18          THE COURT:  YES, YES.  GO RIGHT AHEAD.

10:20AM 19          MS. VOLKAR:  JUST NUMBER 29.

10:20AM 20          THE COURT:  YES.

10:20AM 21          MS. VOLKAR:  I THINK THE GOVERNMENT'S POSITION IS

10:20AM 22  CLEAR, BUT WE WOULD LIKE AN INDICATION FROM THE COURT.

10:20AM 23      WE STRONGLY OBJECT TO REALLY ANY INSTRUCTION BEING GIVEN,

10:20AM 24  AND IF THE INSTRUCTION IS GOING TO BE GIVEN, WE ASK THAT IT

10:20AM 25  SIMPLY BE ABOUT ALL EVIDENCE THAT WAS ADMITTED FOR A LIMITED

10:20AM  1    PURPOSE.

10:20AM  2        I PUT TOGETHER A LIST OF THOSE EXHIBIT NUMBERS THAT I'M

10:20AM  3    HAPPY TO SHARE WITH THE COURT AND THE OTHER SIDE, AND WE WOULD

10:20AM  4    PREFER IT JUST BE EXHIBITS ADMITTED FOR A LIMITED PURPOSE, IF

10:20AM  5    ANY INSTRUCTION IS GOING TO BE GIVEN.

10:20AM  6        BUT THE GOVERNMENT'S POSITION IS THAT REALLY THIS IS NOT

10:20AM  7    NECESSARY.  THE JURY TOOK NOTES.

10:20AM  8        ONE WAY THAT WE COULD SOLVE ANY CONFUSION IS BY REMOVING

10:20AM  9    THE A AND B SEPARATION AND HAVING IT JUST BE 4621.  I THINK

10:20AM 10    THERE ARE A LOT OF DIFFERENT WAYS THAT WE CAN SOLVE THIS

10:20AM 11    WITHOUT AN INSTRUCTION SINGLING OUT ONE PIECE OF EVIDENCE.

10:21AM 12        THE COURT:  OKAY.  I THINK ONE OF THE ISSUES

10:21AM 13    REGARDING THIS WAS, I THINK IT WAS B THAT WAS ISSUED AND THE

10:21AM 14    COURT ADMONISHED.  THE COURT DID NOT ADMONISH ON A, AND THAT'S

10:21AM 15    THE DISTINCTION THAT WE'RE HAVING HERE.

10:21AM 16        SO I'M HAPPY TO LOOK AT WHAT YOU HAVE.  THAT MIGHT BE A

10:21AM 17    SOLUTION THAT CAPTURES EVERYTHING.

10:21AM 18        MS. VOLKAR:  YOUR HONOR, ONE THING THAT THE

10:21AM 19    GOVERNMENT DOES WANT TO BE CLEAR ABOUT, THE DEFENSE DID

10:21AM 20    ACCURATELY STATE, IN REFLECTING THE RECORD, THAT 4621A WAS NOT

10:21AM 21    STATED IN FRONT OF THE JURY, AND 4621B WAS NOT STATED IN FRONT

10:21AM 22    OF THE JURY.

10:21AM 23        IT WAS PAGES 1 THROUGH 4 OF 4621, AND PAGES 48 THROUGH 55

10:21AM 24    OF 4621.

10:21AM 25        MY UNDERSTANDING WAS THAT, FOR CLARITY AFTERWARDS, THAT

10:21AM  1      WAS WHEN THEY WERE SEPARATED.  AND SO IF YOUR HONOR READS THE

10:21AM  2      RECORD AND THINKS IT'S CLEAR THAT THE ENTIRETY OF THE PAGES

10:21AM  3      WERE FOR A LIMITED PURPOSE, I DO THINK THAT JUST REMOVING THE

10:21AM  4      DISTINCTION A VERSUS B, WHICH WAS NOT PRESENTED TO THE JURY,

10:22AM  5      WOULD BE AN EASY FIX.

10:22AM  6           THE COURT:  WELL, THANK YOU FOR RAISING THAT POINT.

10:22AM  7           THE DEFENSE RAISED IT IN THEIR, IN THEIR BRIEFING, THAT

10:22AM  8      THEY WEREN'T PRESENT AT THE CONCLUSION OF THE DAY WHEN THE

10:22AM  9      EXHIBITS WERE FINALIZED, AS I'VE TASKED YOU TO DO, AND PUT THEM

10:22AM  10     ON THE THUMB DRIVE EVERY DAY.

10:22AM  11          I DON'T KNOW WHY YOU WEREN'T HERE TO DO THAT.  MY

10:22AM  12     ASSUMPTION -- NOT YOU -- BUT I DON'T KNOW WHY THERE WASN'T A

10:22AM  13     MEETING.

10:22AM  14          MY ASSUMPTION WAS THAT WAS WHAT WAS HAPPENING, THAT THE

10:22AM  15     DEFENSE AND THE PROSECUTION WERE MEETING, MAKING SURE THAT, AT

10:22AM  16     THE END OF THE DAY, THE COLLECTIVE EXHIBITS THAT WERE ADMITTED

10:22AM  17     WERE ACTUALLY WHAT YOU THOUGHT WERE ADMITTED AND ACCURATELY

10:22AM  18     NUMBERED AND IDENTIFIED SO WE WOULD AVOID, AT THE END OF THE

10:22AM  19     LAST DAY BEFORE JURY INSTRUCTIONS, TRYING TO RENUMBER EXHIBITS

10:22AM  20     AND ALL OF THAT.

10:22AM  21          MR. LEMENS:  I UNDERSTAND, YOUR HONOR.

10:22AM  22          I THINK OUR REPRESENTATION WAS THAT AN ATTORNEY FOR THE

10:23AM  23     DEFENSE WAS NOT PRESENT, AND OF COURSE OUR WONDERFUL TEAM, A

10:23AM  24     MEMBER OF OUR TEAM WAS THERE DOING THE ADMINISTRATIVE WORK.

10:23AM  25          I DON'T THINK ANY SUBSTANTIVE DECISIONS WERE MADE DURING

10:23AM 1    THAT DISCUSSION.  I THINK THAT'S THE RELEVANT POINT SO FAR AS

10:23AM 2    WE'RE CONCERNED, NOR WOULD IT HAVE BEEN APPROPRIATE FOR ANY

10:23AM 3    SUBSTANTIVE DISCUSSIONS TO OCCUR AT THAT POINT.

10:23AM 4         BUT WE TAKE YOUR HONOR'S POINT.

10:23AM 5         I THINK -- AND I WILL NEED TO CONFER WITH THE TEAM.  WE'RE

10:23AM 6    HAPPY TO CONSIDER, OF COURSE, MS. VOLKAR'S PROPOSALS.  WE HAVE

10:23AM 7    NOT SEEN THOSE.

10:23AM 8              THE COURT:  SURE.

10:23AM 9              MR. LEMENS:  I THINK THE FACT THAT WE HAVE HAD THIS

10:23AM 10   DISCUSSION BOTH TODAY AND ON FRIDAY SUGGEST THAT PERHAPS SOME

10:23AM 11   CLARIFYING INSTRUCTION IS APPROPRIATE.

10:23AM 12        BUT WE'LL, OF COURSE, AWAIT THE COURT'S GUIDANCE AND

10:23AM 13   WE'LL --

10:23AM 14             THE COURT:  WELL, LET ME SAY, I THINK THERE IS.  I

10:23AM 15   THINK THERE IS.

10:23AM 16        IT WOULD BE APPROPRIATE, GIVEN THAT WE'VE NOW IDENTIFIED

10:23AM 17   THESE AS A AND B, AND I THINK THE PARTIES AGREE THAT THAT

10:23AM 18   DIDN'T HAPPEN IN FRONT OF THE JURY.  IT WAS PORTIONS OF THE

10:23AM 19   DOCUMENTS THAT WERE READ, SO THE JURY DOESN'T KNOW WHAT A AND B

10:24AM 20   ARE.

10:24AM 21        SO IT MIGHT BE BETTER TO COLLECTIVELY REFERENCE ITEMS THAT

10:24AM 22   WERE INSTRUCTED.

10:24AM 23        BUT WE DO -- THE RECORD DOES NEED TO MAKE CLEAR THEN

10:24AM 24   THAT -- BECAUSE THERE'S A GAP.  A WAS NOT -- THEY WEREN'T

10:24AM 25   INFORMED THAT IT WAS FOR THEIR -- FOR NOTICE ONLY.

10:24AM  1          THE COURT -- LET ME JUST SAY, I INTEND TO FIND THAT THEY

10:24AM  2     WERE JUST FOR NOTICE, SO WE WILL NEED TO CORRECT THE RECORD, OR

10:24AM  3     IN THE INSTRUCTIONS SOMEHOW TO INDICATE THAT -- INFORM THE JURY

10:24AM  4     THAT THE A PORTION -- WE'LL CALL IT THE A PORTION -- WAS ALSO

10:24AM  5     NOT FOR THE TRUTH, BUT JUST FOR NOTICE.

10:24AM  6          MS. VOLKAR:  YOUR HONOR, IF I MAY SUGGEST A WAY TO

10:24AM  7     DO SO.  THERE HAVE BEEN MULTIPLE TIMES THROUGHOUT THIS TRIAL

10:24AM  8     THAT EITHER THE PARTIES OR THE COURT HAVE TURNED TO THE JURY

10:24AM  9     AND SAID, "FOR HOUSEKEEPING PURPOSES, WE WANT TO NOTE THIS."

10:25AM 10          I DO THINK THAT IT COULD BE AS SIMPLE AS, "FOR

10:25AM 11     HOUSEKEEPING PURPOSES, ALL PAGES OF 4621 WERE ADMITTED FOR A

10:25AM 12     LIMITED PURPOSE."

10:25AM 13          AGAIN, THE GOVERNMENT'S POSITION IS THAT IT SHOULD NOT BE

10:25AM 14     SINGLED OUT IN A JURY INSTRUCTION THAT IS GOING TO GO BACK WITH

10:25AM 15     THE JURY.  I DO THINK THAT THAT UNFAIRLY PUTS A THUMB ON THE

10:25AM 16     SCALE FOR ONE PIECE OF EVIDENCE WHEN THERE HAVE BEEN MULTIPLE

10:25AM 17     PIECES OF EVIDENCE ADMITTED FOR A LIMITED PURPOSE.

10:25AM 18          I DO AGREE THAT IF WE WANT TO BE CLEAR FOR THE JURY, IT'S

10:25AM 19     WORTH SAYING THAT TO THE JURY IN SOME MANNER, BUT I DO THINK

10:25AM 20     THAT SOMETHING SHORT OF INCLUDING AN INSTRUCTION COULD

10:25AM 21     ACCOMPLISH THAT.

10:25AM 22          AND THE LAST POINT I WANTED TO SAY IS THE COURT, OF

10:25AM 23     COURSE, ORDERED THE PARTIES, AT THE OUTSET OF TRIAL, TO MEET

10:25AM 24     EVERY DAY AND TO FINALIZE THE EXHIBITS BEFORE THEY WERE GIVEN

10:25AM 25     TO THE PUBLIC.

10:25AM  1      I CAN REPRESENT THAT I'VE RELIED AS MUCH ON OUR SUPPORT

10:25AM  2   STAFF AND OUR PARALEGAL, BUT I'VE ALSO, IF I THOUGHT THERE WAS

10:26AM  3   SOMETHING IN DISPUTE, ASKED HER TO NOTIFY ME IF THERE WAS ANY

10:26AM  4   DISPUTE OR ANY ISSUES, AND PART OF WHY I KNOW THE BACKGROUND OF

10:26AM  5   4621A AND B IS THAT I LEARNED THERE WAS NO DISPUTE AND THAT'S

10:26AM  6   WHY ATTORNEYS WERE NOT NEEDED TO GET INVOLVED.

10:26AM  7      I DON'T WANT TO CAST ANY ASPERSIONS BECAUSE I THINK WE

10:26AM  8   HAVE WONDERFUL PEOPLE --

10:26AM  9          THE COURT:  I'M NOT DOING THAT.  LET ME BE CLEAR.

10:26AM  10  I'M NOT -- BOTH OF YOUR TEAMS HAVE WORKED TREMENDOUSLY ON THIS

10:26AM  11  CASE, AND I APPRECIATE THEIR EFFORTS.  IT'S BENEFITED ALL OF

10:26AM  12  US.

10:26AM  13     AND WHEN I SAY THAT, I MEAN OUR COURT REPORTER, MY STAFF,

10:26AM  14  THE COURT STAFF, I KNOW YOUR TEAMS AS WELL.  IT'S BEEN A LONG

10:26AM  15  TRIAL AND THERE'S A LOT OF EXHIBITS.

10:26AM  16     SO IT'S NOT UNUSUAL TO FIND HICCUPS.  I'LL CALL THEM THAT.

10:26AM  17          MR. LEMENS:  PERHAPS MAYBE JUST FOR LOGISTICS,

10:26AM  18  MS. VOLKAR AND US AND OUR RESPECTIVE TEAMS COULD DISCUSS AND

10:26AM  19  EITHER COME UP WITH COMPETING PROPOSALS OR PROPOSALS TO THE

10:26AM  20  COURT, PROBABLY TODAY OR AS SOON AS POSSIBLE.

10:26AM  21          THE COURT:  I'M HOPING THAT WE CAN -- MY GOAL WAS TO

10:27AM  22  FINALIZE INSTRUCTIONS TODAY SO THAT EACH PARTY WOULD HAVE THEM,

10:27AM  23  INCLUDING THE COURT.  AND YOU HAVE TWO DAYS TO PREPARE

10:27AM  24  ARGUMENT.  THAT'S PROBABLY MORE THAN YOU NEED, BUT AT LEAST YOU

10:27AM  25  HAVE IT.

10:27AM 1         MS. VOLKAR:  WHAT WOULD BE MOST BENEFICIAL TO THE

10:27AM 2    GOVERNMENT, YOUR HONOR, IS IF THE COURT WERE TO INDICATE -- I

10:27AM 3    THINK THERE ARE MULTIPLE OPTIONS ON THE TABLE.

10:27AM 4         ONE IS IF THE COURT IS INTENDING TO GIVE AN INSTRUCTION ON

10:27AM 5    THE EVIDENCE THAT WAS ADMITTED FOR A LIMITED PURPOSE, AGAIN,

10:27AM 6    THE GOVERNMENT'S POSITION IS THAT THE JURY HAS BEEN TAKING

10:27AM 7    NOTES WHEN THE COURT SAYS IT.  I THINK I GAVE ONE EXAMPLE OF

10:27AM 8    HOW THIS PARTICULAR PIECE OF EVIDENCE COULD BE ADDRESSED AS A

10:27AM 9    HOUSEKEEPING MATTER AND NOT IN THE JURY INSTRUCTIONS.

10:27AM 10        IF THE COURT IS INCLINED TO GIVE AN INSTRUCTION, THEN I

10:27AM 11   THINK WHAT MR. LEMENS JUST SUGGESTED OF PROVIDING COMPETING

10:27AM 12   PROPOSALS IS LIKELY THE BEST WAY TO GO.

10:27AM 13        BUT IF THE COURT IS AT ALL SWAYED BY THE GOVERNMENT'S

10:27AM 14   POINT THAT THERE REALLY IS NO NEED TO SINGLE OUT A PIECE OF

10:28AM 15   EVIDENCE LIKE THIS AND THE JURY HAS TAKEN NOTES AND IF WE

10:28AM 16   CLARIFY THIS ONE HICCUP, I THINK THAT WOULD DO IT, THAT WOULD

10:28AM 17   HELP.

10:28AM 18        THE COURT:  THANK YOU.

10:28AM 19        I THINK THAT TALKING ABOUT THE EVIDENCE JUST BEFORE THE

10:28AM 20   CLOSING IS NOT MY PREFERENCE.  I THINK THAT WOULD BETTER BE

10:28AM 21   ADDRESSED IN AN INSTRUCTION SO THE JURY COULD BE FOCUSSED ON

10:28AM 22   THE ARGUMENTS AND THEN HAVE THE INSTRUCTIONS.

10:28AM 23        IT MAY BE THAT WHOEVER IS GOING TO ARGUE THE CASE WILL

10:28AM 24   REFERENCE THE INSTRUCTIONS.  THAT'S WHAT HAPPENS IN CLOSING

10:28AM 25   ARGUMENTS.

| | | |
|---|---|---|
| 10:28AM | 1 | I WANT THESE TO BE FINALIZED SO YOUR LAWYERS CAN USE THEM |
| 10:28AM | 2 | AS YOU SEE FIT IN THE CLOSINGS, AND PERHAPS THEY CAN |
| 10:28AM | 3 | REFERENCE -- INCORPORATE IN THEIR COMMENTS AND REFERENCE THE |
| 10:28AM | 4 | NUANCES OF THIS TESTIMONY, AS WELL AS ALL OF THE OTHERS. |
| 10:28AM | 5 | AND I AGREE, MS. VOLKAR, THE JURY HAS BEEN, WHEN I'VE |
| 10:28AM | 6 | INDICATED -- I THINK THERE'S ONLY ONE JUROR WHO I HAVEN'T SEEN |
| 10:29AM | 7 | TAKE A NOTE, BUT EVERYONE ELSE IS TAKING NOTES, AND THEY'VE |
| 10:29AM | 8 | NOTED THAT. |
| 10:29AM | 9 | SO AT LEAST FOR THAT ONE JUROR WHO PERHAPS HAS A |
| 10:29AM | 10 | PHOTOGRAPHIC MEMORY, THE INSTRUCTION -- IF NOT, THE INSTRUCTION |
| 10:29AM | 11 | WOULD BE HELPFUL TO FULLY INFORM AT LEAST THAT ONE JUROR. |
| 10:29AM | 12 | SO LET'S USE THAT PREMISE, AND I'LL GIVE YOU AN |
| 10:29AM | 13 | OPPORTUNITY TO WORDSMITH WITH MS. SAHARIA AND SEE IF SOMETHING |
| 10:29AM | 14 | COULD COME UP. |
| 10:29AM | 15 | MS. VOLKAR:  THAT WAS GOING TO BE MY LAST QUESTION, |
| 10:29AM | 16 | YOUR HONOR, WHICH IS I THINK THIS MAY BE THE ONLY OUTSTANDING |
| 10:29AM | 17 | ISSUE LEFT, OTHER THAN THE "ALLEGED" VERSUS "VICTIMS." |
| 10:29AM | 18 | I DON'T KNOW IF YOU WANT TO RESOLVE THAT NOW TO TAKE AN |
| 10:29AM | 19 | ISSUE OFF THE TABLE, BUT MAYBE WE NEED TO INVITE MS. SAHARIA |
| 10:29AM | 20 | UP. |
| 10:29AM | 21 | THE COURT:  MS. SAHARIA, ARE YOU READY? |
| 10:29AM | 22 | MS. SAHARIA:  YOUR HONOR, I DON'T HAVE ANY BRILLIANT |
| 10:30AM | 23 | SOLUTIONS OTHER THAN TO SAY "ALLEGED VICTIMS" OR "INVESTORS" OR |
| 10:30AM | 24 | PERHAPS "CONDUCT OF INVESTORS IDENTIFIED IN THE INDICTMENT." |
| 10:30AM | 25 | I'LL STAND ON THOSE TWO COMPETING PROPOSALS FOR THE COURT |

| 10:30AM | 1 | TO EITHER CALL THEM JUST "INVESTORS" AS THE SECOND SENTENCE |

10:30AM   1    TO EITHER CALL THEM JUST "INVESTORS" AS THE SECOND SENTENCE

10:30AM   2    ALREADY CALLS THEM, OR TO CALL THEM "ALLEGED VICTIMS."

10:30AM   3            THE COURT:  MS. VOLKAR, DO YOU HAVE A PREFERENCE IF

10:30AM   4    THE COURT IS GOING TO MODIFY THAT INSTRUCTION?

10:30AM   5            MS. VOLKAR:  IF THE COURT IS GOING TO MODIFY IT, I

10:30AM   6    THINK THE GOVERNMENT'S PREFERENCE WOULD BE "ALLEGED VICTIMS."

10:30AM   7            THE COURT:  WE'LL LEAVE IT "ALLEGED VICTIMS," OR

10:30AM   8    WE'LL ADD "ALLEGED VICTIMS," PARDON ME.

10:30AM   9            MS. SAHARIA:  THANK YOU.

10:30AM   10       AND JUST ONE FINAL POINT.  I DID LOOK AT THE COUNTS OF THE

10:30AM   11   INDICTMENT, AND I DO CONTINUE TO OBJECT TO GIVING THOSE TO THE

10:30AM   12   JURY.

10:30AM   13       I THINK THERE'S A NUMBER OF THINGS THAT WOULD EITHER NEED

10:30AM   14   TO BE REDACTED OR THAT WILL CONFUSE THE JURY.

10:30AM   15       SO JUST TO GIVE THE COURT A LIST OF THOSE, FOR INSTANCE,

10:30AM   16   YOU KNOW, EACH OF THE COUNTS INCORPORATES ALL OF THE PRIOR

10:31AM   17   PARAGRAPHS BY REFERENCE, AND I THINK THAT COULD BE CONFUSING TO

10:31AM   18   THE JURY IF THEY DON'T HAVE THOSE PARAGRAPHS.

10:31AM   19       THOSE PARAGRAPHS ARE THE SPEAKING ALLEGATIONS THAT WE

10:31AM   20   PARTICULARLY OBJECT TO, AND SO I THINK THAT GIVING THIS TO THE

10:31AM   21   JURY MIGHT CONFUSE THE JURY.

10:31AM   22       OF COURSE EACH COUNT REFERENCES BOTH MS. HOLMES AND

10:31AM   23   MR. BALWANI.

10:31AM   24       PARAGRAPH 22 TALKS ABOUT INDUCING DOCTORS TO REFER

10:31AM   25   PATIENTS AS PART OF THE CHARGED CONDUCT, WHICH WE OBJECT TO.

10:31AM  1      AND THEN SEVERAL OF THE PARAGRAPHS, PARAGRAPH 24 AND

10:31AM  2   PARAGRAPH 26 REFERENCE THE GOVERNMENT'S NOW ABANDONED DUTY TO

10:31AM  3   DISCLOSE THEORY.  THAT WOULD NEED TO BE REDACTED.

10:31AM  4      SO GIVEN THE NEED FOR SOME SORT OF REDACTIONS, I JUST

10:31AM  5   THINK IT WOULD BE UNHELPFUL TO THE JURY.  TO GIVE THEM EVEN THE

10:31AM  6   COUNTS WOULD REQUIRE SOME SORT OF REDACTIONS, AND I THINK IT

10:31AM  7   WOULD BE CONFUSING TO THE JURY TO GIVE IT TO THEM.

