<u>**REDACTED**</u>

**No. 22-10312**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ELIZABETH A. HOLMES

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-258
Hon. Edward J. Davila

---

**APPELLANT ELIZABETH A. HOLMES' OPPOSED MOTION FOR
RELEASE PENDING APPEAL**

---

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA 98101
  (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
  Counsel of Record
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Avenue SW
  Washington, DC 20024
  (202) 434-5000
  asaharia@wc.com

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................1

PROCEEDINGS BELOW ..................................................................................2

STANDARD OF REVIEW .................................................................................5

ARGUMENT ......................................................................................................5

I.     The Court's Admission of Das' Expert Opinions, the CMS Report, and the Voiding Evidence Presents Substantial Questions Likely to Result in a New Trial on All Counts. .........................................................................5

     A.     The Erroneous Admission of the 2016 Evidence Presents Substantial Questions. ..................................................................6

     B.     Admission of the 2016 Evidence Is Likely to Result in a New Trial on All Counts.................................................................9

II.     The Court's Restriction of Holmes' Cross-Examination of Rosendorff Is a Substantial Question Likely to Require a New Trial on All Counts.............11

     A.     There Is a Substantial Question Whether the Court Violated Holmes' Confrontation Right...........................................................11

     B.     The Restriction of Holmes' Confrontation Right Is Likely to Result in a New Trial on All Counts. ................................................14

III.     The District Court's Exclusion of Critical Testimony from Balwani Presents a Substantial Question Likely to Lead to a New Trial on All Counts...........15

     A.     The Court's Exclusion of Balwani's Statements Under Rule 804(b)(3) Presents a Substantial Question...........................................16

     B.     The Court's Exclusion of Balwani's Prior Testimony Is Likely to Result in a New Trial on All Counts.................................................19

IV.     The Court Correctly Found that Holmes Satisfies the Remaining Requirements for Release Pending Appeal. .................................................20

i

CONCLUSION ...................................................................................................20

LIST OF EXHIBITS...........................................................................................22

CERTIFICATE OF SERVICE ...........................................................................26

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aircrash in Bali*, 871 F.2d 812 (9th Cir. 1989)...............................................8

*Rodriguez v. Gen. Dynamics Armament & Tech. Prods.*, 510 F. App'x 675
    (9th Cir. 2013)..............................................................................................7

*United States v. Adamson*, 291 F.3d 606 (9th Cir. 2002) ......................................12

*United States v. Alexius*, 76 F.3d 642 (5th Cir. 1996) ...........................................10

*United States v. Benveniste*, 564 F.2d 335 (9th Cir. 1977)....................................20

*United States v. Bruce*, 394 F.3d 1215 (9th Cir. 2005) .........................................10

*United States v. Figueroa-Lopez*, 125 F.3d 1241 (9th Cir. 1997) .........................7

*United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003)..........................................5

*United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985) .......................................5, 6

*United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007)..................................12, 14

*United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008).....................................10

*United States v. Schoneberg*, 396 F.3d 1036 (9th Cir. 2005) ................................14

*United States v. Sheppard*, 2021 WL 1700356 (W.D. Ky. Apr. 29, 2021)..............7

*United States v. Wells*, 879 F.3d 900 (9th Cir. 2018) ..............................................9

*United States v. Wolf*, 820 F.2d 1499 (9th Cir. 1987) .............................................8

**Statutes**

18 U.S.C. § 3143 ......................................................................................................4

18 U.S.C. § 3145 ......................................................................................................4

**Rules and Regulations**

42 C.F.R. § 493.1812 ...............................................................................................8

42 C.F.R. § 493.1291 ..................................................................................8

Fed. R. App. P. 9 .......................................................................................6

Fed. R. Crim. P. 16...................................................................................6

Fed. R. Evid. 401 .......................................................................................7

Fed. R. Evid. 403 ..............................................................................7, 8, 9

Fed. R. Evid. 407 .......................................................................................8

Fed. R. Evid. 701 ...................................................................................6, 7

Fed. R. Evid. 702 ...................................................................................6, 7

Fed. R. Evid. 804 .............................................................................16, 17

# INTRODUCTION

Defendant Elizabeth Holmes' conviction on four counts of a twelve-count indictment resulted from prejudicial errors that warrant reversal and a new trial. This appeal presents substantial issues, including: (1) Whether the court abused its discretion in permitting the government to prove its core allegation—that Holmes knowingly misrepresented the capabilities of Theranos' technology—with (A) undisclosed and untested expert analysis based on lost data, (B) regulatory findings, and (C) evidence that Theranos voided test results, all of which occurred after the at-issue representations; (2) whether the court violated Holmes' confrontation right by precluding cross-examination on a key witness' credibility, competence, and bias; and (3) whether the court abused its discretion in excluding prior testimony of Holmes' co-defendant accepting sole responsibility for Theranos' financial model. On April 17, 2023, Holmes filed her appeal brief ("Holmes Br.") explaining in detail these errors and their prejudicial effect. ECF 31.

