# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ELIZABETH A. HOLMES,<br>Defendant. | Case No. 5:18-cr-00258-EJD-1<br><br>**ORDER DENYING MOTION FOR RELEASE PENDING APPEAL**<br><br>Re: Dkt. Nos. 1676, 1722 |

Following a three-month trial, the jury found Defendant Elizabeth A. Holmes guilty of three counts of wire fraud against Theranos investors, as well as one count of conspiracy to commit wire fraud. The Court subsequently sentenced Ms. Holmes to 135 months of imprisonment with a surrender date of April 27, 2023. Now before the Court is Ms. Holmes's Motion for Release Pending Appeal ("Motion"), which has been fully briefed and heard. ECF Nos. 1676, 1721, 1740. Additionally, Ms. Holmes has moved to strike certain portions of the government's opposition to her Motion. ECF No. 1722.

Having considered the record, the submitted briefing, and oral arguments, the Court DENIES Ms. Holmes's Motion for Release Pending Appeal.

## I. PROCEDURAL BACKGROUND

On January 3, 2022, a jury convicted Elizabeth A. Holmes on one count of conspiracy to commit wire fraud, 18 U.S.C. § 1349, and three counts of wire fraud, 18 U.S.C. § 1343, against Theranos investors. On November 18, 2022, the Court sentenced Ms. Holmes to 135 months of imprisonment to be served concurrently, followed by 3 years of supervised release to be served concurrently. The Court also set a self-surrender date for Ms. Holmes at 2:00 p.m. on April 27,

Case No.: 5:18-cr-00258-EJD
ORDER DENYING RELEASE PENDING APPEAL
1

2023. Ms. Holmes filed her Notice of Appeal on December 2, 2022, and this Motion followed shortly thereafter on December 5, 2023.

On January 19, 2023, the government filed its opposition to Ms. Holmes' Motion. ECF No. 1721. Ms. Holmes claims that the opposition contains factual misrepresentations and confidential information, and she has filed a motion to strike or seal those portions. ECF No. 1722. On March 17, 2023, the Court heard oral arguments on Ms. Holmes's Motion.

## II. LEGAL STANDARD

Per 18 U.S.C. § 3143(b), a defendant who has been found guilty and sentenced to a term of imprisonment must be detained, even if an appeal has been filed. However, a court may allow the defendant to be released pending appeal if it makes the following four findings:

1. The defendant has demonstrated by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person in the community if released;

2. The appeal is not for purpose of delay;

3. The appeal raises a substantial question of law or fact; and

4. If that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). On a motion for release pending appeal, the burden of proof shifts from the government to the defendant to demonstrate entitlement to release. *Id.*

## III. DISCUSSION

### A. Flight Risk and Danger to Community[1]

As to the first element, the Court considers whether Ms. Holmes has presented clear and convincing evidence that she is not likely to flee or pose a danger to the safety of the community. The Court will first note that it does not consider Ms. Holmes to be a danger to the community if released. Ms. Holmes was convicted of non-violent—though nonetheless serious—crimes that

---

[1] The government does not argue, nor does the Court find, that the appeal is brought for delay.

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL
2

primarily had the impact they did by virtue of her influence and position at Theranos. Today, Ms. Holmes is in no position to inflict similar harms of fraud on the community, and the Court is unaware of any evidence that she is likely to commit acts of deception or fraud in her everyday life. *Cf. U.S.A. v. Wallace*, 2016 WL 9137630, at *2 (C.D. Cal. Jan. 19, 2016) (finding no "risk of committing the same type of fraud" where defendant "is not in the ambulance transportation business anymore"). The government's recitation of the same events giving rise to Ms. Holmes's investor and patient fraud convictions provides limited insight into the risk she poses today to the community, removed from the artifices that enabled her criminal activity.

