# EXHIBIT 10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


UNITED STATES OF AMERICA,           )   CR-18-00258-EJD
                                    )
                    PLAINTIFF,      )   SAN JOSE, CALIFORNIA
                                    )
        VS.                         )   VOLUME 30
                                    )
ELIZABETH A. HOLMES,                )   NOVEMBER 9, 2021
                                    )
                    DEFENDANT.      )   PAGES 5671 - 5872
_____    )


               TRANSCRIPT OF TRIAL PROCEEDINGS
          BEFORE THE HONORABLE EDWARD J. DAVILA
               UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
                       BY:  JOHN C. BOSTIC
                            JEFFREY B. SCHENK
                       150 ALMADEN BOULEVARD, SUITE 900
                       SAN JOSE, CALIFORNIA 95113

                       BY:  ROBERT S. LEACH
                            KELLY VOLKAR
                       1301 CLAY STREET, SUITE 340S
                       OAKLAND, CALIFORNIA 94612

      (APPEARANCES CONTINUED ON THE NEXT PAGE.)


OFFICIAL COURT REPORTERS:
                       IRENE L. RODRIGUEZ, CSR, RMR, CRR
                       CERTIFICATE NUMBER 8074
                       LEE-ANNE SHORTRIDGE, CSR, CRR
                       CERTIFICATE NUMBER 9595

      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
          TRANSCRIPT PRODUCED WITH COMPUTER

```
1          A P P E A R A N C E S: (CONT'D)

2

3     FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                               BY:  KEVIN M. DOWNEY
4                                   LANCE A. WADE
                                    KATHERINE TREFZ
5                                   PATRICK LOOBY
                                    SEEMA ROPER
6                                   J.R. FLEURMONT
                               725 TWELFTH STREET, N.W.
7                              WASHINGTON, D.C. 20005

8                              LAW OFFICE OF JOHN D. CLINE
                               BY:  JOHN D. CLINE
9                              ONE EMBARCADERO CENTER, SUITE 500
                               SAN FRANCISCO, CALIFORNIA 94111
10

11    ALSO PRESENT:            FEDERAL BUREAU OF INVESTIGATION
                               BY:  ADELAIDA HERNANDEZ
12
                               OFFICE OF THE U.S. ATTORNEY
13                             BY:  LAKISHA HOLLIMAN, PARALEGAL
                                    MADDI WACHS, PARALEGAL
14
                               WILLIAMS & CONNOLLY
15                             BY:  TIMIKA ADAMS-SHERMAN, PARALEGAL

16                             TBC
                               BY:  BRIAN BENNETT, TECHNICIAN
17

18

19

20

21

22

23

24

25
```

INDEX OF PROCEEDINGS

GOVERNMENT'S:


**LYNETTE SAWYER**
CROSS-EXAM BY MR. WADE (RES.)          P. 5730
REDIRECT EXAM BY MR. LEACH             P. 5772
RECROSS-EXAM BY MR. WADE               P. 5777

**KINGSHUK DAS**
DIRECT EXAM BY MR. LEACH               P. 5781
CROSS-EXAM BY MR. WADE                 P. 5861

5674

```
1                           INDEX OF EXHIBITS

2

                                        IDENT.      EVIDENCE
3         GOVERNMENT'S:

4         4621, PAGES 1 - 4                          5802
          4621, PAGES 51 - 53                        5810
5         4621, PAGE 55                              5814
          4943, PAGES 1 AND 9                        5827
6         4621, AS REDACTED                          5852

7


8


9         DEFENDANT'S:

10        13047                                      5746
          13655                                      5751
11        10584                                      5765
          13158                                      5770
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    NOVEMBER 9, 2021 |
| 08:13AM | 2 | P R O C E E D I N G S |
| 08:23AM | 3 | (COURT CONVENED AT 8:23 A.M.) |
| 08:23AM | 4 | (JURY OUT AT 8:23 A.M.) |
| 08:23AM | 5 | THE COURT:  ALL RIGHT.  LET'S GO ON THE RECORD IN |
| 08:23AM | 6 | THE HOLMES MATTER.  ALL COUNSEL ARE PRESENT.  MS. HOLMES IS |
| 08:23AM | 7 | PRESENT. |
| 08:23AM | 8 | WE'RE OUTSIDE OF THE PRESENCE OF THE JURY TAKING UP A |
| 08:23AM | 9 | COUPLE OF MATTERS REGARDING SOME EVIDENCE. |
| 08:23AM | 10 | LET'S SEE.  I THINK WE'RE GOING TO TALK THIS MORNING ABOUT |
| 08:23AM | 11 | DOCKET 1086, 1133, AND 1134, AMONGST OTHERS, WHICH WILL |
| 08:24AM | 12 | PROBABLY INCLUDE A DISCUSSION OF 989 AS WELL.  THOSE ARE WHAT |
| 08:24AM | 13 | I'VE IDENTIFIED. |
| 08:24AM | 14 | HAVE YOU IDENTIFIED, FOLKS, WHO IS GOING TO SPEAK TO |
| 08:24AM | 15 | THESE?  MR. LEACH AND MR. WADE? |
| 08:24AM | 16 | MR. LEACH:  I'LL BE SPEAKING TO THIS, YOUR HONOR. |
| 08:24AM | 17 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 08:24AM | 18 | MR. WADE:  GOOD MORNING, YOUR HONOR. |
| 08:24AM | 19 | LANCE WADE ON BEHALF OF MS. HOLMES.  I'LL DEAL WITH A |
| 08:24AM | 20 | SUBSTANTIAL PART OF THIS.  THERE ARE CERTAIN ISSUED RELATING TO |
| 08:24AM | 21 | THE CMS REPORT THAT I HAVE MR. LOOBY'S PRESENCE TO HELP THE |
| 08:24AM | 22 | COURT WITH. |
| 08:24AM | 23 | THE COURT:  OKAY, GREAT. |
| 08:24AM | 24 | WELL, WHERE DO WE START?  LET'S -- I HAVE 1133, WHICH IS A |
| 08:24AM | 25 | SUPPLEMENTAL BRIEF REGARDING TRIAL EXHIBIT 4621.  WE HAD TALKED |

08:25AM 1     ABOUT THIS BEFORE.  THIS WAS THE -- IS THIS THE JANUARY 25TH

08:25AM 2     LETTER AND THE REPORT I THINK IT IS?

08:25AM 3             MR. LEACH:  THIS IS, YOUR HONOR.  THIS IS THE CMS

08:25AM 4     STATEMENT OF DEFICIENCIES --

08:25AM 5             THE COURT:  EXCUSE ME.

08:25AM 6             MR. LEACH:  -- WHICH WAS ISSUED ON JANUARY 25TH,

08:25AM 7     2016.

08:25AM 8         DR. DAS IS THE LAB DIRECTOR AT THE TIME THAT 4621 WAS

08:25AM 9     ISSUED, AND ONE OF HIS RESPONSIBILITIES WAS TO INVESTIGATE THE

08:25AM 10    ALLEGED DEFICIENCIES IN THE 2567, REVIEW DOCUMENTS IN

08:25AM 11    CONNECTION WITH THAT TO RESPOND, AND TO PREPARE THE COMPANY'S

08:25AM 12    RESPONSE.

08:25AM 13        SO HE'S INTIMATELY FAMILIAR WITH THE DOCUMENT.  HE TOLD

08:25AM 14    THE GOVERNMENT PREVIOUSLY HE 100 PERCENT AGREES WITH THE

08:25AM 15    DEFICIENCIES THAT WERE FOUND.

08:25AM 16        WE INTEND TO EXAMINE HIM ABOUT A PORTION OF THE 2567,

08:25AM 17    INCLUDING THE COVER LETTER.

08:26AM 18        IN ADDITION TO BEING ADMISSIBLE IN THE CONTEXT OF

08:26AM 19    DR. DAS'S TESTIMONY FOR, YOU KNOW, HIS CORROBORATION OF THE

08:26AM 20    TRUTHFULNESS, WE THINK THE 2567 IS RELEVANT TO THE DEFENDANT'S

08:26AM 21    STATE OF MIND.  THE INVESTOR OR THE PATIENT CONSPIRACY COUNT

08:26AM 22    GOES THROUGH 2016.

08:26AM 23        THE DEFENDANT HAS INTRODUCED EVIDENCE FROM MARCH OF 2016

08:26AM 24    WHERE SHE'S RELAYING THE FINDINGS OF A SCIENTIFIC BOARD THAT

08:26AM 25    SHE CONVENED THAT DOCTORS AND OTHER PEOPLE WITH CONNECTIONS TO

08:26AM 1    THE COMPANY ARE GLOWING ABOUT THE TECHNOLOGY, SAYING THE

08:26AM 2    VACUTAINER WORKS, SAYING THIS IS A LAB IN THE BOX AND IS A GAME

08:26AM 3    CHANGER.

08:26AM 4        AND THE PROFFER IN THE MOMENT WITH GENERAL MATTIS WAS THAT

08:26AM 5    THIS WAS RELEVANT TO THE DEFENDANT'S STATE OF MIND.

08:26AM 6        IF GLOWING REVIEWS ABOUT THE TECHNOLOGY ARE RELEVANT TO

08:27AM 7    HER STATE OF MIND IN MARCH OF 2016, THE CMS REPORT, WHICH IS

08:27AM 8    CRITICAL OF THERANOS'S TECHNOLOGY, IS EQUALLY RELEVANT TO HER

08:27AM 9    STATE OF MIND.

08:27AM 10       SO IT SHOULD COME IN FOR THAT PURPOSE.  AND DR. DAS WILL

08:27AM 11   ALSO REVIEW PORTIONS OF THE REPORT AND SAY, YES, I LOOKED INTO

08:27AM 12   THAT AND I AGREE WITH THAT COMPLETELY.  IN FACT, THE ISSUE IS

08:27AM 13   EVEN WORSE THAN WHAT IS DESCRIBED HERE.

08:27AM 14            THE COURT:  THANK YOU.

08:27AM 15       WILL DR. DAS INDICATE THAT HE SPOKE WITH MS. HOLMES ABOUT

08:27AM 16   THE INFORMATION CONTAINED IN THIS?  IN OTHER WORDS, IS THERE

08:27AM 17   SOME EVIDENCE THAT WILL CONNECT MS. HOLMES TO THE DOCUMENT SUCH

08:27AM 18   THAT IT COULD BE INTRODUCED FOR STATE OF MIND?

08:27AM 19            MR. LEACH:  YES.  HE WILL TESTIFY THAT HE WAS

08:27AM 20   INSTRUCTED BY MS. HOLMES TO REVIEW THE 2567 AND RESPOND TO IT.

08:27AM 21   I ANTICIPATE THAT'S WHAT HE'LL SAY.

08:27AM 22       IN ADDITION, HE WILL DESCRIBE HOW, IN THE COURSE OF

08:28AM 23   PREPARING THE RESPONSE TO THE 2567, HE RELAYED TO MS. HOLMES

08:28AM 24   WHAT HE WAS FINDING AND WHAT HE INTENDED TO REPORT BACK TO CMS,

08:28AM 25   AND THE COURT HAS FOUND IN THE MOTION IN LIMINE ORDER THAT THE

08:28AM 1    DIALOGUE BACK AND FORTH BETWEEN CMS AND THERANOS IS CLEARLY

08:28AM 2    RELEVANT.

08:28AM 3        AND DR. DAS IS GOING TO SAY NOT ONLY DID MS. HOLMES

08:28AM 4    UNDERSTAND WHAT I WAS FINDING AND WHAT OUR INVESTIGATION OF THE

08:28AM 5    DEFICIENCIES ENTAILED, SHE INSISTED THAT I CHARACTERIZE THIS AS

08:28AM 6    A QUALITY SYSTEMS ISSUE AND NOT AN ISSUE WITH THE DEVICE, WHICH

08:28AM 7    IS WHAT I WAS ACTUALLY SEEING.

08:28AM 8        SO DR. DAS, I ANTICIPATE, WILL TESTIFY MS. HOLMES ASKED

08:28AM 9    HIM TO MINIMIZE THE EXTENT OF THE PROBLEM TO CMS.

08:28AM 10       THAT GOES DIRECTLY TO HER STATE OF MIND, NOT JUST HER

08:28AM 11   KNOWLEDGE OF PROBLEMS, BUT HER DESIRE TO MINIMIZE THEM WHEN

08:28AM 12   CONFRONTED WITH ISSUES.

08:28AM 13           THE COURT:  I THINK YOUR PLEADINGS CALL THIS PUSH

08:28AM 14   BACK.

08:29AM 15           MR. LEACH:  YES.  AND THOSE ARE HIS WORDS IN OUR

08:29AM 16   PRIOR INTERVIEWS.

08:29AM 17       SO HE WILL CONNECT THE 2567 DIRECTLY TO MS. HOLMES, AND I

08:29AM 18   THINK HER REACTION AND HER DESIRE TO MINIMIZE WHAT IS

08:29AM 19   COMMUNICATED TO CMS IS HIGHLY RELEVANT TO HER STATE OF MIND.

08:29AM 20           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

08:29AM 21       THERE'S ANOTHER ISSUE ABOUT THIS, AND I THINK THIS

08:29AM 22   INVOLVES MR. LOOBY, AND WE SPOKE SOME TIME AGO ABOUT THIS AND

08:29AM 23   REDACTIONS IN THIS.  I THINK IT -- THERE'S SOME REDACTIONS.

08:29AM 24       MR. LOOBY IDENTIFIED CATEGORIES A, B, AND C, AND I THINK

08:29AM 25   IN YOUR PLEADING 1133 YOU SUGGEST, BASED ON THE COURT'S PRIOR

08:29AM 1    COMMENTS, THAT YOU'RE GIVING NOTICE THAT YOU WANT THE ENTIRETY

08:29AM 2    OF THE DOCUMENT TO COME IN.  I THINK WE'LL HAVE TO TALK ABOUT

08:29AM 3    POSSIBLE REDACTIONS.

08:29AM 4        I DON'T KNOW IF YOU WANT TO DO THAT NOW OR BEFORE -- MAYBE

08:29AM 5    WE SHOULD ALLOW MR. WADE TO STATE HIS CURRENT POSITION ON THAT?

08:29AM 6            MR. LEACH:  I'M HAPPY TO HEAR MR. WADE'S CURRENT

08:30AM 7    POSITION ON THAT, YOUR HONOR.

08:30AM 8        I WOULD LIKE TO NOTE THAT IN PREPARING FOR DR. DAS'S

08:30AM 9    DIRECT, THERE ARE ONLY CERTAIN PORTIONS OF THE CMS REPORT THAT

08:30AM 10   I INTEND TO DISPLAY TODAY.  I'M HAPPY TO GO THROUGH THOSE IN

08:30AM 11   ADVANCE.  I THINK THEY ELIMINATE A LOT OF THE REDACTIONS, BUT

08:30AM 12   NOT ALL OF THEM, BECAUSE I THINK THE ONE THING WE NEED TO BE

08:30AM 13   ABLE TO DISPLAY IS THE -- IT'S LAID OUT BY -- THERE'S A

08:30AM 14   PARTICULAR CITE TO A CODE SECTION, THERE'S A DESCRIPTION OF THE

08:30AM 15   LANGUAGE OF THE CODE SECTION, AND THEN IT SAYS THIS STANDARD OR

08:30AM 16   THIS CONDITION IS EITHER MET OR NOT MET, AND THERE'S A

08:30AM 17   DESCRIPTION OF THE EVIDENCE THAT CMS NOTED.

08:30AM 18       ALL OF THOSE, FOR THESE PARTICULAR PORTIONS, RELATE TO THE

08:30AM 19   EDISON DEVICE, THE TECHNOLOGY THAT THE DEFENDANT WAS HOLDING

08:30AM 20   OUT, SO I DON'T THINK IT RAISES ISSUES WITH ASSAYS THAT AREN'T

08:30AM 21   AT ISSUE OR OTHER ISSUES RAISED IN THE MOTION.

08:31AM 22       SO I ONLY INTEND TO DISPLAY THOSE TODAY, AND I'M HAPPY TO

08:31AM 23   GIVE THE COURT THOSE NUMBERS.

08:31AM 24       I DO THINK THAT THE ENTIRE EXHIBIT IS ADMISSIBLE FOR HER

08:31AM 25   STATE OF MIND, THE EXTENT OF THE ISSUES.  SO I THINK WE'VE --

08:31AM 1    AS THE TRIAL HAS PROGRESSED, WE'VE MOVED A LITTLE BIT PAST,

08:31AM 2    DOES IT REFER TO AN ASSAY THAT'S NOT IN THE BILL OF PARTICULARS

08:31AM 3    OR A PARTICULAR MORE MINOR ISSUE.

08:31AM 4        I DO THINK THE ENTIRETY IS RELEVANT TO HER STATE OF MIND,

08:31AM 5    AND FOR THAT REASON WE DON'T THINK ANY REDACTIONS ARE

08:31AM 6    APPROPRIATE.

08:31AM 7        BUT I'M HAPPY TO PREVIEW THE PARTICULAR PAGES THAT WE WANT

08:31AM 8    TO GO THROUGH TODAY WITH DR. DAS, WHICH I DON'T THINK SHOULD BE

08:31AM 9    REDACTED IN ANY WAY.

08:31AM 10            THE COURT:  OKAY.

08:31AM 11        MR. WADE, DO YOU WANT TO HEAR THOSE LIMITATIONS TODAY OR

08:31AM 12   DO YOU WANT TO GO FORWARD WITH --

08:31AM 13            MR. WADE:  YOUR HONOR, I THINK THERE ARE SEVERAL

08:31AM 14   ISSUES HERE.  LET ME TRY TO ADDRESS SOME OF THE POINTS THAT THE

08:31AM 15   COURT HAS RAISED AND MR. LEACH HAS RAISED, AND THEN WE CAN GET

08:32AM 16   TO PERHAPS THE PARTICULAR ASPECTS OF THE REPORT ITSELF.

08:32AM 17        I THINK THE SHORT ANSWER TO THAT QUESTION IS WE NEED TO

08:32AM 18   KNOW WHAT IS IN AND WHAT IS OUT IN ORDER TO BE IN A POSITION

08:32AM 19   WHERE WE CAN CROSS-EXAMINE THE WITNESS.

08:32AM 20        SO I UNDERSTAND MR. LEACH HAS SAID THAT HE ONLY INTENDS TO

08:32AM 21   GO INTO CERTAIN PARTS.  WE DON'T KNOW WHAT THOSE PARTS ARE.  WE

08:32AM 22   DON'T KNOW WHAT IS GOING TO GO IN, SO WE DON'T KNOW HOW TO

08:32AM 23   PREPARE CROSS-EXAMINATION THAT WILL ADDRESS THE RELEVANT

08:32AM 24   PIECES.

08:32AM 25        THAT'S ONE OF THE REASONS WHY, AS THE COURT KNOWS, WE

08:32AM 1    RAISED THIS ISSUE EARLY ON SO WE COULD GET NOTICE AND BE IN A

08:32AM 2    POSITION TO FAIRLY CONFRONT THE WITNESS.

08:32AM 3        I THINK THERE IS A MORE FUNDAMENTAL THRESHOLD ISSUE THAT

08:32AM 4    RELATES TO DR. DAS AND THE CMS CORRESPONDENCE, AND THAT IS

08:32AM 5    WHETHER THAT -- AND THE CMS REPORT, THE 2567.

08:32AM 6        AS THE COURT KNOWS, THAT WAS THE SUBJECT OF EXTENSIVE

08:32AM 7    MOTIONS PRACTICE DURING THE MOTION IN LIMINE PHASE AND THE

08:32AM 8    SUBJECT OF THE COURT'S ORDER.

08:32AM 9        WE RAISED CONCERNS AT THAT TIME ABOUT HEARSAY, AND ABOUT

08:33AM 10   LAYERED HEARSAY IN PARTICULAR, THAT MANY OF THE ITEMS WITHIN

08:33AM 11   THE REPORT ARE BASED UPON STATEMENTS OF WITNESSES THAT WERE

08:33AM 12   MADE TO THE PEOPLE WHO WROTE THE REPORT, THAT PEOPLE WHO WROTE

08:33AM 13   THE REPORT THEN OBVIOUSLY MADE STATEMENTS WITHIN THE REPORT,

08:33AM 14   DIFFERENT PEOPLE MADE DIFFERENT STATEMENTS.

08:33AM 15       THERE ARE SOME SUBJECTIVE DETERMINATIONS WITHIN THE REPORT

08:33AM 16   THAT WE WERE CONCERNED ABOUT, AND I KNOW THE COURT IN ITS ORDER

08:33AM 17   NOTED THE CONCERN THAT THE -- THE REAL CONCERN THAT A CIVIL

08:33AM 18   VIOLATION HERE COULD CONFUSE THE JURY AND COULD CREATE THE

08:33AM 19   POSSIBILITY THAT, YOU KNOW, MS. HOLMES WOULD BE CONVICTED

08:33AM 20   BECAUSE OF SOME PERCEIVED VIOLATION OF LAW THAT IS A CIVIL

08:33AM 21   VIOLATION.  THAT REALLY ISN'T WHAT THIS CASE IS ABOUT.

08:33AM 22           THE COURT:  WELL, THAT RELATES MORE TO THE 3217, NOT

08:33AM 23   SO MUCH TO THIS DOCUMENT.

08:33AM 24       BUT GO AHEAD.  I JUST WANT TO LET YOU KNOW THAT.

08:34AM 25           MR. WADE:  AND WE NOTE THAT IN RAISING THOSE ISSUES

08:34AM  1    AND THE CONCERNS THAT WE HAD AND THE ABILITY TO CONFRONT THAT

08:34AM  2    EVIDENCE FAIRLY ON BEHALF OF OUR CLIENT, THE GOVERNMENT

08:34AM  3    ADDRESSED THOSE CONCERNS REPEATEDLY BY SAYING IT WAS GOING TO

08:34AM  4    OFFER IT THROUGH ONE OF THE AUTHORS OF THE REPORT SO MS. HOLMES

08:34AM  5    WOULD HAVE A CHANCE TO ADDRESS ALL OF THESE CONCERNS BY

08:34AM  6    CROSS-EXAMINATION OF THE WITNESS ON THE STAND.

08:34AM  7         IT APPEARS THAT THE GOVERNMENT NOW DOES NOT INTEND TO DO

08:34AM  8    THAT, OR AT LEAST INTENDS TO OFFER THIS THROUGH DR. DAS, WHO,

08:34AM  9    OF COURSE, WE CAN'T CROSS-EXAMINE ON THE PREPARATION OF THE

08:34AM  10   REPORT AND ALL OF THE STATEMENTS THAT WERE MADE IN THERE, WHICH

08:34AM  11   CREATES BOTH SIGNIFICANT 403 ISSUES, BUT ALSO CONSTITUTIONAL

08:34AM  12   ISSUES TO THE EXTENT THAT WE'RE NOT ABLE TO CONFRONT THE AUTHOR

08:34AM  13   OF THE REPORT, THE MULTIPLE LAYERS OF HEARSAY, ET CETERA.

08:35AM  14        AND I JUST NOTE AT DOCKET 675 AT PAGES 4, 2 -- 2, 4, 8 --

08:35AM  15   8 AND 9, THE GOVERNMENT REPEATEDLY REPRESENTED TO THE COURT IN

08:35AM  16   THE MOTIONS IN LIMINE PRACTICE THAT THESE WITNESSES WOULD BE

08:35AM  17   OFFERED, EITHER SARAH BENNETT OR GARY YAMAMOTO, THAT THEY WOULD

08:35AM  18   TESTIFY AS TO THE CONTENT AND WE WOULD HAVE THE ABILITY TO

08:35AM  19   CROSS-EXAMINE THEM.

08:35AM  20        I DON'T KNOW WHAT THE STATUS OF THAT IS NOW, BUT THEY NOW

08:35AM  21   WANT TO BRING THIS IN THROUGH DR. DAS, WHO, OF COURSE, DIDN'T

08:35AM  22   PREPARE THE REPORT, DOESN'T KNOW WHAT --

08:35AM  23             THE COURT:  SO IF ONE OF THOSE WITNESSES TESTIFIED,

08:35AM  24   THAT WOULD ALLEVIATE YOUR CONCERN?

08:35AM  25             MR. WADE:  IT WOULD ALLEVIATE OUR CONCERN.

08:35AM 1     WE DO THINK THAT THAT WITNESS SHOULD ADMIT THE DOCUMENT,

08:35AM 2    SO IF THEY WANT DR. DAS TO TESTIFY AS TO THIS DOCUMENT AS A

08:35AM 3    THRESHOLD MATTER, IT HAS TO COME INTO EVIDENCE WITH AN

08:36AM 4    APPROPRIATE FOUNDATION.

08:36AM 5     THE COURT:  SO YOU THINK WHOEVER COULD AUTHENTICATE

08:36AM 6    THE DOCUMENT SHOULD TESTIFY FIRST AND THEN DR. DAS COULD

08:36AM 7    TESTIFY TO IT, AND THAT'S YOUR SUGGESTION TO THE GOVERNMENT ON

08:36AM 8    HOW THEY SHOULD PUT THEIR CASE ON?

08:36AM 9     MR. WADE:  WE DO.  WE RAISED THIS ISSUE WITH THE

08:36AM 10   GOVERNMENT.

08:36AM 11    IT'S NOT A SUGGESTION OF TRIAL PRESENTATION.  IT'S A 403

08:36AM 12   ISSUE AND A CONFRONTATION ISSUE, BECAUSE THEY WANT TO PUT IT IN

08:36AM 13   THROUGH A WITNESS WHO DIDN'T PREPARE IT, AND THEY WANT TO GO TO

08:36AM 14   THE END OF IT AND HAVE HIM AGREE WITH CERTAIN THINGS, AND WE

08:36AM 15   DON'T THINK THAT THAT'S APPROPRIATE FOR IT TO COME IN BEFORE

08:36AM 16   THE JURY UNDERSTANDS THE CONTEXT OF THE REPORT, WHAT IT IS, HOW

08:36AM 17   IT WAS PREPARED, THE SIGNIFICANCE OF IT, SO THEY CAN UNDERSTAND

08:36AM 18   HOW IT IS THAT DR. DAS RESPONDED TO IT.

08:36AM 19    BUT DIRECTLY TO THE COURT'S CONCERN, YES, IF THEY PUT UP

08:36AM 20   THAT WITNESS AND WERE ABLE TO CROSS-EXAMINE, WE OBVIOUSLY HAVE

08:36AM 21   THE ISSUES THAT WE RAISED IN THE MOTION IN LIMINE, BUT WE

08:36AM 22   UNDERSTAND THE COURT'S ORDER ON THAT.

08:36AM 23    BUT WE THINK AS A MATTER OF FAIRNESS AND CONSTITUTIONAL

08:36AM 24   PRINCIPLES, WE SHOULD HAVE THE ABILITY TO CONFRONT THAT

08:37AM 25   WITNESS.

08:37AM 1   WE DON'T THINK IT NECESSARILY ELIMINATES THE CONCERN OF

08:37AM 2   PREJUDICE RELATING -- WE DON'T THINK NECESSARILY THINK THAT IT

08:37AM 3   COMPLETELY ADDRESSES THE CONCERNS WITH RESPECT TO THE CONFUSION

08:37AM 4   ON THE CIVIL ISSUES WITHIN THIS CRIMINAL CASE.

08:37AM 5   WE HAVE AN INSTRUCTION, PROPOSED INSTRUCTION, THAT WE HAD

08:37AM 6   SUBMITTED TO THE COURT AT DOCKET 809, PAGE 88, AND I'LL OFFER

08:37AM 7   THAT UP TO THE COURT.

08:37AM 8   (HANDING.)

08:37AM 9   WE DO THINK IN THESE UNIQUE CIRCUMSTANCES IF THE COURT IS

08:37AM 10  GOING TO ADMIT THIS, THAT THIS IS A CIRCUMSTANCE WHERE THIS

08:37AM 11  INSTRUCTION SHOULD BE, SHOULD BE GIVEN CONTEMPORANEOUS WITH THE

08:37AM 12  EVIDENCE SO THAT THE JURY UNDERSTANDS, YOU KNOW, THE

08:38AM 13  APPROPRIATE LIMITATION OF THE EVIDENCE WITH RESPECT TO THE

08:38AM 14  MATTERS THAT ARE AT ISSUE IN THE CASE.

08:38AM 15  WE THEN HAVE -- BEFORE WE GET TO MR. LOOBY'S ISSUES ON THE

08:38AM 16  PROPOSED REDACTIONS AND WHAT IS IN THE DOCUMENT, THERE ARE A

08:38AM 17  COUPLE OF OTHER ISSUES WITH RESPECT TO MR. DAS.

08:38AM 18  ONE RELATES TO VOIDING AND WHETHER HE IS PERMITTED TO

08:38AM 19  TESTIFY AS TO VOIDING OF THE RESULTS, AND THE OTHER RELATES TO

08:38AM 20  EXPERT TESTIMONY, WHICH WAS THE SUBJECT OF A PRETRIAL MOTION.

08:38AM 21  I KNOW THE COURT REMEMBERS THAT AND THE COURT ISSUED AN

08:38AM 22  ORDER ON THAT.  WE'RE SURE THE GOVERNMENT WILL HONOR THAT ORDER

08:39AM 23  AND ONLY OFFER PERCIPIENT WITNESS TESTIMONY.

08:39AM 24  THERE IS ONE REPRESENTATION THAT MR. LEACH JUST MADE THAT

08:39AM 25  GIVES ME, YOU KNOW, SIGNIFICANT PAUSE AS TO THAT.  THE -- A

08:39AM 1    JUDGMENT THAT THIS WITNESS IS GOING TO COME IN AND SAY, I AGREE

08:39AM 2    100 PERCENT WITH EACH AND EVERY FINDING IN THE REPORT IS --

08:39AM 3    CLEARLY GOES TO, YOU KNOW, EXPERT TESTIMONY.  THEY HAVEN'T

08:39AM 4    NOTICED -- THEY HAVEN'T PROVIDED NOTICE THAT THAT WAS AN

08:39AM 5    OPINION THAT HE WAS GOING TO OFFER.  IT WASN'T NECESSARY TO HIS

08:39AM 6    JOB.

08:39AM 7         THERE WERE MANY TIMES WITHIN HIS JOB WHERE HE WAS ACTUALLY

08:39AM 8    GOING BACK AND FORTH WITH CMS WITH RESPECT TO PARTICULAR ITEMS

08:39AM 9    WITHIN THE REPORT AND ACTUALLY RAISING DISAGREEMENT WITH ITEMS

08:39AM 10   IN THE REPORT OR SEEKING CLARIFICATION OR TRYING TO RESPOND ON

08:39AM 11   THE COMPANY'S BEHALF.

08:39AM 12            THE COURT:  WAS HE HIRED -- AT THE TIME HE WAS

08:40AM 13   HIRED -- WHEN WAS THAT?  DECEMBER OF '15, WASN'T IT?

08:40AM 14            MR. WADE:  HE WAS HIRED IN DECEMBER OF '15, YES.

08:40AM 15            THE COURT:  AND WAS HE HIRED -- WAS HIS TASK TO

08:40AM 16   ADDRESS THE CMS AND DEAL WITH THE QUESTIONS, AND ALSO DEAL WITH

08:40AM 17   REALIGNMENT OF THE LABORATORY IN COMPLIANCE WITH REGULATIONS?

08:40AM 18   WASN'T THAT HIS TASK?

08:40AM 19            MR. WADE:  THERE WAS CERTAINLY A PART OF THAT,

08:40AM 20   YOUR HONOR.  HE WAS ACTUALLY HIRED IN THIS PERIOD BETWEEN --

08:40AM 21   THERE HAD BEEN AN INSPECTION IN LATE 2015.

08:40AM 22            THE COURT:  SEPTEMBER?

08:40AM 23            MR. WADE:  AND THE 2567 WAS ISSUED IN LATE FEBRUARY

08:40AM 24   OF '15.  SO HE CAME IN ON A PART-TIME BASIS BEFORE THE NOTICE

08:40AM 25   WAS RECEIVED.

08:40AM 1        THE COURT:  AND THEN HE WAS CONTINUED ON AS A

08:40AM 2   FULL-TIME EMPLOYEE UNTIL WHEN WAS IT, 2018?  IS THAT WHEN HE

08:40AM 3   LEFT?

08:40AM 4        MR. WADE:  HE DID, YES.

08:40AM 5        THE COURT:  RIGHT.

08:40AM 6        MR. WADE:  AND THERANOS MADE A DECISION TO -- THAT A

08:40AM 7   SETTLEMENT WITH CMS --

08:41AM 8        THE COURT:  SURE, RIGHT.

08:41AM 9        MR. WADE:  -- IN THE LATE SUMMER, EARLY FALL OF

08:41AM 10  2016.

08:41AM 11       THE COURT:  SO MY POINT ABOUT THIS, PARDON ME --

08:41AM 12       MR. WADE:  YEAH.

08:41AM 13       THE COURT:  -- MY POINT WAS WHETHER OR NOT HE --

08:41AM 14  BECAUSE OF THE REASONS HE WAS HIRED, AND IF HE TESTIFIES, I WAS

08:41AM 15  HIRED TO DO X, Y, Z, PART OF THAT IS, IN RESPONSE TO YOUR

08:41AM 16  QUESTION, CAN HE SAY, I AGREED WITH IT OR NOT?

08:41AM 17       THAT MIGHT BE PART OF HIS JOB TITLE.  I DON'T KNOW.  WE'LL

08:41AM 18  HAVE TO SEE WHETHER OR NOT THAT EVIDENCE COMES IN.

08:41AM 19       I UNDERSTAND YOUR CONCERN ABOUT MORPHING OVER INTO EXPERT,

08:41AM 20  AND I THINK I WAS VERY SPECIFIC ABOUT THAT IN 798, AND OTHER

08:41AM 21  ORDERS, THAT HE COULD NOT -- 989 ALSO, THAT HE COULD NOT.

08:41AM 22       HE'S GOING TO TESTIFY AS A PERCIPIENT WITNESS, AND HE'S

08:41AM 23  NOT TO TESTIFY UNLESS THE FOUNDATION IS LAID, WHICH I DON'T

08:41AM 24  THINK THAT WOULD HAPPEN.  AS YOU POINT OUT, HE HASN'T BEEN

08:41AM 25  IDENTIFIED AS AN EXPERT.  YOU HAVE NO NOTICE ABOUT THAT.

08:41AM 1          BUT HE CAN TESTIFY ABOUT A PERCIPIENT WITNESS.  WHETHER OR

08:42AM 2     NOT A FOUNDATION IS LAID AS TO THAT QUESTION THAT YOU HAVE

08:42AM 3     CONCERNS ABOUT REMAINS TO BE SEEN.

08:42AM 4          HE MAY BE ABLE TO ANSWER THAT QUESTION BASED ON

08:42AM 5     FOUNDATION.  I DON'T KNOW.

08:42AM 6               MR. WADE:  YEAH.  I JUST WANT TO RAISE IT BECAUSE

08:42AM 7     OBVIOUSLY IT HAS PARTICULAR SIGNIFICANCE.

08:42AM 8               THE COURT:  SURE.

08:42AM 9               MR. WADE:  AND IT HAS PARTICULAR PREJUDICIAL IMPACT

08:42AM 10    IF IT HAPPENS IN FRONT OF THE JURY.

08:42AM 11         IN THIS PARTICULAR CASE, THE CORRESPONDENCE THROUGHOUT

08:42AM 12    2016 MAKES CLEAR THAT HE IS ENGAGING ACTIVELY WITH CMS TO

08:42AM 13    ADDRESS THESE CONCERNS.

08:42AM 14              THE COURT:  RIGHT.

08:42AM 15              MR. WADE:  HE'S CLEARLY COMING TO VIEWS AND

08:42AM 16    RESPONDING TO THE COMPANY, AND WE DON'T HAVE ANY ISSUE WITH

08:42AM 17    THAT.

08:42AM 18         HE'S CLEARLY OF THE VIEW THAT THERE WERE SIGNIFICANT

08:42AM 19    ISSUES WITHIN THE LAB.  WE DON'T HAVE ANY ISSUE WITH THAT.

08:42AM 20    THAT'S WHAT HE WAS HIRED TO DEAL WITH.

08:42AM 21         THE CONCERN THAT WE HAVE IS IT'S ONE THING FOR HIM TO GO

08:42AM 22    THROUGH IN REALTIME THE PARTICULAR POSITIONS THAT HE WAS TAKING

08:42AM 23    ON PARTICULAR ISSUES.

08:42AM 24         IT'S ANOTHER THING FOR HIM TO SAY, WHICH I HAVEN'T SEEN

08:42AM 25    ANY CONTEMPORANEOUS EVIDENCE OF, I AGREED 100 PERCENT WITH THE

08:43AM 1     CMS REPORT, AND I'M GOING TO OFFER THIS IN FRONT OF THIS

08:43AM 2     JURY --

08:43AM 3              THE COURT:  SURE.

08:43AM 4              MR. WADE:  -- WHEN THERE'S NO INDICATION THAT THAT

08:43AM 5     WAS COMMUNICATED WITH MS. HOLMES THAT HE 100 PERCENT AGREED

08:43AM 6     WITH THE CMS REPORT.  THERE'S NO NOTICE FOR THAT OR A BASIS FOR

08:43AM 7     HIS CONCLUSIONS.

08:43AM 8          IN FACT, THE CONTEMPORANEOUS EVIDENCE SUGGESTS OTHERWISE.

08:43AM 9              THE COURT:  SO WE'RE TALKING ABOUT THEORETICAL

08:43AM 10    THINGS HERE.  HE MAY LAY A FOUNDATION -- PARDON ME, MR. LEACH.

08:43AM 11         BUT THE GOVERNMENT MAY LAY A FOUNDATION FOR THIS.  YOU'RE

08:43AM 12    RAISING THIS AS A CONCERN, AND I APPRECIATE IT, AND I THINK

08:43AM 13    IT'S A WAIT AND SEE.  LET'S SEE WHAT HAPPENS.

08:43AM 14         I APPRECIATE YOUR CONCERN.  HE'S NOT GOING TO BE ABLE TO

08:43AM 15    TESTIFY AS AN EXPERT.  I THINK MR. LEACH'S TEAM KNOWS THAT.

08:43AM 16    THEY'VE CONFIRMED THAT IN THEIR RESPONSIVE PLEADINGS, SO I

08:43AM 17    THINK WE CAN EXPECT THAT THEY WILL CONDUCT THE EXAMINATION OF

08:43AM 18    DR. DAS ACCORDING TO THE LIMITATIONS THAT THE COURT HAS IMPOSED

08:43AM 19    ON THEM.

08:43AM 20             MR. WADE:  THE OTHER ISSUE THAT I RELATED,

08:43AM 21    YOUR HONOR, WAS THE ISSUE OF VOIDING.

08:43AM 22             THE COURT:  YES.

08:43AM 23             MR. WADE:  AND THE GOVERNMENT HAD AN OBLIGATION, I

08:44AM 24    BELIEVE UNDER THE COURT'S ORDER, TO OFFER EVIDENCE OR PROFFER

08:44AM 25    EVIDENCE THAT THIS WAS A LEGAL VIOLATION.

08:44AM  1      AS THE COURT MAY RECALL -- AND TO BE FRANK, THE RECORD IS

08:44AM  2  A LITTLE BIT MIXED ON THIS -- THERE WAS ANOTHER 302 MEMORANDUM

08:44AM  3  OF INTERVIEW THAT -- RELATING TO MR. DAS, OR DR. DAS, THAT THE

08:44AM  4  GOVERNMENT PROVIDED TO US AFTER IT FILED ITS SUBMISSION.

08:44AM  5  THERE'S SOME AMBIGUITY AS TO INITIALLY HE SAID THERE WAS A

08:44AM  6  REQUIREMENT --

08:44AM  7      THE COURT:  HE SAID, I WAS REQUIRED TO REDACT OR

08:44AM  8  VOID AND I DID IT BECAUSE I THOUGHT IT WAS THE RIGHT THING.

08:44AM  9      IT SEEMED LIKE A SEMANTIC TYPE ISSUE, WHICH HAS

08:44AM  10  RAMIFICATIONS, I UNDERSTAND.  WAS HE REQUIRED OR DID HE DO IT

08:44AM  11  BECAUSE THIS FILTERS INTO HIS CONVERSATION WITH YOUR CLIENT, ET

08:44AM  12  CETERA.

08:44AM  13      SO I THINK I CAPTURE THAT.

08:45AM  14      MR. WADE:  YEAH.  AND THAT HAS ISSUES UNDER 407.

08:45AM  15  AND I THINK IT'S A PRETTY IMPORTANT THRESHOLD ISSUE JUST IN

08:45AM  16  TERMS OF IF IT'S A LEGAL REQUIREMENT UNDER 407, AS THE COURT

08:45AM  17  KNOWS FROM PRIOR MOTIONS, THAT'S ONE THING.  IF IT'S A MATTER

08:45AM  18  OF DISCRETION, WE -- OF COURSE THERE'S TESTIMONY -- THE

08:45AM  19  GOVERNMENT HAS NOT POINTED TO A LEGAL REGULATION THAT DOES

08:45AM  20  REQUIRE VOIDING OF RESULTS.  IT'S UNCLEAR EXACTLY WHAT MR. --

08:45AM  21  DR. DAS'S VIEW ON THIS IS.

08:45AM  22      THERE'S TESTIMONY FROM THE PEOPLE WHO PREPARED THE REPORT,

08:45AM  23  MR. YAMAMOTO OF CMS WHO SAID THAT HE DIDN'T UNDERSTAND VOIDING

08:45AM  24  TO BE REQUIRED, IT WAS WITHIN THE DISCRETION AS A POSSIBLE WAY

08:45AM  25  TO REMEDY ISSUES.

08:45AM 1          AND SO I THINK THAT'S A PRETTY SIGNIFICANT ISSUE EMBEDDED

08:46AM 2     WITHIN A LOT OF WHAT DR. DAS IS DOING AND IS GOING TO TESTIFY

08:46AM 3     TO.

08:46AM 4          AND SO -- AND I THINK THERE IS NOT A CLEAR PROFFER ON

08:46AM 5     THAT, AND I WONDER WHETHER THAT'S AN ISSUE ON WHICH, OUTSIDE OF

08:46AM 6     THE PRESENCE OF THE JURY, WE OUGHT TO VOIR DIRE THE WITNESS TO

08:46AM 7     ASSESS THAT, OR MAYBE DEFER IT.

08:46AM 8          MAYBE THIS IS AN ISSUE -- LIKE I SAID, IF THE REPORT IS

08:46AM 9     GOING TO COME IN THROUGH A CMS WITNESS, MAYBE CMS CAN

08:46AM 10    APPROPRIATELY DEAL WITH THAT SINCE THEY'RE THE ONES WHO

08:46AM 11    DETERMINE WHAT IS REQUIRED AND WHAT IS NOT.

08:46AM 12         AND THAT'S THE POINT AT WHICH WE THINK THE EVIDENCE OF CMS

08:46AM 13    SHOULD COME IN.

08:46AM 14              THE COURT:  OKAY.

08:46AM 15         MR. LEACH?

08:46AM 16              MR. LEACH:  I'D LIKE TO RESPOND TO THE VOIDING POINT

08:46AM 17    FIRST, YOUR HONOR.

08:46AM 18              THE COURT:  SURE.

08:46AM 19              MR. LEACH:  407 APPLIES TO MEASURES.  IT DOESN'T

08:46AM 20    APPLY TO AN INVESTIGATION.  IT DOESN'T APPLY TO YOUR OWN

08:46AM 21    ANALYSIS.  IT DOESN'T APPLY TO INTERNAL THINGS THE COMPANY DOES

08:47AM 22    TO UNDERSTAND ITS PRODUCT, WHICH IS EXACTLY WHAT DR. DAS WAS

08:47AM 23    DOING.

08:47AM 24         WHAT IS LEGALLY REQUIRED IS ONCE DR. DAS FINDS AN ERROR,

08:47AM 25    THERE'S NO DISCRETION UNDER THE CLIA REGS -- I DON'T HAVE IT IN

08:47AM 1    FRONT OF ME -- I THINK IT'S 493.1290 OR 80.  I'M SORRY,

08:47AM 2    YOUR HONOR, I DON'T HAVE THE CITE IN FRONT OF ME.

08:47AM 3              MR. WADE:  I'M SORRY, COUNSEL, I BELIEVE IT'S

08:47AM 4    .1840(A)(6).  IS THAT WHAT YOU'RE REFERRING TO?

08:47AM 5              MR. LEACH:  I STAND CORRECTED.

08:47AM 6         ONCE THE ERROR IS IDENTIFIED, THERE'S NO DISCRETION TO

08:47AM 7    VOID THE TEST.  YOU MUST DO THAT.  AND THAT'S THE MEASURE.

08:47AM 8    THAT'S THE ACTION.

08:47AM 9         AND SO DR. DAS WILL SAY, AND I THINK THERE IS SOME

08:47AM 10   SEMANTICS IN IT FROM THE WITNESS'S POINT OF VIEW, BUT HE'LL

08:47AM 11   SAY, AS THE CLIA DIRECTOR, I HAD A RESPONSIBILITY TO GET TO THE

08:47AM 12   BOTTOM OF THIS PROBLEM.  I FOUND ERRORS.  ONCE I FOUND THE

08:48AM 13   ERROR, I HAD NO CHOICE.  I NEEDED TO VOID THE TESTS.

08:48AM 14        SO THERE'S NO 407 ISSUE.

08:48AM 15        AND EVEN IF THERE WERE, IT GOES TO MS. HOLMES'S OWNERSHIP

08:48AM 16   AND CONTROL OF THIS COMPANY.  IT GOES, YOU KNOW, TO ISSUES

08:48AM 17   OUTSIDE OF THE LIMITS OF 407.

08:48AM 18        SO I THINK WE HAVE PROFFERED A SUFFICIENT FOUNDATION, OR I

08:48AM 19   THINK YOU'LL HEAR THIS FROM DR. DAS WHEN HE SAYS, I HAD NO

08:48AM 20   CHOICE BUT TO VOID THESE TESTS ONCE I FOUND THE ERROR.

08:48AM 21        WITH RESPECT TO TYING IT TO MS. HOLMES'S STATE OF MIND,

08:48AM 22   YOUR HONOR, THERE'S TWO REASONS WHY IT CONNECTS.

08:48AM 23        FIRST OF ALL, SHE PUSHES BACK.  SHE SAYS, DON'T

08:48AM 24   CHARACTERIZE THIS AS A QUALITY SYSTEM -- OR DON'T CHARACTERIZE

08:48AM 25   THIS AS AN ACCURACY ISSUE TO CMS, CHARACTERIZE THIS AS A

08:48AM 1      QUALITY SYSTEMS ISSUE.

08:48AM 2          AND WHEN SHE TALKS TO LISA PETERSON, SHE AGAIN MINIMIZES

08:48AM 3      THE EXTENT OF WHAT DR. DAS IS FINDING.  THAT'S ONE WAY THAT IT

08:48AM 4      CONNECTS TO HER STATE OF MIND.

08:49AM 5          THE SECOND WAY IT CONNECTS IS THAT FOR ALL OF THE REASONS

08:49AM 6      THAT WE TALKED ABOUT WITH THE CMS REPORT, THAT THE DEFENDANT

08:49AM 7      HAS INJECTED EVIDENCE, AND THIS IS AT 7653 AND 1052 WHERE

08:49AM 8      DOCUMENTS HAVE BEEN OFFERED TO SHOW MS. HOLMES'S STATE OF MIND

08:49AM 9      IN 2016 GENERALLY ABOUT THE TECHNOLOGY.

08:49AM 10         AND THE FACT THAT THERANOS IS REQUIRED TO VOID THESE TESTS

08:49AM 11     IN THIS EXACT SAME TIME PERIOD GOES TO HER OVERALL KNOWLEDGE

08:49AM 12     AND STATE OF MIND, WHICH THE DEFENSE HAS PROFFERED AS RELEVANT.

08:49AM 13         SO 407 IS A RED HERRING IN THIS CASE.  THEY WERE REQUIRED

08:49AM 14     TO DO THIS.  DR. DAS WILL -- TO VOID THE TESTS.  HE WILL SAY

08:49AM 15     THAT.

08:49AM 16         AND IT GOES DIRECTLY TO THE ACCURACY OF THE TESTS, AND IT

08:49AM 17     GOES DIRECTLY TO MS. HOLMES'S STATE OF MIND.

08:49AM 18         FOR THAT REASON IT SHOULD COME IN.

08:49AM 19             THE COURT:  OKAY.  DID YOU WANT TO SPEAK TO ANY OF

08:49AM 20     THE OTHER COMMENTS?

08:49AM 21             MR. LEACH:  I DID, YOUR HONOR.

08:50AM 22         WITH RESPECT TO THE CONFRONTATION ISSUE, I DON'T THINK

08:50AM 23     THAT'S AN ISSUE.  THE CMS REPORT IS NOT TESTIMONIAL, AND, YOU

08:50AM 24     KNOW, IT'S NOT PREPARED IN A LAW ENFORCEMENT CONTEXT, SO I

08:50AM 25     DON'T THINK THERE'S A CONFRONTATION ISSUE.

08:50AM  1      THE ENTIRETY OF THE DOCUMENT IS ADMISSIBLE FOR HER STATE

08:50AM  2  OF MIND FOR A NONHEARSAY PURPOSE.

08:50AM  3      AND THEN I THINK IT'S PERFECTLY APPROPRIATE TO SHOW THE

08:50AM  4  DOCUMENT TO DR. DAS -- HE'S INTIMATELY FAMILIAR WITH THIS, THIS

08:50AM  5  WAS A CORE PART OF HIS JOB -- AND TO ASK HIM, DID YOU LOOK AT

08:50AM  6  THIS?  WHAT DID YOU DO?  DID YOU COME TO THE SAME CONCLUSION

08:50AM  7  THAT IS LISTED HERE?

08:50AM  8      HE'S NO MORE OF AN EXPERT IN THAT CONTEXT THAN

08:50AM  9  SARAH BENNETT OR GARY YAMAMOTO ARE WHEN THEY ARE WRITING DOWN

08:50AM  10  THE WORDS.

08:50AM  11      SO THE FACT THAT CMS LOOKED AT THESE DOCUMENTS IN THE

08:50AM  12  FIRST INSTANCE AND REPORTED THE PERCENTAGE CV OR THE NUMBER OF

08:50AM  13  STANDARD DEVIATIONS THAT ARE AWAY, THAT'S THE SAME THING THAT

08:50AM  14  DR. DAS IS LOOKING AND HE'S PERFECTLY COMPETENT TO SAY WAS THAT

08:50AM  15  CONSISTENT OR INCONSISTENT WITH DOCUMENTS THAT YOU WERE LOOKING

08:51AM  16  AT.

08:51AM  17      SO I THINK THAT'S AN APPROPRIATE USE OF THE 2567.  HE CAN

08:51AM  18  AUTHENTICATE IT, HE GOT IT, AND IT'S BEING OFFERED HERE FOR A

08:51AM  19  NONHEARSAY PURPOSE.

08:51AM  20      CERTAINLY WE COULD AUTHENTICATE IT THROUGH SARAH BENNETT

08:51AM  21  OR GARY YAMAMOTO OR ANOTHER CMS WITNESS, BUT I DON'T THINK WE

08:51AM  22  HAVE TO FOR THE PURPOSES THAT WE'RE USING IT WITH FOR DR. DAS.

08:51AM  23      WITH RESPECT TO THE MULTIPLE LAYERS OF HEARSAY, I THINK

08:51AM  24  THIS ISSUE WAS RAISED AND REJECTED AT THE MOTION IN LIMINE

08:51AM  25  STAGE.  BUT I ALSO SUBMIT THAT THE PORTIONS WE'LL BE REFERRING

08:51AM  1     TO WITH DR. DAS, WHICH ARE ON PAGES 45 THROUGH 58 OF THE

08:51AM  2     REPORT, ARE LARGELY THE WITNESS JUST -- OR THE CMS SURVEYOR

08:51AM  3     REPORTING WHAT IS IN DOCUMENTS, NOT RELAYING CONVERSATIONS.

08:51AM  4          BUT I WOULD ALSO ADD, THROUGH THE COURSE OF THIS TRIAL,

08:52AM  5     THE COURT HAS HEARD EVIDENCE ABOUT WHO THE GENERAL SUPERVISOR

08:52AM  6     AND THE TECHNICAL SUPERVISOR AND THE OTHER PEOPLE WITHIN THE

08:52AM  7     LAB ARE.  THESE ARE NOT LOWER LEVEL PERSONNEL, YOU KNOW, IN

08:52AM  8     SOME FACTORY MILES AWAY FROM MS. HOLMES.

08:52AM  9          THESE ARE PEOPLE WHO REPORTED DIRECTLY TO THE LAB DIRECTOR

08:52AM 10     UNDER MS. HOLMES'S AND MR. BALWANI'S SUPERVISION.  SHE KNEW OF

08:52AM 11     THE INSPECTION IN ADVANCE, AND SHE HELD THESE PEOPLE OUT AS

08:52AM 12     BEING COMPETENT AND CAPABLE TO TALK TO THE ISSUES IN THE LAB.

08:52AM 13          SO I DON'T THINK THAT THERE'S A LAYERED HEARSAY ISSUE.

08:52AM 14               THE COURT:  IN EXHIBIT 4 OF YOUR 1133, I THINK YOU

08:52AM 15     HAVE -- EXHIBIT 4 IS -- IT SEEMS LIKE IT'S A SLIDE PRESENTATION

08:52AM 16     THAT MAY HAVE BEEN USED FOR THAT INITIAL MEETING WITH CMS.

08:52AM 17          IS THAT WHAT THAT IS?

08:52AM 18               MR. LEACH:  YES.  AND THAT WAS INTRODUCED BY THE

08:52AM 19     DEFENDANT WITH ONE OF THE LAB WITNESSES.

08:52AM 20               THE COURT:  AND AT THAT INITIAL MEETING WITH CMS AT

08:52AM 21     THE COMPANY, THE LAB PEOPLE THAT YOU JUST MENTIONED WERE

08:53AM 22     PRESENT AND WERE THERE AS REPRESENTATIVES OF THE COMPANY?

08:53AM 23               MR. LEACH:  MANY OF THEM, YES.

08:53AM 24               THE COURT:  ALL RIGHT.  THANK YOU.  I'M SORRY TO

08:53AM 25     INTERRUPT YOU.

| 08:53AM | 1 | GO AHEAD. |
| 08:53AM | 2 | MR. LEACH: WITH RESPECT TO DR. DAS AND THE 701 AND |
| 08:53AM | 3 | 702 ISSUE, AGAIN, I THINK THIS WAS -- NOTHING HAS CHANGED SINCE |
| 08:53AM | 4 | THE COURT'S ORDER IN 989. |
| 08:53AM | 5 | DR. DAS IS TALKING ABOUT WHAT HE SAW, HEARD, AND DID IN |
| 08:53AM | 6 | HIS JOB, AND THE CONCLUSIONS THAT HE COMMUNICATED DIRECTLY TO |
| 08:53AM | 7 | THE DEFENDANT. HE'S PROVIDING TESTIMONY DIRECTLY IN LINE WITH |
| 08:53AM | 8 | WHAT THE COURT HAS HEARD FROM DR. ROSENDORFF. |
| 08:53AM | 9 | HE HAPPENS TO HAVE AN M.D., BUT HE'S -- YOU KNOW, WE'RE |
| 08:53AM | 10 | NOT ASKING HIM TO REVIEW SOMETHING THAT IS OUTSIDE OF THE |
| 08:53AM | 11 | COURSE OF HIS DUTIES. HE'S TALKING ABOUT WHAT HE SAW, HEARD, |
| 08:53AM | 12 | AND DID IN HIS JOB AND COMMUNICATED TO MS. HOLMES, AND THAT'S |
| 08:53AM | 13 | CLASSIC PERCIPIENT WITNESS TESTIMONY. |
| 08:54AM | 14 | UNLESS THE COURT HAS FURTHER QUESTIONS, I THINK THAT'S -- |
| 08:54AM | 15 | THE COURT: NO. THANK YOU. THANK YOU. |
| 08:54AM | 16 | MR. WADE: YOUR HONOR, IF I COULD MAYBE START WITH |
| 08:54AM | 17 | THE LAST POINT, WHAT HE SAW, HEARD, AND COMMUNICATED TO |
| 08:54AM | 18 | MS. HOLMES, I JUST WANT TO MAKE SURE THAT HIS CONCLUSION THAT |
| 08:54AM | 19 | HE 100 PERCENT AGREED WITH WHAT WAS IN THE CMS REPORT MEETS THE |
| 08:54AM | 20 | THRESHOLD STANDARD THAT THE GOVERNMENT JUST SAID BEFORE THEY |
| 08:54AM | 21 | OFFER IT AND IT SPILLS OUT IN FRONT OF THIS JURY, BECAUSE |
| 08:54AM | 22 | THAT'S THE PART THAT CONCERNS ME. I HAVEN'T SEEN ANY EVIDENCE |
| 08:54AM | 23 | TO THAT EFFECT, THAT IT MAY BE A LITTLE BIT OF RETROSPECTIVE |
| 08:54AM | 24 | ANALYSIS OR CONCLUSIONS AFTER, YOU KNOW, THE COURSE OF DEALING. |
| 08:54AM | 25 | SO ON THE EXPERT ISSUE, THAT'S WHAT CONCERNS US THE MOST. |

08:54AM  1          WITH RESPECT TO THE CMS REPORT, THE GOVERNMENT HAS SAID

08:54AM  2     THAT THIS IS EVIDENCE OF WHETHER THE TESTS WERE ACCURATE AND

08:54AM  3     RELIABLE.  THEY'VE MADE THAT REPRESENTATION TO THE COURT IN

08:54AM  4     NUMEROUS WRITTEN SUBMISSIONS TO THIS COURT.

08:54AM  5          THEY ALSO SAID THAT WE HAVE THE ABILITY TO CONFRONT THAT

08:55AM  6     EVIDENCE BY CROSS-EXAMINING THE AUTHORS OF THE REPORT.

08:55AM  7          NOW THEY'RE SAYING -- NOW THEY'RE KIND OF PIVOTING AND

08:55AM  8     SAYING IT'S SOMEHOW RELEVANT TO THE STATE OF MIND OF OUR

08:55AM  9     CLIENT, WHICH IS A RATIONALE THAT I DON'T FULLY UNDERSTAND, BUT

08:55AM 10     IT CERTAINLY --

08:55AM 11          THE COURT:  IT COULD BE BOTH.

08:55AM 12          MR. WADE:  IT COULD CONCEIVABLY BE BOTH, BUT THERE'S

08:55AM 13     CERTAIN LIMITATIONS ON THE USE OF THE DOCUMENT AND A FOUNDATION

08:55AM 14     THAT IS REQUIRED IF THEY'RE OFFERING IT JUST FOR THE STATE OF

08:55AM 15     MIND OF THE CLIENT.

08:55AM 16          AND THEN THAT WILL GO INTO WHETHER IT'S ACTUALLY RELEVANT

08:55AM 17     TO THE CASE, AND THOSE ARE MR. LOOBY'S ISSUES WITH RESPECT TO

08:55AM 18     PARTICULAR ITEMS.

08:55AM 19          BUT THE ABILITY TO CONFRONT THAT EVIDENCE AND TO AVOID THE

08:55AM 20     CONFUSION THAT IS NECESSARY AS A RESULT OF THAT DOCUMENT

08:55AM 21     REMAINS.  THE ENTIRE LITIGATION RECORD REMAINS.

08:55AM 22          THE NEED TO CONFRONT THE MULTIPLE LAYERS OF HEARSAY

08:56AM 23     REMAINS, AND THE GOVERNMENT HAS CONSISTENTLY SAID TO THIS

08:56AM 24     COURT, THE REMEDY TO THAT IS CROSS-EXAMINATION.  LET IT IN,

08:56AM 25     PLEASE LET IT IN, THE REMEDY IS CROSS-EXAMINATION.

08:56AM 1       THE COURT AGREED TO LET IT IN, AND NOW THEY WANT TO SHIFT

08:56AM 2    THE TABLE A LITTLE BIT AND PREVENT US FROM FAIRLY CONFRONTING

08:56AM 3    THAT EVIDENCE.

08:56AM 4       THE COURT:  BUT IF A WITNESS, AS I ASKED YOU

08:56AM 5    EARLIER, IF ONE OF THE WITNESSES THAT YOU IDENTIFIED,

08:56AM 6    MR. YAMAMOTO OR MS. BENNETT OR ANOTHER PERSON TESTIFIES, THEN

08:56AM 7    YOU'LL HAVE THE OPPORTUNITY TO CROSS-EXAMINE.

08:56AM 8       MR. WADE:  EXACTLY.

08:56AM 9       THE COURT:  OKAY.

08:56AM 10       MR. WADE:  WE, WE -- AND I HAVEN'T HEARD THE

08:56AM 11    GOVERNMENT REPRESENT THAT YET.

08:56AM 12    BUT THE -- THOSE CONCERNS WOULD ADDRESS THAT.

08:56AM 13       WE STILL THINK, AS A MATTER OF FAIRNESS, THAT SHOULD COME

08:56AM 14    FIRST, FOR THE DOCUMENT TO COME IN SO THE JURY UNDERSTANDS IT.

08:56AM 15       THE COURT:  SURE.  I UNDERSTAND THE LOGIC OF THAT.

08:56AM 16    I THINK I CAN SEE THAT.  SURE, OKAY.

08:56AM 17       MR. WADE:  THE -- WITH RESPECT TO THE VOIDING ISSUE,

08:56AM 18    YOUR HONOR, THE REGULATION THAT THE GOVERNMENT POINTED TO,

08:57AM 19    WHICH IS 42 CFR 493.1840, WHICH IS WITHIN TRIAL EXHIBIT 7603,

08:57AM 20    WHICH I BELIEVE THE COURT HAS ABOUT SEVEN COPIES UP THERE IN

08:57AM 21    ITS BINDER, THAT REGULATION DOES NOT ACTUALLY ADDRESS THE --

08:57AM 22    I'M SORRY.  IT MIGHT BE -- I'M REFERRING TO A DIFFERENT

08:57AM 23    REGULATION.  I APOLOGIZE.  I'LL CORRECT THE CITE IN A SECOND.

08:57AM 24    THAT RELATES TO THE NEXT POINT THAT I WANTED TO RAISE.

08:57AM 25       THE REGULATION THAT THE GOVERNMENT HAS POINTED TO, WHICH

08:57AM 1    CAME OUT, I BELIEVE, FOR THE FIRST TIME IN AN INTERVIEW WITH

08:57AM 2    DR. DAS LAST NIGHT, IS A REGULATION THAT RELATES TO IF YOU FIND

08:57AM 3    AN ERROR IN A LAB REPORT, YOU HAVE AN OBLIGATION TO CORRECT

08:58AM 4    THAT ERROR.

08:58AM 5        THAT'S NOT WHAT HAPPENED HERE FOR THE MOST PART.

08:58AM 6        THEY CORRECTED ISSUES IN AN ABUNDANCE OF CAUTION BECAUSE

08:58AM 7    OF CONCERNS THAT THEY IDENTIFIED AS A RESULT OF THIS.  THAT

08:58AM 8    PROVISION DOESN'T RELATE TO VOIDING OF TEST RESULTS, IT RELATES

08:58AM 9    TO THE CORRECTION OF A KNOWN ERROR THAT IS IDENTIFIED.

08:58AM 10       HERE, IN AN ABUNDANCE OF CAUTION, BECAUSE OF CONCERNS THAT

08:58AM 11   THEY IDENTIFIED AND TO MAKE CLEAR THAT THE PATIENT SHOULD NOT

08:58AM 12   RELY UPON THESE RESULTS, THEY SAID, WE'RE GOING TO VOID THE

08:58AM 13   RESULTS AND GIVE NOTICE TO DOCTORS AND PATIENTS OF THAT.

08:58AM 14       THAT'S NOT THE LEGAL REQUIREMENT, AND --

08:58AM 15           THE COURT:  IS THIS FODDER FOR CROSS-EXAMINATION OF

08:58AM 16   DR. DAS?

08:58AM 17           MR. WADE:  WELL, IT'S A --

08:58AM 18           THE COURT:  CAN'T YOU ASK HIM, YOU DID THE WRONG

08:58AM 19   THING?  YOU DIDN'T HAVE TO DO THAT?  IS THAT YOUR

08:58AM 20   CROSS-EXAMINATION?

08:58AM 21           MR. WADE:  I THINK IT'S A THRESHOLD ISSUE AS TO

08:58AM 22   WHETHER THE EXAMINATION COMES IN AT ALL, THAT'S THE POINT.

08:59AM 23       BECAUSE UNDER 407 IT SHOULDN'T COME IN IF IT IS A

08:59AM 24   SUBSEQUENT REMEDIAL MEASURE.

08:59AM 25       AND IF THE -- DR. DAS CAME IN AND MADE VERY CLEAR THAT IN

08:59AM  1    THE RESPONSE WE WANT TO BE CONSERVATIVE.  THERE WAS A LOT OF

08:59AM  2    DISCUSSION BACK AND FORTH ABOUT THE APPROACH THAT SHOULD BE

08:59AM  3    TAKEN.  THERE ARE DIFFERENT OPTIONS ON THE TABLE, AND THEY

08:59AM  4    DECIDED TO TAKE WHAT DR. DAS DESCRIBED AS A CONSERVATIVE

08:59AM  5    APPROACH.

08:59AM  6         AND CONTRARY TO THE SUGGESTION OF THE GOVERNMENT, THAT WAS

08:59AM  7    SUPPORTED BY MY CLIENT, BUT IT WASN'T REQUIRED.

08:59AM  8         AND SO THAT'S HOW WE, THAT'S HOW WE END UP IN 407.  IT WAS

08:59AM  9    A MATTER OF DISCRETION.  IT WAS A REMEDIAL MEASURE.

08:59AM 10         WITH APOLOGIES FOR THE CONFUSION ON THE REGULATION, IT

09:00AM 11    RELATES TO ONE OTHER ISSUE, WHICH IS SOMETHING THAT MR. LEACH

09:00AM 12    TOUCHED UPON, WHICH, AGAIN, I BELIEVE CAME OUT IN INTERVIEWS

09:00AM 13    LAST NIGHT.

09:00AM 14         THERE'S SOME INDICATION THAT THE GOVERNMENT WANTS TO

09:00AM 15    SUGGEST THAT AN OWNER OR OPERATOR WHO AIDED AND ABETTED IN THE

09:00AM 16    VIOLATION OF CLIA OR A CLIA REGULATION CAN BE LIABLE.  THAT'S

09:00AM 17    THE PROVISION THAT I MENTIONED BY MISTAKE JUST A SECOND AGO,

09:00AM 18    WHICH IS 493.1840(A)(6).

09:00AM 19         THAT IS NOT THE PROVISION.  THE PROVISION FOR AIDING AND

09:00AM 20    ABETTING THE VIOLATION IS NOT THE PROVISION THAT WAS INVOKED IN

09:01AM 21    THE IMPOSITION OF PENALTIES IN THIS CASE.

09:01AM 22         THERE WAS A REVOCATION OF THE LICENSE IN THIS CASE.  THERE

09:01AM 23    WAS NO FINDING THAT MS. HOLMES AIDED AND ABETTED AS AN OWNER IN

09:01AM 24    THIS, AND I, I -- THAT WOULD BE AN EXTREMELY PREJUDICIAL

09:01AM 25    STATEMENT TO INJECT IN THIS CASE, AND I BELIEVE AN ERRONEOUS

09:01AM 1    ONE BASED UPON CMS.  IT JUST CAME UP FOR THE FIRST TIME LAST

09:01AM 2    NIGHT SO I WANTED --

09:01AM 3          THE COURT:  THIS RELATES TO THE 3217, I THINK,

09:01AM 4    DOESN'T IT?

09:01AM 5          MR. WADE:  IT MAY, YES, YOUR HONOR.

09:01AM 6          THE COURT:  AND THAT'S THE -- THAT IS THE DOCUMENT

09:01AM 7    THAT IS THE PENALTY DOCUMENT, IT'S THE JULY 7, 2016, IMPOSITION

09:01AM 8    OF SANCTIONS?

09:01AM 9          MR. WADE:  CORRECT.

09:01AM 10         THE COURT:  AND I THINK WE'RE GOING TO HAVE A

09:01AM 11   SEPARATE CONVERSATION ABOUT THAT.

09:01AM 12       AND YOUR ARGUMENT ON THAT, I THINK, IS 403?  THAT'S WHAT

09:01AM 13   YOU TOLD ME PREVIOUSLY, I THINK.

09:01AM 14         MR. WADE:  YEAH, CERTAINLY WITH RESPECT TO SOME OF

09:02AM 15   THE ULTIMATE CONCLUSIONS WITHIN THAT, WITHIN THAT DOCUMENT,

09:02AM 16   YES.

09:02AM 17         THE COURT:  SURE.  SURE.

09:02AM 18         MR. WADE:  AND IT RELATES TO IT, BUT IT'S SLIGHTLY

09:02AM 19   DIFFERENT.

09:02AM 20       EVEN THERE THE PROPOSED REVOCATION, WHICH ULTIMATELY WAS

09:02AM 21   NOT OF MY CLIENT'S ABILITY TO OPERATE A CLIA LAB, WAS NOT BASED

09:02AM 22   UPON THE PROVISION OF AIDING AND ABETTING A CLIA VIOLATION.

09:02AM 23   THERE'S NO EVIDENCE OF THAT IN THE RECORD.

09:02AM 24       THE GOVERNMENT APPEARS TO HAVE FOUND THAT REGULATION AND

09:02AM 25   PUT IT IN FRONT OF A COUPLE OF WITNESSES RECENTLY, AND I FEAR

09:02AM 1    THAT THEY'RE GOING TO TRY TO OBTAIN TESTIMONY IN CONNECTION

09:02AM 2    WITH THAT WHEN THAT WAS NOT -- THAT IS NOT IN THIS RECORD, AND

09:02AM 3    OBVIOUSLY IT WOULD BE EXTREMELY PREJUDICIAL, AND IT WOULD

09:02AM 4    CLEARLY BE AN EXPERT OPINION IF, IF -- GIVEN THAT DOCTOR --

09:02AM 5    THIS WAS NOWHERE IN DR. DAS'S SPHERE OF INFLUENCE.

09:02AM 6        SO I WANTED TO RAISE -- THAT'S AN IMPORTANT ISSUE FOR THE

09:02AM 7    DEFENSE AND A NEW ISSUE, AND I WANTED TO RAISE THAT AS WELL.

09:02AM 8            THE COURT:  OKAY.

09:03AM 9            MR. LEACH:  IF I COULD RESPOND BRIEFLY, YOUR HONOR,

09:03AM 10   BECAUSE I THINK THERE ARE TWO VERY DIFFERENT ISSUES, AND I

09:03AM 11   THINK ON THAT SECOND ISSUE I MIGHT BE ABLE TO CLEAR UP SOME OF

09:03AM 12   THE DEFENSE'S CONCERN.

09:03AM 13       WITH RESPECT TO THE VOIDING, DR. DAS IS THE AUTHORITY ON

09:03AM 14   THIS.  HE WAS THE LAB DIRECTOR AT THE TIME.  AND 407 APPLIES TO

09:03AM 15   VOLUNTARY MEASURES WHERE A COMPANY ON ITS OWN IN A MATTER OF

09:03AM 16   BEING CONSERVATIVE DECIDES TO DO SOMETHING.

09:03AM 17       HERE UNDER SERIOUS THREAT OF REGULATORY PRESSURE FROM CMS,

09:03AM 18   DR. DAS CONCLUDED THAT THERE WERE ERRORS IN THE TESTS.  ONCE HE

09:03AM 19   CONCLUDED THAT, AND I NOW HAVE THE RIGHT CITE, 493.1291,

09:03AM 20   REQUIRED HIM TO CORRECT THOSE REPORTS AND NOTIFY THE PATIENTS.

09:03AM 21       THE FACT THAT I CAN'T CORRECT THE REPORT TO SAY A VALUE IS

09:03AM 22   Y INSTEAD OF X AND INSTEAD WHOLESALE VOIDS IT IS NEITHER HERE

09:03AM 23   NOR THERE.

09:04AM 24       HE WILL NOT SAY THIS WAS OUT OF AN ABUNDANCE OF CAUTION.

09:04AM 25   HE WILL SAY I -- MY RESPONSIBILITIES AS THE CLIA LAB DIRECTOR

09:04AM  1    CAUSED ME TO INVESTIGATE THESE, I FOUND THESE ERRORS, I WAS

09:04AM  2    REQUIRED TO VOID THEM.

09:04AM  3         HE'S NOT GOING TO SAY THIS WAS OUT OF AN ABUNDANCE OF

09:04AM  4    CAUTION.

09:04AM  5         407 APPLIES TO MEASURES, NOT THE INTERNAL ANALYSIS.  I

09:04AM  6    THINK I'VE TOUCHED ON THAT POINT.

09:04AM  7         SO I REALLY THINK THERE'S NO 407 ISSUE AND THIS REALLY

09:04AM  8    TIES TO HER STATE OF MIND.

09:04AM  9         WITH RESPECT TO THE SECOND ISSUE, WE HAVE IN EVIDENCE

09:04AM  10   7603, A HUNDRED PAGES OF CLIA REGULATIONS, AND THE DEFENSE HAS

09:04AM  11   USED THESE CLIA REGULATIONS WITH THE LAB DIRECTOR TO SUGGEST

09:04AM  12   THAT THE BUCK STOPS WITH THE LAB DIRECTOR AND NOBODY ELSE.

09:04AM  13   THIS IS YOUR RESPONSIBILITY AND NOBODY ELSE'S, NOTHING BAD

09:04AM  14   COULD EVER HAPPEN TO THE OWNER OR OPERATOR OF A LAB.

09:05AM  15        ALL WE'VE DONE WITH THE WITNESSES, INCLUDING DR. DAS'S

09:05AM  16   INTERVIEWS AND MS. BENNETT IN INTERVIEWS, IS GO THROUGH THE

09:05AM  17   SAME EXHIBIT THAT IS ALREADY IN EVIDENCE AND NOTE THAT THERE

09:05AM  18   ARE PROVISIONS WHERE OWNERS AND OPERATORS CAN FACE

09:05AM  19   CONSEQUENCES, AND NOTHING MORE.  AND IT'S ESSENTIALLY TO REBUT

09:05AM  20   THE SUGGESTION THAT THE ONLY PERSON WITH RESPONSIBILITY HERE,

09:05AM  21   OR POTENTIAL RESPONSIBILITY, IS THE LAB DIRECTOR.

09:05AM  22        WE HAVE NEVER ASKED THESE WITNESSES, DID ELIZABETH HOLMES

09:05AM  23   AID AND ABET A VIOLATION OF THE CLIA REGULATIONS?  IT IS NOT

09:05AM  24   OUR INTENTION TO ASK THAT.

09:05AM  25        BUT THE GOVERNMENT DOES WANT TO REBUT THE FALSE SUGGESTION

09:05AM 1    THAT OWNERS AND OPERATORS OF LABORATORIES HAVE, YOU KNOW,

09:05AM 2    NOTHING TO FEAR FROM A CLIA INSPECTION OR HAVE NO POSSIBLE

09:05AM 3    EXPOSURE AT THE END OF THE DAY BECAUSE I THINK THE DEFENSE HAS

09:05AM 4    CREATED A PICTURE THAT IT'S THE LAB DIRECTOR AND NOBODY ELSE,

09:05AM 5    AND UNDER THE EVIDENCE THAT THEY HAVE SUBMITTED THAT'S JUST NOT

09:05AM 6    THE CASE.

09:05AM 7            THE COURT:  THERE HAS BEEN TESTIMONY.

09:06AM 8    DR. ROSENDORFF WAS ON THE STAND FOR A LENGTHY PERIOD OF TIME.

09:06AM 9    AND I THINK THE CROSS-EXAMINATION AT LEAST FOCUSSED A

09:06AM 10   SIGNIFICANT DEAL ON, AS MR. LEACH JUST SAID, YOU WERE

09:06AM 11   RESPONSIBLE, YOU WERE ULTIMATELY RESPONSIBLE.

09:06AM 12       YOU WENT THROUGH THE REGULATIONS WITH HIM, MR. WADE, AND

09:06AM 13   OTHERS, I THINK MAYBE DHAWAN AS WELL, PARDON ME, DR. DHAWAN.

09:06AM 14   SO IT SEEMS LIKE IT'S RELEVANT FOR SOME ISSUE AS TO THAT, JUST

09:06AM 15   AS A, NOT NECESSARILY REBUTTAL, BUT JUST TO PRESENT ANOTHER

09:06AM 16   POSSIBILITY TO THE JURY.

09:06AM 17            MR. WADE:  JUST SO WE'RE CLEAR, I DON'T ACTUALLY

09:06AM 18   THINK -- I DON'T THINK THAT WE WERE MISREPRESENTING ANYTHING.

09:06AM 19   ULTIMATELY --

09:06AM 20            THE COURT:  NO, NO, I DIDN'T SAY THAT.

09:06AM 21            MR. WADE:  NO, I KNOW THE COURT WASN'T, BUT COUNSEL

09:06AM 22   WAS.  SO I JUST WANT TO MAKE SURE THAT THE RECORD IS CLEAR AND

09:06AM 23   WHY THIS SPECIFIC PROVISION OF AIDING AND ABETTING A VIOLATION,

09:07AM 24   WHICH IS THE SPECIFIC SUB PROVISION THAT THE GOVERNMENT POINTED

09:07AM 25   THE WITNESS TO, IS NOT APPROPRIATE HERE.

09:07AM 1    THE COURT:  IS THAT PART OF THE -- IS THIS

09:07AM 2    REGULATION PART OF THE EVIDENCE THAT YOU -- THAT WAS SUBMITTED

09:07AM 3    THAT IS ADMITTED IN THE CASE?

09:07AM 4    MR. LEACH:  YES.

09:07AM 5    MR. WADE:  IT IS PART OF 7603.

09:07AM 6    THE COURT:  RIGHT.  WELL, IF IT IS IN EVIDENCE,

09:07AM 7    CAN'T HE CALL ATTENTION TO IT NOW AND SAY WHAT DID THIS SAY?

09:07AM 8    IT SEEMS LIKE IT'S FAIR GAME NOW IF IT'S IN EVIDENCE.

09:07AM 9    MR. WADE:  WELL, YOUR HONOR, HE CAN CALL ATTENTION

09:07AM 10   TO IT, BUT CREATING THE IMPRESSION IN FRONT OF THIS JURY,

09:07AM 11   AGAIN, WITH ALL OF THIS CONFUSION AROUND WHAT IS ALL OF THIS

09:07AM 12   CMS STUFF AND WHAT DOES IT MEAN AND IT'S A CIVIL VIOLATION.

09:07AM 13   THE COURT:  RIGHT.

09:07AM 14   MR. WADE:  AND THE CONCERNS ABOUT WHETHER SOMEONE

09:07AM 15   CAN BE CONVICTED AS A RESULT OF THIS.  THE PROVISION THAT

09:07AM 16   THEY'RE POINTING TO HAS NOTHING TO DO WITH THIS CASE.  THERE

09:07AM 17   WAS NO FINDING, ET CETERA.

09:07AM 18   ALL OF THE PROVISIONS THAT I HAVE POINTED WITNESSES TO

09:07AM 19   WERE THE GUIDING REGULATIONS THAT THEY ADMITTED, EACH AND EVERY

09:08AM 20   ONE OF THEM ARE WHAT FRAMED THEIR OBLIGATIONS FOR ACTING WITHIN

09:08AM 21   THE LABORATORY.

09:08AM 22   I'VE NEVER SUGGESTED THAT THERE'S NO POSSIBILITY OF

09:08AM 23   PENALTIES TO AN OWNER OF THE LAB.  WE'VE NEVER SUGGESTED THAT.

09:08AM 24   THERE IS.  THEY CAN HAVE THEIR STATUS.  IF YOU OWN MORE THAN

09:08AM 25   5 PERCENT, THEY CAN HAVE THE STATUS REVOKED.

09:08AM  1    THAT DOES NOT MEAN THAT THEY HAVE AN AFFIRMATIVE

09:08AM  2   OBLIGATION TO STEP IN AND OVERRULE A LAB DIRECTOR.

09:08AM  3        IN FACT, THE GOVERNMENT HAS ARGUED THE OPPOSITE.  IF THE

09:08AM  4   OWNER WERE TO STEP IN, AND ISN'T QUALIFIED, AND OVERRULES THE

09:08AM  5   LAB DIRECTOR, THAT WOULD BE A DIFFERENT KIND OF PROBLEM.

09:08AM  6        SO TO CREATE THE IMPRESSION THAT THERE IS SOME VIOLATION

09:08AM  7   FOR AIDING AND ABETTING HERE WHEN THERE IS NO SUGGESTION OF

09:08AM  8   THAT AT ALL IN THIS RECORD IS INCREDIBLY PREJUDICIAL.

09:08AM  9        THE COURT:  WELL, I UNDERSTAND THAT, BUT I DO THINK

09:08AM  10   THAT THERE MIGHT BE SOME BALANCE HERE.  THE CROSS-EXAMINATION,

09:08AM  11   THE VIGOROUS CROSS-EXAMINATION THAT YOU ENGAGED IN WITH THE TWO

09:08AM  12   PRIOR LAB DIRECTORS WERE VERY FOCUSSED ON INDICATING YOU, YOU,

09:08AM  13   YOU, YOU, YOU'RE RESPONSIBLE, YOU'RE RESPONSIBLE, ULTIMATELY

09:09AM  14   YOU'RE RESPONSIBLE.

09:09AM  15        YOU HAD -- DR. ROSENDORFF SAID THAT SEVERAL TIMES IN YOUR

09:09AM  16   CROSS-EXAMINATION AND AS DID DR. DHAWAN.  MAYBE IT DOESN'T HAVE

09:09AM  17   TO COME IN AS YOU SUGGEST AS MR. LEACH WON'T BE PERMITTED TO

09:09AM  18   SAY, WELL, SHE'S POTENTIALLY LIABLE AS A COCONSPIRATOR, OR

09:09AM  19   WHATEVER UNDER THAT, I CAPTURE THAT.

09:09AM  20        BUT IT SEEMS LIKE THERE SHOULD BE SOME BALANCING ABOUT

09:09AM  21   THAT ONE POINTING OUT THAT YOU ULTIMATELY WERE RESPONSIBLE.

09:09AM  22        WELL, THE CODE ALLOWS FOR RESPONSIBILITY OF THE OWNER, OR

09:09AM  23   SOMEBODY ELSE, BUT THAT'S NOT AN ISSUE IN THE CASE.  BUT JUST

09:09AM  24   TO SOFTEN THE BLOW, I SUPPOSE, OF WHAT YOU'VE SAID, IT SEEMS

09:09AM  25   LIKE THERE'S A BALANCE THAT CAN BE REACHED IN THAT.

09:09AM  1          MR. WADE:  WE'LL SEE WHAT THE GOVERNMENT SUGGESTS.

09:09AM  2     TO THE EXTENT THAT THEY TRY TO CREATE SOME IMPLICATION

09:09AM  3  THAT IT IS A FALSE ONE, THAT OUR CLIENT AIDED AND ABETTED A

09:10AM  4  CLIA VIOLATION, THAT WOULD BE EXTRAORDINARILY PREJUDICIAL.

09:10AM  5          THE COURT:  RIGHT.  WELL, I DON'T THINK MR. LEACH IS

09:10AM  6  GOING TO DO THAT.  I DON'T THINK HE'S GOING TO SAY THAT SHE'S

09:10AM  7  ALSO AIDING AND ABETTING.

09:10AM  8     THAT'S NOT PART OF THE CASE, IS IT, MR. LEACH?

09:10AM  9          MR. LEACH:  IT IS NOT, YOUR HONOR, BUT THE

09:10AM 10  POSSIBILITY OF THE SANCTIONS FOR AN OWNER AND OPERATOR OF THE

09:10AM 11  LAB DIRECTOR ARE IN EVIDENCE HERE AND IT NEGATES, ON SOME

09:10AM 12  LEVEL, THAT THE BUCK STOPS WITH THE LAB DIRECTOR.

09:10AM 13     BUT I WILL NOT IN ANY WAY SUGGEST THAT MS. HOLMES AIDED

09:10AM 14  AND ABETTED A VIOLATION.

09:10AM 15          THE COURT:  RIGHT.

09:10AM 16          MR. WADE:  YOUR HONOR, IF I MIGHT PASS UP THE

09:10AM 17  GOVERNMENT'S SUBMISSION WITH RESPECT TO DR. DAS ON THIS VOIDING

09:10AM 18  ISSUE DID NOT INCLUDE AN MOI FROM LAST FRIDAY.  IF I MIGHT PASS

09:10AM 19  THAT UP.

09:10AM 20          THE COURT:  SURE.

09:10AM 21          MR. WADE:  (HANDING.)

09:10AM 22     JUST SO THAT THE COURT HAS IT, BECAUSE THERE HAVE BEEN

09:10AM 23  REPRESENTATIONS IN THE PLEADINGS AND BY COUNSEL.  IF THE COURT

09:11AM 24  TURNS TO PAGE 3 OF THIS, AND THE SECOND PARAGRAPH ON PAGE 3

09:11AM 25  NOTES, "THE DECISION TO VOID CERTAIN TESTS WAS MADE SOME TIME

09:11AM  1   IN MARCH 2016.  DAS INITIALLY SAID THAT HIS DECISION TO VOID

09:11AM  2   THE TEST WAS VOLUNTARY, BUT CLARIFIED THAT IT WOULD HAVE BEEN

09:11AM  3   INCORRECT NOT TO DO SO.  BASED ON HIS REVIEW OF DATA, IT WAS

09:11AM  4   NECESSARY TO VOID THE TEST."

09:11AM  5        AGAIN, THIS DOESN'T GO TO -- THIS GOES TO A MATTER OF

09:11AM  6   DISCRETION.  THERE'S SOME AMBIGUITY THERE, AND THIS

09:11AM  7   DEMONSTRATES IT, AND THIS IS WHY WE SUGGESTED VOIR DIRING THE

09:11AM  8   WITNESS OUTSIDE THE JURY JUST TO CLARIFY BECAUSE I DON'T THINK

09:11AM  9   IT'S QUITE AS CLEAR AS THE GOVERNMENT IS SUGGESTING WITH

09:11AM 10   RESPECT.

09:11AM 11        THE COURT:  AND YOU THINK VOIR DIRE ON THIS

09:11AM 12   PARTICULAR ISSUE AS TO WHETHER OR NOT THIS WITNESS FELT IT WAS

09:11AM 13   VOLUNTARY OR HE HAD AN OBLIGATION, IS THAT WHAT YOU WANT TO

09:11AM 14   CLEAR UP?

09:11AM 15        MR. WADE:  YEAH.  WAS THERE A LEGAL OBLIGATION OR

09:11AM 16   WAS IT A VOLUNTARY DISCRETIONARY ACT THAT HE TOOK TO BE

09:11AM 17   CONSERVATIVE IN AN ABUNDANCE OF CAUTION?

09:12AM 18        THE COURT:  WOULD THAT BE A FOUNDATIONAL QUESTION

09:12AM 19   THAT MR. LEACH COULD ASK HIM BEFORE THE TESTIMONY?

09:12AM 20        MR. WADE:  I SUPPOSE.

09:12AM 21        THE COURT:  MR. LEACH?

09:12AM 22        MR. LEACH:  THAT'S AN APPROPRIATE APPROACH.  I DON'T

09:12AM 23   THINK WE'RE REQUIRED TO DO THAT, BUT WE'RE HAPPY TO DO THAT.

09:12AM 24        AND I WOULD POINT THE COURT TO THE ENTIRETY OF THE

09:12AM 25   PARAGRAPH FROM THE MOI --

09:12AM  1          THE COURT:  INVOKING 106, MR. WADE.

09:12AM  2          MR. WADE:  RULE OF COMPLETENESS.

09:12AM  3          THE COURT:  YES.

09:12AM  4          MR. LEACH:  I THINK A FAIR UNDERSTANDING OF WHAT

09:12AM  5  DR. DAS WAS SAYING HERE IS THAT WHEN I'M -- AS THE LAB

09:12AM  6  DIRECTOR, I'M COMPELLED TO LOOK AT ISSUES, AND WHEN I'M LOOKING

09:12AM  7  AT ISSUES I COULD GO EITHER WAY.  BUT ONCE I FIND THE ERROR, I

09:12AM  8  MUST VOID.  THAT'S THE TENOR OF WHAT THE COURT WILL HEAR.

09:12AM  9          THE COURT:  OKAY.  I APPRECIATE ONE AVENUE TO

09:12AM 10  RESOLVE THIS IS A VOIR DIRE OF THE WITNESS, BUT IT SEEMS LIKE

09:12AM 11  IT'S A FOUNDATIONAL QUESTION ALSO THAT AT LEAST YOU PUT

09:13AM 12  MR. LEACH ON NOTICE AND YOU PUT ME ON NOTICE ABOUT, AND THAT

09:13AM 13  MIGHT BE THE MOST EFFICIENT WAY TO GO.

09:13AM 14          MR. WADE:  I THINK WE STILL HAVE, YOUR HONOR, THE

09:13AM 15  PARTICULAR ASPECTS OF THE CMS REPORT.

09:13AM 16          THE COURT:  RIGHT.  I KNOW MR. LOOBY HAS BEEN

09:13AM 17  SCRATCHING HIS FEET BACK THERE AND HE WANTS TO GET UP HERE.

09:13AM 18          MR. WADE:  AND THE REDACTIONS OF THOSE LATER

09:13AM 19  EXHIBITS.

09:13AM 20          THE COURT:  YES.  WELL, THAT'S THE QUESTION THAT I

09:13AM 21  HAVE ABOUT THESE REDACTIONS.

09:13AM 22      MR. LOOBY, GOOD MORNING.

09:13AM 23          MR. LOOBY:  GOOD MORNING.  THANK YOU, YOUR HONOR.

09:13AM 24      SO YOUR HONOR WILL RECALL THAT THE COURT'S ORDER AT

09:13AM 25  DOCKET 989 ON THE DEFENSE'S PRETRIAL MOTIONS ORDERED THE

09:13AM 1    GOVERNMENT TO PROVIDE BOTH THE DEFENSE AND THE COURT WITH

09:13AM 2    ADVANCE NOTICE OF THE PORTIONS OF THE CMS REPORT THAT IT

09:13AM 3    INTENDED TO OFFER.

09:13AM 4         THE COURT:  IT DID THAT IN 1133.

09:14AM 5         MR. LOOBY:  YES.  AND I SUPPOSE WE GOT OUR NOTICE

09:14AM 6    LAST THURSDAY AT THE END OF COURT THAT THE ANSWER IS ALL OF IT,

09:14AM 7    TWO MONTHS LATER, AND THAT WAS KIND OF THE SUM AND SUBSTANCE OF

09:14AM 8    THE NOTICE.

09:14AM 9         AND THEN -- SO WHERE DOES THAT LEAVE US?

09:14AM 10        WE HAD PROPOSED REDACTIONS ON MULTIPLE GROUNDS, AND TWO OF

09:14AM 11   THEM, I THINK, REMAIN PARTICULARLY IMPORTANT TODAY, AND ONE OF

09:14AM 12   THEM IS RELATED TO THE TESTS NOT IN THE INDICTMENT AND BILL OF

09:14AM 13   PARTICULARS, AND THEN THE SECOND CATEGORY -- AND THAT'S

09:14AM 14   REDACTION CATEGORY A IN OUR PROPOSED REDACTIONS.

09:14AM 15        AND THAT PROPOSED REDACTIONS ARE AT 898-6, AND THE

09:14AM 16   PROPOSED REDACTIONS FOR DOUBLE HEARSAY WHICH IS CATEGORY B AT

09:14AM 17   THAT SAME DOCKET ENTRY.

09:14AM 18        SO THE GOVERNMENT, UNDER THE COURT'S PRETRIAL MOTION IN

09:14AM 19   LIMINE ORDER, HAS TO OFFER A PURPOSE OTHER THAN ACCURACY AND

09:15AM 20   RELIABILITY FOR EVIDENCE PERTAINING EXCLUSIVELY TO TESTS NOT AT

09:15AM 21   ISSUE IN THE INDICTMENT AND BILL OF PARTICULARS.

09:15AM 22        SEVERAL OF THE CMS REPORT CITATIONS FALL DIRECTLY INTO

09:15AM 23   THAT CATEGORY.

09:15AM 24        TO DATE, I MEAN, I MINED THE PLEADINGS AND THE ARGUMENTS

09:15AM 25   AND TRANSCRIPTS, AND I HAVE NOT HEARD A NONACCURACY AND

09:15AM 1    RELIABILITY RELATED ISSUE UNTIL TODAY WHEN I HEARD THAT IT'S

09:15AM 2    RELEVANT TO STATE OF MIND WHICH KIND OF IS NEW BECAUSE

09:15AM 3    PREVIOUSLY IT WAS TO BE ADMITTED FOR THE TRUTH AND RELATED TO

09:15AM 4    ACCURACY AND RELIABILITY.

09:15AM 5        BUT MY QUESTION WOULD BE STATE OF MIND AS TO WHAT.  IF A

09:15AM 6    CITATION IN A CMS REPORT RELATES TO SAY A PROFICIENCY TESTING

09:15AM 7    ISSUE ON AN ASSAY ON AN FDA APPROVED DEVICE THAT IS NOT

09:15AM 8    INVOLVED IN THE CASE, WHETHER OR NOT MS. HOLMES BECAME AWARE OF

09:15AM 9    THAT IN JANUARY 2016 WHEN THE REPORT WAS ISSUED, I DON'T SEE

09:16AM 10   HOW THAT BEARS ON HER STATE OF MIND AS IS RELEVANT TO THE CASE.

09:16AM 11       TO ME THIS IS -- THERE'S PULLED PORTIONS OF THIS REPORT

09:16AM 12   THAT ARE IRRELEVANT UNDER THE COURT'S ORDER, AND WE NEED TO

09:16AM 13   SQUARE THE ORDER ON THE BILL OF PARTICULARS AND THE ORDER

09:16AM 14   ADMITTING THE CMS REPORT.  THAT'S WHAT OUR PROPOSED REDACTIONS

09:16AM 15   IN AUGUST WERE MEANT TO DO.  WE HOPED IT WOULD START A DIALOGUE

09:16AM 16   OVER WHICH PORTIONS THE GOVERNMENT INTENDED TO OFFER.  IT

09:16AM 17   SOUNDS LIKE TODAY THEY HAVE A FEW PAGES PICKED OUT, AND THIS IS

09:16AM 18   THE FIRST THAT WE'RE HEARING ABOUT THAT.

09:16AM 19           THE COURT:  THESE ARE THE PAGES MR. LEACH IDENTIFIED

09:16AM 20   EARLIER YOU'RE REFERRING TO?

09:16AM 21       IS THAT RIGHT, MR. LOOBY?

09:16AM 22           MR. LOOBY:  YEAH.  AND I HEARD 45 TO 58.  I HAVE NOT

09:16AM 23   HAD A CHANCE TO REVIEW THOSE IN PARTICULAR.

09:16AM 24           THE COURT:  RIGHT.

09:16AM 25           MR. LOOBY:  BUT, OF COURSE, THE CMS REPORT IS

09:16AM 1      128 PAGES LONG.

09:16AM 2              THE COURT:  WELL, HE'S DONE YOU A FAVOR.  HE'S

09:16AM 3      REALLY CUT IT DOWN SIGNIFICANTLY.

09:16AM 4              MR. LOOBY:  YES.  I MEAN, I WILL BE INTERESTED TO

09:17AM 5      SEE WHAT THOSE ARE, AND, YOU KNOW, WHETHER OR NOT -- BUT ALSO,

09:17AM 6      MR. LEACH SAID THAT THEY BELIEVED THAT THE ENTIRE REPORT SHOULD

09:17AM 7      COME INTO EVIDENCE.  AND WE, OF COURSE, OBJECT TO THAT FOR THE

09:17AM 8      REASONS THAT WE'VE PREVIOUSLY STATED.

09:17AM 9              THE COURT:  SURE.  SO LET ME SAY -- IT'S A QUARTER

09:17AM 10     AFTER, AND WE'VE ASKED OUR JURY TO COME IN AT 9:30.  AND LET ME

09:17AM 11     JUST SAY, I'M GOING TO BE VERY MINDFUL OF TIMING BECAUSE I'D

09:17AM 12     LIKE TO KEEP US ALL ON TRACK HERE, AND WE'RE DOING A GOOD JOB

09:17AM 13     OF THAT.

09:17AM 14        I DO -- I HOPE WE CAN START AT 9:30, AND I THINK I SHOULD

09:17AM 15     GIVE YOU TIME TO REVIEW 45 THROUGH 58 TO SEE.

09:17AM 16        IT'S UNLIKELY THAT WE'LL GET TO THAT THIS MORNING,

09:17AM 17     MR. LEACH?  IS THAT FAIR?

09:17AM 18             MR. LEACH:  I'M NOT SURE HOW MUCH MR. WADE HAS WITH

09:17AM 19     DR. SAWYER.

09:17AM 20             THE COURT:  I THINK HE TOLD US ABOUT AN HOUR.

09:17AM 21             MR. LEACH:  I THINK AT SOME POINT AFTER OUR FIRST

09:17AM 22     BREAK IT WILL EMERGE.

09:17AM 23             THE COURT:  RIGHT.  SO WE MAY HAVE TO -- I DO WANT

09:17AM 24     TO GIVE YOU AN OPPORTUNITY TO REVIEW WHAT MR. LEACH HAS

09:17AM 25     SUGGESTED, AND MAYBE THAT WILL CULL SOME OF YOUR CONCERNS.

09:18AM 1        MR. LOOBY:  WELL, YOUR HONOR, I BELIEVE IT'S THE

09:18AM 2  GOVERNMENT'S INTENTION STILL TO ADMIT THE ENTIRETY OF THE

09:18AM 3  REPORT.  WHAT I HEARD IS THAT THEY WANTED TO ADMIT THE ENTIRETY

09:18AM 4  OF THE REPORT AND ONLY PUBLISH CERTAIN PORTIONS WITH DR. DAS.

09:18AM 5        SO I THINK REGARDLESS OF WHAT THESE PORTIONS ARE, AND I

09:18AM 6  FOR SURE DO WANT TO REVIEW THEM, AND I APPRECIATE THE

09:18AM 7  OPPORTUNITY FROM THE COURT TO DO THAT.

09:18AM 8        I THINK REGARDLESS OF THAT, I THINK THE ISSUE OF THE

09:18AM 9  ADMISSIBILITY OF THE REPORT WHOLESALE IS STILL GOING TO BE AN

09:18AM 10 ISSUE AND SO WE CAN TAKE THAT UP, YOU KNOW, WHENEVER THE COURT

09:18AM 11 BELIEVES IT'S MOST EFFICIENT.

09:18AM 12       AND THEN THERE ARE OTHER -- THERE ARE TWO OTHER ISSUES

09:18AM 13 THAT I WAS HOPING TO ADDRESS WITH THE COURT THIS MORNING, AND

09:18AM 14 THEY RELATE TO GOVERNMENT EXHIBITS -- AND SO I'LL PREVIEW THEM

09:18AM 15 QUICKLY.

09:18AM 16       THE COURT:  SURE.

09:18AM 17       MR. LOOBY:  THEY RELATE TO GOVERNMENT EXHIBITS THAT

09:18AM 18 RELATED TO CMS.  THESE ARE IDENTIFIED IN MS. HOLMES'S NOTICE

09:18AM 19 FROM YESTERDAY AT 1134.

09:19AM 20       ONE OF THEM IS 5274, AND THAT IS A SEPTEMBER 26TH DRAFT

09:19AM 21 CMS DOCUMENT ATTACHED IN AN EMAIL FROM A THERANOS LAB DIRECTOR,

09:19AM 22 LISA HELFEND, TO DR. DAS.

09:19AM 23       SO WE HAVE OBJECTIONS TO THAT COMING INTO EVIDENCE.

09:19AM 24       AND THEN THE OTHER BUCKET OF EXHIBITS, AND THEY CAN BE

09:19AM 25 ADDRESSED TOGETHER, ARE ALSO FLAGGED IN OUR NOTICE FROM

09:19AM 1     YESTERDAY, AND THOSE ARE GOVERNMENT EXHIBITS 3144, 4943, 5257,

09:19AM 2     5260, 5471.

09:19AM 3          AND THESE COLLECTIVELY ARE THE DOWNSTREAM CORRESPONDENCE

09:19AM 4     BETWEEN THERANOS AND CMS RESPONDING TO THE JANUARY 2016 REPORT.

09:19AM 5     THESE DOCUMENTS HAVE SEVERAL ISSUES THAT ARE KIND OF -- THEY

09:19AM 6     SHARE IN COMMON WITH THE CMS REPORT BECAUSE THE CMS REPORT

09:19AM 7     ADDRESSES SO MANY TESTS NOT AT ISSUE AND LAB PRACTICES RELATING

09:20AM 8     TO TESTS NOT AT ISSUE, IT'S OUR POSITION THAT THE CMS REPORT

09:20AM 9     SHOULD BE REDACTED FOR THOSE REASONS, BUT ALSO THOSE REDACTIONS

09:20AM 10    SHOULD CARRY THROUGH TO THE PORTIONS OF THOSE LETTERS THAT

09:20AM 11    SPECIFICALLY ADDRESS THOSE SAME DEFICIENCIES.

09:20AM 12         SO EACH OF THE LETTERS KIND OF MARCHES THROUGH EACH

09:20AM 13    DEFICIENCY AND SAYS, YOU KNOW, THIS IS WHAT CMS SAID, THIS IS

09:20AM 14    THERANOS'S RESPONSE, THIS IS CMS'S RESPONSE.  SO IT IS LIKE A

09:20AM 15    SERIATIM BACK AND FORTH, AND SO THEY JUST KIND OF ADD ON TO

09:20AM 16    EACH OTHER.

09:20AM 17         AND THEN THEY ALSO POSE SOME RELEVANCE AND 403 ISSUES THAT

09:20AM 18    I THINK ARE UNIQUE TO THESE LATER LETTERS THAT AREN'T SHARED

09:20AM 19    WITH THE CMS REPORT AND AREN'T COVERED BY OUR PRIOR

09:20AM 20    CONVERSATIONS, ALTHOUGH THEY ARE RELATED TO OUR PRIOR

09:20AM 21    CONVERSATION ABOUT THE JULY 7TH LETTER THAT YOUR HONOR

09:20AM 22    MENTIONED AT 3217 WITH MR. LEACH AND MR. WADE, WHICH IS

09:20AM 23    ACTUALLY AN EXHIBIT THAT THE GOVERNMENT HAS NOT NOTICED AN

09:21AM 24    INTENT TO INTRODUCE THROUGH DR. DAS.

09:21AM 25              THE COURT:  3217?

09:21AM 1          MR. LOOBY:  YEAH.  BUT A LOT OF THE SAME ISSUES THAT

09:21AM 2     WE DISCUSSED WITH THAT ARE SHARED WITH THIS OTHER

09:21AM 3     CORRESPONDENCE WHICH IS, YOU KNOW, THIS ISN'T EVIDENCE OF CMS'S

09:21AM 4     FINDINGS NECESSARILY, IT'S AN ONGOING DIALOGUE ABOUT THE

09:21AM 5     ADEQUACY OF THERANOS'S RESPONSES.

09:21AM 6          I HAVEN'T HEARD A RELEVANCE THEORY THAT WOULD SWEEP THOSE

09:21AM 7     IN.  I DON'T KNOW PRECISELY WHY THAT IS RELEVANT.

09:21AM 8          BUT IT DOES POSE UNIQUE 403 CONCERNS BECAUSE OF SOME OF

09:21AM 9     THE LANGUAGE THAT WE REVIEWED TOGETHER IN REJECTING THERANOS'S

09:21AM 10    RESPONSES GOES TO WORDS LIKE CREDIBLE, YOU KNOW, WHICH IS THE

09:21AM 11    LINGO OF THE REGULATIONS, BUT HERE IN THE CONTEXT OF A CRIMINAL

09:21AM 12    CASE POSES SOME UNIQUE ISSUES.

09:21AM 13         AND THEN THERE ARE ALSO 702 ISSUES KIND OF WRAPPED UP IN

09:21AM 14    SOME OF THESE REPORTS.  AND IN PARTICULAR EXHIBIT 4943 ARE A

09:22AM 15    COMPILATION OF PATIENT IMPACT ASSESSMENTS THAT ARE COMPILED BY

09:22AM 16    THERANOS WITH DR. DAS'S INVOLVEMENT, AND THEY MARCH THROUGH ON

09:22AM 17    AN ASSAY-BY-ASSAY BASIS, YOU KNOW, HERE ARE SOME OF THE ISSUES

09:22AM 18    THAT WE SPOTTED, AND THEY GET PRETTY TECHNICAL PRETTY QUICK,

09:22AM 19    YOU KNOW, GOING THROUGH TRENDS IN QC DATA ON SPECIFIC DATES,

09:22AM 20    CALCULATIONS BASED OFF OF THAT, EXTRAPOLATIONS AND OPINIONS

09:22AM 21    ABOUT WHAT THAT DATA MEANS.

09:22AM 22         DR. DAS HAS NOT BEEN NOTICED AS AN EXPERT TO WALK THE JURY

09:22AM 23    THROUGH THOSE.  SEVERAL OF THOSE PATIENT IMPACT ASSESSMENTS

09:22AM 24    RELATES TO TESTS THAT ARE NOT AT ISSUE IN THE INDICTMENT SO

09:22AM 25    THEY HAVE THAT SAME FLAW AS, YOU KNOW, PORTIONS OF THE CMS

09:22AM 1    REPORT.

09:22AM 2         SO THERE'S A LOT OF THORNY ISSUES, AND I KNOW YOUR HONOR

09:22AM 3    SAW WHEN YOU GOT THE PLEADINGS YESTERDAY, IT'S BIG DOCUMENTS

09:22AM 4    THAT THE GOVERNMENT IS PUTTING IN AND CUMULATIVELY THE

09:22AM 5    IMPRESSION THAT THESE GIVE, EVEN BEYOND THE PARTICULARS, WHICH

09:23AM 6    ARE PRETTY TECHNICAL AND PREJUDICIAL IN THEIR OWN, IS EVIDENCE

09:23AM 7    OF A LOT OF CIVIL KIND OF REGULATORY VIOLATIONS THAT ARE BEING

09:23AM 8    KIND OF PUSHED INTO THE CASE PERHAPS WITHOUT AN ADEQUATE

09:23AM 9    NARRATION OF WHAT IT ALL MEANS TO BE PUT IN FRONT OF THE JURY.

09:23AM 10        AND WE HAVE SERIOUS CONCERNS ABOUT THE UNFAIR PREJUDICE

09:23AM 11   FROM THEM.

09:23AM 12             THE COURT:  WELL, THANK YOU.

09:23AM 13        YOUR COLLEAGUE SUGGESTS A PROPOSED JURY INSTRUCTION THAT

09:23AM 14   BE READ CONTEMPORANEOUS WITH ANY OF THE CIVIL REGULATIONS THAT

09:23AM 15   COME IN, OR CERTAINLY HE'S GOING TO ASK.  I'M SURE YOUR TEAM IS

09:23AM 16   GOING TO ASK FOR A SIMILAR FINAL INSTRUCTION THAT TALKS ABOUT

09:23AM 17   THE JURY NOT BEING ABLE TO USE ANY CIVIL VIOLATIONS OR

09:23AM 18   REGULATIONS AT ALL IN THEIR DELIBERATION AS TO WHETHER OR NOT

09:23AM 19   YOUR CLIENT HAS VIOLATED ANY CRIMINAL STATUTE, AND I THINK IT

09:23AM 20   PROBABLY WOULD BE APPROPRIATE TO INCLUDE SOME TYPE OF

09:24AM 21   INSTRUCTION IN THE FINAL INSTRUCTIONS TO THAT, TO THAT EXTENT

09:24AM 22   JUST FOR PROPHYLACTIC MEASURES.

09:24AM 23        MR. LEACH, DID YOU WANT TO COMMENT?

09:24AM 24             MR. LEACH:  I HAVEN'T HAD A CHANCE TO FULSOMELY

09:24AM 25   REVIEW THE DEFENSE'S PROPOSED INSTRUCTION, BUT I CAN SAY NOW I

09:24AM 1    DON'T THINK IT SHOULD BE GIVEN IN THE MOMENT, AND THE COURT

09:24AM 2    SHOULD HEAR FULSOME BRIEFING FROM THE PARTIES ABOUT THE

09:24AM 3    PROPRIETARY OF THAT AT THE END OF THE DAY.

09:24AM 4        WITH RESPECT TO THE CMS REPORT, I DON'T MEAN TO ADD TO

09:24AM 5    MR. LOOBY'S BURDEN, BUT I OVERLOOKED ONE ADDITIONAL PAGE OF THE

09:24AM 6    REPORT, WHICH IS PAGE 7 THROUGH 8, AND THESE ARE THE TRIAL

09:24AM 7    EXHIBIT PAGES, BUT THOSE ARE THE ONLY PAGES I INTEND TO DISPLAY

09:24AM 8    WITH DR. DAS.

09:24AM 9        I THINK THE DEFENSE WANTS -- YOU KNOW, THE DEFENSE

09:24AM 10   PROFFERED DOCUMENTS FROM THE MARCH TIME PERIOD WITH GLOWING

09:25AM 11   REVIEWS ABOUT THE TECHNOLOGY AT A HIGH LEVEL, THE NANOTAINER

09:25AM 12   WORKS, WE CAN TEST SMALL SAMPLES RELIABLY.  THESE ARE AT 7653

09:25AM 13   AND 10512.

09:25AM 14       AND IT CAN'T BE A RESPONSE THAT YOU CAN SHOW THE

09:25AM 15   DEFENDANT'S STATE OF MIND WITH THESE PITHY GLOWING REVIEWS BUT

09:25AM 16   NOT THE GRANULAR DETAIL OF WHAT SHE'S GETTING FROM THE CLIA

09:25AM 17   LAB.

09:25AM 18       IT GOES TO HOW SERIOUSLY SHE TOOK THESE ISSUES, IT GOES TO

09:25AM 19   HER CONTROL OF THE LAB, IT GOES TO WHETHER SHE LEAPT INTO

09:25AM 20   ACTION.  AND, YES, SEVERAL OF THEM ARE TECHNICAL AND OF A

09:25AM 21   VARIETY THAT REQUIRES SOME EXPLANATION FROM THE WITNESS, BUT

09:25AM 22   THEY WANT TO PRESENT IT AT A HIGH LEVEL AND AVOID ANY

09:25AM 23   GRANULARITY ON THE ARGUMENT THAT THE GRANULARITY SOMEHOW

09:25AM 24   PREJUDICES THEM.

09:25AM 25       SO THE WHOLE THING IS RELEVANT TO HER SPEED.  IF DOCUMENTS

09:25AM 1    GOING TO HER IN MARCH OF 2016 ARE RELEVANT TO HER STATE OF

09:25AM 2    MIND, THIS DOCUMENT IS RELEVANT TO HER STATE OF MIND.

09:25AM 3        WITH RESPECT TO -- I DO INTEND TO STICK TO ASSAYS THAT ARE

09:26AM 4    IN THE BILL OF PARTICULARS.  WE'VE NOTICED, YOU KNOW, FOR THE

09:26AM 5    POSSIBILITY OF REFRESHING OR IF THE DEFENSE GOES THERE, CERTAIN

09:26AM 6    EXHIBITS.  SO I DON'T INTEND TO PUT IN ALL OF THE LETTERS BACK

09:26AM 7    AND FORTH BETWEEN CMS AND THERANOS, BUT I WOULD SAY THESE

09:26AM 8    AREN'T EXPERT OPINIONS.  THESE ARE STATEMENTS BY THERANOS

09:26AM 9    AUTHORIZED BY MS. HOLMES TO TRY TO EXPLAIN WHAT HAPPENED.

09:26AM 10   THEY'RE CLEARLY RELEVANT.

09:26AM 11       THE ONE I DO INTEND TO INTRODUCE, YOUR HONOR, IS 493,

09:26AM 12   PAGE 9, WHICH IS A PATIENT IMPACT ASSESSMENT RELATING TO THE

09:26AM 13   EDISON DEVICE.  THE EDISON DEVICE IS IN THE BILL OF

09:26AM 14   PARTICULARS.

09:26AM 15       THE COURT HAS HEARD LOTS OF TESTIMONY ABOUT THE EDISON

09:26AM 16   DEVICE.  AND THIS IS A STATEMENT THAT GOES TO CMS IN AN ATTEMPT

09:26AM 17   TO EXPLAIN WHETHER THE DEVICE WAS OR WAS NOT WORKING IN THE WAY

09:27AM 18   IT WAS SUPPOSED TO AND WHAT THE QUALITY SYSTEMS WERE OR WEREN'T

09:27AM 19   DOING.  IT'S AN ADMISSION BY MS. HOLMES AND THERANOS.  IT'S NOT

09:27AM 20   AN EXPERT OPINION.  NONE OF -- THERE'S NO ISSUES WITH RESPECT

09:27AM 21   TO OTHER ASSAYS, AND THIS IS VERY MUCH A PART OF THE

09:27AM 22   GOVERNMENT'S PROOF WITH DR. DAS.

09:27AM 23       BUT I THINK THE OTHER LENGTHY BACK AND FORTH, I URGE THE

09:27AM 24   COURT TO WAIT AND SEE, BECAUSE I DON'T THINK AT THE END OF THE

09:27AM 25   DAY THE GOVERNMENT IS GOING TO NEED THEM.

09:27AM  1          MR. LOOBY:  AND JUST ONE POINT ON THE ISSUE OF THE

09:27AM  2     ENTIRETY OF THE REPORT BEING RELEVANT TO STATE OF MIND.  AND

09:27AM  3     THE GOVERNMENT IS MUSHING TOGETHER REPRESENTATIONS AND

09:27AM  4     STATEMENTS AND FACTS ABOUT THE TECHNOLOGY WITH THE FINDINGS OF

09:27AM  5     THE CMS REPORT, WHICH RELATE TO LAB PRACTICES, AND WHICH COVER

09:27AM  6     THE WHOLE GAMUT OF THE LAB WHICH, OF COURSE, INCLUDED

09:27AM  7     TECHNOLOGY THAT WASN'T MANUFACTURED BY THERANOS.

09:27AM  8          AND SO THERE ISN'T A ONE-TO-ONE CONNECTION BETWEEN KIND OF

09:28AM  9     THE ISSUES IN THE CASE THAT ARE ACTUALLY IN THE CASE AND THE

09:28AM  10    ENTIRETY OF THE CMS REPORT.

09:28AM  11         IT DOES SOUND LIKE THE GOVERNMENT, IN PREPARING ITS

09:28AM  12    WITNESSES, HAS LOCATED THE SPECIFIC D TAGS IN THE CMS REPORT

09:28AM  13    THAT IT WOULD LIKE TO HIGHLIGHT, AND IT HAS LOCATED THE

09:28AM  14    PARTICULAR PATIENT IMPACT ASSESSMENT, BUT IT'S PROPOSED TO PUT

09:28AM  15    INTO EVIDENCE STACKS OF PAPERS WHERE THESE ARE JUST A FEW PAGES

09:28AM  16    OF THEM.

09:28AM  17         AND I THINK IT PAYS TO BE PRECISE AND TO LOOK AT THE

09:28AM  18    ENTIRETY OF THESE REPORTS AND WHAT THEY SAY AND DON'T SAY

09:28AM  19    BEFORE THEY'RE PUT INTO EVIDENCE AND GO BACK WITH THE JURY FOR

09:28AM  20    DELIBERATIONS.

09:28AM  21         SO, YOU KNOW, I WOULD, I WOULD -- WE MAINTAIN OUR

09:28AM  22    OBJECTION TO PORTIONS OF THE REPORT OTHER THAN THOSE, YOU KNOW,

09:28AM  23    THAT ARE -- WE MAINTAIN OUR OBJECTIONS OF CATEGORIES A AND B IN

09:28AM  24    OUR PROPOSED REDACTIONS AT 898-6.  WE STILL MAINTAIN THAT THOSE

09:29AM  25    ARE APPROPRIATE.

09:29AM 1     AND JUST ONE WORD ON THE DOUBLE HEARSAY ISSUE, WHICH I

09:29AM 2  DON'T BELIEVE HAS BEEN SOLVED.  THE GOVERNMENT'S ARGUMENT, AS I

09:29AM 3  UNDERSTAND IT, IS ESSENTIALLY BECAUSE THESE LAB STAFF WERE

09:29AM 4  INTERVIEWED ARE WHAT THEY CALL HIGH LEVEL LAB STAFF.

09:29AM 5     I MEAN, IF YOU GO TO THE PRESENTATION THAT WAS IN EVIDENCE

09:29AM 6  THAT WAS GIVEN AT THE START OF THE CMS INSPECTION, I MEAN, I

09:29AM 7  THINK IT'S MORE FAIR TO CHARACTERIZE THEM AS MID LEVEL.

09:29AM 8     MS. HOLMES -- THERE HAS NOT BEEN TESTIMONY OR EVIDENCE

09:29AM 9  THAT MS. HOLMES HAD DAY-TO-DAY SUPERVISION OF THE LAB.  THERE

09:29AM 10 HAS NOT BEEN TESTIMONY FROM THESE PARTICULAR WITNESSES, THESE

09:29AM 11 PARTICULAR LAB STAFF THAT MS. HOLMES CONTROLLED THEIR

09:29AM 12 ACTIVITIES.

09:29AM 13    THERE HASN'T BEEN A FOUNDATION TO CONNECT AN AGENCY

09:29AM 14 RELATIONSHIP BETWEEN MS. HOLMES AND THESE PARTICULAR WITNESSES.

09:29AM 15    THE COURT HAD REJECTED THE GOVERNMENT'S EFFORT TO, TO LUMP

09:30AM 16 IN ALL THERANOS EMPLOYEES AS MS. HOLMES'S AGENTS.  IT SEEMS

09:30AM 17 HERE WE'RE JUST KIND OF TRYING TO LOWER THE BAR DOWN THE

09:30AM 18 CORPORATE HIERARCHY, THAT'S THE SENSE OF THE ARGUMENT THAT I

09:30AM 19 GET, BUT THAT'S NOT PARTICULAR ENOUGH TO FORM THE AGENCY LINK.

09:30AM 20 SO I DON'T THINK THEY'VE CLEARED THAT HURDLE YET.

09:30AM 21         THE COURT:  AND YOU'RE REFERENCING THE COURT'S 798,

09:30AM 22 THE COURT'S ORDERS AND THE MILS WHICH WAS IN MAY, I THINK

09:30AM 23 MAY 22ND OF THIS YEAR?

09:30AM 24         MR. LOOBY:  CORRECT, YEAH.

09:30AM 25         THE COURT:  AND NOW -- OF COURSE WE'VE HAD SOME

09:30AM 1    TESTIMONY. WE'VE HAD TEN WEEKS OF TESTIMONY AND EVIDENCE.

09:30AM 2    PART OF THAT TESTIMONY, IF I RECALL, HAS BEEN WITNESSES,

09:30AM 3    DIFFERENT WITNESSES WHO TESTIFY ABOUT YOUR CLIENT'S CONTROL OF

09:30AM 4    THE LAB, AND WHO IS ALLOWED AND WHO ISN'T, CERTAIN PERSONNEL

09:30AM 5    THAT WERE PERMITTED TO GO IN THERE.

09:30AM 6        AND MY SENSE FROM THE GOVERNMENT'S PLEADING IS THAT THERE

09:31AM 7    IS A STRONG INFERENCE THAT ANYBODY WHO WAS THERE FOR THE CMS

09:31AM 8    EVENT, WHICH WAS AN IMPORTANT EVENT IN THE LIFE OF THE COMPANY,

09:31AM 9    WAS THERE WITH KNOWLEDGE AND CONSENT OF THE CEO OF THE COMPANY

09:31AM 10   SUCH THAT THAT DECISION WAS MADE TO ALLOW THEM TO BE THERE FOR

09:31AM 11   THAT IMPORTANT EVENT.

09:31AM 12       AND I THINK WHAT MR. LEACH, I THINK WHAT I AM INFORMED

09:31AM 13   FROM HIS PLEADINGS, SUGGESTS IT'S A FAIR INFERENCE, IF NOT

09:31AM 14   CIRCUMSTANTIAL EVIDENCE, THAT THEY WERE THERE WITH HER

09:31AM 15   IMPRIMATUR.

09:31AM 16           MR. LOOBY:  WELL, THE TECHNICAL SUPERVISOR, THE

09:31AM 17   GENERAL SUPERVISOR, AND THE QA/QC MANAGER OF THE THERANOS CLIA

09:31AM 18   LABORATORY, SO THEY WOULD BE OBLIGATED AND EXPECTED TO BE

09:31AM 19   THERE TO ANSWER CMS -- THEY WORK IN THE LAB, AND THE CMS

09:31AM 20   INSPECTION IS AN INSPECTION OF THE LAB.

09:31AM 21       SO I THINK IT'S NOT THE CORRECT QUESTION TO ASK WAS --

09:31AM 22   WERE THEY THERE WITH MS. HOLMES'S PERMISSION?  OF COURSE THEY

09:32AM 23   ARE EMPLOYEES OF THERANOS.

09:32AM 24       BUT THE QUESTION IS WHETHER OR NOT MS. HOLMES -- THEY'RE

09:32AM 25   AGENTS OF MS. HOLMES AS THEY WERE ACTING ON THAT DAY?

09:32AM 1       AND I THINK THERE HASN'T BEEN TESTIMONY ABOUT MS. HOLMES

09:32AM 2   AND A PRESENCE IN OR INVOLVEMENT IN THE LAB IN THE 2014, 2015

09:32AM 3   PERIOD.  I MEAN, THE LAB DIRECTOR AT THE TIME TESTIFIED THAT HE

09:32AM 4   HADN'T MET MS. HOLMES.  SO I THINK THERE'S A GAP THERE.

09:32AM 5       THE COURT:  OKAY.  MR. LEACH, DO YOU WANT TO COMMENT

09:32AM 6   ON THAT?

09:32AM 7       MR. LEACH:  THERE ARE TEXT MESSAGES, YOUR HONOR,

09:32AM 8   WHERE MS. HOLMES IS PRAYING DURING THE SEPTEMBER 2015 CMS

09:32AM 9   EXAMINATION.

09:32AM 10      THE DEFENSE -- OR AFTER THE COURT DENIED A MOTION

09:32AM 11  IN LIMINE TO EXCLUDE A DOCUMENT THAT MR. BALWANI HANDED TO CMS

09:32AM 12  DURING THE INSPECTION, AFTER THE COURT DENIED THAT MOTION, THE

09:32AM 13  DEFENSE INTRODUCED THAT DOCUMENT THROUGH DR. DHAWAN.

09:32AM 14      THERE'S AMPLE EVIDENCE THAT MS. HOLMES WAS AWARE OF AND

09:33AM 15  DIRECTING AND SENDING OUT AGENTS FOR THE PURPOSE OF THE CMS

09:33AM 16  INSPECTION, WHICH WAS, AS THE COURT NOTES, AN IMPORTANT EVENT

09:33AM 17  IN THE COMPANY.

09:33AM 18      I DON'T SEE A DOUBLE HEARSAY PROBLEM HERE, AND I DON'T

09:33AM 19  HAVE ANYTHING MORE TO ADD THAN WHAT WE HAVE IN OUR --

09:33AM 20      THE COURT:  YOU SUGGEST THAT AT LEAST FOR PURPOSES

09:33AM 21  OF OVERCOMING A HEARSAY OBJECTION THIS -- THAT TESTIMONY OR

09:33AM 22  THOSE OBSERVATIONS ARE ADMISSIBLE UNDER AN AGENCY THEORY?

09:33AM 23      MR. LEACH:  YES, YOUR HONOR.

09:33AM 24      THE COURT:  OKAY.  OKAY.

09:33AM 25      MR. LOOBY:  YOUR HONOR, UNDER THE TEST FOR AGENCY OF

09:33AM 1    AUTHORIZATION AND CONTROL OF THE EMPLOYEES'S ACTIONS, I DON'T

09:33AM 2    THINK THERE IS A FOUNDATION THERE.  I THINK WHAT MR. LEACH JUST

09:33AM 3    DESCRIBED IS MS. HOLMES AWARENESS OF THE CMS INSPECTION, HER

09:33AM 4    HOPES THAT IT WOULD GO WELL, HER PRAYERS THAT IT WOULD GO WELL.

09:33AM 5         I MEAN, THAT DOESN'T CONNECT TO WHETHER OR NOT THESE

09:33AM 6    PARTICULAR LAB EMPLOYEES RESPONDED TO MS. HOLMES, REPORTED TO

09:34AM 7    MS. HOLMES, INTERACTED WITH MS. HOLMES, THAT SHE AUTHORIZED

09:34AM 8    SPECIFIC REPRESENTATIONS THAT THEY WOULD HAVE MADE DURING THE

09:34AM 9    INSPECTION.

09:34AM 10        THEY'RE EMPLOYEES OF THE LAB, AND THEY WERE BEING

09:34AM 11   INTERVIEWED AS EMPLOYEES OF THE LAB.

09:34AM 12             THE COURT:  OF THERANOS?

09:34AM 13             MR. LOOBY:  YES.

09:34AM 14             THE COURT:  MR. LEACH?

09:34AM 15             MR. LEACH:  I HAVE NOTHING FURTHER, YOUR HONOR.

09:34AM 16             THE COURT:  OKAY.  I'M INFORMED THAT IT'S GOING TO

09:34AM 17   TAKE US TEN MINUTES TO REBOOT OUR SYSTEM TO ALLEVIATE SOME OF

09:34AM 18   THE PROBLEMS THAT WE'VE HAD THIS MORNING, ELECTRICAL PROBLEMS.

09:34AM 19        I'LL STEP DOWN, AND WE'LL GET THAT STARTED.

09:34AM 20        I THINK WE'RE GOING TO BREAK AT ABOUT 11:00 O'CLOCK AND

09:34AM 21   THEN AGAIN AT 1:30.  AND I THINK I TOLD YOU I HAVE SOMETHING

09:34AM 22   FROM 12:30 TO 1:00.  SO WE'LL TRY TO INCORPORATE ALL OF THAT IN

09:34AM 23   TODAY.

09:34AM 24        AND I THINK WE'RE GOING UNTIL 4:00 TODAY.

09:34AM 25             MR. LOOBY:  AND, YOUR HONOR, FOR EXHIBIT 5274, I'M

09:34AM  1    NOT SURE -- THIS IS THE SEPTEMBER 2016 DRAFT CMS DOCUMENT.  I'M

09:35AM  2    NOT SURE IF THE GOVERNMENT INTENDS TO OFFER THAT INTO EVIDENCE.

09:35AM  3        BUT EITHER AT A BREAK OR AT A SIDE-BAR WE MAY WANT TO

09:35AM  4    DEVOTE A FEW MINUTES TO DISCUSSING THAT.

09:35AM  5            THE COURT:  OKAY.  THANK YOU.  OKAY.

09:35AM  6        ANYTHING FURTHER?

09:35AM  7            MR. LEACH:  THANK YOU, YOUR HONOR.  NOT FROM THE

09:35AM  8    GOVERNMENT.

09:35AM  9            MR. WADE:  THANK YOU, YOUR HONOR.

09:35AM 10            THE CLERK:  COURT IS IN RECESS.

09:35AM 11        (RECESS FROM 9:35 A.M. UNTIL 11:11 A.M.)

11:11AM 12        (JURY IN AT 11:11 A.M.)

11:11AM 13            THE COURT:  ALL RIGHT.  THANK YOU.  WE ARE ON THE

11:11AM 14    RECORD IN THE HOLMES MATTER.  ALL COUNSEL ARE PRESENT.

11:11AM 15    MS. HOLMES IS PRESENT.

11:11AM 16        OUR JURY IS PRESENT.

11:11AM 17        GOOD AFTERNOON, LADIES AND GENTLEMEN.

11:11AM 18        (LAUGHTER.)

11:11AM 19            THE COURT:  I WANT TO TELL YOU, WE'VE HAD SOME

11:11AM 20    TECHNICAL PROBLEMS, AND OUR VIDEO SYSTEM IS COMPROMISED.  YOUR

11:11AM 21    SCREENS WILL NOT BE WORKING.  THE SCREENS IN FRONT OF ALL OF US

11:11AM 22    ARE NOT WORKING.

11:11AM 23        WE HAVE, DURING THE BREAK, COUNSEL HAVE TRIED TO BE

11:11AM 24    EFFICIENT AND GOOD AND TRY TO WORK OUT COMPROMISES.  WHAT YOU

11:12AM 25    SEE ON THE SCREEN IN FRONT OF YOU IS THE DEVICE THAT IS

11:12AM 1    PROJECTING ON THE WALL. AND AFTER DOING VARIOUS TESTING, I

11:12AM 2    THINK THE PARTIES HAVE AGREED THAT THIS IS PROBABLY THE BEST

11:12AM 3    THAT WE'LL BE ABLE TO DO TODAY.

11:12AM 4        I'M INFORMED THAT TO PROPERLY CORRECT THE ISSUE, WE WILL

11:12AM 5    NEED TO SHUT THE SYSTEM DOWN, AND THEY'RE GOING TO HAVE TO DO

11:12AM 6    THAT AT THE END OF TODAY.

11:12AM 7        SO WHAT I WOULD LIKE TO DO TODAY, AFTER I ASK YOU A

11:12AM 8    QUESTION ABOUT YOUR WEEKENDS AND WHETHER OR NOT YOU'VE HAD AN

11:12AM 9    OCCASION TO SEE ANYTHING OR TALK TO ANYONE OR COME ACROSS

11:12AM 10   ANYTHING TO DO WITH THIS CASE, WHAT WE WILL DO IS TURN THE

11:12AM 11   LIGHTS DOWN, AND WE'VE THOUGHT ABOUT TURNING SOME OF THESE

11:12AM 12   LIGHTS OFF SUCH THAT THIS SCREEN CAN BE MORE VISIBLE.

11:12AM 13       AND WHAT I'D LIKE TO DO IS TO ASK YOU TO LOOK AT THIS AND

11:12AM 14   LOOK AT OUR SCREEN HERE, AND TELL ME IF THIS PRESENTS ANY

11:13AM 15   PROBLEMS AS FAR AS VIEWING ANY OF THE EXHIBITS.

11:13AM 16       SO THAT'S WHAT WE'RE GOING TO DO FIRST BEFORE WE RESUME

11:13AM 17   TESTIMONY.

11:13AM 18       SO AS TO MY QUESTION AND THE ADMONITION, HAS ANYONE COME

11:13AM 19   ACROSS ANYTHING, DISCUSSED WITH ANYONE, HEARD, READ, OR

11:13AM 20   LISTENED TO ANYTHING ABOUT THIS CASE SUCH THAT YOU THINK YOU

11:13AM 21   SHOULD INFORM ME?

11:13AM 22       IF SO, PLEASE RAISE YOUR HANDS.

11:13AM 23       I SEE NO HANDS.

11:13AM 24       THANK YOU VERY MUCH AGAIN.

11:13AM 25       SO WHAT WE'LL DO NOW, COUNSEL, WE'LL TURN DOWN THE LIGHTS

11:13AM  1      TO A LEVEL THAT YOU AGREED THAT WE'D LOOK AT, AND THEN I'LL ASK

11:13AM  2      THE JURORS WHETHER OR NOT THEY'RE ABLE TO SEE THE EXHIBITS.

11:13AM  3          MS. KRATZMANN.

11:13AM  4              THE CLERK:  YES, YOUR HONOR.

11:13AM  5          (PAUSE IN PROCEEDINGS.)

11:13AM  6              THE COURT:  I'LL GIVE THE JURORS A COUPLE OF MINUTES

11:13AM  7      TO LOOK AT THAT.

11:13AM  8          DOES THAT PRESENT ANYONE ANY ISSUE TO SEE AND UNDERSTAND,

11:13AM  9      TO READ AND COMPREHEND AT LEAST THIS DOCUMENT THAT WE HAVE

11:14AM 10      DISPLAYED HERE AS A SAMPLE?  IF SO, IF THAT'S A PROBLEM, IF YOU

11:14AM 11      COULD PLEASE RAISE YOUR HAND.

11:14AM 12          AND THIS IS IMPORTANT.  IF YOU'RE NOT ABLE TO SEE THIS,

11:14AM 13      THEN WE'LL HAVE TO DO SOMETHING ELSE.  IT'S IMPORTANT THAT THE

11:14AM 14      JURY BE ABLE TO SEE AND FOLLOW THE EXHIBITS AS THE TESTIMONY IS

11:14AM 15      GIVEN.

11:14AM 16          YES.

11:14AM 17              JUROR:  NO, I'M GOOD.

11:14AM 18              THE COURT:  THAT'S A THUMBS UP?

11:14AM 19              JUROR:  YOUR HONOR, IF I COULD RETURN TO THE ROOM

11:14AM 20      AND GET A PAIR OF GLASSES, I WILL BE ABLE TO SEE THAT.

11:14AM 21              THE COURT:  WHY DON'T WE DO THAT.  AND THANK YOU FOR

11:14AM 22      THAT.

11:16AM 23          (PAUSE IN PROCEEDINGS.)

11:16AM 24              THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT

11:16AM 25      THAT OUR JUROR HAS RETURNED WITH GLASSES.

11:16AM 1          IS THAT WORKING OKAY?

11:16AM 2              JUROR:  YES.

11:16AM 3              THE COURT:  ALL RIGHT.

11:16AM 4      IS THERE ANYONE HAVING A PROBLEM WITH THIS, NOT JUST

11:16AM 5  VIEWING THIS, BUT ANYTHING ABOUT THE LIGHTING IN THE COURTROOM

11:16AM 6  THAT WILL CAUSE A JUROR ANY IMPEDIMENT AS TO BE ABLE TO FOLLOW

11:16AM 7  THE EVIDENCE, BOTH THE SPOKEN EVIDENCE AS WELL AS THE VISUAL

11:16AM 8  EVIDENCE?

11:16AM 9      DOES ANYONE FEEL THAT THE CURRENT CONDITION WILL NOT SERVE

11:16AM 10  THEM THE OPPORTUNITY TO ACCOMPLISH THAT?

11:16AM 11      IF SO, RAISE YOUR HAND.

11:16AM 12      I SEE NO HANDS.

11:16AM 13      OKAY.  ALL RIGHT.  THANK YOU.

11:16AM 14      LET ME APOLOGIZE, LADIES AND GENTLEMEN.  I JUST WANT TO

11:16AM 15  BE -- I'M VERY EMBARRASSED THAT OUR COURTROOM HAS HAD THESE

11:16AM 16  PROBLEMS.  WE HAD WATER OUTAGES TWO WEEKS AGO AND NOW OUR

11:16AM 17  SYSTEM IS, FOR SOME REASON, NOT FUNCTIONING.  I APOLOGIZE TO

11:17AM 18  YOU AS MEMBERS OF THE PUBLIC AS PART OF THIS TRIAL, AND COUNSEL

11:17AM 19  AND ALL OF THE PARTIES HERE.

11:17AM 20      I'M SORRY, THIS IS NOT SUPPOSED TO HAPPEN.  WE SHOULD NOT

11:17AM 21  HAVE THESE DISRUPTIONS.  WE'VE LOST VALUABLE TIME THIS MORNING.

11:17AM 22      BUT MORE THAN THAT, IT'S REGRETTABLY A DISPLAY OF ISSUES

11:17AM 23  WITH OUR COURT THAT I'M NOT PROUD OF.  AND WE'LL LOOK INTO

11:17AM 24  THIS.  I'LL LOOK INTO THIS AND SEE WHAT WE CAN DO TO CORRECT

11:17AM 25  THIS TO MAKE YOUR TIME WITH US A LITTLE MORE ENJOYABLE.

11:17AM 1        SO THANK YOU FOR THAT.

11:17AM 2        IF AT ANY TIME A JUROR DOES HAVE AN ISSUE WITH FOLLOWING,

11:17AM 3    TRACKING, PLEASE RAISE YOUR HAND AND LET US KNOW SO I CAN TAKE

11:17AM 4    APPROPRIATE ACTION.

11:17AM 5        LET ME TELL YOU SCHEDULE WISE, I HOPE YOU RECALL WE'RE

11:17AM 6    GOING TO TAKE A BREAK FROM 12:30 TO 1:00 O'CLOCK, I THINK.  I

11:17AM 7    HOPE THAT WILL WORK.  AND THEN WE'RE GOING UNTIL 4:00 O'CLOCK

11:17AM 8    TODAY.  SO WE'LL PROBABLY HAVE ANOTHER BREAK PUT IN THERE IN

11:18AM 9    THE AFTERNOON SOMETIME.

11:18AM 10       ALL RIGHT.  THANK YOU.

11:18AM 11       ANYTHING FURTHER, MR. SCHENK?

11:18AM 12           MR. SCHENK:  NO, YOUR HONOR.

11:18AM 13           MR. DOWNEY:  NO, YOUR HONOR.

11:18AM 14           THE COURT:  ALL RIGHT.  LET ME ASK, DO BOTH SIDES

11:18AM 15   CONSENT TO PROCEEDING IN THIS FASHION?

11:18AM 16           MR. SCHENK:  YES, WE DO.

11:18AM 17           MR. DOWNEY:  WE DO, YOUR HONOR.

11:18AM 18           THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

11:18AM 19       LET'S SEE.  WE HAVE A WITNESS.  I THINK, MR. WADE, HAVE

11:18AM 20   YOU -- YOU HAVE SOME QUESTIONS STILL FOR MS. SAWYER?

11:18AM 21           MR. WADE:  I DO.

11:18AM 22           THE COURT:  ALL RIGHT.  WE'LL BRING MS. SAWYER IN.

11:18AM 23           THE CLERK:  DID YOU WANT ME TO TURN ON THE LIGHTS

11:18AM 24   FOR NOW, YOUR HONOR?

11:18AM 25           THE COURT:  WHY DON'T WE TURN THEM ON UNTIL WE HAVE

11:18AM 1     AN EXHIBIT?

11:18AM 2          COUNSEL, DO YOU WANT A LIGHT FOR THE LECTERNS?

11:18AM 3               MR. WADE:  I THINK I'M OKAY WITH THE LIGHT HERE AND

11:18AM 4     MY GLASSES.

11:18AM 5               THE COURT:  OKAY.

11:19AM 6          MS. SAWYER, GOOD AFTERNOON.  PLEASE COME FORWARD.  THANK

11:19AM 7     YOU.

11:19AM 8          IF YOU COULD RESUME THE STAND AGAIN, PLEASE.

11:19AM 9          MAKE YOURSELF COMFORTABLE AGAIN.

11:19AM 10          DR. SAWYER, WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE

11:19AM 11     STATE YOUR NAME AGAIN FOR THE RECORD, PLEASE.

11:19AM 12               THE WITNESS:  LYNETTE SAWYER.

11:19AM 13               THE COURT:  THANK YOU.  I REMIND YOU THAT YOU'RE

11:19AM 14     STILL UNDER OATH.

11:19AM 15          AND YOU CAN REMOVE YOUR MASK AS YOU DID LAST WEEK WHEN YOU

11:19AM 16     TESTIFIED IF YOU WOULD LIKE.

11:19AM 17               THE WITNESS:  THANK YOU.

11:19AM 18          **(GOVERNMENT'S WITNESS, LYNETTE SAWYER, WAS PREVIOUSLY**

11:19AM 19     **SWORN.)**

11:19AM 20               THE COURT:  THANK YOU.

11:19AM 21               MR. WADE:  YOUR HONOR, WOULD YOU LIKE TO UPDATE THE

11:19AM 22     WITNESS ON THE CONDITIONS THAT WE'RE GOING TO BE WORKING UNDER,

11:19AM 23     OR WOULD YOU LIKE ME TO DO THAT?

11:19AM 24               THE COURT:  WELL, NO.

11:19AM 25          LET ME TELL YOU, DOCTOR, WE'VE HAD SOME TIME TODAY AND

11:19AM  1    WE'VE TRIED TO SOLVE A PROBLEM THAT IS UNSOLVABLE.

11:19AM  2         OUR VIDEO FOR SOME REASON HAS CHOSEN TODAY TO GO OUT.

11:20AM  3              THE WITNESS:  OKAY.

11:20AM  4         THE COURT:  I'M SURE THIS IS A CASE OF FIRST

11:20AM  5    IMPRESSION TO YOU.

11:20AM  6         SO WHAT WE'RE GOING TO DO IS TO GO FORWARD TODAY.  WE PUT

11:20AM  7    THIS LITTLE LAMP NEXT TO YOU.

11:20AM  8         IF THERE ARE EXHIBITS THAT COUNSEL ARE GOING TO USE, WE'RE

11:20AM  9    GOING TO DIM THE LIGHTS AND PROJECT THEM ON THE SCREEN UP HERE.

11:20AM  10   YOU WON'T HAVE BENEFIT OF THE TELEVISION MONITOR THERE.  YOU'LL

11:20AM  11   HAVE TO LOOK AT THAT SCREEN.

11:20AM  12             THE WITNESS:  OKAY.

11:20AM  13        THE COURT:  SO IF AT ANY TIME YOU'RE UNABLE TO SEE

11:20AM  14   THAT SCREEN, YOU SHOULD LET US KNOW.  LET ME KNOW, PLEASE --

11:20AM  15             THE WITNESS:  OKAY.

11:20AM  16        THE COURT:  -- SO WE CAN TAKE ANY OTHER ACTION.

11:20AM  17        OR IF ANY OF THIS IS DISRUPTIVE TO YOUR ABILITY TO

11:20AM  18   PARTICIPATE, YOU NEED TO LET ME KNOW AND WE'LL TAKE CORRECTIVE

11:20AM  19   ACTIONS.

11:20AM  20             THE WITNESS:  OKAY.

11:20AM  21        THE COURT:  FOR THE TIME BEING, I'M JUST GOING TO

11:20AM  22   LEAVE THAT CHARMING LAMP THERE AND LEAVE IT ON, AND HOPEFULLY

11:20AM  23   IT WILL BE OF SOME ASSISTANCE.  THANK YOU.

11:20AM  24        COUNSEL.

11:20AM  25             MR. WADE:  THANK YOU, YOUR HONOR.

11:20AM   1              **CROSS-EXAMINATION (RESUMED)**

11:20AM   2       BY MR. WADE:

11:20AM   3       Q.   GOOD MORNING, DR. SAWYER.

11:20AM   4       A.   GOOD MORNING.

11:20AM   5       Q.   DO YOU RECALL THAT WHEN WE BROKE LAST WEEK WE WERE -- I

11:20AM   6       WAS ASKING YOU SOME QUESTIONS ABOUT THE CONSULTING AGREEMENT

11:21AM   7       UNDER WHICH YOU WERE RETAINED?

11:21AM   8       A.   YES.

11:21AM   9       Q.   AND THAT WAS A CONSULTING AGREEMENT WITH LABORATORY

11:21AM  10       CONSULTING SERVICES?

11:21AM  11       A.   YES.

11:21AM  12       Q.   AND THAT SET FORTH THE WORK THAT YOU WERE GOING TO PROVIDE

11:21AM  13       THROUGH THAT ENTITY.

11:21AM  14            DO YOU RECALL THAT?

11:21AM  15       A.   YES.

11:21AM  16       Q.   LET'S BRING THAT BACK UP.

11:21AM  17            THAT'S 10586 WHICH IS IN EVIDENCE.

11:21AM  18            MAY I PUBLISH, YOUR HONOR?

11:21AM  19                THE COURT:  YES, THANK YOU.

11:21AM  20       BY MR. WADE:

11:21AM  21       Q.   AND IT'S ALSO IN YOUR BOOK, SO IF IT'S EASIER FOR YOU TO

11:21AM  22       READ IN YOUR BOOK, PLEASE FEEL FREE TO DO THAT.

11:21AM  23            IF I COULD CALL YOUR ATTENTION TO EXHIBIT 81.

11:21AM  24                THE COURT:  PARDON ME, MR. WADE.

11:21AM  25            IS THERE ANY MEMBER OF THE JURY WHO IS HAVING DIFFICULTY

11:22AM 1    VIEWING THIS?

11:22AM 2         I SEE NO HANDS.

11:22AM 3         IF ANY EXHIBIT IS BEING SHOWN AND YOU CAN'T SEE IT, PLEASE

11:22AM 4    RAISE YOUR HAND AND WE'LL TRY TO REFOCUS AND DO WHAT WE NEED TO

11:22AM 5    DO.

11:22AM 6         THANK YOU, MR. WADE.

11:22AM 7              MR. WADE:  THANK YOU, YOUR HONOR.

11:22AM 8    Q.   AND I BELIEVE THAT WE WERE GOING THROUGH SOME QUESTIONS ON

11:22AM 9    THIS WHEN WE BROKE LAST TIME.

11:22AM 10        YOU RECOGNIZE THIS AS THE SCOPE OF SERVICES AND

11:22AM 11   COMPENSATION FOR THE WORK THAT YOU WERE GOING TO DO AT

11:22AM 12   THERANOS; CORRECT?

11:22AM 13   A.   RIGHT.

11:22AM 14   Q.   AND ON THAT TOP PARAGRAPH NUMBER 1, DO YOU SEE THAT YOU'RE

11:22AM 15   PROVIDED A CONTACT THERE AND THAT IS MR. BALWANI; CORRECT?

11:22AM 16   A.   CORRECT.

11:22AM 17   Q.   AND I BELIEVE YOU TESTIFIED LAST WEEK THAT YOU HAD TWO

11:22AM 18   INTERACTIONS WITH MR. BALWANI; RIGHT?

11:22AM 19   A.   AS I RECALL, YES.

11:22AM 20   Q.   OKAY.  AND DO YOU RECALL UNDERSTANDING AT THE TIME THAT

11:22AM 21   YOU BEGAN THIS ENGAGEMENT THAT HE WAS TO BE YOUR PRINCIPAL

11:22AM 22   POINT OF CONTACT AT THE COMPANY?

11:23AM 23   A.   I DON'T ACTUALLY RECALL ONE WAY OR THE OTHER.

11:23AM 24   Q.   OKAY.  DO YOU REMEMBER THAT YOU RECALL THAT WE SAW THIS

11:23AM 25   DOCUMENT THAT WAS SIGNED BY MR. HURST?

11:23AM  1    A.   YES.

11:23AM  2    Q.   OKAY.  DO YOU RECALL WHETHER MR. HURST EVER TOLD YOU, IF

11:23AM  3    YOU HAVE ANY QUESTIONS OR HAVE ANY NEEDS, YOUR POINT OF CONTACT

11:23AM  4    SHOULD BE MR. BALWANI?

11:23AM  5    A.   I DO NOT RECALL HIM TELLING ME THAT.

11:23AM  6    Q.   OKAY.  THE AGREEMENT THEN SETS FORTH SERVICES THAT YOU'RE

11:23AM  7    TO PROVIDE, AND JUST UNDER THIS SECOND PARAGRAPH, IF WE CAN

11:23AM  8    GRAB THE NEXT SECTION OF THE DOCUMENT BELOW THIS SECTION, DO

11:24AM  9    YOU SEE IT SAYS THAT YOU'RE TO FUNCTION AS THE CO-LAB DIRECTOR?

11:24AM  10        DO YOU SEE THAT?

11:24AM  11   A.   UH-HUH.

11:24AM  12   Q.   AND THAT WAS CLEAR FROM THE OUTSET; CORRECT?

11:24AM  13   A.   CORRECT.

11:24AM  14   Q.   AND THERE ARE THEN -- IF WE CAN BLOW -- IF WE CAN GO BACK

11:24AM  15   TO THE MAIN DOCUMENT AND GRAB, SAY, THE BOTTOM -- FROM THERE

11:24AM  16   DOWN, PLEASE.

11:24AM  17        THERE ARE A BUNCH OF POTENTIAL SERVICES THAT YOU MAY

11:24AM  18   PROVIDE THERE.

11:24AM  19        DO YOU SEE THAT?

11:24AM  20   A.   YES.

11:24AM  21   Q.   AND THEY ALL SAY IF REQUESTED BY THE COMPANY; RIGHT?

11:24AM  22   A.   YES.

11:24AM  23   Q.   AND THERE -- AND YOU UNDERSTOOD AT THE TIME THAT THE

11:24AM  24   NATURE OF SERVICES THAT YOU WERE TO PROVIDE WAS GOING TO BE

11:24AM  25   LIMITED IN NATURE; CORRECT?

11:24AM  1    A.   YES.

11:24AM  2    Q.   AND IF PARTICULAR SUBSETS OF SERVICES WERE REQUIRED, THE

11:24AM  3    COMPANY WOULD CONTACT YOU AND ASK YOU TO PERFORM THOSE

11:25AM  4    SERVICES; CORRECT?

11:25AM  5    A.   YES.

11:25AM  6    Q.   AND THE COMPANY DID CONTACT YOU WITH RESPECT TO A NUMBER

11:25AM  7    OF DIFFERENT POLICIES THAT THEY ASKED YOU TO REVIEW; RIGHT?

11:25AM  8    A.   THEY HAD ME REVIEW A NUMBER OF SOP'S, YES.

11:25AM  9    Q.   AND DO YOU RECALL THAT ONE OF THE THINGS THAT THE COMPANY

11:25AM  10   WAS SEEKING ASSISTANCE WITH IN THIS TIME PERIOD WAS IMPROVING

11:25AM  11   THE PAPERWORK AND ITS POLICIES GIVEN SOME DEFICIENCIES WITH

11:25AM  12   RESPECT TO A PRIOR LAB DIRECTOR?

11:25AM  13   A.   NO.

11:25AM  14   Q.   OKAY.  BUT YOU DO RECALL THAT YOU WERE SENT A NUMBER OF

11:25AM  15   POLICIES THROUGHOUT YOUR TENURE TO REVIEW; CORRECT?

11:25AM  16   A.   YES.  BUT THAT WOULD NOT HAVE NECESSARILY HAD ANYTHING TO

11:25AM  17   DO WITH DEFICIENCIES BECAUSE A NEW LAB DIRECTOR MUST SIGN

11:25AM  18   DOCUMENT -- MUST SIGN SOP'S WITHIN A REASONABLE TIME.

11:25AM  19   Q.   OKAY.  RIGHT.

11:25AM  20        SO IF THERE WERE NEW POLICIES OR CHANGES IN POLICIES THAT

11:26AM  21   WERE PUT IN PLACE, YOU WERE THERE TO REVIEW THEM AND SIGN OFF

11:26AM  22   ON THEM; IS THAT CORRECT?

11:26AM  23   A.   YES.

11:26AM  24   Q.   AND, AND WE'LL GET TO SOME OF THOSE.

11:26AM  25        BUT YOU DID THAT, IT LOOKS LIKE, FOR HUNDREDS OF POLICIES

11:26AM  1    MAYBE; RIGHT?

11:26AM  2    A.   THAT IS TRUE.

11:26AM  3    Q.   OKAY.  AND THAT WAS ON A REGULAR BASIS?  DURING YOUR

11:26AM  4    TENOR, YOU WOULD BE SENT DOCUMENTATION FOR YOU TO REVIEW AND

11:26AM  5    APPROVE; CORRECT?

11:26AM  6    A.   YES.

11:26AM  7    Q.   OKAY.  AND IF WE CAN GO TO PAGE 2 --

11:26AM  8         THE COURT:  WHILE THAT IS BEING DRAWN UP -- PARDON

11:26AM  9    ME, MR. WADE -- LADIES AND GENTLEMEN, YOU SHOULD BE ABLE TO SEE

11:26AM 10    THE WITNESS ALSO.  IF ANYONE CANNOT SEE THE WITNESS AS SHE

11:26AM 11    TESTIFIES, PLEASE RAISE YOUR HAND.  THAT'S AN IMPORTANT PART OF

11:26AM 12    THE EVIDENCE ALSO.

11:26AM 13         I SEE NO HANDS.

11:26AM 14         I ASSUME THEN EVERYONE HAS THE OPPORTUNITY TO SEE THE

11:26AM 15    WITNESS AS SHE TESTIFIES.  ALL RIGHT.  THANK YOU.

11:27AM 16         SORRY, MR. WADE.

11:27AM 17         MR. WADE:  SORRY, MR. BENNETT.

11:27AM 18         IF WE CAN GO TO ATTACHMENT 2, PAGE 1, BATES RANGE 809.

11:27AM 19    Q.   OKAY.  AND DO YOU SEE THIS SETS FORTH THE COMPENSATION

11:27AM 20    THAT WAS TO BE PAID IN CONNECTION WITH THE SERVICES?

11:27AM 21         DO YOU SEE THAT?

11:27AM 22    A.   YES.

11:27AM 23    Q.   AND DO YOU RECALL LAST WEEK YOU TESTIFIED THAT AT THE

11:27AM 24    OUTSET IT WAS CONTEMPLATED THAT THE ENGAGEMENT WOULD BE FOR A

11:27AM 25    COUPLE OF MONTHS?

11:27AM   1          DO YOU RECALL THAT?

11:27AM   2     A.   TWO TO MAYBE THREE.

11:27AM   3     Q.   OKAY.  LET'S TAKE A LOOK AT THE LANGUAGE WITHIN THIS

11:27AM   4     COMPENSATION.  IF WE CAN FOCUS ON THIS LANGUAGE HERE

11:27AM   5     (INDICATING), "PAYMENTS WILL BE MADE WITHIN 30 DAYS."

11:27AM   6          DO YOU SEE THAT?

11:27AM   7          AND THEN LET'S HIGHLIGHT THE NEXT SENTENCE AS WELL,

11:27AM   8     PLEASE, MR. BENNETT.

11:28AM   9          DO YOU SEE THERE WITHIN THE AGREEMENT IT SETS FORTH THAT

11:28AM  10     THE DURATION OF THIS AGREEMENT WILL BE THROUGH MAY 19TH, 2015?

11:28AM  11          DO YOU SEE THAT?

11:28AM  12     A.   YES.

11:28AM  13     Q.   AND THIS AGREEMENT, DO YOU RECALL, WAS SIGNED ON

11:28AM  14     NOVEMBER 19TH --

11:28AM  15     A.   YES.

11:28AM  16     Q.   -- 2014?

11:28AM  17          DO YOU RECALL THAT?

11:28AM  18     A.   YES.

11:28AM  19     Q.   OKAY.  AND SO THE AGREEMENT SETS FORTH A PERIOD OF SIX

11:28AM  20     MONTHS; CORRECT?

11:28AM  21     A.   YES.

11:28AM  22     Q.   OKAY.  AND UP HERE IT SAYS THAT AT THAT POINT WE WILL

11:28AM  23     ASSESS THIS AGREEMENT AND THE TERMS OF THE SERVICES OF THE

11:28AM  24     AGREEMENT GOING FORWARD.

11:28AM  25          DO YOU SEE THAT?

11:28AM   1       A.   UH-HUH.

11:28AM   2       Q.   AND THEN A DECISION WOULD BE MADE AS TO WHETHER OR NOT

11:28AM   3   THOSE SERVICES WOULD CONTINUE; CORRECT?

11:28AM   4       A.   CORRECT.

11:28AM   5       Q.   OKAY.  AND THE FACT THAT THIS -- I'LL STRIKE THAT.

11:28AM   6            LET ME GO TO THE NEXT PAGE, EXHIBIT A-2.

11:29AM   7            AND IN ADDITION TO YOUR SERVICES, THE COMPANY ALSO

11:29AM   8   RETAINED THE SERVICES OF JERRY HURST.

11:29AM   9            DO YOU SEE THAT?

11:29AM  10       A.   I SEE THAT.

11:29AM  11       Q.   AND DO YOU SEE THAT THAT SETS FORTH, IF YOU LOOK IN THE

11:29AM  12   LAST PARAGRAPH UNDER NUMBER 2, "GENERAL CONSULTATION ON STATE

11:29AM  13   AND FEDERAL (CLIA) REQUIREMENTS, COMPLIANCE, AND CLINICAL

11:29AM  14   LABORATORY OPERATIONS, OTHER SERVICES, EACH TO THE EXTENT

11:29AM  15   REQUESTED BY THE COMPANY."

11:29AM  16            DO YOU SEE THAT?

11:29AM  17       A.   I SEE THAT.

11:29AM  18       Q.   AND THAT'S A -- THAT WAS A SIX MONTH CONTRACT AS WELL;

11:29AM  19   CORRECT?

11:29AM  20       A.   IT WOULD APPEAR SO.

11:29AM  21       Q.   AND I THINK WE TALKED A LITTLE BIT ABOUT MR. HURST LAST

11:29AM  22   WEEK, BUT HE WAS A VERY EXPERIENCED LAB PERSON, WAS HE NOT?

11:30AM  23       A.   YES.

11:30AM  24       Q.   HE, HE HAD BEEN, HE HAD BEEN A LABORATORY CONSULTANT FOR

11:30AM  25   MANY YEARS.

| | | |
|---|---|---|
| 11:30AM | 1 | DO YOU RECALL YOUR TESTIMONY RELATING TO THAT? |
| 11:30AM | 2 | A.   HE HAS BEEN A LABORATORY CONSULTANT FOR SEVERAL YEARS, |
| 11:30AM | 3 | YES. |
| 11:30AM | 4 | Q.   AND THAT WAS AFTER HE WAS A CLIA INSPECTOR FOR THE STATE |
| 11:30AM | 5 | OF CALIFORNIA; CORRECT? |
| 11:30AM | 6 | A.   TECHNICALLY HE WAS NOT A CLIA INSPECTOR.  HE WAS A STATE |
| 11:30AM | 7 | OF CALIFORNIA INSPECTOR.  THEY DID INSPECTIONS FOR CLIA.  HE |
| 11:30AM | 8 | WAS NOT A CLIA EMPLOYEE. |
| 11:30AM | 9 | Q.   FAIR POINT. |
| 11:30AM | 10 | HE WORKED FOR THE STATE OF CALIFORNIA; RIGHT? |
| 11:30AM | 11 | A.   YES. |
| 11:30AM | 12 | Q.   AND HE DID CLIA INSPECTIONS PURSUANT TO A JOINT |
| 11:30AM | 13 | ARRANGEMENT BETWEEN THE STATE AND FEDERAL GOVERNMENTS; CORRECT? |
| 11:30AM | 14 | A.   CORRECT. |
| 11:30AM | 15 | Q.   OKAY.  BUT THERE WERE THE FEDERAL CLIA REGULATIONS HE WAS |
| 11:30AM | 16 | LOOKING AT; RIGHT? |
| 11:30AM | 17 | A.   YES. |
| 11:30AM | 18 | Q.   AND HE HAS A LOT OF EXPERTISE IN THAT AREA, DOES HE NOT? |
| 11:30AM | 19 | A.   I BELIEVE SO. |
| 11:30AM | 20 | Q.   AND I THINK YOU TESTIFIED LAST WEEK THAT HE'S A GUY WHO |
| 11:30AM | 21 | WOULD FREQUENTLY CONSULT WITH A VARIETY OF COMPANIES THAT |
| 11:31AM | 22 | OPERATED LABS IN THIS AREA; CORRECT? |
| 11:31AM | 23 | A.   TO THE BEST OF MY KNOWLEDGE, BUT I DON'T KEEP TABS ON |
| 11:31AM | 24 | EXACTLY WHO HE WORKS WITH. |
| 11:31AM | 25 | Q.   OKAY.  DO YOU RECALL, FOR EXAMPLE, THAT HE HAD DONE |

11:31AM  1    CONSULTING WORK FOR QUEST DIAGNOSTICS?

11:31AM  2    A.   NO, I DID NOT KNOW THAT.

11:31AM  3    Q.   OKAY.  DO YOU RECALL THAT HE HAD DONE CONSULTING WORK FOR,

11:31AM  4    YOU KNOW, ABOUT 50 DIFFERENT LAB COMPANIES?

11:31AM  5    A.   I WOULD HAVE NO IDEA OF THE NUMBER.  I KNOW A VARIETY

11:31AM  6    OF -- THAT HE HAS DONE WORK FOR A VARIETY OF LABS, YES.

11:31AM  7    Q.   OKAY.  AND DO YOU KNOW THAT HE ALSO HAS -- HE'S CALLED

11:31AM  8    UPON FOR HIS EXPERTISE FROM TIME TO TIME?

11:31AM  9         DO YOU KNOW THAT?

11:31AM 10    A.   YES.

11:31AM 11    Q.   AND INCLUDING HE SERVED AS AN EXPERT FOR THE UNITED STATES

11:31AM 12    DEPARTMENT OF JUSTICE.

11:31AM 13         ARE YOU AWARE OF THAT?

11:31AM 14    A.   NO.

11:31AM 15    Q.   OKAY.  ARE YOU AWARE THAT HE SERVED AS AN INDEPENDENT

11:31AM 16    EXPERT CONSULTANT FOR THE CENTER FOR MEDICARE AND MEDICAID

11:31AM 17    SERVICES?

11:32AM 18    A.   NO.

11:32AM 19    Q.   AND HE'S SOMEONE WHO YOU HAD INTERACTED WITH FREQUENTLY

11:32AM 20    WHILE YOU WERE WORKING WITH HIS COMPANY; IS THAT FAIR?

11:32AM 21    A.   RELATIVELY, YES.

11:32AM 22    Q.   AND YOU HAVE RESPECT FOR MR. HURST?

11:32AM 23    A.   YES.

11:32AM 24    Q.   AND YOU THINK HE'S A HIGHLY COMPETENT PROFESSIONAL?

11:32AM 25    A.   YES.

11:32AM  1    Q.   OKAY.  NOW, THE PART-TIME ARRANGEMENT THAT YOU HAD WITH

11:32AM  2    THE COMPANY, THAT WAS GENERALLY FOR A LIMITED PERIOD OF HOURS A

11:32AM  3    WEEK; CORRECT?

11:32AM  4    A.   YES.

11:32AM  5    Q.   AND I THINK WE TALKED ABOUT LAST WEEK THAT YOU WERE -- IT

11:32AM  6    WAS UNDERSTOOD THAT YOU WEREN'T GOING TO BE ON SITE; CORRECT?

11:32AM  7    A.   CORRECT.

11:32AM  8    Q.   OKAY.  LET'S TAKE A LOOK AT EXHIBIT 2553, WHICH IS IN

11:32AM  9    EVIDENCE.

11:32AM  10        MAY I PUBLISH, YOUR HONOR?

11:32AM  11             THE COURT:  YES.

11:32AM  12             MR. WADE:  AND IF WE CAN GO TO PAGE 4 OF THE

11:33AM  13   EXHIBIT.  LET'S BLOW UP THE TOP THIRD OR SO.

11:33AM  14        BOY, AND THIS IS A TOUGH ONE.

11:33AM  15   Q.   DO YOU SEE THAT THIS IS A RENEWAL OF CLINICAL LABORATORY

11:33AM  16   LICENSE?  IT MIGHT BE EASIER FOR YOU TO SEE IT IN THE BOOK.

11:33AM  17   A.   YES.

11:33AM  18   Q.   AND YOU'VE SEEN THESE FORMS BEFORE; CORRECT?

11:33AM  19   A.   YES.

11:33AM  20   Q.   OKAY.  AND THIS IS ONE THAT WAS SUBMITTED ON BEHALF OF

11:33AM  21   THERANOS IN JUNE OF 2015.

11:33AM  22        DO YOU SEE THAT?

11:33AM  23        LET ME GO TO THE NEXT PAGE.  I'LL, I'LL -- IF YOU'LL --

11:33AM  24   A.   I'M NOT ACTUALLY SEEING THE DATE RIGHT NOW.

11:33AM  25   Q.   LET'S BLOW THIS UP RIGHT HERE, AND IF WE CAN HIGHLIGHT THE

11:34AM  1    DATE THERE (INDICATING)?

11:34AM  2    A.   OKAY.

11:34AM  3    Q.   DO YOU SEE IT SAYS -- IS THAT JUNE 12TH, MAYBE, 2015?

11:34AM  4    A.   MAYBE.

11:34AM  5    Q.   OKAY.  AND IF YOU -- BUT YOU'VE SEEN DOCUMENTS OF THIS

11:34AM  6    KIND BEFORE; CORRECT?

11:34AM  7    A.   YES.

11:34AM  8    Q.   OKAY.  AND THIS IS KIND OF A STANDARD RENEWAL FOR A

11:34AM  9    CLINICAL LABORATORY LICENSE?

11:34AM  10   A.   I BELIEVE SO.

11:34AM  11   Q.   OKAY.  AND IF WE GO JUST UP FROM THE PARAGRAPH THAT IS

11:34AM  12   BLOWN UP, IF WE GO TO THE TOP OF EXHIBIT -- PAGE 5 OF

11:34AM  13   EXHIBIT 2553.

11:34AM  14        DO YOU SEE THERE THAT YOU'RE IDENTIFIED AS ONE OF THE

11:34AM  15   LABORATORY DIRECTORS?

11:34AM  16        DO YOU SEE THAT?

11:34AM  17   A.   YES.

11:34AM  18   Q.   AND DO YOU SEE OVER ON THE RIGHT-HAND SIDE IT SAYS ONE TO

11:34AM  19   FIVE HOURS AS NEEDED?

11:34AM  20   A.   I SEE THAT.

11:34AM  21   Q.   AND DO YOU BELIEVE THAT TO BE AN ACCURATE STATEMENT OF THE

11:34AM  22   SERVICES THAT YOU WERE TO BE PROVIDING?

11:34AM  23   A.   PROBABLY.

11:34AM  24   Q.   OKAY.  AND DO YOU RECALL LAST WEEK THAT YOU, YOU HAD SAID

11:35AM  25   THAT YOU WANTED TO HAVE A ROSTER OF PERSONNEL WITHIN THE

```
11:35AM   1      LABORATORY?

11:35AM   2      A.   YES.

11:35AM   3      Q.   AND I THINK WE ESTABLISHED THAT YOU HAD TWO CONVERSATIONS

11:35AM   4      WITH MR. BALWANI.

11:35AM   5           DO YOU THINK THAT YOU ASKED FOR THAT IN THAT FIRST

11:35AM   6      CONVERSATION WITH MR. BALWANI?

11:35AM   7      A.   YES.

11:35AM   8      Q.   OKAY.

11:35AM   9      A.   YES.

11:35AM  10      Q.   AND HE, HE MUST HAVE FORGOTTEN TO SEND IT OR SOMETHING;

11:35AM  11      RIGHT?

11:35AM  12               MR. LEACH:  OBJECTION.

11:35AM  13               THE WITNESS:  SOMETHING.

11:35AM  14               MR. LEACH:  OBJECTION.

11:35AM  15               THE COURT:  IT CALLS FOR SPECULATION, I THINK.

11:35AM  16          THE ANSWER IS STRICKEN.  YOU CAN ASK ANOTHER QUESTION.

11:35AM  17               MR. WADE:  OKAY.

11:35AM  18      Q.   IN ANY EVENT, YOU DIDN'T RECEIVE A COPY OF IT; RIGHT?

11:35AM  19      A.   CORRECT.

11:35AM  20      Q.   OKAY.  AND DID YOU EVER GO BACK TO MR. BALWANI AND ASK HIM

11:35AM  21      AGAIN FOR THAT?

11:35AM  22      A.   I DID NOT.

11:35AM  23      Q.   OKAY.  LET'S GO FORWARD TO PAGE 11 OF THIS DOCUMENT.

11:35AM  24           AND IF WE CAN JUST BLOW UP THE MIDDLE THIRD OR SO.

11:36AM  25      A.   HMM.
```

11:36AM 1    Q.   DO YOU HAVE THAT IN FRONT OF YOU, DR. SAWYER?

11:36AM 2    A.   YES, I DO.

11:36AM 3    Q.   AND THIS IS THE TYPE OF LABORATORY PERSONNEL REPORT THAT

11:36AM 4    YOU WERE SEEKING?

11:36AM 5    A.   YES.

11:36AM 6    Q.   OKAY.  AND YOU SEE IT'S FILLED OUT AND IDENTIFIES THE

11:36AM 7    DIRECTORS AT THIS TIME AND THE TESTING PERSONNEL?

11:36AM 8    A.   YEP.

11:36AM 9    Q.   OKAY.  SO THIS WAS JUST SOMETHING THAT YOU WERE HOPING TO

11:36AM 10   HAVE AT THE TIME THAT YOU JOINED THE COMPANY?

11:36AM 11   A.   YES.

11:36AM 12   Q.   OKAY.  LET'S GO TO 10562, WHICH I DON'T BELIEVE IS IN

11:37AM 13   EVIDENCE.

11:37AM 14            THE CLERK:  IT IS.

11:37AM 15            MR. WADE:  IT IS IN EVIDENCE?

11:37AM 16            THE CLERK:  YES.

11:37AM 17            MR. WADE:  CAN WE GO TO THE SECOND PAGE OF THIS.

11:37AM 18   Q.   YEAH.  I THINK THE GOVERNMENT SHOWED YOU THE LAST PAGE OF

11:37AM 19   THIS DOCUMENT LAST WEEK.

11:37AM 20        DO YOU RECALL THAT?

11:37AM 21   A.   YES.

11:37AM 22   Q.   IF WE CAN BLOW UP THE BOTTOM OF THAT PAGE THERE WITH YOUR

11:37AM 23   SIGNATURE.

11:37AM 24        THIS IS DATED NOVEMBER 19TH, 2014; RIGHT?

11:37AM 25   A.   YES.

11:37AM  1    Q.   THAT'S THE DATE ON WHICH YOUR CONSULTING CONTRACT WAS

11:37AM  2    DATED; RIGHT?

11:37AM  3    A.   YES.

11:37AM  4    Q.   AND HERE -- DO YOU SEE THERE, THERE'S A BOX FOR WHETHER

11:37AM  5    YOU'RE GOING TO BE THE CLIA DIRECTOR?

11:37AM  6    A.   I DO.

11:37AM  7    Q.   AND YOU WERE NOT TO BE THE CLIA DIRECTOR; RIGHT?  THAT'S

11:38AM  8    WHAT THAT SAYS?

11:38AM  9    A.   CORRECT.

11:38AM  10   Q.   OKAY.  AND, AGAIN, YOU UNDERSTOOD THAT AT THE TIME, THAT

11:38AM  11   YOU WERE GOING TO BE A CO-DIRECTOR?

11:38AM  12   A.   YES.

11:38AM  13   Q.   OKAY.  LET'S GO TO 13 -- WELL, BEFORE I GO TO THE NEXT

11:38AM  14   EXHIBIT, YOU RECALL THAT THERE WAS SOME TESTIMONY ABOUT YOUR

11:38AM  15   DEPARTURE FROM THE COMPANY WHEN YOU STOPPED WORKING AT

11:38AM  16   THERANOS?

11:38AM  17   A.   YES.

11:38AM  18   Q.   AND YOU SAID SOMETHING TO THE EFFECT OF YOU WERE -- YOU

11:38AM  19   WEREN'T COMFORTABLE WITH THE CONDITIONS UNDER WHICH YOU WERE

11:38AM  20   WORKING, SO YOU WANTED TO DEPART?

11:38AM  21   A.   YES.

11:38AM  22   Q.   OKAY.  AND BETWEEN NOVEMBER 19TH, 2014, AND THE TIME

11:38AM  23   PERIOD WHERE YOU COMMUNICATED WITH MR. BALWANI, DID YOU

11:38AM  24   COMMUNICATE WITH ANYONE AT THE COMPANY ABOUT THE FACT THAT YOU

11:39AM  25   WANTED TO MAKE SOME CHANGES TO BE MORE COMFORTABLE WITH THE

11:39AM  1    CONDITIONS?

11:39AM  2    A.   I ATTEMPTED TO COMMUNICATE CHANGES TO SOME OF THE SOP'S I

11:39AM  3    WAS SIGNING.

11:39AM  4    Q.   OKAY.  AND WHO -- DID YOU CALL YOUR PRIMARY POINT OF

11:39AM  5    CONTACT, MR. BALWANI --

11:39AM  6    A.   NO.

11:39AM  7    Q.   -- TO COMMUNICATE THOSE?

11:39AM  8    A.   NO.

11:39AM  9    Q.   OKAY.  DO YOU KNOW WHO YOU CONTACTED TO COMMUNICATE THOSE?

11:39AM  10   A.   I CONTACTED THE WOMAN WHO HAD SENT ME THE SOP'S.

11:39AM  11   Q.   OKAY.  AND DID YOU COMMUNICATE WITH HER?

11:39AM  12   A.   YEAH.

11:39AM  13   Q.   AND DID YOU TELL HER --

11:39AM  14   A.   THROUGH EMAIL.

11:39AM  15   Q.   I'M SORRY?

11:39AM  16   A.   THROUGH EMAIL, YES.

11:39AM  17   Q.   THROUGH EMAIL.  BUT YOU DIDN'T CALL ANYONE TO HAVE A

11:39AM  18   CONVERSATION TO TRY TO CHANGE THE CONDITIONS UNDER WHICH YOU

11:39AM  19   WORKED?

11:39AM  20   A.   NO.

11:39AM  21   Q.   OKAY.  AND THE, THE -- AT YOUR DEPARTURE, I THINK YOU SAID

11:39AM  22   THAT YOU HAD A CONVERSATION WITH MR. BALWANI AND THAT HE WAS

11:39AM  23   KIND OF PUSHY.

11:39AM  24        DO YOU RECALL THAT?

11:40AM  25   A.   I RECALL SAYING THAT.  THAT IS MY RECOLLECTION, YES.

11:40AM   1    Q.   OKAY.  AND THAT IS BECAUSE YOU WERE, YOU WERE -- IT WAS

11:40AM   2    YOUR BELIEF THAT YOU WERE TRYING TO DEPART OR -- DESCRIBE FOR

11:40AM   3    US WHY YOU SAY HE WAS PUSHY.

11:40AM   4    A.   HE WAS JUST HOPING I WOULD STAY LONGER.

11:40AM   5    Q.   OH.  SO HE WANTED YOU TO STAY WITH THE COMPANY?

11:40AM   6    A.   UH-HUH.

11:40AM   7         THE COURT:  IS THAT YES?  EXCUSE ME, IS THAT YES

11:40AM   8    DR. SAWYER?

11:40AM   9         THE WITNESS:  YES.  SORRY.

11:40AM  10         THE COURT:  THANK YOU.

11:40AM  11    BY MR. WADE:

11:40AM  12    Q.   YEAH, WE HAVE TO MAKE SURE OUR ANSWERS ARE AUDIBLE TO MAKE

11:40AM  13    OUR RECORD CLEAR WITH OUR COURT REPORTER.

11:40AM  14    A.   YES.

11:40AM  15    Q.   SO WHEN YOU SAY HE WAS PUSHY, HE WAS HOPING THAT YOU WERE

11:40AM  16    GOING TO STAY A LITTLE BIT LONGER; IS THAT RIGHT?

11:40AM  17    A.   YES.

11:40AM  18    Q.   OKAY.  LET'S TAKE A LOOK AT EXHIBIT 13047.

11:41AM  19         DO YOU HAVE THAT IN FRONT OF YOU?

11:41AM  20    A.   I DO.

11:41AM  21    Q.   AND DO YOU RECOGNIZE THIS TO BE AN EMAIL CHAIN WITH YOU,

11:41AM  22    MR. HURST, AND MR. BALWANI IN CONNECTION WITH THE EXPIRATION OF

11:41AM  23    YOUR CONTRACT?

11:41AM  24    A.   I DO.  BUT I DON'T KNOW THAT I'M ACTUALLY A RECIPIENT ON

11:41AM  25    THIS EMAIL CHAIN.

11:41AM   1    Q.   IF YOU LOOK IN THE SECOND EMAIL DOWN, DO YOU SEE THAT?

11:41AM   2    A.   YES, THERE I AM.  OKAY.

11:41AM   3              MR. WADE:  MOVE THE ADMISSION OF 13047.

11:41AM   4              THE WITNESS:  GOT IT.

11:41AM   5              MR. LEACH:  NO OBJECTION, YOUR HONOR.

11:41AM   6              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

11:41AM   7         (DEFENDANT'S EXHIBIT 13047 WAS RECEIVED IN EVIDENCE.)

11:41AM   8    BY MR. WADE:

11:41AM   9    Q.   LET'S START BRIEFLY ON THE BOTTOM.  I'M GOING TO GO

11:41AM  10    THROUGH AND ASK YOU A COUPLE OF QUESTIONS ABOUT THAT.  OKAY?

11:41AM  11         LET'S START ON THE BOTTOM.  DO YOU SEE THIS IS AN EMAIL

11:42AM  12    FROM MR. HURST TO MR. BALWANI ON APRIL 5TH, 2015, AND THE

11:42AM  13    SUBJECT IS LYNETTE'S DIRECTOR CONTRACT.

11:42AM  14         DO YOU SEE THAT?

11:42AM  15    A.   UH-HUH.

11:42AM  16    Q.   AND IT SAYS "HI SUNNY."

11:42AM  17         AND THEN WE HAVE TO GO TO THE NEXT PAGE TO LOOK AT THE

11:42AM  18    REST OF THE EMAIL.

11:42AM  19         AND DO YOU SEE IT NOTES, "I RECENTLY TALKED WITH LYNETTE

11:42AM  20    ABOUT HER CO-DIRECTOR POSITION AND SHE WOULD LIKE TO TERMINATE

11:42AM  21    HER POSITION.  HER CURRENT CONTRACT ENDS ON MAY 19TH, 2015, BUT

11:42AM  22    SHE IS HAPPY TO EXTEND HER RESPONSIBILITIES THROUGH THE END OF

11:42AM  23    MAY IF THAT IS BETTER FOR YOU."

11:42AM  24         DO YOU SEE THAT?

11:42AM  25    A.   YES.

11:42AM 1    Q.   OKAY.  AND THAT WAS MR. HURST GIVING MR. BALWANI NOTICE

11:42AM 2    THAT AT THE END OF THAT SIX MONTH CONTRACT YOU WERE GOING TO,

11:42AM 3    YOU WERE GOING TO STOP WORKING WITH THERANOS; RIGHT?

11:42AM 4    A.   YEAH, I WAS NOT GOING TO RENEW THE CONTRACT.

11:42AM 5    Q.   RIGHT.  AND THE CONTRACT ACTUALLY SPECIFICALLY

11:42AM 6    CONTEMPLATED THAT.  IT SAYS LET'S LOOK AFTER SIX MONTHS AND SEE

11:43AM 7    WHAT HAPPENS; RIGHT?

11:43AM 8    A.   UH-HUH.

11:43AM 9    Q.   IS THAT A YES?

11:43AM 10   A.   YES, IT DID.

11:43AM 11   Q.   OKAY.  BUT YOU KINDLY AGREED TO STAY UNTIL THE END OF MAY

11:43AM 12   IF THAT WOULD HELP FACILITATE THE TRANSITION; RIGHT?

11:43AM 13   A.   YES, BECAUSE THE MIDDLE OF THE MONTH IS KIND OF AN ODD

11:43AM 14   TIME IN GENERAL TO HIRE PEOPLE LIKE DIRECTORS.

11:43AM 15   Q.   UNDERSTOOD.  LET'S WORK OUR WAY UP THE CHAIN AND GO TO

11:43AM 16   MR. BALWANI'S RESPONSE.

11:43AM 17       DO YOU SEE HE RESPONDS TO YOU BOTH AND NOTES THAT THE "END

11:43AM 18   OF JUNE WOULD BE IDEAL FOR US BUT IF THIS IS NOT A POSSIBILITY

11:43AM 19   THEN WE WILL WORK WITH END OF MAY TIMELINE."

11:43AM 20       DO YOU SEE THAT?

11:43AM 21   A.   YES.

11:43AM 22   Q.   AND HE THANKS YOU BOTH FOR YOUR EFFORTS.

11:43AM 23       DO YOU SEE THAT?

11:43AM 24   A.   YES.

11:43AM 25   Q.   OKAY.  SO HE WAS JUST SAYING HERE HE WOULD LIKE YOU TO

11:44AM  1     STAY, BUT IF NOT, NO BIG DEAL?

11:44AM  2     A.   YES.

11:44AM  3     Q.   AND YOU ACTUALLY AGREED TO STAY UNTIL THE END OF JUNE?

11:44AM  4     A.   I DID.

11:44AM  5     Q.   OKAY.  LET'S FOCUS ON SOME OF THE WORK THAT YOU DID WHILE

11:44AM  6     YOU WERE THERE, OKAY?  I WANT TO ASK YOU SOME QUESTIONS ABOUT

11:44AM  7     THAT.

11:44AM  8     A.   OKAY.

11:44AM  9     Q.   WE TALKED ABOUT HOW YOU REVIEWED SOP'S AND THE LIKE.

11:44AM  10         DO YOU RECALL THAT?

11:44AM  11    A.   YES.

11:44AM  12    Q.   AND DO YOU RECALL ABOUT A YEAR AGO THE GOVERNMENT CALLED

11:44AM  13    AND ASKED YOU, ASKED YOU SOME QUESTIONS, SOME GOVERNMENT AGENTS

11:44AM  14    WHO WORK WITH THIS TEAM?

11:44AM  15    A.   YES.

11:44AM  16    Q.   OKAY.  AND DO YOU RECALL WHAT THEY ASKED YOU FOR -- AND

11:44AM  17    THEY TALKED TO YOU ABOUT THE FACT THAT YOU WERE THE

11:45AM  18    CO-LABORATORY DIRECTOR; RIGHT?

11:45AM  19    A.   YES.

11:45AM  20    Q.   AND THEY ASKED YOU SOME QUESTIONS ABOUT YOUR WORK; RIGHT?

11:45AM  21    A.   YES.

11:45AM  22    Q.   AND THEY ASKED YOU IF YOU COULD PROVIDE ANY DOCUMENTS THAT

11:45AM  23    YOU HAVE RELATING TO YOUR WORK.

11:45AM  24         DO YOU RECALL THAT?

11:45AM  25    A.   UM, I DON'T RECALL THEM ASKING SPECIFICALLY IN THAT WAY,

11:45AM 1    BUT I DID PROVIDE THEM WITH DOCUMENTS.

11:45AM 2    Q.   OKAY.  WELL, AND IN SOME WAY --

11:45AM 3    A.   YEAH.

11:45AM 4    Q.   -- THERE WAS AN AGREEMENT THAT YOU WOULD FIND WHATEVER

11:45AM 5    DOCUMENTS YOU COULD LOCATE AND YOU WOULD GIVE THEM TO THE

11:45AM 6    GOVERNMENT.

11:45AM 7         DO YOU RECALL THAT?

11:45AM 8    A.   YES.

11:45AM 9    Q.   AND I THINK AT THE TIME YOU INFORMED THEM THAT YOU HAD

11:45AM 10   SWITCHED COMPUTERS OR SOMETHING AND SO YOU PROBABLY DIDN'T HAVE

11:45AM 11   ALL OF THE DOCUMENTS THAT YOU HAD WORKED WITH.

11:45AM 12        DO YOU RECALL THAT?

11:45AM 13   A.   I DON'T KNOW THAT I TOLD THEM THAT AT THE TIME.  I HAVE

11:45AM 14   TOLD THEM THAT SINCE.

11:45AM 15   Q.   OKAY.  BUT IN ANY EVENT --

11:45AM 16   A.   YEAH.

11:45AM 17   Q.   -- YOU RECOGNIZE THAT BECAUSE OF COMPUTER CHANGES AND THE

11:45AM 18   LIKE, YOU MAY NOT HAVE EVERYTHING THAT YOU LOOKED AT?

11:45AM 19   A.   CORRECT.

11:45AM 20   Q.   OKAY.  AND THE WAY THAT YOU WERE ABLE TO IDENTIFY

11:46AM 21   PARTICULAR DOCUMENTS THAT YOU COULD PROVIDE TO THEM WAS, WAS IT

11:46AM 22   DOCUMENTS THAT WERE BASED IN THE CLOUD THAT YOU HAD SIGNED

11:46AM 23   ELECTRONICALLY --

11:46AM 24   A.   YES.

11:46AM 25   Q.   -- YOU WERE ABLE TO PULL DOWN?

11:46AM 1      A.   YES.

11:46AM 2      Q.   OKAY.  AND SO IF YOU HAD -- WHATEVER YOU STILL HAD ACCESS

11:46AM 3      TO FOR THOSE PURPOSES, YOU WERE ABLE TO GIVE THEM, BUT I THINK

11:46AM 4      YOU SAID YOU COULDN'T GUARANTEE THAT THERE WAS -- THIS WAS

11:46AM 5      EVERYTHING BECAUSE YOU HAD CHANGED COMPUTERS A COUPLE OF TIMES?

11:46AM 6      A.   YES.

11:46AM 7      Q.   OKAY.  BUT IN ANY EVENT, YOU WERE, YOU WERE ABLE TO FIND

11:46AM 8      SOME OF THE SOP'S THAT YOU LOOKED AT; RIGHT?

11:46AM 9      A.   CORRECT.

11:46AM 10     Q.   OKAY.  LET'S -- AND DO YOU RECALL THAT YOU KIND OF

11:46AM 11     PROVIDED THEM IN GROUPS TO THE GOVERNMENT?

11:46AM 12     A.   YES.

11:46AM 13     Q.   OKAY.  LET'S TAKE A LOOK AT ONE OF THOSE GROUPS.

11:46AM 14          TAKE A LOOK AT EXHIBIT 1366 -- I'M SORRY, 13655.

11:47AM 15          AND DO YOU HAVE THAT IN FRONT OF YOU --

11:47AM 16     A.   UH-HUH, YES, I DO.

11:47AM 17     Q.   -- DR. SAWYER?

11:47AM 18     A.   YES, I DO.

11:47AM 19     Q.   AND DO YOU RECOGNIZE THIS TO BE ONE OF THOSE GROUPS OF

11:47AM 20     SOP'S THAT YOU REVIEWED AT THE TIME?

11:47AM 21     A.   NOT SPECIFICALLY, BUT IT PROBABLY -- IT LOOKS LIKE IT

11:47AM 22     COULD BE, YES.

11:47AM 23     Q.   AND DO YOU SEE THE BATES LABEL ON THE BOTTOM RIGHT-HAND

11:47AM 24     CORNER?

11:47AM 25     A.   YES.

11:47AM 1    Q.   OKAY.  AND THESE ARE DOCUMENTS THAT YOU SIGNED, CORRECT,

11:47AM 2    ELECTRONICALLY?

11:47AM 3    A.   YES.

11:47AM 4    Q.   OKAY.

11:47AM 5         MOVE THE ADMISSION OF 13655.

11:47AM 6              MR. LEACH:  NO OBJECTION.

11:47AM 7              THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

11:48AM 8         (DEFENDANT'S EXHIBIT 13655 WAS RECEIVED IN EVIDENCE.)

11:48AM 9    BY MR. WADE:

11:48AM 10   Q.   AND THIS PARTICULAR DOCUMENT, THIS HAPPENS TO BE THE FIRST

11:48AM 11   PAGE IN EXHIBIT 13655, BUT THIS IS SORT OF A STANDARD TEMPLATE

11:48AM 12   OF A POLICY OR PROCEDURE THAT YOU WERE ASKED TO REVIEW; IS THAT

11:48AM 13   RIGHT?

11:48AM 14   A.   YES.

11:48AM 15   Q.   OKAY.  I WANT TO ASK YOU JUST A COUPLE OF QUESTIONS ABOUT

11:48AM 16   THIS.

11:48AM 17        IF I COULD BRING YOU TO THE PAGE BATES LABEL ENDING 558 IN

11:48AM 18   THE BOTTOM RIGHT-HAND CORNER.

11:48AM 19   A.   YES.

11:48AM 20   Q.   DO YOU SEE THAT?

11:48AM 21   A.   YES.

11:48AM 22   Q.   AND DO YOU SEE THAT THAT IS THERANOS LIS APPLICATION USER

11:48AM 23   GUIDE?

11:48AM 24        DO YOU SEE THAT?

11:49AM 25   A.   I'M SORRY, WHAT BATES LABEL IS THIS?

11:49AM 1   Q.  558 IN THE BOTTOM RIGHT CORNER.

11:49AM 2   A.  I'M SORRY.  HOLD ON.  WRONG PAGE.

11:49AM 3       YES.

11:49AM 4   Q.  OKAY.  DO YOU SEE THAT?

11:49AM 5   A.  YES.

11:49AM 6   Q.  OKAY.  AND IT'S ALSO PROJECTED UP HERE.  DO YOU SEE --

11:49AM 7   A.  YEP.

11:49AM 8   Q.  SO THIS WAS A THERANOS LIS APPLICATION USER GUIDE?

11:49AM 9   A.  YES.

11:49AM 10  Q.  AND LIS STANDS FOR LABORATORY INFORMATION SYSTEMS; IS THAT

11:49AM 11  CORRECT?

11:49AM 12  A.  YES.

11:49AM 13  Q.  OKAY.  AND AM I -- IS IT CORRECT THAT THE LABORATORY

11:49AM 14  INFORMATION SYSTEM IS THE DATABASE THAT STORES ALL OF THE

11:49AM 15  LABORATORY TESTING INFORMATION AND PATIENT INFORMATION?

11:49AM 16  A.  YES.

11:49AM 17  Q.  AND QUALITY CONTROL INFORMATION?

11:50AM 18  A.  YEAH.  IT SHOULD, YES.

11:50AM 19  Q.  OKAY.  AND THIS WAS ONE OF THE POLICIES THAT YOU WERE

11:50AM 20  ASKED TO REVIEW AND SIGN?

11:50AM 21  A.  YES.

11:50AM 22  Q.  OKAY.  LET'S -- AND LET'S JUST GO TO PAGE 560 IN THE

11:50AM 23  BOTTOM RIGHT-HAND CORNER.

11:50AM 24      AND THE DEFINITIONS AND ABBREVIATIONS SECTION THERE,

11:50AM 25  SECTION 3, DO YOU SEE THAT?

11:50AM 1      A.  YES.

11:50AM 2      Q.  AND THIS SETS FORTH DIFFERENT SPECIFICATIONS FOR SOME OF

11:50AM 3      THE TERMS THAT ARE GOING TO BE USED IN THE POLICY AND THE

11:50AM 4      INFORMATION THAT IS CONTAINED WITHIN THE LIS; CORRECT?

11:50AM 5      A.  IT -- YEAH, IT SETS FORTH DEFINITIONS.  IT DEFINES TERMS

11:50AM 6      THAT ARE USED IN THE SOP.

11:50AM 7      Q.  OKAY.  AND WITHIN THIS APPLICATION USER GUIDE, IT ALSO

11:51AM 8      TALKS ABOUT, NOT NECESSARILY THE DEFINITION SPECIFICALLY, BUT

11:51AM 9      THE, THE USER GUIDE TALKS ABOUT HOW ONE CAN GO ABOUT USING THE

11:51AM 10     LIS AND OBTAIN INFORMATION FROM THE LIS; CORRECT?

11:51AM 11     A.  YES.

11:51AM 12     Q.  LET'S GO TO PAGE 652 AND LOOK AT 3.19.

11:51AM 13         FOR EXAMPLE, CRITICAL VALUES ARE SOMETHING THAT WAS

11:51AM 14     TRACKED WITHIN THE LIS; RIGHT?

11:51AM 15     A.  IT WOULD APPEAR SO, YES.

11:51AM 16     Q.  AND SO IN THE LIS YOU WOULD BE ABLE TO QUERY FOR THOSE

11:51AM 17     VALUES; RIGHT?

11:51AM 18     A.  I DON'T KNOW.  I HAVE NO EXPERIENCE WITH THEIR LIS.

11:51AM 19     Q.  OKAY.  BUT YOU UNDERSTAND WHAT THE POLICY IS SAYING;

11:51AM 20     RIGHT?

11:51AM 21     A.  YEAH.

11:51AM 22     Q.  AND THEN IF WE CAN GO DOWN TO 3.23, THERE'S A TEST LIST

11:52AM 23     DIRECTORY.

11:52AM 24         DO YOU SEE THAT?

11:52AM 25     A.  YES.

11:52AM  1    Q.   AND YOU UNDERSTOOD THAT TESTS AND LISTS OF PANELS WERE

11:52AM  2    SOMETHING THAT WAS ORDINARILY TRACKED WITHIN AN LIS?

11:52AM  3    A.   IT WAS APPARENTLY TRACKED WITHIN THE THERANOS LIS.

11:52AM  4    Q.   OKAY.  AND IF WE GO TO 565, AND WE BLOW UP THE MIDDLE OF

11:52AM  5    THE PAGE.

11:52AM  6         THIS SHOWS HOW YOU CAN SEARCH FOR RECORDS WITHIN THE LIS;

11:52AM  7    RIGHT?

11:52AM  8    A.   IT WOULD APPEAR SO, YES.

11:52AM  9    Q.   AND IF WE CAN GO TO 569.

11:53AM  10        DO YOU HAVE THAT PAGE UP?

11:53AM  11   A.   YES.

11:53AM  12   Q.   IF WE CAN FOCUS ON THE BOTTOM.

11:53AM  13        DO YOU SEE WHERE IT SAYS REVIEW IMAGE?  IF WE CAN -- ABOUT

11:53AM  14   THREE-QUARTERS OF THE WAY DOWN.

11:53AM  15   A.   OH, OKAY.

11:53AM  16   Q.   DO YOU SEE RIGHT HERE (INDICATING)?

11:53AM  17   A.   AH.  OKAY.

11:53AM  18   Q.   AND IT SAYS THAT THERE WAS A WAY WITHIN THE LIS THAT YOU

11:53AM  19   COULD VIEW THE NANOTAINER IMAGE?

11:53AM  20   A.   I WOULD NOT NECESSARILY INTERPRET THAT THAT'S WHAT THAT

11:53AM  21   SAYS.

11:53AM  22        IT IS TELLING YOU THAT THE NANOTAINER IMAGE NEEDS TO BE

11:53AM  23   VIEWED.  IT DOESN'T TELL ME THAT YOU CAN DO THAT WITHIN THE

11:53AM  24   LIS.

11:53AM  25   Q.   OKAY.  FAIR ENOUGH.

11:53AM  1          WHAT IS A NANOTAINER?

11:53AM  2     A.   I DON'T KNOW.

11:53AM  3     Q.   OKAY.  DID YOU UNDERSTAND THAT IT WAS THE SMALL SAMPLE

11:54AM  4     VIAL --

11:54AM  5     A.   NO.

11:54AM  6     Q.   -- THAT THERANOS USED AT THE TIME?

11:54AM  7     A.   NO.

11:54AM  8     Q.   YOU DIDN'T UNDERSTAND THAT AT THE TIME?

11:54AM  9     A.   NO.

11:54AM 10     Q.   DID YOU ASK MR. BALWANI ANY QUESTIONS ABOUT THE

11:54AM 11     NANOTAINER?

11:54AM 12     A.   NO.

11:54AM 13     Q.   OKAY.  IF WE GO TO 583 AND BLOW UP THE TOP.

11:54AM 14          DO YOU SEE THAT THIS PAGE AND THE PAGE THAT FOLLOWS TALKS

11:54AM 15     ABOUT HOW YOU CAN PULL UP ALL OF THE RESULTS FOR PARTICULAR

11:54AM 16     PATIENTS OR PHYSICIANS OR PROVIDERS?

11:55AM 17     A.   YES, IT APPEARS THAT WAY.

11:55AM 18     Q.   OKAY.  IF WE CAN GO TO 585.  IF WE CAN PULL UP THE THIRD

11:55AM 19     BULLET.

11:55AM 20          AND DO YOU SEE THERE THAT THERE WAS AN OPTION WITHIN THE

11:55AM 21     LIS TO INDICATE THAT VENOUS DRAWS ONLY COULD BE IDENTIFIED AS A

11:55AM 22     PREFERENCE?

11:55AM 23     A.   I SEE THAT, YES.

11:55AM 24     Q.   AND SO DID YOU UNDERSTAND THAT IF DOCTORS DIDN'T WANT THE

11:55AM 25     MICRO-SAMPLE TAKEN, THAT THEY COULD, THEY COULD LET THE COMPANY

11:55AM  1    KNOW THAT VENOUS DRAWS COULD BE USED AS A DEFAULT?

11:55AM  2    A.   I WAS NOT AWARE OF POLICY AROUND DRAWING -- THE DECISIONS

11:55AM  3    FOR DRAWING VENOUS OR CAPILLARY BLOOD.

11:56AM  4    Q.   OKAY.  AND IN ADDITION TO THIS LIS POLICY, THERE WERE

11:56AM  5    HUNDREDS OF POLICIES THAT YOU REVIEWED IN CONNECTION WITH YOUR

11:56AM  6    WORK AT THE COMPANY.

11:56AM  7         IS THAT FAIR?

11:56AM  8    A.   YEAH, PROBABLY A COUPLE HUNDRED.

11:56AM  9    Q.   AND I THINK SOMETIMES THAT WOULD INCLUDE, SOMETIMES THAT

11:56AM  10   WOULD INCLUDE ASSAY VERIFICATION INFORMATION?

11:56AM  11   A.   YES.

11:56AM  12   Q.   RIGHT?  FOR FDA CLEARED DEVICES?

11:56AM  13   A.   YES, YES.

11:56AM  14   Q.   AND DO YOU RECALL THERE WERE A COUPLE INSTANCES WHERE

11:56AM  15   THERE WERE LAB DEVELOPED TESTS THAT YOU LOOKED AT AS WELL?

11:56AM  16   A.   YES.

11:56AM  17   Q.   AND IN ADDITION TO -- AND THOSE WOULD REQUIRE VALIDATION

11:57AM  18   PLANS; RIGHT?

11:57AM  19   A.   YES.

11:57AM  20   Q.   THE -- AND IF WE CAN LOOK AT EXHIBIT 4533, WHICH IS IN

11:57AM  21   EVIDENCE.

11:57AM  22         MAY I PUBLISH, YOUR HONOR?

11:57AM  23             THE COURT:  YES.

11:57AM  24   BY MR. WADE:

11:57AM  25   Q.   DO YOU RECALL THIS DOCUMENT?  THE GOVERNMENT ASKED YOU A

11:57AM 1    FEW QUESTIONS ABOUT THIS.

11:57AM 2    A.   IS THIS 4533?

11:57AM 3    Q.   4533, CORRECT.

11:57AM 4         CAN WE GO BACK?

11:57AM 5         DO YOU RECALL THIS DOCUMENT?

11:57AM 6    A.   I CAN'T REALLY SEE IT, AND I AM NOT SEEING 4533 ON HERE --

11:57AM 7    IN HERE.

11:57AM 8    Q.   IT'S IN EVIDENCE.  I THINK THE GOVERNMENT DIDN'T -- JUST

11:58AM 9    CALLED IT UP BECAUSE IT WAS IN EVIDENCE.

11:58AM 10        MAYBE I'LL PUT IT ON YOUR SCREEN, AND IF NEED BE, I CAN

11:58AM 11   TRY TO GET YOU A HARD COPY.  OKAY?  I JUST HAVE A COUPLE OF

11:58AM 12   QUESTIONS.

11:58AM 13   A.   OKAY.  THANK YOU.

11:58AM 14   Q.   AND DO YOU RECALL THIS DOCUMENT -- IF WE LOOK AT THE CHART

11:58AM 15   ON THE BOTTOM, THIS RELATED TO TESTS THAT WERE DONE ON

11:58AM 16   THERANOS'S DEVICE?

11:58AM 17   A.   OH, RIGHT.

11:58AM 18   Q.   AND DO YOU RECALL THAT MR. LEACH ASKED YOU SOME QUESTIONS

11:58AM 19   ABOUT THIS?

11:58AM 20   A.   YES.

11:58AM 21   Q.   AND I JUST WANT TO FOCUS ON, IF WE CAN HIGHLIGHT THE

11:58AM 22   INITIAL COLUMN GOING DOWN.

11:58AM 23        DO YOU SEE THAT?

11:58AM 24   A.   YES.

11:58AM 25   Q.   OKAY.  AND JUST SO WE'RE CLEAR, NONE OF THOSE TESTS CAME

11:58AM  1    INTO THE LAB WHEN YOU WERE SERVING AS THE LABORATORY DIRECTOR;

11:58AM  2    CORRECT?

11:58AM  3    A.   CORRECT.

11:58AM  4    Q.   OKAY.  AND SO ORDINARILY BEFORE A TEST COMES INTO THE LAB,

11:58AM  5    THERE'S A VALIDATION REPORT THAT NEEDS TO BE PREPARED IF IT'S

11:58AM  6    AN LDT; CORRECT?

11:58AM  7    A.   CORRECT.

11:58AM  8    Q.   AND THAT HAPPENS BEFORE YOU COULD OFFER THE TEST WITHIN A

11:59AM  9    CLIA LAB?

11:59AM  10   A.   CORRECT.

11:59AM  11   Q.   AND NONE OF THESE PARTICULAR LDT'S CAME ON BOARD WHEN YOU

11:59AM  12   WERE SERVING AS CO-LABORATORY DIRECTOR; CORRECT?

11:59AM  13   A.   CORRECT.

11:59AM  14   Q.   AND IF THE COMPANY STOPPED DOING CERTAIN LDT'S FOR

11:59AM  15   BUSINESS REASONS OF SOME KIND, THAT WOULDN'T NECESSARILY BE

11:59AM  16   SOMETHING THAT YOU WOULD NEED TO OPINE ON, WOULD IT?

11:59AM  17   A.   NO.

11:59AM  18   Q.   THE -- THERE WERE -- YOU WERE ASKED ABOUT DELEGATIONS LAST

12:00PM  19   TIME.

12:00PM  20        DO YOU RECALL THAT?

12:00PM  21   A.   I DO.

12:00PM  22   Q.   AND I BELIEVE YOU SAID THERE WAS A DELEGATION MADE, I

12:00PM  23   THINK YOU RECALLED ONE DELEGATION TO A TECHNICAL SUPERVISOR?

12:00PM  24   A.   I LOOKED AT MY NOTES AND MY INFORMATION OVER THE WEEKEND.

12:00PM  25   THERE WAS, YES, ONE DELEGATION, BUT IT WAS NOT THE TECHNICAL

12:00PM  1    SUPERVISOR.  IT WAS THE QA/QC MANAGER.

12:00PM  2    Q.   OKAY.  OKAY.  SO YOU WENT AND DID SOME RESEARCH OVER THE

12:00PM  3    WEEKEND?

12:00PM  4    A.   I LOOKED AT MY NOTES, YEAH.

12:00PM  5    Q.   OKAY.  DID THE GOVERNMENT ASK YOU FOR A COPY OF YOUR

12:00PM  6    NOTES, BY ANY CHANCE, WHEN THEY TALKED TO YOU?

12:00PM  7    A.   NO.

12:00PM  8    Q.   AND IT WAS A QA/QC SUPERVISOR.

12:00PM  9         WAS THAT A MR. GEE, LANGLY GEE?

12:00PM 10    A.   I THINK SO, YEAH.  IT WAS ACTUALLY A MANAGER, NOT A

12:01PM 11    SUPERVISOR.

12:01PM 12    Q.   OKAY.  DO YOU RECALL IT BEING MR. GEE, LANGLY GEE?

12:01PM 13    A.   YES.

12:01PM 14    Q.   OKAY.  AND THE QA/QC SUPERVISOR IS THE PERSON WHO IS

12:01PM 15    RESPONSIBLE FOR DOING ALL OF THE QUALITY CONTROL WORK WITHIN

12:01PM 16    THE LAB; RIGHT?

12:01PM 17    A.   OR REVIEWING IT.  NOT NECESSARILY DOING IT, BUT REVIEWING

12:01PM 18    IT AND ANALYZING IT.

12:01PM 19    Q.   AND YOU RECALL THAT YOU REVIEWED A FORMAL WRITTEN

12:01PM 20    DELEGATION FOR HIM THAT WAS SENT TO YOU AT SOME POINT?

12:01PM 21    A.   YES.

12:01PM 22    Q.   OKAY.  AND THAT WASN'T NECESSARILY ONE OF THE MATERIALS

12:01PM 23    THAT EXISTED WITHIN YOUR COMPUTER GIVEN --

12:01PM 24    A.   YES, IT WAS.

12:01PM 25    Q.   OH, IT WAS?

```
12:01PM   1    A.   YES.

12:01PM   2    Q.   AND SO YOU SIGNED THAT DELEGATION FOR MR. GEE SO HE COULD

12:01PM   3    DO THAT WORK?

12:01PM   4    A.   YES.

12:01PM   5    Q.   AND YOU DON'T RECALL AS YOU SIT HERE TODAY WHETHER YOU SAW

12:02PM   6    ANY OTHER DELEGATIONS?

12:02PM   7    A.   I DO NOT BELIEVE THAT I DID.

12:02PM   8    Q.   OKAY.  AND DO YOU RECALL WHETHER THERE WERE ANY

12:02PM   9    DELEGATIONS THAT WERE IN PLACE AT THE TIME THAT YOU CAME IN?

12:02PM  10    A.   I DID NOT SEE ANY.

12:02PM  11    Q.   OKAY.  SO THERE MAY HAVE BEEN DELEGATIONS, YOU JUST DIDN'T

12:02PM  12    SEE ANY?

12:02PM  13    A.   CORRECT.

12:02PM  14    Q.   THE -- I WANT TO ASK YOU ABOUT ONE MORE SOP.

12:02PM  15    A.   OKAY.

12:02PM  16         MR. WADE:  MAY I APPROACH, YOUR HONOR?

12:03PM  17         THE COURT:  YES.

12:03PM  18    BY MR. WADE:

12:03PM  19    Q.   (HANDING.)

12:03PM  20    A.   THANK YOU.

12:03PM  21    Q.   I'M HANDING YOU WHAT IS MARKED AS EXHIBIT 5400.  AND YOU

12:03PM  22    RECOGNIZE -- THIS IS A POLICY RELATING TO FINGERSTICK

12:03PM  23    COLLECTION DATED 11-17-2015.

12:03PM  24         DO YOU SEE THAT?

12:03PM  25    A.   YES.
```

12:03PM  1    Q.   AND IF YOU LOOK AT THE LAST PAGE UNDER THE REVISION

12:03PM  2    HISTORY --

12:03PM  3    A.   OKAY.

12:03PM  4    Q.   -- DO YOU SEE THAT OTHER VERSIONS OF THIS WERE APPROVED

12:03PM  5    DURING YOUR TENURE AS CO-LABORATORY DIRECTOR?

12:04PM  6    A.   YES.

12:04PM  7              MR. WADE:  MOVE THE ADMISSION OF 5400.

12:04PM  8              MR. LEACH:  FOUNDATION.

12:04PM  9              THE COURT:  CAN YOU ASK A FEW MORE QUESTIONS

12:04PM 10    REGARDING FOUNDATION?

12:04PM 11              MR. WADE:  SURE.

12:04PM 12    Q.   DO YOU RECALL REVIEWING THE FINGERSTICK COLLECTION SOP?

12:04PM 13    A.   ONCE.

12:04PM 14    Q.   OKAY.  AND YOU UNDERSTAND THAT WITHIN THE LAB SOME

12:04PM 15    VERSIONS -- SOMETIMES VERSIONS ARE UPDATED AND THEY CHANGE OVER

12:04PM 16    TIME?

12:04PM 17    A.   YES.

12:04PM 18    Q.   OKAY.  AND THIS ISN'T THE PRECISE VERSION THAT YOU SAW;

12:04PM 19    CORRECT?

12:04PM 20    A.   CORRECT.

12:04PM 21    Q.   OKAY.  I'D LIKE TO ASK SOME QUESTIONS ABOUT HOW THIS MAY

12:04PM 22    HAVE DIFFERED FROM YOUR VERSION IF YOU RECALL.

12:04PM 23         AND I WOULD OFFER 5400.

12:04PM 24              MR. LEACH:  SAME OBJECTION, YOUR HONOR.

12:04PM 25              THE COURT:  ARE YOU GOING TO CONTINUE A LITTLE BIT

| | | |
|---|---|---|
| 12:04PM | 1 | MORE FOUNDATION ABOUT HOW SHE KNOWS THIS? |
| 12:04PM | 2 | MR. WADE:  SURE. |
| 12:04PM | 3 | Q.  AS PART OF THE REVIEW OF POLICIES, YOU WERE -- YOU WOULD |
| 12:05PM | 4 | BE SENT DIFFERENT PAPERS THROUGH DOCUSIGN? |
| 12:05PM | 5 | DO YOU RECALL THAT? |
| 12:05PM | 6 | A.  YES. |
| 12:05PM | 7 | Q.  AND I THINK YOU JUST TESTIFIED A FEW MINUTES AGO THAT |
| 12:05PM | 8 | BECAUSE OF THE COMPUTER CHANGE, YOU DIDN'T NECESSARILY HAVE ALL |
| 12:05PM | 9 | OF THE POLICIES IN YOUR POSSESSION. |
| 12:05PM | 10 | A.  YES, THAT'S TRUE. |
| 12:05PM | 11 | Q.  AND DO YOU RECALL THAT WHEN YOU MET WITH THE GOVERNMENT, |
| 12:05PM | 12 | YOU MENTIONED TO THEM HOW YOU HAD LOOKED AT SOME OF -- A |
| 12:05PM | 13 | FINGERSTICK SOP? |
| 12:05PM | 14 | A.  YES. |
| 12:05PM | 15 | Q.  AND, AND DO YOU RECALL THAT THAT FINGERSTICK SOP SET FORTH |
| 12:05PM | 16 | THE SPECIFIC METHODS BY WHICH THERANOS WOULD GO ABOUT |
| 12:05PM | 17 | COLLECTING FINGERSTICK SAMPLES? |
| 12:05PM | 18 | A.  YES. |
| 12:05PM | 19 | Q.  AND THEY HAD, THEY HAD A SPECIFIC PROCESS IN PLACE; RIGHT? |
| 12:05PM | 20 | A.  YES. |
| 12:05PM | 21 | Q.  AND THEY -- YOU HAD SIGNED A COUPLE OF DIFFERENT VERSIONS |
| 12:05PM | 22 | OF THAT? |
| 12:05PM | 23 | A.  NO.  I SIGNED ONE. |
| 12:05PM | 24 | Q.  JUST ONE? |
| 12:05PM | 25 | A.  YES. |

12:05PM   1    Q.   OKAY.  AND THAT WAS AN UPDATE ON A PRIOR POLICY THAT WAS

12:05PM   2    PUT IN PLACE?

12:05PM   3    A.   I BELIEVE SO.

12:05PM   4    Q.   OKAY.  AND HAD YOU AT THE TIME EVER SEEN SUCH AN ELABORATE

12:06PM   5    AND SPECIFIC PROCEDURE FOR FINGERSTICK?

12:06PM   6    A.   FOR FINGERSTICKS?

12:06PM   7    Q.   YEAH.

12:06PM   8    A.   NO.

12:06PM   9    Q.   OKAY.  AND SO IS THAT PART OF THE REASON WHY IT STANDS,

12:06PM  10    STANDS OUT IN YOUR MIND?

12:06PM  11    A.   UM, NO, NOT PARTICULARLY.

12:06PM  12         IT STANDS OUT IN MY MIND BECAUSE I KNEW THAT THEY WERE

12:06PM  13    WORKING ON SOME FINGERSTICK TECHNOLOGY, AND I WAS INTERESTED IN

12:06PM  14    THAT, AND SO I RECALLED SEEING SOMETHING -- I WAS INTERESTED IN

12:06PM  15    SOMETHING THAT MIGHT RELATE TO IT, AND THAT'S WHY I RECALL

12:06PM  16    SEEING IT.

12:06PM  17    Q.   OKAY.  AND DO YOU RECALL SEEING SOME SPECIFIC PICTURES

12:06PM  18    ABOUT EXACTLY HOW BLOOD WOULD BE DRAWN AND THE LIKE?

12:06PM  19    A.   YOU KNOW, I DON'T.  I CAN'T SAY THAT THEY WEREN'T THERE,

12:06PM  20    BUT I DO NOT RECALL PICTURES IN THE VERSION THAT I SIGNED.

12:06PM  21    Q.   OKAY.  AND DO YOU RECALL THAT THERE WERE SOME PICTURES

12:07PM  22    ABOUT -- WITH THE CTN DEVICE THAT THERANOS USED?

12:07PM  23    A.   I DON'T.

12:07PM  24    Q.   OKAY.  DO YOU RECALL THAT THERE WAS A PRETTY ELABORATE

12:07PM  25    PROCESS WHERE THEY WOULD WARM THE FINGER AND NOTE SPECIFIC

12:07PM 1    PLACES ON THE FINGER WHERE THEY WOULD DRAW THE SAMPLE FROM?

12:07PM 2    A.   THAT'S PRETTY STANDARD FOR FINGERSTICKS.

12:07PM 3    Q.   OKAY.

12:07PM 4    A.   ACTUALLY, I DON'T RECALL THAT.  AND I ACTUALLY DO NOT

12:07PM 5    BELIEVE THAT THERE WERE ANY PICTURES OF THE COLLECTION DEVICE

12:07PM 6    BECAUSE LOOKING -- I JUST FOUND ONE IN THIS, AND THAT IS NOT

12:07PM 7    SOMETHING THAT I HAVE EVER SEEN BEFORE.

12:07PM 8    Q.   OKAY.  AND DO YOU RECALL REFERENCES TO THERANOS'S

12:07PM 9    NANOTAINERS?

12:07PM 10   A.   POSSIBLY.  I DON'T SPECIFICALLY RECALL.

12:07PM 11   Q.   OKAY.

12:08PM 12        I'LL OFFER THE DOCUMENT.

12:08PM 13            MR. LEACH:  SAME OBJECTION, YOUR HONOR.

12:08PM 14            THE COURT:  I DON'T THINK THERE'S ENOUGH FOUNDATION

12:08PM 15   AS TO THIS DOCUMENT.  SHE HAS KNOWLEDGE ABOUT THIS AREA, BUT

12:08PM 16   NOT THIS DOCUMENT, SO I'LL SUSTAIN THE OBJECTION.

12:08PM 17            MR. WADE:  RIGHT.  I UNDERSTAND.

12:08PM 18   Q.   YOUR RECOLLECTION AS YOU SIT HERE TODAY IS THAT THE

12:08PM 19   FINGERSTICK COLLECTION WOULD HAVE BEEN AN EARLIER VERSION OF

12:08PM 20   THE DOCUMENT I'VE HANDED YOU; IS THAT RIGHT?

12:08PM 21   A.   YES.

12:08PM 22   Q.   OKAY.  FAIR ENOUGH.

12:08PM 23        THE -- LET ME GO TO -- THE -- AT THE TIME THAT YOU

12:09PM 24   TRANSITIONED OUT OF SERVING AS THE CO-LABORATORY DIRECTOR, DO

12:09PM 25   YOU RECALL THAT THAT WAS COMMUNICATED TO THE COMPANY, THAT YOU

| 12:09PM | 1 | WERE GOING TO BE MAKING THE TRANSITION AND FILING SOME |
|---|---|---|
| 12:09PM | 2 | PAPERWORK? |
| 12:09PM | 3 | A.   YES. |
| 12:09PM | 4 | Q.   LET'S LOOK AT 10584. |
| 12:10PM | 5 | DO YOU HAVE THAT IN FRONT OF YOU? |
| 12:10PM | 6 | A.   YES. |
| 12:10PM | 7 | Q.   AND IS THIS A DOCUMENT THAT RELATES TO YOUR TRANSITION -- |
| 12:10PM | 8 | YOUR FORMAL TRANSITION FROM A PAPERWORK STANDPOINT OUT OF |
| 12:10PM | 9 | THERANOS? |
| 12:10PM | 10 | A.   YES. |
| 12:10PM | 11 | MR. WADE:  OKAY.  MOVE THE ADMISSION OF 10584. |
| 12:10PM | 12 | MR. LEACH:  NO OBJECTION. |
| 12:10PM | 13 | THE COURT:  IT'S ADMITTED, AND IT MAY BE PUBLISHED. |
| 12:10PM | 14 | (DEFENDANT'S EXHIBIT 10584 WAS RECEIVED IN EVIDENCE.) |
| 12:10PM | 15 | MR. WADE:  AND IF WE CAN GO JUST GO TO THE BOTTOM |
| 12:10PM | 16 | EMAIL. |
| 12:10PM | 17 | Q.   AND THIS IS AN EMAIL FROM MR. HURST WHERE HE JUST PROVIDES |
| 12:10PM | 18 | MR. BALWANI WITH THAT REMINDER THAT YOU'RE GOING TO BE ENDING |
| 12:10PM | 19 | YOUR SERVICES AS CO-DIRECTOR JUNE 30TH. |
| 12:10PM | 20 | DO YOU SEE THAT? |
| 12:10PM | 21 | A.   YES. |
| 12:10PM | 22 | Q.   AND THIS WAS WHERE YOU AGREED TO STAY ABOUT -- WAS IT |
| 12:10PM | 23 | ABOUT A MONTH AND A HALF PAST YOUR INITIAL CONTRACT? |
| 12:11PM | 24 | A.   YES. |
| 12:11PM | 25 | Q.   AND IT NOTES THAT YOU'LL FILE THAT NOTIFICATION WITH LFS, |

12:11PM  1    OR MR. HURST WILL.

12:11PM  2        DO YOU SEE THAT?

12:11PM  3    A.   I WILL, YEAH.

12:11PM  4    Q.   AND WHAT IS LFS?

12:11PM  5    A.   LABORATORY FIELD SERVICES.

12:11PM  6    Q.   AND IS THAT THE PART OF THE CALIFORNIA DEPARTMENT OF

12:11PM  7    HEALTH THAT DEALS WITH LABS?

12:11PM  8    A.   YES.

12:11PM  9    Q.   OKAY.  AND HE BASICALLY SAYS, IF YOU HAVE ANY QUESTIONS,

12:11PM 10    MR. BALWANI IS INVITED TO ASK THEM; CORRECT?

12:11PM 11    A.   YES.

12:11PM 12    Q.   AND THERE'S NO INDICATION -- THIS WAS JUST TO END THE

12:11PM 13    PORTION OF THE SERVICES RELATING TO YOUR CO-DIRECTORSHIP;

12:11PM 14    RIGHT?

12:11PM 15    A.   CORRECT.

12:11PM 16    Q.   ALL RIGHT.  AND IF WE JUST GO UP THE CHAIN.  MR. BALWANI

12:11PM 17    THANKS YOU AND SAYS, "PLEASE LET US KNOW IF ANYTHING HAS

12:12PM 18    CHANGED OR CHANGES AND LYNETTE WANTS TO CONTINUE WORKING;"

12:12PM 19    RIGHT?

12:12PM 20    A.   CORRECT.

12:12PM 21    Q.   HE WAS HAPPY TO CONTINUE TO HAVE YOUR SERVICES; RIGHT?

12:12PM 22    A.   YES.

12:12PM 23    Q.   OKAY.  AND LET'S GO UP.

12:12PM 24        YOU NOTE THAT, FOR THE RECORDS, ATTACHED IS THE FORM 193

12:12PM 25    THAT IS GOING TO BE SENT TO LABORATORY FIELD SERVICES?

12:12PM  1         DO YOU SEE THAT?

12:12PM  2    A.   YES.

12:12PM  3    Q.   OKAY.  AND IT'S GOING TO BE -- EVEN THOUGH YOU'RE SENDING

12:12PM  4    THIS ON JUNE 23RD, IT'S GOING TO BE EFFECTIVE -- IT'S GOING TO

12:12PM  5    BE EFFECTIVE JUNE 30TH.

12:12PM  6         DO YOU SEE THAT?

12:12PM  7    A.   YES.

12:12PM  8    Q.   AND YOU NOTE -- YOU'RE STILL LOOKING AT A BATCH OF

12:12PM  9    DOCUMENTS; RIGHT?

12:12PM 10    A.   YES.

12:12PM 11    Q.   AND SO YOU WORKED RIGHT UP UNTIL THE END?

12:12PM 12    A.   YES.

12:12PM 13    Q.   OKAY.  AND IF WE GO TO THE ATTACHMENT, THIS IS A LETTER

12:13PM 14    THAT NOTIFIES THERANOS THAT YOU'RE GOING TO BE STEPPING DOWN AS

12:13PM 15    CO-DIRECTOR; CORRECT?

12:13PM 16    A.   NO.  THAT'S ACTUALLY A LETTER SENT TO THE LABORATORY FIELD

12:13PM 17    SERVICES REGARDING THERANOS.

12:13PM 18    Q.   FAIR ENOUGH.

12:13PM 19         IS THAT THE 111 BROADWAY?  IF WE GO UP ON THE TOP.

12:13PM 20    A.   YEAH -- NO.

12:13PM 21    Q.   THERE'S AN ADDRESS MISSING THERE, BUT --

12:13PM 22    A.   YES.

12:13PM 23    Q.   -- DO YOU HAVE IT IN YOUR DOCUMENT?

12:13PM 24    A.   YES.

12:13PM 25    Q.   AND SO IT WAS ADDRESSED TO LABORATORY FIELD SERVICES?

12:13PM   1    A.   THE OVERALL MAILING WAS ADDRESSED TO LABORATORY FIELD

12:13PM   2    SERVICES.

12:13PM   3    Q.   OKAY.  AND IF WE GO TO THE NEXT PAGE --

12:13PM   4    A.   THAT'S THE FORM THAT THE LETTER WENT WITH.

12:13PM   5    Q.   OKAY.  AND IT NOTES ON THIS FORM THAT YOU WERE REMOVED AS

12:13PM   6    OF JUNE 30TH; CORRECT?

12:13PM   7    A.   RIGHT.

12:13PM   8    Q.   OKAY.  AND DO YOU RECALL THAT A LITTLE BIT LATER THERE WAS

12:13PM   9    SOME CONFUSION AS TO WHETHER THE PAPERWORK HAD BEEN PROCESSED

12:14PM  10    CORRECTLY?

12:14PM  11    A.   I DO.

12:14PM  12    Q.   AND DO YOU RECALL THAT IN CONNECTION WITH SOME MOCK AUDIT

12:14PM  13    WORK THAT MR. HURST WAS DOING, THAT THEY REALIZED THAT YOU WERE

12:14PM  14    STILL ON THE PAPERWORK?

12:14PM  15    A.   I DID NOT KNOW THAT.

12:14PM  16              MR. LEACH:  OBJECTION.  VAGUE, FOUNDATION.

12:14PM  17              THE COURT:  WELL, I'LL ALLOW THAT LAST ANSWER TO

12:14PM  18    REMAIN.  THE LAST ANSWER WAS THAT SHE WAS NOT AWARE OF THAT.

12:14PM  19    BY MR. WADE:

12:14PM  20    Q.   YOU WERE NOT AWARE OF THAT.  OKAY.

12:14PM  21         DO YOU RECALL BEING CONTACTED BY SOMEONE AT THE COMPANY IN

12:14PM  22    AUGUST OF 2015 TO RAISE THIS ISSUE WITH YOU?

12:14PM  23    A.   YES.

12:14PM  24    Q.   AND DO YOU RECALL WHO AT THE COMPANY CONTACTED YOU?

12:14PM  25    A.   I BELIEVE IT WAS MR. YOUNG.

12:15PM   1    Q.   DANIEL YOUNG?

12:15PM   2    A.   YEAH.

12:15PM   3    Q.   AND WERE YOU AWARE AT THE TIME THAT, AS MR. HURST'S

12:15PM   4    SERVICES CONTINUED, HE WAS DOING MOCK AUDITS TO HELP THE

12:15PM   5    COMPANY PREPARE FOR A CLIA INSPECTION?

12:15PM   6              MR. LEACH:  OBJECTION.  ASSUMES FACTS.

12:15PM   7              THE COURT:  WELL, OVERRULED AS TO THE FORM OF THE

12:15PM   8    QUESTION, IT WAS WHETHER SHE WAS AWARE.

12:15PM   9              THE WITNESS:  NO, I WAS NOT AWARE.

12:15PM  10    BY MR. WADE:

12:15PM  11    Q.   YOU WEREN'T AWARE OF THAT.  OKAY.

12:15PM  12         AND SO -- WELL, LET'S GO TO EXHIBIT 13158.

12:15PM  13    A.   UH-HUH.

12:15PM  14    Q.   DO YOU ALSO RECALL THAT THERE WAS A NEED THAT AROSE TO GET

12:15PM  15    A COPY OF YOUR CLINICAL LABORATORY BIOANALYST CERTIFICATE?

12:16PM  16    A.   YES.

12:16PM  17    Q.   SO THAT THE COMPANY WOULD HAVE IT FOR ITS PAPERWORK IN

12:16PM  18    ADVANCE OF AN INSPECTION THAT THEY WERE ANTICIPATING?

12:16PM  19    A.   I DIDN'T KNOW WHETHER IT WAS IN ADVANCE OF THE INSPECTION

12:16PM  20    OR AS A RESULT OF THE INSPECTION, BUT YES.

12:16PM  21    Q.   OKAY.  FAIR ENOUGH.

12:16PM  22         AND IS EMAIL 13158 AN EMAIL THAT YOU SENT TO DANIEL YOUNG

12:16PM  23    RELATING TO THAT LICENSE?

12:16PM  24    A.   YES.

12:16PM  25    Q.   OKAY.

12:16PM   1          MOVE THE ADMISSION OF 13158.

12:16PM   2               MR. LEACH:  NO OBJECTION, YOUR HONOR.

12:16PM   3               THE COURT:  IT'S ADMITTED.  IT MAY BE PUBLISHED.

12:16PM   4          (DEFENDANT'S EXHIBIT 13158 WAS RECEIVED IN EVIDENCE.)

12:16PM   5    BY MR. WADE:

12:16PM   6    Q.   AND THIS IS AN EMAIL WHERE YOU SAY, "HI DANIEL,

12:16PM   7          "ATTACHED IS A SCANNED IMAGE OF MY CURRENT BIOANALYST

12:17PM   8    LICENSE."

12:17PM   9          DO YOU SEE THAT?

12:17PM  10    A.   YES.

12:17PM  11    Q.   AND I THINK YOU SAID THIS ON DIRECT TESTIMONY, BUT IS THE

12:17PM  12    REASON THAT THEY NEED THAT IS BECAUSE THAT BIOANALYST LICENSE

12:17PM  13    IS WHAT GAVE YOU THE ABILITY TO SERVE AS A LABORATORY DIRECTOR?

12:17PM  14    A.   YES.

12:17PM  15    Q.   AND SO AS PART OF THE DOCUMENTATION THAT THE COMPANY WAS

12:17PM  16    MAINTAINING, THEY WANTED TO MAKE SURE THAT THEY HAD A COPY OF

12:17PM  17    THAT IN THEIR FILES; IS THAT RIGHT?

12:17PM  18    A.   YES.

12:17PM  19    Q.   AND YOU SENT THIS TO DANIEL YOUNG.

12:17PM  20          DID DANIEL YOUNG CALL YOU TO ASK YOU FOR IT?

12:17PM  21    A.   I DON'T RECALL WHETHER IT WAS -- I DON'T BELIEVE IT WAS A

12:17PM  22    CALL, NO.

12:17PM  23    Q.   OKAY.  YOU SEE MR. HURST IS COPIED HERE?

12:17PM  24    A.   YES.

12:17PM  25    Q.   AND DO YOU KNOW WHETHER YOU HEARD ABOUT THIS FROM

12:17PM 1     MR. HURST?

12:17PM 2     A.   I DON'T RECALL.

12:17PM 3     Q.   YOU DON'T RECALL.

12:17PM 4          BUT YOU KNEW SOMEONE IN THIS TIME PERIOD WAS ASKING FOR A

12:17PM 5     COPY OF THAT PAPERWORK?

12:17PM 6     A.   UH-HUH.

12:17PM 7     Q.   AND YOU DON'T RECALL WHETHER IT WAS IN CONNECTION WITH

12:17PM 8     AUDIT PREPARATION?

12:17PM 9     A.   NO, I DIDN'T KNOW WHETHER IT WAS IN CONNECTION WITH

12:18PM 10    PREPARATION OR WHETHER IT WAS THE RESULT OF AN AUDIT FINDING.

12:18PM 11    Q.   FAIR ENOUGH.

12:18PM 12         THERE WAS ALSO -- IN AND AROUND THE SAME TIME PERIOD,

12:18PM 13    THERE WAS A NEED TO TRY TO CLEAR UP THAT MISCOMMUNICATION TO

12:18PM 14    MAKE SURE THAT YOU WERE REMOVED FROM THE PAPERWORK?

12:18PM 15    A.   YES.

12:18PM 16    Q.   DO YOU RECALL THAT?

12:18PM 17         AND YOU WORKED COOPERATIVELY WITH THE COMPANY TO MAKE SURE

12:18PM 18    THAT THAT WAS ADDRESSED; RIGHT?

12:18PM 19    A.   OH, YES.

12:18PM 20    Q.   AND THAT WAS JUST AN ADMINISTRATIVE ISSUE; RIGHT?

12:18PM 21    A.   YES.

12:18PM 22    Q.   OKAY.

12:18PM 23         THE COURT'S INDULGENCE FOR ONE MOMENT?

12:18PM 24             THE COURT:   YES.

12:18PM 25         (DISCUSSION AMONGST DEFENSE COUNSEL OFF THE RECORD.)

12:18PM   1              MR. WADE:  THANK YOU, DR. SAWYER.

12:18PM   2         I HAVE NO FURTHER QUESTIONS AT THIS TIME.

12:18PM   3              THE COURT:  MR. LEACH.

12:18PM   4              MR. LEACH:  VERY BRIEFLY, YOUR HONOR.

12:19PM   5         MAY I INQUIRE, YOUR HONOR?

12:19PM   6              THE COURT:  YES.

12:18PM   7                    **REDIRECT EXAMINATION**

12:18PM   8    BY MR. LEACH:

12:19PM   9    Q.   GOOD AFTERNOON, DR. SAWYER.  I JUST HAVE A FEW QUESTIONS.

12:19PM  10         COUNSEL DREW YOUR ATTENTION TO EXHIBIT 2553.

12:19PM  11         DO YOU HAVE THAT IN THE BINDER IN FRONT OF YOU?

12:19PM  12    A.   YES, GOT IT.

12:20PM  13    Q.   AND THIS APPEARS TO BE A LETTER DATED JUNE 12TH, 2015

12:20PM  14    ATTACHING SOME PAPERWORK?

12:20PM  15    A.   YES.

12:20PM  16    Q.   AND THE PAPERWORK INCLUDES A LIST OF LABORATORY PERSONNEL?

12:20PM  17    A.   IT DOES.

12:20PM  18    Q.   OKAY.  THIS IS WHAT YOU HAD BEEN LOOKING FOR, FOR THE PAST

12:20PM  19    FEW MONTHS IN YOUR WORK AS CO-LAB DIRECTOR?

12:20PM  20    A.   YES.

12:20PM  21    Q.   AND I JUST WANT TO BE CLEAR, YOU DON'T SIGN ANY OF THESE

12:20PM  22    LETTERS OR REPORTS IN HERE, DO YOU?

12:20PM  23    A.   I -- A LAB DIRECTOR NEEDS TO SIGN THEM.

12:20PM  24    Q.   BUT YOUR SIGNATURE IS NOT ON THESE; IS THAT CORRECT?

12:20PM  25    A.   NO.  IF THERE'S MORE THAN ONE LAB DIRECTOR, THERE DOESN'T

12:20PM   1    NEED TO BE BOTH OF US.  AND, YES, MY SIGNATURE IS NOT ON IT.

12:20PM   2    Q.   BUT THERE'S NOTHING ON THE FACE OF THESE DOCUMENTS THAT

12:20PM   3    THESE EVER WENT TO YOU?

12:20PM   4    A.   CORRECT.

12:20PM   5    Q.   OKAY.  YOU WERE ALSO ASKED SOME QUESTIONS ABOUT 13047.

12:21PM   6         DO YOU HAVE THAT IN FRONT OF YOU?

12:21PM   7    A.   I WILL IN A SECOND.

12:21PM   8    Q.   AND I'M NOT GOING TO DISPLAY THIS BECAUSE I ONLY HAVE ONE

12:21PM   9    QUESTION ABOUT THIS.

12:21PM  10         IS THIS THE EMAIL WHERE MR. HURST INDICATED THAT YOU

12:21PM  11    WANTED TO TERMINATE YOUR SERVICES AS THE CO-LAB DIRECTOR?

12:21PM  12    A.   YES.

12:21PM  13    Q.   AND YOU WANTED TO TERMINATE BECAUSE YOU WEREN'T SATISFIED

12:21PM  14    WITH THE LEVEL OF INFORMATION THAT YOU WERE GETTING?

12:21PM  15    A.   YES.

12:21PM  16    Q.   AND THE DATE OF THE EMAIL IS APRIL 5TH, 2015; IS THAT

12:21PM  17    CORRECT?

12:21PM  18    A.   YES.

12:21PM  19    Q.   SO YOU COME ON AT SOME POINT IN LATE 2014, AND BY APRIL OF

12:21PM  20    2015 YOU WANT OUT?

12:21PM  21    A.   YES.

12:21PM  22    Q.   YOU WERE ASKED A NUMBER OF QUESTIONS ABOUT THE DOCUMENTS

12:21PM  23    THAT YOU OBTAINED FROM YOUR WORK AS THE CO-LAB DIRECTOR.

12:21PM  24         DO YOU RECALL THAT QUESTIONING?

12:21PM  25    A.   YES.

12:21PM  1    Q.   AND IF YOU SIGNED AN SOP OR A VERIFICATION DOCUMENT, IS

12:21PM  2    THAT SOMETHING THAT YOU ALWAYS SENT BACK TO THERANOS?

12:21PM  3    A.   YES.  WELL, I WAS SIGNING THEM VIA DOCUSIGN, SO THEN

12:21PM  4    DOCUSIGN GAVE COPIES TO -- WENT TO THERANOS, AND USUALLY I GOT

12:21PM  5    A COPY ALSO.

12:22PM  6    Q.   OKAY.  AND WAS IT YOUR EXPECTATION THAT THERANOS WOULD

12:22PM  7    HAVE EQUAL ACCESS TO THE DOCUMENTS THAT YOU SIGNED?

12:22PM  8    A.   OH, YES.

12:22PM  9    Q.   YOU DIDN'T HAVE SOME SECRET SOP THAT YOU DIDN'T SHARE WITH

12:22PM  10   THEM?

12:22PM  11   A.   NO.

12:22PM  12   Q.   YOU WERE ASKED A NUMBER OF QUESTIONS ABOUT SOMETHING

12:22PM  13   CALLED LIS.

12:22PM  14        DO YOU REMEMBER THAT?

12:22PM  15   A.   YES.

12:22PM  16   Q.   AND YOU NEVER SAW THE LIS SYSTEM, DID YOU?

12:22PM  17   A.   NO.

12:22PM  18   Q.   YOU NEVER USED THE LIS SYSTEM, DID YOU?

12:22PM  19   A.   NO.

12:22PM  20   Q.   YOU NEVER DREW A PATIENT RECORD FROM THE LIS SYSTEM?

12:22PM  21   A.   I DID NOT.

12:22PM  22   Q.   AND YOU NEVER HEARD ABOUT ANYBODY DOING THAT, DID YOU?

12:22PM  23   A.   NO, BUT I WOULDN'T REALLY EXPECT TO HEAR THAT.

12:22PM  24   Q.   OKAY.  WE SAW REFERENCE IN THE LIS SOP ABOUT SOMETHING

12:22PM  25   CALLED THE NANOTAINER.

12:22PM   1         AND I THINK YOU SAID YOU DIDN'T KNOW WHAT THAT WAS?

12:22PM   2    A.   YES, YES.

12:22PM   3    Q.   AND THERE WAS SOME REFERENCE TO PULLING UP RESULTS FOR

12:22PM   4    DOCTORS.

12:22PM   5         YOU NEVER DID THAT THROUGH THE LIS SYSTEM; CORRECT?

12:22PM   6    A.   NO, I DID NOT.

12:22PM   7    Q.   THERE WAS ALSO A REFERENCE IN THERE TO VENOUS DRAWS.

12:22PM   8         DO YOU REMEMBER THAT?

12:22PM   9    A.   YES.

12:22PM  10    Q.   AND DID YOU HAVE AN UNDERSTANDING AT THE TIME THAT

12:22PM  11    THERANOS WAS TESTING FROM FINGERSTICKS ON THEIR OWN DEVICES?

12:23PM  12    A.   NOT THAT THEY WERE TESTING, NO.

12:23PM  13    Q.   DID YOU HAVE AN UNDERSTANDING THAT THERANOS WAS ACTUALLY

12:23PM  14    USING FINGERSTICK BLOOD TO TEST ON MODIFIED THIRD PARTY

12:23PM  15    DEVICES?

12:23PM  16    A.   NO.

12:23PM  17    Q.   YOU SIGNED SOME SOP'S OR SOME VERIFICATION REPORTS

12:23PM  18    RELATING TO LDT'S?

12:23PM  19    A.   NO, NO.

12:23PM  20         I DID SIGN A COUPLE OF VALIDATIONS RELATING TO LDT'S.

12:23PM  21    Q.   OKAY.  AND TELL ME YOUR MEMORY OF THOSE.

12:23PM  22    A.   THEY EITHER PERTAINED TO STOOL SAMPLES AND FINDING A

12:23PM  23    COUPLE OF DIFFERENT SPECIFIC BACTERIA ASSAYS TO FIND SOME

12:23PM  24    SPECIFIC BACTERIA IN STOOL SAMPLES, OR -- A COUPLE OF DIFFERENT

12:23PM  25    BACTERIA SAMPLES, OR THEY PERTAINED TO ANTIBIOTIC

12:23PM  1    SUSCEPTIBILITY TESTING OF BACTERIA.

12:23PM  2    Q.   OKAY.  SO NOTHING RELATING TO AN EDISON?

12:23PM  3    A.   CORRECT.

12:23PM  4    Q.   AND NOTHING RELATING TO DRAWING FINGERSTICK FOR USE ON A

12:24PM  5    MODIFIED SIEMENS MACHINE?

12:24PM  6    A.   DRAWING FINGERSTICK, YES.  BUT NO USE OF IT.  IT WAS

12:24PM  7    SIMPLY THE PHLEBOTOMY SOP.

12:24PM  8    Q.   AND IF -- WITHDRAWN.

12:24PM  9         YOU WERE ALSO ASKED SOME QUESTIONS ABOUT JERRY HURST.

12:24PM  10        DO YOU RECALL THAT?

12:24PM  11   A.   YES.

12:24PM  12   Q.   AND DID YOU EVER SEE JERRY HURST IN THE LAB?

12:24PM  13   A.   AT A THERANOS LAB?  NO.

12:24PM  14   Q.   THAT'S BECAUSE YOU DIDN'T PERSONALLY GO TO THE THERANOS

12:24PM  15   LAB?

12:24PM  16   A.   CORRECT.

12:24PM  17   Q.   AND DID YOU EVER CONSULT WITH MR. HURST ABOUT THE SOP'S

12:24PM  18   RELATING TO THE FDA MACHINES THAT YOU REVIEWED?

12:24PM  19   A.   NO.

12:24PM  20   Q.   FDA APPROVED MACHINES?

12:24PM  21   A.   NO.

12:24PM  22   Q.   YOU DON'T RECALL TALKING TO HIM ABOUT THOSE?

12:24PM  23   A.   I DON'T RECALL.  I DON'T THINK SO.

12:24PM  24   Q.   AT THE TIME YOU WERE A LAB DIRECTOR, OTHER THAN EXPRESSING

12:24PM  25   THE VIEW THAT YOU WANTED TO GET OUT, DID YOU EVER HAVE ANY

12:24PM  1    SUBSEQUENT CONVERSATIONS WITH MR. HURST?

12:24PM  2    A.   NOT ABOUT THERANOS.  NOT THAT I RECALL.

12:25PM  3    Q.   OKAY.

12:25PM  4         MAY I HAVE A MOMENT, YOUR HONOR?

12:25PM  5              THE COURT:  YES.

12:25PM  6         (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.)

12:25PM  7              MR. LEACH:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

12:25PM  8         THANK YOU, DR. SAWYER.

12:25PM  9              THE WITNESS:  THANK YOU.

12:25PM  10             MR. WADE:  BRIEFLY, YOUR HONOR.

12:25PM  11                     **RECROSS-EXAMINATION**

12:25PM  12   BY MR. WADE:

12:25PM  13   Q.   DR. SAWYER, MR. LEACH ASKED YOU ABOUT THE EMAIL WHERE THE

12:25PM  14   COMPANY WAS INFORMED THAT YOU WERE NOT GOING TO EXTEND YOUR

12:25PM  15   CONTRACT?

12:25PM  16   A.   YES.

12:25PM  17   Q.   DO YOU RECALL THAT?

12:25PM  18        THAT WAS AN EMAIL DATED APRIL 5TH, 2015; RIGHT?

12:25PM  19   A.   YES.

12:25PM  20   Q.   AND YOUR CONTRACT WAS SET TO EXPIRE IN MID-MAY; CORRECT?

12:26PM  21   A.   YES.

12:26PM  22   Q.   AND ISN'T IT CUSTOMARY TO GIVE NOTICE IN ADVANCE SO THAT

12:26PM  23   IF THE COMPANY NEEDS TO FIND A NEW LABORATORY DIRECTOR, THEY

12:26PM  24   HAVE ENOUGH TIME TO DO THAT?

12:26PM  25   A.   THAT'S WHY WE SENT IT, OR THAT'S WHY NOTICE WAS GIVEN IN

12:26PM  1    MAY OR APRIL, YES.

12:26PM  2    Q.   AND RIGHT.  SO YOU STARTED IN NOVEMBER AND YOU GAVE NOTICE

12:26PM  3    IN APRIL OF THE FACT THAT YOU WERE NOT INTENDING TO EXTEND THE

12:26PM  4    CONTRACT; RIGHT?

12:26PM  5    A.   YES.

12:26PM  6    Q.   AND THEN YOU MADE THE DECISION TO EXTEND IT ANOTHER

12:26PM  7    45 DAYS OR SO AT THE REQUEST OF MR. BALWANI; IS THAT RIGHT?

12:26PM  8    A.   RIGHT.  SOMETHING LIKE THAT.  ABOUT SIX WEEKS.

12:26PM  9    Q.   ABOUT A MONTH AND A HALF OR SO, UNTIL THE END OF JUNE?

12:26PM 10    A.   YES.

12:26PM 11             MR. WADE:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

12:26PM 12        THANK YOU, YOUR HONOR.

12:26PM 13             THE COURT:  MR. LEACH?

12:26PM 14             MR. LEACH:  NO, YOUR HONOR.

12:26PM 15             THE COURT:  MAY THIS WITNESS BE EXCUSED?

12:26PM 16             MR. LEACH:  YES.

12:26PM 17             MR. WADE:  YES.

12:27PM 18             THE COURT:  YOU MAY BE EXCUSED.

12:27PM 19        THE GOVERNMENT HAS ANOTHER WITNESS TO CALL?

12:27PM 20             MR. LEACH:  WE DO, YOUR HONOR.  I NOTICE IT'S 12:26.

12:27PM 21             THE COURT:  I THINK WE SHOULD TAKE OUR BREAK NOW.  I

12:27PM 22    SAID WE WOULD HAVE TO TAKE A BREAK AT 12:30, AND WE'LL RETURN

12:27PM 23    AT 1:00 OR 5 AFTER 1:00.  AND SO LET'S TAKE OUR BREAK NOW, AND

12:27PM 24    WE'LL COME BACK AND CALL YOUR NEXT WITNESS.

12:27PM 25             MR. LEACH:  THANK YOU, YOUR HONOR.

12:27PM  1              THE COURT:  GREAT.  THANK YOU.

12:27PM  2          (JURY OUT AT 12:27 P.M.)

01:04PM  3          (LUNCH RECESS TAKEN AT 12:27 P.M.)

         4

         5

         6

         7

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

| | | |
|---|---|---|
| 01:04PM | 1 | **AFTERNOON SESSION** |
| 01:13PM | 2 | (JURY IN AT 1:13 P.M.) |
| 01:13PM | 3 | THE COURT: WE'RE BACK ON THE RECORD. OUR JURY IS |
| 01:13PM | 4 | PRESENT. ALL COUNSEL ARE PRESENT, AND MS. HOLMES IS PRESENT. |
| 01:13PM | 5 | THE GOVERNMENT HAS AN ADDITIONAL WITNESS? |
| 01:13PM | 6 | MR. LEACH: YES, YOUR HONOR. |
| 01:13PM | 7 | THE UNITED STATES CALLED KINGSHUK DAS. |
| 01:14PM | 8 | THE COURT: GOOD AFTERNOON. IF YOU WOULD COME |
| 01:14PM | 9 | FORWARD. IF YOU COULD WALK UP HERE AND FACE OUR COURTROOM |
| 01:14PM | 10 | DEPUTY WHILE YOU RAISE YOUR RIGHT HAND, SHE HAS A QUESTION FOR |
| 01:14PM | 11 | YOU. |
| 01:14PM | 12 | **(GOVERNMENT'S WITNESS, KINGSHUK DAS, WAS SWORN.)** |
| 01:14PM | 13 | THE WITNESS: YES. |
| 01:14PM | 14 | THE CLERK: THANK YOU. |
| 01:14PM | 15 | THE COURT: PLEASE HAVE A SEAT HERE, SIR. |
| 01:14PM | 16 | I'LL INVITE YOU TO MAKE YOURSELF COMFORTABLE. FEEL FREE |
| 01:14PM | 17 | TO ADJUSTS THE CHAIR AND THE MICROPHONE AS YOU NEED. |
| 01:14PM | 18 | I'LL ENCOURAGE YOU TO SPEAK DIRECTLY INTO THE MICROPHONE. |
| 01:14PM | 19 | WHEN YOU ARE COMFORTABLE, WOULD YOU PLEASE STATE YOUR NAME |
| 01:14PM | 20 | AND THEN SPELL IT, PLEASE. |
| 01:14PM | 21 | THE WITNESS: YES. SHALL I KEEP MY MASK ON, SIR? |
| 01:14PM | 22 | THE COURT: HAVE YOU BEEN VACCINATED, SIR? |
| 01:14PM | 23 | THE WITNESS: YES. |
| 01:14PM | 24 | THE COURT: YES, YOU MAY, YOU MAY TAKE IT OFF. |
| 01:15PM | 25 | THE WITNESS: THANK YOU. |

01:15PM 1          MY NAME IS KINGSHUK DAS.  THAT IS SPELLED K-I-N-G-S-H-U-K.

01:15PM 2    LAST NAME DAS, D-A-S.

01:15PM 3          THE COURT:  THANK YOU.

01:15PM 4    COUNSEL.

01:15PM 5          MR. LEACH:  THANK YOU, YOUR HONOR.

01:15PM 6                       **DIRECT EXAMINATION**

01:15PM 7    BY MR. LEACH:

01:15PM 8    Q.   GOOD AFTERNOON, DR. DAS.

01:15PM 9          IN OR ABOUT DECEMBER OF 2015, WERE YOU ENGAGED TO SERVE AS

01:15PM 10   THE LABORATORY DIRECTOR OF THERANOS'S CALIFORNIA CLINICAL

01:15PM 11   LABORATORY?

01:15PM 12   A.   YES, I WAS.

01:15PM 13   Q.   OKAY.  HOW LONG DID YOU SERVE IN THAT ROLE?

01:15PM 14   A.   APPROXIMATELY TWO AND A HALF YEARS.

01:15PM 15   Q.   OKAY.  LET'S TALK A LITTLE BIT ABOUT YOUR EDUCATIONAL AND

01:15PM 16   PROFESSIONAL BACKGROUND.

01:15PM 17         DO YOU HAVE A COLLEGE DEGREE?

01:15PM 18   A.   I DO.

01:15PM 19   Q.   WHERE DID YOU GET YOUR COLLEGE DEGREE FROM?

01:15PM 20   A.   AT CASE WESTERN RESERVE UNIVERSITY.

01:15PM 21   Q.   AND WHAT WAS YOUR DEGREE IN?

01:15PM 22   A.   IT WAS A BACHELOR OF ARTS IN BIOCHEMISTRY.

01:15PM 23   Q.   AND WHEN DID YOU OBTAIN YOUR BACHELOR OF ARTS IN

01:15PM 24   BIOCHEMISTRY FROM CASE WESTERN?

01:15PM 25   A.   THAT WOULD HAVE BEEN 1996.

01:15PM  1    Q.   AND DO YOU HAVE A MEDICAL DEGREE?

01:16PM  2    A.   I DO.

01:16PM  3    Q.   AND IS THAT ALSO FROM CASE WESTERN RESERVE UNIVERSITY?

01:16PM  4    A.   YES.

01:16PM  5    Q.   AND WHEN DID YOU GET YOUR MEDICAL DEGREE?

01:16PM  6    A.   THAT WOULD HAVE BEEN 2002.

01:16PM  7    Q.   OKAY.  AFTER OBTAINING YOUR MEDICAL DEGREE, DID YOU DO AN

01:16PM  8    INTERNSHIP?

01:16PM  9    A.   I DID.

01:16PM  10   Q.   AND WHAT WAS YOUR INTERNSHIP IN?

01:16PM  11   A.   INTERNAL MEDICINE.

01:16PM  12   Q.   AND WHERE DID YOU PERFORM YOUR INTERNSHIP?

01:16PM  13   A.   THAT WAS AT THE UCLA WEST LOS ANGELES MEDICAL CENTER.

01:16PM  14   Q.   IS THAT IN WESTWOOD?

01:16PM  15   A.   YES, IT IS.

01:16PM  16   Q.   OKAY.  AND DID YOU PERFORM A RESIDENCY?

01:16PM  17   A.   I DID.

01:16PM  18   Q.   AND WHAT WAS YOUR RESIDENCY IN?

01:16PM  19   A.   IN CLINICAL PATHOLOGY.

01:16PM  20   Q.   WHAT IS CLINICAL PATHOLOGY?

01:16PM  21   A.   THAT IS A DISCIPLINE OF PATHOLOGY THAT SPECIALIZES IN

01:16PM  22   LABORATORY MEDICINE.

01:16PM  23   Q.   AFTER -- AND WHERE DID YOU PERFORM YOUR RESIDENCY?

01:16PM  24   A.   IT WAS BETWEEN TWO SITES.  FIRST AT WASHINGTON UNIVERSITY

01:16PM  25   IN ST. LOUIS, FOLLOWED BY THE UNIVERSITY OF SOUTHERN

```
01:16PM   1    CALIFORNIA.

01:16PM   2    Q.   SO YOU WENT FROM UCLA TO U.S.C.?

01:16PM   3    A.   THAT IS CORRECT, SIR.

01:17PM   4    Q.   OKAY.  AND DID YOU GO BACK TO UCLA AT SOME POINT AFTER

01:17PM   5    YOUR RESIDENCY?

01:17PM   6    A.   I DID.

01:17PM   7    Q.   TELL US ABOUT THAT, PLEASE.

01:17PM   8    A.   I PURSUED A FELLOWSHIP IN MOLECULAR GENETICS AT UCLA.

01:17PM   9    Q.   AND DID YOU ALSO SERVE ON THE FACULTY AT UCLA?

01:17PM  10    A.   I DID AFTERWARD.

01:17PM  11    Q.   AND WHAT POSITIONS ON THE FACULTY DID YOU HOLD?

01:17PM  12    A.   I STARTED OFF AS AN ASSOCIATE MEDICAL DIRECTOR FOR THEIR

01:17PM  13    MOLECULAR PATHOLOGY DEPARTMENT, AND THAT WAS FOLLOWED BY A ROLE

01:17PM  14    AS DIRECTOR OF OPERATIONS OF GENETIC MEDICINE, AFTER WHICH I

01:17PM  15    WAS ASSOCIATE MEDICAL DIRECTOR OF CLINICAL LABORATORIES.

01:17PM  16    Q.   OKAY.  AND HAVE YOU SERVED IN SOMETHING CALLED UCLA

01:17PM  17    CLINICAL LABORATORIES?

01:17PM  18    A.   YES.

01:17PM  19    Q.   AND WHAT IS THAT?

01:17PM  20    A.   THAT IS THE ACADEMIC MEDICAL CENTER LABORATORY AT UCLA.

01:17PM  21    Q.   AND DID YOU HOLD A POSITION EQUIVALENT TO A LABORATORY

01:17PM  22    DIRECTOR IN THAT INSTITUTION?

01:17PM  23    A.   CORRECT.

01:17PM  24    Q.   ARE YOU LICENSED TO PRACTICE MEDICINE?

01:17PM  25    A.   YES, I AM.
```

01:17PM   1    Q.   IN WHAT STATES?

01:18PM   2    A.   IN THE STATES OF CALIFORNIA AND MINNESOTA.

01:18PM   3    Q.   AND DO YOU HOLD ANY BOARD CERTIFICATIONS?

01:18PM   4    A.   I DO.

01:18PM   5    Q.   IN WHAT?

01:18PM   6    A.   IN CLINICAL PATHOLOGY.

01:18PM   7    Q.   I WANT TO DRAW YOUR ATTENTION TO THE TIME PERIOD DECEMBER

01:18PM   8    OF 2015.  IN OR ABOUT THAT TIME PERIOD, DID YOU LEARN OF A

01:18PM   9    COMPANY CALLED THERANOS?

01:18PM  10    A.   I DID.

01:18PM  11    Q.   OKAY.  HOW DID THERANOS COME TO YOUR ATTENTION?

01:18PM  12    A.   I RESPONDED TO A JOB POSTING ON THE THERANOS WEBSITE.

01:18PM  13    Q.   AND WHAT WAS THE JOB POSTING FOR?

01:18PM  14    A.   IT WAS FOR A LABORATORY DIRECTOR OF THEIR NEWARK,

01:18PM  15    CALIFORNIA LAB.

01:18PM  16    Q.   AND DID YOU INTERVIEW FOR THAT POSITION?

01:18PM  17    A.   I DID.

01:18PM  18    Q.   AND DID YOU INTERVIEW WITH MS. HOLMES?

01:18PM  19    A.   I DID.

01:18PM  20    Q.   AND DID YOU ULTIMATELY GET THE JOB?

01:18PM  21    A.   I DID.

01:18PM  22    Q.   WHEN YOU WERE HIRED, WERE YOU ABLE TO START RIGHT AWAY IN

01:18PM  23    DECEMBER OF 2015?

01:18PM  24    A.   NOT RIGHT AWAY.

01:18PM  25    Q.   OKAY.  WHY WAS THAT?

01:18PM 1    A.   I HAD ADDITIONAL RESPONSIBILITIES AT UCLA THAT NEEDED

01:18PM 2    ATTENDING TO.

01:18PM 3    Q.   OKAY.  AND WHEN WERE YOU ABLE TO START FULL TIME AS THE

01:19PM 4    LABORATORY DIRECTOR AT THERANOS?

01:19PM 5    A.   FULL TIME WOULD HAVE BEEN -- I FORGET THE EXACT DATE, BUT

01:19PM 6    IT WOULD HAVE BEEN A MONDAY IN MID-MARCH 2016.

01:19PM 7    Q.   OKAY.  AND IN BETWEEN MID-MARCH AND DECEMBER, DID YOU

01:19PM 8    SERVE IN A CONTRACTING ROLE FOR THERANOS AS YOU WRAPPED UP

01:19PM 9    THINGS AT UCLA?

01:19PM 10   A.   I DID.

01:19PM 11   Q.   OKAY.  I WANT TO TALK A LITTLE BIT ABOUT THE ROLE OF

01:19PM 12   LABORATORY DIRECTOR.

01:19PM 13        YOU HAD SERVED IN THAT CAPACITY BEFORE YOUR TIME AT

01:19PM 14   THERANOS; IS THAT CORRECT?

01:19PM 15   A.   CORRECT.

01:19PM 16   Q.   OKAY.  AND IN THE COURSE OF SERVING AS A LAB DIRECTOR, DID

01:19PM 17   YOU BECOME FAMILIAR WITH SOMETHING CALLED CMS?

01:19PM 18   A.   YES.

01:19PM 19   Q.   AND WHAT IS CMS?

01:19PM 20   A.   IT IS THE CENTER FOR MEDICARE AND MEDICAID SERVICES.

01:19PM 21   Q.   OKAY.  AND HOW IS CMS RELEVANT TO YOUR JOB AS A LABORATORY

01:19PM 22   DIRECTOR?

01:19PM 23   A.   THEY ADMINISTER THE CLIA AMENDMENTS AND, THEREFORE,

01:19PM 24   OVERSEE CLINICAL LABORATORIES IN THE UNITED STATES.

01:19PM 25   Q.   OKAY.  CLIA IS AN ACRONYM?

01:20PM  1      A.   YES.

01:20PM  2      Q.   OKAY.  AND TO YOUR KNOWLEDGE, DOES CMS CONDUCT ON-SITE

01:20PM  3   SURVEYS TO DETERMINE WHETHER ANY GIVEN LABORATORY IS MEETING

01:20PM  4   THE CONDITIONS AND STANDARDS SET FORTH IN THE FEDERAL

01:20PM  5   REGULATIONS?

01:20PM  6      A.   THAT IS MY UNDERSTANDING.

01:20PM  7      Q.   OKAY.  AND HAVE YOU PARTICIPATED IN SURVEYS LIKE THAT

01:20PM  8   BEFORE?

01:20PM  9      A.   I HAVE NOT.

01:20PM  10      Q.   OKAY.  PRIOR TO YOUR TIME AT THERANOS, HAVE YOU

01:20PM  11   PARTICIPATED IN A SURVEY SUCH AS THAT?

01:20PM  12      A.   NO.

01:20PM  13      Q.   OKAY.  DO CLIA REGULATIONS PLACE CERTAIN RESPONSIBILITIES

01:20PM  14   ON YOU WHEN SERVING AS A LABORATORY DIRECTOR?

01:20PM  15      A.   YES, THAT'S CORRECT.

01:20PM  16      Q.   OKAY.  DO THE CLIA REGULATIONS ALSO PROVIDE POSSIBLE

01:20PM  17   CONSEQUENCES FOR THE OWNERS AND OPERATORS OF LABORATORIES?

01:20PM  18      A.   THAT IS MY UNDERSTANDING.

01:20PM  19      Q.   OKAY.  DR. DAS, WE ARE HAVING SOME TECHNOLOGY ISSUES IN

01:20PM  20   THE COURTROOM TODAY, AND SO FOR THE DISPLAY OF DOCUMENTS, WE'RE

01:20PM  21   GOING TO BE DISPLAYING THEM UP ON THE WALL AND DIMMING THE

01:20PM  22   LIGHTS, AND THAT'S WHY WE HAVE A LIGHT NEAR YOU.

01:21PM  23           SO FOR CERTAIN DOCUMENTS, YOU SHOULD HAVE A COPY RIGHT IN

01:21PM  24   FRONT OF YOU IN YOUR BINDER, AND FOR OTHER ONES THAT ARE IN

01:21PM  25   EVIDENCE, WE MAY JUST BE DISPLAYING THEM.  BUT AT ANY POINT IF

01:21PM  1    YOU NEED ASSISTANCE OR CAN'T SEE SOMETHING OR NEEDS GLASSES,

01:21PM  2    JUST LET ME KNOW.

01:21PM  3        BUT I WANTED TO DRAW YOUR ATTENTION TO WHAT IS IN EVIDENCE

01:21PM  4    AS DOCUMENT 7603.

01:21PM  5        PERMISSION TO DISPLAY, YOUR HONOR?

01:21PM  6            THE COURT:  YES.  THAT'S NOT IN THE BINDER -- IT IS

01:21PM  7    IN THE BINDER?

01:21PM  8            MR. LEACH:  YES.

01:21PM  9            THE WITNESS:  IT IS HERE.

01:21PM 10    BY MR. LEACH:

01:21PM 11    Q.  DR. DAS, IF I COULD PLEASE DRAW YOUR ATTENTION TO PAGE 118

01:21PM 12    OF EXHIBIT 7603.

01:21PM 13        AND, MS. HOLLIMAN, IF WE COULD PLEASE HIGHLIGHT THE TOP

01:21PM 14    PORTION OF THE RIGHT COLUMN UNDERNEATH THE BOLD HEADING, THE

01:22PM 15    FIRST TWO PARAGRAPHS BENEATH THAT HEADING.

01:22PM 16        DR. DAS, I'M DRAWING YOUR ATTENTION TO PAGE 118 OF THE

01:22PM 17    TRIAL EXHIBIT.

01:22PM 18        DO YOU HAVE THAT IN FRONT OF YOU?

01:22PM 19    A.  I DO NOW.

01:22PM 20    Q.  OKAY.  ARE YOU ABLE TO SEE IT OKAY WITH THE LIGHT THERE?

01:22PM 21    A.  YES, I CAN SEE IT JUST FINE.

01:22PM 22    Q.  OKAY.  DO YOU SEE THE SECTION HEADING 493.1840,

01:22PM 23    "SUSPENSION, LIMITATION, OR REVOCATION OF ANY TYPE OF CLIA

01:22PM 24    CERTIFICATE"?

01:22PM 25        DO YOU SEE THAT HEADING?

01:22PM  1    A.  I DO.

01:22PM  2            MR. WADE:  YOUR HONOR, OBJECTION FOR THE REASONS

01:22PM  3    PREVIOUSLY STATED.

01:22PM  4            THE COURT:  WE DISCUSSED THIS.  OVERRULED.  THIS IS

01:22PM  5    IN EVIDENCE.  IT CAN BE EXAMINED.

01:22PM  6    BY MR. LEACH:

01:22PM  7    Q.  IS THIS ONE OF THE CLIA REGULATIONS, DR. DAS, THAT AFFECTS

01:23PM  8    LABORATORY DIRECTORS?

01:23PM  9    A.  YES, I BELIEVE SO.

01:23PM  10   Q.  IN PARAGRAPH A IT SAYS, "ADVERSE ACTION BASED ON ACTIONS

01:23PM  11   OF THE LABORATORY'S OWNER, OPERATOR, OR EMPLOYEES."

01:23PM  12       DO YOU SEE THAT LANGUAGE?

01:23PM  13   A.  I DO.

01:23PM  14   Q.  AND DO YOU SEE WHERE IT SAYS, "CMS MAY INITIATE ADVERSE

01:23PM  15   ACTION TO SUSPEND, LIMIT, OR REVOKE ANY CLIA CERTIFICATE IF CMS

01:23PM  16   FINDS THAT A LABORATORY'S OWNER OR OPERATOR OR ONE OF ITS

01:23PM  17   EMPLOYEES HAS --"

01:23PM  18       DO YOU SEE THAT LANGUAGE?

01:23PM  19   A.  I DO.

01:23PM  20   Q.  AND THEN IS THERE A LIST OF CERTAIN CONDUCT THAT --

01:23PM  21   FOLLOWING PARAGRAPH A IN THAT SUBSECTION?

01:23PM  22   A.  YES, THERE IS.

01:23PM  23   Q.  OKAY.  LET ME DRAW YOUR ATTENTION DOWN TO THE BOTTOM

01:23PM  24   PORTION OF THIS COLUMN.

01:23PM  25       AND IF WE CAN HIGHLIGHT PARAGRAPH 4 ALL OF THE WAY DOWN,

01:24PM  1    MS. HOLLIMAN.

01:24PM  2        DO YOU SEE WHERE IT SAYS IN PARAGRAPH 6, "VIOLATED OR

01:24PM  3    AIDED AND ABETTED IN THE VIOLATION OF ANY PROVISIONS OF CLIA

01:24PM  4    AND ITS IMPLEMENTING REGULATIONS"?

01:24PM  5    A.   I DO.

01:24PM  6    Q.   AND IS THAT ONE OF THE CONDITIONS WHERE CMS MAY INITIATE

01:24PM  7    ACTION TO SUSPEND, LIMIT, OR REVOKE ANY CLIA CERTIFICATE IF IT

01:24PM  8    MAKES THAT FINDING?

01:24PM  9            MR. WADE:  SAME OBJECTION, YOUR HONOR.

01:24PM 10            THE COURT:  OVERRULED.

01:24PM 11            THE WITNESS:  YES, I BELIEVE SO.

01:24PM 12    BY MR. LEACH:

01:24PM 13    Q.   AND FURTHER DOWN BELOW IN PARAGRAPH 8, DO YOU SEE WHERE IT

01:24PM 14    SAYS, "WITHIN THE PRECEDING TWO-YEAR PERIOD, OWNED OR OPERATED

01:24PM 15    A LABORATORY THAT HAD ITS CLIA CERTIFICATE REVOKED."

01:25PM 16        DO YOU SEE THAT?

01:25PM 17    A.   I DO SEE THAT.

01:25PM 18    Q.   IS THAT ONE OF THE PROVISIONS RELATING TO OWNERS AND

01:25PM 19    OPERATORS OF LABORATORIES?

01:25PM 20    A.   YES, I BELIEVE SO.

01:25PM 21    Q.   IF I COULD DRAW YOUR ATTENTION NOW TO PAGE 8 -- EXCUSE ME,

01:25PM 22    PAGE 7 OF THE EXHIBIT WHICH IS IN EVIDENCE.

01:25PM 23        MS. HOLLIMAN, IF WE COULD PLEASE HIGHLIGHT THE COLUMN ON

01:25PM 24    THE FAR RIGHT STARTING WITH THE ITALICIZED WORD "OPERATOR."

01:25PM 25        DOWN A LITTLE MORE, PLEASE.  A LITTLE MORE.  THAT WILL DO.

01:26PM  1          DR. DAS, WE'RE ON PAGE 7 OF EXHIBIT 4603, THE CLIA

01:26PM  2   REGULATIONS.

01:26PM  3          DO YOU SEE SOME DEFINITIONS LISTED OUT ON THIS PAGE?

01:26PM  4   A.   I DO.

01:26PM  5   Q.   AND DO YOU SEE A DEFINITION FOR "OPERATOR"?

01:26PM  6   A.   YES, I DO.

01:26PM  7   Q.   AND DOES THIS READ, "OPERATOR MEANS THE INDIVIDUAL OR

01:26PM  8   GROUP OF INDIVIDUALS WHO OVERSEE ALL FACETS OF THE OPERATION OF

01:26PM  9   A LABORATORY AND WHO BEAR PRIMARY RESPONSIBILITY FOR THE SAFETY

01:26PM 10   AND RELIABILITY OF THE RESULTS OF ALL SPECIMEN TESTING

01:26PM 11   PERFORMED IN THAT LABORATORY"?

01:26PM 12          DID I READ THAT DEFINITION CORRECTLY?

01:26PM 13   A.   YES.

01:26PM 14   Q.   AND FURTHER DOWN BELOW, IS THERE A DEFINITION FOR THE

01:26PM 15   "OWNER" OF A LABORATORY?

01:26PM 16   A.   YES.

01:26PM 17   Q.   AND WAS THIS PART OF THE REGULATIONS THAT YOU UNDERSTOOD

01:26PM 18   YOU WERE SUBJECT TO IN YOUR ROLE OF THE -- AS THE LABORATORY

01:27PM 19   DIRECTOR?

01:27PM 20   A.   YES, THAT'S CORRECT.

01:27PM 21   Q.   OKAY.  LET ME FOCUS --

01:27PM 22          WE CAN TAKE THAT DOWN, MS. HOLLIMAN.  THANK YOU.

01:27PM 23          LET ME FOCUS ON WHAT YOU DID UPON YOUR ARRIVAL AT THE

01:27PM 24   COMPANY.

01:27PM 25          IF WE CAN BREAK IT INTO THE TIME PERIOD WHEN YOU WERE

01:27PM   1    INITIALLY WORKING PART-TIME COMING UP FROM UCLA, DESCRIBE FOR

01:27PM   2    US WHAT YOU DID TO ORIENT YOURSELF WITH THE LABORATORY.

01:27PM   3    A.   I WAS COMING UP FOR ABOUT ONE DAY PER WEEK UNTIL I JOINED

01:27PM   4    FULL TIME, AND MOST OF THAT TIME WAS SPENT GETTING TO KNOW THE

01:27PM   5    PHYSICAL SPACE, THE LABORATORY, THE EMPLOYEES, THE CONSULTANTS,

01:27PM   6    AS WELL AS DEALING WITH SOME PAPERWORK FROM CMS.

01:27PM   7    Q.   WHEN YOU STARTED IN THE -- AND THIS IS LEADING UP TO YOUR

01:27PM   8    TIME PERIOD IN MARCH?

01:27PM   9    A.   THAT'S CORRECT.

01:27PM  10    Q.   AND HOW REGULARLY WERE YOU COMING UP?

01:27PM  11    A.   ONCE PER WEEK.

01:27PM  12    Q.   OKAY.

01:27PM  13    A.   ONE DAY PER WEEK.

01:27PM  14    Q.   AS YOU WERE GETTING ORIENTED WITH THE LAB, DID YOU DEVELOP

01:28PM  15    A FAMILIARITY WITH WHAT TYPE OF TESTS THERANOS WAS CURRENTLY

01:28PM  16    PERFORMING AND HAD BEEN PERFORMING IN ITS LABORATORY?

01:28PM  17    A.   YES, I DID.

01:28PM  18    Q.   OKAY.  AT THE TIME THAT YOU STARTED, WAS THERANOS

01:28PM  19    PERFORMING ANY LAB DEVELOPED TESTS?

01:28PM  20    A.   NOT TO MY KNOWLEDGE.

01:28PM  21    Q.   OKAY.  AND ARE YOU FAMILIAR WITH THE ACRONYM LDT?

01:28PM  22    A.   YES, I AM.

01:28PM  23    Q.   AND IS THAT FOR LABORATORY DEVELOPED TESTS?

01:28PM  24    A.   CORRECT.

01:28PM  25    Q.   AND WHAT DOES THAT MEAN?

01:28PM  1    A.   IT MEANS ANY TEST THAT IS EITHER DEVELOPED BY THE

01:28PM  2    LABORATORY OR AN FDA APPROVED METHOD THAT IS MODIFIED

01:28PM  3    GENERALLY.

01:28PM  4    Q.   SO IF YOU TAKE AN FDA APPROVED METHOD AND MAKE SOME TYPE

01:28PM  5    OF TWEAK TO IT, THAT CONVERTS IT TO A LAB DEVELOPED TEST?

01:28PM  6    A.   IT'S ANALOGOUS TO A LAB DEVELOPED TEST, YES.

01:28PM  7    Q.   AND AT THE TIME THAT YOU STARTED IN THE LAB, WAS THERANOS

01:28PM  8    PERFORMING ANY TESTS ON THERANOS MANUFACTURED ANALYZERS?

01:29PM  9    A.   NOT TO MY KNOWLEDGE.

01:29PM 10    Q.   TO YOUR KNOWLEDGE, WAS IT PERFORMING ANY TESTS ON

01:29PM 11    SOMETHING CALLED EDISON?

01:29PM 12    A.   NOT TO MY KNOWLEDGE.

01:29PM 13    Q.   WAS IT PERFORMING ANY TESTS ON SOMETHING CALLED THE

01:29PM 14    MINILAB?

01:29PM 15    A.   NOT TO MY KNOWLEDGE.

01:29PM 16    Q.   HOW ABOUT SOMETHING CALLED THE TSPU?

01:29PM 17    A.   AGAIN, NOT TO MY KNOWLEDGE.

01:29PM 18    Q.   AND TO YOUR KNOWLEDGE, WAS IT PERFORMING ANY TESTS ON

01:29PM 19    FINGERSTICK SAMPLES ON NON-FDA APPROVED MACHINES?

01:29PM 20    A.   NO, NOT TO MY KNOWLEDGE.

01:29PM 21    Q.   I'D LIKE TO DISPLAY FOR YOU WHAT IS -- WITHDRAWN.

01:29PM 22         WHEN YOU JOINED THE LAB IN SEPTEMBER OF 2015, IN THE

01:29PM 23    INTERIM PERIOD, DID YOU DEVELOP A SENSE OF THE ANNUAL VOLUME OF

01:29PM 24    TESTS THAT WERE PERFORMED IN THE CALIFORNIA LAB BEFORE YOU

01:29PM 25    JOINED?

01:29PM 1    A.   I BELIEVE THERE WAS AN ESTIMATE IN SOME OF THE FEDERAL

01:30PM 2    PAPERWORK.

01:30PM 3    Q.   AND WHAT WAS THAT ESTIMATE?

01:30PM 4    A.   I BELIEVE IT WAS SOMEWHERE BETWEEN 800- AND 900,000 TESTS.

01:30PM 5    Q.   AND WAS THAT ON AN ANNUAL BASIS?

01:30PM 6    A.   I BELIEVE SO.

01:30PM 7    Q.   AND AS YOU ARE BECOMING FAMILIAR WITH THERANOS AND THE

01:30PM 8    LABORATORY AS THE LABORATORY DIRECTOR IN CALIFORNIA, DID YOU

01:30PM 9    ALSO DEVELOP AN AWARENESS THAT THERANOS HAD A LAB IN ARIZONA?

01:30PM 10   A.   I WAS AWARE OF THAT.

01:30PM 11   Q.   AND WHAT WAS YOUR UNDERSTANDING?  WHAT DID YOU UNDERSTAND

01:30PM 12   ABOUT THAT LAB?

01:30PM 13   A.   MY UNDERSTANDING WAS THAT THAT LABORATORY IN SCOTTSDALE

01:30PM 14   WAS A MODERATE COMPLEXITY LABORATORY.

01:30PM 15   Q.   AND WHAT DOES THAT MEAN TO BE A MODERATE COMPLEXITY

01:30PM 16   LABORATORY?

01:30PM 17   A.   IN THIS CONTEXT IT MEANS THAT THAT TYPE OF LABORATORY RUNS

01:30PM 18   FDA APPROVED TESTING.

01:30PM 19   Q.   SO WOULD THAT LABORATORY BE RUNNING AN EDISON?

01:30PM 20   A.   I DON'T BELIEVE SO.

01:30PM 21   Q.   WOULD THAT LABORATORY BE RUNNING A FINGERSTICK TEST ON A

01:30PM 22   MODIFIED FDA APPROVED MACHINE?

01:30PM 23   A.   NO, I DON'T BELIEVE SO.

01:31PM 24   Q.   AND HOW DID THE MODERATE COMPLEXITY IN THE ARIZONA LAB

01:31PM 25   COMPARE TO THE CALIFORNIA LAB THAT YOU TOOK THE REINS OF IN THE

01:31PM  1    LATE 2015, EARLY 2016 TIME PERIOD?

01:31PM  2    A.   THE NEWARK, CALIFORNIA LABORATORY WAS CONSIDERED HIGH

01:31PM  3    COMPLEXITY AND COULD OFFER SUCH TESTING.

01:31PM  4    Q.   SUCH AS LDT'S?

01:31PM  5    A.   SUCH AS LDT'S, YES.

01:31PM  6    Q.   AND AS YOU'RE BECOMING THE LABORATORY DIRECTOR, DID YOU

01:31PM  7    DEVELOP A SENSE OF THE RELATIVE VOLUME OF TESTING BETWEEN THE

01:31PM  8    MODERATE COMPLEXITY LAB IN ARIZONA AND THE HIGH COMPLEXITY LAB

01:31PM  9    IN CALIFORNIA?

01:31PM  10   A.   I DID NOT HAVE A GOOD SENSE OF THE PROPORTION OF TESTING

01:31PM  11   DONE IN BOTH LABS.

01:31PM  12   Q.   AT SOME POINT DID YOU DEVELOP THAT UNDERSTANDING?

01:31PM  13   A.   I DID NOT.

01:31PM  14   Q.   OKAY.  DID YOU HAVE ANY INTERACTIONS WITH SUNNY BALWANI?

01:31PM  15   A.   YES, TO SOME EXTENT.

01:31PM  16   Q.   OKAY.  A LOT OF INTERACTIONS?  A FEW INTERACTIONS?

01:32PM  17   DESCRIBE THOSE FOR US.

01:32PM  18   A.   QUITE MINIMUM NUMBER OF INTERACTIONS.  I BELIEVE SUNNY

01:32PM  19   LEFT THE COMPANY NOT TOO LONG AFTER I JOINED.

01:32PM  20   Q.   SO SOMETIME IN THE MARCH 2016 TIME PERIOD?

01:32PM  21   A.   YEAH.  I'M NOT CLEAR ON THE EXACT DATES, BUT WE HAD VERY

01:32PM  22   LIMITED CHANCES TO INTERACT.

01:32PM  23   Q.   LET'S MOVE FORWARD IN TIME TO THE TIME PERIOD OF MARCH OF

01:32PM  24   2016.  THAT'S WHEN YOU BEGAN WORKING ON A FULL-TIME BASIS IN

01:32PM  25   THE LAB?

01:32PM  1    A.   THAT'S CORRECT.

01:32PM  2    Q.   AND YOU LEFT YOUR RESPONSIBILITIES IN UCLA?

01:32PM  3    A.   YES.

01:32PM  4    Q.   AND DID YOU MOVE UP TO CALIFORNIA TO WORK IN THE LAB

01:32PM  5    HERE -- MOVE UP TO THE BAY AREA TO WORK IN THE LAB?

01:32PM  6    A.   I DID.

01:32PM  7    Q.   OKAY.  AND YOU MENTIONED EARLIER PART OF YOUR

01:32PM  8    RESPONSIBILITIES INITIALLY WAS DEALING WITH PAPERWORK FROM CMS.

01:32PM  9         WHAT WERE YOU TALKING ABOUT?

01:32PM 10    A.   IT WAS RELATED TO AN AUDIT, I BELIEVE, THAT WOULD HAVE

01:32PM 11    BEEN BEFORE I JOINED, AND A STATEMENT OF DEFICIENCIES FROM THAT

01:33PM 12    AUDIT.

01:33PM 13    Q.   AND WAS A SIGNIFICANT PART OF YOUR JOB AS THE LAB DIRECTOR

01:33PM 14    REVIEWING THAT STATEMENT, DEVELOPING AN UNDERSTANDING OF IT,

01:33PM 15    AND RESPONDING TO IT?

01:33PM 16    A.   YES.  THAT WAS NEARLY THE SOLE RESPONSIBILITY THAT I HAD.

01:33PM 17    Q.   OKAY.  IN THIS EARLY MARCH 2016 TIME PERIOD, WHAT TYPES OF

01:33PM 18    DOCUMENTS DID YOU REVIEW AND GATHER IN CONNECTION WITH, WITH

01:33PM 19    RESPONDING TO THIS STATEMENT OF DEFICIENCIES?

01:33PM 20    A.   OH, THERE WERE A VARIETY OF DOCUMENTS.

01:33PM 21         DO YOU NEED SPECIFIC EXAMPLES, OR ARE YOU REFERRING TO

01:33PM 22    SPECIFIC EXAMPLES?

01:33PM 23    Q.   IF YOU COULD PUT THEM INTO BUCKETS FOR US, THAT WOULD BE

01:33PM 24    GREAT.

01:33PM 25    A.   I WOULD SAY THE MAJORITY OF MY RESPONSIBILITY IN

01:33PM   1    RESPONDING TO THAT FORM, THAT STATEMENT OF DEFICIENCIES, WAS TO

01:33PM   2    PERFORM WHAT ARE CALLED PATIENT IMPACT ASSESSMENTS.

01:34PM   3        I BELIEVE THE DOCUMENTATION WAS GENERALLY SPLIT INTO ABOUT

01:34PM   4    THREE BUCKETS.

01:34PM   5    Q.   OKAY.  WHAT ARE THOSE?

01:34PM   6    A.   THE FIRST ONE WAS VALIDATION REPORTS FOR THE TESTS

01:34PM   7    PERFORMED.

01:34PM   8    Q.   WHAT WAS THE SECOND?

01:34PM   9    A.   THE SECOND ONE WAS GENERALLY QUALITY CONTROL RESULTS AND

01:34PM  10    REPORTS.

01:34PM  11    Q.   AND THE THIRD?

01:34PM  12    A.   THE THIRD WAS PATIENT TEST RESULT DISTRIBUTIONS AND

01:34PM  13    CALCULATIONS FROM THOSE.

01:34PM  14    Q.   AND DID YOU HAVE A TEAM WORKING WITH YOU IN RESPONDING TO

01:34PM  15    THIS REPORT FROM, OR STATEMENT OF DEFICIENCIES FROM CMS?

01:34PM  16    A.   YES, INDEED.

01:34PM  17    Q.   OKAY.  AND WHO WAS ON YOUR TEAM?

01:34PM  18    A.   OKAY.  IT WAS QUITE A LARGE TEAM.  I WON'T REMEMBER ALL OF

01:34PM  19    THE NAMES.  THE PEOPLE THAT I WORKED MOST CLOSELY WITH I COULD

01:34PM  20    NAME IF THAT'S OF HELP.

01:35PM  21    Q.   THAT WOULD BE HELPFUL.  THANK YOU.

01:35PM  22    A.   THE DIRECTORS THAT I WORKED WITH VERY CLOSELY WERE

01:35PM  23    DOCTORS TSCHIRHART AND HELFEND.

01:35PM  24    Q.   COULD YOU SPELL TSCHIRHART FOR US, PLEASE.

01:35PM  25    A.   YES, I HOPE I CAN.  I BELIEVE THAT'S T-S-C-H-I-R-H-A-R-T.

01:35PM  1    FIRST NAME IS DONALD.

01:35PM  2    Q.   AND YOU MENTIONED DR. HELFEND.

01:35PM  3    A.   YES, LISA HELFEND.

01:35PM  4    Q.   IS THAT H-E-L-F-U-N-D?

01:35PM  5    A.   H-E-L-F-E-N-D.

01:35PM  6    Q.   OKAY.  DID THEY COME ON AT AROUND THE TIME YOU CAME ON AS

01:35PM  7    LAB DIRECTOR?

01:35PM  8    A.   I BELIEVE DON JOINED THE EXACT SAME DAY I JOINED, AND LISA

01:35PM  9    WAS ALREADY THERE AS A CONTRACT DIRECTOR.

01:35PM  10   Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO WHAT HAS BEEN

01:35PM  11   MARKED FOR IDENTIFICATION AS 4621.

01:36PM  12   A.   YES.

01:36PM  13   Q.   DO YOU RECOGNIZE THIS DOCUMENT?

01:36PM  14   A.   YES, I DO.

01:36PM  15   Q.   AND WHAT IS IT?

01:36PM  16   A.   THIS APPEARS TO BE THE COVER LETTER FOR THE STATEMENT OF

01:36PM  17   DEFICIENCIES.

01:36PM  18   Q.   AND DOES THE COVER LETTER COMPRISE PAGES 1 THROUGH 4 OF

01:36PM  19   EXHIBIT 4621?

01:36PM  20   A.   YES.

01:36PM  21   Q.   AND DOES THE STATEMENT OF DEFICIENCIES BEGIN ON PAGE 5?

01:36PM  22   A.   YES.

01:36PM  23   Q.   OKAY.  LET ME DRAW YOUR ATTENTION TO THE BOTTOM OF PAGE 5.

01:36PM  24        DO YOU SEE TO THE LEFT WHERE IT SAYS FORM 6 CMS 2567?

01:36PM  25   A.   YES, I DO.

01:36PM  1    Q.   AND DO YOU SEE A DATE IN THE UPPER RIGHT-HAND CORNER,

01:37PM  2    JANUARY 25TH, 2016?

01:37PM  3    A.   I DO.

01:37PM  4    Q.   AND TO THE LEFT DO YOU SEE A BOX THAT SAYS, FOR THE TITLE

01:37PM  5    OF THE DOCUMENT, STATEMENT OF DEFICIENCIES AND PLAN OF

01:37PM  6    CORRECTION?

01:37PM  7    A.   YES.

01:37PM  8    Q.   OKAY.  IS THIS THE FORM THAT YOU TESTIFIED YOU SPENT A

01:37PM  9    SIGNIFICANT AMOUNT OF YOUR TIME RESPONDING TO IN YOUR ROLE AS

01:37PM  10   THE LAB DIRECTOR?

01:37PM  11   A.   YES, THAT'S CORRECT.

01:37PM  12   Q.   OKAY.  HOW MANY PAGES IS THE STATEMENT OF DEFICIENCIES?

01:37PM  13   A.   IT LOOKS LIKE IN MY COPY 121.

01:37PM  14   Q.   IN YOUR ROLE AS LABORATORY DIRECTOR, WHO DID YOU REPORT

01:37PM  15   TO?

01:37PM  16   A.   I REPORTED TO MS. HOLMES.

01:37PM  17   Q.   AND IN THE COURSE OF RESPONDING TO THE FORM 2567, THE

01:38PM  18   STATEMENT OF DEFICIENCIES, DID YOU HAVE CONVERSATIONS WITH

01:38PM  19   MS. HOLMES?

01:38PM  20   A.   YES.

01:38PM  21   Q.   MORE THAN ONE?

01:38PM  22   A.   MANY CONVERSATIONS.

01:38PM  23   Q.   AND DID THOSE RELATE TO WHAT YOU WERE FIND -- OR WHAT CMS

01:38PM  24   HAD BROUGHT TO THE COMPANY'S ATTENTION, WHAT YOU WERE FINDING

01:38PM  25   AND HOW THE COMPANY WAS GOING TO RESPOND?

01:38PM  1    A.   YES, AMONG OTHERS.

01:38PM  2    Q.   OKAY.  DID YOU TRAVEL TO WASHINGTON, D.C. WITH MS. HOLMES

01:38PM  3    TO MEET WITH INDIVIDUALS FROM CMS?

01:38PM  4    A.   YES, I DID.

01:38PM  5    Q.   AND WAS THAT IN CONNECTION WITH RESPONDING TO THE FORM

01:38PM  6    2567?

01:38PM  7    A.   YES, IT WAS.

01:38PM  8    Q.   WE'RE GOING TO COME BACK TO 4621, BUT I'D LIKE TO BRIEFLY

01:38PM  9    DRAW YOUR ATTENTION TO EXHIBIT 5260.

01:39PM  10   A.   OKAY.

01:39PM  11   Q.   AND IF I COULD DRAW YOUR ATTENTION TO PAGE 90, IS THAT

01:39PM  12   YOUR SIGNATURE?

01:39PM  13   A.   YES.

01:39PM  14   Q.   AND IF WE CAN GO TO PAGE 2 OF THE EXHIBIT, DO YOU SEE A

01:39PM  15   DATE AT THE TOP OF MARCH 28TH, 2016?

01:39PM  16   A.   YES, I DO.

01:39PM  17   Q.   AND IS THIS A LETTER THAT YOU SENT TO CMS IN RESPONSE TO A

01:39PM  18   LETTER FROM CMS TO DR. SUNIL DHAWAN, ELIZABETH HOLMES, AND

01:39PM  19   SUNNY BALWANI?

01:39PM  20   A.   YES, I BELIEVE SO.

01:39PM  21   Q.   OKAY.  AND IS THIS LETTER IN CONNECTION WITH THE COMPANY'S

01:39PM  22   RESPONSE TO THE 2567?

01:39PM  23   A.   THAT'S CORRECT.

01:39PM  24   Q.   OKAY.  AND DID YOU HAVE MANY CONVERSATIONS WITH MS. HOLMES

01:40PM  25   BOTH ABOUT WHAT CMS BROUGHT TO THE COMPANY'S ATTENTION IN 2567

01:40PM  1     AND HOW THE COMPANY WAS GOING TO RESPOND?

01:40PM  2     A.   YES, THAT'S CORRECT.

01:40PM  3     Q.   PLEASE LOOK BRIEFLY AT EXHIBIT 3144.

01:40PM  4          IS THAT YOUR -- AND I DRAW YOUR ATTENTION TO PAGE 93.

01:40PM  5     A.   YES.

01:40PM  6     Q.   IS THAT YOUR SIGNATURE?

01:40PM  7     A.   YES, THAT'S CORRECT.

01:40PM  8     Q.   OKAY.  AND IF WE CAN GO BACK TO PAGE 1, DOES THIS APPEAR

01:40PM  9     TO BE AN APRIL 1ST, 2016 LETTER FROM YOU TO THERANOS UPDATING A

01:40PM  10    RESPONSE TO A LETTER FROM CMS TO DR. SUNIL DHAWAN,

01:41PM  11    ELIZABETH HOLMES, AND SUNNY BALWANI?

01:41PM  12    A.   YES, THAT'S CORRECT, FROM THERANOS.

01:41PM  13    Q.   OKAY.  AND WE'VE JUST LOOKED AT SOME LETTERS FROM THE

01:41PM  14    MARCH AND APRIL TIME PERIOD, BUT YOU HAD -- DID YOU HAVE A

01:41PM  15    NUMBER OF CONVERSATIONS WITH MS. HOLMES ABOUT THE 2567 AND WHAT

01:41PM  16    WAS BEING REPORTED TO THE COMPANY?

01:41PM  17    A.   YES, PERIODICALLY.

01:41PM  18    Q.   OKAY.  LET ME GO -- WAS THERE SOME URGENCY IN RESPONDING

01:41PM  19    TO THE CMS 2567?

01:41PM  20    A.   YES, THERE WAS.

01:41PM  21    Q.   WHY WAS THAT?

01:41PM  22    A.   I BELIEVE THERE WAS A DEADLINE IMPOSED BY CMS FOR A

01:41PM  23    RESPONSE.

01:41PM  24    Q.   OKAY.  LET ME DRAW YOUR ATTENTION BACK TO 4621.

01:41PM  25    A.   YES.

01:41PM  1    Q.   AND I'D LIKE TO FOCUS ON THE COVER LETTER, PAGES 1 THROUGH

01:41PM  2    4.   ON PAGE 2, DO YOU SEE REFERENCE TO, IN PARAGRAPH 3, A

01:42PM  3    DEADLINE IMPOSED BY CMS?

01:42PM  4    A.   YES, I DO.

01:42PM  5    Q.   OKAY.  AND ON -- ABOVE THAT DO YOU SEE SOME LANGUAGE

01:42PM  6    SUGGESTING REASONING BEHIND THE DATE THAT IS BEING IMPOSED BY

01:42PM  7    CMS?

01:42PM  8            MR. WADE:  YOUR HONOR, THE DOCUMENT IS NOT IN

01:42PM  9    EVIDENCE, BUT WE'RE REFERRING TO SUBSTANTIAL PARTS OF IT HERE.

01:42PM 10            THE COURT:  MR. LEACH?

01:42PM 11            MR. LEACH:  I'M TRYING TO LAY A FOUNDATION TO ADMIT

01:42PM 12    IT INTO EVIDENCE, YOUR HONOR, AND I THINK MY NEXT QUESTION IS,

01:42PM 13    DID HE DISCUSS THIS WITH MS. HOLMES?

01:42PM 14            THE COURT:  ALL RIGHT.  THANK YOU.

01:42PM 15    BY MR. LEACH:

01:42PM 16    Q.   DID YOU DISCUSS THE CIRCUMSTANCES DESCRIBED IN THIS LETTER

01:42PM 17    WITH MS. HOLMES?

01:42PM 18    A.   YES, THE CIRCUMSTANCES WERE DESCRIBED OR DISCUSSED.

01:42PM 19            MR. LEACH:  YOUR HONOR, I OFFER PAGES 1 THROUGH 4 OF

01:42PM 20    EXHIBIT 4621.

01:43PM 21            MR. WADE:  YOUR HONOR, WE OBJECT TO ALL OF THE

01:43PM 22    REFERENCE OF THE EXHIBIT FOR REASONS WE DISCUSSED WITH COUNSEL

01:43PM 23    AND THE COURT THIS MORNING AND THE REASONS SET FORTH IN THE

01:43PM 24    MOTION PAPERS.

01:43PM 25            THE COURT:  ALL RIGHT.  THANK YOU.

01:43PM  1          SO YOU'RE ASKING FOR 1 THROUGH 4 ONLY?

01:43PM  2               MR. LEACH:  YES.

01:43PM  3               THE COURT:  OF 4621?

01:43PM  4               MR. LEACH:  YES.

01:43PM  5               THE COURT:  ALL RIGHT.  I DO YOU THINK AN

01:43PM  6    APPROPRIATE FOUNDATION HAS BEEN LAID TO ADMIT THIS, OVERRULING

01:43PM  7    THE OBJECTIONS THAT WERE MADE EARLIER.

01:43PM  8          SO THIS WILL BE ADMITTED OVER OBJECTION.  THANK YOU.

01:43PM  9               MR. LEACH:  THANK YOU.

01:43PM 10               THE COURT:  AND IT CAN BE, IT CAN BE DISPLAYED IF

01:43PM 11    YOU WISH.

01:43PM 12          (GOVERNMENT'S EXHIBIT 4621, PAGES 1 THROUGH 4, WAS

01:43PM 13    RECEIVED IN EVIDENCE.)

01:43PM 14               MR. LEACH:  IF WE CAN PLEASE START AT THE TOP,

01:43PM 15    MS. HOLLIMAN, CATCHING THE CMS HEADER IF YOU COULD, PLEASE.

01:44PM 16    Q.   DR. DHAWAN, IS THIS THE COVER LETTER THAT ACCOMPANIED CMS

01:44PM 17    DEFICIENCY NOTICE?

01:44PM 18    A.   I'M SORRY.

01:44PM 19    Q.   I'M TERRIBLY SORRY, I'M READING THE DOCUMENT AND MOVING

01:44PM 20    TOO QUICKLY.

01:44PM 21          DR. DAS, IS THIS THE COVER LETTER THAT ACCOMPANIED THE

01:44PM 22    STATEMENT OF DEFICIENCIES FROM CMS?

01:44PM 23    A.   YES.

01:44PM 24    Q.   OKAY.  AND DO YOU SEE THE DATE JANUARY 25TH, 2016?

01:44PM 25    A.   I DO.

01:44PM 1    Q.   OKAY.  AND THIS IS ADDRESSED TO SOMEONE NAMED

01:44PM 2    SUNIL DHAWAN.  DID YOU HAVE AN UNDERSTANDING OF WHO

01:44PM 3    SUNIL DHAWAN WAS?

01:44PM 4    A.   YES.

01:44PM 5    Q.   AND WHO WAS HE?

01:44PM 6    A.   MY UNDERSTANDING IS THAT HE WAS THE PRIOR LABORATORY

01:44PM 7    DIRECTOR BEFORE I JOINED.

01:44PM 8    Q.   IN THE RE LINE, IT SAYS, CONDITION LEVEL DEFICIENCIES -

01:44PM 9    IMMEDIATE JEOPARDY.

01:44PM 10        DO YOU SEE THAT LANGUAGE?

01:44PM 11   A.   YES, I DO.

01:44PM 12   Q.   AND THEN IN THE FIRST PARAGRAPH -- WELL, I'M SORRY, IN THE

01:45PM 13   SECOND PARAGRAPH IT SAYS, "THE CENTERS FOR MEDICARE AND

01:45PM 14   MEDICAID SERVICES CONDUCTED A CLIA RECERTIFICATION AND

01:45PM 15   COMPLAINT SURVEY OF THE LABORATORY."

01:45PM 16        I'LL RESTATE, MS. RODRIGUEZ.  THANK YOU.

01:45PM 17        IS IT YOUR UNDERSTANDING THAT A SURVEY WAS PERFORMED BY

01:45PM 18   CMS PRIOR TO JANUARY THAT GENERATED THIS STATEMENT OF

01:45PM 19   DEFICIENCIES?

01:45PM 20   A.   YES, THAT IS MY UNDERSTANDING.

01:45PM 21   Q.   OKAY.  IT GOES ON TO SAY, "THE ONSITE SURVEY WAS COMPLETED

01:45PM 22   ON NOVEMBER 20TH, 2015.  HOWEVER, THE SURVEY CONCLUDED WITH THE

01:45PM 23   RECEIPT OF CRITICAL INFORMATION RECEIVED FROM THE LABORATORY ON

01:45PM 24   DECEMBER 23RD, 2015."

01:45PM 25        DO YOU SEE THAT?

01:45PM  1    A.   YES, I DO.

01:45PM  2    Q.   THEN IT SAYS, "AS A RESULT OF THE SURVEY, IT WAS

01:45PM  3    DETERMINED THAT YOUR FACILITY WAS NOT IN COMPLIANCE WITH ALL OF

01:45PM  4    THE CONDITIONS REQUIRED FOR CERTIFICATION IN THE CLIA PROGRAM."

01:46PM  5        DO YOU SEE THAT?

01:46PM  6    A.   I DO.

01:46PM  7    Q.   AND IS "CONDITIONED" A TERM OF ART IN THE CLIA

01:46PM  8    REGULATIONS?

01:46PM  9    A.   YES, THAT IS.

01:46PM  10   Q.   AND WHAT IS A CONDITION?

01:46PM  11   A.   THESE ARE ANALOGOUS TO REQUIREMENTS OR REGULATIONS.

01:46PM  12   Q.   OKAY.  IT THEN SAYS, "IN ADDITION, BASED ON THE

01:46PM  13   CONDITION-LEVEL REQUIREMENT, HEMATOLOGY, IT WAS DETERMINED THAT

01:46PM  14   THE DEFICIENT PRACTICES OF THE LABORATORY POSE IMMEDIATE

01:46PM  15   JEOPARDY TO PATIENT HEALTH AND SAFETY."

01:46PM  16       DO YOU SEE THAT?

01:46PM  17   A.   YES, I DO.

01:46PM  18   Q.   AND IS THAT PART OF WHAT WAS TRIGGERING THE URGENCY FOR

01:46PM  19   YOUR RESPONSE TO CMS?

01:46PM  20   A.   YES, THAT IS CORRECT.

01:46PM  21   Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE

01:46PM  22   NEED TO RESPOND URGENTLY TO CMS?

01:46PM  23   A.   YES, WE DID.

01:46PM  24   Q.   FURTHER DOWN THERE'S A LIST OF CONDITIONS THAT WERE NOT

01:46PM  25   MET.

01:46PM   1              IF WE CAN ZOOM OUT, MS. HOLLIMAN AND HIGHLIGHT THE BOTTOM.

01:47PM   2              DR. DAS, DO YOU SEE THE REFERENCE D5024 COLON, AND THEN A

01:47PM   3      REFERENCE TO 42 CFR WITH ANOTHER NUMBER?

01:47PM   4      A.   YES, I SEE THAT.

01:47PM   5      Q.   OKAY.  DO YOU HAVE AN UNDERSTANDING OF WHAT THAT D NUMBER

01:47PM   6      REFERENCES?

01:47PM   7      A.   D IS REFERENCING A DEFICIENCY.

01:47PM   8      Q.   AND THE 42 CFR, IS THAT A REFERENCE TO A PARTICULAR CLIA

01:47PM   9      REGULATION?

01:47PM  10      A.   THAT'S CORRECT.

01:47PM  11      Q.   AND THIS PARTICULAR REFERENCE IS A REFERENCE TO

01:47PM  12      HEMATOLOGY?

01:47PM  13      A.   THAT IS MY UNDERSTANDING.

01:47PM  14      Q.   AND WHAT IS HEMATOLOGY?

01:47PM  15      A.   IT'S A STUDY OF THE BLOOD.

01:47PM  16      Q.   THE NEXT TAG D5400.

01:47PM  17              DO YOU SEE THAT?

01:47PM  18      A.   I DO.

01:47PM  19      Q.   AND TO THE RIGHT, THIS RELATES TO A CONDITION FOR ANALYTIC

01:47PM  20      SYSTEMS.  IS THAT A TERM THAT YOU'RE FAMILIAR WITH IN THE CLIA

01:47PM  21      REGULATIONS?

01:47PM  22      A.   YES, I'M FAMILIAR WITH THAT TERM.

01:48PM  23      Q.   AND WHAT DOES THAT REFER TO?

01:48PM  24      A.   IT GENERALLY REFERS TO INSTRUMENTS AND METHODS USED FOR

01:48PM  25      TESTING.

01:48PM  1     Q.   AND THEN D6076, DO YOU SEE THAT NUMBER IN THE THIRD ROW?

01:48PM  2     A.   YES.

01:48PM  3     Q.   OKAY.  AND THIS CONDITION IS LABORATORIES PERFORMING HIGH

01:48PM  4     COMPLEXITY TESTING; LABORATORY DIRECTOR.

01:48PM  5          DO YOU SEE THAT REFERENCE?

01:48PM  6     A.   I DO.

01:48PM  7     Q.   AND THERANOS'S CLIA LABORATORY IN CALIFORNIA WAS A HIGH

01:48PM  8     COMPLEXITY LAB?

01:48PM  9     A.   THAT IS CORRECT.

01:48PM  10    Q.   DESCRIBE FOR US HOW YOU WENT ABOUT RESPONDING TO CMS.

01:48PM  11    WHAT DID YOU DO IN TERMS OF RESPONDING TO THIS LETTER FROM CMS?

01:48PM  12    A.   HONESTLY, THE FIRST STEP WAS TO READ THE STATEMENT OF

01:48PM  13    DEFICIENCIES VERY CAREFULLY TO UNDERSTAND THE SPECIFICS OF THE

01:48PM  14    DEFICIENCIES.

01:48PM  15    Q.   AND I TRUST YOU DID THAT.

01:49PM  16    A.   YES, WE DID.

01:49PM  17    Q.   OKAY.  AND DID YOU HAVE MULTIPLE DISCUSSIONS WITH YOUR

01:49PM  18    TEAM ABOUT THE DEFICIENCIES THAT CMS IDENTIFIED?

01:49PM  19    A.   YES, WE DID.

01:49PM  20    Q.   DID YOU HAVE MULTIPLE DISCUSSIONS WITH MS. HOLMES ABOUT

01:49PM  21    THE DEFICIENCIES THAT CMS IDENTIFIED?

01:49PM  22    A.   YES.  SHE WAS PART OF SOME OF THOSE DISCUSSIONS.

01:49PM  23    Q.   OKAY.  LET ME -- I WANT TO DRAW YOUR ATTENTION, PLEASE, TO

01:49PM  24    PARTICULAR PROVISIONS WITHIN 2567, AND IF I COULD DRAW YOUR

01:49PM  25    ATTENTION, PLEASE, TO -- AND LET'S NOT DISPLAY THIS,

01:49PM 1   MS. HOLLIMAN.

01:49PM 2        BUT IF I COULD PLEASE DRAW YOUR ATTENTION TO PAGE 51.

01:49PM 3            THE COURT:  I'M SORRY, WHAT PAGE?

01:49PM 4            MR. LEACH:  51, YOUR HONOR.

01:49PM 5            THE COURT:  THANK YOU.

01:49PM 6            THE WITNESS:  OKAY.

01:49PM 7   BY MR. LEACH:

01:49PM 8   Q.  BEFORE I ASK QUESTIONS ABOUT PAGE 51, AFTER REVIEWING THE

01:49PM 9   CMS STATEMENT OF DEFICIENCIES IN ITS ENTIRETY, DID YOU LOOK AT

01:50PM 10  THE CATEGORIES OF DOCUMENTS THAT YOU DESCRIBED EARLIER?

01:50PM 11  A.  NOT IMMEDIATELY.

01:50PM 12  Q.  AT SOME POINT DID YOU?

01:50PM 13  A.  YES.

01:50PM 14  Q.  AND DID YOU LOOK AT THE DOCUMENTS THAT WERE REFERENCED IN

01:50PM 15  THE CMS STATEMENT OF DEFICIENCIES TO UNDERSTAND WHAT THEY WERE

01:50PM 16  REFERRING TO?

01:50PM 17  A.  YES, THAT'S CORRECT.

01:50PM 18  Q.  AND DID YOU HAVE DISCUSSION WITH YOUR TEAM ABOUT THOSE?

01:50PM 19  A.  YES, WE DID.

01:50PM 20  Q.  DID YOU, AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES

01:50PM 21  ABOUT THAT?

01:50PM 22  A.  TO SOME EXTENT, YES.

01:50PM 23  Q.  LET ME DRAW YOUR ATTENTION -- WE'RE ON PAGE 51.  AT THE

01:50PM 24  BOTTOM, DO YOU SEE ANOTHER ONE OF THOSE D NUMBERS TO THE LEFT

01:50PM 25  AT THE BOTTOM?

01:50PM   1    A.   I DO.

01:50PM   2    Q.   AND IF I COULD ASK YOU, PLEASE, TO CONTINUE READING -- OR

01:50PM   3    IF I COULD ASK YOU TO CONTINUE READING TO THE NEXT PAGE, DO YOU

01:50PM   4    SEE AT THE TOP LANGUAGE, A REFERENCE TO A STANDARD?

01:50PM   5    A.   MR. LEACH, IF I MAY?  ARE YOU REFERRING TO D5791?

01:51PM   6    Q.   YES.

01:51PM   7    A.   AND READ UNTIL WHEN?

01:51PM   8    Q.   IF YOU COULD PLEASE READ UNTIL PAGE 52, THERE'S A

01:51PM   9    REFERENCE TO STANDARD AT THE TOP.

01:51PM   10        DO YOU SEE THAT LANGUAGE?

01:51PM   11   A.   I DO.

01:51PM   12   Q.   AND --

01:51PM   13   A.   PLEASE GIVE ME A MINUTE.

01:51PM   14        MR. WADE:  COUNSEL, IF I MAY INQUIRE, YOU'RE

01:51PM   15   REFERRING TO THE PAGE NUMBERS IN THE MIDDLE OF THE DOCUMENT OR

01:51PM   16   THE DOCUMENT ITSELF?

01:51PM   17        MR. LEACH:  THE TRIAL EXHIBIT NUMBER.

01:51PM   18        MR. WADE:  OKAY.  THANK YOU.

01:51PM   19   BY MR. LEACH:

01:51PM   20   Q.   AND DO YOU SEE A NUMBER 1 BENEATH THAT STANDARD LANGUAGE?

01:51PM   21   A.   YES, I DO.

01:51PM   22   Q.   OKAY.  I WANT TO SKIP OVER THE SUBSTANCE OF WHAT IS IN

01:51PM   23   NUMBER 1 AND GO TO NUMBER 2 ON THE NEXT PAGE, PAGE 53.

01:51PM   24   A.   YES.

01:51PM   25   Q.   OKAY.  AND DO YOU SEE A DESCRIPTION RELATING TO SOMETHING

01:51PM  1    CALLED TPS IN NUMBER 2 DOWN AT THE BOTTOM OF PAGE 53?

01:52PM  2    A.   I DO.

01:52PM  3    Q.   OKAY.  AND ARE YOU FAMILIAR WITH THIS PORTION OF THE 2567?

01:52PM  4    A.   I'LL HAVE TO REVIEW IT CAREFULLY.

01:52PM  5    Q.   IF YOU COULD REVIEW CAREFULLY PAGES 53, 54, UP TO NUMBER 3

01:52PM  6    ON PAGE 55.

01:53PM  7         (PAUSE IN PROCEEDINGS.)

01:53PM  8              THE WITNESS:  OKAY.  I'VE HAD A CHANCE TO REVIEW

01:53PM  9    THIS.

01:53PM  10   BY MR. LEACH:

01:53PM  11   Q.   OKAY.  ARE YOU FAMILIAR WITH THIS PORTION OF FORM 2567?

01:53PM  12   A.   YES.

01:53PM  13   Q.   OKAY.  AND DID YOU DISCUSS ISSUES RELATING TO QUALITY

01:53PM  14   CONTROL AND THE EDISON DEVICE WITH MS. HOLMES?

01:53PM  15   A.   YES, WE HAD DISCUSSED THAT.

01:53PM  16              MR. LEACH:  YOUR HONOR, I OFFER PAGES 51 FROM THE

01:53PM  17   BOTTOM -- WITH THE D TAG BEGINNING D5791, THE TOP OF PAGE 52

01:53PM  18   WHERE IT SAYS "THE STANDARD IS" WITH SOME ADDITIONAL LANGUAGE

01:54PM  19   THERE.

01:54PM  20              THE COURT:  LET ME -- YOU SAID 51 FROM D5791?

01:54PM  21              MR. LEACH:  YES.

01:54PM  22              THE COURT:  OKAY.

01:54PM  23              MR. LEACH:  ALL THE WAY DOWN TO PAGE 52 DOWN TO THE

01:54PM  24   LINE INCLUDING "THIS STANDARD," AND THEN CONTINUING ON THE

01:54PM  25   BOTTOM OF PAGE 53 FROM THE INFORMATION UNDER NUMBER 2 TO

01:54PM  1    PAGE 55 WITH THE INFORMATION NUMBERED L.

01:55PM  2         (PAUSE IN PROCEEDINGS.)

01:55PM  3              MR. WADE:  I'M NOT SURE I TOTALLY FOLLOWED THE

01:55PM  4    PORTIONS THAT COUNSEL WAS OFFERING.

01:55PM  5              THE COURT:  OKAY.  MR. LEACH, MAYBE YOU SHOULD JUST

01:55PM  6    WALK OVER AND SHOW MR. WADE WHERE IT IS.

01:55PM  7              MR. LEACH:  SURE.

01:55PM  8         (DISCUSSION OFF THE RECORD.)

01:55PM  9              MR. WADE:  YOUR HONOR, SAME OBJECTIONS AS PREVIOUSLY

01:55PM  10   NOTED.

01:55PM  11             THE COURT:  THANK YOU.  I'LL NOTE THOSE OBJECTIONS

01:56PM  12   AND NOTE THE FOUNDATION THAT HAS BEEN LAID THIS AFTERNOON WITH

01:56PM  13   TESTIMONY.

01:56PM  14        SO THE OBJECTION IS OVERRULED.

01:56PM  15        (GOVERNMENT'S EXHIBIT 4621B, REDACTED PAGES 51 - 55, WAS

01:56PM  16   RECEIVED IN EVIDENCE.)

01:56PM  17             MR. LEACH:  THANK YOU, YOUR HONOR.  AND WE'LL DO OUR

01:56PM  18   BEST TO DISPLAY JUST THOSE PORTIONS.

01:56PM  19        SO, MS. HOLLIMAN, IF WE COULD PLEASE DISPLAY PAGE 51,

01:56PM  20   BEGINNING -- REDACTING EVERYTHING EXCEPT THE BOTTOM OF THE PAGE

01:56PM  21   STARTING WITH 5791.

01:56PM  22             THE COURT:  AND, MR. LEACH, THESE ARE ADMITTED

01:56PM  23   FOR -- I KNOW WE'VE DISCUSSED THIS -- FOR STATE OF MIND ISSUES?

01:56PM  24             MR. LEACH:  YES, YOUR HONOR.

01:56PM  25             THE COURT:  ALL RIGHT.  THANK YOU.

```
01:56PM   1          SO, LADIES AND GENTLEMEN, THESE PAGES THAT YOU'RE ABOUT TO

01:56PM   2    SEE ARE ADMITTED FOR THE STATE OF MIND OF THE DEFENDANT,

01:57PM   3    MR. LEACH?

01:57PM   4          MR. LEACH:  YES, YOUR HONOR.

01:57PM   5          THE COURT:  YES.  AS TO ANY ISSUE OF INTENT AND

01:57PM   6    KNOWLEDGE.

01:57PM   7       (PAUSE IN PROCEEDINGS.)

01:58PM   8          MR. LEACH:  JUST ONE MOMENT, YOUR HONOR.

01:58PM   9          THE COURT:  YES, OF COURSE.

01:58PM  10       (PAUSE IN PROCEEDINGS.)

01:58PM  11          MR. WADE:  YOUR HONOR, WHILE COUNSEL IS LOOKING FOR

01:58PM  12    THAT, I MIGHT JUST CLARIFY.

01:58PM  13       I UNDERSTAND THE COURT'S DIRECTION OF THE LIMITED PURPOSE

01:58PM  14    FOR WHICH THEY'RE OFFERED FOR, BUT I JUST MIGHT ASK THAT IT BE

01:58PM  15    CLARIFIED, BUT NOT FOR THE TRUTH OF THE MATTER ASSERTED.

01:58PM  16          THE COURT:  THAT WAS YOUR INTENT AS WELL, MR. LEACH?

01:58PM  17          MR. LEACH:  YES.

01:58PM  18          THE COURT:  LADIES AND GENTLEMEN, AS I SAID -- THANK

01:58PM  19    YOU, MR. WADE.

01:58PM  20       AS I SAID EARLIER, THESE ARE RECEIVED NOT FOR THE TRUTH OF

01:58PM  21    THE MATTER ASSERTED IN EACH OF THE DOCUMENTS, BUT THEY ARE

01:58PM  22    ADMITTED ONLY AS TO THE ISSUE OF KNOWLEDGE AND INTENT AS TO THE

01:59PM  23    DEFENDANT MS. HOLMES.

02:03PM  24       (PAUSE IN PROCEEDINGS.)

02:03PM  25          MR. LEACH:  YOUR HONOR, WE'RE HAVING SOME TECHNICAL
```

02:03PM  1    ISSUES WITH THE REDACTIONS AND DISPLAYING THEM UP THERE.

02:03PM  2         I THINK WHILE WE'RE RESOLVING THAT I'D LIKE TO GO THROUGH

02:03PM  3    ADDITIONAL PORTIONS OF THIS AND MAKE MY OFFER OF PROOF AND

02:03PM  4    HOPEFULLY SAVE EVERYBODY SOME TIME THAT WAY.

02:03PM  5              THE COURT:  IT SEEMS TO BE THE ORDER OF THE DAY.

02:03PM  6              MR. LEACH:  I APOLOGIZE TO THE COURT AND APPRECIATE

02:03PM  7    EVERYONE'S PATIENCE.

02:04PM  8    Q.   BEFORE WE DISPLAY THE PORTIONS THAT WERE JUST ADMITTED,

02:04PM  9    DR. DAS, LET ME DRAW YOUR ATTENTION TO PAGE 55 OF EXHIBIT 4621,

02:04PM 10    THE COVER LETTER AND THE STATEMENT OF DEFICIENCIES.

02:04PM 11    A.   YES.

02:04PM 12    Q.   AND DO YOU SEE THE NUMBER 3 IN THE COLUMN FOR SUMMARY

02:04PM 13    STATEMENT OF DEFICIENCIES?

02:04PM 14    A.   I DO.

02:04PM 15    Q.   OKAY.  AND PLEASE TAKE A MOMENT TO READ TO YOURSELF THE

02:04PM 16    INFORMATION BEGINNING AT 3 AND CONTINUING TO PAGE 57 THROUGH

02:04PM 17    THE SUBSTANCE OF NUMBER K IN THE MIDDLE OF THE PAGE.

02:04PM 18         (PAUSE IN PROCEEDINGS.)

02:06PM 19              THE WITNESS:  THANKS FOR YOUR PATIENCE.

02:06PM 20    BY MR. LEACH:

02:06PM 21    Q.   HAVE YOU READ THOSE CAREFULLY TO YOURSELF?

02:06PM 22    A.   I HAVE.

02:06PM 23    Q.   AND IN THE MARCH AND APRIL TIME PERIOD, DID YOU HAVE

02:06PM 24    CONVERSATIONS WITH MS. HOLMES ABOUT THERANOS'S QUALITY CONTROL

02:06PM 25    RESULTS FOR THE TIME PERIOD JULY 2014 THROUGH JUNE OF 2015?

02:06PM  1    A.    YES, WE DID.

02:06PM  2              MR. LEACH:  YOUR HONOR, I OFFER PAGE 55, BEGINNING

02:06PM  3    FROM THE NUMBER 3 ALL OF THE WAY THROUGH PAGE 57, STOPPING AT

02:07PM  4    THE NUMBER -- JUST ABOVE THE NUMBER 4.

02:07PM  5              THE COURT:  MR. LEACH, COULD YOU TELL ME -- YOUR

02:07PM  6    LAST QUESTION WAS REGARDING CONVERSATIONS THAT THIS WITNESS HAD

02:07PM  7    WITH MS. HOLMES BETWEEN, WHAT WAS THE TIME PERIOD?

02:07PM  8              MR. LEACH:  BETWEEN JULY -- RELATING TO QC DATA

02:07PM  9    BETWEEN JULY OF 2014 AND JUNE OF 2015.

02:08PM 10         (PAUSE IN PROCEEDINGS.)

02:08PM 11              THE COURT:  COUNSEL?

02:08PM 12              MR. WADE:  I MIGHT JUST INQUIRE.

02:08PM 13         FOR WHAT PURPOSE IS THIS ADMISSION?

02:08PM 14              THE COURT:  IT'S NOT FOR THE TRUTH OF THE MATTER --

02:08PM 15    IS THIS LIKEWISE AS THE PREVIOUS ADMISSIONS?

02:08PM 16              MR. LEACH:  YES, YOUR HONOR, FOR STATE OF MIND.

02:08PM 17              THE COURT:  YES.

02:08PM 18              MR. WADE:  I HAVE THE SAME OBJECTION, AND I WOULD

02:08PM 19    ADD 104 TO THIS AS WELL.

02:08PM 20              THE COURT:  ALL RIGHT.  THANK YOU.

02:08PM 21         LADIES AND GENTLEMEN -- OVERRULED.

02:08PM 22         LADIES AND GENTLEMEN, THESE EXHIBITS WILL BE ADMITTED, AND

02:08PM 23    THEY ARE OFFERED NOT FOR THE TRUTH OF THE MATTER ASSERTED, BUT

02:08PM 24    ONLY AS TO THE STATE OF MIND OF MS. HOLMES, AS THE PREVIOUS

02:08PM 25    ADMISSIONS, AS TO INTENT AND KNOWLEDGE, AND THOSE ISSUES ONLY,

02:08PM  1    NOT FOR THE TRUTH OF THE MATTER ASSERTED, BUT ONLY AS TO THE

02:08PM  2    STATE OF MIND OF MS. HOLMES AS TO KNOWLEDGE AND INTENT.

02:08PM  3         (GOVERNMENT'S EXHIBIT 4621, PAGE 55 WAS RECEIVED IN

02:09PM  4    EVIDENCE.)

02:09PM  5              MR. LEACH:  MS. HOLLIMAN, IF WE'RE ABLE TO, I THINK

02:09PM  6    WE CAN NOW DISPLAY THE ENTIRETY OF PAGE 55.

02:10PM  7         (PAUSE IN PROCEEDINGS.)

02:10PM  8              MR. LEACH:  OKAY.  MS. HOLLIMAN, IF WE CAN PLEASE

02:10PM  9    ZOOM IN ON THE TOP PORTION OF PAGE 55 JUST TO ORIENT THE JURY

02:10PM 10    AT THE TOP OF THE PAGE.

02:10PM 11    Q.   DR. DAS, DO YOU SEE THE TOP PORTION OF PAGE 55 ON TRIAL

02:10PM 12    EXHIBIT 4621?

02:10PM 13    A.   I DO.

02:10PM 14    Q.   OKAY.  AND DO YOU SEE THE DATE IN THE UPPER RIGHT CORNER,

02:10PM 15    JANUARY 25TH, 2016?

02:10PM 16    A.   YES.

02:10PM 17    Q.   OKAY.  AND TO THE LEFT OF THE PAGE THERE'S A BOX

02:11PM 18    "STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION."

02:11PM 19         IS THAT PART OF THE CMS FORM?

02:11PM 20    A.   YES, IT IS.

02:11PM 21    Q.   AND TO THE RIGHT DO YOU SEE THE DATE OF NOVEMBER 20TH,

02:11PM 22    2015?

02:11PM 23    A.   YES.

02:11PM 24    Q.   OKAY.  AND IS THAT YOUR UNDERSTANDING OF THE DATE THAT THE

02:11PM 25    CMS SURVEY WAS COMPLETED?

02:11PM  1    A.   THAT IS MY UNDERSTANDING.

02:11PM  2    Q.   OKAY.   THERE'S A STREET ADDRESS LISTED FOR THE LABORATORY,

02:11PM  3    733 GATEWAY BOULEVARD.

02:11PM  4         IS THAT WHERE THE CLIA LABORATORY WAS LOCATED?

02:11PM  5    A.   THAT'S CORRECT.

02:11PM  6    Q.   THAT'S WHERE YOU WENT TO WORK IN YOUR JOB?

02:11PM  7    A.   YES.

02:11PM  8    Q.   OKAY.   IF WE COULD PLEASE ZOOM OUT, MS. HOLLIMAN.

02:11PM  9         IF WE CAN NOW CAPTURE EVERY -- THE TOP -- DOWN A LITTLE

02:11PM 10    BIT MORE TO NUMBER 3.

02:11PM 11         DR. DAS, DO YOU SEE THE NUMBER D5791 --

02:11PM 12    A.   I DO.

02:11PM 13    Q.   -- IN THE TOP LEFT CORNER?

02:12PM 14         AND IS THAT A REFERENCE TO SOME IDENTIFICATION TAG OR

02:12PM 15    PREFIX TAG?

02:12PM 16    A.   THAT'S CORRECT, D TAG.

02:12PM 17    Q.   OKAY.   WHAT DO YOU MEAN, D TAG?

02:12PM 18    A.   DEFICIENCY TAG.

02:12PM 19    Q.   AND DOWN ON 3 IT SAYS, "BASED ON REVIEW OF QUALITY

02:12PM 20    ASSESSMENT AND QA PROCEDURES, THE LABORATORY FAILED TO HAVE A

02:12PM 21    QUALITY ASSESSMENT PROCEDURE ESTABLISHED TO IDENTIFY AND

02:12PM 22    CORRECT PROBLEMS WITH THE QUALITY CONTROL PROGRAM FOR THE

02:12PM 23    THERANOS PROPRIETARY SYSTEM (TPS)."

02:12PM 24         DO YOU SEE THAT LANGUAGE?

02:12PM 25    A.   YES, I DO.

02:12PM    1     Q.   AND DID YOU UNDERSTAND TPS TO BE THE EDISON 3.5 DEVICE?

02:12PM    2     A.   YES.

02:12PM    3     Q.   AND WHAT DID YOU UNDERSTAND QUALITY ASSESSMENT TO MEAN?

02:12PM    4     A.   MEANING THE TERM, MR. LEACH?

02:12PM    5     Q.   YES.

02:12PM    6     A.   THAT'S A TERM THAT ENCOMPASSES ALL QUALITY PROGRAMS, NOT

02:13PM    7     INCLUDING QUALITY CONTROL.

02:13PM    8     Q.   AND WHAT DO YOU MEAN BY "QUALITY PROGRAMS"?

02:13PM    9     A.   IN GENERAL, QUALITY CONTROL HAS TO DO WITH DAY-TO-DAY

02:13PM   10     RUNS, QUALITY OF DAY-TO-DAY RUNS.

02:13PM   11          AND QUALITY ASSESSMENT IS -- DESCRIBES ALL OF THE OTHER

02:13PM   12     QUALITY ACTIVITIES OUTSIDE OF THE DAY-TO-DAY RUNS ON ANY GIVEN

02:13PM   13     INSTRUMENT.

02:13PM   14     Q.   AND WAS PART OF YOUR JOB AS THE LAB DIRECTOR TO

02:13PM   15     INVESTIGATE THIS FINDING, UNDERSTAND IT, AND COME UP WITH THE

02:13PM   16     COMPANY'S RESPONSE?

02:13PM   17     A.   YES.

02:13PM   18     Q.   IF WE CAN GO FURTHER DOWN, PLEASE, MS. HOLLIMAN, ON

02:13PM   19     PAGE 55.

02:13PM   20          IT READS HERE, "MONTHLY QC REPORTS WERE REVIEWED FOR

02:13PM   21     JULY 2014, OCTOBER 2014, AND FEBRUARY THROUGH JUNE 2015."

02:13PM   22          DID YOU ALSO REVIEW MONTHLY QC REPORTS IN THE COURSE OF

02:14PM   23     YOUR WORK AS THE LABORATORY DIRECTOR?

02:14PM   24     A.   WE DID.  WE HAD THE REPORTS CREATED FOR US.

02:14PM   25     Q.   OKAY.  AND THAT WAS IN PART TO RESPOND TO THE 2567?

02:14PM  1    A.   THAT'S CORRECT.

02:14PM  2    Q.   AND IN NUMBER 2 IT SAYS, "THE TOTAL PERCENTAGE OF QC

02:14PM  3    VALUES GREATER THAN 2 STANDARD DEVIATIONS (SDS) WAS REVIEWED BY

02:14PM  4    THE SURVEYOR."

02:14PM  5         DO YOU SEE THAT LANGUAGE?

02:14PM  6    A.   I DO.

02:14PM  7    Q.   AND DO YOU UNDERSTAND WHAT IS MEANT BY "STANDARD

02:14PM  8    DEVIATIONS"?

02:14PM  9    A.   YES, I DO.

02:14PM  10   Q.   AND WHAT IS A STANDARD DEVIATION?

02:14PM  11   A.   WOULD YOU LIKE THE MORE TECHNICAL DEFINITION?

02:14PM  12   Q.   I'D LIKE THE LESS TECHNICAL DEFINITION IF YOU COULD.

02:14PM  13   A.   IT'S, IN GENERAL, AN ESTIMATE OF THE SPREAD OF A DATA SET,

02:14PM  14   HOW WIDELY THE VALUES VARY.

02:14PM  15   Q.   OKAY.

02:14PM  16   A.   IN LABORATORY PARLANCE, WE USE IT TO ESTIMATE PRECISION.

02:14PM  17   Q.   AND IF WE CAN GO TO THE NEXT PAGE, PLEASE, PAGE 56.

02:15PM  18        DR. DAS, DO SOME OF THE CMS FINDINGS CONTINUE -- WITH

02:15PM  19   RESPECT TO THIS D TAG CONTINUE ON TO THE NEXT PAGE?

02:15PM  20   A.   YES, I SEE THAT.

02:15PM  21   Q.   OKAY.  DO YOU SEE WHERE IT SAYS, "IN JULY 2014, THE DATA

02:15PM  22   REVEALED THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES

02:15PM  23   WITH MORE THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."  AND

02:15PM  24   THEN THERE'S TESTOSTERONE, TOTAL T4, VITAMIN D.

02:15PM  25        "OVERALL 16 PERCENT OF QC SAMPLES ON ALL TESTS ON ALL

02:15PM  1    DEVICES HAD VALUES GREATER THAN 2 SDS."

02:15PM  2         DO YOU SEE THAT LANGUAGE?

02:15PM  3    A.   I DO SEE THAT.

02:15PM  4    Q.   OKAY.  AND WERE TST, TOTAL T4, AND VITAMIN D ASSAYS RUN ON

02:15PM  5    THE EDISON IN THE 2014 TIME PERIOD?

02:15PM  6    A.   THAT IS CORRECT.  I BELIEVE THAT'S WHAT THEY'RE REFERRING

02:15PM  7    TO.

02:15PM  8    Q.   AND DID YOU AND YOUR TEAM ALSO REVIEW THE DATA THAT IS

02:16PM  9    LISTED HERE ON THIS FORM?

02:16PM  10   A.   YES.

02:16PM  11   Q.   AND DID YOU REVIEW AN EVEN BROADER UNIVERSE OF QC DATA IN

02:16PM  12   ORDER TO RESPOND TO THE CMS REPORT?

02:16PM  13   A.   WE DID.

02:16PM  14   Q.   AND IS THIS -- IS THE FINDING LISTED HERE CONSISTENT WITH

02:16PM  15   WHAT YOU REVIEWED IN YOUR REVIEW OF DATA?

02:16PM  16         MR. WADE:  YOUR HONOR, 702 ON THIS ISSUE,

02:16PM  17   PARTICULARLY GIVEN THE PURPOSE THAT THIS EVIDENCE HAS BEEN

02:16PM  18   OFFERED.

02:16PM  19         THE COURT:  MR. LEACH, I THINK YOU'RE ON THE MARGINS

02:16PM  20   OF A 702 AREA, SO LET ME ASK YOU TO REPHRASE YOUR QUESTION.

02:16PM  21   BY MR. LEACH:

02:16PM  22   Q.   DID YOU ALSO -- DID YOU ALSO REVIEW THE DATA THAT IS

02:16PM  23   LISTED IN THIS REPORT, IN THIS PARAGRAPH E, DR. DAS?

02:16PM  24   A.   I DON'T RECALL THESE EXACT NUMBERS, BUT THESE TIME FRAMES

02:17PM  25   ARE CONSISTENT WITH MY RECOLLECTION.

02:17PM  1    Q.   OKAY.  AND IN RESPONDING TO CMS, DID -- OR YOU NEEDED TO

02:17PM  2    FORMULATE A RESPONSE TO CMS ON BEHALF OF THE COMPANY; IS THAT

02:17PM  3    CORRECT?

02:17PM  4    A.   YES, THAT IS CORRECT.

02:17PM  5    Q.   AND DID YOU LOOK AT NOT JUST DATA FOR JULY OF 2014, BUT A

02:17PM  6    BROADER UNIVERSE OF DATA IN ORDER TO UNDERSTAND AND RESPOND TO

02:17PM  7    CMS?

02:17PM  8    A.   YES, WE DID.

02:17PM  9    Q.   OKAY.  AT ANY POINT DID YOU TELL CMS THAT THE COMPANY

02:17PM  10   DISAGREED WITH THIS PARTICULAR FINDING?

02:17PM  11   A.   NO, I DON'T BELIEVE WE DID.

02:17PM  12   Q.   OKAY.  WHY NOT?

02:17PM  13   A.   THESE FINDINGS --

02:17PM  14        MR. WADE:  YOUR HONOR, AGAIN, 702.  WE'RE JUST USING

02:17PM  15   REVERSE INSTEAD OF FORWARD.

02:17PM  16        THE COURT:  I UNDERSTAND.

02:17PM  17   I THINK YOU'RE ASKING FOR AN OPINION THAT FALLS UNDER 702

02:17PM  18   THE WAY THE QUESTION IS FORMED, SO I'LL SUSTAIN THE OBJECTION.

02:17PM  19   BY MR. LEACH:

02:17PM  20   Q.   BUT YOU NEVER SAID TO ANYBODY AT CMS, "I DISAGREE WITH

02:17PM  21   THIS FINDING"?

02:18PM  22   A.   I DON'T RECALL SAYING THAT OR WRITING THAT.

02:18PM  23   Q.   LET'S GO TO NUMBER F.

02:18PM  24   A.   OKAY.

02:18PM  25   Q.   AND IF WE CAN ENLARGE THAT, MS. HOLLIMAN.

02:18PM  1          I'M SORRY.  I THINK WE'RE DOWN ON H.  I WANTED TO FOCUS ON

02:18PM  2     F IF WE COULD:

02:18PM  3          THIS READS, DR. DAS, "IN OCTOBER 2014 THE DATA REVEALED

02:18PM  4     THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES WITH MORE

02:18PM  5     THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."

02:18PM  6          DO YOU SEE THAT LANGUAGE?

02:18PM  7     A.   I DO.

02:18PM  8     Q.   AND THEN THERE'S A LIST FOR ESTRADIOL, FREE T4, PROLACTIN,

02:18PM  9     SHBG, TSH, TST, TOTAL T3, TT4, VITAMIN D, AND VITAMIN B12.

02:19PM 10          DO YOU SEE THOSE?

02:19PM 11     A.   I DO.

02:19PM 12     Q.   AND ARE ALL OF THOSE ASSAYS THAT WERE RUN ON THE EDISON?

02:19PM 13     A.   YES.

02:19PM 14     Q.   AND AS A LAB DIRECTOR, IS IT DESIRABLE OR UNDESIRABLE TO

02:19PM 15     HAVE A CV OF GREATER THAN 15 PERCENT?

02:19PM 16     A.   THAT WOULD BE UNDESIRABLE.

02:19PM 17     Q.   THIS SAYS, "OVERALL 29 PERCENT OF QC SAMPLES ON ALL TESTS

02:19PM 18     ON ALL DEVICES HAD VALUES GREATER THAN 2 SD'S."

02:19PM 19          DO YOU SEE THAT?

02:19PM 20     A.   YES, I SEE THAT.

02:19PM 21     Q.   AND WHAT DID YOU UNDERSTAND THAT TO MEAN?

02:19PM 22     A.   THAT -- I UNDERSTAND THAT TO MEAN THAT 15 PERCENT OF THE

02:19PM 23     VALUES WERE VIOLATING THE 2 SD RULE, WHICH IS A COMMON QUALITY

02:19PM 24     CONTROL RULE.

02:19PM 25     Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THIS

02:19PM 1    QUALITY CONTROL RULE AND THE DATA THAT WAS BEING REPORTED BY

02:19PM 2    CMS?

02:19PM 3    A.   IN GENERAL, YES.

02:19PM 4    Q.   LET'S GO TO LETTER G.

02:20PM 5         DO YOU SEE WHERE IT SAYS, "IN FEBRUARY OF 2015, THE

02:20PM 6    DATA" -- OH, BEFORE I LEAVE G, DID YOU EVER TELL CMS THAT YOU

02:20PM 7    DISAGREED WITH THIS FINDING IN F?

02:20PM 8              MR. WADE:  YOUR HONOR, I'M GOING TO OBJECT ON 702

02:20PM 9    GROUNDS TO THIS AS WELL.

02:20PM 10             THE COURT:  OVERRULED.  YOU CAN ANSWER THE QUESTION.

02:20PM 11             THE WITNESS:  NO, I DO NOT RECALL THAT.

02:20PM 12   BY MR. LEACH:

02:20PM 13   Q.   IN G IT SAYS, "IN FEBRUARY 2015, THE DATA REVEALED THE

02:20PM 14   FOLLOWING TESTS SHOWED THE PERCENTAGE OF QC SAMPLES WITH MORE

02:20PM 15   THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."

02:20PM 16        AND IT LISTS FT4, SHBG, TT3, VITAMIN D, VITAMIN B12.

02:20PM 17        DO YOU SEE THAT?

02:20PM 18   A.   I DO.

02:20PM 19   Q.   AND THOSE ARE TESTS THAT ARE RUN ON EDISON?

02:20PM 20   A.   THAT IS CORRECT.

02:20PM 21   Q.   AND AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU

02:20PM 22   DISAGREED WITH THIS FINDING?

02:20PM 23   A.   NO, I DON'T RECALL DOING SO.

02:20PM 24   Q.   LET'S LOOK AT H AND I.

02:21PM 25        DO YOU SEE WHERE IT SAYS, "IN MARCH OF 2015, THE DATA

02:21PM  1        REVEALED THE FOLLOWING TESTS SHOWED PERCENTAGE OF QC SAMPLES

02:21PM  2        WITH MORE THAN 15 PERCENT OF VALUES GREATER THAN 2 SD."

02:21PM  3             DO YOU SEE THAT LANGUAGE?

02:21PM  4        A.   I DO.

02:21PM  5        Q.   OKAY.  AND DID YOU UNDERSTAND THIS TO BE A SIMILAR ISSUE

02:21PM  6        TO WHAT CMS WAS RAISING FOR FEBRUARY, OCTOBER, AND JULY?

02:21PM  7        A.   YES, I DO.

02:21PM  8        Q.   AND AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU

02:21PM  9        DISAGREED WITH THIS FINDING?

02:21PM 10        A.   NO, I DON'T RECALL DOING SO.

02:21PM 11        Q.   AND THEN I SAYS, "IN APRIL THE DATA REVEALED THE FOLLOWING

02:21PM 12        TESTS, SHOWED PERCENTAGE OF QC SAMPLES WITH MORE THAN

02:21PM 13        15 PERCENT OF VALUES GREATER THAN 2 SD, SHBG," AND THEN THERE'S

02:22PM 14        A LIST OF ASSAYS CONTINUING ON TO PAGE 57.

02:22PM 15             IS THIS A SIMILAR ISSUE BEING RAISED IN THE FINDINGS THAT

02:22PM 16        WE JUST LOOKED AT PREVIOUSLY?

02:22PM 17        A.   YES, I AGREE.

02:22PM 18        Q.   AT ANY POINT IN TIME DID YOU TELL CMS THAT YOU DISAGREED

02:22PM 19        WITH THIS FINDING?

02:22PM 20        A.   NO, I DON'T RECALL DOING SO.

02:22PM 21        Q.   WAS TSA -- OR EXCUSE ME, PSA AN --

02:22PM 22             YOU CAN TAKE THIS DOWN, MS. HOLLIMAN.

02:22PM 23             WAS PSA ANOTHER ASSAY THAT WAS RUN ON THE EDISON DEVICE IN

02:22PM 24        THE TIME PERIOD BEFORE YOU BECAME THE LAB DIRECTOR?

02:22PM 25        A.   YES, THAT'S MY UNDERSTANDING.

02:22PM  1    Q.    OKAY.  AND IN CONNECTION WITH YOUR REVIEW OF THE CMS

02:22PM  2    REPORT AND RESPONDING TO CMS, DID YOU HAVE DISCUSSIONS WITH

02:22PM  3    MS. HOLMES ABOUT WHAT CMS WAS FINDING WITH RESPECT TO CMS AND

02:23PM  4    WHAT YOU WERE FINDING AND WHAT THAT -- HOW TO RESPOND TO THAT?

02:23PM  5    A.    I COULD USE A LITTLE MORE SPECIFICITY, MR. LEACH, IF YOU

02:23PM  6    MAY.

02:23PM  7    Q.    THAT WAS A COMPOUND QUESTION.  LET ME ASK IT BETTER.

02:23PM  8          IN THIS 2015 OR 2016, MARCH AND APRIL TIME PERIOD, DID YOU

02:23PM  9    HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE COMPANY'S PSA TEST?

02:23PM  10   A.    I DID.

02:23PM  11   Q.    AND WAS THAT IN THE CONTEXT OF SOME OF THE CMS FINDINGS

02:23PM  12   AND HOW TO RESPOND TO THAT?

02:23PM  13   A.    IT WAS RELATED TO THE CMS FINDINGS.

02:23PM  14   Q.    OKAY.  DESCRIBE TO US YOUR CONVERSATIONS WITH MS. HOLMES?

02:23PM  15   A.    I RECALL USING THE PSA TEST AS AN EXAMPLE OF THE EDISON'S

02:23PM  16   ERROR PROPENSITY OR GENERATING ERROR -- ERRONEOUS RESULTS.

02:23PM  17   Q.    OKAY.  AND DID YOU GIVE MS. HOLMES A PARTICULAR REASON WHY

02:23PM  18   YOU THOUGHT THE EDISON WAS PRONE TO ERRONEOUS RESULTS?

02:23PM  19   A.    YES.  IN REVIEWING THE DATA, IT ENDED UP BEING AN EASILY

02:24PM  20   DIGESTIBLE EXAMPLE OF THE EDISON'S ERRORS AND THAT I RECALL

02:24PM  21   QUITE A FEW FEMALE PATIENTS RETURNING PSA RESULTS, WHICH WOULD

02:24PM  22   BE HIGHLY UNLIKELY.

02:24PM  23   Q.    WHY WAS THAT A RED FLAG TO YOU?

02:24PM  24   A.    BECAUSE FEMALES SHOULD GENERALLY NOT HAVE PSA DETECTABLE.

02:24PM  25   IT SHOULD ONLY BE DETECTED IN MALES.

02:24PM   1    Q.   AND WHY WERE YOU BRINGING THIS TO MS. HOLMES'S ATTENTION?

02:24PM   2    A.   IT WAS JUST TO EXEMPLIFY WHAT WE WERE DISCUSSING REGARDING

02:24PM   3    SOME OF THE ERRORS SEEN ON THE TSPU.

02:24PM   4    Q.   AND AFTER THIS CONVERSATION WITH MS. HOLMES, DID SHE COME

02:24PM   5    BACK TO YOU ABOUT WITH ANY LITERATURE RELATING TO PSA RESULTS?

02:24PM   6    A.   YES, I BELIEVE SO.  SHE OFFERED AN ALTERNATIVE

02:24PM   7    EXPLANATION.

02:24PM   8    Q.   AND WHAT WAS THE ALTERNATIVE EXPLANATION?

02:24PM   9    A.   I DON'T REMEMBER THE DETAILS, BUT IT WAS ALONG THE LINES

02:24PM  10    OF AN ARTICLE OR TWO DESCRIBING A FEW, I BELIEVE IT WAS A

02:25PM  11    FRACTION OF A SUBSET OF A RARE BREAST CANCER AND THOUGH FEMALES

02:25PM  12    FROM TIME TO TIME EXHIBITING PSA RESULTS FROM THEIR TUMORS.

02:25PM  13    Q.   AND WAS THAT EXPLANATION SATISFYING TO YOU?

02:25PM  14    A.   IT SEEMED IMPLAUSIBLE.

02:25PM  15    Q.   LET ME MOVE FORWARD IN TIME, PLEASE, TO THE END OF OR THE

02:25PM  16    LATE TIME PERIOD OF MARCH OF 2016.

02:25PM  17         HAVING REVIEWED THE FORM 2567, DID YOU WRITE BACK TO CMS

02:25PM  18    WITH THE COMPANY'S RESPONSES?

02:25PM  19    A.   YES, I DO RECALL THAT.

02:25PM  20    Q.   OKAY.  AND DID YOU -- YOU MENTIONED SOMETHING EARLIER

02:25PM  21    CALLED A PATIENT IMPACT ASSESSMENT.

02:25PM  22         WHAT IS THAT?

02:25PM  23    A.   YES.  THOSE WERE DESCRIPTIONS OF OUR ASSESSMENTS ON OUR

02:25PM  24    EVALUATION OF WHETHER THESE TESTS LED TO POTENTIAL FOR PATIENT

02:25PM  25    HARM.

02:25PM  1   Q.   AND IN THE COURSE OF, IN THE COURSE OF PREPARING THESE

02:26PM  2   PATIENT IMPACT ASSESSMENTS, WERE YOU -- DID YOU VIEW YOURSELF

02:26PM  3   AS FULFILLING YOUR OBLIGATIONS AS THE CLIA LAB DIRECTOR?

02:26PM  4   A.   YES, I DID.

02:26PM  5   Q.   AND WHY DID YOU FEEL THAT WAS PART OF YOUR OBLIGATIONS AS

02:26PM  6   THE CLIA LAB DIRECTOR?

02:26PM  7   A.   THAT'S NOT ONLY A REGULATORY OBLIGATION BUT A PROFESSIONAL

02:26PM  8   ONE AND AN ETHICAL ONE AS WELL.

02:26PM  9   Q.   OKAY.  LET ME DRAW YOUR ATTENTION BACK TO 7603,

02:27PM 10   SPECIFICALLY PAGES 82 AND 83.

02:27PM 11        DO YOU HAVE THAT IN FRONT OF YOU, DR. DAS?

02:27PM 12   A.   YES, I DO.  THANK YOU.

02:27PM 13   Q.   OKAY.  AND ON PAGE 82 THERE'S A CFR SECTION 493.1291,

02:27PM 14   STANDARD TEST REPORT.

02:27PM 15        DO YOU SEE THAT?

02:27PM 16   A.   YES, I SEE THAT.

02:27PM 17   Q.   AND IF YOU LOOK ON PAGE 83, THERE'S A SUBPARAGRAPH K.

02:27PM 18        DO YOU SEE WHERE IT SAYS, "WHEN ERRORS IN THE REPORTED

02:27PM 19   PATIENT TEST RESULTS ARE DETECTED, THE LABORATORY MUST DO THE

02:27PM 20   FOLLOWING"?

02:27PM 21   A.   I DO SEE THAT.

02:27PM 22   Q.   OKAY.  AND DOES THAT LAY OUT CERTAIN THINGS THAT YOU FELT

02:27PM 23   AS THE LABORATORY DIRECTOR NEEDED TO BE DONE IF THE CONDITION

02:27PM 24   IN K WAS SATISFIED?

02:27PM 25   A.   THAT'S CORRECT, THAT'S STANDARD PRACTICE.

02:27PM  1    Q.   OKAY.  IN THE COURSE OF RESPONDING TO THE CMS 2567, DID

02:28PM  2    YOU, AS THE LABORATORY, DETECT ERRORS IN THE PATIENT REPORTED

02:28PM  3    TEST RESULTS?

02:28PM  4    A.   WE DID.

02:28PM  5    Q.   AND DID YOU FEEL THAT YOU WERE REQUIRED TO TAKE CERTAIN

02:28PM  6    ACTION PURSUANT TO THIS CLIA REGULATION AND YOUR PROFESSIONAL

02:28PM  7    RESPONSIBILITIES?

02:28PM  8    A.   YES, THAT'S CORRECT.

02:28PM  9    Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO EXHIBIT 4943.

02:28PM 10         DO YOU HAVE THAT IN FRONT OF YOU, DR. DAS?

02:28PM 11    A.   YES, I DO.

02:28PM 12    Q.   DO YOU RECOGNIZE THE FIRST PAGE OF 4943?

02:28PM 13    A.   I DO IN GENERAL, NOT THE SPECIFIC PAGE, THOUGH.

02:28PM 14    Q.   OKAY.  IN GENERAL, WHAT IS THIS?

02:28PM 15    A.   IT LOOKS LIKE IT'S A TABLE OF CONTENTS FOR THE EXHIBITS

02:29PM 16    THAT WE SUBMITTED TO CMS AS EVIDENCE.

02:29PM 17    Q.   AS PART OF YOUR REVIEW AND RESPONSE TO THE 2567?

02:29PM 18    A.   THAT'S CORRECT.

02:29PM 19    Q.   OKAY.  DO YOU SEE THAT THERE'S A ROW -- THE THIRD ROW FROM

02:29PM 20    THE BOTTOM WITH TAB NUMBER 3?

02:29PM 21    A.   YES, I DO.

02:29PM 22    Q.   OKAY.  AND WE CAN NOW TURN TO PAGE 9.

02:29PM 23         DO YOU SEE THE HEADING PATIENT IMPACT ASSESSMENT?

02:29PM 24    A.   I DO.  THE PRINT IS RATHER SMALL.

02:29PM 25    Q.   OKAY.  WE'LL, WE'LL --

02:29PM 1    A.   WE'LL MANAGE.

02:29PM 2    Q.   AND IS THIS A PATIENT IMPACT ASSESSMENT THAT WAS PROVIDED

02:29PM 3    TO CMS FOLLOWING YOUR REVIEW OF THE 2567?

02:29PM 4    A.   I'LL NEED JUST A MOMENT TO REVIEW IT.

02:30PM 5    Q.   YES.  THANK YOU.

02:30PM 6         (PAUSE IN PROCEEDINGS.)

02:30PM 7              THE WITNESS:  YES, I BELIEVE SO.

02:30PM 8              MR. LEACH:  YOUR HONOR, I OFFER PAGE 1 AND 9 OF

02:30PM 9    4943.

02:30PM 10        (PAUSE IN PROCEEDINGS.)

02:30PM 11             MR. WADE:  JUST THE SAME OBJECTIONS, YOUR HONOR.

02:30PM 12             THE COURT:  ALL RIGHT.  THANK YOU.

02:30PM 13        THE COURT WILL OVERRULE THE OBJECTION.  THE FOUNDATION HAS

02:31PM 14   BEEN LAID.  I THINK THERE WAS A PREVIOUS 407 OBJECTION THAT WAS

02:31PM 15   MADE, AND THAT IS OVERRULED NOW BY THE TESTIMONY OF THE

02:31PM 16   WITNESS.  THE OBJECTION IS OVERRULED.

02:31PM 17        (GOVERNMENT'S EXHIBIT 4943, PAGES 1 AND 9, WAS RECEIVED IN

02:31PM 18   EVIDENCE.)

02:31PM 19             MR. LEACH:  THANK YOU, YOUR HONOR.  MAY WE DISPLAY,

02:31PM 20   YOUR HONOR?

02:31PM 21             THE COURT:  YES.

02:31PM 22   BY MR. LEACH:

02:31PM 23   Q.   JUST TO ORIENT THE JURY, DR. DAS, I WAS REFERENCING -- YOU

02:31PM 24   BELIEVE THIS WAS A DOCUMENT THAT WAS SUBMITTED TO CMS?

02:31PM 25   A.   YES, I BELIEVE SO.

02:31PM   1    Q.   OKAY.  AND WE WERE TALKING ABOUT THE THIRD ROW.  TAB 3

02:31PM   2    THERE'S SOME REFERENCE TO TPS 3.5 EDISONS AND SOME CERTAIN

02:31PM   3    FINDINGS IN THE 2567.

02:31PM   4         AND DO YOU SEE THAT?

02:31PM   5    A.   YES, I DO.

02:31PM   6    Q.   OKAY.  AND IF WE CAN PLEASE DISPLAY PAGE 9.  AND LET'S

02:32PM   7    HIGHLIGHT THE FIRST HALF OR BLOW UP, ENLARGE THE FIRST TOP HALF

02:32PM   8    OF THE DOCUMENT RIGHT THERE ALL OF THE WAY DOWN TO PATIENT

02:32PM   9    IMPACT.

02:32PM   10        THAT'S FINE, MS. HOLLIMAN.  THANK YOU.

02:32PM   11        IS THIS SOMETHING THAT YOU HAD A HAND IN DRAFTING,

02:32PM   12   DR. DAS?

02:32PM   13   A.   I DON'T REMEMBER THE SPECIFIC DOCUMENT, BUT IT DOES LOOK

02:32PM   14   FAMILIAR.

02:32PM   15   Q.   OKAY.  YOU RECALL WORKING ON PATIENT IMPACT ASSESSMENT IN

02:32PM   16   RESPONSE TO 2567?

02:32PM   17   A.   YES, INDEED.

02:32PM   18   Q.   AND WAS THAT SOMETHING THAT YOU FELT YOU HAD TO DO AS THE

02:32PM   19   LAB DIRECTOR?

02:32PM   20   A.   THAT'S CORRECT.

02:32PM   21   Q.   OKAY.  UP AT THE TOP THERE'S A LIST OF DEFICIENCIES AND

02:32PM   22   THERE'S SOME D TAGS, D5403, D5481, D5791, D6102, AND D6115.

02:32PM   23        DO YOU SEE THOSE?

02:32PM   24   A.   I DO.

02:32PM   25   Q.   AND WHAT ARE THOSE?

02:32PM 1    A.   THOSE APPEAR TO BE THE SPECIFIC D TAGS REFERENCED IN THIS

02:33PM 2    PATIENT IMPACT ASSESSMENT.

02:33PM 3    Q.   AND THOSE D TAGS ORIGINATE FROM THE 2567?

02:33PM 4    A.   THAT'S CORRECT.

02:33PM 5    Q.   AND EARLIER WE WERE LOOKING AT A D TAG FOR 2571, FINDING

02:33PM 6    NUMBER 3?

02:33PM 7    A.   I BELIEVE WE WERE.

02:33PM 8    Q.   AND SO DO YOU BELIEVE THAT THIS PATIENT IMPACT ASSESSMENT

02:33PM 9    RELATES TO THE PORTION OF THE CMS REPORT THAT WE JUST LOOKED

02:33PM 10   AT?

02:33PM 11   A.   I EXPECT SO.

02:33PM 12   Q.   OKAY.  THIS SAYS, "THE LABORATORY AGREES THAT ITS

02:33PM 13   DESCRIPTION OF PRIOR ANALYSIS WERE LACKING SUFFICIENT DETAIL TO

02:33PM 14   EXPLAIN THE CONCLUSIONS SUBMITTED IN THE RESPONSE."

02:33PM 15        IS THAT A REFERENCE TO PRIOR RESPONSES THAT THERANOS HAD

02:33PM 16   MADE TO CMS?

02:33PM 17   A.   I BELIEVE SO.

02:33PM 18   Q.   IT THEN READS, "UPON A REVIEW OF THAT RESPONSE, INCLUDING

02:33PM 19   THE ENTIRETY OF THE PRIOR ANALYSIS OF TPS 3.5 QC DATA AND

02:33PM 20   PATIENT TEST RESULT DISTRIBUTIONS FOR ALL ANALYTES DURING THE

02:34PM 21   TIME PERIOD EXAMINED, THE LABORATORY MADE NOTE OF POOR QC

02:34PM 22   PERFORMANCE THROUGHOUT."

02:34PM 23        IS THAT AN ACCURATE STATEMENT?

02:34PM 24   A.   THAT IS AN ACCURATE STATEMENT.

02:34PM 25   Q.   AND THE PATIENT TEST RESULT DISTRIBUTIONS THAT YOU'RE

02:34PM  1    TALKING ABOUT THERE, DID THAT REFER TO ALL TESTS RUN ON THE

02:34PM  2    EDISON DEVICE?

02:34PM  3    A.   YES, ALL TESTS.

02:34PM  4    Q.   OKAY.  AND DO YOU HAVE A MEMORY OF HOW MANY TESTS WERE RUN

02:34PM  5    ON THE EDISON DEVICE?

02:34PM  6    A.   I BELIEVE IT WAS A TOTAL OF 12.

02:34PM  7    Q.   OKAY.  TWELVE TESTS RUN ON THE EDISON DEVICE THROUGHOUT

02:34PM  8    THE LIFE OF THE CLIA LAB?

02:34PM  9    A.   THAT IS MY UNDERSTANDING.

02:34PM  10   Q.   IT THEN SAYS, "THEREFORE, LABORATORY CONDUCTED AN EXPANDED

02:34PM  11   RETROSPECTIVE ANALYSIS FOR 2014 AND 2015 QC DATA."

02:34PM  12        WHAT DOES THAT MEAN?

02:34PM  13   A.   IN GENERAL THAT MEANS WE EXPAND THE RANGE OF THE QC DATA

02:34PM  14   THAT WE LOOKED AT BECAUSE WE IDENTIFIED ISSUES WITH THE

02:34PM  15   ORIGINAL DATA, MEANING WE WANTED TO SEE HOW FAR THE POOR

02:35PM  16   PERFORMANCE EXTENDED.

02:35PM  17   Q.   YOU WANTED TO LOOK AT A BROADER UNIVERSE?

02:35PM  18   A.   YES, THAT'S ONE WAY TO DESCRIBE IT.

02:35PM  19   Q.   OKAY.  AND THAT'S WHAT YOU'RE REPORTING TO CMS?

02:35PM  20   A.   YES, THAT'S CORRECT.

02:35PM  21   Q.   OKAY.  AFTER EXTENSIVE DIALOGUE WITH MS. HOLMES?

02:35PM  22   A.   I DON'T KNOW HOW TO DESCRIBE.

02:35PM  23   Q.   HOW ABOUT AFTER SOME DIALOGUE WITH MS. HOLMES?

02:35PM  24   A.   YES, SOME DIALOGUE.

02:35PM  25   Q.   IT THEN SAYS, "THE LABORATORY NOTED MULTIPLE AND RECURRENT

02:35PM 1    TIME PERIODS (ACROSS ALL ANALYTES TESTED) OF ABRUPT SHIFTS IN

02:35PM 2    QC TARGET MEANS."

02:35PM 3         WHAT DOES THAT MEAN?

02:35PM 4    A.   PLEASE GIVE A MINUTE TO REVIEW THAT.

02:35PM 5         (PAUSE IN PROCEEDINGS.)

02:35PM 6            THE WITNESS:  SO THAT FIRST PART MEANS THAT THE

02:35PM 7    AVERAGE VALUES OF QUALITY CONTROL, THE TARGETS THAT WE WERE

02:36PM 8    TRYING TO REACH, OR THAT THE LABORATORY WAS TARGETING, WERE

02:36PM 9    BEING SHIFTED UNEXPLAINEDLY.

02:36PM 10   BY MR. LEACH:

02:36PM 11   Q.   "HIGH RATES OF 1-2S QC RULE FAILURES."

02:36PM 12        WHAT IS MEANT BY "1-2S"?

02:36PM 13   A.   SO THIS 1-2S ACTUALLY REFERS TO THE SAME QC RULE FAILURES

02:36PM 14   THAT THE CMS INSPECTORS WERE NOTING IN THAT D TAG.  I BELIEVE

02:36PM 15   IT WAS 5791, I BELIEVE.  SO THEY CALL IT A --

02:36PM 16   Q.   AND THE 1-2S, THAT'S STANDARD DEVIATIONS?

02:36PM 17   A.   YES.  SO THE 2S REFERS TO 2 SD ANALOGOUS TO WHAT IS BEING

02:36PM 18   REFERRED TO IN THE D TAG.

02:36PM 19   Q.   AND "QC CV'S FAR EXCEEDING LIMITS FOR A STABLE TESTING

02:36PM 20   PROCESS."

02:36PM 21        WHAT DID THAT MEAN?

02:36PM 22   A.   TO SIMPLIFY THAT ONE A BIT, IT JUST MEANS THAT THERE WAS A

02:37PM 23   LOT OF IMPRECISION NOTED.

02:37PM 24   Q.   AND IS IMPRECISION DESIRABLE OR UNDESIRABLE?

02:37PM 25   A.   UNDESIRABLE.

02:37PM   1    Q.   LET'S ZOOM OUT, MS. HOLLIMAN, AND LOOK AT THE NEXT TWO

02:37PM   2    PARAGRAPHS IN THIS PATIENT IMPACT ASSESSMENT.

02:37PM   3         DO YOU SEE WHERE IT SAYS PATIENT IMPACT, DR. DAS?

02:37PM   4    A.   YES, I DO.

02:37PM   5    Q.   AND THIS READS, "ALTHOUGH THE MAGNITUDE OF QC DEVIATIONS

02:37PM   6    FROM TARGET MEANS DOES NOT NECESSARILY REFLECT THE EXACT NATURE

02:37PM   7    AND MAGNITUDE OF BIAS ON PATIENT RESULTS BECAUSE OF DIFFERENCES

02:37PM   8    IN MATRICES, THE QC FAILURES IDENTIFIED BY THIS COMPREHENSIVE

02:37PM   9    RETROSPECTIVE ANALYSIS REFLECT A GLOBAL AND LONG-TERM FAILURE

02:37PM  10    OF THE QUALITY CONTROL PROGRAM FOR THIS INSTRUMENT, AS WELL AS

02:37PM  11    FAILURES OF RELATED QUALITY ASSURANCE PROCEDURES THAT SHOULD

02:37PM  12    HAVE ALERTED THE LABORATORY TO CORRECT SUCH AN UNSTABLE

02:37PM  13    PROCESS."

02:37PM  14         WHY DID YOU INCLUDE THIS IN THE PATIENT IMPACT PORTION OF

02:38PM  15    THIS?

02:38PM  16    A.   FIRST OF ALL, THAT'S QUITE A MOUTHFUL.

02:38PM  17    Q.   YES.

02:38PM  18    A.   THIS WAS JUST TO DESCRIBE OUR FINDINGS.

02:38PM  19    Q.   AND "THE LABORATORY HAS CONCLUDED THAT THERE IS A POSSIBLE

02:38PM  20    PATIENT IMPACT FOR EVERY TEST REPORTED FROM THE LABORATORY'S

02:38PM  21    TPS 3.5 INSTRUMENTS."

02:38PM  22         IS THAT WHAT YOU COMMUNICATED TO CMS?

02:38PM  23    A.   YES, I BELIEVE SO.

02:38PM  24    Q.   AND WAS THAT YOUR VIEW AT THE TIME?

02:38PM  25    A.   YES, IT WAS.

02:38PM 1    Q.   IN CORRECTIVE ACTION IT READS, "THE FRACTION OF PATIENT

02:38PM 2    RESULTS TRULY IMPACTED, AND THE NATURE AND MAGNITUDE OF ANY

02:38PM 3    EFFECT ARE UNKNOWN.   OUT OF AN ABUNDANCE OF CAUTION, THE

02:38PM 4    LABORATORY HAS VOIDED ALL PATIENT TEST RESULTS REPORTED FROM

02:38PM 5    THE TPS 3.5 INSTRUMENTS."

02:38PM 6         DO YOU SEE THAT?

02:38PM 7    A.   I DO SEE THAT.

02:38PM 8    Q.   OKAY.   AND DID YOU, IN FACT, VOID ALL OF THE TEST RESULTS

02:38PM 9    FROM THE EDISON DEVICE FROM THE 2014, 2015 TIME PERIOD?

02:39PM 10   A.   YES, WE DID SO.

02:39PM 11   Q.   OKAY.   AND THEN IT SAYS, "MANY CORRECTED REPORTS HAVE BEEN

02:39PM 12   TRANSMITTED AND THE REMAINDER ARE BEING TRANSMITTED.

02:39PM 13   TRANSMISSION WILL BE COMPLETE BY MARCH 31ST, 2016."

02:39PM 14        DO YOU SEE THAT LANGUAGE?

02:39PM 15   A.   YES, I DO.

02:39PM 16   Q.   DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT HOW TO

02:39PM 17   COMMUNICATE THE VOIDING OF THE TESTS TO CMS AND OTHER

02:39PM 18   CONSTITUENCIES?

02:39PM 19   A.   COULD YOU BE MORE SPECIFIC.

02:39PM 20   Q.   DID YOU HAVE CONVERSATIONS WITH MS. HOLMES ABOUT HOW TO

02:39PM 21   COMMUNICATE THERANOS'S VOIDING OF THE TESTS?

02:39PM 22   A.   YES, WE DID.

02:39PM 23   Q.   DESCRIBE THE SUBSTANCE OF WHAT WAS SAID?

02:39PM 24   A.   I DESCRIBED OUR RATIONALE FOR VOIDING THESE TESTS WHICH

02:39PM 25   RELIED ON SOME OF THE THINGS THAT WE DISCUSSED EARLIER, WHICH

02:39PM  1    WAS THE VALIDATION DATA AS WELL AS THE QC DATA THAT IS

02:39PM  2    REFERENCED HERE, AS WELL AS THE PATIENT TEST RESULTS THAT WERE

02:40PM  3    REFERENCED HERE, AND IT WAS -- I CAN'T REMEMBER ALL OF THE

02:40PM  4    CONSTITUENTS AT THAT MEETING, BUT I TRIED TO PRESENT IT IN A

02:40PM  5    MORE UNDERSTANDABLE FORMAT.

02:40PM  6         SO I DESCRIBED THE ISSUE IN TERMS OF THE VALIDATION DATA

02:40PM  7    IN DESCRIBING THAT THESE INSTRUMENTS APPARENTLY WERE NOT

02:40PM  8    PERFORMING FROM THE VERY BEGINNING.

02:40PM  9    Q.   AND DID MS. HOLMES MAKE ANY STATEMENTS TO YOU ABOUT

02:40PM 10    WHETHER WHAT YOU JUST SAID SHOULD BE COMMUNICATED TO CMS OR

02:40PM 11    WHETHER SOMETHING ELSE SHOULD BE COMMUNICATED?

02:40PM 12    A.   YES.  I RECALL HER OFFERING AN ALTERNATIVE EXPLANATION.

02:40PM 13    Q.   TELL US ABOUT THAT, PLEASE.

02:40PM 14    A.   I DON'T REMEMBER THE EXACT WORDS, BUT SHE POINTED TO ONE

02:40PM 15    OF HER DEPUTIES AND PROVIDED AN ALTERNATIVE EXPLANATION, WHICH

02:40PM 16    WAS ALONG THE LINES OF IT NOT BEING AN INSTRUMENT FAILURE

02:40PM 17    PER SE BUT RATHER THE, QUOTE, "A FAILURE OF THE QUALITY CONTROL

02:40PM 18    AND QUALITY ASSURANCE PROGRAM AROUND IT."

02:41PM 19    Q.   AND DID YOU THINK IT WAS A COMPLETE EXPLANATION TO

02:41PM 20    DESCRIBE IT AS JUST A QUALITY CONTROL ISSUE?

02:41PM 21    A.   NO, SIR.

02:41PM 22    Q.   HOW COME?

02:41PM 23    A.   BECAUSE THE VALIDATION DATA HAD NO BEARING ON THE QUALITY

02:41PM 24    CONTROL OR QUALITY ASSURANCE PROGRAM.

02:41PM 25    Q.   AFTER THE TESTS WERE VOIDED, DR. DAS, DID THERANOS EVER

02:41PM  1    RESUME TESTING ON THE 3.5 DEVICE IN THE CLIA?

02:41PM  2            THE COURT:  I'M SORRY.

02:41PM  3            THE WITNESS:  COULD YOU REPEAT THE QUESTION, PLEASE.

02:41PM  4    BY MR. LEACH:

02:41PM  5    Q.   AFTER THE VOIDING OF THE TESTS AT SOME POINT IN MARCH OR

02:41PM  6    APRIL OF 2016, DID THERANOS EVER RESUME TESTING ON THE 3.5 IN

02:41PM  7    THE CLIA LAB?

02:41PM  8    A.   NO, NOT TO MY KNOWLEDGE.

02:41PM  9    Q.   OKAY.  DID YOU EVER RECOMMEND THAT TESTING BE RESUMED IN

02:41PM  10   THE CLIA LAB?

02:41PM  11   A.   NO.

02:41PM  12   Q.   AND WHY WAS THAT?

02:41PM  13   A.   I FOUND THESE INSTRUMENTS TO BE UNSUITABLE FOR CLINICAL

02:41PM  14   USE.

02:42PM  15           MR. LEACH:  YOUR HONOR, I NOTE THE TIME.  THERE'S

02:42PM  16   SOME ADDITIONAL PORTIONS OF THE CMS REPORT THAT I WANT TO GO

02:42PM  17   THROUGH, BUT I THINK I MAY BENEFIT FROM A BREAK TO WORK THROUGH

02:42PM  18   SOME OF THE REDACTIONS, AND THEN I THINK I'LL TENDER THE

02:42PM  19   WITNESS.

02:42PM  20           THE COURT:  ALL RIGHT.  LET'S TAKE A BREAK NOW.

02:42PM  21   SHOULD WE TAKE 30 MINUTES?  IS 30 MINUTES GOOD?  LET'S DO THAT.

02:42PM  22   WE'LL TAKE A 30 MINUTE BREAK, LADIES AND GENTLEMEN, AND THEN

02:42PM  23   WE'LL FINISH OUR DAY.  THANK YOU.

02:42PM  24       YOU CAN STAND DOWN, SIR, AND COME BACK IN ABOUT

02:42PM  25   30 MINUTES.

02:42PM  1                    THE WITNESS:  THANK YOU, YOUR HONOR.

02:42PM  2                    THE COURT:  YOU'RE WELCOME.

02:42PM  3           (JURY OUT AT 2:42 P.M.)

02:43PM  4                    THE COURT:  PLEASE BE SEATED.  THANK YOU.

02:43PM  5           DR. DAS, YOU CAN STAND DOWN IF YOU WOULD LIKE.

02:43PM  6                    THE WITNESS:  THANK YOU.

02:43PM  7                    THE CLERK:  YOU CAN GO OUTSIDE OF THE COURTROOM

02:43PM  8      PROBABLY.

02:43PM  9                    THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT

02:43PM 10      THAT OUR JURY HAS LEFT FOR OUR BREAK, AND THE WITNESS HAS LEFT

02:43PM 11      THE COURTROOM.

02:43PM 12           MR. LEACH, YOU WANT A BREAK TO DO SOME REDACTIONS I THINK

02:43PM 13      YOU SAID?

02:43PM 14                    MR. LEACH:  YES, YOUR HONOR.  I THINK THERE ARE TWO

02:43PM 15      MORE PORTIONS OF THE REPORT THAT I'D LIKE TO ADMIT THROUGH THIS

02:43PM 16      WITNESS ON THE BASIS THAT WE DISCUSSED EARLIER.  I'D LIKE TO

02:43PM 17      WORK THROUGH THE REDACTIONS AND THEN I WILL BE COMPLETE.

02:43PM 18                    THE COURT:  ALL RIGHT.  TO THE EXTENT THAT YOU FEEL

02:43PM 19      COMFORTABLE, MAYBE YOU CAN SHARE THE REDACTIONS WITH

02:44PM 20      MR. WADE --

02:44PM 21                    MR. LEACH:  YES.

02:44PM 22                    THE COURT:  -- SO WE CAN TAKE CARE OF ANY OBJECTIONS

02:44PM 23      OR ANYTHING IF WE CAN, IF THAT'S POSSIBLE.

02:44PM 24           OKAY.  THANK YOU.

02:44PM 25                    MR. LEACH:  THANK YOU.

02:44PM 1          MR. WADE:  YOUR HONOR, IF I MIGHT BRIEFLY?

02:44PM 2          I DID JUST WANT TO RAISE AND REITERATE, THE POINT THAT WE

02:44PM 3   RAISED BEFORE ABOUT THE AIDING AND ABETTING LIABILITY AND WHICH

02:44PM 4   IS NOWHERE AT ISSUE IN THIS CASE, AND WE RAISED IT AND

02:44PM 5   SPECIFICALLY RAISED THE IDEA OF FOCUSSING ON THAT ISSUE.

02:44PM 6          IT'S MY UNDERSTANDING FROM THE COLLOQUY THIS MORNING THAT

02:44PM 7   MR. LEACH WAS NOT GOING TO SPECIFICALLY FOCUS ON THAT.

02:44PM 8          INSTEAD, IN THE EXAMINATION HE DID EXACTLY THAT.  HE WENT

02:44PM 9   EXACTLY TO THAT PROVISION.  HE FOCUSSED ON THAT PROVISION,

02:44PM 10  WHICH IS NOT AT ISSUE, BUT CREATES THE IMPLICATION WITH THIS

02:44PM 11  JURY THAT IT IS AT ISSUE.

02:44PM 12         AND SO WE WOULD ASK THAT THE CURATIVE INSTRUCTION -- THAT

02:44PM 13  THE INSTRUCTION THAT WE PROVIDE BE SUBMITTED AND AN INSTRUCTION

02:44PM 14  BE GIVEN THAT THAT PROVISION IS NOT RELEVANT TO THIS MATTER.

02:45PM 15         I UNDERSTAND THAT WE HAVE EXTENSIVELY QUESTIONED WITNESSES

02:45PM 16  ON REGULATORY RESPONSIBILITIES.  ALL OF THOSE REGULATORY

02:45PM 17  RESPONSIBILITIES ARE RELEVANT TO THE ACTIONS IN THE CASE.

02:45PM 18         FOCUSSING ON THAT PROVISION AND CREATING THE IMPRESSION

02:45PM 19  THAT THERE IS SOME LIABILITY ON THE PART OF THE OWNER FOR

02:45PM 20  AIDING AND ABETTING A CLIA VIOLATION WHEN THAT IS NOT AN ISSUE

02:45PM 21  IN THIS CASE IS INCREDIBLY PREJUDICIAL.  SO WE --

02:45PM 22         THE COURT:  I APPRECIATE THAT, AND WE DID DISCUSS

02:45PM 23  THIS.  THIS DOCUMENT WAS PUT IN EVIDENCE, I THINK BY THE

02:45PM 24  DEFENSE, AND AS I INDICATED, IT'S FAIR GAME TO EXAMINE ON WHAT

02:45PM 25  IT IS.

02:45PM 1    I THINK WHAT WE TALKED ABOUT THIS MORNING WAS THE

02:45PM 2    GOVERNMENT WOULD NOT BE PERMITTED TO ARGUE TO THE JURY IN ANY

02:45PM 3    WAY THAT THIS IS AN AIDING AND ABETTING CASE BASED ON A

02:45PM 4    REGULATORY SCHEME.

02:45PM 5        MR. LEACH?

02:45PM 6        MR. LEACH:  THAT IS CORRECT, YOUR HONOR, AND I DID

02:45PM 7    NOT ARGUE THAT.  I DREW ATTENTION TO THE PROVISION.  BUT I IN

02:46PM 8    NO WAY SUGGESTED THAT MS. HOLMES AIDED AND ABETTED A CLIA

02:46PM 9    VIOLATION.

02:46PM 10   I WAS BRINGING SOMETHING TO THE JURY'S ATTENTION THAT IS

02:46PM 11   IN EVIDENCE THAT IS A POSSIBLE CONSEQUENCE AFFECTING OWNERS AND

02:46PM 12   OPERATORS OF ALL LABORATORIES, AND I DON'T THINK THERE WAS

02:46PM 13   ANYTHING INAPPROPRIATE WITH THE GOVERNMENT'S EXAMINATION ON

02:46PM 14   THAT POINT.

02:46PM 15       THE COURT:  I THINK THAT -- AND I UNDERSTAND YOUR

02:46PM 16   CONCERN, THE DEFENSE CONCERN ABOUT THAT.

02:46PM 17   MY SENSE IS I WILL -- AND YOU'LL DRAFT IF YOU HAVEN'T

02:46PM 18   ALREADY.  YOU SUBMITTED SOMETHING, BUT I DON'T THINK THAT'S

02:46PM 19   APPROPRIATE TO GIVE THAT NOW.  I THINK IT'S APPROPRIATE TO GIVE

02:46PM 20   IT WITH FINAL INSTRUCTIONS.

02:46PM 21   I THINK IF I GIVE AN INSTRUCTION NOW, IT WILL ONLY

02:46PM 22   HIGHLIGHT IT.

02:46PM 23       MR. WADE:  I'M OKAY WITH HIGHLIGHTING THIS ISSUE,

02:46PM 24   YOUR HONOR, BECAUSE I THINK IT CREATES -- THE IMPRESSION IS

02:46PM 25   RIPE IN THE AIR.

02:46PM  1      I UNDERSTAND THERE'S EVIDENCE IN THE CASE, BUT THERE'S

02:46PM  2   QUESTIONING OVER OBJECTION ABOUT A PROVISION THAT IS NOT

02:46PM  3   RELEVANT IN THE CASE AND FOCUSSING -- THERE'S NO EVIDENTIARY

02:46PM  4   VALUE IN DOING THAT, AND THERE'S A HIGH DEGREE OF PREJUDICE.

02:47PM  5   SO WE WOULD AGAIN REQUEST THAT THE INSTRUCTION BE GIVEN.

02:47PM  6      WE THINK IT'S BEEN PUT BEFORE THE JURY IN A WAY THAT WAS

02:47PM  7   INCONSISTENT WITH WHAT COUNSEL HAD REPRESENTED WOULD BE DONE,

02:47PM  8   AND WE THINK IT'S INCREDIBLY PREJUDICIAL.  SO WE THINK THE ONLY

02:47PM  9   REMEDY FOR US AT THIS POINT IS TO GIVE THE INSTRUCTION NOW TO

02:47PM  10  MAKE SURE WE AVOID THAT CONFUSION.

02:47PM  11      THE COURT:  WELL, THANK YOU FOR THAT.

02:47PM  12      I DID -- PART OF OUR COLLOQUY THIS MORNING WAS THAT I

02:47PM  13  RECOGNIZED THE CROSS-EXAMINATION OF THE TWO PREVIOUS LAB

02:47PM  14  DIRECTORS AND THERE WAS EXTENSIVE AND MULTIPLE QUESTIONS POSED

02:47PM  15  TO THOSE DIRECTORS REGARDING YOU'RE RESPONSIBLE, YOU'RE

02:47PM  16  RESPONSIBLE.

02:47PM  17      AND THAT'S APPROPRIATE QUESTIONS.  AND I THINK IT'S

02:47PM  18  LEGALLY CORRECT, THEY WERE RESPONSIBLE.

02:47PM  19      AS I OBSERVED, SHOWING WHAT WAS ALREADY IN EVIDENCE AND

02:47PM  20  TALKING ABOUT THAT MIGHT EQUATE TO A BALANCING OF, WELL, THERE

02:47PM  21  ARE OTHER REGULATIONS ABOUT THAT.

02:47PM  22      BUT I AGREE WITH YOU, AND I THINK MR. LEACH AGREES WITH

02:48PM  23  YOU AND ME, THAT THIS IS NOT GOING TO BE ARGUED AT ALL AS ANY

02:48PM  24  EVIDENCE FOR CONVICTION IN THIS CASE.

02:48PM  25      I DON'T THINK THAT -- AS I SAY, I DON'T THINK A JURY

02:48PM  1    INSTRUCTION RIGHT NOW WILL IN ANY WAY ASSUAGE THE CONCERNS THAT

02:48PM  2    YOU HAVE, BUT I THINK IT WOULD CAUSE MORE DAMAGE TO DRAW

02:48PM  3    ATTENTION TO THAT.  THAT'S JUST MY OPINION NOW.  I JUST THINK

02:48PM  4    THAT DRAWING ATTENTION TO IT NOW WILL PERHAPS CAUSE THEM TO

02:48PM  5    THINK ABOUT IT IN AN UNTOWARD MANNER.

02:48PM  6          MR. LEACH, DO YOU WANT TO BE HEARD ON THIS?

02:48PM  7             MR. LEACH:  I DO BRIEFLY, YOUR HONOR.

02:48PM  8       I DON'T MEAN TO PROLONG THIS, BUT THE FACT THAT OWNERS AND

02:48PM  9    OPERATORS FACE REVOCATION OF THEIR CLIA CERTIFICATION IF AN

02:48PM  10   EMPLOYEE OR ANYBODY WITHIN THE LAB VIOLATES OR AIDS AND ABETS A

02:48PM  11   CLIA VIOLATION IS A MOTIVE TO MAINTAIN A GOOD LAB, AND ALSO

02:49PM  12   REALLY SCARY IF YOU'RE BEING TOLD THAT YOU'RE NOT MAINTAINING A

02:49PM  13   GOOD LAB.

02:49PM  14        SO IT'S THE EXISTENCE OF THE REGULATION THAT IS RELEVANT.

02:49PM  15        AND IT'S ALSO RELEVANT TO CONFRONT THE FALSE SUGGESTION

02:49PM  16   THAT -- AND I DON'T CAST ASPERSION ON MY COLLEAGUE WITH THAT,

02:49PM  17   BUT THERE IS AN IMPRESSION, THROUGH THE EXAMINATION OF

02:49PM  18   DR. ROSENDORFF, THAT ONLY THE LAB DIRECTOR HAS ANY

02:49PM  19   RESPONSIBILITY.

02:49PM  20        SO WE ARE NOT ARGUING THAT MS. HOLMES AIDED AND ABETTED A

02:49PM  21   VIOLATION.

02:49PM  22        BUT WE ARE SAYING THAT THIS REGULATION EXISTS AND IT'S

02:49PM  23   SOMETHING THAT OWNERS AND OPERATORS IN GENERAL ARE AFFECTED AND

02:49PM  24   MOTIVATED BY, AND I THINK THAT'S FAIR.

02:49PM  25             THE COURT:  I THINK THE WAY IT WAS PRESENTED,

02:49PM   1    MR. WADE, WAS THAT THE LABORATORY COULD LOSE THEIR LICENSE, AND

02:49PM   2    THAT'S SOMETHING THAT COULD HAPPEN.

02:49PM   3        IT, IT DIDN'T TALK ABOUT CRIMINAL LIABILITY.  IT'S NOT A

02:49PM   4    CRIMINAL STATUTE.  IT'S A CIVIL STATUTE THAT HAS OTHER

02:49PM   5    RAMIFICATIONS, AND I CONTINUE TO BE COGNIZANT OF THE FACT THAT

02:50PM   6    EVIDENCE OF A VIOLATION OF A CIVIL STATUTE CANNOT AND WILL NOT

02:50PM   7    BE PERMITTED TO BE ARGUED FOR A CONVICTION OF A CRIMINAL

02:50PM   8    STATUTE.  THAT'S INAPPROPRIATE, AND WE ALL KNOW THAT.

02:50PM   9        THE STATUTE THAT WAS READ TALKS ABOUT LICENSE, THE LOSS OF

02:50PM  10    A LICENSE, AND THAT -- I THINK THAT'S A DIFFERENT, A DIFFERENT

02:50PM  11    FACTOR.

02:50PM  12                MR. WADE:  NO.  TO BE SURE, IT IS, YOUR HONOR.  MY

02:50PM  13    ONLY POINT IS THAT THERE'S ABSOLUTELY NO EVIDENCE OR ALLEGATION

02:50PM  14    IN THIS CASE THAT MY CLIENT AIDED AND ABETTED A CLIA VIOLATION.

02:50PM  15        SO BY PUTTING THAT UP THERE, THEY'RE CREATING THE

02:50PM  16    IMPRESSION THAT MY CLIENT DID.  THAT'S WHY I SOUGHT TO PREVENT

02:50PM  17    THE ADMISSION OF IT.

02:50PM  18        IT'S DIFFERENT FROM QUESTIONS TO A LABORATORY DIRECTOR

02:50PM  19    ABOUT DO YOU HAVE THIS RESPONSIBILITY AND DO YOU HAVE THAT

02:50PM  20    RESPONSIBILITY WITHIN THE LAB?  DO THE REGULATIONS SAY YOU HAVE

02:50PM  21    ULTIMATE RESPONSIBILITY?

02:50PM  22        BY THE WAY, THE ANSWER TO ALMOST ALL OF THOSE QUESTIONS

02:50PM  23    WAS YES, AND IT WAS RELEVANT BECAUSE THOSE ARE THE ONES WHO ARE

02:50PM  24    DISPATCHING THE OBLIGATIONS WITHIN THE LABORATORY.

02:51PM  25        OUR -- MY CLIENT DOESN'T HAVE THE SAME RESPONSIBILITY.  IF

02:51PM  1    ANYTHING, SHE'S EFFECTIVELY STRICTLY LIABLE WITHIN THE

02:51PM  2    REGULATORY SCHEME FOR THE ACTIONS OF OTHERS.

02:51PM  3         SO THEY'RE NOT REALLY ANALOGOUS IN THE SENSE THAT SHE

02:51PM  4    DOESN'T HAVE THAT -- HER RESPONSIBILITY IS TO HIRE A LAB

02:51PM  5    DIRECTOR -- OR THE COMPANY'S RESPONSIBILITY IS TO HIRE A LAB

02:51PM  6    DIRECTOR, AND THEN IT'S THE LAB DIRECTOR'S RESPONSIBILITY TO

02:51PM  7    DISPENSE THOSE OBLIGATIONS.

02:51PM  8         SO I THINK IT'S A FALSE COMPARISON.  AND TO CREATE THE

02:51PM  9    IMPRESSION WITH THIS JURY THAT THERE'S SOME AIDING AND ABETTING

02:51PM 10    I THINK IS INCREDIBLY PREJUDICIAL.

02:51PM 11             THE COURT:  I UNDERSTAND THAT.

02:51PM 12         AND I RECALL ONE OF THE LAST QUESTIONS THAT YOU ASKED

02:51PM 13    DR. ROSENDORFF WAS ABOUT HIS ISSUES SUBSEQUENT TO EMPLOYMENT AT

02:51PM 14    THE COMPANY AND THE FACT THAT HE WAS -- POTENTIALLY ONE OF THE

02:51PM 15    RAMIFICATIONS OF THAT CONDUCT COULD BE THE LOSS OF A LICENSE.

02:51PM 16    I THINK THAT'S WHAT YOU ASKED HIM AT THE LAST PART, RIGHT.

02:52PM 17         AND SO --

02:52PM 18             MR. WADE:  THAT WENT TO BIAS, YOUR HONOR.

02:52PM 19             THE COURT:  RIGHT.  RIGHT.

02:52PM 20         BUT THE LOSS OF A LICENSE IS A BIG THING FOR A LAB

02:52PM 21    DIRECTOR.  I THINK WE CAN ALL AGREE WITH THAT.  THIS IS THE

02:52PM 22    REGULATION, ONE OF THE REGULATIONS THAT POINTS TO THAT.

02:52PM 23         BUT I TAKE YOUR POINT.  I DON'T THINK IT'S NECESSARY TO

02:52PM 24    GIVE THE INSTRUCTION NOW.

02:52PM 25         MY SENSE IS THAT WE STILL HAVE A LOT OF EVIDENCE TO GO.  I

02:52PM 1     KNOW THE JURY IS TAKING NOTES.  THEY'RE BEING ATTENTIVE OF

02:52PM 2     THIS.

02:52PM 3          BUT THIS IS NOT GOING TO BE ARGUED IN ANY WAY, BE

02:52PM 4     PERMITTED TO BE ARGUED WHY THE GOVERNMENT FEELS IN THEIR

02:52PM 5     CLOSING ARGUMENT THAT THE JURY SHOULD REACH A CONVICTION AT

02:52PM 6     ALL.

02:52PM 7          AND IF YOU WANT TO PREPARE AN INSTRUCTION FOR FINAL

02:52PM 8     INSTRUCTIONS, I'LL LOOK AT IT.

02:52PM 9          I INTEND TO GIVE ONE THAT IS PROPHYLACTIC TO THAT EXTENT,

02:52PM 10    MR. LEACH.  AND YOUR TEAM CAN PUT SOMETHING TOGETHER, TOO, IF

02:52PM 11    YOU WOULD LIKE, BUT THERE WILL BE AN INSTRUCTION THAT TALKS

02:52PM 12    ABOUT THIS, ASSUMING YOU WANT IT TO BE GIVEN AT THAT POINT.

02:52PM 13         SO WE'LL TALK ABOUT IT THEN.

02:53PM 14              MR. WADE:  OKAY.  THANK YOU, YOUR HONOR.

02:53PM 15              MR. LEACH:  THANK YOU, YOUR HONOR.

02:53PM 16              THE COURT:  ALL RIGHT.  THANK YOU.

02:53PM 17         (RECESS FROM 2:53 P.M. UNTIL 3:22 P.M.)

03:22PM 18         (JURY IN AT 3:22 P.M.)

03:22PM 19              THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD.

03:22PM 20    ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

03:22PM 21    MS. HOLMES IS PRESENT.

03:22PM 22         DR. DAS IS ON THE STAND.

03:22PM 23         MR. LEACH?

03:22PM 24              MR. LEACH:  THANK YOU, YOUR HONOR.

03:22PM 25    Q.   GOOD AFTERNOON, DR. DAS.

03:22PM   1        I'D LIKE TO GO BACK TO EXHIBIT 4621, AND I THINK WE'RE NOW

03:22PM   2    PREPARED TO DISPLAY THE PORTIONS OF 51, 52, 53, AND 54 THAT

03:22PM   3    WERE ADMITTED BUT WE WERE UNABLE TO REDACT IN THE MOMENT.

03:23PM   4             THE COURT:  OH MY GOSH.  DOES IT HAVE TO WARM UP?

03:23PM   5             MR. LEACH:  IT WAS TIRED.

03:23PM   6             THE COURT:  I'LL SPARE COMMENT.  IT HAS TO WARM UP,

03:23PM   7    DOES IT?

03:23PM   8        AH.  THERE WE GO.

03:23PM   9             MR. LEACH:  I BELIEVE WE'RE ONLY SHOWING THE BOTTOM

03:23PM   10   PORTION, THE D TAG 5791 AT THE BOTTOM OF THE PAGE.

03:24PM   11            THE COURT:  AND COULD YOU IDENTIFY JUST FOR THE

03:24PM   12   RECORD THIS PAGE, PLEASE, MR. LEACH?

03:24PM   13            MR. LEACH:  I WILL, YOUR HONOR.  YES, YOUR HONOR.

03:24PM   14        WE'RE LOOKING AT PAGE 51 OF EXHIBIT 4621.  DOWN AT THE

03:24PM   15   BOTTOM OF THE PAGE TO THE LEFT THERE'S AN I.D. PREFIX TAG

03:24PM   16   D5791.

03:24PM   17   Q.   DO YOU SEE THAT, DR. DAS?

03:24PM   18   A.   I DO.

03:24PM   19   Q.   AND JUST TO ORIENT US, TO THE RIGHT IS THERE A CODE

03:24PM   20   SECTION WITHIN CLIA?

03:24PM   21   A.   YES.

03:24PM   22   Q.   THAT'S 493.1289.  THAT'S ONE OF THE REGULATIONS RELATING

03:24PM   23   TO OPERATION OF THE CLIA LAB?

03:24PM   24   A.   YES.

03:24PM   25   Q.   AND THEN BENEATH THAT IN PARAGRAPH A IT SAYS, "THE

03:24PM   1      LABORATORY MUST ESTABLISH AND FOLLOW WRITTEN POLICIES AND

03:24PM   2      PROCEDURES FOR AN ONGOING MECHANISM TO MONITOR, ASSESS, AND

03:25PM   3      WHEN INDICATED, CORRECT PROBLEMS IDENTIFIED IN THE ANALYTIC

03:25PM   4      SYSTEMS SPECIFIED."

03:25PM   5           DO YOU SEE THAT LANGUAGE?

03:25PM   6      A.   YES.

03:25PM   7      Q.   AND IS THAT ESSENTIALLY SPELLING OUT THE CLIA REQUIREMENT?

03:25PM   8      A.   YES.

03:25PM   9      Q.   OKAY.  AND IF WE CAN GO TO PAGE 52, MS. HOLLIMAN, I THINK

03:25PM  10      ONLY THE TOP PORTION GOING -- THERE WE GO.

03:25PM  11           IF WE COULD HIGHLIGHT THE TOP PORTION OF THIS PAGE.

03:25PM  12           DR. DAS, DO YOU SEE THE REGULATORY REQUIREMENT CONTINUES

03:25PM  13      IN COLUMN 2 BENEATH THE WORDS "CONTINUED FROM PAGE 47"?

03:25PM  14      A.   YES.

03:25PM  15      Q.   IS THAT HOW YOU READ THIS DOCUMENT?

03:25PM  16      A.   YES.

03:25PM  17      Q.   AND THEN IT SAYS, "THIS STANDARD IS NOT MET AS EVIDENCED

03:26PM  18      BY."

03:26PM  19           DO YOU SEE THAT LANGUAGE?

03:26PM  20      A.   YES.

03:26PM  21      Q.   AND IS STANDARD A TERM OF ART IN THE CLIA REGULATIONS?

03:26PM  22      A.   YES.

03:26PM  23      Q.   AND HOW DOES A STANDARD COMPARE TO A CONDITION?

03:26PM  24      A.   I BELIEVE IT IS LESS SEVERE.

03:26PM  25      Q.   THEN DOES THE FORMAT OF THE 2567 LAY OUT PARTICULAR

03:26PM 1    FINDINGS BY CMS AS TO HOW, IN CMS'S VIEW, THAT STANDARD WAS NOT

03:26PM 2    MET?

03:26PM 3    A.   YES.

03:26PM 4    Q.   AND THAT'S WHAT YOU'RE TRYING TO RESPOND TO IN THE COURSE

03:26PM 5    OF YOUR WORK?

03:26PM 6    A.   YES.

03:26PM 7    Q.   IF WE CAN GO TO PAGE 53, DO YOU SEE THE FINDING AT THE

03:26PM 8    BOTTOM, "BASED ON REVIEW OF QUALITY CONTROL DATA AND MONTHLY QC

03:27PM 9    REPORTS, THE LABORATORY FAILED TO HAVE A QUALITY ASSESSMENT

03:27PM 10   PROCEDURE TO IDENTIFY AND CORRECT PROBLEMS WITH QC VALUES FOR

03:27PM 11   THE THERANOS PROPRIETARY SYSTEM (TPS) WHEN PRECISION DID NOT

03:27PM 12   MEET THE LABORATORY'S REQUIREMENT FOR PRECISION."

03:27PM 13        DO YOU SEE THAT?

03:27PM 14   A.   YES.

03:27PM 15   Q.   AND IS PRECISION A TERM THAT YOU'RE FAMILIAR WITH IN YOUR

03:27PM 16   WORK AS THE LAB DIRECTOR?

03:27PM 17   A.   YES.

03:27PM 18   Q.   AND WHAT IS PRECISION?

03:27PM 19   A.   IT'S A MEASURE OF THE SPREAD OF DATA.

03:27PM 20   Q.   AND IN THE COURSE OF RESPONDING TO THE 2567, DID YOU

03:27PM 21   REVIEW A BROAD RANGE OF PRECISION DATA?

03:27PM 22   A.   YES.

03:27PM 23   Q.   LET'S GO TO PAGE 54, AND IF WE COULD ZOOM IN,

03:27PM 24   MS. HOLLIMAN, ON THE TAGS DOWN TO D.

03:28PM 25        DO YOU SEE IN B, DR. DAS, WHERE IT SAYS, "QC RESULTS WERE

03:28PM   1    REVIEWED FROM JUNE 2014 THROUGH NOVEMBER 2014 AND JANUARY

03:28PM   2    THROUGH FEBRUARY 2015 FOR VITAMIN B12, VITAMIN D, AND SEX

03:28PM   3    HORMONE BINDING GLOBULIN WHICH WERE USED FOR PATIENT TESTING ON

03:28PM   4    THE TPS DEVICES."

03:28PM   5         DO YOU SEE THAT LANGUAGE?

03:28PM   6    A.   YES.

03:28PM   7    Q.   AND IS THIS ALSO DATA THAT YOU REVIEWED IN THE COURSE OF

03:28PM   8    YOUR WORK?

03:28PM   9    A.   YES.

03:28PM  10    Q.   IN C IT SAYS, "VITAMIN B12 QC LEVEL 1 AND LEVEL 3 ON

03:28PM  11    DEVICE E 110 REVEALED THE FOLLOWING PERCENT CV:  34.3 PERCENT

03:28PM  12    AND 48.5 PERCENT RESPECTIVELY FROM JANUARY 5TH, '15 THROUGH

03:29PM  13    1-30-15."

03:29PM  14         DO YOU SEE THAT LANGUAGE?

03:29PM  15    A.   YES.

03:29PM  16    Q.   AND THE DEVICE E 110, DID YOU UNDERSTAND THAT TO REFER TO

03:29PM  17    A PARTICULAR EDISON DEVICE WITHIN THE LAB?  DID YOU UNDERSTAND

03:29PM  18    THAT TO REFER TO A DEVICE WITHIN THE LAB?

03:29PM  19    A.   YES.

03:29PM  20    Q.   AND THE QC LEVEL 1 AND LEVEL 3, WHAT DID YOU UNDERSTAND

03:29PM  21    THOSE TO REFER TO?

03:29PM  22    A.   THOSE ARE DIFFERENT LEVELS OF THE RESPECTIVE TEST QC, IN

03:29PM  23    THIS CASE VITAMIN B12.

03:29PM  24    Q.   AND CAN YOU -- AND WHAT IS THE PURPOSE OF DIFFERENT

03:29PM  25    LEVELS?

03:29PM 1     A.   A LABORATORY IS REQUIRED TO RUN MULTIPLE LEVELS FOR EVERY

03:29PM 2     QUANTITATIVE TEST, SO --

03:29PM 3     Q.   SO A HIGH LEVEL, A LOW LEVEL, SOMETHING IN BETWEEN?

03:29PM 4     A.   CORRECT.

03:29PM 5     Q.   OKAY.  AND THIS SAYS THE QC LEVEL 1 AND 3 WERE 34.3 AND

03:29PM 6     48.5 PERCENT.

03:29PM 7          WHAT WAS -- WHAT DID YOU UNDERSTAND THAT TO MEAN?

03:30PM 8     A.   IT APPEARS THEY'RE REFERENCING THOSE PARTICULAR LEVELS FOR

03:30PM 9     THOSE QC.

03:30PM 10    Q.   AND ARE THESE DESIRABLE LEVELS OF QC OR UNDESIRABLE LEVELS

03:30PM 11    OF QC?

03:30PM 12    A.   THOSE WOULD BE UNDESIRABLE.

03:30PM 13    Q.   AND IS THIS SOMETHING THAT YOU LOOKED INTO AS THE

03:30PM 14    LABORATORY DIRECTOR?

03:30PM 15    A.   YES.

03:30PM 16    Q.   AND IF WE COULD ZOOM IN.

03:30PM 17         IN D THERE'S SOME REFERENCE TO VITAMIN B12, QC1, AND QC3

03:30PM 18    ON DEVICE E 1085.

03:30PM 19         IS THIS SIMILAR INFORMATION RELATING TO A DIFFERENT EDISON

03:30PM 20    DEVICE THAT WAS BEING USED IN THE CLIA LAB?

03:30PM 21    A.   YES.

03:30PM 22    Q.   AND IS THAT SOMETHING THAT YOU INVESTIGATED?

03:30PM 23    A.   YES.

03:30PM 24    Q.   IF WE CAN ZOOM OUT, MS. HOLLIMAN, AND LOOK AT E THROUGH L,

03:30PM 25    OR E THROUGH LITTLE I.

03:31PM   1        DR. DAS, DID YOU UNDERSTAND THESE TO BE ADDITIONAL

03:31PM   2   EXAMPLES OF HIGH CV IN QC TESTING ON DEVICES WITHIN THE CLIA

03:31PM   3   LAB?

03:31PM   4   A.   YES.

03:31PM   5   Q.   AND SIMILAR TO WHAT WE LOOKED AT BEFORE, ARE THESE ISSUES

03:31PM   6   THAT YOU INVESTIGATED AS PART OF YOUR WORK?

03:31PM   7   A.   YES.

03:31PM   8   Q.   AND AT ANY POINT IN TIME, DID YOU DISAGREE WITH WHAT CMS

03:31PM   9   WAS FINDING HERE?

03:31PM  10   A.   NO.

03:31PM  11   Q.   LET ME DRAW YOUR ATTENTION TO --

03:31PM  12        YOU CAN TAKE THAT DOWN, MS. HOLLIMAN.

03:31PM  13        LET ME DRAW YOUR ATTENTION, PLEASE, TO PAGE 40 OF

03:31PM  14   EXHIBIT 4621.

03:32PM  15        DO YOU HAVE THAT IN FRONT OF YOU, SIR?

03:32PM  16   A.   I DO.

03:32PM  17   Q.   OKAY.  AND DO YOU SEE A D TAG, D5481?

03:32PM  18   A.   YES.

03:32PM  19   Q.   AND DOES THIS D TAG RELATE TO CONTROL PROCEDURES?

03:32PM  20   A.   YES.

03:32PM  21   Q.   INCLUDING CONTROL PROCEDURES FOR EDISON DEVICES AND ASSAY

03:32PM  22   PT INR?

03:32PM  23   A.   YES.

03:32PM  24             MR. LEACH:  YOUR HONOR, I OFFER -- AND I'VE PROVIDED

03:32PM  25   THESE REDACTIONS TO MR. WADE, BUT AT THIS POINT I'M OFFERING

03:32PM 1    EVERYTHING ON PAGE 40 FROM THE D TAG 5481 DOWN THROUGH PAGE 47,

03:33PM 2    WITH A REDACTION ON PAGE 45 BEGINNING WITH PARAGRAPH 1 IN THE

03:33PM 3    SECOND COLUMN FROM THE LEFT, AND WITH ANOTHER REDACTION ON

03:33PM 4    PAGE 46 WITH THE PARAGRAPH FOR B.

03:33PM 5        AND I'VE PROVIDED THESE TO THE DEFENSE.

03:33PM 6            MR. WADE:  YOUR HONOR, I'M NOT SURE THE FOUNDATION

03:33PM 7    HAS BEEN LAID WITH RESPECT TO THESE.

03:33PM 8            THE COURT:  CAN YOU LAY A FOUNDATION, MR. LEACH?

03:33PM 9            MR. LEACH:  YES.

03:33PM 10           THE COURT:  EXCUSE ME.  IS THAT YOUR -- OTHER THAN

03:33PM 11   THAT, THAT'S YOUR ONLY OBJECTION, WHICH IS TO SAY THAT YOU

03:33PM 12   AGREE WITH THE REDACTIONS?

03:33PM 13           MR. WADE:  I UNDERSTAND THE REDACTIONS.  I MAY HAVE

03:33PM 14   AN OBJECTION.

03:33PM 15       BUT I'M JUST TRYING TO UNDERSTAND THE FOUNDATION AND THE

03:34PM 16   PURPOSE FOR WHICH THEY'RE OFFERED.

03:34PM 17           THE COURT:  THANK YOU.

03:34PM 18           MR. LEACH:  I'LL LAY MORE FOUNDATION, YOUR HONOR.

03:34PM 19   Q.   DR. DAS, IF YOU COULD JUST LOOK BRIEFLY AT PARAGRAPH 1 ON

03:34PM 20   PAGE 40, IS THERE A REFERENCE TO QC FOR AN ASSAY CALLED PT INR?

03:34PM 21   A.   YES.

03:34PM 22   Q.   AND WAS PT INR ONE OF THE TESTS THAT THERANOS VOIDED?

03:34PM 23   A.   YES.

03:34PM 24   Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT THE

03:34PM 25   PT INR ASSAY AND HOW IT WAS RUN AT THERANOS?

03:34PM 1    A.   YES.

03:34PM 2    Q.   IF I DRAW YOUR ATTENTION TO PAGE 41, DO YOU SEE TOWARDS

03:34PM 3    THE BOTTOM IN PARAGRAPH 2 THERE BEGINS A DISCUSSION RELATING TO

03:35PM 4    QC AND VARIOUS ASSAYS ON THE EDISON DEVICE?

03:35PM 5    A.   YES.

03:35PM 6    Q.   AND DOES THAT CONTINUE TO PAGE 45?

03:35PM 7    A.   YES.

03:35PM 8    Q.   AND DID YOU DISCUSS WITH MS. HOLMES QC ISSUES RELATED TO

03:35PM 9    THE EDISON DEVICE DURING THE TIME PERIOD BEFORE YOU BECAME THE

03:35PM 10   LAB DIRECTOR?

03:35PM 11   A.   YES.

03:35PM 12   Q.   AND DID THERANOS ULTIMATELY VOID ALL OF THE TESTS ON THE

03:35PM 13   EDISON DEVICE?

03:35PM 14   A.   YES.

03:35PM 15   Q.   AND IF YOU CONTINUE ON PAGE 45, THERE'S A D TAG, D575

03:35PM 16   COMPARISON OF TEST RESULTS.

03:36PM 17        DO YOU SEE THAT?

03:36PM 18   A.   MR. LEACH, DO YOU MEAN D5775?

03:36PM 19   Q.   I DO.  THANK YOU.

03:36PM 20        AND DO YOU SEE THAT DISCUSSION CONTINUES ON TO PAGE 46 AND

03:36PM 21   47 WITH PARTICULAR REFERENCE TO THE EDISON DEVICE?

03:36PM 22   A.   YES.

03:36PM 23   Q.   AND DID YOU HAVE DISCUSSIONS WITH MS. HOLMES ABOUT STUDIES

03:36PM 24   THAT THERANOS HAD PREPARED RELATING TO THE EDISON DEVICE?

03:36PM 25   A.   YES.

03:36PM   1          MR. LEACH:  YOUR HONOR, I OFFER THESE PAGES AS I'VE

03:36PM   2    DESCRIBED AS EVIDENCE OF STATE OF MIND.

03:36PM   3          MR. WADE:  SAME OBJECTIONS AS PREVIOUSLY NOTED.

03:36PM   4      AND I TAKE IT STATE OF MIND AS OF THIS TIME PERIOD.

03:36PM   5          THE COURT:  YES.

03:36PM   6          MR. WADE:  YEAH.

03:36PM   7          THE COURT:  IS THAT RIGHT, MR. LEACH?

03:36PM   8          MR. LEACH:  YES.

03:36PM   9          THE COURT:  ALL RIGHT.  THANK YOU.  THE OBJECTION IS

03:36PM  10    OVERRULED.

03:37PM  11      LADIES AND GENTLEMEN, THESE WILL BE ADMITTED NOT FOR THE

03:37PM  12    TRUTH OF THE MATTER ASSERTED IN THE DOCUMENTS, BUT RATHER TO

03:37PM  13    SHOW EVIDENCE OF THE STATE OF MIND AS TO INTENT, KNOWLEDGE.

03:37PM  14      IS THAT CORRECT, MR. LEACH, INTENT AND KNOWLEDGE --

03:37PM  15          MR. LEACH:  YES, YOUR HONOR.

03:37PM  16          THE COURT:  -- AS TO MS. HOLMES.  IT'S OFFERED FOR

03:37PM  17    THAT PURPOSE ONLY.

03:37PM  18      (GOVERNMENT'S EXHIBIT 4621, AS REDACTED, WAS RECEIVED IN

03:37PM  19    EVIDENCE.)

03:37PM  20    BY MR. LEACH:

03:37PM  21    Q.  AND MS. HOLLIMAN, IF WE CAN NOW PLEASE DISPLAY PAGE 40 AS

03:37PM  22    REDACTED.

03:37PM  23      DR. DAS, DO YOU SEE IN THE LEFT THERE'S THE NUMBER D5481?

03:37PM  24    A.  YES.

03:37PM  25    Q.  IS THAT A REFERENCE TO THE D TAG FOR THIS IDENTIFIED

03:38PM   1    DEFICIENCY?

03:38PM   2    A.   YES.

03:38PM   3    Q.   OKAY.  AND IS THERE A RESTATEMENT OF THE REGULATORY

03:38PM   4    PROVISION IN THE COLUMN TO THE RIGHT BRIEFLY IN F AND G?

03:38PM   5    A.   YES.

03:38PM   6    Q.   OKAY.  AND THEN IT SAYS, "THIS STANDARD IS NOT MET AS

03:38PM   7    EVIDENCED BY."

03:38PM   8         DO YOU SEE THAT LANGUAGE?

03:38PM   9    A.   YES.

03:38PM  10    Q.   AND THEN DOES CMS LIST THE PARTICULAR FINDINGS AND

03:38PM  11    EVIDENCE THAT RELATE TO THIS PARTICULAR STANDARD?

03:38PM  12    A.   YES.

03:38PM  13    Q.   OKAY.  AND THIS RELATES TO QC FOR SOMETHING CALLED PT INR.

03:38PM  14         WHAT IS PT INR?

03:38PM  15    A.   IT IS A BLOOD CLOTTING TEST.

03:38PM  16    Q.   AND DID -- IN RESPONSE TO THE 2567, DID YOU ULTIMATELY

03:38PM  17    DETERMINE TO -- THAT THERE WERE ERRORS IN THE PT INR TEST?

03:38PM  18    A.   YES.

03:38PM  19    Q.   AND DESCRIBE THOSE FOR US, PLEASE.

03:39PM  20    A.   YES.  THERE WERE ACTUALLY A VARIETY OF FINDINGS.  ONE OF

03:39PM  21    THEM WAS ERRORS IN THE CALCULATION OF THE VALUES THAT HAS TO DO

03:39PM  22    WITH EACH LOT THAT IS USED FOR THIS ASSAY ON THE SIEMENS

03:39PM  23    INSTRUMENT.

03:39PM  24         THERE WERE ALSO DEVIATIONS IN THE PATIENT TEST RESULT

03:39PM  25    DISTRIBUTIONS, AS WELL AS QUALITY CONTROL ISSUES.

03:39PM  1    Q.   AND DID --

03:39PM  2              MR. WADE:  YOUR HONOR, PARDON ME.  JUST MOVE TO

03:39PM  3    STRIKE ON 702 GROUNDS.

03:39PM  4              THE COURT:  I'M GOING TO SUSTAIN THE OBJECTION.

03:39PM  5         AND THAT LAST PORTION IS STRICKEN, LADIES AND GENTLEMEN.

03:39PM  6    BY MR. LEACH:

03:39PM  7    Q.   DID YOU -- IN COMMUNICATING TO CMS, DID YOU DESCRIBE THE

03:39PM  8    BASES -- DID YOU TELL CMS THAT THERANOS WAS VOIDING PT INR

03:39PM  9    TESTS?

03:39PM  10   A.   YES.

03:39PM  11   Q.   AND DID YOU EXPLAIN TO THEM WHY THERANOS WAS DOING THAT?

03:39PM  12   A.   YES.

03:39PM  13   Q.   WHAT DID YOU TELL CMS?

03:40PM  14   A.   I DO NOT RECALL THE EXACT LANGUAGE, BUT IT REFLECTED THE

03:40PM  15   INACCURATE CALCULATIONS, AS WELL AS QUALITY CONTROL ISSUES AND

03:40PM  16   INACCURACIES REFLECTED IN THE PATIENT TEST RESULT

03:40PM  17   DISTRIBUTIONS.

03:40PM  18   Q.   LET'S GO FURTHER IN TIME IN THIS DOCUMENT TO PAGE 41.  IF

03:40PM  19   WE CAN HIGHLIGHT D THROUGH H -- OR ACTUALLY D THROUGH I.  I'M

03:40PM  20   SORRY, MS. HOLLIMAN.

03:40PM  21        DO YOU SEE, DR. DAS, IN D WHERE IT SAYS, "ON

03:40PM  22   SEPTEMBER 7TH, 2015, CITROL 3 WAS RUN SEVEN TIMES WITHOUT

03:41PM  23   OBTAINING AN ACCEPTABLE QC VALUE"?

03:41PM  24   A.   YES.

03:41PM  25   Q.   AND FURTHER DOWN IN I, IT SAYS, "81 PATIENTS WERE REPORTED

03:41PM  1    FROM APRIL 1ST, 2015 THROUGH 9/16/15."

03:41PM  2        DO YOU SEE THAT LANGUAGE?

03:41PM  3    A.   YES.

03:41PM  4    Q.   AND WHAT WAS THE THRUST OF THE DEFICIENCY AS YOU

03:41PM  5    UNDERSTOOD IT THAT WAS BEING BROUGHT TO YOUR ATTENTION?

03:41PM  6    A.   WHAT IS BEING REFERENCED HERE IS THAT PATIENT RESULTS WERE

03:41PM  7    RECORDED WHEN QUALITY CONTROLS WERE NOT RECORDED.

03:41PM  8    Q.   AND EXPLAIN WHY THAT'S, EXPLAIN WHY THAT'S AN ISSUE.

03:41PM  9    A.   QUALITY CONTROL MUST BE RUN DAILY WHEN PATIENT TEST

03:41PM 10    RESULTS ARE BEING RUN ON ANY ASSAY.

03:41PM 11    Q.   SO IF YOU RUN QUALITY CONTROL AND YOU FAIL QUALITY CONTROL

03:41PM 12    FOR WHATEVER REASON, YOU SHOULDN'T BE REPORTING A TEST?

03:41PM 13    A.   THAT'S RIGHT.

03:41PM 14    Q.   AND IS THIS LISTING EXAMPLES OF WHERE IT APPEARED THAT

03:41PM 15    THERANOS WAS RUNNING TESTS AFTER NOT PASSING QUALITY CONTROL?

03:41PM 16    A.   YES.

03:41PM 17        MR. WADE:  YOUR HONOR, MOVE TO STRIKE.  IT'S BEYOND

03:42PM 18    THE SCOPE OF WHAT THE EVIDENCE IS OFFERED FOR.

03:42PM 19        THE COURT:  YOU CAN ASK THAT IN A DIFFERENT WAY.

03:42PM 20    I'LL SUSTAIN THE OBJECTION AND STRIKE THAT ANSWER.

03:42PM 21    BY MR. LEACH:

03:42PM 22    Q.   AS PART OF YOUR WORK, DR. DAS, DID YOU INVESTIGATE WHETHER

03:42PM 23    THERE WERE INSTANCES WHERE THERANOS REPORTED PATIENT RESULTS

03:42PM 24    AFTER NOT PASSING QUALITY CONTROL?

03:42PM 25    A.   YES.

03:42PM   1    Q.   AND DID YOU FIND EXAMPLES OF THAT RELATING TO PT INR?

03:42PM   2    A.   YES.

03:42PM   3              MR. WADE:  702, YOUR HONOR.

03:42PM   4              THE COURT:  OVERRULED.

03:42PM   5    BY MR. LEACH:

03:42PM   6    Q.   YOU FOUND EXAMPLES OF THAT?

03:42PM   7    A.   YES.

03:42PM   8    Q.   DID YOU ALSO -- LOOKING DOWN AT PARAGRAPH 2, DO YOU SEE

03:42PM   9    THAT THE FINDING HERE IS BASED ON A REVIEW OF THE QUALITY

03:42PM   10   CONTROL PROCEDURE, QC RECORDS, AND RAW DATA FROM PATIENT TEST

03:43PM   11   RUNS AND INTERVIEW WITH THE GENERAL SUPERVISOR, THE LABORATORY

03:43PM   12   FAILED TO ENSURE THAT THE QC WAS ACCEPTABLE FOR THE TPS SYSTEM,

03:43PM   13   OR THERANOS PROPRIETARY SYSTEM, PRIOR TO REPORTING PATIENT TEST

03:43PM   14   RESULTS.

03:43PM   15        DO YOU SEE THAT?

03:43PM   16   A.   YES.

03:43PM   17   Q.   IN YOUR MIND, WAS THIS RAISING A SIMILAR ISSUE WITH THE

03:43PM   18   EDISONS THAT WAS RAISED WITH RESPECT TO PT INR?

03:43PM   19   A.   YES.

03:43PM   20              MR. WADE:  702, YOUR HONOR.

03:43PM   21              THE COURT:  OVERRULED.

03:43PM   22   BY MR. LEACH:

03:43PM   23   Q.   AND DID YOU INVESTIGATE WHETHER THERE WERE INSTANCES WHERE

03:43PM   24   THERANOS REPORTED PATIENT RESULTS FROM THE EDISON DEVICE AFTER

03:43PM   25   FAILING QUALITY CONTROL?

03:43PM   1    A.   YES.

03:43PM   2    Q.   AND DID YOU FIND INSTANCES OF THAT?

03:43PM   3    A.   YES.

03:43PM   4    Q.   MORE THAN ONE?

03:43PM   5    A.   YES.

03:43PM   6    Q.   AND WAS THAT AN ISSUE?

03:43PM   7    A.   YES.

03:43PM   8    Q.   WHY IS THAT?

03:43PM   9    A.   FOR THE REASONS I DELINEATED EARLIER.  IT'S REQUIRED TO DO

03:43PM  10    QUALITY CONTROL ON EVERY DAY THAT PATIENT TEST RESULTS ARE RUN.

03:44PM  11    Q.   LET ME GO, PLEASE, TO PAGE -- LET ME GO TO PAGE 42, AND I

03:44PM  12    WANT TO DRAW YOUR ATTENTION TO PARAGRAPHS D THROUGH G.

03:44PM  13         DO YOU SEE WHERE IT SAYS IN D, "QC RECORDS FOR SEX HORMONE

03:44PM  14    BINDING GLOBULIN, SHOWED THAT ON DEVICE E 1025, QC LEVEL 2'S,

03:44PM  15    24 EXPIRATION WAS ON 8/14/14 AT 18:54 AND WAS NOT RUN AGAIN

03:44PM  16    UNTIL 8/15/14.  PATIENT DATA SHOWED THAT PATIENT SESSION," AND

03:45PM  17    THERE'S A NUMBER, "WAS RUN ON 8/14/14 AT 19:09."

03:45PM  18         DO YOU SEE THAT LANGUAGE?

03:45PM  19    A.   YES.

03:45PM  20    Q.   AND IN YOUR MIND, DID YOU UNDERSTAND THIS -- WAS THIS CMS

03:45PM  21    RAISING THE ISSUE OF THERANOS REPORTING PATIENT RESULTS FOR

03:45PM  22    THIS PARTICULAR ASSAY AFTER FAILING QUALITY CONTROL?

03:45PM  23    A.   YES.

03:45PM  24    Q.   AND THAT'S AN ISSUE THAT YOU INVESTIGATED AS WELL?

03:45PM  25    A.   YES.

03:45PM   1      Q.   AND YOU FOUND INSTANCES WHERE THAT HAPPENED?

03:45PM   2      A.   YES.

03:45PM   3      Q.   LET ME DRAW YOUR ATTENTION, PLEASE, TO PAGE 43.  AND I

03:45PM   4      WANT TO DRAW YOUR ATTENTION TO THE FINDING L AT THE BOTTOM.

03:45PM   5           DO YOU SEE WHERE IT SAYS, "QC RECORDS FOR VITAMIN B12

03:45PM   6      SHOWED THAT ON DEVICE E 37, QC1 HAD A '10X WARNING' MESSAGE"?

03:46PM   7      A.   YES.

03:46PM   8      Q.   AND WHAT IS A 10X WARNING MESSAGE?

03:46PM   9      A.   THAT IS REFERRING TO A QUALITY CONTROL FAILURE WHERE THE

03:46PM  10      QUALITY CONTROL RESULTS LIE ON ONE SIDE OF THE MEAN EITHER

03:46PM  11      ABOVE OR BELOW TEN TIMES CONSECUTIVELY.

03:46PM  12      Q.   AND IN THE COURSE OF YOUR WORK, DID YOU SEE INSTANCES

03:46PM  13      WHERE THERANOS CONTINUED TO REPORT PATIENT RESULTS AFTER THIS

03:46PM  14      10X WARNING HAD COME UP?

03:46PM  15      A.   YES.

03:46PM  16      Q.   PLEASE LOOK AT THE NEXT PAGE, PAGE 44.

03:46PM  17           AND IF I COULD FOCUS ON THE SECOND HALF BEGINNING WITH THE

03:46PM  18      FINDING AT O THROUGH Q.

03:46PM  19           DO YOU SEE, DR. DAS, WHERE IT SAYS, "LEVEY-JENNINGS CHARTS

03:47PM  20      REVEALED THAT SHBG DEVICE E 26 QC1 HAD 13 CONSECUTIVE DAYS AND

03:47PM  21      QC2 HAD 15 CONSECUTIVE DAYS THAT THE RESULTS WERE AT LEAST TWO

03:47PM  22      STANDARD DEVIATIONS BELOW THE MEAN FROM SEPTEMBER 30TH, 2014,

03:47PM  23      THROUGH 10/29/14."

03:47PM  24           DO YOU SEE THAT LANGUAGE?

03:47PM  25      A.   YES.

03:47PM   1    Q.   DID YOU ALSO REVIEW LEVEY-JENNINGS CHARTS IN THE COURSE OF

03:47PM   2    YOUR WORK IN INVESTIGATING THE 2567?

03:47PM   3    A.   YES.

03:47PM   4    Q.   AND IT'S BEEN A WHILE SINCE WE'VE HEARD THAT TERM, BUT

03:47PM   5    WHAT IS A LEVEY-JENNINGS CHART?

03:47PM   6    A.   IT'S ALSO KNOWN AS A CONTROL CHART.  IT'S JUST A WAY TO

03:47PM   7    CHART QUALITY CONTROL VALUES OVER TIME WITH RESPECT TO THE

03:47PM   8    EXPECTED MEAN AND STANDARD DEVIATIONS.

03:47PM   9    Q.   AND AT ANY POINT IN TIME DID YOU COMMUNICATE TO CMS THAT

03:47PM  10    YOU DISAGREED WITH THIS FINDING?

03:47PM  11    A.   NO.

03:47PM  12    Q.   THAT WOULD BE TRUE OF THE FINDINGS IN P AND Q RELATED TO

03:48PM  13    THE LEVY-JENNINGS CHARTS?

03:48PM  14    A.   YES.

03:48PM  15    Q.   WE TALKED A LITTLE BIT ABOUT --

03:48PM  16         THANK YOU, MS. HOLLIMAN.  WE CAN TAKE THAT DOWN.

03:48PM  17         DURING THE COURSE OF YOUR WORK, DID YOU BECOME FAMILIAR

03:48PM  18    WITH THE ARIZONA LAB, THE MODERATE COMPLEXITY ARIZONA LAB?

03:48PM  19    A.   YES.

03:48PM  20    Q.   AND AS A RESULT OF YOUR WORK, THE TESTING THAT WAS DONE IN

03:48PM  21    THE ARIZONA LAB WAS NOT DONE ON ANY THERANOS DEVICES; IS THAT

03:48PM  22    CORRECT?

03:48PM  23    A.   YES.

03:48PM  24    Q.   AND IT WAS NOT DONE ON ANY MODIFIED THIRD PARTY DEVICES?

03:49PM  25    A.   YES.

03:49PM 1    Q.   AND DID YOU UNDERSTAND THAT THE VOLUME OF TESTING IN

03:49PM 2    ARIZONA EXCEEDED THE VOLUME OF TESTING IN CALIFORNIA?

03:49PM 3    A.   YES.

03:49PM 4    Q.   BY SOME ORDER OF MAGNITUDE?

03:49PM 5    A.   COULD YOU BE MORE SPECIFIC?

03:49PM 6    Q.   BY WHAT ORDER OF MAGNITUDE APPROXIMATELY?

03:49PM 7    A.   I'M NOT AWARE OF THAT NUMBER.

03:49PM 8    Q.   OKAY.  WE TALKED EARLIER ABOUT THE VOIDING OF THE TEST

03:49PM 9    RESULTS FROM THE EDISON 3.5.

03:49PM 10       WHAT MECHANICALLY DID YOU DO TO VOID THE RESULTS?

03:49PM 11   A.   COULD YOU SPECIFY "MECHANICALLY"?

03:49PM 12   Q.   DID THE COMPANY SEND SOMETHING TO PATIENTS?  WHAT DID IT

03:49PM 13   DO?

03:49PM 14   A.   AH, YES.  CORRECTIVE REPORTS WERE SENT, IN THIS CASE

03:49PM 15   VOIDED REPORTS.

03:49PM 16   Q.   AND DID THE CORRECTED REPORTS GIVE A PARTICULAR NUMBER OR

03:49PM 17   DID IT JUST SAY VOID?

03:49PM 18   A.   EXACTLY, VOID.

03:49PM 19   Q.   APPROXIMATELY HOW MANY EDISON TESTS WERE VOIDED?

03:50PM 20   A.   I DON'T KNOW THE EXACT NUMBER, BUT IT WAS APPROXIMATELY

03:50PM 21   50- TO 60,000.

03:50PM 22   Q.   AND THAT'S THE TOTAL UNIVERSE OF TESTS THAT WERE RUN ON

03:50PM 23   EDISON IN THE CLIA LAB?

03:50PM 24   A.   YES.

03:50PM 25   Q.   DID YOU EVER RESUME TESTING ON THE EDISON 3.5 IN THE CLIA

03:50PM  1    LAB?

03:50PM  2    A.   NO.

03:50PM  3    Q.   DID YOU EVER RESUME TESTING ON ANY OTHER THERANOS

03:50PM  4    MANUFACTURED DEVICE IN THE CLIA LAB?

03:50PM  5    A.   NO.

03:50PM  6         MR. LEACH:  MAY I HAVE A MOMENT, YOUR HONOR?

03:50PM  7         THE COURT:  YES.

03:50PM  8    (DISCUSSION AMONGST GOVERNMENT COUNSEL OFF THE RECORD.)

03:50PM  9         MR. LEACH:  I HAVE NO FURTHER QUESTIONS, YOUR HONOR.

03:50PM  10   THANK YOU.  THANK YOU, DR. DAS.

03:50PM  11        THE COURT:  MR. WADE, DO YOU HAVE CROSS-EXAMINATION?

03:50PM  12        MR. WADE:  I DO, YOUR HONOR.

03:51PM  13        (PAUSE IN PROCEEDINGS.)

03:51PM  14                    **CROSS-EXAMINATION**

03:51PM  15   BY MR. WADE:

03:51PM  16   Q.   GOOD AFTERNOON, DR. DAS.

03:51PM  17   A.   GOOD AFTERNOON.

03:51PM  18   Q.   MY NAME IS LANCE WADE.  I REPRESENT ELIZABETH HOLMES, AND

03:52PM  19   I'LL ASK YOU A FEW QUESTIONS ON HER BEHALF HERE THIS AFTERNOON,

03:52PM  20   AND IT LOOKS LIKE PROBABLY GOING INTO TOMORROW AS WELL.

03:52PM  21        OKAY?

03:52PM  22   A.   YES.

03:52PM  23   Q.   OKAY.  I'D LIKE TO JUST START BY ORIENTING EVERYONE TO

03:52PM  24   SOME OF THE DATES HERE.

03:52PM  25        MR. LEACH ASKED YOU ABOUT THE CMS INSPECTION THAT WAS

03:52PM  1   REFLECTED IN THE REPORT THAT HE WAS SHOWING YOU.

03:52PM  2       DO YOU RECALL THAT?

03:52PM  3   A.   YES.

03:52PM  4   Q.   AND THAT INSPECTION OCCURRED, OR CONCLUDED, IN NOVEMBER OF

03:52PM  5   2015; CORRECT?

03:52PM  6   A.   YES.

03:52PM  7   Q.   AND YOU DIDN'T INTERACT WITH THE COMPANY UNTIL DECEMBER OF

03:52PM  8   2015; CORRECT?

03:52PM  9   A.   YES.

03:52PM  10  Q.   AND YOU ACCEPTED YOUR JOB IN MID-DECEMBER OF 2015?

03:52PM  11  A.   YES.

03:52PM  12  Q.   AND YOU STARTED ON A CONTRACT BASIS; CORRECT?

03:52PM  13  A.   YES.

03:52PM  14  Q.   AND THEN THE REPORT THAT MR. LEACH SHOWED YOU WAS ISSUED

03:53PM  15  TOWARDS THE END OF JANUARY; RIGHT?

03:53PM  16  A.   YES.

03:53PM  17  Q.   SO THERE WAS A PERIOD OF TIME BETWEEN WHEN YOU STARTED AND

03:53PM  18  WHEN YOU RECEIVED THE CMS REPORT; RIGHT?

03:53PM  19  A.   YES.

03:53PM  20  Q.   AND IN THAT PERIOD OF TIME BEFORE IT EVEN GOT THE CMS

03:53PM  21  REPORT, THERANOS WAS WORKING ON IMPROVING ITS LAB PRACTICES AND

03:53PM  22  STRENGTHENING ITS LAB PRACTICES, WAS IT NOT?

03:53PM  23  A.   YES.

03:53PM  24  Q.   AND, IN FACT, THERANOS HAD BROUGHT IN A LARGE TEAM OF

03:53PM  25  PEOPLE TO WORK ON THOSE EFFORTS, HAD IT NOT?

03:53PM   1     A.   COULD YOU SPECIFY "LARGE" PLEASE.

03:53PM   2     Q.   YOU RECALL -- I BELIEVE IN YOUR DIRECT TESTIMONY YOU SAID

03:53PM   3     THERE WAS A BIG GROUP OF PEOPLE WHO WERE WORKING ON THESE

03:53PM   4     ISSUES.

03:53PM   5          DO YOU RECALL THAT?

03:53PM   6     A.   YES.

03:53PM   7     Q.   AND THERE WERE ACTUALLY -- THERE ENDED UP BEING, I THINK,

03:53PM   8     THREE DIFFERENT LAB DIRECTORS WHO WERE DIRECTLY INVOLVED IN

03:53PM   9     IMPROVING THE LABORATORY AT THERANOS; RIGHT?

03:54PM   10    A.   YES.

03:54PM   11    Q.   THAT WAS DR. HELFEND; CORRECT?

03:54PM   12    A.   YES.

03:54PM   13    Q.   AND SHE WAS THERE INITIALLY?

03:54PM   14    A.   YES.

03:54PM   15    Q.   AND SHE WAS ACTUALLY THERE BEFORE YOU WERE EVEN HIRED;

03:54PM   16    RIGHT?

03:54PM   17    A.   YES.

03:54PM   18    Q.   AND BEFORE THE CMS REPORT WAS ISSUED?

03:54PM   19    A.   YES.

03:54PM   20    Q.   AND THEN YOU WERE HIRED BY MS. HOLMES; CORRECT?

03:54PM   21    A.   YES.

03:54PM   22    Q.   AND ONE OF THE THINGS THAT YOU WERE ASKED TO DO WAS TO GO

03:54PM   23    TO WORK ON IMPROVING THE LAB RIGHT AWAY; RIGHT?

03:54PM   24    A.   YES.

03:54PM   25    Q.   AND THEN IS IT DR. TSCHIRHART?

03:54PM  1    A.    TSCHIRHART.

03:54PM  2    Q.    TSCHIRHART.  IS HE A DOCTOR?

03:54PM  3    A.    YES.

03:54PM  4    Q.    OKAY.  DR. TSCHIRHART WAS HIRED AS WELL; CORRECT?

03:54PM  5    A.    YES.

03:54PM  6    Q.    AND BOTH YOU AND DR. TSCHIRHART WERE HIRED BEFORE THE CMS

03:54PM  7    REPORT WAS ISSUED; RIGHT?

03:54PM  8    A.    YES.

03:54PM  9    Q.    BECAUSE THE COMPANY WANTED TO GO TO WORK TO STRENGTHEN ITS

03:54PM  10   LAB PRACTICES; RIGHT?

03:54PM  11   A.    YES.

03:54PM  12   Q.    AND YOU DID THAT ALMOST IMMEDIATELY; RIGHT?

03:54PM  13   A.    YES.

03:54PM  14   Q.    BEFORE THE CMS REPORT WAS ISSUED; RIGHT?

03:54PM  15   A.    YES.

03:54PM  16   Q.    OKAY.  AND IN ADDITION TO THAT, THE COMPANY HAD ALSO

03:55PM  17   RETAINED SOME LABORATORY CONSULTANTS TO WORK ON THOSE EFFORTS;

03:55PM  18   ISN'T THAT RIGHT?

03:55PM  19   A.    YES.

03:55PM  20   Q.    AND THESE WERE PEOPLE WHO HAD SOME PARTICULAR EXPERTISE IN

03:55PM  21   LAB PRACTICES; RIGHT?

03:55PM  22   A.    YES.

03:55PM  23   Q.    LIKE ARTHUR BACA?

03:55PM  24   A.    YES.

03:55PM  25   Q.    AND ARTHUR BACA HAD A LABORATORY CONSULTING FIRM; IS THAT

03:55PM 1     RIGHT?

03:55PM 2     A.   YES.

03:55PM 3     Q.   AND HE WAS RETAINED EVEN BEFORE YOU WERE HIRED TO WORK ON

03:55PM 4     STRENGTHENING THE LAB PRACTICES; RIGHT?

03:55PM 5     A.   YES.

03:55PM 6     Q.   AND THERE WAS A FRANCIS YOUNG?

03:55PM 7     A.   YES.

03:55PM 8     Q.   DID SHE GO BY FRAN?  AM I UNDERSTANDING THAT?

03:55PM 9     A.   YES.

03:55PM 10    Q.   OKAY.  AND SHE ALSO HAD EXPERTISE IN LABORATORY PRACTICES?

03:55PM 11    A.   YES.

03:55PM 12    Q.   AND SHE WAS PART OF THE TEAM THAT WENT TO WORK ON

03:55PM 13    IMPROVING THE LAB PRACTICES?

03:55PM 14    A.   YES.

03:55PM 15    Q.   AND WAS SHE HIRED BEFORE YOU OR AFTER YOU?

03:56PM 16    A.   PRIOR TO.

03:56PM 17    Q.   OKAY.  AND MICHELLE CARBONE, AM I PRONOUNCING THAT

03:56PM 18    CORRECTLY?

03:56PM 19    A.   YES.

03:56PM 20    Q.   SHE WAS ANOTHER PERSON WHO THE COMPANY HAD HIRED TO GO TO

03:56PM 21    WORK ON STRENGTHENING THE LABORATORY PRACTICES; CORRECT?

03:56PM 22    A.   YES.

03:56PM 23    Q.   AND SHE WAS HIRED BEFORE YOU WERE HIRED AS WELL; CORRECT?

03:56PM 24    A.   YES.

03:56PM 25    Q.   AND BEFORE -- ALL OF THESE PEOPLE WERE HIRED BEFORE THE

03:56PM  1    CMS REPORT WAS ISSUED IN LATE JANUARY OF 2016; CORRECT?

03:56PM  2    A.   YES.

03:56PM  3    Q.   AND THIS WAS ALL PART OF AN EFFORT TO TRY TO STRENGTHEN

03:56PM  4    THE CLIA LAB WITHIN THERANOS; RIGHT?

03:56PM  5    A.   YES.

03:56PM  6    Q.   AND JUST SO WE'RE CLEAR, THERE WERE THREE LABORATORY

03:56PM  7    DIRECTORS WHO WERE WORKING ON THIS AT THE TIME THAT YOU AND

03:56PM  8    DR. TSCHIRHART JOINED THE COMPANY; IS THAT RIGHT?

03:56PM  9    A.   YES.

03:56PM  10   Q.   OKAY.  AND THOSE THREE LABORATORY DIRECTORS CONTINUED FOR

03:56PM  11   MANY MONTHS TO WORK THROUGH THIS PROBLEM; IS THAT RIGHT?

03:57PM  12   A.   COULD YOU SPECIFY THE NUMBER OF MONTHS?

03:57PM  13   Q.   SIX MONTHS OR MORE?

03:57PM  14   A.   I DON'T REMEMBER THE EXACT NUMBER --

03:57PM  15   Q.   OKAY.

03:57PM  16   A.   -- OF MONTHS.

03:57PM  17   Q.   BUT SEVERAL MONTHS AT LEAST?

03:57PM  18   A.   YES.

03:57PM  19   Q.   AND YOU WERE THERE FOR A COUPLE OF YEARS; CORRECT?

03:57PM  20   A.   YES.

03:57PM  21   Q.   AND AS THE PEOPLE WERE WORKING TO DO THIS, WAS IT YOUR

03:57PM  22   OBSERVATION THAT THEY WERE -- LET ME STRIKE THAT.

03:57PM  23       YOU WERE ESSENTIALLY, ONCE YOU CAME ON BOARD, YOU WERE THE

03:57PM  24   CLIA DIRECTOR; RIGHT?

03:57PM  25   A.   YES.

03:57PM  1    Q.   AND THERE WAS A DEGREE TO WHICH YOU WERE THE QUARTERBACK

03:57PM  2    FOR THAT WHOLE EFFORT; IS THAT FAIR?

03:57PM  3    A.   YES.

03:57PM  4    Q.   OKAY.  AND WAS IT YOUR OBSERVATION THAT THIS TEAM WAS

03:57PM  5    WORKING REALLY HARD?

03:57PM  6    A.   YES.

03:57PM  7    Q.   AND DILIGENTLY?

03:57PM  8    A.   YES.

03:57PM  9    Q.   AND IN GOOD FAITH?

03:57PM  10   A.   YES.

03:57PM  11   Q.   AND THAT THEY WERE TRYING TO DO EVERYTHING THAT THEY COULD

03:57PM  12   TO TRY TO STRENGTHEN THE LABORATORY PRACTICES AT THERANOS?

03:57PM  13   A.   YES.

03:57PM  14   Q.   AND THAT AS THEY WERE WORKING TO UNDERSTAND WAYS TO

03:57PM  15   IMPROVE, THEY WERE DIGGING INTO THE RELEVANT EVIDENCE AND FACTS

03:58PM  16   THAT WAS NECESSARY TO THEM TO UNDERSTAND THE ISSUES.  IS THAT

03:58PM  17   RIGHT?

03:58PM  18   A.   YES.

03:58PM  19   Q.   OKAY.  AND ALL OF THE PEOPLE WHO I HAVE JUST IDENTIFIED

03:58PM  20   WERE NOT PEOPLE WHO WERE PART OF THE HISTORICAL LAB OPERATIONS

03:58PM  21   AT THERANOS; CORRECT?

03:58PM  22   A.   YES.

03:58PM  23   Q.   AND THEY WERE ALL ESSENTIALLY OUTSIDERS WHO WERE BROUGHT

03:58PM  24   IN TO WORK ON STRENGTHENING THESE LAB PRACTICES; RIGHT?

03:58PM  25   A.   YES.

03:58PM 1    Q.   OKAY.  AND WAS IT YOUR OBSERVATION WHEN THIS WAS HAPPENING

03:58PM 2    THAT MS. HOLMES WAS SUPPORTIVE OF THOSE EFFORTS?

03:58PM 3    A.   YES.

03:58PM 4    Q.   AND THAT SHE WAS SUPPORTIVE OF YOUR EFFORTS AS THE

03:58PM 5    QUARTERBACK OF THIS TEAM?

03:58PM 6    A.   YES.

03:58PM 7    Q.   AND INITIALLY, AGAIN, ALL OF THIS WORK STARTED BEFORE

03:58PM 8    THERE WAS ANY NOTICE OF THE KIND THAT MR. LEACH WAS PUTTING UP

03:58PM 9    ON THE SCREEN; RIGHT?

03:58PM 10   A.   YES.

03:58PM 11   Q.   OKAY.  AND IN THOSE EARLY DAYS, I TAKE IT YOU HAD TO KIND

03:59PM 12   OF DIG IN A LITTLE BIT AND GET A SENSE OF WHAT -- HOW THE LAB

03:59PM 13   OPERATED; IS THAT RIGHT?

03:59PM 14   A.   YES.

03:59PM 15   Q.   AND YOU HAD TO LOOK AT THE HISTORICAL RECORDS OF THE

03:59PM 16   COMPANY; RIGHT?

03:59PM 17   A.   YES.

03:59PM 18   Q.   AND, AND SOME OF THE DATA THAT THE COMPANY HAD?

03:59PM 19   A.   YES.

03:59PM 20   Q.   AND YOU -- I TAKE IT YOU SAT DOWN AND YOU TALKED WITH MANY

03:59PM 21   OF THE PEOPLE WHO HAD WORKED THERE HISTORICALLY ON -- IN THE

03:59PM 22   LAB AND ON THE TECHNOLOGY.

03:59PM 23   A.   YES, SOME OF THOSE EMPLOYEES.

03:59PM 24   Q.   TO TRY TO FAMILIARIZE YOURSELF WITH SOME OF THE HISTORICAL

03:59PM 25   PRACTICES; IS THAT FAIR?

03:59PM  1    A.   YES.

03:59PM  2    Q.   OKAY.  AND YOU -- YOU TALKED WITH DR. YOUNG; IS THAT FAIR?

03:59PM  3    A.   YES.

03:59PM  4    Q.   AND DR. PANGARKAR?

03:59PM  5    A.   NOT AT THAT TIME.

03:59PM  6    Q.   NOT AT THAT TIME.  LATER ON YOU INTERACTED WITH

03:59PM  7    DR. PANGARKAR?

03:59PM  8    A.   YES.

03:59PM  9    Q.   OKAY.  AND THIS WAS ALL IN AN EFFORT FOR YOU TO FULLY

03:59PM  10   UNDERSTAND ALL OF THE RELEVANT FACTS SO THAT YOU COULD DIG IN

04:00PM  11   AND WORK ON IMPROVING THE LAB PRACTICES; RIGHT?

04:00PM  12   A.   COULD YOU SPECIFY "FULLY UNDERSTAND"?

04:00PM  13   Q.   WELL, YOU WANTED TO MAKE SURE THAT YOU UNDERSTOOD THE

04:00PM  14   FACTS NEEDED TO STRENGTHEN THE LAB AND BE COMFORTABLE WITH HOW

04:00PM  15   IT WAS OPERATING FROM A CLIA STANDPOINT; IS THAT RIGHT?

04:00PM  16   A.   YES.

04:00PM  17   Q.   OKAY.  AND, AND MS. HOLMES PLACED NO LIMITATIONS ON YOU

04:00PM  18   WHATSOEVER IN TERMS OF WHAT YOU COULD LOOK AT; RIGHT?

04:00PM  19   A.   YES.

04:00PM  20   Q.   AND THIS WAS A LOT OF WORK, WAS IT NOT, DR. DAS?

04:00PM  21   A.   YES.

04:00PM  22   Q.   AND, AND INITIALLY YOU WERE STILL HOLDING DOWN A JOB AT

04:00PM  23   UCLA AS WELL?

04:00PM  24   A.   YES.

04:00PM  25   Q.   AND THEN EVENTUALLY YOU CAME IN AND YOU WORKED FULL TIME

04:00PM  1    ON TACKLING THIS PROBLEM; RIGHT?

04:00PM  2    A.   YES.

04:00PM  3    Q.   AND YOU WORKED HARD ON THAT JOB AS WELL, DID YOU NOT?

04:00PM  4    A.   YES.

04:00PM  5    Q.   AND THE WHOLE TEAM THAT WAS WORKING HARD -- WAS WORKING

04:01PM  6    HARD ON THAT; IS THAT FAIR?

04:01PM  7    A.   YES.

04:01PM  8    Q.   BECAUSE YOU DISCUSSED EARLIER THAT YOU WERE UNDER A PRETTY

04:01PM  9    TIGHT TIMEFRAME TO BE IN A POSITION TO RESPOND TO THESE ISSUES;

04:01PM  10   RIGHT?

04:01PM  11   A.   YES.

04:01PM  12   Q.   AND INITIALLY THERE WAS A DESIRE BEFORE THE CMS REPORT,

04:01PM  13   THERE WAS A DESIRE THAT WAS COMMUNICATED TO STRENGTHEN THE LAB;

04:01PM  14   RIGHT?

04:01PM  15   A.   YES.

04:01PM  16   Q.   AND PEOPLE WANTED THAT DONE QUICKLY; RIGHT?

04:01PM  17   A.   YES.

04:01PM  18   Q.   AND THEN ONCE YOU GOT TO THE POINT WHERE THERE WAS A CMS

04:01PM  19   REPORT, THERE WERE ACTUALLY PRETTY FIRM DEADLINES AND A DESIRE

04:01PM  20   TO DIG IN AND TACKLE THOSE ISSUES AGGRESSIVELY; RIGHT?

04:01PM  21   A.   COULD YOU SPECIFY THE DEADLINES?

04:01PM  22   Q.   WELL, YOU RECALL MR. LEACH SHOWED YOU -- I THINK HE SHOWED

04:01PM  23   YOU A LETTER THAT SAID THAT THERE WERE TEN DAYS TO RESPOND, OR

04:01PM  24   SOMETHING TO THAT EFFECT, IN THE INITIAL -- TO THE INITIAL

04:01PM  25   NOTICE.

04:01PM 1        DO YOU RECALL?

04:01PM 2    A.   YES.

04:01PM 3    Q.   AND THE COMPANY WANTED TO RESPOND QUICKLY; RIGHT?

04:01PM 4    A.   YES.

04:02PM 5    Q.   AND AGGRESSIVELY?

04:02PM 6    A.   COULD YOU SPECIFY "AGGRESSIVELY"?

04:02PM 7    Q.   SURE.  IT WANTED TO BE RESPONSIVE TO THE ISSUES THAT WERE

04:02PM 8    BEING RAISED BY CMS; IS THAT RIGHT?

04:02PM 9    A.   YES.

04:02PM 10   Q.   OKAY.

04:02PM 11       YOUR HONOR, THIS MIGHT BE A GOOD PLACE TO STOP.  WE'RE AT

04:02PM 12   4:00 O'CLOCK.

04:02PM 13       WE'LL PICK UP TOMORROW MORNING, DOCTOR.  THANK YOU.

04:02PM 14           THE WITNESS:  THANK YOU.

04:02PM 15           THE COURT:  SO WE'LL TAKE OUR RECESS TONIGHT, LADIES

04:02PM 16   AND GENTLEMEN.  I HOPE WE'LL BE ABLE TO START TOMORROW MORNING

04:02PM 17   AT 9:00 A.M.  WE'LL SEE WHAT SURPRISES AWAIT US.  I HAVE GREAT

04:02PM 18   CONFIDENCE IN OUR I.T. STAFF, THAT THEY'LL BE ABLE TO RESOLVE

04:02PM 19   THIS ISSUE.

04:02PM 20       SO THANK YOU FOR YOUR COURTESY IN GOING THROUGH -- IT WAS

04:02PM 21   A TRIP DOWN MEMORY LANE.  THIS IS HOW TRIALS USED TO BE DONE

04:02PM 22   YEARS AGO.  BEFORE WE HAD THE COMPUTERS, WE HAD PROJECTORS AND

04:02PM 23   THAT'S HOW IT WORKED, AND THOSE TRIALS WERE SUCCESSFUL.  IT

04:02PM 24   WORKS.

04:02PM 25       SO I APOLOGIZE FOR THE DISRUPTION TODAY.  I HOPE WE CAN

04:02PM 1    ALLEVIATE THAT OVER THE EVENING.

04:03PM 2        BUT OVER THE EVENING, PLEASE REFRAIN AND AVOID

04:03PM 3    COMMUNICATING WITH ANYONE ABOUT ANYTHING ABOUT THIS CASE.

04:03PM 4    DON'T DO ANY RESEARCH.  DON'T MAKE ANY OPINIONS OR FORM ANY

04:03PM 5    OPINIONS OR REACH ANY CONCLUSIONS YET UNTIL THE CASE HAS BEEN

04:03PM 6    DELIVERED TO YOU FOR YOUR DELIBERATIONS.

04:03PM 7        HAVE A GOOD EVENING.  WE'LL SEE YOU TOMORROW AT 9:00 A.M.

04:03PM 8        AND, DR. DAS, YOU CAN STAND DOWN.  WE'LL SEE YOU TOMORROW

04:03PM 9    AT 9:00 A.M.

04:03PM 10            THE WITNESS:  THANK YOU, YOUR HONOR.

04:03PM 11            THE COURT:  YOU'RE WELCOME.

04:03PM 12        (JURY OUT AT 4:03 P.M.)

04:03PM 13            THE COURT:  THANK YOU.  PLEASE BE SEATED.  THANK

04:03PM 14    YOU.

04:03PM 15        DOCTOR, YOU CAN STAND DOWN.  THANK YOU.

04:04PM 16        ALL RIGHT.  THE RECORD SHOULD REFLECT THAT OUR JURY HAS

04:04PM 17    LEFT FOR THE EVENING AND THE WITNESS HAS LEFT THE COURTROOM.

04:04PM 18        ANYTHING FURTHER BEFORE WE BREAK, MR. LEACH AND YOUR TEAM?

04:04PM 19            MR. LEACH:  NOT FROM THE GOVERNMENT, NO, YOUR HONOR.

04:04PM 20            MR. WADE:  NOT AT THIS TIME, YOUR HONOR.

04:04PM 21            THE COURT:  ALL RIGHT.  THANK YOU.  HAVE A GOOD

04:04PM 22    EVENING.  WE'LL SEE YOU TOMORROW.  THANKS.

04:04PM 23            THE CLERK:  COURT IS ADJOURNED.

04:04PM 24        (COURT ADJOURNED AT 4:04 P.M.)

        25

1

2

3                 <u>CERTIFICATE OF REPORTERS</u>

4

5

6

7       WE, THE UNDERSIGNED OFFICIAL COURT REPORTERS OF THE

8 UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9 CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10 HEREBY CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12 A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13 ABOVE-ENTITLED MATTER.

14

15

16       IRENE RODRIGUEZ, CSR, CRR
         CERTIFICATE NUMBER 8076

17

18

19       LEE-ANNE SHORTRIDGE, CSR, CRR
         CERTIFICATE NUMBER 9595

20

21       DATED:  NOVEMBER 9, 2021

22

23

24

25