# EXHIBIT 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>   v.<br><br>ELIZABETH A. HOLMES,<br><br>        Defendant. | Case No.  5:18-cr-00258-EJD-1<br><br>**ORDER DENYING MS. HOLMES'<br>MOTION TO ADMIT PRIOR<br>TESTIMONY OF RAMESH "SUNNY"<br>BALWANI**<br><br>Re: Dkt. No. 1163 |

Defendant Elizabeth Holmes moves to admit prior deposition testimony of her co-defendant Ramesh "Sunny" Balwani under either Federal Rule of Evidence 804(b)(1) or (b)(3). Ms. Holmes' Motion to Amit Prior Testimony of Ramesh "Sunny" Balwani ("Mot."), Dkt. No. 1163. The Government opposes this motion and argues that neither exception to the rule against hearsay identified by Ms. Holmes applies. United States' Opposition to Holmes' Motion to Admit Prior Testimony of Ramesh "Sunny" Balwani ("Opp."), Dkt. No. 1166.

Federal Rule of Evidence 804(b)(1) requires Ms. Holmes to demonstrate that Mr. Balwani made the proffered statements during a lawful deposition and that the party against whom the statements are offered had an opportunity and similar motive to develop the testimony through direct, cross, or redirect examination. Even if the Securities Exchange Commission ("SEC") and Department of Justice ("DOJ") are the same party, the Ninth Circuit's precedent indicates that the SEC's motive in developing Mr. Balwani's testimony at the time of the deposition was different from that of the DOJ at trial. *See SEC v. Jasper*, 678 F.3d 1116, 1128–29 (9th Cir. 2012).

United States District Court
Northern District of California

Federal Rule of Evidence 804(b)(3) requires Ms. Holmes to demonstrate that Mr. Balwani's statements are inculpatory and are supported by corroborating circumstances that "clearly indicate" trustworthiness. Ms. Holmes has not met this burden. First, it is unclear how the identified statements expose Mr. Balwani to civil or criminal liability. Second, to the extent corroborating circumstances exist, they do not "clearly indicate" trustworthiness.

Accordingly, based on these reasons and the analysis below, this Court **DENIES** Ms. Holmes' motion to admit Mr. Balwani's prior testimony.

## I. BACKGROUND

In August 2017, the SEC deposed Mr. Balwani and asked him questions about his role at Theranos. Thereafter, on June 14, 2018, both Ms. Holmes and Mr. Balwani were criminally indicted for wire fraud and conspiracy to commit wire fraud. Dkt. No. 1. Mr. Balwani's criminal trial is scheduled for January 2022, after the conclusion of Ms. Holmes' criminal trial.

Given Mr. Balwani's upcoming trial and his Fifth Amendment protections, Ms. Holmes argues Mr. Balwani is unavailable as a witness for her trial and seeks to introduce Mr. Balwani's out-of-court statements under Federal Rules of Evidence 804(b)(1) and/or (b)(3). Ms. Holmes' motion focuses on four categories of statements made by Mr. Balwani in his SEC deposition: his testimony about the null protocol and his testimony that he was responsible for managing the CLIA lab, Theranos' financial modeling, and the Walgreens and Safeway relationships. *See* Mot. at 4.

Ms. Holmes withdrew the portion of the motion regarding null protocol. Transcript of Oral Argument at 7950–51. The Court determined that statements in Exhibit C regarding Mr. Balwani's role in managing the CLIA lab were unduly cumulative and excluded them under Federal Rule of Evidence 403. Transcript of Oral Argument at 8193–94. This extends to statements regarding the CLIA lab in Exhibit A.

On November 30, 2021, Mr. Balwani's counsel, Jeffrey Coopersmith, told the Court that if Mr. Balwani were called as a witness by Ms. Holmes, Mr. Balwani would "assert his Fifth

United States District Court
Northern District of California

Amendment rights with respect to any substantive question, including on topics" regarding "his role in the CLIA lab," "his role in financial modeling," and "his role in the Walgreens and Safeway relationships." Transcript of Oral Argument at 8195–98. Based on these representations, the Court determined that Mr. Balwani was "unavailable" within the meaning of Federal Rule of Evidence 804(b). *See United States v. Oropeza*, 564 F.2d 316, 325 n.8 (9th Cir. 1977) (noting that invocation of the privilege against self-incrimination could support a finding of unavailability).

