# EXHIBIT 32

JOHN D. CLINE (CA State Bar No. 237759)
50 California Street, Suite 1500
San Francisco, CA 94111
Telephone: (415) 662-2260 │Facsimile: (415) 662-2263
Email: cline@johndclinelaw.com

KEVIN M. DOWNEY (Admitted Pro Hac Vice)
LANCE A. WADE (Admitted Pro Hac Vice)
AMY MASON SAHARIA (Admitted Pro Hac Vice)
KATHERINE TREFZ (CA State Bar No. 262770)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Telephone: (202) 434-5000 │Facsimile: (202) 434-5029
Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

Attorneys for Defendant ELIZABETH A. HOLMES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CR-18-00258-EJD |
| Plaintiff, | ) |
| | ) **MS. HOLMES' MOTION TO EXCLUDE** |
| v. | ) **EVIDENCE OF REMEDIAL MEASURES AND** |
| | ) **SETTLEMENTS UNDER FEDERAL RULES OF** |
| | ) **EVIDENCE 401-403, 407, AND 408** |
| ELIZABETH HOLMES and | ) |
| RAMESH "SUNNY" BALWANI, | ) |
| | ) Date:    January 22, 2021 |
| Defendants. | ) Time:    10:00 AM |
| | ) CTRM:  4, 5th Floor |
| | ) |
| | ) Hon. Edward J. Davila |
| | ) |
| | ) |

1    <u>**MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS**</u>

2          PLEASE TAKE NOTICE that on January 22, 2021, at 10:00 a.m., or on such other date and time

3    as the Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose,

4    CA 95113, before the Honorable Edward J. Davila, Defendant Elizabeth Holmes will and hereby does

5    respectfully move the Court pursuant to 401-403, 407, and 408 of the Federal Rules of Evidence to

6    exclude evidence of Theranos' remedial measures.  The Motion is based on the below Memorandum of

7    Points and Authorities, the record in this case, and any other matters that the Court deems appropriate.

8

9    DATED: November 20, 2020

10

11                                              /s/ Amy Mason Saharia
                                                KEVIN DOWNEY
12                                              LANCE WADE
                                                AMY MASON SAHARIA
13                                              KATHERINE TREFZ
                                                Attorneys for Elizabeth Holmes
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
     SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
     CR-18-00258 EJD

                                              i

**<ins>TABLE OF CONTENTS</ins>**

**<ins>Page</ins>**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................................1

BACKGROUND ...............................................................................................................................1

ARGUMENT .....................................................................................................................................3

    I.      Evidence of Subsequent Remedial Measures and Settlements Is Irrelevant. .....................3

    II.     Rules 407 and 408 Bar the Evidence. ..................................................................................5

         A.     Rule 407 Bars Evidence of Subsequent Remedial Measures. ..................................5

         B.     Rule 408 Bars Evidence of the AGO and CMS Settlements. ..................................6

    III.    Rule 403 Bars This Evidence......................................................................................7

CONCLUSION................................................................................................................................10

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
CR-18-00258 EJD

**MEMORANDUM OF POINTS AND AUTHORITIES**

The lynchpin of the government's patient case is that Ms. Holmes represented to customers and investors that "Theranos could provide accurate, fast, reliable, and cheap blood tests" when she "knew Theranos's technology was, in fact, not capable of consistently producing accurate and reliable results." Third Superseding Indictment, ECF No. 469, ¶ 16. To prove this, the government proposes to use inadmissible, prejudicial evidence of settlements and remedial measures taken by Theranos. The Court should preclude the government from introducing such evidence.

In particular, the government has suggested that Theranos' decision to void a small percentage of Theranos' test results, made allegedly in response to a sanctions threat by the Centers for Medicaid and Medicare (CMS), constitutes "an admission [that] its prior statements were false." Ex. 3 at 68 (Sept. 28, 2020 Gov't Supp. Rule 404(b) Notice). But the document on which the government relies makes clear that Theranos took this step "out of an extreme abundance of caution," and *not* as an admission of any wrongdoing. Ex. 27 at 2 (THER-0534700). Similarly, the government has suggested that it intends to introduce evidence that Theranos decided to provide refunds to customers as part of a settlement with the Arizona Attorney General's Office in order to prove that test results were inaccurate, even though the settlement expressly disclaims any such admission. *See* ECF No. 267 at 2-3; *see also* Ex. 5 at 11 (Sept. 28, 2020 Gov't Supp. Rule 16 Disclosure). This evidence is not relevant to the charges against Ms. Holmes, is highly prejudicial, and is barred by the prohibition against evidence of subsequent remedial measures and settlements.

