# EXHIBIT 58

1

2                    UNITED STATES DISTRICT COURT

3                   NORTHERN DISTRICT OF CALIFORNIA

4                        SAN JOSE DIVISION

5

     UNITED STATES OF AMERICA,          )
6                                       )  CR-18-00258-EJD
                      PLAINTIFF,        )
7                                       )  SAN JOSE, CALIFORNIA
             VS.                        )
8                                       )  SEPTEMBER 1, 2022
     ELIZABETH A. HOLMES,               )
9                                       )  PAGES 1 - 61
                      DEFENDANT.        )
10   _____   )
                                        )
11                      TRANSCRIPT OF PROCEEDINGS
12              BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13   A P P E A R A N C E S:

14
     FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                          BY:  JOHN C. BOSTIC
                                 JEFFREY B. SCHENK
16                          150 ALMADEN BOULEVARD, SUITE 900
                            SAN JOSE, CALIFORNIA 95113
17
                            BY:  ROBERT S. LEACH
18                               KELLY VOLKAR
                            1301 CLAY STREET, SUITE 340S
19                          OAKLAND, CALIFORNIA 94612

20        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
     OFFICIAL COURT REPORTERS:
22                          IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074
23                          LEE-ANNE SHORTRIDGE, CSR, CRR
                            CERTIFICATE NUMBER 9595
24        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
25

2

1

2          A P P E A R A N C E S: (CONT'D)

3

FOR DEFENDANT HOLMES:    WILLIAMS & CONNOLLY LLP
                         BY:  KEVIN M. DOWNEY
4                              AMY SAHARIA
                               KATHERINE TREFZ
5                              J.R. FLEURMONT
                         725 TWELFTH STREET, N.W.
6                        WASHINGTON, D.C. 20005

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA                         SEPTEMBER 1, 2022 |
| 10:33AM  2 | P R O C E E D I N G S |
| 10:33AM  3 | (COURT CONVENED AT 10:33 A.M.) |
| 10:33AM  4 | THE COURT:  WE HAD ANOTHER MATTER.  THE JURY IS OUT |
| 10:33AM  5 | IN ANOTHER MATTER.  I HOPE THAT DOESN'T INTERRUPT THIS MATTER. |
| 10:33AM  6 | LET'S CALL THIS MATTER.  THIS IS 18-258, UNITED STATES |
| 10:33AM  7 | VERSUS ELIZABETH HOLMES. |
| 10:33AM  8 | LET ME FIRST CAPTURE THE APPEARANCE OF THE PARTIES, |
| 10:33AM  9 | PLEASE. |
| 10:33AM 10 | WHO APPEARS FOR THE GOVERNMENT? |
| 10:33AM 11 | MS. VOLKAR:  GOOD MORNING, YOUR HONOR. |
| 10:33AM 12 | WONDERFUL TO BE BACK BEFORE YOU. |
| 10:34AM 13 | THE COURT:  THANK YOU. |
| 10:34AM 14 | MS. VOLKAR:  KELLY VOLKAR ON BEHALF OF THE UNITED |
| 10:34AM 15 | STATES, AND I'M JOINED BY MY COLLEAGUES, ROBERT LEACH, |
| 10:34AM 16 | JOHN BOSTIC, AND JEFFREY SCHENK. |
| 10:34AM 17 | AND IF IT'S ALL RIGHT WITH THE COURT, I WOULD LIKE TO |
| 10:34AM 18 | REMOVE MY MASK. |
| 10:34AM 19 | THE COURT:  PLEASE.  GO RIGHT AHEAD.  THANK YOU FOR |
| 10:34AM 20 | THAT.  IT'S NICE TO SEE EVERYONE. |
| 10:34AM 21 | MS. VOLKAR:  THANK YOU. |
| 10:34AM 22 | THE COURT:  AND FOR THE DEFENSE? |
| 10:34AM 23 | MS. SAHARIA:  GOOD MORNING, YOUR HONOR. |
| 10:34AM 24 | ON BEHALF OF THE DEFENSE, AMY SAHARIA.  WITH ME AT COUNSEL |
| 10:34AM 25 | TABLE IS KEVIN DOWNEY, KATHERINE TREFZ AND J.R. FLEURMONT, AND |

| | | |
|---|---|---|
| 10:34AM | 1 | MS. HOLMES IS PRESENT. |
| 10:34AM | 2 | THE COURT: GOOD MORNING. IT'S NICE TO SEE |
| 10:34AM | 3 | EVERYONE. |
| 10:34AM | 4 | MS. SAHARIA: GOOD MORNING. |
| 10:34AM | 5 | THE COURT: THIS IS MS. HOLMES'S RULE 29 MOTION |
| 10:34AM | 6 | HEARING. I'VE RECEIVED PLEADINGS FROM THE PARTIES, THANK YOU |
| 10:34AM | 7 | FOR THAT. |
| 10:34AM | 8 | I'VE READ AND REVIEWED THOSE, AS WELL AS REVIEWED THE |
| 10:34AM | 9 | RECORD AND THE ITEMS MENTIONED IN YOUR PLEADINGS. |
| 10:34AM | 10 | I'M HAPPY TO HEAR FROM YOU IF YOU WOULD LIKE TO BE HEARD |
| 10:34AM | 11 | AS TO ANY AUGMENTATION OF THE PLEADINGS, ANYTHING ELSE YOU |
| 10:35AM | 12 | WOULD LIKE ME TO KNOW. |
| 10:35AM | 13 | MS. SAHARIA, IT'S YOUR MOTION. WHY DON'T WE HEAR FROM YOU |
| 10:35AM | 14 | FIRST? |
| 10:35AM | 15 | MS. SAHARIA: SURE. THANK YOU, YOUR HONOR. I WILL |
| 10:35AM | 16 | TRY TO BE BRIEF, BUT I'D LIKE TO COVER A FEW POINTS. |
| 10:35AM | 17 | THE COURT: SURE. |
| 10:35AM | 18 | MS. SAHARIA: LET ME START WITH FIVE LEGAL |
| 10:35AM | 19 | PRINCIPLES THAT I THINK INFORM THE COURT'S RESOLUTION OF THIS |
| 10:35AM | 20 | MOTION BEFORE I TURN TO THE SUBSTANTIVE COUNTS. |
| 10:35AM | 21 | THE FIRST IS THAT BECAUSE THE COURT RESERVED RULING ON |
| 10:35AM | 22 | MS. HOLMES'S MOTION AT THE END OF GOVERNMENT'S CASE, THE RECORD |
| 10:35AM | 23 | ON THIS MOTION IS LIMITED TO THE RECORD AS IT EXISTED AT THAT |
| 10:35AM | 24 | TIME. I THINK THE PARTIES ARE IN AGREEMENT ON THAT. THAT IS |
| 10:35AM | 25 | GOVERNED BY RULE 20(B). |

5

10:35AM  1      THE SECOND RELATES TO THE HUNG COUNTS.  SO AS THE COURT

10:35AM  2  KNOWS, THE JURY HUNG ON THREE COUNTS.  THOSE ARE COUNTS THREE

10:35AM  3  THROUGH FIVE, WHICH ARE SUBSTANTIVE WIRE FRAUD COUNTS.

10:35AM  4      AND MS. HOLMES DID MOVE ON THOSE COUNTS AT THE END OF THE

10:35AM  5  GOVERNMENT'S CASE.  UNDER RULE 29(B), THE COURT MAY RULE ON THE

10:35AM  6  MOTION FOR JUDGMENT OF ACQUITTAL AT THIS TIME ON THOSE COUNTS

10:35AM  7  AS WELL.

10:35AM  8      IF THE COURT WERE TO DENY THE MOTION FOR JUDGMENT OF

10:35AM  9  ACQUITTAL ON THOSE COUNTS, WE WOULD URGE THE COURT TO GRANT THE

10:36AM 10  GOVERNMENT'S PENDING MOTION TO DISMISS THOSE COUNTS, WHICH FOR

10:36AM 11  THE RECORD IS ECF 1255.  THAT DISMISSAL DOES REQUIRE LEAVE OF

10:36AM 12  COURT UNDER RULE 48(A).

10:36AM 13      THE THIRD IS A POINT THAT GOES BACK TO THE JURY

10:36AM 14  INSTRUCTIONS AND THE CHARGE CONFERENCE IN THIS CASE.

10:36AM 15      THE COURT MIGHT RECALL, ALTHOUGH IT'S NOW BEEN A WHILE,

10:36AM 16  THAT AT THE LAST MINUTE --

10:36AM 17      AM I ECHOING TOO MUCH?

10:36AM 18          THE COURT:  NO.

10:36AM 19          MS. SAHARIA:  -- THAT THE GOVERNMENT DROPPED AT THE

10:36AM 20  LAST MINUTE AN OMISSION THEORY IN THIS CASE.

10:36AM 21      SO THERE'S NO CLAIM IN THIS CASE THAT MS. HOLMES OWED A

10:36AM 22  DUTY OF DISCLOSURE TO INVESTORS.

10:36AM 23      THE GOVERNMENT CAN'T PREMISE A CONVICTION ON ARGUMENTS

10:36AM 24  THAT SHE SHOULD HAVE DISCLOSED INFORMATION, THAT SHE CONCEALED

10:36AM 25  INFORMATION, THAT SHE HID INFORMATION.

10:36AM 1     THE GOVERNMENT NEEDS TO POINT TO AFFIRMATIVE STATEMENTS

10:36AM 2  THAT WERE EITHER FALSE OR MISLEADING HALF-TRUTHS TO SUSTAIN THE

10:37AM 3  CONVICTION IN THIS CASE.

10:37AM 4     THE FOURTH AND FIFTH POINT RELATE TO TWO POINTS THE

10:37AM 5  GOVERNMENT MADE IN ITS SURREPLY THAT I WANT TO MAKE SURE THAT I

10:37AM 6  ADDRESS.

10:37AM 7     THE FIRST IS THE GOVERNMENT'S CLAIM THAT MS. HOLMES ONLY

10:37AM 8  CHALLENGED ONE ELEMENT OF WIRE FRAUD.  THEY MADE THIS POINT AT

10:37AM 9  PAGE 1 OF THE SURREPLY.

10:37AM 10     THAT'S NOT CORRECT.

10:37AM 11     OUR ARGUMENTS RELATE BOTH TO WHETHER MISREPRESENTATIONS

10:37AM 12  WERE MADE AS PART OF THE SCHEME TO DEFRAUD, BUT ALSO WHETHER

10:37AM 13  THERE WAS INTENT TO DEFRAUD, WHICH IS AN ADDITIONAL ELEMENT OF

10:37AM 14  WIRE FRAUD.

10:37AM 15     WE EXPRESSLY ARGUED IN OUR BRIEF THAT MS. HOLMES DID NOT

10:37AM 16  MAKE MISREPRESENTATIONS, AND THAT SHE DIDN'T KNOW SHE WAS

10:37AM 17  MAKING MISREPRESENTATIONS.  AND, OF COURSE, IF SHE DIDN'T KNOW

10:37AM 18  SHE WAS MAKING MISREPRESENTATIONS, SHE DIDN'T HAVE THE INTENT

10:37AM 19  TO DEFRAUD INVESTORS.

10:37AM 20     I WOULD POINT THE COURT, JUST FOR SOME EXAMPLES, TO

10:37AM 21  PAGES 9, 11, 12, AND 18 OF OUR BRIEF FOR SOME EXAMPLES OF THOSE

10:37AM 22  KINDS OF ARGUMENTS.  SO I JUST WANTED TO MAKE THAT POINT CLEAR.

10:38AM 23     THE FIFTH POINT RELATES TO THE PARTIES' DISCUSSION OF THE

10:38AM 24  PRINCIPLES OF CONSTRUCTIVE AMENDMENT AND VARIANCE IN OUR BRIEF.

10:38AM 25     THE GOVERNMENT IS WRONG TO ARGUE THAT WE ARE BRINGING AN

10:38AM 1     UNTIMELY RULE 33 MOTION.  WE HAVE NOT FILED A RULE 33 MOTION.

10:38AM 2     WE ARE NOT ASKING THE COURT FOR A NEW TRIAL ON THESE GROUNDS.

10:38AM 3         OUR ARGUMENT IS SIMPLY THAT THE GOVERNMENT HAS NOT PROVEN

10:38AM 4     THE ALLEGATIONS IN THE INDICTMENT, THAT IS ITS BURDEN, AND THE

10:38AM 5     GOVERNMENT CAN'T COME INTO COURT AND TRY TO SAVE A FAULTY

10:38AM 6     VERDICT WITH AN ARGUMENT THAT IT PROVED SOMETHING ELSE.

10:38AM 7         WHETHER THAT SOMETHING ELSE AMENDS THE INDICTMENT OR

10:38AM 8     WHETHER IT VARIES THE INDICTMENT, THAT IS NOT A VALID DEFENSE

10:38AM 9     TO A RULE 29 MOTION.

10:38AM 10         THE COURT:  SO YOUR POSITION -- I'M SORRY TO

10:38AM 11     INTERRUPT YOU.

10:38AM 12         MS. SAHARIA:  YES.

10:38AM 13         THE COURT:  YOUR POSITION ON THIS IS THAT IT'S A

10:38AM 14     FAILURE OF PROOF --

10:38AM 15         MS. SAHARIA:  EXACTLY, YOUR HONOR.

10:38AM 16         THE COURT:  -- AS OPPOSED TO A MOTION THAT SPEAKS TO

10:38AM 17     THE EVIDENCE THAT WAS MORE PROPERLY RAISED IN A RULE 33

10:38AM 18     CONCEPT.

10:39AM 19         MS. SAHARIA:  EXACTLY, YOUR HONOR.

10:39AM 20      AND IF THE COURT HAD ANY DOUBT ABOUT THAT, I WOULD POINT

10:39AM 21     THE COURT TO THE FIFTH CIRCUIT'S DECISION IN CHAMBERS WHICH WE

10:39AM 22     CITED IN OUR BRIEF, IT'S 408 F.3D 237, IT'S A 2005 DECISION BY

10:39AM 23     THE FIFTH CIRCUIT, AND IN THAT CASE THE COURT IN FOOTNOTE 6

10:39AM 24     EXPRESSLY ADDRESSES THE DISTINCTION BETWEEN A RULE 29 MOTION

10:39AM 25     FOR JUDGMENT OF ACQUITTAL ON THE GROUND THAT THE GOVERNMENT

| | |
|---|---|
| 10:39AM | 1 |
| 10:39AM | 2 |
| 10:39AM | 3 |
| 10:39AM | 4 |
| 10:39AM | 5 |
| 10:39AM | 6 |
| 10:39AM | 7 |
| 10:39AM | 8 |
| 10:39AM | 9 |
| 10:39AM | 10 |
| 10:40AM | 11 |
| 10:40AM | 12 |
| 10:40AM | 13 |
| 10:40AM | 14 |
| 10:40AM | 15 |
| 10:40AM | 16 |
| 10:40AM | 17 |
| 10:40AM | 18 |
| 10:40AM | 19 |
| 10:40AM | 20 |
| 10:40AM | 21 |
| 10:40AM | 22 |
| 10:41AM | 23 |
| 10:41AM | 24 |
| 10:41AM | 25 |

PROVE SOMETHING OTHER THAN THE INDICTMENT ALLEGATIONS IN A
RULE 33 MOTION, AND OUR ARGUMENTS ARE PREMISED SQUARELY IN
ACQUITTAL.

ANOTHER CASE FOR THAT PROPOSITION IS THE NINTH CIRCUIT'S
DECISION IN TSINHNAHIJINNIE, WHICH I'M SURE TO BUTCHER, I'LL
SPELL IT, IT'S T-S-I-N-H-N-A-H-I-J-I-N-N-I-E, AND THAT'S A CASE
WHERE THE NINTH CIRCUIT HELD THAT THE DEFENDANT WAS ENTITLED TO
JUDGMENT OF ACQUITTAL BECAUSE THE GOVERNMENT DIDN'T PROVE THE
INDICTMENT ALLEGATIONS EVEN THOUGH IT PROVED SOMETHING ELSE.

SO WITH THOSE LEGAL PRINCIPLES AND THE BACKGROUND, LET ME
BRIEFLY ADDRESS THE RELEVANT COUNTS.  I'LL START WITH
CONSPIRACY.

AS THE COURT KNOWS, THE TWO ELEMENTS OF CONSPIRACY --

THE COURT:  COULD I ASK YOU FOR TO PAUSE FOR JUST A
SECOND.  I APOLOGIZE TO YOU.

I THINK I TOLD YOU WE HAVE A JURY OUT.

MS. SAHARIA:  YES.

THE COURT:  AND I'VE JUST BEEN HANDED THREE
QUESTIONS.

MS. SAHARIA:  UH OH.

IT'S A VERY INQUISITIVE JURY, YOUR HONOR.

(PAUSE IN PROCEEDINGS.)

THE COURT:  YOU KNOW, I THINK -- I DO BEG YOUR
PARDON, BUT I THINK I SHOULD TAKE THESE QUESTIONS UP TO GET THE
JURY THE INFORMATION THAT THEY NEED, AND I WANT TO JUST STOP

9

| 10:41AM | 1 | YOU, MS. SAHARIA, BEFORE YOU BEGIN THE ARGUMENT.  I THINK IT'S |
| 10:41AM | 2 | BETTER TO STOP THERE RATHER THAN IN MID-ARGUMENT. |
| 10:41AM | 3 | MS. SAHARIA:  I APOLOGIZE. |
| 10:41AM | 4 | THE COURT:  SO LET'S TAKE A BREAK IN THIS CASE. |
| 10:41AM | 5 | MS. SAHARIA:  UH-HUH, SURE. |
| 10:41AM | 6 | THE COURT:  WE'LL TURN OUR ATTENTION TO THE TRIAL, |
| 10:41AM | 7 | AND WE'LL TRY TO ANSWER THESE QUESTIONS THAT THEY HAVE. |
| 10:41AM | 8 | YOU MAY WANT TO REMAIN THERE. |
| 10:41AM | 9 | MS. SAHARIA:  OF COURSE, YOUR HONOR.  WE'LL SIT IN |
| 10:41AM | 10 | THE GALLERY. |
| 10:41AM | 11 | MS. VOLKAR:  THANK YOU, YOUR HONOR. |
| 10:41AM | 12 | (RECESS FROM 10:41 A.M. UNTIL 11:29 A.M.) |
| 11:29AM | 13 | THE COURT:  THANK YOU.  WE'RE BACK ON THE RECORD IN |
| 11:29AM | 14 | THE HOLMES MATTER.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT |
| 11:29AM | 15 | ONCE AGAIN. |
| 11:29AM | 16 | THANK YOU FOR YOUR PATIENCE. |
| 11:29AM | 17 | MS. SAHARIA, DO YOU WANT TO COME FORWARD? |
| 11:29AM | 18 | MS. SAHARIA:  THANK YOU, YOUR HONOR. |
| 11:29AM | 19 | I THINK WHEN WE BROKE I WAS JUST ABOUT TO TURN TO |
| 11:29AM | 20 | CONSPIRACY, WHICH IS COUNT ONE OF THE INDICTMENT. |
| 11:29AM | 21 | AS THE COURT KNOWS, THERE'S TWO ELEMENTS OF CONSPIRACY: |
| 11:29AM | 22 | FIRST, AN AGREEMENT BETWEEN MS. HOLMES AND MR. BALWANI TO |
| 11:29AM | 23 | COMMIT WIRE FRAUD AGAINST INVESTORS; AND THE SECOND THAT |
| 11:29AM | 24 | MS. HOLMES BECAME A MEMBER OF THE CONSPIRACY BY PARTICIPATING |
| 11:29AM | 25 | IN A PLAN TO COMMIT WIRE FRAUD. |

11:29AM 1       IN THIS CASE THOSE TWO ELEMENTS, I THINK, COLLAPSE INTO

11:29AM 2    THE SAME GENERAL POINT.  OUR POINT IS THAT THE GOVERNMENT

11:29AM 3    DIDN'T PROVE EITHER ELEMENT FOR ESSENTIALLY THE SAME REASON.

