# EXHIBIT 59

```
 1

 2                      UNITED STATES DISTRICT COURT

 3                    NORTHERN DISTRICT OF CALIFORNIA

 4                           SAN JOSE DIVISION

 5

 6    UNITED STATES OF AMERICA,        )
                                       )   CR-18-00258-EJD
 7                   PLAINTIFF,        )
                                       )   SAN JOSE, CALIFORNIA
 8           VS.                       )
                                       )   MARCH 17, 2023
      ELIZABETH A. HOLMES,             )
 9                                     )   PAGES 1 - 63
                     DEFENDANT.        )
10    _____ )

11
                         TRANSCRIPT OF PROCEEDINGS
12            BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
13
      A P P E A R A N C E S:
14
      FOR THE PLAINTIFF:     UNITED STATES ATTORNEY'S OFFICE
15                           BY:  JOHN C. BOSTIC
                                  JEFFREY B. SCHENK
16                           150 ALMADEN BOULEVARD, SUITE 900
                             SAN JOSE, CALIFORNIA 95113
17
                             BY:  ROBERT S. LEACH
18                                KELLY VOLKAR
                             1301 CLAY STREET, SUITE 340S
19                           OAKLAND, CALIFORNIA 94612

20             (APPEARANCES CONTINUED ON THE NEXT PAGE.)

21
      OFFICIAL COURT REPORTER:
22                           IRENE L. RODRIGUEZ, CSR, RMR, CRR
                             CERTIFICATE NUMBER 8074
23

24        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
25
```

1
    <u>A P P E A R A N C E S:</u> (CONT'D)
2

3
    FOR DEFENDANT HOLMES:   WILLIAMS & CONNOLLY LLP
                           BY:  KEVIN M. DOWNEY
4
                              LANCE A. WADE
                              AMY SAHARIA
5
                              KATHERINE TREFZ
                              PATRICK LOOBY
6
                      725 TWELFTH STREET, N.W.
                      WASHINGTON, D.C. 20005
7

8
    U.S. PROBATION:      BY:  KYLE POLLAK
    (TELEPHONICALLY)
9

10
    ALSO PRESENT:       FEDERAL BUREAU OF INVESTIGATION
                      BY:  CHRISTOPHER MCCOLLOW
11
                      OFFICE OF THE U.S. ATTORNEY
12
                      BY:  MADDI WACHS, PARALEGAL
                              SARAH SLATTERY
13

14

15

16

17

18

19

20

21

22

23

24

25

3

| | | |
|---|---|---|
| | 1 | SAN JOSE, CALIFORNIA                    MARCH 17, 2023 |
| | 2 | P R O C E E D I N G S |
| | 3 | |
| 10:10AM | 4 | (COURT CONVENED AT 10:10 A.M.) |
| 10:10AM | 5 | THE COURT:  THIS IS 18-258, UNITED STATES VERSUS |
| 10:10AM | 6 | ELIZABETH HOLMES. |
| 10:10AM | 7 | LET ME FIRST CAPTURE THE APPEARANCE OF THE PARTIES, |
| 10:10AM | 8 | PLEASE. |
| 10:10AM | 9 | WHO APPEARS FOR THE GOVERNMENT? |
| 10:10AM | 10 | MS. VOLKAR:  GOOD MORNING, YOUR HONOR. |
| 10:10AM | 11 | KELLY VOLKAR ON BEHALF OF THE UNITED STATES. |
| 10:10AM | 12 | I'M JOINED AT COUNSEL TABLE BY ROBERT LEACH, JOHN BOSTIC, |
| 10:10AM | 13 | AND JEFF SCHENK. |
| 10:10AM | 14 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 10:10AM | 15 | MS. VOLKAR:  GOOD MORNING. |
| 10:10AM | 16 | THE COURT:  AND FOR THE DEFENDANT? |
| 10:10AM | 17 | MS. SAHARIA:  GOOD MORNING, YOUR HONOR. |
| 10:10AM | 18 | AMY SAHARIA FOR MS. HOLMES.  WITH ME AT COUNSEL TABLE IS |
| 10:10AM | 19 | KEVIN DOWNEY, LANCE WADE, KATIE TREFZ, AND PATRICK LOOBY. |
| 10:10AM | 20 | MS. HOLMES IS PRESENT. |
| 10:10AM | 21 | THE COURT:  THANK YOU. |
| 10:10AM | 22 | MS. SAHARIA:  AND FOR THE COURT'S AWARENESS, |
| 10:10AM | 23 | MR. LEACH WILL BE ADDRESSING RESTITUTION, AND THEN I WILL BE |
| 10:10AM | 24 | ADDRESSING THE MOTION FOR RELEASE. |
| 10:10AM | 25 | THE COURT:  THANK YOU VERY MUCH.  GOOD MORNING |

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
| 10:10AM  | 1  | EVERYONE.                                                  |
| 10:10AM  | 2  | WHAT I THOUGHT I WOULD LIKE TO DO IS TO DO THE RESTITUTION |
| 10:11AM  | 3  | DISCUSSION FIRST, PLEASE, IF WE COULD DO THAT.             |
| 10:11AM  | 4  | AND THEN WE WOULD MOVE TO THE OTHER, THE OTHER MOTION       |
| 10:11AM  | 5  | ABOUT RELEASE, MS. SAHARIA, IF THAT'S OKAY WITH YOU?       |
| 10:11AM  | 6  | MS. SAHARIA:  YES, THAT'S FINE, YOUR HONOR.                |
| 10:11AM  | 7  | THE COURT:  GREAT.  LET'S DO THAT.                         |
| 10:11AM  | 8  | LET'S HEAR ABOUT RESTITUTION FIRST.  MR. LOOBY, IT'S NICE  |
| 10:11AM  | 9  | TO SEE YOU AGAIN.                                          |
| 10:11AM  | 10 | MR. LOOBY:  VERY GOOD TO BE BACK.                         |
| 10:11AM  | 11 | THE COURT:  I BEG YOUR PARDON, LET ME ALSO INTRODUCE       |
| 10:11AM  | 12 | MR. POLLAK.  YOU'RE HERE FROM PROBATION, AND YOU'RE APPEARING |
| 10:11AM  | 13 | TELEPHONICALLY?                                            |
| 10:11AM  | 14 | PROBATION OFFICER:  YES, YOUR HONOR.                       |
| 10:11AM  | 15 | KYLE POLLAK FOR U.S. PROBATION.                            |
| 10:11AM  | 16 | THE COURT:  THANK YOU.  THANK YOU VERY MUCH.              |
| 10:11AM  | 17 | LET ME TURN TO THE GOVERNMENT FIRST AS TO RESTITUTION.     |
| 10:11AM  | 18 | MR. LEACH:  GOOD MORNING, YOUR HONOR.                     |
| 10:11AM  | 19 | ROBERT LEACH FOR THE UNITED STATES.                       |
| 10:11AM  | 20 | I'M PLEASED TO RESPOND TO ANY QUESTIONS THAT THE COURT     |
| 10:11AM  | 21 | HAS.  I THINK THE FUNDAMENTAL POINT I WANTED TO MAKE AND WHICH |
| 10:11AM  | 22 | WE MADE AT MR. BALWANI'S RESTITUTION HEARING IS THAT       |
| 10:11AM  | 23 | RESTITUTION IS MANDATORY UNDER THE MVRA, RESTITUTION IS    |
| 10:12AM  | 24 | DIFFERENT FROM LOSS FOR PURPOSES OF THE SENTENCING GUIDELINES. |
| 10:12AM  | 25 | THE DEFINITION OF RESTITUTION, WHICH I DON'T THINK THE     |

10:12AM 1 DEFENDANT ADDRESSES OR DISPUTES IN HER RESPONSE TO THE

10:12AM 2 GOVERNMENT'S SUBMISSION, IS TO MAKE THE DEFENDANTS WHOLE AND TO

10:12AM 3 PUT THEM IN THE POSITION THAT THEY WERE BEFORE THE FRAUDULENT

10:12AM 4 CONDUCT. AND FOR THE REASONS SET FORTH IN OUR BRIEF, WE

10:12AM 5 BELIEVE THE APPROPRIATE AMOUNT OF RESTITUTION IS THE ENTIRE

10:12AM 6 AMOUNT OF THE C1 AND C2 INVESTMENTS.

10:12AM 7 AT A MINIMUM, IT SHOULD BE FOR THE INVESTORS WHO THE COURT

10:12AM 8 FOUND SUFFICIENT FOR LOSS PURPOSES AND THE TOTAL AMOUNT THAT

10:12AM 9 THEY INVESTED OR IN THE ALTERNATIVE, TO THE AMOUNTS CALCULATED

10:12AM 10 PURSUANT TO THE SABA REPORT.

10:12AM 11 UNLESS THE COURT HAS ANY QUESTIONS, WE'LL SUBMIT ON THE

10:12AM 12 BRIEFS.

10:12AM 13 THE COURT: ALL RIGHT. THANK YOU.

10:12AM 14 LET ME INDICATE THAT THE BRIEFING ON THIS IS 1727, THAT'S

10:12AM 15 YOUR DOCKET 1727, AND IN THAT YOU ADOPT 1726, I BELIEVE?

10:13AM 16 MR. LEACH: YES, YOUR HONOR.

10:13AM 17 THE COURT: AND MS. HOLMES'S REPLY, EXCUSE ME, HER

10:13AM 18 BRIEF IS 1741, MR. LOOBY?

10:13AM 19 MR. LOOBY: THAT'S CORRECT, YOUR HONOR.

10:13AM 20 THE COURT: THANK YOU. I JUST WANT TO GET THOSE

10:13AM 21 RIGHT.

10:13AM 22 I'M SURE YOU'RE GOING TO RAISE THESE AND YOU'VE RAISED

10:13AM 23 THEM IN YOUR PLEADINGS, MR. LOOBY.

10:13AM 24 MR. LEACH, LET ME JUST ASK YOU, THERE -- MS. HOLMES'S

10:13AM 25 SUGGESTIONS, HER PLEADINGS THAT THE COURT SHOULD GO THROUGH

10:13AM 1    SOME TYPE OF EVALUATION TYPE OF ANALYSIS SIMILAR TO WHAT WE DID

10:13AM 2    FOR GUIDELINES CALCULATIONS.

10:13AM 3        WHY IS THAT NOT THE APPROPRIATE PROTOCOL TO TAKE HERE?

10:13AM 4            MR. LEACH:  I CERTAINLY THINK THEY'RE SIMILAR,

10:13AM 5    YOUR HONOR.  AND WE MADE THE ARGUMENT FOR LOSS PURPOSES THAT

10:13AM 6    BUT FOR CAUSATION AND PROXIMATE CAUSATION COULD BE INFERRED OR

10:13AM 7    DETERMINED BY THE OVERALL COURSE OF CONDUCT AND THAT THERE WAS

10:13AM 8    TYPICALLY A PACKET OF MATERIALS THAT THE MISREPRESENTATIONS

10:14AM 9    WENT TO THE CORE OF WHAT THE COMPANY WAS HOLDING ITSELF OUT TO

10:14AM 10   BE THAT IT COULD PERFORM ALL OF THE TESTS AVAILABLE WITH A

10:14AM 11   SMALL PIN PRICK OF BLOOD ON A DEVICE THAT THEY HAD MADE OR

10:14AM 12   THROUGH OTHER MEANS.

10:14AM 13       AND SO I DO -- I THINK WE MADE THE POINT AT SENTENCING

10:14AM 14   THAT THE COURT COULD MAKE THAT INFERENCE FOR LOSS.  THE COURT

10:14AM 15   SAID IN ITS ORDER ON SENTENCING THAT CERTAINLY IT WAS A

10:14AM 16   REASONABLE INFERENCE TO MAKE.  IT ULTIMATELY DIDN'T MAKE THAT

10:14AM 17   INFERENCE.  SO FOR ALL OF THOSE SAME REASONS, WE THINK IT'S

10:14AM 18   APPROPRIATE.

10:14AM 19       BUT AT A MINIMUM, THERE ARE MORE THAN TEN INVESTORS FOR

10:14AM 20   WHOM THE COURT FOUND THAT RELIANCE, FOR LACK OF A BETTER WORD,

10:14AM 21   HAD BEEN ESTABLISHED.  THOSE FINDINGS ARE EQUALLY APPLICABLE

10:14AM 22   HERE IN THE RESTITUTION CONTEXT.

10:14AM 23           THE COURT:  OKAY.  SO MS. HOLMES'S SUGGESTION IN HER

10:14AM 24   PLEADINGS, AND I DON'T MEAN TO TAKE ANY THUNDER AWAY FROM YOU,

10:15AM 25   MR. LOOBY, BEFORE YOU SPEAK, BUT SEEMS TO SUGGEST, THAT, WELL,

10:15AM 1    JUDGE, YOU NEED TO DO EITHER SOME TYPE OF OFFSET OR LOOK AT

10:15AM 2    WHAT WAS THE ACTUAL LOSS OF THE INVESTORS.

10:15AM 3        AND THIS IS A QUESTION FOR MR. LOOBY.  I'M GIVING HIM A

10:15AM 4    PREVIEW OF IT.  BUT ISN'T THE LOSS THE AMOUNT THAT THEY PAID,

10:15AM 5    AND ISN'T THAT WHAT THE LOSS IS VIS-A-VIS ANYTHING ELSE?

10:15AM 6        MR. LEACH:  THE ANSWER IS, YES, YOUR HONOR.  THE

10:15AM 7    LOSS IS THE AMOUNT THAT THEY PAID.

10:15AM 8        THESE INVESTORS HERE GOT NOTHING BACK.  PFM -- PUTTING

10:15AM 9    ASIDE THE SETTLEMENTS, WHICH WE DO ACKNOWLEDGE ARE APPROPRIATE

10:15AM 10    OFFSETS, THESE INVESTORS PUT IN MONEY.  AND LET'S JUST TAKE

10:15AM 11    RDV, FOR EXAMPLE, IT GOT NOTHING BACK.  AND THE GOAL OF

10:15AM 12    RESTITUTION IS TO MAKE THEM WHOLE.

10:15AM 13        NOW, THE ARGUMENT IS THAT WHEN "THE WALL STREET JOURNAL"

10:15AM 14    ARTICLE CAME OUT IN OCTOBER OF 2015, THERANOS WAS WORTH

10:15AM 15    SOMETHING.  BUT INVESTORS GOT NOTHING BACK AND TO MAKE THEM

10:16AM 16    WHOLE, YOU NEED TO PUT THEM IN THE POSITION WHERE THEY WERE

10:16AM 17    BEFORE THEY MADE THEIR INVESTMENT.

10:16AM 18        SO OUR POSITION IS THAT IT'S THE TOTAL AMOUNT OF THE

10:16AM 19    INVESTMENT FOR CERTAIN, YOU KNOW, INVESTORS WERE BUT FOR

10:16AM 20    CAUSATION AND PROXIMATE CAUSATION IS ESTABLISHED.

10:16AM 21        AND I WOULD ARGUE, YOU KNOW, IN A PUBLIC COMPANY CONTEXT

10:16AM 22    WHERE BAD NEWS COMES OUT ABOUT A COMPANY AND INVESTORS CAN

10:16AM 23    EVALUATE WHAT DOES THIS PARTICULAR PIECE OF INFORMATION MEAN

10:16AM 24    FOR THE LONG TERM HEALTH OF THE COMPANY, YOU CAN TELL BY A

10:16AM 25    REDUCTION IN THE STOCK PRICE, YOU KNOW, WHAT THAT PARTICULAR

10:16AM 1    PIECE OF NEWS MEANT.

10:16AM 2         YOU CAN'T REALLY DO THAT IN A PRIVATE COMPANY CONTEXT

10:16AM 3    HERE.

10:16AM 4         WHEN "THE WALL STREET JOURNAL" ARTICLE CAME OUT, YOU KNOW,

10:16AM 5    IT RAISED ALLEGATIONS THAT WENT TO THE CORE OF WHAT THIS

10:16AM 6    COMPANY WAS ALL ABOUT.  BUT THERE WAS NO MARKET WHERE YOU COULD

10:16AM 7    TELL, YOU KNOW, WHAT WENT -- WHAT DOES THE STOCK PRICE GO DOWN

10:17AM 8    WHEN THIS COMES OUT.

10:17AM 9         WE KNOW AT THE END OF THE DAY THAT THESE ARE ALLEGATIONS

10:17AM 10   THAT THE COMPANY COULD NEVER RECOVER FROM, AND THEY WENT TO

10:17AM 11   WHAT THE COMPANY WAS ALL ABOUT.  COULD THEY DO ALL OF THE BLOOD

10:17AM 12   TESTS?  DID THEY HAVE TECHNOLOGY OR OTHER MEANS TO DO THE

10:17AM 13   TESTING?

10:17AM 14        THE ANSWER TO THOSE QUESTIONS WERE NO.  AND THERANOS

10:17AM 15   DIDN'T FAIL BECAUSE OF SOME REASON EXTRANEOUS TO THE COMPANY

10:17AM 16   LIKE IT PUT ITS MONEY IN SILICON VALLEY BANK AND COULDN'T GET

10:17AM 17   THE MONEY BACK OR BECAUSE THERE WAS AN EARTHQUAKE AND IT

10:17AM 18   DESTROYED ALL OF THE FACILITIES.

10:17AM 19        THERANOS ULTIMATELY FAILED BECAUSE THE PROMISES THAT IT

10:17AM 20   HAD BEEN MAKING TO ITS INVESTORS BEFORE THE FRAUD WAS REVEALED

10:17AM 21   SIMPLY WEREN'T TRUE, AND THE ONLY WAY TO PUT THESE INVESTORS

10:17AM 22   BACK INTO THE POSITION THAT THEY WERE BEFORE THIS CRIMINAL

10:17AM 23   CONDUCT TOOK PLACE IS AN AWARD OF THE FULL AMOUNT OF THEIR

10:17AM 24   INVESTMENTS.

10:17AM 25             THE COURT:  THEIR PURCHASE PRICE OF THEIR

10:17AM 1     INVESTMENT?

10:17AM 2          MR. LEACH:  YES.

10:17AM 3          THE COURT:  AND MY NEXT QUESTION IS, IS THE

10:17AM 4     GOVERNMENT ASKING THAT THE COURT ORDER RESTITUTION AS TO

10:17AM 5     MS. HOLMES AS TO THE EISENMANS?

10:18AM 6          MR. LEACH:  YES, YOUR HONOR.

10:18AM 7     THE DEFENDANT WAS CONVICTED IN COUNT ONE OF A CONSPIRACY

10:18AM 8     TO DEFRAUD INVESTORS DURING THE PERIOD 2010 TO 2015.

10:18AM 9     MR. EISENMAN AND HIS WIFE, SHERRIE, WERE INVESTORS DURING

10:18AM 10    THAT TIME PERIOD.  THEY'RE COVERED BY THE CONSPIRACY COUNTS.

10:18AM 11    THE FACT THAT THERE WAS A -- NO VERDICT RETURNED ON THAT

10:18AM 12    PARTICULAR COUNT IS A NON-EVENT.  WE SIMPLY -- AND THE STANDARD

10:18AM 13    HERE IS PREPONDERANCE.  SO THE VERDICT HERE SIMPLY DOESN'T

10:18AM 14    PRECLUDE IT, AND WE ARGUE THAT IT'S COVERED BY THE CONSPIRACY

10:18AM 15    COUNTS.

10:18AM 16    THE COURT HEARD FROM MR. EISENMAN IN TWO TRIALS.  I DON'T

10:18AM 17    THINK THERE'S A DOUBT HE RELIED ON THE REPRESENTATIONS FROM

10:18AM 18    MS. HOLMES.  SO WE THINK IT'S COMPLETELY APPROPRIATE TO INCLUDE

10:18AM 19    HIM IN THE RESTITUTION CALCULATION.

10:18AM 20         THE COURT:  WELL, THAT WAS A QUESTION THAT I HAD.

10:18AM 21    MR. LOOBY, YOU'LL HELP US WITH THAT AS WELL.

10:19AM 22    IF THERE WAS NO FINDING OF GUILT AS TO THE EISENMANS, WHAT

10:19AM 23    IS THE AVENUE OF RESTITUTION FOR THEM?  AND WHAT YOU'RE

10:19AM 24    SUGGESTING IS BECAUSE MS. HOLMES, THE JURY FOUND HER GUILTY OF

10:19AM 25    COUNT ONE, THE CONSPIRACY, THE CONSPIRACY, WHICH THE INDICTMENT

10:19AM 1    ALLEGES, I THINK IT'S PARAGRAPHS 1 THROUGH 18, ALLEGED A

10:19AM 2    CONDUCT THAT SHE ENGAGED IN, AND THAT CONDUCT YOU SUGGEST

10:19AM 3    INCLUDES THE EISENMANS?

