**REDACTED**

No. 22-10312

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ELIZABETH A. HOLMES

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California
No. 5:18-CR-258
Hon. Edward J. Davila

### REPLY IN SUPPORT OF
### MOTION FOR RELEASE PENDING APPEAL

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
 600 Stewart Street
 Suite 400
 Seattle, WA 98101
 (360) 320-6435

KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
 *Counsel of Record*
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
 680 Maine Avenue SW
 Washington, DC 20024
 (202) 434-5000
 asaharia@wc.com

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.     Holmes Raises Substantial Questions on Appeal. ............................................1

     A.     Das' Expert Opinions, CMS Report, and Voiding. ...............................1

     B.     Restriction of Holmes' Cross-Examination of Rosendorff. ..................5

     C.     Exclusion of Balwani's Testimony. ......................................................7

II.     These Substantial Issues Are Likely To Result in a New Trial. .....................9

III.     This Court's Order Denying Balwani's Motion for Release Pending Appeal Is Irrelevant. ........................................................................................12

CONCLUSION .....................................................................................................13

LIST OF EXHIBITS .............................................................................................14

CERTIFICATE OF COMPLIANCE ....................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States v. Bruce*, 394 F.3d 1215 (9th Cir. 2005) ............................................. 11

*United States v. Figueroa-Lopez*, 125 F.3d 1241 (9th Cir. 1997) ............................. 2

*United States v. Gonzalez-Flores*, 418 F.3d 1093 (9th Cir. 2005) ............................ 4

*United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985) ............................................ 2

*United States v. Paguio*, 114 F.3d 928 (9th Cir. 1997) ............................................. 8

*United States v. Schoneberg*, 396 F.3d 1036 (9th Cir. 2005) ................................... 7

*United States v. Sheppard*, 2021 WL 1700356 (W.D. Ky. Apr. 29, 2021) ............... 3

*United States v. Weitzenhoff*, 35 F.3d 1275 (9th Cir. 1993) ..................................... 4

**Constitution, Regulations, and Rules**

U.S. Const. Amend. VI ............................................................................................... 7

42 C.F.R. § 493.1291 .................................................................................................. 4

42 C.F.R § 493.1812 ................................................................................................... 4

Fed. R. Crim. P. 16 (2021) .................................................................................. 1, 2, 3

Fed. R. Evid. 401 ........................................................................................................ 3

Fed. R. Evid. 403 ................................................................................................ 3, 4, 5

Fed. R. Evid. 407 ........................................................................................................ 4

Fed. R. Evid. 701 ........................................................................................................ 1

Fed. R. Evid. 702 ................................................................................................ 1, 2, 3

Fed. R. Evid. 804 .................................................................................................... 7, 8

# INTRODUCTION

The government's opposition to Holmes' motion for release pending appeal fails to engage with many of Holmes' arguments for why her appeal issues present substantial questions. In several instances, the government does not even defend the basis for the district court's rulings. Instead, largely focusing on harmlessness arguments, the government cherry-picks portions of the record to defend the conviction while ignoring the portions of the record that undermine its harmlessness arguments. In doing so, the government makes the same mistake as the district court: it confuses harmlessness review for sufficiency of the evidence. The court's errors were substantial, and they were not harmless. A new trial will be required.

# ARGUMENT

## I. Holmes Raises Substantial Questions on Appeal.

### A. Das' Expert Opinions, CMS Report, and Voiding.

1. Das' testimony violated Rules 16, 701, and 702; at a minimum, the question is debatable. Contrary to the government's argument (at 14), Holmes repeatedly objected to both Das' testimony and the Patient Impact Assessment on Rule 702 grounds. *See* Ex. 61 at 6-8; Ex. 10 (Tr. 5714-15, 5821, 5827, 5856).

The government (at 14) contends that Das was merely a percipient witness because he was hired "to assess the findings in the CMS Report" and his testimony was grounded in "what [he] observed." But "[t]he mere percipience of a witness to

1

the facts on which he wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997); NACDL Amicus Br. 7-17 (ECF 32). The government cannot show that Das' "comprehensive retrospective analysis" of Edison data, as summarized in the Patient Impact Assessment and his testimony, Ex. 26 at 2; Ex. 10 (Tr. 5832, 5835), was not based upon specialized knowledge—let alone that the issue is beyond debate. *See United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985).

