# EXHIBIT 61

1   JOHN D. CLINE (CA State Bar No. 237759)
    50 California Street, Suite 1500
2   San Francisco, CA 94111
    Telephone: (415) 662-2260 │ Facsimile: (415) 662-2263
3   Email: cline@johndclinelaw.com

4   KEVIN M. DOWNEY (Admitted Pro Hac Vice)
    LANCE A. WADE (Admitted Pro Hac Vice)
5   AMY MASON SAHARIA (Admitted Pro Hac Vice)
    KATHERINE TREFZ (CA State Bar No. 262770)
6   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, NW
7   Washington, DC 20005
    Telephone: (202) 434-5000 │ Facsimile: (202) 434-5029
8   Email: KDowney@wc.com; LWade@wc.com; ASaharia@wc.com; KTrefz@wc.com

9   Attorneys for Defendant ELIZABETH A. HOLMES

10

11                      UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14
    UNITED STATES OF AMERICA,              )   Case No. CR-18-00258-EJD
15                                         )
              Plaintiff,                   )   **MS. HOLMES' MOTION TO STRIKE**
16                                         )   **IMPROPER AND UNTIMELY EXPERT**
         v.                                )   **DISCLOSURE AND TO PRECLUDE EXPERT**
17                                         )   **OPINION TESTIMONY OF DR. KINGSHUK**
    ELIZABETH HOLMES and                   )   **DAS**
18   RAMESH "SUNNY" BALWANI,               )
                                           )   Date: August 20, 2021
19            Defendants.                  )   Time: 10:00 AM
                                           )   CTRM: 4, 5th Floor
20                                         )
                                           )   Hon. Edward J. Davila
21                                         )
    _____   )
22

23

24

25

26

27

28   MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
     AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
     CR-18-00258-EJD

1  **MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE**
2  **AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS**

3      PLEASE TAKE NOTICE that on August 20 at 10:00 a.m., or on such other date and time as the

4  Court may order, in Courtroom 4 of the above-captioned Court, 280 South 1st Street, San Jose, CA

5  95113, before the Honorable Edward J. Davila, Defendant Elizabeth Homes will and hereby does

6  respectfully move the Court pursuant to Rule 16 of the Federal Rules of Criminal Procedure and Rule

7  702 of the Federal Rules of Evidence for an order striking the government's expert disclosure for Dr.

8  Kingshuk Das and excluding any expert opinion testimony from the witness.  The Motion is based on

9  the below Memorandum of Points and Authorities, the Declaration of Amy Saharia and accompanying

10  exhibits, the record in this case, and any other matters that the Court deems appropriate.

11
12  DATED: August 5, 2021

13
14                                        /s/ Amy Mason Saharia
                                          KEVIN DOWNEY
15                                        LANCE WADE
                                          AMY MASON SAHARIA
16                                        KATHERINE TREFZ
                                          Attorneys for Elizabeth Holmes
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

BACKGROUND ........................................................................................................................1

ARGUMENT .............................................................................................................................3

I.    The Court Should Strike the Government's "Supplemental Disclosure." ...........................3

      A.    Dr. Das' Opinions Are Subject to Rule 702 and Rule 16. ....................................3

      B.    The Government's Disclosure Is Untimely and Insufficient. ................................4

II.   Dr. Das' Opinions Are Inadmissible under Rule 702. ....................................................7

CONCLUSION ..........................................................................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

On July 29, 2021, nearly a year and a half past the Court-ordered expert disclosure deadline and one month before trial, the government disclosed for the first time its intent to call Dr. Kingshuk Das, a former Theranos lab director, as an expert in this case. It did so in a four-sentence email, entitled "Supplemental Disclosure." The email states that the government is "supplementing [its] Rule 16(a)(1)(G) disclosure" to include Dr. Das, and that his anticipated testimony as well as the "bases for his opinions" are set forth in two recently disclosed FBI interview memoranda and in the over 1000 pages of cited material in the supplemental expert report of Dr. Stephen Master.

The government's "Supplemental Disclosure" is untimely and insufficient. The purpose of Rule 16 is "to allow counsel to frame a *Daubert* motion (or other motion *in limine*) [and] to prepare for cross-examination," *United States v. Cerna*, 2010 WL 2347406, at *1 (N.D. Cal. June 8, 2010), as well as to "minimize surprise that often results from unexpected expert testimony, [to] reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment. If a contentless email on the eve of trial and over a year and a half after the disclosure deadline could satisfy Rule 16, that Rule would be meaningless. The Court should strike this untimely and insufficient disclosure and exclude any expert opinion testimony from Dr. Das.

