**No. 22-10312**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

      v.

ELIZABETH HOLMES,

    Defendant-Appellant.

_____

**SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME 1 OF 4**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 18-CR-00258-EJD-1
_____

**THOMAS A. COLTHURST**
Attorney for the United States
Acting Under Authority Conferred By
28 U.S.C. § 515

**MATTHEW M. YELOVICH**
Chief, Appellate Section, Criminal Division

**KELLY I. VOLKAR**
Assistant United States Attorney
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-7185
**Attorneys for Plaintiff-Appellee**
**UNITED STATES OF AMERICA**

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

LANCE WADE
(202) 434-5755
lwade@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 11, 2021

Via Email

Mr. Jeffrey Schenk, Esquire
Mr. Robert Leach, Esquire
Mr. John C. Bostic, Esquire
Ms. Kelly I. Volkar, Esquire
Ms. Amani S. Floyd, Esquire
Assistant United States Attorneys
United States Attorney's Office
Northern District of California
150 Almaden Blvd. Suite 900
San Jose, CA 95113

     Re:    United States v. Elizabeth Holmes and Ramesh "Sunny" Balwani
           No. CR-18-00258-EJD (N.D. Cal.)

Counsel:

    Yesterday, during the government's case-in-chief, you asked the defense to advise "whether they intend to argue that the failure of the LIS to be presented in the case by the government is a basis to find Ms. Holmes not guilty." 11/10/2021 Tr. 5884.  You advised the Court that you were "interested in knowing whether the defense is going to be permitted in argument to suggest that there is missing evidence, that the evidence is lacking and, therefore, insufficient to support convictions on the counts where the LIS is relevant." *Id*. at 5878.  You stated that such an argument would open the door to the admission of evidence relating to the loss of the LIS.  *Id*.

    To be clear: Ms. Holmes will not commit to restricting her defense in any way.  The government's request raises serious constitutional concerns, and, if accepted, would infringe Ms. Holmes' Fifth and Sixth Amendment rights.

    In the Motion *in Limine* Order, the Court confirmed Ms. Holmes' "right to put on the defense of her choosing, including an argument that the Government has failed to meet its burden of proof."  Dkt. 798 at 57.  The Order continued:

WILLIAMS & CONNOLLY LLP

Jeffrey Schenk, Esq., *et al*.
November 11, 2021
Page 2

> The Court declines to preclude Holmes from raising the lack of 'statistical' or 'scientific' evidence as a defense, from characterizing that missing evidence as critical to the Government's case, or from arguing about the statistical insignificance of individual patient or physician testimony.  Thus, to the extent the government's opposition brief seeks to preclude Holmes from offering such arguments, the Court denies that request.

*Id*. at 58.

> The Motion *in Limine* Order also provided that Ms. Holmes may open the door to evidence about Theranos' culpability in the destruction of LIS if she "argues that the LIS database is unavailable because of the Government's failure to obtain it."  *Id*.  At trial, Ms. Holmes has not blamed the government for failing to gather and preserve the LIS database. Because the defense has not opened the door, the government cannot introduce evidence concerning the loss of the LIS database.

> Ms. Holmes reserves the right to make all arguments in her defense.

Sincerely,

Lance Wade

**SER-3**

1  STEPHANIE M. HINDS (CABN 154284)
United States Attorney

2

THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  JEFFREY B. SCHENK (CABN 234355)
JOHN C. BOSTIC (CABN 264367)
5  ROBERT S. LEACH (CABN 196191)
KELLY I. VOLKAR (CABN 301377)
6  Assistant United States Attorneys

7       150 Almaden Boulevard, Suite 900
San Jose, California 95113
8       Telephone: (408) 535-5061
Fax: (408) 535-5066
9       Kelly.Volkar@usdoj.gov

10  Attorneys for United States of America

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,            )  Case No. 18-CR-00258 EJD
                                         )
16       Plaintiff,                      )  UNITED STATES' OPPOSITION TO
                                         )  DEFENDANT'S MOTION TO ALLOW CROSS
17    v.                                 )  EXAMINATION REGARDING DR. ADAM
                                         )  ROSENDORFF'S POST-THERANOS
18  RAMESH "SUNNY" BALWANI,              )  EMPLOYMENT
                                         )
19       Defendant.                      )  Date:   April 19, 2022
                                         )  Time:   8:30 a.m.
20  _____      )  Court:  Hon. Edward J. Davila

21

22

23

24

25

26

27

28

**SER-4**

**INTRODUCTION**

1

2       The government opposes Defendant Ramesh "Sunny" Balwani's Motion to Allow Cross

3  Examination Relating to Dr. Adam Rosendorff's Post-Theranos Employment (ECF No. 1401

4  ("Motion")), which seeks to permit questions regarding topics that were properly excluded during the

5  last trial against co-Defendant Elizabeth Holmes.  *See United States v. Holmes*, 10/05/2021 Trial

6  Transcript ("10/5 Tr.") at 2705:1–2716:12; *see also id.* at 2548:25–2578:25; *United States v. Holmes*,

7  09/24/2021 Trial Transcript ("9/24 Tr.") at 1690:14–1694:12, 1697:10–1698:25;  *United States v.*

8  *Holmes*, 09/28/2021 Trial Transcript ("9/28 Tr.") at 2098:6–2100:16.  After hearing substantial

9  argument spread across multiple days, the Court rejected similar arguments made by co-Defendant

10  Holmes.  The Court held that the defense in that case sought to introduce "inappropriate character

11  evidence" that was more prejudicial than probative for purposes of Federal Rule of Evidence 403.

12  10/5 Tr. at 2707:3–2714:15.  The Court also referenced Federal Rule of Evidence 608 and its purpose of

13  "avoid[ing] mini trials," and found that the proposed cross examination would also be cumulative.  *Id.*

14  Following that same reasoning, the Court should deny Defendant's pending Motion and preclude any

15  cross examination concerning Dr. Rosendorff's post-Theranos employment.

16       **BACKGROUND**

17       Dr. Adam Rosendorff worked as the CLIA laboratory director at Theranos from April 2013 until

18  he resigned in November 2014—almost a decade ago.  9/24 Tr. at 1702:22–1703:1.  Since then,

19  Dr. Rosendorff has worked for a number of companies within their laboratories.  *See generally* 10/5 Tr.

20  at 2548:25–2578:25.  To the extent some of those companies have faced scrutiny from government

21  entities,[1] the defense seeks to use those facts to impugn Dr. Rosendorff's competence and his motives

22  for testifying.  As described below, the evidence Defendant seeks to introduce is wholly irrelevant and

23  inadmissible character evidence.

24

25  _____

26  [1] Defendant asserts that federal investigations involve "*all three* of Dr. Rosendorff's post-Theranos
   workplaces" (ECF No. 1401 at 5), insinuating these three companies are the only positions

27  Dr. Rosendorff has held since resigning from Theranos.  But public information on Dr. Rosendorff's
   LinkedIn profile shows he has worked at several lab companies since Theranos, not all of which are

28  discussed in Defendant's Motion.  *See* https://www.linkedin.com/in/adam-rosendorff-5473a616.

**SER-5**

1    *Invitae*.  From January 2015 until September 2017, Dr. Rosendorff served as the laboratory

2    director for Invitae.  *See* ECF No. 1401-3 at 10 (Exhibit 1), 16 (Exhibit 2).  In September 2017, Invitae

3    announced its intent to retest 50,000 samples for a rare genetic mutation, estimating that a testing error

4    might have generated false negative results for 2 to 15 patients.  *See* ECF No. 1401 at 3 & n.1; 10/5 Tr.

5    at 2564:14–2565:15.  Four years later, in November 2021, Invitae announced in its public securities

6    filings that the company had "recently received a subpoena from the U.S. Attorney's Office for the

7    District of Massachusetts requesting that we produce certain documents regarding our sponsored testing

8    programs."  ECF No. 1401-3 at 92, 105 (Exhibit 3).  No public charges have been filed in connection

9    with that investigation.  In response to Defendant's request for materials received in response to the

10   subpoena issued to Invitae, the government has informed Defendant that those materials include "no

11   documents from the time period of Dr. Rosendorff's employment at Invitae."  ECF No. 1401-3 at 271.

12   *uBiome*.  Dr. Rosendorff was employed as uBiome's laboratory director for a few months, and

13   was absent for a substantial portion of that time due to a medical issue.  *See* 10/5 Tr. at 2565:16–2567:7;

14   ECF No. 1401 at 4.  In March 2021, the U.S. Attorney's Office for the Northern District of California

15   announced an indictment issued against the co-CEOs of uBiome for defrauding health insurance

16   providers.  ECF No. 1401-3 at 273 (Exhibit 5).  The federal grand jury indicted the two uBiome co-

17   CEOs on charges including "conspiracy to commit securities fraud, conspiracy to commit health care

18   fraud, money laundering, and related offenses in connection with alleged schemes to defraud health

19   insurance providers and investors to raise capital for . . . uBiome."  *Id.*  "Specifically, according to the

20   indictment, the defendants developed, implemented, and oversaw practices designed to deceive

21   approving health care providers and reimbursing insurance providers regarding tests that were not

22   validated and not medically necessary.  Further, the indictment alleges the defendants falsified

23   documents and lied and concealed material facts when insurance providers asked questions to which

24   truthful answers would reveal the fraudulent nature of uBiome's billing model."  *Id.* at 274; *see also id.*

25   at 275 (further describing the nature of the charges as largely relating to billing practices).  Critically,

26   there is no indication that Dr. Rosendorff was aware of uBiome's fraudulent billing practices during the

27   few months he served as the company's lab director.  Indeed, given that the prior lab director had quit

28

U.S. OPP'N TO DEF. MOT. TO ALLOW CROSS EXAM RE:
DR. ROSENDORFF'S POST-THERANOS EMPLOYMENT,
CASE NO. 18-258 EJD                 3

1   after learning of those practices, the co-CEOs of uBiome had reason to conceal the fraudulent scheme

2   from Dr. Rosendorff.  *See* 10/5 Tr. at 2566:15–24.  As the government represented during co-Defendant

3   Holmes' trial, Dr. Rosendorff was never a target of the uBiome investigation and the two former co-

4   CEOs of uBiome are the only individuals charged in the indictment.  *See* 10/5 Tr. at 2565:23–2566:3.

5         ***PerkinElmer***.  From January 2021 through present day, Dr. Rosendorff serves as the laboratory

6   director at PerkinElmer, Inc.'s Branch Lab in Valencia, California, which is operated in partnership with

7   the California Department of Public Health ("CDPH") ("CDPH Branch Lab").  *See* 10/5 Tr. at 2567:8–

8   2568:18, 2717:5–2720:25.  In early 2021, employees of the Centers for Medicare and Medicaid Services

9   ("CMS") conducted a routine inspection of the CDPH Branch Lab and alerted Dr. Rosendorff to several

10  deficiencies, which Dr. Rosendorff testified during co-Defendant Holmes' trial were mostly related to

11  "document review and review of the L.I.S." systems.  *See* 10/5 Tr. at 2719:6–9; *see also* ECF No. 1401-

12  3 at 279–293 (Exhibits 6–8).  Later that year, CMS declined to impose sanctions after finding—based on

13  documentation submitted throughout the year and up through September 10, 2021—that the CDPH

14  Branch Lab had corrected the identified deficiencies.  *See* Declaration of Kelly I. Volkar in Support of

15  United States' Opposition to Defendant's Motion to Allow Cross Examination Regarding Dr. Adam

16  Rosendorff's Post-Theranos Employment ("Volkar Decl."), Exhibits 1 & 2.

17                                        **ARGUMENT**

18        The government requests that the Court deny Defendant's Motion and prohibit any inquiry

19  during cross examination of Dr. Rosendorff regarding his post-Theranos employment.  While the Court

20  allowed limited inquiry during co-Defendant Holmes' cross examination into the CMS findings at

21  PerkinElmer (10/5 Tr. at 2705:1–2716:12, 2717:5–2720:25), recent events show that the speculative

22  threat of sanctions over Dr. Rosendorff has gone away, making Defendant's argument about the

23  potential for bias even more tenuous than it was during the Holmes trial.  Furthermore, the Court should

24  prohibit any inquiry regarding Invitae and uBiome given that, contrary to Defendant's assertion that

25  relevant facts have changed (ECF No. 1401 at 5), it remains true that there is an insufficient connection

26  between those extraneous events and Dr. Rosendorff's testimony in this case.  Finally, a balancing under

27  Rule 403 weighs in favor of excluding these topics, which would unnecessarily prolong this trial.

28

U.S. OPP'N TO DEF. MOT. TO ALLOW CROSS EXAM RE:
DR. ROSENDORFF'S POST-THERANOS EMPLOYMENT,
CASE NO. 18-258 EJD         4

**A.   The Topics Defendant Seeks to Query on Cross Examination Are Irrelevant and Inadmissible Character Evidence—Not Evidence of Bias**

Dr. Rosendorff's post-Theranos employment is irrelevant to his testimony regarding his actions and statements to Defendant while employed at Theranos.  *See, e.g.*, *United States v. Holmes*, 09/15/2021 Trial Transcript at 986:10–990:7 (sustaining irrelevance objection to questions regarding witness' post-Theranos employment).  Indeed, the only relevance is to show Dr. Rosendorff's propensity or character for being an allegedly incompetent laboratory director—but that is "inappropriate character evidence" as the Court found in the last trial.  10/5 Tr. at 2705:1–2716:12.

To avoid this inevitable conclusion, Defendant makes the same bid as his co-Defendant in the last trial, asserting again that Dr. Rosendorff's post-Theranos employment should be questioned to show his bias for the prosecution.  ECF No. 1401 at 5–7.  But "[t]he point of a bias inquiry is to expose to the jury the witness' special motive to lie by revealing facts such as interest in the outcome of the trial or personal animosity or favoritism toward the defendant" or prosecution.  *United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) (internal citations omitted) (citing *United States v. Abel*, 469 U.S. 45 (1984)).  For example, in *Abel*, the Supreme Court held that evidence showing defendant and a defense witness were both members in a gang and one of the gang's tenets required its members to lie to protect each other was admissible as bias evidence against that witness.  469 U.S. at 52–53.

By contrast, here, Defendant has not shown—and cannot show—that subsequent investigations of companies where Dr. Rosendorff worked at certain times after he resigned from Theranos gives rise to a motive for Dr. Rosendorff to lie or slant his testimony.  First and foremost, Defendant has not provided any connection between Dr. Rosendorff's employment as Invitae's lab director—in California in 2017—to the more recent federal investigation in 2021 by the Massachusetts U.S. Attorney's Office into "sponsored testing programs"—which may not have even been related to his role.  On that question, it is telling that the federal government office "has no documents from the time period of Dr. Rosendorff's employment at Invitae" as a result of their investigation to date (ECF No. 1401-3 at 271 (Exhibit 4))—making Defendant's unsupported assertions about Dr. Rosendorff's involvement even more speculative.  And Invitae's voluntary decision to retest 50,000 samples in September 2017 due to a

1 | "relatively minor" error,[2] in case up to 15 patients received a false negative, is a "specific instance[ ] of a

2 | witness's conduct" that does not relate to Dr. Rosendorff's "character for truthfulness" and thus is

3 | prohibited by Federal Rule of Evidence 608(b).[3]  Moreover, Defendant has not shown any motive for

4 | Dr. Rosendorff to lie regarding events at Theranos because of the 2017 re-testing of samples at Invitae.

5 |       Second, Defendant has failed to demonstrate that Dr. Rosendorff was in any way implicated in

6 | the billing-related fraud charged against the two co-CEOs of uBiome.  Defendant plucks one phrase out

7 | of the government's press release and speculates that validation of lab tests is at issue in that case, when

8 | reading the entirety of the press release and summary of the charges clearly demonstrates it is a health-

9 | care *billing*-related fraud scheme, and Defendant has not asserted that Dr. Rosendorff had any

10 | responsibility over uBiome's billing practices.  *Compare* ECF No. 1401 at 5, *with* ECF No. 1401-3 at

11 | 273–275 (Exhibit 5).  As this Court has observed, "[e]vidence of 'guilt by association' is improper."

12 | ECF No. 798 at 61 (*Holmes* MIL Order); *see also United States v. Dickens*, 775 F.2d 1056, 1058

13 | (9th Cir. 1985) ("Evidence of association with others affiliated with the 'mob,' even though the others

14 | may have been engaged in criminal activity, did not bear on Lester's truthfulness.").  Indeed,

15 | Defendant's own Motion acknowledges that "[t]he probative value of such evidence [of a witness' bias],

16 | depends in large measure on some showing *that the government was contemplating prosecution*[.]"

17 | ECF No. 1401 at 6–7 (quoting *United States v. Atherton*, 936 F.2d 728, 733 (2d Cir. 1991)) (emphasis

18 | added).  For uBiome, Dr. Rosendorff was never a target of the investigation and he was not one of the

19 | two defendants criminally charged.  *See* 10/5 Tr. at 2565:23–2566:3.  Thus, nothing about the federal

20 | investigation regarding uBiome has any tendency to show Dr. Rosendorff is biased in this trial.

21 | Defendant's strategy is thus revealed as an attempt to show guilt by association with two different

22 | companies that have come under federal scrutiny.

23 |

24 | _____

25 | [2] Catherine Ho, "After Error, SF Genetic Testing Firm is Retesting 50,000 Saliva Samples," *S.F. Chronicle* (Sept. 12, 2017), *available at* 2017 WLNR 28169944 *and*

26 | https://www.sfchronicle.com/business/article/After-error-SF-genetic-testing-firm-is-retesting-12192601.php.

27 | [3] The government notes that Defendant is not asserting Rule 608(b) as a basis to admit evidence on these topics, as co-Defendant Holmes did.  *Compare* ECF No. 1401, *with* 10/5 Tr. at 2548:25–2551:9.

28 |

1    Third, while the Court previously permitted limited questioning regarding Dr. Rosendorff's

2  current position due to the involvement of overlapping CMS employees and the threat of sanctions to

3  Dr. Rosendorff (10/5 Tr. at 2709:14–2716:12), CMS has since decided not to impose any sanctions—

4  including against Dr. Rosendorff—based on additional documentation the CDPH Branch Lab provided

5  throughout the summer and fall last year.  *See* Volkar Decl., Exhibit 2.  The government continues to

6  assert that the connection between CMS's decisions in that unrelated inspection and Dr. Rosendorff's

7  testimony at this trial is far too attenuated, but whatever speculative connection there once was has now

8  evaporated entirely.  Defendant cannot show Dr. Rosendorff has a motive to lie or testify favorably for

9  the prosecution based on his employment at the PerkinElmer CDPH Branch Lab.

10    Finally, the government notes that—cutting strongly against Defendant's claim that questioning

11  regarding these three companies will show Dr. Rosendorff's motive to slant his testimony favorably for

12  the prosecution—each of the investigations Defendant references began in 2021 *after* Dr. Rosendorff

13  had already given prior consistent statements regarding his percipient observations while working at

14  Theranos in civil depositions and multiple interviews with the FBI.  *Compare* ECF No. 1401-3 at 92,

15  105 (Invitae subpoena announced November 2021), 273 (uBiome indictment announced March 2021),

16  279 (CMS sends findings to CDPH Branch Lab in February 2021), *with*, *e.g.*, 9/28 Tr. at 1976:4–13

17  (describing civil deposition in February 2019).

18

19    **B.    Federal Rule of Evidence 403 Prohibits Inquiry Into the Tangential and Irrelevant
        Topic of Dr. Rosendorff's Post-Theranos Employment**

20    Any minimal relevance cannot withstand a Rule 403 analysis, particularly given that allowing

21  Defendant to cross examine on Dr. Rosendorff's post-Theranos employment will inevitably prolong and

22  unnecessarily complicate an already lengthy trial.  *See*, *e.g.*, *Lewy v. S. Pac. Transp. Co.*, 799 F.2d 1281,

23  1298 (9th Cir. 1986) ("[C]ourts have 'wide discretion' under Rule 403 to impose limits on the quantity

24  and type of [bias] evidence that [the parties] introduce."); *see also* ECF No. 1326 at 6 (*Balwani* MIL

25  Order) (noting that Rule 403 typically tends to prohibit propensity evidence among other unduly

26  prejudicial categories).  As the Court found in the last trial, "the reason for [Rule] 608(b) . . . is to avoid

27  mini trials, to avoid getting into these off ramps that talk about perhaps useful information, but . . . it

28

U.S. OPP'N TO DEF. MOT. TO ALLOW CROSS EXAM RE:
DR. ROSENDORFF'S POST-THERANOS EMPLOYMENT,
CASE NO. 18-258 EJD                      7

**SER-10**

1    becomes a 403 type of issue" and the Court has to decide whether to "allow additional evidence in to
2    clear the record[.]"  10/5 Tr. at 2571:3–2574:9, 2705:1–2716:12.
3            Defendant has not shown that Dr. Rosendorff has any personal knowledge or involvement in the
4    two federal criminal investigations (regarding Invitae and uBiome) about which Defendant would like to
5    cross examine Dr. Rosendorff.  If Defendant were permitted to ask questions without any good faith
6    basis for believing Dr. Rosendorff has personal knowledge of the answer, the government would need to
7    take time in response to clear up the confusion and demonstrate the lack of connection between
8    Dr. Rosendorff and those investigations.  Similarly, for the CMS findings related to the PerkinElmer
9    CDPH Branch Lab, if Defendant were permitted to cross examine Dr. Rosendorff, the government
10   would need to respond by introducing detailed evidence of the favorable resolution of that inspection.
11   The government would also introduce Dr. Rosendorff's prior consistent statements under Federal Rule
12   of Evidence 801(d)(1)(B).  Thus, these topics are exactly the type that would trigger mini-trials that are
13   wholly unnecessary, cause undue delay, and would serve only to prolong an already lengthy trial.

**CONCLUSION**

14   For the foregoing reasons, the government respectfully requests the Court deny Defendant's
15   Motion and prohibit cross examination of Dr. Adam Rosendorff regarding irrelevant, unduly prejudicial,
16   character evidence relating to his post-Theranos employment and any unrelated federal investigations of
17   companies where he has been employed.
18
19
20   DATED:  April 18, 2022                                    Respectfully submitted,
21
22                                                             STEPHANIE M. HINDS
                                                               United States Attorney
23
                                                                 */s/ Kelly I. Volkar*
24                                                             ROBERT S. LEACH
                                                               JEFF SCHENK
25                                                             JOHN C. BOSTIC
                                                               KELLY I. VOLKAR
26                                                             Assistant United States Attorneys
27
28

U.S. OPP'N TO DEF. MOT. TO ALLOW CROSS EXAM RE:
DR. ROSENDORFF'S POST-THERANOS EMPLOYMENT,
CASE NO. 18-258 EJD                          8

**SER-11**

1    STEPHANIE M. HINDS (CABN 154284)
     United States Attorney
2
     THOMAS A. COLTHURST (CABN 99493)
3    Chief, Criminal Division

4    JEFFREY B. SCHENK (CABN 234355)
     JOHN C. BOSTIC (CABN 264367)
5    ROBERT S. LEACH (CABN 196191)
     KELLY I. VOLKAR (CABN 301377)
6    Assistant United States Attorneys

7        150 Almaden Boulevard, Suite 900
         San Jose, California 95113
8        Telephone: (408) 535-5061
         Fax: (408) 535-5066
9        Kelly.Volkar@usdoj.gov

10   Attorneys for United States of America

11                      UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                           SAN JOSE DIVISION

14   UNITED STATES OF AMERICA,              )   Case No. 18-CR-00258 EJD
                                            )
15           Plaintiff,                     )   DECLARATION OF KELLY I. VOLKAR IN
                                            )   SUPPORT OF UNITED STATES' OPPOSITION
16       v.                                 )   TO DEFENDANT'S MOTION TO ALLOW CROSS
                                            )   EXAMINATION REGARDING DR. ADAM
17   RAMESH "SUNNY" BALWANI,                )   ROSENDORFF'S POST-THERANOS
                                            )   EMPLOYMENT
18           Defendant.                     )
                                            )   Date:  April 19, 2022
19                                          )   Time:  8:30 a.m.
                                                Court:  Hon. Edward J. Davila
20

21

22

23

24

25

26

27

28

     VOLKAR DECL. ISO U.S.' OPP'N TO DEF. MOT. RE: DR. ROSENDORFF'S CROSS,
     CASE NO. 18-CR-258 EJD                    1

                                                                    **SER-12**

I, Kelly I. Volkar, declare:

1.      I am an Assistant United States Attorney (AUSA) representing the United States of America, the plaintiff in this case.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a November 10, 2021, letter from the California Department of Public Health addressed to Dr. Adam Rosendorff, produced in discovery starting with Bates label US1-001534.

3.      Attached hereto as Exhibit 2 is a true and correct copy of a February 22, 2022, letter from the Centers for Medicare and Medicaid Services addressed to Dr. Adam Rosendorff, produced in discovery starting with Bates label US1-001537.

4.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Walnut Creek, California, on April 18, 2022.

DATED: April 18, 2022

                                                    */s/ Kelly I. Volkar*
                                                    KELLY I. VOLKAR
                                                    Assistant United States Attorney

VOLKAR DECL. ISO U.S.' OPP'N TO DEF. MOT. RE: DR. ROSENDORFF'S CROSS,
CASE NO. 18-CR-258 EJD                    2

**SER-13**

State of California—Health and Human Services Agency
# California Department of Public Health

**TOMÁS J. ARAGÓN, M.D., Dr.P.H**
*Director and State Public Health Officer*



**GAVIN NEWSOM**
*Governor*

November 10, 2021

Adam Rosendorff, MD
CLIA Laboratory Director
CDPH Branch Laboratory
28454 Livingston Ave
Valencia, CA 91355

Timothy Bow
Emergency Procurement Officer, Owner Representative
California Department of Public Health
850 Marina Bay Parkway, Bldg. P
Richmond, CA 94804

STATE: CPH889339
CLIA: 05D2197416

## RE: PUBLIC HEALTH LABORATORY STATE INSPECTION

### Routine Inspection

### NOTICE OF ACCEPTANCE OF CORRECTION OF DEFICIENCIES

Dear Dr. Rosendorff,

On October 21, 2021, the California Department of Public Health (Department) notified your laboratory of its intent to impose the alternative sanctions of a directed plan of correction and onsite monitoring as a result of its determination that your laboratory was not in compliance with the requirements specified in the Health and Safety Code (HSC) section 101160 and/or California Code of Regulations (CCR), title 17, sections 1078 and 1083.

After extensive review and careful analysis of evidence and documentation submitted by your laboratory, the Department hereby notifies you of the withdrawal of its intent to impose the above-described alternative sanctions.

---

Laboratory Field Services ● 320 West 4th Street, Suite 890 ● Los Angeles, CA 90013
(213) 620-6160 ● (213) 620-6565 FAX
LFS Website (www.cdph.ca.gov/LFS)

CDPH Branch Laboratory
November 10, 2021
Page 2

**The findings are as follows:**

1. The Department conducted a routine inspection of your laboratory on December 8, December 9, and December 16, 2020. The routine inspection concluded on February 17, 2021.

2. On February 19, 2021, the Department notified you of its determination that the laboratory was **not** in compliance with the requirements specified in HSC section 101160 and/or California Code of Regulations (CCR), title 17, sections 1078 and 1083.

3. In response, the Department received four submisions from your laboratory on March 1, March 8, March 11, and March 30, 2021.

4. On May 17, 2021, the Department notified you that the four previous submissions failed to remove all condition level deficiencies.

5. On May 24, 2021, the Department received a written submission from your laboratory in response to our May 17, 2021, letter.

6. On June 8, 2021, the Department notified you that the May 24, 2021, submission failed to remove the remaining condition level deficiency and that this notification would be the Department's final request for information.

7. The Department received email communications from your laboratory June 18, 2021 and July 3, 2021, and another submission on August 20, 2021.

8. After careful review of all submissions, the Department determined that your laboratory failed to correct a remaining condition level deficiency (**D5400 – 42 C.F.R. section 493.1250; Condition: Analytic Systems**).

9. On October 21, 2021, the Department sent your laboratory a "Notice of Intent to Impose Sanctions" based on the failure to correct the condition level deficiency.

10. The Department received another submission from your laboratory on October 27, 2021, and it referred to documents your laboratory submitted on September 10, 2021, to another regulatory entity but did not submit to the Department.

11. On October 28, 2021, the Department directed your laboratory to submit the same documents to supplement your October 27, 2021, submission.

12. The Department received a submission from your laboratory on November 2, 2021, and conducted an onsite visit of the laboratory on November 10, 2021.

Upon review of all submissions received by the Department subsequent to the "Notice of Intent to Impose Sanctions," the Department has found that the corrections and evidence submitted by your laboratory are acceptable. Because all defiencies previously cited by the Department have been found to be corrected, no further action with respect to the findings of the routine inspection of your laboratory is required.

Please note that the inspection takes an overview of the laboratory through random sampling. By its nature, an inspection may not find every instance of non-compliance that may have occurred in the laboratory. It remains the responsibility of the laboratory

2

CDPH Branch Laboratory
November 10, 2021
Page 3

and its director to ensure that the laboratory is at all times following all state laws and regulations related to clinical laboratory requirements, to identify any problems in the laboratory and take corrective action specific to the problems, and to institute appropriate quality assessment measures to ensure that the deficient practices do not recur. Compliance with these laws and regulations is your responsibility as a licensee in retaining the rights and privileges granted by the Public Health Laboratory License.

We appreciate the time, cooperation, and effort that was given to address the findings of the Department's routine site inspection.

Sincerely,

Elsa Eleco
Section Chief, On-Site Licensing

cc:     Catherine C. Tolentino
        Examiner II

        Robert J. Thomas
        Branch Chief, Laboratory Field Services

        LeeAnn Dennewitz
        SVP, Strategic Partnerships & Alliances, PerkinElmer

3

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Division of Clinical Laboratory Improvement & Quality (DCLIQ)
Western and Central Operations Branch - San Francisco Office
(Denver, Kansas City, San Francisco, and Seattle)
90 7th Street, Suite 5-300 (5W)
San Francisco, CA  94103-6707



Refer to:  DCLIQ - GKY

**IMPORTANT NOTICE – PLEASE READ CAREFULLY**

Via facsimile to (661) 402-6485.
*(Confirmation of successful facsimile transmission constitutes proof of receipt.)*

February 28, 2022

Adam Rosendorff, M.D., Director
CDPH Branch Laboratory
28454 Livingston Avenue
Valencia, CA  91355

CLIA Number: 05D2197416

**RE:     PROPOSED SANCTIONS NOT IMPOSED**

**ALLEGATION OF COMPLIANCE CREDIBLE, EVIDENCE OF COMPLIANCE ACCEPTABLE**

**CONDITIONS MET, IMMEDIATE JEOPARDY REMOVED**

Dear Dr. Rosendorff:

In order for a laboratory to perform testing under the Clinical Laboratory Improvement Amendments of 1988 (CLIA), Public Law 100-578, it must comply with all CLIA requirements. These requirements are found in section 353 of the Public Health Service Act (42 U.S.C. § 263a) and 42 Code of Federal Regulations, Part 493 (42 C.F.R. § 493). Laboratories are required to be in compliance with the applicable regulations. Compliance with these regulations is a condition of certification for the CLIA program.

By letter dated May 6, 2021, we notified you that based on an onsite CLIA initial certification and complaint survey completed on May 6, 2021, your facility was not in compliance with Condition-level CLIA requirements and that conditions within the laboratory pose immediate jeopardy (*see* 42 C.F.R. § 493.2). In our letter, we requested that your laboratory submit a credible allegation of compliance and acceptable evidence of correction for the cited deficiencies.

1

US1-001537

**SER-17**

In response, we received a submission from the laboratory on May 16, 2021. After careful review, we determined that the laboratory's submission did not constitute a credible allegation of compliance and acceptable evidence of correction for the deficiencies cited during the CLIA initial certification and complaint survey completed on May 6, 2021. The submission did not demonstrate that the laboratory had come into Condition-level compliance and abated immediate jeopardy.

Consequently, by letter dated July 6, 2021, C.M.S. notified the laboratory of proposed sanctions against the laboratory's CLIA certificate based on the findings of immediate jeopardy, the laboratory's failure to meet all CLIA Condition-level requirements, and based on the failure by the owners and director of the laboratory to comply with the certificate requirements and performance standards as evidenced by the deficiencies cited during the CLIA initial and complaint survey completed on May 6, 2021. This letter described the proposed sanctions and gave the laboratory ten days from the date of the July 6, 2021 letter to submit, in writing, any information or evidence as to why these sanctions should not be imposed.

Your laboratory responded with a two-part second submission, which we received on July 16, 2021, and August 11, 2021. We carefully reviewed the second submission and determined that the response had no effect on our determination to impose sanctions. That is, this submission did not constitute a credible allegation of compliance and acceptable evidence of correction. The information provided showed that the laboratory continued to be out of compliance with the CLIA requirements as cited during the May 6, 2021 survey and that the determination of immediate jeopardy continued to exist.

However, before we imposed the proposed sanctions, C.M.S. representatives conducted an onsite visit to determine whether our determination of the laboratory's submissions was correct by providing the laboratory with an opportunity to discuss the submissions. This onsite visit was completed on August 24, 2021. Subsequent to our August 24, 2021, onsite visit, we received an unsolicited third submission from the laboratory on September 10, 2021. After careful review, we determined that, collectively, the three submissions constituted a credible allegation of compliance and acceptable evidence of correction and that the determination of immediate jeopardy had been removed.

As advised in our May 6, 2021 letter, to verify that corrections to the deficiencies cited had been effectuated, C.M.S. representatives conducted an onsite follow-up survey that was completed on February 14, 2022. As a result of the onsite follow-up survey, we are not imposing the sanctions proposed in our July 6, 2021 letter, and we are recommending the laboratory for certification in the CLIA Program. Shortly, the laboratory will receive a CLIA certificate bill. The laboratory will receive its CLIA Certificate of Compliance approximately two weeks after payment is posted.

We encourage your laboratory to maintain compliance with all CLIA requirements. It is the responsibility of the laboratory and its director to ensure that the laboratory is at all times following

2

all CLIA requirements, to identify any problems in the laboratory and take corrective action specific to the problems, and to institute appropriate quality assessment measures to ensure that the deficient practices do not recur.

Please contact Gary Yamamoto by telephone at (415) 744-3738 or by e-mail at gary.yamamoto@cms.hhs.gov with any questions concerning this letter.


Sincerely,

*Karen Fuller/s*

Karen Fuller, Manager
Division of Clinical Laboratory
Improvement & Quality (DCLIQ)
Western and Central Operations Branch
(Denver, Kansas City, San Francisco, and
Seattle)


cc:   California Department of Public Health, Laboratory Field Services

3

# Exhibit No. 5

3/19/22, 2:00 PM    Case 3:21-cr-00258-EMC  Document 141-3  Filed 04/12/22  Page 27 of 296 Department of Justice



THE UNITED STATES ATTORNEY'S OFFICE

# NORTHERN DISTRICT *of* CALIFORNIA

<u>U.S. Attorneys</u> » <u>Northern District of California</u> » <u>News</u>

Department of Justice

U.S. Attorney's Office

Northern District of California

FOR IMMEDIATE RELEASE                                    Thursday, March 18, 2021

## uBiome Co-Founders Charged With Federal Securities, Health Care Fraud Conspiracies

### Indictment Alleges Former Co-CEOs Defrauded Health Insurance Providers and Investors In Schemes Related to Clinical Gut and Vaginal Microbiome Tests and Capital Fundraises

SAN FRANCISCO – A federal grand jury handed down a 33-page indictment today charging Zachary Schulz Apte and Jessica Sunshine Richman with multiple federal crimes including conspiracy to commit securities fraud, conspiracy to commit health care fraud, money laundering, and related offenses in connection with alleged schemes to defraud health insurance providers and investors raise to capital for now-bankrupt microbiome testing company uBiome.

The announcement was made by Acting U.S. Attorney Stephanie M. Hinds, Federal Bureau of Investigation Special Agent in Charge Craig D. Fair, U.S. Postal Inspection Service (USPIS) Inspector in Charge Rafael Nuñez; U.S. Department of Health and Human Services Office of the Inspector General (HHS-OIG) Special Agent in Charge Steven J. Ryan; Defense Criminal Investigative Service (DCIS) Western Field Office Special Agent in Charge Bryan D. Denny; U.S. Department of Veterans Affairs, Office of Inspector General (VA OIG) Special Agent in Charge is Jason P. Root; Amtrak Office of the Inspector General Special Agent In Charge, Western Field Office, Thomas M. Hopkins; Office of Personnel Management Office of Inspector General (OPM-OIG) Deputy Inspector General Performing the Duties of the Inspector General Norbert E. Vint.

According to the indictment, Apte, 36, and Richman, 46, both of whom resided in San Francisco at relevant times, co-founded uBiome in October 2012.  Initially, uBiome offered a direct-to-consumer service, called "Gut Explorer," which allowed an individual to submit a fecal sample that uBiome would analyze in its laboratory and produce a report comparing the customer's microbiome to the microbiomes of others who had submitted fecal samples to uBiome, all for less than $100.  The indictment describes how the defendants eventually expanded uBiome's business model to include development and marketing of "clinical" tests regarding the gut and vaginal microbiomes, which tests would ostensibly be used by medical professionals to make medical decisions and as to which uBiome would seek reimbursement from health insurance providers in amounts up to nearly $3,000.  The indictment alleges that Apte's and Richman's efforts to have uBiome develop clinical tests that could be billed to insurance companies were intended to

Trial Exh. 20420 Page 001

SER-21

attract large-scale venture capital investment. By late 2015, shortly before it raised millions of dollars in its "Series B" fundraising round, uBiome began to market a "clinical" version of a test. Thereafter, the indictment alleges that Apte and Richman caused uBiome to employ various methods to secure health care provider orders for its clinical gut test and clinical vaginal test, including by having its Chief Medical Officer review test requests from customers and endeavoring to build a network of health care providers external to uBiome.

"The innovation that emerges from our Bay Area companies is unparalleled," said Acting U.S. Attorney Hinds, "but all innovation must exist within the boundaries of the law. Today's indictment alleges that in their efforts to move fast to drive business and investment capital to their microbiome start up, defendants turned a blind eye to compliance and pursued at all costs a path designed to bring the greatest investment in their company. The indictment alleges defendants bilked insurance providers with fraudulent reimbursement requests, a practice that inevitably would result in higher premiums for us all. Further, defendants cashed out on the investment that flowed into the company to benefit themselves. Today's indictment is a cautionary tale about the importance of robust compliance programs rather than lip service, and the importance of honesty with investors."

"This was the result of a very complex investigation conducted by the FBI and our federal and state partners," said FBI Special Agent in Charge Fair. "This indictment illustrates that the heavily regulated healthcare industry does not lend itself to a 'move fast and break things' approach, but rather to an approach of compliance and accountability."

"The United States Postal Inspection Service has a long history of successfully investigating complex fraud cases," said USPIS Inspector in Charge Nuñez. "Anyone who engages in deceptive practices should know they will not go undetected and will be held accountable. The collaborative investigative work on this case conducted by Postal Inspectors, our law enforcement partners, and the United States Attorney's Office illustrates our efforts to protect American consumers and businesses."

"The announced indictment is a crucial step forward in holding accountable those who, among other things, allegedly engaged in fraudulent schemes against TRICARE, the Department of Defense's healthcare system for military members and their families," said DCIS Special Agent in Charge Denny. "DCIS will continue to work with its law enforcement partners to see this matter through in order to protect the best interests of the Department of Defense and the American public."

"This indictment demonstrates the VA OIG's unwavering commitment to safeguard the integrity of the programs that support our nation's veterans and their families" said VA OIG Special Agent in Charge Root.

"We are very proud of this well-coordinated, joint effort—a true partnership between the U.S. Attorney's Office and multiple investigative agencies like Amtrak's Office of Inspector General," said Amtrak OIG Special Agent in Charge Hopkins. "Because of this joint effort and efforts like it, we continue to achieve success across the country in bringing justice to those who target Amtrak's health care plan, its employees and their dependents."

"The OPM OIG is committed to investigating unscrupulous providers that take advantage of the system and defraud the American taxpayer," said OPM OIG Deputy Inspector General Vint.

The indictment describes how the defendants ultimately adopted several fraudulent practices with respect to its clinical tests. Specifically, according to the indictment, the defendants developed, implemented, and oversaw practices designed to deceive approving health care providers and reimbursing insurance providers regarding tests that were not validated and not medically necessary. Further, the indictment alleges the defendants falsified documents and lied about and concealed material facts when insurance providers asked questions to which truthful answers would reveal the fraudulent nature of uBiome's billing model. The

indictment alleges such practices included (1) fraudulently submitting reimbursement claims for re-tests or re-sequencings of archived samples (referred to internally at uBiome as "upgrades"); (2) utilizing a captive network of doctors and other health care providers who fraudulently were given partial and misleading information about the test requests they were reviewing; (3) fraudulently submitting reimbursement claims with respect to tests that had not been validated under applicable federal standards and/or for which patient test results had not yet been released; (4) manipulating dates of service to conceal uBiome's actual testing and marketing practices from insurance providers, and to maximize billings; (5) fraudulently not charging patients for patient responsibility required by insurers, and instead, in some cases, incentivizing them with gift cards, and then making false or misleading statements about, or concealing, those practices from insurance providers; and (6) falsifying documents, using the identity of doctors and other health care providers without their knowledge or authorization, and lying to insurance providers in response to requests for information, overpayment notifications, requests for recoupment of billings, denials of reimbursement requests, or audits investigating uBiome's billing practices.  The indictment alleges that, between 2015 and 2019, uBiome submitted more than $300 million in reimbursement claims to private and public health insurers.  Of these reimbursement claims, uBiome was paid more than $35 million.

The indictment also includes allegations that defendants oversaw an effort to deceive and mislead investors about various aspects of uBiome's business during its Series B and Series C fundraising rounds, which occurred primarily in 2016 and 2018, respectively.  Specifically, the indictment alleges defendant misled investors about (1) the success of uBiome's business model in terms of revenues and reimbursement rates; (2) the threats to future revenues represented by uBiome's failure to collect patient responsibility, marketing of upgrades, and reliance a captive group of health care providers to generate orders; and (3) the lack of clinical utility and acceptance in the medical community of uBiome's tests.  The indictment alleges that the defendants failed to disclose to investors, and otherwise concealed from investors, that "not only were insurance providers' questions about and responses to uBiome's billing practices calling uBiome's entire business model into question, but [defendants] had had to falsify documents and lie to insurance providers in order to attempt to keep them at bay."  The indictment alleges that Apte and Richman induced investors to invest more than $64 million in uBiome stock during the Series B and Series C fundraising rounds and, furthermore, that Apte and Richman together sold investors more than $12 million of their personal uBiome during those rounds.

In addition to these charges, the indictment contains allegations that defendants engaged in aggravated identity theft and engaging in transactions with the proceeds of the specified unlawful activities of wire fraud and securities fraud (i.e., money laundering).  With respect to the identity theft charges, the indictment provides examples of how defendants used the names and personal information of various health care providers to create documents for submission to health insurance companies  with respect to certain uBiome customers during and in relation to the conspiracy and scheme to defraud those insurers.  With respect to money laundering, the indictment alleges Apte used more than $10,000 of proceeds of the scheme to defraud investors to make a $2,250,000 payment ostensibly to a law firm for a retainer and to deposit $500,000 into a bank account.  Also with respect to money laundering, the indictment alleges Richman used more than $10,000 of proceeds of the scheme to defraud investors to make payments related to real property in Washington State and Florida, to purchase an annuity from a life insurance company, to pay a law firm $2,000,000 ostensibly for a legal retainer, and to transfer funds in the amount of $900,000 intended as partial payment for the purchase of a residence in south Florida.

In sum, the defendants are charged with the following crimes and face the following maximum penalties:

| Offense | Statute | Maximum Statutory Penalty (per count) |
|---|---|---|

SER-23

| Offense | Statute | Maximum Statutory Penalty (per count) |
|---|---|---|
| Conspiracy to Commit Health Care Fraud<br><br>(one count, each defendant) | 18 U.S.C. § 1349 | 20 years |
| Health Care Fraud<br><br>(14 counts, each defendant) | 18 U.S.C. § 1347 | 20 years |
| Aggravated Identity Theft and Aiding and Abetting<br><br>(six counts, each defendant) | 18 U.S.C. § 1028A & 2 | Two years, consecutive to underlying sentence |
| Conspiracy to Commit Wire Fraud and Securities Fraud<br><br>(one count, each defendant) | 18 U.S.C. § 371 | 5 years |
| Wire Fraud and Aiding and Abetting<br><br>(10 counts, each defendant) | 18 U.S.C. § 1343 & 2 | 20 years |
| Fraud in Connection with the Purchase and Sale of Securities<br><br>(nine counts, each defendant) | 15 U.S.C. §§ 78j(b), 78ff;<br><br>17 C.F.R. § 240.10b-5;<br><br>18 U.S.C. § 2 | 20 years |
| Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity<br><br>(Apte, two counts; Richman, four counts) | 18 U.S.C. § 1957 | 10 years |

Trial Exh. 20420 Page 004

SER-24

The court may order additional terms of supervised release, as well as additional monetary penalties and restitution.  However, any sentence following conviction would be imposed by the court only after consideration of the U.S. Sentencing Guidelines and the federal statute governing the imposition of a sentence, 18 U.S.C. § 3553.

An indictment merely alleges that crimes have been committed, and defendants are presumed innocent until proven guilty beyond a reasonable doubt.

The defendants' initial federal court appearances have not yet been scheduled.

The case is being prosecuted by the Special Prosecutions Section of the U.S. Attorney's Office for the Northern District of California.  The prosecution is the result of an investigation by the FBI, USPIS, HHS-OIG, DCIS, VA-OIG, Amtrak-OIG; OPM-OIG; and the U.S. Department of Labor, Employee Benefits Security Administration, with assistance from the California Department of Justice Division of Medi-Cal Fraud & Elder Abuse and the California Department of Insurance.  The U.S. Attorney's Office and all the federal law enforcement agencies also thank the San Francisco Regional Office of the Securities and Exchange Commission (SEC).  The SEC conducted a parallel investigation that was also announced today.

---

**Attachment(s):**
Download uBiome indictment

**Component(s):**
USAO - California, Northern

Updated March 18, 2021

Trial Exh. 20420 Page 005

**SER-25**

```
 1               UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA, SJ

 3   - - - - - - - - - - - - - - - - -

 4   UNITED STATES,                )

 5                   Plaintiff,    ) CASE NO.

 6   V.                            ) 18-cr-00258-EJD-1

 7   ELIZABETH HOLMES,             )

 8                   Defendant.    )

 9   - - - - - - - - - - - - - - - - -

10

11                  AUDIO TRANSCRIPTION OF

12            AUDIO RECORDINGS REFLECTING TAPED

13          CONVERSATIONS BETWEEN ROGER PARLOFF AND

14            ELIZABETH HOLMES IN PREPARATION FOR

15           PARLOFF'S JUNE 2014 FORTUNE ARTICLE

16              "THIS CEO IS OUT FOR BLOOD."

17      FILE NOS. 5473A, 5474AB2, 5475A, 5477A, 5478A2,

18        5480A, 5473B2, 5473D2, 5481A, 5481D, 5481B,

19        5481C, 1647A, 1657A, 1719A, and 5473C

20

21            BEHMKE REPORTING AND VIDEO SERVICES, INC.

22                 BY: AMANDA OSTROWSKI, CSR NO. 13922

23                      455 MARKET STREET, SUITE 970

24                 SAN FRANCISCO, CALIFORNIA 94105

25                            (415) 597-5600
```

TR-002409

SER-26

```
1              AUDIO TRANSCRIPTION OF: Trial Exh. 5473A
2                   RECORDING DATE: May 12, 2014
3                        DURATION: 2:12
4                     (Begin transcription)
5                          ---oOo---
6
7         ROGER PARLOFF:  When I looked at Quest, you
8    know, obviously they have many different kinds of
9    chemistry going on.  They do about 600 tests in this --
10   in this regional hub lab.
11        ELIZABETH HOLMES:  Uh-huh.
12        ROGER PARLOFF:  Many different kinds of samples,
13   you know, including tissue simples, biopsies.  So -- so
14   they're preparing slides for examination under
15   microscope, you know, among other things.
16        ELIZABETH HOLMES:  Uh-huh.
17        ROGER PARLOFF:  Now, do you -- does your
18   platform replace all of those?
19        ELIZABETH HOLMES:  Our -- our platform can
20   yield -- it -- it -- let me think of the best way to say
21   this.  We can do all of those tests.
22        ROGER PARLOFF:  Uh-huh.
23        ELIZABETH HOLMES:  And so we can provide data
24   back to clinicians for -- for all the same tests.
25        ROGER PARLOFF:  Okay.  And -- and you're --
```

TR-002410

SER-27

1   you're hesitant about saying "replace."

2           ELIZABETH HOLMES:  Well, I --

3           ROGER PARLOFF:  Does it -- does it subs -- I

4   mean, could it substitute for those, or are there

5   advantages to some -- for some reasons and to others for

6   other reasons?

7           ELIZABETH HOLMES:  The reason I didn't say

8   "replace" is just because of this theme of --

9           ROGER PARLOFF:  Oh, a dip -- a diplomatic

10  matter?

11          ELIZABETH HOLMES:  Well, you know, we --

12  we're -- we're -- we're processing the samples a

13  different way.  Let's put it that way.  But it -- it --

14  we believe very strongly that we're able to yield data at

15  the highest levels and with the highest levels of -- of

16  quality and -- and data integrity.  So this is a -- a --

17  another framework through which to -- to run the same

18  types of tests, basically.

19          (End transcription of Trial Exh. 5473A)

20                  ---oOo---

21

22

23

24

25

TR-002411

**SER-28**

```
 1              AUDIO TRANSCRIPTION OF:  Trial Exh. 5474AB2
 2                   RECORDING DATE: May 21, 2014
 3                       DURATION: 6:07
 4                    (Begin transcription)
 5                        ---oOo---
 6
 7         ROGER PARLOFF:  The difference between --
 8    there -- there are now close to 200 -- or at least my --
 9    the last I looked, there were close to 200 tests now on
10    your website.  The difference between the ones that are
11    on the website and the ones that aren't --
12         ELIZABETH HOLMES:  Yes.
13         ROGER PARLOFF:  -- because you said -- you said
14    you have -- you -- you -- you feel comfortable about more
15    than 1,000 CPTs --
16         ELIZABETH HOLMES:  Yes.
17         ROGER PARLOFF:  -- or --
18         ELIZABETH HOLMES:  Yes.  Yes.
19         ROGER PARLOFF:  Okay.  And is it -- is 1,000 the
20    right, or -- or 1,200, is that a better number or --
21         ELIZABETH HOLMES:  Um --
22         ROGER PARLOFF:  Maybe 1,000 then?
23         ELIZABETH HOLMES:  Yeah.  I think -- I think if
24    you say more than a thousand --
25         ROGER PARLOFF:  Yeah.
```

```
 1            ELIZABETH HOLMES:  -- that's -- that's a good
 2     reference point for it.
 3            ROGER PARLOFF:  Okay.  And what is the
 4     difference then between the -- the 200 that are listed
 5     and the 1,000 you feel comfortable you can do?
 6            ELIZABETH HOLMES:  Yeah, absolutely.  So this
 7     gets into some of what we were talking about before in
 8     terms of, you know, when we do venipunctures and those
 9     types of things.
10            ROGER PARLOFF:  Oh, uh-huh.
11            ELIZABETH HOLMES:  So it is more that we have
12     operationalized a certain set of tests, expecting a
13     certain set of ordering patterns with certain sets of
14     inventory and work flows for those tests that are most
15     commonly done.
16            ROGER PARLOFF:  Uh-huh.
17            ELIZABETH HOLMES:  And so those ones on the
18     website are the ones that are most commonly done.
19            ROGER PARLOFF:  I see.  Okay.
20            ELIZABETH HOLMES:  And so those are the ones
21     that -- that we've brought up first.
22            ROGER PARLOFF:  I see.
23            ELIZABETH HOLMES:  But we are adding to it, and
24     in fact, before the article comes out, we may have a new
25     batch that is going on the website -- and I'm going to
```

```
 1    add this to my list here --
 2            ROGER PARLOFF:  Uh-huh.
 3            ELIZABETH HOLMES:  -- yeah, which is a whole set
 4    of the infectious disease tests --
 5            ROGER PARLOFF:  Oh, wow.
 6            ELIZABETH HOLMES:  -- which are relevant in the
 7    context of the Helfet conversations.
 8            ROGER PARLOFF:  Yes.  Yeah.
 9            ELIZABETH HOLMES:  So as we, sort of,
10    operationalize more areas like that, then that's when we
11    add them to the website.
12            ROGER PARLOFF:  Okay.
13            ELIZABETH HOLMES:  And the -- I should clarify
14    the word "operationalize."  Effectively what I mean by
15    that is, if someone sends a test to the lab, we can run
16    it, even if the test is not on the website.
17            ROGER PARLOFF:  Uh-huh.
18            ELIZABETH HOLMES:  However, we're not actively
19    publishing that we have that test because we have focused
20    on the core set that are on the website for how we've
21    operationalized the laboratory today.  But we do have the
22    ability to -- to do tests that are not on the website,
23    and we do do that.  I mean, there's patients who come
24    into our collection centers, and they have orders for
25    tests that are not on the website.  And we do handle it.
```

TR-002414

```
 1              ROGER PARLOFF:  Okay.  And -- and not to -- not
 2   to belabor this too much, but I guess I -- I -- how --
 3   how -- how does it help to not have -- you know, to have
 4   a small Vacutainer as opposed to a -- a nanotainer for
 5   the ones that aren't operationalized?  How would that
 6   help you?  I don't understand.
 7              ELIZABETH HOLMES:  So off the record --
 8              ROGER PARLOFF:  Yeah.
 9              ELIZABETH HOLMES:  -- the way it helps is that
10   if you remember those devices that you saw in the lab --
11              ROGER PARLOFF:  Uh-huh.
12              ELIZABETH HOLMES:  -- they all have those
13   cartridges that go into them --
14              ROGER PARLOFF:  Uh-huh.
15              ELIZABETH HOLMES:  -- and we pre-configure those
16   cartridges based on the ordering patterns that we see.
17   So if, for example, someone orders one of those specialty
18   tests and we've not built out all the inventory of
19   cartridges -- because, ultimately, we're going to have
20   thousands of cartridge types that we use --
21              ROGER PARLOFF:  Huh.
22              ELIZABETH HOLMES:  -- then we would need to get
23   a second cartridge, which is dedicated just for that
24   specialty type.
25              ROGER PARLOFF:  Huh.
```

TR-002415

SER-32

```
 1              ELIZABETH HOLMES:  And so it is a little bit
 2     more blood.
 3              ROGER PARLOFF:  I see.
 4              ELIZABETH HOLMES:  Not a lot of blood, but it is
 5     a little bit more that we can use for a second cartridge.
 6              Now, that gets into certain -- the whole thing
 7     about how the devices work, which we don't really want to
 8     get into, which is why --
 9              ROGER PARLOFF:  I see.
10              ELIZABETH HOLMES:  -- when you asked me that
11     question the first time --
12              ROGER PARLOFF:  Okay.
13              ELIZABETH HOLMES:  -- I sort of answered it by
14     saying, you know, the -- those core tests that
15     we've "operationalized" the lab around, we have the
16     ability to do other tests --
17              ROGER PARLOFF:  Uh-huh.
18              ELIZABETH HOLMES:  -- but they're more specialty
19     tests, and so we don't list them on our website, even
20     though we can do them if they're sent in because our main
21     focus and our volume right now is on those other tests.
22              ROGER PARLOFF:  I see.  And, eventually, those
23     will be -- you'll be able to do --
24              ELIZABETH HOLMES:  Yes.
25              ROGER PARLOFF:  -- it the normal way?
```

TR-002416

**SER-33**

```
 1              ELIZABETH HOLMES:  Yeah.  Because we're just
 2   building out, you know, huge permutations of all of those
 3   different ordering patterns.
 4              ROGER PARLOFF:  Okay.  And then, also, I -- I --
 5   I know this -- I think we've covered this, but I just --
 6   you know, as I walked around the Quest Diagnostics lab,
 7   --
 8              ELIZABETH HOLMES:  Yes.
 9              ROGER PARLOFF:  -- you know, there were these --
10   there was automated chemistry.  There was hematology.
11   There was microbiology that was like petri dishes --
12              ELIZABETH HOLMES:  Yep.
13              ROGER PARLOFF:  -- TB, parasites, mycology,
14   bacteriology.  Then there was vitamin D.  Then there was
15   anatomical pathology, which I think was tissues.  They
16   had slides.  There were precancerous lesions from -- you
17   know, I guess, Pap smears --
18              ELIZABETH HOLMES:  Uh-huh.
19              ROGER PARLOFF:  -- testing for STD, HPV.  Then
20   there was a histology lab.  All of this is stuff you can
21   do?
22              ELIZABETH HOLMES:  Yes.
23              ROGER PARLOFF:  Okay.  It's -- it's so
24   incredible.
25              ELIZABETH HOLMES:  Well, it's --
```

```
 1          ROGER PARLOFF:  Yeah?  Okay.
 2          ELIZABETH HOLMES:  I mean, it's -- it's one of
 3  those -- those special things.  When you apply technology
 4  and software towards solving problems that humans
 5  otherwise did in a much --
 6          (End transcription of Trial Exh. 5474AB2)
 7                    ---oOo---
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TR-002418

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 5475A
 2                  RECORDING DATE: April 8, 2014
 3                       DURATION: 2:18
 4                     (Begin transcription)
 5                         ---oOo---
 6
 7          ROGER PARLOFF:  You -- you were in the middle of
 8    saying that two other rev -- revolutionary --
 9          ELIZABETH HOLMES:  Aspects --
10          ROGER PARLOFF:  -- films --
11          ELIZABETH HOLMES:  Yeah.  So -- so I always
12    think about this in terms of the mission and the context
13    of access to actionable information.  And so -- so we
14    talked about some of the -- the potential for
15    revolutionary impact in terms of the access points.  And
16    the actionable information equally has the potential, we
17    believe, to -- to have a revolutionary impact.
18          And so -- so the first element of that is being
19    able to do all of these tests, not just from a
20    microsample but at the highest level of quality.  So
21    being a -- a certified lab that provides the oversight of
22    pathologists and the infrastructure to ensure quality so
23    that our coefficient of variation on those tests is very
24    low.  And -- and we've talked about some of our
25    initiatives with respect to --
```

TR-002419

SER-36

```
 1            ROGER PARLOFF:  How do they compare to the
 2   standards?
 3            ELIZABETH HOLMES:  I can show you.  And I would
 4   be happy to give you any of this data, if you were
 5   interested in it.  Let's see.  The first step is turning
 6   the computer on.  There we go.
 7            ROGER PARLOFF:  And how is it possible to
 8   have -- is it -- is this, again, just to have so much
 9   better eco -- is it -- is it the fact that there's less
10   manual and --
11            ELIZABETH HOLMES:  It's a big piece --
12            ROGER PARLOFF:  -- there's more uniformity
13   and --
14            ELIZABETH HOLMES:  It's automated.
15            ROGER PARLOFF:  Uh-huh.
16            ELIZABETH HOLMES:  Yeah.  So less manual
17   operator, less variabilities that are affecting the
18   sample processing --
19            ROGER PARLOFF:  Uh-huh.
20            ELIZABETH HOLMES:  -- because it is so
21   controlled.
22            ROGER PARLOFF:  Uh-huh.
23            ELIZABETH HOLMES:  And -- and -- and then, also,
24   the automation in and of itself allows for very
25   repeatable, you know, high-performance --
```

TR-002420

SER-37

| | |
|---|---|
| 1 | (End transcription of Trial Exh. 5475A) |
| 2 | ---oOo--- |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 5477A
 2                  RECORDING DATE: February 2, 2015
 3                        DURATION: 0:43
 4                     (Begin transcription)
 5                          ---oOo---
 6
 7         ELIZABETH HOLMES:  The -- the centralized lab
 8   model is more of our choice, and we did that because I
 9   believe that having the oversight of the pathologist is
10   central in ensuring that we generate actionable
11   information, which fundamentally means information of the
12   highest quality.
13         ROGER PARLOFF:  Uh-huh.
14         ELIZABETH HOLMES:  And so -- so if the choice is
15   either you have that oversight and these trained
16   personnel responsible and accountable for the integrity
17   of the results or not, we'd rather have it.
18         ROGER PARLOFF:  Huh-uh.
19         ELIZABETH HOLMES:  And so -- so we -- we want
20   that in the context of the way in which we operate.
21         (End transcription of Trial Exh. 5477A)
22                          ---oOo---
23
24
25
```

TR-002422

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 5478A2

 2                   RECORDING DATE: April 7, 2014

 3                        DURATION: 3:06

 4                     (Begin transcription)

 5                          ---oOo---

 6          ROGER PARLOFF:  Are you doing stuff overseas

 7   or -- or -- already?

 8          ELIZABETH HOLMES:  We have done --

 9          ROGER PARLOFF:  In those --

10          ELIZABETH HOLMES:  -- work overseas for

11   pharmaceutical companies and a little bit with foreign

12   governments in the past.

13          ROGER PARLOFF:  Uh-huh.

14          ELIZABETH HOLMES:  But, right now, we've got our

15   work cut out for us here.

16          ROGER PARLOFF:  Obviously, you -- you have a

17   number of military people on your board.  What's -- what

18   types of things are they seeing in -- in what you're

19   doing?

20          ELIZABETH HOLMES:  And you're also welcome to

21   talk to them, if you would like to, any of these guys.

22          ROGER PARLOFF:  Yes.

23          ELIZABETH HOLMES:  I'm going to talk to Henry

24   Kissinger also, and I might have him meet with you when

25   you're back in New York --
```

```
 1            ROGER PARLOFF:  Oh, that would --
 2            ELIZABETH HOLMES:  -- and talk about this, yeah.
 3            ROGER PARLOFF:  Oh, that'd be fantastic.
 4            ELIZABETH HOLMES:  Yeah.  The led -- it's a very
 5    similar application to the hospital application, both in
 6    terms of the emergency room and trauma --
 7            ROGER PARLOFF:  Uh-huh.
 8            ELIZABETH HOLMES:  -- as well as just the cost
 9    of health care.  I mean, if you talk to these senior
10    military leaders, they'll tell you that the cost of
11    health care is a major problem for them in terms of their
12    own budgets.  And -- and the way that we can facilitate
13    savings both on a direct out-of-pocket basis as well as a
14    fully-loaded basis in terms of what "realtime" data means
15    with respect to being able to make better decisions
16    around how you triage someone and then around the time it
17    takes to triage them, the time they're in a bed, whether
18    you give them the right intervention the first time or
19    whether you have to go through this back-and-forth
20    process, it adds up really fast.  And so -- so that's an
21    element of it.
22            And then there's -- there's military-specific
23    applications, too, that are -- that are quite promising
24    when you think about what it means to be on a mission or
25    in the middle of nowhere and need, you know, access to
```

TR-002424

SER-41

```
 1   technology.
 2            ROGER PARLOFF:  Huh.
 3            ELIZABETH HOLMES:  And that -- that's something
 4   that, I mean, I'm personally very passionate about
 5   because I see it as our way to serve, you know, in
 6   whatever small way we can.
 7            ROGER PARLOFF:  What would it -- like beyond
 8   what -- whatever you have in your centralized location in
 9   Phoenix, say with all the -- is that something that you
10   can put out in the field, you know, when we're fighting
11   in Iraq, or is that too -- too large?
12            ELIZABETH HOLMES:  Yeah, no, we can.  Yeah.
13            ROGER PARLOFF:  So that's the sort of thing --
14            ELIZABETH HOLMES:  Yep.
15            ROGER PARLOFF:  -- we're talking about?
16            ELIZABETH HOLMES:  Yep, exactly.
17            (End transcription of Trial Exh. 5478A2)
18                        ---oOo---
19
20
21
22
23
24
25
```

TR-002425

SER-42

```
 1            AUDIO TRANSCRIPTION OF: Trial Exh. 5480A

 2                 RECORDING DATE: April 10, 2014

 3                      DURATION: 1:47

 4                   (Begin transcription)

 5                        ---oOo---

 6

 7            ROGER PARLOFF:  In your case, would a -- I mean,

 8     I -- it doesn't seem like a human being would be pulling

 9     out the stopper of -- of this little tiny thing.

10            ELIZABETH HOLMES:  Yeah, no.  It's -- there's a

11     lot of automation around it.

12            ROGER PARLOFF:  Okay.

13            ELIZABETH HOLMES:  And that's -- and that's part

14     of where we focused on making sure we minimized human

15     error.

16            ROGER PARLOFF:  Okay.

17            ELIZABETH HOLMES:  Yeah.

18            ROGER PARLOFF:  And as far as the fact that you

19     -- it must be introduced into one of your devices --

20            ELIZABETH HOLMES:  Uh-huh.

21            ROGER PARLOFF:  -- can I say that?  I -- that --

22            ELIZABETH HOLMES:  That it's introduced into one

23     of our -- yeah.  I mean, I think -- I think we don't want

24     to get into how many devices we have or --

25            ROGER PARLOFF:  Okay.
```

```
1          ELIZABETH HOLMES:  -- you know, any of that kind
2   of stuff, but -- meaning, you know, types of devices or
3   any of those types of things.
4          ROGER PARLOFF:  Uh-huh.
5          ELIZABETH HOLMES:  But, yes, it is -- it is
6   probably -- we call it an "analytical system," which
7   is -- analytical system, which is -- which is basically,
8   you know, a piece of hardware --
9          ROGER PARLOFF:  Okay.
10         ELIZABETH HOLMES:  -- that's used for -- for
11  processing the samples.
12         ROGER PARLOFF:  And I take it, though, that it
13  takes a lot -- up a lot less space than what an ordinary
14  lab test would entail.
15         ELIZABETH HOLMES:  It's a small -- much smaller
16  footprint, yeah.
17         ROGER PARLOFF:  Okay.
18         ELIZABETH HOLMES:  Yeah.
19         ROGER PARLOFF:  Do you know, currently do most
20  labs have some sort of large machine, or is it more a
21  matter of --
22         ELIZABETH HOLMES:  Yes.
23         ROGER PARLOFF:  -- you know, squirting it into
24  various --
25         ELIZABETH HOLMES:  There's many machines, and
```

TR-002427

**SER-44**

```
 1   they're very big.
 2           ROGER PARLOFF:  I see.
 3           ELIZABETH HOLMES:  They take up a huge
 4   footprint.
 5           ROGER PARLOFF:  I see.
 6           ELIZABETH HOLMES:  So there's a very significant
 7   amount of overhead that's associated with that.
 8           (End transcription of Trial Exh. 5480A)
 9                       ---oOo---
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TR-002428

SER-45

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 5473B2

 2                  RECORDING DATE: May 12, 2014

 3                      DURATION: 4:53

 4                  (Begin transcription)

 5                        ---oOo---

 6

 7         ROGER PARLOFF:  It -- can you tell me again,

 8    when you do perform venipunctures, why is that at the

 9    moment?

10         ELIZABETH HOLMES:  There's a variety of reasons.

11    I think the --

12         ROGER PARLOFF:  Yeah.

13         ELIZABETH HOLMES:  -- the biggest reason is that

14    we're scaling.  And as we're building out this

15    infrastructure, we're also building out our inventory and

16    our capacity in terms of the number of samples that we

17    can handle at any given point in time.  And so we're

18    supplementing venipuncture with our microsamples from

19    capillary samples, or finger stick, to handle that

20    volume.  And that's the -- the highest level.

21         But, you know, if you break that down, there's

22    some situations in which we're doing venipuncture for

23    physicians because they don't -- they're -- the cost is

24    such a big deal for them that the sample type comes

25    second.  There's some times where we're --
```

TR-002429

SER-46

```
 1            ROGER PARLOFF:  Does that mean -- you mean,
 2    they're doing it on premises and sending it to you, or
 3    they even -- even if they send a patient to Walgreens,
 4    they prefer that it be done by venipuncture?
 5            ELIZABETH HOLMES:  It's -- it's rare that they
 6    prefer venipuncture, but that they will send large
 7    volumes of samples to us that are collected through
 8    venipuncture for the purposes of processing in our lab.
 9            ROGER PARLOFF:  Oh, okay.  Because it's cheaper,
10    they'll send you --
11            ELIZABETH HOLMES:  That's right.
12            ROGER PARLOFF:  Even though they've already done
13    it by venipuncture?
14            ELIZABETH HOLMES:  That's right.
15            ROGER PARLOFF:  But I -- what would be the
16    situation where you would have the phlebotomist at
17    Walgreens use venipuncture?
18            ELIZABETH HOLMES:  Yeah.  Yeah.  So -- so at
19    Walgreens, I think it's what I said before.  The biggest
20    reason is just as we're bringing up more and more tests
21    and building out inventory and capacity in our lab --
22            ROGER PARLOFF:  Uh-huh.
23            ELIZABETH HOLMES:  -- depending on the volumes
24    that we're handling and how fast we're opening new
25    stores, we'll -- we'll use venipuncture in addition to
```

TR-002430

**SER-47**

```
 1    the microsamples, just to handle the volume of samples
 2    that we're processing.
 3            But it's -- I mean, there -- there are
 4    situations -- it is not common where we'll also, you
 5    know, for a physician demonstrate the correlation between
 6    venipuncture and finger stick and --
 7            ROGER PARLOFF:  So --
 8            ELIZABETH HOLMES:  -- and then, I mean --
 9            ROGER PARLOFF:  For -- for a skeptical
10    physician?
11            ELIZABETH HOLMES:  Yeah.  Or just to show our
12    performance.
13            ROGER PARLOFF:  I see.
14            ELIZABETH HOLMES:  You asked the question about
15    doing publications.  The main way we answer questions
16    whenever we meet a physician is we tell them, "Send us
17    some patients, and we'll show you the data."  And
18    that's -- you know, the data -- the data talks.
19            ROGER PARLOFF:  Oh.
20            ELIZABETH HOLMES:  So -- so we do do that.  But
21    -- but I think the number one reason is just as we're
22    building out volume and capacity, supplementing our
23    capacity with venipuncture.
24            ROGER PARLOFF:  So I -- I guess I don't -- I
25    don't understand why that would save -- is it that you --
```

TR-002431

SER-48

```
 1   you would not yet have that particular test available
 2   using your -- your platform or -- or --
 3            ELIZABETH HOLMES:  It -- it's more how -- how we
 4   configure our own analytical systems and the -- the
 5   capacity that we have within those systems at any given
 6   point in time.  And it -- it evolves, and it's changing.
 7   You know, I mean, every week we have more and more
 8   capacity.  But -- but it's primarily a capacity question
 9   of how many samples we can handle and how many tests we
10   can handle at any given point in time.
11            ROGER PARLOFF:  I see.  And if you can't handle
12   them using the -- the nanotainer, how do you handle them?
13   Or do you make a conventional sample from the -- or do
14   you make a nanotainer sample from the conventional-sized?
15            ELIZABETH HOLMES:  Well, we -- we definitely
16   make a smaller sample from the conventional-sized, and
17   that was the point that I made earlier about the fact
18   that, when we do collect venipuncture, we take a smaller
19   sample than --
20            ROGER PARLOFF:  Oh, I see.
21            ELIZABETH HOLMES:  -- traditionally required.
22   And we also use the smallest needle.
23            ROGER PARLOFF:  I see.
24            ELIZABETH HOLMES:  It is a -- a tiny butterfly
25   needle that is the least painful.  And so -- so it is --
```

TR-002432

**SER-49**

```
 1   it is a smaller volume.
 2              ROGER PARLOFF:  Okay.
 3              ELIZABETH HOLMES:  It's -- I mean, I think
 4   our -- our biggest, sort of, point on that is our whole
 5   business is about eliminating the need for people to do
 6   venipuncture --
 7              ROGER PARLOFF:  Uh-huh.
 8              ELIZABETH HOLMES:  -- unless they want to.  In
 9   which case, they can.  But -- but that -- this -- I mean,
10   our -- everything we do is about eliminating that.
11              (End transcription of Trial Exh. 5473B2)
12                        ---oOo---
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 5473C
 2                  RECORDING DATE: May 12, 2014
 3                       DURATION: 2:00
 4                    (Begin transcription)
 5                         ---oOo---
 6
 7          ROGER PARLOFF:  -- are interested in, if -- if
 8      it would be possible, a Phoenix lab visit.
 9          ELIZABETH HOLMES:  Yes.  So Phoenix's lab is not
10      operational.
11          ROGER PARLOFF:  Oh.
12          ELIZABETH HOLMES:  All of those samples are
13      still being processed here in Palo Alto.
14          ROGER PARLOFF:  Oh, uh-huh.
15          ELIZABETH HOLMES:  And -- and then we've been
16      thinking about this in terms of -- and I guess, again, in
17      line of this conversation, the best way to handle the
18      whole device conversation and -- I mean, what the lab
19      looks like -- remember you saw that bank of devices that
20      we sort of went up to in the lab upstairs?
21          ROGER PARLOFF:  Yeah.
22          ELIZABETH HOLMES:  Well, I can -- it's
23      literally -- and they were on sort of a -- a stack of
24      shelves.
25          ROGER PARLOFF:  Uh-huh.
```

TR-002434

SER-51

```
 1              ELIZABETH HOLMES:  So the lab is basically --
 2   probably four of those stacks with devices on both sides.
 3   So you're -- if you'd like to see it -- and I was trying
 4   to remember whether I walked you through it or not.  It
 5   was downstairs -- you're welcome to come back out here
 6   and see it.  But --
 7              ROGER PARLOFF:  I see.  But I've basically seen
 8   it.
 9              ELIZABETH HOLMES:  You've seen it.
10              ROGER PARLOFF:  I see.
11              ELIZABETH HOLMES:  And it is basically just a
12   bank of those devices.
13              ROGER PARLOFF:  Okay.  So it would be about how
14   many of those devices in all?
15              ELIZABETH HOLMES:  There's probably -- I mean,
16   it -- our -- so we have actually several labs here.  Our
17   biggest one probably has, like, 50 of them.  And I -- I
18   would put that off the record --
19              ROGER PARLOFF:  Yeah.
20              ELIZABETH HOLMES:  -- because we don't -- we
21   don't want to publish that.  And then we have another
22   bank of about 200 of them, but that is sort of split up
23   across multiple facilities that we're starting -- we're
24   going to be moving the lab here to Newark.  So some of
25   them are going to go to 200 -- I'm sorry.  The 200 are
```

TR-002435

**SER-52**

```
 1    going to go to Newark, and then some of the ones here are

 2    going to go to Phoenix.

 3              ROGER PARLOFF:  I see.

 4              (End transcription of Trial Exh. 5473C)

 5                        ---oOo---

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

TR-002436

SER-53

```
 1            AUDIO TRANSCRIPTION OF: Trial Exh. 5473D2
 2                 RECORDING DATE: May 12, 2014
 3                      DURATION: 2:16
 4                   (Begin transcription)
 5                        ---oOo---
 6
 7         ROGER PARLOFF:  Okay.  We're recording again.
 8         ELIZABETH HOLMES:  Yep.
 9         ROGER PARLOFF:  Is the sensitivity around -- and
10    this can be off the record, obviously.  Is the
11    sensitivity around the word "device" the regulatory
12    sensitivity around the word device?  Is that -- or is it
13    that you -- you don't want -- is it more in the nature of
14    a trade secret --
15         ELIZABETH HOLMES:  Yeah.
16         ROGER PARLOFF:  -- that you don't want them to
17    know that you're at the --
18         ELIZABETH HOLMES:  Yeah.
19         ROGER PARLOFF:  -- analyzer phase yet?
20         ELIZABETH HOLMES:  That's right.  It -- it's
21    more in the context of the trade secret.  We're still
22    filing a lot of patents around it.  The fact that we have
23    a single device that can perform any test --
24         ROGER PARLOFF:  Huh.
25         ELIZABETH HOLMES:  -- is a -- is a big deal.
```

TR-002437

SER-54

1    And so, I mean, if we think about this in terms of, you

2    know, this year's piece and next year's piece, if you

3    will --

4            ROGER PARLOFF:  Uh-huh.

5            ELIZABETH HOLMES:  -- the story that we're

6    telling now is on all the elements of what we're doing

7    with respect to the ability for the first time to do

8    these tests from the -- what we call the "microsample" --

9            ROGER PARLOFF:  Yeah, uh-huh.

10           ELIZABETH HOLMES:  -- and it's impact to our

11   system.  And then the next story would be the fact that

12   it's done by this device that can do any test and that

13   it's possible to decentralize that device while

14   maintaining the quality along the lines that you -- you

15   saw Resendorff talk about in that article.

16           ROGER PARLOFF:  Uh-huh.

17           ELIZABETH HOLMES:  Which, hopefully, we have the

18   opportunity at some point to tell that story with you.

19   But -- but that -- those are the two -- those are, kind

20   of, the two milestones.  And we want to have the rest of

21   this year to be able to execute on this and then, in the

22   same way as this announcement that we've made right is

23   very disruptive, make another one --

24           ROGER PARLOFF:  Uh-huh.

25           ELIZABETH HOLMES:  -- that's very disruptive.

TR-002438

SER-55

1    Because, I mean, a -- a public company would probably, if

2    they came up with a business like this with shipping

3    these microsamples around, not completely cannibalize

4    their own business in it; right?  But what we're going to

5    do with that announcement is completely cannibalize this

6    business of shipping microsamples.

7            ROGER PARLOFF:  Because -- because you'll be

8    able to do so much at the location?

9            ELIZABETH HOLMES:  Exactly.

10           (End transcription of Trial Exh. 5473D2)

11                        ---oOo---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TR-002439

SER-56

```
 1            AUDIO TRANSCRIPTION OF: Trial Exh. 5481A
 2                RECORDING DATE: July 1, 2015
 3                   DURATION: 3:14
 4                 (Begin transcription)
 5                     ---oOo---
 6
 7         ROGER PARLOFF:  You have a high-complexity lab
 8    now in Newark, California, and you have -- is it a
 9    medium-complexity lab in Scottsdale?
10         ELIZABETH HOLMES:  That's right.  Yeah.  It's
11    a -- it's called a "moderate-complexity lab."
12         ROGER PARLOFF:  Okay.
13         ELIZABETH HOLMES:  And the difference is that to
14    run laboratory-developed tests --
15         ROGER PARLOFF:  Uh-huh.
16         ELIZABETH HOLMES:  -- you need to be a
17    high-complexity lab.
18         ROGER PARLOFF:  Uh-huh.
19         ELIZABETH HOLMES:  And that gives you the
20    ability to run laboratory-developed tests.
21         ROGER PARLOFF:  Uh-huh.
22         ELIZABETH HOLMES:  And so in Newark, we are a
23    high-complexity, which means that you have a series of
24    requirements and processes that you have to follow,
25    including quality controls and -- and -- and other
```

TR-002440

SER-57

```
 1    controls around how you ensure the integrity of the tests
 2    that we follow.
 3              ROGER PARLOFF:  Uh-huh.
 4              ELIZABETH HOLMES:  And we have all of our
 5    lab-developed tests in the Newark lab.
 6              ROGER PARLOFF:  Okay.  Now, I thought all of
 7    your tests were, sort of, considered lab-developed tests.
 8              ELIZABETH HOLMES:  We also -- one of the things
 9    that has happened this year is that we have gone live
10    with what we were calling a reference lab service.  So
11    what this is, is that when you think about what Theranos
12    does, as important as the small sample has been the low
13    cost, and it is what has really been transformative for a
14    lot of people --
15              ROGER PARLOFF:  Uh-huh.
16              ELIZABETH HOLMES:  -- in the context of access.
17              ROGER PARLOFF:  Uh-huh.
18              ELIZABETH HOLMES:  And it is also what seems to
19    be getting the other laboratory companies most excited.
20    The way this lab business works is that the people who
21    either could not afford insurance or could not afford
22    good insurance have been charged the most --
23              ROGER PARLOFF:  Uh-huh.
24              ELIZABETH HOLMES:  -- for lab testing, which
25    makes absolutely no sense to us.
```

TR-002441

```
1              ROGER PARLOFF:  Uh-huh.
2              ELIZABETH HOLMES:  And then the tests, which are
3    considered specialty or esoteric or rare, have price tags
4    that are many, many multiples of what a routine test
5    would be.
6              ROGER PARLOFF:  Yeah.
7              ELIZABETH HOLMES:  So, for example, you'll see
8    specialty tests that are thousands of dollars.
9              ROGER PARLOFF:  Uh-huh.
10             ELIZABETH HOLMES:  And as we've looked at this
11   and our mission of access, it became clear to us that one
12   of the most important things that we could do is make
13   sure that we had an end-to-end comprehensive menu that
14   took those $5,000 tests and brought them down to less
15   than $100, for example.
16             ROGER PARLOFF:  Okay.
17             ELIZABETH HOLMES:  And so we have.  And what we
18   did is we've effectively included the full reference lab
19   processing abilities, which means that we do run
20   traditional venipunctures --
21             ROGER PARLOFF:  Uh-huh.
22             ELIZABETH HOLMES:  -- sometimes on traditional
23   reference equipment.  But, I mean, as a company,
24   obviously our business and what we do here in 1701 every
25   day, is work to get more and more and more tests running
```

TR-002442

SER-59

```
 1   on capillary samples and --
 2            (End transcription of Trial Exh. 5481A)
 3                       ---oOo---
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TR-002443

**SER-60**

```
1              AUDIO TRANSCRIPTION OF: Trial Exh. 5481D
2                   RECORDING DATE: JULY 1, 2015
3                        DURATION: 1:15
4                     (Begin transcription)
5                          ---oOo---
6
7         ELIZABETH HOLMES:  What you'll see -- for
8   example, when Dan shows you these validation reports,
9   when we hopefully get a little bit of your blood this
10  afternoon -- or you can take Dan's blood.  It may not be
11  a bad thing for him.
12        ROGER PARLOFF:  Uh-huh.
13        ELIZABETH HOLMES:  -- is that we have these
14  validation reports for these tests that go back many
15  years.  So I think he'll show you one.  One of the tests
16  they're going to do today is potassium, and the potassium
17  report is from, I think, 2012; right?  And we have a lot
18  of tests that we've validated on our system a long time
19  ago --
20        ROGER PARLOFF:  Uh-huh.
21        ELIZABETH HOLMES:  -- but we haven't brought up
22  into the lab yet or we're continually bringing up into
23  the lab.  And so, basically, when we developed our
24  hardware, like this device that's gone through the
25  clearance process, we developed each of the hardware
```

TR-002444

SER-61

```
 1   systems that we have to be able to work on a very broad
 2   range of tests so the test -- the systems can run all
 3   these tests.  But the speed which -- with which we then
 4   bring up new and more fingerstick-based tests in our lab
 5   is something that basically we're constantly working to
 6   put more and more on the platform.  So the net is -- the
 7   technology is capable of running all these tests.  We --
 8           (End transcription of Trial Exh. 5481D)
 9                        ---oOo---
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TR-002445

SER-62

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 5481B
 2                   RECORDING DATE: July 1, 2015
 3                        DURATION: 0:29
 4                     (Begin transcription)
 5                         ---oOo---
 6
 7         ROGER PARLOFF:  So even when you use
 8    venipuncture, it's still a lot cheaper using your system?
 9         ELIZABETH HOLMES:  Absolutely.
10         ROGER PARLOFF:  Yeah.
11         ELIZABETH HOLMES:  And, also, often when we're
12    doing venipuncture, a lot less sample, too, because
13    there's only a few tests that will actually run on the
14    venipuncture.  So the venipuncture generally is about 10
15    to 30 times less blood than what would traditionally be
16    required --
17         ROGER PARLOFF:  Uh-huh.
18         ELIZABETH HOLMES:  -- for venipuncture.  And --
19         (End transcription of Trial Exh. 5481B)
20                         ---oOo---
21
22
23
24
25
```

TR-002446

SER-63

```
 1            AUDIO TRANSCRIPTION OF: Trial Exh. 5481C
 2                 RECORDING DATE: July 1, 2015
 3                    DURATION: 2:48
 4                  (Begin transcription)
 5                      ---oOo---
 6
 7            ROGER PARLOFF:  Can I say at this point that the
 8   machine runs some sort of pro -- proprietary method of
 9   examining DNA or RNA analogous to PCR?
10            ELIZABETH HOLMES:  Yes.  And we're -- obviously,
11   we've never released that.
12            ROGER PARLOFF:  Yeah.
13            ELIZABETH HOLMES:  But I am okay with doing that
14   in this piece.
15            ROGER PARLOFF:  Okay.  Great.
16            ELIZABETH HOLMES:  And you can also say that we,
17   you know, created a lab in the last three hours at Boies
18   Schiller to do your Ebola test.  And David -- and David
19   will be proud.  The -- the -- the only thing that I want
20   to not be explicit about in this piece -- and --
21            ROGER PARLOFF:  Uh-huh.
22            ELIZABETH HOLMES:  -- I'll tell you how we did
23   it.  What we're going to do for you today is we've
24   brought multiple devices, and one of them is gonna run
25   the chemical chemistry test, like the potassium, and the
```

TR-002447

SER-64

```
 1    other one is gonna run your Ebola test.
 2              ROGER PARLOFF:  Uh-huh.
 3              ELIZABETH HOLMES:  And what we can go into in
 4    this piece is that Theranos has these systems.  These
 5    systems are capable of running fingerstick samples.  The
 6    system, like you just said about Ebola, is capable of
 7    running these DNA measurements.  It is capable of running
 8    the clinical chemistry measurements.
 9              ROGER PARLOFF:  Uh-huh.
10              ELIZABETH HOLMES:  It is capable of running all
11    these other things.  I don't want to explicitly say that
12    the exact same system is running both the clinical
13    chemistry and the DNA and the immunochemistry and the
14    other stuff, if that makes sense.
15              ROGER PARLOFF:  So you don't want people to know
16    that it is really the exact same machine --
17              ELIZABETH HOLMES:  Right.
18              ROGER PARLOFF:  -- just with different reagents
19    or whatever?
20              ELIZABETH HOLMES:  Exactly.  And we will release
21    that, I mean, if we have a chance to do a follow-on piece
22    with you.  It is just that there's one set of patent
23    claims that we're still taking through the filing process
24    that I just want to make sure get out before we make that
25    explicit statement.  So you -- you will be able to say
```

TR-002448

SER-65

1    that you saw "systems," and as long as there's always an

2    "S" next to that --

3              ROGER PARLOFF:  Uh-huh.

4              ELIZABETH HOLMES:  -- it will be ambiguous as to

5    whether it was one or multiple.  And that's fine.

6              ROGER PARLOFF:  Okay.  Somebody attentive, which

7    we probably don't need to worry, but somebody attentive

8    out there might -- might say, "Well, wait a minute.

9    What" -- "So what" -- "What machine was cleared today if

10   there's multiple systems?"

11             ELIZABETH HOLMES:  Yeah.  I -- I think what we

12   do is we don't speak to whether there's multiple systems

13   or not.  You don't need to say there's multiple systems.

14   You just don't need to explicitly say that there's one.

15             ROGER PARLOFF:  Okay.

16             ELIZABETH HOLMES:  And we say that this Theranos

17   device was cleared today.  And then you can say, "I've

18   seen, you know, Theranos devices running clinical

19   chemistry.  I've seen Theranos devices running this DNA

20   method"; right?

21             ROGER PARLOFF:  Okay.

22             (End transcription of Trial Exh. 5481C)

23                        ---oOo---

24

25

TR-002449

**SER-66**

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 1647A
 2                  RECORDING DATE: April 7, 2014
 3                       DURATION: 0:51
 4                    (Begin transcription)
 5                          ---oOo---
 6
 7         ROGER PARLOFF:  The -- the blood never leaves
 8    the premises of -- you know, in Phoenix or -- or in --
 9    it's just the data that comes here and is an -- analyzed,
10    is it?
11         ELIZABETH HOLMES:  Well, there's both.
12         ROGER PARLOFF:  Uh-huh.
13         ELIZABETH HOLMES:  The blood does get
14    transported to a certified facility because we don't
15    have --
16         ROGER PARLOFF:  Oh.
17         ELIZABETH HOLMES:  -- the certified facilities
18    inside our collection centers.
19         ROGER PARLOFF:  Oh, okay.
20         ELIZABETH HOLMES:  They're in dedicated places
21    where we have pathologists and other laboratory staff
22    overseeing the testing process.
23         ROGER PARLOFF:  Uh-huh.
24         ELIZABETH HOLMES:  And -- but there is also the
25    transmission of data for remote oversight, and that is a
```

TR-002450

```
 1    piece of -- of what we do.  But we make sure that all of
 2    the testing is done under the oversight of certified
 3    laboratory personnel.
 4              ROGER PARLOFF:  I see.
 5              (End transcription of Trial Exh. 1647A)
 6                        ---oOo---
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

TR-002451

SER-68

```
 1              AUDIO TRANSCRIPTION OF: Trial Exh. 1657A
 2                   RECORDING DATE: April 10, 2014
 3                        DURATION: 0:45
 4                      (Begin transcription)
 5                          ---oOo---
 6
 7           ROGER PARLOFF:  Part of what I'm getting at is
 8      like the military interest in this --
 9           ELIZABETH HOLMES:  Yep.
10           ROGER PARLOFF:  -- that you could have -- that
11      one of these machines on-site would be manageable whereas
12      a conventional machine on-site would be a problem.
13           ELIZABETH HOLMES:  Yeah.  I mean, I think the
14      best way --
15           ROGER PARLOFF:  Is that --
16           ELIZABETH HOLMES:  -- to say that is the ability
17      to significantly decentralize the process; right?  And --
18      and that -- that has implications broadly.  And -- and
19      the military could be one of them, yeah.  So instead of
20      having all the centralized overhead, right, you can --
21      you can distribute the infrastructure.
22           (End transcription of Trial Exh. 1657A)
23                          ---oOo---
24
25
```

TR-002452

SER-69

```
 1            AUDIO TRANSCRIPTION OF: Trial Exh. 1719A

 2               RECORDING DATE: May 12, 2014

 3                   DURATION: 1:19

 4                 (Begin transcription)

 5                     ---oOo---

 6

 7          ROGER PARLOFF:  Yeah.  So, for instance, you

 8    could in effect have the -- the -- the information on

 9    quality control and -- and so on would be continually

10    going back to the lab from the device, and you would have

11    the oversight from the central lab to how the device is

12    being used, even though the device isn't physically on

13    the premises of the lab.  Would it be something like

14    that?

15          ELIZABETH HOLMES:  Well, so off the record,

16    that's exactly right.

17          ROGER PARLOFF:  Okay.

18          ELIZABETH HOLMES:  So that is -- and -- and

19    we'll get into this when we --

20          ROGER PARLOFF:  Yeah.

21          ELIZABETH HOLMES:  -- touch on some of the

22    points you reminded me of in the e-mail you sent over the

23    weekend.  That -- that's our phase-two model, right --

24          ROGER PARLOFF:  Okay.

25          ELIZABETH HOLMES:  -- is to do exactly that.
```

TR-002453

```
 1   Our -- our phase-one model is to put these certified lab
 2   locations in hubs, like you were also describing earlier.
 3            ROGER PARLOFF:  Uh-huh.
 4            ELIZABETH HOLMES:  We don't want to tell the
 5   world about our phase-two model that concisely because --
 6   because we want to be able to execute on our phase-one
 7   model and then have the advantage of having figured that
 8   out --
 9            ROGER PARLOFF:  Uh-huh.
10            ELIZABETH HOLMES:  -- for phase two and being
11   able to make announcements around and, hopefully, maybe
12   being able to do another article with you --
13            ROGER PARLOFF:  Okay.
14            ELIZABETH HOLMES:  -- around that when that
15   comes out.
16            ROGER PARLOFF:  Uh-huh.
17            ELIZABETH HOLMES:  But -- but that's where we're
18   going.
19            (End transcription of Trial Exh. 1719A)
20                       ---oOo---
21
22
23
24
25
```

TR-002454

SER-71

```
 1   STATE OF CALIFORNIA    )
 2                          ) ss.
 3   COUNTY OF SACRAMENTO   )
 4
 5            I hereby certify that the foregoing
 6   transcript is a true record of the audiotaped recording
 7   as reported by me, a duly licensed Certified Shorthand
 8   Reporter in the State of California.
 9            I further certify that I am not interested
10   in the outcome of the said action, nor connected with,
11   nor related to any of the parties in said action, nor to
12   their respective counsel.
13            IN WITNESS WHEREOF, I have hereunto set my
14   hand this 2nd day of December, 2021.
15
16
17
18            AMANDA OSTROWSKI, CSR NO. 13922
19            STATE OF CALIFORNIA
20
21
22
23
24
25
```

TR-002455

SER-72

```
 1            UNITED STATES DISTRICT COURT

 2           NORTHERN DISTRICT OF CALIFORNIA

 3                 SAN JOSE DIVISION

 4

 5    - - - - - - - - - - - - - -

 6   UNITED STATES,              )

 7          Plaintiff,           )   CASE NO.

 8   V.                          )   18-cr-00258-EJD-1

 9   ELIZABETH HOLMES,           )

10          Defendant.           )

11    - - - - - - - - - - - - - -

12

13              AUDIO TRANSCRIPTION OF

14      CNBC:  COULD A BLOOD BATTLE BE BOILING?

15     CRAMER SITS DOWN WITH THE CEO OF THERANOS

16         TO GET THE ANSWERS (MAD MONEY)

17     FILE:  CNBC Mad Money 10-15-2015 Theranos CEO

18          fires back at WSJ I was shocked

19             THURSDAY, OCTOBER 15, 2015

20

21         BEHMKE REPORTING AND VIDEO SERVICES, INC.

22                 BY:  JILL BAIONI, CSR NO. 8812

23                  455 MARKET STREET, SUITE 970

24              SAN FRANCISCO, CALIFORNIA 94105

25                      (415) 597-5600
```

TR-000297

SER-73

```
 1              THURSDAY, OCTOBER 15, 2015

 2

 3         MR. CRAMER:  Lately one of the most exciting

 4   privately-held companies in Silicon Valley has come

 5   under fire.  I'm talking about Theranos.  That's the

 6   diagnostics company with the ultrafast fingerprick

 7   blood testing technology that's aiming to upend the

 8   entire traditional health care establishment by making

 9   it easier, less expensive, and much less uncomfortable

10   for you to get tested for a whole range of conditions.

11         For the last few years Theranos has been

12   viewed as a revolutionary company.  CEO's

13   been powerless next Steve Jobs.  Company's been valued

14   as much as $9 billion its most recent round of

15   fundraising.

16         But Theranos also has its critics.  And just

17   this morning The Wall Street Journal ran a pretty

18   scathing article about the company alleging that the

19   company's proprietary testing devices may be

20   inaccurate and basically accusing Theranos of

21   deceptive practices.

22         The Journal cites a former employee who

23   claimed that of the 240 tests offered by Theranos,

24   only 15 are actually performed on the company's

25   proprietary Edison diagnostic machine.  Vast majority
```

TR-000298

SER-74

```
 1    of the rest being done on traditional lab equipment.
 2            The article was pretty brutal.  But here on
 3    Mad Money we know something.  We know that there are
 4    two sides to every single story, which is why I think
 5    it's important that we speak to Elizabeth Holmes, the
 6    founder and CEO of Theranos, who's coming to us this
 7    afternoon from Boston where she's attending a meeting
 8    of the board of fellows at Harvard Medical School to
 9    give her a chance to answer the charges raised in the
10    article.
11            Ms. Holmes, welcome back to Mad Money.
12            MS. HOLMES:  It's great to be here.  Thank
13    you.
14            MR. CRAMER:  Thank you.
15            Elizabeth, I have to tell you, in all my
16    years I can't recall a private company that I think
17    candidly many have never heard of getting this kind of
18    attention and scrutiny.
19            What do you think's going on here?
20            MS. HOLMES:  This is what happens when you
21    work to change things.  And first they think you're
22    crazy, then they fight you, and then all of a sudden
23    you change the world.
24            And I -- I have to say I -- I personally was
25    shocked to see that The Journal would publish
```

TR-000299

**SER-75**

1    something like this when we had sent them over a
2    thousand pages of documentation demonstrating that the
3    statements in their piece were false.
4            But we're doing things differently and we're
5    working to make a difference, and that means people
6    raise questions.  And that's okay.  But in this case
7    it was pretty disappointing to see that after every
8    single one of the sources that we spoke with who
9    The Journal had contacted told us that the statements
10   that were being attributed to them were false or
11   misleading and the only sources who were left were
12   ones who wouldn't speak with us, who on their own
13   website say that they now do business with Labcorp in
14   their office or in the other case demanded in writing
15   that we pay them in cash up front $2500 for an hour to
16   talk to them about their statements to The Journal --
17           MR. CRAMER:  Did The Journal know --
18           MS. HOLMES:  -- that those things weren't
19   referenced.
20           MR. CRAMER:  -- what you just said?  Did
21   The Journal know everything that you just said before
22   they wrote their article?
23           MS. HOLMES:  Of course.  Absolutely.
24           MR. CRAMER:  Okay.  At the same time, pretty
25   negative article.

TR-000300

SER-76

```
 1          So let me ask you.  I know that you've talked
 2   to us about your partnership with Walgreens, one of
 3   the best retailers out there.  Great drugstore chain.
 4   Cleveland Clinic, one of obviously the most admired
 5   health care facilities.
 6          Did either call you today and say, you know
 7   what, we got to rethink our relationship?
 8          MS. HOLMES:  Absolutely not.  We're
 9   incredibly blessed to have partners who have worked
10   with us, have actually seen our technology.  And
11   unfortunately -- in this case we offered to bring our
12   technology to The Journal offices to show them the
13   technology they were questioning running firsthand,
14   and they denied that request to show it to them.
15          But Cleveland Clinic, Walgreens, so many of
16   the other partners that we have have seen our
17   technology, they've worked with us, they've used our
18   systems.  And they understand what we're doing and
19   they understand that when you try to change things
20   people react to it.
21          MR. CRAMER:  All right.  So let me get this
22   straight.  You offered to bring the test to
23   The Journal.  So presumably you would have been
24   comfortable with, say, a hundred different people at
25   The Journal taking your test, matching them against
```

TR-000301

**SER-77**

```
 1   Quest or Labcorp, and you were perfectly willing to
 2   have that happen.
 3           MS. HOLMES:  Absolutely.  We offered to bring
 4   our devices to their offices.
 5           MR. CRAMER:  And what did they say as a
 6   reason why they didn't want to do that?
 7           MS. HOLMES:  Because the story needed to get
 8   out immediately.
 9           MR. CRAMER:  Well, let's talk about that
10   because --
11           MS. HOLMES:  Even though they had been
12   reporting on it.
13           MR. CRAMER:  They said, again -- 'cause,
14   first of all, it's The Wall Street Journal.  This is
15   not the National Enquirer here.  But they did say that
16   they after -- tried -- they pursued you for an
17   interview for -- for five months.  You declined
18   interview requests from The Journal for more than
19   five months.  Last week the company said she would be
20   available but her schedule didn't allow it before the
21   publication of this article.
22           Why not just sit down with them?  It's a
23   reputable outfit.  Why not just sit down with them
24   months ago and explain your side of the story?
25           MS. HOLMES:  Sure, yeah.  The Journal
```

TR-000302

SER-78

1   actually had a member of their editorial board write

2   the very first piece on Theranos.  And that person,

3   Joe Rago, came out to our lab, saw our systems and

4   really got insight into our work.  That was about a

5   year ago.  I published my op-ed in The Journal.

6           And unfortunately in this case, the reporter

7   focused on sources who we knew in 2004 and 2005 who

8   were the people who had said to me that there was no

9   way I was gonna succeed and be able to build this kind

10  of company.  And focused on, you know, questions like

11  asking whether I could prove that I actually invented

12  the patents that my name were on.  And those are not

13  very fruitful conversations in the context of

14  engagement.

15          But when we had the opportunity to engage

16  with more people in The Journal, we said we absolutely

17  were ready to sit down and do that.  And

18  unfortunately, they offered a three-day window in

19  which we had told them I was not available before it

20  was quote, unquote, necessary to get this published.

21          MR. CRAMER:  Well, let's talk about the

22  substance of some of the charges they raise.  For

23  instance, here's just a -- just an outright sentence,

24  an assertion:  Theranos also hasn't disclosed publicly

25  that it does the vast majority of its tests with

TR-000303

SER-79

```
 1    traditional machines bought from -- from companies
 2    like Siemens AG.
 3              True or false?
 4              MS. HOLMES:  So this is taken completely out
 5    of context.  Starting when we launched our services in
 6    2013 we put on our website that we do venous testing,
 7    so blood draws from the arm the traditional way.
 8              And starting in 2015 we announced and it was
 9    published in San Francisco paper, in Fortune, I talked
10    about it in an interview I did with Forbes, that we
11    made a decision to expand our test menu to include all
12    the specialty and esoteric tests that are
13    traditionally run only very infrequently but cost a
14    huge amount of money.
15              And we believe as part of what we do that one
16    of our greatest innovations is making these tests
17    available at extremely low cost.
18              MR. CRAMER:  Okay.
19              MS. HOLMES:  And so we expanded our test menu
20    and made all these tests available through venous
21    draws.  We updated our website to reflect that.
22              And so yes, now we have a huge number of
23    tests that are available through our lab.  But instead
24    of charging $10,000 for them, we're charging $2.99.
25              MR. CRAMER:  Okay.
```

TR-000304

SER-80

```
 1          MS. HOLMES:  And this is listed on the
 2   Walgreens website.  We've put it in our own press and
 3   it's been out there.
 4          MR. CRAMER:  How many tests can your device
 5   Edison do?  The Wall Street Journal says it can only
 6   do 15 out of 240.
 7          MS. HOLMES:  Yeah.  So we had communicated to
 8   The Wall Street Journal that we have submitted over
 9   130 presubmissions to FDA with tests running on our
10   proprietary devices and have been taking those through
11   the FDA submission process.  Every test that we offer
12   in our laboratory can run on our proprietary devices.
13   We bring tests up on our proprietary devices based on
14   the frequency with which they're run.  So at any given
15   point in time we're running the tests that are most
16   commonly ordered.
17          But we've also done a lot of work as part of
18   this commitment that we've made and it's been very
19   controversial that we've actually become the first
20   company advocating for FDA regulation of lab-developed
21   tests.  And as part of that we have said that we think
22   that every lab-developed test really should go through
23   the FDA submission process.  And so we've been
24   consistent with it.  And in fact, we even just
25   recently took our nanotainers --
```

TR-000305

SER-81

```
 1              MR. CRAMER:  Uh-huh.
 2              MS. HOLMES:  -- through the FDA clearance
 3    process and sent submissions in for those.  And as
 4    part of that process we're not even using our
 5    nanotainers except for FDA-cleared assays so that
 6    every single thing that runs on our platform is
 7    getting to the point --
 8              MR. CRAMER:  Okay.
 9              MS. HOLMES:  -- that it's gonna be FDA
10    cleared.
11              MR. CRAMER:  One last question.  Obviously
12    there's some dispute here.  The Journal doesn't make
13    stuff up.  Why not just have the study of hundreds of
14    people, Theranos versus Quest/Labcorp.  Just say,
15    listen, we're willing to do it.  We're willing to do
16    it now.  Is Labcorp?  Is Quest Corp -- is Quest?  Just
17    say it right now on air:  Quest, Labcorp, we want to
18    do a head to head.  200 -- 200, 300, 400 patients.
19    What do you say?
20              Yes?
21              MS. HOLMES:  We -- we've already done it.
22    We've already done it.  Absolutely.  And it's actually
23    even published in our FDA decision summary from this
24    summer.
25              MR. CRAMER:  Okay.
```

TR-000306

SER-82

```
 1          MS. HOLMES:  From a 900-patient study where
 2    we got FDA clearance of the exact system that
 3    The Journal is questioning and demonstrated venous
 4    versus fingerstick across a huge number of patients.
 5    It was 889, I think, for that test.  And we've done
 6    that over and over again for every single test.
 7          MR. CRAMER:  Excellent.
 8          Elizabeth Holmes, founder, chair and CEO of
 9    Theranos, thank you for coming on Mad Money from
10    the -- from the Harvard Medical.  Good to see you.
11          MS. HOLMES:  Good to see you, too.
12          MR. CRAMER:  Read The Journal, listen to our
13    interview.  You make up your mind.  Stick with Cramer.
14          ANNOUNCER:  Don't miss a second of Mad Money.
15    Follow @JimCramer on Twitter.  Have a question?  Tweet
16    Cramer:  #Madtweets.  Send Jim an email to
17    MadMoney@CNBC.com.  Or give us a call at
18    1-800-743-CNBC.  Miss something?  Head to
19    MadMoney.CNBC.com.
20          (End of transcription.)
21
22
23
24
25
```

TR-000307

SER-83

```
 1   STATE OF CALIFORNIA      )
 2                            ) ss.
 3   COUNTY OF SAN MATEO      )
 4        I hereby certify that the transcript is a true
 5   record of the audio recording as reported by me, a duly
 6   certified shorthand reporter and a disinterested person,
 7   and was thereafter transcribed into typewriting by
 8   computer.
 9        I further certify that I am not interested in
10   the outcome of the said action, nor connected with, nor
11   related to any of the parties in said action, nor to
12   their respective counsel.
13        IN WITNESS WHEREOF, I have hereunto set my hand
14   this 27th day of July, 2021.
15
16                    Jill Baioni
17
18               JILL BAIONI, CSR NO. 8812
19               STATE OF CALIFORNIA
20
21
22
23
24
25
```

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4

5    - - - - - - - - - - - - -

6    UNITED STATES,             )

7           Plaintiff,          )   CASE NO.

8    V.                         )   18-cr-00258-EJD-1

9    ELIZABETH HOLMES,          )

10          Defendant.          )

11   - - - - - - - - - - - - -

12

13              AUDIO TRANSCRIPTION OF

14      NBC:  TODAY SHOW:  BILLIONAIRE CEO UNDER FIRE

15          FILE:  EH Today Show April 18 2016

16              MONDAY, APRIL 18, 2016

17

18

19

20

21      BEHMKE REPORTING AND VIDEO SERVICES, INC.

22              BY:  JILL BAIONI, CSR NO. 8812

23              455 MARKET STREET, SUITE 970

24          SAN FRANCISCO, CALIFORNIA 94105

25                  (415) 597-5600

TR-000480

SER-85

```
 1              MONDAY, APRIL 18, 2016
 2
 3         MR. LAUER:  7:42 now on this Monday morning.
 4  We're back with a Today exclusive.
 5         MS. GUTHRIE:  Elizabeth Holmes created a
 6  company to make blood tests more convenient and more
 7  affordable.  In the process she became a
 8  multibillionaire.  But now there are new questions
 9  about the accuracy of those tests.  Holmes talked
10  about all of it with NBC special anchor Maria Shriver,
11  who joins us now.
12         Maria, good morning.
13         MS. SHRIVER:  Good morning, Savannah.
14         Well, ever since she was a little girl
15  Elizabeth Holmes dreamed of revolutionizing health
16  care.  And up until a few months ago, she was well on
17  her way.  But a recent government report has raised
18  serious concerns about her company Theranos and its
19  methods.
20         You're really fighting for the life of your
21  company.  What have these last six months been like
22  for you?
23         MS. HOLMES:  Well, I'm a better person for it
24  and I'm a better leader.
25         Every single one of us --
```

TR-000481

SER-86

1           MS. SHRIVER:  Six months ago, Elizabeth
2    Holmes was the golden girl of Silicon Valley.  At just
3    32 years of age, the youngest female self-made
4    billionaire in the world.  Hailed as the next
5    Steve Jobs.  She dropped out of Stanford at 19 to
6    create Theranos, a health care company that wants to
7    revolutionize blood testing.
8           MS. HOLMES:  It's affordable.  That means
9    it's transparent in terms of pricing.  That means that
10   it's available to people as a basic right early,
11   before they're sick.
12          MS. SHRIVER:  To achieve that dream, she
13   partnered with Walgreens, offering quick in-store
14   blood tests for two dozen diseases at a fraction of
15   regular prices, thanks to her lab secret new blood
16   testing technology.
17          This is the lab test reinvented.  In short,
18   that's what you're doing.
19          MS. HOLMES:  That's the dream.
20          MS. SHRIVER:  Today, Theranos has performed
21   more than six million blood tests and it's made Holmes
22   rich.  Her company is now valued at $9 billion.
23          But now serious questions about the accuracy
24   of those tests.  In November a federal inspection by
25   CMS, the Centers for Medicare and Medicaid Services,

TR-000482

SER-87

```
 1    found critical violations at one of her two labs,
 2    including failure to properly hire and train qualified
 3    staff to run the blood testing machines and allowing
 4    unlicensed workers to review patient test results.
 5           According to regulators, the lab posed
 6    immediate jeopardy to patient safety.
 7           MS. HOLMES:  I feel devastated that we did
 8    not catch and fix these issues faster.
 9           MS. SHRIVER:  You hold yourself responsible
10    for hiring the wrong people, not doing the proper
11    oversight --
12           MS. HOLMES:  (Nods head up and down.)
13           MS. SHRIVER:  -- not giving the proper
14    controls.  What do you hold yourself responsible for?
15           MS. HOLMES:  I'm the founder and CEO of this
16    company.  Anything that happens in this company is my
17    responsibility at the end of the day.
18           We stopped testing and have taken the
19    approach of saying let's rebuild this entire
20    laboratory from scratch so that we can ensure it never
21    happens again.
22           MS. SHRIVER:  But in a scathing letter in
23    March, CMS called her fixes insufficient and
24    threatened not only to shut down her California lab
25    but ban Holmes from the industry all together for at
```

1  least two years.
2         MS. SHRIVER:  You're running a health care
3  start-up.
4         MS. HOLMES:  Yeah.
5         MS. SHRIVER:  You're dealing with people's
6  lives.  You're dealing with test results that doctors
7  prescribe medicine based on that.  So one would
8  think --
9         MS. HOLMES:  Yeah.
10         MS. SHRIVER:  -- that you would have had that
11  in place from the get-go.
12         MS. HOLMES:  Absolutely.  And probably the
13  most devastating part of this is that I thought we
14  did.
15         MS. SHRIVER:  Holmes doesn't believe her
16  faulty results put anyone's health in danger.  She's
17  brought on a new lab director and expert medical
18  board.
19         Do you think this company will survive?
20         MS. HOLMES:  Absolutely.
21         MS. SHRIVER:  No doubt?
22         MS. HOLMES:  No doubt.  I know what we've
23  built and I know what we've created and I know what it
24  means to people.  And it is a change that needs to
25  happen in the world.

TR-000484

SER-89

1           MS. SHRIVER:  Holmes believes her lab is now

2    in compliance and she is awaiting response from CMS.

3    Her other lab in Arizona, which does about 90 percent

4    of her testing, passed its most recent inspection.

5           For the record, NBC News reached out to CMS

6    and to Walgreens for this report and both declined to

7    comment.

8           Savannah?

9           MS. GUTHRIE:  All right, Maria.  Thank you

10   very much.

11          (End of transcription.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TR-000485

SER-90

```
 1   STATE OF CALIFORNIA     )
 2                           ) ss.
 3   COUNTY OF SAN MATEO      )
 4        I hereby certify that the transcript is a true
 5   record of the audio recording as reported by me, a duly
 6   certified shorthand reporter and a disinterested person,
 7   and was thereafter transcribed into typewriting by
 8   computer.
 9        I further certify that I am not interested in
10   the outcome of the said action, nor connected with, nor
11   related to any of the parties in said action, nor to
12   their respective counsel.
13        IN WITNESS WHEREOF, I have hereunto set my hand
14   this 27th day of July, 2021.
15
16                    Jill Baioni
17
18              JILL BAIONI, CSR NO. 8812
19                 STATE OF CALIFORNIA
20
21
22
23
24
25
```

TR-000486

SER-91

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY



## Food and Drug Administration
### OFFICE OF CRIMINAL INVESTIGATIONS
### MEMORANDUM OF INTERVIEW

CASE NUMBER:             2016-MWM-709-0576-J

CASE TITLE:              THERANOS, INC.

DOCUMENT NUMBER:         287628

PERSON INTERVIEWED:      Sarah Bennett

PLACE OF INTERVIEW:      Webex

DATE OF INTERVIEW:       12/11/2020

TIME OF INTERVIEW:       1:00 PM EST

INTERVIEWED BY:          ASAIC George Scavdis

OTHER PERSONS PRESENT: See below.

On December 11, 2020, the case agent interviewed Sarah Bennett, Technical Lead, Division of Clinical Laboratory Improvement and Quality, Centers for Medicare and Medicaid Services (CMS), regarding a survey she conducted of Theranos in September and November of 2015. The interview was conducted via Webex. Also present were Assistant United States Attorney (AUSA) Robert Leach, United States Attorney's Office for the Northern District of California, and Lindsay Turner, attorney, CMS Division, Health and Human Services, Office of General Counsel.

Ms. Bennett earned a Bachelor of Science in medical technology in 1981 from a medical college in the State of Virginia. She worked in private laboratories from 1981 through 2007, mostly in hospital laboratories and in physicians' offices. In some of those laboratories she was a supervisor. She worked for the State of Maryland in 2007, during which time she conducted surveys. In 2011, Ms. Bennett began working for CMS, where she also has conducted surveys. Within CMS, she is a subject matter expert (SME) in the following Certified Laboratory Improvement Amendments (CLIA) areas:  Personnel requirements for enforcement for competency assessment; proficiency testing (PT); PT referral; individual quality control (QC) plans; and surveyor training. In 2018, she became a technical director within the CLIA program. She has been involved in writing regulations and policy and in performing surveys. All told from 2007 to the present, Ms. Bennett has probably conducted between 30 and 40 laboratory surveys.

Ms. Bennett explained what it means to be consider an SME for personnel. If there is a question in interpreting the personnel regulations, within CLIA she is considered a person to go to when the regulations need to be interpreted. She is the lead for State Agency Enforcement Review (SAER) and for principles of documentation. She is certified from the Society of Clinical Pathology.

Ms. Bennett explained that PT referral is if a laboratory takes a PT sample that they are supposed to be testing themselves and instead sends it to another laboratory. Labs must do PT for those tests that they offer to patients.

Ms. Bennett explained what individual QC plans are. The CLIA regulations allow for QC to be performed as it's outlined in the regulations; however, if there is information about an alternate QC plan in the state guidelines in which the laboratory is situated, a laboratory can use those to develop a QC program. QC is a process that laboratories use to ensure that their test results are accurate and reliable at the time they were run. There are several types of QC. Procedural QC makes sure the system is working correctly. This is

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY
2016-MWM-709-0576-J

usually implicated at point of care testing where they do the testing at the patient's bed side and results are available right away.  Internal QC (usually in the same types of point of care testing) is about checking to make sure that the system is working correctly.  It sometimes takes the place of external controls.  Internal QC makes sure the system is measuring the values the machine gives correctly.  The external control is usually a liquid that mimics what a human specimen would.  A laboratory would run the control the same as it would a patient sample, from beginning to end.  For tests where you're trying to get a result that is a normal value, the QC control sample must be in an acceptable limit for the laboratory to report patient results.

Ms. Bennett explained that PT is a set of unknown samples that a lab receives from a PT program three times a year.  The laboratory tests them and sends the samples back to the program.  The program grades the laboratory's responses to the samples and informs the laboratory if they passed or failed.

Elizabeth Holmes and several people from Theranos came to CMS to discuss the Theranos business model.  Theranos requested to come in and present their business model to CMS, and a meeting was held in person.  Ms. Holmes was at that meeting, as well as Judy Yost from CMS.  Ms. Bennett can't recall who else was there.  Theranos presented some materials at the meeting.  Ms. Holmes presented the Theranos business model and explained that they wanted to put their "black box" into pharmacies, and that people would go in and get their blood drawn.  An electronic signal would go to California where the results would be read.  CMS told Ms. Holmes all those pharmacies would need a CLIA certification.  Ms. Holmes said Theranos was working with the FDA.  Theranos debated the need for the pharmacies to have their own CLIA certification.  Ms. Bennett doesn't recall who exactly from Theranos pushed back on that.  Ms. Bennett had no understanding at this time that Theranos had a CLIA certification.  She had no idea what tests or devices Theranos was using in their laboratory.  She believes Theranos presented a Phase I and a Phase II plan, and Phase I entailed putting the "boxes" in the pharmacies.  CMS told Theranos they needed to go to the FDA first, and Theranos said they were already in talks with the FDA.  CMS said FDA would have to categorize their tests as waived tests for Theranos to get a certificate of waiver.

Ms. Bennett explained there are four types of CLIA certificates.  These certifications exist to make sure labs provide accurate, timely and reliable results; these minimal requirements are set to ensure that.  As the testing gets harder, the requirements become more stringent.  The four types of certificates are certificates of waiver, certificates of microscopy, certificates of compliance, and certificates of accreditation.  A certificate of waiver means a laboratory may only perform those tests categorized by FDA as waived.  Those tests are easy to perform, and an erroneous result would have a negligible effect on patient's health.  A certificate for microscopy covers a laboratory test looking for microscopic particles in urine, etc.  Those labs can also perform waived tests.  A certificate of compliance means a lab can perform any test from waived to high complexity.  A certificate of compliance imposes personnel requirements, facility requirements, requirements related to quality of testing, and PT requirements.  Finally, a certificate of accreditation allows for the same type of testing as certificate of compliance.  The difference is, this is overseen through an accreditation organization, instead of the state, like with certificate of compliance.

The meeting between CMS and Theranos occurred in Baltimore, Maryland.  The next time Ms. Bennett encountered Theranos was during her September 2015 survey of them.  CMS had received complaints about Theranos at the same time Theranos was due for their recertification survey, so they combined the complaint survey and the recertification survey into one.  The complaints were received by Gary Yamamoto at CMS's San Francisco Regional Office, but he sent them to Ms. Bennett in advance of the survey.  One complaint was from Erika Cheung.  Ms. Bennett doesn't recall the name of the other complainant.

Ms. Bennett gets involved in surveys at CMS, and she's been asked to do federal jurisdictional surveys.  Because of her history of being a surveyor with the State of Maryland, she was asked to help with federal jurisdictional surveys.  Federal jurisdictional surveys cover those laboratories that are directly overseen by the federal government.  There have been other times when the CMS regional office has specifically requested that she participate as part of a survey team.  With Theranos her boss, Karen Dyer, asked her to participate.  Ms. Bennett was asked to participate because of her survey experience and because of the nature of the complaints--leadership made the decision it would be good to have someone from Baltimore involved.  Ms. Bennett said the complaints implicated PT, QC, and inaccurate testing.

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY   2016-MWM-709-0576-J

Ms. Bennett and Mr. Yamamoto had several calls prior to the Theranos survey to go over their process and approach.  They pulled up Theranos's PT history and their previous survey report to make sure they corrected previously identified issues.  They talked about logistics and the complaints.  At the time of the survey, Ms. Bennett had not contact with any reporters.  She doesn't believe she knew that a Wall Street Journal reporter was asking questions about Theranos.  The survey was set up by CMS's San Francisco office.

Ms. Bennett said there was a lot of security at Theranos during her survey.  She and Mr. Yamamoto were escorted to a room and were not allowed to go anywhere without an escort.  Ms. Bennett was put in a room and told to wait for an interview for a very long period.  She had asked to interview one of the staff members, and they insisted that legal counsel be there for the confidential interview.  Ms. Bennett said no and then waited for a long time.  The employee came in and said she would speak to Ms. Bennett but would only speak with counsel present.  After every question Ms. Bennett asked, the employee looked at Heather King before she would answer.  Ms. Bennett never had an experience like this in a confidential interview; normally counsel is not present during the survey.  She had never been in a laboratory with the level of security she saw at Theranos.

Ms. Bennett said Theranos's laboratory looked very much like any other clinical laboratory you would see.  It was no different than any large clinical laboratory she had seen.  Ms. Bennett explained that in a survey the first thing she does is have an entrance conference where she explains why they are there.  This happened during the survey of Theranos.  Then they took her and Mr. Yamamoto on a tour of the lab.  Most of the time there was always a Theranos attorney in the conference room with them.  Ms. Bennett and Mr. Yamamoto came back after the tour and explained what kind of documents they wanted to see.  As issues came up, they would ask to go to the laboratory, and they would be escorted to where they needed to go.  Ms. Bennett recalls engaging with the QA/QC manager, Langley Gee.  Sunny Balwani was there, as well as various technical supervisors.  Doctor Young from Phoenix was also there along with several technical staff.  There was always at least one attorney present with Ms. Bennett and Mr. Yamamoto.  When Ms. Bennett and Mr. Yamamoto would ask for documents, someone from Theranos would leave and it would be several hours before they came back.  When they came back, they would give them the wrong document.  When CMS came back in November, they told Theranos "We're not doing this again" regarding waiting long periods of time for documents.

Mr. Balwani engaged mostly with Mr. Yamamoto.  Ms. Bennett described Mr. Balwani as someone who did not defer to many people.  Mr. Balwani talked a lot in the September meeting.  Ms. Bennett described the categories of documents that they asked Theranos for:  PT documents; documents related to testing; and QC documents.  Pretty much everything they asked for Theranos had trouble providing.  Ms. Bennett said, "To be frank, it was very challenging."  It was challenging for CMS because it was hard to decide about compliance when they couldn't get the documents they needed.  This was unusual in her experience.

CMS always asks for a current test list, which Theranos provided.  Initially, Theranos did not provide the proprietary testing information because they said they were no longer using those tests.  As a result, Theranos thought they didn't have to provide it.  Ms. Bennett pushed back and said she needed to know what tests they were running on the proprietary test system and the start and stop dates.  She asked for it because CMS knew the device had been used since the last inspection.  Ms. Bennett asked for the start and stop dates for the proprietary device and that is what Mr. Balwani gave her the next day.  She needed that information to investigate the complaint, which was about the proprietary device.  Ms. Bennett reiterated that initially they asked for a list of all the tests and a list of the devices those tests are being run on.  She also asked for the list of the tests Theranos ran on the proprietary test.  Mr. Balwani responded that they were no longer using the device.  She said she needed it anyway, and he said he would get it for her the next day.  Ms. Bennett said, "That's it."  Ms. Bennett doesn't think Ms. Holmes was at the September survey, but she was Ms. Bennett's "shadow" at the November survey.  AUSA Leach showed Ms. Bennett a copy of a letter dated September 23, 2015, and Ms. Bennett identified it as the document Mr. Balwani produced to her in response to her request that Theranos provide the start and stop date of their proprietary testing.  (Attachment one)

US-REPORTS-0023824

**SER-94**

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY
2016-MWM-709-0576-J

Ms. Bennett explained that a laboratory developed test (LDT) is a test that is developed by one laboratory and only used by that laboratory; it can't be marketed or sold.  Her understanding at the time of the survey was that Theranos was not running any tests on their proprietary device.

Ms. Bennett's understanding when she went into the Theranos laboratory for a tour was that they were using FDA approved or cleared devices.  She noted that Theranos was modifying the devices and that she and Mr. Yamamoto found out about that during the survey.  Her understanding was there were no proprietary devices being used by Theranos when she was there in September 2015.  She explained that cleared and approved are two different processes; one is a 510(k) process and one is an PMA (pre-market approval).  During the survey, Ms. Bennett was in the venipuncture lab, and Mr. Yamamoto was in the fingerstick lab.  The fingerstick lab had a Tecan machine which would dilute the samples so that they could be put on the analyzer.  In the fingerstick lab, they were diluting the samples to run on the FDA cleared devices.  Ms. Bennet looked at Prothrombin Time during the survey and Theranos had major issues there.

Ms. Bennett explained that modifying FDA devices is not a problem under CLIA, the laboratory just must do extra work.  Instead of verifying the manufacturer's instructions, they have to start from ground zero and show how the test is accurate and precise.  They must ESTABLISH performance specifications instead of VERIFY them.  In her experience, modification doesn't happen that often, or the lab doesn't realize they've modified a test by, say, picking a different sample type than what was cleared by FDA.  In the package insert, the manufacturer puts in what precision studies show, what accuracy studies show, and what's the lowest setting they can pick up, etc.

Ms. Bennett explained that if a laboratory is developing an LDT or modifying an FDA cleared device, the laboratory must establish analytic sensitivity and analytic specificity.  Analytic sensitivity refers to being able to detect the lowest amount of whatever a laboratory is looking for.  For example, if a laboratory is measuring glucose and the manufacturer says you can report out glucose between 40 and 400, but you modify it and say you will report down to 20, the laboratory has to show it can get an accurate result from between 20 and 40.  Analytic specificity refers to how well the method measures what a laboratory is looking for.  Continuing the glucose analogy, analytic specificity would measure if the test is picking up just glucose, or if it is picking up other sugars.

Ms. Bennett didn't get any additional information during the survey on why Theranos stopped doing those tests on their proprietary platform.  She doesn't recall Theranos saying who made that decision.  She said Mr. Gee was extremely difficult and that he deflected every question she asked him.  Overall, her experience at the survey was extremely challenging and frustrating.  Ms. Bennett and Mr. Yamamoto came out a second time in November 2015 because they didn't get to finish in September 2015.  Part of that was because it was so difficult to get information, and the change of the fiscal year accounted for the lag time.

For both the September and the November survey, Theranos requested a conference at the end of each day for CMS to go through their findings.  There was always debate, and Mr. Balwani was the one doing the debating in September.  Regarding the November survey, it was very much the same with the security presence.  Theranos attorneys were always present and Ms. Holmes was there by either the first or second day.  Mr. Balwani stayed with Mr. Yamamoto during the survey and Ms. Holmes stayed with Ms. Bennett.  Ms. Bennett and Mr. Yamamoto told Theranos that if they didn't get documents to them in a reasonable amount of time, they would assume Theranos didn't have them.  They had discovered the issue in September with Theranos's Prothrombin Time (the coagulation test) tests, and Theranos had not notified any of the affected patients until they day before CMS showed back up to Theranos in November.  The results of the coagulations tests are very important.  Clinical decisions were made based upon those results.  The regulations required that as soon as Theranos became aware of an erroneous patient test result, they had to notify the patient, and in the case of the affected coagulation tests it took them seven weeks to do so.  She asked them why it took so long and there was really no response.  She can't recall who at Theranos she asked.  She had talked to them about the Prothrombin Time findings at the end of the day during the September survey.

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY 2016-MWM-709-0576-J

Ms. Bennet explained the CMS finding under CLIA of "Immediate Jeopardy." She described it as a situation where the laboratory must take immediate action to correct the underlying issue because the patient could die or be adversely affected--there is a likelihood it could cause injury or serious harm to a patient or death. It refers to the potential for something to be a risk to human health. When CMS left in November, they explained to Theranos that they were considering a finding of Immediate Jeopardy. CMS told Theranos they were definitely out of compliance at the Condition Level and that they were considering Immediate Jeopardy. On the last day of the November survey, Ms. Holmes tried to get CMS to reconsider their citations. Ms. Holmes seemed to be upset and concerned about what CMS would write in the Statement of Deficiencies (CMS 2567), and she appeared to want CMS to not cite what they were going to cite. Ms. Holmes was emotional. Mr. Balwani was there for this meeting.

Everywhere Ms. Bennett went in November, Ms. Holmes went. When Ms. Bennett would find something, Ms. Holmes would want to debate about it. Ms. Holmes was trying to spin it to get Ms. Bennett to consider that what she was seeing wasn't actually a deficiency. At one point in November, Ms. Holmes had to get someone to swipe them in to a portion of the lab. Ms. Holmes seemed to be very knowledgeable about what was where. Ms. Bennett isn't sure how much technical information she knew.

AUSA Leach showed Ms. Bennett the January 25, 2016, letter from CMS to Theranos attaching the CMS 2567. (Attachment two is too large to load electronically into AIMS) Dr. Sunil Dhawan was at the survey but he didn't interact with Ms. Bennett or Mr. Yamamoto; he sat quietly and didn't say a word. He was there for only a short period of time. Ms. Bennett can't speak to how common it is for CMS to find Condition Level deficiencies on a survey. The CMS 2567 is the official record of the survey. The CMS 2567 for Theranos's survey was drafted by Ms. Bennett and Mr. Yamamoto. Drafting the CMS 2567 is part of her responsibility when she conducts a survey.

Ms. Bennett explained that each regulation has a deficiency tag (ID prefix tag), and it's just a numerical code that matches up with a regulation. She explained that on page one of the CMS 2567, 493.84 (e) Routine Chemistry is the regulatory citation, and the description contained under it is the actual regulation. The information the surveyor manually puts in can be found after the sentence that begins "Based on..." The findings support the deficient practice statement. The "3rd event" referenced on page one refers to the 3rd PT event of 2014. Ms. Bennett explained that individuals aren't identified in CMS 2567s, their titles are used instead.

Ms. Bennett explained that on page two, 493.851(e) Hematology, it states that in the 2nd event of 2014, when Theranos turned in their PT results and got them back, they gave the wrong answer on a blood cell identification, but they did not investigate why it was wrong.

Ms. Bennett said CLIA has a requirement that a laboratory must enroll in and participate for PT for regulated analytes for their primary testing method. The laboratory determines what their primary method is. CMS can only go by what the lab says as to what their primary testing method is. Laboratories are graded by instrument and reagent. CMS doesn't really have the ability to guess what a laboratory's primary device is--they must go by what's on the laboratory's PT form. The complaint CMS received regarding Theranos was that they were doing testing on the Edison as their primary device but were submitting PT for testing done on another device. CMS didn't have the ability to question that. It did appear that Theranos was submitting PT testing for samples run on non-Edison devices, however. Theranos was also failing to meet the regulatory requirement to investigate unsatisfactory results.

AUSA Leach directed Ms. Bennett to page three of the CMS 2567, 493.1215 Hematology. She explained that in the CLIA regulations, there are Standard Level and Condition Level deficiencies. Being out at the Condition Level is much more serious than being out at the Standard Level. Hematology is a specialty within CLIA that covers white blood cell count (WBC), red blood cell count (RBC), anemia, looking at the cells within the blood, and coagulation (PT/INR). Ms. Bennett can only speak to the findings that she wrote on the CMS 2567. The issues she found were related to the PT/INR coagulation testing and it had to do with Theranos using expired reagents and QC not being acceptable, yet Theranos still reporting out patient results. A laboratory must determine for each level of QC what the acceptable values are going to be before they release patient results.

US-REPORTS-0023826

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY
2016-MWM-709-0576-J

If the QC results are not within their acceptable range, the laboratory should not be reporting out patient results.  Theranos was sending out patient results without passing QC.

Ms. Bennett said there was a big problem with PT/INR that she discovered during the survey.  Theranos used expired reagent and hadn't done the study for the reagents.  QC was unacceptable and they released test results.  Their freezers and refrigerators were at different ranges than the manufacturer recommended, and Theranos didn't notice it.  Theranos was releasing inaccurate results and clinicians were making decisions based on those results.  Ms. Bennett said patients on coagulation therapy need accurate results.  Refrigerators could have affected stability of the reagents.  If they don't investigate problems of PT/INR, it could keep a systemic error hidden and it would be impossible to know if patients were affected.  Theranos had quality assessment (QA) issues regarding making sure all their lab operations were operating as they should be.  Basically, QA is an audit of the laboratory's process, and Theranos was not doing it the way their procedures said they should.

Ms. Bennett said Theranos had "major issues" with the Edison device.  She said their laboratory had a procedure on how they would validate those tests, and they didn't follow their own procedure.  So, there was no way to know if they met the accuracy needed for testing.  Additionally, they were reporting patient results out when QC was not acceptable on the devices.  She was told by Theranos during the survey that when QC was unacceptable, the device locked you out for 24 hours; she found out that wasn't true.  Theranos was required to compare all the Edison devices, and they were not doing that completely.  If they're not following their procedures and their acceptability criteria, there is no way to know the accuracy and reliability of their results.

With the Edison, Theranos wasn't following their own validation procedures.  For establishing performance specifications, one would expect to see all the steps in their procedure.  When Theranos set out the steps as to how to determine whether the test was accurate or precise, they did not follow what was in their procedure.  If the QC results were bad on one device, they'd just move testing to another device, and then go back to the bad device the next day without any investigation as to why the device did not pass QC the day before.  Ms. Bennett said if that's the process, the laboratory can't tell if the underlying tests are accurate and reliable.  During her survey, she sampled data; she did not review data from all of them.  She didn't have time to do all the devices, so she picked three or four systems to look at.  She found the same issues across the tests that she looked at.

AUSA Leach directed Ms. Bennett to page eight of the CMS 2567, 493.1250 Analytic Systems.  Ms. Bennett explained the testing process is broken up into pre-analytic, analytic, and post-analytic.  Pre-analytic is when the laboratory is getting the specimen ready, and the laboratory is either accepting or rejecting the specimen.  Analytic is the actual testing of the specimen.  Post-analytic is when the laboratory reports out the final result.  In the case of Theranos, this was a Condition Level deficiency.  Ms. Bennett worked on a portion of this part of the survey.  She looked at the procedures not signed and dated by the lab director, and she looked at the issues related to ID deficiency tags D5421 and D5423.  Regarding D5421, that refers to the fact that the manufacturer, not the laboratory, performed the verification studies, and CLIA requires that the laboratory perform them.  Regarding chemistry, Theranos did not perform certain chemistry tests they were required to perform.

All these CLIA requirements are a means to make sure patient results are accurate and reliable.  What Ms. Bennett can say about the survey is that Theranos didn't meet the regulatory requirements.  Any time that a lab is non-compliant with a deficiency, there is the potential that lab test results could be affected.

Theranos was cited for using expired reagent.  Their procedure said they always had to look at package inserts for new lots of reagent.  Ms. Bennett examined a reagent package insert that was pink (they are normally white) and it clearly said the reagent shelf life was much shorter than normal.  Theranos didn't even notice it until she pointed it out to them, and they used it for some months.  It's not the manufacturer's responsibility to notice the change, it is the laboratory's.

AUSA Leach directed Ms. Bennett to page nine of the CMS 2567.  Prior to May 15, 2014, Theranos didn't

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY

have a procedure for QC for the Edison device, and if you go back to the letter that Mr. Balwani gave Ms. Bennett, it stated that Theranos was performing patient testing on the Edison with no QC procedure to tell them what was acceptable and what was not. Either that or they could not produce a document during the survey showing that they were performing QC prior to that time. Ms. Bennett explained that a laboratory must know what the acceptability is for QC in order to know if their test results are accurate and reliable.

AUSA Leach directed Ms. Bennett to page 12 of the CMS 2567, specifically to the text discussing CL SOP 09161. Mr. Dhawan had left by this time. Ms. Bennett explained that there are lab director responsibilities imposed by CLIA, and the signing and dating of procedures is not one of the lab director's responsibilities that can be delegated to someone else. The lab director must do it and it must be done before the laboratory uses the procedure. Theranos was using a procedure that was not signed, dated and approved by a lab director. The lab director is responsible for the overall operation of the lab and that's why it's a problem. The procedure tells the laboratory personnel how they are expected to run testing.

AUSA Leach directed Ms. Bennett to page 18 of the CMS 2567 to the portion beginning with Calcium. Here, the manufacturer performed the verification studies when CLIA requires the laboratory to do it. Theranos didn't do any verification on the plasma samples they were running, and the manufacturer did their verification studies on serum, not plasma. The manufacturer's accuracy study only went down to 4.58, and Theranos was reporting out results outside of that range. Ms. Bennett explained that "precision" is how well a laboratory can reproduce the same answer. A laboratory must make sure there is precision in the instrument and precision across operations. Theranos only did run precision, they didn't do day to day, run to run, or operator to operator precision. What Theranos did was "incomplete."

AUSA Leach directed Ms. Bennett to page 37 of the CMS 2567, D5481 – Edison daily QC procedures. The general supervisor told Ms. Bennett that if the QC was unacceptable on an Edison device, the device locked out the operator for 24 hours. If the QC was bad on a given device, Theranos would just move to another device. They would then go back to the failed device 24 hours later, and if the QC was good that day, they'd run patient results without doing an investigation. She found that patient results were run on devices that were supposed to have been locked for 24 hours due to failed QC inside of that 24 hour lock out period. Ms. Bennett and Ms. Yamamoto were finding the issues across multiple assays.

AUSA Leach directed Ms. Bennett to page 41 of the CMS 2567, subpart "s." Her review found that Theranos had 113 days where their QC was at least plus or minus two standard deviations above or below the acceptable level established for QC.

AUSA Leach directed Ms. Bennett to page 47 of the CMS 2567, D5791. QA is a process that a laboratory uses to audit their laboratory operations. They define what they're going to look at, and at what intervals. Theranos was not following their own QA procedure. They did not know there was a problem until Ms. Bennett pointed it out to them, yet their QA/QC manager was signing off that they were every month. Subpart "b" is telling the reader what Ms. Bennet looked at during the survey. Referring to subpart "c," Theranos's procedure said they required the CV (coefficient of variation) to be a certain amount, but when she reviewed the documentation for Vitamin B12 for this device, it showed that the CV was higher than that. That does not meet their criteria for acceptability, and they did not react to that. There was no reaction, and no action to correct. They simply signed off on it and moved on. It's a problem because it shows there is a large range of controls that are not meeting their acceptability requirements, so they should not be reporting out patient results. It should have been a red flag that there was a problem with those devices, and they should have investigated the issue. Ms. Bennett believes she asked for QC, and they gave her reports that had the device numbers on them. She explained, say for instance you had a glucose of 100--if you had a 40% CV, you're saying it's okay if the real result is anywhere from 60 to 140; that is clinically significant.

Ms. Bennett said, "There is a systemic issue of quality. Across the board, not just with the Edison but also their other testing."

Ms. Bennett said the CMS 2567 reflects what CMS found to be the deficient practices on the survey. That is all it is. CMS had no preconceived notions going into the Theranos survey at all. Even if they had had

US-REPORTS-0023828

LAW ENFORCEMENT SENSITIVE - FOR OFFICIAL USE ONLY
2016-MWM-709-0576-J

knowledge of newspaper articles in advance, it wouldn't have changed their mission during the survey.

SUBMITTED: Electronically submitted by GEORGE SCAVDIS

GEORGE SCAVDIS, ACTING SPECIAL AGENT IN CHARGE      DATE:    12/17/2020

APPROVED: Electronically approved by MARK MCCORMACK

MARK MCCORMACK, SPECIAL AGENT IN CHARGE      DATE:    12/17/2020

DISTRIBUTION:   Orig:  MWM w/attachments
                cc:    Prosecution w/attachments

ATTACHMENTS:  1 - September 23, 2015, letter given to CMS by Sunny Balwani
              2 - Statement of Deficiencies (CMS 2567)

US-REPORTS-0023829

SER-99



1701 Page Mill Road    P 650.838.9292    theranos.com
Palo Alto, CA 94304    F 650.838.9165

**CONFIDENTIAL COMMERCIAL INFORMATION**
**EXEMPT FROM DISCLOSURE UNDER THE FREEDOM OF INFORMATION ACT**

September 23, 2015

To Whom It May Concern:

You requested a current list of the platforms on which all of our tests are running as of September 22, 2015. We are providing that information to you under separate cover. Additionally, the following is the list of the Laboratory Developed Tests (LDTs) that Theranos tested on Theranos device, also called Theranos Sample Processing Units (TSPUs), along with the time periods when those tests were run. Theranos recently received FDA clearance for its Theranos System – including the device, the Theranos Sample Collection Device (including the nanotainers) and other components of the system - , and plans to bring these units live again in the lab as 510k-cleared analyzers, rather than LDTs, once additional clearances are obtained.

As we explained in person, Theranos changes the platforms on which it runs tests from time to time. The decision to move testing off of TSPUs and onto other platforms in this case was a business decision to transition to the manufacturing quality systems to QSR compliance under FDA guidelines and does not reflect on the reliability or accuracy of any platform.

Theranos has never commercially distributed a TSPU.

| Test | Initial | End |
|------|---------|-----|
| Vit D | 11/6/2013 | 3/10/2015 |
| TSH | 11/7/2013 | 2/4/2015 |
| FT4 | 11/11/2013 | 2/4/2015 |
| TPSA | 11/11/2013 | 6/25/2015 |
| TT3 | 2/12/2014 | 2/4/2015 |
| TT4 | 2/12/2014 | 2/4/2015 |
| TST | 3/19/2014 | 3/10/2015 |
| HCG | 5/9/2014 | 1/19/2015 |
| SHBG | 7/28/2014 | 6/25/2015 |
| VB12 | 8/12/2014 | 3/6/2015 |
| Estradiol | 9/25/2014 | 12/18/2014 |
| Prolactin | 9/25/2014 | 12/18/2014 |

THERANOS CONFIDENTIAL

THPFM0002422856
US-REPORTS-0023821

**SER-100**

Case: 22-10312, 08/17/2023, ID: 12776512, DktEntry: 66-2, Page 101 of 253

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_007404 | iMessage | 11/21/2013 3:50:24 AM | Love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007407 | iMessage | 11/21/2013 4:11:05 AM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007405 | iMessage | 11/21/2013 4:11:08 AM | More love | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007410 | iMessage | 11/21/2013 4:16:00 AM | | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007406 | iMessage | 11/21/2013 4:16:09 AM | What is our gate code | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007412 | iMessage | 11/21/2013 4:19:51 AM | Will txt when get there | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007411 | iMessage | 11/21/2013 4:20:05 AM | Ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007423 | iMessage | 11/21/2013 4:46:39 AM | Just walked in door. Going to open luggage and start bringing upstairs. Missing you. How is your mom … | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007426 | iMessage | 11/21/2013 4:48:00 AM | Wish I could help you carry the stuff.<br><br>Mom is ok. Trying to get her home today. She won't get any better in hospital. She is having breathing issues. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007430 | iMessage | 11/21/2013 4:48:00 AM | All ur texts are coming thru ur iCloud account which is safer. Don't know how u did it. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007427 | iMessage | 11/21/2013 4:48:17 AM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007424 | iMessage | 11/21/2013 4:48:29 AM | Agree if hospital can't help | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007425 | iMessage | 11/21/2013 4:48:33 AM | Call me | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007431 | iMessage | 11/21/2013 4:50:02 AM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007428 | iMessage | 11/21/2013 4:50:08 AM | Ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007429 | iMessage | 11/21/2013 4:50:14 AM | Call any time | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007432 | iMessage | 11/21/2013 4:54:57 AM | About to send files to Surabh btw - assume you didn't have comments on that little text series … | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007433 | iMessage | 11/21/2013 5:07:00 AM | Correct | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007436 | iMessage | 11/21/2013 5:35:58 AM | U should make urself comfortable with financial models alternatively, u can cover everything else and I can meet with him on Tuesday and answer any questions. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007437 | iMessage | 11/21/2013 5:37:20 AM | Are you coming home Tuesday? | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007440 | iMessage | 11/21/2013 5:39:39 AM | I'll get myself comfortable. Let me know what file to use. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007438 | iMessage | 11/21/2013 5:43:12 AM | Planning to come home Monday if all goes well | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007439 | iMessage | 11/21/2013 5:51:52 AM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007441 | iMessage | 11/21/2013 5:54:08 AM | Is it nice to be home | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007445 | iMessage | 11/21/2013 5:54:08 AM | I developed terrible flu yesterday. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007447 | iMessage | 11/21/2013 6:18:33 AM | Oh no tiger | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007446 | iMessage | 11/21/2013 6:19:07 AM | Can stop sniffling and sneezing. | Sunny Balwani | Elizabeth Holmes | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000034

SER-101

Case: 22-10312, 08/17/2023, ID: 12776512, DktEntry: 66-2, Page 102 of 253

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_007479 | iMessage | 11/21/2013 10:05:46 PM | K all set up here now with the files. Sleep long time. Xxxxxxxxx | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007481 | iMessage | 11/22/2013 4:28:48 AM | Confirmed Monday on Singapore airlines. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007483 | iMessage | 11/22/2013 4:30:23 AM | Reaching home at 8 pm. Same flt as u took. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007484 | iMessage | 11/22/2013 4:45:50 AM | 10 nights | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007486 | iMessage | 11/22/2013 4:48:09 AM | I know. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007491 | iMessage | 11/22/2013 5:15:44 AM | I wd be ok with projections but not financials | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007490 | iMessage | 11/22/2013 5:16:03 AM | What are your thoughts on sending financials to DFJ even though we've never sent them as an existing investor / on sending other content to them @ this stage | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007488 | iMessage | 11/22/2013 5:17:38 AM | Projects include bs and 2013 numbers. I guess it is ok. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007492 | iMessage | 11/22/2013 5:18:04 AM | Saw you took the 10m tps out of sequoia 2013 projects | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007493 | iMessage | 11/22/2013 5:18:26 AM | (And therefore will be out of the DFJ projects) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007496 | iMessage | 11/22/2013 5:20:00 AM | Yeah | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007495 | iMessage | 11/22/2013 5:22:45 AM | I guess if 25 is an issue 35 would be too ... | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007494 | iMessage | 11/22/2013 5:24:16 AM | Or look another way, if 25 is not good enuff than 35 won't be either. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007497 | iMessage | 11/22/2013 5:38:04 AM | Exactly! | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007510 | iMessage | 11/22/2013 6:45:20 AM | In the kitchen pantry on left | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007509 | iMessage | 11/22/2013 6:46:42 AM | Let me know where fishie food is. Had almost know food | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007511 | iMessage | 11/22/2013 6:47:26 AM | :) big fishie came to eat xxx | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007512 | iMessage | 11/22/2013 6:47:28 AM | We can go. Sounds good | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007513 | iMessage | 11/22/2013 6:47:28 AM | R u out there? I tht u r in bed | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007514 | iMessage | 11/22/2013 6:47:54 AM | Btw Christian found great place @ shutters on the beach in la for nye - let me know what your desire is | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007517 | iMessage | 11/22/2013 6:48:26 AM | Went when i came home. Sensed they were hungry | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007518 | iMessage | 11/22/2013 6:48:35 AM | I think so too. I'll tell him were in | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007525 | iMessage | 11/22/2013 6:49:46 AM | :) xo | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007547 | iMessage | 11/22/2013 7:10:39 AM | Xoxox | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007550 | iMessage | 11/22/2013 7:10:55 AM | Love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007551 | iMessage | 11/22/2013 7:12:09 AM | More love | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_007554 | iMessage | 11/22/2013 3:55:23 PM | Going to go crash early today. Tired live for my baby | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_007558 | iMessage | 11/22/2013 5:05:23 PM | Xxx | Elizabeth Holmes | Sunny Balwani | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000036

SER-102

Case: 22-10312, 08/17/2023, ID: 12776512, DktEntry: 66-2, Page 103 of 253

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_049232 | iMessage | 4/21/2016 2:45:29 PM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049235 | iMessage | 4/21/2016 2:45:35 PM | Awesome | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049236 | iMessage | 4/21/2016 8:22:24 PM | Brooke came by and shared that you have shared with her of my transitioning out? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_064778 | MMS | 4/21/2016 9:51:42 PM | 😊 | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/ff/15/F895D07E-961D-4EA9-8768- |
| Holmes_iPhone_iMessage-MMS-SMS_049237 | iMessage | 4/21/2016 11:10:09 PM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049238 | iMessage | 4/22/2016 3:42:32 AM | Hi | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049239 | iMessage | 4/22/2016 4:49:09 AM | Missing you. Hope all is well | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049241 | iMessage | 4/22/2016 6:04:40 AM | Hope you are safe. Worrying about you. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049242 | iMessage | 4/22/2016 3:11:45 PM | It was full moon last night. And this morning it is pouring rain. Love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049243 | iMessage | 4/22/2016 3:12:23 PM | Gods omen | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049243 | iMessage | 4/22/2016 3:12:27 PM | Prepping xxx | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049244 | iMessage | 4/22/2016 3:12:36 PM | Ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049245 | iMessage | 4/22/2016 9:13:34 PM | How did it go? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049246 | iMessage | 4/22/2016 9:59:39 PM | Love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049247 | iMessage | 4/22/2016 10:02:28 PM | Infinite | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049249 | iMessage | 4/22/2016 10:02:40 PM | Missing you | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049250 | iMessage | 4/22/2016 10:02:40 PM | Alright. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049248 | iMessage | 4/22/2016 10:02:44 PM | How're u doing | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049251 | iMessage | 4/22/2016 10:03:29 PM | Ditto. Paradise is next. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049252 | iMessage | 4/22/2016 10:56:28 PM | Made the flight. Land 10:20 | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049253 | iMessage | 4/22/2016 11:08:19 PM | Wonderful | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049254 | iMessage | 4/22/2016 11:08:26 PM | 😊😊😊 | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049255 | iMessage | 4/23/2016 1:50:56 AM | Should I order any food for you? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049256 | iMessage | 4/23/2016 1:53:36 AM | No need. Have u eaten naan yet | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049257 | iMessage | 4/23/2016 1:55:12 AM | No | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049258 | iMessage | 4/23/2016 1:57:59 AM | Btw most of marketing and comms team wasn't here all day. Brooke came for may be hour. Carissa and Jodi no shoe and they didn't file pto as always. The entire that side of building was empty because 5 PMs were missing also probably on PTO | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049259 | iMessage | 4/23/2016 2:00:41 AM | Lauren also came around 11 and gone by 4. | Sunny Balwani | Elizabeth Holmes | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000410

SER-103

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_049310 | iMessage | 4/26/2016 2:52:00 AM | Ate a lot during day | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049314 | iMessage | 4/26/2016 2:52:23 AM | So nice to have the anticipation of coming home | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049317 | iMessage | 4/26/2016 6:20:48 PM | My heart is missing it's heartbeat. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049318 | iMessage | 4/26/2016 6:44:49 PM | Ditto | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049321 | iMessage | 4/26/2016 6:44:51 PM | We will do this | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049319 | iMessage | 4/26/2016 7:29:04 PM | Love for my love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049320 | iMessage | 4/26/2016 7:30:41 PM | 😊 | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049322 | iMessage | 4/26/2016 7:31:34 PM | More love | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049323 | iMessage | 4/26/2016 9:53:41 PM | Going for massage. Shd be done by 445 | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049326 | iMessage | 4/26/2016 9:57:25 PM | Awesome | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049325 | iMessage | 4/26/2016 11:52:58 PM | Missing my heartbeat | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049324 | iMessage | 4/27/2016 12:06:52 AM | Ditto times a million | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049328 | iMessage | 4/27/2016 3:46:08 AM | Nice | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049327 | iMessage | 4/27/2016 3:47:36 AM | On my way! 😊😊😊😊 | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049330 | iMessage | 4/27/2016 2:34:40 PM | Tried calling you couple of times. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049332 | iMessage | 4/27/2016 3:25:52 PM | Yeah ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049329 | iMessage | 4/27/2016 3:26:13 PM | All ok in meeting | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049331 | iMessage | 4/27/2016 3:26:15 PM | ? | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049334 | iMessage | 4/27/2016 3:36:32 PM | Love and prayers and all my energy for you in every breath. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049336 | iMessage | 4/27/2016 4:40:32 PM | Mine too. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049339 | iMessage | 4/27/2016 4:40:32 PM | My love and devotion to you will lift your heart | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049333 | iMessage | 4/27/2016 4:41:06 PM | I love you | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049335 | iMessage | 4/27/2016 4:41:11 PM | Heart in pain | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049338 | iMessage | 4/27/2016 5:00:55 PM | Going into shower. 5 mi Utes | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049337 | iMessage | 4/27/2016 5:06:07 PM | Will call in but | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049340 | iMessage | 4/27/2016 5:06:08 PM | Ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049341 | iMessage | 4/27/2016 5:06:22 PM | Bit | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049342 | iMessage | 4/27/2016 10:36:48 PM | Infinite love for you in every breath. Let's focus only on business. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049344 | iMessage | 4/27/2016 10:36:48 PM | Zika, publications, ctn submission studies, submissions and clearance. | Sunny Balwani | Elizabeth Holmes | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000413

SER-104

Case: 22-10312, 08/17/2023, ID: 12776512, DktEntry: 66-2, Page 105 of 253

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_049343 | iMessage | 4/27/2016 11:08:47 PM | Science can not be denied or refuted. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049345 | iMessage | 4/28/2016 10:02:40 PM | Love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049346 | iMessage | 4/28/2016 10:05:28 PM | More love. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049347 | iMessage | 4/28/2016 10:09:04 PM | Missing u in every breath and in every cell. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049348 | iMessage | 4/28/2016 10:10:54 PM | Ditto | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049349 | iMessage | 4/28/2016 10:11:01 PM | You live in my eyes. I see you everywhere. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049352 | iMessage | 4/28/2016 10:11:12 PM | Pray we get time of joy and happiness and carefreeness like birds soon. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049350 | iMessage | 4/28/2016 10:11:15 PM | 😊 | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049353 | iMessage | 4/29/2016 12:17:04 AM | Ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049351 | iMessage | 4/29/2016 12:17:49 AM | Will call back | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049354 | iMessage | 4/29/2016 1:26:41 AM | Call when have 5 minutes | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049357 | iMessage | 4/29/2016 7:52:32 PM | Off to gym should be done by 2 | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049355 | iMessage | 4/29/2016 8:07:05 PM | Awesome | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049356 | iMessage | 4/29/2016 9:26:24 PM | 🖼 | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/9a/10/18185644-9FC8-43A5-9889- |
| Holmes_iPhone_iMessage-MMS-SMS_049358 | iMessage | 4/29/2016 9:26:24 PM | World is so beautiful because of you. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049361 | iMessage | 4/29/2016 9:26:24 PM | 🖼 | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/86/06/50EDC02A-A1CA-4BDB-9BD7- |
| Holmes_iPhone_iMessage-MMS-SMS_049359 | iMessage | 4/29/2016 9:43:27 PM | I love you | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049360 | iMessage | 4/29/2016 9:43:28 PM | For me you are manifestation of love itself. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049362 | iMessage | 4/29/2016 9:44:37 PM | 😊 | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049363 | iMessage | 4/29/2016 9:48:23 PM | "In all the world, there is no heart for me like yours. In all the world, there is no love for you like mine." Maya Angelou | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049364 | iMessage | 4/29/2016 9:49:30 PM | I agree. There is no love for me like yours. Which is why it's hard to breath without your breath near me. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049365 | iMessage | 4/29/2016 9:51:14 PM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049366 | iMessage | 4/29/2016 9:51:22 PM | Ditto | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049367 | iMessage | 4/29/2016 10:51:44 PM | Loving you. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049368 | iMessage | 4/29/2016 10:53:47 PM | Loving you infinite | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049369 | iMessage | 4/29/2016 10:53:52 PM | I could have done so much more. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049370 | iMessage | 4/29/2016 10:53:52 PM | There is so much more I can give to you and this world. | Sunny Balwani | Elizabeth Holmes | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000414

SER-105

Case: 22-10312, 08/17/2023, ID: 12776512, DktEntry: 66-2, Page 106 of 253

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_049668 | iMessage | 5/11/2016 3:48:44 AM | Ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049671 | iMessage | 5/11/2016 5:42:24 PM | Whenever u r free call me for 2 minutes. Nothing urgent. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049669 | iMessage | 5/11/2016 5:53:52 PM | K | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049670 | iMessage | 5/12/2016 3:13:48 AM | ￼ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/31/01/AAB0C4DB-2928-4A44-83EB- |
| Holmes_iPhone_iMessage-MMS-SMS_049672 | iMessage | 5/12/2016 3:19:00 AM | ￼ | Elizabeth Holmes | Sunny Balwani | | ~/Library/SMS/Attachments/cb/11/35824212-6701-40FD-A84A- |
| Holmes_iPhone_iMessage-MMS-SMS_049673 | iMessage | 5/12/2016 3:19:03 AM | Been thinking about you nonstop | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049674 | iMessage | 5/12/2016 3:19:33 AM | Me too. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049676 | iMessage | 5/13/2016 1:30:32 AM | ￼ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/6f/15/9DFD09DE-E50B-496F-9EA4- |
| Holmes_iPhone_iMessage-MMS-SMS_049675 | iMessage | 5/13/2016 1:33:21 AM | ￼ | Elizabeth Holmes | Sunny Balwani | | ~/Library/SMS/Attachments/a9/09/21F87893-B667-4BC9-9674- |
| Holmes_iPhone_iMessage-MMS-SMS_049677 | iMessage | 5/13/2016 1:33:52 AM | I was literally looking at these words when u texted me. Exact same moment | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049678 | iMessage | 5/13/2016 1:38:28 AM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049679 | iMessage | 5/13/2016 8:51:57 PM | Would you send my love to your mom | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049680 | iMessage | 5/13/2016 8:52:16 PM | I will | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049681 | iMessage | 5/13/2016 9:28:32 PM | I love you and miss you | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049682 | iMessage | 5/13/2016 10:31:18 PM | Ditto | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049683 | iMessage | 5/13/2016 11:08:35 PM | ￼ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/de/14/E8F3905A-525C-4638-B911- |
| Holmes_iPhone_iMessage-MMS-SMS_049684 | iMessage | 5/13/2016 11:08:48 PM | ￼ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/45/05/060EF350-BF2A-4569-B54D- |
| Holmes_iPhone_iMessage-MMS-SMS_049685 | iMessage | 5/13/2016 11:09:34 PM | ￼ | Elizabeth Holmes | Sunny Balwani | | ~/Library/SMS/Attachments/44/04/84E51827-B043-4ACB-91E9- |
| Holmes_iPhone_iMessage-MMS-SMS_049686 | iMessage | 5/13/2016 11:10:05 PM | Nice | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049687 | iMessage | 5/14/2016 7:14:08 PM | Back home. Love. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049688 | iMessage | 5/14/2016 7:16:35 PM | Infinite love | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049689 | iMessage | 5/14/2016 8:28:48 PM | Booking my fight for next Saturday morning to India. Ok? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049690 | iMessage | 5/14/2016 8:54:37 PM | Yes :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049691 | iMessage | 5/14/2016 8:54:51 PM | No Friday night for you? | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049692 | iMessage | 5/14/2016 8:55:20 PM | No Friday night. Just clicked confirm for Saturday am after ur text and permission | Sunny Balwani | Elizabeth Holmes | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000426

SER-106

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_049693 | iMessage | 5/14/2016 8:57:40 PM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049694 | iMessage | 5/14/2016 8:58:18 PM | Got the best seat and airline. First class suite on etihaad. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049695 | iMessage | 5/14/2016 9:14:59 PM | Awesome. That is perfect. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049696 | iMessage | 5/14/2016 10:36:48 PM | Heading out for coffee my love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049697 | iMessage | 5/14/2016 10:57:38 PM | :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049698 | iMessage | 5/14/2016 10:57:40 PM | Nice | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049699 | iMessage | 5/14/2016 10:59:16 PM | Back home. Sending my infinite love | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049700 | iMessage | 5/14/2016 10:59:32 PM | Ditto | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049701 | iMessage | 5/14/2016 10:59:48 PM | [image] | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/74/04/ED9BBA2S-9B6C-4166-A9BA- |
| Holmes_iPhone_iMessage-MMS-SMS_049702 | iMessage | 5/14/2016 10:59:59 PM | Beautiful | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049703 | iMessage | 5/14/2016 11:00:16 PM | [image] | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/db/11/0C855E96-5FCC-47EA-8486- |
| Holmes_iPhone_iMessage-MMS-SMS_049704 | iMessage | 5/15/2016 12:12:48 AM | Diana put two books on my desk that came in thru Amazon. Can u bring them ? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049705 | iMessage | 5/15/2016 12:28:49 AM | Of course | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049706 | iMessage | 5/15/2016 12:33:20 AM | Ordering from Naomi. Anything for u? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049707 | iMessage | 5/15/2016 12:33:44 AM | All set :) good you're ordering. A bit hungry | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049708 | iMessage | 5/15/2016 7:03:15 PM | If you get coffee on the way back let me know ... :) | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049709 | iMessage | 5/15/2016 7:03:28 PM | Ok | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049710 | iMessage | 5/15/2016 7:03:28 PM | What do u need | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049711 | iMessage | 5/15/2016 7:04:11 PM | Will decide if u go after apptmnt ... | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049712 | iMessage | 5/15/2016 7:56:48 PM | On my way!  Do u want coffee | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049713 | iMessage | 5/15/2016 11:38:40 PM | [image] | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/cb/11/286314CD-7A96-481C-A360- |
| Holmes_iPhone_iMessage-MMS-SMS_049714 | iMessage | 5/15/2016 11:38:40 PM | [image] | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/0b/11/B6FE005A-E0C6-4862-A5D4- |
| Holmes_iPhone_iMessage-MMS-SMS_049715 | iMessage | 5/16/2016 11:45:04 PM | I am going to take off. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049716 | iMessage | 5/17/2016 12:19:12 AM | You have my love in every breath | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049717 | iMessage | 5/17/2016 12:20:49 AM | And in every cell and every heartbeat | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049718 | iMessage | 5/17/2016 3:21:28 AM | [image] | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/84/04/A74EA52A-A412-481B-B2C3- |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000427

**SER-107**

Case: 22-10312, 08/17/2023, ID: 12776512, DktEntry: 66-2, Page 108 of 253

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_049719 | iMessage | 5/17/2016 4:33:04 AM | ☒ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/e9/09/53FFDD3D-2A76-4DDE-B33C- |
| Holmes_iPhone_iMessage-MMS-SMS_049720 | iMessage | 5/17/2016 4:35:12 AM | ☒ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/f3/03/9417C488-D69F-4121-87E0- |
| Holmes_iPhone_iMessage-MMS-SMS_049721 | iMessage | 5/17/2016 6:10:08 PM | I am here but not sure where you are | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049722 | iMessage | 5/17/2016 6:10:08 PM | Never mind. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049723 | iMessage | 5/18/2016 3:37:15 AM | ☒ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/d8/08/DB62D9DE-F264-4D75-B7D2- |
| Holmes_iPhone_iMessage-MMS-SMS_049724 | iMessage | 5/18/2016 3:37:19 AM | Missing u | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049725 | iMessage | 5/18/2016 3:37:36 AM | ☒ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/ca/10/49CD13FB-DF27-4458-9D40- |
| Holmes_iPhone_iMessage-MMS-SMS_049726 | iMessage | 5/18/2016 3:43:21 AM | ☒ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/96/06/E3DF5A9F-2C43-4AC3-99D3- |
| Holmes_iPhone_iMessage-MMS-SMS_049727 | iMessage | 5/18/2016 2:56:15 PM | ☒ | Elizabeth Holmes | Sunny Balwani | | ~/Library/SMS/Attachments/bb/11/8004B4DA-B90E-4B4D-9F18- |
| Holmes_iPhone_iMessage-MMS-SMS_049728 | iMessage | 5/19/2016 2:03:12 AM | Am I participating in the next meeting? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049729 | iMessage | 5/19/2016 4:13:17 AM | ☒ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/63/03/E2C51CC9-AE92-4C75-9D09- |
| Holmes_iPhone_iMessage-MMS-SMS_049730 | iMessage | 5/19/2016 4:24:17 AM | I love you | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049731 | iMessage | 5/19/2016 4:24:21 AM | I love this | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049732 | iMessage | 5/19/2016 8:33:37 PM | I love you | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049733 | iMessage | 5/19/2016 9:21:53 PM | U r my every breath. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049734 | iMessage | 5/19/2016 9:56:16 PM | Headed out. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049735 | iMessage | 5/19/2016 10:13:31 PM | I adore you. I love you so much. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049736 | iMessage | 5/19/2016 10:15:28 PM | U have my heart and soul for every lifetime. Unconditionally the | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049737 | iMessage | 5/19/2016 11:22:42 PM | Literal timeless love | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049738 | iMessage | 5/19/2016 11:53:36 PM | There is not a breath I take when I am not manifesting the best and brightest and Lords Glory for you. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049739 | iMessage | 5/20/2016 12:50:55 AM | You are my true north because you are Gods bright shining light. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049740 | iMessage | 5/20/2016 4:07:22 AM | ☒ | Sunny Balwani | Elizabeth Holmes | | ~/Library/SMS/Attachments/31/01/01223065-1BD8-4D69-9/DB- |
| Holmes_iPhone_iMessage-MMS-SMS_049741 | iMessage | 5/20/2016 6:08:49 AM | Ditto | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_049742 | iMessage | 5/21/2016 5:00:48 AM | There yet? | Surny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_049743 | iMessage | 5/21/2016 5:03:02 AM | Yes :) in admirals club | Elizabeth Holmes | Sunny Balwani | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000428

SER-108

| Record | Type | Message Sent Date/Time | Message | Sender / Author | Recipient(s) | ChatID | Attachments |
|---|---|---|---|---|---|---|---|
| Holmes_iPhone_iMessage-MMS-SMS_050116 | iMessage | 5/31/2016 12:59:44 AM | Nothing urgent. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050117 | iMessage | 5/31/2016 12:59:44 AM | Was thinking if it is useful for you to get some 1:1 time with tony robins. He doesn't do this but we can ask. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050114 | iMessage | 5/31/2016 12:59:55 AM | About to get masage | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_050118 | iMessage | 5/31/2016 1:01:29 AM | We can talk later or tomorrow | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050119 | iMessage | 6/1/2016 12:16:00 PM | Your presence on earth is proof of God's presence. Stay strong and focus on building business and turning the negative around thru science and publications and submissions. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050121 | iMessage | 6/1/2016 1:58:12 PM | :) I completely agree with that plan. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_050120 | iMessage | 6/1/2016 1:58:56 PM | :-) r u traveling today and tomorrow? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050123 | iMessage | 6/1/2016 1:59:03 PM | Yes | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_050122 | iMessage | 6/1/2016 1:59:19 PM | Going to DC | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_050124 | iMessage | 6/1/2016 1:59:58 PM | Ok. My family sends love and prayers and u have prayers of thousands and thousands of people u have sever. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050125 | iMessage | 6/1/2016 2:00:05 PM | Served | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050127 | iMessage | 6/1/2016 2:02:05 PM | Ditto | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_050128 | iMessage | 6/2/2016 2:01:08 AM | Do u have a minute to talk? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050126 | iMessage | 6/2/2016 3:30:52 AM | U still up? | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050129 | iMessage | 6/2/2016 1:00:23 PM | . | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050131 | iMessage | 6/2/2016 8:50:08 PM | .. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050132 | iMessage | 6/3/2016 1:54:55 AM | I know things are tough but don't give up on your dreams. Keep focused and keep fighting. Plan, focus, stay organized and stay in control. One person who has a plan and executes can defeat an army. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050133 | iMessage | 6/3/2016 2:01:36 AM | I know what you are thinking and going thru. Control your thoughts and don't let fear control you. Breathe and in every hour be conscious of your breath and breath out fear. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050130 | iMessage | 6/3/2016 2:02:25 AM | I love this. | Elizabeth Holmes | Sunny Balwani | | |
| Holmes_iPhone_iMessage-MMS-SMS_050134 | iMessage | 6/3/2016 2:03:44 AM | That God asks us to be responsible for. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050137 | iMessage | 6/3/2016 2:03:44 AM | Whatever you decide and whatever happens is in gods hands. But your focus, attention, thoughts and breath is in your control. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050135 | iMessage | 6/4/2016 7:25:52 AM | Did u figure out your schedule for the weekend. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050136 | iMessage | 6/4/2016 7:25:52 AM | . | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050138 | iMessage | 6/5/2016 12:15:41 AM | I can drop you off after ur dinner. | Sunny Balwani | Elizabeth Holmes | | |
| Holmes_iPhone_iMessage-MMS-SMS_050139 | iMessage | 6/5/2016 3:24:59 AM | :) have car here ... | Elizabeth Holmes | Sunny Balwani | | |

FOIA Confidential Treatment Requested by Theranos
Fed. R. Crim. P. 6(e) material

PRH_0000444

SER-109

# Exhibit 3

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Western Division of Survey and Certification
San Francisco Regional Office
90 7th Street, Suite 5-300 (5W)
San Francisco, CA  94103-6707



Refer to:  WDSC- GKY

## IMPORTANT NOTICE – PLEASE READ CAREFULLY

January 25, 2016

Sunil Dhawan, M.D., Director                CLIA Number: 05D2025714
Theranos, Inc.
7333 Gateway Boulevard
Newark, CA  94560

RE:  CONDITION LEVEL DEFICIENCIES – IMMEDIATE JEOPARDY

Dear Dr. Dhawan:

In order for a laboratory to perform testing under the Clinical Laboratory Improvement
Amendments of 1988 (CLIA), Public Law 100-578, it must comply with all CLIA requirements.
These requirements are found in section 353 of the Public Health Service Act (42 U.S.C. 263a)
and 42 Code of Federal Regulations, Part 493 (42 CFR 493). Federal regulations require onsite
surveys to determine whether or not a laboratory is in compliance with the applicable regulations.
Compliance with these regulations is a condition of certification for the CLIA program.

The Centers for Medicare & Medicaid Services (CMS) conducted a CLIA recertification and
complaint survey of the laboratory.  The onsite survey was completed on November 20, 2015.
However, the survey concluded with the receipt of critical information received from the
laboratory on December 23, 2015.  As a result of the survey, it was determined that your facility
is not in compliance with all of the Conditions required for certification in the CLIA program.  In
addition, based on the Condition-level requirement at 42 C.F.R. § 493.1215, Hematology, it was
determined that the deficient practices of the laboratory pose immediate jeopardy to patient health
and safety.  (Immediate jeopardy is defined by the CLIA regulations as a situation in which
immediate corrective action is necessary because the laboratory's non-compliance with one or
more Condition-level requirements has already caused, is causing, or is likely to cause, at any time,
serious injury or harm, or death, to individuals served by the laboratory or to the health and safety
of the general public.)  Specifically, the following Conditions were not met:

| | |
|---|---|
| D5024: 42 C.F.R. § 493.1215 | Condition: Hematology; |
| D5400: 42 C.F.R. § 493.1250 | Condition: Analytic systems; |
| D6076: 42 C.F.R. § 493.1441 | Condition: Laboratories performing high complexity testing; laboratory director; |
| D6108: 42 C.F.R. § 493.1447 | Condition: Laboratories performing high complexity testing; technical supervisor; and, |

1

FOIA Confidential Treatment Requested by Theranos

D6168: 42 C.F.R. § 493.1487      Condition: Laboratories performing high complexity testing; testing personnel.

In addition, other standards were also found to be not met. Enclosed is Form CMS-2567, Statement of Deficiencies, listing all the deficiencies found during the survey.

When a laboratory's deficiencies pose immediate jeopardy, CMS requires the laboratory to take immediate action to remove the jeopardy and come into Condition-level compliance. Laboratories that do not meet the Condition-level requirements of CLIA may not be certified to perform laboratory testing under the CLIA program.

The laboratory has 10 CALENDAR DAYS from the date of receipt of this notice to provide CMS' Central Office and San Francisco Regional Office with a credible allegation of compliance and acceptable evidence of correction documenting that the immediate jeopardy has been removed and that action has been taken to correct all of the Condition-level deficiencies in question.

Please document the laboratory's allegation of compliance using the enclosed Form CMS-2567, Statement of Deficiencies, in the columns labeled "Provider Plan of Correction" and "Completion Date" located on the right side of the form, keying your responses to the deficiencies on the left. The laboratory director must sign, date and return the completed Form CMS-2567 documented with a credible allegation of compliance WITHIN 10 CALENDAR DAYS from the date of receipt of this notice. You must also submit documented evidence that verifies that the corrections were made. (Your allegation of compliance will be included in the public record of the inspection.)

For your information, a credible allegation of compliance is a statement or documentation that is:

1) Made by a representative of a laboratory with a history of having maintained a commitment to compliance and taking corrective action when required;

2) Realistic in terms of the possibility of the corrective action being accomplished between the date of the survey and the date of the allegation; and

3) Indicates resolution of the problems.

In addition, acceptable evidence of correction must include:

1) Documentation showing what corrective action(s) have been taken for patients found to have been affected by the deficient practice;

2) How the laboratory has identified other patients having the potential to be affected by the same deficient practice and what corrective action(s) has been taken;

3) What measure has been put into place or what systemic changes have been made to ensure that the deficient practice does not recur; and

2

    4)  How the corrective action(s) are being monitored to ensure the deficient practice does not recur.

If the laboratory submits a credible allegation of compliance and acceptable evidence of correction that the laboratory has removed jeopardy and come into Condition-level compliance, and we are able to verify compliance with all CLIA requirements through a follow-up survey, sanctions will not be imposed. If the laboratory does not submit a credible allegation of compliance and acceptable evidence of correction, we will not conduct a follow-up survey.

If jeopardy is not removed and the laboratory does not come into Condition-level compliance, CMS will take sanction action(s) against the laboratory's CLIA certificate. If necessary, we will advise the laboratory in writing of the sanction(s) to be imposed and/or enforcement action(s) that will be taken. These sanctions may include alternative sanctions (Civil Money Penalty of up to $10,000 per day of non-compliance pursuant to 42 C.F.R. §493.1834, Directed Plan of Correction pursuant to 42 C.F.R. § 493.1832, and/or State Onsite Monitoring pursuant to 42 C.F.R. § 493.1836) and principal sanctions (suspension, limitation and/or revocation of the laboratory's CLIA certificate and cancellation of the laboratory's approval for Medicare payments pursuant to 42 C.F.R. § 493.1814).

Please note that the routine survey takes an overview of the laboratory through random sampling. By its nature, the routine survey may not find every violation that the laboratory may have committed. It remains the responsibility of the laboratory and its director to ensure that the laboratory is at all times following all CLIA requirements, to identify any problems in the laboratory and take corrective action specific to the problems, and to institute appropriate quality assurance measures to ensure that the deficient practices do not recur.

In addition to the routine CLIA certification surveys, announced or unannounced investigations/surveys may be conducted by CMS or CMS' agents at any time to address complaints or other non-compliance issues. These investigations/surveys may well identify violations that may not have surfaced during a routine survey using random sampling, but for which the laboratory and its director will still be held responsible.

**Instructions for Submitting the Laboratory's Response**

All responses as well as any future correspondence pertaining to this survey should be sent to:

    Karen Fuller, Manager
    State Oversight and CLIA Branch
    Division of Survey and Certification
    Centers for Medicare & Medicaid Services
    90 7th Street, Suite 5-300 (5W)
    San Francisco, CA  94103-6707

A copy of any response the laboratory makes to CMS' San Francisco Regional Office must also be sent to CMS' Central Office at the following address:

FOIA Confidential Treatment Requested by Theranos

TS-0917885

**SER-113**

Division of Laboratory Services
Survey and Certification Group (SCG)
Center for Clinical Standards and Quality (CCSQ)
Centers for Medicare & Medicaid Services
7500 Security Blvd – Mail Stop C2-21-16
Baltimore, MD  21244
Attention: Sarah Bennett


If you have questions regarding this letter, please contact Gary Yamamoto of my staff at (415) 744-3738.


Sincerely,

Karen Fuller, Manager
State Oversight and CLIA Branch
Division of Survey and Certification


Enclosure:    Form CMS-2567, Statement of Deficiencies

cc:           California Department of Public Health, Laboratory Field Services

              CMS, Central Office


4

FOIA Confidential Treatment Requested by Theranos

TS-0917886

**SER-114**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D2094 | 493.841(e) ROUTINE CHEMISTRY<br><br>(1) For any unsatisfactory analyte or test performance or testing event for reasons other than a failure to participate, the laboratory must undertake appropriate training and employ the technical assistance necessary to correct problems associated with a proficiency testing failure.<br>(2) For any unacceptable analyte or testing event score, remedial action must be taken and documented, and the documentation must be maintained by the laboratory for two years from the date of participation in the proficiency testing event.<br>This STANDARD  is not met as evidenced by:<br> Based on review of proficiency testing (PT) documentation and interview with the General Supervisor (GS), the laboratory failed to investigate and document the investation of ungraded alkaline phosphatase (ALP) PT results for the 3rd event of 2014.  Findings include:<br><br>a.   The laboratory was enrolled with the College of American Pathologists (CAP) PT program for ALP for the 3rd event 2014.<br><br>b.   The CAP results showed that five of five samples (CHM-06 through CHM-10) were ungraded with a code [20].<br><br>c.   There was no documenation that the ungraded ALP results had been investigated.<br><br>d.   The general supervisor stated that the Quality Control/Quality Assurance (QC/QA) Manager was responsible for investigating ungraded PT results.<br><br>e.   The QC/QA Manger confirmed on 11/18/15 that an investigation was not done or | D2094 | | |

| LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided.  For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility.  If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  1 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D2094 | Continued From page 1 documented. | D2094 | | |
| D2128 | 493.851(e) HEMATOLOGY | D2128 | | |
| | (1) For any unsatisfactory analyte or test performance or testing event for reasons other than a failure to participate, the laboratory must undertake appropriate training and employ the technical assistance necessary to correct problems associated with a proficiency testing failure. (2) For any unacceptable analyte or testing event score, remedial action must be taken and documented, and the documentation must be maintained by the laboratory for two years from the date of participation in the proficiency testing event. This STANDARD  is not met as evidenced by: Based on review of proficiency testing (PT) documentation and interview with the General Supervisor (GS), the laboratory failed to investigate and document the investigation of ungraded blood cell identification PT results and failed to investigate and document the investigation of an unsatisfactory blood cell identification PT result for the 2nd event of 2014. Findings include: a.   The laboratory was enrolled with the American Proficiency Institute (API) PT program for blood cell identification for the 2nd event 2014. b.   The API results showed that two of five samples (BCI-13, BCI-14) were ungraded. c.   The API results showed that BCI-11 was graded as "unacceptable." d.   There was no documenation that the | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete        Event ID: W34211        Facility ID: CA22046272        If continuation sheet Page  2 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA 94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D2128 | Continued From page 2<br>ungraded and unsatisfactory results had been investigated.<br><br>e. The general supervisor stated that the Quality Control/Quality Assurance (QC/QA) Manager was responsible for investigating ungraded PT results.<br><br>f. The QC/QA Manger confirmed on 11/18/15 that an investigation was not done or documented. | D2128 | | |
| D5024 | 493.1215 HEMATOLOGY<br><br>If the laboratory provides services in the specialty of Hematology, the laboratory must meet the requirements specified in §§493.1230 through 493.1256, §493.1269, and §§493.1281 through 493.1299.<br><br>This CONDITION is not met as evidenced by: Based on the number and severity of the deficiencies cited herein, the Condition: Hematology was not met. The laboratory failed to have a procedure manual which included the corrective action to take when complete blood counts (CBC) calibration and quality control (QC) results failed to meet the laboratory's criteria for acceptability (see D5403); document CBC calibrations (see D5437); include two QC materials with differing white blood cell (WBC) patterns each day of testing (see D5447); verify stated values of commercially assayed CBC controls (see D5469); ensure QC for PT/INR was acceptable prior to reporting patient test results (see D5481); follow corrective action policies and procedures as necessary to maintain the laboratory operation for testing patient CBC specimens in a manner that ensured accurate | D5024 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete    Event ID: W34211    Facility ID: CA22046272    If continuation sheet Page 3 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5024 | Continued From page 3<br><br>and reliable patient test results and reports (see D5779); have an analytic systems quality assessment mechanism that included a review of the effectiveness of the laboratory's CBC processes and flow cytometer corrective actions taken to resolve problems (see D5779); and ensure that the calculated International Normalized Ratio (INR) results were accurate prior to reporting final patient results (see D5801). | D5024 | | |
| D5217 | 493.1236(c)(1) EVALUATION OF PROFICIENCY TESTING PERFORMANCE<br><br>At least twice annually, the laboratory must verify the accuracy of any test or procedure it performs that is not included in subpart I of this part.<br>This STANDARD  is not met as evidenced by:<br> Based on review of proficiency testing records and interview with the General Supervisor, the laboratory failed to investigate and document an investigation of ungraded troponin proficiency testing (PT) results from the 2nd event 2014. Findings include:<br><br>a.   The laboratory was enrolled in proficiency testing for troponin with the American Proficiency Institute (API) for the 2nd event 2014.<br><br>b.   Troponin results for five of five specimens (CM-06 through CM-10) were ungraded by API.<br><br>c.   There was no documentation that the ungraded results had been investigared or reviewed by the laboratory personnel.<br><br>d.   The general supervisor stated that the Quality Control/Quality Assurance (QC/QA) Manager was responsible for investigating ungraded PT results. | D5217 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917890

SER-118

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5217 | Continued From page 4<br><br>e.   The QC/QA Manger confirmed on 11/18/15 that an investigation was not done or documented. | D5217 | | |
| D5311<br><br>110H<br>120H<br>140H<br>210B<br>220B<br>310B<br>320M<br>330B<br>340B<br>400B<br>510M | 493.1242(a) SPECIMEN SUBMISSION, HANDLING, AND REFERRAL<br><br>The laboratory must establish and follow written policies and procedures for each of the following, if applicable:<br>(1) Patient preparation.<br>(2) Specimen collection.<br>(3) Specimen labeling, including patient name or unique patient identifier and, when appropriate, specimen source.<br>(4) Specimen storage and preservation.<br>(5) Conditions for specimen transportation.<br>(6) Specimen processing.<br>(7) Specimen acceptability and rejection.<br>(8) Specimen referral.<br>This STANDARD  is not met as evidenced by:<br> Based on laboratory personnel interviews and pre-analytic policies and procedures record review on September 23, 2015, the laboratory failed to establish written policies and procedures for patient specimen labeling.  Findings included:<br><br>a.   It was the practice of the laboratory to require that all patient specimens received be labeled with laboratory generated bar codes that were issued at the point of specimen collection.<br><br>b.   The laboratory maintained no written policies and procedures detailing this patient specimen labeling policy and procedure.<br><br>c.   According to laboratory records, the laboratory performed approximately 890,000 patient tests annually. | D5311 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  5 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5391<br><br>110H<br>120H<br>140H<br>210B<br>220B<br>310B<br>320M<br>330B<br>340B<br>400B<br>510M | **493.1249(a) PREANALYTIC SYSTEMS QUALITY ASSESSMENT**<br><br>The laboratory must establish and follow written policies and procedures for an ongoing mechanism to monitor, assess, and when indicated, correct problems identified in the preanalytic systems specified at §§493.1241 through 493.1242.<br><br>This STANDARD is not met as evidenced by:<br><br>1.   Based on laboratory personnel interviews and pre-analytic remedial action record review on September 23, 2015, the laboratory failed to establish written policies and procedures for an ongoing mechanism to monitor, assess, and when indicated, correct problems identified in the laboratory's preanalytic systems when received patient specimens did not meet the laboratory's criteria for acceptability.  Findings included:<br><br>a.   According to laboratory personnel, during the accessioning of patient specimens, if a patient specimen was received that did not meet the laboratory's criteria for acceptability, a description as to why the specimen did not meet the laboratory's criteria for acceptability would be electronically noted, applicable laboratory personnel would be notified, appropriate corrective actions would be taken and electronically noted, and the incident would be captured for quality assessment review.<br><br>b.   The laboratory maintained no written policies and procedures detailing this quality assessment process.<br><br>c.   According to laboratory records, the laboratory performed approximately 890,000 | D5391 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete        Event ID: W34211        Facility ID: CA22046272        If continuation sheet Page  6 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917892

**SER-120**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____ | B. WING _____ | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD** **NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5391 | Continued From page 6 patient tests annually. | D5391 | | |
| | 2.  Based on laboratory personnel interviews and patient specimen referral policies and procedures record review on September 23, 2015, the laboratory failed to establish written policies and procedures for an ongoing mechanism to monitor, assess, and when indicated, correct problems identified in the laboratory's preanalytic systems for patient specimens referred to other laboratories for testing.  Findings included: | | | |
| | a.  According to laboratory personnel, a log of patient specimens referred to other laboratories for testing was reviewed daily to ensure the timely receipt and reporting of the test results performed by the other laboratories. | | | |
| | b.  The laboratory maintained no written policies and procedures detailing this quality assessment process. | | | |
| D5393 110H 120H 140H 210B 220B 310B 320M 330B 340B 400B 510M | 493.1249(b)(c) PREANALYTIC SYSTEMS QUALITY ASSESSMENT  The preanalytic systems assessment must include a review of the effectiveness of corrective actions taken to resolve problems, revision of policies and procedures necessary to prevent recurrence of problems, and discussion of preanalytic systems quality assessment reviews with appropriate staff.  The laboratory must document all preanalytic systems quality assessment activities.  This STANDARD  is not met as evidenced by:  Based on laboratory personnel interviews and patient specimen referral policies and procedures record review on September 23, 2015, the | D5393 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page 7 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____ <br> B. WING _____ | | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD** <br> **NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5393 | Continued From page 7 <br> laboratory failed to document all preanalytic systems quality assessment activities, specifically for patient specimens referred to other laboratories for testing.  Findings included: <br><br> a.   According to laboratory personnel, a log of patient specimens referred to other laboratories for testing was reviewed daily to ensure the timely receipt and reporting of the test results performed by the other laboratories. <br><br> b.   The laboratory maintained no documentation indicating that the patient specimen referral log was reviewed daily. | D5393 | | |
| D5400 | 493.1250 ANALYTIC SYSTEMS <br><br> Each laboratory that performs nonwaived testing must meet the applicable analytic systems requirements in §§493.1251 through 493.1283, unless HHS approves a procedure, specified in Appendix C of the State Operations Manual (CMS Pub.7), that provides equivalent quality testing. The laboratory must monitor and evaluate the overall quality of the analytic systems and correct identified problems as specified in §493.1289 for each specialty and subspecialty of testing performed. <br><br> This CONDITION  is not met as evidenced by: <br>  Based on the number and severity of the deficiencies cited herein, the Condition: Analytic Systems was not met.  The laboratory failed to have a procedure manual that included corrective action for chemistry quality control (QC) (see D5403); failed to have procedures signed, dated, and approved by the laboratory director prior to use (see D5407); failed to have freezer temperature consistent with manufacturer | D5400 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  8 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5400 | Continued From page 8<br><br>requirements (see D5413); failed to verify performance specifications on the Advia XPT (see D5421); failed to establish performance specification when the alkaline phosphatase test system was modified (see D5423); failed to perform weekly maintenance on the Evolis (see D5429); failed to document hematology calibration (see D5437); failed to include two quality control materials at least once each day WBC differentials were performed (see D5447); failed to include positive quality control materials each day patient specimens were assayed (see D5449); failed to verify the criteria for acceptability of quality control materials for hematology and chemistry (see D5469); failed to check blood agar plates for its ability to support growth (see D5477); failed to ensure that QC test results met the laboratory's criteria for acceptability for Prothrombin Time/International Normalized Ratio and the Theranos Proprietary System (TPS) prior to reporting patient test results (see D5481); failed to have a system that twice per year evaluated and defined the relationship for WBC differentials and the TPS (see D5775); failed to follow hematology corrective action policies and procedures (see D5779); failed to have a record system that documented the lot number of media used to test patient bacteriology specimens (see D5787); failed to follow quality assessment (QA) policies and procedures (see D5791); and failed to monitor the effectiveness of corrective actions and revise policies and procedures to prevent recurrence of problems (see D5793). | D5400 | | |
| D5403<br><br>400M | 493.1251(b) PROCEDURE MANUAL<br><br>The procedure manual must include the following when applicable to the test procedure: | D5403 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  9 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____<br>B. WING _____ | | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5403 | Continued From page 9<br><br>(1) Requirements for patient preparation; specimen collection, labeling, storage, preservation, transportation, processing, and referral; and criteria for specimen acceptability and rejection as described in §493.1242.<br>(2) Microscopic examination, including the detection of inadequately prepared slides.<br>(3) Step-by-step performance of the procedure, including test calculations and interpretation of results.<br>(4) Preparation of slides, solutions, calibrators, controls, reagents, stains, and other materials used in testing.<br>(5) Calibration and calibration verification procedures.<br>(6) The reportable range for test results for the test system as established or verified in §493.1253.<br>(7) Control procedures.<br>(8) Corrective action to take when calibration or control results fail to meet the laboratory's criteria for acceptability.<br>(9) Limitations in the test methodology, including interfering substances.<br>(10) Reference intervals (normal values).<br>(11) Imminently life-threatening test results, or panic or alert values.<br>(12) Pertinent literature references.<br>(13) The laboratory's system for entering results in the patient record and reporting patient results including, when appropriate, the protocol for reporting imminently life threatening results, or panic, or alert values.<br>(14) Description of the course of action to take if a test system becomes inoperable.<br><br>This STANDARD  is not met as evidenced by:<br>1.  Based on laboratory personnel interviews and the laboratory's hematology Advia 2120i | D5403 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete      Event ID: W34211      Facility ID: CA22046272      If continuation sheet Page  10 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5403 | Continued From page 10

procedure record review on November 19, 2015, the laboratory failed to have a procedure manual that included the corrective action to take when calibration or quality control results failed to meet the laboratory's criteria for acceptability.  Findings included:

a.   It was the practice of the laboratory to test patient venous complete blood counts (CBC) specimens using a Siemens Advia 2120i instrument.

b.   In the laboratory's procedure titled "SOP Advia 2120i Operation and Maintenance," there was no written protocol for the corrective action to be taken when calibration or quality control results failed to meet the laboratory's criteria for acceptability.

c.   Between February 2015 and September 21, 2015, the laboratory performed and reported 2,395 patient CBC test results using the Advia 2120i.

2.   Based on review of the quality control (QC) procedure for the Edison 3.5 Theranos System and documentation provided by the laboratory, the laboratory failed to have a procedure for QC prior to 5/15/2014.  Findings include:

a.   CL SOP-15026 Revision A, "Edison 3.5 Theranos System Daily QC Procedure" revealed an effective date of 5/15/2014.

b.   A chart provided by the laboratory indicated that eight of twelve analytes run on the above system were put into use for patient testing prior to 5/15/2014. The initial use dates of the eight analytes ranged from 11/6/2013 through | D5403 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  11 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5403 | Continued From page 11<br>5/9/2014. | D5403 | | |
| D5407 | 493.1251(d) PROCEDURE MANUAL | D5407 | | |
| | Procedures and changes in procedures must be approved, signed, and dated by the current laboratory director before use.<br>This STANDARD  is not met as evidenced by:<br> Based on review of procedures and interview with the technical supervisor, the current laboratory director (LD) failed to sign, date and approve procedures prior to use.  Findings include: | | | |
| | a.   The current LD start date was 2/10/2015. | | | |
| | b.   Eight procedures were reviewed.  Seven of seven procedures did not include a LD signature prior to putting into use and one of one was not signed by the current LD. | | | |
| | c.   CL SOP-09161, Revision A (Apolipoprotein) showed an effective date of 12/5/2014, but was not signed by the LD until 9/19/2015.  It was signed by a technical supervisors "for the LD."  The procedure was not signed, dated and approved by any LD prior to 9/19/2015. | | | |
| | d.   CL SOP-10001, Revision B  (Measuring Prothrombin Time-Innovin (PT) on the Siemens BCS XP Instrument) showed an effective date of 12/5/2014, but was not signed by the LD until 9/19/2015.  The procedure was not signed, dated and approved by any LD prior to 9/19/2015. | | | |
| | e.   CL SOP-06060, Revision A (SensoScientific Monitor) showed an effective date of 6/23/2015, but was not signed by the LD until 9/22/2015. | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  12 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917898

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5407 | Continued From page 12<br><br>f.    CL SOP-15036, Revision A (Edison 3.5 Theranos System Daily QC Procedure) showed an effective date of 12/5/2014, but was not signed by the LD until 9/19/2015.  The procedure was not signed, dated and approved by any LD prior to 9/19/2015.<br><br>g.    CL PLN-14003, Revision A (Master Validation Chemistry Assays on Theranos Devices) showed an effective date of 11/4/2011, but was not signed by the LD until 9/19/2015.  The procedure was not signed, dated and approved by any LD prior to 9/19/2015.<br><br>h.    Three of three procedures for the Advia Chemistry System (Glucose/CL SOP-09118, Carbon Dioxide (CO2)/CL SOP-09111, Alkaline Phosphatase/CL SOP-81102) were put into use in December 2014. The CO2 and alkaline phosphatase procedures were not signed, dated and approved by the LD until 9/19/2015.  The glucose procedure was not signed, dated and approved by the LD. | D5407 | | |
| D5413 | 493.1252(b) TEST SYSTEMS, EQUIPMENT, INSTRUMENTS, REAGENT<br><br>The laboratory must define criteria for those conditions that are essential for proper storage of reagents and specimens, accurate and reliable test system operation, and test result reporting. The criteria must be consistent with the manufacturer's instructions, if provided.  These conditions must be monitored and documented and, if applicable, include the following:<br>(1) Water quality.<br>(2) Temperature.<br>(3) Humidity.<br>(4) Protection of equipment and instruments from | D5413 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  13 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5413 | Continued From page 13<br>fluctuations and interruptions in electrical current that adversely affect patient test results and test reports.<br>This STANDARD  is not met as evidenced by:<br>1.  Based on observation and document review, the laboratory failed to define freezer temperature ranges that were consistent with the manufacturer's instructions for freezers which stored reference materials and patient specimens.  Findings include:<br><br>a.   A tour of the laboratory where the freezers were kept showed that the freezer doors were labeled with the laboratory's acceptable temperature ranges.<br><br>b.   Four of four -80 C freezers were marked with a temperature range of -60 to -90 C.<br><br>c.   Six of six -20 C freezers were marked with a temperature range of -17 to -25 C.<br><br>d.   Review of two manufacturer instructions for samples stored in the -80 freezers required that the samples be kept at "at least -80 C."<br><br>e.   Review of 3 manufacturer instructions for samples stored in the -20 freezers required that the samples be kept at "at least -20 C."<br><br>f.   The Director of Assay Systems and technical supervisor confirmed at 11/19/15 at approximately 11 am that the freezers were labeled with the above ranges and that the ranges did not meet the manufacturers instructions.<br><br>2.   Based on review of the procedure, manufacturer package insert (PI) and | D5413 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  14 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917900

**SER-128**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD<br>NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5413 | Continued From page 14<br>observation, the laboratory failed to follow the manufacturer instructions for expiration date of Innovin (thromboplastin) used for Prothrombin Time/International Normalized Ratio (PT/INR) testing. Findings include:<br><br>a.    Dade Innovin (thromboplastin) lot number 539280 was put into use by the laboratory at the end of March 2015.<br><br>b.    The general supervisor stated that the package inserts were usually white.<br><br>c.    The package insert for lot number 539280 was pink which indicated that the manufacturer had included special instructions for the specific lot number of Innovin.<br><br>d.    Review of the PI revealed an "important note" that this specific lot number was only stable for 2 days instead of 10 days after reconstitution when stored at 2-8 C.<br><br>e.    The current vial of Innovin reagent was observed in the 2-8 C refrigerator with a 5 day expiration date.<br><br>f.    CL SOP-10001 Revision A, "Measuring Prothrombin Time..." stated on page 10, section 12.1 that "the package insert for a new lot must be reviewed for any changes before use."<br><br>g.    The general supervisor confirmed on 9/23/15 that the change in storage and stability of the Innovin reagent had not been identified from March 2015 through September 2015. | D5413 | | |
| D5421 | 493.1253(b)(1) ESTABLISHMENT AND VERIFICATION OF PERFORMANCE | D5421 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  15 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917901

SER-129

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 15<br><br>Each laboratory that introduces an unmodified, FDA-cleared or approved test system must do the following before reporting patient test results:<br>(1)(i) Demonstrate that it can obtain performance specifications comparable to those established by the manufacturer for the following performance characteristics:<br>(1)(i)(A) Accuracy.<br>(1)(i)(B) Precision.<br>(1)(i)(C) Reportable range of test results for the test system.<br>(1)(ii) Verify that the manufacturer's reference intervals (normal values) are appropriate for the laboratory's patient population.<br>This STANDARD  is not met as evidenced by:<br>  1.  Based on review of the performance specification verification documentation and interview with the general supervisor and technical supervisor, the laboratory failed to maintain any documentation that the laboratory had participated in conducting the verification of the performance specifications on the Advia XPT. Findings include:<br><br>a.   The general supervisor and techincal supervisor stated that the manufacturer performed all of the performance specification verification activities on the Advia XPT.<br><br>b.   They further stated that the laboratory staff were available to prepare quality control material and gathering patient samples for the manufacturer representative to perform the verification.<br><br>c.   The Director of Assays confirmed that the manufacturer had performed the verification of performance specifications on the Advia XPT. | D5421 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  16 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917902

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 16 | D5421 | | |
| | 2.   Based on review of verification procedures, verification documentation and interview with general supervisor and technical supervisor, the laboratory failed to verify accuracy, precision, and/or reportable range for calcium, albumin, apolipoprotein, triglyceride, carbon dioxide, and glucose.  In addition, the laboratory failed to verify the reference interval (normal range) for carbon dioxide. Findings include: | | | |
| | a.   CL QOP-00022, "Verification of Procedures Revision A", effective 8/12/14, stated in Section V.B.1.a. in order to determine accuracy "at least 20 samples of various reactivity's should be compared between the method and the old method...if a second method is not available onsite, compare 20 samples tested by a different method used by a different laboratory."  The procdures also stated that the validation plan should determine what percentage of accuracy is acceptable. | | | |
| | b.   CL QOP-00022, "Verification of Procedures Revision A", effective 8/12/14, stated in Section V.B.1.b. that "a replication experiment" is used to determine precision.  The procedure further stated that "at least 20 samples of various reactivity's are run 2 or 3 times and results compared. Duplicate runs may be on different days or by different microbiologists..."  The procedure also required that the percentage of precision for acceptability must be determined. | | | |
| | c.   CL QOP-00022, "Verification of Procedures Revision A", effective 8/12/14, stated in Section V.B.1.c. that the reportable range "is the range of test results from the lowest to the highest that are reliable and therefore reportable." | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  17 of 121

FOIA Confidential Treatment Requested by Theranos

| | | | PRINTED: 01/25/2016 |
|---|---|---|---|
| DEPARTMENT OF HEALTH AND HUMAN SERVICES | | | FORM APPROVED |
| CENTERS FOR MEDICARE & MEDICAID SERVICES | | | OMB NO. 0938-0391 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 17<br><br>d.   CL QOP-00022, "Verification of Procedures Revision A," effective 8/12/14, stated in Section V.B.1.d. required that the validation plan be approved by the laboratory director "before testing begins."<br><br>e.   The general supervisor and techinical supervisor stated that the Advia XPT was put into use 12/18/14.<br><br>Calcium<br><br>i.   Standard Operating Procedure (SOP) CL SOP-09107, "Calcium (CA, CA_2) in serum, plasma or urine on the Siemens Advia Chemistry Systems indicated that the reportable range for serum and plasma samples was 1.0-16.0 mg/dL.<br><br>ii.   The manufacturer performed the verification of performance specifications for serum on 10/23/14.  There was no documentation that the performance specifications had been verified for plasma samples.<br><br>iii.   The accuracy study included samples which ranged from 4.58-15.8 mg/dL.<br><br>iv.   The accuracy study did not include samples across the entire reportable range.<br><br>v.   The accuracy study did not include a comparison study as required by the laboratory's procedure.<br><br>vi.   The accuracy study did not indicate an acceptable percentage for accuracy.<br><br>vii.   The precision study included samples which | D5421 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  18 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 05D2025714 | A. BUILDING _____ <br> B. WING _____ | | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD <br> NEWARK, CA 94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 18 <br> ranged from 4.58-12.93 mg/dL. <br><br> viii.  The precision study did not include samples across the entire reportable range. <br><br> ix.   The precision study only included within run precision and did not include day-to-day, run-to-run, or different operators. <br><br> x.    The summary report from the manufacturer showed that the reportable range for serum calcium was 0.5-16.0 mg/dL which differed from the calcium SOP. <br><br> xi.   The reportable range data showed included samples from 1.0-13.4 mg/dL which did not cover the entire reportable range stated in the SOP. <br><br> Albumin <br><br> i.    Standard Operating Procedure (SOP) CL SOP-09186 Revision A, "Albumin BCP (ALP) in serum or plasma Advia Chemistry Systems indicated that the reportable range for serum and plasma samples was 0.6-8.0 g/dL. The SOP was effective 7/31/15. <br><br> ii.   The manufacturer performed the verification of performance specifications for serum on 10/23/14. There was no documentation that the performance specifications had been verified for plasma samples. <br><br> iii.  The accuracy study included samples which ranged from 2.0-4.4 g/dL. <br><br> iv.   The accuracy study did not include samples across the entire reportable range. | D5421 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 19 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917905

SER-133

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 19<br><br>v.    The accuracy study did not include a comparison study as required by the laboratory's procedure.<br><br>vi.    The accuracy study did not indicate an acceptable percentage for accuracy.<br><br>vii.    The precision study included samples which ranged from 0.5-5.5 g/dL.<br><br>viii.    The precision study did not include samples across the entire reportable range.<br><br>ix.    The SOP stated that for precision each sample 2 times per run, 2 runs per day, for at least 20 days.<br><br>x.    The precision study only included within run precision and did not include 2 times per run, 2 runs per day, for at least 20 days.<br><br>xi.    The summary report from the manufacturer showed that the reportable range for serum albumin was 0.8-8.0 g/dL which differed from the SOP.<br><br>xii.    The reportable range data showed included samples from 0.4-6.9 g/dL which did not cover the entire reportable range stated in the SOP.<br><br>Apolipoprotein<br><br>i.    Standard Operating Procedure (SOP) CL SOP-09161 Revision A, "Apolipoprotein A-1 in serum or plasma Chemistry Systems indicated that the reportable range for serum and plasma samples was 15-(200-260) mg/dL. The SOP stated that the reference interval (normal range) for males was 79-169 mg/dL and females was 76 | D5421 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete     Event ID: W34211     Facility ID: CA22046272     If continuation sheet Page  20 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA 94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 20 -214 mg/dL.<br><br>ii.   The manufacturer performed the verification of performance specifications for serum on 11/6/14.  There was no documentation that the performance specifications had been verified for plasma samples.<br><br>iii.   The accuracy study included samples which ranged from 88.6-412.0mg/dL.<br><br>iv.   The accuracy study did not include samples across the entire reportable range.<br><br>v.   The accuracy study did not include a comparison study as required by the laboratory's procedure.<br><br>vi.   The accuracy study did not indicate an acceptable percentage for accuracy.<br><br>vii.   The precision study included samples which ranged from 100.9-314.7 mg/dL.<br><br>viii.   The precision study did not include samples across the entire reportable range.<br><br>ix.   The precision study only included within run precision and did not include day-to-day, run-to-run, or different operators.<br><br>x.   The summary report from the manufacturer showed that the reportable range for serum  was "15-  " mg/dL which differed from the SOP.<br><br>Triglyceride<br><br>i.   The manufacturer performed the verification of performance specifications on 10/23/14.  The | D5421 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  21 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 21<br><br>manufacturer summary report showed that the reportable range was 0-500 mg/dL. The manufacturer summary report revealed reference interval (normal range) was 0-300 mg/dL.<br><br>ii.    The accuracy study included samples which ranged from 62.7-259 mg/dL.<br><br>iii.   The accuracy study did not include samples across the entire reportable range.<br><br>iv.    The acuracy study did not include a comparison study as required by the laboratory's procedure.<br><br>v.    The accuracy study did not indicate an acceptable percentage for accuracy.<br><br>vi.   The precision study included samples which ranged from 77.6-237.3 mg/dL.<br><br>vii.  The precision study did not include samples across the entire reportable range.<br><br>viii. The precision study only included within run precision and did not include day-to-day, run-to-run, or different operators.<br><br>ix.   The reportable range data included samples from 74.0-447.0 mg/dL which did not cover the entire reportable range stated in the SOP.<br><br>x.    The laboratory director did not sign and approve the verification of performance specifications. Patient testing began 12/18/14.<br><br>Glucose<br><br>i.    Standard Operating Procedure (SOP) CL | D5421 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID:W34211          Facility ID: CA22046272          If continuation sheet Page  22 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917908

**SER-136**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 22<br>SOP-09118 Revision A, "Glucose in serum, plasma, urine or CSF on the Advia Chemistry Systems" indicated that the reportable range for serum and plasma samples was 4-700 mg/dL.<br><br>ii.   The manufacturer performed the verification of performance specifications for serum on 10/23/14.  There was no documentation that the performance specifications had been verified for plasma samples.<br><br>iii.   The accuracy study included samples which ranged from 47.2-384.0 mg/dL.<br><br>iv.   The accuracy study did not include samples across the entire reportable range.<br><br>v.   The accuracy study did not include a comparison study as required by the laboratory's procedure.<br><br>vi.   The accuracy study did not indicate an acceptable percentage for accuracy.<br><br>vii.   The precision study included samples which ranged from 57.9-356.2 mg/dL.<br><br>viii. The precision study did not include samples across the entire reportable range.<br><br>ix.   The precision study only included within run precision and did not include 2 times per run, 2 runs per day, for at least 20 days.<br><br>x.   The reportable range data showed included samples from 10.6-557.27 mg/dLwhich did not cover the entire reportable range stated in the SOP. | D5421 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 23 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 23<br>Carbon Dioxide (CO2)<br><br>i.     Standard Operating Procedure (SOP) CL SOP-09111 Revision B, "CO2 in serum or plasma on the Advia Chemistry Systems" indicated that the reportable range for serum or plasma was 10-40 mEq/L. .<br><br>ii.    The manufacturer performed the verification of performance specifications for serum on 10/23/14.  There was no documentation that the performance specifications had been verified for plasma samples.<br><br>iii.   The accuracy study included samples which ranged from 12.9-34.3 mEq/L.<br><br>iv.    The accuracy study did not include samples across the entire reportable range.<br><br>v.     The accuracy study did not include a comparison study as required by the laboratory's procedure.<br><br>vi.    The accuracy study did not indicate an acceptable percentage for accuracy.<br><br>vii.   The precision study included samples which ranged from 14.3-23.0 mEq/L.<br><br>viii.  The precision study did not include samples across the entire reportable range.<br><br>ix.    The precision study only included within run precision and did not include 2 times per run, 2 runs per day, for at least 20 days.<br><br>x.     The manufacturer summary report indicated that the verification of the reference interval did | D5421 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  24 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5421 | Continued From page 24 not pass. xi.   No further documentation verifying the reference interval was presented to the surveyor. xii.  The laboratory director approved the verification study on 11/18/14.  Patient testing began on 12/18/14. | D5421 | | |
| D5423 | 493.1253(b)(2) ESTABLISHMENT AND VERIFICATION OF PERFORMANCE Each laboratory that modifies an FDA-cleared or approved test system, or introduces a test system not subject to FDA clearance or approval (including methods developed in-house and standardized methods such as text book procedures), or uses a test system in which performance specifications are not provided by the manufacturer must, before reporting patient test results, establish for each test system the performance specifications for the following performance characteristics, as applicable: (2)(i) Accuracy. (2)(ii) Precision. (2)(iii) Analytical sensitivity. (2)(iv) Analytical specificity to include interfering substances. (2)(v) Reportable range of test results for the test system. (2)(vi) Reference intervals (normal values). (2)(vii) Any other performance characteristic required for test performance. This STANDARD  is not met as evidenced by:  Based on review of the alkaline phosphatase procedure, manufacturer verification report and interview with the Director of Assays, the laboratory failed to establish performance specifications when the laboratory modified the | D5423 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  25 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5423 | Continued From page 25<br><br>reportable range for alkaline phosphatase. Findings include:<br><br>a.   Standard Operating Procedure (SOP) CL SOP-09102 Revision B, "Alkaline Phosphatase (ALP) in serum or plasma on the Advia Chemistry Systems" indicated that the reportable range for serum and plasma samples was 0-1100 IU/L.<br><br>b.   The Director of Assays stated that the reportable range was 10-1100 IU/L and that the SOP was incorrect.<br><br>c.   The manufacturer performed the verification of performance specifications for serum on 10/23/14.  There was no documentation that the performance specifications had been verified for plasma samples.<br><br>d.   The accuracy study included samples which ranged from 23.70-423.0 IU/L.<br><br>e.   The accuracy study did not include samples across the entire reportable range.<br><br>f.   The accuracy study did not include a comparison study as required by the laboratory's procedure.<br><br>g.   The accuracy study did not indicate an acceptable percentage for accuracy.<br><br>h.   The precision study included samples which ranged from 30.9-359.0 IU/L.<br><br>i.   The precision study did not include samples across the entire reportable range.<br><br>j.   The precision study included within run | D5423 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  26 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 05D2025714 | A. BUILDING _____ <br> B. WING _____ | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD <br> NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5423 | Continued From page 26 <br><br> precision, but did not include day-to-day, run-to-run, or different operators. <br><br> k.   The summary report from the manufacturer showed that the reportable range for serum ALP was 0-1100 IU/L. <br><br> l.   The reportable range data showed included samples from 12-914 IU/L which did not cover the entire reportable range. <br><br> m.   The Director of Assays stated that analytic sensitivity and analytic specificity was not established for the modified ALP assay. | D5423 | | |
| D5429 <br><br> 220M | 493.1254(a)(1) MAINTENANCE AND FUNCTION CHECKS <br><br> For unmodified manufacturer's equipment, instruments, or test systems, the laboratory must perform and document maintenance as defined by the manufacturer and with at least the frequency specified by the manufacturer. <br> This STANDARD  is not met as evidenced by: <br> Based on technical supervisor interviews and Evolis maintenance log record review on November 17, 2015, the laboratory failed to perform weekly Evolis maintenance as defined by the manufacturer.  Findings included: <br><br> a.   In general immunology, it was the practice of the laboratory to test patient ANA, HIV Ag/Ab, and quantiferon using the Bio-Rad Evolis system. <br><br> b.   In August 2015, for 2 (weeks 1 and 3) of 4 weeks in which patient specimens were tested, the laboratory maintained no documentation to indicate that weekly manufacturer required maintenance had been performed. | D5429 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  27 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5429 | Continued From page 27<br><br>c.   In August 2015, the laboratory performed and reported 844 patient HIV Ag/Ab test results using the Evolis system. | D5429 | | |
| D5437<br><br>400M | 493.1255(a) CALIBRATION AND CALIBRATION VERIFICATION<br><br>Unless otherwise specified in this subpart, for each applicable test system the laboratory must perform and document calibration procedures--<br>(1) Following the manufacturer's test system instructions, using calibration materials provided or specified, and with at least the frequency recommended by the manufacturer;<br>(2) Using the criteria verified or established by the laboratory as specified in §493.1253(b)(3)--<br>(2)(i) Using calibration materials appropriate for the test system and, if possible, traceable to a reference method or reference material of known value; and<br>(2)(ii) Including the number, type, and concentration of calibration materials, as well as acceptable limits for and the frequency of calibration; and<br>(3) Whenever calibration verification fails to meet the laboratory's acceptable limits for calibration verification.<br><br><br>This STANDARD  is not met as evidenced by:<br>1.   Based on laboratory personnel interviews and complete blood counts (CBC) calibration documentation record reviews on September 23, 2015, the laboratory failed to document all CBC instrument calibrations performed using the Drew 3 instruments.  Findings included:<br><br>a.   It was the practice of the laboratory to test | D5437 | | |

FOIA Confidential Treatment Requested by Theranos

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>CENTERS FOR MEDICARE & MEDICAID SERVICES | | | PRINTED:  01/25/2016<br>FORM APPROVED<br>OMB NO. 0938-0391 |
|---|---|---|---|

| STATEMENT OF DEFICIENCIES<br>AND PLAN OF CORRECTION | (X1)  PROVIDER/SUPPLIER/CLIA<br>IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY<br>COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID<br>PREFIX<br>TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(EACH DEFICIENCY MUST BE PRECEDED BY FULL<br>REGULATORY OR LSC IDENTIFYING INFORMATION) | ID<br>PREFIX<br>TAG | PROVIDER'S PLAN OF CORRECTION<br>(EACH CORRECTIVE ACTION SHOULD BE<br>CROSS-REFERENCED TO THE APPROPRIATE<br>DEFICIENCY) | (X5)<br>COMPLETION<br>DATE |
|---|---|---|---|---|
| D5437 | Continued From page 28<br>patient capillary CBC specimens using two Drew 3 instruments the laboratory designated as "Drew #2" and "Drew #3." On September 23, 2015, information recorded on "Drew #2" indicated that the "Drew #2" was calibrated on August 24, 2015, and information recorded on "Drew #3" indicated that the "Drew #3" was calibrated on August 31, 2015.<br><br>b.  The laboratory maintained no documentation of the August 24, 2015 and August 31, 2015 calibrations of the laboratory's two Drew 3 CBC instruments.<br><br>c.  According to laboratory personnel, between August 24, 2015 and September 23, 2015, the laboratory performed and reported 864 patient CBC specimens using the two Drew 3 instruments.<br><br>2.  Based on laboratory personnel interviews and complete blood counts (CBC) calibration documentation record reviews on November 19, 2015, the laboratory failed to document all CBC instrument calibrations performed using a Advia 2120i instrument.  Findings included:<br><br>a.  It was the practice of the laboratory to test patient venous CBC specimens using two Siemens Advia 2120i instruments, designated as #1 and #2.<br><br>b.  For Advia 2120i #1, the laboratory maintained no documentation of any calibrations prior to September 21, 2015.  For Advia 2120i #2, the laboratory maintained no documentation of any calibrations performed.<br><br>c.  Between February 2015 and September 21, | D5437 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  29 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>CENTERS FOR MEDICARE & MEDICAID SERVICES | | | PRINTED: 01/25/2016<br>FORM APPROVED<br>OMB NO. 0938-0391 |
|---|---|---|---|

| STATEMENT OF DEFICIENCIES<br>AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA<br>IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY<br>COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID<br>PREFIX<br>TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(EACH DEFICIENCY MUST BE PRECEDED BY FULL<br>REGULATORY OR LSC IDENTIFYING INFORMATION) | ID<br>PREFIX<br>TAG | PROVIDER'S PLAN OF CORRECTION<br>(EACH CORRECTIVE ACTION SHOULD BE<br>CROSS-REFERENCED TO THE APPROPRIATE<br>DEFICIENCY) | (X5)<br>COMPLETION<br>DATE |
|---|---|---|---|---|
| D5437 | Continued From page 29<br>2015, the laboratory performed and reported 2,395 patient CBC test results using the Advia 2120i #1.  From November 6, 2015 to November 19, 2015, the laboratory performed and reported 67 patient CBC test results using the Advia 2120I #2. | D5437 | | |
| D5447<br><br>400H | 493.1256(d)(3)(i)(g) CONTROL PROCEDURES<br><br>Unless CMS Approves a procedure, specified in Appendix C of the State Operations Manual (CMS Pub. 7), that provides equivalent quality testing, the laboratory must--<br><br>At least once a day patient specimens are assayed or examined perform the following for--<br><br>Each quantitative procedure, include two control materials of different concentrations;<br><br>(g) The laboratory must document all control procedures performed.<br>This STANDARD  is not met as evidenced by:<br> Based on laboratory personnel interviews and WBC differential quality control record review on November 19, 2015, the laboratory failed to include two quality control materials with differing WBC differential patterns at least once each day patient WBC differential specimens were examined using the Cellavision instrument. Findings included:<br><br>a.   It was the practice of the laboratory to use the Cellavision instrument to aid in the examination and reporting of patient WBC differentials performed from stained slides.<br><br>b.   According to laboratory personnel, although the laboratory performed a function check (cell | D5447 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete    Event ID: W34211    Facility ID: CA22046272    If continuation sheet Page  30 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA 94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5447 | Continued From page 30<br><br>locator) each day the Cellavision was used to examine patient stained slides, the laboratory did not examine two quality control materials with differing WBC differential patterns each day the Cellavision was used to examine patient stained slides. Laboratory personnel also stated that all Cellavision examinations were reviewed by testing personnel and revised, if necessary, before the examination was release for reporting. However, the Cellavision did perform the primary WBC differential screening of patient stained slides.<br><br>c. According to laboratory personnel, since February 2015, the laboratory examined and reported 225 patient WBC differentials using the Cellavision. | D5447 | | |
| D5449<br><br>110H 220H | 493.1256(d)(3)(ii)(g) CONTROL PROCEDURES<br><br>Unless CMS Approves a procedure, specified in Appendix C of the State Operations Manual (CMS Pub. 7), that provides equivalent quality testing, the laboratory must--<br><br>At least once a day patient specimens are assayed or examined perform the following for--<br><br>Each qualitative procedure, include a negative and positive control material;<br><br>(g) The laboratory must document all control procedures performed.<br>This STANDARD is not met as evidenced by:<br>Based on technical supervisor interview and CT/NG quality control record review on November 17, 2015, at least once a day patient specimens were assayed, the laboratory failed to include a positive CT/NG quality control material. | D5449 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 31 of 121

| DEPARTMENT OF HEALTH AND HUMAN SERVICES | | | | | | PRINTED: 01/25/2016 FORM APPROVED |
| CENTERS FOR MEDICARE & MEDICAID SERVICES | | | | | | OMB NO. 0938-0391 |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____  B. WING _____ | | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD**  **NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5449 | Continued From page 31  Findings included:  a.   It was the practice of the laboratory to perform and report patient CT/NG testing using a PCR method.  b.   Laboratory records indicated that on November 13, 2015 the laboratory performed patient CT/NG testing without including a positive CT/NG quality control material in the assay. Although the laboratory included samples the manufacturer labeled as a "positive" CT/NG quality control material in the assay, the test results of this "positive" CT/NG quality control material were used to calculate the assay cutoff which determines whether patient test results tested as positive or negative for CT/NG.  As a result, the manufacturer's "positive" CT/NG quality control material was considered a calibrator and not quality control material.  The laboratory assayed no other positive CT/NG quality control materials.  c.   On November 13, 2015, the laboratory tested 41 patient CT/NG specimens.  d.   Pursuant to 42 C.F.R. 493.1256(d)(9), when using calibration material as control material, the laboratory must at least use calibration material from a different lot than that used to establish a cut-off value. | D5449 | | |
| D5469 400H | 493.1256(d)(10)(g) CONTROL PROCEDURES  Unless CMS Approves a procedure, specified in Appendix C of the State Operations Manual (CMS Pub. 7), that provides equivalent quality testing, the laboratory must-- | D5469 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917918

**SER-146**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED  **11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  **THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE  **7333 GATEWAY BLVD NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5469 | Continued From page 32

Establish or verify the criteria for acceptability of all control materials.

(i) When control materials providing quantitative results are used, statistical parameters (for example, mean and standard deviation) for each batch and lot number of control materials must be defined and available.
(ii) The laboratory may use the stated value of a commercially assayed control material provided the stated value is for the methodology and instrumentation employed by the laboratory and is verified by the laboratory.
(iii) Statistical parameters for unassayed control materials must be established over time by the laboratory through concurrent testing of control materials having previously determined statistical parameters.

(g) The laboratory must document all control procedures performed.
This STANDARD  is not met as evidenced by:
 1.  Based on laboratory personnel interviews and complete blood counts (CBC) quality control record review on September 23, 2015, the laboratory failed to verify the stated values of the commercially assayed CBC quality control materials in use at the time of the survey.
Findings included:

a.   It was the practice of the laboratory to use commercially assayed CBC quality control materials to monitor patient CBC testing using two Drew 3 instruments..

b.   Laboratory CBC quality control records indicated that on June 27, 2015 the laboratory changed the lot of quality control material from lot number EX045 to EX075. | D5469 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  33 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD<br>NEWARK, CA 94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5469 | Continued From page 33 | D5469 | | |
| | c.   The laboratory maintained no documentation to indicate that the stated values of CBC quality control material lot number EX075 had been verified by the laboratory. | | | |
| | d.   According to laboratory personnel, between June 27, 2015 and September 24, 2015, the laboratory used one of the Drew 3 instruments on 30 different days to perform and report patient CBC specimens, and used the other Drew 3 instrument on 87 different days to perform and report patient CBC specimens. | | | |
| | 2.   Based on interview with the general supervisor and chemistry quality control (QC) records on November 17, 2015, the laboratory failed to verify the stated values of the commercially assayed QC material.  Findings include: | | | |
| | a.   The general supervior stated that when a new lot number of QC was started, the QC ranges were entered into the chemistry analyzers (Advia 1800 and Advia XPT) from the manufacturer's package insert just prior to use. | | | |
| | b.   The general supervisor further stated that the new lot number of QC was run one time prior to patient testing. | | | |
| | c.   QC records show that MultiQual lot number 45660 was put into use in 2014 and discontinued in August 2015. | | | |
| | d.   The general supervisor and Director of Assays confirmed on 11/17/15 at 9:40 am that manufacturer's QC ranges for new lot numbers of chemistry controls were not verified. | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete      Event ID: W34211      Facility ID: CA22046272      If continuation sheet Page  34 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917920

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5477<br><br>110H | 493.1256(e)(4)(g) CONTROL PROCEDURES<br><br>(e) For reagent, media, and supply checks, the laboratory must do the following:<br><br>(e)(4) Before, or concurrent with the initial use--<br>(e)(4)(i) Check each batch of media for sterility if sterility is required for testing;<br>(e)(4)(ii) Check each batch of media for its ability to support growth and, as appropriate, select or inhibit specific organisms or produce a biochemical response; and<br>(e)(4)(iii) Document the physical characteristics of the media when compromised and report any deterioration in the media to the manufacturer.<br><br>(g) The laboratory must document all control procedures performed.<br>This STANDARD  is not met as evidenced by:<br> Based on technical supervisor interview and bacteriology media quality control record review on November 18, 2015, the laboratory failed to check each batch of media for its ability to support growth before or concurrent with initial use.  Findings included:<br><br>a.   From November 15, 2015 to November 18, 2015, the laboratory performed patient bacteriology testing using Hardy blood agar plates (BAP), lot number 15300, expiration date 01/25/2016.<br><br>b.   For this lot of BAP, the laboratory relied on manufacturer's documentation that the manufacturer performed quality control procedures on the BAP.  The laboratory did not, before or concurrent with initial use, performed any quality control procedures to check whether this lot of BAP supported organism growth. | D5477 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  35 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5477 | Continued From page 35<br>c.   From November 15, 2015 to November 18, 2015, the laboratory performed 12 patient specimen cultures using Hardy BAP, lot number 15300, expiration date 01/25/2016. | D5477 | | |
| D5481 | 493.1256(f)(g) CONTROL PROCEDURES<br><br>(f) Results of control materials must meet the laboratory's and, as applicable, the manufacturer's test system criteria for acceptability before reporting patient test results.<br><br>(g) The laboratory must document all control procedures performed.<br>This STANDARD  is not met as evidenced by:<br>1.   Based on review of the prothrombin time/international normalized ratio (PT/INR) procedure, quality control (QC) records, patient results and interview with the general supervisor, the laboratory failed to ensure that the QC for PT/INR was acceptable prior to reporting patient results from April 2015 through September 2015. Findings include:<br><br>a.   CL SOP-10001 Revision A, "Measuring Prothrombin Time-Innovin (PT on the Siemens BCS XP Instrument" stated on page 6, section 8.6 that if control values are outside of the determined range, the controls, reagents and instrument performance should be checked and that identification and correction of the problem shoud be documented prior to reporting patient results.<br><br>b.   QC records for Citrol 3 (Lot number 548425) were reviewed from 4/1/15 through 9/23/15.<br><br>c.   The general supervisor stated that QC was acceptable if the values were +/- 2 SD from the | D5481 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  36 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5481 | Continued From page 36<br>mean.<br><br>d.   On 9/7/15, Citrol 3 was run seven times without obtaining an acceptable QC value.<br><br>e.   On 9/8/15, Citrol 3 was run twelve times without obtaining an acceptable QC value.<br><br>f.   On 25 of 32 days, Citrol 3 was not rerun when the QC value was greater than - 2 SD.<br><br>g.   On 5/15/15, 8/13/15, 8/21/15 and 9/10/15, Citrol 3 was run twice.  All QC results were unacceptable.<br><br>h.   The Rule Check report revealed that 13 of 13 QC values in April 2015, 2 of 17 in May 2015, 7 of 7 in June 2015, 13 of 13 in July 2015, 16 of 16 in August, and 24 of 24 during September 1-16, 2015 showed rule violation messages related to Citrol 3.<br><br>i.   81 patients were reported from 4/1/15 through 9/16/15.<br><br>2.   Based on review of the quality control (QC) procedure, QC records, and raw data from patient test runs and interview with the general supervisor, the laboratory failed to ensure that the QC was acceptable for the Theranos Proprietary System (TPS) prior to reporting patient test results:  Findings include:<br><br>a.   CL SOP-15026 Revision A, "Edison 3.5 Theranos System Daily QC Procedures", stated the following in section 10.1.1: "...For any single Edison instrument, reject QC if either level is greater than 2 SD or if either level falls on the same side of the mean for 10 consecutive days." | D5481 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  37 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917923

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5481 | Continued From page 37<br><br>b.   Section 11.1.1 of  CL SOP-15026 Revision A further stated that "Daily QC automatically expires 24 hours after use."<br><br>c.   The general supervisor stated that when the QC was unacceptable, the TPS device locked out patient testing for 24 hours or until the QC was acceptable and if the QC was unacceptable another device would be used for testing.<br><br>d.   QC records for Sex Hormone Binding Globulin (SHBG) showed that on Device E001025 QC Level 2's (QC2) 24 hour expiration was on 8/14/14 at 18:54 and was not run again until 8/15/14 at 00:05.  Patient data showed that patient Accession #94389 was run on 8/14/14 at 19:09.<br><br>e.   QC records for SHBG showed that on Device E001025 QC Level 1's (QC1) 24 hour expiration was on 8/20/14 at 17:43 and was not run again until 8/21/14 at 17:50. Patient data showed that patient Accession #95403 was run on 8/20/14 at 19:08.<br><br>f.   QC records for SHBG showed that on Device E001036 QC1 was not run again until 11/1/14 at 22:15.  Patient data showed that patient Accession #112807 was run on 11/1/14 at 00:02.<br><br>g.   QC records for Vitamin B12 (VB12) showed that on Device E000027 QC1 was run on 8/16/14 at 06:16 and failed. QC1 was next run 8/17/14 at 09:10 and passed.  QC2 was not run on 8/15/14 or 8/16/14. Patient data showed that patient Accession #94598 was run on 8/16/14 at 00:48.<br><br>h.   QC records for VB12 showed that on Device | D5481 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  38 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917924

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____ <br> B. WING _____ | | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD** <br> **NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5481 | Continued From page 38 <br> E000027 QC1 was run on 8/16/14 at 06:16 and failed. QC1 was next run 8/17/14 at 09:10 and passed.  QC2 was not run on 8/15/14 or 8/16/14. Patient data showed that patient Accession #94598 was run on 8/16/14 at 00:48. <br><br> i.    QC records for VB12 showed that on Device E000027 QC2 24 hour expiration was on 8/19/14 at 08:00 and was not run again until 8/20/14 at 21:05. Patient data showed that 3 patients (Accession #s 95411, 95462, 95543) were run on 8/20/14 between 12:33 and 17:52. <br><br> j.    QC records for VB12 showed that on Device E000027 QC2 24 hour expiration was on 8/22/14 at 17:38 and was not run again until 8/23/14 at 21:05. Patient data showed that 2 patients (Accession #s 95984, 96106) were run on 8/22/14 at 18:56 and 21:21. <br><br> k.    QC records for VB12 showed that on Device E000027 QC1's 24 hour expiration was on 8/24/14 at 16:43 and was not run again until 8/25/14 at 07:59. QC2 24 hour expiration was on 8/24/14 at 21:05 and was not run again until 8/25/14 at 12:23. Patient data showed that 3 patients (Accession #s 96327, 96250, 96371) were run on 8/24/14 between 17:15 and 21:36. <br><br> l.    QC records for VB12 showed that on Device E000037 QC1 had a "10x warning" message in the QC Pass/Fail Status column on 2/25/15 at 20:29 and again on 2/26/15 at 20:22. QC2  had a "10x warning" message in the QC Pass/Fail Status column on 2/25/15 at 22:11 and again on 2/26/15 at 22:04.  QC1 passed on 2/27/15 at 22:54 and QC2 was run and passed on 2/28/15 at 00:27. Patient data showed that 7 patients (Accession #s 146275, 146391, 146651, 146852, | D5481 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  39 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA 94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5481 | Continued From page 39<br>147149, 146596, 146898) were run between 2/26/15 and 2/27/15 during the time the laboratory had a 10x warning.<br><br>m.  QC records for VB12 showed that on Device E001000 QC1's 24 hour expiration was on 1/25/15 at 21:58 and was not run again until 1/28/15 at 2140. QC2 24 hour expiration was on 1/26/15 at 02:22 and was not run again until 1/28/15 at 23:19. Patient data showed that 5 patients (Accession #s 136351, 136139,136386, 136897, 135548) were run between 1/27/15 at 1359 and 1/28/15 at 11:50.<br><br>n.  QC records for Vitamin D, 25-OH (VitD) showed that on Device E001059 QC1's 24 hour expiration was on 7/6/14 at 14:11 and was not run again until 7/7/15 at 08:04. Patient data showed that Accession #88699 was run on 7/6/14 at 14:31.<br><br>o.  Levey-Jennings charts revealed that SHBG Device E000026 QC1 had 13 consecutive days and QC2 had 15 consecutive days that the results were at least 2 standard deviations (SDs) below the mean from 9/30/14 through 10/29/14.<br><br>p.  Levey-Jennings charts revealed that SHBG Device E001007 QC1 had 19 consecutive days that the results were at least 2 SDs below the mean from 3/31/15 through 4/29/15.<br><br>q.  Levey-Jennings charts revealed that VitD Device E001059 QC1 had 15 consecutive days that the results were at least 2 SDs above the mean from 6/30/15 through 7/25/14.<br><br>r.  Levey-Jennings charts revealed that Total T3 (TT3) Device E000195 QC1 had 11 consecutive | D5481 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  40 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5481 | Continued From page 40<br>days that the results were at least 2 SDs above the mean from 1/3/15 through 1/29/15.<br><br>s.   Levey-Jennings charts revealed that TT3 Device E001032 QC1 had 113 consecutive days and QC2 had 12 consecutive days that the results were at least 2 SDs above the mean from 7/9/14 through 7/25/14.<br><br>t.   Levey-Jennings charts revealed that VB12 Device E000187 QC1 had 14 consecutive days and QC2 had 12 consecutive days that the results were at least 2 SDs above the mean from 2/10/14 through 2/27/14. | D5481 | | |
| D5775<br><br>400B | 493.1281(a)(c) COMPARISON OF TEST RESULTS<br><br>(a) If a laboratory performs the same test using different methodologies or instruments, or performs the same test at multiple testing sites, the laboratory must have a system that twice a year evaluates and defines the relationship between test results using the different methodologies, instruments, or testing sites.<br>(c) The laboratory must document all test result comparison activities.<br>This STANDARD is not met as evidenced by:<br>1.  Based on laboratory personnel interview and manual WBC differential record review on November 19, 2015, the laboratory failed to have a system that twice a year evaluated and defined the relationship between WBC differential test results examined by multiple testing personnel. Findings included:<br><br>a.   It was the practice of the laboratory for multiple testing personnel to examine and report patient WBC differentials from stained slides. | D5775 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  41 of 121 |
|---|---|---|---|

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5775 | Continued From page 41 | D5775 | | |
| | b.   The laboratory had no system that twice a year evaluated and defined the relationship between WBC differential test results examined by multiple testing personnel.  Other than through the distribution of proficiency testing samples, the laboratory had no documentation to indicate whether testing personnel were examining patient stained slides and reporting patient manual WBC differential similarly, accurately, and reliably. | | | |
| | 2.   Based on review of documentation, the laboratory failed to have a system that twice a year evaluated and defined the relationship between the Theranos Proprietary System (TPS) to a predicate instrument. Findings include:' | | | |
| | a.   Undated documentation provided by the laboratory revealed a comparison study between the Theranos Proprietary System (TPS) (i.e., Edison) and a predicate device (Immulite, Centaur, or Liaison) for Sex Hormone Binding Globulin (SHBG), Total T3 (TT3), Vitamin D (VitD) and Vitamin B12 (VB12). | | | |
| | b.   The method comparison documentation showed that the following devices (i.e., readers) E000026, E001025 and E001036 were used for SHBG comparison testing.  SHBG testing occurred from 7/28/14 through 6/25/15. | | | |
| | c.   Quality control (QC) monthly reports revealed that seven devices were used for SHBG from February 2015 through June 2015 but only three devices were included in the comparison study. | | | |
| | d.   QC and patient result documentation for SHBG also revealed that devices E000040, E001007 and E001035 were used for patient | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  42 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5775 | Continued From page 42<br><br>testing and were not included in the comparison study.<br><br>e.   The method comparison documentation showed that the following devices E000162, E000187, E00195, E001011, E001032, and E001049 were used for TT3 testing.  TT3 testing occurred from 2/2/14 through 2/4/15.<br><br>f.   The method comparison documentation showed that the following devices E000053, E000072, E00101, E0001157, E001007, E001043, and E001059 were used for VitD testing.  VitD testing occurred from 11/6/13 through 3/10/15.<br><br>g.   Quality control (QC) monthly reports revealed that twelve devices were used for VitD in February 2015 and eighteen devices were used from March 2015 through April 2015 but only seven devices were included in the comparison study.<br><br>h.   QC and patient result documentation for VitD also revealed that device E001059 was used for patient testing and was not included in the comparison study.<br><br>i.   The method comparison documentation showed that the following devices E000053, E000072, E00101, E0001157, E001007, E001043, and E001059 were used for VB12 testing.  VB12 testing occurred from 8/12/14 through 3/6/15.<br><br>j.   Quality control (QC) monthly reports revealed that twelve devices were used for VB12 in October 2014 and February 2015 through April 2015 but only eleven devices were included in the | D5775 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  43 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**THERANOS INC**

STREET ADDRESS, CITY, STATE, ZIP CODE
**7333 GATEWAY BLVD
NEWARK, CA 94560**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5775 | Continued From page 43 comparison study. | D5775 | | |
| D5779 | 493.1282(a) CORRECTIVE ACTIONS | D5779 | | |
| 400B | Corrective action policies and procedures must be available and followed as necessary to maintain the laboratory's operation for testing patient specimens in a manner that ensures accurate and reliable patient test results and reports.

This STANDARD is not met as evidenced by: Based on laboratory personnel interviews and complete blood counts (CBC) quality control record review on September 23, 2015, the laboratory failed to follow corrective action policies and procedures as necessary to maintain the laboratory's operation for testing patient CBC specimens in a manner that ensure accurate and reliable patient test results and reports when the laboratory's criteria for acceptability of CBC quality control material test results were not met. Findings included:

a. It was the practice of the laboratory to test three levels (low, normal, and high) of quality control materials each day of patient testing and to use the stated values of commercially assayed quality control materials to monitor patient CBC testing using the Drew 3 instruments. In the event any CBC quality control material test results did not fall within the stated assay values, laboratory personnel were to follow the procedure detailed in the protocol titled "Quality Control (document number CL QOP-00013, revision F)."

i. "Step 1" of the procedure was to "rerun the controls." | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete    Event ID: W34211    Facility ID: CA22046272    If continuation sheet Page 44 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917930

**SER-158**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD<br>NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5779 | Continued From page 44<br><br>ii.   "Step 2" of the procedure was to "repeat with fresh controls" "if the rerun of controls failed."<br><br>iii.   "Step 3" of the procedure was to "check the operation of the instrument" "if the rerun of [fresh] controls failed."<br><br>iv.   "Step 4" of the procedure was to "repeat using a new reagent kit" and "recalibrate" if quality control test results continued to fall outside the laboratory's criteria for acceptability.<br><br>v.   "Step 5" of the procedure was to "call instrument support and inform [the] supervisor" if quality control test results continued to fall outside the laboratory's criteria for acceptability.<br><br>b.   Laboratory records for the Drew 3 instrument the laboratory designated as "Drew #2" indicated that on July 11, 12, 14, and 16, 2015 CBC quality control material test results failed to meet stated assay values.  The laboratory's documentation of these quality control failures indicated that the laboratory's "Quality Control" protocol was not followed.<br><br>i.   On July 12, 2015, laboratory records indicated that the high quality control material failed to meet the laboratory's criteria for acceptability (specific CBC analyte not designated).  Testing of the high quality control material was repeated three times before being acceptable using a "new QC tube." "Step 1" was repeated three times before the laboratory followed "Step 2."<br><br>ii.   On July 16, 2015, laboratory records indicated that the high quality control material failed to meet the laboratory's criteria for | D5779 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  45 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917931

SER-159

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5779 | Continued From page 45<br><br>acceptability (specific CBC analyte not designated).  Testing of the high quality control material was repeated two times before being acceptable on a third repeat.  "Step 1" was repeated two times without following "Step 2."<br><br>iii.   On July 17, 2015, laboratory records indicated that the high quality control material failed to meet the laboratory's criteria for acceptability (specific CBC analyte not designated).  Testing of the high quality control material was repeated two times before being acceptable on a third repeat.  "Step 1" was repeated two times without following "Step 2."<br><br>[NOTE: On July 11 and 14, 2015, laboratory records also indicated that the high quality control material failed to meet the laboratory's criteria for acceptability (specific CBC analyte not designated).  Testing was repeated and was acceptable.  "Step 1" was followed.]<br><br>[NOTE: On July 14, 2015, laboratory records also indicated that the normal quality control material failed to meet the laboratory's criteria for acceptability (specific CBC analyte not designated).  Testing was repeated and was acceptable.  "Step 1" was followed.]<br><br>c.   Laboratory records indicated that the Drew 3 instrument the laboratory designated as "Drew #2" was used to test and report 36 patient CBC specimens on July 11, 2015, 12 patient CBC specimens on July 12, 2015, 36 patient CBC specimens on July 14, 2015, and 45 patient CBC specimens on July 16, 2015.  It is unknown how many patient CBC specimens were tested using "Drew #2" on July 17, 2015. | D5779 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  46 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917932

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5787<br>D5787<br><br>110H | Continued From page 46<br>493.1283(a) TEST RECORDS<br><br>The laboratory must maintain an information or record system that includes the following:<br>(a)(1) The positive identification of the specimen.<br>(a)(2) The date and time of specimen receipt into the laboratory.<br>(a)(3) The condition and disposition of specimens that do not meet the laboratory's criteria for specimen acceptability.<br>(a)(4) The records and dates of all specimen testing, including the identity of the personnel who performed the test(s).<br>This STANDARD is not met as evidenced by:<br> Based on technical supervisor interview and bacteriology media quality control record review on November 18, 2015, the laboratory failed to have an information or record system that included the records of all bacteriology patient specimen testing.  Findings included:<br><br>Although the laboratory maintained documentation to indicate that all lots of bacteriology media used to test patient bacteriology specimens had been quality controlled by the manufacturer or laboratory, the laboratory maintained no documentation of the lot of media used to test any given patient bacteriology specimen.  The laboratory maintained no such information or record system. | D5787<br>D5787 | | |
| D5791 | 493.1289(a)(c) ANALYTIC SYSTEMS QUALITY ASSESSMENT<br><br>(a) The laboratory must establish and follow written policies and procedures for an ongoing mechanism to monitor, assess, and when indicated, correct problems identified in the analytic systems specified in | D5791 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  47 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5791 | Continued From page 47<br>§§493.1251 through 493.1283.<br>(c) The laboratory must document all analytic systems assessment activities.<br><br>This STANDARD is not met as evidenced by:<br>1.  Based on the SensoScientific Monitoring Audit Node Report and interview, the laboratory failed to identify and perform corrective action when ten of ten freezer temperatures did not meet the manufacturer temperature requirements. Findings include:<br><br>a.   The Audit Node Reports for July 2015 and September 2015 were reviewed.<br><br>b.   Six -20 C freezers were identified: 7059 -20 Freezer Sanyo JP lab, 7061 BUGS -20 Freezer 4, 7063 -20 Freezer Accessioning, 7066 -20 Freezer 1 Normandy, 7075 -20 Freezer 2 JP, and 7077 -20 Freezer 3JP.<br><br>c.   Four -80 C freezers were identified: 7098 -80 Freezer 1 Nuair, 7111 -80 Freezer 2 Thermo, 7113 -80 Freezer 2 CLIA Lab, and 7120 -80 Freezer 1 BUGS.<br><br>d.   The Audit Node Report for 7/6/15 through 7/31/15 revealed the following number of days that the freezers did not meet the required acceptable temperature range of greater than or equal to -20 C or greater that or equal to -80 C:<br><br>7059 -20 Freezer Sanyo JP Lab   25/26 days<br>7098 -80 Freezer 1 Nuair         7/26 days<br>7111 -80 Freezer 2 Thermo       18/26 days<br>7113 -80 Freezer 2 CLIA Lab     14/26 days<br>7120 -80 Freezer 1 BUGS         25/26 days<br><br>e.   The Audit Node Report for 9/1/15 through | D5791 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  48 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD NEWARK, CA 94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5791 | Continued From page 48<br><br>9/24/15 revealed the following number of days that the freezers did not meet the required acceptable temperature range of greater than or equal to -20 C or greater that or equal to -80 C:<br><br>7059 -20 Freezer Sanyo JP Lab 12/24 days<br>7061 BUGS -20 Freezer 4        12/24 days<br>7063 -20 Freezer Accessioning  11/24 days<br>7066 -20 Freezer 1 Normandy   9/24 days<br>7075 -20 Freezer 2 JP          6/24 days<br>7077 -20 Freezer 3JP           5/24 days<br>7098 -80 Freezer 1 Nuair       11/24 days<br>7111 -80 Freezer 2 Thermo      3/24 days<br>7113 -80 Freezer 2 CLIA Lab    10/24 days<br>7120 -80 Freezer 1 BUGS        18/24 days<br><br>f.    The Quality Assurance Quality Control Manager signed and dated the Audit Node Reports.  The Quality Assurance Quality Control Manager could not explain if any corrective action was taken.<br><br>g.    There was no documenation that the laboratory identified the days that the freezers did not meet the acceptable temperature ranges and did not take any corrective action for those days.<br><br>h.    Refer to D5413.<br><br>2.    Based on review of Quality Control (QC) data and Monthly QC Reports, the laboratory failed to have a quality assessment (QA) procedure to identify and correct problem with the QC values for the Theranos Proprietary System (TPS) when precision did not meet the laboratory's requirement for precision.  Findings include:<br><br>a.    CL PLN-14003 Revision A, "Master Validation Plan for Routine Chemistry Assays on Theranos | D5791 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete      Event ID: W34211      Facility ID: CA22046272      If continuation sheet Page  49 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD<br>NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5791 | Continued From page 49<br><br>Devices" in section 13.4.5 requires the %CV of replicates to be not more than 15% (20% at the lower and upper limits of detection).<br><br>b.   QC results were reviewed from June 2014 through November 2014 and January through February 2015 for Vitamin B12 (VB12), Vitamin D (VitD), and Sex Hormone Binding Globuin (SHBG) which were used for patient testing on the TPS devices.<br><br>c.   VB12 QC Level 1 and Level 3 (QC1 and QC3) on Device E000110 revealed the following %CV (coefficient of variation): 34.3% and 48.5%, respectively, from 1/5/15 through 1/30/15.<br><br>d.   VB12 QC1 and QC3 on Device E001085 revealed the following %CVs: 52.5% and 35.2%, respectively, from 1/5/15 through 1/30/15.<br><br>e.   VB12 QC1 and QC3 on Device E001102 revealed the following %CVs: 39.0% and 20.0%, respectively, from 2/10/15 through 2/27/15.<br><br>f.   VB12 QC1 and QC3 on Device E001000 revealed the following %CVs: 34.7% and 39.9%, respectively, from 1/2/15 through 1/31/15.<br><br>g.   VB12 QC1 and QC3 on Device E001102 revealed the following %CVs: 39.0% and 20.0%, respectively, from 2/10/15 through 2/27/15.<br><br>h.   VitD QC Level 1 and Level 2 (QC1 and QC2) on Device E000053 revealed the following %CVs: 63.8% and 26.4%, respectively, from 8/21/14 through 8/30/14.<br><br>i.   VitD QC1 and QC2 on Device E001059 revealed the following %CVs: 18.7% and 18.7%, | D5791 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete      Event ID: W34211      Facility ID: CA22046272      If continuation sheet Page  50 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5791 | Continued From page 50<br>respectively, from 6/29/14 through 7/24/14.<br><br>j.   VitD QC1 and QC2 on Device E001043 revealed the following %CVs: 25.2% and 31.9%, respectively, from 6/29/14 through 7/25/14.<br><br>k.   SHBG QC1 on Device E001026 revealed the following %CV: 18.9% from 9/30/14 through 11/5/14.<br><br>l.   SHBG QC1 on Device E001025 revealed the following %CV: 21.2% from 7/31/14 through 8/28/14.<br><br>3.   Based on review of Quality Assessment (QA) documentation and QA procedures, the laboratory failed to have a quality assessment (QA) procedure established to identify and correct problems with the Quality Control (QC) program for the Theranos Proprietary System (TPS) . Findings include:<br><br>a.   Monthly QC reports were reviewed for July 2014, October 2014, and February through June 2015.<br><br>b.   All reports were signed by the laboratory director (LD) on 9/19/15, except the March 2015 report was signed by the LD on 11/19/15.<br><br>c.   The total percentage of QC values greater than 2 standard deviations (SDs) was reviewed by the surveyor.<br><br>d.   The July 2014 report indicated in the summary that 2179 controls had been run on the "Edison**" devices; however, the specific report on the "Edison**" device showed that only 1618 were run on all tests and all devices. | D5791 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  51 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br><br>**11/20/2015** |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**THERANOS INC**

STREET ADDRESS, CITY, STATE, ZIP CODE
**7333 GATEWAY BLVD**
**NEWARK, CA 94560**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5791 | Continued From page 51 | D5791 | | |
| | e.   In July 2014, the data revealed the following tests showed percentage of QC samples with more than 15% of values greater than 2 SD: Testosterone (TST) (28%), Total T4 (TT4) (21%), VitD (28%).  Overall 16% of QC samples on all tests on all devices had values greater than 2 SDs. | | | |
| | f.   In October 2014, the data revealed the following tests showed percentage of QC samples with more than 15% of values greater than 2 SD:  Estradiol (EST) (33%), Free T4 (FT4) (19%), Prolactin (PRLN) (47%), SHBG (45%), Thyroid Stimulating Hormone (TSH) (26%), TST (45%), Total T3 (TT3) (32%), TT4 (28%), VitD (19%), VB12 (46%).  Overall 29% of QC samples on all tests on all devices had values greater than 2 SDs. | | | |
| | g.   In February 2015, the data revealed the following tests showed percentage of QC samples with more than 15% of values greater than 2 SD:  FT4 (26%), SHBG (87%), TT3 (33%), VitD (24%), VB12 (20%).  Overall 24% of QC samples on all tests on all devices had values greater than 2 SDs. | | | |
| | h.   In March 2015, the data revealed the following tests showed percentage of QC samples with more than 15% of values greater than 2 SD:  SHBG (42%), TSH (20%). Overall 20% of QC samples on all tests on all devices had values greater than 2 SDs. | | | |
| | i.   In April 2015, the data revealed the following tests showed percentage of QC samples with more than 15% of values greater than 2 SD: SHBG (16%), total Prostate Specific Antigen | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  52 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5791 | Continued From page 52<br>(tPSA) (22%), VB12 (60%).  Overall 21% of QC samples on all tests on all devices had values greater than 2 SDs.<br><br>j.    In May 2015, the data revealed the following tests showed percentage of QC samples with more than 15% of values greater than 2 SD: SHBG (34%), tPSA (22%).  Overall 26% of QC samples on all tests on all devices had values greater than 2 SDs.<br><br>k.    In June 2015, the data revealed the following tests showed percentage of QC samples with more than 15% of values greater than 2 SD: SHBG (23%). Overall 14% of QC samples on all tests on all devices had values greater than 2 SDs.<br><br>4.    Based on review of the quarterly Quality Assessment (QA) Power Points and interview with the QA/Quality Control (QC) Manager, the laboratory failed to identify and correct problems with drawing patient specimens. Findings include:<br><br>a.    The QA/AC Manager stated that a Power Point presentation was prepared and presented to specific staff each quarter and that no minutes or corrective actions were documented.<br><br>b.    The QA presentation from the 3rd quarter 2014 showed that the number 1 reason that patient specimens had to be redrawn was clots (293).<br><br>c.    The QA presentation from the 1st quarter 2015 showed that the number 1 reason that patient specimens had to be redrawn was clots (246). | D5791 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 53 of 121

FOIA Confidential Treatment Requested by Theranos

**SER-167**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5791 | Continued From page 53<br><br>d.   The QA presentation from the 2nd quarter 2015 showed that the number 1 reason that patient specimens had to be redrawn was clots (116).<br><br>e.   There was no documentation which showed that the lab had identified the large number of redraws due to clots or that any action had been taken to correct the number of redraws due to clots. | D5791 | | |
| D5793<br><br>400B | 493.1289(b)(c) ANALYTIC SYSTEMS QUALITY ASSESSMENT<br><br>(b) The analytic systems quality assessment must include a review of the effectiveness of corrective actions taken to resolve problems, revision of policies and procedures necessary to prevent recurrence of problems, and discussion of analytic systems quality assessment reviews with appropriate staff.<br>(c) The laboratory must document all analytic systems assessment activities.<br>This STANDARD  is not met as evidenced by:<br>1.  Based on laboratory personnel interviews and complete blood counts (CBC) quality control and calibration record review on September 23, 2015, the laboratory failed to have an analytic systems quality assessment mechanism that included a review of the effectiveness of the laboratory's CBC processes.  Finding included:<br><br>a.   The laboratory's Siemens Advia 2120i procedure failed to include the corrective actions to be taken when calibration or quality control results failed to meet the laboratory's criteria for acceptability.  See D5403.<br><br>b.   The laboratory's quality assessment | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 54 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 54<br>mechanism failed to ensure that all CBC calibration documentation was maintained.  See D5437.<br><br>c.   The laboratory's quality assessment mechanism failed to ensure that the stated values of commercially assayed CBC quality control materials were verified.  See D5469.<br><br>d.   The laboratory's quality assessment mechanism failed to ensure that laboratory personnel followed the established corrective action protocol when CBC quality control test results failed to meet the laboratory's criteria for acceptability even though the laboratory maintained documentation to indicate that the documented CBC quality control corrective actions had been reviewed during a quality assessment audit on August 6, 2015.  In addition, the laboratory maintained no documentation it had recognized and investigated possible problems with the high quality control material being used as it had failed to meet the laboratory's criteria for acceptability upon initial testing for 5 of 7 days of patient specimen testing from July 11, 2015 to July 17, 2015.  See D5779.<br><br>2.   Based on laboratory personnel interviews and WBC differential flow cytometer performance report record review on November 17, 2015, the laboratory failed to have an analytic systems quality assessment mechanism that included a review of the effectiveness of flow cytometer corrective actions taken to resolve problems. Findings included:<br><br>a.   For patient capillary specimens, it was the practice of the laboratory to use flow cytometry instrumentation to perform and report patient | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  55 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917941

**SER-169**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 55<br>WBC differentials.<br><br>b.   On August 23, 2015, in which the flow cytometer was used to perform and report patient WBC differentials, laboratory "Cytometer Performance Reports" indicated that at 09:30 the flow cytometer performance check failed.  The performance check was repeated and again failed at 10:18.  At 12:49, laboratory documentation indicated that the flow cytometer performance check passed.<br><br>c.   The laboratory maintained no documentation to indicate that the actions taken on August 23, 2015 to "pass" the flow cytometer performance check had been reviewed for the effectiveness of the actions under the laboratory's quality assessment mechanism.<br><br>3.   Based on technical supervisor interviews and human chorionic gonadotropin (HCG) quality control record review on November 19, 2015, the laboratory failed to have an analytic systems quality assessment mechanism that included a review of the effectiveness of HCG quality control corrective actions taken to resolve problems. Findings included:<br><br>a.   It was the practice of the laboratory to use the Immulite 2000 XPi instrument to perform and report patient quantitative HCG test results.  It was also the practice of the laboratory to use three levels of assayed quality control materials and the stated values of the commercially assayed quality control materials as the laboratory's criteria for acceptability to monitor patient quantitative HCG testing.<br><br>b.   A review of the criteria for acceptability for the | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  56 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 56<br><br>three quality control materials (Bio-Rad, lot number 40310, expiration date 12/31/2017) in use on November 19, 2015 indicated that for the level 1 quality control material the criteria for acceptability used to monitor patient HCG testing was 9.38 - 14.4 mIU/mL, the level 2 quality control material's criteria for acceptability used to monitor patient HCG testing was 20.6 - 32.4 mIU/mL, and the level 3 quality control material's criteria for acceptability used to monitor patient HCG testing was 264 - 376.<br><br>c.    According to the manufacturer's package insert, the assayed values of the three quality control materials in use on November 19, 2015 to monitor patient HCG testing was 8.66 - 18.2 mIU/mL for level 1, 21.6 - 40.6 mIU/mL for level 2, and 306 - 460 mIU/mL for level 3.<br><br>d.    According to laboratory records, the criteria for acceptability for the three quality control materials in use on November 19, 2015 to monitor patient HCG testing was changed on September 11, 2015 to the criteria for acceptability that was used until November 19, 2015.  According to laboratory personnel, the change to the criteria for acceptability was made on September 11, 2015 because there was an apparent "shift" in the laboratory's quality control materials test results.  The laboratory conducted no further investigation or review prior to changing the criteria for acceptability for the three quality control materials.<br><br>e.    The laboratory's change of the criteria for acceptability for the two of the three HCG quality control materials resulted in criteria for acceptability outside the criteria established by the manufacturer.  The laboratory maintained no | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete        Event ID: W34211        Facility ID: CA22046272        If continuation sheet Page 57 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917943

**SER-171**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  **11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  **THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE  **7333 GATEWAY BLVD**  **NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 57 mechanism to assess the effectiveness of this corrective action.  f.    From September 11, 2015 to November 19, 2015, the laboratory performed and reported 19 patient  quantitative HCG tests.  4.    Based on technical supervisor interviews and hepatitis B survey antibody (HBsAb) quality control record review on November 19, 2015, the laboratory failed to have an analytic systems quality assessment mechanism that included a review of the effectiveness of HBsAb quality control corrective actions taken to resolve problems.  Findings included:  a.    It was the practice of the laboratory to use the Immulite 2000 XPi instrument to perform and report patient HBsAb test results.  It was also the practice of the laboratory to use three levels of assayed quality control materials and the stated values of the commercially assayed quality control materials as the laboratory's criteria for acceptability to monitor patient HBsAb testing.  b.    A review of the criteria for acceptability for the three quality control materials (Siemens, lot number 0134, expiration date 11/2016)  in use on November 19, 2015 indicated that for the negative quality control material the criteria for acceptability used to monitor patient HBsAb testing was 0.0 - 4.0, the low positive quality control material's criteria for acceptability used to monitor patient HBsAb testing was 10.3 - 19.6, and the positive quality control material's criteria for acceptability used to monitor patient HBsAb testing was 234 - 345.  c.    According to the manufacturer's package | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  58 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 05D2025714 | A. BUILDING _____ <br> B. WING _____ | | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD <br> NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 58 <br><br> insert, the assayed values of the three quality control materials in use on November 19, 2015 to monitor patient HBsAb testing was 0.0 - 4.0 for the negative quality control material, 11 - 21 for the low positive quality control material, and 226 - 340 for the positive quality control material. <br><br> d.   According to laboratory records, the criteria for acceptability for two of the three quality control materials in use on November 19, 2015 to monitor patient HBsAb testing was changed on September 11, 2015 to the criteria for acceptability that was used until November 19, 2015.  According to laboratory personnel, the change to the criteria for acceptability was made on September 11, 2015 because there was an apparent "shift" in the laboratory's quality control materials test results.  The laboratory conducted no further investigation or review prior to changing the criteria for acceptability for the three quality control materials. <br><br> e.   The laboratory's change of the criteria for acceptability for the two of the three HBsAb quality control materials resulted in criteria for acceptability outside the criteria established by the manufacturer.  The laboratory maintained no mechanism to assess the effectiveness of this corrective action. <br><br> f.   From September 11, 2015 to November 19, 2015, the laboratory performed and reported 16 patient HBsAb tests. <br><br> 5.   Based on technical supervisor interviews and luteinizing hormone (LH) quality control record review on November 19, 2015, the laboratory failed to have an analytic systems quality assessment mechanism that included a review of | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  59 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 59 the effectiveness of LH quality control corrective actions taken to resolve problems.  Findings included:<br><br>a.   It was the practice of the laboratory to use the Siemens Advia Centaur XP Immunoassay System instrument to perform and report patient LH test results.  It was also the practice of the laboratory to use three levels of assayed quality control materials and the stated values of the commercially assayed quality control materials as the laboratory's criteria for acceptability to monitor patient LH testing.<br><br>b.   A review of the criteria for acceptability for the three quality control materials (Bio-Rad, lot number 50980, expiration date 11/30/2016)  in use on November 19, 2015 indicated that for the level 1 quality control material the criteria for acceptability used to monitor patient LH testing was 2.86 - 4.18 mIU/mL, the level 2 quality control material's criteria for acceptability used to monitor patient LH testing was 16.98 - 25.48 mIU/mL, and the level 3 quality control material's criteria for acceptability used to monitor patient LH testing was 57.6 - 84.8 mIU/mL.<br><br>c.   According to the manufacturer's package insert, the assayed values of the three quality control materials in use on November 19, 2015 to monitor patient LH testing was 2.86 - 4.18 mIU/mL for level 1, 16.6 - 23.9 mIU/mL for level 2, and 57.6 - 84.8 mIU/mL for level 3.<br><br>d.   According to laboratory records, the criteria for acceptability for one of the three quality control materials in use on November 19, 2015 to monitor patient LH testing was changed on July 9, 2015 to the criteria for acceptability that was used | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  60 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917946

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  **11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  **THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE  **7333 GATEWAY BLVD**  **NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 60  until November 19, 2015.  According to laboratory personnel, the change to the criteria for acceptability was made on July 9, 2015 because there was an apparent "shift" in the laboratory's quality control materials test results.  The laboratory conducted no further investigation or review prior to changing the criteria for acceptability for the three quality control materials.  e.   The laboratory's change of the criteria for acceptability for the one of the three LH quality control materials resulted in criteria for acceptability outside the criteria established by the manufacturer.  The laboratory maintained no mechanism to assess the effectiveness of this corrective action.  f.   From July 9, 2015 to November 19, 2015, the laboratory performed and reported 132 patient LH tests.  6.   Based on technical supervisor interviews and CA-125 quality control record review on November 19, 2015, the laboratory failed to have an analytic systems quality assessment mechanism that included a review of the effectiveness of CA-125 quality control corrective actions taken to resolve problems.  Findings included:  a.   It was the practice of the laboratory to use the Immulite 2000 XPi instrument to perform and report patient CA-125 test results.  It was also the practice of the laboratory to use three levels of assayed quality control materials and the stated values of the commercially assayed quality control materials as the laboratory's criteria for acceptability to monitor patient CA-125 testing. | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  61 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 61<br><br>b.   A review of the criteria for acceptability for the three quality control materials (Bio-Rad, lot number 19980, expiration date 09/30/2016)  in use on November 19, 2015 indicated that for the level 1 quality control material the criteria for acceptability used to monitor patient CA-125 testing was 18.6 - 28.7 U/mL, the level 2 quality control material's criteria for acceptability used to monitor patient CA-125 testing was 53.5 - 82.2 U/mL, and the level 3 quality control material's criteria for acceptability used to monitor patient CA-125 testing was 92.5 - 141 U/mL.<br><br>c.   According to the manufacturer's package insert for quality control materials Bio-Rad, lot number 19980, there were no assayed values for the three quality control materials in use on November 19, 2015 to monitor patient CA-125. According to laboratory personnel, the quality control material's manufacturer could not publish the criteria for acceptability at the time the quality control material was received by the laboratory, and was told by the manufacturer to use the criteria for acceptability from the previous lot of quality control materials.  The laboratory maintained no documentation to support the manufacturer's instructions for the use of the criteria for acceptability from the previous lot of quality control materials.<br><br>d.   A review of the manufacturer's criteria for acceptability from the previous lot of CA-125 quality control materials revealed that the criteria for acceptability for the quality control materials used by the laboratory on November 19, 2015 to monitor patient CA-125 testing did not match the criteria for acceptability from the previous lot of CA-125 quality control materials. | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  62 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917948

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**THERANOS INC**

STREET ADDRESS, CITY, STATE, ZIP CODE
**7333 GATEWAY BLVD**
**NEWARK, CA  94560**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 62 | D5793 | | |
| | e.   Upon further review, it was discovered that the criteria for acceptability for the quality control materials used by the laboratory on November 19, 2015 to monitor patient CA-125 testing was the criteria for acceptability established by the manufacturer for Bio-Rad, lot number 19980, for use on a different instrument and not the Siemens Advia Centaur XP Immunoassay System instrument. | | | |
| | f.   From the date quality control materials Bio-Rad, lot number 19980 to November 19, 2015, the laboratory performed and reported 46 patient CA-125 tests. | | | |
| | 7.   Based on laboratory personnel interviews and the laboratory's "Alternative Assessment Program" (AAP) record review on November 20, 2015, the laboratory failed to have an analytic systems quality assessment mechanism that included the timely review of the effectiveness of actions taken.  Findings included: | | | |
| | a.   To comply with the CLIA requirement at 42 C.F.R. 493.1281(a), the laboratory maintained a protocol titled "Proficiency Testing for Theranos Lab-Developed Tests" that included a laboratory process called AAP in which tests performed using the Advia 1800 would be evaluated and defined in relationship to the Advia XPT. | | | |
| | b.   A review of laboratory documents indicated that for the following AAP events, the laboratory's evaluation was not timely and, therefore, ineffective: | | | |
| | i.   On April 1, 2014, the laboratory completed testing for 18 routine chemistry analytes using the | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  63 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917949

**SER-177**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 63 Advia 1800 and compared these test results to test results on the same samples using the Advia XPT.  Laboratory records indicated that the review of this AAP was not completed until November 16, 2015 by appropriate laboratory personnel and was not reviewed by the laboratory director as required by laboratory protocol. | D5793 | | |
| | ii.   On May 15, 2014, the laboratory completed testing for 14 routine chemistry analytes using the Advia 1800 and compared these test results to test results on the same samples using the Advia XPT.  Laboratory records indicated that the review of this AAP was not completed until November 15, 2015 by appropriate laboratory personnel. | | | |
| | iii.   On July 31, 2014, the laboratory completed testing for 18 routine chemistry analytes using the Advia 1800 and compared these test results to test results on the same samples using the Advia XPT.  Laboratory records indicated that the review of this AAP was not completed until November 16, 2015 by appropriate laboratory personnel and was not reviewed by the laboratory director as required by laboratory protocol. | | | |
| | iv.   On November 20, 2014, the laboratory completed testing for 14 routine chemistry analytes using the Advia 1800 and compared these test results to test results on the same samples using the Advia XPT.  Laboratory records indicated that the review of this AAP was not completed until November 15, 2015 by appropriate laboratory personnel. | | | |
| | 8.   Based on review of the quality control (QC) procedure, Levey-Jennings reports for the Advia 1800 and Advia XPT, proficiency testing (PT) | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  64 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917950

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 64<br><br>results and quality assessment (QA) documentation the laboratory failed to take corrective actions when chemistry QC in the venipuncture laboratory was observed ten consecutive times on the same side of the mean. Findings include:<br><br>a,  CL QOP-00013 Revision D, "Quality Control in Chemistry", stated in section 6.3.1.7.2 that QC is deemed to have passed when...Westgard rules hae not been violated (see following monthly QC section 6.3.2)."<br><br>b.  CL QOP-00013 Revision D also stated in section 6.3.2.5 that ten consecutive observations on the same side of the mean should be monitored.<br><br>c.  The Advia XPT was put into use for chemistry testing on 12/18/14. Prior to 12/18/14, the Advia 1800 was used for chemistry testing.<br><br>Albumin<br><br>i.  Review of the PT results for albumin for the 1st and 2nd events of 2015 revealed that the submitted results showed a negative bias ranging from -3.3 to -4.9 and -1.8 to -3.5, respectively.<br><br>ii.  Review of Levey-Jenning reports from April 2014 and September 2014, revealed that MultiQual Level 1 (MQ1) and Multi Qual Level 2 (MQ2) had at least 10 consecutive results below the mean but within 2 standard deviations (SD).<br><br>iii.  Review of Levey-Jenning reports for January 2015 through April 2015 revealed MQ1 (Lot number 45661) had 10 consecutive results below the mean, MQ2 (Lot number 45662) had 10 | D5793 | | |

| FORM CMS-2567(02-99) Previous Versions Obsolete | Event ID: W34211 | Facility ID: CA22046272 | If continuation sheet Page  65 of 121 |
|---|---|---|---|

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____ <br> B. WING _____ | | **11/20/2015** |

NAME OF PROVIDER OR SUPPLIER

**THERANOS INC**

STREET ADDRESS, CITY, STATE, ZIP CODE

**7333 GATEWAY BLVD**
**NEWARK, CA 94560**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 65 <br><br> consecutive results below the mean and MultiQual Level3 (MQ3, Lot number 45663) had 10 consecutive results below the mean but within 2 SDs for all four months. <br><br> iv.   MQ1 data revealed 125 of 125 below the mean for January 2015 through April 2015 but within 2 SDs. <br><br> v.   MQ2 data revealed 126 of 126 below the mean for January 2015 through April 2015 but within 2 SDs. <br><br> vi.   MQ3 data revealed 123 of 125 below the mean for January 2015 through April 2015 but within 2 SDs. <br><br> vii.   Review of Levey-Jenning reports from May 2015 revealed that MQ1, MQ2 and MQ3 were below the mean for 21 of 31 days. <br><br> viii.  The mean for all three levels was adjusted on 5/22/15 to fit the data without investigation or documentation of an investigation.  After 5/22/15 all 3 levels of QC were above the mean. <br><br> ix.   The manufacturer ranges for MQ1 (Lot number 45661) was 2.03-3.04 g/dL; MQ2 (Lot number 45662) was 3.04-4.56 g/dL; MQ3 (Lot number 45663) was 3.26-4.89 g/dL. <br><br> x.    After adjusting the acceptable ranges on 5/22/15, the laboratory's ranges fell outside the manufacturer's assayed ranges and were as follows:  MQ1 (1.77-2.665 g/dL); MQ2 (2.5-3.74 g/dL; MQ3 (3.02-4.52 g/dL). <br><br> xi.   Quarterly Quality Assessment PowerPoint presentations from the 3rd quarter of 2014 | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  66 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 66<br><br>through the 2nd quarter of 2015 did not identify the negative bias for albumin or the 10 consecutive QC values above or below the mean.<br><br>xii.  8293 albumins were reported from January 2015 through June 2015.<br><br>Calcium<br><br>i.    Review of the PT results for calcium for the 2nd events of 2015 revealed that the submitted results showed a negative bias ranging from -3.9 to -5.1.<br><br>ii.   Review of Levey-Jenning reports from April 2014 and May 2015 revealed 27 of 27 and 25 of 25 QC consecutive results below the mean but within 2 SDs.<br><br>iii.  7719 calciums were reported from January 2015 through June 2015.<br><br>Other Chemistries<br><br>Review of Levey-Jenning reports from April 2014, September 2014, and January 2014 revealed that Creatinine, Glucose, High density lipoprotein (HDL), Low density lipoprotein (LDL), Total Bilirubin, Chloride, Potassium, Triglycerides, Cholesterol, Alkaline Phosphatase, and Alanine Transaminase had at least one event of 10 consecutive QC results above or below the mean but within 2 SDs for one to 3 levels of QC.<br><br>9.    Based on review of the alternative assessment procedure (AAP) and results of AAP from August 2014 through March 2015, the laboratory failed to identify through the quality assessment (QA) activities that the AAP for the | D5793 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete        Event ID: W34211        Facility ID: CA22046272        If continuation sheet Page  67 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 67<br>Theranos Propietary System (TPS) was not performed every 6 months and was not reviewed and reviewed by the laboratory (LD) in a timely manner as required by the laboratory's procedures, and therefore, ineffective. Findings include:<br><br>a.   CL SOP-00020 Revision B, "Proficiency testing for Theranos Lab-Developed Tests (Immuncassays)", effective 1/1/2014, stated in section 3.1 that the technical supervisor (TS) was responsible for ensuring that the AAP was conducted every 6 months for all analytes.<br><br>b.   Section 3.3.2 of the procedures stated that the TS was reponsible for evaluating testing samples results and section 3.4 stated that the LD was responsible for reviewing and approving each testing event documentation.<br><br>c.   Review of the AAP result forms (CL FRM-00022-F3) revealed that the AAP was performed on 8/18/14, 10/21/14, and 3/13/15.<br><br>d.   All three result forms did not include a documented evaluation  by the TS.<br><br>e.   The result documents from 8/18/14 and 3/15/15 were not signed by the LD until 11/15/15 and the result form from 10/12/14 was not signed by the LD.<br><br>f.    Four tests (Vitamin D, Thyroid Stimulating Hormone, Free T4, and Total Prostate Specific Antigen) were initially implemented in November 2013.<br><br>10. Based on review of patient raw data reports and the validation report for Vitamin D (VitD), the | D5793 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917954

SER-182

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD<br>NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5793 | Continued From page 68<br>laboratory failed to have a quality assessement mechanism to identify that the laboratory's reference ranges established from the validation study were accurately reflected on the patient raw data reports.  Findings include:<br><br>a.   The validation report for VitD stated that the reference range was 9.3-47.9 ng/mL.<br><br>b.   The patient raw data reports revealed that the reference range was "30-100."<br><br>c.   Patient raw data reports were reviewed from 6/15/14 through 8/31/14 and from 2/1/15 through 2/17/15.<br><br>d.   Thirty (30) of ninety-four (94) patient results were flagged as "Insufficiency" on the patient raw data report when the result was normal according to the laboratory's reference range.<br><br>e.   Twenty seven (27) of ninety four (94) patient results were flagged as normal on the patient raw data report when the result was above the normal range according to the laboratory's reference range. | D5793 | | |
| D5801 | 493.1291(a) TEST REPORT<br><br>The laboratory must have an adequate manual or electronic system(s) in place to ensure test results and other patient-specific data are accurately and reliably sent from the point of data entry (whether interfaced or entered manually) to final report destination, in a timely manner.  This includes the following:<br>(a)(1) Results reported from calculated data.<br>(a)(2) Results and patient-specific data electronically reported to network or interfaced | D5801 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917955

SER-183

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 05D2025714 | A. BUILDING _____ <br> B. WING _____ | | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD <br> NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5801 | Continued From page 69 <br><br> systems. <br> (a)(3) Manually transcribed or electronically transmitted results and patient-specific information reported directly or upon receipt from outside referral laboratories, satellite or point-of-care testing locations. <br> This STANDARD  is not met as evidenced by: <br> Based on review of the patient results, manufacturer International Sensitivity Index (ISI) number, and the laboratory's mean normal prothrombin time (MNPT), the laboratory failed to ensure that the reported International Normalized Ratio (INR) was calculated accurately prior to reporting final patient test results. Findings include: <br><br> a.   Laboratory quality control records revealed that Dade Innovin (thromboplastin) lot number 539280 was put into use in March 2015.  The MNPT for this lot number was determined to be 8.0 seconds and the manufacturer stated that the ISI was 0.89. <br><br> b.   A review of the INR results from 4/3/15 through 9/21/15 revealed that 81 of 81 reported final patient results were not accurate when the patient prothrombin time (PT) was used with the above MNPT and ISI numbers to calculate the INR. <br><br> c.   The final reported results varied from the true results by 0.1-0.5 units. | D5801 | | |
| D5805 | 493.1291(c) TEST REPORT <br><br> The test report must indicate the following: <br> (c)(1) For positive patient identification, either the patient's name and identification number, or a unique patient identifier and identification number. | D5805 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  70 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917956

**SER-184**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD<br>NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5805 | Continued From page 70<br>(c)(2) The name and address of the laboratory location where the test was performed.<br>(c)(3) The test report date.<br>(c)(4) The test performed.<br>(c)(5) Specimen source, when appropriate.<br>(c)(6) The test result and, if applicable, the units of measurement or interpretation, or both.<br>(c)(7) Any information regarding the condition and disposition of specimens that do not meet the laboratory's criteria for acceptability.<br>This STANDARD  is not met as evidenced by:<br> Based on review of final reports and interview with the Senior Vice President, the laboratory failed to differentiate the intreprive data for Warfarin therapy vs. Non-Warfarin Therapy. Findings include:<br><br>a.    Thirteen of thirteen final patient test reports reviewed indicated that the International Normalized Ratio (INR) interpretive data on the final report was identical for Warfarin therapy and non-Warfarin therapy.<br><br>b.    The Senior Vice President confirmed the above finding on 9/22/15 at approximately 4:45 pm. | D5805 | | |
| D5821 | 493.1291(k) TEST REPORT<br><br>When errors in the reported patient test results are detected, the laboratory must do the following:<br>(k)(1) Promptly notify the authorized person ordering the test and, if applicable, the individual using the test results of reporting errors.<br>(k)(2) Issue corrected reports promptly to the authorized person ordering the test and, if applicable, the individual using the test results.<br>(k)(3) Maintain duplicates of the original report, as | D5821 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  71 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917957

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D5821 | Continued From page 71<br>well as the corrected report.<br>This STANDARD is not met as evidenced by: Based on review of patient test reports and interview with the technical supervisor, the laboratory failed to notify the authorized person for approximately seven weeks after the surveyor identified a quality control problem with Prothrombin Time/International Normalized Ratio (PT/INR). Findings include:<br><br>a.  Refer to D6093.<br><br>b.  Five of thirteen final patient reports reviewed showed corrected reports were faxed between 11/11/15 and 11/15/15.<br><br>c.  Eight of thirteen final patient reports reviewed did not show documentation that the authroized person was notified when an error in patient test results was detected.<br><br>d.  81 PT/INR patient test results were reported from 4/1/15 through 9/16/15.<br><br>e.  The technical supervisor stated that all authorized persons were notified of the error in PT/INR results, including those without documentation. | D5821 | | |
| D6076 | 493.1441 LABORATORY DIRECTOR<br><br>The laboratory must have a director who meets the qualification requirements of §493.1443 of this subpart and provides overall management and direction in accordance with §493.1445 of this subpart.<br><br>This CONDITION is not met as evidenced by: Based on the number and severity of the | D6076 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete     Event ID: W34211     Facility ID: CA22046272          If continuation sheet Page  72 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6076 | Continued From page 72<br><br>deficiencies cited herein, the Condition: Laboratories performing high complexity testing; laboratory director was not met.  The laboratory director failed to ensure that appropriate personnel were responsible for the quality control (QC) and quality assessment (QA) programs (see D6079); failed to ensure that the freezer temperatures were appropriate for storage of specimens and reference materials (see D6083); failed to ensure the methodologies selected provided quality results (see D6085); failed to ensure the verification procedures were adequate (see D6086); failed to ensure that the QC programs (see D6093) and QA programs (see D6094) are established and maintained; failed to ensure that the final patient test reports included appropriate interpretation information for PT/INR (see D6098); and failed to ensure that all personnel were appropriately trained (see D6102). | D6076 | | |
| D6079 | 493.1445(a)(b) LABORATORY DIRECTOR RESPONSIBILITIES<br><br>The laboratory director is responsible for the overall operation and administration of the laboratory, including the employment of personnel who are competent to perform test procedures, record and report test results promptly, accurately and proficiently, and for assuring compliance with the applicable regulations.<br>(a) The laboratory director, if qualified, may perform the duties of the technical supervisor, clinical consultant, general supervisor, and testing personnel, or delegate these responsibilities to personnel meeting the qualifications under 493.1447, 493.1453, 493.1459, and 493.1487 respectively.<br>(b) If the laboratory director reapportions | D6079 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete      Event ID: W34211      Facility ID: CA22046272      If continuation sheet Page  73 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6079 | Continued From page 73<br><br>performance of his or her responsibilities, he or she remains responsible for ensuring that all duties are properly performed.<br>This STANDARD  is not met as evidenced by:<br>  Based on the Plan of Correction (POC) from the 12/3/2013 recertification survey and review of quality control (QC) and quality assessment (QA) documentation and the Laboratory Personnel Report (CMS-209), the laboratory director (LD) failed to ensure that the laboratory's QC and QA programs were delegated to a qualified technical supervisor (TS). Findings include:<br><br>a.    The POC from the laboratory's 12/3/2013 recertification survey stated that a QA/QC Manager was hired and began employment on 12/10/13.<br><br>b.    The QA/QC Manager stated on 9/23/15 and again on 11/19/15 that evaluating and monitoring the QA and QC programs was solely the QA/QC Manager's responsibility.<br><br>c.    The QA/QC Manager was not listed on the CMS-209 forms dated 9/19/15, 9/23/15, or 11/15/15 in any capacity.<br><br>d.    The QA/QC Manager was not qualified to oversee and maintain the QC and QA programs.<br>493.1445(e)(2) LABORATORY DIRECTOR RESPONSIBILITIES<br><br>The laboratory director must ensure that the physical plant and environmental conditions of the laboratory are appropriate for the testing performed.<br>This STANDARD  is not met as evidenced by:<br>  Based on review of temperature documentation | D6079<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>D6083 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  74 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6083 | Continued From page 74<br><br>and interview with the Director of Assay Systems, the laboratory director failed to ensure that the freezer temperatures were appropriate for storage of reference materials and patient specimens.  Refer to D5413 and D5791. | D6083 | | |
| D6085 | 493.1445(e)(3) LABORATORY DIRECTOR RESPONSIBILITIES<br><br>The laboratory director must ensure that the test methodologies selected have the capability of providing the quality of results required for patient care.<br>This STANDARD  is not met as evidenced by:<br> Based on review of validation documents on the Theranos Proprietary System (TPS), the laboratory director failed to ensure that the quality of results on the TPS; failed to ensure the establishment of performance specifications followed the laboratory's procedures to establish accuracy, precision, reportable range, and/or reference range. Findings include:<br><br>a.   Validations Reports for Vitamin D (VitD), Total T3 (TT3), Human Chorionic Gonadotropin (HCG), and Sex Hormone Binding Globulin (SHBG) were reviewed.<br><br>b.   The laboratory presented the procedure, CL PLN-14003 Revision A, "Master Validation Plan for Routine Chemistry Assays on Theranos Devices", when the surveyor requested their procedure for establishing performance specifications.<br><br>c.   VitD, HCG, and SHBG validation reports included "Theranos-corrected" results without an explanation as to how the "Theranos Result" was corrected or which result was reported. | D6085 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete        Event ID: W34211        Facility ID: CA22046272        If continuation sheet Page  75 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6085 | Continued From page 75<br><br>d.   Accuracy for VitD, TT3, HCG, and SHBG was not determined following CL PLN-14003.<br><br>e.   Precision for VitD, TT3, and SHBG was not determined following CL PLN-14003.<br><br>f.   Reportable range data for VitD, TT3, and SHBG was not determined following CL PLN-14003.<br><br>g.   Percent (%) Recovery did not meet the laboratory's accetable criteria for VitD, TT3, and SHBG.<br><br>h.   Allowable Bias did not meet the laboratory's acceptable criteria for VitD, TT3, and SHBG.<br><br>i.   Refer to D6115. | D6085 | | |
| D6086 | 493.1445(e)(3)(ii) LABORATORY DIRECTOR RESPONSIBILITIES<br><br>The laboratory director must ensure that verification procedures used are adequate to determine the accuracy, precision, and other pertinent performance characteristics of the method.<br>This STANDARD is not met as evidenced by:<br>1.   Based on laboratory personnel interview and establishment of vitamin B12 performance specifications record review on September 22, 2015, the laboratory director failed to ensure that verification procedures used were adequate to determine pertinent performance characteristics for the laboratory's vitamin B12 testing methods. Findings included:<br><br>a.   A review of the laboratory's vitamin B12 | D6086 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  76 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917962

**SER-190**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD<br>NEWARK, CA 94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6086 | Continued From page 76<br>establishment of performance specifications document indicated that the laboratory obtained an allowable bias greater than the laboratory's criteria for acceptability. When asked to explain this discrepant result, upon close examination, laboratory personnel indicated that there was an error in the written information provided and reviewed. The laboratory was able to provided corrected data and appropriate supporting documents.<br><br>b. In spite of the erroneous information included in the vitamin B12 establishment of performance specifications document provided during this survey for review on September 22, 2015, laboratory records indicated that eleven people from the laboratory's staff approved this document between August 5, 2014 and September 19, 2015 without recognizing the document error.<br><br>2. Based on laboratory personnel interviews and establishment of performance specifications policies and procedures record review on September 22, 2015, the laboratory director failed to ensure that verification procedures used are adequate to determine the accuracy, precision, and other pertinent performance characteristics of the laboratory's Advia 1800 testing methods. Findings included:<br><br>a. It was the practice of the laboratory to use the Siemens Advia 1800 to perform and report patient routine chemistry serum testing. Examples of analytes the laboratory tested using the Advia 1800 included ALT, BUN, calcium, glucose, and sodium.<br><br>b. According to the laboratory's protocol titled | D6086 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 77 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6086 | Continued From page 77 "Master Validation Plan for Routine Chemistry Assays on Theranos Devices," "for establishing the trueness or comparability of two procedures. . .at least 50% of samples should be outside the reference interval."<br><br>c.   A review of the test results used by the laboratory to establish "the trueness or comparability of two procedures" for ALT, BUN, calcium, glucose, and sodium testing using the Advia 1800 showed that the laboratory did not follow its established protocol and use "at least 50% of samples. . .outside the reference interval."<br><br>i.   For a validation document dated April 2, 2015, ALT test results used to establish "the trueness or comparability of two procedures" for tests performed using the Advia 1800, 6 of 110 ALT test results used were outside the laboratory's reference interval.<br><br>ii.   For a validation document dated April 21, 2015, BUN test results used to establish "the trueness or comparability of two procedures" for tests performed using the Advia 1800, 1 of 109 BUN test result used was outside the laboratory's reference interval.<br><br>iii.   For a validation document dated April 21, 2015, calcium test results used to establish "the trueness or comparability of two procedures" for tests performed using the Advia 1800, 1 of 110 calcium test result used was outside the laboratory's reference interval.<br><br>iv.   For a validation document dated April 21, 2015, glucose test results used to establish "the trueness or comparability of two procedures" for tests performed using the Advia 1800, 6 of 110 | D6086 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917964

SER-192

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6086 | Continued From page 78<br>glucose test results used were outside the laboratory's reference interval.<br><br>v.   For a validation document dated April 1, 2015, sodium test results used to establish "the trueness or comparability of two procedures" for tests performed using the Advia 1800, 1 of 113 sodium test result used was outside the laboratory's reference interval.<br><br>3.   Based on laboratory personnel interviews and establishment of performance specifications record review on November 17, 2015, the laboratory director failed to ensure that ALT, BUN, calcium, glucose, and sodium verification procedures used were adequate to determine the precision of the laboratory's Advia 1800 testing methods.  Findings included:<br><br>a.   It was the practice of the laboratory to use the Siemens Advia 1800 to perform and report patient routine chemistry serum testing.  Examples of analytes the laboratory tested using the Advia 1800 included ALT, BUN, calcium, glucose, and sodium.<br><br>b.   A review of laboratory documents establishing performance specifications for ALT, BUN, calcium, glucose, and sodium performed using the Advia 1800 indicated that the coefficient of variation (CV) determined by the laboratory's testing differed from the CV established by the manufacturer.<br><br>i.   For ALT, based on a laboratory document dated April 2, 2015, the laboratory determined ALT Advia 1800 CV's between 2.0 - 5.5.  The manufacturer's established ALT CV's were between 1.6 - 3.1. | D6086 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  79 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____<br>B. WING _____ | | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6086 | Continued From page 79 | D6086 | | |
| | ii.   For BUN, based on a laboratory document dated April 21, 2015, the laboratory determined BUN Advia 1800 CV's between 2.1 - 2.7.  The manufacturer's established BUN CV's were between 1.7 - 2.4. | | | |
| | iii.   For calcium, based on a laboratory document dated April 21, 2015, the laboratory determined calcium Advia 1800 CV's between 2.0 - 3.6.  The manufacturer's established calcium CV's were between 0.8 - 2.1. | | | |
| | iv.   For glucose, based on a laboratory document dated April 21, 2015, the laboratory determined glucose Advia 1800 CV's between 1.5 - 2.2.  The manufacturer's established glucose CV's were between 0.7 - 0.9. | | | |
| | v.   For sodium, based on a laboratory document dated April 1, 2015, the laboratory determined sodium Advia 1800 CV's between 1.2 - 1.3.  The manufacturer's established sodium CV's were between 0.6 - 1.1. | | | |
| | c.   The laboratory provided no written explanation/investigation as to why the laboratory obtained CV's for ALT, BUN, calcium, glucose, and sodium using the Advia 1800 that were greater than the CV's established by the manufacturer.  Laboratory records indicated that these laboratory documents were approved by the laboratory director on September 19, 2015. | | | |
| | 4.   Based on laboratory personnel interviews and establishment of performance specifications record review on November 17, 2015, the laboratory director failed to ensure that ALT, BUN, calcium, and glucose verification procedures | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  80 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917966

**SER-194**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6086 | Continued From page 80 | D6086 | | |
| | used were adequate to determine pertinent performance characteristics, such as reference range, of the laboratory's Advia 1800 testing methods.  Findings included: | | | |
| | a.   It was the practice of the laboratory to use the Siemens Advia 1800 to perform and report patient routine chemistry serum testing.  Examples of analytes the laboratory tested using the Advia 1800 included ALT, BUN, calcium, and glucose. | | | |
| | b.   A review of laboratory documents establishing performance specifications for ALT, BUN, calcium, and glucose performed using the Advia 1800 indicated that the reference range determined by the laboratory's testing differed from the reference range on the laboratory's test reports. | | | |
| | i.   For ALT, based on a laboratory document dated April 2, 2015, the laboratory determined the ALT Advia 1800 reference range as 0 - 52 U/L. However, the laboratory's reference range on the test reports was 8 - 41 U/L. | | | |
| | ii.   For BUN, based on a laboratory document dated April 21, 2015, the laboratory determined the BUN Advia 1800 reference range as 5.3 - 22.5 mg/dL.  However, the laboratory's reference range on the test reports was 6 - 24 mg/dL. | | | |
| | iii.   For calcium, based on a laboratory document dated April 21, 2015, the laboratory determined the calcium Advia 1800 reference range as 8.18 - 10.3 mg/dL.  However, the laboratory's reference range on the test reports was 8.3 - 10.6 mg/dL. | | | |
| | iv.   For glucose, based on a laboratory document dated April 21, 2015, the laboratory determined | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  81 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917967

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>CENTERS FOR MEDICARE & MEDICAID SERVICES | | | PRINTED: 01/25/2016<br>FORM APPROVED<br>OMB NO. 0938-0391 |
|---|---|---|---|
| STATEMENT OF DEFICIENCIES<br>AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA<br>IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY<br>COMPLETED<br><br>**11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>**7333 GATEWAY BLVD<br>NEWARK, CA  94560** |
|---|---|

| (X4) ID<br>PREFIX<br>TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(EACH DEFICIENCY MUST BE PRECEDED BY FULL<br>REGULATORY OR LSC IDENTIFYING INFORMATION) | ID<br>PREFIX<br>TAG | PROVIDER'S PLAN OF CORRECTION<br>(EACH CORRECTIVE ACTION SHOULD BE<br>CROSS-REFERENCED TO THE APPROPRIATE<br>DEFICIENCY) | (X5)<br>COMPLETION<br>DATE |
|---|---|---|---|---|
| D6086 | Continued From page 81<br><br>the glucose Advia 1800 reference range as 64.0 - 112.3 mg/dL. However, the laboratory's reference range on the test reports was 73 - 99 mg/dL.<br><br>c.   The laboratory provided no written explanation/investigation as to why the laboratory obtained reference ranges for ALT, BUN, calcium, and glucose were different than than the reference ranges indicated on the test reports.. Laboratory records indicated that these laboratory documents were approved by the laboratory director on September 19, 2015.<br><br>5.   Based on laboratory personnel interviews and complete blood counts (CBC) verification of method specifications record review on November 19, 2015, the laboratory director failed to ensure that verification procedures used were adequate to determine the accuracy, precision, and other pertinent performance characteristics for the two Siemens Advia 2120i instruments. Findings included:<br><br>a.   It was the practice of the laboratory to test patient venous CBC specimens using two Siemens Advia 2120i instruments, designated as #1 and #2.<br><br>b.   Although the laboratory maintained verification of test performance specifications documents for the two Advia 2120i instruments, the laboratory maintained no documentation to indicate that verification results for the two instruments were acceptable to the laboratory, no evidence that the laboratory director had reviewed and approved the verification documents, and no date the verification documents were reviewed and approved. | D6086 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  82 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6086 | Continued From page 82<br><br>c.   Between February 2015 and September 21, 2015, the laboratory performed and reported 2,395 patient CBC test results using the Advia 2120i #1.  From November 6, 2015 to November 19, 2015, the laboratory performed and reported 67 patient CBC test results using the Advia 2120i #2.<br><br>6.   Based on review of documentation, lack of documentation, observation and interview with the general supervisor, the laboratory director failed to ensure that the laboratory determined the mean normal prothrombin time (MNPT) prior to implementing a new lot number of Innovin (thromboplastin) on the Siemens BCS XP. Findings include:<br><br>a.   Dade Innovin (thromboplastin) lot number 539280 was put into use in March 2015.<br><br>b.   The test system required that the MNPT (in seconds) be calculated for each new lot number of Innovin.<br><br>c.   The MNPT specific to the lot number of Innovin was to be entered into the BCS XP.<br><br>d.   The MNPT was observed on 9/23/15 at approximately 3:25 pm revealed the correct MNPT was entered into the BCS XP.<br><br>e.   Review of the MNPT data revealed that the MNPT data was performed on 9/18/15.<br><br>f.   The general supervisor stated that there should be date from March 2015; however, the documentation could not be located. | D6086 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917969

**SER-197**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE  7333 GATEWAY BLVD  NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6093  D6093 | Continued From page 83  493.1445(e)(5) LABORATORY DIRECTOR RESPONSIBILITIES  The laboratory director must ensure that the quality control programs are  established and maintained to assure the quality of laboratory services provided and to identify failures in quality as they occur.  This STANDARD  is not met as evidenced by:  1.  Based on laboratory personnel interviews, direct observations, and quality control document reviews, the laboratory director failed to ensure that quality control programs were established and maintained to assure the quality of laboratory services provided and to identify failures in quality as they occur.  The laboratory director failed to ensure that the laboratory included two quality control materials at least once each day patient specimens were examined (see D5447), the laboratory included a positive control material at least once each day patient specimens were assayed (see D5449), stated values of commercially assayed quality control materials were verified (see D5469), each batch of media was checked for its ability to support growth (see D5477), results of quality control materials met the laboratory's criteria for acceptability (see D5481), and the laboratory followed established quality control corrective action protocols (see D5779).  2.   Based on review of the prothrombin time/international normalized ratio (PT/INR) procedure, quality control (QC) records and interview with the general supervisor, the laboratory director failed to ensure that the QC for PT/INR was acceptable prior to reporting patient results and failed to identify that the QC data revealed a shift greater than 2 standard | D6093  D6093 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  84 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  **11/20/2015** |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**THERANOS INC**

STREET ADDRESS, CITY, STATE, ZIP CODE

**7333 GATEWAY BLVD**
**NEWARK, CA  94560**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6093 | Continued From page 84 deviations (SD) from April 2015 through September 2015. Findings include:  a.   CL SOP-10001 Revision A, "Measuring Prothrombin Time-Innovin (PT on the Siemens BCS XP Instrument" stated on page 6, section 8.6 that if control values are outside of the determined range, the controls, reagents and instrument performance should be checked and that identification and correction of the problem shoud be documented prior to reporting patient results.  b.   QC records for Citrol 3 (Lot number 548425) were reviewed from 4/1/15 through 9/23/15.  c.   The general supervisor stated that QC was acceptable if the values were +/- 2 SD from the mean.  d.   From April 1, 2015 through September 16, 2015, 32 of 69 days showed Citrol 3 QC values were greater than 2 SD (- 2 SD) below the mean.  e.   On 4/7/15, Citrol 3 was run six times before an acceptable QC value was obtained.  f.   On 9/7/15, Citrol 3 was run seven times without obtaining an acceptable QC value.  g.   On 9/8/15, Citrol 3 was run twelve times without obtaining an acceptable QC value.  h.   On 25 of 32 days, Citrol 3 was not retrun when the QC value was greater than - 2 SD.  i.   On 5/15/15, 8/13/15, 8/21/15 and 9/10/15, Citrol 3 was run twice. All QC results were unacceptable. | D6093 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  85 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6093 | Continued From page 85<br><br>j.    TheRule Check report revealed that 13 of 13 QC values in April 2015, 2 of 17 in May 2015, 7 of 7 in June 2015; 13 of 13 in July 2015, 16 of 16 in August and 24 of 24 9/1-9/16 2015 showed rule violation messages related to Citrol 3.<br><br>k.    On approximately 9/16/15, the labortory adjusted the acceptable range for Citrol 3 to match the data.  This change was implemented without any investigation as to the reason for the shift in control values.<br><br>l.    81 patients were reported from 4/1/15 through 9/16/15. | D6093 | | |
| D6094 | 493.1445(e)(5) LABORATORY DIRECTOR RESPONSIBILITIES<br><br>The laboratory director must ensure that the quality assessment programs are established and maintained to assure the quality of laboratory services provided and to identify failures in quality as they occur.<br>This STANDARD  is not met as evidenced by:<br> 1.  Based on laboratory personnel interviews, direct observations, and quality control document reviews, the laboratory director failed to ensure that quality assessment programs were established and maintained to assure the quality of laboratory services provided and to identify failures in quality as they occur.  The laboratory director failed to ensure that preanalytic (see D5391 and D5393) and analytic (see D5791 and D5793) systems quality assessment programs were established, followed, and effective.<br><br>2.    Based on review of documentation and lack of documentation, the laboratory director failed to | D6094 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  86 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917972

**SER-200**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6094 | Continued From page 86<br><br>identify failures in Prothrombin Time/International Normalized Ratio (PT/INR) testing which affected the quality of the PT/INR patient results. Findings include:<br><br>a.   The Dada Innovin (thromboplastin) reagent was used past the expiration date. Refer to D5413.<br><br>b.   The quality control data from 4/1/2015 through 9/16/15 revealed that patient results above normal were biased low (i.e., reported value was lower than it should have been reported).<br><br>c.   The target INR value for patients on Warfarin therapy was 2-3.<br><br>d.   81 patients were reported from 4/1/15 through 9/21/15.<br><br>e.   44 of 81 patients had INRs greater than or equal to 2 reported and of the 44, 16 of the 44 had INR greater or equal to 3 reported.<br><br>f.   There was no quality assessment (QA) or other documentation to indicate that the PT/INR failure had been identified and corrected. | D6094 | | |
| D6098 | 493.1445(e)(8) LABORATORY DIRECTOR RESPONSIBILITIES<br><br>The laboratory director must ensure that reports of test results include pertinent information required for interpretation.<br>This STANDARD  is not met as evidenced by:<br> Based on review of final test reports and interview with the Senior Vice President, the laboratory director failed to ensure that the | D6098 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  87 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917973

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6098 | Continued From page 87<br><br>interpretive data on the Prothrombin Time/International Normalized Ratio (PT/INR) final reports was clear to differentiate between Warfarin therapy and non-Warfarin therapy. Refer to D5805. | D6098 | | |
| D6102 | 493.1445(e)(12) LABORATORY DIRECTOR RESPONSIBILITIES<br><br>The laboratory director must ensure that prior to testing patients' specimens, all personnel have the appropriate education and experience, receive the appropriate training for the type and complexity of the services offered, and have demonstrated that they can perform all testing operations reliably to provide and report accurate results.<br>This STANDARD  Is not met as evidenced by:<br> Based on review of training documents and interview with the QA/QC (Quality Assurance/Quality Control) Manager, technical supervisor and testing personnel, the laboratory failed to document training of testing personnel on the Theranos Proprietary System (TPS) prior to patient testing and failed to document training in the vacutainer laboratory of testing personnel prior to patient testing. Findings include:<br><br>a.   Theranos Proprietary System (TSP)<br><br>i.    The QA/QC Manager and technical supervisor stated that all training documentation was kept in each testing person's employee file.<br><br>ii.   Eleven testing personnel files were reviewed.<br><br>iii.  Eight of eleven personnel files did not include any documentation of training on the TPS prior to running and reporting patient test results. | D6102 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  88 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917974

**SER-202**

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>CENTERS FOR MEDICARE & MEDICAID SERVICES | | | | PRINTED: 01/25/2016<br>FORM APPROVED<br>OMB NO. 0938-0391 |
|---|---|---|---|---|
| STATEMENT OF DEFICIENCIES<br>AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA<br>IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | | (X3) DATE SURVEY<br>COMPLETED<br><br>**11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID<br>PREFIX<br>TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(EACH DEFICIENCY MUST BE PRECEDED BY FULL<br>REGULATORY OR LSC IDENTIFYING INFORMATION) | ID<br>PREFIX<br>TAG | PROVIDER'S PLAN OF CORRECTION<br>(EACH CORRECTIVE ACTION SHOULD BE<br>CROSS-REFERENCED TO THE APPROPRIATE<br>DEFICIENCY) | (X5)<br>COMPLETION<br>DATE |
|---|---|---|---|---|
| D6102 | Continued From page 88<br><br>b.   Venipuncture Laboratory<br><br>a.   The QA/QC Manager and technical supervisor stated that all training documentation was kept in each testing person's employee file.<br><br>b.   Three testing personnel files were reviewed.<br><br>c.   Testing Person #6 (TP6) training records did not include documentation for the Siemens XPT, Advia 2120i, Eldon Card, and were incomplete for the Centaur, IRIS, BC SXP and Cellavision.<br><br>d.   TP6 stated that training had not been completed as of 9/23/15; however PT6 had been running and reporting patient test results since April 2015.  TP6 also stated that activities listed on the training documentation which were not signed off were performed by TP6, but training had not occurred.<br><br>e.   TP6 confirmed the above findings on 9/23/15 at approximately 3:30 pm.<br><br>f.   Testing Person #11 (TP11) training records did not include documentation for the Advia, Immulite, BC SXP, Advia 2120i, Centaur, MacroVu RPR, Multispot HIV, and Diasorin Liaison.<br><br>g.   TP6 stated that TP11 ran and reported patient test results from these systems.<br><br>h.   Testing Person #31 (TP31)'s training documentation included documents on critical values and critical values logsheets.  No other training documentation was found. | D6102 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  89 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6102 | Continued From page 89<br><br>i.     The general supervisor stated that TP31 had been running and releasing patient test results.<br><br>j.     The general supervisor confirmed that the training documents were missing or incomplete for three of three testing personnel on 11/19/15 at 11:40 am. | D6102 | | |
| D6108 | 493.1447 LABORATORY TECHNICAL SUPERVISOR<br><br>The laboratory must have a technical supervisor who meets the qualification requirements of §493.1449 of this subpart and provides technical supervision in accordance with §493.1451 of this subpart.<br><br>This CONDITION  is not met as evidenced by:<br> Based on the number and severity of the deficiencies cited herein, the Condition: Laboratories performing high complexity testing; technical supervisor was not met.  Two of three technical supervisors failed to meet the training or experience requirement in one or more specialties/subspecialties (see D6111), and the technical supervisors failed to ensure the establishment of performance specifications for the Theranos Proprietary System (TPS) were complete and followed the laboratory's procedure (see D6115). | D6108 | | |
| D6111 | 493.1449 TECHNICAL SUPERVISOR QUALIFICATIONS<br><br>(a) The technical supervisor must possess a current license issued by the State in which the laboratory is located, if such licensing is required; and<br>(b) The laboratory may perform anatomic and clinical laboratory procedures and tests in all | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  90 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917976

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 90<br><br>specialties and subspecialties of services except histocompatibility and clinical cytogenetics services provided the individual functioning as the technical supervisor--<br>(b)(1) Is a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(b)(2) Is certified in both anatomic and clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or Possesses qualifications that are equivalent to those required for such certification.<br>(c) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of bacteriology, the individual functioning as the technical supervisor must--<br>(c)(1)(i) Be a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(c)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(c)(2)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and<br>(c)(2)(ii) Have at least one year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of bacteriology; or | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete      Event ID: W34211      Facility ID: CA22046272      If continuation sheet Page 91 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917977

**SER-205**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 91<br><br>(c)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and<br>(c)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of bacteriology; or<br>(c)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and<br>(c)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of bacteriology; or<br>(c)(5)(i) Have earned a bachelor's degree in a chemical, physical, or biological science or medical technology from an accredited institution; and<br>(c)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of bacteriology.<br>(d) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of mycobacteriology, the individual functioning as the technical supervisor must--<br>(d)(1)(i) Be a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  92 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD NEWARK, CA 94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 92<br><br>(d)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(d)(2)(i) Be a doctor of medicine, doctor of osteopathy, or doctor or podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and<br>(d)(2)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of mycobacteriology; or<br>(d)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and<br>(d)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of mycobacteriology; or<br>(d)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and<br>(d)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of mycobacteriology; or<br>(d)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 93 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917979

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**THERANOS INC**

STREET ADDRESS, CITY, STATE, ZIP CODE

**7333 GATEWAY BLVD**
**NEWARK, CA  94560**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 93<br>and<br>(d)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of mycobacteriology.<br>(e) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of mycology, the individual functioning as the technical supervisor must--<br>(e)(1)(i) Be a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(e)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(e)(2)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and<br>(e)(2)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of mycology; or<br>(e)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and<br>(e)(3)(ii) Have at least 1 year of laboratory training or experience, or both in high complexity testing within the specialty of microbiology with a | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  94 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 94<br>minimum of 6 months experience in high complexity testing within the subspecialty of mycology; or<br>(e)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and<br>(e)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of mycology; or<br>(e)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; and<br>(e)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of mycology.<br>(f) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of parasitology, the individual functioning as the technical supervisor must--<br>(f)(1)(i) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(f)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(f)(2)(i) Be a doctor of medicine, doctor of | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  95 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  **11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  **THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE  **7333 GATEWAY BLVD**  **NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 95 osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and (f)(2)(ii) Have at least one year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of parasitology; (f)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and (f)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of parasitology; or (f)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and (f)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of parasitology; or (f)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; and (f)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 96 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | | 11/20/2015 |

NAME OF PROVIDER OR SUPPLIER

**THERANOS INC**

STREET ADDRESS, CITY, STATE, ZIP CODE
**7333 GATEWAY BLVD
NEWARK, CA  94560**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 96<br>parasitology.<br>(g) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of virology, the individual functioning as the technical supervisor must--<br>(g)(1)(i) Be a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(g)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(g)(2)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and<br>(g)(2)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of virology; or<br>(g)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and<br>(g)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of virology; or<br>(g)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete       Event ID: W34211       Facility ID: CA22046272       If continuation sheet Page  97 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____ <br> B. WING _____ | | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD** <br> **NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 97 <br><br> (g)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of virology; or <br> (g)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; and <br> (g)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing within the specialty of microbiology with a minimum of 6 months experience in high complexity testing within the subspecialty of virology. <br> (h) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the specialty of diagnostic immunology, the individual functioning as the technical supervisor must- <br> (h)(1)(i) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and <br> (h)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or <br> (h)(2)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and <br> (h)(2)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing for the specialty of diagnostic immunology; or | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  98 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA 94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 98<br><br>(h)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and<br>(h)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of diagnostic immunology; or<br>(h)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and<br>(h)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing for the specialty of diagnostic immunology; or<br>(h)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; and<br>(h)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing for the specialty of diagnostic immunology.<br>(i) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the specialty of chemistry, the individual functioning as the technical supervisor must--<br>(i)(1)(i) Be a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(i)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(i)(2)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 99 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917985

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 99<br>located; and<br>(i)(2)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing for the specialty of chemistry; or<br>(i)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and<br>(i)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of chemistry; or<br>(i)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and<br>(i)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing for the specialty of chemistry; or<br>(i)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; and<br>(i)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing for the specialty of chemistry.<br>(j) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the specialty of hematology, the individual functioning as the technical supervisor must--<br>(j)(1)(i) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(j)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(j)(2)(i) Be a doctor of medicine, doctor of | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 100 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 05D2025714 | A. BUILDING _____<br>B. WING _____ | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD<br>NEWARK, CA  94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 100<br>osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and<br>(j)(2)(ii) Have at least one year of laboratory training or experience, or both, in high complexity testing for the specialty of hematology (for example, physicians certified either in hematology or hematology and medical oncology by the American Board of Internal Medicine); or<br>(j)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and<br>(j)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of hematology; or<br>(j)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and<br>(j)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing for the specialty of hematology; or<br>(j)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; and<br>(j)(5)(ii) Have at least 4 years of laboratory training or experience, or both, in high complexity testing for the specialty of hematology.<br>(k)(1) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of cytology, the individual functioning as the technical supervisor must--<br>(k)(1)(i) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and | D6111 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917987

**SER-215**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 101<br><br>(k)(1)(ii) Meet one of the following requirements--<br>(k)(1)(ii)(A) Be certified in anatomic pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(k)(1)(ii)(B) Be certified by the American Society of Cytology to practice cytopathology or possess qualifications that are equivalent to those required for such certification;<br>(l) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of histopathology, the individual functioning as the technical supervisor must--<br>(l)(1) Meet one of the following requirements:<br>(l)(1)(i)(A) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(l)(1)(i)(B) Be certified in anatomic pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification;<br>(l)(1)(ii) An individual qualified under §493.1449(b) or paragraph (l)(1) of this section may delegate to an individual who is a resident in a training program leading to certification specified in paragraph (b) or (l)(1)(i)(B) of this section, the responsibility for examination and interpretation of histopathology specimens.<br>(l)(2) For tests in dermatopathology, meet one of the following requirements:<br>(l)(2)(i)(A) Be a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  102 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA 94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 102<br>located and--<br>(l)(2)(i)(B) Meet one of the following requirements:<br>(l)(2)(i)(B)(1) Be certified in anatomic pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(l)(2)(i)(B)(2) Be certified in dermatopathology by the American Board of Dermatology and the American Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(l)(2)(i)(B)(3) Be certified in dermatology by the American Board of Dermatology or possess qualifications that are equivalent to those required for such certification; or<br>(l)(2)(ii) An individual qualified under §493.1449(b) or paragraph (l)(2)(i) of this section may delegate to an individual who is a resident in a training program leading to certification specified in paragraphs (b) or (l)(2)(i)(B) of this section, the responsibility for examination and interpretation of dermatopathology specimens.<br>(l)(3) For tests in ophthalmic pathology, meet one of the following requirements:<br>(l)(3)(i)(A) Be a doctor of medicine or doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located and--<br>(l)(3)(i)(B) Must meet one of the following requirements:<br>(l)(3)(i)(B)(1) Be certified in anatomic pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br>(l)(3)(i)(B)(2) Be certified by the American Board | D6111 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917989

**SER-217**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 05D2025714 | A. BUILDING _____  B. WING _____ | 11/20/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| THERANOS INC | 7333 GATEWAY BLVD  NEWARK, CA 94560 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 103 | D6111 | | |
| | of Ophthalmology or possess qualifications that are equivalent to those required for such certification and have successfully completed at least 1 year of formal post-residency fellowship training in ophthalmic pathology; or | | | |
| | (l)(3)(ii) An individual qualified under §493.1449(b) or paragraph (1)(3)(i) of this section may delegate to an individual who is a resident in a training program leading to certification specified in paragraphs (b) or (1)(3)(i)(B) of this section, the responsibility for examination and interpretation of ophthalmic specimens; or | | | |
| | (m) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the subspecialty of oral pathology, the individual functioning as the technical supervisor must meet one of the following requirements: | | | |
| | (m)(1)(i) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located and-- | | | |
| | (m)(1)(ii) Be certified in anatomic pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or | | | |
| | (m)(2) Be certified in oral pathology by the American Board of Oral Pathology or possess qualifications for such certification; or | | | |
| | (m)(3) An individual qualified under §493.1449(b) or paragraph (m)(1) or (2) of this section may delegate to an individual who is a resident in a training program leading to certification specified in paragraphs (b) or (m)(1) or (2) of this section, the responsibility for examination and interpretation of oral pathology specimens. | | | |
| | (n) If the requirements of paragraph (b) of this section are not met and the laboratory performs | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete        Event ID: W34211        Facility ID: CA22046272        If continuation sheet Page 104 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917990

SER-218

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  **11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  **THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE  **7333 GATEWAY BLVD**  **NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 104  tests in the specialty of radiobioassay, the individual functioning as the technical supervisor must--  (n)(1)(i) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and  (n)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or  (n)(2)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and  (n)(2)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing for the specialty of radiobioassay; or  (n)(3)(i) Have an earned doctoral degree in a chemical, physical, biological or clinical laboratory science from an accredited institution; and  (n)(3)(ii) Have at least 1 year of laboratory training or experience, or both, in high complexity testing within the specialty of radiobioassay; or  (n)(4)(i) Have earned a master's degree in a chemical, physical, biological or clinical laboratory science or medical technology from an accredited institution; and  (n)(4)(ii) Have at least 2 years of laboratory training or experience, or both, in high complexity testing for the specialty of radiobioassay; or  (n)(5)(i) Have earned a bachelor's degree in a chemical, physical or biological science or medical technology from an accredited institution; and  (n)(5)(ii) Have at least 4 years of laboratory | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  105 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 105<br>training or experience, or both, in high complexity testing for the specialty of radiobioassay.<br>(o) If the laboratory performs tests in the specialty of histocompatibility, the individual functioning as the technical supervisor must either--<br>(o)(1)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and<br>(o)(1)(ii) Have training or experience that meets one of the following requirements:<br>(o)(1)(ii)(A) Have 4 years of laboratory training or experience, or both, within the specialty of histocompatibility; or<br>(o)(1)(ii)(B)(1) Have 2 years of laboratory training or experience, or both, in the specialty of general immunology; and<br>(o)(1)(ii)(B)(2) Have 2 years of laboratory training or experience, or both, in the specialty of histocompatibility; or<br>(o)(2)(i) Have an earned doctoral degree in a biological or clinical laboratory science from an accredited institution; and<br>　　(o)(2)(ii) Have training or experience that meets one of the following requirements:<br>(o)(2)(ii)(A) Have 4 years of laboratory training or experience, or both, within the specialty of histocompatibility; or<br>(o)(2)(ii)(B)(1) Have 2 years of laboratory training or experience, or both, in the specialty of general immunology; and<br>(o)(2)(ii)(B)(2) Have 2 years of laboratory training or experience, or both, in the specialty of histocompatibility.<br>(p) If the laboratory performs tests in the specialty of clinical cytogenetics, the individual functioning as the technical supervisor must-- | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  106 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 106<br><br>(p)(1)(i) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located; and<br>(p)(1)(ii) Have 4 years of training or experience, or both, in genetics, 2 of which have been in clinical cytogenetics; or<br>(p)(2)(i) Hold an earned doctoral degree in a biological science, including biochemistry, or clinical laboratory science from an accredited institution; and<br>(p)(2)(ii) Have 4 years of training or experience, or both, in genetics, 2 of which have been in clinical cytogenetics.<br>(q) If the requirements of paragraph (b) of this section are not met and the laboratory performs tests in the specialty of immunohematology, the individual functioning as the technical supervisor must--<br>(q)(1)(i) Be a doctor of medicine or a doctor of osteopathy licensed to practice medicine or osteopathy in the State in which the laboratory is located; and<br>(q)(1)(ii) Be certified in clinical pathology by the American Board of Pathology or the American Osteopathic Board of Pathology or possess qualifications that are equivalent to those required for such certification; or<br><br>Note: The technical supervisor requirements for "laboratory training or experience, or both" in each specialty or subspecialty may be acquired concurrently in more than one of the specialties or subspecialties of service. For example, an individual, who has a doctoral degree in chemistry and additionally has documentation of 1 year of laboratory experience working concurrently in | D6111 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 107 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  05D2025714 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE  7333 GATEWAY BLVD  NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111 | Continued From page 107 | D6111 | | |
| | high complexity testing in the specialties of microbiology and chemistry and 6 months of that work experience included high complexity testing in bacteriology, mycology, and mycobacteriology, would qualify as the technical supervisor for the specialty of chemistry and the subspecialties of bacteriology, mycology, and mycobacteriology. | | | |
| | This STANDARD  is not met as evidenced by:  Based on review of training documentation, two of three technical supervisors failed to have the required 4 years of training or experience, or both, in a specialty or subspecialty as required to qualify as a technical supervisor.  Findings include: | | | |
| | a.   Training documents from the personnel file for three technical supervisors were reviewed. | | | |
| | b.   Technical Supervisor #1 (TS1) and the QA/QC Manager stated that all training documentation was kept in the personnel file for each employee. | | | |
| | c.   TS1 was unable to provided documentation which showed 4 years of training and/or experience in high complexity testing for hematology or immunology. | | | |
| | d.   Technical Supervisor #2 (TS2) was unable to provided documentation which showed 4 years of training and/or experience in high complexity testing for hematology, chemistry or immunology. | | | |
| | e.   TS1 confirmed on 9/23/2015 at 10:30 am that the documentation did not show the required training or experience in immunology and hematology for TS1. | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  108 of 121

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6111<br><br><br><br>D6115 | Continued From page 108<br><br>f.    TS2 confirmed on 11/18/2015 at approximately 9:50 am that the documentation did not show the required training or experience in hematology, chemistry or immunology for TS2. 493.1451(b)(2) TECHNICAL SUPERVISOR RESPONSIBILITIES<br><br>The technical supervisor is responsible for verification of the test procedures performed and establishment of the laboratory's test performance characteristics, including the precision and accuracy of each test and test system.<br>This STANDARD  is not met as evidenced by:<br> Based on review of validation documents on the Theranos Proprietary System (TPS), the technical supervisor failed to ensure that the validation procedures performed on the TPS established performance specifications for accuracy, precision, reportable range, and/or reference range and failed to ensure establishment of the performance specifications followed the laboratory's procedures.  Findings include:<br><br>a.    Validations Reports for Vitamin D (VitD), Total T3 (TT3), Human Chorionic Gonadotropin (HCG), and Sex Hormone Binding Globulin (SHBG) were reviewed.<br><br>b.    The laboratory presented the procedure, CL PLN-14003 Revision A, "Master Validation Plan for Routine Chemistry Assays on Theranos Devices," when the surveyor requested their procedure for establishing performance specifications.<br><br>c.    VitD, HCG, and SHBG validation reports | D6111<br><br><br><br>D6115 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  109 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0917995

SER-223

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6115 | Continued From page 109<br><br>included "Theranos-corrected" results without an explanation as to how the "Theranos Result" was corrected or which result was reported.<br><br>d.   The procedure requires in Section 4.1 that the laboratory director (LD) ensures that the chemistry assays are qualified and validated according to the procedure.<br><br>e.   The validation report for SHBG had an effective date of 7/14/14 but was not signed by the LD until 9/19/15.  SHBG testing was performed on the TPS from 7/28/14 through 6/24/15.<br><br>Accuracy<br><br>a.   The procedure required in Section 16 that the samples used to calculate accuracy were to cover the entire reportable range, samples were to be run in at least 2 replicates, and 50% of samples were to be outside the reference range.<br><br>b.   VitD, TT3, HCG, and SHBG reports all indicated that the predicate method was performed in duplicate, but did not indicate if TPS samples were run in duplicate.<br><br>c.   TT3 had a reportable range of 47.6-1420 ng/dL however the accuracy data only covered the range of 42.8-350 ng/dL.<br><br>d.   The laboratory used a total of 148 specimens to perform the accuracy study for SHBG.  Of the 148 specimens only six (4%) were outside the reference range.  50% of the specimens were not outside the reference range as required.<br><br>Precision | D6115 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0917996

**SER-224**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6115 | Continued From page 110<br><br>a.  The procedure required in Section 13 that the samples used to calculate precision were to cover the entire reportable range, include data from the familiarization study, include at least 1 quality control sample, have study performed over 20 operating days, and have a CV% less than or equal to 15% (less than or equal to 20% at the lower and upper level of detection).<br><br>b.  VitD, TT3, HCG, and SHBG reports revealed that none of the precision studies covered 20 operating days.<br><br>c.  VitD and TT3 reports revealed that the precision study did not cover the entire reportable range.<br><br>d.  VitD, TT3, HCG, and SHBG reports did not document that the familiarization data was used in the validation report and did not document 1 level of quality control was included in the study.<br><br>e.  VitD precision data showed that two of three levels (15, 33.5 ng/mL) used showed a CV% greater than 20% and 15% respectively.<br><br>f.  TT3 precision data showed that two of three levels (85, 109 ng/dL) used showed a CV% greater than 15%.<br><br>g.  SHBG precision revealed that 47 of 96 samples had %CV greater than 20%.<br><br>Reportable Range<br><br>a.  The procedure required in Section 17 that the samples used to calculate reportable range were to cover the entire reportable range. | D6115 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  111 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>**05D2025714** | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6115 | Continued From page 111<br><br>b.  The validation report for VitD stated that the reportable range was 10-150 ng/mL.  Samples tested covered a range of 14.17-108.25 ng/mL.<br><br>c.  The validation report for TT3 stated that the reportable range was 47.6-1420 ng/dL.  Samples tested covered a range of less than 40-266 ng/dL.<br><br>d.  The validation report for SHBG stated that the reportable range was 2.5-200 nM.  Samples tested covered a range of 2.4-106 nM.<br><br>e.  The validition report for SHBG also stated that the R2 value for the dilution linearity should be equal to or greater than 0.95.  However, the valuation report states on page 46 that "Two of the seven samples did not meet the optimal percent recovery and show slighty higher % recovery than the upper desired limit, however the R2 value of 0.92 seems very compariable to the 0.95 acceptance value."<br><br>Reference Range<br><br>a.  The procedure required in Section 18 that the reference range data should include "...a minimum of 120 samples for each partition.  For instance, if a reference  interval needs partitions for gender, then samples from 120 men and 120 women will be needed."<br><br>b.  Reference range data for VitD, TT3, and HCG included 20 samples.<br><br>c.  Reference range data for SHBG included 14 samples from females and 10 samples from males. | D6115 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  112 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6115 | Continued From page 112<br>Percent (%) Recovery<br><br>a.   The laboratory validation reports required a Recovery Rate of 100 +/- 20% (100 +/- 25% at the upper limit and lower limit of reportable range) for VitD, TT3, and SHBG.<br><br>b.   The "Clinical Correlation (Historical)" table, Table 7, for VitD revealed that twelve (12) of twenty nine (29) samples showed a % Recovery greater than +/- 20%.  Ten (10) of the 12 samples had a % Recovery greater than +/- 25%.  Of these 10 samples, eight of ten were not at the upper or lower limit of the reportable range.<br><br>c.   The "Clinical Correlation (Historical)" table, Table 8, for VitD revealed that twenty eight (28) of eighty one (81) samples showed a % Recovery greater than +/- 20%.  Twenty (20) of the 28 samples had a % Recovery greater than +/- 25%.  Of these 28 samples, seventeen (17) of twenty eight (28) were not at the upper or lower limit of the reportable range.<br><br>d.   The "Clinical Correlation and Bias Correction" table, Table 6, for TT3 revealed that thirty six (36) of  one hundred and seven (107) samples showed a % Recovery greater than +/- 20%.  Twenty four (24) of the 36 samples had a % Recovery greater than +/- 25%.  Of these 36 samples, 23 of 36 were not at the upper or lower limit of the reportable range.<br><br>e.   The "Dilution Linearity" table, Table 21, for SHBG revealed that the 1:2 dilution (nominal value = 53.4 nM) had a % Recovery of 131% and the 1:64 dilution (nominal value 2.4 nM) had a % Recovery of 150%.  The laboratory's reportable range for SHBG was 2.5-200 nM. | D6115 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  113 of 121

FOIA Confidential Treatment Requested by Theranos

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6115 | Continued From page 113 | D6115 | | |
| | f.    The "Summary of normal patient samples for Reference Range" table, Table 24, for SHBG revealed that ten (10) of fourteen (14) samples for females and nine (9) of ten (10) samples for males showed a % Recovery greater than +/- 20%.  Fourteen (14) of the twenty four (24) total samples had a % Recovery greater than +/- 25%. Of these 24 samples, 24 of 24 were not at the upper or lower limit of the reportable range. | | | |
| | Allowable Bias | | | |
| | a.    The Alternative Assessment Program procedure stated that allowable bias between a predicate method and the Theranos Proprietary System (TPS) was equal to or less than 20%. | | | |
| | b.    The terms Total Allowable Error and Allowable Bias seemed to be used interchangably. | | | |
| | c.    The formula used to determine allowable bias was: Laboratory value minus the Predicate value divided by Predicate value (Laboratory value - Predicate value/Predicate value). | | | |
| | d.    Nine random samples (01, 20, 30, 41, 91, 32, 74, H2, H58) were reviewed from the VitD clinical correlation studies (Table 7 and 8) from the validation report.  The allowable bias calculation for these nine samples ranged from 21-130%. The reference ranges for both the Predicate method and the TPS were the same for VitD. | | | |
| | e.    Nine random samples (2, 60, 62, 18, 57, 43, 68, 73, 92) were reviewed from the TT3 clinical correlation study (Table 6) from the validation report.  The allowable bias calculation for these | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  114 of 121

FOIA Confidential Treatment Requested by Theranos

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **05D2025714** | A. BUILDING _____ <br> B. WING _____ | | **11/20/2015** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **THERANOS INC** | **7333 GATEWAY BLVD** <br> **NEWARK, CA  94560** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6115 | Continued From page 114 <br><br> nine samples ranged from 21-39%. The reference ranges for both the Predicate method and the TPS were the same for TT3. <br><br> f.    Nine random samples (5, 8, 25, 36, 54, 74, 76, 131, 145) were reviewed from the SHBG clinical correlation study (Table 20) from the validation report.  The allowable bias calculation for these nine samples ranged from 22-146%. The reference ranges for both the Predicate method and the TPS were the same for SHBG. | D6115 | | |
| D6124 | 493.1451(b)(8)(iv) TECHNICAL SUPERVISOR RESPONSIBILITIES <br><br> The procedures for evaluation of the competency of the staff must include, but are not limited to direct observation of performance of instrument maintenance and function checks. <br> This STANDARD  is not met as evidenced by: <br> Based on review of the 2015 competency assessment form and interview, the technical supervisor failed to include direct observations of performance of instrument maintenance and function checks in competency assessment. Findings include: <br><br> a.    Competency Assessment form, CL FRM-0316-F59, stated the following: "Review documentation of assigned instrument maintenance and function checks as applicable." <br><br> b.    Testing personnel and the technical supervisor stated on 9/23/15 at approximately 1:30 pm that instrument maintenance and function check documention was reviewed as part of annual competency assessment and that direct obervation of these activities was not performed. | D6124 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0918001

**SER-229**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6168 | 493.1487 TESTING PERSONNEL<br><br>The laboratory has a sufficient number of individuals who meet the qualification requirements of §493.1489 of this subpart to perform the functions specified in §493.1495 of this subpart for the volume and complexity of testing performed.<br><br>This CONDITION  is not met as evidenced by: Based on the number and severity of the deficiencies cited herein, the Condition: Laboratories performing high complexity testing; testing personnel was not met.  The laboratory failed to have qualified testing personnel performing high complexity testing.  Refer to D6170 and D6171. | D6168 | | |
| D6170 | 493.1489(a) TESTING PERSONNEL QUALIFICATIONS<br><br>Each individual performing high complexity testing must possess a current license issued by the State in which the laboratory is located, if such licensing is required.<br>This STANDARD  is not met as evidenced by: Based on laboratory personnel interviews and WBC differential record review on November 17, 2015, each individual performing high complexity WBC differential testing failed to possess a current license issued by the State of California. Findings included:<br><br>a.   For patient capillary specimens, it was the practice of the laboratory to use flow cytometry instrumentation to perform and report patient WBC differentials.<br><br>b.   Between June 1, 2015 and September 21, 2015, California unlicensed testing personnel reviewed and released patient flow cytometry | D6170 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  116 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0918002

**SER-230**

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6170 | Continued From page 116 WBC differential scatter plots.  The scatter plots were released by California unlicensed testing personnel without any further review by a California licensed testing person.<br><br>c.   Between June 1, 2015 and September 21, 2015, the laboratory reported 2,112 patient WBC differential performed using the flow cytometry instrumentation. | D6170 | | |
| D6171 | 493.1489(b) TESTING PERSONNEL QUALIFICATIONS<br><br>(b) Meet one of the following requirements:<br>(b)(1) Be a doctor of medicine, doctor of osteopathy, or doctor of podiatric medicine licensed to practice medicine, osteopathy, or podiatry in the State in which the laboratory is located or have earned a doctoral, master's or bachelor's degree in a chemical, physical, biological or clinical laboratory science, or medical technology from an accredited institution;<br>(b)(2)(i) Have earned an associate degree in a laboratory science, or medical laboratory technology from an accredited institution or--<br>(b)(2)(ii) Have education and training equivalent to that specified in paragraph (b)(2)(i) of this section that includes--<br>(b)(2)(ii)(A) At least 60 semester hours, or equivalent, from an accredited institution that, at a minimum, include either--<br>     (b)(2)(ii)(A)(1) 24 semester hours of medical laboratory technology courses; or<br>     (b)(2)(ii)(A)(2) 24 semester hours of science courses that include--<br>          (b)(2)(ii)(A)(2)(i) Six semester hours of chemistry;<br>          (b)(2)(ii)(A)(2)(ii) Six semester hours of biology; and | D6171 | | |

FOIA Confidential Treatment Requested by Theranos

TS-0918003

**SER-231**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6171 | Continued From page 117<br>          (b)(2)(ii)(A)(2)(iii) Twelve semester hours of chemistry, biology, or medical laboratory technology in any combination; and<br>          (b)(2)(ii)(B) Have laboratory training that includes either of the following:<br>(b)(2)(ii)(B)(1) Completion of a clinical laboratory training program approved or accredited by the ABHES, the CAHEA, or other organization approved by HHS. (This training may be included in the 60 semester hours listed in paragraph (b)(2)(ii)(A) of this section.)<br>(b)(2)(ii)(B)(2) At least 3 months documented laboratory training in each specialty in which the individual performs high complexity testing.<br>(b)(3) Have previously qualified or could have qualified as a technologist under §493.1491 on or before February 28, 1992;<br>(b)(4) On or before April 24, 1995 be a high school graduate or equivalent and have either--<br>(b)(4)(i) Graduated from a medical laboratory or clinical laboratory training program approved or accredited by ABHES, CAHEA, or other organization approved by HHS; or<br>(b)(4)(ii) Successfully completed an official U.S. military medical laboratory procedures training course of at least 50 weeks duration and have held the military enlisted occupational specialty of Medical Laboratory Specialist (Laboratory Technician);<br>(b)(5)(i) Until September 1, 1997--<br>          (b)(5)(i)(A) Have earned a high school diploma or equivalent; and<br>(b)(5)(i)(B) Have documentation of training appropriate for the testing performed before analyzing patient specimens. Such training must ensure that the individual has--<br>(b)(5)(i)(B)(1) The skills required for proper specimen collection, including patient preparation, | D6171 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  118 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0918004

SER-232

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 05D2025714 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE 7333 GATEWAY BLVD NEWARK, CA 94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6171 | Continued From page 118<br><br>if applicable, labeling, handling, preservation or fixation, processing or preparation, transportation and storage of specimens;<br>(b)(5)(i)(B)(2) The skills required for implementing all standard laboratory procedures;<br>(b)(5)(i)(B)(3) The skills required for performing each test method and for proper instrument use;<br>(b)(5)(i)(B)(4) The skills required for performing preventive maintenance, troubleshooting, and calibration procedures related to each test performed;<br>(b)(5)(i)(B)(5) A working knowledge of reagent stability and storage;<br>(b)(5)(i)(B)(6) The skills required to implement the quality control policies and procedures of the laboratory;<br>(b)(5)(i)(B)(7) An awareness of the factors that influence test results; and<br>(b)(5)(i)(B)(8) The skills required to assess and verify the validity of patient test results through the evaluation of quality control values before reporting patient test results; and<br>(b)(5)(i)(B)(8)(ii) As of September 1, 1997, be qualified under §493.1489(b)(1), (b)(2), or (b)(4), except for those individuals qualified under paragraph (b)(5)(i) of this section who were performing high complexity testing on or before April 24, 1995;<br>(b)(6) For blood gas analysis--<br>   (b)(6)(i) Be qualified under §493.1489(b)(1), (b)(2), (b)(3), (b)(4), or (b)(5);<br>(b)(6)(ii) Have earned a bachelor's degree in respiratory therapy or cardiovascular technology from an accredited institution; or<br>(b)(6)(iii) Have earned an associate degree related to pulmonary function from an accredited institution; or<br>(b)(7) For histopathology, meet the qualifications | D6171 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page 119 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0918005

**SER-233**

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>11/20/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>THERANOS INC | STREET ADDRESS, CITY, STATE, ZIP CODE<br>7333 GATEWAY BLVD<br>NEWARK, CA  94560 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6171 | Continued From page 119<br>of §493.1449 (b) or (l) to perform tissue examinations.<br><br>This STANDARD  is not met as evidenced by:<br> Based on review of personnel documentation and interview, one of thirty five testing personnel (TP14)failed to meet the high complexity personnel educational qualifications.  Findings include:<br><br>a.   Review of TP14's personnel records revealed a bachelors degree in Liberal Studies.<br><br>b.   The general supervisor and technical consultant stated that all personnel documents were kept in the personnel records.<br><br>c.   No further records were identified which showed a bachelor's degree in a chemical, physical, biological, clinical laboratory science or medical technology. | D6171 | | |
| D6178 | 493.1495(b)(4) TESTING PERSONNEL RESPONSIBILITIES<br><br>Each individual performing high complexity testing must follow the laboratory's established policies and procedures whenever test systems are not within the laboratory's established acceptable levels of performance.<br>This STANDARD  is not met as evidenced by:<br> Based on laboratory personnel interviews and complete blood counts (CBC) quality control corrective action record review on September 23, 2015, the testing personnel, high complexity testing, failed to follow the laboratory's established policies and procedures whenever CBC test systems were not with the laboratory's established acceptable levels of performance. | D6178 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  120 of 121

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 01/25/2016
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>05D2025714 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>**11/20/2015** |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>**THERANOS INC** | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**7333 GATEWAY BLVD**<br>**NEWARK, CA  94560** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| D6178 | Continued From page 120<br>Findings included:<br><br>a.  It was the practice of the laboratory to use the stated values of commercially assayed quality control materials to monitor patient CBC testing using the Drew 3 instrument.  In the event any CBC quality control material test results did not fall within the stated assay values, laboratory personnel were to follow the procedure detailed in the protocol titled "Quality Control (document number CL QOP-00013, revision F)."<br><br>b.  Laboratory records for the Drew 3 instrument the laboratory designated as "Drew #2" indicated that on July 11, 12, 14, and 16, 2015 CBC quality control material test results failed to meet stated assay values.  The laboratory's documentation of these quality control failures indicated that the laboratory's "Quality Control" protocol was not followed.<br><br>c.  Laboratory records indicated that the Drew 3 instrument the laboratory designated as "Drew #2" was used to test and report 36 patient CBC specimens on July 11, 2015, 12 patient CBC specimens on July 12, 2015, 36 patient CBC specimens on July 14, 2015, and 45 patient CBC specimens on July 16, 2015. | D6178 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: W34211          Facility ID: CA22046272          If continuation sheet Page  121 of 121

FOIA Confidential Treatment Requested by Theranos

TS-0918007

**SER-235**

1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6                              SAN JOSE DIVISION

7

8    UNITED STATES OF AMERICA,          Case No.   5:18-cr-00258-EJD-1

9              Plaintiff,               **ORDER DENYING MOTION TO**
                                        **SUPPRESS**
10        v.

11   ELIZABETH A. HOLMES,               Re: Dkt. No. 810

12             Defendant.

13        Defendant Elizabeth Holmes moves to suppress evidence of customer complaints and

14   testing results, as well as findings in a January 25, 2016 report from the Centers for Medicare &

15   Medicaid Studies ("the CMS Report").  Ms. Holmes' Mot. to Suppress Evid. of Customer Compls.

16   and Testing Results as Well as Findings in CMS Report ("Mot."), Dkt. No. 810.  Holmes requests

17   (1) an evidentiary hearing, (2) suppression of evidence (including customer complaints, testing

18   results, and the CMS Report findings), and (3) an order compelling additional production from the

19   Government.  *Id.* at 1–2, 5–7, 8.  The Court heard oral argument on the motion on July 7, 2021.

20   July 7, 2021 Tr. of Proceedings ("July 7 Tr."), Dkt. No. 866.  Having considered the parties'

21   moving papers, the record in this case, and the relevant legal authority, the Court DENIES the

22   motion to suppress.

23   **I.    BACKGROUND[1]**

24        In 2003, Holmes founded Theranos, Inc. ("Theranos") a health care and life sciences

25

26   --------

27   [1] Additional factual background is set forth in the Court's prior orders.  *See, e.g.*, *United States v. Holmes*, No. 5:18-cr-00258-EJD, 2021 WL 2044470, at *1 (N.D. Cal. May 22, 2021).

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER DENYING MOT. TO SUPPRESS
                                              1

United States District Court
Northern District of California

1   company offering blood testing technology, and she served as the company's Chief Executive

2   Officer from its inception until mid-June 2018.  Third Super. Indict., Dkt. No. 469 ¶ 1; United

3   States' Opp'n to Mot. to Suppress ("Opp'n"), Dkt. No. 846, at 7.  Theranos used a bespoke

4   database called the Laboratory Information System ("LIS") that housed, among other things, all

5   patient test results and all quality control data at Theranos.  Dkt. No. 798 at 56.

6        In the fall of 2015, federal government agencies began investigating Theranos.  Opp'n at 5.

7   Over the next few years, the Securities and Exchange Commission ("SEC") and the Department of

8   Justice ("DOJ") expressed interest in Theranos's databases, issuing multiple subpoenas and

9   document requests.  Decl. of John Bostic in Supp. of United States' Opp'n to Def.'s Mot. to

10  Suppress ("Bostic Decl."), Ex. C, Dkt. No. 846-4 (Oct. 19, 2015 document preservation letter

11  from SEC to Theranos instructing the company to preserve certain categories of evidence,

12  including documents and data relating to Theranos's lab testing results and the accuracy of

13  Theranos technology, electronically stored in databases or otherwise); Decl. of Amy Mason

14  Saharia in Supp. of Holmes's Reply in Supp. of Mot. to Exclude Anecdotal Test Results ("Saharia

15  Decl."), Ex. 87, Dkt. No. 732-1 (producing data from LIS and Labdaq databases in response to

16  Nov. 23, 2015 and Sept. 6, 2016 SEC subpoenas and DOJ requests made at a Nov. 16, 2016

17  meeting); Bostic Decl., Ex. F, Dkt. No. 846-7 at GJS-000016 (Feb. 13, 2018 grand jury subpoena

18  seeking "[t]he entirety of all blood test lab reports . . . Theranos provided to its patients" from July

19  1, 2014 through Sept. 1, 2014).  In April and June 2018, the DOJ served grand jury subpoenas on

20  Theranos for information specifically from the LIS database and requested a copy of the database

21  itself, along with the necessary software to access and search it.  Bostic Decl., Ex. G, Dkt. No.

22  846-8 (Apr. 20, 2018 grand jury subpoena expanding records request to include "[t]he entirety of

23  all blood test lab reports maintained in the L.I.S. database"); Decl. of AUSA Robert S. Leach in

24  Supp. of United States' Opp'ns to Def.'s Mots. in Lim. ("Leach Decl."), Ex. 63, Dkt. No. 681-27

25  (June 4, 2018 grand jury subpoena requesting "the entirety of all blood test lab reports maintained

26  in the L.I.S. database that Theranos provided to its patients" and "[a] softcopy or proxy of the

27  L.I.S. database, along with any other proprietary software required to access and search the

28  Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MOT. TO SUPPRESS
                                            2

1  database").

2      During this period, outside counsel from Wilmer Cutler Pickering Hale and Dorr, LLP

3  ("WilmerHale") represented Theranos in responding to government subpoenas and

4  communicating with government attorneys.  Decl. of Lance Wade in Supp. of Ms. Holmes' Mot.

5  to Suppress ("Wade Decl."), Ex. 10, Dkt. No. 855-1 at 3–4, 5.  According to David Taylor,

6  Theranos's General Counsel who replaced Holmes as CEO following her indictment, ███████

7  ████████████████████████████████████████████████████████████████████

8  ██████████████.  *Id.* at 3–4, 5, 6.  On June 5, 2018—one day after the grand jury subpoena

9  seeking a copy of the LIS database issued—counsel from WilmerHale emailed Taylor "to touch

10 base on LIS" and suggested that "we should just give DOJ the database and let them figure it out. .

11 . . [T]hey won't know what to do with it and . . . the people who do are in India.  Our experts are

12 the only ones who understand it, and we don't want to make them percipient witnesses.  Is there

13 anyone left at the Company who could assist us in actually getting the database to the

14 government?"  Saharia Decl., Ex. 90, Dkt. No. 732-4 at WH000002107; *see also* Wade Decl., Ex.

15 10, Dkt. No. 855-1 at 3, 5–6.  Subsequent emails between WilmerHale attorneys and Theranos in-

16 house counsel discussed what was necessary to produce a copy of the LIS database to the

17 Government.  Saharia Decl., Ex. 112, Dkt. No. 736-7 (June 13, 2018 email from Xan White to two

18 WilmerHale attorneys, discussing obligations regarding document preservation and the "ongoing

19 litigation hold," in addition to the need to "potentially transfer the preserved material to counsel

20 for the individual defendants whose actions may be unresolved at the moment the company ceases

21 to exist"); Leach Decl., Ex. 64, Dkt. No. 681-28 (June 27, 2018 email from a WilmerHale attorney

22 to an unknown recipient stating that "we think it is a better strategy to just dump the entire

23 bespoke database on the Government").  Internal emails between Theranos employees revealed

24 that the LIS database copy would be encrypted and require not only a password but also a private

25 key to access the information in the database.  Leach Decl., Ex. 70, Dkt. No. 681-34, at

26 TheranosABC00042262; *see also* Saharia Decl., Ex. 101, Dkt. No. 735-2 at 2; Leach Decl., Ex.

27 72, Dkt. No. 681-36 at 3 (Sept. 28, 2020 expert witness report of Bruce W. Pixley stating that "[i]n

28

Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MOT. TO SUPPRESS

United States District Court
Northern District of California

1   order to decrypt the [LIS database copy], a person would need to know the password and have a

2   copy of the 'key' file" and that he has "not been able to access the contents of the encrypted . . .

3   database backups" without the key).

4         On June 14, 2018, the federal grand jury returned the first indictment against Holmes.  Dkt.

5   No. 1.  Holmes resigned from her position as Theranos CEO but remained the Chair of the Board

6   of Directors.  Opp'n at 7.

7         On July 25, 2018, the Government requested WilmerHale attorneys produce the LIS

8   database and any software necessary to access or query it by August 10, 2018.  Saharia Decl., Ex.

9   88 ("*Brady* Ltr."), Dkt. No. 732-2 at 14–16; Bostic Decl., Ex. H, Dkt. No. 846-9 at USAO-

10   008587–88.  WilmerHale responded on July 30, 2018, describing the proprietary third-party

11   software necessary to utilize the LIS database.  *Brady* Ltr. at 16–17; Leach Decl., Ex. 65, Dkt. No.

12   681-29 at 3.  WilmerHale's response did not mention the fact that the database copy would be

13   encrypted and require an additional key to access.  That same day, a Theranos employee working

14   on procuring the database copy emailed Theranos in-house counsel, stating: "[T]he other thing to

15   understand is that it's not just a database.  It's a whole system with layers of applications and data.

16   I'm not sure what functionality it is expected to have but if we are just handing over a database

17   I'm not sure it will meet the needs[.]"  Leach Decl., Ex. 66, Dkt. No. 681-30 at

18   TheranosABC00042201.  Theranos in-house counsel replied, "[I]t's ultimately not Theranos'[s]

19   problem if our system of storing and accessing data is inconvenient for outsiders."  *Id.* at

20   TheranosABC00042200.  In-house counsel informed WilmerHale that "[t]here might be one

21   password" to the LIS database copy that only one person at Theranos knew, and that "IT is still

22   working on that."  Leach Decl., Ex. 70, Dkt. No. 681-34, at TheranosABC00042260; *see also*

23   Leach Decl., Exs. 68, 69, 73, Dkt. Nos. 681-32, 681-33, 681-37 (emails between Theranos's IT

24   consultant and Theranos employees/agents regarding the password for the private key).  Theranos

25   employees/agents were ultimately unable to obtain the private key.  Wade Decl., Ex. 13, Dkt. No.

26   855-3 at US-REPORTS-0019713 (███████████████████████████████████████████

27   ███████████████████████████████████████████████████████████

28   Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MOT. TO SUPPRESS

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████).

3       On August 27, 2018, WilmerHale produced a copy of the LIS database to the Government.

4 Leach Decl., Ex. 71, Dkt. No. 681-35; *see also Brady* Ltr. at 18–19; July 7 Tr. at 12:7-11, 19:1-2,

5 45:15-17.  WilmerHale's email to the Government attaching the transmittal letter included the

6 password, but failed to mention that a private key would also be necessary to access the LIS

7 database.  Leach Decl., Ex. 71, Dkt. No. 681-35.  In subsequent communications with the

8 Government, WilmerHale confirmed that it was unaware of any additional information or software

9 that would facilitate government access to the LIS database information.  Saharia Decl., Ex. 101,

10 Dkt. No. 735-2 at 2; *Brady* Ltr. at 23.

11       Immediately after production of the LIS database copy, Theranos began moving to

12 decommission the original LIS database at its Newark facility.  Leach Decl., Ex. 73, Dkt. No. 681-

13 37 (Aug. 28, 2018 emails between WilmerHale, Theranos's IT consultant, Theranos employees,

14 and Shekar Chandrasekaran from IncRev Corporation regarding phone conference "to hash out

15 what we still need from LIS and what we need to do to get it, given that the system will be put into

16 storage this Friday [(Aug. 31, 2018)] and may thereafter be very difficult to resuscitate?").

17 Theranos began to dismantle the physical server hardware housing the LIS database on August 29,

18 2018, with the "all clear to shutdown" arriving on August 30, 2018.  Leach Decl., Ex. 74, Dkt. No.

19 681-38 (Aug. 29–30, 2018 email exchange between Theranos employees, Theranos IT consultant,

20 and Chandrasekaran).  On August 31, 2018, Theranos vacated the Newark facility.  Leach Decl.,

21 Exs. 73-75, Dkt. No. 681-37, 681-38, 681-39.  At that time, Theranos employees/agents knew that

22 once the system was put into storage, it might be "very difficult to resuscitate."  Leach Decl., Ex.

23 73, Dkt. No. 681-37 at 2; *see also* Saharia Decl., Ex. 106, Dkt. No 736-1, at USAO-008626 (email

24 stating that Taylor had reported "on several occasions that the LIS was decommissioned and that

25 prior to ABC, Theranos, Inc. had been told it could no longer be reconstructed with the existing

26 resources."); Wade Decl., Ex. 11, Dkt. No. 855-2 at US-REPORTS-0024257–59 (████████████

27 █████████████████████████████████████████████████████████████████████

28 Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MOT. TO SUPPRESS

United States District Court
Northern District of California

1 ████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████).

3 Eric Caddenhead, a former Theranos IT employee who previously worked as the infrastructure

4 architect for the LIS server informed Theranos's IT consultant in August 2018 that "if they took

5 the LIS apart they would not be able to access it again because then the encryption key would be

6 lost.  The encryption key was located on a disk array which had a lot of pieces and when they took

7 the disk array apart it would have destroyed the encryption key."  Saharia Decl., Ex. 111, Dkt. No.

8 736-6 at US-REPORTS-0016253.  The disk array was dismantled when the LIS server equipment

9 was removed.  *Id.*

10          On or around September 12, 2018, WilmerHale informed the Government that Theranos

11 "was probably dissolving that day."  *Brady* Ltr. at 19.

12          In September and October 2018, the Government tried repeatedly and unsuccessfully to

13 access the information from the copy of the LIS database.  *Brady* Ltr. at 19–22.  DOJ attorneys

14 were aware of difficulties accessing the copy at least as early as October 2018.  *Id.* at 22, 23.  In

15 March 2019, the Government reached out to the assignee of Theranos's assets, Sherwood Partners

16 ("Sherwood"), and its counsel, Dorsey & Whitney LLP ("Dorsey"), with follow-up inquiries about

17 how the LIS database came to be encrypted and decommissioned.  *Brady* Ltr. at 23.  On March 21,

18 2019, Dorsey informed the Government that Sherwood's understanding was that the encrypted

19 LIS database had since "been decommissioned, and before the company formally closed we were

20 advised that it be a herculean undertaking to get it up and running again."  Saharia Decl., Ex. 106,

21 Dkt. No. 736-1 at USAO-008626.  A follow-up email from Dorsey stated that Taylor had

22 informed Sherwood "on several occasions 'that the LIS was decommissioned and that prior to

23 ABC, Theranos, Inc. had been told that it could no longer be reconstructed with the existing

24 resources.'"  *Brady* Ltr. at 23.  The Government communicated with Dorsey again in October and

25 November of 2020, with Dorsey ultimately informing the Government that the LIS database was

26 encrypted, that Sherwood lacked the means to decrypt it, and that it had been unable to locate an

27 alternative version of the LIS database.  *Id.* at 22.

28 Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MOT. TO SUPPRESS

6

United States District Court
Northern District of California

1    The parties agree that, for all intents and purposes, the LIS database copy produced to the

2    Government cannot be accessed without the private key, and the information on the LIS database

3    is lost—perhaps irretrievably.  July 7 Tr. at 65:7-14.

4    **II.    LEGAL STANDARD**

5    Motions to suppress evidence must be made prior to trial "if the basis for the motion is

6    then reasonably available."  Fed. R. Crim. P. 12(b)(3)(C).

7    Holmes's motion is based on the Government's duty to preserve potentially exculpatory

8    evidence.  *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011).  The Government's loss or

9    destruction of such evidence may "rise[] to the level of a due process violation if a defendant can

10   show that the Government acted in bad faith," which "requires more than mere negligence or

11   recklessness."  *Id*. (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

12   If, however, the Government's conduct does not rise to the level of a constitutional

13   violation, "the court may still impose sanctions including suppression of secondary evidence."  *Id*.

14   (citing *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979) (en banc) (Kennedy, J.,

15   concurring)).  In so doing, the court must balance "the quality of the Government's conduct and

16   the degree of prejudice to the accused."  *Id*. (internal quotation marks omitted).  The Government

17   bears the burden of justifying its actions, and the defendant bears the burden of demonstrating

18   prejudice.  *Id*. (quoting *Loud Hawk*, 628 F.2d at 1152).  In evaluating the Government's conduct,

19   the court should inquire whether the evidence was lost or destroyed
20   while in [Government] custody, whether the Government acted in
     disregard for the interests of the accused, whether it was negligent in
21   failing to adhere to established and reasonable standards of care for
     police and prosecutorial functions, and, if the acts were deliberate,
22   whether they were taken in good faith or with reasonable
     justification.

23   *Loud Hawk*, 628 F.2d at 1152.  Also relevant to the analysis is "the nature and degree of federal

24   participation" and "whether the government attorneys prosecuting the case have participated in the

25   events leading to loss or destruction of the evidence."  *Id*.  In evaluating prejudice against the

26   defendant, the court must consider, among other things,

27

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER DENYING MOT. TO SUPPRESS
                                                7

the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence.

*Id.*

### III.   DISCUSSION

The Court considers each of Holmes's requests for relief in turn.

#### A.   Suppression of Evidence

First, Holmes seeks to suppress evidence of customer complaints, testing results, and the CMS Report based on the balancing test described in *Flyer* and *Loud Hawk*.[2]  Mot. at 5–6.  She contends that allowing the Government to use that evidence as "evidence of fraud" after it failed to gather and preserve the LIS database would violate her rights to present a complete defense and to receive due process, because the entirety of the LIS database was necessary to refute that evidence.  Mot. at 1; July 7 Tr. at 36:2–38:9.

##### 1.   Exculpatory value

The threshold question for the Court is whether the LIS database is potentially exculpatory. Holmes does not contend that the LIS database is materially exculpatory, but rather argues that it is potentially useful evidence.  Reply at 1.  "Potentially useful evidence, as defined in *Youngblood*, is 'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'"  *United States v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015).

The Government has, throughout this case, maintained its belief that the LIS was either

_____

[2] Holmes's opening brief relies solely on the *Loud Hawk* balancing test, and at no point does she expressly assert that the government acted in bad faith in delaying examining the LIS database copy.  *See* Mot. at 5–7.  On reply, Holmes argues that bad faith is not necessary for suppression under *Flyer* and suggests her right to due process has been violated under *Youngblood*.  Ms. Holmes' Reply in Supp. of Mot. to Suppress ("Reply") at 7–8.

Case No.: 5:18-cr-00258-EJD
ORDER DENYING MOT. TO SUPPRESS

8

United States District Court
Northern District of California

United States District Court
Northern District of California

1  highly inculpatory and could bolster its case against Holmes (as it would "corroborat[e] the

2  information that the Government intends to present from witnesses"), or that it was useless to both

3  sides because there is no indication it contained data reflecting the accuracy of Theranos test

4  results.  Opp'n at 2–3; July 7 Tr. at 61:6-19; May 4, 2021 Tr. of Proceedings, Dkt. No. 792 at

5  79:13-25, 80:14-21.  At the hearing on this motion, defense counsel stated that "Ms. Holmes has

6  always believed the database would be exculpatory in this case."  July 7 Tr. at 25:5-6.  However,

7  there is no indication in the record that Holmes ever informed the Government of the database's

8  purported exculpatory value either prior to filing the present motion or prior to the

9  decommissioning of the original LIS database.  *United States v. Robertson*, 895 F.3d 1206, 1212–

10  13 (9th Cir. 2018) (distinguishing *Zaragoza-Moreira* in finding that the potential usefulness of the

11  lost/unobtained evidence was "completely speculative," and neither Robertson nor the union

12  "made any affirmative assertion that would have put [law enforcement] on notice of the relevance

13  of the [evidence] to [establishing a] defense").  Nor is there any indication that Holmes attempted

14  to rush the Government along in its efforts to access the database copy, despite now criticizing the

15  Government for its "delay."  July 7 Tr. at 48:8-21, 65:7-14.

16      Holmes argues that the LIS database could have been used to assess the accuracy of

17  Theranos test results, which she asserts is central to the Government's wire fraud case against her.[3]

18  *Id.* at 30:16-22.  The Government contends that additional information outside the LIS database

19  would be necessary to draw any firm conclusions about the accuracy of the test results and that, at

20

21  [3] The government disputes Holmes's contention that the LIS database information is central to its
    case against her.  July 7 Tr. at 59:15–60:4 ("Certainly the government did not view this as the

22  most critical evidence in the case at the time of indictment.  If that had been the case, of course the
    government would have collected and examined that evidence prior to charging the case.").  As

23  the Court previously observed, the government has repeatedly asserted that large-scale statistical
    analysis of Theranos's test results is not necessary to prove the elements of wire fraud here.  Dkt.

24  No. 798 at 57; May 5, 2021 Hr'g Tr., Dkt. No. 793, at 82:15-16 (government counsel stating that
    "the LIS was not critical to the charging in this case nor is it critical to the proof at trial"); *id.* at

25  79:10–80:9 (government explaining that while the LIS database would have been a "powerful
    tool" to identify patient victims and identify which assays Theranos was running and when, "the

26  Government has been able to capture that information in various other ways"); *id.* at 80:14–81:2
    (stating that "this case is not about overall failure rate" nor about "determining what percentage of

27  Theranos'[s] tests were inaccurate").

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER DENYING MOT. TO SUPPRESS
                                9

United States District Court
Northern District of California

1    any rate, other evidence indicates that Theranos's test results were questionable.[4]  Opp'n at 3–4;

2    July 7 Tr. at 72:1-10.  Holmes does not dispute the need for non-LIS information to draw such

3    conclusions, focusing instead on what proportion of tests were accurate and suggesting that the

4    LIS might contain information that would suggest reasons why a particular result was inaccurate.

5    July 7 Tr. at 72:1-17.  At the hearing, she acknowledged that "[p]erhaps it's true" that no

6    conclusions can be drawn about the accuracy of any particular individual test result but argued

7    instead that statistical analyses could be performed that would show that a far vaster number of

8    results were accurate.  *Id.* at 34:4-17.  For example, Holmes suggested that one could "identify the

9    spread of test results that occurred over various references ranges and determine how many of

10   them fell within the expected range" and whether there were "an extreme number of outliers," *id.*,

11   but it is not clear how one would know what an "expected range" would be or what would

12   constitute "an outlier" without additional contemporaneous information about the patient and their

13   condition to serve as touchpoints or control data—information that the parties do not dispute

14   would not be in the LIS database.

15        The LIS database information alone would not provide a conclusive determination of

16   whether the Theranos blood tests were accurate, and it could just as likely contain incriminating

17   evidence to the contrary.  Any exculpatory value is therefore speculative in nature.  *Robertson*,

18   895 F.3d at 1211–12 (affirming finding of no bad faith where although law enforcement officer

19   was aware of contested video's existence, the record did not show he had knowledge of its

20   exculpatory value or that he knew of the 30-day deletion process, and the exculpatory value was

21

22   [4] This other evidence is, of course, the very evidence Holmes now seeks to suppress.  *Compare*
     Mot. at 5 n.5 (seeking to suppress "testimony and exhibits offered by customers relating to their
23   specific testing results; testimony and exhibits offered by doctors relating to customers' specific
     testing results; any aspect of Dr. Master's opinions that relates to specific testing results or quality
24   control results; the CMS report's discussion of quality control results and other data that was
     maintained in the LIS; customer feedback spreadsheets; any other customer complaints or testing
25   results offered by fact witnesses (by testimony or exhibit) other than doctors and customers; and
     *any other testimony or exhibits relating to quality control data or any other data residing in the*
26   *LIS offered by fact witnesses*") (emphasis added) *and* July 7 Tr. at 36:2–38:9 (discussing evidence
     and testimony based on LIS data) *with* Opp'n at 3–4 (describing evidence concerning quality
27   control issues).

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER DENYING MOT. TO SUPPRESS
                                                                          10

1   speculative because it only provided a partial view and could not have provided conclusive

2   identification of the perpetrator); *see also United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir.

3   2013) (government did not act in bad faith in failing to preserve evidence when the exculpatory

4   value of the evidence "was not obvious"); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 812

5   (9th Cir. 2003) (detective's failure to gather potentially exculpatory evidence was not in bad faith

6   because the value of the untested evidence was "speculative" in that it could have exonerated

7   defendant but also could have incriminated him); *United States v. Drake*, 543 F.3d 1080, 1090

8   (9th Cir. 2008) ("The exculpatory value of an item of evidence is not 'apparent' when the

9   evidence merely '*could have*' exculpated the defendant.") (citing *Youngblood*, 488 U.S. at 56,

10  emphasis original).

11              **2.      The Government's conduct**

12          "The presence or absence of bad faith turns on the government's knowledge of the

13  apparent exculpatory value of the evidence at the time it was lost or destroyed, because without

14  knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed

15  in bad faith." *Zaragoza-Moreira*, 780 F.3d at 977.  The exculpatory value of the LIS database was

16  not apparent to the Government on August 31, 2018 for multiple reasons.

17          First, as explained above, the potential usefulness of the LIS data is speculative, and the

18  Ninth Circuit has not found bad faith in situations involving speculative exculpatory value.

19  *Robertson*, 895 F.3d at 1211–12; *Sivilla*, 714 F.3d at 1172; *Cunningham*, 345 F.3d at 812.

20          Second, the Ninth Circuit cases both parties cite appear to suggest that the Government

21  must be the party ultimately responsible (whether through affirmative action or inaction) for the

22  destruction or loss of the potentially exculpatory evidence.  *See, e.g.*, *Flyer*, 663 F.3d at 916 ("The

23  government's failure to preserve potentially exculpatory evidence rises to the level of a due

24  process violation if a defendant can show that *the government acted* in bad faith. . . . *If the*

25  *government destroys* evidence under circumstances that do not violate a defendant's constitutional

26  rights, the court may still impose sanctions including suppression of secondary evidence.")

27  (internal citations omitted; emphases added); *Zaragoza-Moreira*, 780 F.3d at 979 ("[W]hen

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER DENYING MOT. TO SUPPRESS
                                            11

*United States District Court*
*Northern District of California*

1    potentially useful evidence has been destroyed *by the government*, the bad faith inquiry initially

2    turns on the government's knowledge of the apparent exculpatory value of the evidence at the time

3    it was lost or destroyed.") (internal quotation marks omitted; emphasis added).  Here, the

4    Government did not lose or destroy evidence in its possession.  The Government sought the LIS

5    database from third parties Theranos and WilmerHale.  Through WilmerHale, Theranos produced

6    an encrypted copy of the LIS database in response to government subpoenas, but it did not inform

7    the Government that the additional key was necessary to access the database, nor did it provide the

8    key.  It is undisputed that the copy of the LIS database Theranos provided was not accessible; and

9    the only entity in possession of the sole working version of the LIS database was Theranos—up

10    until it dismantled the database hardware, destroying the key and rendering the original database

11    unusable as well.  The Government thus never had true possession of the LIS database in the first

12    instance, and there is no dispute that the Government played no role in the decommissioning and

13    dismantling of the original LIS database.  July 7 Tr. at 18:2-5 ("THE COURT: . . . [C]an we agree

14    that the Government did not decommission the database?  MS. SAHARIA: Of course, Your

15    Honor.  The Government was not there at the time d[is]connecting the wires.").  Holmes has not

16    cited to any cases suggesting that the Government can be held responsible for not acting before a

17    third party destroys the potentially exculpatory evidence, when the Government has no knowledge

18    of the destruction and has no control or influence over the third party.

19         Third, the essence of Holmes's argument is that the Government should have looked at the

20    LIS database copy immediately upon receipt, and that if it had, it would have realized that there

21    was a problem.  The Government could then have raised the issue with Theranos or WilmerHale,

22    and then either of those two parties would have informed the Government that an additional key

23    was necessary and provided it.  July 7 Tr. at 20:12-24, 23:14–24:1. The Court does not find it

24    reasonable to expect all of these measures to be accomplished within the four days before

25    Theranos decommissioned the LIS database. There are no facts suggesting that the Government

26    was aware that Theranos planned to decommission the LIS database and dismantle its hardware on

27    August 30, 2018.  *See Brady* Ltr. at 19 (Sept. 12, 2018 email from WilmerHale informing the

28    Case No.: 5:18-cr-00258-EJD-1
ORDER DENYING MOT. TO SUPPRESS

United States District Court
Northern District of California

1    Government that Theranos "was probably dissolving that day").  There is no evidence the

2    Government knew at the time of decommission that (1) a separate encryption key was necessary to

3    access its LIS database copy, (2) dismantling the LIS database hardware would result in the

4    permanent loss of the key, or (3) reconstituting the LIS database would be a very difficult

5    undertaking—if not impossible.  July 7 Tr. at 19:21-25 ("THE COURT: Did WilmerHale ever

6    provide information to the Government that they would need the key, the missing key?  Was that

7    ever given to the Government?  MS. SAHARIA: I have not seen that evidence in the record . . .

8    .").  Holmes does not cite any case law to support the proposition that failure to look at a

9    production within four days of receipt is per se unreasonable.  The Ninth Circuit has rejected the

10   argument that a failure to immediately obtain potentially exculpatory video evidence as soon as

11   the law enforcement agent was put on notice of its existence is sufficient to compel a finding of

12   bad faith.  *Robertson*, 895 F.3d at 1212 ("At most, [the agent] was slow to obtain evidence of

13   speculative value of which he had been indirectly put on notice.  This is insufficient to establish

14   that [the agent] made 'a conscious effort to suppress exculpatory evidence' such that bad faith can

15   be inferred from his conduct alone.").  A brief delay of four days hardly approaches even

16   negligence, much less bad faith or a due process violation.

17          Holmes contends that there were other steps the Government could and should have taken,

18   even after Theranos decommissioned the LIS database.  She argues that the Government could

19   have reconstructed the LIS database.  *See, e.g.*, July 7 Tr. at 16:9-24 (citing Wade Decl., Ex. 10,

20   11, 13); Reply at 7 (same).  But the evidence she cites either contradicts her proposition or is of

21   low persuasive value.  Wade Decl., Ex. 11, Dkt. No. 855-2 at US-REPORTS-0024256–58

22   (███████████████████████████████████████████████████████

23   ███████████████████████████████████████████████

24   ███████████████████████████████████████████████████████

25   ████████████████████████████); Wade Decl., Ex. 13, Dkt. No. 855-3 at US-

26   REPORTS-0019713 (███████████████████████████████████████

27   ███████████████████████████████████████████); Wade Decl.,

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER DENYING MOT. TO SUPPRESS
                                        13

United States District Court
Northern District of California

1   Ex. 10, Dkt. No. 855-1 at US-REPORTS-0025515 (████████████████████

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████); *see also* Saharia Decl., Ex. 106, Dkt. No 736-1, at USAO-008626 (Taylor

5   stating that the LIS database "could no longer be reconstructed with the existing resources").

6   Even if the Government had been able to resurrect the physical database hardware, it still would

7   have lacked the encryption key, which the uncontroverted evidence suggests has been lost for all

8   time.  Wade Decl., Ex. 11, Dkt. No. 855-2 at US-REPORTS-0024256–58; Wade Decl., Ex. 13,

9   Dkt. No. 855-3 at US-REPORTS-0019713; Saharia Decl., Ex. 111, Dkt. No. 736-6 at US-

10  REPORTS-0016253 (describing destruction of disk array causing the loss of the encryption key).

11  For this reason, the Government's conduct after August 31, 2018 is irrelevant.

12          Finally, to the extent Holmes contends that the Government failed to preserve evidence,

13  that argument is also unpersuasive.  The Government's duty to preserve already-collected

14  evidence is well-established.  *California v. Trombetta*, 467 U.S. 579, 481 (1984) ("[T]he question

15  presented is whether the Due Process Clause requires law enforcement agencies to preserve breath

16  samples of suspected drunken drivers"); *Youngblood*, 488 U.S. at 52 (due process challenge of

17  police's failure to preserve biological samples); *Zaragoza-Moreira*, 780 F.3d at 974 (due process

18  challenge of police's failure to preserve video footage).  But "failure to preserve potentially useful

19  evidence does not constitute a denial of due process of law" absent bad faith.  *Youngblood*, 488

20  U.S. at 58; *see also Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989) ("[I]n the absence of

21  bad faith, . . . failure to *preserve* evidence that is only potentially exculpatory does not violate due

22  process, then a fortiori neither does the good faith failure to *collect* such evidence violate due

23  process.") (emphases original).  As discussed above, it is not clear the LIS database is potentially

24  exculpatory.  Here, the Government sought production of a (presumably) functioning LIS

25  database, but Theranos knowingly and without comment produced an inaccessible copy.  It

26  appears the Government believed in good faith that Theranos had provided a working copy of the

27  LIS database, with all necessary passwords and information on the additional software required to

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER DENYING MOT. TO SUPPRESS
                            14

United States District Court
Northern District of California

1   access it.  Thus, the Government has not failed to preserve evidence so much as it has preserved

2   the unusable evidence Theranos produced.  The Government still has the nonfunctioning copy of

3   the LIS, and it provided Holmes with a copy as well.  Holmes presumably has also been

4   unsuccessful in accessing her copy of the LIS database.  July 7 Tr. at 48:8-21.

5          In sum, the potential usefulness of the LIS database is speculative, and no exculpatory

6   value was apparent at the time Theranos decommissioned the LIS database, therefore the Court

7   finds no bad faith on the part of the Government and no due process violation.  Because the

8   Government never actually possessed a working accessible copy of the LIS database, and because

9   the Government did not cause the destruction or loss of the database, the Court need not engage in

10  the *Youngblood* three-factor analysis or reach the question of whether other sanctions are

11  warranted under the *Loud Hawk* balancing test.  *See Flyer*, 633 F.3d at 916 ("*If the government*

12  *destroys evidence* under circumstances that do not violate a defendant's constitutional rights, the

13  court may still impose sanctions including suppression of secondary evidence.") (emphasis

14  added).

15         Accordingly, the Court DENIES Holmes's request to suppress evidence of customer

16  complaints, testing results, and the CMS Report.

17         **B.      Evidentiary Hearing**

18         An evidentiary hearing on a motion to suppress is necessary "when the moving papers

19  allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude

20  that contested issues of fact exist."  *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

21         Holmes asserts that two factual disputes exist that necessitate an evidentiary hearing.  First,

22  she argues that a factual dispute exists as to who bears responsibility for the loss of the LIS

23  database.  Mot. at 7.  However, a review of the timeline of the events in this case does not support

24  the existence of such a dispute.  The Government issued at least three subpoenas to Theranos

25  seeking information relating to data stored in the LIS database in Theranos's possession, custody,

26  and control.  The Government also repeatedly sought clarification from Theranos's counsel and

27  third parties on whether any additional information was necessary to operate the LIS database

28  Case No.: 5:18-cr-00258-EJD-1
    ORDER DENYING MOT. TO SUPPRESS
    15

United States District Court
Northern District of California

1    copy.  It appears that Theranos and WilmerHale's actions frustrated the Government's efforts.

2    Internal Theranos emails and email exchanges with WilmerHale demonstrate that neither

3    Theranos nor WilmerHale were concerned about the actual functionality of the LIS database copy.

4    Furthermore, Theranos knowingly produced an encrypted copy of the LIS database and did not

5    inform the Government that an additional key was necessary to access it.  Four days later,

6    Theranos decommissioned and dismantled the original functioning LIS database.  It was the

7    deliberate actions of these third parties that resulted in the loss of the LIS database and its

8    contents, not the Government's actions.  It is undisputed that the Government never possessed a

9    functional copy of the LIS database in the first place.  As discussed above, resurrection of the LIS

10   database would be impossible without the lost key, rendering the Government's conduct after the

11   decommissioning a moot issue.

12         Holmes suggests someone might be able to reassemble the original LIS database, and

13   argues that the Court should therefore hold an evidentiary hearing to explore whether that is a

14   viable course of action.  However, according to Theranos's former IT employee, once the

15   hardware was dismantled, the key was destroyed, and the LIS database became unrevivable.

16   Saharia Decl., Ex. 111.

17         Second, Holmes alleges a factual dispute exists regarding "the degree of prejudice

18   associated with the government's failure to collect and preserve the LIS," including "whether the

19   LIS data could 'corroborate[] or disprove[]' the government's assertions about accuracy and

20   reliability."  Mot. at 7; Reply at 8–9 (quoting *Zaragoza-Moreira*, 780 F.3d at 980).  Beyond the

21   Court's conclusion that the Government did not, in fact, fail to collect and preserve the LIS

22   database, there is no indication in the record that the LIS database contains accuracy data for all

23   tests run.  As discussed above, no conclusions regarding accuracy could be drawn from the LIS

24   data alone, suggesting that the database would not provide a fulsome record with which accuracy

25   could be definitively determined.  The defense conceded as much at the hearing on this motion.

26   *See* July 7 Tr. at 34:4–35:9.

27         The Court finds that no material factual disputes exist concerning responsibility for the

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER DENYING MOT. TO SUPPRESS

1    decommissioning and dismantling of the original LIS database or whether the LIS database

2    contains all requisite information from which the accuracy of Theranos test results could be

3    determined.  An evidentiary hearing therefore would be fruitless, and accordingly, the Court

4    DENIES the request for one.

5          **C.    Further Production**

6          Finally, Holmes requests the Court compel further production from the Government—

7    specifically, the identities and documents relied upon in the Government's October 29, 2020

8    discovery letter provided as potential disclosures under *Brady v. Maryland*, 373 U.S. 83 (1963)

9    and *Giglio v. United States*, 405 U.S. 150 (1972).  Reply at 1, 14–15; *Brady* Ltr. at 1.  To the

10   extent Holmes seeks the identities of government employees and documents cited for the purpose

11   of delving into the Government's actions with respect to the LIS database after August 31, 2018,

12   that information is not relevant for the reasons described above.  Furthermore, "defendants cannot

13   use *Brady* simply to search for *Brady* materials.  *Brady* is not a pretrial discovery tool."  *United

14   States v. Weld*, No. CR 08-0083 PJH, 2009 WL 901871, *2 (N.D. Cal. Apr. 1, 2009); *see also

15   United States v. Grace*, 401 F. Supp. 2d 1069, 1077 (D. Mont. 2005) (noting that "*Brady*

16   violations are generally raised and adjudicated post-trial, upon the revelation by the government or

17   discovery by the defense of information favorable to the accused that should have been disclosed

18   before trial, [and that it is] [o]nly after trial has concluded and a complete trial record exists may a

19   court analyze whether information the government has not produced constitutes a *Brady*

20   violation").

21         Additionally, Holmes has not indicated why any of the information or evidence she seeks

22   is relevant, helpful in establishing her defense, not cumulative, or not exempt from disclosure due

23   to deliberative privilege and/or work product protection.  She asserts that the evidence is material

24   to her defense at trial because "[t]he government has noticed numerous LIS-related witnesses."

25   Reply at 15.  But Holmes does not identify any of those individuals, and it is not clear that those

26   individuals would be called specifically to testify about the LIS database as opposed to some other

27   topic.  The Court has already granted Holmes's related motion in limine to preclude evidence of

28   Case No.: 5:18-cr-00258-EJD-1
     ORDER DENYING MOT. TO SUPPRESS

United States District Court
Northern District of California

1    Theranos's involvement in the destruction of the LIS database, unless and until the Government

2    lays a proper foundation at trial or Holmes puts the factual dispute in issue.  Dkt. No. 798 at 56–

3    59.  Holmes has provided no reason to deviate from that approach at this time, therefore the Court

4    defers ruling on whether the Government must provide additional related documents unless and

5    until the Government elicits testimony concerning the LIS database from those witnesses.  The

6    Court expects the Government to comply with its *Brady* and Federal Rule of Criminal Procedure

7    16 obligations by providing sufficient advance notice of whether it plans to elicit testimony

8    regarding the LIS database from its witnesses or to introduce documents referenced or relied upon

9    in its *Brady* letter, and to supplement its production accordingly and promptly.

10         Accordingly, the Court DENIES the request to compel further production.

11   **IV.**      **CONCLUSION**

12         For the foregoing reasons, the Court DENIES Holmes's motion to suppress.  Pursuant to

13    the Court's June 28, 2021 order granting Holmes's administrative motion to file certain exhibits

14    under seal (Dkt. No. 853), an unredacted version of this order shall be filed under seal and a

15    redacted version filed on the public docket.

16         **IT IS SO ORDERED.**

17    Dated: August 3, 2021

18

19

20                                     EDWARD J. DAVILA

                                      United States District Judge

21

22

23

24

25

26

27

28    Case No.: 5:18-cr-00258-EJD-1
      ORDER DENYING MOT. TO SUPPRESS
                        18

*United States District Court*
*Northern District of California*