10:32AM  8      I THINK I HEARD THE GOVERNMENT SAY THAT THEY'RE CONTENT

10:32AM  9   THAT THE INSTRUCTIONS SUFFICIENTLY GIVE THE JURY THE CORE OF

10:32AM 10   THE INDICTMENT, AND WE'RE CONTENT WITH THAT AS WELL,

10:32AM 11   YOUR HONOR.

10:32AM 12      MS. VOLKAR:  YOUR HONOR, I THINK THAT THE PARTIES

10:32AM 13   ARE BOTH GOING TO ARGUE BEFORE THE COURT GIVES ITS

10:32AM 14   INSTRUCTIONS.  THE GOVERNMENT IS VERY AWARE THAT THE COURT'S

10:32AM 15   INSTRUCTIONS, OF COURSE, HAVE PARTICULAR SIGNIFICANCE FOR THE

10:32AM 16   JURY.

10:32AM 17      WHAT I RECALL THE DEBATE BEING ABOUT BEFOREHAND WAS A

10:32AM 18   CONCERN OF VARIANCE BETWEEN ANYTHING THE COURT DESCRIBED AND

10:32AM 19   THE INDICTMENT.

10:32AM 20      SO THE GOVERNMENT'S POSITION IS, QUITE SIMPLY, EITHER THE

10:32AM 21   INDICTMENT SHOULD BE READ AS IS OR SOME PORTION, OR THE

10:32AM 22   INSTRUCTION SHOULD BE GIVEN JUST AS THE PARTIES HAVE AGREED.

10:32AM 23      SO IF THE DEFENSE IS CONTENT WITH THE INSTRUCTIONS AS THE

10:32AM 24   PARTIES AGREE, THEN THAT'S FINE BY THE GOVERNMENT AS WELL.

10:32AM 25      THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

| | | |
|---|---|---|
| 10:32AM | 1 | WHEN I LOOK AT THE DOCUMENT 469, WHICH IS THE THIRD |
| 10:32AM | 2 | SUPERSEDING INDICTMENT, PAGE 9, FOR EXAMPLE, LISTS COUNTS THREE |
| 10:32AM | 3 | THROUGH EIGHT.  PAGE 10 LISTS COUNTS NINE THROUGH TEN IN THE |
| 10:33AM | 4 | GRAPHICAL BOXES.  THAT'S WHAT I WAS THINKING MIGHT BE HELPFUL |
| 10:33AM | 5 | TO THE JURY. |
| 10:33AM | 6 | BUT PERHAPS -- |
| 10:33AM | 7 | MS. SAHARIA:  I DON'T OBJECT TO THE BOXES, BUT I DO |
| 10:33AM | 8 | THINK THAT THE CONTENT OF THE BOXES HAS BEEN INCORPORATED INTO |
| 10:33AM | 9 | THE INSTRUCTIONS, AT LEAST THE DATE AND THE AMOUNT AND THE |
| 10:33AM | 10 | CORRESPONDING COUNTS. |
| 10:33AM | 11 | SO I THINK THEY HAVE THE CORE OF THAT INFORMATION. |
| 10:33AM | 12 | THE COURT:  WELL, IF IT'S GOING TO BE PROBLEMATIC -- |
| 10:33AM | 13 | YOU KNOW, I'D LIKE TO THINK I'M A PROBLEM SOLVER THAN A PROBLEM |
| 10:33AM | 14 | CREATOR, SO LET'S LEAVE IT AS IS AND WE'LL LEAVE IT UP TO YOU |
| 10:33AM | 15 | TO DECIDE HOW TO PRESENT THE INFORMATION TO THE JURY FOR YOUR |
| 10:33AM | 16 | BEST BENEFIT. |
| 10:33AM | 17 | OKAY? |
| 10:33AM | 18 | MS. SAHARIA:  BOTH PARTIES ARE CAPABLE OF DOING |
| 10:33AM | 19 | THAT, YOUR HONOR. |
| 10:33AM | 20 | THE COURT:  I THINK SO.  I THINK SO.  ALL RIGHT. |
| 10:33AM | 21 | MS. SAHARIA:  SO WE JUST OWE THE COURT THEN THE |
| 10:33AM | 22 | PROPOSAL AND THE CMS REPORT INSTRUCTION? |
| 10:33AM | 23 | THE COURT:  RIGHT.  RIGHT.  I KNOW YOU'RE GOING TO |
| 10:33AM | 24 | WORK HARD ON THAT.  AS I SAID, I WOULD LIKE TO GET THE |
| 10:33AM | 25 | INSTRUCTIONS SETTLED. |

10:33AM 1           MS. SAHARIA:  WE'LL DO THAT AS SOON AS WE GO BACK TO

10:34AM 2   OUR RESPECTIVE WORKPLACES, YOUR HONOR.

10:34AM 3           THE COURT:  OKAY.  GREAT.  I'LL EAGERLY AWAIT YOUR

10:34AM 4   WORK PRODUCT.

10:34AM 5       ANYTHING ELSE BEFORE WE BREAK?

10:34AM 6           MS. VOLKAR:  NO, YOUR HONOR.

10:34AM 7           MS. SAHARIA:  YOUR HONOR, MR. DOWNEY MAY HAVE

10:34AM 8   SOMETHING.

10:34AM 9           THE COURT:  YES.

10:34AM 10           MR. DOWNEY:  THIS IS A VERY SMALL ISSUE, YOUR HONOR,

10:34AM 11   BUT YOUR HONOR HAD RAISED THE ISSUE ON FRIDAY AND I THINK ONE

10:34AM 12   TIME BEFORE ABOUT WHETHER THE JURY SHOULD HAVE THE WRITTEN

10:34AM 13   INSTRUCTIONS AS THEY'RE CHARGED.

10:34AM 14           THE COURT:  RIGHT.

10:34AM 15           MR. DOWNEY:  OBVIOUSLY IT'S THE COURT'S PREFERENCE,

10:34AM 16   BUT MY REACTION UPON THINKING ABOUT IT IS THAT, YOU KNOW,

10:34AM 17   AMONGST 12 PEOPLE WE HAVE PEOPLE WHO LEARN DIFFERENTLY, AND I

10:34AM 18   THINK GIVING THEM THE INSTRUCTIONS WHILE YOUR HONOR IS CHARGING

10:34AM 19   THEM ORALLY IS LIKELY TO CAUSE THEM TO FOCUS ON THE WRITTEN

10:34AM 20   DOCUMENT.

10:34AM 21       SO OBVIOUSLY WITHOUT ANY MAGIC, BUT MY OWN PREFERENCE

10:34AM 22   WOULD BE IF THEY LISTEN TO YOUR HONOR WHILE THEY DON'T HAVE THE

10:34AM 23   DOCUMENT, OBVIOUSLY THEY WILL HAVE THE DOCUMENT LATER.

10:34AM 24       SO I JUST WANTED TO PROVIDE THAT FEEDBACK.

10:34AM 25           THE COURT:  DO YOU HAVE AN OPINION ON THIS,

| | | |
|---|---|---|
| 10:35AM | 1 | MS. VOLKAR? |
| 10:35AM | 2 | MS. VOLKAR:  THE GOVERNMENT DEFERS TO THE COURT.  I |
| 10:35AM | 3 | BELIEVE THE COURT'S TYPICAL PRACTICE IS TO READ IT ORALLY AND |
| 10:35AM | 4 | THEN PROVIDE A WRITTEN VERSION LATER. |
| 10:35AM | 5 | AS MR. DOWNEY SUGGESTS, THAT COVERS ALL TYPES OF LEARNERS, |
| 10:35AM | 6 | AND I THINK THAT WOULD BE FINE WITH THE GOVERNMENT. |
| 10:35AM | 7 | THE COURT:  OKAY.  THAT'S WHAT I'LL DO THEN. |
| 10:35AM | 8 | THAT'S BEEN MY NORMAL PRACTICE, AS I INDICATED.  I WANTED |
| 10:35AM | 9 | TO INQUIRE OF THE PARTIES WHETHER THE COURT SHOULD DEVIATE FROM |
| 10:35AM | 10 | THAT. |
| 10:35AM | 11 | ALL RIGHT.  THANK YOU. |
| 10:35AM | 12 | MR. DOWNEY, DID YOU -- AND I THINK MR. SCHENK WAS PART OF |
| 10:35AM | 13 | THE DISCUSSION -- DID YOU REACH SOME AGREEMENT ON A SCHEDULING |
| 10:35AM | 14 | OR A BREAKING OF THE ARGUMENTS AND WHETHER YOU WANT TO INVOLVE |
| 10:35AM | 15 | ME IN THAT? |
| 10:35AM | 16 | MR. DOWNEY:  YOU KNOW, YOUR HONOR, I THINK |
| 10:35AM | 17 | MR. SCHENK IS PROBABLY STILL DECIDING ON OVERALL LENGTH. |
| 10:35AM | 18 | THAT'S WHERE HE WAS ON FRIDAY. |
| 10:35AM | 19 | THE COURT:  AND I'M NOT ASKING YOU TO COMMIT.  I |
| 10:35AM | 20 | JUST WANT TO KNOW IF YOU WANT ME TO BE -- |
| 10:35AM | 21 | MR. DOWNEY:  I THINK I'LL IDENTIFY TO HIM IN ANY |
| 10:35AM | 22 | EVENT WHEN A BREAK IS NEEDED, AND I THINK HE CAN PLAN AROUND |
| 10:35AM | 23 | THAT I ASSUME. |
| 10:35AM | 24 | THE COURT:  MR. SCHENK? |
| 10:35AM | 25 | MR. SCHENK:  YES.  MY UNDERSTANDING, FROM OUR |

| | | |
|---|---|---|
| 10:36AM | 1 | DISCUSSION ON FRIDAY, WAS THAT DURING THE TRIAL WE HAVE TENDED |
| 10:36AM | 2 | TO TAKE BREAKS AROUND 11:30, AND THE GOVERNMENT, IF ITS CLOSING |
| 10:36AM | 3 | IS STILL GOING ON AT THAT POINT, MAYBE COULD FIND A CONVENIENT |
| 10:36AM | 4 | TIME TO STOP RIGHT AROUND THAT TIME, LET'S SAY SOMETIME BETWEEN |
| 10:36AM | 5 | 11:00 OR 11:30, OR SOMEWHERE AROUND THERE, AND I THINK THAT |
| 10:36AM | 6 | WOULD BE THE PLAN IS I'LL TRY TO PAY ATTENTION TO THE CLOCK AND |
| 10:36AM | 7 | LOOK UP AND OFFER A TIME. |
| 10:36AM | 8 | BUT I ALSO -- |
| 10:36AM | 9 | MR. DOWNEY:  I THINK, JUST FOR RESOLUTION OF IT AND |
| 10:36AM | 10 | CONSISTENT WITH OUR PRACTICE, I WOULD SAY LET'S BREAK AT 11:15 |
| 10:36AM | 11 | AND HE CAN PLAN AROUND THAT. |
| 10:36AM | 12 | MR. SCHENK:  YES, I'LL DO MY BEST.  SOMETIMES ONE |
| 10:36AM | 13 | GETS LOST. |
| 10:36AM | 14 | MR. DOWNEY:  UNDERSTOOD. |
| 10:36AM | 15 | THE COURT:  BUT NO LATER THAN 11:30.  DOES THAT |
| 10:36AM | 16 | WORK? |
| 10:36AM | 17 | MR. DOWNEY:  I THINK THAT'S FINE, YOUR HONOR. |
| 10:36AM | 18 | MR. SCHENK:  SURE. |
| 10:36AM | 19 | THE COURT:  AND THAT WILL BE A 30 MINUTE BREAK? |
| 10:36AM | 20 | MR. SCHENK:  YES. |
| 10:36AM | 21 | MR. DOWNEY:  YES. |
| 10:36AM | 22 | THE COURT:  OKAY.  AND THEN WE'LL COME BACK AND |
| 10:36AM | 23 | FINISH WHATEVER. |
| 10:36AM | 24 | IF YOU FEEL -- IF EITHER PARTY FEELS THAT, NOTWITHSTANDING |
| 10:37AM | 25 | OUR SCHEDULED BREAKS -- WE'LL DO 11:30, AND THEN IS IT 1:30? |

8898

10:37AM   1                    MR. DOWNEY:  I THINK THAT'S RIGHT, YOUR HONOR.

10:37AM   2                    THE COURT:  IF YOU FEEL THAT WE NEED TO TAKE A BREAK

10:37AM   3      FOR WHATEVER REASON, YOU SHOULD LET ME KNOW, OR PLAN THAT IN

10:37AM   4      YOUR ARGUMENTS.  IF YOU'RE GOING TO GO THREE MORE HOURS, WE

10:37AM   5      PROBABLY SHOULD TAKE A BREAK.

10:37AM   6              OKAY.  THAT'S HELPFUL.

10:37AM   7                    MR. DOWNEY:  THANK YOU, YOUR HONOR.

10:37AM   8                    MR. SCHENK:  THANK YOU.

10:37AM   9                    THE CLERK:  COURT IS ADJOURNED.

10:37AM  10              (COURT ADJOURNED AT 10:37 A.M.)

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1

2

3                          CERTIFICATE OF REPORTERS

4

5

6

7          WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11          THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16          IRENE RODRIGUEZ, CSR, CRR
            CERTIFICATE NUMBER 8076
17

18

19          LEE-ANNE SHORTRIDGE, CSR, CRR
            CERTIFICATE NUMBER 9595
20

21          DATED:  DECEMBER 13, 2021

22

23

24

25

```
 1
 2                      UNITED STATES DISTRICT COURT
 3                    NORTHERN DISTRICT OF CALIFORNIA
 4                          SAN JOSE DIVISION
 5
      UNITED STATES OF AMERICA,      )  CR-18-00258-EJD
 6                                   )
                      PLAINTIFF,     )  SAN JOSE, CALIFORNIA
 7                                   )
            VS.                      )  VOLUME 46
 8                                   )
      ELIZABETH A. HOLMES,           )  DECEMBER 16, 2021
 9                                   )
                      DEFENDANT.     )  PAGES 8899 - 9110
10      _____)
11                   TRANSCRIPT OF TRIAL PROCEEDINGS
12             BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13      A P P E A R A N C E S:
14
      FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE
15                          BY:  JOHN C. BOSTIC
                                 JEFFREY B. SCHENK
16                          150 ALMADEN BOULEVARD, SUITE 900
                            SAN JOSE, CALIFORNIA 95113
17
                            BY:  ROBERT S. LEACH
18                               KELLY VOLKAR
                            1301 CLAY STREET, SUITE 340S
19                          OAKLAND, CALIFORNIA 94612
20          (APPEARANCES CONTINUED ON THE NEXT PAGE.)
21
      OFFICIAL COURT REPORTERS:
22                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074
23                          LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
25             TRANSCRIPT PRODUCED WITH COMPUTER
```

ER-12476

```
 1
          A P P E A R A N C E S: (CONT'D)
 2

 3     FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
 4                                  LANCE A. WADE
                                    KATHERINE TREFZ
 5                                  SEEMA ROPER
                                    ANDREW LEMENS
 6                                  AMY SAHARIA
                                    J.R. FLEURMONT
 7                                  RICHARD CLEARY
                                    PATRICK LOOBY
 8                             725 TWELFTH STREET, N.W.
                               WASHINGTON, D.C. 20005
 9
                               LAW OFFICE OF JOHN D. CLINE
10                             BY:  JOHN D. CLINE
                               ONE EMBARCADERO CENTER, SUITE 500
11                             SAN FRANCISCO, CALIFORNIA 94111

12
       ALSO PRESENT:           FEDERAL BUREAU OF INVESTIGATION
13                             BY:  ADELAIDA HERNANDEZ

14                             OFFICE OF THE U.S. ATTORNEY
                               BY:  LAKISHA HOLLIMAN, PARALEGAL
15                                  MADDI WACHS, PARALEGAL

16                             WILLIAMS & CONNOLLY
                               BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL
17
                               TBC
18                             BY:  BRIAN BENNETT, TECHNICIAN

19

20

21

22

23

24

25
```

1

2                          INDEX OF PROCEEDINGS

3

4      CLOSING ARGUMENT BY MR. SCHENK              P. 8909

5      CLOSING ARGUMENT BY MR. DOWNEY              P. 9031

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|  | 1 | SAN JOSE, CALIFORNIA                    DECEMBER 16, 2021 |
|--|---|---|

08:34AM  2        P R O C E E D I N G S

08:34AM  3        (COURT CONVENED AT 8:34 A.M.)

08:34AM  4        (JURY OUT AT 8:34 A.M.)

08:34AM  5            THE COURT:  WE ARE ON THE RECORD IN THE HOLMES

08:34AM  6    MATTER.  ALL COUNSEL ARE PRESENT.  MS. HOLMES IS PRESENT.

08:34AM  7        WE'RE OUTSIDE OF THE PRESENCE OF THE JURY.

08:34AM  8        GOOD MORNING EVERYONE.

08:34AM  9        I WANTED TO JUST COVER A COUPLE OF ITEMS.  FIRST OF ALL,

08:34AM 10    TO CONFIRM SOME DISCUSSIONS WE HAD FRIDAY LAST ABOUT EVIDENCE,

08:34AM 11    AND THIS IS REGARDING EXHIBIT 4621.

08:34AM 12        PLEASE RECALL THAT WE HAVE HAD DISCUSSIONS ABOUT THIS

08:34AM 13    EXHIBIT LAST WEEK.  WE TALKED ABOUT WHETHER OR NOT AND HOW THIS

08:34AM 14    PIECE OF EVIDENCE WOULD BE INTRODUCED.  WE HAD DISCUSSIONS ON

08:34AM 15    THE RECORD.  THERE WAS AN EXCHANGE OF EMAIL BETWEEN THE PARTIES

08:34AM 16    WITH MS. SAHARIA AND OTHERS REGARDING WHAT AND HOW THIS

08:34AM 17    INSTRUCTION SHOULD BE GIVEN.

08:35AM 18        AS A RESULT OF THOSE CONVERSATIONS -- AGAIN, SOME OF THEM

08:35AM 19    WERE VIA EMAIL -- AGAIN, THE COURT INDICATED IT WOULD NOT GIVE

08:35AM 20    THE PROPOSED INSTRUCTIONS, I THINK IT WAS 30, MAYBE THE

08:35AM 21    ULTIMATE ONE WAS 29 IF I'M NOT MISTAKEN, 29, 30, OR 31.  I

08:35AM 22    CAN'T RECALL.

08:35AM 23        BUT THE COURT INDICATED THAT IT WOULD, AS WE HAD DISCUSSED

08:35AM 24    AS ONE OF THE OPTIONS, THE COURT WOULD INFORM THE JURY THAT

08:35AM 25    THEY ARE INSTRUCTED THAT TRIAL EXHIBIT 4621, WHICH CONTAINS

08:35AM  1    EXCERPTS OF THE JANUARY 25, 2016 CMS REPORT WAS ADMITTED FOR

08:35AM  2    THE LIMITED PURPOSE OF MS. HOLMES'S STATE OF MIND AND NOT FOR

08:35AM  3    THE TRUTH OF THE MATTER ASSERTED.

08:35AM  4        AND THAT'S WHAT I INTEND TO DO THIS MORNING BEFORE YOU

08:35AM  5    BEGIN ANY ARGUMENT.  I WANTED TO INFORM YOU OF THAT AND TO

08:35AM  6    ALLOW YOU TO COMMENT IF YOU WISH.

08:35AM  7        FOR THE GOVERNMENT?

08:36AM  8            THE CLERK:  COUNSEL, YOU'LL NEED TO USE THE LAPEL

08:36AM  9    MIKE.

08:36AM  10            THE COURT:  WE'RE USING THE MIKES.

08:36AM  11            MR. LEACH:  THANK YOU, YOUR HONOR.  GOOD MORNING.

08:36AM  12    ROBERT LEACH FOR THE UNITED STATES.

08:36AM  13            THE COURT:  GOOD MORNING.

08:36AM  14            MR. LEACH:  THAT'S OUR UNDERSTANDING OF THE COURT'S

08:36AM  15    INTENTIONS, AND WE HAVE NO FURTHER SUBMISSION.

08:36AM  16            THE COURT:  ALL RIGHT.  THANK YOU.

08:36AM  17        MR. LEMENS, GOOD MORNING.

08:36AM  18            MR. LEMENS:  GOOD MORNING, YOUR HONOR.

08:36AM  19        ANDREW LEMENS FOR MS. HOLMES.

08:36AM  20        I APOLOGIZE FOR THE CONFERENCE WITH MY COLLEAGUES, BUT WE

08:36AM  21    HAD REQUESTED THE WRITTEN INSTRUCTION.  THAT WOULD CONTINUE TO

08:36AM  22    BE OUR REQUEST.

08:36AM  23        BUT SUBJECT TO THAT OBJECTION, I HAVE NO ISSUE WITH WHAT

08:36AM  24    THE COURT HAS PROPOSED.

08:36AM  25            THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  THANK

08:36AM 1    YOU.

08:36AM 2         ONE MORE -- WHY DON'T YOU STAY HERE FOR A SECOND.

08:36AM 3         ANOTHER ISSUE THAT CAME TO MIND IS REGARDING THE EXHIBITS.

08:36AM 4    I WANT TO ENSURE THAT, AND PLEASE RECALL THAT I HAD ASKED BOTH

08:37AM 5    SIDES TO MEET AND CONFER TO ENSURE THAT THE EXHIBITS THAT THE

08:37AM 6    JURY RECEIVES ARE ALL OF THE EXHIBITS THAT YOU BELIEVE WERE

08:37AM 7    INTRODUCED AND THAT EVERYTHING THAT YOU WANTED INTRODUCED WAS

08:37AM 8    IN THE EXHIBIT LIST.

08:37AM 9         THAT WAS MY FIRST REQUEST OF YOU, AND THAT'S WHY WE

08:37AM 10   ENGAGED THAT PROTOCOL EVERY DAY TO ENSURE THAT.

08:37AM 11        THE SECOND ISSUE THAT IS CONCURRENT WITH THAT IS THAT

08:37AM 12   THERE ARE SOME EXHIBITS THAT WERE ADMITTED THAT ARE VIDEO, AS I

08:37AM 13   RECALL THERE'S A VIDEO, MAYBE ONE OR TWO, MAYBE MORE, AS WELL

08:37AM 14   AS SOME AUDIOTAPES.  AND THOSE ARE ON THE THUMB DRIVE.

08:37AM 15        NOW, LET ME TELL YOU, MY NORMAL PRACTICE HAS BEEN TO -- IF

08:37AM 16   THERE ARE VIDEOS, IF THERE ARE ANY AUDIOS, AND PLEASE RECALL

08:37AM 17   THOSE -- THERE'S NO TRANSCRIPT OF THE PLAYING OF THOSE.  I

08:37AM 18   THINK THE PARTIES AGREED THAT THE COURT REPORTER WOULD NOT

08:37AM 19   REPORT VERBATIM WHAT WAS SAID IN THOSE VIDEOS AND PHONE CALLS.