Given the weight of these issues, Holmes' motion for release pending appeal merited careful consideration in the district court. Instead, the court's denial of release pending appeal below reflects numerous, inexplicable errors. The court referred to Holmes' "patient fraud convictions," despite the fact that the jury acquitted Holmes on those counts. Ex. 1 at 3; Ex. 2. The court claimed that evidence relating to the performance of Theranos' blood-testing technology "[did] not directly pertain

to the conduct for which Holmes was convicted (i.e., the investor fraud counts)," Ex. 1 at 5, despite the indictment's charge that Holmes misrepresented the capabilities of "Theranos' proprietary analyzer" to investors, Ex. 3 ¶ 12(A). The court insisted that Rosendorff's testimony was not a "'critical element[] of the government's case' on fraud to Theranos investors," Ex. 1 at 8, despite relying on Rosendorff's testimony when denying Holmes' motion for judgment of acquittal with respect to those very counts, Ex. 4 at 3. And the court used the wrong legal standard to assess whether key issues presented were likely to result in reversal, applying a sufficiency-of-the-evidence standard instead of harmlessness. This Court should grant Holmes' motion for release pending appeal.[1]

## PROCEEDINGS BELOW

In 2018, a grand jury returned a twelve-count indictment against Elizabeth A. Holmes and Ramesh "Sunny" Balwani. Ex. 3. The indictment alleged that Holmes and Balwani made false representations to investors about the capabilities of Theranos' analyzer; Theranos' current and future revenue; its relationships with Walgreens, the Department of Defense, and pharmaceutical companies; and its use of its proprietary analyzers to test patient samples. *Id*. Holmes contested the government's allegations.

---

[1] Holmes' appeal raises distinct issues on a distinct record from that of her co-defendant, Ramesh "Sunny" Balwani. *See* Case No. 22-10338.

At trial, the allegations concerning Theranos' technology formed the core of the case. As the government put it in closing, "[t]he whole point of the company was to develop and use this technology." Ex. 5 (Tr. 9270). The government told the jury that alleged misrepresentations about technology were "sort of the underlying false statement in the case," Ex. 6 (Tr. 8959)**,** and "a thread through this scheme." *Id.* The government repeatedly tied the other alleged misrepresentations to this central allegation. *See* Holmes Br. 52-53.

To prove that Theranos' technology did not work, the government relied principally on the testimony of two former Theranos clinical laboratory directors, Dr. Adam Rosendorff and Dr. Kingshuk Das. Rosendorff testified about certain incidents when the company investigated potentially erroneous results or other testing issues. *E.g.*, Ex. 7 (Tr. 1780-1809, 1810-20, 1821-28); *see also* Ex. 9 (Tr. 2030-35). The government relied on this testimony to attempt to prove Holmes' knowledge and intent. *See* Ex. 6 (Tr. 8975, 8953-54, 9000-01, 9006-14, 9023-24, 9028-29); Ex. 5 (Tr. 9268-74, 9320-21). Das testified about (1) his retrospective, comprehensive data analysis (which used missing data), (2) findings of an inspection of Theranos' laboratory by the Centers for Medicare & Medicaid Services (CMS), and (3) Theranos' decision to void test results from the company's proprietary analyzer—all of which occurred after any proven representations to investors (or

3

patients). Ex. 10 (Tr. 5803-22, 5827-35, 5844-59). Das provided the only comprehensive analysis of Theranos' technology in the case.

The government called investor witnesses to testify about conversations with Holmes and/or Balwani, materials they received from Holmes and/or Balwani, and the importance of various representations they claimed Holmes or Balwani made. *See* Ex. 11 (Tr. 2938-99); Ex. 12 (Tr. 3021-3161, 3162-3201); Ex. 13 (Tr. 3368-3519); Ex. 14 (Tr. 3572-3708); Ex. 15 (Tr. 2294-2371); Ex. 16 (Tr. 4358-4432); Ex. 17 (Tr. 5018-69). Holmes testified in her own defense over seven trial days. Ex. 18 (Tr. 7237). She moved to admit the sworn deposition testimony of Balwani concerning his sole responsibility for the financial model shared with investors, but the court denied the motion. Ex. 19.

After deliberating for seven days, the jury returned a mixed verdict. Ex. 2. The jury acquitted Holmes on the patient-related counts: conspiracy (Count 2) and wire fraud (Counts 10-12). *Id.* The jury convicted Holmes of conspiracy to commit wire fraud as to investors (Count 1) and on the three wire-fraud counts related to investments made in 2014 ("C-2" investments) (Counts 6-8). *Id.* The jury hung on the three wire-fraud counts investments made in 2013 ("C-1" investments). *Id.* On November 18, 2022, the court sentenced Holmes to 135 months' imprisonment. The court entered judgment on January 11, 2023. Ex. 20. The court denied Holmes' motion for release pending appeal on April 10, 2023. Ex. 1. The court found that

4

Holmes is not likely to flee or pose a danger to society, but that her appeal will not present a substantial question of law or fact likely to result in a new trial. Holmes filed her opening brief in this Court on April 17, 2023. ECF-27-2. Holmes is currently on bail and moves this Court for release pending appeal.[2] Fed. R. App. 9(b); 18 U.S.C. §§ 3143(b), 3145(c).