With respect to flight risk, although it is a closer determination, the Court also finds that Ms. Holmes has demonstrated that she is not likely to flee if released. Ms. Holmes has presented evidence that she has made no attempt to flee, the Court retains custody of her expired passport, her appearance is secured by a $500,000 bond on her parents' home, and she has strong ties to the community, including two very young children. Mot. 2; Reply 1–3. Furthermore, Ms. Holmes does not have any family or assets abroad, Reply 2–3, and the significant media attention this case has drawn further reduces the likelihood that Ms. Holmes could flee without being quickly recognized. The government argues, however, that Ms. Holmes cannot satisfy this burden because her partner booked an international one-way flight for them that was scheduled to depart a few weeks after the jury had rendered the verdict.[2] Opp. 5–6. Booking international travel plans for a criminal defendant in anticipation of a complete defense victory is a bold move, and the failure to promptly cancel those plans after a guilty verdict is a perilously careless oversight. Certainly, this incident has invited greater scrutiny of Ms. Holmes's personal affairs and further speculation into her motivations. However, after reviewing the counsels' contemporary communications and immediate subsequent remediation, the Court accepts Ms. Holmes's representation that the one-way flight ticket—while ill-advised—was not an attempt to flee the country.

Accordingly, the Court finds that Ms. Holmes has demonstrated by clear and convincing

---

[2] For the reasons indicated on the record, the Court DENIES Ms. Holmes' Motion to Strike and to Seal portions of the government's opposition. ECF No. 1722.

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL
3

evidence that she is not likely to flee or pose a danger to the safety of any other person in the community if released.

### B. "Substantial Question" and "Likelihood of Reversal"

Even though Ms. Holmes had presented clear and convincing evidence that she would not flee, the Court does not find that she has raised a "substantial question of law or fact" that is "likely to result in reversal or an order for a new trial of all counts." *Handy*, 761 F.2d at 1283.

The "substantial question" requirement defines the level of merit required of the question presented. *Handy*, 761 F.2d at 1280. The Ninth Circuit has held that a "substantial question" is one that may be "fairly debatable" or "fairly doubtful." *Id.* at 1283. It must present "something more than the absence of frivolity" or issues "debatable among jurists of reason." *Id.* at 1281–82 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). The question, however, need not be a "close" one. *Handy*, 761 F.2d at 1282 n.2.

On the other hand, the "likelihood of reversal or new trial" requirement defines the "*type* of question that must be presented" for appeal. *Handy*, 761 F.2d at 1281 (emphasis added). The analysis, therefore, "does not involve assessing the likelihood that a reversal will occur in the particular case." *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003). Rather, the Court must find the question presented to be "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985). Put differently, the question cannot be one that would be considered harmless, would have no prejudicial effect, or was insufficiently preserved. *Id.*

In other words, Ms. Holmes must present the correct *type* of question that has met the necessary *level of merit*. For the several questions Ms. Holmes has raised in her Motion, the Court will first review them to determine if they are the correct type (*i.e.*, likely to result in reversal on all counts of conviction) before considering if they arise to the requisite level of merit (*i.e.*, fairly debatable).

Case No.: 5:18-cr-00258-EJD
ORDER DENYING RELEASE PENDING APPEAL
4

### 1. Evidentiary Questions Relating to the Accuracy and Reliability of Theranos Technology

Ms. Holmes has identified several of the Court's evidentiary rulings for appeal that primarily relate to the issue of whether Theranos technology was accurate and reliable. These "accuracy and reliability" evidentiary decisions include (1) the purportedly improper admissions of Dr. Kingshuk Das's testimony as improper lay testimony, Mot. 4–5; (2) the admission of CMS findings and sanctions, Mot. 5; (3) the admission of evidence that Theranos voided Edison test results in 2016, Mot. 6; and (4) rulings relating to the LIS database, Mot. 7. These disputes do not directly pertain to the conduct for which Ms. Holmes was convicted (*i.e.*, the investor fraud counts), but she argues that they would nonetheless result in a reversal of all her convictions because they touch upon the "central issue in the case" of accuracy and reliability. Mot. 5.

Each one of the questions cited above involved Ms. Holmes's disagreement with the Court's evidentiary rulings. On appeal, even if the Ninth Circuit were to agree that these evidentiary rulings were erroneous, "reversal is required only if the error affected a substantial right of the party, meaning [the Ninth Circuit] require[s] a finding of prejudice." *United States v. Wells*, 879 F.3d 900, 923 (9th Cir. 2018) (internal quotation marks and brackets omitted). Although non-constitutional evidentiary errors begin with a presumption of prejudice, that presumption can be rebutted if it is more probable than not that the jury would have reached the same verdict if the evidence had been excluded. *Id.* at 923–24 (quoting *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010)).