## II.    LEGAL STANDARDS

The Federal Rules of Evidence prohibit parties from introducing out-of-court statements for the truth of the matter asserted therein unless an exception or exemption to the rule against hearsay applies. Fed. R. Evid. 801(c), 802. Two such exceptions are Federal Rule of Evidence 804(b)(1) and (b)(3).

To admit statements under Federal Rule of Evidence 804(b)(1), the proponent must demonstrate that the unavailable declarant's testimony occurred during a prior trial, hearing, or lawful deposition and that the party against whom the testimony is offered had an opportunity or similar motive to develop the prior testimony through direct, cross, or redirect examination.

To admit statements under Federal Rule of Evidence 804(b)(3), the proponent must demonstrate that (1) the declarant is unavailable, (2) a reasonable person in the declarant's position would have made the statement only if the person believed it to be true because, when made, it exposed the declarant to civil or criminal liability, and (3) if, as here, the statements are offered in a criminal case and tend to expose the declarant to criminal liability, the statements must be supported by corroborating circumstances that clearly indicate the statements' trustworthiness.

## III.    DISCUSSION

Mr. Balwani's invocation of his Fifth Amendment privilege makes him unavailable. Therefore, to introduce prior, out-of-court testimony by Mr. Balwani, Ms. Holmes must demonstrate either that the Government had prior opportunity and motive to cross examine Mr.

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MS. HOLMES' MOTION TO ADMIT PRIOR TESTIMONY OF RAMESH "SUNNY" BALWANI

United States District Court
Northern District of California

Balwani or that the statements made in that testimony expose him to either criminal or civil liability and, to the extent the statements tend to expose Mr. Balwani to criminal liability, are corroborated by circumstances that clearly indicate trustworthiness. The Court addresses each exception in turn.

### A. Federal Rule of Evidence 804(b)(1)

This Court must decide whether the SEC and DOJ are the "same party" and, if so, whether the SEC, in its civil investigation of Theranos, had both the opportunity and a similar motive to the DOJ in developing Mr. Balwani's testimony.

#### 1. Same Party

There is limited case law on the issue of whether the SEC and DOJ are the "same party" for Rule 804(b)(1) purposes. *See United States v. Baker*, 923 F.3d 390, 399 (5th Cir. 2019) ("The case law on this issue is limited, and no court has expressly held that the SEC and the DOJ are the same party."); *United States v. Sklena*, 692 F.3d 725, 731 (7th Cir. 2012) ("There is very little law on the question whether two government agencies, or as in this case the United States and a subsidiary agency, should be considered as different parties for litigation purposes, or if they are both merely agents of the United States."). The Ninth Circuit has not specifically addressed this question, but *Federal Deposit Insurance Corp. v. Glickman*, 450 F.2d 416 (9th Cir. 1971) supports treating the SEC and DOJ as separate parties. There, the Ninth Circuit found that the Federal Deposit Insurance Corporation ("FDIC"), a federal agency, and the United States Government were not the "same party" simply because both were federal agencies. *Id.* at 418. Instead, the FDIC was a "different party" because it was standing in the shoes of the insolvent bank and was thus acting in its capacity as a receiver of the bank and not in its capacity as a Government actor, as it would have been if it were "represented in [the] litigation by the United States Attorney." *Id.* While the logic is not exactly applicable to this case, since both the SEC and DOJ are "government actors," it does demonstrate that government agencies are not the "same party" by virtue of their federal agency status. It also indicates that the DOJ's role in litigation distinguishes

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MS. HOLMES' MOTION TO ADMIT PRIOR TESTIMONY OF RAMESH "SUNNY" BALWANI

1    it from other federal agencies.