**BACKGROUND**

On January 25, 2016, CMS issued a letter to Theranos summarizing its finding of a recent review of Theranos' laboratory in Newark, California, pursuant to the Clinical Laboratory Improvement Amendments ("CLIA").[1] Ex. 12 (THPFM0002240153). The letter explained CMS's findings and included a "Form CMS-2567" with a list of deficiencies Theranos was instructed to correct. *Id.* at 1-2.

---

[1] Congress passed the Clinical Laboratory Improvement Amendments (CLIA) in 1988, establishing quality systems standards for all laboratory testing. Within the Centers for Medicare & Medicaid Services (CMS), State Survey Agencies enforce CLIA standards.

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
CR-18-00258 EJD

1

1    CMS cited Theranos for failing to meet five CLIA Condition-Level requirements, and several CLIA

2    Standard-Level requirements.[2] *Id.* Three of the Condition-Level requirements concerned issues with

3    Theranos laboratory personnel such as issues with its laboratory director and technical supervisor. *Id.* at

4    1. The other two concerned Theranos' compliance with CLIA regulations governing laboratory issues.

5    CMS did not find that Theranos' tests were inaccurate or unreliable. CMS warned Theranos that if it did

6    not remediate these deficiencies within 10 days, CMS would impose sanctions, which could include

7    revocation of the lab's CLIA certification and cancellation of the lab's approval for Medicare payments,

8    and which would effectively force the lab to cease operations. *Id.* at 2-3.

9        Theranos took aggressive and proactive steps to attempt to avoid the threatened sanctions. In a

10   letter dated April 1, 2016, Theranos explained that it had implemented new measures, including, "out of

11   an extreme abundance of caution and based on its dissatisfaction with prior [quality assurance] oversight

12   . . . void[ing] all results reported for the assays run on the Theranos Proprietary System 3.5 (TPS) in

13   2014 and 2015 and all reported PT/INR tests run on the Siemens Advia BCS XP instrument [from]

14   October 2014 through September of 2015." Ex. 27 at 2. Despite these steps, CMS imposed the

15   threatened sanctions. Ex. 30 (THPFM0004806442). Theranos appealed the sanctions in an

16   administrative proceeding.

17       On April 14, 2017, CMS entered a civil settlement with Theranos. Ex. 29 (SEC-CMS-E-

18   0000648). The settlement: (i) resolved all outstanding legal and regulatory proceedings between CMS

19   and Theranos; (ii) reduced Theranos' total civil monetary penalty to $30,000; (iii) prevented Theranos

20   from owning or operating a clinical lab for two years; (iv) withdrew CMS's revocation of Theranos'

21   CLIA operating certificates; and (v) withdrew Theranos' appeal of CMS's sanctions. Theranos

22   expressly did not admit to CMS's allegations in the settlement. *Id.* Ms. Holmes was not party to the

23   settlement.

24

25

26       [2] Condition-level deficiency means noncompliance with the conditions of certification as stated
27   in the CLIA regulations. 42 C.F.R. § 488.705. Standard-level deficiency means noncompliance with
     one or more of the standards that make up each condition. *Id.*

28   MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
     SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
     CR-18-00258 EJD

After that settlement, the Arizona Attorney General's Office ("AGO") brought a consumer fraud action against Theranos that also ended in a settlement. The AGO alleged that between 2013 and 2016, Theranos sold approximately 1.5 million blood tests to more than 175,000 Arizonans, resulting in nearly 8 million test results. Ex. 28 (TS-0936133). In April 2017, Theranos entered into a consent decree (the "Arizona Settlement") with the AGO settling the consumer fraud action. *Id.* The consent decree declared that Theranos: (i) would not own, operate, or direct any CLIA lab in Arizona for two years; and (ii) must pay $4.65 million in consumer restitution. Theranos reimbursed each Arizona customer the full amount paid for testing—regardless of whether the results were voided or corrected. *Id.* at 4. Theranos expressly denied the AGO's allegations in the settlement. *Id.* at 2-3. Ms. Holmes was not a party to the AGO's consumer fraud action or the settlement.