11:29AM 4    THERE IS SIMPLY NO EVIDENCE OF AN AGREEMENT OR A MEETING OF THE

11:29AM 5    MINDS BETWEEN MS. HOLMES AND MR. BALWANI.

11:30AM 6       THE EVIDENCE YOU TYPICALLY SEE IN A CONSPIRACY CASE IS

11:30AM 7    ABSENT HERE.  THERE'S NO COOPERATOR WHO TESTIFIED TO BEING PART

11:30AM 8    OF THE CONSPIRACY.  THERE'S NO RECORDINGS BETWEEN MS. HOLMES

11:30AM 9    AND MR. BALWANI.

11:30AM 10      THE GOVERNMENT HAD ACCESS TO MS. HOLMES'S AND

11:30AM 11   MR. BALWANI'S EMAILS FROM THERANOS.  THEY DON'T REALLY CITE ANY

11:30AM 12   EMAIL THAT THEY CLAIM SHOWS A CONSPIRACY TO DEFRAUD INVESTORS.

11:30AM 13      THEY RELY EXCLUSIVELY, ALMOST EXCLUSIVELY, I BELIEVE, ON

11:30AM 14   TEXT MESSAGES.

11:30AM 15      THE GOVERNMENT HAD ACCESS TO YEARS UPON YEARS OF PRIVATE,

11:30AM 16   CANDID TEXT MESSAGES BETWEEN MS. HOLMES AND MR. BALWANI.

11:30AM 17      AS THE COURT KNOWS, THERE WAS QUITE A LOT OF LITIGATION

11:30AM 18   AROUND THOSE TEXT MESSAGES.  THERE ARE THOUSANDS OF TEXT

11:30AM 19   MESSAGES SPANNING THOUSANDS OF PAGES.

11:30AM 20      THERE'S NO EVIDENCE IN THOSE TEXT MESSAGES OF AN AGREEMENT

11:30AM 21   BETWEEN MS. HOLMES OR MR. BALWANI TO DEFRAUD INVESTORS.

11:30AM 22   THERE'S NO MESSAGES DISCUSSING LYING TO INVESTORS.  THERE'S NO

11:30AM 23   MESSAGES DISCUSSING DEFRAUDING INVESTORS.

11:31AM 24      IN FACT, THE TEXT MESSAGES SHOW THE VERY OPPOSITE.  THEY

11:31AM 25   SHOW TWO PEOPLE WHO BELIEVED IN THE COMPANY'S TECHNOLOGY, WHO

11:31AM 1  BELIEVED IN THE COMPANY AND BELIEVED THAT THEY WERE ENGAGED IN

11:31AM 2  A MISSION TO DO GOOD, TO IMPROVE ACCESS TO HEALTH CARE.

11:31AM 3      AND THEY SHOW THAT WHEN "THE WALL STREET JOURNAL" SURFACED

11:31AM 4  ALLEGATIONS REGARDING THERANOS IN 2015, THEY WEREN'T PANICKED

11:31AM 5  THAT THOSE ALLEGATIONS WOULD UNCOVER A FRAUD.  THEY WERE

11:31AM 6  LEGITIMATELY CONCERNED THAT THE REPORTING WAS WRONG, AND THAT'S

11:31AM 7  WHAT THOSE TEXT MESSAGES SHOW.

11:31AM 8      I WOULD POINT THE COURT, FOR EXAMPLE, TO 5387D, PAGE 78

11:31AM 9  WHERE THEY SAY "THE CD CALCULATIONS WE ACTUALLY HAVE NOW

11:31AM 10  SUBMITTED TO FDA.  SO THAT'S ANOTHER LEG CHOPPED OFF CARREYROU,

11:31AM 11  'THE WALL STREET JOURNAL REPORTER.'"

11:31AM 12      THESE MESSAGES SHOW THAT MS. HOLMES AND MR. BALWANI SHOWED

11:31AM 13  THAT THEIR DATA VALIDATED THE TECHNOLOGY AND THAT THAT WOULD

11:32AM 14  SHOW "THE WALL STREET JOURNAL" TO BE WRONG.

11:32AM 15      SO IN ITS BRIEFING, THE GOVERNMENT TRIES TO FILL THIS HOLE

11:32AM 16  IN THE EVIDENCE WITH RESPECT TO AN AGREEMENT IN TWO WAYS.  THE

11:32AM 17  FIRST IS TO POINT TO EVIDENCE THAT MS. HOLMES AND MR. BALWANI

11:32AM 18  COMANAGED THE COMPANY AND COMMUNICATED ABOUT THE COMPANY'S

11:32AM 19  OPERATIONS.

11:32AM 20      OF COURSE, THAT IN AND OF ITSELF CANNOT BE EVIDENCE OF A

11:32AM 21  CRIME.  THEY WERE, AFTER ALL, CEO AND COO, AND OF COURSE THEY

11:32AM 22  COMMUNICATED ALL OF THE TIME ABOUT THE COMPANY.

11:32AM 23      THE GOVERNMENT POINTS TO THE TEXT MESSAGES TO SHOW THAT

11:32AM 24  THE TWO OF THEM WERE COMMUNICATING ABOUT VARIOUS ASPECTS OF THE

11:32AM 25  COMPANY'S OPERATIONS, BUT ONLY ONE OF THOSE BUCKETS OF

11:32AM 1    COMMUNICATIONS RELATES TO ACTUAL COMMUNICATIONS TO INVESTORS,

11:32AM 2    AND THIS IS THE BUCKET THE GOVERNMENT CALLS COMMUNICATIONS

11:32AM 3    REGARDING POTENTIAL INVESTORS.

11:32AM 4        NEARLY ALL OF THE MESSAGES THAT THEY CITE ONLY DISCUSS

11:33AM 5    DETAILS SUCH AS THE AMOUNT OF INVESTMENTS.  THEY ONLY CITE ONE

11:33AM 6    EXAMPLE OF A TEXT MESSAGE THAT RELATES TO THE CONTENT OF ANY

11:33AM 7    COMMUNICATIONS TO INVESTORS.

11:33AM 8        THAT'S AT EXHIBIT 5387D AT PAGE 32.  THE TEXT MESSAGE

11:33AM 9    SAYS, "ARE THERE ANY MATERIALS IN THE BINDERS THAT YOU THINK

11:33AM 10   SHOULD BE REMOVED FROM MURDOCH NEWS CORP?"

11:33AM 11       THAT'S IT.  THAT'S THE ONLY EXAMPLE THAT THEY HAVE.

11:33AM 12       WE SAID IN OUR BRIEF THAT WAS THE ONLY EXAMPLE THEY HAVE,

11:33AM 13   AND THEY DIDN'T COME BACK WITH ANY MORE.

11:33AM 14       AND THEIR SURREPLY -- AND NO ONE WOULD REASONABLY INFER

11:33AM 15   FROM THAT MUNDANE TEXT MESSAGE AN AGREEMENT TO DEFRAUD

11:33AM 16   MR. MURDOCH OR ANY OTHER INVESTOR.

11:33AM 17       THE OTHER WAY THE GOVERNMENT TRIES TO FILL THIS HOLE WITH

11:33AM 18   RESPECT TO LACK OF AN AGREEMENT IS TO POINT TO WHAT THEY CALL

11:33AM 19   "MOTIVE EVIDENCE," AND THEY SAY THAT MS. HOLMES AND MR. BALWANI

11:33AM 20   HAD A MOTIVE TO GET INVESTMENTS TO KEEP THE COMPANY AFLOAT.

11:33AM 21       WE CITED TO THE COURT THE GOYAL CASE FROM THE

11:34AM 22   NINTH CIRCUIT, THAT'S U.S. V. GOYAL, 629 F.3D 912.  WE THINK

11:34AM 23   THAT CASE IS RIGHT ON POINT.  THERE THE NINTH CIRCUIT REVERSED

11:34AM 24   A CONVICTION AND REJECTED THE GOVERNMENT'S ARGUMENT THAT THE

11:34AM 25   JURY COULD INFER FRAUDULENT INTENT FROM THE DEFENDANT'S DESIRE

| | |
|---|---|
| 11:34AM 1 | TO MEET REVENUE TARGETS.  THEY POINTED OUT THAT'S WHAT ALL GOOD |
| 11:34AM 2 | CORPORATE EXECUTIVES WOULD DO. |
| 11:34AM 3 | SO TO HEAR THAT MS. HOLMES AND MR. BALWANI OF COURSE |
| 11:34AM 4 | WANTED TO INCREASE THE COMPANY'S REVENUE AND KEEP THE COMPANY |
| 11:34AM 5 | AFLOAT, AND THAT FACT IN AND OF ITSELF CAN'T SUBSTITUTE FOR THE |
| 11:34AM 6 | LACK OF AN AGREEMENT. |
| 11:34AM 7 | THE MOTIVE EVIDENCE ALSO FAILS ON ITS FACTS, AND I'LL JUST |
| 11:34AM 8 | MAKE TWO POINTS BASED ON THE GOVERNMENT'S ARGUMENTS IN ITS |
| 11:34AM 9 | SURREPLY. |
| 11:34AM 10 | FIRST, THE GOVERNMENT HIGHLIGHTS THE FACT THAT THE COMPANY |
| 11:34AM 11 | WAS SHORT ON CASH IN 2009.  THAT'S BEFORE THE CONSPIRACY |
| 11:34AM 12 | PERIOD, AND SO YOU CAN'T PROVE AN AGREEMENT TO DEFRAUD |
| 11:35AM 13 | INVESTORS DURING THE CONSPIRACY PERIOD WHICH STARTED IN 2010. |
| 11:35AM 14 | IN THEIR SURREPLY AT PAGE 4, THE GOVERNMENT MAKES THE |
| 11:35AM 15 | ARGUMENT FOR THE FIRST TIME THAT BECAUSE MR. BALWANI GUARANTEED |
| 11:35AM 16 | A LINE OF CREDIT FOR THE COMPANY IN 2009, THE JURY COULD INFER |
| 11:35AM 17 | IN 2010 THAT THE TWO OF THEM WERE ENGAGED IN A CONSPIRACY TO |
| 11:35AM 18 | GET MONEY TO PAY BACK THE LINE OF CREDIT THAT MR. BALWANI HAD |
| 11:35AM 19 | SECURED OR GUARANTEED. |
| 11:35AM 20 | THERE'S NO EVIDENCE OF THAT.  THEY DIDN'T EVEN ARGUE THAT |
| 11:35AM 21 | THEORY TO THE JURY IN THIS CASE. |
| 11:35AM 22 | THE SECOND IS THAT THE GOVERNMENT POINTS -- THIS IS ALSO |
| 11:35AM 23 | AT PAGE 4 OF THE SURREPLY -- TO THE EVIDENCE THAT THERANOS WAS |
| 11:35AM 24 | DOWN TO 15 MILLION IN CASH IN NOVEMBER OF 2013. |
| 11:35AM 25 | BUT NO EVIDENCE TIES THAT FACT TO ANY REPRESENTATIONS TO |

11:35AM  1    INVESTORS, TO ANY DECISION TO LAUNCH A ROUND OF FUNDRAISING IN

11:35AM  2    2013.

11:35AM  3         IN FACT, THE EVIDENCE SHOWS THAT THE COMPANY WAS EXPECTING

11:35AM  4    PAYMENTS FROM WALGREENS DURING THAT SAME TIME PERIOD.  THAT

11:36AM  5    WOULD ALLEVIATE THAT CONCERN.

11:36AM  6         SO WE DON'T THINK THE MOTIVE EVIDENCE STANDS ON ITS FACTS,

11:36AM  7    BUT MORE FUNDAMENTALLY, THAT CAN'T SUBSTITUTE FOR LACK OF

11:36AM  8    ACTUAL EVIDENCE OF AN AGREEMENT TO DEFRAUD INVESTORS BETWEEN

11:36AM  9    MS. HOLMES AND MR. BALWANI.

11:36AM 10         UNLESS THE COURT HAS QUESTIONS ABOUT CONSPIRACY, I CAN

11:36AM 11    TURN TO WIRE FRAUD.

11:36AM 12              THE COURT:  YES, PLEASE.  THANK YOU.

11:36AM 13              MS. SAHARIA:  GREAT.

11:36AM 14         SO AS I MENTIONED BEFORE, THE ARGUMENTS THAT WE PRESENTED

11:36AM 15    TO THE COURT ON WIRE FRAUD GO BOTH TO WHETHER THERE WERE

11:36AM 16    MISREPRESENTATIONS MADE AS PART OF A SCHEME TO DEFRAUD, AND

11:36AM 17    ALSO WHETHER MS. HOLMES HAD THE INTENT TO DEFRAUD, AND WE DON'T

11:36AM 18    THINK THE GOVERNMENT HAS PROVED EITHER OF THOSE.

11:36AM 19         I WANT TO FOCUS MY REMARKS IN THE INTEREST OF TIME ON THE

11:36AM 20    CORE ALLEGATION IN THIS CASE, WHICH IS THAT MS. HOLMES

11:36AM 21    MISREPRESENTED THE CAPACITY AND ACCURACY OF THERANOS'S

11:36AM 22    TECHNOLOGY.

11:37AM 23         THE GOVERNMENT CALLED THIS IN CLOSING THE UNDERLYING FALSE

11:37AM 24    STATEMENT IN THE CASE.  THAT'S AT TRANSCRIPT 8958.

11:37AM 25         AND THIS IS REALLY THE ALLEGATION IN PARAGRAPH 12 OF THE

11:37AM 1     INDICTMENT THAT TIES ALL OF THE OTHER ALLEGATIONS TOGETHER.

11:37AM 2     FOR EXAMPLE, SOME OF THE INVESTORS TESTIFIED THAT WHEN

11:37AM 3     THEY HEARD REPRESENTATIONS ABOUT THE DEPARTMENT OF DEFENSE OR

11:37AM 4     PHARMACEUTICAL COMPANIES, THAT WAS IMPORTANT TO THEM BECAUSE

11:37AM 5     THAT WAS EVIDENCE OF THE CAPACITY OF THE TECHNOLOGY.

11:37AM 6     AND SO THIS IS REALLY THE ALLEGATION THAT UNDERLIES ALL OF

11:37AM 7     THE OTHER ONES.

11:37AM 8     AS TO THAT ALLEGATION, THE GOVERNMENT'S CLAIM REALLY RESTS

11:37AM 9     ON A FATAL MISMATCH.

11:37AM 10     THERANOS WAS DOING TWO THINGS DURING THE RELEVANT TIME

11:37AM 11     PERIOD.  IT WAS, ON THE ONE HAND, DEVELOPING, REFINING, AND

11:37AM 12     IMPORTANTLY, SUBMITTING TO THE FDA FOR A REGULATORY APPROVAL

11:37AM 13     ITS SERIES 4 ANALYZER CALLED THE MINILAB, AND THAT ANALYZER

11:37AM 14     COULD CONDUCT ALL FOUR KINDS OF ASSAYS ON FINGERSTICK BLOOD.

11:38AM 15     AT THE SAME TIME, IT WAS ALSO RUNNING A CLIA LABORATORY.

11:38AM 16     AS WE ALL KNOW THAT NOW FROM THE TRIAL, THE CLIA LABORATORY

11:38AM 17     DEPLOYED VARIOUS KINDS OF TECHNOLOGY.  IT DEPLOYED AN EARLIER

11:38AM 18     VERSION OF THE THERANOS ANALYZER, IT DEPLOYED FDA APPROVED

11:38AM 19     MACHINES FROM OTHER COMPANIES, AND IT DEPLOYED OTHER SMALL

11:38AM 20     SAMPLE TECHNOLOGY THAT THERANOS HAD DEVELOPED ON OTHER

11:38AM 21     MACHINES.

11:38AM 22     THE GOVERNMENT'S CASE RESTS ON THE FUNDAMENTAL MISMATCH ON

11:38AM 23     THE PREMISE THAT WHEN MS. HOLMES WAS SPEAKING ABOUT THERANOS'S

11:38AM 24     TECHNOLOGY, THE TECHNOLOGY IT WAS SUBMITTING TO THE FDA BEING

11:38AM 25     THE MINILAB, THAT SHE WAS TALKING ABOUT THE CLIA LAB.

11:38AM 1     AND THE PROBLEM IS THAT THE GOVERNMENT DIDN'T BRING ANY

11:38AM 2    WITNESS OR ANY EVIDENCE WHO COULD TELL THE JURY ABOUT THE

11:38AM 3    CAPACITY OF THE MINILAB.

11:38AM 4     IT DIDN'T BRING ANYONE FROM THE R&D PIECE OF THERANOS WHO

11:39AM 5    WAS WORKING ON DEVELOPING THE MINILAB.  FOR EXAMPLE,

11:39AM 6    DANIEL YOUNG, THE HEAD OF R&D, DID NOT TESTIFY, NOR DID ANYONE

11:39AM 7    ELSE UNDER HIM WHO WORKED ON DEVELOPING THE MINILAB.

11:39AM 8     IN ITS SURREPLY, THE GOVERNMENT CITES DR. DAS FOR THE

11:39AM 9    PROPOSITION THAT THE MINILAB STILL COULD NOT RUN PATIENT

11:39AM 10   SAMPLES.

11:39AM 11    THAT'S NOT WHAT HE SAID.  HE SAID ONLY THAT THERANOS

11:39AM 12   DIDN'T USE IT TO RUN PATIENT SAMPLES.

11:39AM 13    THERE IS SIMPLY NO, NO WITNESS WHO TOLD THE JURY THAT THE

11:39AM 14   MINILAB COULDN'T DO WHAT MS. HOLMES WAS TELLING INVESTORS IT

11:39AM 15   COULD DO.

11:39AM 16    AND EVEN MORE IMPORTANTLY, I THINK, NO WITNESS OR DOCUMENT

11:39AM 17   COULD SHOW THE JURY THAT MS. HOLMES DIDN'T BELIEVE THE TRUTH OF

11:39AM 18   HER REPRESENTATIONS ABOUT THE MINILAB AND WHAT IT COULD DO.

11:39AM 19    ALL EVIDENCE IS TO THE CONTRARY.

11:39AM 20    AND IN PARTICULAR, THE FACT THAT MS. HOLMES SUBMITTED TO

11:39AM 21   THE FDA THE MINILAB FOR REGULATORY APPROVAL AND THAT THE FDA

11:40AM 22   APPROVED THE 4 SERIES DEVICE FOR USE WITH THE HSB1 ASSAY, WHICH

11:40AM 23   IS AT TX 13988, IS POWERFUL EVIDENCE THAT SHE BELIEVED WHAT SHE

11:40AM 24   WAS SAYING ABOUT THERANOS'S TECHNOLOGY.

11:40AM 25    FINALLY, ON THIS PARTICULAR POINT, THE GOVERNMENT DIDN'T

11:40AM 1    PROVE THAT MS. HOLMES MISREPRESENTED THAT THE CLIA LAB WAS

11:40AM 2    USING THAT MINILAB TECHNOLOGY AS OPPOSED TO AN ASSORTMENT OF

11:40AM 3    DIFFERENT TECHNOLOGIES, SOME OF WHICH WAS THERANOS'S

11:40AM 4    TECHNOLOGY.

11:40AM 5        THERANOS WAS QUITE TRANSPARENT ABOUT THE FACT THAT IT WAS

11:40AM 6    DOING SOME VENOUS TESTING AS OPPOSED TO SMALL SAMPLE

11:40AM 7    FINGERSTICK TESTING.  WE CITED THAT EVIDENCE AT ECF 1467,

11:40AM 8    PAGES 16 AND 17.