10:19AM 4           MR. LEACH:  YES, YOUR HONOR.

10:19AM 5           THE COURT:  OKAY.

10:19AM 6       MR. LOOBY.

10:19AM 7           MR. LOOBY:  YES, YOUR HONOR.

10:19AM 8       SO OF COURSE THERE'S THE THRESHOLD ISSUE OF INVESTOR

10:19AM 9    RELIANCE.  I'LL JUST SPEAK VERY BRIEFLY TO THAT, AND THEN I'LL

10:19AM 10   MOVE ON TO THE ISSUE OF CALCULATING LOSS AND WHETHER OR NOT THE

10:19AM 11   FULL INVESTMENT AMOUNT IS THE CORRECT AMOUNT.

10:19AM 12      BUT JUST NOT TO PUT THE CART BEFORE THE HORSE, THERE IS

10:19AM 13   THE FIRST QUESTION OF HAS THE GOVERNMENT SHOWN INVESTOR

10:19AM 14   RELIANCE?

10:19AM 15      I THINK WE ALL AGREE FROM IT THE SENTENCING PROCEEDINGS

10:19AM 16   THAT THE GOVERNMENT NEEDS TO SHOW RELIANCE.  THE GOVERNMENT

10:19AM 17   HERE FOR ITS BROADER ROUGHLY $800 MILLION RESTITUTION REQUEST

10:20AM 18   IS INSISTING ON THE SAME PRESUMPTION OF INVESTOR WIDE RELIANCE

10:20AM 19   THAT THE COURT PREVIOUSLY DECLINED TO ADOPT.

10:20AM 20      THE GOVERNMENT'S RESTITUTION SUBMISSION DOES NOT PROVIDE

10:20AM 21   ANY ADDITIONAL EVIDENCE OR REALLY ARGUMENT TO SUPPORT THAT

10:20AM 22   FINDING.

10:20AM 23      THE RECORD HERE DOES NOT SUPPORT THAT FINDING FOR ANY OF

10:20AM 24   THE INVESTORS BEYOND THE TEN WHO WERE INCLUDED IN THE

10:20AM 25   RESTITUTION, IN THE GUIDELINES CALCULATION.

10:20AM 1          SO WE THINK BECAUSE THE GOVERNMENT HAS THE BURDEN TO

10:20AM 2    ESTABLISH RESTITUTION, BOTH RELIANCE AND THE AMOUNTS UNDER THE

10:20AM 3    MVRA, THAT FOR THIS REASON ALONE THE COURT SHOULD DENY THE

10:20AM 4    REQUEST FOR RESTITUTION TO THE BROADER CLASS OF C1 AND C2

10:20AM 5    INVESTORS.

10:20AM 6          TURNING TO THE QUESTION OF RELIANCE FOR THE TEN WHO WERE

10:20AM 7    INCLUDED IN THE SENTENCING GUIDELINES CALCULATIONS.  WE DO

10:20AM 8    AGREE THAT THE INQUIRY OF WHETHER OR NOT AN INVESTOR HAS RELIED

10:20AM 9    DOES CARRY THROUGH TO BOTH SENTENCING GUIDELINES LOSS AND

10:21AM 10    RESTITUTION, BUT THERE'S A DIFFERENCE IN RESTITUTION WHEREBY

10:21AM 11    THE GOVERNMENT BEARS THE BURDEN TO SHOW BOTH THE -- THAT A

10:21AM 12    PERSON IS A VICTIM AND TO CALCULATE THEIR LOSS.

10:21AM 13          AND HERE IN PARTICULAR, WE HAVE MEMBERS OF THE TEN

10:21AM 14    INVESTORS WHOM THE COURT INCLUDED IN THE GUIDELINES

10:21AM 15    CALCULATIONS FOR WHOM WE HAVE BOTH NO TRIAL TESTIMONY AND ALSO

10:21AM 16    NOW IN THE RESTITUTION CONTEXT, NO VICTIM IMPACT STATEMENT, NO

10:21AM 17    REQUEST FOR RESTITUTION, AND NO CLAIM FOR LOSS.

10:21AM 18          SO THESE ARE THE MENDENHALL PARTNERS GROUP,

10:21AM 19    MR. KOVACEVICH, PIER VENTURES, LUCAS VENTURES GROUP, AND

10:21AM 20    MR. MURDOCH.  FOR THESE, WE SUBMIT THE COURT SHOULD NOT INCLUDE

10:21AM 21    A RESTITUTION ORDER FOR THESE INDIVIDUALS FOR LACK OF

10:21AM 22    DEMONSTRATION OF RELIANCE, AND THE DIFFERENCE HERE BETWEEN

10:21AM 23    SENTENCING AND RESTITUTION IS WHILE VICTIMS ARE NOT REQUIRED TO

10:21AM 24    PARTICIPATE IN THE SENTENCING TO SUBMIT A RESTITUTION, A VICTIM

10:22AM 25    IMPACT STATEMENT, WE CONSIDER THAT PART, THAT MEANS THE

10:22AM 1     GOVERNMENT HAS TO DO MORE.

10:22AM 2         IT'S THEIR PREROGATIVE NOT TO PARTICIPATE, BUT THE

10:22AM 3     GOVERNMENT HASN'T DEMONSTRATED AND MARSHALLED SUFFICIENT

10:22AM 4     EVIDENCE TO SHOW, A, THAT THEY'RE VICTIMS AND WHAT THEIR

10:22AM 5     CLAIMED LOSSES WOULD BE.

10:22AM 6         THE COURT:  WHAT THE -- PARDON ME FOR INTERRUPTING

10:22AM 7     YOU.

10:22AM 8         WHAT INQUIRY IS PERMITTED FOR THE COURT TO, ON THE COURT'S

10:22AM 9     OWN, AS I LOOK AT THE PLEADINGS, LOOKING AT THE CASE AND/OR

10:22AM 10    SITTING THROUGH THE TRIAL, WHAT EVIDENCE CAN THE COURT LOOK AT

10:22AM 11    ON ITS OWN?  WHAT KIND OF SCRUTINY CAN THE COURT GIVE?

10:22AM 12        MR. LOOBY:  RIGHT.  I THINK THE TRIAL RECORD IS FAIR

10:22AM 13    GAME FOR THE COURT, AND I SUBMIT -- OR WE SUBMIT THAT THE TRIAL

10:22AM 14    RECORD SHOULD BE KIND OF WHERE THE INQUIRY ENDS.  AND I KNOW

10:22AM 15    THAT THE COURT DID RELY ON TESTIMONY IN MR. BALWANI'S TRIAL AS

10:22AM 16    WELL AS CERTAIN GOVERNMENT INTERVIEW MEMORANDA AND S.E.C.

10:22AM 17    TESTIMONY WHEN IT CAME TO THE GUIDELINES CALCULATION AT THAT

10:23AM 18    MOMENT.

10:23AM 19        THE DIFFERENCE BETWEEN THAT SITUATION AND HERE IS THAT

10:23AM 20    THERE WE WERE IN A SITUATION WHERE THE COURT HAD TO CALCULATE A

10:23AM 21    GUIDELINE RANGE AND THE QUESTION WAS WHETHER OR NOT THE

10:23AM 22    GOVERNMENT HAD MET THE TEN OR MORE VICTIMS BURDEN.

10:23AM 23        HERE WE'RE TALKING ABOUT ASSIGNING RESTITUTION, SPECIFIC

10:23AM 24    RESTITUTION AMOUNTS TO SPECIFIC VICTIMS.  AND HERE, IN ADDITION

10:23AM 25    TO THE LACK OF SUFFICIENT EVIDENCE OF RELIANCE, WHICH WE

10:23AM 1     MAINTAINED AT SENTENCING AND WE MAINTAIN NOW, IS NOT THERE IN

10:23AM 2     THE RECORD.  WE ALSO HERE HAVE THE LACK OF THE VICTIM IMPACT

10:23AM 3     STATEMENT, THE LACK OF THE REQUEST FOR RESTITUTION.  SO THAT'S

10:23AM 4     WHY WE SUBMIT THAT THE COURT SHOULD NOT ORDER RESTITUTION TO

10:23AM 5     THE PEOPLE WHO DIDN'T TESTIFY AT TRIAL AS WELL AS -- AND THIS

10:23AM 6     GOES TO THE EISENMAN, THE QUESTION OF THE EISENMANS, BUT ALSO

10:23AM 7     THE HALL GROUP AND THE BLACK DIAMOND VENTURES GROUP, THE COUNTS

10:23AM 8     THAT WERE HUNG.

10:23AM 9     WE THINK THAT -- YOU KNOW, WE AGREE THAT THE COURT'S

10:24AM 10    INQUIRY IS A PREPONDERANCE, BUT WE SUBMIT THAT THE JURY'S

10:24AM 11    VERDICT OR ITS FAILURE TO RETURN A VERDICT IS OWED RESPECT IN

10:24AM 12    THAT CASE AND SHOULD WEIGH AGAINST A FINDING OF RELIANCE ON A

10:24AM 13    PREPONDERANCE STANDARD.

10:24AM 14    AND IN PARTICULAR WITH THE EISENMANS, THEY DID MAKE AN

10:24AM 15    INVESTMENT INTO THE C1 ROUND, BUT AS THE COURT WILL RECALL, THE

10:24AM 16    TESTIMONY SURROUNDING MR. EISENMAN'S INTERACTIONS WITH

10:24AM 17    MS. HOLMES GENERALLY PREDATED THE ALLEGED CONSPIRACY PERIOD BY

10:24AM 18    A BIT.  AND HE DIDN'T HAVE VERY MUCH CONTACT WITH MS. HOLMES OR

10:24AM 19    MUCH NEW INFORMATION WHEN HE DID MAKE THAT INVESTMENT THAT

10:24AM 20    QUALIFIED UNDER THE INDICTMENT.

10:24AM 21    SO WE SUBMIT THAT THE EVIDENCE IN PARTICULAR FOR

10:24AM 22    MR. EISENMAN AND FOR MS. SHERRIE EISENMAN AND FOR ENTITIES

10:24AM 23    AFFILIATED WITH THEM, THERE IS JUST NOT EVIDENCE OF RELIANCE.

10:24AM 24        THE COURT:  ARE THERE CASES THAT SUGGEST -- THANK

10:24AM 25    YOU FOR THAT.

10:24AM 1       ARE THERE CASES THAT SUGGEST THAT THE COURT IS NOT LIMITED

10:24AM 2    TO THE STATUTE OF LIMITATIONS PERIOD, FOR EXAMPLE, OR OTHER

10:24AM 3    LIMITATIONS WHEN IT CONSIDERS RESTITUTION?  AREN'T THERE CASES

10:25AM 4    THAT SUGGEST THAT THE COURT CAN LOOK TO THE BROAD CATEGORY OF

10:25AM 5    CONDUCT IN A CONSPIRACY SETTING?

10:25AM 6       MR. LOOBY:  YES.  I BELIEVE -- I DON'T HAVE A CASE

10:25AM 7    ON THE TOP OF MY MIND, BUT I THINK A CONSPIRACY CONVICTION DOES

10:25AM 8    ALLOW THE COURT TO CONSIDER CONDUCT THAT IT WOULD CONSIDER, THE

10:25AM 9    OFFENSE CONDUCT, SO WHAT WAS THE SCOPE OF THE CONSPIRACY, WHAT

10:25AM 10    WAS ITS DURATION.

10:25AM 11      BUT, AGAIN, THE PARTICULARS OF WHAT THE COURT WOULD LOOK

10:25AM 12    AT THE BEST EVIDENCE OF THAT IS THE TRIAL TESTIMONY IN THE

10:25AM 13    RECORD AT THE TRIAL, WE SUBMIT.  AND WE SUBMIT THAT RELYING ON

10:25AM 14    EXTRA RECORD TESTIMONY IN THAT CASE, WHILE PERHAPS NOT

10:25AM 15    PROHIBITED BY A CASE OR RULE, IN THIS INSTANCE IT'S NOT

10:25AM 16    WARRANTED.

10:25AM 17       THE COURT:  I THINK THERE ARE CASES THAT SAY THAT

10:25AM 18    THE RESTITUTION IS NOT LIMITED JUST TO THE CONDUCT BUT IT GOES

10:25AM 19    TO THE ENTIRETY OF THE FRAUD SCHEME?  ARE YOU FAMILIAR WITH

10:26AM 20    CASES THAT SUGGEST THAT?

10:26AM 21       MR. LOOBY:  WELL, I THINK THERE ARE TWO DIFFERENT

10:26AM 22    QUESTIONS, WHICH IS ARE WE TALKING ABOUT WHO QUALIFIES AS A

10:26AM 23    VICTIM FOR PURPOSES OF RESTITUTION.

10:26AM 24      AND THEN --

10:26AM 25       THE COURT:  THAT'S FIRST NUMBER ONE, ISN'T IT?

10:26AM 1    MR. LOOBY: RIGHT. AND I THINK WE'RE STILL KIND AT

10:26AM 2    THAT THRESHOLD QUESTION.

10:26AM 3        I THINK IN ORDER TO QUALIFY AS A VICTIM, AND I APOLOGIZE

10:26AM 4    FOR NOT HAVING A CASE CITATION READY FOR THIS PROPOSITION, BUT

10:26AM 5    I WOULD SAY THAT THEY WOULD HAVE TO HAVE RELIED ON THE OFFENSE

10:26AM 6    CONDUCT.

10:26AM 7        I THINK THE STEIN CASE OUT OF THE ELEVENTH CIRCUIT WHICH

10:26AM 8    WE CITE IN OUR BRIEF IS GOOD ON THIS BECAUSE IT DEALS WITH BOTH

10:26AM 9    LOSS CALCULATION AND RESTITUTION.

10:26AM 10       THE DIFFERENCE FROM THE ZOLP CASE IN THE NINTH CIRCUIT

10:26AM 11   WHICH WE ALSO CITE IN WHICH WE DISCUSSED IN THE CONTEXT OF

10:26AM 12   SENTENCING, I THINK WOULD COUNSEL FOR THE THRESHOLD QUESTION

10:26AM 13   BEING, WELL, WHAT WAS THE OFFENSE CONDUCT HERE? ARE THERE

10:26AM 14   SPECIFIC MISREPRESENTATIONS THAT INVESTORS CLAIMING TO HAVE

10:26AM 15   RELIED ON? IS THERE EVIDENCE IN THE RECORD THAT THAT MADE THE

10:27AM 16   DIFFERENCE FOR THEM?

10:27AM 17       AND FOR THIS BROADER CLASS OF INVESTORS, AS THE COURT

10:27AM 18   NOTED, THERE'S NOTHING THERE. WE HAVE THIS LEDGER OF THESE

10:27AM 19   NAMES, AND THERE'S NARY A MENTION OF THEM IN THE TRANSCRIPT.

10:27AM 20       THE COURT: THIS IS THE EXCEL LEDGER THAT YOU'RE

10:27AM 21   SPEAKING OF?

10:27AM 22       MR. LOOBY: YES. THAT'S THE SUPPORT FOR THE ROUGHLY

10:27AM 23   $807 MILLION RESTITUTION.

10:27AM 24       THE COURT: WELL, I'LL TELL YOU, AS I DID IN THE

10:27AM 25   PREVIOUS CASE, THAT YOU KNOW THE WEIGHT THAT THE COURT GAVE TO

10:27AM 1    THAT, AND MR. LEACH WON'T BE SURPRISED.  MY SENSE IS THAT I'M

10:27AM 2    GOING TO BE CONSISTENT WITH AT LEAST AS TO THAT AND THE WEIGHT

10:27AM 3    TO GIVE TO THAT EXCEL SHEET AS TO VICTIM STATEMENTS OR WHAT THE

10:27AM 4    COURT SHOULD DO WITH THAT.  I THINK I'LL BE CONSISTENT WITH

10:27AM 5    THAT.

10:27AM 6         BUT THIS OTHER ISSUE ABOUT -- I WAS CURIOUS ABOUT THE

10:27AM 7    EISENMANS IN PARTICULAR BECAUSE THEY WERE -- MS. HOLMES WAS NOT

10:27AM 8    CONVICTED.  THE JURY DID NOT SEE FIT TO CONVICT OF HER THOSE

10:27AM 9    PARTICULAR COUNTS, BUT THEY DID SEE FIT TO FIND GUILT AS TO

10:28AM 10   COUNT ONE, WHICH WAS THE OVERALL CONSPIRACY AS YOU KNOW.

10:28AM 11        AND HOW FAR DOES THAT REACH THEN -- I'M ASKING THE

10:28AM 12   QUESTION AGAIN I SUPPOSE -- THE CONSPIRACY COUNT?  DOES THAT

10:28AM 13   THEN -- WOULD THAT, AS MR. LEACH SUGGESTS, WOULD THAT THEN

10:28AM 14   INCLUDE THE EISENMANS AND ANY OTHERS?

10:28AM 15        MR. LOOBY:  RIGHT.  I THINK THE DATES ON THE

10:28AM 16   INDICTMENT FOR COUNT ONE DATE BACK TO 2010, BUT I THINK

10:28AM 17   YOUR HONOR IS CORRECT THAT THERE'S TWO DIFFERENT GROUPINGS, THE

10:28AM 18   C1 AND THE C2 GROUP, AND I THINK WE CAN INFER FROM THE JURY'S

10:28AM 19   VERDICTS, OR NON-VERDICT, ON THE PARTICULAR WIRE FRAUD COUNTS

10:28AM 20   WHAT IT THOUGHT OF THE SUFFICIENCY OF THE GOVERNMENT'S EVIDENCE

10:28AM 21   AS IT RELATED TO THE EARLIER HALF OF THAT CONSPIRACY PERIOD.

10:28AM 22        SO I THINK THAT THE HUNG COUNTS, I THINK THEY CERTAINLY

10:28AM 23   ESTABLISH THAT THE GOVERNMENT DID NOT PROVE BEYOND A REASONABLE

10:28AM 24   DOUBT THAT THOSE PARTICULAR INVESTORS WERE WIRE FRAUD VICTIMS

10:28AM 25   AND WHETHER OR NOT THEY ARE PROPERLY INCLUDED UNDER THE

10:28AM 1    CONSPIRACY COUNT I THINK, I THINK THAT THAT JURY -- THE

10:29AM 2    NON-VERDICT SPEAKS VOLUMES AND I THINK THAT IT SHOULD GUIDE THE

10:29AM 3    COURT IN DETERMINING WHETHER OR NOT THERE IS RECORD EVIDENCE

10:29AM 4    THAT SATISFIES THE STANDARD.

10:29AM 5         THE COURT:  THAT WAS MY QUESTION.

10:29AM 6      WHAT SHOULD I DO WITH THIS?  THE JURY DID NOT CONVICT AND,

10:29AM 7    OF COURSE, THAT WAS PROOF BEYOND A REASONABLE DOUBT, WASN'T IT?

10:29AM 8    AND THE STANDARD HERE IS A LITTLE DIFFERENT.

10:29AM 9      AND THEN WHAT SHOULD THE COURT DO?  HOW MUCH WEIGHT AND

10:29AM 10   WHAT WEIGHT DOES THE COURT GIVE OR WHAT -- WHAT SHOULD THE

10:29AM 11   COURT DO WITH THE JURY'S FINDING AS THAT VIS-A-VIS THE

10:29AM 12   CONVICTION OF COUNT ONE?

10:29AM 13     AND FOR THE PURPOSES OF RESTITUTION, SOME CASES SUGGEST

10:29AM 14   THAT, WELL, FOR RESTITUTION PURPOSES, YOU MAY BE ABLE TO LOOK

10:29AM 15   AT EVEN COUNTS THAT WEREN'T CHARGED, CONDUCT, IT'S CONDUCT

10:29AM 16   RELATED.  SO THAT'S WHY I'M ASKING YOUR GUIDANCE ON THAT FROM

10:29AM 17   YOUR POSITION, YOUR THOUGHT.