The government (at 11) suggests that Das' observations in 2016 are relevant because he "observed concerns with certain lab practices—in particular with Theranos's device—and communicated those concerns to Holmes." That argument ignores two huge evidentiary problems for the government. *First*, Das was not communicating contemporaneous observations to Holmes because Theranos was no longer using its device to test patient samples when Das conducted his backward-looking analysis in 2016. Ex. 22 at 1; Ex. 63 at 1. And, *second*, Holmes' state of mind in 2016 was irrelevant because (1) the investor conspiracy ended in 2015, and (2) although the government charged a patient conspiracy extending into 2016, it made zero attempt to prove any conduct directed at patients in 2016. Mot. 3-4, 7.

Because Das' testimony was expert in nature, the government needed to comply with Rules 16 and 702. As to Rule 702, the government (at 15) incredibly suggests it is irrelevant that much of the data on which Das relied no longer exists

2

because *some* documents he relied upon were available. But neither Holmes nor the court could assess the reliability of Das' analysis, *see* Rule 702(b), (d), without *all* the underlying data. The government ignores caselaw (cited in Holmes' motion) requiring exclusion of expert testimony when such data are missing. *See United States v. Sheppard*, 2021 WL 1700356, at *4-5 (W.D. Ky. Apr. 29, 2021).

The government's only response to Holmes' Rule 16 argument (at 15 & n.5) is that Das had the qualifications to be an expert. But Das' qualifications in the abstract are irrelevant to whether the expert disclosure was substantively adequate and timely. Mot. 6.

2. The CMS Report should have been excluded under Rules 401 and 403. Although the government (at 16) asserts in conclusory fashion that the 2016 report bore on Holmes' state of mind in 2015, it offers no argument for this illogical proposition. The government does not explain how the report could have informed Holmes' state of mind as to conduct directed at investors, the basis for the counts of conviction. Mot. 7. The government (at 16) instead argues that its "foremost argument for admissibility" below was that the report bore on Holmes' state of mind as to the charged patient-fraud conspiracy in 2016. But, as already discussed, the government proved *no* representations to patients in 2016. The government cannot smuggle irrelevant and prejudicial evidence into trial on the theory that the evidence bears on allegations it makes no attempt to prove.

3

The government's accusation (at 16) that Holmes put at issue her state of mind in 2016 also misses the mark. The court ruled before trial that most of the CMS report was admissible, Ex. 27 at 20, and the government was the first to invoke CMS's findings in its opening statement, Ex. 8 (Tr. 549, 551, 555-56). Holmes was entitled to rebut evidence introduced at trial over her objection without waiving the objection. *Cf. United States v. Weitzenhoff*, 35 F.3d 1275, 1287 n.8 (9th Cir. 1993).

Contrary to the government's argument (at 17 n.6), the instruction cautioning the jury not to convict on the basis of civil regulatory violations does not tip the Rule 403 balance in favor of admission. Where, as here, the probative value of the evidence is miniscule, even a slight risk of prejudice requires exclusion. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005).

3. Whether admitting evidence of Theranos' decision to void Edison test results violated Rules 403 and 407 is another substantial question. The government (at 12) invokes Das' testimony as evidence that CMS regulations mandated voiding. But interpreting regulations is a task for courts, not (purportedly) lay witnesses. By their plain terms, 42 C.F.R §§ 493.1812 and 493.1291(k) did not require voiding every Edison test. Holmes Br. 44-46 (ECF 31).

The government (at 17 n.7) asserts, puzzlingly, that the court "rejected" Holmes' Rule 403 arguments pre-trial. The opposite is true—before trial the court agreed with what it described as Holmes' "legitimate concerns about admitting

4

Theranos' decision to void test results," and deferred ruling until the government made "a proffer of evidence that clearly tie[d] the events in 2016 to the charged conduct." Ex. 27 at 38. The court then admitted the voiding evidence over Holmes' objection without conducting any Rule 403 balancing. Ex. 10 (Tr. 5827). The failure to conduct Rule 403 balancing requires *de novo* review, which the government does not argue it can survive. Mot. 8-9 & n.3.