# BACKGROUND

The Court is generally familiar with the myriad issues concerning the government's Rule 16 disclosures. The following is an abridged summary relevant to this motion.

In November 2019, the Court ordered the government to "serve a summary under Rule 16" for its expert witnesses by March 6, 2020, which was then nearly five months before the scheduled August 4, 2020 trial date. ECF 171 (adopting schedule in Exhibit F to Status Report, ECF 170-6). The government served its Rule 16 disclosures on that date and, after the trial was continued to March 2021, served a supplement to those disclosures on September 28, 2020. *See* ECF 580-3 (Mar. 2020 Disclosure), 580-4 (Sept. 2020 Disclosure). The government's initial disclosure included hybrid fact/expert witnesses who worked at Theranos. *See* ECF 580-3 at 6-7. The supplemental disclosure

MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS

1  disclosed two new expert witnesses and significantly expanded the summary of the proposed expert

2  testimony of Dr. Adam Rosendorff, a former Theranos lab director.  ECF 580-4.  The government did

3  not identify Dr. Das in either of those disclosures.

4        Since the government's initial disclosure on March 6, 2020, Ms. Holmes had repeatedly

5  requested that the government serve disclosures that complied with Rule 16.  *See, e.g.*, Ms. Holmes'

6  Mot. To Exclude Expert Opinion Testimony of Fact/Percipient Witnesses, ECF 561, at 10-12 (detailing

7  numerous requests for adequate disclosures).  These Rule 16 issues have been the subject of two

8  motions and significant correspondence.  *Id.*

9        Despite the attention on this issue for over a year and a half, the government first disclosed Dr.

10  Kingshuk Das as an expert on July 29, 2021—one month before trial.  It did so in a four-sentence

11  "Supplemental Disclosure" email stating in full:

12       Dear Counsel,

13       We write to advise you that, [i]n response to the Court's ruling on the motions in limine,

14       we are amending our witness list to add Justin Offen, Dave Rogers, and a custodian of
     records from PricewaterhouseCoopers, LLP.

15

16       Further, although we submit it is not necessary, we are supplementing our Rule 16(a)(1)(G)
     disclosure to advise you the government intends to offer testimony from Dr. Kings[h]uk

17       Das. A summary of his anticipated testimony is set forth in the memoranda of interview
     that have previously been produced to you. The bases for his opinions, to the extent they

18       constitute expert opinion testimony, are set forth in those memoranda of interview,
     THPFM00004005199[1], and the list of documents at ECF 842-1 pp.10-15.

19

20       Best regards,

21       Bob

  Ex. A.

22        The government did not newly discover Dr. Das' identity; it has known about him for years.  He

23  was hired at Theranos in December 2015 as a contractor, working one day a week until March 2016

24  when he began working full time at the company as its lab director.  Ex. B at 1 (Feb. 2021 MOI).  Dr.

25  Das left the company in 2018, and his employment at Theranos was a matter of public record.

26

27   [1] The government inadvertently included the wrong Bates number for this document in its email.  The
correct number is THPFM0004005199.  Ex. D.

28  MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
CR-18-00258-EJD              2

1    It appears that the government first interviewed Dr. Das in February 2021 and then again in June

2    2021. *Id.*; Ex. C (Jun. 2021 MOI). In other words, the government first interviewed Dr. Das nearly a

3    year after its expert disclosure deadline and half a year after it told the Court in July 2020 that it was trial

4    ready. 7/20/2020 Hr'g Tr. 60:14-18. Although the government disclosed those interview memoranda to

5    Ms. Holmes in February and June 2021, it did not disclose until July 29 that it had any intent to elicit the

6    expert opinions contained in those interview memoranda. As far as Ms. Holmes knew, the government

7    intended to elicit relevant expert opinions only from its retained expert Dr. Master, as well as from two

8    other former Theranos laboratory directors, Drs. Rosendorff and Young, whom it disclosed as experts in

9    March 2020.

**ARGUMENT**

**I.    The Court Should Strike the Government's "Supplemental Disclosure."**

**A.    Dr. Das' Opinions Are Subject to Rule 702 and Rule 16.**

13    To the extent the government intends to elicit the full range of testimony contained in Dr. Das'

14    interview memoranda, that testimony undoubtedly includes expert opinions subject to Rules 16 and 702