08:38AM 20   THERE IS NO TRANSCRIPT.

08:38AM 21        VIDEO AND AUDIO EXHIBITS ARE DIFFERENT, OF COURSE, THAN

08:38AM 22   PAPER EXHIBITS AND OTHERS THAT THE JURY HAS FREEDOM TO LOOK AT,

08:38AM 23   THEY SPEAK FOR THEMSELVES.

08:38AM 24        THE AUDIOS, THE VIDEOS ARE DIFFERENT OF COURSE.  AND IT'S

08:38AM 25   BEEN MY PRACTICE THAT IF A JURY -- IF THERE ARE EXHIBITS THAT

| | | |
|---|---|---|
| 08:38AM | 1 | ARE VIDEO/AUDIO AND THE JURY WISHES TO VIEW THOSE, WE DO THAT |
| 08:38AM | 2 | IN THE COURTROOM AND NOT, NOT ALLOW THE JURY TO LOOK AT THEM AS |
| 08:38AM | 3 | THEY WISH.  THAT'S JUST BEEN THE PROTOCOL THAT I FOLLOWED. |
| 08:38AM | 4 | I WANTED TO -- WE DIDN'T DISCUSS THIS, AND I APOLOGIZE FOR |
| 08:38AM | 5 | NOT RAISING THIS LAST WEEK, I WANT TO GET YOUR THOUGHTS ON |
| 08:38AM | 6 | THAT.  IF THE PARTIES WANT TO STIPULATE THAT THE JURY CAN HAVE |
| 08:38AM | 7 | THEM, YOU NEED TO TALK TO YOUR TEAMS ABOUT THAT. |
| 08:38AM | 8 | IF NOT, WHAT I WILL DO IS BEFORE I -- AFTER I INSTRUCT, MY |
| 08:38AM | 9 | SENSE IS THAT I WILL TELL THE JURY THEN THAT THE VIDEO AND |
| 08:39AM | 10 | AUDIO EXHIBITS WOULD NOT BE CONTAINED IN THE THUMB DRIVE THAT |
| 08:39AM | 11 | THEY HAVE, BUT RATHER IF THEY WISHED TO VIEW THOSE AT ANY TIME, |
| 08:39AM | 12 | THEY SHOULD NOTIFY THE COURT, SEND A NOTE, AND WE WILL PLAY |
| 08:39AM | 13 | THOSE IN OPEN COURT. |
| 08:39AM | 14 | THAT'S MY THOUGHT.  I WANTED TO SHARE THAT WITH YOU. |
| 08:39AM | 15 | MR. SCHENK? |
| 08:39AM | 16 | MR. SCHENK:  THANK YOU FOR RAISING THAT, YOUR HONOR. |
| 08:39AM | 17 | THAT PROCEDURE IS FINE WITH THE GOVERNMENT, AND I |
| 08:39AM | 18 | APPRECIATE THE CLARIFICATION THAT THE COURT WAS GOING TO INFORM |
| 08:39AM | 19 | THE JURY THAT THOSE EXHIBITS WON'T BE BACK THERE, JUST SO THAT |
| 08:39AM | 20 | THEY DON'T SPEND TIME LOOKING FOR THEM AND THAT THEY APPRECIATE |
| 08:39AM | 21 | THE PROCEDURE OF COMING BACK INTO THE COURTROOM TO LISTEN TO |
| 08:39AM | 22 | THEM, THAT PROCEDURE IS APPROPRIATE. |
| 08:39AM | 23 | MR. LEMENS:  THAT SEEMS FINE WITH US, YOUR HONOR, AS |
| 08:39AM | 24 | WELL, AND NO CONCERNS ABOUT IT. |
| 08:39AM | 25 | THE COURT:  DO YOU WANT TO TALK WITH YOUR TEAM ABOUT |

| 08:39AM | 1 | IT? |
| 08:39AM | 2 | MR. LEMENS:  YEAH, I'M GETTING CONFIRMATION THAT |
| 08:39AM | 3 | THAT SOUNDS GREAT. |
| 08:39AM | 4 | THE COURT:  OKAY. |
| 08:39AM | 5 | MR. LEMENS:  AND ON THE FIRST ISSUE, I KNOW THERE'S |
| 08:39AM | 6 | BEEN GREAT WORK THAT HAS BEEN DONE BY BOTH THE COURT STAFF AND |
| 08:39AM | 7 | OUR RESPECTIVE TEAM TO MAKE SURE THE EXHIBITS GET BACK TO SHARE |
| 08:40AM | 8 | WITH THE JURY. |
| 08:40AM | 9 | I DON'T KNOW IF MR. SCHENK HAS ANYTHING, BUT I THINK FROM |
| 08:40AM | 10 | OUR PERSPECTIVE, WE'RE READY TO GO WITH THAT. |
| 08:40AM | 11 | THE COURT:  ALL RIGHT.  WELL, BECAUSE OF WHAT I JUST |
| 08:40AM | 12 | SAID, WE NEED TO ALTER THE THUMB DRIVE AND SOMEHOW REMOVE |
| 08:40AM | 13 | THOSE.  THE TECH PEOPLE THAT YOU HAVE, WHO ARE SMARTER THAN ALL |
| 08:40AM | 14 | OF US, WILL KNOW HOW TO DO THAT. |
| 08:40AM | 15 | WILL YOU ENSURE THAT THAT'S DONE BEFORE THE JURY GETS THE |
| 08:40AM | 16 | THUMB DRIVE. |
| 08:40AM | 17 | MR. LEMENS:  CERTAINLY. |
| 08:40AM | 18 | MR. SCHENK:  YES, YOUR HONOR. |
| 08:40AM | 19 | MR. LEMENS:  YES, YOUR HONOR. |
| 08:40AM | 20 | THE COURT:  ALL RIGHT.  THAT'S WHAT I'LL DO THEN. |
| 08:40AM | 21 | ANYTHING ELSE BEFORE I STEP DOWN? |
| 08:40AM | 22 | MR. SCHENK:  NO.  THANK YOU. |
| 08:40AM | 23 | MR. DOWNEY:  NOTHING FROM US, YOUR HONOR. |
| 08:40AM | 24 | THE COURT:  OKAY.  THANK YOU VERY MUCH.  I'LL COME |
| 08:40AM | 25 | BACK.  WE'LL BRING THE JURY IN AT ABOUT 9:00 O'CLOCK, AND I'LL |

8907

| | | |
|---|---|---|
| 08:40AM | 1 | ADMONISH THEM WITH THE 4621 INSTRUCTION THAT I INTEND TO DO, |
| 08:40AM | 2 | AND THEN I'LL ASK THE PARTIES IF THEY HAVE ARGUMENTS. |
| 08:40AM | 3 | ALL RIGHT.  THANK YOU. |
| 08:40AM | 4 | MR. DOWNEY:  THANK YOU, YOUR HONOR. |
| 08:40AM | 5 | THE CLERK:  COURT IS IN RECESS. |
| 09:00AM | 6 | (RECESS FROM 8:40 A.M. UNTIL 9:05 A.M.) |
| 09:05AM | 7 | (JURY IN AT 9:05 A.M.) |
| 09:05AM | 8 | THE COURT:  GOOD MORNING EVERYONE.  PLEASE BE |
| 09:05AM | 9 | SEATED. |
| 09:05AM | 10 | WE ARE ON THE RECORD IN THE HOLMES MATTER.  ALL COUNSEL |
| 09:05AM | 11 | ARE PRESENT, MS. HOLMES IS PRESENT.  GOOD MORNING. |
| 09:06AM | 12 | OUR JURY IS PRESENT. |
| 09:06AM | 13 | GOOD MORNING, LADIES AND GENTLEMEN. |
| 09:06AM | 14 | BEFORE WE BEGIN TODAY -- IT'S GOOD TO SEE YOU ALL.  AND |
| 09:06AM | 15 | BEFORE WE BEGIN, I DO WANT TO ASK YOU THAT QUESTION THAT I POSE |
| 09:06AM | 16 | TO YOU EVERY TIME WE START OUR SESSIONS. |
| 09:06AM | 17 | DURING OUR BREAK, YOUR BREAK FROM THE COURTROOM, I WANT TO |
| 09:06AM | 18 | KNOW WHETHER ANY OF YOU HAVE HAD OCCASION OR CAUSE TO READ, |
| 09:06AM | 19 | LISTEN TO, DISCUSS, OR IN ANY WAY LEARN ANYTHING ABOUT THIS |
| 09:06AM | 20 | CASE OUTSIDE OF THE COURTROOM HERE.  IF THAT HAS HAPPENED TO |
| 09:06AM | 21 | ANY OF YOU, WOULD YOU PLEASE RAISE YOUR HAND NOW, PLEASE. |
| 09:06AM | 22 | I SEE NO HANDS. |
| 09:06AM | 23 | THANK YOU VERY MUCH FOR YOUR CONTINUED VIGILANCE. |
| 09:06AM | 24 | BEFORE WE BEGIN -- EXCUSE ME. |
| 09:06AM | 25 | BEFORE WE BEGIN AND I ASK THE PARTIES IF THEY HAVE |

| | | |
|---|---|---|
| 09:06AM | 1 | ARGUMENT, THERE'S A HOUSEKEEPING MATTER I'D LIKE TO SPEAK WITH |
| 09:06AM | 2 | THE JURY ABOUT REGARDING ONE OF THE EXHIBITS, AND THIS IS |
| 09:07AM | 3 | EXHIBIT 4621, EXHIBIT 4621.  I BELIEVE THIS WAS INTRODUCED IN |
| 09:07AM | 4 | THE TESTIMONY OF DR. DAS, AND I -- LADIES AND GENTLEMEN, YOU |
| 09:07AM | 5 | ARE INSTRUCTED THAT TRIAL EXHIBIT 4621, WHICH CONTAINS EXCERPTS |
| 09:07AM | 6 | OF THE JANUARY 25, 2016 CMS REPORT WAS ADMITTED FOR A LIMITED |
| 09:07AM | 7 | PURPOSE, THE LIMITED PURPOSE OF MS. HOLMES'S STATE OF MIND AND |
| 09:07AM | 8 | NOT FOR THE TRUTH OF THE MATTER ASSERTED. |
| 09:07AM | 9 | AGAIN, THIS IS EXHIBIT 4621, AND IT IS ADMITTED NOT FOR |
| 09:07AM | 10 | THE TRUTH OF THE MATTER ASSERTED, BUT SOLELY FOR THE ISSUE OF |
| 09:07AM | 11 | MS. HOLMES'S STATE OF MIND. |
| 09:07AM | 12 | COUNSEL, ANYTHING FURTHER ON THAT? |
| 09:08AM | 13 | MR. SCHENK:  NO, YOUR HONOR. |
| 09:08AM | 14 | MR. DOWNEY:  NOTHING FROM US, YOUR HONOR. |
| 09:08AM | 15 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 09:08AM | 16 | LADIES AND GENTLEMEN, I FAILED TO TELL YOU THAT AT THE |
| 09:08AM | 17 | CLOSE OF EVIDENCE, BUT I AM INSTRUCTING YOU ON THAT NOW. |
| 09:08AM | 18 | LET ME THEN TURN TO THE GOVERNMENT. |
| 09:08AM | 19 | DOES THE GOVERNMENT HAVE AN ARGUMENT? |
| 09:08AM | 20 | MR. SCHENK:  YES, WE DO, YOUR HONOR. |
| 09:08AM | 21 | THE COURT:  PLEASE PROCEED.  THANK YOU. |
| 09:08AM | 22 | MR. SCHENK:  MAY I REMOVE THE MASK? |
| 09:08AM | 23 | THE COURT:  YES.  THANK YOU. |
| 09:08AM | 24 | /// |
| 09:08AM | 25 | /// |

CLOSING ARGUMENT BY MR. SCHENK

| | | |
|---|---|---|
| 09:08AM | 1 | **(MR. SCHENK GAVE HIS CLOSING ARGUMENT ON BEHALF OF THE** |
| 09:08AM | 2 | **GOVERNMENT.)** |
| 09:08AM | 3 | MR. SCHENK:  GOOD MORNING. |
| 09:08AM | 4 | ELIZABETH HOLMES HAD A CHOICE TO MAKE IN 2009, 2010, AND |
| 09:08AM | 5 | THEN AGAIN IN 2013.  THERANOS WAS RUNNING OUT OF MONEY, AND |
| 09:08AM | 6 | MS. HOLMES HAD STOPPED RECEIVING POSITIVE FEEDBACK FROM THE |
| 09:08AM | 7 | LARGE PHARMACEUTICAL COMPANIES THAT THERANOS HAD BEEN DOING |
| 09:08AM | 8 | WORK WITH, AND SHE WAS SPENDING HER TIME INSTEAD ON THE PHONE |
| 09:08AM | 9 | WITH A THERANOS BANKER BEGGING HIM TO CLEAR A CHECK EARLY SO |
| 09:09AM | 10 | THAT THERANOS COULD PAY ITS EXPENSES. |
| 09:09AM | 11 | AND IT WAS IN THAT MOMENT THAT MS. HOLMES HAD A CHOICE TO |
| 09:09AM | 12 | MAKE.  SHE COULD WATCH THERANOS SLOWLY FAIL, OR SHE COULD MAKE |
| 09:09AM | 13 | A DIFFERENT DECISION. |
| 09:09AM | 14 | AND WE NOW KNOW, THROUGH THE EVIDENCE, THAT SHE MADE A |
| 09:09AM | 15 | DIFFERENT DECISION.  MS. HOLMES MADE THE DECISION TO DEFRAUD |
| 09:09AM | 16 | HER INVESTORS AND THEN TO DEFRAUD PATIENTS.  SHE CHOSE FRAUD |
| 09:09AM | 17 | OVER BUSINESS FAILURE.  SHE CHOSE TO BE DISHONEST WITH HER |
| 09:09AM | 18 | INVESTORS AND WITH PATIENTS. |
| 09:09AM | 19 | THAT CHOICE WAS NOT ONLY CALLOUS, IT WAS CRIMINAL.  AND |
| 09:09AM | 20 | THAT'S WHY WE'VE SPENT THE LAST THREE-PLUS MONTHS TOGETHER. |
| 09:09AM | 21 | IT'S BECAUSE MS. HOLMES KNEW ONE THING FOR CERTAIN, AND THAT |
| 09:09AM | 22 | WAS IN THAT TIMEFRAME -- LET'S SAY 2013, 2014 -- AN HONEST |
| 09:09AM | 23 | PITCH FILLED WITH HONEST REPRESENTATIONS TO HER INVESTORS AND |
| 09:09AM | 24 | TO PATIENTS WOULD NOT HAVE RESULTED IN ANY REVENUE FOR |
| 09:10AM | 25 | THERANOS, NO MONEY FOR THERANOS WITH HONEST STATEMENTS. |

CLOSING ARGUMENT BY MR. SCHENK                                     8910

09:10AM   1        IMAGINE FOR A MOMENT WHAT AN HONEST PITCH WOULD HAVE

09:10AM   2   SOUNDED LIKE TO INVESTORS IN 2013.  MS. HOLMES WOULD HAVE TOLD

09:10AM   3   HER INVESTORS THAT THE COMPANY, THAT THERANOS HAD BEEN AROUND

09:10AM   4   FOR ABOUT A DECADE BY THAT POINT AND ONLY HAD A HANDFUL OF

09:10AM   5   TESTS OR ASSAYS ON ITS DEVICE, AND THOSE TESTS FREQUENTLY

09:10AM   6   CAUSED PROBLEMS.  THEY STILL REMAINED INACCURATE AND

09:10AM   7   UNRELIABLE.

09:10AM   8        MS. HOLMES WOULD HAVE TOLD THESE POTENTIAL INVESTORS THAT

09:10AM   9   THERANOS HAD NOT BEEN VALIDATED BY PHARMACEUTICAL COMPANIES.

09:10AM  10        MS. HOLMES WOULD HAVE TOLD INVESTORS THAT THERANOS DID NOT

09:10AM  11   HAVE A HEALTHY AND GROWING OR EXPANDING RELATIONSHIP WITH

09:10AM  12   WALGREENS.

09:10AM  13        MS. HOLMES WOULD HAVE TOLD HER INVESTORS THAT THERANOS DID

09:10AM  14   NOT, OR ITS TECHNOLOGY WAS NOT ON MILITARY HELICOPTERS, MEDEVAC

09:11AM  15   HELICOPTERS, IT WAS NOT DEPLOYED IN THE BATTLEFIELD, IT WAS NOT

09:11AM  16   IN AFGHANISTAN, IT WAS NOT IN THE MIDDLE EAST.

09:11AM  17        MS. HOLMES KNEW THAT THESE HONEST STATEMENTS WOULD NOT

09:11AM  18   HAVE LED TO ANY REVENUE, AND SHE CHOSE A DIFFERENT PATH.

09:11AM  19        NOW, AN HONEST PITCH TO PATIENTS WOULD HAVE BEEN MUCH

09:11AM  20   SIMPLER, MORE STRAIGHTFORWARD.  SHE WOULD HAVE INVITED PATIENTS

09:11AM  21   TO USE THE BLOOD TESTING SERVICE AT WALGREENS, BUT THEN TOLD

09:11AM  22   THEM NOT TO RELY ON THE RESULTS, THAT THE BLOOD TESTS WERE NOT

09:11AM  23   OFTEN ACCURATE, THEY WERE NOT RELIABLE, AND YOU'RE WELCOME TO

09:11AM  24   COME TO WALGREENS TO GET A BLOOD TEST, BUT YOU SHOULDN'T RELY

09:11AM  25   ON THEM.

UNITED STATES COURT REPORTERS

CLOSING ARGUMENT BY MR. SCHENK                                    8911

09:11AM  1         YOU CAN TELL THAT AN HONEST PITCH, FIRST TO INVESTORS AND

09:11AM  2    THEN TO PATIENTS, WOULD NOT HAVE RESULTED IN ANY REVENUE FOR

09:11AM  3    HER, AND WHEN THERANOS WAS RUNNING OUT OF MONEY, THAT WAS

09:11AM  4    NECESSARY.

09:11AM  5         NOW, I WANT TO GIVE YOU A LITTLE BIT OF A ROADMAP, WHAT

09:11AM  6    WE'RE GOING TO TALK ABOUT THIS MORNING.  I'M GOING TO START BY

09:11AM  7    GOING THROUGH SOME SLIDES WITH YOU, AND THESE SLIDES COVER FOUR

09:12AM  8    TOPICS.

09:12AM  9         THE FIRST TOPIC IS A SUMMARY OF THE WITNESSES THAT

09:12AM 10    TESTIFIED IN THE CASE.  THE GOVERNMENT CALLED ABOUT 30

09:12AM 11    WITNESSES IN THIS CASE, AND I WANT TO REMIND YOU WHO TESTIFIED,

09:12AM 12    WHERE THEIR TESTIMONY FITS INTO THE STORY, AND A HIGHLIGHT OR

09:12AM 13    TWO FROM THEIR TESTIMONY.

09:12AM 14         THE SECOND TOPIC WE'LL COVER ARE THE CRIMES THAT

09:12AM 15    MS. HOLMES IS CHARGED WITH COMMITTING.  SHE'S CHARGED WITH

09:12AM 16    COMMITTING A COUPLE OF CRIMES, AND I WANT TO GO THROUGH THOSE

09:12AM 17    WITH YOU AND EXPLAIN HOW THEY FIT INTO THE STORY.

09:12AM 18         I THEN WANT TO TALK TO YOU ABOUT THE ELEMENTS OF THOSE

09:12AM 19    CRIMES, WHAT THE GOVERNMENT IS REQUIRED TO PROVE BEYOND A

09:12AM 20    REASONABLE DOUBT IN ORDER FOR YOU TO CONVICT MS. HOLMES.

09:12AM 21         AND THEN FINALLY WITH THE SLIDES, WE'LL TALK ABOUT THE

09:12AM 22    EVIDENCE.  YOU'VE SEEN MANY EMAILS, TEXT MESSAGES, RECORDINGS.

09:12AM 23    WE'LL GO THROUGH SOME OF THOSE AND WE'LL TALK ABOUT HOW THE

09:12AM 24    EVIDENCE FITS INTO THOSE ELEMENTS, HOW THE EVIDENCE PROVES

09:12AM 25    THOSE ELEMENTS.


                        UNITED STATES COURT REPORTERS

CLOSING ARGUMENT BY MR. SCHENK                                    8912

```
09:12AM   1        AND THEN AFTER THAT WE'LL STEP AWAY FROM THE SLIDES FOR A
09:13AM   2    WHILE.  THERE ARE A FEW FINAL TOPICS THAT I WANT TO TALK TO YOU
09:13AM   3    ABOUT BEFORE WE BRIEFLY RETURN TO THE SLIDES AT THE VERY END.
09:13AM   4        SO LET'S START.
09:13AM   5        THE FIRST WITNESS IN TRIAL WAS A WOMAN NAMED
09:13AM   6    SO HAN SPIVEY.  THAT'S HER NAME NOW.  YOU RECALL AT THE TIME
09:13AM   7    SHE WORKED AT THERANOS, HER NAME WAS DANISE YAM.  SHE WAS THE
09:13AM   8    CONTROLLER AT THERANOS.
09:13AM   9        YOU ALSO MAY REMEMBER SHE TESTIFIED TWICE IN THIS TRIAL.
09:13AM   10   SHE TESTIFIED AT THE VERY BEGINNING, AND THEN SHE CAME BACK AND
09:13AM   11   TALKED ABOUT ONE PARTICULAR EMAIL, AND WE'LL TALK ABOUT THAT
09:13AM   12   EMAIL A LITTLE BIT LATER ON THIS MORNING.
09:13AM   13       MS. YAM, AS I'LL TRY TO REFER TO HER THIS MORNING BECAUSE
09:13AM   14   THAT'S HOW YOU'LL SEE HER NAME IN DOCUMENTS, TOLD YOU THAT SHE
09:13AM   15   HAD TALKED TO MS. HOLMES IN 2009 ABOUT THE CASH POSITION, ABOUT
09:13AM   16   THE FINANCIAL TROUBLES AT THERANOS, THAT THERANOS WOULD NOT BE
09:13AM   17   ABLE TO PAY ALL OF ITS VENDORS, AND THAT THEY WOULD HAVE TO
09:13AM   18   CONTACT THIS PARTICULAR BANKER TO GET A CHECK CLEARED, WHAT I
09:14AM   19   REFERENCED A MOMENT AGO.
09:14AM   20       LET ME SAY ONE BRIEF THING ABOUT THESE SLIDES IN GENERAL.
09:14AM   21   THEY WON'T BE BACK IN THE DELIBERATION ROOM WITH YOU.  YOU
09:14AM   22   WON'T HAVE A COPY OF THESE SLIDES.
09:14AM   23       IN THE LOWER RIGHT CORNER, SOMETIMES YOU'LL SEE THE PAGE
09:14AM   24   NUMBER FOR A TRANSCRIPT.  YOU ALSO WON'T HAVE THE TRANSCRIPT OF
09:14AM   25   THE TESTIMONY.
```

CLOSING ARGUMENT BY MR. SCHENK                                    8913

09:14AM  1        YOUR MEMORY OF WHAT THE WITNESS TESTIFIED TO IS WHAT YOU

09:14AM  2    SHOULD FOCUS ON.