## STANDARD OF REVIEW

Substantial questions are those that are fairly debatable or doubtful. *See United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985). As this Court has explained, the "application of well-settled principles to the facts of the instant case" may present a substantial question. *Id.* (citation omitted). Holmes must present "only a non-frivolous issue that, if decided in [her] favor, would likely result in reversal or could satisfy one of the other conditions." *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003).

## ARGUMENT

I. **The Court's Admission of Das' Expert Opinions, the CMS Report, and the Voiding Evidence Presents Substantial Questions Likely to Result in a New Trial on All Counts.**

Holmes' appeal challenges the admission of three key pieces of evidence admitted through Das: (1) the expert opinions and Patient Impact Assessment of Das;

_____

[2] Attached to this motion are the district court's order denying release, Ex. 1, the judgment of conviction, Ex. 20, a transcript of the hearing on Holmes' motion for release, Ex. 59, and the court reporter's certificate, Ex. 60.

(2) the January 2016 CMS investigative findings ("CMS report"); and (3) evidence of Theranos' remedial decision to void every test conducted on Theranos' proprietary "Edison" device in March 2016 (collectively, "2016 evidence"). The government used this evidence to argue that Holmes knowingly and intentionally misrepresented the capabilities of Theranos' proprietary analyzer. Whether this 2016 evidence should have been excluded presents substantial questions likely to result in a new trial. *Handy*, 761 F.2d at 1281.

### A. The Erroneous Admission of the 2016 Evidence Presents Substantial Questions.

First, Das' expert analysis violated Federal Rule of Criminal Procedure 16 and Federal Rules of Evidence 701 and 702. *See* Holmes Br. 36-41; NACDL *Amicus* Br. 7-17 (ECF 32). The government waited until seventeen months after the court's expert-disclosure deadline to disclose its intent to call Das as a witness. Ex. 22 at 1; *see also* Ex. 23; Ex. 24. The disclosure—a four-sentence email—was both untimely and insufficiently detailed for Holmes to prepare a *Daubert* attack. Fed. R. Crim. P. 16(a)(1)(G) (2021); Holmes Br. 40. Based on the government's assurances that it would not elicit expert opinions, the court ruled that Das may "proceed as a percipient witness." Ex. 25 at 4.

At trial, however, Das testified over Holmes' objection about a Patient Impact Assessment he produced based on a "comprehensive retrospective analysis" of Edison data, which led him to conclude there was a "possible patient impact for every

test reported from the [Edison]" and that the Edison was "unsuitable for clinical use." Ex. 10 (Tr. 5832, 5835); *see* Ex. 26 at 2.  Because this Patient Impact Assessment and associated testimony were "based on scientific, technical, or specialized knowledge," they were not admissible under Rule 701. *See* Holmes Br. 34-40.  That Das was testifying about his job makes no difference. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997); *Rodriguez v. Gen. Dynamics Armament & Tech. Prods.*, 510 F. App'x 675, 676 (9th Cir. 2013).  And Das' testimony would not have satisfied Rule 702, because the lab data essential to assessing the reliability of his analysis was no longer available.  Ex. 22 at 3; Ex. 27 at 57; *see* Fed. R. Evid. 702(b), (d); *United States v. Sheppard*, 2021 WL 1700356, at *4-5 (W.D. Ky. Apr. 29, 2021); *see also* Holmes Br. 41.

Second, the admission of the January 2016 CMS report violated Rules 401 and 403.  *See* Holmes Br. 41-44.  The report concluded that Theranos' clinical lab failed to meet certain conditions of certification to perform tests on human specimens and thus posed "immediate jeopardy to patient health."  Ex. 28.  But the report was irrelevant for two reasons: (1) although it was admitted solely to show Holmes' "state of mind," *e.g.*, Ex. 10 (Tr. 5810-14, 5852), it was released in 2016, *after* the charging period of the investor conspiracy, Ex. 3 (¶ 20), and *after* any proven representations to patients; and (2) the report did not evaluate whether Edison test results were inaccurate or unreliable, but whether Theranos complied with its own quality

control procedures and CMS requirements. Ex. 29 at 185. And whatever its probative value, the report should have been excluded under Rule 403 because it risked the jury improperly convicting Holmes based on civil regulatory violations. *See United States v. Wolf*, 820 F.2d 1499, 1505 (9th Cir. 1987).

Third, the admission of evidence of Theranos' decision to void all Edison test results in the wake of CMS's findings violated Rules 407 and 403. *See* Holmes Br. 44-47. Because the decision to void Edison test results was taken "out of an extreme abundance of caution and based on [Theranos'] dissatisfaction with prior [quality assurance] oversight," Ex. 30 at 2; Ex. 10 (Tr. 5860), it was a subsequent remedial measure inadmissible to prove "culpable conduct" under Rule 407. To be sure, Rule 407 does not apply if the remedial measure is mandated by law. *In re Aircrash in Bali*, 871 F.2d 812, 817 (9th Cir. 1989) (per curiam). But, as a CMS employee noted, "Theranos made the decision to void the test results; CMS didn't tell them to do that." Ex. 31 at 7. And no regulation—neither 42 C.F.R. § 493.1812 nor § 493.1291(k)—obligated Theranos to void *every* Edison test result.