To the extent Ms. Holmes challenges rulings on evidence that only relate to the accuracy and reliability of Theranos's technology, the Court finds that a contrary appellate decision is *not* likely to require reversal or new trials on all investor fraud convictions and the conspiracy conviction. Contrary to her suggestion that accuracy and reliability were central issues to her convictions, Ms. Holmes's misrepresentations to Theranos investors involved more than just whether Theranos technology "work[ed] as promised." Reply 4. To begin, the TSI had alleged that—in addition to misrepresenting the capabilities of Theranos's technology, TSI ¶ 12(A)—Ms.

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL

5

Holmes had also made several misrepresentations that do *not* turn on whether the technology worked or not, such as those regarding the company's financial status, reliance on third-party and commercially available devices, partnership with Walgreens, and validation by pharmaceutical companies. TSI ¶¶ 12(B)–(D), (H). The jury also heard evidence that multiple investors had expressed shock upon learning that Theranos was using third-party machines instead of its own proprietary devices to conduct blood tests as they were led to believe, which is a misrepresentation unaffected by, for example, the exclusion of the CMS findings or purported expert testimony from Dr. Das. *See* Opp. 12 (citing trial transcripts). And in reviewing the overall sufficiency of the evidence for Ms. Holmes's Rule 29 motion for acquittal, the Court cited evidence that Ms. Holmes had misrepresented Theranos's reliance on third-party devices and its expanding partnership with Walgreens, neither of which involved the question of whether Theranos devices worked as promised. ECF No. 1575, at 4–5. Whether the jury heard more or less evidence that tended to show the accuracy and reliability of Theranos technology does not diminish the evidence the jury heard of other misrepresentations Ms. Holmes had made to investors.

In sum, even if the Ninth Circuit were to agree with Ms. Holmes that the Court had erred on these evidentiary rulings, the mere fact that a purported error touched upon the accuracy or reliability of Theranos technology is not likely to support a finding that the jury's verdict was materially affected, especially where the government had presented evidence of other misrepresentations unrelated to Theranos's accuracy and reliability. Of course, this is not to say that the capabilities of Theranos technology were not relevant to Ms. Holmes's misrepresentations to investors. However, in light of the breadth of misrepresentations at issue, the Court cannot conclude that there is any one category of misrepresentations "so integral to the merits" that any potential error at all would be likely to result in reversal or new trial of all of Ms. Holmes's convictions. *Miller*, 753 F.2d at 23. Accordingly, the Court finds that these four questions presented by Ms. Holmes are not the "type of question that must be presented" for appeal, *Handy*, 761 F.2d at 1281, and therefore, does not proceed to consider whether they have reached the requisite level of merit to justify release pending appeal under § 1343(b).

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL

6

### 2. Exclusion of Balwani SEC Deposition Testimony

Ms. Holmes also argues that the Court erred by excluding as hearsay Mr. Balwani's prior SEC deposition testimony that he had primary responsibility for the financial model and projections shown to certain investors. She asserts that these prior statements fall under the hearsay exception for statements against interest. As with other evidentiary errors, reversal is only required if the error was more likely than not to affect the verdict. *United States v. Edwards*, 235 F.3d 1173, 1178 (9th Cir. 2000).

Unlike Ms. Holmes's other evidentiary challenges that solely relate to the accuracy and reliability of Theranos technology, Mr. Balwani's prior SEC testimony may be more pertinent to Ms. Holmes's investor fraud convictions. However, like Ms. Holmes's other evidentiary challenges, the investors received more than just financial projections. As examples, investors testified that they were induced to invest in Theranos based on misrepresentations that Theranos was "vertically integrated" and making their own analyzers instead of relying on third party devices, as well as misrepresentations regarding Theranos's relationships (or lack thereof) with pharmaceutical companies. *See* Opp. 12. Given the whole host of investor misrepresentations substantiated by the government's evidence, the issue of whether Ms. Holmes or Mr. Balwani was involved with preparing financial models is not likely to result in reversal or a new trial.