2           Like *Glickman*, the Fifth Circuit in *Baker* found that two federal agencies are not "the same

3    party" simply because of their federal agency status.  In *Baker*, the Fifth Circuit held that the SEC

4    and DOJ are separate parties.  923 F.3d at 399–401.  In making this determination, the Fifth

5    Circuit noted that the SEC conducted its own, independent investigation, that the DOJ was not

6    present at any of the SEC's depositions, that an SEC attorney was not cross-designated or assigned

7    to the DOJ prosecution team, and that the DOJ did not provide the SEC with materials from its

8    investigation.  *Id.* at 400–01.  While there was some "cooperation" between the agencies, it was

9    not enough to demonstrate that the SEC and DOJ were the "same party" within the meaning of

10   Rule 804(b)(1).  *Id.*

11          Likewise, in this case, while there has been cooperation between the SEC and DOJ, there

12   is no evidence that the two agencies coordinated their investigations.  The defense focuses on the

13   provision in the SEC subpoenas that say that the SEC can share information with the DOJ, but that

14   is not sufficient to show coordination between the two agencies.  Indeed, as defense counsel

15   admitted, there was no United States Attorney representing the DOJ or the prosecution at the SEC

16   depositions, nor was there any DOJ agent present at the depositions.  Transcript of Oral Argument

17   at 7704; *see also* Opp. at 6 (stating that members of the prosecution did not attend the SEC

18   deposition of Mr. Balwani and did not contribute input to the questions as by the SEC); *United*

19   *States v. Stringer*, 535 F.3d 929, 933 (9th Cir. 2008) ("Federal securities laws authorize the SEC to

20   transmit evidence it has gathered to the [United States Attorneys' Office] to facilitate a criminal

21   investigation by [the Office].").  Thus, as in *Baker*, while there was some cooperation between the

22   two agencies, it was not extensive enough for the SEC and the DOJ to be deemed the same party.

23          *Sklena*, which held that the Community Futures Trading Commission ("CFTC") and the

24   DOJ are the same party under Rule 804(b)(1), does not require a different result.  692 F.3d at 731–

25   32.  Unlike the SEC, the CFTC is statutorily required to report to the DOJ and must cooperate

26   with the DOJ.  *See id.* ("[The] statutory control mechanism suggests to us that, had the [DOJ]

27   Case No.: 5:18-cr-00258-EJD-1

28   ORDER DENYING MS. HOLMES' MOTION TO ADMIT PRIOR TESTIMONY OF RAMESH
     "SUNNY" BALWANI

United States District Court
Northern District of California

wished, it could have ensured that the CFTC lawyers included questions of interest to the United States [during the deposition].").  The SEC is an independent agency with its own litigating authority.  *Baker*, 923 F.3d at 401; *see also SEC v. Robert Collier & Co.*, 76 F.2d 939, 940 (2d Cir. 1935) ("[T]he [SEC] [has] complete autonomy in civil prosecutions.").

## 2.  Opportunity and Similar Motive

Even if the SEC and DOJ are deemed to be the same party, they did not share a sufficiently similar motive in developing Mr. Balwani's testimony.  The Ninth Circuit has distinguished a party's motive during the investigatory process and the accusatory stage of proceedings.  *See Jasper*, 678 F.3d at 1128–29.  In *Jasper*, the defendant in an SEC enforcement action sought to introduce the investigative testimony of a lower-level employee that was taken by the SEC before the formal complaint was filed.  *Id.* at 1127–29.  The employee was unavailable to testify at trial because he had invoked his Fifth Amendment right against self-incrimination.  *Id.*  The Ninth Circuit affirmed the district court's decision that the employee's prior testimony was inadmissible against the SEC because the motivations during early investigation, "at which open-ended questions are typically asked without expectation the witness will be needed at trial," are different from the motivations at later stage adverse witness depositions, when "battle lines have already been drawn and necessary witnesses identified."  *Id.* at 1128–29.