The government intends to introduce evidence of Theranos' remedial measures and settlement with the AGO in order to prove that "Theranos was unable to produce accurate and reliable test results" *See, e.g.*, Ex. 3 at 2-5, 68. For example, it alleges, "Theranos's voiding of [customers'] test[s] tends to show Theranos was unable to produce accurate and reliable test results." *Id.* at 3-5. The government similarly asserts that "[e]vidence Theranos voided tests is an admission its prior statements [regarding the accuracy and reliability of Theranos technology] were false." *Id.* at 68. The government has also suggested that it intends to introduce evidence that Theranos decided to provide refunds to customers as part of a settlement with the Arizona AGO in support of its allegation that Theranos' technology was not capable of producing accurate and reliable test results. *See* ECF No. 267 at 2-3.

## ARGUMENT

### I. Evidence of Subsequent Remedial Measures and Settlements Is Irrelevant.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. If evidence does not pass this standard, it is inadmissible. Fed. R. Evid. 402. Evidence of Theranos' remedial measures and settlements is irrelevant to the charges in this case.

First, evidence regarding Theranos' decision to void tests is not probative of whether Ms. Holmes intended to defraud investors or paying customers. The government seeks to admit evidence of

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
CR-18-00258 EJD

1    the voided tests to show that Theranos was not able to produce accurate and reliable results, Ex. 3 at 68,

2    and that Ms. Holmes' statements to the contrary were false, *id.* at 5.  But, when Theranos voided a small

3    percentage of its prior test results, it did not admit that Theranos' technology produced inaccurate

4    results.  Theranos made the voiding decision in the context of ongoing discussions with CMS in which

5    the company was trying to show its willingness to correct quality assurance procedures and lab oversight

6    issues cited by CMS, which had nothing to do with the accuracy of Theranos' tests results themselves.

7    *See, e.g.*, Ex. 12 at 18 (citing failure to maintain freezer temperature ranges consistent with

8    manufacturer's instructions).  Indeed, Theranos made clear that it was voiding the tests out of "an

9    extreme abundance of caution and based on its dissatisfaction with prior [quality assurance] oversight."

10   Ex. 27 at 2.  Theranos' decision to void tests because of uncertainty with how prior leadership operated

11   the laboratory and in an abundance of caution does not tend to prove that Theranos' technology was

12   incapable of consistently providing accurate and reliable results.  ECF No. 469, ¶ 16.

13          Second, evidence that Theranos entered settlements with CMS and the AGO is likewise

14   irrelevant.  Theranos' settlement with CMS does not admit regulatory violations.  And even if it did,

15   none of the violations cited by CMS showed that Theranos was incapable of consistently producing

16   accurate and reliable test results.  As a CMS inspector who surveyed the Theranos laboratories

17   explained, the purpose of the CMS inspections was only to evaluate whether the laboratories were

18   compliant with federal regulations, and not to determine if Theranos' tests were accurate.  Ex. 31 at

19   185:16-22 (Jan. 28, 2020 Bennet Dep.) ("[I]t's not [CMS's] job to determine whether a result is

20   accurate."); *see also* Ms. Holmes' Mot. To Exclude Evidence of CMS Findings and Sanctions.  Indeed,

21   CMS did not mandate that Theranos void any test results.  Theranos admitted nothing at all about that

22   issue.

23          As for the AGO settlement, Theranos expressly denied that it had "engaged in any unlawful

24   conduct, but has agreed to the entry of this Consent Decree in order to provide full reimbursement to

25   Arizona consumers who purchased Defendant's blood testing services[.]"  Ex. 28 at 2-3.  The AGO

26   consent decree explicitly states that it "should not be construed to be an admission by Defendant of any

27   liability" and that the "terms of the Consent Decree shall not be cited as evidence of wrongdoing by

28   MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
     SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
     CR-18-00258 EJD

1  Defendant or its successors and assigns." *Id.*  As a result, neither the fact of the settlement nor its terms

2  (including the refunds) tend to prove that Theranos was incapable of consistently providing accurate and

3  reliable results or any other fact of consequence in this action.  Accordingly, the Court should exclude

4  this evidence under Rules 401 and 402.