11:40AM 9        THE GOVERNMENT POINTS IN ITS SURREPLY TO SLIDE DECKS THAT

11:40AM 10   WERE GIVEN TO INVESTORS THAT TALK BOTH ABOUT CLIA LAB

11:40AM 11   OPERATIONS AND THAT TALK ABOUT THERANOS'S TECHNOLOGY AS

11:41AM 12   EVIDENCE OF FRAUDULENT MISREPRESENTATIONS, BUT OF COURSE THOSE

11:41AM 13   SLIDE DECKS TALKED ABOUT VARIOUS ASPECTS OF THERANOS'S

11:41AM 14   TECHNOLOGY.  IT TALKED ABOUT THE TECHNOLOGY THAT WAS THEN BEING

11:41AM 15   PERFECTED IN SUBMITTING TO THE FDA, IT TALKED ABOUT THE CLIA

11:41AM 16   LAB, IT TALKED ABOUT WALGREENS, IT TALKED ABOUT ALL -- MANY

11:41AM 17   DIFFERENT ASPECTS OF THERANOS'S TECHNOLOGY AND OPERATIONS, AND

11:41AM 18   THAT'S NORMAL AND TO BE EXPECTED AND NOT ITSELF EVIDENCE OF

11:41AM 19   FRAUD.

11:41AM 20       SO ON THIS CORE POINT, THE CAPACITY OF THE TECHNOLOGY, THE

11:41AM 21   GOVERNMENT DIDN'T PROVE THAT MS. HOLMES MADE MISREPRESENTATIONS

11:41AM 22   ABOUT WHAT THE MINILAB COULD DO, AND IT CERTAINLY DIDN'T PROVE

11:41AM 23   THAT SHE DIDN'T BELIEVE HER REPRESENTATIONS.

11:41AM 24       I DON'T WANT TO TAKE THE COURT'S TIME TO WALK THROUGH ALL

11:41AM 25   OF THE REMAINING PARAGRAPH 12 ALLEGATIONS.  THE ARGUMENTS ARE

| | | |
|---|---|---|
| 11:41AM | 1 | SET FORTH IN THE PARTIES' PAPERS. |
| 11:41AM | 2 | I WOULD JUST MAKE A FEW HIGH LEVEL POINTS WITH RESPECT TO |
| 11:41AM | 3 | ALL OF THOSE. |
| 11:41AM | 4 | THE FIRST IS THAT IT'S CRITICAL THAT THE COURT LOOK TO THE |
| 11:41AM | 5 | ACTUAL LANGUAGE OF THE INDICTMENT WITH RESPECT TO THOSE |
| 11:42AM | 6 | ALLEGATIONS, BECAUSE IN MANY CASES, THE GOVERNMENT NOW IS |
| 11:42AM | 7 | ARGUING THAT IT PROVED SOMETHING OTHER THAN WHAT IS IN THE |
| 11:42AM | 8 | INDICTMENT. |
| 11:42AM | 9 | AND THE SECOND IS THAT I DON'T THINK THAT THE COURT CAN |
| 11:42AM | 10 | LOOK AT THOSE -- EACH OF THOSE PARAGRAPH 12 ALLEGATIONS IN A |
| 11:42AM | 11 | VACUUM. AS I INDICATED, THE GOVERNMENT ITSELF INDICATED IN |
| 11:42AM | 12 | CLOSING THAT THE ALLEGATIONS ABOUT THE TECHNOLOGY WERE THE |
| 11:42AM | 13 | UNDERLYING REPRESENTATIONS IN THIS CASE. |
| 11:42AM | 14 | THE OTHER ALLEGATIONS ON PARAGRAPH 12 REALLY TIE BACK TO |
| 11:42AM | 15 | THAT ONE. THEY, THEY INTERACT WITH EACH OTHER. THEY TIE TO |
| 11:42AM | 16 | EACH OTHER. |
| 11:42AM | 17 | AND NOT EVERY INVESTOR HEARD ALL OF THOSE REPRESENTATIONS, |
| 11:42AM | 18 | WHEREAS THE INVESTORS, OF COURSE, ALL HEARD REPRESENTATIONS |
| 11:42AM | 19 | ABOUT THE TECHNOLOGY. |
| 11:42AM | 20 | SO I DON'T THINK IT'S NECESSARY TO WALK THROUGH ALL OF |
| 11:42AM | 21 | THOSE, AND THAT WOULD TAKE TOO MUCH TIME, BUT IF THE COURT HAS |
| 11:42AM | 22 | ANY QUESTIONS ABOUT THOSE, I'M HAPPY TO ANSWER THAT. |
| 11:42AM | 23 | THE COURT: NO. THANK YOU. I THINK YOU'VE |
| 11:42AM | 24 | INDICATED SUCH IN YOUR BRIEFING. |
| 11:42AM | 25 | MS. SAHARIA: YES. |

11:42AM 1          THE COURT:  I DON'T HAVE ANY QUESTIONS ABOUT THAT.

11:42AM 2          MS. SAHARIA:  THANK YOU.

11:42AM 3          THE COURT:  YOU'RE WELCOME.  THANK YOU.

11:43AM 4      MS. VOLKAR.

11:43AM 5          MS. VOLKAR:  YES, YOUR HONOR.  I WOULD JUST LIKE TO

11:43AM 6  RESPOND TO A COUPLE OF POINTS MS. SAHARIA MADE.

11:43AM 7      I WOULD LIKE TO START WITH THE LEGAL PRINCIPLES THAT

11:43AM 8  MS. SAHARIA DISCUSSED SHORTLY BEFORE OUR BREAK, AND I REALLY

11:43AM 9  WANT TO FOCUS ON I THINK ONE CRITICAL DISAGREEMENT BETWEEN THE

11:43AM 10  PARTIES, WHICH IS THE PROPER ROLE OF CONSTRUCTIVE AMENDMENT AND

11:43AM 11  VARIANCE ARGUMENTS.

11:43AM 12      THE LAW IN THE NINTH CIRCUIT IS CLEAR THAT CONSTRUCTIVE

11:43AM 13  AMENDMENT AND VARIANCE, THOSE ARGUMENTS ARE LEGAL ARGUMENTS.

11:43AM 14  IT IS AN ARGUMENT THAT A DEFENDANT CAN MAKE TO SAY THAT WHAT

11:43AM 15  WAS ALLEGED IN THE INDICTMENT NO LONGER MATCHES EITHER THE JURY

11:43AM 16  INSTRUCTIONS OR THE PROOF AT TRIAL.

11:43AM 17      THAT IS REALLY WHEN THE FOCUS OF THE INDICTMENT, IN

11:43AM 18  WALKING THROUGH ALL OF THE PARAGRAPHS OF THE INDICTMENT, COMES

11:43AM 19  INTO PLAY.

11:43AM 20      THAT'S A LEGAL ARGUMENT.  THE TSINHNAHIJINNIE CASE FROM

11:43AM 21  THE NINTH CIRCUIT THAT WE CITED IN OUR BRIEFS IS THE ONE THAT

11:43AM 22  REALLY CLEARLY SHOWS THIS DISTINCTION.  THERE'S THE LEGAL

11:44AM 23  QUESTION ABOUT WHETHER OR NOT WHAT WAS ALLEGED IN THE

11:44AM 24  INDICTMENT GAVE THE DEFENDANT SUFFICIENT NOTICE FOR WHAT SHE

11:44AM 25  WAS ACTUALLY TRIED WITH, AND THEN THERE'S THE FACTUAL QUESTION

| | | |
|---|---|---|
| 11:44AM | 1 | OF WHETHER OR NOT SUFFICIENT EVIDENCE WAS PUT BEFORE THE JURY |
| 11:44AM | 2 | TO MATCH THE ESSENTIAL ELEMENTS OF THE CRIME. |
| 11:44AM | 3 | THE COURT:  AND THAT'S A RULE 29. |
| 11:44AM | 4 | MS. VOLKAR:  CORRECT.  THE LATTER IS THE RULE 29. |
| 11:44AM | 5 | THE COURT:  YES. |
| 11:44AM | 6 | MS. VOLKAR:  WHICH IS WHAT WE'RE OF COURSE HERE TO |
| 11:44AM | 7 | DISCUSS. |
| 11:44AM | 8 | ONE CASE I DID NOT CITE IN MY BRIEF OR MY SURREPLY FOR |
| 11:44AM | 9 | SPACE PURPOSES, BUT REALLY CALLS INTO RELIEF THIS POINT IS |
| 11:44AM | 10 | UNITED STATES VERSUS RENZI, 769 F.3D 731, PIN CITE 756 TO 757, |
| 11:44AM | 11 | AND THAT'S A NINTH CIRCUIT CASE FROM 2014 THAT TALKS |
| 11:44AM | 12 | SPECIFICALLY ABOUT A CONSTRUCTIVE AMENDMENT IN A WIRE FRAUD |
| 11:44AM | 13 | CASE WHERE THE DEFENDANT IS SAYING THAT THE GOVERNMENT DID NOT |
| 11:45AM | 14 | PROVE THIS WORD "MISAPPROPRIATION." |
| 11:45AM | 15 | BUT THE NINTH CIRCUIT LOOKS AT IT AND LOOKS AT THE |
| 11:45AM | 16 | ELEMENTS OF WIRE FRAUD AND SAYS MISAPPROPRIATION IS NOT IN THE |
| 11:45AM | 17 | ELEMENTS OF WIRE FRAUD AND, THEREFORE, THAT IS SURPLUSAGE |
| 11:45AM | 18 | LANGUAGE IN THE INDICTMENT THAT THE GOVERNMENT DID NOT HAVE TO |
| 11:45AM | 19 | PROVE IN ORDER TO MEET, FOR SUFFICIENCY OF THE EVIDENCE |
| 11:45AM | 20 | PURPOSES, THE ESSENTIAL ELEMENTS OF THE CRIME. |
| 11:45AM | 21 | NOW, I REALLY WANT TO FOCUS ON WHAT DOES THAT MEAN HERE |
| 11:45AM | 22 | TODAY FOR THE COURT'S PURPOSES? |
| 11:45AM | 23 | THE GOVERNMENT DOES NOT BELIEVE THERE'S A CONSTRUCTIVE |
| 11:45AM | 24 | AMENDMENT OR VARIANCE FROM THE INDICTMENT. |
| 11:45AM | 25 | IT'S SIMPLY NOT AN ARGUMENT THAT SHOULD BE MADE OR SHOULD |

11:45AM 1     BE DEBATED IN THIS FORUM WHEN WE'RE TALKING ABOUT A RULE 29

11:45AM 2     MOTION.

11:45AM 3         THE QUESTION BEFORE THE COURT IS WHETHER SUFFICIENT

11:45AM 4     EVIDENCE SUPPORTS EVERY ELEMENT OF THE CRIME, AND I BELIEVE I

11:45AM 5     HEARD MY COLLEAGUE CONCEDE THAT THEY'RE NOT CHALLENGING TWO OF

11:45AM 6     THOSE ELEMENTS, MATERIALITY AND THE INTERSTATE WIRE.

11:45AM 7         SO IN PRACTICAL TERMS WHAT THAT MEANS IS THAT EVEN IF

11:46AM 8     HYPOTHETICALLY THE DEFENDANT WAS RIGHT AND THERE WAS A

11:46AM 9     CONSTRUCTIVE AMENDMENT OR THERE WAS A VARIANCE, WHICH WE DON'T

11:46AM 10     AGREE WITH, BUT EVEN IF THE DEFENDANT WAS RIGHT, THE GOVERNMENT

11:46AM 11     CAN STILL PREVAIL ON THIS RULE 29 MOTION BECAUSE THERE ARE

11:46AM 12     ALTERNATIVE MEANS OF PROVING ONE ELEMENT.

11:46AM 13         THE CONSTRUCTIVE AMENDMENT AND VARIANCE ARGUMENTS RELATE

11:46AM 14     TO THE STATEMENTS ABOUT THE DEPARTMENT OF DEFENSE AND THE

11:46AM 15     PHARMACEUTICAL COMPANIES.

11:46AM 16         THERE ARE MANY OTHER FALSE MISREPRESENTATIONS AND

11:46AM 17     STATEMENTS THAT THE DEFENDANT MADE TO INVESTORS THAT ARE SET

11:46AM 18     OUT IN THE GOVERNMENT'S BRIEFS.

11:46AM 19         AND SO EVEN IF THEY WERE RIGHT, EVEN IF DEFENSE WAS RIGHT

11:46AM 20     ON THOSE TWO CATEGORIES OF MISREPRESENTATIONS -- AND AGAIN, WE

11:46AM 21     DO NOT THINK THAT THEY ARE -- IT WOULDN'T MATTER FOR RULE 29

11:46AM 22     PURPOSES BECAUSE THERE ARE ALTERNATIVE MEANS FOR PROVING AND

11:46AM 23     FOR THE JURY TO HAVE FOUND THAT SAME ELEMENT.

11:46AM 24         NOW I WANT TO TURN TO MY COLLEAGUE'S ARGUMENTS ON THE

11:47AM 25     COUNTS THEMSELVES, AND I WILL ALSO SIMILARLY TRY TO BE BRIEF.

11:47AM 1     I THINK THE MOST IMPORTANT STARTING PLACE HERE IS ALSO THE

11:47AM 2    LEGAL STANDARD, WHICH IS, WHAT IS THE STANDARD OF A RULE 29

11:47AM 3    MOTION?  IT IS TO VIEW THE EVIDENCE IN THE LIGHT MOST FAVORABLE

11:47AM 4    TO THE PROSECUTION.

11:47AM 5     MS. SAHARIA WALKED THROUGH THE EVIDENCE AS I THINK THE

11:47AM 6    DEFENSE CONTINUES TO SEE IT.  THEY ARGUED THAT IN THEIR CLOSING

11:47AM 7    ARGUMENT.  THEY'RE ENTITLED TO VIEW THE EVIDENCE THAT WAY.

11:47AM 8     BUT THAT IS NOT HOW THE COURT IS ENTITLED TO VIEW THE

11:47AM 9    EVIDENCE FOR PURPOSES OF RULING ON THIS MOTION.  THE COURT MUST

11:47AM 10    VIEW THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE

11:47AM 11    PROSECUTION, ASSUME THAT THE JURY RESOLVED EVIDENTIARY

11:47AM 12    CONFLICTS IN FAVOR OF THE VERDICT, AND ASSUME THAT THE JURY

11:47AM 13    MADE REASONABLE INFERENCES ALSO IN SUPPORT OF THAT VERDICT.

11:47AM 14     ON THE CONSPIRACY COUNT, MY COLLEAGUE REFERENCES THAT --

11:47AM 15    OR ESSENTIALLY TRIES TO POINT TO A HOLE IN THE EVIDENCE, BUT I

11:48AM 16    WOULD GO BACK TO, FOR A CONSPIRACY COUNT, THE CASE LAW IS CLEAR

11:48AM 17    THAT IF DEFENDANTS ACT IN A CONCERTED ACTION, THAT IS

11:48AM 18    SUFFICIENT TO FIND SUFFICIENT EVIDENCE FOR A CONSPIRACY COUNT

11:48AM 19    AND CIRCUMSTANTIAL EVIDENCE CAN PROVE THAT.  THERE IS NO

11:48AM 20    REQUIREMENT THAT AN EXPLICIT OR EVEN FORMAL OR EVEN SPOKEN

11:48AM 21    AGREEMENT EXISTS IN ORDER TO FIND SUFFICIENT EVIDENCE FOR A

11:48AM 22    CONSPIRACY COUNT.

11:48AM 23     AND ALTHOUGH OBVIOUSLY RULE 29 IS QUINTESSENTIALLY A

11:48AM 24    FACTUAL DETERMINATION, I WOULD LIKE TO PROVIDE TWO CASES THAT I

11:48AM 25    FOUND PREPARING FOR TODAY THAT I THINK REALLY HELP ILLUMINATE

11:48AM 1    THE POINT THAT THE GOVERNMENT IS TRYING TO MAKE.

11:48AM 2        IT'S NOT JUST THAT MR. BALWANI AND MS. HOLMES WERE THE TWO

11:48AM 3    MOST SENIOR EXECUTIVES IN THE COMPANY.  IT'S NOT JUST THAT THEY

11:48AM 4    HAD MORE THAN A DECADE LONG ROMANTIC RELATIONSHIP.  IT'S NOT

11:49AM 5    JUST THAT THEY WERE IN CONSTANT COMMUNICATION.

11:49AM 6        IT'S ALSO THAT WHAT THEY WERE DISCUSSING AND WHAT THEY

11:49AM 7    WERE TALKING ABOUT SHOWED THAT THEY KNEW INFORMATION THAT THEY

11:49AM 8    DIDN'T SHARE WITH THE INVESTORS, AND IT'S ALL OF THAT TOGETHER

11:49AM 9    THAT IS SUFFICIENT EVIDENCE.

11:49AM 10       AND WITH THAT, WITH THE COURT'S PERMISSION, I'D LIKE TO

11:49AM 11   READ TWO CASE CITES THAT I THINK ARE AT LEAST INSTRUCTIVE WHERE

11:49AM 12   THERE WERE ROMANTIC PARTNERS WHO WERE ALSO BUSINESS EXECUTIVES

11:49AM 13   WHO COMMITTED IN THOSE CASES HEALTH CARE FRAUD AND CONSPIRACY

11:49AM 14   TO COMMIT HEALTH CARE FRAUD, AND THESE CIRCUIT COURTS FOUND

11:49AM 15   SUFFICIENT EVIDENCE BECAUSE OF THE ADDITIONAL EVIDENCE IN

11:49AM 16   ADDITION TO THE RELATIONSHIP PIECE.

11:49AM 17       THE FIRST CASE IS UNITED STATES VERSUS SANDERS,

11:49AM 18   952 F.3D 263, 274 -- I'M SORRY, PIN CITE 274 TO 276.  THAT ONE

11:50AM 19   IS A FIFTH CIRCUIT CASE FROM 2020, BUT IT HAS A MORE DETAILED

11:50AM 20   EXPLANATION.

11:50AM 21       THE NINTH CIRCUIT CASE IS UNITED STATES V. CHERNIAVSKY,

11:50AM 22   732 FEDERAL APPENDIX 601, AND THAT'S A NINTH CIRCUIT CASE FROM

11:50AM 23   2018.

11:50AM 24       THE FACT IT HELPS TO GO BACK TO THE DISTRICT COURT

11:50AM 25   OPINIONS TO GET A LITTLE MORE OF THE FACTS AND BACKGROUND IN

11:50AM 1    THAT CASE, BUT THEY'RE BOTH CONSPIRACY TO COMMIT HEALTH CARE

11:50AM 2    FRAUD, WHICH IS THE HEIGHTENED MENS REA STANDARD, AND THEY SHOW

11:50AM 3    THAT YOU CAN CONSIDER THE RELATIONSHIPS, THE BUSINESS AND THE

11:50AM 4    ROMANTIC RELATIONSHIP AND THE ADDITIONAL EVIDENCE TO THAT.

11:50AM 5        AND ALTHOUGH I HAVE SEVERAL EXAMPLES IN THE GOVERNMENT'S

11:50AM 6    SUBMISSIONS THAT SHOW THIS, I'LL TAKE THE COURT'S TIME JUST TO

11:50AM 7    POINT TO ONE.

11:50AM 8        IN NOVEMBER OF 2014 AND EARLY 2015, BUT STARTING IN

11:51AM 9    NOVEMBER OF 2014, DR. ROSENDORFF RESIGNS AND SENDS AN EMAIL

11:51AM 10   DIRECTLY TO MS. HOLMES SAYING THAT HE IS -- HE IS RESIGNING

11:51AM 11   BECAUSE HE FEELS UNCOMFORTABLE AND HE'S BEING FORCED TO VOUCH

11:51AM 12   FOR RESULTS THAT HE CAN NO LONGER HAVE CONFIDENCE IN.