10:30AM 18        MR. LOOBY:  YES, YOUR HONOR.  AND I BELIEVE THE

10:30AM 19   SCOPE OF THE COURT'S REVIEW WOULD PROBABLY BE SIMILAR TO THE

10:30AM 20   GUIDELINES CALCULATION, AND OUR ARGUMENT WOULD BE NOT THAT THE

10:30AM 21   COURT IS, YOU KNOW, PRECLUDED FROM CONSIDERING THE HUNG COUNTS,

10:30AM 22   BUT THAT IT SHOULDN'T ORDER RESTITUTION FOR THOSE COUNTS BOTH

10:30AM 23   BECAUSE OF THE LACK OF RELIANCE IN THE RECORD AND THEN ALSO AS

10:30AM 24   AN ADDED FACTOR THAT IS SPECIFIC TO THE RESTITUTION CONTEXT,

10:30AM 25   THE LACK OF THE VICTIM IMPACT STATEMENT, THE LACK OF A REQUEST

10:30AM 1     FOR A SPECIFIC DOLLAR AMOUNT, THE LACK OF A CLAIM OF "I'VE BEEN

10:30AM 2     HARMED HERE, I'M A VICTIM, I'M OWED SPECIFIC RECOMPENSE."

10:30AM 3          SO WHEN THE QUESTION IS ORDERING A SPECIFIC DOLLAR AMOUNT

10:30AM 4     TO A PERSON, WE BELIEVE THAT THE GOVERNMENT HAS NOT MET THEIR

10:30AM 5     BURDEN IN PARTICULAR FOR THE HUNG COUNTS, AND THEN AMONGST THE

10:30AM 6     TEN, THE INDIVIDUALS WHO DIDN'T TESTIFY AT TRIAL WHO I

10:30AM 7     MENTIONED EARLIER.

10:30AM 8          THE COURT:  MAY I LEAVE YOU FOR JUST A MINUTE?  I'M

10:30AM 9     EAGER TO HEAR MR. LEACH'S COMMENT ON THIS.

10:30AM 10    MR. LEACH, THE JURY FOUND FIT NOT TO FIND MS. HOLMES

10:31AM 11    GUILTY, AT LEAST WITH THE EISENMANS.  LET ME START WITH THEM.

10:31AM 12         AND WHAT I HEAR MR. LOOBY SAYING IS, JUDGE, THE JURY

10:31AM 13    DIDN'T FIND GUILTY, AND SO IT'S REALLY NOT APPROPRIATE FOR YOU

10:31AM 14    TO LOOK TO THEM AS VICTIMS.

10:31AM 15         WHAT SHOULD I DO WITH THAT?

10:31AM 16         MR. LEACH:  WELL, YOU SHOULD LOOK TO THE DEFINITION

10:31AM 17    OF "VICTIM" WHICH IS IN 18 U.S.C. 3663(A), WHICH SAYS IT IS A

10:31AM 18    PERSON DIRECTLY AND PROXIMATELY HARMED AS A RESULT OF THE

10:31AM 19    COMMISSION OF AN OFFENSE."  THE OFFENSE IS CONSPIRACY WITH

10:31AM 20    RESPECT TO THE EISENMANS.

10:31AM 21         I WOULD SAY THAT WE KNOW THEY CONVICTED ON CONSPIRACY.  WE

10:31AM 22    DON'T KNOW WHAT HAPPENED ON THOSE THREE OTHER COUNTS.  THERE'S

10:31AM 23    NO DECISION THERE.

10:31AM 24         THE COURT:  YOU DISMISSED THOSE COUNTS?

10:31AM 25         MR. LEACH:  WE DID DISMISS THOSE COUNTS.

10:31AM 1          BUT MY POINT IS THAT IT COULD BE FOR LACK OF A WIRE.  IT

10:31AM 2   COULD BE FOR -- WE DON'T KNOW WHICH PARTICULAR ELEMENT WAS THE

10:31AM 3   HANG UP THERE.  IT'S NOT A FINDING THAT THEY WEREN'T A VICTIM.

10:31AM 4   AND THERE ARE DIFFERENT STANDARDS OF PROOF HERE, YOUR HONOR.

10:32AM 5          FOR THE CONVICTION, IT'S BEYOND A REASONABLE DOUBT.

10:32AM 6          FOR RESTITUTION PURPOSES, IT'S FOR PREPONDERANCE.

10:32AM 7          SO OUR CLAIM HERE IS THE CONSPIRACY.  IF YOU LOOK AT THE

10:32AM 8   INDICTMENT, IT'S 2010 TO 2015.  THE EISENMANS, LIKE ALL OF THE

10:32AM 9   C1 AND C2 INVESTORS, FALL WITHIN THAT TIME PERIOD.

10:32AM 10          THE COURT CAN MAKE A FINDING BASED ON MR. EISENMAN'S

10:32AM 11   TESTIMONY IN BOTH THE HOLMES CASE AND THE BALWANI CASE AND HIS

10:32AM 12   VICTIM IMPACT STATEMENT THAT HE RELIED ON THE STATEMENTS BY A

10:32AM 13   PREPONDERANCE.

10:32AM 14          I APPRECIATE THAT THERE'S -- WE DON'T KNOW WHY THEY DIDN'T

10:32AM 15   RETURN A VERDICT ON THOSE PARTICULAR COUNTS, BUT THERE'S NO

10:32AM 16   LOGICAL REASON WHY THEY'RE NOT COVERED BY THE CONSPIRACY COUNT

10:32AM 17   AND WHY THE COURT CAN'T MAKE THAT FINDING BASED ON THE

10:32AM 18   PREPONDERANCE STATEMENT.

10:32AM 19          AND RESTITUTION DOES HAVE A BROADER PURPOSE THAN TO

10:32AM 20   RECOMPENSE VICTIMS HERE.  IT'S SOMETHING THAT CONGRESS HAS

10:33AM 21   MANDATED THROUGH THE MVRA.  WE HAVE A CONVICTION ON THE

10:33AM 22   CONSPIRACY COUNT, AND THAT SHOULD COVER THOSE THREE VICTIMS.

10:33AM 23          THE COURT:  OKAY.  THANK YOU.

10:33AM 24          MR. LOOBY:  I WOULD JUST SAY THAT AS THE STEIN CASE

10:33AM 25   ELABORATES, THE INQUIRY OF PROXIMATE CAUSE AND BUT FOR

10:33AM 1    CAUSATION OR AT LEAST THE BUT FOR CAUSATION OF THE RELIANCE ON

10:33AM 2    THE MISREPRESENTATION THAT CONSTITUTE THE OFFENSE CONDUCT IS

10:33AM 3    THE SAME.  SO EVEN IF THE MANDATORY VICTIMS RESTITUTION ACT HAS

10:33AM 4    DIFFERENT POLICY MOTIVATIONS AND AIMS, THAT'S A REQUIREMENT

10:33AM 5    THAT IS THE SAME ACROSS THE TWO.

10:33AM 6         AND SO, YOU KNOW, WE HAVE IN OUR PAPERS IN CONNECTION WITH

10:33AM 7    SENTENCING AND THEN HERE I HAVE EXPLAINED WHY WE DON'T THINK

10:33AM 8    THERE'S A PREPONDERANCE OF EVIDENCE OF RELIANCE FOR AT A

10:33AM 9    MINIMUM THE LARGER GROUP THAT WE WERE TALKING ABOUT, THE 807

10:33AM 10   MILLION, BUT ALSO MEMBERS WITHIN THE TEN THAT THE COURT DID

10:33AM 11   INCLUDE IN ITS SENTENCING.

10:33AM 12        AND I THINK THE JURY'S REACTION TO THE GOVERNMENT'S CASE

10:34AM 13   AND ITS RESULT I THINK SHOULD BE A CONSIDERABLE FACTOR IN THE

10:34AM 14   COURT'S DISCRETION THERE ABOUT WHETHER OR NOT THE GOVERNMENT

10:34AM 15   HAS MET ITS BURDEN UNDER THE MVRA, WHICH VERY SQUARELY LAYS IT

10:34AM 16   OUT TO MARSHAL THE EVIDENCE THAT ARISE.

10:34AM 17              THE COURT:  OKAY/  THANK YOU.

10:34AM 18              MR. LOOBY:  I CAN TURN YOUR HONOR TO OUR OBJECTIONS

10:34AM 19   TO THE GOVERNMENT'S CALCULATION OF ACTUAL LOSS BECAUSE IN A WAY

10:34AM 20   THIS REALLY IN EFFECT MOOTS THE INITIAL QUESTION BECAUSE THE

10:34AM 21   GOVERNMENT'S -- IT MOOTS THE INITIAL QUESTION OF RELIANCE

10:34AM 22   BECAUSE FOR WHOMEVER QUALIFIES AS A VICTIM IN THAT THEY HAVE

10:34AM 23   BEEN PROVEN TO HAVE RELIED ON THE OFFENSE CONDUCT UNDER THE

10:34AM 24   MVRA, THE GOVERNMENT'S ALL OR NOTHING APPROACH IS INCONSISTENT

10:34AM 25   WITH THE MANDATES OF THE CASE LAW AND REALLY LEAVES US WITH

10:34AM 1    NOTHING TO GO ON IN TERMS OF WHAT IS THE EXACT CALCULATION OF

10:34AM 2    ANY VICTIM'S LOSS HERE.

10:34AM 3             THE COURT:  ARE YOU REFERRING TO THE GOVERNMENT'S

10:34AM 4    REQUEST FOR THE 900 MILLION, WHATEVER THAT IS?

10:34AM 5             MR. LOOBY:  IT'S ACTUALLY BOTH OF THE REQUESTS.  SO

10:35AM 6    THE $807 MILLION, THAT'S THE C1 AND C2, EVERYBODY, BUT THE

10:35AM 7    AMOUNT THAT THEY'RE REQUESTING IS JUST THEIR FULL INVESTMENT

10:35AM 8    AMOUNT.

10:35AM 9         AND THEN THE NARROWER GROUP, THE ROUGHLY $444 MILLION

10:35AM 10   REQUEST IS THE TEN INDIVIDUALS, I SUPPOSE PLUS THE EISENMANS,

10:35AM 11   THAT THE COURT FOUND AT SENTENCING.

10:35AM 12        BUT, AGAIN, IT'S THEIR FULL RESTITUTION AMOUNT.  SO UNLIKE

10:35AM 13   AT SENTENCING, THE GOVERNMENT HAS NOT PROPOSED A MIDDLE GROUND.

10:35AM 14   IT HAS SAID IN ITS BRIEFING AND THEN HERE TODAY IT HAS SAID

10:35AM 15   IT'S BASICALLY ALL OR NOTHING.

10:35AM 16        AND THE GOVERNMENT HAS THE BURDEN TO ESTABLISH THE LOSS

10:35AM 17   WITH PRECISION.  AND THE GOVERNMENT -- I'VE HEARD THEM SAY IN

10:35AM 18   THEIR BRIEF AND I'VE HEARD THEM SAY TODAY THAT RESTITUTION IS

10:35AM 19   DIFFERENT.  AND ON THAT MUCH WE AGREE, IT IS DIFFERENT, BECAUSE

10:35AM 20   IN THE RESTITUTION CONTEXT, THE COURT IS CONSTRAINED TO AWARD

10:35AM 21   THE ACTUAL LOSS, AND THE CASES MAKE CLEAR THAT A RESTITUTION

10:35AM 22   AWARD IN THE AMOUNT ABOVE THE ACTUAL LOSS IS IMPERMISSIBLE.

10:36AM 23             THE COURT:  THEY'RE NOT ENTITLED TO A DOUBLE

10:36AM 24   RECOVERY OR ANYTHING MORE THAN A VICTIM IS ACTUALLY -- THE LOSS

10:36AM 25   THAT THEY SUSTAINED.

| | | |
|---|---|---|
| 10:36AM | 1 | MR. LOOBY:  RIGHT, YOUR HONOR.  AND THERE'S -- |
| 10:36AM | 2 | THE COURT:  SO WHY ISN'T THE LOSS WHAT THEY -- |
| 10:36AM | 3 | WHATEVER THEIR INVESTMENT WAS?  THEY WROTE A CHECK FOR $100 FOR |
| 10:36AM | 4 | SO MANY SHARES.  WHY SHOULDN'T THEY GET $100 BACK IN MY |
| 10:36AM | 5 | HYPOTHETICAL? |
| 10:36AM | 6 | MR. LOOBY:  RIGHT.  SO, YOUR HONOR, I THINK THERE |
| 10:36AM | 7 | ARE TWO MAIN ISSUES WITH THAT. |
| 10:36AM | 8 | THE FIRST ONE IS -- IT FOLLOWS FROM THE GERINGER CASE IN |
| 10:36AM | 9 | THE NINTH CIRCUIT AND THEN THE PROCEEDINGS BEFORE YOUR HONOR -- |
| 10:36AM | 10 | THE COURT:  I REMEMBER THE CASE. |
| 10:36AM | 11 | MR. LOOBY:  YES, I'M SURE YOU DO. |
| 10:36AM | 12 | AND WHAT THAT CASE TEACHES US, AND THIS IS CONSISTENT FROM |
| 10:36AM | 13 | THE ZOLP HOLDING IN THE GUIDELINES PURPOSES, BUT IN GERINGER AT |
| 10:36AM | 14 | LEAST IT WAS BOTH FOR GUIDELINES LOSS CALCULATION AND |
| 10:36AM | 15 | RESTITUTION, IS WHEN INVESTORS OWN A SHARE OF THE COMPANY AND |
| 10:36AM | 16 | THE OFFENSE CONDUCT IS REVEALED, THEN THERE IS SOME SORT OF |
| 10:36AM | 17 | IMPAIRMENT TO THE VALUE OF THE COMPANY THAT THEY OWN, BUT THEN |
| 10:37AM | 18 | THERE IS RESIDUAL VALUE IN THE COMPANY, THERE NEEDS TO BE AN |
| 10:37AM | 19 | OFFSET OF THE VALUE OF WHAT THEY OWN AT THE CONCLUSION OF THE |
| 10:37AM | 20 | OFFENSE CONDUCT.  AND THAT'S TRUE. |
| 10:37AM | 21 | IN GERINGER, AS IN HERE, REGARDLESS OF WHETHER OR NOT THE |
| 10:37AM | 22 | INVESTORS ULTIMATELY ARE ABLE TO RECOUP ANY OF THOSE ASSETS, IN |
| 10:37AM | 23 | GERINGER YOUR HONOR WILL RECALL THAT THEY DID NOT.  THE COMPANY |
| 10:37AM | 24 | WAS PUT INTO A RECEIVERSHIP, AND THERE WERE EFFORTS MADE TO |
| 10:37AM | 25 | MONETIZE CERTAIN OF ITS ASSETS, AND THEY ULTIMATELY FAILED AND |

10:37AM 1    THE INVESTORS DIDN'T GET ANYTHING.  AND THAT'S UNFORTUNATE AND

10:37AM 2    IT'S UNFORTUNATE HERE.

10:37AM 3        BUT THE SIMILARITY IS THAT HERE THE OFFENSE CONDUCT, AND

10:37AM 4    THE COURT HAS FOUND THAT THE GOVERNMENT HAS NOT PROVEN BY A

10:37AM 5    PREPONDERANCE OF THE EVIDENCE THAT THE 2018 FAILURE OF THERANOS

10:37AM 6    IS CAUSED BY THE OFFENSE CONDUCT.

10:37AM 7        THE COMPANY CONTINUED FOR SEVERAL YEARS.  IT UNDOUBTEDLY

10:37AM 8    HAD VALUE.  IT HAD VALUE BEFORE THE OFFENSE CONDUCT.  IT HAD

10:37AM 9    VALUE AFTER THE OFFENSE CONDUCT.

10:37AM 10       THE BURDEN WAS ON THE GOVERNMENT TO COME UP WITH NUMBERS

10:38AM 11   TO OFFSET THAT VALUE.  GERINGER IS VERY CLEAR ON THAT.  AND

10:38AM 12   THE -- FOR EXAMPLE, THE COMPANY'S VALUABLE INTELLECTUAL

10:38AM 13   PROPERTY PORTFOLIO THAT WAS -- THAT VARIOUS ESTIMATES OF ITS

10:38AM 14   VALUE ARE IN THE HUNDREDS OF MILLIONS OF DOLLARS.  THOSE ARE

10:38AM 15   ASSETS THAT THE INVESTORS OWNED IN 2016.  THOSE ARE ASSETS THAT

10:38AM 16   THE INVESTORS OWNED IN 2017.

10:38AM 17       ULTIMATELY THEY WERE NOT ABLE TO RECOUP THEIR INVESTMENT,

10:38AM 18   BUT IT DOESN'T FLOW FROM THE CASE LAW THAT THE RESTITUTION

10:38AM 19   AMOUNT THAT THEIR ACTUAL LOSS SHOULD INCLUDE THAT RESIDUAL

10:38AM 20   VALUE.  THE GOVERNMENT HASN'T PROFFERED TO VALUE THAT.

10:38AM 21       NOW, THERE'S A SEPARATE BUCKET OF ISSUES, WHICH I'LL CALL

10:38AM 22   THE OFFSETS, AND THIS RELATES TO PROPERTY RETURNED.  SO IT'S A

10:38AM 23   SEPARATE QUESTION FROM WHAT VALUE DID THE COMPANY HAVE AFTER

10:38AM 24   THE OFFENSE CONDUCT.  AND THEN THERE ARE CERTAIN OFFSETS THAT

10:39AM 25   HAPPENED LATER WHERE THERE ARE EVENTS THAT OCCURRED LIKE THE C2

10:39AM 1   DEAL WITH THE C2 SHAREHOLDERS WHERE THERE'S A NEGOTIATION AND

10:39AM 2   ULTIMATELY A NEGOTIATED AGREEMENT WHEREBY THEY RETAINED OR

10:39AM 3   OBTAINED SHARES THAT HAD GREATER DEMOCRATIC POWER WITHIN THE

10:39AM 4   COMPANY FOR VALUE.

10:39AM 5       THERE WAS ALSO THE 2018 S.E.C. SETTLEMENT WHERE

10:39AM 6   MS. HOLMES'S SHARES WERE RETURNED TO THE COMPANY.

10:39AM 7       THESE ARE INSTANCES WHERE YEARS AFTER THE OFFENSE CONDUCT

10:39AM 8   THERE IS VALUE CHANGING HANDS.  THERE IS MONEY GOING BACK AND

10:39AM 9   FORTH.

10:39AM 10      THE COURT HAS HELD THAT IT IS NOT ALL DOWNSTREAM OF THE

10:39AM 11  OFFENSE CONDUCT.

10:39AM 12      THE GOVERNMENT -- THE RECORD IN THIS CASE DOES NOT HAVE

10:39AM 13  THE ANSWER TO KIND OF WHAT THE NUMBERS OF THESE VALUES SHOULD

10:39AM 14  BE.  THE GOVERNMENT HAD THE BURDEN TO INTRODUCE THAT EVIDENCE

10:39AM 15  IN CONNECTION WITH RESTITUTION.  IT HAS NOT.

10:39AM 16      WE KNOW THAT THE FULL INVESTMENT AMOUNT IS THE INCORRECT

10:39AM 17  AMOUNT.  WE DON'T KNOW WHAT THE CORRECT NUMBER IS, BUT IT HAS

10:40AM 18  TO BE LESS THAN THAT, YOUR HONOR.

10:40AM 19          THE COURT:  WHAT DOES ROBERS TELL US ABOUT THIS?

10:40AM 20          MR. LOOBY:  SO ROBERS DOES NOT TELL US MUCH,

10:40AM 21  YOUR HONOR.  AND THAT IS -- THAT IS A CASE THAT RELATES

10:40AM 22  SPECIFICALLY TO THE QUESTION OF WHAT IS THE PROPERTY TO BE

10:40AM 23  VALUED WHEN IT IS RETURNED?  SO IT IS THAT PORTION OF THE MVRA

10:40AM 24  STATUTE THAT IS ABOUT RETURNING VALUE.  IT'S NOT ABOUT THE

10:40AM 25  RESIDUAL VALUE IN THE INVESTMENT.  IT'S NOT THE -- IT'S NOT IN

10:40AM 1    THE GERINGER LANE OF CASES.  IT'S IN THE -- IT WOULD BE

10:40AM 2    RELEVANT PERHAPS TO THE OFFSETS THAT ARE THE C2 INVESTMENT DEAL

10:40AM 3    AND THE S.E.C. SETTLEMENT BECAUSE THAT INVOLVES, WELL, WHAT IS

10:40AM 4    THE PROPERTY THAT IS BEING RETURNED.

10:40AM 5         AND IN THAT CASE THE QUESTION BEFORE THE COURT WAS VERY

10:40AM 6    NARROW.  IT WAS, YOU KNOW, WHEN ARE WE VALUING THIS REAL ESTATE

10:40AM 7    COLLATERAL?