### B. Restriction of Holmes' Cross-Examination of Rosendorff.

At a minimum, it is debatable whether the court erroneously restricted Holmes' cross-examination of Adam Rosendorff when it forbade Holmes from questioning him on certain subjects.

After spending more than one page (at 18) reciting Rosendorff's emphatic criticism of Theranos' technology, the government attempts to diminish Rosendorff as merely "one of several overlapping witnesses," Opp. 21, whose testimony concerned a "small sliver[] of evidence," Opp. 5. The government presented a different story at trial. The government referenced Rosendorff more than any other witness— 65 times in total—in opening and closing arguments. Ex. 8 (Tr. 531-58); Ex. 6 (Tr. 8909-9030); Ex. 5 (Tr. 9237-9322). After the conviction, the government again invoked Rosendorff repeatedly to support its sufficiency-of-the-evidence arguments. Ex. 43 at 11, 17-19; Ex. 58 (Tr. 24-25, 27). And Rosendorff was the only Theranos witness the court cited in its order denying Holmes' acquittal motion. Ex. 4 at 3.

5

On the merits, the government ignores the fact that the court restricted Holmes' examination of Rosendorff concerning his performance at other laboratories *after* the government had elicited testimony from Rosendorff comparing Theranos unfavorably to other laboratories. Ex. 7 (Tr. 1778-79). This produced a deeply distorted picture for the jury. Rosendorff criticized Theranos' quality-control testing, *id.* (Tr. 1757), but the court forbade all questioning regarding Invitae, which suffered a "systemic error" affecting 50,000 patient results while Rosendorff was lab director—errors Invitae's quality control failed to detect. (Ex. 35 at 2); *see* Ex. 36 (Tr. 2551). The court forbade questioning about uBiome, despite Rosendorff's belief that he was fired from that company for ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ and despite the government's questioning of Rosendorff about validation reports in the uBiome investigation. Ex. 37 at 5 (sealed).

The court forbade PerkinElmer-related questioning regarding "the nature of any investigation, the quality of the investigation, [or] [Rosendorff's] specific role in it." Ex. 36 (Tr. 2710), which shielded the jury from the fact that CMS found PerkinElmer to present immediate jeopardy to patient health, Ex. 36 (Tr. 2711), just like Theranos, Ex. 28 at 1; Ex. 40; Ex. 41. Citing evidence outside Holmes' trial record, the government (at 20) notes the investigation later concluded without sanctions, but the investigation was live during Rosendorff's testimony. This evidence would have undermined Rosendorff's depiction of Theranos as uniquely problematic, and would

6

have devastated his competence and credibility. The Confrontation Clause entitled Holmes to probe these subjects. *E.g., United States v. Schoneberg*, 396 F.3d 1036, 1042 (9th Cir. 2005).

The government neglects to discuss the foregoing arguments, addressing only the point that the excluded evidence bore on Rosendorff's bias. Its failure to mount any defense to the core of Holmes' argument is telling. As to bias, the government principally responds that Rosendorff gave statements to the prosecutors in this case even before the at-issue investigations, but that response focuses only on the fact of the *investigations*. Rosendorff's underlying lack of competence itself provided strong motive to blame Holmes for his own failures, even before any investigations.

The government finally argues that the excluded evidence was cumulative. This is not a serious argument. The court restricted whole *areas of inquiry*. That Holmes nonetheless attempted to cross-examine Rosendorff with the best material available to her does not make the excluded evidence cumulative.