15    because he offers opinions based on scientific expertise. That Dr. Das may also be a percipient witness

16    to factual events relevant to this case does not relieve the government of its obligations under these

17    Rules. As the Ninth Circuit has held, "[t]he mere percipience of a witness to the facts on which he

18    wishes to tender an opinion does not trump Rule 702." *United States v. Figueroa-Lopez*, 125 F.3d 1241,

19    1246 (9th Cir. 1997). In *Figueroa-Lopez*, the court rejected a government argument that percipient

20    witnesses' expert opinions are not subject to the same requirements as retained expert witnesses. 125

21    F.3d at 1246. As the Ninth Circuit observed, that "argument simply blurs the distinction between

22    Federal Rules of Evidence 701 and 702," and "subverts the requirements of Federal Rule of Criminal

23    Procedure 16(a)(1)(E). . . [which] requires the Government to 'disclose to the defendant a written

24    summary of [expert] testimony the government intends to use . . . during its case in chief.'" *Id.*; *see also*

25    *Rodriguez v. Gen. Dynamics Armament & Tech. Prod.,* 510 Fed. App'x 675, 676 (9th Cir. 2013)

26    (reversing judgment when "district court incorrectly determined that '[a]ny witness can talk about his

27    job,'" because "in fact, 'any part of a witness' testimony that is based upon scientific, technical, or other

28    MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
CR-18-00258-EJD               3

specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702.").[2]  It is for this reason that the government provided Rule 16 disclosures for Theranos' other lab directors whom it intends to call as witnesses.

It appears clear from the government's email that it intends for Dr. Das to offer scientific opinions.  For example, according to his interview memoranda, Dr. Das described for the government a "six sigma" analysis he conducted in 2016 to assess the accuracy and reliability of certain of Theranos' assays. Ex. B (Feb. 2021 MOI at 2).  After the government learned of this analysis this year, it apparently asked its retained expert Dr. Master to conduct a similar analysis; Dr. Master even references Dr. Das' interview memorandum and analysis in his supplemental expert report.  ECF 842-1 at 9 (referencing Dr. Das' analysis).   According to the government's disclosure email, the documents on which Dr. Das relies as the bases of his opinions are the *same* documents cited in Dr. Master's supplemental report.  Ex. A.   It is obvious that testimony about this analysis and other similar testimony qualifies as expert opinion.

### B.  The Government's Disclosure Is Untimely and Insufficient.

Under Rule 16(a)(1)(G), the government is required to provide "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial."  The summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id.*  This requirement "is intended to minimize surprise that often results from unexpected expert testimony, [to] reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment.  Expert disclosures must be made "in a timely fashion." Fed. R. Crim. P. 16 advisory committee note.  Here, the Court-ordered deadline for the government's disclosures was March 6, 2020.

The government's disclosure of Dr. Das is clearly untimely.  The government has provided no justification for its delay in disclosing Dr. Das as an expert.  Nor could it.  Dr. Das has been identified in

---

[2] This is not new ground. This issue has already been litigated in the context of the government's doctor witnesses.

MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
CR-18-00258-EJD

documents in the government's possession since well before the indictment. And, of course, it was no secret that Dr. Das served as Theranos' lab director in 2016. The government's only explanation for this late disclosure appears to be that it believed that a disclosure "is not necessary." Ex. A. As courts in this district have recognized, the claimed failure to understand that a witness's testimony is governed by Rule 702 is no excuse for not providing a timely disclosure. *See United States v. Yagi,* 2013 WL 10570994, at *16 (N.D. Cal. Oct. 17, 2013) (excluding government expert opinion proffered "less than one month before the start of trial" notwithstanding government's argument that "it believed the witnesses in question could testify as lay witnesses"); *see also United States v. Valdez,* 2019 WL 539074, at *3 (N.D. Cal. Feb. 11, 2019) (excluding government DNA expert when the government provided an insufficient summary shortly before the trial date). The same result should follow here.

The government's four-sentence email likewise violates Rule 16's requirement to summarize the opinions and provide the bases and reasons for those opinions. The email isn't even a summary: it just refers defense counsel to FBI interview memoranda and the voluminous documents identified in the attachment to Dr. Master's supplemental report. Ex. A. Although discovery may provide *context* for a Rule 16 summary, "the production of additional documents cannot satisfy a rule that requires a 'summary' that "describe[s] . . . the bases and reasons for [the expert witness's] opinions." *Valdez,* 2019 WL 539074, at *3. The government was required to provide an actual summary of Dr. Das' opinions and the bases and reasons for those opinions.