09:14AM  3        THERE ARE INSTANCES WHEN I WILL SHOW YOU AN EXHIBIT, AND

09:14AM  4    THE EXHIBIT NUMBER WILL BE IN THE LOWER RIGHT CORNER, AND IF

09:14AM  5    THAT'S AN EXHIBIT THAT TRIGGERS SOMETHING IN YOUR MIND, YOU MAY

09:14AM  6    WANT TO JOT THAT DOWN.

09:14AM  7        THERE ALSO MAY BE INSTANCES WHEN I WILL ACTUALLY SUGGEST

09:14AM  8    TO YOU THAT YOU WRITE SOMETHING DOWN FROM THE SLIDES.

09:14AM  9        FORGIVE ME FOR BEING PRESUMPTUOUS IN THOSE MOMENTS.  I

09:14AM  10   THINK THERE MIGHT BE INSTANCES WHEN YOU'LL FIND IT USEFUL TO

09:14AM  11   HAVE CERTAIN INFORMATION DURING YOUR DELIBERATIONS.

09:14AM  12       ERIKA CHEUNG WAS THE NEXT WITNESS WHO TESTIFIED.

09:14AM  13   MS. CHEUNG ALSO WORKED AT THERANOS, AND JUST ONE OF THE

09:15AM  14   HIGHLIGHTS FROM HER TESTIMONY WAS THAT SHE DESCRIBED TO YOU THE

09:15AM  15   REASON THAT SHE RESIGNED FROM THERANOS, AND IT WAS SIMPLE.  SHE

09:15AM  16   WAS UNCOMFORTABLE PROCESSING PATIENT SAMPLES.

09:15AM  17       THE NEXT WITNESS WAS SUREKHA GANGADKHEDKAR.  SHE ALSO

09:15AM  18   WORKED AT THERANOS.  SHE TOLD YOU THAT WHEN SHE RETURNED FROM A

09:15AM  19   VACATION IN OR AROUND AUGUST IN 2013, SHE LEARNED THAT THERANOS

09:15AM  20   WAS ABOUT TO BEGIN TESTING.  THAT'S RIGHT AROUND THE TIME THEY

09:15AM  21   OPENED WITH WALGREENS.  THAT WAS SEPTEMBER OF 2013.

09:15AM  22       AND MS. GANGAKHEDKAR FELT THAT THE VALIDATION PROCESS WAS

09:15AM  23   BEING RUSHED.  SHE FELT PRESSURE.  SHE SAID THAT PRESSURE CAME

09:15AM  24   FROM THE DEFENDANT, AND SHE HAD SOME CONCERNS BECAUSE OF THAT.

09:15AM  25       SHE ALSO TOLD YOU THAT WHEN SHE RESIGNED, SHE SPOKE TO

CLOSING ARGUMENT BY MR. SCHENK

09:15AM 1    MS. HOLMES ABOUT THE DECISION TO RESIGN.  SHE EXPRESSED HER

09:15AM 2    CONCERNS, AND HERE IT'S REFERRED TO AS THE EDISON 3.0.

09:15AM 3        THEY HAD A 3 SERIES AND A 4 SERIES, AND WE'RE GOING TO

09:16AM 4    TALK A FAIR AMOUNT ABOUT THOSE DIFFERENT DEVICES.  YOU NOW KNOW

09:16AM 5    THAT THE 3 SERIES WAS THE DEVICE THAT WAS USED TO TEST

09:16AM 6    PATIENTS' BLOOD IN THE WALGREENS ROLLOUT.  THE 4 SERIES WAS THE

09:16AM 7    DEVICE THAT YOU SAW AT SOME POINT, A VIDEO OF WHERE THE SORT OF

09:16AM 8    ARM WAS MOVING AND PICKING UP SAMPLES.

09:16AM 9        A DEFENSE WITNESS NAMED DR. BONANNI TESTIFIED THAT WAS

09:16AM 10   NEVER USED FOR PATIENT SAMPLES.  THAT WAS A DIFFERENT DEVICE.

09:16AM 11       SO WHAT MS. GANGAKHEDKAR WAS WORRIED ABOUT WAS THIS 3

09:16AM 12   SERIES DEVICE, THE ONE THAT THEY WERE GOING TO USE WITH

09:16AM 13   WALGREENS PATIENTS.  SHE CONFRONTED MS. HOLMES ABOUT IT, AND

09:16AM 14   THE RESPONSE THAT SHE GOT WAS ELIZABETH HOLMES SAID, I MADE A

09:16AM 15   PROMISE AND I NEED TO DELIVER.  ESSENTIALLY THE TRAIN IS ON THE

09:16AM 16   TRACKS AND I CAN'T STOP IT.

09:16AM 17       AND MS. GANGAKHEDKAR WAS UNCOMFORTABLE WITH THAT AND

09:16AM 18   RESIGNED.

09:16AM 19       DR. ZACHMAN WAS THE NEXT WITNESS WHO TESTIFIED.  YOU

09:16AM 20   RECALL THAT DR. ZACHMAN WAS TREATING A PATIENT OF HERS NAME

09:17AM 21   BRITTANY GOULD.  MS. GOULD WAS PREGNANT AND GOT AN HCG TEST AT

09:17AM 22   THERANOS.  YOU HEARD THAT THE NUMBERS, HCG NUMBERS ARE SUPPOSED

09:17AM 23   TO CONSTANTLY GO UP, MAYBE DOUBLE OR SO IF THERE'S A HEALTHY,

09:17AM 24   VIABLE PREGNANCY.

09:17AM 25       MS. GOULD, BRITTANY GOULD, GOT A NUMBER AT THERANOS THAT

CLOSING ARGUMENT BY MR. SCHENK                                    8915

09:17AM   1    SUGGESTED OTHERWISE, THAT SUGGESTED THAT THERE WAS A PROBLEM OR

09:17AM   2    THAT THE PREGNANCY WAS NOT HEALTHY.

09:17AM   3        AND FIRST DR. ZACHMAN TESTIFIED AND DESCRIBED THAT PROCESS

09:17AM   4    TO YOU, SORT OF BACKGROUND ON THE HCG TEST, AND ALSO HER

09:17AM   5    OPINION THAT THE BRITTANY GOULD TEST WAS NOT ACCURATE BECAUSE

09:17AM   6    THE END OF THE STORY WAS BRITTANY GOULD DID HAVE A VIABLE

09:17AM   7    PREGNANCY THAT SHE TOOK TO TERM.

09:17AM   8        AND THEN MS. GOULD HERSELF TESTIFIED AFTERWARDS AND SHE

09:17AM   9    WALKED YOU THROUGH SOME OF THE VARIOUS TESTS THAT SHE RECEIVED.

09:17AM  10    IT'S THE THIRD ONE DOWN.  THAT WAS THE ONE THAT WAS CONCERNING

09:17AM  11    TO DR. ZACHMAN.  THAT WAS THE ONE THAT SHOWED A SIGNIFICANT

09:17AM  12    DROP FROM AROUND A NUMBER OF 12,000 TO A LITTLE OVER 100, AND

09:18AM  13    THAT THAT WAS NOT AN ACCURATE TEST.

09:18AM  14        BRITTANY GOULD ALSO TOLD YOU THAT BASED ON MARKETING

09:18AM  15    MATERIALS, INFORMATION THAT SHE HAD HEARD ABOUT -- SHE LIVED IN

09:18AM  16    ARIZONA.  THERANOS MARKETED ITS SERVICES IN ARIZONA.  MS. GOULD

09:18AM  17    THOUGHT THAT, I WILL GET ACCURATE AND RELIABLE RESULTS IF I GO

09:18AM  18    TO THERANOS.

09:18AM  19        THIS HELPED SATISFY AN ELEMENT CALLED MATERIALITY.  WE'LL

09:18AM  20    TALK ABOUT THAT LATER WHEN WE GET TO THE ELEMENTS, BUT I JUST

09:18AM  21    SORT OF WANT TO JUST PUT A PIN IN THAT RIGHT NOW SO YOU KNOW

09:18AM  22    WHEN WE GET TO IT LATER THAT THIS IS ONE OF THE ARGUMENTS OR

09:18AM  23    PIECES OF EVIDENCE THAT YOU HAVE HEARD THAT MAKES REFERENCES TO

09:18AM  24    THE STATEMENTS THAT WERE MADE MATTERED, THE FALSE STATEMENTS

09:18AM  25    THAT WERE MADE TO INVESTORS AND ALSO TO PATIENTS WERE OF THE

CLOSING ARGUMENT BY MR. SCHENK                                    8916

09:18AM   1    TYPE THAT WOULD ACTUALLY INFLUENCE SOMEONE TO SPEND MONEY TO

09:18AM   2    INVEST OR TO PURCHASE BLOOD TESTS.

09:18AM   3         GENERAL MATTIS WAS THE NEXT WITNESS IN THE CASE.  YOU MAY

09:18AM   4    RECALL THAT GENERAL MATTIS WAS ON THE BOARD OF DIRECTORS AT

09:18AM   5    THERANOS.  AMONG THE THINGS THAT HE TOLD YOU WAS THAT HE BEGAN

09:19AM   6    TO LEARN THINGS ABOUT THERANOS FROM THE PRESS.

09:19AM   7         THERE WAS AN ARTICLE THAT YOU HEARD ABOUT IN "THE

09:19AM   8    WALL STREET JOURNAL" IN AROUND OCTOBER OF 2015 BY A REPORTER

09:19AM   9    NAMED JOHN CARREYROU, AND THAT WAS SORT OF ONE OF THE FIRST

09:19AM  10    INSTANCES WHEN NEGATIVE INFORMATION, SIGNIFICANT NEGATIVE

09:19AM  11    INFORMATION ENTERED THE PUBLIC DOMAIN ABOUT THERANOS, AND EVEN

09:19AM  12    BOARD MEMBERS WERE LEARNING THINGS IN THE PRESS.

09:19AM  13         AND GENERAL MATTIS TOLD YOU THAT THAT LACK OF TRANSPARENCY

09:19AM  14    WAS CONCERNING TO HIM.

09:19AM  15         THE NEXT WITNESS THAT TESTIFIED WAS JUSTIN OFFEN.

09:19AM  16    MR. OFFEN WORKS FOR PWC AND HE CAME HERE TO EXPLAIN TO YOU THE

09:19AM  17    PROCESS OF EXTRACTING TEXT MESSAGES.

09:19AM  18         THEN AFTER MR. OFFEN TESTIFIED, YOU BEGAN TO SEE A LOT

09:19AM  19    MORE TEXT MESSAGES OVER THE COURSE OF THE TRIAL, AND MR. OFFEN

09:19AM  20    DESCRIBED TO YOU THE PROCESS, HOW TEXT MESSAGES WERE DOWNLOADED

09:19AM  21    FROM PHONES AND COMPUTERS.

09:19AM  22         AND THERE'S ONE THREAD THAT WAS INTRODUCED THROUGH

09:20AM  23    MR. OFFEN THAT I HAVE ON THE SCREEN NOW.

09:20AM  24         FIRST LET ME HIGHLIGHT THE DATE FOR YOU, SEPTEMBER 22ND,

09:20AM  25    2015.  THAT WAS DURING A CMS INSPECTION.

CLOSING ARGUMENT BY MR. SCHENK                                          8917

09:20AM   1        CMS IS THE CENTER FOR MEDICARE AND MEDICAID SERVICES

09:20AM   2   WITHIN THE DEPARTMENT OF HEALTH AND HUMAN SERVICES.  YOU HEARD

09:20AM   3   THAT THEY HAVE A ROLE IN REGULATING CLINICAL LABORATORIES, AND

09:20AM   4   THEY DO PERIODIC INSPECTIONS.

09:20AM   5        THEY WERE DOING AN INSPECTION AT THIS TIME, AND HOLMES AND

09:20AM   6   BALWANI ARE TEXTING EACH OTHER DURING THE INSPECTION.  AND YOU

09:20AM   7   CAN SEE SOME OF THE COMMENTS ARE, "VERY HOSTILE SO FAR.  THEY

09:20AM   8   HAVE COMPLAINTS."

09:20AM   9        AND THEN FURTHER DOWN THEY TALK ABOUT NAMES OF

09:20AM  10   INDIVIDUALS, TYLER, ADAM, AND JC, THAT'S TYLER SHULTZ,

09:20AM  11   ADAM ROSENDORFF AND JOHN CARREYROU.

09:20AM  12        HOLMES AND BALWANI ARE TRYING TO FIGURE OUT THE SOURCE,

09:20AM  13   WHERE ARE THE COMPLAINTS THAT CMS IS FOLLOWING UP ON, AND

09:20AM  14   THEY'RE IDENTIFYING TWO FORMER EMPLOYEES, YOU'VE HEARD THESE

09:20AM  15   NAMES BEFORE, AND THE REPORTER.

09:21AM  16        AND HOLMES AND BALWANI ARE SORT OF WONDERING -- AND MAYBE

09:21AM  17   "INVESTIGATING" IS A FAIR WORD TO USE -- WHERE DID THESE

09:21AM  18   COMPLAINTS COME FROM?  HOW DID THE LEAKS HAPPEN?

09:21AM  19        AND THEN MS. HOLMES WRITES, "PRAYING LITERALLY NONSTOP."

09:21AM  20        MS. HOLMES IS PRAYING DURING A CMS INSPECTION.  THIS IS A

09:21AM  21   POINT I'M GOING TO COME BACK TO LATER.

09:21AM  22        WHEN MS. HOLMES WAS ON THE STAND, SHE TOLD YOU THAT WHEN

09:21AM  23   CMS ISSUED A REPORT -- ACTUALLY, JUDGE DAVILA JUST A MOMENT AGO

09:21AM  24   REFERRED TO IT -- IT'S THAT JANUARY 2016 REPORT FROM CMS.

09:21AM  25        MS. HOLMES TOLD YOU THAT WHEN THAT REPORT CAME OUT, THAT

CLOSING ARGUMENT BY MR. SCHENK

09:21AM  1    WAS SORT OF A LIGHT BULB MOMENT FOR HER, A EUREKA, IF YOU WILL.

09:21AM  2    SHE DISCOVERED THAT THE LAB HAD PROBLEMS, THAT MR. BALWANI WAS

09:21AM  3    NOT THE BUSINESSMAN THAT HE SAID HE WAS, AND THAT THE LAB

09:21AM  4    WASN'T THE BEST LAB IN THE COUNTRY.

09:21AM  5         BUT DURING THE INSPECTION THE PRIOR YEAR, SHE'S PRAYING.

09:21AM  6    WE'LL COME BACK TO THAT TESTIMONY THAT SHE GAVE A LITTLE BIT

09:22AM  7    LATER.

09:22AM  8         THE NEXT WITNESS THAT TESTIFIED WAS DR. ROSENDORFF.  HE

09:22AM  9    WAS THE LAB DIRECTOR AT THERANOS DURING ROUGHLY THAT FIRST YEAR

09:22AM  10   WITH WALGREENS, SORT OF LATE 2013 TO 2014.

09:22AM  11        DR. ROSENDORFF DESCRIBED TO YOU WHY HE LEFT, WHY HE

09:22AM  12   RESIGNED FROM THERANOS, AND HE TOLD YOU THAT HE REACHED A POINT

09:22AM  13   WHERE HE CONCLUDED THAT AT THERANOS THEY CARED MORE ABOUT PR

09:22AM  14   AND FUNDRAISING THAN PATIENT CARE.

09:22AM  15        THAT'S ANOTHER CONCEPT THAT I'LL COME BACK TO A LITTLE BIT

09:22AM  16   LATER.

09:22AM  17        THE NEXT WITNESS THAT TESTIFIED WAS DR. SUNG.  SHE WORKED

09:22AM  18   FOR A COMPANY CALLED CELGENE.  YOU'VE HEARD A LOT ABOUT WORK

09:22AM  19   THAT THERANOS DID WITH VARIOUS PHARMACEUTICAL COMPANIES OVER

09:22AM  20   THE YEAR, AND SORT OF THE DIFFERENCE BETWEEN WHAT THE

09:22AM  21   PHARMACEUTICAL COMPANIES SAY THAT THEY DID AND WHAT MS. HOLMES

09:22AM  22   TOLD OTHERS THEY DID.

09:22AM  23        THERE'S A DIFFERENCE IN WHAT ACTUALLY HAPPENED BETWEEN THE

09:22AM  24   PHARMACEUTICAL COMPANY AND THERANOS AND THE WAY THAT THAT

09:22AM  25   RELATIONSHIP WAS DESCRIBED TO INVESTORS, AND MS. SUNG WAS THE

CLOSING ARGUMENT BY MR. SCHENK                                    8919

09:22AM   1    FIRST OF THOSE TO COME AND TALK TO YOU.

09:23AM   2         AND SHE TOLD YOU THAT CELGENE HAD NEVER VALIDATED,

09:23AM   3    COMPREHENSIVELY VALIDATED THERANOS'S TECHNOLOGY.  YOU'VE NOW

09:23AM   4    SEEN A BUNCH OF TIMES A SLIDE IN THE BINDERS THAT WERE SENT TO

09:23AM   5    POTENTIAL INVESTORS INFORMING POTENTIAL INVESTORS THAT THERANOS

09:23AM   6    HAD BEEN COMPREHENSIVELY VALIDATED BY 10 OF THE 15 LARGEST

09:23AM   7    PHARMACEUTICAL COMPANIES, A PHRASE SOMETHING LIKE THAT, AND

09:23AM   8    THEN PHARMACEUTICAL COMPANIES CAME INTO THIS COURTROOM AND TOLD

09:23AM   9    YOU, WE DIDN'T COMPREHENSIVELY VALIDATE.

09:23AM  10         HERE'S THE FIRST ONE.

09:23AM  11         THE NEXT WITNESS THAT TESTIFIED WAS STEVE BURD.  MR. BURD

09:23AM  12    WAS THE CEO OF SAFEWAY.

09:23AM  13         LET ME TAKE A MOMENT TO TALK TO YOU ABOUT SOME OF THESE

09:23AM  14    OTHER SORT OF THIRD PARTY ENTITIES THAT YOU'VE HEARD ABOUT IN

09:23AM  15    THIS TRIAL:  SAFEWAY, WALGREENS, THE DEPARTMENT OF DEFENSE.

09:23AM  16    THE GOVERNMENT HAS NOT CHARGED MS. HOLMES WITH DEFRAUDING THOSE

09:23AM  17    THIRD PARTIES, SAFEWAY, WALGREENS, THE DEPARTMENT OF DEFENSE.

09:24AM  18         SO WHEN I'M POINTING OUT TO YOU FALSE STATEMENTS THAT WERE

09:24AM  19    MADE FROM MS. HOLMES OR THERANOS TO THESE THIRD PARTIES, IT'S

09:24AM  20    FOR REALLY THESE TWO REASONS, TWO CONCLUSIONS THAT I THINK IT'S

09:24AM  21    APPROPRIATE FOR YOU TO DRAW FROM THEM.

09:24AM  22         THE FIRST IS THAT WHEN THE FALSE STATEMENT THAT IS MADE TO

09:24AM  23    THESE THIRD PARTIES, LIKE SAFEWAY, IS EXACTLY LIKE THE FALSE

09:24AM  24    STATEMENT THAT IS MADE TO AN INVESTOR, YOU BEGIN TO SEE THAT

09:24AM  25    THERE'S A SCHEME GOING ON HERE.

CLOSING ARGUMENT BY MR. SCHENK                                    8920

09:24AM  1        "SCHEME" IS A TERM OF ART, WE'LL GET TO IT A LITTLE BIT

09:24AM  2   LATER IN THE ELEMENTS, BUT IT'S ALL THE SAME SCHEME THAT IS

09:24AM  3   HAPPENING.

09:24AM  4        THE INVESTORS HEARD IT, THE THIRD PARTIES HEARD IT, THE

09:24AM  5   BOARD HEARD IT.

09:24AM  6        SO IT'S VALUABLE.  IT'S USEFUL EVIDENCE TO YOU FOR THAT

09:24AM  7   CONCLUSION.

09:24AM  8        BUT IT'S ALSO USEFUL FOR ANOTHER REASON, AND LET ME USE

09:24AM  9   WALGREENS AS AN EXAMPLE.  YOU'VE HEARD FROM, AND I'LL SHOW YOU

09:24AM 10   THEIR PHOTOS IN A MOMENT, SOME WALGREENS WITNESSES WHO CAME

09:24AM 11   INTO THE COURTROOM AND SAID, HERE'S WHAT WE UNDERSTOOD THERANOS

09:24AM 12   COULD DO, AND THEN WE STARTED THIS BUSINESS RELATIONSHIP WITH

09:25AM 13   THERANOS, AND THEN WE TRACKED THE VENOUS DRAW PERCENT NUMBERS,

09:25AM 14   AND IN ORDER TO GO NATIONAL, WE WANTED THAT TO BE LOW.  WE SORT

09:25AM 15   OF UNDERSTOOD THAT THE TECHNOLOGY AT THERANOS WAS FINGERSTICK

09:25AM 16   BLOOD TESTING.

09:25AM 17        BUT THEN THEY ROLL OUT AND THERE'S A REALLY HIGH

09:25AM 18   PERCENTAGE, 40 PERCENT OR SO, OF VEIN DRAWS, AND THAT WAS

09:25AM 19   CONFUSING TO WALGREENS.

09:25AM 20        AND THE POINT HERE IS THAT WHEN THERANOS, WHEN MS. HOLMES

09:25AM 21   AND MR. BALWANI ARE TELLING INVESTORS THAT WE ARE GOING TO ROLL

09:25AM 22   OUT NATIONALLY WITH WALGREENS, THE RELATIONSHIP IS GOING WELL,

09:25AM 23   THERE ARE SORT OF TWO WAYS THEY KNOW THAT HOLMES KNOWS THAT

09:25AM 24   THAT'S FALSE.