Further, this after-the-fact report was inadmissible under Rule 403 because it was irrelevant to Holmes' knowledge and intent during the charged conduct, and it

8

risked the jury erroneously inferring that voiding was an admission by Holmes that the Edison did not work.[3]

### B. Admission of the 2016 Evidence Is Likely to Result in a New Trial on All Counts.

In denying Holmes' motion for release pending appeal, the district court did not dispute that any of the foregoing issues were "fairly debatable." Rather, its decision hinged entirely on its judgment that these errors were likely harmless. Ex. 1 at 5. They were not. *See* Holmes Br. 47-53; NACDL *Amicus* Br 3-7, 17-19.

Das' expert opinions, the CMS report, and evidence of voiding were essential to the government's case that Holmes misrepresented the capabilities of Theranos' technology. Without them, the government had no statistically significant evidence that the technology did not work as promised. The patient data necessary for any comprehensive and scientifically reliable assessment of the technology was no longer accessible. Ex. 27 at 57. The government initially retained an expert, who planned to opine on Theranos' ability "to produce accurate and reliable fingerstick results." Ex. 33 at 12. But after the court ordered a *Daubert* hearing to assess the reliability of his opinions, Ex. 34 at 11, the government declined to call him.

---

[3] Importantly, because the court failed to conduct any Rule 403 balancing before admitting evidence of voiding, *see* Ex. 10 (Tr. 5827), despite Holmes' timely Rule 403 objection, Ex. 32, this argument will be reviewed *de novo. United States v. Wells*, 879 F.3d 900, 914 (9th Cir. 2018).

Instead, the government relied on anecdotes from company employees regarding incidents when Theranos' tests produced potentially inaccurate results or raised quality-control issues, and then claimed that the 2016 evidence vindicated them. *See, e.g.*, Ex. 8 (Tr. 549); Ex. 53 (Tr. 7973, 7992). The government referenced the 2016 evidence repeatedly as the scientific proof that Theranos' technology did not work. *E.g.*, Ex. 18 (Tr. 7228-30); Ex. 6 (Tr. 8999, 8934).

In ruling that these issues are unlikely to result in reversal, the district court made numerous errors. First, it claimed that none of this evidence "directly pertain[ed]" to the investor fraud counts of conviction. Ex. 1 at 5. But the indictment alleges (first and foremost) that Holmes misrepresented the capabilities of Theranos' technology to investors. Ex. 3 ¶12(A).

Second, and more importantly, the district court applied the wrong harmlessness standard. The court assumed that reversal was unlikely simply because the indictment alleged other misrepresentations "that do *not* turn on whether the technology worked or not," and it found the evidence at trial sufficient as to those other representations. Ex. 1 at 6. But whether a trial error warrants reversal does not depend on "whether the evidence was sufficient for the jury to have reached the same verdict absent the error. The issue, rather, is what the jury actually would have done without the error." *United States v. Bruce*, 394 F.3d 1215, 1229 (9th Cir. 2005). When an indictment alleges multiple means of committing an offense and the jury

10

returns a general verdict, an error affecting only one of those means can be a basis for reversal. *See, e.g.*, *United States v. Safavian*, 528 F.3d 957, 968 (D.C. Cir. 2008); *United States v. Alexius*, 76 F.3d 642, 647 & n.11 (5th Cir. 1996).

The erroneous admission of the 2016 evidence was overwhelmingly prejudicial. The government's ubiquitous reliance on the 2016 evidence and placement of Theranos' technological capabilities at the center of this case mean that Holmes was likely prejudiced. If this Court agrees that the admission of the evidence was erroneous, a new trial is likely.

## II. The Court's Restriction of Holmes' Cross-Examination of Rosendorff Is a Substantial Question Likely to Require a New Trial on All Counts.

### A. There Is a Substantial Question Whether the Court Violated Holmes' Confrontation Right.

The court's restrictions on Holmes' cross-examination of Rosendorff present a substantial question. Holmes Br. 53-65. Rosendorff was the government's star witness at trial. The court permitted the government to present the former lab director as a truth-teller with a sterling record, and Theranos' lab (and technology) as uniquely problematic. But the court largely precluded Holmes from examining Rosendorff concerning the serious problems and/or regulatory investigations that plagued laboratories he directed after Theranos. "Because the trial court's rulings unnecessarily limited relevant, probative, and perhaps crucial evidence concerning

11

the credibility of a key government witness," they violated Holmes' confrontation right. *United States v. Adamson*, 291 F.3d 606, 612 (9th Cir. 2002).[4]

1.      As laboratory director, Rosendorff was the "highest authority under the federal regulations" in Theranos' clinical laboratory. Ex. 9 (Tr. 1984, 1987, 2038-40). At trial, Rosendorff invoked his laboratory-director experience to opine that third-party analyzers had "superior performance" to Theranos analyzers. Ex. 7 (Tr. 1759.) The government elicited testimony comparing Theranos unfavorably to other laboratories. Ex. 7 (Tr. 1778-79); Ex. 36 (Tr. 2732-33).