Although Ms. Holmes also claims that the exclusion rose to the level of a due process violation, Mot. 8, she has not demonstrated the primacy of this evidence. An evidentiary error only violates a defendant's due process rights when it excludes: "(1) the main piece of evidence, (2) for the defendant's main defense, to (3) a critical element of the government's case." *United States v. Haischer*, 780 F.3d 1277, 1284 (9th Cir. 2015) (quoting *United States v. Evans*, 728 F.3d 953, 967 (9th Cir. 2013)). As discussed above, whether Ms. Holmes was involved in the financial modeling presented to select investors was not a necessary element of the government's case, given the other misrepresentations she had made to investors. *See supra* Section III(B)(1).

The Court does not find that the admission of Balwani's prior deposition testimony would have affected the jury's verdict, because it would not disturb evidence of Ms. Holmes's clear

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL
7

involvement in other misrepresentations made to investors. Accordingly, even if the Ninth Circuit finds error in this ruling, it is unlikely that it would result in a reversal or new trial on all of Ms. Holmes's convicted counts.

### 3. Limits on Dr. Rosendorff's Cross-Examination

Ms. Holmes also claims that permitting cross examination of Dr. Rosendorff's post-Theranos employment would have resulted in reversal of all counts because the evidence would have demonstrated the bias in Dr. Rosendorff's testimony. Mot. 9–10; Reply 10–11. Because Ms. Holmes asserts that this error violated her rights under the Confrontation Clause, the Court must consider whether an error arose to the level of a constitutional violation by considering whether the evidence was "(1) the main piece of evidence, (2) for the defendant's main defense, to (3) a critical element of the government's case." *Haischer*, 780 F.3d at 1284.

Ms. Holmes's reliance on Dr. Rosendorff's testimony is misplaced. Although the government does rely significantly on Dr. Rosendorff's testimony in its closing arguments, the line of cross examination at issue here only pertains to Dr. Rosendorff's bias and competence as a lab director. Mot. 9; Reply 10–11. Testimony and evidence pertaining to Theranos's lab conditions, however, are substantially attenuated from Ms. Holmes's varied misrepresentations to Theranos investors, *e.g.*, regarding the companies' external relationships with pharmaceutical companies or Walgreens. *See supra* Section III(B)(1). In other words, it cannot be said that the conditions of Theranos's lab or Dr. Rosendorff's specific recollections were "critical element[s] of the government's case" on fraud to Theranos investors. *Haischer*, 780 F.3d at 1284. Any question relating to Dr. Rosendorff's bias, therefore, would not be the type likely to result in reversal or new trial on all convicted counts, especially where Dr. Rosendorff was subjected to extensive cross-examination over multiple days.

Furthermore, even if this question would be likely to result in reversal or a new trial on all convictions, the Court does not find that it is a "fairly debatable" substantial question. "[A] district court has discretion to limit cumulative cross-examination into a witness's motivations for testifying or potential bias, but it cannot prohibit a defendant from probing a witness's credibility

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL
8

or motives altogether." *United States v. Wilmore*, 381 F.3d 868, 872 (9th Cir. 2004). Here, Ms. Holmes has fully availed herself of the right to confront Dr. Rosendorff, who was cross examined over four days of trial. And even with respect to Dr. Rosendorff's post-Theranos employment, the Court afforded Ms. Holmes a limited opportunity to inquire into a CMS investigation at one lab where Dr. Rosendorff worked after he had left Theranos. 10/05/21 Trial Tr. 2718:13–2720:25. On these facts, there is no substantial question that Ms. Holmes received her constitutional opportunity to effectively cross-examine Dr. Rosendorff, even with respect to certain aspects of his bias. Accordingly, the Court finds that Ms. Holmes has not raised a substantial question with regards to the limits the Court imposed on Dr. Rosendorff's cross-examination.