As in *Jasper*, the SEC deposition occurred in the early stages of investigation, almost a year before any criminal indictment was filed.  Most of the questions identified in Exhibits A, B, and C of the motion are open-ended and not leading and seem to be posed to gather information about Theranos and Mr. Balwani's role at the company rather than to gather information against an adverse witness.  *Compare* Exhibit A at ECF 3 ("[C]an you briefly explain how that -- . . . what – got added to your portfolio?"); Exhibit B at ECF 5 ("Was there anyone else from Theranos who was working on the model while you were working on it?"); Exhibit C at ECF 3 ("Who at Theranos made the determination of what device to use for patient testing in the CLIA lab?"), *with* Exhibit D (SEC deposition in July 2019 that occurred after the first criminal indictment was filed)

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MS. HOLMES' MOTION TO ADMIT PRIOR TESTIMONY OF RAMESH "SUNNY" BALWANI

United States District Court
Northern District of California

1   at ECF 4 ("At the time you joined Theranos . . . Theranos was on the verge of running out of

2   money, correct?").  The Court holds that the SEC's motivation during the early 2017 stage of the

3   investigation was not like the motive of the DOJ today and thus the party against whom the

4   statements are offered did not have "an opportunity and similar motive to develop [the testimony]

5   by direct, cross, or redirect examination." Fed. R Evid. 804(b)(1)(B).  Ms. Holmes motion to

6   admit Mr. Balwani's statements under Federal Rule of Evidence 804(b)(1) is thus **DENIED.**

### B.  Federal Rule of Evidence 804(b)(3)

8          The Court must decide whether the statements made by Mr. Balwani in his SEC deposition

9   are statements against interest.  The Court only answers this question as to statements regarding

10  the Safeway and Walgreens relationship and the financial model.  *See supra* (null protocol

11  statements not at issue and statements regarding the CLIA lab were denied under Federal Rule of

12  Evidence 403 as unduly cumulative).

13         "Whether a statement is in fact against interest must be determined from the circumstances

14  of each case, and can only be determined by viewing [the statement] in context."  *United States v.*

15  *Paguio*, 114 F.3d 928, 933 (9th Cir. 1997) (quotation marks and citation omitted).  The test

16  involves the perception of a reasonable person in Mr. Balwani's position, not of Mr. Balwani

17  himself. *United States v. Satterfield*, 572 F.2d 687, 691 n.1 (9th Cir. 1978).  Rule 804(b)(3)'s use

18  of "tending" broadens the phrase, so that the statement need not be a "plain confession making the

19  difference between guilty and not guilty." *Id.*  However, a statement that curries favor or deflects

20  and shares blame are not "truly self-inculpatory" for purposes of Rule 804(b)(3) because they do

21  not expose the declarant himself to criminal liability.  *United States v. Gadson*, 763 F.3d 1189,

22  1200 (9th Cir. 2014).

23         Ms. Holmes identifies the following underlined statements as statements against interest:

24  1.  "Q: And so you -- you mentioned that over time, sort of your responsibilities grew.  Can

25       you -- can you briefly explain how that -- . . . what got added to your portfolio?"

26       "A: And then 2010 March, February time frame, I was also spending time on the road, me

27

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER DENYING MS. HOLMES' MOTION TO ADMIT PRIOR TESTIMONY OF RAMESH
    "SUNNY" BALWANI

United States District Court
Northern District of California

1    and Elizabeth Holmes, meeting with the retail pharmacy businesses, and as that evolved, I

2    took the leadership role there in negotiations and contracts." Exhibit A at ECF 3-4.

3    2.   "Q: What about Safeway?"

4    "A: So [Ms. Holmes] spent a lot of time on Safeway initially, but ultimately, I took that

5    over also." Exhibit A at ECF 4–5.

6    3.   "Q: What were your responsibilities with respect to the company's financials when you --

7    early on in that president and COO role?"

8    "A: Around 2010 when we started engaging with the retail pharmacies, Safeway and

9    Walgreens, I started building a financial model with the help initially from Safeway and

10   Walgreens that I owned and -- until I left the company." Exhibit A at ECF 6.

11   4.   "Q: Who was working with you on the financial model?"

12   "A: And – and over time, it was raw data coming from the field as I learned, you know,

13   how much -- how much dollars per requisition we were making from the field. So as I --

14   over time, I think it was more input from a lot of people. As the information came into me,

15   I would, you know, update the model and keep it updated." Exhibit B at ECF 3–4.

16   5.   "Q: Was there anyone else from Theranos who was working on the model while you were

17   working on it?"

18   "A: I don't think so." Exhibit B at ECF 5.

19   6.   "Q: To your knowledge, Elizabeth Holmes understood that you maintained a financial

20   model for the company; right?"

21   "A: Correct."