5  **II.      Rules 407 and 408 Bar the Evidence.**

6      **A.      Rule 407 Bars Evidence of Subsequent Remedial Measures.**

7        Even if Theranos' remedial steps to void tests were otherwise relevant, Rule 407 nonetheless

8  would require their exclusion.  "Under Federal Rule of Evidence 407, evidence of subsequent remedial

9  measures is not admissible to prove culpable conduct by the party taking those measures." *Gilliam v.*

10  *Am. Cas. Co., of Reading, Pennsylvania*, 735 F. Supp. 345, 351 n.9 (N.D. Cal. 1990).  The Rule also

11  prohibits use of these measures to show "a defect in a product or its design."  Fed. R. Evid. 407.  The

12  purpose of Rule 407 is to encourage parties to improve safety "conditions without fear that subsequent

13  measures will be used as evidence against them."  *Gauthier v. AMF, Inc.*, 788 F.2d 634, 637 (9th Cir.

14  1986).  "The courts have applied this principle to exclude evidence of subsequent repairs, installation of

15  safety devices, changes in company rules, and discharge of employees."  Fed. R. Evid. 407 advisory

16  committee's note; *see also Flaminio v. Honda Motor Co.*, 733 F.2d 463, 468 (7th Cir. 1984) (excluding

17  evidence of documents used to make design of product safer after accident); *Robertson v. McNeil-PPC*

18  *Inc.*, 2015 WL 12698313, at *7 (C.D. Cal. Mar. 20, 2015) (excluding evidence of recall of medication);

19  *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *9 (N.D. Cal. June 5, 2009) (noting that

20  any evidence of attempted repairs or new design would be inadmissible); *Benedict v. Zimmer, Inc.*, 405

21  F. Supp. 2d 1026, 1035-36 (N.D. Iowa 2005) (excluding evidence of a subsequent change in the design

22  of an artificial hip).

23        Rule 407 does not permit the government to introduce evidence relating to Theranos' remedial

24  measures.  The government seeks to offer evidence of Theranos' decision to void test results as proof of

25  culpability on the part of Ms. Holmes—*i.e.*, to improperly show that she falsely stated that Theranos'

26  tests were inaccurate and unreliable.  For example, the government's Rule 404(b) notice points to five

27  Theranos customers who allegedly received voided test results and seeks to introduce this fact as

28  MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
CR-18-00258 EJD

evidence that "Theranos was unable to provide accurate and reliable results." *See, e.g.*, Ex. 3 at 2-5. Similarly, the government seeks to introduce evidence of voided tests to show "Defendants' intent to defraud patients by depriving them of the information they believed they would receive when patronizing Theranos's services," *id.* at 74-75, and as an admission that their prior statements about Theranos' technology were false. *Id.* at 68. Each purpose is intended to support the government's argument that Ms. Holmes is culpable of wire fraud, in part because of statements about the accuracy and reliability of Theranos technology. Because the government seeks to admit evidence of subsequent remedial measures for the express purpose of showing culpability and a purported defect in Theranos' technology, the Court should exclude this evidence under Rule 407.[3]

### B. Rule 408 Bars Evidence of the AGO and CMS Settlements.

"Federal Rule of Evidence 408 governs the admissibility of evidence of conduct or statements made during settlement negotiations." *Manzo v. Cty. of Santa Clara*, 2019 WL 2866047, at *3 (N.D. Cal. July 3, 2019). It provides that "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" is inadmissible "either to prove or disprove . . . a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408; *see also Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) ("[E]vidence from settlement negotiations may not be considered in court when offered to prove liability." (internal quotation marks omitted)). The purpose of Rule 408 is to "ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail." *Rhoades*, 504 F.3d at 1161. While Rule 408 makes an exception for statements made in negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority when offered in a criminal case, Fed. R. Evid. 408(a)(2), the settlement itself remains inadmissible, *see* Fed. R. Evid. 408(a)(1); *see*

---

[3] Notably, the measures implemented by Theranos are among the measures that Department of Justice prosecutors consider in determining whether to prosecute corporations for misconduct. *See* Department of Justice Manual § 9-28.1000. It would be exceptionally unfair for the Department of Justice to encourage corporate CEOs to take remedial measures to attempt to avoid prosecution and then turn around and use the remedial measures as evidence of wrongdoing at trial.