11:51AM 13       AROUND THE SAME TIME, MS. HOLMES TEXTS MR. BALWANI, "WE

11:51AM 14   NEED TO STOP FIGHTING FIRES BY NOT CREATING THEM," AND IN THE

11:51AM 15   CONTEXT OF THE DISCUSSION, I THINK IT'S REASONABLE TO ASSUME

11:51AM 16   AND TO READ THAT THEY ARE TALKING ABOUT THE STATE OF THE LAB.

11:51AM 17       SHORTLY AFTER THAT, MR. BALWANI TEXTS, THE TEXT WE'RE ALL

11:51AM 18   FAMILIAR WITH, "NORMANDY IS AN" EXPLETIVE "DISASTER ZONE."

11:51AM 19       IN THAT SAME TIMEFRAME IS WHEN MS. HOLMES TEXTS

11:51AM 20   MR. BALWANI ABOUT SECURING $150 MILLION INVESTMENT FROM THE

11:51AM 21   WALTON FAMILY AND SECURING AN INVESTMENT FROM MR. MURDOCH.

11:51AM 22       LESS THAN TWO WEEKS AFTER THAT, MS. HOLMES TEXTS

11:52AM 23   MR. BALWANI ABOUT WHAT TO INCLUDE IN THE MURDOCH BINDER.

11:52AM 24       NOW, THAT MAY NOT BE AN EXPLICIT AGREEMENT TO COMMIT WIRE

11:52AM 25   FRAUD, BUT WE KNOW WHAT THOSE MATERIALS THAT WERE ADMITTED

11:52AM 1    THROUGH MR. EDLIN, WE KNOW WHAT THOSE MATERIALS CONTAIN, AND

11:52AM 2    THEY DON'T CONTAIN DR. ROSENDORFF'S CONCERN.  THEY DON'T

11:52AM 3    CONTAIN MS. HOLMES'S LET'S STOP FIGHTING FIRES BY NOT CREATING

11:52AM 4    THEM.  THEY DON'T CONTAIN NORMANDY IS A DISASTER ZONE.

11:52AM 5    AND WHEN YOU'RE VIEWING THE EVIDENCE IN THE LIGHT MOST

11:52AM 6    FAVORABLE TO THE GOVERNMENT, THAT'S A CONSPIRACY.  THAT'S TWO

11:52AM 7    PEOPLE WHO ARE LYING TO AN INVESTOR ABOUT THE STATE OF THEIR

11:52AM 8    LAB, THE STATE OF THEIR TECHNOLOGY IN ORDER TO GET MONEY.

11:52AM 9    LAST, ON THE SUBSTANTIVE -- AND, OF COURSE, I'M HAPPY TO

11:52AM 10    ANSWER THE COURT'S QUESTIONS ON ANY OTHER POINTS, BUT I DO WANT

11:52AM 11    TO TRY TO BE AS BRIEF AS I CAN.

11:52AM 12    ON THE SUBSTANTIVE WIRE FRAUD COUNTS, THIS IS ANOTHER AREA

11:53AM 13    WHERE I FEEL MS. SAHARIA GAVE THE DEFENDANT'S VERSION OF

11:53AM 14    EVENTS, BUT, OF COURSE, THE EVIDENCE MUST BE VIEWED IN THE

11:53AM 15    LIGHT MOST FAVORABLE TO THE GOVERNMENT.

11:53AM 16    I BELIEVE THERE WAS A BIT OF DISCUSSION ABOUT THE

11:53AM 17    MISMATCH, THE 4 SERIES VERSUS THE 3 SERIES.  WE'RE ALL FAMILIAR

11:53AM 18    WITH THIS BY NOW.

11:53AM 19    THE PROBLEM IS THAT MR. GROSSMAN, BRIAN GROSSMAN TESTIFIED

11:53AM 20    THAT MS. HOLMES TOLD HIM THAT THE 4 SERIES, THE MINILAB, WAS

11:53AM 21    BEING USED TO TEST PATIENTS IN THE LAB.

11:53AM 22    UNDER THE RULE 29 STANDARD, WE MUST ASSUME THAT THE JURY

11:53AM 23    GAVE CREDIT TO THAT AND NOT TO MS. HOLMES'S VERSION OF EVENTS.

11:53AM 24    WE MUST VIEW THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE

11:53AM 25    VERDICT, AND THAT MEANS THAT THAT SINGLE STATEMENT UNDERCUTS

| | |
|---|---|
| 11:53AM | 1 |
| 11:53AM | 2 |

THE ENTIRE ARGUMENT ABOUT THE 4 SERIES AND THE 3 SERIES AND
THERE WAS NO DECEPTION HERE.

I ALSO GO BACK TO, AND I KNOW THIS IS IN MY BRIEFS SO I
WON'T BELABOR IT, THE WRITTEN MATERIALS THEMSELVES, ACCORDING
TO THE DEFENDANT'S PERSPECTIVE, BOUNCE BACK AND FORTH BETWEEN
THE 4 SERIES AND THE 3 SERIES WITH NO DELINEATION, NOTHING THAT
WOULD INDICATE TO THE INVESTORS THAT THEY'RE TALKING ABOUT TWO
ENTIRELY DIFFERENT DEVICES WITH DIFFERENT CAPABILITIES, AND I
WOULD ARGUE THAT THAT IS IN AND OF ITSELF AN EXAMPLE OF THE
DECEPTIVENESS TO INVESTORS.

AND THEN -- OH. AND THEN I ALSO WANT TO SAY THERE REALLY
IS NO ANSWER BY THE DEFENDANT TO THE FACT THAT EVERY INVESTOR
WHO IS A SUBSTANTIVE COUNT THAT SHE WAS FOUND GUILTY OF, AND
ADDITIONAL INVESTORS TESTIFIED THAT THEY WERE NOT AWARE
THERANOS WAS USING THIRD PARTY DEVICES, OR IN THE CASE OF
WADE MIQUELON ON BEHALF OF WALGREENS, HE TESTIFIED THAT HE
UNDERSTOOD THEY USED IT VERY RARELY FOR ESOTERIC TESTS.

THE ONLY DEFENSE THAT THEY HAVE TO THAT, EVEN VIEWING IT
IN THE LIGHT MOST FAVORABLE TO THE DEFENDANT, IS THAT, WELL,
THEY KNEW WE DID VEIN DRAWS. BRIAN GROSSMAN WENT INTO A
WALGREENS AND HE GOT A VEIN DRAW.

I WOULD ARGUE THAT HE TESTIFIED THAT WHEN HE GOT THE VEIN
DRAW, HE FOLLOWED UP WITH THE DEFENDANTS TO FIGURE OUT WHY THAT
WAS, AND HE REPEATEDLY RECEIVED ASSURANCES THAT THE VEIN DRAW
WAS BECAUSE OF A TEST HE ORDERED, ET CETERA, ET CETERA.

11:55AM 1    BUT HE WAS NEVER TOLD THAT THAT WAS NOT GOING TO BE RUN ON

11:55AM 2    A THERANOS DEVICE.

11:55AM 3    THAT ENTIRE TIME, EVEN WITH A DIFFERENT SOURCE OF BLOOD

11:55AM 4    DRAW, HE STILL WAS UNDER THE IMPRESSION THAT THERANOS WAS USING

11:55AM 5    ITS PROPRIETARY TECHNOLOGY WHEN, IN FACT, WE KNOW FROM A

11:55AM 6    DOCUMENT THAT WAS ADMITTED THROUGH DR. ROSENDORFF,

11:55AM 7    MR. GROSSMAN'S TESTS WAS RUN ON AN UNMODIFIED THIRD PARTY

11:55AM 8    MACHINE THAT COULD NOT BE CATEGORIZED AS THERANOS PROPRIETARY

11:55AM 9    TECHNOLOGY.

11:55AM 10   SO I GO BACK TO THERE ARE VERY CLEAR UNANSWERABLE

11:56AM 11   CATEGORIES OF FALSE MISREPRESENTATIONS IN THIS CASE, AND

11:56AM 12   THERE'S A LOT MORE THAN THAT, OF COURSE, THAT ARE LAID OUT IN

11:56AM 13   THE GOVERNMENT'S SUBMISSIONS, EVEN MORE THAN THAT THAT WERE

11:56AM 14   ADMITTED AT TRIAL.

11:56AM 15   AND I HAVE MORE EXAMPLES PREPARED, BUT I'M GOING TO MOVE

11:56AM 16   ON.

11:56AM 17   SO THE VERY LAST THING I WANT TO SAY IS ON THE LAST POINT

11:56AM 18   MY COLLEAGUE MADE, WHICH IS, THERE ARE OF COURSE OTHER

11:56AM 19   CATEGORIES OF MISREPRESENTATIONS, AND WE COULD BE HERE MUCH

11:56AM 20   LONGER TO DEBATE THEM.  THE PARTIES HAVE ALREADY IN THEIR

11:56AM 21   BRIEFING.

11:56AM 22   BUT MY COLLEAGUE POINTED TO THE FACT THAT THE GOVERNMENT

11:56AM 23   WAS NOT GOING BACK TO THE ACTUAL LANGUAGE OF THE INDICTMENT AND

11:56AM 24   DOING THIS HYPERTECHNICAL PAIRING UP OF THE EVIDENCE TO THE

11:56AM 25   CHARGES IN THE INDICTMENT.

11:56AM 1       AND I WILL ADMIT THAT I DID NOT DO THAT IN THE BRIEFS ON

11:56AM 2   PURPOSE, BECAUSE WHERE WE ARE IN THE RULE 29 STAGE IS, DID THE

11:56AM 3   GOVERNMENT MEET THE ESSENTIAL ELEMENTS OF WIRE FRAUD?

11:56AM 4       I SUBMIT TO YOU, AS WE DID THROUGH THE SUBMISSIONS, THE

11:57AM 5   GOVERNMENT HAS.

11:57AM 6       I SAY THAT WITHOUT -- I BELIEVE WE ARE ALSO IN LINE WITH

11:57AM 7   THE INDICTMENT.

11:57AM 8       BUT WE'RE NOT AT A STAGE WHERE WHAT WE SHOULD BE DOING IS

11:57AM 9   PARSING THE LANGUAGE OF THE INDICTMENT VERY FINELY AGAINST THE

11:57AM 10  EVIDENCE.  THAT'S JUST NOT WHAT A RULE 29 MOTION IS MEANT TO

11:57AM 11  DO.

11:57AM 12      SO I WILL ACCEPT THAT AS MY COLLEAGUE'S CRITICISM, BUT I

11:57AM 13  WILL ALSO SAY IT WAS DONE WITH A PURPOSE, WHICH IS THAT WE ARE

11:57AM 14  PAIRING UP THE EVIDENCE TO THE ELEMENTS AS IS REQUIRED.

11:57AM 15      I ALSO THINK THAT BECAUSE THERE ARE ALL OF THE ALTERNATIVE

11:57AM 16  MEANS FOR SHOWING THE FALSE MISREPRESENTATIONS AND THERE ARE

11:57AM 17  ALL OF THESE SEVERAL DIFFERENT CATEGORIES, I WANT TO DRAW THE

11:57AM 18  COURT'S ATTENTION TO THE FACT THAT THIS IS A SCHEME TO DEFRAUD.

11:57AM 19      AND AS MY COLLEAGUE POINTED OUT, NOT EVERY INVESTOR HEARD

11:57AM 20  EVERY LIE, BUT THAT'S WHERE IT COMES BACK TO THE POINT IS THAT

11:57AM 21  IT WAS A SCHEME TO DEFRAUD, AND MR. BALWANI AND MS. HOLMES

11:57AM 22  EXECUTED A SCHEME TO DEFRAUD INVESTORS, AND THAT IS WHY THE

11:58AM 23  VERDICT SHOULD BE UPHELD AND THE COURT SHOULD DENY MS. HOLMES'S

11:58AM 24  RULE 29 MOTION.

11:58AM 25      THANK YOU.

| | |
|---|---|
| 11:58AM | 1 |
| 11:58AM | 2 |
| 11:58AM | 3 |
| 11:58AM | 4 |
| 11:58AM | 5 |
| 11:58AM | 6 |
| 11:58AM | 7 |
| 11:58AM | 8 |
| 11:58AM | 9 |
| 11:58AM | 10 |
| 11:58AM | 11 |
| 11:58AM | 12 |
| 11:58AM | 13 |
| 11:58AM | 14 |
| 11:58AM | 15 |
| 11:58AM | 16 |
| 11:59AM | 17 |
| 11:59AM | 18 |
| 11:59AM | 19 |
| 11:59AM | 20 |
| 11:59AM | 21 |
| 11:59AM | 22 |
| 11:59AM | 23 |
| 11:59AM | 24 |
| 11:59AM | 25 |

1    THE COURT:  THANK YOU, MS. VOLKAR.

2    MS. SAHARIA:  LET ME JUST TOUCH ON WHAT I THINK ARE

3 THE THREE CATEGORIES OF MS. VOLKAR'S COMMENTS.

4    FIRST, THE ISSUE OF CONSTRUCTIVE AMENDMENT AND VARIANCE,

5 AND THEN CONSPIRACY, AND THEN BRIEFLY WIRE FRAUD.

6    OF COURSE, IT'S HARD TO CITE AND RESPOND TO CASES THAT

7 WERE NOT CITED UNTIL TODAY, SO I'M NOT GOING TO BE ABLE TO DO

8 THAT ON THE FLY.

9    BUT THE TSINHNAHIJINNIE CASE THAT WAS CITED THAT MS.

10 VOLKAR MENTIONED DOESN'T SAY ANYTHING ABOUT A RULE 29 MOTION

11 BECAUSE THAT CASE AROSE IN THE CONTEXT OF A RULE 33 MOTION.

12    I STILL DIDN'T HEAR ANY RESPONSE TO THE TSINHNAHIJINNIE

13 FROM THE NINTH CIRCUIT, WHICH IS A RULE 29 CASE, AND THE COURT

14 IN THAT CASE HELD THAT THE DEFENDANT WAS ENTITLED TO A JUDGMENT

15 OF ACQUITTAL EVEN THOUGH THE GOVERNMENT PROVED AN OFFENSE,

16 PROVED THE ESSENTIAL ELEMENTS OF THE OFFENSE, BUT DIDN'T PROVE

17 IT PURSUANT TO THE INDICTMENT ALLEGATIONS.

18    IN THAT CASE THE ISSUE WAS THE DATE OF THE OFFENSE, AND

19 THE GOVERNMENT -- EXCUSE ME, THE COURT SAID, WELL, THE

20 GOVERNMENT PROVED THE SUBSTANCE OF THE OFFENSE, BUT IT PROVED

21 IT OCCURRED TWO YEARS LATER AND NOT ON THE DATE OR NEAR THE

22 DATE THAT WAS ALLEGED IN THE INDICTMENT.  AND BECAUSE OF THAT

23 FATAL VARIANCE, THE COURT USED THE WORD "VARIANCE," BECAUSE OF

24 THAT VARIANCE, THE DEFENDANT WAS ENTITLED TO JUDGMENT OF

25 ACQUITTAL.

| | | |
|---|---|---|
| 11:59AM | 1 | THIS IS ABSOLUTELY A PROPER ACQUITTAL ARGUMENT. |
| 11:59AM | 2 | THE ARGUMENT IS SIMPLY THAT THE GOVERNMENT DIDN'T PROVE |
| 11:59AM | 3 | THE ALLEGATIONS IN THE INDICTMENT. |
| 11:59AM | 4 | AND I STILL HAVEN'T HEARD ANY CASE FROM THE GOVERNMENT |
| 11:59AM | 5 | THAT SAYS THAT THIS IS NOT A PROPER RULE 29 ARGUMENT. |
| 11:59AM | 6 | THE COURT: SO ACQUITTAL, NOT A NEW TRIAL. |
| 11:59AM | 7 | MS. SAHARIA: EXACTLY, YOUR HONOR. |
| 11:59AM | 8 | AND IF THE COURT HAS ANY QUESTION ABOUT WHETHER THIS |
| 11:59AM | 9 | PARTICULAR KIND OF -- WHETHER THIS KIND OF MISMATCH BETWEEN THE |
| 11:59AM | 10 | INDICTMENT AND THE PROOF AT TRIAL CAN BE A FATAL VARIANCE, FOR |
| 11:59AM | 11 | INSTANCE, I WOULD POINT THE COURT TO THE ADAMSON CASE THAT WE |
| 12:00PM | 12 | CITED. |
| 12:00PM | 13 | THAT WAS A WIRE FRAUD CASE, AND THE ISSUE IN THAT CASE WAS |
| 12:00PM | 14 | THAT THE INDICTMENT ALLEGED ONE SPECIFIC MISREPRESENTATION AND |
| 12:00PM | 15 | THE GOVERNMENT PROVED A DIFFERENT ONE AT TRIAL, AND THE |
| 12:00PM | 16 | NINTH CIRCUIT SAID, OF COURSE THAT KIND OF VARIANCE IS |
| 12:00PM | 17 | PREJUDICIAL TO A DEFENDANT. |
| 12:00PM | 18 | WITH RESPECT TO THE ISSUE OF WHICH PARTICULAR PARAGRAPH 12 |
| 12:00PM | 19 | ALLEGATIONS THE GOVERNMENT HAS TRIED TO AMEND, IT IS TRUE THAT |
| 12:00PM | 20 | IN OUR BRIEF WE FOCUSSED ON -- EXCUSE ME, ON THE PHARMACEUTICAL |
| 12:00PM | 21 | ALLEGATIONS AN THE DEPARTMENT OF DEFENSE ALLEGATIONS. |
| 12:00PM | 22 | THE GOVERNMENT AGAIN TRIES TO AMEND THE ALLEGATIONS WITH |
| 12:00PM | 23 | RESPECT TO WALGREENS AND FINANCES IN ITS SURREPLY, SO I'M -- |
| 12:00PM | 24 | BECAUSE MS. VOLKAR MADE THE SPECIFIC POINT, I'LL JUST BRIEFLY |
| 12:00PM | 25 | ADDRESS THOSE. |

| | | |
|---|---|---|
| 12:00PM | 1 | WHEN IT COMES TO WALGREENS, THE GOVERNMENT IN ITS |
| 12:00PM | 2 | SURREPLY -- THE GOVERNMENT IN THE INDICTMENT SAID THAT |
| 12:01PM | 3 | MS. HOLMES MADE MISREPRESENTATIONS THAT THE WALGREENS |
| 12:01PM | 4 | PARTNERSHIP WAS PRESENTLY EXPANDING WHEN, IN FACT, IT HAD |
| 12:01PM | 5 | STALLED. |
| 12:01PM | 6 | AS WE POINT OUT IN OUR PAPERS, THE RELATIONSHIP WAS |
| 12:01PM | 7 | EXPANDING AND IT HAD NOT STALLED.  WALGREENS AND THERANOS |
| 12:01PM | 8 | STILL, AS OF DECEMBER 2014, ENVISIONED EXPANDING TO 200 STORES. |
| 12:01PM | 9 | SO IN ITS SURREPLY THE GOVERNMENT SAYS, WELL, SHE DIDN'T |
| 12:01PM | 10 | TELL INVESTORS THAT IT WASN'T 900 STORES AND ONLY 200 STORES. |
| 12:01PM | 11 | THAT'S NOT THE ALLEGATION. |
| 12:01PM | 12 | THERE'S NO EVIDENCE, BY THE WAY, THAT SHE KNEW OF THAT |
| 12:01PM | 13 | MODIFIED NUMBER OF STORES. |
| 12:01PM | 14 | BUT MORE FUNDAMENTALLY, THAT'S JUST NOT THE INDICTMENT |
| 12:01PM | 15 | ALLEGATION. |
| 12:01PM | 16 | THE SAME WITH FINANCES.  THE -- AS WE POINT OUT IN OUR |
| 12:01PM | 17 | BRIEF, WHEN IT COMES TO 2014 REVENUE, THE COMPANY DID HAVE MORE |
| 12:01PM | 18 | THAN $100,000 -- EXCUSE ME, $100 MILLION IN REVENUE, WHICH WAS |
| 12:01PM | 19 | RECORDED AS DEFERRED REVENUE. |
| 12:01PM | 20 | THE INDICTMENT ALLEGATION WAS THAT SHE MISREPRESENTED THAT |
| 12:02PM | 21 | THERE WOULD BE MORE THAN $100 MILLION IN REVENUE. |
| 12:02PM | 22 | SO THE GOVERNMENT IN ITS SURREPLY SAYS THAT SHE |
| 12:02PM | 23 | MISREPRESENTED THE CATEGORIES OF THAT REVENUE.  THAT'S ALSO NOT |
| 12:02PM | 24 | THE INDICTMENT ALLEGATION. |
| 12:02PM | 25 | SO ENOUGH ABOUT THE AMENDMENT AND VARIANCE POINT. |

12:02PM 1      WITH RESPECT TO CONSPIRACY, LET ME MAKE TWO OR THREE

12:02PM 2  POINTS.