10:40AM 8         AND HERE WE ARE JUST NOT -- IT DOESN'T HAVE A WHOLE LOT TO

10:40AM 9    TELL US ABOUT -- IT HAS NOTHING TO TELL US ABOUT WHAT WAS THE

10:40AM 10   VALUE OF THE COMPANY AT THAT TIME.  THAT IS A GERINGER

10:41AM 11   QUESTION.  THAT IS THAT RUTSKOKE -- R-U-T-S-K-O-K-E, FOR THE

10:41AM 12   COURT REPORTER -- OUT OF THE SECOND CIRCUIT.  THOSE ARE

10:41AM 13   SEPARATE QUESTIONS FROM THAT.

10:41AM 14        SO ROBERS DOES NOT SPEAK TO REALLY THE BIGGEST ISSUE WITH

10:41AM 15   THE GOVERNMENT'S REQUEST FOR THE FULL INVESTMENT AMOUNT.

10:41AM 16             THE COURT:  OKAY.  THANK YOU.

10:41AM 17        SO I'M CURIOUS TO KNOW WHAT IS MS. HOLMES'S POSITION AS TO

10:41AM 18   WHAT THE COURT SHOULD ORDER FOR RESTITUTION?

10:41AM 19             MR. LOOBY:  SO, YOUR HONOR, OUR POSITION IS THAT THE

10:41AM 20   GOVERNMENT HAS NOT MET ITS BURDEN TO ESTABLISH A NUMBER THAT IS

10:41AM 21   SUFFICIENTLY PRECISE TO SATISFY THE STANDARDS OF THE MVRA.

10:41AM 22        OUR POSITION IS NOT NECESSARILY THAT IT WOULD BE

10:41AM 23   IMPOSSIBLE TO DO, ALTHOUGH IT WOULD BE EXCEEDINGLY COMPLEX.

10:41AM 24   AND THAT IS OUR SEPARATE ARGUMENT UNDER THE COMPLEXITY

10:41AM 25   EXCEPTION.

10:41AM 1    BECAUSE I DID HEAR MR. LEACH SAY, YOU KNOW, THIS ISN'T A

10:41AM 2 PUBLIC COMPANY. IT'S -- I THINK HE SAID IT WAS -- IT'S NOT

10:42AM 3 LIKE WE CAN LOOK AT THE TRAJECTORY OF THE SHARE PRICE THAT

10:42AM 4 DROPS AFTER THE OFFENSE CONDUCT IS REVEALED AND EASILY ASSIGN A

10:42AM 5 NUMBER TO IT.

10:42AM 6    BUT AS YOUR HONOR RECOGNIZED IN THE SENTENCING CONTEXT,

10:42AM 7 THE CASES DON'T DISTINGUISH BETWEEN ILLIQUID AND LIQUID ASSETS

10:42AM 8 AND TO BE SURE IT IS MUCH HARDER IN OUR SITUATION. IT'S VERY

10:42AM 9 COMPLEX.

10:42AM 10    THE GOVERNMENT PROFFERED AN EXPERT IN CONNECTION WITH

10:42AM 11 SENTENCING TO TRY TO SOLVE SOME OF THOSE ISSUES WITH

10:42AM 12 SENTENCING, AND IT HASN'T MADE ANY EFFORT TO DO THAT WORK IN

10:42AM 13 CONNECTION WITH RESTITUTION. AND SO BASED ON THE GOVERNMENT'S

10:42AM 14 SUBMISSION, THERE IS NO RESTITUTION ORDER THAT SHOULD ISSUE.

10:42AM 15    THE COURT: THE GOVERNMENT HASN'T MET THEIR BURDEN

10:42AM 16 IN MS. HOLMES'S POSITION, AND, THEREFORE, IT WOULD BE

10:42AM 17 INAPPROPRIATE FOR THE COURT TO ORDER RESTITUTION?

10:42AM 18    MR. LOOBY: THAT'S, YOUR HONOR, THE --

10:42AM 19    THE COURT: I'M SORRY.

10:42AM 20    MR. LOOBY: SORRY. I DIDN'T MEAN TO SPEAK OVER YOU.

10:42AM 21    THE COURT: NO, NO, I INTERRUPTED YOU. GO AHEAD.

10:42AM 22    MR. LOOBY: YES. AND IT'S REALLY A CONSEQUENCE OF

10:43AM 23 THE GOVERNMENT'S ALL OR NOTHING APPROACH HERE. THEY HAVE SAID

10:43AM 24 THAT IT'S THE FULL INVESTMENT AMOUNT. WE KNOW THAT THAT'S NOT

10:43AM 25 RIGHT.

10:43AM 1          THE COURT:  OKAY.  LET ME ASK A QUESTION THAT I

10:43AM 2     PROBABLY KNOW THE ANSWER TO, BUT HAS THE NINTH CIRCUIT EVER

10:43AM 3     UPHELD AN APPLICATION OF THE MVRA'S COMPLEXITY ISSUE?

10:43AM 4          MR. LOOBY:  IT HAS -- I DO NOT THINK IT HAS EVER

10:43AM 5     AFFIRMED A GOVERNMENT APPEAL FROM THAT.

10:43AM 6          AND THEN I THINK THAT THERE'S BEEN A CASE OR TWO WHERE IT

10:43AM 7     MAY HAVE REVERSED, BUT I THINK THIS IS -- AND I THINK THE

10:43AM 8     REASON WHY, THE REASON WHY THE EXCEPTION REALLY WORKS HERE I

10:43AM 9     THINK IS SPELLED OUT IN THE SECOND CIRCUIT CASE THAT WE CITE IN

10:43AM 10    OUR BRIEF, THE REIFLER CASE.  I MIGHT BE BUTCHERING THAT AS

10:43AM 11    WELL.

10:43AM 12         BUT A LOT OF THE SAME SITUATION THAT THE COURT THERE NOTED

10:44AM 13    APPLIES HERE, WHICH IS THERE'S AN ASSET THAT THE INVESTORS

10:44AM 14    HOLD.  IT'S DAMAGED, BUT ITS VALUE IS NOT REDUCED TO NOTHING.

10:44AM 15    SLOWLY OVER TIME UNFORTUNATELY THE ASSET BECOMES VALUELESS.

10:44AM 16    DETERMINING WHEN THE MOMENT OF HARM WAS, WHAT THE DEGREE OF

10:44AM 17    HARM WAS, WHERE TO STOP THE CAUSAL CHAIN, THESE ARE EXCEEDINGLY

10:44AM 18    COMPLEX QUESTIONS.

10:44AM 19         AND IN THAT SECOND CIRCUIT CASE, WHICH THE COURT

10:44AM 20    ULTIMATELY REMANDED THE CASE, IT WENT OUT OF ITS WAY TO SUGGEST

10:44AM 21    THAT THIS MIGHT BE A COMPLEXITY EXCEPTION CASE, AND WE SUBMIT

10:44AM 22    THAT THIS IS ONE AS WELL.

10:44AM 23         THE COURT:  OKAY.  THANK YOU.

10:44AM 24         SO IT'S MORE THAN IN MY HYPOTHETICAL I PAID $100 FOR

10:44AM 25    WHATEVER AMOUNT OF SHARES, AND IRRESPECTIVE OF WHAT HAPPENED, I

10:44AM 1    LOST MY INVESTMENT.  THAT'S NOT ENOUGH?

10:44AM 2         MR. LOOBY:  THAT'S RIGHT, YOUR HONOR.  THAT'S NOT

10:44AM 3    THE INQUIRY OF ACTUAL LOSS BECAUSE OF THE PROXIMATE CAUSE

10:44AM 4    REQUIREMENT AND THE INTERVENING CAUSE DOCTRINES THAT ARE

10:45AM 5    EMBEDDED IN THE RESTITUTION CASE LAW, WHICH THE COURT HAS FOUND

10:45AM 6    THAT THE COMPANY -- THE OFFENSE CONDUCT DID NOT CAUSE OR THE

10:45AM 7    GOVERNMENT HAS NOT PROVEN BY A PREPONDERANCE OF THE EVIDENCE

10:45AM 8    THAT THE OFFENSE CONDUCT IS WHAT LED TO THE COMPANY'S

10:45AM 9    SHUDDERING.

10:45AM 10        WE KNOW THAT THE COMPANY RETAINED VALUE DURING THAT TIME

10:45AM 11   PERIOD.  THE INVESTORS OWNED THAT VALUE.

10:45AM 12        WHATEVER CAUSED THAT LOSS, IT WASN'T -- IT HAS NOT BEEN

10:45AM 13   SHOWN THAT IT WAS THE OFFENSE CONDUCT, AND SO IT CANNOT COUNT

10:45AM 14   AS ACTUAL LOSS.

10:45AM 15        AND I KNOW IT'S A LITTLE COUNTERINTUITIVE BECAUSE THEY

10:45AM 16   DIDN'T GET ANYTHING BACK, BUT THAT'S JUST THE WAY THAT THE

10:45AM 17   DOCTRINE INTERACTS WITH THE FACTS OF OUR CASE.

10:45AM 18        THE COURT:  WELL, THAT'S WHAT THE MVRA IS SUPPOSED

10:45AM 19   TO AND THE LAW WAS CHANGED IN THAT REGARD.  THE SPIRIT WAS TO

10:45AM 20   AFFORD AN OPPORTUNITY FOR VICTIMS, FIRST OF ALL, THERE HAS TO

10:45AM 21   BE IDENTIFICATION OF A VICTIM, IT PROVIDES AN OPPORTUNITY FOR

10:45AM 22   VICTIMS TO BE RECOMPENSED FULLY TO THEIR LOSS.

10:46AM 23        AND YOU'RE SAYING, YOUR ARGUMENT IS THAT THAT DOES NOT IN

10:46AM 24   ANY WAY OFFEND THE SPIRIT OF THE MVRA.

10:46AM 25        MR. LOOBY:  IT DOESN'T BECAUSE THE MVRA PUTS THE

10:46AM 1     BURDEN ON THE GOVERNMENT TO COME UP WITH A CALCULATION OF

10:46AM 2     ACTUAL LOSS THAT IS CONSISTENT WITH THE MANDATES OF THE

10:46AM 3     GOVERNING CASE LAW, AND HERE THEY HAVE NOT DONE THAT.

10:46AM 4         SO THE OUTCOME HERE WOULD BE NOT INCONSISTENT WITH THE

10:46AM 5     DIRECTION AND THE STRUCTURE OF THE MVRA.

10:46AM 6           THE COURT:  OKAY.  THANK YOU.

10:46AM 7      MR. LEACH.

10:46AM 8          MR. LEACH:  YOUR HONOR, I THINK ROBERS IS ON POINT,

10:46AM 9     AND IF YOU ACCEPT WHAT THE DEFENSE IS ARGUING HERE, YOU WOULD

10:46AM 10    HAVE THE CONTEXT WHERE IF I'M DEFRAUDED INTO MAKING LOANS TO A

10:46AM 11    COMPANY, MY LOSS IS THE FULL AMOUNT OF THE LOAN.  BUT IF I'M

10:46AM 12    DEFRAUDED IN MAKING AN INVESTMENT, SOMEHOW THE VALUE OF THE

10:46AM 13    SHARES AT SOME AMORPHOUS PERIOD OF TIME NEEDS TO BE THE

10:46AM 14    REDUCTION TO THAT.  AND THAT'S NOT WHAT 3663(A) SAYS.

10:46AM 15        IT SAYS, "THE ORDER OF RESTITUTION SHALL REQUIRE THAT SUCH

10:47AM 16    DEFENDANTS IN THE CASE OF AN OFFENSE RESULTING IN DAMAGE OR

10:47AM 17    LOSS OR DESTRUCTION OF PROPERTY OF A VICTIM OF THE OFFENSE

10:47AM 18    RETURN THE PROPERTY."

10:47AM 19        THE PROPERTY HERE IS MONEY.  YOU KNOW, YOU CAN TRY TO

10:47AM 20    ESTIMATE WHAT THERANOS WAS WORTH ON ANY OTHER DAY, BUT THAT'S

10:47AM 21    THE SAME THING THAT WAS HAPPENING IN ROBERS WHERE THE DEFENDANT

10:47AM 22    WAS TRYING TO SAY, YOU KNOW, THE HOUSE CHANGED IN VALUE BETWEEN

10:47AM 23    DIFFERENT PERIODS OF TIME THE AND THE LENDER TOOK POSSESSION OF

10:47AM 24    THE HOUSE AND WE SHOULD GET THAT OFFSET BECAUSE THE HOUSE IS

10:47AM 25    WORTH SOMETHING.

10:47AM 1    NO.  IT'S THE MONEY THAT IS THE PROPERTY HERE.

10:47AM 2    AND THE FACT THAT SHARES HYPOTHETICALLY COULD HAVE HAD A

10:47AM 3    VALUE ON SOME DAY REALLY IS A DISCONNECT FROM WHAT THESE

10:47AM 4    INVESTORS REALLY FEEL THEIR LOSS IS.  THEY GOT NOTHING BACK.

10:47AM 5    THEY COULDN'T SELL THOSE PIECES OF PAPER THAT WERE SUPPOSEDLY

10:47AM 6    BACKED BY PATENTS.  MS. HOLMES CONTROLLED THOSE.

10:47AM 7    THERE'S SOME SUGGESTION THAT THERE WAS A CHANGE OF MONEY

10:47AM 8    AFTER THE FACT.  THAT'S JUST NOT TRUE.  THERE WAS, YOU KNOW,

10:48AM 9    THE INVESTORS MS. HOLMES GAVE UP OWNERSHIP OF HER COMPANY, BUT

10:48AM 10   THEY NEVER GOT THEIR CASH BACK, AND THAT'S THE PROPERTY THAT

10:48AM 11   THE COURT SHOULD BE FOCUSSED ON HERE.

10:48AM 12   IT'S NOT AN ALL OR NOTHING APPROACH, YOUR HONOR.  OUR

10:48AM 13   ARGUMENT IS THAT IT'S THE AMOUNT OF THE INVESTMENT.  I THINK IF

10:48AM 14   YOU ASK -- JUST APPLY COMMON SENSE, IT'S THE MONEY THAT THESE

10:48AM 15   PEOPLE LOST WAS THE MONEY THAT THEY PUT IN.  BUT I THINK THE

10:48AM 16   SABA REPORT IN TERMS OF ITS ESTIMATE OF WHAT THE VALUE OF

10:48AM 17   THERANOS WAS ON A PARTICULAR DATE, WHICH THE COURT USED FOR

10:48AM 18   SENTENCING, IS AN ALTERNATIVE WAY TO GO ABOUT IT.

10:48AM 19   BUT I STICK TO THE PROPOSITION THAT THE MONEY THAT THESE

10:48AM 20   INVESTORS LOST IS THE MONEY THAT THEY LOST AT THE END OF THE

10:48AM 21   DAY.

10:48AM 22   MR. LOOBY:  YES, YOUR HONOR.

10:48AM 23   ON ROBERS, I THINK THE KEY DIFFERENCE IS THE DIFFERENCE

10:48AM 24   BETWEEN A LOAN AND AN INVESTMENT IN A COMPANY WITH VALUE.  SO

10:48AM 25   THE LOAN IS YOU'RE EXCHANGING MONEY AND AS A PROMISE TO GET A

10:49AM 1   STREAM OF INTEREST.  AND WHEN THAT STREAM RUNS OUT, THERE'S

10:49AM 2   NOTHING LEFT.  THERE'S NO VALUE THERE.

10:49AM 3       HERE THERE IS AN EXCHANGE OF MONEY FOR SHARES IN A

10:49AM 4   COMPANY, THE COMPANY THAT RETAINED VALUE AFTER THE OFFENSE

10:49AM 5   CONDUCT CONCLUDED PER THE COURT'S FACTUAL FINDINGS THAT IT HAS

10:49AM 6   ALREADY MADE AND SO THERE HAS TO BE A CALCULATION OF THE

10:49AM 7   INHERENT VALUE OF THE COMPANY.  THAT'S THE GERINGER CASE.  IT'S

10:49AM 8   JUST MORE ON POINT THAN THE ROBERS CASE, WHICH I THINK IS JUST

10:49AM 9   TOO FAR AFIELD IN TERMS OF ITS FACTS TO BE VERY HELPFUL TO US

10:49AM 10  HERE.

10:49AM 11      AND THEN JUST VERY BRIEFLY, YOUR HONOR, ON THE SABA

10:49AM 12  REPORT, THERE'S A -- WE OUTLINED IN OUR BRIEF A FEW REASONS WHY

10:49AM 13  THE REPORT ISN'T PARTICULARLY A GOOD FIT FOR CALCULATING THAT

10:49AM 14  RESIDUAL VALUE IN THE COMPANY.

10:49AM 15      THE METHODOLOGY FROM THE SABA REPORT THAT THE COURT

10:49AM 16  ADOPTED FOCUSSED ON A HARM THAT PURPORTEDLY OCCURRED AT THE

10:49AM 17  MOMENT OF INVESTMENT, AND THE COURT PICKED DECEMBER OF 2014,

10:50AM 18  ROUGHLY THE CLOSE OF THE C2 ROUND, AS AN APPROPRIATE DATE FOR

10:50AM 19  SENTENCING PURPOSES TO ESTIMATE THE ASSERTED INFLATION IN THE

10:50AM 20  SHARE PRICE.  SO IT'S ESSENTIALLY WHAT THEY OVERPAID AT THE

10:50AM 21  TIME.

10:50AM 22      THE QUESTION FOR RESTITUTION IS, WELL, WHAT HAPPENED NEXT?

10:50AM 23  WHAT HAPPENED AFTER?  WHAT HAPPENED AFTER THE OFFENSE CONDUCT?

10:50AM 24  WHAT VALUE DID THE INVESTORS RETAIN IN THEIR SHARES IN THE

10:50AM 25  COMPANY?

10:50AM 1        AND THE SABA REPORT DOESN'T PURPORT TO ANSWER THAT

10:50AM 2   QUESTION.

10:50AM 3        SO THAT'S KIND OF THE BIG PICTURE REASON WHY IT DOESN'T

10:50AM 4   FIT.  AND THEN WE HAVE SEVERAL OTHER OBJECTIONS FOR WHY AT

10:50AM 5   RESTITUTION, AT LEAST PUTTING ASIDE WHETHER OR NOT IT IS USEFUL

10:50AM 6   IN THE SENTENCING CONTEXT, THERE ARE CERTAIN ASPECTS OF

10:50AM 7   RESTITUTION THAT MAKE IT LESS USEFUL, ONE OF WHICH IS THE

10:50AM 8   FAILURE TO ACCOUNT FOR THE FULL VALUE OF THE COMPANY'S IP.

10:50AM 9        THE COMPANY CONTINUED TO GET PATENTS GRANTED IN 2015 AND

10:51AM 10  2016.  IT'S IP PORTFOLIO WAS UNDOUBTEDLY A VALUABLE ASSET THAT

10:51AM 11  THE INVESTORS OWNED, THE INCOME METHODOLOGY THAT THE COURT

10:51AM 12  ADOPTED FROM THE SABA REPORT DIDN'T PURPORT TO COVER THAT.

10:51AM 13       SO IF THE QUESTION IS, AND IT IS IN RESTITUTION, WELL,

10:51AM 14  WHAT VALUE DID THE INVESTORS RETAIN, UM, NOTWITHSTANDING THE

10:51AM 15  OFFENSE CONDUCT, THEN THE SABA REPORT ISN'T GOING TO ANSWER OUR

10:51AM 16  QUESTION.

10:51AM 17       AND THEN SIMILARLY, WE -- AS WE MAINTAINED IN CONNECTION

10:51AM 18  WITH SENTENCING, THE REPORT DOES MAKE A NUMBER OF ASSUMPTIONS

10:51AM 19  THAT DO LEAD TO KIND OF RANGES IN THE TENS OF MILLIONS OF

10:51AM 20  DOLLARS DEPENDING UPON CERTAIN ASSUMPTIONS OR DIFFERENT

10:51AM 21  METHODOLOGIES, AND THE COURT FOUND THAT THAT WAS REASONABLY --

10:51AM 22  IT WAS REASONABLY ACCURATE OR INFORMATIVE FOR THE GUIDELINES

10:51AM 23  PURPOSES.