### C. Exclusion of Balwani's Testimony.

The court's exclusion of Balwani's sworn testimony that he owned Theranos' financial model presents a substantial question. Mot. 15-20. The government's argument (at 22) that Balwani's testimony was not admissible under Rule 804(b)(3) because it "largely deflected or shared blame by pointing to others such as Safeway, Walgreens and other … potential investors who also provided input and edited the

financial model" misunderstands his testimony. Balwani stated that for the "*early models*" Safeway "educated [Theranos] on the lab industry, and then so did Walgreens." Ex. 49 at 4-5 (emphasis added). But the at-issue indictment allegations date to 2014. Mot. 15-16. Long before then, in 2010, Balwani "started doing [his] own research to educate [himself] on the industry" and "over time. . . as the information came into [him] [he would] update the model and keep it updated." Ex. 49 at 4-5. He also explained that he gave the model to "consultants at BDT" (a potential investor) who made "formatting," "typo" corrections, and other changes to "clean the model up." *Id.* at 5-6. None of this deflects blame or implies that anyone other than Balwani *substantively* edited the model in the relevant period.

Even the district court recognized that Balwani took ownership of the model in his testimony. Ex. 19 at 9-10; *see* Mot. 16-17. But the court erred in misinterpreting Rule 804 to mean that a statement against interest must be tantamount to a criminal confession. Mot. 16-17. This Court has held the opposite. *United States v. Paguio*, 114 F.3d 928, 933 (9th Cir. 1997) (a statement against interest "need not be a plain confession making the difference between guilty and not guilty"). The government (at 21-22) again ignores the substance of Holmes' argument, simply parroting the court's conclusion.

The government conspicuously does not defend the court's basis for ruling that the record lacks corroborating circumstances, nor does it respond to the

8

corroborating evidence that Holmes cites. Mot. 18-19. The government (at 23) instead offers a different basis, claiming that "a jury could determine Holmes knowingly misrepresented Theranos's financial stability to investors" because she received "weekly updates" about Theranos' financial situation while allegedly providing investors with the projections. That claim mangles the record. The evidence the government cites for the proposition that Holmes knew the company's "dire financial situation" is witness testimony about 2009 and 2013. *See* Ex. 62 at 4-5. The financial projections that the indictment puts at issue are 2015 projections provided to investors in 2014. Ex. 3 ¶ 12(B). Theranos had over $160 million in revenue (recorded as deferred revenue) in 2014. *See* Ex. 45 (Tr. 5275-76); Ex. 17 (Tr. 5017). That the government must mix and match the evidence in this way betrays the weakness of its position.

## II. These Substantial Issues Are Likely To Result in a New Trial.

A ruling in favor of Holmes on any of the foregoing issues is likely to yield a new trial. The 2016 evidence and Rosendorff's testimony were essential components of the government's case that Holmes misrepresented the capabilities of Theranos' proprietary technology—the central issue in the case, by the government's own repeated admissions (which it ignores on appeal). Mot. 11, 14-15; Holmes Br. 52-53, 65-67. And Balwani's self-inculpatory testimony likely would have affected the verdict, since Holmes was convicted of defrauding C-2 (but not C-

9

1) investors, and only C-2 investors received the financial projections. Mot. 19; Holmes Br. 75-76.

The government's contrary arguments lack merit. The government (at 5) first suggests that the 2016 evidence and Rosendorff's testimony relate solely to the "accuracy and reliability" of Theranos' proprietary devices and that the district court held this topic is "not material to the investor counts." Nothing could be further from the truth: the court denied Holmes' acquittal motion because it found sufficient evidence that Holmes "lied to investors" about the capabilities of Theranos' technology and invoked Rosendorff's testimony as support. Ex. 4 at 3. And the government's argument ignores its own pleadings and arguments placing Theranos' technological capabilities at the center of the case. *E.g.*, Ex. 6 (Tr. 8959).

The government next argues that other evidence showed that Holmes misrepresented Theranos' technological capabilities. But that evidence was unscientific, anecdotal, and flimsy. Mot. 9-10; Holmes Br. 47-53. Employees like Gangakhedkar and Cheung could testify only to discrete incidents. They could not offer a comprehensive, statistically significant evaluation of the technology necessary to prove that it did not work. The government relied on the 2016 evidence to fill that void. Holmes Br. 47-53. In fact, the government (at 11 n.4) *continues* to invoke the CMS Report to vindicate Cheung's anecdotal testimony, just as it did at trial.