Dr. Das' interview memoranda (collectively 6 pages of information) are no substitute for an adequate disclosure. First, it is unclear what particular assays Dr. Das will opine on and the data on which he is basing his opinions. The two interview memoranda collectively reference three assays (Sodium, Vitamin B12, and PT/INR) out of the 23 assays identified in the Indictment. Two of these, PT/INR and Vitamin B12, are not part of the ten assays that are the subject of Dr. Master's original report. From the cited documents, Ms. Holmes does not know which other assays Dr. Das will opine on or what methodology (or methodologies) he will apply. The number of assays and methodologies the government seeks to put at issue in this case through expert testimony has been, and continues to be, a moving target. *See* ECF 847, Ms. Holmes' Response to Gov't Supp. Expert Report. It is unfair to Ms.

MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
CR-18-00258-EJD                                                5

1    Holmes to require her to develop a response to new expert opinions on new assays on the eve of trial.

2    Second, the cited documents do not explain the source of the data on which Dr. Das relies for his

3    opinions.  In his February 2021 interview memorandum, he references an analysis of unsourced "Edison

4    data," and implies that these data were contained in a "high-level" PowerPoint document by two named

5    Theranos employees and a third person referred to as "Shelia." Ex. B (Feb. 2021 MOI at 1-2).  It does

6    not appear that the government has produced the PowerPoint referenced in the interview; at a minimum,

7    it is not among the materials the government cited as the bases for Dr. Das' opinions.  We do not know

8    what underlying data was subject to this analysis, how many tests the data represented, or if the data

9    covered the entire span of the relevant devices.  In his June 2021 interview memorandum, Dr. Das refers

10   to having used summary information in validation reports to conduct an analysis, but does not identify

11   which reports he reviewed or explain why he did not use all the data available to him, apart from the

12   unexplained statement that using summary information in the validation reports was "the easiest way to

13   convey his message."  Ex. C (Jun. 2021 MOI at 3).

14   Likewise, Dr. Das explained in his interview that he continued his "internal investigations" until

15   late 2017 or early 2018 and that he "'followed the thread' into other areas," but said nothing about what

16   his methods were, what assays he investigated, what his findings or conclusions were after he

17   investigated "other areas" or even what the other areas were.  Ex. B (Feb. 2021 MOI at 3).  The

18   memoranda raise more questions than answers.  An adequate summary, at a minimum, would list each

19   assay Dr. Das planned to opine on, the opinion for each assay, and the bases and reason for each

20   particular opinion (including the data and methodology for each).  The government's cited documents

21   fall well short of these basic requirements.

22   The government's email assertion that Dr. Das' opinions are based on the materials that Dr.

23   Master cited in his supplemental report is also inadequate (and cannot possibly be correct).  It is clear

24   from Dr. Das' interview memoranda that he is unfamiliar with many of those documents.  For example,

25   Dr. Master relied on patient impact assessments, but the degree to which Dr. Das was involved with the

26   patient impact assessment process is unclear from the documents disclosed by the government.  *See* Ex.

27   C (Jun. 2021 MOI at 3) (stating he "did not prepare patient impact assessments."); *see also* ECF 842-1 at

28   MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
     AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS

11. Dr. Das also explained that he did not know what some of the terms in documents cited in Dr. Master's supplement mean. *Id.* at 2. The government provided several of Dr. Master's cited documents to Dr. Das in his interview, and he stated that although "he *may* have seen documents like" those documents, neither he or his team drafted those particular documents. *Id.* at 1 (emphasis added). Ms. Holmes has no idea what documents Dr. Das is relying on or whether the government even gave him all of the documents on which Dr. Master relied, and she should not have to guess which documents support his amorphous opinions.