09:25AM 25        ONE IS BECAUSE WALGREENS IS TELLING THEM, WE'RE CONCERNED

CLOSING ARGUMENT BY MR. SCHENK                                    8921

09:25AM  1    ABOUT IT, WE'RE CONCERNED ABOUT VEIN DRAWS, WE'RE CONCERNED

09:25AM  2    WITH OTHER SORT OF THINGS THAT ARE DIFFERENT THAN WHAT WE

09:25AM  3    EXPECTED.

09:25AM  4         BUT ANOTHER IS BECAUSE THE FOUNDATION OF THE RELATIONSHIP

09:25AM  5    BETWEEN THERANOS AND WALGREENS WAS BUILT ON FRAUD.  FALSE

09:25AM  6    STATEMENTS MADE TO WALGREENS ARE VALUABLE BECAUSE MS. HOLMES

09:26AM  7    DOESN'T NEED TO HEAR SOMEONE FROM WALGREENS TELL HER THERE'S

09:26AM  8    TOO MANY VEIN DRAWS OR THAT THE PATIENT SATISFACTION SCORE

09:26AM  9    ISN'T HIGH ENOUGH OR SOME OTHER FACT ABOUT THE RELATIONSHIP.

09:26AM  10        SHE KNOWS THAT THE RELATIONSHIP IS DESTINED TO FAIL

09:26AM  11   BECAUSE THE TECHNOLOGY CAN'T DO WHAT WALGREENS THINKS IT CAN

09:26AM  12   DO.

09:26AM  13        SO WHETHER SHE'S HEARING BACK FROM WALGREENS

09:26AM  14   REPRESENTATIONS, STATEMENTS THAT WALGREENS IS CONCERNED, IS ONE

09:26AM  15   WAY SHE KNOWS IT'S GOING TO FAIL.

09:26AM  16        BUT IT ISN'T THE ONLY WAY.  IT REALLY IS JUST A MATTER OF

09:26AM  17   TIME BEFORE WALGREENS DISCOVERS THAT THEY HAD BEEN DEFRAUDED.

09:26AM  18        AND THERE ARE A FEW WAYS, AND WE'LL TALK ABOUT THEM, THAT

09:26AM  19   FALSE STATEMENTS WERE COMMUNICATED TO WALGREENS.

09:26AM  20        IN FACT, WALGREENS DID PURCHASE EQUITY AT SOME POINT.

09:26AM  21   THEY BOUGHT EQUITY INTO THERANOS.

09:26AM  22        YOU DON'T HAVE TO RESOLVE THE QUESTION.  YOU'RE NOT GOING

09:26AM  23   TO BE ASKED TO, IN YOUR VERDICT FORM, DECIDE IF SAFEWAY OR

09:26AM  24   WALGREENS OR THE DEPARTMENT OF DEFENSE ARE VICTIMS.

09:26AM  25        "VICTIMS" IN THIS CASE, AS I'M USING THAT WORD, REFER TO

CLOSING ARGUMENT BY MR. SCHENK                                    8922

09:27AM  1    THE INVESTORS AND REFER TO THE PATIENTS, BUT THAT DOESN'T MEAN

09:27AM  2    THAT THIS THIRD PARTY TESTIMONY ISN'T STILL RELEVANT AND

09:27AM  3    VALUABLE TO YOU.

09:27AM  4         AND STEVE BURD IS THIS FIRST EXAMPLE.  THE CEO AT SAFEWAY

09:27AM  5    DESCRIBED HIS INITIAL INTERACTIONS WITH MS. HOLMES AND WHAT HE

09:27AM  6    WAS LEARNING, AND MR. BURD SAID THAT ELIZABETH HOLMES INFORMED

09:27AM  7    HIM AND SAFEWAY AND THE DEPARTMENT OF DEFENSE ABOUT WORK THAT

09:27AM  8    THERANOS HAD DONE, INCLUDING THE FACT THAT THE DEVICE WAS IN A

09:27AM  9    MEDEVAC AROUND THE WORLD, PLACES THAT AMERICANS DIDN'T EVEN

09:27AM  10   KNOW WE WERE.

09:27AM  11        YOU KNOW THAT ISN'T TRUE, AND THAT'S WHY STATEMENTS LIKE

09:27AM  12   THIS TO SAFEWAY ARE VALUABLE BECAUSE IT'S THE SAME KIND OF

09:27AM  13   STATEMENT THAT INVESTORS HEARD.

09:27AM  14        WADE MIQUELON WAS THE NEXT WITNESS TO TESTIFY.

09:27AM  15   MR. MIQUELON WAS THE CFO AT WALGREENS, AND MR. MIQUELON TOLD

09:27AM  16   YOU AND SHOWED YOU -- IN FACT, I THINK THIS MIGHT BE THE FIRST

09:27AM  17   INSTANCE, IF YOU SEE IN THE LOWER RIGHT CORNER THERE'S AN

09:28AM  18   EXHIBIT NUMBER, 617, THAT REFERS TO AN AGREEMENT, A MASTER

09:28AM  19   SERVICES AGREEMENT BETWEEN THERANOS AND WALGREENS, AND IN THE

09:28AM  20   AGREEMENT IT TALKED ABOUT THERE NEEDING TO BE SATISFACTION OF

09:28AM  21   WALGREENS FOR FURTHER ROLLOUTS.

09:28AM  22        YOU HEARD THAT TESTIMONY, BUT IT'S ALSO IN THE DOCUMENTS.

09:28AM  23        SO A NATIONAL ROLLOUT OF WALGREENS, OF THERANOS STORES --

09:28AM  24   OR THERANOS SERVICE CENTERS WITHIN WALGREENS STORES CERTAINLY

09:28AM  25   WASN'T GUARANTEED.  IT WAS SOMETHING THAT WAS GOING TO BE

CLOSING ARGUMENT BY MR. SCHENK                                    8923

09:28AM  1    EVALUATED, AND MR. MIQUELON TOLD YOU IT WAS GOING TO BE

09:28AM  2    EVALUATED.

09:28AM  3        AND AGAIN, THE TWO POINTS I MADE TO YOU:  MS. HOLMES WAS

09:28AM  4    TOLD BY WALGREENS THAT THERE WERE PROBLEMS; BUT ALSO, SHE

09:28AM  5    DIDN'T NEED TO BE TOLD THAT THERE WERE PROBLEMS.  SHE KNOWS

09:28AM  6    THAT THERE WERE FALSE STATEMENTS MADE TO WALGREENS ABOUT WHAT

09:28AM  7    THE TECHNOLOGY COULD DO, AND THEREFORE, THE RELATIONSHIP WAS

09:28AM  8    DESTINED TO FAIL.  IT WAS JUST A MATTER OF TIME UNTIL WALGREENS

09:28AM  9    LEARNED THAT THEY HAD BEEN DECEIVED.

09:28AM 10        MR. AMENTA WAS THE NEXT WITNESS THAT TESTIFIED.  YOU MAY

09:28AM 11    RECALL THAT MR. AMENTA WORKED, OR WORKS, FOR THE FEDERAL

09:28AM 12    RESERVE BANK IN NEW YORK, AND HE CAME TO COURT TO TALK TO YOU

09:29AM 13    ABOUT SOMETHING CALLED FEDWIRE.

09:29AM 14        FEDWIRE IS AN ELECTRONIC FUNDS TRANSFER SYSTEM.  WHEN YOU

09:29AM 15    WIRE MONEY FROM ONE BANK ACCOUNT TO ANOTHER BANK ACCOUNT,

09:29AM 16    SOMETIMES IT USES FEDWIRE, AND WHEN IT DOES USE FEDWIRE, A WIRE

09:29AM 17    CROSSES STATE LINES.

09:29AM 18        WHEN WE GET TO THE ELEMENTS OF CERTAIN COUNTS THAT ARE

09:29AM 19    CHARGED THAT YOU'RE GOING TO HAVE TO DELIBERATE ABOUT, ONE OF

09:29AM 20    THE ELEMENTS IS AN INTERSTATE WIRE, AND IN THIS CASE ALL OF THE

09:29AM 21    INVESTORS' INVESTMENTS WERE WIRES, ELECTRONIC FUNDS TRANSFERS,

09:29AM 22    FROM ONE BANK ACCOUNT TO THERANOS'S BANK ACCOUNT AND MR. AMENTA

09:29AM 23    PROVIDED THE TESTIMONY AND THE DOCUMENTS TO SHOW YOU THAT THOSE

09:29AM 24    WIRES CROSSED STATE LINES.

09:29AM 25        THERE IS ALSO ONE COUNT RELATED TO THE PATIENT FRAUD THAT

UNITED STATES COURT REPORTERS

CLOSING ARGUMENT BY MR. SCHENK                                   8924

09:29AM   1    ALSO WAS AN INTERSTATE WIRE.  THERANOS BOUGHT A MEDIA BUY,

09:29AM   2    ADVERTISEMENTS IN THE ARIZONA MARKET, AND THEY DID THAT WITH AN

09:30AM   3    ELECTRONIC WIRE.

09:30AM   4        SO THE INTERSTATE NEXUS ELEMENT IS SATISFIED BY

09:30AM   5    MR. AMENTA'S TESTIMONY.  THAT'S WHY HE CAME.

09:30AM   6        THE NEXT WITNESS WAS NIMESH JHAVERI.  MR. JHAVERI ALSO

09:30AM   7    WORKED AT WALGREENS.  HE TOLD YOU THAT HIS JOB WAS SORT OF TO

09:30AM   8    OPERATIONALIZE THE BUSINESS RELATIONSHIP.

09:30AM   9        WHEN MR. MIQUELON STEPPED BACK, HE DID THE NEGOTIATION OF

09:30AM  10    THE TWO PARTIES, HELPED SORT OF FORMULATE THE AGREEMENTS.

09:30AM  11        BUT THEN WHEN THEY STARTED TO ROLL OUT IN STORES,

09:30AM  12    MR. JHAVERI PLAYED MORE OF A ROLE.  AND MR. JHAVERI DESCRIBED

09:30AM  13    TO YOU THESE PERIODIC, MAYBE MONTHLY -- I CAN'T REMEMBER

09:30AM  14    EXACTLY HOW OFTEN -- MEETINGS BETWEEN THERANOS AND WALGREENS,

09:30AM  15    AND THE TOPICS THAT WERE DISCUSSED.

09:30AM  16        HE EVEN TESTIFIED ABOUT SOME POWERPOINT SLIDES THAT WERE

09:30AM  17    SHOWN DURING THESE PERIODIC MEETINGS.

09:30AM  18        AND ONE OF THE THINGS THAT WALGREENS WAS TRACKING WAS

09:30AM  19    VENOUS DRAW NUMBERS TO SEE IF THAT NUMBER EVER GOT LOW.  THAT'S

09:30AM  20    WHAT WALGREENS WAS EXPECTING WAS THAT THE TESTING WOULD BE DONE

09:31AM  21    BY A FINGERSTICK.  IT WASN'T THAT THAT WAS SURPRISING TO

09:31AM  22    WALGREENS.  THEY TRACKED IT.  THEY TALKED TO THERANOS ABOUT IT.

09:31AM  23        IT WAS MR. BALWANI WHO WAS PRESENT IN THESE MEETINGS.  YOU

09:31AM  24    SAW AN EMAIL, AND I'LL SHOW IT TO YOU A LITTLE LATER, WHERE

09:31AM  25    MR. BALWANI RECEIVES AN EMAIL FROM MR. JHAVERI CONCERNED ABOUT

CLOSING ARGUMENT BY MR. SCHENK                                  8925

09:31AM  1    THE VENOUS DRAW NUMBERS, AND MR. BALWANI FORWARDS THAT EMAIL TO

09:31AM  2    MS. HOLMES.

09:31AM  3        SO SHE WAS NOT AT MEETINGS BETWEEN MR. JHAVERI AND

09:31AM  4    MR. BALWANI, BUT SHE KNOWS ABOUT THE INFORMATION THAT WAS BEING

09:31AM  5    DISCUSSED AT THE MEETINGS.

09:31AM  6        MR. JHAVERI ALSO TALKED TO YOU ABOUT SOME TEXT MESSAGES.

09:31AM  7    YOU MAY RECALL HE READ SOME TEXT MESSAGES.

09:31AM  8        AND THE ONE I HAVE ON THE SCREEN NOW IS FROM OCTOBER 16,

09:31AM  9    2015.  THIS IS RIGHT WHEN THAT NEGATIVE "WALL STREET JOURNAL"

09:31AM 10    ARTICLE CAME OUT.  I THINK IT CAME OUT OCTOBER 15TH, 2016 --

09:31AM 11    I'M SORRY -- OCTOBER 15TH, 2015.

09:31AM 12        SO AT THAT TIME HOLMES AND BALWANI ARE TEXTING EACH OTHER

09:32AM 13    AND MR. BALWANI IS SAYING, OK WAG, W-A-G, WALGREENS, IS

09:32AM 14    FREAKING OUT.  LACK OF TRANSPARENCY.

09:32AM 15        "WHY DIDN'T WE TELL THEM ABOUT TURNING OFF THE

09:32AM 16    NANOTAINER."

09:32AM 17        YOU HEARD THAT AT THERANOS WHEN THEY USED FINGERSTICK, THE

09:32AM 18    BLOOD WAS COLLECTED IN A DEVICE, AND SOMETIMES YOU'VE HEARD

09:32AM 19    THAT DEVICE CALLED A NANOTAINER, SOMETIMES YOU'VE HEARD IT

09:32AM 20    CALLED A CTN, A CAPILLARY TUBE AND NANOTAINER.

09:32AM 21        AND AT THIS POINT IN TIME, OCTOBER 2015, THERANOS HAD

09:32AM 22    STOPPED USING THAT DEVICE.  THEY WERE DOING THE BLOOD TESTING

09:32AM 23    BY VEIN DRAW.

09:32AM 24        AND WALGREENS, THERANOS'S BUSINESS PARTNER, IS READING IN

09:32AM 25    "THE WALL STREET JOURNAL" THAT THAT HAPPENED.  AND MR. BALWANI

UNITED STATES COURT REPORTERS

CLOSING ARGUMENT BY MR. SCHENK                              8926

09:32AM  1    IS HAVING A PHONE CALL WITH WALGREENS, AND WALGREENS WAS

09:32AM  2    FRUSTRATED THAT THEY'RE LEARNING ABOUT THAT FACT.  THEY TURNED

09:32AM  3    IT OFF.  THEY STOPPED USING THE NANOTAINER.

09:32AM  4        AND MS. HOLMES SAYS, "THEN LET'S SHOW THEM THAT THIS

09:33AM  5    LITERALLY IS STILL UP IN AIR SO WE LITERALLY JUST DECIDED SINCE

09:33AM  6    THE DISCUSSION IS GETTING AIRED OUT IN PRESS."

09:33AM  7        LET'S TELL WALGREENS THE DECISION TO STOP USING THE

09:33AM  8    NANOTAINER IS SOMETHING THAT WE'RE STILL CONSIDERING, WE'RE

09:33AM  9    STILL SORT OF FIGURING OUR WAY THROUGH.

09:33AM 10        MR. BALWANI WRITES, "HOWEVER ISSUE IS WE DIDN'T TELL THEM

09:33AM 11    IN ADVANCE ABOUT SWITCHING."

09:33AM 12        MS. HOLMES RESPONDS, REPLIES, "WE'LL HAVE TO PRESENT WELL

09:33AM 13    THAT WE HADN'T DECIDED TO."

09:33AM 14        AND MR. BALWANI WRITES, "BAD IDEA.  AT THIS POINT THEY

09:33AM 15    KNOW.  SO NEED TO BE TRANSPARENT."

09:33AM 16        MR. BALWANI ISN'T SAYING SORT OF SOMETHING THAT FLOWS FROM

09:33AM 17    THE IDEA OF HONESTY IS THE BEST POLICY.  HE'S NOT SURPRISED

09:33AM 18    THAT ELIZABETH HOLMES IS SUGGESTING TO HIM, LET'S SAY SOMETHING

09:33AM 19    OTHER THAN THE COMPLETE TRUTH TO WALGREENS.

09:33AM 20        MR. BALWANI IS SAYING, WE CAN'T BE DECEPTIVE IN THIS ONE

09:33AM 21    INSTANCE ON THIS ONE OCCASION BECAUSE WALGREENS ALREADY KNOWS,

09:34AM 22    SO WE HAVE TO SAY SOMETHING DIFFERENT.  YOUR SUGGESTED

09:34AM 23    STATEMENT TO WALGREENS, MS. HOLMES, IS NOT A GOOD IDEA BECAUSE

09:34AM 24    WALGREENS WILL CATCH US IN THIS FALSE STATEMENT.

09:34AM 25        THE NEXT WITNESS THAT TESTIFIED WAS DR. DHAWAN.

CLOSING ARGUMENT BY MR. SCHENK

09:34AM   1    DR. DHAWAN WAS A LABORATORY DIRECTOR AT THERANOS.  HE ALSO, AS

09:34AM   2    YOU KNOW, WAS SUNNY BALWANI'S DERMATOLOGIST.

09:34AM   3        WHEN DR. ROSENDORFF LEFT THERANOS, THERE WERE SEVERAL LAB

09:34AM   4    DIRECTORS WHO FOLLOWED, AND YOU HEARD FROM THEM, DR. DHAWAN,

09:34AM   5    DR. SAWYER, AND DR. DAS.  DR. DHAWAN WAS THE FIRST OF THOSE

09:34AM   6    NEXT GROUP OF LAB DIRECTORS AND DR. DHAWAN TOLD YOU FROM WHEN

09:34AM   7    HE STARTED, WHICH WAS FROM NOVEMBER 2014 TO ABOUT JUNE OR JULY

09:34AM   8    OF 2015 -- SO I'LL CALL IT SEVEN MONTHS -- HE SPENT A TOTAL OF

09:34AM   9    FIVE TO TEN HOURS WORKING ON THERANOS THINGS.

09:34AM  10        COMPARE THAT FOR JUST A MOMENT TO YOUR IMPRESSION OF

09:35AM  11    DR. ROSENDORFF, THE LAB DIRECTOR WHO WAS THERE FOR THAT PRIOR

09:35AM  12    YEAR, FALL '13 TO FALL '14.  FIVE TO TEN HOURS IN SEVEN MONTHS.

09:35AM  13        THE NEXT WITNESS WHO TESTIFIED WAS DAN EDLIN.  MR. EDLIN

09:35AM  14    ALSO WORKED AT THERANOS.  AND A LOT OF HIS JOB, DURING THE TIME

09:35AM  15    THAT HE WAS TESTIFYING ABOUT, WAS WORKING VERY CLOSELY WITH

09:35AM  16    ELIZABETH HOLMES ON SPECIAL PROJECTS, THINGS LIKE THE WORK THAT

09:35AM  17    THEY WERE DOING WITH THE MILITARY, AND MR. EDLIN TOLD YOU THAT

09:35AM  18    IN HIS KNOWLEDGE, THE THERANOS DEVICE WAS IN NONE OF THOSE

09:35AM  19    PLACES.  AND YOU CAN SEE THERE ARE SORT OF A LIST OF THEM.

09:35AM  20        WAS IT EVER USED BY THE MILITARY CLINICALLY IN THE

09:35AM  21    TREATMENT OF SOLDIERS?  ON THE BATTLEFIELD FOR CLINICAL USE?

09:35AM  22    IN THE MIDDLE EAST AT ALL?  ON MEDEVAC?  AND HIS ANSWER WAS,

09:35AM  23    NOT TO MY KNOWLEDGE.

09:35AM  24        AT THAT POINT YOU HAD HEARD FROM GENERAL MATTIS WHO SAID

09:35AM  25    SIMILAR THINGS.  YOU SORT OF HEARD EXTERNALLY FROM THERANOS

CLOSING ARGUMENT BY MR. SCHENK                                    8928

09:36AM   1    THAT IT WASN'T USED IN THOSE PLACES.

09:36AM   2         AND THEN YOU HEARD INTERNALLY FROM DAN EDLIN.

09:36AM   3         AND THEN YOU ALSO HEARD, WHEN MS. HOLMES GOT ON THE STAND,

09:36AM   4    SHE AGREED TO THESE THINGS.  IT ISN'T REALLY IN DEBATE ABOUT

09:36AM   5    WHETHER IT WAS USED IN THESE PLACES.

09:36AM   6         THE QUESTION IS MUCH MORE:  WERE THESE REPRESENTATIONS

09:36AM   7    MADE TO INVESTORS?

09:36AM   8         THE NEXT WITNESS THAT TESTIFIED WAS SHANE WEBER.

09:36AM   9    MR. WEBER WORKED AT PFIZER, AND YOU'VE HEARD A LOT ABOUT THE

09:36AM   10   USE OF LOGOS ON CERTAIN VALIDATION DOCUMENTS THAT THE

09:36AM   11   PHARMACEUTICAL COMPANIES DIDN'T AUTHORIZE.  IN SOME INSTANCES

09:36AM   12   THEY DIDN'T WRITE, THEY DIDN'T AUTHORIZE THE APPLICATION, THE

09:36AM   13   APPLYING OF THE LOGO TO THE DOCUMENT, AND THEY DIDN'T REACH THE

09:36AM   14   CONCLUSIONS IN THE DOCUMENT.

09:36AM   15        AND THE FIRST OF THOSE KIND OF WITNESSES WAS MR. WEBER AND

09:36AM   16   HE TOLD YOU THOSE WERE TRUE, THE LINE THAT I JUST RAN THROUGH,

09:36AM   17   VIS-À-VIS PFIZER, PFIZER DIDN'T AGREE TO THE LOGO AND DIDN'T

09:37AM   18   ASK TO APPLY THEIR LOGO AND THEY DIDN'T VALIDATE THERANOS'S

09:37AM   19   TECHNOLOGY.

09:37AM   20        BRYAN TOLBERT WAS THE NEXT WITNESS.  MR. TOLBERT WAS THE

09:37AM   21   FIRST VICTIM INVESTOR THAT YOU HEARD FROM IN THIS CASE.  HE

09:37AM   22   WORKS FOR A COMPANY CALLED HALL GROUP.

09:37AM   23        AND MR. TOLBERT TALKED TO YOU ABOUT HALL HAD INVESTED

09:37AM   24   TWICE.  THEY INVESTED BACK IN 2016 AND THEY INVESTED AGAIN AT

09:37AM   25   THE END OF 2013.

09:37AM   1        AND IN THOSE LAST COUPLE OF WEEKS OF 2013 IN DECEMBER,

09:37AM   2   HALL AND OTHER INVESTORS WERE DECIDING WHETHER TO INVEST AGAIN,

09:37AM   3   WHETHER TO MAKE ANOTHER INVESTMENT IN THERANOS, AND THERE WAS A

09:37AM   4   CALL TO DISCUSS THERANOS TO HEAR UPDATES.