Holmes sought to cross-examine Rosendorff concerning his post-Theranos tenure as director at three laboratories—Invitae, uBiome, and PerkinElmer. During Rosendorff's tenure, Invitae "determined that the genetic tests for 50,000 patients were subject to [a] systemic testing error, ... likely a record high for such an error." (Ex. 35 at 2); *see* Ex. 36 (Tr. 2551). Next, ███████████████████████████ ███████████████████████ Ex. 37 at 5 (sealed). ███████████████ ████████████████████████████████████████ Ex. 37. And during trial, Rosendorff was laboratory director at PerkinElmer, where (months before trial) state and federal investigators found "deficient practices" in his lab; concluded (as CMS had with respect to Theranos) that those practices "pose[d]

---

[4] Because the court violated Holmes' confrontation right by excluding "area[s] of inquiry" highly relevant to Rosendorff's credibility, competence, and bias, de novo review is required. *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007).

immediate jeopardy to patient health and safety"; and proposed sanctioning the laboratory. Ex. 36 at 3; Ex. 40; Ex. 41.

At the government's urging, the court precluded Holmes from examining Rosendorff about Invitae and uBiome. Ex. 36 (Tr. 2707-09). As for PerkinElmer, the court permitted "limited, limited" questioning only on the issue of bias. Ex. 36 (Tr. 2709-10, 2717-20). The court forbade PerkinElmer-related questioning regarding "the nature of any investigation, the quality of the investigation, [or] [Rosendorff's] specific role in it." Ex. 36 (Tr. 2710). The ruling precluded examination about the immediate-jeopardy finding or specific deficiencies. Ex. 36 (Tr. 2711.)

2.      In denying Holmes' motion for release pending appeal, the court held that Holmes "fully availed herself of the right to confront Dr. Rosendorff" by "examin[ing him] over four days of trial," including with a "limited opportunity to inquire into a CMS investigation at one lab where Dr. Rosendorff worked after he had left Theranos." Ex. 1 at 9. While it is true that defense counsel attempted to attack Rosendorff's competence and credibility in other ways, Holmes lacked this much more powerful evidence that undermined them. Holmes Br. 64-65.

It is an extraordinary fact that multiple laboratories headed by Rosendorff after he left Theranos had serious problems and/or faced criminal or regulatory investigation. Additional evidence concerning the then-ongoing CMS investigation of PerkinElmer's laboratory practices would have proved a motive to shift blame to

13

Holmes for issues in the Theranos laboratory, and to tailor his testimony to the government's liking. Ex. 36 (Tr. 2553). Had the Court permitted Holmes to probe "the nature of any investigation, the quality of the investigation, [and Rosendorff's] specific role in it," the jury would have had a concrete sense of the stakes for Rosendorff of his own testimony. Ex. 36 (Tr. 2710).

So, too, with Invitae and uBiome. The significant testing and quality-control issues at Invitae directly implicated his competency and (again) provided a basis for the jury to question his bias. Ex. 36 (Tr. 2551). And ███████████████████

████████████████████████████████████████████

█████████████████ also implicated his competence and bias to testify in a way helpful to the prosecutors—as did ████████████████. Ex. 36 (Tr. 2552); Ex. 42 (under seal); Ex. 38 at 8. The Confrontation Clause entitled her to probe these subjects. *E.g., United States v. Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005).

### B. The Restriction of Holmes' Confrontation Right Is Likely to Result in a New Trial on All Counts.

The government cannot carry its hefty burden to show the court's unconstitutional ban on cross-examination was harmless beyond a reasonable doubt. *United States v. Larson*, 495 F.3d 1094, 1107 (9th Cir. 2007); Holmes Br. 65-67. The government put Holmes' representations to investors about the capabilities of Theranos' technology front and center. *See supra* p. 3. The government viewed Rosendorff's testimony as central to Holmes' knowledge and intent on this issue, and referenced

14

him more than any other government witness (65 times) during opening and closing statements.  *See* Ex. 4 (Tr. 531-58); Ex. 6 (Tr. 8909-9030); Ex. 5 (Tr. 9237-9322).

At first, the district court recognized Rosendorff's importance to the investor-related counts.  In denying Holmes' acquittal motion, the court invoked Rosendorff's testimony in concluding that Holmes and Balwani "lied to investors about the capabilities, and financial security, of Theranos."  Ex. 4 at 3.  Rosendorff was the *only* Theranos witness the court named in that order.  The government invoked him throughout its opposition to Holmes' acquittal motion and at oral argument.  Ex. 43 at 11, 17-19; Ex. 58 (Tr. 24-25, 27).  After Holmes previewed her appellate arguments, the court pivoted, attempting to dismiss Rosendorff's testimony as "substantially attenuated" from "Holmes' varied misrepresentations to investors."  Ex. 1 at 8.  That pivot cannot undo the court's prior (correct) recognition of Rosendorff's significance.  If this Court finds in Holmes' favor on this issue, a new trial is likely.