### 4. Admission of Department of Defense Misrepresentations

Ms. Holmes also submits the Court erred by admitting evidence of misrepresentations that Theranos provided to the military, arguing that such evidence constituted inadmissible character evidence under Federal Rule of Evidence 404(b). Mot. 11–12.

As the Court has already highlighted, Ms. Holmes's convictions for investor fraud involved many different misrepresentations made to investors, regarding Theranos's testing capabilities, validation by pharmaceutical companies, Theranos's relationship with Walgreens, and the company's financial projections. *See* ECF No. 1575, at 4–5. The representations regarding the Department of Defense, therefore, constitute only one facet of the larger prism of misrepresentations made to investors. *See, e.g.*, *United States v. Rossby*, 81 F. App'x 109, 111 (9th Cir. 2003) (citing *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1109 (9th Cir. 1979) (holding that error in admitting 404(b) evidence was harmless where the government had "a strong, if not overwhelming, case against" defendant)). Furthermore, in its closing arguments, the government took efforts to avoid a propensity inference from the Department of Defense misrepresentations, expressly clarifying that Ms. Holmes was not being charged with defrauding the Department of Defense nor that the Department was a victim the jury would be asked about. 12/16/21 Hr'g Tr. 8919:13–17 ("The government has not charged Ms. Holmes with defrauding . . . the Department of Defense."); 8921:22–24 ("You're not going to be asked to, in your verdict

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL
9

form, decide if . . . the Department of Defense [is a] victim[]."). Considered alongside all other misrepresentations Ms. Holmes made to investors, the Court cannot find that—had Ms. Holmes's misrepresentations to the Department of Defense been suppressed—the jury's verdict would have been any different. This supposed character evidence would not warrant reversal of any count, much less all counts.

### 5. Denial of Motions for New Trial

Finally, Ms. Holmes argues that the Court had erred in denying all three of her motions for new trial based on newly discovered evidence. Mot. 10-13; ECF No. 1636.

Even assuming that errors in denying Ms. Holmes's new trial motions would be the type of issue on appeal that would result in a new trial, the Court does not find that Ms. Holmes has raised a fairly debatable or substantial question. To start, the Court's denials of Ms. Holmes's new trial motions were based on multiple grounds, any of which would have supported denial of the respective motion. Ms. Holmes's current Motion, however, takes issue with only some remarks and points the Court relied on in its order but does not respond to *all* bases for the Court's denials. For instance, with respect to a new trial based on Dr. Rosendorff's post-trial conduct, Ms. Holmes does not respond to the Court's conclusion that Dr. Rosendorff's statements were "too vague and general to imply that any specific testimony [presented by the government] was actually false or misleading" under *Napue v. Illinois*, 360 U.S. 264 (1959). ECF No. 1636, at 7. Nor does she address why the government's belief as to the relationship between Ms. Holmes and Mr. Balwani would be likely to result in acquittal, when the government has no personal knowledge of their relationship and Ms. Holmes herself has admitted to having control over decisions at Theranos. ECF No. 1636, at 10. And finally, contrary to Ms. Holmes's insistence otherwise, the revelation that specific prosecutors had received emails discussing LIS database preservation does not rise to the level of prejudice that could have changed the result of the trial. ECF No. 1636, at 14. The Court cannot conclude that reasonable jurists would fairly debate these remaining issues when Ms. Holmes's Motion does not address all bases for the Court's denials.

Accordingly, because Ms. Holmes's Motion largely re-emphasizes points she had made in

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL
10

her motions for new trial and does not address all independent bases for the Court's denials, the Court cannot find that there is a "fairly debatable" question as to whether the Court erred in denying Ms. Holmes's motions for new trial based on newly discovered evidence.

## IV. CONCLUSION

Although the Court finds that Ms. Holmes is not a flight risk or a danger to the safety of the community, it is unable to find that she has raised a "substantial question of law or fact" that if "determined favorably to [her] on appeal, [would be] likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Handy*, 761 F.2d at 1283; 18 U.S.C. § 3143(b).

Based on the foregoing, Ms. Holmes's Motion for Release Pending Appeal is DENIED.

**IT IS SO ORDERED.**

Dated: April 10, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING RELEASE PENDING APPEAL
11