22   "Q: And that -- that model was based on certain assumptions based on -- in terms of the

23   business and its R&D; is that fair?"

24   "A: And a bunch of other inputs. But yes, that's fair."

25   "Q: And she was generally familiar with the kinds of inputs that went into the financial

26   model?"

27

"A: She may have been at some point, <u>but I was revving the model and adding so many assumptions that she may not be familiar with all of them or even most of them.</u>  So I -- I wouldn't make that -- that blanket statement."

"Q: Did she ever edit the model?"

"A: To the best of my knowledge, no.  And there was one time I actually had a couple of questions for her, and I had put a model with her name on it so she could edit, but I don't think she ever did because I continued with my assumptions and I never even looked at that model.  <u>So my -- I think my answer is: No.</u>"  Exhibit B at ECF 6.

First, to the extent Mr. Balwani's statements regarding the Safeway and Walgreens relationships are inculpatory, they share blame with Ms. Holmes and are thus not admissible under Rule 804(b)(3).  *See Gadson*, 763 F.3d at 1200.  Mr. Balwani's statements that he took over the Safeway relationship and managed the Walgreens relationship must be read in context.  He goes on to testify that *both* he in Ms. Holmes were involved in the pharmacy relationships "from the start," but that their respective involvement shifted over time.  The two shared the relationships.  Moreover, according to the testimony in this case, by the time Mr. Burd left Safeway, and Mr. Balwani "took lead" on the Safeway relationship, Safeway had already made its investment into Theranos.  It is therefore unclear how his testimony that he "took over" the Safeway relationship would inculpate him in any criminal wrongdoing.

Second, Mr. Balwani's statements about "owning" the financial modeling of the company are not inculpatory.  They do not, by themselves, expose Mr. Balwani to civil or criminal liability.  *Paguio* serves a helpful contrast.  There, the declarant specifically claimed to take lead on the fraud to the exclusion of others.  *See* 114 F.3d at 931 n.1 (testimony that the declarant took responsibility for the crime, described the fraud, and disavowed the involvement of specific people).  It is not a crime to create a financial model.  It is also not a crime to take ownership over the creation of a financial model.  It *might* be a crime to use fraudulent assumptions in the model and then share those assumptions to investors.  Likewise, it *might* be a crime to mislead investors

1  into believing a financial model is a financial projection.  But Mr. Balwani does not claim to have

2  done either of those things.  He only testifies to creating a financial model; there is no testimony

3  that he shared his model or used faulty assumptions in the model.  The Court thus cannot find that

4  a reasonable person in Mr. Balwani's position would have believed that the statements would

5  expose them to civil or criminal liability.

6  Finally, even if Mr. Balwani's statements regarding the financial modeling inculpate him,

7  the record does not contain corroborating circumstances that "clearly indicate" the trustworthiness

8  of his testimony.  Instead, the record contains evidence that Ms. Holmes texted Mr. Balwani that

9  they needed to "work together on the rev [sic] piece."  Transcript of Ms. Holmes Cross

10  Examination at 8030.  Ms. Holmes admitted on cross examination that this "could" be a reference

11  to revenue as the two had been texting about revenue.  *Id.* at 8031.  Likewise, in the SEC

12  deposition, Mr. Balwani testified that he gave Ms. Holmes access to the models and asked her to

13  make edits.  This demonstrates that Ms. Holmes may have been involved with revenue and

14  financial modeling and undercuts a clear finding of trustworthiness that Mr. Balwani alone

15  "owned" the financial modeling.  Ms. Holmes' motion to admit Mr. Balwani's statements under

16  Federal Rule of Evidence 804(b)(3) is thus **DENIED.**

17  **IV.  CONCLUSION**

18  Ms. Holmes' motion to admit prior testimony of Mr. Balwani is **DENIED.**

19  **IT IS SO ORDERED.**

20  Dated: December 2, 2021

21

22

23  EDWARD J. DAVILA
   United States District Judge

24

25

26

27

Case No.: 5:18-cr-00258-EJD-1
28  ORDER DENYING MS. HOLMES' MOTION TO ADMIT PRIOR TESTIMONY OF RAMESH
   "SUNNY" BALWANI

United States District Court
Northern District of California