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
CR-18-00258 EJD

1    *also id.* advisory committee's note ("An offer or acceptance of a compromise of any civil claim is

2    excluded under the Rule if offered against the defendant as an admission of fault.").

3        The government has indicated its intent to use the settlements for this prohibited purpose. In

4    prior brief, the government argued that the fact that Theranos "voided years of results from its

5    proprietary analyzer and refunded test fees to tens of thousands of patients after its misrepresentations

6    were exposed" proved that the test were unreliable and "worthless." ECF No. 267 at 11. Rule 408 bars

7    the introduction of settlement evidence for that purpose, because "an offer or acceptance of a

8    compromise is not very probative of the defendant's guilt" and "admitting such an offer or acceptance

9    could deter a defendant from settling a civil regulatory action, for fear of evidentiary use in a subsequent

10   criminal action." Fed. R. Evid. 408 advisory committee's note.

11       In *United States v. Hays*, for example, the government claimed that evidence of a settlement

12   agreement "assisted the jury in its understanding of the breadth of the conspiracy." 872 F.2d 582, 589

13   (5th Cir. 1989). The court in *Hays* ruled that the government's stated purpose for admitting the evidence

14   was "at direct odds with the clear mandates of Rule 408," and held that admission of evidence regarding

15   the settlement was in error. The court reasoned that "[t]he potential impact of evidence regarding a

16   settlement agreement with regard to a determination of liability is profound. It does not tax the

17   imagination to envision the juror who retires to deliberate with the notion that if the defendants had done

18   nothing wrong, they would not have [settled]." *Id.*

19       The same result should follow in this case. Admission of two settlements related to Theranos'

20   testing will invite the jury to assume that if Ms. Holmes did nothing wrong, Theranos would not have

21   entered settlements with two different entities. *Id.* The settlements should be excluded.

22   **III.   Rule 403 Bars This Evidence.**

23       Even if this evidence were relevant, it must be excluded because its "probative value is

24   substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the

25   jury." Fed. R. Evid. 403; *see also United States v. Hearst*, 563 F.2d 1331, 1336 (9th Cir. 1977).

26   Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper

27

28   MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
     SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
     CR-18-00258 EJD
                                        7

basis, commonly, though not necessarily, an emotional one." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

*United States v. PG&E* is instructive. There, the court ruled that the risk of unfair prejudice substantially outweighed the probative value of remedial measures an authoritative government agency imposed upon PG&E following its investigation of an explosion. *Id.* at 949. The court held that because the government had charged the defendant with violations of the Pipeline Safety Act regulations, remedial measures aimed at fixing deficiencies related to the regulation would be probative of the alleged violation of those regulations.[4] However, the court excluded the evidence, agreeing with PG&E that the risk the jury would assume that because an "authoritative government agency, imposed remedial measures, then PG&E is deserving of punishment" substantially outweighed any probative value. *Id.* (citing *Angelo v. Bacharach Instrument Co.*, 555 F.2d 1164, 1176 (3d Cir.1977) (holding that it was within the discretion of the trial judge to exclude an Equal Employment Opportunity Commission ("EEOC") determination letter because the probative value of the letter "was substantially outweighed by the dangers of unfair prejudice and misleading the jury inherent in an . . . EEOC evaluation of the ultimate factual issue in the case.")).

The same danger exists in this case. Evidence that Theranos invalidated certain test results in response to CMS's threatened sanctions will invite the jury to assume that Theranos admitted that the testing data was invalid. That assumption would be misleading and highly prejudicial. Theranos invalidated a small percentage of its total test results in a blanket fashion *independent of the accuracy of the tests*. And the probative value here is much lower than the evidence of remedial measures in *PG&E* because, unlike in *PG&E*, the government has *not* charged Ms. Holmes with willful violation of a regulatory regime and CMS did not itself find that Theranos' tests were inaccurate and unreliable. *See* 178 F. Supp. 3d at 949.

---

[4] Because the remedial measures were involuntary, the Court held that Rule 407 was not an automatic bar to the evidence's admission. 178 F. Supp. 3d at 951. In this case, Theranos' decision to void the tests was voluntary, and therefore Rule 407 applies.