12:02PM 3      FIRST, IT IS CLEAR FROM THE CASE LAW THAT EVEN KNOWLEDGE

12:02PM 4  AND ACQUIESCENCE IN SOMEONE ELSE'S CRIME IS NOT ENOUGH.

12:02PM 5      SO EVEN TAKING THE GOVERNMENT'S ALLEGATION THAT THE TEXT

12:02PM 6  MESSAGES SHOW THAT MS. HOLMES AND MR. BALWANI MAY HAVE KNOWN --

12:02PM 7  AND WE DISAGREE WITH THIS -- BUT MAY HAVE KNOWN THAT CERTAIN

12:02PM 8  REPRESENTATIONS THAT EACH OTHER MIGHT HAVE BEEN MAKING TO

12:02PM 9  INVESTORS WERE FALSE, KNOWING THAT SOMEONE ELSE IS MAKING THE

12:02PM 10  FALSE REPRESENTATION, OR EVEN ACQUIESCING IN IT, IS NOT

12:02PM 11  CONSPIRACY UNLESS THERE IS A MEETING OF THE MINDS.

12:03PM 12      MS. VOLKAR REPEATEDLY SAID THAT THESE TEXT MESSAGES SHOW

12:03PM 13  THAT MS. HOLMES AND MR. BALWANI KNEW INFORMATION THAT THEY

12:03PM 14  DIDN'T SHARE WITH INVESTORS, THE MATERIALS THAT THEY PROVIDED

12:03PM 15  TO INVESTORS DIDN'T CONTAIN THAT INFORMATION.

12:03PM 16      THOSE ARE ALL OMISSION TYPE ARGUMENTS, WHICH ARE NO LONGER

12:03PM 17  VALID IN THIS CASE.

12:03PM 18      AGAIN, THERE NEEDS TO BE AN AFFIRMATIVE MISREPRESENTATION

12:03PM 19  TO AN INVESTOR, AND THIS OMISSION TYPE DID NOT CONTAIN, DID NOT

12:03PM 20  DISCLOSE THEORY JUST DOESN'T WORK GIVEN THAT THE GOVERNMENT

12:03PM 21  FORECLOSED AN OMISSION THEORY.

12:03PM 22          THE COURT:  I APPRECIATE THAT.

12:03PM 23      ONE PIECE OF EVIDENCE THAT SEEMED TO HAVE SOME

12:03PM 24  SIGNIFICANCE WAS THE LETTER WITH THE LOGOS AND HOW THAT WAS

12:03PM 25  PREPARED AND HOW IT WAS ALLEGEDLY USED, OR THE JURY PERHAPS

| | | |
|---|---|---|
| 12:03PM | 1 | FOUND WAS USED WHEN IT WAS DELIVERED BY YOUR CLIENT TO OTHER |
| 12:04PM | 2 | POTENTIAL INVESTORS. |
| 12:04PM | 3 | DO YOU WANT TO -- IS THAT A PIECE OF AN AFFIRMATIVE |
| 12:04PM | 4 | EVIDENCE? |
| 12:04PM | 5 | MS. SAHARIA: SURE. I'M HAPPY TO SPEAK TO THAT. |
| 12:04PM | 6 | I DON'T THINK THAT ACTUALLY GOES TO THE CONSPIRACY COUNT |
| 12:04PM | 7 | BECAUSE I DON'T RECALL THERE BEING ANY EVIDENCE THAT |
| 12:04PM | 8 | MR. BALWANI HAD ANY KNOWLEDGE OF WHO OR WHEN THOSE LOGOS WERE |
| 12:04PM | 9 | AFFIXED TO THOSE DOCUMENTS. |
| 12:04PM | 10 | THE COURT: WE HAD SOME DISCUSSION ABOUT THAT, |
| 12:04PM | 11 | RIGHT. THERE WAS SOME DISCUSSION, I THINK, SOME -- |
| 12:04PM | 12 | MS. SAHARIA: YEAH. |
| 12:04PM | 13 | I DON'T KNOW WHAT CAME OUT AT MR. BALWANI'S TRIAL, OF |
| 12:04PM | 14 | COURSE. |
| 12:04PM | 15 | BUT AS I RECALL, SOME OF THOSE PHARMACEUTICAL ENDEAVORS |
| 12:04PM | 16 | OCCURRED EVEN BEFORE HE JOINED THE COMPANY. |
| 12:04PM | 17 | SO I'M NOT AWARE THAT THERE WAS ANY EVIDENCE OF THAT IN |
| 12:04PM | 18 | OUR CASE, THAT MR. BALWANI HAD THAT KNOWLEDGE SUCH THAT HE OR |
| 12:04PM | 19 | MS. HOLMES -- AND MS. HOLMES COULD HAVE AGREED TO MAKE THAT |
| 12:04PM | 20 | PARTICULAR MISREPRESENTATION. |
| 12:04PM | 21 | BUT LET ME ADDRESS THAT DOCUMENT AND THOSE REPORTS AS IT |
| 12:04PM | 22 | GOES TO THE SUBSTANTIVE WIRE FRAUD COUNT. |
| 12:04PM | 23 | THE COURT: RIGHT. |
| 12:04PM | 24 | MS. SAHARIA: BECAUSE I DO THINK IT'S RELEVANT |
| 12:05PM | 25 | THERE. |

12:05PM  1    ON THAT POINT, FIRST OF ALL, I THINK IT'S CRITICAL THAT

12:05PM  2    THE COURT, AGAIN, LOOK AT THE INDICTMENT LANGUAGE WHEN IT COMES

12:05PM  3    TO PHARMACEUTICAL COMPANIES.

12:05PM  4    THE INDICTMENT ALLEGES THAT MS. HOLMES MISREPRESENTED THAT

12:05PM  5    SEVERAL PHARMACEUTICAL COMPANIES AND RESEARCH INSTITUTIONS HAD

12:05PM  6    USED, EXAMINED, AND VALIDATED THERANOS'S TECHNOLOGY.

12:05PM  7    THE GOVERNMENT CERTAINLY DIDN'T PROVE THAT TO BE FALSE AND

12:05PM  8    CERTAINLY DIDN'T PROVE THAT MS. HOLMES KNEW THAT TO BE FALSE.

12:05PM  9    THE FACT IS THAT TEN PHARMACEUTICAL COMPANIES DID USE,

12:05PM  10    EXAMINE, AND VALIDATE MS. HOLMES OR THERANOS'S TECHNOLOGY.

12:05PM  11    THE GOVERNMENT BROUGHT THREE PHARMACEUTICAL WITNESSES TO

12:05PM  12    TRIAL WHO TESTIFIED ABOUT CONCERNS THAT THEY HAD ABOUT THE

12:05PM  13    TECHNOLOGY, NONE OF WHICH WERE SHARED IN REAL TIME WITH

12:05PM  14    MS. HOLMES OR WITH THERANOS AND THE EVIDENCE SHOWED THAT.

12:05PM  15    AND THE EVIDENCE FROM THE GOVERNMENT'S CASE ABOUT WHAT

12:06PM  16    THERANOS THOUGHT OF ITS PARTNERSHIPS WITH THOSE COMPANIES CAME

12:06PM  17    FROM MS. GANGAKHEDKAR, AND MS. GANGAKHEDKAR, WHO WORKED ON SOME

12:06PM  18    OF THOSE PARTNERSHIP, SAID THAT SHE VIEWED -- SHE WAS TALKING

12:06PM  19    IN THAT CONTEXT ABOUT THE GSK PARTNERSHIP -- THAT SHE DID, IN

12:06PM  20    FACT, VIEW THAT AS VALIDATING THERANOS'S TECHNOLOGY.

12:06PM  21    SO THERE'S NO EVIDENCE THAT MS. HOLMES DID NOT BELIEVE

12:06PM  22    THAT THOSE COMPANIES -- AND AGAIN, SHE WORKED WITH TEN

12:06PM  23    COMPANIES -- THAT THOSE COMPANIES HAD VALIDATED THERANOS'S

12:06PM  24    TECHNOLOGY.

12:06PM  25    SO WHEN IT --

35

| | |
|---|---|
| 12:06PM | 1 |
| 12:06PM | 2 |
| 12:06PM | 3 |
| 12:06PM | 4 |
| 12:06PM | 5 |
| 12:06PM | 6 |
| 12:06PM | 7 |
| 12:07PM | 8 |
| 12:07PM | 9 |
| 12:07PM | 10 |
| 12:07PM | 11 |
| 12:07PM | 12 |
| 12:07PM | 13 |
| 12:07PM | 14 |
| 12:07PM | 15 |
| 12:07PM | 16 |
| 12:07PM | 17 |
| 12:07PM | 18 |
| 12:07PM | 19 |
| 12:07PM | 20 |
| 12:07PM | 21 |
| 12:07PM | 22 |
| 12:07PM | 23 |
| 12:07PM | 24 |
| 12:07PM | 25 |

THE COURT: I'M SORRY. GO AHEAD AND FINISH.

MS. SAHARIA: NO, YOUR HONOR.

THE COURT: I'M CURIOUS, THROUGH A RULE 29 LENS --

AND I APPRECIATE YOUR ARGUMENT -- BUT ARE WE LOOKING AT THIS

THROUGH THE LENS OF, WELL, THE JURY DID LOOK, CONSIDER THIS,

BUT THEY HAD A DIFFERENT VIEW THAN WHAT YOU'RE ARTICULATING.

AND ARE YOU -- IS THE SEARCH HERE TO FIND THAT ACTUALLY,

JUDGE, THERE WAS NO WAY THAT A RATIONAL JUROR COULD HAVE MADE

THE DECISION THAT THEY DID? IS THAT THE QUESTION THAT GETS

ASKED?

MS. SAHARIA: OF COURSE THAT'S THE QUESTION, AND OUR

POSITION IS THAT A RATIONAL JUROR COULD NOT HAVE CONCLUDED THAT

THE GOVERNMENT FAILED TO PROVE WHAT IT ALLEGED IN THE

INDICTMENT, WHICH WAS THAT SEVERAL PHARMACEUTICAL COMPANIES AND

RESEARCH INSTITUTIONS USED, EXAMINED, AND VALIDATED THERANOS'S

TECHNOLOGY. THAT DID HAPPEN.

THE COURT: SO THEIR DECISION WAS IRRATIONAL.

MS. SAHARIA: THAT'S OUR POSITION.

THE COURT: RIGHT.

MS. SAHARIA: AND OF COURSE THAT'S WHY RULE 29

EXISTS.

THE COURT: RIGHT.

MS. SAHARIA: IT'S THE SAFETY VALVE BECAUSE

SOMETIMES JURORS DO MAKE IRRATIONAL DECISIONS.

THE COURT: OKAY.

12:07PM 1          MS. SAHARIA:  SO I THINK THAT COVERS WHAT I WANTED

12:07PM 2    TO TALK ABOUT WITH RESPECT TO CONSPIRACY.

12:07PM 3          MS. VOLKAR POINTED, ON THAT POINT, TO A SERIES OF

12:07PM 4    COMMUNICATIONS BETWEEN MS. HOLMES AND MR. BALWANI IN THE SAME

12:07PM 5    GENERAL TIME PERIOD THAT THEY WERE CORRESPONDING WITH

12:08PM 6    MR. MURDOCH.

12:08PM 7          I DO ENCOURAGE THE COURT TO ALWAYS GO BACK AND LOOK AT THE

12:08PM 8    EVIDENCE THAT THE GOVERNMENT CITES.

12:08PM 9          IF YOU LOOK AT 5387D, PAGE 24 AND 29, WHICH IS THE

12:08PM 10   LANGUAGE THAT MS. VOLKAR CITED ABOUT FIGHTING FIRES AND

12:08PM 11   NORMANDY BEING A DISASTER ZONE, IF YOU ACTUALLY LOOK AT THOSE

12:08PM 12   COMMUNICATIONS, THE TWO PARTIES, MS. HOLMES AND MR. BALWANI,

12:08PM 13   ARE TALKING ABOUT PERSONNEL IN THOSE -- THE PERSONNEL WHO ARE

12:08PM 14   WORKING IN THE LAB.  THEY'RE TALKING ABOUT THEIR CALL CENTER

12:08PM 15   OPERATIONS NOT WORKING RIGHT AND NEEDING TO FIX THAT, NEEDING

12:08PM 16   TO REPLACE CERTAIN PEOPLE IN THE LAB WHO THEY DIDN'T THINK WERE

12:08PM 17   DOING A GOOD JOB.

12:08PM 18          YES, IT IS TRUE THAT THEY DIDN'T TELL MR. MURDOCH IN THE

12:08PM 19   INVESTOR MATERIALS THAT THEY WERE DISSATISFIED WITH TINA IN THE

12:08PM 20   LAB.  THAT THAT'S ONE OF THE EXAMPLES.  OF COURSE NOT.  NO

12:08PM 21   COMPANY DOES THAT.

12:08PM 22          AND SHE DIDN'T OWE A DUTY OF DISCLOSURE TO MR. MURDOCH TO

12:09PM 23   TELL HIM EVERY PIECE OF INFORMATION ABOUT THE OPERATIONS OF THE

12:09PM 24   LABORATORY.

12:09PM 25          AND THE GOVERNMENT DOESN'T ARGUE THAT MS. HOLMES OR

12:09PM 1    MR. BALWANI MADE AN AFFIRMATIVE MISREPRESENTATION TO

12:09PM 2    MR. MURDOCH ABOUT THE SUBJECT MATTER OF THOSE TEXT MESSAGES.

12:09PM 3         THE COURT:  COULD THE JURY, IN HEARING ALL OF THE

12:09PM 4    EVIDENCE -- AND THERE WAS EVIDENCE ABOUT THE TEXTS AND THE

12:09PM 5    CONDITION OF THE LABORATORY.  THERE WAS EVIDENCE ABOUT -- I'LL

12:09PM 6    USE THE WORD SECRECY, I DON'T KNOW IF THAT CAME UP, BUT THE

12:09PM 7    CONCERN FOR PRIVACY AND SECURITY IN THE LAB AND THE TOTALITY OF

12:09PM 8    ALL OF THAT EVIDENCE THAT WITNESSES TESTIFIED ABOUT.

12:09PM 9    WOULD THAT, COULD A RATIONAL JUROR CONSIDER THAT WHEN IT

12:09PM 10   LOOKS AT THESE EXCHANGES ABOUT THE CONDITION OF THE LABORATORY,

12:09PM 11   AND WOULD THAT THEN INFORM AND GUIDE THEM IN A RATIONAL WAY AS

12:09PM 12   TO THE DECISION THAT THEY MADE?

12:09PM 13        MS. SAHARIA:  I DON'T THINK SO, YOUR HONOR.  I DON'T

12:10PM 14   SEE A CONNECTION BETWEEN THESE TEXT MESSAGES AND THE STEPS THAT

12:10PM 15   THERANOS TOOK TO PROTECT TRADE SECRETS, FOR INSTANCE, OR

12:10PM 16   PROTECT ORIGINALLY THE LAB, OF COURSE, IS A SENSITIVE PLACE

12:10PM 17   WHERE PATIENT INFORMATION IS MAINTAINED, AND THE COMPANY HAD

12:10PM 18   CERTAIN OBLIGATIONS WITH RESPECT TO THAT AS WELL.

12:10PM 19   I DON'T RECALL THERE BEING ANY TESTIMONY OR EVIDENCE FROM

12:10PM 20   WHICH A RATIONAL JUROR COULD CONCLUDE, RATIONALLY CONCLUDE THAT

12:10PM 21   THOSE STEPS WERE SOME SORT OF MECHANISM TO HIDE PROBLEMS IN THE

12:10PM 22   LABORATORY AS OPPOSED TO GENERAL, YOU KNOW, SECURITIES MEASURES

12:10PM 23   THAT ALL COMPANIES TAKE.

12:10PM 24        THE COURT:  THERE WAS SOME TESTIMONY ABOUT, OR TEXT

12:10PM 25   MESSAGES, I THINK IT WAS, ABOUT THE CONCERN, ABOUT THE CONCERN

38

| | |
|---|---|
| 12:10PM | 1 |
| 12:10PM | 2 |
| 12:11PM | 3 |

OF LEAKS, I'LL USE THAT, LEAKS IN THE LAB AND IDENTIFYING WHO
THE PERSONS OR INDIVIDUALS WERE AND WHO WERE THE SOURCE OF
SUPPOSED LEAKS, AND WOULD THAT HAVE GIVEN A RATIONAL JUROR
CONSIDERATION ABOUT COULD THEY THEN INFER THAT THERE WAS REASON
OR CONCERN ABOUT A LEAK BECAUSE THE TRUTH MIGHT OWN OUT SO TO
SPEAK, THAT TYPE OF THING?

MS. SAHARIA:  I DON'T THINK SO BECAUSE A JUROR, TO
MAKE THESE KIND OF INFERENCES, NEEDS TO HAVE SOME BASIS TO DRAW
THAT UP-FRONT.

I THINK THE LANGUAGE THAT THE NINTH CIRCUIT USES, IT NEEDS
TO BE AN INFERENCE THAT IS BASED ON LOGICAL EVIDENCE THAT IS
GROUNDED -- A LOGICAL CONNECTION THAT IS GROUNDED IN THE ACTUAL
EVIDENCE.

AND THOSE TEXT MESSAGES AROSE IN THE CONTEXT OF "THE
WALL STREET JOURNAL" REPORTING.  IT IS CLEAR AS DAY FROM THE
TEXT MESSAGES THAT MS. HOLMES AND MR. BALWANI WERE CONCERNED
THAT THOSE EMPLOYEES HAD DISCLOSED THERANOS TRADE SECRETS.
IT'S WRITTEN ALL THROUGHOUT THE TEXT MESSAGES THAT THAT WAS
THEIR CONCERN.

SO I DON'T KNOW HOW A RATIONAL JUROR COULD CONCLUDE THAT
THERE WAS SOME OTHER NEFARIOUS MOTIVATION FROM THOSE ACTIONS
WHEN THERE'S NO EVIDENCE TO SUPPORT THAT INFERENCE.  ALL OF THE
EVIDENCE IS TO THE CONTRARY.

THE COURT:  OKAY.  I WAS THINKING ABOUT THAT IN A
WAY JUST AS A JUROR MIGHT LOOK AT IT, MIGHT A RATIONAL JUROR

12:12PM 1  LOOK AT THIS AND SAY, WELL, THERE WAS CERTAINLY EVIDENCE FROM

12:12PM 2  ROSENDORFF AND OTHERS ABOUT THE QUALITY AND THE NATURE AND THE

12:12PM 3  CONDITION OF THE LAB, AND WOULD THIS EVIDENCE GIVE A RATIONAL

12:12PM 4  JUROR CAUSE TO THINK, WELL, THAT'S WHAT THEY WERE TRYING TO

12:12PM 5  HIDE IS THE DISABILITIES, THE INABILITY OF THE LAB TO FUNCTION

12:12PM 6  AS REPRESENTED TO THE PUBLIC AND OTHERS?  NO?