10:51AM 24       BUT WHEN WE'RE TALKING ABOUT RESTITUTION, A DIFFERENCE OF

10:51AM 25  $30, $40, $50 MILLION HERE, $50 MILLION THERE, IN TERMS OF AN

10:52AM 1   ORDER REQUIRING OUR CLIENT TO PAY SPECIFIC INDIVIDUALS MONEY,

10:52AM 2   THE UNCERTAINTY THAT COMES WITH THE SABA REPORTS METHODOLOGY

10:52AM 3   BECOMES INTOLERABLE IN THIS CONTEXT, AND THERE'S A REAL RISK

10:52AM 4   THAT PEOPLE WOULD BECOME OVERCOMPENSATED.  SO WE SUBMIT THAT

10:52AM 5   THE SABA REPORT FOR THOSE REASONS IS NOT HELPFUL GROUND.

10:52AM 6        THERE IS METHODOLOGY IN THE CASE LAW IN THE SECOND CIRCUIT

10:52AM 7   CASES THAT WE CITE, THE DDNY CASES THAT WE CITE, THAT TALK

10:52AM 8   ABOUT HOW THESE VALUATIONS MIGHT OCCUR.  THEY'RE CONCEDEDLY

10:52AM 9   DIFFICULT, THE CASES WITH ILLIQUID SECURITIES.  BUT AS THE

10:52AM 10  COURT FOUND AT SENTENCING, DIFFICULT DOESN'T MEAN THAT YOU

10:52AM 11  DON'T HAVE TO TRY, AND THE GOVERNMENT DIDN'T TRY.

10:52AM 12       THE COURT:  OKAY.  THANK YOU.

10:52AM 13       SO YOU'RE NOT SAYING THAT THERE ARE NO VICTIMS HERE,

10:52AM 14  YOU'RE NOT SAYING THAT?  YOU'RE NOT SAYING, WELL, THERE'S

10:52AM 15  NOBODY THAT LOST MONEY?

10:52AM 16       MR. LOOBY:  NO, NO.  WE RECOGNIZE THAT THE INVESTORS

10:52AM 17  DID NOT GET THEIR MONEY BACK.

10:52AM 18       THE COURT:  AND YOU'RE SAYING -- I THINK YOU HAVE

10:53AM 19  ALSO SUGGESTED IN YOUR PLEADINGS, JUDGE, IF YOU ORDER

10:53AM 20  RESTITUTION, IT SHOULD BE LIMITED TO THE TEN THAT YOU FOUND IN

10:53AM 21  THE PREVIOUS CASE.

10:53AM 22       BUT EVEN IF YOU IDENTIFY AND ORDER RESTITUTION AS TO THOSE

10:53AM 23  TEN, OR ACTUALLY YOU SHOULDN'T ORDER RESTITUTION TO THOSE TEN

10:53AM 24  BECAUSE OF A FAILURE OF PROOF BY THE GOVERNMENT?

10:53AM 25       MR. LOOBY:  RIGHT.  SO ONCE WE PASSED THE THRESHOLD

10:53AM 1      ISSUE OF WHO IS A VICTIM.  AND WE BELIEVE AT A MINIMUM THE TEN,

10:53AM 2      OF COURSE, SHOULD BE THE LIMITED UNIVERSE.

10:53AM 3          AS WE'VE BEEN DISCUSSING TODAY, WE HAVE SPECIFIC

10:53AM 4      OBJECTIONS TO SOME OF THOSE TEN IN TERMS OF WHETHER OR NOT FOR

10:53AM 5      RESTITUTION PURPOSES IT'S APPROPRIATE TO INCLUDE THEM IN THE

10:53AM 6      ORDER.

10:53AM 7          BUT YOU'RE RIGHT, YOUR HONOR, THAT THE GOVERNMENT'S

10:53AM 8      FAILURE TO CALCULATE ACTUAL LOSS, IT PERMEATES THE ENTIRE

10:53AM 9      DISCUSSION BECAUSE THEY HAVE PROPOSED THE FULL AMOUNT OF

10:53AM 10     INVESTMENT FOR ALL INVESTORS, WHETHER IT'S THE BROADER CLASS OR

10:53AM 11     THE NARROWER CLASS, AND WE KNOW THAT THAT'S NOT RIGHT.

10:53AM 12         THE COURT:  OKAY.  I'M GOING TO ASK MR. LEACH IF HE

10:54AM 13     HAS A FINAL COMMENT AND YOU'LL GET THE LAST WORD.

10:54AM 14         MR. LEACH:  I DON'T, YOUR HONOR.

10:54AM 15         THE COURT:  OKAY.  GREAT.

10:54AM 16     ANYTHING FURTHER, MR. LOOBY?

10:54AM 17         MR. LOOBY:  NO, YOUR HONOR.

10:54AM 18         THE COURT:  GREAT.  THANK YOU VERY MUCH.  THANK YOU.

10:54AM 19     ALL RIGHT.  LET'S TURN TO THE MOTION FOR RELEASE PENDING

10:54AM 20     APPEAL.

10:54AM 21         LET ME -- WHILE THESE PARTIES COME FORWARD, I WOULD LIKE

10:54AM 22     YOU TO KNOW THAT I AM GOING TO TAKE THE MATTERS, ALL OF THESE

10:54AM 23     UNDER SUBMISSION TODAY.  I'M NOT GOING TO ENTER A DECISION FROM

10:54AM 24     THE BENCH TODAY.

10:54AM 25         AND JUST IN THE SPIRIT OF FULL TRANSPARENCY, I DON'T

10:54AM 1    EXPECT TO GET AN ORDER OUT UNTIL THE END OF THE MONTH, FRANKLY.

10:54AM 2    SO I JUST WANT TO LET YOU KNOW THAT.

10:54AM 3         MS. SAHARIA:  THAT'S HELPFUL FOR PLANNING PURPOSES,

10:54AM 4    YOUR HONOR.

10:54AM 5         THE COURT:  EXACTLY.  OKAY.  THANK YOU.

10:54AM 6         MS. SAHARIA:  THANK YOU, YOUR HONOR.

10:54AM 7    I'M HAPPY TO PROCEED HOWEVER IS HELPFUL TO THE COURT.  I

10:55AM 8    CAN WALK THROUGH THE FOUR FACTORS, BUT IF THERE ARE PARTICULAR

10:55AM 9    QUESTIONS ON THE COURT'S MIND, I'M HAPPY TO JUST TURN DIRECTLY

10:55AM 10   TO THOSE QUESTIONS.  IT'S UP TO THE COURT'S DIRECTION.

10:55AM 11        THE COURT:  SURE.  I DON'T THINK THERE'S ANY,

10:55AM 12   THERE'S ANY ISSUE ABOUT DANGER TO THE COMMUNITY OR ANY OF THOSE

10:55AM 13   THINGS, MS. SAHARIA.  I DON'T FIND THOSE TO BE AT ISSUE HERE AS

10:55AM 14   TO THAT FACTOR.

10:55AM 15   I THINK THE FACTORS THAT REALLY I'D LIKE TO HEAR MORE

10:55AM 16   ABOUT ARE FLIGHT RISK TYPE CONVERSATION.  IT SEEMS THERE'S A

10:55AM 17   LOT OF DISCUSSION IN YOUR PLEADINGS ABOUT THAT.

10:55AM 18        MS. SAHARIA:  SURE.

10:55AM 19        THE COURT:  SO SHALL WE START WITH THAT?

10:55AM 20        MS. SAHARIA:  SURE, LET'S START WITH FLIGHT RISK.

10:55AM 21   THE COURT HAS ALREADY FOUND MULTIPLE TIMES THAT MS. HOLMES

10:55AM 22   IS NOT A FLIGHT RISK.  PROBATION AND PRETRIAL SERVICES HAS

10:55AM 23   FOUND MULTIPLE TIMES THROUGHOUT THIS CASE THAT MS. HOLMES IS

10:55AM 24   NOT A FLIGHT RISK.  AND THE GOVERNMENT, UNTIL THIS OPPOSITION

10:56AM 25   BRIEF, HAS CONSISTENTLY TAKEN THE POSITION THAT MS. HOLMES IS

10:56AM 1  NOT A FLIGHT RISK.

10:56AM 2  THE COURT ALLOWED MS. HOLMES TO REMAIN ON RELEASE POST

10:56AM 3  CONVICTION.  AND SEVERAL DEVELOPMENTS SINCE THEN CONFIRM THAT

10:56AM 4  SHE'S NOT A FLIGHT RISK.

10:56AM 5  FIRST, FOLLOWING CONVICTION, HER BOND WAS UPDATED TO BE

10:56AM 6  SECURED BY HER PARENTS' ONLY HOME, AND THAT REMAINS THE CASE

10:56AM 7  TODAY.

10:56AM 8  MS. HOLMES MOVED TO ANOTHER DISTRICT IN CALIFORNIA AND

10:56AM 9  APPROPRIATELY COORDINATED THAT MOVE WITH PRETRIAL SERVICES.

10:56AM 10 SHE NOW REPORTS TO TWO PRETRIAL SERVICES OFFICERS BOTH IN THAT

10:56AM 11 DISTRICT AND IN THIS DISTRICT AND REMAINS IN FULL COMPLIANCE

10:56AM 12 WITH HER CONDITIONS OF RELEASE.

10:56AM 13 AND MS. HOLMES RECENTLY HAD A SECOND CHILD TO PROVIDE YET

10:56AM 14 ADDITIONAL MOTIVATION NOT TO FLEE.

10:56AM 15 SO I SUBMIT THAT ALL OF THOSE FACTORS SIMPLY SHOULD CEMENT

10:56AM 16 THE COURT'S PRIOR RULINGS THAT SHE IS NOT A FLIGHT RISK.

10:56AM 17 NOW, THE GOVERNMENT IN ITS OPPOSITION BRIEF HIGHLIGHTED AN

10:57AM 18 INCIDENT, OR NOT EVEN AN INCIDENT BECAUSE IT NEVER TURNED INTO

10:57AM 19 AN INCIDENT, IN JANUARY OF 2022 WITH RESPECT TO A FLIGHT TICKET

10:57AM 20 THAT MS. HOLMES'S PARTNER HAD PURCHASED TO GO TO A WEDDING IN

10:57AM 21 MEXICO OF FRIENDS.

10:57AM 22 THE GOVERNMENT HAD FULL DETAILS OF THAT INCIDENT IN

10:57AM 23 JANUARY OF 2022.  THEY DID NOT PROVIDE THE FULL DETAILS OF THAT

10:57AM 24 INCIDENT TO THE COURT IN THEIR PAPERS, BUT WE HAVE PROVIDED

10:57AM 25 THOSE FULL DETAILS INCLUDING THE FULL COMMUNICATIONS BETWEEN

10:57AM 1 THE PARTIES ABOUT THAT INCIDENT TO THE COURT.  THE GOVERNMENT

10:57AM 2 KNEW ABOUT THAT IN JANUARY OF 2022.

10:57AM 3  NOTWITHSTANDING THAT, IN FEBRUARY OF 2022, WHEN THE

10:57AM 4 PARTIES CAME TO THE COURT AND ASKED THE COURT TO APPROVE THE

10:57AM 5 UPDATED BOND, THE GOVERNMENT SAID NOT A WORD ABOUT THAT

10:57AM 6 INCIDENT, NEVER ARGUED SHE WAS A FLIGHT RISK.  THEY JUST DIDN'T

10:57AM 7 DO ANYTHING ABOUT IT FOR AN ENTIRE YEAR.

10:58AM 8  I UNDERSTAND THAT MS. HOLMES HAS DISCUSSED THAT INCIDENT

10:58AM 9 SINCE THE GOVERNMENT'S OPPOSITION BRIEF WITH PRETRIAL SERVICES,

10:58AM 10 AND AS FAR AS I KNOW PRETRIAL SERVICES HAS NOT COME TO THE

10:58AM 11 COURT AND SAID ALL OF A SUDDEN THAT MS. HOLMES IS A FLIGHT RISK

10:58AM 12 BECAUSE HER PARTNER BOUGHT A TICKET TO MEXICO HOPING THAT SHE

10:58AM 13 WOULD BE ACQUITTED.

10:58AM 14  ONCE SHE WAS NOT ACQUITTED ON ALL COUNTS, OF COURSE SHE

10:58AM 15 WAS NOT GOING TO GO TO MEXICO.

10:58AM 16  I JUST THINK RESPECTFULLY TO THE GOVERNMENT, THIS IS A

10:58AM 17 COMPLETE NON-ISSUE.  THEY HAVE KNOWN ABOUT IT FOR A YEAR.  IF

10:58AM 18 THEY REALLY THOUGHT SHE WAS A FLIGHT RISK, SURELY THEY WOULD

10:58AM 19 HAVE COME TO THE COURT, SURELY THEY WOULD HAVE GONE TO PRETRIAL

10:58AM 20 SERVICES OR PROBATION.

10:58AM 21  MS. HOLMES DID NOT ATTEMPT TO FLEE.  THE GOVERNMENT MADE

10:58AM 22 FALSE REPRESENTATIONS IN THEIR PAPERS WITH RESPECT TO THAT.  I

10:58AM 23 UNDERSTAND THAT THEY DID NOT KNOW THAT THEY WERE FALSE, BUT WE

10:58AM 24 BROUGHT THAT TO THEIR ATTENTION PROMPTLY WITH RESPECT TO

10:59AM 25 MS. HOLMES PARTNER'S TRAVEL.

10:59AM 1    SO THIS SHOULD JUST BE A NON-ISSUE, YOUR HONOR, GIVEN THE

10:59AM 2  MANY, MANY YEARS OF PERFECT COMPLIANCE, THE MANY FACTORS THAT

10:59AM 3  TIE MS. HOLMES TO THE UNITED STATES, TO HER COMMUNITY, TO HER

10:59AM 4  FAMILY.  THERE'S SIMPLY NO REASON FOR HER TO FLEE.

10:59AM 5    I'LL PAUSE THERE.

10:59AM 6      THE COURT:  THANK YOU.

10:59AM 7    MS. VOLKAR.

10:59AM 8      MS. VOLKAR:  THANK YOU, YOUR HONOR.

10:59AM 9    MS. SAHARIA I THINK MISSES ONE KEY PART IN THIS PART OF

10:59AM 10  THE DISCUSSION, AND THAT IS THE BURDEN.

10:59AM 11    SO, FIRST OF ALL, MS. SAHARIA SAYS THAT THE COURT HAS

10:59AM 12  REPEATEDLY FOUND MULTIPLE TIMES THAT MS. HOLMES IS NOT A FLIGHT

10:59AM 13  RISK.  THAT'S NOT ACTUALLY TRUE.  IF YOU GO BACK TO THE RECORD,

10:59AM 14  THE COURT DID AGREE THAT SHE COULD BE OUT ON BOND.  THE COURT

10:59AM 15  DID NOT MAKE EXPLICIT FINDINGS THAT SHE'S NOT A FLIGHT RISK.

10:59AM 16    NOW, MS. SAHARIA WOULD SAY IMPLIED IN THAT FINDING, OF

10:59AM 17  COURSE, IS THAT UNDER THE STANDARD AND THE BURDEN AT THAT TIME,

10:59AM 18  WHICH WAS ON THE GOVERNMENT UP UNTIL THE CONVICTION, THAT THE

10:59AM 19  COURT FOUND THE GOVERNMENT COULD NOT MEET ITS BURDEN TO SHOW

10:59AM 20  THAT SHE WAS A FLIGHT RISK.

11:00AM 21    MS. SAHARIA SIMILARLY SAYS THAT THE GOVERNMENT HAS

11:00AM 22  REPEATEDLY SAID THAT SHE'S NOT A FLIGHT RISK.  THAT'S ALSO

11:00AM 23  FALSE.  THE GOVERNMENT HAS NEVER SAID THAT IT DOES NOT FIND

11:00AM 24  SHE'S A FLIGHT RISK.  THE GOVERNMENT DID NOT PUT FORWARD

11:00AM 25  ANYTHING TO MEET A BURDEN THAT WAS ON IT PRIOR TO THE

11:00AM 1    CONVICTION THAT SHE WAS A FLIGHT RISK.

11:00AM 2         SO I'M TALKING ABOUT THE BURDEN HERE.  AND THE BURDEN,

11:00AM 3    ONCE MS. HOLMES WAS FOUND GUILTY BY A JURY ON THE FOUR COUNTS

11:00AM 4    RELATED TO INVESTOR FRAUD, THE BURDEN SHIFTED TO WHERE SHE HAD

11:00AM 5    TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT SHE WAS NOT A

11:00AM 6    FLIGHT RISK.

11:00AM 7         NOW, AT THE END OF THE TRIAL THE COURT DID ASK IF THE

11:00AM 8    GOVERNMENT HAD A POSITION ON WHETHER OR NOT TO INCREASE THE

11:00AM 9    BOND, AND THE GOVERNMENT SOUGHT TO REQUIRE A SECURED BOND, AND

11:00AM 10   THAT WAS SECURED BY HER PARENT'S HOUSE.  AT THAT MOMENT WHEN

11:00AM 11   THE GOVERNMENT ASKED THAT, THE GOVERNMENT DID NOT KNOW THAT

11:00AM 12   MS. HOLMES HAD A FLIGHT TO MEXICO.  THE GOVERNMENT WAS NOT

11:00AM 13   AWARE OF THAT INFORMATION.

11:00AM 14        THE GOVERNMENT, WHEN IT BECAME AWARE OF THE INFORMATION,

11:01AM 15   AND AS MUCH AS MS. HOLMES CONTINUES TO SAY THAT THE GOVERNMENT

11:01AM 16   MADE FALSE MISREPRESENTATIONS, THERE ARE NO FALSE

11:01AM 17   MISREPRESENTATIONS THAT THEY HAVE POINTED TO IN OUR BRIEF.

11:01AM 18        THE FACTS ARE THE GOVERNMENT FOUND OUT ON JANUARY 23RD,

11:01AM 19   2022, THAT MS. HOLMES HAD AN ACTIVE ONE-WAY TICKET TO MEXICO

11:01AM 20   THAT WAS SCHEDULED TO LEAVE IN A FEW DAYS, SHORTLY, A FEW WEEKS

11:01AM 21   AFTER THE CONVICTION ON FOUR FELONY COUNTS.

11:01AM 22        THE GOVERNMENT IMMEDIATELY UPON LEARNING THIS INFORMATION,

11:01AM 23   REACHED OUT TO MS. HOLMES'S COUNSEL BECAUSE AS THE GOVERNMENT

11:01AM 24   COUNSEL SAID IN ITS EMAIL, "THIS IS CONCERNING.  WE MIGHT NEED

11:01AM 25   TO RAISE THIS WITH THE COURT."

11:01AM 1 MS. HOLMES COUNSEL SAID IT WAS A TICKET PURCHASED FOR A

11:01AM 2 WEDDING IN MEXICO AND, OF COURSE, SHE'S NOT PLANNING TO GO.

11:01AM 3 WE'LL CANCEL IT.

11:01AM 4 AND THE GOVERNMENT SAID WE'LL WAIT TO SEE IF YOU CANCEL

11:01AM 5 IT.

11:01AM 6 SHE DID CANCEL IT, AND HER PARTNER DID IN FACT LEAVE ON

11:01AM 7 THAT, A ONE-WAY TICKET TO MEXICO FOR A WEDDING.  HER PARTNER,

11:02AM 8 APPARENTLY, CONTINUED TO TRAVEL AND ULTIMATELY WAS IN

11:02AM 9 SOUTH AFRICA.

11:02AM 10 THE GOVERNMENT'S POSITION RIGHT NOW -- AND NONE OF THOSE

11:02AM 11 STATEMENTS ARE FALSE AND NONE OF THOSE STATEMENTS ARE REALLY

11:02AM 12 CHALLENGED BY THE DEFENSE.  THE GOVERNMENT'S POSITION RIGHT NOW

11:02AM 13 IS MS. HOLMES COMES BEFORE THE COURT WITH A CLEAR AND

11:02AM 14 CONVINCING EVIDENCE BURDEN ON HER, AND IT'S NOT ENOUGH NOW TO

11:02AM 15 LOOK AT JUST HER PRETRIAL RECORD, AND IT'S NOT ENOUGH TO LOOK

11:02AM 16 AT THE HISTORY OF HER COMPLIANCE WITH PRETRIAL SERVICES.

11:02AM 17 THE COURT NOW HAS TO THINK THAT MS. HOLMES IS FACING A

11:02AM 18 NEARLY A 11 YEAR SENTENCE FOR HER 4 FELONY CONVICTIONS, AND SHE

11:02AM 19 DID AT ONE POINT IN TIME PURCHASE A TICKET, EVEN THOUGH SHE DID

11:02AM 20 NOT GET ON THAT.