10

More broadly, the government highlights other evidence that it alleges shows that Holmes made misrepresentations to investors on other subjects. But Holmes presented substantial defenses to those allegations and to the government's skewed interpretation of this evidence at trial. Critically, the government and its witnesses tied virtually all of the other alleged misrepresentations to the core allegation that Theranos' technology did not work. Mot. 3; *see, e.g.*, Ex. 6 (Tr. 8921: Walgreens); Ex. 8 (Tr. 537: third-party devices); Ex. 6 (Tr. 8968: military); Ex. 63 (Tr. 4683: pharmaceutical companies). For this reason, the government is wrong to assert (at 5) that the appeal issues relate only to one representation. The government cannot cast aside its own statements that Holmes' representations about the technology were "sort of the underlying false statement in the case," Ex. 6 (Tr. 8959), and "a thread through this scheme," *id.*

Fundamentally, the government's harmlessness argument merely summarizes its argument below regarding sufficiency of the evidence. But, as the cases cited by Holmes (at Mot. 10-11) make clear, a trial error is not harmless merely because the evidence, absent the error, is sufficient to support the verdict or other theories of liability supporting the verdict are unaffected by the error. *E.g.*, *United States v. Bruce*, 394 F.3d 1215, 1229 (9th Cir. 2005); *see also* Holmes Br. 51. The government (at 10) summarily dismisses those cases as "inapposite," yet it applies the

11

sufficiency-of-the-evidence standard they prohibit. On this record, and on this general jury verdict, the government will be unable to carry its burden to prove harmlessness.

### III. This Court's Order Denying Balwani's Motion for Release Pending Appeal Is Irrelevant.

Finally, the government suggests (at 4) that this Court's denial of the motion for release pending appeal by Holmes' co-defendant warrants the same result here. Holmes and Balwani were tried separately. The two appeals present different issues, on different records, with different outcomes (Balwani was convicted on 12 counts, Holmes only 4). The two appeals superficially present one common issue—whether the government improperly presented expert opinions through lay witnesses—but only Holmes' appeal involves a *retrospective*, comprehensive data analysis introduced through a "lay" witness. This Court's resolution of Balwani's motion is irrelevant.

## CONCLUSION

The Court should grant Holmes' motion for release pending appeal.

DATED: MAY 12, 2023

Respectfully submitted,

/s/ Amy Mason Saharia
KEVIN M. DOWNEY
LANCE A. WADE
AMY MASON SAHARIA
KATHERINE A. TREFZ
WILLIAMS & CONNOLLY LLP
  680 Maine Avenue SW
  Washington, DC 200024
  (202) 434-5000
  asaharia@wc.com

JOHN D. CLINE
LAW OFFICE OF JOHN D. CLINE
  600 Stewart Street
  Suite 400
  Seattle, WA  98101
  (360) 320-6435

*Attorneys for Appellant Elizabeth A. Holmes*

## LIST OF EXHIBITS

EXHIBIT 61:   Dkt. No. 892 – Motion to Strike Improper and Untimely Expert Disclosure and to Preclude Expert Opinion Testimony of Dr. Kingshuk Das

EXHIBIT 62:   Dkt. No. 1486 – United States' Sur-Reply to Defendant Elizabeth Holmes' Oral Motion for Acquittal

EXHIBIT 63:   Trial Exhibit 4533, Sept. 23, 2015 Letter to CMS

EXHIBIT 64:   2021.10.26 – Holmes Trial Tr., Vol 24 – 4577-4869

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type size and typeface requirements of Fed. R. App. P. 32(a)(5) and (6) and with the 10-page length limit of Ninth Circuit Rule 27-1(1)(d) under the page/word count conversion formula of Circuit Rule 32-3. The foregoing is 2748 words.

*/s/ Amy Mason Saharia*
AMY MASON SAHARIA

DATED: MAY 12, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF-system on May 12, 2023. I certify that all participants in the case are registered CM/ECF-users and that service will be accomplished by the appellate CM/ECF-system.

/s/ *Amy Mason Saharia*
AMY MASON SAHARIA

DATED: MAY 12, 2023