The government also cites in its email a document that purports to be a draft letter to CMS that was never sent. Ex. A (citing THPFM0004005199); *see also* Ex. C (Jun. 2021 MOI at 2). Dr. Das stated in his interview that the "data he used to draw [his] conclusion [in this draft letter] was documented in 'D-tag' Files he and [another employee] shared with each other by email," Ex. C (Jun. 2021 MOI at 2), but to Ms. Holmes' knowledge the government has never produced these data and certainly did not identify the data in its disclosures. The draft letter has numerous citations that appear to be placeholders for documents that the government has not identified or disclosed as the data underlying Dr. Das' opinions. *See* Ex. D (including several highlighted citations for "Ex. XX"). [3] Critically, Dr. Das has explained that he no longer has access to any of this data, which would have been either on "Theranos' share drives" or in the "LIS [,]laboratory information system[,] data dumps on his computer." Ex. B (Feb. 2021 MOI at 3). The government cannot adequately disclose the bases and reasons for Dr. Das' opinions if those bases no longer exist, nor can Ms. Holmes fairly probe the opinions without access to the underlying data.

## II.  Dr. Das' Opinions Are Inadmissible under Rule 702.

Although Ms. Holmes can only guess as to what Dr. Das' opinions will actually be, the interview memoranda disclosed to date make clear that Dr. Das' opinions cannot survive Rule 702. Ms. Holmes reserves the right to file a *Daubert* motion and to request a *Daubert* hearing if the Court permits these untimely opinions. For now, she offers the following preliminary observations:

[3] Moreover, the document is littered with comments in the margins, and it is unclear if this is the final version of this draft document.

1    First, the opinions do not appear to be based on reliable information and/or data.  Dr. Das cannot

2    vouch for the reliability of the data summary contained in the unidentified "high-level PowerPoint"

3    document or validation reports on which he apparently relied.  There are serious questions regarding the

4    reliability of relying on summary data, as opposed to actual data, to draw conclusions about accuracy

5    and reliability.  To the extent he relied on unidentified LIS data "dumps," his interview memoranda do

6    not establish the reliability of the methods by which those data dumps occurred, and he cannot prove

7    their reliability now since he no longer has access to the data.  Ex. B (Feb. 2021 MOI at 3).  If Dr. Das is

8    relying on the calculations of other Theranos scientists, their methodology needs to be explained as part

9    of his disclosure.   The government has not explained how it intends to establish the reliability of the

10   inputs used in Dr. Das' calculations, as it has not disclosed any other expert testimony from Theranos

11   scientists on this subject.

12   Second, the government has not established the reliability of Dr. Das' methodology.  He stated in

13   his interview that he employed a sigma metrics analysis to determine the accuracy of some assays, but

14   none of the cited documents shows that the use of such metrics is generally accepted in the field to

15   determine the accuracy and reliability of clinical assays.  Ex. C (Jun. 2021 MOI at 3).  Similarly, Dr.

16   Das admitted to using summary information and not the actual data drawn from Theranos devices

17   without any explanation as to whether that methodology was accepted in his field.  *Id.*

18   These points illustrate the *Daubert* issues that plague Dr. Das' ambiguous opinions.  If the Court

19   permits these untimely, inadequate opinions, a *Daubert* hearing will be required to understand the

20   opinions and to allow Ms. Holmes to formulate a *Daubert* challenge.  But requiring Ms. Holmes to

21   litigate these issues on the eve of, or during, trial would be extremely prejudicial.  Rule 16 required an

22   adequate disclosure sufficiently in advance of trial, to allow an orderly resolution of *Daubert* issues.

23   Indeed, the deadline for Ms. Holmes to file *Daubert* motions was in November 2020.  The government's

24   failure to comply with Rule 16 requires excluding Dr. Das' expert opinions.  Absent such relief, Ms.

25   Holmes will be forced to move for a continuance to attempt to mitigate the prejudice resulting from this

26   untimely disclosure.

27

28   MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
CR-18-00258-EJD                    8

1

**CONCLUSION**

2        For these reasons, the Court should strike the supplemental disclosure of the expert testimony of

3  Dr. Kingshuk Das and preclude the government from eliciting expert opinions from Dr. Das at trial.

4  DATED: August 5, 2021

5                                       /s/ Amy Mason Saharia

6                                       KEVIN DOWNEY
LANCE WADE

7                                       AMY MASON SAHARIA
KATHERINE TREFZ

8                                       Attorneys for Elizabeth Holmes

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
CR-18-00258-EJD                               9

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2021, a copy of this filing was delivered via ECF on all counsel of record.

/s/ Amy Mason Saharia
AMY MASON SAHARIA
Attorney for Elizabeth Holmes

MS. HOLMES' MOTION TO STRIKE IMPROPER AND UNTIMELY EXPERT DISCLOSURE
AND TO PRECLUDE EXPERT OPINION TESTIMONY OF DR. KINGSHUK DAS
CR-18-00258 EJD