09:37AM   5        AND MR. TOLBERT'S BOSS, CRAIG HALL, MIGHT NOT BE ABLE TO

09:37AM   6   MAKE THAT CALL, SO BRYAN TOLBERT MADE THE DECISION TO RECORD

09:37AM   7   THE CALL.

09:37AM   8        MS. HOLMES DID NOT KNOW THAT SHE WAS BEING RECORDED.

09:37AM   9   THAT'S WHAT MR. TOLBERT TOLD YOU.

09:37AM  10        AND DURING THIS CALL, YOU HEARD MANY PORTIONS PLAYED FOR

09:37AM  11   YOU, YOU HEARD MS. HOLMES MAKE REPRESENTATIONS TO MR. TOLBERT.

09:38AM  12        LET'S LISTEN TO ONE.

10:32AM  13        (AN AUDIOTAPE WAS PLAYED IN OPEN COURT OFF THE RECORD.)

09:40AM  14        MR. SCHENK:  IN THAT CLIP, YOU HEARD MS. HOLMES HAS

09:40AM  15   THE CAPABILITY OF EXPLAINING TO AN INVESTOR WHEN SOMETHING HAS

09:41AM  16   NOT YET BEEN ACCOMPLISHED AT THERANOS.  SHE SUCCESSFULLY

09:41AM  17   COMMUNICATED TO BRYAN TOLBERT THAT THERANOS WOULD HAVE THE

09:41AM  18   OPPORTUNITY TO BE THE LARGEST LAB IN THE COMPANY.  SHE CAN

09:41AM  19   SUCCESSFULLY COMMUNICATE CONCEPTS THAT ARE ASPIRATIONAL.

09:41AM  20        IN THAT SAME CLIP, THOUGH, SHE TALKS ABOUT THERANOS HAVING

09:41AM  21   THE ABILITY TO RUN ANY LAB TEST THAT IS DONE IN TRADITIONAL

09:41AM  22   LABS.

09:41AM  23        MR. TOLBERT, AND ALL OF THE OTHER INVESTORS WHO

09:41AM  24   COMMUNICATED WITH MS. HOLMES, LEFT INTERACTIONS WITH HER WITH

09:41AM  25   THE UNDERSTANDING THAT THAT WAS A PRESENT CAPABILITY, THAT

CLOSING ARGUMENT BY MR. SCHENK                                    8930

09:41AM   1    THERANOS'S TECHNOLOGY COULD RUN ANY TEST.

09:41AM   2        WHEN SHE WANTS TO COMMUNICATE SOMETHING ASPIRATIONAL, SHE

09:41AM   3    CAN.  IT WAS OBVIOUS TO MR. TOLBERT, AND I THINK IT WAS KNOWN

09:41AM   4    TO HIM EVEN IF SHE HADN'T SAID IT, THAT THERANOS WASN'T YET THE

09:41AM   5    LARGEST LAB COMPANY IN THE COUNTRY.

09:41AM   6        BUT WHEN SHE WANTED TO COMMUNICATE FACTS FAVORABLE TO HER

09:42AM   7    COMPANY, LIKE WE CAN RUN ANY TESTS, SHE COMMUNICATED THAT

09:42AM   8    SUCCESSFULLY TO MR. TOLBERT ALSO.

09:42AM   9        THE NEXT WITNESS THAT TESTIFIED WAS LISA PETERSON.

09:42AM   10       MS. PETERSON WORKS FOR RDV, THE DEVOS FAMILY INVESTMENT.

09:42AM   11   AND WE'LL GO THROUGH MANY EXAMPLES OF WHAT MS. PETERSON HEARD.

09:42AM   12       ONE OF THE FACTS SHE HEARD -- RDV'S INVESTMENT WAS IN

09:42AM   13   2014 -- WAS THAT THE WALGREENS RELATIONSHIP WAS FINE, THAT IT

09:42AM   14   WASN'T STALLING, AND THERE WERE NO PROBLEMS.

09:42AM   15       THAT FOLDS INTO A FINANCIAL PROJECTION THAT SHE RECEIVED

09:42AM   16   AND MR. MOSLEY RECEIVED, AND WE'LL TALK ABOUT THAT IN A MOMENT.

09:42AM   17       BUT ONE OF THE THINGS THAT IS IMPORTANT IS THE FINANCIAL

09:42AM   18   PROJECTION IS BASED UPON A HEALTHY AND EXPANDING WALGREENS

09:42AM   19   RELATIONSHIP, AND MS. PETERSON HAD THE UNDERSTANDING THAT THE

09:42AM   20   RELATIONSHIP BETWEEN THERANOS AND WALGREENS WAS HEALTHY AND

09:42AM   21   EXPANDING.

09:42AM   22       THE NEXT WITNESS THAT TESTIFIED WAS DR. CULLEN.

09:43AM   23   DR. CULLEN WORKED AT SCHERING-PLOUGH, AND SORT OF SIMILAR TO

09:43AM   24   MR. WEBER FROM PFIZER, DR. CULLEN CAME IN AND TOLD YOU, WE

09:43AM   25   DIDN'T AGREE TO PUT OUR LOGO ON THAT DOCUMENT, THESE

UNITED STATES COURT REPORTERS

CLOSING ARGUMENT BY MR. SCHENK                                    8931

09:43AM   1      CONCLUSIONS IN THIS DOCUMENT, THE DOCUMENT YOU SEE IS

09:43AM   2      EXHIBIT 259, THESE ARE THERANOS'S CONCLUSIONS, THEY'RE NOT

09:43AM   3      SCHERING-PLOUGH'S.

09:43AM   4          SHE ALSO WENT A LITTLE BIT FURTHER AND DESCRIBED TO YOU

09:43AM   5      WHERE THE WORK HAD BEEN DONE, SORT OF WHAT THE STUDY WAS AND

09:43AM   6      WHERE THAT WORK WAS DONE, AND SHE TOLD YOU THAT FOR THE

09:43AM   7      SCHERING-PLOUGH WORK, THE DEVICES, THE THERANOS DEVICES STAYED

09:43AM   8      AT THERANOS AND THAT TESTING THAT WAS RUN WAS AT THERANOS.

09:43AM   9          AND AS A RESULT, SHE'S SAYING, WE COULDN'T HAVE REACHED

09:43AM  10      THESE CONCLUSIONS.  WE DIDN'T WRITE THIS DOCUMENT.  BUT ALSO WE

09:43AM  11      WOULDN'T HAVE BEEN IN A POSITION TO DO IT BECAUSE OF WHAT THE

09:43AM  12      WORK WAS, THE STUFF THAT WAS DONE WAS ALL DONE AT THERANOS.

09:43AM  13          AND, IN FACT, SHE TESTIFIED ABOUT AN INSTANCE WHEN SHE AND

09:43AM  14      SOME OTHERS FROM SCHERING-PLOUGH FLEW FROM NEW JERSEY TO

09:43AM  15      PALO ALTO, WENT TO A MEETING AT THERANOS, AND ASKED QUESTIONS

09:44AM  16      TO TRY TO LEARN ABOUT THE DATA THAT WAS GENERATED, AND SHE FELT

09:44AM  17      THAT MS. HOLMES WASN'T FORTHCOMING IN THAT MEETING.  WE'LL TALK

09:44AM  18      ABOUT THAT IN A LITTLE BIT.

09:44AM  19          DAN MOSLEY WAS THE NEXT WITNESS WHO TESTIFIED.

09:44AM  20          HE WAS ALSO AN INVESTOR.  YOU'LL RECALL THAT MR. MOSLEY

09:44AM  21      WAS AN ATTORNEY FOR A LAW FIRM IN NEW YORK, AND HE HAD A

09:44AM  22      BACKGROUND IN TRUSTS AND ESTATES, AND HE HAD AS CLIENTS OTHER

09:44AM  23      INDIVIDUALS, DR. KISSINGER WAS ONE OF THEM.

09:44AM  24          DR. KISSINGER ASKED MR. MOSLEY TO LOOK AT THERANOS AND LET

09:44AM  25      DR. KISSINGER KNOW WHAT MR. MOSLEY THOUGHT.  AND TO ACCOMPLISH

CLOSING ARGUMENT BY MR. SCHENK

```
09:44AM   1    THAT, DAN MOSLEY RECEIVED A BINDER OF DOCUMENTS, AN INVESTOR

09:44AM   2    BINDER.

09:44AM   3         YOU HEARD ABOUT INVESTOR BINDERS IN THIS CASE, AND WE'LL

09:44AM   4    TALK A LITTLE BIT MORE ABOUT THEM THIS MORNING.

09:44AM   5         IN THE INVESTMENT BINDER WAS THE PFIZER REPORT.  SO THAT

09:44AM   6    PFIZER DOCUMENT WASN'T JUST SENT TO WALGREENS.  IT WAS ALSO

09:45AM   7    SENT TO INVESTORS.

09:45AM   8         AND IT WAS PARTICULARLY SIGNIFICANT TO MR. MOSLEY.

09:45AM   9    MR. MOSLEY THOUGHT PFIZER WROTE THE DOCUMENT, AND MR. MOSLEY

09:45AM  10    THOUGHT THAT IT WAS, THE PFIZER REPORT, WAS THE MOST VALUABLE

09:45AM  11    VALIDATION, INDEPENDENT VALIDATION OF THE EFFICACY OF THE

09:45AM  12    THERANOS TECHNOLOGY.

09:45AM  13         AND YOU KNOW HE THOUGHT THAT, HE TESTIFIED ABOUT IT, BUT

09:45AM  14    HE ALSO PREPARED A DOCUMENT FOR DR. KISSINGER, AND IN IT, AND

09:45AM  15    I'LL SHOW IT TO YOU A LITTLE LATER, HE SAYS THAT, HE SAYS HOW

09:45AM  16    IMPORTANT THE PFIZER DOCUMENT IS, AND I THINK THERE'S EVEN

09:45AM  17    UNDERLINING IN IT.  HE TALKS ABOUT THE TIME THAT HE SPENT WITH

09:45AM  18    THAT PARTICULAR DOCUMENT.

09:45AM  19         CHRIS LUCAS WAS THE NEXT WITNESS.  HE WAS ALSO AN

09:45AM  20    INVESTOR.

09:45AM  21         MR. LUCAS HAD A FUND CALLED BLACK DIAMOND VENTURES.  AND

09:45AM  22    IN ADDITION TO BEING AN INVESTOR FOR MULTIPLE OCCASIONS, HE

09:45AM  23    ALSO DID SOME WORK WITH THERANOS.  I THINK HE SAID HE WAS

09:46AM  24    HELPING OUT WITH FINANCIALS, LOOKING AT SOME OF THE DATA IN

09:46AM  25    EXCEL CHARTS.
```

CLOSING ARGUMENT BY MR. SCHENK                                        8933

```
09:46AM   1          AND ALL OF THAT EXPOSURE, BEING A MULTIPLE TIME INVESTOR

09:46AM   2    AND DOING SOME WORK WITH THERANOS, HE STILL TOLD YOU THAT HE

09:46AM   3    WOULD HAVE BEEN SURPRISED IF HE LEARNED THAT THERANOS'S

09:46AM   4    TECHNOLOGY, ITS ANALYZER, COULD NEVER DO MORE THAN 12 TESTS.

09:46AM   5          LOOK AT ALL OF THE EXPOSURE THAT SOMEONE HAD TO THE

09:46AM   6    COMPANY, INVESTING MULTIPLE TIMES, DOING SOME WORK FOR THE

09:46AM   7    COMPANY, AND STILL SORT OF THE FUNDAMENTAL TRUTH ABOUT THERANOS

09:46AM   8    WAS SURPRISING TO MR. LUCAS.

09:46AM   9          DR. SAWYER TESTIFIED NEXT.  SHE WAS ALSO A LAB DIRECTOR.

09:46AM  10    SHE WORKED AT THERANOS AROUND THE SAME TIME, EVEN OVERLAPPING

09:46AM  11    WITH DR. DHAWAN AT SOME POINT IN TIME.

09:46AM  12          AND IF IT WAS POSSIBLE, SHE SPENT LESS TIME WORKING AT

09:46AM  13    THERANOS THAN DR. DHAWAN.

09:46AM  14          DR. DHAWAN'S FIVE TO TEN HOURS THAT HE ESTIMATED,

09:46AM  15    DR. DHAWAN WENT TO THE LAB.

09:47AM  16          DR. SAWYER NEVER SET FOOT IN THE LAB.  SHE NEVER SAW THE

09:47AM  17    EDISON DEVICE.  SHE NEVER SPOKE TO DOCTORS.  SHE NEVER SPOKE TO

09:47AM  18    PATIENTS.  AND SHE WAS NEVER SPOKEN TO ABOUT CRITICAL VALUES.

09:47AM  19    IF A LAB TEST WAS CONDUCTED AT THERANOS AND THE VALUE WAS VERY

09:47AM  20    HIGH, WAS OF THIS -- OR VERY LOW -- WAS OF THIS SORT THAT WAS

09:47AM  21    CALLED A CRITICAL VALUE, SHE WAS NEVER CONSULTED, NOT ONE TIME

09:47AM  22    ON ANY OCCASION.

09:47AM  23          DR. DAS WAS THE NEXT WITNESS.  HE WAS THE LAB DIRECTOR

09:47AM  24    AFTER SAWYER AND DHAWAN.

09:47AM  25          AND DR. DAS TALKED TO YOU ABOUT THE PRACTICE AT THERANOS
```

CLOSING ARGUMENT BY MR. SCHENK                                    8934

09:47AM  1    LATER ON OF VOIDING TESTS.  AFTER THE CMS INSPECTION AND REPORT

09:47AM  2    CAME OUT, THERANOS THEN VOIDED ALL OF THE TESTS RUN ON THE

09:47AM  3    THERANOS DEVICE, AND HE SAID HE DID THAT BECAUSE HE FOUND THE

09:47AM  4    DEVICE UNSUITABLE FOR, AS IT SAYS HERE, CLINICAL USE.

09:47AM  5         MR. EISENMAN WAS THE NEXT WITNESS.  MR. EISENMAN WAS ALSO

09:47AM  6    AN INVESTOR.  YOU MAY RECALL SOME OF THE FRUSTRATIONS THAT WERE

09:48AM  7    PRESENT ON BOTH SIDES, ON MR. EISENMAN'S PART AND ON THERANOS'S

09:48AM  8    PART.  MR. EISENMAN WANTED MORE INFORMATION AND THERANOS WAS

09:48AM  9    NOT PROVIDING MORE INFORMATION.

09:48AM  10        HERE MR. EISENMAN IS THIRSTY FOR INFORMATION, SO HE'S

09:48AM  11   DOING RESEARCH, AND HE DISCOVERS A UBS ANALYST REPORT.  AND IN

09:48AM  12   THAT REPORT THE ANALYST -- THIS IS BEFORE THE 2015

09:48AM  13   "WALL STREET JOURNAL" ARTICLE COMES OUT THAT SAYS WHAT IS

09:48AM  14   HAPPENING WITHIN THE FOUR WALLS OF THERANOS -- MR. EISENMAN

09:48AM  15   DISCOVERS THIS UBS ANALYST SAYING THINGS LIKE THEY DRAW BLOOD

09:48AM  16   MOSTLY THROUGH VENIPUNCTURE, THEY THEN SHIP THE BLOOD TO A

09:48AM  17   REGIONAL LAB, AND IT'S HIGHLY UNLIKELY THAT ALL OF THE TESTS

09:48AM  18   ARE BEING DONE ON ONE MACHINE.

09:48AM  19        THIS IS SURPRISING TO MR. EISENMAN.  THAT'S NOT WHAT HIS

09:48AM  20   UNDERSTANDING OF THE TECHNOLOGY WAS OR THE WAY THE BLOOD WAS

09:49AM  21   TESTED.

09:49AM  22        SO HE SENDS THAT REPORT TO HOLMES AND BALWANI AND SAID,

09:49AM  23   LOOK AT THIS LINK, THE UBS ANALYST IS MAKING SOME CLAIMS, THE

09:49AM  24   BLOOD IS SENT TO PALO ALTO, THE TESTING IS LESS RELIABLE THAN

09:49AM  25   TRADITIONAL LAB TESTING, TURNAROUND TIMES IS OVER 24 HOURS.

CLOSING ARGUMENT BY MR. SCHENK                                    8935

09:49AM   1        MR. BALWANI RESPONDS, DOESN'T SURPRISE US, SOUNDS LIKE AN

09:49AM   2   UNINFORMED CONSULTANT.

09:49AM   3        AND THEN YOU SEE ON THE LEFT SIDE OF THE SCREEN,

09:49AM   4   MR. BALWANI FORWARDS WHAT HE RESPONDED TO MR. EISENMAN TO

09:49AM   5   MS. HOLMES.

09:49AM   6        BRIAN GROSSMAN WAS THE NEXT WITNESS, AND HE WORKED FOR PFM

09:49AM   7   AND THEY WERE ALSO AN INVESTOR.

09:49AM   8        MR. GROSSMAN TALKED ABOUT WHAT HE LEARNED IN SOME OF THE

09:49AM   9   MEETINGS WHEN PFM WAS MAKING SOME DECISIONS TO INVEST.  AND HE

09:49AM  10   WAS TOLD THAT THEY COULD DO OVER A THOUSAND CPT CODES WITH

09:50AM  11   THEIR TECHNOLOGY.

09:50AM  12        YOU'VE HEARD THAT CPT CODES ARE A BILLING CODE, AND

09:50AM  13   THERE'S BEEN SOME DISCUSSION AFTER THAT ABOUT WHETHER THAT

09:50AM  14   REALLY MEANS A THOUSAND TESTS, OR DO CODES COVER MORE THAN ONE

09:50AM  15   TEST?  SO WOULD ONE TEST APPLY TO MULTIPLE CODES BRING THE

09:50AM  16   NUMBER DOWN?

09:50AM  17        I'LL SHOW YOU A LITTLE BIT LATER AN INSTANCE WHERE IT IS

09:50AM  18   CLEAR THAT A THOUSAND TESTS IS REPRESENTED.

09:50AM  19        BUT FOR NOW, NOTICE WHAT MR. GROSSMAN TALKED ABOUT, AND

09:50AM  20   YOU ACTUALLY ALSO HEARD IT JUST A MOMENT AGO IN THAT RECORDING.

09:50AM  21        MR. GROSSMAN SAYS THAT THERANOS WAITED TO LAUNCH UNTIL

09:50AM  22   THEY COULD HAVE A CERTAIN COVERAGE OF THE TESTING MARKET.  HERE

09:50AM  23   IT'S 100 PERCENT OF WHAT THE BIG PLAYERS COULD DO, SORT OF THE

09:50AM  24   QUEST AND LABCORP OF THE WORLD.

09:50AM  25        THERANOS DIDN'T GO OUT PREMATURELY AND DIDN'T GO OUT WHEN

CLOSING ARGUMENT BY MR. SCHENK                                    8936

09:50AM  1    THEY COULD ONLY DO 12 TESTS, DIDN'T GO OUT WHEN THEY NEEDED TO

09:50AM  2    MODIFY SOME THIRD PARTY DEVICES IN ORDER TO DO TESTING.

09:51AM  3        HIS UNDERSTANDING WAS THERANOS WAITED TO LAUNCH UNTIL THEY

09:51AM  4    HAD A CERTAIN AMOUNT OF COVERAGE, AND YOU HEARD VERY SIMILAR

09:51AM  5    STATEMENTS IN THE RECORDING FROM TOLBERT A MOMENT AGO.

09:51AM  6        THE NEXT WITNESS WAS ERIN TOMPKINS.  MS. TOMPKINS

09:51AM  7    TESTIFIED ABOUT AN HIV TEST THAT SHE RECEIVED.  SHE TOLD YOU

09:51AM  8    THAT SHE TOOK AN HIV 1 PLUS 2 ANTIBODIES TEST AND IT CAME BACK

09:51AM  9    REACTIVE.

09:51AM  10        AND SHE DESCRIBED TO YOU THAT SHE DIDN'T HAVE ANY OTHER

09:51AM  11   SYMPTOMS OF HIV, AND SHE HAD A TEST AFTERWARDS LATER ON THAT

09:51AM  12   SHOWED SHE WAS NEGATIVE FOR HIV, AND THEREFORE, SHE QUESTIONED

09:51AM  13   WHETHER THE RESULT THAT SHE GOT FROM THERANOS WAS ACCURATE.

09:51AM  14        DR. BURNES TESTIFIED NEXT.  DR. BURNES WAS THE TREATING

09:51AM  15   PHYSICIAN FOR DR. ELLSWORTH.  IN THIS CASE HE WAS A PATIENT.

09:51AM  16   MEHRL ELLSWORTH IS ALSO A DOCTOR, AND HIS PHYSICIAN,

09:51AM  17   DR. ELLSWORTH'S PHYSICIAN WAS DR. BURNES.

09:52AM  18        DR. BURNES TOLD YOU ABOUT THE PSA TEST FOR PROSTATE CANCER

09:52AM  19   AND WHAT IT TESTS FOR.

09:52AM  20        AND DR. BURNES DESCRIBED TO YOU -- ACTUALLY WHAT I HAVE

09:52AM  21   HERE IS SOMETHING THAT HE SAID ON CROSS-EXAMINATION, THAT

09:52AM  22   ERRORS IN PSA SCORES IN HIS EXPERIENCE ACTUALLY ARE RARE.

09:52AM  23        ON DIRECT HE TALKED ABOUT WHY THE SCORES THAT HIS PATIENT,

09:52AM  24   DR. ELLSWORTH, RECEIVED, WHY THOSE WERE NOT ACCURATE.  THERE

09:52AM  25   WERE, YOU MAY RECALL -- AND I'LL SHOW YOU IN A MOMENT -- THEY

CLOSING ARGUMENT BY MR. SCHENK                                    8937

09:52AM 1    WERE AROUND 1 OR 2 AND THEN 20, AND THEN AROUND 1 AND 2 AND

09:52AM 2    THEN 20.

09:52AM 3        AND DR. BURNES TOLD YOU, IN MY EXPERIENCE AND KNOWING THIS

09:52AM 4    PATIENT, I DON'T THINK THOSE 20 WERE ACCURATE.

09:52AM 5        BUT HE ALSO WENT A LITTLE FURTHER ON CROSS-EXAMINATION AND

09:52AM 6    HE TOLD YOU INACCURACY IN PSA TESTING IS RARE IN MY EXPERIENCE.

09:52AM 7        DR. ELLSWORTH FOLLOWED, AND HE TALKED ABOUT HIS TESTS.

09:52AM 8    THE FIRST TEST THERE, THE MAY 14TH BLOOD DRAW IS A COUNT IN THE

09:53AM 9    INDICTMENT.  WE'LL GET TO THAT A LITTLE BIT LATER, BUT IT'S

09:53AM 10   ACTUALLY ONE OF THE CHARGES THAT YOU DELIBERATE OVER AND YOU

09:53AM 11   DECIDE ON THE VERDICT FORM, YOU WRITE GUILTY OR NOT GUILTY.