## III.  The District Court's Exclusion of Critical Testimony from Balwani Presents a Substantial Question Likely to Lead to a New Trial on All Counts.

The government alleged in relevant part that Holmes misrepresented that Theranos (1) "would generate over $100 million in revenues" in 2014 and (2) "expected to generate approximately $1 billion in revenues in 2015."  Ex. 3 ¶ 12(B).  The first half of the allegation fell apart at trial:  Theranos in fact had over $160 million in revenue in 2014 recorded as deferred revenue, Ex. 44, and C-2 investors

knew this fact. *See* Ex. 45 (Tr. 5275-76); Ex. 17 (Tr. 5017). Therefore, the government was forced to focus on the second half of its allegation.

A critical piece of Holmes' defense against that allegation was Balwani's sworn deposition testimony that he, not Holmes, was solely responsible for a financial model that generated the projections sent to investors. The financial model was based on assumptions, including about Theranos' performance under the Walgreens contract. Ex. 46 (Tr. 6410-11); Ex. 47 (6664, 6677-78, 6739).

Under Rule 804(b)(3), Holmes sought to admit Balwani's prior testimony to the SEC that he "started building a financial model [in 2010] … that he owned," and that he was "responsible for," Ex. 48 at 6-7; that no one "else from Theranos … was working on the model" and "[no]body else modified it," Ex. 49 at 5; that he was "revving the model and adding so many assumptions that [Holmes] may not [have been] familiar with all of [the assumptions] or even most of them," *id.* at 6; and that Holmes did not "ever edit the model," *id.* The court denied the motion, concluding that Balwani's statements were not sufficiently inculpatory and the record lacked corroborating circumstances indicating their trustworthiness. Ex. 19 at 7-10.

## A. The Court's Exclusion of Balwani's Statements Under Rule 804(b)(3) Presents a Substantial Question.

A hearsay statement is admissible under Rule 804(b)(3) if (1) the declarant is unavailable; (2) "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made it … had

16

so great a tendency to … expose the declarant to civil or criminal liability;" and (3) it is "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3). The court abused its discretion in concluding the statements were insufficiently inculpatory or trustworthy. Holmes Br. 70-75.

1.    The court's ruling that Balwani's statements were insufficiently inculpatory misconstrued Rule 804(b)(3). Any reasonable person in Balwani's shoes would understand that his statements to the SEC "tended to" subject him to civil or criminal liability. Balwani was on notice that the U.S. Attorney's Office and SEC were then investigating Theranos' financial projections, and that taking responsibility for the model could subject him to liability. *See* Ex. 50 at 2, 5 (January 2016 subpoena seeking "any … offering materials used" with prospective investors); Ex. 51 at 8-9; Ex. 52 at 8-9 (November 2015, February 2016 subpoenas seeking communications relating to projected revenues and finances).

So too, a reasonable person would not have testified that Holmes did not edit the model or understand many of its assumptions unless that were true. In *United States v. Paguio*, the defendant's father admitted to preparing false tax returns and engineering a fraudulent loan application and added that his son had "nothing to do with it." 114 F.3d 928, 933 (9th Cir. 1997). The district court admitted under Rule 804(b)(3) the father's admission to the crimes but excluded his exoneration of his son. *Id.* at 931-32. This Court reversed. By stating that his son was not involved,

17

"[t]he father admitted not only participation but leadership," which "has always been seen as especially bad." *Id.* at 933-34. Here, Balwani took sole leadership responsibility for Theranos' financial model, rather than trying to "shift blame" to Holmes. *Id.* at 934 (citation omitted).

2. The court also abused its discretion in determining that the record does not contain corroborating circumstances that "clearly indicate" the trustworthiness of Balwani's testimony. Ex. 19 at 10.

The court invoked a May 2012 text message from Holmes to Balwani stating "they needed to 'work together on the rev piece.'" *Id.* But an ambiguous text message about the "rev piece," sent years before the at-issue projections, in no way suggests that Holmes accessed, understood, or contributed to the financial models. To be sure, Holmes testified it could mean "revenue," even though she thought it meant technology "revision." Ex. 53 (Tr. 8030-31). But working on "revenue" does not connote working on a financial model to *project* future revenue.

Second, the court invoked Balwani's testimony that he gave Holmes access to the model, but then ignored the rest of his statement on that issue. Balwani testified that he once made a version of the model for Holmes to edit but he "[did not] think she ever did because [he] continued with [his] assumptions and [he] never even looked at that model." Ex. 49 at 6. When the SEC asked Balwani whether Holmes edited the model, he answered no. *Id.*

18

The court also ignored other evidence that suggested that Balwani was responsible for the model. *See* Ex. 55 at 2 (C-2 investor requesting access to model); Ex. 45 (Tr. 5273-74 (different C-2 investor discussed 2015 projections with Balwani)); Ex. 55 (Tr. 1555, 1619-20 (Balwani reviewed "financial forecasts" with Board)). There is a substantial question whether the court erred.