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
CR-18-00258 EJD

1    The same danger exists with respect to the CMS and AGO settlements (and associated refunds).

2    Evidence of the settlements would serve no purpose beyond improperly suggesting to the jury that

3    Theranos and/or Ms. Holmes admitted fault on some level, and that CMS's and Arizona's claims against

4    the defendants were legitimate.  But litigants settle claims for various reasons, including the benefit of

5    ending a case quickly, and refunds are given for a variety of business purposes.  *See Stearn*, 2009 WL

6    1635931, at *9 (stating the "fact that [defendant] offered a full refund does not support the theory that it

7    had a plan to deceive Plaintiffs").  Furthermore, the differing evidentiary burdens in civil versus criminal

8    proceedings risk misleading the jury as to Ms. Holmes' liability.  *See Trout v. Milton S. Hershey Med.*

9    *Ctr.*, 572 F. Supp. 2d 591, 596 (M.D. Pa. 2008)  ("Settlement agreements . . . are inadmissible regardless

10   of relevance if offered to establish liability for or the amount of a claim or if introduction thereof would

11   result in undue prejudice to an opposing party.").

12   In *United States v. Davis*, for example, the court held that, even if the government sought to

13   admit a settlement for a purpose other than proving the defendant's guilt, it was inadmissible under Rule

14   403 because it was unfairly prejudicial.  2009 WL 3646459, at *5 (E.D. Pa. Nov. 4, 2009).  The court

15   reasoned that the limited probative value of the evidence was outweighed by the "risk that a jury will

16   view the agreement as a confession of liability and guilt, regardless of the purpose for which the

17   evidence is received."  *Id.*  The court observed that this prejudice was so great that "[e]ven a carefully

18   crafted limiting instruction might not eliminate the prejudicial effect of the agreement."  *Id.*

19   Finally, the evidence that Theranos voided tests and settled with CMS and the AGO is

20   inadmissible because its admission would necessarily require time-consuming mini-trials.  Ms. Holmes

21   would be forced to rebut the government's allegations that these actions demonstrate knowledge of

22   inaccurate tests.  Doing so would require an extensive presentation of evidence about the decisions to

23   void the tests and circumstances under which the settlements were executed, including the regulatory

24   backdrop for CMS's actions.  *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013 WL 6535164, at *1

25   (C.D. Cal. Dec. 9, 2013) ("[A]llowing [the parties] to introduce this evidence would result in a series of

26   'mini-trials' regarding the grounds for the decisions and the regulatory schemes of the various states

27   involved." (internal quotation marks and citation omitted (alteration in original)); *see also  Van v.*

28   MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
     SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
     CR-18-00258 EJD

                                                       9

1    *Language Line Servs.*, Inc., 2016 WL 3566980, at *3 (N.D. Cal. June 30, 2016) (excluding evidence of

2    settlement to avoid mini-trial on the meaning of the provisions in the settlement agreement). And Ms.

3    Holmes' ability to present the full picture of the reasons for these actions may well be compromised by

4    the extensive involvement of attorneys in these decisions. Because the danger of unfair prejudice and

5    jury confusion substantially outweighs any probative value of this evidence, the Court should also

6    exclude it under Rule 403.

7                                          **CONCLUSION**

8            For the foregoing reasons, Ms. Holmes respectfully requests an order precluding the government

9    from introducing any evidence of subsequent remedial measures taken by Theranos, including voiding

10   or refunding of tests, and the settlements with CMS and the Arizona Attorney General Office.

11

12   DATED: November 20, 2020                      Respectfully submitted,

13

14                                                 /s/ Amy Mason Saharia
                                                   KEVIN DOWNEY
15                                                 LANCE WADE
                                                   AMY MASON SAHARIA
16                                                 KATHERINE TREFZ
                                                   Attorneys for Elizabeth Holmes
17

18

19

20

21

22

23

24

25

26

27

28
     MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
     SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407, AND 408
     CR-18-00258 EJD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2020 a copy of this filing was delivered via ECF on all counsel of record.


/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' MOTION TO EXCLUDE EVIDENCE OF REMEDIAL MEASURES AND
SETTLEMENTS UNDER FEDERAL RULES OF EVIDENCE 401-403, 407 AND 408
CR-18-00258 EJD