12:12PM 7          MS. SAHARIA:  I DON'T SEE ANY EVIDENCE FROM WHICH A

12:12PM 8  JUROR COULD CONNECT THOSE TWO THINGS, PARTICULARLY WHEN ONE

12:12PM 9  OCCURRED I THINK MORE THAN, YOU KNOW, AT LEAST A YEAR AFTER THE

12:12PM 10 OTHER, THE TEXT MESSAGES ABOUT THE LEAKS TO MR. CARREYROU

12:13PM 11 OCCURRING LATE -- OR AT SOME POINT IN 2015, AND DR. ROSENDORFF

12:13PM 12 LEAVING IN 2014.

12:13PM 13     AND WHEN IT COMES TO WHAT DR. ROSENDORFF DID OR DID NOT

12:13PM 14 COMMUNICATE TO MS. HOLMES ABOUT THE CONDITION OF THE

12:13PM 15 LABORATORY, IN THE END, HE TESTIFIED CLEAR AS DAY TO THE JURY

12:13PM 16 THAT HE APPROVED EVERY TEST THAT WAS APPROVED IN THE

12:13PM 17 LABORATORY, HE DID -- HE NEVER OFFERED A TEST HE DIDN'T BELIEVE

12:13PM 18 WAS ACCURATE AND RELIABLE.  HE NEVER RELEASED ANY TEST RESULTS

12:13PM 19 TO PATIENTS HE DIDN'T BELIEVE WERE ACCURATE AND RELIABLE, AND

12:13PM 20 MS. HOLMES NEVER ORDERED HIM TO DO THAT, EITHER.

12:13PM 21     SO IT'S HARD FOR ME TO SEE HOW A JUROR COULD CONCLUDE FROM

12:13PM 22 SOMETHING THAT HAPPENED A YEAR LATER A CONNECTION BACK TO

12:13PM 23 DR. ROSENDORFF.

12:13PM 24          THE COURT:  THANK YOU.

12:13PM 25          MS. SAHARIA:  LET ME JUST BRIEFLY TURN TO WIRE

| | | |
|---|---|---|
| 12:13PM | 1 | FRAUD. |
| 12:13PM | 2 | MS. VOLKAR FOCUSSED ON ONE PARTICULAR POINT, WHICH WAS |
| 12:14PM | 3 | DOCTOR -- MR. GROSSMAN'S TESTIMONY ABOUT WHAT MS. HOLMES |
| 12:14PM | 4 | SUPPOSEDLY TOLD HIM. |
| 12:14PM | 5 | I WOULD AGAIN ENCOURAGE THE COURT TO LOOK AT THE CITED |
| 12:14PM | 6 | TESTIMONY. HE DID NOT SAY THAT MS. HOLMES TOLD HIM THAT THE |
| 12:14PM | 7 | MINILABS WERE BEING USED IN THE CLIA LAB. |
| 12:14PM | 8 | HIS EXACT WORDS WERE THAT MS. HOLMES HELD OUT, WHATEVER |
| 12:14PM | 9 | THAT MEANS. I DON'T KNOW WHAT THAT MEANS. |
| 12:14PM | 10 | THE COURT: COULD A RATIONAL JUROR FIND THAT THAT |
| 12:14PM | 11 | MEANS HE TOLD ME? |
| 12:14PM | 12 | MS. SAHARIA: I DON'T THINK SO, BECAUSE IF YOU LOOK |
| 12:14PM | 13 | AT THE REST OF THE SAME PORTION OF HIS TESTIMONY, HE TALKS |
| 12:14PM | 14 | ABOUT GOING TO THE CLIA LAB, AND HE SAID, AND I SAW THE |
| 12:14PM | 15 | MINILABS IN THE CLIA LAB. |
| 12:14PM | 16 | WE ALL KNOW THAT THE MINILAB WAS NEVER IN THE CLIA LAB. |
| 12:14PM | 17 | THERE'S NO EVIDENCE THAT IT EVER WAS. |
| 12:14PM | 18 | AND SO IT'S CLEAR THAT MR. GROSSMAN, IN THIS PORTION OF |
| 12:14PM | 19 | HIS TESTIMONY, IS CONFLATING THE MINILAB, THE EDISON. HE'S |
| 12:14PM | 20 | USING THIS ONE WORD FOR ALL OF THERANOS'S ANALYZERS, AND I |
| 12:15PM | 21 | DON'T THINK A JUROR COULD CONCLUDE FROM THAT CONGLOMERATION OF |
| 12:15PM | 22 | HIS TESTIMONY THAT HE WAS SAYING THAT MS. HOLMES TOLD HIM THE |
| 12:15PM | 23 | MINILAB ITSELF, THE 4.0 SERIES, AND NOT THE EDISON, THE 3.5 |
| 12:15PM | 24 | SERIES, BECAUSE HE'S CONFLATING THE TWO, WAS BEING USED IN THE |
| 12:15PM | 25 | CLIA LABORATORY. |

12:15PM 1     OF COURSE THE 3.5 DEVICE WAS BEING USED IN THE CLIA

12:15PM 2   LABORATORY.  THAT'S UNDOUBTEDLY WHAT HE SAW WHEN HE WAS IN THE

12:15PM 3   CLIA LABORATORY AND HE CALLED IT THE MINILAB, AND SO WE CANNOT

12:15PM 4   DRAW ANY CONCLUSIONS FROM THAT TESTIMONY.

12:15PM 5     THE COURT:  CAN AND WOULD A RATIONAL JUROR, SITTING

12:15PM 6   BACK AND LISTENING TO ALL OF THE EVIDENCE -- AND THERE WAS

12:15PM 7   EVIDENCE THAT THE GOVERNMENT PUT ON THAT SUGGESTED THAT YOUR

12:15PM 8   CLIENT WAS LESS THAN FULSOME, LET ME PUT IT THAT WAY, IN MANY

12:15PM 9   OF THE RESPONSES THAT SHE MADE, IN THE INTERVIEWS, IN

12:15PM 10  PUBLICATIONS, IN CONVERSATIONS WITH INVESTORS AND OTHERS.

12:15PM 11    AND COULD A JUROR, HEARING ALL OF THAT EVIDENCE, COULD A

12:16PM 12  RATIONAL JUROR SAY, WELL, AS YOU POINT OUT, SHE NEVER SAID

12:16PM 13  THIS, OR GROSSMAN FELT THIS.

12:16PM 14    BUT THE TOTALITY OF THE HALF-TRUTHS, I'LL JUST CALL THEM

12:16PM 15  THAT -- AND I DON'T MEAN ANYTHING PEJORATIVE -- BUT THE

12:16PM 16  TOTALITY OF ALL OF THOSE STATEMENTS, MISSTATEMENTS, COULD A

12:16PM 17  RATIONAL JUROR LOOK AT THIS AND SAY, THERE ARE SO MANY OF THOSE

12:16PM 18  THAT THAT SEEMS TO BE PART OF A SCHEME OR PART OF THE PLAN AND

12:16PM 19  IT FITS IN?  IS THAT IRRATIONAL FOR A JUROR TO THINK ABOUT ALL

12:16PM 20  OF THAT?

12:16PM 21    MS. SAHARIA:  WE SUBMIT THAT IT IS.

12:16PM 22    THE COURT:  OKAY.

12:16PM 23    MS. SAHARIA:  MEANING, I DON'T THINK --

12:16PM 24    THE COURT:  THAT WASN'T A SOFT BALL QUESTION, BUT I

12:16PM 25  SUPPOSE IT WAS.

| | |
|---|---|
| 12:16PM | 1 |

MS. SAHARIA:  I UNDERSTAND THAT, YOUR HONOR.

WE DON'T BELIEVE THAT THE EVIDENCE SHOWS THAT MS. HOLMES

MADE MISREPRESENTATIONS OR HALF-TRUTHS.

THE COURT:  SURE.  SURE.

MS. SAHARIA:  AGAIN, GOING BACK TO THIS POINT ABOUT

OMISSIONS, IT'S NOT ENOUGH THAT SHE WAS LESS THAN FULSOME.

THERE NEEDS TO BE AFFIRMATIVE MISREPRESENTATIONS OR

HALF-TRUTHS OR ESSENTIALLY A REPRESENTATION THAT IS MISLEADING,

EVEN IF NOT AFFIRMATIVELY FALSE.

AGAIN, WE DON'T SEE THAT THE GOVERNMENT PROVED THOSE

MISREPRESENTATIONS WERE HALF-TRUTHS.

MOST OF WHAT THEY POINT YOU TO ARE MS. HOLMES TALKING

ABOUT THERANOS'S TECHNOLOGY, WHICH AT THAT POINT DURING THE

RELEVANT PERIOD WAS THE MINILAB.  THAT IS A TECHNOLOGY THAT IT

WAS SUBMITTING TO THE FDA FOR APPROVAL.  IT'S THE TECHNOLOGY

THAT CONDUCTED ALL FOUR KINDS OF TESTS.  THE GOVERNMENT DIDN'T

PROVE THAT IT COULDN'T CONDUCT ALL FOUR KINDS OF TESTS.

SO WHEN SHE WAS TALKING ABOUT THAT TECHNOLOGY, I DON'T

THINK A RATIONAL JUROR COULD CONCLUDE FROM THAT THAT SHE WAS

INTENDING TO MISLEAD INVESTORS ABOUT WHAT WAS BEING USED IN THE

CLIA LAB, THAT BEING THE 3.5 DEVICE.

THE COURT:  THANK YOU.

MS. SAHARIA:  WITH THAT, I THINK THAT COVERS

EVERYTHING THAT I WANTED TO COVER.

THE COURT:  OKAY.  THANK YOU.

12:18PM 1      MS. VOLKAR IS EAGER TO JUST ASK ME FOR TWO MINUTES, I

12:18PM 2   THINK.

12:18PM 3      IS THAT RIGHT, MS. VOLKAR?

12:18PM 4         MS. VOLKAR:  YOUR HONOR, I'LL BE GUIDED BY THE

12:18PM 5   COURT.

12:18PM 6         THE COURT:  I'M HAPPY TO HEAR FROM YOU, AND THEN

12:18PM 7   I'LL HEAR FINALLY FROM THE DEFENSE IF YOU WANT TO RESPOND TO

12:18PM 8   SOMETHING.

12:18PM 9         MS. VOLKAR:  SURE, I WILL RESPOND.

12:18PM 10     I FEAR THAT WE'LL BE HERE ALL DAY AS WE UNRAVEL EACH

12:18PM 11  CATEGORY OF MISREPRESENTATION ONE BY ONE, SO I HAVE SOME

12:18PM 12  CONCERNS ABOUT THAT.

12:18PM 13     BUT I WILL TRY TO BE BRIEF AND RESPOND TO JUST A COUPLE OF

12:18PM 14  POINTS.

12:18PM 15     FIRST, I THINK THE COURT HAS A GOOD SENSE OF WHAT A

12:18PM 16  RATIONAL JUROR IS, AND I THINK MS. SAHARIA FIGHTS THE STANDARD

12:18PM 17  THAT IS VERY UNFAVORABLE TO DEFENDANTS ON A RULE 29 MOTION.  IT

12:18PM 18  IS A VERY HIGH BAR.  THE NINTH CIRCUIT SAYS OVER AND OVER AGAIN

12:19PM 19  THAT THIS IS A HIGH THRESHOLD TO MEET.

12:19PM 20     IN CASE THERE IS ANY DOUBT, THE FIFTH CIRCUIT CASE I

12:19PM 21  POINTED TO EARLIER, SANDERS, USES "BLACK'S LAW DICTIONARY" TO

12:19PM 22  DEFINE RATIONAL AS NOT ABSURD, NOT PREPOSTEROUS, NOT FOOLISH,

12:19PM 23  OR NOT FANCIFUL.

12:19PM 24     ON THE CONSPIRACY POINT, I WILL START WITH SOMETHING THAT

12:19PM 25  ALSO WRAPS INTO THE PHARMACEUTICAL POINT.

44

| | | |
|---|---|---|
| 12:19PM | 1 | MS. SAHARIA SAID THERE WAS NO EVIDENCE OF MEETING OF THE |
| 12:19PM | 2 | MINDS AND SAID THAT THE EVIDENCE THAT THE GOVERNMENT POINTED TO |
| 12:19PM | 3 | IN 2009 IS IRRELEVANT. |
| 12:19PM | 4 | AS YOUR HONOR HEARD US ARGUE IN THE BALWANI CASE, OF |
| 12:19PM | 5 | COURSE IT'S NOT IRRELEVANT. EVERYTHING IS RELEVANT EVEN IF |
| 12:19PM | 6 | IT'S NOT DURING THE CONSPIRACY PERIOD. |
| 12:19PM | 7 | WHY IT'S RELEVANT HERE TO THE CONSPIRACY COUNT IN |
| 12:19PM | 8 | PARTICULAR IS THAT IN 2009 THERANOS WAS SO UNDERWATER THAT THEY |
| 12:20PM | 9 | WERE STRUGGLING TO MAKE PAYROLL. THE COURT HEARD THAT FROM |
| 12:20PM | 10 | MS. YAM. |
| 12:20PM | 11 | THE ONLY REASON IT WAS ABLE TO CONTINUE AS A COMPANY TO |
| 12:20PM | 12 | 2010 WAS BECAUSE OF MR. BALWANI'S LOAN, OR, I'M SORRY, THE LOAN |
| 12:20PM | 13 | THAT MR. BALWANI PERSONALLY GUARANTEED. THAT INFORMATION ALSO |
| 12:20PM | 14 | CAME IN THROUGH MS. YAM. |
| 12:20PM | 15 | AND THEN THERE IS A SWITCH IN FOCUS FROM THE |
| 12:20PM | 16 | PHARMACEUTICAL COMPANIES -- WHICH AT THIS POINT IN TIME A |
| 12:20PM | 17 | REASONABLE INFERENCE A RATIONAL JUROR COULD MAKE IS THAT BOTH |
| 12:20PM | 18 | MS. HOLMES AND MR. BALWANI KNEW THE PHARMACEUTICAL COMPANIES |
| 12:20PM | 19 | WERE NOT PROVIDING SUFFICIENT REVENUE BECAUSE THE COMPANY WAS |
| 12:20PM | 20 | ABOUT TO GO UNDER BUT FOR THE LOAN. |
| 12:20PM | 21 | THEY SWITCHED FOCUS TO RETAIL, AND THEN WHAT DO WE SEE? |
| 12:20PM | 22 | WE SEE IN APRIL 2010 MS. HOLMES ADDING THE LOGOS TO THE |
| 12:20PM | 23 | PHARMACEUTICAL REPORTS, THE PFIZER REPORT, THE SCHERING-PLOUGH |
| 12:20PM | 24 | REPORT, AND THE GSK REPORT, AND SENDING THEM TO WALGREENS AND |
| 12:20PM | 25 | SAFEWAY. |

| | |
|---|---|
| 12:21PM | 1 |
| 12:21PM | 2 |
| 12:21PM | 3 |
| 12:21PM | 4 |
| 12:21PM | 5 |
| 12:21PM | 6 |
| 12:21PM | 7 |
| 12:21PM | 8 |
| 12:21PM | 9 |
| 12:21PM | 10 |
| 12:21PM | 11 |
| 12:21PM | 12 |
| 12:21PM | 13 |
| 12:21PM | 14 |
| 12:21PM | 15 |
| 12:21PM | 16 |
| 12:21PM | 17 |
| 12:22PM | 18 |
| 12:22PM | 19 |
| 12:22PM | 20 |
| 12:22PM | 21 |
| 12:22PM | 22 |
| 12:22PM | 23 |
| 12:22PM | 24 |
| 12:22PM | 25 |

WHAT DO WE ALSO SEE?  WE HAVE STEVE BYRD WHO TESTIFIED THAT IN 2010 MS. HOLMES TOLD HIM THAT THERANOS WAS CASH FLOW NEUTRAL.  THAT'S A DIRECT LIE.

AND I KNOW MS. SAHARIA IS GOING TO COME BACK AND SAY IT'S NOT IN THE INDICTMENT.

IT GOES TO KNOWLEDGE.  THESE ARE RELEVANT FACTS TO MS. HOLMES'S KNOWLEDGE, WHAT SHE KNEW ABOUT THE COMPANY, AND WHAT SHE WAS PRESENTING TO INVESTORS.

AND BECAUSE MS. SAHARIA SAID THERE WERE NO HALF-TRUTHS, AND WE'RE ON THE TOPIC OF PHARMACEUTICAL COMPANIES, I'LL POINT THE COURT TO TX -- I'M SORRY, TRIAL EXHIBIT 291.  THAT'S THE EMAIL WHERE MS. HOLMES SENT THESE FALSIFIED OR DOCTORED PHARMACEUTICAL REPORTS TO WALGREENS AND REFERS TO THEM IN THE EMAIL AS THREE INDEPENDENT DUE DILIGENCE REPORTS FROM GSK, PFIZER, AND SCHERING-PLOUGH AFTER THEIR OWN TECHNICAL VALIDATION.

SHE KNOWS EVERY SINGLE ONE OF THOSE STATEMENTS IS FALSE BECAUSE THERANOS AUTHORED THE REPORTS.  WE SAW THE EVIDENCE WHERE SHE SENT THEM TO THE PHARMACEUTICAL COMPANIES, AND WE SAW THE EVIDENCE FROM SHANE WEBER, WHO TESTIFIED THAT HE TALKED TO THE DEFENDANT ON THE PHONE AND SAID THAT PFIZER DID NOT HAVE A FORESEEABLE USE FOR THERANOS'S DEVICE, AND THAT WAS ALSO MEMORIALIZED INTERNALLY AT TRIAL EXHIBIT 174.

THAT CONVERSATION BETWEEN SHANE WEBER AND MS. HOLMES, WHICH THE COURT HAS TO CREDIT THAT THE JURY BELIEVED TO BE TRUE

12:22PM 1    UNDER A RULE 29 STANDARD, THAT CONVERSATION OCCURRED AFTER

12:22PM 2    DEFENDANT SENT THE ORIGINAL DRAFT REPORT IN TRIAL EXHIBIT 143

12:22PM 3    THAT DID NOT HAVE THE LOGO.

12:22PM 4        SO LET'S LOOK AT THE TIMELINE.  MS. HOLMES SENDS A REPORT

12:22PM 5    WRITTEN BY THERANOS TO PFIZER.  MS. HOLMES HAD A CONVERSATION

12:22PM 6    WITH SHANE WEBER WHERE SHANE WEBER SAYS PFIZER HAS NO

12:22PM 7    FORESEEABLE USE FOR YOUR TECHNOLOGY.

12:22PM 8        THE COMPANY IS SO LOW ON FUNDS, THEY NEED A LOAN TO

12:22PM 9    SURVIVE.

12:22PM 10        AND THEN IN 2010, THE START OF THE CONSPIRACY PERIOD,

12:23PM 11   MS. HOLMES ALTERS THOSE PHARMACEUTICAL REPORTS AND PRESENTS

12:23PM 12   THEM TO WALGREENS AS VALIDATION OF THE TECHNOLOGY.

12:23PM 13        AND THAT'S WHY I DON'T THINK IT'S A CONSTRUCTIVE AMENDMENT

12:23PM 14   OR A VARIANCE, BECAUSE THE ENTIRE POINT OF SENDING THESE

12:23PM 15   DOCTORED REPORTS IS TO SAY OTHER COMPANIES THAT DO THIS ALL THE

12:23PM 16   TIME HAVE LOOKED AT THIS MACHINE AND DECLARED THAT IT WORKS,

12:23PM 17   LOOK AT THESE WONDERFUL CONCLUSIONS.

12:23PM 18        IN THE CASE OF SCHERING-PLOUGH, MS. HOLMES EVEN EDITED THE

12:23PM 19   CONCLUSIONS TO MAKE THEM MORE FAVORABLE.