11:02AM 21 AND THE GOVERNMENT'S POSITION IS THAT WHEN YOU LOOK AT ALL

11:02AM 22 OF THE FACTS TOGETHER AND THE FACT THAT NOW MS. HOLMES IN

11:02AM 23 APPROXIMATELY A MONTH, MAYBE SIX WEEKS IS SET TO GO TO JAIL AND

11:03AM 24 FACE A SIGNIFICANT SENTENCE.  AND I DO THINK THAT THE <u>KHAN</u> CASE

11:03AM 25 FROM JUDGE GONZALEZ ROGERS IN THIS DISTRICT IS INDICATIVE ON

11:03AM 1    THIS POINT AND ALSO YOUR HONOR'S CASE IN KAKKAR WHERE THE

11:03AM 2    PERSON WAS FACING A SIGNIFICANT PRISON SENTENCE.  IT DOES

11:03AM 3    CHANGE THE CALCULUS.

11:03AM 4        SO I THINK THE BIGGEST PIECE THAT IS MISSING FROM

11:03AM 5    MS. SAHARIA'S RECOUNT OF THE FACT IS THE BURDEN SHIFTING, AND

11:03AM 6    THE BURDEN IS NO LONGER ON THE GOVERNMENT.  THE BURDEN IS NOW

11:03AM 7    SQUARELY ON MS. HOLMES TO PROVE BY CLEAR AND CONVINCING

11:03AM 8    EVIDENCE THAT SHE IS NOT A FLIGHT RISK WHEN SHE IS FACING A

11:03AM 9    SUBSTANTIAL SENTENCE BASED ON FOUR SERIOUS FELONY COUNTS, AND

11:03AM 10    SHE HAS THE MEANS AND THE MOTIVE TO FLEE, AND SHE ALSO

11:03AM 11    DEMONSTRATED AT LEAST AT ONE POINT IN TIME THAT THERE WAS AN

11:03AM 12    OPPORTUNITY FOR THAT BACK IN JANUARY OF 2022.  THAT IS THE

11:04AM 13    GOVERNMENT'S POSITION.

11:04AM 14        THE COURT:  THANK YOU.

11:04AM 15        SO, MS. SAHARIA, I THINK THE FOCUS IS A ONE-WAY TICKET.

11:04AM 16    AND WHEN SOMEONE PURCHASES, WHEN A ROUNDTRIP TICKET IS

11:04AM 17    PURCHASED, I THINK WE CAN EXPECT THAT THAT EVINCES AN INTENT TO

11:04AM 18    RETURN, COMING BACK.

11:04AM 19        WHEN THERE'S A ONE-WAY TICKET PURCHASED, IT SUGGESTS THAT

11:04AM 20    THE RETURN PLANS HAVE NOT YET BEEN ACHIEVED OR MADE.

11:04AM 21        AND I THINK WHAT I HEAR MS. VOLKAR SAYING IS THAT THAT

11:04AM 22    SHOULD RAISE SOME CONCERN HERE, NOTWITHSTANDING THE TIME SPAN,

11:04AM 23    BUT THE FACT THAT THAT PURCHASE WAS MADE SUGGESTS SOMETHING

11:04AM 24    THAT THE COURT SHOULD CONSIDER IN A NEGATIVE WAY AS TO YOUR

11:04AM 25    CLIENT, AS TO HER INTENT AND THE FLIGHT RISK.

| | | |
|---|---|---|
| 11:04AM | 1 | MS. SAHARIA:  SURE.  SO LET ME RESPOND TO THAT |
| 11:04AM | 2 | QUESTION, AND LET ME RESPOND MORE GENERALLY TO THE GOVERNMENT'S |
| 11:05AM | 3 | COMMENTS. |
| 11:05AM | 4 | I MEAN, THE REALITY, YOUR HONOR, IS THAT THEY DIDN'T KNOW |
| 11:05AM | 5 | HOW LONG THEY WERE GOING TO STAY IN MEXICO AND THEY WENT FOR A |
| 11:05AM | 6 | WEDDING -- OR THE INTENT WAS TO GO FOR A WEDDING, AND I BELIEVE |
| 11:05AM | 7 | MS. HOLMES HAS PROVIDED THE DETAILS OF THAT WEDDING TO PRETRIAL |
| 11:05AM | 8 | SERVICES.  SHE'S PROVIDED A COPY OF THE WEDDING INVITATION. |
| 11:05AM | 9 | BUT THEY WERE -- |
| 11:05AM | 10 | THE COURT:  YOU KNOW, THAT WASN'T -- THAT'S NOT IN |
| 11:05AM | 11 | ANY OF THE PLEADINGS. |
| 11:05AM | 12 | MS. SAHARIA:  I UNDERSTAND THAT, YOUR HONOR. |
| 11:05AM | 13 | THE COURT:  RIGHT. |
| 11:05AM | 14 | MS. SAHARIA:  AND THEY WERE HOPING SHE WOULD BE |
| 11:05AM | 15 | ACQUITTED, AND, OF COURSE, HOPING THAT THEY COULD STAY AND |
| 11:05AM | 16 | RELAX. |
| 11:05AM | 17 | YOU KNOW, I -- AND MEXICO IS A PLACE WHERE YOU DON'T NEED |
| 11:05AM | 18 | TO FLY BACK.  ACTUALLY WE KNOW FROM THE RECORD THAT MR. EVANS |
| 11:05AM | 19 | RETURNED BY CAR.  IT APPEARS THAT MAY BE WHY THE GOVERNMENT |
| 11:05AM | 20 | FALSELY STATED THAT HE WENT TO MEXICO AND THEN GALAVANTED ALL |
| 11:05AM | 21 | OF THE WAY TO SOUTH AFRICA FROM MEXICO BECAUSE HE ACTUALLY |
| 11:05AM | 22 | RETURNED BY CAR THROUGH TIJUANA.  THAT'S SOMETHING THAT YOU CAN |
| 11:06AM | 23 | DO WHEN YOU'RE GOING TO MEXICO. |
| 11:06AM | 24 | THE COURT:  I THINK HE TOOK THE OTAY MESA WAY BACK |
| 11:06AM | 25 | IN WHICH IS -- I LOOKED AND I THOUGHT, WELL, THAT'S |

| | | |
|---|---|---|
| 11:06AM | 1 | INTERESTING.  THAT'S ABOUT 20, 30 MILES FROM TIJUANA PROPER, |
| 11:06AM | 2 | BUT I THINK TIJUANA BORDER CROSSING IS THE BIGGEST BORDER |
| 11:06AM | 3 | CROSSING IN THE WORLD.  TWO MILLION PEOPLE CROSS EVERY MONTH I |
| 11:06AM | 4 | THINK. |
| 11:06AM | 5 | SO THE OTAY MESA CROSSING, WHICH YOUR EXHIBIT SUGGESTS |
| 11:06AM | 6 | THAT HE CROSSED AT OTAY MESA, IT'S ABOUT 20 MILES I THINK, |
| 11:06AM | 7 | MAYBE 30 MILES EAST OF TIJUANA.  I SUPPOSE THAT HE DID THAT |
| 11:06AM | 8 | BECAUSE IT'S MORE CONVENIENT THAN GOING THROUGH TIJUANA PROPER. |
| 11:06AM | 9 | MS. SAHARIA:  I CAN'T SPEAK TO THAT, YOUR HONOR. |
| 11:06AM | 10 | BUT I DON'T KNOW HOW THE COURT COULD DRAW ANY NEGATIVE |
| 11:06AM | 11 | INFERENCE FROM WHICH BORDER CROSSING HE HAPPENED TO COME BACK |
| 11:06AM | 12 | THROUGH. |
| 11:06AM | 13 | MR. EVANS'S FAMILY DOES LIVE IN SOUTHERN CALIFORNIA. |
| 11:06AM | 14 | THAT'S WHERE HIS IMMEDIATE FAMILY RESIDES.  SO IT'S NOT |
| 11:06AM | 15 | SURPRISING THAT HE WOULD CHOOSE, INSTEAD OF FLYING BACK TO |
| 11:06AM | 16 | NORTHERN CALIFORNIA, THAT HE WOULD CROSS THE BORDER TO |
| 11:07AM | 17 | SOUTHERN CALIFORNIA, WHICH IS WHERE HIS FAMILY HAPPENS TO |
| 11:07AM | 18 | RESIDE. |
| 11:07AM | 19 | THE COURT:  SO DOES THE CHANGE OF PLANS IN TRAVEL |
| 11:07AM | 20 | MEAN ANYTHING AT ALL?  IS IT A ROUNDTRIP TICKET?  A |
| 11:07AM | 21 | ONE-WAY TICKET? |
| 11:07AM | 22 | THE TICKET TO MEXICO IS NOT IN THE EXHIBITS.  THERE WERE |
| 11:07AM | 23 | SOME EXHIBITS OF OTHER TRAVEL BY MS. HOLMES'S PARTNER. |
| 11:07AM | 24 | MS. SAHARIA:  THAT'S CORRECT, YOUR HONOR.  WE DON'T |
| 11:07AM | 25 | DISPUTE THAT THE TICKET THAT WAS PURCHASED WAS A |

11:07AM 1    ONE-WAY TICKET.

11:07AM 2         THE COURT:  I SEE.  OKAY.

11:07AM 3         MS. SAHARIA:  I DON'T THINK THE COURT SHOULD DRAW

11:07AM 4    ANY CONCLUSIONS FROM THAT FACT BECAUSE OF THE FACT THAT THEY

11:07AM 5    SIMPLY DIDN'T KNOW HOW LONG THEY WANTED TO STAY.  AND WE KNOW

11:07AM 6    FROM THE RECORD THAT MR. EVANS RETURNED BY CAR, WHICH IS

11:07AM 7    SOMETHING THAT IS EASY TO DO FROM MEXICO, AND IT MAKES SENSE

11:07AM 8    GIVEN THAT HIS FAMILY LIVES IN SOUTHERN CALIFORNIA.

11:07AM 9         SO THE COURT SHOULD NOT DRAW ANY INFERENCE FROM THE FACT

11:07AM 10   THAT IT HAPPENED TO BE A ONE-WAY TICKET.  THAT IS SOMETHING

11:07AM 11   THAT PEOPLE DO WHEN THEY DON'T KNOW HOW LONG THEY PLAN TO STAY

11:07AM 12   IN A CERTAIN LOCATION.

11:08AM 13        NOW, IF I COULD JUST ADDRESS THE MORE GENERAL POINT THAT

11:08AM 14   THE GOVERNMENT MADE ABOUT THE BURDEN SHIFTING.  THE BURDEN

11:08AM 15   SHIFTED UPON CONVICTION.  THAT WAS IN JANUARY OF 2022.

11:08AM 16        AND I THINK THE REALLY KEY POINT IS THAT MS. HOLMES BORE

11:08AM 17   THAT BURDEN IN FEBRUARY OF 2022 WHEN THE GOVERNMENT CAME TO THE

11:08AM 18   COURT WITH THE DEFENSE AND ASKED THE COURT TO APPROVE THE

11:08AM 19   UPDATED BOND SECURING HER RELEASE, WHICH WAS UPDATED TO BE

11:08AM 20   SECURED BY HER PARENTS' HOME.  THEY DID THAT AT A TIME WHEN

11:08AM 21   THEY KNEW ALL OF WHAT WE ARE TALKING ABOUT NOW.  AND IF THEY

11:08AM 22   REALLY THOUGHT THIS WAS AN ATTEMPT TO FLEE, IF THEY WERE REALLY

11:08AM 23   TROUBLED BY THE FACT THAT THIS WAS A ONE-WAY TICKET, AND IF

11:08AM 24   THEY REALLY THOUGHT THAT SOMEHOW MEANT THAT MS. HOLMES COULDN'T

11:08AM 25   SATISFY HER BURDEN AT THAT TIME, SHE BORE THE BURDEN THEN, THEY

11:08AM 1    WOULD HAVE SAID SOMETHING.  AND THEY JUST SAID NOTHING.

11:08AM 2        AND INSTEAD THEY APPARENTLY THOUGHT IT WAS FINE FOR

11:08AM 3    MS. HOLMES TO BE OUT ON RELEASE FOR THE ENTIRE PAST YEAR

11:08AM 4    WITHOUT UTTERING A PEEP ABOUT WHAT THEY KNEW IN JANUARY OF

11:09AM 5    2022.

11:09AM 6        SO THE COURT SHOULD NOT CREDIT THIS CLAIM THAT SHE

11:09AM 7    ATTEMPTED TO FLEE WHEN THEY'VE KNOWN ABOUT IT FOR A YEAR AND

11:09AM 8    APPARENTLY TOOK NO STEPS TO ASK THE COURT TO CHANGE HER

11:09AM 9    CONDITIONS OF RELEASE, TO ORDER HER TO BE DETAINED, ALL OF THE

11:09AM 10   TIME SHE BORE THE BURDEN TO PROVE BY CLEAR AND CONVINCING THAT

11:09AM 11   SHE WAS NOT A FLIGHT RISK, AND THEY JUST WERE NOT TROUBLED BY

11:09AM 12   IT UNTIL THIS MOTION.

11:09AM 13       THE COURT:  THANK YOU.

11:09AM 14       SO REFRESH MY RECOLLECTION.  AFTER THE JURY'S VERDICT, THE

11:09AM 15   GOVERNMENT ASKED FOR AN INCREASE IN SECURITY, AND THERE WAS

11:09AM 16   A -- I THINK WE TOOK A BREAK TO ALLOW FOR PRETRIAL SERVICES TO

11:09AM 17   DO AN INVESTIGATION OF WHAT WOULD BE USED FOR THAT INCREASED

11:09AM 18   SECURITY.

11:09AM 19       MS. SAHARIA:  I DON'T REMEMBER IF THE GOVERNMENT

11:09AM 20   ASKED FOR AN INCREASE, BUT THEY DID ASK FOR THE BOND TO BE

11:09AM 21   SECURED.

11:09AM 22       THE COURT:  YES.

11:09AM 23       MS. SAHARIA:  AND THEN THERE WAS A PAUSE AND THE

11:09AM 24   PARTIES COMMUNICATED ABOUT THAT.

11:10AM 25       OF COURSE, MS. HOLMES HAD TO COMMUNICATE WITH HER PARENTS

11:10AM  1    AND HER PARENTS HAD TO WORK TO GET A BOND THAT WAS SECURED BY

11:10AM  2    THE HOME.

11:10AM  3        AND WE WERE IN CONSTANT COMMUNICATION WITH THE GOVERNMENT

11:10AM  4    ABOUT THAT BOND, AND ULTIMATELY BROUGHT THAT BOND TO THE COURT

11:10AM  5    IN FEBRUARY OF 2022 AFTER THESE INCIDENTS AND ASKED THE COURT

11:10AM  6    TO APPROVE THAT BOND SECURING HER RELEASE.  AND AGAIN, THERE

11:10AM  7    WAS NO DISCUSSION OF THESE EVENTS.

11:10AM  8            THE COURT:  WHEN WAS THE COLLOQUY BETWEEN YOUR YOUNG

11:10AM  9    PARTNER, MR. WADE, AND MR. SCHENK?  WHEN WAS THAT COLLOQUY?

11:10AM  10           MS. SAHARIA:  WHEN WAS THE EMAIL COLLOQUY?

11:10AM  11           THE COURT:  YES.

11:10AM  12           MS. SAHARIA:  THAT WAS IN JANUARY OF 2022.

11:10AM  13           THE COURT:  OKAY.  THANK YOU.

11:10AM  14           MS. VOLKAR:  THANK YOU, YOUR HONOR.

11:10AM  15       SO FIRST JUST BRIEFLY ON MR. EVANS'S TRAVEL BECAUSE I DO

11:10AM  16   THINK IT'S A LITTLE BIT OF A SIDE ISSUE.  BUT MR. EVANS FLEW TO

11:10AM  17   PUERTO VALLARTA AS MS. HOLMES AND MR. EVANS WERE ORIGINALLY

11:10AM  18   SCHEDULED TO DO.  HE WENT ON THAT ONE-WAY FLIGHT, AND HE

11:11AM  19   APPARENTLY DROVE BACK THROUGH OTAY MESA.  I KNOW YOUR HONOR IS

11:11AM  20   FAMILIAR.  MEXICO IS A QUITE LARGE COUNTRY.  THAT IS QUITE A

11:11AM  21   DRIVE AND IT IS SURPRISING THAT THAT WOULD NOT BE DONE VIA A

11:11AM  22   PLANE FLIGHT BUT INSTEAD OUR GOVERNMENT RECORDS SHOW THAT THE

11:11AM  23   NEXT TIME THAT HE ENTERED THE COUNTRY BY A PLANE FLIGHT WAS

11:11AM  24   FROM SOUTH AFRICA.

11:11AM  25       I WILL SUBMIT ON THE PAPERS OTHERWISE ON THAT POINT.

| | |
|---|---|
| 11:11AM | 1 |

11:11AM  1          MOVING TO WHAT THE GOVERNMENT KNEW.  SO AS YOU HAVE SEEN

11:11AM  2     FROM THE CORRESPONDENCE, THE GOVERNMENT WAS VERY TROUBLED WHEN

11:11AM  3     IT FOUND OUT ABOUT THIS PLANE FLIGHT.  THE EMAILS SHOW THAT.

11:11AM  4          AND, YES, AN EXPLANATION WAS PROVIDED.  BUT ALSO, THE

11:11AM  5     GOVERNMENT ASKED WHETHER OR NOT WE NEEDED TO BRING THIS TO THE

11:11AM  6     ATTENTION OF THE COURT.

11:11AM  7          MS. HOLMES'S DEFENSE COUNSEL VEHEMENTLY DID NOT WANT THAT.

11:11AM  8     AND SO THE PARTIES NEGOTIATED.  AND WHEN THE PARTIES CAME IN IN

11:11AM  9     FEBRUARY OF 2022, IT WAS A -- MS. HOLMES HAD ALREADY SUBMITTED

11:11AM  10    ALL OF THE BOND MODIFICATION PAPERWORK TO PRETRIAL AND THE

11:11AM  11    COURT.  IT WAS SIMPLY THE PROCESS OF FORMALIZING WHAT HAD BEEN

11:12AM  12    DECIDED AT THE TIME OF THE JURY'S VERDICT THAT DAY BACK IN

11:12AM  13    JANUARY.

11:12AM  14         AND THE GOVERNMENT DECIDED THAT WHEN -- AND ALSO I WILL

11:12AM  15    SAY THAT THE NORMAL COURSE OF THINGS IS THAT WHEN A JURY

11:12AM  16    REACHES A GUILTY VERDICT AND THE COURT SENTENCES A DEFENDANT,

11:12AM  17    THE DEFENDANT GOES TO JAIL.  CONGRESS HAS BEEN VERY CLEAR THAT

11:12AM  18    IT IS AN UPHILL BATTLE TO OBTAIN BAIL PENDING APPEAL, AND SO

11:12AM  19    THIS IS THE NEXT BAIL DETERMINATION BEFORE YOUR HONOR.