09:53AM 12   AND IT WILL BE NEXT TO -- ON THE VERDICT FORM IT SAYS M.E., IT

09:53AM 13   HAS HIS INITIALS, MEHRL ELLSWORTH, AND IT IS THIS FIRST BLOOD

09:53AM 14   TEST.

09:53AM 15       THE BLOOD DRAW WAS MAY 14TH, AND THE RESULT WAS FAXED BACK

09:53AM 16   TO HIS DOCTOR, DR. BURNES'S OFFICE TWO DAYS LATER ON MAY 16TH.

09:53AM 17       SO THE DATE ON THE TEST IS MAY 16TH, BUT IT'S THIS SCORE

09:53AM 18   OF 26, AND THERE'S AN EMAIL I'LL SHOW YOU WHERE INTERNALLY AT

09:53AM 19   THERANOS THEY'RE SORT OF ANALYZING THIS PROBLEM AND THEY TRACK

09:53AM 20   WHICH DEVICE THE TESTS WERE DONE ON.

09:53AM 21       HE GOT -- DR. ELLSWORTH GOT FOUR PSA TESTS ALL WITHIN

09:53AM 22   ABOUT A MONTH AND A HALF AT THERANOS.  THE FIRST ONE WAS ON AN

09:53AM 23   EDISON, THE SECOND ONE WAS ON A COMMERCIAL, THE THIRD ONE WAS

09:54AM 24   ON EDISON, THE THERANOS DEVICE, AND THE FOURTH ONE WAS ON A

09:54AM 25   COMMERCIAL, AND YOU SEE THAT HERE:  26, 1, 22, 1.

CLOSING ARGUMENT BY MR. SCHENK                                    8938

09:54AM   1          AND THEN FOR GOOD MEASURE A COUPLE YEARS LATER,

09:54AM   2    DR. ELLSWORTH TOLD YOU HE WENT TO LABCORP AND GOT A TEST AND IT

09:54AM   3    STILL WAS STILL 2.

09:54AM   4          THE GOVERNMENT'S FINAL WITNESS WAS ROGER PARLOFF.

09:54AM   5          MR. PARLOFF WAS A REPORTER, IS A REPORTER, AND HE WROTE A

09:54AM   6    STORY FOR "FORTUNE" MAGAZINE IN 2014 ABOUT MS. HOLMES AND

09:54AM   7    THERANOS.

09:54AM   8          AND IN THAT PROCESS, HE SAT DOWN AND INTERVIEWED

09:54AM   9    ELIZABETH HOLMES, AND HE HAD HOURS OF TAPES AND NOTES FROM

09:54AM  10    THOSE INTERVIEWS, AND HE DESCRIBED THAT PROCESS TO YOU, AND IT

09:54AM  11    RESULTED IN THE CREATION OF AN ARTICLE.

09:54AM  12          AND THERE ARE SORT OF TWO ARTICLES THAT PLAY A SIGNIFICANT

09:54AM  13    ROLE, OR PLAY A ROLE IN THIS TRIAL.

09:54AM  14          ONE IS A 2013 "WALL STREET JOURNAL" ARTICLE BY JOE RAGO,

09:55AM  15    R-A-G-O, AND A 2014 "FORTUNE" ARTICLE BY ROGER PARLOFF.

09:55AM  16          AND THE REASON THOSE TWO ARE SIGNIFICANT -- AND YOU HAVE

09:55AM  17    COPIES OF THEM, THEY ARE IN EVIDENCE -- WAS BECAUSE THERANOS,

09:55AM  18    MS. HOLMES TOOK THOSE ARTICLES AND SENT THEM TO INVESTORS.

09:55AM  19          AND PART OF THE SCHEME THE GOVERNMENT ALLEGES OCCURRED

09:55AM  20    HERE WAS MS. HOLMES USED THE MEDIA TO DO SOME OF THE WORK FOR

09:55AM  21    HER.  SHE MADE FALSE STATEMENTS TO THE MEDIA, AND THEN WHEN

09:55AM  22    THOSE FALSE STATEMENTS APPEARED IN ARTICLES, SHE THEN SENT

09:55AM  23    THOSE ARTICLES TO INVESTORS.

09:55AM  24          AND PARLOFF AND RAGO -- THOSE ARE THE AUTHORS OF THOSE TWO

09:55AM  25    ARTICLES -- YOU HEARD SOME RECORDINGS FROM MR. PARLOFF.  ONE OF

CLOSING ARGUMENT BY MR. SCHENK                               8939

09:55AM  1    THE TOPICS THAT WAS DISCUSSED WAS MR. PARLOFF UNDERSTANDS THAT

09:55AM  2    ON OCCASION AN INDIVIDUAL, A PATIENT, GOES TO A WALGREENS AND

09:55AM  3    GETS A VEIN DRAW, AND HE'S ASKING MS. HOLMES, HELP ME

09:56AM  4    UNDERSTAND WHY THAT HAPPENS.

09:56AM  5         AND YOU CAN SORT OF -- YOU CAN HEAR IT.  I'LL PLAY IT FOR

09:56AM  6    YOU.  HE'S A LITTLE CONFUSED AS WHY IT'S FINGERSTICK BLOOD

09:56AM  7    TESTING, AND HELP ME UNDERSTAND THE CIRCUMSTANCES THAT WOULD

09:56AM  8    CAUSE AN INDIVIDUAL TO GO TO A WALGREENS AND GET A VEIN DRAW.

09:56AM  9         (AN AUDIOTAPE WAS PLAYED IN COURT OFF THE RECORD.)

09:57AM 10         MR. SCHENK:  SO IN THAT CLIP, FORGIVE ME, HE'S NOT

09:57AM 11    ASKING ABOUT THE VEIN DRAWS, HE'S ASKING ABOUT SEEING THE

09:57AM 12    DEVICES.

09:57AM 13         AND HE WANTS TO TOUR THE LAB IN ARIZONA, AND MR. PARLOFF

09:57AM 14    IS SORT OF ASKING QUESTIONS ABOUT THAT.  WHAT DOES IT LOOK

09:57AM 15    LIKE?  CAN I COME OUT AND SEE IT?

09:57AM 16         AND MS. HOLMES SAYS, IT'S NOT OPERATIONAL YET, BUT YOU'VE

09:57AM 17    SEEN IT.  REMEMBER WHEN YOU SAW ALL OF OUR DEVICES STACKED UP,

09:57AM 18    WELL, THE LAB LOOKS JUST LIKE THAT, THE LAB IS JUST THAT.

09:57AM 19         YOU KNOW AS JURORS NOW, BECAUSE YOU'VE LISTENED TO THE

09:57AM 20    TRIAL, THAT ISN'T TRUE.  THERANOS ACTUALLY TESTED -- YOU CAN

09:58AM 21    THINK OF IT IN THREE WAYS.  THERANOS TESTED ON EDISON DEVICES,

09:58AM 22    THE BANKS OF DEVICES THAT SHE'S TALKING ABOUT HERE, AND THEN

09:58AM 23    THEY ALSO TESTED BLOOD ON THIRD PARTY DEVICES, AND THOSE THIRD

09:58AM 24    PARTY DEVICES SEPARATE INTO TWO CATEGORIES.  SOMETIMES THEY

09:58AM 25    MODIFIED THEM.  THERANOS CHANGED THEM SO THAT THE DEVICE COULD

CLOSING ARGUMENT BY MR. SCHENK                                    8940

09:58AM   1    ACCEPT A SMALLER AMOUNT OF BLOOD, AND SOMETIMES THERANOS DID

09:58AM   2    NOT MODIFY THE DEVICE.  SO ESSENTIALLY THREE.  THE EDISON,

09:58AM   3    MODIFIED THIRD PARTY, AND UNMODIFIED THIRD PARTY.

09:58AM   4        AND YOU'VE HEARD IN THIS TRIAL WHEN MS. HOLMES WAS

09:58AM   5    TESTIFYING THAT "I DID NOT," MS. HOLMES DID NOT TELL INVESTORS

09:58AM   6    OR WALGREENS OR THIRD PARTIES ABOUT THE USE OF THIRD PARTY

09:58AM   7    DEVICES BECAUSE IT WAS A TRADE SECRET.

09:58AM   8        AND THIS CLIP WITH MR. PARLOFF IS ILLUMINATING ON THAT

09:58AM   9    POINT.

09:58AM  10        ONE, EVEN IF YOU ACCEPT FOR A MOMENT THAT THE USE OF THE

09:58AM  11    THIRD PARTY DEVICES WAS A TRADE SECRET, SHE'S STILL MAKING

09:59AM  12    FALSE STATEMENTS TO MR. PARLOFF.  SHE'S SAYING, HERE'S WHAT THE

09:59AM  13    LAB LOOKS LIKE, IT LOOKS LIKE A BUNCH OF OUR DEVICES.

09:59AM  14        SO I DON'T THINK YOU SHOULD ACCEPT THE FACT THAT TRADE

09:59AM  15    SECRETS GIVE HER PERMISSION TO MADE FALSE STATEMENTS ABOUT IT.

09:59AM  16        BUT IT'S ACTUALLY MORE THAN THAT.  THE USE OF UNMODIFIED

09:59AM  17    THIRD PARTY DEVICES, THE ONE THEY MADE NO CHANGES TO, WAS NOT A

09:59AM  18    TRADE SECRET AT THERANOS.  THAT WAS JUST A SECRET.

09:59AM  19        AT THERANOS THEY JUST DIDN'T TELL PEOPLE THAT THEY WERE

09:59AM  20    USING THIRD PARTY DEVICES TO TEST BLOOD BECAUSE IT WAS

09:59AM  21    INCONSISTENT WITH THE NARRATIVE THAT THEY WERE PITCHING.

09:59AM  22        SO THE TRADE SECRET, I'M GOING TO CALL IT EXCUSE, EVEN IF

09:59AM  23    YOU ACCEPT IT, IS ONLY AN EXCUSE FOR THE MODIFIED THIRD PARTY.

09:59AM  24    IT'S NOT AN EXCUSE FOR THE FALSE STATEMENT TO PARLOFF THAT THEN

09:59AM  25    ENDS UP IN AN ARTICLE, AND IT ISN'T AN EXCUSE FOR WHY THE USE

CLOSING ARGUMENT BY MR. SCHENK                                    8941

09:59AM   1    OF THIRD PARTY DEVICES, THE ONES THAT DON'T GET CHANGED, THE

09:59AM   2    ONES THAT DON'T GET MODIFIED, WHY THAT NEEDS TO BE HIDDEN FROM

09:59AM   3    INVESTORS.

09:59AM   4        I TOLD YOU THAT WE WERE GOING TO TALK ABOUT FOUR TOPICS

10:00AM   5    WITH THE SLIDES.  THE FIRST WAS WITNESSES.

10:00AM   6        THE SECOND TOPIC IS CHARGES IN THIS CASE.

10:00AM   7        MS. HOLMES IS CHARGED WITH COMMITTING TWO CRIMES.  THE

10:00AM   8    FIRST CRIME IS THE CRIME OF CONSPIRACY TO COMMIT WIRE FRAUD.

10:00AM   9        THE SECOND CRIME IS THE CRIME OF WIRE FRAUD.

10:00AM  10        EACH OF THOSE TWO CRIMES IS CHARGED TWO DIFFERENT WAYS.

10:00AM  11    THINK OF IT FROM THE PERSPECTIVE OF THE VICTIMS, INVESTORS AND

10:00AM  12    PATIENTS.  SO THERE'S A CONSPIRACY TO COMMIT WIRE FRAUD FOR

10:00AM  13    INVESTORS, AND THEN THERE'S SUBSTANTIVE WIRE FRAUD COUNTS FOR

10:00AM  14    DEFRAUDING INVESTORS.

10:00AM  15        AND THEN THE SAME REPEATS.  THERE'S A CONSPIRACY TO COMMIT

10:00AM  16    WIRE FRAUD TO DEFRAUD PATIENTS, AND THEN THERE ARE SUBSTANTIVE

10:00AM  17    WIRE FRAUD COUNTS FOR PATIENTS.

10:00AM  18        THE LENGTH OF THE CONSPIRACY PERIOD IS A LITTLE BIT

10:00AM  19    DIFFERENT.  YOU SEE IT HERE FOR THE INVESTORS, IT'S 2010 TO

10:01AM  20    2015.  FOR PATIENTS, IT'S THE WALGREENS PERIOD, IT'S 2013 TO

10:01AM  21    2016.

10:01AM  22        THE SUBSTANTIVE COUNTS OF WIRE FRAUD, FOR INVESTORS THERE

10:01AM  23    ARE SIX OF THEM.  YOU'VE HEARD FROM THE INVESTORS.  WE'VE JUST

10:01AM  24    WENT THROUGH SOME OF THEM AND I'LL SPEND SOME MORE IN TIME IN A

10:01AM  25    MOMENT TALKING ABOUT THEM.

CLOSING ARGUMENT BY MR. SCHENK                                    8942

10:01AM   1        THE PATIENTS, THERE WERE THREE PATIENT COUNTS.

10:01AM   2        NOTICE COUNT NINE IS NOT BEFORE YOU.  WHEN THE JUDGE READS

10:01AM   3   YOU JURY INSTRUCTIONS AND TALKS ABOUT THE COUNTS, THAT COUNT IS

10:01AM   4   NOT BEFORE YOU.  YOU MAY RECALL THAT THE GOVERNMENT DISMISSED

10:01AM   5   THAT COUNT RIGHT AT THE CLOSE OF THE GOVERNMENT'S EVIDENCE.

10:01AM   6        SO THERE ARE THREE PATIENT COUNTS FOR YOU TO DELIBERATE

10:01AM   7   ON.  YOU WON'T SEE A COUNT NINE ON YOUR VERDICT FORM.

10:01AM   8        THE FIRST TWO PATIENT COUNTS INVOLVE SPECIFIC PATIENTS,

10:01AM   9   TOMPKINS AND ELLSWORTH.

10:01AM  10        THE FINAL COUNT IN THE INDICTMENT, THE FINAL PATIENT

10:01AM  11   COUNT, COUNT TWELVE, INVOLVES THAT TRANSFER, THE WIRE TRANSFER

10:01AM  12   TO PURCHASE ADS IN THE ARIZONA MARKET, THE MEDIA BUY.

10:02AM  13        EACH OF THE COUNTS, EACH CRIME, HAS ELEMENTS, THINGS THAT

10:02AM  14   THE GOVERNMENT MUST PROVE.

10:02AM  15        AFTER I FINISH CLOSING, THE DEFENSE HAS AN OPPORTUNITY TO

10:02AM  16   GIVE A CLOSING, THE GOVERNMENT CAN THEN GIVE A REBUTTAL, AND

10:02AM  17   THEN THE JUDGE READS YOU JURY INSTRUCTIONS, GUIDELINES OR

10:02AM  18   GUIDANCE FOR YOUR DELIBERATION.

10:02AM  19        AND IN THOSE, YOU ARE READ THE LAW ON THE CRIME OF

10:02AM  20   CONSPIRACY, SECTION 1349, THE CRIME OF WIRE FRAUD, SECTION

10:02AM  21   1343.

10:02AM  22        AND CRIMES HAVE ELEMENTS.  THE GOVERNMENT HAS TO PROVE

10:02AM  23   EACH ELEMENT BEYOND A REASONABLE DOUBT IN ORDER FOR YOU TO

10:02AM  24   CONVICT FOR THAT COUNT.

10:02AM  25        AND THE ELEMENTS THE JUDGE IS GOING TO READ TO YOU.  WHAT

CLOSING ARGUMENT BY MR. SCHENK                                    8943

10:02AM   1    THE JUDGE SAYS CONTROLS.

10:02AM   2         HERE ARE TWO ELEMENTS OF CONSPIRACY THAT I THINK THE JUDGE

10:02AM   3    IS GOING TO READ TO YOU:  THAT THERE WAS AN AGREEMENT BETWEEN

10:02AM   4    TWO OR MORE PERSONS TO COMMIT WIRE FRAUD; AND THAT MS. HOLMES

10:02AM   5    BECAME A MEMBER OF THE CONSPIRACY KNOWING OF AT LEAST ONE OF

10:02AM   6    ITS OBJECTS AND INTENDING TO HELP ACCOMPLISH IT.

10:03AM   7         IN ORDER TO BREAK THOSE DOWN, THE AGREEMENT FIRST SHOULD

10:03AM   8    BE DEFINED.  WHAT IS THE AGREEMENT BETWEEN HOLMES AND BALWANI?

10:03AM   9         WELL, FOR THE INVESTOR SIDE, IT'S TO GET MONEY FROM

10:03AM  10    INVESTORS THROUGH FRAUD, THROUGH FRAUD STATEMENTS.  THEY EACH

10:03AM  11    HAVE A DIFFERENT ROLE IN THE CONSPIRACY.

10:03AM  12         MS. HOLMES'S ROLE IS TO RECRUIT INVESTORS BY MAKING FALSE

10:03AM  13    STATEMENTS, AND I'VE LISTED JUST A COUPLE.  WE'LL GO THROUGH

10:03AM  14    MORE OF THEM LATER.  BUT THE FALSE STATEMENTS FALL INTO

10:03AM  15    DIFFERENT CATEGORIES, AND THOSE FALSE STATEMENTS YOU WILL SEE

10:03AM  16    ARE REPEATED IN THE SUBSTANTIVE WIRE FRAUD COUNTS.

10:03AM  17         WHEN SHE MAKES FALSE STATEMENTS TO SOMEONE LIKE EISENMAN

10:03AM  18    OR MOSLEY, IT'S THE SAME KIND OF FALSE STATEMENT THAT ARE PART

10:03AM  19    OF THE CONSPIRACY, AND THOSE FALSE STATEMENTS ARE ABOUT THINGS

10:03AM  20    LIKE THE CAPABILITY OF THE TECHNOLOGY, THE FINANCIAL HEALTH OF

10:03AM  21    THE COMPANY, THE RELATIONSHIP WITH WALGREENS, DOD WORK.  IT'S

10:03AM  22    THE TOPICS THAT WE HAVE ALREADY BEEN DISCUSSING THIS MORNING.

10:03AM  23         MR. BALWANI ALSO HAD A ROLE IN THIS CONSPIRACY, THE

10:04AM  24    INVESTOR CONSPIRACY.

10:04AM  25         MR. BALWANI RAN THE LAB.  YOU HEARD THAT REFERRED TO AS

CLOSING ARGUMENT BY MR. SCHENK                                    8944

10:04AM   1    SORT OF RUNNING OPERATIONS AT THE LAB.  THAT WAS USEFUL.

10:04AM   2        WHEN THERANOS HAD A LAB AND THEN PITCHED INVESTORS, IT WAS

10:04AM   3    USEFUL TO HAVE THAT LAB OPERATING, TO BE RUNNING, BECAUSE

10:04AM   4    INVESTORS WOULD VIEW IT AS A SORT OF PROOF OF CONCEPT, AS SORT

10:04AM   5    OF A VALUABLE THING THAT THERANOS HAD TO MAKE THE INVESTMENT

10:04AM   6    MORE ATTRACTIVE.

10:04AM   7        HE ALSO -- MR. BALWANI ALSO RECRUITED INVESTORS.

10:04AM   8        ALAN EISENMAN TOLD YOU THAT HE HAD CONVERSATIONS WITH

10:04AM   9    MR. BALWANI.

10:04AM  10        BRIAN GROSSMAN TOLD YOU THAT HE HAD CONVERSATIONS WITH

10:04AM  11    MR. BALWANI.

10:04AM  12        SO THE LINES, THE DIVISION WASN'T A CLEAR LINE BETWEEN

10:04AM  13    HOLMES AND BALWANI IN THE CONSPIRACY.  THEY EACH DID EACH

10:04AM  14    OTHER'S JOB AT TIMES, BUT MR. BALWANI RAN THE LAB AND

10:04AM  15    MS. HOLMES RECRUITED INVESTORS, THOUGH AGAIN, AS I SAID,

10:04AM  16    MR. BALWANI ALSO RECRUITED INVESTORS.

10:04AM  17        IN PARTICULAR WHEN MR. BALWANI WAS COMMUNICATING WITH

10:05AM  18    INVESTORS, IT WAS OFTEN ABOUT THE TOPIC OF FINANCES.

10:05AM  19    MR. BALWANI HANDLED THE FINANCES, I THINK IS A FAIR WORD, MORE

10:05AM  20    THAN MS. HOLMES AT THERANOS.

10:05AM  21        ONE OF THE INSTANCES WHEN YOU'VE SEEN THIS SORT OF IN ITS

10:05AM  22    MOST STARK FORM IS IN SOME PROJECTIONS THAT WERE GIVEN TO

10:05AM  23    LISA PETERSON WITH RDV AND MOSLEY, AND THOSE PROJECTIONS SHOWED

10:05AM  24    THAT IN 2014 -- AND THIS DOCUMENT WAS COMMUNICATED IN OCTOBER

10:05AM  25    OF 2014 -- THERANOS'S REVENUE WOULD BE ABOUT $140 MILLION.

CLOSING ARGUMENT BY MR. SCHENK                          8945

10:05AM   1        AND IN 2015, THERANOS'S REVENUE WOULD BE ABOUT A BILLION

10:05AM   2   DOLLARS, $990 MILLION.

10:05AM   3        AND YOU'VE HEARD WITNESSES LIKE MR. MOSLEY TALK ABOUT --

10:05AM   4   AND PETERSON AS WELL -- WHEN YOU RECEIVED THIS DOCUMENT IN

10:05AM   5   OCTOBER OF 2014, YOU THINK TEN MONTHS OF THE YEAR ARE DONE,

10:05AM   6   THAT NUMBER IS PROBABLY PRETTY GOOD, PRETTY ACCURATE.

10:06AM   7        2015, I THINK MOSLEY SAID, CUT THEM SOME SLACK.  YOU MIGHT

10:06AM   8   GET THAT NUMBER WRONG.  IN 2014, YOU MIGHT NOT BE ABLE TO

10:06AM   9   ACCURATELY PREDICT YOUR REVENUE IN 2015.  THERE'S A BALLPARK,

10:06AM  10   AND IT SHOULD BE SOMEWHERE IN THAT BALLPARK.

10:06AM  11        BUT I THINK MR. MOSLEY COMMUNICATED TO YOU THAT HE WASN'T

10:06AM  12   EXPECTING THEM TO HIT THE 2015 NUMBER RIGHT ON THE NOSE.  HE

10:06AM  13   THOUGHT THAT ONE MIGHT BE OFF.  YOU'VE HEARD NOW IT WAS OFF BY

10:06AM  14   ABOUT A BILLION DOLLARS.