### B. The Court's Exclusion of Balwani's Prior Testimony Is Likely to Result in a New Trial on All Counts.

The court's ruling on release rested entirely on whether exclusion of Balwani's testimony was harmless. Ex. 1 at 7. The court dismissed this issue as harmless because it "was not a necessary element of the government's case, given the other misrepresentations [Holmes] had made to investors." *Id*. That improperly turns harmlessness review into a sufficiency-of-the-evidence test. *Supra* p. 10-11.

Even the district court had to recognize in denying release pending appeal the "pertinen[ce]" of this evidence to the investor counts of conviction. Ex. 1 at 7. The 2015 financial projections were key to the government's case. The government highlighted them in opening, Ex. 8 (Tr. 557), closing, Ex. 7 (Tr. 8986), and rebuttal, Ex. 5 (Tr. 9320). The C-2 investor witnesses received the projections, Ex. 56 (Tr. 4761-62); Ex. 45 (Tr. 5274-75); Ex. 47 (Tr. 6677), whereas the C-1 investor witnesses did not. And the jury convicted Holmes of wire fraud with respect to the C-2 investors but hung with respect to the C-1 investors. That alone should defeat a conclusion of harmlessness. *See Paguio*, 114 F.3d at 935.

19

Balwani's testimony is compelling evidence corroborating Holmes' defense that she did not intend to defraud investors with the financial projections or conspire with Balwani to do so. Holmes Br. 75-77. No other evidence before the jury on this issue had similar evidentiary weight.[5] The jury surely would have deemed Balwani's *inculpatory* testimony more persuasive than Holmes' *exculpatory* testimony. *See United States v. Benveniste*, 564 F.2d 335, 342 (9th Cir. 1977) (reversing conviction where exclusion of statement against interest rendered entrapment defense "far less persuasive than it might have been"). Success on this issue would lead to a new trial.

## IV. The Court Correctly Found that Holmes Satisfies the Remaining Requirements for Release Pending Appeal.

The court correctly found that Holmes, who has "two very young children," presented clear and convincing evidence that she is not likely to flee or pose a danger, and that this appeal is not taken for purposes of delay. Ex. 1 at 3.

## CONCLUSION

For the foregoing reasons, the Court should grant Holmes' motion for release pending appeal.

---

[5] The government in closing acknowledged it was "fair" to say that Balwani handled the finances "more than Ms. Holmes," Ex. 6 (Tr. 8944), but claimed "the division [in roles] wasn't a clear line," Ex. 6 (Tr. 8943-44). Balwani's testimony contradicted this and would have clarified that Balwani did not just handle the finances "more than" Holmes but was *solely* in charge of the financial model.

DATED: APRIL 25, 2023          Respectfully submitted,

*/s/ Amy Mason Saharia*
KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue SW*
  *Washington, DC 20024*
  *(202) 434-5000*
  *asaharia@wc.com*

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  *600 Stewart Street*
  *Suite 400*
  *Seattle, WA  98101*
  *(360) 320-6435*

*Attorneys for Appellant*
*Elizabeth A. Holmes*

21

## LIST OF EXHIBITS

EXHIBIT 1:      Dkt. No.1757 - Order Denying Holmes' Motion for Release
                Pending Appeal

EXHIBIT 2:      Dkt. No. 1235 - Final Verdict Form

EXHIBIT 3:      Dkt. No. 469 - Third Superseding Indictment

EXHIBIT 4:      Dkt. No. 1575 - Order Denying Ms. Holmes' Rule 29 Motion

EXHIBIT 5:      2021.12.17 - Holmes Trial Tr, Vol 47 - 9111-9353

EXHIBIT 6:      2021.12.16 - Holmes Trial Tr, Vol 46 - 8899-9110

EXHIBIT 7:      2021.09.24 - Holmes Trial Tr, Vol 11 - 1686-1888

EXHIBIT 8:      2021.09.08 - Holmes Trial Tr, Vol 4 -492-646

EXHIBIT 9:      2021.09.28 - Holmes Trial Tr, Vol 12 - 1889-2106

EXHIBIT 10:     2021.11.09 - Holmes Trial Tr, Vol 30 - 5671-5872

EXHIBIT 11:     2021.10.06 - Holmes Trial Tr, Vol 16 - 2775-3000

EXHIBIT 12:     2021.10.12 - Holmes Trial Tr, Vol 17 - 3001-3278

EXHIBIT 13:     2021.10.13 - Holmes Trial Tr, Vol 18 - 3279-3537

EXHIBIT 14:     2022.10.14 - Holmes Trial Tr, Vol 19 - 3538-3757

EXHIBIT 15      2021.09.29 - Holmes Trial Tr, Vol 13 - 2107-2381

EXHIBIT 16:     2021.10.22 - Holmes Trial Tr, Vol 23 - 4318-4576

EXHIBIT 17:     2021.11.02 - Holmes Trial Tr, Vol 26 - 4903-5186

EXHIBIT 18:     2021.11.19 - Holmes Trial Tr, Vol 36 - 7014-7287

EXHIBIT 19:      Dkt. No. 1175 - Order Denying Holmes' Motion to Admit Prior Testimony of Balwani