12:23PM 20        FROM ALL OF THAT, A RATIONAL JUROR COULD CONCLUDE -- A

12:23PM 21   REASONABLE INFERENCE FROM ALL OF THAT IS NOT ONLY THAT

12:23PM 22   MS. HOLMES MADE FALSE STATEMENTS TO WALGREENS WITH RESPECT TO

12:23PM 23   THE RELATIONSHIPS WITH PHARMACEUTICAL COMPANIES, BUT ALSO THAT

12:23PM 24   MS. HOLMES AND MR. BALWANI ACTED IN TANDEM, AS MR. BALWANI WAS

12:23PM 25   INCLUDED ON THOSE REPORTS, IN DUPING WALGREENS AND LATER

12:23PM 1    SAFEWAY.

12:24PM 2        AND THEN THE LAST POINT THAT I WANT TO MAKE IS THE

12:24PM 3    RETALIATION POINT, BECAUSE I AGREE WITH YOUR HONOR, AND THE TWO

12:24PM 4    CASES THAT I CITED EARLIER ON THE CONSPIRACY POINT BOTH TALK

12:24PM 5    ABOUT HOW THE DEFENDANTS ACT WHEN THE TRUTH MIGHT COME TO LIGHT

12:24PM 6    OR DOES COME TO LIGHT.

12:24PM 7        AND THAT'S CLEAR EVIDENCE WE HAVE IN THIS CASE, TOO.

12:24PM 8        WE HAVE TWO INSTANCES.  WE HAVE BEFORE THE NEGATIVE

12:24PM 9    "WALL STREET JOURNAL" ARTICLE WHEN WE SEE WITH RESPECT TO --

12:24PM 10   WELL, I'LL JUST TAKE THAT TIME PERIOD FIRST.

12:24PM 11       WE GET TO SEE MS. HOLMES AND HER TREATMENT OF MEDIA

12:24PM 12   SOURCES THAT ARE POSITIVE TO HER, SUCH AS ROGER PARLOFF OR THE

12:24PM 13   JOE RAGO ARTICLE, AND WE GET TO SEE HER ENGAGING WITH THEM, IN

12:24PM 14   SOME INSTANCES REVIEWING DRAFTS OF THEIR ARTICLES BEFORE

12:24PM 15   THEY'RE SENT OUT.  WE SEE HER SENDING COPIES OF THOSE ARTICLES

12:24PM 16   TO INVESTORS.

12:24PM 17       AND THEN WE SEE HOW SHE TREATS MR. CARREYROU WHEN SHE

12:24PM 18   BELIEVES HE'S GOING TO WRITE SOMETHING NEGATIVE.

12:24PM 19       AND CLEARLY THE GOVERNMENT DISAGREES WITH MS. SAHARIA

12:25PM 20   ABOUT WHETHER OR NOT THEY WERE WORRIED ABOUT THE TRUTH OF THOSE

12:25PM 21   ALLEGATIONS.

12:25PM 22       THERE IS -- I CAN FIND THE PIN CITE IN A MOMENT IF IT'S

12:25PM 23   NECESSARY, BUT THERE'S THE APRIL 2015 TEXT MESSAGE WHERE THEY

12:25PM 24   SAY, LET'S MAKE HE GETS A FINGERSTICK.  I THINK HE'S LOOKING TO

12:25PM 25   WRITE SOMETHING NEGATIVE.

12:25PM 1      THEY WANT TO ALTER MR. CARREYROU'S EXPERIENCE IN THE

12:25PM 2  WALGREENS TO TRY TO PREVENT HIM FROM WRITING SOMETHING

12:25PM 3  NEGATIVE.

12:25PM 4      AND THEN WE CAN ALSO SEE HOW MS. HOLMES AND MR. BALWANI

12:25PM 5  TREATED EMPLOYEES WHO THEY WERE AFRAID WOULD LET THE TRUTH GET

12:25PM 6  OUT ABOUT THE CAPABILITY OF THE DEVICE AND THE USE OF THIRD

12:25PM 7  PARTY MACHINES.

12:25PM 8      WE HEARD MS. CHEUNG TESTIFY ABOUT HOW THEY SENT

12:25PM 9  DAVID BOIES AFTER HER, AND WE ALSO HEARD THAT TYLER SHULTZ

12:25PM 10  UNDERWENT SIMILAR TREATMENT.

12:25PM 11      FINALLY, THERE'S THE OTHER PERIOD OF TIME, WHICH IS AFTER

12:25PM 12  THE OCTOBER 2015 "WALL STREET JOURNAL" ARTICLE COMES OUT, AND

12:25PM 13  THEIR TEXT MESSAGES ARE REVEALING THERE AS WELL.  THERE'S AN

12:26PM 14  EXCHANGE -- AND THIS ONE I DO HAVE THE CITES AT MY FINGERTIPS

12:26PM 15  FOR.  THERE'S AN EXCHANGE AT 5387D, 116.

12:26PM 16      BALWANI SAYS WALGREENS FREAKING OUT, OR WAG FREAKING OUT,

12:26PM 17  LACK OF TRANSPARENCY.

12:26PM 18      DOWN THE PAGE, MS. HOLMES SAYS, WE'LL HAVE TO PRESENT WELL

12:26PM 19  THAT WE HADN'T DECIDED TO SHUT OFF THE FINGERSTICK TESTING.

12:26PM 20      AND MR. BALWANI RESPONDS, BAD IDEA.  AT THIS POINT THEY

12:26PM 21  KNOW SO NEED TO BE TRANSPARENT.

12:26PM 22      THE ONLY THING THAT CHANGED FROM WALGREENS'S PERSPECTIVE

12:26PM 23  WAS LEARNING ABOUT HOW THERANOS WAS CONDUCTING ITS TESTS

12:26PM 24  THROUGH A MEDIA ARTICLE AND NOT FROM THE DEFENDANTS.

12:26PM 25      SO, AGAIN, WE COULD STAND UP HERE ALL DAY AND HAVE A

12:26PM 1    REPEAT OF THE PARTIES' CLOSING ARGUMENTS AND HOW BOTH SIDES

12:26PM 2    VIEW THE EVIDENCE, BUT I REALLY JUST WANT TO END ON THE HIGH

12:26PM 3    THRESHOLD OF A RULE 29, THAT ALL OF THE EVIDENCE MUST BE VIEWED

12:26PM 4    IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION, TESTIMONY FROM

12:27PM 5    ONE SINGLE WITNESS IS SUFFICIENT.

12:27PM 6        ALL THREE INVESTOR VICTIMS TESTIFIED, AND OF COURSE EVEN

12:27PM 7    MORE INVESTORS THAN THAT TESTIFIED, AND THE GOVERNMENT'S

12:27PM 8    POSITION IS THAT THE SCHEME TO DEFRAUD IS MORE THAN SUPPORTED

12:27PM 9    BY SEVERAL DIFFERENT CATEGORIES OF FALSE MISREPRESENTATIONS

12:27PM 10    THAT ALSO CLEARLY DEMONSTRATE MS. HOLMES'S KNOWLEDGE AND INTENT

12:27PM 11    TO DECEIVE AND CHEAT, AND FOR THOSE REASONS WE THINK THE COURT

12:27PM 12    SHOULD DENY.

12:27PM 13        THANK YOU.

12:27PM 14          THE COURT:  THANK YOU.

12:27PM 15        MS. SAHARIA, THE FINAL, FINAL WORD.

12:27PM 16          MS. SAHARIA:  THANK YOU.

12:27PM 17        I'LL JUST CLOSE WITH THE PHARMACEUTICAL REPORTS SINCE

12:27PM 18    THAT'S WHERE MS. VOLKAR SPENT MOST OF HER TIME.

12:27PM 19        FIRST OF ALL, I STILL DIDN'T HEAR ANY EVIDENCE FROM OUR

12:27PM 20    TRIAL THAT MR. BALWANI KNEW HOW THE CONTENT OF THOSE REPORTS

12:27PM 21    WERE GENERATED, OR KNEW ANYTHING ABOUT THE LOGOS FROM THOSE

12:27PM 22    REPORTS, SO I STILL DON'T SEE HOW THAT FACT HAS ANYTHING TO DO

12:27PM 23    WITH A CONSPIRACY WHEN IT COMES TO THE CONTENT OF THOSE

12:27PM 24    REPORTS.

12:27PM 25        SECOND, SHE HIGHLIGHTED REPEATEDLY MR. WEBER'S, OR

| | | |
|---|---|---|
| 12:28PM | 1 | DR. WEBER'S CALL WITH MS. HOLMES WHERE HE SAID THAT PFIZER HAD |
| 12:28PM | 2 | NO NEED TO USE THE TECHNOLOGY IN THE FUTURE. |
| 12:28PM | 3 | THERE'S A WORLD OF DIFFERENCE BETWEEN A COMPANY SAYING WE |
| 12:28PM | 4 | DON'T HAVE A NEED FOR YOUR TECHNOLOGY AND YOUR TECHNOLOGY |
| 12:28PM | 5 | DOESN'T WORK OR WE DON'T THINK YOU VALIDATED YOUR TECHNOLOGY, |
| 12:28PM | 6 | OR YOUR TECHNOLOGY IS BAD. |
| 12:28PM | 7 | HE DIDN'T SAY ANY OF THAT TO HER. |
| 12:28PM | 8 | AND THERE'S NO EVIDENCE IN THE RECORD FROM WHICH A JURY |
| 12:28PM | 9 | COULD CONCLUDE THAT MS. HOLMES DID NOT PERSONALLY BELIEVE THAT |
| 12:28PM | 10 | HER WORK WITH TEN PHARMACEUTICAL COMPANIES, MORE THAN THE THREE |
| 12:28PM | 11 | THAT THE GOVERNMENT BROUGHT IN TO TESTIFY, THAT THAT DID NOT |
| 12:28PM | 12 | VALIDATE THERANOS'S TECHNOLOGY. THAT IS THE INDICTMENT |
| 12:28PM | 13 | ALLEGATION, AND THERE'S JUST NO EVIDENCE FROM WHICH A JURY |
| 12:28PM | 14 | COULD CONCLUDE THAT. |
| 12:28PM | 15 | AS TO THE LOGOS AND THE EMAIL TO WALGREENS, AGAIN, THERE'S |
| 12:28PM | 16 | NO EVIDENCE THAT MS. HOLMES THOUGHT SHE WAS DOING SOMETHING |
| 12:29PM | 17 | WRONG, THAT SHE WAS INTENDING TO DEFRAUD AS OPPOSED TO SIMPLY |
| 12:29PM | 18 | IDENTIFYING WITH A PICTURE WHICH COMPANY WAS INVOLVED IN THE |
| 12:29PM | 19 | PARTNERSHIP. THE REPORTS SHOWED BOTH THE THERANOS LOGO AND THE |
| 12:29PM | 20 | LOGO OF THE COMPANY. |
| 12:29PM | 21 | IN THE CASE OF THE PFIZER REPORT, THAT IS CLEAR AS DAY THE |
| 12:29PM | 22 | REPORT WAS WRITTEN BY THERANOS BECAUSE IT'S ON THERANOS |
| 12:29PM | 23 | LETTERHEAD WITH THE THERANOS ADDRESS ON THE REPORT ITSELF. |
| 12:29PM | 24 | AND IT'S ALSO -- THERE'S ALSO NO EVIDENCE THAT MS. HOLMES |
| 12:29PM | 25 | DIDN'T REASONABLY VIEW THE REPORTS AS BEING FROM THOSE |

12:29PM 1     COMPANIES. GSK ITSELF WROTE THE REPORT. BOTH OF THEM WERE

12:29PM 2     SUBMITTED TO THOSE COMPANIES.

12:29PM 3         THE PFIZER REPORT -- CONTRACT REQUIRED THERANOS TO DRAFT

12:29PM 4     THE REPORT THAT RESULTED FROM THEIR JOINT PARTNERSHIP.

12:29PM 5         AND SCHERING-PLOUGH ASKED THERANOS TO DRAFT THAT REPORT AS

12:29PM 6     PART OF A JOINT PARTNERSHIP.

12:29PM 7         COULD THE EMAIL TO WALGREENS HAVE BEEN MORE PRECISE?

12:30PM 8     SURE. WE ALL WRITE IMPRECISE EMAILS EVERY DAY. GOD HELP US

12:30PM 9     ALL IF THEY'RE EVIDENCE OF A CRIME.

12:30PM 10         THERE'S NO EVIDENCE THAT SHE WAS INTENDING TO DEFRAUD

12:30PM 11     WALGREENS IN THAT EMAIL.

12:30PM 12             THE COURT: THANK YOU VERY MUCH.

12:30PM 13             MS. SAHARIA: WITH THAT, I'LL REST.

12:30PM 14             THE COURT: THANK YOU.

12:30PM 15         I APPRECIATE THE COMMENTS AND THE PLEADINGS HERE. I'M

12:30PM 16     GOING TO LOOK AT THE CASES YOU CITE, AS WELL AS SOME OF THE

12:30PM 17     TRANSCRIPT CITES THAT YOU MENTION.

12:30PM 18         BUT I DO JUST WANT TO STATE FOR THE RECORD PERHAPS A

12:30PM 19     PRELIMINARY FINDING OF THE COURT AT THIS POINT BASED ON YOUR

12:30PM 20     PLEADINGS AND THE COMMENTS THAT YOU'VE MADE, AND I APPRECIATE

12:30PM 21     THOSE.

12:30PM 22         AND OF COURSE, AS WE KNOW, AND AS YOU'VE RECOGNIZED, BOTH

12:30PM 23     SIDES HAVE RECOGNIZED THIS MORNING THAT FOR RULE 29, THE

12:30PM 24     EVIDENCE MUST BE VIEWED IN THE LIGHT MOST FAVORABLE TO THE

12:30PM 25     PROSECUTION AND TO THE JURY'S FINDING AND THE JURY'S VERDICT IN

12:30PM 1    THIS CASE.

12:30PM 2         AND OUR CASES TELL US ABOUT THE DESIRE TO MAINTAIN AND

12:31PM 3    RESPECT THE INTEGRITY OF JURORS' FINDINGS.  WE KNOW THAT.

12:31PM 4         RULE 29 EXISTS, AS MS. SAHARIA TELLS US, AS A SAFETY

12:31PM 5    VALVE, TO HAVE JUDICIAL CHECK AND HAVE THE PARTIES LOOK AT THE

12:31PM 6    FINDINGS OF A JURY TO DETERMINE WHETHER OR NOT, LOOKING AT IT

12:31PM 7    IN THE LENS MOST FAVORABLE TO THE PROSECUTION, WHETHER OR NOT

12:31PM 8    THE EVIDENCE IS ADEQUATE SUCH THAT TO ALLOW ANY RATIONAL TRIER

12:31PM 9    OF FACT TO FIND THE ESSENTIAL ELEMENTS OF THE OFFENSE BEYOND A

12:31PM 10   REASONABLE DOUBT, AND THAT'S WHAT OUR CONVERSATION HAS BEEN

12:31PM 11   ABOUT THIS MORNING, AND YOU'VE INDICATED THAT IN YOUR PLEADING.

12:31PM 12        SO THE QUESTION REALLY IS, IN VIEWING THE EVIDENCE IN THE

12:31PM 13   LIGHT MOST FAVORABLE TO THE PROSECUTION, COULD ANY RATIONAL

12:31PM 14   TRIER OF FACT HAVE MADE THE FINDINGS OF GUILT THAT THEY DID IN

12:31PM 15   THIS CASE BASED ON THE EVIDENCE THAT WE ALL HEARD AND THAT WAS

12:32PM 16   PRESENTED TO THE JURY?

12:32PM 17        AND WE KNOW THAT MS. HOLMES WAS INDICTED ON TEN COUNTS OF

12:32PM 18   WIRE FRAUD AND TWO COUNTS OF CONSPIRACY TO COMMIT WIRE FRAUD.

12:32PM 19   THE THIRD SUPERSEDING INDICTMENT INFORMS US OF THAT.

12:32PM 20        THE TRIAL IN THIS CASE WAS APPROXIMATELY FOUR MONTHS, IF I

12:32PM 21   RECALL, AND THE JURY REACHED PARTIAL VERDICTS AS WE ALL KNOW IN

12:32PM 22   THAT CASE.

12:32PM 23        THERE WAS UNANIMOUS FINDINGS OF GUILT ON THE FOUR COUNTS

12:32PM 24   THAT WE'RE TALKING ABOUT, AND THE JURY FOUND OTHERWISE ON THE

12:32PM 25   REMAINING SEVEN COUNTS.

12:32PM 1          THE COURT -- I'VE LISTENED TO THIS AND TO YOUR COMMENTS,

12:32PM 2    AND I'M PARTICULARLY INTERESTED IN THE RULE 33 AND RULE 29

12:32PM 3    DISCUSSION, WHETHER OR NOT THOSE INVADE THE PROVINCE OF ONE

12:32PM 4    ANOTHER.

12:32PM 5          THE COURT IS GOING TO CONSIDER THIS MOTION PROPERLY BEFORE

12:32PM 6    THE COURT AS A RULE 29 MOTION, AND THAT IS TO SET ASIDE THE

12:32PM 7    JURY VERDICT AND ENTER AN ACQUITTAL ON THE COUNTS REQUESTED.

12:33PM 8          I KNOW MS. HOLMES HAS, ALSO IN YOUR PLEADINGS, YOU RESERVE

12:33PM 9    ARGUMENTS MADE PREVIOUSLY ON THIS ISSUE.

12:33PM 10          MS. SAHARIA:  CORRECT, YOUR HONOR.

12:33PM 11          THE COURT:  AND I'LL NOTE THAT, AND YOU'VE INDICATED

12:33PM 12    SUCH IN YOUR PLEADINGS.  THAT'S ON THE MOTION TO DISMISS THAT

12:33PM 13    THE COURT HEARD SOME TIME AGO.

12:33PM 14          MS. SAHARIA:  AS TO THE STATUTE OF LIMITATIONS.

12:33PM 15          THE COURT:  CORRECT, CORRECT.

12:33PM 16    WE HEARD THAT, AND THE COURT HAS RULED ON THAT, AND OF

12:33PM 17    COURSE YOU'VE PRESERVED YOUR ARGUMENTS ON THAT.

12:33PM 18          BUT THE COURT IS GOING TO LOOK AT THIS MOTION UNDER THE

12:33PM 19    RULE 29 LENS AND CONSIDER YOUR BRIEFING AND CONSIDER YOUR

12:33PM 20    COMMENTS MADE TODAY UNDER THE RULE 29 RUBRIC.

12:33PM 21          LET ME STATE THAT AT THIS POINT, AND THIS IS A PRELIMINARY

12:33PM 22    DECISION, MY INTENT IS THAT -- I'M GOING TO MAKE SOME COMMENTS,

12:33PM 23    BRIEF, THIS MORNING, AND I'LL FOLLOW UP WITH A BRIEF ORDER AS

12:33PM 24    WELL AFTER I'VE REVIEWED WHAT YOU'VE SAID.  SO THIS IS JUST

12:33PM 25    PRELIMINARY.

12:33PM  1    BUT OVERALL THE COURT FINDS THAT, LOOKING AT THIS THROUGH

12:34PM  2    THE LENS MOST FAVORABLE TO THE PROSECUTION, THAT THE EVIDENCE

12:34PM  3    DOES SUPPORT, SUPPORT THE JURORS' FINDINGS IN THIS CASE.

12:34PM  4    THE EVIDENCE SHOWED, AND A REASONABLE JUROR COULD FIND,

12:34PM  5    THAT MS. HOLMES AND MR. BALWANI CONSPIRED WITH EACH OTHER,

12:34PM  6    KNOWING ABOUT THE COMPANY'S FINANCIAL SITUATIONS, THEIR DESIRE

12:34PM  7    TO KEEP THE COMPANY GOING, THEIR DESIRE TO MARSHAL FORWARD WITH

12:34PM  8    THEIR IDEAS, AND THE NEED FOR FINANCES TO ACCOMPLISH THAT.