11:12AM  20         AND ALTHOUGH WE'RE CURRENTLY ON THE FLIGHT RISK SECTION,

11:12AM  21    THIS IS ONE OF FOUR FACTORS THAT MS. HOLMES BEARS THE BURDEN

11:12AM  22    FOR.  AND THE POINT THAT THE GOVERNMENT IS MAKING IS THAT SHE

11:12AM  23    HAS AN UPHILL BATTLE HERE, AND THIS IS A FACTOR THAT THE COURT

11:12AM  24    SHOULD BE AWARE OF, THAT THE COURT SHOULD CONSIDER, AND THAT

11:12AM  25    DOES NOT WEIGH IN HER FAVOR.

| | | |
|---|---|---|
| 11:12AM | 1 | THE COURT:  SO THE -- THANK YOU.  THE BURDEN IS |
| 11:13AM | 2 | CLEAR AND CONVINCING EVIDENCE BY THE DEFENDANT THAT THERE'S NO |
| 11:13AM | 3 | LIKELIHOOD OF FLIGHT.  I THINK THAT'S WHAT WE'RE TALKING ABOUT. |
| 11:13AM | 4 | I'VE INDICATED THAT I DON'T FIND THAT SHE IS A DANGER OR |
| 11:13AM | 5 | THREAT TO THE COMMUNITY.  I DON'T SEE THAT. |
| 11:13AM | 6 | I DON'T THINK THIS APPEAL IS ALSO GENERATED FOR TACTICAL |
| 11:13AM | 7 | DELAY OR ANYTHING.  I DON'T THINK THAT'S A FACTOR HERE ALSO. |
| 11:13AM | 8 | SO, MS. SAHARIA, YOU CAN -- I DON'T KNOW IF YOU WANT TO |
| 11:13AM | 9 | TALK ABOUT THAT, BUT YOU DON'T HAVE TO. |
| 11:13AM | 10 | MS. SAHARIA:  THANK YOU. |
| 11:13AM | 11 | THE COURT:  BUT I SUPPOSE -- ARE THERE ANY |
| 11:13AM | 12 | SUBSTANTIAL QUESTIONS OF LAW THAT NEED TO BE CONSIDERED HERE? |
| 11:13AM | 13 | MS. SAHARIA:  WELL, WE BELIEVE SO, YOUR HONOR.  IF I |
| 11:13AM | 14 | CAN JUST HAVE A FINAL WORD ON FLIGHT? |
| 11:13AM | 15 | THE COURT:  YES. |
| 11:13AM | 16 | MS. SAHARIA:  I WOULD JUST LIKE TO READ FOR THE |
| 11:13AM | 17 | COURT INTO THE RECORD WHICH IS AT ECF 1722-2.  THIS IS |
| 11:13AM | 18 | MR. SCHENK'S FINAL RESPONSE TO MR. WADE ABOUT THIS POINT, WHICH |
| 11:13AM | 19 | IS JANUARY 24TH, 2022. |
| 11:13AM | 20 | "THANK YOU AGAIN FOR THE BACKGROUND INFORMATION |
| 11:13AM | 21 | CONFIRMATION AND FOR ADDRESSING THIS SITUATION QUICKLY.  I DO |
| 11:14AM | 22 | NOT BELIEVE THAT THERE IS NEED FOR US TO DISCUSS THIS FURTHER, |
| 11:14AM | 23 | AND I CERTAINLY WILL BE IN TOUCH IF THAT CHANGES, AND PLEASE |
| 11:14AM | 24 | FEEL FREE TO REACH OUT IF YOU DISAGREE.  REGARDS, JEFF." |
| 11:14AM | 25 | THE NEXT BAIL DECISION BY THE COURT IS NOT THIS ONE.  IT |

11:14AM 1    WAS THE ONE IN FEBRUARY OF 2022 WHEN IT APPROVED THE UPDATED

11:14AM 2    BOND.  AND THE NOTION THAT THE GOVERNMENT THOUGHT THIS WAS AN

11:14AM 3    ATTEMPT AT FLIGHT AND DIDN'T SAY ANYTHING TO THE COURT THEN, I

11:14AM 4    THINK JUST DEFIES BELIEF.

11:14AM 5         SO I'LL JUST CONCLUDE ON FLIGHT ON THAT POINT AND TURN

11:14AM 6    TO SUBSTANTIAL --

11:14AM 7              THE COURT:  LET ME ASK MS. VOLKAR IF SHE HAS ANY

11:14AM 8    COMMENT?

11:14AM 9              MS. VOLKAR:  NOTHING FURTHER, YOUR HONOR.

11:14AM 10             THE COURT:  OKAY.  MS. VOLKAR, SHOULD THE COURT ALSO

11:14AM 11   IN THE FLIGHT RISK ANALYSIS, MS. SAHARIA HAS INDICATED IN HER

11:14AM 12   PLEADINGS ALSO THAT MS. HOLMES HAS TWO YOUNG CHILDREN AND THAT

11:14AM 13   THE COURT SHOULD CONSIDER THAT ALSO AS EVIDENCE OF REASONS NOT

11:14AM 14   TO FLEE.

11:14AM 15        ANY COMMENT ON THAT?

11:15AM 16             MS. VOLKAR:  NOT REALLY, YOUR HONOR.  I THINK THE

11:15AM 17   ONLY I GUESS FACT THAT I'LL STATE IS THAT SHE DID, OF COURSE,

11:15AM 18   HAVE ONE YOUNG INFANT AT THE TIME THAT SHE PURCHASED THIS

11:15AM 19   ONE-WAY TICKET TO MEXICO.  SO IT HASN'T NECESSARILY CHANGED.

11:15AM 20   AND SHE IS FACING SIGNIFICANT PRISON SENTENCE.  SHE CLEARLY HAS

11:15AM 21   FAMILY SUPPORT HERE IN THE UNITED STATES.

11:15AM 22        SO I THINK I'LL JUST SUBMIT ON THAT POINT.

11:15AM 23             THE COURT:  OKAY.  THANK YOU.  SORRY.

11:15AM 24             MS. SAHARIA:  THANK YOU.

11:15AM 25        SO, YOUR HONOR, TURNING TO THE SUBSTANTIAL QUESTION, WE

11:15AM 1    SUBMIT THAT THERE ARE MULTIPLE SUBSTANTIAL QUESTIONS, AND I

11:15AM 2    DON'T WANT TO TAKE THE COURT'S TIME TO WALK THROUGH ALL OF THE

11:15AM 3    ONES THAT WE'VE OUTLINED.

11:15AM 4         THE COURT:  YOU SAID IN YOUR PLEADINGS IT'S TEAMING

11:15AM 5    WITH ISSUES.

11:15AM 6         MS. SAHARIA:  WE THINK THE RECORD IS TEAMING WITH

11:15AM 7    ISSUES, YOUR HONOR.

11:15AM 8         AND I DO THINK THAT WHEN THE NINTH CIRCUIT LOOKS AT THE

11:15AM 9    HISTORY OF THIS CASE, SOME THINGS ARE JUST GOING TO STRIKE THE

11:15AM 10   COURT AS UNUSUAL.  AND THESE ISSUES WERE HARD FOUGHT ISSUES,

11:16AM 11   LITIGATED BEFORE TRIAL, DURING TRIAL, THEY'RE COMPLEX ISSUES.

11:16AM 12        AND AGAIN, I DON'T WANT TO WALK THROUGH ALL OF THEM, BUT

11:16AM 13   LET ME JUST HIGHLIGHT A FEW THINGS THAT I THINK WILL STRIKE THE

11:16AM 14   NINTH CIRCUIT AS -- YOU KNOW, THAT WILL CATCH THE COURT'S

11:16AM 15   ATTENTION.

11:16AM 16        THE FIRST IS THE TESTIMONY OF DR. DAS, AND THIS IS

11:16AM 17   SOMETHING THAT IS DIFFERENT IN THIS CASE.  DR. DAS DID NOT

11:16AM 18   TESTIFY IN MR. BALWANI'S CASE.

11:16AM 19        I THINK IT STRIKES THE COURT AS UNUSUAL THAT FIVE WEEKS

11:16AM 20   BEFORE TRIAL THE GOVERNMENT SERVES A DISCLOSURE ON THE DEFENSE

11:16AM 21   SAYING WE ARE GOING TO CALL DR. DAS AND TO THE EXTENT HIS

11:16AM 22   TESTIMONY STRIKES OR CROSSES THE LINE INTO EXPERT TESTIMONY,

11:16AM 23   THE BASES FOR HIS OPINIONS ARE THE SAME BASES AS THE OPINION OF

11:16AM 24   OUR RETAINED EXPERT, DR. MASTER.

11:16AM 25        THAT'S UNUSUAL.  THE GOVERNMENT DOESN'T USUALLY DO THAT.

11:16AM 1      AND THAT WILL SIGNAL TO THE COURT THAT THIS IS WORTHY OF

11:17AM 2   ATTENTION BECAUSE THE GOVERNMENT ITSELF DREW A LINE FROM HIS

11:17AM 3   TESTIMONY TO THE OPINIONS OF ITS RETAINED EXPERT, WHO WE ALL

11:17AM 4   AGREE WAS SUBJECT TO RULE 702, AND DR. DAS HAD TESTIFIED TO A

11:17AM 5   COMPREHENSIVE DATA ANALYSIS THAT HE DID THAT IS VERY MUCH LIKE

11:17AM 6   WHAT THE GOVERNMENT TRIED TO GET ITS RETAINED EXPERT,

11:17AM 7   DR. MASTER, TO DO, BUT THEN DIDN'T CALL HIM AFTER THE COURT

11:17AM 8   ORDERED A DAUBERT HEARING.  SO I THINK THAT'S GOING TO CATCH

11:17AM 9   THE COURT'S ATTENTION.

11:17AM 10      SO, TOO, IS CMS.  THE GOVERNMENT ASSURED THE COURT

11:17AM 11   MULTIPLE TIMES THAT IT WAS GOING TO CALL A CMS WITNESS TO

11:17AM 12   TESTIFY ABOUT THE CMS REPORT THAT SHOULD ALLEVIATE THE COURT'S

11:17AM 13   403 OBJECTIONS OR CONCERNS AND BECAUSE WE WOULD BE ABLE TO

11:17AM 14   CROSS-EXAMINE THAT WITNESS.  AND THEN THEY NEVER CALLED THAT

11:17AM 15   WITNESS.

11:17AM 16      INSTEAD, THEY PUT IT IN THROUGH DR. DAS.  AND TO KIND OF

11:17AM 17   MAKE THAT PIVOT, THEY PIVOTED TO A NOTICE THEORY, BUT WE'VE --

11:18AM 18   THE GOVERNMENT HAS NOT POINTED TO ANY REPRESENTATION TO ANYONE,

11:18AM 19   WHETHER AN INVESTOR OR A PATIENT THAT POST DATED THAT CMS

11:18AM 20   REPORT, NOR COULD IT.  THERE ARE NONE.

11:18AM 21      AND SO WE THINK THERE ARE SOME FUNDAMENTAL PROBLEMS WITH

11:18AM 22   THIS NOTICE THEORY THAT THEY PIVOTED TO MID-TRIAL WHEN THEY

11:18AM 23   DECIDED NOT TO CALL THE CMS WITNESS, AND I THINK THAT, TOO, IS

11:18AM 24   GOING TO CATCH THE COURT'S ATTENTION.

11:18AM 25      I'LL JUST QUICKLY TOUCH ON TWO MORE ISSUES.  ANOTHER ONE

11:18AM 1  THAT IS DISTINCT FROM OUR CASE COMPARED TO THE BALWANI CASE OF

11:18AM 2  COURSE IS THE EXCLUSION OF MR. BALWANI'S DEPOSITION TESTIMONY

11:18AM 3  RELATED TO HIS OWNERSHIP OF THE FINANCIALS.

11:18AM 4          THE COURT:  IS THIS THE S.E.C.?

11:18AM 5          MS. SAHARIA:  HIS S.E.C. TESTIMONY, EXACTLY,

11:18AM 6  YOUR HONOR.

11:18AM 7      AND I DO THINK THERE'S A SUBSTANTIAL QUESTION ON THAT ONE

11:18AM 8  AS TO WHETHER HIS STATEMENTS WERE SUFFICIENTLY INCULPATORY.

11:18AM 9      HE WAS ASKED THOSE QUESTIONS AT A TIME WHEN BOTH THE

11:19AM 10  S.E.C. AND THE GRAND JURY WERE INVESTIGATING THERANOS AND HAD

11:19AM 11  SUBPOENAED THERANOS FOR RELEVANT DOCUMENTS AND THE FACT THAT

11:19AM 12  THE S.E.C. IN THE COURSE OF AN INVESTIGATION WAS ASKING

11:19AM 13  MR. BALWANI ABOUT THOSE FINANCIAL PROJECTIONS WOULD AT LEAST

11:19AM 14  PUT HIM ON NOTICE OF POTENTIAL CIVIL LIABILITY IF NOT CRIMINAL

11:19AM 15  LIABILITY WITH RESPECT TO THOSE PROJECTIONS AND THE MODELS, AND

11:19AM 16  SO WE THINK THAT THERE'S AT LEAST A FAIRLY DEBATABLE QUESTION

11:19AM 17  AS TO WHETHER THE COURT ERRED IN EXCLUDING THAT TESTIMONY AND

11:19AM 18  THAT LIKELY COULD HAVE AFFECTED THE JURY.

11:19AM 19      THE FINAL ONE I'LL JUST NOTE IS OUR ARGUMENT WITH RESPECT

11:19AM 20  TO THE DEPARTMENT OF DEFENSE.  I JUST WANTED TO COMMENT ON THIS

11:19AM 21  ONE IN LIGHT OF THE COURT'S RULING WITH RESPECT TO MR. BALWANI

11:19AM 22  ON THIS POINT BECAUSE I THINK AS TO THE DEPARTMENT OF DEFENSE,

11:19AM 23  THE ISSUE IS A LITTLE BIT DIFFERENT THAN THE WAY THE COURT

11:19AM 24  UNDERSTOOD IT IN YOUR RULING WITH RESPECT TO MR. BALWANI.

11:19AM 25      OUR ARGUMENT IS NOT ABOUT THE EFFECT OF THE EVIDENCE ABOUT

11:20AM 1    MISREPRESENTATIONS TO THE DEPARTMENT OF DEFENSE AS IT RELATES

11:20AM 2    TO THE ALLEGATIONS ABOUT REPRESENTATIONS ABOUT THE DEPARTMENT

11:20AM 3    OF DEFENSE.

11:20AM 4         THE ISSUE IS A BROADER ONE.  IT'S THAT THE EVIDENCE THAT

11:20AM 5    MS. HOLMES PURPORTEDLY MADE MISREPRESENTATIONS TO THE

11:20AM 6    DEPARTMENT OF DEFENSE WAS IMPROPER CHARACTER EVIDENCE THAT

11:20AM 7    PORTRAYED HER AS A LIAR.  THAT THEN INFECTED ALL OF THE ALLEGED

11:20AM 8    MISREPRESENTATIONS BECAUSE IT WAS EVIDENCE FROM WHICH THE JURY

11:20AM 9    COULD HAVE CONCLUDED IMPROPERLY THAT IF SHE HAD MADE A

11:20AM 10   MISREPRESENTATION TO THE DEPARTMENT OF DEFENSE, SHE MIGHT HAVE

11:20AM 11   MADE MISREPRESENTATIONS MORE BROADLY TO INVESTORS.

11:20AM 12        SO I'LL PAUSE THERE.  IF THE COURT HAS QUESTIONS ON THOSE,

11:20AM 13   I CAN TURN TO THE FINAL FACTOR, LIKELY TO RESULT IN A NEW

11:20AM 14   TRIAL, OR YOU CAN HEAR FROM MS. VOLKAR FIRST.  UP TO THE COURT.

11:20AM 15        THE COURT:  WELL, LET'S HEAR FROM MS. VOLKAR.

11:21AM 16   I DON'T HAVE ANY QUESTIONS.

11:21AM 17        MS. SAHARIA:  GREAT.

11:21AM 18        THE COURT:  THANK YOU FOR RAISING IT.

11:21AM 19        MS. VOLKAR:  THANK YOU, YOUR HONOR.

11:21AM 20   MS. SAHARIA GUESSED WHERE I WAS GOING TO GO.  I HAVE

11:21AM 21   PLENTY OF RESPONSES ON THE SUBSTANTIAL QUESTION POINT, BUT NONE

11:21AM 22   OF THE ISSUES THAT MS. SAHARIA REFERENCED NOR ANY THAT ARE

11:21AM 23   RAISED IN THE PLEADINGS WOULD BE LIKELY TO RESULT IN REVERSAL

11:21AM 24   ON THE COUNTS OF CONVICTION BECAUSE NOT A SINGLE ONE OF THOSE

11:21AM 25   ISSUES THAT THEY RAISED WOULD DISTURB ANY OF THE PROOF AT TRIAL

11:21AM  1     THAT MS. HOLMES ALTERED THE PHARMACEUTICAL REPORTS AND THEN

11:21AM  2     PROVIDED THEM TO INVESTORS.

11:21AM  3          AND WE'VE HEARD FROM LISA PETERSON AND DAN MOSLEY THAT

11:21AM  4     THOSE REPORTS MATTERED TO THEM, THAT THEY WERE MATERIAL.  AND

11:21AM  5     THAT WAS JUST ONE OTHER CATEGORY OF FALSE MISREPRESENTATIONS

11:21AM  6     NOT IMPACTED BY A SINGLE ONE OF THE ISSUES RAISED IN

11:21AM  7     MS. HOLMES'S BRIEF.

11:21AM  8          AND ANOTHER BIG CATEGORY OF MISREPRESENTATIONS THAT IS NOT

11:21AM  9     AT ALL AFFECTED IS THE FACT THAT MS. HOLMES HID THAT THERANOS

11:21AM 10     WAS USING THIRD PARTY COMMERCIAL DEVICES FROM INVESTORS AND, IN

11:22AM 11     FACT, THE FIRST TWO ISSUES THAT MS. SAHARIA RAISED AND THE

11:22AM 12     FIRST THREE ISSUES IN MS. HOLMES'S BRIEF, THE FACT THAT

11:22AM 13     DR. DAS'S TESTIMONY, THE CMS INVESTIGATION AND REPORT, AND THE

11:22AM 14     VOIDING OF THE TESTS BY THERANOS, THOSE WERE ALL EVENTS THAT

11:22AM 15     OCCURRED IN LATE 2015 AND EARLY 2016.  THAT'S ACTUALLY PART OF

11:22AM 16     THE DEFENSE'S POINT, THAT IT WAS LATE IN THE GAME.  IT WAS

11:22AM 17     DURING THE PATIENT COUNT SCHEME TO DEFRAUD, BUT IT WAS RIGHT AT

11:22AM 18     THE TAIL END AND OUTSIDE OF THE INVESTOR SCHEME TO DEFRAUD.

11:22AM 19          BUT ONE OF THE THINGS THAT IS KEY IN THAT TIMELINE IS IN

11:22AM 20     OCTOBER OF 2015 PREDATING ALL OF THESE ITEMS, THERE WAS A VERY

11:22AM 21     NEGATIVE "WALL STREET JOURNAL" ARTICLE AS IT WAS DESCRIBED AS

11:22AM 22     TRIAL THAT CAME OUT THAT INVESTORS TESTIFIED WAS THE FIRST TIME

11:22AM 23     THEY HAD ANY IDEA THAT THERANOS MIGHT HAVE BEEN USING

11:22AM 24     COMMERCIAL DEVICES AND NOT ITS OWN PROPRIETARY ANALYZER TO RUN

11:23AM 25     BLOOD TESTS, AND THAT WAS SHOCKING TO THE INVESTORS.

11:23AM 1    MS. PETERSON TESTIFIED ABOUT IT. I BELIEVE MR. GROSSMAN

11:23AM 2    TESTIFIED ABOUT IT. AND THAT IS SOMETHING WHERE -- SO LET'S

11:23AM 3    SAY THAT THE NINTH CIRCUIT WERE TO RULE FAVORABLY FOR

11:23AM 4    MS. HOLMES, AND I DON'T THINK THEY WILL FOR REASONS I'LL GET TO

11:23AM 5    IN A MOMENT, BUT LET'S SAY THE NINTH CIRCUIT WERE, HOW CAN

11:23AM 6    YOU -- HOW CAN MS. HOLMES ARGUE THAT THAT'S NOT HARMLESS WHEN

11:23AM 7    THERE'S OTHER ENTIRE CATEGORIES OF MISREPRESENTATIONS, AND I'VE

11:23AM 8    ONLY SCRATCHED THE SURFACE OF THEM, THAT INVESTORS HEARD THAT

11:23AM 9    NONE OF THESE ISSUES AFFECT ONE IOTA?

11:23AM 10   SO I THINK THAT THERE'S NO LIKELIHOOD OF REVERSAL, AND I

11:23AM 11   THINK THAT CUTS ACROSS ALL OF MS. HOLMES'S ARGUMENTS BECAUSE I

11:23AM 12   THINK THAT SHE CAN'T OVERCOME THAT LAST REQUIREMENT.

11:23AM 13   BUT GOING TO THE SUBSTANCE OF THE ISSUES THAT MS. SAHARIA

11:23AM 14   RAISED. DR. DAS, WE'VE OF COURSE DISCUSSED THIS MANY TIMES.

11:23AM 15   THE GOVERNMENT NEVER THOUGHT OF HIM AS AN EXPERT. THE

11:24AM 16   DISCLOSURE THAT MS. SAHARIA REFERENCES WAS AFTER THE DEFENSE

11:24AM 17   ESSENTIALLY TOOK -- YOU'VE SEEN THE EMAIL EXCHANGES AND WE'VE

11:24AM 18   BRIEFED IT, BUT THE DEFENSE ESSENTIALLY CLAIMED THAT HE WAS AN

11:24AM 19   EXPERT AND THEY WERE GOING TO MOVE UNDER RULE 16 TO EXCLUDE

11:24AM 20   HIM. SO THE GOVERNMENT RESPONDED TO THAT BY SAYING IN THE

11:24AM 21   EVENT THAT YOU THINK HE'S AN EXPERT, WE'LL DISCLOSE HIM AS AN

11:24AM 22   EXPERT, WE CONTINUE TO THINK HE'S A PERCIPIENT WITNESS.