10:06AM  15        BUT IN 2014, THE NUMBER IN MOSLEY AND PETERSON'S MIND

10:06AM  16   SHOULD HAVE BEEN CLOSER, AND IT WAS BASED ON A NUMBER OF

10:06AM  17   WALGREENS STORES, ANTICIPATED NUMBER OF WALGREENS STORES.

10:06AM  18        SO IT'S THINGS LIKE THAT WHERE MR. BALWANI IS PLAYING AN

10:06AM  19   ACTIVE ROLE IN THE CONSPIRACY.

10:06AM  20        WE'RE GOING TO SPEND A LITTLE BIT OF TIME TALKING ABOUT

10:06AM  21   INSTANCES WHERE MS. HOLMES EXERCISED CONTROL AT THERANOS.  THIS

10:06AM  22   IS GOING TO BE USEFUL TO US BECAUSE IT'S A CONCEPT THAT WILL

10:07AM  23   PLAY OUT IN ALL OF THE COUNTS.

10:07AM  24        THERE WEREN'T EVENTS OCCURRING THAT SHE WASN'T AWARE OF,

10:07AM  25   THAT SHE WASN'T INTERESTED IN, THAT OCCURRED WITHOUT HER

CLOSING ARGUMENT BY MR. SCHENK                                    8946

10:07AM   1    DECISIONS OR INVOLVEMENT, AND BECAUSE OF THAT, IT SHOWS THAT

10:07AM   2    SHE HAD KNOWLEDGE THAT CERTAIN STATEMENTS THAT WERE

10:07AM   3    COMMUNICATED WERE FALSE, AND THAT THEY WERE COMMUNICATED WITH

10:07AM   4    THE INTENT THAT THEIR PURPOSE BE TO DEFRAUD.

10:07AM   5         THE FIRST AREA IS PUBLIC RELATIONS AND LEGAL.

10:07AM   6         IN THIS TEXT MESSAGE, MR. BALWANI IS TELLING MS. HOLMES

10:07AM   7    THAT HE DOES NOT LIKE, HE DISLIKES THE DIRECTION THAT SHE'S

10:07AM   8    TAKEN WITH ALL OF THIS PR AND LEGAL WORK AND A LOT OF OTHER

10:07AM   9    THINGS.  SHE HAS CONTROL IN THOSE AREAS.

10:07AM  10         IN BUSINESS DEVELOPMENT, STEVE BURD TOLD YOU, THE CEO AT

10:07AM  11    SAFEWAY -- REMEMBER HE WAS SAYING SOME COMPLIMENTARY THINGS

10:07AM  12    ABOUT MS. HOLMES, HOW SHE OWNED A ROOM, HOW SHE PRESENTED TO

10:07AM  13    HIS BOARD, HOW THOUGHTFUL AND ARTICULATE AND CLEAR SHE WAS IN

10:07AM  14    HER DESCRIPTIONS, AND HOW SHE ALSO PLAYED SIMILAR ROLES WITH

10:08AM  15    DOD AND WALGREENS AND SHE WAS INVOLVED WITH BUSINESS

10:08AM  16    DEVELOPMENT.

10:08AM  17         IT WAS NOT THAT SHE WAS PUTTING THE 4 SERIES TOGETHER AT

10:08AM  18    HER DESK AND SOMEONE WAS OUT THERE PITCHING THE BUSINESS.  SHE

10:08AM  19    WAS INVOLVED IN THAT.  SHE WAS RESPONSIBLE.  SHE KNOWS HOW

10:08AM  20    THOSE RELATIONSHIPS ARE GOING AND WHAT REPRESENTATIONS ARE

10:08AM  21    BEING MADE.

10:08AM  22         IN PRESENTATIONS TO INVESTORS, MR. GROSSMAN TOLD YOU THAT

10:08AM  23    MS. HOLMES DID MOST OF THE TALKING IN THIS PARTICULAR MEETING,

10:08AM  24    DECEMBER OF 2013.

10:08AM  25         IN THE CLIA LAB -- YOU'VE HEARD THE CLINICAL LAB WHERE

CLOSING ARGUMENT BY MR. SCHENK                                    8947

10:08AM  1    PATIENT TESTING OCCURRED, THERE WERE TWO LABS AT THERANOS, THE

10:08AM  2    R&D LAB, AND SOMETIMES IT'S BEEN CALLED THE CLIA LAB, SOMETIMES

10:08AM  3    THE CLINICAL LAB, THAT'S WHERE THE PATIENT TESTING WAS DONE.

10:08AM  4        IN THE CLIA LAB, MS. HOLMES ON THE STAND DESCRIBED TO YOU

10:08AM  5    SORT OF A HANDS OFF APPROACH.  SHE WASN'T QUALIFIED BECAUSE SHE

10:08AM  6    WASN'T THE LAB DIRECTOR.

10:08AM  7        BUT THE EMAILS ACTUALLY SUGGEST SOMETHING DIFFERENT, AND

10:08AM  8    THIS EXHIBIT 4189 TALKS ABOUT ELIZABETH DECIDING WHETHER TO PUT

10:09AM  9    COMMENTS WHEN CERTAIN REPORTS OR RESULTS ARE WITHHELD.

10:09AM 10        SO "PER ELIZABETH'S REQUEST, IN THE SHORT TERM, PLEASE DO

10:09AM 11    NOT PUT ANY COMMENT OR NOTE ON THE RESULT REPORT IF CO2 VALUES

10:09AM 12    ARE VOIDED.  IF DOCTORS CALL TO INQUIRE, WE HAVE PROVIDED THE

10:09AM 13    FOLLOWING MESSAGING TO CUSTOMER SERVICE TEAM:"

10:09AM 14        AND THEN THERE'S A MESSAGING BELOW.

10:09AM 15        SO MS. HOLMES KNOWS THAT CERTAIN TESTS, LIKE IN THIS

10:09AM 16    INSTANCE, CO2, MAY NOT GET REPORTED, AND SHE'S MAKING THE

10:09AM 17    DECISION ABOUT WHETHER THE LAB REPORT, THE RESULT SHOULD SAY

10:09AM 18    SOMETHING ABOUT THAT, AND THEN WHAT TO DO IF THERE'S A

10:09AM 19    PHYSICIAN WHO ORDERS A CO2 TEST FOR A PATIENT GETS THE RECORD

10:09AM 20    BACK AND SEES THAT IT'S MISSING AND THEN CALLS, WHAT IS THAT

10:09AM 21    PHYSICIAN GOING TO BE TOLD?  SHE'S INVOLVED IN THAT, TOO.

10:09AM 22        THE SCRIPTING TO DOCTORS.

10:09AM 23        I SHOWED YOU AN INSTANCE WHERE SHE'S DECIDING WHAT TO PUT

10:10AM 24    ON THE REPORT.  SHE'S ALSO INVOLVED IN WHAT TO SAY TO DOCTORS.

10:10AM 25        THIS IS AN EMAIL ABOUT A DISCREPANCY OF AN INR TEST AT

CLOSING ARGUMENT BY MR. SCHENK                                    8948

10:10AM   1    THERANOS.  AND YOU SEE THE EMAIL AT THE TOP FROM

10:10AM   2    CHRISTIAN HOLMES, MS. HOLMES'S BROTHER WHO WORKED AT THERANOS.

10:10AM   3    HE SAID HE'S GOING TO WORK WITH ELIZABETH ON SCRIPTING WHILE

10:10AM   4    SUNNY ADDRESSES ROOT CAUSE.

10:10AM   5        SO IT'S NOT JUST WHAT APPEARS ON THE REPORT.  IT'S ALSO

10:10AM   6    WHAT DOCTORS ARE GOING TO CALL WHEN THERE'S A DISCREPANCY, WHEN

10:10AM   7    THERE ARE QUESTIONS ABOUT THE REPORT.  SHE'S INVOLVED IN THAT,

10:10AM   8    TOO.

10:10AM   9        INVESTOR BINDERS.

10:10AM  10        YOU'VE HEARD SEVERAL INVESTORS MADE THEIR DECISION TO

10:10AM  11    INVEST AFTER RECEIVING A BINDER OF DOCUMENTS FROM THERANOS.

10:10AM  12        MS. HOLMES WAS INVOLVED IN REVIEWING AND DETERMINING THE

10:10AM  13    CONTENT OF THOSE BINDERS.

10:10AM  14        DAN EDLIN TOLD YOU THAT SHE APPROVED MATERIALS, AND HERE'S

10:10AM  15    AN EMAIL WHERE SHE'S ASKING ABOUT THE CONTENTS OF TWO BINDERS.

10:10AM  16        THE DOD.

10:11AM  17        DAN EDLIN TOLD YOU THAT MS. HOLMES WAS VERY INVOLVED IN

10:11AM  18    THE INTERACTIONS WITH THE DOD.  IF HE WAS GOING TO SEND AN

10:11AM  19    EMAIL TO SOMEONE AT DOD, HE REVIEWED THAT DRAFT EMAIL WITH HER.

10:11AM  20    IF AN EMAIL CAME IN FROM DOD, SHE WOULD REVIEW IT WITH

10:11AM  21    DAN EDLIN, BUT SHE WAS VERY INVOLVED IN THE DOD RELATIONSHIP.

10:11AM  22        THERANOS HAD A WEBSITE.  YOU MAY RECALL AROUND THE TIME OF

10:11AM  23    THE WALGREENS LAUNCH IN SEPTEMBER OF 2013, WHEN THAT WEBSITE

10:11AM  24    WENT LIVE, THERE WAS EMAIL TRAFFIC WITH A LAWYER DISCOURAGING

10:11AM  25    CERTAIN WORDS, THE USE OF CERTAIN WORDS TO MS. HOLMES.

CLOSING ARGUMENT BY MR. SCHENK                                    8949

10:11AM   1        AND DAN EDLIN TOLD YOU THAT THE CONTENT OF THE WEBSITE WAS

10:11AM   2    SOMETHING THAT MS. HOLMES WAS VERY INVOLVED IN AND WAS, HIS

10:11AM   3    WORD, DETAILED ORIENTED.

10:11AM   4        FINANCIALS.

10:11AM   5        MS. YAM TOLD YOU THAT SHE REVIEWED FINANCIALS WITH

10:11AM   6    MS. HOLMES, THINGS LIKE THE CASH POSITION.

10:12AM   7        YOU HAVE HEARD TESTIMONY THAT MR. BALWANI WAS MORE

10:12AM   8    INVOLVED IN THAT AREA, BUT ELIZABETH HOLMES WASN'T IGNORANT OF

10:12AM   9    THE FINANCIAL STATE OF THE COMPANY AT THERANOS.

10:12AM  10        DANISE YAM SAID, I REPORTED TO ELIZABETH HOLMES AND I

10:12AM  11    SHARED THE INFORMATION ABOUT THE FINANCIAL HEALTH OF THE

10:12AM  12    COMPANY.

10:12AM  13        THE PHARMACEUTICAL RELATIONSHIP.

10:12AM  14        DR. CULLEN FROM SCHERING-PLOUGH DESCRIBED THAT OCCASION

10:12AM  15    WHEN SHE FLEW OUT TO PALO ALTO AND MET WITH MS. HOLMES AND

10:12AM  16    OTHERS FROM THERANOS TO DISCUSS THE WORK THAT THE TWO HAD DONE,

10:12AM  17    THE THERANOS AND SCHERING-PLOUGH RELATIONSHIP, AND DR. CULLEN

10:12AM  18    DESCRIBED TO YOU ASKING QUESTIONS OF THE THERANOS FOLKS ABOUT

10:12AM  19    THE WORK THAT WAS DONE, AND MS. HOLMES WAS ANSWERING ALL OF THE

10:12AM  20    QUESTIONS.

10:12AM  21        AND DR. CULLEN MADE AN EFFORT TO DIRECT QUESTIONS TO OTHER

10:12AM  22    THERANOS EMPLOYEES DURING THE MEETING, AND DR. CULLEN SAID

10:12AM  23    MS. HOLMES WOULD INTERRUPT OR ANSWER THOSE QUESTIONS, TOO.

10:12AM  24    ELIZABETH HOLMES WAS INVOLVED IN THE RELATIONSHIP BETWEEN

10:13AM  25    THERANOS AND PHARMACEUTICAL COMPANIES.

CLOSING ARGUMENT BY MR. SCHENK                                    8950

10:13AM   1        SO THE SECOND ELEMENT IS MEMBERSHIP -- THIS IS THE

10:13AM   2    CONSPIRACY COUNT FOR INVESTORS.  THE SECOND ELEMENT IS

10:13AM   3    MEMBERSHIP IN THE CONSPIRACY, KNOWLEDGE OF ITS OBJECTIVE AND

10:13AM   4    INTENT.

10:13AM   5        SO THE OBJECTIVE OF THE CONSPIRACY TO DEFRAUD INVESTORS IS

10:13AM   6    TO GET MONEY FROM INVESTORS THROUGH FRAUD.

10:13AM   7        KNOWLEDGE OF THE OBJECTIVE.

10:13AM   8        HOW DO WE KNOW THAT MS. HOLMES KNEW THAT WAS THE

10:13AM   9    OBJECTIVE?  THROUGH TEXT MESSAGES, EMAILS, AND FROM DANISE YAM

10:13AM   10   SHARING FINANCIALS WITH ELIZABETH HOLMES THAT CREATE THE NEED

10:13AM   11   TO GET THE MONEY.

10:13AM   12       INTENT TO ACCOMPLISH.

10:13AM   13       THERE ARE EMAILS THAT WE WILL TALK ABOUT THAT THE

10:13AM   14   GOVERNMENT WILL SUBMIT TO YOU SHOW INTENT, BUT THERE IS ALSO A

10:13AM   15   MORE BROAD OR OVERARCHING INTENT POINT HERE.

10:13AM   16       MS. HOLMES COMMUNICATED FALSE STATEMENTS TO INVESTORS, WE

10:13AM   17   CAN RUN ALL OF THE TESTS, WE HAVE A HEALTHY RELATIONSHIP WITH

10:13AM   18   WALGREENS, DOD WORK.  THERE ARE A LOT OF THINGS THAT SHE SAID

10:14AM   19   TO INVESTORS THAT WERE FALSE.

10:14AM   20       THERE ARE SUGGESTIONS THAT SHE KNEW THOSE STATEMENTS WERE

10:14AM   21   FALSE.  SO SHE'S COMMUNICATING KNOWINGLY FALSE STATEMENTS TO

10:14AM   22   INVESTORS.

10:14AM   23       IMAGINE FOR A MOMENT, THOUGH, SHE'S COMMUNICATING A

10:14AM   24   DIFFERENT KIND OF KNOWINGLY FALSE STATEMENT TO AN INVESTOR.

10:14AM   25       IF SHE TELLS AN INVESTOR, THERANOS ISN'T A REAL COMPANY,

CLOSING ARGUMENT BY MR. SCHENK                                    8951

10:14AM   1    IT'S A P.O. BOX, WE DON'T HAVE REAL EMPLOYEES, WE DON'T DO ANY

10:14AM   2    REAL WORK, IF SHE HAD SAID THAT TO INVESTORS, THAT, TOO, WOULD

10:14AM   3    HAVE BEEN A KNOWINGLY FALSE STATEMENT ABOUT THERANOS.  IT WAS A

10:14AM   4    COMPANY WITH EMPLOYEES.  IT WASN'T JUST A P.O. BOX.

10:14AM   5        BUT IT'S SORT OF HARD TO THINK THAT THAT WOULD BE

10:14AM   6    COMMUNICATED WITH THE INTENT TO DEFRAUD.  THAT WOULD DISCOURAGE

10:14AM   7    AN INVESTOR FROM INVESTING.

10:14AM   8        WHEN ELIZABETH HOLMES COMMUNICATES KNOWINGLY FALSE

10:14AM   9    STATEMENTS TO INVESTORS, THEY'RE THE FAVORABLE KIND.  THEY'RE

10:14AM  10    THE KIND THAT CAUSE AN INVESTOR TO WANT TO INVEST IN THERANOS,

10:14AM  11    AND THAT IS USEFUL INTENT EVIDENCE.  THE KIND OF INFORMATION

10:14AM  12    THAT SHE COMMUNICATES THAT IS KNOWINGLY FALSE IS KNOWINGLY AND

10:15AM  13    FAVORABLE INFORMATION.

10:15AM  14        KNOWLEDGE OF THE OBJECTIVE.

10:15AM  15        THERE ARE TEXT MESSAGES WHERE MS. HOLMES AND MR. BALWANI

10:15AM  16    ARE TALKING ABOUT INVESTOR MONEY COMING IN.

10:15AM  17        THIS ONE IS TALKING ABOUT ALICE WALTON INVESTING 50

10:15AM  18    MILLION; GREG PENNER INVESTING 100 MILLION; RUPERT MURDOCH IN

10:15AM  19    FOR OVER 100.

10:15AM  20        THEY'RE PAYING ATTENTION TO THAT MONEY COMING IN.

10:15AM  21        INTENT TO ACCOMPLISH.

10:15AM  22        MR. EISENMAN TOLD YOU THAT HE INVESTED ON DIFFERENT

10:15AM  23    OCCASIONS, AND BEFORE HIS INVESTMENT IN 2013, HE THOUGHT

10:15AM  24    THERANOS WAS RUDE -- I'M NOT SURE HE WOULD ADOPT THAT WORD --

10:15AM  25    BUT HE WAS UNSATISFIED WITH THE RELATIONSHIP, WITH THE

UNITED STATES COURT REPORTERS

**ER-12528**

CLOSING ARGUMENT BY MR. SCHENK                                    8952

10:15AM   1    DISCUSSIONS.

10:15AM   2         AND AFTER HIS INVESTMENT, HE WAS SIMILARLY DISSATISFIED.

10:15AM   3    I THINK PROBABLY BOTH SIDES WERE UNHAPPY WITH THOSE

10:15AM   4    INTERACTIONS.

10:15AM   5         BUT ALAN EISENMAN DESCRIBED TO YOU SORT OF THAT STRANGE

10:15AM   6    PERIOD OF TIME WHERE THEY WERE SURPRISINGLY NICE TO HIM RIGHT

10:15AM   7    BEFORE HE MADE THE DECISION TO INVEST IN 2013.  THIS IS SORT OF

10:16AM   8    LIKE A CATCH FLIES WITH HONEY IDEA.

10:16AM   9         THEY KNEW WHAT TO SAY TO INVESTORS, HOW TO TREAT INVESTORS

10:16AM  10    AT A TIME WHEN THEY WERE INTERESTED IN INVESTING.  THAT IS ALSO

10:16AM  11    INTENT EVIDENCE.

10:16AM  12         SO WE TALKED ABOUT THE CONSPIRACY TO DEFRAUD INVESTORS.

10:16AM  13         WE'RE NOW GOING TO MOVE TO THE CONSPIRACY TO DEFRAUD

10:16AM  14    PATIENTS.

10:16AM  15         THERE IS MORE INTENT EVIDENCE, MORE KNOWLEDGE EVIDENCE

10:16AM  16    THAT WE'LL GO THROUGH WHEN WE GET TO THE SUBSTANTIVE WIRE FRAUD

10:16AM  17    INVESTOR COUNTS, AND I'M GOING TO ASK YOU TO CONSIDER THAT

10:16AM  18    EVIDENCE FOR THE CONSPIRACY COUNT ALSO.  I DON'T JUST WANT TO

10:16AM  19    REPEAT THE EVIDENCE OVER AND OVER.

10:16AM  20         SO SOME OF IT I'M GOING TO SAVE FOR THE SUBSTANTIVE WIRE

10:16AM  21    FRAUD COUNTS BECAUSE THEY HAVE, AS AN ELEMENT, INTENT AND

10:16AM  22    KNOWLEDGE AND SOME OF THE THINGS THAT WE'VE TALKED ABOUT.

10:16AM  23         THE PATIENT SIDE.

10:16AM  24         IT'S THE SAME TWO ELEMENTS, CONSPIRACY UNDER 1349 TO

10:16AM  25    DEFRAUD INVESTORS, AND IT HAS THE SAME ELEMENTS THAT CONSPIRACY

CLOSING ARGUMENT BY MR. SCHENK                                  8953

```
10:16AM   1     UNDER 1349 TO DEFRAUD PATIENTS HAS.

10:16AM   2          AGAIN, THE ROLES.

10:17AM   3          ON THE PATIENT SIDE, ELIZABETH HOLMES -- I'M SORRY.

10:17AM   4          THE AGREEMENT WAS TO GET MONEY FROM PATIENTS.

10:17AM   5          NOW, OF COURSE, THE AMOUNT OF MONEY IS MUCH, MUCH SMALLER,

10:17AM   6     THE $5, $10 BLOOD TESTING.

10:17AM   7          BUT IT'S A VOLUME BUSINESS.  THE IDEA IS TO SET UP THE LAB

10:17AM   8     AND GET THE PATIENTS TO BEGIN BUYING BLOOD TESTS, BECAUSE IT IS

10:17AM   9     STILL REVENUE, TOO.  AND YOU'VE SEEN EXCEL SPREADSHEETS WHEN

10:17AM  10     THERANOS WAS DOWN TO ABOUT $7 MILLION.  THEY STILL NEEDED

10:17AM  11     REVENUE.  IT'S A MUCH SMALLER AMOUNT, OF COURSE, FROM

10:17AM  12     INDIVIDUAL BLOOD TESTS.  IT'S A VOLUME BUSINESS.

10:17AM  13          MS. HOLMES'S ROLE IN THE PATIENT FRAUD IS TO RECRUIT

10:17AM  14     INVESTORS THROUGH FALSE STATEMENTS, FALSE STATEMENTS THAT WERE

10:17AM  15     MADE IN THE PRESS, FALSE STATEMENTS THAT WERE MADE ON THE

10:17AM  16     WEBSITE, ABOUT THINGS LIKE THE ACCURACY, THE RELIABILITY OF THE

10:17AM  17     BLOOD TESTING.

10:17AM  18          MR. BALWANI ALSO PLAYED A ROLE IN THE CONSPIRACY TO

10:17AM  19     DEFRAUD PATIENTS.  YOU'VE HEARD THAT HE RAN OPERATIONS IN THE

10:17AM  20     LAB.

10:17AM  21          AND YOU CAN ALSO TELL A LOT ABOUT WHAT THEY VALUE BY THE

10:18AM  22     DECISION, THERE'S AN EMAIL WHERE THEY SUGGEST CUTTING OR FIRING

10:18AM  23     DR. ROSENDORFF.  HE ENDS UP RESIGNING.

10:18AM  24          BUT WHO DO THEY REPLACE DR. ROSENDORFF WITH?

10:18AM  25          DR. ROSENDORFF IS COMPLAINING ABOUT ACCURACY, ASKING THEM
```

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 17, 2023.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

April 17, 2023