EXHIBIT 20:      Dkt. No. 1716 - Holmes Judgment

EXHIBIT 21:      Dkt. No. 1676 - Holmes Motion For Release Pending Appeal

EXHIBIT 22:      Dkt. No. 893-2 – Dr. Kingshuk Das Memorandum of Interview

EXHIBIT 23:      Dkt. No. 170-6 - Proposed Pretrial Schedule

EXHIBIT 24:      Dkt. No. 171 - Criminal Minutes

EXHIBIT 25:      Dkt. No. 989 - Order re Pretrial Motions Dkts. 892, 895, 897, 899

EXHIBIT 26:      Trial Exhibit 4943, Patient Impact Assessment

EXHIBIT 27:      Dkt. No. 798 - Order Regarding Motions in Limine

EXHIBIT 28:      Trial Exhibit 4621, CMS Report

EXHIBIT 29:      Dkt. No. 584 - Transcript of Deposition of Sarah Bennett

EXHIBIT 30:      Dkt. No. 583-1 - 2020.11 .20 - (Ex. 27).pdf

EXHIBIT 31:      Dkt. No. 584-3 - 2020.11 .20 - (Ex. 34).pdf

EXHIBIT 32:      Dkt. No. 572 - Holmes' Motion to Exclude Evidence of Remedial Measures & Settlements

EXHIBIT 33:      Dkt. No. 580-5 - Expert Report of Dr. Stephen Master

EXHIBIT 34:      Dkt. No. 797 - Order re Holmes' Motion to Exclude Dr. Stephen Master

EXHIBIT 35:      Dkt. No. 1077-5 - News Article Regarding Invitae

EXHIBIT 36:      2021.10.05 - Holmes Trial Tr, Vol 15 - 2544-2774

23

EXHIBIT 37:        Dkt. No. 1078-3 - UNDER SEAL

EXHIBIT 38:        Dkt. No. 1077-3 - Dr. Adam Rosendorff Memorandum of Interview

EXHIBIT 39:        Dkt. No. 1077-6 - CMS Immediate Jeopardy Letter

EXHIBIT 40:        Dkt. No. 1077-8 - CMS Request for Allegation of Compliance

EXHIBIT 41:        Dkt. No. 1077-9 - CMS Notice of Proposed Sanctions

EXHIBIT 42:        Dkt. No. 1078-4 - UNDER SEAL

EXHIBIT 43:        Dkt. No. 1395 - Gov't Opp. to Holmes Oral Rule 29 Motion

EXHIBIT 44:        Trial Exhibit 1853, Projected Income Statement

EXHIBIT 45:        2021.11.03 - Holmes Trial Tr, Vol 27 - 5187-5382

EXHIBIT 46:        2021.11.16 - Holmes Trial Tr, Vol 33 - 6302-6573

EXHIBIT 47:        2021.11 .17 - Holmes Trial Tr, Vol 34 - 6574-6779

EXHIBIT 48:        Dkt. No. 1163-2 - Excerpts from Transcript of Sunny Balwani's Testimony, pp.46-48, 50-52, 97, 226

EXHIBIT 49:        Dkt. No. 1163-3 - Excerpts from Transcript of Sunny Balwani's Testimony, pp. 493-95, 554

EXHIBIT 50:        Dkt. No. 1163-10 - January 11, 2016 Grand Jury Subpoena

EXHIBIT 51:        Dkt. No. 1163-6 - November 23, 2015 SEC Subpoena

EXHIBIT 52:        Dkt. No. 1163-8 - February 16, 2016 SEC Subpoena

EXHIBIT 53:        2021.11.30 - Holmes Trial Tr, Vol 40 - 7922-8213

24

EXHIBIT 54:       Trial Exhibit 4077, January 2014 Emails Between Sunny Balwani and Brian Grossman

EXHIBIT 55:       2021.09.22 - Holmes Trial Tr, Vol 10 - 1450-1685

EXHIBIT 56:       2021.10.26 - Holmes Trial Tr, Vol 24 - 4577-4869

EXHIBIT 57:       Dkt. No. 1727 – United States Supplemental Brief Regarding Restitution

EXHIBIT 58:       2021.09.01 - Holmes Trial Tr, Vol 2 - 265-465

EXHIBIT 59:       2023.03.17 Transcript of Restitution and Motion for Release Hearing

EXHIBIT 60:       Court Reporter's Certificate

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF-system on April 25, 2023. I certify that all participants in the case are registered CM/ECF-users and that service will be accomplished by the appellate CM/ECF-system.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

DATED: APRIL 25, 2023