12:34PM  9    WE HEARD, AND THE JURY HEARD RATHER, DIFFERENT WITNESSES

12:34PM  10   TALK ABOUT DIFFERENT TIME PERIODS AND THE FUNDING THAT THE

12:34PM  11   COMPANY HAD AT DIFFERENT TIME PERIODS DURING ITS HISTORY,

12:34PM  12   INCLUDING PRIOR TO THE INDICTMENT PERIOD, AND POST-INDICTMENT

12:34PM  13   PERIOD, TOO.

12:34PM  14   WE HEARD EVIDENCE, AND THE JURY HEARD EVIDENCE OF THE LAB

12:34PM  15   OPERATIONS, BOTH ITS ABILITIES, AND I'LL USE THE WORD

12:35PM  16   "DEFICIENCIES" DURING THE TIMEFRAME, AND THE EVIDENCE -- THERE

12:35PM  17   WAS EVIDENCE OF CONTINUED COMMUNICATIONS BETWEEN MS. HOLMES AND

12:35PM  18   MR. BALWANI.  THOSE ARE EVIDENCED THROUGH THE TEXT MESSAGES

12:35PM  19   THAT WE HEARD ABOUT.  THERE WAS EMAIL.  THERE WERE EMAILS ALSO

12:35PM  20   THAT THE JURY HAD.

12:35PM  21   THESE EMAILS AND TEXTS, MOSTLY EMAILS, TOUCHED ON ISSUES

12:35PM  22   ABOUT REGULATORS AND INTERNAL ISSUES REGARDING THE STATUS AND

12:35PM  23   THE ABILITY OF THE LAB TO PROCESS AND ACCURATELY TEST SAMPLES

12:35PM  24   ON ITS DEVICES AT EACH TIME PERIOD, AS REPRESENTED AT EACH TIME

12:35PM  25   PERIOD.

12:35PM 1    AND THOSE EMAILS, THOSE TEXTS REVEALED TO THE JURY AT

12:35PM 2    LEAST THAT EVIDENCE THAT THEY HEARD AND WE PRESUME THEY

12:35PM 3    DISCUSSED WHEN THEY REACHED THE VERDICTS THEY DID.

12:35PM 4    THE EVIDENCE, THE COURT FINDS, AGAIN PRELIMINARILY, THAT A

12:36PM 5    REASONABLE JUROR COULD FIND THAT THERE WAS EVIDENCE OF

12:36PM 6    MISREPRESENTATIONS TO INVESTORS THAT SUPPORTS THE FINDING OF

12:36PM 7    GUILT AS TO THOSE COUNTS INVOLVING THEM.

12:36PM 8    THERE WAS EVIDENCE ABOUT THE BINDERS THAT WERE PREPARED

12:36PM 9    AND ISSUES THAT THE JURY COULD FIND CONTAINED

12:36PM 10   MISREPRESENTATIONS TO INVESTORS, AND THAT A RATIONAL JUROR

12:36PM 11   COULD FIND THAT MS. HOLMES APPROVED OF THE INFORMATION THAT WAS

12:36PM 12   SUBMITTED INTO EACH OF THOSE BINDERS.  WE HEARD TESTIMONY FROM

12:36PM 13   WITNESSES WHO SUGGESTED THAT.

12:36PM 14   THE LOGOS -- I ASKED YOU SOME QUESTIONS ABOUT THE LOGOS.

12:36PM 15   I WAS CURIOUS ABOUT YOUR THOUGHTS, MS. SAHARIA, ABOUT RATIONAL

12:36PM 16   JURORS, ABOUT HOW THEY SHOULD AND WOULD INTERPRET THAT

12:36PM 17   EVIDENCE, THE PFIZER, THE SCHERING-PLOUGH LOGOS AFFIXED TO

12:37PM 18   DOCUMENTS.

12:37PM 19   THE EVIDENCE WOULD SUPPORT, AND THE COURT WOULD FIND THAT

12:37PM 20   A RATIONAL AND REASONABLE JUROR COULD LOOK AT THAT EVIDENCE AND

12:37PM 21   RECOGNIZE THAT IT PURPORTED TO VALIDATE OR GIVE THE IMPRIMATUR

12:37PM 22   OF THOSE TWO COMPANIES TO THERANOS'S TECHNOLOGY THAT IT

12:37PM 23   OTHERWISE DID NOT DESERVE.

12:37PM 24   AND THAT'S NOT AN OMISSION.  THAT'S RATHER AFFIRMATIVE

12:37PM 25   CONDUCT THAT WAS TAKEN.

12:37PM 1       A RATIONAL JUROR COULD FIND THAT THIS WAS IMPORTANT

12:37PM 2  OBVIOUSLY TO THE COMPANY, TO THERANOS, TO CONTINUE TO PURSUE

12:37PM 3  ITS BUSINESS OPERATIONS, INCLUDING CONTACT WITH WALGREENS AND

12:37PM 4  OTHERS, SAFEWAY.  WE KNOW SAFEWAY WAS INVOLVED AS WELL.

12:37PM 5       THERE WERE -- A RATIONAL JUROR COULD FIND THAT

12:37PM 6  REPRESENTATIONS MADE TO SAFEWAY AND TO WALGREENS DURING THE

12:37PM 7  TIME THAT THE COMPANY WAS INVOLVED IN THOSE NEGOTIATIONS, AND

12:38PM 8  SPECIFICALLY RELATED TO MS. HOLMES, AND I THINK THERE WAS

12:38PM 9  TESTIMONY FROM THE SAFEWAY CEO ABOUT THE NEGOTIATIONS OF THAT

12:38PM 10  CONTRACT.  HE FOUND IT VERY UNIQUE, I RECALL, THAT MS. HOLMES

12:38PM 11  WAS CONDUCTING THOSE NEGOTIATIONS ALONE WITHOUT BENEFIT OF

12:38PM 12  COUNSEL.

12:38PM 13       NOW, I SUPPOSE THERE'S A COUPLE OF WAYS OF LOOKING AT

12:38PM 14  THAT.  ONE WAY IS YOU COULD SAY IT WAS VERY PROVINCIAL OF HIM

12:38PM 15  TO SHE THAT A SMART YOUNG WOMAN COULD NOT HANDLE HERSELF IN

12:38PM 16  THOSE NEGOTIATIONS, AND PERHAPS THAT'S ONE WAY OF LOOKING AT

12:38PM 17  IT.

12:38PM 18       ANOTHER WAY FROM A BUSINESS, AT LEAST A BUSINESS THAT HE

12:38PM 19  WAS FAMILIAR WITH WAS THAT IT'S USUALLY, IN THESE TYPES OF

12:38PM 20  LARGE NEGOTIATIONS, PRUDENT AND ENCOURAGED TO HAVE COUNSEL, AT

12:38PM 21  LEAST COUNSEL PRESENT TO ASSIST WITH ANY QUESTIONS THAT MIGHT

12:38PM 22  COME UP.

12:38PM 23       BUT THE EVIDENCE SHOWED THAT OF COURSE YOUR CLIENT ENGAGED

12:39PM 24  WITH THE CEO IN THOSE NEGOTIATIONS BY HERSELF, MADE

12:39PM 25  REPRESENTATIONS, AND A REASONABLE JUROR COULD FIND THAT IF

12:39PM 1  THERE WERE MISREPRESENTATIONS MADE, THEY WERE MATERIAL AND THAT

12:39PM 2  MS. HOLMES WAS THE SOURCE OF THAT INFORMATION.

12:39PM 3      THE JURY HEARD EVIDENCE THAT MS. HOLMES SHARED MEDIA

12:39PM 4  INFORMATION WITH INVESTORS, AND A RATIONAL JUROR COULD FIND

12:39PM 5  THAT SHE KNEW THIS EVIDENCE TO BE AND THAT INFORMATION THAT WAS

12:39PM 6  SHARED WAS FALSE OR INACCURATE AT A MINIMUM, AND THIS WAS DONE

12:39PM 7  TO FURTHER, TO FURTHER THE EFFORTS OF THE COMPANY THROUGH

12:39PM 8  MS. HOLMES TO GAIN NEW INVESTORS.

12:39PM 9      THE THIRD PARTY LAB MACHINES, THERE WAS A LOT OF EVIDENCE

12:39PM 10  ABOUT WHERE THOSE WERE USED OR NOT USED AND IN WHAT CONTEXT,

12:39PM 11  WHETHER OR NOT THERE WERE REPRESENTATIONS OF THIRD PARTY

12:39PM 12  MACHINES BEING USED SINGULARLY OR IN CONNECTION WITH OR

12:40PM 13  MODIFIED WITH TECHNOLOGY.

12:40PM 14      THE JURORS HEARD DIFFERENT STORIES ABOUT THAT, INCLUDING

12:40PM 15  REPRESENTATIONS MADE THAT AT LEAST ONE WITNESS, MAYBE MORE,

12:40PM 16  TESTIFIED THAT THE INFORMATION THAT CAME FROM THERANOS THROUGH

12:40PM 17  MS. HOLMES WAS THAT THESE TESTS WERE RUN ON A SPECIFIC MACHINE

12:40PM 18  WHEN IT WASN'T ACTUALLY TRUE.  A RATIONAL JUROR COULD FIND THAT

12:40PM 19  THAT -- THAT THOSE REPRESENTATIONS WERE MADE.

12:40PM 20      A RATIONAL JUROR COULD FIND THAT THE TOTALITY OF THE

12:40PM 21  EVIDENCE REGARDING THERANOS'S BUSINESS DEALINGS WITH WALGREENS

12:40PM 22  AND SAFEWAY SHOWED THAT, AGAIN, THAT MS. HOLMES PROVIDED FALSE

12:40PM 23  AND MISLEADING INFORMATION REGARDING THE TRUE FINANCIAL

12:40PM 24  CONDITION OF THE COMPANY AND ITS ACTUAL ABILITY TO PROVIDE

12:40PM 25  FUNCTIONING MACHINES THAT COULD TEST, PROPRIETARY DEVICES THAT

12:40PM 1    COULD TEST AS REPRESENTED.

12:41PM 2         A RATIONAL JUROR COULD FIND, BASED ON THE EVIDENCE

12:41PM 3    SUBMITTED, THAT FALSE STATEMENTS AND REPRESENTATIONS WERE MADE

12:41PM 4    TO INVESTORS THAT WERE MATERIAL TO INVESTMENT DECISIONS.

12:41PM 5         HERE IN THIS CASE, AS WE KNOW, THIS JURY DELIBERATED

12:41PM 6    APPROXIMATELY EIGHT DAYS, I THINK IT WAS ABOUT EIGHT DAYS, AND

12:41PM 7    THEY RETURNED A SPLIT VERDICT.

12:41PM 8         THE JURY FOUND MS. HOLMES NOT GUILTY ON COUNTS TWO, TEN,

12:41PM 9    ELEVEN, AND TWELVE.

12:41PM 10        THIS JURY REACHED NO VERDICT, THAT IS TO SAY, THEY WERE

12:41PM 11   UNABLE TO AGREE UNANIMOUSLY AS TO THE ISSUE OF GUILT ON COUNTS

12:41PM 12   THREE, FOUR, AND FIVE.

12:41PM 13        THIS JURY FOUND MS. HOLMES GUILTY ON COUNTS ONE, SIX,

12:41PM 14   SEVEN, AND EIGHT.

12:41PM 15        AND WHILE NOT PERHAPS SPECIFICALLY DIRECTIVE FOR RULE 29

12:41PM 16   PURPOSES, THE JURY'S DELIBERATIONS, AT LEAST THIS HISTORY AND

12:41PM 17   THIS RETURN OF THEIR VERDICT AND FINDINGS, REFLECT THAT THEY

12:42PM 18   TOOK THEIR TASKS SERIOUSLY AND CAREFULLY CONSIDERED ALL OF THE

12:42PM 19   EVIDENCE, THE ARGUMENTS OF COUNSEL, AND THE COURT'S

12:42PM 20   INSTRUCTIONS AS TO EACH OF THE COUNTS ALLEGED, AND THEY

12:42PM 21   ULTIMATELY RETURNED VERDICTS THAT FOUND GUILTY ON ONLY FOUR OF

12:42PM 22   THE ELEVEN CHARGES THAT WERE FILED.

12:42PM 23        THIS SUGGESTS THAT THEY CONDUCTED A THOROUGH AND RATIONAL

12:42PM 24   MAKING DECISION PROCESS IN THEIR FINDINGS.

12:42PM 25        AS I SAID, I'VE READ THE BRIEFINGS AND I'VE HEARD YOUR

12:42PM 1    ARGUMENTS AND THEY'VE BEEN VERY HELPFUL.  AND FOR REASONS

12:42PM 2    STATED, AS I SAID, I AM GOING TO READ AND REVIEW THE ITEMS THAT

12:42PM 3    YOU'VE TAKEN AND SUGGESTED THAT THE COURT TAKE REVIEW OF.

12:42PM 4        AT THIS POINT, AS I SAID, THIS IS JUST A PRELIMINARY

12:42PM 5    RULING, BUT AT THIS POINT THE COURT IS GOING TO RESPECTFULLY

12:42PM 6    DENY MS. HOLMES'S RULE 29 MOTION TO SET ASIDE THE JURORS'

12:42PM 7    VERDICT.

12:42PM 8        THE COURT FINDS, AGAIN, THAT LOOKING THROUGH THE LENS THAT

12:43PM 9    THE COURT MUST IN A RULE 29 MOTION, THAT VIEWED IN THE LIGHT

12:43PM 10   MOST FAVORABLE TO THE PROSECUTION, THE COURT FINDS THAT A

12:43PM 11   RATIONAL JUROR COULD FIND AS THEY DID AS TO THE FOUR COUNTS

12:43PM 12   THAT THEY DID AND I'M GOING TO AT THIS TIME RESPECTFULLY DENY

12:43PM 13   THE MOTION.

12:43PM 14       HOWEVER, AS I SAID, THIS IS A PRELIMINARY DECISION.  I'M

12:43PM 15   GOING TO REVIEW YOUR BRIEFING, CANDIDLY, AND THE CASES THAT YOU

12:43PM 16   REFERRED ME TO TODAY, AND I'LL ISSUE A FORMAL WRITTEN ORDER AS

12:43PM 17   QUICKLY AS I CAN.

12:43PM 18       MS. SAHARIA:  YOUR HONOR, WE'LL LOOK AT THE CASES

12:43PM 19   THAT MS. VOLKAR CITED FOR THE FIRST TIME TODAY.  WE'LL SUBMIT

12:43PM 20   SOMETHING, I THINK, ONLY IF THEY MATERIALLY CHANGE ANYTHING.  I

12:43PM 21   DON'T KNOW RIGHT NOW WHETHER THEY DO OR DO NOT.

12:43PM 22       THE COURT:  SURE.  OF COURSE.  OF COURSE.

12:43PM 23       AND I'M NOT GOING TO DENY YOU THAT OPPORTUNITY SHOULD YOU

12:43PM 24   WISH.

12:43PM 25       MS. SAHARIA:  THANK YOU, YOUR HONOR.

12:43PM  1    THE COURT:  ALL RIGHT.  ANYTHING ON THIS THEN BEFORE

12:43PM  2    WE --

12:43PM  3    MS. VOLKAR:  NO, THANK YOU, YOUR HONOR.

12:44PM  4    MS. SAHARIA:  YOUR HONOR, I DID JUST WANT TO NOTIFY

12:44PM  5    THE COURT THAT WE DO ANTICIPATE FILING SEVERAL -- ONE OR

12:44PM  6    SEVERAL RULE 33 MOTIONS BASED ON NEWLY DISCOVERED EVIDENCE.

12:44PM  7    THE COURT:  OKAY.

12:44PM  8    MS. SAHARIA:  I EXPECT THAT WE'LL BE FILING THOSE

12:44PM  9    FAIRLY SOON.

12:44PM 10    THE COURT:  OKAY.  THANK YOU FOR THAT INFORMATION.

12:44PM 11    I APPRECIATE THAT.

12:44PM 12    MS. VOLKAR:  YOUR HONOR, IF I MAY BE HEARD ON THAT?

12:44PM 13    THE COURT:  YES.

12:44PM 14    MS. VOLKAR:  IF THEY ARE PLANNING TO FILE SUCH

12:44PM 15    MOTIONS, OF COURSE I THINK I CAN SAY AT THE OUTSET THAT THE

12:44PM 16    GOVERNMENT IS GOING TO OBJECT THAT THEY ARE UNTIMELY, AND IF IT

12:44PM 17    WOULD BE HELPFUL TO THE COURT TO HAVE BRIEFING ON THAT, I DON'T

12:44PM 18    WANT TO UNDULY DELAY PROCEEDINGS.  THIS IS THE FIRST I'M

12:44PM 19    HEARING OF A RULE 33 MOTION.

12:44PM 20    MS. SAHARIA:  WELL, THE DEADLINE FOR MOTIONS BASED

12:44PM 21    ON NEWLY DISCOVERED EVIDENCE HAS NOT YET PASSED, SO I'M NOT

12:44PM 22    SURE WHAT THERE WOULD BE TO BRIEF ON THAT.

12:44PM 23    BUT OF COURSE IF THE GOVERNMENT WANTS TO ARGUE THAT IN

12:44PM 24    RESPONSE TO THE MOTION, IT SHOULD DO THAT.

12:44PM 25    THE COURT:  WELL, I'M NOT GOING TO PRECLUDE ANYONE

| | | |
|---|---|---|
| 12:44PM | 1 | FROM FILING ANYTHING IF YOU WANT TO FILE IT. |
| 12:44PM | 2 | I APPRECIATE THE NOTICE OF THIS. |
| 12:44PM | 3 | MS. SAHARIA:  THANK YOU. |
| 12:44PM | 4 | THE COURT:  AND WE'LL SEE WHAT IS FORTHCOMING AND -- |
| 12:45PM | 5 | MS. SAHARIA:  THANK YOU. |
| 12:45PM | 6 | THE COURT:  -- AND MOVE FORWARD ACCORDINGLY.  SO |
| 12:45PM | 7 | THANK YOU. |
| 12:45PM | 8 | GIVE ME JUST A MOMENT. |
| 12:45PM | 9 | (DISCUSSION OFF THE RECORD.) |
| 12:45PM | 10 | THE COURT:  I HAVE INSTRUCTED OUR COURTROOM DEPUTY |
| 12:45PM | 11 | TO PROVIDE YOU WITH A LETTER THAT WE RECEIVED TO EACH SIDE, AND |
| 12:45PM | 12 | SHE'LL GIVE YOU A COPY OF THIS BEFORE YOU LEAVE TODAY. |
| 12:45PM | 13 | MS. SAHARIA:  THANK YOU. |
| 12:45PM | 14 | MS. VOLKAR:  THANK YOU. |
| 12:45PM | 15 | THE COURT:  ALL RIGHT.  THANK YOU. |
| 12:45PM | 16 | ANYTHING FURTHER? |
| 12:45PM | 17 | MS. VOLKAR:  NO, YOUR HONOR. |
| 12:45PM | 18 | MS. SAHARIA:  NO, YOUR HONOR. |
| 12:45PM | 19 | THE COURT:  THANK YOU.  BE SAFE.  IT'S GOOD SEEING |
| 12:45PM | 20 | EVERYONE AGAIN. |
| 12:45PM | 21 | MS. VOLKAR:  THANK YOU, YOUR HONOR. |
| 12:45PM | 22 | THE CLERK:  COURT IS CONCLUDED. |
| 12:46PM | 23 | (COURT CONCLUDED AT 12:46 P.M.) |
| | 24 | |
| | 25 | |

1

2

3                    CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8      STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9      280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10     CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12     A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13     ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, RMR, CRR
17         CERTIFICATE NUMBER 8074

18

19                   DATED:  SEPTEMBER 1, 2022

20

21

22

23

24

25