11:24AM 23   AND THEN WE CAME BEFORE YOUR HONOR, MS. SAHARIA AND I, IN

11:24AM 24   AUGUST OF 2021, TO ARGUE ABOUT THAT EVEN BEFORE THE TRIAL

11:24AM 25   BEGAN. AND YOUR HONOR GAVE VERY CLEAR GUIDELINES OF WHAT WOULD

11:24AM 1    STRAY INTO RULE 702 TERRITORY, WHAT WOULD CROSS THAT LINE INTO

11:24AM 2    EXPERT TESTIMONY, THE SIGMA METRIC.  I BELIEVE IT'S DANGEROUS

11:24AM 3    TO DO IT OFF MEMORY, BUT I THINK IT WAS ECF 810 IS YOUR HONOR'S

11:24AM 4    ORDER ON THAT POINT.

11:24AM 5        AND THE GOVERNMENT TOOK THAT TO HEART, IF WE STRAY INTO

11:24AM 6    THOSE AREAS, THAT WILL BECOME EXPERT TESTIMONY AND WE RISK IT

11:24AM 7    BEING EXCLUDED BY YOUR HONOR.

11:24AM 8        WHAT DR. DAS TESTIFIED TO WAS WHAT HE WAS HIRED TO DO BY

11:25AM 9    MS. HOLMES, WHICH WAS TO COME IN AND RESPOND TO THE NEGATIVE

11:25AM 10   CMS REPORT, THAT WAS HIS JOB DUTIES.  HE BOTH TOOK THE CMS

11:25AM 11   REPORT AND THEN HE DID HIS OWN ANALYSIS, AND THEN HE REPORTED

11:25AM 12   TO MS. HOLMES'S FINDINGS, AND THAT'S WHAT HE TESTIFIED TO.

11:25AM 13       THE CMS REPORT, WE ALSO HAD MUCH LITIGATION ABOUT THAT.

11:25AM 14   YOUR HONOR KNOWS IT WAS A VERY LONG TRIAL.  AND THERE WERE, I

11:25AM 15   THINK, DOZENS OF WITNESSES THAT THE GOVERNMENT NOTICED THAT IT

11:25AM 16   EXPECTED TO CALL AND DIDN'T HAVE TIME OR DIDN'T ULTIMATELY CALL

11:25AM 17   -- OR I'M SORRY, NOT DIDN'T HAVE TIME BUT CHOSE NOT TO CALL.

11:25AM 18       SO THE CMS REPORT, WHEN IT DID COME IN, IT CAME IN FOR A

11:25AM 19   VERY LIMITED PURPOSE, WHICH WAS NOTICE TO MS. HOLMES.  AND OF

11:25AM 20   THE 120 PAGE REPORT, I BELIEVE IT'S SIX OR SEVEN PAGES THAT

11:25AM 21   WERE ULTIMATELY ADMITTED TO THE JURY AND FOR A VERY LIMITED

11:25AM 22   PURPOSE.

11:25AM 23       THE S.E.C., MR. BALWANI'S TESTIMONY, FIRST OF ALL,

11:25AM 24   YOUR HONOR WILL RECALL THE QUOTATIONS THAT MS. HOLMES SOUGHT TO

11:26AM 25   ADMIT WERE THINGS SUCH AS IN CONJUNCTION WITH SAFEWAY AND

11:26AM 1    WALGREENS I MADE A MODEL.  BDT ALSO HAD SOME INPUT.  WHAT ABOUT

11:26AM 2    PROJECTIONS?  OH, I THINK THAT MIGHT HAVE BEEN THIS EMAIL.

11:26AM 3         WHAT MR. BALWANI SAID IN THAT S.E.C. TESTIMONY, IF YOU GO

11:26AM 4    BACK TO THAT TRANSCRIPT, WAS NOT I DID IT, IT WAS ME, THE

11:26AM 5    FINANCIAL PROJECTIONS WERE ALL ON ME AND MS. HOLMES HAD NOTHING

11:26AM 6    TO DO WITH IT.

11:26AM 7         IF HE DID SAY THAT, WE MIGHT BE HAVING A VERY DIFFERENT

11:26AM 8    CONVERSATION AND YOUR HONOR MIGHT HAVE REACHED A DIFFERENT

11:26AM 9    RULING.  BUT THAT'S NOT WHAT HE SAID IN THE S.E.C. TESTIMONY.

11:26AM 10   HE SHARED BLAME, HE DEFLECTED, AND IN ANSWER TO MULTIPLE

11:26AM 11   QUESTIONS HE SAID THAT MS. HOLMES HAD ACCESS OR -- AND THAT HE

11:26AM 12   THINKS SHE MIGHT HAVE EVEN EDITED IT AT ONE POINT IN TIME.

11:26AM 13        AND THEN IN THE TEXT MESSAGES, WHEN YOUR HONOR LOOKED TO

11:26AM 14   WHAT WOULD CORROBORATE HIS TESTIMONY, IN THE TEXT MESSAGES

11:26AM 15   THEY'RE TALKING ABOUT WE NEED TO WORK ON THE REV PIECE, WE NEED

11:26AM 16   TO TALK ABOUT -- ARE YOU COMFORTABLE WITH THE FINANCIAL

11:26AM 17   PROJECTIONS.  THERE WAS OTHER EVIDENCE IN THE TRIAL, AND THE

11:27AM 18   TEXT MESSAGES IS JUST ONE EXAMPLE OF THE TWO OF THEM WORKING

11:27AM 19   TOGETHER ON THE FINANCIAL PIECES.

11:27AM 20        AND AGAIN, I GO BACK TO EVEN IF THE NINTH CIRCUIT WERE TO

11:27AM 21   RULE FAVORABLY ON THE SUBSTANTIAL QUESTION, IT RELATES TO

11:27AM 22   FINANCIAL PROJECTIONS, ONE CATEGORY OF FALSE MISREPRESENTATIONS

11:27AM 23   OF APPROXIMATELY AT LEAST SEVEN DIFFERENT LARGE CATEGORIES IN

11:27AM 24   THE THIRD SUPERSEDING INDICTMENT.

11:27AM 25        THE DOD.  FURTHER REASONS STATED IN OUR BRIEF AND AT

| | | |
|---|---|---|
| 11:27AM | 1 | TRIAL, THIS WAS INEXTRICABLY INTERTWINED.  THE DOCUMENTS THAT |
| 11:27AM | 2 | WERE ADMITTED, AND WE ARE TALKING ABOUT ADMISSION OF EVIDENCE |
| 11:27AM | 3 | WHICH, OF COURSE, IS AN ABUSE OF DISCRETION STANDARD ON APPEAL, |
| 11:27AM | 4 | THE EVIDENCE THAT WAS ADMITTED WAS TO SHOW WHY THE DEPARTMENT |
| 11:27AM | 5 | OF DEFENSE WAS INTERESTED AT ALL IN THIS TECHNOLOGY, WHY THEY |
| 11:27AM | 6 | WERE ABLE TO GET SOMEONE LIKE GENERAL JAMES MATTIS ON THE BOARD |
| 11:27AM | 7 | WHO BELIEVED THERE WAS ONE DEVICE WHO COULD RUN OVER 1,000 |
| 11:28AM | 8 | TESTS. |
| 11:28AM | 9 | AND SO, AGAIN, I DON'T WANT TO BELABOR THE POINT, BUT THEY |
| 11:28AM | 10 | WERE -- THE DOCUMENTS THAT WERE ADMITTED WERE INEXTRICABLY |
| 11:28AM | 11 | INTERTWINED WITH THE SCHEME TO DEFRAUD, AND THAT IS WHY |
| 11:28AM | 12 | YOUR HONOR ADMITTED THEM. |
| 11:28AM | 13 | BUT I'LL JUST CIRCLE BACK AND END ON WHERE MS. SAHARIA |
| 11:28AM | 14 | WILL PICK UP, WHICH IS THAT THEY JUST CAN'T OVERCOME THE LAST |
| 11:28AM | 15 | REQUIREMENT THAT IT'S LIKELY TO LEAD TO REVERSAL ON ALL COUNTS |
| 11:28AM | 16 | OF CONVICTION. |
| 11:28AM | 17 | THE COURT:  THANK YOU. |
| 11:28AM | 18 | MS. SAHARIA. |
| 11:28AM | 19 | MS. SAHARIA:  LET ME PICK UP THERE.  I THINK THERE |
| 11:28AM | 20 | WAS ONE POINT THAT MR. LEACH MADE IN HIS RECITATION ARGUMENT |
| 11:28AM | 21 | THAT I ACTUALLY AGREED WITH, WHICH WAS THAT HE SAID THAT WE |
| 11:28AM | 22 | CAN'T KNOW WHY THE JURY HUNG ON THE C1 INVESTORS.  I AGREE WITH |
| 11:28AM | 23 | THAT. |
| 11:28AM | 24 | WE ALSO DON'T KNOW WHY THE JURY CONVICTED AS TO THE C2 |
| 11:28AM | 25 | INVESTORS. |

11:28AM 1     THIS WAS A GENERAL VERDICT. THIS WAS A HARD FOUGHT CASE.

11:28AM 2 WE HAD DEFENSES, 12 OF THE GOVERNMENT'S ALLEGED

11:28AM 3 MISREPRESENTATIONS, AND THIS WAS A CLOSE CASE. THE JURY FOUND

11:29AM 4 THE GOVERNMENT PREVAILED ON ONLY 4 OF 12 COUNTS.

11:29AM 5     THE ALLEGATIONS THAT MS. HOLMES MADE MISREPRESENTATIONS

11:29AM 6 ABOUT THE TECHNOLOGY WERE CENTRAL TO THIS CASE. THE GOVERNMENT

11:29AM 7 TOLD THE JURY IN CLOSING THAT THEY WERE CENTRAL TO THE CASE.

11:29AM 8 WE QUOTE THOSE STATEMENTS IN OUR BRIEF.

11:29AM 9     MS. HOLMES'S ROLE IN THE COMPANY FOCUSSED ON THE

11:29AM 10 TECHNOLOGY THAT THE GOVERNMENT TOLD THE JURY AND IN CLOSING

11:29AM 11 THAT MS. HOLMES HAD CERTAIN ROLES AND MR. BALWANI HAD CERTAIN

11:29AM 12 ROLES, AND MS. HOLMES'S ROLE WAS THE TECHNOLOGY.

11:29AM 13     AND SO WE THINK THAT THAT MAKES THAT PARTICULAR ALLEGATION

11:29AM 14 CENTRAL. THE GOVERNMENT LINKED THAT ALLEGATION, AS WE POINT

11:29AM 15 OUT IN OUR REPLY BRIEF, TO ALL OF THE OTHER ALLEGATIONS IN ITS

11:29AM 16 INDICTMENT, AGAIN, IN CLOSING AND OPENING AND THROUGHOUT ITS

11:29AM 17 EXAMINATION OF THE WITNESSES, THAT WAS THE CORE OF THE CASE.

11:29AM 18     WE FOUGHT TOOTH AND NAIL ON EVERYTHING IN THE CASE. WE

11:29AM 19 HAD DEFENSES TO THE PHARMACEUTICAL REPORTS. WE PRESENTED

11:29AM 20 PLENTY OF EVIDENCE THAT MS. HOLMES WAS NOT HIDING THE FACT THAT

11:30AM 21 THE LAB WAS CONDUCTING VENOUS TESTING ON THIRD PARTY DEVICES.

11:30AM 22     SO I SUBMIT FOR ALL OF THOSE REASONS THAT THE

11:30AM 23 NINTH CIRCUIT IS NOT GOING TO BE ABLE TO CONCLUDE THAT THESE

11:30AM 24 ERRORS WERE HARMLESS BECAUSE WE CAN'T KNOW WHAT THE JURY RESTED

11:30AM 25 ON AND THIS PARTICULAR ALLEGATION ABOUT THE TECHNOLOGY WAS

11:30AM 1    REALLY THE CORE OF THE GOVERNMENT'S CASE AGAINST MS. HOLMES.

11:30AM 2            THE COURT:  THANK YOU.

11:30AM 3            MS. VOLKAR:  NOTHING FURTHER, YOUR HONOR, UNLESS YOU

11:30AM 4    HAVE QUESTIONS.

11:30AM 5            THE COURT:  ANYTHING FURTHER, MS. SAHARIA?

11:30AM 6            MS. SAHARIA:  NO, YOUR HONOR.

11:30AM 7            THE COURT:  I DO WANT TO TAKE UP ONE THING THAT I

11:30AM 8    APOLOGIZE I DIDN'T DO EARLIER, WHICH WAS DOCUMENT 1722, WHICH

11:30AM 9    WAS YOUR MOTION TO STRIKE.

11:30AM 10           MS. SAHARIA:  YES, YOUR HONOR.

11:30AM 11           THE COURT:  YES.  AND LET ME JUST TELL YOU, I'VE

11:30AM 12   READ THE MOTION AND THE RESPONSIVE PLEADINGS TO THAT, AND I

11:30AM 13   THINK YOUR OPPOSITION WAS 1723, I THINK.

11:30AM 14           MS. VOLKAR:  THAT'S CORRECT, YOUR HONOR.

11:30AM 15           MS. SAHARIA:  SORRY.

11:30AM 16           THE COURT:  I DON'T SEE THE NEED TO STRIKE -- LET ME

11:30AM 17   TELL YOU, I UNDERSTAND THE CONCERN ABOUT SOME OF THE

11:31AM 18   INFORMATION THAT, MS. SAHARIA, YOUR TEAM SUGGESTED THAT THE

11:31AM 19   GOVERNMENT SHOULD NOT HAVE PUT IN RELATED TO FINANCES AND THOSE

11:31AM 20   TYPES OF THINGS.

11:31AM 21           MS. SAHARIA:  EXACTLY, YOUR HONOR.

11:31AM 22           THE COURT:  AND LET ME JUST TELL YOU, I'M NOT

11:31AM 23   CONSIDERING THAT IN ANY WAY FOR ANY OF THE DECISIONS THAT THE

11:31AM 24   COURT IS MAKING TODAY.  I THINK THAT RELATES PRIMARILY TO THE

11:31AM 25   MOTION TO STAY PENDING APPEAL, AND THAT'S NOT PART OF MY

| | | |
|---|---|---|
| 11:31AM | 1 | CALCULUS. |
| 11:31AM | 2 | MS. SAHARIA:  YES, YOUR HONOR. |
| 11:31AM | 3 | THE COURT:  I DON'T FIND THAT HELPFUL IN ANY WAY, |
| 11:31AM | 4 | BOTH POSITIVE OR NEGATIVE.  SO I JUST WANT YOU TO KNOW I'M NOT |
| 11:31AM | 5 | CONSIDERING THAT. |
| 11:31AM | 6 | MS. SAHARIA:  THANK YOU. |
| 11:31AM | 7 | THE COURT:  I DON'T NEED TO STRIKE IT. |
| 11:31AM | 8 | MS. SAHARIA:  OUR CONCERN WAS NOT THAT IT WAS |
| 11:31AM | 9 | IMPROPERLY BEFORE THE COURT.  WE THINK THE GOVERNMENT COULD |
| 11:31AM | 10 | HAVE PRESENTED IT TO THE COURT UNDER SEAL. |
| 11:31AM | 11 | THE COURT:  SURE. |
| 11:31AM | 12 | MS. SAHARIA:  THE CONCERN WAS THAT THE GOVERNMENT |
| 11:31AM | 13 | PRESENTED THE FINANCES OF MS. HOLMES'S PARTNER, WHICH WERE |
| 11:31AM | 14 | PROVIDED CONFIDENTIALLY TO PROBATION, THAT IT JUST BLURTED THEM |
| 11:31AM | 15 | OUT IN A PUBLIC FILING, WHICH IS WHY WE MOVED TO STRIKE. |
| 11:31AM | 16 | BUT TO BE FRANK, THE DAMAGE IS DONE.  IT'S BEEN OUT THERE |
| 11:32AM | 17 | IN THE PUBLIC DOMAIN NOW FOR A MONTH OR SO. |
| 11:32AM | 18 | THE COURT:  ALL RIGHT. |
| 11:32AM | 19 | MS. SAHARIA:  BUT THAT'S WHY WE FILED THE MOTION, |
| 11:32AM | 20 | YOUR HONOR. |
| 11:32AM | 21 | THE COURT:  I APPRECIATE THAT. |
| 11:32AM | 22 | AND JUST TO BE CLEAR, IT WASN'T A FINANCIAL STATEMENT OF |
| 11:32AM | 23 | YOUR CLIENT'S PARTNER.  IT WAS A REFERENCE TO PERHAPS INCOME OR |
| 11:32AM | 24 | STATUS OR SOMETHING.  BUT ANYHOW.  IT WAS NOT MOVING TO THE |
| 11:32AM | 25 | COURT IN ANY WAY, I JUST WANT YOU TO KNOW THAT. |

11:32AM  1          MS. SAHARIA:  THANK YOU, YOUR HONOR.

11:32AM  2          THE COURT:  SO HAVING SAID THAT, I'M GOING TO

11:32AM  3   RESPECTFULLY DECLINE YOUR INVITATION TO STRIKE AND/OR SEAL.  I

11:32AM  4   DON'T FIND THAT NECESSARY.

11:32AM  5          MS. SAHARIA:  THANK YOU.

11:32AM  6          THE COURT:  ANYTHING FURTHER?

11:32AM  7          MS. VOLKAR:  NOTHING FROM THE GOVERNMENT,

11:32AM  8   YOUR HONOR.

11:32AM  9          THE COURT:  ANYTHING FURTHER AS TO ANY OF THE

11:32AM 10   MOTIONS BEFORE THE COURT FOR TODAY OR ANY OTHER PARTY WISH TO

11:32AM 11   BE HEARD AS TO ANY OTHER MATTER IN REGARDS TO THIS CASE TODAY?

11:32AM 12          MS. SAHARIA:  NOT FROM US, YOUR HONOR.

11:32AM 13          MS. VOLKAR:  NOT AT THIS TIME.  THANK YOU.

11:32AM 14          THE COURT:  OKAY.  THANK YOU.

11:32AM 15       THANK YOU FOR YOUR HELP THIS MORNING ON ALL OF THESE

11:32AM 16   ISSUES.

11:32AM 17          MS. SAHARIA:  THANK YOU.

11:32AM 18          THE COURT:  I APPRECIATE THAT.  I WILL -- AS I

11:32AM 19   INDICATED, I'M GOING TO TAKE THE MATTERS UNDER SUBMISSION, AND

11:32AM 20   I WILL NOT -- YOU WON'T GET SOMETHING FROM ME UNTIL PROBABLY

11:33AM 21   THE FIRST WEEK IN APRIL.  I JUST WANTED YOU TO KNOW THAT FOR

11:33AM 22   YOUR TIMING AS YOU'VE INDICATED AND OTHERWISE.

11:33AM 23       AND I JUST WANT TO ONCE AGAIN STATE MY GRATITUDE TO BOTH

11:33AM 24   SIDES.  IT'S BEEN A PLEASURE WORKING WITH ALL OF YOU, AND I'M

11:33AM 25   GRATEFUL FOR YOUR HELP.  YOU'VE ALL BEEN PROFESSIONAL IN YOUR

11:33AM 1    PRESENTATIONS IN THIS TRIAL, AND I APPRECIATE IT.

11:33AM 2         THANK YOU.

11:33AM 3         THE MATTER IS UNDER SUBMISSION.

11:33AM 4              MS. VOLKAR:  THANK YOU, YOUR HONOR.

11:33AM 5              MS. SAHARIA:  THANK YOU, YOUR HONOR.

11:33AM 6    YOU KNOW THAT WE VERY MUCH APPRECIATE THE COURT'S STAFF AS

11:33AM 7    WELL.

11:33AM 8         (COURT CONCLUDED AT 11:33 A.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3                    CERTIFICATE OF REPORTER
4
5
6
7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE
8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10   HEREBY CERTIFY:
11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13   ABOVE-ENTITLED MATTER.
14
15
16                    _____
                     IRENE RODRIGUEZ, CSR, RMR, CRR
17                   CERTIFICATE NUMBER 8074
18
                     DATED:  MARCH 20, 2023
19
20
21
22
23
24
25